1   HAROLD J. MCELHINNY (CA SBN 66781)
    HMcElhinny@mofo.com
2   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
3   JENNIFER LEE TAYLOR (CA SBN 161368)
    JTaylor@mofo.com
4   JASON R. BARTLETT (CA SBN 214530)
    JasonBartlett@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone: 415.268.7000
7   Facsimile: 415.268.7522

8   Attorneys for Plaintiff
    APPLE INC.

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13

14   APPLE INC., a California corporation,        Case No.    4:11-cv-01846-LHK

15                  Plaintiff,                     **PLAINTIFF'S REPLY IN
                                                  SUPPORT OF ITS MOTION TO
16          v.                                    EXPEDITE DISCOVERY**

17   SAMSUNG ELECTRONICS CO., LTD., A             Date:     May 12, 2011
     Korean business entity; SAMSUNG              Time:     1:30 p.m.
18   ELECTRONICS AMERICA, INC., a New York        Place:    Courtroom 4, 5th Floor
     corporation; SAMSUNG                         Judge:    Hon. Lucy H. Koh
19   TELECOMMUNICATIONS AMERICA, LLC, a
     Delaware limited liability company.,
20
                    Defendants.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.  SAMSUNG HAS MISSTATED THE LEGAL STANDARD FOR
    EXPEDITED DISCOVERY ............................................................................................ 2

    A.  Expedited Discovery Does Not Require Irreparable Harm ................................. 2

    B.  Expedited Discovery Does Not Require the Prior Filing of a
        Preliminary Injunction Motion ......................................................................... 3

    C.  Expedited Discovery Does Not Require a Showing that the
        Evidence Sought Will Be Lost Before the Start of Standard
        Discovery ....................................................................................................... 6

II. APPLE HAS SHOWN GOOD CAUSE FOR EXPEDITED DISCOVERY
    UNDER THE CORRECT LEGAL STANDARD. ............................................................. 6

    A.  Apple's Discovery Requests Are Not Overbroad or Unduly
        Burdensome .................................................................................................... 6

        1.  Apple has proposed a reasonable timeframe for discovery ...................... 7

        2.  Apple requests samples of several products and directly
            related packaging and marketing materials. ........................................... 7

        3.  Samsung can easily produce samples of final production
            models as soon as they become available ............................................... 9

        4.  This Court's standard protective order adequately addresses
            any legitimate confidentiality issues ..................................................... 10

    B.  Apple's Need to Evaluate Infringement Claims for a Preliminary
        Injunction Motion Provides Good Cause for Expedited Discovery ................... 10

        1.  Apple is likely to have strong claims against Samsung for
            infringement of its valuable intellectual property rights ...................... 11

        2.  Samsung's release of a new round of infringing products
            will cause irreparable harm for multiple reasons. ................................. 13

CONCLUSION .................................................................................................................... 14

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3 CASES

4 *Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
   486 F.3d 629 (9th Cir. 2007)...................................................................... 14
5

6 *Adidas-Salomon Ag v. Target Corp.*,
   228 F. Supp. 2d 1192 (D. Or. 2002)............................................................ 12

7
*AMF, Inc. v. Sleekcraft Boats*,
8   599 F.2d 341 (9th Cir. 1979)......................................................................... 8

9 *Automated Merchandising Sys., Inc. v. Crane Co.*,
   357 F. App'x. 297 (Fed. Cir. 2009)............................................................. 13
10

11 *Bio-Technology Gen. Corp. v. Genentech, Inc.*,
   80 F.3d 1553 (Fed. Cir. 1996)..................................................................... 13
12

*Bonus of Am., Inc. v. Angel Falls Servs., L.L.C.*,
13   No. 10-cv-2111(DSD/FLN),
   2010 WL 2218574 (D. Minn. May 28, 2010) ..................................... 5, 10
14

*El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*,
15   344 F. Supp. 2d 986 (S.D. Tex. 2004)........................................................... 5

16 *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987)......................................................................... 8
17

18 *Hard Drive Prods., Inc. v. Does 1-118*,
   No. 11-cv-1567 LB,
19   2011 WL 1431612 (N.D. Cal. April 14, 2011) ............................................. 3

20 *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
   49 F.3d 1551 (Fed. Cir. 1995)..................................................................... 13
21

22 *Interserve, Inc. v. Fusion Garage PTE, Ltd.*,
   No. 09-cv-05812 JW (PVT),
23   2010 WL 143665 (N.D. Cal. Jan. 7, 2010) ..................................... 3, 4, 10

24 *IO Grp., Inc. v. Does 1–65*,
   No. 10-cv-4377 SC,
25   2010 WL 4055667 (N.D. Cal. Oct. 15, 2010) ............................................. 3

26 *Maxim Integrated Prods., Inc. v. Quintana*,
   654 F. Supp. 2d 1024 (N.D. Cal. 2009)....................................................... 13
27

28

*Momenta Pharm., Inc. v. Teva Pharm. Indus., Ltd.*,
   No. 10-cv-12079-NMG,
   2011 WL 673926 (D. Mass. Feb. 11, 2011) ................................................................ 4

*Nanoexa Corp. v. Univ. of Chicago*,
   No. 10-CV-2631-LHK,
   2010 WL 3398532 (N.D. Cal. Aug. 27, 2010) ............................................................ 13

*New York Civil Liberties Union v. New York City Transit Auth.*,
   675 F. Supp. 2d 411 (S.D.N.Y. 2009) .................................................................... 5, 10

*OMG Fid., Inc. v. Sirius Techs., Inc.*,
   239 F.R.D. 300 (N.D.N.Y. 2006) .......................................................................... 4, 10

*Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*,
   204 F.R.D. 675 (D. Colo. 2002) ................................................................................ 6

*Qwest Commc'ns, Int'l, Inc. v. WorldQuest Networks, Inc.*,
   213 F.R.D. 418 (D. Colo. 2003) ................................................................................ 5

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
   32 F.3d 1552 (Fed. Cir. 1994) ................................................................................. 13

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ................................................................................... 13

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
   208 F.R.D. 273 (N.D. Cal. 2002) ................................................................. 3, 4, 5, 10

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*,
   240 F.3d 832 (9th Cir. 2001) ................................................................................... 13

*Sunbeam Prods. v. W. Bend Co.*,
   123 F.3d 246 (5th Cir. 1997) ................................................................................... 12

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001) ................................................................................................. 11

*United Cent. Bank v. Kanan Fashions, Inc.*,
   No. 10-C-331,
   2010 WL 775040 (N.D. Ill. Mar. 5, 2010) ............................................................ 5, 10

*Vision Sports, Inc. v. Melville Corp.*,
   888 F.2d 609 (9th Cir. 1989) ................................................................................... 14

*Wangson Biotechnology Grp., Inc. v. Tan Tan Trading Co., Inc.*,
   No. 08-cv-04212 SBA,
   2008 WL 4239155 (N.D. Cal. Sept. 11, 2008) .......................................................... 6

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*,
     202 F.R.D. 612 (D. Ariz. 2001).................................................................................................3

*Zynga Game Network Inc. v. Williams*,
     No. 10-cv-1022 JF (PVT),
     2010 WL 2077191 (N.D. Cal. May 20, 2010) ........................................................................3


**STATUTES**

15 U.S.C.
     § 1125(a).................................................................................................................................12

35 U.S.C
     § 171 .......................................................................................................................................11


**OTHER AUTHORITIES**

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
     § 23:53 ....................................................................................................................................12

Fed. R. Civ. P.
     Rule 15 .....................................................................................................................................3
     Rule 26(d) .............................................................................................................................2, 4
     Rule 34 .....................................................................................................................................3

1    Plaintiff Apple Inc. ("Apple") submits this Reply in support of its Motion for Expedited

2    Discovery, filed April 19, 2011 ("Mot."), and in response to the Opposition of Defendants

3    Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC

4    (collectively "Samsung"), filed May 5, 2011 ("Opp.").[1]

5                                   **INTRODUCTION**

6    Samsung completely fails to rebut the substantial evidence in Apple's motion that

7    Samsung's forthcoming products blatantly copy Apple's distinctive product designs and infringe

8    Apple's intellectual property rights.  Nor does Samsung dispute that it is on the verge of releasing

9    these products into the U.S. market, or that the pictures and other evidence in Apple's motion

10   accurately depict them.  Samsung also does not contest that the discovery Apple seeks is highly

11   relevant to whether a preliminary injunction should issue to bar Samsung from selling the new

12   products.

13   Instead of rebutting any of these things, Samsung's opposition rests on a

14   mischaracterization of both the law and the facts concerning expedited discovery.  As to the law,

15   Samsung incorrectly suggests that expedited discovery requires a showing of "irreparable harm,"

16   even though the Northern District of California has expressly rejected any such requirement.

17   Samsung also suggests that expedited discovery in anticipation of a preliminary injunction motion

18   is never proper, even though courts routinely grant expedited discovery for this very purpose, as

19   even the primary case relied on by Samsung acknowledges.

20   As to the facts, Samsung incorrectly characterizes Apple's discovery requests as

21   "overbroad" and "far-reaching," even though they are narrowly directed to samples of several

22   soon-to-be-released products.  Samsung asserts that providing such samples would be "extremely

23   burdensome" because they are "trade secrets."  However, the media has already reported

24   extensively on these products, and this Court's standard protective order for patent cases is

25   adequate to address any confidentiality concerns.  Samsung contends that final production models

26

27   [1]   The parties are negotiating defendant Samsung Electronics Co., Ltd.'s waiver of service
     of process.

28

1    are not available for some of its products, but fails to explain why it would be "burdensome" to

2    produce samples as soon as they become available.

3        There is no need to delay commencement of discovery here.  Samsung is a very large,

4    highly sophisticated company that has been involved in numerous intellectual property lawsuits

5    around the world.  Shortly after Apple filed this suit, Samsung retaliated with actions against

6    Apple in Germany, Japan, Korea, and the Northern District of California.  (*See* "*Samsung*

7    *Matches Apple Patent Challenge with Countersuit*," PC World, April 22, 2011 (attached as

8    Exhibit 1 to Reply Declaration of Jason Bartlett, submitted herewith) ("Bartlett Reply Decl.");

9    *Samsung Electronics Co., Ltd. and Samsung Telecommunications America, LLC v. Apple Inc.*,

10   Case No. 4:11-cv-02079 (N.D. Cal. April 27, 2011).)  The notion that it would be "extremely

11   burdensome" for Samsung to produce several production models as soon as they are available is

12   nonsense.  Samsung is obviously well prepared to litigate when it suits its interest, and there is no

13   justification for delay here.  Samsung should be required to produce the limited discovery

14   requested now so that Apple can take prompt action to protect the extremely valuable intellectual

15   property rights at stake in this case including, if appropriate, moving for a preliminary injunction.

16                                    **ARGUMENT**

17   **I.    SAMSUNG HAS MISSTATED THE LEGAL STANDARD FOR EXPEDITED**
18        **DISCOVERY**

19       Samsung correctly states that expedited discovery should be granted under Federal Rule

20   of Civil Procedure 26(d) upon a showing of "good cause," which is interchangeable with

21   "reasonableness."  (Opp. at 5 & n.2.)  However, Samsung incorrectly argues that expedited

22   discovery requires a showing of "irreparable harm," should not be granted unless a motion for a

23   preliminary injunction has *already* been filed, and should not be granted absent an indication that

24   the evidence sought will be lost.  Samsung is wrong on all three points.

25       **A.    Expedited Discovery Does Not Require Irreparable Harm**

26       Samsung asserts that expedited discovery should be denied because Apple "fails to carry"

27   its burden of proving "irreparable harm."  (Opp. at 11.)  However, the Northern District of

28   California has rejected a test for expedited discovery "akin to . . . preliminary injunctive relief,"

1    which would require a showing of "irreparable injury," as well as "some probability of success on

2    the merits."  *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 275 (N.D. Cal. 2002).

3    The court relied on an Arizona decision that adopted the general good faith standard that the

4    Ninth Circuit had applied in the context of Rules 34 and 15.  *Id.* (citing *Yokohama Tire Corp. v.*

5    *Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz. 2001)).  The court emphasized that

6    requiring irreparable injury "would not accommodate expedited discovery in circumstances even

7    where such discovery would facilitate case management and expedite the case with little or no

8    burden to the defendant simply because the plaintiff would not suffer 'irreparable injury.'"

9    208 F.R.D. at 276.  This would be "inconsistent not only with Rule 26(d), which requires the

10   Court to consider, *inter alia*, 'the interests of justice,' but also the overarching mandate of Rule 1

11   which requires that the Rules 'shall be construed and administered to secure the just, speedy, and

12   inexpensive determination of every action.'"  *Id.*

13          The court in *Semitool* held that it would apply a "more flexible good cause standard,"

14   under which "[g]ood cause may be found where the need for expedited discovery, in

15   consideration of the administration of justice, outweighs the prejudice to the responding party."

16   *Id.* at 275-76.  The court also noted that "good cause is frequently found in cases involving *claims*

17   *of infringement and unfair competition*."  *Id.* at 276 (emphasis added).

18          Northern District of California courts regularly apply the flexible *Semitool* test, which

19   constitutes the prevailing rule in this Circuit.  *See, e.g., Interserve, Inc. v. Fusion Garage PTE,*

20   *Ltd*., No. 09-cv-05812 JW (PVT), 2010 WL 143665, at *2 (N.D. Cal. Jan. 7, 2010); *Zynga Game*

21   *Network Inc. v. Williams*, No. 10-cv-1022 JF (PVT), 2010 WL 2077191, at *2 (N.D. Cal. May 20,

22   2010); *Hard Drive Prods., Inc. v. Does 1-118*, No. 11-cv-1567 LB, 2011 WL 1431612, at *2

23   (N.D. Cal. April 14, 2011); *IO Grp., Inc. v. Does 1–65,* No. 10-cv-4377 SC, 2010 WL 4055667,

24   at *2 (N.D. Cal. Oct. 15, 2010).

25          **B.      Expedited Discovery Does Not Require the Prior Filing of a Preliminary**
                      **Injunction Motion**

26

27          Samsung further misstates the legal standard by suggesting that expedited discovery

28   cannot be obtained unless a preliminary injunction motion has already been filed.  Samsung relies

on a Massachusetts decision, *Momenta Pharm., Inc. v. Teva Pharm. Indus., Ltd*., No. 10-cv-12079-NMG, 2011 WL 673926, at \*2 (D. Mass. Feb. 11, 2011).  However, that decision expressly noted that "case law varies," citing a New York case that allowed expedited discovery "where plaintiff anticipated filing a motion for a preliminary injunction."  *Id.* \*2 (citing *OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006)).  Moreover, the plaintiff in that case had rejected the defendant's offer to engage in expedited discovery on a mutual, limited basis.  *Id.*  The court found that the plaintiff had failed to demonstrate a need for expedited discovery, given that it had rejected the defendant's offer to provide such discovery.  Samsung has not offered to provide expedited discovery, so *Momenta* sheds no light on the proper result here.

The Federal Rules Advisory Committee explicitly noted that expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction…." Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(d).  Consistent with this principle, courts have often granted expedited discovery to obtain information needed to determine whether a preliminary injunction motion should be filed.  For example, in *Interserve*, the Northern District of California granted plaintiff's motion to serve discovery requests on defendant and third parties about two months before the normal date, because "[e]xpedited discovery will allow plaintiff to seek an early injunction."  2010 WL 143665 at \*2. The plaintiff in that case sought discovery to support its claim that defendant had misappropriated business ideas.  *Id.* at \*1.  The court emphasized that good cause for expedited discovery "is frequently found in cases involving claims of infringement and unfair competition," citing the *Semitool* case.  *Id.* at \*2.

Similarly, in *OMG Fidelity*, the court granted expedited discovery that plaintiff sought to support its claims of trade secret misappropriation and unfair competition.  239 F.R.D. at 305. The court emphasized that "given that plaintiff contemplates a motion for a preliminary injunction, depending upon the results of its proposed discovery efforts, it is clear that plaintiff will potentially be unfairly prejudiced should I not permit discovery to go forward since it will not have an early opportunity to develop evidence for use in support of such a motion."  *Id.* at 305.

1    Other district courts are in accord.  *See Bonus of Am., Inc. v. Angel Falls Servs., L.L.C.*, No. 10-

2    cv-2111(DSD/FLN), 2010 WL 2218574, at *4 (D. Minn. May 28, 2010) (in franchise and

3    trademark dispute, court granted motion where plaintiff sought "expedited discovery to prepare

4    for a motion for a preliminary injunction"); *United Cent. Bank v. Kanan Fashions, Inc.*, No. 10-

5    C-331, 2010 WL 775040, at *2 (N.D. Ill. Mar. 5, 2010) (noting that court had previously granted

6    plaintiff "leave to conduct expedited discovery" and instructed plaintiff "to file a motion for a

7    preliminary injunction, if necessary, after conducting 'a little' discovery"); *New York Civil

8    Liberties Union v. New York City Transit Auth.*, 675 F. Supp. 2d 411, 422 (S.D.N.Y. 2009) (court

9    had "adopted an expedited plan for discovery in regard to Plaintiff's contemplated motion for a

10   preliminary injunction").

11       Expedited discovery may be granted even when the plaintiff has not filed and is not

12   planning to file a preliminary injunction motion.  Thus, in *Semitool*, the Northern District of

13   California allowed the plaintiff to take expedited discovery concerning the defendant's products

14   on the ground that this would promote efficient case management by enabling the plaintiff to

15   evaluate claims for patent infringement, even though the plaintiff had not proposed to file a

16   preliminary injunction motion.  *See* 208 F.R.D. at 275.

17       Samsung nonetheless suggests that obtaining information needed to decide whether to file

18   a preliminary injunction motion can never be a proper purpose for expedited discovery.  (Opp. at

19   6.)  However, the numerous cases discussed above permitted expedited discovery for precisely

20   this purpose.  Samsung relies on *Qwest Commc'ns, Int'l, Inc. v. WorldQuest Networks, Inc.*,

21   213 F.R.D. 418 (D. Colo. 2003), but that case did not hold that an anticipated preliminary

22   injunction motion can never support expedited discovery.  Rather, the court denied expedited

23   discovery based primarily on the overbroad nature of plaintiff's requests, which included issues

24   that had no relevance to a preliminary injunction and were *not* limited to "the narrow focus of [a]

25   preliminary injunction hearing."  *Id.* at 420-21.  That case is inapposite because Apple's

26   discovery requests are limited to "the narrow focus" of a preliminary injunction.  Samsung's other

27   cited case, *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex.

28   2004), is likewise inapposite, because it involved the vague possibility of injunctive relief at some

1  unspecified time.  Here, in contrast, Apple seeks expedited discovery for the express purpose of

2  evaluating a motion for a preliminary injunction directed at products to be released in the near

3  future.

4        **C.**    **Expedited Discovery Does Not Require a Showing that the Evidence Sought Will Be Lost Before the Start of Standard Discovery**

5

6        Finally, Samsung contends incorrectly that in order to take expedited discovery, Apple "is

7  expected to show that the evidence sought risks being destroyed before the normal discovery

8  period begins."  (Opp. at 13.)  In support of this contention, Samsung cites to *Wangson*

9  *Biotechnology Grp., Inc. v. Tan Tan Trading Co., Inc.*, No. 08-cv-04212 SBA, 2008 WL 4239155,

10  at *7 (N.D. Cal. Sept. 11, 2008).  Yet *Wangson* simply enumerates a number of circumstances in

11  which expedited discovery may be permissible, including when there is evidence of "a

12  custodian's practice of destroying records" and "spoilage or destruction . . . in the due course of

13  business activities."  *Id.*  Not surprisingly, Samsung omits the final example listed in *Wangson*:

14  "the evidence at issue is set for sale and distribution to consumers."  *Id.* (citing *Pod-Ners, LLC v.*

15  *N. Feed & Bean of Lucerne Ltd. Liab. Co.*, 204 F.R.D. 675, 675-76 (D. Colo. 2002) (granting

16  motion to expedite discovery of produce where plaintiff had alleged defendants "offered or

17  exposed for sale . . . the protected Enola variety, all without authority and contrary to the rights of

18  the plaintiff")).  Because Samsung's products are set for sale and distribution to consumers,

19  *Wangson* actually confirms the legitimacy of Apple's position and further undermines the

20  supposed legal "standards" put forth by Samsung.

21  **II.**    **APPLE HAS SHOWN GOOD CAUSE FOR EXPEDITED DISCOVERY UNDER THE CORRECT LEGAL STANDARD.**

22

23        **A.**    **Apple's Discovery Requests Are Not Overbroad or Unduly Burdensome**

24        Samsung devotes most of its opposition to arguing that Apple's discovery requests are

25  "overbroad," "extremely burdensome," and seek an "extraordinary acceleration" of discovery.

26  (Opp. at 6-9, 14-18.)  Samsung's arguments lack merit.

27

28

**1.   Apple has proposed a reasonable timeframe for discovery**

Samsung argues that Apple seeks an "extraordinary acceleration" of discovery given that discovery does not ordinarily commence until after the Rule 26(f) conference, which Samsung erroneously characterizes as having been "scheduled" by the Court for August 18.  (Opp. at 13, 17.)  First, while it is true that the Court originally set a *deadline* for the Rule 26(f) conference, that does not mean that the parties were required to wait until then to confer about discovery.  (Order Setting Initial Case Mgmt. Conference and ADR Deadlines (Docket Index 7).)  The Court does not "schedule" the parties' Rule 26(f) conference.

Second, this is not a case where the parties need to delay discovery to allow time to retain counsel and become familiar with the issues in dispute.  Samsung has already retained counsel and brought five separate suits in four separate fora around the world.  (Bartlett Reply Decl. ¶ 3.)  Among these are expedited proceedings for preliminary relief.  (*Id.*)  Samsung obviously does not need time to retain counsel, and it does not allege that it needs additional time to prepare for discovery.

Third, several months is not an "extraordinary acceleration," especially where, as here, there is strong evidence of copying and of the need for expedited relief to protect valuable intellectual property rights.

**2.   Apple requests samples of several products and directly related packaging and marketing materials.**

Apple's requests are simple and clear.  Apple's first five discovery requests are for the "domestic production model" of five specific Samsung products (the Galaxy S2, Galaxy Tab 8.9, Galaxy Tab 10.1, Infuse 4G, and 4G LTE), "along with its commercial packaging and initial release marketing materials."  (Mot. at 13.)  Samsung does not dispute that it knows what domestic production models and commercial packaging are.  Samsung argues, however, that "initial release marketing materials" is a vague term that might require Samsung to search the communications of an army of employees for internal marketing plans, drafts, and other documents not intended for public release.  (Opp. at 6-8.)

1    Apple's request is plainly not that broad.  Samsung ignores the context: "initial release

2    marketing materials" immediately follows, and is part of, Apple's request for domestic

3    production models "*along with*" their packaging.  The context makes clear that Apple is seeking

4    the specific marketing materials that Samsung will provide to distributors with its "initial release"

5    of the production model, which are intended to be shown to customers.  This is a narrow and

6    specific request.

7    Apple's request for "documents relating to any copying of design elements of, or attempts

8    to design around Apple's intellectual property relating to, the iPhone 4, iPad, and iPad 2" goes to

9    the heart of this dispute.   (Mot. at 13.)  Samsung argues that this request is overbroad because it

10   does not know the meaning of "relate to" or what intellectual property is at issue.[2]  (Opp. at 8.)

11   However, Samsung cannot and does not dispute that evidence that Samsung copied Apple's

12   designs or sought to design around Apple's intellectual property is highly relevant to

13   infringement.  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987)

14   ("defendant's intent in adopting the mark" is relevant to trade dress likelihood of confusion

15   analysis); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979) ("defendant's intent in

16   selecting the mark" is relevant to trademark likelihood of confusion analysis).

17   Samsung knows exactly what kinds of documents Apple is seeking relating to Samsung's

18   copying.  Samsung knows which specific intellectual property rights Apple has asserted in this

19   action.  Samsung cannot credibly profess ignorance of the meaning of "intellectual property,"

20   "copying," or efforts to "design around" intellectual property owned by competitors.  Apple is

21   unquestionably entitled to discovery on this subject in this litigation.

22   The only issue is when, not whether, this discovery should commence.  Apple submits that

23   it should start now, because evidence of copying and design-around bears directly on

24   ───────────────

25       [2]  Samsung also objects to this request on the ground that "there is no reason to believe
that Samsung has copied or attempted to design around Apple's intellectual property, [so] this

26   request essentially asks that Samsung conduct a search that confirms a negative."  (Opp. at 8.)
Apple will let the evidence of similarity of Samsung's products to Apple's proprietary designs

27   speak for itself.  (*See* Mot. at 1-9.)  Moreover, in the unlikely event that no responsive documents
exist, it will not be "burdensome" for Samsung to confirm this fact.

28

1    infringement, which in turn bears on Apple's likelihood of success on the merits and whether a

2    preliminary injunction should be granted.

3         Apple's final request to depose a Samsung witness is also narrowly tailored.  Apple

4    requests a 30(b)(6) deposition of a corporate witness in the United States concerning the design of

5    the shell and graphical user interface of five Samsung products, as well as Samsung's copying of

6    design elements from the iPhone or iPad, and efforts to design around Apple's intellectual

7    property.  (Mot. at 13.)  Samsung repeats its "overbreadth" objection (Opp. at 8-9), but again fails

8    to dispute that these topics are directly relevant to infringement and to any preliminary injunction

9    motion.  Apple is entitled to discovery on these topics in this litigation.  Samsung has identified

10   no persuasive reason for delaying such discovery until a later date.

11                **3.    Samsung can easily produce samples of final production models as
12                        soon as they become available**

13        Samsung contends that producing "domestic production models" and packaging would be

14   "extremely burdensome" and "unworkable" because final production models and packaging are

15   not yet available for certain products.  (Opp. at 15-16.)  Samsung does not dispute, however, that

16   final production models and packaging are available for at least some products.  Nor does

17   Samsung dispute that it could produce final production models and packaging for the remaining

18   products as soon as they become available.

19        Samsung contends that it could not produce the models that are available by May 17

20   "[b]ecause Samsung considers information about its unreleased products to be trade secrets, [so]

21   the internal approval process for disclosing such information *voluntarily* would take a significant

22   amount of time in and of itself."  (Opp. at 15 (emphasis added).)  However, any production would

23   be pursuant to an order of this Court, and not on a "voluntary" basis.  Moreover, May 17 is *four*

24   *weeks* after Apple filed its motion for an expedited discovery, providing Samsung with ample

25   time to prepare to comply with an order of this Court.

26

27

28

1

**4.     This Court's standard protective order adequately addresses any legitimate confidentiality issues**

2

3      Samsung's arguments about the extraordinary sensitivity of the production models that

4   Apple seeks are wildly exaggerated.  Samsung argues that Apple's request for production models

5   that are about to be released is "outrageous" and "would put Samsung at an extraordinary

6   competitive disadvantage," because they would reveal Samsung's "trade secrets."  (Opp. at 14-

7   15.)  However, information about these products is already publicly available, as reflected by the

8   evidence attached to Apple's motion.  (Declaration of Jason Bartlett in Support of Apple's

9   Motion to Expedite Discovery (Docket Index 11), Exs. 1, 2, 4-9.)  It is plain from these reports

10  that Samsung has intentionally made its products available publicly for hands-on review.  That is

11  inconsistent with its claim that the same products are too sensitive to be produced as evidence to

12  be considered by this Court.  Moreover, Apple has *not* asked Samsung to disclose confidential

13  and proprietary source code or other similarly sensitive internal information.  Rather, Apple has

14  requested the final production models, packaging, and marketing materials, in the form that will

15  soon be available to the general public.

16      To the extent that Samsung has valid confidentiality concerns, these can be addressed by

17  using the Northern District of California's standard protective order for patent cases, which

18  automatically applies to this case pursuant to Local Patent Rule 2-2.  Indeed, Samsung has

19  *already* used this Protective Order to file portions of its Opposition to Expedited Discovery under

20  seal, on an "Outside Counsel Only" basis.  Samsung has provided no explanation of why this

21  procedure is not adequate to protect any confidential information related to its responses to

22  expedited discovery.

23      **B.     Apple's Need to Evaluate Infringement Claims for a Preliminary Injunction Motion Provides Good Cause for Expedited Discovery**

24

25      As in *Semitool*, early disclosure of information about Samsung's products will promote

26  efficient case management by enabling Apple to determine if those products infringe Apple's

27  trademarks, trade dress, and patents.  *See* 208 F.R.D. at 275.  Unlike the plaintiff in *Semitool*,

28  Apple is seriously considering a preliminary injunction motion directed against the new products

1    that Samsung is about to release, but needs samples of those products to confirm that those

2    products are infringing.  Obtaining information needed to evaluate a preliminary injunction

3    motion is a well-recognized ground for expedited discovery, as discussed above.  *See, e.g.*,

4    *Interserve*, 2010 WL 143665, at *2; *OMG Fid.*, 239 F.R.D. at 305; *Bonus of Am.*, 2010 WL

5    2218574, at *4; *United Cent. Bank*, 2010 WL 775040, at *2; *New York Civil Liberties Union*,

6    675 F. Supp. 2d at 422.

7         Samsung argues that expedited discovery should be denied because Apple's infringement

8    claims are "specious on their face," and Apple has not made a sufficient showing of "irreparable

9    harm."  (Opp. at 1.)  This is an improper attempt to prejudge the outcome of a preliminary

10   injunction motion that has not even been filed.  The Court need not and should not address the

11   merits of a hypothetical, unfiled motion.  Nevertheless, publicly available information strongly

12   suggests that neither "infringement" nor "irreparable harm" will be a close case here.

13           **1.      Apple is likely to have strong claims against Samsung for infringement
                        of its valuable intellectual property rights**

14

15        Samsung is copying Apple's products wholesale, imitating not only Apple's proprietary

16   features but also its distinctive designs and trademarks, too.  Unable to respond to these serious

17   allegations in any meaningful way, Samsung disparages Apple's claims as "specious" and

18   "implausible," and suggests that various elements of Apple's design and trade dress, isolated and

19   taken out of context (*e.g.*, "a rectangular shape" alone), are not protectable.  (Opp. at 1.)  Yet

20   these contentions, in addition to being wanting factually, find no support in the law.  *See*

21   35 U.S.C § 171 (a design patent may issue for "any new, original, and ornamental design for an

22   article of manufacture"); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001)

23   ("[i]t is well established that trade dress can be protected under federal law").  And Apple is not

24   suing Samsung for making phones shaped like rectangles.  It is suing Samsung for making

25   products that were made to look and work like Apple's famous, revolutionary, and distinctive

26   iPhones, iPod Touches, and iPads, which are protected by design patents, trademarks, trade dress

27   rights, and utility patents that specifically cover those distinctive features.

28

1    Apple's evidence of Samsung's intent to copy Apple's devices is unrebutted.  Apple cited

2   a Samsung executive who was quoted in the press as saying that the newest Galaxy Tab products

3   would go back to the drawing board so that the design could be changed in light of Apple's

4   recently released iPad 2 tablets.  Samsung's opposition does not deny that its executive made the

5   statement cited in the report.  Nor does it offer the testimony of that executive (or any other) to

6   testify that he was talking about changes only to the price and thickness of the device.  Given

7   Samsung's history of slavishly copying Apple's iPhone, there is every reason to believe that

8   Samsung's attempt to copy the iPad tablet will not stop at matching the iPad's price point and

9   general physical dimensions.

10    Samsung cannot escape liability by putting the word "Samsung" on its copycat devices.

11   Samsung argues that this label necessarily precludes any confusion as to the source of the

12   products.  (Opp. at 1.)  Yet it is well-established that "the mere labeling of a product will not

13   automatically alleviate a likelihood of confusion."  *Sunbeam Prods. v. W. Bend Co*., 123 F.3d 246,

14   259 (5th Cir. 1997); *see also Adidas-Salomon Ag v. Target Corp.*, 228 F. Supp. 2d 1192, 1211

15   (D. Or. 2002) (defendant's display of its own word mark on shoes "does not automatically

16   insulate defendants from liability" for infringement of plaintiff's three-stripe mark); 4 J. Thomas

17   McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:53 ("[l]abeling never

18   constitutes an automatic affirmative defense to infringement . . . [t]he majority view is that

19   labeling or use of a word mark does not avoid what would otherwise be an infringing trade

20   dress").

21    Moreover, Apple's trade dress infringement claim is not limited to confusion as to source,

22   and extends to confusion as to the sponsorship or approval of Samsung's products, which are also

23   actionable under Section 43(a) of the Lanham Act.  15 U.S.C. § 1125(a) (use of a mark or trade

24   dress that "is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin,

25   *sponsorship*, or *approval*" of goods is actionable) (emphasis added).  And of course, even if

26   Samsung had meritorious arguments pertaining to consumer confusion in any of the

27   aforementioned contexts, those arguments are in no way defenses to patent infringement.

28

1    Finally, though this lawsuit certainly involves Apple's trademarks and trade dress, it also

2    pertains to Apple's intellectual property interests in the design and functionality of Samsung's

3    mobile devices, as claimed in Apple's design and utility patents. Samsung's silence with regard

4    to its apparent infringement of these patent claims is telling.

5               **2.      Samsung's release of a new round of infringing products will cause
                          irreparable harm for multiple reasons.**

6

7    As discussed above, Samsung mistakenly conflates the standards for expedited discovery

8    and for a preliminary injunction. Though Apple is under no obligation to demonstrate irreparable

9    harm simply to take expedited discovery of products that, by all indications, are designed

10   specifically to duplicate its designs and functionality, it is clear even at this early stage in the

11   litigation that Apple is likely to succeed on the merits of its case. Samsung's contention that

12   Apple cannot demonstrate irreparable harm because the harm alleged by Apple "can be

13   compensated by money damages" (Opp. at 10), is factually incorrect and contrary to well-

14   established Federal Circuit authority.

15   Money is not adequate to compensate Apple for Samsung's infringement of its patents.

16   *See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1557 (Fed.

17   Cir. 1995) ("To be sure, the nature of the patent grant weighs against holding that monetary

18   damages will always suffice to make the patentee whole") (quotation marks and citation omitted).

19   Apple contends that Samsung's infringement will lead to a loss of market share, erosion of

20   goodwill, and harm to its reputation. Such consequences of infringing conduct may demonstrate

21   irreparable harm. *See Automated Merchandising Sys., Inc. v. Crane Co.*, 357 F. App'x. 297, 301

22   (Fed. Cir. 2009) (evidence of lost market share may demonstrate irreparable harm); *Bio-*

23   *Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (finding no error

24   in district court's determination that "Genentech would be harmed if BTG were allowed to enter

25   the market because Genentech would lose revenues and goodwill, and would be required to

26   reduce its research and development activities"); *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552,

27   1558 (Fed. Cir. 1994) ("[h]arm to reputation resulting from confusion between an inferior

28

1   accused product and a patentee's superior product is a type of harm that is often not fully

2   compensable by money because the damages caused are speculative and difficult to measure").

3       Likewise, in trademark and other contexts, intangible injuries such as damage to

4   reputation, advertising efforts, or goodwill are classic examples of irreparable harm.  *See Rent-A-*

5   *Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir. 1991);

6   *Nanoexa Corp. v. Univ. of Chicago*, No. 10-CV-2631-LHK, 2010 WL 3398532, at *4 (N.D. Cal.

7   Aug. 27, 2010); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d

8   832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill

9   certainly supports a finding of the possibility of irreparable harm"); *Maxim Integrated Prods.,*

10  *Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1035 (N.D. Cal. 2009) ("In trademark cases, irreparable

11  harm is typically found in a plaintiff's loss of control over their business reputation, loss of trade

12  and loss of goodwill").

13      More importantly, Apple will be entitled to a presumption of irreparable harm because of

14  the strength of its trademark claims.  *Abercrombie & Fitch Co. v. Moose Creek, Inc.,* 486 F.3d

15  629, 633 (9th Cir. 2007) (in the trademark infringement context, "[i]rreparable injury is ordinarily

16  presumed upon a showing of a likelihood of success"); *Vision Sports, Inc. v. Melville Corp.,*

17  888 F.2d 609, 612 n.3 (9th Cir. 1989) ("In trademark infringement or unfair competition actions,

18  once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff

19  will suffer irreparable harm if injunctive relief is not granted").

20                              **CONCLUSION**

21      For the foregoing reasons, Apple respectfully requests that the Court order Samsung to

22  produce on an expedited basis the limited product samples, related documents, and the corporate

23  witness identified in its motion.  The imminent harm to Apple, and hence the urgency of its

24  request, cannot be overstated.  Because this motion represents Apple's only chance to obtain

25  information that will allow it to preserve the status quo, and given the lack of any real burden or

26

27

28

1    prejudice to Samsung in having to produce minimal advance discovery, the balancing of potential

2    harm, hardship, and equitable concerns should all weigh in favor of granting this motion.

3

4    Dated: May 9, 2011                          HAROLD J. MCELHINNY
                                                  MICHAEL A. JACOBS
5                                                 JENNIFER LEE TAYLOR
                                                  JASON R. BARTLETT
6                                                 MORRISON & FOERSTER LLP

7

8                                                 By:  /s/ Michael A. Jacobs
                                                      MICHAEL A. JACOBS
9
                                                  Attorneys for Plaintiff
10                                                APPLE INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ECF ATTESTATION**

2          I, JASON R. BARTLETT, am the ECF User whose ID and password are being used to

3    file the following document: PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY.  In

4    compliance with General Order 45, X.B., I hereby attest that Michael Jacobs has concurred in this

5    filing.

6

7    Dated: May 9, 2011

JASON R. BARTLETT
**MORRISON & FOERSTER** LLP

8

9

By:  /s/ Jason R. Bartlett
       JASON R. BARTLETT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28