QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California  94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Samsung Electronics America, Inc.
and Samsung Telecommunications America LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**<br><br>Date: May 12, 2011<br>Time: 1:30 p.m.<br>Courtroom 4, 5th Floor<br>Judge: Hon. Lucy H. Koh<br><br>**PUBLIC REDACTED VERSION** |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

I.     Introduction ..................................................................................................................... 1

II.    Facts ................................................................................................................................. 2

III.   Argument .......................................................................................................................... 5

Apple Does Not Establish "Good Cause" for the Expedited Discovery It Seeks. ........................... 5

     A.     A Motion for a Preliminary Injunction Is Not Pending. .......................................... 5

     B.     Apple's Discovery Requests are Overbroad. ............................................................ 6

     C.     Apple Articulates No Proper Purpose for the Expedited Discovery It Seeks. ........ 10

          1.     Apple's Claim That Introduction of Samsung's Products Into the Market Will Potentially Cause Apple Irreparable Harm Is Not a Proper Purpose of Expedited Discovery. ...................................................... 10

          2.     Apple's Cited Cases Do Not Support Its Argument That a Competitor's Unreleased Products Are Subject to Expedited Discovery. ...................................................................................................... 12

          3.     Apple Has Not Shown That the Evidence It Seeks Will Be Lost Before the Normal Discovery Period Begins. ............................................ 13

     D.     It Would Be Extremely Burdensome on Samsung to Comply With Apple's Discovery Requests. .............................................................................................. 14

     E.     Apple's Motion Seeks Extraordinary Acceleration of Discovery ........................... 17

IV.    Conclusion ...................................................................................................................... 18

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

# TABLE OF AUTHORITIES

**Page**

## Cases

American LegalNet, Inc. v. Davis.,
   673 F. Supp. 2d 1063 (C.D. Cal. 2009)..................................................................5

Avaya, Inc. v. Acumen Telecom Corp.,
   No. 10-cv-03075-CMA-BN, 2011 WL 9293 (D. Colo. Jan. 3, 2011) .......................17

Bug Juice Brands, Inc. v. Great Lakes Bottling Co.,
   No. 1:10-cv-229, 2010 WL 1418032 (W.D. Mich. April 6, 2010) ............................6

In re Countrywide Fin. Corp. Deriv. Litig.,
   542 F. Supp. 2d 1160 (C.D. Cal. 2008) .................................................................13

Disc Golf Ass'n, Inc. v. Champion Discs, Inc.,
   158 F.3d 1002 (9th Cir. 1998) .............................................................................12

eBay Inc. v. MercExchange, L.L.C.,
   547 U.S. 388 (2006) ...........................................................................................11

Edge Games, Inc. v. Electronic Arts, Inc.,
   745 F. Supp. 2d 1101 (N.D. Cal. 2010) .................................................................11

El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,
   344 F. Supp. 2d 986 (S.D. Tex. 2004) ....................................................................6

Hard Drive Prods., Inc. v. Does,
   No. 11-cv-1567, 2011 WL 1431612 (N.D. Cal. Apr. 14, 2011) ..............................13

IO Grp., Inc. v. Does 1-65,
   No. 10-cv-4377 SC, 2010 WL 4055667 (N.D. Cal. Oct. 15, 2010).........................13

Interserve, Inc. v. Fusion Garage PTE, Ltd.,
   No. 09-cv-05812 JW (PVT) 2010 WL 143665 (N.D. Cal. Jan. 7, 2010)...................13

KLA-Tencor Corp. v. Murphy,
   717 F. Supp. 2d 895 (N.D. Cal. 2010) ....................................................................9

Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,
   634 F.2d 1097 (9th Cir. 1980)..............................................................................10

Leatherman Tool Group, Inc. v. Cooper Indus., Inc.,
   199 F.3d 1009 (9th Cir. 1999)..............................................................................12

Magellan Group Inv., LLC v. First Indigenous Depository Co., LLC,
   No. C 05-01994 JSW, 2005 WL 1629940 (N.D. Cal. July 8, 2005)...........................5

Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.
   475 U.S. 574 (1986) ....................................................................................... 11-12

Momenta Pharms., Inc. v. Teva Pharms. Indus., Ltd.,
    No. 10-12079-NMG, 2011 WL 673926 (D. Mass. Feb. 11, 2011) ...................................5, 10, 11

Nanoexa Corp. v. Univ. of Chicago,
    No. 10-CV-2631-LHK, 2010 WL 3398532 (N.D. Cal. 2010) ............................................10, 11

O'Grady v. Superior Court,
    139 Cal. App. 4th 1423 (2006) ........................................................................................14

Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.,
    213 F.R.D. 418 (D. Colo. 2003) ...................................................................................6, 7, 8

Semitool, Inc. v. Tokyo Electron Am., Inc.,
    208 F.R.D. 273 (N.D. Cal. 2002) .........................................................7, 9, 12, 13, 18

Trak Inc. v. Benner Ski KG,
    475 F. Supp. 1076 (D.C. Mass. 1979) ..............................................................................15

Wangson Biotech. Group, Inc. v. Tan Tan Trading Co., Inc.,
    No. C 08-04212 SBA, 2008 WL 4239155 (N.D. Cal. 2008) .................................5, 13

W. Res., Inc. v. Union Pac. R.R. Co.,
    2001 WL 1718368, *3 (D. Kan. 2001) ..........................................................................8

Zynga Game Network Inc. v. Williams,
    No. 10-cv-1022 JF (PVT), 2010 WL 2077191 (N.D. Cal. May 20, 2010) ..............................13

### Statutes

Fed. R. Civ. P. 26(d) ..............................................................................................................1, 5

Fed. R. Civ. P. 26(f) ...............................................................................................1, 2, 5, 7, 13, 17

1    Samsung Electronics America, Inc. ("SEA") and Samsung Telecommunications

2  America, LLC ("STA") (collectively "Samsung") respectfully submit this Opposition to Plaintiff

3  Apple, Inc.'s ("Apple") Motion to Expedite Discovery (D.N. 10) ("Motion to Expedite

4  Discovery"). No Samsung entity has answered or otherwise responded to the Complaint. Each

5  Samsung entity makes a limited special appearance in order to oppose Apple's Motion to Expedite

6  Discovery and reserves all jurisdictional objections.

7  <center>**MEMORANDUM OF POINTS AND AUTHORITIES**</center>

8  I.    <u>Introduction</u>

9       Apple's Motion to Expedite Discovery essentially asks for this Court's assistance in

10  performing an end run around the competition in the marketplace. By its motion, Apple seeks

11  wide-ranging discovery into five unreleased products of Samsung, Apple's avowed competitor in

12  the market for mobile phones and tablet computers. Apple says that it needs this discovery

13  because it suspects these products will infringe its intellectual property. Apple's claims are

14  specious on their face. For example, Apple's allegations that reasonable consumers are likely to

15  be confused about the source or origin of Samsung's phones due to commonplace features such as

16  rectangular shape and display of icons—on screens embedded in the phones, labeled with

17  Samsung's name—such as a phone (in connection with a phone application) and music notes (in

18  connection with a music application) are implausible. Yet Apple claims, without a shred of

19  supporting evidence, that it would potentially suffer irreparable harm if such products are released

20  into the market. According to Apple, merely raising this specter of irreparable harm entitles it to

21  discovery into these Samsung products before their commercial release, and months before the

22  Rule 26(f) conference of the parties—prior to which discovery is generally not allowed under Rule

23  26(d).

24       The Court should deny Apple's motion. To be entitled to discovery prior to the Rule

25  26(f) conference, Apple must establish "good cause" for the discovery it seeks. Apple fails to do

26  so. Inconsistent with its irreparable harm assertions, Apple has filed no motion for a preliminary

27  injunction, neither against these unreleased Samsung products, nor against already-released

28  Samsung products. Moreover, courts expressly reject the argument that a plaintiff can seek

<center>**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**</center>

1   expedited discovery to decide whether it has enough evidence to seek a preliminary injunction.

2   Further, Apple's requests are too broad to be the subject of expedited discovery.  Apple also has

3   identified no proper purpose for the discovery, and it cannot.  Irrespective of any liability

4   determination, Apple would not suffer irreparable harm because it could be compensated for any

5   potential infringement with money damages.  In addition, Apple asks the Court to expedite the

6   discovery it seeks by three months.  Even the case law cited by Apple does not endorse such

7   extreme acceleration of discovery.  Finally, Apple's requested discovery would be extraordinarily

8   burdensome on Samsung, not only because it would put Samsung at a severe competitive

9   disadvantage—even Apple views information about unreleased products as trade secrets with

10  which "competitors can anticipate and counter Apple's business strategy,"—but also because

11  actually collecting and producing the requested discovery would be extremely time-consuming

12  and expensive for Samsung.

13  II.      Facts

14          On April 15, 2011, Apple sued its avowed competitors, Samsung Electronics Co., Ltd.

15  ("SEC"), SEA and STA, asserting claims of trademark, trade dress, and utility and design patent

16  infringement against numerous Samsung products.  (Compl. (D.N. 1).)  The same day, the Court

17  issued an initial scheduling order in this case that set the deadline for the conference of the parties

18  pursuant to Rule 26(f) of the Federal Rule of Civil Procedure on August 18, 2011. (D.N. 7.)  That

19  deadline was vacated on April 21, 2011 when the case was reassigned to this Court.  (Notice of

20  Impending Reassignment to a United States District Court Judge (D.N. 15);  D.N. 7.)

21          On April 19, before serving SEA, STA, or SEC with a copy of its complaint, Apple filed

22  its Motion to Expedite Discovery.  (D.N. 10.)  Apple served SEA and STA with a copy of the

23  complaint and its Motion to Expedite Discovery the following day, but has not yet served SEC

24  with either document.[1]  (Certificate of Service (D.N. 14); Amended Certificate of Service (D.N.

25  16); Mot. to Expedite (D.N. 10) at 6.)

26  _____

27       [1]  Counsel for Apple has asked counsel for SEA and STA to accept service on behalf of SEC.
    Counsel for SEA and STA has informed counsel for Apple that it is willing to accept service on
28       (footnote continued)

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

1    Relying on "Internet reports" that started appearing in mid-February 2011, Apple's Motion

2    to Expedite Discovery claims that "Samsung's new products are sure to infringe Apple's

3    registered trademarks, trade dress, design patents, and utility patents." (Mot. to Expedite (D.N.

4    10) at 3-5, 7; Decl. of Jason R. Bartlett In Support of Plaintiff's Mot. to Expedite ("Bartlett

5    Expedite Decl.") (D.N. 11), Exs. 1-9.) According to Apple's motion, "Without an order

6    permitting expedited discovery, Apple would be required to wait until Samsung's new products

7    are commercially available, and would be forced to suffer the attendant irreparable harm that

8    comes with sales of infringing products." (Mot. to Expedite (D.N. 10) at 11.) Although Apple's

9    motion alleges that "Samsung's existing Galaxy products" exemplify "a pattern of practice by

10   Samsung of copying Apple's patents, trademarks, trade dress, and other intellectual property in

11   connection with mobile devices," Mot. to Expedite (D.N. 10) at 1, the motion offers no evidence

12   that the prior release of these "existing Galaxy products" to the public caused Apple irreparable

13   harm. Further, the motion does not detail the alleged irreparable harm Apple would suffer and

14   does not support these allegations with any evidence in the form of either expert declarations or

15   testimony from anyone at Apple.

16   By its motion, Apple requests that the Court order the following discovery from SEA and

17   STA:

18                (1) a domestic production model of the Galaxy S2, along with its
                 commercial packaging and initial release marketing materials;
19
                 (2) a domestic production model of the Galaxy Tab 8.9, along with its
20               commercial packaging and initial release marketing materials;

21               (3) a domestic production model of the Galaxy Tab 10.1, along with its
                 commercial packaging and initial release marketing materials;
22
                 (4) a domestic production model of the Infuse 4G, along with its
23               commercial packaging and initial release marketing materials;

24               (5) a domestic production model of the 4G LTE (or "Droid Charge"),
                 along with its commercial packaging and initial release marketing
25               materials;

26   _____

27   behalf of SEC in exchange for a 75 day extension for all three Samsung entities to answer or
     otherwise respond to Apple's complaint. Counsel for Apple has not yet responded to this offer.
28

(6) documents relating to any copying of design elements of, or attempts to design around Apple's intellectual property relating to, the iPhone 4, iPad, and iPad 2;

and

(7) a 30(b)(6) deposition in the United States of a Samsung corporate representative regarding the following topics:

(a) The design, function and operation of the shells and graphical user interfaces of the Galaxy S2, Galaxy Tab 8.9, Galaxy Tab 10.1, Infuse 4G, and 4G LTE;

(b) Any copying of design elements from the iPhone 4, iPad, and iPad 2; and

(c) Any attempts to design around the iPhone 4, iPad, and iPad 2.

(Mot. to Expedite at 9-10.)  Apple defines a "domestic production model" as "a final, commercial version of a product to be sold in the United States." (Id. at 9, n.2.)  Apple asks that the requested documents and things be produced by May 17, 2011, five days after the scheduled hearing on its motion, and that the requested 30(b)(6) deposition occur on May 19, 2011, two days later. (Proposed Order Granting Pl.'s Mot. to Expedite (D.N. 11-12) at 1-2.)

██████████████████████████████████████████

████████████ (Decl. of Brian Rosenberg In Support of Samsung's Opp. To Pl.'s Mot. to Expedite Disc. ("Rosenberg Opp. Decl.") at ¶¶ 2, 4, 6, 8;  Decl. of Travis Merrill In Support of Samsung's Opp. To Pl.'s Mot. to Expedite Disc. ("Merrill Opp. Decl.") at ¶¶ 3, 5.)  Apple's motion contends that the order it requests "will allow Apple to assess the extent to which Samsung's soon-to-be-released products will infringe Apple's intellectual property rights before the products become entrenched in the marketplace." (Mot. to Expedite (D.N. 10) at 1.)  Apple has not filed a motion for a temporary restraining order or preliminary injunction against the Galaxy S2, Galaxy Tab 8.9, Galaxy Tab 10.1, Infuse 4G, and 4G in this action, nor against any "existing Galaxy products" currently available to the public.

1    III.    Argument

2            Apple Does Not Establish "Good Cause" for the Expedited Discovery It Seeks.

3            "Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal

4    discovery will not commence until after the parties have conferred as required by Rule 26(f)."

5    American LegalNet, Inc. v. Davis., 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). "In the Ninth

6    Circuit, courts use the 'good cause' standard to determine whether discovery should be allowed to

7    proceed prior to a Rule 26(f) conference." Wangson Biotech. Group, Inc. v. Tan Tan Trading

8    Co., Inc., No. C 08-04212 SBA, 2008 WL 4239155, *7 (N.D. Cal. 2008). Under that standard,

9    the moving party must establish that "the need for expedited discovery, in consideration of the

10   administration of justice, outweighs the prejudice to the responding party." Id.; Magellan Group

11   Inv., LLC v. First Indigenous Depository Co., LLC, No. C 05-01994 JSW, 2005 WL 1629940, *2

12   (N.D. Cal. July 8, 2005). Factors to consider when determining the reasonableness[2] of expedited

13   discovery include: "(1) whether a preliminary injunction is pending; (2) the breadth of the

14   discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the

15   defendants to comply with the requests; and (5) how far in advance of the typical discovery

16   process the request was made." Am. LegalNet, 673 F. Supp. 2d at 1067. In view of these factors,

17   Apple's Motion to Expedite Discovery does not establish "good cause" for the discovery it seeks.

18           A.    A Motion for a Preliminary Injunction Is Not Pending.

19           "The majority of courts have held . . . that the fact that there was no pending preliminary

20   injunction motion weighed against allowing plaintiff's motion for expedited discovery." Momenta

21   Pharms., Inc. v. Teva Pharms. Indus., Ltd., No. 10-12079-NMG, 2011 WL 673926, *2 (D. Mass.

22   Feb. 11, 2011). As is clear from the Court's own docket, Apple has not filed a motion for a

23   preliminary injunction in this case.[3] Thus, this factor weighs against granting Apple's Motion.

24   _____

25      [2]  "Courts have used the terms 'good cause' and 'reasonableness' interchangeably." Am.
26   LegalNet, 673 F. Supp. 2d at 1067.
        [3]  Even *if* Apple had moved for a preliminary injunction, "expedited discovery is not
27   automatically granted merely because a party seeks a preliminary injunction." Am. LegalNet,
     673 F. Supp. 2d at 1065-66, 1071 (denying plaintiff's motion for expedited discovery of
28           (footnote continued)

1    Further, to the extent Apple contends that it needs this discovery to *decide* whether to file a

2  motion for a preliminary injunction, such a contention is without merit.  Qwest Commc'ns

3  Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419-21 (D. Colo. 2003) (finding

4  plaintiff had not established the requisite good cause where plaintiff merely "wishes to conduct

5  expedited discovery to determine whether to seek preliminary injunctive relief");  El Pollo Loco,

6  S.A. de C.V. v. El Pollo Loco, Inc., 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004) (finding that there

7  was no good cause to grant plaintiff's request for expedited discovery in a trademark infringement

8  and theft lawsuit in order to "possibly seek injunctive relief in this Court").

9         B.      Apple's Discovery Requests are Overbroad.

10       "To justify departing from the normal discovery regimen . . . the discovery request should

11  be 'limited.'"  Bug Juice Brands, Inc. v. Great Lakes Bottling Co., No. 1:10-cv-229, 2010 WL

12  1418032, *1 (W.D. Mich. April 6, 2010).  Contrary to Apple's claim that "[t]here can be no

13  question that these requests are narrowly tailored," Mot. to Expedite at 11,  Apple's discovery

14  requests are far-reaching.  First, Apple seeks not only samples of five of its competitor's actual

15  products prior to their commercial release, but an extensive range of documents and other

16  materials relating to those products, the outer limits of which it is difficult, if not impossible, to

17  discern.  For example, for each of the Galaxy 2, Galaxy Tab 8.9, Galaxy Tab 10.1, Infuse 4G and

18  4G LTE products, Apple seeks that product's "initial release marketing materials." (Mot. to

19  Expedite (D.N. 10) at 9-10.)  Apple does not define "marketing materials," leaving Samsung only

20  to guess what that means.  Apple does not clarify whether it seeks internal marketing plans or

21  marketing materials for distributors or end users.  It does not explain whether it seeks drafts of

22  marketing materials or materials that have or will be released to the public.  It does not even spell

23  out whether it seeks only documents or physical objects as well.  The possibilities of what

24

25

26   _____

27  competitor despite plaintiff's claims of copyright infringement against competitor and the
     pendency of plaintiff's motion for preliminary injunction to prohibit competitor from using
     plaintiff's allegedly copyright-protected information).

28

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

1   "marketing materials" could mean are legion.[4]  Expedited discovery should not be granted where

2   "[t]he court is hard pressed to define the outer boundary of [the movant's] requests." Qwest, 213

3   F.R.D. at 420.

4          Nor should Samsung be burdened with the responsibility of figuring out what Apple means

5   by "marketing materials," or to search for every document or thing that Samsung thinks might

6   constitute "marketing materials," especially when Apple's request is for expedited discovery.  See

7   id. at 420, n.1 (noting that requests that might be unobjectionable if propounded after the Rule

8   26(f) conference may be overbroad for the purposes of expedited discovery).

9   ████████████████████████████████████████████████████

10  ████████████████   (Rosenberg Opp. Decl. at ¶ 11;  Merrill Opp. Decl. at ¶ 8.)  As Apple's

11  requests are written, ***all*** of those employees are potential custodians of "marketing materials."  It is

12  too much for Apple to ask that all of these Samsung employees be interviewed, and their

13  documents and things searched for purposes of expedited discovery on the extremely short,

14  extremely accelerated schedule Apple seeks.

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24

25      [4]  Apple's argument that its requests "are even more limited than the 'technical specifications,
    schematics, maintenance manuals, user or operating manuals and documents to show the physical

26  configuration and operation of the [accused product]' that the court in Semitool ordered to be
    produced on an expedited basis," Mot. to Expedite at 12,  lacks merit.  All of the categories of

27  documents discussed in Semitool are much more clearly defined than the sweeping category of
    "marketing materials" Apple seeks here.

28

1 ████████████████████████████████████████████████████████████

2 ██████████████████████████ [5]

3       Second, Apple's request for "documents relating to any copying of design elements of, or

4 attempts to design around Apple's intellectual property relating to, the iPhone 4, iPad, and iPad 2"

5 fares no better. (Mot. to Expedite (D.N. 10) at 13.)  "[U]se of a broad term such as 'relate to'

6 provides no basis upon which a party can reasonably determine what documents may or may not

7 be responsive."  Qwest, 213 F.R.D. at 420-21 (quoting W. Res., Inc. v. Union Pac. R.R. Co., 2001

8 WL 1718368, *3 (D. Kan. 2001).)  Thus, this request is overbroad on its face.  Further, Apple has

9 not defined what "Apple's intellectual property relating to [] the iPhone 4, iPad, and iPad 2" is,

10 and Samsung is not in a position to define that term for itself.  Finally, because there is no reason

11 to believe that Samsung has copied or attempted to design around Apple's intellectual property,

12 this request essentially asks that Samsung conduct a search that confirms a negative.  (Rosenberg

13 Opp. Decl. at ¶ 24;  Merrill Opp. Decl. at ¶ 17)  Thus, the request demands an exhaustive search of

14 all of Samsung's documents.  (Id.)  This request, too, is not "limited."

15       Finally, Apple seeks a 30(b)(6) deposition of Samsung on a wide variety of topics,

16 including:  (1) the design, function and operation of the shell and graphical user interfaces of five

17 different, highly complex Samsung products;  (2) alleged copying by Samsung of design elements

18 of three of Apple's products; and (3) alleged attempts by Samsung to design around three of

19 Apple's products.  (Mot. to  Expedite (D.N. 10) at 9-10.)  Apple requests this deposition by

20 May 19, a week from the date its motion is to be heard.

21       As a sophisticated manufacturer of high-tech electronics itself, see Compl. at ¶ 13,  Apple

22 should know that a multitude of people contribute to the design and creation of mobile phones and

23

24     [5]  STA, SEA and SEC are separate entities.  (Certification of Interested Persons Or Entities

25 (D.N. 22);  Rosenberg Opp. Decl. at ¶ 23;  Merrill Opp. Decl at ¶ 16).  █████████████████

26 ████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████

28 ██████████

1  tablet computers.  Simply to identify and interview potential witnesses who could testify on

2  Samsung's behalf about the design, function and operation of the shells and graphical user

3  interfaces of the Galaxy S2, Galaxy 8.9, Galaxy 10.1, Infuse 4G and 4G LTE is a significant

4  undertaking. ███████████████████████████████████████████

5  ████████████████████████████████████████████████

6  █████████████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ██████████████████████████████████████████

9  ███████████████████████████████████████████████

10  ████████████████████████████████████████████

11  ███████████████████████████████████████████

12  ██████████████████████████████████████████████████

13  █████████████████████████████████████████████████

14  ████████████████████████████████████

15  ███████████████████████████████████

16  █████████████████████████████████████████████████

17  ██████████████████████████████████  Apple's deposition

18  topics are thus too broad to be the subject of expedited discovery.[6]

19      In sum, the overbreadth of Apple's discovery requests weighs against granting Apple's

20  Motion to Expedite Discovery.

21

22

23

24  _____

25  [6]  Apple cites KLA-Tencor Corp. v. Murphy, 717 F. Supp. 2d 895 (N.D. Cal. 2010), for the
proposition that oral depositions are "routinely permitted in these circumstances." (Mot. to

26  Expedite at 12.)  That proposition is called into question by another case cited by Apple that
disapproves of "a free ranging deposition for which a representative of Defendants may not have

27  had sufficient time or information with which to prepare."  Semitool, Inc. v. Tokyo Electron
Am., Inc., 208 F.R.D. 273, 277 (N.D. Cal. 2002).

28

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

C.   **Apple Articulates No Proper Purpose for the Expedited Discovery It Seeks.**

       1.   **Apple's Claim That Introduction of Samsung's Products Into the Market Will Potentially Cause Apple Irreparable Harm Is Not a Proper Purpose of Expedited Discovery.**

Apple bases its Motion to Expedite Discovery on its belief that Samsung's sales of its unreleased products "have the potential to cause irreparable harm to Apple." (Id.)  Thus, Apple argues, "[w]ithout an order permitting expedited discovery, Apple would be required to wait until Samsung's new products are commercially available, and would be forced to suffer the attendant irreparable harm that comes with sales of infringing products." (Id. at 11.)  Though Apple's Motion to Expedite Discovery is not entirely clear on this point, it appears that Apple seeks discovery on these products in order to decide whether to seek a preliminary injunction against them. (Mot. to Expedite (D.N. 10) at 11 ("This motion represents Apple's only opportunity to obtain information to preserve the status quo").)

Apple's potential "irreparable harm" argument is not a proper purpose for expedited discovery.  Another district court has already considered and rejected the argument that the release of potentially infringing products could pose the risk of irreparable harm:

> Momenta claims that infringement of its patent is imminent because Teva is likely to obtain FDA approval and release its product. Nevertheless, any economic damages that Momenta may suffer as a result of Teva introducing its product on the market are readily calculable. When that is the case, there is no risk of irreparable harm.

Momenta 2011 WL 673926, *2.  Given the similarity between Apple's irreparable harm argument and the argument advanced by the plaintiff in Momenta, the district court's reasoning in that case is plainly applicable here.  Any alleged harm Apple might suffer by the introduction of Samsung's products into the market can be compensated by money damages.  "Monetary damages, no matter how substantial, are generally not considered irreparable harm as adequate compensatory relief will be available at a later date." Nanoexa Corp. v. Univ. of Chicago, No. 10-CV-2631-LHK, 2010 WL 3398532, *4 (N.D. Cal. 2010) (Koh, J.) (citing Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1097, 1202 (9th Cir. 1980).

Further, even if, for the sake of argument, the Court were to entertain Apple's incorrect argument that it could be irreparably harmed by the introduction of Samsung's products, the Court

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

1   should not presume that Apple would be entitled to injunctive relief. eBay Inc. v. MercExchange,

2   L.L.C., 547 U.S. 388, 393-94 (2006); Edge Games, Inc. v. Electronic Arts, Inc., 745 F. Supp.

3   2d 1101, 1117 (N.D. Cal. 2010). Rather, Apple "must . . . establish that it is likely to suffer

4   irreparable harm in the absence of preliminary injunctive relief." Nanoexa, 2010 WL 3398532 at

5   *5. Apple fails to carry this burden. On the question of "irreparable harm," Apple offers only

6   cursory – and unsupported – attorney argument. (See Mot. to Expedite (D.N. 10) at 1, 11.) Apple

7   offers the declarations of no fact witnesses, nor expert testimony, to support these allegations.

8   Such "conclusory and speculative allegations are insufficient to prove irreparable harm."

9   Nanoexa, 2010 WL 3398532 at *5. Further, Apple's irreparable harm argument is undermined by

10  its own failure to offer any proof that it has been irreparably harmed by entry into the market of

11  "Samsung's existing Galaxy products," which Apple claims are "exemplary" of Samsung's

12  "pattern and practice by Samsung of copying Apple's patents, trademarks, trade dress, and other

13  intellectual property in connection with mobile devices."[7] (Mot. to Expedite at 1.) Thus, Apple

14  "has provided no evidence that entry of a competitor into the market will cause irreparable loss of

15  market share and revenue. Without a risk of irreparable harm, expedited discovery is

16  unwarranted." Momenta, 2011 WL 673926 at *2 (internal citation omitted).

17       Finally, Apple's claimed reason for desiring expedited discovery in the first place—to

18  determine whether Samsung "is actively copying Apple's technology," Mot. to Expedite at 11—is

19  too speculative to serve as the basis for the rare exception of expedited discovery. For example,

20  the alleged statements by a Samsung executive on which Apple relies for its suspicion that

21  Samsung is "retooling its new Galaxy Tabs to emulate more closely Apple's proprietary designs

22  and features" refer to the thinness of the Galaxy Tab and that product's price. (Mot. to Expedite

23  (D.N. 10) at 4 (citing Bartlett Expedite Decl. Ex. 4 (D.N. 11-4)), 11.) Surely, Apple does not have

24  a monopoly on the thinness of mobile devices and competitive pricing. Matsushita Elec. Indus.

25

26  _____

27  [7] It is noteworthy that Apple has not accused the Galaxy S2, Galaxy 8.9, Galaxy 10.1, Infuse
    4G and 4G LTE of any intellectual property violation that it does not assert against existing

28  Samsung products on the market.

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

1   Corp. v. Zenith Radio Corp., 475 U.S. 574, 594 (1986) ("[C]utting prices in order to increase

2   business often is the very essence of competition."). Moreover, it is unreasonable for Apple to

3   "suspect" that Samsung might be "actively copying Apple's technology" based on these

4   statements. Indeed, even if accepted as true, the statements support the conclusion that Samsung

5   planned to "retool" the Galaxy Tab in order to make it more *distinctive* from Apple's products, not

6   more similar. Finally, any efforts by Samsung to make its unreleased products more *functional* –

7   e.g., thinner – cannot support Apple's claims. (Mot. to Expedite (D.N. 10) at 11.) "Trademark or

8   trade dress protection extends only to product features that are nonfunctional." Disc Golf

9   Ass'n, Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1006 (9th Cir. 1998). Yet as Apple itself

10  alleges, "the end result" of its claimed trade dress "is an elegant product that is more accessible,

11  easier to use, and much less technically intimidating" than competing products. (Compl. (D.N. 1)

12  at ¶ 27). Although trade dress must be viewed as a whole, "where the whole is nothing other than

13  the assemblage of functional parts, and where even the arrangement and combination of the parts

14  is designed to result in superior performance, it is semantic trickery to say that there is still some

15  sort of separate 'overall appearance' which is non-functional." Leatherman Tool Group, Inc. v.

16  Cooper Indus., Inc., 199 F.3d 1009, 1013 (9th Cir. 1999).

17          2.      Apple's Cited Cases Do Not Support Its Argument That a Competitor's
                    Unreleased Products Are Subject to Expedited Discovery.

18          Apple does not point the Court to a single case where discovery was ordered into

19  competitors' unreleased products. Apple primarily relies upon Semitool, 208 F.R.D. 273, for the

20  proposition that "good cause is frequently found in cases involving claims of infringement and

21  unfair competition." (Mot. to Expedite at 10.) While Semitool resulted in the grant of expedited

22  discovery, Magistrate Judge Chen's decision in that case was based upon a variety of facts not

23  present in this case. First, in Semitool, the defendants had conceded the relevance of the requested

24  discovery. Semitool, 276 F.R.D. at 276. Samsung has made no such concession. Second, the

25  defendants in Semitool had had notice of the discovery that was sought in the plaintiff's motion

26  for over a year. Id. Here, Samsung had no notice of Apple's requested discovery until Apple

27  sprang its motion on Samsung. Further, the plaintiff in Semitool sought to move up the discovery

28

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

1   schedule by only 3 <u>weeks</u>. <u>Id.</u> at 277.  In this case, the Rule 26(f) conference was previously

2   scheduled for August 18, 2011.  (Order Setting Initial Case Mgmt. Conference and ADR

3   Deadlines (D.N. 7); <u>see also</u> Notice of Impending Reassignment to a U.S. District Court Judge

4   (D.N. 15).)  Assuming that the Court will set a Rule 26(f) conference at a similar time, granting

5   Apple's motion would accelerate discovery by 3 <u>months</u>.  Finally, in <u>Semitool</u>, the competitor's

6   product into which the plaintiff sought expedited discovery was already being sold and distributed,

7   whereas here Apple seeks discovery into Samsung's unreleased products.  276 F.R.D. at 274.

8           Apple's other cited cases also are inapposite to the present situation.  <u>Zynga Game</u>

9   <u>Network Inc. v. Williams</u>, No. 10-cv-1022 JF (PVT), 2010 WL 2077191 (N.D. Cal. May 20,

10  2010);  <u>Hard Drive Prods., Inc. v. Does</u>,  No. 11-cv-1567, 2011 WL 1431612 (N.D. Cal. Apr. 14,

11  2011); and  <u>IO Grp., Inc. v. Does 1–65</u>, No. 10-cv-4377 SC, 2010 WL 4055667 (N.D. Cal. Oct.

12  15, 2010), all concerned requests for expedited discovery to identify Doe defendants.  Apple does

13  not seek discovery for this purpose.  <u>In re Countrywide Fin. Corp. Deriv. Litig.</u>, 542 F. Supp.

14  2d 1160 (C.D. Cal. 2008), denied the plaintiff's requested discovery on an independent basis, and

15  thus did not reach the question as to whether the plaintiff had established "good cause" for

16  expedited discovery.  <u>Interserve, Inc. v. Fusion Garage PTE, Ltd.</u>,  No. 09-cv-05812 JW (PVT)

17  2010 WL 143665 (N.D. Cal. Jan. 7, 2010), concerned expedited discovery into a product that the

18  plaintiff had reason to believe was merely a rebranded version of a product that the plaintiff and

19  defendant had collaborated in creating.  Further, the discovery at issue in <u>Interserve</u> consisted of

20  interrogatories and document requests, not product samples.  Here, by contrast, Apple seeks a

21  sneak peek of its competitor's actual unreleased products.

22              3.    <u>Apple Has Not Shown That the Evidence It Seeks Will Be Lost Before the</u>
                     <u>Normal Discovery Period Begins.</u>
23
24          A party seeking expedited discovery is expected to show that the evidence sought risks

     being destroyed before the normal discovery period begins.  <u>Wangson</u>, 2008 WL 4239155, at *7.
25
     Apple does not even ***contend***, much less present evidence, that the discovery it seeks now will no
26
     longer be available during the normal course of discovery.  In fact, without a preliminary
27
     injunction, commercial samples of the products at issue and their marketing materials will become
28

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

1  available to Apple—and Apple will not even require this Court's assistance to get them, since they

2  will be available to the general public. Thus, Apple will suffer no harm if it must wait to seek the

3  discovery it desires until the normal discovery period opens.

4          Because Apple identifies no proper purpose for the discovery it seeks, this factor weighs

5  against granting Apple's Motion to Expedite Discovery.

6          D.      It Would Be Extremely Burdensome on Samsung to Comply With Apple's
                   Discovery Requests.
7

8          Apple's request that it be permitted access to information concerning five of Samsung's

9  unreleased products is outrageous, and, if granted, would severely harm Samsung. Apple

10  admittedly competes with Samsung in the market for mobile phones and tablet computers.

11  (Compl. (D.N. 1) at ¶ 4.) Samsung considers information about unreleased products – especially

12  the products themselves – to be trade secrets. (Rosenberg Opp. Decl. at ¶ 25; Merrill Opp. Decl.

13  at ¶ 18.) To force Samsung to hand over to its fierce competitor information concerning its

14  unreleased products would put Samsung at an extraordinary competitive disadvantage, and Apple

15  knows this. Apple itself believes that information about its own unreleased products is a trade

16  secret, and fights zealously to prevent disclosure of that information:

17              On December 13, 2004, Apple filed a complaint against "Doe 1, an
                unknown individual," and "Does 2–25," whom it described as
18              unidentified persons or entities. The gist of the claim was that one or
                more unidentified persons, presumably the defendants, had
19              "misappropriated and disseminated through web sites confidential
                information about an unreleased product...." Such information,
20              Apple alleged, constitutes a trade secret: It possesses commercial
                and competitive value that would be impaired by disclosure in that,
21              if it is revealed, "competitors can anticipate and counter Apple's
                business strategy, and Apple loses control over the timing and
22              publicity for its product launches." Therefore, Apple alleged, it
                "undertakes rigorous and extensive measures to safeguard
23              information about its unreleased products."

24  O'Grady v. Superior Court, 139 Cal. App. 4th 1423, 1436 (2006). Apple has gone so far as to

25  contact local police when it learned that the gadget blog Gizmodo had acquired a prototype of the

26  unreleased iPhone 4 and published information about it, leading to the raid of a Gizmodo editor's

27  home. (Decl. of Erik Olson In Support of Samsung's Opp. to Pl.'s Mot. to Expedite Disc., Ex. A.)

28  Considering that Apple regards information about unreleased products to be a trade secret because

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

1   competitors can use it to "anticipate and counter . . . business strategy," it is beyond the pale for

2   Apple to request that Samsung throw itself on its sword and hand over information about its

3   unreleased products, much less *samples* of those products.  The failure of Apple to cite to any case

4   ordering a party to provide samples of its unreleased products to its competitor on an expedited

5   basis only reinforces this conclusion.[8]  Apple should not be allowed to circumvent the competitive

6   process by gaining advance access to its competitor's unreleased products through litigation, and

7   Samsung should not be ordered to suffer it.

8          In addition to the severe competitive harm that Samsung would suffer if forced to reveal to

9   Apple the information Apple requests, actually collecting the documents and things Apple seeks,

10  and preparing a 30(b)(6) witness or witnesses on Apple's deposition topics would pose an

11  extremely heavy burden on Samsung.

12         As an initial matter, Apple's May 17 deadline for the production of the documents and

13  things it requests is simply unworkable.  Because Samsung considers information about its

14  unreleased products to be trade secrets, the internal approval process for disclosing such

15  information voluntarily would take a significant amount of time in and of itself.  That would not

16  leave sufficient time to produce the documents and things Apple requests by a May 17 deadline if

17  that approval were granted.

18  ████████████████████████████████████████████

19  ██████████████████████████████████████████████████

20  ██████████████████████████████  Thus, Samsung is simply

21  currently unable to comply with this portion of Apple's requests.

22  ████████████████████████████████████████████

23  ██████████████████████████████████████████████████

24

---

25         [8]  Apple cites <u>Trak Inc. v. Benner Ski KG</u>, 475 F. Supp. 1076  (D.C. Mass. 1979) for the
26  proposition that "it may be less prejudicial to enjoin a defendant that has invested fewer resources
    in an infringing product than to wait until the defendant has invested more resources in a product,
27  and then later enjoin its use."  (Mot. to Expedite at 7.)  However, <u>Trak</u> was decided on a motion
    for a preliminary injunction, and has nothing to do with discovery, much less expedited discovery.
28

**SAMSUNG'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**

1  ██████████████████████████████████████████████████████████████████

2  ████████  Thus, Samsung is also currently unable to comply with this portion of Apple's requests.

3        Fourth, responding to Apple's request for "marketing materials" will entail an extensive

4  and expensive search by Samsung.  ██████████████████████████████████████████

5  ████████████████████  (Rosenberg Opp. Decl. at ¶ 11;  Merrill Opp. Decl. at ¶ 8.)   To

6  collect the electronic records of each such Samsung employee would be extremely burdensome, to

7  say nothing of the time and expense it would take for Samsung's outside counsel to review the

8  collected documents for relevance and privilege.  (Rosenberg Opp. Decl. at ¶ 12;  Merrill Opp.

9  Decl. at ¶ 9.)  To the extent "marketing materials" also includes physical objects, Samsung would

10  need to interview each of its employees involved in the U.S. marketing of these products to

11  determine where such physical objects are located.  (Rosenberg Opp. Decl. at ¶ 13;  Merrill Opp.

12  Decl. at ¶ 10.)  ████████████████████████████████████████████████

13  (Id.) Collecting these objects on an expedited basis would thus pose an unreasonable burden on

14  Samsung.

15        Fifth, it would be extremely burdensome for Samsung to prepare for a deposition on the

16  "design, function and operation of the shells and graphical user interfaces of the Galaxy S2,

17  Galaxy Tab 8.9, Galaxy Tab 10.1, Infuse 4G, and 4G LTE."  ████████████████████

18  ████████████████████████  (Rosenberg Opp. Decl. at ¶ 14.)  Thus,

19  STA would have to potentially interview all of these design employees in order to prepare for a

20  deposition.  (Id.)  ████████████████████████████████████████████

21  █████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████

24  █████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████████████

26  ────────────────────

27      [9]   As noted in footnote 5, supra, it is not a given that SEA or STA could learn the identities of
SEC's design personnel without SEC's permission.

28

1   ███████████████████████████████████████████████████████████

2   ███████████████████████████████████████████  (Rosenberg Opp. Decl. at ¶ 15.)   After

3   their respective searches, SEA and STA would have to interview the employees identified as a

4   result of those searches.  Having done all that, SEA and STA would then have to prepare a person

5   or persons for deposition.  It would be unreasonable to expect that Samsung could do all this by

6   May 19, a mere week after the hearing on Apple's motion.  The Court should not allow Apple to

7   take a 30(b)(6) deposition of Samsung "before [Samsung] . . . may . . . investigate the facts, and

8   prepare for the interrogation."  Avaya, Inc. v. Acumen Telecom Corp., No. 10-cv-03075-CMA-

9   BN, 2011 WL 9293, *2 (D. Colo. Jan. 3, 2011).

10        Finally, there is no reason to believe that Samsung is even in possession of "documents

11   relating to any copying of design elements of, or attempts to design around Apple's intellectual

12   property relating to, the iPhone 4, iPad, and iPad 2." (Rosenberg Opp. Decl. at ¶ 24; Merrill Opp.

13   Decl. at ¶ 17.)  It would thus be enormously burdensome for Samsung to search for such

14   documents, since such a search would entail confirming a negative, i.e., a search through every

15   one of Samsung's documents.  (Id.)

16        Because Apple's requested discovery would impose an extreme burden upon Samsung,

17   this factor also weighs against granting Apple's Motion to Expedite Discovery.

18            E.      Apple's Motion Seeks Extraordinary Acceleration of Discovery.

19        As even Apple admits, its discovery "request is made substantially in advance of the

20   formal start of discovery," as "the Rule 26(f) conference . . . is likely to be months away."  (Mot.

21   to Expedite (D.N. 10) at 10, 12.)  Prior to the reassignment of this case from Magistrate Judge

22   Beeler to this Court, which vacated the Case Management Conference date, which in turn

23   determined when the Rule 26(f) conference was to occur, the Rule 26(f) conference was scheduled

24   for August 18, 2011.  (Order Setting Initial Case Management Conference and ADR Deadlines

25   (D.N. 7);  Notice of Impending Reassignment to a U.S. District Judge (D.N. 15).)  Here, Apple

26   seeks documents and things from Samsung by May 17, more than 3 months prior to the originally

27   scheduled Case Management Conference.  (Proposed Order Granting Pl.'s Mot. to Expedite (D.N.

28   11-12) at 1-2.)  That is a far cry from the mere 3 weeks by which the plaintiff sought to accelerate

1    discovery in <u>Semitool</u>, 208 F.R.D. at 276,  the case most heavily relied-upon by Apple.  Because

2    Apple seeks to accelerate discovery so drastically, this factor weighs against granting Apple's

3    Motion to Expedite Discovery.

4    IV.    <u>Conclusion</u>

5         For the foregoing reasons, Apple has not shown requisite good cause to expedite discovery

6    and the Court should DENY Plaintiff's Motion to Expedite Discovery.

7

8

9    DATED: May 5, 2011                      QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
10

11

12                                           By /s/ Victoria F. Maroulis
                                                Charles K. Verhoeven
13                                              Kevin P.B. Johnson
                                                Victoria F. Maroulis
14                                              Michael T. Zeller
                                                Attorneys for SAMSUNG ELECTRONICS
15                                              AMERICA, INC., and SAMSUNG
                                                TELECOMMUNICATIONS AMERICA, LLC
16

17

18

19

20

21

22

23

24

25

26

27

28