1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for Samsung Electronics Co. Ltd.,
   Samsung Electronics America, Inc., and
14 Samsung Telecommunications America, LLC

15
                     UNITED STATES DISTRICT COURT
16
              NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
17

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL APPLE TO PRODUCE RECIPROCAL EXPEDITED DISCOVERY**<br><br>Date: June 17, 2011<br>Time: 1:30 p.m.<br>Courtroom 4, 5th Floor<br>The Honorable Lucy H. Koh |

02198.51855/4183328.4

Case No. 11-cv-01846-LHK
**SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL APPLE TO PRODUCE RECIPROCAL EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Apple's Future iPhone and iPad Products Are Highly Relevant to the "Consistent Overall Look" Requirement for Trade Dress Protection in a Product Line. ...................................................................................................... 2

    B. Apple's Future iPhone and iPad Products Are Highly Relevant to the Likelihood of Confusion Analysis for both Trademark and Trade Dress Claims. ............................................................................................................. 4

        1. Similarity of the Marks/Trade Dress ............................................................ 6

        2. Proximity of the Goods ................................................................................. 6

        3. Strength of the Marks/Trade Dress ............................................................... 7

        4. Co-Existence in the Marketplace of the Goods at Issue ............................... 7

    C. Apple Will Not Be Prejudiced by Production of Its Future iPhone and iPad Products. ............................................................................................................. 8

        1. Apple Opened the Door to Discovery of Unreleased Products. .................... 8

        2. Samsung Is Entitled to Apple's Unreleased Products. .................................. 9

        3. Apple's Unreleased Products Will Be Adequately Protected. ..................... 10

III. CONCLUSION .................................................................................................................. 11

02198.51855/4183328.4

-i-    Case No. 11-cv-01846-LHK
**SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL APPLE TO PRODUCE RECIPROCAL EXPEDITED DISCOVERY**

# TABLE OF AUTHORITIES

**Page**

### Cases

AMF Inc. v. Sleekcraft Boats,
    599 F.2d 341 (9th Cir. 1979) ..................................................................................... 2, 6, 7

Bach v. Forever Living Prods. U.S., Inc.,
    473 F. Supp. 2d 1110 (W.D. Wash. 2007) ........................................................................ 8

Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp.,
    No. 07CV90, 2007 WL 4357672 (S.D. Cal. Dec. 11, 2007) ........................................... 11

Cartier, Inc. v. Four Star Jewelry Creations, Inc.,
    348 F. Supp. 2d 217 (S.D.N.Y. 2004) ............................................................................... 8

Disc Golf Ass'n, Inc. v. Champion Discs, Inc.,
    158 F.3d 1002 (9th Cir. 1998) ........................................................................................... 5

Fair Isaac Corp. v. Equifax, Inc.,
    Civil No. 06-4112, 2007 WL 2791168 (D. Minn. Sept. 25, 2007) ................................. 10

Innovation Ventures, LLC v. N2G Distrib.,
    635 F. Supp. 2d 632 ( E.D. Mich. 2008) ........................................................................... 5

Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,
    411 F.2d 1097 (2d Cir. 1969) ............................................................................................ 7

Maharishi Hardy Blechman Ltd. v. Abercrombie and Fitch Co.,
    292 F. Supp. 2d 535 (S.D.N.Y. 2003) ............................................................................... 2

Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,
    638 F.3d 1137 (9th Cir. 2011) ............................................................................... 2, 6, 7, 8

Pilot Corp. of America v. Fisher-Price, Inc.,
    344 F. Supp. 2d 349 (D. Conn. 2004) ........................................................................... 3, 4

Polaris Pool Sys., Inc. v. Letro Products, Inc,
    914 F. Supp. 375 (C.D. Cal. 1995) ................................................................................... 8

Puritan-Bennett Corp. v. Pruitt,
    142 F.R.D. 306 (S.D. Iowa 1992) ................................................................................... 10

Qualitex Co. v. Jacobson Products Co., Inc.,
    13 F.3d 1297 (9th Cir. 1994) ............................................................................................. 8

Rodan & Fields, LLC v. Estee Lauder Cos., Inc.,
    No. 10-CV-02451-LHK, 2010 WL 3910178 (N.D. Cal. Oct. 5, 2010) ............................ 2

Rose Art Indus., Inc. v. Swanson,
    235 F.3d 165 (3d Cir. 2000) ................................................................................................... 5

Salt Optics, Inc. v. Jand, Inc.,
    No. SACV 10-0828 DOC (RNBx), 2010 WL 4961702 (C.D. Cal. Nov. 19, 2010) .................... 5

Shelbyco Inc. v. Western Trimming Corp.,
    No. 2:97-CV-196C, 1997 WL 377982 (D. Utah May 12, 1997) ................................................ 3

Sleep Science Partners v. Lieberman,
    No. 09–04200 CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010) ............................................ 5

Trevino v. ACB American, Inc.,
    232 F.R.D. 612 (N.D. Cal. 2006) ............................................................................................ 10

Trovan, Ltd. v. Pfizer, Inc.,
    No. CV-98-00094 LGB MCX, 2000 WL 709149 (C.D. Cal. May 24, 2000) ............................ 7

Urbina v. Goodyear Tire & Rubber Co., CV07-3705 CAS (CTX),
    2009 WL 481655 (C.D. Cal. Feb. 23, 2009) ........................................................................... 11

Walker & Zanger, Inc. v. Paragon Indus., Inc.,
    549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007) .......................................................................... 5

Walt Disney Co. v. Goodtimes Home Video Corp.,
    830 F. Supp. 762 (S.D.N.Y. 1993) ........................................................................................ 2-3

Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC,
    259 F.3d 25 (1st Cir. 2001) ...................................................................................................... 3

Yurman Design, Inc. v. PAJ, Inc.,
    262 F.3d 101 (2d Cir. 2001) ..................................................................................................... 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Apple chose to make its impending preliminary injunction about future products when it sought access to Samsung's unreleased, next generation products. But rather than permit the Court to fully and properly assess Samsung's future products as they will appear in a future market, Apple wants the Court to consider only the Samsung-half of the future, and not what Apple's competing products will look like at the same time. Apple's proposed limits would prevent this Court from considering what consumers would otherwise encounter in the marketplace—the future products of both Apple and Samsung. Apple's proposal has the convenient effect (for Apple) of inhibiting reciprocal discovery. But it is contrary to applicable trademark law, under which Apple's next-generation products are relevant to whether Samsung's next-generation products infringe Apple's purported trade dress and trademark rights. Accordingly, this Court should order Apple to produce its next-generation smart phone and tablet computer, just as Apple demanded of Samsung.

Apple seems to think that because it is the plaintiff, the Court should only find relevant what Apple says is relevant. The law of trade dress and trademark are to the contrary. First, for Apple to have trade dress protection in the iPhone and iPad lines of products at all, it must prove that there is a "consistent overall look" for those products lines. Should the appearance of Apple's next generation iPhone and iPad deviate from the appearance of current and past iterations of those products, that deviation would undermine Apple's claim of a "consistent overall look," and, consequently, its claim for trade dress protection in the iPhone and iPad lines of products. Thus, these future products are relevant to Apple's claim that it is entitled to trade dress protection in these items at all.

Second, controlling Ninth Circuit law requires that the Court consider the parties' products as they will actually be encountered in the marketplace by consumers. Thus, to the extent the Court is to consider how Samsung's future products are to be encountered in the marketplace, it should also consider the Apple products most likely to be in the marketplace at the same time. Apple has not denied that those products will be its future versions of the iPhone and iPad.

Finally, given the high degree of protection that Samsung's outside counsel will afford Apple's unreleased products pursuant to a mutually applicable protective order, Apple will not be prejudiced by production of the next generation iPhone and iPad to Samsung's outside counsel. Therefore, Samsung's Motion to Compel Apple to Produce Reciprocal Expedited Discovery should be granted.

## II.  ARGUMENT

Apple does not dispute that it plans to bring a preliminary injunction motion against Samsung's future products based upon trademark and/or trade dress infringement. Nor does it dispute, because it cannot, the well-settled legal principles that will decide its motion. To prevail, a plaintiff must prove that it has protectable trade dress and trademarks and that the defendant's use will result in likelihood of confusion as analyzed under the Sleekcraft factors, which include the "strength of the mark," "proximity of the goods," "similarity of the marks," and "any other factors that bear on likelihood of confusion."  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979); Rodan & Fields, LLC v. Estee Lauder Cos., Inc., No. 10-CV-02451-LHK, 2010 WL 3910178, at *3 (N.D. Cal. Oct. 5, 2010); Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011);  NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS, http://www.cand.uscourts.gov/juryinstructions (click on "15. TRADEMARK," then "15.16 Infringement—Likelihood of Confusion—Factors—Sleekcraft Test"). Moreover, Apple does not deny that Apple will release new generations of the iPhone and iPad products later this year. Because Apple has not offered any persuasive rebuttal to Samsung's showing that these new products are relevant to both protectability and the likelihood of confusion, Samsung's motion to compel should be granted.

### A.  Apple's Future iPhone and iPad Products Are Highly Relevant to the "Consistent Overall Look" Requirement for Trade Dress Protection in a Product Line.

Where, as here, a plaintiff seeks trade dress protection in a series or line of products, it must prove that there is a "overall look" that is "consistent" across all products in the series or line. Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 116 (2d Cir. 2001); Maharishi Hardy Blechman Ltd. v. Abercrombie and Fitch Co., 292 F. Supp. 2d 535, 542 (S.D.N.Y. 2003); Walt Disney Co. v.

1  Goodtimes Home Video Corp., 830 F. Supp. 762, 766 (S.D.N.Y. 1993); Pilot Corp. of America v.
2  Fisher-Price, Inc., 344 F. Supp. 2d 349, 355 (D. Conn. 2004); Shelbyco Inc. v. Western Trimming
3  Corp., 43 U.S.P.Q. 2d 1140, 1143 (D. Utah May 12, 1997).   As one leading treatise has explained,
4  "if that consistent overall look is so common and ordinary as to be 'generic,' then no trade dress
5  protection can be given to it."   J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR
6  COMPETITION § 8:5.50 (4th ed. 2011); see also Yurman Design, Inc. v. PAJ, Inc., 262 F.3d at 118
7  (2d Cir. 2001) ("A unique combination of elements may make a dress distinctive, but 'the fact that
8  a trade dress is composed entirely of commonly used or functional elements might suggest that the
9  dress should be regarded as unprotectable or "generic" to avoid tying up a product or marketing
10 idea.'");   Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 259 F.3d 25 (1st Cir. 2001)
11 (if all that is left to tie the products together is a "combination of functional and common
12 features," the claimed product dress will likely lack inherent distinctiveness).

13         Here, Apple claims an "iPhone Trade Dress" and an "iPad Trade Dress."   (Compl. (D.N.
14 1) at 8-12.)   Apple contends that each product's trade dress has been applied consistently across
15 each iteration of the iPhone and iPad.   (Opp. at 12; Decl. of Grant L. Kim In Support of Apple's
16 Opp. to Samsung's Mot. to Compel Expedited Disc. ("Kim Decl.") Exs. 27 and 28 (D.N. 61-27
17 and 61-28).)   To obtain trade dress protection across those product lines, Apple must show that
18 the claimed "iPhone Trade Dress" remains consistent across all iterations of the iPhone and   the
19 "iPad Trade Dress" remains consistent across all iterations of the iPad.

20         Apple asserts that it "may choose the products the court examines when deciding a trade
21 dress claim."   (Opp. at 7.)   But that is wrong.   Apple cannot credibly contend – and this Court
22 should not entertain the fiction – that the next-generation iPhone and iPad will not be part of their
23 respective product lines simply because Apple does not want them to be.   Indeed, to the extent
24 the appearances of the iPhone and iPad change with their next iterations – as they have in the past[1]

---

[1]   Despite Apple's argument to the contrary, each iteration of the of the iPhone has had material design and packaging changes.   For example, the first generation of the iPhone has a largely silver back and curved sides, whereas the iPhone 4 has a largely black back and flat sides.    (footnote continued)

– the "consistent overall look" of those products' alleged trade dress will be diminished. Under the law, that diminished "consistent overall look," can preclude Apple from obtaining protection for the claimed "iPhone Trade Dress" and "iPad Trade Dress," as shown by the authorities cited above. At a minimum, it can lead to diminished protection. Pilot Corp. of Am. v. Fisher-Price, Inc., 344 F. Supp. 2d 349, 356 (D. Conn. 2004) (trade dress protection for a product line is weakened when the "design and package have changed with nearly every iteration of the product").

Plainly, the next-generation iPhone and iPad are necessarily relevant to defend against any preliminary injunction motion that Apple will bring on its claimed "iPhone Trade Dress" and "iPad Trade Dress." Such discovery will potentially allow Samsung defeat any preliminary injunction motion is not protectable or weakly protectable at best.

B. Apple's Future iPhone and iPad Products Are Highly Relevant to the Likelihood of Confusion Analysis for both Trademark and Trade Dress Claims.

As Samsung has previously shown, Apple's next-generation products are also relevant to likelihood of confusion. In response, Apple offers an interpretation of the likelihood of confusion analysis that is inconsistent with Ninth Circuit law and divorced from reality. Apple admits that it "will decide whether to file a motion for a preliminary injunction motion [*sic*] against Samsung's new products after completing its review of the five products that Samsung will produce on June 17, 2011." (Opp. at 8.) Of course, some of "Samsung's new products" are also Samsung's *future* products: they have not yet been released for sale to the public. Despite that fact Apple contends that it "will necessarily base any preliminary injunction motion on its own *established* trade dress and trademark rights, as embodied in products that Apple has *already released*, such as the iPhone 3GS, iPhone 4, iPad and iPad2 products. Any unannounced Apple products will be irrelevant to that motion." (Id. (emphasis added).) Apple claims it can

---

Also, as is clear from Apple's complaint, its packaging changed significantly from the iPhone 3GS version to the iPhone 4. (D.N. 1 at 9 (demonstrating that the box for the iPhone 3GS had black sides and straight-on picture of the front of the device on the cover, while the box for the iPhone 4 has white sides and an angled picture of the device on the cover that emphasizes the device's flat sides).)

1  do this because "Apple 'may choose the products the court examines when deciding a trade dress

2  claim.'"[2]   In other words, Apple will ask this Court to enjoin Samsung's products of tomorrow

3  based on a comparison of those products to Apple's products of today.

4       Apple claims that since it will file a preliminary injunction motion based only on its

5  alleged trademark and trade dress rights in the iPhone 3GS, iPhone 4, iPad and iPad2, it can

6  prevent the Court from considering the next generations of the iPhone or iPad.   (Opp. at 7,10.)

7  Presumably Apple believes that this would be the case even if those products are released before

8  the Court decides Apple's motion.   However, regardless of the products on which Apple bases its

9  preliminary injunction motion, Apple may not sidestep the likelihood of confusion analysis that

10 controls the question of trademark and trade dress infringement in this Circuit.   Disc Golf Ass'n,

11 Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1005 (9th Cir. 1998).   Samsung has identified at

12 least three Sleekcraft factors to which Apple's future products are highly relevant: "similarity of

13 the marks," "proximity of the goods" and "strength of the marks."   Apple has not overcome

14 Samsung's showing of this high degree of relevance for any of these factors.[3]

---

[2]   Apple's citations to Rose Art Indus., Inc. v. Swanson, 235 F.3d 165 (3d Cir. 2000), and Innovation Ventures, LLC v. N2G Distrib., 635 F. Supp. 2d 632, 641-642 ( E.D. Mich. 2008), are unavailing.   (See Opp. at 10.)   While the language Apple quotes from them is broad the facts of those cases do not justify the sweeping conclusion that Apple advocates.   Neither of those cases dealt with next generation products that were intended to be state-of-the-art replacements for the plaintiffs' current products; rather, they recognized that a plaintiff need not establish a uniform, consistent look for every product line or variant.   Consistent with those cases, Samsung is not arguing here that Apple needs to produce its MacAir or iMac—only the new version of the specific products Apple itself has put at issue.

[3]   Apple argues that the Court cannot consider the appearance of its future iPad or iPhone products because those products cannot have any trademark or trade dress protection until they are actually commercially used and promoted to the public.   (Opp. at 8.)   This argument ignores reality and cannot be squared with Apple's own statements.   According to Apple, its "new product announcements are major events in the technology industry."   (Redacted Decl. of Richard J. Lutton In Support of Apple's Opposition to Samsung's Motion to Compel Expedited Discovery ("Lutton Decl."), at ¶ 6.)   They "generate an enormous amount of publicity and high level of interest among consumers and developers alike."   (Id. at ¶ 7.)   Thus, based on Apple's own admissions, the Court should properly conclude that any "design, shape, mark, or other symbol" on Apple's future iPhone and iPad products will both be used in commerce and promoted to the public.

### 1. Similarity of the Marks/Trade Dress

As Apple cannot dispute, the "similarity of the marks" factor turns on how the products are "encountered in the marketplace." Network Automation, 638 F.3d at 1150, citing Sleekcraft, 599 F.2d 341. As Apple also cannot deny, this analysis entails "examining the actual situations in which consumers [are] likely to read, hear, and consider the meaning of the" trademarks or trade dress at issue. Id. at 1150-51. Nor can Apple credibly contend that after it releases its next-generation iPhone and iPad, a consumer walking into a cell phone or tablet computer store will only encounter Samsung's future phones and tablets placed side-by-side with Apple's end-of-life, old versions of its iPhone and iPad, while Apple's brand new generations of the iPhone and iPad are nowhere to be seen. Nor can Apple claim that consumers will put on blinders and simply ignore Apple's next generation products. On the contrary, given that Apple's next-generation iPhone and iPad will be in the market at the same time as Samsung's future products – which, again, Apple does not deny – the most likely manner in which consumers will encounter Samsung's just-released products will be alongside Apple's just-released products. The older models of each will be on back shelves, if they are even still in stores at all. Thus, to assess the similarity of the marks and trade dress that consumers will actually encounter in the marketplace as required by controlling Ninth Circuit law, the Court must consider the Samsung and Apple products that consumers will most likely encounter at the same time. Network Automation, 638 F.3d at 1150. The Court should therefore reject Apple's argument that the "similarity of the marks" factor analysis case must be looked at with blinders on. The only way to properly conduct this analysis is by including a comparison of Apple's future products to Samsung's future products.

### 2. Proximity of the Goods

Apple also cannot prevent the Court from considering the "proximity of the goods" Sleekcraft factor simply by choosing not to rely on its future products in a preliminary injunction motion. (Opp. at 10.) Future products are relevant to determine whether parties with non-competing products will "bridge the gap" with directly competing products. Kiki Undies Corp. v. Promenade Hosiery Mills, Inc., 411 F.2d 1097, 1100 n.4 (2d Cir. 1969); Trovan, Ltd. v. Pfizer,

Inc., No. CV-98-00094 LGB MCX, 2000 WL 709149, at *34 n.21 (C.D. Cal. 2000). Similarly, future products are relevant to show whether the parties' products will become less competitive. Here, even though Samsung and Apple's current products may compete, Samsung's future products will not necessarily compete with Apple's current products, nor will Samsung's future products necessarily compete with Apple's future products. For example, should Samsung's future phones operate on a 4G network, while Apple's future iPhone (like Apple's iPhone 4) operates on a 3G network, it would be evidence that the parties' products were drawing further away from one another because they would be less "similar in use and function." Network Automation, 638 F.3d at 1150 (proximity of goods is "measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function."). Accordingly, Apple must be required to disclose its future products so that the question of proximity of the goods can be properly evaluated.

### 3. Strength of the Marks/Trade Dress

Strength of a trade dress is a critical factor in the likelihood of confusion analysis. Sleekcraft, 599 F.2d at 348-49.[4] As explained in Section II.A, to the extent that Apple changes the appearance of the next generation iPhone and iPad, such change will at a minimum lessen the strength of Apple's claimed trade dress, since Apple is seeking to claim trade dress protection across the iPhone product line and the iPad product line. Such weakening will go not only to the validity of Apple's claimed trade dress protection, but also to whether there will be a likelihood of confusion between Apple's and Samsung's products.

### 4. Co-Existence in the Marketplace of the Goods at Issue.

Despite Apple's argument to the contrary, co-existence in the marketplace of the products at issue is crucial to the likelihood of confusion analysis for trade dress, since there can be no likelihood of confusion between a plaintiff's product that is no longer in the market and a

---

[4] Apple's argument that it has not abandoned its trade dress rights is irrelevant to the present motion. (Opp. at 11.) Samsung has not argued in its motion that Apple has abandoned its trade dress rights. Rather, Samsung has argued that changes to the claimed trade dress of Apple's product line are an important part of the analysis of "likelihood of confusion."

1  defendant's product that is.   Polaris Pool Sys., Inc. v. Letro Products, Inc, 914 F. Supp. 375, 376

2  (C.D. Cal. 1995).   The fact that the discontinued product might even still be available in some

3  markets does not change this conclusion.   Id.   ("The Court determined that even if a few models

4  of the discontinued Polaris 180 were still in some markets and that Polaris still sold rebuild kits for

5  the Model 180, the fact that *Polaris* had discontinued the Model 180 meant that the two products

6  could not be confused." (emphasis added)).[5][6]   Thus, for example, if Apple were to follow its past

7  practice of discontinuing its own sale of older generations of its products when newer generations

8  are released, there could be no likelihood of confusion between the claimed trade dress in its

9  current products.

   C.   Apple Will Not Be Prejudiced by Production of Its Future iPhone and iPad Products.

   1.   Apple Opened the Door to Discovery of Unreleased Products.

Apple expends a large portion of its Opposition protesting that production of its future iPhone and iPad products will severely prejudice it.   (Opp. at 12-15.)   It contends that its unreleased products are extremely sensitive trade secrets and that any production of them – even under a strict "outside counsel only" protective order – is not acceptable.   (Id. at 14.)   According to Apple, even though Samsung has been ordered to produce its own unreleased products, Apple

---

[5] Thus, Apple's citation to evidence that "other retailers" are still selling past versions of the iPhone or iPad is irrelevant.   What matters is that Apple itself has stopped actively selling those past versions.   As for the iPhone 3GS, this good is not in "proximity" to the Samsung products at issue.   Network Automation, 638 F.3d at 1150.   An end-of-life iPhone 3GS that sells for $49 is not "sold to the same class of purchasers" as, for example, the Samsung Infuse 4G, which is priced between $199 and $549.   (Compare Decl. of Grant L. Kim In Support of Apple's Opp. to Samsung's Mot. to Compel Expedited Disc. Exs. 20-22 (D.N. 61-20 to 61-22) to Ex. 29 (D.N. 61-29).)

[6] Apple's citation to Cartier, Inc. v. Four Star Jewelry Creations, Inc., 348 F. Supp. 2d 217, 224, 236 (S.D.N.Y. 2004) for the proposition that trade dress in a discontinued model can be infringed is thus contradicted by Polaris Pool, a decision of a district court in this Circuit applying the Sleekcraft factors (as recited in Qualitex Co. v. Jacobson Products Co., Inc., 13 F.3d 1297, 1305 (9th Cir. 1994)).   Apple's other cited case on this issue, Bach v. Forever Living Prods. U.S., Inc., 473 F.Supp. 2d 1110, 1125 (W.D. Wash. 2007) is inapposite.   There, the issue was whether a plaintiff could demonstrate any secondary meaning in a book cover design, even though it had used other cover designs for the same book, not whether the trade dress of a discontinued book cover design could be infringed.

1  should be held to a different standard.  Apple deserves this different treatment, it claims, because
2  Samsung announced its unreleased products, while Steve Jobs or some other high-ranking Apple
3  executive has not yet officially announced its next generation iPhone and iPad.  (Redacted Lutton
4  Decl. at ¶ 9; Opp. at 12.)
5        Apple's distinction finds no support in law and should be rejected.  If accepted, it would
6  mean that Apple's "unannounced" products could never be subject to expedited discovery, since a
7  requesting party could never come forward with an "official" admission of the existence of the
8  "unannounced" product into which it sought such discovery.  Furthermore, Apple should not now
9  be heard to complain about discovery into its own future products when it was Apple who opened
10 the door to discovery of future products in the first place.  Now that the shoe is on the other foot,
11 Apple cannot run away from its prior arguments that production of unreleased products will not
12 unduly burden the producing party.  Moreover, as the Court explained to Apple at the hearing on
13 Apple's motion to expedite discovery into Samsung's unreleased products, "what's good for the
14 goose is . . . good for the gander."  (Briggs Decl. Ex. 28 at 50:20-51:3.)  The Court has granted
15 Apple access to Samsung's highly confidential unreleased products, and thus Apple cannot now
16 claim that this information is off limits when Apple is on the receiving end of such a request.
17              2.      Samsung Is Entitled to Apple's Unreleased Products.
18        Apple argues that because Apple's unreleased products are trade secrets, "Samsung must
19 show (1) Apple's unannounced future products are relevant to a preliminary injunction motion; (2)
20 Samsung needs this information; and (3) there is a 'substantial factual basis' for Samsung's
21 arguments."  (Opp. at 14.)  Apple's reliance on Puritan-Bennett Corp. v. Pruitt, 142 F.R.D. 306,
22 309-311 (S.D. Iowa 1992), for this alleged test is unavailing.  First, "[i]t is dubious whether
23 Puritan-Bennett Corp.'s substantial factual basis requirement is necessary."  Fair Isaac Corp. v.
24 Equifax, Inc., Civil No. 06-4112 ADM/JSM, 2007 WL 2791168, *3 (D. Minn. Sept. 25, 2007).
25 Second, the "substantial factual basis" requirement is not part of the test employed in this district,
26 which only requires that the party seeking discovery of trade secrets show that the discovery
27 sought is "relevant and necessary."  Trevino v. ACB American, Inc., 232 F.R.D. 612, 617 (N.D.
28 Cal. 2006) (internal quotation marks omitted).  Finally, and most importantly, given the high

degree of relevance of the next generation iPhone and iPad to Samsung's defense against Apple's motion for a preliminary injunction, and the seriousness of the threat faced by Samsung in the form of that motion, there can be no question that Samsung needs these products. Thus, the Court should order Apple to produce its next generation iPhone and iPad because "[o]nce the moving party has established relevance and necessity, the discovery is virtually always ordered." Trevino, 232 F.R.D. at 617 (internal quotation marks omitted).

### 3. Apple's Unreleased Products Will Be Adequately Protected.

Any concerns that Apple has about the confidentiality of its unreleased products will be adequately addressed by the protective order under which Samsung has been ordered to produce its future products (including those future products that have never been "announced" because they have not even been finalized yet). (Order Granting Limited Expedited Disc. (D.B. 52), at 6 (ordering that "the expedited discovery ordered herein must be produced with the designation 'Outside Counsel Eyes Only.' Apple and its in-house counsel must not have access to the expedited discovery.")). Further, on Monday, June 6, Samsung proposed to Apple that the parties stipulate to entry of the Northern District of California's Patent Local Rule 2-2 Interim Model Protective Order, ("Model Protective Order"), with specific modifications, for purposes of expedited discovery in this action. (Decl. of Erik Olson In Support of Samsung's Motion to Compel Apple to Produce Reciprocal Expedited Disc. ("Olson Decl.") Ex. 1.) That Model Protective Order, as modified, would provide an extremely high level of protection for expedited discovery produced in this action by either party, including a "HIGHLY CONFIDENTIAL— OUTSIDE COUNSEL'S EYES ONLY" designation. Items produced under this designation could be accessed solely by a very a small group of people, and not by a party itself, including that party's in-house attorneys.[7] (Olson Decl. Ex. 2, Ex. 3 at 4-5.) Thus, confidentiality is no bar to

---

[7] Because Apple's next-generation products will not be disclosed to Samsung itself, Apple's claim that Samsung "is the last party that should be granted access to information about Apple products in development," is misplaced. (Opp. at 6.) Further, this (unfounded) inflammatory accusation essentially asks the Court to resolve this case (and Apple's motion) without full consideration.

02198.51855/4183328.4

-10-    Case No. 11-cv-01846-LHK
**SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL APPLE TO PRODUCE RECIPROCAL EXPEDITED DISCOVERY**

1  Apple's production of its unreleased products.    A producing party's concerns about

2  confidentiality of trade secrets are adequately balanced by a protective order that has an

3  "attorneys' eyes only" designation,    Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp., No.

4  07CV90, 2007 WL 4357672, at *2-4 (S.D. Cal. Dec. 11, 2007), and a court should be more

5  willing to allow discovery into trade secrets when there is a protective order in place to protect

6  non-movant's trade secrets.    See Urbina v. Goodyear Tire & Rubber Co., CV07-3705 CAS

7  (CTX), 2009 WL 481655, at *5 (C.D. Cal. Feb. 23, 2009).

III.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Samsung's motion, the Court should GRANT Samsung's Motion to Compel Apple to Produce Reciprocal Expedited Discovery.

DATED: June 10, 2011               QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                                       By /s/ Victoria F. Maroulis
                                          Charles K. Verhoeven
                                          Kevin P.B. Johnson
                                          Victoria F. Maroulis
                                          Michael T. Zeller
                                          Attorneys for SAMSUNG ELECTRONICS CO.,
                                          LTD., SAMSUNG ELECTRONICS AMERICA,
                                          INC., and SAMSUNG
                                          TELECOMMUNICATIONS AMERICA, LLC