1   HAROLD J. MCELHINNY (CA SBN 66781)
    HMcElhinny@mofo.com
2   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
3   JENNIFER LEE TAYLOR (CA SBN 161368)
    JTaylor@mofo.com
4   JASON R. BARTLETT (CA SBN 214530)
    JasonBartlett@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone: 415.268.7000
7   Facsimile: 415.268.7522

8   Attorneys for Plaintiff
    APPLE INC.

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14  APPLE INC., a California corporation,        Case No.    4:11-cv-01846-LHK

15                  Plaintiff,                   **APPLE'S OPPOSITION TO**
                                                 **SAMSUNG'S MOTION TO**
16         v.                                    **COMPEL EXPEDITED**
                                                 **DISCOVERY**
17  SAMSUNG ELECTRONICS CO., LTD., A
    Korean business entity; SAMSUNG             Date:    June 17, 2011
18  ELECTRONICS AMERICA, INC., a New York       Time:    1:30 p.m.
    corporation; SAMSUNG                         Place:   Courtroom 4, 5th Floor
19  TELECOMMUNICATIONS AMERICA, LLC, a          Judge:   Hon. Lucy H. Koh
    Delaware limited liability company.,
20                                               PUBLIC REDACTED VERSION
                    Defendants.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTS ................................................................................................................................ 2

      1.   Samsung's Discovery Requests at the May 12 Hearing and the
Court's Ruling on Apple's Motion for Expedited Discovery ............................... 2

      2.   Samsung's Withdrawal of its Prior Discovery Requests and Failure
to Explain Why Future Apple Products Are Relevant ......................................... 3

ARGUMENT ..................................................................................................................... 5

I.    APPLE'S FUTURE PRODUCTS ARE NOT RELEVANT TO APPLE'S
CLAIMS OR TO SAMSUNG'S DEFENSES TO A PRELIMINARY
INJUNCTION MOTION ............................................................................................ 6

    A.   Apple's Future Products Are Irrelevant Because Apple Will Base
any Preliminary Injunction Motion on its Current Rights as
Embodied in its Current Products, and Not on Future Rights or
Products ........................................................................................................ 7

    B.   Samsung Has Failed to Show that Future Apple Products Are
Relevant to Any of the *Sleekcraft* "Likelihood of Confusion"
Factors ......................................................................................................... 8

    C.   The Hypothetical Release of Future Apple Products with Different
Trade Dress Will Not Affect Apple's Claims Based on Current
Apple Products ............................................................................................ 10

II.   DISCLOSURE OF INFORMATION ABOUT FUTURE APPLE
PRODUCTS WOULD CAUSE SEVERE PREJUDICE TO APPLE ........................... 12

CONCLUSION ................................................................................................................ 15

ECF ATTESTATION ....................................................................................................... 16

1

2

## <u>TABLE OF AUTHORITIES</u>

3
                                                                                    **Page(s)**

4     **CASES**

5     *AMF Inc. v. Sleekcraft Boats,*
         599 F.2d 341 (9th Cir. 1979) ............................................................... passim

6
      *Bach v. Forever Living Prods. U.S., Inc.,*
7        473 F. Supp. 2d 1110 (W.D. Wash. 2007) ........................................... 10

8     *Cartier, Inc. v. Four Star Jewelry Creations, Inc.,*
         348 F. Supp. 2d 217 (S.D.N.Y. 2004) ................................................ 11
9
      *Clicks Billiards, Inc. v. Sixshooters, Inc.,*
10       251 F.3d 1252 (9th Cir. 2001) ............................................................ 8

11    *Ferrari S.p.A. Esercizio Fabbriche Automobili e Corse v. McBurnie,*
         11 U.S.P.Q. 2d 1843 (S.D. Cal. 1989) ............................................... 11
12
      *Innovation Ventures, LLC v. N2G Distrib.,*
13       635 F. Supp. 2d 632 (E.D. Mich. 2008) ......................................... 7, 10

14    *OMG Fid., Inc. v. Sirius Tech., Inc.,*
         No. 07-80121MISC RMW (RS), 2007 U.S. Dist. LEXIS 51766
15       (N.D. Cal. July 5, 2007) ...................................................................... 15

16    *Prudential Ins. Co. v. Gibraltar Fin. Corp.,*
         694 F.2d 1150 (9th Cir. 1982) ............................................................ 11
17
      *Puritan-Bennett Corp. v. Pruitt,*
18       142 F.R.D. 306 (S.D. Iowa 1992) ....................................................... 14

19    *Rose Art Indus., Inc. v. Swanson,*
         235 F.3d 165 (3d Cir. 2000) ............................................................ 7, 10
20
      *Upjohn Co. v. Hygieia Biological Labs.,*
21       151 F.R.D. 355 (E.D. Cal. 1993) ........................................................ 14

22    *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,*
         529 U.S. 205 (2000) .............................................................................. 8
23

24

25

26    **STATUTES**

27    15 U.S.C. § 1127 .......................................................................................... 11

28

OPPOSITION TO MOTION TO COMPEL EXPEDITED DISCOVERY                                    ii
Case No. 4:11-cv-01846-LHK
sf-3000922

1

2

**OTHER AUTHORITIES**

3

2 *McCarthy on Trademarks and Unfair Competition* § 16:1 .......................................................... 8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2   Samsung's Motion to Compel expedited discovery of future Apple products is

3   fundamentally misconceived.  This case is about Samsung's infringement of Apple's *current*

4   intellectual property rights, which are embodied in products that Apple has *already* released.

5   Apple has advanced no claim that Samsung has infringed *future* rights related to *future* Apple

6   products.  Because Apple's claims are based on Apple's current rights and products, future Apple

7   products have no relevance to Apple's claims or to Samsung's defenses to a preliminary

8   injunction motion.

9   Samsung's reliance on an overly simplistic view of "reciprocity" is unavailing.  In

10   ordering Samsung to produce samples of its soon-to-be released products, the Court found that

11   Samsung had already released images and samples of its new products to the public, and that

12   Apple had presented evidence that "Samsung's products are designed to mimic Apple's

13   products." The Court ordered Samsung to produce samples of forthcoming products only after

14   finding that they are "directly relevant" to Apple's infringement claims and "central" to any

15   motion for preliminary injunction.

16   Samsung, in contrast, has not shown that future Apple products are "directly relevant" or

17   "central" to Apple's claims or to Samsung's defenses to a preliminary injunction motion.  Nor has

18   Samsung offered anything more than rank speculation about future Apple products.  Samsung

19   cannot offer more because Apple has not announced or distributed samples of its future products.

20   At the hearing on Apple's motion for expedited discovery, where the question of

21   reciprocity was first raised, Samsung made specific discovery requests that did *not* include future

22   Apple products.  Apple offered to confer with Samsung about those requests, but Samsung

23   withdrew them and pressed a new demand for irrelevant future Apple products.

24   Samsung's Motion to Compel is not a good faith attempt to obtain information needed to

25   defend against a preliminary injunction.  Rather, it is a transparent and improper attempt to harass

26   Apple by demanding extremely sensitive trade secrets that have no relevance to Apple's

27   infringement claims or to Samsung's defenses to a preliminary injunction.  Samsung's motion

28   should be denied.

1

**FACTS**

2

    **1.**      **Samsung's Discovery Requests at the May 12 Hearing and the Court's Ruling on Apple's Motion for Expedited Discovery**

3

4          Samsung stated at the May 12 hearing on Apple's motion for expedited discovery that if

5 Apple were allowed to take expedited discovery for the purpose of a preliminary injunction

6 motion, Samsung would request discovery to oppose the motion.  Samsung identified several

7 issues, including evidence of confusion between Samsung and Apple products; documents

8 concerning loss of goodwill, market share, or reputation as a result of the introduction of

9 Samsung products; and research surveys.  (Declaration of Grant L. Kim ("Kim Decl."), filed

10 herewith, Ex. 1 (5/12/2011 Tr. at 34:2-22).)[1]

11          Apple replied that it was prepared to "meet and confer about what they reasonably need,"

12 and that Apple would provide discovery "if they're going to need it to oppose an injunction and if

13 it's reasonable."  (*Id.* at 35:4-9.)

14          At the end of the May 12 hearing, the Court ruled that Samsung should produce within 30

15 days one sample and related packaging of the most recent version of the products identified by

16 Apple, but denied Apple's other requests for expedited discovery.  (*Id.* at 48:18 to 49:1.)  The

17 Court stated that Samsung's request for mutual discovery was not "ripe," but that Samsung could

18 seek to pursue its request for "some type of reciprocal discovery."  (*Id.* at 49:4-7.)

19          On May 18, the Court confirmed its oral ruling by issuing its Order Granting Limited

20 Expedited Discovery.  The Court held that because Apple's claims are subject to "consumer

21 confusion" and "ordinary observer" standards, "the design and appearance of Samsung's

22 forthcoming products and packaging are directly relevant to Apple's trademark, trade dress, and

23 design claims," and the Samsung products "are likely to be central to any motion for preliminary

24 injunction."  (D.N. 52 at 4.)  While not opining on the merits, the Court noted that Apple had

25

---

26 [1]  Apple adopts Samsung's usage of "D.N." to refer to docket numbers of documents in this case. Reference to page numbers of "D.N." documents are to the number inserted by Pacer at the top of

27 the page.  References to page numbers of other documents (such as Samsung's Motion to Compel) are to the original number at the bottom of the page.

28

1    "produced images of Samsung products and other evidence that provide a reasonable basis for

2    Apple's belief that Samsung's new products are designed to mimic Apple's products." (*Id.* at 3.)

3    Apple provided "images of samples of Samsung's new products and media reports suggesting

4    that the design of Samsung's new Galaxy S2 phone is very similar to the design of Apple's

5    iPhone 4." (*Id.* at 4.)  The Court stated:  "This evidence, together with the apparently imminent

6    release of Samsung's new products, supports Apple's request for expedited discovery." (*Id.*)

7          The Court stated that "expedited discovery may be justified to allow a plaintiff to

8    determine whether to seek an early injunction," especially in "cases involving claims of

9    infringement and unfair competition." (*Id.* at 3 (citations omitted).)  The Court also noted that

10   "this case involves sophisticated parties and counsel who have had ongoing negotiations about

11   this dispute," and that "expedited discovery would allow the Court to address any request for

12   preliminary injunctive relief at the outset of the case, thereby providing a measure of clarity to the

13   parties early in the proceeding and facilitating effective case management." (*Id.* at 4.)  The Court

14   further noted that Samsung's argument about the confidentiality of its new products was

15   "undermined to some extent by evidence that Samsung has already released images and samples

16   of its forthcoming products to the media and members of the public." (*Id.* at 5.)

17         Based on the above factors, the Court concluded that Apple had shown good cause for

18   limited expedited discovery requiring Samsung to produce the most recent version of its five new

19   products and related packaging. (*Id.* at 3-4.)  However, the Court denied Apple's other discovery

20   requests, including its request for a 30(b)(6) deposition and for Samsung to produce documents

21   concerning its copying of, or attempts to design around, Apple's distinctive designs. (*Id.* at 5.)

22       **2.**    **Samsung's Withdrawal of its Prior Discovery Requests and Failure to**
                    **Explain Why Future Apple Products Are Relevant**
23

24         On May 16, Samsung requested that Apple provide a new type of discovery that Samsung

25   failed to mention at the May 12 hearing:  samples of future, "next generation" iPhone and iPad

26   products.  (Declaration of Todd M. Briggs in Support of Samsung's Motion to Compel ("Briggs

27   Decl."), Ex. 10, D.N. 57-10 (May 16, 2011 Letter from Victoria F. Maroulis to Jason R.

28   Bartlett).)

1    Apple replied on May 20 that Apple "is prepared to engage in discovery on a reciprocal

2    basis in the event that Apple moves for a preliminary injunction," but that "such discovery should

3    be directed to issues relevant to the motion."  (Briggs Decl. Ex. 12, D.N. 57-12 (May 20, 2011

4    Letter from Jason R. Bartlett to Victoria F. Maroulis).)  Apple explained that Apple's future

5    products have no relevance to a preliminary injunction motion, because "[a] preliminary

6    injunction motion will be based on Apple's current intellectual property rights, not on future

7    products."  Apple reiterated, however, that it was prepared to discuss bilateral discovery and the

8    requests that Samsung made during the May 12 hearing for expedited discovery concerning

9    confusion, goodwill, and market share.  (*Id.*)

10    The parties' counsel held a meet-and-confer call on May 23.  Samsung declined to discuss

11    the discovery requests it had made during the May 12 hearing on the ground that this Court had

12    already decided that expedited discovery should be of "a certain scope."  (Kim Decl. ¶ 3.)  Instead,

13    Samsung argued that Apple should produce samples of future products because Samsung was

14    entitled to "reciprocal" discovery.  (*Id.*)  Apple stated that it was prepared to engage in reasonable

15    reciprocal discovery on relevant issues, but pointed out that Apple's future products were not

16    relevant because any preliminary injunction motion would be based on Apple's current

17    intellectual property rights and current products, and not on future products.  (*Id.*)

18    During the May 23 call, Samsung advanced the new theory that Apple's future products

19    are relevant to a preliminary injunction because they supposedly bear on the "likelihood of

20    expansion of product lines," which is one of the "likelihood of confusion" factors identified in

21    *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979).  (Kim Decl. ¶ 4.)  Samsung

22    admitted that Apple could assert a trade dress claim based on the design features of its current

23    products even if Apple removed those features from future products.  (*Id.*)  Nevertheless,

24    Samsung asserted that if future Apple products did not include such features, this would be

25    relevant to a preliminary injunction motion based on Apple's current products.  (*Id.*)  Apple stated

26    that it would consider Samsung's comments and reply the following day.  (*Id.*)

27    On May 24, Apple sent Samsung a letter explaining that the *Sleekcraft* factor of

28    "likelihood of expansion of product lines" did not justify Samsung's demand for future Apple

1   products.  (Kim Decl. ¶ 5; Briggs Decl. Ex. 13, D.N. 57-13 (May 24, 2011 Letter from Jason R.

2   Bartlett to Todd Briggs).)  Apple pointed out that in *Sleekcraft*, the parties' current products did

3   *not* directly compete with each other, but there was evidence that the parties would expand their

4   product lines in the future so as to result in direct competition.  (Briggs Decl. Ex. 13, D.N. 57-13.)

5   In contrast, "Samsung *already competes directly* with Apple's highly distinctive and innovative

6   mobile phones and tablet computers," so "the likelihood of future expansion of the parties'

7   product lines is not relevant to the issues in this case."  (*Id.*)

8        Apple stated, once again, that it "remains willing to engage in expedited discovery,

9   provided that such discovery is reciprocal and directed to relevant issues."  (*Id.*)  Apple offered to

10  provide expedited depositions of declarants and production of documents before Samsung filed

11  its opposition to a preliminary injunction, on the condition that Samsung provided similar

12  discovery before Apple filed its reply in support of a preliminary injunction.  (*Id.*)

13       Samsung did not reply to Apple's May 24 letter.  Instead, Samsung filed its Motion to

14  Compel on May 27.  On May 31, Apple notified Samsung of several misstatements in Samsung's

15  Motion to Compel and requested that Samsung withdraw or correct its motion.  (Kim Decl. ¶ 5.)

16  Apple reiterated that Apple's future products had no relevance to any preliminary injunction

17  motion, but that it remained willing to consider reasonable requests for discovery relevant to such

18  a motion.  (*Id.* at Ex. 2.)

19       On June 1, Samsung sent a letter confirming that Samsung is not currently seeking

20  expedited discovery on the issues that it identified during the May 12 hearing, but stating that

21  Samsung may seek such discovery in the future.  (Kim Decl. Ex. 3.)

22

23                                  **ARGUMENT**

24       Samsung's request for expedited discovery is governed by the same standard that this

25  Court applied to Apple's motion for expedited discovery.  Samsung must show "good cause" for

26  expedited discovery, meaning that "the need for expedited discovery, in consideration of the

27  administration of justice, outweighs the prejudice to the responding party."  (Order Granting

28

OPPOSITION TO MOTION TO COMPEL EXPEDITED DISCOVERY
Case No. 4:11-cv-01846-LHK
sf-3000922

5

1    Limited Expedited Discovery, D.N. 52 at 2, citing *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208

2    F.R.D. 273, 276 (N.D. Cal. 2002).)

3          Samsung has failed to show good cause for *any* discovery of Apple's future products,

4    much less expedited discovery.  Apple's claims in the lawsuit and any preliminary injunction

5    motion that Apple may bring will be based on Apple's intellectual property rights as Apple has

6    framed them – and Apple has made no contention whatsoever based on its future products.

7    Samsung can articulate no possible relevance of Apple future products to any Samsung defense to

8    such a motion.  Moreover, production of future Apple products would be extremely harmful and

9    prejudicial to Apple because, as Samsung itself has acknowledged, Apple treats information

10   about its unreleased products as an extremely sensitive trade secret that it zealously protects.

11   **I.     APPLE'S FUTURE PRODUCTS ARE NOT RELEVANT TO APPLE'S**
**         CLAIMS OR TO SAMSUNG'S DEFENSES TO A PRELIMINARY**
12   **         INJUNCTION MOTION**

13         Apple's complaint in this action detailed Samsung's pervasive copying of Apple's

14   intellectual property and award-winning products.  (D.N. 1 at 16-25).  Soon after Apple releases a

15   product, Samsung releases products that not only compete head-to-head, but are widely

16   recognized as imitating Apple's iconic product designs.  Apple's motion for expedited discovery

17   detailed Samsung's copying by focusing on media coverage, stimulated by Samsung, of soon-to-

18   be-released Samsung products.  (Declaration of Jason Bartlett in Support of Apple's Motion to

19   Expedite ("Bartlett Decl."), D.N. 11-9.)  Even these unreleased products attracted media attention

20   based on their similarities to existing Apple products.  (*Id.*)

21         This factual predicate formed the basis for Apple's request for early production of

22   Samsung's products.  To vindicate its intellectual property rights in a timely fashion, Apple

23   sought production of Samsung products before they were released, so that Apple could evaluate

24   the designs and determine whether to seek preliminary relief before Samsung's imitative products

25   flooded the market.  The Court carefully evaluated Apple's request and found that Samsung's

26   unreleased products were highly relevant to Apple's claims and possible motion.

27         Samsung's motion turns the question of discovery of unreleased products on its head.  As

28   the copyist, Samsung is the last party that should be granted access to information about Apple

1   products in development.  Samsung has pointed to *no case* in which an alleged copyist obtained

2   access to unannounced products of the plaintiff.  Samsung's claim that Apple's future products

3   are relevant to "likelihood of confusion" in a trademark claim because Apple's future products

4   "will be in the market at the same time" as the Samsung products is completely unsupported in

5   the decisional law.

6      **A.    Apple's Future Products Are Irrelevant Because Apple Will Base any**
       **Preliminary Injunction Motion on its Current Rights as Embodied in its**
7      **Current Products, and Not on Future Rights or Products**

8          Apple's claims, and any possible preliminary injunction motion that Apple might file, are

9   framed by the operative complaint in the case.  Apple's complaint details Samsung's copying of

10  existing Apple products, specifically the wildly successful Apple iPhone and iPad products.  (D.N.

11  1, ¶¶ 27-28, 33-34, 41, 61-62, 64.)  Apple's motion for expedited discovery also focused on

12  Samsung's copying of existing Apple products, specifically the iPhone 3G, iPhone 4, iPad, and

13  iPad 2 models.  (D.N. 10 at 3-6.)  Apple's complaint is silent about any future Apple products,

14  and Apple has not thereby placed its future products at issue.  In particular, Apple's trade dress

15  claims, which Samsung contends form the predicate for its motion, say nothing about

16  unannounced future products.

17         Apple is the master of Apple's own trade dress claims.  *See Rose Art Indus., Inc. v.*

18  *Swanson*, 235 F.3d 165, 173 (3d Cir. 2000) ("the plaintiff in a trade dress action under section

19  43(a) of the Lanham Act is free to seek trade dress protection for whatever products or packaging

20  it sees fit," including "for a single product or a whole line of products"); *Innovation Ventures,*

21  *LLC v. N2G Distrib.*, 635 F. Supp. 2d 632, 641-642 ( E.D. Mich. 2008) ("a plaintiff asserting a

22  trade dress claim may choose the products the court examines when deciding a trade dress

23  claim").  Samsung cannot force Apple to base its claims or a preliminary injunction motion on the

24  trade dress of hypothetical future products, instead of on Apple's current trade dress and

25  trademarks, as embodied in Apple's products that are on the market.  And Samsung can point to

26  no case in which the plaintiff was required to configure its claims so as to make relevant its

27  unreleased future products.

28

OPPOSITION TO MOTION TO COMPEL EXPEDITED DISCOVERY                                                7
Case No. 4:11-cv-01846-LHK
sf-3000922

1    That Apple is the master of its claims is alone sufficient reason to deny Samsung's motion,

2  but basic trademark and trade dress law demonstrates the irrelevance of Apple's unreleased future

3  products.  It is axiomatic that trade dress and trademark rights arise from *actual commercial use*

4  of a design, shape, mark, or other symbol to identify a product.  *See Clicks Billiards, Inc. v.*

5  *Sixshooters, Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001) ("the alleged trade dress must have been

6  used in such a manner as to denote product source"); *see* 2 *McCarthy on Trademarks and Unfair*

7  *Competition* § 16:1 ("At common law, ownership of trademark or trade dress rights in the United

8  States is obtained by actual use of a symbol to identify the goods or services of one seller and

9  distinguish them from those offered by others.").

10    Moreover, in the case of product design, trade dress is "distinctive, and therefore

11  protectible, only upon a showing of secondary meaning."  *Wal-Mart Stores, Inc. v. Samara Bros.,*

12  *Inc.*, 529 U.S. 205, 216 (2000).  "The trade dress of a product or service attains secondary

13  meaning *when the purchasing public associates the dress with a particular source*."  *Click*

14  *Billiards,* 251 F.3d at 1262 (emphasis added, internal citation omitted).  It is impossible for the

15  "purchasing public" to associate trade dress with "a particular source" unless the products

16  embodying that trade dress have already been promoted to the public.

17    Apple will decide whether to file a motion for a preliminary injunction motion against

18  Samsung's new products after completing its review of the five products that Samsung will

19  produce on June 17, 2011.  Apple will necessarily base any preliminary injunction motion on its

20  *established* trade dress and trademark rights, as embodied in products that Apple has *already*

21  released, such as the iPhone 3GS, iPhone 4, iPad, and iPad2 products.  Any unannounced Apple

22  products will be irrelevant to that motion.

23    **B.    Samsung Has Failed to Show that Future Apple Products Are Relevant to**
       **Any of the *Sleekcraft* "Likelihood of Confusion" Factors**

24

25    During the parties' meet-and-confer call on May 23, Samsung asserted that Apple's future

26  products are relevant to a preliminary injunction motion solely because they bear on "likelihood

27  of expansion of product lines," which is the last "likelihood of confusion" factor identified in the

28  Ninth Circuit's *Sleekcraft* decision.  Apple refuted this argument in its May 24 letter, pointing out

1   that Samsung *already* competes with the iPhone and iPad, so "likelihood of future expansion of

2   the parties' product lines" is not a relevant factor in this case.  (Briggs Decl. Ex. 13, D.N. 57-13.)

3          Once again, Apple is the master of its claims.  Future expansion of product lines is an

4   argument a plaintiff advances when the defendant contends that there is no likelihood of

5   confusion at present because the parties do not presently compete.  *See Sleekcraft*, 599 F.2d at

6   348 (affirming district court's finding that product lines were not competitive, then considering

7   likelihood of expansion to assess likelihood of confusion).  Apple makes no claim of confusion

8   here based on a likelihood of future expansion of its product lines.  Samsung's own briefing

9   confirms that there is no need for such an argument.  In arguing that disclosing Samsung products

10  to Apple would put Samsung at a "competitive disadvantage," Samsung referred to Apple as a

11  "fierce competitor"  (Samsung's Opposition to Apple's Motion to Expedite Discovery, D.N. 47 at

12  18.)  That "fierce competition" is evidenced by the numerous media reports that compare

13  Samsung's recently announced products to Apple's iPhone and iPad.  (*See*, *e.g*., Bartlett Decl. Ex.

14  1, D.N. 11-1 at 1 (Samsung's Galaxy Tab 10.1 "is basically an iPad-sized version of the Galaxy

15  Tab," which "looks like an iPad"); Ex. 3, D.N. 11-4 at 1 ("iPad 2 Sends [Samsung's] Galaxy Tab

16  Back to the Drawing Board"); Ex. 9, D.N. 11-9 at 2 (Samsung's Galaxy S2 "is a high end phone

17  that gives the iPhone a real run for it's money," but "Samsung for some reason feels they need to

18  copy Apple's products almost exactly").)

19         In *Sleekcraft*, by contrast, the Court identified likelihood of future expansion as relevant

20  only after deciding that defendant's boats did not compete with plaintiff's "Slickcraft" boats.  *See*

21  *Sleekcraft*, 599 F.2d at 348-54 (affirming district court's finding that existing product lines were

22  not competitive, but concluding that "both parties are diversifying their model lines" and that

23  "[t]he potential that one or both of the parties will enter the other's submarket with a competing

24  model is strong").  Because Samsung's products already compete with Apple's, Apple has no

25  reason to rely, and will not rely, on unreleased future products to advance a "likelihood of future

26  expansion" argument.

27         Samsung's argument, made for the first time in its motion, that future Apple products are

28  relevant to the *Sleekcraft* factors of "similarity of the marks" and "proximity of the products" fails

1    for the same reason.  (Motion to Compel at 7-8.)  The relevant "marks" and "products" for the

2    *Sleekcraft* factors are those on which any preliminary injunction will *actually* be based.  Samsung

3    does not dispute that Apple will base any preliminary injunction motion "on Apple's current

4    intellectual property rights" as "embodied in products that Apple has currently on the market."

5    (Motion to Compel at 7, citing Briggs Decl. Ex. 12.)  Because any motion by Apple will rely on

6    its claims for infringement of the trade dress and trademarks embodied in its current products, as

7    set forth in Apple's complaint, future products will be irrelevant to a preliminary injunction

8    motion.  Apple "may choose the products the court examines when deciding a trade dress claim."

9    *Innovation Ventures,* 635 F. Supp. 2d at 641; *see also Rose Art Indus.,* 235 F.3d at 173 ("the

10   plaintiff in a trade dress action under section 43(a) of the Lanham Act is free to seek trade dress

11   protection for whatever products or packaging it sees fit").  The products and packaging Apple

12   chooses to rely on will not include unreleased future products and packaging.

13              **C.     The Hypothetical Release of Future Apple Products with Different Trade
                         Dress Will Not Affect Apple's Claims Based on Current Apple Products**
14

15              Searching desperately for some relevance hook into Apple's future products, Samsung

16   argues that if Apple were to "remove or alter those trademarks and trade dress from its future

17   versions of the iPhone and the iPad," this would "moot" Apple's preliminary injunction motion

18   based on such trademark and trade dress.  (Motion to Compel at 7 & n.3.)  Samsung has no

19   authority whatsoever for this theory.  The case Samsung cites involved *the defendant's*

20   discontinuation of sales of infringing products.  (Motion to Compel at 7, citing *Moose Creek,*

21   *Inc. v. Abercrombie & Fitch Co*., 331 F. Supp. 2d 1214, 1223 n.3 (C.D. Cal. 2004) (defendant's

22   discontinuation of "Moose Creek" sweatshirt sales mooted preliminary injunction motion when

23   there was no evidence that defendant "intends, or is likely to sell, garments bearing the words

24   'Moose Creek' in the future").)  The decision said nothing about *the plaintiff's* new products.

25              Other decisions make clear, moreover, that Apple can base its trade dress claim on

26   distinctive features in certain versions of its products without regard to the hypothetical release of

27   different products in the future.  *See, e.g.*, *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp.

28   2d 1110, 1125 (W.D. Wash. 2007) (plaintiffs "may still seek trade dress protection" for the

1   distinctive look of *Jonathan Livingston Seagull* book cover design, even though some versions of

2   the book "utilized a different cover design"); *Cartier, Inc. v. Four Star Jewelry Creations, Inc*.,

3   348 F. Supp. 2d 217, 224, 236 (S.D.N.Y. 2004) (infringement of trade dress of Cartier "Tank

4   Americaine" line of watches not avoided by use of a diamond-covered ("pavee") watch face that

5   was similar to discontinued models in that line).

6        Apple's current trade dress rights could cease to exist only if Apple abandoned those

7   rights, which is a stringent standard on which Samsung would bear a heavy burden of proof.  *See*

8   *Prudential Ins. Co. v. Gibraltar Fin. Corp.*, 694 F.2d 1150, 1156 (9th Cir. 1982) ("Abandonment

9   of a trademark, being in the nature of a forfeiture, must be strictly proved"); 15 U.S.C. § 1127

10  (mark is abandoned "[w]hen its use has been discontinued with intent not to resume").

11  Introduction of future Apple products with different trade dress — a speculative assumption for

12  which Samsung offers no basis — would not suffice to meet the abandonment standard.  Given

13  the iconic nature of Apple's product designs and the wide acclaim they have received, Samsung's

14  burden in showing abandonment would be even higher.  *See Ferrari S.p.A. Esercizio Fabbriche*

15  *Automobili e Corse v. McBurnie*, 11 U.S.P.Q. 2d 1843, 1849 (S.D. Cal. 1989) (no abandonment

16  of trade dress rights in "Daytona Spyder" automobile notwithstanding cessation of manufacture

17  15 years earlier).

18       Moreover, contrary to Samsung's claim, Apple does not typically phase out older models

19  upon release of a new version.  On the contrary, Apple and retailers are continuing to sell the

20  iPhone 3GS phone today, one year after Apple released the iPhone 4 model in June 2010.  (Kim

21  Decl. ¶¶ 7-8 and Exs. 20-22 (Apple, Best Buy, and AT&T website pages.)  Indeed, even Samsung

22  cites an article stating that Apple "is offering the iPhone 3GS for $199 and $299 with 16

23  gigabytes and 32 gigabytes respectively."  (Briggs Decl. Ex. 9, D.N. 57-9.)  Both new and used

24  versions of the iPhone 3G model continue to be sold by retailers, three years after Apple

25  introduced the iPhone 3G model in June 2008.  (Kim Decl., Exs. 23-24 (Amazon.com website

26  pages.)  Similarly, the first generation iPad tablet continues to be sold by retailers, even after

27  Apple's release of the iPad 2 tablet in March 2011.  (*Id.*, ¶¶ 10-11 and Exs. 25-26 (Amazon.com

28  and AT&T website pages.)

1    Samsung's assertion that the trade dress of the iPhone 4 phone differs significantly from

2    that of the original iPhone is also incorrect.  (Motion to Compel at 8.)  In its complaint, Apple

3    identified numerous distinctive trade dress features of its iPhone and iPad products.  (D.N. 1,

4    ¶ 41.)  These distinctive trade dress features appear consistently in all versions of the iPhone,

5    including the original iPhone (June 2007), the iPhone 3G (June 2008), the iPhone 3GS (June

6    2009), and the iPhone 4 (June 2010).  (Kim Decl. Ex. 27.)  They also appear in both the original

7    iPad (April 2010) and the iPad 2 (March 2011).  (Kim Decl. Ex. 28.)

8    Regardless of the designs of Apple's future products, they will have no impact on Apple's

9    claim that Samsung is infringing the trade dress and trademarks rights established by the products

10   that Apple has already released.  Future Apple products therefore have no relevance to Apple's

11   claims or to Samsung's defenses to a preliminary injunction motion based on those claims.

12   **II.    DISCLOSURE OF INFORMATION ABOUT FUTURE APPLE PRODUCTS
         WOULD CAUSE SEVERE PREJUDICE TO APPLE**



and Apple has a strict policy
of not commenting on future products or product rumors.  (Kim Decl. ¶¶ 12-15.)  Typically, new
products are announced at product launches by the CEO, Steve Jobs, and Apple's highest level
executives.  (Declaration of Richard J. Lutton In Support of Apple's Opposition to Samsung's
Motion to Compel, submitted herewith ("Lutton Decl."), ¶ 6.)

Apple's approach to product roll-outs is well-known, and Samsung has acknowledged the extraordinary secrecy on which Apple's strategy relies.  Samsung also recognizes that Apple "believes that information about its own unreleased products is a trade secret, and fights zealously to prevent disclosure of that information."  (Samsung's Opposition to Plaintiff's Motion to Expedite Discovery, D.N. 47 at 18.)  Samsung even cited a lawsuit that Apple had filed against individuals who "misappropriated and disseminated through web sites confidential information about an unreleased [Apple] product."  (*Id.*, citing *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1436 (2006).)  Quoting the complaint from Apple's misappropriation lawsuit, Samsung stated that "Apple regards information about unreleased products to be a trade secret because competitors can use it to 'anticipate and counter [Apple's] business strategy.'"  (*Id.* at 18-19.) Samsung also quoted the statements in Apple's complaint that unauthorized disclosure of information about unreleased Apple products results in Apple "los[ing] control over the timing and publicity for its product launches," and that Apple "undertakes rigorous and extensive measures to safeguard information about its unreleased products."  (*Id.* at 18, citing *O'Grady v. Superior Court*.)

Samsung nevertheless contends that requiring Apple to produce unreleased future products will not be "unduly burdensome" because Apple "has sought and obtained a court order requiring Samsung to produce to Apple the very same thing."  (Motion to Compel at 10-11.)

Samsung is wrong.  The unreleased products Samsung is requesting are far from "the very same thing" as the products that Samsung will be producing because Apple has not publicly announced, described, or distributed the future products sought by Samsung.  In the seven weeks

1   since Apple filed its motion to expedite discovery on April 19, Samsung has already publicly

2   released in the United States two of the five products sought by Apple (the "Infuse" and "Droid

3   Charge"). (Kim Decl. Exs. 29-30.) Samsung has also announced and distributed samples of its

4   three other products (the Galaxy S2, Galaxy Tab 8.9, and Galaxy Tab 10.1), which have been

5   described in detail by the media. (Bartlett Decl., D.N. 11, Exs. 1, 2, 6, 8, 9.) Thus, as the Court

6   noted, Samsung's argument about the confidentiality of its new products is "undermined to some

7   extent by evidence that Samsung has already released images and samples of its forthcoming

8   products to the media and members of the public." (D.N. 52 at 5.) Moreover, "at the motion

9   hearing, Apple represented that Samsung gave away 5,000 samples of its Galaxy Tab 10.1 to

10  members of the public on May 10, 2011, a claim that Samsung did not dispute." (*Id.* at 6.)

11         In contrast, Apple has not announced, described, or distributed samples of the future

12  products that are the subject of Samsung's Motion to Compel. Indeed, Samsung has failed to

13  submit any meaningful information about Apple future products. Samsung cannot do so because

14  Apple has not announced or distributed the future products whose production Samsung seeks to

15  compel. This is in striking contrast to Apple's Motion to Expedite Discovery, which included

16  numerous articles with photos and detailed descriptions of specific Samsung products. (Bartlett

17  Decl., D.N. 11, Exs. 1-9.)

18         In view of the extremely sensitive, trade secret nature of Apple's future products, and the

19  complete lack of any public disclosure of those products, Apple strongly objects to Samsung's

20  demand that Apple produce unannounced products that are under development. To obtain such

21  highly confidential trade secrets, even under a strict "outside counsel only" protective order,

22  Samsung must show more than mere "relevance" alone. Rather, to override the qualified

23  privilege that applies to trade secrets, Samsung must show (1) Apple's unannounced future

24  products are relevant to a preliminary injunction motion; (2) Samsung needs this information; and

25  (3) there is a "substantial factual basis" for Samsung's arguments. *See Puritan-Bennett Corp. v.*

26  *Pruitt,* 142 F.R.D. 306, 309-311 (S.D. Iowa 1992) (showing that requested information is trade

27  secret shifts burden to the requesting party to show that the information is both relevant and

28  necessary, and that there is a "substantial factual basis" for its claim); *Upjohn Co. v. Hygieia*

1   *Biological Labs.*, 151 F.R.D. 355, 358 (E.D. Cal. 1993) (trade secret must be both "relevant and

2   necessary to the action"); *OMG Fid., Inc. v. Sirius Tech., Inc.*, No. 07-80121MISC RMW (RS),

3   2007 U.S. Dist. LEXIS 51766, at *1  (N.D. Cal. July 5, 2007) ("attenuated relevance" not

4   sufficient to compel disclosure of third party trade secret).

5          Here, Samsung has not shown that future Apple products are relevant to Apple's claims or

6   Samsung's defenses to a preliminary injunction motion based on Apple's current rights and

7   products.  Nor has Samsung shown any basis or need for such future products, let alone a

8   "substantial factual basis."  Therefore, Samsung's motion should be denied.

9                                       **CONCLUSION**

10         Samsung's Motion to Compel is an improper attempt to harass Apple by demanding

11  production of extremely sensitive trade secrets that have no relevance to Apple's likelihood of

12  success on its infringement claims or to a preliminary injunction motion.  Apple made a

13  compelling showing in its motion to expedite discovery that Apple needs samples of products that

14  Samsung has already announced, distributed, and described, so that Apple can evaluate whether

15  to file a preliminary injunction motion against those products, which look strikingly similar to the

16  distinctive trade dress of Apple's current products.  Samsung has made no such showing about

17  Apple's future products.  Therefore, Samsung's Motion to Compel should be denied.

18  Dated:  June 7, 2011                    HAROLD J. MCELHINNY
                                            MICHAEL A. JACOBS
19                                          JENNIFER LEE TAYLOR
                                            JASON R. BARTLETT
20                                          MORRISON & FOERSTER LLP

21

22                                          By: /s/ Michael A. Jacobs
                                                MICHAEL A. JACOBS

23                                              Attorneys for Plaintiff
                                                APPLE INC.
24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ECF ATTESTATION**

I, JASON R. BARTLETT, am the ECF User whose ID and password are being used to file the following document: APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO COMPEL EXPEDITED DISCOVERY.  In compliance with General Order 45, X.B., I hereby attest that Michael Jacobs has concurred in this filing.

Dated: June 7, 2011

JASON R. BARTLETT
**MORRISON & FOERSTER** LLP

By:  /s/ Jason R. Bartlett
JASON R. BARTLETT