IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE, INC., | ) | C-11-01846-LHK |
| PLAINTIFF, | ) | JUNE 17, 2011 |
| V. | ) | |
| SAMSUNG ELECTRONICS COMPANY LIMITED, ET AL., | ) | PAGES 1 - 39 |
| DEFENDANTS. | ) | |
| ______________________ | ) | |

THE PROCEEDINGS WERE HELD BEFORE

THE HONORABLE UNITED STATES DISTRICT

JUDGE LUCY H. KOH

A P P E A R A N C E S:

FOR THE PLAINTIFF: MORRISON & FOERSTER
BY: HAROLD J. MCELHINNY
MICHAEL A. JACOBS
GRANT L. KIM
425 MARKET STREET
SAN FRANCISCO, CALIFORNIA 94105

(APPEARANCES CONTINUED ON THE NEXT PAGE.)

OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
CERTIFICATE NUMBER 8074

A P P E A R A N C E S: (CONT'D)

FOR THE DEFENDANTS: QUINN, EMANUEL, URQUHART & SULLIVAN
BY: CHARLES K. VERHOEVEN
MICHAEL T. ZELLER
ERIK C. OLSON
KEVIN P.B. JOHNSON
VICTORIA F. MAROULIS
865 SOUTH FIGUEROA STREET
10TH FLOOR
LOS ANGELES, CALIFORNIA 90017

SAN JOSE, CALIFORNIA JUNE 17, 2011

P R O C E E D I N G S

(WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)

THE CLERK: CALLING CASE NUMBER C-11-1846-LHK, APPLE VERSUS SAMSUNG ELECTRONICS COMPANY LIMITED, ET AL.

MR. MCELHINNY: GOOD AFTERNOON, YOUR HONOR. HAROLD MCELHINNY, MICHAEL JACOBS, AND GRANT KIM FOR THE PLAINTIFFS APPLE.

THE COURT: GOOD AFTERNOON.

MR. VERHOEVEN: GOOD AFTERNOON, YOUR HONOR. CHARLES VERHOEVEN FOR QUINN EMANUEL ON BEHALF OF THE SAMSUNG DEFENDANTS AND WITH ME IS MY PARTNER KEVIN JOHNSON, MIKE ZELLER, VICKIE MAROULIS.

THE COURT: GOOD AFTERNOON. PLEASE SIT OR STAND, WHICHEVER IS MOST COMFORTABLE.

I HAVE QUESTIONS FOR ALL SIDES TODAY.

I'LL START FIRST WITH MR. VERHOEVEN. WHEN WE HAD THE HEARING ON APPLE'S MOTION YOU HAD SPECIFIED SOME EXPEDITED DISCOVERY THAT SAMSUNG WOULD NEED, WHICH I THOUGHT WAS VERY REASONABLE, BUT IT DOESN'T APPEAR THAT YOU'RE REQUESTING THAT

NOW.

WHY IS THAT?

MR. VERHOEVEN: WELL, YOUR HONOR, WHEN WE WERE AT THE HEARING WE WERE GOING OVER THE SCOPE OF THE DISCOVERY THAT THE PLAINTIFF WAS SEEKING, AND THEY HAD SOUGHT BROADER DISCOVERY THAN WHAT YOUR HONOR ACTUALLY ORDERED.

AND SO WE ACTUALLY THOUGHT THAT WE WOULD PARE BACK AND TRY TO BE AS RECIPROCAL AS POSSIBLE IN THE DISCOVERY WE WERE SEEKING.

SO OUR MOTION IS THE EXACT RECIPROCAL DISCOVERY THAT YOUR HONOR ORDERED.

AND THAT'S BASICALLY THE EXPLANATION.

THE COURT: SO DO YOU NOT NEED THE THINGS THAT YOU SPELLED OUT AT THE HEARING, YOU DON'T NEED THAT ANYMORE?

MR. VERHOEVEN: WELL, IT SOMEWHAT DEPENDS ON THE SCOPE AND THE NATURE OF THESE POTENTIAL PRELIMINARY INJUNCTION MOTIONS THEY FILED, YOUR HONOR.

SO IF THEY FILE A PRELIMINARY INJUNCTION MOTION, WE'RE NOT SURE AT THIS POINT WHAT PRODUCTS THEY'RE GOING TO FILE ON, WE'RE NOT SURE THEY'RE EVEN GOING TO FILE IT.

AND I THINK IN FULL DISCLOSURE, YOUR

HONOR, ONCE WE SEE A MOTION, WE PROBABLY WILL MEET AND CONFER WITH THE OTHER SIDE, ONCE WE SEE THE SCOPE OF IT, AND TRY TO WORK OUT SOME SORT OF ARRANGEMENT IF THEY FILE A MOTION SO THAT BOTH SIDES CAN HAVE SOME SORT OF A RECIPROCAL DISCOVERY. FOR EXAMPLE, IF THEY HAVE DECLARANTS OR EXPERT DECLARATIONS OR THEY DO A SURVEY OR SOMETHING, THEN WE WOULD NEED TO DO A CERTAIN AMOUNT OF DISCOVERY.

HOWEVER, IF THEY DIDN'T DO THAT AND THEY DON'T HAVE DECLARATIONS, THEN IT WOULD BE SLIGHTLY DIFFERENT.

SO WHAT WE TRIED TO DO, YOUR HONOR, IS YOUR HONOR HAD INDICATED AT THE HEARING -- YOU KNOW WE OPPOSED THIS VERY DISCOVERY AND OF FUTURE PRODUCTS.

BUT YOUR HONOR WAS PERSUADED THAT THAT LIMITED DISCOVERY SHOULD BE -- SHOULD PROCEED AND SO WE WENT BACK AND TRIED TO MAKE OUR REQUEST AS RECIPROCAL AND AS LIMITED AS WHAT YOUR HONOR ORDERED.

NOW, IT MAY BE THAT IF THEY LATER TRY TO FILE SOMETHING, WE'LL HAVE TO REVISIT THE ISSUE OF ANY FURTHER DISCOVERY THAT MIGHT BE NEED TO BE TAKEN.

BUT ESSENTIALLY WHAT WE'RE SEEKING HERE

IS RECIPROCAL FAIR PARITY IN DISCOVERY.

THEY HAVE SAID TO YOUR HONOR, WE NEED THESE -- THE DISCOVERY OF THESE FUTURE PRODUCTS, FOR EXAMPLE, THE GALAXY S2 WHICH IS NOT GOING TO BE RELEASED UNTIL THE FALL.

YOUR HONOR ORDERED THAT TO BE PRODUCED. AND WHAT WE'RE SIMPLY TRYING TO DO IS, AND THEIR BASIS FOR THAT, YOUR HONOR, QUICKLY, I'LL TRY TO BE QUICK, IS THEY NEED TO GET PREPARED SO THAT IF THIS COMES OUT, THERE'S NO FURTHER DELAY AND WHATNOT.

WHAT WE'RE SIMPLY ASKING IS FOR PARITY HERE. WE SHOULD BE ABLE TO GET PREPARED, TOO. IF THERE'S GOING TO BE MOTION PRACTICE AND PRELIMINARY INJUNCTION ON THE GALAXY S2 IN THE FALL OF 2011, THEN THE PRODUCT THAT IS GOING TO BE OUT THERE IN THE MARKETPLACE WITH IS VERY, VERY LIKELY, YOUR HONOR, GOING TO BE A NEW VERSION OF THE IPHONE AND SO WE SHOULD BE ABLE TO, IF YOU LOOK AT, FOR EXAMPLE, THE SLEEKCRAFT FACTORS, YOUR HONOR, WE SHOULD BE ABLE TO BE LOOKING AT THE -- NO PUN INTENDED -- APPLES TO APPLES, THE S2 VERSUS THE NEW VERSION OF THE IPHONE IN THE FALL OF 20000.

ACCORDING TO THE ELEMENTS, FOR EXAMPLE, THE SIMILARITY OF THE MARKS, WE SHOULD BE ABLE TO LOOK AT THE ACTUAL PRODUCTS AND BE ABLE TO COMPARE

THEM SO THAT WE COULD, FOR EXAMPLE, ONE THING YOU DO, SO SLEEKCRAFT HAS EIGHT FACTORS, BUT THE EIGHT FACTORS ARE DESIGNED FOR ONE -- TO ANSWER ONE LEGAL QUESTION: THE LIKELIHOOD OF CONFUSION.

AND SO WHAT PEOPLE DO IN THESE KINDS OF CASES IS THAT THEY DO SURVEYS.

SO WE SHOULD BE ABLE TO -- TO HAVE PARITY AND BE IN THE SAME POSITION AS THEM. THEY'RE GOING TO BE ABLE TO DO WHATEVER THEY WANT WITH OUR ADVANCED PRODUCTS AND WE SHOULD BE ABLE TO DO THE SAME THING, FOR EXAMPLE, GET READY SO WE HAVE THAT PRODUCT AVAILABLE, WE CAN SEE AND DO A SURVEY AND SEE, DO PEOPLE THINK THAT THESE ARE SIMILAR? ARE PEOPLE CONFUSED?

YOU KNOW, ANOTHER FACTOR IS STRENGTH OF THE MARKS.

IF THEIR NEW PRODUCT IS SUBSTANTIALLY DIFFERENT IN DESIGN, AND THEY PUT $100 MILLION MARKETING CAMPAIGN INTO IT THIS FALL AND -- BUT IT'S A DIFFERENT DESIGN, AND YOUR HONOR IS ADDRESSING IRREPARABLE -- THE LIKELIHOOD OF IRREPARABLE HARM AND IT TURNS OUT THAT THE THINGS THAT THEY'RE COMPLAINING ABOUT DON'T EVEN APPLY TO THIS NEW PRODUCT THAT THEY'RE PUTTING $100 MILLION OF A MARKETING CAMPAIGN INTO, THAT IS GOING TO

SIGNIFICANTLY AFFECT, FOR EXAMPLE, THE LIKELIHOOD OF HARM IN THE MARKETPLACE IF THEY'RE NOT EVEN USING THAT STUFF ANYMORE IN THEIR NEW MARKETING CAMPAIGN.

IT'S GOING TO SIGNIFICANTLY AFFECT THE BALANCE OF HARMS IF THEY'RE ASKING THIS COURT TO ENJOIN SAMSUNG FROM SELLING BASICALLY ITS ENTIRE SMART PHONE AND TAB LINE IN THE UNITED STATES.

SO THIS STUFF IS HIGHLY RELEVANT IF THEY DO FILE A P.I., YOUR HONOR, AND ALL WE'RE ASKING FOR IS THE EXACT SAME DISCOVERY THAT YOUR HONOR ALREADY ORDERED WITH RESPECT TO THE DEFENDANTS.

AND WE THINK THAT IT'S REASONABLE, AND AS I SAID AT THE LAST HEARING, WHAT IS GOOD FOR THE GOOSE IS GOOD FOR THE GANDER AND WE SHOULD BE ENTITLED TO THE SAME DISCOVERY THAT THEY GOT, YOUR HONOR.

THE COURT: LET ME ASK THE PLAINTIFFS, WHAT IS YOUR, IF YOU DO END UP FILING A P.I. MOTION, IS IT GOING TO BE JUST THE TRADEMARK AND THE TRADE DRESS OR IS IT ALSO GOING TO BE DESIGN PATENTS?

I'M REALLY HOPING IT'S NOT GOING TO BE UTILITY PATENTS, BECAUSE AS I SAID, THAT'S NOT REALLY I THINK FEASIBLE TO DO A FULL CLAIM

CONSTRUCTION AND A FULL ANALYSIS ON A P.I. BASIS.

SO TELL ME WHAT YOU'RE CURRENT THINKING IS.

MR. MCELHINNY: MY CURRENT THINKING IS THAT I INTEND TO, IF NECESSARY, CHANGE YOUR MIND ABOUT THE UTILITY PATENTS, BUT THE DIRECT ANSWER TO YOUR QUESTION IS WE'RE GOING TO REVIEW THE RIGHTS THAT WE HAVE ASSERTED.

AND WE'RE GOING TO MOVE -- IF WE MOVE, WE ARE GOING TO MOVE ONTO SOME KIND OF COMBINATION OF THE RIGHTS THAT WE HAVE ASSERTED, YOUR HONOR.

BUT I CAN'T TELL YOU RIGHT NOW THAT WE HAVE DECIDED TO MOVE, MUCH LESS WHICH OF OUR MANY CLAIMS WE'RE GOING TO MOVE ON.

THE COURT: WELL, LET ME ASK ACTUALLY OF BOTH PARTIES AND IT SOUNDS LIKE BOTH OF YOU ARE INTERESTED IN GETTING -- ESPECIALLY IF YOU WANT TO LITIGATE UTILITY PATENTS, THEN LET'S JUST SET AN EXPEDITED SCHEDULE FOR THE WHOLE CASE.

I WOULD RATHER US JUST START NOW AND I WANT TO HEAR FROM BOTH SIDES WHETHER YOU WOULD AGREE WITH IT RATHER THAN EVERY SIX WEEKS HAVING AN EXPEDITED DISCOVERY MOTION.

IF YOU REALLY FEEL THIS ANXIOUS, SET THE SCHEDULE NOW AND I'LL GIVE YOU A TRIAL IN

14:36:04 EIGHT MONTHS, SIX MONTHS, WHATEVER YOU WANT, MY SCHEDULE IS OPEN. ONE YEAR? YOU TELL ME.

14:36:11 WHAT ARE YOUR THOUGHTS ON THAT?

14:36:18 MR. MCELHINNY: THE ANSWER -- WELL, THE ANSWER TO YOUR QUESTION IS THAT WE WOULD LIKE THAT, YOUR HONOR. WE WOULD LIKE AN EXPEDITED TRIAL DATE.

14:36:24 IN TERMS OF THE SPECIFIC MONTHS, I WOULD NEED TWO MINUTES TO CONSULT WITH MY CLIENT TO GET MORE DIRECT INFORMATION ABOUT THAT.

14:36:31 THE COURT: WELL, LET ME HEAR FROM -- IS THAT SOMETHING THAT SAMSUNG WOULD BE INTERESTED IN RATHER THAN US INCREMENTALLY GETTING DISCOVERY PIECEMEAL? WHY DON'T WE JUST GET STARTED ON THE CASE?

14:36:42 MR. VERHOEVEN: WELL, I THINK I, TOO, WOULD HAVE TO CONFER. IT'S SORT OF COMING OUT NOT ON THE SUBJECT OF THIS PARTICULAR MOTION.

14:36:49 THE COURT: I UNDERSTAND.

14:36:49 MR. VERHOEVEN: AND IT'S A VERY COMPLICATED CASE. AS YOU KNOW, YOUR HONOR RELATED THE OTHER CASE TOGETHER WITH IT AND IF WE'RE GOING TO BE PROCEEDING ON UTILITY PATENTS, WE SHOULD PROCEED IN TOTAL.

14:37:01 AND SO WE WOULD NEED TO TRY TO DO A SIGNIFICANT ASSESSMENT BECAUSE OFF THE TOP OF -- AT

14:37:10 LEAST OFF THE TOP OF MY HEAD, I'LL LET MR. MCELHINNY SPEAK FOR HIMSELF, BUT AT LEAST OFF THE TOP OF MY HEAD IT'S IMPORTANT THAT WE GET IT RIGHT IN TERMS OF THE SCHEDULE AND WE WOULD HAVE TO SIT DOWN AND FIGURE OUT HOW MANY EXPERTS ARE WE TALKING ABOUT? YOU KNOW, HOW ARE WE GOING TO DO THE MARKMAN HEARING WITH ALL OF THESE PATENTS? YOU KNOW, WHAT ARE YOUR HONOR'S LIMITS, IF ANY, ON THE NUMBER OF TERMS FOR CONSTRUCTION PER PATENT? IS IT FOR THE WHOLE CASE?

THOSE ARE THE THINGS I THINK WOULD BE MORE INVOLVED THAN ME JUST TELLING YOU RIGHT OFF THE TOP OF MY HEAD.

THE COURT: I'M NOT ASKING YOU TO TELL ME OFF THE TOP OF YOUR HEAD, AND I DON'T THINK THAT'S FAIR TO YOU ALL SINCE THIS IS REALLY NOT EVEN A CMC.

MR. VERHOEVEN: MAY I SAY ONE OTHER THING REALLY QUICKLY, YOUR HONOR?

LAST NIGHT I THINK IT WAS APPLE FILED AN AMENDED COMPLAINT.

THE COURT: I KNOW.

MR. VERHOEVEN: AND ADDED NEW PATENTS. SO WE HAVEN'T EVEN HAD A CHANCE TO GO THROUGH THAT YET, YOUR HONOR.

14:38:03 SO THAT WOULD OBVIOUSLY IMPACT US AS WELL.

14:38:06 THE COURT: SURE. LET ME ASK, THE SAMSUNG VERSUS APPLE CASE, IT HAS BEEN RELATED BUT IT HASN'T BEEN CONSOLIDATED.

14:38:12 ARE YOU ALL GOING TO SEEK TO CONSOLIDATE IT OR ARE YOU JUST GOING TO THEN ASSERT THE PATENTS THAT YOU ASSERTED IN THAT CASE AS COUNTERCLAIMS IN THIS CASE AND IT IS RESPECTIVELY THE SAME CASE ANYWAY, OR WHAT IS GOING TO HAPPEN?

14:38:24 MR. VERHOEVEN: WE THINK IT SHOULD BE CONSOLIDATED, YOUR HONOR, AND WE THINK IT SHOULD BE CONSOLIDATED AND SHOULD PROCEED AS A SINGLE CASE.

14:38:29 THE COURT: NOW, WHEN YOU -- I THINK YOUR ANSWER DATE IS NOT FOR A LITTLE WHILE, RIGHT? I KNOW YOU STIPULATED TO A DATE. WHEN WAS THAT?

14:38:37 MR. VERHOEVEN: JULY 15TH.

14:38:42 MS. MAROULIS: YOUR HONOR, JULY 5TH. IT'S GOING TO BE CHANGED BECAUSE OF THE FILING YESTERDAY.

14:38:48 THE COURT: I SEE. OKAY. ARE YOU ANTICIPATING THEN FILING COUNTERCLAIMS THAT WOULD ASSERT YOUR OWN -- WHATEVER COMBINATION OF UTILITY PATENTS?

14:38:57 MR. VERHOEVEN: WE'RE STILL EVALUATING

OUR OPTIONS, AND I REALLY CAN'T SPEAK TO THAT AT THIS POINT.

THE COURT: OKAY.

MR. VERHOEVEN: WE ARE EVALUATING THOSE OPTIONS THOUGH, YOUR HONOR.

MR. MCELHINNY: IF I MAY, YOUR HONOR?

THE COURT: YES.

MR. MCELHINNY: TWO OF THE SUBJECTS THAT HAVE BEEN TOUCHED ON, WE DO, THE REASON WE'RE TALKING ABOUT AN INJUNCTION, IS THAT WE DO FEEL THAT THERE IS INJURY GOING ON.

WE DO SEEK TO EXPEDITE A RESOLUTION OF THIS CASE. WE DO THINK THAT -- WE WILL OPPOSE CONSOLIDATION SIMPLY BECAUSE ADDING A TEN-UTILITY PATENT ONTO THE CASE THAT WE HAVE WE THINK IS A DELAYING TACTIC.

BUT IN CONNECTION I THINK I CAN SAY COUNSEL, ALL OF THE COUNSEL WHO ARE IN THE CASE, WILL OPPOSE CONSOLIDATING THAT ON APPLE'S SIDE.

AS YOU KNOW FROM THE DECLARATIONS, I MEAN, I SAT IN FRONT OF YOU AND YOU SAID, YOU CAN EXPEDITE DISCOVERY AND WE KNOW FROM THE DECLARATIONS, WE CALLED THEM UP AND WE WENT THROUGH THE LIST THAT MR. VERHOEVEN HAD STATED AND HE SAID EXACTLY YOUR POINT, WHICH WAS THAT THERE IS GOING

14:39:57 TO HAVE TO BE SOME DISCOVERY RELATIVE TO THIS INJUNCTION IF IT IS FILED, CAN'T WE AGREE ON A PROCESS FOR THAT? CAN'T WE DECIDE IF DECLARANTS ARE TO BE DEPOSED, ALL OF THE STUFF THAT I MENTIONED TO YOU?

AND TODAY THEY WILL NOT ENGAGE WITH US.

AND, AGAIN, I THINK AS COUNSEL HAS SAID, THE LIKELY PROCEDURE HERE IS THAT THEY FILED THIS SORT OF WHAT WE WOULD CALL IT A "GOTCHA MOTION" AND IF IT DOESN'T SUCCEED THEN WE'RE GOING TO START OVER THE PROCESS ABOUT NOW WHAT DISCOVERY DO YOU REALLY NEED THAT IS RELEVANT TO THE INJUNCTION AND HOW LONG WOULD IT TAKE, AND I THINK WE WILL SEE AN ENGAGEMENT AND PROBABLY A DRAWN-OUT DISCOVERY PERIOD.

MR. VERHOEVEN: YOUR HONOR, MAY I BRIEFLY?

MR. MCELHINNY: JUST LET ME FINISH.

THE OTHER THING IS ALL OF THE CLAIMS THAT WE WILL BE PURSUING, WHATEVER THEY ARE IN THE PRELIMINARY INJUNCTION, AS WE POINTED OUT TO YOUR HONOR BEFORE, AND AS WE POINTED OUT CLEARLY IN OUR AMENDED COMPLAINT, WILL BE BASED ON PRODUCTS THAT ARE CURRENTLY IN THE MARKET. THEY WILL NOT BE BASED ON OUR FUTURE PRODUCTS.

MR. VERHOEVEN TALKED ABOUT THE POSSIBILITY THAT HE WAS TAKING SURVEYS WITH WHATEVER THEY GET TOGETHER BUT IF THAT REACHED THE CONFIDENTIALITY ORDER, WE JUST CAN'T.

THE COURT: I KNOW YOU ADDED A BUNCH OF DESIGN PATENTS, UTILITY PATENTS AND YOU CHANGED YOUR TRADE DRESS ALLEGATION AND YOU ADDED A CLAIM FOR RELIEF.

WHY DID YOU AMEND THIS? WAS THAT IN ANTICIPATION OF THIS MOTION TO MAKE IT MORE TIED TO SPECIFIC CURRENTLY AVAILABLE IPHONES AND IPADS OR --

MR. MCELHINNY: I THINK THERE ARE A COUPLE OF REASONS THAT WE HAVE DONE IT.

THE COURT: UH-HUH.

MR. MCELHINNY: ONE, AS PART OF THEIR INTENTIONAL STRATEGY, SAMSUNG KEEPS RELEASING ADDITIONAL INFORMATION ABOUT THE PRODUCTS.

SO IN THE TIME THAT WE WERE LAST IN FRONT OF YOU BEFORE, WE HAVE BEEN ABLE TO GET THE SAMPLES AND THE S2 PHONE AND WHICH IS BEING MARKETED OUTSIDE OF THE UNITED STATES, AND WE WERE ABLE TO DRAFT A COMPLAINT THAT WAS MORE CLOSELY DRAWN TO THE PRODUCTS THAT WE WERE GOING TO BE ATTACKING AND WE WANTED TO MAKE SURE THAT THAT COMPLAINT WAS ON

14:42:05 FILE BEFORE WE ACTUALLY GOT THE PRODUCTION DUE DATE 14:42:09 BECAUSE WE WANTED TO MAKE SURE THAT THAT WAS DONE 14:42:11 COMPLETELY WITH PUBLIC INFORMATION. SO THERE'S NO 14:42:15 QUESTION ABOUT HOW WE WOULD USE THE PRODUCTS THAT 14:42:17 ARE BEING PROVIDED TO US TODAY.

14:42:19 BUT BASICALLY IT'S A TAILORING OF -- I 14:42:22 MEAN, APPLE, AS YOU KNOW, IT HAS A LOT OF 14:42:26 INTELLECTUAL PROPERTY RIGHTS AND IT'S A TAILORING 14:42:28 OF THOSE PRODUCTS.

14:42:30 THE COURT: LET ME ASK IF THE PARTIES -- 14:42:34 IF YOU ALL -- UNDERSTANDING LAST TIME YOU WERE 14:42:37 HERE, YOU SAID THAT YOU HAD A BUSINESS 14:42:39 RELATIONSHIP, I FORGET WHAT THE NUMBER WAS, EIGHT 14:42:44 MILLION, EIGHT BILLION?

14:42:44 MR. MCELHINNY: I THINK IT WAS IN EXCESS 14:42:45 OF SEVEN BILLION.

14:42:47 THE COURT: SEVEN BILLION. CAN WE ALL 14:42:49 JUST GET ALONG HERE AND CAN I SEND YOU OUT TO ADR?

14:42:53 IS THERE ANY -- YOU NAME IT WHO YOU WANT 14:42:55 TO GO TO? I WILL SEND YOU WITH BOXES OF 14:43:00 CHOCOLATES. I MEAN, WHATEVER.

14:43:01 IS THERE ANYTHING THAT WOULD BE POSSIBLE 14:43:04 HERE IN TERMS OF AT LEAST EXPLORING?

14:43:06 I KNOW YOU SAID YOU ALREADY ENGAGED IN A 14:43:09 BIT OF DISCUSSION BEFORE FILING THIS CASE, BUT IS

THERE ANYTHING NOW?

MR. VERHOEVEN: WE'RE ALWAYS WILLING TO DO THAT, YOUR HONOR.

THERE HAS BEEN DISCUSSIONS BETWEEN THE PARTIES AND --

THE COURT: YOU MEAN SINCE THE LAWSUIT WAS FILED OR ARE YOU TALKING ABOUT THE PRE --

MR. VERHOEVEN: BEFOREHAND.

THE COURT: OKAY. BUT WHAT ABOUT POST-LAWSUIT, IS THERE ANYTHING THAT WE SHOULD BE TRYING RIGHT NOW?

MR. VERHOEVEN: I MEAN, FRANKLY, WHAT HAS HAPPENED POST-LAWSUIT IS THAT APPLE'S PATENT COUNSEL HAS BEEN LITIGATING IN THE PRESS AND THAT'S WHERE THEY HAVE BEEN DEVOTING THEIR EFFORTS.

MR. MCELHINNY: WELL, HOLD ON. WE HAVE NEVER SPOKEN TO THE PRESS, YOUR HONOR.

THE COURT: I DON'T WANT TO GET INTO -- OKAY. WHAT WOULD BE FEASIBLE RIGHT NOW? ARE YOU WILLING TO GO TO SOME FORM OF ADR NOW?

MR. MCELHINNY: MY UNDERSTANDING --

THE COURT: YES.

MR. MCELHINNY: -- I HAVE NOT BEEN INVOLVED IN THESE TALKS, BUT MY UNDERSTANDING IS THAT THIS CASE OBVIOUSLY HAS GOT THE ATTENTION OF

14:44:05 PEOPLE AT THE HIGHEST LEVELS, LITERALLY AT THE
14:44:06 HIGHEST LEVELS AT BOTH COMPANIES.

14:44:07 THE COURT: CAN WE GET THEM TOGETHER?

14:44:09 MR. MCELHINNY: THAT THEY ARE, IN FACT,
14:44:10 MEETING AND TALKING AND THAT'S MY UNDERSTANDING.
14:44:12 AND I DON'T THINK INTRODUCING A MEDIATOR INTO THAT
14:44:15 WOULD BE HELPFUL, YOUR HONOR, IS MY READ.

14:44:17 I CAN ANSWER YOUR EARLIER QUESTION. WE
14:44:20 WOULD BE PREPARED TO TRY THIS CASE IN SIX MONTHS.

14:44:27 MR. VERHOEVEN: YOUR HONOR, MAY I SPEAK
14:44:29 BRIEFLY TO THE ACTUAL MOTION?

14:44:30 THE COURT: YES, I'M GOING TO GET BACK TO
14:44:32 THE MOTION.

14:44:37 MR. VERHOEVEN: OH.

14:44:38 THE COURT: I'M SORRY. I'M JUST GETTING
14:44:40 DISTRACTED HERE.

14:44:41 LET ME GO TO MR. MCELHINNY. IT LOOKS
14:44:46 LIKE BASED ON THE RELEASE OF IPHONE, IPHONE 3G,
14:44:50 IPHONE 3GS, IPHONE 4, IT LOOKS LIKE YOU'RE DUE FOR
14:44:55 A RELEASE OF AT LEAST A PHONE.

14:44:56 I AGREE WITH THE -- THAT THE TABLET
14:44:59 COMPUTER, YOU RELEASED ONE IN MARCH OF LAST YEAR
14:45:02 AND OF THIS YEAR AND IT COMES OUT WITHIN A YEAR, IT
14:45:05 SEEMS A LITTLE PREMATURE THAT YOU HAVE HAD LESS
14:45:07 THAN THREE MONTHS OF DEVELOPMENT ON THE TABLET

14:45:10 COMPUTER.

14:45:11 BUT ON THE IPHONE IT LOOKS LIKE YOU'RE 14:45:13 DUE ON ONE, ALTHOUGH THE RELEASE DATES IN THE PAST 14:45:16 FOUR YEARS HAVE ALL BEEN IN JUNE.

14:45:18 WHY SHOULDN'T THEY BE ABLE TO FIND OUT? 14:45:21 I MEAN, IF YOU'RE GOING TO RELEASE A PRODUCT IT 14:45:23 LOOKS LIKE PROBABLY BEFORE YOUR P.I. MOTION IS 14:45:26 FILED, WHY SHOULDN'T THEY BE ABLE TO GET SOME 14:45:28 INFORMATION ON THAT?

14:45:29 MR. MCELHINNY: I THINK THERE ARE TWO 14:45:31 ANSWERS TO THAT.

14:45:32 ONE, YOUR HONOR, IN FAIRNESS, IS ENGAGING 14:45:35 IN THE EXACT SAME SPECULATION THAT THEY ARE. WE DO 14:45:37 NOT ISSUE PRERELEASES. WE DON'T GIVE INFORMATION 14:45:42 TO THE PRESS.

14:45:42 THERE'S NOT A FACT IN THEIR PAPERS THAT'S 14:45:47 NOT SIMPLY HISTORICAL ABOUT WHEN WE'RE GOING TO 14:45:49 RELEASE SOMETHING, WHAT IT'S LIKELY TO BE, AND 14:45:52 THAT'S BECAUSE OF THE NATURE -- WE DO BUSINESS A 14:45:55 DIFFERENT WAY AND SO THERE'S NO WAY IN FAIRNESS TO 14:45:57 PREDICT WHENEVER WE'RE GOING TO DO A RELEASE OF 14:46:00 ANYTHING.

14:46:01 THE COURT: WHAT ABOUT THEIR ARGUMENT 14:46:02 THAT THERE NEEDS TO BE CO-EXISTENCE IN THE MARKET 14:46:05 IN ORDER FOR YOU TO -- AND, AND IF YOU STOP

14:46:10 SELLING, YOU KNOW, AND MAKE IT A LEGACY VERSION, I
14:46:12 MEAN, TELL ME ABOUT THE LEGACY VERSION? WHAT -- DO
14:46:16 THEY, IN FACT, STOP BEING SOLD RIGHT BEFORE THE
14:46:18 RELEASE OF THE NEXT GENERATION?

14:46:20 MR. MCELHINNY: THEY DO NOT, YOUR HONOR.
14:46:21 IN FAIRNESS, LET ME JUST ANSWER YOUR
14:46:23 QUESTION DIRECTLY.

14:46:24 THE COURT: YES.

14:46:25 MR. MCELHINNY: WHICH IS A LOT OF CASES
14:46:26 GOT CITED. I'M SURE YOU LOOKED AT THEM ALL. THERE
14:46:29 IS NOT A CASE THAT HAS EVER ORDERED THE PLAINTIFF
14:46:34 TO PRODUCE FUTURE PRODUCT PLANNING DESIGNS IN ORDER
14:46:39 TO BE ABLE TO ASSERT ITS INTELLECTUAL PROPERTY
14:46:41 RIGHTS. IT HAS NEVER HAPPENED.

14:46:45 AND WE WOULD ARGUE THAT IT WOULD BE SUCH
14:46:47 A BURDEN ON PLAINTIFFS. THE PEOPLE WHO DRAFTED THE
14:46:51 LANHAM ACT WHO WERE TRYING TO PROTECT INVESTORS
14:46:53 WOULD FIND THAT, WOULD FIND THAT A TERRIBLE
14:46:57 DISADVANTAGE TO A PLAINTIFF IF THAT WAS GOING TO BE
14:47:01 ONE OF THE COSTS.

14:47:02 AND THE REASON FOR IT IS THE LOGIC OF
14:47:05 THESE ACTS. IF YOU LOOK AT TRADE DRESS, TO BE
14:47:07 CLEAR, THEY'RE NOT SAYING THEY NEED IT FOR A PATENT
14:47:09 CASE. THEY'RE NOT SAYING THEY NEED IT FOR A
14:47:12 TRADEMARK CASE.

ALL OF THEIR ARGUMENTS GO TO TRADE DRESS.

AND EVERY CASE THAT HAS BEEN CITED TO YOU, EVERY CASE THAT EXISTS ON TRADE DRESS LOOKS AT THE HISTORICAL BEHAVIOR OF THE PERSON WHO WAS ASSERTING THE TRADE DRESS.

IT GOES BACK, BECAUSE WHAT WE HAVE TO PROVE IS, ONE, THAT WE HAVE DONE SOMETHING DISTINCTIVE; AND, TWO, THAT THE MARKET HAS REACTED TO IT IN A WAY THAT IT'S GOT AN ACQUIRED DISTINCTIVENESS AND THAT THAT THEN BECOMES OUR LEGAL RIGHT THAT WE CAN ASSERT.

BUT THAT IS ENTIRELY HISTORICAL.

AND SO ALL OF THE CASES THAT HAVE BEEN CITED TO YOUR HONOR RELY ON -- AND PARTICULARLY IN THE AREA IN WHICH THEY TALKED ABOUT WHICH IS WHETHER OR NOT THERE IS THIS CONTINUITY, IT LOOKS AT THE HISTORICAL PRODUCTS THAT HAVE BEEN MARKETED.

NO ONE HAS EVER SAID IN ORDER TO GET AN INJUNCTION IN A TRADE DRESS CASE YOU HAVE TO PROMISE THAT YOU WILL NOT CHANGE THIS IN THE FUTURE OR THAT YOU WILL LOOK AT YOUR FUTURE PLANNING OR ANYTHING LIKE THAT.

THEY LOOK AT THE FACTS THAT EXIST AS OF THE TIME OF THE INJUNCTION. THE ROSE ART CASE SPECIFICALLY SAYS THAT THE PLAINTIFF CAN PICK THE

PRODUCTS THAT THEY ARE ALLEGING ARE THE TRADE DRESS, WHICH IS WHAT WE HAVE DONE.

AND THE ANSWER TO YOUR HONOR'S QUESTION, QUITE SIMPLY, IS IF AT THE TIME THAT THIS INJUNCTION CAME OUT WE WERE NOT COMPETING WITH THEM, THAT WOULD BE A DEFENSE.

BUT TO SPECULATE ABOUT WHETHER IT MIGHT HAPPEN OR WHATEVER HAPPENS AND TO GIVE THEM LITERALLY WHAT IS THE MOST SECRETLY REGARDED INFORMATION IN OUR COMPANY, TO SPECULATE ABOUT WHAT THE MARKET IS GOING TO LOOK LIKE A MONTH FROM NOW LITERALLY WOULD BE PRECEDENT SETTING AND HUGELY DAMAGING TO US.

THE COURT: OKAY. SO WHEN IS THE END OF LIFE FOR THE PRODUCTS?

OKAY. YOU'RE SAYING IT'S NOT BEFORE THE RELEASE OF THE NEXT GENERATION, BUT HOW LONG IS THE PREVIOUS GENERATION SOLD?

MR. MCELHINNY: WE'RE SAYING ALL OF THE PRODUCTS THAT WE HAVE ASSERTED AS THE BASIS OF OUR TRADE DRESS ARE TODAY IN THE MARKET AND COMPETE AGAINST SAMSUNG'S PRODUCTS.

AND OBVIOUSLY IN ORDER TO WIN OUR PRELIMINARY INJUNCTION, WE WILL HAVE TO PROVE THAT.

THE COURT: WHY DID YOUR -- YOUR

DISCOVERY LETTER SAYS, YOU KNOW, WE'LL BE HAPPY TO GIVE YOU DISCOVERY THAT YOU NEED, SAMSUNG, FOR THE P.I. MOTION AFTER WE FILE OUR MOTION.

THAT JUST SEEMS TO BE UNREASONABLE TO ME.

MR. MCELHINNY: IT WAS INTENDED TO BE REASONABLE, YOUR HONOR.

JUST TO TAKE, IN MY EXPERIENCE, THE WAY THESE THINGS WORK IS THAT THE MOTION GETS FILED. THE DEFENDANT DECIDES WHAT DISCOVERY THEY NEED. THERE'S AN AGREEMENT AS TO WHAT DISCOVERY THEY GET AND WHAT THE SYMMETRICAL DISCOVERY.

JUST NOW WHEN YOU ASKED COUNSEL WHAT HIS FUTURE DISCOVERY WOULD BE, HE LAID OUT EXACTLY THAT PATTERN. HE SAID WE NEED TO SEE THE MOTION, THEN WE'LL SEE WHO THE DECLARANTS WERE.

AND SO WE -- THE LETTER ASSUMES THAT, BUT I BELIEVE THERE'S A FOLLOW-UP LETTER THAT SAID, YOU KNOW, IF YOU WANT TO START EARLIER, YOU SAID THIS, WE AGREED THAT WE WILL EXPEDITE THE RELEVANT DISCOVERY AND THE ANSWER TO THAT WAS WE DON'T WANT TO TALK ABOUT THAT. WE DON'T WANT TO TALK ABOUT ANY DISCOVERY EXCEPT THIS PARTICULAR MOTION.

AND WE REMAINED, AS I TOLD YOU THE LAST TIME, YOUR HONOR, IT IS IN OUR INTEREST TO EXPEDITE THE DISCOVERY IN ORDER TO GET OUR PRELIMINARY

INJUNCTION AND WE'RE -- WE REMAIN OPEN TO THOSE MEET AND CONFER.

THE COURT: WHAT, YOU KNOW, ABOUT SAMSUNG'S ARGUMENT THAT, WELL, A HIGHLY CONFIDENTIAL OUTSIDE COUNSEL EYES ONLY DESIGNATION WAS SUFFICIENT TO AVOID PREJUDICING SAMSUNG IN RELEASE OF PRERELEASE PRODUCTS BUT THAT DOESN'T APPLY TO APPLE. THAT'S INSUFFICIENT TO AVOID ANY SUBSTANTIAL PREJUDICE TO APPLE?

MR. MCELHINNY: WHAT IS FAIR IS APPLYING THE SAME THREE STANDARDS TO US THAT YOUR HONOR APPLIED IN THE MOTION. AND WHAT YOU LOOKED AT WAS IMMINENCE OF RELEASE, WHAT YOU LOOKED AT WAS DIRECT -- RELEVANCE WASN'T ENOUGH. YOU ASKED FOR DIRECT RELEVANCE OF THE PRELIMINARY INJUNCTION MOTION, AND THEN UNDER PREJUDICE, YOU LOOKED AT EXACTLY THIS ISSUE.

AND WHAT YOU SAID WAS, SAMSUNG'S CLAIMS OF PREJUDICE WERE UNDERCUT BECAUSE THEY ARE DOING THEIR OWN PRERELEASES, THEY ARE PUTTING OUT THE SAMPLES IN THE MARKET.

WE SHOWED YOU THE PICTURES AND YOU SAID THE CONCLUSION WAS FOR THEM TO BE CLAIMING THIS IS CONFIDENTIAL AT THE SAME TIME THAT THEY ARE SEEDING THE MARKET WITH THIS STUFF UNDERCUT THEIR CLAIMS OF

PREJUDICE.

THE COURT: LET ME ASK --

MR. MCELHINNY: I NEED TO ANSWER YOUR QUESTION DIRECTLY.

THE COURT: GO AHEAD.

MR. MCELHINNY: INFORMATION ABOUT WHAT APPLE'S FUTURE PRODUCTS LOOKED LIKE CANNOT BE POLICED. WE WILL BE DEALING WITH EXPERTS. THE FIRM ON THE OTHER SIDE IS IN FOUR OTHER LAWSUITS, SAME LAWYERS AGAINST APPLE FOR OTHER CLIENTS.

THE KNOWLEDGE OF WHAT THESE PRODUCTS LOOK LIKE CANNOT BE POLICED. A PROTECTIVE ORDER, MORE PEOPLE AT APPLE WILL HAVE TO GET IT. I'LL GET IT. I DON'T HAVE IT RIGHT NOW.

THERE'S JUST A UNIVERSE OF PEOPLE THAT WOULD GET ACCESS TO THIS INFORMATION, ANY ONE OF WHOM WOULD HAVE THE POWER TO LEAK IT IN A WAY THAT WOULD BE COMPLETELY UNTRACEABLE.

BUT YOUR HONOR KNOWS FROM THE ARTICLES THAT YOU HAVE SEEN THAT THERE'S A WHOLE BLOGOSPHERE OF PEOPLE OUT THERE DOING EVERYTHING THEY CAN TO FIND OUT ABOUT APPLE'S PRERELEASE. THAT IS OUR CHARISMA.

AND IT'S POLICED, AS YOU KNOW FROM THE DECLARATIONS, THOROUGHLY WITHIN APPLE AND THIS

WOULD PUT IT IN A WAY THAT WE COULDN'T PROVE IT HAPPENED, LEAKS WOULD SHOW, AND YOUR HONOR WOULD NEVER TO BE ABLE TO TELL. TOO MANY PEOPLE WOULD HAVE HAD ACCESS.

THE COURT: AND YOU'RE SAYING WEEKS OF SAMSUNG'S PRERELEASES DOESN'T MATTER BECAUSE THEY ARE LEAKING IT ANY WAY? IS THAT YOUR POSITION?

MR. MCELHINNY: I'M SAYING YOUR HONOR DID A BALANCE AND WHAT WAS -- SAMSUNG DIDN'T HAVE DECLARATIONS THAT WE HAD THAT SAID THE PRODUCT INFORMATION IS PROTECTED WITHIN THEIR COMPANY. IT DIDN'T HAVE ANY DECLARATIONS AT ALL ABOUT HOW CLOSELY IT WAS PROTECTED.

BUT WHAT WE SHOWED YOU WAS THAT THEY WERE FLYING REPORTERS TO SPAIN AND HANDING THE PRODUCTS OUT.

THREE OF THE FIVE PRODUCTS OF THE RESULTS OF YOUR ORDER HAVE ALREADY BEEN RELEASED. THEY'RE NOT SECRET NOW AT ALL.

AND THE OTHER TWO HAVE BEEN A SAMPLE.

SO THE DIFFERENCE -- I MEAN, YOUR HONOR'S ORDER OF THE RELEASE IS IMMINENT AND SAMSUNG IS ALREADY WELL INTO A MARKETING CAMPAIGN WHICH IS WHERE THEY DO BUSINESS DIFFERENTLY AS YOUR JUSTIFICATION FOR GIVING US THE PART OF WHAT WE

ASKED FOR THAT YOU GAVE US.

AND ALL I'M SAYING IS IF YOU APPLY EXACTLY -- SAUCE FOR THE GOOSE AND SAUCE FOR THE GANDER AND IF YOU APPLY EXACTLY THAT SAME TEST, YOU COME UP TO A CONCLUSION IN OUR CASE BECAUSE THE FACTS ARE HERE.

THE COURT: LET ME ASK, IF THIS DOES GO BY WAY OF A P.I. MOTION, WHAT IS THE HARM GOING TO BE? IT SEEMS UNLIKELY THAT ANYBODY WOULD ACTUALLY BUY A SAMSUNG PRODUCT AND BE CONFUSED AND THINK, IN FACT, THAT THEY ARE BUYING AN APPLE PRODUCT.

SO I FIND LOST SALES TO BE REALLY HARD TO BELIEVE HERE.

SO WHAT IS IT GOING TO BE?

MR. MCELHINNY: IT WILL BE A COMBINATION OF THINGS. IT WILL, IN FACT, BE LOST SALES. BUT IT ALSO WILL BE A --

THE COURT: YOU'RE GOING TO ASSERT THAT PEOPLE BOUGHT A SAMSUNG PRODUCT THINKING THAT IT WAS ACTUALLY AN APPLE PRODUCT?

MR. MCELHINNY: I BELIEVE IN GENERAL IT'S GOING TO FALL INTO THREE AREAS: EITHER THAT'S GOING TO BE PART OF IT.

THE COURT: OKAY.

MR. MCELHINNY: TWO, THAT PEOPLE ARE

GOING TO BELIEVE THAT SAMSUNG HAD AUTHORITY FROM APPLE TO USE APPLE'S IP, AND, THEREFORE, THERE WAS AN ENDORSEMENT.

AND, THREE, WE'RE GOING TO DEMONSTRATE THAT ONE WAY TO ATTACK APPLE IS BY MAKING ITS DESIGNS GENERIC BY BROADENING THEM TO THE POINT OF THE UNIQUENESS AND THE SPECIAL APPLICATION TO APPLE NO LONGER APPLIES BECAUSE YOU CAN'T TELL THE DIFFERENCE ANY MORE.

AND THAT OBVIOUSLY WILL BE IRREPARABLE.

THE COURT: WITH REGARD TO THE VALIDITY, IF WE END UP HAVING IN THE P.I. MOTION LOOK AT VALIDITY OF THE MARKS, THE DESIGN PATENTS, WHAT ARE YOU GOING TO DO? ARE YOU GOING TO HAVE EXPERTS?

MR. MCELHINNY: WE WILL CERTAINLY -- AGAIN, THERE'S A LONG WAY TO GO BETWEEN THIS AND THE MOTION, BUT OBVIOUSLY WE'RE GOING TO TRY TO CRAFT, IF WE FILE THE PRELIMINARY INJUNCTION, A MOTION THAT IS DIRECT, SORT OF PARED DOWN AND GIVES US THE LARGEST -- WE'RE NOT GOING TO ASSERT ALL OF OUR RIGHTS OBVIOUSLY.

AND SO THERE ARE INSTANCES WITH THE TRADEMARKS WHERE WE WILL HAVE PRESUMPTIONS OF VALIDITY, WE HAVE DESIGN PATENTS THAT WILL HAVE PRESUMPTIONS OF VALIDITY, BUT THERE WILL BE EXPERTS

14:56:16 AS WELL BOTH IN TERMS OF THE LIABILITY ISSUES AND THE IRREPARABLE INJURY.

14:56:20 THE COURT: LET ME ASK MR. VERHOEVEN, NOW THAT THE IPAD 2 WAS JUST RELEASED IN MARCH, ISN'T IT A BIT SPECULATIVE TO SAY -- I MEAN, YOU YOURSELF SAY THEY SEEM TO DO LIKE ONE A YEAR. WHY SHOULD WE BELIEVE THAT THEY ARE GOING TO DO TWO THIS YEAR?

14:56:39 MR. VERHOEVEN: THERE'S AN ARTICLE IN THE "WALL STREET JOURNAL" THIS MORNING SAYING THAT THEY THINK THAT THE ANALYSTS ARE EXPECTING THEM TO RELEASE ANOTHER PAD IN THE FALL.

14:56:48 THE POINT IS THAT WE SHOULD BE ENTITLED TO DISCOVERY SO IT'S RECIPROCAL SO THAT WE CAN PREPARE JUST LIKE THEY'RE ALLEGEDLY PREPARED FOR THEIR PRELIMINARY INJUNCTION MOTION.

14:56:59 SO THE PHONE IS DUE OUT ANY DAY NOW, ACCORDING TO FORECASTS. THEY WON'T TELL US AND THEY WON'T EVEN TELL YOUR HONOR. THEY KNOW WHEN THEY'RE COMING OUT WITH THEIR NEW PRODUCT AND THEY WON'T TELL YOU AND THEY WON'T TELL US EITHER.

14:57:11 IF I MIGHT, YOUR HONOR, I REALLY WOULD LIKE TO ADDRESS SOME OF THESE POINTS THAT MR. MCELHINNY MADE AS WELL.

14:57:17 SHOULD I DO THAT NOW?

14:57:18 THE COURT: YES. I'M JUST GOING TO GIVE

YOU A VERY QUICK, IF YOU COULD, TIMEFRAME. I WANT YOU SPECIFICALLY TO ADDRESS THEIR POINT WHICH IS, LOOK, IF THE APPLE PRODUCTS ARE NOT BEING SOLD AT THE TIME, THEN THE P.I. MOTION LOSES OR LET'S SAY HYPOTHETICALLY A P.I. WAS ACTUALLY ISSUED, THE MOMENT THEY STOPPED SELLING THE PRODUCT THAT IS, YOU KNOW, ALLEGEDLY BEING CONFUSED WITH YOURS, THEN THE P.I. IS GOING TO EXPIRE AND BE TERMINATED.

MR. VERHOEVEN: EXACTLY. I'LL ADDRESS THAT RIGHT NOW.

THE COURT: GO AHEAD.

MR. VERHOEVEN: YOUR HONOR, BASICALLY THE MAIN POINT THAT THEY MAKE ON RELEVANCE IN THEIR MOTION IS THAT, OH, THIS WAS ABOUT THE FUTURE AND THE FUTURE IS NOT RELEVANT.

WELL, THAT IS 180 DEGREES OPPOSITE OF THE POSITION THAT THEY TOOK WHEN THEY SOUGHT EXPEDITED DISCOVERY OF SAMSUNG'S FUTURE PRODUCTS.

AND I MADE THE POINT, YOUR HONOR, AT THAT HEARING, THE RECIPROCAL POINT WHICH IS IF WE HAVE NOT RELEASED THE PRODUCT YET AS A MATTER OF BLACK LETTER LAW, IT CAN'T CONSTITUTE ANY SORT OF TRADE DRESS OR INFRINGEMENT AND IT'S NOT RELEASED AND IT'S NOT ON THE MARKET.

BUT THEY CAME BACK AND SAID WE NEED TO

GET READY FOR A PRELIMINARY INJUNCTION MOTION AND WE KNOW THAT THEY'RE GOING TO RELEASE A FUTURE PRODUCT AND WE WANT TO SEE IT IN ADVANCE SO WE CAN GET READY AND ALL WE'RE SEEKING HERE IS THE SAME THING SO WE CAN GET READY.

NOW, IF THEY FILED THEIR P.I. MOTION BEFORE THE GALAXY S2, WHICH IS ACTUALLY RELEASED WHICH WON'T BE UNTIL THE FALL OF 2011, THEY CAN'T ACCUSE THE GALAXY S2.

BUT YOUR HONOR HAS ORDERED US TODAY TO PRODUCE THE GALAXY S2 FOR THEM SO THEY CAN GET READY FOR THEIR PRELIMINARY INJUNCTION MOTION.  ALL WE'RE SEEKING IS PARITY.

THEY'RE GOING TO RELEASE A NEW PHONE IN THE FALL.  THEY WON'T TELL US THAT, BUT I THINK BY THE FALL THEY'RE GOING TO HAVE A NEW PHONE AND THERE'S ALL KINDS OF SPECULATION AS TO WHAT IT'S GOING TO BE.

WE KNOW THE IPHONE 4 IS DRAMATICALLY DIFFERENT IN DESIGN AND LOOK THAN THE IPHONE 3.

WE KNOW THAT THE IPAD 2 IS DRAMATICALLY DIFFERENT IN SCOPE AND SHAPE AND FORM AND DESIGN THAN THE FIRST PAD.

AND WE SUSPECT THAT THESE NEW PRODUCTS THAT ARE GOING TO BE COMPETING ON THE MARKETPLACE

WITH THESE FUTURE PRODUCTS, NOT CURRENT PRODUCTS, FUTURE PRODUCTS OF SAMSUNG ARE GOING TO HURT THEIR CASE BECAUSE THEY'RE GOING TO BE A LOT DIFFERENT AND THAT'S GOING TO BE THE SUBJECT OF THEIR MARKETING CAMPAIGN IN THE FALL.

AND THAT'S GOING TO BE VERY CRITICAL TO ANY PRELIMINARY INJUNCTION MOTION, BOTH ON THE MERITS, ARE THESE THINGS GOING TO CONFUSE THE CONSUMER? AND ALSO AS TO IRREPARABLE HARM AND BALANCE OF HARM.

IF THEY'RE -- IF THEIR FOCUS IN THE MARKETPLACE, YOU KNOW, THESE PHONES, THEY HAVE A SHELF LIFE, THEY'RE LIKE CABBAGE, YOU HAVE A SHELF LIKE OF SIX MONTHS TO A YEAR MAX.

THE NOTION THAT THEY'RE GOING TO BE IRREPARABLY HARMED BECAUSE OF THE IPHONE 3 WHICH SELLS FOR 59 BUCKS AND IS GOING TO A COMPLETELY DIFFERENT MARKET SEGMENT THAN THE 4G TURBO CHARGED VERY EXPENSIVE IPHONES IS LUDICROUS.

THE ONLY WAY THEY'RE GOING TO BE ABLE TO SHOW ANY SORT OF HARM IS BY COMPARING THEIR CURRENTLY ON-THE-MARKET PRODUCTS TO THE CURRENTLY ON-THE-MARKET PRODUCTS IN THE FALL THAT SAMSUNG HAS.

SO THAT'S WHY WE NEED -- IF YOU, IF YOU

15:00:41 GIVE THEM THE ARGUMENT THAT, HEY, WE NEED YOU TO 15:00:44 GET READY, EVEN THOUGH THEY'RE NOT FUTURE, THE SAME 15:00:47 ARGUMENT APPLIES TO US AND THAT'S REALLY THEIR ONLY 15:00:50 ARGUMENT ON RELEVANCE, YOUR HONOR.

15:00:51 IF WE ASSUME THAT THE APPLE PHONE NEXT 15:00:58 GENERATION IS ON THE MARKET AND IS WHAT THEY'RE 15:01:00 FILING THEIR P.I. ON, AND IS BEING COMPARED TO, FOR 15:01:04 EXAMPLE, THE GALAXY S2 PHONE, THEN THERE'S 15:01:09 ABSOLUTELY NO ARGUMENT THAT THEY COULD MAKE THAT AS 15:01:11 TO RELEVANCE OF THE NEXT GENERATION IPHONE.

15:01:14 THEY'RE NOT -- THEY CITE, YOUR HONOR, 15:01:17 THE -- A COUPLE OF CASES WHERE THEY SAY THEY GET TO 15:01:20 PICK AND CHOOSE WHAT TRADE DRESS THEY ASSERT.

15:01:24 WELL, THOSE CASES, YOUR HONOR, ARE CASES 15:01:26 ABOUT PAST PRODUCTS AND ABOUT THE SITUATION WHERE A 15:01:29 PLAINTIFF HAS FIVE MODELS AND THEY SUED FOR TRADE 15:01:33 DRESS INFRINGEMENT OF ONE OF THE FIVE MODELS AND IS 15:01:38 IT OKAY FOR THEM TO JUST PICK THAT ONE MODEL AND 15:01:40 NOT THE OTHERS?

15:01:41 THE ANALOGY TO THIS CASE, YOUR HONOR, 15:01:43 WOULD BE IF THEY SUED US ON THE IPHONE 3 BUT NOT 15:01:45 THE IPHONE 4 ALREADY IN THE MARKETPLACE, AND WE 15:01:48 WERE SAYING THEY DON'T HAVE THE DISTINCTIVE TRADE 15:01:53 DRESS ON THE IPHONE 3 BECAUSE THE IPHONE 4 IS 15:01:55 DIFFERENT, THAT'S WHAT THOSE CASES ARE ABOUT.

15:01:57 THEY HAVE NOTHING TO DO WITH THIS SITUATION. APPLE IS CERTAINLY NOT SAYING WE HAVE MADE A DECISION AND WE'LL REPRESENT TO THE COURT THAT WE WILL NOT SUE AND ASSERT OUR INTELLECTUAL PROPERTY ON THE NEXT GENERATION IPHONE AGAINST SAMSUNG. OF COURSE NOT.

THEY PLAINLY INTEND TO. SO THOSE CASES HAVE NO MERIT TO THIS PARTICULAR CASE.

SO WHEN YOU LOOK AT WHAT IS THE COURT REQUIRED TO DO IF THEY FILE A P.I. MOTION AS TO THESE FUTURE PRODUCTS? THE COURT IS GOING TO -- WHAT WE'LL HAVE TO DO TO DEFEND OURSELVES IS GO OUT AND DO SURVEYS AND DO A COMPARISON OF THE CURRENT PHONES ON THE MARKETPLACE PROBABLY IN THE FALL.

AND THEY HAVE GOT -- THEY'RE GOING TO GET A HEAD START BY GETTING THE SAMSUNG ADVANCED PHONES TODAY UNDER THEIR MOTION FOR EXPEDITED DISCOVERY AND ALL WE'RE ASKING IS FOR PARITY. WE SHOULD GET THE SAME THING.

NOW, IF THEY FILE A MOTION AND THE SAMSUNG PHONE IS NOT ON THE MARKET, THEY WON'T BE ABLE TO SUE FOR TRADE DRESS. THEY'RE MAKING THE INVERSE POINT.

IF THEY MAKE THE POINT AND THEN THEIR NEXT GENERATION IPHONE IS ON THE MARKET, THEN THAT

WON'T BE A RELEVANT FACTOR. BUT YET THEY CLAIM THAT THEY'RE ENTITLED TO GET FUTURE PRODUCTS THAT ARE NOT ON THE MARKET IN ADVANCE, AND WE ARE NOT. THAT'S NOT PARITY.

I'M NOT FINISHED. THAT'S NOT PARITY AND THAT'S NOT RECIPROCITY AND YOUR HONOR PUT THEM ON NOTICE THAT YOUR HONOR WOULD GIVE THEM RECIPROCITY.

A COUPLE OF BRIEF POINTS.

THE COURT: VERY BRIEF.

MR. VERHOEVEN: HE SAID, WELL, WE SHOULDN'T BE ENTITLED TO ANYTHING UNTIL THEY FILE THEIR MOTION. 180 DEGREES THE OPPOSITE OF WHAT HE REPRESENTED TO THIS COURT.

I WAS THE ONE AT THE LAST HEARING SAYING TO YOUR HONOR THEY HAVEN'T FILED THE MOTION AND THEY SHOULDN'T GET ANY DISCOVERY BEFORE THEY FILE THE MOTION AND THEY SAID, WELL, WE NEED IT IN ADVANCE.

OKAY. WELL, BY THE SAME TOKEN WE NEED A VERY LIMITED RECIPROCAL AND EXACTLY RECIPROCAL DISCOVERY IN ADVANCE. THEY SHOULD NOT BE HEARD NOW AFTER HAVING SUCCESSFULLY MADE THE ARGUMENT THAT WE NEED IT IN ADVANCE ARGUMENT TO OBTAIN EXPEDITED DISCOVERY AND GOT IT BASED ON THAT THE ARGUMENT TO MAKE THE DIAMETRICALLY OPPOSITE ARGUMENT NOW TO

PREVENT US FROM ACHIEVING PARITY AND DISCOVERY.

REALLY BRIEFLY ON THE CONFIDENTIALITY ISSUE. A COMPLETE MISCHARACTERIZATION OF YOUR HONOR'S ORDER.

YOUR HONOR DID NOTICE THAT IN OUR IN PART OUR CLAIMS OF CONFIDENTIALITY DON'T CARRY THAT MUCH WEIGHT BECAUSE WE'RE DISCLOSING SOME OF OUR PRODUCTS OR THEY'RE ABOUT TO BE RELEASED.

BUT YOUR ORDER COVERS PRODUCTS THAT ARE NOT GOING TO BE RELEASED TO THE EARLIEST IN THE FALL AND YOUR HONOR ORDERED THOSE PRODUCED.

YOUR HONOR NEVER SAID THAT, AS FAR AS I CAN RECALL, THAT CONFIDENTIALITY CONCERNS OF SAMSUNG DON'T MATTER BECAUSE SAMSUNG IS, QUOTE, "WELL INTO ITS AD CAMPAIGN." THAT'S JUST NOT IN THE ORDER.

APPARENTLY APPLE THINKS IT'S A DOUBLE STANDARD AND APPLE'S CONFIDENTIAL INFORMATION IS MORE CONFIDENTIAL THAN SAMSUNG'S CONFIDENTIAL INFORMATION AND THAT'S JUST NOT THE WAY THE LAW WORKS.

APPARENTLY APPLE SAYS ITS CONFIDENCE CAN'T BE POLICED BUT SAMSUNG'S CAN.

IT'S A DOUBLE STANDARD. WE OPPOSED THEIR MOTION FOR EXPEDITED DISCOVERY BUT PUT A PLACE

HOLDER IN THAT WHAT WE -- WHAT IN FAIRNESS, IF YOUR HONOR ORDERED IT, THEN THAT DISCOVERY SHOULD BE RECIPROCAL, AND THAT'S ALL WE'RE ASKING FOR.

OUR REQUESTS ARE NARROW AND THEY'RE LIMITED TO EXACTLY TO THE UNIVERSE OF WHAT YOUR HONOR GRANTED FOR THE PLAINTIFF, AND WE HAVE AGREED TO A PROTECTIVE ORDER FOR DEALING WITH THE CONFIDENTIAL INFORMATION OF SAMSUNG'S CRITICAL PRODUCTS THAT ARE NOT PUBLIC YET AND THAT SHOULD BE JUST AS GOOD FOR APPLE.

NOBODY IS GOING TO SEE IT EXCEPT OUTSIDE COUNSEL AND IT'S VERY LIMITED AND THERE'S A PROSECUTION -- AND IT'S JUST LIKE YOUR HONOR TOLD US. WE HAVE GOT THAT SIGNED AND IT'S AGREED TO. SO THERE SHOULD BE NO PROBLEM THERE.

SO IN SUMMARY, YOUR HONOR, ALL WE WANT IS FAIRNESS AND RECIPROCITY HERE AND WE THINK WE SHOULD BE ENTITLED TO IT.

MR. MCELHINNY: THREE BRIEF --

THE COURT: LET ME ASK, WHAT IS THE TIMING OF THE P.I.?

MR. MCELHINNY: IF WE FILE A P.I., WE EXPECT TO DO IT WITHIN THE NEXT 30 DAYS, YOUR HONOR.

JUST THREE VERY BRIEFLY.

THE COURT: I DO HAVE OTHER CASES AND THEY ARE VERY PATIENTLY WAITING.

MR. MCELHINNY: LET ME SAY TWO THINGS.

THE COURT: VERY SHORT TWO THINGS.

MR. MCELHINNY: IF WE FILE A PRELIMINARY INJUNCTION IT WILL BE BASED ON OUR PRODUCTS CURRENTLY IN THE MARKET AND ONLY THOSE PRODUCTS.

AND, TWO, ON THE DISCOVERY POINT, KIM EXHIBIT 2 IS OUR LETTER WHERE WE SAID WE WILL TALK TO YOU ABOUT DISCOVERY NOW OR FOLLOWING THE FILING OF THE PRELIMINARY INJUNCTION.

THANK YOU, YOUR HONOR.

THE COURT: OKAY. THANK YOU ALL VERY MUCH.

(WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

/S/
______________________________
IRENE RODRIGUEZ, CSR, CRR
CERTIFICATE NUMBER 8074

DATED: JUNE 20, 2011