HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

KENNETH H. BRIDGES (CA SBN 243541)
kbridges@bridgesmav.com
MICHAEL T. PIEJA (CA SBN 250351)
mpieja@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone:  (650) 804-7800
Facsimile:  (650) 852-9224

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE INC.'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:      August 5, 2011<br>Time:     1:30 p.m.<br>Place:    Courtroom 4, 5th Floor<br>Judge:   Hon. Lucy H. Koh |

1    TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on August 5, 2011 at 1:30 p.m., or as soon thereafter as the

3    matter may be heard, in the courtroom of the Honorable Lucy H. Koh at the United States District

4    Court for the Northern District of California, 280 South 1st Street, Courtroom 4, 5th Floor, San

5    Jose, Plaintiff Apple Inc. shall and hereby does move the Court for a preliminary injunction

6    prohibiting Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and

7    Samsung Telecommunications America, Inc. (collectively "Samsung" or "Defendants"), from

8    making, using, offering to sell, or selling within the United States, or importing into the United

9    States, the following recently released products:  the Galaxy S 4G, Infuse 4G, and Droid Charge

10   smartphones, and the Galaxy Tab 10.1 tablet computer.  This motion is based on this notice of

11   motion and supporting memorandum of points and authorities; the supporting declarations and

12   exhibits of Cooper C. Woodring, Ravin Balakrishnan, Patrick J. Zhang, Jason R. Bartlett, Richard

13   J. Lutton, Jr., and Sissie Twiggs; and such other written or oral argument as may be presented at

14   or before the time this motion is taken under submission by the Court.

15

16   Dated: July 1, 2011                              HAROLD J. MCELHINNY
                                                      MICHAEL A. JACOBS
17                                                    JENNIFER LEE TAYLOR
                                                      ALISON M. TUCHER
18                                                    RICHARD S.J. HUNG
                                                      JASON R. BARTLETT
19                                                    MORRISON & FOERSTER LLP

20

21                                           By:   /s/ Michael A. Jacobs
                                                     MICHAEL A. JACOBS
22
                                                   Attorneys for Plaintiff
23                                                 APPLE INC.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 5

I. PRELIMINARY INJUNCTION STANDARD .................................................. 5

II. APPLE IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM
FOR DESIGN PATENT INFRINGEMENT ..................................................... 5

    A. Apple Is Likely to Prove Design Patent Infringement at Trial ............... 6

        1. The Samsung Infuse 4G and Galaxy S 4G Phones Infringe
            the 'D677 Patent ....................................................................... 7

        2. The Samsung Infuse 4G and Galaxy S 4G Phones Infringe
            the 'D087 Patent ..................................................................... 11

        3. Samsung's Galaxy Tab 10.1 Infringes the 'D889 Patent ......... 13

    B. Apple is Likely to Prevail on Design Patent Validity at Trial .............. 16

III. APPLE IS ENTITLED TO A PRELIMINARY INJUNCTION BASED
ON SAMSUNG'S INFRINGEMENT OF THE '381 PATENT ....................... 17

    A. The '381 Patent Has Survived Reexamination and Does Not Present
Any Claim Terms Requiring Construction .......................................... 17

    B. Apple Is Likely to Succeed on the Merits ........................................... 18

        1. Samsung Infringes the Claims of the '381 Patent ................... 18

        2. Samsung Is Unlikely to Prevail on Invalidity at Trial ............. 23

IV. A PRELIMINARY INJUNCTION IS NECESSARY TO PREVENT
IRREPARABLE HARM ................................................................................. 24

    A. Apple Will Be Irreparably Harmed if Samsung Continues to Erode
the Distinctiveness of Apple's Designs and to Take Market Share ...... 24

    B. Because Apple Is Seeking a Preliminary Injunction Against
Samsung's Newly Released Products, Its Alleged Delays in
Enforcing Its Rights Are Irrelevant .................................................... 27

V. THE BALANCE OF EQUITIES WEIGHS DECIDEDLY IN APPLE'S
FAVOR .......................................................................................................... 29

VI. A PRELIMINARY INJUNCTION SERVES THE PUBLIC INTEREST ....... 30

VII. CONCLUSION ............................................................................................. 30

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3  CASES

4  *Abbott Labs. v. Sandoz, Inc.*,
5     544 F.3d 1341 (Fed. Cir. 2008)................................................................... 5, 24

6  *Amini Innovation Corp. v. Anthony California, Inc.*,
   439 F.3d 1365 (Fed. Cir. 2006)......................................................................... 6

7
8  *Apple Inc. v. Brilliant Store, Inc.*,
   10-cv-2996-SBA, slip. op. (N.D. Cal. Jan. 5, 2011) ............................................ 16

9  *AstraZeneca LP v. Apotex Corp.*,
10     633 F.3d 1042 (Fed. Cir. 2010)................................................................. 5, 18, 24

11  *Blumenthal Distrib. v. Exec. Chair, Inc.*,
   No. 10-CV-1280, 2011 U.S. Dist. LEXIS 28203 (E.D.N.Y. Mar. 3, 2011) ........................... 5

12
13  *Brown v. 3M*,
   265 F.3d 1349 (Fed. Cir. 2001)......................................................................... 18

14  *Egyptian Goddess, Inc. v. Swisa, Inc.*,
15     543 F.3d 665 (Fed. Cir. 2008)......................................................................*passim*

16  *Elantech Devices Corp. v. Synaptics, Inc.*,
   C06cv1839 CRB, 2008 U.S. Dist. LEXIS 120024 (N.D. Cal. Mar. 13, 2008)..................... 28

17  *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*,
18     10-cv-616, 2011 WL 1119563 (E.D. Va. Mar. 17, 2011)................................. 29, 30

19  *Gorham Mfg. Co. v. White*,
   81 U.S. 511 (1872)..................................................................................... 7

20
21  *Hoop v. Hoop*,
   279 F.3d 1004 (Fed. Cir. 2002)..................................................................... 5, 6

22  *Int'l Seaway Trading Corp. v. Walgreens Corp.*,
23     589 F.3d 1234 (Fed. Cir. 2009)............................................................... 6, 10, 13

24  *iRise v. Axure Software Solutions, Inc.*,
   No. CV 08-3601-SJO, 2009 WL 3615075 (C.D. Cal. Sept. 11, 2009).................................. 23

25
26  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
   988 F.2d 1117 (Fed. Cir. 1993)..................................................................... 9, 12

27  *Microsoft Corp. v. i4i Ltd. P'shp*,
28     564 U.S. --, 180 L. Ed. 131 (2011) ................................................................... 16

*Nanoexa Corp. v. Univ. of Chicago*,
    No. 10-CV-2631-LHK, 2010 WL 3398532 (N.D. Cal. Aug. 27, 2010) .................................. 24

*Nokia Corp. v. Apple Inc.*,
    Case No. 1:09cv791 (D. Del.) (the "Nokia Action") ........................................................ 17, 18

*Oakley, Inc. v. Sunglass Hut Int'l*,
    No. SA CV 01-1065-AHS, 2001 WL 1683252 (C.D. Cal. Dec. 7, 2001),
    *aff'd*, 316 F.3d 1331, 1339 (Fed. Cir. 2003); .................................................................... 23

*Oscar Mayer Foods Corp. v. Sara Lee Corp.*,
    No. 90-D-42-C, 1990 U.S. Dist. LEXIS 10032 (W.D. Wis. Mar. 20, 1990) ........................ 24

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*,
    998 F.2d 985 (Fed. Cir. 1993) ................................................................................................... 7

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
    549 F.3d 842 (Fed. Cir. 2008) ................................................................................................. 23

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
    32 F.3d 1552 (Fed. Cir. 1994) ................................................................................................. 24

*Rexnord, Inc. v. Laitram Corp.*,
    1 U.S.P.Q.2d 1923 (E.D. Wis. 1986) ................................................................................. 28, 29

*Telebrands Direct Response Corp. v. Ovation Commc'ns, Inc.*,
    802 F. Supp. 1169 (D.N.J. 1992) ................................................................................. 24, 29, 30

*Titan Tire Corp. v. Case New Holland, Inc.*,
    566 F.3d 1372 (Fed. Cir. 2009) .......................................................................... 5, 16, 23

*Trak, Inc. v. Benner Ski KG*,
    475 F. Supp. 1076 (D. Mass. 1979) ......................................................................................... 30

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997) ................................................................................................ 18

*Whistler Corp. v. Dynascan Corp.*,
    9 U.S.P.Q.2d 2087 (N.D. Ill. 1988) .................................................................................... 28, 29

## MEMORANDUM OF POINTS AND AUTHORITIES

Apple moves for a preliminary injunction to prevent Defendants from infringing three Apple design patents and one utility patent by selling four recently released products: the Infuse 4G, Galaxy S 4G, and Droid Charge smartphones, and the Galaxy Tab 10.1 tablet computer.

### INTRODUCTION

Apple's iPhone and iPad mobile devices are among the most distinctive and commercially successful products in the world. The success of these products is no accident. It was earned through Apple's substantial investment in design innovation, product development, and worldwide marketing and advertising. Apple's Amended Complaint explains the significance of Apple's elegant and distinctive product designs. The unique and refined "Apple look" of Apple's iPhone and iPad products has become recognizable around the globe and has played a critical role in their extraordinary commercial success.

The look and operation of the Samsung smartphones and tablet computer that are the subject of this motion are likewise no accident. As described in the Amended Complaint, Samsung chose to copy Apple, not to innovate. The message that Samsung conveys to consumers with its imitative smartphone design is simple: "It's just like an iPhone." Samsung's Galaxy Tab 10.1 tablet sends a similar message: "It's just like an iPad." With the benefit of those messages, Samsung is seeking to take market share by trading off of the popularity of Apple's products.

When Apple became aware of Samsung's copying, it attempted to persuade Samsung to stop. Those pleas fell on deaf ears. Samsung's recent products confirm that Samsung is continuing its deliberate policy of releasing products in the United States that mimic Apple's iPhone and iPad products. The similarity is unmistakable:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPLE'S PRODUCTS**[1]          **SAMSUNG'S PRODUCTS**[2]





iPhone 3GS                    Galaxy S 4G
Released June 2009            Released February 2011





iPhone 4                      Infuse 4G
Released June 2010            Released May 2011

[1] The iPhone 3GS was released in June 2009, the iPhone 4 was released in June 2010, and the iPad 2 was released in March 2011. (*See* Declaration of Patrick J. Zhang in Support of Apple's Motion for Preliminary Injunction ("Zhang Decl."), Exs. 23-26.)

[2] The Samsung Galaxy S 4G was released in February 2011, the Infuse 4G was released in May 2011, and the Tab 10.1 was released in June 2011. (*See* Zhang Decl. Exs. 33-37.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14





iPad 2
Released March 2011

Galaxy Tab 10.1
Released June 2011 (with promise of
new user interface in future update)

15      In article after article, the media has reported on the striking similarity of Samsung's

16 phones and tablets to Apple's iPhone and iPad.  (*See* Zhang Decl. ¶¶ 2-5 and Exs. 1-4.)  Samsung

17 has been copying competitors for years.  (*See id.* at ¶¶ 6-7 and Exs. 5-6.)  Samsung's conduct

18 makes clear that it has adopted "cloning" as its business strategy for the mobile device field.

19      Apple's substantial investment in product design and function is protected by a range of

20 intellectual property rights.  Apple's Amended Complaint asserts seven design patents and eight

21 utility patents against Samsung products, as well as Apple's trademark and trade dress rights.

22 Apple brings this preliminary injunction motion because Samsung's latest product releases show

23 that Samsung is ramping up a massive assault on Apple's market and is doing so with products

24 that blatantly infringe Apple's intellectual property rights.  Preventing that assault from

25 irreparably harming Apple is a matter of the utmost urgency.

26      In order to expedite resolution of this motion, Apple has selected intellectual property

27 rights that lend themselves readily to adjudication without trial.  To protect its iconic product

28 designs, Apple demonstrates in this motion that Samsung's products infringe Apple's iPhone and

iPad Design Patent Nos. D618,677 (the "'D677 patent"), D593,087 (the "'D087 patent"), and D504,889 (the "'D889 patent"). Deciding infringement of these design patents is as simple as comparing Apple's design patents to images of the Samsung products and observing the substantial similarity between the two. The same is true for validity: a visual comparison of prior art designs with Apple's design patents confirms that Apple's patented designs are radically different from the prior art.

To protect its pioneering advances in user interface functionality, Apple demonstrates in this motion that the Samsung products infringe U.S. Patent No. 7,469,381 (the "'381 patent"). The '381 patent is a strong, easily understood patent. It is directed to a clever method for displaying images on touch screens: when one uses a finger to drag a displayed page past its bottom edge, for example, and releases the finger, the page bounces back to fill the full screen. The claims of the '381 patent are so clear that in recent litigation between Apple and Nokia Corporation, neither side asked the court to construe *any* terms. A simple demonstration proves that Samsung's products infringe. Moreover, the Patent Office confirmed the validity of all twenty claims of this patent in a reexamination initiated by Nokia, which included the best prior art references Nokia could find.

For even greater simplicity, Apple is limiting this motion to new products that Samsung recently released in the U.S. Apple has not targeted the unreleased Galaxy S 2 phone and Galaxy Tab 8.9 tablet computer. Apple reserves the right to seek a preliminary injunction against those two products as their release becomes imminent.

While Apple's other claims are equally strong, they potentially raise additional issues that could delay the prompt issuance of a preliminary injunction. But the urgency of resolving all of Apple's claims remains. Accordingly, Apple is filing a concurrent motion for an expedited trial on all of its claims.

It is hard to imagine a more compelling case for issuing a preliminary injunction. Samsung's copying is blatant. Apple's innovations are renowned, and are the result of substantial investment in research and development. Apple is likely to prevail on the merits of the design and utility patent claims presented in this motion. Unless enjoined, Samsung's sales of a new

round of copycat products will cause irreparable harm to Apple that cannot be adequately compensated by damages. Accordingly, Apple requests that the Court issue a preliminary injunction and ensure that innovation — not unlawful imitation — is protected.

**ARGUMENT**

**I.      PRELIMINARY INJUNCTION STANDARD**

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *AstraZeneca LP v. Apotex Corp.,* 633 F.3d 1042, 1050 (Fed. Cir. 2010) (citing *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 25 (2008).) When this standard is met, courts have issued preliminary injunctions prohibiting the sale of products in both utility and design patent cases. *Id.* at 1045 (affirming preliminary injunction against launch of generic drug in utility patent case); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1343 (Fed. Cir. 2008) (affirming preliminary injunction in utility patent case); *Hoop v. Hoop*, 279 F.3d 1004, 1008 (Fed. Cir. 2002) (affirming preliminary injunction against sale of products likely to infringe design patent); *Blumenthal Distrib. v. Exec. Chair, Inc.*, No. 10-CV-1280, 2011 U.S. Dist. LEXIS 28203, at *5 (E.D.N.Y. Mar. 3, 2011) (granting preliminary injunction based on likely infringement of design patent). Apple has met this standard for each of the patents at issue in this motion.

**II.     APPLE IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM FOR DESIGN PATENT INFRINGEMENT**

To establish a reasonable likelihood of success on a design patent, "the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Apple is likely to prevail on infringement and is also likely to withstand challenges to the validity of its 'D677, 'D087 and 'D889 design patents.

## A.     Apple Is Likely to Prove Design Patent Infringement at Trial

Apple is likely to prove at trial that Samsung's products infringe Apple's patented designs.  The Federal Circuit clarified the design patent infringement standard in its *en banc* decision in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008).  The central inquiry is whether an "ordinary observer," who is "familiar with the prior art," would find the overall appearance of the accused product to be "substantially the same" as the overall appearance of the patented design, or to "embody the claimed design or any colorable imitation thereof."[3] *Id.* at 677-78; *see also Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006) (court must "analyz[e] the design as a whole" and not "mistakenly analyze[] each element separately").

An infringing product need not be an exact copy of the patented design, and Samsung cannot escape infringement by introducing minor variations into otherwise copycat products. *Egyptian Goddess*, 543 F.3d at 670 ("[T]he [infringing design and patented design] need not be the same 'to the eye of an expert,' because if that were the test, '[t]here never could be piracy of a patented design, for human ingenuity has never yet produced a design, in all its details, exactly like another, so like, that an expert could not distinguish them'") (quoting *Gorham*, 81 U.S. at 527).  "[T]he mandated overall comparison is a comparison taking into account *significant differences* between the two designs, *not minor or trivial differences* that necessarily exist between any two designs that are not exact copies of one another."  *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1234, 1243 (Fed. Cir. 2009) (emphasis added).  The critical issue is whether "the effect of the whole design [is] substantially the same" – "minor differences between a patent design and an accused article's design cannot, and shall not, prevent a finding of

---

[3]  Some decisions use "substantially similar" to describe the ordinary observer test.  *See, e.g., Hoop v. Hoop,* 279 F.3d 1004, 1007 (Fed. Cir. 2002) ("The ultimate test for design-patent inventorship, like the test for anticipation and infringement, is whether the second asserted invention is 'substantially similar' to the first") (citing *Gorham Mfg. Co. v. White,* 81 U.S. 511, 528 (1872)).

1    infringement." *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993)

2    (citations and internal quotes omitted).[4]

3         The hypothetical ordinary observer is deemed to be "conversant with the prior art," which

4    may be relevant to infringement.  *Egyptian Goddess*, 543 F.3d at 678.  For example, "[w]hen the

5    differences between the claimed and accused design are viewed in light of the prior art, the

6    attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed

7    design that differ from the prior art."  *Id*. at 676.  "If the accused design has copied a particular

8    feature of the claimed design that departs conspicuously from the prior art, the accused design is

9    naturally more likely to be regarded as deceptively similar to the claimed design, and thus

10   infringing."  *Id*. at 677.  The accused infringer, not the patentee, bears the burden of pointing out

11   prior art that it considers pertinent to the comparison between the claimed and accused designs,

12   although the patentee is also free to make such comparisons.  *Id*. at 678-79.

13        Easing adjudication of design patents on a preliminary injunction motion, there is no need

14   for the district court "to attempt to provide a detailed verbal description of the claimed design, as

15   is typically done in the case of utility patents."  *Id*. at 679.  For this reason, no formal claim

16   construction is required.

17            **1.      The Samsung Infuse 4G and Galaxy S 4G Phones Infringe the 'D677**

18                    **Patent**

19        The 'D677 patent, attached as Zhang Decl. Ex. 48, is directed to the ornamental

20   appearance of the Apple iPhone's distinctive front face—a design that is instantly recognizable as

21   "Apple" and "iPhone."  As shown, Samsung's Galaxy S 4G and Infuse 4G phones copy Apple's

22   patented design and appear to the ordinary observer to be "substantially the same."[5]  (*See*

23   Woodring Decl., ¶¶ 13-27 and Exs. 8-13.)

24

25   [4]  In fact, in the Supreme Court's landmark *Gorham* case, the accused spoon had noticeable
     differences from the patented design.  It was nevertheless held to infringe under the "ordinary
26   observer" test based on overall impression.  (*See* Declaration of Cooper C. Woodring ("Woodring
     Decl."), filed herewith, ¶¶ 51-52 and Ex. 22 (Cooper C. Woodring, *One Man's Crusade: How a*
27   *Spoon Revolutionized Design Protection in America*, Innovation, Summer 2010, at 55).)

28   [5]  As explained in the Manual on Patent Examining Procedure ("MPEP") and the design patent
     itself, broken lines in the figures are directed to unclaimed environment and form no part of the

1

2

| Galaxy S 4G | 'D677 patent | Infuse 4G |
|:---:|:---:|:---:|
|  | | |

3

4

5

6

7

8

9

10

11

12

13

14

15       Closely comparing Apple's patented design with Samsung's products reinforces the

16   conclusion of substantial similarity.  Samsung copied every major element of Apple's patented

17   design:

18          ▪       a flat, clear, black-colored, rectangular front surface with four evenly
                    rounded corners;
19
20          ▪       an inset rectangular display screen centered on the front surface that
                    leaves very narrow borders on either side of the display screen and
21                  substantial borders above and below the display screen; and

22          ▪       a rounded, horizontal speaker slot centered on the front surface above
                    the display screen,
23
24          ▪       where the rectangular front surface is otherwise substantially free of
                    ornamentation outside of an optional button area centrally located
                    below the display.
25   (*See* Woodring Decl. ¶¶ 16, 22 and Exs. 8, 11.)

26

27

28   claimed design.  MPEP 1530.02.  Oblique line shading is used to show "transparent, translucent
     and highly polished or reflective surfaces."  *Id.*

1

2

3

4

5

      A comparison of an Apple iPhone 4 embodying the patented design and the accused Samsung phones is also telling.  *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993) ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly"); Woodring Decl. ¶¶ 17, 23 and Exs. 9, 12.

6

7

8

9

10

11

12

13

14

15

16

17

18

| Galaxy S 4G | Apple iPhone 4 | Infuse 4G |
|---|---|---|
|  |  |  |

19

20

21

22

23

24

25

26

      Samsung's infringement (and intentional imitation) becomes even more apparent when viewed in the context of prior art designs.  At the May 12, 2011 hearing on Apple's motion for expedited discovery, Samsung submitted a handout that identified several alleged prior art designs.  (*See* Zhang Decl. Ex. 8.)  But a side by side comparison of the Samsung-identified art, Samsung's accused phones, and Apple's patented design shows that the Samsung phones are substantially the same as Apple's patented design and far afield from those prior art designs.  (*See* Woodring Decl. ¶¶ 18, 24 and Exs. 10, 13.)

27

28

| 'D677 | Galaxy S 4G | Infuse 4G | D563,929 (LG) | D498,754 (Alloy) |
|-------|-------------|-----------|---------------|------------------|
|  |  |  |  |  |

When a patented design "departs conspicuously from the prior art," and an accused product copies the conspicuously different features, "the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *Egyptian Goddess*, 543 F.3d at 677.

Minor differences between the Samsung phones and the patented design are trivial and legally insignificant: (1) slightly thinner bands above and below the display screen; (2) in the Infuse 4G, rounded corners with slightly smaller radius of curvature; (3) in the Galaxy S 4G, a small camera aperture in the upper right corner; (4) a slightly wider and flatter speaker slot; and (5) the use of small graphical icons to denote touch-sensitive areas below the display screen. (*See* Woodring Decl. ¶¶ 19, 25.) These minor variations do not negate the overwhelming similarity between the Samsung phones and Apple's patented design when viewed as a whole. This is especially true in light of the significant differences between Apple's patented design and the prior art, and Samsung's concerted effort to mimic Apple's distinctive design while rejecting a bevy of other design options. (*Id.* at ¶¶ 20-21, 26-27.) Samsung cannot escape design patent infringement by introducing insignificant differences after copying wholesale Apple's overall design. *Int'l Seaway Trading Corp.*, 589 F.3d at 1243; *see also* Woodring Decl. ¶¶ 51-52 and Ex. 22.

2.      **The Samsung Infuse 4G and Galaxy S 4G Phones Infringe the 'D087 Patent**

The 'D087 patent, attached as Zhang Decl. Ex. 49, is also directed to the distinctive facial appearance of Apple's instantly-recognized iPhone.  Samsung's Infuse 4G and Galaxy S 4G phones copy Apple's distinctive iPhone appearance and to the ordinary observer appear "substantially the same" as the patented design.  (*See* Woodring Decl. ¶¶ 28-42 and Exs. 14-19.)

| Galaxy S 4G | 'D087 patent | Infuse 4G |
|:---:|:---:|:---:|
| | | |

Each of these Samsung phones copies the iPhone and includes the same major features as Apple's patented design:

- ▪   a flat rectangular front surface with four evenly rounded corners;

- ▪   an inset rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and substantial borders above and below the display screen;

- ▪   a rounded, horizontal speaker slot centered on the front surface above the display screen,

- ▪   where the rectangular front surface is otherwise substantially free of ornamentation outside of an optional button area centrally located below the display; and

1
- a thin, continuous bezel surrounding the rectangular front surface that is
2
substantially uniform in appearance and having an inwardly sloping profile.

3
(*See* Woodring Decl. ¶¶ 31, 37 and Exs. 14, 17.)

4
A comparison of the original Apple iPhone embodying the patented design and the

5
accused Samsung phones showcases the extent of Samsung's copying.  *See LA Gear*, 988 F.2d at

6
1125-26; Woodring Decl. ¶¶ 32, 38 and Exs. 15, 18.

| Galaxy S 4G | iPhone | Infuse 4G |
|:-----------:|:------:|:---------:|
|  |  |  |

21
As with the 'D677 patent, a side by side comparison with the Samsung-identified prior art

22
shows that the accused Samsung phones copy the patented iPhone design and conspicuously

23
depart from the prior art.  (*See* Woodring Decl. ¶¶ 33, 39 and Exs. 16, 19.)  Because the accused

24
Samsung designs are substantially the same as Apple's patented design, yet depart from prior

25
designs in the same way, the accused Samsung designs are "naturally more likely to be regarded

26
as deceptively similar to the [patented Apple] design, and thus infringing."  *Egyptian Goddess*,

27
543 F.3d at 677.

28

| '**D087** | **Galaxy S 4G** | **Infuse 4G** | D563,929 (LG) | D498,754 (Alloy) |
|---|---|---|---|---|
|  | | | | |

The minor differences between the Samsung phones and the claimed design are trivial and legally insignificant. *See Int'l Seaway Trading Corp.*, 589 F.3d at 1243; Woodring Decl. ¶¶ 34-36 and 40-42. To the ordinary observer, the design of Samsung's products as a whole embody the claimed design and are substantially the same as Apple's patented design.

### 3.  Samsung's Galaxy Tab 10.1 Infringes the 'D889 Patent

The 'D889 patent, attached as Zhang Decl. Ex. 50, is directed to the appearance of an electronic tablet device with minimal adornment. Samsung's Galaxy Tab 10.1 clearly mimics, and is substantially the same as, the 'D889 patent's minimalist design. (*See* Woodring Decl. ¶¶ 43-50 and Exs. 20-21.)

| '**D889 patent** | **Galaxy Tab 10.1** |
|---|---|
| | |

| 'D889 patent | Galaxy Tab 10.1 |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

The overall appearance of the Galaxy Tab 10.1 is strikingly similar to the 'D889 patent and shows Samsung's copying.  Every major element of Apple's patented design is found in the Galaxy Tab 10.1:

- an overall rectangular shape with four evenly rounded corners;

- a flat clear surface covering the front of the device that is without any ornamentation;

- a thin rim surrounding the front surface;

1

- ▪ a substantially flat back panel that rounds up near the edges to form the thin rim around the front surface; and

2

3

- ▪ a thin form factor.

4    (*See* Woodring Decl. ¶¶ 46 and Ex. 20.)

5        Apple's infringement case is further bolstered by consideration of the prior art.  Apple's

6    patented 'D889 design was a leap forward in minimalist computer tablet design and departed

7    conspicuously from prior designs.  When the Samsung Galaxy Tab 10.1 is examined against the

8    prior art that was cited in the 'D889 patent on the one hand, and Apple's patented design on the

9    other, Samsung's infringement again becomes self-evident.  As shown below, the Samsung

10   Galaxy Tab 10.1 is substantially, even strikingly, similar to Apple's minimalist, patented 'D889

11   design, which in turn looks very different from the prior art.  (*Id*. at ¶¶ 47 and Ex. 21.)

12   Samsung's copying of the novel and distinctive features in Apple's patented design further

13   supports a finding of infringement.  *Egyptian Goddess*, 543 F.3d at 677.

14

| 'D889 | Galaxy Tab 10.1 | D451,505 (Hitachi) | D345,346 (IBM) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

15

16

17

18

19

20

21

22

23

24

25

26        Differences between the Samsung Galaxy Tab 10.1 and Apple's patented design are trivial

27   and legally insignificant: the aspect ratio, thickness, and edge profiles do not appear to be

28

absolutely identical in the Tab 10.1 and Apple's patented design.  (*Id.* at ¶¶ 48-50.)  But as discussed above, a product infringes a design patent even if it differs in several details, so long as an ordinary observer would view the overall appearance to be substantially the same.  These minor differences do not affect the substantial similarity between Samsung's tablets and Apple's claimed design when viewed as a whole, especially in light of the prior art.

### B.   Apple is Likely to Prevail on Design Patent Validity at Trial

A defendant at trial must prove invalidity by "clear and convincing evidence."  *Microsoft Corp. v. i4i Ltd. P'shp,* 564 U.S. --, 180 L. Ed. 131, 136 (2011).  A "patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation." *Titan Tire Corp.*, 566 F.3d at 1376.  "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id.* at 1377.  If Samsung comes forward with evidence of invalidity, Apple is entitled to respond.  *Id.*  The Federal Circuit summarized the proper approach to analyzing invalidity at the preliminary injunction stage as follows:

> Thus, when analyzing the likelihood of success factor, the trial court, after considering all the evidence available at this early stage of the litigation, must determine *whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid.*

*Id.* at 1379 (emphasis added).

Samsung has identified no prior art that would raise a serious question of design patent invalidity, let alone make it likely to meet the "clear and convincing" burden of proof at trial.  To the contrary, all of the smartphones in Samsung's May 12th demonstrative exhibit purporting to show that Apple's designs were "standard" were released *after* Apple's January 2007 design patent filing date.  (*See* Zhang Decl. Exs. 7, 10-21.)  Moreover, the 'D087, 'D677, and 'D889 patents were allowed by the Patent Office over a large number of cited prior art references.  The 'D087 patent was also decreed valid and enforceable via consent judgment and formed the basis for injunctive relief against another copier of Apple's patented designs.  *See Apple Inc. v.*

1    *Brilliant Store, Inc.*, 10-cv-2996-SBA, slip. op. at 2-4 (N.D. Cal. Jan. 5, 2011) (attached hereto as

2    Zhang Decl. Ex. 22).

3        The overwhelming public and media reaction to the revolutionary and distinctive "look"

4    of the iPhone and iPad further confirms the novelty of Apple's patented designs.  (*See* Zhang

5    Decl. ¶¶ 32-37, Exs. 27-32.)  The *New York Times* likened Apple's creation of the iPhone design

6    to the work of "the fairy godmother in 'Cinderella'":  transformation of a "homely and utilitarian

7    object, like a pumpkin or a mouse, into something glamorous and amazing, like a carriage or fully

8    accessorized coachman."  (*See id.* at Ex. 27.)  Walt Mossberg of the *Wall Street Journal*

9    described Apple's iPad design as "sleek" and "beautiful," while *Wired.com* simply concluded:

10   "there's something seriously different about Apple's tablet."  (*See id.* at Exs. 31-32.)

11   Accordingly, Apple, not Samsung, is likely to prevail on the validity of Apple's three design

12   patents.

13   **III.    APPLE IS ENTITLED TO A PRELIMINARY INJUNCTION BASED ON
14   SAMSUNG'S INFRINGEMENT OF THE '381 PATENT**

15       **A.    The '381 Patent Has Survived Reexamination and Does Not Present Any
           Claim Terms Requiring Construction**

16

17       Apple's '381 patent, attached as Zhang Decl. Ex. 51, is an easily understood patent that is

18   clearly infringed by all four Samsung products at issue.  iPhone and iPad users may be familiar

19   with the relevant functionality — pull a web page past its edge with one's finger and let go, and

20   watch the page bounce back to fill the screen.  Apple did not lightly decide to seek preliminary

21   relief on a utility patent, but this patent and Samsung's infringement present a paradigmatic case

22   for such relief both because infringement is clear under the plain language of the claims and also

23   because the patent has survived reexamination.

24       The '381 patent has previously been litigated and withstood a serious challenge to its

25   validity by a highly motivated adversary.  On December 11, 2009, Apple asserted the '381 patent

26   as a counterclaim against Nokia in *Nokia Corp. v. Apple Inc.,* Case No. 1:09cv791 (D. Del.) (the

27

28

"Nokia Action").[6]  (Zhang Decl. Ex. 38.)  In view of the easily understood and straightforward language of the claims of the '381 patent, neither party asked the Delaware court to construe any of its terms during the May 15, 2011 *Markman* hearing.  (*See* Zhang Decl. Ex. 39 (Nokia Action 2/23/11 Joint Claim Construction Chart.)  While patent claims should be construed before they are applied, not every claim limitation requires construction.  *See U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction is appropriate to "clarify and when necessary to explain what the patentee covered by the claims" but is not an "obligatory exercise in redundancy").  Here, no formal claim construction is necessary because the claims of the '381 patent employ simple terms that should be accorded their ordinary meaning.  *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (recognizing that non-technical claim terms do not require elaborate interpretation).

On April 28, 2010, Nokia requested *ex parte* reexamination of all twenty claims of the '381 patent based on four prior art references, three of which were not cited in the original prosecution.  (Zhang Decl., Ex. 40.)  Nokia relied on the same prior art for its invalidity contentions in supplemental interrogatory responses that it provided six months later, in effect conceding that it had not been able to find any better prior art, despite a year of litigation.  (*Id.*, Ex. 41.)   The Patent Office subsequently found Nokia's arguments unpersuasive and confirmed the patentability of all twenty claims.  (*Id.*, Ex. 42.)

### B.    Apple Is Likely to Succeed on the Merits

Likelihood of success on the merits requires Apple to show it will likely prove infringement of one or more claims of the '381 patent and that one or more of those claims will likely withstand validity challenges presented by Samsung.  *AstraZeneca LP,* 633 F.3d at 1050.

### 1.    Samsung Infringes the Claims of the '381 Patent

Samsung's products clearly infringe the claims of the '381 patent based on the plain language of those claims.  The '381 patent is generally directed to a method and a related device

---

[6]  On June 14, 2011, Nokia reported that the Nokia action had been settled.  Apple also asserted the '381 patent against High Tech Computer Corp. ("HTC") in an action it filed in Delaware on March 2, 2010.  (Zhang Decl. Ex. 43 at ¶ 41).)  HTC and Apple have not yet exchanged disclosures relating to the validity or interpretation of the '381 patent.

for displaying electronic documents on a touch screen display, in which (a) a document can be translated (*e.g.*, moved or scrolled) across the screen in response to the movement of a finger or other object on the touch screen; (b) if the document is moved beyond its edge, an area beyond that edge will be displayed (such as a black or "empty" screen); and (c) when the finger or other object is lifted from the touch screen, the document will scroll back so that the area beyond its edge is no longer displayed.  The result of this method is that the image scrolls back into view.

Claim 1 of the '381 patent is an independent method claim directed to use of the scroll back feature, while claims 19 and 20 are independent apparatus claims directed to devices that incorporate this feature.  Use of the Samsung products for their intended purpose infringes claim 1 (and its dependent claims), and sale of these products infringes claims 19 and 20.  A detailed infringement analysis is set forth in the Declaration of Ravin Balakrishnan, Ph.D in Support of Apple's Motion for a Preliminary Injunction ("Balakrishnan Decl.").  Apple summarizes this analysis below, using the Infuse 4G as an exemplary product.  The Galaxy S 4G and Droid Charge phones and the Samsung Galaxy Tab 10.1 tablet computer operate in the same manner, and thus infringe for the same reasons.  (*See* Balakrishnan Decl. ¶¶ 28-148; Exs. 10-12.)

Claim 1 of the '381 patent begins by reciting "a computer-implemented method comprising: at a device with a touch screen display."  The Infuse 4G is a computing device that runs software that can display images on its touch screen display.  (*See* Balakrishnan Decl. ¶¶ 28-34; Exs. 10-12.)  Thus, use of the Infuse 4G meets this preamble and first limitation.

The next four limitations of claim 1 involve sequential displays of first, second, third, and fourth portions of an electronic document, such as a photo.  Samsung's infringement is clear from the photos in the charts below, which are taken from the video clips attached as Exhibits 13a-13h to the Balakrishnan Declaration.

| CLAIM 1 | SAMSUNG INFUSE 4G |
|---|---|
| displaying a first portion of an electronic document; | The Infuse 4G displays a "first portion" of an electronic document such as a photo through its "Gallery" application. (*See* Balakrishnan Decl. ¶¶ 35-38, Ex. 13a.) <br><br>Figure 1: *Displaying "first portion" of electronic document* |
| detecting a movement of an object on or near the touch screen display; in response to detecting the movement, translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion; | The Infuse 4G detects the movement of a finger on its touch screen, and in response, scrolls the electronic document in the same direction, displaying a different "second portion" of the document.  (*See* Balakrishnan Decl. ¶¶ 39-41, Ex. 13a.) <br><br>Figure 2: *Displaying "second portion" by moving document in first direction in response to finger movement on touch screen*<br><br>First Direction |

| CLAIM 1 | SAMSUNG INFUSE 4G |
|---|---|
| in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display: displaying an area beyond the edge of the document, and displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion; and | In response to reaching the edge of an electronic document while it is moving in the first direction and the finger is still on the touch screen, the Infuse 4G displays a black region beyond the edge, and thus displays a smaller "third portion" of the document.  (*See* Balakrishnan Decl. ¶¶ 42-46, Ex. 13a.)<br><br> |
| in response to detecting that the object is no longer on or near the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion. | In response to detecting that the finger is no longer on its touch screen, the Infuse 4G scrolls the electronic document in a second direction until it no longer displays the area beyond the document's edge, and instead displays a "fourth portion" of the document that is different from the first portion.  (*See* Balakrishnan Decl. ¶¶ 47-53, Ex. 13a.)<br><br> |

The entire sequence is depicted below in a side by side comparison, showing the first, second, third, and fourth portions of the photograph in Figures 1 to 4. Neither the second nor the fourth portion is the same as the first portion.

   

| Figure 1: | Figure 2: | Figure 3: | Figure 4: |
|---|---|---|---|
| *Displaying "first portion" of electronic document* | *Displaying "second portion" by moving in first direction in response to finger movement* | *Displaying "area beyond edge" and smaller "third portion" while moving in first direction* | *When finger is lifted, document is moved in second direction to display "fourth portion" with no "area beyond edge"* |

Use of the Samsung devices also infringes dependent claims 2-5, 7, 9-10, 13, 14, and 16 of the '381 patent. (Balakrishnan Decl. ¶¶ 54-87.) These dependent claims add various limitations, such as specifying that the "object" on the touch screen device is a finger (claim 2); the "second direction" is opposite the "first direction" (claim 10); the area beyond the edge is displayed as black or a solid color (claim 13); and the change in direction makes the edge of the electronic document appear to be "elastically attached" to the edge of the touch screen (claim 16).

Claim 19 claims a device with a touch screen display, processor, and memory, with program instructions to perform the steps of claim 1. Each of the accused Samsung devices

1    performs the steps described in claim 1 and has a program with instructions for performing the

2    tasks as recited in claim 19.[7]  (Balakrishnan Decl. ¶¶ 88-124.)

3        Similarly, claim 20 claims a computer readable storage medium with stored instructions

4    that, when executed, cause a device with a touch screen display to perform the steps of claim 1.

5    Again, each of the accused Samsung devices performs the steps described in claim 1 and has a

6    computer readable storage medium with instructions for performing the tasks as recited in

7    claim 20.  (Balakrishnan Decl. ¶¶ 125-148.)

8                    **2.    Samsung Is Unlikely to Prevail on Invalidity at Trial**

9        As discussed above, "the trial court, after considering all the evidence available at this

10   early stage of the litigation, must determine whether it is more likely than not that the challenger

11   will be able to prove at trial, by clear and convincing evidence, that the patent is invalid."  *Titan*

12   *Tire*, 566 F.3d at 1379.  Samsung is not likely to meet that heavy burden of proof at trial for

13   the '381 patent.

14       The '381 patent survived reexamination over all of Nokia's identified prior art.  Nokia,

15   which was in litigation with Apple, was highly motivated to uncover the best prior art and

16   undoubtedly conducted an exhaustive prior art search.  Nevertheless, eleven months after Apple

17   first asserted the '381 patent against Nokia, and more than six months after the reexamination

18   petition was filed, Nokia relied on the *same* prior art in its November 2010 invalidity contentions.

19   (Zhang Decl. Ex. 41.)  Because the claims were confirmed during reexamination over the

20   strongest known prior art, there is an even greater likelihood that Apple will prevail on invalidity

21   challenges at trial.  *See Oakley, Inc. v. Sunglass Hut Int'l*, No. SA CV 01-1065-AHS, 2001 WL

22   1683252, at *5 (C.D. Cal. Dec. 7, 2001) (grant of reexamination certificate supports clear case of

23   validity for preliminary injunction); *aff'd*, 316 F.3d 1331, 1339 (Fed. Cir. 2003); *see also Procter*

24   *& Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 847-48 (Fed. Cir. 2008) (ordering

25

26   ────────────────
     [7]  *See, e.g.*, *iRise v. Axure Software Solutions, Inc.*, No. CV 08-3601-SJO, 2009 WL 3615075, at
27   *36 (C.D. Cal. Sept. 11, 2009) ("because the Court has found that Axure RP Pro includes the
     functions specified in each of the claim limitations, it necessarily follows that Axure RP Pro
28   contains the instructions for performing these functions . . .  As such, no reasonable jury could
     find that this additional "instructions" limitation of Claim 40 is not satisfied").

1   district court to consider preliminary injunction motion and noting court should consider status of

2   reexamination proceedings when evaluating likelihood of success).

3   **IV.    A PRELIMINARY INJUNCTION IS NECESSARY TO PREVENT
         IRREPARABLE HARM**

4

5       **A.    Apple Will Be Irreparably Harmed if Samsung Continues to Erode the
             Distinctiveness of Apple's Designs and to Take Market Share**

6           The Federal Circuit has repeatedly held that threatened loss of market share and goodwill

7   supports a finding of irreparable harm in patent cases.  For example, the Federal Circuit recently

8   affirmed a preliminary injunction, agreeing with the district court that the availability of damages

9   and the fact that other competitors were already in the market "do not negate" the irreparable

10  harm from lost market share that would ensue absent a preliminary injunction.  *Abbott Labs.,*

11  544 F.3d at 1361-62.  The Federal Circuit relied on its prior holding that "loss of revenue,

12  goodwill, and research and development support constitute irreparable harm."  *Id.* (citing *Bio-*

13  *Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996)).[8]

14          The Federal Circuit also recently affirmed a preliminary injunction that was based, in part,

15  on the finding that sale of infringing products would cause "incalculable harm to [the patent

16  holder's] goodwill."  *AstraZeneca* , 633 F.3d at 1063; *see also Nanoexa Corp. v. Univ. of*

17  *Chicago*, No. 10-CV-2631-LHK, 2010 WL 3398532, at *4 (N.D. Cal. Aug. 27, 2010) (noting in a

18  patent licensing dispute that "intangible injuries such as damage to reputation, advertising efforts,

19  or goodwill may constitute irreparable harm"); *Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552,

20  1558 (Fed. Cir. 1994) ("Harm to reputation resulting from confusion between an inferior accused

21  product and a patentee's superior product is a type of harm that is often not fully compensable by

22  money because the damages caused are speculative and difficult to measure").

23

24  _____

25  [8]  The same irreparable harm analysis applies for design patent infringement.  *See Telebrands
    Direct Response Corp. v. Ovation Commc'ns, Inc.*, 802 F. Supp. 1169, 1178-79 (D.N.J. 1992)
26  (granting preliminary injunction based on likely infringement of design patent and finding
    irreparable harm because patentee had spent "substantial sums" to promote its product, the
27  infringement would damage patentee's market share and reputation, and would encourage others
    to create "knock-off" products); *Oscar Mayer Foods Corp. v. Sara Lee Corp.*, No. 90-D-42-C,
28  1990 U.S. Dist. LEXIS 10032, at *24-25 (W.D. Wis. Mar. 20, 1990) (finding irreparable harm
    due to potential loss of market share and significant marketing expenditures).

1    Samsung's continued infringement of Apple's patented designs and utility patents

2    threatens irreparable harm to fundamental elements of Apple's business.  Apple has a focused

3    product offering of iPhones, iPads, and iPods, desktop and notebook computers and displays, and

4    media and software that runs on them.  (*See* Declaration of Jason R. Bartlett in Support of

5    Apple's Motion for a Preliminary Injunction ("Bartlett Decl."), filed herewith, Ex. 1.)  Of these,

6    perhaps none is more iconic than the phenomenally successful iPhone.  The iPhone immediately

7    caught the public's eye when it was announced on January 9, 2007.  The next day, it was featured

8    in the pages of the *New York Times*, the *USA Today*, and the *Wall Street Journal*.  In a survey

9    conducted just three months later, nineteen million mobile phone users in the United States

10   considered themselves "strongly interested" in buying an iPhone.  Time Magazine named it the

11   Invention of the Year.  (*See* Bartlett Decl. ¶¶ 3-5, 16.)

12   When the iPhone shipped in September 2007, Apple sold a million of them in just

13   74 days.  It took just three days to sell a million iPhone 3Gs in 2008 and three days to sell a

14   million iPhone 3GSs in 2009.  The iPhone 4 shattered these records, selling 1.7 million units in its

15   first three days in June 2010.  (*See* Bartlett Decl. ¶¶ 13, 19-21.)

16   More remarkable still is the iPad.  In roughly the time it took Apple to sell its first million

17   iPhones, Apple sold three million iPads.  (*See* Bartlett Decl. Ex. 32.)  The iPad created an entirely

18   new market.  As the technology review website CNET observed:

19           The Apple iPad wasn't just a successful tablet computer in 2010—it
             was *the* tablet computer.  In one fell swoop, Apple created the new
20           tablet market and sold tens of millions of iPads in spite of a global
             economic downturn and considerable skepticism.
21

22   (*See* Bartlett Decl. Ex. 43.)

23   Apple has invested heavily to develop the public's awareness of the designs of the iPhone

24   and iPad.  Apple's advertising expenditures were in the range of a half a billion dollars in each of

25   the last three years.  (Declaration of Sissie Twiggs in Support of Apple's Motion for a

26   Preliminary Injunction ("Twiggs Decl."), filed herewith, ¶ 2.)  Apple's advertising is ubiquitous.

27   Television, newspapers, magazines, websites, billboards, and transit stations around the world

28   carry images of Apple's products.  (Twiggs Decl. ¶¶ 3-7.)  Apple's iPhone and iPad advertising

famously eschews bright colors, spokespersons, and sometimes even words.  The product design is allowed to speak for itself:



(Twiggs Decl. ¶ 8, Ex. 2.)

Wide product distribution and extensive design-centric advertising have generated goodwill in the iPhone and iPad designs of incalculable value.  Samsung's sale of products that mimic Apple's designs threatens to erode the value of the designs and attenuate the hard-won link in the public's mind between the designs and Apple.

Samsung has made clear that it is aiming straight for the heart of Apple's product line with its "Galaxy" line of smartphones and tablets.  Samsung has already characterized itself in this litigation as Apple's "avowed competitor."  (D.N. 44 at 1.)  Last year, Samsung promised its shareholders:

> ***We will bolster our leadership in mobile phones as we aim to become the world's No. 1 handset producer***.  In 2010, Samsung Electronics reinforced our market leadership by achieving sales of 280 million mobile phones worldwide, up 23% over 2009 and a

double-digit increase in operating profits. Our flagship GALAXY S model posted sales of 10 million units, while the GALAXY Tab also led the Android tablet PC market, earning glowing customer reviews. . . . In 2011, we plan to aggressively challenge a market that grows ever more competitive. By launching GALAXY S II, our flagship strategy smartphone, we will emphasize our category leadership and provide readily available lineup options for global customers.

(Samsung 2010 Annual Report, Bartlett Decl. Ex. 45 (emphasis added).)  As intended, Samsung's iPhone and iPad clones are beginning to hit their mark.  In May 2011, the research group International Data Corporation reported that Samsung had achieved a huge, 350% year-over-year increase in the number of smartphone units sold worldwide in the year since it started selling its iPhone-imitating Galaxy S, resulting in surging market share (which more than doubled from 4.3% to 10.8% year-over-year).  (Bartlett Decl. Ex. 46.)

Absent injunctive relief, Samsung's sales of its Galaxy Tab tablet computers also are likely to undercut Apple's iPad sales.  Samsung's introduction of its copycat Galaxy Tab tablet in the fall of 2010 (*see* Zhang Decl. Ex. 36) directly harmed sales of the original iPad.  (Bartlett Decl. Ex. 47 (noting that Samsung's Galaxy Tab captured more than 17% of tablet sales during the holiday season while Apple's market share declined).)  A similar impact will likely result from Samsung's recent release of its Galaxy Tab 10.1 tablet (Zhang Decl. Exs. 37) -- a product that Samsung redesigned after the iPad 2's release to more closely mirror its profile.  (*See* May 18, 2011 Order (D.N. 52) at 3-4 (noting media reports that "Samsung 'overhaul[ed]' its forthcoming Galaxy Tab 10.1 in response to Apple's recently unveiled iPad 2").

Thus, allowing Samsung to sell a new round of infringing products will cause Apple irreparable harm.  Samsung's infringement is eroding the distinctiveness of Apple's designs.  Apple is losing market share and customer goodwill.  Money damages cannot adequately compensate Apple for the harm Samsung is causing.

### B.     Because Apple Is Seeking a Preliminary Injunction Against Samsung's Newly Released Products, Its Alleged Delays in Enforcing Its Rights Are Irrelevant

Samsung argued at the hearing on Apple's Motion to Expedite Discovery that Apple cannot show irreparable harm because it allegedly delayed in seeking a preliminary injunction

1   against "Galaxy S" phones released from July through November 2010.  (*See* Zhang Decl.

2   Ex. 7.)   Whatever the merits of Samsung's argument with respect to the release of the first

3   generation of Galaxy phones – and it has none – this motion is directed to products that Samsung

4   has just released in the past several months, as to which there can be no claim of delay.[9]

5          Because Apple's preliminary injunction motion is directed to Samsung's new products,

6   any alleged delay as to older products is irrelevant.[10]  Directly on point is *Rexnord, Inc. v.*

7   *Laitram Corp.*, 1 U.S.P.Q.2d 1923 (E.D. Wis. 1986).  There, the court denied a motion for

8   preliminary injunction as to Rexnord's older "4802, 4803, and 4809" products on the ground that

9   the patent holder did not sue until "sixteen months after discovering that the Rexnord products

10  may be infringing its patents." *Id.* at 1923.  The court held, however, that "there is no such undue

11  delay" on a later motion for a preliminary injunction against new "4813" and "4819" products.

12  *Id.* at 1924.  The court granted a preliminary injunction against these new products, even though

13  they were "essentially of the same design."  *Id.* at 1924; *accord Whistler Corp. v. Dynascan*

14  *Corp.*, 9 U.S.P.Q.2d 2087, 2088 (N.D. Ill. 1988) (citing *Rexnord* for the principle that "a patent

15  owner may seek a preliminary injunction in connection with newly introduced products even if

16  the products are essentially the same as previously marketed products").

17         The rationale of *Rexnord* applies with even greater force here, given that Samsung's

18  newly released products include significant upgrades to its older products.  (Zhang Decl. ¶¶ 52-

19  57, Exs. 33, 35, 44-47.)  Samsung's release of a new round of infringing products causes

20

21  _____

22  [9]  The "official" release dates of the Samsung Galaxy S 4G, Droid Charge, Infuse 4G, and Galaxy Tab 10.1 products were February 23, May 14, May 15, and June 8, 2011, respectively.  (*See* Zhang Decl., Exs. 33-35, 37.)

23  [10]  Even if Apple were seeking a preliminary injunction against Samsung's older smartphones,
24  Apple did not unduly delay because it immediately notified Samsung of its infringement claims when Samsung released them in July 2010, and was then involved in settlement negotiations with
25  Samsung.  (Declaration of Richard J. Lutton, Jr. in Support of Apple's Motion for a Preliminary Injunction, filed herewith, at ¶¶ 2-9.)  Courts have held that even a delay of more than one year
26  does not preclude a preliminary injunction when the patent holder has been engaged in periodic settlement negotiations with other infringers.  *See Elantech Devices Corp. v. Synaptics, Inc.*,
27  C06cv1839 CRB, 2008 U.S. Dist. LEXIS 120024, at *25 (N.D. Cal. Mar. 13, 2008) (granting preliminary injunction where "parties periodically engaged in settlement discussions over the
28  previous two years") (citations omitted).

1
2
significantly more serious harm — both qualitatively and quantitatively — than continuing sales
of older products.

3
4
5
6
7
8
9
Samsung's position that Apple is forever barred from seeking a preliminary injunction
against future generations of infringing devices merely because Apple did not seek such relief in
2010 against Samsung's first generation products is illogical and contrary to case law.  Samsung
does not get a "free pass" to release a new round of infringing products.  On the contrary, Apple
may seek a preliminary injunction in connection with "newly introduced products," regardless of
any alleged delay with regard to Samsung's older smartphones.  *See Whistler*, 9 U.S.P.Q.2d at
2088; *Rexnord*, 1 U.S.P.Q.2d at 1925.

10
## V.     THE BALANCE OF EQUITIES WEIGHS DECIDEDLY IN APPLE'S FAVOR

11
12
13
The substantial and irreparable harm that Apple is suffering and will continue to suffer
without immediate injunctive relief far outweighs any potential harm to Samsung, which
deliberately continues to mimic Apple's designs and to infringe its patents.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
The fact that Samsung might have to expend resources or suffer inconvenience to design
its own products and to remove their infringing functionality is a consequence of Samsung's
decision to copy Apple's patented designs and products; it does not weigh against entry of an
injunction.  This is especially true here, where Samsung has been on notice of its infringement for
approximately a year.  Under these circumstances, Samsung cannot now fairly claim that it would
suffer economic harm if restrained.  *See, e.g., Telebrands Direct Response Corp.*, 802 F. Supp. at
1179 (balance of equities favors preliminary injunction in design patent case, since "[o]ne who
elects to build a business on a product found to infringe cannot be heard to complaint if an
injunction against a continuing infringement destroys the business so elected") (quoting
*Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)); *Fred Hutchinson
Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, 10-cv-616, 2011 WL 1119563, at *8 (E.D. Va.
Mar. 17, 2011) (granting preliminary injunction and finding balance of equities favored patentee
even where defendants alleged economic harm and potential "bankruptcy or termination" if
enjoined).

28

1   Indeed, courts have recognized that it may be less prejudicial to enjoin a defendant that

2   has invested fewer resources in an infringing product than to wait until the defendant has invested

3   more resources in a product, and then later enjoin its use.  *See, e.g., Trak, Inc. v. Benner Ski KG*,

4   475 F. Supp. 1076, 1078 (D. Mass. 1979) (holding that enjoining defendant at commencement of

5   sales campaign would "nip[] the operation in the bud" whereas denial of preliminary relief would

6   result in defendant's entrenchment, "making permanent relief more problematical").

7   **VI.     A PRELIMINARY INJUNCTION SERVES THE PUBLIC INTEREST**

8   A preliminary injunction is necessary not only to protect Apple's rights, but also to protect

9   the public interest.  Because Apple has demonstrated a likelihood of success on its claims, the

10  public interest would be served by prohibiting Samsung from infringing Apple's patents.  *See,*

11  *e.g., Fred Hutchinson Cancer Research Ctr.*, 2011 WL 1119563, at *8 (granting preliminary

12  injunction and finding "there is a strong public interest in preserving the rights of patent

13  holders").  As one court noted in preliminarily enjoining infringement of a design patent:

14  > No public interest is served by allowing patent infringement.  While
   > this Court certainly favors vigorous competition in the marketplace,
15 > it also recognizes the importance of rewarding inventors for their
   > creative genius and protecting their intellectual property rights from
16 > infringers.  Rather than stifle competition, such protection
   > encourages the innovation that leads to new products.
17

18  *Telebrands Direct Response Corp.*, 802 F. Supp. at 1179.

19  **VII.    CONCLUSION**

20  Apple has shown that it is likely to prevail on the merits and has met the other criteria for

21  injunctive relief.  Apple's motion seeks to prevent further irreparable harm on account of

22  Samsung's blatant and continuous copying of Apple's products.  The violation of Apple's

23  intellectual property rights and the harm to Apple are clear.  Apple urgently requests that the

24  Court issue a preliminary injunction.

25

26

27

28

APPLE'S MOTION FOR A PRELIMINARY INJUNCTION
CASE NO.  11-cv-01846-LHK
sf- 3006623

30

1

Dated:  July 1, 2011                                    MORRISON & FOERSTER LLP

2

3                                                                By:     /s/ Michael A. Jacobs

4                                                                        Michael A. Jacobs

5                                                                Attorneys for Plaintiff
                                                                 APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ECF ATTESTATION**

2      I, JASON R. BARTLETT, am the ECF User whose ID and password are being used to

3  file the following document: APPLE'S MOTION FOR A PRELIMINARY INJUNCTION.  In

4  compliance with General Order 45, X.B., I hereby attest that Michael A. Jacobs has concurred in

5  this filing.

6

7  Dated: July 1, 2011

**MORRISON & FOERSTER** LLP

8

By:  /s/ Jason R. Bartlett
         JASON R. BARTLETT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28