# Exhibit 22



By Cooper C. Woodring, FIDSA
ccwoodring@cox.net

*Cooper Woodring is an industrial designer who serves as an expert witness in design-patent litigation. His recent discovery of the design of the actual accused product involved in the 1871 seminal design trial in the U.S. Supreme Court could influence jurors' future decisions in design-patent infringement trials. This article is dedicated to John Gorham. Without his outrage at having his design copied, his relentless pursuit of the copier and the ultimate resolution by the U.S. Supreme Court, copying designs would still be permissible.*

How a Spoon Revolutionized Design Protection in America

# ONE MAN'S CRUSADE

This is a story of one man's crusade to stop a copycat that led to one of the most significant and influential design decisions in U.S. history. It all started on July 16, 1861, when John Gorham of Providence, RI, was granted the 1,440th U.S. design patent for a "Spoon and Fork Handle." It ended 10 years later in December 1871 when the U.S. Supreme Court ruled in a design-patent infringement case involving Gorham—a ruling that still defines how close is too close in cases of design-patent infringement and in whose eyes that evaluation shall be made.

DESIGN.

J. GORHAM, G. THURBER & L. DEXTER, Jr.
SPOON AND FORK HANDLE.

No. 1,440.  Patented July 16, 1861.

### The Gorham Test

Most designers know that design patents protect how a product looks without regard to how it works, while utility patents are just the opposite: they protect how a product works without regard to how it looks. What most designers don't know is how courts determine how close a design must be to a patented design to be found guilty of infringing on the patented design.

The standard by which we still measure design-patent infringement was laid down by the Supreme Court over 130 years ago in a case in which Gorham had accused LeRoy S. White of infringing his design patent for a spoon and fork handle. The justices ruled: "If in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such to deceive the observer, inducing him to purchase one supposing it to be the other, then the first one patented is infringed by the other." (*Gorham v. White*, 81 U.S. (14 Wall) 511 (1871)).




Gorham's Design Patent Figure 1 Front View

White's Rogers & Bros. 'Gothic' Pattern Front View

Gorham's Design Patent Figure 2 Rear View

White's Rogers & Bros. 'Gothic' Pattern Rear View

For over 100 years, federal court judges and patent attorneys have quoted this statement; it has become known as the Gorham Test. Its words are the sole standard by which we evaluate and determine design infringement. However, what the accused design looked like, we don't know. The justices' verbal description was recorded in 1871 and is known to most patent attorneys and to a few designers. However, the actual design of White's spoon and fork handle the justices were looking at when they made their statement has been lost to history for well over 100 years. George Eastman's camera was not invented and patented until 1888, so no photographs of the accused design exist.

In my service as an expert witness in design, I prefer visual comparisons to verbal comparisons because a picture is worth a thousand words and because, after all, design is visual, not verbal. This is why, for example, we have our picture on our driver's license instead of a written description of what we look like.

This is also a story of my chance meeting of a collector/dealer of early American silver who helped me to discover White's long-lost design. Without a physical sample of the accused design, we could never fully determine what the Supreme Court justices meant when they stated that the accused design must be "substantially the same" as the patented design. How much alike is "substantially the same?" Were there numerous differences that the justices accepted and still determined that the heart and soul of Gorham's design had been stolen?

## Detective Work

At a lecture in 2002 I met Charles Spencer Curb, an antiques dealer from Arkansas and a knowledgeable collector of American silver for 30 years. I mentioned to him that the test to determine design patent infringement is called the Gorham Test and that it was based upon a Supreme Court decision involving the Gorham Company of Providence that designed and manufactured silver flatware. He had never heard of the case. I further explained that the proper infringement standard would be to compare Gorham's design patent drawings to White's actual accused design, but because White's actual spoon has been lost to history the courts have improperly, but knowingly, allowed White's design patent drawings (patent nos. 2,551 and 2,992) to be shown to the jury instead. We do not even know who manufactured White's spoon or the name of the pattern.

Curb and his many friends in the silver trade made contact with the Gorham Company and discovered in the Gorham Archives at Brown University in Providence a pamphlet published in 1872, one year after the Supreme Court decision. The pamphlet states, in part: "We desire to call attention of the trade to the decision of the Supreme Court

". . . in our suit against White for infringing our 'Cottage' pattern of spoons and forks, by selling the so-called *plated* 'Gothic' pattern of Rogers & Bros."

The pamphlet goes on to explain that the suit was brought not just to protect its "Cottage" pattern, "but to obtain a construction of patent law which would enable us to protect our designs from those manufacturers who have for so many years been accustomed to copying them."

For the first time in over 100 years, we know that:
1. LeRoy S. White's design for a spoon and fork handle was manufactured.
2. White's design was manufactured by Rogers & Bros. (now International Silver).
3. Rogers & Bros. called White's pattern "Gothic."
4. Rogers & Bros.'s Gothic pattern was silver plated, not coin or sterling silver like Gorham's Cottage pattern.

Armed with this new information, I turned to Replacements, Ltd. to see if I could find actual samples of White's design. I knew that silver plated flatware was of little value and most had not survived this long. I also knew that Rogers & Bros. had only three or four years to produce the Gothic pattern until the Supreme Court decision presumably caused the company to cease production and possibly destroy any remaining inventory. To my amazement, I found seven teaspoons in excellent condition for $17.99 each and purchased all of them. On occasion I have since found additional pieces on eBay.

Gorham first sued White in the Federal Circuit Court for the Southern District of New York for infringement of his 1,440 design patent. He must have been both surprised and incensed when he lost. No one questioned the validity of Gorham's design patent. The sole question the court had to decide was exactly how closely the two designs must resemble one another for infringement to have occurred. This legal issue was murky and quite unclear at that time. The relevant law was the Patent Act of August 29, 1842, in which Congress asserted that "The thing for which a [design] patent is given is that which gives peculiar or distinctive appearance to the manufacture or article to which it may be applied, or to which it gives form . . . it is the appearance itself, no matter how caused, that is the patentable element."

This statement raises the real issue that would ultimately be decided by the Supreme Court: Whose opinion is it that matters in determining whether the two designs are alike or not? Should it be that of the common consumer who might be an intended buyer for such a product, or should it be an expert, one who is a professional in the creation of such products?

The lower federal court in New York ruled that the observation of the common consumer is "worthless, because it is casual, heedless and unintelligent," concluding that "what matters is the observation of a person engaged in the manufacture or sale of articles containing such designs." The court found that the White design was not "substantially the same" as Gorham's Cottage pattern. Though the court openly acknowledged that they "were intended to appear to be the same to an ordinary purchaser, and will so appear to him, but that a person in the trade will not be deceived, by the resemblance, into purchasing an article of one design for an article of the other." White was innocent.

This decision must have sent shock waves through not only the Gorham Company but also U.S. manufacturers who understood the decision to mean that the lowest price possible was the only competitive weapon left. We are unable to determine if the Gorham Company paid the expenses, and perhaps even fees, for the large entourage of important people who went from New York to Washington to testify when Gorham appealed his case to the Supreme Court. From their testimonies it is clear that they saw their own interests at stake as well.

The Supreme Court's decision was tersely delivered: the lower court was held to be in error, Gorham's design patent was held infringed, and the Supreme Court unequivocally asserted that the test of a design patent is in the "eye of the ordinary observer."

When the hypothetical "ordinary observer" evaluates whether two designs are "substantially the same" it always raises the logical question: Compared to what? The answer is then as now: Compared to the designs that came before, known as the "prior art."

This trial took place during a period when silverware was in the midst of the great Victorian flowering of exotic





designs embellished with clusters of grapes, scrolls and Greek columns. By contrast, Gorham's Cottage pattern was unexpectedly plain. According to Curb, today's collectors of Victorian silver consider Gorham's Cottage pattern to be "nondescript and downright boring." The Cottage pattern sold vigorously for at least two decades and was glowingly described in *Harper's New Monthly Magazine* as "the most signal success of this kind ever achieved . . . designed in a happy moment by a member of the Company some years ago."

### Implications

Finally, let's look at the only legally proper comparison that can be made to evaluate design infringement: the drawings of Gorham's design patent compared to White's actual accused design. In this comparison we will use digitally cleaned-up renditions of Gorham's patent's drawings and black and white photographs of White's actual product.

The identification and discovery of one of White's spoons shows that there was a greater visual difference between the patented and accused designs than was previously thought by reading the Supreme Court's justices' words alone. The illustrations above show comparisons of some of the differences between the two designs that would be discernible to an ordinary observer.

The Supreme Court justices considered these discernible differences to be relatively insignificant because the overall designs were considered to be substantially the same in the eye of an ordinary observer. This new understanding of what the Supreme Court really meant should give future jurors the confidence to say, "Yes, I am aware of the many inconsequential differences between the patented and accused designs. However, I believe that the accused design copied the patented design and that the accused design is guilty of infringing the patented design's rights as the overall designs are substantially the same in the eye of the ordinary observer."

Thank you, John Gorham, for persevering. Had you not, anyone could copy original designs with impunity. Without your perseverance, the Federal Circuit Court for the Southern District of New York's statement that ordinary observers' opinions are "worthless, heedless and unintelligent" would still be the law. Today, however, the ordinary observers' opinions are the only opinions that matter. They are the gold standard. ∎