QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS LLP**<br><br>**Date: August 18, 2011**<br>**Time: 1:30 pm**<br>**Place: Courtroom 4, 5th Floor**<br>**Judge: Hon. Lucy H. Koh** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 18 2011 at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Lucy Koh in Courtroom 4 of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") will, and hereby does, move this Court to disqualify Bridges & Mavrakakis LLP ("Bridges & Mavrakakis") from further representation of Plaintiff Apple, Inc. ("Apple") in the above captioned matter.

This motion is made on the ground that Bridges & Mavrakakis' representation of Apple in this case violates the California Rule of Professional Conduct 3-310(E). Specifically, at least five attorneys at Bridges & Mavrakakis, including Mr. Kenneth Bridges, who has entered an appearance on behalf of Apple, previously represented Samsung in a patent infringement case involving one of the same patents at issue in this action. In fact, Mr. Bridges was in charge of the day-to-day operation of that case and was intimately involved in high level strategy discussions with Samsung representatives on topics such as possible defenses, litigation strategies and the coordination of litigation in U.S. District Court, the ITC, and even foreign venues.

In connection with their representations of Samsung, these attorneys received confidential information from Samsung that is substantially related to this action. This resulting, and irreconcilable, conflict of interest requires Bridges & Mavrakakis to be disqualified from representing Apple in this case.

This motion is based on this notice, the memorandum of points and authorities that follows, the Declaration of Austin Tarango dated July 11, 2011, the Declaration of Eunha Kim dated July 11, 2011 the pleadings on file in this action, and any further evidence or argument that the Court may properly receive at or before the hearing.

## RELIEF REQUESTED

Pursuant to Rule 3-310 of the California Rules of Profession Conduct and this Court's inherent power, Samsung seeks an Order disqualifying Bridges & Mavrakakis from any further representation of Plaintiff Apple Inc. in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

At least five of the ten attorneys at the firm of Bridges & Mavrakakis represented Samsung on patent litigation matters that are substantially related to the case at hand.   Collectively, these attorneys spent almost 9,000 hours, including time spent earlier this year, performing work on patent litigation matters for Samsung. Samsung is confronted with the incredulous situation of now finding these former trusted counsel working on behalf of Apple. Over the years, these attorneys not only provided Samsung with in-depth legal advice regarding global litigation strategy, but also detailed technical analysis of Samsung mobile devices.   Their work included preparing and overseeing claim construction charts, working with experts, coordinating with Samsung's in-house and business teams to craft strategy and develop facts relating to patent litigation about Samsung's mobile devices, including fair, reasonable, and non-discriminatory term ("FRAND") arguments, analyzing Samsung's patent portfolio relating to mobile technology, and reviewing technical specifications and other documents, including privileged documents relating to Samsung's mobile technology patents.   Through their representation of Samsung, these attorneys obtained unfettered access and insights into Samsung's approach to patent litigation.

Though these former attorneys were entrusted with highly sensitive Samsung confidential information, Bridges & Mavrakakis never sought and never obtained the consent of Samsung before undertaking its representation of Apple in the current action.   Because this conflict of interest taints all attorneys at Bridges & Mavrakakis through imputation, Samsung respectfully requests that this Court disqualify all Bridges & Mavrakakis attorneys from representing Apple in this litigation.

Samsung does not bring this motion lightly.   It recognizes the importance of allowing litigants in most cases to be represented by counsel of their own choice.   In this case, however, Apple retained Samsung's former counsel to litigate against Samsung.   It is inevitable that Samsung's confidential information—including not only the legal strategies implemented by Samsung in a prior litigation, but also other accumulated insights such as the decision-making

tendencies and pressure points of Samsung's internal legal team—will be used to advance Apple's interests against Samsung in this litigation.

In an effort to resolve this matter without judicial intervention, Samsung's counsel met and conferred with Bridges & Mavrakakis on multiple occasions. During these meet-and-confer sessions, Bridges & Mavrakakis contended that its attorneys could abstain from providing legal services to Apple that relate to their representation of Samsung and thereby avoid any conflict of interest. Even if somehow, for the entire pendency of this action, they could perform the mental gymnastics necessary to prevent the use and disclosure of Samsung's confidential information, the law does not permit such an ethical high-wire act. The test is whether the attorneys *have obtained* confidential information material to this litigation; not whether they will use it. Bridges & Mavrakakis' attorneys thus should not be permitted to represent Apple in this litigation.

## II. STATEMENT OF FACTS

### A. The Current Action Involves Samsung Patents and Technology Related to Mobile Devices.

On June 16, Apple filed an Amended Complaint in the current action, alleging at its core that Samsung infringes the trademarks, trade dress, and patents of Apple's iPhone. (Dkt. No. 75.) Of the 29 products that Apple specifically identifies as allegedly infringing its intellectual property rights, all of them are Samsung mobile devices (including 27 mobile phones) (Id. at ¶ 92). Among other things, Apple accuses Samsung of infringing patents relating to user interface elements of mobile devices. Those patents include touch-screen-related interface elements such as U.S. Patent No. 7,469,381, "List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display," and U.S. Patent No. 7,853,891, "Method and Apparatus for Displaying a Window for User Interface." (Dkt. No. 75 at ¶ 28.)

On July 1, Samsung filed its Answer, Affirmative Defenses, and Counterclaims to Apple's Amended Complaint. (Dkt. No. 80.) Samsung's counterclaims included claims asserting infringement of twelve Samsung patents. These patents all relate to mobile devices, including use of Universal Mobile Telecommunications System (UMTS) technology and the Wideband Code-Division Multiple Access (W-CDMA) cellular communication protocol, as well as user

interface elements and user features of mobile devices. One of the Samsung patents asserted as a counter-claim is U.S. Pat. No. 6,928,604 (the '604 patent), entitled "Turbo Encoding/Decoding Device and Method for Processing Frame Data According to QOS." (Dkt. No. 80 at ¶¶ 68-71.)

### B. The Attorneys' Prior Representations of Samsung

Before representing Apple in the present action, five attorneys currently employed by Bridges & Mavrakakis ("the Attorneys")—Kenneth Bridges, Brian Kwok, James Shimota, Howard Levin, and Michael Pieja—represented Samsung while at the law firm of Kirkland & Ellis LLP. (Kim Decl. ¶11.)[1] One set of those representations involved lengthy and substantial litigation between Samsung and Ericsson Inc. and Sony-Ericsson relating to mobile devices. Ericsson filed suit against Samsung on February 20, 2006 in the Eastern District of Texas after unsuccessful cross license negotiations between the parties relating to UMTS cellular phones and base stations. In its original complaint, Ericsson alleged that Samsung infringed 15 of Ericsson's patents relating to cellular phone and base station technologies. Samsung filed counterclaims asserting a number of its own patents against Ericsson, to which Ericsson then added more patents in its counterclaims. In total, 42 patents were at issue in that action. (Tarango Exs[2]. 7-9.)

As with the counterclaims Samsung filed against Apple in the present litigation, the patents in the Ericsson E.D. Texas matter included patents covering various aspects of UMTS technology. In fact, Samsung is asserting against Apple one of the *same* patents it asserted in the Ericsson matter, the '604 patent, when represented by the Attorneys. (Tarango Ex. 8 at ¶¶ 32, 97-99.) Furthermore, like the patents Apple asserts in the present case, some of the patents at issue in Ericsson related to user interface elements and user features including touch screen devices, such as U.S. Patent No. 5,031,119, "Split-screen Keyboard Emulator." (Tarango Ex. 10 at 5.)

---

[1] Citations to "Kim Decl. ¶ __" and "Kim Ex. __" refer to the Declaration of Eunha Kim in Support of Defendant Samsung's Motion to Disqualify Bridges & Mavrakakis LLP and the exhibits thereto, respectively.

[2] Citations to "Tarango Decl. ¶ __" and "Tarango Ex. __" refer to the Declaration of Austin Tarango in Support of Defendant Samsung's Motion to Disqualify Bridges & Mavrakakis LLP and the exhibits thereto, respectively.

Apart from the subject matter overlap of specific patent issues with Samsung's dispute with Ericsson, the current litigation between Apple and Samsung is also likely to raise overlapping defenses. Ericsson's counterclaims alleged a breach of contract based on Samsung's participation in standards groups, including the European Telecommunications Standards Institute ("ETSI"). Ericsson asserted that Samsung had licensed certain patents through its participation in the ETSI and other standards setting organizations, that certain patents asserted by Samsung (including the '604 patent) were essential to compliance with standards promulgated by ETSI, and that Samsung's membership and activities in ETSI subjected it to ETSI's Intellectual Property Rights ("IPR") policy and required Samsung to license its patents on fair, reasonable, and non-discriminatory ("FRAND") terms. (Tarango Ex. 9 at 26.) Ericsson also asserted a FRAND defense in response to claims Samsung asserted against it before the International Trade Commission (ITC), including with regard to the '604 patent also at issue here. (Tarango Ex. 11 at ¶¶ 95-102.) It is expected that Apple will invoke the same defenses here, thus calling on the Attorneys to prosecute against Samsung the same theory that a few years ago they defended Samsung against.

The time the Attorneys billed Samsung for in connection with the Ericsson Matters reveals that the Attorneys were deeply involved in all aspects of the litigation:

| Attorney | Hours Billed |
|---|---|
| Mr. Kenneth Bridges | 2,345.75 hours |
| Mr. Brian Kwok | 1,259.5 hours |
| Mr. James Shimota | 1,359.75 hours |
| Mr. Howard Levin | 1,084 hours |
| Mr. Mike Pieja | 185.75 hours |

(Kim Decl. ¶ 11.)[3] Mr. Bridges was one of the attorneys in charge of day-to-day operation of both the litigation and ITC matters, including involvement in high-level strategy discussions with Samsung representatives on topics such as possible defenses and counter-attacks to Ericsson's positions and the coordination of litigation in U.S. District Court, the ITC, and even foreign venues. (Id. at ¶ 5-7.) Consistent with his role as a trusted counselor and strategist, Mr. Bridges was exposed to confidential Samsung information regarding its mobile devices and business. (Id.) Mr. Bridges reviewed information provided by both Samsung and other Kirkland & Ellis attorneys regarding the patents asserted, including claim charts and non-infringement/invalidity analysis. (Id. at ¶ 8.)

Other attorneys at Bridges & Mavrakakis also played integral roles in the *Ericsson* litigations. Mr. Levin worked on the analysis of the '604 patent, including working with experts, discussing infringement positions with Samsung representatives, and analyzing the technology implicated by the patent. (Id. at ¶ 8-9, Ex. 1.) This is the same '604 patent that Samsung has asserted as a counter-claim in the current suit against Apple. (Dkt. No. 80 at ¶¶ 68-71.) Both Mr. Kwok and Mr. Levin were exposed to Samsung confidential information through the handling of the discovery process, including the review of Samsung documents for privileged communications. (Kim Decl. ¶ 10, Exs. 1, 3.) All of the Attorneys also had extensive access to Samsung representatives and Samsung's opinions and strategy regarding patent litigation in general. Many of the employees that the Attorneys interacted with are still with Samsung and are

---

[3] Samsung's descriptions of the Attorneys' prior representations, and other matters noted in the Kim Decl. and accompanying exhibits, are designed to provide the Court with sufficient information to recognize the patent conflict presented, but without disclosing privileged information. Samsung does not intend to waive privilege in connection with this motion, and waiver is not required. See Openwave Sys. v. 724 Solutions (US) Inc., No. C 09-3511 RS, 2010 WL 1687825, at *5 (N.D. Cal. Apr. 22, 2010) (rejecting argument that evidence of the type of work attorneys did was "too vague" to permit presumption that they obtained material confidences); *see also* Mark L. Tuft, et al., California Practice Guide: Professional Responsibility § 4:199 (Rutter 2010) (citing cases) (courts must "avoid[] the ironic result of disclosing the former client's confidences and secrets through inquiry into the actual state of the lawyer's knowledge in proceedings to disqualify the attorney.") If ordered by the Court, Samsung will of course provide redacted copies of the applicable billing records for *in camera* review.

expected to be involved in the current litigation. (Kim Decl. ¶ 4.) Many of the internal Samsung departments that the Attorneys collaborated with are the very same departments whose work is relevant to the current litigation. Id.

The Attorneys have also represented Samsung in other patent litigations aside from the *Ericsson* litigations. Within the past five years, the Attorneys have represented Samsung in two other patent actions—the *Spansion* and *Dicam* litigations. (Kim Exs. 2, 3.) According to their billing records, the Attorneys spent the following amounts of time working for Samsung in those matters:

*Dicam* Litigation

| Attorney | Hours Billed |
|---|---|
| James Shimota | 113.5 hours |

*Spansion* Litigations

| Attorney | Hours Billed |
|---|---|
| Howard Levin | 2,364.65 hours |
| Chris Lubeck | 233.6 hours |

Kim Decl. ¶ 12-13.

Just as in the *Ericsson* litigations, the Attorneys played a vital role in representing Samsung. Mr. Levin and Mr. Shimota both reviewed Samsung technical documents, conferred with Samsung employees and lawyers, and participated in the collection of documents from Samsung for production. (Kim Exs. 2, 3.) As a result of this work, the Attorneys were privy to every aspect of Samsung's fundamental strategies for defending against these lawsuits, many of which will be highly relevant here and play into Apple's ultimate advantage. For example, the Attorneys saw first-hand Samsung's attitude toward, and process for, identifying and pursuing

certain defenses and motions, its business sensitivities, and its overall approach to patent litigation. (Kim Decl. ¶¶ 5-8.)

In addition to being exposed to Samsung's highly confidential technical and financial information, the Attorneys were provided access to Samsung's confidential patent litigation defense strategies; accumulated insights into the day-to-day operations of Samsung's IP Legal Group; and observed the decision-making tendencies and personal pressure points of some of the same in-house attorneys and legal personnel who are responsible for defending Samsung against Apple.  (Kim Decl. ¶¶ 5-7.)   The Attorneys were also deeply involved in the substantive issues and discovery process, and therefore became intimately familiar with the structure of various business practices; key positions and personnel within; and the types, locations, and content of documents generated by Samsung's Wireless Telecommunications Business Unit.   (Kim Decl. ¶¶ 8-10.)

### C. **Apple's Counsel Denies There is a Conflict.**

Within two weeks of Mr. Bridges filing his Notice of Appearance, Samsung sent Mr. Bridges a letter expressing its concern that Bridges & Mavrakakis' representation of Apple was putting Samsung confidential information at risk in the current litigation.   (Tarango Ex. 1.)   This letter requested that Mr. Bridges explain his prior representation of Samsung, whether any Samsung confidential information was conveyed to Bridges & Mavrakakis' co-counsel or Apple, and why Bridges & Mavrakakis contends that the current litigation is not substantially related to the prior representations of Samsung.  (Id. at 2.)   Bridges & Mavrakakis responded that any prior representations by its lawyers of Samsung were not related to the current litigation. (Tarango Ex. 4 at 1.)   On behalf of Bridges & Mavrakakis, Mr. Pieja asserted that there was not a relationship between the technology and products at issue in the previous representations, specifically the Ericsson Matters, due to the "rapid pace of change in the relevant industry."   (Id.)

On July 5, 2011, counsel for Samsung and Mr. Bridges and Mr. Pieja met and conferred regarding Samsung's concerns over the Attorneys' conflict of interest.   (Tarango Decl. at ¶7.) Even with the knowledge that Samsung had asserted patents with the same subject matter of its prior representation, including an identical patent in its Answer and Counterclaims, Mr. Bridges

maintained that the Attorneys' prior representation of Samsung was not substantially related to the current matter. (Id.) Mr. Bridges also claimed that the scope of Bridges & Mavrakakis' representation of Apple did not pertain to the '604 patent or any technology related to the Attorney's past representation of Samsung. (Id.)

Samsung also wrote to Apple's other counsel in these matters, Morrison & Foerster and Wilmer Hale, to request confirmation that they had not received Samsung confidential information from Bridges & Mavrakakis and to explain their working relationship with any attorneys from Bridges & Mavrakakis. (Tarango Exs. 2, 3.) Both Morrison & Foerster and Wilmer Hale denied having received Samsung confidential information, but refused to disclose their relationship and interaction with Bridges & Mavrakakis on privilege grounds. (Tarango Exs. 5, 6.) Samsung then requested that each attorney working on the current litigation against Apple sign an affidavit stating that he or she had not received Samsung confidential information from any attorney at Bridges & Mavrakakis. (Id.) Samsung additionally asked Apple's counsel to provide an affidavit signed by Apple confirming that it had not received confidential information from Bridges & Mavrakakis. (Id.) Both Morrison & Foerster and Wilmer Hale stated that they would check with Apple about providing such declarations and they would respond with their answer later. (Id.)

As of the filing of this motion, neither Morrison & Forester, Wilmer Hale, nor Apple have provided any indication that they are willing to provide such affidavits.

III.  **ARGUMENT**

As the *lawyers* who represented Samsung in connection with mobile device patents, including one of the same patents asserted in this action, and who acquired confidential information from Samsung that is material to this matter, the Attorneys violated the California Rules of Professional Conduct by accepting employment by Apple. Under California law, neither the Attorneys nor their firm colleagues can effectively be walled off from the confidential knowledge the Attorneys acquired. Therefore, the Attorneys and their firm must be disqualified from now litigating against Samsung in this matter.

### A. Lawyers Must Refrain From Any Representations that Imperil the Duty of Confidentiality to Former Clients.

Attorney-client confidentiality is a cornerstone of our legal system. Wutchumna Water Co. v. Bailey, 216 Cal. 564, 572-74 (1932). Protecting the confidentiality between attorney and client is a "hallmark" of California jurisprudence and furthers the public policy of "ensuring the right of every person to freely and fully confer and confide in one having knowledge of the law…" See People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal.4th 1135, 1146 (1999) (citation and quotation omitted). This confidentiality is so essential that it justifies shielding relevant information from discovery and survives termination of the attorney-client relationship. See Mitchell v. Sup. Ct., 37 Cal. 3d 591, 599 (1984) (while the exercise of the privilege may "occasionally result in the suppression of relevant evidence," these concerns are "outweighed by the importance of preserving confidentiality in the attorney-client relationship."); SpeeDee Oil Change, 20 Cal.4th. at 1147 ("[T]he concern for the client confidences, like the duty to preserve those confidences, continues after the attorney's services end.")

To be meaningful, client confidentiality prohibits an attorney from divulging confidences of a former client or using information acquired from a former client to that client's detriment. Wutchumna Water, 216 Cal. at 572-74. The California Rules of Professional Conduct codify this basic principle:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

California Rules of Professional Conduct R. 3-310(E). Similarly, California Business and Professions Code Section 6068(e)(1) codifies the duty of all attorneys "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." These Rules apply to attorneys practicing in this Court. See Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co., 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003).

An attorney's conflict of interest under Rule 3-310(E) is so serious that it is imputed to his current firm. See SpeeDee Oil Change, 20 Cal.4th 1135 at 1147. Thus, a firm that wishes to undertake representation adverse to an attorney's former client must obtain the former client's consent or face disqualification. Id. at 1146. If it does not, the Court has the power to disqualify the firm as part of the Court's inherent authority to safeguard "public trust in the scrupulous administration of justice and the integrity of the bar." In re Complex Asbestos Litigation, 232 Cal.App.3d 572, 586 (1991).

Whether a conflict of interest exists under Rule 3-310(E) depends on whether the prior representation and the current representation are "substantially related." If "the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel," the attorney's access to material confidential information is presumed. City and County of San Francisco v. Cobra Solutions Inc., 38 Cal.4th 839, 847 (2006). The Court must also presume that the attorney shared this confidential information with other lawyers at his firm and must disqualify the firm. SpeeDee Oil, 20 Cal.4th at 1153-1154.

B. **The Bridges & Mavrakakis Attorneys' Prior Representation of Samsung Precludes Them From Representing Apple in This Litigation.**

The Attorneys' prior representation of Samsung in patent litigation related to mobile technology is unquestionably substantially related to this litigation. Successive representations are "substantially related" where facts at issue in the first representation are relevant to claims or defenses in the second. See, e.g., Largo Concrete, Inc. v. Liberty Mutual Fire Insur. Co., No. 07-4651, 2008 WL 53128, *4 (N.D. Cal. Jan. 2, 2008). The "substantially related" inquiry looks beyond just "the discrete legal and factual issues in the compared representations" to consider all "information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues." Jessen v. Hartford Cas. Ins. Co., 111 Cal. App. 4th 698, 712 (5th Dist. 2003). If the evidence "supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the

former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues," the representations are "substantially related."   Id.

Whether the current litigation is "substantially related" to the Attorneys' prior representations of Samsung is not a close question.   Here, one of the patents asserted by Samsung against Apple, the '604 patent, is the *exact same patent* asserted by the Attorneys on behalf of Samsung in the Ericsson Matters.   This fact alone provides conclusive evidence that the two matters are substantially related.   See Amgen, Inc. v. Elanex Pharmaceuticals, Inc., 160 F.R.D. 134, 140 (W.D. Wash. 1994) ("Although the issues in the present litigation are different from the issues in the prior litigation, the subject matter of both--the '008 patent--is identical. Accordingly, the former representation is substantially related to the current representation."); Innovation Ventures, Inc. v. N2Distributing, Inc., 2009 WL 2381836, **1-2 (E.D. Mich. July 31, 2009) (disqualifying the law firm that helped prepare the patent application of the product at issue, even when the claim against the product was for trade dress infringement, not patent infringement);   Buckley v. Airshield Corp., 908 F. Supp. 299, 305 (D. Md. 1995) ("The fact that Airshield now challenges the validity of Dr. Buckley's '862 patent using the very information it received from parties it once sued to protect Dr. Buckley's patent strongly suggests that these matters are substantially related."); see also Cobra Solutions, 38 Cal.4th at 847 (recognizing that when the subjects of the prior representation make it likely that the attorney acquired confidential information that "is relevant and material to the present representation," the representations are substantially related).

Here, not only did the Attorneys indisputably represent Samsung in actions asserting this patent, but one of them, Mr. Levin, was one of the primary attorneys in charge of analyzing the '604 patent.   (Kim Ex. 1.)   His tasks included researching the file history, working with experts, working with Samsung employees, creating infringement charts, and proposing claim terms for construction.   (Id.)   Mr. Bridges also helped draft Samsung's ITC complaint, which included the '604 Patent.   (Id.)

1       In the current litigation against Apple, the '604 patent will be subject to the same pre-trial process as in the *Ericsson* matters: infringement charts will be made, claim terms proposed for construction, and expert testimony given. Mr. Levin has knowledge of Samsung's internal positions and arguments as to all of these issues due to his past representation. Allowing Bridges & Mavrakakis to represent Apple permits Mr. Levin to flip sides and use the confidential information he learned from Samsung to protect the validity of the '604 patent to instead try to invalidate the '604 patent on behalf of his current client.

      This patent conflict undermines the very foundations of Rule 3-310(E) of the California Rules of Professional Conduct and the fundamental obligation of confidentiality clients expect from their attorneys. As the California Supreme Court explained:

> The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to the ethical considerations that affect the fundamental principles of our judicial process.

SpeeDee Oil, 20 Cal.4th at 1145. Consistent with the "ethical considerations that affect the fundamental principles of our judicial process"—specifically, "the confidentiality of communications between attorney and client," id.,—attorneys who spent more time working with Samsung to analyze the validity, strength, and construction of the '604 patent than its current counsel cannot turn around and be adverse to Samsung concerning the very same subject matter. The Attorneys unquestionably had access to Samsung's closely-guarded decisions, strategy, and legal advice regarding the '604 patent. Indeed, they provided some of that advice.

      Beyond the identity of a patent at issue, the subject matter of the litigations—Samsung's mobile devices—substantially overlaps. In the *Ericsson* matters, the Attorneys were exposed to Samsung mobile phone products, technical specifications, and even Samsung source code. (Kim Decl. ¶¶ 8-9, Ex 1.) The Attorneys also had access to Samsung's internal decision-making and strategy process regarding its mobile device business. (Id.) Mr. Bridges was essential to many of these key litigation-strategy decisions, and all of the Attorneys interacted with Samsung employees on a regular basis in connection with developing and implementing Samsung's

1  litigation strategy.    Kim Decl. ¶¶ 5-9    Mr. Bridges' knowledge of key strategies also extends to
2  Samsung's FRAND positions, as they were at issue in the Ericsson Matters due to Samsung's
3  assertion of standards-based patents.    (Kim Decl. ¶ 7.)

4      Because of this substantial overlap, it is highly likely many of the same documents from
5  the *Ericsson* matters will be relevant in the litigation against Apple.    For example, Samsung is
6  asserting standards-based patents as part of its counter-claims, just as it asserted standards-based
7  patents in *Ericsson*, where Samsung's participation in standard-setting organizations was an issue.
8  (Tarango Ex. 11 at ¶¶ 95-102.)    It is likely that Apple, similar to Ericsson, will request documents
9  regarding Samsung's participation in these same standard-setting organizations—documents from
10 the same set collected and analyzed by the Attorneys in the *Ericsson* litigation.    It is also
11 probable that Apple will ask for other discovery regarding the '604 patent, thereby further
12 implicating confidential Samsung documents from the *Ericsson* matters which the Attorneys
13 reviewed and discussed without any overt concerns with respect to confidentiality and privilege
14 issues as Samsung's trusted counsel.    (Kim Decl. ¶¶ 8-10, Ex. 1.)    The fact that documents are
15 relevant to both representations further confirms that the two matters are substantially related.
16 See Genentech Inc., v. Sanofi-Aventis Deutschland GMGH, 2010 WL 1136478, *1 (N.D. Cal.
17 2010) ("The connection between. . . successive representations is underscored by the fact that
18 discovery sought by Sanofi would require Genentech to produce the same affidavit. . .submitted to
19 the USPTO during [the] earlier representation.").

20     Moreover, in the course of representing Samsung in connection with such similar factual
21 and legal issues, the Attorneys inevitably learned not only Samsung's confidential technical and
22 financial information but also highly sensitive litigation tactics and strategies.    Through their
23 thousands of hours spent representing Samsung in patent litigations, the Attorneys obtained
24 intimate knowledge regarding the way in which Samsung pursues and defends itself in patent
25 litigation.    See Knight v. Ferguson, 149 Cal. App, 4th 1207, 1215 (2d Dist. 2007) (disqualifying a
26 firm whose attorneys had acquired "knowledge about the former client's attitudes, practices,
27 business customs, litigation philosophy, strengths, weaknesses or strategy").    These prior
28

1 representations provided the Attorneys with direct insight into the inner workings of Samsung's IP
2 Legal Group, and the factors and circumstances that weigh most heavily in Samsung's decision
3 making concerning patent litigation.  (Kim Decl. ¶¶ 5-7.)  For example, the Attorneys'
4 knowledge of confidential strategic information regarding how Samsung assesses risk for patent
5 litigations, particularly how the relative strength or weakness of invalidity, noninfringement,
6 inequitable conduct, and damages defenses factor into its decisions, is clearly relevant to the
7 present action.  (Kim Decl. ¶¶ 4-7.)  Similarly, the Attorneys have worked with Samsung
8 executives and mobile-device engineers.  (Kim Decl. ¶¶ 4-9.)  In this action, they will likely
9 seek to depose and cross-examine the very individuals who once relied upon them as trusted
10 advisors.

11 Given the substantial relationship between this litigation and the *Ericsson* matters, the only
12 remedy to protect the information the Attorneys acquired through their confidential relationship
13 with Samsung is to disqualify them from representing Apple in this matter.

14 C. **The Attorneys' Conflict is Imputed to Bridges & Mavrakakis Because It Is**
15 **Presumed That They Shared Samsung's Confidential Information with Others**
16 **at the Firm.**

17 The Attorneys' conflict of interest under Rule 3-310(E) is imputed to Bridges &
18 Mavrakakis under the California presumption that "attorneys, working together and practicing law
19 in a professional association, share each other's, and their clients', confidential information."
20 SpeeDee Oil, 20 Cal.4th at 1153 1154; see also Rosenfeld Constr. Co. v. Super., 235 Cal. App. 3d
21 566, 573 (1991) ("It has long been recognized. . . that knowledge by any member of a law firm is
22 knowledge by all of the attorneys in the firm, partners as well as associates.").

23 Although the imputation rule is unequivocal in its application to any past representation
24 that is substantially related, the facts here particularly support application of the rule.  This is not
25 a situation in which one attorney in a firm of hundreds is seeking to sue a former client of a
26 colleague from a different geographical location who represented the client in a different
27 substantive legal area.  Nor is it a situation in which the attorney in question billed a minimal
28 number of hours or only engaged in low-level tasks.  See ViChip Corp. v. Lee, 2004 WL

1  2780170, at *3 (N.D. Cal. Dec. 3, 2004) (disqualifying law firm of transferring attorney who
2  billed 2.5 hours on behalf of former client in related case); <u>Largo Concrete v. Liberty Mutual Fire</u>
3  <u>Ins. Co.,</u> 2008 WL 53128, at *1-5 (N.D. Cal. May 15, 2007) (disqualifying an entire firm where a
4  transferring associate performed 9.8 hours of work over 6 days as essentially "a paralegal" in a
5  related matter, despite the associate's testimony that he did not review anything that would be of
6  use in the pending litigation and despite an ethical wall).   To the contrary, Mr. Bridges is one of
7  the founding partners at Bridges & Mavrakakis, and he, similar to at least half of his firm,
8  represented Samsung on substantially related matters.   (Kim Decl. ¶3, Ex. 1-3.)   Further, the
9  Attorneys were intimately involved in the strategy, document review, arguments, and overall
10 representation of Samsung, spending thousands of hours on the *Ericsson* matters alone.   (Kim
11 Decl. ¶¶ 9-10.)   Accordingly, the entire Bridges & Mavrakakis law firm should be disqualified.

12        D.   **Bridges & Mavrakakis Cannot Escape its Conflict By Limiting Its Scope of**
13             **Representation.**

14        Bridges & Mavrakakis' argument that it has narrowed the scope of its engagement by
15 promising to not work on patents or technology related to its prior representations fails both as a
16 matter of law and common sense.   California law does not recognize ethical walls as a measure to
17 counter a conflict of interest.   <u>See, e.g.,</u> <u>Largo Concrete,</u> 2008 WL 53128 at *1-5.   Yet Bridges
18 & Mavrakakis argues that the Attorneys who worked on Samsung matters can create a mental
19 ethical wall in their collective knowledge, thereby segregating Samsung's confidential
20 information.   Bridges & Mavrakakis implies that because other firms will handle any subject
21 matter that is substantially related to its prior representation of Samsung, this negates the conflict.
22 Courts around the country have rejected this argument.  <u>See</u> <u>United States v. Cheshire</u>, 707
23 F.Supp. 235, 240 (M.D. La. 1989) (holding that an attorney's "proposed solution–having a
24 separate lawyer cross examine [his former client]–does not eliminate the conflict.   At the very
25 least, in order to represent his present client [the attorney] must be completely free and unfettered
26 to analyse, characterize and repudiate the testimony of his former client in closing argument.");
27 <u>U.S. v. Edwards,</u> 39 F.Supp.2d 716, 744 45 (M.D. La. 1999) (same); <u>In re Lillian P.</u>, 238 Wis.2d
28 449, 465, 617 N.W.2d 849 (2000) ("[H]aving co counsel for Lillian does not negate our

conclusion that Cavey has an impermissible conflict of interest and therefore cannot represent Lillian.   [Co counsel's] presence does not resolve Cavey's conflict of interest, nor does it provide a substitute for Lillian's knowing and voluntary waiver.")

Bridges & Mavrakakis' suggestion that it can continue to effectively represent Apple, while knowing of Samsung's confidential information and sensitivities, is predicated upon a level of mental exactitude that the law does not recognize as viable.[4]   Even if Apple is prepared to accept the risk of Bridges & Mavrakakis erring against Apple's best interest in its representation, Samsung is entitled, as a matter of law, to be protected from the on-going risk of the Attorneys' breaching their obligations to keep their former client's confidences.

E.   **Bridges & Mavrakakis' Co-Counsel Should be Required to Submit Detailed Affidavits Regarding Receipt of Any Samsung Confidential Information, or, Alternatively, Be Disqualified.**

Samsung has tried to obtain sworn statements from Morrison & Foerster, Wilmer Hale, and Apple, regarding its receipt of confidential information from Bridges & Mavrakakis. (Tarango Decl. at ¶¶8-9.)   These statements are of the utmost importance because if Bridges & Mavrakakis is disqualified, as it clearly should be, this disqualification does little to protect Samsung's confidential information if it has already been shared with co-counsel and Apple itself. It is for this reason that all three parties, Morrison & Foerster, Wilmer Hale, and Apple, should be ordered to sign affidavits unequivocally stating that they have not received any confidential technical, financial, or other litigation strategy information from Bridges & Mavrakakis.[5]   Absent

---

[4]   California law requires disqualification even when the attorney does not remember any confidential information.   See, e.g., Rosenfeld Constr. Co. v. Super. Ct., 235 Cal. App. 3d 566, 576-78 (5th Dist. 1991) (finding abuse of discretion in denying motion to disqualify despite the fact that the attorney claimed not to remember the prior representation); Global Van Lines, Inc. v. Super. Ct., 144 Cal. App. 3d 483, 488-90 (4th Dist. 1983) (disqualifying an attorney despite the inability to remember receiving confidential information); I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC, No. C-03-1561, 2005 WL 757389, at *6-*8 (N.D. Cal. Apr. 4, 2005) (same).

[5]   Morrison & Foerster and Wilmer Hale have previously objected that they should not have to disclose the nature of their collaboration with Bridges & Mavrakakis without assurances that
    (footnote continued)

1  these assurances, Samsung is left with no other choice but to request that the Court disqualify both
2  Morrison & Foerster and Wilmer Hale, with the understanding that both firms have received
3  Samsung's confidential information from Bridges & Mavrakakis.  Given the reasonable
4  likelihood of Bridges & Mavrakakis inevitably funneling confidential information to co-counsel,
5  directly, or through Apple itself, permitting those parties to continue to represent Apple in this
6  case would undermine the fundamental protections afforded to client confidences.   While a harsh
7  remedy, absent sufficient assurances, Apple should not be allowed to immunize its receipt of
8  Samsung's most closely guarded confidential information.

## IV.  CONCLUSION

In light of the foregoing, Samsung respectfully requests that the Court grant its motion and issue an order disqualifying its prior firm of Bridges & Mavrakakis from any further representation of Apple in this litigation.   Samsung additionally requests that the Court either (1) order Morrison & Foerster, Wilmer Hale, and Apple to provide affidavits confirming they have not received any Samsung confidential information from attorneys at Bridges & Mavrakakis, or (2) disqualify Morrison & Foerster and Wilmer Hale if they refuse to provide such written assurances.

---

Samsung will not argue waiver of privilege.   A declaration regarding whether confidential information was shared does not, in itself, lead to a waiver of privilege and Samsung has not argued that it would.

| | |
|---|---|
| DATED: July 11, 2011 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By /s/ Victoria F. Maroulis |
| | Charles K. Verhoeven |
| | Kevin P.B. Johnson |
| | Victoria F. Maroulis |
| | Michael T. Zeller |
| | Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC |