1   HAROLD J. MCELHINNY (CA SBN 66781)
    hmcelhinny@mofo.com
2   MICHAEL A. JACOBS (CA SBN 111664)
    mjacobs@mofo.com
3   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone:  (415) 268-7000
6   Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

APPLE INC., a California corporation,

            Plaintiffs,

     vs.

SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity, SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation, and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

            Defendants.

Civil Action No. 11-CV-01846-LHK

**JURY TRIAL DEMANDED**

**COUNTERCLAIM DEFENDANT APPLE
INC.'S ANSWER, DEFENSES, AND
COUNTERCLAIMS IN REPLY TO
SAMSUNG'S COUNTERCLAIMS**

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1

1  SAMSUNG ELECTRONICS CO., LTD., a
   Korean business entity, SAMSUNG
2  ELECTRONICS AMERICA, INC., a New
   York corporation, and SAMSUNG
3  TELECOMMUNICATIONS AMERICA,
   LLC, a Delaware limited liability company, a
4  California corporation,
5
                Counterclaim-Plaintiff,
6
7        v.
8  APPLE INC., a California corporation,
9                Counterclaim-Defendants.
10
11              **INTRODUCTORY STATEMENT**
12
13       1.      This is Apple Inc.'s ("Apple") responsive pleading under Fed. R. Civ. P. 12, and
14  contains Apple's defenses to the counterclaims asserted by defendants and counterclaim-
15  plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung
16  Telecommunications America, LLC (collectively, "Samsung"), as well as Apple's Counterclaims
17  In Reply to Samsung's Counterclaims.
18       2.      Apple responds to the allegations contained in the numbered paragraphs of
19  Samsung's Counterclaims below, but first provides this overview of its response.
20
21       3.      Apple is a pioneer in mobile phone and tablet computer design and technology.
22  Apple has designed its mobile phones and tablet computers with distinctive features that make
23  them immediately recognizable as iPhones and iPads.  Apple has coupled these distinguishing
24  design details with a highly advanced interface that makes the iPhone and iPad user experience
25  simple, intuitive, and efficient.  Apple spends billions of dollars annually on research and
26
27
28

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

2

development, and has applied for and received numerous design and utility patents to protect its innovations from copying.

4.     Samsung has illicitly copied Apple's distinctive design features and innovative technologies instead of pursuing its own independent and costly product development.  Samsung has launched one product after another that imitate the look, feel, and function of Apple's products by misappropriating Apple's protected designs and technologies.

5.     Apple filed this case to stop Samsung's unauthorized copying of Apple's iPhone and iPad.

6.     With respect to Samsung's counterclaims of patent infringement, Apple denies that it infringes any valid claim of the patents identified in Counts I - XII of Samsung's Counterclaims ("Samsung Asserted Patents").  As set forth in detail below, Samsung has improperly used patents that it claims to be essential to the Universal Mobile Telecommunications Standard ("UMTS") in an attempt to disadvantage Apple.

7.     Samsung has abusively asserted patents in this action that it claims are standards-essential to further its strategy of copying Apple products.  Apple has repeatedly demanded that Samsung put a halt to its persistent pattern of copying.  In retaliation, and to deflect from its own copying and to pressure Apple to allow Samsung to continue to imitate, Samsung asserted counterclaims alleging that Apple infringes Samsung patents that are purportedly essential to the UMTS standard.

8.     At various times, Samsung declared seven of the Samsung Asserted Patents to the European Telecommunications Standards Institute ("ETSI"), a leading Standards Setting Organization ("SSO"), as purportedly essential to practice the UMTS standard ("Declared-Essential Patents").  Time and again, however, Samsung deliberately and deceptively failed to

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

disclose its purported intellectual property rights ("IPR") to ETSI before its members decided to incorporate into the standard technologies purportedly covered by Samsung's patents, in violation of the ETSI's IPR policy.  Furthermore, Samsung committed to license its Declared-Essential Patents on fair, reasonable, and non-discriminatory ("FRAND") terms.  In breach of those commitments, Samsung now seeks to enjoin Apple from selling its end products because those products contain UMTS chipsets – which Apples purchases from third parties – that are allegedly covered by Samsung's Declared-Essential Patents.  To the extent the Samsung Declared-Essential Patents are determined to be essential to any ETSI standard and, to the extent any of the alleged inventions described in and allegedly covered by the Declared-Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers, Apple is licensed to practice them on FRAND terms, or in the alternative is irrevocably entitled to a license to those patents on FRAND terms.

## APPLE'S ANSWER TO SAMSUNG'S COUNTERCLAIMS

Apple hereby responds to each numbered paragraph of the Counterclaims as follows:

1.      Apple admits that Samsung's Counterclaims purport to seek declarations and judgments for alleged patent infringement.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 1 of the Counterclaims.

2.      Apple admits that Samsung purports to seek declarations of noninfringement and invalidity for each of the Apple patents in suit and certain trademarks and trade dress in suit.  Apple admits that Samsung purports to seek cancellation of the trade dress and trademark registrations in suit and a declaration of nonviolations under the California Business and Professions Code, the common law of trademarks and unfair competition, and the law of unjust

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1    enrichment.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph

2    2 of the Counterclaims.

3                            **NATURE OF THE ACTION**[1]

4        3.       Apple admits that Samsung's Counterclaims purport to be an action for patent

5    infringement.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph

6

7    3 of the Counterclaims.

8        4.       Paragraph 4 of the Counterclaims contains no allegation to which a response is

9    required.

10                              **THE PARTIES**

11       5.       Apple lacks knowledge or information sufficient to form a belief as to the truth of

12

13   the allegations in Paragraph 5 of the Counterclaims.

14       6.       Apple lacks knowledge or information sufficient to form a belief as to the truth of

15   the allegations in Paragraph 6 of the Counterclaims.

16       7.       Apple lacks knowledge or information sufficient to form a belief as to the truth of

17

18   the allegations in Paragraph 7 of the Counterclaims.

19       8.       Apple admits the allegations in Paragraph 8 of the Counterclaims.

20                         **JURISDICTIONAL STATEMENT**

21       9.       Apple admits that Samsung's Counterclaims purport to be actions for patent

22   infringement under the patent laws of the United States, and actions for declaratory relief under

23   the Declaratory Judgment Act, the patent laws of the United States, the Lanham Act, California

24   Business and Professions Code, the common law of trademarks and unfair competition, and the

25

26

27   ------------------------------

28   [1] For convenience and clarity, Apple's Answer uses the same headings as set forth in Samsung's Counterclaims.  In so doing, Apple does not admit any of the allegations contained in Samsung's headings.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

5

law of unjust enrichment.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 9 of the Counterclaims.

10.     Apple admits the allegations in Paragraph 10 of the Counterclaims.

11.     Apple admits that this Court has personal jurisdiction over Apple for this action.

12.     Apple admits, for purposes of this action only, that venue is proper in this District.

13.     Apple admits the allegations in Paragraph 13 of the Counterclaims.

14.     Apple admits the allegations in Paragraph 14 of the Counterclaims.

15.     Apple admits the allegations in Paragraph 15 of the Counterclaims.

16.     Apple admits the allegations in Paragraph 16 of the Counterclaims.

17.     Apple admits the allegations in Paragraph 17 of the Counterclaims.

18.     Apple admits the allegations in Paragraph 18 of the Counterclaims.

**FACTUAL BACKGROUND**

19.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Counterclaims, and therefore denies the same.

20.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Counterclaims, and therefore denies the same.

21.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Counterclaims, and therefore denies the same.

22.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Counterclaims, and therefore denies the same.

23.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Counterclaims, and therefore denies the same.

24.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Counterclaims, and therefore denies the same.

25.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Counterclaims, and therefore denies the same.

26.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Counterclaims, and therefore denies the same.

27.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Counterclaims, and therefore denies the same.

28.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Counterclaims, and therefore denies the same.

29.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Counterclaims, and therefore denies the same.

30.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Counterclaims, and therefore denies the same.

**SAMSUNG'S INTELLECTUAL PROPERTY RIGHTS**

31.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Counterclaims, and therefore denies the same.

32.     Apple admits the allegations in the first three sentences in Paragraph 32.  Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32 of the Counterclaims, and therefore denies the same.

33.     Apple admits the allegations in the first three sentences in Paragraph 33.  Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33 of the Counterclaims, and therefore denies the same.

34.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the Counterclaims, and therefore denies the same.

35.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Counterclaims, and therefore denies the same.

36.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Counterclaims, and therefore denies the same.

37.     Apple admits that the increase in usage of mobile device networks has increased demand for capacity and throughput, particularly in data-demanding applications such as video. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 37 of the Counterclaims, and therefore denies the same.

38.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Counterclaims, and therefore denies the same.

39.     Apple admits that Samsung's U.S. Patent Nos. 7,069,055, 7,079,871, 7,456,893, 7,577,460, and 7,698,711 purport to relate to generating and displaying time, viewing and transmitting images, playing music, and dividing of window displays on mobile devices.

40.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Counterclaims, and therefore denies the same.

41.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Counterclaims, and therefore denies the same.

42.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Counterclaims, and therefore denies the same.

43.     Apple admits the allegations in the first sentence in Paragraph 43 of the Counterclaims.  Apple lacks knowledge or information sufficient to form a belief as to the truth

of the remaining allegations in Paragraph 43 of the Counterclaims, and therefore denies the same.

44.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Counterclaims, and therefore denies the same.

45.     Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Counterclaims, and therefore denies the same.

46.     Apple denies the allegations in Paragraph 46 of the Counterclaims.

47.     Apple admits that the '604 Patent is entitled "Turbo Encoding/Decoding Device and Method for Processing Frame Data According to QOS"; that the '604 Patent indicates that it was issued by the United States Patent and Trademark Office ("USPTO") on August 9, 2005; and that an uncertified copy of the '604 Patent is attached to the Complaint as Exhibit 1.  Apple lacks knowledge or information sufficient to form a belief as to whether Samsung is the current owner of all rights, title, and interest in the '604 Patent, and whether Exhibit 1 is a true and correct copy.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 47 of the Counterclaims.

48.     Apple admits that the '410 Patent is entitled "Apparatus and Method for Controlling a Demultiplexer and a Multiplexer Used for Rate Matching in a Mobile Communication System"; that the '410 Patent indicates that it was issued by the USPTO on May 23, 2006; and that an uncertified copy of the '410 Patent is attached to the Complaint as Exhibit 2.  Apple lacks knowledge or information sufficient to form a belief as to whether Samsung is the current owner of all rights, title, and interest in the '410 Patent, and whether Exhibit 2 is a true and correct copy.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 48 of the Counterclaims.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

49.     Apple admits that the '055 Patent is entitled "Mobile Telephone Capable of Displaying World Time and Method for Controlling the Same"; that the '055 Patent indicates that it was issued by the USPTO on June 27, 2006; and that an uncertified copy of the '055 Patent is attached to the Complaint as Exhibit 3.  Apple lacks knowledge or information sufficient to form a belief as to whether Samsung is the current owner of all rights, title, and interest in the '055 Patent, and whether Exhibit 3 is a true and correct copy.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 49 of the Counterclaims.

50.     Apple admits that the '871 Patent is entitled "Portable Telephone and Method of Displaying Data Thereof"; that the '871 Patent indicates that it was issued by the USPTO on July 18, 2006; and that an uncertified copy of the '871 Patent is attached to the Complaint as Exhibit 4.  Apple lacks knowledge or information sufficient to form a belief as to whether Samsung is the current owner of all rights, title, and interest in the '871 Patent, and whether Exhibit 4 is a true and correct copy.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 50 of the Counterclaims.

51.     Apple admits that the '792 Patent is entitled "Interleaving Apparatus and Method for Symbol Mapping in an HSDPA Mobile Communication System"; that the '792 Patent indicates that it was issued by the USPTO on April 3, 2007; and that an uncertified copy of the '792 Patent is attached to the Complaint as Exhibit 5.  Apple lacks knowledge or information sufficient to form a belief as to whether Samsung is the current owner of all rights, title, and interest in the '792 Patent, and whether Exhibit 5 is a true and correct copy.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 51 of the Counterclaims.

52.     Apple admits that the '867 Patent is entitled "Apparatus and Method for Generating Scrambling Code in UMTS Mobile Communication System"; that the '867 Patent

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1    indicates that it was issued by the USPTO on April 22, 2008; and that an uncertified copy of the

2    '867 Patent is attached to the Complaint as Exhibit 6.  Apple lacks knowledge or information

3    sufficient to form a belief as to whether Samsung is the current owner of all rights, title, and

4    interest in the '867 Patent, and whether Exhibit 6 is a true and correct copy.  Except as expressly

5    admitted, Apple denies the remaining allegations in Paragraph 52 of the Counterclaims.

6

7            53.     Apple admits that the '001 Patent is entitled "Apparatus and Method for Channel

8    Coding and Multiplexing in CDMA Communication System"; that the '001 Patent indicates that

9    it was issued by the USPTO on June 10, 2008; and that an uncertified copy of the '001 Patent is

10   attached to the Complaint as Exhibit 7.  Apple lacks knowledge or information sufficient to form

11   a belief as to whether Samsung is the current owner of all rights, title, and interest in the '001

12   Patent, and whether Exhibit 7 is a true and correct copy.  Except as expressly admitted, Apple

13   denies the remaining allegations in Paragraph 53 of the Counterclaims.

14

15           54.     Apple admits that the '516 Patent is entitled "Method and Apparatus for Data

16   Transmission in a Mobile Telecommunication System Supporting Enhanced Uplink Service";

17   that the '516 Patent indicates that it was issued by the USPTO on November 4, 2008; and that an

18   uncertified copy of the '516 Patent is attached to the Complaint as Exhibit 8.  Apple lacks

19   knowledge or information sufficient to form a belief as to whether Samsung is the current owner

20   of all rights, title, and interest in the '516 Patent, and whether Exhibit 8 is a true and correct

21   copy.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 54 of

22   the Counterclaims.

23

24           55.     Apple admits that the '893 Patent is entitled "Method of Controlling Digital

25   Image Processing Apparatus for Efficient Reproduction and Digital Image Processing Apparatus

26   Using the Method"; that the '893 Patent indicates that it was issued by the USPTO on November

27

28

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

25, 2008; and that an uncertified copy of the '893 Patent is attached to the Complaint as Exhibit 9.  Apple lacks knowledge or information sufficient to form a belief as to whether Samsung is the current owner of all rights, title, and interest in the '893 Patent, and whether Exhibit 9 is a true and correct copy.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 55 of the Counterclaims.

56.     Apple admits that the '460 Patent is entitled "Portable Composite Communication Terminal for Transmitting/Receiving and Images, and Operation Method and Communication System Thereof"; that the '460 Patent indicates that it was issued by the USPTO on August 18, 2009; and that an uncertified copy of the '460 Patent is attached to the Complaint as Exhibit 10.  Apple lacks knowledge or information sufficient to form a belief as to whether Samsung is the current owner of all rights, title, and interest in the '460 Patent, and whether Exhibit 10 is a true and correct copy.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 56 of the Counterclaims.

57.     Apple admits that the '941 Patent is entitled "Method and Apparatus for Transmitting/Receiving Packet Data Using Pre-Defined Length Indicator in a Mobile Communication System"; that the '941 Patent indicates that it was issued by the USPTO on March 9, 2010; and that an uncertified copy of the '941 Patent is attached to the Complaint as Exhibit 11.  Apple lacks knowledge or information sufficient to form a belief as to whether Samsung is the current owner of all rights, title, and interest in the '941 Patent, and whether Exhibit 11 is a true and correct copy.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 57 of the Counterclaims.

58.     Apple admits that the '711 Patent is entitled "Multi-Tasking Apparatus and Method in Portable Terminal"; that the '711 Patent indicates that it was issued by the USPTO on

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1   April 13, 2010; and that an uncertified copy of the '711 Patent is attached to the Complaint as

2   Exhibit 12.  Apple lacks knowledge or information sufficient to form a belief as to whether

3   Samsung is the current owner of all rights, title, and interest in the '711 Patent, and whether

4   Exhibit 12 is a true and correct copy.  Except as expressly admitted, Apple denies the remaining

5   allegations in Paragraph 58 of the Counterclaims.

6

7                       **APPLE'S ALLEGED CLAIMS AGAINST SAMSUNG**

8           59.     Apple admits the allegations in Paragraph 59 of the Counterclaims.

9           60.     Apple admits the allegations in Paragraph 60 of the Counterclaims.

10          61.     Apple admits that it owns the trade dress embodied in Apple's iPhone, iPhone 3G,

11  iPhone 3GS, iPhone 4, iPod Touch, iPad, and iPad 2 products.  Except as expressly admitted,

12  Apple denies the remaining allegations in Paragraph 61 of the Counterclaims.

13

14          62.     Apple admits the allegations in Paragraph 62 of the Counterclaims.

15          63.     Apple admits the allegations in Paragraph 63 of the Counterclaims.

16          64.     Apple admits the allegations in Paragraph 64 of the Counterclaims.

17          65.     Apple admits the allegations in Paragraph 65 of the Counterclaims.

18          66.     Apple admits the allegations in Paragraph 66 of the Counterclaims.

19          67.     Apple admits the allegations in Paragraph 67 of the Counterclaims.

20

21                              **FIRST CLAIM FOR RELIEF**

22                          **(Infringement of the '604 Patent)**

23          68.     Apple admits that the Samsung Counterclaimants restate and incorporate by

24  reference each of the allegations in Paragraphs 1 through 67 of the Counterclaims as though fully

25  set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 67 above,

26  as if set forth fully herein.

27

28

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

69.     Apple denies the allegations in Paragraph 69 of the Counterclaims.

70.     Apple denies the allegations in Paragraph 70 of the Counterclaims.

71.     Apple denies the allegations in Paragraph 71 of the Counterclaims.

**SECOND CLAIM FOR RELIEF**

**(Infringement of the '410 Patent)**

72.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 71 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 71 above, as if set forth fully herein.

73.     Apple denies the allegations in Paragraph 73 of the Counterclaims.

74.     Apple denies the allegations in Paragraph 74 of the Counterclaims.

75.     Apple denies the allegations in Paragraph 75 of the Counterclaims.

**THIRD CLAIM FOR RELIEF**

**(Infringement of the '055 Patent)**

76.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 75 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 75 above, as if set forth fully herein.

77.     Apple denies the allegations in Paragraph 77 of the Counterclaims.

78.     Apple denies the allegations in Paragraph 78 of the Counterclaims.

79.     Apple denies the allegations in Paragraph 79 of the Counterclaims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOURTH CLAIM FOR RELIEF**

**(Infringement of the '871 Patent)**

80.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 79 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 79 above, as if set forth fully herein.

81.     Apple denies the allegations in Paragraph 81 of the Counterclaims.

82.     Apple denies the allegations in Paragraph 82 of the Counterclaims.

83.     Apple denies the allegations in Paragraph 83 of the Counterclaims.

**FIFTH CLAIM FOR RELIEF**

**(Infringement of the '792 Patent)**

84.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 83 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 83 above, as if set forth fully herein.

85.     Apple denies the allegations in Paragraph 85 of the Counterclaims.

86.     Apple denies the allegations in Paragraph 86 of the Counterclaims.

87.     Apple denies the allegations in Paragraph 87 of the Counterclaims.

**SIXTH CLAIM FOR RELIEF**

**(Infringement of the '867 Patent)**

88.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 87 of the Counterclaims as though fully

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 87 above, as if set forth fully herein.

89.     Apple denies the allegations in Paragraph 89 of the Counterclaims.

90.     Apple denies the allegations in Paragraph 90 of the Counterclaims.

91.     Apple denies the allegations in Paragraph 91 of the Counterclaims.

## SEVENTH CLAIM FOR RELIEF

### (Infringement of the '001 Patent)

92.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 91 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 91 above, as if set forth fully herein.

93.     Apple denies the allegations in Paragraph 93 of the Counterclaims.

94.     Apple denies the allegations in Paragraph 94 of the Counterclaims.

95.     Apple denies the allegations in Paragraph 95 of the Counterclaims.

## EIGHTH CLAIM FOR RELIEF

### (Infringement of the '516 Patent)

96.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 95 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 95 above, as if set forth fully herein.

97.     Apple denies the allegations in Paragraph 97 of the Counterclaims.

98.     Apple denies the allegations in Paragraph 98 of the Counterclaims.

99.     Apple denies the allegations in Paragraph 99 of the Counterclaims.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NINTH CLAIM FOR RELIEF**

**(Infringement of the '893 Patent)**

100.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 99 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 99 above, as if set forth fully herein.

101.     Apple denies the allegations in Paragraph 101 of the Counterclaims.

102.     Apple denies the allegations in Paragraph 102 of the Counterclaims.

103.     Apple denies the allegations in Paragraph 103 of the Counterclaims.

**TENTH CLAIM FOR RELIEF**

**(Infringement of the '460 Patent)**

104.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 103 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 103 above, as if set forth fully herein.

105.     Apple denies the allegations in Paragraph 105 of the Counterclaims.

106.     Apple denies the allegations in Paragraph 106 of the Counterclaims.

107.     Apple denies the allegations in Paragraph 107 of the Counterclaims.

**ELEVENTH CLAIM FOR RELIEF**

**(Infringement of the '941 Patent)**

108.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 107 of the Counterclaims as though

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 107 above, as if set forth fully herein.

109.    Apple denies the allegations in Paragraph 109 of the Counterclaims.

110.    Apple denies the allegations in Paragraph 110 of the Counterclaims.

111.    Apple denies the allegations in Paragraph 111 of the Counterclaims.

**TWELFTH CLAIM FOR RELIEF**

**(Infringement of the '711 Patent)**

112.    Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 111 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 111 above, as if set forth fully herein.

113.    Apple denies the allegations in Paragraph 113 of the Counterclaims.

114.    Apple denies the allegations in Paragraph 114 of the Counterclaims.

115.    Apple denies the allegations in Paragraph 115 of the Counterclaims.

**THIRTEENTH CLAIM FOR RELIEF**

**(Declaration of Non-infringement of the '828, '002, '381, '915, '891, '607, '163, '129, 'D790, 'D334, 'D305, 'D087, 'D677, 'D270, and 'D889 Patents)**

116.    Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 115 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 115 above, as if set forth fully herein.

117.    Apple admits the allegations in Paragraph 117 of the Counterclaims.

118.    Apple admits that it has alleged that certain Samsung products infringe the '828, '002, '381, '915, '891, '607, '163, '129, 'D790, 'D334, 'D305, 'D087, 'D677, 'D270, and 'D889

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

18

Patents.  Apple further admits that the Samsung Counterclaimants have denied that their activities infringe the '828, '002, '381, '915, '891, '607, '163, '129, 'D790, 'D334, 'D305, 'D087, 'D677, 'D270, and 'D889 Patents and that the Samsung Counterclaimants' denial creates an actual controversy between the parties.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 118 of the Counterclaims.

119.    Apple denies the allegations in Paragraph 119 of the Counterclaims.

## FOURTEENTH CLAIM FOR RELIEF

**(Declaration of Invalidity of the '828, '002, '381, '915, '891, '607, '163, '129, 'D790, 'D334, 'D305, 'D087, 'D677, 'D270, and 'D889 Patents)**

120.    Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 119 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 119 above, as if set forth fully herein.

121.    Apple admits that it has alleged that certain Samsung products infringe the '828, '002, '381, '915, '891, '607, '163, '129, 'D790, 'D334, 'D305, 'D087, 'D677, 'D270, and 'D889 Patents and that these patents are entitled to a presumption of validity.  Apple further admits that the Samsung Counterclaimants have denied the validity of the '828, '002, '381, '915, '891, '607, '163, '129, 'D790, 'D334, 'D305, 'D087, 'D677, 'D270, and 'D889 Patents and that the Samsung Counterclaimants' denial creates an actual controversy between the parties.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 121 of the Counterclaims.

122.    Apple denies the allegations in Paragraph 122 of the Counterclaims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIFTEENTH CLAIM FOR RELIEF**

**(Declaration of No Federal False Designation of Origin Under 15 U.S.C. § 1125(a))**

123.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 122 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 122 above, as if set forth fully herein.

124.     Apple admits that it has alleged that certain Samsung products infringe the Apple iPhone Trade Dress, Apple iPhone 3G Trade Dress, Apple iPhone 4 Trade Dress, Apple iPad Trade Dress, and Apple iPad 2 Trade Dress.  Apple further admits that the Samsung Counterclaimants have denied that their activities infringe the Apple iPhone Trade Dress, Apple iPhone 3G Trade Dress, Apple iPhone 4 Trade Dress, Apple iPad Trade Dress, and Apple iPad 2 Trade Dress and that the Samsung Counterclaimants' denial creates an actual controversy between the parties.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 124 of the Counterclaims.

125.     Apple denies the allegations in Paragraph 125 of the Counterclaims.

126.     Apple denies the allegations in Paragraph 126 of the Counterclaims.

127.     Apple denies the allegations in Paragraph 127 of the Counterclaims.

128.     Apple denies the allegations in Paragraph 128 of the Counterclaims.

**SIXTEENTH CLAIM FOR RELIEF**

**(Declaration of Noninfringement of Trademark or Trade Dress)**

129.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 128 of the Counterclaims as though

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 128 above, as if set forth fully herein.

130.     Apple admits that it has alleged that certain Samsung products infringe U.S. Registration Nos. 3,470,983, 3,457,218, and 3,475,327.  Apple further admits that SEC and STA have denied that their activities infringe U.S. Registration Nos. 3,470,983, 3,457,218, and 3,475,327 and that SEC and STA's denial creates an actual controversy between the parties. Except as expressly admitted, Apple denies the remaining allegations in Paragraph 130 of the Counterclaims.

131.     Apple admits that it has alleged that certain Samsung products infringe U.S. Registration Nos. 3,886,196, 3,889,642, 3,886,200, 3,889,685, 3,886,169, 3,886,197, and 2,935,038.  Apple further admits that the Samsung Counterclaimants have denied that their activities infringe U.S. Registration Nos. 3,886,196, 3,889,642, 3,886,200, 3,889,685, 3,886,169, 3,886,197, and 2,935,038 and that the Samsung Counterclaimants' denial creates an actual controversy between the parties.  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 131 of the Counterclaims.

132.     Apple denies the allegations in Paragraph 132 of the Counterclaims.

133.     Apple denies the allegations in Paragraph 133 of the Counterclaims.

134.     Apple denies the allegations in Paragraph 134 of the Counterclaims.

135.     Apple denies the allegations in Paragraph 135 of the Counterclaims.

### SEVENTEENTH CLAIM FOR RELIEF

### (Declaration of Non-Dilution)

136.     Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 135 of the Counterclaims as though

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

21

fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 135 above, as if set forth fully herein.

137.    Apple admits that it has alleged that the Samsung Counterclaimants' manufacture and distribution of certain products is likely to cause dilution by blurring of the famous Apple iPhone Trade Dress, Apple iPhone 3G Trade Dress, Apple iPhone 4 Trade Dress, Apple iPad Trade Dress, and Apple iPad 2 Trade Dress and that such actions constitute dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  Except as expressly admitted, Apple denies the remaining allegations in Paragraph 137 of the Counterclaims.

138.    Apple denies the allegations in Paragraph 138 of the Counterclaims.

139.    Apple denies the allegations in Paragraph 139 of the Counterclaims.

140.    Apple denies the allegations in Paragraph 140 of the Counterclaims.

141.    Apple denies the allegations in Paragraph 141 of the Counterclaims.

142.    Apple denies the allegations in Paragraph 142 of the Counterclaims.

### EIGHTEENTH CLAIM FOR RELIEF

**(Declaration of Invalidity of the '983, '218, '327, '196, '642, '200, '685, '169, '197, and '038 Registrations and the '463, '838, '829, '869, and '118 Applications)**

143.    Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 142 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 142 above, as if set forth fully herein.

144.    Apple admits that it has alleged that certain Samsung products infringe U.S. Registration Nos. 3,470,983, 3,457,218, 3,475,327, 3,886,196, 3,889,642, 3,886,200, 3,889,685, 3,886,169, 3,886,197, and 2,935,038.  Apple further admits that the Samsung Counterclaimants have denied the validity of U.S. Registration Nos. 3,470,983, 3,457,218, 3,475,327, 3,886,196,

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

3,889,642, 3,886,200, 3,889,685, 3,886,169, 3,886,197, and 2,935,038 and that the Samsung

Counterclaimants' denial creates an actual controversy between the parties.  Except as expressly

admitted, Apple denies the remaining allegations in Paragraph 144 of the Counterclaims.

145.    Apple denies the allegations in Paragraph 145 of the Counterclaims.

146.    Apple denies the allegations in Paragraph 146 of the Counterclaims.

**NINETEENTH CLAIM FOR RELIEF**

**(Cancellation of the '983, '218, '327, '196, '642, '200, '685, '169, '197, and '038
Registrations) (15 U.S.C. §§ 1119 and 1064)**

147.    Apple admits that the Samsung Counterclaimants restate and incorporate by

reference each of the allegations in Paragraphs 1 through 146 of the Counterclaims as though

fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 146

above, as if set forth fully herein.

148.    Apple admits that it has alleged that certain Samsung products infringe U.S.

Registration Nos. 3,470,983, 3,457,218, 3,475,327, 3,886,196, 3,889,642, 3,886,200, 3,889,685,

3,886,169, 3,886,197, and 2,935,038.  Apple further admits that the Samsung Counterclaimants

have denied the validity of U.S. Registration Nos. 3,470,983, 3,457,218, 3,475,327, 3,886,196,

3,889,642, 3,886,200, 3,889,685, 3,886,169, 3,886,197, and 2,935,038 and that the Samsung

Counterclaimants' denial creates an actual controversy between the parties.  Except as expressly

admitted, Apple denies the remaining allegations in Paragraph 148 of the Counterclaims.

149.    Apple denies the allegations in Paragraph 149 of the Counterclaims.

150.    Apple denies the allegations in Paragraph 150 of the Counterclaims.

**TWENTIETH CLAIM FOR RELIEF**

**(Declaration of Nonviolation of California Business and Professions Code §17200, *et seq.*)**

151.    Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 150 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 150 above, as if set forth fully herein.

152.    Apple admits the allegations in Paragraph 152 of the Counterclaims.

153.    Apple admits the allegations in Paragraph 153 of the Counterclaims.

154.    Apple denies the allegations in Paragraph 154 of the Counterclaims.

155.    Apple denies the allegations in Paragraph 155 of the Counterclaims.

156.    Apple denies the allegations in Paragraph 156 of the Counterclaims.

**TWENTY-FIRST CLAIM FOR RELIEF**

**(Declaration of Nonviolation of the Law of Unjust Enrichment)**

157.    Apple admits that the Samsung Counterclaimants restate and incorporate by reference each of the allegations in Paragraphs 1 through 156 of the Counterclaims as though fully set forth herein.  Apple repeats and re-alleges all the responses in Paragraphs 1 through 157 above, as if set forth fully herein.

158.    Apple admits the allegations in Paragraph 158 of the Counterclaims.

159.    Apple denies the allegations in Paragraph 159 of the Counterclaims.

160.    Apple denies the allegations in Paragraph 160 of the Counterclaims.

161.    Apple denies the allegations in Paragraph 161 of the Counterclaims.

162.    Apple denies the allegations in Paragraph 162 of the Counterclaims.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

Apple denies that the Samsung Counterclaimants are entitled to any relief sought by the

Samsung Counterclaimants in their Prayer for Relief.

**<u>APPLE'S DEFENSES TO SAMSUNG'S COUNTERCLAIMS</u>**

Apple asserts the following defenses to Samsung's Counterclaims:

**FIRST DEFENSE**
**(Non-Infringement)**

Samsung is not entitled to any relief against Apple because Apple has not directly or

indirectly infringed any valid claim of the Samsung Asserted Patents.

**SECOND DEFENSE**
**(Invalidity)**

One or more of the claims of the Samsung Asserted Patents are invalid for failing to meet

one or more of the requisite statutory and decisional requirements and/or conditions for

patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102,

103, and 112.

**THIRD DEFENSE**
**(Limitation of Damages)**

Samsung's right to seek damages is limited, including without limitation by 35 U.S.C. §§

286 and 287.

**FOURTH DEFENSE**
**(License)**

To the extent that the Declared-Essential Patents are essential to any ETSI standard and

to the extent any of the alleged inventions described in and allegedly covered by the Declared-

Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its

customers, Apple is licensed to the Declared-Essential Patents pursuant to Samsung's

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

commitments to license its Declared-Essential Patents on FRAND terms; or, in the alternative, Apple has the irrevocable right to be licensed on FRAND terms under those patents.  In addition, to the extent that Apple is licensed, expressly, impliedly, or by operation of law, by virtue of any agreement between Samsung and an Apple supplier, Apple is licensed.

### FIFTH DEFENSE
### (Unenforceability)

One or more of the Samsung Asserted Patents are unenforceable against Apple because of estoppel, laches, waiver, unclean hands, patent exhaustion, implied license, and/or other equitable doctrines; Samsung has engaged in standards-setting misconduct, including without limitation Samsung's breach of its commitments to license the Declared-Essential Patents on FRAND terms and Samsung's breach of its patent disclosure requirements or based on other circumstances.

### SIXTH DEFENSE
### (No Injunctive Relief)

To the extent that Samsung seeks injunctive relief for alleged infringement, the relief it seeks is unavailable because seeking injunctive relief is contrary to its commitment to SSOs to license the Declared-Essential Patents on FRAND terms and Apple's resulting license or, in the alternative, irrevocable right to obtain a license by virtue of Samsung's FRAND commitments; the alleged injury to Samsung is not immediate or irreparable; and Samsung has an adequate remedy at law for any alleged injury.

### APPLE INC.'S COUNTERCLAIMS IN REPLY

Plaintiff Apple, on personal knowledge as to its own acts, and on information and belief as to all others based on its own and its attorneys' investigation, alleges Counterclaims In Reply

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1   against Samsung Electronics Co., Ltd., Samsung Telecommunications America, LLC, and

2   Samsung Electronics America, Inc. (collectively, "Samsung") as follows:

3                                    **NATURE OF THE ACTION**

4          1.      Having failed to compete successfully with Apple's products (including its iPhone

5   and iPad) by innovating and designing products that customers desire, Samsung has instead

6   launched product after product that unlawfully misappropriate the distinctive designs and

7   patented features that are hallmarks of Apple's success.  These Counterclaims In Reply arise

8   from Samsung's illegal and abusive assertions of its Declared-Essential Patents relating to the

9   widely-adopted UMTS telecommunications standard in retaliation for Apple seeking to stop

10  Samsung from imitating Apple's iPhone and iPad.

11         2.      Samsung's persistent attempt to compete with Apple by imitation rather than

12  through its own innovation is manifest in its illegal efforts to coerce Apple into allowing

13  Samsung to copy its iPhone and iPad with impunity.  After Apple informally sought and

14  eventually sued to halt Samsung's ongoing pattern of imitation and infringement regarding the

15  iPhone and iPad, Samsung retaliated by bringing litigation and then counterclaims seeking to

16  enjoin Apple from selling products that comply with the UMTS telecommunications standard.

17  Samsung has done so notwithstanding that Apple is licensed or, in the alternative, has the

18  irrevocable right to a FRAND license to Samsung's Declared-Essential Patents by virtue of

19  Samsung's commitment to license those patents on FRAND terms.  At bottom, Samsung is

20  attempting to coerce Apple into tolerating Samsung's infringement of its intellectual property

21  and copying of the innovative features that distinguish Apple products by abusively asserting

22  Declared-Essential Patents, in breach of its FRAND commitments.  Apple brings these

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

Counterclaims In Reply to halt that abuse and protect consumers, the wireless telecommunications industry, and Apple from further injury.

3.      With respect to Apple's Counterclaims In Reply 1 through 24, Apple seeks declaratory judgment of non-infringement and invalidity to resolve the legal and factual questions raised by Samsung's accusation of infringement of the Samsung Asserted Patents and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated.  Samsung's allegations of infringement concern UMTS-compliant chipsets that Apple buys from large manufacturers and then incorporates in its end consumer products (including the iPhone and iPad) to provide cellular communication capability.

4.      With respect to Apple's Counterclaims In Reply 25 through 32, Apple seeks to remedy Samsung's breaches of its FRAND commitments, interference with business relations, unlawful monopolization, illegal restraints of trade, violation of the California Cartwright Act, and violation of the California Unfair Competition law.  Samsung abused standards-setting processes that are crucial to bringing pro-competitive benefits to innovators, telecommunications equipment and network suppliers, and end consumers alike by (i) deliberately and deceptively failing to disclose purportedly essential IPR during the standards setting process and (ii) making false commitments to SSOs and designers and sellers of products implementing the UMTS standard to license its Declared-Essential Patents on FRAND terms.  Samsung then exploited the unlawfully-obtained monopoly positions that UMTS conferred on its claimed standards-essential technologies and breached its contractual FRAND commitments by suing and then counterclaiming against Apple notwithstanding that, to the extent any of Samsung's alleged inventions described in and allegedly covered by the Declared-Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers, Apple is licensed or, in

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

the alternative, has the irrevocable right to a FRAND license to Samsung's Declared-Essential

Patents.  Samsung sued and then counterclaimed against Apple without even offering a FRAND

license rate.  Samsung's refusal to meet its FRAND obligations, motivated by Samsung's desire

to infringe with impunity the designs and the non-essential patents on the functions that have

differentiated Apple's products and made them so successful in the marketplace, is unfair,

unreasonable, and discriminatory and violates Samsung's FRAND commitment.  Apple seeks to

bring this misconduct to an end and thereby prevent further harm to the wireless

telecommunications industry, consumers, and Apple.

**PARTIES**

5.      Apple is a corporation organized under the laws of the State of California, and its

principal place of business is in Cupertino, California.

6.      Apple designs and markets a broad range of innovative products including

portable digital music players (the iPod), mobile communications devices (the iPhone), and

tablet computers (the iPad).  Apple entities are and have been members of ETSI.

7.      According to Samsung's Answer and Counterclaims, Samsung Electronics Co.,

Ltd. (referred to individually herein as "SEC") is a corporation organized and existing under the

laws of the country of Korea having its corporate headquarters at 416 Maetan-3dong,

Yeongtong-gu, Suwon-City, Cyeonggi-do, Korea 443-742.  Samsung Telecommunications

America, LLC (referred to individually herein as "STA") is a corporation organized and existing

under the laws of the state of Delaware having its corporate headquarters at 1301 East Lookout

Drive, Richardson, Texas 75082.

8.      Samsung Electronics America, Inc. (referred to individually herein as "SEA") is a

New York corporation with its principal place of business at 105 Challenger Road, Ridgefield

1   Park, New Jersey 07660.  On information and belief, SEA was formed in 1977 as a subsidiary of

2   SEC and markets, sells, or offers for sale a variety of consumer electronics, including mobile

3   communication devices and tablet computers.  On information and belief, SEA also manages the

4   North American operations of STA, Samsung Electronics Canada, and Samsung Electronics

5

6   Mexico.

7          9.     Samsung claims to own many patents that it asserts have been incorporated into

8   various standards for wireless technologies, including the following Declared-Essential Patents:

9   '604 Patent, '410 Patent, '792 Patent, '867 Patent, '001 Patent, '516 Patent, and '941 Patent.

10   **JURISDICTION AND VENUE**

11

12         10.    The Court has jurisdiction over this counterclaim pursuant to the Federal Patent

13   Act, 28 U.S.C. §§ 1338(a), 2201, and 2202, and pursuant to Section 4 of the Sherman Act, 15

14   U.S.C. § 4, and 28 U.S.C. §§ 1331, 1337.

15         11.    The Court also has supplemental jurisdiction over the state law claims asserted in

16   this counterclaim under 28 U.S.C. § 1367 because the state and federal claims arise from a

17   common nucleus of operative facts.

18

19         12.    Samsung has subjected itself to personal jurisdiction by counterclaiming against

20   Apple in this District, and, in any event, Samsung is subject to personal jurisdiction because it

21   places wireless communication devices in the stream of commerce knowing that such products

22   will be sold in the state of California.

23         13.    Venue is proper in this District under 28 U.S.C. § 1391 and § 1400(b).  SEC,

24   SEA, and STA transact business within this District and offer for sale in this District products

25   that infringe Apple's patents.  In addition, SEC, SEA and STA have counterclaimed against

26

27

28

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1    Apple in this District.  Moreover, a substantial part of the events giving rise to the claim occurred

2    in this District.

3                                                    **BACKGROUND**

4              **1.  Apple's Attempts to Stop Samsung's Copying of Apple's Products**

5            14.      In late summer 2010, Apple and Samsung began discussions related to Samsung's

6    copying and infringement of Apple's intellectual property relating to its highly successful iPhone

7    and iPad products.  Specifically, the parties discussed Samsung's infringement of Apple's

8    designs and of certain Apple patents that are not essential to practice any standard.  During these

9    discussions, Samsung for the first time claimed that Apple was required to make royalty

10   payments for implementation of Samsung's Declared-Essential Patents in Apple's products that

11   comply with the UMTS wireless telecommunications standard.

12          15.      After the parties were unable to resolve their dispute over Samsung's persistent

13   copying of Apple's protected designs and functionality, Apple sued Samsung in this Court,

14   bringing claims that include patent, trade dress, and trademark infringement.

15          16.      In retaliation for Apple's assertion of its intellectual property rights, Samsung

16   brought a lawsuit (which it has since dismissed) and then counterclaimed against Apple for

17   infringement of the Declared-Essential Patents notwithstanding that, to the extent any of

18   Samsung's alleged inventions described in and allegedly covered by the Declared-Essential

19   Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers, Apple

20   is licensed or, in the alternative, has the right to a FRAND license to practice Samsung's

21   Declared-Essential Patents.  Samsung sued and then counterclaimed against Apple

22   notwithstanding that Samsung has failed even to offer Apple FRAND license terms.

17.     Moreover, Samsung's efforts to coerce Apple into tolerating its copying have not been limited to the counterclaims here.  Samsung has launched an aggressive, worldwide campaign to enjoin Apple from practicing its Declared-Essential Patents.  Samsung has sued Apple for infringement and injunctions in no fewer than seven countries outside the United States.

18.     Through these counterclaims and its other retaliatory actions, Samsung is abusively using its Declared-Essential Patents as a lever to try to force Apple into allowing Samsung to infringe Apple's trade dress, trademarks, and non-essential patents, in violation of the FRAND commitments Samsung made to SSOs.

**2. Standards Setting Organizations in the Wireless Communications Industry**

19.     Mobile wireless carriers offer the consumer access to their "networks" to enable the consumer to, among other things, place and receive calls and access e-mail, the Internet and a variety of services.  The handsets sold by Apple and Samsung include a computer chipset that enables the handset to communicate with the carriers' networks.  Most handset designers -- including Apple and Samsung -- purchase those chipsets from third-party manufacturers.

20.     To facilitate interoperability among the cellular networks and various cellular mobile devices, carriers, handset manufacturers, and chipset manufacturers, among others, participate in the development of industry technical standards that establish precise specifications for the essential components of the technology.  Once these standards are established, competing manufacturers and competing carriers can offer their own products and services that are compliant with the standards.

21.     Technical standards play a critical role in the development of wireless data and telecommunications technologies.  In general, technical standards -- such as those for mobile

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

wireless technology -- have the potential to encourage innovation and promote competition among telecommunications equipment suppliers and network providers in the wireless telecommunications industry.  The technical specifications for most standards are published and broadly available.  Product designers and manufacturers are thus more willing to invest heavily in the development of handsets or component parts because, so long as their products are compliant with the published technical standard, those products will operate effectively within the carrier networks and be compatible with other products from third parties.

22.     Standards development also reduces costs for both suppliers and purchasers.  For suppliers, standardization reduces the need in many instances to develop products to a particular purchaser's specifications.  Accordingly, because a single product or product line may be sold to multiple purchasers and distributed more widely, manufacturing volumes increase, and per unit costs decrease.  Purchasers benefit from increased price competition among suppliers.  Because many suppliers make standards-compliant products, switching suppliers typically does not require a substantial redesign of one's products or a substantial technical transfer to enable the new supplier to produce compatible products.  The lower "switching cost" intensifies competition among suppliers, leading to lower prices.

23.     On the other hand, technical standardization also creates a "lock-in" effect and the risk of "patent hold-up."  Although standards are the products of coordination and compromise among competitors, certain aspects of standards may be -- and often are -- claimed by patents. Before standardization, the royalty a patentee can earn from a patent license for its technology is constrained in part by the availability of alternative technical approaches to perform that function.  If a standard requires a designer to employ that patented technology, however, those other technological approaches are no longer available substitutes and no longer constrain the

1    patentee's ability to demand royalties far in excess of what is warranted by the intrinsic value of

2    the technology.  As Samsung has explained in other litigation: "The payoff for owners of patents

3    that are incorporated into the standard is substantial because the entire industry will need a

4    license to the patents essential to the standard . . . ."  First Amended Complaint at 5, *Samsung*

5    *Elec. Co. v. InterDigital Commc'ns Corp.*, No. 07-0167 (D. Del. Sept. 14, 2007).

6

7         24.    This phenomenon is compounded because designers, such as Apple, invest great

8    resources developing innovative, new products that also comply with the technical standard.

9    Even if there were an alternative standard, the costs and disruption associated with switching is

10   typically prohibitively expensive.  The designer that implements a standard thus becomes

11   "locked-in."  Left unconstrained, owners of patents that purportedly cover certain features within

12   the standard can take advantage of lock-in and demand exorbitant royalties and other terms from

13   the designers, knowing that it would be less costly for the designer to pay the excessive royalty

14   or capitulate to unreasonable terms rather than incur the cost of switching or face a risk of

15   injunction.  This dynamic is often called "patent hold-up."

16

17        25.    As Samsung has recognized, "the whole point of a standard setting body is to

18   create a standard that everyone can follow without fear of lawsuits that are going to stop the

19   standard."  Hearing Transcript at 87, Certain 3G Wideband Code Division Multiple Access

20   (WCDMA) Mobile Handsets and Components Thereof, Inv. No. 337-TA-601 (ITC July 8,

21   2008).  Accordingly, most SSOs have adopted IPR policies to address the problem of patent

22   hold-up.  These policies set forth requirements concerning, among other things: (a) disclosure of

23   IPR that may claim any portion of the specifications of the standard in development; and (b)

24   whether and to what extent parties holding purported essential IPR must commit to licensing

25   these IPR on FRAND terms and conditions.

26

27

28

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

26.     Timely disclosure of purportedly essential IPR is critical to ensuring that those participating in standards development can evaluate technical proposals with knowledge of the potential licensing costs that designers may incur when developing standards-compliant products.

27.     Additionally, as set forth in greater detail below, the IPR policies at issue here require participants claiming to own essential IPR to commit to license those IPR on FRAND terms to any implementer of the standard.  Those commitments grant implementers the right to practice claimed essential patents and preclude parties making FRAND commitments from seeking to enjoin parties from practicing the relevant standard.  Participants in standards development rely on these contractual undertakings to ensure that the widespread adoption of the standard will not be hindered by IPR holders seeking to extract unreasonable royalties and terms from those implementing the standard.

28.     Samsung itself has acknowledged, in other litigation, the crucial role that FRAND commitments play in ensuring that standards setting does not become a mechanism for abusive practices and in protecting industry participants against exploitation by patentees that gain monopolies through the standards-setting process.  First:

> Without certain rules . . . [SSOs] would be illegal trusts because
> [SSOs] are a forum in which competitors . . . determine which
> products they will and will not make. . . . To prevent patent owners
> from imposing monopolistic royalties and to mitigate the threat of
> a single patent owner holding up the industry, [SSOs] condition the
> standardization of proprietary technology upon the patent owner's
> promise to make the technology available to the public royalty-free
> or on [FRAND] terms.

First Amended Complaint at 5, *Samsung Elec. Co. v. InterDigital Commc'ns Corp.*, No. 07-0167 (D. Del. Sept. 14, 2007).  Second:

> [I]n exchange for having its technology included in the standard,
> for having the [SSO] promote the standards worldwide, and for

> having the industry directed to use its patented technology, each
> [SSO] member trades away the right to refuse to license its
> intellectual property to anyone willing to pay FRAND terms.  In
> short, the promise of FRAND licenses is the quid pro quo of the
> bargain struck between the [SSO] and the intellectual property
> owner.

*Id.* at 6.

29.     Breaching FRAND commitments, as Samsung has done here, undermines the safeguards that SSOs put in place to guard against abuse.  By seeking to unfairly exploit a patent's actual or purported incorporation into a standard, the patentee violates the very commitment that led to incorporation of that technology in the first place.

### 3.  The Evolution of Mobile Wireless Telecommunications Standards

30.     Mass marketing of cell phones began in the 1980s with phones that operated on analog networks.  The two principal disadvantages of analog signals -- compared to the digital signals on which later generations of cell phone networking were based -- are that analog transmissions have "noise," creating signal loss and distortion, and analog networks are ill-equipped to handle high volumes of voice traffic or data transmissions.

31.     The second generation of mobile wireless technology, commonly referred to as "2G," began the transition to digital technology.  The rollout of 2G networks -- which used available bandwidth for voice traffic more efficiently than did analog and provided support for the data transmission necessary for paging and text messaging -- coincided with the proliferation of consumer mobile wireless sales.

32.     2G networks and advanced 2G networks, sometimes referred to as 2.5G networks, also began supporting more data-intensive applications, such as email, web browsing, and sending and receiving pictures by phone.  The third generation ("3G") technologies were developed to support even more data-intensive operations commonly associated with

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1    smartphones like the iPhone, such as multimedia, more sophisticated web browsing, music and

2    video downloading, and global positioning systems.

3            33.      Nearly all mobile wireless carriers now support 2G technology, and in the United

4    States 3G networks.  As this is happening, fourth generation ("4G"), known as Long Term

5    Evolution (LTE) for Global System for Mobile Communications ("GSM")-based networks, has

6    been standardized and some carriers are beginning to introduce those networks.

7

8            34.      The most widely implemented digital telecommunications standards worldwide

9    are based on the GSM technology, a 2G standard.  Development of GSM began in Europe with

10   the formation of the Groupe Special Mobile within the European Conference of Postal and

11   Telecommunications Administrations ("CEPT").

12

13           35.      In 1988, at the urging of the European Commission, European national posts and

14   telecommunications ministries formed the European Telecommunications Standards Institute

15   ("ETSI").  ETSI, a non-profit SSO, is headquartered in France.  In 1989, development of GSM

16   was transferred to the auspices of ETSI, where standardization of GSM was completed.

17

18           36.      Subsequent generations of the GSM standard have featured technical

19   enhancements that permit greater data rates and increased voice capacity.  Many GSM carriers

20   have adopted a technology known as GSM Packet Radio Service ("GPRS"), 2.5G technology.

21   In addition, a technology known as Enhanced Data Rates for GSM Evolution ("EDGE") is

22   employed by most carriers as an add-on to the GPRS to achieve higher data rates.

23           37.      The third generation of the GSM family of standards is the UMTS, which

24   employs wide-band CDMA ("WCDMA") technology.  The UMTS standard was designed to

25   efficiently support significantly increased speeds and capacity over limited spectrum bandwidth,

26   thereby enabling new and enhanced services and applications such as mobile e-commerce,

27

28

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

37

broadcast television, position location, and mobile multimedia web browsing, including music

and video downloads.

38.     UMTS has been standardized by the 3rd Generation Partnership Project

("3GPP").  3GPP is a collaboration of six SSOs from around the world, including ETSI, the

Telecommunications Technology Association ("TTA"), the Association of Radio Industries and

Businesses ("ARIB"), the Alliance for Telecommunications Industry Solutions ("ATIS"), the

China Communications Standards Association ("CCSA"), and the Telecommunication

Technology Committee ("TTC").  3GPP promotes global convergence in the design of mobile

phone systems based on GSM by producing globally-applicable specifications for those systems

that SSOs can incorporate into their standards.  Its initial mission was to develop a 3G system

specification, but having met that goal it now develops successor specifications, including LTE.

39.     Cellular technology has continued to develop.  Driven by demand for an

increasing number of wireless applications and improved quality of existing applications, carriers

wish to offer newer technologies that provide ever-increasing bandwidth supporting more

advanced applications such as video and multimedia applications.

## SAMSUNG'S DELIBERATE NON-DISCLOSURE OF AND FALSE COMMITMENTS CONCERNING ITS PURPORTED ESSENTIAL INTELLECTUAL PROPERTY

40.     Because SSOs -- including 3GPP and its organizational partners -- purportedly

incorporated Samsung's patented technology into the UMTS standard, unless constrained,

Samsung has the ability to demand and potentially extract exorbitant royalties and unreasonable

terms for patents it asserts are essential to those standards.  To encourage its technologies to be

incorporated into the standard and to avoid the SSO's consideration of the cost of standardizing

purportedly patented technology, Samsung deliberately and deceptively failed to disclose during

1    the standards-setting process IPR that it now claims to be essential to UMTS.  In fact, in some

2    cases, a named inventor on the application for the concealed patent or other Samsung personnel

3    participated in the relevant working group, championed Samsung's technical proposal, and

4    affirmatively steered the SSO to standardize technology that Samsung now claims to be covered

5    by its patents.  Samsung disclosed certain of its IPR only *after* the relevant standard or standard

6    specification was finalized.

7           41.     For standards developed under the 3GPP umbrella, participants, such as Samsung,

8    were required to follow the IPR Policy of the organizations in which it held membership.  Third

9    Generation Partnership Project (3GPP) Partnership Project Description 2 - 4 (December 1998), at

10   46.  As a member of ETSI, therefore, Samsung was bound to follow the ETSI IPR Policy in

11   connection with all of its relevant activities.

12          42.     Samsung deceptively concealed certain of its IPR during the standards-setting

13   process to maximize its chances of having the technology incorporated into the standard.

14          43.     Had Samsung timely disclosed the relevant IPR, ETSI either would have selected

15   viable alternative technologies to perform or excluded from the relevant standard the functions

16   that Samsung claims are covered by its patents.

17          44.     Samsung's abuse of the standards-setting process went far beyond untimely

18   disclosure of its IPR.  Samsung's representations that it would license its purported standards-

19   essential patents on FRAND terms were false; Samsung explicitly promised not to exploit the

20   "hold-up" power it now abusively seeks to wield.

21          45.     Had Samsung revealed that it would not offer FRAND license terms to those

22   implementing the standard and that it would take the position that parties implementing the

23   standard were not entitled to practice its Declared-Essential Patents, SSO members would have

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

either removed Samsung's purported IPR from the relevant standard in favor of other viable

alternative technologies capable of performing functions incorporated in the standard, or

declined to incorporate the feature into the standard.  *See* ETSI IPR Policy Clause 8.1.1, 8.1.2.

46.     Samsung has violated its FRAND commitments by (i) counterclaiming against

Apple for infringement and seeking to enjoin Apple from selling its standards-compliant

products, notwithstanding that, to the extent any of the alleged inventions described in and

allegedly covered by the Declared-Essential Patents are used, manufactured, or sold by or for

Apple, its suppliers, and/or its customers, Apple is licensed to any valid patents covering those

alleged inventions or, in the alternative, has the right to a FRAND license to Samsung's

Declared-Essential Patents and failing even to offer FRAND license terms; and (ii)

discriminating against and acting unfairly and unreasonably towards Apple in its licensing

practices because Samsung wishes to infringe Apple's trade dress, trademarks, and non

standards-essential patents with impunity.

47.     To facilitate its standard setting activity, ETSI promulgated an IPR policy, set

forth in Annex 6 of its Rules of Procedure.

48.     Clause 4 of the policy requires, among other things, that members timely disclose

to the organization any IPR they own that may be essential to standards that have been developed

or are being developed.  Participants in ETSI standard development understand that this

provision requires disclosure of all IPR that they believe might be essential to standards under

consideration.  Clause 4 requires in particular that a participant submitting a technical

specification to ETSI, as Samsung did, make ETSI aware of any IPR that might be essential if

that proposal is adopted.  Clause 4.1 states:

> [E]ach MEMBER shall use its reasonable endeavors, in particular
> during the development of a STANDARD or TECHNICAL

1
2
3
4

           SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion.  In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

5
6

Under ETSI's IPR policies, the term "IPR" is defined to include patent applications as well as issued patents:

7
8

           "IPR" shall mean any intellectual property right conferred by statute law including applications therefore other than trademarks.

9
10

     49.     Clause 6 of ETSI's IPR policy governs the availability of licenses to essential IPR.  In relevant part, Clause 6.1 states:

11
12
13
14
15

           When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory [FRAND] terms and conditions under such IPR to at least the following extent:

16
17

           • MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;

18
19

           • sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;

20

           • repair, use, or operate EQUIPMENT; and

21

           • use METHODS.

22
23

           The above undertaking may be made subject to the condition that those who seek licenses agree to reciprocate.

24
25
26
27

     50.     If an owner of an essential IPR refuses to undertake a FRAND commitment with respect to that IPR, then, as provided in Section 8 of the ETSI IPR Policy, ETSI may suspend work on relevant parts of the standard or redesign the standard to render the IPR non-essential.

28

COUNTERCLAIM DEFENDANT APPLE INC.'S ANSWER, DEFENSES AND COUNTERCLAIMS IN REPLY TO SAMSUNG'S COUNTERCLAIMS Case No. 11-cv-01846 (LHK)

41

51.     ETSI's IPR Policy was designed to benefit all ETSI members, as well as all other parties that implement an ETSI standard.  In particular, the stated objective of the policy, described in Clause 3.1, is to "reduce the risk" to those implementing the standards or other technical specifications "that investment in the preparation, adoption and application of the STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable."  The IPR Policy specifies that it "shall be governed by the laws of France."  Clause 12.

52.     During all times relevant to these allegations, Samsung has been a member of ETSI.  Samsung actively participated in ETSI's development of the UMTS standard.  As a result of its membership and participation in ETSI, Samsung was and is bound by the ETSI Rules of Procedure, including the ETSI IPR Policy.  As was required by the ETSI IPR policy, Samsung submitted declarations to ETSI promising to license its Declared-Essential Patents on FRAND terms.

53.     Samsung has represented to Apple, and has alleged in its Counterclaims here, that it owns several patents that are essential to the UMTS standard.

**1. Samsung's Deliberate Non-Disclosure of IPR During the Standards-Setting Process**

54.     Samsung deliberately failed to disclose the existence of its claimed IPR during the standards-setting process even though, in some cases, Samsung personnel (including named inventors on applications for the concealed patents) participated in the relevant working groups and aggressively advocated adoption of the relevant technology into the standard.  Samsung's non-disclosure of IPR is part of its pattern of abusing the standards-setting process.  For example:

(a) Samsung asserts that the '516 patent, which purports to claim a "method and apparatus for data transmission in a mobile

telecommunication system supporting enhanced uplink service," is essential to specification 25.214 of UMTS, yet Samsung concealed the existence of its IPR during the standards-setting process.  In particular, the claimed priority date for the '516 patent, based on the filing of a related Korean patent application, is June 9, 2004.  In May 2005, one of the inventors of the '516 patent made a presentation to a 3GPP working group in connection with a change request that included the technology on which Samsung was pursuing a patent.  That technology was included in the version of the standard adopted in June 2005.  Samsung, however, did not disclose to ETSI the existence of its purported IPR until a year later, in May 2006.

(b) Samsung asserts that the '941 patent, which purports to claim a "method and apparatus for transmitting/receiving packet data using pre-defined length indicator in a mobile communication system," is essential to the UMTS standard, yet Samsung concealed the existence of its IPR during the standards-setting process.  In particular, the claimed priority date for the '941 patent, based on the filing of a related Korean patent application, is May 4, 2005.  That same month Samsung authored a change request that included the technology on which Samsung was pursuing a patent and presented it to a 3GPP working group.  That technology was included in the version of the standard adopted in September 2006.  Samsung, however, did not disclose to ETSI its purported IPR until August 2007.

(c) Samsung asserts that the '001 patent, which purports to claim a "Apparatus and Method for Channel Coding and Multiplexing in CDMA Communication System," is essential to specification 25.212 of UMTS, yet Samsung concealed the existence of its IPR during the standards-setting process.  In particular, the claimed priority date for the '001 patent, based on the filing of the U.S. patent application, is June 25, 1999.  A few weeks later, in July 1999, two of the named inventors attended a meeting at which a Samsung proposal was made to a 3GPP working group in connection with a change request that included the technology on which Samsung was pursuing a patent.  That technology was included in the version of the standard adopted in October 1999.  Samsung, however, did not disclose to ETSI its purported IPR until September 19, 2003.

55.     Had Samsung properly disclosed the existence of its IPR, the relevant SSO would have selected a viable alternative technology or would have decided not to incorporate that proposal into the standard.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

43

## 2.  Samsung's False FRAND Commitments

56.     Samsung has submitted declarations to ETSI committing to irrevocably license the Declared-Essential Patents on FRAND terms pursuant to Clause 6.1 of ETSI's IPR policy. That FRAND commitment constitutes a promise that all interested parties will be licensed to claimed standards-essential patents on FRAND terms, foreclosing the patentee from claiming infringement of its patents or seeking to obtain an injunction to prohibit an implementer from practicing the standard.

57.     Samsung's FRAND declarations were intended to and did induce the relevant SSO to include in the UMTS standard technology that Samsung claims is covered by Samsung's patents.  Samsung's FRAND declarations falsely represented that Samsung would license its claimed essential patents on FRAND terms.  None of Samsung's FRAND declarations covering any of the Samsung Asserted Patents disclosed that Samsung would take the position that parties practicing the relevant standard were not licensed or entitled to a FRAND license to its claimed essential patents, refuse to offer FRAND license terms to certain parties, or attempt to prevent parties from practicing the relevant standard.

58.     On information and belief, Samsung has declared essential many patents that are in fact not essential to practicing the UMTS standard.

59.     Once the relevant SSO's participants selected technologies that Samsung claims are covered by its patents, they effectively lost the option to instead include or use alternative technologies capable of performing those functions, thereby excluding such technologies from the relevant Input Technologies Markets (defined below), or of omitting the selected technologies from the standard altogether.  Accordingly, to the extent that Samsung's Declared Essential Patents are essential to any standard, it was Samsung's untimely disclosure of its IPR

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

44

1  and/or its false FRAND declarations -- not the inherent attributes of its purportedly essential

2  technologies or the uncorrupted operation of the standards-setting process -- that conferred

3  monopoly power on Samsung with respect to the technologies that perform the functions

4  included in the standard.

5         60.     Samsung's FRAND declarations are binding contractual commitments made to

6  ETSI, its members and designers and sellers of products implementing ETSI standards

7  (including Apple), for the benefit of ETSI, its members, and any entity that implements UMTS

8  (or any other ETSI standard for which Samsung declared essential IPR and undertook a FRAND

9  commitment).  Samsung therefore, in accordance with Clause 6.1 of ETSI's IPR policy, bound

10  itself to license on FRAND terms to Apple, a seller of products that implement the UMTS

11  standard and a member of ETSI.  Indeed, Samsung has admitted as much in other litigation

12  where it has acknowledged that its membership in ETSI created an "actual or implied contract to

13  comply with ETSI's governing documents, including, but not limited to, ETSI's Intellectual

14  Property Rights Policy."  First Amended Complaint at 9, *Samsung Elec. Co. v. InterDigital

15  Commc'ns Corp.*, No. 07-0167 (D. Del. Sept. 14, 2007).  Samsung has also admitted that by

16  making a FRAND declaration to ETSI, the declarant "expressly promised the wireless telecom

17  SDOs . . . all members [of those SDOs] and any potential licensee of technology allegedly

18  essential for compliance with the respective 3G wireless telecommunications standard, that [the

19  declarant] would be prepared to grant irrevocable licenses to its 3G IPR on FRAND terms."  *Id.*

20  at 22-23.

21         61.     Apple, other members of ETSI, and other companies implementing the UMTS

22  standard have reasonably relied on Samsung's FRAND commitments to: (a) grant licenses to

23  those patents and patent applications that Samsung claims are essential on fair, reasonable, and

non-discriminatory terms; and (b) not to seek to impose unfair, unreasonable, or discriminatory conditions on licensing, such as cross-licenses of patents covering proprietary technology that is not essential to any standard.  In particular, Apple and others have relied on Samsung's commitments that preclude Samsung from seeking to enjoin them from practicing the UMTS standard (given that they are licensed as a resulting of Samsung's FRAND commitments), and that require Samsung to provide fair, reasonable and non-discriminatory royalties and other license terms that would permit efficient competitors such as Apple profitably to offer standards-compliant products in competition with Samsung and other owners of purportedly essential patents.

62.    As Samsung has admitted in other litigation, "[c]onsistent with the purposes of standardization," an ETSI member "knew or reasonably should have expected" that its promise to license on FRAND terms "would induce potential licensees . . . to take or refrain from taking certain actions."  First Amended Complaint at 23, *Samsung Elec. Co. v. InterDigital Commc'ns Corp.*, No. 07-0167 (D.Del. Sept. 14, 2007).  Apple has invested substantial resources in developing and marketing its iPhone and iPad products in reliance on Samsung's FRAND commitments.  Samsung reasonably should have expected that Apple would do so.

**SAMSUNG'S BREACH OF ITS FRAND OBLIGATIONS REGARDING ITS PURPORTED ESSENTIAL PATENTS**

63.    Samsung has breached its FRAND obligation regarding its Declared-Essential Patents.

**1.  Qualcomm-Samsung License Agreement**

64.    Apple purchases from Qualcomm, Inc. ("Qualcomm"), a non-party to this action, chipsets for use in Apple 3G handsets.

65.     Samsung entered into one or more license agreements with Qualcomm, in which Samsung granted a license to Qualcomm to IPR that is essential or that Samsung claims is essential to practicing the UMTS standard and other widely-adopted telecommunications standards.[2]  By letter dated April 21, 2011, Samsung informed Apple that Samsung was immediately exercising its purported right to exclude Qualcomm's sales of chipsets to Apple from the coverage of covenants in the license agreement(s) that provide that Samsung will not assert its claimed essential IPR against Qualcomm's chipset customers.  Samsung said that it was doing so because Apple had sued Samsung on several *non-essential* patents in this litigation.

66.     At bottom, Samsung is seeking to terminate Apple's right to practice Samsung's Declared Essential Patents through chipsets that it purchases from Qualcomm solely because Apple owns *non-essential* patents that Samsung wishes to infringe with impunity and Apple has not permitted it to do so.  Samsung's actions constitute yet another instance of Apple seeking to leverage its claimed essential patents to coerce Apple into tolerating Samsung's copying of its distinctive product designs and functions.  By treating Apple differently than other Qualcomm customers because Apple holds non-essential patents that Samsung wishes to infringe with impunity, Samsung is engaging in unfair, unreasonable, and discriminatory conduct that constitutes a clear violation of its FRAND commitments.

### 2.  Samsung's Refusal to Abide By Its FRAND Commitments for its Declared-Essential Patents

67.     Apple introduced its innovative and highly successful iPhone in early 2007.  From that time forward, Apple has had a continuing substantial business relationship with Samsung. But it was not until late Summer 2010, that Samsung claimed for the first time that Apple was infringing any of its Declared Essential Patents by selling the iPhone.

---

[2] As alleged in Paragraph 74 below, Samsung has repeatedly refused to provide Apple any information about the Qualcomm-Samsung License Agreement.

68.     Samsung's assertion arose in the course of discussions between Apple and Samsung related to Samsung's continuing pattern of copying and infringement of certain Apple patents that are not essential to practice any standard, including patents that cover the distinctive designs and proprietary features that have been the hallmarks of Apple's highly successful products (including the iPhone and iPad).

69.     After the parties were unable to resolve their dispute over Samsung's copying of Apple's products, Apple sued Samsung for infringing Apple's trade dress, trademarks, and non-essential patents.

70.     In retaliation, Samsung first sued and then counterclaimed against Apple seeking to enjoin Apple from selling products compliant with the UMTS standard.  It did so notwithstanding that, as a matter of law, to the extent any of the alleged inventions described in and allegedly covered by the Declared-Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers, Apple is licensed or, in the alternative, has the right to a FRAND license to the Declared-Essential Patents by virtue of Samsung's FRAND commitments and Apple's acceptance thereof.

71.     Since Samsung sued Apple,[3] Apple has asked Samsung to quote FRAND license terms no fewer than six times.  It has also repeatedly asked Samsung to provide basic information necessary for Apple to determine whether any rate that Samsung quotes is in fact fair, reasonable, and non-discriminatory, including (a) the royalty basis to which Samsung contends the FRAND royalty rate would apply (e.g., the full price of the end-user product or only the component of the end-user product that allegedly practices the Declared-Essential Patents), (b) confirmation that other companies are also paying any royalty rate that Samsung

_____

[3] Samsung initially sued Apple alleging infringement of a number of patents, including the Declared-Essential Patents, in a separate action which it has since withdrawn.

would seek from Apple, and (c) copies or summaries of license agreements with manufacturers of UMTS-compliant chipsets.

72.     After months of repeated Apple requests for a FRAND offer, Samsung has recently claimed that it is willing to quote Apple FRAND license terms, but it has not yet done so or given any indication what those terms will be.  In particular, in breach of its FRAND commitments, Samsung has yet to provide license terms for its Declared-Essential Patents, standing alone, and has taken the position in prior talks with Apple that discussions over FRAND license terms need to be tied to a broader licensing deal that would include a cross-license to Apple *non standards-essential* patents – including patents covering the distinctive design and functions of the iPhone and iPad.

73.     Although Apple believes that Samsung has entered into license agreements covering the Declared-Essential Patents with other implementers of the UMTS standard, at the time of this filing, Samsung has refused to identify the terms and conditions of those licenses.  Indeed, while now claiming that it will quote FRAND license terms, Samsung has expressly reconfirmed that it will refuse to provide this information.

74.     Samsung has also refused to provide copies, summaries, or any other information regarding license agreements between Samsung and manufacturers of UMTS chipsets, and recently reconfirmed that it will not supply such information.  This information is particularly critical given that Apple buys from third-party manufacturers the UMTS-compliant chipsets that Apple incorporates into its finished consumer products, the consumer products that Samsung claims practice its Declared-Essential Patents.  Insofar as Samsung has licensed third-party manufacturers, those licenses may, among other things, (i) include covenants under which Samsung agrees not to assert its Declared-Essential Patents against Apple or other customers of

the chipset manufacturer or (ii) render Samsung's Declared-Essential Patents unenforceable against Apple or other customers by virtue of the doctrines of patent exhaustion or implied license.

75.     Samsung asserts these counterclaims against Apple for infringement of the Declared-Essential Patents to retaliate for and provide settlement leverage in this action, which Apple has brought against Samsung for infringement of its designs, trademarks, and non standards-essential patents.  Indeed, not only did Samsung claim that Apple was infringing its Declared-Essential Patents only after Apple sought to halt Samsung's copying of Apple's iPhone and iPad and then repeatedly refuse to offer a FRAND rate for its Declared-Essential Patents standing alone or any of the information necessary to evaluate whether a supposedly FRAND offer is actually fair, reasonable, and non-discriminatory, but Apple believes that Samsung has neither demanded royalties from nor sued for infringement other implementers of the UMTS standard that, unlike Apple, do not own non-essential patents that Samsung wishes to practice. Thus, Samsung is seeking, unlawfully and in breach of its FRAND commitments, to leverage the monopoly power it wrongly obtained in the Input Technologies Markets (defined below) from its untimely disclosures and/or its false FRAND commitments to ETSI in a discriminatory manner to try to coerce Apple into tolerating Samsung's pattern of repeatedly infringing Apple's designs, trademarks and non standards-essential patents or licensing to Samsung its proprietary technology (to which Samsung is not entitled).  Left unaddressed, this conduct will chill innovation, quality, and price competition for end products that comply with the UMTS standard by allowing Samsung to free ride on Apple's massive investments in innovation and product development rather than invest in its own distinctive products that consumers desire.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

50

76.     Samsung itself objected to precisely this sort of violation of FRAND obligations in another litigation.  After observing that ETSI rules permit a holder of claimed essential patents to ask for a "reciprocal license" to a potential licensees' patents that are *essential* to the relevant standard, Samsung drew a sharp distinction between that and an attempt to leverage claimed-essential patents by demanding that the licensee agree not to assert *non-essential* patents as a condition to the license, which Samsung recognized is a clear breach of ETSI rules:

> What [the patent holder] demanded was not [a reciprocal license to essential patents] but much, much more.  They demanded a nonassert by Samsung, i.e., an agreement by Samsung that it would not assert any of its patents against *any* of [the patent holder's] potential products, well beyond what ETSI rules permitted and, therefore, clearly not FRAND.
>
> Hearing Transcript at 91-92, Certain 3G Wideband Code Division Multiple Access (WCDMA) Mobile Handsets and Components Thereof, Inv. No. 337-TA-601 (USITC July 8, 2008) (emphasis added).

At another point in the same hearing, Samsung explained in somewhat different terms how similar behavior violates FRAND rules:

> [The patent holder] condition [sic] our taking a license under the standard of ETSI . . . on our taking another license that's not covered by that standard.  So, in other words, they are not just going to offer us a license on what they are obligated to license us.  They say if you take that, you have also got to take another license.  So they are tying the two.  ETSI rules don't permit that.  And that obviously increases dramatically the cost of the license to Samsung.  That is not consonant with their FRAND obligation.
>
> Hearing Transcript at 89, Certain 3G Wideband Code Division Multiple Access (WCDMA) Mobile Handsets and Components Thereof, Inv. No. 337-TA-601 (USITC July 8, 2008).

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

51

**SAMSUNG HAS ENGAGED IN ANTICOMPETITIVE AND UNFAIR
CONDUCT THAT HAS INJURED AND WILL CONTINUE TO INJURE
COMPETITION AND APPLE IN THE INPUT TECHNOLOGIES MARKETS**

77.     Samsung's unlawful conduct has had, and will continue to have, a substantial anticompetitive effect on the Input Technologies Markets defined below.

78.     In developing UMTS, ETSI participants sought to select the most appropriate technology to provide each individual function within the standards.  ETSI participants evaluated whether to incorporate particular proposed functionalities and whether to include viable alternative competing technologies into the standards.  They made these decisions based on technical and commercial merit and intellectual property considerations, including whether the proposed technology was covered by disclosed IPR and, if so, whether the party claiming to hold patents covering that technology had committed to make it available on FRAND terms.

79.     UMTS consists of many different technologies performing a variety of functions. The technologies that perform each of these functions are essential inputs into the manufacture of products and services that comply with the standards.

80.     Because UMTS specifies a set of distinct technologies to perform the various functions within the standard, once the standard was adopted, for those functions included in the standard, there were (by definition) no substitutes for the standardized technologies that perform each function.

81.     Once ETSI participants selected a single technology to perform a particular function needed to practice the standard, any alternative technologies that had been capable of performing that function were no longer viable alternatives for Apple and other parties seeking to implement UMTS.  Thus, the selection of a particular technology during the standards-setting process reduced to a single option the technology to perform each function that ETSI determined

1    to include in the standard.  Parties implementing the standard such as Apple are thus "locked-in"

2    to the technology.

3          82.     If a technology selected for inclusion in the standard is protected by patents, the

4    patent owner controls the supply of that particular technological input for the standard.  This is

5    true for each function comprising the standard for which patented technology was selected.

6

7          83.     Samsung claims to own patents essential to practicing technologies that are used

8    for certain functions of UMTS.

9          84.     The relevant markets in which to assess the anticompetitive effects of Samsung's

10   conduct, therefore, are the various markets for technologies that -- before the standard was

11   implemented -- were competing to perform each of the various functions covered by each of

12   Samsung's purported essential patents for UMTS (collectively, the relevant "Input Technologies

13   Markets").  Each functionality, therefore, comprises its own relevant market for antitrust

14   purposes.  Before standardization, the sellers in these Input Technologies Markets were the

15   companies supplying technologies capable of performing the relevant function incorporated in

16   the standard.  After standardization, however, the holder of patents covering the technology that

17   performs a given function holds a monopoly in the relevant Input Technology Market.  That is

18   because, post-standardization, formerly viable alternative technologies are no longer viable

19   because of the lock-in effect discussed at Paragraphs 23 and 24.

20

21         85.     UMTS is employed throughout the world and alternative technologies competing

22   to be incorporated into UMTS standard were offered by suppliers from around the world.

23   Accordingly, the geographic scope of each of the relevant Input Technologies Markets described

24   above is worldwide.

25

26

27

28

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

86.     If Samsung in fact has patents covering technologies that have been incorporated into the relevant standard, it has the power to raise prices and exclude competition with respect to each of the technologies covered by its patents and incorporated in the relevant standard.  And it acquired that power as a result of its misconduct in connection with the standards-setting process, including untimely disclosure of its IPR and/or false FRAND commitments.  Barriers to entry into these markets are high because, among other reasons, the post-standardization lock-in effect means that other technologies are no longer viable substitutes for the technologies the standard specifies to perform functions included in the standard.

### SAMSUNG HAS ENGAGED IN UNFAIR AND ANTICOMPETITIVE CONDUCT THAT THREATENS TO INJURE APPLE AND COMPETITION IN THE DOWNSTREAM MARKETS FOR MOBILE WIRELESS COMMUNICATIONS DEVICES

87.     Samsung deliberately and deceptively failed to timely disclose IPR that it now claims are essential to the relevant industry standard and made false FRAND commitments. This course of misconduct enabled Samsung to obtain monopoly power in the Input Technologies Markets that it could assert against licensees to obtain excessive royalties. Samsung wrongfully asserted this power when it refused to specify FRAND license terms for Apple, a more successful competitor in the downstream markets for mobile wireless communications devices in which Apple and Samsung compete.

88.     By (a) wrongfully obtaining monopoly power in the Input Technologies Markets through non-disclosure of its IPR during the standards-setting process and false commitments to offer FRAND license terms to implementers of the UMTS standard; and (b) by attempting to coerce Apple to accept unfair, unreasonable, discriminatory licensing terms by abusively accusing Apple of infringement and seeking an injunction, Samsung seeks to exclude from the manufacture and sale of downstream wireless devices and raise the costs of its rival, Apple.

1  Moreover, Samsung's conduct more broadly has and continues to threaten unlawfully to exclude

2  rivals from and increase royalties and other costs associated with the manufacture and sale of

3  downstream wireless communications devices that implement the UMTS standard and chill

4  competition to develop and sell innovative new UMTS-compliant products, resulting in

5  increased prices and decreased quality and innovation in downstream product markets and

6  complementary innovation markets.

7

8                    **ANTICOMPETITIVE EFFECTS OF SAMSUNG'S CONDUCT**

9          89.     The foregoing conduct by Samsung has caused and threatens to cause harm to

10  competition.  These anticompetitive effects include each of the following:

11

12          (a) By deliberately failing to disclose purportedly essential IPR during the standards-
            setting process and by making false FRAND commitments to ETSI, Samsung has
13          improperly foreclosed competition in each of the relevant Input Technologies Markets.
            Before standardization, each functionality that is purportedly covered by one of
14          Samsung's claimed essential patents and included in the standard and all available
            technical alternatives competed in a relevant product market; following standardization,
15          alternative technologies to perform functions necessary to practice the standard are no
            longer viable.
16

17          (b) Samsung's unlawful monopolization has increased prices and decreased quality and
            innovation for technologies in Input Technologies Markets.
18

19          (c) Samsung's conduct has and, unless enjoined, will continue to substantially increase
            costs associated with the manufacture and sale of downstream of mobile wireless
20          communications devices that are compliant with the UMTS standard, potentially exclude
            rivals from the manufacture and sales of such devices, and chill innovation and quality
21          competition for products that comply with the UMTS standard.

22          90.     Such harm will continue unless and until the Court issues appropriate relief as

23  requested below.

24

25

26

27

28

## APPLE'S COUNTERCLAIMS IN REPLY

### FIRST COUNTERCLAIM
#### (Declaratory Judgment of Non-Infringement of the '604 Patent)

91.     Apple incorporates and realleges Paragraphs 1 through 90 of this Counterclaim.

92.     Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '604 Patent.

93.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '604 Patent.

### SECOND COUNTERCLAIM
#### (Declaratory Judgment of Invalidity of the '604 Patent)

94.     Apple incorporates and realleges Paragraphs 1 through 93 of this Counterclaim.

95.     One or more of the claims of the '604 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

96.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '604 Patent is invalid.

### THIRD COUNTERCLAIM
#### (Declaration of Non-Infringement of the '410 Patent)

97.     Apple incorporates and realleges Paragraphs 1 through 96 of this Counterclaim.

98.     Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '410 Patent.

99.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '410 Patent.

**FOURTH COUNTERCLAIM**
**(Declaratory Judgment of Invalidity of the '410 Patent)**

100.    Apple incorporates and realleges Paragraphs 1 through 99 of this Counterclaim.

101.    One or more of the claims of the '410 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

102.    To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '410 Patent is invalid.

**FIFTH COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of the '055 Patent)**

103.    Apple incorporates and realleges Paragraphs 1 through 102 of this Counterclaim.

104.    Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '055 Patent.

105.    To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is

1  entitled to a declaratory judgment that it has not infringed and is not infringing any valid,

2  enforceable claim of the '055 Patent.

3
**SIXTH COUNTERCLAIM**
4  **(Declaratory Judgment of Invalidity of the '055 Patent)**

5      106.    Apple incorporates and realleges Paragraphs 1 through 105 of this Counterclaim.

6      107.    One or more of the claims of the '055 Patent are invalid for failing to meet one or

7  more of the requisite statutory and decisional requirements and/or conditions for patentability

8  under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or

9  112.

10
11      108.    To resolve the legal and factual questions raised by Samsung and to afford relief

12  from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is

13  entitled to a declaratory judgment that the '055 Patent is invalid.

14

15
**SEVENTH COUNTERCLAIM**
16  **(Declaratory Judgment of Non-Infringement of the '871 Patent)**

17      109.    Apple incorporates and realleges Paragraphs 1 through 108 of this Counterclaim.

18      110.    Apple has not directly or indirectly infringed and is not directly or indirectly

19  infringing any valid claim of the '871 Patent.

20      111.    To resolve the legal and factual questions raised by Samsung and to afford relief

21  from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is

22  entitled to a declaratory judgment that it has not infringed and is not infringing any valid,

23
24  enforceable claim of the '871 Patent.

25
**EIGHTH COUNTERCLAIM**
26  **(Declaratory Judgment of Invalidity of the '871 Patent)**

27      112.    Apple incorporates and realleges Paragraphs 1 through 111 of this Counterclaim.

28

113.    One or more of the claims of the '871 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

114.    To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '871 Patent is invalid.

**NINTH COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of the '792 Patent)**

115.    Apple incorporates and realleges Paragraphs 1 through 114 of this Counterclaim.

116.    Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '792 Patent.

117.    To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '792 Patent.

**TENTH COUNTERCLAIM**
**(Declaratory Judgment of Invalidity of the '792 Patent)**

118.    Apple incorporates and realleges Paragraphs 1 through 117 of this Counterclaim.

119.    One or more of the claims of the '792 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

120.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '792 Patent is invalid.

**ELEVENTH COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of the '867 Patent)**

121.     Apple incorporates and realleges Paragraphs 1 through 120 of this Counterclaim.

122.     Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '867 Patent.

123.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '867 Patent.

**TWELFTH COUNTERCLAIM**
**(Declaratory Judgment of Invalidity of the '867 Patent)**

124.     Apple incorporates and realleges Paragraphs 1 through 123 of this Counterclaim.

125.     One or more of the claims of the '867 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

126.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '867 Patent is invalid.

**THIRTIETH COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of the '001 Patent)**

127.     Apple incorporates and realleges Paragraphs 1 through 126 of this Counterclaim.

128.     Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '001 Patent.

129.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '001 Patent.

### FOURTEEN COUNTERCLAIM
### (Declaratory Judgment of Invalidity of the '001 Patent)

130.     Apple incorporates and realleges Paragraphs 1 through 129 of this Counterclaim.

131.     One or more of the claims of the '001 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

132.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '001 Patent is invalid.

### FIFTEEN COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of the '516 Patent)

133.     Apple incorporates and realleges Paragraphs 1 through 132 of this Counterclaim.

134.     Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '516 Patent.

135.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1    entitled to a declaratory judgment that it has not infringed and is not infringing any valid,

2    enforceable claim of the '516 Patent.

3                               SIXTEENTH COUNTERCLAIM
4                    (Declaratory Judgment of Invalidity of the '516 Patent)

5            136.    Apple incorporates and realleges Paragraphs 1 through 135 of this Counterclaim.

6            137.    One or more of the claims of the '516 Patent are invalid for failing to meet one or

7    more of the requisite statutory and decisional requirements and/or conditions for patentability

8    under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or

9
10   112.

11           138.    To resolve the legal and factual questions raised by Samsung and to afford relief

12   from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is

13   entitled to a declaratory judgment that the '516 Patent is invalid.

14                              SEVENTEEN COUNTERCLAIM
15                   (Declaratory Judgment of Non-Infringement of the '893 Patent)

16           139.    Apple incorporates and realleges Paragraphs 1 through 138 of this Counterclaim.

17           140.    Apple has not directly or indirectly infringed and is not directly or indirectly

18   infringing any valid claim of the '893 Patent.

19
20           141.    To resolve the legal and factual questions raised by Samsung and to afford relief

21   from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is

22   entitled to a declaratory judgment that it has not infringed and is not infringing any valid,

23   enforceable claim of the '893 Patent.

24                               EIGHTEEN COUNTERCLAIM
25                   (Declaratory Judgment of Invalidity of the '893 Patent)

26           142.    Apple incorporates and realleges Paragraphs 1 through 141 of this Counterclaim.

27
28

143.    One or more of the claims of the '893 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

144.    To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '893 Patent is invalid.

**NINETEENTH COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of the '460 Patent)**

145.    Apple incorporates and realleges Paragraphs 1 through 144 of this Counterclaim.

146.    Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '460 Patent.

147.    To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '460 Patent.

**TWENTIETH COUNTERCLAIM**
**(Declaratory Judgment of Invalidity of the '460 Patent)**

148.    Apple incorporates and realleges Paragraphs 1 through 147 of this Counterclaim.

149.    One or more of the claims of the '460 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

150.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '460 Patent is invalid.

**TWENTY-FIRST COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of the '941 Patent)**

151.     Apple incorporates and realleges Paragraphs 1 through 150 of this Counterclaim.

152.     Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '941 Patent.

153.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '941 Patent.

**TWENTY-SECOND COUNTERCLAIM**
**(Declaratory Judgment of Invalidity of the '941 Patent)**

154.     Apple incorporates and realleges Paragraphs 1 through 153 of this Counterclaim.

155.     One or more of the claims of the '941 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

156.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '941 Patent is invalid.

**TWENTY-THIRD COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of the '711 Patent)**

157.     Apple incorporates and realleges Paragraphs 1 through 156 of this Counterclaim.

158.     Apple has not directly or indirectly infringed and is not directly or indirectly infringing any valid claim of the '711 Patent.

159.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '711 Patent.

### TWENTY-FOURTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of the '711 Patent)

160.     Apple incorporates and realleges Paragraphs 1 through 159 of this Counterclaim.

161.     One or more of the claims of the '711 Patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

162.     To resolve the legal and factual questions raised by Samsung and to afford relief from the uncertainty and controversy that Samsung's accusations have precipitated, Apple is entitled to a declaratory judgment that the '711 Patent is invalid.

### TWENTY-FIFTH COUNTERCLAIM
### (Breach of Contract – FRAND and Other Standard-Related Misconduct)

163.     Apple incorporates and realleges Paragraphs 1 through 162 of this Counterclaim.

164.     As set forth above, by committing to license the Declared-Essential Patents to adopters of the UMTS standard on FRAND terms, Samsung entered into contractual commitments with ETSI, ETSI's members, and designers and sellers of products that implement the Relevant Standards.

165.     Each party implementing the Relevant Standards – including Apple – is an intended third party beneficiary and obtains the benefits of Samsung's contractual commitments.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

It was material, indeed critical, to Samsung's contractual commitments that Samsung offer FRAND licensing terms to all adopters of the Relevant Standards – including Apple.

166.    Samsung breached these contracts by claiming infringement and seeking to enjoin Apple from practicing the UMTS standard, notwithstanding that, to the extent any of the alleged inventions described in and allegedly covered by the Declared-Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers, Apple is licensed to any valid patents covering those claimed inventions or, in the alternative, has the right to a FRAND license to the Declared-Essential Patents by virtue of Samsung's FRAND commitments and Apple's acceptance thereof; and by acting unreasonably and unfairly towards and discriminating against Apple because Apple holds owns designs, trademarks, and non standards-essential patents that Samsung wishes to infringe with impunity.

167.    Additionally, as an independent breach of its contractual obligations to ETSI, and to Apple, Samsung failed to timely disclose its allegedly essential patents in accordance with the requirements of the ETSI IPR Policy.

168.    As a result of these multiple contractual breaches, Apple has been injured, including in its business or property.  Apple has been forced to expend resources resolving this licensing dispute, including defending counterclaims against it for patent infringement, and is threatened, in particular, by loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

### TWENTY-SIXTH COUNTERCLAIM
### (Promissory Estoppel)

169.    Apple incorporates and realleges Paragraphs 1 through 168 of this Counterclaim.

170.     Samsung made clear and definite promises to potential licensees through its commitments to ETSI that it would license the Declared-Essential Patents on FRAND terms.

171.     The intended purpose of Samsung's promises was to induce reliance.  Samsung knew or should have reasonably expected that these promises would induce sellers of mobile wireless devices, like Apple, to develop products compliant with the UMTS standard.

172.     Apple developed and marketed its products and services in reliance on Samsung's promises, as described above, including making its products and services compliant with the UMTS standard.

173.     Samsung is estopped from reneging on these promises to ETSI, its members, designers, and sellers of products implementing the UMTS standard, under the doctrine of promissory estoppel.

174.     Apple has been harmed as a result of its reasonable reliance on Samsung's promises.  Apple has been forced to expend resources resolving this licensing dispute, including defending counterclaims against it for patent infringement notwithstanding its license to Samsung's purported standards-essential patents, or in the alternative its right to a FRAND license to the Declared-Essential Patents by virtue of Samsung's FRAND commitments and Apple's acceptance thereof, and is threatened by the loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

175.     Apple invokes the Court's equitable powers to address this cause of action.  Apple requests that the Court find that Samsung's standards-related misconduct recited herein renders unenforceable Samsung's purported standards-essential patents, including those allegedly essential to the UMTS standard, such as the Declared-Essential Patents.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

## TWENTY-SEVENTH COUNTERCLAIM
### (Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2)

176.    Apple incorporates and realleges Paragraphs 1 through 175 of this Counterclaim.

177.    Samsung has unlawfully monopolized each of the relevant Input Technologies Markets by deliberately and deceptively failing to timely disclose – before standardization –IPR that Samsung claims covers essential elements of the standard and making false commitments to license IPR on FRAND terms, and by reneging on its FRAND commitments.  Samsung has undertaken this cumulative course of misconduct with the intent to monopolize the relevant Input Technologies Markets.

178.    As to its (i) Declared-Essential Patents that Samsung untimely declared essential, had Samsung properly disclosed its IPR in a timely manner and (ii) as to its Declared-Essential Patents that Samsung timely declared essential, if any, had Samsung disclosed its true intent to assert that parties implementing the standard were not licensed to its claimed essential patents or not to meet its FRAND obligations with respect to all parties implementing the standard, a viable alternative technology performing the same functionality would have been adopted instead or the relevant functionality would not have been incorporated into the standard at all.  Samsung thus would not have obtained a monopoly in the relevant Input Technologies Markets.

179.    Samsung's non-disclosure and false FRAND commitments proximately resulted in incorporation into the standard of technology over which Samsung claims patent rights. Samsung has therefore unlawfully excluded competing technologies from each of the relevant Input Technologies Markets and unlawfully acquired monopoly power in those markets.

180.    As a direct and proximate result of Samsung's monopolization, Apple has suffered injury to its business and property and is threatened by the imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.  Apple suffers

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

anticompetitive injury as a purchaser in the Input Technologies Markets because reasonable

substitutes have been excluded.  Because Samsung has abused its wrongfully-obtained monopoly

power, Apple has been forced to expend significant resources.  Moreover, Apple also incurred

substantial costs in defending against Samsung's baseless patent infringement counterclaims.

**TWENTY-EIGHTH COUNTERCLAIM**
**(Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, California Business and
Professions Code, §§ 16720, *et seq.*)**

181.     Apple incorporates and realleges Paragraphs 1 through 180 of this Counterclaim.

182.     The standards-setting process by which 3GPP standardized the technologies that

Samsung claims are covered by its Declared-Essential Patents constitutes concerted activity for

purpose of Section 1 of the Sherman Act and the California Cartwright Act.

183.     As Samsung, itself, has recognized (*see* ¶ 28), the ETSI rules set forth in

Paragraphs 48 through 51 above regarding disclosure of IPR and FRAND commitments are

essential to ensuring that the standards-setting benefits competition and consumers and does not

instead become a vehicle for abusive conduct that injures competition and consumers and an

unlawful restraint of trade.  By breaking those rules, Samsung undermined the rules of conduct

on which the legality of the standards-setting depended, caused the standards-setting process to

injure competition in the Input Technologies Markets, and engaged in an unlawful restraint of

trade.

184.     As a direct and proximate result of Samsung's violation of Section 1 of the

Sherman Act and the Cartwright Act, Apple has suffered injury to its business and property and

is threatened by the imminent loss of profits, loss of customers and potential customers, and loss

of goodwill and product image.  Apple suffers anticompetitive injury as a purchaser in the Input

Technologies Markets because reasonable substitutes have been excluded.  Because Samsung

has engaged in an unlawful restraint of trade, Apple has been forced to expend significant

1   resources.  Moreover, Apple also incurred substantial costs in defending against Samsung's

2   baseless patent infringement counterclaims.

3                              **TWENTY-NINTH COUNTERCLAIM**
                     **(Unfair Competition Under Cal. Bus. & Prof. Code § 17200)**
4

5        185.    Apple incorporates and realleges Paragraphs 1 through 184 of this Counterclaim.

6        186.    By the acts alleged, Samsung has engaged in unfair competition within the

7   meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*

8        187.    Specifically, Samsung's untimely disclosures of its claimed essential IPR and/or
9
    false FRAND commitments to ETSI, and its refusal to meet its FRAND obligations regarding
10
    patents that it claims to be essential to the UMTS standard constitute (1) unlawful business acts
11

12  or practices in violation of the federal antitrust laws and the California Cartwright Act, (2)

13  fraudulent conduct and (3) unfair business acts or practices, including unfair business practices

14  violating the policy or spirit of the antitrust laws, and otherwise significantly threatening and
15
    harming competition in California and elsewhere.
16

17       188.    Samsung committed unlawful business acts or practices by violating Sections 1

18  and 2 of the Sherman Act and the California Cartwright Act.

19       189.    Samsung engaged in fraudulent conduct by engaging in fraudulent non-
20
    disclosures with respect to its claimed essential IPR and making false statement regarding its
21
    FRAND commitments.
22

23       190.    Samsung committed unfair business acts or practices by (i) failing to timely

24  disclose its claimed essential IPR, (ii) making false FRAND commitments, (iii) suing and then

25  asserting counterclaims against Apple for patent infringement and an injunction, notwithstanding

26  that – as both Samsung knew and a reasonable person would know – Apple is licensed or, in the

27  alternative, has the right to a FRAND license to Samsung's Declared-Essential Patents by virtue
28

of Samsung's FRAND commitments and that Apple is licensed by virtue of authorized chipset sales to Apple by suppliers that Samsung has licensed, thereby unfairly competing for the downstream manufacture and sales of standard-compliant wireless devices, (iv) acting unfairly and unreasonably towards and discriminating against Apple in its licensing practices because Apple owns designs, trademarks, and non standards-essential patents that Samsung wishes to infringe with impunity, and (v) interfering with Apple's actual and prospective business relationships. Each of these acts and practices is unfair in the circumstances when the effect of the act or practice on Apple is balanced against Samsung's reasons, justifications, and motives.

191.    The acts complained of above violate and threaten to violate the federal antitrust laws and Cartwright Act, threaten to violate the policy of the antitrust laws and the Cartwright Act, and otherwise significantly threaten and/or harm competition. By the deceptive acts, practices, and conduct alleged above, Samsung wrongfully acquired monopoly power in the Input Technologies Markets, and has abused that power by refusing to license its purported essential patents on FRAND terms, and by seeking an injunction.

192.    As a direct, proximate, and foreseeable result of Samsung's wrongful conduct, as alleged above, Apple has suffered harm in California and elsewhere, including the unavailability of a FRAND license despite Samsung's assurance that it would offer such FRAND licenses, being forced to expend resources to defend counterclaims for patent infringement, and is threatened, in particular, by loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

193.    As a direct, proximate, and foreseeable result of Samsung's wrongful conduct, as alleged above, competition has been injured in the Input Technologies Markets, and there is a

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

significant threat of injury in downstream markets for mobile wireless communication devices and complementary innovation markets, thereby causing injury to consumers in California and elsewhere, including the inevitable passing on to consumers of improper royalties demanded by Samsung and decreases in innovation and quality competition for end products that comply with the UMTS standard.

### THIRTIETH COUNTERCLAIM
### (Declaratory Judgment that Apple is Licensed
### to Samsung's Declared-Essential Patents)

194.    Apple incorporates and realleges Paragraphs 1 through 193 of this Counterclaim.

195.    There is a dispute between the parties concerning whether, to the extent any of the alleged inventions described in and allegedly covered by the Declared-Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers, Apple is licensed or, in the alternative, has an irrevocable right to a FRAND license to Samsung's Declared-Essential Patents by virtue of Samsung's FRAND commitments.

196.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

197.    Apple is entitled to a declaratory judgment that, to the extent any of the alleged inventions described in and allegedly covered by the Declared-Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers and covered by valid patents, Apple is licensed to Samsung's Declared-Essential Patents by virtue of Samsung's FRAND commitments or, in the alternative, Apple has the irrevocable right to be licensed on FRAND terms under those patents.

198.    Because, as a result of Samsung's refusal to make disclosures relating to FRAND or provide Apple with any information it would need to determine whether any purportedly FRAND license offer is in fact fair, reasonable, and non-discriminatory, Apple and Samsung

72

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

have been unable to agree on FRAND terms for Samsung's Declared-Essential Patents, Apple is further entitled to a declaratory judgment setting forth the FRAND terms and conditions for a license to the Declared-Essential Patents, including the applicable royalty rate.

### THIRTY-FIRST COUNTERCLAIM
#### (Declaratory Judgment of No Entitlement to Injunctive Relief)

199.    Apple incorporates and realleges Paragraphs 1 through 198 of this Counterclaim.

200.    There is a dispute between the parties whether Samsung is entitled to injunctive relief if it prevails on any of its patent infringement claims.  Despite having admitted and contended in other litigation that a patent holder waives all rights to seek injunctive relief upon making a FRAND commitment, Samsung seeks injunctive relief against Apple in its Counterclaims.  Apple contends, as Samsung has acknowledged in other litigation, that Samsung's sole remedy in this case is to seek payment of royalties on FRAND terms.

201.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

202.    Apple is entitled to a declaratory judgment that Samsung is not entitled to injunctive relief even if it proves patent infringement.

### THIRTY-SECOND COUNTERCLAIM
#### (Declaratory Judgment of Unenforceability)

203.    Apple incorporates and realleges Paragraphs 1 through 202 of this Counterclaim.

204.    Samsung has counterclaimed against Apple for patent infringement, and the parties dispute whether Samsung's asserted patents are enforceable.  The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

205.    Samsung deliberately and deceptively failed to disclose certain IPR during the standards-setting process and then disclosed those patents only after the claimed technology had been incorporated into the relevant standard.  Samsung's representations to ETSI that it would

73

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1   license the patents it declared essential, including the Declared-Essential Patents, on FRAND

2   terms were false.  Samsung breached those FRAND commitments by first suing and then,

3   counterclaiming against Apple for patent infringement and seeking an injunction, even though to

4   the extent any of the alleged inventions described in and allegedly covered by the Declared-

5   Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its

6   customers, Apple is licensed to any valid patents covering those claimed inventions as a matter

7   of law; and by acting unfairly and unreasonably towards and discriminating against Apple in its

8   licensing practices.

9         206.    Apple is entitled to a declaratory judgment that Samsung's course of misconduct

10   in connection with the standards-setting process described above and/or other circumstances

11   renders Samsung's Declared-Essential Patents unenforceable by virtue of estoppel, laches,

12   waiver, unclean hands, patent exhaustion, implied license, and/or other equitable doctrines

13   applicable to such misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Apple requests that the Court:

a.      Dismiss Samsung's Counterclaims in their entirety, with prejudice;

b.      Enter judgment in favor of Apple and against Samsung;

c.      Adjudge and decree that Samsung is liable for breach of contract, promissory estoppel,

violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, the California Cartwright Act,

California Business and Professions Code, §§ 16720, *et seq*, and/or violation of Cal. Bus.

& Prof. Code § 17200;

d.      On Apple's Twenty-Fifth, Twenty-Sixth, and/or Twenty-Seventh, claims for relief, enter

judgment against Samsung for the amount of damages Apple proves at trial and, as an

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

equitable remedy, enter judgment declaring that Samsung's purported essential patents, including the Declared-Essential Patents, are unenforceable by virtue of standards-related misconduct including (i) Samsung's breach of its FRAND commitments and/or (ii) Samsung's breach of its disclosure obligations at ETSI;

e.   On Apple's Twenty-Seventh, and Twenty-Eighth, claims for relief, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, and/or California Business and Professions Code, §§ 16720, *et seq*; enter judgment against Samsung for treble the amount of Apple's damages, enjoin Samsung from demanding from Apple non-FRAND terms for Samsung's purportedly essential patents, and award Apple all reasonable attorneys' fees and costs;

f.   On Apple's Twenty-Ninth claim for relief, enter judgment that Samsung has violated the California Unfair Competition Law; enjoin Samsung from further violations of that Law; and award all reasonable attorneys' fees and costs;

g.   On Apple's Thirtieth claim for relief, enter judgment declaring that, to the extent any of the alleged inventions described in and allegedly covered by the Declared-Essential Patents are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers, Apple is licensed to Samsung's Declared-Essential Patents by virtue of Samsung's FRAND commitments or, in the alternative, Apple has the irrevocable right to be licensed on FRAND terms under those patents;

h.   On Apple's Thirty-First claim for relief, enter judgment declaring that Samsung is not entitled under any circumstances to seek injunctive relief preventing Apple from practicing the UMTS standard, and that Samsung is not otherwise entitled to use its purported essential patents to pursue injunctive relief;

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

i.      On Apple's Thirty-Second claim for relief, enter judgment declaring that Samsung's purported essential patents, including the Declared-Essential Patents, are unenforceable by virtue of Samsung's waiver of its right to enforce its purported essential patents, including the Declared-Essential Patents;

j.      Declare that Apple has not infringed, and is not infringing, each of the Samsung asserted patents;

k.      Declare that one or more of the claims of each of the Samsung asserted patents are invalid, void and/or unenforceable against Apple; and

l.      Grant such further relief as the Court deems just and proper.


**<u>DEMAND FOR JURY TRIAL</u>**

Apple hereby demands trial by jury on all issues so triable raised by the Amended Complaint or by this Counterclaim in Reply.

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

| | |
|---|---|
| 1 | Dated:  July 21, 2011 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |

Dated:  July 21, 2011                              /s/ Mark D. Selwyn
                                                   Mark D. Selwyn (SBN 244180)
                                                   (mark.selwyn@wilmerhale.com)
                                                   WILMER CUTLER PICKERING
                                                      HALE AND DORR LLP
                                                   950 Page Mill Road
                                                   Palo Alto, California  94304
                                                   Telephone:  (650) 858-6000
                                                   Facsimile:   (650) 858-6100

                                                   William F. Lee (admitted *pro hac vice*)
                                                   (william.lee@wilmerhale.com)
                                                   WILMER CUTLER PICKERING
                                                      HALE AND DORR LLP
                                                   60 State Street
                                                   Boston, Massachusetts  02109
                                                   Telephone: (617) 526-6000
                                                   Facsimile: (617) 526-5000

                                                   Harold J. McElhinny (SBN 66781)
                                                   (HMcElhinny@mofo.com)
                                                   Michael A. Jacobs (SBN 111664)
                                                   (MJacobs@mofo.com)
                                                   Richard S.J. Hung (CA SBN 197425)
                                                   rhung@mofo.com
                                                   MORRISON & FOERSTER LLP
                                                   425 Market Street
                                                   San Francisco, California 94105
                                                   Telephone: ( 415) 268-7000
                                                   Facsimile:  (415) 268-7522

                                                   Attorneys for Plaintiff and
                                                   Counterclaim-Defendant Apple Inc.

1

## CERTIFICATE OF SERVICE

2

3          The undersigned hereby certifies that a true and correct copy of the above and foregoing

4   document has been served on July 21, 2011, to all counsel of record who are deemed to have

5   consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any

6   other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

7

8                                            /s/ Mark. D Selwyn
                                             Mark D. Selwyn
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTERCLAIM DEFENDANT APPLE INC.'S
ANSWER, DEFENSES AND COUNTERCLAIMS
IN REPLY TO SAMSUNG'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)