HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

KENNETH H. BRIDGES (CA SBN 243541)
kbridges@bridgesmav.com
MICHAEL T. PIEJA (CA SBN 250351)
mpieja@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone: (650) 804-7800
Facsimile: (650) 852-9224

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S REPLY IN SUPPORT OF MOTION FOR EXPEDITED TRIAL ON ITS CLAIMS**<br><br>Date:   August 24, 2011<br>Time:   2:00 p.m.<br>Place:  Courtroom 4, 5th Floor<br>Judge:  Hon. Lucy H. Koh |

# **TABLE OF CONTENTS**

Page

Table of Authorities .................................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.   THE TRIAL SHOULD BE EXPEDITED IN VIEW OF THE SUBSTANTIAL EVIDENCE THAT SAMSUNG IS SELLING INFRINGING PRODUCTS THAT WILL CAUSE IRREPARABLE HARM ................................................................................................................. 2

II.  SAMSUNG'S ATTEMPT TO SLOW DOWN THIS CASE BY INJECTING UNRELATED COUNTERCLAIMS SHOULD BE REJECTED ........................................................................................................ 4

   A.  Samsung's Counterclaims Should Be Severed Because They Present Very Different Issues from Apple's Claims ............................................. 5

   B.  Samsung's Counterclaims Should Be Severed Because Samsung Has Not Asserted or Shown any Need for Expedited Relief ................................ 7

   C.  Samsung's Counterclaims Should Be Severed Because Samsung Artificially Added Them to this Case to Attempt to Delay the Trial on Apple's Claims ....................................................................................... 8

III. APPLE'S EXPEDITED SCHEDULE PROVIDES SAMSUNG WITH ADEQUATE TIME TO PREPARE ITS DEFENSE ......................................................... 9

IV.  APPLE PROMPTLY SOUGHT EXPEDITED RELIEF AFTER SAMSUNG'S RELEASE OF A NEW ROUND OF INFRINGING PRODUCTS MADE CLEAR THAT FURTHER SETTLEMENT NEGOTIATIONS WERE FUTILE .......................................................................... 10

V.   APPLE DID NOT WAIVE ITS RIGHT TO REQUEST AN EXPEDITED TRIAL BY FILING THIS LAWSUIT IN THE DISTRICT WITH THE STRONGEST NEXUS WITH THIS CASE ................................................................ 12

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Labs. v. Sandoz, Inc.*,
   544 F.3d 1341 (Fed. Cir. 2008) ................................................................................................ 3

*Apple Computer, Inc. v. Formula Int'l Inc.*,
   725 F.2d 521 (9th Cir. 1984) .................................................................................................... 3

*Cellectricon AB v. Fluxion Biosciences*,
   No. C-09-3150 KMW, 2011 U.S. Dist. LEXIS 46634 (N.D. Cal. Apr. 25, 2011) ................... 6

*CVI/Beta Ventures v. Custom Optical Frames*,
   896 F. Supp. 505 (D. Md. 1995) ............................................................................................... 5

*Davis & Cox v. Summa Corp.*,
   751 F.2d 1507 (9th Cir. 1985) .................................................................................................. 5

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) (en banc) ................................................................................ 10

*Gen. Tire & Rubber Co. v. Jefferson Chem Co.*,
   50 F.R.D. 112 (S.D.N.Y. 1970) ................................................................................................ 5

*Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co., Ltd.*,
   308 F. Supp. 2d 1106 (N.D. Cal. 2004) .................................................................................. 13

*Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*,
   07-cv-613-jcs, 2008 U.S. Dist. LEXIS 6042 (W.D. Wis. Jan. 24, 2008) ................................. 6

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma*,
   571 F.3d 873 (9th Cir. 2009) .................................................................................................... 4

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) .............................................................................................. 13

*Oscar Mayer Foods Corp. v. Sara Lee Corp.*,
   No. 90-C-43-C, 1990 U.S. Dist. LEXIS 10032 (W.D. Wis. Mar. 20, 1990) ........................... 3

*Tele Atlas N.V. v. Navteq Corp.*,
   No. C-05-01673 RMW, 2008 WL 4809441 (N.D. Cal. Oct. 28, 2008) ................................. 13

*Zivkovic v. So. Cal. Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002) ................................................................................................ 13

**STATUTES, RULES & OTHER AUTHORITIES**

Fed. R. Civ. P. 16(a) ........................................................................................................... 13

Fed. R. Civ. P. 16(b) ........................................................................................................... 13

Fed. R. Civ. P. 21 ................................................................................................................. 5

Fed. R. Civ. P. 42(b) ............................................................................................................. 5

Patent L.R. 1-3 .................................................................................................................... 13

Patent L.R. 2-1 .................................................................................................................... 14

N.D. Cal. Patent L.R. Committee Report ........................................................................... 13

Judge James Ware & Brian Davy, *The History, Content, Application, and Influence of the Northern District of California's Patent Local Rules*, SANTA CLARA COMPUTER & HIGH TECH. L.J. 965, 980 (2009) ................................................................................................ 14

**INTRODUCTION**

Samsung previously represented to this Court that the mobile devices at issue here are "like cabbage," in that they "have a shelf life of six months to a year max." (6/17/11 Hrg. Tr. at 32.) Nevertheless, Samsung now claims that time is not of the essence. Samsung plainly seeks to run out the clock with its current generation of infringing products and then move on to another round of copycat devices before any judgment can issue. An expedited trial is therefore all the more necessary.

Contrary to Samsung's allegations, Apple need not prove infringement "on the merits" to obtain an expedited trial. But as the Court observed, Apple has, in fact, already presented evidence that Samsung's new products are designed to mimic Apple's products. And Samsung does not dispute that it seeks to take market share from Apple by selling the accused products, or that lost market share and goodwill may cause irreparable harm. Samsung's contention that Apple has not shown a "nexus" between Samsung's infringement and its increased market share is illogical, and belies the fact that Samsung's increased market share results directly from its sale of the accused products.

Even so, Samsung asserts that the trial of Apple's claims should be delayed until two years after this suit was filed because an expedited trial would not provide sufficient time to prepare this "20 utility patent" case. Yet it was Samsung that artificially inflated the scope of this case by interposing 12 more utility patents from what was its countersuit in a transparent attempt to slow Apple's case down. And it did so in response to Apple's notice that it would file a motion for expedited trial the next day. Because these 12 disparate patents raise numerous legal, factual, and technical issues that are completely unrelated to Apple's claims — such as Samsung's breach of its duty to license patents that Samsung contends are essential to implement international standards, and related antitrust violations — they should be severed and set for trial on a separate track. Indeed, as demonstrated by its failure to move for expedited relief, even Samsung does not believe that its claims require quick resolution.

Setting aside Samsung's unrelated counterclaims, this case involves fairly straightforward claims concerning the distinctive look and user interface of Apple's iPhone and iPad products and

Apple's related intellectual property. Samsung has already had substantial time to analyze Apple's claims and can adequately prepare its defenses on an expedited basis. Samsung's remaining arguments should not distract the Court from the urgent need for an expedited trial on Apple's claims.

**ARGUMENT**

**I.   THE TRIAL SHOULD BE EXPEDITED IN VIEW OF THE SUBSTANTIAL EVIDENCE THAT SAMSUNG IS SELLING INFRINGING PRODUCTS THAT WILL CAUSE IRREPARABLE HARM**

As Apple stated in its Motion, an expedited trial on Apple's claims is warranted for the same reasons noted in the Order Granting Limited Expedited Discovery, including (1) Apple's evidence "provides a reasonable basis for Apple's belief that Samsung's new products are designed to mimic Apple's products"; (2) Apple seeks expedited relief "to forestall allegedly irreparable harm associated with a loss of market share and consumer good will." (D.N. 83 at 4-5, citing D.N. 52 at 3.) As Samsung's counsel noted, product cycles in the markets in which Apple and Samsung products compete are incredibly short. Because of that rapid pace, justice delayed truly is justice denied. Without rapid adjudication of its claims, Apple's hard-earned intellectual property is devalued, Apple's iconic products may lose distinctiveness, Samsung's imitation products flourish, and the creativity that so infuses Apple's product design is misappropriated.

Samsung's opposition might have more merit if Apple had not already presented evidence that Samsung sought to mimic Apple's products, as this Court noted in ordering Samsung to provide expedited discovery. Samsung's argument that the Court was not opining "on the merits of Apple's claims" (D.N. 111 at 15) misses the point.[1] While the Court did not rule on the merits, it did note that Apple had presented evidence that provides a reasonable basis for Apple's claims, at least on a preliminary, *prima facie* basis. This conclusion is reinforced by the additional evidence of infringement included in the preliminary injunction motion that Apple filed on the same date as this motion for expedited trial. (D.N. 86 at 11-32.)

---

[1] Equally off-point is Samsung's argument that the Court found that Apple had not shown sufficient prejudice to shorten time on this motion. Whether to shorten time for briefing by a few weeks plainly raises different issues from whether trial should be set for early next year, as Apple proposes, or should instead by delayed by *an additional year*, as Samsung urges.

1    Samsung does not dispute that the threat of lost market share or consumer goodwill may
2 support a finding of irreparable harm.  *See*, *e.g.*, *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341,
3 1343 (Fed. Cir. 2008) (irreparable harm from lost market share); *Oscar Mayer Foods Corp. v.*
4 *Sara Lee Corp.*, No. 90-C-43-C, 1990 U.S. Dist. LEXIS 10032, at *24-25 (W.D. Wis. Mar. 20,
5 1990) (irreparable harm due to potential loss of market share and significant marketing
6 expenditures); *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 526 (9th Cir. 1984)
7 (irreparable injury where "continuing infringement would result in loss of control over Apple's
8 reputation and loss of goodwill").

9    Nor does Samsung dispute that Samsung has sharply increased its market share as a result
10 of its sale of the accused smartphones and tablet computers.  Indeed, as noted in Apple's
11 Preliminary Injunction Motion, Samsung has more than tripled its share of the smartphone market
12 in the year following its introduction of the iPhone-imitating Galaxy S smartphone, and has also
13 gained substantial market share with its iPad-imitating Galaxy Tab products.  (D.N. 86 at 32; D.N.
14 88-46, 88-47.)  Moreover, Samsung has announced that it intends to use its Galaxy smartphone
15 and tablet computers to "aggressively challenge a market that grows ever more competitive."
16 (D.N. 86 at 32; D.N. 88-45 at 11.)

17    Samsung nevertheless contends that Apple cannot show irreparable harm because it has
18 presented no evidence of "any nexus between any increase in market share of Samsung's accused
19 products, or any decrease in market shares of Apple's products, and any aspect of the Samsung
20 products that Apple claims are infringing its various intellectual property rights." (D.N. 111 at
21 15.)  Samsung further asserts: "Apple has identified no evidence that suggests anything other than
22 that Samsung's products are winning in the market on their merits—for instance, their bigger and
23 better screens and faster download times—and not because of any alleged 'copying' of Apple's
24 purposed intellectual property." (*Id.*)

25    Samsung's argument makes no sense.  Samsung's sale of the accused products has
26 indisputably enabled Samsung to take market share from Apple.  There is a direct nexus between
27 Samsung's sale of the accused products and the resulting changes in market share.  Apple's
28 evidence that Samsung has copied Apple's intellectual property is in no way rebutted by the

1  screen size or download speeds of Samsung's products, which are features that have no relevance
2  to Apple's claims. If Samsung is selling infringing products, Apple is entitled to an injunction
3  prohibiting such sales. Samsung cannot avoid an injunction on the ground that its products are
4  allegedly "better" in other irrelevant respects.

5  Samsung argues that Apple is asking the Court to "presume" irreparable harm, which is
6  supposedly contrary to the Supreme Court's decisions in *eBay* and *Winter*. (D.N. 111 at 12.) The
7  Ninth Circuit, however, has presumed irreparable harm in trademark cases on a showing of likely
8  success, even after *eBay* and *Winter* were decided in 2006 and 2008. *Marlyn Nutraceuticals, Inc.*
9  *v. Mucos Pharma*, 571 F.3d 873, 877 (9th Cir. 2009) ("In a trademark infringement claim,
10 'irreparable injury may be presumed from a showing of likelihood of success on the merits'")
11 (citation omitted). Moreover, Apple has presented evidence that Samsung is taking market share
12 from Apple by selling iPhone and iPad look-alikes. Allowing Samsung to flood the market with
13 "me too" products for a lengthy period of time will not only harm Apple directly, it will
14 encourage other companies to do the same. Apple's claims should be set for trial at the earliest
15 practicable date, so as to prevent irreparable harm to Apple's market share, consumer goodwill,
16 and the intellectual property rights that protect the distinctive designs and features of Apple's
17 iPhone and iPad products.

18 **II. SAMSUNG'S ATTEMPT TO SLOW DOWN THIS CASE BY INJECTING UNRELATED COUNTERCLAIMS SHOULD BE REJECTED**
19

20 Samsung asserts that this case is too complicated for an expedited trial because there are
21 twenty utility patents at issue — the eight utility patents in Apple's First Amended Complaint,
22 plus twelve additional patents that Samsung recently added in its Counterclaims. But Apple has
23 moved for an expedited trial on *Apple's* claims. Neither Apple nor Samsung has moved for an
24 expedited trial on Samsung's counterclaims.

25 Samsung apparently presumes that an expedited trial would automatically include its
26 counterclaims because Samsung filed its counterclaims the day before Apple filed its motion for
27 expedited trial. The Federal Rules confer broad discretion, however, to sever counterclaims for a
28 separate trial. "For convenience, to avoid prejudice, or to expedite and economize, the court may

order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42; *see also* Fed. R. Civ. P. 21 ("The court may also sever any claim against a party"); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985) ("The district court has broad discretion to order separate trials under Rule 42(b) of the Federal Rules of Civil Procedure"). The Ninth Circuit has affirmed severance of counterclaims for trial when they raise different issues from the complaint, and without severance, the trial of plaintiffs' claims "would needlessly have been delayed for a substantial period." *Davis & Cox*, 751 F.2d at 1517.

Samsung's newly added counterclaims should not be allowed to disrupt Apple's request for an expedited trial. Rather, Samsung's counterclaims should be severed and set for trial on a separate track because (A) they raise very different issues; (B) there is no need for expedited relief on Samsung's counterclaims; and (C) Samsung artificially injected its counterclaims in an attempt to delay the trial of Apple's claims.[2]

### A. Samsung's Counterclaims Should Be Severed Because They Present Very Different Issues from Apple's Claims

Courts have severed patent infringement counterclaims that raise distinct issues from the original patent claims. For example, in *CVI/Beta Ventures v. Custom Optical Frames*, 896 F. Supp. 505, 506 (D. Md. 1995), the court held that severance of defendant's patent counterclaim "will undoubtedly serve the ends of justice and further the prompt and efficient disposition of the main action." The court noted that the patents of both sides involved "flexible eyeglass frames made from nickel titanium alloys," but emphasized that trying all claims together would require the jury "to consider separate eyeglass frames, separate patent claims and specifications, separate file histories, and separate affirmative defenses." *Id.* at 506-07. Thus, "[s]uch commonality as may exist among the patents is far outweighed by the potential for jury confusion." *Id.* at 507. Similarly, in *Gen. Tire & Rubber Co. v. Jefferson Chem Co.*, 50 F.R.D. 112 (S.D.N.Y. 1970), the court severed a counterclaim because the patents of the two parties were not sufficiently related.

---

[2] In addition to Samsung's counterclaims for infringement of its patents, Samsung has asserted counterclaims for declarations of non-infringement and invalidity of the intellectual property rights that Apple has asserted. (D.N. 80 at 54-60, ¶¶ 116-162.) Apple does not seek to sever these declaratory relief counterclaims because they are directly related to Apple's claims.

1   The court noted that although both patents "are concerned with the broad field of polyurethane
2   chemistry," the "operative facts and the legal issues" concerning the validity of the two patents
3   were different. *Id.* at 114; *see also Cellectricon AB v. Fluxion Biosciences*, No. C-09-3150
4   KMW, 2011 U.S. Dist. LEXIS 46634, *7-*9 (N.D. Cal. Apr. 25, 2011) (severing infringement
5   claim on one of plaintiffs' patents from claims on other patents that had been stayed pending
6   reexamination, because the first patent involved different technology and the reexamination had
7   been completed); *Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*, 07-cv-613-jcs, 2008 U.S.
8   Dist. LEXIS 6042 (W.D. Wis. Jan. 24, 2008) (severing patent infringement counterclaim and
9   transferring to different district where the counterclaimant had already sued on related patents).

10   Samsung's patent counterclaims indisputably present very different issues than Apple's
11   patent claims. All of Samsung's patents involve different technical areas, different inventors,
12   different file histories, and different issues of claim construction, infringement, and invalidity.
13   Apple's utility patents generally relate to the remarkable, game-changing user interface of its
14   iPhone and iPad products. In contrast, seven of Samsung's patents (the '604, '410, '792, '011,
15   '516, and '941 patents) relate to the entirely different subject of wireless communications
16   between the mobile device and the cellular network. (*See* Samsung's Answer and Counterclaims,
17   D.N. 80, ¶¶ 32-38.) Samsung's other patents relate to other completely unrelated subjects, such
18   as camera functions (the '893 and '460 patents), playback of MP3 music files (the '711 patent),
19   and a world clock function (the '055 patent). Only one of Samsung's twelve patents relates to the
20   user interface (the '871 patent), and that patent is directed to dividing the display into separate
21   areas when composing a text message, which is a feature that none of Apple's patents addresses.

22   Moreover, Samsung has declared the seven Samsung patents related to communications
23   with the cellular network as essential to implement the Universal Mobile Telecommunications
24   System ("UMTS") standard for such communications. (*See* Samsung's Answer and
25   Counterclaims, D.N. 80 at 40-41, ¶¶ 32-38; Apple's Answer, Defenses, and Counterclaims In
26   Reply to Samsung's Counterclaims, D.N. 124 at 3-4, ¶¶ 7-8.) These "declared-essential" patents
27   raise issues arising from Samsung's failure to comply with its obligations related to international
28   telecommunications standards. (*See* D.N. 124 at 31-55, ¶¶ 14-90.) In response to Samsung's

1  assertion of these declared-essential patents, Apple has recently filed counterclaims based on
2  Samsung's breach of its contractual obligation to license these patents on fair, reasonable, and
3  nondiscriminatory ("FRAND") terms, promissory estoppel, violation of Sections 1 and 2 of the
4  Sherman Act, unfair competition, and related declaratory relief.  (*Id.* at 65-74, ¶¶ 163-206.)

5  Apple's antitrust, breach of contract, promissory estoppel, and unfair competition
6  counterclaims relate directly to Samsung's counterclaims for infringement of declared-essential
7  patents.  In contrast, the issues raised by Samsung's declared-essential patents have nothing to do
8  with Apple's claims for infringement of its user interface patents and would greatly complicate
9  the trial of Apple's claims.  Samsung's other patents present very different issues.  Therefore,
10 Samsung's patent counterclaims and Apple's related counterclaims should be severed and set for
11 trial on a separate track from the trial of Apple's infringement claims.

**B.    Samsung's Counterclaims Should Be Severed Because Samsung Has Not Asserted or Shown any Need for Expedited Relief**

14 A further reason to sever Samsung's patent counterclaims is that Samsung has not moved
15 for expedited relief or presented any evidence that expedited relief is necessary to prevent
16 irreparable harm to Samsung.  This is not surprising since Samsung is the imitator seeking to take
17 market share away from the successful iPhone and iPad products.  Further, Samsung cannot
18 credibly argue it needs expedited relief on patents needed to implement international standards,
19 given that Samsung is required to license such patents.  Thus, even if it were assumed that
20 Samsung's declared-essential patents are valid and infringed (which Apple disputes), the only
21 issue should be the appropriate license terms, which is an issue that can be adequately addressed
22 by monetary damages.

23 Because Samsung has never sought expedited relief on its patent counterclaims, they are
24 already on a slower track than Apple's claims.  Apple has already received some expedited
25 discovery on its claims, and the parties are currently conducting expedited discovery concerning
26 Apple's preliminary injunction motion.  In contrast, no discovery has been taken in connection
27 with Samsung's counterclaims.  Indeed, the pleadings on Samsung's counterclaims are not even
28 complete.  Apple just filed its Answer yesterday (July 21), asserting breach of contract, antitrust,

1  promissory estoppel, and unfair competition counterclaims that are directly related to Samsung's
2  counterclaims. Samsung has not yet responded to Apple's new counterclaims.

3        **C.**    **Samsung's Counterclaims Should Be Severed Because Samsung Artificially Added Them to this Case to Attempt to Delay the Trial on Apple's Claims**
4

5  Scheduling Samsung's patent counterclaims for trial on a separate track is especially
6  appropriate in view of the manner in which Samsung belatedly added these counterclaims to this
7  case. When Apple filed this lawsuit, Samsung promptly retaliated by asserting patent
8  infringement claims against Apple as *a separate lawsuit*, rather than as counterclaims in the same
9  action. Samsung evidently filed a separate lawsuit because asserting counterclaims in the same
10 action would have undermined Samsung's argument — which it used to oppose Apple's motion
11 to expedite discovery — that "[n]o Samsung entity has answered or otherwise responded to the
12 Complaint." (D.N. 47 at 5.) For several months, Samsung took no action to expedite its separate
13 countersuit against Apple.

14 Yet, when Apple notified Samsung on June 30 of its intent to move for expedited trial on
15 the next day, Samsung immediately dismissed its countersuit and re-filed its claims against Apple
16 as counterclaims in this action at the very end of June 30 (11:10 p.m.). (Declaration of Richard
17 S.J. Hung, D.N. 85, ¶¶ 2, 4.) Samsung did so even though its Answer and Counterclaims were
18 not due until five days later (July 5). At the same time, Samsung's counsel alleged it was not
19 available to confer on Apple's motion until late on July 1, even though counsel was available to
20 rush its Counterclaims to the Court on June 30. (*Id.* ¶ 3; D.N. 83 at 2 n. 1.)

21 The sequence of events makes clear that one of the reasons that Samsung shifted its
22 counterclaims to this case was to overload it with Samsung's unrelated patents before Apple filed
23 its motion for expedited trial. Samsung's blatant tactical maneuver should not be condoned.
24 Samsung's counterclaims should be set for trial on a separate track, consistent with Samsung's
25 original decision to file its counterclaims as a separate lawsuit.

26
27
28

APPLE'S REPLY IN SUPPORT OF MOTION FOR EXPEDITED TRIAL        8
CASE NO. 11-CV-01846-LHK
sf-3021137

### III. APPLE'S EXPEDITED SCHEDULE PROVIDES SAMSUNG WITH ADEQUATE TIME TO PREPARE ITS DEFENSE

Samsung contends that an expedited trial schedule would not provide adequate time to prepare, in view of the large number of claims. Setting aside Samsung's unrelated counterclaims, however, all of Apple's claims concern the distinctive look and innovative user interface of Apple's iPhone and iPad products. The distinctive look is protected by Apple's design patents, trademarks, and trade dress rights, which all raise the issue of whether Samsung's products look similar to Apple's protected designs. The innovative user interface is protected by Apple's utility patents, which raise the issue of whether Samsung's user interface infringes the claims of those patents. In many cases, infringement is clear from observing the operation of the Samsung products, without complicated technical analysis.

Because Apple's claims raise fairly straightforward issues, they can reasonably be addressed on an expedited schedule. This is particularly the case because Samsung has been on notice of Apple's claims since last year, and has now had several months since this suit was filed to conduct prior art searches, to compare the claims of Apple's patents to Samsung's products, and to analyze Apple's design patent, trade dress, and trademark claims. Indeed, Samsung submitted a presentation that previewed Samsung's defenses to Apple's design patent and trade dress claims at the May 12 hearing — less than a month after Apple filed this action. Samsung is fully prepared to litigate, as evidenced by the lawsuits Samsung has filed against Apple in multiple countries around the world.

Moreover, the most significant adjustments that Apple proposed to the claim construction schedule involved shortening Apple's own deadlines. For example, Apple proposed to serve its infringement contentions about one month earlier than provided by the Patent Local Rules, and to identify claim terms for construction about two months early. These deadlines affect Apple only, so Samsung has no basis to complain.

In contrast, Apple proposed that Samsung file its invalidity contentions 29 days after receiving Apple's infringement contentions, which is only 16 days faster than the normal 45-day period. This is sufficient time, especially since Samsung has undoubtedly already conducted

1  prior art searches for the Apple patents. Apple proposed that claim construction be briefed on the
2  normal 35-day schedule, providing Samsung with the full 14-day period to prepare its Responsive
3  Brief. Apple also proposed that Samsung will have until 23 days (instead of 30 days) after the
4  parties' Joint Claim Construction Statement to take claim construction discovery. This provides
5  adequate time to Samsung, which has already had several months to analyze the claims of the
6  Apple patents, most of which concern fairly simple user interface functions.[3]

7  With regard to discovery, Apple has proposed about five months to complete fact
8  discovery, with four additional weeks to complete expert discovery. This is sufficient time if both
9  parties devote full attention to this case. Indeed, the parties are currently conducting expedited
10 discovery on a much faster schedule for the four design and utility patents at issue in Apple's
11 preliminary injunction motion.[4]

### IV. APPLE PROMPTLY SOUGHT EXPEDITED RELIEF AFTER SAMSUNG'S RELEASE OF A NEW ROUND OF INFRINGING PRODUCTS MADE CLEAR THAT FURTHER SETTLEMENT NEGOTIATIONS WERE FUTILE

14 Samsung does not dispute that Apple immediately objected when Samsung released its
15 first infringing products in July 2010, and that the parties then participated in multiple negotiation
16 meetings. (*See* Declaration of Richard J. Lutton, Jr. In Support of Apple's Motion for
17 Preliminary Injunction, submitted under seal on July 1, 2011 ("Lutton Decl."), D.N. 128, ¶¶ 2-7;
18 Apple's Motion for Preliminary Injunction, D.N. 86 at 33 n. 10.) Nor does Samsung dispute that
19 Apple realized that further negotiations were futile when Samsung released a new round of
20 infringing products in February and March 2011. (Lutton Decl., D.N. 128,, ¶¶ 8-9.)

---

[3] Samsung refers to Apple's 'fifteen" patents, but seven are design patents governed by the simple test of whether an ordinary observer would consider the accused product to look substantially the same as the patented design. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677-78 (Fed. Cir. 2008) (en banc); Apple's Preliminary Injunction Motion, D.N. 86 at 11-12. Design patents generally do not require detailed claim construction because their scope depends primarily on the diagrams in the patent. *Id.* Apple's utility patents are also relatively simple. Indeed, in recent litigation, neither Nokia nor Apple sought a claim construction ruling on any terms of the '381 patent at issue in Apple's preliminary injunction motion. (D.N. 86 at 23.)

[4] Apple recognizes that its proposed schedule needs revision in view of recent developments, such as the Court's decision to hear Apple's motion for expedited trial on the same date as the Case Management Conference. Apple will submit an updated proposal that takes into account intervening developments in the Case Management Statement due August 17.

1       Samsung nevertheless contends that Apple is barred from seeking an expedited trial
2  because Apple chose to engage Samsung in negotiations, instead of suing Samsung immediately.
3  Samsung's "sue first, talk later" argument should be rejected. There is a strong public policy
4  favoring the resolution of disputes through negotiation instead of litigation. Apple should not be
5  penalized for seeking a negotiated resolution first, before suing its long-time supplier of key
6  components. Moreover, the extensive pre-litigation negotiations provided Samsung with ample
7  time to analyze Apple's claims and to prepare its response. Indeed, when Apple filed this action
8  in April 2011, Samsung immediately retaliated by filing a countersuit in this District, as well as
9  multiple lawsuits in several other countries. (*See* D.N. 35 at 4.)

10      Samsung also contends that Apple is barred from seeking an expedited trial because it did
11 not immediately move for an expedited trial upon filing this suit. But Apple moved to expedite
12 discovery a few days after filing this suit. Both parties have since been busy with matters related
13 to expedited relief, including Apple's and Samsung's motions for expedited discovery, Apple's
14 motion for a preliminary injunction motion, and conducting expedited discovery related to the
15 preliminary injunction. Apple filed its motion for an expedited trial on July 1, the same date as its
16 preliminary injunction motion.

17      Samsung asserts that Apple "delayed for months" in moving for a preliminary injunction,
18 but Apple reasonably sought to review Samsung's new products through expedited discovery
19 before filing its motion. Moreover, Apple did not obtain the U.S. version of Samsung's Galaxy
20 Tab 10.1 until after Samsung released it in the U.S. on June 8, 2011 (D.N. 87-37 at 2), so Apple
21 could not have sought a preliminary injunction against that product "months" earlier.

22      Samsung argues that Apple should have included *all* of its patent, trade dress, and
23 trademark claims in its preliminary injunction motion if it wanted expedited relief. If Apple had
24 done so, however, Samsung would certainly have sought a much longer period to conduct
25 discovery on Apple's preliminary injunction motion. Apple reasonably decided to focus its
26 motion on three design patents and a utility patent whose validity was confirmed in a
27 reexamination, so as to ensure that a preliminary injunction is issued as quickly as possible. At
28 the same time, Apple moved for expedited relief on its other claims through an expedited trial.

1  An expedited trial will provide Samsung with *more* time to conduct discovery and to prepare its

2  defenses than would have been available on a preliminary injunction. Thus, Samsung has no

3  basis to complain about Apple's reasonable decision to seek an expedited trial on its other claims,

4  rather than a preliminary injunction.[5]

5      In sum, Apple has sought expedited relief from the outset of this case and has acted

6  promptly and consistently to obtain such relief. Thus, there is no basis for Samsung's argument

7  that Apple's alleged delay in seeking expedited relief bars it from seeking an expedited trial.

## V.  APPLE DID NOT WAIVE ITS RIGHT TO REQUEST AN EXPEDITED TRIAL BY FILING THIS LAWSUIT IN THE DISTRICT WITH THE STRONGEST NEXUS WITH THIS CASE

10      Samsung contends that Apple somehow forfeited an expedited trial because it sued

11  Samsung in this District, where the average time to trial is about 23 months, rather than in a

12  different district that has a shorter average time to trial. Samsung ignores that this District is by

13  far the most logical place for this lawsuit, as it is the location of Apple's headquarters. This

14  District is also in a central area between the headquarters of the three Samsung defendants (Korea,

15  New Jersey, and Texas), and is closer to Korea than almost any other city in the continental U.S.

16  Moreover, Defendant Samsung Electronics America has a branch office in San Jose, and its

17  affiliate Samsung Information Systems America is based in San Jose and has sent representatives

18  to attend the San Jose court hearings.

19      Samsung asserts that Apple should have filed in a district known for its speedy docket

20  (such as the Eastern District of Virginia). Apple acted reasonably by filing this lawsuit in the

21  forum with the strongest nexus. By filing here, Apple did not waive the right to request an

22  expedited trial.

---

[5] Contrary to Samsung's assertion, the Court did not "observe" that "Apple had every opportunity to seek a preliminary injunction on any claims where it believed that it could show entitlement to expedited relief." (D.N. 111 at 11.) Rather, the Court simply stated that Apple had "an opportunity to obtain preliminary relief in this action." (D.N. 110 at 2.) The Court did not state that Apple should have sought preliminary relief on every claim. On the contrary, at prior hearings, the Court noted the difficulty in obtaining preliminary relief on utility patents whose claims had not been construed. This concern does not apply to an expedited trial conducted after the claims have been construed and infringement and validity discovery has been taken.

1       Samsung does not dispute that Federal Rule of Civil Procedure 16 confers broad

2  discretion to determine the case management schedule, and that courts have exercised this

3  authority to set expedited trials in intellectual property cases. *See* Fed. R. Civ. P. 16(a), 16(b);

4  Apple's Motion for Expedited Trial, D.N. 83 at 4. Samsung contends, however, that the Patent

5  Local Rules prescribe a "default" schedule for claim construction that must be followed except

6  "upon a showing of good cause." (Samsung's Opposition, D.N. 111 at 8.) But the Patent Local

7  Rules expressly authorize the Court to "modify the obligations or deadlines set forth in these

8  Patent Local Rules based on the circumstances of any particular case." Patent L.R. 1-3. They

9  further state: "Such modifications shall, in most cases, be made at the initial case management

10 conference, but may be made at other times upon a showing of good cause." *Id.* Thus, the Court

11 is free to adopt a modified schedule during the initial case management conference, without a

12 showing of "good cause." The good cause limitation applies only to modifications made "at other

13 times," such as *after* the initial schedule has been adopted.[6]

14      The flexible nature of the Patent Local Rules is confirmed by the Advisory Committee's

15 explanation of the 2008 amendment to Rule 1-3: "The provision governing modification of the

16 patent local rules applicable to a particular case has been bolstered to make clearer that such

17 modifications are encouraged where the circumstances of a particular case warrant." N.D. Cal.

18 Patent L.R. Committee Report, Jan. 2008 at 3. The original Patent Local Rules ("PLR") provided

19 similar flexibility to accelerate or extend dates, "affording the court a substantial degree of

20 flexibility in its application of the PLRs [that] appears to be overlooked by some commentators

21 who assert that the deadlines for filing disclosures under the PLRs are unduly rigid." Judge

---

[6] Samsung relies on inapposite non-patent cases that concerned a scheduling order that had *already* been adopted. *See Tele Atlas N.V. v. Navteq Corp.*, No. C-05-01673 RMW, 2008 WL 4809441 at *2 (N.D. Cal. Oct. 28, 2008) (Fed. R. Civ. P. 16(b)(4) required "good cause" to submit rebuttal expert report, in view of prior scheduling order that did not provide for rebuttal reports); *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (modification of previously entered scheduling order properly denied under Rule 16(b)). Samsung relies on equally inapposite cases involving amendment of infringement contentions that had already been served, which is a very different issue than setting an expedited schedule before disclosures have begun. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006); *Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co., Ltd.*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004). None of these cases suggests that the Patent Local Rules limit the Court's broad discretion to adopt an initial case management order that is tailored to the specific circumstances.

1  James Ware & Brian Davy, *The History, Content, Application and Influence of the Northern
2  District of California's Patent Local Rules*, 25 SANTA CLARA COMPUTER & HIGH TECH. L.J. 965,
3  980 (2009) (footnote omitted).

4  The Court has set the hearing on Apple's Motion for Expedited Trial for the same time as the initial Case Management Conference. (D.N. 110 at 2-3.) The parties are required to address in their Case Management Statement "[p]roposed modification of the obligations or deadlines set forth in these Patent Local Rules." Patent L.R. 2-1. Apple will submit an updated expedited schedule at that time that takes recent developments into account. Apple requests the Court to adopt an expedited schedule at the Case Management Conference, as authorized by Federal Rule of Civil Procedure 16 and the Patent Local Rules.

## CONCLUSION

In view of Samsung's blatant copying, Apple's infringement claims against Samsung are straightforward and can and should be heard quickly. Samsung's attempt to complicate these proceedings by dismissing its separate, later-filed action and then re-filing its action as counterclaims does not change this. Apple requests that the Court expedite the trial on Apple's claims against Samsung.

Dated:  July 22, 2011                         MORRISON & FOERSTER LLP


                                              By:    /s/ Michael A. Jacobs
                                                     Michael A. Jacobs

                                              Attorneys for Plaintiff
                                              APPLE INC.