HAROLD J. MCELHINNY (SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

KENNETH H. BRIDGES (SBN 243541)
kbridges@bridgesmav.com
MICHAEL T. PIEJA (SBN 250351)
mpieja@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone: (650) 804-7800
Facsimile: (650) 852-9224

Attorneys for Plaintiff
APPLE INC.

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

WILLIAM F. LEE (*pro hac vice* anticipated)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

STEPHEN E. TAYLOR (SBN 58452)
staylor@tcolaw.com
STEPHEN MCG. BUNDY (SBN 253017)
sbundy@tcolaw.com
JOSHUA R. BENSON (SBN 269111)
jbenson@tcolaw.com
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No.: C-11-01846 (LHK)<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP**<br><br>Date:  August 24, 2011<br>Time:  2:00 p.m.<br>Place:  Courtroom 8, 4th Floor<br><br>    Honorable Lucy H. Koh |

TAYLOR & CO.
LAW OFFICES, LLP

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................... 3

      A.    APPLE'S CLAIMS AGAINST SAMSUNG ...................................... 3

      B.    SAMSUNG'S CLAIMS AGAINST APPLE ...................................... 3

      C.    BRIDGES HAS OBSERVED THE LIMITS OF ITS REPRESENTATION ........... 4

      D.    THE PRIOR REPRESENTATION OF SAMSUNG ........................ 4

      E.    SAMSUNG'S EFFORTS TO DISQUALIFY BRIDGES ................. 6

III.  LEGAL ARGUMENT .................................................................................... 7

      A.    DISQUALIFICATION IS DISFAVORED AS A MATTER OF LAW,
            ESPECIALLY WHEN SOUGHT FOR TACTICAL ADVANTAGE. ................ 7

      B.    BRIDGES' LIMITED REPRESENTATION OF APPLE DOES NOT
            HAVE A "SUBSTANTIAL RELATIONSHIP"—OR INDEED ANY
            CONNECTION AT ALL—TO BRIDGES' PRIOR WORK FOR
            SAMSUNG. .......................................................................................... 7

            1.    Samsung's "playbook" argument relies on vague generalities and
                  fails to establish what sort of confidential information would be
                  "directly at issue" in Apple's affirmative case. ........................... 10

      C.    BRIDGES HAS PROPERLY LIMITED ITS REPRESENTATION TO
            APPLE'S AFFIRMATIVE CLAIMS. ............................................... 15

            1.    Samsung's permissive counterclaims cannot enlarge the scope of
                  Bridges' representation, or create a conflict where none existed
                  before. ........................................................................................... 16

      D.    THE COURT HAS THE POWER TO SEVER APPLE'S CLAIMS FROM
            SAMSUNG'S CLAIMS TO PROMOTE THE EFFICIENT
            ADMINISTRATION OF JUSTICE AND AVOID PREJUDICE TO
            APPLE. ............................................................................................... 19

      E.    ANY PUTATIVE DISQUALIFICATION SHOULD NOT EXTEND TO
            MORRISON OR WILMERHALE. ................................................... 20

IV.   CONCLUSION ............................................................................................. 21

TAYLOR & CO.
LAW OFFICES, LLP

i.

# **TABLE OF AUTHORITIES**

## **CASES**

*Akerly v. Red Barn System, Inc.*,
    551 F.2d 539 (3d Cir. 1977) .................................................................. 20

*Applewhite v. Reichhold Chems.*,
    67 F.3d 571 (5th Cir. 1995) ............................................................. 19, 20

*Arctic Cat, Inc. v. Polaris Indus.*,
    2004 U.S. Dist. LEXIS 25463 (D. Minn. Dec. 20, 2004) ...................... 10

*Banning Ranch Conservancy v. Superior Court*,
    193 Cal. App. 4th 903 (2011) .......................................................... 12, 14

*Brennan's Inc. v. Brennan's Rests., Inc.*,
    590 F.2d 168 (5th Cir. 1979) .................................................................. 20

*Ciba-Geigy Corp. v. Alza Corp.*,
    795 F. Supp. 711 (D.N.J. 1992) ............................................................. 10

*City and County of San Francisco v. Cobra Solutions, Inc.*,
    38 Cal. 4th 839 (2006) ...................................................................... 8, 17

*Concat LP v. Unilever, PLC*,
    350 F. Supp. 2d 796 (N.D. Cal. 2004) ..................................................... 7

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
    896 F. Supp. 505 (D. Md. 1995) ............................................................ 19

*Farris v. Fireman's Fund Ins. Co.*,
    119 Cal. App. 4th 671 (2004) ......................................................... passim

*Faughn v. Perez*,
    145 Cal. App. 4th 592 (2006) ..................................................... 8, 13, 14

*Fed. Home Loan Mortgage Corp. v. La Conchita Ranch Co.*,
    68 Cal. App. 4th 856 (1998) ................................................................. 19

*Fox Searchlight Pictures, Inc. v. Paladino*,
    89 Cal. App. 4th 294 (2001) ................................................................. 19

*Frazier v. Superior Court*,
    97 Cal. App. 4th 23 (2002) ................................................................... 20

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
    143 Cal. App. 4th 50 (2006) ........................................................... 13, 14

*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*,
    229 Cal. App. 3d 1445 (1991) .......................................................... 7, 10

TAYLOR & CO.
LAW OFFICES, LLP

*Hartford Cas. Ins. Co. v. Am. Dairy & Food Consulting Labs*,
    2010 U.S. Dist. LEXIS 70238 (E.D. Cal. June 17, 2010) .......................................... 11, 12

*Hilleby v. FMC Corp.*,
    25 U.S.P.Q.2d 1413 (N.D. Cal. 1992) .......................................... 15, 16, 17, 18

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
    No. C-00-20905, 2008 U.S. Dist. LEXIS 68625 (N.D. Cal. Aug. 14, 2008) ..................... 4

*In re Airport Car Rental Antitrust Litigation*,
    470 F. Supp. 495 (N.D. Cal. 1979) .......................................... 20

*In re Lillian P.*,
    238 Wis. 2d 449 (2000) .......................................... 18

*In re Marvel*,
    251 B.R. 869 (N.D. Cal. 2000) .......................................... 7

*In re Plant Insulation Co.*,
    414 B.R. 646 (N.D. Cal. 2009) .......................................... 15, 18

*Knight v. Ferguson*,
    149 Cal. App. 4th 1207 (2007) .......................................... 11

*Krzyzanowski v. Orkin Exterminating Co.*,
    2009 U.S. Dist. LEXIS 113200 (N.D. Cal. Nov. 19, 2009) .......................................... 8

*Largo Concrete, Inc. v. Liberty Mutual Fire Insur.*,
    2007 U.S. Dist. LEXIS 95690 (N.D. Cal. Dec. 31, 2007) .......................................... 18

*Liberty Nat'l Enters. v. Chicago Title Ins. Co.*,
    194 Cal. App. 4th 839 (2011) .......................................... 14

*Microsoft Corp. v. Commonwealth Scientific & Indus. Research Org.*,
    2007 U.S. Dist. LEXIS 91550 (E.D. Tex. Dec. 13, 2007) .......................................... 10

*Openwave Systems v. 724 Solutions, Inc.*,
    2010 U.S. Dist. LEXIS 49628 (N.D. Cal. Apr. 22, 2010) .......................................... 10, 12, 13

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*,
    760 F.2d 1045 (9th Cir. 1985) .......................................... 7

*Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*,
    2011 U.S. Dist. LEXIS 78786 (N.D. Cal. July 20, 2011) .......................................... 20

*Panduit Corp. v. All States Plastic Mfg. Co.*,
    744 F.2d 1564 (Fed. Cir. 1984) .......................................... 20

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Systems, Inc.*,
    20 Cal. 4th 1135 (1999) .......................................... 7

*Smith v. Whatcott*,
    774 F.2d 1032 (10th Cir. 1985) .......................................... 20

iii.

TAYLOR & CO.
LAW OFFICES, LLP

*Sumitomo Corp. v. J.P. Morgan & Co.*,
  2000 U.S. Dist. LEXIS 1252 (S.D.N.Y. Feb. 7, 2000) ........................................ 17

*Synergy Tech & Design, Inc. v. Terry*,
  2007 U.S. Dist. LEXIS 34463 (N.D. Cal. May 2, 2007) ........................................ 7

*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*,
  6 Cal. App. 4th 1050 (1992)........................................................................ 19

*UMG Recordings, Inc. v. MySpace, Inc.*,
  526 F. Supp. 2d 1046 (C.D. Cal. 2007)............................................................ 20

*United States v. Cheshire*,
  707 F. Supp. 235 (M.D. La. 1989) ................................................................ 18

*United States v. Edwards*,
  39 F. Supp. 2d 716 (M.D. La. 1999) .............................................................. 18

*Visa U.S.A., Inc. v. First Data Corp.*,
  241 F. Supp. 2d 1100 (N.D. Cal. 2003) ............................................................ 7

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,
  2007 U.S. Dist. LEXIS 96132 (C.D. Cal. Jan. 17, 2007)................................9, 12, 13

## RULES

Cal. R. Ct. 8.204(a)(1)(C) .................................................................................. 14

California Proposed Rule of Professional Conduct 1.9(a) (Sept. 2010) ...................... 15

California Rule of Professional Conduct 3-310(E) ..........................................7, 17

Fed. R. Civ. P. 21 ............................................................................................ 19

Fed. R. Civ. P. 42 ............................................................................................ 19

Fed. R. Evid. 602............................................................................................. 11

Fed. R. Evid. 802............................................................................................. 11

Fed. R. Evid. 901............................................................................................. 11

Local Rule 3-12(a) ............................................................................................ 4

## OTHER AUTHORITIES

4-21 Moore's Federal Practice, § 21.02[4] (2011) ........................................... 19

Charles W. Wolfram, *Former Client Conflicts*, 10 Geo. J. Legal Ethics 677, 724 (1997) ....... 12, 15

D.C. Bar Legal Ethics Comm. Opinion No. 343 (Feb. 2008).............................. 15

TAYLOR & CO.
LAW OFFICES, LLP

N.Y.C. Bar Ass'n Comm. on Prof. and Judicial Ethics, Formal Opinion No. 2001-3, 2001
WL 1870201 (July 6, 2001) .......................................................................................... 15

Paul W. Vapnek et al., *Professional Responsibility*, § 4:327.5 (The Rutter Group 2010)........ 18, 20

Restatement (Third) of the Law Governing Lawyers § 123 (2000)..................................... 20

Restatement (Third) of the Law Governing Lawyers § 132 (2000)................................ 12, 15

Ronald D. Rotunda, *Resolving Conflicts by Hiring 'Conflicts Counsel'*, 62 Hastings L.J.
677, 691, 699 (2011) .................................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES
& MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

# I.   INTRODUCTION

Disqualification is designed to remedy actual conflicts, not illusory ones. Samsung seeks to deprive Apple of its counsel, Bridges & Mavrakakis LLP, on the basis of a representation the law firm did not agree to undertake, has not undertaken, and which is being handled by a separate law firm. As a matter of settled law in this district and elsewhere, Samsung's motion should be denied.

This action involves two wholly distinct sets of claims. Apple's claims, as asserted in its First Amended Complaint, allege Samsung's infringement of Apple intellectual property involving the look, feel, and user interface of the iPhone, iPad, and iPod touch. Samsung's claims, originally filed as a separate civil action, are based largely on the alleged infringement of Samsung patents involving protocols for wireless communication between a mobile device and a cellular network. These separate sets of claims are now housed under one case number only because, shortly before bringing this motion, Samsung dismissed its separate action and refiled its claims as permissive counterclaims in the present case.

As suggested by Samsung's original separate civil action, and as confirmed by the pleadings, Apple's claims and Samsung's claims have no common issues of law, fact, or technology. Consistent with this, Apple elected to be represented by different law firms in each case. To prosecute Apple's affirmative claims, Apple has retained Morrison & Foerster LLP ("Morrison") and Bridges & Mavrakakis LLP ("Bridges"). To defend against Samsung's unrelated claims, Apple has retained Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale").

Bridges recognized from the outset of its representation of Apple that there are limits to its ability to act adversely to Samsung. While at Kirkland & Ellis, several Bridges lawyers represented Samsung in matters related to certain current Samsung counterclaims. Accordingly, upon commencing work on Apple's claims in 2010, Bridges informed Apple that it was unable to, and would not, represent Apple in any matter related to its prior work for Samsung. As a result, Apple and Bridges limited the scope of the representation to Apple's claims against Samsung. That limitation was reconfirmed in the spring of 2011. Bridges has at all times honored that

limitation. It has not played any role in defending Apple from Samsung's claims.

Samsung nonetheless insists that, because Apple's claims and Samsung's claims are now housed under one case number, disqualification is mandatory. This argument must be rejected, for three reasons.

First, Bridges' limited representation of Apple is not substantially related to its lawyers' prior representation of Samsung. The current and prior representations share no overlap in contested legal issues, facts, products, or technology, grew out of different competitive environments, and are separated in time by almost four years in a rapidly changing marketplace. Samsung's further argument that Bridges learned a specialized litigation "playbook" relevant to Apple's claims is unsupported by the evidence and barred by California law.

Second, the limitation on the scope of the representation that Apple and Bridges established is fully effective to eliminate a possible conflict. Caselaw from this district, California's current and proposed ethics rules, and leading national authorities all recognize the validity of limited representation to avoid a former-client conflict, especially where, as here, the other matter is factually discrete, easily severable, and handled by a separate law firm.

Third, Samsung's tactical decision to dismiss its separate action and bring unrelated claims into this case cannot change the scope of Bridges' representation. A change in case caption does not convert a proper representation into an improper one. Any other result would allow Samsung to unilaterally alter the scope of Apple's attorney-client relationships, defeat its choice of counsel, and prejudice its prospects in this litigation—all without any showing of actual or threatened harm to Samsung.

Finally, if there is any residual concern on the part of Samsung or the Court based on the two cases having been combined into a single action (as a result of Samsung's tactical decision to do so), Apple respectfully suggests that the proper and equitable remedy would be to sever the two cases and proceed with Apple's claims as a separate matter—as Apple suggested in its pending motion for an expedited trial.

## II.    FACTUAL BACKGROUND

### A.    APPLE'S CLAIMS AGAINST SAMSUNG

Apple filed its Complaint against Samsung in the present action on April 15, 2011, and its First Amended Complaint on June 16, 2011. In its Complaint, Apple alleges that Samsung's new line of Android-based smartphones and tablets infringe several Apple intellectual property rights that cover the distinctive design and user interface of products such as the iPhone, iPad, and iPod touch, and the software and hardware associated with the multitouch user interfaces of those products. In particular, Apple asserts ten design and utility patents and also brings claims for trademark infringement, trade dress infringement, and unfair competition.

To pursue its intellectual property claims against Samsung, Apple retained Morrison and Bridges. Declaration of Jayna Whitt in Support of Opposition ("Whitt Decl."), ¶ 4. Bridges attorneys are very familiar with Apple's patent portfolio, having performed detailed intellectual property and technical analysis for Apple in the past. Declaration of Kenneth H. Bridges in Support of Opposition ("Bridges Decl."), ¶ 38. The Bridges attorneys have also spent a significant amount of time analyzing whether Apple's intellectual property rights have been infringed by Samsung and other Android-based mobile-phone manufacturers. Bridges Decl., ¶¶ 7, 38; Declaration of Michael T. Pieja in Support of Opposition ("Pieja Decl."), ¶ 8.

At the beginning of this representation of Apple, the Bridges attorneys made clear that they could not represent Apple in any matter relating to their prior representation of Samsung. Bridges Decl., ¶¶ 28, 29; Whitt Decl., ¶ 6. Accordingly, Bridges attorneys and Apple limited the scope of the representation to Apple's intellectual property claims against Samsung's Android-based smartphones and tablets, and agreed that Bridges attorneys would not work on any Samsung patents or related claims. That limitation was reconfirmed in April 2011. Bridges Decl., ¶¶ 28, 29.

### B.    SAMSUNG'S CLAIMS AGAINST APPLE

On April 27, 2011, Samsung filed a separate civil action against Apple in the United States District Court for the Northern District of California, Case No. C-11-02079. The Samsung complaint alleged the infringement of several Samsung patents involving UMTS wireless

TAYLOR & CO.
LAW OFFICES, LLP

1  communications standards. Apple retained the law firm of WilmerHale to defend the Samsung

2  complaint. Whitt Decl., ¶ 5.

3       All of Samsung's original claims involved different legal, factual, and technical issues than

4  Apple's claims.[1]  There is no overlap in file histories, inventors, or technical standards, or any

5  similarity among issues of claim construction, infringement, or invalidity.  For example, while

6  Apple's patents center on the design of, and user-interface technology used in, the iPhone and

7  iPad, Samsung's patents largely involve aspects of the protocols used to implement UMTS

8  wireless communications between a mobile device and the cellular network.

9       **C.    BRIDGES HAS OBSERVED THE LIMITS OF ITS REPRESENTATION**

10      Bridges has had no involvement in Apple's defense of Samsung's claims.  Bridges Decl.,

11 ¶ 8.  It has never advised Apple or any of its outside counsel, including WilmerHale and Morrison,

12 on any issues related to Samsung's claims.  It has never communicated any Samsung confidential

13 information to Apple or to anyone representing Apple.  Bridges Decl., ¶ 36; Pieja Decl., ¶ 18;

14 Declaration of Christopher Lubeck in Support of Opposition ("Lubeck Decl."), ¶ 8; Declaration of

15 James A. Shimota in Support of Opposition ("Shimota Decl."), ¶ 8; Declaration of Howard E.

16 Levin in Support of Opposition ("Levin Decl."), ¶ 8; Declaration of Brian C. Kwok in Support of

17 Opposition ("Kwok Decl."), ¶ 10; Declaration of Thomas C. Mavrakakis in Support of Opposition

18 ("Mavrakakis Decl."), ¶ 7.  WilmerHale has worked to defend Apple from Samsung without any

19 input from Bridges.  Declaration of Mark Selwyn in Support of Opposition ("Selwyn Decl."), ¶ 6.

20 This division of representation has continued even following Samsung's decision on June 30,

21 2011 to refile its case as permissive counterclaims in the present action.

22      **D.    THE PRIOR REPRESENTATION OF SAMSUNG**

23      Bridges attorneys have recognized from the outset the ethical limitations flowing from

24

25 [1]  The Court previously related the two cases under Local Rule 3-12, a designation designed to
26 "preserve judicial economy."  *See Hynix Semiconductor, Inc. v. Rambus, Inc.*, No. C-00-20905,
   2008 U.S. Dist. LEXIS 68625, at *13 (N.D. Cal. Aug. 14, 2008).  Under the text of the rule, the
27 only additional factor required for cases to be related is that both involve "substantially the same
   parties" in the two actions—not an overlap in law, fact, or asserted claims.  Local Rule 3-12(a)(1).
28

their prior representation of Samsung.  Those limitations arise from work that certain Bridges attorneys performed when they were employed at a different law firm, Kirkland & Ellis LLP, mostly in 2006-2007.  Bridges Decl., ¶¶ 12-14; Pieja Decl., ¶¶ 9, 10; Kwok Decl., ¶ 4; Levin Decl., ¶¶ 4, 5; Shimota Decl, ¶ 4; Lubeck Decl., ¶ 4.  Although Samsung mentions three representations in its moving papers, only one, the "*Ericsson*" litigation, is alleged to have any connection to the issues in dispute.[2]

The *Ericsson* litigation commenced in February 2006 and settled in July 2007.  That litigation concerned an older generation of cellular telephone products—none of which are at issue here.  Bridges Decl., ¶¶ 12, 13, 22, 24.  Samsung and Ericsson litigated in the International Trade Commission ("ITC") and the Eastern District of Texas.  Bridges Decl., ¶ 14.  Samsung filed a complaint against Ericsson in the ITC asserting Samsung patents related to certain GSM and UMTS wireless standards, particularly certain aspects of the low-level protocols used to encode and compress data for air transmission, as well as a dictaphone-like voice recording functionality.  Ericsson responded with its own ITC complaint, accusing Samsung of infringing Ericsson patents related to mobile phone power management, key pads, SIM cards, LCD backlighting, multimode transceivers, and power amplifiers.  Due to the relative schedules of the cases, the litigation between the parties in the Eastern District of Texas remained at a relatively early stage when the parties settled.

The Bridges lawyers' representation of Samsung in *Ericsson* involved one of the same patents that has been asserted in Samsung's current counterclaims (the'604 patent).  Bridges Decl., ¶ 20.  The former representation also involved Ericsson's defense that Samsung was obligated to license its patents on fair, reasonable and non-discriminatory ("FRAND") terms.  Bridges Decl.,

---

[2]  The Motion and Kim Declaration reference, but provide no details about, two other prior representations: the *Spansion* and *Dicam* matters.  In *Spansion*, Bridges attorneys worked on patents related to flash memory and semiconductor etching equipment.  Lubeck Decl., ¶ 4; Levin Decl., ¶ 5.  In *Dicam*, a Bridges attorney worked briefly on a case that public filings show involved the assertion of a 1989 patent related to a handheld personal security system.  Shimota Decl, ¶ 4; *Dicam, Inc. v. United States Cellular Corp.*, Case No. 1:07-CV-05668 (Docket Item No. 1, Oct. 5, 2007).

¶ 28.  Apple, represented by WilmerHale, has asserted such a defense here.  Recognizing the potential overlap between the *Ericsson* representation and Samsung's current claims, Bridges and Apple have excluded Samsung's claims from the scope of Bridges' representation, and Bridges has never worked on them.  Bridges Decl., ¶¶ 28, 29.

## E.  SAMSUNG'S EFFORTS TO DISQUALIFY BRIDGES

The involvement of Bridges attorneys in Apple's affirmative claims against Samsung has been known to Samsung for almost a year.  On September 9, 2010, Bridges attorneys Thomas Mavrakakis and Michael Pieja attended a meeting with Apple's Senior Director and Chief Patent Counsel, Richard Lutton, Jr., and five Samsung employees.  The Bridges attorneys introduced themselves by name, and identified their firm as counsel for Apple in the matter.  Mr. Lutton and Mr. Mavrakakis then made a presentation to discuss Samsung's infringement of Apple's patents and intellectual property rights.  Bridges Decl., ¶ 9; Pieja Decl., ¶ 5; Mavrakakis Decl., ¶ 5.

Bridges appeared in this action on Apple's First Amended Complaint on June 16, 2011.  Bridges Decl., ¶ 4.  On June 27, 2011, Bridges received a letter addressed to Kenneth Bridges from counsel for Samsung, Quinn Emmanuel attorney Victoria Maroulis.  Pieja Decl., ¶ 14.  In her letter, Ms. Maroulis raised questions for the first time about a potential conflict between Bridges' work on Apple's claims and its prior representation of Samsung.  On June 29, 2011, Bridges attorney Michael Pieja responded to the letter by explaining that Apple's case did not involve any issues related to the prior work for Samsung. Pieja Decl., ¶ 15.  The next day, Samsung dismissed its separate civil action against Apple and refiled substantially the same case as permissive counterclaims in the present action.[3]  Bridges Decl., ¶ 32.  Eleven days later, Samsung filed the present disqualification motion.

---

[3] Compared with its earlier separate complaint, Samsung's counterclaims added certain utility patents, but none is related to Apple's claims.  The additional Samsung patents involve camera functions (the '893 and '460 patents), playback of MP3 music files (the '711 patent), and time zones (the '055 patent).  Only one of Samsung's twelve patents relates to the user interface (the '871 patent), and that patent involves dividing the display into separate areas when composing a text message—a feature none of Apple's asserted patents addresses. (Docket Item No. 80.)

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES
& MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

1

2                    III.    **LEGAL ARGUMENT**

3    A.    **DISQUALIFICATION IS DISFAVORED AS A MATTER OF LAW,
           ESPECIALLY WHEN SOUGHT FOR TACTICAL ADVANTAGE.**

4

5        Motions for disqualification are viewed skeptically, judged strictly, and denied routinely.

6    Disqualification is a "drastic measure which courts should hesitate to impose except when of

7    absolute necessity." *In re Marvel,* 251 B.R. 869, 871 (N.D. Cal. 2000); *Concat LP v. Unilever,*

8    *PLC,* 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004); *see also Visa U.S.A., Inc. v. First Data Corp.,*

9    241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) ("strongly disfavored").

10       Disqualification is disfavored because it frustrates the client's right to counsel, impinges on

11   the attorney's interest in a representation, and imposes a financial burden in replacing disqualified

12   counsel. *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Systems, Inc.,* 20 Cal. 4th 1135,

13   1144-45 (1999). In addition, disqualification is often "used for purely strategic purposes to delay

14   the litigation, harass the opposing party or pressure for a more favorable settlement." *H.F.*

15   *Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal. App. 3d 1445, 1454 (1991). Such tactical

16   abuse "derail[s] the efficient progress of litigation" and imposes significant "cost and

17   inconvenience to clients and the judicial system." *Synergy Tech & Design, Inc. v. Terry*, 2007

18   U.S. Dist. LEXIS 34463 at *18 (N.D. Cal. May 2, 2007).

19       Accordingly, motions to disqualify are subject to "particularly strict judicial scrutiny,"

20   *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985), and the

21   moving party bears a "heavy burden and must satisfy a high standard of proof." *In re Marvel*, 251

22   B.R. at 871. When Samsung's motion is subject to this exacting standard, it must fail.

23   B.    **BRIDGES' LIMITED REPRESENTATION OF APPLE DOES NOT HAVE
           A "SUBSTANTIAL RELATIONSHIP"—OR INDEED ANY CONNECTION
24         AT ALL—TO BRIDGES' PRIOR WORK FOR SAMSUNG.**

25       California Rule of Professional Conduct 3-310(E) states that a lawyer shall not accept

26   employment adverse to a former client if the lawyer obtained "confidential information material to

27

28

the [present] employment."[4]  When there is a "substantial relationship" between successive representations, the acquisition of material information is presumed.  *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846-47 (2006).  The "evaluation of whether the two representations are substantially related centers precisely upon the factual and legal similarities of the two representations."  *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 679 (2004).[5]

Instead of merely alleging "subject matter overlap" between the two representations (Motion at 5:1, 13:22), Samsung has the burden of setting forth "direct evidence" that the facts or issues involved in the prior representation, or the type of confidential information presumptively acquired, would be material to Apple's claims.  *See Faughn v. Perez*, 145 Cal. App. 4th 592, 595-96, 601-02 (2006).  Information is "material" to the second representation only if it is "directly in issue or of critical importance."  *Farris*, 119 Cal. App. 4th at 680.  Samsung cannot make this showing because nothing from the prior representation has any connection to the evaluation, prosecution, settlement, or accomplishment of Apple's current claims.[6]

Specifically, Bridges' present representation of Apple involves wholly different patents, products, claims, and technologies from the representation its lawyers undertook for Samsung while at Kirkland & Ellis.  In their prior work for Samsung in *Ericsson* (as described further in Part II.D), Bridges lawyers assisted in litigation between Samsung and Ericsson in the ITC

---

[4]  A federal court sitting in California "applies California law and looks to California standards of professional responsibility in determining matters of disqualification."  *Krzyzanowski v. Orkin Exterminating Co.*, 2009 U.S. Dist. LEXIS 113200, *8 (N.D. Cal. Nov. 19, 2009).

[5]  While Samsung states in passing that Bridges attorneys "acquired confidential information" (9:22-23), it does not set forth any evidence of the actual receipt of such information, relying instead on the substantial relationship test throughout its motion.  *See Faughn v. Perez*, 145 Cal. App. 4th 592, 604 (2006) ("notwithstanding the general assertion made in its moving papers, [the moving party] did not rely on [the lawyer's] actual knowledge of confidential information as the basis for its motion").

[6]  The majority of Samsung's motion discusses the relationship between the prior work for Samsung and Samsung's *counterclaims*—a relationship Bridges concedes and has never questioned.  As set forth below, Samsung's discussion of this point is not relevant, because Bridges' representation does not extend to Samsung's claims.  *See* Parts II.C-D.

TAYLOR & Co.
LAW OFFICES, LLP

concerning an older generation of cellular telephones based on fundamentally different software.[7]
Bridges Decl., ¶¶ 21-25. The Samsung patents in those matters related primarily to certain aspects
of the GSM and UMTS wireless standards, while Ericsson's patents covered discrete technical
aspects of cellular devices, such as power management, key pads, SIM cards, LCD backlighting,
multimode transceivers, and power amplifiers. No patents involved touchscreen technology,
touch-based user interfaces, or the Android operating system. Bridges Decl., ¶ 22.

In contrast, Apple's current claims address whether Samsung's Android-based
smartphones and tablets copy the look, design, and user interface of the iPhone, iPad, and iPod
touch, and infringe Apple patents relating to multitouch hardware and software. The prior and
current representations therefore have no overlap in patents, products, or technologies. Indeed,
Samsung did not market an Android-based phone until two years *after* the prior representation in
*Ericsson* ended. Bridges Decl., ¶¶ 22-26; Pieja Decl., ¶ 11. Likewise, none of the phones at issue
in *Ericsson* is marketed or sold today. None forms the basis of any Apple claims. None of the
patents at issue in *Ericsson* relate to any of Apple's claims. As compared to the issues in
*Ericsson*, Apple's patents do not cover wireless communications standards. The Samsung devices
accused of infringing Apple's patents did not exist at the time of *Ericsson* and use entirely
different operating systems and user interfaces. Bridges Decl., ¶ 20-24; Pieja Decl., ¶ 10-11. In
short, the two representations are devoid of any "factual and legal similarities" that would
demonstrate a substantial relationship.

Samsung's repeated assertions that both representations involve "mobile devices" or
"mobile technology" (2:9, 2:12, 11:18-19, 13:23, 13:26) cannot overcome this failure of proof. "It
takes more than similar general subject matter, like 'insurance coverage' or 'tax liability,' to
warrant disqualification." *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, 2007 U.S. Dist.
LEXIS 96132, *14 (C.D. Cal. Jan. 17, 2007); *see also H.F. Ahmanson & Co.*, 229 Cal. App. 3d at

_____

[7] As described further in footnote 2, the *Spansion* and *Dicam* matters have no conceivable
connection to Apple's claims, and Samsung concedes as much with the lack of argument or detail
about them.

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES
& MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

1456 (no relationship simply because both representations concerned "the general subject of credit risk protection"). Courts are particularly wary of finding overlap in patent cases simply because a set of patents shares the same technological field. *See generally Openwave Systems v. 724 Solutions, Inc.*, 2010 U.S. Dist. LEXIS 49628, *10 (N.D. Cal. Apr. 22, 2010) (insufficient that "both [sets of patents] enable mobile subscribers to access information stored on the Internet from mobile phone devices") (internal quotation marks omitted). Samsung's references to "mobile technology" are particularly unpersuasive when Samsung's lead counsel has already admitted that, due to the rapid change in the mobile industry, "these phones, they have a shelf life, they're like cabbage, you have a shelf life of six months to a year max." (6/17/11 Tr. at 32:11-14.)

Several courts have denied disqualification in patent cases despite a stronger showing of similarity than Samsung makes here. *See, e.g., Microsoft Corp. v. Commonwealth Scientific & Indus. Research Org.*, 2007 U.S. Dist. LEXIS 91550 (E.D. Tex. Dec. 13, 2007) (that both patent representations "involved wireless LAN technologies" insufficient to support disqualification); *Ciba-Geigy Corp. v. Alza Corp.*, 795 F. Supp. 711 (D.N.J. 1992) (that both patent representations involved "transdermal patch" technology insufficient); *Arctic Cat, Inc. v. Polaris Indus.*, 2004 U.S. Dist. LEXIS 25463 (D. Minn. Dec. 20, 2004) (similar). These authorities are instructive, especially because Samsung offers no evidence or explanation for how the prior representation in *Ericsson* involved the same legal, factual, or technical issues as Apple's current claims.

   1.   **Samsung's "playbook" argument relies on vague generalities and fails to establish what sort of confidential information would be "directly at issue" in Apple's affirmative case.**

Because there is no overlap between the *Ericsson* litigation and Apple's affirmative case, Samsung's argument reduces essentially to the assertion that Bridges attorneys (and Kenneth Bridges in particular) obtained confidential information about Samsung litigation strategies, decision-makers, and business practices—that is, they learned Samsung's litigation "playbook." (Motion 13-15).[8]

---

[8] While the Kim Declaration references other matters involving Bridges attorneys, including the *Spansion* and *Dicam* matters, the only "playbook" evidence offered concerns Kenneth Bridges and (footnote continued)

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

TAYLOR & CO.
LAW OFFICES, LLP

But California "did not adopt the so-called playbook approach" to former-client conflicts urged by Samsung. *See Farris*, 119 Cal. App. 4th at 680; *Hartford Cas. Ins. Co. v. Am. Dairy & Food Consulting Labs*, 2010 U.S. Dist. LEXIS 70238, *9 (E.D. Cal. June 17, 2010) ("exposure to general play book information…is not sufficient to disqualify an attorney") (quotation marks omitted).[9]  Where, as here, successive representations lack any legal or factual similarities, a lawyer will not be disqualified on the basis of generalized testimony that the lawyer received information about the former client's structure, personnel, practices, or litigation philosophy. *Farris*, 119 Cal. App. 4th at 680.

For example, Samsung repeatedly suggests that Bridges lawyers learned Samsung's "litigation strategy" (13:27-14:1), "strategy regarding patent litigation in general" (6:18-19), "patent litigation defense strategies" (8:4-5), "global litigation strategy" (2:8-9), "litigation-strategy decisions" (13:26-27), "highly sensitive litigation tactics and strategies" (14:21-22), and "fundamental strategies" (7:25); Kim Dec. ¶ 7.  Samsung also argues that Bridges knows about "Samsung's approach to patent litigation" (2:16-17), "the inner workings of Samsung's IP Legal Group" (15:1-2), "decision-making tendencies" (2:28-3:1), and "the way in which Samsung pursues and defends itself in patent litigation" (14:24-25); Kim Dec. ¶ 7-8.  But knowledge of "a former client's general litigation or settlement strategy is not sufficient to disqualify an attorney."

---

his work on *Ericsson*.  Kim Dec. ¶¶ 6-8.  Further, there is no assertion or argument that the work of the more junior Bridges lawyers involved with *Ericsson* concerned anything other than typical patent defense and document review.  Kim Dec. ¶¶ 9-11.  Apple also objects to the Kim Declaration on grounds of evidentiary inadmissibility.  First, paragraphs 14-15 are inadmissible because Ms. Kim lacks personal knowledge of the *Spansion* matter.  Fed. R. Evid. 602.  Second, paragraphs 12-14 are inadmissible because Ms. Kim lacks person knowledge of the hours allegedly billed.  *Id.*  Finally, Exhibits 1-3 are inadmissible because they have not been properly authenticated, Fed. R. Evid. 901, and are hearsay.  Fed. R. Evid. 802.

[9]  Samsung relies on *Knight v. Ferguson*, 149 Cal. App. 4th 1207, 1215 (2007), for the proposition that "knowledge about the former client's attitudes, practices, business customs, litigation philosophy, strengths, weaknesses or strategy" may be sufficient, standing alone, to warrant disqualification.  *Knight,* however, was a case where the lawyer in question had switched sides by suing his former client on the very same lease and partnership agreement that had been the subject of the prior representation.  The statement in *Knight* was therefore unnecessary to the decision, and, as shown herein, is contrary to the holdings of other decided cases.

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

1 | *Hartford*, 2010 U.S. Dist. LEXIS 70238 at *9; *Farris*, 119 Cal. App. 4th at 680 (same); *Wingnut*

2 | *Films*, 2007 U.S. Dist. LEXIS 96132 at *17-18 (same). Similarly, "generalized information

3 | [about a company's] approach to patent issues . . . would not support disqualification." *Openwave*

4 | *Systems*, 2010 U.S. Dist. LEXIS 49628 at *17-18, *see also Banning Ranch Conservancy v.*

5 | *Superior Court*, 193 Cal. App. 4th 903, 918 (2011) ("special insight" into the client's "approach to

6 | land use matters" insufficient for disqualification).

7 |     Instead, to justify disqualification, the former client has the burden of proving both that

8 | (1) the scope, intensity, and duration of the prior representation supports an inference that the

9 | lawyer actually learned a specialized "playbook," and (2) such client-specific information is

10 | "material" to the second representation, meaning it is "directly in issue or of critical importance."

11 | *See Farris*, 119 Cal. App. 4th at 680; *Wingnut Films*, 2007 U.S. Dist. LEXIS 96132 at *14 (the

12 | lawyer must have had "pervasive participation and [a] personal role in shaping the same practices

13 | and procedures under attack in the subsequent lawsuit"); *accord,* Restatement (Third) of the Law

14 | Governing Lawyers § 132 cmt. d(iii) (2000) (only when playbook "information will be directly in

15 | issue or of unusual value in the subsequent matter will it be independently relevant in assessing a

16 | substantial relationship") (cited with approval in *Farris*); Charles W. Wolfram, *Former Client*

17 | *Conflicts*, 10 Geo. J. Legal Ethics 677, 724 (1997) ("Wolfram, *Former Client Conflicts*") (same).

18 |     The reason for requiring a showing of "materiality" is straightforward: Because playbook

19 | information would presumably "equally benefit the new client in *any* sort of proceeding, whether

20 | (otherwise) substantially related or not," disqualification based solely on such information "would

21 | portend both over-application of the substantial relationship test and a large increase in the number

22 | of motions to disqualify." *Id.* at 723.

23 |     The standard for disqualification is a demanding one. In those rare cases in which an

24 | outside lawyer has been disqualified solely on the basis of imputed playbook knowledge, the

25 | former client has presented compelling evidence that the attorney learned the client's distinctive

26 | litigation strategy through extended representation on multiple matters, and that the same policies,

27 | practices, or decision-makers are centrally at issue in the current litigation. *See, e.g., Farris,* 119

28 | Cal. App. 4th at 684 (coverage policies of former client that lawyer personally developed in over

200 separate representations were at the heart of the "evidentiary inquiry" in the present case). Conversely, when proof supporting either element is lacking, disqualification is denied. *Faughn*, 145 Cal. App. 4th at 610; *Fremont Indem. Co. v. Fremont Gen. Corp.*, 143 Cal. App. 4th 50, 69 (2006); *Wingnut Films*, 2007 U.S. Dist. LEXIS 96132 at *12, 18 (that attorney was "in a position to receive some confidential information about [defendant's] music business practices" did not amount to a "pervasive personal involvement with the 'first look' [soundtrack] agreements" that were the subject of the second representation).

Samsung's playbook claims do not satisfy either element of the standard. There is nothing in the documented scope or duration of Mr. Bridges' single representation of Samsung to support an inference that specialized information about Samsung's world-wide patent litigation strategy "would normally have been imparted to [him] under the facts of the *actual* lawyer-client relationship shown by the record." *Openwave Systems*, 2010 U.S. Dist. LEXIS 49628 at *14-15.[10] To the contrary, Mr. Bridges' work for Samsung was largely limited to the defense against a discrete set of technical Ericsson patents in the International Trade Commission. Bridges Decl., ¶¶ 14, 15. He did not develop, set, or participate in global litigation strategy or policy-making. *Id.* ¶ 16. He did not participate in negotiations for the settlement of the case. *Id.* ¶ 17. Indeed, Mr. Bridges was not even the senior lawyer at Kirkland & Ellis on the *Ericsson* team. Other more senior lawyers handled strategic decision-making and client interaction. *Id.* ¶ 16. In fact, Mr. Bridges was instructed that all contact with Samsung should be channeled through the senior team members, and that he should not initiate contact with Samsung independently on matters of any significance to the case—hardly the mark of someone privy to, let alone formulating, Samsung's global litigation strategy. *Id.* ¶ 18.

There is nothing here remotely approaching the level of involvement with company policies and personnel demonstrated in *Farris*. 119 Cal. App. 4th at 684-85 (moving party showed

---

[10] Had Mr. Bridges actually learned such information, Samsung could easily have demonstrated as much while protecting actual confidences. Playbook information concerns "facts that were within [Samsung's] control and that could have been disclosed without compromising confidential information." *See Faughn*, 145 Cal. App. 4th at 610.

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES
& MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

that attorney was "instrumental in formulating those strategies and philosophies" that involve "identical legal issues," including helping "develop, modify, and interpret [company] practices, policies and procedures" involved in present litigation).[11]

More fundamentally, Samsung has failed to offer any direct evidence that four-year-old information about Samsung's patent strategy or business plans—had such information even been acquired—would be "directly in issue or of unusual value" to Apple's claims. *See Farris*, 119 Cal. App. 4th at 681; *Fremont*, 143 Cal. App. 4th at 69. The dissimilarity of the two matters belies an inference of materiality, and Samsung offers no explanation for what particular information would be relevant, or how. "Omitted facts become conspicuous by their omission, particularly where the motion involved, like a motion to disqualify counsel, has the potential for tactical abuse." *Faughn*, 145 Cal. App. 4th at 601 (citation omitted).

Samsung has failed to carry its burden. The only plausible reading of the facts is that, given the narrow scope of the prior representation, the passage of time, the different products, patents, and technologies, the rapid change in mobile phone technology, and the discrete posture of the two cases, Bridges attorneys obtained no specialized "playbook" information directly relevant to Apple's current claims. To conclude otherwise would be to adopt the sort of *de facto* "lifetime prohibition against future representation of an opposing party" that the case law disfavors. *See Banning Ranch*, 193 Cal. App. 4th at 918.

---

[11] Some of Samsung's allegations about Bridges attorneys are also unsupported by the record, which is grounds enough for concluding that Samsung has not met its burden. *See Faughn*, 145 Cal. App. 4th at 601. For example, Samsung claims that Bridges attorneys obtained "highly confidential technical and financial information" about Samsung mobile devices (8:3-4), learned how "Samsung assesses risk for patent litigation" (15:4), and identified "personal pressure points" (8:6-7). These assertions are found nowhere in the Kim Declaration or any other part of the record. When the record repeatedly fails to support assertions made in the motion, the moving party has "failed to carry its burden." *Faughn*, 145 Cal. App. 4th at 610; *see also Liberty Nat'l Enters. v. Chicago Title Ins. Co.*, 194 Cal. App. 4th 839, 846 (2011) ("We look askance at this practice of stating what purport to be facts—and not unimportant facts—without support in the record. This is a violation of the rules, specifically rule 8.204(a)(1)(C) of the California Rules of Court, with the consequence that such assertions will, at a minimum, be disregarded").

## C.   BRIDGES HAS PROPERLY LIMITED ITS REPRESENTATION TO APPLE'S AFFIRMATIVE CLAIMS.

There is no substantial relationship between Apple's claims and the prior work for Samsung.  There is, of course, a relationship between the prior work and *Samsung's claims*, but Bridges has never defended Apple from Samsung's claims.  *See* Part II-C.  Indeed, it has never worked on any of Apple's defenses against Samsung's claims, whether alone or with co-counsel.  Instead, from the outset, Apple's defense against Samsung has been handled by a different law firm, WilmerHale.  Samsung's decision to import its counterclaims into the present action cannot alter that division of responsibility.

Notwithstanding these facts, Samsung insists that "as a matter of law and common sense" (16:15-16), Bridges' representation of Apple must extend to Samsung's claims.  But it makes no sense to disqualify a law firm on the basis of a representation it has not undertaken.  Under well-settled law, Bridges' limited representation of Apple is sufficient to avoid a potential conflict.  *See Hilleby v. FMC Corp.*, 25 U.S.P.Q.2d 1413, 1415 (N.D. Cal. 1992) (Wilken, M-J.) (representation may be limited to affirmative patent claims in complaint); *In re Plant Insulation Co.*, 414 B.R. 646, 654 (N.D. Cal. 2009) (limitation of representation is "the remedy most appropriate" for potential conflict); California Proposed Rule of Professional Conduct 1.9(a) cmt. 4 (Sept. 2010)  (a lawyer may "avoid the application of [the substantial relationship rule] by limiting the scope of a representation so as to exclude matters on which the lawyer has a conflict of interest"); Restatement (Third) of the Law Governing Lawyers § 132 cmt. e (2000) ("the lawyer may limit the scope of representation of a later client so as to avoid representation substantially related to that undertaken for a previous client");  N.Y.C. Bar Ass'n Comm. on Prof. and Judicial Ethics, Formal Opinion No. 2001-3, 2001 WL 1870201 (July 6, 2001) (same); D.C. Bar Legal Ethics Comm. Opinion No. 343 (Feb. 2008) (same); Wolfram, *Former-Client Conflicts* at 736 (the "easiest case in which to accept such limited representation is in litigation representation," especially when "tasks in the new representation are assigned to different law firms"); Ronald D. Rotunda, *Resolving Conflicts by Hiring 'Conflicts Counsel'*, 62 Hastings L.J. 677, 691, 699 (2011) (when a different law firm "represent[s] the client on a discrete, easily severable matter," "public

1  policy, legitimate client expectations, and the emerging case law indicate that there is no valid

2  conflict of interest") (addressing current client conflicts); Declaration of John Steele in Support of

3  Opposition ("Steele Decl."), ¶¶ 11-18.

4        On facts quite similar to the current case, *Hilleby v. FMC Corp.* illustrates how a limited

5  representation in the patent arena does not create a former-client conflict. 25 U.S.P.Q.2d 1413. In

6  *Hilleby*, the law firm represented the plaintiff in asserting infringement of one patent, while the

7  defendant counterclaimed for infringement of a second patent. As in the present action, the law

8  firm in *Hilleby* had previously assisted the defendant in filings involving the second patent. The

9  court held that the law firm could not assert an invalidity defense against the defendant's

10  counterclaims due to their "substantial relationship" to the prior patent work, but the law firm

11  "*would be allowed to remain as counsel on the complaint*," because the affirmative claims were

12  distinct from the counterclaims. *Id.* at 1416 (emphasis added).[12] This is the exact litigation

13  posture in which Bridges finds itself.

14        Indeed, the grounds for recognizing the effectiveness of limited representation are stronger

15  here than in *Hilleby*. In *Hilleby*, the limitation of representation was a solution first proposed by

16  the court after the law firm had already acted outside its permitted scope. In this action, by

17  contrast, Bridges and Apple established the limited representation at the outset and have honored it

18  at all times. Further, though the complaint and counterclaims in *Hilleby* dealt with different

19  patents, both involved the "the same technology, the same expert witnesses, most of the same lay

20  witnesses and most of the same issues of patent validity and infringement." *Id.* at 1415. In this

21  case, by contrast, the complaint and counterclaims concern different technology, different

22  witnesses, different patents, and different legal issues.

23        **1.    Samsung's permissive counterclaims cannot
   enlarge the scope of Bridges' representation,**

24  **or create a conflict where none existed before.**

25        Samsung insists that no matter how Bridges has limited its representation, disqualification

26

27  _____

   [12] Ultimately, the plaintiff withdrew the invalidity defense that created the conflict.

28

Taylor & Co.
Law Offices, LLP

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES
& MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

1  is still mandatory because Samsung's unrelated counterclaims create a conflict. But Samsung's

2  tactics in fact militate *against* disqualification under the caselaw. Bridges should not be

3  disqualified for a "conflict" that it affirmatively sought to avoid and did not create.

4      First, the idea that a case heading or docket number determines the scope of Bridges'

5  representation is directly contrary to the caselaw. To hold as much would elevate form over

6  substance and obscure the obvious dissimilarities between the claims. Indeed, *Hilleby* implicitly

7  rejects the notion that docket number is dispositive. 25 U.S.P.Q.2d at 1416. There, the court

8  properly recognized that the claims and counterclaims were sufficiently discrete such that they

9  could be treated as separate representations, even though filed under the same docket number, as

10  here. *Id.* at 1416. Similarly, in *Sumitomo Corp. v. J.P. Morgan & Co.*, 2000 U.S. Dist. LEXIS

11  1252 (S.D.N.Y. Feb. 7, 2000), the client's successful motion to consolidate two related cases did

12  not require disqualification of a law firm that had limited its representation to one case, even

13  though the firm had a clear conflict on the second. Consolidation—and even joint discovery—did

14  not automatically enlarge the scope of the firm's representation to encompass the second case. *See*

15  *id.* at *14-15.[13]

16      Second, a contrary rule would allow Samsung to alter unilaterally the scope of the lawyer-

17  client relationship between Bridges and Apple. Bridges has never represented Apple in defending

18  Samsung's claims, now or before. Samsung's decision to refile its case as a permissive

19  counterclaim cannot change that. *See generally* Steele Decl. ¶¶ 12-13, 16-18. Samsung's tactics

20  do not create Bridges' ethical breach. In addition, disqualification would unjustly prejudice Apple

21  by depriving it of the services of a firm that is deeply knowledgeable concerning Apple's complete

22  intellectual property portfolio and how that portfolio reads on the Android system—at a time when

---

[13]  Similarly, neither Rule 3-310(E) nor the relevant caselaw speak in terms of a substantial
relationship between *cases* or *dockets*. The comparison is made between *representations*. *See,*
*e.g.*, *Cobra Solutions*, 38 Cal. 4th at 847 ("the former client may disqualify the attorney by
showing a 'substantial relationship' between the subjects of the prior and the current
*representations*"); *Farris*, 119 Cal. App. 4th at 679 (the substantial relationship test "centers
precisely upon the factual and legal similarities of the two *representations*") (all emphasis added).

TAYLOR & CO.
LAW OFFICES, LLP

1    Apple is seeking to bring its claims to hearing and trial on an expedited schedule.

2            Third, the limitation of representation that Apple and Bridges established is fully effective

3    under the caselaw cited above to protect Samsung's confidential information.  This is not a case,

4    like those cited by Samsung in its brief (16:22-28), where a supposed limited representation

5    transparently failed to eliminate the attorney's conflict.[14]  Apple's claims and Samsung's claims

6    are wholly different matters with no overlap or connection, and it is both possible and appropriate

7    to handle them separately—as they have been handled to date.  Moreover, this is not a situation,

8    like *Largo Concrete, Inc. v. Liberty Mutual Fire Insur.*, 2007 U.S. Dist. LEXIS 95690 (N.D. Cal.

9    Dec. 31, 2007) (cited at 16:17), that involves the risk that lawyers *within* a firm might share

10   information relevant to a representation.  Here, Bridges is a separate firm from WilmerHale that

11   has no involvement in defending Samsung's claims.  Contrary to Samsung's suggestion, the

12   division between the cases is not a matter of "mental gymnastics" (3:7-8), but formal

13   understandings concerning the scope of the separate representations, the division of responsibility,

14   and the strict prohibition on the disclosure of Samsung confidential information. Should the Court

15   have any further concerns with the present division of representation, Apple has no objection to

16   the entry of an order confirming the permitted scope of the representation, as was done in both

17   *Hilleby* and *Plant Insulation*.  *See generally* Steele Decl. ¶¶ 19-26.

18           Fourth and finally, courts have the equitable power to decline disqualification when the

19   former client's tactical decision-making is the source of the claimed conflict.  *See, e.g.,* Paul W.

20   Vapnek et al., *Professional Responsibility*, § 4:327.5 (The Rutter Group 2010) ("Rutter Prof.

---

22   [14]  For example, in both *United States v. Cheshire*, 707 F. Supp. 235 (M.D. La. 1989), and *United
23   States v. Edwards*, 39 F. Supp. 2d 716 (M.D. La. 1999), the prosecution's key witnesses were
     former clients of the defendant's attorney in substantially related matters. *Cheshire*, 707 F. Supp.
24   at 237, 239; *Edwards*, 39 F. Supp. 2d at 735, 744-45.  In each case, the lawyer attempted to
     eliminate the conflict by delegating cross-examination of the former client to another lawyer, but
25   retained responsibility for both opening and closing arguments, in which he would necessarily
     have had to attack his former client's credibility.  Understandably, both courts concluded that the
26   conflict had not been eliminated.  Similarly, in *In re Lillian P.*, 238 Wis. 2d 449 (2000), a
     concurrent conflict case, the lawyer brought in co-counsel but retained full responsibility for
27   representing joint clients whose interests sharply conflicted.

28

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES
& MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

Resp.") ("Courts generally deny disqualification or withdrawal motions based on a conflict of interest where the conflict has been 'manufactured'"); *see also Fed. Home Loan Mortgage Corp. v. La Conchita Ranch Co.*, 68 Cal. App. 4th 856, 862 (1998) ("a party should not be able to create [a conflict] through the simple expediency of filing a cross-complaint"); *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294 (2001) (similar).[15]  The exercise of that power is certainly appropriate here.

### D.    THE COURT HAS THE POWER TO SEVER APPLE'S CLAIMS FROM SAMSUNG'S CLAIMS TO PROMOTE THE EFFICIENT ADMINISTRATION OF JUSTICE AND AVOID PREJUDICE TO APPLE.

Finally, if there is any residual concern on the part of Samsung or the Court with Bridges' limited representation, Apple respectfully suggests that as an alternative to disqualification, the Court sever or bifurcate Samsung's counterclaims under Federal Rules of Civil Procedure 21 or 42—as Apple has suggested in its pending motion for an expedited trial.  Such severance would ameliorate Samsung's concerns, avoid substantial prejudice to Apple, and promote the efficient administration of justice.

As Apple argued in its Reply In Support of Motion for Expedited Trial (Docket No. 131, July 22, 2011), there is a strong case for severance on the merits.  Because Apple's claims and Samsung's claims concern different patents, technologies, and products, severance would "further the prompt and efficient disposition of litigation" by avoiding jury confusion over disparate, unrelated patent claims. *See CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506 (D. Md. 1995).  Indeed, courts "should not hesitate to sever claims based on different factual situations from that of the main action." 4-21 Moore's Federal Practice, § 21.02[4] (2011).

The policy interest in avoiding disqualification offers an additional factor in favor of severance.  A court may sever claims to avoid prejudice to any party. *See Applewhite v. Reichhold*

---

[15]  A similar principle applies under the related "hot potato" rule. Normally, a lawyer cannot avoid disqualification in a current-client conflict by dropping one client in favor of another. *See Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1059 (1992).  But an exception may exist when the *client* created the conflict. *See id.* at 1058-59.

OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

TAYLOR & CO.
LAW OFFICES, LLP

1  *Chems.*, 67 F.3d 571, 574 (5th Cir. 1995). Here, severance would avoid the severe prejudice to

2  Apple that would accompany disqualification, as discussed further in Part C.1, while vindicating

3  the strong public policy interest in favor of retaining the counsel of one's choice. Moreover, to the

4  extent that Samsung's concerns are based on the fact that both sets of claims are lodged under the

5  same docket number, severance would eliminate such concerns.

6        The Court has the inherent power to adopt such flexible procedures to avoid the more

7  drastic remedy of disqualification. *See generally UMG Recordings, Inc. v. MySpace, Inc.*, 526 F.

8  Supp. 2d 1046, 1063 (C.D. Cal. 2007) (exercising inherent power to shape litigation because

9  "courts should not apply the ethical rules in a way that is mechanical, didactic, or inflexible," but

10  should "take a 'functional' approach") (quotation omitted); *see also generally* Steele Decl. ¶¶ 20,

11  23-26. It would be appropriate to exercise such power here.

12  
13  **E.    ANY PUTATIVE DISQUALIFICATION SHOULD NOT EXTEND TO MORRISON OR WILMERHALE.**

14        Finally, if the Court favors disqualification and declines to sever, disqualification must be

15  limited to the Bridges firm. In its motion, Samsung requested that Morrison, WilmerHale, and

16  Apple submit affidavits stating that each had not received any confidential information from

17  Bridges (Motion p. 17). Appropriate declarations to that effect are included in this Opposition.

18  As a consequence, the issue of disqualification of co-counsel is moot, and there is no possible

19  reason to extend disqualification to any other firm. The law does not presume that the confidential

20  information of a disqualified lawyer passes to co-counsel. *See In re Airport Car Rental Antitrust*

21  *Litigation*, 470 F. Supp. 495 (N.D. Cal. 1979); *Frazier v. Superior Court*, 97 Cal. App. 4th 23

22  (2002); *Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*, 2011 U.S. Dist. LEXIS 78786 (N.D.

23  Cal. July 20, 2011); *accord* Rutter Prof. Resp., § 4:34.8; Restatement (Third) of the Law

24  Governing Lawyers § 123 cmt. c(iii), illus. 2 (2000); *Smith v. Whatcott*, 774 F.2d 1032 (10th Cir.

25  1985); *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564 (Fed. Cir. 1984); *Brennan's*

26  *Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168 (5th Cir. 1979); *Akerly v. Red Barn System, Inc.*, 551

27  F.2d 539 (3d Cir. 1977).

28  ///

TAYLOR & CO.
LAW OFFICES, LLP

## IV.   **CONCLUSION**

For the reasons discussed above, Apple respectfully submits that Samsung's Motion to Disqualify should be denied.

Dated: August 1, 2011                    Respectfully submitted,

TAYLOR & COMPANY LAW OFFICES, LLP


By:      /s/ Stephen E. Taylor
Stephen E. Taylor
Attorneys for Plaintiff APPLE INC.