| | |
|---|---|
| HAROLD J. MCELHINNY (SBN 66781) <br> hmcelhinny@mofo.com <br> MICHAEL A. JACOBS (SBN 111664) <br> mjacobs@mofo.com <br> RICHARD S.J. HUNG (SBN 197425) <br> rhung@mofo.com <br> MORRISON & FOERSTER LLP <br> 425 Market Street <br> San Francisco, California 94105-2482 <br> Telephone: (415) 268-7000 <br> Facsimile: (415) 268-7522 <br><br> KENNETH H. BRIDGES (SBN 243541) <br> kbridges@bridgesmav.com <br> MICHAEL T. PIEJA (SBN 250351) <br> mpieja@bridgesmav.com <br> BRIDGES & MAVRAKAKIS LLP <br> 3000 El Camino Real <br> One Palo Alto Square, 2nd Floor <br> Palo Alto, CA 94306 <br> Telephone: (650) 804-7800 <br> Facsimile: (650) 852-9224 | MARK D. SELWYN (SBN 244180) <br> mark.selwyn@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 950 Page Mill Road <br> Palo Alto, California 94304 <br> Telephone: (650) 858-6000 <br> Facsimile: (650) 858-6100 <br><br> WILLIAM F. LEE (*pro hac vice* anticipated) <br> william.lee@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 60 State Street <br> Boston, MA 02109 <br> Telephone: (617) 526-6000 <br> Facsimile: (617) 526-5000 <br><br> STEPHEN E. TAYLOR (SBN 58452) <br> staylor@tcolaw.com <br> STEPHEN MCG. BUNDY (SBN 253017) <br> sbundy@tcolaw.com <br> JOSHUA R. BENSON (SBN 269111) <br> jbenson@tcolaw.com <br> TAYLOR & COMPANY LAW OFFICES, LLP <br> One Ferry Building, Suite 355 <br> San Francisco, California 94111 <br> Telephone: (415) 788-8200 <br> Facsimile: (415) 788-8208 |

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.: C-11-01846 (LHK) <br><br> **DECLARATION OF KENNETH H. BRIDGES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP** <br><br> Date: August 24, 2011 <br> Time: 2:00 p.m. <br> Place: Courtroom 8, 4th Floor <br><br> Honorable Lucy H. Koh <br><br> **REDACTED PUBLIC VERSION** |

I, KENNETH H. BRIDGES, declare as follows:

1. I am a founding partner in the law firm Bridges & Mavrakakis LLP, counsel of record for plaintiff Apple Inc. ("Apple") in the above-captioned action. I have been a member of the Bridges & Mavrakakis LLP law firm since it first opened in 2010, and a patent litigator for more than fourteen years with a depth of experience handling matters relating to the telecommunications and electronics/semiconductor fields. The facts set forth in this declaration are personally known to me to be true, except as to matters that are stated on information and belief and, as to those matters, I believe them to be true. If called upon to testify about the matters contained in this declaration, I could and would competently testify thereto.

2. This declaration is submitted in support of Apple's Opposition to the Motion to Disqualify the Bridges & Mavrakakis LLP firm as counsel for plaintiff in this action that was filed by defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") on July 11, 2011.

3. Bridges & Mavrakakis LLP (the "Bridges Firm") was formed on September 1, 2010, specializing in patent litigation and the strategic management of patents. Immediately prior to founding the Bridges Firm, I was a partner in the Palo Alto office of the Houston-based law firm Wong Cabello LLP (February 2009 to September 2010). Prior to that, I was an associate and then a partner with the Kirkland & Ellis LLP firm working in their Chicago and San Francisco offices (October 1998 to January 2009).

4. Apple filed this litigation against Samsung on April 15, 2011 (the "*Apple* Case"). The Bridges Firm formally appeared in this case as litigation counsel for Apple on June 16, 2011, the same day Apple filed the First Amended Complaint.

5. The litigation Apple initiated against Samsung on April 15, 2011 alleges claims against Samsung, in both the Complaint and the First Amended Complaint, to the effect that Samsung's new Galaxy line of Android-based smartphones and tablets have improperly copied the distinctive look and design of well known Apple products such as the iPhone, the iPad and the iPod touch, and that these products infringe certain Apple utility patents relating to multi-point

1.

touch or "multitouch" hardware and software, and associated finger touch-related user input technologies.

6. "Android-based" devices are those devices which use the Android operating system provided by Google. Android is a complete software architecture. It begins at the lowest level of operating system software, and extends all the way up to providing standard user applications. Samsung did not use, or to my knowledge even have, any part of Android during the time I worked on the Ericsson litigation. As far as I am aware, Samsung's first Android-based device was announced April 2009 and went on sale in Europe in summer 2009. Samsung's Android-based devices are thus fundamentally different from the Samsung phones in existence in 2006-2007 at the time of the Ericsson litigation, in all respects relevant to the present case, as discussed below.

7. Since the firm began operation in 2010, the Bridges Firm attorneys have represented Apple in connection with these and similar claims against other Android-based Smartphone manufacturers such as HTC and others.

8. Apple's retention of the Bridges Firm with respect to Samsung is limited to this scope. The Bridges Firm has never been engaged by Apple or provided any legal advice to Apple concerning any claim made by Samsung against Apple.

9. [redacted]

2.

10. On April 27, 2011, Samsung filed litigation against Apple in the United States District Court for the Northern District of California, Case No. C-11-02079 (the "*Samsung* Case"). The law firm of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") was hired to defend Apple in that case. Counsel from the WilmerHale firm entered appearances on behalf of defendant Apple in the *Samsung* Case on May 9, 2011.

11. The Bridges Firm has never advised Apple or any of its outside counsel, including WilmerHale, about any issues associated with Samsung's assertion of its intellectual property rights against Apple, including but not limited to the assertions made in the *Samsung* Case before this Court. With respect to Samsung, the Bridges Firm has only provided legal advice and representation to Apple in connection with Apple's intellectual property rights vis-à-vis the new Android-based smartphone devices and touchscreen products that are the subject of Apple's claims in the *Apple* Case.

12. I previously represented Samsung in 2006 and 2007 in cases involving cellular phones generally, and other Bridges Firm attorneys represented Samsung on different technologies at later times, but no attorney at this firm has represented Samsung at any time in any matters involving devices that utilize the Google Android platform, touch-based user interfaces, or any other technologies that are the subject of the claims Apple is pursuing in the *Apple* Case.

13. At the time that I represented Samsung in 2006 and 2007, I did not have any contact with this type of technology for Samsung, which is not surprising because to my knowledge Samsung was not producing any products with such technology. My representation of Samsung, and that of the other Bridges Firm attorneys who previously represented Samsung, had to do with wholly different patents and different technologies. Where those prior representations involved cellular phones at all, they involved different wireless telephone devices, that used completely different software from the lowest levels of the operating system software to the user interfaces presented to end users of the devices.

14. I began representing Samsung in 2006 in actions before the United States District Court for the Eastern District of Texas (*Ericsson, Inc., et al. v. Samsung Electronics Co., Ltd., et al.*, Case No. C-06-00063 (TJW)) and the International Trade Commission (*Wireless*

3.

*Communication Devices, Components Thereof, and Products Containing Same*, No. 337-TA-583 and *Wireless Communication Equipment, Articles Therein, and Products Containing the Same*, No. 337-TA-577)(collectively the "Ericsson Litigation"), although my involvement in the Texas case was minimal. These cases involved the defense of Samsung against claims that Samsung's wireless mobile telephone devices infringed patents held by plaintiffs Ericsson Inc., Telefonaktiebolaget LM Ericsson, Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA), Inc. The cases also related to the assertion of certain Samsung patents relating to wireless standards and features such as a voice recorder, against Ericsson. My representation of Samsung ended in or about July 2007.

15. I was one of twenty or more lawyers on Kirkland & Ellis' Samsung teams, and my primary duties during the period 2006 to 2007 related to defending against Ericsson's ITC case against Samsung—that is, proving that Samsung's mobile phones did not infringe Ericsson's patents and/or that the Ericsson patents were invalid.

16. While the ITC litigation was my principal day-to-day responsibility in 2006-2007 from a logistical standpoint, I was not a strategic decision maker for the Kirkland & Ellis team and I did not participate in the day-to-day discussions between counsel for Samsung and the Kirkland & Ellis lawyers in that regard. At least three other Kirkland & Ellis lawyers on the ITC cases, senior to myself, were responsible for high-level strategic decision making. It is my understanding that these Kirkland & Ellis attorneys met with the senior Samsung lawyer in charge of strategic decision making for the Ericsson Litigation. I did not attend such meetings or participate in those types of case strategy discussions. My contact with the senior Samsung decision maker was extremely limited. To my knowledge I cannot recall any direct or one-on-one conversation, meeting or other communication between myself and this person. In other words, my involvement with "strategy" related to developing the non-infringement and invalidity strategies and related defenses against the various Ericsson patents.

17. I furthermore can recall no involvement in any settlement discussions with Samsung or providing advice about settlement. I do not know what the settlement considerations were for Samsung in that case, why the case settled, or what caused the timing of the settlement, other than

4.

speculation. At the time the case settled, the senior leadership of the team was in Washington, D.C. preparing for the ITC trial in Samsung's case against Ericsson; I remained in San Francisco continuing to work on the Ericsson case against Samsung. My understanding is that Washington, D.C. is where, in consultation between Samsung and the senior Kirkland & Ellis partners on the matter, the relevant decisions were made that brought the case to an end.

18. My representation did not include communicating with Samsung directly. I was told on several occasions that all contact with Samsung should be channeled through the senior team members and that I should not initiate contact with Samsung independently on matters of any significance to the case.

19. My responsibilities in the Ericsson Litigation did not provide me with any special or unique insight into Samsung's handling of patent cases. Samsung defended itself (as the public record shows) against the Ericsson patents with the typical patent defenses, such as invalidity, non-infringement, and inequitable conduct, as well as the defenses that are common to virtually all standards-related cases in the mobile communications field, such as those relating to "FRAND" (fair, reasonable, and non-discriminatory) licensing commitments.

20. As part of the Ericsson Litigation, I and other Kirkland & Ellis lawyers spent time analyzing Samsung's asserted technology patents and the wireless mobile telephones manufactured and marketed by Ericsson Inc., Telefonaktiebolaget LM Ericsson, Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA), Inc., including Samsung's U.S. Patent No. 6,928,604 entitled "Turbo/Decoding Device and Methods for Processing Frame Data According to QOS" ('604 Patent). However, obviously none of these Samsung patents form the basis for Apple's claims against Samsung in this litigation. More to the point, none of the Samsung products that were the subject of the Ericsson Litigation are the subject of the claims Apple is asserting in this litigation. The Samsung-Ericsson litigation and the Apple patent assertions against Samsung, are simply orthogonal to one another.

21. I would agree with the statement in the Apple complaint that Apple's iPhone revolutionized the telecommunications industry with, among other things, its elegant and minimalist design, its distinctive user interface, and its multi-touch screen that allowed users to

5.

control the phone with their fingers. In summer 2007, I regularly used a Blackberry device and a Motorola cellular phone, and then purchased one of the first iPhones and regularly used it. My own observations and experience with the Apple iPhone, was a further basis for my concluding that the user interface, especially the multipoint sensing ("multi-touch"), was nothing short of revolutionary and like no other cellular phone I had ever used. It certainly was entirely unlike the types of cell phones that were at issue in the Ericsson Litigation.

22. No touchscreen technology or patents related to touch technology were the subject of the 2006 Ericsson Litigation. To my knowledge, no Samsung product with multitouch hardware or software nor any finger-based touch interfaces existed during the time of the Ericsson Litigation.

23. As the iPhone gained success in the marketplace, other cellular phone manufacturers attempted to mimic the iPhone. The Android software platform—a complete stack of lowest-level software up to user interface software—became a popular platform to build devices to mimic the iPhone. The first Android-based device was not released until October 2008, well over a year after the end of the Samsung-Ericsson matters. Samsung's first Android-based device (what would become known as the Galaxy line of smartphones), was not announced until April 2009 and released (in Europe) in June 2009 – *two years* after my representation of Samsung ended.

24. None of the Samsung products that were at issue in the Ericsson Litigation form the basis for any of the Apple Claims. Rather, all of the Apple Claims are directed at products Samsung introduced *several years after the conclusion* of the Ericsson Litigation in 2007.

25. In the cellular phone and mobile device industry, these time gaps of a few years are in fact massive. In this regard, I agree fully with Samsung's counsel Mr. Verhoeven's statement to this Court at the June 17, 2011 hearing, where he stated that the types of products at issue in this case are "like cabbage," in that they "have a shelf life of six months to a year max." (6/17/2011 Hrg. Tr. at p. 32.) The products Apple is accusing in the litigation today are several generations removed and fundamentally different than the products involved in the Ericsson Litigation.

26. The *Apple* Case also includes allegations against Samsung based on design patents, trade dress, and related unfair competition claims based upon the overall appearance of Samsung's

6.

current products. No product accused as the basis for any Apple Claim in the *Apple* Case was involved in the Ericsson Litigation, nor existed until several years after the Ericsson Litigation.

27. The Bridges Firm has never been retained to represent Samsung, and none of the firm's personnel has ever represented Samsung in any case in which an Android-based Smartphone or products utilizing touchscreen hardware or interfaces was the subject matter of the inquiry, investigation or litigation. Nor have Bridges Firm personnel ever represented Samsung with respect to trade dress or design issues with respect to any product.

28. In March 2009, Tom Mavrakakis and I were both employed by the Wong Cabello LLP law firm. In spring of 2010, we both spoke with Richard J. Lutton, Apple's Senior Director and Chief Patent Counsel, about whether the attorneys at Wong Cabello LLP could represent Apple with regard to Samsung and other smartphone manufacturers Apple believed could potentially infringe Apple's intellectual property. At that time, we informed Mr. Lutton that because of the work we had done in the past for Samsung the firm's representation would have to be limited, in that we could not accept any representation that would in any way involve a Samsung patent (or the subject matter of a patent) that had been part of the Ericsson litigation in 2006-2007. He was also informed that we could not be involved in any broader issue of fair, reasonable and non-discriminatory (FRAND) licensing terms or "standards-essential" patent valuation that related to any Samsung patents. Apple agreed to retain the services of the Wong Cabello LLP attorneys with those limitations on the scope of our representation. I and the other attorneys at the Wong Cabello LLP law firm who were hired to represent Apple following my discussion with Richard Lutton in the Spring of 2010 left that firm to form Bridges & Mavrakakis LLP on September 1, 2010. The attorneys at the Bridges Firm continued their work for Apple with the same limitations on the scope of representation that had been agreed to with Apple.

29. In April 2011, Apple asked the Bridges Firm to provide it with additional and updated legal advice regarding possible infringement by Samsung's Android-based products. This was a continuation of the firm's earlier representation of Apple against those Samsung products in the fall of 2010, and was undertaken in anticipation of filing litigation against Samsung. On April 7, 2011, in a meeting that Tom Mavrakakis and I had with Apple's in-house counsel, we discussed

7.

the firm's continuing engagement and avoidance of potential conflict issues created by the work that had been performed by the Bridges Firm personnel for Samsung. Both the Bridges Firm and Apple arrived at the conclusion that, given the limited scope of the firm's representation, there would be no substantial relationship between the prior work of the Bridges Firm personnel for Samsung and the continuing work of the Bridges Firm in representing Apple with respect to Samsung's Android-based or touchscreen products.

30. On June 27, 2011, the Bridges Firm received a letter addressed to my attention from Victoria Maroulis, counsel at Quinn Emanuel representing Samsung in the Apple Litigation. I was away from the office during the week Ms. Maroulis' letter was received. In her letter Ms. Maroulis raised questions about a potential conflict of interest in the *Apple* Case based on my and other Bridges Firm attorneys' prior representation of Samsung while employed with Kirkland & Ellis. (*See* the Austin Tarango Declaration in Support of the Motion to Disqualify ("Tarango Decl."), Exh. 1.)

31. On June 29, 2011, Bridges Firm attorney Michael Pieja responded to Quinn Emanuel's June 27 letter, explaining to Ms. Maroulis that the *Apple* Case did not involve any issues relating to the Bridges Firm attorneys' prior representation of or work for Samsung. (See Tarango Decl., Exh. 4.)

32. For tactical reasons known only to Samsung and its counsel, Samsung decided the next day (June 30, 2011) to dismiss its separately filed litigation against Apple (the *Samsung* Case), and to instead assert those same claims against Apple as counterclaims in the *Apple* Case, effectively combining the separate and distinct claims in both actions into a single lawsuit.

33. On the afternoon of July 5, 2011, I and Michael Pieja met and conferred with Quinn Emanuel regarding Samsung's concerns over the alleged the Bridges Firm conflict of interest. During those meet and confer discussions I informed Ms. Maroulis that the Bridges Firm was in no way representing Apple concerning either the '604 Patent (which had been part of the Ericsson Litigation) or on any FRAND issues relating to Samsung patents. I furthermore stated that if Samsung desired additional description or information of the limits of scope of representation by this firm, we were happy to take such questions to Apple to receive permission to provide that

8.

additional information. The Quinn firm, however, made no further communication with the Bridges Firm and obviously declined to ask for more information.

34. The parties' July 5 meet and confer discussion on the conflict of interest question was unsuccessful and Samsung filed the instant motion to disqualify the Bridges Firm as counsel of record for Apple the *Apple v. Samsung* Litigation on July 11, 2011.

35. Since the time of Samsung's dismissal of the *Samsung* Case and the inclusion of those claims as counterclaims in the *Apple* Case, the Bridges Firm has continued to limit the scope of its representation to the affirmative claims asserted by Apple against Samsung. The Bridges Firm has not been involved in defending Apple against Samsung's affirmative claims against Apple. In the *Apple* Case and the Samsung Case Apple retained different law firms to represent its interests. Now that the two cases have been related, those law firms still continue their separate and distinct representation of Apple—Morrison & Foerster LLP and the Bridges Firm represent Apple in pursuing its claims against Samsung, while the WilmerHale firm defends Apple against Samsung's asserted claims.

36. At no time have I or any other Bridges Firm attorney communicated any Samsung confidential information to Apple or to anyone representing Apple, including any attorneys, paralegals or staff affiliated with either the WilmerHale or the Morrison & Foerster LLP law firms. Any and all information that is confidential to Samsung and known to myself or to other Bridges Firm attorneys as a result of our prior representation of Samsung will continue to be maintained by us in the future in a confidential manner, and will not be disclosed to Apple or any other third party.

37. At no time has the Bridges Firm exceeded the scope of its limited representation of Apple in the *Apple v. Samsung* Litigation, and it will not do so in the future.

38. Apple would be significantly harmed by the disqualification of this firm from its scope of representation. Since 2008 when the Android platform was revealed, attorneys now at this firm, including myself, have worked extensively on analyzing and understanding the Android platform and multitouch user interfaces associated with it, and the infringement of Apple's intellectual property by devices based on this platform. This firm has "seen through" those past

analyses as well, including representing Apple in its ongoing litigations against HTC's Android-based products. Furthermore, the Bridges Firm is very familiar with Apple's multitouch hardware and software patents, teams and personnel.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 1st day of August, 2011, at Palo Alto, California.


                                                                                                                /s/ Kenneth H. Bridges
                                                                                                                 KENNETH H. BRIDGES

DECLARATION OF KENNETH H. BRIDGES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

## ECF ATTESTATION

I, STEPHEN E. TAYLOR, am the ECF User whose ID and password are being used to file this **DECLARATION OF KENNETH H. BRIDGES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP**. In compliance with General Order 45, X.B., I hereby attest that Kenneth H. Bridges has concurred in this filing.

Dated: August 1, 2011                          TAYLOR & COMPANY LAW OFFICES, LLP

                                               By:    /s/ Stephen E. Taylor
                                                      Stephen E. Taylor