HAROLD J. MCELHINNY (SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

KENNETH H. BRIDGES (SBN 243541)
kbridges@bridgesmav.com
MICHAEL T. PIEJA (SBN 250351)
mpieja@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone: (650) 804-7800
Facsimile: (650) 852-9224

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

WILLIAM F. LEE (*pro hac vice* anticipated)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

STEPHEN E. TAYLOR (SBN 58452)
staylor@tcolaw.com
STEPHEN MCG. BUNDY (SBN 253017)
sbundy@tcolaw.com
JOSHUA R. BENSON (SBN 269111)
jbenson@tcolaw.com
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.: C-11-01846 (LHK) <br><br> **DECLARATION OF JOHN STEELE IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP** <br><br> Date: August 24, 2011 <br> Time: 2:00 p.m. <br> Place: Courtroom 8, 4th Floor <br><br> Honorable Lucy H. Koh |

I, JOHN STEELE, declare as follows:

1. I am an active member of the State Bar of California. I have been retained in this matter to offer my expert opinion in the area of legal ethics. If called to testify thereto, I could and would competently do so. This declaration is submitted in support of Apple's Opposition to the Motion to Disqualify the Bridges & Mavrakakis LLP firm as counsel for plaintiff in this action that was filed by defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung").

2. I have been asked to testify about current custom and practice with respect to (a) clients' use of the limitations in attorney client relationships to avoid conflicts in complex intellectual property litigation, and (b) judicial use of case management tools and orders to deal with potential or actual conflicts of interest.

3. I set forth below and in the attached Exhibit A some of my background, training and experience that provide a foundation for my opinions, including my experience assisting and advising lawyers and clients on how to create, structure, and limit attorney client relationships ("ACR") in ways that comport with the legal ethics rules, including the conflict of interest rules, and with what is often called the "law of lawyering."[1] That assistance and advice includes substantial experience in the context of patent litigation and other forms of intellectual property litigation, both in the United States District Court for the Northern District of California and elsewhere in the United States.

///

///

///

---

[1] California-licensed lawyers are governed by authoritative appellate opinions, the State Bar Act (Cal. Bus. & Prof. Code §6000, et seq.), and the California Rules of Professional Conduct, as well as by common law related to attorney-client relationships. In addition, the State Bar of California has approved and forwarded to the Supreme Court of California for approval a set of draft ethics rules that capture many of the developments in this field. When there are gaps in California's coverage on these issues, California-licensed lawyers may look to national standards for guidance. (California Rules of Professional Conduct, rule 1-100) As a short hand, I will sometimes refer to this law as the "law of lawyering."

1.

DECLARATION OF JOHN STEELE IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

**EXPERTISE**

4. My ethics-related resume is attached as Exhibit A. In summary:

   (a) I have practiced law in the field of legal ethics for over seventeen years, both inside law firms and for outside clients.

   (b) I have taught legal ethics as an adjunct lecturer and Visiting Professor for over thirty semesters at UC Berkeley School of Law, Stanford Law School, Santa Clara University School of Law, Golden Gate University, and Indiana University – Maurer School of Law (as Visiting Professor).

   (c) I have provided over one hundred continuing legal education (CLE) presentations regarding legal ethics.

   (d) I have served on the State Bar of California's standing Committee on Professional Responsibility and Conduct (COPRAC) and on other professional committees related to legal ethics.

   (e) I have been accepted as a testifying expert in legal ethics by the Superior Court of the State of California for the County of San Diego.

5. Much of that background, training, and experience focuses on the intersection of intellectual property practice and the law of lawyering, including:

   (a) For over fifteen years, while resident in Silicon Valley locations, I served as the chief internal ethics lawyer at two intellectual property firms, one of which is an AmLaw 100 firm and the other an AmLaw 200 firm. In those capacities I managed the conflicts clearing process, gave legal advice on conflicts of interest and risk management, and otherwise provided legal advice on the law of lawyering. The majority of that legal work dealt with the intersection of legal ethics and intellectual property law.

   (b) I have moderated, presented, and otherwise participated in dozens of CLE presentations regarding legal ethics in the context of intellectual property practice. Those presentations have taken place abroad and in many locations across the United States.

   (c) I served as Co-Chair of the Professional Responsibility subcommittee of the American Bar Association's Section of Intellectual Property Law.

2.

DECLARATION OF JOHN STEELE IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

## ASSUMED FACTS

6. My opinion is based upon certain assumed facts, as set forth below.

7. Apple Inc. (Apple) filed a complaint against Samsung entities (Samsung), alleging patent, trademark, trade dress and unfair competition claims ("Apple Claims"). To prosecute the Apple Claims, Apple retained Morrison & Foerster and Bridges & Mavrakakis ("Bridges"). Apple and Bridges agreed that their attorney-client relationship would be limited to the Apple Claims and would not include any work by Bridges regarding any matters related to prior work that certain Bridges lawyers had done for Samsung while those lawyers were employed at a different firm. That limitation has been observed by both Apple and Bridges.

8. After Apple filed the Apple Claims, Samsung filed a separate civil action against Apple, alleging patent infringement ("Samsung Claims"). Apple hired the firm of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") to represent Apple on the Samsung Claims.

9. While some of the Samsung Claims are related to the prior work that certain Bridges lawyers did for Samsung while at a prior firm, the Apple Claims are not the same as or substantially related to that prior work.

10. After lawyers at the Quinn Emanuel firm, representing Samsung, asserted that the Bridges lawyers may have a conflict of interest in representing Apple, Samsung dismissed its separate civil action against Apple and then re-filed substantially similar claims against Apple as permissive counterclaims in the suit that Apple had brought.

## OPINIONS

### Limited Scope of Representation

11. Analyzing conflict of interest issues typically requires the reviewing court to analyze the legal representations, or attorney-client relationships ("ACR"), at issue in the matters. In doing that analysis, courts typically turn to state law to determine the existence, scope, limitations, and nature of the attorney-client relationships at issue. *Synergy Tech & Design, Inc. v. Terry*, 2007 U.S. Dist. LEXIS 34463 at *22-23 (N.D. Cal. May 2, 2007).

12. Under California law, attorney-client relationships arise by mutual agreement. Vapnek et al., Professional Responsibility, § 3:2 (The Rutter Group 2010) ("Vapnek") (except in

3.

the case of appointments, attorney client relationships arise by contract); *Koo v. Rubio's Restaurants, Inc.*, 109 Cal. App. 4th 719, 729, 135 Cal. Rptr. 2d 415 (2003). *See also*, Restatement Third, The Law Governing Lawyers, §14(1), cmt. b ("The client-lawyer relationship ordinarily is a consensual one. [ . . .] A client ordinarily should not be forced to put important legal matters into the hands of another or to accept unwanted legal services.")

13. The lawyer's authority to act is delimited by the client's decision about the matter and the scope of the matter for which the lawyer is retained. Vapnek, ¶¶ 3:5, 3:5.5, 3:20. The law of lawyering recognizes that clients and lawyers may limit the representation so as to avoid potential conflict of interest situations.[2]

14. As noted, the limitation of the representation has important implications for the conflict of interest analysis. In some cases denying motions to disqualify, the reviewing court has noted that the limited nature of attorney client relationship resulted in no conflict of interest. For example, in *Koo v. Rubio's Restaurant*, the client and its lawyers had limited the ACR to the representation of the corporate entity and not to the individual agents of the corporation, so that no conflict of interest arose based upon the lawyer's mistaken claim to have represented those agents and no disqualification was warranted. Similarly, in *Multimedia Patent Trust v. Apple Inc.*, 2011 U.S. Dist. LEXIS 46237 (S.D. Cal. April 29, 2011), where the plaintiff was suing a number of defendants, including its lawyers' current client, regarding certain patents, the client and the Quinn Emanuel law firm limited their ACR so that a different law firm was handling the separate action

---

[2] *See*, for example, *Hilleby v. FMC Corp.*, 25 U.S.P.Q.2d 1413, 1415 (N.D. Cal. 1992) (representation may be limited to affirmative patent claims in complaint); *In re Plant Insulation Co.*, 414 B.R. 646 (N.D. Cal. 2009) (limitation of representation is "the remedy most appropriate" for potential conflict); California Proposed Rule of Professional Conduct 1.9(a) cmt. 4 (Sept. 2010); Restatement Third, The Law Governing Lawyers § 132 cmt. e (2000) ("the lawyer may limit the scope of representation of a later client so as to avoid representation substantially related to that undertaken for a previous client"); N.Y.C. Bar Ass'n Comm. on Prof. and Judicial Ethics, Formal Opinion No. 2001-3, 2001 WL 1870201 (July 6, 2001) (same); D.C. Bar Legal Ethics Comm. Opinion No. 343 (Feb. 2008) (same); Ronald D. Rotunda, *Resolving Conflicts by Hiring 'Conflicts Counsel'*, 62 Hastings L.J. 677, 691, 699 (2011) (when a different law firm "represent[s] the client on a discrete, easily severable matter," "public policy, legitimate client expectations, and the emerging case law indicate that there is no valid conflict of interest") (addressing current client conflicts).

4.

DECLARATION OF JOHN STEELE IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

against Quinn Emanuel's current client regarding that same technology. Again the court held that the limitation was sufficient to avoid the conflict.

15. In other cases, the courts themselves have predicated their denial of the motion to disqualify upon the court's insistence upon that certain limitations be placed upon the attorney-client relationship. *See Hilleby v. FMC Corp.*, 25 U.S.P.Q.2d 1413, 1415 (N.D. Cal. 1992); *UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1062-63 (C.D. Cal. 2007).

16. In general, in my experience, there has been an increasing number of instances where corporate clients engaged in intellectual property matters have taken care to use different law firms for different matters and/or to carefully define, structure, and limit particular representations in ways that best serve the client. These steps are perfectly appropriate under the law of lawyering and can provide multiple benefits to the clients, the law firms, and the judicial process. Further, in my experience, clients who do structure and limit their attorney client relationships often invest time, money, and trust in the attorney-client relationships that they have structured.

17. More specifically, in patent litigation, it is sometimes the case that the allegedly infringing defendant will raise affirmative defenses, will file its own claims against the plaintiff on the very same technology, or will file its own claims against the plaintiff on other technology. The defendant's claims may be filed as mandatory counterclaims, permissive counterclaims, or as entirely distinct suits, as Samsung originally did here. In my experience, it is relatively common and legally appropriate for plaintiff-clients to hire different law firms to represent the plaintiff as it responds to the defendant's claims against the plaintiff.

18. In this case, as a matter of mutual agreement and of actual practice, Apple and Bridges have both chosen to carefully limit their attorney-client relationship to include the Apple Claims and not the Samsung Claims. This is entirely consistent with the rights that the law of lawyering, including the ethics rules, gives to clients and their counsel.

**Judicial Management of Potential Conflicts**

19. Intellectual property cases can be quite complicated. *UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1047-48 (C.D. Cal. 2007) (noting the increasing complexity

of intellectual property matters and the need to reconcile that complexity with the ethics rules that were drafted in an earlier era). That complexity, coupled with the financial stakes in such matters, has led to disqualification motions brought for tactical reasons. *Synergy Tech & Design, Inc. v. Terry*, 2007 U.S. Dist. LEXIS 34463 at *18-19 (N.D. Cal. May 2, 2007).

20. In my experience, federal courts have increasingly shown a pragmatic flexibility in managing disqualification issues in intellectual property cases, so as to protect legitimate interests of all parties, whether those interests relate to duties of confidentiality or loyalty.

21. For example, although the conflicts rules generally forbid a law firm to take on a matter directly adverse to a current client, in some recent cases federal courts have approved the use of "ethical screens" to allow firms to be directly adverse to current clients in patent matters. See, e.g., *Boston Scientific Corp. v. Johnson & Johnson Inc.*, 2009 U.S. Dist. LEXIS 75527 (D. Del. Aug. 25, 2009).

22. Similarly, when a client hires a firm to prosecute suits against a particular industry segment and that firm currently represents another client within that targeted segment, some federal courts have permitted the client to limit its attorney-client relationship with the firm so that it will not sue its current client. *See, Multimedia Patent Trust, supra; Sumitomo v. J.P. Morgan & Co.*, 2000 U.S. Dist. LEXIS 1252 (S.D.N.Y. Feb. 7, 2000). Indeed, in the *Multimedia Patent Trust* case, the federal court held that the limitation was sufficient to prevent disqualification even where the client was simultaneously using a second law firm in another suit to sue the first firm's current client on the very same technology.

23. In other intellectual property cases where (unlike here) a party and its lawyer did not limit their representation at the outset so as to prevent a potential conflict, federal courts have imposed appropriate limitations so as to protect the interests of both parties in the litigation. *See, Hilleby v. FMC Corp., supra; UMG Recordings, Inc., supra.*

24. Another potential strategy for the federal courts is to bifurcate patent disputes when the parties' respective patent claims relate to different patents. (*Patent Case Management Judicial Guide*, (Matthew Bender & Co., 2009) §8.1.1.4)

6.

DECLARATION OF JOHN STEELE IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

25. When federal courts are concerned about a party's confidential information, federal courts can and do exercise their inherent power over litigation counsel to protect those confidences. For example, federal courts often use "attorneys' eyes only provisions" in protective orders so that one party's confidences, disclosed in discovery, are shared with opposing lawyers in ways that prevent the competitive use of those confidences. Likewise, federal courts often impose "prosecution bars" so that one party's confidences, disclosed in discovery to the opponent's lawyers, are not used in the prosecution of patents for the opponent.

26. Were the Court to conclude that the current configuration of the litigation creates concern, several of these techniques are potentially relevant here. For example, the Court could enter an order like the one in *Hilleby*, confirming the scope of the representation, or could sever the two sets of claims and treat them as related but distinct, similar to the situation in *Multimedia Patent Trust*.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 1st day of August, 2011, at Palo Alto, California.

                                                    /s/ John Steele
                                                    JOHN STEELE

7.

DECLARATION OF JOHN STEELE IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)

**ECF ATTESTATION**

I, STEPHEN E. TAYLOR, am the ECF User whose ID and password are being used to file this **DECLARATION OF JOHN STEELE IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP.** In compliance with General Order 45, X.B., I hereby attest that JOHN STEELE has concurred in this filing.

Dated: August 1, 2011                         TAYLOR & COMPANY LAW OFFICES, LLP

                                              By:    /s/ Stephen E. Taylor
                                                     Stephen E. Taylor

8.

DECLARATION OF JOHN STEELE IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS, LLP: CASE NO. C-11-01846 (LHK)