# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. DAN OLIVER and JEANNIE OLIVER,<br><br>PlaintiffS,<br><br>v.<br><br>SD-3C, LLC, et al.,<br><br>Defendants. | No. C 11-01260 JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY** |

Now before the Court is the motion to disqualify Plaintiffs' counsel David J. Healy and Fish & Richardson P.C. filed by Defendants Panasonic Corporation and Panasonic Corporation of North America (collectively, "Panasonic"). This motion is fully briefed and is ripe for decision. Pursuant to Civil Local Rule 7-1(b), the Court finds that this matter is appropriate for decision without oral argument and is deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for August 12, 2011 is HEREBY VACATED. Having carefully reviewed the parties' papers and considering their arguments and the relevant authority, and good cause appearing, the Court hereby grants Panasonic's motion.

**BACKGROUND**

Plaintiffs Dr. Dan and Jeannie Oliver ("Plaintiffs") bring this antitrust action against SD-3C, LLC ("SD-3C"), Panasonic, Toshiba Corporation and Toshiba America Electronic Components, Inc. (collectively, "Toshiba"), and SanDisk Corporation. The patents for SD Cards are owned by Panasonic, Toshiba, and SanDisk and licensed through SD-3C. (Compl.,

¶¶ 36, 39.) Plaintiffs allege that Panasonic, Toshiba, and SanDisk refuse to individually license their patents that they claim are essential to the SD Card. (*Id*., ¶ 40.)

One of Plaintiffs' attorneys, Mr. Healey, used to represent Panasonic on intellectual property matters when he was at a different law firm. Based on this prior representation, Panasonic moves to disqualify Mr. Healey and his current firm, Fish & Richardson.

The Court shall address specific additional facts in the remainder of this Order.

## ANALYSIS

**A.    Legal Standards Applicable to Motions to Disqualify.**

Lawyers who appear before the United States District for the Northern District of California are required to comply with the California Rules of Professional Conduct. *See* Civ. L.R. 11-4(a)(1) (requiring that all members of the bar of this Court and attorneys permitted to practice before the Court pro hac vice must be "familiar and comply with the standards of professional conduct required of members of the State Bar of California"). The standard for determining whether disqualification must be decided under California law. Further, "the decision to disqualify counsel for conflict of interest is within the court's discretion." *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) (citing *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980)). A court should examine a motion to disqualify counsel carefully "to ensure that literalism does not deny the parties substantial justice." *People ex rel Dept. of Corporations v. Speedee Oil Change Systs., Inc.*, 20 Cal. 4th 1135, 1144 (1999) ("*Speedee Oil*"). Thus, a court must balance such varied interests as a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that "tactical abuse underlies the disqualification motion." *Id.* at 1145. "Ultimately, however, a court must maintain ethical standards of professional responsibility." *Hitachi*, 419 F. Supp. 2d at 1161 (citing *Speedee Oil*, 20 Cal. 4th at 1145).

An order of disqualification of counsel is a drastic measure which courts should hesitate to impose except in circumstances of absolute necessity. *In re Marvel*, 251 B.R. 869, 871 (N.D.Cal. 2000), citing *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir.1983). Motions for disqualification are often tactically motivated and they tend to derail the efficient progress of

2

litigation. *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir.1983). The moving party, therefore carries a heavy burden and must satisfy a high standard of proof. *Id.* Because of the potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny. *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.,* 760 F.2d 1045, 1049 (9th Cir. 1985), citing *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982).

At issue in this case is California Rule of Professional Conduct 3-310, which precludes an attorney from, without the informed written consent of each client, accepting employment adverse to a former client, where by reason of the representation of the former client, the lawyer has obtained confidential information material to the employment. *See* Cal. Rule Prof'l Conduct 3-310. When, as here, the alleged conflict of interest arises from successive representation of clients with potentially adverse interests, the principal question is whether there is a "substantial relationship" between the subjects of the former and current relationships. *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994).

The determination whether a "substantial relationship" exists requires an inquiry into the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement. *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 234 (1999), citing *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445, 1455 (1991). In addition, it must be shown that the information from the prior representation is material to the current employment. *Morrison*, 69 Cal. App. 4th at 234, citing Rule 3-310(E). As part of its review, the court should examine the time spent by the attorney on the earlier case, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy. *Morrison*, 69 Cal. App. 4th at 234, citing *H.F. Ahmanson*, 229 Cal. App. 3d at 1455. Successive representations will be considered substantially related where the facts support a "rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen v.*

3

*Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003) (citations omitted); *see also Trone*, 621 F.2d at 998 ("Substantiality is present if the factual contexts of the two representations are similar or related.").

Courts have counseled against construing the "substantial relationship" test too narrowly. *See Jessen*, 111 Cal. App. 4th at 712; *see also Openwave Sys., Inc. v. 724 Solutions (US) Inc.*, 2010 U.S. Dist. LEXIS 49628, *14-15, 17 (N.D. Cal. April 22, 2010) ("To posit overly restrictive limitations on what it is reasonable to assume is communicated between lawyers and their clients does not give adequate recognition to the fact that clients should not be expected to limit themselves to giving their attorneys only the information most relevant or critical to a particular engagement. Indeed, because clients often will not know what is or is not strictly relevant, it is likely that they frequently provide attorneys with far more than the bare minimum the attorneys need to carry out the assignment."). The Court in *Jessen* explained:

> Our concern is that limiting the comparison of the two representations to their precise legal and factual issues might operate unrealistically to the detriment of the first client. Depending upon the nature of the attorney's relationship with the former client ... the attorney may acquire confidential information about the client or the client's affairs which may not be directly related to the transaction or lawsuit at hand but which the attorney comes to know in providing the representation to the former client with respect to the previous lawsuit or transaction.

*Id.* Therefore, courts "ascribe to the word 'subjects' ... a broader definition than the discrete legal and factual issues involved in the compared representations." *Id.* The "subject" of a representation includes "information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues." *Id.* at 12-13.

Where the requisite substantial relationship exists, "access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm." *Flatt*, 9 Cal. 4th at 283 (emphasis in original); *see also Hitachi*, 419 F. Supp. 2d at 1161.

4

### B. There is a Substantial Relationship Between Mr. Healey's Prior Representation of Panasonic and the Instant Litigation.

There is no dispute that Mr. Healey had an attorney-client relationship with Panasonic. While at a former law firm, Weil, Gotshal & Manges LLP ("Weil"), Mr. Healey was lead counsel for and defended Panasonic in three intellectual property disputes. In these disputes, Panasonic was accused of patent infringement and Mr. Healey negotiated licensing agreements to Panasonic as part of the litigation settlements. Mr. Healey's representation of Panasonic in these cases was substantial.

In just one of these cases, *Antor Media Corp. v. Nokia, Inc.*, Case No. 05-cv-186 (E.D. Tex.), Weil billed Panasonic just under six and a half million dollars for its legal services. (Declaration of Tetsuyuke Watanabe ("Watanabe Decl."), ¶ 12). Healey represented Panasonic in this case for almost two years and negotiated a settlement agreement over several months. (*Id.*, ¶ 3, 4; Declaration of Aldo A. Badini ("Badini Decl."), Ex. 1.) During the settlement negotiations, Mr. Healey evaluated various settlement and patent licensing proposals and presented counter-proposals after consulting with Panasonic's personnel. Mr. Healey also represented Panasonic in the mediation of that case. (Watanabe Decl., ¶¶ 4. 5; *see also* Declaration of Yasushi Ueda ("Ueda Decl."), ¶ 5 ("Mr. Healey personally worked on obtaining the settlement and patent license agreement that ended Panasonic's involvement in [this case].".) During the course of Mr. Healey's representation of Panasonic, Panasonic communicated with him regarding Panasonic's patent licensing and settlement considerations. (Ueda Decl., ¶ 6.) Panasonic's in-house counsel for the Intellectual Property Rights Operations Company of Panasonic Corporation avers that the same considerations also would have been relevant to Panasonic's participation in the SD-3C and Panasonic's licensing of patents relevant to the SD-3C specification. (*Id.*) Through Mr. Healey's strategy discussions with Panasonic, Panasonic's in-house counsel further avers that Mr. Healey learned of Panasonic's internal litigation and settlement negotiation considerations regarding intellectual property disputes regarding patents and patent licensing. (*Id.*, ¶ 7.) Notably, the Intellectual Property Department of Panasonic Corporation to which Mr. Healy reported during his representation of

5

1 Panasonic is the same Intellectual Property Department which was charged with overseeing the
2 licensing of Panasonic's patents related to the SD-3C specification, as well as Panasonic's
3 participation in SD-3C, LLC. (*Id.*, ¶ 8.)

4 In another case, *Technology Properties Ltd. v. Fujitsu Ltd.*, Case No. 05-cv-494 (E.D.
5 Tex.), Mr. Healey represented Panasonic as lead counsel for almost a year and half. (Badini
6 Decl., Ex. 2. Watanabe Decl., ¶ 7.) In the course of his representation, Mr. Healey participated
7 in discussions concerning case strategy and settlement issues. (Watanabe Decl., ¶ 8.)

8 In the third matter, which the parties refer to as the Magnaquench matter, Mr. Healey
9 represented Panasonic in an intellectual property dispute from June 2001 through February
10 2002 in which he successfully negotiated a settlement which avoided litigation. (Watanabe
11 Decl., ¶¶ 9, 11.)

12 Moreover, while Mr. Healey was representing Panasonic on these intellectual property
13 matters, other attorneys at Weil provided antitrust and patent licensing advice to Panasonic
14 relating to the consortium, SD-3C, LLC and licensing arrangements being challenged in the
15 instant litigation. (Declaration of Megumi Morizono, ¶ 2; Declaration of Jeffrey L. Kessler
16 ("Kessler Decl."), ¶ 4; Ueda Decl., ¶ 8). Mr. Kessler communicated with Mr. Healey regarding
17 their representation of Panasonic on the Magnaquench matter at the same time that Mr. Kessler
18 was representing Panasonic regarding the SD-3C and related patent licensing matters. (Kessler
19 Decl., ¶ 3, Ex. 1.) Another Weil attorney, Edmond Courtroul, who worked extensively on the
20 Magnaquench matter with Mr. Healey, was also providing advice to Panasonic on the SD Card
21 consortium and proposed SD licensing arrangements at the same time. (Watanabe Decl., ¶ 10.)

22 In the instant action, Plaintiffs are accusing Panasonic, as well as the other defendants,
23 *inter alia*, of refusing to provide licenses on its patents provided to SD-3C. (Compl., ¶ 40 ("The
24 Cartel members refuse to license their utility patents that they claim are essential to the SD Card
25 individually or separately from the SD_3C for the field of use of SD Cards.").) In light of Mr.
26 Healey's substantial representation of Panasonic in three intellectual property disputes which
27 were settled through the issuance of patent licenses and given the factual and legal issues
28 involved in this case, Panasonic has met its burden to show that disqualification is warranted.

6

The Court finds that Mr. Healy and Fish & Richardson construe Mr. Healey's prior representation of Panasonic too narrowly. Despite the lack of overlapping identical factual or legal issues, the Court finds it likely that over the years in which Mr. Healey defended Panasonic and interacted with in-house counsel within the Intellectual Property Department, Panasonic would have revealed confidential information which would be relevant and material to the "evaluation, prosecution, settlement or accomplishment of the current representation." *Jessen*, 111 Cal. App. 4th at 713. Therefore, the Court concludes that Panasonic has met its burden to show that there is a substantial relationship between Mr. Healey's prior representation of Panasonic and the current litigation and, therefore, that a conflict exists.

In light of the Court's finding on this point, the Court also concludes that the conflict must be imputed to the entire Fish & Richardson firm. *See Flatt*, 9 Cal. 4th at 283; *see also Hitachi*, 419 F. Supp. 2d at 1161.

## CONCLUSION

For the reasons set forth above, Panasonic's motion is GRANTED and Mr. Healey and Fish & Richardson are disqualified from representing Plaintiffs on this matter.

**IT IS SO ORDERED.**

Dated: August 4, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

7