# EXHIBIT B



**THE STATE BAR OF CALIFORNIA**

180 HOWARD STREET, SAN FRANCISCO, CALIFORNIA 94105-1639

OFFICE OF THE CHIEF TRIAL COUNSEL
ENFORCEMENT
Russell G. Weiner, Interim Chief Trial Counsel

TELEPHONE: (415) 538-2000
TDD: (415) 538-2231
FACSIMILE: (415) 538-2220
http://www.calbar.ca.gov

DIRECT DIAL: (415) 538-2063

June 15, 2010

Audrey Hollins, Director
Office of Professional Competence, Planning &
Development
State Bar of California
180 Howard Street
San Francisco, California 94105

re:   Comments of the Office of the Chief Trial Counsel to Proposed
      Amendments to the Rules of Professional Conduct

Dear Ms. Hollins:

Preliminarily, the Office of the Chief Trial Counsel (OCTC) would like to thank Harry B. Sondheim, Chair, Mark L. Tuft and Paul W. Vapnek, Co-Vice-Chairs, and the members of the Commission for the Revision of the Rules of Professional Conduct, for the opportunity to submit comments to the proposed amendments to the Rules of Professional Conduct, as released for public comment by the Board of Governors.  We appreciate the Commission's considerable efforts in crafting rules of conduct for California attorneys relevant to our contemporary legal environment.  While we concur with many of the Commission's recommendations, we raise some points of disagreement.  Our disagreement is offered in the spirit of aiding in the adoption of rules which can be practically and fairly understood by the attorneys in this state and applied in a uniform fashion by both this Office and the State Bar Court. While OCTC has submitted comments in the past to some of these rules as they were initially submitted,[1] we welcome this opportunity to comment on the entire set of rules and in context.  Further, there have been changes to the proposed rules since our original comments.[2]  We hope you find our thoughts helpful.

**SUMMARY**

We summarize our main concerns as follows:

- Some of the rules are becoming too complicated and long, making them difficult to understand and enforce;

- There are way too many Comments to the Rules, making the rules unwieldy, confusing, and

---

[1] OCTC refers the Commission to its previous comments and recommendations.

[2] We are not commenting on the rules that were not recommended or tentatively adopted by the Board of Governors (BOG).

Letter from OCTC
To Randall Difuntorum
June 15, 2010

> difficult to read, understand, and enforce.  Many of the Comments are more appropriate for treatises, law review articles, and ethics opinions.  The Comments clutter and overwhelm the rules.  We recommend that most of the Comments be stricken or that the Rules be adopted without the Comments;
>
> - Many of the Comments are too large and thus bury the information sought to be presented;
>
> - Several of the Comments are in our opinion legally incorrect (i.e. Comment 9 of Rule 1.8.1 and Comment 5 of rule 1.9);
>
> - One of the Comments invades OCTC's prosecutory discretion (i.e. Comment 6 of Rule 8.4);
>
> - Some of the rules are confusing and inconsistent with the State Bar Act (i.e. that an attorney's misrepresentation to a court cannot be based on gross negligence);
>
> - Some of the rules attempt to define and limit provisions adopted by the Legislature in the State Bar Act (i.e. Rule 1.6's defining the scope of confidentiality in Business & Professions Code section 6068(e)); and
>
> - Some of the proposed rules deviate unnecessarily from the ABA Model Rules (i.e. proposed rules 3.9, 4.4 and 8.4).[3]

**GENERAL COMMENTS**

OCTC finds many of the proposed rules too lengthy and complicated, often making them difficult to understand and enforce.  There are way too many Comments to the Rules, making the rules unwieldy, confusing, and difficult to read, understand, and enforce.  We would strongly suggest that the rules be simplified and the Comments either be significantly reduced or entirely eliminated.  Otherwise, it is hard to imagine the attorneys of this state reading and understanding the entirety of the rules and official Comments.  Further, we believe that some of the Comments are legally incorrect.

The Rules and Comments are not meant to be annotated rules, a treatise on the rules, a series of ethics opinions, a law review article, or musings and discussions about the rules and best practices.  There are other more appropriate vehicles for such discussions and expositions.

Every attorney is required to know and understand the Rules of Professional Conduct.  This is why ignorance of a rule is no defense in a State Bar proceeding.  (See *Zitny v. State Bar* (1966) 64 Cal.2d 787, 793.)  Yet, the proposed rules (including Comments) are 99 pages; contain 68 rules; and almost 500 Comments.  One rule alone has 38 Comments.[4]

In contrast, the current rules are 30 pages; contain 46 rules; and 94 comments.[5]  The 1974 rules were 13 pages; contained 25 rules; and 6 comments.[6]  The original 1928 rules were 4 pages long; contained 17 rules; and had no comments.

---

[3] Unless stated otherwise, all future references to section are to a section of the  Business & Professions Code; all references to rule are to the current Rules of Professional Conduct; all references to proposed rule is to the Commission's proposed Rule of Professional Conduct; and all references to the Model Rules are to the ABA's current Model Rules of Professional Conduct.

[4] See proposed rule 1.7.  Another rule has 26 comments.  (See proposed rule 1.6.)

[5] The current rules list them as Discussion paragraphs; most are unnumbered, but OCTC estimates there are 94 paragraphs of discussion and will refer to them as comments so that there is a standard reference.

[6] The 1974 rules had 6 footnotes (*), four simply reference another rule and two contain a short substantive discussion.

      Many of the proposed Comments appear to be nothing more than a rephrasing of the rule or an annotated version of the rule.  If the rule is ambiguous or not clear enough, the solution should not be a Comment rephrasing the rule, but a redrafting of the rule so it is clear and understandable.  Likewise, discussing the purpose of the rule, best practices, or the limits of the rule are not proper Comments to the rules.  There are other better vehicles for such discussions.  Lawyers can read and conduct legal research when needed.

      In addition, the rules and Comments make too much use of references to other rules and Comments, making it hard to understand the rules.  Some of the Comments are too long and, thus, bury information in a very long Comment.  Other Comments appear to be legally incorrect.  We would recommend that most of the Comments be stricken or that the Rules be adopted without the Comments.  It is our understanding that about seven states have not adopted the ABA's Comments, although two of those still provide the ABA's comments as guidance.

      We are also concerned that there are too many separate conflicts rules (see rules 1.7, 1.8, 1.9, 1.10, 1.11, 1.12, 1.13(g), and 1.18) and they often incorporate each other, making it difficult to comprehend, understand, and enforce them.[7]

---

[7] There is actually no Rule 1.8, but several separate rules, going from 1.8.1 through 1.8.11.

Letter from OCTC
To Randall Difuntorum
June 15, 2010

**Rule 1.9. Duties to Former Clients.**

1. OCTC is concerned with subparagraphs (a) and (b) of proposed Rule 1.9 because the Commission has added the requirement that the matter be materially adverse while the current rule only requires that it be adverse.  This would appear to be a significant change in the law.  Moreover, while the term "materially adverse" is in the Model Rules, neither the subparagraph nor proposed rule 1.0 clarifies what that means and why the lawyer, not the client, should decide whether it is material.  Further, it creates uncertainty for lawyers and makes it more difficult to prosecute a violation.  OCTC supports the Commission's inclusion of Business & Professions Code section 6068(e) in subparagraph (b)(2) and thanks them for making that change.

2. OCTC is concerned with the use of the term "knowingly" in subparagraph (b). This appears to sanction a lack of conflict procedures regarding an attorney's former clients at another firm and is inconsistent with Comment 4, rule 1.7, which states: "Ignorance caused by a failure to institute such procedures [referring to conflict detection procedures] will not excuse a lawyer's violation of this Rule."  Although negligence is not a basis for discipline, gross negligence or recklessness is.  OCTC recognizes that conflict procedures may be more difficult when they involve clients from a former law firm, but that should be taken into account in determining if the conflict is the result of excusable negligence or gross negligence.  Further, by using the term "knowingly" the Commission may inadvertently also affect disqualification rulings in civil and criminal cases.

3. OCTC is concerned about the phrase "except as these Rules or the State Bar Act would permit…or when the information has become generally known" in subparagraph (c)(1).  This concern goes back to our concern whether the confidentiality rules should require some disclosures, such as when the court or law requires them.  Further, it is unclear what is meant by "information generally known."  Business & Professions Code section 6068(e) has traditionally been understood to preclude attorneys from disclosing information they obtained from the client that might be of public record.  (See *In the Matter of Johnson* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 179, 189-190.)  Is California now going to allow lawyers to use that information against the former client even though they learned of it during or because of the representation?  OCTC does not think California should.  It opposes any change in the law that allows lawyers to use information obtained from the client as a result of a representation, even if it is already in the public record.  Further, the paragraph would make the disclosures prohibited by the rule more difficult to prosecute as OCTC would have to prove the information was not "generally known."

4. Paragraph (c)(2) applies some exceptions to revealing information of former clients "with respect to current clients."  Like paragraph (c)(1), paragraph (c)(2) has the issue of whether the confidentiality rules should require some disclosures, such as when the court or law requires them.  Unlike paragraph (c)(1), paragraph (c)(2) does not include the language "or when the information is generally known."  Although this proposed language is also in the Model Rules version, OCTC is not sure when subparagraph (c)(1) applies or when subparagraph(c)(2) applies.

5. OCTC has problems with some of the Comments to this proposed rule, particularly Comment 5.  Comment 5 states that the substantial relationship test applies in disqualification cases, but "might not be necessary" in disciplinary proceedings or civil litigation. (The substantial relationship test states that when an attorney's former representation is substantially related to a current representation it is conclusively presumed that the attorney received and knows of confidential information from the first client.)  However, the statement in Comment 5 that the

presumption might not be necessary in disciplinary proceedings or civil litigation is contrary to established State Bar decisional law.  In *In the Matter of Lane* (Review Dept. 1994) 2 Cal. State Bar Ct. Rptr. 735, 747, the court held that the substantial relationship test applies in attorney discipline cases.  It wrote: "Actual possession of confidential information need not be demonstrated; it is enough to show a substantial relationship between representations to establish a conclusive presumption that the attorney possesses confidential information adverse to a client. (Citation omitted.) " (Id at 747.)

If there is to be a change in the law, it should be in the rule, not a comment. The Comment does not even advise or address the *Lane* decision.  Further, OCTC disagrees with the analysis in Comment 5.  Comment 5 states that the reason for this suggested difference is that in a disciplinary proceeding or civil litigation the new client may not be present and so the attorney can provide the evidence concerning information actually received.  However, these are public proceedings; and so the new client can learn of them even if not present.  Further, nothing prevents the new client from being present or reading the pleadings or a transcript.  The new client may also be a witness.

Moreover, the courts have held that the conclusive presumption is a "rule of necessity." Thus, the presumption exists because it is not within the power of the client (or anybody else) to prove what is in the mind of the attorney.  Nor should the attorney have to engage in a subtle evaluation of the extent to which the lawyer acquired relevant information and the actual use of that knowledge and information. (*See e.g. Global Van Lines Inc v. Superior Court* (1983) 144 Cal.App.3d 483, 489; *Western Continental Operating Co v. Natural Gas Co*. (1989) 212 Cal.App.3d 752, 759.)  Excluding the presumption in disciplinary and civil cases would force OCTC and the other party/former client to try to prove what was provided to the attorney and what is in the attorney's mind.  It would force the State Bar and parties to civil litigation to obtain and reveal confidential information.  It would create numerous disputes as to what the client really told the lawyer.  OCTC's experience is that the lawyers often claim that no confidences were disclosed, no matter how absurd that claim is.  In fact, that is exactly what attorney Lane claimed in his State Bar matter.  (See *In the Matter of Lane*, supra, 2 Cal. State Bar Ct. Rptr at 747.)

Further, the conflicts rule is intended to prevent the use of confidential information, not just its disclosure, and it is also intended to prevent the attorney from being put in the position of having to resolve conflicting obligations.  Thus, the presumption is just as necessary in State Bar and civil cases as in disqualification motions.

The presumption springs from the fact that all attorney-client communications are presumptively confidential and any communication between the lawyer and the client in the first representation must necessarily have been material to the ongoing matter in which the lawyer has switched sides. (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 328.)  It also springs from the common sense notion that clients necessarily provide confidential information material to their lawyers. Thus, the duty of confidentiality compliments the evidentiary presumption that communications from client to attorney during their professional relationship are confidential and involves public policy of paramount importance which is reflected in various statutes as well as the Rules of Professional Conduct.  (See *In the Matter of Johnson*, *supra*, 4 Cal. State Bar Ct. Rptr. at 189-190; *In re Jordan* (1972) 7 Cal.3d 930, 940-941.)

Letter from OCTC
To Randall Difuntorum
June 15, 2010

> Having such a presumption is not unusual in discipline cases. As previously discussed, under rule 3-300 (proposed rule 1.8.1) the attorney has the burden of showing that the transaction is fair and reasonable and fully known and understood by the client. While the primary purpose of the presumption under proposed rule 1.9 is to protect client confidences, the presumption also exists to preserve the attorney's duty of loyalty to the client. (See *City National Bank v. Adam, supra,* Cal.App.4th at 328; *In re I Successor Corp* (Bkrtcy S.D.N.Y. 2005) 312 B.R. 640, 656.)
>
> Any concern about tangential matters being covered by this presumption is already addressed in the presumption. There is a limited exception to the presumption in those rare instances where the lawyer can show that there was no opportunity for confidential information to be divulged. However, the limited exception is not available when the lawyer's former and current representation is on the opposite sides of the very same matter or the current matter involves the work the lawyer performed for the former client. (*City National Bank v. Adams, supra,* 96 Cal.App.4th at 327-328.) There is no reason to exclude the presumption in disciplinary cases or civil cases since the basis for the disqualification is the same as the basis for attorney discipline: the need to maintain ethical standards of professional responsibility. (See *People ex rel Department of Corporations v. Speedee Oil Change Systems* (1999) 20 Cal.4th 1135, 1145.)
>
> Most importantly, without the conclusive presumption, OCTC would be forced to require from the client or the attorney in a public forum the very disclosure the rule is intended to protect. The courts have held that it is the possibility of the breach of confidence, not the fact of the breach, which triggers the conflict rule. (See *Woods v. Superior Court* (1983) 149 Cal.App.3d 931, 934.) While *Woods* addresses a disqualification motion, its holding is equally applicable in discipline and civil cases. Further, as previously discussed, the presumption is already in the disciplinary case law. OCTC requests that that portion of Comment 5 implying that the presumption does not apply to discipline cases be stricken.

6. If the Commission adopts OCTC's position that knowingly should be stricken from subparagraph (b) then Comments 8-9 should be stricken.

7. Again, there are too many comments and they are more appropriate for treatises, law review articles, and ethics opinions, especially comments 1-4 and 7. Comment 10 belongs in proposed rule 1.6, not this rule. The first sentence of Comment 11 is unnecessary. Comment 11 refers to subparagraph (c) of proposed rule 1.9. OCTC is concerned that, like in proposed subparagraph (c) itself, what is meant by "generally known information" and this Comment appears inconsistent with the established law that Business & Professions Code section 6068(e) is broader than the attorney-client privilege. OCTC opposes any change to the requirement that precludes an attorney from disclosing or using information provided by a client to the attorney that might be in the public record.

8. As previously discussed regarding other conflict rules, OCTC opposes advanced waivers. (See OCTC's discussion to rule 1.7.) It recommends that the second sentence of this Comment be stricken. The commission should also consider whether the rest of the Comment is necessary in light of the rules cited in the Comment.