1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Cal. Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
    50 California Street, 22nd Floor
3   San Francisco, California 94111
    Telephone: (415) 875-6600
4   Facsimile: (415) 875-6700

5   Kevin P.B. Johnson (Cal. Bar No. 177129)
    kevinjohnson@quinnemanuel.com
6   Victoria F. Maroulis (Cal. Bar No. 202603)
    victoriamaroulis@quinnemanuel.com
7   555 Twin Dolphin Drive 5th Floor
    Redwood Shores, California 94065
8   Telephone: (650) 801-5000
    Facsimile: (650) 801-5100
9
    Michael T. Zeller (Cal. Bar No. 196417)
10  michaelzeller@quinnemanuel.com
    865 S. Figueroa St., 10th Floor
11  Los Angeles, California 90017
    Telephone: (213) 443-3000
12  Facsimile: (213) 443-3100

13  Attorneys for SAMSUNG ELECTRONICS
    CO., LTD., SAMSUNG ELECTRONICS
14  AMERICA, INC. and SAMSUNG
    TELECOMMUNICATIONS AMERICA, LLC

15

16                  UNITED STATES DISTRICT COURT

17      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18  APPLE INC., a California corporation,          CASE NO. 11-cv-01846-LHK

19              Plaintiff,

20          vs.
                                                   **SAMSUNG'S MOTION TO DISMISS AND
21  SAMSUNG ELECTRONICS CO., LTD., a               STRIKE APPLE'S COUNTERCLAIMS**
    Korean business entity; SAMSUNG
22  ELECTRONICS AMERICA, INC., a New               **Date: September 22, 2011**
    York corporation; SAMSUNG                      **Time: 1:30 p.m.**
23  TELECOMMUNICATIONS AMERICA,                    **Place: Courtroom 4, 5th Floor**
    LLC, a Delaware limited liability company,     **Judge: Hon. Lucy H. Koh**

24              Defendants.

25

26

27

28

SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ......................................................................................... v

INTRODUCTION ................................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................................... 2

I.     Procedural History .................................................................................................................. 2

II.    The Parties' Involvement in Standard-Setting Organizations ............................................ 3

III.   The Relevant Intellectual Property Rights Policies ............................................................ 4

ARGUMENT.. ...................................................................................................................................... 4

I.     Legal Standard of Dismissal ................................................................................................ 4

     A.    Fed. R. Civ. P. 12(b)(6): Dismissal of Implausible Claims ..................................... 4

     B.    Fed. R. Civ. P. 12(f): Striking Redundant Claims.................................................... 5

II.    Claims Under § 2 of the Sherman Act Must Plead Actual Facts of Monopoly
      Conduct and Antitrust Injury or Face Dismissal ............................................................... 5

     A.    Apple Has Not Pled Facts to Support a Finding of Monopoly Conduct.................. 6

     B.    Apple Has Not Pled Facts to Support a Finding of Antitrust Injury ........................ 9

III.   The Actions of a Single Member of a Standard-Setting Organization Cannot
      Violate § 1 of the Sherman Act ........................................................................................... 10

IV.   Apple's Claims Under Unfair Competition Law Mirror Its Antitrust Claims and
      Should Be Dismissed .......................................................................................................... 13

V.    Duplicative Declaratory Judgment Claims Must Be Dismissed ....................................... 14

CONCLUSION .................................................................................................................................... 15

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>

3

Alameda Cnty. Builders' Exch. v. F. P. Lathrop Constr. Co.,
    4 Cal. 3d 354 (1971) ................................................................................................... 11

4

Allied Tube & Conduit Corp. v. Indian Head, Inc.,
    486 U.S. 492 (1988) ............................................................................................. 11, 12

5

6

Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.,
    190 F.3d 1051 (9th Cir. 1999) ..................................................................................... 6

7

Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.,
    456 U.S. 556 (1982) ............................................................................................. 11, 12

8

9

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ................................................................................................. 5

10

ASM America v. Genus, Inc.,
    No. 01-2190, 2002 WL 24444 (N.D. Cal. Jan. 9, 2002) .............................................. 7

11

12

Balistreri v. Pacifica Police Dep't,
    901 F.2d 696 (9th Cir. 1988) ....................................................................................... 5

13

Batdorf v. Trans Union,
    No. C 00-0501, 2000 U.S. Dist. LEXIS 6796 (N.D. Cal. May 16, 2000) ........................... 2

14

15

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ............................................................................................ passim

16

Bhan v. NME Hosps., Inc.,
    772 F.2d 1467 (9th Cir. 1985) ..................................................................................... 6

17

18

Broadcom Corp. v. Qualcomm Inc.,
    501 F.3d 297 (3d Cir. 2007) ........................................................................... 8, 9, 10, 12

19

Cel-Tech Commc'ns, Inc. v. L.A. Cellular,
    20 Cal. 4th 163 (1999) ............................................................................................... 13

20

Chip-Mender, Inc. v. Sherwin-Williams Co.,
    No. C 05-3465, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006) ........................................ 10

21

22

Consol. Metal Prods., Inc. v. Am. Petroleum Inst.,
    846 F.2d 284 (5th Cir. 1988) ..................................................................................... 12

23

Cooper v. Pickett,
    137 F.3d 616 (9th Cir. 1997) ....................................................................................... 7

24

25

Copperweld Corp. v. Independence Tube Corp.,
    467 U.S. 752 (1984) ............................................................................................. 11, 13

26

Fantasy, Inc. v. Fogerty,
    984 F.2d 1524 (9th Cir. 1993) ..................................................................................... 5

27

28

Hodgers-Durgin v. De La Vina,
    199 F.3d 1037 (9th Cir. 1999) ................................................................. 14

In re GlenFed, Inc. Sec. Litig.,
    42 F.3d 1541 (9th Cir. 1994) ..................................................................... 7

In re Netflix Antitrust Litig.,
    506 F. Supp. 2d 308 (N.D. Cal. 2007) ....................................................... 7

Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.,
    No. CV 07-00043, 2007 WL 4976364 (C.D. Cal. Oct. 29, 2007) ........................ 12

Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n,
    884 F.2d 504 (9th Cir. 1989) ..................................................................... 9

Livid Holdings Ltd v. Salomon Smith Barney, Inc.,
    416 F.3d 940 (9th Cir. 2005) ..................................................................... 5

Maple Flooring Mfrs.' Ass'n v. United States,
    268 U.S. 563 (1925) ................................................................................. 12

Partee v. San Diego Chargers Football Co.,
    34 Cal. 3d 378 (1983) ............................................................................... 11

Rambus Inc. v. FTC,
    522 F.3d 456 (D.C. Cir. 2008) ................................................................. 8, 9

Scott v. Pasadena Unified Sch. Dist.,
    306 F.3d 646 (9th Cir. 2002) ..................................................................... 14

Stickrath v. Globalstar, Inc.,
    No. C07-1941, 2008 WL 2050990 (N.D. Cal. May 13, 2008) ................... 5, 14

Swartz v. KPMG LLP,
    476 F.3d 756 (9th Cir. 2007) ..................................................................... 14

Texaco Inc. v. Dagher,
    547 U.S. 1 (2006) ..................................................................................... 10

Townshend v. Rockwell Int'l Corp.,
    No. C99-0400, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ................... 8, 14

United States v. Grinnell Corp.,
    384 U.S. 563 (1966) ................................................................................. 6

Statutes

15 U.S.C. § 1 ............................................................................................. 10

15 U.S.C. § 15(a) ................................................................................... 6, 13

Cal. Bus. & Prof. Code § 16720 et seq. ........................................... 10, 11, 12

Cal. Bus. & Prof. Code § 17200 et seq. .................................................. 13

SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS

Fed. R. Civ. P. 12(b)(6)................................................................................................................4

Fed. R. Civ. P. 12(f)...................................................................................................................5

Fed. R. Civ. P. 8(a)....................................................................................................................2

Fed. R. Civ. P. 9(b)....................................................................................................................7

**SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS**

1

## <u>NOTICE OF MOTION AND MOTION</u>

2      TO THE COURT AND TO ALL PARTIES:

3      PLEASE TAKE NOTICE that on Thursday, September 22, 2011, at 1:30 p.m., or as soon

4  thereafter as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 4, United

5  States District Court for the Northern District of California, Robert F. Peckham Federal Building,

6  280 South 1st Street, San Jose, CA 95113, Defendants Samsung Electronics Co., Ltd., Samsung

7  Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively

8  "Samsung") shall and hereby do move the Court for an order dismissing Counts XXVII to XXXII

9  of "Apple Inc.'s Counterclaims in Reply" filed on July 21, 2011, pursuant to Fed. R. Civ. P.

10  12(b)(6) and 12(f), with prejudice and without leave to amend, on the grounds that they fail to

11  state facts sufficient to state a claim and/or are duplicative of other affirmative defenses or

12  counterclaims alleged.

13      This motion is based on this Notice of Motion, the accompanying Memorandum of Points

14  and Authorities that follows, the pleadings on file in this action, and any further evidence or

15  argument that the Court may properly receive at or before the hearing.

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Apple's strategy throughout this litigation has been to unfairly maximize the burden on Samsung, by asserting every position its attorneys can imagine and then quickly jettisoning those positions after Samsung has invested the time and effort needed to defend against them.   Apple, for example, requested expedited discovery, including discovery on unreleased Samsung products, allegedly to prevent a threat of actual "confusion as to source, and . . . sponsorship or approval of Samsung products" stemming from Samsung's purported trademark and trade dress infringement. (D.N. 34.)   Shortly thereafter, Apple withdrew its claims of product confusion in an amended complaint (see D.N. 75) and, almost two months after its initial request, filed a preliminary injunction motion that did not address the future products Apple had originally insisted were at issue, or even assert trade dress or trademark infringement.   Apple's strategy amounts to little more than an attempt to smother its most prominent rival and the largest manufacturer of Android smartphones and to intimidate mobile phone carriers under an avalanche of meritless, rapidly evolving legal threats, rather than fairly competing in the marketplace.

Apple now attempts this same tactic in its Counterclaims in Reply.   (D.N. 124).   Instead of responding directly to Samsung's ground-breaking patents, Apple endeavors to confuse and complicate the issues by asserting a hodgepodge of poorly pled non-patent counterclaims, including monopolization under Section Two of the Sherman Act, concerted action under Section One of the Sherman Act and the California Cartwright Act, unfair competition under California law, and multiple declaratory judgment claims.   These counterclaims all loosely relate to Samsung's involvement with standard-setting organizations, specifically, the European Telecommunications Standards Institute and alleged commitments to license patents on fair, reasonable, and non-discriminatory (FRAND) terms.   Because Apple's antitrust and declaratory judgment counterclaims fail to plead actionable claims, they must be dismissed.[1]

---

[1]   Based on Federal Rule of Civil Procedure 12(a)(4), this motion extends the time for Samsung to answer Apple's counterclaims even though Samsung does not move as to every counterclaim.   This Court has previously held that a party is not required to file an answer to causes of action that it does not move to dismiss while the motion to dismiss is pending.   See, e.g., Batdorf v. Trans Union, No. C 00-0501, 2000 U.S. Dist. LEXIS 6796, at *12-13

1    First, Apple's antitrust counterclaims fail to state a claim upon which relief can be granted.

2    All three counterclaims relating to antitrust and competition law (the twenty-seventh, twenty-

3    eighth and twenty-ninth counterclaims) either fail to plead necessary elements of the claim or else

4    fail to plead facts sufficient to plausibly assert the claim as required by federal pleading standards.

5    See Fed. R. Civ. P. 8(a); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).   These

6    counterclaims must be dismissed pursuant to Rule 12(b)(6).

7    Second, Apple's non-patent declaratory judgment counterclaims (the thirtieth, thirty-first,

8    and thirty-second counterclaims) are duplicative of affirmative defenses and counterclaims already

9    asserted in this proceeding.   Furthermore, the declaratory judgment counterclaims serve no

10    purpose, provide no additional obtainable relief, and raise no factual or legal issues that will not

11    already be resolved by this Court in addressing the affirmative defenses and other counterclaims.

12    Thus, the Court should strike these counterclaims pursuant to Rule 12(f).

### FACTUAL AND PROCEDURAL BACKGROUND

14    **I.    PROCEDURAL HISTORY**

15    Apple filed its Complaint on April 15 (and subsequently amended it on June 16), alleging

16    that Samsung infringes trademarks, trade dress and patents related to Apple's iPhone and other

17    products.   (D.N. 1; D.N. 75.)   Of the 29 Samsung products that Apple specifically identifies as

18    allegedly infringing its intellectual property rights, all of them are Samsung mobile devices

19    (including 27 mobile phones).   (D.N. 75 at ¶ 92).   Among other things, Apple accuses Samsung

20    of infringing patents relating to user interface elements of mobile devices.

21    On July 1, Samsung filed its Answer, Affirmative Defenses, and Counterclaims to Apple's

22    Amended Complaint.   (D.N. 80.)   Samsung's counterclaims included infringement claims based

23    on twelve Samsung utility patents.   These patents all relate to mobile devices, including use of

24    Universal Mobile Telecommunications System (UMTS) technology and the Wideband Code-

25    Division Multiple Access (W-CDMA) cellular communication protocol, as well as user interface

26    elements and user features of mobile devices.

27

28

(N.D. Cal. May 16, 2000).   Samsung will file answers to any remaining counterclaims after the instant motion has been resolved by the Court.

1    On July 21, Apple filed its Answer, Defenses, and Counterclaims in Reply to Samsung's

2    Counterclaims.   (D.N. 124.)   In addition to counterclaims for declaratory judgment of

3    noninfringement and invalidity on each patent asserted by Samsung, Apple's counterclaims also

4    included claims for breach of contract, promissory estoppel, violations of the Sherman Act, the

5    California Cartwright Act, and California unfair competition law, and declaratory judgment

6    counterclaims regarding the enforceability of Samsung's counterclaim patents.   These claims all

7    relate to Samsung's activities before standard-setting organizations ("SSOs"), such as the

8    European Telecommunications Standards Institute ("ETSI").   Samsung now moves to dismiss or

9    strike Apple's twenty-seventh through thirty-second counterclaims.

10   **II.      THE PARTIES' INVOLVEMENT IN STANDARD-SETTING ORGANIZATIONS**

11   Apple is a California corporation that designs and manufactures handheld mobile devices,

12   personal computers, and portable media players.[2]   (D.N. 75 at ¶ 13.)   Apple's mobile devices

13   include chipsets that enable users to communicate with carrier networks.   Apple purchases these

14   chipsets from third parties, such as Qualcomm, which license patents essential to that technology

15   from Samsung.   (D.N. 124 Counterclaims ¶¶ 64-65.)

16   Samsung and Apple both participate in SSOs that develop the Universal Mobile

17   Telecommunications System (UMTS) standard, which is implemented by the communication

18   chipsets used by Apple's mobile devices at issue in this litigation.   (Id. ¶¶ 52, 60.)   Specifically,

19   Apple and Samsung are both members of ETSI.   (Id.)

20   Technology standards are critical to the development of wireless data and

21   telecommunications technologies by facilitating interoperability among cellular networks, carriers

22   and devices.   (Id. ¶¶ 20-21.)   Once standards are established, competing manufacturers and

23   carriers can offer their own standards-compliant products and services.   (Id.)   Standards also

24   serve other procompetitive purposes, such as reducing costs for suppliers and purchasers,

25

26

27   [2]   This section is primarily based on the allegations set forth in Apple's Amended Complaint and Counterclaims
in Reply, as well as any documents cited in those pleadings.   Samsung does not accept as true any allegations set

28   forth in Apple's pleadings, but relies on them in this motion to demonstrate that Apple's non-patent counterclaims
should be dismissed.

1  increasing manufacturing volume, and increasing competition among suppliers within a given

2  standard.   (Id. ¶ 22.)

3      Although standards result from coordination and compromise among competitors, certain

4  aspects of a standard may be – and often are – covered by patents, including multiple patents

5  owned by Samsung and asserted in this action.   (Id. ¶ 23.)   Samsung has declared its asserted

6  UMTS patents as essential to the practice of the UMTS standard.   (Id. ¶ 40.)

7  **III.      THE RELEVANT INTELLECTUAL PROPERTY RIGHTS POLICIES**

8      In accordance with its standard-setting activities, ETSI promulgates an IP Rights policy to

9  address standards contributions that utilize patented technology.   (Id. ¶ 47.)   For example, Clause

10  4 of the ETSI Policy requires that members use "reasonable endeavors" to inform ETSI "in a

11  timely fashion" of any patents that might be essential to the standard.   (Id. ¶ 48.)   Clause 6 of the

12  ETSI Policy further dictates that an ETSI member owning essential patents will be asked to offer

13  licenses to essential patents on FRAND terms.   (Id. ¶ 49.)

14      According to Apple's allegations, Samsung failed to disclose the '516 Patent, the '941

15  Patent and the '001 Patent to ETSI during the standardization process.   (Id. ¶ 54.)   Apple

16  additionally alleges that Samsung has filed FRAND declarations but refused to offer FRAND

17  licenses on its asserted standards-essential patents.   (Id. ¶ 57.)

18      Apple further alleges that after it filed this action, Samsung, by letter dated April 21, 2011,

19  excluded Qualcomm's sales of chipsets to Apple from the coverage of covenants in its license

20  agreements with Qualcomm not to assert essential patents against Qualcomm customers.   (Id. ¶

21  65.)

22                              <u>**ARGUMENT**</u>

23  **I.      LEGAL STANDARD OF DISMISSAL**

24      **A.      Fed. R. Civ. P. 12(b)(6): Dismissal of Implausible Claims**

25      Pursuant to Rule 12(b)(6), the Court may dismiss any claim that does not contain sufficient

26  factual matter to state a facially plausible claim for relief.   Fed. R. Civ. P. 12(b)(6); <u>Bell Atl.</u>

27  <u>Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007).   In doing so, the Court must "construe all

28  allegations of material facts in the light most favorable to the nonmoving party."   <u>Livid Holdings</u>

**SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS**

1    Ltd v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).   Dismissal may be either

2    for "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

3    cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

4    The nonmoving party, however, must plead facts that, if regarded as true, establish more than a

5    mere "speculative" right to relief.   Twombly, 550 U.S. at 555.   A plaintiff must make a

6    "'showing,' rather than a blanket assertion, of entitlement to relief."   Id. at 556 n.3.   "A claim has

7    facial plausibility when the plaintiff pleads factual content that allows the court to draw the

8    reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal,

9    129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).   "[C]onclusory allegations" of

10   illegal conduct do not satisfy this requirement.   Twombly, 550 U.S. at 557.

11         **B.    Fed. R. Civ. P. 12(f): Striking Redundant Claims**

12         Pursuant to Rule 12(f), the Court may strike any "insufficient defense" or material that is

13   "redundant, immaterial, impertinent or scandalous" from a pleading.   Fed. R. Civ. P. 12(f).   A

14   Rule 12(f) motion serves to "avoid the expenditure of time and money that must arise from

15   litigating spurious issues by dispensing with those issues prior to trial."   Fantasy, Inc. v. Fogerty,

16   984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).   Specifically

17   as concerns declaratory judgment claims, a Rule 12(f) dismissal is appropriate for claims that are

18   "repetitious of issues already before the court."   Stickrath v. Globalstar, Inc., 2008 WL 2050990,

19   at *3 (N.D. Cal. May 13, 2008) (quoting Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc.,

20   No. 05 C 6656, 2006 WL 3782916, at *3 (N.D. Ill. Dec. 20, 2006)).   Such claims can be

21   identified by "the complete identity of factual and legal issues between the complaint and the

22   counterclaim."   Id. at *4 (quoting Pettrey v. Enterprise Title Agency, Inc., 2006 WL 3342633, at

23   *3 (N.D. Ohio Nov. 17, 2006)).

24   **II.    CLAIMS UNDER § 2 OF THE SHERMAN ACT MUST PLEAD ACTUAL FACTS**

25            **OF MONOPOLY CONDUCT AND ANTITRUST INJURY OR FACE DISMISSAL**

26         Apple's twenty-seventh counterclaim alleges that Samsung has violated Section Two of

27   the Sherman Act by unlawfully monopolizing the markets on technologies implementing each of

28   the functions claimed in Samsung's standards-essential patents, which Apple defines as the "Input

1   Technologies Markets."   (See D.N. 124 Counterclaims ¶ 84.)   Apple's counterclaim is fatally

2   defective, however, because it offers only conclusory assertions of monopoly power, unlawful

3   activity and antitrust injury rather than facts establishing a plausible claim.   It must thus be

4   dismissed under Twombly.

5   　　　　A claim of unlawful monopolization under Section Two of the Sherman Act requires

6   showings of "(1) the possession of monopoly power in the relevant market and (2) the willful

7   acquisition or maintenance of that power as distinguished from growth or development as a

8   consequence of a superior product, business acumen, or historic accident."   United States v.

9   Grinnell Corp., 384 U.S. 563, 570-71 (1966).   Additionally, a private party asserting a Section

10   Two cause of action must also demonstrate antitrust standing, see 15 U.S.C. § 15(a), which, under

11   Ninth Circuit jurisprudence, involves the following factors: "(1) the nature of the plaintiff's

12   alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the

13   directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative

14   recovery; and (5) the complexity in apportioning damages."   Am. Ad Mgmt., Inc. v. Gen. Tel. Co.

15   of Cal., 190 F.3d 1051, 1054 (9th Cir. 1999).   Greater weight is typically given to the first factor,

16   antitrust injury, which is "necessary, but not always sufficient, to establish standing under § 4 [of

17   the Clayton Act]."   Id. at 1055 (quoting Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104,

18   110 n.5 (1986)).

19   　　　　The Ninth Circuit has identified four requirements for antitrust injury in the context of a

20   private § 2 cause of action: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that

21   flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws

22   were intended to prevent."   Id.   Furthermore, the party claiming injury must "be a participant in

23   the same market as the alleged malefactors."   Bhan v. NME Hosps., Inc., 772 F.2d 1467, 1470

24   (9th Cir. 1985).

25   　　**A.**　　　　**Apple Has Not Pled Facts to Support a Finding of Monopoly Conduct**

26   　　　　Apple offers only conclusory assertions that Samsung obtained monopoly power in the

27   Input Technologies Markets and that any monopoly power was obtained by unlawful,

28

1   anticompetitive means.   Apple does not plead any facts sufficient to state a plausible claim, as

2   required by <u>Twombly</u>.   <u>Twombly</u>, 550 U.S. at 555-56.

3          At the heart of Apple's § 2 counterclaim is the allegation that Samsung deceived ETSI by

4   failing to disclose essential patents during the standardization process and by making false

5   promises to license essential patents on FRAND terms.   (D.N. 124 Counterclaims ¶ 177.)

6   Because Apple's counterclaim alleges fraud on the part of Samsung, it must satisfy the heightened

7   and exacting pleading requirements of Fed. R. Civ. P. 9(b), in addition to the minimal pleading

8   standards of <u>Twombly</u>.   <u>See, e.g.</u>, <u>In re Netflix Antitrust Litig.</u>, 506 F. Supp. 2d 308, 316-17

9   (N.D. Cal. 2007) (applying Rule 9(b) pleading standards in antitrust context).   Rule 9(b)

10  specifically requires a party alleging fraudulent conduct to "state with particularity the

11  circumstances constituting fraud."   Fed. R. Civ. P. 9(b).   The heightened pleading standard

12  necessarily requires more than just "the neutral facts necessary to identify the transaction."   <u>In re</u>

13  <u>GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).   The party alleging fraud

14  must specifically plead "the 'who, what, when, where, and how' that would suggest fraud . . . ."

15  <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997) (quoting <u>DiLeo v. Ernst & Young</u>, 901 F.2d

16  624, 627-28 (7th Cir. 1990)).   This includes specifying the "time, place and content of any alleged

17  misrepresentations" and "the identities of the parties to the misrepresentation . . . ."   <u>ASM</u>

18  <u>America v. Genus, Inc.</u>, 2002 WL 24444, at *2 (N.D. Cal. Jan. 9, 2002).

19         Apple pleads that Samsung obtained monopoly power in the Input Technology Markets as

20  a result of fraudulent representations to ETSI regarding the existence of essential patents and its

21  willingness to license on FRAND terms, but it does so in purely conclusory terms and fails to do

22  so with the particularity required under Rule 9(b).   Specifically, Apple fails to identify, for each

23  asserted standards-essential patent, who from Samsung should have, but did not, disclose the

24  patent, or made an allegedly false FRAND commitment; or when the patents should have been

25  disclosed, or when the allegedly false FRAND commitment was made.   Because Apple's

26  counterclaim does not satisfy the heightened pleading requirements of Rule 9(b), it must be

27  dismissed.

28

Further, Apple's allegations do not even satisfy the minimal pleading requirements set forth in Twombly.   As discussed in Section I.A above, Apple must plead facts sufficient to establish a plausible cause of action, not merely a speculative one.   This requirement is especially critical in antitrust cases, where "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsels against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint."   Twombly, 550 U.S. at 558 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

In this case, Apple fails to allege any facts demonstrating actual anticompetitive effect as a result of Samsung's alleged acts.   Apple first argues that the standardization of Samsung's patented technology eliminates competition by excluding alternatives.   (D.N. 124 Counterclaims ¶ 89.)   This is an argument against standard setting generally, however, and has been rejected in present-day antitrust law.   See, e.g., Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 309 (3d Cir. 2007) ("The adoption of a standard does not eliminate competition among producers but, rather, moves the focus away from the development of potential standards and toward the development of means for implementing the chosen standard.").   Courts have similarly refused to find § 2 liability based solely on deception or misrepresentation before a standard-setting body. In Rambus Inc. v. FTC, 522 F.3d 456, 464-66 (D.C. Cir. 2008), for example, the D.C. Circuit held that a § 2 monopolization claim predicated on misrepresentations to a standard-setting organization must show that a different technology would have been adopted into the standard *but for* the defendant's misrepresentation.   See also Townshend v. Rockwell Int'l Corp., 2000 WL 433505, at *11 (N.D. Cal. Mar. 28, 2000) (finding no anticompetitive effect where plaintiff did not assert that the standard-setting organization "could have adopted a . . . standard which did not encompass [defendant's] technology").   The mere alleged act of deception itself cannot "form the basis of a monopolization claim."   Rambus, 522 F.3d at 464.   Although Apple has generally alleged that ETSI would not have incorporated Samsung's patented technology into the UMTS standard had Samsung disclosed its essential patents or refused to license on FRAND terms, such allegations are conclusory at best.   (See D.N. 124 Counterclaims ¶ 55.)   Apple offers no facts to

1   suggest that its allegation is anything more than speculation.   Apple does not allege that

2   alternative viable technology had been proposed, or that the standard could be implemented

3   without Samsung's technology.   Apple does not even allege that ETSI would not incorporate

4   technology into a standard without a FRAND commitment—nor can it, because ETSI's IP policy

5   has no such absolute requirement.   Without a plausible allegation of anticompetitive effect, Apple

6   has not sufficiently pled a § 2 violation, and Apple's twenty-seventh Counterclaim must be

7   dismissed.

8   **B.     Apple Has Not Pled Facts to Support a Finding of Antitrust Injury**

9          In order to state a § 2 monopolization claim, Apple must allege that Samsung's allegedly

10  unlawful behavior harms competition, and not just competitors.   Am. Ad Mgmt., 190 F.3d at

11  1055.   Apple's allegations, however, focus on specific harm that it has suffered, such as

12  "imminent loss of profits, loss of customers and potential customers, and loss of goodwill and

13  product image."   (D.N. 124 Counterclaims ¶ 180.)   They thus only describe harms to Apple as a

14  competitor, and not harms to competition.   Apple exclusively lists the same harms that it would

15  suffer at the hands of a superior competitor in the marketplace under circumstances where

16  competition is not harmed.   See Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504,

17  508 (9th Cir. 1989) (holding that market exclusion, loss of income, and the resulting elimination

18  of a competitor does not necessarily equate with injury to competition).   In addition, even these

19  harms are alleged in a conclusory fashion, rather than allegations of facts establishing a plausible

20  claim and thus do not satisfy the Twombly pleading requirement.

21         Apple further alleges anticompetitive injury because reasonable substitutes have been

22  excluded from the relevant markets, but, as discussed in Section II.A above, the elimination of

23  alternatives as a result of standardization is not, in itself, an anticompetitive harm.   See

24  Broadcom, 501 F.3d at 309.   Apple otherwise fails to state any facts presenting a plausible claim

25  that Samsung's technology would not or could not have been incorporated into the standard under

26  any other circumstances.   See Rambus, 522 F.3d at 464-66.

27         Finally, Apple asserts that it incurred substantial costs in defending against Samsung's

28  patent infringement claims.   (D.N. 124 Counterclaims ¶ 180.)   But once again this demonstrates

1  injury to Apple only, and not to competition.   See Chip-Mender, Inc. v. Sherwin-Williams Co.,

2  No. C 05-3465, 2006 WL 13058, at *5 (N.D. Cal. Jan. 3, 2006) ("A claim of injury in the form of

3  attorneys' fees in defending against a patent infringement suit is not an injury to 'competition' or

4  the type of injury that the antitrust laws were designed to protect against, but is rather a purely

5  individual economic injury to [defendant] that has no effect on competition in the relevant market.

6  Such allegations are insufficient to state a claim under the Sherman Act.").

7          Absent any plausible and factual allegations of harm to competition, Apple has failed to

8  allege that it has suffered an antitrust injury, and Apple's twenty-seventh Counterclaim must be

9  dismissed.[3]

10 **III.    THE ACTIONS OF A SINGLE MEMBER OF A STANDARD-SETTING**

11 **        ORGANIZATION CANNOT VIOLATE § 1 OF THE SHERMAN ACT**

12         Apple's twenty-eighth counterclaim asserts that Samsung's actions within standard-setting

13 organizations constitute concerted action in restraint of trade in violation of Section One of the

14 Sherman Act, 15 U.S.C. § 1, and the California Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et*

15 *seq.*   Apple, however, fails to allege any collusion or cooperation between Samsung and any

16 members or officials of any standard-setting organization in carrying out its allegedly

17 anticompetitive acts.   Because the independent actions of a single entity cannot constitute grounds

18 for a claim under Section One of the Sherman Act or under the California Cartwright Act, the

19 Court must dismiss Apple's counterclaim.

20         Section One of the Sherman Act bars any "contract, combination . . . or conspiracy, in

21 restraint of trade or commerce . . . ."   15 U.S.C. § 1.   Courts have long understood this to require

22 unreasonable or anticompetitive conduct on the part of accused violators.   See, e.g., Texaco Inc.

23 v. Dagher, 547 U.S. 1, 5 (2006) ("[T]his court presumptively applies rule of reason analysis, under

24 _____
25    [3]   The facts pled in Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297 (3d Cir. 2007), are instructive with respect
to the requirements governing Apple's antitrust injury allegations.   There, Broadcom alleged in its complaint that,
among a plethora of other examples of anticompetitive conduct, Qualcomm (i) leveraged over 1400 patents to acquire
26 a 90% market share in the CDMA chipset market, see First Amended Complaint ¶¶ 62-64, Broadcom, 501 F.3d 297
(No. 505CV03350) ; (ii) imposed exclusive dealing requirements on customers by discriminating with respect to
27 royalty rates, see id. ¶¶ 17, 74, 92-98; (iii) abused its dominant position to fix prices, restrict output, undermine
competing technologies, see id. ¶¶ 20, 65; (iv) demanded non-FRAND licenses from multiple licensees, see id. ¶¶
103-105; and (v) manipulated standard-setting organizations by threatening licensees if they did not vote for
28 Qualcomm's preferred technologies, see id. ¶¶ 75-80.

which antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful."); <u>Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.</u>, 456 U.S. 556, 572 (1982) ("A principal purpose of the antitrust private cause of action . . . is, of course, to deter anticompetitive practices.").   Furthermore, § 1 requires concerted action by two or more entities—"[t]he conduct of a single firm is governed by § 2 alone and is unlawful only when it threatens actual monopolization."   <u>Copperweld Corp. v. Independence Tube Corp.</u>, 467 U.S. 752, 767 (1984).   Thus, a § 1 violation must allege actions by two or more actors to inhibit competition.

Similarly, the California Cartwright Act prohibits unlawful trusts, where a trust "is a combination of capital, skill or acts by two or more persons" for anticompetitive purposes.   Cal. Bus. & Prof. Code §§ 16720, 16726.   As with the Sherman Act, the Cartwright Act extends only to anticompetitive conduct perpetuated by multiple actors; procompetitive ventures and unilateral action cannot be the basis for a claim.   <u>See</u> Cal. Bus. & Prof. Code § 16720 (requiring "two or more persons"), § 16725 (declaring lawful combinations that "encourage or increase competition").   Additionally, for the purposes of interpreting the Cartwright Act, California courts have repeatedly held that the Act should be construed according to precedent under the Sherman Act.   <u>See, e.g.</u>, <u>Partee v. San Diego Chargers Football Co.</u>, 34 Cal. 3d 378, 392 (1983) ("[B]ecause the Cartwright Act was patterned after the Sherman Act, both laws have identical objectives and are harmonious with each other; thus, decisions under the latter act are applicable in construing the former." (citations omitted)); <u>Alameda Cnty. Builders' Exch. v. F. P. Lathrop Constr. Co.</u>, 4 Cal. 3d 354, 362 n.3 (1971) ("Because the Cartwright Act is patterned after the federal Sherman Act and both have their roots in the common law, federal cases interpreting the Sherman Act are applicable in construing the Cartwright Act.").

Federal jurisprudence recognizes that standard-setting organizations promote, rather than hamper, competition.   In multiple decisions over the past century, courts have held that standard-setting activities benefit industry and consumers and do not violate Section One of the Sherman Act and, by extension, the Cartwright Act.   <u>See, e.g.</u>, <u>Allied Tube & Conduit Corp. v. Indian Head, Inc.</u>, 486 U.S. 492, 501 (1988) ("When, however, private associations promulgate safety

standards . . . through procedures that prevent the standard-setting process from being biased by members with economic interests in stifling product competition . . . those private standards can have significant procompetitive advantages."); <u>Maple Flooring Mfrs.' Ass'n v. United States</u>, 268 U.S. 563, 566 (1925) ("The defendants have engaged in many activities to which no exception is taken by the government and which are admittedly beneficial to the industry and to consumers; such as . . . the standardization and improvement of the product."); <u>Broadcom Corp. v. Qualcomm Inc.</u>, 501 F.3d 297, 308-09 (3d Cir. 2007) (discussing procompetitive benefits of standard-setting organizations); <u>Consol. Metal Prods., Inc. v. Am. Petroleum Inst.</u>, 846 F.2d 284, 297 (5th Cir. 1988) (refusing to review standard-setting activities under Sherman Act because it would "discourage the establishment of useful industry standards"); <u>Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.</u>, No. CV 07-00043, 2007 WL 4976364, at *12 (C.D. Cal. Oct. 29, 2007) (holding that "setting an industry standard, without more, does not constitute an actionable restraint of trade").   The few exceptions to this principle included cases where officials of a standard-setting organization conspired to restrict competition, or where members of a standard-setting organization colluded to eliminate competitors from the market.   <u>See, e.g.</u>, <u>Allied Tube</u>, 486 U.S. 492 (1988) (finding § 1 liability where members of standard-setting organization stacked vote to adopt standards that excluded competing products); <u>Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.</u>, 456 U.S. 556 (1982) (finding standard-setting organization liable under § 1 where officials manipulated standards to exclude competitors).

In its counterclaim, Apple alleges neither that ETSI or its agents influenced the standardization process so as to harm competition, nor that Samsung conspired with other members of ETSI to restrict competition.   Instead, Apple merely alleges that the standards-setting process "constitutes concerted activity" and that Samsung's alleged breach of ETSI rules subjects it to § 1 and Cartwright Act liability.   (D.N. 124 Counterclaims ¶¶ 182-83.)   Even assuming purely for the purposes of this motion that Apple's allegations are taken as true, these facts cannot form the basis for a claim under Section One of the Sherman Act or the California Cartwright Act. Specifically, standard-setting activities alone cannot create antitrust liability, <u>see</u> <u>Allied Tube</u>, 486 U.S. at 501; Cal. Bus. & Prof. Code § 16725, and any allegedly anticompetitive acts committed by

1   Samsung alone cannot constitute concerted action, see Copperweld Corp. v. Independence Tube

2   Corp., 467 U.S. 752, 767 (1984).   Because Apple's allegations are insufficient to warrant relief

3   under Section One of the Sherman Act and under the California Cartwright Act, the Court should

4   dismiss Apple's twenty-eighth counterclaim.

5         Additionally, Section One of the Sherman Act is subject to the same antitrust standing

6   requirement as Section Two.   See 15 U.S.C. § 15(a).   As discussed in Section II.B above,

7   Apple's counterclaims fail to plead facts sufficient to demonstrate antitrust injury.   Samsung

8   hereby incorporates and reiterates the arguments in Section II.B in response to Apple's twenty-

9   eighth counterclaim.   On these grounds alone, Apple's twenty-eighth counterclaim must be

10   dismissed.

11   **IV.     APPLE'S CLAIMS UNDER UNFAIR COMPETITION LAW MIRROR ITS**

12   **ANTITRUST CLAIMS AND SHOULD BE DISMISSED**

13         Apple's twenty-ninth counterclaim alleges unfair competition under Cal. Bus. & Prof.

14   Code § 17200 et seq.   (D.N. 124 Counterclaims ¶ 186).   The specific conduct alleged by Apple

15   mirrors the alleged anti-competitive conduct that forms the basis for Apple's counterclaims under

16   the federal and state antitrust laws.   Specifically, Apple alleges that Samsung committed unlawful

17   business acts by violating Sections One and Two of the Sherman Act and the California

18   Cartwright Act (id. ¶ 188); engaged in fraudulent conduct by failing to disclose essential patents

19   and making false promises to license on FRAND terms (id. ¶ 189); and committed unfair business

20   acts by failing to disclose essential patents and failing to offer FRAND licenses (id. ¶ 190).

21   Because this counterclaim mirrors the corresponding Sherman Act and California Cartwright Act

22   counterclaims, it should be dismissed for the same reasons discussed above.

23         Additionally, to the extent that Apple contends that California's unfair competition laws

24   offer broader protection than the federal and state antitrust laws, that argument has been rejected

25   by the California Supreme Court.   Cel-Tech Commc'ns, Inc. v. L.A. Cellular, 20 Cal. 4th 163,

26   186-87 (1999) (holding that "unfair" in Cal. Bus. & Prof. Code. § 17200 "means conduct that

27   threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those

28   laws because its effects are comparable to or the same as a violation of the law, or otherwise

1   significantly threatens or harms competition."); see also Townshend v. Rockwell Int'l Corp., No.

2   C99-0400, 2000 WL 433505, at *14-15 (N.D. Cal. Mar. 28, 2000) (construing § 17200 in light of

3   Cel-Tech).   Thus, any conduct also alleged under federal or state antitrust laws should be

4   dismissed for the reasons set forth in Sections III and IV above, and any conduct not also alleged

5   under federal or state antitrust laws should be dismissed because of Apple's failure to plead that

6   such conduct "threatens an incipient violation of the antitrust laws, violates the policy or spirit of

7   one of those laws, or otherwise significantly threatens or harms competition."   Townshend, 2000

8   WL 433505, at *15.

9   **V.      DUPLICATIVE DECLARATORY JUDGMENT CLAIMS MUST BE DISMISSED**

10          The Declaratory Judgment Act requires a plaintiff to show "that there is a substantial

11   controversy, between parties having adverse interest, of sufficient immediacy and reality to

12   warrant issuance of declaratory judgment."   Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646,

13   658 (9th Cir. 2002) (quoting Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)).

14   A declaratory judgment claim should thus be dismissed under Rule 12(b)(6) as "not ripe for

15   adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed

16   may not occur at all.'"   Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) (quoting

17   Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1044 (9th Cir. 1999)).   Alternatively, the Court

18   may strike a declaratory judgment counterclaim under Rule 12(f) when it is "redundant of

19   affirmative defenses" or otherwise "serve[s] no useful purpose."   Stickrath v. Globalstar, Inc., No.

20   C07-1941, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008).

21          Apple's non-patent declaratory judgment counterclaims seek the same relief and serve the

22   same purpose as Apple's affirmative defenses and other counterclaims.   Apple's thirtieth

23   counterclaim seeks a declaration that Apple "is licensed to Samsung's Declared-Essential Patents

24   by virtue of Samsung's FRAND commitments or, in the alternative, Apple has the irrevocable

25   right to be licensed on FRAND terms under those patents"; Apple's thirty-first counterclaim seeks

26   a declaration that "Samsung is not entitled under any circumstances to seek injunctive relief

27   preventing Apple from practicing the UMTS standard, and that Samsung is not otherwise entitled

28   to use its purported essential patents to pursue injunctive relief"; and Apple's thirty-second

1  counterclaim seeks a declaration that "Samsung's purported essential patents, including the

2  Declared-Essential Patents, are unenforceable by virtue of Samsung's waiver of its right to enforce

3  its purported essential patents, including the Declared-Essential Patents."   (D.N. 124 Prayer for

4  Relief ¶¶ f-h.)

5         Apple has not identified any relief that it would be entitled to on these counterclaims that it

6  could not already be granted under its breach of contract, promissory estoppel, or antitrust

7  counterclaims, nor has Apple identified any factual or legal issues uniquely raised by its

8  declaratory judgment counterclaims which would not otherwise be addressed by the Court in

9  ruling on its affirmative defenses or other counterclaims.   Specifically, the breach of contract,

10 promissory estoppel and antitrust counterclaims will already require this Court to determine

11 whether Apple is licensed or has the right to a license to any essential patents, whether Samsung is

12 entitled to injunctive relief on its essential patents, and whether Samsung's standards-essential

13 patents are enforceable.   Apple's thirtieth, thirty-first, and thirty-second counterclaims are thus at

14 best duplicative and should be stricken.

15                                    **CONCLUSION**

16        For the foregoing reasons, Samsung's Motion to Dismiss and Strike Apple's

17 Counterclaims should be granted.

18

19 DATED: August 15, 2011                    QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
20

21

22                                    By___/s/ Victoria F. Maroulis_____
                                         Charles K. Verhoeven
23                                       Kevin P.B. Johnson
                                         Victoria F. Maroulis
24                                       Michael T. Zeller
                                         Attorneys for SAMSUNG ELECTRONICS CO.,
25                                       LTD., SAMSUNG ELECTRONICS AMERICA,
                                         INC., and SAMSUNG
26                                       TELECOMMUNICATIONS AMERICA, LLC

27

28