QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: October 13, 2011<br>Time: 1:30 pm<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

I, Nicholas P. Godici, declare:

1.      I have been retained in connection with the above-referenced matter.   On behalf of the Defendants in this matter, I have been asked to provide an expert declaration on rules, practices, and procedures before the United States Patent and Trademark Office ("USPTO"),[1] including those related to patent prosecution, reexamination proceedings, accelerated prosecution of patents, and the duty of candor.   I have also been asked to opine on the application of those rules, practices, and procedures to the facts in this case and particularly with respect to the prosecution of United States Patent Number 7,469,381 ("the '381 patent"), PCT Publication WO 01/29702 ("the Van den Hoven reference"), and issues that I understand bear on inequitable conduct with respect to the '381 patent.

2.      I submit this declaration in support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction.   If asked at hearings or trial, I am prepared to testify regarding the matters I discuss in this declaration.

3.      I am currently the Executive Advisor for the intellectual property law firm of Birch, Stewart, Kolasch and Birch, LLP, located in Falls Church, Virginia.

4.      I have over 39 years of experience in the patent field.   I spent my entire career, until my retirement in March 2005, at the USPTO.   Most recently, I served as the Commissioner for Patents at the USPTO from March 2000 to March 2005.   I also served as the Acting Undersecretary of Commerce for Intellectual Property and Director of the USPTO from January to December 2001.   In 2009, at the request of the Secretary of Commerce, I accepted a temporary assignment at the USPTO to act as an expert advisor to the Secretary and Acting Under Secretary, prior to Senate confirmation of the new Under Secretary nominated by President Obama.

---

[1]      I may refer to the USPTO as simply the PTO.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

5.      I began my career at the USPTO in 1972 as a patent examiner, and held the positions of Supervisory Patent Examiner ("SPE"), Group Director, Deputy Assistant Commissioner for Patents, and Acting Assistant Commissioner for Patents before being named Commissioner for Patents by the Secretary of Commerce on March 29, 2000.   As Commissioner for Patents, I was responsible for all aspects of patent-related operations at the USPTO, including a budget of over $750 million and a staff of over 5,000 employees that included the entire patent examining corps.   During my time at the USPTO, I examined approximately 7,000 patent applications.   I also conducted reexamination proceedings during my career at the PTO.

6.      As Acting Undersecretary of Commerce for Intellectual Property and Director of the USPTO, I reported to and advised the Secretary of Commerce on all intellectual property matters and was responsible for all managerial aspects of the USPTO.   I retired from the USPTO in March 2005.

7.      I hold a Bachelor of Science degree in Engineering Mechanics from Pennsylvania State University, awarded in 1972, and a Certificate of Advanced Public Management from The Maxwell School of Citizenship and Public Affairs, Syracuse University, in 1999.   My *curriculum vitae* is attached as **Exhibit 1** to this declaration.   I may testify with respect to my responsibilities and experiences relating to the information listed in **Exhibit 1**.

8.      **Exhibit 2** attached to this declaration lists those cases in which I have served as an expert witness in the past four years.

9.      In rendering my opinions, I have reviewed and considered the materials listed in **Exhibit 3** attached to this declaration, in whole or in part, in addition to the materials expressly referenced herein.   This declaration may be supplemented should additional materials be produced in this matter.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

10.     Birch, Stewart, Kolasch & Birch, LLP is being compensated at the rate of $750 per hour for my time in this case.   The compensation received from this case is not contingent upon my opinions or performance, the outcome of the case, or any issues involved in or related to the case.

A.     Scope Of My Opinions

11.     At the present time, I expect to testify on USPTO policies and procedures, on the rules and procedural requirements governing the filing and prosecution of patent applications in the USPTO and the grant of U.S. patents by the USPTO, on the rules and procedures governing reexamination proceedings in the USPTO, on the rules and procedures governing accelerated examination of patent applications in the USPTO, on the duty of candor and good faith and the duty of disclosure that those substantively involved in the preparation and prosecution of a patent application owe to the USPTO and on my opinions regarding the same, in view of the evidence surrounding the prosecution of the '381 patent.

12.     I also expect to testify about the contents of the file history of the '381 patent and the file history of other patents filed by individuals employed by Apple Inc. ("Apple") and the significance of various documents filed by those applicants and actions by the USPTO during the prosecution of these patents.   I also expect to testify about the file history of the reexamination proceeding of the '381 patent, including the papers filed by the requester and actions of the patent owner, as well as the actions taken by the USPTO.

13.     The opinions stated in this declaration are based on information currently available to me.   I reserve the right to continue my investigation and study, which may include a review of documents, expert reports, or other information that may yet be produced, as well as any testimony from depositions for which transcripts are not yet available and that may yet be taken in this case.   Therefore, I reserve the right to supplement my opinions in response to any additional

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

information that becomes available to me, to any matters raised by the parties, and/or other opinions provided by the parties' expert(s).

I.      OVERVIEW OF THE USPTO PATENT EXAMINATION PROCESS

        A.      The Patent Examination Process

        14.     An applicant for a patent in the United States initiates the application process by filing an application with the USPTO detailing the subject matter for which patent protection is sought.   The application is required to include a specification including a claim or claims, drawings when necessary, an inventor's oath or declaration, and the required fees.[2]   The claims of a patent application define the invention and the scope of protection the applicant is seeking.   The oath or declaration made by the inventor certifies that the inventor believes that he or she is the original first inventor of the subject matter claimed and for which a patent is sought.   The inventor also makes various other certifications required by law and various USPTO rules including acknowledging the duty to disclose information material to patentability to the PTO under the duty of disclosure.[3]

        15.     Under certain circumstances, a U.S. patent application may be entitled to claim the benefit of the filing date of an earlier-filed application.   For example, it is possible to claim the benefit of an earlier-filed U.S. nonprovisional application under 35 U.S.C. § 120 or of an earlier-filed provisional application under 35 U.S.C. § 119(e).   This is sometimes called domestic priority.[4]

        16.     After a patent application is received, administrative staff for the USPTO performs a preliminary review to ensure that the application meets the formal requirements established by Congress and the USPTO.   The application is then assigned to an examiner in a particular

---

[2]   *See* Manual of Patent Examining Procedure ("MPEP") 601(a).
[3]   *See* MPEP 602.
[4]   *See* MPEP 201.11.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

technological area, who is responsible for examining the application and preparing an Office Action stating his/her conclusions with respect to patentability.   The examiner is required initially to determine whether the claims of the application satisfy the requirements for patentability set forth in the patent statutes and regulations.

17.     The examination of claims in a patent application requires an examiner to conduct a search for "prior art" related to the claimed invention.[5]   Prior art may include, for example, patents (both U.S. patents and foreign patents) and non-patent publications (e.g., magazines and trade journals), sometimes called non-patent literature, that pre-date the applicant's invention.[6]   In addition prior art may include prior public uses, sales, and offers for sale of the invention. [7]

18.     While applicants are not required to conduct a prior art search, they are required to disclose material information that they are aware of to the USPTO under their duty of candor and duty of disclosure.   Material information includes prior art patents and printed publications as well as information on enablement, prior public uses, sales or offers for sale, invention by another and/or any other information that would impact the PTO's decision to issue the patent.   Many applicants disclose information they are aware of to the PTO via an Information Disclosure Statement ("IDS").   If an IDS is filed in compliance with PTO regulations, the examiner will consider the prior art references or other information in the IDS during the examination of the application.

19.     After analyzing the prior art and any other issues, the examiner issues an Office Action rejecting claims, objecting to claims, or allowing the claims of the application.[8]   Claims may be rejected, for example, because they are not novel in light of the prior art or differ only in

---

[5]     *See* MPEP 704.01.
[6]     *See* MPEP 706.02(a).
[7]     *See* 35 U.S.C. § 102.
[8]     *See* MPEP 707.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

obvious ways from the existing prior art.   The references and information relied on by the examiner and the reasons for the rejection are set forth in the Office Action sent to the applicant.

20.     An applicant may reply to rejections and objections set forth in an Office Action by filing a written response that distinctly and specifically points out what the applicant believes are errors in the examiner's action.   The reply by the applicant or patent owner must be reduced to a writing which distinctly and specifically points out the supposed errors in the examiner's Action and must reply to every ground of objection and rejection in the prior Office Action.[9]

21.     Amendments to the specification and/or claims may also be submitted.   Any amendments made during the application process must find support in the original specification of the application.[10]   If an applicant chooses to amend the claims in response to an Office Action, the applicant "must clearly point out the patentable novelty which he or she thinks the claims present in view of the state of the art disclosed by the references cited or the objections made.   The applicant or patent owner must also show how the amendments avoid such references or objections."[11]

22.     The examiner then reviews any amendments and/or arguments submitted by the applicant to determine if the conditions for patentability are met.   The examiner can either allow the application or issue a new Office Action if rejections and/or objections remain.   If the patent application is found to be in allowable condition, a Notice of Allowance will be sent to the applicant.   At the time of allowance the examiner may set forth "reasons for allowance" indicating which claim limitations were not found in the prior art and therefore why the claims

---

[9]     *See* MPEP 714.02.
[10]    *See* MPEP 608.04.
[11]    *See* MPEP 714.02.

were found allowable.[12]   A fee for issuing the patent is due within three months from the date of the Notice.   Once the issue fee is paid, the application will issue as a patent.

23.   Under certain circumstances, an applicant may request accelerated examination of a patent application.   If an applicant complies with the requirements for accelerated examination, the PTO will take the application "out of turn" ahead of other earlier filed applications and set a twelve-month goal for completing examination.[13]   Accelerated examination is only available for certain eligible types of patent applications.   For example, an eligible application must be a non-reissue application, must contain no more than three independent claims and twenty total claims, must be directed to a single invention, and must be filed on or after August 25, 2006.[14]   The applicant must also file a Petition to Make Special with the application and comply with specific requirements throughout the examination process to assist the examiner in expeditiously arriving at a final disposition of the application.[15]

24.   In order to gain the benefit of the accelerated 12-month target of examination, an applicant is required to provide information and assistance to the PTO in an Examination Support Document ("ESD") beyond what is required in a normal examination.   For example, an applicant must perform a pre-examination search for prior art relating to all features of all claims, and submit with his application a detailed listing of the types of searches performed, databases searched, and search queries used.[16]   The applicant must also disclose the references he deems "most closely related" to the subject matter of the claims, along with a claim chart or equivalent document showing which limitations of each claim are disclosed by the reference and how the

---

[12]   *See* MPEP 1302.14.
[13]   The average pendency of a patent application in 2007, the year the '381 patent application was filed, was 31.9 months.   *See* USPTO, *Performance and Accountability Report* (2007), attached hereto as **Exhibit 4**, p. 16.
[14]   *See* MPEP 708.02(a)(I.)(B), (E), (F).
[15]   *See* MPEP 708.02(a)(I.)(A).
[16]   *See* MPEP 708.02(a)(I.)(H).

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

claims are patentable over the reference.[17]   In exchange for quick examination, examiners receive more focused and detailed information about the invention and the closest prior art from applicants.[18]

B.      *Ex Parte* Reexamination Proceedings

25.      After a patent has been issued by the USPTO, the patent statute permits reexamination of that patent in light of a "substantial new question of patentability." Any person, including a third party or the patent owner, may request reexamination of a patent by presenting a substantial new question of patentability based on prior art patents or printed publications.   In other words, the USPTO will conduct a second examination of the patent, if requested, taking into account newly submitted prior art.[19]

26.      A prior art patent or printed publication raises a substantial new question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable.[20]   If the prior art patents and/or publication "would be considered important, then the examiner should find a substantial new question of patentability" unless the same question of patentability has already been decided as to the claim in a final holding of invalidity by the Federal court system or by the Office in a previous examination.[21]

27.      After a reexamination has been ordered, the examiner will conduct examination according to the procedures established for initial examination under the provisions of 35 U.S.C.

---

[17]      *See* MPEP 708.02(a)(I.)(I).
[18]      *See* Robert J. Spar, Director, Office of Patent Legal Administration, USPTO, *Revised Accelerated Examination Program and Petition to Make Special Procedures* (2007), attached hereto as **Exhibit 5**, at 23.
[19]      *See* MPEP 2209.
[20]      *See* MPEP 2242.
[21]      *See id.*

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

Sections 132-133.[22]   However, the examiner will typically only consider prior art identified by the requester, or any new prior art disclosed by the patent owner.

28.     Two different types of reexamination proceedings exist: *ex parte* reexamination and *inter partes* reexamination.   *Ex parte* reexamination proceedings are similar to regular examination procedures in patent applications once reexamination has been granted, and no third-party participation is permitted as part of the reexamination itself.[23]   *Inter partes* reexamination, however, differs in that the requester and the patent owner each have an opportunity to participate in each step of the proceedings.

29.     At the conclusion of the reexamination proceedings, a reexamination certificate is issued by the USPTO.   The certificate sets forth the results of the proceeding with respect to the claims under reexamination.   The certificate will indicate the final status of the claims, including whether patentability was confirmed, the claim was cancelled, or the claim amended.

30.     The same duty of candor, good faith, and disclosure required of individuals in normal patent prosecution is also required during reexamination proceedings.[24]   During reexamination the examiner strongly relies on the reexamination requester and the patent owner to disclose information material to the patentability of the claims under reexamination.

C.     The Duty Of Candor And Good Faith

31.     Because patent prosecution is an *ex parte* process, it is essential that patent applicants and their attorneys deal fairly with the USPTO examiner and provide all information that is material to patentability of the claims pending in the application.   This obligation, which is referred to as the applicant's "duty of candor and/or duty of disclosure," is fundamental to the successful operation of the Patent System.   This trust between the applicant and the USPTO is

---

[22]     *See* MPEP 2254.
[23]     *See* MPEP 2209.
[24]     *See* 37 CFR § 1.555; MPEP 2280.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

based on the applicant's full compliance with his/her duty of candor and disclosure.   The duty of candor and good faith is set forth in 37 CFR § 1.56(a) which states:

> A patent by its very nature is affected with a public interest.   The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability.   Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.   The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned.  Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application.   There is no duty to submit information which is not material to the patentability of any existing claim.   The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98.   However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct.   The Office encourages applicants to carefully examine:
>
> (1)      Prior art cited in search reports of a foreign patent office in a counterpart application, and
>
> (2)      The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.[25]

32.      The duty of candor and good faith includes a "duty of disclosure."   This duty is owed to the USPTO by individuals associated with the filing and prosecution of a patent application and requires disclosure to the USPTO of information that is known by those individuals to be "material" to patentability, such as prior art, information on enablement, possible

---

[25]      *See* MPEP 2001.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

prior public use, sales, offers to sell, derived knowledge, prior invention by another, inventorship

conflicts, and information that is inconsistent with arguments made by the applicant.[26]

33.　　Although the USPTO strives to conduct high quality examinations, an examiner's

time and resources are limited.　The USPTO relies on inventors and their attorneys to faithfully

and fully discharge their duty of candor.　In 2007, the year that the application for the '381 patent

was filed, the USPTO received over 460,000 new patent applications and had nearly 1.2 million

previously filed applications still pending.[27]　On average, an examiner spends about 20 hours of

examining time per application from start to finish.[28]　Thus, examiners depend on the candor of

those owing a duty to the USPTO to submit all information they deem material, so that the

examiner may consider the most relevant prior art available before deciding whether to grant the

patent.

34.　　The duty of candor and duty of disclosure is especially critical for applications

granted "special" status under the accelerated examination process.　Because of the 12-month

goal for completion of an accelerated examination, the USPTO examiner relies heavily on the

applicant's pre-examination search to thoroughly identify material prior art, and must further rely

on applicant's duty to disclose the most relevant prior art references known to the applicant.　This

reliance helps examiners quickly make patentability decisions, and underscores the importance of

full disclosure by the applicant.

35.　　37 CFR § 1.56(c) states that the following individuals have the duty of disclosure:

(c)　　Individuals associated with the filing or prosecution of a patent application
within the meaning of this section are:

(1)　　Each inventor named in the application;

---

[26]　*See* MPEP 2001.04.
[27]　*See* **Exhibit 4** pp. 110-11.
[28]　*See* National Academy of Public Administration, *US Patent and Trademark Office: Transforming to Meet the Challenges of the 21st Century* (2005), excerpted and attached hereto as **Exhibit 6**, pp. xix, 213.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

(2)     Each attorney or agent who prepares or prosecutes the application; and

(3)     Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.[29]

36.     The duty to disclose material information relative to the claimed invention exists until an application becomes abandoned or issues as a patent.   The duty of disclosure does not end when an application becomes allowed but extends until a patent is granted on that application.[30] After a Notice of Allowance is mailed and before the issue fee is paid, applicants may comply with their duty of disclosure by submitting a statement as specified in 37 CFR 1.97(e) along with the required fee.[31]   An applicant may also file a Request for Continued Examination (RCE) under 37 CFR 1.114 or a continuing application under 37 CFR 1.53(b) in order to satisfy the duty of disclosure after the issue fee has been paid.[32]

D.     Materiality

37.     Until recently, the Federal Circuit recognized multiple standards for materiality. The version of 37 CFR § 1.56 that was in place prior to March 16, 1992, defined the term using the so-called "reasonable examiner" standard, as follows:

A duty of candor and good faith toward the Patent and Trademark Office rests on the inventor, on each attorney or agent who prepares or prosecutes the application and on every other individual who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application. All such individuals have a duty to disclose to the Office information they are aware of which is material to the examination of the application.   Such information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.   The duty is commensurate with the degree of involvement in the preparation or prosecution of the application.

---

[29]   *See* MPEP 2001.01.
[30]   *See* MPEP 2001.04.
[31]   *See id.*
[32]   *See* MPEP 1308.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

38.     Effective March 16, 1992, 37 CFR § 1.56 was amended to replace the "reasonable examiner" language previously expressed in the rule with the current definition of "material" information.   The current language of 37 CFR § 1.56(b) defines material information as follows:

> (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>
>> (1)     It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or
>>
>> (2)     It refutes, or is inconsistent with, a position the applicant takes in:
>>
>>> (i)     Opposing an argument of unpatentability relied on by the Office, or
>>>
>>> (ii)     Asserting an argument of patentability.
>
> A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

39.     Although the "reasonable examiner" language found in the pre-1992 version of 37 CFR § 1.56 was replaced with the language of the 1992 version of the Rule, the Federal Circuit had previously held that information may be considered "material" if it would be "material" under either the March 16, 1992 version of 37 CFR § 1.56 or the former "reasonable examiner" standard.

40.     The Federal Circuit recently issued an en banc opinion in *Therasense Inc. v. Becton Dickinson and Co.* in which issues related to inequitable conduct, including materiality, were considered.[33]   I have reviewed the Federal Circuit's opinion.   According to *Therasense*, the "but-for" standard is now the only standard to be used for materiality, which means that withheld prior art is material only if the PTO would not have allowed a claim if it had been aware of the

---

[33]     *Therasense, Inc. v. Becton, Dickinson and Co.*, 2011 WL 2028255 (Fed. Cir. May 25, 2011) (en banc).

undisclosed prior art.   That determination is made using a preponderance of the evidence standard while giving claims their broadest reasonable construction.[34]

41.    I further understand that the Federal Circuit held in *Therasense* that there is an exception to the "but-for" standard of materiality.   Where the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of a false affidavit, the misconduct is material. Dishonesty before the PTO is always material, regardless of whether the PTO would have allowed the claim had the patentee been honest.[35]

E.    Inequitable Conduct

42.    I have been instructed on the law pertaining to inequitable conduct as follows. Inequitable conduct arises where material information is withheld or misrepresented with the intent to deceive or mislead the examiner.[36]   I understand that "[t]o hold a patent unenforceable for inequitable conduct, a district court must find by clear and convincing evidence that a patent applicant breached its duty of candor and good faith to the United States Patent and Trademark Office ('PTO') by failing to disclose material information, or submitting false material information, with an intent to deceive the PTO."[37]   I understand that the burden of proof rests with the accused infringer, in this case the Defendants.[38]

43.    To prove intent requires that "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive."[39]   Further, I understand that "materiality does not presume intent, which is a separate and essential component of inequitable conduct."[40]

---

[34]    *Id.* at *11.
[35]    *Id.* at *12.
[36]    *See Monsanto Co. v. Bayer BioScience N.V.,* 514 F.3d 1229, 1233-34 (Fed. Cir. 2008).
[37]    *See id.*
[38]    *See id.*
[39]    *See Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364 (Fed. Cir. 2007).
[40]    *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001).

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

44.     I also understand that *Therasense* clarified the intent requirement, holding that to prevail on an inequitable conduct claim, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it."[41]   The Court maintained that materiality and intent are separate elements, but eliminated the "sliding scale" approach that balanced materiality with intent.[42]   However, intent may be inferred from indirect and circumstantial evidence.[43]   To meet the clear and convincing standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence," and the evidence "must be sufficient to require a finding of deceitful intent in light of all the circumstances."[44]   That is "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."[45]

II.     <u>SUMMARY OF THE PROSECUTION HISTORY OF THE '381 PATENT</u>[46]

45.     The application that ultimately issued as the '381 patent was filed on December 14, 2007, and assigned serial number 11/956,969 (the "'969 application").   The sole named inventor was Bas Ording.   The application was titled "List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display."[47]   The application was prosecuted by Robert B. Beyers of Morgan, Lewis & Bockius LLP, and the application was examined by Examiner Boris Pesin.

46.     The '969 application claims priority to six provisional patent applications, including Provisional Application No. 60/883,801.   The '801 provisional application claimed priority as a continuation-in-part of U.S. Patent Application No. 11/322,551, which issued as U.S.

---

[41]   *Therasense*, 2011 WL 2028255 at *9.
[42]   *Id.* at *10.
[43]   *Id.*
[44]   *Id.*
[45]   *Id.*
[46]   I have reviewed the prosecution history of the '381 patent in its entirety.   Although not all details of the '381 patent prosecution history are enumerated herein, I expect to testify regarding the '381 patent prosecution history as needed to assist the trier of fact.   The '381 patent is attached hereto as **Exhibit 7**.   The file history of the '381 patent is attached hereto as **Exhibit 8**.
[47]   *See* **Exhibit 8** at APLNDC03749.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

Patent No. 7,786,975.[48]   This claim of priority to the '551 application was not included in the '969 application.

47.     The '969 application was filed with a Petition to Make Special under the PTO's accelerated examination program and a supporting ESD.[49]   In the ESD, the applicant indicated the following three references as most closely related to the subject matter of the claims: U.S. Patent 6,690,387 to Zimmerman et al.; U.S. Patent 5,495,556 to Kwatinetz et al.; and U.S. Pat. App. Pub. No. 2005/0012723 to Pallakoff.   The ESD also included claim charts that mapped the references to the limitations of each claim.

48.     On February 29, 2008, the USPTO dismissed Applicants' Petition to Make Special for failure to include a pre-examination search encompassing all of the features of the claims in accordance with MPEP § 708.02(a)(I.)(H).[50]   On March 13, 2008, Applicants filed a Request for Reconsideration in response to the USPTO's dismissal of its Petition to Make Special, attaching a revised Pre-Examination Search Statement including requested additional searches.[51]   The USPTO granted the Petition on April 14, 2008.[52]

49.     On April 30, 2008, Applicants filed an IDS naming only the three patents disclosed in the ESD, along with a single piece of non-patent literature: "PersonalJava Application Environment" by D. Miller.   Applicants also included a supplemental ESD with claim charts for the newly disclosed Miller reference.[53]   Two additional IDSs were filed on July 18, 2008, disclosing 63 additional references, including five foreign patent documents, and on October 6,

---

[48]     *See* U.S. Provisional Patent Application No. 60/883,801, attached hereto as **Exhibit 9**, at SAMNDCA01555.
[49]     *See* **Exhibit 8** at APLNDC03860-3932.
[50]     *See id.* at APLNDC03938-42.
[51]     *See id.* at APLNDC03943-65.
[52]     *See id.* at APLNDC03968-72.
[53]     *See id.* at APLNDC03975-4044.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

2008, disclosing 8 additional references, including three foreign patent documents.[54]   The Van den Hoven reference was not among any of the disclosed references.

50.   On June 2, 2008, the examiner and the applicant discussed the application via personal interview.   The examiner identified additional prior art, and the applicant agreed to amend the independent claims to include the limitation: "in response to detecting that the object is no longer on or near the touch screen display, translating the document in a second direction until the area beyond the edge of the document is no longer displayed."[55]

51.   On June 30, 2008, the examiner and the applicant discussed the application via telephone interview.   Mr. Beyers requested to propose amendments to the claims to overcome the cited prior art.[56]

52.   On August 4, 2008, the examiner and the applicant discussed the application via telephone interview.   The examiner agreed to add via an Examiner's Amendment claim amendments proposed by the applicant in order to place the application in condition for allowance over the prior art.[57]

53.   On October 29, 2008, the USPTO mailed a Notice of Allowance, allowing all pending claims.   The Notice of Allowance included an examiner's amendment, adding the following limitations to representative claim 1.   Similar limitations were added to the remaining independent claims.

A computer-implemented method, comprising:

at a device with a touch screen ~~display,~~ display;

displaying a first portion of an electronic document;

detecting a movement of an object on or near the touch screen

---

[54]   *See id.* at APLNDC04124-26, APLNDC04251-54, APLNDC04257, APLNDC04362-65.
[55]   *See id.* at APLNDC04045-47.
[56]   *See id.* at APLNDC04366-68.
[57]   *See id.* at APLNDC04255-56.

Case No. 11-cv-01846-LHK

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1   display;

2       in response to detecting the movement, translating ~~an~~ the electronic
3   document displayed on the touch screen display in a first direction to
    display a second portion of the electronic document, wherein the second
4   portion is different from the first portion;

5       in response to an edge of the electronic document being reached
    while translating the electronic document in the first direction while the
6   object is still detected on or near the touch screen ~~display,~~ display:

7           displaying an area beyond the edge of the document, and

8           displaying a third portion of the electronic document,
9   wherein the third portion is smaller than the first portion; and

10  ~~after~~ in response to detecting that the object is no longer detested on or near
    the touch screen display, translating the electronic document in a second
11  direction until the area beyond the edge of the electronic document is no
    longer displayed to display a fourth portion of the electronic document,
12  wherein the fourth portion is different from the first portion.[58]

13      54.     The examiner also included a "reason for allowance" stating that "the prior art

14  found does not teach in response to an edge of the electronic document being reached while

15  translating the electronic document in the first direction while the object is still detected on or near

16  the touch screen display: displaying an area beyond the edge of the document, and displaying a

17  third portion of the electronic document, wherein the third portion is smaller than the first portion;

18  and in response to detecting that the object is no longer detected on or near the touch screen

19  display, translating the electronic document in a second direction until the area beyond the edge of

20  the electronic document is no longer displayed to display a fourth portion of the electronic

21  document, wherein the fourth portion is different from the first portion; in combination with all of

22  the other claim limitations."[59]

23

24

25

26

27  _____

28  [58]   *See id.* at APLNDC04380-87.
    [59]   *See id.* at APLNDC04383-84.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S
MOTION FOR A PRELIMINARY INJUNCTION**

55.     The '969 application issued as the '381 patent on December 23, 2008, just 12 months and 1 week after filing.[60]

56.     At no time during the prosecution of the '381 patent was the Van den Hoven reference[61] disclosed to the PTO or considered by the PTO.

III.     SUMMARY OF THE *EX PARTE* REEXAMINATION OF THE '381 PATENT

57.     On April 28, 2010, Brient Intellectual Property Law, LLC filed with the USPTO a request for ex parte reexamination of the '381 patent pursuant to 37 CFR 1.510.[62]   The requester identified three prior art references that the examiner had not been aware of during prosecution of the '381 patent.   These three references did not include the Van den Hoven reference.[63]   The request for reexamination was served on the patent owner's counsel, Mr. Beyers at Morgan, Lewis, & Bockius LLP, as required by PTO procedures.[64]

58.     On July 14, 2010, the USPTO granted the request for reexamination, stating that the newly identified references raised a substantial new question of patentability with respect to all claims of the '381 patent.[65]   Specifically, the examiner stated that the three new references, in

---

[60]     The total pendency of the '381 patent was 12 months and 1 week, illustrating the benefit to the applicant in being granted accelerated examination status by the PTO.   The average pendency of patent applications in 2007 was 31.9 months.   *See* **Exhibit 4** p. 16.

[61]     When referring to the applicants' failure to cite the Van den Hoven reference I am including both U.S. Patent 7,152,210 filed with the USPTO on June 20, 2001 and issued December 19, 2006, and the Van den Hoven PCT application, WO 01/29702, entitled "Device and Method of Browsing an Image Collection," filed October 18, 2000, and published on April 26, 2001.   The '210 patent is attached hereto as **Exhibit 10**.   The Van den Hoven PCT application is attached hereto as **Exhibit 11**.

[62]     *See* '381 Patent Reexamination File History, attached hereto as **Exhibit 12**, Request for *Ex Parte* Reexamination Transmittal Form (Apr. 28, 2010) at 1-2.

[63]     *See id.* Requester's Information Disclosure Statement (Apr. 28, 2010) at 1.

[64]     *See* MPEP 2220; **Exhibit 12**, Request for *Ex Parte* Reexamination Transmittal Form (Apr. 28, 2010) at 2.

[65]     *See* **Exhibit 12**, Order Granting Request for *Ex Parte* Reexamination (July 14, 2010) at 1-2.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

combination with a fourth reference cited in the '381 patent, taught the limitations highlighted in the original examiner's notice of allowance for the '381 patent.[66]

59.     No additional action was taken by the USPTO on the reexamination of the '381 patent until January 13, 2011, when the examiner issued a Notice of Intent to Issue Ex Parte Reexamination Certificate.   The examiner's statement of reasons for patentability stated that the new references did not teach all of the limitations of the claims of the '381 patent.[67]   Notably, the examiner found the claims patentable in view of a subset of the limitations that were not in the art disclosed at the time of the original Notice of Allowance:

> The prior art does not teach or fairly address the invention as recited in independent claims 1, 19, and 20 of U.S. Patent No. 7,469,381 B2.   Specifically, the prior art references of Glimpse, Inside Out, Robbins, and Zimmerman fail to disclose "in response to detecting that the object is no longer on or near the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion" as recited in claims 1, 19, and 20.[68]

60.     Also on January 13, 2011, Mr. Beyers submitted an IDS citing several documents for consideration.   The Van den Hoven reference was not disclosed in this IDS.[69]   On January 25, 2011 the PTO mailed a communication indicting that some of the documents submitted in the IDS had been considered.[70]   The reexamination certificate was published on April 26, 2011.[71]

61.     At no time during the reexamination of the '381 patent was the Van den Hoven reference disclosed to the PTO or considered by the PTO.

---

[66]     *See id.* Order Granting Request for *Ex Parte* Reexamination (July 14, 2010) at 6.
[67]     *See id.* Notice of Intent to Issue *Ex Parte* Reexamination Certificate (Jan. 13, 2010) at 1-7.
[68]     *Id.* Notice of Intent to Issue *Ex Parte* Reexamination Certificate (Jan. 13, 2010) at 2.
[69]     *See id.* Information Disclosure Statement (Jan. 13, 2010).
[70]     *See id. Ex Parte* Reexamination Communication Transmittal Form (Jan. 25, 2010).
[71]     *See id. Ex Parte* Reexamination Certificate (Apr. 26, 2010).

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

IV.    BRIEF SUMMARY OF RELEVANT ASPECTS OF THE PROSECUTION HISTORY
OF THE APPLE PATENT CITING THE "VAN DEN HOVEN REFERENCE"[72]

62.    Prior to the filing of the application that issued as the '381 patent, a patent application assigned to Apple Inc. was filed and ultimately issued as U.S. Patent 7,786,975 ("the '975 patent"). The application that ultimately issued as the '975 patent was filed on December 23, 2005, and assigned serial number 11/322,551 (the "'551 application").   Bas Ording, Scott Forstall, Greg Christie, Stephen Lemay, and Imran Chaudri were all named as inventors.   The application was titled "List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display."[73]   The application was prosecuted by Robert B. Beyers of Morgan, Lewis & Bockius LLP, the same attorney who prosecuted the '381 patent application.

63.    After the filing of the '551 application, the applicants filed multiple IDSs. Notably, on January 23, 2008, the applicants filed an IDS disclosing Van den Hoven reference.[74]

64.    The USPTO did not issue the first action on the merits of the '551 application until December 18, 2008, when it mailed an office action rejecting all claims.   At least some claims were rejected in part based on U.S. Patent No. 7,152,210, which is the U.S. national stage counterpart to the Van den Hoven PCT application.[75]   In particular, the examiner stated that Van den Hoven taught the limitation of "a portable electronic device and instructions for reversing a direction of scrolling in response to the scrolling intersecting a virtual boundary corresponding to the terminus of the list, wherein the reversing corresponds to a damped motion."[76]

---

[72]    I have reviewed the prosecution history of the other Apple patent mentioned in this section of my report.   Although not all details of this patent prosecution history is enumerated herein, I expect to testify regarding the specifics of this patent prosecution history as needed to assist the trier of fact.

[73]    *See* U.S. Patent 7,786,975 File History, excerpted and attached hereto as **Exhibit 13**, at SAMNDCA00439.

[74]    *See id.* at SAMNDCA00663-67.

[75]    *See id.* at SAMNDCA01107-20.

[76]    *See id.* at SAMNDCA01116.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S
MOTION FOR A PRELIMINARY INJUNCTION**

65.     The applicant traversed the rejection based on the Van den Hoven reference and its

combinations with other references via a series of amendments adding detailed limitations as to

the method of determining scrolling acceleration in response to a sensed movement across a touch

screen.[77]   No such limitations were added to the claims of the '381 patent.

V.     OPINION AND ANALYSIS ON THE DUTY TO DISCLOSE THE "VAN DEN HOVEN" REFERENCE DURING PROSECUTION OF THE '381 PATENT

66.     I have been asked to analyze whether the applicants of the '381 patent had a duty to

disclose the Van den Hoven reference during prosecution and reexamination of the '381 patent,

and, if so, whether that duty was breached.

67.     Under 37 CFR § 1.56(a), it is my opinion each of the inventor Bas Ording and

prosecution counsel, as well as anyone else who substantively participated in the prosecution of

the application (collectively "applicants") had a duty to disclose to the USPTO any information

material to patentability of the claims.[78]   The prosecution counsel who had this duty with respect

to the '969 application included Robert B. Beyers, who signed the IDS that disclosed the Van den

Hoven reference and responded to prior art rejections citing the Van den Hoven reference in the

prosecution of the '551 application and who was also prosecution counsel on the '969 application

and signed every IDS filed during that examination.

68.     This duty exists throughout the entire prosecution of the '969 application, until all

claims issued on December 23, 2008.   The applicants had an obligation to supplement its

disclosures to the USPTO with any material information or references they became aware of after

the initial filing of the '969 application up to and including the date of issuance of the '381 patent

on December 23, 2008.   This duty of disclosure was renewed when the '381 patent was

reexamined by the PTO in 2010, imposing an obligation on the patent owners to submit any

---

[77]   *See*, *e.g.*, *id.* at SAMNDCA01149-52.
[78]   *See* MPEP 2001.

additional material information to the PTO until the reexamination had concluded.   Although the duty of disclosure is always critical, the duty of disclosure was especially critical during the examination of the '381 patent, because the applicants had requested, and the USPTO had granted, an accelerated examination.

69.     The duty to disclose prior art information during prosecution applies to references that are material to patentability of the claims under examination.   Based on the declaration of Samsung's technical expert Andries Van Dam, I conclude that the Van den Hoven reference was material to patentability of the claims of the '381 patent and non-cumulative to other information of record and considered by the PTO during the original examination and reexamination of the '381 patent.

70.     Information is material if the examiner would not have allowed the claims of the patent had it been disclosed. [79]   Based on the analysis and opinions of Dr. Van Dam as stated in his declaration, the examiner would not have allowed the claims of the '381 patent had the Van den Hoven reference been disclosed during prosecution, and therefore the Van den Hoven reference was "but-for" material.

71.     During the prosecution of the '381 patent, the patent examiner noted in the reasons for allowance of the '381 patent that the cited prior art before him "does not teach in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display: displaying an area beyond the edge of the document, and displaying a third portion of the electronic document, wherein the third portion, is smaller than the first portion; and in response to detecting that the object is no longer detected on or near the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no

---

[79]   *Therasense, Inc. v. Becton, Dickinson and Co.*, 2011 WL 2028255, at *11 (Fed. Cir. May 25, 2011) (en banc).

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1   longer displayed to display a fourth portion of the electronic document, wherein the fourth portion

2   is different from the first portion."[80]

3       72.     In his declaration, Samsung's technical expert Andries van Dam states that the Van

4   den Hoven reference teaches one of ordinary skill in the art to perform the limitations that the

5   examiner notes are missing from the art he considered during prosecution and cited in the '381

6   patent.[81]   He concludes that the Van den Hoven reference, alone or in combination with other

7   patents, would have rendered the claims of the '381 patent unpatentable.[82]   Based on this analysis

8   I thus conclude that the Van den Hoven reference was material and non-cumulative.

9       73.     As material prior art, applicants had a duty to disclose Van den Hoven to the

10  USPTO if they knew about the reference.   Based on the file history of the '975 patent (the '551

11  application) I have reviewed, it is my opinion that both the inventor Ording and at least one

12  prosecuting attorney on the '969 application, Mr. Beyers, likely knew of the Van den Hoven

13  reference.

14      74.     Each of the '969 and the '551 applications names Mr. Ording as an inventor.   Mr.

15  Beyers' name also appears on documents submitted to the USPTO in both applications, including

16  key documents disclosing prior art to the USPTO for each respective patent.[83]

17      75.     On January 23, 2008, while the '969 application which led to the '381 patent was

18  pending, Mr. Beyers signed and filed an IDS for the '551 application identifying the Van den

19  Hoven PCT application.   It was one of six references and the only foreign patent document

20  identified in the IDS.   Furthermore, on December 18, 2008, during the pendency of the '969

21  application and five days before it issued, the PTO rejected the then-pending claims in the '551

---

[80]   *See* **Exhibit 10** at APLNDC04383-84.
[81]   *See* Van Dam Declaration, attached hereto as **Exhibit 14**, ¶¶ 148-50.
[82]   **Exhibit 14** ¶ 149.
[83]   *See, e.g.*, **Exhibit 8** at APLNDC03975-4044, APLNDC04124-26, APLNDC04251-54, APLNDC04257, APLNDC04362-65; **Exhibit 13** at SAMNDCA00667.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

application, relying on and discussing the U.S. counterpart to the Van den Hoven PCT application,

U.S. Patent 7,152,210.   Based on my experience as a former examiner and as a member of the

patent bar, it appears Mr. Beyers knew of the Van den Hoven reference and its materiality during

the time the original '969 application was pending in 2008.

76.     Additionally, the '969 application claims priority to a 60/883,801 provisional

application, which includes a statement claiming priority to the '551 application.   Although the

'969 application does not claim priority to the '551 application, I nevertheless conclude that

Ording and/or Beyers would have known that the subject matter of the '969 application and the

'551 application were related, because they were aware of or involved in or aware of the

preparation of the '801 provisional application.   Thus, Mr. Ording and/or Mr. Beyers would have

known that information material to the examination of the '551 application would be material to

the examination of the '969 application.

77.     Despite the materiality of the Van den Hoven reference and the likely knowledge

by both the named inventor Ording and at least one attorney involved with the prosecution,

Beyers, the Van Den Hoven reference was never disclosed during the prosecution of the '969

application or the subsequent reexamination of the '381 patent.

78.     On December 14, 2007, applicants filed the '969 application along with a Petition

to Make Special under Accelerated Examination Program pursuant to MPEP 708.02(a).   In

support of its Petition, applicants also filed an ESD listing the references most closely related to

the claims and providing claim charts for those references.   The Van den Hoven reference was not

included in the ESD.

79.     On January 23, 2008, applicants filed an IDS in the '551 application disclosing the

Van den Hoven reference.   Applicants did not file an IDS or supplement their EDS in the '969

application to disclose this reference.

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S
MOTION FOR A PRELIMINARY INJUNCTION**

80.     On March 13, 2008, after the USPTO dismissed applicants' petition for accelerated examination in the '969 application because applicants had not performed a satisfactory pre-examination search for prior art, applicants resubmitted their petition having allegedly performed a broader search.   With their renewed petition, applicants also submitted a supplemental EDS.   The supplemental EDS disclosed one additional reference, but failed to disclose the Van den Hoven reference.

81.     On April 30, 2008, applicants filed an IDS in the '969 application, disclosing only the references cited in its EDS.   On July 18, 2008, applicants filed another IDS in the '969 application, disclosing 63 additional references, including 5 foreign patents.   On October 6, 2008, applicants filed a third IDS in the '969 application, disclosing 8 additional references.   None of these disclosures included the Van den Hoven reference.

82.     On December 18, 2008, 5 days before the '381 patent issued, the USPTO rejected all claims of the '551 application.   In its reasons for rejection, the USPTO relied in part on US Patent No. 7,152,210, the U.S. counterpart of the Van den Hoven reference.   Despite being made aware of the relevance of the Van den Hoven reference in the related '551 application, applicants still did not disclose the Van den Hoven reference to the USPTO at this time.

83.     The '381 patent issued on December 23, 2008, without the USPTO ever considering its patentability in light of the Van den Hoven reference.

84.     The applicants had a second chance and obligation to disclose the Van den Hoven reference but failed to do so.   On April 28, 2010, a Reexamination Request for the '381 patent was filed with the USPTO by Brient Intellectual Property Law, LLC.   The request was granted on July 14, 2010.   During reexamination the patent owner is under a duty to disclose any information material to patentability of the claims under reexamination.   At this point in time, the Van den Hoven reference had been cited to the PTO in the '551 application, and the PTO had used the Van

**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

den Hoven reference to reject claims of the '551 application.   Mr. Beyers had participated in an interview with the examiner discussing the prior art rejections and had responded to that PTO rejection by arguing that the Van den Hoven reference did not render the claims of the '551 application, as amended, unpatentable.[84]   On January 13, 2011, The USPTO filed a Notice of Intent to Issue a Reexam Certificate for the '381 patent.   The reexamination certificate issued on April 26, 2011.   At no time during the reexamination did the patent owner disclose the Van den Hoven reference to the PTO for consideration.

85.   In my opinion, the inventor, Ording, and Mr. Beyers violated their duty of candor and duty of disclosure by failing to cite the Van den Hoven reference during the original prosecution of the '969 application and the reexamination of the '381 patent.   The failure to disclose Van den Hoven in the prosecution of the '969 application is particularly egregious given the fact that the applicants were granted accelerated examination of the '969 application, which requires an Examination Support Document disclosing the most closely related art and an explanation to assist the examiner in doing his job in exchange for special accelerated examination of the application.

[84]   *See* **Exhibit 13** at SAMNDCA01146-57;

DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S
MOTION FOR A PRELIMINARY INJUNCTION

1        I declare under penalty of perjury that the foregoing is true and correct.   Executed in Falls

2   Church, Virginia on ⟨*August 22*⟩, 2011.

3

4

5                                                    By  ⟨*Nicholas P. Godici*⟩

6                                                        Nicholas P. Godici

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S
MOTION FOR A PRELIMINARY INJUNCTION