# EXHIBIT II

Confidential Attorneys' Eyes Only Outside Counsel

Page 1

1                UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4

5    APPLE INC., a California
     corporation,
6

                      Plaintiff,
7

     vs.                            CASE NO. 11-CV-01846-LHK
8

     SAMSUNG ELECTRONICS CO., LTD.,
9    A Korean business entity;
     SAMSUNG ELECTRONICS AMERICA,
10   INC., a New York corporation;
     SAMSUNG TELECOMMUNICATIONS
11   AMERICA, LLC, a Delaware
     limited liability company,
12

                      Defendants.
13   _____/

14

15            C O N F I D E N T I A L

16       A T T O R N E Y S'  E Y E S  O N L Y

17          O U T S I D E   C O U N S E L

18

19    VIDEOTAPED DEPOSITION OF RAVIN BALAKRISHNAN, Ph.D.

20            SAN FRANCISCO, CALIFORNIA

21            TUESDAY, AUGUST 16, 2011

22

23   BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR

24   CSR LICENSE NO. 9830

25   JOB NO. 41176

Confidential Attorneys' Eyes Only Outside Counsel

Page 5

1       MR. LIEN:  Henry Lien, representing Samsung.

2       MR. BRIGGS:  Todd Briggs, representing

3  Samsung.

4       MR. AHN:  Matthew Ahn, of Morrison &

5  Foerster, on behalf of Apple.

6       THE VIDEOGRAPHER:  Will the court reporter

7  please swear in the witness.

8

9            RAVIN BALAKRISHNAN, Ph.D.,

10         having been sworn as a witness,

11       by the Certified Shorthand Reporter,

12            testified as follows:

13

14

15       THE VIDEOGRAPHER:  You may proceed.

16

17            EXAMINATION BY MR. JOHNSON

18       MR. JOHNSON:  Good morning, Mr. Balakrishnan.

19  Q   Have -- you've been deposed before?

20  A   Yes, I have.

21  Q   Okay.  About how many times?

22  A   About a half a dozen times, roughly.

23  Q   I'll try to ask coherent questions, and if

24  you -- hopefully you'll provide some answers, and

25  if -- to the extent that you don't understand any of

Confidential Attorneys' Eyes Only Outside Counsel

1        MR. MONACH:  Object to form; vague.

2        THE WITNESS:  To the extent that, very

3   broadly speaking, they are both concerning touch input

4   devices, yes, but the real subject matter of the Elan

5   case was on this algorithm for analyzing the data

6   coming out of the touch, the touch device.  Whereas,

7   here, it's more of a user interface issue, at least

8   the three -- well, the current patent, right, we're

9   talking about today here.

10       MR. JOHNSON:  Q.  In the Elan case, Apple is

11  a defendant; right?

12       A    That is correct.

13

Confidential Attorneys' Eyes Only Outside Counsel



Confidential Attorneys' Eyes Only Outside Counsel



Confidential Attorneys' Eyes Only Outside Counsel

Page 11



Confidential Attorneys' Eyes Only Outside Counsel

Page 12

5     Q    What patents are you substantively involved

6  in with respect to the Motorola cases?

7          MR. MONACH:  Dr. Balakrishnan, we're not

8  involved -- my firm is not involved in the Motorola

9  case, and it may well be that work that -- work that

10 you've done that isn't publicly known, for example, by

11 filing something is confidential and is the work

12 product of the firm representing Apple in that case,

13 so I would caution you not to disclose anything that

14 is not -- has not been made public in that case.

15         It's irrelevant to this case, in our view.

16         THE WITNESS:  Okay.  I think your question

17 was what patents, and I believe that is, based on my

18 declaration which I believe, are public.  The two

19 patents I've primarily been working on is the --

20 what's called the '828 patent, and the other one is

21 the '430 patent.  The full number, I'd have to look it

22 up.

23         MR. JOHNSON:  Yeah.

24    Q    And, just generally, what do those patents

25 relate to?

Confidential Attorneys' Eyes Only Outside Counsel

Page 27

1 did zoom in.  But whether or not it has to be zoomed

2 in, I need to spend a bit more time making sure

3 whether it has to or not.  I have not done that right

4 now on this device.

5          MR. JOHNSON:  Okay.

6          THE WITNESS:  So, on this device, I went

7 through the -- the preamble.  It's clearly a

8 computer-implemented method.  It has a device with a

9 touchscreen display.  It is displaying right now a

10 first portion of an electronic document.  The

11 electronic document here happens to be a photograph or

12 an image, some kind of a picture of something.

13          MR. JOHNSON:  Q.  Is the electronic doc --

14 what -- what does an "electronic document" mean in the

15 context of this patent?

16          MR. MONACH:  Object to form to the extent

17 it's calling for a legal conclusion, but you can give

18 your views on that.

19          THE WITNESS:  In the context of this patent,

20 my understanding, having read the patent and the

21 claims, is the electronic document is some visual

22 representation on the screen that has a defined length

23 and a width, as an example, or defined set of

24 boundaries, because they may not have to be a

25 rectangular set of boundaries.

Confidential Attorneys' Eyes Only Outside Counsel

Page 28

1    MR. JOHNSON:  Q.  So can it -- it can be

2  anything with a defined length and width?

3    A   It could be any visually represented thing

4  with a defined boundary.  I'd rather use the word

5  "boundaries," because length and width may connote a

6  rectangular thing.  It may not be a rectangle,

7  necessarily.

8    Q   Okay.  So an electronic document is anything

9  that can be visually represented with a defined

10 boundary?

11   MR. MONACH:  Object to the form of the

12 question; object as calling for a legal conclusion.

13   THE WITNESS:  In the context of this patent

14 and the claims, reading the patent and the claims, I

15 would say that would be a -- my definition of an

16 electronic document would be something visually

17 representable on the screen that -- that has a defined

18 set of boundaries.

19   MR. JOHNSON:  Okay.

20   Q   How about the next limitation?

21   A   Okay.  So, as I said earlier, it's got a

22 first portion of an electronic document.  We already

23 went through that.

24   Q   And -- and -- I'm sorry.

25   A   I'm sorry.

Confidential Attorneys' Eyes Only Outside Counsel

1    Q   What does "first portion" mean?

2        MR. MONACH:  I'm going to object to the form

3    of the question to the extent it calls for a legal

4    conclusion.

5        THE WITNESS:  In -- in this particular

6    example, I would say the first portion is the -- the

7    portion of the image that we see displayed on the

8    screen, which I don't know how to describe this --

9        MR. JOHNSON:  Can you zoom in more on the

10   screen, just so we see it better.  Yeah, okay.  That's

11   good.  Thanks.

12       THE WITNESS:  Everything, including the

13   yellow blob in the middle and the blue stuff around

14   it.

15       MR. JOHNSON:  Q.  So it's everything that's

16   shown on the screen is the first portion?

17   A   Well, obviously, not this word "Samsung" and

18   things like that.

19   Q   Yeah.

20   A   The actual display, maybe if I -- without

21   touching it, if I can sort of indicate, you see the

22   bottom boundary there --

23   Q   Okay.

24   A   -- the top boundary, right boundary, and left

25   boundary?

Confidential Attorneys' Eyes Only Outside Counsel

Page  34

1   on a smartphone mobile computer, it clearly must have

2   instructions in order to execute those -- those

3   movements and functions that I just demonstrated.

4          So that would cover 19, and Claim 20, when it

5   talks about a storage medium, that -- those

6   instructions, the program that we -- it was executing

7   while I'm manipulating this, would have to be stored

8   on some storage medium, and given that this doesn't

9   appear to be connected to anything else and the medium

10  must be -- wouldn't necessarily have to be inside

11  the -- the device itself, and I say that, again,

12  without having examined the device in great detail,

13  this particular device.

14         MR. JOHNSON:  Okay.

15     Q   So in your -- in your opinion, the gallery

16  application in -- of Exhibit 20 infringes Claims 1,

17  19, and 20; correct?

18         MR. MONACH:  Same objection.

19         THE WITNESS:  So, in my opinion, given the

20  short time I've looked at this right now, the time

21  I've had there, I would -- I would say, yes, it

22  infringes.

23         MR. JOHNSON:  Q.  Can you look at the

24  contacts application --

25     A   Sure.

Confidential Attorneys' Eyes Only Outside Counsel

Page 35

1    Q   -- and we'll go through this -- well, let me

2  ask you this:  Can you look at the contacts

3  application and tell me whether it's your opinion that

4  the contacts application of Exhibit 20 infringes the

5  claims of the '381 patent?

6        MR. MONACH:  Object to form; same objection

7  on asking him a hypothetical question to form an

8  opinion at the -- on the fly at the deposition.

9        THE WITNESS:  So, again, I'll preface -- if

10  you give me a minute, first of all, to -- to look at

11  this, but I also preface my upcoming answer by saying

12  that I haven't had a chance to examine this particular

13  phone on my own time, so I'm doing this, again, right

14  here at the deposition, so it's kind of an on-the-fly

15  opinion.

16        Okay.  I've looked at it.

17        MR. JOHNSON:  Q.  In your opinion, does the

18  contacts application of Exhibit 20 infringe the '381

19  patent?

20        MR. MONACH:  Same objection to the form;

21  asking for a legal conclusion with minimal time to

22  examine it, the device.

23        THE WITNESS:  So based on my brief

24  examination of this right now in the deposition, I

25  would say, yes, it does infringe Claim 1.

Confidential Attorneys' Eyes Only Outside Counsel

Page 36

1          MR. JOHNSON:  Okay.

2     Q    Can you walk us through the infringement?

3     A    Sure.

4          So let's see on this again.

5          Okay.  So what I have here is, again, the

6     Samsung Galaxy -- what appears to be the Samsung

7     Galaxy S smartphone mobile computer, and it has the

8     preamble, again, of Claim 1, a computer-implemented

9     method.  It's a mobile computer.  It has a computer

10    compromising a device with a touchscreen display and,

11    as you can see, it's a device that's got a touchscreen

12    display that reacts to my touches.

13         So now what I've got here is the -- the

14    so-called contacts application, and what it -- what

15    it's showing me on the screen is a -- displaying a

16    first portion of an electronic document.  So this

17    document here consists of a bunch of phones or, you

18    know, contact information of different people, I

19    guess, and their phone numbers and so forth.

20         So, right now, I've got the first portion of

21    that, which, you know, the top here, it's got Bob

22    White, and on the bottom, it's got somebody I just

23    entered, with -- with some random set of letters at

24    the bottom, starting with N.  So that's a displaying

25    the first portion of an electronic document element of

Confidential Attorneys' Eyes Only Outside Counsel

Page  37

1    the claim.

2         The second element is detecting a movement of

3    an object on or near the touchscreen display, and I'm

4    gonna do this in combination with the next element,

5    which says, "In response to detecting the movement,

6    translating the electronic document displayed on the

7    touchscreen display in a first direction to display a

8    second portion of the electronic document, wherein the

9    second portion is different from the first portion."

10        So I'm just gonna do this right now.  I'm

11   gonna put my finger down, and that finger would

12   correspond to the object in the claims, and it's gonna

13   detect -- the system's gonna detect the movement of

14   that object with my finger on -- on the touchscreen

15   display.  I'm gonna put it down.  Oops.  I'm sorry.  I

16   didn't intend it to activate the -- I'm just gonna go

17   back here.

18        So strike that little portion where it

19   activated.  If I put my finger down, it'll lightly

20   move.  It -- and I've now moved in one direction,

21   moved my finger in one direction, the document is

22   moved in one direction to display a second portion,

23   and the second portion here, you can see, has a -- the

24   last name at the bottom of the screen -- I don't know

25   if you can see that -- it's now Mary something or the

Confidential Attorneys' Eyes Only Outside Counsel

Page 57

1    to the elements of the claims of -- Claim 1 of

2    the '381 patent, appear to be the same as the -- those

3    found in the gallery application of these other five

4    phones, five phones that have just been placed in

5    front of me and looked at a few minutes ago.  Again, I

6    want to say I haven't studied this in great detail to

7    confirm with 100 percent certainty.

8           MR. JOHNSON:  Q.  But, as far as you're

9    concerned, the gallery feature operates the same basic

10   way as -- in Exhibit 100 as it does in the Galaxy

11   10.1, for purposes of alleged infringement of the '381

12   patent; right?

13          MR. MONACH:  Object to the form of the

14   question, since he hasn't been given an opportunity to

15   compare this with the 10.1 --

16          THE WITNESS:  So --

17          MR. MONACH:  -- side by side.

18          THE WITNESS:  So, I'm sorry, you said against

19   the Galaxy 10.1 tablet, yeah, I would like to look at

20   that in -- in detail before I make that determination.

21   Otherwise, I'd be going by memory.

22          MR. JOHNSON:  Q.  When's the last time you

23   looked at a Galaxy 10.1?

24     A    I might have looked at it yesterday, again,

25   in preparation for the depo, but I certainly looked at

1    it about two or three weeks ago.

2            (Phone marked Balakrishnan Exhibit 101

3             for identification.)

4        MR. JOHNSON:  Exhibit 101 is a Galaxy 10.1,

5    so let me ask the question again.

6      Q    Looking at Exhibit 100, the Galaxy Tab 7, and

7    comparing the Galaxy 10.1 gallery function, can you

8    tell me whether those gallery applications operate the

9    same way for purposes of alleged infringement of

10   the '381 patent?

11       MR. MONACH:  Same objection; lack of

12   foundation; calling for a legal conclusion and a new

13   opinion on devices presented for the first time at the

14   deposition.

15       THE WITNESS:  So if you give me a minute to

16   refresh my memory on the 10.1 tablet here.

17       So based -- based on my quick comparison here

18   on -- on the fly, at this deposition, I would say

19   the -- of these two tablets, Exhibit 100 and

20   Exhibit 101, I would say that the base functionality

21   in the gallery application, with regards to elements

22   of Claim 1, appear to be very similar.

23       MR. JOHNSON:  Q.  Can you look at the

24   contacts application of the Tab 7 and tell me whether

25   the contacts application infringes any claims of

Confidential Attorneys' Eyes Only Outside Counsel

Page 59

1  the '381 patent?

2      MR. MONACH:  Same objection as previously

3  stated.

4      THE WITNESS:  So I would say this is the

5  first time I'm looking at this particular contacts

6  application, so you've got to give me a few minutes to

7  study this.

8      So, again, this is the first time I'm looking

9  at this particular style of contacts application,

10 which has a very different look and feel from the

11 other ones on the phones.  Given my very quick review

12 here, I would say this contacts application, in terms

13 of scrolling the -- the list of names within the

14 application, would meet the -- would infringe the

15 claims -- the element of the claims of -- of Claim 1

16 of the '381 patent.

17     MR. JOHNSON:  Q.  Would infringe?

18 A   It would infringe, yes.

19 Q   Can -- can you walk us through the alleged

20 infringement of the contacts application and using the

21 camera where possible --

22 A   Sure.

23 Q   -- to show the different limitations of the

24 claim?

25     MR. MONACH:  Same objection as previously

Confidential Attorneys' Eyes Only Outside Counsel

Page 60

1    stated, asking the witness to form a new infringement

2    opinion with a device presented to him for the first

3    time at the deposition.

4         THE WITNESS:  Do you know if there's a way to

5    lock the thing from not rotating, because -- anyway,

6    I'm gonna try, if it doesn't keep bouncing around.

7         How are we doing?

8         MR. JOHNSON:  If you could just tilt it

9    forward a little bit.  That's better.  Here, you

10   can --

11        THE WITNESS:  You good to go?  Okay.

12        To the extent that I'm -- you know, I want to

13   just caveat this by saying I'm doing this live on a

14   device I've just seen a few minutes ago, so I may make

15   some mistakes and maybe do it again.

16        So, first of all, let's walk through to

17   Claim 1.  It's a computer implemented method.  This is

18   clearly a mobile computer compromising a device with a

19   touchscreen display.  This is -- it just shut off.

20        Okay.  Let's try this again.

21        It's a device with a touchscreen display that

22   clearly reacts to my -- my touching the display, so it

23   has the preamble of the claim.  It says here, in the

24   first part of the claim, it says, "Displaying a first

25   portion of an electronic document," and in this

Confidential Attorneys' Eyes Only Outside Counsel

Page 61

1  contact application, I would say the electronic

2  document is this list of -- of items, list of names

3  that you see on the left-hand side of the -- of the

4  screen here.

5       MR. JOHNSON:  Q.  So it's -- it's the -- the

6  column of the names?  Can you -- can you just point to

7  what you're talking about?

8       A   Sure.

9       Q   You should touch the screen before.

10      A   Okay.  Let's try this again.

11          So the electronic document in this particular

12  instantiation would be the list of -- of names that

13  you see with these letter headings or letter dividers

14  in between the names.  It would be the -- so, you

15  know, what you see in, kind of, this box here,

16  starting -- it keeps going off to -- I'm sorry.  It

17  keeps shutting off.

18          MR. MONACH:  Sorry to interrupt here, but

19  while you're fiddling with that, I just have a

20  continuing objection to this series of questions.

21          THE WITNESS:  Okay.  All right.  Let's try

22  this again.  Hopefully, it doesn't go to sleep.

23          So it has -- you know, the list I just marked

24  out there, that would be the electronic --

25          MR. JOHNSON:  Q.  So an electronic document

Confidential Attorneys' Eyes Only Outside Counsel

Page 62

1    can be something that's smaller than what you see on

2    the screen, because it meets your definition of

3    visually represented on the screen with a defined --

4    defined set of boundaries?

5         MR. MONACH:  Objection; calling for a legal

6    conclusion.

7         THE WITNESS:  I would say an electronic

8    document doesn't have to fill the entire screen.

9         MR. JOHNSON:  Okay.

10        THE WITNESS:  Yes, and it's gone asleep

11   again, so let's try this one more time.  Okay.

12        All right.  So it is live.  So we've got the

13   electronic document.  Now, the next element of the

14   claim says "Detecting a movement of an object on or

15   near the touchscreen display," and I -- I'm gonna put

16   my finger down, which would correspond to the object

17   in the -- in the claims, and it detects a movement of

18   my object on or near the touchscreen display and

19   clearly reacts to that.

20        The next element says "In response to

21   detecting the movement, translating the electronic

22   document displayed on the touchscreen display in a

23   first direction to display a second portion of the

24   electronic document, wherein the second portion is

25   different from the first portion."

Confidential Attorneys' Eyes Only Outside Counsel

Page 63

1    So let's see if I can show this.  I've got my
2  finger on the screen, my object on the screen.  The
3  first portion is this part of the document that, let's
4  say, starts with Chris Thomas at the top, and at the
5  bottom it has the word "QWERTY," that I just entered.
6  I'm gonna -- I'm gonna move my -- move my finger, and
7  so in response to my -- my finger, it's gonna
8  translate the electronic document to display --
9  translate in a first direction, in one direction here,
10 to display a second portion, which is different from
11 the first portion.
12    So, now, the second portion now, as you see,
13 on the top, has Billy Smith, and the bottom has
14 Michael Myers on the -- on the list of the information
15 on the document.  So it's clearly different from that
16 first portion that we saw earlier that had different
17 names on the top and bottom.
18    Now -- now, I'm gonna keep going here to the
19 next element.  It says "In response to an edge of the
20 electronic document being reached while translating
21 the electronic document in the first direction, while
22 the object is still detected on or near the
23 touchscreen display, displaying an area beyond the
24 edge of a document and displaying a third portion of
25 the electronic document, wherein the third portion is

Confidential Attorneys' Eyes Only Outside Counsel

1   if I zoom in on the image, and if I move the image,

2   then -- if I -- at 45 degrees, for example, you know,

3   you see my finger has moved 45 degrees?

4       A    Roughly.

5       Q    -- or approximately; right?

6       A    Sure.

7       Q    And then that's a first direction; right?

8            MR. MONACH:  Objection; form.

9            MR. JOHNSON:  Q.  I want you to assume that's

10  the first direction.

11      A    Okay.  Sure.

12      Q    Okay.  And then if I move the image down from

13  there at 45 degrees, right, have -- in both of those

14  actions, has my finger moved the same direction?

15           MR. MONACH:  Objection to the form of the

16  question; vague; calling for a legal conclusion.

17           THE WITNESS:  In the compound two-dimensional

18  case, it is moving in two dimensions.  It, in one

19  case, moved in some amount of the X, in some amount of

20  the Y.  In the other case you moved a different amount

21  of the X, a different amount of the Y, depending on

22  what your components of the direction are.  If you're

23  only interested in one axis, then maybe it was the

24  same.  I'd have -- I'd have to determine exactly what

25  your paths were.  But if you're talking about the

Confidential Attorneys' Eyes Only Outside Counsel

Page 91

1  two-dimensional movement, then it appears you took two

2  different vectors --

3          MR. JOHNSON:  Yeah.

4      Q   For purposes --

5      A   -- in these images.

6      Q   For purposes of the claims of the '381

7  patent, these are -- these are two different

8  directions; right?

9          MR. MONACH:  Objection; calling for a legal

10  conclusion.

11          THE WITNESS:  For purposes of the claims,

12  these -- the two-dimensional directions that you

13  took -- that you just showed appear to be different.

14          MR. JOHNSON:  Right.

15      Q   Just so, since you're the actor today, can --

16  can you -- can you --

17      A   I hope I'm not acting.

18      Q   -- show us on the screen -- or, at least,

19  you're -- you're the hand model.

20          Can -- if you could just put the -- show on

21  the screen the two -- the -- the -- just what I just

22  did.

23          So put -- put your finger on the screen on

24  the zoomed-in image, and if you move it up at

25  45 degrees --

Confidential Attorneys' Eyes Only Outside Counsel

Page 92

1    A    Like, up here?

2    Q    Yeah.

3    A    Okay.

4    Q    And then if you move it down 45 degrees,

5  right, those are not the same direction; right?

6         MR. MONACH:  Objection to the form of

7  questions for the reasons previously stated.

8         THE WITNESS:  So, as I said, in the

9  two-dimensional space, if I'm concerned with both the

10 X and Y axes, taking both components of movement, then

11 it would be different.  However, if I'm only

12 interested in one of the components, say, for example,

13 the X axis, I'd have to look at the data.  It may be

14 both moving in the same direction in the X axis, for

15 example.

16        MR. JOHNSON:  Q.  For purposes of the claims

17 of the '381 patent, they're not the same direction;

18 are they?

19        MR. MONACH:  Objection to the form of the

20 question; calling for a legal conclusion.

21        THE WITNESS:  So the claim doesn't say

22 whether the direction is two dimensional, three

23 dimensional, one dimensional, so it would be

24 determined -- would depend a little bit on whether you

25 want to constrain the direction to be only a

Confidential Attorneys' Eyes Only Outside Counsel

Page 93

1   particular axis.  If the claim is interpreted broadly

2   to mean any number of axes of movement, then it would

3   not be the same.  If it's interpreted more narrowly to

4   say I'm only interested in X axis movement, for

5   example, then it can be the same.

6          MR. JOHNSON:  Q.  Well, what's your

7   definition of "first direction," under the claims of

8   the '381 patent?

9      A   Reading it in terms of the plain language,

10  which is the way I've -- I've interpreted the claims

11  so far, I would take this to be -- could be more than

12  one -- one dimension.

13     Q   So under the definition -- under the

14  definition of "first direction" that you just gave for

15  the '381 patent, were those two finger movements the

16  same direction?

17     A   They would be the same direction, if you take

18  the two-dimensional components into account, yes.

19     Q   So they would be a first direction?

20     A   So, no, I'm sorry.  Can I go back?  I -- I

21  misstated that.

22          They would be -- they would not be the same

23  direction if I took the two-dimensional components

24  into account.  But if I only looked at one-dimensional

25  component of the movement, they might be the same.

Confidential Attorneys' Eyes Only Outside Counsel

Page 94

1   I'd have to look whether the X axis is the same thing.

2       Q   Is there -- do you think there's an ambiguity

3   in terms of what "first direction" means in the plain

4   language meaning of that term for the '381 patent?

5           MR. MONACH:  Object to the form of the

6   question; vague; incomplete hypothetical; calling for

7   a legal conclusion.

8           THE WITNESS:  From a plain reading of this

9   and just taking a high-level view of it, the -- it

10  would appear to encompass all -- all components of the

11  direction, dimensions of the direction, but I could

12  imagine somebody, you know, saying I only want it

13  constrained to X axis, for example.

14          MR. JOHNSON:  Yeah, I'm talking about a

15  person of ordinary skill in the art.

16      Q   What would a person of ordinary skill in the

17  art understand "first direction" to mean in the '381

18  patent?

19          MR. MONACH:  Object to the -- object to the

20  form of the question, but you can give your

21  understanding.

22          THE WITNESS:  So as I'm reading this, the

23  claims in conjunction with the patent, I would say it

24  includes the -- the -- the two-dimensional components.

25          MR. JOHNSON:  Okay.

Confidential Attorneys' Eyes Only Outside Counsel

Page 95

1    Q   So if I go back to the claim language, the

2   third element says "In response to detecting a

3   movement translating the electronic document displayed

4   on the touchscreen display in a first direction to

5   display a second portion of the electronic document,"

6   so can you show me what that is in the Galaxy S 4G?

7    A   So -- so displayed in the touchscreen in a

8   first direction.

9       So if I go -- so let me zoom this one again.

10   If I go this way, see that.  Let me do this again.  So

11   it's a first direction, for example.

12    Q   Okay.

13    A   And it displays a second portion of the

14   document.

15    Q   And then, the next element says "In response

16   to an edge of the electronic document being reached

17   while translating the electronic document in the first

18   direction."

19       So that means you have to reach the edge

20   using the same first direction?

21    A   That's right.

22       MR. MONACH:  Object to the form.

23       THE WITNESS:  I'm sorry.  I should have

24   waited.

25       MR. JOHNSON:  So --

Confidential Attorneys' Eyes Only Outside Counsel

Page 99

1   document being reached while translating the

2   electronic document in the first direction"?

3       A   So same zoomed-in image, I'm going here.  I

4   moved in the first direction, and I continue moving in

5   that same direction, I see the edge, and then it

6   continues.

7           So it's detected the edge.  Movement is still

8   happening the same first direction and displays an

9   area beyond the edge, which is in black, past the --

10  past the edge of the document, and then displays a

11  third portion of the electronic document, which is

12  what you see in the screen, which is smaller than the

13  first portion that we saw earlier.

14      Q   Okay.  So when I -- when you moved to the

15  edge of the document by moving your finger over, I saw

16  the image move up a little bit.

17          MR. MONACH:  Object to the form of the

18  question.

19          MR. JOHNSON:  Q.  And so my question is:

20  When you move your finger across and the image moves

21  up or down, is that the same first direction?

22          MR. MONACH:  Object.

23          MR. JOHNSON:  Q.  Do you understand my

24  question?

25          MR. MONACH:  Object to the form of question;

Confidential Attorneys' Eyes Only Outside Counsel

Page 100

1   assuming facts not in evidence.  Object to the extent

2   it calls for a legal conclusion.

3           THE WITNESS:  So --

4           MR. JOHNSON:  Q.  So let me -- let me ask it

5   a different way.

6      A   Can I release this?

7      Q   Yeah, you can release that.  This is not --

8   this is not intended to be torture.

9           Is there -- is the only way to infringe this,

10  the claims of the '381 patent, for the -- for the

11  movement of the image and the object to be in a

12  perfectly straight line?

13          MR. MONACH:  Object to the form of the

14  question as calling for a legal conclusion; incomplete

15  hypothetical.

16          THE WITNESS:  No, I don't think it has to be

17  a perfectly straight line.

18          MR. JOHNSON:  Q.  You would agree that the

19  first movement that you took when you translated the

20  document to -- to display a second portion of an

21  electronic document, and then when you moved to the --

22  to the edge of the document, your -- your finger

23  didn't move exactly a straight line; right?

24          MR. MONACH:  Objection; form.  Objection;

25  vague.

Page 101

1      THE WITNESS:  To the extent that a -- a --

2  you know, was my finger exactly on a straight line, I

3  don't think that's humanly possible --

4      MR. JOHNSON:  Right.

5      THE WITNESS:  -- unless you constrain my

6  finger with some physical gadgetry that would hold it.

7  I don't think that you can do that --

8      MR. JOHNSON:  Q.  So my question is --

9      MR. MONACH:  Please don't interrupt him.

10     MR. JOHNSON:  Sorry about that.

11  Q   My question is:  Where do you draw the

12  boundaries around what constitutes the same first

13  direction?  How do you do that?

14      Because, as you just said, you can't have a

15  perfectly straight line, unless your finger is

16  physically constrained to something that -- that makes

17  that happen.  So what's -- what constitutes the

18  difference between moving in the same first direction

19  the way you did it, versus the way I did it with a

20  45-degree arc?

21      MR. MONACH:  Hang on.

22      Object to the form of the question.  Object

23  to the extent you're calling for a legal conclusion.

24      THE WITNESS:  So --

25      MR. JOHNSON:  Q.  So my question is:  A

Confidential Attorneys' Eyes Only Outside Counsel

Page 102

1   person of ordinary skill in the art would not know how

2   to differentiate between drawing the perfectly

3   straight line with a finger in one direction -- in the

4   first direction, versus drawing approximately a

5   straight line.

6           MR. MONACH:  Is that a question?

7           Object to -- object to form.

8           THE WITNESS:  Are you talking from a -- so

9   I'm not sure I completely understand the question.

10          MR. JOHNSON:  I'm talking from a user

11  standpoint.

12      Q   Someone wants to try and avoid using this

13  particular claim by saying I'm not gonna use my object

14  to -- to -- to move, in this case, the photo in a

15  first direction.  How do I go about avoiding that?

16          MR. MONACH:  Object to the form of the

17  question as vague and calling for a legal conclusion.

18  Objection to the extent it calls for a narrative about

19  all the possible ways one might avoid infringing.

20          THE WITNESS:  So I think that's -- it would

21  have to be a first direction that the other one --

22  the -- the second first direction and the first first

23  direction in these claims would have to be the same

24  general direction as a user would perceive it to be.

25          I -- I don't think it has to be exactly on a

Confidential Attorneys' Eyes Only Outside Counsel

Page 103

1    mathematical equivalent straight line, but, to me, if

2    you go, you know, obviously different directions, like

3    you did on the -- the two 45s in very different

4    two-dimensional directions, most users would be able

5    to say that's a -- you know, I've got to change

6    direction along the way.

7         MR. JOHNSON:  Okay.

8    Q    How about a slight arc?  Is that sufficient?

9         MR. MONACH:  Same objection; also vague.

10        THE WITNESS:  A slight arc.  So if you're

11   saying my direction is -- is the contours of the arc,

12   so one, kind of, doing this and continue along the

13   same -- I don't know how you continue in an arc.

14        Eventually you will loop back, but wait.  Let

15   me -- that would be -- you know, if your direction is

16   now a two-dimensional direction, yes, it would be the

17   same direction.

18        Or if I was on the 45 angle and continued in

19   this similar 45 and didn't make a sharp turn, then it

20   would be the same dir- -- same first direction.

21        MR. JOHNSON:  Q.  And what if I -- what if I

22   did an angle that was, you know, ten degrees in one

23   direction and ten degrees in the other direction?

24        I'm trying to understand where the metes and

25   bounds are, where the boundaries are for what

Confidential Attorneys' Eyes Only Outside Counsel

1    infringes, versus what doesn't; and so at what point

2    is it the same first direction and at what point is it

3    not the same direction?  Because you said my -- my

4    example of going 45 degrees up and 45 degrees down is

5    not the same direction.

6         So, you know, going at ten degrees up and ten

7    degrees down, is that the same first direction?  I

8    mean, I can't draw a straight line with a ruler, so it

9    all looks pretty straight to me, but at what point do

10   you avoid the claim and at what point are you covered

11   by the claim?

12        MR. MONACH:  Object to the --

13        MR. JOHNSON:  So let -- let me ask it a

14   little bit more specifically.

15   Q    At -- tell me -- when -- when you said it has

16   to be the same general direction, what exactly do you

17   mean by that?

18        MR. MONACH:  Objection to the extent that

19   you're asking for a legal conclusion.  Objection to

20   the extent it's an incomplete hypothetical and you're

21   asking him to form a new opinion here at the

22   deposition.

23        But if you have a -- have you -- you can

24   answer.

25        THE WITNESS:  So I haven't, you know,

Confidential Attorneys' Eyes Only Outside Counsel

1  explored this particular question in great detail

2  in -- in thinking about this, because, to me, reading

3  this, as one skilled in the art, it says first

4  direction and another first direction, it would be the

5  direction -- same general direction that a user would

6  generally consider to be a first direction of the same

7  direction; whereas, if it's something that -- you

8  know, I think a straight line from a mathematical

9  definition or a unfavoring first direction from a

10 mathematical -- a direction from a mathematical

11 definition, and then what one skilled in the art or

12 average user would say, yeah, that's in the same

13 direction.

14      So if you're asking me is there an exact

15 mathematical number at which it is no longer one, I

16 don't think I could give you that answer.

17      MR. JOHNSON:  Okay.

18   Q   What about -- let me -- can we have that

19 phone, please.  Thank you.

20      Can you try and get this for me?

21      Okay.  So you said this is not the same first

22 direction; right?

23   A   Can you do that again?

24   Q   That direction is not the same as that

25 direction --

Confidential Attorneys' Eyes Only Outside Counsel

Page 106

1       MR. MONACH:  Objection to the form of the

2   question.

3       MR. JOHNSON:  Q.  -- right?

4       MR. MONACH:  Calling for a legal conclusion.

5       THE WITNESS:  If I was a -- as I said

6   earlier, if I'm considering the full two-dimensional

7   movement and not just the X axis component, then --

8   then it is two different directions that a user would

9   perceive it as.

10       MR. JOHNSON:  Q.  I'm -- all I'm asking is,

11   is it the same first direction for purposes of

12   the '381 patent and how the term "first direction" is

13   used in that?

14       MR. MONACH:  Objection; asked and answered.

15   Objection; calling for a legal conclusion and a new

16   opinion with an incomplete hypothetical.

17       THE WITNESS:  So to the extent that you --

18   you -- the movement you did was -- from my eyes, it's

19   exact -- it's a different two-dimensional direction.

20       MR. JOHNSON:  Okay.

21       THE WITNESS:  It is different.

22       MR. JOHNSON:  Okay.

23   Q   Is -- is this arc the same direction?  So if

24   I break it into two --

25   A   You didn't pause.

Confidential Attorneys' Eyes Only Outside Counsel

1    Q    Let me do it again.

2         So that is the first step of the first

3    direction.  This is the second step.

4         Is that the same first direction?

5         MR. MONACH:  Same objection as to the

6    previous question.

7         THE WITNESS:  So, conceptually, if you're

8    moving in an arc, and assuming you went on the same

9    arc, and you didn't -- when you broke there, you --

10   you were still following the same arc, I would say it

11   is the same first direction.

12        MR. JOHNSON:  Q.  It is?

13   A    Yes.

14   Q    Okay.  So what if I changed -- what if I

15   break the arc?  So if I start this, this way with --

16   and that's the first step, and then I change the angle

17   of the arc, I either go up or I go down at a different

18   angle, so I break the arc?

19   A    So it's no longer --

20        MR. MONACH:  Same objection.

21        Go ahead.

22        THE WITNESS:  I'm sorry.

23        A -- if you're no longer on the same arc, you

24   have -- you have broken the arc, as you -- as you've

25   said, then it would not be the same direction.

Confidential Attorneys' Eyes Only Outside Counsel

Page 108

1           MR. JOHNSON:  Okay.

2       Q   And if I move my finger -- you would agree

3   that in moving my finger -- and I can see the image

4   moving up and down -- I mean, generally speaking,

5   there are gonna be components within the movement of a

6   finger that have a vertical component to it, as well

7   as sort of the horizontal component; right?  So it's

8   moving up and down.

9           MR. MONACH:  Object to the form of the

10  question.

11          MR. JOHNSON:  Q.  So is that -- is that the

12  same direction, even though it's -- it's bouncing up

13  and down when I move it?

14          MR. MONACH:  Same objection.

15          THE WITNESS:  Well, I wouldn't say that's

16  bouncing up and down.  I saw it moving primarily to

17  the right.  I actually could not see it bounce, but

18  I'll take your word that it's moving maybe a little

19  bit up and down.  You could exaggerate it a little

20  bit, if you wanted it to, but -- but now you're

21  clearly moving it in a jaggy way, so that's --

22          MR. JOHNSON:  Q.  So is that the same first

23  direction?

24      A   Well, I'm seeing your hand move in a zigzag,

25  so, to me, that's -- I think it's a very contrived way

Confidential Attorneys' Eyes Only Outside Counsel

1  of doing it.

2      Q   No, I'm trying to -- I'm -- I'm purposely

3  contriving it to -- to understand if that's the same

4  first direction.  So if I move it in a -- in a jagged

5  sort of way --

6          MR. MONACH:  Hang on a second.

7          MR. JOHNSON:  Q.  -- is that the first --

8  with -- let me start over.

9      Q   If I move my finger in a jagged way, like

10  this, does that meet the elements of the claim in

11  the '381 patent for first direction?

12          MR. MONACH:  Objection; calling for a legal

13  conclusion; vague; incomplete hypothetical.

14          THE WITNESS:  So I'm thinking here -- I

15  haven't considered this in detail before.  Now you're

16  showing me this for the first time, and I'm thinking

17  out loud here, to some extent.

18          Similar to the arc, where it's a

19  two-dimensional movement, but it follows a pattern,

20  it's following that arc, and I said that it would be a

21  first direction if you continue along the same arc.

22  In this case, you've got a rhythmic -- I think you did

23  a rhythmic jagged movement, where you kind of went up

24  and down, up and down, in a same kind of sawtooth.  I

25  would say that is the same direction, if you continue

Confidential Attorneys' Eyes Only Outside Counsel

Page 110

1   along the same rhythmic two dimension --

2   two-dimensional sawtooth or jaggy, whatever you want

3   to call it, which is different from the original --

4   sorry -- the earlier one where you did a big movement

5   in one direction and another big movement in a

6   different -- very different two-dimensional direction.

7   I would think one of ordinary skill in the art would

8   say that's a different two-dimensional direction.

9          MR. JOHNSON:  Okay.

10      Q   So, then, let me -- let me go back to that,

11  then, and ask you this:  If I -- if I do two saw

12  teeth, up, down, up, down, is that the same first

13  direction --

14         MR. MONACH:  Objection; vague and --

15         MR. JOHNSON:  Q.  -- because it's rhythmic?

16         MR. MONACH:  Objection; vague and ambiguous;

17  incomplete hypothetical; calling for a legal

18  conclusion and a new opinion at the deposition.

19         THE WITNESS:  Again, I haven't thought about

20  it in detail.  You know, I'm thinking about this for

21  the first time here.  I would say to the extent that

22  it's repetitive, and you're -- you're going in the

23  same direction, it would be the same first direction.

24         MR. JOHNSON:  Okay.

25      Q   So repetitive in the same direction,

Confidential Attorneys' Eyes Only Outside Counsel

Page 111

1    rhythmic, generally the same direction, those all meet

2    the limitations of the '381 patent for first

3    direction, as far as you're concerned; right?

4         MR. MONACH:  Same objection.

5         THE WITNESS:  Again, thinking on the fly

6    here, you know, haven't -- haven't delved into this in

7    great detail, yes, I would say yes.

8         MR. JOHNSON:  Okay.

9    Q    So let's -- let's keep going through the --

10   the claim --

11   A    Sorry.  I can't remember where we were.

12   Q    -- limitations.

13        We were -- we were just about to do display

14   in an area beyond the edge of a document.

15   A    Okay.  So let's assume I've done some of the

16   earlier stuff, and I've now -- I've pulled this, and

17   I've gone in one direction in a -- in the same

18   direction, same first direction.  I've now -- I'm now

19   showing an area beyond the document.

20   Q    That's the black?

21   A    It is the black beyond the blackened dots

22   there.  It says, "Displays the area beyond the edge of

23   the document," and then it displays -- well, currently

24   displays a third portion of the electronic document,

25   which is what you see to the right of the -- the area

Confidential Attorneys' Eyes Only Outside Counsel

Page 112

1    beyond the edge, and that is clearly smaller than the

2    first portion which took up more of the screen.

3              And then, now, that last element of the

4    claims --

5       Q    Okay.  Before you get there, what -- what is

6    "displaying an area beyond the edge of the document"

7    mean?

8              MR. MONACH:  Object to form.  Object to the

9    extent it calls for a legal conclusion.

10             You can give your understanding.

11             THE WITNESS:  My understanding is, in the

12   context of this patent and the claims, it's -- I've

13   got the edge of the document.  I've reached the edge,

14   and I'm gonna show something, some -- some amount of

15   visuals beyond that edge.  Displaying an area.

16             MR. JOHNSON:  Q.  What do you mean you're

17   going to show some amount of visuals beyond the edge?

18      A    So, for example, the black space, that black

19   area.  It could be a white area.  It could be some --

20   some visual that's not part of the document.

21      Q    So it could be anything that's visual, as

22   long as it's not part of the document?

23             MR. MONACH:  Object to the form of the

24   question.  Object to the extent it's vague and calls

25   for a legal conclusion.

Confidential Attorneys' Eyes Only Outside Counsel

Page 123

1   not going to answer it.

2       Q   Have you ever -- have you ever heard of the

3   term?

4       A   I believe I have.  It's not something that I

5   use regularly.

6       Q   Okay.  Have you ever heard of the term

7   "organic LED displays"?

8       A   I have heard the term, yes.

9       Q   Okay.  And what -- what is that?

10      A   It -- again, I haven't, for purposes of

11  preparation for this, I haven't thought about that in

12  detail to give you a clear answer, so I'm not -- I'm

13  not gonna give you an answer that's detailed.  I would

14  say that's a different form of -- of display --

15      Q   Okay.

16      A   -- than some of the others out there.

17      Q   So to -- to meet the elements of the claims

18  in the '381 patent that refer to display in an area

19  beyond the edge of the document, does the display need

20  to actively show something beyond the edge of the

21  document?

22          MR. MONACH:  Objection; vague.  Objection to

23  the extent it calls for a legal conclusion.

24          THE WITNESS:  I'm not sure what you mean by

25  "actively needs to show."  It says the -- the claim

Confidential Attorneys' Eyes Only Outside Counsel

Page 124

1   element says "displaying an area," so it would have to

2   display an area.  I'm not sure how it could happen

3   without --

4           MR. JOHNSON:  Okay.

5           THE WITNESS:  -- the device actually doing

6   it.

7           MR. JOHNSON:  Q.  Exhibit 21 that's in front

8   of you, the Galaxy S 4G, I think it's off right now,

9   right, so is -- is that display -- strike that.

10          Is that device displaying anything on the --

11   on the screen?

12          MR. MONACH:  Object to the form of the

13   question; vague.  Object to the extent it's asking for

14   a legal conclusion and a new opinion.

15          THE WITNESS:  I haven't thought about this

16   in -- in any detail.  Just thinking on the fly here,

17   the display doesn't appear to be powered on, and as a

18   result, the active part of the display doesn't appear

19   to be showing anything.

20          MR. JOHNSON:  All right.

21      Q   So when it's off, when it's not displaying

22   anything, it's not -- strike that.  It's not

23   displaying anything, so let me ask it a different way.

24          When the -- when the screen is turned off,

25   it's not displaying anything; right?

Confidential Attorneys' Eyes Only Outside Counsel

Page 125

1        MR. MONACH:  Same objection.

2        THE WITNESS:  When the screen is turned off,

3    the screen portion is not displaying anything.  Beyond

4    the screen, there are hard -- you know, hard is the --

5    I guess personally -- permanently or somewhat

6    permanently etched lettering that says "T-Mobile" and

7    "Samsung" on it.  You could argue that that's a

8    display on the phone, but it's not, you know --

9        MR. JOHNSON:  Q.  I'm talking about the

10   screen.

11       A    -- the -- the actual active part of the

12   screen, it's not displaying anything, no.

13       Q    Okay.  So if you go to -- back to your

14   example, where you were demonstrating infringement of

15   the photograph in the gallery.

16       A    Uh-huh.

17       Q    Can you go back to that for me.  Okay.

18           And if you go to the portion where you

19   believe that you're displaying an area beyond the edge

20   of the document --

21       A    Like once --

22       Q    That's the black --

23       A    Yeah.

24       Q    -- edge on the left-hand side of the screen.

25           You don't know how the Samsung products

Confidential Attorneys' Eyes Only Outside Counsel

1  actually operate and where that black boundary comes

2  from; do you?

3      A   Are you saying where the black boundary comes

4  from and whether it's sending instructions illuminate

5  or not illuminate those pixels?

6      Q   Right.

7      A   It would have to send the instructions to say

8  illuminate or not illuminate or illuminate with a

9  particular color.

10     Q   So what is it doing?  Is it telling you to

11 illuminate or not illuminate?  What does the code do

12 there?

13         MR. MONACH:  Objection; lack of foundation.

14         MR. JOHNSON:  Q.  And if you don't know, you

15 can say you don't know.

16     A   I -- I have not looked at the code that does

17 that, so I cannot answer that question.

18     Q   So if -- if the LED -- if there are LEDs that

19 are turned off in that leftmost edge there, right,

20 there -- it's not displaying an area beyond the edge

21 of the document; is it?

22         MR. MONACH:  Object to the form of the

23 question.  Object to the extent it calls for a legal

24 conclusion and a new opinion.

25         THE WITNESS:  So I haven't thought about this

Confidential Attorneys' Eyes Only Outside Counsel

1        MR. MONACH:  Object to form.

2        MR. JOHNSON:  Q.  Or maybe not below it.

3    A    Yeah, there is stuff above the F and below

4    the T, yes.

5    Q    Okay.  So all I was asking was, you can have

6    an electronic document that has an internal boundary

7    within a screen; right?

8        MR. MONACH:  Object to the form of the

9    question as vague.  Objection; calls for a legal

10   conclusion.

11       THE WITNESS:  So I -- I'm not -- again, I'm

12   still not sure what you mean by "internal."  It --

13       MR. JOHNSON:  I'm --

14       THE WITNESS:  Are you saying that this is the

15   boundary of the electronic document?

16       MR. JOHNSON:  Yeah.

17   Q    I just meant that that's internal because

18   it's -- it's located within the middle of the screen?

19   A    So in that -- that boundary doesn't match the

20   edge of the screen --

21   Q    Exactly.

22   A    -- is what you're -- is that what you're

23   saying?

24   Q    Exactly.

25   A    Sure, the boundary of the document doesn't

Confidential Attorneys' Eyes Only Outside Counsel

1    have to align with the screen.

2        Q    So you can have -- you can have the edge of

3    the boundary be something other than the edge of the

4    screen?

5            MR. MONACH:  Objection; vague.

6            MR. JOHNSON:  I think we're saying the same

7    thing.  I'm just -- I'm really bad with trying to --

8        A    I want to make sure I say the right thing

9    with my understanding of what you're saying, too.

10       Q    So all I'm saying is, under your view of an

11   electronic document, an electronic document can have a

12   boundary that is internal to the screen or, you know,

13   doesn't have to be at the edge of the screen --

14           MR. MONACH:  Objection; form.

15           MR. JOHNSON:  Q.  -- right?

16           MR. MONACH:  Objection; calling for a legal

17   conclusion; asked and answered.

18           You can do it again.

19           THE WITNESS:  So as I answered earlier, and

20   my opinion is that the boundary of the electronic

21   document, in this case, this -- this edge is one

22   boundary of it, does not have to match the edge of the

23   screen, yes.

24           MR. JOHNSON:  Okay.

25       Q    So just, during the lunch, I had the guys

Confidential Attorneys' Eyes Only Outside Counsel

Page 152

1    just print up a sheet of paper with some squares on it

2    for me.  So if you imagine, sir, that the -- the

3    quadrants that are labeled 1 to 36 on here are the

4    entire -- that's this -- that's the screen of the

5    display.

6        A    So the whole -- the big rectangular is the

7    screen?

8        Q    Right.

9        A    Okay.

10       Q    So you can have an electronic document that

11   consists of smaller grids within the screen; right?

12           MR. MONACH:  Object to the form of the

13   question; calling for a legal conclusion; incomplete

14   hypothetical; asking for a new opinion.

15           THE WITNESS:  It would depend on what one

16   considers to be the electronic document.  It could be

17   one of these, let me call it sub rectangles that you

18   can label with numbers.  It could be some combination

19   of them.  It --

20           MR. JOHNSON:  Right.

21           THE WITNESS:  -- really depends on -- depends

22   on how, you know, you want to put the boundary around

23   it.

24           MR. JOHNSON:  Q.  So you could draw a

25   boundary, hypothetically, around squares 15, 16, 17,

Confidential Attorneys' Eyes Only Outside Counsel

Page 153

1    18, 21 and 22, 23 and 24?

2        A    Say -- sorry.  15, 16, 17, 18, 21?

3        Q    22, 23, and 24.

4        A    So kind of like this?

5        Q    Yeah, go ahead and draw it.

6            MR. MONACH:  Object to the -- object to the

7    form of the question as vague and ambiguous;

8    incomplete hypothetical.

9            MR. JOHNSON:  Q.  Make it a little more

10   noticeable for me.

11       A    We've got black lines around it.

12       Q    Yeah, okay.

13           So that could be an electronic document;

14   right?

15       A    Depend --

16           MR. MONACH:  Same objection.

17           THE WITNESS:  Sorry.  I jumped in there.

18           Depending on the context, depending on the

19   application, it could be.

20           MR. JOHNSON:  Okay.

21           THE WITNESS:  Or some other collection.

22           MR. JOHNSON:  Q.  It's not limited to that;

23   right?

24       A    I would not say it's limited.

25       Q    So it could be also a -- a six-by-six grid or

Confidential Attorneys' Eyes Only Outside Counsel

Page 154

1    a two-by-two grid?

2            MR. MONACH:  Same --

3            MR. JOHNSON:  Q.  -- or even a three-by-three

4    grid, I guess --

5            MR. MONACH:  Same objection.

6            MR. JOHNSON:  Q.  -- right?

7            MR. MONACH:  Vague and ambiguous; incomplete

8    hypothetical.

9            THE WITNESS:  Again, it would depend on the

10   def- -- you know, how -- whoever is being the

11   application, what they consider to be the document --

12   to be the extent of the document, yes.

13           MR. JOHNSON:  Q.  Under your view, though, it

14   could be those, those grids; right?

15           MR. MONACH:  Objection; same objection as

16   before.  Also, misstates the prior testimony.

17           THE WITNESS:  Depending on the context, it --

18   it could take on different forms.

19           MR. JOHNSON:  Okay.

20       Q   Does the grid need to be a rectangle?

21           MR. MONACH:  Same objection.

22           MR. JOHNSON:  Strike it.  Let me ask it

23   again.

24       Q   Does -- would the grid need to be a rectangle

25   in order for it to be an electronic document?

Confidential Attorneys' Eyes Only Outside Counsel

Page 155

1          MR. MONACH:  Same objection.

2          THE WITNESS:  Well, I think the electronic

3    document doesn't have to be anything to do with the

4    grid.  It --

5          MR. JOHNSON:  Okay.

6          THE WITNESS:  -- it's any visual thing with

7    defined boundaries --

8          MR. JOHNSON:  So -- so it --

9          THE WITNESS:  -- by my definition of it.

10         MR. JOHNSON:  Q.  Could -- if you -- if you

11   drew lines around squares one, two, and eight, for

12   example --

13       A   One, two, and eight.  So this kind of, I

14   guess, inverted L?

15       Q   Yeah.

16         Could that be an electronic document?

17         MR. MONACH:  Objection; vague; incomplete

18   hypothetical; calling for a legal conclusion and a new

19   opinion.

20         THE WITNESS:  So to the extent that I haven't

21   considered this, this style of odd-shaped documents

22   prior to coming here today, just thinking on the fly

23   here, a -- based on my understanding of, you know,

24   boundaries, that wouldn't -- would satisfy the notion

25   of a boundary, again, depending on the context of the

Confidential Attorneys' Eyes Only Outside Counsel

Page 172

1  not to answer, unless he relied on a fact that was

2  communicated by counsel in forming his opinion here.

3        THE WITNESS:  In forming my opinion for the

4  declaration, I did not rely on any such information.

5        MR. JOHNSON:  Did you rely on any

6  conception -- strike that.

7     Q   In your opinion, what is the appropriate

8  conception dates for -- if you have one -- for the

9  asserted claims of the '381 patent?

10        MR. MONACH:  Object to the question as asking

11  for a legal conclusion; may lack foundation; and is

12  posing an incomplete hypothetical for which there may

13  or may not be an adequate foundation.

14        THE WITNESS:  In my opinion, just reading

15  the -- this document and -- I would -- I would come up

16  with a January 7th, 2007, date.

17        MR. JOHNSON:  And is there -- do you have any

18  reason to believe -- strike that.

19

Confidential Attorneys' Eyes Only Outside Counsel



Page 173



[redacted]

Confidential Attorneys' Eyes Only Outside Counsel

Page 175



Page 176





Confidential Attorneys' Eyes Only Outside Counsel

Page 178

10          MR. JOHNSON:  Q.  Or, have you done any

11    re- -- did you review any of the professional

12    applications that are listed here on the front of

13    the '381 patent?

14          A   I looked at one of the professional

15    applications.

16          Q   Which one?

17          A   I can't recall exactly which one.  The

18    numbers skip -- skip my mind.

19          Q   Why did you look at it?

20          A   It was part of just understanding the -- the

21    providence of the patent, so to speak.

22          Q   Did it list other inventors besides

23    Mr. Ording?

24          A   It might have, yes.

25          Q   Were you curious as to why those other

Confidential Attorneys' Eyes Only Outside Counsel

Page 274

1    Q   Do you know, is -- is LaunchTile a zoomable

2  user interface?

3    A   Going purely from memory, I believe there was

4  some elements that -- that allows -- that allowed for

5  zooming to different levels to see more or less

6  content, but I'm going purely from memory.

7        (Phone marked Balakirshnan Exhibit 114

8         for identification.)

9    MR. JOHNSON:  Okay.  I actually want to mark,

10  as Exhibit 114, a device that we have that is an iPAQ

11  that is running LaunchTiles on it, and I want to ask

12  you a few questions about it.

13    A   Okay.

14    Q   So I'm gonna ask my colleague to come around

15  over by you, just so he can put the device over there

16  and he can operate it while I ask you questions about

17  it, since I don't have four hands.

18    A   Okay.

19    MR. MONACH:  I'll object to the -- to the

20  extent there was a question, I'll object to the

21  question or assertion as vague and assuming facts not

22  in evidence that the device is running LaunchTiles.

23    THE VIDEOGRAPHER:  Please stand there.  It

24  might be better, and hold it like that.

25    MR. JOHNSON:  Just put that on the back for

Confidential Attorneys' Eyes Only Outside Counsel

Page 275

1    me so we don't forget.

2           THE WITNESS:  So you're gonna hold it?  Okay.

3           MR. JOHNSON:  Q.  So you can -- you can take

4    a look at it and, frankly, play around with it, if you

5    want --

6       A   Okay.

7       Q   -- to familiarize yourself with it, just to

8    tell me if you recognize it as LaunchTile.

9           Have you ever played with LaunchTile before?

10      A   I played with it very briefly a long time

11   ago, and then I looked at it briefly again -- was it

12   last week -- last week in the Netherlands, when this

13   came up.

14      Q   And how did it come up in the Netherlands?

15      A   I believe a similar device -- I don't know,

16   maybe it's the same one, but it was either produced by

17   Samsung or somehow the -- the Apple lawyers had a copy

18   of it, and LaunchTiles was allegedly loaded on it, and

19   they -- they looked at some of the potential

20   functionalities.  I did not spend much time on it.

21      Q   Okay.  What was your impression of it?

22          MR. MONACH:  Objection; vague.

23          THE WITNESS:  It -- it does what it does.

24   It -- I don't know what you mean what my impression

25   is.

Page 276

1            MR. JOHNSON:  All right.

2       Q    Well, take a look at it and just see if that

3   looks like the LaunchTile that you remember.

4            MR. MONACH:  Objection; vague; lack of

5   foundation; lack of authentication.  I also object

6   this is beyond the scope of his declaration in the

7   pending PI motion.

8            THE WITNESS:  So it does appear to be the

9   launch -- you know, a version of the LaunchTile

10  application that I've seen in various forms in the

11  past.  I haven't verified that it is actually

12  LaunchTiles.

13           MR. JOHNSON:  Q.  When is the first time you

14  saw LaunchTiles?

15      A    LaunchTiles?

16           It was -- I'm going by a vague memory here,

17  it was probably either at the conference, the CHI

18  Conference of that year, in, I think, 2005.  I might

19  have gone to the talk, or I saw it -- or I saw a video

20  of it subsequently.  Typically when I go back to my

21  university after a conference, we -- we review some of

22  the papers --

23      Q    Are those --

24      A    -- so I might have seen the video of it

25  later.

Confidential Attorneys' Eyes Only Outside Counsel

Page 277

1    Q    Okay.

2    A    I can't remember when is the first time I

3  played with it.  Somebody, one of my students, may

4  have downloaded it, and I checked it out.

5    Q    Are the -- are the presentations made at the

6  CHI Conference videotaped?

7    A    The presentations of -- they're sometimes

8  videotaped.  I don't think they're necessarily all

9  videotaped.  I've seen them being videotaped on

10 occasion.

11   Q    Do you know whether Dr. Peterson's

12 presentation was videotaped?

13       MR. MONACH:  Object to the form.

14       THE WITNESS:  That particular presentation at

15 the conference?

16       MR. JOHNSON:  Yeah.

17       THE WITNESS:  I do not know either way.

18       MR. JOHNSON:  Q.  Do you know whether he made

19 the presentation or was it somebody else?  Do you

20 remember?

21   A    I can't tell, as I can't remember whether I

22 attended the presentation or not.

23   Q    Okay.  So if you can, let me ask you to hand

24 it back to -- to Henry, and I just want to ask you a

25 few questions about some of the -- some of the -- the

Confidential Attorneys' Eyes Only Outside Counsel

Page 278

1    features of LaunchTiles.

2         So -- well -- and you can -- yeah.  You can

3    just -- I just want to make sure we can see it, as the

4    glare from the light is pretty bad.

5         So there -- there -- there -- in the example

6    that we've -- we've pulled up in front of you, which

7    has a 2x2 grid, is the -- is the LaunchTiles example

8    that you see there that's running on the iPAQ device a

9    computer-implemented method?

10        I'm just -- I'm just gonna go through the

11   claims of the '381 patent.

12   A    Okay.  Let's keep it in front of me.

13   Q    I'm not trying to trick you or anything.  I

14   just wanna -- I just -- I'm gonna follow along, so if

15   you want to follow along, that's fine.

16        So the question is:  In the 2x2 grid that --

17   that we have in LaunchTiles in front of you, does the

18   -- running on the iPAQ device, does that perform on a

19   computer-implemented method?

20        MR. MONACH:  Object to the form of the

21   question.  I'll object to this whole line of

22   questioning as calling for a legal conclusion; asking

23   the witness to form an -- a new opinion on a topic he

24   has not opined upon at the deposition with incomplete

25   information or opportunity to examine the device of a

Confidential Attorneys' Eyes Only Outside Counsel

Page 279

1   product, but you can answer.

2        MR. JOHNSON:  You can have a running

3   objection on that, just to try and cut though this.

4        THE WITNESS:  So I haven't examined this in

5   any great detail, but just looking at this right now,

6   it's -- certainly is an application that's running on

7   a computer-implemented -- or a computer -- so it is a

8   computer-implemented method.

9        MR. JOHNSON:  Okay.

10   Q   And does LaunchTiles running on iPAQ, does

11   that meet the limitation of a device with a

12   touchscreen display?

13        MR. MONACH:  Same objection.

14        THE WITNESS:  It's not clear, to me, this is

15   a touchscreen display.  I tried touching it a minute

16   ago, like when I was playing with it, and it didn't

17   react to me, but the -- the pen seems to do the job.

18        Okay, so now it does react, so maybe I was

19   mistaken.  Given what he just did, it appears to react

20   to touches, so, sure, it would be a device with a

21   touchscreen display.

22        MR. JOHNSON:  Okay.

23   Q   So in the -- in the 2x2 grid that we see

24   there running on the iPAQ, does that meet the

25   limitation of displaying a first portion of an

Confidential Attorneys' Eyes Only Outside Counsel

Page 280

1    electronic document?

2         MR. MONACH:  Same objection; lack of

3    foundation; incomplete hypothetical.

4         THE WITNESS:  So I would have to study this

5    in detail before answering that question, because I

6    need to understand the context of the content being

7    shown on the -- on the display as to what constitutes

8    an electronic document there, whether it's all four

9    tiles is one document or a single tile is a document.

10   I cannot make that determination, just looking at this

11   on the fly.

12        MR. JOHNSON:  Q.  So if the -- in this

13   example, assume the 2x2 is an electronic document.

14      A   So you're representing to me that you want me

15   to consider --

16      Q   I want you to consider the 2x2 is an

17   electronic document?

18      A   So just to clarify it, does that mean the --

19   the whole thing is one document.  Is that what you're

20   saying to me?

21      Q   Right.  Right, the 2x2.

22          And so, then, when --

23      A   So that's your representation.  I'm not

24   necessarily agreeing with that.

25      Q   I'm just -- yeah, right.

Confidential Attorneys' Eyes Only Outside Counsel

Page 281

1          And so, then, displaying a first portion of

2     an electronic document would mean that we scroll

3     slightly to the left.

4          Would you agree, just as we saw in the

5     infringement case, that that's displaying a first

6     portion of an electronic document?

7          MR. MONACH:  Same objection.

8          THE WITNESS:  So, again, to say, you know, I

9     haven't studied this in detail, in your representation

10    the -- the four tiles, as a whole, would be the

11    entire -- would be the electronic document, it would

12    be a first portion.  I would note that as you're -- as

13    it's moving there, the -- the electronic document is

14    translated.  However, that blue thing in the middle is

15    not moving, so I don't know if you intended the blue

16    thing, the blue circle in the middle, to be part of

17    the electronic document or not, but that -- that's

18    certainly not moving.  That's remaining stationary,

19    and some other representation of a so-called

20    underneath is moving, so it doesn't exactly seem to

21    match up in my -- in my current very quick view of

22    this, relative to the claims.

23         MR. JOHNSON:  Q.  But scrolling to the left,

24    that displays a first portion of the electronic

25    document, which is the 2x2 grid; right?

Confidential Attorneys' Eyes Only Outside Counsel

Page 282

1        MR. MONACH:  Same objection.

2        THE WITNESS:  You mean, before you scrolled

3    or after you scrolled?

4        MR. JOHNSON:  Q.  I mean, after I've

5    scrolled.

6     A    So after you made that little movement?

7     Q    Right.

8     A    Okay.

9     Q    That displays a first portion of an

10   electronic document; doesn't it?

11       MR. MONACH:  Same objection and assumes facts

12   not in evidence.

13       THE WITNESS:  If you, as you represented

14   earlier, before he scrolled -- if you don't mind going

15   back to before you scrolled, I believe, if I

16   understand you correctly, you represented to me that

17   you wanted me to consider the -- this -- all this

18   content, the four tiles with whatever decorations were

19   around it, the entirety, to be an electronic document.

20       MR. JOHNSON:  That's correct.

21       THE WITNESS:  That's -- that's my

22   understanding --

23       MR. JOHNSON:  That's right.

24       THE WITNESS:  -- that you represented to me.

25   I don't necessarily agree with that, because I haven't

Confidential Attorneys' Eyes Only Outside Counsel

Page 283

1  studied this to determine what would constitute an

2  electronic document and what would not, but given that

3  assumption, the hypothetical assumption, if that's an

4  electronic document, and now you are -- I believe he

5  scrolled or --

6          MR. JOHNSON:  Scrolled it slightly to the

7  left.

8          THE WITNESS:  -- moved it, I would say that

9  parts of the electronic document have moved, but other

10  parts have not moved.  So the blue thing that you just

11  represented to me was part of the electronic document

12  hasn't moved, so that hasn't translated at all.

13         MR. JOHNSON:  Q.  Does it need to move in

14  order to meet the elements of the claim?

15         MR. MONACH:  Objection for the reasons

16  previously stated; vague and ambiguous.

17         THE WITNESS:  So I haven't studied this in

18  detail.  Just very quickly reading the claims, it says

19  in response to detecting the movement.  I'm reading

20  Claim Element 3 here, which I --

21         MR. JOHNSON:  Q.  Yeah, I'm not there yet.

22     A    Okay.  So where are you?

23     Q    Displaying a first portion of an electronic

24  document.

25     A    Okay.

Confidential Attorneys' Eyes Only Outside Counsel

Page 284

1    Q   All he's done is moved it slightly to the

2  left.

3    A   Okay.  I thought you said the first portion

4  was the -- the earlier, the electronic document before

5  he moved it.

6    Q   Let's -- let's start over --

7    A   Okay.

8    Q   -- okay?

9        I want you to assume for me that the

10 electronic document is the 2x2 grid, the four tiles.

11   A   All that content?

12   Q   Right.

13   A   Including the decorations?

14   Q   That's fine.

15   A   Okay.

16   Q   Yeah, okay.

17       By the way, does that meet your definition of

18 an electronic document, namely -- strike that.

19       Does that meet your definition of an

20 electronic document for the purposes of the '381

21 claim?

22       MR. MONACH:  Objection; calling for a legal

23 conclusion; in -- incomplete hypothetical; asking him

24 to make a new opinion without adequate information.

25       THE WITNESS:  Done?

Confidential Attorneys' Eyes Only Outside Counsel

Page 285

1         So as I stated earlier, I haven't studied

2    this in detail enough in matching it up with the

3    claims, so your representation is you wanted me to

4    consider all four tiles as one doc -- in a -- in its

5    combination, as an entirety, as one document.

6         That might be an electronic document

7    vis-à-vis the claims.  It might not be.  I would have

8    to study that in detail --

9         MR. JOHNSON:  Well --

10        THE WITNESS:  -- relative to the context of

11   the application.  I have not done that detailed

12   analysis yet.  So it may be that only each -- each

13   tile is an electronic document in this application.  I

14   don't know.

15        MR. JOHNSON:  Q.  Well, it's visually

16   represented on screen with a defined set of

17   boundaries, right, those 2x2 tiles?

18        MR. MONACH:  Object to the form of the

19   question; assumes facts not in evidence; lack of

20   foundation.

21        THE WITNESS:  As I said, you -- you're

22   representing to me that you wanted me to consider

23   that.  So if you considered those four tiles as one

24   entirety with the defined boundaries, that could be

25   an --

Confidential Attorneys' Eyes Only Outside Counsel

Page 286

1        MR. JOHNSON:  Sir --

2        THE WITNESS:  -- electronic document in the

3   con- -- but I have not studied this application in

4   detail enough to determine what the contact of use of

5   this application is.  Maybe in this application it

6   might be considering each of these tiles as a separate

7   electronic document.  I do not know that.

8        MR. JOHNSON:  Q.  I'm asking you, does the

9   2x2 tiles that we see currently on the screen, does

10  that meet your definition of "electronic document," as

11  that term is used in the '381 patent?

12       MR. MONACH:  Objection; lack of foundation;

13  incomplete hypothetical; asking the witness to draw a

14  legal conclusion and a new opinion for the first time

15  at the deposition with inadequate information.

16       THE WITNESS:  And as I believe I already

17  answered, it depends on what the context of use is.

18       So if -- if, indeed, the application

19  considers those four things as one entity and is --

20  has defined boundaries, then that might meet the

21  electronic document definition, as used in the claims,

22  but it -- it might not.

23       It might -- it might be that each of those --

24  each of these tiles or quadrants might be a separate

25  electronic document.  I would have to study this in

Confidential Attorneys' Eyes Only Outside Counsel

Page 287

1   the context of use of this -- of these pieces of tiles

2   in this application to determine that with any

3   certainty.

4           MR. JOHNSON:  Q.  So you don't know right

5   now, sitting here?

6      A   I cannot give you a definitive answer.  It

7   could be an electronic document, depending on the

8   context of use.

9      Q   So when -- when he slides it slightly to the

10  left, does that display a first portion of an

11  electronic document if you assume that that 2x2 grid

12  is an electronic document?

13          MR. MONACH:  Same objection.

14          THE WITNESS:  So if we make that assumption

15  that that 2x2 grid in its entirety is an electronic

16  document and after he slid it, that could be a first

17  portion.

18          Now, I would still note that when he moved

19  it, the -- if the electronic document was the

20  entirety, including that blue circle in the middle,

21  when he moved it, the blue circle did not move --

22     Q   Are --

23     A   -- so not all -- let me finish, please.

24          The -- the blue circle did not move, so the

25  entirety of the document --

Confidential Attorneys' Eyes Only Outside Counsel

Page 288

1       Q    But that --

2       A    -- in that example.

3       Q    -- that's irrelevant for the claims; isn't

4  it?

5            MR. MONACH:  Objection; same objection as

6  previously stated; asking for a legal conclusion with

7  incomplete hypothetical.

8            THE WITNESS:  So I have not made that

9  determination.  I would have to study that.  I have

10  not considered the relevance of whether portions of

11  the document moved together or not, whether that is

12  relevant to the -- to the elements of the claim, so I

13  would reserve a detailed opinion on that until I've

14  had a chance to study --

15      Q    I'm asking you for your opinion now.

16           Can you tell me if the location of the blue

17  circle on this is relevant to any portions of the

18  claim limitations?

19           MR. MONACH:  Same objections as previously

20  stated.  Now it's been asked and answered.

21           THE WITNESS:  So, as I said, I -- I cannot

22  tell you right now, without studying this in detail,

23  whether that blue thing, blue circle in the middle,

24  whether that moves with the document or not.  Whether

25  that has relevance to this, I would have to study that

Confidential Attorneys' Eyes Only Outside Counsel

Page 289

1    in detail, and I cannot answer that off the cuff now.

2         MR. JOHNSON:  Q.  Does LaunchTiles, with this

3    2x2 grid operated on an iPAQ, detect a movement of an

4    object on or near the touchscreen display?

5         A   Yes, it does.

6         Q   Okay.

7         A   He -- he showed me with a finger it does

8    that, and the pen is doing that, as well.

9         Q   So the -- an object can be either a finger or

10   a pen or something else; right?

11        A   Yes, it -- it could be any -- some object,

12   but it has to be on a touchscreen display.

13        Q   The -- when he now scrolls back to the right,

14   does --

15        A   He's bouncing around a little bit.  So you

16   moved to the left, and then now you've come back to

17   this.

18        Q   Moved to the right, yeah.

19        A   All right.

20        Q   So does the 2x2 LaunchTiles grid operating on

21   the iPAQ describe the next limitation in the claims,

22   which is numbered as three?

23        A   So this one's saying in response to detecting

24   the movement translating electronic document displayed

25   in the touchscreen in the first direction to display

Confidential Attorneys' Eyes Only Outside Counsel

Page 290

1    the second portion?

2           MR. MONACH:  Same objection.

3           MR. JOHNSON:  Correct.

4           THE WITNESS:  So you want me to assume the

5    first portion was after he had moved to the left, and

6    now you move it back, and you're saying that's the

7    second portion of the document?

8           MR. JOHNSON:  Right.

9           THE WITNESS:  With -- with the same caveats I

10   said earlier about the blue thing moving and whether

11   that's part of the document or not, I'll repeat that

12   as part of my current answer, and, again, I haven't

13   had a chance to explore this in great detail, but

14   given those, the qualifications, I would say it

15   appears to be -- it could be meeting that claim --

16   claim element.

17          MR. JOHNSON:  Q.  And when the device

18   continues scrolling to the right, beyond the edge,

19   does it meet the fourth limitation of Claim 1 of

20   the '381 patent?

21          MR. MONACH:  Same objections as previously

22   stated, and now the question assumes facts not in

23   evidence, as well.

24          THE WITNESS:  And you mean the fourth

25   limitation that I've labeled here as four; right?

Confidential Attorneys' Eyes Only Outside Counsel

Page 291

1          MR. JOHNSON:  Right.  We're gonna mark your

2     copy of the patent as Exhibit 115.

3          THE WITNESS:  Sure.  I think it's already

4     110, though.

5          MR. JOHNSON:  Okay.  Even better.

6          THE WITNESS:  It's 110?

7          MR. JOHNSON:  No, it's actually --

8          THE WITNESS:  Oh, I'm sorry.  I'm sorry.  I

9     made a mistake.

10          MR. JOHNSON:  Let's mark, as Exhibit 115, a

11     copy of your patent with the limitations numbered.

12          (Document marked Balakrishnan Exhibit 115

13           for identification.)

14          THE WITNESS:  Okay.  So we'll just go with

15     what I've written down here, okay.

16          MR. JOHNSON:  Q.  So, again, the question is:

17     Does the movement that Mr. Lien just did meet the

18     fourth limitation of the claim?

19          MR. MONACH:  Same objection as previously

20     stated.

21          THE WITNESS:  Again, with the same

22     qualifications about the blue circle in the middle not

23     moving, and if that was part of the document, then it

24     doesn't move appropriately.  And, again, with the same

25     qualifications I made earlier, that I haven't had a

Confidential Attorneys' Eyes Only Outside Counsel

Page 292

1  chance to look at this in detail.  Just sitting here

2  right now, an off-the-cuff view of this, I would say

3  it appears to meet -- meet the fourth limitation.

4       MR. JOHNSON:  Okay.

5   Q   Does LaunchTiles in the 2x2 grid operating on

6  the iPAQ meet the fifth limitation of Claim 1?

7       MR. MONACH:  Same objection as previously

8  stated; assumes facts not in evidence, as well.

9       THE WITNESS:  Can you do that again, please?

10      Again, given -- well, something else

11 happened.  So, again, given the qualifications I did

12 earlier -- I said earlier about the circle in the

13 middle, the blue circle, and also the fact that I

14 haven't looked at this in any detail, in this quick

15 view of this -- of this application running here, I

16 would say it appears to meet the -- the fifth element.

17      MR. JOHNSON:  Q.  Does it meet the sixth

18 element of Claim 1 of the '381 patent?

19      MR. MONACH:  Same objection.

20      THE WITNESS:  Can you show me the first

21 portion again?

22      Okay.  Now the second portion.  Third

23 portion.

24      I would say, in addition to the

25 qualifications I've given earlier, that it doesn't

Confidential Attorneys' Eyes Only Outside Counsel

Page 293

1   necessarily meet this sixth element, because the third

2   portion here that he's showing me, it's bouncing

3   around a little bit, but the size of that appears to

4   be -- it could be the same as the first portion that

5   he showed me earlier, because the first portion was

6   translated off to the left-hand side with a border on

7   this side.  Now he's on this side, with a similar

8   border on the other side.  So it -- it may be the same

9   size, that third portion may be the same size as the

10  first portion.

11        MR. JOHNSON:  Q.  But he could -- he could do

12  it in a way where the third portion is smaller than

13  the first portion; right?

14        MR. MONACH:  Same objection.

15        MR. JOHNSON:  Q.  And meet that -- meets the

16  sixth claim limitation; right?

17     A   Well, maybe -- maybe he can show me that.

18     Q   Sure.

19     A   Show me your first portion.  Let's see your

20  first portion.  Okay.

21        Second portion.  Okay.  Third portion.  It's

22  very hard to tell.  It's bouncing around.  I'd have to

23  measure it.  It could be.  It -- it may not be.  It's

24  clearly smaller necessarily, because the other one is

25  also not full screen.  It moved off to the other

Confidential Attorneys' Eyes Only Outside Counsel

Page 294

1   side --

2        MR. JOHNSON:  And can you do --

3        THE WITNESS:  -- so there was --

4        MR. JOHNSON:  -- it again that's more

5   pronounced.

6     Q   So let's -- let's look at the first, second,

7   third portions again.

8     A   Okay.  That's your first portion.  So second

9   portion is in the center.

10       It appears, in this case, he's moved it a bit

11  more, and it --

12       MR. MONACH:  Same objection.

13       THE WITNESS:  -- it potentially could --

14  could infringe -- sorry -- it could not infringe --

15       MR. JOHNSON:  Meet the limitation.

16       THE WITNESS:  -- meet the limitation of

17  Claim 6, again with the qualifications that I -- I

18  just went through with the circle in the middle and

19  the fact that I haven't studied this in any great

20  detail.

21       MR. JOHNSON:  Q.  It would meet the sixth

22  limitation of Claim 1; right?

23       MR. MONACH:  Same objection; asked and

24  answered.

25       MR. JOHNSON:  Q.  You said Claim 6, and I

Confidential Attorneys' Eyes Only Outside Counsel

1   think you misspoke.

2       A   I meant to say the sixth limitation.

3       Q   Okay.

4       A   I'm sorry.

5       Q   And when he lifts the stylus or his finger,

6   does it meet the seventh limitation of Claim 1?

7           MR. MONACH:  Same objection.

8           THE WITNESS:  In this case, it's back to the

9   original document, which was, and I would say, to go

10  back, when you -- when you displayed the first portion

11  of the electronic document, that already included a

12  movement, which the claims doesn't talk about.

13          So you already had a movement there.  Given

14  that, and given all the caveats -- sorry -- the

15  qualifications that I have made with regards to

16  this -- this demonstration, the circle not moving, the

17  fact that I have not looked at this in any great

18  detail, it -- it appears that it could meet that --

19  that -- that -- sorry -- element 7 of Claim 1, again,

20  with the qualification again that -- that the first

21  portion of this case already included a movement,

22  which this -- this claim doesn't appear to talk about.

23          MR. JOHNSON:  Q.  Well, the -- the first

24  portion in your infringement reads "also included the

25  zoom-in movement"; right?

Confidential Attorneys' Eyes Only Outside Counsel

Page 296

1    MR. MONACH:  Objection; misstates the prior

2  testimony.

3    THE WITNESS:  I didn't talk about zooming at

4  all.

5    MR. JOHNSON:  But it included it.  I know you

6  didn't talk about it.

7    Q   But it included it; right?

8    MR. MONACH:  Objection; misstates the prior

9  testimony; vague and ambiguous.

10    THE WITNESS:  No, the zoom happened, and then

11  I'm -- I've -- I've got the document up there --

12    MR. JOHNSON:  Well, I know the --

13    THE WITNESS:  -- and I'm not holding my

14  finger down in a zoomed mode waiting for that -- the

15  next movement to appear.  I've zoomed it in.  I could

16  leave the device.  Start it up again.  It's already

17  zoomed in, and then I start implementing the claims of

18  the patent.

19    MR. JOHNSON:  But that's my point.

20    Q   You've already zoomed in on it for the

21  infringement read; right?

22    MR. MONACH:  Objection; misstates the prior

23  testimony, with respect to various portions of his

24  prior testimony.

25    MR. JOHNSON:  I'm sure you have it.  It's on

Confidential Attorneys' Eyes Only Outside Counsel

Page 297

1    the videotape.

2         THE WITNESS:  In the gallery application, a

3    zooming occurred way before the elements of the claim

4    were started out.  In the contacts list application,

5    there was no zooming happening.

6         MR. JOHNSON:  Q.  Way -- way before?

7    Where -- where are we getting "way before" from?

8         A   Before I started going through the claims --

9         Q   Okay.  Does --

10        A   -- as I said before; whereas, here, he -- he

11   has to keep his finger on that, on the first portion.

12   In other words, it would bounce back into the center

13   of the screen.

14        Q   The fact that he kept his finger or the

15   stylus on the device, does that -- is that relevant to

16   any of the claim language we just looked at?  Same

17   objection as previously stated to the whole line of

18   questioning here.

19        A   I don't know.  It might be.  I haven't -- as

20   I said, multiple times with regard to this

21   application, I have not studied it in detail, and --

22   and I'm giving an off-the-cuff analysis here looking

23   at a live demo, and I have not had the opportunity to

24   opine on this in any detail.

25        MR. JOHNSON:  Yeah.

Confidential Attorneys' Eyes Only Outside Counsel

Page 298

1    THE WITNESS:  So it might be; it might not

2    be.  I don't know.

3    MR. JOHNSON:  Q.  Take a look at Claim 1 and

4    tell me, in your opinion, does the fact that he kept

5    his finger or the stylus on the screen avoid any

6    limitation of Claim 1?

7    MR. MONACH:  Objection; calling for a legal

8    conclusion; incomplete hypothetical; asking the

9    witness to form a new opinion based on inadequate time

10   to study.

11   THE WITNESS:  So as I just testified earlier,

12   the fact that he keeps his finger on there may or may

13   not impact Claim 1.  I have not had the time to study

14   that in detail and to consider that.  That's something

15   I'm being told right now on the fly, and I don't think

16   I can make an informed enough decision or opinion on

17   it just on the fly here.  So I'm gonna have to reserve

18   my answer to be a fully qualified opinion after I've

19   had a chance to consider that issue --

20   MR. JOHNSON:  I'm --

21   THE WITNESS: -- relative to these claims.

22   MR. JOHNSON:  You've read this patent several

23   times.

24   Q   I'm asking you to take a look at Claim 1 and

25   tell me, does the fact that he kept his finger or the

Confidential Attorneys' Eyes Only Outside Counsel

Page 299

1  stylus on the screen avoid infringement or invalidity

2  of this claim, and if so, tell me what the language is

3  that you're relying on.

4      MR. MONACH:  Same objection; now it's more

5  vague and compound; asked and answered.

6      THE WITNESS:  So I -- I'm going to give you

7  the same answer I just gave.  This is a new -- a new

8  element that is being shown to me for the first time

9  here.  I haven't had time to study this, and I don't

10  think I can give you a detailed opinion on whether or

11  not it might infringe -- sorry -- it might -- not

12  infringe, it might meet the claim, it might not meet

13  the claim.  I have -- I need to have time to study

14  that, and I cannot do that on the fly.

15      MR. JOHNSON:  Take a look at Claim 2.

16   Q   Does the 2x2 grid in LaunchTile operating on

17  the iPAQ meet the limitation described in Claim 2?

18      MR. MONACH:  Same objection as previously

19  stated with the questions about 1; lacking in

20  foundation, given his prior testimony about Claim 1.

21      MR. JOHNSON:  Counsel, I really suggest you

22  just keep a running objection, but you're really

23  interfering with the examination, at this point.

24      THE WITNESS:  So with regards to Claim 2, I'm

25  looking at this again, my qualifications of -- of what

Page 300

1    is the electronic document here, from my earlier

2    answers, it's not clear that -- whether that blue

3    circle in the middle is part of the document or not,

4    or, again, I'm looking at this on the flight here,

5    haven't had the time to study it.

6         It is -- I haven't had time to determine if

7    the magnification changes, as he moves it around or

8    not.  It might be.  It might not be.

9         At, you know, first glance, it looks like it

10   hasn't changed, but I haven't had time to -- to study

11   this in detail, so I cannot give a definitive answer

12   as to whether the magnification of the electronic

13   document, to the extent that's even an electronic

14   document in this application, remains the same.

15         MR. JOHNSON:  Okay.  Does -- what's -- what's

16   the exhibit number on the back of that?

17         MR. LIEN:  114.

18         MR. JOHNSON:  Okay.

19   Q   Does Exhibit 114 meet the limitations of

20   Claim 3?

21         MR. MONACH:  Same objection as stated in

22   response to the previous question.

23         THE WITNESS:  To the extent that -- my

24   understanding is Claim 3 is a dependent claim on

25   Claim 1, so to the extent that Claim 1 is met, which

Confidential Attorneys' Eyes Only Outside Counsel

Page 301

1    I'm not agreeing whether it does or not, based on my

2    earlier testimony.  That said, the -- the portion of

3    the Claim 3, which says the movement of the objects on

4    a touchscreen display, that would be met, yes.

5           MR. JOHNSON:  Q.  And the limitation of

6    Claim 4 would also be met; right?

7       A   With regards to whether the object being a

8    finger, if you can do that again, just so I can see

9    it.

10          Yes, it appears that a finger would affect

11   that kind of movement.

12      Q   And does Exhibit 114 meet the limitations of

13   Claim 5?

14          MR. MONACH:  Same objection.

15          THE WITNESS:  When you say "Exhibit 114," you

16   mean the device with the application running on it?

17          MR. JOHNSON:  That's correct.

18          THE WITNESS:  Okay.

19          Again, given the -- the same qualifications

20   I've given with my earlier answers with regards to

21   whether it meets Claim 1, and Claim 5 is a dependent

22   claim in Claim 1.

23          Given those qualifications, which I'd like to

24   incorporate in this current answer, I would say, given

25   those qualifications, yes, his first direction is one

Confidential Attorneys' Eyes Only Outside Counsel

1   of a vertical/horizontal or diagonal, so it would meet

2   -- would meet the limitations of Claim 5.

3          MR. JOHNSON:  Q.  Does it meet the

4   limitations of Claim 7?

5          MR. MONACH:  Same objection.

6          THE WITNESS:  I don't think I can answer that

7   without knowing what the content of that -- of

8   those -- of that document is.  It's not clear to me

9   whether that's a collection of lines of text, whether

10  it's an image, like you said JPEG or something along

11  those lines --

12         MR. JOHNSON:  Is --

13         THE WITNESS:  -- or a collection of images.

14  I cannot answer that without exploring the -- that

15  document in much greater detail.

16         MR. JOHNSON:  Q.  Is it -- is it a digital

17  image?

18         MR. MONACH:  Objection; same objection to the

19  reasons previously stated; asked and answered.

20         THE WITNESS:  So as I just said, I cannot

21  determine if it's a digital image.  It may be an

22  image.  It may be several images concatenated

23  together.  It may be some web pages.  It may be lines

24  of text.  I -- I cannot make that determination just

25  from a quick look at it.

Confidential Attorneys' Eyes Only Outside Counsel

Page 303

1          MR. JOHNSON:   Q.   So is a web page not an

2     electronic document?

3          MR. MONACH:   Same objection; vague and

4     ambiguous.

5          THE WITNESS:   So Claim 7 says the electronic

6     document is a digital image, so it's -- it's trying

7     to -- my understanding is it's trying to give a more

8     specific instance of what an electronic document is,

9     in that -- in that example, in that claim.

10         MR. JOHNSON:   Right.

11    Q    Using your -- what is the -- what is the -- I

12    already asked you this.   I mean, using your

13    definition -- strike that.

14         Using the definition of a person of ordinary

15    skill in the art would understand a digital image to

16    mean, does Exhibit 114 meet the limitations of

17    Claim 7?

18         MR. MONACH:   Same objections as previously

19    stated.

20         THE WITNESS:   And I think I've already

21    answered that.

22         I -- without knowing more information about

23    what that -- those four tiles are that you have

24    represented to be the electronic document, is that a

25    single image?   Is it multiple images?   Is it some

Confidential Attorneys' Eyes Only Outside Counsel

Page 304

1    text?

2         MR. JOHNSON:  Well, take a look --

3         THE WITNESS:  I can't tell from -- this could

4    be four images that are concatenated together to form

5    one document.

6         MR. JOHNSON:  Q.  So would that not meet the

7    limitation?  If it's a concatenated series of images,

8    does that avoid Claim 7?

9         MR. MONACH:  Same objection.

10        THE WITNESS:  I don't know.  I haven't

11   considered that scenario.  It says here the electronic

12   document is a digital image.  It doesn't talk about a

13   concatenated set of images.

14        MR. JOHNSON:  Okay.

15        THE WITNESS:  And so I would have to study

16   that scenario in detail before answering that

17   question.

18        MR. JOHNSON:  Q.  Does a concatenated series

19   of images satisfy the definition of a digital image as

20   it's used in the '381 patent?

21        MR. MONACH:  Same objection; asked and

22   answered.

23        THE WITNESS:  I would say, again, to my --

24   similar answer to what I just gave, it -- it would

25   depend on the application.  If the application

Page 305

1  considered that -- sorry -- I think you asked whether

2  it's a digital image.

3         I would say a concatenation would be a series

4  of a bunch of digital images combined together.  Now,

5  if that combination is treated by the application as a

6  single image, then maybe it is.  It would depend on

7  the context.  So I do not know enough about the

8  context of this application and how it's treating any

9  potential concatenation of images to answer that

10 question in -- in -- with any certainty, at this

11 point.

12       MR. JOHNSON:  I heard you earlier say that

13 the claim language of the '381 patent is simple and

14 straightforward.

15    Q  So are you telling me that looking at this

16 screen that we see here in Exhibit 114, and what we

17 see on it, you can't tell me whether that is a digital

18 image?

19       MR. MONACH:  Object to the form of the

20 question.

21       THE WITNESS:  That's not what I said.  I said

22 I can't tell that's one digital image or four digital

23 images concatenated together, so it has nothing to do

24 with whether the -- the language.  The claim is

25 straightforward.  The claim states "a digital image."

Confidential Attorneys' Eyes Only Outside Counsel

Page 306

1  It doesn't talk about concatenation of digital images

2  or combination of digital images, which this may or

3  may not be.  I'm not able to tell that on the

4  application.  Nothing to do with the language of the

5  patent.

6        MR. JOHNSON:  Q.  Does Exhibit 114 meet the

7  limitations of Claim 9?

8        MR. MONACH:  Same objection.

9        THE WITNESS:  To the extent that if you say

10 the whole of four images can constitute the electronic

11 document, I would say, given this particular set of

12 content there, there appears to be a list of -- if you

13 don't mind, phone list and an inbox, which has a list

14 of items there.

15        So that --

16        MR. JOHNSON:  Zoom in.

17        THE WITNESS:  -- the electronic document

18 includes a list of items, which is what Claim 9 says.

19 It doesn't necessarily mean the whole document is a

20 list.

21        MR. JOHNSON:  Q.  Does it meet the

22 limitations of Claim 10?

23        MR. MONACH:  Same objection.

24        THE WITNESS:  Based on what he showed me

25 earlier, and given the qualifications I've already

Confidential Attorneys' Eyes Only Outside Counsel

Page 307

1    made regarding Claim 1, I would say it meets Claim 10,

2    yes.

3           MR. JOHNSON:  Q.  Does it meet the

4    limitations of Claim 13?

5           MR. MONACH:  Same objection as stated with

6    respect to the other claims.

7           THE WITNESS:  From what I've seen so far, it

8    appears that it would not meet Claim 13, because what

9    I've seen of the area beyond the edge of the document,

10   as shown to me by your colleague here, is not one of

11   these colors.  It seems to be a compound set of

12   content there.

13          MR. JOHNSON:  Q.  So the edge of the document

14   is -- is not black, gray, a solid color, or white?

15      A    No, he's --

16          MR. MONACH:  Object to the form of the

17   question.

18          THE WITNESS:  -- he's showing me all of this

19   other content that has a bunch of other extra stuff

20   there, beyond the -- beyond the edge of the document.

21          MR. JOHNSON:  Q.  So the fact that part of

22   the edge of the document, beyond the edge of the

23   document includes black, gray, solid color, or white

24   that -- that doesn't meet that limitation?

25          MR. MONACH:  Object to the form of the

Confidential Attorneys' Eyes Only Outside Counsel

1   question for the reasons previously stated, and also

2   now misstates the evidence.

3           THE WITNESS:  I think he's showing me the --

4   the area beyond the edge includes some other stuff

5   that is not just black, gray, solid color, or white.

6   It has all kinds of other colors there.

7           MR. JOHNSON:  Q.  But the -- the area beyond

8   the edge includes a solid color.  In this case, light

9   blue --

10      A   Do you mind if I --

11      Q   -- right, in the e-mail example?

12          MR. MONACH:  Same objection.

13          THE WITNESS:  It --

14          MR. MONACH:  Assumes facts not in evidence.

15          THE WITNESS:  To me, I'm looking at the area

16  beyond the edge.  It's -- the interactive area is way

17  beyond.  It has a vertical bar there, but then there's

18  also more stuff beyond it.  So it's not -- the whole

19  area is not one of those four things, as in Claim 13.

20          MR. JOHNSON:  Q.  Does Exhibit 114 meet the

21  limitations in Claim 14?

22          MR. MONACH:  Same objection as previously

23  stated to this line of questioning.

24          THE WITNESS:  And that's an even trickier

25  one, because I'd have to look very carefully at the

Confidential Attorneys' Eyes Only Outside Counsel

Page 309

1  content of this stuff that's bouncing around on the

2  edge there and -- to determine if that actually is.

3  So, for example, the bottom here -- whether -- whether

4  that content is actually different, I'd have to study

5  it carefully.  To the extent that it is different,

6  then I would say, yes, it meets it.  It would really

7  depend on what that content is.

8           MR. JOHNSON:  Q.  Does claim -- does

9  Exhibit 114 meet the limitations in Claim 16?

10          MR. MONACH:  Same objections.

11          THE WITNESS:  Can you do that first

12  direction, second direction, and lift it up again,

13  please.  If you don't mind, I'll look at it.  Whoops.

14          MR. LIEN:  Sorry.

15          THE WITNESS:  Or maybe I can play with it, if

16  you don't mind.  I'm having trouble looking at this

17  thing.  Yeah, okay.

18          Do that again.  It would appear to be, again,

19  with all the caveats of -- all of the qualifications

20  I've already made with regards to Claim 1, I would say

21  it appears to be, this particular example, there might

22  be an elastic connection there or elastic look to

23  that.

24          MR. JOHNSON:  Q.  Does Exhibit 114 meet the

25  claim limitations described in Claim 19 of the '381

Confidential Attorneys' Eyes Only Outside Counsel

Page 310

1    patent?

2         MR. MONACH:  Same objection as previously

3    stated.

4         THE WITNESS:  Again, the same qualifications

5    with regards to Claim 1 in whether this device meets

6    that or not.  To the extent that this is running a

7    computer program, like in the Samsung phones, it

8    clearly has one or more programs running, and then,

9    therefore, it would meet Claim 19, again given my

10   qualifications of Claim 1.

11        MR. JOHNSON:  Q.  And does Exhibit 114 meet

12   Claim 1?

13        MR. MONACH:  Same objection.

14        THE WITNESS:  And my, kind of, similar

15   answer, taking all my -- my qualifications with

16   regards to Claim 1, you would have to have some kind

17   of storage media, so it would meet Claim 20, with the

18   same set of qualifications for all of the different

19   elements.

20        MR. JOHNSON:  Okay.  Let me show you another

21   example --

22        THE WITNESS:  I also want to say, just for

23   the -- I'm sorry to interrupt you.

24        MR. JOHNSON:  He'll have the opportunity to

25   ask you a question.

Confidential Attorneys' Eyes Only Outside Counsel

1      MR. MONACH:  You can finish -- you can finish

2   your answer.  Go ahead.

3      MR. JOHNSON:  There's -- there's no question.

4      MR. MONACH:  There -- there was a question.

5   The witness was still speaking, and he's allowed to

6   speak, and if you want to move to strike it, you can

7   move to strike it, but he can -- he's free to go

8   ahead.

9      THE WITNESS:  I'll pass.

10      MR. JOHNSON:  Okay.

11   Q   The -- the -- I'd like for you now to assume

12   that the electronic document consists of a grid that's

13   actually 2x4 tiles.

14   A   I'm not seeing that here.  I'm seeing 2x2.

15   Q   So that's the four right there.

16   A   Right.

17   Q   Do you see what I'm talking about?

18   A   So I'm seeing four, and earlier he zoomed out

19   to some much larger number of tiles.

20   Q   It's the -- it should be 2x4.

21   A   So two --

22   Q   So two --

23   A   Okay.

24   Q   It's back to -- it's back to the -- the grid,

25   2x4.

Confidential Attorneys' Eyes Only Outside Counsel

Page 312

1          So he's --

2     A    You're talking about this grid?

3     Q    Yeah.

4     A    Okay.

5     Q    So there are two pages, so to speak.  It's

6    two --

7     A    So this --

8     Q    -- in the vertical direction and four in the

9    horizontal direction; okay?

10    A    The -- the document consists of these eight

11   tiles --

12    Q    Correct.

13    A    -- is your representation.

14    Q    Right.

15    A    Okay.

16         MR. MONACH:  Objection; assumes facts not in

17   evidence in addition to --

18         MR. JOHNSON:  Q.  So I'd like for you to --

19         MR. MONACH:  -- what's been previously

20   stated.

21         MR. JOHNSON:  Q.  I'd like for you to assume

22   that's the electronic document, the 2x4 tiles, and I'm

23   gonna have him run through again the -- the claim

24   language and see whether you agree with it or not,

25   okay?

Confidential Attorneys' Eyes Only Outside Counsel

Page 313

1    So assuming the -- the -- the electronic

2  document is 2x4 tiles, and if we start on the left

3  portion, I want you to assume for me that that's a

4  first portion of the electronic document; understand?

5    A  So these four tiles of the eight tiles is the

6  first portion.

7    Q  Right.

8    A  Okay.

9    MR. MONACH:  Same objection as --

10    MR. JOHNSON:  Then if --

11    MR. MONACH:  -- previously stated, and

12  further objection, assumes facts not in evidence.

13    MR. JOHNSON:  So we display a first portion

14  of an electronic document.  He's detected a movement

15  of an object on or near the touchscreen display.

16    Q  Now, the next limitation, which is Claim 3 --

17  sorry -- limitation No. 3 in Claim 1, when he scrolls

18  left, does that meet the third limitation in Claim 1?

19    MR. MONACH:  Same objection.

20    THE WITNESS:  So when he scrolled left there,

21  I would say, given your assumption that you've asked

22  me to take, I have not determined whether that's an

23  electronic document or not.

24    Given that hypothetical, he is moving to the

25  left, I would again, as I said earlier in the earlier

Confidential Attorneys' Eyes Only Outside Counsel

Page  314

1    round of answers and questions, the blue circle there

2    that appears to be part of the document initially is

3    not moving, so the translation of the document seems

4    to be partial in this case or when the blue stuff is

5    not moving in a -- and a lighter blue happened to move

6    instead.

7            Given those difficulties or qualifications to

8    the movement there, I would say, apart from that,

9    it -- it does appear to display a second portion that

10   is different from the first portion.

11           MR. JOHNSON:  Q.  And when he scrolls left

12   beyond the edge, does it meet the fourth limitation?

13           MR. MONACH:  Same objection, and now it

14   assumes facts not in evidence.

15           THE WITNESS:  I have not seen the edge of a

16   document being reached while translating.  So you told

17   me the document was the eight -- eight-item grid.

18           MR. JOHNSON:  Right.

19           THE WITNESS:  I have not seen the edge being

20   reached.

21           MR. JOHNSON:  Q.  Now the edge is reached;

22   right?

23           THE WITNESS:  Can you --

24           MR. MONACH:  Same objection.

25           THE WITNESS:  Can you show me that again?

Confidential Attorneys' Eyes Only Outside Counsel

Page 315

1   So you're talking about that edge is reached?

2   Which edge?  I've lost track of where we are on the

3   document.  They all look -- the tiles all look the

4   same.

5   MR. JOHNSON:  I was trying to keep him quiet,

6   so you weren't having two people ask you the

7   questions, but, okay.

8   MR. LIEN:  Reboot.

9   MR. JOHNSON:  Yeah.  Get the other one.  Let

10   me ask about the other one.

11   MR. LIEN:  It's good.

12   MR. JOHNSON:  Okay.  So let's -- let's go

13   back to what we were looking at.

14   Q   So assume for me that the -- the --

15   A   One of the problems I'm having here is you

16   tilt it over that way for the camera, and maybe we can

17   both sit in a different way so I can see this

18   properly.  Okay.  That's better for me.

19   MR. JOHNSON:  What if you go that way a

20   little bit, and then let him zoom in, and then --

21   MR. LIEN:  Okay.

22   THE WITNESS:  That's better, yes, thank you.

23   MR. JOHNSON:  Q.  You're the one that

24   matters.

25   A   But you need to get it on camera too; right?

Confidential Attorneys' Eyes Only Outside Counsel

Page 316

1        Okay.  So where are we now?  We -- is this
2  the first two tiles of the eight-tile document?
3     Q    Right.
4     A    So there's four more tiles, kind of, out
5  here.
6     Q    That's right.
7     A    That's your representation.  Okay, given your
8  representation --
9     Q    It's like we zoom --
10    A    -- now that's the first movement?
11    Q    Right.
12    A    Okay.
13         MR. MONACH:  Same objection.
14         THE WITNESS:  Okay.  Now --
15         MR. JOHNSON:  Q.  That's the second portion?
16    A    This is the second portion, okay.  And now
17  that's the edge that you're saying we reach?
18    Q    Right, that's the edge.
19    A    So that's the end of the eight tiles; right?
20    Q    That's right.
21    A    Okay.
22    Q    And now we're scrolling beyond the edge, and
23  then when he lifts the object, it bounces back.
24    A    Can I ask you to do that again please, right
25  from the start, if you don't mind.  Okay.  Right.

Confidential Attorneys' Eyes Only Outside Counsel

Page 317

1   Okay.  Yes.

2           MR. MONACH:  Same objections.

3           MR. JOHNSON:  So --

4           MR. MONACH:  Assumes facts not in evidence,

5   as well.

6           MR. JOHNSON:  Q.  Would you agree that

7   Exhibit 114 meets the limitations of Claim 1 of

8   the '381 patent?

9           MR. MONACH:  Same objection.

10          THE WITNESS:  All elements of the claim?

11          MR. JOHNSON:  Yeah, under the scenario that

12  we just showed you.

13          THE WITNESS:  So, again, back to my earlier

14  answers, first of all, I haven't had a chance to study

15  this, the representation you had of the eight -- eight

16  tiles being one document as a whole, that's your

17  representation.  Given that hypothetical, I would also

18  say, as I said earlier, the blue circle in the middle,

19  which you represented the whole thing was a document,

20  that does not appear to move when you -- when you

21  translate the document.

22          So, as a result, I would say, given those

23  qualifications, the -- the entirety of these claims

24  are not met.  But if you assume, if those things are

25  not present, if the blue thing wasn't there, and

Confidential Attorneys' Eyes Only Outside Counsel

Page 318

1   the -- or it moved along with it as a document, it --

2   it appears to meet the claims.

3           MR. JOHNSON:  Q.  Well, which limitation is

4   not met in Claim 1 because of the presence of the blue

5   dot?

6           MR. MONACH:  Same objection.

7           THE WITNESS:  So, for example, claim --

8   sorry -- element three of Claim 1, it says "In

9   response to detecting the movement translating the

10  electronic document."  If the blue dot is part of the

11  electronic document, as I believe I was made to

12  understand in the hypothetical, that would -- part of

13  the document would have to translate it as not -- it's

14  not moving, that blue dot remains stationary through

15  all the reactions -- sorry -- all the intersections

16  that your colleague just did.

17          So Claim 3 -- sorry -- element three of

18  Claim 1.  Element four, again, the -- it says, "While

19  translating the electronic document in the first

20  direction," also would not be met, if the blue thing

21  as part of the document is not being translated.

22          Again, element seven has the same problem,

23  translating the electronic document, the blue portion,

24  only a part of the document is moving.  The entire

25  thing is not moving.

Confidential Attorneys' Eyes Only Outside Counsel

Page 319

1          MR. JOHNSON:  Okay.

2      Q   And what if the electronic document is

3  defined as -- as what you see on the screen or the 2x4

4  tiles without the blue dot?

5          MR. MONACH:  Same objection.

6          MR. JOHNSON:  Q.  Does your analysis change?

7          MR. MONACH:  Same objection; vague and

8  ambiguous, as well.

9          THE WITNESS:  I would have to think carefully

10  about that.  I haven't considered that in detail.  So

11  on the fly here, it may or may not.  I -- I would have

12  to reserve that --

13          MR. JOHNSON:  Q.  You don't know?

14      A   -- that detailed analysis until I've had a

15  chance to look at that.

16      Q   Okay.  Okay.

17          If you could look at the subsequent claims

18  that we've looked at earlier, 2, 3, 4, 5, 7, 9, 10,

19  13, 14, 16, and just tell me whether those limitations

20  are met by the 2x4 grid, as the electronic document

21  with -- in Exhibit 114.

22          MR. MONACH:  Same objections.

23          THE WITNESS:  So with regard to Claim 2, let

24  me quickly look at this again, first portion, second

25  portion.  So Claim 2 was with regard to the

Confidential Attorneys' Eyes Only Outside Counsel

Page 320

1   magnification.  Again, similar to the same answer I

2   gave -- to the answer I gave earlier when you went

3   over to Claim 2, I would have to determine for sure

4   whether that was indeed of the same magnification, but

5   if it is, then it would be met.  Again, given all the

6   caveats that I -- sorry -- all of the qualifications

7   that I just made with regards to Claim 1 not being

8   met, and Claim 1 is incorporated in Claim 2.

9       Claim 3 is -- the movement is on the

10  touchscreen display, but since it's incorporated in

11  Claim 1, if Claim 1 has -- is not met, for the reasons

12  I just gave you, then it would not be met.  But if

13  Claim 1 is met, Claim 3 would be met.

14      Q    How about Claim 4?

15      A    Claim 4 --

16          MR. MONACH:  Same objection.

17          THE WITNESS:  -- is the same.  I have the

18  same answer as Claim 3, really.

19          If Claim 1 is met, which, as I've said

20  earlier, it may or may not be met, the object could be

21  a finger, and your colleague has demonstrated that.

22  So I think that would be met, if Claim 1 is met.

23          What is the next claim?  Five?

24          MR. JOHNSON:  Five.

25          THE WITNESS:  Again, as in my previous

Confidential Attorneys' Eyes Only Outside Counsel

Page 321

1    answers, Claim 5 is dependent on Claim 1, and given

2    all of the qualifications I've made with regards to

3    whether Claim 1 is met, if Claim 1 is met, then

4    Claim 5 would be met as the first direction, is one of

5    these three vertical, horizontal, or diagonal

6    directions.

7         MR. JOHNSON:  Q.  How about Claim 7?

8    A    Claim 7, I'm gonna give the same answer I

9    gave earlier when you went over this.  It's not clear

10   to me that -- whether that electronic document

11   consisting of, as you, yourself, said, 2x4 grid

12   of -- of images is whether that concatenation of

13   imagines is a digital image or not, or whether that's

14   eight different images or something else.  So I can't

15   say for sure until I've studied this in more detail.

16   Q    How about Claim 9?

17        MR. MONACH:  Same objection.

18        THE WITNESS:  Claim 9, I would have to look

19   at that very quickly again, just to see.  So this is

20   still part of the eight -- eight items, okay.

21        Claim 9, given the qualifications with

22   regards to Claim 1, and as I've said, Claim 1 may or

23   may not be met, depending on some of the issues there

24   that I've already discussed, and since Claim 9 is

25   dependent on Claim 1, if Claim 1 is met, then, in this

Confidential Attorneys' Eyes Only Outside Counsel

Page 322

1    example, if that is indeed the electronic document, it

2    appears that it has, at least in some -- some parts of

3    that document, has a list of documents that would be

4    met.

5            MR. JOHNSON:  Q.  How about Claim 10?

6            MR. MONACH:  Same objection.

7            THE WITNESS:  Claim 10, again, I would say it

8    depends on Claim 1, as is clear there, and given all

9    the qualifications I've made with regards to whether

10   Claim 1 is met, would apply here, and if Claim 1 is

11   met, there -- the second direction of movement could

12   be -- I mean, it's possible that it's often the first

13   direction.

14           MR. JOHNSON:  Q.  So it would be met?

15           MR. MONACH:  Same objection.

16           THE WITNESS:  It would be met if Claim 1 is

17   met with all my qualifications I've already discussed.

18           MR. JOHNSON:  Q.  How about Claim 13?

19           MR. MONACH:  Same objection.

20           THE WITNESS:  Claim 13, again, back to my

21   answer to the same question earlier with regards to

22   the smaller electronic document, I would say it

23   probably is not met, because the area beyond the edge

24   is -- seems to be much more compound than simply a

25   black, gray, solid color, or white, and also it

Confidential Attorneys' Eyes Only Outside Counsel

Page 323

1    comprehends Claim 1, so Claim 1, I would give it all

2    of the same qualifications I did earlier.

3         MR. JOHNSON:  Q.  So a compound color beyond

4    the edge of the document would not meet Claim 13?

5         MR. MONACH:  Same objection; vague.

6         THE WITNESS:  A compound set of visuals, like

7    I'm seeing there, I would say it does not meet

8    Claim 13, because here it says black, gray, a solid

9    color, which I would read to mean one color or not a

10   variety of different colors appearing at the same

11   time, or white.

12        MR. JOHNSON:  Okay.

13   Q   How about Claim 14?

14        MR. MONACH:  Same objection.

15        THE WITNESS:  To the extent that the area

16   beyond the edge is some other content that one

17   could -- could determine to be visually distinct, it

18   would be met if Claim 1 is met, which it's not clear,

19   given all of the qualifications I've already -- I've

20   already --

21        MR. JOHNSON:  Q.  How about --

22   A   -- discussed in this deposition.

23   Q   Sorry.

24        How about Claim 16?

25        MR. MONACH:  Same objection.

Confidential Attorneys' Eyes Only Outside Counsel

Page 324

1        THE WITNESS:  Can you do that for me again,

2     please.

3            So Claim 16, again, it depends on Claim 1.

4     So to the extent that Claim 1 is or isn't met would --

5     would impact Claim 16, but the portion of Claim 16

6     that talks about the elastically attached, that --

7     that appears to be demonstrated in this application.

8     As to whether the whole claim is met would depend on

9     Claim 1, as I've discussed.

10        MR. JOHNSON:  Q.  Are the limitations in

11     Claim 19 met by Exhibit 114 running LaunchTiles on the

12     iPAQ?

13        MR. MONACH:  Same objection.

14        THE WITNESS:  I haven't had a chance to study

15     this in great detail, but given that it -- given the

16     functionality I've seen here with the same set of

17     qualifications I've already done with Claim 1, where

18     the language is repeated, just the instructions and

19     the number of the -- the one or more programs stored

20     and executed, that would have to -- that would be met,

21     but the -- the other portions that correspond to a

22     language in Claim 1 may or may not be met, depending

23     on my -- depending on the qualifications I just talked

24     about.

25        MR. JOHNSON:  Q.  And how about Claim 20?

Confidential Attorneys' Eyes Only Outside Counsel

Page 325

1    Would that be met by Exhibit 114?

2          MR. MONACH:  Same objection.

3          THE WITNESS:  Claim 20, again, similar to my

4    answer for Claim 19, it has all the language of

5    Claim 1, and that would have the same qualifications

6    that I've already discussed, or the portion about the

7    instructions being stored in a computer storage

8    medium, I think that would have to -- that would be

9    present on that device.

10         MR. JOHNSON:  Okay.  We need to take a quick

11   break to change the videotape.

12         MR. AHN:  Could we get a total time, too?

13         Thanks.

14         THE VIDEOGRAPHER:  This is the end of Disk

15   No. 4, Volume I.

16         We are off the record at 6:15 p.m.

17         (Recess taken.)

18         THE VIDEOGRAPHER:  This is the beginning of

19   Disk No. 5, Volume I.

20         We are back on the record at 6:25 p.m.

21         You may proceed.

22         MR. JOHNSON:  Q.  So I'd like for you to go

23   to Exhibit 14, the LaunchTile application, and

24   particularly the e-mail application.  When you click

25   on that, you'll see a list of names right on the

Confidential Attorneys' Eyes Only Outside Counsel

Page 326

1  left-hand side, and I'd like for you to assume that

2  that's the electronic document similar to what we

3  looked at in the Samsung devices, and I'm gonna ask

4  you:  Based on what Henry is doing here with respect

5  to LaunchTiles -- just move it forward, so the glare's

6  not -- just tilt it.  Tilt it forward.

7          Does the e-mail application of LaunchTiles on

8  Exhibit 114 meet the limitations of Claim 1?

9          MR. MONACH:  Objection; calls for a legal

10  conclusion; asks the witness to come up with a new

11  opinion unrelated to his declaration at the

12  deposition; incomplete hypothetical; vague and

13  ambiguous.

14          MR. JOHNSON:  So I'll have -- Henry, if you

15  can go through the first portion, second portion,

16  third portion, fourth portion.

17          THE WITNESS:  So where are you now?  You seem

18  to just be moving.

19          MR. LIEN:  So this is third portion right

20  here.

21          THE WITNESS:  Can -- can you go back?

22          What do you mean by first portion, second

23  portion?

24          MR. LIEN:  Yeah, so first portion, second

25  portion, third portion, fourth portion.

Confidential Attorneys' Eyes Only Outside Counsel

Page 327

1       THE WITNESS:  Can you do that again, please?

2       MR. LIEN:  So first portion, second portion,

3  third portion, fourth portion.

4       THE WITNESS:  Some other thing happened.

5       MR. JOHNSON:  Do it once more.  Try and tilt

6  it forward, Henry, because the glare is --

7       MR. LIEN:  Okay.

8       MR. JOHNSON:  Yeah, there you go.  Much

9  better.

10       MR. LIEN:  So first portion, second portion,

11  third portion, fourth portion.

12       THE WITNESS:  Okay.  So to the extent that

13  I'm seeing this for the first time, I haven't seen

14  that application at all before, so I'm -- I'm giving

15  this opinion on the fly here, I haven't considered it,

16  and it's not a detailed thing I've considered, so I'm

17  looking here.  It appears to meet the

18  computer-implemented method preamble.

19       It appears, giving your representation, that

20  that's a list, and it displays the first portion.  It

21  meets the first element.  To the extent that it

22  detects a movement, it may meet the second element.

23       With the third element, it appears to meet

24  that.  The fourth element, I do not see that being

25  met, because I'm not seeing an edge of the electronic

Confidential Attorneys' Eyes Only Outside Counsel

1  document being met.

2       MR. JOHNSON:  Q.  Look at the -- look at the

3  bottom where there's spacing there.

4    A   So he's saying Kathryn Thompson is the last

5  one.

6       MR. JOHNSON:  Right.

7       THE WITNESS:  Can you keep moving up?  Can

8  you go down?

9       MR. LIEN:  Which way?

10       THE WITNESS:  Do you mind if I try this

11  myself, because I'm having trouble looking at this.

12       MR. JOHNSON:  That's fine.  Yeah.

13       THE WITNESS:  Okay.  First portion.

14       So I would say the -- in response to the edge

15  being -- so coming here -- in response to the edge of

16  the document being reached while translating the first

17  direction, it displays an area beyond the edge of

18  document, if the document is a list.  It displays a

19  third portion that's smaller, so that meets element

20  six, but when I release my -- release the pen and

21  my -- or my finger, I would assume the finger works

22  the same way, it doesn't appear to -- it does not

23  appear to translate in the second direction until the

24  area beyond the edge of the electronic document is no

25  longer displayed.

Confidential Attorneys' Eyes Only Outside Counsel

Page 329

1        So I'm not getting element seven in this.

2        MR. JOHNSON:  Q.  But -- so it -- it has

3    elements one through six, but you have an issue with

4    element seven not being present --

5        MR. MONACH:  Same objection.

6        MR. JOHNSON:  Q.  -- is that right?

7        MR. MONACH:  Same objection; misstates the

8    prior testimony.

9        MR. JOHNSON:  I'm -- I'm just trying to

10   understand.

11       THE WITNESS:  So based on my very quick

12   first-time view of this, haven't studied it in detail,

13   repeating all the things I just said about this, very

14   quickly here I'm not getting element seven.

15       MR. JOHNSON:  Okay.

16       THE WITNESS:  It appears to meet elements one

17   to six, but I'm not getting element seven.

18       MR. JOHNSON:  Q.  So I think you may be

19   scrolling too far beyond the list.  So if you go back

20   to the list, and you get to the bottom, and you scroll

21   up so it displays the portion beyond the edge, and

22   then you release it.

23     A    I'm not getting it.  I've got past Kathryn,

24   with just one pixel, and it's not --

25       MR. LIEN:  Can I?

Confidential Attorneys' Eyes Only Outside Counsel

Page 330

1          MR. JOHNSON:  Tilt it, Henry.  Yep.

2     Q    See that?

3     A    Keep going.

4     Q    Doesn't that meet claim limitation seven?

5          MR. MONACH:  Same -- same objection.

6          THE WITNESS:  I think I would have to study

7    that in detail.  It's not clear to me that I -- it

8    definitely meets the edge -- reaches the edge.  When I

9    know that I reached the edge because I've gone -- I've

10   already explored that list further, but just looking

11   at that and maybe there's something beyond that, I

12   don't know.  It's only when it goes much further that

13   it clearly tells me that I've reached the edge.  So,

14   again, I would caveat this by saying I have to study

15   this in detail --

16         MR. MONACH:  Sorry.

17         THE WITNESS:  -- before making that

18   determination.

19         MR. MONACH:  Sorry.

20         Mr. Videographer, are we at seven hours?  Two

21   minutes?  Okay.

22         MR. JOHNSON:  Okay.

23    Q    Can you tell me if this meets the limitations

24   of Claims 19 and 20?

25         MR. MONACH:  Same objection.

Confidential Attorneys' Eyes Only Outside Counsel

Page 331

1        THE WITNESS:  So to the extent that if it

2    meets the elements of Claim 1, which I've just

3    discussed it may not, if it didn't meet Claim 1, then

4    a lot of the language in Claim 19 is not met or the

5    portion that talks about one or more programs with

6    instructions in Claim 19, that, I think, would be met.

7        MR. JOHNSON:  Q.  And what about Claim 20?

8        MR. MONACH:  Same objection.

9        THE WITNESS:  Same kind of answer with

10   Claim 20.  To the extent that the elements of Claim 20

11   that regard -- relate to Claim 1, they may not be met,

12   as I've just discussed with Claim 1, but the portion

13   about a readable storage medium having stored their

14   instructions, which executed that portion, would be

15   met.

16        MR. JOHNSON:  Q.  Is the -- what we've seen

17   in Exhibit 114, LaunchTiles with the iPAQ, the best

18   piece of prior art you've seen for the '381 patent

19   claims?

20        MR. MONACH:  Object to the form of the

21   question.  Objection; asking the witness to form a

22   legal conclusion with an incomplete hypothetical;

23   asking him to come up with a new opinion on the fly.

24        THE WITNESS:  So I don't think I can answer

25   with any degree of certainty, as I've discussed

Confidential Attorneys' Eyes Only Outside Counsel

Page 332

1    repeatedly during this deposition, I have not studied

2    all of the prior art in any detail.  I have not done

3    an invalidity or validity analysis, so it is certainly

4    one piece of prior art that I'm seeing in detail

5    today.  Whether -- how that compares to other pieces

6    of prior art, I would have to do that analysis.

7         MR. JOHNSON:  Q.  Is that better than the

8    prior art that was cited during the reexamination?

9         MR. MONACH:  Same objection; assumes facts

10   not in evidence that it's prior art.

11        THE WITNESS:  I -- as I said earlier, I

12   haven't studied the -- the -- the prior art that was

13   cited during the reexam in detail to form a validity

14   or invalidity detailed opinion, so I cannot make that

15   comparison right now.

16        I would also say that it's not clear to me

17   that this -- this application shown to me today is

18   actual prior art.  I know the paper is prior art, the

19   CHI 2005 paper.  The application itself, I -- I don't

20   know whether that's prior art or whether it was

21   written subsequent to the date of the patent.

22        MR. JOHNSON:  Q.  Based on the --  the prior

23   art that you've looked at --

24        MR. MONACH:  We're at seven hours -- we're --

25   we're done.

Confidential Attorneys' Eyes Only Outside Counsel

Page 333

1        MR. JOHNSON:  Are you leaving at this point?

2        MR. MONACH:  We're -- you've had your seven

3    hours.  This -- this deposition is over.  You had lots

4    of time to ask him about his opinions.  You've spent

5    hours and hours doing it, seven hours, including

6    repetitive questioning.  We told you we're -- we've

7    told you in advance that these are seven-hour

8    depositions.  We haven't agreed to a longer time.

9        MR. JOHNSON:  So are you --

10       MR. MONACH:  The deposition is over.

11       MR. JOHNSON:  So you're not gonna let me ask

12   any more questions?

13       MR. MONACH:  Correct.

14       MR. JOHNSON:  Okay.  Well, we're gonna keep

15   the deposition open, and I can't think of any part of

16   the deposition that should be designated confidential.

17   You know, at the very outset, you designated this

18   confidential, and it's putting us at great prejudice

19   in doing so, and you know that, and so I ask that you

20   right now dedesignate the transcript confidential, and

21   if you want to take the time to designate portions of

22   it confidential between now and tomorrow morning,

23   that's fine, but, you know, our opposition is due, and

24   there shouldn't be hardly any part of this transcript

25   that's designated confidential.

Confidential Attorneys' Eyes Only Outside Counsel

1      MR. MONACH:  Well, I disagree that you're at

2   any prejudice.  The interim protective order says what

3   it says.  You chose to ask him about ITC proceedings

4   and other parties' proceedings, for example, and

5   there's no requirement on us to do it overnight.

6          I mean, you can use the transcript or not use

7   it, as you see fit.  I'm not saying we're going to

8   designate or dedesignate after your filing date or

9   before your filing date.  Take it under advisement.

10      MR. JOHNSON:  Well, when can I get the

11  transcript dedesignated from you?

12      MR. MONACH:  I don't know the answer to that

13  question.  I'm not gonna make a commitment to you on

14  the record here today.

15      MR. JOHNSON:  How about -- how about -- how

16  about within two days?

17      MR. MONACH:  I just told you I'm not gonna --

18  I'm not gonna negotiate about it or make a commitment

19  to you on the record here.

20      MR. JOHNSON:  Well, that's just completely

21  unacceptable, so we'll have to take it up as we see

22  fit.

23          Thank you.  The deposition is still open from

24  our standpoint, and we'll go from there.  Thank you.

25      MR. MONACH:  All right.  From our -- from our

Confidential Attorneys' Eyes Only Outside Counsel

Page 335

1    perspective, no surprise, I suspect, the deposition is

2    over.

3           THE VIDEOGRAPHER:  This is the end of today's

4    deposition.

5           We are off the record at 6:37 p.m.

6           The master disk will be held by TSG.

7           (WHEREUPON, the deposition ended at

8            6:37 p.m.)

9                       ---oOo---

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential Attorneys' Eyes Only Outside Counsel

Page 337

1          CERTIFICATE OF REPORTER

2

3

4

5          I, ANDREA M. IGNACIO HOWARD, hereby certify

6     that the witness in the foregoing deposition was by me

7     duly sworn to tell the truth, the whole truth, and

8     nothing but the truth in the within-entitled cause;

9

10         That said deposition was taken in shorthand

11    by me, a Certified Shorthand Reporter of the State of

12    California, and was thereafter transcribed into

13    typewriting, and that the foregoing transcript

14    constitutes a full, true and correct report of said

15    deposition and of the proceedings which took place;

16

17         That I am a disinterested person to the said

18    action.

19

20         IN WITNESS WHEREOF, I have hereunto set my

21    hand this 17th day of August, 2011.

22

23    _____

24    ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830

25