HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and Counterclaim-
Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil Action No. 11-CV-01846-LHK<br><br>**APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS**<br><br>Date:  September 22, 2011<br>Time:  1:30 p.m.<br>Place:  Courtroom 4, 5th Floor<br>Judge:  Hon. Lucy H. Koh |

1

2

3

4   SAMSUNG ELECTRONICS CO., LTD., a
    Korean business entity, SAMSUNG
5   ELECTRONICS AMERICA, INC., a New
    York corporation, and SAMSUNG
6   TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited liability company,
7

8            Counterclaim-Plaintiffs,

9        v.

10  APPLE INC., a California corporation,

11           Counterclaim-Defendant.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.   INTRODUCTION ........................................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDING ........................................................3

III. STATEMENT OF FACTS ...........................................................................................3

    A.   IPR Policies at Standards-Setting Organizations ................................................3

    B.   Samsung's Subversion of the Standardization Process.........................................5

    C.   Samsung's Coercion and Refusal to Make a FRAND Offer................................6

IV.  ARGUMENT................................................................................................................7

    A.   Standard of Review...............................................................................................7

    B.   Apple Has Adequately Alleged Its Monopolization Claim ...............................7

         1.   Apple Has Adequately Alleged Monopoly Power and
              Exclusionary Conduct ................................................................................7

C.   Apple Has Adequately Pled Antitrust Injury................................................................13

D.   Apple Has Properly Alleged Violations of Section 1 and the Cartwright Act ..........16

E.   Apple has Adequately Pled Claims Under the UCL....................................................18

F.   The Declaratory Judgment Claims Serve a Useful Purpose in this Litigation
     and Samsung's Motion to Strike is Premature ............................................................19

V.   CONCLUSION ........................................................................................................21

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Ackerman-Chillingworth, Div. of Marsh & McLennan, Inc. v. Pac. Elec. Contractors Ass'n,*
  579 F.2d 484 (9th Cir. 1978) ....................................................................................... 17, 18

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
  486 U.S. 492 (1988) ...................................................................................................... 17, 18

*Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.,*
  456 U.S. 556 (1982) ............................................................................................................ 18

*Ashcroft v. Iqbal,*
  556 U.S. ___, 129 S. Ct. 1937 (2009) ........................................................................... 7, 15

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................................................. 7

*Broadcom Corp. v. Qualcomm, Inc.,*
  501 F.3d 297 (3rd Cir. 2007) ...................................................................................... 8, 10, 11

*Chip-Mender, Inc. v. Sherwin-Williams Co.,*
  2006 WL 13058 (N.D. Cal. Jan. 3, 2006) ......................................................................... 16

*Glen Holly Entm't Inc. v. Tektronix Inc.,*
  343 F.3d 1000 (9th Cir. 2003) ..................................................................................... 14, 15

*Handgards, Inc. v. Ethicon, Inc.,*
  601 F.2d 986 (9th Cir. 1979) ............................................................................................. 16

*Helix Milling Co. v. Terminal Flour Mills Co.,*
  523 F.2d 1317 (9th Cir. 1975) ........................................................................................... 16

*In re Cathode Ray Tube Antitrust Litig.,*
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................................................... 7

*Kaiser Found. Health Plan, Inc. v. Abbott Labs.,*
  552 F.3d 1033 (9th Cir. 2009) .............................................................................................. 8

*McGraw-Edison Co. v. Preformed Line Prods. Co.,*
  362 F.2d 339 (9th Cir. 1966) ............................................................................................. 20

*Moore v. Kayport Package Exp., Inc.,*
  885 F.2d 531 (9th Cir. 1989) ............................................................................................... 9

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of the Univ. of Oklahoma,*
  468 U.S. 85 (1984) .............................................................................................................. 18

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ...................................................................................... 10

*Rambus Inc. v. Infineon Techs. AG*,
   330 F. Supp. 2d 679 (E.D. Va. 2004) ...................................................................... 11

*Rambus, Inc. v. Fed. Trade Comm'n*,
   522 F.3d 456 (D.C. Cir. 2008) ................................................................................. 13

*Research in Motion Ltd. v. Motorola, Inc.*,
   644 F. Supp. 2d 788 (N.D. Tex. 2008) ........................................................... 8, 11, 15

*Redding Bank of Commerce v. Bank of America*,
   2010 WL 2573859 (E.D. Cal. June 24, 2010) ......................................................... 20

*Spectators' Commc'n Network Inc. v. Colonial Country Club*,
   253 F.3d 215 (5th Cir. 2001) ................................................................................... 16

*Strickrath v. Globalstar, Inc.*,
   2008 WL 2050990 (N.D. Cal. May 13, 2008) .................................................... 20, 21

*Townshend v. Rockwell Int'l Corp.*,
   2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ........................................................... 13

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) ................................................................................................... 8

State Cases

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular*,
   20 Cal. 4th 163 (Cal. 1999) ..................................................................................... 19

*Partee v. San Diego Chargers Football Co.*,
   34 Cal. 3d 378 (Cal. 1983) ...................................................................................... 16

Federal Statutes

28 U.S.C. § 2201(a) ........................................................................................................ 20

Federal Rules of Civil Procedure

Fed. R. Civ. P. 57 ........................................................................................................... 20

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

iii

## I.      INTRODUCTION

Contrary to Samsung's assertion that Apple is "unfairly maximiz[ing] the burden on Samsung" by bringing a "hodgepodge" of "non-patent counterclaims," *see* Samsung's Motion to Dismiss and Strike Apple's Counterclaims ("Samsung Mot.") at 1, Apple's counterclaims squarely address Samsung's serial standard-setting abuses that inflict continuing harm on consumers, competition, and Apple alike.  The pages of detailed allegations supporting Apple's Counterclaims in Reply to Samsung's Counterclaims show that Samsung has unlawfully acquired monopoly power in markets for the technologies purportedly covered by patents which Samsung claims are essential to industry standards ("declared essential patents") by deceiving standards-setting organizations ("SSOs").

Samsung falsely promised to license its patents on fair, reasonable, and non-discriminatory ("FRAND") terms, and violated SSO rules by failing to timely disclose intellectual property rights ("IPRs") it now claims cover technologies incorporated in the widely-adopted UMTS standard.  Samsung engaged in this deceptive conduct at the same time it was aggressively lobbying SSOs to have those technologies selected for standardization.  Having obtained this ill-gotten monopoly power, Samsung has engaged in a relentless campaign of illegal and abusive assertions of its declared-essential patents to try to coerce Apple into tolerating Samsung's continuing imitation of the distinctive designs and patented features that are hallmarks of Apple's iPhone and iPad products.

Samsung's contention that Apple has failed to allege valid antitrust and related counterclaims is particularly remarkable given its own extensive history of asserting worldwide that similar standard-setting abuses violate antitrust and related laws.  For example, Samsung argued to the Federal Trade Commission that another company's (Rambus) failure "to disclose

APPLE INC.'S MEMORANDUM IN OPPOSITION TO SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

1

its patent rights" and "other misleading conduct" led an SSO to standardize its technologies and convey monopoly power, and that Rambus should be barred from enforcing its patent rights as a result of its "antitrust violations."[1]  In related private litigation, Samsung alleged that Rambus's subversion of the standard-setting process violated the California Unfair Competition Law (UCL) because it "violat[ed]" "federal and state antitrust laws."[2]  Similarly, in a complaint in the United Kingdom, Samsung alleged that Ericsson violated both Articles 81 and 82 of the EC Treaty – the EU analogues to Sections 1 and 2 of the Sherman Act – by failing to fulfill its promises to the European Telecommunications Standards Institute ("ETSI"), the standards body significantly responsible for the promulgation of the UMTS standard, to license on FRAND terms patents it claimed were essential to UMTS.[3]  Again, in a complaint against InterDigital, Samsung alleged that "[w]ithout certain rules," SSOs "would be illegal trusts," and "[t]o prevent patent owners from imposing monopolistic royalties," SSOs "condition the standardization of proprietary technology upon the patent owner's promise to make the technology available to the public . . . on [FRAND] terms."[4]

Apple has more than sufficiently pled its antitrust and UCL counterclaims.  *Infra* at Sec. IV.B – IV.E.  Moreover, contrary to Samsung's argument, Apple's non-patent declaratory judgment counterclaims are an entirely appropriate means to ensure that Apple obtains the relief it requires.  *Infra* at Sec. IV.F.  The Court should deny Samsung's motion.

---

[1] *See* Declaration of Mark D. Selwyn ("Selwyn Decl."), Ex. A (Brief of Amici Curiae Nvidia, Micron, Samsung, and Hynix on the Issue of the Appropriate Remedy for Rambus's Violations of the FTC Act, *In re Rambus*, No. 9302 (F.T.C. Sept. 15, 2006) (hereinafter, "Samsung Amicus Br.")) at 2-3.

[2] *See* Selwyn Decl., Ex. B (Cross-Complaint of Samsung Against Cross Defendant Rambus, *Rambus v. Micron*, No. 04-431105 (Cal. Super. Ct. Feb. 24, 2006)) at 7.

[3] *See* Selwyn Decl., Ex. C (Re-amended Defence and Counterclaim of Samsung, *Telefonaktiebolaget LM Ericsson v. Samsung Electronics UK Limited*, Case No. HC06 C00618 (High Court of Justice, Chancery Division, Patents Court)) at ¶¶ 63-64.

[4] *See* Selwyn Decl., Ex. D (First Amended Complaint, *Samsung Elec. Co. v. InterDigital Commc'ns Corp.*, No. 07-0167 (D. Del. Sept. 14, 2007)) at 5.

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

2

## II.        NATURE AND STAGE OF THE PROCEEDING

On July 21, 2011, Apple filed its Answer, Defenses, and Counterclaims in Reply to

Samsung's Counterclaims ("Counterclaims in Reply" or "CR").  Apple's Counterclaims in Reply

include, in addition to claims for declaratory judgment of non-infringement and invalidity on

each patent asserted by Samsung, counterclaims for breach of contract (Twenty-fifth

Counterclaim); promissory estoppel (Twenty-sixth Counterclaim); and violations of the Sherman

Act (Twenty-seventh Counterclaim), the California Cartwright Act (Twenty-eighth

Counterclaim), and the California UCL (Twenty-ninth Counterclaim).  Apple also seeks

declarations that Apple is licensed to Samsung's declared-essential patents (Thirtieth

Counterclaim), that Samsung is not entitled to injunctive relief (Thirty-first Counterclaim), and

that Samsung's course of misconduct renders Samsung's declared-essential patents

unenforceable (Thirty-second Counterclaim).  On August 15, 2011, Samsung moved to dismiss

Apple's Twenty-seventh through Thirty-second Counterclaims.  Samsung does not challenge the

sufficiency of Apple's Twenty-fifth and Twenty-sixth Counterclaims for breach of contract and

promissory estoppel arising from Samsung's serial standards misconduct.

## III.       STATEMENT OF FACTS

### A.        IPR Policies at Standards-Setting Organizations

Mobile telecommunications networks enable consumers to, among other things, place

and receive calls and access e-mail, the Internet, and a variety of other services.  CR ¶¶ 19-20.

The handsets sold by Apple and Samsung, which operate on wireless networks, include a

computer chipset that enables the handset to communicate with the telecommunications carriers'

networks.  *Id.* ¶ 19.  Apple and Samsung buy these chipsets from third parties.  *Id.*  To facilitate

the interoperability necessary for various manufacturers' products to function on wireless

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

3

networks, industry members, as participants in SSOs, developed technical standards establishing specifications for essential components of the technologies.  *Id.* ¶ 20.  This case involves the UMTS telecommunications standard, which has been standardized by the 3rd Generation Partnership Project ("3GPP"), a collaboration of six SSOs from around the world including ETSI and five others.  *Id.* ¶¶ 37-38.

During standards development, industry members, including Samsung, participate in SSO working groups and propose and advocate for the incorporation of certain features.  *Id.* ¶ 54. The working groups evaluate competing technical proposals on the basis of both technical merit and perceived cost.  *Id.* ¶¶ 22, 26, 78.  Because technical standards succeed only if they are widely adopted, and because those standards are widely adopted only if the costs (including licensing costs) are not prohibitively high, SSOs are particularly concerned about standardizing patent-protected technologies.  *Id.* ¶¶ 22-25.  Before standardization, the royalty a patentee can earn from a patent license is constrained because the SSO has not yet determined that the patentee's – and only the patentee's – patented technology must be used to perform a function that has been included.  *Id.* ¶ 23.  Once the standard is established, however, a patentee that controls technology essential to the standard is in a position to demand exorbitant royalties or other terms, far in excess of what is warranted by the intrinsic value of the technology, because implementers of the standard are "locked-in" to using the patentee's technology.  *Id.* ¶¶ 23-24; *see also* Selwyn Decl., Ex. D (First Amended Complaint, *Samsung Elec. Co. v. InterDigital Commc'ns Corp.*) at 5 ("The payoff for owners of patents that are incorporated into the standard is substantial because the entire industry will need a license to the patents essential to the standard.").

ETSI, like most SSOs, has developed an IPR policies to address this concern.  CR ¶¶ 47-51.  ETSI members participating in 3GPP are required to comply with the ETSI IPR policy.  *Id.* ¶ 41.  The IPR policy requires participants, like Samsung, to disclose IPR that might be essential to a proposed specification.  *Id.* ¶ 48.  These disclosures allow the working group and the SSO as a whole to consider the potential cost of various proposals in determining which technology to standardize to perform a particular function or whether to adopt that function at all.  *Id.* ¶¶ 25-26, 45.  ETSI's IPR policy also requires commitments to license potentially essential IPR on FRAND terms.  *Id.* ¶¶ 27, 49.  The IPR policy provides that, without such an undertaking, the SSO may suspend work on the relevant parts of the standard or redesign the standard to render the relevant IPR nonessential.  *Id.* ¶ 50.

**B.**       **Samsung's Subversion of the Standardization Process**

To encourage incorporation of its technologies into the standard and to keep 3GPP from considering the cost of standardizing that technology, Samsung deliberately and deceptively failed to disclose IPR that it now claims is essential to the UMTS standard.  *Id.* ¶¶ 40, 54.  In fact, in several instances, a named inventor on the concealed patent application or other Samsung personnel participated in the relevant working group, championed Samsung's technical proposal, and affirmatively steered the SSO to standardize the technology.  *Id.*  Samsung then disclosed its IPR only *after* the relevant standard or standard specification was finalized.  *Id.*

Had they known about Samsung's deceptive conduct, the SSOs would have either selected a competing technology or declined to make the relevant function essential to the standard.  *Id.* ¶¶ 45, 55.  As a result of this deception, Samsung acquired monopoly power in the markets for technologies that perform the various functions covered by Samsung's purported essential patents (the "Input Technologies Markets").  *Id.* ¶¶ 59, 88-89.

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

5

Samsung's abuse of the standard-setting process went far beyond untimely disclosure of its IPR.  Samsung has submitted declarations to ETSI committing irrevocably to license declared-essential patents on FRAND terms under Clause 6.1 of the ETSI IPR policy.  *Id.* ¶ 56. That commitment constitutes a promise that all interested parties will be licensed to claimed standards-essential patents on FRAND terms, foreclosing the patent holder from asserting infringement claims or seeking to obtain an injunction to prohibit an implementer from practicing the standard.  *Id.*  Had Samsung revealed that it would not offer FRAND license terms, 3GPP either would have either removed Samsung's purported IPR from the relevant standard in favor of other viable alternative technologies or declined to incorporate that feature into the standard.  *Id.* ¶¶ 43-45.

### C.      Samsung's Coercion and Refusal to Make a FRAND Offer

Samsung has sought to exploit this wrongfully acquired monopoly power to coerce Apple into tolerating Samsung's pattern of repeatedly imitating the distinctive designs and functions of Apple's highly successful iPhone and iPad products.  *Id.* ¶¶ 70-75.  After the parties were unable to resolve their dispute over Samsung's copying, Apple sued Samsung in this Court, bringing claims that include infringement of patents that do not cover technologies that are included in any industry standard and trade dress and trademark infringement.  *Id.* ¶¶ 14-15.  In retaliation, Samsung sued Apple for patent infringement and to enjoin Apple from selling Apple's consumer products, even though Apple is licensed to any Samsung standards-essential patents by virtue of Samsung's FRAND commitments.  *Id.* ¶ 16.  Samsung has also sued Apple for infringement and sought injunctions in no fewer than seven foreign countries.  *Id.* ¶ 17.

## IV. ARGUMENT

### A. <u>Standard of Review</u>

Samsung premises much of its motion to dismiss on a misreading of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In *Twombly*, the Supreme Court held that a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *id*. at 570, so that the complaint "raise[s] a right to relief above the speculative level."  *Id*. at 555.  In other words, the Court required a plaintiff to plead facts sufficient to "nudge[] their claims across the line from conceivable to plausible," or suffer dismissal.  *Id*. at 570.  A court should assume that all well-pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949-50 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 1949.  "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests."  *In re Cathode Ray Tube Antitrust Litig.*, 738 F. Supp. 2d 1011, 1017 (N.D. Cal. 2010) (*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Apple's counterclaims easily meet this standard.

### B. <u>Apple Has Adequately Alleged Its Monopolization Claim</u>

Samsung claims that Apple has failed to allege a Section 2 monopolization claim because it has not adequately averred market power and monopoly conduct (Samsung Mot. at 6-9) and antitrust injury.  (*Id.* at 9-10.)  But Apple's allegations are more than sufficient.

#### 1. Apple Has Adequately Alleged Monopoly Power and Exclusionary Conduct

To state a claim for monopolization, Apple must allege that Samsung (1) "possess[es] monopoly power in the relevant market[s]"; and (2) "willful[ly] acqui[red] or maint[ained]…that

APPLE INC.'S MEMORANDUM IN OPPOSITION TO SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

7

power" through exclusionary conduct rather than by "growth or development as a consequence of a superior product, business acumen, or historic accident."  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *see also Kaiser Found. Health Plan, Inc. v. Abbott Labs.*, 552 F.3d 1033, 1043-44 (9th Cir. 2009).  Apple has adequately alleged both elements.

Samsung briefly argues – with no explanation – that Apple has failed adequately to allege monopoly power.  (Samsung Mot. at 6-7.)  But it simply ignores Apple's detailed allegations that insofar as Samsung's patents are in fact essential to the UMTS standard, there are no viable substitutes for the technology post-standardization, and Samsung therefore enjoys monopoly power in the relevant Input Technologies Markets.  *See* CR ¶¶ 81-86.  Courts have repeatedly found these types of allegations sufficient to satisfy the monopoly power pleading requirement because "[a] standard, by definition, eliminates alternative technologies."  *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 314 (3rd Cir. 2007).  In fact, at least three courts have already considered allegations of UMTS standards abuse where monopoly power was alleged by virtue of the alleged wrongdoer's purported ownership of declared-essential patents.  Those courts have uniformly found that monopoly power was sufficiently pled on that basis.  *Id.* at 315 (finding averments that defendant holds patents its claims cover technology included in the UMTS standard sufficient to allege "monopoly power in the relevant market"); *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 792-93 (N.D. Tex. 2008) (same); Selwyn Decl., Ex. E (*Apple, Inc. v. Motorola Mobility, Inc.*, 11-CV-178, Order and Opinion at 27 (W.D. Wis. June 7, 2011)) at 27 ("By making false commitments that led to the establishment of worldwide standards incorporating its own patents and eliminating competing alternative technologies, Motorola has become a gatekeeper, accruing the power to harm or eliminate competition in the relevant markets if it so desires.").  Indeed, Samsung, itself, has recognized in other proceedings

1  that a party claiming to hold patents covering standardized technology enjoys monopoly power.

2  *See* Selwyn Decl., Ex. A (Samsung Amicus Br.) at 2-3.

3       Next, Samsung argues that Apple has not sufficiently alleged exclusionary conduct.

4  (Samsung Mot. at 7.)  In particular, Samsung contends Apple has failed to meet Rule 9(b)'s

5  standard for pleading fraud with particularity because it "fails to identify, for each asserted

6  standards-essential patent, who from Samsung should have, but did not, disclose the patent, or

7  made an allegedly false FRAND commitment; or when the patents should have been disclosed or

8  when the allegedly false FRAND commitment was made."  (*Id.*)

9       Rule 9(b)'s requirements for pleading fraud are met if the complaint "identifies the

10 circumstances constituting fraud so that a defendant can prepare an adequate answer from the

11 allegations."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  Samsung

12 disregards Apple's detailed allegations that do just that.  For example, in Paragraph 54 of its

13 Counterclaims in Reply, Apple alleges for the '561, '941, and '001 that Samsung has declared

14 essential:

    a)  what the patent purports to claim;
    b)  that Samsung claims the patent is essential to the UMTS standard (including for
        '561 and '001 patents, the particular UMTS specification);
    c)  Samsung's claimed priority date for the patent;
    d)  the month in which Samsung employees (for the '561 and '001, including one or
        more named inventers) later advocated to a 3GPP working group a "change
        request" to standardize the technology Samsung now claims is covered by the
        patent – i.e., particulars about Samsung's knowledge that the relevant
        technologies were under consideration;
    e)  the month in which 3GPP adopted the relevant version of the standard; and
    f)  the month in which Samsung untimely disclosed the patent to ETSI.

Samsung's argument that Apple is obliged to identify a particular *Samsung employee* who failed

to disclose the patent, is nonsensical.  The obligation to disclose was a companywide Samsung

obligation (*see* CR ¶ 48); it was not limited to some particular Samsung employee.  In any event,

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

9

1  to the extent there were particular employees who were responsible for Samsung's disclosures,

2  that is information within Samsung's control, and Apple has no Rule 9(b) obligation to allege it.

3  *See*, *e.g.*, *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (Rule 9(b)'s requirements "may

4  be relaxed with respect to matters within the opposing party's knowledge.  In such situations,

5  plaintiffs can not be expected to have personal knowledge of the relevant facts.") (citations

6  omitted).  As to timing of disclosure, Apple alleges exactly when Samsung should have disclosed

7  its patents:  in a timely fashion and before the relevant standard or standard specification was

8  finalized.  *See* CR ¶ 40.  Paragraph 54 alleges when 3GPP adopted relevant standards.

9

10        Regarding Samsung's false FRAND promises, Apple has alleged that Samsung's

11  FRAND declarations covering each of the asserted patents were false.  *Id.* ¶¶ 56-57.  Those

12  declarations, which constituted false commitments on behalf of the company, are documents

13  within Samsung's control, and Samsung can identify who signed the declaration from the face of

14  the documents.  The false commitments were obviously made on the day they were signed,

15  which again is reflected in the documents.  *See Broadcom*, 501 F.3d at 314 (finding that "a patent

16  holder's intentionally false promise to license essential proprietary technology on FRAND terms

17  . . . coupled with a [standards setting organization's] reliance on that promise . . . and [] the

18  patent holder's subsequent breach of that promise, is actionable anticompetitive conduct");

19  Selwyn Decl., Ex. E (*Apple, Inc.*, 11-CV-178, June 7, 2011 Order and Opinion) at 28 (finding

20  that "Apple's allegations satisfy the heightened pleading standards of Rule 9(b) by identifying

21  the specific patents that Motorola allegedly failed to disclose, the specific patents for which

22  Motorola made fair, reasonable and non-discriminatory commitments, to whom the

23  commitments were made and the dates on which they were made").

24

25

26

27

28

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

10

Samsung also contends that Apple has failed sufficiently to allege anticompetitive effects from Samsung's misconduct.  (Samsung Mot. at 8-9.)  It misapprehends Apple's allegations. Apple does not allege that the standard-setting process – standing alone – unlawfully excluded alternative technologies.  Rather, Apple avers that it was Samsung's false FRAND commitments and fraudulent non-disclosures that caused 3GPP to standardize technologies Samsung claims its patents cover, thereby conferring illegally obtained monopolies on Samsung.  Indeed, *Broadcom*, on which Samsung relies, held that "[d]eceptive FRAND commitments, no less than deceptive nondisclosures of IPR may result in [harm to the competitive process]."  501 F.3d at 314;[5] *see also Research in Motion*, 644 F. Supp. 2d at 796 (applying *Twombly* and sustaining Section 2 claim where complaint alleged that ETSI and another SSO "relied on Motorola's false promises that it would license its patents on FRAND terms"); *Rambus Inc. v. Infineon Techs. AG*, 330 F. Supp. 2d 679, 698-99 (E.D. Va. 2004) (covertly pursuing IPR to cover proposed standard is exclusionary under "[a]ny sensible interpretation of [Section 2]"); Selwyn Decl., Ex. E (*Apple, Inc.*, 11-CV-178, June 7, 2011 Order and Opinion) at 27 (sustaining Section 2 claim where Apple alleged that Motorola violated the antitrust laws by making false licensing commitments and failing to timely disclose essential patents to SSOs).  And Samsung, itself, has argued in other proceedings that deception resulting in an SSO standardizing the deceiving party's technology is actionable under the antitrust laws.  *See supra* at Sec. I; IV.B.1.

Contrary to Samsung's misleading characterization (Samsung Mot. at 8), *Broadcom* did not hold that standard-setting permits subsequent competition among alternative technologies to perform functions included in the relevant standard.  It held just the opposite.  *Broadcom*, 501

---

[5] The Third Circuit reversed the district court's holding that deceit in connection with standard-setting cannot give rise to Section 2 liability because it is the standardization, standing alone, that confers a monopoly on the patentee. The court reasoned that when a patentee makes a false promise that causes the SSO to standardize a patented technology, the patentee's deceit gives rise to a wrongful acquisition of monopoly.  *Broadcom*, 501 F.3d at 314.

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

11

F.3d at 314 ("When a patented technology is incorporated in a standard, adoption of the standard eliminates alternatives to the patented technology.").  The quotation Samsung uses is from *dicta* observing that, post-standardization, *producers* compete over "means for implementing the chosen standard."  *Id.* at 309.  That, of course, does not mean that suppliers of passed-over *technologies* continue to offer viable alternatives to the technologies that were standardized.

Apple plainly states a monopolization claim under these relevant rulings.  In particular, Apple alleges that (1) Samsung deliberately and deceptively concealed the existence of certain IPR during the standards-setting process; (2) Samsung falsely committed to license its claimed essential IPR on FRAND terms; (3) as a result of Samsung's misconduct, the SSO working groups adopted standards Samsung claims cannot be implemented without practicing its patents; and (4) but for Samsung's deceptive conduct, the SSO would have selected alternative technologies or the features allegedly covered by Samsung's IPR would not have been standardized.  *See* CR ¶¶ 4, 40, 42-45, 50, 54-55, 57, 59.  Apple also alleges that since Samsung wrongfully obtained monopoly power, it has used that ill-gotten power to retaliate against Apple's assertion of its patent rights, hoping to coerce Apple into relinquishing those claims and tolerating Samsung's pattern of copying Apple's products.  *Id.* ¶¶ 2, 4, 70-75.  Samsung has done this by refusing to offer Apple a license on FRAND terms and bringing baseless patent infringement claims against Apple, even though Apple is already licensed to any standards-essential patents by virtue of Samsung's declaration to ETSI and therefore cannot be infringing.  *Id.*

Samsung also argues that Apple fails adequately to allege that ETSI would not have incorporated Samsung's patented technology but for Samsung's deception.  But Apple squarely alleges that had Samsung timely disclosed its claimed essential IPR or disclosed its intention not

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

12

to honor its FRAND commitments, "a viable alternative technology performing the same functionality would have been adopted instead or the relevant functionality would not have been incorporated in the standard at all."[6]  *Id.* ¶ 178.  In addition, Apple has alleged detail about (i) the operation of the 3GPP working groups, whose very purpose was to consider whether to include various functions in the UMTS standard and the alternative technologies available to perform those functions; (ii) Samsung's efforts to convince 3GPP to standardize technology that it now claims is covered by its patents; and (iii) the timing of the adoption of those standards.  *See id.* ¶¶ 25-26, 45, 54.  Samsung does not and cannot explain why Apple's allegations are implausible – particularly given the provisions of ETSI's IPR policy that are designed to protect the telecommunications industry from the sort of anticompetitive ambush Samsung has perpetrated here.[7]  Apple has easily satisfied the *Twombly* standard.

## C.    Apple Has Adequately Pled Antitrust Injury

Samsung claims Apple has failed to plead antitrust injury for its monopolization claim because it supposedly "only describe[s] harms to Apple as a competitor, and not harms to competition."  (Samsung Mot. at 9.)  Samsung is wrong.  "Antitrust injury is made up of four elements: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that

---

[6] Samsung misplaces reliance on *Rambus, Inc. v. Fed. Trade Comm'n*, 522 F.3d 456 (D.C. Cir. 2008).  There, the court vacated an FTC order finding a Section 2 violation because the Commission had conceded that the SSO might have incorporated the relevant technology even if Rambus had disclosed its IPR.  *Id.* at 466-67.  Accordingly, *Rambus* involves a failure of proof, and lends no support for dismissing a complaint where the deception is alleged to have resulted in standardization of the technology at issue.  *Townshend v. Rockwell Int'l Corp.*, No. C99-0400SBA, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000), is also inapposite.  There, the court dismissed a Section 2 complaint where the plaintiff failed to allege that the SSO could have adopted a standard that did not incorporate the defendants technology.  *Id.* at *11.  In doing so, the court distinguished the FTC's *Dell* case where "the standards-setting body was choosing among options, and there was a possibility that they could have adopted a standard which did not incorporate Dell's patent."  *Id.*

[7] Samsung's argument that the ETSI IPR policy has "no [] absolute requirement" that ETSI cannot incorporate technology into a standard without a FRAND commitment (Samsung Mot. at 9) misses the point.  Apple has alleged that on the facts here 3GPP would not have standardized the technologies that Samsung claims are covered by its patents but for Samsung's deception; it obviously need not allege that the SSO would *never* standardize any technology without a FRAND commitment, in any circumstances.

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

13

1    which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to

2    prevent."  *Glen Holly Entm't Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1008 (9th Cir. 2003) (internal

3    quotation marks omitted).  Here, Apple has alleged in detail both (i) how Samsung's illegal

4    monopolization injured competition and (ii) how Apple suffered injury as a result of that harm to

5    competition as a *consumer* in the relevant "Input Technologies Markets."  CR ¶ 2, 23-24, 28-29,

6    46, 62, 77-86, 88, 180.  Samsung completely disregards these allegations.

7

8         Apple alleges that Samsung's failure to timely disclose its patents during the standard-

9    setting process and false FRAND commitments has "foreclosed competition in each of the

10   relevant Input Technologies Markets …. [and] increased prices and decreased quality and

11   innovation for technologies in Input Technologies Markets."  *Id.* ¶ 89; *see also id.* ¶¶ 23-24, 28-

12   29 (alleging how Samsung's abuses allow it to exploit locked-in customers in Input Technology

13   Markets), 77-86 (alleging how standardization confers monopoly power on patentees whose

14   proprietary technology is selected by excluding alternatives).  Apple then alleges how it has been

15   harmed as a consumer in the relevant Input Technology Markets as a direct result of Samsung's

16   illegal exclusion of competition in those markets.  In particular, Samsung has induced Apple to

17   invest substantial resources developing standard-compliant products in reliance on Samsung's

18   FRAND commitments (*id.* ¶ 62), only to then use its ill-gotten monopoly power to try to coerce

19   Apple into either accepting unreasonable licensing terms or tolerating Samsung's copying of its

20   products (*id.* ¶¶ 2, 88) and to attempt to exclude Apple from the downstream product market if

21   Apple does not agree to those terms (*id.* ¶ 46), resulting in substantial injury to Apple (*id.* ¶ 180).

22   A consumer, like Apple, that is injured by reason of anticompetitive effects that a defendant's

23   antitrust violations has visited on the relevant market is the quintessential antitrust plaintiff.  *See,*

24   *e.g.*, *Glen Holly Entm't*, 343 F.3d at 1008 ("Consumers in the market where trade is allegedly

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

14

restrained are presumptively the proper plaintiffs to allege antitrust injury.") (internal quotation marks omitted); Selwyn Decl., Ex. F (IIA Phillip E. Areeda, et al., *Antitrust Law* (3rd ed. 2007)) at ¶ 345 ("Because protecting consumers from monopoly prices is the central concern of antitrust, buyers have usually been preferred plaintiffs in private antitrust litigation.").[8]

Samsung also argues in passing that Apple's allegations do not satisfy the *Twombly* pleading standard because they are conclusory.  (Samsung Mot. at 9.)  As demonstrated, Apple has in fact alleged substantial detail.  In any event, Apple has alleged classic, well-recognized types of antitrust injuries, and no extraordinary level of detail is required to show that its allegations are plausible.  *See, e.g.*, *Ashcroft*, 129 S. Ct. at 1949 ("the pleading standard Rule 8 announces does not require 'detailed factual allegations'").  Indeed, the court in *Research in Motion* held that the plaintiff properly pled antitrust injury when it alleged injuries as a consumer in monopolized technology markets almost identical to those Apple alleges here – including threats of exorbitant royalties, inability to obtain FRAND licenses, and risk of imminent loss of profits, customers, and goodwill.  *Research in Motion*, 644 F. Supp. 2d at 793-94, 796 (applying *Twombly* and finding allegations sufficient to establish antitrust injury).

Finally, contrary to Samsung's contention (Samsung Mot. at 9-10), Apple's expenses in defending Samsung's patent infringement claims are cognizable antitrust injuries.  Apple has alleged that Samsung wrongfully brought its infringement claims notwithstanding that Apple is already licensed or entitled to be licensed by virtue of Samsung's FRAND commitments.  CR

---

[8] Apple has also alleged that Samsung has injured competition and Apple specifically in competition for downstream standard-compliant devices by wrongfully threatening to exclude Apple from selling those products altogether or increasing its costs of doing so.  CR ¶ 46.  *See, e.g.*, *Research in Motion*, 644 F. Supp. 2d at 794 (finding antitrust injury where an essential patent holder violated FRAND commitments because "[i]f [an essential patent holder] licenses only at exorbitant rates, it will force its competitors to increase prices in the downstream market in order to make a profit. This increase in prices for all products except [the essential patent holder's] will harm competition.").

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

15

¶ 16.  In *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979), the Ninth Circuit squarely held in similar circumstances that "it is obvious that the costs incurred in defense of [a baseless infringement suit] are an injury which 'flows' from the antitrust wrong."[9]  *Id.* at 997.

### D. Apple Has Properly Alleged Violations of Section 1 and the Cartwright Act

Samsung argues that Apple has failed to allege violations of Section 1 of the Sherman Act (and the Cartwright Act)[10] because those statutes apply only to concerted action, and Apple does not allege that Samsung conspired with another entity to carry out its illegal conduct. (Samsung Mot. at 10-13.)  Samsung misapprehends Section 1's concerted action requirement. Section 1 makes illegal concerted activity that injures competition, but it does not require that more than one actor *share an objective* to injure competition through the relevant agreement. *See Helix Milling Co. v. Terminal Flour Mills Co.*, 523 F.2d 1317, 1322 (9th Cir. 1975) ("The collaboration of the person necessary to establish a combination need not even be willing…."); *see also Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 220 (5th Cir. 2001) ("Antitrust law has never required identical motives among conspirators…").  Here, the requisite concerted activity was the standard-setting-process by which 3GPP standardized the technologies that Samsung claims are covered by its declared-essential patents.  CR ¶ 182.  By violating the ETSI rules regarding disclosure of IPR and FRAND commitments, Samsung caused the standard-setting process to injure competition in the Input Technology Markets and engaged in an illegal restraint of trade.  *Id.* at ¶ 183.

---

[9] *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C. 05-3465, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006), is not to the contrary.  There, the court held only that attorneys' fees were insufficient "standing alone" to establish antitrust injury.  *Id.* at *6.  Here, by contrast, Apple has alleged harm to competition from Samsung's monopolization, which has also imposed substantial costs on Apple in defending itself against Samsung's abusive litigation.

[10] The Cartwright Act is generally interpreted consistently with Section 1 of the Sherman Act, *see, e.g.*, *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378, 392 (Cal. 1983), and we do not discuss the Cartwright Act separately here.

APPLE INC.'S MEMORANDUM IN OPPOSITION TO SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

16

As the Supreme Court has held, standard-setting, with its joint selection of technology for use by an entire industry, constitutes concerted action for purposes of Section 1.  *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 (1988) ("Agreement on a product standard is, after all, implicitly an agreement not to manufacture, distribute, or purchase certain types of products"); *see also* Selwyn Decl., Ex. G (7 Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law* (2d ed. 2003)) at ¶ 1477 (stating that standard-setting associations are routinely treated as continuing conspiracies of their members).  And when a participant or participants engage in conduct that makes the concerted activity one that injures – rather than benefits competition – the standard-setting activity becomes illegal under the rule of reason.  *Id.* at 500-01, 509-10.  Indeed, Samsung, itself, has recognized this very principle in prior litigation, stating that "[w]ithout certain rules . . . [SSOs] would be illegal trusts because [SSOs] are a forum in which competitors . . . determine which products they will and will not make. . . ."  *See* Selwyn Decl., Ex. D (First Amended Complaint, *Samsung Elec. Co. v. InterDigital Commc'ns Corp.*) at 5.

Accordingly, and as Apple has alleged, when "Samsung undermined the rules of conduct on which the legality of the standards-setting depended, [it] caused the standards-setting process to injure competition in the Input Technologies Markets, and engaged in an unlawful restraint of trade" in violation of Section 1 and the Cartwright Act.  CR ¶ 183.  That Apple does not allege that participants in the concerted standard-setting other than Samsung actually intended to harm competition is irrelevant.  What *is* relevant is that Samsung's misconduct rendered the concerted activity anticompetitive in fact.  As the Ninth Circuit has explained, "[e]ven though the purpose of a trade practice is innocent or benign, it may be unreasonable if it is substantially harmful to competition."  *Ackerman-Chillingworth, Div. of Marsh & McLennan, Inc. v. Pac. Elec.*

APPLE INC.'S MEMORANDUM IN OPPOSITION TO SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

17

*Contractors Ass'n*, 579 F.2d 484, 492 (9th Cir. 1978) (discussing Section 1); *see also Nat'l Collegiate Athletic Ass'n v. Board of Regents of the Univ. of Oklahoma*, 468 U.S. 85, 101 n.23 (1984) ("it is … well settled that good motives will not validate an otherwise anticompetitive practice."). The concerted conduct for Section 1 purposes was the standard-setting activity leading to the standardization of technology that Samsung claims is covered by its patents.

Finally, Samsung's unremarkable observation that courts have often found standard-setting lawful under the rule of reason (Samsung Mot. at 11-12) is beside the point. None of those cases holds that standard-setting is *always* pro-competitive; furthermore, as Samsung admits (*id.* at 12), courts have found Section 1 violations where, like here, abusive conduct renders the activity anti-, rather than, pro-competitive. *See, e.g.*, *Allied Tube*, 486 U.S. at 500-01, 509-10; *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 570-73 (1982). Nor, contrary to Samsung's argument (Samsung Mot. at 12), does it matter that cases finding Section 1 violations in the standard-setting context have happened to involve coordination among multiple actors sharing an objective to injure competition. None of those cases, which were based on fully-developed factual records, remotely suggests that pleading such a common objective is pre-requisite for stating a claim under Section 1 (or that a plaintiff must ultimately prove a common objective).[11]

### E.       Apple has Adequately Pled Claims Under the UCL

Apple has adequately pled claims under the UCL. Samsung first asserts that Samsung's UCL counterclaim should be dismissed because it mirrors Apple's corresponding Sherman Act

---

[11] Samsung also argues that Apple's Section 1 claim fails because Apple has supposedly not adequately alleged antitrust injury. (Samsung Mot. at 13.) As discussed *supra* at Sec. IV.C, Apple's antitrust injury allegations are more than sufficient, and these allegations apply equally to its Section 1 claim as to its Section 2 claim. *See also* CR ¶ 184.

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

18

and Cartwright Act counterclaims that should be dismissed.[12]  As demonstrated *supra* at Sec. IV.B – IV.E., however, Apple has adequately pled its Sherman Act and Cartwright Act counterclaims.

Samsung also argues that to the extent Apple seeks to apply the UCL beyond the scope of the antitrust laws, Apple fails to make the requisite allegations that Samsung's conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  (Samsung Mot. at 13-14 (quoting *Cel-Tech Commc'ns*, *Inc. v. L.A. Cellular*, 20 Cal. 4th 163, 186-87 (Cal. 1999)).)  As shown *supra* at Sec. IV.F, however, Apple has alleged in detail how Samsung's conduct has or threatens to harm competition.[13]

### F. The Declaratory Judgment Claims Serve a Useful Purpose in this Litigation and Samsung's Motion to Strike is Premature

Samsung wrongly claims that Apple's non-patent declaratory judgment claims are redundant of its affirmative defenses and counterclaims and should be dismissed.[14]  The Declaratory Judgment Act, however, provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration,

---

[12] In fact, Apple's UCL counterclaim is not derived entirely from its antitrust counterclaims.  For example, the UCL counterclaim is grounded in part in Samsung's unfair competition for downstream manufacture and sale of wireless communication devices and Samsung's unlawful interference with Apple's actual and prospective business relationships.  CR ¶ 190.

[13] Additionally, the *Cel-Tech* holding on which Samsung relies is limited to UCL claims that are grounded in conduct similar to that addressed by the antitrust laws, *see Cel-Tech Commc'ns, Inc. v. L.A. Cellular*, 20 Cal. 4th 163 (Cal. 1999), and Apple's UCL counterclaim is not limited to that type of conduct (*see supra* note 12).

[14] In fact, Apple's declaratory judgment counterclaims are not entirely duplicative of other counterclaims or affirmative defenses.  Through Counterclaim Thirty, Apple seeks a declaratory judgment "setting forth the FRAND terms and conditions for a license to the Declared-Essential Patents including the applicable royalty rate."  CR ¶ 198.  This is the only claim requesting that the Court actually determine the FRAND terms and conditions and set the applicable royalty rate.

1   whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *see also* Fed. R. Civ. P.

2   57 (the mere existence of an alternate remedy does not preclude the use of declaratory relief).

3           This Court has "complete discretion whether to hear a counterclaim for declaratory

4   judgment."  *Strickrath v. Globalstar, Inc.*, No. C07-1941, 2008 WL 2050990, at *3 (N.D. Cal.

5   May 13, 2008).  The analysis entails a determination as to whether the counterclaims "serve any

6   useful purpose."  *Id.* at 4 (internal quotation marks omitted); *see also Redding Bank of

7   Commerce v. Bank of America*, No. S-10-498, 2010 WL 2573859, at *4 (E.D. Cal. June 24,

8

9   2010) ("The Ninth Circuit has laid out two principles to guide the court's analysis: a declaratory

10  judgment should be considered when (1) the judgment will serve a useful purpose in clarifying

11  and settling the legal relations at issue; and (2) when a declaratory judgment will afford relief

12  from the controversy giving rise to the proceeding.") (citing *McGraw-Edison Co. v. Preformed

13  Line Prods. Co.*, 362 F.2d 339 (9th Cir. 1966)).

14

15          First, it is noteworthy that Samsung has asserted its own declaratory judgment claims that

16  duplicate certain of its affirmative defenses or counterclaims.  *Compare*, *e.g.*, Samsung's

17  Answer, Affirmative Defenses, and Counterclaims ¶ 277 (Second Affirmative Defense of

18  "Patent Non-Infringement"), *with id.* ¶¶ 116-119 (Thirteenth Claim for Relief for "Declaration of

19  Non-Infringement").  Apple has good reasons for asserting the declaratory judgment claims at

20  issue.  Among other things, absent these declaratory judgment claims, Apple risks not obtaining

21  rulings in connection with its active dispute with Samsung.  For example, if Samsung withdraws

22  its counterclaims (it has already withdrawn its original complaint) or the counterclaims are

23  otherwise never tried, the Court will not reach Apple's affirmative defenses.

24          It also is quite possible that the Court will decide the Apple counterclaims cited by

25  Samsung in a way that does not reach the particular issue raised in a declaratory judgment claim.

26

27

28

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

20

For example, the Court might rule in favor of Apple on its Section 1 and 2 counterclaims without determining whether Samsung has waived the right to enforce its purported essential patents – a declaration that Apple seeks in its Thirty-second Counterclaim.  At the very least, Samsung's motion to strike is premature at this stage of the proceedings.  Apple's declaratory judgment claims impose no incremental burden to Samsung, and there is no reason to dismiss them, particularly when they serve as a vehicle for additional relief.  *See Strickrath*, 2008 WL 2050990 at *5 (early dismissal under Rule 12(f) "might ignore [ ] the possibility that it is very difficult to determine whether the declaratory judgment counterclaim really is redundant prior to trial") (internal quotation marks omitted).

**V.      CONCLUSION**

For the reasons set forth above, the Court should deny Samsung's Motion to Dismiss and Strike Apple's Counterclaims.

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

21

1  | Dated:  August 29, 2011

/s/ Mark D. Selwyn
Mark D. Selwyn (SBN 244180)
(mark.selwyn@wilmerhale.com)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

William F. Lee (admitted *pro hac vice*)
(william.lee@wilmerhale.com)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Harold J. McElhinny (SBN 66781)
(HMcElhinny@mofo.com)
Michael A. Jacobs (SBN 111664)
(MJacobs@mofo.com)
Richard S.J. Hung (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: ( 415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

1

**CERTIFICATE OF SERVICE**

2

3        The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on August 29, 2011, to all counsel of record who are deemed to have

4

consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any

5

other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

6

7                                           /s/ Mark. D Selwyn
                                          Mark D. Selwyn

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE INC.'S MEMORANDUM IN OPPOSITION
TO SAMSUNG'S MOTION TO DISMISS AND
STRIKE APPLE'S COUNTERCLAIMS
Case No. 11-cv-01846 (LHK)

23