1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15

16                        UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 | APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK
19 |         Plaintiff, |
20 |    vs. |
   |    | **SAMSUNG'S REPLY BRIEF IN**
21 | SAMSUNG ELECTRONICS CO., LTD., a | **SUPPORT OF SAMSUNG'S MOTION TO**
   | Korean business entity; SAMSUNG | **DISMISS AND STRIKE APPLE'S**
22 | ELECTRONICS AMERICA, INC., a New | **COUNTERCLAIMS**
   | York corporation; SAMSUNG |
23 | TELECOMMUNICATIONS AMERICA, | **Date: September 22, 2011**
   | LLC, a Delaware limited liability company, | **Time: 1:30 p.m.**
24 |    | **Place: Courtroom 4, 5th Floor**
   |         Defendants. | **Judge: Hon. Lucy H. Koh**
25

26

27

28

Case No. 11-cv-01846-LHK
**SAMSUNG'S REPLY BRIEF IN SUPPORT OF SAMSUNG'S MOTION TO DISMISS AND STRIKE
APPLE'S COUNTERCLAIMS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  APPLE'S § 2 CLAIMS DO NOT MEET THE TWOMBLY PLEADING
     STANDARD ................................................................................................................... 2

     A.   Apple Does Not Plead Facts Showing Samsung's Conduct Unreasonably
          Affected Competition ......................................................................................... 3

     B.   Apple Does Not Plead Facts Showing Antitrust Injury as a Consumer *or* a
          Competitor .......................................................................................................... 5

III. APPLE MISSTATES THE CONTROLLING LAW ON § 1 ............................................. 6

IV.  APPLE'S UNFAIR COMPETITION LAW CLAIMS CANNOT SURVIVE THE
     DEFICIENCIES OF ITS ANTITRUST CLAIMS ................................................................ 8

V.   APPLE ARTICULATES NO PURPOSE FOR ITS NON-PATENT
     DECLARATORY JUDGMENT COUNTERCLAIMS ........................................................ 9

VI.  CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

<u>Cases</u>

Allied Tube & Conduit Corp. v. Indian Head, Inc.,
    486 U.S. 492 (1988) .................................................................................................. 7

Ashcroft v. Iqbal,
    556 U.S. ___, 129 S. Ct. 1937 (2009) ...................................................................... 2

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) .................................................................................................. 2

Broadcom Corp. v. Qualcomm Inc.,
    507 F.3d 297 (3d Cir. 2007) ..................................................................................... 4

Cel-Tech Commc'ns, Inc. v. L.A. Cellular,
    20 Cal. 4th 163 (1999) .......................................................................................... 8, 9

Copperweld Corp. v. Independence Tube Corp.,
    467 U.S. 752 (1984) .................................................................................................. 6

Handgards, Inc. v. Ethicon, Inc.,
    601 F.2d 986 (9th Cir. 1979) .................................................................................... 5

Helix Milling Co. v. Terminal Flour Mills Co.,
    523 F.2d 1317 (9th Cir. 1975) .................................................................................. 7

Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n,
    884 F.2d 504 (9th Cir. 1989) .................................................................................... 5

McGraw-Edison Co. v. Preformed Line Prods. Co.,
    362 F.2d 339 (9th Cir. 1966) .............................................................................. 9, 10

Microsoft Corp. v. Motorola, Inc.,
    No. 10-cv-1823 (W.D. Wash. May 31, 2011) ....................................................... 11

Rambus Inc. v. FTC,
    522 F.3d 456 (D.C. Cir. 2008) .............................................................................. 3, 4

Research in Motion Ltd. v. Motorola, Inc.,
    644 F. Supp. 2d 788 (N.D. Tex. 2008) ..................................................................... 5

Scott v. Pasadena Unified Sch. Dist.,
    306 F.3d 646 (9th Cir. 2002) .................................................................................. 10

Spectators' Communication Network Inc. v. Colonial Country Club,
    253 F.3d 215 (5th Cir. 2001) .................................................................................... 7

Stickrath v. Globalstar, Inc.,
    No. C07-1941, 2008 WL 2050990 (N.D. Cal. May 13, 2008) .............................. 10

Townshend v. Rockwell Int'l Corp.,
    No. C99-0400, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000) .......................... 3, 4, 9

United States v. Am. Tobacco,
    221 U.S. 106 (1911) ............................................................................................................... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Apple's opposition entirely fails to remedy the complete absence from the pleadings of any factual support for Apple's FRAND counterclaims.  Apple attempts to mask these deficiencies by misstating the applicable standards for anticompetitive conduct, anticompetitive injury, concerted action, and unfair competition, and by restating and realleging its *conclusions* of prohibited conduct in lieu of any facts from which this Court may infer such conduct.  These misstatements and conclusory allegations are no substitute for the statements of fact required to state a plausible claim.  Apple further fails to articulate a single purpose served by its non-patent declaratory judgment counterclaims, particularly in light of its counterclaims alleging breach of contract and antitrust violations.  For these reasons, this Court should dismiss Apple's antitrust counterclaims, and strike Apple's non-patent declaratory judgment counterclaims.

The pleadings and briefing demonstrate that Apple brings its FRAND counterclaims as a strategic ploy, and not out of any legitimate interest in competition.  Apple's attempt to portray itself as a victim of Samsung's alleged abusive assertion of its declared-essential patents is misplaced, and completely belied by Apple's own egregious conduct.  Rather than compete in the smartphone market, Apple has launched its own relentless assault on Android device manufacturers and competition itself.  Apple has sued each and every one of its most significant and successful rivals in order to force or frighten them out of the smartphone business, and has alleged FRAND violations when its rivals respond in kind to Apple's flagrant infringement of UMTS and other standards-related patents.

Apple has not identified *any* facts supporting its naked assertions of anticompetitive harm, concerted action, and unfair competition.  Apple's pleadings offer nothing but vague allegations that Apple has been harmed through loss of customers, loss of revenue, and other personalized harms.  Apple's opposition does little to bolster its position, repeatedly misstating the facts and holdings of relevant cases in a desperate attempt to find support for its utterly meritless position.  From these, Apple concludes that Samsung's conduct has somehow restricted competition, despite unambiguous precedent distinguishing harm to a *competitor* from harm to *competition*.  Apple's

allegations prove the very argument that Samsung makes in its motion to dismiss.   Apple is not suffering from a *lack* of competition, but just the opposite: Apple for the first time finds itself competing with superior products, and now resorts to baseless legal claims to compensate for its products' deficiencies.

Samsung's history of opposing standard-setting abuses, which Apple repeatedly misrepresents in hopes of discrediting Samsung's position, only serves to highlight the insufficiency of Apple's own allegations.   The entities Samsung has accused of standard-setting abuse in other situations refused to make FRAND commitments, aggressively litigated their standards-essential patents, and engaged in a pattern of extortion throughout the market by charging excessive royalties and discriminating against licensees who would not comply with their demands.[1]   Apple alleges no such facts in its Counterclaims in Reply.   (D.N. 124.)   In fact, Apple alleges few facts at all, relying almost entirely on labels, buzzwords, and conclusory self-serving assertions.   Apple's allegations are simply insufficient to state claims under the "facial plausibility" standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

## II.    APPLE'S § 2 CLAIMS DO NOT MEET THE TWOMBLY PLEADING STANDARD

Apple concedes that the Twombly standard mandates pleading actual "factual content" in support of claims.   Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).   Yet Apple's counterclaims and opposition offer nothing but "conclusory allegations" of antitrust violations, which cannot suffice.   See Twombly, 550 U.S. at 557.   Invoking the language of the antitrust statute is no substitute for pleading the factual basis for the alleged offenses.   (See mot. at 7-10.)   Here, Apple fails to plead the necessary facts to

---

[1]   For example, both the regulatory action and the private litigation against Rambus were premised on allegations that Rambus had refused to make a FRAND commitment on its concealed patents and, after adoption of the standard, aggressively litigated against manufacturers who would not license at excessive rates.   See Rambus Inc. v. FTC, 522 F.3d 456, 459-62 (D.C. Cir. 2008); Declaration of Mark D. Selwyn ("Selwyn Decl.") (D.N. 190), Ex. B (Cross-Complaint of Samsung Against Cross Defendant Rambus, Rambus v. Micron, No. 04-431105 (Cal. Super. Ct. Feb. 24, 2006)) ¶¶ 6-25.   Similarly, Samsung's FRAND counterclaims against Ericsson were premised on, *inter alia*, Ericsson's demand for drastically increased royalty rates to renew a previous license to standards-essential patents without any justification for the increase.   See Selwyn Decl. (D.N. 190), Ex. C (Re-amended Defence and Counterclaim of Samsung, Telefonaktiebolaget LM Ericsson v. Samsung Electronics UK Limited, Case No. HC06 C00618 (High Court of Justice, Chancery Division, Patents Court)) ¶¶ 57-63.

permit the factfinder to reasonably infer that Samsung's alleged conduct had anticompetitive effects or caused anticompetitive injury to Apple.

### A. Apple Does Not Plead Facts Showing Samsung's Conduct Unreasonably Affected Competition

Rather than respond to Samsung's motion, Apple's opposition simply quotes and repeats allegations made in Apple's pleadings, which Samsung has already demonstrated do not plead facts sufficient to support a plausible claim of anticompetitive conduct. (See opp. at 12-13; mot. at 8-9.) Apple then relies on inapposite cases from other jurisdictions to support its argument, but ignores contrary precedent, including a case decided by this Court. (See mot. at 8-9.)

Apple realleges that ETSI's adoption of Samsung's technology into the UMTS standard based on purported deceptive conduct constitutes anticompetitive conduct, but utterly fails to allege the crucial facts necessary to establish the plausibility of its position. Specifically, Apple alleges no facts to support its conclusion that ETSI would not otherwise have standardized Samsung's technology. (See mot. at 8-9.) This Court and others have previously found no anticompetitive conduct where an antitrust plaintiff failed to show that a standard-setting organization would have or could have adopted a standard that did not include the defendant's technology. In Townshend v. Rockwell Int'l Corp., this court found no anticompetitive conduct absent a showing that there existed a "possibility that [the standard-setting organization] could have adopted a standard which did not incorporate [the antitrust defendant's] patent." No. C99-0400, 2000 WL 433505, at *11 (N.D. Cal. Mar. 28, 2000). More recently, in Rambus Inc. v. FTC, the D.C. Circuit similarly found that deception alone cannot "form the basis of a monopolization claim." 522 F.3d 456, 464 (D.C. Cir. 2008). Apple must allege facts to allow this court to reasonably infer that absent Samsung's allegedly deceptive conduct, ETSI would have selected competing technologies to incorporate in the standard. At the very least, this requires a showing that competing technologies existed—a fact that Apple even now does not allege. Additionally, Apple must allege facts to support its conclusion that the lack of a FRAND commitment would induce ETSI to select different technology for inclusion in the standard. Apple does not plead any such facts beyond its speculative conclusions. (See mot. at 8-9.)

1    Apple attempts to distinguish <u>Rambus</u> as a question of proof, and not allegations, but it simultaneously ignores the requirements imposed on Apple by <u>Twombly</u>.  While <u>Rambus</u> was admittedly decided based on the FTC's failure to prove that the standard-setting organization could have adopted alternative technology, the resulting rule is that the antitrust plaintiff must adequately plead that purported deception *actually affected* the resulting standard.  Here, Apple's mere assertion that ETSI would not have adopted Samsung's technology includes no facts from which this Court could reasonably arrive at the same conclusion.  Apple's attempt to distinguish <u>Townshend</u> is similarly flawed for failing to recognize its own obligation to plead facts to show ETSI would have, or even *could have*, refused to include Samsung's technology in the UMTS standard.  Apple's concession that ETSI imposes no absolute requirement for FRAND commitments (<u>see</u> opp. at 13 n.7) is especially relevant because it demonstrates that Apple must provide *some* factual basis from which this Court could plausibly infer that ETSI would *not* have selected Samsung's technology under the circumstances.  Apple cannot simply *conclude* that this is true without providing any basis for the plausibility of that conclusion.

   Apple's reliance on other circuits' authority that is contrary to decisions from this Court should be rejected.  <u>See</u> <u>Townshend</u>, 2000 WL 433505.  Notably, the decisions to which Apple cites do not account for Apple's failure to plead facts sufficient to infer that ETSI would not have included Samsung's technology in the UMTS standard absent Samsung's purported deceptive acts.  (<u>See</u> opp. at 11-12.)  Indeed, Apple concedes that it is a standard-setting organization's *reliance* on that deception which gives rise to a § 2 claim, and not the deception itself.  (<u>See</u> <u>id.</u>)  Without any facts from which to infer such reliance, any alleged deception on Samsung's part would not result in antitrust liability.  <u>See</u> <u>Rambus</u>, 522 F.3d at 464.[2]

---

[2]   Apple misapprehends Samsung's reliance on <u>Broadcom Corp. v. Qualcomm Inc.</u>, 507 F.3d 297 (3d Cir. 2007).  Contrary to Apple's assertion, <u>Broadcom</u> did, in fact, conclude that standard setting does not inherently eliminate competition through the adoption of a standard, but rather displaces competition from the standardized technology to the products embodying the standard.  (<u>See</u> mot. at 8.)  This directly contradicts Apple's assertions, discussed below, that the inclusion of Samsung's technology in the UMTS standard harmed competition by eliminating competing alternatives.

### B. Apple Does Not Plead Facts Showing Antitrust Injury as a Consumer *or* a Competitor

Apple's opposition does little to clarify why it failed to provide a factual basis for its allegations of antitrust injury.  Samsung's motion explains how every harm identified by Apple is a harm to Apple as a *competitor*, and not a harm to *competition*.  (See mot. at 9.)  Indeed, harms such as loss of profits, loss of customers, and loss of goodwill are all effects that Apple would suffer from a superior competitor, and do not themselves indicate harm to competition.  See Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 508 (9th Cir. 1989).  Apple's opposition simply reiterates the same rhetoric as its pleadings, stating only that "Apple has in fact alleged substantial detail" and that its alleged harms are "classic, well-recognized types of antitrust injuries, and no extraordinary level of detail is required to show that its allegations are plausible." (See opp. at 9.)  Apple, however, fails to provide *any* level of detail in its conclusory response, instead asserting, as rejected in Les Shockley, that its personal harms necessarily prove competitive harm.

Although Apple cites to Research in Motion Ltd. v. Motorola, Inc. for support, that decision is not controlling here, nor is it persuasive.  644 F. Supp. 2d 788 (N.D. Tex. 2008).  The Research in Motion Court identified multiple alleged injuries that RIM claimed to have suffered, *including* those alleged here by Apple.  That Court never held, however, that the personal injuries pled by Apple, alone, sufficiently pled an antitrust cause of action.  See Research in Motion, 644 F. Supp. 2d at 793.  Furthermore, Research in Motion disregards precedent, including decisions of this Court, finding that even deceptive conduct before a standard-setting organization does not necessarily cause *anticompetitive* injury.  See Section II.A.  Apple cannot simply presume anticompetitive injury based on its allegations here; it must actually plead facts to show that competition, and not just Apple, was injured.[3]

---

[3]  Apple effectively concedes that its costs of defending itself in litigation, standing alone, are insufficient to constitute antitrust injury.  (See opp. at 16 n.9.)  For the purposes of this motion, if Apple establishes other antitrust injury, then whether Apple's costs constitute additional antitrust injury is a moot point.  Apple's reliance on Handgards, Inc. v. Ethicon, Inc., 601 F.2d 986 (9th Cir. 1979), does not suggest otherwise—that case addressed only whether the costs of defending sham litigation are an antitrust injury.  Apple has not alleged sham litigation here.

Apple attempts to further complicate the argument by insisting that this Court should evaluate its claims as those of an injured *consumer* rather than an injured *competitor*. (Opp. at 14-15.) Apple's own pleadings, however, identify its alleged injuries as those of a competitor, and not of a consumer. (See, e.g., D.N. 124 Counterclaims ¶ 2 (describing the factual background of Apple's claims as relating to "Samsung's persistent attempt to compete with Apple"); ¶ 24 ("[D]esigners, such as Apple, invest great resources developing innovative, new products that also comply with the technical standard."); ¶ 88 ("Samsung seeks to *exclude* from the manufacture and sale of downstream wireless devices *and raise the costs of its rival*, Apple." (emphasis added)); opp. at 14 (alleging that Samsung seeks to "exclude Apple from the downstream product market").) Apple has no basis to argue, contrary to its own pleadings, that it is harmed as a consumer.[4]

### III.   APPLE MISSTATES THE CONTROLLING LAW ON § 1

Apple fails to state a cognizable claim under Section One of the Sherman Act because it does not allege even a single instance of concerted action.[5] (See mot. at 10-11.) The Supreme Court has explicitly stated that the conduct of a *single* entity can *only* give rise to a § 2 claim, not a § 1 claim.[6] Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 767 (1984). Apple's opposition does not even address the Copperweld doctrine, instead alleging that Samsung's purported FRAND violations transform the entire standard-setting process from a legal endeavor to an illegal one in violation of § 1. (Opp. at 16-18.) Apple, however, misstates the law it cites in support of its position.

Even the cases on which Apple relies hold that the particular concerted activity alleged must *necessarily* cause harm to competition. Apple cannot, as it does here, merely allege that anticompetitive activity took place within the *context* of a contract or combination. Apple, for example, cites to Helix Milling v. Terminal Flour Mills for the proposition that a § 1 claim may lie even when the accused conspirators do not "*share an objective* to injure competition through the

---

[4] Additionally, to the extent that Apple alleges harm as a result of the standardization of Samsung's technology, to the exclusion of competing alternatives, it is well established that standardization does not *unreasonably* limit competition as prohibited by the Sherman Act. See infra Section III; (mot. at 9).
[5] Apple concedes that its Cartwright Act claims require the same showings as its § 1 claims. (Opp. at 16 n.10.)
[6] Apple, however, does not even adequately plead a § 2 cause of action. See supra Section II.

-6-  Case No. 11-cv-01846-LHK
**SAMSUNG'S REPLY BRIEF IN SUPPORT OF SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS**

relevant agreement." (Opp. at 16.)  Apple conveniently omits the preceding sentence in the opinion: "Proof of participation in a course of conduct that has the *necessary consequence* of barring entry of competition into the market would provide the basis for a finding of a combination."  Helix Milling Co. v. Terminal Flour Mills Co., 523 F.2d 1317, 1322 (9th Cir. 1975) (emphasis added).[7]  Even Apple does not contend that standardization alone *necessarily* causes anticompetitive harm—rather, it is the independent actions of a member in violation of the organization's own policies that may threaten competition.  (Opp. at 16.)  Apple similarly misapprehends the holding of Spectators' Communication Network Inc. v. Colonial Country Club, which states only that *coerced* participation of conspirators in anticompetitive conduct is not immune from liability.  253 F.3d 215, 220 (5th Cir. 2001).  The remaining cases cited by Apple likewise establish that a practice that *in itself* harms competition cannot escape antitrust scrutiny merely because it was implemented without an ill purpose in mind.  (See opp. at 17-18.)  None of these cases, however, require a finding of § 1 liability for the independent actions of a single entity simply because of that entity's membership in a larger group, especially when the group was not otherwise complicit in or aware of the specific conduct alleged to harm competition.

Apple also misstates the antitrust status of standard-setting organizations under controlling precedent.  Standard setting is *not*, in itself, § 1 concerted action.  Over a century ago, the Supreme Court held that concerted action only falls within the purview of § 1 when it *unreasonably* restrains trade.  See United States v. Am. Tobacco, 221 U.S. 106, 178-80 (1911).  Accordingly, the steel interests in Allied Tube & Conduit Corp. v. Indian Head, Inc. were liable under § 1 because the resulting standard unreasonably excluded competitors.[8]  486 U.S. 492 (1988).  Consequently, a standard set pursuant to a reasonable policy, including safeguards against abuse, does not run afoul of § 1.  The very quotation Apple's opposition attributes to Samsung recognizes this principle: "*[w]ithout certain rules* . . . [SSOs] would be illegal

---

[7] Apple also fails to recognize that the holding of Helix "is a limited one, given the unusual factual context of [that] case."  Helix, 523 F.2d at 1322.

[8] Apple inaccurately summarizes Allied Tube as holding that standard setting is illegal when "a participant or participants" harm competition.  (Opp. at 17.)  Nowhere in Allied Tube, however, does the Court suggest that § 1 would have been violated had only a *single* participant stacked the vote with its employees, rather than the combined steel interests.

1 trusts . . . ." (Opp. at 17 (emphasis added).) Apple does not contend that ETSI's policies are
2 unreasonable; Apple contends only that a purported unilateral *ex post* violation of ETSI's policies
3 harmed competition. Even if taken as true for the purposes of this motion, such unilateral
4 conduct, in violation of an indisputably reasonable policy, cannot possibly be attributed to ETSI or
5 its members, and cannot render an otherwise reasonably implemented standard unreasonable.
6 Any anticompetitive act, then, is attributable to the individual actor only and does not state a claim
7 of *concerted* action.

8 Upholding Apple's interpretation of the law would result in the illogical and undesirable
9 consequence where standard-setting organizations that implement safeguards against abuse, and
10 their members who participate in good-faith standard setting, could nonetheless incur liability for
11 the anticompetitive conduct of a single member in violation of the organization's policies. If, as
12 Apple claims, a single member's failure to disclose essential patents or to offer FRAND licenses
13 renders the entire standardization process anticompetitive, and if, further, a § 1 claim can be
14 asserted against all members of the standards body even if they unwittingly and unwillingly
15 participated in the purported anticompetitive conduct, then every member of the standard-setting
16 organization is equally liable for the unilateral actions. Such a policy would not only eliminate
17 any incentive for a standard-setting organization to establish an IP rights policy, it would also
18 render Apple's claims self-defeating, as Apple would itself be a co-conspirator to the
19 anticompetitive conduct it alleges.

20 **IV.  APPLE'S UNFAIR COMPETITION LAW CLAIMS CANNOT SURVIVE THE**
21 **DEFICIENCIES OF ITS ANTITRUST CLAIMS**

22 Apple's unfair competition claims do not offer relief any broader than already allowed
23 under the antitrust laws. The Supreme Court of California has explicitly required that "any
24 finding of unfairness to competitors under section 17200 be tethered to some legislatively declared
25 policy or proof of some actual or threatened impact on competition." Cel-Tech Commc'ns, Inc.
26 v. L.A. Cellular, 20 Cal. 4th 163, 186-87 (1999).[9] That holding was adopted by this Court in

---

[9] Apple's attempt to limit the holding of Cel-Tech to "UCL claims that are grounded in conduct similar to that addressed by the antitrust laws" (see opp. at 19 n.13) is misguided. Cel-Tech was decided to "devise a more precise

-8-  Case No. 11-cv-01846-LHK
**SAMSUNG'S REPLY BRIEF IN SUPPORT OF SAMSUNG'S MOTION TO DISMISS AND STRIKE APPLE'S COUNTERCLAIMS**

Townshend v. Rockwell Int'l Corp., No. C99-0400, 2000 WL 433505, at *14-15 (N.D. Cal. Mar. 28, 2000).

To the extent that Apple's twenty-ninth counterclaim pleads purportedly unfair acts other than those alleged in its Sherman Act counterclaims,[10] Apple does not allege that those acts harm competition. For example, nowhere does Apple allege that Samsung's assertion of its patents, Samsung's licensing practices, and Samsung's purported interference in Apple's business relationships[11] harm anyone other than Apple. In fact, Apple expressly pleads that the enumerated acts are unfair because of their "effect . . . on Apple." (D.N. 124 Counterclaims ¶ 190.) That Apple elsewhere makes conclusory, unsupported allegations of competitive harm (e.g., id. ¶ 193) does not redeem these claims, nor does it supply the missing causal link between the alleged acts and any purported harm to competition.

## V. APPLE ARTICULATES NO PURPOSE FOR ITS NON-PATENT DECLARATORY JUDGMENT COUNTERCLAIMS

Apple concedes that this Court's discretionary approach to declaratory judgment counterclaims warrants striking any such counterclaim that does not serve a useful purpose or offer relief not otherwise available. (Opp. at 19-20.) Apple nevertheless fails to identify how a declaration from this Court would "serve a useful purpose in clarifying and settling the legal relations in issue" or "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." McGraw-Edison Co. v. Preformed Line Prods. Co., 362 F.2d 339, 342 (9th Cir. 1966) (quoting Borchard, Declaratory Judgments 299 (2d ed. 1941)). Specifically, Apple does not respond to Samsung's contention that "the breach of contract, promissory estoppel and antitrust counterclaims will already require this Court to determine whether Apple is licensed or has the right to a license to any essential patents, whether Samsung is entitled to injunctive

---

test for determining what is unfair under the unfair competition law" because "California businesses [need] to know, to a reasonable certainty, what conduct California law prohibits and what it permits." Cel-Tech, 20 Cal. 4th at 185. Nothing in the Court's opinion limited the applicability of its holding.

[10] The claims alleged under the Sherman Act do not sufficiently plead anticompetitive conduct or anticompetitive injury. See supra Section II.

[11] For that matter, Apple pleads absolutely no facts to support these additional allegations. If Apple wants to pursue claims of sham litigation or tortious interference, it must plead those claims properly rather than disguise them as elements of an unfair competition claim.

1 relief on its essential patents, and whether Samsung's standards-essential patents are enforceable."
2 (Mot. at 15.)   Apple's vague assertions that the Court may resolve the matter without reaching
3 each and every defense and counterclaim do not suffice to create a declaratory judgment cause of
4 action.

5 The only end that Apple distinctly identifies as furthered by its non-patent declaratory
6 judgment counterclaims is the determination of FRAND terms and conditions.   (Opp. at 19 n.14.)
7 Outside the context of damages calculation, however, this Court is not in the habit of
8 micromanaging parties' settlement and licensing negotiations, and should not be called upon to
9 make such a determination.   Indeed, a declaratory judgment on damages alone is particularly
10 undesirable because it "would result in piecemeal trials of the various controversies presented or in
11 the trial of a particular issue without resolving the entire controversy . . . ."   McGraw-Edison, 362
12 F.2d at 343 (quoting Yellow Cab Co. v. City of Chicago, 186 F.2d 946, 950-51 (7th Cir. 1951)).
13 It is similarly wasteful and unnecessary for the Court to engage in a trial on damages before
14 liability has been determined.

15 Apple generally asserts that its affirmative defenses might not be heard if Samsung
16 withdraws its counterclaims, but this is insufficient to demonstrate a "substantial controversy . . .
17 of sufficient immediacy and reality . . . ."   Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646,
18 658 (9th Cir. 2002) (quoting Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)).
19 The mere assertion of an affirmative defense by Apple does not automatically merit a declaratory
20 judgment on the same issue, especially when those issues would already be reached via Apple's
21 own counterclaims.   See McGraw-Edison, 362 F.2d at 342-43.   Apple must demonstrate how a
22 declaratory judgment would resolve the entire controversy between the parties in a way not
23 already addressed in its pending claims and counterclaims.   See id.   That the Court might not
24 settle one particular issue or defense does not alone necessitate a declaratory judgment.   Apple's
25 reliance on Stickrath v. Globalstar, Inc. to caution against early dismissal is fruitless: the Stickrath
26 Court nevertheless chose to grant the plaintiff's motion to strike.   No. C07-1941, 2008 WL
27 2050990, at *7 (N.D. Cal. May 13, 2008).

28

Apple also accuses Samsung of asserting its own duplicative counterclaims.   It is settled law, however, that counterclaims for declaratory judgment of noninfringement and invalidity promote the public interest and resolve potential future litigation.   See, e.g., Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 99-102 (1993) (finding strong public interest supporting declaratory judgment counterclaims of invalidity).   The same cannot be said of Apple's non-patent declaratory judgment counterclaims; in fact, such claims have been dismissed in similar litigations.   See Order Regarding Motions to Dismiss at 8-9, Microsoft Corp. v. Motorola, Inc., No. 10-cv-1823 (W.D. Wash. May 31, 2011), ECF No. 66.   Even if Samsung's counterclaims *were* duplicative, however, the appropriate response would be for Apple to move to strike those counterclaims, as Samsung has done here.   Apple would not become entitled to assert purposeless counterclaims in turn.

**VI.   CONCLUSION**

For the foregoing reasons, Samsung's Motion to Dismiss and Strike Apple's Counterclaims should be granted.

DATED: September 6, 2011                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By    /s/ Victoria F. Maroulis
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC