QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**REPLY IN SUPPORT OF SAMSUNG'S MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS LLP**<br><br>**Date:** August 24, 2011<br>**Time:** 2:00 pm<br>**Place:** Courtroom 4, 5th Floor<br>**Judge:** Hon. Lucy H. Koh |

| | | |
|---|---|---|
| | INTRODUCTION | 1 |
| | ARGUMENT | 1 |
| I. | APPLE CONCEDES A SUBSTANTIAL RELATIONSHIP BETWEEN THE PRIOR REPRESENTATION AND SAMSUNG'S CURRENT CLAIMS | 1 |
| II. | THE SUBSTANTIAL RELATIONSHIP CREATED BY THE ATTORNEYS' PRIOR REPRESENTATION OF SAMSUNG EXTENDS BEYOND THE '604 PATENT AND FRAND ISSUES | 2 |
| III. | THE ATTORNEYS CANNOT ATTEMPT TO WALL THEMSELVES OFF FROM ISSUES THAT ARE SUBSTANTIALLY RELATED TO THEIR PRIOR REPRESENTATION OF SAMSUNG | 5 |
| | A. Apple's Proposed Topical Limitation Of The Attorneys' Representation Is Practically Unworkable And Contrary to Law | 5 |
| | B. Limiting the Scope of Representation Will Often Create Conflicts Between Competing Duties to Present and Past Clients | 11 |
| IV. | SAMSUNG DID NOT WAIVE ITS OBJECTION TO THE ATTORNEYS' CONFLICT AND DID NOT TACTICALLY "MANUFACTURE" THE CONFLICT | 12 |
| V. | APPLE'S REPEATED REQUESTS TO SEVER OR BIFURCATE SAMSUNG'S COUNTERCLAIMS ARE IMPROPER AND SHOULD BE DENIED | 14 |
| | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page

## Cases

*City and County of San Francisco v. Cobra Solutions, Inc.,*
  38 Cal. 4th 839 (Cal. 2006) .................................................................................5, 8

*City of Santa Barbara v. Superior Court,*
  122 Cal. App. 4th 17 (Cal. Ct. App. 2004) ...............................................................5

*In re County of Los Angeles,*
  223 F.3d 990 (9th Cir. 2000) ....................................................................................7

*Federal Home Mortgage Corp v. La Conchita Ranch Co*
  68 Cal. App. 4th 856 (1998) ...................................................................................13

*Flatt v. Superior Court,*
  9 Cal. 4th 275 (Cal. 1994) ........................................................................................5

*Fox Searchlight Pictures, Inc. v. Paladino,*
  89 Cal. App. 4th 294 (2001) ...................................................................................13

*Frazier v. Superior Court,*
  97 Cal. App. 4th 23 (Ct. App. 2002) .........................................................................5

*Hilleby v. FMC Corp,*
  25 U.S.P.Q. 2d 1413 (N.D. Cal. 1992) ..................................................................7, 8

*Jessen v. Hartford Cas. Ins. Co.,*
  111 Cal. App. 4th 698 (Ct. App. 2003) .................................................................2, 3

*Largo Concrete, Inc. v. Liberty Mut. Fire Ins. Co.,*
  No. 07-4651, 2008 WL 53128 (N.D. Cal. Jan. 2, 2008) ...........................................2

*In re McKesson HBOC, Inc. Sec. Litig.,*
  126 F. Supp. 2d 1239 (N.D. Cal. 2000) ..................................................................10

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP,*
  69 Cal. App. 4th 223 (Ct. App. 1999) ...................................................................4, 5

*Newmont Mining Corp.,*
  352 F. Supp. 2d 1037 (D. Ariz. 2005) ....................................................................10

*Oliver v. SD-3C, LLC, et al.,*
  Case No. 3-11-cv-01260-JSW, 5-7 (N.D. Cal. Aug. 4, 2011) ..........................3, 4, 5

*Openwave Sys., Inc. v. 724 Solutions (US) Inc.,*
  2010 U.S. Dist. LEXIS 49628 (N.D. Cal. April 22, 2010) .......................................2

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.,*
  20 Cal. 4th 1135 (Cal. 1999) ....................................................................................7

*In re Plant Insulation Co.*
  414 B.R. 646 (N.D. Cal. 2009) .................................................................................. 7

*Sumitomo Corp. v. J.P. Morgan & Co.*,
  2000 U.S. Dist. LEXIS 1252 (S.D.N.Y. Feb. 7, 2000) ................................................. 8

*Summerlin v. Johnson*,
  335 S.E.2d 879 (Ga. Ct. App. 1985) ........................................................................ 11

*Summers v. AL Gilbert Co.*,
  69 Cal. App. 4th 1155 (Ct. App. 1999) .................................................................... 10

*Traumann v. Southland Corp.*,
  858 F. Supp. 979 (N.D. Cal. 1994) .......................................................................... 10

*U.S. v. Edwards*,
  39 F. Supp. 2d 716 (M.D. La. 1999) .......................................................................... 6

*United States v. Cheshire*,
  707 F. Supp. 235 (M.D. La. 1989) ............................................................................. 5

**Statutes**

Cal. Bus. & Prof. Code § 6076 ............................................................................................. 9

Cal. R. Prof'l Conduct Rule 3-310(E) ..................................................................... 7, 12, 13

Fed. R. Civ. P. 21 .............................................................................................................. 14

Fed. R. Civ. P. 42(b) ......................................................................................................... 14

Fed. R. Evid. 803(6) ............................................................................................................ 2

**Other Authorities**

D.C. Bar Legal Ethics Comm. Opinion No. 343 (Feb. 2008) ............................................. 9

N.Y.C. Bar Ass'n Comm. on Prof'l & Judicial Ethics, Formal Op. 2001-3 (2001),
  2001 WL 1870201 (July 6, 2001) ............................................................................... 9

## INTRODUCTION

Apple's lengthy opposition attempts to obscure a simple conflict of interest case: without seeking or obtaining Samsung's informed written consent, Bridges & Mavrakakis attorneys are representing Apple in an action in which Apple is defending against Samsung's assertion of a patent that they previously asserted on behalf of Samsung. In response to Samsung's claim, Apple alleges that Samsung failed to offer it fair, reasonable, and non-discriminatory ("FRAND") licensing terms—the very defense these attorneys previously argued against on Samsung's behalf. These two facts alone create a substantial relationship between the two cases so strong that Apple expressly concedes it. Yet Apple insists that the substantial relationship between the prior representation and this action does not matter because Bridges & Mavrakakis, attorneys of record to Apple in this litigation, are not working on the claims and defenses relating to the patent for which they previously represented Samsung. Apple's position is practically unworkable and legally untenable. Further, it does nothing to cure the conflict created by Mr. Bridge's extensive and sustained exposure to Samsung's patent litigation strategy, settlement and licensing considerations, and future business plans concerning mobile phones, which extends beyond the '604 patent and FRAND defenses asserted by Apple. Accordingly, Apple's choice of using counsel who previously represented Samsung must yield to the sanctity of the confidential nature of the attorney-client relationship.

## ARGUMENT

### I. APPLE CONCEDES A SUBSTANTIAL RELATIONSHIP BETWEEN THE PRIOR REPRESENTATION AND SAMSUNG'S CURRENT CLAIMS

Given the indisputable evidence that lawyers from the Bridges & Mavrakakis (the "Attorneys") firm previously represented Samsung in substantially related litigations, Apple cannot deny that Samsung's claims and the prior representation of Samsung by the Attorneys are substantially related. Indeed, Mr. Bridges "concedes and has never questioned" the relationship "between the prior work for Samsung and Samsung's counterclaims." (Opp. at 8, n.6) (emphasis omitted). That relationship has become even more obvious since the filing of Samsung's Motion given Apple's Answer, Defenses, and Counterclaims to Samsung's Counterclaims, which assert

seven separate counterclaims based on Samsung's alleged FRAND obligations and its conduct vis-à-vis standards setting organizations. (Dkt. 124 at ¶¶ 163-205). These admissions alone are sufficient to require the disqualification of the Attorneys.[1] See, e.g., Largo Concrete, Inc. v. Liberty Mut. Fire Ins. Co., No. 07-4651, 2008 WL 53128, at *4 (N.D. Cal. Jan. 2, 2008) (successive representations are substantially related where facts at issue in the first representation are relevant to the claims or defenses in the second). As discussed below in Section III.A, the Attorneys cannot cure this conflict through a self-defined ethical wall.

## II. THE SUBSTANTIAL RELATIONSHIP CREATED BY THE ATTORNEYS' PRIOR REPRESENTATION OF SAMSUNG EXTENDS BEYOND THE '604 PATENT AND FRAND ISSUES

Apple misconstrues the substantial relationship test when it states that the Attorneys' knowledge of Samsung's confidential litigation tactics, policies, and procedures is insufficient to support a finding of substantial relationship. (Opp. at 10-14). California law counsels against construing the "substantial relationship" test as narrowly as Apple would like. See Jessen v. Hartford Cas. Ins. Co., 111 Cal. App. 4th 698, 712 (Ct. App. 2003). As this Court recently explained:

> To posit overly restrictive limitations on what it is reasonable to assume is communicated between lawyers and their clients does not give adequate recognition to the fact that clients should not be expected to limit themselves to giving their attorneys only the information most relevant or critical to a particular engagement. Indeed, because clients often will not know what is or is not strictly relevant, it is likely that they frequently provide attorneys

---

[1] In its Opposition, Apple raises various evidentiary objections to the Kim Declaration. All of these objections are unfounded. Exhibits 1-3 to the Kim Declaration have been properly authenticated by Ms. Kim and fall under the business record exception to the general hearsay rule. Fed. R. Evid. 803(6). Additionally, Apple objects to Ms. Kim's statements regarding the *Spansion* matters as lacking personal knowledge. All of the information contained in the Kim declaration was documented in the billing records provided to the Court and submitted by the Attorneys themselves. Ms. Kim's reliance on the billing records submitted by the Attorneys, the description of the work performed, and number of hours billed, provides sufficient foundation for her statements in ¶¶ 12-15.

with far more than the bare minimum the attorneys need to carry out the assignment.

Openwave Sys., Inc. v. 724 Solutions (US) Inc., 2010 U.S. Dist. LEXIS 49628, *14-15, 17 (N.D. Cal. April 22, 2010). Accordingly, courts "ascribe to the word 'subjects' ... a broader definition than the discrete legal and factual issues involved in the compared representations." Jessen, 111 Cal. App. 4th at 712. Rather, the "subject" of a representation includes "information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues." Id. at 712-13. "As part of its review, the court should [also] examine the time spent by the attorney on the earlier case, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." Oliver v. SD-3C, LLC, et al., Case No. 3-11-cv-01260-JSW, 5-7 (N.D. Cal. Aug. 4, 2011) (Declaration of Austin Tarango In Support of Samsung's Reply In Support of Its Motion to Disqualify Bridges & Mavrakakis, LLP ("Tarango Decl.") Ex. A) (citing Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, 69 Cal. App. 4th 223, 234 (1999)).

One of the most recent decisions from the Northern District of California regarding disqualification found that this type of confidential information is sufficient to create a substantial relationship between representations, even when legal and factual issues do not identically overlap. See SD-3C, LLC, et al., Case No. 3-11-cv-01260-JSW at 5-7. In SD-3C, the disqualified attorney had represented a client in three prior litigations during which he was exposed to the client's patent litigation strategy, including confidential information regarding the client's settlement considerations, as well as how the client approached possible licensing arrangements. Id. at 5-7. The attorney also extensively dealt with the in-house legal department that was assigned to oversee the litigation that the attorney was not adverse in. Id. at 6. Faced with this extensive and sustained exposure to the client's confidential information, the court concluded:

> Despite the lack of overlapping identical factual or legal issues, the Court finds it likely that over the years in which Mr. Healey defended Panasonic and interacted with in-house counsel within the Intellectual Property Department, Panasonic would have revealed confidential information which would be relevant and

material to the evaluation, prosecution, settlement or accomplishment of the current representation.

Id. at 7 (citation and quotations omitted).

Similarly, attorneys who have served in the limited role of monitoring counsel were properly disqualified for having been exposed to "litigation policies and strategies." Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP, 69 Cal. App. 4th 223, 236 (Ct. App. 1999). In Morrison Knudson, the disqualified attorneys had served as monitoring counsel for six years. Id. During this time, they were not only exposed to the client's "pre-litigation and litigation philosophy," but also frequently interacted with "key decision makers" at the client who were responsible for handling the litigation against the former attorney. Id. at 236-38. Additionally, many of the cases they worked on as monitoring counsel dealt with the same type of general "duty-of-care issues arising from profession services," legal obligations at issue in the current litigation. Id. at 235. Therefore, the court found a substantial relationship between the two representations, which required disqualification. Id. at 238.

Like the attorneys in SD-3C and Morrison Knudsen, the Attorneys received in-depth, confidential information about how Samsung litigates patent disputes relating to mobile technology over the course of more than 8,000 hours they billed in the *Ericsson* litigations alone. (Kim. Decl. at ¶¶ 2, 10.) During this prior representation of Samsung, Mr. Bridges consistently interacted with many of the same Samsung in-house legal counsel who work on this litigation against Apple. (Id. at ¶¶ 5-6.) As a result, Mr. Bridges received confidential information about how Samsung conducts patent litigation, including, but not limited to, Samsung's decision making process with regard to possible defenses, and its business sensitivities when defending and pursuing patent litigation. (Id. at ¶¶ 6-8.) Not only were the Attorneys exposed to Samsung's confidential patent litigation strategy and decision making process, but they were also exposed to the same Samsung business divisions involved in the current litigation. (Id. at ¶ 6). This exposure included access to Samsung's confidential future mobile device business strategy plans as well as detailed access to Samsung's mobile device products and patent portfolio, which include the '604 Patent. (Id. at ¶¶ 8-9.)

-4-  Case No. 11-cv-01846-LHK
REPLY ISO SAMSUNG'S MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS LLP

The Attorneys' access to this broad spectrum of Samsung confidential information, all gained while litigating the same field of technology, implicating the same Samsung business units, satisfies the substantial relationship test. See Morrison Knudsen, 69 Cal. App. 4th 223 at 238; SD-3C, LLC, et al., Case No. 3-11-cv-01260-JSW at 5-7. And it further underscores why the Attorneys' self-defined "wall" cannot be effective.

### III. THE ATTORNEYS CANNOT ATTEMPT TO WALL THEMSELVES OFF FROM ISSUES THAT ARE SUBSTANTIALLY RELATED TO THEIR PRIOR REPRESENTATION OF SAMSUNG

As Samsung explained in its Motion, Apple cannot cure the Attorneys' conflict of interest by somehow limiting the scope of their representation to exclude topics they believe are substantially related. To allow an attorney to evade the ethical rules enacted to protect a client's confidences by simply stating his representation does not cover those issues, would erode these crucial protections and endanger the free flow of information from client to attorney. Further, Apple's argument is predicated entirely on the assumption that the Attorneys obtained no confidential information that could potentially be used unethically against Samsung in connection with Apple's affirmative claims. As discussed above, Apple's assumption is erroneous.

#### A. Apple's Proposed Topical Limitation Of The Attorneys' Representation Is Practically Unworkable And Contrary to Law.

Apple's position creates a logistical nightmare for the Court and the litigants. It is black letter law in California that ethical walls do not operate to cure or prevent a disqualification based on a conflict of interest. See Flatt v. Superior Court, 9 Cal. 4th 275, 283 (Cal. 1994); City of Santa Barbara v. Superior Court, 122 Cal. App. 4th 17, 24 (Cal. Ct. App. 2004); Frazier v. Superior Court, 97 Cal. App. 4th 23, 30 (Cal. Ct. App. 2002); see also City and County of San Francisco v. Cobra Solutions, Inc., 38 Cal.4th 839 (Cal. 2006) (holding that disqualification of the Office of the City Attorney was mandatory despite implementation of an ethical wall). For the same reason that attorneys within the same firm—even those in distant geographic locations and distinct practice areas—are not permitted under California law to avoid a conflict by creating an ethical wall, it naturally follows that one group of attorneys cannot wall themselves off from their

co-counsel in the very same action to avoid a conflict. E.g., United States v. Cheshire, 707 F. Supp. 235, 240 (M.D. La. 1989) (holding that an attorney's "proposed solution–having a separate lawyer cross examine [his former client]–does not eliminate the conflict. At the very least, in order to represent his present client [the attorney] must be completely free and unfettered to analyze, characterize and repudiate the testimony of his former client in closing argument."); U.S. v. Edwards, 39 F. Supp. 2d 716, 744 45 (M.D. La. 1999) (same).

Apple's attempts to distinguish the cases refusing to allow co-counsel "walls" fail. Apple claims the crucial difference between the current situation and those in these cases is that the attorneys retained the "responsibility for both opening and closing arguments, in which it would necessarily have had to attack his former client's credibility. Understandably, both courts concluded that the conflict had not been eliminated." (Opp. at 18, fn. 14). Even if they are not permitted to do opening and closing arguments, the Attorneys here will still be in the position of attacking their former client's credibility. Their names are on the pleadings asserting the FRAND defenses; they presumably will sit at counsel table during proceedings in this action; and Apple holds them out as being directly involved in its offensive claims, which are centered on attacking Samsung. (See Apple's Am. Compl., Dkt. 75, ¶¶ 79-85). Thus, Apple's logic that attacking a former client's credibility is understandably grounds for disqualification (Opp. at 18, fn. 14), requires that the Attorneys be disqualified.

Even if the Court were to accept that the Attorneys were not exposed to any confidential information potentially related to this action beyond the '604 Patent and FRAND issues, no mechanisms could enforce the Attorneys' self-professed limited representation in this matter. Would the Attorneys excuse themselves from calls and meetings of Apple's counsel every time a document, or topic, came up that is related to their prior representations? What about joint meet and confer calls with Samsung? Would a list of terms, patents, documents, witnesses, and facts be prospectively itemized that would govern when the Attorneys were not permitted to listen, participate in, or be present during any situation where these listed items were discussed? Would the Attorneys have to leave the court room when Samsung's counterclaims and any related information was presented at trial? The need for such constant vigilance amidst the pressures of

sustained and intense litigation is unsustainable. Further, how would unanticipated subjects that implicated Samsung's confidential information be addressed? Permitting such a continuously-tested voluntary system undermines the main justification for Rule 3-310(E) of the California Rules of Professional Conduct, which is "to preserve public trust in the scrupulous administration of justice and the integrity of the bar." People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal.4th 1135, 1145 (Cal. 1999). Apple's right to the counsel of its choice must give way to the protection of Samsung's confidential information and Bridges' request for limited representation should be denied.[2]

None of Apple's cited authorities justifies a different result. For example, the In re Plant Insulation Co. court found that there was *not* a substantial relationship between the law firm's previous representation of the client and its current representation adverse to the client. 414 B.R. 646, 647-48 (N.D. Cal. 2009). Nonetheless, in an abundance of caution, the court limited the scope of representation to foreclose the risk of confidential information being used. Id. at 653-54. Here, in contrast, the conflict is not hypothetical; there is a clear and present danger that Samsung confidential information will be disclosed to Apple.

Nor can Hilleby v. FMC Corp, 25 U.S.P.Q. 2d 1413 (N.D. Cal. 1992), justify Apple's unusual proposal of walling off co-counsel. First, Hilleby did not apply, or even mention, the California Rules of Professional Conduct. Cf. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000) (motions to disqualify counsel are decided under state law). Accordingly, it provides no guidance on applying Rule 3-310(E). Second, its facts are inapposite. The conflict

---

[2] The Attorneys submitted multiple declarations in support of its Opposition, those from the Bridges & Mavrakakis attorneys professing not to have shared confidential information with its co-counsel, and one from Morrison & Foerster professing not to have received such confidential information. First, these declarations are relevant to one issue only: whether Morrison & Foerster and Wilmer Hale should be disqualified along with Bridges & Mavrakakis. They in no way cure Bridges & Mavrakakis' conflict because the proof of actual sharing of such information is not required. Second, the declarations of Morrison & Foerster and Wilmer Hale attorneys are superficial at best. They do not define confidential information, and unlike the Wilmer Hale declarations, the Morrison & Foerster declarations do not deny receipt of information relating to confidential litigation strategy. At a minimum, the Court should require more detailed and explicit declarations from these firms.

in Hilleby arose because one attorney of the law firm that was attacking the validity of a patent had previously prepared and filed that patent; however, that attorney was not litigation counsel in the action, who had not previously worked for the moving client. 25 U.S.P.Q. 2d at 1415. Unlike the challenged trial counsel in Hilleby, the Attorneys *are* the very ones who possess Samsung's confidential information—not mere colleagues in the same firm who worked in different divisions of the firm. The Hilleby court also refused to allow the challenged firm to represent the client in connection with its attack on the patent, and the client agreed to waive all defenses based on application, prosecution, or issuance of the patent. Id. at 1415-16. In contrast, Apple has not volunteered to waive all of its defenses and claims related to the subjects of Attorneys' knowledge of Samsung's confidential information. In addition, the Hilleby court required that an ethical wall be maintained between the patent prosecutor and litigation counsel. Numerous decisions after Hilleby have since clarified that ethical walls within a firm are ineffective, and the existence of an ethical wall should not be given any weight. See p. 5-6, above. This Court should decline to rely on this factually distinct decision that does not apply California law and conflicts with the general rule that if the matters are substantially related, disqualification is warranted. See, e.g., City and County of San Francisco v. Cobra Solutions Inc., 38 Cal.4th 839, 847 (Cal. 2006).

Similarly, Sumitomo Corp. v. J.P. Morgan & Co., 2000 WL 145747 (S.D.N.Y. Feb. 7, 2000), fails to support Apple's position that counterclaims can be mentally severed from affirmative claims for purposes of assessing whether a substantial relationship exists. No potential breach of the duty of confidentiality was even at issue in Sumitomo. Id. at *3, *3 n.3. Rather, the issue was whether after consolidation of two cases, Paul Weiss, which served as litigation counsel for the plaintiff in one of the cases but which also represented a defendant from the second case in unrelated matters, could continue to represent the plaintiff in the consolidated action under New York Ethical Canon 5, which requires vigorous representation of a client. Id. at *1-2. Finding no ethical violation of New York Ethical Canon 5, the court granted the motion to consolidate, noting that consolidation "does not merge separate lawsuits into a single action and does not make parties to one suit parties in another." Id. at * 5. Unlike in Sumitomo, here, New

York Ethical Canon 5 is not at issue; breach of confidentiality is at issue; there is a single action; and the parties to both the claims and the counterclaims are identical.

Apple's citation to proposed legislation and ethical opinions from other jurisdictions is likewise unavailing. For example, Apple cites to a proposed comment to the proposed California Rules of Professional Conduct, rules that have no binding effect until approved by the California Supreme Court. (See Cal. Bus. & Prof. Code § 6076). Whether that will happen remains to be seen. The Office of the Chief Trial Counsel ("OCTC") for Enforcement of the State Bar of California objected to the inclusion of Comment 4, as being more "appropriate for treatises, law review articles, and ethics opinions," rather than for comments to the actual rules. (Tarango Reply Decl. Ex. B at 6). Similarly unpersuasive is Apple's citation to an advisory opinion from the D.C. Bar Legal Ethics Committee. (Opp. 15.) Tellingly, Apple fails to discuss that opinion, which opines that under the D.C. rules it could be "permissible generally to restrict a representation to avoid substantial overlap with a prior representation," but goes on to conclude that:

> it may not be possible in a particular case. Private lawyers, like former government lawyers, should "err well on the side of caution." . . . Where confidential information from the prior representation could be *useful in or relevant* to the new representation—*however it may be limited or circumscribed*—then the substantial-relationship test is satisfied, and the new representation may not proceed without the consent of the former client.

Id. (internal citation omitted) (emphasis added). Here, Bridges undeniably possesses "confidential information from the prior representation" that "could be useful in or relevant to" its representation for Apple, but failed to obtain Samsung's consent to represent Apple.

Apple also cites without discussion an advisory opinion issued by the New York City Bar Association Committee on Professional and Judicial Ethics (Opp'n 15:22-23) that cautions against the many "ethical pitfalls" involved in attempting to limit the scope of one's representation. N.Y.C. Bar Ass'n Comm. on Prof'l & Judicial Ethics, Formal Op. 2001-3 (2001), 2001 WL 1870201, at *4. The opinion qualifies its conclusion that while such action is permissible, whether the lawyer can actually avoid conflict "depends on the nature and adequacy of such

limitation." Id. Under no circumstances is the attorney permitted to take any "action for the purpose of injuring its other client." Id. at *5. The opinion also observes that circumstances will arise "where a lawyer's attempt to limit the scope of her engagement will be doomed." Id. at *7. The Attorneys' representation of Apple is precisely one such instance. Given the Attorneys' direct and extensive involvement with issues that will be decided at trial, protections cannot now be artificially created between Apple's multiple counsels to acceptably protect Samsung's confidential information.

Finally, Apple's reliance on the declaration of John Steele (Opp. at 18) cannot salvage its position. Mr. Steele, a solo legal practitioner (Steele Decl., Exhibit A), who nowhere describes any previous or current relationship he has or had with Apple or its attorneys, nor discloses whether and how he was compensated for providing a declaration, has no independent knowledge relating to the facts of this action. The Court does not need an expert to tell it that "intellectual property cases are quite complicated," or what "federal courts are concerned" about. (Steele Decl. at ¶¶ 19, 25). Nor does the Court need Mr. Steele's opinion on "what the law is and how it should be applied to the facts of a case." See In re McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d 1239, 1247 (N.D. Cal. 2000) ("The Ninth Circuit has held that expert affidavits on questions of law are improper, and that they should be stricken."); Traumann v. Southland Corp., 858 F. Supp. 979, 985 (N.D. Cal. 1994) ("Expert testimony must embrace factual issues and may not include legal opinions or conclusions."); Summers v. AL Gilbert Co., 69 Cal.App.4th 1155, 1178 (Ct. App. 1999) ("There are limits to expert testimony, not the least of which is the prohibition against admission of an expert's opinion on a question of law."); Newmont Mining Corp., 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005) (the Ninth Circuit has "excluded legal expert testimony concerning both what the law is and how it should be applied to the facts of a case"). The Court is perfectly capable of interpreting and applying the law without inviting a popularity contest to see how many other attorneys each side can persuade to weigh in its favor. Mr. Steele's declaration should be disregarded as improper.

As Samsung explained in its opening motion, Apple's attempts to limit the scope of Bridges' representation in this matter fail as a matter of law and common sense. Courts around

the country have prohibited this type of division when the prior client's confidences cannot be sufficiently protected. The Court should not endorse the Attorneys' conduct in this litigation by allowing them to continue to represent Apple when there are undisputed issues that are substantially related to their previous representation of Samsung.

### B. Limiting the Scope of Representation Will Often Create Conflicts Between Competing Duties to Present and Past Clients

The reluctance of courts to allow for the divided representation Apple proposes is due not only to the need to protect the duty of confidentiality to former clients, but also to protect the duty of loyalty to current clients. See <u>Summerlin v. Johnson</u>, 335 S.E.2d 879, 883-84 (Ga. Ct. App. 1985), (declining a request to sever a claim for punitive damages because the attorney's obligation to tell his current client "anything of benefit," which could include confidential information gained from a former client, would then violate the duty of loyalty to the prior client), abrogation recognized by <u>Crawford W. Long Mem. Hosp. of Emory Univ. v. Yerby</u>, 258 Ga. 720, 721, n.1 (1988) (noting a slight change in the substantial relationship standard).

If the Court considers the non-binding proposed California state court rules as Apple urges (Opp. at 15), it is also necessary to examine Proposed Rule 1.2, which recognizes that a lawyer must overstep even agreed upon limitations because of its other ethical duties to its current client. (Tarango Reply Decl. Ex. C). As comment 7 states:

> Even where the scope of representation is expressly limited, the lawyer may still have a duty to alert the client to reasonably apparent legal problems outside the scope of representation.

The California Bar added this sentence to the Model Rule comment to "alert lawyers that they may be obligated to inform clients of legal problems that fall outside the scope of representation." (Tarango Reply Decl. Ex. D at 10-11). Thus, although the Attorneys and Apple have the right to define the scope of their representation, their agreed upon limitations are nonetheless subject to the other duties imposed by the Rules of Professional Conduct. For example, if the Attorneys had hypothetically learned about a piece of prior art that invalidates the '604 patent while representing Samsung, could they refrain from telling Apple, or hinting to it, and still fulfill their obligations to Apple? Apple's approach invites a "reasonably apparent legal problem[]" sufficient to trigger

the Attorneys' duties to their current client Apple. The law spares the Attorneys this ethical quandary by requiring their disqualification.

IV. **SAMSUNG DID NOT WAIVE ITS OBJECTION TO THE ATTORNEYS' CONFLICT AND DID NOT TACTICALLY "MANUFACTURE" THE CONFLICT**

Apple contends that Samsung was well aware of the Attorneys' representation of Apple as early as September 2010 and waited to raise the issue of conflict after it filed its counterclaims. (Bridges Decl. at ¶ 9; Pieja Decl. at ¶ 5; Opp. at 16-18.) It did not. Apple cites no authority for the proposition that a client can implicitly waive a conflict when the operative ethical rule requires informed *written* consent. Cal. R. Prof'l Conduct Rule 3-310(E). Moreover, the factual record establishes that Samsung was not aware of the Attorneys' representation of Apple until Mr. Bridges made a formal appearance and that its decision to file counterclaims was unrelated to the Attorneys' conflict.

[redacted] did not give Samsung reasonable notice of their representation of Apple in this action. Mr. Pieja was an associate during his time at Kirkland & Ellis when he worked on the *Ericsson* Litigations and had limited interaction with Samsung employees in Korea. (Declaration of Eunha Kim in Support of Samsung's Reply dated August 8, 2011, ("Kim Reply Decl.") at ¶ 4). Due to this unfamiliarity, the [redacted] (Id. at ¶¶ 6-7). Mr. Mavrakakis had not been a part of the Kirkland & Ellis team that represented Samsung in the related matters. [redacted]

It was not until Mr. Bridges entered a formal appearance on June 16, 2011 that Samsung became aware of the Attorneys' representation of Apple in this matter. (Id. at ¶ 8). Within less than two weeks of learning of the conflict, and after discovering that four additional attorneys at Mr. Bridges' firm had represented Samsung in substantially related matters (Id.), Samsung

contacted Apple's counsel regarding this conflict. (See Mot. at 8-9). Thus, Samsung did not delay in bringing this motion.

Apple's insinuations that Samsung trumped up a counterclaim for infringement of the '604 patent to "manufacture" a conflict (Opp. at 18-19) is absurd. Samsung filed the infringement claim originally in April 2011—well before June 16, when Mr. Bridges filed his notice of appearance. Merging the two separate cases by including the '604 patent (along with many others) as part of its counterclaims was only natural after the Court related the two actions and inquired, sua sponte, on June 17 whether Samsung would consolidate the two cases. (June 17, 2011 Hearing Transcript at 12:3-13:5 (attached to the Tarango Reply Decl. as Ex. E)). Moreover, as discussed in Section III.A, above, the Attorneys' extensive prior representation of Samsung in connection with mobile telephony patents warrants disqualification even independent of Samsung's counterclaim for infringement of the '604 patent.

In addition to being factually erroneous, Apple's argument is legally unsound that a genuine conflict should be disregarded because Samsung filed this motion after timely asserting its counterclaims. Neither case Apple cites for the position that a court can decline to disqualify a firm if the client's decision making creates the conflict (Opp. at 18-19) squares with the facts here. The court in Federal Home Mortgage Corp v. La Conchita Ranch Co. declined to disqualify counsel where the cross-complaint filed to create the conflict was found to "have no chance of succeeding on the merits." 68 Cal. App. 4th 856, 862 (Ct. App. 1998). Here, although Apple will surely litigate Samsung's claims vigorously, it did not attempt to argue that Samsung's counterclaims have little chance of succeeding on the merits. Similarly, in Fox Searchlight Pictures, Inc. v. Paladino, 89 Cal. App. 4th 294, 301-302 (Ct. App. 2001), the court refused to disqualify counsel when only a "hypothetical conflict" existed that "was too speculative" to create a conflict. Unlike these situations, the conflict between the Attorneys and Samsung is real, and Apple admits that the prior representation is substantially related to Samsung's counterclaims. (Opp. at 8, n.6).

Apple's attempts to distract from the clear conflict at issue with accusations that Samsung implicitly waived the conflict and is using this disqualification motion as a litigation tactic cannot

-13-    Case No. 11-cv-01846-LHK
REPLY ISO SAMSUNG'S MOTION TO DISQUALIFY BRIDGES & MAVRAKAKIS LLP

cure the Attorneys' breach of their ethical duty under Rule 3-310 to obtain Samsung's written consent regarding representation of Apple against Samsung. The Attorneys' disregard of their ethical duties is impermissible and inexcusable.

V. **APPLE'S REPEATED REQUESTS TO SEVER OR BIFURCATE SAMSUNG'S COUNTERCLAIMS ARE IMPROPER AND SHOULD BE DENIED**

Severance or bifurcation are not appropriate here to avoid disqualification of counsel who ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████ Apple knew a disqualification motion was a risk ████ ████████████ and it should have realized this risk was compounded when ████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ Apple wants its knowing choice of potentially-conflicted counsel elevated over the judicial efficiencies of having all claims tried together and Samsung's ability to have the same jury that hears Apple's claims against it also hear about Apple's infringement of Samsung's patents. Acceptance of Apple's "solution" would punish Samsung for insisting that the duty of confidentiality it is owed be properly preserved. Tellingly, Apple cites no precedent holding that severance of a party's claims is an appropriate "remedy" for a conflict the party seeks relief from. Nor does Apple contend that either of the two other international law firms representing it in this action are incapable of representing it in the areas for which it retained the Attorneys.

In any event, Apple's argument is procedurally improper. Apple has twice now argued that in support of the relief it wants—an expedited trial and to have the Attorneys not be disqualified—that Samsung's claims should be severed or bifurcated. (Dkt. 137 at 5-7). Yet Apple has failed to make a motion to sever under Rule 42(b) of the Federal Rules of Civil Procedure or a motion to bifurcate under Rule 21. Unless and until Apple files an actual motion

to sever or bifurcate, Samsung will not further respond to the merits of Apple's position. In the meantime, the Court should disregard Apple's "request" to sever or bifurcate as improper.

## CONCLUSION

In light of the foregoing, Samsung respectfully requests that the Court grant its motion and issue an order disqualifying its prior firm of Bridges & Mavrakakis from any further representation of Apple in this litigation.

DATED: August 8, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Victoria F. Maroulis
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC