HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE EXPERT COOPER WOODRING**<br><br>Date: October 13, 2011<br>Time: 1:30 P.M.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.     SAMSUNG'S MOTION TO EXCLUDE SHOULD BE DENIED .................................. 1

     A.     Mr. Woodring's Opinions Are Well-Connected to the Facts; Samsung Distorts the Facts and Misconstrues the Law. ......................................... 2

         1.     Samsung Does not Accurately Describe the Prior Art or Mr. Woodring's Testimony. ...................................................................... 3

         2.     Mr. Woodring Considered Functionality and It Does Not Alter the Infringement Analysis Here. ...................................................... 7

         3.     Samsung Points to Other Facts That Were Already Considered by Mr. Woodring or That are Irrelevant to Design Patent Infringement. ..................................................................... 10

         4.     Samsung Points to Minute Details That Do Not Affect the Overall Impression of the Designs. ........................................................ 11

     B.     Mr. Woodring Is Qualified to Opine on the Ordinary Observer, Given His Experience. ............................................................................................. 12

         1.     Mr. Woodring Has Extensive Knowledge, Skill, and Experience Concerning Designs and Ordinary Consumers. ................... 12

         2.     Samsung's Complaints Concerning Mr. Woodring's Qualifications are Not Persuasive. ......................................................... 13

II.     CONCLUSION ................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Avia Group Intl. v. L.A. Gear California, Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988) ................................................................................................ 7, 9

*Best Lock Corp. v. Ilco Unican Corp.*,
    94 F.3d 1563 (Fed. Cir. 1996) ...................................................................................................... 8

*Contessa Food Prods. v. Conagra*,
    282 F.3d 1370 (Fed. Cir. 2002) .................................................................................................... 6

*Crocs, Inc. v. ITC*,
    598 F.3d 1294 (Fed. Cir. 2010) .................................................................................................... 9

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 575 (1993) ............................................................................................................. 3, 10

*Door-Master Corp. v. Yorktowne, Inc.*,
    256 F.3d 1308 (Fed. Cir. 2001) .................................................................................................... 6

*DSU Medical Corp. v. JMSCO, Ltd.*,
    296 F. Supp. 2d 1145 (N.D. Cal. 2003) ........................................................................................ 2

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ............................................................................................. 2, 3, 7

*Gorham Co. v. White*,
    81 U.S. 511 (1871) .................................................................................................... 2, 11, 12, 13

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1234 (Fed. Cir. 2009) .................................................................................................. 11

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ..................................................................................................................... 2

*L.A. Gear v. Thom McAn Shoe Co.*,
    988 F.2d. 1117 (Fed. Cir. 1993), cert. denied 510 U.S. 908 (1993) ...................................... 7, 11

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005) ....................................................................................................... 14

*Richardson v. Stanley Works, Inc.*,
    610 F. Supp. 2d 1046 (D. Ariz. 2009) .......................................................................................... 8

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288, 1294 (Fed. Cir. 2010) .......................................................................................... 8

*Sercu v. Lab. Corp. of Am.*,
    3:09-CV-0619-LRH-RAM, 2011 U.S. Dist. LEXIS 5357 (D. Nev. Jan. 15, 2011) .................3

*Sun Hill Indus. v. Easter Unlimited*,
    48 F.3d 1193 (Fed. Cir. 1995) ........................................................................................12

*Sun-Mate Corp. v. Koolatron Corp.*,
    No. CV10-4735-JST, 2011 U.S. Dist. LEXIS 84726 (C.D. Cal. Aug. 1, 2011) ......................9

*United States v. Chang*,
    207 F.3d 1169, 1172 (9th Cir. 2000) .....................................................................14

*United States v. Laurienti*,
    611 F.3d 530 (9th Cir. Cal. 2010) ................................................................................13

*United States v. Lopez-Martinez*,
    543 F.3d 509 (9th Cir. 2008) ..........................................................................................13

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ..........................................................................................................................1

Fed R. Evid. 702 Notes of Advisory Committee on 2000 Amendments, para. 12, ll. 1-3 .............2

Local Rule 7.3(a) ..........................................................................................................................1

Unhappy with Mr. Woodring's opinions that the ordinary observer would find Samsung's accused products to be substantially the same as Apple's patented designs, Samsung moves to exclude them.[1] Samsung's motion is based on unsupported assertions of Mr. Woodring's supposed lack of expertise and quibbles over the persuasiveness of his opinions. At most, Samsung's arguments go to the weight to be accorded to Mr. Woodring's opinions rather than their admissibility. Key Samsung assertions—e.g., that individual features of Apple's designs serve some function and therefore should be ignored when considering substantial similarity—are based on fundamental misunderstandings of Federal Circuit law.

In addition, Samsung's motion does not accurately describe the prior art or Mr. Woodring's testimony. In particular, as it did in Mr. Woodring's deposition, Samsung has hidden from the Court portions of the Sharp prior art design patent that show how widely it diverges from the iPhone design patents Samsung seeks to invalidate.

Contrary to Samsung's allegations, Mr. Woodring's opinions are admissible because he is well qualified to understand product designs and how the ordinary observer perceives them. Mr. Woodring has also laid a solid foundation for his opinions by considering the facts necessary to analyze infringement under controlling case law. Mr. Woodring is a preeminent design patent expert and his opinions have been admitted in over a dozen design patent infringement trials. Samsung cites no support—whether from case law or contrary expert opinion—justifying the drastic relief it seeks.

## I. SAMSUNG'S MOTION TO EXCLUDE SHOULD BE DENIED

Federal Rule of Evidence 702 governs the admissibility of expert testimony. An expert must be qualified by virtue of his "knowledge, skill, experience, training, or education" and proffered testimony must be based on "sufficient facts or data." Fed. R. Evid. 702.

---

[1] Samsung's 24-page Motion to Exclude appears to violate Local Rule 7.3(a), which requires objections to evidence to be included in an opposition brief. In essence, Samsung filed 24 additional pages of opposition briefing. The Court should deny Samsung's motion for non-compliance with the Local Rule, but if the Court considers the merits, Apple opposes as set forth in this brief.

In cases involving non-scientific testimony, district courts enjoy broad discretion in determining both how to assess reliability and whether it exists. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999). Qualified testimony may be excluded only if a trial court finds that "there is simply too great an analytical gap between the data and the opinion proffered," such that proffered opinions are supported by the mere *ipse dixit* of the expert. *DSU Medical Corp. v. JMSCO, Ltd.*, 296 F. Supp. 2d 1145, 1147 (N.D. Cal. 2003). If there's a "sufficient connection" between the facts and the proffered opinion, "the opinion is admissible." *Id*. at 1156. At bottom, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Notes of Advisory Committee on 2000 Amendments, para. 12, ll. 1-3.

The opinions at issue here concern the "ordinary observer" test for design patent infringement, which was set forth in the Supreme Court's *Gorham* decision and re-confirmed in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677-78 (Fed. Cir. 2008). Infringement exists where the ordinary observer (familiar with the prior art) would find the asserted design and the accused product to be substantially the same. *Id*. The Supreme Court in *Gorham* described "ordinary observers" as people possessing "ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." *Gorham Co. v. White*, 81 U.S. 511, 528 (1871).

Samsung argues that (1) Mr. Woodring's opinions are not based on sufficient facts; and (2) he is not qualified to testify as to the likely perception of an ordinary observer in assessing the substantial similarity of a patented design and an accused product. Samsung's arguments are unavailing.

**A.  Mr. Woodring's Opinions Are Well-Connected to the Facts; Samsung Distorts the Facts and Misconstrues the Law.**

Mr. Woodring's opinions—that the ordinary observer would find the accused Samsung devices substantially the same as Apple's patented designs—are based on and connected to the facts of this case. In rendering his opinions, Mr. Woodring (1) analyzed the asserted Apple design patents, (2) familiarized himself with the prior art by studying all the art cited during prosecution of the asserted design patents (and art identified by Samsung), and (3) performed a

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE EXPERT COOPER WOODRING
CASE NO. 11-CV-01846-LHK
sf-3040681

2

1  detailed comparison of the physical Samsung devices against the Apple design patents.
2  (Declaration of Patrick J. Zhang In Support of Apple's Opposition to Samsung's Motion to
3  Exclude ("Zhang Decl.") Ex. A at 4.) Mr. Woodring then took into account his extensive
4  experience with ordinary consumers to determine the degree of observation they would bring to
5  the designs to arrive at his opinions. (*Id.* at 2, 6.)

6  Mr. Woodring's analysis is in line with the design patent infringement test set forth in
7  *Egyptian Goddess* and is admissible. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 575, 592-93
8  (1993) (the trial court's sole purpose is to determine the reliability of a particular expert's opinion
9  through a preliminary assessment of the methodologies supporting such opinion). While
10 Samsung may not agree with Mr. Woodring's conclusions and may dispute the facts at issue,
11 neither of these is a proper ground for excluding an expert's testimony. *See Sercu v. Lab. Corp.*
12 *of Am.*, 3:09-CV-0619-LRH-RAM, 2011 U.S. Dist. LEXIS 5357, at *4-5 (D. Nev. Jan. 15, 2011)
13 ("[A] court should not strike expert testimony under *Daubert* simply because the parties dispute
14 the expert's ultimate conclusions . . . Furthermore, [arguments involving factual disputes between
15 the parties] go to the weight that should be afforded to the expert testimony and not the
16 admissibility of the evidence.").

17  **1. Samsung Does not Accurately Describe the Prior Art or Mr. Woodring's Testimony.**
18

19  Samsung complains that Mr. Woodring did not analyze all the prior art belatedly
20 identified by Samsung. That was neither possible nor required by governing law. Under
21 *Egyptian Goddess*, "when the claimed and accused designs are not plainly dissimilar," the
22 infringement analysis "will benefit from a comparison of the claimed and accused designs with
23 the prior art." 543 F.3d at 678. But "if the accused infringer elects to rely on the comparison
24 prior art as part of its defense against the claim of infringement, the burden of production of that
25 prior art is on the accused infringer." *Id.* With this standard in mind, Mr. Woodring properly
26 considered the prior art over which the Apple designs were issued and the prior art Samsung had
27 identified as of the date he formed his opinions.
28

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE
EXPERT COOPER WOODRING
CASE NO. 11-CV-01846-LHK
sf-3040681

3

1       Samsung has now identified some additional prior art in its opposition to Apple's Motion for a Preliminary Injunction. Mr. Woodring did not ignore that art. He was simply under no obligation to perform additional prior art searching on behalf of Samsung. The newly-cited art does not refute Mr. Woodring's infringement analysis. Samsung fails to identify a single prior art reference that would alter Mr. Woodring's analysis for the 'D889 tablet design. As to the iPhone designs, the Sharp JP 1241638 reference on which Samsung now relies falls within the prior art analysis Mr. Woodring previously provided for the 'D087 and 'D677 patents. Indeed, Samsung resorts to an inaccurate presentation of that prior art in its effort to tar Mr. Woodring's opinions.

      Samsung alleges that "Mr. Woodring admitted that [the Sharp Design Patent reference] is substantially the same as the designs in Apple's D'677 and D'087 patents." (Mot. at 15.) Samsung's characterization of the deposition testimony is not complete or accurate, just as its presentation of the Sharp prior art at Mr. Woodring's deposition and in its briefing is incomplete and therefore misleading. In reality, Samsung extracted a single view of the Sharp reference (which contains 14 separate views) and asked Mr. Woodring to opine on the spot (despite his reservations) whether that single view was "substantially the same" as Apple's 'D087 and 'D677 designs. Counsel for Apple properly objected to this vague and incomplete hypothetical. As shown on the following page, this single front view of the Sharp reference hides major differences between the Sharp design and the asserted Apple designs.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE EXPERT COOPER WOODRING
CASE NO. 11-CV-01846-LHK
sf-3040681

4

| Samsung's Deposition Exhibit 67 | Undisclosed Views of the Sharp Reference (JPD No. 1241638) | Apple's 'D087 and 'D677 Design Patents |
|---|---|---|
| | | |

In particular, side and perspective views of the Sharp reference reveal that, unlike Apple's 'D087 design, the Sharp design has (1) a "cambered" front surface that is not flat and (2) a "bezel" that is much thicker, not substantially uniform, and without an inwardly sloping profile. And, as pointed out repeatedly by Mr. Woodring, the Sharp reference does not have (3) a clear, black-colored front surface, like Apple's 'D677 design. (Zhang Decl. Ex. B at 212:4-213:3.)

Rather than own up to these obvious differences between the Sharp design and Apple's asserted designs, or provide Mr. Woodring with adequate information in its hypothetical, Samsung declined to show them to Mr. Woodring during his deposition (and now fails to show them to the Court in this motion and its Opposition to Apple's Motion for Preliminary Injunction).

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE EXPERT COOPER WOODRING
CASE NO. 11-CV-01846-LHK
sf-3040681

5

(Zhang Decl. Ex. B at 224:3-225:11; 217:22-218:1.)  Federal Circuit law requires comparison of all available views for the substantial similarity analysis, yet Samsung inaccurately characterizes Mr. Woodring's deposition testimony as an admission based on the entirety of the Sharp design. *See Contessa Food Prods. v. Conagra*, 282 F.3d 1370, 1381-1382 (Fed. Cir. 2002) (all views of a design must be compared to determine substantial similarity); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1314 (Fed. Cir. 2001) (finding that the jury could have found no anticipation due to differences in the rear panels of the prior art and the claimed design, even though their front panels "look very similar").

With full knowledge that Mr. Woodring pointed out differences between even the single figure of the Sharp design and Apple's 'D677 and 'D087 designs and explained why he did not have adequate information to answer certain hypothetical questions, Samsung overstates what Mr. Woodring "admitted" at his deposition.  (Zhang Decl. Ex. B at 227:10-229:18.)

Samsung's entire tack in its questioning of Mr. Woodring appears to have been designed to create a misleading record for its preliminary injunction opposition and this motion. Samsung's attorney repeatedly asked Mr. Woodring to make unsupported assumptions about what the other views of the Sharp design might disclose in an attempt to elicit an "admission" that the overall Sharp design was "substantially the same" as Apple's designs.  (Zhang Decl. Ex. B at 224:3-229:18.)   As Mr. Woodring appropriately replied to a question regarding whether the overall Sharp design was "substantially the same as the 087 design in the eyes [] of the ordinary observer":

> So my answer would have to be it's impossible to make that determination because you're asking me to ignore the fact that the 087 is claiming a flat surface with an inset rectangular display screen and things like that, and I've already testified I can't tell those things about this Exhibit 67 [single front view of the Sharp design], so how can I possibly arrive at a conclusion that the ordinary observer would think the designs are substantially the same?  I simply can't ignore claimed elements of the 087 to – to – What you're doing is you're eliminating from the 087 the differences between it and the Exhibit 67 and then asking me, well, isn't what's left over the same?

(Zhang Decl. Ex. B at 224:20-225:9.)

1   When the confusing and even misleading record created by Samsung is cleared away, the
2   Sharp reference is no different than the prior art Mr. Woodring already considered: it lacks key
3   features that Apple's designs and Samsung's accused products share in common. (Zhang Decl.
4   Ex. A at ¶¶ 18, 24, 33, 39.) As will be set forth in further detail in Apple's reply in support of its
5   preliminary injunction motion, the Sharp reference fails to disclose at least:

- the flat, clear, black-colored rectangular front surface with four evenly rounded corners, claimed in Apple's 'D677 design;
- the flat rectangular front surface with four evenly rounded corners; and
- the thin, continuous bezel surrounding the rectangular front surface that is substantially uniform in appearance and having an inwardly sloping profile, claimed in Apple's 'D087 design.
- (See above comparison chart.)

Accordingly, Mr. Woodring did not "ignore" relevant art in forming his infringement opinion. The purported "admissions" concerning the prior art that Samsung has recently cited rely on an inaccurate partial view, are legally irrelevant, and do not undercut the factual basis for Mr. Woodring's opinion.

### 2. Mr. Woodring Considered Functionality and It Does Not Alter the Infringement Analysis Here.

Samsung also complains that Mr. Woodring did not "filter out" elements of the asserted Apple designs due to their alleged functionality when forming his infringement opinions. Samsung's suggestion that any design patent feature that serves a function should be erased via claim construction is simply wrong. Federal Circuit law does not require such a practice, which would absurdly delete all but the most trivial, unnecessary ornamentation in a design patent. Rather, functionality analysis for purposes of claim construction is limited to the identification of those elements of a design that are "purely functional," such that their particular design is "dictated by" function and incapable of alternate form. *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d. 1117, 1123 (Fed. Cir. 1993), cert. denied 510 U.S. 908 (1993) (citing *Lee v. Dayton Hudson* and *Gorham v. White*); accord *Avia Group Intl. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988); see also *Egyptian Goddess*, 543 F.3d at 680.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE
EXPERT COOPER WOODRING
CASE NO. 11-CV-01846-LHK
sf-3040681

7

1    In *Richardson v. Stanley Works, Inc.*, the Federal Circuit affirmed a claim construction for
2    a multi-purpose tool that discounted "elements that are driven purely by utility":

> The jaw, for example, has to be located on the opposite end of the hammer head such that the tool can be used as a step. The crowbar, by definition, needs to be on the end of the longer handle such that it can reach into narrow spaces. The handle has to be the longest arm of the tool to allow for maximum leverage. The hammer-head has to be flat on its end to effectively deliver force to the object being struck. As demonstrated by the prior art, those are purely functional elements whose utility has been known and used in the art for well over a century.

597 F.3d 1288, 1294 (Fed. Cir. 2010).

It is important to note, however, that the *Richardson* court did not condone the wholesale deletion of any element having a function, e.g., the hammer-head, crow-bar, handle, and jaw. Rather, the Federal Circuit approved the district court's identification of only those aspects of the design *dictated by function and incapable of alternate design* (e.g., the configuration of the hammer-head and jaw at one end of the handle and the crow-bar at the other), while retaining the ornamental aspects of those very same elements, which "can be altered without adversely affecting [function]." *See Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1050 (D. Ariz. 2009) (district court's claim construction).  Therefore, as stated in *Egyptian Goddess*, only those aspects of a design that are "purely functional" may be identified for purposes of claim construction.  543 F.3d at 680.  The Federal Circuit has consistently held that "[a] design is not dictated solely by its function when alternative designs for the article of manufacture are available." *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) (citing *L.A. Gear,* 988 Fed. 2d. at 1123; *Hupp v. Siroflex of Am.*, 122 F.3d 1456, 1460-61 (Fed. Cir. 1997)).  Samsung has not suggested that there are no alternative smartphone or tablet computer designs.

As Mr. Woodring testified here, he made an assessment of the functionality of the asserted Apple designs and determined based on his industrial design experience that none of the claimed design features was dictated by function.  (Zhang Decl. Ex. B at 48:18-50:10.)

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE
EXPERT COOPER WOODRING
CASE NO. 11-CV-01846-LHK
sf-3040681

8

1   In sum, while individual features of Apple's designs may in some way enhance the utility
2   of a functional commercial product, the particular design of these of these features is aesthetic
3   and not dictated by function—they can be rendered in alternative forms to achieve the same
4   function. *See Avia Group Int'l, Inc.*, 853 F.2d at 1563 ("There is no dispute that shoes are
5   functional and that certain features of the shoe designs in issue perform functions.  However, a
6   distinction exists between the functionality of an article or features thereof and the functionality
7   of the particular design of such article or features thereof that perform a function.  Were that not
8   true, it would not be possible to obtain a design patent on a utilitarian article of manufacture.").

9   With a correct application of the governing law, Samsung's argument about the
10  "functionality" of Apple's design features simply evaporates.  While Mr. Woodring agreed that
11  some features of Apple's iPhone and tablet designs may serve a function, nowhere does he state
12  that a function cannot be achieved with an alternative design.  To the contrary, Mr. Woodring
13  points out, for example, that screen borders (for hiding components) can be white just as easily as
14  black, that a bezel is not needed at all, that the speaker can easily be round rather than a slot, and
15  that a glass surface over the entire front of a tablet can be replaced with a traditional frame and
16  glass assembly.  (Zhang Decl. Ex. B at 132:9-137:10; 174:12-22.)  Accordingly, Mr. Woodring's
17  consideration of the entire illustrated patented design is not precluded by the alleged
18  "functionality" of Apple's individual design features—which are born of aesthetic choice, not
19  utilitarian mandate.[2]

---

[2] Such a result should not be surprising.  In a case involving the design for Crocs shoes (aspects of which surely serve some function), the Federal Circuit found error in the ITC's detailed verbal claim construction and held that "[t]he administrative judge and the Commission needed to apply the ordinary observer test to 'the design shown in Figures 1-7 [of the patent]." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *see also Sun-Mate Corp. v. Koolatron Corp.*, No. CV10-4735-JST (JCEx), 2011 U.S. Dist. LEXIS 84726, at *9-10 (C.D. Cal. Aug. 1, 2011) (referring to figures in construing design patents directed to portable coolers "[b]ecause the preferable course ordinarily will be for a district court not to attempt to construe a design patent claim by providing a detailed verbal description of the claimed design.").

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE
EXPERT COOPER WOODRING
CASE NO. 11-CV-01846-LHK
sf-3040681

9

        **3.    Samsung Points to Other Facts That Were Already Considered by Mr. Woodring or That are Irrelevant to Design Patent Infringement.**

Samsung alleges that Mr. Woodring did not factor into his infringement opinion the "sophistication of the consumer" i.e., the increased care allegedly taken by purchasers of smartphones and computer tablets given their cost and attendant service contracts. Although Mr. Woodring agreed with the platitudes that smartphones are on the more expensive side, and that consumers pay more attention when purchasing more expensive items, nothing in the record suggests that these ideas were introduced to Mr. Woodring by Samsung or were ignored in forming Mr. Woodring's infringement opinion. In fact, Mr. Woodring knew the price range for the accused Samsung phones, and stated that his infringement opinion was based on knowledge of "the habits and customs of [] ordinary customers in the retail environment, including the length of time a typical customer spends making a purchase decision for consumer products." (Zhang Decl. Ex. A at ¶ 7.) If Samsung's argument is that Mr. Woodring didn't sufficiently consider every arguably relevant fact, that argument goes to the weight of evidence and does not create the "analytical gap" required for preclusion. *See Daubert*, 509 U.S. at 596 (cross-examination and presentation of contrary evidence are "traditional and appropriate means" of attacking admissible testimony).

Samsung also criticizes Mr. Woodring because he did not ask for or consider consumer research on *why* consumers purchase Apple products. But Samsung fails to explain how research on the reasons *why* consumers buy *Apple* products would affect *how* the ordinary observer would perceive *Samsung* products as compared with Apple's patented designs. The infringement analysis here is whether the ordinary observer would find Samsung's products to have substantially the same overall design as Apple's designs, and not *why* the ordinary observer purchases one product or another. In fact, Mr. Woodring expressed skepticism of this type of "why did you buy X" consumer research and whether it has any application to the hypothetical

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE EXPERT COOPER WOODRING
CASE NO. 11-CV-01846-LHK
sf-3040681
10

ordinary observer analysis.[3] (Zhang Decl. Ex. B at 162:15-163:13; 193:10-194:23.) Regardless, nothing supports Samsung's insistence that an opinion concerning the ordinary observer must be founded on this kind of specific consumer study rather than broad-based experience. *See Gorham*, 81 U.S. at 530 (taking into account testimony by persons experienced in trade that customers would find accused design substantially the same as patented design).

### 4. Samsung Points to Minute Details That Do Not Affect the Overall Impression of the Designs.

Samsung claims that Mr. Woodring ignored key differences between the asserted designs and its accused products. Samsung's argument is belied by its recitation of minute details that then follows: e.g., Samsung phones have a 1.66 aspect ratio versus the 1.50 aspect ratio of the iPhone design; Samsung phones have logos[4] and longer speaker slots. These differences do not contradict Mr. Woodring's conclusion that the overall appearances of the accused Samsung products are substantially the same as the patented Apple designs. Mr. Woodring's analysis is entirely consistent with Federal Circuit law and its emphasis on the overall appearance of the design and any *significant* differences, rather than lists of minor differences. *See Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1234, 1243 (Fed. Cir. 2009) ("[T]he mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another.").

Unable to avoid the similarities between its products and Apple's patents, Samsung resorts to claiming that Mr. Woodring "manipulated" evidence by scaling the photographs of the Samsung phones to match the height of the design patent drawings. Samsung's argument is refuted by the law and by its own actions.[5] As Samsung well knows, there is no scale to the

---

[3] Apple intends to respond to Samsung's assertion that "design doesn't matter" in its reply in support of its motion for a preliminary injunction.

[4] As a matter of law, logos and trade names on a product cannot be used to avoid design patent infringement. *See L.A. Gear*, 988 Fed. 2d at 1126.

[5] Famously, the Statue of Liberty was protected by a design patent, which was reportedly used to generate revenue from sales of souvenir statuettes. (Zhang Decl. Ex. E.) Samsung's

(Footnote continues on next page.)

1    protection offered by a design patent, and an accused product cannot escape infringement simply
2    by being larger or smaller than a patented design. *See Sun Hill Indus. v. Easter Unlimited*,
3    48 F.3d 1193, 1196-1197 (Fed. Cir. 1995) (district court erred in considering size of the accused
4    product in finding difference with design patent). Neither Samsung's laundry list of differences
5    in minor details nor the size of Samsung's products rebuts Mr. Woodring's opinions, let alone
6    requires their exclusion.

        **B.**    **Mr. Woodring Is Qualified to Opine on the Ordinary Observer, Given His Experience.**

9    Mr. Woodring is not only a pre-eminent industrial designer—having published and
10   spoken widely around the world on industrial design, testified before Congress regarding
11   industrial design legislation, and received his industry's highest personal honor (the IDSA's
12   Personal Recognition Award)—he also worked for over 15 years as a designer at retailer J.C.
13   Penney. (Zhang Decl. Ex. D.) During his time there, Mr. Woodring designed products for J.C.
14   Penney, studied the behavior of consumers when they shopped for consumer electronics, and
15   conducted interviews and surveys of those shoppers. (Zhang Decl. Ex. B at 82:9-13; 198:21-
16   199:9; 200:2-10.)

        **1.**    **Mr. Woodring Has Extensive Knowledge, Skill, and Experience Concerning Designs and Ordinary Consumers.**

19   Based on Mr. Woodring's work in the field and contact with everyday consumers over a
20   15-year period, he possesses knowledge and experience on the "ordinary acuteness," "ordinary
21   intelligence," and the "degree of observation" brought to bear by an ordinary purchaser of
22   consumer electronics. *See Gorham*, 81 U.S. at 528. For example, Mr. Woodring's experience
23   allows him to understand the time an ordinary purchaser would spend on an electronics purchase

---

(Footnote continued from previous page.)

allegation of "manipulation" is surprising, since Samsung's opposition to Apple's preliminary injunction motion scales prior art devices to the height of Apple's iPhone design. (Samsung's Opposition to Apple's Motion For a Preliminary Injunction (Filed Under Seal) at 3, 7, 8.)

1  of a certain value and the degree of visual acuity the ordinary purchaser would bring to his
2  comparisons of designs.  (Zhang Decl. Ex. B at 95:10-21; 107:8-15.)
3        This deep knowledge and experience with everyday consumers' level of perception is
4  helpful to the trier of fact, as it may be difficult for even the Court to maintain an "ordinary
5  observer" perspective when the designs at issue are analyzed at length and in excruciating detail
6  during this litigation.  It is well settled that an expert may be qualified to testify based on
7  knowledge and experience alone.  *See Gorham*, 81 U.S. at 530 (taking into account testimony by
8  persons experienced in trade that customers would find accused design substantially the same as
9  patented design); *United States v. Lopez-Martinez*, 543 F.3d 509, 514-515 (9th Cir. 2008) (border
10  patrol agent qualified to testify as to patterns and methods common among smugglers); *United*
11  *States v. Laurienti*, 611 F.3d 530, 548 (9th Cir. Cal. 2010) (rejecting argument that expert was not
12  qualified to testify as to NASD rules based on prior work experience).  Mr. Woodring is
13  extremely well informed and well-qualified, and his expert opinion testimony has been admitted
14  in over a dozen design patent infringement trials, including testimony as to the perceptions and
15  likely conclusions of the ordinary observer concerning the substantial similarity of two designs.
16  (Declaration of Cooper C. Woodring in Support of Apple's Opposition to Samsung's Motion to
17  Exclude Ordinary Observer Opinions, filed concurrently herewith.)

      **2.    Samsung's Complaints Concerning Mr. Woodring's Qualifications are Not Persuasive.**

20        Samsung criticizes Mr. Woodring's design and retail experience, but none of its
21  arguments holds water.  Samsung first argues that Mr. Woodring has not personally designed a
22  smartphone or tablet computer, and therefore cannot be qualified to opine as to the ordinary
23  observer's perceptions of these products as compared with a patented design.  But
24  Mr. Woodring's experience permits him to understand the degree of observation brought to bear
25  by the ordinary observer to consumer electronics and to apply that degree of observation here.
26  Neither this analysis nor a conclusion about whether two designs would be considered
27  "substantially the same" requires Mr. Woodring himself to have designed the device at issue.
28  Samsung cites no case law requiring such narrowly-defined experience as a prerequisite to giving

1  design patent infringement opinions.  Mr. Woodring has designed numerous consumer electronics
2  in his career and is an expert on industrial design generally.  (Zhang Decl. Ex. A at ¶ 5.)
3       Samsung then complains that Mr. Woodring's retail experience comes from a different
4  retail environment and a time when smartphones and tablet computers were not yet available.
5  Once again, Samsung attempts to impose a requirement that an expert have extensive work
6  experience concerning the exact facts of the case to offer an opinion, when that is not required.
7  Consumer perceptions and product design principles do not gyrate wildly with the introduction of
8  every new consumer product.  (*See* Zhang Decl. Ex. B at 193:2-6.)
9       Even though J.C. Penney did not sell smartphones and tablet computers when
10 Mr. Woodring worked there, he did study consumers buying the price equivalents of that day, e.g.,
11 televisions and stereo equipment.  The experience Mr. Woodring gained in observing the level of
12 care and degree of observation used by ordinary consumers shopping for these consumer
13 electronics at J.C. Penney is applicable to the level of care and degree of observation used by
14 ordinary consumers shopping for smartphones and tablet computers.  And while an Apple or
15 AT&T store may be a somewhat different retail environment than J.C. Penney, all these
16 environments allow the visual inspection and physical handling of consumer electronics.
17 Samsung cannot point to any evidence that the changing retail environment or passage of time has
18 had any substantial effect on how ordinary observers perceive the design of consumer
19 electronics.[6]
20      Samsung may be unhappy that Apple has engaged as an expert witness one of America's
21 pre-eminent design experts who has extensive knowledge of the consuming public, and may be
22 even less happy that his opinions support Apple's contention that Samsung mimics Apple's

---

[6] *United States v. Chang*, which Samsung relies on, merely affirmed the obvious—that an expert with no training in identifying counterfeit securities was not qualified to opine on the authenticity of the instrument at issue.  207 F.3d 1169, 1172 (9th Cir. 2000).  *Chang* does not support Samsung's proposition that an expert qualified by decades of experience in product design and consumer perceptions in purchasing consumer electronics like televisions and stereos cannot be qualified to opine as to consumer perceptions in purchasing latter day equivalents such as smartphones and tablet computers.  Samsung also cites to the "holding" of *Nimely v. City of New York*, 414 F.3d 381, 399 n. 13 (2d Cir. 2005), but a closer inspection reveals that this case offers mere *dicta* in a footnote.

patented designs. But Samsung has failed to demonstrate that Mr. Woodring so lacks the knowledge and experience to opine as to the ordinary observer's perceptions of these designs that his opinions must be excluded. Mr. Woodring is qualified to opine on the ordinary observer's perception of these designs based on his many years of experience in designing consumer products and observing and studying consumer behavior in purchasing consumer electronics.

## II. CONCLUSION

Mr. Woodring is qualified to opine as to the ordinary observer analysis and his opinions are supported by sufficient facts. To the extent Samsung disagrees, it can contest the weight to be given to Mr. Woodring's opinions, but that does not make his opinions inadmissible. Accordingly, Samsung's Motion to Exclude Ordinary Observer Opinions of Apple Expert Cooper Woodring should be DENIED.

Dated: September 13, 2011          MORRISON & FOERSTER LLP

                                   By:    /s/ Michael A. Jacobs
                                          Michael A. Jacobs

                                          Attorneys for Plaintiff
                                          APPLE INC.

1 **ATTESTATION OF E-FILED SIGNATURE**

I, JASON R. BARTLETT, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that Michael A. Jacobs has concurred in this filing.

Dated: September 13, 2011        By:    /s/ Jason R. Bartlett
                                            Jason R. Bartlett

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE EXPERT COOPER WOODRING
CASE NO. 11-CV-01846-LHK
sf-3040681

16