QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO COMPEL**<br><br>Date: Wednesday, September 28, 2011<br>Time: 10:00 a.m.<br>Courtroom: 5, 4th Floor<br>Honorable Paul S. Grewal |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................................... 1

ARGUMENT ................................................................................................................................... 5

I.  SAMSUNG HAS ALREADY PRODUCED THE MATERIALS APPLE SEEKS, AND HAS PROPERLY OBJECTED TO THOSE OF APPLE'S REQUESTS CALLING FOR IRRELEVANT DOCUMENTS ................................................................ 5

    A.  Samsung Already Has Produced Documents Related To The Development And Design Of The Accused Products. ................................................................. 5

    B.  By Apple's Own Admission, Samsung Already Has Satisfied Apple's Request For Documents Related To Lee Don-Joo. ..................................................... 6

    C.  Samsung Has Already Produced Hundreds Of Marketing Documents .................... 7

    D.  Samsung Has Produced Customer Surveys Despite Their Irrelevance ..................... 7

    E.  Samsung Has Properly Objected To Apple's Irrelevant And Overly Burdensome Request For Documents Regarding All Instances Of Consumer Confusion ................................................................................................................. 9

II. APPLE'S DEMAND FOR SANCTIONS IS BASELESS, UNTIMELY, PROCEDURALLY IMPROPER, AND CONTRARY TO SETTLED LAW ................... 11

CONCLUSION .............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bermudez v. Duenas*,
   936 F.2d 1064 (9th Cir. 1991) ................................................................................................. 8

*Crossbow Technology, Inc. v. YH Technology*,
   2007 WL 926876 (N.D. Cal. Mar. 26, 2007) ........................................................................ 11

*KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.*,
   997 F.2d 1444 (Fed. Cir. 1993) ............................................................................................... 9

*Pennar Software Corp. v. Fortune 500 Systems Ltd.*,
   2001 WL 1319162 (N.D. Cal. Oct. 25, 2001) ....................................................................... 11

*Personal Audio LLC v. Apple et al.*,
   No. 9:09-cv-111 (E.D. Tex. June 16, 2011) .......................................................................... 12

*Sun Hill Industries, Inc. v. Easter Unlimited, Inc.*,
   48 F.3d 1193 (Fed. Cir. 1995) ............................................................................................ 8, 9

*U.S. for Use and Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*,
   857 F.2d 600 (9th Cir. 1988) ................................................................................................ 12

*U.S. v. $40,955.00 in U.S. Currency*,
   554 F.3d 752 (9th Cir. 2009) ................................................................................................ 12

## Statutes

Civil L.R. 7-8 ................................................................................................................................ 11

Civil L.R. 37-1(a) ......................................................................................................................... 11

Civil L.R. 37-2 ............................................................................................................................... 8

Fed. R. Civ. P. 26(a) ...................................................................................................................... 4

Fed. R. Civ. P. 26(b)(2)(C)(iii) .................................................................................................... 10

**INTRODUCTION**

In its motion to compel, Apple complains that it has not received five categories of documents that it claims are necessary to press its pending motion for a preliminary injunction. Contrary to Apple's accusations, Samsung has produced documents responsive to four of the five categories of documents. The fifth category — the only category that presents a live controversy — is irrelevant to the issues to be decided on Apple's preliminary injunction motion. Likewise, Apple's half-hearted sanctions request is devoid of merit and procedurally improper, and should be rejected out of hand.

Apple's motion to compel is just the latest chapter in Apple's effort to cobble together evidentiary support for its claims where there is none. Desperate to hold at bay legitimate competition, Apple is resorting to tactical litigation maneuvering to maintain its overwhelming market dominance. With the hearing on its preliminary injunction motion less than three weeks away, Apple has resorted to baseless accusations of document withholding and destruction in hopes of distracting the Court from the merits. In reality, Samsung has already produced responsive documents that are relevant to Apple's preliminary injunction motion, and has more than met the Court's directives that the parties engage in limited and focused discovery at this stage. Apple's motion should be denied.

**FACTUAL BACKGROUND**

**Procedural History.** On July 1, 2011, Apple filed a motion for a preliminary injunction claiming that four Samsung products (the Infuse 4G, Galaxy S 4G, Droid Charge, and Galaxy Tab 10.1) allegedly infringe three Apple design patents and one utility patent. (*See* Apple's Motion for a Preliminary Injunction (Dkt. No. 86) at i, 1 ("Apple's P.I. Motion").) Apple admits that the three Apple design patents, Nos. D618,677, D593,087, and D504,889 ("hardware design patents") at most cover only features of the external design of the products, such as the "device's casing, screen [when it is off], bezel, buttons, ports, speaker, and speaker slots." (*See, e.g.*, Apple's Requests for Production of Documents and Things Relating to Apple's Motion for a Preliminary Injunction – Set One (Chan Decl., Ex. 4), at 1.) As for the utility patent, U.S. Patent 7,469,381, it

is directed to the feature on a touch screen "when one uses a finger to drag a displayed page past its bottom edge . . . and releases the finger, [and] the page bounces back to fill the full screen." (Apple's P.I. Motion at 4.)   Apple bases its preliminary injunction motion on these features of the four Samsung accused products.

On July 18, 2011, the Court entered an order governing discovery relating to Apple's preliminary injunction motion that limited such discovery to information "narrowly tailored to address the preliminary injunction motion" such as "discovery related to prior art, depositions of declarants, and other discovery related to infringement and validity issues."   (Order Setting Briefing and Hearing Schedule for Preliminary Injunction Motion (Dkt. No. 115) at 2.)[1] Additionally, the Court "encourage[d] the parties to make all efforts to keep discovery requests reasonable in scope and narrowly tailored to address the preliminary injunction motion."   (*Id.*)   The Court also set a tight and expedited schedule, requiring (among other things) that Apple seek discovery from Samsung by August 26, 2011, and that Samsung serve objections to that discovery by August 31, 2011.   (*Id.*)

Despite these clear instructions from the Court, Apple did almost nothing to obtain preliminary injunction-related documents for six full weeks following the Court's issuance of the expedited preliminary injunction discovery schedule, serving only eight document requests during that entire time.   Finally, on August 26, 2011 — the last possible day to serve preliminary injunction-related discovery and just three business days before Samsung's objections to Apple's discovery requests were due pursuant to the Court's scheduling order — Apple dumped over 60 document requests on Samsung and demanded that they be fulfilled within two weeks.   (Chan Decl., Ex. 6.)   Contrary to the Court's directives, Apple's requests sought documents regarding products and issues not raised in Apple's preliminary injunction motion or in Samsung's opposition thereto.   (*See, e.g.*, Chan Decl., Ex. 4 (Request for Production No. 1, calling for

---

[1]   In contrast to its position now, Apple has vehemently argued that the scope of preliminary injunction discovery should be limited solely to the four Samsung products at issue.   (*See, e.g.*, Apple's Opp. to Samsung's Motion to Compel (Dkt No. 222) at 1, 4, 13.)

-2-   Case No. 11-cv-01846-LHK
SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO COMPEL

documents pertaining to Samsung's design of "any feature" of the four Samsung products in comparison to the Apple products, not limited to the accused features at issue in the preliminary injunction motion); *Id.* Ex. 5 (Request for Production No. 214, calling for documents relating to "any instances of consumer confusion," despite the fact that Apple has not asserted trademark infringement claims in its preliminary injunction motion).) Apple also has demanded information about the four products "as released anywhere in the world," rather than limiting its requests to the domestic scope of its preliminary injunction motion. (Chan Decl., Exs. 2-4, 6.) And nowhere in its preliminary injunction document requests did Apple even ask for documents regarding Samsung's document retention policies. (*Id.*) Nor did Apple serve a deposition notice upon Samsung regarding Samsung's document retention policies. (Chan Decl., Ex. 5.)

**Meet and Confer History.** From August 31, 2011 (when Samsung timely served its written objections to Apple's preliminary injunction document requests) to September 16, 2011, the parties repeatedly met and conferred by email, letter, telephone, and in person. As set forth in the accompanying attorney declaration (Chan Decl., ¶¶ 12-39), however, Apple refused to narrow many of its requests, or even to identify the points of disagreement, and appeared to be focused on bringing a motion to compel regardless of the outcome of the meet and confer efforts.[2]

**Samsung's Document Productions.** In accordance with the Court's July 18, 2011 Order, Samsung produced the bulk of its rolling production of documents on September 12, 2011. Because Apple insisted on receiving documents a week prior to each deposition, Samsung also front-loaded the production of the specific expert and prior artist documents, producing those materials *prior* to September 12. (Jenkins Decl., ¶ 2.) After further meet and confer sessions

---

[2] Apple filed its motion to compel on September 20, 2011, despite the progress made during the parties' meet and confer efforts. Apple filed the motion publicly — rather than under seal — despite the fact that the motion and the supporting Declarations of Minn Chung and Jason Bartlett described the contents of Samsung's highly confidential documents. Upon discovering Apple's breach of the protective order, Samsung immediately contacted Apple and insisted that Apple remove the Motion and supporting materials from the public ECF docket. Though Apple attempted in vain to deny any wrongdoing, it ultimately complied with Samsung's request. Notably, Apple's violation of its confidentiality obligations has not been an isolated incident.

with Apple in which Apple in some respects clarified and narrowed its requests, Samsung conducted further investigations and produced additional documents responsive to Apple's requests.   In total, Samsung has produced 32,540 pages of preliminary injunction-related documents (compared to Apple's production of just 14,924 pages of such documents).   (Jenkins Decl., ¶¶ 3, 5.)   Included within Samsung's production are over 1,500 emails.   (Jenkins Decl., ¶ 3.)

**Samsung's Document Retention Efforts.**   On July 1, 2011, before any document requests were exchanged or documents produced, Apple's counsel demanded that Samsung confirm that it had taken steps to preserve evidence, including any "documents concerning Samsung's imitation of, copying of, or benchmarking against Apple's products," citing prior cases where Samsung had been accused of discovery violations by opposing litigants.   (Chan Decl., Ex. 18.)   On July 15, 2011, Samsung's counsel confirmed that Samsung had indeed preserved documents relevant to the pending lawsuits.   (Chan Decl., Ex. 19.)[3]   Even after preliminary injunction discovery had been served and the parties had engaged in numerous meet and confers on various discovery issues, Apple made no mention of its plan to seek sanctions against Samsung for supposed document withholding and/or destruction.   It was not until September 22, 2011 — two days *after* Apple filed this motion to compel and for sanctions regarding document retention issues — that Apple initiated the meet and confer process regarding Samsung's document retention policies and practices, which are the subject of two Requests for Production in Apple's general discovery requests.   (Chan Decl., ¶ 38.)

---

[3]   In its letter, Samsung also cited prior circumstances where Apple had been sanctioned because it had "failed to obey [the] court's orders to disclose information in its possession or control that is relevant to the claims or defenses of any party" and because Apple had "failed to provide information as required by Federal Rule of Civil Procedure 26(a); and that these failures were not substantially justified."   (Chan Decl., Ex. 19.)   Samsung thus requested that Apple also confirm that it was taking the necessary steps required to identify and preserve all relevant evidence.   *Apple never responded*.   Samsung asked again on August 5, 2011 for a response to confirm that Apple was complying with its document preservation obligations.   (Chan Decl. Ex. 20.)   Again, *Apple never responded*.

# ARGUMENT

## I. SAMSUNG HAS ALREADY PRODUCED THE MATERIALS APPLE SEEKS, AND HAS PROPERLY OBJECTED TO THOSE OF APPLE'S REQUESTS CALLING FOR IRRELEVANT DOCUMENTS.

Apple's motion seeks to compel production of (1) development and design documents referencing Apple, (2) documents pertaining to certain alleged statements of Lee Don Joo, (3) marketing documents, (4) customer survey documents, and (5) customer confusion documents referencing Apple.   Samsung already has produced the responsive documents it has located to date regarding categories one through four, and has properly objected to producing documents in response to category five on relevance and undue burden grounds, among others.   Apple's motion to compel thus is largely moot, and the only live controversy — regarding consumer confusion documents — should be decided in Samsung's favor.

### A. Samsung Already Has Produced Documents Related To The Development And Design Of The Accused Products.

Apple first contends that Samsung failed to produce any documents "relating to the development and design of the Samsung products at issue" in response to its Request for Production No. 1.   (Mot. at i.)   This argument fails.

*First*, Samsung already has agreed to produce — and has actually produced — hundreds of design documents, including nearly a hundred CAD files and images.   (Jenkins Decl., ¶ 8.) Apple's own representations in prior sealed briefing confirms that production of such documents more than satisfies Samsung's discovery obligations regarding the design process.   (*See, e.g.*, Chan Decl., ¶ 32 & Ex. 16 at 3 (recounting Apple's prior representations regarding relevant design documents.)   Tellingly, in a bid to gin up a claim of non-production, Apple's motion fails to disclose Samsung's production of CAD files.   (Mot. at 8-9.)   In addition, Samsung has also produced hundreds of other documents related to the development and design of the accused products, as detailed in the accompanying Declaration of Sara Jenkins. (Jenkins Decl., ¶ 8.)

*Second*, Request for Production No. 1 does ***not*** broadly seek all documents related to the development and design of the products at issue, as Apple now urges.   (Mot. at ii.)   Instead, it seeks documents regarding the narrower topic of "analysis, review, consideration, or copying of,

or comparison against, any Apple product or product feature in designing, developing, or implementing any feature of the Products at Issue." (Mot. at ii.)   Samsung has engaged in searches of its designers' files to find product design or development documents that analyze, review, consider, or compare Samsung designs with Apple products.   (Jenkins Decl., ¶ 8.) Apple apparently is unsatisfied with Samsung's production because it turned up no "smoking guns" showing copying of Apple's products.   That is unsurprising, since Samsung entered the mobile phone business at least ten years earlier than Apple, and there was no such copying of Apple's designs during the design process -- as Samsung's deposition witness has confirmed. (Chan Decl., Ex. 17 at 135, 255.)   Moreover, even though Request No. 1 does not seek such documents, Samsung has produced industry-standard documents that analyze competitor products, including Apple products, *outside* the design process.   (Chan Decl., Ex. 17 at 251-53; Jenkins Decl., ¶ 14.)

In sum, there is nothing for the Court to compel, as Samsung has agreed to produce — and has produced — the design documents in question that have been located to date.

**B.     By Apple's Own Admission, Samsung Already Has Satisfied Apple's Request For Documents Related To Lee Don-Joo.**

Apple falsely claims that Samsung is unwilling to respond to Request for Production No. 166, which seeks documents to or from Samsung marketing executive Lee Don-Joo regarding the claimed redesign of the Galaxy Tab 10.1.   (Mot. at 10; Bartlett Decl., Ex E at 15.)   Apple's declaration in support of its motion concedes that Apple already received over a dozen emails relevant to this topic.   (Chung Decl., ¶¶ 14, 16.)

Nevertheless, dissatisfied that these responsive emails did not contain some sort of incriminating information that Apple presumably hoped to receive, Apple infers that these documents are somehow deficient because they were from Samsung's marketing and product development people, not Samsung designers.   (Chung Decl., ¶ 14.)   This is not surprising, since

1  Lee Don-Joo is a *sales and marketing* executive, not a design executive.[4]  Furthermore, as
2  Samsung has also explained to Apple via sworn testimony, Lee Don-Joo was misquoted by a
3  reporter in the Korean press when he was asked for a comment on the Galaxy Tab 10.1.  (Chan
4  Decl., Ex. 17 at 122-24.)  The reporter subsequently retracted the quote and corrected her article.
5  (*Id.* at 151.)  The day after Mr. Lee was misquoted, the reporter released an article announcing
6  that the Galaxy Tab 10.1 would be released as scheduled, and that Samsung denied any
7  speculations that the product would be delayed to make improvements.  (Chan Decl., ¶ 41 &
8  Ex. 22.)
9      Samsung has produced responsive documents it has located to date.  Samsung continues
10 to review additional documents and will produce any additional responsive, non-privileged
11 documents that it locates after a reasonable search.  In short, there is no dispute for the Court to
12 resolve here.

13      **C.   Samsung Has Already Produced Hundreds Of Marketing Documents**
14      In response to Apple's Request for Production No. 214, Samsung has produced hundreds
15 of marketing, market share, and market study documents for the products at issue, as detailed in
16 the accompanying Jenkins Declaration.  (Jenkins Decl., ¶¶ 14, 15.)  During the meet and confer,
17 Samsung never took the position that marketing documents were not relevant here and never
18 refused to produce them.  (Chan Decl., ¶ 27.)  Indeed, nowhere in its Motion does Apple
19 suggest that Samsung has failed to produce marketing documents.  Yet Apple nevertheless
20 demands a (completely unnecessary) order from the Court.  Notwithstanding Apple's posturing,
21 there is nothing in dispute with respect to Request No. 214.

22      **D.   Samsung Has Produced Customer Surveys Despite Their Irrelevance**
23      Apple's Request for Production No. 206 asks for "customer surveys, studies, analyses or
24 investigations regarding the *Products at Issue*."  (Mot. at iii (emphasis added).)  As defined by
25 Apple, the "Products at Issue" are "the Galaxy S 4G, Infuse 4G, Droid Charge, and Galaxy Tab

---

[4]  *See* Chan Decl., Ex. 17 at 122-23.

10.1."   (Bartlett Decl., Ex. D at p. 2, ¶ 3.)    On its face, then, the request only seeks customer surveys related to Samsung's accused products — not those related to *any* Apple products, as Apple's motion now demands.   (Mot. at 12.)    Samsung is under no obligation to produce documents that Apple has never requested.   *See Bermudez v. Duenas*, 936 F.2d 1064, 1068 (9th Cir. 1991) (motion to compel properly denied where documents had not yet been requested); *see also* Civil L.R. 37-2 (requiring movant to "set forth each request in full" and to "detail the party's contention that it is entitled to the *requested* discovery") (emphasis added).

More importantly, any customer surveys that may exist regarding Apple products are irrelevant to the limited issues in the preliminary injunction motion.   Design patent infringement is proved through a comparison of the accused products with the asserted *patents*, not with the patentee's products.   *See Sun Hill Industries, Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995) ("[T]o find infringement, the accused [product] must be compared to the claimed design to determine whether the two designs are substantially the same. . . . The test for infringement is not whether the accused product is substantially similar to the patentee's commercial embodiment of the claimed design.") (citation and quotation marks omitted).   Surveys that show customer reactions to Apple products in the market therefore have no connection to how the ordinary observer would view Apple's *design patents* at issue here.   With respect to Apple's actual request that sought customer surveys regarding Samsung's accused products, such documents are irrelevant for the same reasons stated above.   This is particularly true given the Court's directive to narrowly focus the parties' discovery efforts during this phase of the case. (Scheduling Order (Dkt No. 115) at 2.)

Nevertheless, in an effort to compromise, Samsung has produced responsive customer surveys referencing both Apple and Samsung products that it has located to date. (Jenkins Decl., ¶¶ 17, 18.)    Apple's motion regarding its Request No. 206 is therefore not only meritless but also moot.

1    **E.    Samsung Has Properly Objected To Apple's Irrelevant And Overly
           Burdensome Request For Documents Regarding All Instances Of Consumer
2          Confusion**

3    Apple's Request No. 215 calls for documents relating to "*any* instances of consumer

4    confusion in which Samsung was made aware that a person confused an Apple product for a

5    Product at Issue, or a Product at Issue for an Apple product."   (Chan Decl., Ex. 6 at 10).   But

6    evidence of consumer confusion is irrelevant to Apple's patent infringement claims.   Design

7    patent infringement is not proved by evidence of consumers' beliefs of differences or similarities

8    of products in the marketplace because the accused product is compared to the *patent*, not to the

9    commercial embodiment of the patentee's products.   See *Sun Hill*, 48 F.3d at 1196.   Apple has

10   admitted that "the test for design patent infringement" is "whether [Samsung's] products look

11   substantially the same as the patented Apple designs."   (Joint Submission Regarding Briefing and

12   Hearing Schedule for Preliminary Injunction Motion (Dkt No. 100) at 1.)

13   In fact, for these reasons, consumer confusion is *inappropriate* to consider, and "[i]t is

14   legal error to base an infringement finding on features of the commercial embodiment not claimed

15   in the patent."   *Sun Hill*, 48 F.3d at 1196.   Moreover, infringement analysis requires that only

16   the ornamental aspects of the design patent be considered.   *KeyStone Retaining Wall Systems,*

17   *Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993) ("A design patent protects the non-

18   functional aspects of an ornamental design as shown in a patent.").   Consumer confusion

19   between commercial embodiments of products, however, is due to a host of other issues, including

20   consumer comparisons between the functional aspects of the product, or the portions of the

21   product that are not even claimed by the design patent.   This difference is especially critical here

22   because Apple's iPhone design patents claim only the front surface of the phone; they do not

23   claim the whole product or the back of the phone, for example.   See U.S. Patent Nos. D593,087

& D618,677.   Thus, if consumer confusion occurs at all, it is when consumers encounter a full product on the market, not the disembodied, non-operational front face of a phone.[5]

Apple's only proffered relevance argument is the unsupported, conclusory statement that consumer confusion evidence is relevant to irreparable harm.   (Mot. at 11.)   It is not.   Isolated instances of confusion, if they even exist, are merely anecdotal.   They cannot possibly be the basis for Apple's argument that its brand will suffer throughout the entire market if an injunction is not issued.   Apple's motion is telling on this point: it fails to offer a single citation or argument showing how evidence of random instances of confusion (even assuming they exist) would be relevant to the patent infringement issues at bar.[6]

Even assuming that some narrower, more reasonably defined subset of consumer confusion evidence may be relevant for the main case, which contains trademark claims, it most certainly is not the proper subject of discovery — let alone motion practice — during the preliminary injunction phase since Apple did not move for a preliminary injunction for its trademark claims.   This is especially true because, while lacking any meaningful relevance, this evidence will be extremely burdensome and time-consuming to locate.   *See* Declaration of Russell Wilkins.   Apple offers no reasonable method by which Samsung could search for information that could be known to any of the thousands of Samsung employees; there is no "customer confusion department."   Even if Samsung were to limit this request to its call centers, which receive consumer inquiries about Samsung's products, Samsung would still need to weed

---

[5] Apple seeks to distort this reality by showing pictures in its motion to compel that compare Apple's functioning *products* with Samsung's.   (Mot. at 3-4.)   This is not a valid comparison in the design infringement context.   Moreover, Apple continues to use doctored photos that skew the dimensions of the Samsung products to match those of Apple's products, deceptively manipulating the comparison.   (Chan Decl., Ex. 21.)

[6] Apple may attempt to use out-of-context statements by Samsung's damages expert Michael Wagner in claiming that evidence of consumer confusion is relevant at this stage. Wagner, however, merely offered his comments in showing that Apple had failed to do any investigation into consumer confusion prior to filing its motion for a preliminary injunction such as conduct a survey or proffer any confusion evidence of its own.   He was not making any claim that such evidence is legally relevant to Apple's preliminary injunction motion, which it is not. *See, supra,* p. 9-10.

through many hundreds of thousands of phone records, looking for proverbial needles in haystacks that might not even exist. *See id.* Apple may not impose such a burden on Samsung in these circumstances. The Federal Rules are clear: a "court must limit the frequency or extent of discovery" when it determines that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). Apple's motion should be denied on all of these grounds.

## II. APPLE'S DEMAND FOR SANCTIONS IS BASELESS, UNTIMELY, PROCEDURALLY IMPROPER, AND CONTRARY TO SETTLED LAW

With no basis in law or fact, Apple levies accusations and insinuations of document destruction at Samsung and sneaks a demand for sanctions into the conclusion section of its motion (which demand is noticeably absent from its list of issues to be decided). Apple's groundless sanctions demand should be rejected for multiple reasons.

*First*, and most importantly, Samsung already confirmed to Apple that it has taken the necessary steps to preserve relevant evidence for this action.[7] Apple, in contrast, has refused several times to provide this same assurance to Samsung. (Chan Decl., ¶ 36 & Exs. 19, 20.)

*Second*, Samsung did not meet and confer regarding document preservation issues and seeking sanctions therefor prior to filing its motion. (Chan Decl, ¶ 29.) To the contrary, Apple filed its motion on September 20, and then later — on September 22 — asked Samsung to meet and confer regarding Apple's two document retention document requests issued in general discovery. (Chan Decl. ¶ 38.) This failure dooms Apple's sanctions demand. *See, e.g.*, *Crossbow Technology, Inc. v. YH Technology*, 2007 WL 926876, at *1 (N.D. Cal. Mar. 26, 2007) (denying motion to compel for failure to meet and confer); s*ee also* Civil L.R. 37-1(a) ("The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless,

---

[7] As discussed above, the only time Apple ever made mention of this topic was a letter sent to Samsung's counsel at the beginning of litigation, demanding that Samsung preserve documents. (Chan Decl., Ex. 18.) Samsung of course affirmed that it was in fact doing so. (Chan Decl., Ex. 19.)

pursuant to FRCivP 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues.").

*Third*, Apple has flouted the Court's rules and procedures for seeking sanctions.  Local Rule 7-8 requires that "[a]ny motion for sanctions, regardless of the sources of authority invoked, must comply with the following:   (a) **The motion must be separately filed** and the date for hearing must be set in conformance with Civil L.R. 7-2."   Civil L.R. 7-8 (emphasis added).  Apple's call for sanctions was therefore improperly raised as an aside in its motion to compel.

*Fourth*, Apple offers no case law regarding the standard for obtaining issue sanctions in this Court, let alone case law that would justify such an extreme form of punishment based on nothing more than a hollow accusation — presumably because Apple knows that it could never meet that standard.   In this Circuit, sanction "orders taking the plaintiff's allegations as established and awarding judgment to the plaintiff on that basis" are authorized only in "extreme circumstances."   *U.S. for Use and Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988).   "[I]n order to warrant imposition of these severe sanctions, the violation(s) must be due to willfulness, bad faith, or fault of the party."   (*Id.* (citation and quotation marks omitted).)   And a party has to provide the Court with "clear and convincing evidence of misconduct before a punitive sanction . . . is entered."   *Pennar Software Corp. v. Fortune 500 Systems Ltd.*, 2001 WL 1319162, at *5 (N.D. Cal. Oct. 25, 2001).   Specifically, "[a] sanction for failure to preserve evidence is appropriate only when a party has 'consciously disregarded' its obligations to preserve it."   *Id.*   Apple has offered no evidence whatsoever that Samsung has done anything of this kind.[8]

Instead, Apple cites only three cases in its entire brief — all of which are irrelevant.  (Mot. at 2.)   Samsung cannot be sanctioned in this case for something it was accused by opposing

---

[8]   Apple also implies that a company can be sanctioned for not saving all documents in the ordinary course of business.   (Mot. at 2, 10.)   That is contrary to law.   *See U.S. v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) ("A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business.").

1  litigants of doing in a different case.   Indeed, if Apple's urgings were correct, **Apple** would be
2  found liable for withholding evidence in this case since Apple was previously sanctioned in
3  another case for dumping thousands of pages of relevant documents on the other side on the eve of
4  trial.   *See Personal Audio LLC v. Apple et al.*, No. 9:09-cv-111 (E.D. Tex. June 16, 2011) (Dkt
5  No. 421); *see also* Law360.com, Apple Sanctioned For Discovery Breach In Audio Patent Suit,
6  http://www.law360.com/articles/251955.
7         *Finally*, Apple's demand to be permitted to take discovery regarding document retention
8  during the preliminary injunction phase is woefully tardy.   Apple had every opportunity to serve
9  preliminary injunction discovery calling for such information, but elected not to do so.   Not one
10 of Apple's 68 preliminary injunction-related requests for production or any of its 5 interrogatories
11 sought information regarding document collection or preservation.   Apple also chose not to
12 include a single document retention or collection topic in its notice for Samsung's 30(b)(6)
13 preliminary injunction witness.   Indeed, Apple did not even reach out to Samsung on this subject
14 through the meet and confer process until September 22 — two days *after* it filed its motion to
15 compel.   (Chan Decl. ¶ 38.)
16         Apple's demand for sanctions is frivolous and should be rejected.

**CONCLUSION**

For the foregoing reasons, the Court should DENY Apple's Motion to Compel in its entirety. The Court should further DENY any other relief sought by Apple in its motion, including sanctions.

DATED: September 26, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Victoria F. Maroulis
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller
Rachel Herrick Kassabian
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC