MICHAEL J. BETTINGER (SBN 122196)
IRENE YANG (SBN 245464)
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: 415.882.8200
Facsimile: 415.882.8220
mike.bettinger@klgates.com
irene.yang@klgates.com

Of Counsel:
MICHAEL J. ABERNATHY
BRIAN J. ARNOLD
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 560602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000
mike.abernathy@klgates.com
brian.arnold@klgates.com

Attorneys for *Amicus Curiae*
T-MOBILE USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**BRIEF OF *AMICUS CURIAE* T-MOBILE USA, INC. REGARDING APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: October 13, 2011<br>Time: 1:30 pm<br>Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

*Amicus curiae* T-Mobile USA, Inc. ("T-Mobile") is a national provider of wireless voice, messaging, and data services capable of reaching over 293 million Americans. T-Mobile's lineup of handheld devices, particularly its smartphone offerings, includes many Samsung-manufactured devices. T-Mobile respectfully submits this *amicus curiae* brief regarding Apple Inc.'s Motion for a Preliminary Injunction ("P.I. Motion") to inform the Court of public interest considerations implicated by Apple's attempt to preliminarily enjoin sales of Samsung's Galaxy S 4G smartphone and Galaxy Tab 10.1 tablet in the midst of the critical holiday shopping season.[1] The timing of such an injunction on two popular consumer products that will help anchor its 2011 holiday sales would unnecessarily harm T-Mobile and thousands of U.S. consumers.[2]

T-Mobile respects intellectual property rights and believes that owners of intellectual property deserve their day in court. However, "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). When considering whether to issue an injunction, courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

A preliminary injunction would unnecessarily harm T-Mobile and its customers. At this late date, T-Mobile could not find comparable replacement products for the 2011 holiday season. T-Mobile has already prepared its sales and marketing campaigns for the 2011 holiday sales season, which prominently feature the Galaxy S 4G and Galaxy Tab 10.1, and ordered holiday inventory of those products. These investments cannot be recouped easily. Moreover, the market is expecting T-Mobile to sell these devices. An injunction could impair T-Mobile's goodwill with its customers. Consumers who prefer Android-based smartphone and tablet devices and/or who prefer T-Mobile's network coverage or capabilities would be unable to purchase substitute products with the same

---

[1] As a third-party national wireless carrier, T-Mobile takes no position on Apple's and Samsung's respective arguments regarding their likelihood of success on the merits. In addition, because the P.I. Motion is limited to the Galaxy S 4G and Galaxy Tab 10.1 products, T-Mobile has limited its arguments to these two products and the public interest considerations surrounding a potential injunction of these products.

[2] T-Mobile publicly announced today, September 28, 2011, that it will sell the Galaxy Tab 10.1 tablet.

features at the same price points.  Moreover, current T-Mobile customers who purchase the devices at issue and are under contract with T-Mobile may not be able to obtain replacement devices covered by warranty, for example, if they are enjoined.

Since money damages could be readily calculated and the Court has ordered an expedited trial, the public interest weighs decidedly against a preliminary injunction.  *See Weinberger*, 456 U.S. at 312 ("[When] an injunction is asked which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties.") (internal quotation marks omitted).[3]

## I.     T-Mobile and Its Products at Issue

T-Mobile provides wireless voice, messaging, and data services in the U.S. and serves approximately 34 million wireless customers.  It offers a range of wireless products and services, including cell phones and smartphones, tablets, mobile hotspots, netbooks, cell phone and data plans, and accessories.  Specifically for handsets, T-Mobile offers a variety of additional products and services, such as downloadable games and applications, Internet, e-mail, messaging, music and sounds, handset protection services, voice mail, and wallpapers.[4]  T-Mobile has invested enormous time and resources into building its 4G network, which covers 191 markets and over 200 million people.[5]  T-Mobile also has invested heavily in Samsung handheld devices and considers Samsung to be one of its strategic partners.  T-Mobile does not offer products with identical features at the same price point from the same or different manufacturers.

### A.     The Galaxy S 4G Smartphone

The Galaxy S 4G, which runs on the Android platform, is one T-Mobile's top-five selling devices and one of T-Mobile's fastest 4G network devices.  The Galaxy S 4G was T-Mobile's "first

---

[3] The asserted patents are Design Patent Nos. D618,677 ("'D677 patent"), D593,087 ("'D087 patent"), and D504,889 ("'D889 patent") (collectively "Design Patents") and U.S. Patent No. 7,469,381 ("'381 patent").  To the extent applicable, T-Mobile incorporates the arguments of *amicus curie* Cellco Partnership d/b/a Verizon.  T-Mobile's public interest arguments, however, apply to ***all*** the asserted patents, including the Design Patents.

[4] *See* http://www.t-mobile.com/shop.aspx.

[5] *See* http://t-mobile-coverage.t-mobile.com/.

smartphone capable of theoretical download speeds of up to 21Mbps."[6] It has consistently surpassed other 4G phones in its download speed capacity. A test conducted by MSNBC of the Galaxy S 4G against comparable smartphones offered by T-Mobile and other carriers, for example, showed the Galaxy S 4G to be the speediest of the group:[7]



Results of our smart phone download speed test, showing that the T-Mobile Galaxy S 4G really is faster than its sibling, the myTouch 4G, and — at least within our real-world testing enviroment — handily beat other leading 4G phones. It's important to check a phone's performance in your area, preferably before you buy it.

### B. The Galaxy 10.1 Tab

T-Mobile plans to launch the Galaxy Tab 10.1 for the 2011 holiday season. The Galaxy Tab 10.1, manufactured by Samsung and based on the Android platform as well, will be T-Mobile's ***only*** 10.1 inch screen tablet. A 10.1 inch screen tablet is very important to T-Mobile's holiday sales strategy, as T-Mobile currently offers only older 7 inch and 8.9 inch screen tablets from non-Samsung manufacturers, the Dell Streak and the T-Mobile G-Slate. If it could not sell this device, customers seeking a larger tablet likely will not shop at T-Mobile.

---

[6] Cha, Bonnie, "T-Mobile offers up more Samsung Galaxy S 4G details," CNET, February 1, 2011, <http://reviews.cnet.com/8301-19736_7-20030318-251.html>.

[7] Rothman, Wilson, "Putting 4G to the speed test," MSNBC.com, February 9, 2011, <http://www.msnbc.msn.com/id/41485079/ns/technology_and_science-wireless/>.

## II. An Injunction During the Holiday Season Would Harm T-Mobile and Its Customers

Like most U.S. retailers, holiday sales are key for T-Mobile's business.[8] T-Mobile has been preparing for the holiday season for months.[9] These efforts have included ordering increased inventory of smartphones and tablets, developing new marketing campaigns for imminent launch, and training additional sales personnel. T-Mobile's holiday season begins in early November, shortly after the October 13 hearing on Apple's P.I. Motion, with holiday commercials typically starting the first week of that month.[10]

Consumers who prefer the Android operating system and Samsung-specific customizations of the Android operating system and/or who prefer T-Mobile's network coverage or capabilities would be unable to purchase substitute products with the same features at the same price point as offered by the Galaxy S 4G or Galaxy Tab 10.1. Similarly, current T-Mobile customers who purchase the Galaxy S 4G or Galaxy Tab 10.1 may not be able to obtain replacement devices that are covered by warranty or T-Mobile's Premium Handset Protection, if those devices were enjoined.

### A. T-Mobile Has No Adequate Replacement for the Galaxy S 4G

T-Mobile does not currently offer a phone with the same feature set at the same price point as the Galaxy S 4G. If Samsung were enjoined, T-Mobile would have no comparably priced replacement for the Galaxy S 4G during the holiday sales period. As the MSNBC test shows regarding data download speeds, the Galaxy S 4G cannot be readily replaced by just any allegedly

---

[8] *See* Virki, Tarmo and Miyoung Kim, "PREVIEW-Smartphones lift Apple, Samsung in Q4 phone bonanza," Reuters, Jan. 17, 2011, <http://www.reuters.com/article/2011/01/17/cellphones-idUSLDE70G07C20110117> ("The market for phones tends to jump 10-15 percent in the fourth quarter from the third quarter, as many consumers buy the latest gadgets for Christmas gifts.").

[9] The parties never informed T-Mobile in advance of Apple's P.I. Motion that the accused devices suddenly might be become unavailable as a result of a preliminary injunction. Consequently, T-Mobile has had no meaningful opportunity to prepare for a potential loss of the accused devices during the holiday sales season.

[10] *See* Virki, Tarmo and Miyoung Kim, "PREVIEW-Smartphones lift Apple, Samsung in Q4 phone bonanza," Reuters, Jan. 17, 2011, <http://www.reuters.com/article/2011/01/17/cellphones-idUSLDE70G07C20110117> ("The market for phones tends to jump 10-15 percent in the fourth quarter from the third quarter, as many consumers buy the latest gadgets for Christmas gifts."); *see also* Nelson, Robert, "Verizon begins the holiday season commercials with robotic snowman," Nov. 3, 2010, <http://www.gadgetell.com/technologytell/article/verizon-begins-the-holiday-season-commercials-with-robotic-snowman-video/>.

comparable smartphone. Moreover, many consumers prefer smartphones running on the Android platform to other mobile operating systems.[11]

Indeed, finding an alternative supplier; developing a comparable product at the same price point; testing proposed substitutes for performance, operation, safety, and network compatibility; and ensuring appropriate supply, among other steps, would take nearly a year. T-Mobile also would lose its investments in the marketing and advertising campaigns that were developed months ago in anticipation of the holiday shopping season. Even if it could find a replacement, T-Mobile would be forced to spend considerable additional money on recalling its marketing campaigns and re-doing its advertising, marketing, and sales staff training to make customers and staff aware of the new product. T-Mobile has already substantially invested in branding the Galaxy S 4G. In the last several months alone, T-Mobile has invested heavily on advertising and promotional materials, including in-store materials, online content, and print marketing. If it were unable to sell that device, T-Mobile would be unable to recoup those expenses.

### B. T-Mobile Has No Adequate Replacement for the Galaxy Tab 10.1

T-Mobile likewise would not have time to find an adequate replacement for Galaxy Tab 10.1 for the holiday season, harming it and its consumers. It simply has no other replacement tablets ready for release. Its only other tablets have 7 inch and 8.9 inch screens, which are considerably smaller than the 10.1 inch screen of the Galaxy Tab 10.1 and likely to be less desirable to certain consumers as a result. Finding a new supplier, developing a new tablet, and going through the approval process to replace the Galaxy Tab 10.1 would take many months. T-Mobile, like others in the industry, will make a significant amount of tablet sales during the holiday season. If T-Mobile were unable to sell the Galaxy Tab 10.1, it would therefore lose a very large percentage of the projected revenue in the tablet business.

Like T-Mobile's investment in the Galaxy S 4G, T-Mobile also has already substantially invested in the release of the Galaxy Tab 10.1. In the last several months, T-Mobile has purchased advertising and promotional materials, including in-store materials, online content, and print

---

[11] *See, e.g.,* Albanesius, Chloe, "Consumers Love Their Samsung, Android Phones, comScore Says," PCMag.com, July 5, 2011, <http://www.pcmag.com/article2/0,2817,2388107,00.asp> (Android had 38.1% of the smartphone market share, while iPhones had 26.6%).

marketing, related to the Galaxy Tab 10.1. T-Mobile employees also have spent considerable time and money evaluating and testing larger tablet product offerings by Samsung and other suppliers in going through the approval process to launch the Galaxy Tab 10.1. Moreover, T-Mobile has spent additional time and money preparing education and training materials for store employees on this product. If unable to sell the Galaxy Tab 10.1, T-Mobile would lose these investments. Since many T-Mobile product offerings are combined for cost efficiency and customer impact, new advertising and promotional, education, and training materials would need to be created if the Galaxy Tab 10.1 tablet were enjoined.

### III. Conclusion

An injunction, particularly in the midst of the holiday sales season, would unnecessarily harm T-Mobile and its customers. In contrast, money damages would remedy any harm suffered by Apple between now and the July 30, 2012 trial. Accordingly, the public interest heavily weighs against granting Apple's motion for a preliminary injunction.

Respectfully submitted,

K&L GATES LLP

Dated: September 28, 2011     By:     */s/ Michael J. Bettinger*
MICHAEL J. BETTINGER (SBN 122196)
Attorneys for *Amicus Curiae*
T-MOBILE USA, INC.