1

2                  IN THE UNITED STATES DISTRICT COURT

3             FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

      APPLE, INC.,                  )  CV-11-1846-LHK
6                                   )
                    PLAINTIFF,      )  SAN JOSE, CALIFORNIA
7                                   )
               VS.                  )
8                                   )  SEPTEMBER 28, 2011
      SAMSUNG ELECTRONICS CO.,      )
9     LTD., ET AL,                  )
                                    )  PAGES 1-87
10                  DEFENDANT.      )
      _____

11

12                  TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE PAUL S. GREWAL
13                UNITED STATES DISTRICT JUDGE

14

15    A P P E A R A N C E S:

16    FOR THE PLAINTIFF:  MORRISON FOERSTER
                          BY:  WESLEY OVERSON
17                             RICHARD HUNG
                               MINN CHUNG
18                             MICHAEL JACOBS
                          425 MARKET STREET
19                        SAN FRANCISCO, CA 94105

20    FOR THE DEFENDANT:  QUINN EMANUEL
                          BY:  VICTORIA MAROULIS
21                             BRETT ARNOLD
                               KEVIN JOHNSON
22                        555 TWIN DOLPHIN DRIVE, 5TH FL
                          REDWOOD SHORES, CA 94065

23

24

25    OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                               CERTIFICATE NUMBER 13185

1    SAN JOSE, CALIFORNIA            SEPTEMBER 28, 2011

2                    P R O C E E D I N G S

3              (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5              THE COURT:  GOOD MORNING.  PLEASE HAVE A

6    SEAT.

7              MR. RIVERA, WHENEVER YOU ARE READY, WOULD

8    YOU CALL THE MATTER ON THIS MORNING'S CALENDAR

9              THE CLERK:  YES, YOUR HONOR.

10             CALLING APPLE, INC. VERSUS SAMSUNG

11   ELECTRONICS, ET AL.  CASE NUMBER CV-11-1846.

12             COUNSEL, PLEASE STATE YOUR APPEARANCES.

13             MR. OVERSON:  WESLEY OVERSON ON BEHALF OF

14   APPLE, INC.

15             THE COURT:  MR OVERSON, GOOD MORNING,

16   SIR.

17             MS. MAROULIS:  VICTORIA MAROULIS WITH

18   QUINN EMANUEL ON BEHALF OF SAMSUNG.

19             AND WITH ME IS MR. KEVIN JOHNSON ALSO FOR

20   SAMSUNG AND BRETT ARNOLD.

21             THE COURT:  ALL RIGHT.

22             WELCOME BACK, MS. MAROULIS.

23             GOOD MORNING, GENTLEMAN.

24             MR. OVERSON:  YOUR HONOR, MAY I ALSO

25   INTRODUCE MR. JACOBS, MR. HUNG AND MR. MINN CHUNG.

```
 1                ALSO WITH US HERE TODAY IS CYNDI WHEELER
 2     FROM APPLE, INC.
 3                THE COURT:  GOOD MORNING TO EACH OF YOU
 4     AS WELL.
 5                ALL RIGHT.  WELL, I HAVE REVIEWED THE
 6     FILINGS WITH RESPECT TO THIS MOTION AS WELL AS
 7     THE -- I SHOULD SAY, INCLUDING THE NUMEROUS
 8     DECLARATIONS THAT HAVE BEEN SUBMITTED, SO I FEEL AS
 9     IF I'M FAIRLY UP TO SPEED ON THE PAPER RECORD.
10                IT IS APPLE'S MOTION, SO I WILL BEGIN
11     WITH COUNSEL FOR APPLE.
12                AND BEFORE WE TURN TO THE MATTERS AT HAND
13     I HAD A PROCEDURAL QUESTION, I WANTED TO MAKE SURE
14     I WAS UNDERSTANDING THE POSTURE OF THIS MOTION
15     CORRECTLY.
16                WHEN DID LEAD TRIAL COUNSEL MEET BEFORE
17     THIS MOTION WAS BROUGHT?
18                MR. OVERSON:  THE 15TH, I BELIEVE,
19     YOUR HONOR.
20                THE COURT:  AND WHO ATTENDED ON BEHALF OF
21     APPLE AND WHO ATTENDED ON BEHALF OF SAMSUNG?
22                MR. OVERSON:  MR. JOHNSON FOR SAMSUNG AND
23     MR. JACOBS FOR APPLE.
24                THE COURT:  OKAY.
25                AND IS IT CORRECT TO UNDERSTAND THAT
```

1    MR. JACOBS AND MR. JOHNSON WILL BE TRYING THIS

2    CASE?

3              MR. OVERSON:  I CAN SAY SO FOR OUR SIDE,

4    YOUR HONOR.

5              MR. JOHNSON:  YES, YOUR HONOR.  IT WAS

6    THE 16TH.

7              THE COURT:  ALL RIGHT.  I APPRECIATE

8    THAT.

9              MR. OVERSON:  THANK YOU.

10             IT WAS THE FRIDAY.

11             MR. JACOBS:  IF I MAY, YOUR HONOR, JUST

12   ON THAT TOPIC BECAUSE MR. JOHNSON AND I HAVE TALKED

13   ABOUT THIS AS WELL.

14             WE ARE ON A VERY FAST PACE ON THIS CASE

15   AND AS YOU MIGHT IMAGINE LEAD TRIAL COUNSEL ARE

16   PULLED IN A VARIETY OF DIFFERENT DIRECTIONS AND WE

17   HAVE BEEN TRYING TO FIGURE OUT HOW WE COULD MEET,

18   WHAT WE UNDERSTAND YOUR DESIRES TO BE TO HAVE

19   SERIOUS, REALLY INTENSE EFFORTS TO RESOLVE THESE

20   DISPUTES BEFORE THEY TEE UP TO YOU WITHOUT BOGGING

21   DOWN THE PROCESS GOING BACK AND FORTH BETWEEN THE

22   PENINSULA.

23             I DON'T KNOW IF YOU'VE SEEN ANYTHING IN

24   OTHER CASES THAT YOU HAVE FOUND SATISFACTORY AS A

25   SUBSTITUTE FOR LEAD COUNSEL MEETING AND CONFERRING

1    IN PERSON THAT YOU WOULD BE OPEN TO, BUT SINCE YOU

2    ASKED THE QUESTION I THOUGHT IT WOULD BE --

3              THE COURT:  SURE.  IT'S AN INTEREST I

4    SUSPECT MR. JOHNSON SHARES AS WELL.

5              WELL, FIRST EVER ALL, I THINK IT'S

6    IMPORTANT TO NOTE PARTICULARLY ON THE RECORD, THIS

7    IS NOT MY INTEREST, IT'S JUDGE KOH'S INTEREST AND

8    ORDER, SO I'M NOT ABOUT TO MODIFY HER ORDER WITHOUT

9    SPECIFIC DIRECTION FROM HER ON THAT.

10             I WOULD SUGGEST THAT IF YOU FOUND THIS

11   PROCESS CUMBERSOME, PARTICULARLY IN THE CONTEXT OF

12   THIS FAST TRACK IN ITS PRELIMINARY INJUNCTION

13   PHASE, TWO THOUGHTS COME TO MIND.

14             ONE, THAT PERHAPS I MIGHT SUGGEST THAT

15   THE BURDENS THAT YOU ALL FACE IN PRESENTING THESE

16   ISSUES ARE SIMILAR TO THE BURDEN THE COURT HAS IN

17   RESOLVING THEM, THAT OUGHT TO BE WEIGHED AND

18   CONSIDERED BEFORE BRINGING A WAVE OF MOTIONS.

19             HAVING THAT SAID, IF YOU THINK A MORE

20   STREAMLINE PROCESS WOULD BE APPROPRIATE ESPECIALLY

21   NOW THAT DISCOVERY IS BEFORE MYSELF INSTEAD OF

22   JUDGE KOH, I WOULD SUGGEST A SHORT LETTER OR MOTION

23   TO JUDGE KOH WOULD BE THE APPROPRIATE COURSE.

24             I JUST DON'T BELIEVE I HAVE JURISDICTION

25   TO OVERRULE THE ARTICLE III JUDGE ON THIS

1    PARTICULAR ISSUE.

2            MR. JACOBS:  THANK YOU VERY MUCH, JUDGE.

3            THE COURT:  ALL RIGHT.

4            LET'S TURN TO THE MATTERS AT HAND.

5            SO WHY DON'T YOU BEGIN MR. OVERSON.

6            MR. OVERSON:  YES, YOUR HONOR.

7            IF YOU WOULD PERMIT ME JUST A FEW MINUTES

8    FOR CONTEXT HERE.

9            I KNOW THAT YOUR HONOR IS FAMILIAR WITH

10   THE CASE AND HAS READ THE PAPERS BUT THIS CASE IS

11   KIND OF -- THE BASIS OF THIS CASE IN THE

12   PRELIMINARY INJUNCTION MOTION IS REALLY THE

13   SIMILARITY, THE STRIKING SIMILARITY BETWEEN THE

14   DESIGNS OF THE ACCUSED PRODUCTS AND THE APPLE

15   PRODUCTS AND OF COURSE THE UNDERLYING PATENTS THAT

16   ARE AT ISSUE.

17           THE COURT:  WELL, IT IS THE DESIGNS THAT

18   ARE CLAIMED IN THE PATENTS THAT ARE THE BASIS FOR

19   YOUR DESIGN PATENT INFRINGEMENT CLAIM.

20           MR. OVERSON:  THAT IS CORRECT.

21           BUT AS YOUR HONOR CAN IMAGINE, WHEN APPLE

22   SEES A PHONE THAT LOOKS LIKE -- THIS IS THE SAMSUNG

23   AND THIS IS THE APPLE IPHONE.  WHEN THEY SEE THIS

24   KIND OF SIMILARITY AND THE MARKET IMPACT THAT IT

25   HAS, THAT'S WHAT'S DRIVING THIS WHOLE PROCEEDING

1        AND THE URGENCY OF THE PROCEEDING.

2                THE COURT:  SINCE YOU BROUGHT UP THE

3        ISSUE OF THE PRODUCTS I DID HAVE A QUESTION UNDER

4        EGYPTIAN GODDESS.

5                IS THE DESIGN OF THE PRODUCT ITSELF

6        RELEVANT IN ANY WAY TO THE ANALYSIS, THE ORDINARY

7        OBSERVER ANALYSIS?

8                MR. OVERSON:  I WOULD SAY THAT IN THE

9        CONTEXT OF THE PRELIMINARY INJUNCTION MOTION IT IS

10       RELEVANT BECAUSE IT GOES TO THE MARKET IMPACT AND

11       IRREPARABLE HARM.

12               THE COURT:  ALL RIGHT.

13               PUTTING ASIDE THE ISSUE OF IRREPARABLE

14       HARM, WHICH I UNDERSTAND IS A PRETTY IMPORTANT PART

15       OF YOUR MOTION AND WE'LL COME BACK TO IT, STRICTLY

16       SPEAKING THOUGH UNDER THE FEDERAL CIRCUIT'S

17       PRECEDENT, WOULD THE DISTRICT JUDGE IN EVALUATING

18       THE LIKELIHOOD OF THE SUCCESS ON THE MERITS, THAT

19       PRONG OF YOUR PI MOTION, WOULD SHE BE PERMITTED TO

20       LOOK TO THE EMBODIMENTS OR MUST SHE CONSIDER HOW

21       THESE PATENTS ARE CLAIMED AND NOTHING MORE?

22               MR. OVERSON:  THE ANALYSIS CERTAINLY

23       SHOULD CERTAINLY FOCUS ON THE --

24               THE COURT:  IT'S GOING TO FOCUS ON IT,

25       I'M SAYING AS A LEGAL MATTER.

1          MR. OVERSON:  -- CLAIMS, AND BRINGING OF

2     THE CLAIMS.

3          WE WOULD SAY IT'S TOTALLY IRRELEVANT,

4     HONOR.

5          THE COURT:  SO IS IT LEGALLY PERMISSIBLE

6     UNDER FEDERAL CIRCUIT PRECEDENT FOR HER TO CONSIDER

7     THE DESIGN EMBODIMENT?

8          MR. OVERSON:  I WOULD SAY IT'S A FACTOR,

9     YOUR HONOR, THE JUDGE COULD CONSIDER.

10          THE COURT:  ALL RIGHT.  I SUSPECT WE WILL

11     HEAR MORE ABOUT THAT.

12          ALL RIGHT.  GO ON.  I'M SORRY FOR

13     INTERRUPTING.

14          MR. OVERSON:  OKAY.

15          AND WE ALSO HAVE, OF COURSE, AN IPAD II

16     AND WE HAVE THE SAMSUNG TABLET.

17          THE COURT:  FULL DISCLOSURE, I'VE GOT MY

18     IPAD I UP HERE, SO LET'S GET THAT OUT ON THE TABLE.

19          MR. OVERSON:  SO SAMSUNG'S POSITION IN

20     THE PRELIMINARY INJUNCTION PROCEEDINGS IS THERE WAS

21     JUST A NATURAL EVOLUTION OF PRODUCT DEVELOPMENT

22     SUCH THAT THEIR PRODUCT ENDED UP LOOKING A LOT LIKE

23     THE APPLE PRODUCTS, AND I THINK THEY HAVE TO

24     ADDRESS THE SIMILARITY, EVEN JUDGE KOH STATED ON

25     THE RECORD THAT THE PRODUCTS LOOK "STRIKINGLY

1    SIMILAR."

2              WHETHER THERE'S A NATURAL EVOLUTION OR

3    SOMETHING MORE, LIKE THE COPYING OF THE APPLE

4    PRODUCT, IS VERY, VERY IMPORTANT TO THE MOTION.

5              AND WHAT WE ARE DOING IS WE ARE SEEKING

6    EVIDENCE THAT IN FACT WHEN SAMSUNG CHOSE TO DEVELOP

7    PRODUCTS THAT LOOK LIKE THESE PRODUCTS DO, WHEN

8    THEY FIRST CHOSE TO GO THAT DIRECTION IN THE

9    DESIGN, DID THEY CONSIDER AND REVIEW THE APPLE

10   PRODUCTS AND MAKE A DECISION, WE WANT TO LOOK MORE

11   LIKE THAT VERY SUCCESSFUL APPLE PRODUCT.

12             THE COURT:  IF I MIGHT INTERRUPT AGAIN, I

13   JUST WANT TO MAKE SURE I UNDERSTAND YOUR ARGUMENT

14   CLEARLY.

15             IS IT APPLE'S THEORY THAT WHEN SAMSUNG

16   FIRST DESIGNED THESE PRODUCTS THEY WERE LOOKING AT

17   AND INDEED COPYING THE APPLE'S DESIGNS, OR IS IT

18   THE REDESIGN OR ALLEGED REDESIGN?

19             MR. OVERSON:  YES.

20             OUR THEORY AS TO THE PHONES -- THERE'S

21   THREE PHONES, ONE TABLET.

22             AS TO THE PHONES, THEY COPIED THE

23   IPHONES, OKAY.  AS TO THE TABLET, THEY INITIALLY

24   COPIED THE IPAD.  THE IPAD II CAME OUT AND THEN

25   THEY COPIED THE IPAD II.

1          SO SAMSUNG'S THEORY, AGAIN, IS THAT

2    THERE'S JUST THIS EVOLUTION, WE DIDN'T COPY.

3          AND IF I MAY, I'VE ALREADY GIVEN TO

4    OPPOSING COUNSEL, I WOULD LIKE TO HAND UP TO THE

5    BENCH A SET OF REFERENCE EXHIBITS.

6          IF YOU WOULD LOOK A TAB 1, YOUR HONOR,

7    AGAIN, IN THE WAY OF SETTING THE STAGE, BUT I THINK

8    IT'S IMPORTANT TO UNDERSTAND THE --

9          MS. MAROULIS:  YOUR HONOR, MAY I RAISE A

10   QUICK OBJECTION TO THESE EXHIBITS?  THEY INCLUDE

11   MATERIALS THAT WERE NEVER SUBMITTED WITH THE PAPERS

12   THAT WERE FILED.

13         SO WE ARE NOT ONLY SEEING THEM FOR THE

14   FIRST TIME NOW, THEY WERE NOT PART OF THE MOTION.

15         THE COURT:  ALL RIGHT.  I WILL NOTE YOUR

16   OBJECTION.

17         I JUST WANT TO GET TO THE MERITS OF THIS

18   DISPUTE.

19         MS. MAROULIS:  AND TO THE EXTENT

20   MR. OVERSON WANTS TO GO INTO THE DESCRIPTION OF

21   SAMSUNG'S CONFIDENTIAL DOCUMENTS, WE WILL NEED TO

22   EXCUSE APPLE'S COUNSEL WHO IS PRESENT HERE.

23         THE COURT:  AGAIN, I WILL LEAVE IT TO YOU

24   ALL TO POLICE THAT.  IF THERE'S AN ISSUE

25   IMPLICATING PROTECTIVE ORDER, I'M SURE YOU WILL

1    TAKE APPROPRIATE STEPS TO REQUEST THE CLEARING OF

2    THE COURTROOM OR MOVE ON TO ANOTHER DOCUMENT.

3           MS. MAROULIS:  THERE'S A NUMBER OF

4    DOCUMENTS IN MR. OVERSON'S STACK THAT ARE MARKED

5    HIGHLY CONFIDENTIAL.

6           THE COURT:  WELL, LET'S TAKE THIS ONE

7    DOCUMENT AT A TIME.  I REALLY WANT TO GET TO THE

8    MERITS OF YOUR DISPUTE.

9           MR. OVERSON:  I UNDERSTAND, YOUR HONOR.

10          REALLY BRIEFLY, THE ARGUMENT IS FROM

11   SAMSUNG'S SIDE THAT THERE'S A NATURAL EVOLUTION,

12   BUT WHAT WE CAN SEE IS THE SMARTPHONES BEFORE THE

13   IPHONE THAT SAMSUNG PUT OUT ON THE LEFT.

14          IN THE CENTER, THE IPHONE COMES OUT ON

15   JANUARY 2007.  THEN ON THE RIGHT ARE SOME IPHONES

16   THAT WERE DEVELOPED AFTERWARDS.  AND NEEDLESS TO

17   SAY, THE ACCUSED DEVICE IS, IN OUR VIEW, SPOT ON.

18          THE COURT:  NONE OF THE THREE DESIGN

19   PATENTS THAT ARE BEING ASSERTED IN THIS PI PHASE

20   CLAIM FEATURES WHICH ARE REVEALED WHILE THE

21   PRODUCTS ARE OPERATING, RIGHT?

22          IN OTHER WORDS, IT'S NOT ENTIRELY --

23          MR. OVERSON:  I BELIEVE THEY ARE EXTERIOR

24   FEATURES.

25          THE COURT:  RIGHT.

1        SO ANY OF THESE INTERIOR ICON FEATURES,

2   THEY ARE NOT RELEVANT TO THE ANALYSIS, CORRECT?

3        MR. OVERSON:  NOT IN THE PI PHASE,

4   YOUR HONOR.

5        MR. OVERSON:  OKAY.  SO I WILL MOVE ON

6   AND LET'S GET TO THE MERITS.

7        I DO -- BOTH SIDES AGREE THAT COPYING

8   EVIDENCE IS RELEVANT IN A PI CONTEXT.  COPIERS

9   DON'T FARE AS WELL ON PI PROCESS BECAUSE IT'S

10  BALANCING OF THE EQUITIES.

11       SOMEBODY WHO IS COPYING SOMEBODY ELSE'S

12  PRODUCT IS NOT GOING TO GET MAYBE A BENEFIT OF THE

13  DOUBT THAT SOMEBODY WHO JUST DESIGNED THE PRODUCT

14  AND THEN IT HAPPENED TO INFRINGE.

15       THE COURT:  THEY TELL YOU IN THEIR

16  OPPOSITION, CORRECT, THAT YOU HAVE NO EVIDENCE OF

17  COPYING, THEY PUT THAT ISSUE IN PLAY?

18       MR. OVERSON:  THEY PUT THE ISSUE SQUARELY

19  IN PLAY.

20       AND WHAT WE'LL SEE AS A THEME THROUGH

21  THIS HEARING, I BELIEVE, IS THAT SAMSUNG WILL NOT

22  PRODUCE EVIDENCE THAT'S DIRECTLY RELEVANT TO THE

23  ARGUMENTS THEY WERE MAKING.  THEY ARE INJECTING

24  MANY OF THESE ISSUES INTO THE PI PROCESS AND YET

25  THEY THINK THEY CAN MAKE THE ARGUMENTS ON THE

1     AFFIRMATIVE SIDE WITHOUT BACKING IT UP WITH THE

2     PRODUCTION OF THE DOCUMENTS THAT ARE RELEVANT TO

3     THOSE ARGUMENTS.

4            SO WHAT APPLE IS LOOKING FOR IN DOCUMENT

5     REQUEST NUMBER 1 IS DOCUMENTS WHEREBY THE SAMSUNG

6     DECISION MAKERS AND DESIGNERS LOOK AT APPLE

7     PRODUCTS AND EVALUATED THOSE PRODUCTS AND

8     CONSIDERED THEM DURING THE PROCESS THAT THEY WERE

9     ARRIVING AT THE DECISION TO COME OUT WITH THESE

10    PRODUCTS, THE DESIGN OF THESE PRODUCTS.

11            AND IT'S A PRETTY BASIC --

12            THE COURT:  ALL APPLE PRODUCTS OR ANY

13    APPLE PRODUCT?

14            MR. OVERSON:  WELL, CERTAINLY THE

15    PRODUCTS THAT ARE THE PHONES AND THE TABLETS,

16    YOUR HONOR.

17            THE COURT:  SO TO BE PRECISE THE

18    EMBODIMENTS OF THE THREE DESIGN PATENTS THAT ARE

19    BEING ASSERTED IN THIS PHASE, CORRECT?

20            MR. OVERSON:  I THINK THAT'S RIGHT,

21    YOUR HONOR, YES.

22            THE COURT:  OKAY.

23            SO WHEN YOUR PAPERS REFER TO "APPLE

24    PRODUCTS," WE'RE ALL ON THE SAME PAGE HERE, WE ARE

25    TALKING ABOUT THE EMBODIMENTS OF THOSE THREE DESIGN

1    PATENTS?

2              MR. OVERSON:  WE ARE NOT TALKING ABOUT

3    THE MAC, YOUR HONOR.

4              THE COURT:  NOR ARE WE TALKING ABOUT

5    OTHER VERSIONS OF THESE PRODUCTS WHICH ARE NOT

6    EMBODIMENTS OF THE CLAIMS.

7              MR. OVERSON:  I THINK THAT'S CORRECT.  I

8    DON'T THINK THERE'S ANY FURTHER EMBODIMENTS THAT

9    NEED TO BE CONSIDERED.

10             WHAT -- SO WHEN WE HAVE MET AND CONFERRED

11   ON THESE ISSUES WE HAVE GOTTEN NOWHERE.  WE HAVE

12   ASKED, WHO HAVE YOU TALKED TO?  WHO, WHAT HAVE YOU

13   DONE TO COLLECT THESE DOCUMENTS?

14             THE COURT:  WHAT DID THEY TELL YOU?

15             MR. OVERSON:  WORK PRODUCT.  IT'S A WORK

16   PRODUCT OBJECTION.  THEY WON'T TELL US WHAT THEY'VE

17   DONE TO DO THE COLLECTION.

18             SO THAT HAS LEFT US UP AGAINST A WALL

19   WHERE WE CAN'T REALLY GET FURTHER.

20             SO THAT IS WHY IT IS CERTAINLY ONE OF THE

21   REASONS WHY WE ARE HERE.

22             THEY HAVE GIVEN US SOME DOCUMENTS AND

23   THEY HAVE MADE A BIG POINT IN THE PAPERS OF SAYING,

24   LOOK, WE PRODUCED THINGS.  THEY HAVE PRODUCED SOME

25   DOCUMENTS.

1          "SOME DOCUMENTS" IS NOT WHAT THE

2     DISCOVERY OBLIGATIONS REQUIRE.  THEY HAVE NEVER

3     SAID AND THEY DON'T SAY IN THE PAPERS, WE'VE DONE A

4     REASONABLE SEARCH, WE'VE DONE A THOROUGH JOB AND WE

5     HAVE GIVEN YOU ALL THE RESPONSIVE DOCUMENTS

6     ALREADY.

7          THEY DO NOT SAY THAT AS TO ANY OF THESE

8     REQUESTS AND CERTAINLY NOT AS TO THIS ONE HAVING TO

9     DO WITH THE ANALYSIS OF APPLE PRODUCTS.

10         WHAT THEY HAVE GIVEN US IS DISTURBING IN

11    THAT IT IS LARGELY NONRESPONSIVE AND REFLECTS, IN

12    OUR VIEW, DISRESPECT OF THE PROCESS.

13         AND NOW I'M GOING TO REFER TO TAB 3 WHICH

14    I THINK OPPOSING COUNSEL BELIEVES CONTAINS HIGHLY

15    CONFIDENTIAL ATTORNEY'S EYES ONLY INFORMATION; IS

16    THAT CORRECT, COUNSEL?

17         THE COURT:  THAT'S WHAT IT SAYS ON THE

18    BOTTOM OF THE PAGE, RIGHT?

19         MS. MAROULIS:  THAT'S CORRECT,

20    YOUR HONOR.

21         MR. OVERSON:  SO I'M FLAGGING THIS IN

22    CASE YOU WISH TO HAVE --

23         MS. MAROULIS:  AND IT WOULD BE MY REQUEST

24    TO HAVE APPLE IN-HOUSE COUNSEL EXCUSED.

25         THE COURT:  WELL, I THINK WE TALKED ABOUT

1    CLEARING THE COURTROOM THE LAST TIME.  I CAN'T

2    REMEMBER WHICH COUNSEL IN THE PATENT CASE I HAD THE

3    DISCUSSION WITH IN THE PAST, BUT I'M NOT INCLINED

4    TO DO THAT.

5            I APPRECIATE THE DOCUMENTS MAY ILLUSTRATE

6    CERTAIN POINTS, I THINK SAMSUNG'S POINT HERE IS THE

7    BETTER ONE.  LET'S NOT IMPLICATE THIS PROTECTIVE

8    ORDER AND LET'S HAVE AN OPEN DISCUSSION ABOUT

9    WHAT'S AT STAKE HERE.  I DON'T NEED TO SEE THESE

10   PAPERS TO UNDERSTAND YOUR POINT.  SO LET'S VOID ANY

11   ISSUES THAT REQUIRE ME TO LOCK THE PUBLIC

12   COURTHOUSE, OKAY.

13           MR. OVERSON:  OKAY.

14           BUT YOUR HONOR, I WILL HAVE TO REFER TO

15   WHAT THE CONTENT IS OF WHAT THEY'VE PRODUCED AND I

16   KNOW THAT SAMSUNG HAS TAKEN THE POSITION THAT I

17   CAN'T DO THAT WITHOUT BREACHING THE PROTECTIVE

18   ORDER IN FRONT OF SOMEONE FROM APPLE.

19           WE DON'T AGREE WITH THAT POSITION AS TO

20   THESE DOCUMENTS, WE DON'T AGREE AT ALL.  I WANT TO

21   MAKE THAT CLEAR.  I'M JUST BEING RESPECTFUL OF ONE

22   SIDE HAS SAID I CANNOT DO THIS WITHOUT BREACHING

23   THE PROTECTIVE ORDER.

24           THE COURT:  ALL RIGHT.

25           WELL, YOU KNOW I TRY TO SET THIS ON THE

16

1    FAST TRACK AND BE AS AVAILABLE AND AS OPEN AS I CAN

2    WITH YOU GUYS BUT I THINK I'VE MADE MY POSITION

3    VERY CLEAR THAT I DON'T LIKE CLOSING COURTROOMS.

4           IF WE ARE GOING TO TALK ABOUT

5    CONFIDENTIALLY DESIGNATED INFORMATION, I DON'T SEE

6    AS A PROCEDURAL MATTER THAT I CAN DO ANYTHING OTHER

7    THAN LOCK THE COURTROOM.

8           SO LET'S GET TO THE MERITS HERE, LET'S

9    AVOID ANY OF THESE ISSUES AND FOCUS ON THE

10   ARGUMENT, ALL RIGHT?

11          MR. OVERSON:  THE DOCUMENTS THAT ARE

12   PRODUCED TO US, OVER A THOUSAND PAGES OF THEM WERE

13   PICTURES, PICTURES OF THINGS THAT DON'T HAVE TO DO

14   WITH THIS CASE.

15          SO WHEN WE TAKE INTO ACCOUNT THAT THEY

16   CLAIM WE'VE DONE THIS GREAT JOB, WE PRODUCED ALL

17   THE DOCUMENTS AND THEY LIST THE BATES NUMBERS, IF

18   YOU LOOK AT PARAGRAPH 8 OF THE JENKINS

19   DECLARATION --

20          THE COURT:  YOUR POINT IS THE HANDFUL OF

21   DOCUMENTS PRODUCED INCLUDE PARAGRAPHS OF BILLINGS

22   THAT HAS NOTHING TO DO WITH THIS CASE.

23          MR. OVERSON:  AND MY POINT IS ALSO ALL OF

24   THE DOCUMENTS LISTED UNDER PARAGRAPH 8 OF THE

25   JENKINS DECLARATION DON'T HAVE TO DO WITH WHAT

1     WE'RE LOOKING FOR OR WHAT WAS CALLED FOR.

2          AND THEY ACTUALLY CITED TO THESE

3     DOCUMENTS IN THEIR DECLARATION AS IF THEY SUPPORTED

4     THEIR POSITION THAT THEY'D DONE A GOOD JOB ON THE

5     PRODUCTION.

6          APPLE, FOR ITS PART, HAS DONE IN-PERSON

7     INTERVIEWS, IN-PERSON COLLECTIONS, THEY HAVE DONE

8     THE E-MAIL SWEEPS, WE'VE DONE ATTORNEY REVIEW OF

9     DOCUMENTS BEFORE PRODUCTION, WE'VE DONE ALL THE

10    THINGS WE ARE SUPPOSED TO DO.

11         WE DON'T KNOW WHAT SAMSUNG HAS DONE BUT

12    WHAT WE'VE SEEN IT DOES NOT LOOK LIKE THEY'VE DONE

13    THAT GOOD OF A JOB.

14         THE COURT:  HAVE YOU TOLD THEM YOUR

15    CUSTODIAN?

16         MR. OVERSON:  WE HAVE.  WE PRODUCED A LOT

17    OF DOCUMENTS, WE HAVE A LOT OF DEPOSITIONS.

18         THE COURT:  SO THEY HAVE A LIST.

19         LET'S TAKE THIS FROM THE TOP.  THEY HAVE

20    A LIST OF EACH OF THE INDIVIDUALS FROM WHOM YOU'VE

21    COLLECTED DOCUMENTS?

22         MR. OVERSON:  YES.  I BELIEVE THAT THEY

23    HAVE --

24         THE COURT:  YES OR NO?  DO YOU KNOW THE

25    ANSWER?

1          MR. JACOBS:  I BELIEVE THE STATE OF PLAY

2    IS WE HAVE OFFERED THAT KIND OF TRANSPARENCY ON THE

3    PRODUCTION AND WE HAVEN'T REACHED CLOSURE.

4          THE COURT:  MAYBE WE WILL GET TO THAT.

5    IT SOUNDS LIKE WE ALL AGREE THAT INFORMATION HAS

6    NOT BEEN SHARED.

7          HAVE YOU PROVIDED A LIST OF INDIVIDUALS

8    WHO RECEIVED LITIGATION HOLDS IN THIS MATTER?

9          MR. JACOBS:  SAME ANSWER, YOUR HONOR.  WE

10   HAVE OFFERED AFFIRMATIVELY TO HAVE THAT KIND OF

11   TRANSPARENCY RECIPROCALLY IN BOTH SIDE'S

12   PRODUCTION.

13         WE THINK THAT'S THE ONLY WAY TO GET

14   THROUGH A CASE LIKE THIS WITHOUT A LOT OF

15   MISUNDERSTANDINGS DOWN THE ROAD.

16         WE HAVEN'T REACHED CLOSURE.  I DON'T

17   THINK THEY HAVE SAID NO, BUT WE HAVEN'T REACHED

18   CLOSURE.

19         MR. OVERSON:  WE FAVOR TRANSPARENCY SO WE

20   FAVOR HAVING EVERYTHING ON THE TABLE AS TO WHAT'S

21   HAPPENED.  AND THAT HAS HAPPENED DURING THE

22   COLLECTION PROCESS, SO THE PARTIES HAVE SOME

23   CONFIDENCE IN THE RESULT.

24         SO WHY DO WE KNOW WE HAVEN'T GOTTEN

25   EVERYTHING?  WELL, THERE'S 13 DESIGNERS THAT HAVE

1    BEEN IDENTIFIED IN INTERROGATORY ANSWERS.

2              THE COURT:  THESE ARE INDIVIDUALS WHO ARE

3    IDENTIFIED IN EITHER 26(A) OR RULE 33 RESPONSES AS

4    PARTICIPATING IN THE DESIGN OF THE ACCUSED

5    PRODUCTS?

6              MR. OVERSON:  YES.

7              OUT OF THOSE 13 DESIGNERS, WE HAVE SEVEN

8    E-MAILS, SEVEN TOTAL.

9              THE COURT:  SEVEN E-MAILS FROM THEIR

10   FILES OR SEVEN E-MAILS ON WHICH THOSE INDIVIDUALS

11   APPEAR EITHER AS A SENDER OR RECEIVER?

12             MR. OVERSON:  YES.  AS A SENDER OR

13   RECEIVER.  I DON'T KNOW WHERE THEY CAME FROM.

14             THE COURT:  SO YOU HAVEN'T RECEIVED A

15   CUSTODIAN LOG?

16             MR. OVERSON:  NO.

17             THE COURT:  IN OTHER WORDS, YOU DON'T

18   KNOW FROM WHOSE FILES THE DOCUMENT WAS PRODUCED?

19             MR. OVERSON:  NO, YOUR HONOR.

20             THERE IS ONE LEAD DESIGNER ON ONE OF THE

21   ACCUSED PHONES AND THAT LEAD DESIGNER WAS

22   IDENTIFIED IN A 30(B)(6) DEPOSITION.  WE HAVE ONE

23   E-MAIL FROM THAT PERSON.

24             THE COURT:  WHAT'S THAT INDIVIDUAL'S

25   NAME.

```
1              MR. OVERSON:  MIN HUNG LEE.

2              MR. CHUNG:  MIN HYOUK LEE.

3              MR. OVERSON:  THANK YOU.

4              MR. CHUNG SPEAKS KOREAN.

5              THE COURT:  ALL RIGHT.

6              MR. OVERSON:  SO WE DON'T -- IT'S VERY

7    PLAIN THAT THERE WAS NOT AN E-MAIL TYPE REVIEW.  WE

8    HAVE -- WE DO HAVE SOME KOREANS, WE DO.

9              THE COURT:  AN E-MAIL COLLECTION?

10             MR. OVERSON:  CORRECT.

11             I'M ASSUMING, YOUR HONOR, I DON'T WANT TO

12   CAST ASPERSIONS ON OPPOSING COUNSEL, I'M ASSUMING

13   IT WASN'T COLLECTED.

14             THE COURT:  WELL, TO BE FAIR, EACH OF YOU

15   IN YOUR PAPERS CAST A LOT OF ASPERSIONS AND I WAS

16   GOING TO BRING THIS UP LATER.

17             YOU KNOW, AS I SAID THE LAST TIME, I'VE

18   BEEN THERE AND I KNOW WHAT IT'S LIKE TO WRITE THESE

19   BRIEFS, BUT THE INVECTIVE ON BOTH SIDES DOESN'T

20   HELP ME ANSWER THE QUESTION.

21             SO SINCE YOU BROUGHT UP THE ISSUE OF

22   ASPERSIONS IN THE FUTURE, IT WOULD HELP ME GET AT

23   THE MERITS BY AVOIDING ALL THAT RHETORIC AND

24   PROVIDING SPECIFICS HERE.

25             I HOPE THAT WON'T BE NECESSARY.
```

1          MR. OVERSON:  YES, YOUR HONOR, I WILL

2     TAKE THAT TO HEART.  OUR CONCERN IS THAT THE

3     DOCUMENTS HAVE NOT BEEN COLLECTED.

4          THE COURT:  SURE, I GET THAT.

5          MR. OVERSON:  AND THERE'S AN OFFICE OF

6     DEVELOPMENT AT SAMSUNG THAT APPARENTLY IS INVOLVED

7     IN DECIDING WHAT PRODUCTS ARE PURSUED AND WHICH

8     ONES ARE NOT.

9          WE DON'T KNOW ALL OF THOSE PEOPLE AS TO

10    THESE PRODUCTS.  WE DON'T KNOW WHO AT SAMSUNG SAID,

11    GO FORWARD WITH THIS DESIGN, WE DON'T KNOW THAT

12    INFORMATION SO IT'S HARD -- WE CANNOT JUST SAY HERE

13    ARE THE INDIVIDUALS, GO SEARCH THEIR E-MAIL BECAUSE

14    WE DON'T HAVE THAT INFORMATION.

15         THE COURT:  IS IT YOUR POSITION THAT TYPE

16    OF DOCUMENT WOULD BE RESPONSIVE TO, SAY, REQUEST

17    NUMBER 1 WHICH IS THE DOCUMENT REQUEST WHICH YOU'RE

18    MOVING ON?

19         MR. OVERSON:  YES.

20         THE COURT:  SO IF A GENTLEMAN WITH, MY

21    APOLOGIES, I WILL CALL HIM MR. SMITH.

22         IF MR. SMITH AT SAMSUNG HAS DECIDED WE

23    ARE GOING TO GO TO MARKET ON X DATE WITH THIS

24    DESIGN, THEN YOU WOULD LIKE TO KNOW THAT RIGHT?

25         MR. OVERSON:  YES.

1           THE COURT:  OKAY.

2           HOW IS THAT E-MAIL WHICH SAYS, WE ARE

3   GOING TO GO TO MARKET ON X DAY, RESPONSIVE TO A

4   DOCUMENT REQUEST THAT IS DIRECTED SPECIFICALLY TO

5   AN ANALYSIS OF APPLE PRODUCTS?

6           MR. OVERSON:  WELL, THE DOCUMENT -- FAIR

7   ENOUGH.

8           THE DOCUMENT REQUEST HAS TO DO WITH

9   ANALYSIS OR CONSIDERATION OF APPLE PRODUCTS

10          THE COURT:  AND WE HAVE PRODUCTS, NOW WE

11  ARE TALKING SPECIFICALLY ABOUT THE EMBODIMENTS OF

12  THE THREE DESIGN PATENTS.

13          MR. JACOBS:  YOUR HONOR, IF I MAY ON A

14  TECHNICAL POINT HERE.  I KNOW THIS ISSUE BECAUSE WE

15  ARE WORKING ON IT.

16          THEY POINTED OUT IN OPPOSITION TO THE

17  PRELIMINARY INJUNCTION THAT WE DID NOT ANSWER AN

18  INTERROGATORY ABOUT, AND DECLARE THAT THE IPAD OR

19  IPAD II IS AN EMBODIMENT IN THE TECHNICAL SENSE OF

20  THE IPAD RELATED DESIGN PATENT THAT IS IN SUIT.

21          AND SO I WASN'T SURE WHETHER YOU WERE

22  USING THE TERM IN A TECHNICAL SENSE.  WE ARE

23  TALKING ABOUT THEIR COPYING.  IN THIS PROCEEDING

24  WE'RE TALKING ABOUT THE COPYING OF THE IPHONE AND

25  THE IPADS, IPAD (1) OR IPAD II.

```
1              THE COURT:  FEATURES WHICH ARE CLAIMED IN

2    THE PATENT.

3              MR. JACOBS:  WELL, WHICH LEADS TO THE

4    INFRINGEMENT OF THE PATENT.  AND AS IT HAPPENS, WE

5    WILL BE UPDATING OUR DISCOVERY RESPONSE TODAY AS TO

6    WHETHER THOSE ARE EMBODIMENTS OF THE TECHNICAL

7    LEGAL SENSE OF THE IPAD RELATED PATENT.

8              I THINK THEY ARE GOING TO GO DOWN A PATH

9    IN RESPONDING TO THIS ARGUMENT AND I WANTED TO HEAD

10   THAT OFF BECAUSE I SEE AGITATION AT THE OTHER

11   TABLE.

12             THE COURT:  I'M GOING TO GIVE

13   MS. MAROULIS AMPLE OPPORTUNITY TIME TO ADDRESS IT.

14             MS. MAROULIS:  YOUR HONOR, WOULD YOU LIKE

15   ME TO ADDRESS IT NOW OR LATER?

16             THE COURT:  I WOULD RATHER HAVE YOUR

17   ARGUMENT IN TOTAL.

18             MR. OVERSON:  SO YOUR HONOR, ADDRESSING

19   YOUR CONCERN ABOUT THE E-MAIL, IF THE E-MAIL

20   DOESN'T HAVE ANYTHING TO DO WITH APPLE, WE

21   UNDERSTAND THAT'S NOT RESPONSIVE TO REQUEST NUMBER

22   1.

23             IF THE EXECUTIVE SAID APPLE HAS THIS

24   GREAT FEATURE, WE SHOULD LOOK INTO THAT, THEN IT IS

25   RESPONSIVE.  BECAUSE IT'S GOING -- IT'S A
```

1    CONSIDERATION OF APPLE IN THE CONTEXT OF THE

2    DEVELOPMENT OF THESE PRODUCTS AT THE DESIGN OF THE

3    PRODUCTS.

4            THE COURT:  FAIR ENOUGH.

5            IF HE SAYS THE APPLE IPAD II HAS THIS

6    FEATURE AND IT'S THE FEATURE THAT'S AT ISSUE IN ONE

7    OF THE THREE DESIGN PATENTS, I UNDERSTAND YOUR

8    POINT.

9            BUT AGAIN, IF HE'S SIMPLY COMMENTING ON

10   THE DESIGN OR DEVELOPMENT PRODUCT OUTSIDE OF THE

11   CONTEXT OF A COMPARISON TO APPLE, IT'S NOT

12   RESPONSIVE TO REQUEST 1.

13           MR. OVERSON:  SO WE HAVE ADDITIONAL

14   REQUESTS THAT WENT TO THOSE KINDS OF DOCUMENTS.

15           THE COURT:  BUT THEY ARE NOT BEFORE ME.

16           MR. OVERSON:  CORRECT.

17           WHAT WE TRIED TO DO BECAUSE OF THIS

18   EMERGENCY STATUS WE ARE IN WITH THE REPLY DUE IN

19   TWO DAYS WITH THE HEARING IN TWO WEEKS, WE TRIED TO

20   FOCUS ON THE ONE OF THE MOST IMPORTANT THINGS.

21           AND ONE OF THE MOST IMPORTANT THINGS IS

22   THIS TYPE OF DOCUMENT WHERE THEY ARE DISCUSSING

23   APPLE PRODUCTS.  WHAT WE HAVE SEEN IS WE DIDN'T GET

24   THE DOCUMENTS WHERE THE DESIGNERS ARE TALKING ABOUT

25   APPLE.  THE BUSINESS MEN ARE TALKING ABOUT APPLE.

1              APPLE IS THE MARKET LEADER AND

2     CLEARLY --

3              THE COURT:  CLEARLY, HOW DO I KNOW THAT?

4              MR. OVERSON:  WELL, EVEN THE 30(B)(6)

5     WITNESS SAID THAT, WHICH HAPPENED -- THE DEPOSITION

6     HAPPENED AFTER, YOUR HONOR, EVEN HE SAID THEY

7     ALWAYS EVALUATE ALL OF THE APPLE PRODUCTS.

8              THE COURT:  WELL, IT'S ONE THING TO

9     EVALUATE THE PRODUCTS.

10             WHAT PROOF DO I HAVE IN THE RECORD BEFORE

11    ME THAT THERE ARE E-MAIL COMMUNICATIONS LOOKING AT

12    THESE CLAIMED FEATURES THAT YOU'RE NOT RECEIVING?

13             BECAUSE THAT'S THE QUESTION I HAVE TO

14    ANSWER, RIGHT?  I CAN'T JUST IMAGINE WHAT MIGHT BE

15    THERE, I HAVE TO LOOK AT WHAT IS THERE.  HELP ME.

16             MR. OVERSON:  SO THE FACTS THAT WE HAVE

17    NO E-MAILS WHATSOEVER FROM SEVERAL OF THE

18    DESIGNERS.  THE FACT THAT WE HAVE ONE E-MAIL FROM

19    THE LEAD DESIGNER OF ONE OF THE ACCUSED PRODUCTS.

20    THE FACT THAT WOOK YAN KHO, W-O-O-K Y-A-N K-H-O,

21    WAS STATED IN AN INTERROGATORY ANSWER, THIS IS ALL

22    HAPPENING AS WE SPEAK, IT'S KIND OF REAL TIME.  BUT

23    HE CONSIDERED, THEY ADMITTED THEY CONSIDERED THE

24    APPLE PRODUCT IN THE PROCESS OF THE DESIGN.  WE

25    HAVE NOTHING FROM HIM.

                                                    26

1          THE FACT THAT AN EXECUTIVE AT SAMSUNG WAS

2     QUOTED IN THE PRESS AS SAYING THAT THE APPLE

3     PRODUCT WAS THINNER AND THAT THE SAMSUNG I-TABLET

4     PRODUCT WOULD HAVE TO BE REDESIGNED.

5          THE COURT:  IS IT TRUE THAT STATEMENT WAS

6     LATER CORRECTED BY THE VERY SAME PERIODICAL WHICH

7     PUBLISHED IT?

8          MR. OVERSON:  I DIDN'T THINK THAT WAS

9     CLEARLY ESTABLISHED FROM THE OPPOSITION PAPERS.

10          THE COURT:  WELL, I'M NOT SURE WHAT THAT

11     MEANS.  DID THEY RETRACT IT OR DIDN'T THEY?

12          MR. OVERSON:  I CANNOT SEE.  I LOOKED --

13          THE COURT:  YOU ARE NOT AWARE OF ANY

14     RETRACTION AT ALL?

15          MR. OVERSON:  I HAVE NOT SEEN THAT.  AND

16     THEY HAVEN'T GIVEN YOU EVIDENCE TO THAT EFFECT.

17          THE ONLY THING I HAVE IS WHAT'S IN THE

18     OPPOSITION PAPERS.

19          BUT IN ANY EVENT, THE FACT OF WHETHER

20     THEY RETRACTED IT OR NOT, THERE WAS EVIDENCE

21     SOMETHING WAS SAID AND THERE WAS A FEW E-MAILS

22     ABOUT IT AFTERWARDS.

23          OBVIOUSLY THERE'S NO DISPUTE THAT THEY --

24     THE CHRONOLOGY GOES, THEY HAVE A TABLET, THE IPAD

25     II COMES OUT, IT'S THINNER, THEY REDESIGN A THINNER

1    TABLET.  THAT'S JUST A FRACTION -- IT'S WITHIN A

2    PERCENTAGE POINT OR TWO OF THE THINNESS OF THE

3    APPLE PRODUCT.

4              THE COURT:  AND IS THE RELATIVE THICKNESS

5    OF THE PRODUCT, I SHOULD SAY THE OBJECTIVE

6    THICKNESS OF THE PRODUCT, IS THAT AN ISSUE RELEVANT

7    TO ANY OF THE THREE DESIGN PATENTS?

8              MR. OVERSON:  THAT'S AN ISSUE THAT'S BEEN

9    FILED, YOUR HONOR, YES.

10             OKAY.  SO AGAIN, WE -- WHAT WE'RE LOOKING

11   FOR HERE IS SOME FAIRNESS.  THEY ARE SAYING LOOK,

12   THERE'S NO EVIDENCE OF COPYING, APPLE HAS FAILED,

13   THEY HAVEN'T PRESENTED ANYTHING THAT SHOWS COPYING

14   AND YET THEY ARE MAKING THESE KINDS OF OBJECTIONS

15   TO OUR DOC REQUESTS AND THEY ARE NOT TELLING US

16   WHAT THEY ARE DOING IN TERMS OF THE PRODUCTION.

17   AND THEY HAVEN'T TOLD YOUR HONOR, WE PERFORMED A

18   THOROUGH SEARCH AND PRODUCED ALL RESPONSIVE

19   DOCUMENTS; THEY HAVE NOT SAID THAT.

20             WHAT WE ARE LOOKING FOR FROM YOUR HONOR

21   IS AN ORDER SAYING THEY SHOULD DO THAT.

22             THE COURT:  I DON'T WANT TO JUMP AHEAD IN

23   YOUR ARGUMENT, BUT DO YOU WANT TO SPEAK

24   SPECIFICALLY TO MR. LEE'S DOCUMENTS?  I THINK THAT

25   WAS AN ISSUE THAT WAS THE SUBJECT OF A PARTICULAR

1      DOCUMENT REQUEST, CORRECT?

2                  MR. OVERSON:  CORRECT.

3                  SO MR. LEE WAS QUOTED IN THE PRESS AS

4      SAYING, WE WILL HAVE TO IMPROVE THE PARTS THAT ARE

5      INADEQUATE, APPLE MADE IT VERY THIN.

6                  SO OUR REQUEST IS VERY SIMPLE, WE WANT

7      THE DOCUMENTS TO/FROM FROM MR. LEE HAVING TO DO

8      WITH THAT.  IT'S A VERY, VERY NARROW REQUEST.

9                  THE COURT:  YOU GOT SOME.

10                 MR. OVERSON:  WE GOT SOME AND WHEN WE MET

11     AND CONFERRED WE WEREN'T EVEN TOLD THAT THEY WOULD

12     AGREE TO SEARCH.

13                 I SAID, CAN YOU AT LEAST AGREE TO SEARCH?

14     THEY SAID, WE CAN'T TELL YOU WHETHER WE WILL SEARCH

15     OR NOT.

16                 SO --

17                 THE COURT:  AND I'M GOING TO HEAR FROM

18     SAMSUNG AS I SAID IN JUST A MINUTE, BUT YOU ARE

19     TELLING ME IN A MEET AND CONFER ON A REQUEST

20     SPECIFICALLY DIRECTED TO THIS GENTLEMAN, BASED ON A

21     STATEMENT HE MADE IN A PUBLIC NEWSPAPER, THE

22     RESPONSE FROM OPPOSING COUNSEL, SOMEBODY SITTING AT

23     THAT TABLE WAS, WE WILL NOT COMMIT TO SEARCHING

24     THIS GENTLEMAN'S FILES?

25                 MR. OVERSON:  IT WAS MS. CHAN,

1    YOUR HONOR.  MELISSA CHAN.

2              SO SHE SAID, I CAN'T TELL YOU ONE WAY OR

3    ANOTHER WHETHER WE AGREE TO SEARCH THOSE FILES.

4              THAT'S THE ACCURATE WAY OF PUTTING IT.

5              AND WHAT DO THEY SAY IN THE PAPERS?  THEY

6    ARE NOT SAYING, WE'VE DONE IT, LET'S COMPLETE THE

7    SEARCH.  IN FACT, WITH THIS REQUEST THEY SAY THEY

8    WILL PRODUCE AFTER A REASONABLE SEARCH.

9    ESSENTIALLY CONCEDING THAT THEY HAVEN'T DONE THE

10   SEARCH.

11             THE COURT:  AND THIS IS, BY THE WAY, A

12   REQUEST YOU MADE ON AUGUST 26TH, CORRECT?

13             MR. OVERSON:  THAT'S CORRECT.

14             THE COURT:  THE LAST DAY YOU COULD SERVE

15   THE REQUEST.

16             MR. OVERSON:  LET ME ADDRESS THAT.

17             SO WE SERVED REQUEST NUMBER 1 ON

18   JULY 12TH.  IN THE INTERIM AFTER THAT THE JUDGE --

19   JUDGE KOH SET A SCHEDULE.

20             THE SCHEDULE CONTEMPLATED THAT APPLE

21   WOULD HAVE A FEW DAYS AFTER RECEIVING THE

22   OPPOSITION PAPERS FROM SAMSUNG TO ISSUE REQUESTS.

23   THEIR OPPOSITION PAPERS CAME IN ON THE 22ND OF

24   AUGUST, WE ISSUED THE REQUEST BY THE DUE DATE ON

25   THE 26TH.

1         SO IT IS -- THE STRUCTURE OF THE

2    PROCEEDING WAS SUCH THAT WE -- HAVING THE

3    OPPORTUNITY TO LOOK AT THE OPPOSITION AND THEN

4    DECIDING WHAT WE NEEDED.

5         OKAY.  SO I WOULD SAY ON THE ISSUE WITH

6    MR. LEE, IT'S SIMPLY THEY ADMITTED IN THEIR

7    OPPOSITION PAPERS THAT THEY HAVEN'T DONE THE SEARCH

8    YET.

9         SO WE BELIEVE WE DESERVE AN ORDER SAYING

10   THEY SHOULD DO THE SEARCH AND PRODUCE PROMPTLY.

11   AND WE WOULD SUGGEST PROMPTLY MEANS WE CAN GET TO

12   THIS AT THE END BUT PROMPTLY MEANS BY NEXT TUESDAY.

13        THERE'S ALSO REQUESTS, YOUR HONOR,

14   RELATING TO MARKETING AND SURVEY DOCUMENTS.  AGAIN,

15   THEY SAY WE HAVE PRODUCED A LOT ALREADY.  THEY

16   DON'T SAY WE'VE DONE A REASONABLE SEARCH, WE'VE

17   PRODUCED ALL RESPONSIVE DOCUMENTS.

18        THE COURT:  I HAD A QUESTION ABOUT YOUR

19   CHOICE OF LANGUAGE ON THE REQUESTS AT LEAST WITH

20   RESPECT TO EITHER ONE OR THE OTHER, I CAN'T

21   REMEMBER IF IT WAS MARKETING OR THE CONSUMER SURVEY

22   REQUEST.

23        AS I READ YOUR REQUEST, IT REFERENCED

24   PRODUCTS AND THE DEFINITION OF PRODUCTS SEEMED TO

25   BE, SAMSUNG PRODUCTS, NOT APPLE PRODUCTS.

1          SO AM I MISREADING OR MISUNDERSTANDING

2     THE REQUEST ITSELF?  OR AM I RIGHT?

3          MR. OVERSON:  SO THERE ARE TWO DIFFERENT

4     REQUESTS THAT RELATE TO THIS SUBJECT.  AND REQUEST

5     NUMBER 214 GOES TO ALL DOCUMENTS RELATING TO THE

6     MARKETING OF PRODUCTS AT ISSUE THAT DISCUSSED OR

7     REFER DIRECTLY OR INDIRECTLY TO APPLE OR APPLE

8     PRODUCTS INCLUDING, AND THEN THERE'S A LIST AND

9     MARKETING, PLANS, MARKET SURVEYS, FOCUS GROUP

10    STUDIES.

11          SO TO THE EXTENT THAT THERE ARE APPLE

12    MARKET SURVEYS THAT ARE RELATED TO THESE PRODUCTS,

13    AND I CAN'T IMAGINE WHY THEY WOULD BE DOING MARKET

14    SURVEYS ON APPLE, ON THE IPHONE, IF IT DOESN'T

15    RELATE TO THIS PRODUCT.

16          SO I BELIEVE THAT QUESTION WOULD BE

17    ADDRESSED BY DOCUMENT REQUEST NUMBER 214 RATHER

18    THAN 206 WHICH WE CONCEDE DOES NOT GO TO THE APPLE

19    PRODUCTS.

20          OKAY.  IT'S CURIOUS HERE YOUR HONOR, AND

21    AGAIN THIS IS A THEME HERE THAT THEY ARE NOW

22    ARGUING WELL, THESE SURVEYS ARE RELEVANT BECAUSE

23    THEIR OWN IRREPARABLE HARM EXPERT MR. WAGNER HAS

24    RELIED EXTENSIVELY ON SURVEYS.

25          AND I PUT IN THE BINDER AND I WON'T

1    REFERENCE IT BECAUSE I'M TAKING YOUR DIRECTION

2    YOUR HONOR THAT I NOT DISTRACT US, BUT PARAGRAPHS

3    81 THROUGH 84 OF THE WAGNER DECLARATION GO THROUGH

4    APPLE'S LACK OF SURVEY EVIDENCE, AND MORE

5    IMPORTANTLY HIS RELIANCE ON DIFFERENT SURVEYS.

6            THEIR EXPERT HAS USED AN APPLE SURVEY AND

7    SAID, SEE, THERE'S NO IRREPARABLE HARM, LOOK AT

8    THIS APPLE SURVEY THAT APPLE PRODUCED, AND SAYING

9    PEOPLE AREN'T AS INTERESTED IN THESE QUALITIES AS

10   APPLE SAYS, LOOK AT THE SURVEY, OKAY.

11           SO THEY WON'T GIVE US THE SURVEYS ON

12   THEIR SIDE.  I MEAN, THIS IS AN IMBALANCE THAT

13   SHOULD NOT BE ALLOWED TO --

14           THE COURT:  COULD YOU SHED SOME MORE

15   LIGHT ON MR. WAGNER'S THEORY?  WHAT EXACTLY IS HE

16   SAYING?  I DON'T UNDERSTAND OR FOLLOW THE POINT,

17   AND I UNDERSTAND HE'S NOT YOUR EXPERT.

18           MR. OVERSON:  MR. WAGNER, I CAN HELP ON

19   THAT SINCE I TOOK HIS DEPOSITION SO I COULD HELP ON

20   THAT.

21           THE COURT:  ALL RIGHT.

22           MR. OVERSON:  ON THE SURVEY FRONT

23   MR. WAGNER IS LOOKING AT SURVEY RESULTS AND

24   DECIDING WHETHER THERE HAS BEEN ANY BRAND EROSION

25   OR DAMAGE TO APPLE AS A RESULT OF THE SALES OF THE

33

1      SAMSUNG PRODUCTS.

2            AND ONE OF THE WAYS HE ATTEMPTS TO

3      BUTTRESS HIS POSITION IS BY SAYING APPLE'S BRAND IS

4      REALLY, REALLY STRONG.  IT'S NOT GOING TO GET HURT

5      BY THIS, PEOPLE KNOW WHAT APPLE IS.

6            HE ALSO LOOKS AT WHETHER DESIGN, WE ARE

7      TALKING LARGELY ABOUT DESIGN PATENTS, WHETHER

8      DESIGN MATTERS TO PEOPLE.

9            HIS POSITION IS THESE SURVEYS SHOW PEOPLE

10     CARE ABOUT OTHER THINGS, THEY DON'T CARE ABOUT

11     DESIGN AS MUCH.

12            THE COURT:  SO AS PART OF THE BODY OF

13     EVIDENCE WHICH HE POINTS TO SUPPORT THESE

14     CONCLUSIONS HE IDENTIFIES ONE OR MORE APPLE

15     SURVEYS.

16            MR. OVERSON:  CORRECT.

17            THE COURT:  AND SAYS, HEY, IF YOU LOOK AT

18     THAT INFORMATION YOU WILL SEE NOTHING IN HERE ABOUT

19     ANY ISSUE IN THIS CASE; FAIR ENOUGH?

20            MR. OVERSON:  WELL, YOU WILL SEE RESULTS

21     THAT SHOW THAT THIS IS NOT SO IMPORTANT SO THERE'S

22     NO IRREPARABLE HARM.

23            THE COURT:  ALL RIGHT.

24            MR. OVERSON:  SO AGAIN WE DESERVE A

25     REPRESENTATION THAT THERE'S BEEN A REASONABLE

1    SEARCH ON ALL RESPONSIVE DOCUMENTS ON THE SURVEY

2    MARKETING FRONT HAS BEEN PRODUCED.

3             THE SAME THING GOES FOR THE CONSUMER

4    CONFUSION REQUEST WHICH IS 215.

5             SO AGAIN, LET ME GO THROUGH THE

6    CHRONOLOGY HERE.

7             WE ASKED FOR A CONSUMER CONFUSION RELATED

8    DOCUMENTS ON EXHIBIT E, PAGE 48 IS EXHIBIT E TO THE

9    BARTLETT DECLARATION RATHER.  PAGE 48 YOU WILL SEE

10   THEIR RESPONSE, THERE WAS NOTHING ABOUT IRRELEVANCE

11   OF CONSUMER CONFUSION.  THEY DIDN'T OBJECT ON THAT

12   IN WRITING.

13            AND IN FACT THEY COULDN'T BECAUSE THEIR

14   OWN EXPERT HAS STATED THAT CONSUMER CONFUSION IS

15   THE KEY FACTOR THAT SHOULD BE LOOKED AT TO DECIDE

16   WHETHER THERE'S BEEN HARM TO THE BRAND EQUITY OF

17   APPLE OR NOT.

18            THE COURT:  THIS IS MR. WAGNER AGAIN?

19            MR. OVERSON:  YES.

20            SO MR. WAGNER, PARAGRAPH 18, 20, 22, 31

21   OF HIS DECLARATION ALL GO ON ABOUT HOW CONSUMER

22   CONFUSION IS THE ONLY WAY THAT APPLE COULD HAVE

23   BEEN HURT.  AND BECAUSE APPLE DIDN'T SUBMIT

24   ANYTHING ON THAT IN THEIR OPENING PAPERS, I FIND

25   THERE'S NO BRAND DILUTION, THERE'S NO EROSION.

1          THE COURT:  SO IF YOU CAN INDULGE ME FOR

2     A MOMENT, I WANT TO MAKE SURE I'M FOLLOWING THIS.

3          SO IN A NUT SHELL, WE ARE IN THE CONTEXT

4     HERE OF A PRELIMINARY INJUNCTION MOTION AND PUTTING

5     ASIDE THE UTILITY PATENT FOR THE MOMENT, WE HAVE A

6     QUESTION AS TO WHETHER UNDER EGYPTIAN GODDESS AN

7     ORDINARY OBSERVER WOULD BE ABLE TO DISTINGUISH

8     BETWEEN THE PRODUCT THAT'S ACCUSED AND THE

9     ORNAMENTAL DESIGN THAT'S CLAIMED, FAIR ENOUGH?

10         MR. OVERSON:  YES.

11         THE COURT:  AND THAT REALLY GOES TO THE

12    ISSUE IN THE CONTEXT OF A PI MOTION OF THE MERITS

13    OF THE CLAIM.

14         YOUR POSITION -- YOUR ARGUMENT IS THAT

15    SEPARATE OR BEYOND THE MERITS QUESTION THERE'S THIS

16    QUESTION OF WHETHER YOUR CLIENT WILL SUFFER

17    IRREPARABLE HARM AS A RESULT OF OR FLOWING FROM

18    THAT INFRINGEMENT.

19         MR. OVERSON:  CORRECT.

20         THE COURT:  THAT'S THAT PRONG OF THE

21    ANALYSIS THAT THE CONFUSION ISSUE BECOMES RELEVANT.

22    HAVE I BASICALLY FOLLOWED YOUR ARGUMENT?

23         MR. OVERSON:  CORRECT, YOUR HONOR.

24         THE COURT:  OKAY.  ALL RIGHT.

25         MR. OVERSON:  BUT THE ARGUMENT IS FAIRLY

1    SIMPLE.

2              WHEN YOU ARE A LITIGANT, YOU CAN'T HAVE

3    YOUR EXPERT GET UP AND SAY, APPLE DOESN'T HAVE ANY

4    PROOF OF THIS PARTICULAR THING, CONSUMER CONFUSION.

5    THAT'S THE ONLY WAY THAT THEY COULD HAVE BEEN

6    HARMED ON THE BRANDS.

7              THE COURT:  BY THE WAY, DO YOU AGREE WITH

8    MR. WAGNER THAT IT'S A NECESSARY OR ESSENTIAL

9    CONDITION THAT APPLE DEMONSTRATE CONSUMER CONFUSION

10   IN ORDER TO SECURE A PI IN THIS CASE?

11             MR. OVERSON:  NO.

12             THE COURT:  I SUSPECTED NOT.

13             NEVERTHELESS, YOUR POINT IS THAT'S HIS

14   POSITION AND WE ARE ENTITLED TO TEST HIM.

15             MR. OVERSON:  YES.

16             THE COURT:  OKAY.

17             MR. OVERSON:  OKAY.

18             AND SO ON THE CONSUMER CONFUSION FRONT WE

19   SAW IN THE OPPOSITION PAPERS A DECLARATION SAYING

20   THAT THIS WOULD BE TOO HARD, WE HAVE ALL THESE

21   CONSUMER RECORDS AND CALL DATABASES BUT THIS IS

22   JUST TOO DIFFICULT.

23             AND TO THAT I SAY THEY'VE ADMITTED YOU

24   CAN'T EXPORT THE DATA INTO AN EXEL FORMAT AND THEN

25   IT'S SEARCHABLE.

1           AND THE FACT THAT IT'S DIFFICULT, THERE'S

2    A LOT OF THINGS DIFFICULT IN THIS CASE.  AND THE

3    FACT THAT THEY WAITED THIS LONG TO THINK ABOUT

4    DOING IT IS ALSO DISTURBING.

5           THE COURT:  WELL, SHORT OF GETTING

6    SAMSUNG'S SUPPORT ORGANIZATION TO EXPORT ITS

7    ENTIRE, I CAN'T IMAGINE THE SIZE OF THEIR DATABASE

8    SYSTEM, WHAT LIMITATIONS HAVE YOU PROPOSED OR

9    OFFERED TO MINIMIZE THAT BURDEN?

10          WHAT WOULD YOU HAVE IN MIND?  SURELY YOU

11   DON'T WANT TO KNOW ABOUT EVERY COMPLAINT OF EVERY

12   SAMSUNG TOASTER, FOR EXAMPLE, RIGHT?

13          MR. OVERSON:  YOU ARE ABSOLUTELY RIGHT.

14          AND SO WHAT WE WOULD PROPOSE IS THAT -- I

15   MEAN, WE COULD COME UP WITH A LIST OF TEN SEARCH

16   TERMS TODAY.

17          THE COURT:  HAVE YOU MADE THAT PROPOSAL

18   TO THEM?

19          MR. OVERSON:  I HAVE NOT GIVEN THEM

20   SPECIFIC TERMS.

21          THE COURT:  ALL RIGHT.

22          MR. OVERSON:  BUT WE WOULD -- WE COULD

23   COME UP WITH A LIST OF SEARCH TERMS AND THEY WOULD

24   BE THINGS LIKE IPAD, APPLE, THERE WOULD BE MAYBE

25   FACE TIME, APPLICATIONS THAT RUN ON APPLE BUT NOT

1    ON SAMSUNG, MAYBE ITUNES.  THOSE ARE THE KINDS OF

2    SEARCH TERMS WE WOULD BE TALKING ABOUT.

3              THE COURT:  SO I TAKE IT THE KIND OF

4    RECORD YOU ARE MOST INTERESTED IN IS SOMETHING LIKE

5    THE FOLLOWING:  A COMPLAINT FROM AN INDIVIDUAL HERE

6    IN SAN JOSE, CALIFORNIA TO THE SAMSUNG HELP DESK

7    THAT THEIR TABLET OR THEIR PHONE DOESN'T HAVE QUOTE

8    "THE FEEL OR THE FEATURE THAT THE IPAD HAS," WHICH

9    HAPPENS TO BE CLAIMED IN YOUR PATENT.

10             IS THAT THE KIND OF THING YOU ARE TRYING

11   TO GET AT?

12             MR. OVERSON:  CERTAINLY WE BELIEVE IT HAS

13   THE FEEL.  SO IT'S MORE THE FEATURE.

14             THE COURT:  YOU WOULD LIKE SOME EVIDENCE

15   THAT THE PUBLIC AGREES WITH YOU, RIGHT?

16             MR. OVERSON:  THE PUBLIC, WE BELIEVE THAT

17   THERE WILL BE EVIDENCE THAT THE PUBLIC THOUGHT THEY

18   COULD RUN THEIR ITUNES ON THE SAMSUNG PHONE, THE

19   ACCUSED PHONE.

20             THE COURT:  ALL RIGHT.

21             MR. OVERSON:  OKAY.

22             SO THE OTHER OBJECTIONS I THOUGHT WERE

23   MOSTLY TO -- WERE, WE THOUGHT, WERE NOT TERRIBLY

24   STRONG LIKE THAT.  THERE MIGHT BE MISSPELLINGS,

25   THAT IT MIGHT NOT WORK, AND WE CAN DEAL WITH THAT.

1          I THINK THE KEY THING IS COMING UP WITH A

2     LIST OF TERMS AND DOING IT.

3          FINALLY, I WANT TO CLARIFY ON SANCTIONS.

4     WE DID NOT FILE A SEPARATE SANCTIONS MOTION AND THE

5     PROPOSED ORDER DOESN'T SAY ISSUE SANCTIONS,

6     YOUR HONOR.

7          THE COURT:  WHICH MEANS I DON'T HAVE A

8     MOTION FOR SANCTIONS BEFORE ME AS A LOCAL RULE.

9          MR. OVERSON:  CORRECT.

10         AND THIS WAS NOT INTENDED TO BE A

11    SANCTIONS MOTION, THAT'S WHY WE DID NOT DO THAT.

12         WHAT WE ARE ASKING FOR IS AN ORDER TO

13    PRODUCE BY A DATE CERTAIN.  OUR REPLY IS DUE

14    FRIDAY, WE UNDERSTAND THAT'S NOT GOING TO BE

15    REALISTIC BUT WE ARE ASKING THAT THE COURT MAKE

16    THAT DATE CERTAIN, BE NEXT TUESDAY.

17         A LOT OF THESE DOCUMENTS ARE GOING TO

18    COME IN KOREAN.  WE ARE VERY FORTUNATE TO HAVE

19    MR. CHUNG WHO SPEAKS KOREAN ON OUR TEAM, BUT IT'S

20    GOING TO TAKE US SOME TIME TO PROCESS THAT.  AND WE

21    ARE GOING TO WANT TO TRY TO PROCESS THESE DOCUMENTS

22    FOR PURPOSES OF USE IN THE PI PROCEEDINGS.

23         THE COURT:  AND YOUR PI HEARING BEFORE

24    JUDGE KOH IS ON THE 13TH?

25         MR. OVERSON:  CORRECT.

1          SO WE WOULD ALSO ASK THAT WE, WHEN THE

2     PRODUCTION HAPPENS WE GET A LETTER FROM OPPOSING

3     COUNSEL CERTIFYING THAT A REASONABLE SEARCH HAS

4     BEEN DONE INCLUDING IN KOREA.

5          AND FINALLY, WE REQUEST THAT THERE BE

6     ORDERED -- THAT WE GET A DEPOSITION OF A 30(B)(6)

7     WITNESS ABOUT THE COLLECTION PROCESS.

8          WITHOUT THIS ORDER WE WILL NOT GET ANY

9     INFORMATION BECAUSE WE'RE TOLD IT'S WORTH NOTHING.

10         THE COURT:  HAVE YOU SERVED A DEPOSITION

11    NOTICE TO THAT EFFECT?

12         MR. OVERSON:  WE HAVEN'T BECAUSE WE ARE

13    PAST THE TIME AND THERE'S OBJECTIONS ALREADY ABOUT

14    BEING PAST THE TIME.

15         SO WE DIDN'T ANTICIPATE THAT WE WOULD

16    HAVE HAD THIS KIND OF PROBLEM.

17         I'M ABOUT TO SIT DOWN, THERE HAS TO BE

18    SOME CONSEQUENCES THOUGH.  WE DIDN'T MOVE FOR A

19    SANCTION MOTION HERE BUT THERE HAS TO BE SOME

20    CONSEQUENCES IF WE JUST DON'T GET THE INFORMATION.

21         IF THEY'RE DELAYED, DELAYED, DELAYED AND

22    WE ARE TWO WEEKS BEFORE THE HEARING AND THEY ARE

23    PAST THE DEADLINE AND NOW THEY ARE DOING A

24    REASONABLE SEARCH ON THESE THINGS, THERE SHOULD BE

25    SOME CONSEQUENCES NOW TO SAMSUNG.

```
 1              AND WE WOULD ASK YOUR HONOR THAT IF

 2     YOUR HONOR AGREES THEY HAVE TO PRODUCE BY A DATE

 3     CERTAIN THAT WE BE GIVEN THE OPPORTUNITY TO COME

 4     RIGHT BACK IN IF SOMEHOW THAT DOESN'T HAPPEN.

 5              THE COURT:  ALL RIGHT.

 6              YOU WILL HAVE SOME OPPORTUNITY FOR

 7     REBUTTAL AS WELL.

 8              THANK YOU FOR YOUR ARGUMENT.

 9              MS. MAROULIS?

10              MS. MAROULIS:  GOOD MORNING, YOUR HONOR.

11              THANK YOU FOR LISTENING TO US ON THE

12     SHORT NOTICE.

13              I WANT TO BEGIN WITH THE QUESTION

14     YOUR HONOR POSED FOR COUNSEL FOR APPLE EARLIER IN

15     THE ARGUMENT WHICH IS THE SIMILARITY OF PRODUCT

16     MATTER IN THE PATENT DESIGN INFRINGEMENT CASE.

17              AND THE FEDERAL CIRCUIT LAW SAYS IT DOES

18     NOT MATTER.  THERE'S LAW THAT WE CITED --

19              THE COURT:  THAT'S WHAT SUN HILL SAYS.

20              MS. MAROULIS:  SUN HILL, KEYSTONE AND

21     MANY OTHER CASES THAT SAY FOR THE PURPOSES OF

22     LIABILITY YOU COMPARE ACCUSED PRODUCT TO AN

23     ASSERTED DESIGN PATENT AND SPECIFICALLY THE

24     FEATURES THAT ARE ASSERTED.

25              SO THE FIRST ORDER OF BUSINESS IS THAT
```

1    ANY ALLEGED SIMILARITY OF PRODUCTS IS NOT REALLY

2    RELEVANT FOR THEIR PI MOTION.

3              THE SECOND IS, AND I CAN SAY THAT BECAUSE

4    I THINK THE ONLY PERSON IN THE AUDIENCE IS APPLE

5    COUNSEL, IN THEIR INTERROGATORY RESPONSES THEY

6    ADMITTED THAT IPAD II OR IPAD IS NOT AN EMBODIMENT

7    OF THEIR PATENT THAT COVERS THE TABS.

8              SO MR. JACOBS HERE REPRESENTED THEY WERE

9    GOING TO CHANGE THE INTERROGATORY.  IT SOUNDS LIKE

10   THEY WANT TO CHANGE IT FROM YES TO NO, ERRATICALLY.

11             BUT THE RECORD SHOWS THE TAB IS NOT AN

12   EMBODIMENT OR THE IPAD IS NOT AN EMBODIMENT OF THE

13   PATENT.

14             AND THAT'S A VERY SIGNIFICANT ISSUE

15   BECAUSE PART OF MR. OVERSON'S ARGUMENT FOCUSED ON

16   THAT STATEMENT BY LEE DON-JOO, ONE OF THE

17   EXECUTIVES FROM SAMSUNG, RELATED TO THE IPAD II.

18             AND WHILE WE HAVE PRODUCED A NUMBER OF

19   DOCUMENTS RELATED TO THE STATEMENTS, WE ARE

20   POSITIVE THIS IS NOT RELEVANT TO THE PRELIMINARY

21   INJUNCTION MOTION WHICH IS FUNDAMENTALLY ABOUT

22   ALLEGED PATENT INFRINGEMENT.

23             THE COURT:  WELL, I THINK YOU UNDOUBTEDLY

24   HEARD WHAT I HAD POSED TO OPPOSING COUNSEL JUST A

25   FEW MOMENTS AGO.

 1              I TEND TO AGREE THAT FOR PURPOSES OF

 2      LIABILITY OR MERITS ASSESSMENT EGYPTIAN GODDESS,

 3      SUN HILL SET THE METES AND BOUNDS OF WHAT'S

 4      APPROPRIATE FOR DISCOVERY.

 5              BUT A MOTION FOR PI ADDRESSES THE MORE

 6      FUNDAMENTAL OR BROADER QUESTION OF IRREPARABLE

 7      HARM, DOES IT NOT?

 8              DOESN'T THAT HARM ANALYSIS GO BEYOND

 9      SIMPLY WHETHER THIS PARTICULAR FEATURE HAPPENS TO

10      INFRINGE THEIR CLAIM?

11              MS. MAROULIS:  YES, YOUR HONOR.

12              AND FOR THAT REASON WE HAVE PRODUCED A

13      NUMBER OF DOCUMENTS THAT ARE CUSTOMER SURVEYS IN

14      VARIOUS MARKETING DOCUMENTS THAT OTHERWISE WOULD BE

15      COMPLETELY IRRELEVANT TO THE PATENT CASES BECAUSE

16      OUR EXPERT DID RELY ON VARIOUS PUBLICLY AVAILABLE

17      SURVEYS.

18              SO ONE OF THEIR REQUESTS GOES TO --

19              THE COURT:  THESE WERE ALL PUBLICLY

20      AVAILABLE SURVEYS?

21              MS. MAROULIS:  MR. WAGNER RELIED ON SOME

22      PUBLICLY AVAILABLE DATA AND SOME PRODUCED BY APPLE.

23              BUT THERE ARE BASICALLY TWO TYPES OF

24      ISSUES BEFORE YOUR HONOR TODAY:

25              THE FOUR CATEGORIES OF DOCUMENTS WHICH

1     SAMSUNG HAS ALREADY PRODUCED AND WHICH WE BELIEVE

2     THE COMPLAINTS ARE WARRANTED.

3          AND THERE'S ONE CATEGORY OF DOCUMENTS

4     THAT SAMSUNG BELIEVES IS IN DISPUTE, THE ONLY ONE

5     IN DISPUTE AND THAT'S THE DOCUMENTS GOING TO THE

6     CUSTOMER CONFUSION OR ALLEGED CONFUSION.

7          SO WITH RESPECT TO THE FIRST SET OF

8     ISSUES WHICH IS FOUR DIFFERENT CATEGORIES OF

9     DOCUMENTS, WE BELIEVE THAT THE RECORD IS CLEAR FROM

10    THE JENKINS DECLARATION AND FROM OUR BRIEF AND

11    OTHERWISE THAT WE'VE PRODUCED DOCUMENTS AFTER

12    REASONABLE SEARCH THAT ANSWER THESE REQUESTS.

13         THE COURT:  IS IT YOUR POSITION YOU HAVE

14    PRODUCED ALL DOCUMENTS WHICH HAVE BEEN IDENTIFIED

15    AFTER A REASONABLE SEARCH?

16         MS. MAROULIS:  YOUR HONOR, IT'S ALWAYS

17    HARD TO SAY ALL DOCUMENTS WITH A COMPANY OF THAT

18    SIZE.

19         THE COURT:  THAT'S WHY I'M ASKING.

20         MS. MAROULIS:  I THINK NOBODY CAN MAKE A

21    REPRESENTATION.

22         BUT IT'S CLEAR FROM OUR DECLARATIONS THAT

23    WE'VE CONDUCTED THE SEARCH AND WE CAME UP WITH A

24    NUMBER OF DOCUMENTS.  THERE'S A NUMBER OF DOCUMENTS

25    THAT APPLE COUNSEL RIDICULED, BUT THOSE DOCUMENTS

1    COME FROM THE DESIGNER FILES OF SAMSUNG EMPLOYEES

2    AND THEY WERE THEMSELVES INQUIRING DEPOSITIONS

3    ABOUT SOURCE OF INSPIRATION.

4            SO THOSE ARE THE DOCUMENTS THAT PROVIDE

5    SOURCE OF INSPIRATION.

6            THE COURT:  REALLY?  THE EXTERIOR OF A

7    BUILDING WAS SOURCE OF INSPIRATION FOR ONE OF THE

8    PRODUCTS?

9            MS. MAROULIS:  APPARENTLY THIS IS THE WAY

10   DESIGNERS COLLECT IDEAS.

11           THE COURT:  THAT'S YOUR POSITION?  THAT'S

12   WHAT THEY ARE TELLING YOU?

13           MS. MAROULIS:  YOUR HONOR, IT COMES FROM

14   THE DESIGNERS' FILES DIRECTLY AND I WOULD RATHER

15   NOT GO FURTHER INTO THAT TO AVOID PROTECTIVE ORDER

16   ISSUES.

17           THE COURT:  ALL RIGHT.

18           MS. MAROULIS:  AMONG THE DOCUMENTS WE

19   PRODUCED ARE A LOT OF CATEGORIES THAT EXHAUSTIVELY

20   ADDRESS THE ISSUE OF -- FOR EXAMPLE, TWO WEEKS AGO

21   WE WERE BEFORE YOUR HONOR AND APPLE COUNSEL WAS

22   MAKING ARGUMENT THAT CAD TIMES ARE THE AND ALL AND

23   BE ALL.

24           WE PRODUCED THE CAD FILES.  THEY HAVE OUR

25   CAD FILES.  THE CAD FILES SPAN BACK, THEY CAN LOOK

1    AT ITERATIONS OF DESIGN AND MAKE CONCLUSIONS.

2              THE COURT:  WHAT ABOUT SKETCHBOOKS?  YOU

3    WERE VERY PERSUASIVE IN EXPLAINING THE SIGNIFICANCE

4    OF SKETCHBOOKS.

5              MS. MAROULIS:  YOUR HONOR, THE SKETCHBOOK

6    BELONG TO THE INVENTORS OF THE PATENTS.

7              THE COURT:  THEY DON'T HAVE SIMILAR

8    SKETCHBOOKS?

9              MS. MAROULIS:  WE DON'T HAVE SIMILAR

10   SKETCHBOOKS.  WE HAVE LOOSE NOTES AND PRESENTATIONS

11   THAT HAVE BEEN PRODUCED.

12             SO IN THE JENKINS DECLARATION THERE'S A

13   LIST OF DIFFERENT CATEGORIES OF DESIGN DOCUMENTS

14   THAT HAVE BEEN PRODUCED.

15             BUT WHAT YOUR HONOR FOCUSED ON EARLIER

16   CORRECTLY IS THAT REQUEST 1 ACTUALLY DOESN'T GO TO

17   ALL DESIGN DOCUMENTS, IT GOES TO DOCUMENTS WHERE

18   THERE WAS ANY COMPARISON OF THE TIMES.

19             SO IN THE PRODUCTION AS A WHOLE, WE

20   PRODUCED DOCUMENTS REGARDING MARKET ANALYSIS OF

21   APPLE PRODUCTS INCLUDING DOCUMENTS LOOKING AT THE

22   INTERNALS OF THE IPHONES, THE TEAR DOWNS.  SO THOSE

23   DOCUMENTS WERE IN THE PRODUCTION.

24             BUT IN PRODUCING OUR DESIGN DOCUMENTS WE

25   ARE NOT OBLIGATED TO MANUFACTURE DOCUMENTS THAT

1    DON'T EXIST.  THEY ARE LOOKING FOR A SMOKING GUN

2    DOCUMENT, A DOCUMENT THAT SAYS WE COPIED SOMETHING

3    FROM APPLE.  WE DON'T HAVE THOSE DOCUMENTS.

4         WE HAVE TAKEN A 30(B)(6) DEPOSITION LAST

5    WEEK --

6         THE COURT:  WELL, JUST TO BE PRECISE,

7    THEIR POSITION, THEIR REPRESENTATIONS THAT YOU HAVE

8    NOT IDENTIFIED ANY SUCH DOCUMENTS BASED ON THE

9    INVESTIGATION YOU HAVE DONE TODAY.

10        I THINK YOU JUST TOLD ME EARLIER YOU

11   CAN'T STAND HERE AND MAKE A REPRESENTATION THAT NO

12   SUCH DOCUMENT EXISTS OF YOUR CLIENT BECAUSE YOU

13   DON'T KNOW.

14        MS. MAROULIS:  THAT'S CORRECT,

15   YOUR HONOR.

16        BUT I DO WANT TO TALK BRIEFLY ABOUT THE

17   30(B)(6) DEPOSITION OF A SAMSUNG REPRESENTATIVE WHO

18   ASKS SPECIFICALLY WHETHER HE INTERVIEWED THE

19   DESIGNERS OF THE PRODUCTS AT ISSUE.

20        HE TESTIFIED HE SPOKE WITH ALL OF THEM

21   AND INQUIRED EXTENSIVELY WHETHER ANY OF THEM

22   CONSIDERED APPLE PRODUCTS WHEN DESIGNING THEIR

23   PRODUCTS, NOT JUST COPYING, BUT ANY CONSIDERATION

24   OF FRAME OF REFERENCE.  THEY TESTIFIED THEY HAVE

25   NOT.

1           THE COURT:  SO HE SPOKE WITH EACH OF

2     THESE 13 INDIVIDUALS?

3           MS. MAROULIS:  HE SPOKE WITH MAYBE 7 OR 8

4     INDIVIDUALS, HE SPOKE WITH PRINCIPAL DESIGNERS FOR

5     ALL OF THE FOUR PRODUCTS AT ISSUE.

6           THE COURT:  IT IS TRUE THOUGH, IS IT NOT,

7     THAT THERE WERE 13 PEOPLE IDENTIFIED IN YOUR

8     INTERROGATORY IN 26(A) RESPONSES?

9           MS. MAROULIS:  THINKING BACK ACTUALLY, HE

10    HAS TALKED TO EVERYONE WHO WAS IDENTIFIED IN

11    INTERROGATORY 1 RESPONSE.  BUT I CANNOT SAY

12    STANDING HERE NOW HE TALKED TO EVERYONE IN THE

13    INITIAL DISCLOSURES.  THAT'S THE DIFFERENCE.  BUT

14    HE DID SPEAK WITH INDIVIDUALS FROM INTERROGATORY 1.

15          THE COURT:  ALL RIGHT.

16          SO AS TO INTERROGATORY 1, OR ANY OF THE

17    OTHER INDIVIDUALS IN 26(A) RESPONSES, HAVE

18    DOCUMENTS BEEN COLLECTED?

19          MS. MAROULIS:  DOCUMENTS HAVE BEEN

20    COLLECTED FROM INDIVIDUALS LISTED IN THE

21    INTERROGATORY 1 TO THE EXTENT THEY HAD THEM, AND

22    ADDITIONAL INDIVIDUALS TOO.  THE DOCUMENT EFFORTS

23    WERE FAIRLY WIDE RANGING.

24          THE COURT:  OKAY.

25          MS. MAROULIS:  AND HERE IF YOUR HONOR

1    DOES REFER SECOND, WE HEARD TODAY THE OFFERS OF

2    TRANSPARENCY FROM APPLE ABOUT THEIR CUSTODIAN

3    INFORMATION, THAT'S THE FIRST TIME WE'VE HEARD

4    ABOUT THIS.

5              WE ASKED IN DEPOSITIONS, MR. JOHNSON

6    ASKED IN THE BUCHAKJIAN DEPOSITION ABOUT HOW THEY

7    COLLECTED DOCUMENTS, WHAT STEPS THEY TOOK, AND WORK

8    PRODUCT OBJECTION WAS MADE.

9              SO TO THE EXTENT THERE'S GOING TO BE ANY

10   TRANSPARENCY GOING FORWARD, IT HAS TO BE OBVIOUSLY

11   A TWO-WAY STREET, BUT TO DATE THERE HASN'T BEEN

12   THAT TRANSPARENCY.

13             THE COURT:  WHAT'S YOUR POSITION ON THAT?

14             I UNDERSTAND YOU WANT TO HAVE THE SAME

15   RULES APPLY, YOU ARE ENTITLED THAT SENSE OF

16   RECIPROCITY.

17             WHAT DO YOU PROPOSE HERE, A DISCLOSURE OF

18   SUCH INFORMATION OR NOT?

19             MS. MAROULIS:  YOUR HONOR, IN SOME OTHER

20   LITIGATIONS WE ARRIVED AT AGREEMENTS WHERE YOU

21   EXCHANGE CUSTODIAN LISTS AND MUTUALLY AGREEABLE

22   SEARCH TERMS.  THAT IS ACCEPTABLE PRACTICES AND

23   IT'S FREQUENTLY DONE.

24             I THINK THAT ONCE WE GET PAST THE

25   PRELIMINARY INJUNCTION STAGE AND HAVE MORE TIME

1    COLLECTIVELY, WE WILL WORK THAT POSITION OUT.

2              BUT LET IT BE CLEAR THIS IS THE FIRST

3    TIME APPLE REQUESTED IT ALL AND THEY CERTAINLY

4    DIDN'T OFFER IT UNTIL THIS HEARING TOWARD US, AND

5    SO IT'S SOMETHING THAT HELPS LITIGATION TO PROCEED

6    EFFICIENTLY, BUT IN A CONTEXT OF VERY COMPRESSED

7    DISCOVERY PERIOD.  IT HAS NOT BEEN DONE WITH THE

8    PARTIES HERE.

9              AND THE FRAMEWORK OF THIS --

10             THE COURT:  WELL, IF I CAN JUST STOP YOU

11   THERE.

12             I ACCEPT WHAT YOU ARE SAYING FOR THE

13   MOMENT, BUT WHAT I'M MORE INTERESTED IN IS, IN THIS

14   CONTEXT WE ARE HERE IN THE CONTEXT OF THE

15   PRELIMINARY INJUNCTION AND I AGREE THIS IS

16   CERTAINLY THE FIRST TIME I'VE HEARD ABOUT THIS

17   ISSUE.  WHAT IS YOUR POSITION?  SHOULD THE PARTIES

18   MAKE THAT DISCLOSURE TO EACH OTHER OR NOT?  I HEARD

19   APPLE SAY WE WANT TO MAKE THAT DISCLOSURE, WHAT'S

20   SAMSUNG'S POSITION?

21             MS. MAROULIS:  WE WOULD BE UPON WILLING

22   TO COME UP WITH A LIST OF CUSTODIANS, YOUR HONOR.

23             THE DOCUMENT COLLECTION WAS DONE PRETTY

24   QUICKLY AND IT WAS PRETTY FAR REACHING, SO WE'LL

25   RETRACE THE STEPS AND IF NECESSARY PROVIDE THE

1    LISTS.

2              BUT I DON'T THINK IT'S NECESSARY THIS

3    INSTANCE BECAUSE OUR PRODUCTION IS FAR MORE

4    EXTENSIVE THAN APPLE AT THE MOMENT.

5              IF YOU COMPARE THE PURE NUMBERS, WE

6    PRODUCED MORE THAN 30,000 PAGES THEY PRODUCED

7    14,000 PAGES.  WE PRODUCED NINE WITNESSES FOR

8    DEPOSITION, THEY HAVE DONE SIX.  WE HAVE 1500

9    E-MAILS TO THEIR 600.

10             SO IF ANYONE SHOULD BE COMPLAINING ABOUT

11   POSITIVE PRODUCTION IT SHOULD BE US.  BUT WE

12   ACTUALLY COMPLAINED TWO WEEKS AGO ABOUT VERY

13   SPECIFIC THINGS WE KNEW EXISTED WERE RELEVANT AND

14   WERE BEING WITHHELD.  BY CONTRAST APPLE IS

15   COMPLAINING ABOUT THINGS THEY THINK SHOULD EXIST.

16             THE COURT:  WELL, YOU MAY BE RIGHT ABOUT

17   THAT BUT NONETHELESS THE ISSUE REMAINS.

18             LET'S FOCUS ON THE SPECIFIC 13

19   INDIVIDUALS.  I HAVE BEEN TOLD, AND I HAVEN'T

20   VERIFIED THIS SO ALL OF YOU CAN BEAR WITH ME FOR A

21   MOMENT, I HAVE BEEN TOLD YOU IDENTIFIED 13 PEOPLE

22   WHO PARTICIPATED IN THE DESIGN PROCESS OF THESE

23   ACCUSED PRODUCTS.

24             MS. MAROULIS:  YES, YOUR HONOR.

25             THE COURT:  WERE EACH OF THOSE 13

1    INDIVIDUALS INTERVIEWED FOR POSSIBLE COLLECTION AND

2    PRODUCTION?

3              MS. MAROULIS:  YOUR HONOR, I BELIEVE SO.

4              THE COURT:  OKAY.

5              MS. MAROULIS:  BUT I DO NOT REPRESENT

6    HUNDRED PERCENT RIGHT NOW AS TO THE 13 INDIVIDUALS.

7              THE COURT:  ALL RIGHT.

8              SO AT LEAST SITTING HERE TODAY YOU CANNOT

9    REPRESENT TO ME THAT ALL 13 HAVE BEEN INTERVIEWED,

10   CORRECT?

11             MS. MAROULIS:  I KNOW A NUMBER OF

12   DESIGNERS WERE INTERVIEWED AND A NUMBER OF THEIR

13   DOCUMENTS COLLECTED.  WHETHER OR NOT IT'S THE EXACT

14   13 THAT WERE INTERVIEWED, IT'S ACTUALLY MORE THAN

15   THAT.  BUT I DON'T WANT TO MAKE A REPRESENTATION TO

16   THE COURT THAT ALL 13 WERE INTERVIEWED WHEN IN FACT

17   IT WAS 12 PLUS ANOTHER 20 AND ONE WAS MISSING.

18             THE COURT:  LET ME BE AS TRANSPARENT AS I

19   AM SUGGESTING YOU ALL MIGHT WANT TO BE.

20             I DON'T RELISH THE OPPORTUNITY TO SIT

21   HERE AND NANNY THIS MEET AND CONFER PROCESS BUT

22   IT'S OBVIOUS TO ME THAT SOMETHING NEEDS TO BE DONE

23   BECAUSE SITTING HERE TODAY IN THE MIDDLE A VERY

24   COMMERCIALLY SIGNIFICANT DISPUTE, NEITHER ONE OF

25   YOU EVEN KNOWS OR CAN TELL ME WHAT CUSTODIANS HAVE

1    BEEN INTERVIEWED.  I FIND THAT SURPRISING.

2              SO WE DON'T KNOW WHETHER ALL 13 HAVE BEEN

3    INTERVIEWED.  AS TO THOSE INDIVIDUALS WHO WERE

4    INTERVIEWED, CAN YOU TELL ME WERE THEIR INDIVIDUAL

5    HARD DRIVES WERE SEARCHED?

6              MS. MAROULIS:  YOUR HONOR, IF THEY WERE,

7    AND IF YOU WANT ME TO GO INTO ANY FURTHER DETAIL

8    ABOUT THEIR DOCUMENTS I THINK I NEED TO EXCUSE

9    APPLE IN-HOUSE COUNSEL.

10             THE COURT:  ALL RIGHT.

11             WELL, AGAIN, I DON'T RELISH THIS

12   OPPORTUNITY BUT I'M GOING HAVE TO ASK APPLE COUNSEL

13   TO STEP OUTSIDE AND I WILL NOTE FOR THE RECORD THAT

14   THE ONLY INDIVIDUALS REMAINING IN THIS COURTROOM

15   ARE MEMBERS OF THE COURT PERSONNEL AND PARTIES.

16             MR. OVERSON:  ON BEHALF OF APPLE WE WOULD

17   OBJECT BECAUSE WE DO NOT --

18             THE COURT:  I'LL NOTE YOUR OBJECTION FOR

19   THE RECORD.

20             AS I SAID, I WOULD RATHER TALK ABOUT SOME

21   LEGAL ISSUES HERE, BUT IT'S GET DOWN TO THE

22   NITTY-GRITTY.

23             SO OF THE 13 PEOPLE SOME SUBSET WERE

24   INTERVIEWED.  NOW OF THAT SUBSET THAT WERE

25   INTERVIEWED, WERE THEIR HARD DRIVES SEARCHED?

1          MS. MAROULIS:  YES, YOUR HONOR.

2          AND I WANT TO PREFACE MY WORDS WITH

3     SAYING THAT WE, TO THE EXTENT APPLE LATER CLAIMS

4     THERE'S ANY KIND OF WAIVER OF PRIVILEGED

5     INFORMATION, THIS IS NOT A WAIVER IT'S IN RESPONSE

6     TO THE COURT'S INQUIRY.

7          THE COURT:  NOTED.  SO THEIR INDIVIDUAL

8     HARD DRIVES WERE SEARCHED?

9          MS. MAROULIS:  YES, YOUR HONOR.

10         THE COURT:  ARE EACH OF THESE SEARCHED

11    INDIVIDUALS IN KOREA?

12         MS. MAROULIS:  YES, THE DESIGNERS WERE IN

13    KOREA.

14         THE COURT:  DID SOMEONE REPRESENTING

15    SAMSUNG IN THIS LAWSUIT GO MEET WITH EACH OF THOSE

16    PEOPLE?

17         MS. MAROULIS:  INCLUDING HOUSE COUNSEL,

18    YOUR HONOR?

19         THE COURT:  YOU TELL ME.

20         MS. MAROULIS:  IN-HOUSE COUNSEL

21    INTERVIEWED THOSE INDIVIDUALS, YES, YOUR HONOR.

22         THE COURT:  DID ANY OUTSIDE COUNSEL

23    PARTICIPATE IN THOSE DOCUMENT INTERVIEWS?

24         MS. MAROULIS:  SOME, BUT NOT ALL.

25         THE COURT:  ALL RIGHT.

1          MS. MAROULIS:  AND AGAIN, WE DON'T

2     BELIEVE WE HAVE GOTTEN ANY SIMILAR INFORMATION AT

3     ALL FROM APPLE.

4          THE COURT:  BELIEVE ME, WHERE I'M GOING

5     WITH THIS IS GOING TO APPLY ACROSS THE BOARD BUT I

6     HAVE A SPECIFIC MOTION IN FRONT OF ME SO I NEED TO

7     DEAL WITH THAT.

8          NOW IN TERMS OF THE COLLECTION EFFORTS,

9     WAS SOME TYPE OF MEMORANDUM PREPARED WHICH

10    IDENTIFIED THE TOPICS CORRESPONDING TO RESPONSIVE

11    DOCUMENTS?  HOW DID YOU GO ABOUT INTERVIEWING THESE

12    FOLKS, IF YOU KNOW?

13         MS. MAROULIS:  YOUR HONOR, I BELIEVE THAT

14    WOULD GO INTO THE WORK PRODUCT ISSUES, HOW THEY

15    WERE INTERVIEWED SPECIFICALLY.

16         THE COURT:  ALL RIGHT.

17         MS. MAROULIS:  BUT THEY WERE SPOKEN WITH?

18         THE COURT:  OKAY.  WERE SEARCH TERMS

19    USED?

20         MS. MAROULIS:  THE SEARCH TERMS WERE USED

21    FOR THE PRODUCTION OF DOCUMENTS.

22         THE COURT:  BUT NOT FOR THE COLLECTION?

23         MS. MAROULIS:  I CANNOT SAY FOR SURE,

24    YOUR HONOR.

25         MS. MAROULIS:  MY UNDERSTANDING,

1    YOUR HONOR, IS THAT SOME SEARCH TERMS WERE USED.

2           THE COURT:  HAVE THOSE SEARCH TERMS BEEN

3    DISCLOSED TO APPLE?

4           MS. MAROULIS:  NO, THEY HAVE NOT

5    DISCLOSED ANY SEARCH TERMS.

6           THE COURT:  ALL RIGHT.

7           WERE E-MAIL REPOSITORIES SEARCHED AS PART

8    OF THIS COLLECTION AND INTERVIEW PROCESS FOR EACH

9    OF THESE -- I'M TALKING ABOUT THESE 14 OR SUBSET OF

10    THE 13 DESIGNERS.

11           MS. MAROULIS:  YOUR HONOR, I UNDERSTAND

12    THAT E-MAIL WAS SEARCHED.

13           THE COURT:  ARE THESE FOLKS RUNNING

14    MICROSOFT EXCHANGE OR SOME COMMERCIALLY AVAILABLE

15    E-MAIL SERVER?

16           MS. MAROULIS:  I COULD NOT SPEAK TO THE

17    TYPE OF SERVERS BUT I KNOW E-MAILS WERE SEARCHED,

18    THAT'S FROM THE E-MAIL SEARCHES THAT WE'VE

19    ASSEMBLED, THE E-MAILS THAT WERE PRODUCED.

20           THE COURT:  SO DO YOU KNOW ONE WAY OR THE

21    OTHER, I DO NOT KNOW WHETHER SAMSUNG RUNS

22    MICROSOFT, PST FOLDERS WERE INTERVIEWED?

23           MS. MAROULIS:  I DO NOT KNOW THE

24    SPECIFICS OF THE DESIGNATIONS OF WHAT EXACTLY WAS

25    SEARCHED.

1          THE COURT:  ALL RIGHT.  WELL --

2          MS. MAROULIS:  YOUR HONOR, ONE THING I DO

3     WANT TO POINT OUT IS THAT TO THE EXTENT ANY OF THE

4     E-MAIL EXISTED AS OF WHEN THIS LAWSUIT WAS FILED,

5     OBVIOUSLY IT'S BEING COLLECTED AND DEALT WITH BUT

6     TO THE EXTENT THAT SOME E-MAIL WAS ALREADY DELETED

7     LAST YEAR OR YEAR BEFORE, THE PARTY HAS NO

8     OBLIGATION TO FOREVER PRESERVE ITS E-MAIL BEFORE

9     LITIGATION IS PENDING.

10          THE COURT:  ALL RIGHT.

11          DID EACH OF THESE MEMBERS IN THIS SUBSET

12     OF 13 GET A LITIGATION HOLD NOTICE OF SOME KIND?

13          MS. MAROULIS:  PARDON ME, YOUR HONOR, CAN

14     I ASK YOU TO REPEAT.

15          THE COURT:  FOCUSSING ON THE SUBSET OF

16     THE 13 DID EACH OF THOSE INDIVIDUALS RECEIVE SOME

17     KIND OF HOLD NOTICE OR STRUCTURE.

18          MS. MAROULIS:  YES, YOUR HONOR.

19          THE COURT:  WAS IT PROVIDED IN WRITING?

20          MS. MAROULIS:  YES, YOUR HONOR.

21          THE COURT:  HAS A COPY OF THAT HOLD

22     NOTICE BEEN TENDERED TO APPLE?

23          MS. MAROULIS:  NO.

24          THE COURT:  AND I'M GUESSING THEY HAVEN'T

25     GIVEN YOU A COPY?

1          MS. MAROULIS:  ABSOLUTELY NOT.  WE

2   BELIEVE THE WHOLE NOTICE IS PRIVILEGED BUT IT

3   EXISTS.

4          THE COURT:  ALL RIGHT.

5          WELL, IS THERE ANYTHING ELSE YOU CAN TELL

6   ME ABOUT THE SPECIFICS OF THIS COLLECTION EFFORT AS

7   TO THIS SUBSET?

8          MS. MAROULIS:  IS YOUR HONOR STILL ON

9   DESIGN DOCUMENTS?

10         THE COURT:  I'M JUST STARTING THERE, BUT

11  YEAH.

12         MS. MAROULIS:  OKAY.

13         THE IMPORTANT PART OF THE COLLECTION IS

14  THAT WE'VE PROVIDED A WHOLE NUMBER OF DIFFERENT

15  DESIGN TYPES OF DOCUMENTS.

16         COMPARED TO APPLE COLLECTION WHICH HAD

17  ALMOST NO DESIGN DOCUMENTS OUT OF THE FAMOUS CAD

18  FILES.  WE PRODUCED CAD FILES, DESIGNER DRAWINGS,

19  INSPIRATION DOCUMENTS, POWERPOINTS, MARKETING

20  DOCUMENTS WITH DESIGNS EMBEDDED.  SO THERE'S A

21  WHOLE VARIETY OF DOCUMENTS --

22         THE COURT:  I'M SORRY.  I ACTUALLY -- I

23  REMEMBERED MY OTHER QUESTION I HAD FOR YOU.

24         DID APPLE EVER SAY TO YOU, COULD YOU JUST

25  SEARCH THESE INDIVIDUALS, THE SUBSET OR THE 13, FOR

1    E-MAIL AND USE THESE TERMS THAT WE ARE GOING TO

2    GIVE TO YOU TO FIND DOCUMENTS THAT ARE GOING TO BE

3    IMPORTANT IN THIS DISPUTE?

4              DID THEY EVER GIVE YOU LIST OF THE SEARCH

5    TERMS?

6              MS. MAROULIS:  THEY DID NOT GIVE A LIST

7    OF SEARCH TERMS.  THEY HAVE INQUIRED WHETHER

8    INDIVIDUAL E-MAILS CAN BE SEARCHED AND IT WAS NOT

9    AS THE 13, IT WAS AS TO TWO OR THREE NAMES, I

10   RECALL, FROM THE MEET AND CONFER CORRESPONDENCE.

11             THE COURT:  WHAT WAS THE ANSWER TO THAT

12   QUESTION?

13             MS. MAROULIS:  THAT WE ARE LOOKING INTO

14   IT.

15             AND YOUR HONOR, THIS GOES BACK TO WHAT

16   MR. JACOBS SAID EARLIER BECAUSE WE WERE DEFENDING

17   NINE DEPOSITIONS IN THE SPACE OF TEN DAYS, NOT

18   EVERY MEET AND CONFER COULD BE ATTENDED BY

19   MR. JOHNSON AND MYSELF.

20             SO WE HAVE BEEN INVOLVED AS MUCH AS WE

21   COULD BUT SOME OF THEM TRANSPIRED WITH PEOPLE WHO

22   ARE NOT PRESENT HERE.

23             THE COURT:  YOU MENTIONED THAT, I BELIEVE

24   YOU SAID YOU'VE TENDERED UP TO NINE WITNESSES FOR

25   DEPOSITION TODAY, SOMETHING LIKE THAT.

1          MS. MAROULIS:  YES, YOUR HONOR.

2          THERE WERE SEVEN DECLARANTS AND THEN A

3     30(B)(6) WITNESS WHO TESTIFIED EXTENSIVELY AND

4     PREPARED AND SPOKE WITH A COUPLE DOZEN PEOPLE ON

5     THE RECORD.  HE EXPLAINED THAT.  AND A FORMER

6     EMPLOYEE EXECUTIVE THAT HAD BEEN NOTICED.

7          THE COURT:  MR. WAGNER IS ONE OF THESE

8     SEVEN DECLARANTS.

9          MS. MAROULIS:  YES, YOUR HONOR.

10          THE COURT:  NOW PUTTING ASIDE ANY

11     RETAINED EXPERTS LIKE MR. WAGNER, WERE THE FILES OF

12     EACH OF THESE INDIVIDUALS WHO WERE TEED UP FOR

13     DEPOSITION REVIEWED FOR POSSIBLY RELEVANT

14     RESPONSIVE DOCUMENTS?

15          MS. MAROULIS:  YES, YOUR HONOR.

16          THE COURT:  SO EACH OF THOSE INDIVIDUALS

17     HAD AN INTERVIEW?

18          MS. MAROULIS:  YES, YOUR HONOR.

19          THE COURT:  AND DOCUMENTS WERE COLLECTED

20     AND PRODUCED IN ADVANCE OF THE DEPOSITION.

21          MS. MAROULIS:  SO ONE OF THEM

22     MR. DENNISON IS THE CURRENT EMPLOYEE OF SAMSUNG,

23     AND HIS DOCUMENTS WERE SEARCHED AND PRODUCED.

24          AND MR. KONG IS A FORMER EMPLOYEE, SO HIS

25     FILES WERE SEARCHED AND WHATEVER WAS PRODUCED WAS

1    SAMSUNG DOCUMENTS.

2            THEY ALSO SERVED A SEPARATE SUBPOENA ON

3    HIM FOR DOCUMENTS IN HIS CURRENT POSSESSION.  HE

4    DIDN'T HAVE ANYTHING EXCEPT FOR FRAMED PARAGRAPH OR

5    FRAMED ARTICLE ABOUT HIM TALKING ABOUT VARIOUS

6    PRODUCTS.  SO HE BROUGHT THAT TO DEPOSITION.  BUT

7    OTHERWISE THEIR FILES WERE SEARCHED.

8            THE COURT:  ALL RIGHT.

9            MR. LEE IS AN INDIVIDUAL WHO IS

10   SPECIFICALLY IDENTIFIED.  IS IT TRUE THAT DURING A

11   MEET AND CONFER WHEN APPLE ASKED, YOU WOULD SEARCH

12   HIS FILES, YOU WOULD NOT COMMIT ONE WAY OR THE

13   OTHER WITH THAT?

14           MR. JOHNSON:  YOUR HONOR, IF I COULD

15   ADDRESS THAT BECAUSE I WAS AT THE MEET AND CONFER

16   AND MS. MAROULIS WASN'T.

17           THAT IS NOT CORRECT.  THEY RAISED

18   MR. LEE'S FILES AT THE MEET AND CONFER WHICH I WAS

19   THERE FOR THAT.  AND WHEN THEY RAISED IT I SAID

20   IT'S FRIDAY AFTERNOON, WE ARE CHECKING, WE ARE

21   GOING TO GET BACK TO YOU THE BEGINNING OF NEXT WEEK

22   BECAUSE IT WAS ALREADY THE WEEKEND IN KOREA.

23           AND THAT'S EXACTLY WHAT I TOLD THEM AND

24   THE NEXT THING THAT HAPPENED WAS, I MEAN, SO I WAS

25   ACTUALLY WAS QUITE AMAZED THAT WES GOT UP HERE AND

1    SAID THAT BECAUSE THAT DIDN'T HAPPEN AT ALL.

2              WE WENT AND CHECKED AND WE PRODUCED FILES

3    AND WE DID PRODUCE DOCUMENTS THAT DEMONSTRATED THAT

4    THE STATEMENT THAT WAS MADE IN THE PRESS WAS

5    ULTIMATELY RESTRUCTURED AND THERE WERE DOCUMENTS

6    ASSOCIATED WITH THAT THAT WERE PRODUCED.

7              AND THERE WERE E-MAILS AND OTHER

8    DOCUMENTS THAT WERE PRODUCED OUT OF THE FILES AS

9    WELL, ULTIMATELY.

10             THE COURT:  SO JUST SO I UNDERSTAND AS WE

11   SIT HERE TODAY, MR. LEE'S FILES HAVE BEEN REVIEWED,

12   RESPONSIVE DOCUMENTS HAVE BEEN COLLECTED, THE

13   PRIVILEGE HAS BEEN CLEARED OUT AND MATERIALS HAVE

14   BEEN PRODUCED; IS THAT RIGHT?

15             MR. JOHNSON:  YES.

16             THE COURT:  OKAY.

17             MR. JOHNSON:  AND IF -- JUST WHILE I'M

18   HERE, WITH RESPECT TO -- AND THEN I'LL SIT DOWN,

19   MS. MAROULIS IS DOING PERFECTLY GREAT JOB -- YOU

20   KNOW, WE TALKED ABOUT WHO IS DOING THE DOCUMENT

21   COLLECTION, YOU KNOW, PART OF THE ISSUE HERE AS

22   WELL IS THERE ARE PEOPLE IN KOREA HELPING WITH THE

23   DOCUMENT COLLECTION.

24             SAMSUNG HAS PEOPLE WHO ARE INVOLVED

25   WITHIN SAMSUNG, THERE'S A FORMER QUINN EMANUEL

1      ASSOCIATE WHO WORKED VERY CLOSELY WITH ME FOR MANY

2      YEARS WHO IS NOW IN HOUSE AT SAMSUNG.  SHE'S BEEN

3      PARTICIPATING AND COLLECTING DOCUMENTS IN KOREA

4      THERE'S A FORMER PARTNER FROM QUINN EMANUEL WHO IS

5      AT SAMSUNG WHO PARTICIPATED IN A COLLECTION WHO HAS

6      NOW MOVED ON BUT HE WAS ALSO INVOLVED.

7              SO IT'S NOT AS THOUGH -- AND THERE ARE

8      OTHER PEOPLE WITHIN THE LEGAL TEAM, FRANKLY, THAT

9      ARE ADMITTED TO THE BARS EITHER IN CALIFORNIA OR

10     NEW YORK WHO HAVE ALSO BEEN INVOLVED.

11             SO IT'S NOT AS THOUGH WE TURNED THIS OVER

12     TO PEOPLE AND SAID, GO COLLECT DOCUMENTS AND WE

13     DIDN'T FOLLOW UP WITH IT.  THESE ARE PEOPLE WE

14     WORKED WITH FOR MANY YEARS AND THE RELATIONSHIP

15     WITH SAMSUNG IS SUCH THAT, I MEAN, WE'VE GOTTEN

16     WHERE WE TRUST THEM AND WE'VE WORKED WITH THEM.

17             SO DON'T WANT IT TO SEEM LIKE THERE WAS A

18     DISCONNECT BECAUSE IT WAS ACTUALLY VERY MUCH

19     CONNECTED.

20             THE COURT:  ALL RIGHT.

21             WELL, I SUSPECT YOU WOULD SIMILARLY

22     ACCEPT A PROCESS AT APPLE THAT RELIED UPON THEIR

23     IN-HOUSE EXPERTISE TO DRIVE THIS PROCESS, FAIR

24     ENOUGH?

25             MR. JOHNSON:  YES.

1              AND FRANKLY, YOU KNOW, I THINK I TOOK THE

2     FIRST DEPOSITION IN THE CASE WHERE I DEPOSED

3     MR. LUTTON WHO IS A FORMER PATENT COUNSEL AT APPLE.

4     AND I ASKED MR. LUTTON ABOUT DOCUMENT COLLECTION

5     AND, YOU KNOW, WHETHER THE RIGHT THING WAS DONE,

6     AND I WAS CONFRONTED WITH A WORK PRODUCT AND

7     ATTORNEY/CLIENT PRIVILEGE OBJECTION, SO I NEVER GOT

8     INTO IT AND I NEVER UNDERSTOOD.

9              SO TO HEAR APPLE SAY NOW THAT THEY WANT

10    THE PROCESS TO BE TRANSPARENT IS AGAIN, THAT DIDN'T

11    COME UP IN THE MEET AND CONFER PROCESS I ATTENDED

12    UNTIL THIS VERY HEARING.

13             I'M SORRY TO SAY THAT.  I AGREE WITH YOU,

14    WE NEED TO DO A BETTER JOB OF MEET AND CONFERRING

15    AND I THINK A LOT OF THIS IS TIED TO THE SCHEDULE

16    THAT EVERYONE HAS BEEN UNDER.

17             SO ONCE WE GET BEYOND THE PRELIMINARY

18    INJUNCTION MOTION ON THE 13TH, HOPEFULLY THIS GETS

19    BACK TO A NORMAL CASE IN SOME RESPECTS AND WE CAN,

20    YOU KNOW, WE CAN AVOID THESE KINDS OF HEARINGS WITH

21    YOUR HONOR AND TRY TO RESOLVE THESE THINGS WHICH IS

22    WHAT WE WERE TRYING TO DO ON THE 16TH.

23             THE COURT:  ALL RIGHT.

24             MS. MAROULIS, YOU WERE SAYING?

25             MS. MAROULIS:  EXCELLENT.  I'M GLAD

1    MR. JOHNSON CLARIFIED THAT MEET AND CONFER ISSUE

2    BECAUSE I WAS NOT THERE.

3              I WAS ANSWERING YOUR HONOR'S SPECIFIC

4    QUESTIONS ABOUT COLLECTION PROCESS, IF THERE'S

5    ANYTHING ELSE YOUR HONOR WOULD LIKE TO ADDRESS, WE

6    CAN DO THAT.

7              SO THAT'S WITH RESPECT TO THE DESIGN

8    DOCUMENTS, RIGHT?  THERE'S A BODY OF DESIGN

9    DOCUMENTS.  WE PRODUCED A HUGE NUMBER OF THEM.

10   APPLE IS LOOKING FOR SPECIFIC DOCUMENTS OF ALLEGED

11   COPYING.

12             THROUGH OUR SEARCH WE HAVEN'T FOUND ANY.

13   IF WE FIND ANY OTHER TIME OF COURSE IT WOULD BE

14   PRODUCED AND SUPPLEMENTED BECAUSE THAT'S THE

15   PARTIES OBLIGATION.

16             THE OTHER CATEGORIES OF DOCUMENTS ARE

17   BROADLY MARKETING AND CONSUMER SURVEYS.  AND AGAIN,

18   WITH RESPECT TO THESE CATEGORIES, WE HAVE SEARCHED

19   THE RELEVANT FILES AND PRODUCED AN ENORMOUS NUMBER

20   OF DOCUMENTS RANGING FROM MARKET SHARE TO MARKETING

21   PRESENTATIONS TO COMPETITIVE ANALYSIS, WHO IS OUR

22   COMPETITION, WHAT YOU SHOULD BE TARGETING,

23   MARKETING SURVEYS AS WELL.

24             SO THERE ARE TWO DIFFERENT REQUESTS.  ONE

25   IS MARKETING AS A WHOLE, THE OTHER IS CONSUMER

1    SURVEYS.

2            SO CONSUMER SURVEYS WAS A CONTESTED

3    TOPIC, WE THOUGHT IT WAS NOT RELEVANT IN THIS

4    INSTANCE, WE THOUGHT RATHER THAN FIGHT IT JUST

5    PRODUCE IT SO WE DID.  WE ARE SURPRISED TO SEE THAT

6    IN THE MOTION TO COMPEL.

7            AND AGAIN WITH DESIGN DOCUMENTS WE

8    BELIEVE THESE DOCUMENTS HAVE BEEN PRODUCED.

9            NOW THE DOCUMENTS OF CONFUSION, THE LAST

10   CATEGORY, IS A CONTESTED TOPIC STILL BECAUSE WE

11   DON'T THINK THOSE DOCUMENTS ARE RELEVANT IN THE PI

12   TEXT.

13           IT IS TRUE THAT BROADLY SPEAKING APPLE

14   HAS TRADEMARK CLAIMS IN THIS CASE, BUT THEY CHOSE

15   TO NOT MOVE ON TRADEMARK CLAIMS.  THEY CHOSE TO

16   MAKE THE PI MOTION SOLELY ABOUT PATENT INFRINGEMENT

17   ANALYSIS.

18           THE COURT:  EVEN THOUGH IT'S PRETTY CLEAR

19   JUDGE KOH UNDERSTOOD TRADEMARKS WERE GOING TO BE AN

20   ISSUE IN THE PI MOTION, CORRECT?

21           MS. MAROULIS:  THEY MADE IT SOUND TO

22   JUDGE KOH THAT TRADEMARK WAS GOING TO BE PART OF

23   IT, CORRECT.

24           WHEN SEE THAT IT WAS ONLY PATENT

25   INFRINGEMENT ALLEGATIONS, SO WE FOCUSED OUR EFFORTS

1    ON THAT.

2              BUT WE JUST DON'T BELIEVE THE ALLEGED

3    CONFUSION DOCUMENTS ARE AT ISSUE HERE AT ALL.  BUT

4    THE BURDEN SHOULD NOT BE OVERLOOKED AT ALL.  WE

5    SUBMITTED A DECLARATION OF ONE OF SAMSUNG EMPLOYEES

6    WHO HAS PERSONAL KNOWLEDGE OF THE CONSUMER

7    COMMUNICATION DATABASE.

8              AS YOU CAN IMAGINE THIS DATABASE MOSTLY

9    CONCERNS PEOPLE WHO ARE ANNOYED WHEN THEIR DATA IS

10   NOT WORKING OR THEY HAVE A SCRATCH ON THEIR PHONE.

11   SO PROBABLY 99.9 PERCENT OF THAT IS GOING TO BE

12   ENTIRELY IRRELEVANT.  THERE MIGHT BE SOME SUBSET

13   POTENTIALLY WHERE SOME CONSUMER VOLUNTEERS THEIR

14   THOUGHTS ABOUT OTHER PEOPLE'S PRODUCTS.  IT'S HARD

15   TO IMAGINE THE CALL, BUT IF THEY DO I CAN REPRESENT

16   HERE THAT THAT CANNOT HAPPEN.

17             SO MR. WILKINS EXPLAINED IN DETAIL WHAT

18   IT WOULD TAKE TO ASSEMBLE AND FARE OUT THE RELEVANT

19   EVIDENCE THAT WE COULD THEN NEED TO SEARCH AND HAVE

20   ATTORNEY REVIEW OF AND THEN PRODUCE, BECAUSE NOT

21   EVERY CALL THAT MENTIONED APPLE IS GOING TO BE

22   NECESSARILY RESPONSIVE TO THE REQUEST.

23             I THINK BY HIS ESTIMATE IT WAS GOING TO

24   BE THREE TO FOUR WEEKS.  THE QUESTION THAT

25   MR. OVERSON POSED, WHY DIDN'T WE START DOING THIS

1    EARLIER?  AS WE SAID IN OUR PAPERS, THE BULK OF OUR

2    DISCOVERY WE RECEIVED FROM APPLE IS CLOSE TO 60

3    DOCUMENT PRODUCTION REQUESTS WAS SEARCHED AUGUST

4    26TH.

5         WE BELIEVE WHEN JUDGE KOH SET THE

6    DISCOVERY FOR THE PI MOTION SHE ENVISIONED

7    SOMETHING VERY DIFFERENT, SHE ENVISION AID NARROW

8    SUBSET OF DISCOVERY AND DEPOSITIONS OF THOSE

9    DECLARANTS WHO SUBMITTED DECLARATIONS PRO/CON, THE

10   PRELIMINARY INJUNCTION.

11        I DOUBT THAT SHE HAD IN MIND THIS FAR

12   REACHING 60 TO 70 REQUEST FISHING TRIP INTO

13   SAMSUNG'S FILE PRIVACY.

14        SO IN CONCLUSION YOUR HONOR, TO AGAIN

15   CLARIFY ISSUES BEFORE US, UNLESS YOU HAVE OTHER

16   QUESTIONS, IS THAT THE FORTY CATEGORIES OF

17   DOCUMENTS WHERE SAMSUNG HAS ALREADY COMPLIED WITH

18   THE DISCOVERY --

19        THE COURT:  BUT YOU DO NOT KNOW IF YOU'VE

20   SEARCHED ALL 13 DESIGNERS' FILES SO HOW CAN YOU SAY

21   IT'S DONE?  YOU ARE NOT DONE.  YOU MAY BE DONE, BUT

22   YOU DO NOT KNOW.

23        MS. MAROULIS:  YOUR HONOR, I APOLOGIZE

24   FOR NOT BEING ABLE TO SAY ON RECORD ALL 13 WERE

25   SEARCHED.  I BELIEVE THEY WERE BUT I WOULD NEED TO

1    DOUBLE CHECK.

2              THE COURT:  ALL RIGHT.

3              MR. LEE'S FILES, THOSE ARE ALL SEARCHED?

4              MS. MAROULIS:  JACOB LEE'S FILES WERE

5    SEARCHED; YES, YOUR HONOR.

6              THE COURT:  ALL THE DOCUMENTS?

7              MS. MAROULIS:  YES, YOUR HONOR.

8              AND SO GOING TO THE LAST DISPUTED ISSUE

9    WHICH IS THE ISSUE OF THE POTENTIAL CONFUSION

10   DOCUMENTS, WE SUBMIT THEY ARE BOTH RELEVANT AND

11   VERY BURDENSOME TO SEARCH.

12             AND WHEN WE TALK ABOUT BURDEN, WE ARE NOT

13   TALKING BURDEN ON OUTSIDE COUNSEL BECAUSE THAT'S

14   NOT AN ISSUE, IT'S A BURDEN OF THE COMPANY ON

15   SAMSUNG.  AND THE AMOUNT OF TIME AND EFFORT IT

16   WOULD TAKE FROM THE LEGITIMATE ENTERPRISE OF DOING

17   THE BUSINESS TO FOCUS ON HELPING US FARE OUT THE

18   POTENTIAL TWO OR THREE CUSTOMER CALLS THAT MAY OR

19   MAY NOT COME IN.

20             THE COURT:  SO WITH RESPECT TO THE, I'M

21   GOING TO USE LANGUAGE OR VERNACULAR FROM MY OLD

22   WORLD, SUSPECT DATABASE, AS I REMEMBER IT AND

23   RECALL IT WHEN I HAD TO DO THESE COLLECTIONS THERE

24   WERE, ON OCCASION, PRODUCT MANAGERS IN PARTICULAR

25   WHO HAD A KEEN INTEREST IN UNDERSTANDING WHAT

1    FEATURES CUSTOMERS WERE INTERESTED IN, RIGHT?

2    THAT'S THEIR JOB IS TO FIGURE OUT WHAT THE NEXT

3    FEATURE OR RELEASE IS GOING TO BE.

4            SO HAVE YOU UNDERTAKEN ANY EFFORTS TO

5    UNDERSTAND WHETHER THERE ARE ANY EXISTING PROCESSES

6    FOR SECURING FROM THAT DATABASE SOME SMALL SET OF

7    INFORMATION, NOT THE WHOLE THING, BUT HAVE YOU DONE

8    ANY OF THAT?

9            MS. MAROULIS:  YOUR HONOR, WE LOOKED INTO

10   THE CUSTOMER SURVEYS, THOSE DATABASES, THAT'S WHERE

11   THE PRODUCTION CAME FROM IN FIGURING OUT WHAT

12   CUSTOMERS LIKE ABOUT SOMETHING AND WHY THEY BUY

13   PRODUCTS.  THAT'S THE SUBSET OF DOCUMENTS I BELIEVE

14   YOU'RE TALKING ABOUT.  BUT THOSE DOCUMENTS WOULD BE

15   RESPONSIVE TO REQUEST 214 NOT NECESSARILY THE 206

16   WHICH IS THE ALLEGED CONFUSION.

17           THE COURT:  YEAH.  I ACCEPT YOUR

18   CLARIFICATION.

19           WHAT I WAS ACTUALLY GETTING AT WAS WITHIN

20   THE SUPPORT DATABASE, SUPPORT ORGANIZATIONS TEND

21   TO, AT LEAST IN MY EXPERIENCE, RESIST TAKING ON THE

22   RESPONSIBILITY AND OBLIGATION OF PROVIDING

23   COMPETITIVE INTELLIGENCE TO OTHER ELEMENTS OF THE

24   CORPORATION WHICH MAY VERY MUCH VALUE THAT

25   INFORMATION.

1          NEVERTHELESS I'M AWARE AT LEAST IN A

2     NUMBER OF LARGE MULTINATIONAL TECHNOLOGY

3     CORPORATIONS THAT I'M FAMILIAR WITH, THERE EXISTS

4     CERTAIN PROCESSES FROM TIME TO TIME WHEREBY THE

5     PRODUCT MANAGEMENT FUNCTION CAN SECURE SOME

6     INTELLIGENCE FROM THIS VAST DATABASE AS TO WHAT

7     YOUR ACTUAL CUSTOMERS WANT IN AN EXTRA RELEASE OF

8     THE PRODUCT.

9          MY QUESTION IS SIMPLY WHETHER YOU'VE

10    UNDERTAKEN ANY EFFORTS TO IDENTIFY ANY OF THOSE

11    EXISTING OR PRE-EXISTING PROCESSES TO MINIMIZE YOUR

12    BURDEN SO YOU ARE NOT REDOING IT.

13          MS. MAROULIS:  IF I UNDERSTAND

14    YOUR HONOR'S QUESTION CORRECTLY, YES WE INTERVIEWED

15    PEOPLE IN THE MARKETING ORGANIZATION AND THE

16    COMPETITIVE INTELLIGENCE ORGANIZATION AND FIGURED

17    OUT HOW THEY KEEP INFORMATION.

18          THE COURT:  OKAY.  ALL RIGHT.

19          ANYTHING FURTHER?

20          MS. MAROULIS:  WOULD YOUR HONOR LIKE ME

21    TO BRIEFLY ADDRESS THE QUESTION OF SANCTIONS OR

22    IT'S NOT BEFORE THE COURT?

23          THE COURT:  WELL, I WOULD LIKE TO HEAR

24    YOUR POSITION.  I THINK I UNDERSTAND IT BUT I WANT

25    TO GIVE YOU THIS OPPORTUNITY.

1              MS. MAROULIS:  OUR POSITION IS IT'S NOT

2     ENTIRELY PROPERLY BROUGHT FOR A NUMBER OF REASONS.

3              I TOLD THEM EARLY ON IN JULY WE ARE

4     COMPLYING WITH ALL OUR OBLIGATIONS.  BUT FOR THIS

5     COURT'S PURPOSES, IT'S NOT SUPPORTED BY ANY LAW,

6     NINTH CIRCUIT OR OTHERWISE.  THERE'S BEEN NO MEET

7     AND CONFER ON THESE ISSUES.  IT WASN'T PUT IN THE

8     SEPARATE MOTION AS REQUIRED BY THE LOCAL RULES.

9              IT'S NOT JUST UNRIPE IT'S ENTIRELY

10    UNSUPPORTED.  AND IT'S QUITE OFFENSIVE IN A WAY

11    BECAUSE IT'S SOMETHING THROWN OUT THERE IN THE

12    CONCLUSION IN PART OF THEIR PAPERS, NOT PROPER

13    SUPPORT, AND IT'S A GRAVE ACCUSATION.

14             WE HOPE THAT IN THIS CASE IT CONTINUES

15    THERE'S NOT GOING TO BE ACCUSATION OF THAT SORT

16    JUST FLYING ACROSS THE --

17             THE COURT:  ALL RIGHT.

18             MS. MAROULIS:  SO WE'VE BRIEFED THESE

19    ISSUES IN OUR MOTION, BUT VERY SIMPLY SPEAKING THEY

20    CANNOT JUST POINT TO SOME OTHER CASES THAT INVOLVE

21    SAMSUNG AND LUMP THEM ALL TOGETHER, WHATEVER THE

22    CIRCUMSTANCES ARE IN THOSE CASES, AND INFER THAT

23    SOMETHING SIMILAR IS HAPPENING HERE.

24             THE COURT:  AS YOU POINTED OUT I BELIEVE

25    YOUR ADVERSARY HAS SIMILARLY BEEN SANCTIONED IN

1    OTHER CASES AS WELL, CORRECT?

2              MS. MAROULIS:  THAT'S TRUE AS WELL.

3              THE COURT:  OKAY.  THANK YOU.

4              REBUTTAL?

5              MR. OVERSON:  YES, YOUR HONOR.

6              MR. JACOBS:  CAN I BRING BACK

7    MS. WHEELER?

8              THE COURT:  IF WE ARE GOING TO AVOID ANY

9    CONFIDENTIAL INFORMATION WITH THE PROTECTIVE ORDER,

10   I HAVE NO PROBLEM WITH THAT.

11             IF YOU WOULD, MR. JACOBS.

12             MR. JACOBS:  CAN I?

13             MR. OVERSON:  I DON'T THINK ANY OF THE

14   THINGS I'M GOING TO SAY ARE CONFIDENTIAL, I'M SURE.

15   I WILL DO MY BEST.

16             THE COURT:  ALL RIGHT.

17             MR. OVERSON:  SO YOUR HONOR, WE DO

18   BELIEVE A TRANSPARENCY, AND I THINK THAT WE HAVE,

19   INCLUDING IN RESPONSES TO SOME OF THEIR DOCUMENT

20   REQUESTS THAT WE HAVE NOTED THAT WE WOULD BE

21   WILLING TO BE MORE TRANSPARENT.

22             AND THESE ISSUES DID COME UP TO SOME

23   DEGREE IN THE MEET AND CONFER SESSIONS BECAUSE WE

24   TALKED ABOUT, YOU KNOW, HAVE YOU SEARCHED THESE

25   FOUR PEOPLE?  THEY LISTED FOUR PEOPLE INVOLVED IN

1    THE DESIGN IN THEIR INITIAL DISCLOSURES, HAVE YOU

2    SEARCHED THEM?  WHAT HAVE YOU DONE?

3              AND WE HIT ROADBLOCKS.  I THINK YOU HONOR

4    UNDERSTANDS THAT WE WERE TRYING TO PURSUE THAT AND

5    THEY TOLD US THEY WOULDN'T TELL US WHAT SEARCH

6    TERMS THEY USED.

7              THERE WAS A PROCESS WHEREBY WE WERE GOING

8    TO TRY AND AGREE ON SEARCH TERMS BUT IT DIDN'T, IT

9    GOT OVERWHELMED BY THE SPEED OF THE CASE.

10             BUT I DON'T THINK WE HEARD THAT AN E-MAIL

11   SEARCH HAS BEEN DONE ON THESE INDIVIDUALS TO LOOK

12   FOR, FOR EXAMPLE, APPLE OR IPHONE OR IPAD.  I MEAN,

13   THAT HAS NOT HAPPENED.  I DIDN'T HEAR THAT, THAT

14   THAT SEARCH HAS HAPPENED AND CERTAINLY THE FILES

15   AND THE PRODUCTION WOULD CONFIRM THAT.

16             THE FACT THAT THERE'S ZERO E-MAILS FROM

17   THE MAJORITY OF THESE INDIVIDUALS THAT SAY APPLE

18   AND APPLE IS THE LEADING PRODUCT IN THE MARKET, IT

19   DOESN'T MAKE SENSE.

20             THE COURT:  HAVE YOU DONE ANYTHING, AS

21   PART OF YOUR TRAFFIC ANALYSIS HAVE YOU ANALYZED,

22   FOR EXAMPLE, I UNDERSTAND YOU HAVEN'T RECEIVED A

23   CUSTODIAL LOG SO YOU DON'T KNOW WHERE THE DOCUMENTS

24   CAME FROM.  BUT HAVE YOU LOOKED TO SEE WHETHER ALL

25   13 OF THESE INDIVIDUALS HAVE APPEARED ON AT LEAST

1       ONE E-MAIL?  ARE THERE INDIVIDUALS WHO DO NOT

2       APPEAR ANYWHERE IN THE PRODUCTION?  IF YOU KNOW.

3               MR. OVERSON:  THERE MAY BE.  I CAN'T SAY

4       THAT.

5               THERE'S A -- WE DID TRY IN THE CHUNG

6       DECLARATION TO GIVE YOUR HONOR AN OVERVIEW OF WHO

7       WAS MENTIONED AND WHO WASN'T.

8               WE CAN SAY THERE'S NO E-MAILS FROM MOST

9       OF THE PEOPLE THEY SAY KNOW THE MOST ABOUT THIS.

10      AND THERE WAS INTERVIEWS OF 18 PEOPLE APPARENTLY

11      FOR 30(B)(6) DEPOSITIONS, AND WE DON'T HAVE E-MAILS

12      FROM THOSE PEOPLE.

13              WE HAVE ONE OR TWO E-MAILS, WE ARE

14      TALKING TOTAL.  WE ARE NOT TALKING AS TO ONE FROM

15      EACH, WE HARDLY HAVE ANYTHING.  SO IT SUGGESTS THAT

16      THIS WAS JUST NOT DONE.

17              AND YOU KNOW, I'M NOT TRYING TO

18      DISRESPECT THE IN-HOUSE PEOPLE AT SAMSUNG, THEY MAY

19      BE FINE LAWYERS, I DO NOT KNOW, BUT THERE'S NO

20      SUBSTITUTE FOR HAVING OUTSIDE COUNSEL DO WHAT WE

21      HAVE DONE.

22              THE COURT:  SO YOU HAVE HAD OUTSIDE

23      COUNSEL FROM MORRISON & FOERSTER AT EVERY CUSTODIAL

24      INTERVIEW?

25              MR. OVERSON:  YES.

1             THE COURT:  ALL RIGHT.

2             MR. OVERSON:  SO WE NEED THOSE SEARCHES

3     TO BE DONE AND WE NEED SOME DETAILS THAT HOW THEY

4     WERE DONE AND THAT'S WHY WE WANTED TO DO THIS

5     FOLLOWUP 30(B)(6) IN ADDITION TO GETTING SOME

6     CERTIFICATION THAT IT'S ALL BEEN DONE.

7             NOW, THERE'S MENTION OF CAD FILES, THEY

8     PRODUCE A LOT OF CAD FILES.  WELL, THE CAD FILES

9     REFLECT THE PRODUCTS THAT AS THEY ENDED UP

10    APPEARING THEY DON'T GIVE US THE INFORMATION ABOUT

11    WHERE THE DESIGN ELEMENTS CAME FROM, AND THAT'S

12    REALLY WHAT WE ARE LOOKING AT IN DOCUMENT REQUEST

13    NUMBER 1.

14            THE COURT:  THAT'S WHY I WAS ASKING ABOUT

15    THE SKETCHBOOKS, AT LEAST THE LAST TIME YOU ALL

16    WERE HERE OR AT LEAST SOME OF YOU WERE HERE, WE HAD

17    A PRETTY ROBUST DISCUSSION AROUND THE DESIGN

18    PROCESS.

19            MR. OVERSON:  RIGHT.

20            AND THERE VERY WELL COULD BE SKETCHBOOKS.

21            THE COURT:  SHE'S SAYING THERE AREN'T ANY

22    SKETCHBOOKS.  SHE'S SAYING IF THERE WERE SKETCHES

23    OR INDIVIDUAL DRAWINGS THEY HAVE BEEN PRODUCED TO

24    YOU.

25            HOW AM I TO ASSESS WHETHER THAT'S

1    LEGITIMATE OR NOT AS TO SOME SPECIFIC -- I HAVE TO

2    ACCEPT YOUR REPRESENTATION JUST AS I HAVE TO ACCEPT

3    HERS.

4            SO HOW AM I TO INDEPENDENTLY QUESTION

5    THAT UNLESS YOU COME FORWARD WITH SOME PROOF THAT

6    IN FACT THEY ARE HOLDING BACK DOCUMENTS?

7            MR. OVERSON:  ON THE E-MAIL FRONT, I

8    THINK WE HAVE SET FORTH --

9            THE COURT:  WELL, YOU ARE POINTING TO THE

10   FACT THAT YOUR REQUEST NUMBER 1 WHICH WAS VERY

11   SPECIFIC IN ASKING FOR DOCUMENTS THAT REFERENCE THE

12   APPLE PRODUCTS, WE NOW ESTABLISHED WE ARE TALKING

13   ABOUT A SUBSET OF THE APPLE PRODUCT LINE.  YOU ARE

14   SAYING WE HAVEN'T SEEN E-MAILS FROM CERTAIN PEOPLE

15   THAT HAVE THAT INFORMATION.

16           WELL, IT'S ENTIRELY POSSIBLE, ISN'T IT,

17   THAT THERE ARE NO SUCH E-MAILS.  HOW AM I TO ASSESS

18   WHETHER OR NOT THEY ARE HOLDING THEM BACK JUST

19   BECAUSE THEY HAVEN'T SEEN THE DOCUMENTS YOU WANTED

20   TO SEE IN THE PRODUCTION?

21           MR. OVERSON:  YOUR HONOR DOES NOT NEED TO

22   ASSESS THAT AT THIS STAGE.

23           WHAT WE ARE ASKING YOUR HONOR TO DO IS

24   ISSUE AN ORDER THAT BY TUESDAY OF NEXT WEEK THEY

25   PRODUCE ALL RESPONSIVE E-MAILS AND CERTIFY THAT IF

1    THEY HAVE DONE THE SEARCH WHICH WOULD OF COURSE

2    INCLUDE SEARCHING PEOPLE'S E-MAIL FOR TERMS LIKE

3    APPLE, IPHONE, IPAD --

4              THE COURT:  OKAY.  AND IS YOUR REQUEST

5    SPECIFIC AND DIRECTED TO THE 13 INDIVIDUALS WHO

6    HAVE BEEN IDENTIFIED AS BEING INVOLVED IN DESIGN

7    PROCESS?  CAN WE AT LEAST PUT THAT BOUNDARY AROUND

8    THIS?

9              MR. OVERSON:  I'M SORRY, YOUR HONOR, BUT

10   WE CAN'T.

11             IT WOULD BE EASY TO DO THAT AND CERTAINLY

12   THEY SHOULD BE SEARCHED, BUT THOSE ARE MY

13   UNDERSTANDINGS FROM SAMSUNG IS THAT THOSE ARE

14   DESIGNERS AS OPPOSED TO THE PEOPLE WHO DECIDED WHAT

15   PRODUCT DESIGNS TO PURSUE.

16             THE COURT:  SO WHO ARE THOSE FOLKS?

17             MR. OVERSON:  THOSE ARE PEOPLE --

18             THE COURT:  THE OFFICE OF THE

19   DEVELOPMENT?

20             MR. OVERSON:  THERE'S SOMETHING CALLED

21   THE OFFICE OF THE DEVELOPMENT AND WE UNDERSTAND

22   THEY HAVE A ROLE IN MAKING THOSE DECISIONS.

23             THE COURT:  SO WHAT INDIVIDUALS IN THAT

24   ORGANIZATION ARE WE TALKING ABOUT?

25             MR. OVERSON:  UNFORTUNATELY, WE DON'T

1   KNOW.

2              THE COURT:  DID YOU ASK THE 30(B)(6)

3   WITNESS ABOUT THAT?

4              MR. OVERSON:  WE ASKED QUESTIONS ABOUT

5   HOW THIS PROCESS WAS GOING BUT WE DIDN'T GET

6   SPECIFIC ANSWERS.  THESE ARE THE FOUR PEOPLE WHO

7   MADE THE DECISION.

8              THE COURT:  ARE WE TALKING FOUR PEOPLE OR

9   400 HERE IN THIS OFFICE?

10             MR. OVERSON:  I CAN'T IMAGINE IT WOULD BE

11  400.  I THINK MY SUPPOSITION WOULD BE --

12             THE COURT:  MR. HUNG APPEARS TO HAVE SOME

13  HELPFUL INFORMATION ON THIS TOPIC.

14             MR. HUNG:  I ACTUALLY TOOK THE 30(B)(6)

15  DEPOSITION OF MR. DENNISON ALONG WITH MS. MAROULIS.

16             I JUST ASKED THE QUESTION ABOUT THE

17  DESIGN PROCESS, IT CUT OFF AT MR. CARRIERA.

18  MR. DENNISON LOOKED AT MR. CARRIERA AND KNEW VERY

19  LITTLE BEYOND THE DESIGN PROCESS.

20             THE COURT:  HERE'S THE DILEMMA I FACE.

21             YOU'RE ASKING FOR AN ORDER THAT WOULD NOT

22  BE LIMITED TO 13 PEOPLE, POTENTIALLY MIGHT INVOLVE

23  DOZENS OF INDIVIDUALS AND YOU ARE ASKING THIS

24  COLLECTION OF PRODUCTION BE COMPLETED BY TUESDAY.

25  THAT'S JUST NOT GOING TO HAPPEN.

1            SO YOU ARE ASKING ME ESSENTIALLY TO ISSUE

2     AN ORDER THAT I KNOW WILL NOT BE OBEYED OR COULD

3     NOT BE OBEYED.

4            MR. OVERSON:  I'M NOT ASSUMING THERE'S

5     DOZENS OF OTHER INDIVIDUALS BEYOND THESE 13 PEOPLE.

6            THE COURT:  LET'S SAY THERE'S ONLY FOUR.

7            MR. OVERSON:  OKAY.

8            THE COURT:  THAT'S 17 PEOPLE TO GET A

9     COLLECTION PRODUCTION PRIVILEGE REVIEW DATA

10    MANAGEMENT PROCESS, ALL OF THAT DONE BY TUESDAY?

11    THAT'S JUST NOT GOING TO HAPPEN, RIGHT?

12            MR. OVERSON:  WELL, WE HAVE BEEN PUT IN

13    THIS POSITION.  THIS REQUEST WENT OUT ON JULY 12TH

14    AND OUR REPLY IS DUE IN TWO DAYS.

15            YOUR HONOR, WE ARE VERY, VERY WELL AWARE

16    OF THE SCHEDULE AND HOW TOUGH IT IS.

17            AND IT'S NOT FAIR THOUGH TO DEPART AT THE

18    MOVING PARTY TO FACE THIS KIND OF STONE WALLING

19    THEN AT THE END SAY, WELL, IT'S TOO LATE.  THAT'S

20    NOT A FAIR OUTCOME.

21            SO THAT IS WHY THERE HAS TO BE SOME

22    CONSEQUENCE TO SAMSUNG FOR NOT PRODUCING THESE

23    DOCUMENTS, NOT DOING THE PROPER E-MAIL SEARCH THAT

24    WE ALL KNOW WE HAVE TO DO.

25            THE COURT:  CAN I ASK YOU ABOUT THE --

1    AND I WILL USE THE TERMINOLOGY OR TERM "SUPPORT

2    DATABASE."  I SUSPECT SAMSUNG HAS ITS OWN SPECIFIC

3    REFERENCE FOR IT.

4              I CAN UNDERSTAND WHY YOU WOULD LIKE TO

5    KNOW IF CUSTOMERS ARE REFERRING TO SPECIFIC APPLE

6    FEATURES IN PLACING CALLS TO THAT ORGANIZATION,

7    NEVERTHELESS, I WOULD SUSPECT YOU WOULD AGREE

8    BECAUSE APPLE FACES THE SAME SITUATION WITH ITS

9    SUPPORT ORGANIZATION, THERE ARE THOUSANDS PERHAPS

10   MILLIONS OF RECORDS THAT WE ARE TALKING ABOUT WOULD

11   NEED TO BE REVIEWED AND EXPORTED.

12             IS THERE SOME BOUNDARY OR LIMITATION

13   OTHER THAN GIVEN TO US ALL WITH CERTAIN TERMS THAT

14   YOU WOULD BE WILLING TO ACCEPT IN RESPONSE TO YOUR

15   REQUEST?

16             MR. OVERSON:  SO YES IS THE ANSWER.

17             I THINK THE -- NO ONE SHOULD HAVE TO

18   REVIEW THOUSANDS AND TENS OF THOUSANDS OF ENTRIES.

19   THIS SHOULD BE A SEARCH PROCESS.  I DO THINK THE

20   SEARCH PROCESS IS THE MOST ECONOMIC WAY IS THE

21   FASTEST WAY TO DO IT.

22             I THINK THE ISSUE IS GOING TO BE FINDING

23   SEARCH TERMS THAT DON'T END UP WITH TOO MANY HEADS.

24             THE COURT:  JUST TO DO THE AGGREGATION

25   AND EXPORT, MY POINT OF REFERENCE MIGHT BE DATED

1    AND GETTING MORE DATED BY THE DAY, BUT THAT'S NOT

2    SOMETHING THAT'S INSUBSTANTIAL, YOU WOULD AGREE?

3            I SUSPECT YOUR OWN SUPPORT PEOPLE WOULD

4    TELL YOU THAT, RIGHT?  AND OF COURSE YOU UNDERSTAND

5    BY ASKING FOR THIS INFORMATION FROM SAMSUNG YOU

6    KNOW IT'S COMING BACK AT YOU, RIGHT?

7            MR. OVERSON:  CERTAINLY.

8            THE COURT:  SO WITH ALL THAT INFORMATION

9    AND UNDERSTANDING, YOU ARE SAYING YOU WANT THAT

10   KIND OF EFFORT UNDERTAKEN IN ORDER TO FIND THESE

11   INDIVIDUAL RECORDS THAT MAY OR MAY NOT EXIST?

12           MR. OVERSON:  HAVING A TARGETED SEARCH OF

13   A DATABASE THAT'S BEEN IN A SEARCHABLE -- THAT'S

14   PUT IN THE SEARCHABLE FORMAT AND HAVING THE SEARCH

15   TERMS BE REASONABLE, I MEAN, WE'RE NOT GOING TO ASK

16   EVERY TIME THEY CALLED ABOUT THE GALAXY PHONE, THAT

17   WOULD BE TOO MANY, THE SEARCH TERMS WILL BE MORE

18   FOCUSED ON THE CONFUSION MEANING THE APPLE

19   PRODUCTS.

20           WE DON'T BELIEVE -- I CAN'T SAY, BUT I

21   DON'T THINK THERE'S GOING TO BE TENS OF THOUSANDS

22   OF HITS IN APPLE IN THE CUSTOMER SERVICE.

23           THE COURT:  YOUR POINT IS YOU WOULD BE

24   DELIGHTED TO FIND OUT IF THAT WAS TRUE AND YOU

25   WOULD LIKE TO FIND WHAT THE DOCUMENTS HAVE TO SAY.

1        MR. OVERSON:  CERTAINLY, BUT I DON'T

2    THINK THERE WOULD BE THAT KIND OF BURDEN IF WE

3    LIMIT THE SEARCH TERMS AS I'VE DESCRIBED.

4        SO WE UNDERSTAND THE TIME PRESSURE.  WE

5    DO UNDERSTAND THAT.  BUT WE ALSO UNDERSTAND THE

6    PREJUDICE THAT IS HAPPENING TO US.

7        THERE ARE STATEMENTS FROM THEIR EXPERTS

8    AND WE -- BY THE WAY, MOST ALL OF THE DEPOSITIONS

9    HAVE BEEN EXPERTS SO FAR.  SO WHEN THE QUESTION WAS

10   ASKED HAVE WE SEARCHED EVERYTHING, IT'S MOSTLY ALL

11   EXPERTS.  THERE'S BEEN ONE FORMER SAMSUNG EMPLOYEE,

12   ONE CURRENT AMERICAN EMPLOYEE, NO KOREAN EMPLOYEES,

13   SO THERE HASN'T BEEN THAT PROCESS FOR DEPOSITIONS

14   HERE.

15       BUT LET ME STAY ON POINT BECAUSE I'M

16   CLOSING UP HERE.  THERE'S A PREJUDICE TO US.  WE

17   ARE COMING TO THE END.  IT CANNOT BE THE CASE THAT

18   YOU CAN COME TO THE END AND SAY, YOU KNOW, THIS IS

19   JUST TOO HARD AND THIS IS TOO MUCH EFFORT.

20       WE COULDN'T MOVE EARLIER.  THEY PRODUCED

21   A LOT OF DOCUMENTS RIGHT ON THAT MEET AND CONFER

22   DAY, SEPTEMBER 16TH.  THEY PRODUCED HALF THE

23   DOCUMENTS THAT WERE DUE ON THAT FRIDAY NIGHT AND

24   SATURDAY.  WE MOVED ON THE 20TH.

25       WE GOT THIS HEARING AS FAST AS WE COULD.

1   WE'VE DONE THE BEST WE COULD TO GET THIS IN FRONT

2   OF THE COURT.

3            AND WE NEED THE COURT'S ASSISTANCE IN

4   MOVING THIS FORWARD AND COMING UP WITH SOME FAIR

5   RESOLUTION SO WE DON'T END UP IN A SITUATION WHERE

6   WE ARE STANDING THERE ON THE 13TH NOT HAVING

7   RECEIVED RELEVANT EVIDENCE FROM THE OTHER SIDE IN

8   THE FACE OF THE OTHER SIDE'S ALLEGATIONS THAT WE

9   FAILED TO PRODUCE DOCUMENTS THAT ARE IN THEIR

10  POSSESSION.

11           OKAY.  THANK YOU.

12           THE COURT:  ALL RIGHT.

13           THANK YOU VERY MUCH.

14           MS. MAROULIS, ANY SURREBUTTAL, AS THEY

15  SAY IN OTHER PARTS OF THE COUNTRY?

16           MS. MAROULIS:  NO, YOUR HONOR, UNLESS YOU

17  HAVE ANY SPECIFIC QUESTIONS.

18           THE COURT:  NO, I THINK I UNDERSTAND YOUR

19  RESPECTIVE POSITIONS.

20           I APPRECIATE THE ARGUMENT THIS MORNING.

21  I WILL GET AN ORDER OUT JUST AS QUICKLY AS I CAN,

22  ESPECIALLY IN LIGHT OF THE SCHEDULE YOU'RE ALL

23  OPERATING UNDER.

24           AND THANK YOU FOR YOUR REMARKS THIS

25  MORNING.

1          MR. OVERSON:  THANK YOU, YOUR HONOR.

2          THE CLERK:  COURT IS ADJOURNED.

3          (WHEREUPON, THE PROCEEDINGS IN THIS

4     MATTER WERE CONCLUDED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                          **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22           _____

                 SUMMER A. FISHER, CSR, CRR
23               CERTIFICATE NUMBER 13185

24

25