NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**KIMBERLY-CLARK WORLDWIDE, INC. AND
KIMBERLY-CLARK GLOBAL SALES, LLC,**
*Plaintiffs-Appellees,*

v.

**FIRST QUALITY BABY PRODUCTS, LLC AND
FIRST QUALITY RETAIL SERVICES, LLC,**
*Defendants-Appellants.*

---

2010-1382

---

Appeal from the United States District Court for the Eastern District of Wisconsin in case no. 09-CV-0916, Judge William C. Griesbach.

---

Decided: June 1, 2011

---

CONSTANTINE L. TRELA, JR., Sidley Austin LLP, of Chicago, Illinois, argued for plaintiffs-appellees. With him on the brief were BRADLEY C. WRIGHT, Banner & Witcoff, Ltd., of Washington, DC; MARC S. COOPERMAN, J. PIETER VAN ES, MATTHEW P. BECKER, AIMEE B. KOLZ, MICHAEL L.

KRASHIN, and KATIE L. BECKER, of Chicago, Illinois. Of counsel was CHRISTOPHER B. ROTH, of Washington, DC.

KENNETH P. GEORGE, Amster Rothstein & Ebenstein LLP, of New York, New York, argued for defendants-appellants. With him on the brief were IRA E. SILFIN and MICHAEL V. SOLOMITA.

---

Before DYK, FRIEDMAN, and PROST, *Circuit Judges*.

PROST, *Circuit Judge*.

Defendants-Appellants, First Quality Baby Products, LLC and First Quality Retail Services, LLC (collectively, "First Quality"), appeal the grant of a preliminary injunction by the United States District Court for the Eastern District of Wisconsin in favor of Plaintiffs-Appellees Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales (collectively, "Kimberly-Clark"). *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 714 F. Supp. 2d 919 (E.D. Wis. May 20, 2010). Because we find that First Quality has raised substantial questions of validity with respect to U.S. Patent Nos. 6,514,187; 7,156,939; and 6,888,143, we *vacate* the preliminary injunction for these patents. We *affirm* the district court's grant of a preliminary injunction for U.S. Patent No. 6,776,316.

## I. BACKGROUND

This case involves training pants used by toddlers to assist in toilet training. Kimberly-Clark, a major participant in the personal care industry, develops and manufactures disposable training pants with refastenable side seams. These side seams attach through a hook and loop

fastening system, very similar to VELCRO®.  Kimberly-Clark obtained by assignment four patents directed to the manufacturing of training pants: U.S. Patent Nos. 6,514,187 ("'187 patent"); 7,156,939 ("'939 patent); 6,888,143 ("'143 patent"); and 6,776,316 ("'316 patent"). These patents disclose a machine-based method of folding training pants at the crotch region, aligning and fastening the side seams of the training pants, inspecting the training pants, and then folding the training pants for packaging.

First Quality manufactures and supplies disposable absorbent garments, including refastenable training pants, to major retailers.  In making these training pants, First Quality uses processes similar to the manufacturing methods taught by the four Kimberly-Clark patents. Kimberly-Clark, believing that First Quality's manufacturing processes infringe its patents, asserted the patents in the underlying litigation.  Thereafter, Kimberly-Clark moved for a preliminary injunction to enjoin First Quality from practicing the allegedly infringing manufacturing methods.  The following patent claims were at issue in the preliminary injunction motion: Claims 1 and 3-5 of the '187 patent; Claims 63-65, 67-68, and 142-143 of the '143 patent; Claims 12, 19, and 29 of the '939 patent; and Claims 1, 5, 6, and 8 of the '316 patent.

After holding a two-day evidentiary hearing, the district court granted a preliminary injunction, finding, inter alia, that Kimberly-Clark had established a reasonable likelihood of success on the merits under all four patents. *Kimberly-Clark*, 714 F. Supp. 2d at 936, 938. In particular, the district court held that Kimberly-Clark would likely prove First Quality's infringement of the four patents at issue and that these four patents would withstand validity and enforcement challenges.  *Id.* at 936.

KIMBERLY-CLARK v. FIRST QUALITY                                    4

On May 26, 2010, First Quality timely appealed the district court's preliminary injunction decision. We have jurisdiction under 28 U.S.C. § 1292(c)(1).[1]

After the parties filed their appeal briefs but before oral argument, the district court issued its claim construction order. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 09-C-916, 2011 WL 196509 (E.D. Wis. Jan. 20, 2011). In this order, the court departed from some of the claim constructions it had previously relied upon in granting the preliminary injunction.[2]

## II. DISCUSSION

This court reviews a decision to grant a preliminary injunction for abuse of discretion. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298 (Fed. Cir. 2009). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and

---

[1] A more complete discussion of the factual and procedural background can be found in the district court's preliminary injunction opinion. *See Kimberly-Clark*, 714 F. Supp. 2d at 919.

[2] Also after the parties filed their appeal briefs but before oral argument, the United States Patent and Trademark Office ("USPTO") granted First Quality's request for an inter partes reexamination of Claims 1-15 and 19-25 of the '187 patent. The USPTO subsequently rejected all of these claims in a December 14, 2010 initial office action as obvious under 35 U.S.C. § 103. The rejected claims included all '187 patent claims covered by the preliminary injunction ruling.

[4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008); *see also AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1049 (Fed. Cir. 2010). "Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).

"For a patentee to establish that it is likely to succeed on the merits, it 'must demonstrate that it will likely prove infringement of one or more claims of the patents-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer.'" *Astra-Zeneca*, 633 F.3d at 1050 (quoting *Amazon*, 239 F.3d at 1351); *see also Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1354 (Fed. Cir. 2008). "A preliminary injunction should not issue if an alleged infringer raises a substantial question regarding either infringement or validity, i.e., the alleged infringer asserts an infringement or invalidity defense that the patentee has not shown lacks substantial merit." *AstraZeneca*, 633 F.3d at 1050. In attempting to prove invalidity when seeking a preliminary injunction, the accused infringer does not face the clear and convincing evidence burden of proof applicable at trial. *See Altana*, 566 F.3d at 1006; *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1372 (Fed. Cir. 2005). Instead, "[v]ulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Altana*, 566 F.3d at 1006 (quoting *Amazon*, 239 F.3d at 1359).

## A. The '187 Patent

First Quality contests the validity of Claims 1 and 3-5 of the '187 patent.  Claim 1 covers a method of folding training pants where the pants, lying open and flat, proceed down a conveyer belt to a folding area ("folding nip").  Under this claim, roughly half of the training pant ("leading half") proceeds past the folding nip and onto a second conveyor belt.  The other half ("trailing half") remains on the first conveyer belt.  At this point, two vacuum rolls positioned near the folding nip work with the conveyor belt to move the training pant through the nip, which results in the folding of the training pant at the crotch region.  Claim 1 also teaches that as the folding occurs, two "separation members" employ to keep the leading and trailing halves of the pant separate from each other.  These separation members must be placed between the two conveyor belt devices, "disposed on opposite sides of a machine center line," and "disposed outward from the machine center line."  Claims 3-5 further limit Claim 1 by requiring the following: "mating mechanical fastening components" on the training pants; "transporting the leading half [of the training pant] past the folding nip;" and implementing folding blades to push the training pant into the folding nip.  Below is a figure illustrating the training pant folding process disclosed in the '187 patent.



In raising its invalidity defense, First Quality asserted a prior art reference teaching nearly the same invention disclosed by Claims 1 and 3-5 of the '187 patent. This reference, an Italian patent application to Fameccanica, disclosed a method for folding products such as diapers and underwear.  The undergarments folded according to this method lie open and flat on a conveyor belt guided by rollers and are transported to a folding area.  Upon reaching the folding area, the leading half of the undergarment proceeds past the folding point and onto a second conveyer belt, while the trailing half remains on the first conveyer belt.  With the aid of a "pusher" and vacuum suction, the undergarment moves through the folding area, resulting in the folding of the undergarments at the crotch region.  The vacuum suction taught by Fameccanica, however, originates from the conveyor belts, not the rollers.  Below is a figure illustrating Fameccanica's training pant folding process.



The Fameccanica reference differs from the '187 pat-
ent in two major respects.  First, Fameccanica does not
disclose vacuum rolls; it discloses vacuum conveyors.
Second, Fameccanica does not disclose plates that sepa-
rate the leading and trailing halves of the training pant
while the pant is folded at the crotch region.

The district court relied on the fact that Fameccanica
teaches a vacuum conveyor instead of a vacuum roll in
distinguishing this reference from the '187 patent.  *See
Kimberly-Clark*, 714 F. Supp. 2d at 933.  First Quality
argues, however, that any difference between vacuum
belts and vacuum rolls is trivial and unpatentable as
obvious.  While the ultimate question of obviousness is
not before us, the practical difference between using
vacuum rolls instead of vacuum conveyors appears very
minimal.  Indeed, the vacuum belts taught by Famec-
canica and the vacuum rolls taught by the '187 patent
serve the same purpose in the training pant manufactur-
ing process: pulling the training pants through the folding
nip.  Kimberly-Clark's own expert acknowledged that the

vacuum rolls were known before the '187 patent's priority
date, and that such rolls could have been used in the
Fameccanica invention.  For these reasons, First Quality's
argument that the vacuum conveyors are an obvious
variant of the vacuum rolls did not lack substantial merit.
*See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1259 (Fed.
Cir. 2007) ("[O]bvious variants of prior art references are
themselves part of the public domain.").

The second noteworthy difference between the Famec-
canica reference and Claims 1 and 3-5 of the '187 patent
is that Fameccanica does not teach "separation members"
that keep the leading and trailing halves of the training
pant separate during folding.   First Quality argues,
however, that the Herrmann reference (U.S. Patent No.
5,626,711) teaches separation members, and that it would
be obvious to combine Herrmann and Fameccanica.

The Herrmann reference discloses a machine that, in-
ter alia, folds elasticized undergarment products.  Under
Herrmann, an undergarment lies flat and open while
travelling through a mechanism that folds the leading
half of the undergarment over the trailing half.  At the
time of folding, rods deploy between the two halves of the
undergarment.

The district court distinguished these rods from the
separation members disclosed in the '187 patent by ex-
plaining that the rods were used for a completely different
purpose and implemented at a different time than the
separation members.  *See Kimberly-Clark*, 714 F. Supp.
2d at 931-32.  While this may be true, the Herrmann
specification explicitly teaches that the rods lie between
the leading and trailing halves of the training pant during
the folding process.  *See* U.S. Patent No. 5,626,711 col.7
l.53-60.  This design is similar to the '187 patent's disclo-

sure, which teaches "separation members" that separate the leading half of the training pant from the trailing half during folding. Whether the placement of the two rods between the leading and trailing halves as disclosed in Herrmann constitutes the type of "separation" described in the '187 patent is an issue that the parties and district court can address during the litigation. At the time the district court granted the preliminary injunction, however, First Quality's argument that the Herrmann reference taught the separation panels disclosed in the '187 patent did not lack substantial merit.

In sum, through Fameccanica, First Quality asserted a prior art reference teaching nearly every element contained in the asserted '187 patent claims. First Quality addressed the elements not present in Fameccanica by providing a obviousness argument regarding the vacuum rolls and asserting the Herrmann reference. As a result, First Quality has raised a substantial question of validity for Claims 1 and 3-5 of the '187 patent that cannot be characterized as substantially meritless. Therefore, the district court abused its discretion in granting a preliminary injunction for these claims.[3]

---

[3]      As mentioned, the USPTO rejected Claims 1 and 3-5 of the '187 patent in an inter partes reexamination proceeding after the district court issued its preliminary injunction ruling. We have explained that "the current posture of . . . inter partes reexamination proceedings at the PTO" is relevant "when evaluating . . . the likelihood of success on the merits" at the preliminary injunction stage. *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 847 (Fed. Cir. 2008). In particular, the examiner's decision regarding patentability can be considered when discerning the likelihood of success. *Id.* Although the rejection issued after the district court's preliminary injunction ruling, we note that the rejection provides further support for First Quality's position that

## B. The '143 Patent

First Quality contests the validity of Claims 63-65, 67-68, and 142-143 of the '143 patent (the claims covered by the preliminary injunction order). These claims cover a method of inspecting pre-fastened training pants to ensure they are assembled properly at the side seams. More specifically, after the training pants are folded at the crotch region and then connected at the sides, the patented invention teaches the pulling of the front and back portions of the pants so as to induce tension at the engagement seam (i.e., the side seams). This enables the inspection of the training pants from the side, rather than from above, and ensures proper alignment at the engagement seam. Claims 142 and 143 add the additional requirement that an image be captured during the inspection process.

First Quality argued at the preliminary injunction stage that a machine designed to manufacture training pants ("TP3 machine") anticipated all of the asserted '143 patent claims under 35 U.S.C. § 102(b).[4] The district court rejected this argument in its preliminary injunction ruling after construing the "pre-fastened disposable pants" claim term to cover only pants with refastenable side seams.[5] *Kimberly-Clark*, 714 F. Supp. 2d at 933.

_____

the '187 patent claims are "vulnerable." *See Erico*, 516 F.3d at 1357.

[4]    Kimberly-Clark disputes whether the TP3 machine qualifies as prior art. The district court assumed it did for purposes of its preliminary injunction analysis. *See Kimberly-Clark*, 714 F. Supp. 2d at 930-31. We do the same.

[5]    This claim term is contained in Claims 63-65, 67-68, and 142-143 of the '143 patent (i.e., all '143 claims subject to the preliminary injunction ruling).

Under this construction, the TP3 machine could not qualify as anticipating prior art because it only produced training pants with permanently bonded side seams. *See Kimberly-Clark*, 714 F. Supp. 2d at 933-34. Thus, the district court's claim construction significantly undermined First Quality's invalidity position.

The district court's construction, however, conflicted with the '143 specification, a point which the district court acknowledged in its subsequent January 20, 2011 claim construction order. *See Kimberly-Clark*, 2011 WL 196509, at *8. The specification makes clear that the claimed invention is not limited to refastenable articles and can be used in conjunction with pants having permanently bonded side seams. *See* '143 patent col.9 l.11-24, col.14 l.54-57. Indeed, relying on this specification language in its January 20, 2011 claim construction order, the district court amended its previous construction of the "pre-fastened disposable pants" term to include training pants with permanently bonded side seams. *See Kimberly-Clark*, 2011 WL 196509, at *8. This amended construction significantly strengthens First Quality's invalidity position regarding the ability of the TP3 machine to anticipate the claimed invention. Clearly, the fact that the district court applied an improper claim construction of the "pre-fastened disposable pants" term and relied on that construction heavily in its preliminary injunction analysis of the '143 patent's validity undermines its conclusion that a preliminary injunction was appropriate. *See Jack Guttman, Inc. v. Kopykake Enters.*, 302 F.3d 1352, 1361-62 (Fed. Cir. 2002) ("Our precedent supports the proposition that grounding a decision on a preliminary injunction on a claim construction at odds with an

unambiguous definition in the intrinsic evidence consti-
tutes an abuse of discretion.").

Regarding the TP3 machine, First Quality proffered
evidence and argument at the preliminary injunction
proceedings in support of its position that this machine
shares the features claimed by the '143 patent. Kimberly-
Clark responded by arguing that the TP3 machine fails to
disclose the '143 patent's "tension" limitation, supporting
this argument with evidence purportedly showing that
the training pant hangs loose, or sags, on the paddles
during the inspection process.[6]  The district court sided
with Kimberly-Clark on this issue.  *See Kimberly-Clark*,
714 F. Supp. 2d at 934.

We do not conclude that the district court's factual
findings regarding the TP3 machine and tension are
incorrect.  Indeed, as explained in more detail below in
Section D, such factual findings made at the preliminary
injunction stage "deserve tolerance by reviewing courts."
*See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557
(Fed. Cir. 1994).  The tension issue, however, is a closely
contested one that could change based on evidence sub-
mitted during discovery.  Moreover, the court's conclusion
regarding the tension issue does not detract from the fact
that (1) the TPC machine has an inspection system very
similar to the inspection methods taught by the '143
patent and (2) the TP3 machine's permanently bonded
side seam limitation does not prevent the machine from
anticipating the claims under a proper construction of the
"pre-fastened" claim term.  Therefore, we conclude that

---

[6]   Tensioning the training pant during inspection is
explicitly required by Claims 68, 142, and 143 of the '143
patent.

First Quality has raised a substantial question of validity for Claims 63-65, 67-68, and 142-143 of the '143 patent that cannot be characterized as substantially meritless. As a result, we hold that the district court abused its discretion in granting a preliminary injunction for these claims.

### C. The '939 Patent

The '939 patent teaches a method of strengthening the engagement seam of the training pant.[7] The preferred type of fastening at the engagement seam taught by the '939 patent involves hook and loop fastening very similar to VELCRO®. When one applies a shear stress to such a system (e.g., by moving the engaged hook and loop faces in a parallel, opposite direction from each other), more hooks can snag into the loops, thereby strengthening the bond between the hook and loop components.

First Quality contests the validity of Claims 12, 19, and 29 of the '939 patent. These claims cover a method of applying "shear stress" to the engagement seam of a "prefastened" disposable garment, which is designed to promote "increased engagement" at the seam. In raising a § 102(b) defense, First Quality asserted the Lindqvist reference as anticipatory prior art. This reference discloses a hook and loop fastening system on a refastenable training pant that passes through two mating rollers. Lindqvist, WO 98/15248 p. 7, 9, 18. The figure below illustrates the hook and loop fastening system as it passes through the rollers.

---

[7]   According to the district court's claim construction order, the "engagement seam" is the point at which the front and back panels of the garment connect. *Kimberly-Clark*, 2011 WL 196509, at *9.



FIG.9

The district court distinguished Lindqvist, finding that this reference did not disclose the "shear stress" limitation required by the '939 patent. *Kimberly-Clark*, 714 F. Supp. 2d at 935. In particular, the court concluded that when the top and bottom sheets of the Lindqvist fastening system pass through the rollers, a relative displacement occurs involving compression or bending forces, not a shear stress. *Id.*

If the force causing the "relative displacement" in Lindqvist qualifies as a "shear stress" as that term is defined in the '939 patent, Lindqvist would provide First Quality with a sound invalidity argument. Therefore, the '939 patent's specification support for the "shear stress" claim term, and the court's construction of that claim term, are relevant. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of the record . . . including the specification.").

Kimberly-Clark argues that a shear stress as defined by the '939 patent only occurs when the entire top sheet of the hook and loop fastener system is pulled in an opposite

direction from the bottom sheet, and that Lindqvist does not teach this type of action. The district court adopted a narrow construction of "shear stress" in its preliminary injunction infringement analysis, defining the term to mean a force "generally parallel to the face of the material and pulling in opposite directions." *See Kimberly-Clark*, 714 F. Supp. 2d at 927.[8]

The '939 specification, however, does not require such a narrow reading of the "shear stress" term. Indeed, this specification makes clear that a shear stress can result from other techniques besides pulling the top and bottom sheets in opposite directions (such as by applying a force to only one of the fastening components). *See* '939 patent col.34 l.11-18. Moreover, the district court, relying on this specification language, rejected its own initial construction of "shear stress" (from the preliminary injunction proceeding) and re-construed the term more broadly in its January 20, 2011 claim construction order to mean "force generally parallel to the face of the material." *Kimberly-Clark*, 2011 WL 196509, at *11.

This broader construction substantially enhances First Quality's argument that the force generated by the mating of the rollers in Lindqvist qualifies as a "shear stress" as defined by the '939 patent. In particular, the Lindqvist reference states that "the hook members of the second portion and the surface of the topsheet . . . effect a relative displacement in a direction substantially parallel to the surface of the topsheet." Lindqvist, WO 98/15248 p.9 ln.3-6. Lindqvist also explains that "the *relative displacement* of the hook members and the surface of the article *in a direction substantially parallel to* the surface

_____

[8]   The district court did not apply this definition in its validity analysis of the '939 patent.

of the article causes the hook members to 'jiggle' between the fibers and loops of the surface material and become snagged thereon." *Id.* at p.9 ln. 22-27 (emphases added). This language in Lindqvist encroaches upon the definition of shear stress provided by the district court in its January 20, 2011 claim construction order (i.e., "force generally parallel to the face of the material"). For these reasons, First Quality's argument that Lindqvist meets the '949 patent's shear stress element does not lack substantial merit.

In addition to the shear stress element, the district court concluded that Lindqvist did not disclose the '939 patent's "promote increased engagement" element. The methods taught by Claims 12, 19, and 29 of the '939 patent require that the shear stress at the engagement seam "promote increased engagement between the fastening components." The district court concluded that Lindqvist did not satisfy this element because that reference dealt with preparing products for storage, which meant that there was "no need to promote increased engagement between fastening components." *Kimberly-Clark*, 714 F. Supp. 2d at 935.

In focusing on the storage characteristics of the Lindqvist system, the district court however, failed to accord proper weight to Lindqvist's explicit statement that subjecting the hook and loop system to a relative displacement "significantly increased retention force between the hook members . . . and the topsheet." Lindqvist, WO 98/15248 p.9 ln.6-12. Because of this language, First Quality's argument that the Lindqvist system "promote[s] increased engagement between the fastening components" as required by Claims 12, 19, and 29 of the '939 patent does not lack substantial merit.

In sum, in asserting the Lindqvist reference, First Quality has raised a substantial question of validity for Claims 12, 19, and 29 of the '939 patent that cannot be characterized as substantially meritless. As a result, we hold that the district court abused its discretion in granting a preliminary injunction for these claims.

### D. The '316 Patent

The district court's preliminary injunction ruling for the '316 patent covered Claims 1, 5, 6, and 8. These claims disclose a method of tucking the side seams of refastenable training pants in between the front and back panels of the garment. The invention achieves this result by implementing vacuum conveyor devices to hold the front and back portions of the pant apart from each other while blades push the refastenable side seams towards the center of the garment, thereby folding the diaper. The area where the vacuum conveyor device contacts, and thus suctions, the diaper is called the "vacuum zone." First Quality, on appeal, challenges the district court's finding that Kimberly-Clark established a likelihood of success in proving validity and infringement regarding the '316 patent.

First, with respect to validity, First Quality proffered an obviousness defense based on two prior art machines that manufactured training pants (the P&G Machine and the Drypers Machine). The district court distinguished these machines from the claims at issue, however, because the machines only produced training pants with permanently bonded side seams, not training pants with refastenable side seams. *Kimberly-Clark*, 714 F. Supp. 2d at 934.

19                                KIMBERLY-CLARK v. FIRST QUALITY

On appeal, First Quality argues that it would have been obvious to use the P&G and Drypers Machines to manufacture training pants with refastenable side seams. In support of this argument, First Quality relies on a statement made by Kimberly-Clark in 1994 while opposing a European patent application involving refastenable training pants: "[t]he provision of releasable and refastenable fastening means on training pants was entirely routine and obvious at priority date . . . . [T]he concept of releasably fastened training pants was widely known as were the benefits of such a feature by 1994 . . . ." J.A. 1619-1620. The district court dismissed this admission, explaining that "while [Kimberly-Clark] may have thought at the time that it would be obvious to use known manufacturing methods to produce refastenable training pants, this does not mean that it did not learn otherwise when it embarked on its own project . . . ." *Kimberly-Clark*, 714 F. Supp. 2d at 938.

The record contains evidence showing that Kimberly-Clark did in fact learn otherwise when it embarked on its own project. In particular, Kimberly-Clark proffered evidence and testimony showing that the '316 patent resulted from unexpected difficulties encountered after 1994 when it tried to develop a process for folding its prefastened, refastenable training pants for packaging. *Id.* at 934. For instance, Robert Popp, a technical specialist at Kimberly-Clark, testified that his design team did not anticipate any problems with folding its refastenable training pants for packaging but eventually discovered that if the fold fell on the refastenable engagement seam, the hook and loop system "didn't function very well . . . [and] would pop open." *Id.* To solve these problems, Kimberly-Clark designed a tucking method that could control the location of the longitudinal fold. *Id.* This tucking method forms the basis of the '316 patent.

The '316 specification discusses these unexpected difficulties, as well, explaining that the claimed invention originated to address the engagement problems associated with folding training pants with refastenable side seams. *See* '316 patent col.6 l.29–63. The importance of the refastenability feature in the '316 patent is also evident in the claims, as each claim covered by the court's preliminary injunction order contains a refastenability limitation.

Because the '316 patent (and related evidence) focuses so strongly on refastenable side seams and on solving the problems associated with folding such seams, the district court did not err in rejecting First Quality's obviousness argument. On this record, given the absence of contrary evidence from First Quality on the obviousness issue, the district court did not err in finding that First Quality failed to raise a substantial issue of patentability.

Second, with regard to infringement, all four of the claims at issue have a limitation requiring the vacuum zone to have "a transverse width about equal to a desired folded transverse width of the body portion in contact with the vacuum zone" ("Equal Width Limitation"). '316 patent col.15 l.57-59. First Quality argues that the machine accused of infringement does not meet the Equal Width Limitation because the transverse widths of the machine's vacuum zones are 68 mm and 85 mm, while the transverse width of the body portion of the training pant manufactured by the machine is 115 mm. As a result, First Quality asserts that the transverse width of the vacuum is not "about equal" to the transverse width of the body portion of the training pant. In support of this argument, First Quality provided Computer-aided design ("CAD") drawings of its machine and elicited testimony during the two-day evidentiary hearing.

Conversely, Kimberly-Clark argues that the vacuum zone utilized by the First Quality machine does span the transverse width of the body portion of the training pant. In making this argument, Kimberly-Clark relies primarily on photographs it took while inspecting First Quality's facilities, as well as testimony on those photographs. The district court ruled in Kimberly-Clark's favor, explaining that First Quality "inexplicably did not provide its own photographs and video of its own machine." *Kimberly-Clark*, 714 F. Supp. 2d at 927. As a result, the court held that Kimberly-Clark was "likely to prevail in its contention that First Quality literally infringes the '316 patent." *Id.*

"[M]otions for a preliminary injunction may come for decision before significant discovery has occurred." *Guttman*, 302 F.3d at 1361. Therefore, we remain "mindful that all findings of fact and conclusions of law at the preliminary injunction stage are subject to change upon the ultimate trial on the merits." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001). As a result, the district court's findings at the preliminary injunction stage "deserve tolerance by reviewing courts so they can tailor procedures of adjudication to the case at hand." *Reebok*, 32 F.3d at 1557.

Here, the district court held an evidentiary hearing and viewed evidence on the width of the vacuum zones in First Quality's allegedly infringing machine, a critical element in the infringement analysis for Claims 1, 5, 6, and 8 of the '316 patent. The court accorded little weight to First Quality's evidence because this evidence consisted of CAD files instead of actual photographs of its own machine. We see no error in the district court's conclusion and reasoning on this issue. Therefore, the court did not abuse its discretion in holding that Kimberly-Clark

KIMBERLY-CLARK v. FIRST QUALITY                    22

had shown a reasonable likelihood of success in proving infringement of Claims 1, 5, 6, and 8 of the '316 patent.

Finally, we see no error in the district court's conclusions and reasoning regarding the remaining preliminary injunction factors (i.e., the irreparable harm factor, the balance of harms factor, and the public interest factor). *See Kimberly-Clark*, 714 F. Supp. 2d at 936-37. Therefore, the district court did not abuse its discretion in deciding that these factors favored the grant of a preliminary injunction for Claims 1, 5, 6, and 8 of the '316 patent.

## III. CONCLUSION

For the above reasons, we conclude that the district court abused its discretion in granting Kimberly-Clark's motion for a preliminary injunction for Claims 1 and 3-5 of the '187 patent; Claims 63-65, 67-68, and 142-143 of the '143 patent; Claims 12, 19, and 29 of the '939 patent. Therefore, we vacate the order of the district court with respect to these claims. We affirm, however, the district court's decision to grant a preliminary injunction under Claims 1, 5, 6, and 8 of the '316 patent.

### COSTS

Each party shall bear its own costs.

**AFFIRMED-IN-PART AND VACATED-IN-PART**

# United States Court of Appeals
# for the Federal Circuit

---

September 29, 2011

**ERRATA**

---

Appeal No. 2010-1382

**KIMBERLY-CLARK WORLDWIDE, INC. AND
KIMBERLY-CLARK GLOBAL SALES, LLC,**
v.
**FIRST QUALITY BABY PRODUCTS, LLC AND
FIRST QUALITY RETAIL SERVICES, LLC,**

Decided:  June 1, 2011
Nonprecedential Opinion

---

Please make the following changes:

Page 10, line 16, change "a" to --an--

Page 10, lines 18-19, delete "raised a substantial question of validity for" and insert --asserted a defense to--.

Page 10, lines 19-20, delete "cannot be characterized as substantially meritless" and insert --raises a substantial question of validity and does not lack substantial merit--

Page 14, lines 1-2, delete "raised a substantial question of validity for" and insert --asserted a defense to--

Page 14, line 3 delete "cannot be characterized as sub-

KIMBERLY-CLARK v. FIRST QUALITY                2

stantially meritless" and insert --raises a substantial
question of validity and does not lack substantial merit--

Page 18, line 2, delete "raised a substantial question of
validity for" and insert --asserted a defense to--

Page 18, line 3-4, delete "cannot be characterized as
substantially meritless" and insert --raises a substantial
question of validity and does not lack substantial merit--

# United States Court of Appeals
# for the Federal Circuit

---

**KIMBERLY-CLARK WORLDWIDE, INC. AND
KIMBERLY-CLARK GLOBAL SALES, LLC,**
*Plaintiffs-Appellees,*

v.

**FIRST QUALITY BABY PRODUCTS, LLC AND
FIRST QUALITY RETAIL SERVICES, LLC,**
*Defendants-Appellants.*

---

2010-1382

---

Appeal from the United States District Court for the
Eastern District of Wisconsin in case no. 09-CV-0916,
Judge William C. Griesbach.

---

ON PETITION FOR PANEL REHEARING AND
REHEARING EN BANC

---

CONSTANTINE L. TRELA, JR., Sidley Austin LLP, of
Chicago, Illinois, filed a combined petition for rehearing
and rehearing en banc for plaintiffs-appellees. With him
on the petition were BRADLEY C. WRIGHT, Banner &
Witcoff, Ltd., of Washington, DC; MARC S. COOPERMAN, J.
PIETER VAN ES, MATTHEW P. BECKER, AIMEE B. KOLZ,
MICHAEL L. KRASHIN, and KATIE L. BECKER, of Chicago,
Illinois. Of counsel was CHRISTOPHER B. ROTH, Banner &
Witcoff, Ltd., of Washington, DC.

KIMBERLY-CLARK v. FIRST QUALITY                            2

KENNETH P. GEORGE, Amster Rothstein & Ebenstein LLP, of New York, New York, filed a response for defendants-appellants. With him on the response were IRA E. SILFIN, MICHAEL V. SOLOMITA, CHARLES R. MACEDO, and BRIAN COMACK.

---

Before RADER, *Chief Judge*, NEWMAN, LOURIE, BRYSON, LINN, DYK, PROST, MOORE, O'MALLEY, and REYNA, *Circuit Judges*.

PER CURIAM.

NEWMAN, *Circuit Judge*, with whom O'MALLEY and REYNA, *Circuit Judges*, join, dissents from the denial of the petition for rehearing en banc.

O'MALLEY, *Circuit Judge*, dissents from the denial of the petition for rehearing en banc.

## ORDER

A combined petition for panel rehearing and rehearing en banc was filed by Plaintiffs-Appellees, and a response thereto was invited by the court and filed by Defendants-Appellants. The petition for rehearing was referred to the panel that heard the appeal,[*] and thereafter the petition for rehearing en banc and the response were referred to the circuit judges who are authorized to request a poll of whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

---

[*] Judge Friedman, who was a member of the panel, died July 6, 2011 and did not participate.

3                          KIMBERLY-CLARK v. FIRST QUALITY

(1) The petition of Plaintiffs-Appellees for panel rehearing is denied.

(2) The petition of Plaintiffs-Appellees for rehearing en banc is denied.

(3) The mandate of the court will issue on October 6, 2011.

FOR THE COURT

September 29, 2011                    /s/ Jan Horbaly
_____                    _____
       Date                          Jan Horbaly
                                     Clerk

cc:  Constantine L. Trela, Jr.
     Kenneth P. George

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

SEP 29 2011

JAN HORBALY
CLERK

# United States Court of Appeals
# for the Federal Circuit

---

**KIMBERLY-CLARK WORLDWIDE, INC. AND
KIMBERLY-CLARK GLOBAL SALES, LLC,**
*Plaintiffs-Appellees,*

v.

**FIRST QUALITY BABY PRODUCTS, LLC AND
FIRST QUALITY RETAIL SERVICES, LLC,**
*Defendants-Appellants.*

---

2010-1382

---

Appeal from the United States District Court for the
Eastern District of Wisconsin in Case No. 09-CV-0916,
Judge William C. Griesbach.

---

NEWMAN, *Circuit Judge*, with whom O'MALLEY and
REYNA, *Circuit Judges*, join, dissenting from denial of the
petition for rehearing en banc.

I respectfully dissent from the denial of Kimberly-
Clark's petition for rehearing en banc. The panel's view of
the law governing preliminary injunctions warrants correc-
tion, for it is in conflict with the law of the Supreme Court,
in conflict with the law of all of the regional circuits, and in
conflict with controlling Federal Circuit precedent. Recent
aberrations, including this case, have imparted uncertainty

KIMBERLY-CLARK v. FIRST QUALITY                                  2

and brought further conflict to our own precedent.   To
reestablish reliable law this issue should be taken en banc,
and a consistent position taken on which the district courts
and the concerned public can rely.

The matter is not trivial, for it affects whether a pre-
liminary injunction is available in a patent case.  There is a
large difference between whether the movant is likely to
prevail after trial of the merits, and whether the nonmovant
has proffered a pre-trial defense that "does not lack sub-
stantial merit."[1]   In deciding whether the patent right
should be preserved *pendente lite*, the question of whether to
grant a preliminary injunction includes consideration of the
equities and relative harms,  not  simply whether the ac-
cused infringer has offered a colorable basis for avoiding
summary judgment.

The question before the panel was whether the district
court abused its discretion in granting the preliminary
injunction.  The panel, reversing the district court for three
of the four patents, holds that it is an abuse of discretion to
grant a preliminary injunction unless the proposed defense
"lacks substantial merit." Thus the panel offers a one-sided
presentation of the accused infringer's position and gives
perfunctory treatment to the patentee's position, even as the
panel affirms the district court's findings that the factors of
irreparable harm, the balance of harms, and the public
interest, all favor the patentee.  The panel simply rules that
if an accused infringer's position does not lack substantial
merit, no preliminary injunction is available.  The appropri-
ate question, however, is whether the movant is likely to
prevail on the merits, not whether the accused infringer can

---

[1]     The panel now issues an "errata," changing "sub-
stantially meritless" in the panel opinion to "lack substan-
tial merit."  The panel does not explain its "error," nor how
its new usage is free of that error.

raise a defense. The panel's ruling violates the Court's requirement that injunctions in patent cases are subject to the same rules as for other causes.

Inconsistent judicial statements of the law and its applications defeat a stable and reliable foundation for commerce based on law. Consistency in the law is no less important in patent matters, where public and private interests are advanced by investment in technological commerce. This court's conflicting rules with respect to preliminary injunctions should be resolved.

## DISCUSSION

The Court has often mentioned the standard for issuance of a preliminary injunction. *E.g., Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."). This traditional standard is recited in the panel's opinion, but it is ignored. Instead, the panel adopts the irregular standard that no preliminary injunction is available if the defendant has raised a defense that does not lack substantial merit.

The panel also does not properly consider, on motion for a preliminary injunction, the presumptions and burdens that will inhere at trial. That too is contrary to controlling precedent. *See Gonzales v. O Centro Espirita Beneficente*

*Uniao do Vegetal*, 546 U.S. 418, 429 (2006) ("[T]he burdens at the preliminary injunction stage track the burdens at trial."); *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) (the district court, granting a preliminary injunction, did not "clearly err by concluding that at trial Apotex will likely not be able to demonstrate by clear and convincing evidence that the Thorax advertisement anticipates the asserted method claims"). For proving invalidity of an issued patent, the presumptions and burdens are established by statute: "A patent shall be presumed valid . . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. §282. This burden "exists at every stage of the litigation." *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998). In *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011), the Court confirmed that invalidity must be proved by clear and convincing evidence.

Most Federal Circuit decisions have been faithful to the established rules. *See, e.g., Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006) (applying the applicable presumptions and burdens in reviewing the grant of a preliminary injunction); *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005) ("In order to demonstrate a likelihood of success on the merits, Gillette has to show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) Energizer likely infringes the '777 patent, and (2) the claims of the '777 patent will likely withstand Energizer's challenges to validity."); *Ranbaxy Pharm., Inc. v. Apotex, Inc.*, 350 F.3d 1235, 1239 (Fed. Cir. 2003) (applying the traditional four factors of "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunctions were not granted; (3) the balance of the hardships and (4) the impact of the injunction on the public interest," and reiterating that the showing of

reasonable likelihood of success on the merits must be "in light of the presumptions and burdens that will inhere at trial on the merits"); *PPG Indus., Inc. v. Guardian Indus., Inc.*, 75 F.3d 1558, 1566 (Fed. Cir. 1996) ("The ultimate question, however, is whether the challenger's evidence of invalidity is sufficiently persuasive that it is likely to over-come the presumption of patent validity."); *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994) ("Whether a preliminary injunction should issue turns upon four factors: (1) the movant's reasonable likelihood of suc-cess on the merits; (2) the irreparable harm the movant will suffer if preliminary relief is not granted; (3) the balance of hardships tipping in its favor; and (4) the adverse impact on the public interest."); *Rosemount, Inc. v. Int'l Trade Comm'n*, 910 F.2d 819, 821 (Fed. Cir. 1990) ("To grant the equitable relief of an injunction prior to trial, a district court traditionally considers and balances the factors of: (1) the movant's likelihood of success on the merits; (2) whether or not the movant will suffer irreparable injury during the pendency of litigation if the preliminary injunction is not granted; (3) whether or not that injury outweighs the harm to other parties if the preliminary injunction is issued; and (4) whether the grant or denial of the preliminary injunction is in the public interest.").

The district court found that the accused infringer, First Quality Baby Products, was not likely to meet these burdens as to the four manufacturing patents in suit. The panel did not find otherwise. The panel's reversal of the district court's ruling as to three patents is simply based on whether First Quality raised a question that "does not lack substan-tial merit." This standard essentially negates the possibility of grant of a preliminary injunction to preserve the status quo during patent litigation, for in today's complex patent law it is hard to imagine a case in which a defense that is

"not substantially meritless" cannot be devised at the preliminary stage.

The panel's approach is in conflict with not only the Supreme Court, but with every other circuit. All require consideration of the likely outcome on the merits as well as the equitable factors. *See, e.g., CSX Transp. Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005) ("In considering whether to grant preliminary injunctive relief, the court must consider whether: (1) the party seeking the injunction has a substantial likelihood of success on the merits; (2) the party seeking the injunction will be irreparably injured if relief is withheld; (3) an injunction will not substantially harm other parties; and (4) an injunction would further the public interest."); *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 46 (1st Cir. 2005) ("A district court must weigh four factors in determining whether to issue a preliminary injunction: (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."); *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 191-92 (3d Cir. 1990) ("When ruling on such a motion, the district court must consider four factors: [A] the likelihood that the applicant will prevail on the merits at final hearing; [B] the extent to which the plaintiffs are being irreparably harmed by the conduct complained of; [C] the extent to which the defendants will suffer irreparable harm if the preliminary injunction is issued; and [D] the public interest."); *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) ("In order to receive a preliminary injunction, a plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable

harm in the absence of preliminary relief, that the balance
of equities tips in his favor, and that an injunction is in the
public interest."); *Canal Authority of State of Florida v.
Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) ("The four
prerequisites are as follows: (1) a substantial likelihood that
plaintiff will prevail on the merits, (2) a substantial threat
that plaintiff will suffer irreparable injury if the injunction
is not granted, (3) that the threatened injury to plaintiff
outweighs the threatened harm the injunction may do to
defendant, and (4) that granting the preliminary injunction
will not disserve the public interest."); *Six Clinics Holding
Corp. II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir.
1997) ("The factors to be considered by a district court in
deciding whether to grant a preliminary injunction are well-
established: (1) the likelihood that the party seeking the
preliminary injunction will succeed on the merits of the
claim; (2) whether the party seeking the injunction will
suffer irreparable harm without the grant of the extraordi-
nary relief; (3) the probability that granting the injunction
will cause substantial harm to others; and (4) whether the
public interest is advanced by the issuance of the injunc-
tion."); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11
(7th Cir. 1992) ("As a threshold matter, a party seeking a
preliminary injunction must demonstrate (1) some likeli-
hood of succeeding on the merits, and (2) that it has no
adequate remedy at law and will suffer irreparable harm if
preliminary relief is denied. If the moving party cannot
establish either of these prerequisites, a court's inquiry is
over and the injunction must be denied.  If, however, the
moving party clears both thresholds, the court must then
consider: (3) the irreparable harm the non-moving party will
suffer if preliminary relief is granted, balancing that harm
against the irreparable harm to the moving party if relief is
denied; and (4) the public interest, meaning the conse-
quences of granting or denying the injunction to non-
parties."); *Entergy, Arkansas, Inc. v. Nebraska*, 210 F.3d

887, 898 (8th Cir. 2000) ("The relevant factors on a motion for a preliminary injunction are: (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest."); *Cal. Pharms. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 849 (9th Cir. 2009) ("Plaintiffs seeking a preliminary injunction in a case in which the public interest is involved must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest."); *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir. 1992) ("To obtain a preliminary injunction, the moving party must establish that (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits."); *All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) ("A district court may grant injunctive relief if the movant shows (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and (4) that if issued the injunction would not be adverse to the public interest.").

Some circuits, in cases where the eventual outcome is hard to predict at that early stage, have authorized a preliminary injunction when irreparable harm has been shown and "the costs outweigh the benefits." *Citigroup Global*

*Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.,*
598 F.3d 30, 35 (2d Cir. 2010) (requiring "a party seeking a
preliminary injunction to show (a) irreparable harm and (b)
either (1) likelihood of success on the merits or (2) suffi-
ciently serious questions going to the merits to make them a
fair ground for litigation and a balance of hardships tipping
decidedly toward the party requesting the preliminary
relief," and explaining that this standard "permits a district
court to grant a preliminary injunction in situations where
it cannot determine with certainty that the moving party is
more likely than not to prevail on the merits of the underly-
ing claims, but where the costs outweigh the benefits of not
granting the injunction."); *Dollar Rent A Car v. Travelers
Indem. Co.,* 774 F.2d 1371, 1374-75 (9th Cir. 1985) ("The
moving party may meet its burden by demonstrating either
(1) a combination of probable success on the merits and the
possibility of irreparable injury or (2) that serious questions
are raised and the balance of hardships tips sharply in its
favor.").

Precedent's concern for equity places the panel's ruling
in sharp relief.  No other circuit denies a preliminary in-
junction merely because the nonmovant has raised an
argument worthy of consideration.  This is not the first case
in which this court has departed from the correct standard,
or even from recitation of the correct standard.  In *Ama-
zon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343,
1350 (Fed. Cir. 2001), the court stated that if the alleged
infringer "raises a substantial question concerning either
infringement or validity, *i.e.,* asserts an infringement or
invalidity defense that the patentee cannot prove 'lacks
substantial merit,' the preliminary injunction should not
issue," quoting a portion of *Genentech, Inc. v. Novo Nordisk,
A/S,* 108 F.3d 1361, 1364 (Fed. Cir. 1997), where the court
interpreted precedent as meaning that "if Novo raises a
'substantial question' concerning validity, enforceability, or

infringement (i.e., asserts a defense that Genentech cannot show 'lacks substantial merit') the preliminary injunction should not issue." The panel herein, with or without its "errata," adopts this "should not issue" posture without appreciation of the context in which it arose, or of the factual and equitable situations in those cases that cited it. However, a defense that does not "lack substantial merit" is of a different order than a defense that is likely to succeed by clear and convincing evidence.

This court's departure from the universal standard conflicts with the Court's admonition in *eBay Inc, v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), where in discussing the traditional principles for grant of a permanent injunction, the Court held that "these familiar principles apply with equal force to disputes arising under the Patent Act." *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009) ("The Supreme Court has stated that the general rules applicable to injunctions in civil actions apply equally to injunctions in patent cases; there is no room for making the substantial question test a substitute or replacement for the established test for injunctions." (citing *eBay*, 547 U.S. at 394)).

Just as the Court in *eBay* confirmed that there is no absolute right to a permanent injunction, so there is no absolute right to a preliminary injunction. *See Salinger v. Colting*, 607 F.3d 68, 77-78 (2d Cir. 2010) (holding that *eBay* applies "with equal force" to preliminary injunctions in copyright cases). There is, however, an absolute right to the principles of law and equity that govern such determinations. *See eBay*, 547 U.S. at 391 ("a major departure from the long tradition of equity practice should not be lightly implied").

In addition, this court has observed that the standard for granting or denying a preliminary injunction is not unique to patent law, and has ruled that the standard of the regional circuit should apply. *Mikohn Gaming Corp v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed. Cir. 1998) ("The Federal Circuit has generally viewed the grant of a preliminary injunction as a matter of procedural law not unique to the exclusive jurisdiction of the Federal Circuit, and on appellate review has applied the procedural law of the regional circuit in which the case was brought."). This rule, too, receives no recognition in the panel's opinion.

Recognizing the burgeoning divergences in Federal Circuit precedent, the court in *Titan Tire* undertook to reconcile various past statements and approaches, and explained that "a finding of a 'substantial question' of invalidity is a *substantive conclusion* by the trial court, a conclusion that the patentee is unlikely to succeed on the merits of the validity issue because the patentee is unable to establish that the alleged infringer's invalidity defense 'lacks substantial merit'." 566 F.3d at 1379. However, the attempted reconciliation in *Titan Tire* appears to have failed, for this panel provides no qualification for its position that if validity is reasonably questioned, the injunction will be denied.

As the Court has explained, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Mikohn*, 165 F.3d at 895 (the preliminary injunction serves to preserve the status quo "lest one side prevent resolution of the questions or execution of any judgment by altering the status quo"). Such purpose is of particular relevance for patent property, for the patent term continues to run during litigation, and a loss of patent-supported exclusivity during the years of litigation may exhaust not only the life of the

patent, but also the value of the invention to its creator. Yet the panel's approach removes patent cases from the mainstream of injunction practice. In reversing the district court, the panel does not hold that the district court incorrectly assessed the likelihood of eventual outcome, or incorrectly found that the factors of irreparable harm, balance of harms, and public interest all favored injunction. Instead, the panel holds that if a patent is merely "vulnerable," slip op. at *5, a preliminary injunction is not available, despite the factors weighing in the movant's favor.

Although the panel recites the district court's discretionary authority, the panel does not explain how the district court's findings and balancing of the traditional factors constituted an abuse of discretion. Again, the Court is contrary. *See Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940) ("It is well settled that the granting of a temporary injunction, pending final hearing, is within the sound discretion of the trial court; and that, upon appeal, an order granting such an injunction will not be disturbed unless contrary to some rule of equity, or the result of an improvident exercise of judicial discretion."); *We Care, Inc. v. Ultra-Mark Int'l Corp.*, 930 F.2d 1567, 1570 (Fed. Cir. 1991) ("The court's determination can be overturned only on a showing that it abused its discretion, committed an error of law, or seriously misjudged the evidence."); *Chrysler Motor Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951 (Fed. Cir. 1990) ("Our rule regarding whether a preliminary injunction should be granted or denied is that the trial court should weigh and measure each of the four factors against the other factors and against the magnitude of the relief requested.").

13                                    KIMBERLY-CLARK v. FIRST QUALITY

The matter warrants the attention of the full court.[2]
Thus I must, respectfully, dissent from the court's denial of
rehearing en banc.

---

[2]      The panel designated this opinion as "non-
precedential." This designation does not relieve the court of
its responsibility to provide correct rulings in the case before
it. Nor are "non-precedential" rulings insulated from further
review; *e.g., Teleflex, Inc. v. KSR Int'l Co.*, 119 Fed. Appx.
282 (Fed. Cir. 2005), *reversed,* 550 U.S. 398 (2007); *A.C.
Aukerman Co. v. R.L. Chaides Const., Co.*, 1991 WL 62407
(Fed. Cir. 1991), *vacated,* 960 F.2d 1020 (Fed. Cir. 1992) (en
banc).

# United States Court of Appeals
# for the Federal Circuit

---

**KIMBERLY-CLARK WORLDWIDE, INC. AND
KIMBERLY-CLARK GLOBAL SALES, LLC,**
*Plaintiffs-Appellees,*

v.

**FIRST QUALITY BABY PRODUCTS, LLC AND
FIRST QUALITY RETAIL SERVICES, LLC**
*Defendant-Appellants.*

---

2010-1382

---

Appeal from the United States District Court for the Eastern District of Wisconsin in Case No. 09-CV-0916, Judge William C. Griesbach.

---

O'MALLEY, *Circuit Judge*, dissenting from denial of the petition for rehearing en banc.

While I understand that it is unusual to address issues raised by a nonprecedential opinion en banc, I believe there is merit in doing so in this case. I do not fault the panel for approaching this matter as it did given our precedent. I also understand that the panel carefully and thoughtfully analyzed the validity issues presented to it. Having said that, I believe our precedent regarding the propriety of preliminary injunctive relief in patent cases

KIMBERLY-CLARK v. FIRST QUALITY                    2

should be rethought and revised at our earliest opportunity.

This court has historically approached its review of trial court preliminary injunction rulings in a manner that is inconsistent with the Supreme Court's directives in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); Rule 65 of the Federal Rules of Civil Procedure; and the law of all of other regional circuits. We deviate from the norm in this area in three ways. First, by employing a test which assesses whether a patent is "vulnerable" to a claim of invalidity, or whether the assertion of such a claim is "substantially meritless," we employ a test which is not the same as the "likelihood of success" test that the rules and governing case law dictate. Second, we inevitably ignore or give no real weight to the other factors that Rule 65 tells us to consider, effectively redefining the balancing process normally applied under that rule. *See* Steven J. Lee, *Recent Trends in Patent Litigation under the Hatch-Waxman Act*, 878 PLI/PAT 991, 1031 (Pract. Law Inst., Patents, Copyrights, Trademarks & Literary Property Course Handbook, Series 2006) (noting that this court has "focused the preliminary injunction calculus on the 'vulnerability' of the patent claims to the challenger's defenses, rather than on a balancing of all four of the equitable factors . . . ."). Third, we give virtually no deference to district court determinations in an area where deference is clearly due.

District courts across the country have struggled with our precedent in this area, concluding in large measure that, whatever their views of the merits of a particular preliminary injunction request, this court's precedent virtually mandates denial of all such motions. We should bring our law into line with that applied in every other regional circuit and with the standards mandated by *eBay*.

3                                KIMBERLY-CLARK v. FIRST QUALITY

For these reasons and all of those set forth in Judge Newman's dissent, and while it may be that the panel ultimately reached the right result in this particular case, I agree with Judge Newman that we should have taken this opportunity to readdress our case law in this area.