UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>      Plaintiff,<br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>      Defendants. | Case No.: 11-CV-01846-LHK<br><br>ORDER GRANTING IN PART, AND DENYING IN PART, MOTION TO DISMISS AND STRIKE |

    Before the Court is Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC's (collectively "Samsung") Motion to Dismiss and Strike Plaintiff Apple, Inc.'s ("Apple") Counterclaims in Reply. *See* ECF No. 153. This case arises out of a dispute between Apple and Samsung regarding several utility and design patents related to both parties' mobile device technologies. Apple, in its complaint, alleges that Samsung's Galaxy cell phones and computer tablets infringe Apple's trade dress, trademarks, and utility and design patents. Complaint, April 15, 2011, ECF No. 1. Samsung brought counterclaims against Apple in response, alleging that Apple products infringe upon 12 of Samsung's own patents, including, among others, patents related to the Universal Mobile Telecommunications Standard ("UMTS"). *See* Answer and Counterclaims, ECF No. 80. In

1

1    response to these counterclaims, Apple filed its Answer, Defenses and Counterclaims in Reply to
2    Samsung's Counterclaims ("Counterclaims in Reply") on July 21, 2011.  *See* ECF No. 124.  In its
3    Counterclaims in Reply, Apple alleges that Samsung has violated both federal and state antitrust
4    laws, as well as the California Unfair Competition Law, by defrauding the standards setting
5    organization that set the UMTS standards, inducing the organization to adopt Samsung's declared-
6    essential patents, and later refusing to license its declared-essential patents on fair, reasonable, and
7    non-discriminatory terms ("FRAND" terms).

8          Samsung seeks to dismiss counts twenty-seven (violation of Section 2 of the Sherman
9    Antitrust Act), twenty-eight (violation of Section 1 of the Sherman Antitrust Act and California
10   Business and Professions Code §§ 16720), and twenty-nine (California Unfair Competition Law).[1]
11   Samsung seeks to strike counts thirty (Declaratory Judgment that Apple is Licensed to Samsung's
12   Declared-Essential Patents), thirty-one (Declaratory Judgment of No Entitlement to Injunctive
13   Relief), and thirty-two (Declaratory Judgment of Unenforceability).  Counterclaims in Reply at
14   ¶¶176-206.  Pursuant to Local Civil Rule 7-1(b), the Court concludes that this motion is
15   appropriate for determination without oral argument and vacates the October 20, 2011 motion
16   hearing.[2]  For the foregoing reasons, Samsung's Motion to Dismiss and Strike is GRANTED in
17   part, and DENIED in part.

18   **I.    RELEVANT FACTS**

19         Unless otherwise noted, the following allegations are taken from Apple's Counterclaims in
20   Reply and are presumed to be true for purposes of ruling upon Samsung's motions to dismiss and
21   strike.  Standards setting organizations ("SSOs") play an important role in the wireless
22   communications industry.  Mobile wireless carriers provide consumers with access to networks,
23   which allows consumers to place and receive calls, access e-mail, and the internet.  Counterclaims
24   in Reply ¶ 19.  The development of technical standards across the industry, including among cell

---

[1] Samsung has not challenged counterclaims twenty-five (breach of contract), or twenty-six (promissory estoppel).  These claims arise out of the same alleged conduct giving rise to the antitrust and UCL claims discussed herein.
[2] The Court postponed the hearing on this motion from September 22, 2011 to October 20, 2011 at the parties' request.  The Court denies the parties' request of October 18, 2011, to postpone the hearing further.

2
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE

1   phone carriers, device manufacturers, handset, and chipset manufacturers, facilitates compatibility

2   across products and networks. Counterclaims in Reply ¶¶ 21-22. Technical standards may have

3   pro-competitive benefits. Manufacturing volumes can increase because product lines can be sold

4   to multiple purchasers, thus decreasing per unit costs. Counterclaims in Reply ¶ 22. Likewise,

5   industry standards can create increased price competition among suppliers. Counterclaims in

6   Reply ¶ 22.

7         Alternatively, the creation of technical industry standards presents the potential for anti-

8   competitive effects. Establishing industry technical standards can create a "lock-in" effect and the

9   risk of "patent hold-up." Counterclaims in Reply ¶ 23. This is because a patent owner can, when

10  the SSO created standard includes patented technology, require other designers to use patented

11  technology. In that situation, a patent owner can demand exorbitant licensing fees or other terms

12  from designers. Counterclaims in Reply ¶ 24. In order to avoid the risks associated with the "lock-

13  in" effect, standard setting organizations often employ policies designed to compel disclosure of an

14  entity's intellectual property rights ("IPR") prior to adoption of a standard by the SSO.

15  Alternatively, an SSO may require that an entity seeking to have its IPR incorporated into the

16  industry standard commit to licensing its patents on fair, reasonable, and non-discriminatory terms

17  ("FRAND") before the SSO agrees to incorporate the proposal. Counterclaims in Reply ¶ 27.

18        Apple and Samsung are both members of the European Telecommunications Standards

19  Institute ("ETSI"), a standard setting organization involved in setting the standards for mobile

20  wireless carrier technology, including the UMTS standard. Counterclaims in Reply ¶¶ 35. The

21  UMTS standard was designed to support increased speeds and bandwidth capacity on mobile

22  devices. Counterclaims in Reply ¶ 37. ETSI, and several other organizations, were involved in

23  developing the UMTS standard. Counterclaims in Reply ¶ 38.

24        The SSOs responsible for developing the UMTS standard incorporated Samsung's patented

25  technology into the standard. Under the terms of the ETSI policy, Samsung had a duty to disclose

26  its intellectual property rights[3] in the technology that was essential, or might be essential, for the

---

[3] Intellectual Property Rights under ETSI's policies is defined as "any intellectual property right conferred by statute law including applications therefore other than trademarks." Counterclaims in Reply ¶ 48.

3

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE

standards it was proposing. Counterclaims in Reply ¶ 48. Apple alleges that Samsung failed to disclose its IPR during the standards-setting process and that the SSOs relied upon Samsung's failure to disclose in adopting the Samsung-proposed standards.

Apple also alleges that Samsung made a commitment to license its declared-essential patents on FRAND terms. Apple argues that these false FRAND declarations violated ETSI policy which requires an owner of an essential IPR to undertake a commitment to license on FRAND terms. If an IPR owner fails to make a FRAND commitment, ETSI "may suspend work on relevant parts of the standard or redesign the standard to render the IPR non-essential." Counterclaims in Reply ¶ 50. Apple alleges that by falsely agreeing to license its declared essential patents on FRAND terms, Samsung induced ETSI to adopt Samsung's patents into its proposed standard. Apple also alleges that Samsung has subsequently refused to license its declared essential patents on FRAND terms and has otherwise attempted to use its declared essential patents as leverage in litigation. Counterclaims in Reply ¶¶ 65-75.

Apple argues that by (1) failing to disclose its IPR in the declared-essential patents, as it was required to do under the policy terms of the SSO, and (2) making affirmative misstatements regarding its intent to license its declared essential patents on FRAND terms, Samsung obtained monopoly power which it has subsequently used to inhibit competition. Apple claims that, absent Samsung's fraudulent behavior, ETSI would not have adopted the standard proposed by Samsung.

## II. LEGAL STANDARDS AND ANALYSIS

### A. Motion to Dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. To withstand a motion to dismiss, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "On a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles." *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010) (citing *Twombly*, 550 U.S. at 556). All allegations of material fact are taken as true and interpreted in a manner most favorable to the non-moving party. *Simon v. Hartford Life and Accident Ins. Co.*, 546 F.3d 661, 664 (9th Cir. 2008).

1    However, the court is not required to accept as true "allegations that are merely conclusory,

2    unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

3    F.3d 1049, 1055 (9th Cir. 2008).  Leave to amend should be granted unless it is clear that the

4    complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248

5    (9th Cir. 1995).  If amendment would be futile, a dismissal may be ordered with prejudice.  *Dumas*

6    *v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

7         A complaint must "state with particularity the circumstances constituting fraud."  Fed. R.

8    Civ. P. 9(b).  Allegations of fraud must be stated with "specificity including an account of the

9    'time, place, and specific content of the false representations as well as the identities of the parties

10   to the misrepresentations.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting

11   *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  To survive a motion to

12   dismiss, "'allegations of fraud must be specific enough to give defendants notice of the particular

13   misconduct which is alleged to constitute the fraud charged so that they can defend against the

14   charge and not just deny that they have done anything wrong.'"  *Id.* (quoting *Bly-Magee v.*

15   *California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

16        1.   <u>Section 2 of the Sherman Act</u>

17            a.   <u>Monopoly Conduct</u>

18        Apple first claims that Samsung's failure to disclose its IPR in the patents essential to the

19   UMTS standard, and alternatively its affirmative misrepresentations regarding Samsung's intent to

20   license its UMTS patents on FRAND terms, and subsequent failure to do so, violates Section 2 of

21   the Sherman Act.  Counterclaims in Reply ¶ 178.  In order to state a claim under the Sherman Act,

22   Apple must allege that: (1) Samsung possessed monopoly power in the relevant market, and (2)

23   that Samsung achieved or is maintaining monopoly power through anticompetitive conduct.

24   *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP.*, 540 U.S. 398, 407 (2004).

25   Samsung first argues that Apple has failed to state a claim under Section 2 of the Sherman Act

26   because it has failed to adequately allege monopoly conduct.  Apple's theory regarding false

27   FRAND declarations will be discussed first, followed by Apple's theory regarding Samsung's IPR

28   disclosure.

**False FRAND Declaration Theory**

Courts have recognized that fraudulent FRAND declarations that are used to induce SSOs to adopt standards essential patents can be monopoly conduct for the purposes of establishing a Section 2 claim. For example, in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007), Broadcom asserted that it had been the victim of "patent hold up" because the standards essential patent holder had allegedly promised the SSO to license its essential patents on FRAND terms. The SSO adopted the standards and thereby locked participants in to the standard, allowing the patent holder to extract supra-competitive royalties from the industry participants. *Id.* at 310-311. The Third Circuit recognized that an SSO can be used to obtain monopoly power and create anticompetitive effects on the relevant markets when "(1) in a consensus-oriented private standard-setting environment, (2) a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms, (3) coupled with an [standard setting organization's] reliance on that promise when including the technology in a standard, and (4) the patent holder's subsequent breach of that promise, is actionable anticompetitive conduct." 501 F.3d at 314. Thus, intentionally false promises to SSOs regarding licenses with FRAND terms can give rise to actionable claims under Section 2 of the Sherman Act. *See also Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 796-97 (N.D. Tex. 2008) (denying motion to dismiss based on similar theories of liability regarding FRAND term misrepresentations).

Samsung first argues that Apple has failed to allege sufficient facts to establish that Samsung has engaged in monopolistic conduct.[4] Because Apple's allegations regarding Samsung's conduct sound in fraud, it is required to plead, with particularity, "the circumstances constituting fraud or mistake."[5] Fed. R. Civ. Pro. 9(b). Plaintiffs must plead facts "specific enough to give

---

[4] Samsung also appears to argue briefly in passing that Apple has not sufficiently alleged that Samsung possesses monopoly power in the relevant market. It appears, however, that Apple has sufficiently alleged monopoly power. *See* Counterclaims in Reply ¶¶ 81-86.

[5] Although it is theoretically an open question as to whether Rule 9(b) pleading standards are applicable in this situation, it appears that Apple should plead with particularity the allegations regarding the false FRAND declarations. First, the theory upon which the claim is based, is one that sounds in fraud, and Rule 9(b) itself requires a heightened pleading standard in these situations. Second, other fraud claims in the patent context, such as claims for inequitable conduct, must also be pled with particularity. *See, e.g. Cent. Admixture Pharmacy Servs., Inc. v. Advanced*

6

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE

defendants notice of the particular misconduct which is alleged to constitute the fraud . . . so that they can defend against the charge." *Semegen v. Weidner*, 780 F.2d 727 731 (9th Cir. 1985).

Although there does not appear to be anything legally defective about Apple's theory of monopoly conduct arising from false FRAND licensing terms, the Court finds that Apple's allegations, as pled, have failed to meet the heightened pleading standard. Apple has identified two paragraphs in its Counterclaims in Reply that support its claim that false FRAND declarations were made. These allegations simply state that "Samsung has submitted declarations to ETSI committing to irrevocably license the Declared-Essential Patents on FRAND terms pursuant to Clause 6.1 of ETSI's IPR policy." Counterclaims in Reply ¶ 56. Apple has not set forth facts establishing when these declarations were made and by whom, and for *which patents* these FRAND declarations were made.[6] Apple argues that these documents are in Samsung's control, and therefore it has met its burden. Apple's allegations that Samsung submitted false FRAND declarations, however, are not sufficient to put Samsung on notice of the particular misconduct that creates the basis of the alleged fraud. *Semegen v. Weidner*, 780 F.2d 727 731 (9th Cir. 1985). Therefore, Apple's claim that Samsung misrepresented its intent to license its declared essential patents on FRAND terms is DISMISSED with leave to amend.

**Failure to Disclose IPR Theory**

Courts have been more reluctant to find antitrust violations based on the theory that a failure to disclose intellectual property rights in a declared essential patent created monopoly power for a member of the SSO. In *Rambus Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2008), the D.C. Circuit overturned an FTC decision that Rambus violated the antitrust laws in failing to disclose its intellectual property rights to the standard setting organization. The Commission failed to show

---

*Cardiac Solutions*, 482 F.3d 1347, 1356 (Fed. Cir. 2007); *see also In re Netflix Litig.,* 506 F. Supp. 2d 308, 315 (N.D. Cal. 2007) (applying Rule 9(b) to a fraud-based claim in another antitrust context). Moreover, Apple does not appear to contest that 9(b) is the proper standard to apply here.
[6] The requirement that Apple plead with particularity which patents FRAND declarations were made and when is important here because Apple also alleges that Samsung has declared essential many patents that are not, in fact, essential to practicing the UMTS standard. Counterclaims in Reply ¶ 58. If, as Apple alleges, some Samsung patents are not essential to the standard, it will likely be difficult for Apple to establish that Samsung's conduct has antitrust implications. If the patents at issue are non-essential, then the "lock-in" effect of the standard setting does not exist. Thus, it is important to know which patents Apple is alleging are essential to the patent, and for which patents Samsung made FRAND declarations.

7
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE

1  that but for Rambus's failure to disclose its intellectual property rights, the SSO would not have
2  adopted the standard at issue. *Id.* at 466. The court held that in order to establish anticompetitive
3  conduct, the plaintiff must show that the patent holder's failure to disclose its intellectual property
4  rights induced the SSO to set the standard incorporating the essential patent. *Id.* In other words,
5  Apple must allege that there was an alternative technology that the SSO was considering during the
6  standard setting process and that the SSO would have adopted an alternative standard had it known
7  of the patent holder's intellectual property rights.

8  Similarly, in *Townshend v. Rockwell Intl. Corp.*, 2000 U.S. Dist. LEXIS 5070 (N.D. Cal.
9  2000), the plaintiff also failed to allege that but for the failure to disclose, the SSO would have
10 adopted an alternative standard that did not include the essential patent at issue. Neither
11 *Townshend*, nor *Rambus*, 522 F.3d 456 (discussed above), preclude Apple's claim based on failure
12 to establish anticompetitive conduct. *Rambus* identified a failure of proof, not a failure of pleading,
13 for a claim based on allegations that a patent holder had not disclosed intellectual property rights to
14 a standard setting organization. Moreover, the court in *Townshend* granted
15 plaintiff/counterdefendant's motion to dismiss, in part, because the plaintiff also failed to establish
16 that but for the failure to disclose, the SSO would have adopted an alternative standard that did not
17 include the essential patent at issue. At the pleading stage, Apple must allege that the standard
18 setting organization would have adopted a different technology had the patent holder's rights been
19 known at the time of the standard setting. The Court next turns to whether Apple has met the
20 pleading requirements to establish monopoly conduct for its failure to disclose IPR theory.

21 The Court finds that Apple has pled with sufficient particularity facts supporting Samsung's
22 alleged anticompetitive conduct with respect to non-disclosure of intellectual property rights,
23 Apple has indicated which patents at issue were not disclosed to the SSO, when those patents were
24 filed, and when Samsung allegedly gave presentations to the SSO regarding patents at issue. *See,*
25 *generally*, Counterclaims in Reply ¶ 54. Apple has identified which provisions of the SSO policies
26 Samsung's failure to disclose implicated. Counterclaims in Reply ¶ 48. Therefore under the
27 heightened pleading standard of Rule 9(b), Apple has met its burden of pleading anticompetitive
28 conduct for Samsung's failure to disclose IPR in the standards essential patents.

8

1   Apple, however, has failed to allege sufficient facts to support a plausible inference that had
2   Samsung disclosed its intellectual property rights to the SSO, a viable alternative technology
3   performing the same functionality would have been incorporated into the UMTS standard, or the
4   relevant functionality would not have been incorporated into the standard at all. Counterclaims in
5   Reply ¶¶ 55, 178. Apple's allegations are merely conclusory statements that "[h]ad Samsung
6   properly disclosed the existence of its IPR, the relevant SSO would have selected a viable
7   alternative technology or would have decided not to incorporate that proposal into the standard."
8   Counterclaims in Reply ¶ 55. Without more, for example, factual allegations that there were other
9   technologies considered by the SSO at the time of standard setting, Apple has not met its burden
10  under the pleading standards set forth in Fed. R. Civ. P. 8. Therefore, Samsung's motion to
11  dismiss Apple's Section 2 claim is GRANTED with leave to amend.

   b. <u>Antitrust Injury</u>

13  Samsung also argues that Apple has not established a Section 2 claim because it fails to
14  allege antitrust injury. Even though deficiencies in Apple's allegations of monopoly conduct have
15  already been identified, the Court will address Samsung's alternative argument in the event that
16  Apple chooses to amend its Counterclaims in Reply. In order for Apple to properly plead that it
17  has suffered an antitrust injury, it must allege injury to *competition*. *Brunswick Corp. v. Pueblo
18  Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Samsung argues that Apple's allegations "describe
19  harms to Apple as a competitor, and not harms to competition." Mot. to Dismiss and Strike Apple's
20  Counterclaims at 9, August 15, 2011, ECF No. 153.

21  The Court disagrees. While Apple has alleged that it has suffered increased prices, and
22  other effects, it has also clearly alleged harm to competition more broadly. Counterclaims in Reply
23  ¶ 88. For example, Apple alleges that "Samsung's conduct more broadly has and continues to
24  threaten unlawfully to exclude rivals from and increase royalties and other costs associated with the
25  manufacture and sale of downstream wireless communications devices that implement the UMTS
26  standard and chill competition to develop and sell innovative new UMTS-compliant products,
27  resulting in increased prices and decreased quality and innovation in downstream product markets
28  and complementary innovation markets." Counterclaims in Reply ¶ 88; *see also* Counterclaims in

9
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE

Reply ¶¶ 89-90.  It is unclear what more Samsung believes Apple must allege to sufficiently plead harm to competition.  At this stage in the litigation, Apple has alleged facts sufficient to support a plausible theory of anticompetitive harm.  *See Research in Motion v. Motorola, Inc.*, 644 F. Supp. 2d 788, 794 (N.D. Tex. 2008) ("[S]tandards [implemented by standard setting organizations], without the proper safeguards, are inherently anticompetitive.  It follows that when an entity side-steps these safeguards in an effort to return the standard to its natural anti-competitive state, anti-competitive effects are inevitable.  Motorola's breach of the commitments to IEEE and ETSI, as a result, is harmful to competition.").

### 2. Section 1 of the Sherman Act

Samsung moves to dismiss Apple's twenty-eighth counterclaim in reply for violation of Section 1 of the Sherman Act as well as California Business and Professions Code § 16720.[7]  Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.  The Supreme Court has explained that the plaintiff in a Section 1 action must show "a unity of common purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946).  In other words:

> The correct standard is that there must be evidence that tends to exclude the possibility of independent action by [the parties].  That is, there must be direct or circumstantial evidence that reasonably tends to prove that [the parties] had a conscious commitment to a common scheme designed to achieve an unlawful objective.

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).  "Unilateral activity by a defendant, no matter the motivation, cannot give rise to a section 1 violation." *See InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159 (3d Cir. 2003)).  Samsung argues that Apple's theory is incompatible with the requirements necessary to plead a cause of action pursuant to Section 1 of the Sherman Act because Apple's theory is predicated on a fraud on the SSO.  Because Samsung

---

[7]  The parties agree that Apple's Cartwright Act claims require the same showings as its § 1 Sherman Act claims.  Apple's Opposition at 16 n.10, August 29, 2011, ECF No. 189 (citing *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378, 392 (Cal. 1983)); Samsung Reply at 6 n.5, September 6, 2011, ECF No. 209.

10
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE

1 allegedly defrauded the SSO, either by lying about offering FRAND licensing terms, or by failing
2 to disclose its IPR in standard essential patents, Samsung acted unilaterally and thus there could not
3 have been a common understanding or concerted action between the SSO and Samsung.

4 The Court agrees. An allegation that Samsung unilaterally subverted a collaborative
5 standard-setting process in order to restrain trade is not the equivalent of an allegation that
6 Samsung contracted with, combined with, or conspired with other members of the collaborative
7 body to restrain trade. A Plaintiff cannot state a claim under section 1 absent an allegation that it
8 acted in concert with another party; it is not sufficient to allege that it acted alone in a collaborative
9 forum. *See Monsanto Co.*, 465 U.S. at 764. Under Apple's theory, the SSO did not intend to set a
10 standard involving Samsung's undisclosed patents, or patents that it believed would be licensed on
11 FRAND terms. Accordingly, Apple's theory necessarily fails to allege a concerted action between
12 Samsung and the SSO necessary to state a claim under Section 1.

13 Apply relies principally on two cases to establish that the second party need not be a
14 "willing" participant in the alleged conspiracy. *See Helix Milling Co. v. Terminal Flour Mills Co.*,
15 523 F.2d 1317, 1322 (9th Cir. 1975); *Spectators' Commun. Network Inc. v. Colonial Country Club*,
16 253 F.3d 215, 222 (5th Cir. 2001). Both cases, however, are distinguishable from the allegations
17 put forth by Apple here.

18 In *Helix* plaintiff's mill burned down in a fire, and plaintiff sought to buy a replacement.
19 *Id.* at 1319. Building a new mill was considered too costly for the plaintiff, and the defendant sold
20 the replacement mill to an existing competitor, effectively putting plaintiff out of business. *Id.*
21 The District Court found that in order for there to be a combination to exclude plaintiff from the
22 mill market, there must have been an agreement, explicit or implicit, between the other mill owners
23 to not sell any mill to the plaintiff. *Id.* at 1321-22. The Ninth Circuit rejected this conclusion,
24 instead holding that if a plaintiff's exclusion is a necessary consequence of a defendant's actions,
25 then there exists a Section 1 combination. *Id.* at 1322. Thus, the Ninth Circuit confirmed that
26 concerted action may have unintended anticompetitive *effects*, even if the parties to a contract,
27 combination, or conspiracy do not intend those anticompetitive effects. This rule does not address
28 the unique situation presented here in which the SSO was allegedly defrauded, and thus necessarily

did not, or could not, have known it was engaging in the specific conduct alleged to harm competition.

Similarly, a party may be liable for a combination or conspiracy entered under coercion, even though the party did not intend the anticompetitive effects of its acts. *See, e.g., Spectators' Commun. Network Inc.*, 253 F.3d at 222 (concluding that a competitor coerced into knowingly curtailing competition by another conspirator is liable under Section 1). Thus, "[c]onspirators who are not competitors of the victim may have no interest in curtailing competition in a market in which they do not compete; nevertheless, when they have been enticed or coerced to share in an anticompetitive scheme, there is still a combination within the meaning of the Sherman Act." *Spectators' Commun. Network, Inc.*, 253 F.3d at 221. This rule, however, does not speak to whether the unilateral and fraudulent actions of an individual may be sufficient to establish a concerted action between two parties as is required for a Section 1 claim.

Based on Apple's allegations and theory of monopoly conduct, the Court finds that Apple has not sufficiently alleged a "unity of common design and understanding, or a meeting of minds in an unlawful arrangement" and thus Samsung's motion to dismiss counterclaim in reply twenty-eight is GRANTED with leave to amend.

### 3. California Unfair Competition Law

Samsung moves to dismiss counterclaim in reply twenty-nine, which includes allegations that Samsung has violated the California Unfair Competition Law. In order to state a claim under Cal. Bus. & Prof. Code § 17200, Apple must allege that Samsung's conduct violates a predicate statute or law, is fraudulent, or unfairly harms competition. Samsung argues that Apple has failed to allege a violation of the UCL separate and apart from its antitrust allegations and that Apple has failed to allege harm to competition.

The California Supreme Court has explained that in order to establish a claim of unfair harm to competition, a plaintiff must show that the alleged conduct is "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." The California Supreme Court went on to elaborate that "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in

12
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE

1    that section means conduct that threatens an incipient violation of an antitrust law, or violates the

2    policy or spirit of one of those laws because its effects are comparable to or the same as a violation

3    of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Communications,*

4    *Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 186-187 (1999).

5        Based on the complaint, it is unclear how Apple's UCL claim is materially different than its

6    claims for violations of the predicate antitrust laws discussed above. Therefore, Samsung's motion

7    to dismiss counterclaim in reply number twenty-nine is GRANTED with leave to amend.

8        B. <u>Motion to Strike</u>

9        "The court may strike from a pleading an insufficient defense or any redundant,

10   immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). On a motion to strike, the

11   court must view the pleading under attack in the light most favorable to the pleader. *See Equine*

12   *Legal Solutions, Inc. v. Buntrock*, C 07-04976 CRB, 2008 WL 111237, at *2 (N.D. Cal. Jan. 9,

13   2008); *State of Cal. v. United States,* 512 F.Supp. 36, 39 (N.D. Cal. 1981). "Motions to strike are

14   generally regarded with disfavor because of the limited importance of pleading in federal practice,

15   and because they are often used as a delaying tactic." *Greenwich Ins. Co. v. Rodgers*, 729 F. Supp.

16   2d 1158, 1162 (C.D. Cal. 2010) (quoting *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.,*

17   217 F. Supp. 2d 1028, 1033 (C.D.Cal.2002)).

18       "Numerous courts have used that discretion to dismiss counterclaims under Fed. Rule Civ.

19   Pro. 12(f) where they are either the 'mirror image' of claims in the complaint or redundant of

20   affirmative defenses." *Stickrath v. Globalstar, Inc.*, No. 07-1941, 2008 WL 2050990 (N.D. Cal.

21   May 13, 2008). "The court should focus on whether the counterclaims serve any useful purpose,

22   and should dismiss or strike a redundant counterclaim only when "it is clear that there is a

23   complete identity of factual and legal issues between the complaint and the counterclaim." *Id.* at

24   *4 (internal quotations and citations omitted). "Ultimately, whether to grant a motion to strike lies

25   within the sound discretion of the district court." *Alco Pac.*, 217 F. Supp. 2d at 1033 (citing

26   *Fantasy,* 984 F.2d at 1528). Samsung moves to strike Counterclaims Thirty, Thirty-One, and

27   Thirty-Two as being duplicative and unnecessary in light of the affirmative defenses and other

28   counterclaims contained in Apple's Counterclaims in Reply.

13

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE

The Thirtieth Counterclaim seeks a declaratory judgment that Apple is licensed to Samsung's declared-essential patents. Further, Apple alleges that "as a result of Samsung's refusal to make disclosures relating to FRAND or provide Apple with any information it would need to determine whether any purportedly FRAND license offer is in fact fair, reasonable, and non-discriminatory, Apple and Samsung have been unable to agree on FRAND terms for Samsung's Declared-Essential Patents, Apple is further entitled to a declaratory judgment setting forth the FRAND terms and conditions for a license to the Declared-Essential Patents, including the applicable royalty rate." Counterclaims in Rely ¶198. The Court agrees with Apple that at this stage of the proceedings, dismissing the Thirtieth Counterclaim is premature. In the Thirtieth Counterclaim Apple seeks a declaration of its rights, and a determination of the applicable royalty rate of the licenses, both of which may not necessarily be determined in the course of adjudicating other claims. As a result, Samsung's motion to strike the Thirtieth Counterclaim is DENIED.

Apple's Thirty-First and Thirty-Second Counterclaims in Reply appear to offer no useful purpose, separate and apart from the "mirror image" affirmative defenses already contained elsewhere in Apple's Counterclaims. For example, the Thirty-First Counterclaim seeks a declaratory judgment that Samsung is not entitled to injunctive relief if it prevails on any of its patent infringement claims. Counterclaims in Rely ¶ 200. This Counterclaim appears to mirror Apple's Sixth Affirmative Defense of no injunctive relief. The issue presented in the Thirty-First Counterclaim will necessarily be determined in the course of the litigation, and Apple has raised the issue sufficiently in its Affirmative Defense. Therefore, Samsung's motion to strike the Thirty-First Counterclaim in Reply is GRANTED.

Finally, Apple's Thirty-Second Counterclaim is also duplicative of its Affirmative Defense and does not appear to offer any additional relief. The Thirty-Second Counterclaim requests a declaration that Samsung's asserted patents are unenforceable "by virtue of estoppel, laches, waiver, unclean hands, patent exhaustion, implied license, and/or other equitable doctrines applicable to such misconduct." Counterclaims in Rely ¶ 206. The Thirty-Second Counterclaim appears to be entirely duplicative of Apple's Fifth Affirmative Defense. Although Apple argues against striking this Counterclaim, it is unclear what Apple hopes to gain from the declaratory

judgment that it seeks.  Ultimately, the Thirty-Second Counterclaim appears to be redundant, and therefore Samsung's motion to strike is GRANTED.

### III.     CONCLUSION

For the forgoing reasons, Samsung's motion to dismiss Apple's counterclaims in reply and Samsung's motion to strike Apple's counterclaims in reply is GRANTED, in part, and DENIED, in part.  Apple may amend its pleadings to cure the deficiencies identified in this Order.  To the extent it seeks to do so, Apple shall file an amended set of counterclaims in reply within 21 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: October 18, 2011

_____
LUCY H. KOH
United States District Judge