1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2      charlesverhoeven@quinnemanuel.com
    50 California Street, 22nd Floor
3   San Francisco, California 94111
    Telephone: (415) 875-6600
4   Facsimile: (415) 875-6700

5     Kevin P.B. Johnson (Bar No. 177129)
       kevinjohnson@quinnemanuel.com
6     Victoria F. Maroulis (Bar No. 202603)
       victoriamaroulis@quinnemanuel.com
7   555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, California  94065-2139
8   Telephone:     (650) 801-5000
    Facsimile:     (650) 801-5100

9

10    Michael T. Zeller (Bar No. 196417)
       michaelzeller@quinnemanuel.com
11  865 S. Figueroa St., 10th Floor
    Los Angeles, California 90017
12  Telephone: (213) 443-3000
    Facsimile: (213) 443-3100

13

14  Attorneys for SAMSUNG ELECTRONICS CO.,
    LTD., SAMSUNG ELECTRONICS AMERICA,
15  INC. and SAMSUNG
    TELECOMMUNICATIONS AMERICA, LLC

16

17                  UNITED STATES DISTRICT COURT

18        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19

20  APPLE INC., a California corporation,          CASE NO. 11-cv-01846-LHK

21              Plaintiff,                         **SAMSUNG'S MOTION TO DISMISS
                                                  APPLE'S COUNTERCLAIMS**
22        vs.
                                                  **Date:    April 5, 2012**
23  SAMSUNG ELECTRONICS CO., LTD., a              **Time:    1:30 p.m.**
    Korean business entity; SAMSUNG               **Place:   Courtroom 8, 4th Floor**
24  ELECTRONICS AMERICA, INC., a New              **Judge:   Hon. Lucy H. Koh**
    York corporation; SAMSUNG
25  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited liability company,

26
                Defendant.
27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 2

INTRODUCTION ................................................................................................. 2

FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

I.      PROCEDURAL HISTORY ........................................................................ 3

II.     APPLE'S ALLEGATIONS REGARDING SECTION TWO OF THE SHERMAN ACT ...................................................................................... 5

       A.      Apple Defines the Relevant Market Solely According to the Scope of Samsung's Declared-Essential Patents and Their Incorporation in the ETSI Standard ................................................................... 5

       B.      Apple Contends That Samsung Delayed Its Disclosure of Essential Patents, Inducing ETSI To Incorporate Samsung's Patents into the UMTS Standard ........... 6

III.    APPLE'S ALLEGATIONS REGARDING DECLARATORY JUDGMENT THAT APPLE IS LICENSED TO SAMSUNG'S DECLARED ESSENTIAL PATENTS ........... 7

IV.     APPLE'S ALLEGATIONS REGARDING PROMISSORY ESTOPPEL ......................... 7

V.      APPLE'S ALLEGATIONS REGARDING UNFAIR COMPETITION .......................... 8

ARGUMENT ........................................................................................................ 8

I.      LEGAL STANDARD ................................................................................ 8

       A.      Fed. R. Civ. P. 12(b)(6): Dismissal of Implausible Claims ..................... 8

II.     APPLE FAILS TO PLEAD FACTS SUFFICIENT TO GRANT RELIEF PURSUANT TO SECTION 2 OF THE SHERMAN ACT ................................................. 9

       A.      An Antitrust Litigant Must Allege a "Relevant Market" ......................... 9

       B.      Apple Has Failed To Allege Any Cognizable Market in which Samsung Has Power and Has Failed To Allege Any Measure of Market Share at All ......... 11

III.    APPLE'S ALLEGATIONS OF ANTICOMPETITIVE CONDUCT REMAIN INSUFFICIENT ................................................................................... 12

IV.     APPLE FAILS TO PLEAD FACTS SUFFICIENT TO GRANT RELIEF FOR BREACH OF CONTRACT OR DECLARATORY JUDGMENT THAT APPLE IS LICENSED TO SAMSUNG'S DECLARED-ESSENTIAL PATENTS ........... 14

       A.      Under California Law, Apple's Pleadings Fail To Establish the Formation of a Valid Contract ................................................................ 15

1.   Samsung's Declaration to ETSI Was Not an Offer To License .................. 16

2.   Apple Admits that the Parties Never Concluded a License Agreement ........................................................................................ 17

B.   Under French Law, Apple's Pleadings Fail To Establish the Formation of a Valid Contract ........................................................................................ 18

C.   Samsung Did Not Breach a Contract with ETSI ........................................ 19

V.   APPLE FAILS TO PLEAD FACTS SUFFICIENT TO GRANT RELIEF FOR PROMISSORY ESTOPPEL ........................................................................................ 21

VI.   APPLE FAILS TO PLEAD FACTS SUFFICIENT TO GRANT RELIEF FOR UNFAIR COMPETITION ........................................................................................ 22

VII.   CONCLUSION ........................................................................................ 24

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009) ..................................................................................... 8-9, 12

Autry v. Republic Prods., Inc.,
  30 Cal. 2d 144, 180 P.2d 888 (Cal. 1947) ..................................................... 15, 16, 17

Balistreri v. Pacifica Police Dep't,
  901 F.2d 696 (9th Cir. 1988) ...................................................................... 8, 9, 14, 23

Beck v. Am. Health Group Int'l, Inc.,
  211 Cal. App. 3d 1555, 260 Cal. Rptr. 237 (2d Dist. 1989) ......................... 16, 17, 19

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ......................................................................................... 8, 13, 23

Broadcom Corp. v. Qualcomm, Inc.,
  501 F.3d 297 (3d Cir. 2007) ......................................................................................10

Brown Shoe Co. v. United States,
  370 U.S. 294 (1962) ......................................................................................... 9, 10

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
  20 Cal. 4th 163, 973 P.2d 527 (1999) ....................................................................22, 23

Chapman v. New York State Div. of Youth,
  546 F.3d 230, 238 (2d Cir. 2008) ..............................................................................10

Columbia Pics. Television v. Krypton Broad. of Birmingham, Inc.,
  106 F.3d 284 (9th Cir. 1997)......................................................................................21

Copeland v. Baskin Robbins U.S.A.,
  96 Cal. App. 4th 1251, 117 Cal. Rptr. 2d 875 (2002) ..............................................20

Donovan v. RRL Corp.,
  26 Cal. 4th 261, 109 Cal. Rptr. 2d 807, 27 P.3d 702 (2001).....................................15

Ehlert v. America's Servicing Corp.,
  No. 11-cv-1359, 2011 WL 4862426 (S.D. Cal. Oct. 12, 2011) ..............................15, 16, 17, 19

Ericsson Inc. v. InterDigital Comm. Corp.,
  418 F.3d 1217 (Fed. Cir. 2005)..................................................................................17

Fecht v. Price Co.,
  70 F.3d 1078 (9th Cir. 1995)......................................................................................13

In re First Capital Life Ins. Co.,
  34 Cal. App. 4th 1283, 40 Cal. Rptr. 2d 816 (2d Dist. 1995) ...................................15

First Nat'l Mortg. Co. v. Federal Realty Inv. Trust,
      631 F.3d 1058 (9th Cir. 2011)..................................................................................15

Harrison Aire, Inc. v. Aerostar Int'l, Inc.,
      423 F.3d 374 (3d Cir. 2005)....................................................................................11

Illinois Tool Works, Inc. v. Indep. Ink, Inc.,
      547 U.S. 28 (2006)...................................................................................................11

Laks v. Coast Federal Sav. & Loan Ass'n,
      60 Cal. App. 3d 885, 131 Cal. Rptr. 836 (2d Dist. 1976) .......................................21

Lange v. TIG Ins. Co.,
      68 Cal. App. 4th 1179, 81 Cal. Rptr. 2d 39 (2d Dist. 1998) .............................21, 22

Livid Holdings Ltd v. Salomon Smith Barney, Inc.,
      416 F.3d 940 (9th Cir. 2005)......................................................................................8

McAfee v. Francis,
      5:11-CV-00821-LHK, 2011 WL 3293759 (N.D. Cal. Aug. 1, 2011) ..................15, 20

Newcal Indus., Inc. v. Ikon Office Solution,
      513 F.3d 1038 (9th Cir. 2008).................................................................................9, 10

Providence Metallizing Co. v. Tristar Prods., Inc.,
      717 F. Supp. 2d 227 (D.R.I. 2010)..............................................................................5

Queen City Pizza, Inc. v. Domino's Pizza, Inc.,
      124 F.3d 430 (3d Cir. 1997).....................................................................................10

In re Rambus, Inc.,
      No. 9302, 2006-2 Trade Cas. ¶ 75364 (F.T.C. 2006)..............................................10

Rockwell Int'l Corp v. Townshend,
      No. 99-cv-0400, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000).................................11

Rubin v. Green,
      4 Cal. 4th 1187 (1993)..............................................................................................23

Rubio v. Capital One Bank,
      613 F.3d 1195 (9th Cir. 2010)............................................................................15, 17

SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.,
      188 F.3d 11 (1st Cir. 1999) .....................................................................................12

Sun Microsystems, Inc. v. Versata Enters., Inc.,
      630 F. Supp. 2d 395 (D. Del. 2009) .........................................................................10

Tuso v. Green,
      194 Cal. 574, 229 P. 327 (1924) ........................................................................15, 18

US Ecology, Inc. v. State,
      129 Cal. App. 4th 887, 28 Cal. Rptr. 3d 894 (4th Dist. 2005) ................................20

United States v. Grinnel Corp.,
    384 U.S. 563 (1966) ....................................................................................................9

## **Statutes**

Fed. R. Civ. P. 12(b)(6) .............................................................................1, 8, 9, 13

Fed. R. Civ. P. 44.1 ................................................................................................14

## **Miscellaneous**

1 Arthur L. Corbin, Corbin on Contracts, §§ 2.1-3.41 ..............................................15

## NOTICE OF MOTION AND MOTION

TO THE COURT AND TO ALL PARTIES:

PLEASE TAKE NOTICE that on Thursday, April 5, 2012, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court for an order dismissing Counts XXV to XXIX of "Apple Inc.'s Amended Counterclaims in Reply" filed on November 8, 2011, pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice and without leave to amend, on the grounds that they fail to state facts sufficient to state a claim.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities that follows, the declarations of Eric Wall (the "Wall Decl.") and Professor Rémy Libchaber (the "Libchaber Decl."), the pleadings on file in this action, and any further evidence or argument that the Court may properly receive at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Undaunted by the Court's dismissal of its antitrust counterclaims, Apple again attempts to assert that Samsung has violated antitrust laws, that Apple is entitled to a license to Samsung's patents, that Samsung has breached contracts or reneged on promises to a standard-setting organization, and that Samsung has violated California's unfair competition laws.  Once again, Apple has failed to plead facts that support its antitrust allegations, its breach of contract claims, or its unfair competition claims.  And once again, these claims must be dismissed.

Apple fails to identify a proper market that Samsung has monopolized or to establish that Samsung has any market power.  Apple's allegations rest solely on the premise that, because technology claimed by Samsung's patents is incorporated into the W-CDMA standard set by the European Telecommunications Standards Institute ("ETSI"), a premise that Apple contests, this technology and substitutes for this technology constitute a market.  But Ninth Circuit case law requires that Apple identify markets by product, not by technology.  Further, even if the W-CDMA standard were to require use of Samsung's technology, Apple has failed to demonstrate that the mere adoption of that technology confers market power on Samsung.  Apple has not shown that this is the only digital telecommunications standard available to it (indeed, a competing standard, CDMA2000 is available) nor has it pled any facts indicating that it could not switch to a different standard.

Apple's claims for declaratory judgment that it is licensed to Samsung's patents, breach of contract, and promissory estoppel cannot be supported by Apple's allegations.  Apple contends that it requested an offer to license Samsung's patents, but that Samsung never made an offer on fair, reasonable, and non-discriminatory ("FRAND") terms.  Apple admits that it rejected the license offer that Samsung did make.  Without an offer and acceptance, there can be no contract. Apple also has not established that Samsung breached a contract with ETSI.  The ETSI rule, on which Apple relies, that members commit to be "prepared to grant a license" on FRAND terms evinces, at most, an agreement to negotiate, not an "agreement to agree," which courts refuse to enforce.  In particular, Apple does not plead facts that show Samsung promised to offer terms

1   essential to a license, including a particular royalty rate or particular patents.  Thus, Apple has not

2   pled facts sufficient to establish formation of a contract, a breach of contract, or a clear and

3   unambiguous promise.  Apple's declaratory judgment, breach of contract, and promissory estoppel

4   claims, therefore, must be dismissed.

5       The Court dismissed Apple's unfair competition counterclaim, which the Court concluded

6   was indistinguishable from Apple's flawed antitrust counterclaim.  Apple largely re-pleads its

7   previously dismissed counterclaim, adding a few new allegations that cannot constitute unlawful

8   or unfair business acts.  Apple's allegation that the institution of this litigation constitutes an unfair

9   business practice falls afoul of California law that renders immune from liability communications

10  that bear some relation to judicial proceedings.  Moreover, Apple's bare assertion that Samsung

11  has violated Section 5 of the Federal Trade Commission Act is too conclusory to support its unfair

12  competition counterclaim.  Accordingly, Apple's unfair competition counterclaim should once

13  again be dismissed.

14              **FACTUAL AND PROCEDURAL BACKGROUND**

15  **I.      PROCEDURAL HISTORY**

16      Apple filed its Complaint on April 15 (and subsequently amended it on June 16), alleging

17  that Samsung's mobile phones and tablet computers infringe trademarks, trade dress, and patents

18  related to Apple's iPhone and other products.  (D.N. 1; D.N. 75.)  On July 1, Samsung filed its

19  Answer, Affirmative Defenses, and Counterclaims to Apple's Amended Complaint, (D.N. 80),

20  detailing Apple's infringement of Samsung's patents relating to mobile devices, including the use

21  of Universal Mobile Telecommunications System (UMTS) technology and the Wideband Code-

22  Division Multiple Access (W-CDMA) cellular communication protocol, as well as user interface

23  elements and user features of mobile devices.

24      On July 21, Apple filed its Answer, Defenses, and Counterclaims in Reply to Samsung's

25  Counterclaims.  (D.N. 124.)  Apple counterclaimed for (1) declaratory judgment of invalidity of

26  non-infringement of each of Samsung's patents (Apple's first through twenty-fourth

27  counterclaims); (2) breach of an alleged contract between Samsung and ETSI and promissory

28  estoppel rendering Samsung's patents unenforceable (twenty-fifth and twenty-sixth); (3) violation

1   of Section Two of the Sherman Act (twenty-seventh); (4) violation of Section One of the Sherman

2   Act and the corollary California Cartwright Act (twenty-eighth); (5) violation of California's

3   Unfair Competition Laws (twenty-ninth); (6) an adjudication that Apple is already licensed or

4   irrevocably has the right to a license to Samsung's patents (thirtieth); and (7) declaratory judgment

5   of nonenforceability of Samsung's patents and that Samsung had no right to injunctive relief

6   (thirty-first and thirty-second).  (Id. ¶¶ 91-206.)

7            On August 15, 2011, Samsung moved to dismiss Apple's antitrust and unfair competition

8   counterclaims and strike Apple's counterclaims regarding its right to a license to Samsung's

9   patents, the nonenforceability of Samsung's patents, and Samsung's right to injunctive relief.

10  (D.N. 153).  The Court granted-in-part and denied-in-part Samsung's motion on October 18,

11  dismissing Apple's antitrust and unfair competition counterclaims and striking Apple's

12  counterclaims regarding the enforceability of Samsung's patents and Samsung's right to injunctive

13  relief. (D.N. 315).

14           Following the Court's dismissal of Apple's counterclaims, Apple filed its Amended

15  Answer, Affirmative Defenses, and Counterclaims in Reply to Samsung's Counterclaims on

16  November 8.  (D.N. 381.)  In its Amended Counterclaims, Apple reasserts its breach of contract

17  claim (twenty-fifth amended counterclaim), promissory estoppel (twenty-sixth amended

18  counterclaim), declaratory judgment that Apple is licensed to Samsung's Declared-Essential

19  Patents (twenty-seventh amended counterclaim), Section Two antitrust claim (twenty-eighth

20  amended counterclaim), and California Unfair Competition Law claim (now twenty-ninth

21  amended counterclaim).  Apple abandoned its Sherman Act Section One claim and the declaratory

22  judgment claims the Court struck.[1]

23

24  _____

25     [1]  In response to the Court's dismissal of its counterclaims, Apple changed and expanded its
    pleadings regarding its antitrust counterclaims by adding allegations regarding the relevant
26  markets and Samsung's allegedly wrongful actions.  (See, e.g., D.N. 381 Counterclaims ¶¶ 58-69,
    96-102.)  Apple also added allegations regarding the particular agreements it contends are the
27  basis for its contention that the Court should declare that it has a license to Samsung's declared-
    essential patents.  (See, e.g., id. ¶¶ 47, 59-60.)  This motion properly seeks to dismiss Apple's
28       (footnote continued)

1    **II.     APPLE'S ALLEGATIONS REGARDING SECTION TWO OF THE SHERMAN**

2    **ACT**

3    **A.     Apple Defines the Relevant Market Solely According to the Scope of**

4    **Samsung's Declared-Essential Patents and Their Incorporation in the ETSI**

5    **Standard**

6    Apple alleges that Samsung violated Section Two of the Sherman Act based on the

7    incorporation of Samsung's essential patents into the UMTS wireless communication standard

8    promulgated by ETSI.  (D.N. 381 Counterclaims ¶ 99.)

9    In its Amended Counterclaims, Apple defines the relevant market in which Samsung

10   asserts monopoly power solely by the scope of Samsung's patents and the incorporation of those

11   patents into the ETSI standard.  (Id. ¶ 101.)  For example, Apple asserts that U.S. Patent No.

12   6,928,604 ("the '604 patent"), which Samsung has declared essential to the UMTS standard,

13   "identifies a Block Concatenation Technology."  (Id. ¶ 98.)  Apple then asserts that the

14   "technology identified in the '604 patent and its reasonable substitutes comprise the Block

15   Concatenation Technology Market."  (Id. ¶ 99.)  Finally, Apple alleges that because these patents

16   are incorporated into the relevant standard, "[Samsung] has the power to raise prices and exclude

17   competition with respect to each of the technologies covered by its patents."  (Id. ¶ 101.)

18   Apple contends that technological alternatives to Samsung's patents exist, (id. ¶ 58), and

19   Apple concedes that, by themselves, the patents do not confer market power.  (Id. ¶ 67.)  Apple

20   does not allege that Samsung has monopoly power in any market defined by the sale of a product,

21   whether to an end-consumer or a manufacturer, such as the market for mobile phones or mobile-

22   phone chipsets.  Nor does it allege any market of products that new entrants are prevented from

23   entering or wherein Samsung can reduce production without competitors increasing production.

24   Apple fails to support its antitrust claims with any fact allegations about any product market at all.

25

26   _____

27   counterclaims in view of the new allegations raised in the pleadings.  See Providence Metallizing

28   Co. v. Tristar Prods., Inc., 717 F. Supp. 2d 227, 232 n.10 (D.R.I. 2010).

1    Apple separately alleges that "technical standardization also creates a 'lock-in' effect and

2    the risk of 'patent hold-up.'" (Id. ¶ 27.)  Apple does not make any specific allegations as to

3    whether substitutes to the UMTS standard exist.  Apple merely alleges that "[e]ven if there were

4    an alternative standard, the costs and disruption associated with switching is typically

5    prohibitively expensive."  (Id. ¶ 28.)  Apple never identifies what these costs would entail, how

6    such a switch would disrupt its business, or why switching standards would be prohibitively

7    expensive.  Similarly, although Apple asserts that "a device manufacturer is locked in to the

8    standard that its device practices," (id. ¶ 27), Apple does not allege that it is "locked-in" to the

9    UMTS standard, that it may not change the standard used by its devices, or that it would be

10   prohibitively expensive for Apple to switch to another standard, such as the competing

11   CDMA2000 standard.

**B.    Apple Contends That Samsung Delayed Its Disclosure of Essential Patents,**

**Inducing ETSI To Incorporate Samsung's Patents into the UMTS Standard**

14   Apple's allegations of anticompetitive conduct are divided into two parts.  Apple alleges

15   Samsung falsely committed to license its patents on FRAND terms, (id. ¶¶ 59-69), and Samsung

16   concealed the existence of its patents while ETSI was considering what technologies to

17   standardize.  (Id. ¶¶ 57-59.)

18   According to Apple's allegations, ETSI requires that its members, upon disclosure of an

19   essential patent to ETSI, irrevocably undertake in writing that they are prepared to grant

20   irrevocable licenses on FRAND terms and conditions.  (Id. ¶ 52.)  Apple further contends that a

21   refusal to make such an undertaking allows ETSI to consider whether to suspend work on the

22   relevant element of the standard or to design the standard around the patent, thereby rendering it

23   non-essential.  (Id. ¶ 53.)

24   Apple admits that Samsung submitted an undertaking stating that it was prepared to grant

25   irrevocable licenses on FRAND terms for its essential patents.  In late 1998, Samsung issued a

26   general FRAND commitment, declaring that Samsung was prepared to grant licenses in

27   accordance with Clause 6 of the ETSI IPR policy for all its patents deemed essential to the W-

28   CDMA technology standard.  (Id. ¶ 59.)  When Samsung later specifically disclosed its essential

1   patents to ETSI, it included with each declaration a reaffirmation of its willingness and

2   preparedness to grant licenses to each of its disclosed patents in accordance with ETSI policies—

3   namely, on FRAND terms and conditions.  (Id. ¶ 63.)

4           Despite these declarations, Apple alleges that Samsung failed to timely disclose its

5   standards-essential patents and that, had each patent been timely disclosed, ETSI would have

6   selected an alternative technology to perform the functionality covered by Samsung's patent, or

7   would have declined to incorporate the functionality in the standard at all.  (Id. ¶ 58.)  In its

8   Amended Counterclaims, Apple has described technologies it alleges were in competition with

9   Samsung's patented technologies for incorporation into the standard.  (Id.)  Apple has not alleged

10  that any of these technologies were unpatented or non-proprietary at the time of incorporation.

11  **III.    APPLE'S ALLEGATIONS REGARDING DECLARATORY JUDGMENT THAT**

12  **        APPLE IS LICENSED TO SAMSUNG'S DECLARED ESSENTIAL PATENTS**

13          Apple seeks a declaratory judgment that it is licensed to Samsung's Declared-Essential

14  Patents or that it has the irrevocable right to be licensed on FRAND terms under the patents.

15  (D.N. 381 Counterclaims ¶ 195.)  As noted above, Samsung declared it was "prepared to grant

16  licenses to its essential IPR on a fair, reasonable, and non-discriminatory basis in accordance with

17  the terms and conditions set forth in Clause 6.1 of ETSI IPR Policy."  (Id. ¶ 59.)  Apple alleges it

18  is licensed to the Declared-Essential Patents "by virtue of Samsung's FRAND commitments."

19  (Id.)  Apple asks the court to set forth the terms and conditions of that license.  (Id. ¶ 196.)

20          Although Samsung did offer to license its patents to Apple, Apple indisputably rejected

21  that offer.  (Id. ¶ 77.)  Indeed, Apple contends the offer was not on FRAND terms.  (Id. ¶¶ 77, 78,

22  86.)  Apple has not alleged that it ever accepted a license offer made by Samsung or that the

23  parties ever agreed to any license terms, such as the royalty rate.  Nor has Apple alleged that any

24  such agreement was entered into in writing.

25  **IV.    APPLE'S ALLEGATIONS REGARDING PROMISSORY ESTOPPEL**

26          Apple's twenty-sixth counterclaim alleges that "Samsung made clear and definite promises

27  to potential licensees through its commitments to ETSI that it would license the Declared-

28  Essential Patents on FRAND terms."  (D.N. 381 Counterclaims ¶ 186.)  Apple alleges that

1   Samsung intended sellers of mobile wireless devices, including Apple, to rely on Samsung's ETSI

2   commitments and that Apple did in fact so rely on the promises by developing products compliant

3   with UMTS standard, suffering damages as a result.  (Id. ¶¶ 187-88, 190.)  Apple thus asserts that

4   Samsung should be "estopped from reneging on these promises to ETSI, its members, designers,

5   and sellers of products implementing the UMTS standard under the doctrine of promissory

6   estoppel. (Id. ¶ 189.)

7   **V.      APPLE'S ALLEGATIONS REGARDING UNFAIR COMPETITION**

8            Apple's amended pleadings regarding unfair competition are substantially the same as the

9   allegations it drafted in its initially pleaded counterclaims.  At best, there are two substantive

10  differences in Apple's new pleadings.  First, Apple contends that the instant litigation constitutes

11  unfair business acts or trade practices because Apple is allegedly authorized or impliedly licensed

12  to sell the accused infringing devices.  (D.N. 381 Counterclaims ¶ 206.)  Second, Apple adds a

13  sentence contending that Samsung's behavior violates Section 5 of the Federal Trade Commission

14  Act.  (Id. ¶ 205.)

15                                   **ARGUMENT**

16  **I.      LEGAL STANDARD**

17          **A.      Fed. R. Civ. P. 12(b)(6): Dismissal of Implausible Claims**

18          Pursuant to Rule 12(b)(6), the Court may dismiss any claim that does not contain sufficient

19  factual matter to state a facially plausible claim for relief.  Fed. R. Civ. P. 12(b)(6); Bell Atl. Corp.

20  v. Twombly, 550 U.S. 544, 555-56 (2007).  In doing so, the Court must "construe all allegations

21  of material facts in the light most favorable to the nonmoving party."  Livid Holdings Ltd v.

22  Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  Dismissal may be either for "lack

23  of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

24  theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

25          The nonmoving party, however, must plead facts that, if regarded as true, establish more

26  than a mere "speculative" right to relief.  Twombly, 550 U.S. at 555.  A plaintiff must make a

27  "'showing,' rather than a blanket assertion, of entitlement to relief."  Id. at 556 n.3.  "A claim has

28  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

1   reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,

2   129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).  "[C]onclusory allegations" of

3   illegal conduct do not satisfy this requirement.  Twombly, 550 U.S. at 557.

4   **II.   APPLE FAILS TO PLEAD FACTS SUFFICIENT TO GRANT RELIEF**

5   **PURSUANT TO SECTION 2 OF THE SHERMAN ACT**

6   Apple's allegation that Samsung has violated Section Two of the Sherman Act by

7   unlawfully monopolizing markets rests on the contention that each of the functions accomplished

8   by Samsung's standards-essential patents constitutes an "Input Technologies Market."  (See D.N.

9   381 Counterclaims ¶ 99.)  Apple's market definition is facially implausible and thus fatally

10  defective.  Despite its amendment, Apple has failed to plead any facts sufficient to support an

11  inference that ETSI would have adopted alternatives to Samsung's patented technologies when it

12  defined the UMTS standard.

13  **A.   An Antitrust Litigant Must Allege a "Relevant Market"**

14  Section Two of the Sherman Act makes it a felony to "monopolize, or attempt to

15  monopolize . . . any part of the trade or commerce among the several States."  15 U.S.C. § 2.  A

16  claim of unlawful monopolization under Section Two requires showings of "(1) the possession of

17  monopoly power in the relevant market and (2) the willful acquisition or maintenance of that

18  power as distinguished from growth or development as a consequence of a superior product,

19  business acumen, or historic accident."  United States v. Grinnel Corp., 384 U.S. 563, 570-71

20  (1966).

21  To state a valid claim under the Sherman Act, a "plaintiff must allege both that a 'relevant

22  market' exists and that the defendant has power within that market."  Newcal Indus., Inc. v. Ikon

23  Office Solution, 513 F.3d 1038, 1044 (9th Cir. 2008).  Although the validity of a "relevant

24  market" is typically a factual matter, if the complaint's definition of a market is "facially

25  unsustainable," dismissal under Rule 12(b)(6) is appropriate.  Id. at 1045.

26  The Ninth Circuit has held that "[f]irst and foremost, the relevant market must be a *product

27  market*," that is, the market must be defined by a product.  Id.  The market for a product must

28  include the product at issue as well as all reasonable economic substitutes for the product.  Brown

1  Shoe Co. v. United States, 370 U.S. 294, 325 (1962).  "The reasonable interchangeability of use or

2  the cross-elasticity of demand between the product itself and substitutes for it" determine "[t]he

3  outer boundaries of a product market."  Id.  A claim is legally insufficient if the market definition

4  "clearly does not encompass all interchangeable substitute products even when all factual

5  inferences are granted in plaintiff's favor."  Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124

6  F.3d 430, 436 (3d Cir. 1997).

7          Here, Apple's antitrust claims must fail because it has not alleged that Samsung has power

8  in a product market.  Rather, Apple alleges that the "relevant markets in which to assess the

9  anticompetitive effects of Samsung's conduct . . . are the ***various markets for technologies*** that

10  . . . were competing to perform each of the various functions covered by each of Samsung's

11  purported essential patents for UMTS."  (D.N. 381 Counterclaims ¶ 99) (emphasis added).  In

12  particular, Apple contends that Samsung has monopolized the "Power Control Technology

13  Market," the "VoIP Header Technology Market," the "Rate Matching Technology Market," the

14  "Block Concatenation Technology Market," the "Interleaving Technology Market," and the

15  "Scrambling Code Technology Market."  (Id.)  Apple simply alleges that each market is defined

16  by the patented technology "and its reasonable substitutes."  (Id.)  Apple does not identify the

17  products that practice the technology or any "interchangeable substitute products."  Nor does

18  Apple identify a single product for which the cross-elasticity of demand could be evaluated.  See

19  Brown Shoe, 370 U.S. at 325.  As such, Apple has failed to define a product market and its

20  antitrust claims must be dismissed.  Newcal Indus., 513 F.3d at 1044; Chapman v. New York State

21  Div. of Youth, 546 F.3d 230, 238 (2d Cir. 2008); Sun Microsystems, Inc. v. Versata Enters., Inc.,

22  630 F. Supp. 2d 395, 403-04 (D. Del. 2009).

23          In failing to plead a product market, Apple's allegations differ from those alleged in

24  Broadcom Corp. v. Qualcomm, Inc., 501 F.3d 297 (3d Cir. 2007),  which the Court cited in its

25  Order granting Samsung's previous motion to dismiss.  (D.N. 315, at 6.)  There, the plaintiff

26  alleged the patentee controlled 90% of the market share of CDMA-compliant chipsets and actively

27  sought a similar monopoly in the market for UMTS-compliant chipsets.  Broadcom, 501 F.3d at

28  304.  Accordingly, the alleged anticompetitive barriers to entry surrounding the relevant market

1    were patents preventing new firms from entering the *chipset* markets.  Broadcom, First Am.

2    Compl., 2005 WL 6495807, at ¶ 82.  The Third Circuit's recognition of a technology market

3    sounding in a standardized patent should not be torn from its foundation that a *product* market

4    subject to monopoly prices and reduced output also exist.  Cf. In re Rambus, Inc., No. 9302, 2006-

5    2 Trade Cas. ¶ 75364, at *39 (F.T.C. 2006) (finding Rambus had monopoly power in the DRAM

6    technology markets because over 90% of DRAM chips, covering multiple standards, were subject

7    to Rambus's patent claims). Yet Apple seeks to do so here.

8        **B.    Apple Has Failed To Allege Any Cognizable Market in Which Samsung Has**

9                **Power and Has Failed To Allege Any Measure of Market Share at All**

10           Apple's failure to plead facts alleging that Samsung possessed any power in the relevant

11   market provides an independent reason for dismissing its antitrust counterclaims.  Apple's

12   allegation that Samsung possesses market power is based solely on ETSI's incorporation of

13   Samsung technology into the W-CDMA standard.  From this allegation, Apple asserts that

14   Samsung "has the power to raise prices and exclude competition with respect to each of the

15   technologies covered by its patents and incorporated in the relevant standard."  (D.N. 381

16   Counterclaims ¶ 101.)

17           The mere incorporation of patented technology into a standard does not justify an inference

18   that the patentee has market power.  "The adoption of an industry standard incorporating such

19   proprietary technology does not confer any power to exclude that exceeds the exclusionary power

20   to which a patent holder is otherwise legally entitled."  Rockwell Int'l Corp v. Townshend, No.

21   99-cv-0400, 2000 WL 433505, at *12 (N.D. Cal. Mar. 28, 2000).   And the Supreme Court has

22   rejected the presumption that a patent lends monopoly power to its owner *per se*.  Illinois Tool

23   Works, Inc. v. Indep. Ink, Inc., 547 U.S. 28, 42-45 (2006).  Absent plausible allegations of market

24   power related to a relevant market, whether through the pleading of a large market share or actual

25   raised prices *and* reduced output, Apple's allegation of market power must be dismissed.  Harrison

26   Aire, Inc. v. Aerostar Int'l, Inc., 423 F.3d 374, 381 (3d Cir. 2005); Townshend, 2000 WL 43305,

27   at *12 (dismissing an antitrust claim for failure to plead market power when the plaintiff pled

28   neither a market share nor that a standard prevented the development of proprietary technologies).

1    Apple fails to plead facts from which one could reasonably infer that the incorporation of

2    Samsung technology into the W-CDMA standard gives rise to market power.  Apple only alleges

3    that, generally, a designer may be locked in to a particular standard and that "the costs and

4    disruption associated with switching is *typically* prohibitively expensive."  (D.N. 381

5    Counterclaims ¶ 28.)  Apple fails to plead specific facts showing the costs of switching

6    technologies in the various "Input Technology Markets" it defined would actually be expensive or

7    prohibitive here.  Apple fails to plead any facts from which one could reasonably infer that Apple

8    or any other competitor could not switch from W-CDMA to a different standard.  See Iqbal, 129

9    S. Ct. at 1949.  If Apple could switch from W-CDMA to a different standard without undue cost,

10   the incorporation of Samsung's technology into W-CDMA would necessarily confer no market

11   power.  See SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp., 188 F.3d 11, 19-20 (1st Cir.

12   1999).

13   **III.    APPLE'S ALLEGATIONS OF ANTICOMPETITIVE CONDUCT REMAIN**

14   **INSUFFICIENT**

15         In its Order granting in part and denying in part Samsung's motion to dismiss, the Court

16   identified two theories supporting Apple's allegations of monopoly conduct:  Samsung's allegedly

17   false FRAND declarations and Samsung's alleged failures to disclose intellectual property rights.

18   With regard to Apple's failure-to-disclose theory, the Court found that Apple "failed to allege

19   sufficient facts to support a plausible inference that had Samsung disclosed its intellectual property

20   rights to the SSO, a viable alternative technology performing the same functionality would have

21   been incorporated into the UMTS standard."  (D.N. 315 at 9.)

22         While Apple has amended its counterclaims to plead that alternative technologies existed

23   at the time of ETSI's standard setting, (see D.N. 381 Counterclaims ¶ 58), nothing in Apple's

24   allegations creates a plausible inference that ETSI would have adopted an alternative technology.

25   As Apple concedes, standards setting organizations require that their members commit to license

26   patents essential to a standard on FRAND terms to "address the problem of patent hold-up," and

27   FRAND commitments thereby "ensure the widespread adoption of the standard will not be

28

1   hindered by IPR holders seeking to extract unreasonable royalties and terms from those

2   implementing the standard."  (<u>Id.</u> ¶¶ 29, 31.)

3       The ETSI Rules of Procedure, which Apple repeatedly quotes in its complaint, similarly

4   confirm that ETSI did not seek to enact standards that avoided incorporation of patent rights.

5   Rather, ETSI rules seek to "adequately and fairly reward[] [members] for the use of their IPRs in

6   the implementation of STANDARDS and TECHNICAL SPECIFICATIONS."  (Decl. of Eric

7   Wall In Support of Samsung's Motion to Dismiss, dated Nov. 22, 2011, Ex. 1, Clause 3.2 (ETSI

8   Intellectual Property Rights Policy).)[2]  Only where a patent owner "is not prepared to license an

9   IPR in respect of a STANDARD or TECHNICAL SPECIFICATION in accordance with Clause

10  6.1," do the ETSI Rules of Procedure provide that an alternative technology should be identified

11  or that the patented technology should not be incorporated into a standard.  (<u>Id.</u>, Clauses 8.1.1 and

12  8.1.2.)

13      Here, because Apple admits that Samsung prospectively agreed to license any patents

14  incorporated into an ETSI standard on a FRAND basis, there is no reason to infer that ETSI would

15  not have incorporated Samsung's technology, regardless of the truth of Apple's allegations that

16  ETSI did not know beforehand that the technology was patented.  Apple concedes that, before the

17  adoption of W-CDMA, Samsung committed in general to license at a FRAND rate all essential

18  technology it owned that was incorporated into the standard.  (D.N. 381 Counterclaims ¶ 59.)  In

19  addition, Samsung supplemented its general commitment to FRAND licensing with specific

20  disclosures of intellectual property rights.  (<u>Id.</u> ¶ 63.)

21      Even if Samsung's patenting of its technology were significant, Apple fails to plead that

22  the alternative technologies available were unpatented or non-proprietary.  Nor has Apple alleged

23  that any of these technologies were superior to Samsung's.  Although Apple makes much of

24  _____

25      [2]  Samsung notes that while Apple relied on and cited the ETSI IPR policy, it did not attach it
26  to its counterclaims.  The Court can and should consider the entirety of this document.
    "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party
27  questions, but which are not physically attached to the pleading, may be considered in ruling on a
    Rule 12(b)(6) motion to dismiss." <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995).

28

1  identifying technologies it asserts ETSI *could* have adopted, it entirely fails to meet the <u>Twombly</u>

2  standard of a plausible inference that ETSI *would* have adopted any of them.  <u>See</u> 550 U.S. at 556.

3       Because Apple has failed to plead facts sufficient to create a plausible inference that ETSI

4  would have adopted an alternative technology in response to Samsung's alleged required

5  disclosure, its claim of anticompetitive conduct in Counterclaim Twenty-Eight based on this

6  theory should be dismissed.

7  **IV.   APPLE FAILS TO PLEAD FACTS SUFFICIENT TO GRANT RELIEF FOR**

8  **BREACH OF CONTRACT OR DECLARATORY JUDGMENT THAT APPLE IS**

9  **LICENSED TO SAMSUNG'S DECLARED-ESSENTIAL PATENTS**

10      In its twenty-seventh counterclaim, Apple alleges that by virtue of Samsung's FRAND

11  commitments, Apple is entitled to a declaratory judgment that it is licensed to Samsung's

12  Declared-Essential Patents or has the irrevocable right to be licensed on FRAND terms.  (D.N.

13  381 Counterclaims ¶ 195.)  In its twenty-fifth counterclaim, Apple alleges that by seeking to

14  enjoin Apple from practicing Samsung's patented technology, acting unreasonably toward Apple,

15  and failing to timely disclose its essential patents, Samsung has breached a contract.  (D.N. 381

16  Counterclaims ¶¶ 180-83.)  Apple's allegations are inconsistent with the terms of Samsung's

17  FRAND declaration, which is quoted in Apple's Counterclaims and, as a result, Apple fails to

18  plead facts sufficient to establish the formation of a contract between Apple and Samsung.

19      As an initial matter, although Apple pleads the ETSI IPR Policy is governed by French

20  law, (<u>id.</u> ¶ 54), Apple fails to identify which law would apply to a license arising from ETSI

21  obligations.  <u>See</u> Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign

22  country's law must give notice by a pleading or other writing. . . . The court's determination [of

23  foreign law] must be treated as a ruling on a question of law.").  There is no reason to believe

24  Apple, a California corporation which brought this suit in California, and the Samsung entities,

25  Korean and American corporations, would subject to French law a patent license agreement

26  concerning U.S. patents simply because they are parties or third-party beneficiaries to a standard-

27  setting organization governed by French law.  In any event, under either California or French law,

28  Apple has failed to plead facts sufficient to prove the existence of a license or a breach of

contract.[3]  Further, Apple's alternative pleading—that it has the irrevocable right to a license—fails to state a cognizable legal theory.

### A.  Under California Law, Apple's Pleadings Fail To Establish the Formation of a Valid Contract

It is well-settled that to create a contract under California law, the parties must mutually assent to the terms of the contract, i.e., there must be an offer and an acceptance.  Tuso v. Green, 194 Cal. 574, 580-81, 229 P. 327, 329 (1924).  A binding offer exists only if it is reasonable to conclude, based on all the circumstances, that acceptance will leave nothing to negotiate or do before the contract is effective.  Rubio v. Capital One Bank, 613 F.3d 1195, 1205 (9th Cir. 2010) (citing Donovan v. RRL Corp., 26 Cal. 4th 261, 109 Cal. Rptr. 2d 807, 27 P.3d 702, 709 (2001)).  "Acceptance is the 'manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.'"  In re First Capital Life Ins. Co., 34 Cal. App. 4th 1283, 1288, 40 Cal. Rptr. 2d 816, 819 (2d Dist. 1995) (quoting Rest. 2d Contracts (1981) § 50).  Thus, "[a] contract requires an offer that articulates the terms of the agreement, and an acceptance that mirrors the offer."  McAfee v. Francis, 5:11-CV-00821-LHK, 2011 WL 3293759, at *2 (N.D. Cal. Aug. 1, 2011) (Koh, J.).

Moreover, California courts have rejected the proposition that a party may be entitled to a right to a contract, i.e., an "agreement to agree."  "There is no dispute that neither law nor equity provides a remedy for breach of an agreement to agree in the future.  Such a contract cannot be made the basis of a cause of action."  Ehlert v. America's Servicing Corp., No. 11-cv-1359, 2011 WL 4862426, at *3 (S.D. Cal. Oct. 12, 2011) (quoting Autry v. Republic Prods., Inc., 30 Cal. 2d 144, 151-52, 180 P.2d 888, 893 (Cal. 1947)); see also First Nat'l Mortg. Co. v. Federal Realty Inv. Trust, 631 F.3d 1058 (9th Cir. 2011) ("[A]n 'agreement to agree,' without more, is not a binding contract.") (citing Autry, 30 Cal. 2d at 151-52, 180 P.2d at 893).  While a party may manifest a

---

[3]  Although Samsung here applies California law, the analysis would not substantively change under the application of the law of any other United States jurisdiction.  See generally 1 Arthur L. Corbin, Corbin on Contracts, §§ 2.1-3.41 (Joseph M. Perrillo rev. ed., 1993 & Supp. 2011).

1   "willingness to enter into a bargain," an agreement for future negotiation is "not the functional

2   equivalent of a valid, subsisting agreement."  Beck v. Am. Health Group Int'l, Inc., 211 Cal. App.

3   3d 1555, 1562, 260 Cal. Rptr. 237, 241 (2d Dist. 1989) (citations and internal quotation marks

4   omitted).  Further, "[t]he court may not imply what the parties will agree upon."  Autry, 30 Cal. 2d

5   at 152, 180 P.2d at 893.

6       Apple's claims only demonstrate that Samsung committed to negotiate a license on

7   FRAND terms, not that Samsung agreed to license its patents on any particular terms.  Further,

8   Apple alleges that Samsung made no offer to license its Declared-Essential Patents on FRAND

9   terms, and Apple confirms it did not accept a license to those patents from Samsung.  (D.N. 381

10  Counterclaims ¶ 76.)  Thus, under California law, Apple has failed to plead the requirements for

11  the formation of a contract, and a claim that Apple has a right to a license, i.e., Samsung agreed to

12  agree, fails as a matter of law.

13              1.    Samsung's Declaration to ETSI Was Not an Offer To License

14      Apple alleges it is licensed to Samsung's patents "by virtue of Samsung's FRAND

15  commitments."  (Id. ¶ 195.)  These "FRAND commitments" arise out of Samsung's 1998

16  declaration to ETSI that Samsung was "prepared to grant licenses to its essential IPR on a fair,

17  reasonable, and non-discriminatory basis in accordance with the terms and conditions set forth in

18  Clause 6.1 of ETSI IPR Policy."  (Id. ¶ 59.)  On its face, this declaration is not an offer to license

19  patents.  Apple's conclusory allegations that Samsung's statement that it was "prepared to grant

20  licenses" on FRAND terms was an offer to a license are wholly insufficient.  (See, e.g., id. ¶¶ 59,

21  64, 68)  When read in the light most favorable to Apple, Apple's allegations that Samsung

22  declared it was prepared to grant licenses establish *at most* that Samsung made a promise to

23  negotiate.  See Beck, 211 Cal. App. 3d at 1563, 260 Cal. Rptr. at 242.  A promise to negotiate,

24  though, is not a license or "an agreement to agree" to a license, which courts do not enforce.  See

25  id.

26      Apple's allegations illustrate the sound policy reasons why California courts will not

27  enforce an agreement to agree.  See Ehlert, 2011 WL 4862426, at *3; Beck, 211 Cal. App. 3d at

28  1563, 260 Cal. Rptr. at 242.  If Samsung's statement that it was prepared to grant licenses was to

be considered a binding commitment to license its patents, a potential licensee, such as Apple, could unilaterally decide the terms of the license.[4]  If this were the case, members of SSOs committed to license their patents at FRAND rates would be bound to license their patents on one-sided terms benefitting the licensee.  California courts refuse to interpret these commitments as an agreement to agree precisely to avoid such an inequitable result.  <u>Beck</u>, 211 Cal. App. 3d at 1563, 260 Cal. Rptr. at 242.

Moreover, fair, reasonable, and non-discriminatory terms are not one-size-fits-all.  A FRAND commitment is not equivalent to a most-favored nation clause, by which the parties could simply insert the most favorable terms from another contract.  <u>See Ericsson Inc. v. InterDigital Comm. Corp.</u>, 418 F.3d 1217, 1219 (Fed. Cir. 2005); <u>see also</u> <u>Autry</u>, 30 Cal. 2d at 152, 180 P.2d at 893 ("The court may not imply what the parties will agree upon.").  What is "FRAND" will depend on the patents sought to be licensed, the term of the license, the territory of the license, and other factors.  In short, different parties may agree to different terms, which are nevertheless FRAND terms.  As such, a FRAND commitment lacks the requisite specificity to constitute an offer to license, <u>see Rubio</u>, 613 F.3d at 1205, and cannot constitute an enforceable agreement to agree.  <u>Ehlert</u>, 2011 WL 4862426, at *3; <u>Beck</u>, 211 Cal. App. 3d at 1563, 260 Cal. Rptr. at 242.

2.    <u>Apple Admits that the Parties Never Concluded a License Agreement</u>

Apple's complaint makes clear that the parties never agreed to terms to license Samsung's patents.  Apple alleges that, despite its requests, Samsung did not make an offer on FRAND terms to Apple.  (D.N. 381 Counterclaims ¶ 71; <u>see also</u> <u>id.</u> ¶ 76 ("Since Samsung sued Apple, Apple has asked Samsung to quote FRAND license terms no fewer than seven times."); <u>id.</u> ¶ 76 ("Indeed, while now claiming that it will quote FRAND license terms, Samsung has expressly reconfirmed that it will refuse to provide this information.").)  Apple admits that Samsung did make a license offer to Apple, but Apple rejected that offer, allegedly because the offer was

---

[4]  Moreover, according to Apple, Samsung's offer would "preclude Samsung from seeking to enjoin [potential licensees]."  (D.N. 381 Counterclaims ¶ 69.)  Apple invites the nonsensical result that Apple could practice Samsung's patented technology without paying any royalty *or* fearing litigation.

1   "manifestly not FRAND."  (Id. ¶ 77.)  Thus, Apple's pleadings establish that the parties never

2   agreed to a license.  Tuso, 194 Cal. at 580-81.  Further, Apple fails to identify material terms of

3   any Samsung offer.  For example, immediately after identifying the statement Apple takes to be an

4   offer, Apple contends "[t]hat declaration did not include references to any particular IPR."  (D.N.

5   381 Counterclaims ¶ 59.)  Likewise, Apple fails to identify a royalty rate or fee, a duration, any

6   geographic limitations, or any other single term of the purported offer to license that Samsung

7   offered Apple.

8       **B.      Under French Law, Apple's Pleadings Fail To Establish the Formation of a**

9               **Valid Contract**

10          Apple's allegations are equally insufficient if, instead, it asserts the license is governed by

11   French law.  Apple's allegations fail to establish the formation of a valid contract under French

12   law for at least five reasons.

13          First, pursuant to Article L. 613-8 of the French Intellectual Property Code, "[a patent]

14   assignment or license shall be executed in writing, under penalty of nullity."  (Decl. of Prof. Remy

15   Libchaber, dated Sept. 21, 2011, ¶ 54 ("Libchaber Decl.").)  Apple has not pled the existence of a

16   written license.

17          Second, French law requires a patent license to include a price term.  In France, a patent

18   license is treated as a lease of things, (see Libchaber Decl. ¶¶ 43, 44), and a lease of things

19   requires a price term.  (Id. ¶ 46.)  Apple's counterclaims make plain that a price term, i.e., a

20   royalty rate or fee, has never been set.  (See D.N. 381 Counterclaims ¶¶ 71, 76, 77, 79.)

21          Third, under French law, a patent license is a contract entered into *intuitu personae*,

22   meaning the identity of the contracting party is essential.  (Libchaber Decl. ¶¶ 120-24.)  A general

23   declaration to ETSI that Samsung is prepared to grant licenses does not identify with sufficient

24   specificity the parties with whom Samsung will contract.

25          Fourth, as in American law, French law requires an offer.  "The offer is the proposal for

26   which it will be enough for the approached person to agree for the contract to be concluded."  (Id.

27   ¶ 70.)  The offer must be firm and precise.  (Id. ¶¶ 70-71.)  As described above, Apple's pleadings

28   establish, at most, that Samsung committed to negotiate a license on FRAND terms and not that it

made a firm offer.  (See id. ¶¶ 72-81.)  Moreover, "FRAND terms" is not precise with regard to any term, let alone essential terms, such as price or the patents to be licensed.

Finally, French law also requires an acceptance.  (Id. ¶ 70.)  For the same reasons as with California law, Apple failed to plead acceptance of any Samsung offer.

For each and all of the foregoing reasons, Apple's counterclaim for a declaratory judgment that Apple is licensed to Samsung's Declared-Essential Patents must be dismissed.

### C.       Samsung Did Not Breach a Contract with ETSI

Just as Apple has failed to plead the formation of a valid license or an irrevocable right to a license, it has failed to plead facts sufficient to establish Samsung's breach of any contract. According to Apple, Samsung entered into contractual commitments with ETSI, ETSI's members, and adopters of the relevant ETSI standards by "committing to license the Declared Essential Patents . . . on FRAND terms."  (D.N. 381 Counterclaims ¶ 180.)  Apple alleges that Samsung breached this contract by:  (i) seeking to enjoin Apple from practicing Samsung's inventions; (ii) "acting unreasonably and unfairly towards and discriminating against Apple"; and (iii) failing to timely disclose its essential patents.  (Id. ¶¶ 182-83).  Each of these purported breaches fails to state a claim on which relief can be granted.[5]

First, as explained, under either California or French law, Apple cannot have had a right to a license to , i.e., a right to practice, Samsung's patented inventions.  Samsung merely was "prepared to grant" licenses to willing licensees.  To the extent Apple's allegations imply that ETSI created an obligation to *grant* a license, not merely to negotiate, an agreement to agree is unenforceable.  Ehlert, 2011 WL 4862426, at *3; Beck, 211 Cal. App. 3d at 1563, 260 Cal. Rptr. at 242; Libchaber Decl. ¶¶ 9-21.  Thus, Samsung cannot have breached an enforceable contract by seeking to enjoin Apple, an unlicensed competitor, from practicing its patented technology.

---

[5]   Moreover, even if Apple could establish that Samsung breached the ETSI policy (it cannot), Section 14 of that policy dictates that "[t]he ETSI General Assembly shall have the authority to decide the action to be taken, if any, against the MEMBER in breach, in accordance with ETSI statutes."  (Wall Decl., Ex. 1, clause 14.)  Thus, the ETSI General Assembly – not this Court – should determine if Apple is entitled to a remedy from Samsung.

1    Second, Apple's allegations that Samsung has acted unreasonably, unfairly, or

2    discriminatorily toward Apple are entirely insufficient to demonstrate that Samsung has breached

3    its agreement with ETSI by not licensing its Declared-Essential Patents or negotiate in good faith.

4    An agreement to negotiate is only breached by a party's refusal to negotiate or negotiate in good

5    faith, not a failure to agree.  Copeland v. Baskin Robbins U.S.A., 96 Cal. App. 4th 1251, 1257,

6    117 Cal. Rptr. 2d 875, 880-81 (2002) ("A party will be liable only if a failure to reach ultimate

7    agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good

8    faith.").  Apple admits that Samsung has negotiated with Apple, even offering a license to Apple

9    on July 25, 2011, more than three months after Apple commenced this litigation.  (D.N. 381

10   Counterclaims ¶ 77.)  Moreover, because there is no way of knowing what the ultimate terms of

11   the agreement would have been or even if there would have been an ultimate agreement, Apple

12   cannot allege that it is entitled to a license to Samsung's Declared-Essential Patents as the result of

13   Samsung's purported breach.  Copeland, 96 Cal. App. 4th at 1257, 117 Cal. Rptr. 2d at 880-81.

14   Finally, as explained in Section III, above, Apple's allegations fail to create a plausible

15   inference that Samsung's purported breach of its obligation to timely disclose its essential patents

16   caused any damage to Apple or any other party.  Again, because Samsung prospectively agreed to

17   license its essential patents on FRAND terms, (id. ¶ 59), there is no reason to believe ETSI would

18   not have incorporated Samsung's patented technology into the standard if its members knew

19   beforehand that the technology was patented.  That is, there is no reason to believe that Samsung's

20   alleged failure to timely disclose its essential patents was a substantial factor in causing damage to

21   Apple.  See US Ecology, Inc. v. State, 129 Cal. App. 4th 887, 909, 28 Cal. Rptr. 3d 894, 910 (4th

22   Dist. 2005) (finding no causation where it was not "reasonably certain" and it was "at best

23   speculation" that circumstances would have changed).  As a result, Apple has failed to plead the

24   elements required for breach of contract.  McAfee, 2011 WL 3293759, at *2 (identifying fourth

25   element as "damages to the plaintiff from defendant's breach").

26   For all of the foregoing reasons, Apple's twenty-fifth counterclaim for breach of contract

27   should be dismissed.

28

**V.   APPLE FAILS TO PLEAD FACTS SUFFICIENT TO GRANT RELIEF FOR PROMISSORY ESTOPPEL**

Apple's allegations regarding promissory estoppel only establish that Samsung committed that it was prepared to grant licenses on FRAND terms.  This is not a promise that is enforceable under the doctrine of promissory estoppel, and, therefore, Apple fails to plead facts sufficient to sustain a claim for promissory estoppel.

Under California law, the required elements for promissory estoppel are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."  Laks v. Coast Federal Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890, 131 Cal. Rptr. 836, 839 (2d Dist. 1976).  A promise "is not a 'clear and unambiguous' promise[] [if ] it clearly contemplates further negotiations to finalize the terms of the [contract]." Columbia Pics. Television v. Krypton Broad. of Birmingham, Inc., 106 F.3d 284, 291-92 (9th Cir. 1997), rev'd on other grounds, Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 118 S. Ct. 1279, 140 L. Ed. 2d 438 (1998) (quoting Laks, 60 Cal. App. 3d at 890, 131 Cal. Rptr. at 839).  Moreover, because extrinsic evidence is relevant only for interpreting an ambiguous contract, "[i]t follows that if extrinsic evidence is needed to interpret a promise, then obviously the promise is not clear and unambiguous." Lange v. TIG Ins. Co., 68 Cal. App. 4th 1179, 1185, 81 Cal. Rptr. 2d 39, 43 (2d Dist. 1998).

As described above, the promise that Apple identifies as Samsung's breach is Samsung's declaration that it was "prepared to grant licenses to its essential IPR on a fair, reasonable, and non-discriminatory basis."  (D.N. 381 Counterclaims ¶ 59.)  This promise "clearly contemplates further negotiations to finalize the terms." Columbia Pics., 106 F.3d at 291-92.  As described in Section IV.A, above, the promise fails to include any specific terms of a license, including which patents will be licensed and at what rate.  In fact, Apple's own allegations undermine its claim of promissory estoppel because, to allow it to determine whether Samsung's terms are FRAND terms, Apple purports to require "information about any license agreements for declared-essential UMTS patents with other device manufacturers."  (D.N. 381 Counterclaims ¶ 77.)  That is, to

1   establish the terms of the promise, Apple requires extrinsic evidence, which establishes that the

2   promise is not clear and unambiguous.  <u>Lange</u>, 68 Cal. App. 4th at 1185, 81 Cal. Rptr. 2d at 43.

3           Moreover, as explained in Section IV.A.1, above, the statement is, at most, a promise to

4   negotiate.  According to Apple's own allegations, Samsung has negotiated with Apple regarding a

5   license to its essential patents, even offering such a license.  (D.N. 381 Counterclaims ¶ 77.)  Thus,

6   Apple has failed to plead facts sufficient to establish that Samsung breached any promise to

7   negotiate.

8           Because Apple has failed to plead facts sufficient to establish that Samsung made a

9   promise that was clear and unambiguous in its terms or that Samsung breached any such promise,

10   Apple's twenty-sixth counterclaim must be dismissed.

11   **VI.     APPLE FAILS TO PLEAD FACTS SUFFICIENT TO GRANT RELIEF FOR**

12   **          UNFAIR COMPETITION**

13           The Court previously dismissed Apple's unfair competition claim as duplicative of its

14   Section 2 Sherman Act claim.  The Court noted the California Supreme Court's holding that

15   "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or

16   practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an

17   incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because

18   its effects are comparable to or the same as a violation of the law, or otherwise significantly

19   threatens or harms competition."  <u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>, 20

20   Cal. 4th 163, 186-87, 973 P.2d 527 (1999).  Noting that it was "unclear how Apple's UCL claim is

21   materially different than its claims for violations of the predicate antitrust laws," the Court

22   dismissed Apple's claims.  (D.N. 315 at 13.)

23           The unfair competition allegations in Apple's amended complaint are substantially the

24   same as those it initially pled and should once again be dismissed for the same reasons that

25   Apple's antitrust claim should be dismissed.  <u>See</u> Sections II and III, <u>supra</u>.  Apple raises only two

26   new allegations in support of its unfair competition counterclaim.  First, Apple contends that the

27   initiation of this lawsuit is an unfair business practice because Samsung is allegedly precluded

28   from bringing suit because Apple has purchased its chip sets from licensed suppliers and because

1    Apple is impliedly licensed.  (D.N. 381 Counterclaims ¶ 206)  Second, Apple's counterclaim now

2    contains a single sentence stating that Samsung's conduct violates Section 5 of the Federal Trade

3    Commission Act.  (<u>Id.</u> ¶ 205.)

4         Apple fails to plead facts that demonstrate that Samsung's lawsuit is exempt from

5    immunity under California law.  Pursuant to California Civil Code 47(b), communications that

6    bear some relation to judicial proceedings are absolutely immune from tort liability.  <u>Rubin v.</u>

7    <u>Green</u>, 4 Cal. 4th 1187, 1193 (1993).  A plaintiff may not make an end-run around this prohibition

8    by alleging an Unfair Competition claim.  <u>Cel-Tech</u>, 20 Cal. 4th at 182.  Samsung has not pled any

9    basis as to why Samsung's claims would not be subject to immunity and, therefore, its allegations

10   regarding this lawsuit cannot form the basis for an unfair competition claim.

11        Apple's pleadings with respect to Section 5 of the Federal Trade Commission Act fail to

12   state a claim as well.  Apple's counterclaims merely assert the violation of this section without any

13   explanation as to what acts constitute the violation.  Such conclusory allegations fail to satisfy the

14   Rule 12(b)(6) pleading standards and cannot establish that Apple is entitled to relief under Section

15   17200.  <u>Twombly</u>, 550 U.S. at 557.

16        Thus, Apple has failed to make new allegations that support its unfair competition

17   counterclaim and its counterclaim should once again be dismissed.

18

19

20

21

22

23

24

25

26

27

28

1    **VII.     CONCLUSION**

2           For the foregoing reasons, Samsung respectfully request that the Court dismiss Apple's

3    Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, and Twenty-Ninth Counterclaims.

4

5    DATED:  November 22, 2011              Respectfully submitted,

6                                          QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
7

8

9                                          By    /s/ Victoria F. Maroulis
                                              Charles K. Verhoeven
10                                            Kevin P.B. Johnson
                                              Victoria F. Maroulis
11                                            Michael T. Zeller
12                                            Attorneys for SAMSUNG ELECTRONICS CO.,
                                              LTD., SAMSUNG ELECTRONICS AMERICA,
13                                            INC. and SAMSUNG
                                              TELECOMMUNICATIONS AMERICA, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28