# WOODRING EXHIBIT 41

Contains Highly Confidential - Attorneys' Eyes Only  Portions

Page 1

1          UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF CALIFORNIA
3                    --o0o--
4  APPLE INC., a California
   corporation,
5
                Plaintiff,
6
            Vs.                  Case No. 11-CV-01846-LHK
7
   SAMSUNG ELECTRONICS CO., LTD.,
8  a Korean business entity;
   SAMSUNG ELECTRONICS AMERICA,
9  INC., a New York corporation;
   SAMSUNG TELECOMMUNICATIONS
10 AMERICA, LLC, a Delaware
   limited liability company,
11
                Defendants.
12 _____/
13
14      VIDEOTAPED DEPOSITION OF COOPER WOODRING
15            Redwood Shores, California
16             Friday, August 5, 2011
17       (HIGHLY CONFIDENTIAL ATTORNEYS' EYES
            ONLY PORTIONS BOUND SEPARATELY)
18
19 Reported By:  CAROL S. NYGARD, CSR No. 4018
                Registered Merit Reporter
20
21
22
23
24
25

1  and in -- in a category like cell phones it's -- just a
2  terribly influential factor.
3      Q.   And that's an assumption that -- that you
4  bring to your opinions in this case; right?
5          MR. MONACH:  Object to the form of the
6  question.
7          THE WITNESS:  You can characterize it as "an
8  assumption" if you want.
9          I think it's based on decades of experience
10 working in the retail environment for a company like
11 J.C. Penney, where we did a lot of studies of how and
12 why people buy what they do based on the appearance of
13 products and importance of design.
14 BY MR. ZELLER:
15     Q.   In other words, that's a viewpoint that you've
16 developed over the years based upon your work in the
17 field, and that's something that's the kind of
18 information and view that you bring to this case when
19 you offer your opinion; right?
20     A.   I would agree with that.
21     Q.   Did you ever ask Apple for any of their
22 internal research as to why consumers purchase iPhones?
23     A.   No.
24     Q.   Is there a reason why you didn't ask?
25     A.   I thought it was self-evident why.

Contains Highly Confidential - Attorneys' Eyes Only Portions

Page 224

1  question.

2        Let me try and rephrase it.

3        Let's first focus on the 087 design patent.

4        And I understand you testified that there's

5  certain things about the 67 design patent or the design

6  there that you can't -- you can't necessarily tell, but

7  even assuming that those are different, I want you to

8  assume that those are still differences.

9        In terms of the overall design that's depicted

10 here in Exhibit 67 in your view is it substantially the

11 same as the 087 design in the eyes and from the

12 perspective of the ordinary observer or -- or purchaser?

13       MR. MONACH:  Vague and --

14       Hang on a second.

15       Vague and ambiguous.  Improper request for

16 opinion based on incomplete hypothetical, lacking

17 foundation, and calling for speculation in light of what

18 you told him and in light of the witness' prior

19 testimony.

20       THE WITNESS:  So my answer would have to be

21 it's impossible to make that determination because

22 you're asking me to ignore the fact that the 087 is

23 claiming a flat surface with an inset rectangular

24 display screen and things like that, and I've already

25 testified I can't tell those things about this Exhibit

1   67, so how can I possibly arrive at a conclusion that
2   the ordinary observer would think the designs are
3   substantially the same?
4           I simply can't ignore claimed elements of the
5   087 to -- to --
6           What you're doing is you're eliminating from
7   the 087 the differences between it and the Exhibit 67
8   and then asking me, well, isn't what's left over the
9   same?
10          Well, sure what's left over is the same, but
11  what's left over is not what's claimed.
12          MR. ZELLER:  You're, again, not following my
13  question.
14          THE WITNESS:  I'm trying.
15          MR. MONACH:  Counsel --
16          Counsel, please don't argue with the witness.
17          I mean, you said you had a couple more
18  follow-up questions.
19          MR. ZELLER:  I'm trying to understand his
20  answer, and he's not --
21          I think he's not answering my question.
22          MR. MONACH:  The answer is quite clear, even
23  though you don't like it.
24          MR. ZELLER:  It has nothing to do with like.
25  It has everything to do with the fact he's not answering

Contains Highly Confidential - Attorneys' Eyes Only Portions

Page 227

1    insufficient evidence.
2             Calling for speculation given the lack of
3    foundation.
4             THE WITNESS:  Repeat the question just one
5    more time.
6             I just want to get it clear, and I --
7    BY MR. ZELLER:
8        Q.   I've been trying to find out if you think that
9    the design that's in Exhibit 67 is substantially the
10   same in the eyes of the ordinary observer and purchaser
11   to the 677 design patent; right?
12            MR. MONACH:  Objection.  Asked and answered.
13            MR. ZELLER:  You're following along so far?
14            MR. MONACH:  Objection.
15            You're asking that question -- it's been asked
16   and answered multiple times.
17            THE WITNESS:  I understood what you said.
18   BY MR. ZELLER:
19       Q.   So my question is, that -- and you've
20   testified so far that you're not certain as to whether
21   or not the 67 -- the Exhibit 67 design has a -- is flat,
22   clear, black-colored, and whether the rectangular
23   display screen is inset; right?
24       A.   Correct.
25       Q.   Is it true that if those four elements are not

Contains Highly Confidential - Attorneys' Eyes Only Portions

Page 228

1  present in the design that we marked as Exhibit 67, it
2  would no longer be substantially the same as the 677
3  design patent to the ordinary observer?
4          MR. MONACH:  Objection.  Vague and ambiguous.
5  BY MR. ZELLER:
6      Q.   Or would it still be substantially the same?
7          MR. MONACH:  Objection.  Vague and ambiguous.
8          Incomplete hypothetical.  Misstates prior
9  testimony to the extent you said it would still be
10 substantially the same.
11         Calling for improper opinion testimony without
12 adequate factual basis being provided.
13         THE WITNESS:  May I repeat your question in my
14 answer to be sure that I have it straight?
15         MR. ZELLER:  Uh-huh.
16         THE WITNESS:  You're asking me if Exhibit
17 67 -- if the design depicted in Exhibit 67 would be
18 substantially the same as the 677 design if it were not
19 flat, not clear, not black-colored, and did not have an
20 inset rectangular display screen?
21     Q.   Right.
22         In other words, it still has a rectangular
23 display screen, but just not inset.
24     A.   And the answer is I don't know, and the reason
25 for the answer is, if it weren't flat, but it were --

Contains Highly Confidential - Attorneys' Eyes Only  Portions

Page 305

1    I, CAROL S. NYGARD, a Certified Shorthand
2  Reporter of the State of California, duly authorized to
3  administer oaths, do hereby certify:
4    That the foregoing proceedings were taken
5  before me at the time and place herein set forth; that
6  any witnesses in the foregoing proceedings, prior to
7  testifying, were duly sworn; that a record of the
8  proceedings was made by me using machine shorthand which
9  was thereafter transcribed under my direction; that the
10 foregoing transcript is a true record of the testimony
11 given.
12   Further, that if the foregoing pertains to the
13 original transcript of a deposition in a Federal Case,
14 before completion of the proceedings review of the
15 transcript was not requested.
16   I further certify I am neither financially
17 interested in the action nor a relative or employee of
18 any attorney or party to this action.
19   IN WITNESS WHEREOF, I have this date
20 subscribed my name:
21      Dated: August 6th, 2011
22
23      _____
24      CAROL S. NYGARD, CSR #4018
25