1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100

9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for Samsung Electronics Co., Ltd.,
   Samsung Electronics America, Inc., and Samsung
14 Telecommunications America, LLC

15                    UNITED STATES DISTRICT COURT

16         NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

17
   APPLE INC., a California corporation,        CASE NO. 11-cv-01846-LHK
18
                 Plaintiff,
19                                              **SAMSUNG'S OPPOSITION TO APPLE'S
            vs.                                 MOTION FOR A PRELIMINARY
20                                              INJUNCTION**
   SAMSUNG ELECTRONICS CO., LTD., a
21 Korean business entity; SAMSUNG
   ELECTRONICS AMERICA, INC., a
22 New York corporation; SAMSUNG               Date: October 13, 2011
   TELECOMMUNICATIONS                          Time: 1:30 pm
23 AMERICA, LLC, a Delaware limited liability  Place: Courtroom 8, 4th Floor
   company,                                    Judge: Hon. Lucy H. Koh
24
                 Defendants.
25                                             **REDACTED PUBLIC VERSION**

26

27

28

02198.51855/4312825.5                                    Case No. 11-cv-01846-LHK

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................... 1

FACTS ................................................................................................................................... 1

I.    The Minimalistic Design Concepts Apple Seeks To Bar Competitors from Using Are Part of the Natural Evolution of Phones ........................................................... 1

    A.    Pre-Smartphone Product Design ...................................................................... 1

    B.    Tablet and Smartphone Design Naturally Evolved In the Direction Apple Asserts Exclusive Rights To Use. ................................................................... 2

    C.    Apple First Raised Its Concerns With Samsung in 2010, Then Filed Suit Almost A Year Later. ................................................................................ 4

ARGUMENT ........................................................................................................................ 5

I.    Apple Is Not Likely to Prevail at Trial. ................................................................... 5

    A.    Apple Is Not Likely to Prevail on the Design Patents It Asserts. ............................ 6

        1.    The D'677 and D'087 Patents Are Anticipated or Obvious. ....................... 6

        2.    The D'677 and D'087 Patents Are Functional And Non-Ornamental. ......... 9

        3.    The D'677 and D'087 Patents Are Not Infringed. ................................... 11

    B.    Apple Is Not Likely to Prevail on the D'889 Patent. ................................... 14

        1.    The D'889 Patent Is Invalid Because It Is Obvious. ................................ 14

        2.    The D'889 Patent Is Invalid Because the Elements Claimed Are Functional. ......................................................................................... 16

        3.    The D'889 Patent Is Not Infringed. ..................................................... 16

    C.    Apple Is Not Likely to Prevail on the '381 Patent. ..................................... 18

        1.    The '381 Patent Requires Claim Construction. ..................................... 18

        2.    The '381 Patent Is Invalid ................................................................. 19

        3.    The '381 Patent Is Unenforceable. ..................................................... 25

        4.    The '381 Patent Is Not Infringed. ....................................................... 26

II.    Apple Has Not Demonstrated Irreparable Harm. ..................................................... 27

    A.    Apple Has Not Met Its Burden of Proving It Will Lose Market Share. ................. 28

B.    The Samsung Products Will Not Cause Loss of Apple's Market Share. ................ 30

    1.    Apple's Sales and Market Share are Increasing. .......................................... 30

    2.    ██████████████████████████████████ ......... 31

    3.    ██████████████████████████████████ ...................... 32

C.    Apple Has Presented No Evidence That Its Goodwill Will Be Harmed. ................ 32

D.    Apple Presents No Evidence That Any Injury Cannot Be Remedied By Damages. ......................................................................................................... 33

E.    Any Showing of Irreparable Harm Is Rebutted. ...................................................... 34

    1.    Apple Has Unreasonably Delayed Seeking a Preliminary Injunction. ........ 34

    2.    Apple's Gamesmanship Belies Its Claim to Irreparable Harm. .................. 37

    3.    Apple's Practice of Licensing Its Patents Demonstrates That Any Injury Is Redressed By a Reasonable Royalty. ........................................... 38

III.    The Balance of Hardships Weighs Against A Preliminary Injunction .............................. 38

IV.    An Injunction Will Not Serve the Public Interest ................................................................ 39

    A.    An Injunction Will Harm Competition and Consumers. .......................................... 39

    B.    ████████████████████████████ .......................................... 40

V.    CONCLUSION .................................................................................................................... 40

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abbott Laboratories v. Sandoz, Inc.,*
544 F.3d 1341 (Fed. Cir. 2008) ........................................................................30

*Abbott Laboratories v. Selfcare, Inc.,*
17 F. Supp. 2d 43 (D. Mass. 1998) ...................................................................35

*Altana Pharma AG v. Teva Pharm. USA, Inc.,*
566 F.3d 999 (Fed. Cir. 2009) ............................................................................5

*Am. Honda Motor Co. v. Carolina Autosports Leasing and Sales, Inc.,*
645 F. Supp. 863 (W.D.N.C. 1986) ...................................................................40

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
239 F.3d 1343 (Fed. Cir. 2001) ....................................................................5, 27

*Amini Innovation Corp. v. Anthony Cal., Inc.,*
439 F.3d 1365 (Fed. Cir. 2006) ..........................................................................9

*Ascend Geo, LLC v. Oyo Geospace Corp.,*
No. H-09-2886, 2009 WL 3735963 (S.D. Tex. Nov. 4, 2009) .........................30

*AstraZeneca LP v. Apotex, Inc.,*
633 F.3d 1042 (Fed. Cir. 2010) ..................................................................5, 9, 33

*Automated Merchandising Sys., Inc. v. Crane Co,*
357 F. App'x 297, 301,302 (Fed. Cir. 2009) ...........................................28, 29,33 34

*Berry Sterling Corp. v. Pescor Plastics, Inc.,*
215 F.3d 1351, 1999 WL 674514 (Fed. Cir. 1999) (table) ................................6

*Bushnell, Inc. v. Brunton Co.,*
673 F. Supp. 2d 1241 (D. Kan. 2009) ...............................................................39

*Calmar, Inc. v. Emson Research, Inc.,*
838 F. Supp. 453 (C.D. Cal. 1993) ...................................................................36

*In re Carletti,*
328 F.2d 1020 (C.C.P.A. 1964) .........................................................................10

*Child Craft Indus., Inc. v. Simmons Juvenile Prods. Co., Inc.,*
990 F. Supp. 638 (S.D. Ind. 1998) ....................................................................12

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.,*
908 F.2d 951 (Fed. Cir. 1990) ..........................................................................28

*Citibank, N.A. v. Citytrust,*
756 F.2d 273 (2d Cir. 1985) .............................................................................35

*Durling v. Spectrum Furniture Co.,*
  101 F.3d 100 (Fed. Cir. 1996)............................................................................8

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006) .................................................................................28, 33

*Edge Wireless, LLC v. U.S. Cellular Corp.,*
  312 F. Supp. 2d 1325 (D. Or. 2003)....................................................................12

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
  543 F.3d 665 (Fed. Cir. 2008)........................................................................6, 11

*Fisher-Price, Inc. v. Safety 1st, Inc.*
  109 F. App'x 387, 391 (Fed. Cir. 2004).............................................................17

*Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.,*
  335 F. Supp. 2d 278 (S.D.N.Y. 1971) ...............................................................35

*Gorham Co. v. White,*
  81 U.S. 511 (1841) ........................................................................................6, 11

*Graceway Pharms., LLC v. Perrigo Co.,*
  722 F. Supp. 2d 566 (D.N.J. 2010) ...................................................................39

*Halliburton Energy Servs. v. M-I LLC,*
  514 F.3d 1244 (Fed. Cir. 2008) ........................................................................19

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,*
  49 F.3d 1551 (Fed. Cir. 1995) .............................................................34, 35, 38

*Hologic, Inc. v. Senorx, Inc.,*
  No. C-08-00133-RMW, 2008 WL 1860035 (N.D. Cal. Apr. 25, 2008) ...................28

*Honeywell Int'l, Inc. v. United States,*
  609 F.3d 1292 (Fed. Cir. 2010) ........................................................................26

*Ill. Tool Works, Inc. v. Grip-Pak, Inc.,*
  906 F.2d 679 (Fed. Cir. 1990) ..........................................................................38

*Int'l Seaway Trading Corp. v. Walgreens Corp.,*
  589 F.3d 1233 (Fed. Cir. 2009)....................................................................6, 9, 12

*Inwood Labs., Inc. v. Ives Labs., Inc.,*
  456 U.S. 844 (1982) .........................................................................................9

*John Mezzalingua Assoc., Inc. v. Pace Elecs., Inc.,*
  No. 10-64, 2010 WL 1839305 (D. Minn. May 5, 2010) .......................................34

*Junker v. Eddings,*
  396 F.3d 1359 (Fed. Cir. 2005) ........................................................................10

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,*
  997 F.2d 1444 (Fed. Cir. 1993) ........................................................................12

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

*Kimberly-Clark Worldwide, Inc. v. Tyco Healthcare Group LP,*
   635 F. Supp. 2d 870 (E.D. Wis. 2009) ..........................................................31, 33

*Lear, Inc. v. Adkins,*
   395 U.S. 653 (1969) ..............................................................................................39

*Lee v. Dayton-Hudson Corp.,*
   838 F.2d 1186 (Fed. Cir. 1988) ........................................................................6, 10

*Litton Sys. Inc. v. Sundstrand Corp.,*
   750 F.2d 952 (Fed. Cir. 1984) ..............................................................................38

*Litton Sys., Inc. v. Whirlpool Corp.,*
   728 F.2d 1423 (Fed. Cir. 1984) ............................................................................11

*M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha,*
   250 F. Supp. 2d 91 (E.D.N.Y. 2003) ....................................................................12

*In re Mann,*
   861 F.2d 1581 (Fed. Cir. 1988) ............................................................................14

*McDavid Knee Guard, Inc. v. Nike USA, Inc.,*
   683 F. Supp. 2d 740 (N.D. Ill. 2010) ..............................................................30, 31

*Minka Lighting, Inc. v. Craftmade Intern., Inc.,*
   No. Civ.A. 3:00-CV-888-X, 2001 WL 36186585 (N.D. Tex. May 16, 2001) ........11

*N. Am. Vaccine Inc. v. Am. Cyanamid Co.,*
   7 F.3d 1571 (Fed. Cir. 1993) ................................................................................19

*Nanoexa Corp. v. Univ. of Chicago,*
   No. 10-CV-2631-LHK, 2010 WL 3398532 (N.D. Cal. Aug. 27, 2010) ..................29

*Novozymes A/S v. Danisco A/S,*
   No. 10-cv-251, 2010 WL 3783682 (W.D. Wis. Sept. 24, 2010) ..................34, 35, 37

*Nutrition 21 v. United States,*
   930 F.2d 867 (Fed. Cir. 1991) ....................................................................28, 29, 34

*OddzOn Prods., Inc. v. Just Toys, Inc.,*
   122 F.3d 1396 (Fed. Cir. 1997) ............................................................................11

*Panduit Corp. v. Band-It-Idex, Inc.,*
   No. 00-C-1461, 2000 WL 1121554 (N.D. Ill. June 27, 2000) ..............................35

*Phonometrics, Inc. v. N. Telecom. Inc.,*
   133 F.3d 1459 (Fed. Cir. 1998) ............................................................................26

*Precision Links, Inc. v. USA Prods. Group, Inc.,*
   No. 3:08cv576, 2009 WL 3076114 (W.D.N.C. Sept. 22, 2009) ..................32, 35, 37

*Quad/Tech, Inc. v. Qi Press Controls BV,*
   701 F. Supp. 2d 644 (E.D. Pa. 2010) ..............................................................29, 33

*Red Bend Ltd. v. Google, Inc.,*
No. 09-cv-11813, 2011 WL 1288503 (D. Mass. Mar. 31, 2011)............................32

*Reebok Int'l Ltd. v. J. Baker, Inc.,*
32 F.3d 1552 (Fed. Cir. 1994)............................33

*Richardson v. Stanley Works, Inc.,*
597 F.3d 1288 (Fed. Cir. 2010)............................6, 11

*Seed Lighting Design Co., Ltd. v. Home Depot.,*
No. C04-2291, 2005 WL 1868152 (N.D. Cal. Aug. 3, 2005)............................16

*Sundance, Inc. v. DeMonte Fabricating, Ltd.,*
No. 02-73543, 2007 WL 37742 (E.D. Mich. Jan. 4, 2007)............................30

*Tate Access Floors v. Interface Architectural,*
132 F. Supp. 2d 365 (D. Md. 2001)............................32

*Tennant Co. v. Hako Minuteman, Inc.,*
651 F. Supp. 945 (N.D. Ill. 1986)............................35

*Texas Digital Sys. v. Telegenix, Inc.,*
308 F.3d 1193 (Fed. Cir. 2002)............................26

*Therasense, Inc. v. Becton, Dickinson and Co.,*
No. 2008-1511, 2011 WL 2028255 (Fed. Cir. May 25, 2011)............................26

*Thome v. U.S.F.D.A.,*
No. 11-cv-676, 2011 WL 856290 (N.D. Cal. Mar. 9, 2011)............................27

*Tiger Direct, Inc. v. Apple Computer, Inc.,*
No. 05-21136-CIV, 2005 WL 1458046 (S.D. Fla. May 11, 2005)............................36

*Titan Tire Corp. v. Case New Holland, Inc.,*
566 F.3d 1372 (Fed. Cir. 2009)............................5, 6, 8

*Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.,*
491 F. Supp. 2d 871 (D. Minn. 2007)............................33

*Travel Tags, Inc. v. UV Color, Inc.,*
690 F. Supp. 2d 785 (D. Minn. 2010)............................29, 30

*Tyco Industries, Inc.   v. Tiny Love, Ltd.,*
914 F. Supp. 1068 (D.N.J. 1996)............................18

*Voile Mfg. Corp. v. Dandurand,*
551 F. Supp. 2d 1301 (D. Utah 2008)............................39

*Wellman, Inc. v. Eastman Chem. Co.,*
642 F.3d 1355 (Fed. Cir. 2011)............................25

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008)............................5, 27

*Wyers v. Master Lock Co.,*
  616 F.3d 1231 (Fed. Cir. 2010) .................................................................................39

*Yamashita v. Wilbur-Ellis Co.,*
  No. C 06-01690-WHA, 2006 WL 1320470 (N.D. Cal. May 15, 2006)....................39

*Z-Man Fishing Prods., Inc. v. Renosky,*
  No. 2:11-cv-428, 2011 WL 1930636 (D.S.C. May 17, 2011) ...................................32

### Statutes

35 U.S.C. § 102(b) ...................................................................................................................23

35 U.S.C. § 171 ..........................................................................................................................9

### Other

Manual of Patent Examining Procedures § 1504.02 ...................................................................6

Manual of Patent Examining Procedures § 1503.02 .................................................................16

Case No. 11-cv-01846-LHK

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1

**Explanation of Citation Forms**

2      Citations to "Ex. __" are citations to exhibits to the Declaration of Sara Jenkins in Support

3  of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, submitted herewith.

4      Citations to "Bederson Dec. __" are citations to the Declaration of Benjamin Bederson in

5  Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, submitted

6  herewith.

7      Citations to "Fidler Dec. __" are citations to the Declaration of Roger Fidler in Support of

8  Samsung's Opposition to Apple's Motion for a Preliminary Injunction, submitted herewith.

9      Citations to "Godici Dec. __" are citations to the Declaration of Nicholas P. Godici in

10  Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, submitted

11  herewith.

12      Citations to "Johnson Dec. __" are citations to the Declaration of Jeffrey Johnson in

13  Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, submitted

14  herewith.

15      Citations to "Sherman Dec. __" are citations to the Declaration of Itay Sherman in Support

16  of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, submitted herewith.

17      Citations to "van Dam Dec. __" are citations to the Declaration of Andries Van Dam in

18  Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, submitted

19  herewith.

20      Citations to "Wagner Dec. __" are citations to the Declaration of Michael Wagner in

21  Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, submitted

22  herewith.

23      Citations to "Am. Compl. __" are citations to Apple Inc.'s Amended Complaint for Federal

24  False Designation of Origin and Unfair Competition, Federal Trademark Infringement, Federal

25  Trade Dress Dilution, State Unfair Business Practices, Common Law Trademark Infringement,

26  Unjust Enrichment, and Patent Infringement, filed June 16, 2011.   (D.N. 75.)

27

28

1    Citations to "Counterclaims __" are citations to Samsung Entities' Answer, Affirmative

2  Defenses, and Counterclaims to Apple Inc.'s Amended Complaint, filed June 30, 2011.   (D.N.

3  80.)

4    Citations to "Mot. __" are citations to Apple Inc.'s Motion for Preliminary Injunction, filed

5  on July 1, 2011.   (D.N. 86.)

6    Citations to "Zhang Dec. __" are citations to the Declaration of Patrick Zhang in Support

7  of Apple Inc.'s Motion for Preliminary Injunction, filed on July 1, 2011.   (D.N. 87.)   The

8  exhibits to the Zhang Declaration are contained in documents Apple previously filed as D.N. 87-1

9  through 87-52.

10    Citations to "Twiggs Dec. __" are citations to the Declaration of Sissie Twiggs in Support

11  of Apple Inc.'s Motion for Preliminary Injunction, filed on July 1, 2011.   (D.N. 89.)   The

12  exhibits to the Twiggs Declaration are contained in documents Apple previously filed as D.N. 89-

13  1 through 89-20.

14    Citations to "Woodring Dec. __" are citations to the Declaration of Cooper Woodring in

15  Support of Apple Inc.'s Motion for Preliminary Injunction, filed on July 1, 2011.   (D.N. 90.)

16  The exhibits to the Woodring Declaration are contained in documents Apple previously filed as

17  D.N. 90-1 through 90-22.

18    Citations to "Balakrishnan Dec. __" are citations to the Declaration of Ravin Balakrishnan

19  in Support of Apple Inc.'s Motion for Preliminary Injunction, filed on July 1, 2011.   (D.N. 91.)

20  The exhibits to the Balakrishnan Declaration are contained in documents Apple previously filed as

21  D.N. 91-1 through 91-20.

22    Citations to "Lutton Dec. __" are citations to the Declaration of Richard Lutton in Support

23  of Apple Inc.'s Motion for Preliminary Injunction, filed on July 21, 2011.   (D.N. 129.)

24

25

26

27

28

**INTRODUCTION**

Apple has moved to preliminarily enjoin four of Samsung's leading Android-based mobile devices: the Infuse 4G, the Galaxy S 4G, the Droid Charge, and the Galaxy Tab 10.1 (collectively the "Samsung Products").   Ignoring Samsung's long history of innovation in mobile devices that predates Apple's, and disregarding a significant amount of dead-on prior art disclosing the very basic and functional designs that Apple touts as its own, Apple improperly seeks to obtain through litigation what it cannot accomplish in the marketplace:   perpetual domination of the smartphone and mobile computer market.   Apple's motion must be denied because Apple is unlikely to succeed on the merits of its invalid and not infringed patent claims, and, after significant delay in raising its copying charges, cannot prove irreparable harm.   In addition, the balance of harms and public interest factors favor Samsung because an injunction would hurt consumer choice and ██████████████████████████████████████████████████████.

**FACTS**

**I.**   **The Minimalistic Design Concepts Apple Seeks To Bar Competitors from Using Are Part of the Natural Evolution of Phones.**

A.   Pre-Smartphone Product Design

Samsung, a mobile phone pioneer since the inception of the industry, introduced its first multi-function "smartphone" in 1999.   Throughout the years, Samsung has invested billions of dollars in research and development, including over $35 billion across its electronics product lines from 2005 to 2010 alone.   (Counterclaims ¶23.)   Samsung has over 8,500 employees engaged in cutting-edge telecommunications research and development projects.   (*Id.* at ¶20.)   The exceptional creativity and ingenuity of these thousands of Samsung engineers around the world has led to a number of ground-breaking innovations in the mobile phone industry.   (*Id.* at ¶27.)

Samsung has introduced many revolutionary, patented mobile phone products.   For example, in 2000, Samsung introduced the first cell phone with MP3 audio playback functionality. (Ex. A.)   In 2001, Samsung was at the vanguard of reducing mobile phone size, breaking the 1 cm technological barrier that sparked the ultra-portable mobile phone revolution and spurred competitors to slim down their designs.   (Ex. B.)   As users began requesting additional features

1  to be included on their cell phones, in 2004, Samsung announced the first mobile phone that

2  supported digital multimedia broadcast via satellite.   (Ex. C.)    To enhance multimedia viewing,

3  display screen size began to increase, leading to the natural evolution of the modern smartphone: a

4  prominent rectangular display screen covered with glass with borders above and below that have

5  minimal additional features.   (*See* Sherman Dec. ¶¶92-97.)   This, in turn, has led to competition

6  for the best display screen technology, and in 2008, Samsung released the industry's first high

7  resolution organic LED (AMOLED) display for a mobile phone.   Samsung's innovative

8  contributions to the mobile device industry have won more than 50 awards between 2007 and the

9  beginning of 2011 alone.   (Counterclaims ¶28.)

10    B.    Tablet and Smartphone Design Naturally Evolved In the Direction Apple Asserts
                Exclusive Rights To Use.

11      Long before Apple claims to have invented a design for a thin, rectangular flat tablet

12  computer, dominated by a display screen, similar designs were part of popular culture and

13  commercial practice, as the examples below illustrate:



24  (Exs. D &E; Sherman Dec. ¶¶24-30.)

-2-                         Case No. 11-cv-01846-LHK
**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1   Similarly, Apple was far from the first company to design a rectangular-shaped phone with

2   rounded corners, a dominant display screen with narrow borders, a horizontally oriented and

3   centered rounded speaker slot, and minimal or non-existent physical navigation buttons:

4

5

6

7      

8

9

10

11   **Sharp Registration**    **LG Chocolate**    **LG Prada**    **Samsung Application**    **Apple iPhone**

12   **JP124638**    **Announced**    **Announced**    **KR 30-2006-0050769**    **Announced**
     **Issued June 6, 2005**    **March 2006**    **September 2006**    **Applied for**    **January 2007**
     **December 20, 2006**

13

14   More than ██████ ████ ███████ of the asserted D'677 and D'087

15   patents, Sharp obtained a Japanese design patent disclosing all of those elements.   (Sherman Dec.

16   Ex. P.)  ██████████████████████—and nearly a year before Apple

17   announced the iPhone—LG Electronics announced the LG Chocolate phone.   (Sherman Dec. ¶86;

18   Ex. R.)   With its rectangular shape, evenly rounded corners, almost uniformly flat black surface,

19   prominent display screen centered between narrow side borders, single physical navigation button

20   below the screen, and rounded, and horizontally-oriented and -centered speaker slot, the LG

21   Chocolate disclosed virtually all of the features Apple claims in the D'677 and D'087 patents.

22   (*Compare* Apple Mot. at 10 & 13 *with* Sherman Decl. ¶¶86-87.)

23   Shortly thereafter, LG invoked many of these same design features in the LG Prada

24   touchscreen phone, which featured a more dominant display screen and more streamlined

25   navigational feature than the Chocolate.   In September 2006, LG submitted a prototype of the LG

26   Prada to the iF Design Awards, which awarded it the top prize for product design in the

27   telecommunications category.   (Ex. F.)   By December 2006, the month before the iPhone was

28   unveiled, images of the LG Prada were available on the Internet.   (Ex G.)

1     Meanwhile, Samsung was also working toward developing a rectangular smartphone with

2 rounded edges dominated by a large screen with narrow side borders, an upper speaker slot above

3 the screen, and a center navigation button below—the F700.   In December 2006, before Apple

4 released any images of the iPhone, Samsung filed a design patent in Korea for the F700 design:

5 (Sherman Dec. ¶103; Ex. EE; *see also* (Ex. H.)

6     In January 2007, less than a month after LG announced the LG Prada and pictures of it

7 were leaked to the Internet, and less than a month after Samsung filed for a design patent on the

8 F700, Apple announced the iPhone, which was released commercially in June 2007.   (Am.

9 Compl. ¶ 22.)   Given the overall similarities to the LG Prada, the head of the LG Mobile Handset

10 R&D Centre stated:   "We consider that Apple copied the Prada phone after the design was

11 unveiled when it was presented in the iF Design Award and won the prize in September 2006."

12 (Ex. I.)   Others noted that the two phones were "very similar" in appearance, and seemed

13 "separated at birth."   (Exs. J & K.)   Some, mistaken about which phone came first, wrongly

14 declared the LG Prada to be an "iPhone Knockoff" with a design that was "flagrantly an iPhone."

15 (Ex. L.)

16     C.     Apple First Raised Its Concerns With Samsung in 2010, Then Filed Suit Almost A
              Year Later.

17

18     In July 2010, more than three years after Samsung announced the F700, Apple first

19 complained to Samsung about the designs of its smartphones.   (Am. Compl. ¶80; Lutton Dec. ¶2.)

20 ████████████████████████████████████████████████████

21 ██████████████████████████████████████████████████

22 ████████████████████████████████████    (Ex. M; Lutton Dec. ¶¶4-7.)

23 ████████████████████████████████████████████████

24 ██████████████████████████████████████████████

25 ████████████████████████████████    (Ex. M. at 48:2-49:21 & 57:17-58:21; Ex. N.)   ████

26 ██████████████████████████████████████████████████████

27 ████████████████████    (Ex. M. at 251:4-16.)   ████████████████████████████

28 ██████████████████████████████████    Apple filed its first complaint in this action

on April 15, 2011, and then waited an additional two-and-half months before moving for a preliminary injunction on July 1, 2011.   (Ex. M at 255:14-20.)

## ARGUMENT

A preliminary injunction is an extraordinary form of relief.   *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009).   One can issue only if the movant proves: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."   *Id.* at 1375-76 (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).   Apple fails to satisfy any of these factors.

## I.     Apple Is Not Likely to Prevail at Trial.

"For a patentee to establish that it is likely to succeed on the merits, it 'must demonstrate that it will likely prove infringement of one or more claims of the patents-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer."   *Astra-Zeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).   "A preliminary injunction should not issue if an alleged infringer raises a substantial question regarding either infringement or validity, i.e., the alleged infringer asserts an infringement or invalidity defense that the patentee has not shown lacks substantial merit."   *Id.*

In opposing a preliminary injunction motion on the ground of invalidity, the defendant does not face the clear and convincing evidence burden of proof applicable at trial.   *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1006 (Fed. Cir. 2009).   Instead, "[v]ulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial."   *Id.* (quoting *Amazon.com*, 239 F.3d at 1359)).   A preliminary injunction is therefore improper if Samsung shows merely a "substantial question of invalidity."   *Id.*   Once Samsung presents evidence that the patents are invalid, Apple bears the burden of "responding with contrary evidence" and "persuad[ing] the court that, despite the challenge presented to validity, [Apple] nevertheless is likely to succeed at trial on the validity issue."   *Titan Tire*, 566 F.3d at 1377.

A.     Apple Is Not Likely to Prevail on the Design Patents It Asserts.

Design patents protect only ornamental features of a product's design.   *Gorham Co. v. White*, 81 U.S. 511, 528 (1841).   They do not protect general concepts.   *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 215 F.3d 1351, 1999 WL 674514, at *6 (Fed. Cir. 1999) (unpublished). Nor do they protect functional features; that is the province of utility patents.   *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010).   "If the patented design is primarily functional rather than ornamental, the patent is invalid."   *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988).   Whether designs are substantially the same is determined from the perspective of a hypothetical "ordinary observer," who is assumed to have familiarity with all relevant prior art and who considers the accused design "giving such attention as a purchaser usually gives."   *Gorham*, 81 U.S. at 528; *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).

The hypothetical "ordinary observer" standard is the touchstone for determining infringement (comparing accused product to patented design), as well as invalidity due to anticipation (comparing patented design to prior art) and obviousness (comparing patented design to design one of ordinary skill in the relevant art would have found obvious based on prior art at the time of invention or a year before the patent application was filed, whichever comes later). *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) (anticipation); *Titan Tire*, 566 F.3d at 1380-81 (obviousness); *see also* Manual of Patent Examining Procedures § 1504.02 (citing 35 U.S.C. § 102).   Thus, whether determining infringement, anticipation or obviousness, "[m]inor variations in the [design] are insufficient to preclude a finding of anticipation because they do not change the overall visual impression of the [design]."   *Int'l Seaway*, 589 F.3d at 1243.

1.     The D'677 and D'087 Patents Are Anticipated or Obvious.

Apple broadly construes the two iPhone design patents to essentially cover all black rectangular phones that have a dominant display screen covered by a flat surface.   (Mot. at 8, 11-12.)   Yet every element of these design patents is disclosed by the prior art, many in combination with each other.   Incredibly, Apple never disclosed the most relevant of the prior art to the Patent

1    Office during the prosecution of either of its design patents.   The similarity of these earlier

2    designs to the D'677 and D'087 is striking, particularly when compared to the accused Samsung

3    phones, which are more different from Apple's patents than Apple's patents are from the prior art.

4    As Apple's own expert conceded, the design disclosed in Sharp's Japanese design registration

5    1241638 for a rectangular phone with equally rounded corners, a display screen centered in the

6    front surface with narrow side borders, and more substantial upper and lower borders, with a

7    horizontally oriented and centered speaker slot and no other ornamentation is substantially the

8    same design to an ordinary observer as the D'087 and D'677 patents.   (Ex. O at 207:10-18 ("[I]t

9    certainly is --substantially the same in the eyes of the ordinary observer of at least one

10   embodiment of the 087."); 212:4-213:22.)[1]

    

**JP 1241638**          **D'677**          **D'087**          **Galaxy S 4G**          **Infuse 4G**

---

[1]    Following suggestive speaking objections from Apple's lawyer, Mr. Woodring later sought
to qualify his opinion to note some points that were not identical, but these are of little
significance to an ordinary observer.   (Ex. O at 207:10-208:21.)   For example, the radius of the
corners in the prior art is sharper, but that does not "carry sufficient weight to alter the overall
impression" of the design.   (Woodring Dec. ¶¶26 & 41.)   ███████████████████████
███████████████████████████████████████   (Ex. P at 210:9-14.)   In addition, although the screen of the JP
1241638 design slopes slightly at the top and bottom edge, this effect is subtle and does not
change the teaching of the design or the overall impression of the design.   (Ex. O at 228:16-229:3;
237:18-238:16.)   ██████████████████████████████████████████   (Ex.
P at 211:1-10; Ex. O at 176:19-177:4.)

To the extent that any significant difference remains between JP 1241638 and D'677 and D'087, combining elements of the prior art to create a design substantially similar to Apple's would have been obvious for the reasons explained by Itay Sherman, who (unlike Apple's Mr. Woodring) has designed mobile phones.   (Sherman Dec. ¶¶7-9; Ex. O at 42:7-10.)   Adding a flat black front surface was obvious.   (Sherman Dec. ¶¶86-89.)   Indeed, it was disclosed in the prior art of the LG Chocolate, as well as other smartphones developed before the iPhone was unveiled.   (Sherman Dec. ¶¶87, 88 & 103 (analyzing the Chocolate, LG Prada, and F700 phones).)   As Mr. Woodring likewise conceded, using black for mobile devices has long been commonplace and obvious.   (Ex. O at 58:19-62:8.)   Because "one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design," the D'677 and D'087 are invalid as obvious.   *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (holding once the Court has a single reference that is "basically the same" as the claimed design, other references "may be used to modify it to create a design that has the same overall visual appearance as the claimed design"); *see also Titan Tire*, 566 F.3d at 1380-81.

Two additional prior art Japanese design registrations -- registration 1009317 for a cell phone, which was issued on February 20, 1998, and registration 1241383 for a portable information terminal – bolster this conclusion, as the following images show:



JP 1241383        JP 1009317        D'677        Galaxy S 4G        Infuse 4G

(Sherman Dec. ¶¶100, 101.)   Like the JP 1241638, these two designs show a rectangular device with equally rounded corners, a display screen centered in the front surface with narrow side borders, and more substantial upper and lower borders, with little other ornamentation.   Although

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1  the Japanese designs, like the two Samsung phones, lack the center button, Apple claims that is

2  optional in the D'677 and certain variations of the D'087.   Moreover, ████████████████████

3  ████████████████████████████████████████████ (Ex. Pat 211:1-10; Ex. O at

4  250:17-20.)   These minor differences cannot establish the novelty of the D'677 and D'087

5  patents.   *See Int'l Seaway*, 589 F.3d at 1243.   This sampling of prior art "raise[s] a substantial

6  question regarding …validity" of the D'677 and the D'087 designs sufficient to defeat Apple's

7  motion, *Astra-Zeneca*, 633 F.3d at 1050, particularly because Apple never disclosed the JP

8  1241638, JP 1009317, and JP 1241383 designs in connection with the prosecution of these

9  patents.   (*See* Exs. Q & R.)

10          2.   <u>The D'677 and D'087 Patents Are Functional And Non-Ornamental.</u>

11      Apple's designs are not protectable for the additional, independent reason that they are not

12  ornamental. █████████████████████████████████████████████████████

13  ████████ (Ex. P at 318:22-319:36.)   But design patent law protects only ornamental design.   35

14  U.S.C. § 171 ("Whoever invents any new, original and ornamental design for an article of

15  manufacture may obtain a patent therefor, subject to the conditions and requirements of this

16  title."); *Richardson*, 597 F.3d at 1293-94.   The remaining "necessary ornamentation [and]

17  features" of Apple's designs is, by definition, functional—that is, "essential to the use or purpose

18  of the article" or "affect[] the cost or quality of the article"—and are not protected by design

19  patent law.   *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006)

20  (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 (1982)).

21      Even Apple's lack of ornamental design serves a function purpose: it enhances the

22  functionality of the screen display by not distracting from it and by providing a contrasting border

23  against which the screen's content is more easily viewed.   In the words of Apple's principal

24  designer, Jonathan Ive, in "the iPhone, everything defers to the display.   A lot of what we seem to

25  be doing in a product like that is actually getting design out of the way."   (Ex. S.)   ████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████ (Ex. N at 150:25-

28  151:19; Sherman ¶¶44-45 & 124; Am. Compl. ¶34.)   Because the claimed iPhone designs are

1   functional and not ornamental, they are invalid.   *Lee*, 838 F.2d at 1188 (quoting *In re Carletti*,

2   328 F.2d 1020, 1022 (C.C.P.A. 1964)).

3   Further ████████████████████████████████████

4   ████████████████████████████████████████████████

5   ████████████████████████████████████ all of the major elements (as defined by

6   Apple) of the D'677 and D'087 patents are primarily functional.   (*See* Ex. P at 163:5-13 &

7   208:16-19; Sherman Dec. ¶¶106-125 & 173-74.)   By way of example:

| | |
|---|---|
| Rectangular shape | ████████████████████████████ |
| | ████████████████ (Ex. O 157:25-158:12; 28:2-21; Sherman Dec. ¶¶111-12.) |
| Rounded corners | Avoid snagging on clothing and bags, or injuring the user.   (Sherman Dec. ¶ 39); *see also Junker v. Eddings*, 396 F.3d 1359, 1364 (Fed. Cir. 2005) ("[E]vidence regarding rounded edges . . . suggests that these edges had the functional purpose of preventing surgical gloves from snagging."). |
| Placement of the rounded speaker on the upper portion of the front surface above the display screen | This placement serves to align the speaker most naturally with the ear while the phone is being cradled in its upright position.   It corresponds to the location of the traditional placement of the speaker since the very first telephone handsets. |
| Horizontal slot shape of speaker | Enhances sound quality, preserves structural integrity, and does not interfere with the size of the display screen.   (Sherman Dec. ¶¶121 & 123.) |
| Black color and borders around the screen | These hide components and protect the display screen.   (Sherman Dec. ¶113.) ████████████ ████████████████████████ (Ex. P at 220 24-221:2), Ex.O at 121:4-123:6.) |
| Bezel | Attaches front surface of 4 to back surface of phone.   (Sherman Dec. ¶173.) |
| Lack of significant ornamentation | Prevents the user from getting distracted from the screen, which is the central point of interaction with the device.   (Sherman Dec. ¶124.) |

23   Thus, the only arguably "ornamental" aspects of the claimed designs are the specific embodiments

24   of each element—the precise aspect ratio of the screen; the specific curvature and relative

25   thickness of the bezel; the exact length, styling, and vertical placement of the speaker.   A slavish

26   copy would mimic these choices; Samsung's phones do not.   (Sherman Dec. ¶¶126-29 & 175-83.)

27   If Apple claims these are minor aspects, and variations are not noticed by consumers, then the

28   designs are primarily functional and thereby invalid.   Alternatively, if Apple claims these are

major aspects of the design, the Samsung products depart substantially, and there is no infringement.

### 3. The D'677 and D'087 Patents Are Not Infringed.

Apple must show that the ordinary observer, familiar with the prior art, would view the Samsung Galaxy S 4G and the Infuse 4G as "substantially the same" as the non-functional portions of D'677 or the D'087 designs, such that he mistakenly would "purchase one supposing it to be the other."[2]   By ignoring functionality limitations and the most relevant art, Apple fails to meet its burden.   (*See also* Samsung's Motion to Exclude Opinions of Cooper Woodring.)

As explained above, any non-functional aspects of the iPhone design lie at most in what Apple and Mr. Woodring claim are "minor" details: the width of the borders, the size of the speaker and the shape of the bezel.   (Mot. at 10 & 13.)   Thus, the construction of the D'677 and D'087 patents must be limited to the specifics of these ornamental features, none of which is similar to the Samsung products.   Further, such a narrow construction is warranted because the field of prior art of the D'677 and D'087 is crowded with references claiming rectangular, flat screens, rounded edges, and borders around the center screen.   *Egyptian Goddess*, 543 F.3d at 676 (where "a field is crowded with many references relating to the design of the same type of appliance, we must construe the range of equivalents very narrowly") (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)); (Sherman Dec. ¶¶83-105).

Ordinary observers "are presumed to accord an article they are planning to purchase at least some level of discernment, although the sophistication and degree of that review will vary with the type of product at issue."   *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 2001 WL 36186585, at *12 (N.D. Tex. May 16, 2001).   The fact that the accused product is expensive, and not an "impulse purchase," is a significant factor in determining design patent infringement.   *See*

_____

[2]   *Gorham*, 81 U.S. at 528; *Egyptian Goddess*, 543 F.3d at 683; *Richardson v. Stanley Works, Inc.*, 597 F.3d at 1294 (if design contains some ornamental aspects, "it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article"); *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.").

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1   *Child Craft Indus., Inc. v. Simmons Juvenile Prods. Co., Inc.*, 990 F. Supp. 638, 643-44 (S.D. Ind.

2   1998).   In other contexts, courts have recognized the obvious—that consumers purchasing

3   electronics for hundreds of dollars are sophisticated, take care in making their purchases, and have

4   knowledge of the range of products under consideration.   *Edge Wireless, LLC v. U.S. Cellular*

5   *Corp.*, 312 F. Supp. 2d 1325, 1333 (D. Or. 2003); *M & G Elecs. Sales Corp. v. Sony Kabushiki*

6   *Kaisha*, 250 F. Supp. 2d 91, 104 (E.D.N.Y. 2003) (finding buyers of electronics equipment to be

7   sophisticated).   From the perspective of the ordinary smart phone purchaser, the Galaxy S 4G and

8   Infuse 4G significantly depart from the design patents and would not be confused for the iPhone.

9          As comparison of the Apple and Samsung products reveals,[3]  *see* Exs. T & U, an ordinary

10  observer familiar with the prior art—including rectangular phones with rounded edges, large

11  screens centered between narrow borders, and horizontal speaker slot placed above the screens—

12  would recognize that any purported similarity among the phones derives from common design

13  language for a smartphone; whatever protectable design the iPhone may have, its "overall visual

14  impression" *Int'l Seaway*, 589 F.3d at 1243, is not shared by the Samsung phones.   *See also*

15  *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993) ("It is

16  the appearance of a design as a whole which is controlling in determining questions of

17  patentability and infringement.") (citation omitted).

18         The iPhone also gives an impression of symmetry and balance, which is achieved through

19  the interplay of its components.   The upper and lower borders of the screen appear to be equal to

20  each other in height.   Within each of those borders is a single element centered horizontal and

21  vertically, giving it a sense of space on the front surface of the phone.   The maximum width of

22  both of those elements is equal.   The bezel of the iPhone 3 is uniform in thickness around the

23  
24         [3]   Apple asserts that the iPhones embody the D'677 and D'087 patents and therefore it is
      appropriate to compare those products to Samsung phones.   (Mot. at 9, 12.)   Yet, instead of
25    doing that, Apple presents the Court with manipulated images that make the Samsung phones look
      like they are identical in height to the iPhone.   (*See* Woodring Dec. ¶12 (describing his alteration
26    of phone images by "scaling" them rather than showing them *to scale*); *see also* Exs. V & W.   So
      that the Court can accurately assess the products at issue and evaluate the same evidence that an
27    ordinary purchaser would use, Samsung is submitting to the Court the actual products at issue.
      (Exs. X & DD.)

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

entire phone and its continuous curve echoes the radius of the equal corners of the rectangles.   No surface writing or other symbols of any kind is claimed in either design, and the only paint on the front surface (aside from the base color) is the rounded off square, set symmetrically in the optional lower center button.   (*See* Ex. X-DD; Sherman Dec. ¶¶128, 132-33, 159-60, 165-67 & 175-76.)

In contrast, the Samsung phones have a more dynamic appearance.   They have much more writing on them—the names of the carriers on the top and the stylized Samsung logo on the bottom.   The lower borders also have four symbols.   Rather than being centered vertically in the space of the borders, the design elements (writing, functional buttons, speaker slot) are pressed more to the edges, giving the sense of a bold screen that is taking over all of the surface real estate. The Galaxy S 4G's bezel does not have a continuous curve and has a different thickness on the top and bottom, which both differ from the thickness of the bezel on the sides.   The bezel is also slightly raised above the front surface of the phone, providing additional protection when the phone is placed face down.   Its role is to hold the phone together and protect the screen, not enhance the symmetrical impression of the phone.   Indeed, its metallic color complements the color used on the lower portion of the phone, rather than contrasts with it like the iPhone bezel. Unlike the iPhone, the Galaxy S 4G does not have evenly rounded corners: the radius on the lower corners is larger and less tight than the upper corners.   Similarly, the corners of the Infuse 4G are noticeably tighter than the iPhones, giving it a more sleek shape, as does its lack of a separate bezel element.   Instead of sides formed by a distinct bezel component, the sides of the Infuse 4G are formed by the back surface material bending up toward the front.   (Sherman ¶¶129-30 & 168-68 & 177-83.)

As illustrated in Exhibit U to the Jenkins Declaration, when compared in their particulars, the only details capable of being ornamental in their specific design choices—the product dimensions, screen aspect ratio, styling and vertical placement of the speaker slot within the upper border, radius of rounded corners, bezel design, and written ornamentation—are not substantially similar.   While Apple would like to dismiss these differences as unimportant to the ordinary observer, these differences unquestionably contribute to the overall impression each phone makes.

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

The significance of these differences is further enhanced because the designs are so minimal to start with.   *See In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) (noting if "the design is *changed*, the result is a new and different design; the original design remains just what it was.   Design patents have almost no scope").   As Mr. Woodring testified, in simple designs especially, small differences mean a lot.   (Ex. O 30:8-23.)   And here, they are not spread out over the surface of a large product such as an automobile; they are all contained on a palm-sized piece of equipment that most users spend a significant portion of every day staring at.   If the ordinary observer can look beyond the black rectangular shape with a large screen, as she must given functionality considerations and the crowded field of prior art, these differences are significant.

B.      Apple Is Not Likely to Prevail on the D'889 Patent.

Apple is not entitled to a preliminary injunction based on the D'889 patent.   The D'889 patent is likely to be found invalid, and Apple is also unlikely to prove infringement.

1.      The D'889 Patent Is Invalid Because It Is Obvious.

██████████████████████████████████████████████████   (Ex. P at 90:23-91:6.)   Yet, the design Apple claimed under that patent (Mot. at 14-15) is taught by the prior art, often in combination, and was obvious.   (*See* Sherman Dec. ¶¶24-33.)

The design for a lightweight, thin-form, portable tablet computer was well-documented years before Apple filed the application for the D'889 patent.   (*See* Fidler Dec. ¶¶8-15.)   In addition to the tablet designs shown in popular science fiction before the 1980 (Exs. D & E), a 1981 essay described a portable, high-resolution flat-screen display with controls.   (*Id.* at ¶7.)   In 1994, the publisher Knight-Ridder produced and distributed a video that showed such a device with many of the elements embodied in Apple's later D'889 patent application, including an overall rectangular shape with four evenly rounded corners, a flat clear surface on the front of the device, a rim surrounding the front surface, a substantially flat back panel that rounds up near the edges to form the rim around the front surface, and a thin form factor.   (*Id.* at ¶¶13-15.)   Apple failed to disclose this device to the PTO during the D'889 patent's prosecution, even though Apple knew of its existence directly from Dr. Fidler, with whom Apple worked.   (*Id.* at ¶¶10-11.)

A sampling of the relevant prior art of registered designs further includes U.S. Design Patent No. 337,569, issued on July 20, 1993, entitled "Electronic Notebook for Data Entry"; U.S.

Design Patent No. 461,802, entitled "Tablet" and issued on Aug. 20, 2002, and Japanese Design

Registration Nos. D1142127, D0921403, and D0887388, which all predated the the D'889 patent.



Each of these depicts a thin rectangular tablet shape with rounded corners dominated by a display

screen with little, if any, ornamentation.   (Sherman Dec. ¶¶26-29.)   In addition, the HP Compaq

Tablet PC TC 1000, announced in 2002 also disclosed these elements, plus an unambiguously flat

front surface with a thin rim surrounding the glass front.   (*Id*. at ¶30.)



Collectively, these disclose all of the elements Apple claims in the D'889 patent and render it

obvious.   (Mot. at 14-15.)

2.      The D'889 Patent Is Invalid Because the Elements Claimed Are Functional.

As explained, a design patent may only claim ornamental features, not features that serve a utilitarian function.   But removing all "unnecessary" ornamentation by definition reduces the design to its fundamental functional elements, which are not protectable by a design patent. Indeed, the design of the D'889 is so basic that it is primarily utilitarian.   (*See* Sherman Dec. ¶35.) In addition to the functionality the claimed features of the D'889 shares with the D'677 and D'087, its few additional features are also functional:

| Thin form factor | Reduces the size and weight, increasing the portability of the device |
|---|---|
| Rim surrounding the front surface | Necessary to secure the front surface to the rest of the device. |
| Smooth back panel | Allows the device to lie flat on a table or desk. |

(Sherman Dec. ¶47; *see also id.* at ¶51 (describing other functional attributes).)   This extensive evidence of functionality, like the prior art Samsung has identified thus far, raises a substantial question regarding the validity of the D'889 patent.[4]

3.      The D'889 Patent Is Not Infringed.

Apple is also unlikely to succeed in proving that the Galaxy Tab 10.1 infringes the D'889 patent.   The D'889 patent is not entitled to the broad construction proposed by Apple because the field is crowded with prior art references disclosing all of the elements claimed by the D'889 patent (*compare* Mot. at 15 *with* Sherman Dec ¶¶24-33), and because all of the elements are also functional.   Rather, for the D'889 patent to be even arguably valid, the claim must be limited in its scope.

---

[4]    In addition, the D'889 patent is invalid because it is indefinite and non-enabling.   Figure 2 of the D'889 patent shows a bottom perspective view of the claimed design, while Figure 4 shows a bottom view; yet Figure 2 contains diagonal lines suggesting a transparent or refractory surface while no such lines appear in Figure 4.   (*See* Ex. EE.)   In his deposition, Christopher Stringer, one of the named inventors of the D'889 patent and Apple's corporate designee on the conception and reduction to practice of the asserted design patents. ███████████████████████████████   (*See* Ex. P at 269:20-270:14.)   Such an inconsistency renders the patent indefinite and non-enabling, and thus invalid.   *See* Manual of Patent Examining Procedure § 1503.02 (8th ed., rev. July 2010); *see also Seed Lighting Design Co., Ltd. v. Home Depot*, No. C 04-2291, 2005 WL 1868152, at *8-9 (N.D. Cal. Aug. 3, 2005).

1   For example, Apple claims that the D'889 patent claims "an overall rectangular shape with

2   four evenly rounded corners."   Because the prior art clearly discloses the same, and because the

3   rectangular shape and the rounded corners themselves are functional elements, the D'889 patent is

4   not entitled to such a broad interpretation.   Rather, this element, properly construed, should be

5   limited to a rectangular shape with the specific length to width ratio disclosed in the drawings, and

6   with rounded corners with the specific relative radius of curvature disclosed in the drawings.   The

7   other elements should be similarly narrowly construed:   the rim surrounding the front surface

8   must be a specific fraction of the overall length of the device, the edges of the device must be a

9   half-bullnose shape with a relatively small radius of curvature such that the sides of the device are

10  perpendicular to both the front and back surfaces, and the depth of the device must be a specific

11  fraction of the overall length of the device.   As illustrated in Ex. T, when their actual

12  implementations are compared (as opposed to broad sweeping language), the Galaxy Tab 10.1 is

13  not substantially similar to the D'889 design.

14  Under any claim construction, however, the differences between the Galaxy Tab 10.1 and

15  the design claimed by the D'889 patent are sufficiently significant to establish for the ordinary

16  observer that the Galaxy Tab 10.1 and the D'889 patent are not substantially the same.   The

17  Galaxy 10.1 is approximately half as thick as the D'889 design, has an outer casing made of three

18  parts, not just two, has differently-shaped edges and bezel, and has a metallic lip and substantial

19  ornamentation on the back.   (*See* Ex. T.)   In addition, the Galaxy Tab 10.1's 16:9 display screen

20  aspect ratio significantly differs from the D'889's 4:3 aspect ratio, and the Galaxy Tab 10.1 has

21  noticeably more softly rounded corners.   (Sherman Dec. ¶¶63 & 73-75; Ex. T.)   Apple's

22  dismissal of all differences as "minor" is belied by its own actions.   (Mot. at 15-16.)   ████████

23  ████████████████████████████████████████████ Ex. FF), Apple disclaims

24  their similarity to the D'889 design.[5]   But they are both more similar to the patent than is the

25  Galaxy Tab 10.1.   (Sherman Dec. ¶¶56-61 & 76.)

---

27  [5]   *Fisher-Price, Inc. v. Safesty 1st, Inc.*, 109 F. Appx. 387, 391 (Fed. Cir. 2004)
28  (unpublished) (noting product "embodying" the patented design is used to determine on-sale bar
    (footnote continued)



**D'889**          **iPad**          **iPad2**          **Galaxy Tab 10.1**

Further, in referencing the dramatic reduction in thinness in the Galaxy Tab 10.1, Apple coyly concedes that the thickness of the Galaxy 10.1 does "not appear to be absolutely identical" to the D'889 patent.   (*Id.*)   Apple's own marketing leads off with the point that the iPad2, at 8.8 mm is "thinner" than the first iPad, which was 13.4 mm, or 33% thicker.   (Ex. GG.)   Presumably, Apple wouldn't spend millions of advertising dollars on a point it expected purchasers to regard as "minor."   These differences compel denial of Apple's motion.

C.     Apple Is Not Likely to Prevail on the '381 Patent.

To obtain a preliminary injunction based on the '381 patent, Apple must show that there are no substantial questions as to infringement, validity and enforceability.   As explained below, Apple cannot meet its burden on any of these issues.

1.     The '381 Patent Requires Claim Construction.

Apple's characterization of the '381 patent as "an easily understood patent" is at odds with the facts.   ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████[6]   Apple's expert,

_____

under 35 U.S.C. § 102(b)); *Tyco Industries, Inc. v. Tiny Love, Ltd.*, 914 F.Supp. 1068, 1073 (D.N.J. 1996) (holding over plaintiff's objections that product was commercial embodiment of design where the product was "substantially similar" to the patented design).

[6]   (Ex. HH at 147:10-16████████████████████████████ ████████████████████████     █████████████████████

(footnote continued)

1    Dr. Balakrishnan, did not fare much better when asked to describe the scope of key terms such as

2    "first direction"[7] and "displaying an area beyond the edge of an electronic document."   (Ex. II at

3    86-136; Johnson Dec. ¶¶25, Fig. 1, 48, 55-56.)   ████████████████████████████████

4    ███████████████████████████████████████████████████████████████████████████

5    ████████████████████████████   (Ex. HH at 137:10-16; 138:14-22; 140:23-141:6;

6    145:19-146:10; 185:8-18; 186:6-13; 203:13-25; & 205:3-10; Ex. II at 195:1-4 & 199:6-11.)

7    Finally, as explained below, Samsung's products do not meet the "first direction" and "displaying

8    an area beyond the edge of the document limitations, and there are disputes about the meaning of

9    "electronic document" and "edge" of the document.   Contrary to Apple's arguments, claim

10   construction is required for at least these terms.

11              2.    The '381 Patent Is Invalid

12          Samsung has amassed overwhelming evidence establishing that each and every asserted

13   claim of the '381 patent is invalid.   As described below, there are at least three newly discovered

14   items of dead-on prior art that include every limitation of the asserted claims of the '381 patent.

15   This prior art was not presented to the patent office during any proceeding.   In view of this

16

17   ───────────────────────

18   ██████████████   (objection omitted); 21:24-24:19, 26:20-28:7; 28:24-29:15; 140:23-141:20;
     145:12-17; 146:23-147:16; 188:22-189:9 ██████████████ ████ ███████████████████████

19   ██████████████   (objection omitted); 212:23-213:9.); *N. Am. Vaccine Inc. v. Am. Cyanamid Co.*, 7
     F.3d 1571, 1580 (Fed. Cir. 1993) (Rader, J., dissenting) ("[I]nventors generally have extraordinary
20   skill . . . ."); Ex. II at 145:5-146:2 (Mr. Ording has "more than ordinary skill in the art").

21        [7]   Dr. Balakrishnan's testimony also establishes that the term "first direction" is indefinite.
     Dr. Balakrishnan testified that the "first direction" could encompass a range of directions.   (Ex. II
22   at 101:25-103:6.)   Yet Dr. Balakrishnan could not precisely define at which point a movement
     became two directions rather than just one.   (Ex. II at 103:8-105:16.)   For example, Dr.
23   Balakrishnan testified that moving 45 degrees up and then 45 degrees down was two separate
     directions.   (Ex. II at 91:15-94:1.)   Yet he also testified that a first direction *could* include
24   moving in an arc or in "a rhythmic jagged movement" that is "repetitive in the same direction."
     (Ex. II at 106:23-111:7.)   Such arbitrary distinctions do not provide a "standard for measuring"
25   the degree to which a movement is a first direction and therefore all of the asserted claims are
     invalid for indefiniteness.   *See Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed.
26   Cir. 2008) ("When a word of degree is used the patent's specification must provide some standard
     for measuring that degree' to be definite.").

27

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1   evidence, Apple cannot meet its burden of demonstrating the '381 patent is likely to withstand a

2   challenge to its validity.

3                    (a)        <u>LaunchTile and XNav Anticipate the '381 Patent.</u>

4            In early 2004, ███████████████████████████████████ a team of

5   human computer interface researchers, including Dr. Ben Bederson, a well-respected researcher

6   and an expert in the field of user interface, developed a program called LaunchTile.   (Ex. II at

7   270:17-273:1.)   LaunchTile is a program for touch screen mobile devices that included the same

8   "snap back" or "bounce back" feature that Apple asserts is covered by the '381 patent.   (Bederson

9   Dec. ¶¶5 & 12-17.)   Dr. Bederson and his team also created a variant of the LaunchTile program,

10  called XNav, that was developed using the same code base and contained many of the same

11  features, but was designed to run on different mobile touch-screen devices and operating systems.

12  (*Id*. at ¶¶19-20.)

13          Dr. Bederson and his team presented their work on LaunchTile at two conferences on

14  human-computer interaction in 2005.   (*Id*. at ¶¶6-9, 23-27.)   Dr. Bederson openly discussed his

15  work at these conferences, including the snap feature, with conference attendees without

16  confidentiality or nondisclosure agreements.   (*Id*. at ¶¶8, 23-27.)   Dr. Bederson also submitted a

17  paper on the LaunchTile project, showed a video demonstration of the software, and brought a

18  working prototype to use for live demonstrations with attendees.   (*Id*. at ¶¶6-9, 23-27.)

19  Additionally, videos of LaunchTile and XNav were publicly available online as of May 2005, and

20  a copy of the XNav source code was freely distributed to Microsoft as of August 25, 2005.   (*Id*. at

21  ¶¶28-29.)

22          LaunchTile and XNav both displayed an interactive "World" that consisted of 36

23  application tiles divided into 9 "Zones" of 4 tiles each.   (*Id*. at ¶9.)   A user can zoom into a

24  particular Zone so that the Zone fills the entire screen.   (*Id*. at ¶10.)   The user can tap on an

25  individual tile to launch that application, or swipe across the screen to move to a neighboring

26  Zone.   (*Id*. at ¶¶10-11.)   Using LaunchTile or XNav (a) an electronic document can be translated

27  (e.g., moved or scrolled) across the screen in response to the movement of a finger or other object

28  on the touch screen; (b) if the document is moved beyond its edge, an area beyond that edge will

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1    be displayed; and (c) when the finger or other object is lifted from the touch screen, the document

2    will scroll back so that the area beyond the edge is no longer displayed.   This sequence of events

3    is exactly what Apple contends is covered by the '381 patent.   (Mot. at 18-19.)

4        As detailed in the Declaration of Dr. van Dam and confirmed by the Declaration of Dr.

5    Bederson, LaunchTile and XNav anticipate the asserted claims of the '381 patent in at least three

6    different scenarios discussed below.   Each scenario is illustrated in the videos attached as Exhibits

7    6-11 to Dr. van Dam's declaration.

8        **Email List**:   LaunchTile and XNav included an email inbox, which consisted of a

9    scrollable list of emails.   (Bederson Dec. ¶¶15-17.)   As Apple's expert, Dr. Balakrishnan,

10   concedes, a list of emails, is an electronic document.   (Ex. II at 35:1-36:19; 58:23-61:17.)   The

11   user can scroll up and down the email list by dragging a finger on the touch screen display.

12   (Bederson Dec. ¶16.)   When the bottom of the list is reached, the user may "over pan" beyond the

13   end of the list, causing an area beyond the end of the list to appear.   (*Id*. at ¶17.)   After over

14   panning, if the user lifts his finger, LaunchTile may "snap" or "bounce" the email list back so that

15   the last email is flush with the bottom of the display pane and the area beyond the list is no longer

16   visible.   (*Id*.)   This sequence of events meets every limitation of the asserted claims of the '381

17   patent, as explained in the declaration of Dr. van Dam.   (van Dam Dec. ¶¶35-132, Ex. 2.)   The

18   invalidating sequence of events is also illustrated in the pictures below and in a videos attached as

19   Exhibits 6 & 9 to Dr. van Dam's declaration.

20

21

22     

23

24

25

26

27

28

**8-Tile Grid**:   In this scenario the "electronic document" is a 2x4, 8-tile electronic document within the 36-tile World.   As both the patentee and Apple's expert, Dr. Balakrishnan, concede, 8-tiles are an electronic document.[8]   The limitations of the asserted claims are met in this scenario when the user scrolls to the left across the entire 2x4 document, past an edge of the document to display an area beyond the edge of the document, and then releases his finger, triggering the 2x4 document to bounce back so that the area beyond the edge no longer appears as illustrated below.   This sequence of events meets every limitation of the asserted claims of the '381 patent, as explained by Dr. van Dam and as shown in videos attached as Exhibits 8 & 11 to Dr. van Dam's declaration.

  

**4-Tile Grid**:   The "electronic document" in this third scenario is a 2x2, 4-tile electronic document within the 36-tile World.   As explained by Dr. van Dam and illustrated in videos attached as Exhibits 7 &10 to his declaration, this scenario also meets every limitation of the asserted claims.

In addition to the evidence provided by Dr. Bederson and Dr. van Dam, the testimony of Apple's own expert confirms that LaunchTile meets all of the limitations of the independent

---

[8]   (Ex. II at 28:13-18 ("my definition of an electronic document would be something visually representable on the screen that -- that has a defined set of boundaries."); 151:25-154:18; Ex. JJ; Ex. HH at 20:18-21:3 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ .)

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1    claims of the '381 patent.[9]   A chart comparing Dr. Balakrishnan's admissions regarding

2    LaunchTile's disclosures to the claims is attached as Exhibit SS to the Jenkins Declaration.

3        LaunchTile also anticipates the dependent claims of the '381 patent, as explained by Dr.

4    van Dam.   (van Dam Dec. ¶¶70-103, Ex. 2.)   Indeed, Dr. Balakrishnan concedes that if Claim 1

5    is anticipated, the limitations of at least claims 3, 4, 5, 9, 10, and 16 are also satisfied by

6    LaunchTile.   (*See* Ex. SS.)   Finally, XNav anticipates the claims of the '381 patent for the same

7    reasons LaunchTile does, as explained by Dr. van Dam.   (van Dam Dec. ¶29, Ex. 3.)   For the

8    reasons discussed, LaunchTile and XNav are prior art under 35 U.S.C. § 102(b) and (g).

9                    (b)    Lira Anticipates the '381 Patent.

10       The Lira reference, International Publication Number WO 03/081458 to Luigi Lira, also

11   raises substantial questions as to the validity of the '381 patent.   (van Dam Dec. ¶¶33 & 37, Ex.

12   4.)   Lira was published on October 2, 2003, more than one year before the alleged priority date of

13   the '381 patent, and therefore qualifies as prior art under 35 U.S.C. § 102(b).   (Ex. KK.)       Lira

14   discloses methods for browsing a large electronic document, such as a web page or a column of a

15   web page, using a small touch-screen display, by scrolling through the page using a finger or

16   stylus.   (van Dam Dec. ¶33.)   One such method includes "vertical alignment control," in which

17   columns of the document "snap into alignment with the display window . . . as the user stops

18   scrolling."   (Ex. KK at 15:18-20; van Dam Dec. Ex. 4.)   Thus, if a user scrolls to the left or right

19

20       [9] Dr. Balakrishnan agreed that LaunchTile anticipated the claims, subject to a few irrelevant

21   qualifications.   With respect to the email list scenario, Dr. Balakrishnan testified that he was not
     sure if there was an edge at the end of the list.   Otherwise, he admitted that all of the limitations of

22   claim 1 were disclosed by LaunchTile.   (Ex. II 325:22-330:17.)   As Dr. van Dam confirms, and
     as easily seen in the videos of the email list, the end of the list has an edge.   With respect to the 8-

23   tile scenario, Dr. Balakrishnan's qualification that the blue circle, which is an interactive button
     superimposed over the electronic document (and not a part of the electronic document), did not

24   move with the electronic document, is irrelevant.   (van Dam Dec. ¶50.)   The claim language does
     not require everything visible on the screen to move with the movement of the object on the

25   screen.   Dr. Balakrishnan even admitted that "an electronic document doesn't have to fill the
     entire screen," and that the presence of other elements on the screen did not affect his analysis.

26   (Ex. II at 59:19-62:8.)   Furthermore, XNav, which operates like LaunchTile does not have the

27   blue dot.   (van Dam Dec. Exs. 10 & 11.)   Thus, XNav anticipates under the 2x4-tile scenario.

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

of the column, an area beyond the column will be displayed, and when the user lifts his finger, the column will snap back to fill the entire width of the screen, and the area beyond the column will no longer be displayed.   (Ex. KK at 15:18-31; van Dam Dec. Ex. 4.)   As a user scrolls along a column, first, second, and third portions of the column will be displayed.   (*Id.*)   When the user lifts his finger after displaying the third portion, the view will snap back to the column to display a fourth portion.   (*Id.*)   These portions are illustrated in this annotated version of Figure 14B from the Lira publication:



FIG. 14B

As fully explained in Dr. van Dam's declaration and attached exhibits, Lira anticipates the independent claims, and a majority of the dependent claims, of the '381 patent and renders the

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1  remaining dependent claims obvious.   (*Id.* at ¶¶33 & 37, Ex. 4.)   Thus, Lira, too, raises a

2  substantial question as to the validity of the asserted claims.[10]

(c)      The Reexamination Is Not Relevant.

4      LaunchTile, XNav, and Lira were not considered by PTO in either the original prosecution

5  or the reexamination of the '381 patent.   Furthermore, the LaunchTile and XNav programs could

6  not have been considered during reexamination because they are not patents or printed

7  publications.   37 CFR 1.510.   Thus, the fact that the '381 patent survived a reexamination that

8  was instituted by an unrelated entity based on unrelated prior art references has no bearing on

9  whether LaunchTile, XNav and Lira raise a substantial question of invalidity here.

10         3.      The '381 Patent Is Unenforceable.

11      Samsung has uncovered evidence that Apple improperly withheld a material reference

12  from the PTO during prosecution of the '381 patent.   This evidence and its impact on the

13  enforceability of the '381 patent is described in the declaration of Nicholas Godici, the former

14  Commissioner of the United States Patent and Trademark Office.

15      Unlike most patents, the '381 patent underwent a special accelerated examination that was

16  requested by Apple.   As part of that process, Apple was obligated to search for and identify the

17  most relevant prior art.   (Godici Dec. ¶¶23-24 & 47.)   Despite these obligations, Apple withheld

18  a highly material reference – Van Den Hoven – from the PTO.   Both Apple and its attorney,

19  Robert Beyers, had full knowledge and possession of the Van Den Hoven reference during the

20  prosecution of the '381 patent.   (*Id.* at ¶¶60-63 & 73-76.)   Van Den Hoven disclosed that, in

21

22      [10]   The '381 patent is also invalid because the patentee did not disclose the best mode.

23  ████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████

24  ███████████████████ █████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████ (Ex. HH at 95:20-97:3; 98:17-99:12; 131:22-132:5.)

27  ████████████ (Ex. HH at 99:13-21; 101:1-5.)   *See Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d
   1355, 1360 (Fed. Cir. 2011).

28

response to reaching the end of a sequence of images, an area beyond the edge of the sequence could be displayed and the direction could be reversed, resulting in a bounce.   (van Dam Dec. ¶34 & Ex. 5 ¶37.)   None of the other references that were before the PTO disclosed this limitation. (Godici Dec. ¶¶69-72.)

Apple's failure to disclose strongly suggests that it intended to deceive the PTO, especially in light of the fact that Apple sought accelerated examination and was fully aware of the impact of such disclosure – it was likely that the examination would be delayed and that the claims of the '381 patent would be rejected.   These facts raise substantial questions as to whether the '381 patent is unenforceable.   (*Id.* at ¶¶66-85.)   *See Therasense, Inc. v. Becton, Dickinson and Co.*, No. 2008-1511, 2011 WL 2028255, at *6 (Fed. Cir. May 25, 2011).

### 4.   The '381 Patent Is Not Infringed

The claims of the '381 patent require "displaying an area beyond the edge of the document."   In the context of the '381 patent, "displaying an area beyond the edge of the document" requires that at least some of part of the area beyond the edge of the document emit light or be illuminated.   *See, e.g., Tex. Digital Sys. v. Telegenix, Inc.,* 308 F.3d 1193, 1210 (Fed. Cir. 2002) (holding that display area should be limited to "illuminated" pixels); *Honeywell Int'l., Inc. v. United States,* 609 F.3d 1292, 1299 (Fed. Cir. 2010) (requiring "local color display" to "emit perceptible red light").   This construction is supported by the plain claim language.   For example, claim one requires "displaying a first portion of an electronic document" and "display[ing] a second portion of the electronic document."   In both situations, at least some of part of the first portion or second portions must emit light.   Otherwise, the first or second portions would not be visible.   Likewise, "displaying an area beyond the edge of the document" requires the emission of light in the area beyond the edge.   *Phonometrics, Inc. v. N. Telecom Inc.,* 133 F.3d 1459, 1465 (Fed. Cir. 1998) (noting claim terms "used consistently throughout a claim should be interpreted consistently").

In Apple's infringement allegations, the areas beyond the edge of the documents that Apple identifies are all black.   These black areas are not "displayed" by the Galaxy S 4G, Infuse 4G and Droid Charge devices.   This is because they use AMOLED screens. (Balakrishnan Dec.

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

Exs. 2, 3, 4, 6, 7, 8.)   When an area of an AMOLED display is black, the pixels corresponding to that area are not emitting any light or being illuminated.   (Johnson Dec. ¶¶50-54.)   Thus, there is a lack of any display, just as there is a lack of any display when the screen is turned off.   (Ex. II at 124:21-125:12 ("When the screen is turned off, the screen portion is not displaying anything.").)   As described in the Declaration of Dr. Jeff Johnson, because Samsung devices with an AMOLED screen do not display an area beyond the edge, they do not infringe the '381 patent.   (Johnson Dec. ¶¶47-62.)

The claims of the '381 patent also require "translating the electronic document displayed on the touch screen display in *a first direction* . . ." and "an edge of the electronic document being reached while translating the electronic document in *the first direction*."   The use of the same term "first direction" in two different places in the claim requires that the document move in the same direction both when translating the document to display a second portion and when reaching the edge of the document.   When users use the accused Samsung Gallery and Web Browser applications, they do not move the document in a single direction.   (*Id*. at ¶¶28-46.)   As Apple's expert admits, it is not humanly possible to constrain the movement of a finger in a straight line.   (Ex. II 100:18-101:7).   Rather, the movement of the finger, and consequently, the movement of the document that is translated with the finger, occurs in a number of directions as the finger moves along some curved, potentially irregular path.   As described in more detail in the Johnson Declaration, because the Samsung Gallery and Web Browser applications in the accused products do not translate a document in the same first direction both when displaying a second portion and when reaching the edge of the document, they do not infringe any claims of the '381 patent. (Johnson Dec. ¶¶22-46.)

Further, Apple has not submitted any evidence that these products infringe under the doctrine of equivalents, and they do not as confirmed by Dr. Johnson.   (*Id*. at ¶¶46 & 62.)

## II.     Apple Has Not Demonstrated Irreparable Harm.

Failure to prove irreparable harm is an independent ground for denying a preliminary injunction.   *See Amazon.com*, 239 F.3d at 1350.   Apple must prove "that irreparable injury is *likely* in the absence of an injunction."   *Winter*, 555 U.S. at 22 (emphasis in original); *see Thome*

1  *v. U.S.F.D.A.*, No. 11-cv-00676-LHK, 2011 WL 856290, at *2 (N.D. Cal. Mar. 9, 2011) (Koh, J.)

2  (denying TRO for failure to meet the *Winter* standard).   Nor is Apple is entitled to a

3  "presumption" of irreparable harm; it is now the patentee's burden to prove that its potential losses

4  cannot be compensated.   *Automated Merch.*, 357 F. App'x at 301; *Hologic, Inc. v. Senorx, Inc.*,

5  No. C-08-00133-RMW, 2008 WL 1860035, at *14-15 (N.D. Cal. Apr. 25, 2008) (recognizing the

6  elimination of any presumption of irreparable harm).   This change in the law after the Supreme

7  Court's decision in *eBay, Inc. v. MercExchange*, 547 U.S. 388 (2006), renders much of Apple's

8  cited authority, which improperly required a defendant to rebut a presumption of irreparable harm,

9  unavailing.

10        Yet Apple's motion provided no actual ***evidence*** of irreparable harm.[11]   Apple represented

11  at the June 17, 2011 hearing that it would present expert testimony on the issue.   (Zhang Dec. Ex.

12  7 at 28:25-29:2 ("But there will be experts as well in both terms of the liability issues and the

13  irreparable injury.").)   Apple has not provided the promised expert analysis.   Instead, Apple

14  offers only speculation that it will lose market share and goodwill and relies on discredited cases

15  improperly placing the burden on the defendant to rebut a presumption of irreparable harm.

16        A.        Apple Has Not Met Its Burden of Proving It Will Lose Market Share.

17        Apple has presented no evidence to support either its assertion that the Samsung Products

18  are eroding Apple's market share or that a preliminary injunction will prevent that erosion.   To

19  support a preliminary injunction, lost market share must be proven.   *Automated Merch.*, 357 F.

20  App'x at 301 ("Lost market share must be proven (or at least substantiated with some evidence)").

21  "Neither the difficulty of calculating losses in market share, nor speculation that such losses might

22  occur, amount to proof of special circumstances justify the extraordinary relief of an injunction

---

24        [11]   *See Nutrition 21 v. United States*, 930 F.2d 867, 872 (Fed. Cir. 1991)(preliminary
25  injunction was in error where patentee was not entitled to presumption of irreparable harm and
    patentee provided "no more than attorney's argument" in lieu of an "adequate supporting record"
26  of irreparable harm); *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 954
    (Fed. Cir. 1990) (faulting patentee for not producing "objective, empirical information" to support
27  its claim of irreparable harm).

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

prior to trial." *Nutrition 21*, 930 F.2d at 871.   A court may not rely on "possible market share loss" because that "would apply in every patent case where the patentee practices the invention." *Id*.   For example, merely demonstrating that the defendant's product competes with the patentee's product will not suffice.[12]   Apple must present actual evidence that it will lose market share and that this loss of market share would not be compensable through monetary damages.   *Quad/Tech, Inc. v. QI Press Controls B.V.*, 701 F. Supp. 2d 644, 656 (E.D. Pa. 2010).

The Federal Circuit's post-*eBay* decision in *Automated Merchandising*, 357 F. App'x 297, demonstrates the inadequacy of Apple's showing of loss of market share.   In that case, the district court granted a preliminary injunction, reasoning that the patentee was likely to lose market share based on evidence the defendant's product competed with the patentee's product, the two products were exhibited in the same showrooms, and a dealer had stopped distributing the patentee's product shortly after the defendant had released the accused product.   *Id*. at 301.   The Federal Circuit reversed district court's finding of irreparable harm to market share based on this evidence because the patentee had not proven that any of these harms were not compensable by money damages.   *Id*.   The mere fact the patentee and the defendant competed in the same market with similar products was not sufficient.   *Id*.

Here, just as in *Automated Merchandising*, Apple's "evidence" of lost market share does not pass beyond the speculative.   The only evidence Apple cites is a Samsung statement that it aims to "become the world's No. 1 handset producer" and Samsung's smartphone market share has grown since it released the Galaxy S.   (Mot. at 26-27.)   Apple has not presented any economic analysis demonstrating why Samsung would erode Apple's market share, as opposed to the market share of other manufacturers.   Nor has Apple presented any economic analysis of the extent of any lost market share or why that injury could not be compensated by damages after trial.

---

[12]   *Travel Tags, Inc. v. UV Color, Inc*., 690 F. Supp. 2d 785, 799 (D. Minn. 2010) (noting that prior Federal Circuit decisions allowing a patentee to demonstrate irreparable harm through evidence of direct market competition were abrogated by *eBay*); *Nanoexa Corp. v. Univ. of Chicago*, No. 10-CV-2631-LHK, 2010 WL 3398532, at *5 (N.D. Cal. Aug. 27, 2010) ("[C]onclusory and speculative allegations [of lost market share] are insufficient to prove irreparable harm.").

1    Apple has also not presented evidence that customers who would purchase a Samsung

2  Product will instead purchase an Apple product.   Smartphones are available, for example, from

3  LG, Sony Ericsson, Nokia, RIM, HTC and Motorola.   Tablet computers are available from

4  Lenovo, Toshiba, Motorola, LG, Acer, Asus, ViewSonic, Blackberry, HTC and Dell, among

5  others.   Therefore, there is no reason to conclude that any particular Samsung customer would

6  switch to Apple instead of another manufacturer if an injunction issued.[13]  ███████████████

7  ███████████████████████████████████  (Ex. LL at 19, 23 & 25.)

8    B.   The Samsung Products Will Not Cause Loss of Apple's Market Share.

9  ████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 █████████████████████████████████████████████

12    1.   Apple's Sales and Market Share are Increasing.

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████  (Wagner Dec.

15 ██████████████ ¶¶35-36 & 40-43.)

16 ████  (*Id*. at ¶47.)   Its aggregate sale of smartphones and iPads has actually increased

17 dramatically in recent years, including since the launch of the accused products.   (*Id*. at ¶¶ 23-26

18 & 57-60.)   Rather than showing a likelihood that Apple's market share is eroding, the evidence

19 demonstrates the opposite.   *See McDavid Knee Guard, Inc. v. Nike USA, Inc*., 683 F. Supp. 2d

20

21    [13]   *See Travel Tags*, 690 F. Supp. 2d at 800 (patentee may not ignore "the potential effects on
22 [the patentee] of other competitors"); *Ascend Geo, LLC v. Oyo Geospace Corp*., No. H-09-2886,
   2009 WL 3735963, at *3 (S.D. Tex. Nov. 4, 2009) (finding no irreparable injury where "in
23 addition to [the defendant], there are two significant competitors who are at least as likely as [the
   patentee] to obtain any business that [the defendant] is prevented from obtaining if this Court
24 issued the preliminary injunction"); *Sundance, Inc. v. DeMonte Fabricating, Ltd*., No. 02-73543,
   2007 WL 37742, at *2 (E.D. Mich. Jan. 4, 2007) (finding no irreparable harm where, among other
25 things, the market for the patentee's product "contains many other competitors").   Apple cites
   *Abbott Laboratories v. Sandoz, Inc*., 544 F.3d 1341, 1361-62 (Fed. Cir. 2008), for the proposition
26 that other competitors in the market "do not negate" irreparable harm.   *Abbott Laboratories*,
   however, simply affirms the district court's finding of irreparable harm with no discussion of the
27 evidence presented to or relied on by the district court.

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1    740, 749-50 (N.D. Ill. 2010) (finding no irreparable harm in part because the patentee "has not

2    experienced any apparent losses in overall sales since the launch of [the defendant's] allegedly

3    infringing products" and the patentee had not produced evidence that it had lost market share).

4            2.    ███████████████████████████████████████

5        ███████████████████████████████████████████████

6    ███████████████████████████████    For example: ████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████ (Ex. LL at 20 & 22.)  █████████████

9    ██████████████████████████████████████████████████    (*Id.* at 8.)

10   ███████████████████████████████████████   ████████████████

11   █████████████████████████████████████████████████████████████

12   (*Id.* at 19.)  ███████████████████████████████████████████████████

13   █████████████  ██  ███████████████████████████████████████████████

14   █████████████████████

15         The evidence also refutes Apple's claim that the ornamental design of its products is the

16   basis for its market share.  ████████████████████████████████████████

17   ████████████████████████ (*Id.* at 23.)  ███████████████████

18   ████████████████████████████████████████████ (*Id.*)

19   ████████████████████████████████████████████████████████████

20   (*Id.* at 25; *see also* Ex. MM at 31.)   None of the Samsung Products shares the same

21   "brand/model" with an Apple product, and the "Samsung" logo is prominently displayed on all the

22   Samsung Products.   (Mot. at 2-3 & 14-15.)  ███████████████████████████

23

24        [14]   *Id.* at 25; *see also* Ex. MM at 31 ████████); *cf. Kimberly-Clark Worldwide, Inc. v. Tyco*
25   *Healthcare Group LP*, 635 F. Supp. 2d 870, 880-81 (E.D. Wis. 2009) (finding no irreparable harm
     where patentee and defendant sold to different aspects of the market).

26        [15]   *Id.* at 13; *see* Wagner Dec. ¶41; *cf. McDavid Knee Guard*, 683 F. Supp. 2d at 749-50 (no
27   irreparable harm where patentee had "not provided this court with evidence of an actual decrease
     in [patentee's] market share" and instead relied on "conclusory affidavits based on speculation").

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1 ████████████████████████████████████████████████

2 ████████████████████ (Ex. LL at 23.) █████████████████

3 █████████████████████████████████ (Ex. MM at 29;

*see also* Wagner Dec. ¶¶65 & 81-84.)   All of this evidence demonstrates that Samsung's

customers would be more likely to switch to another Samsung or competing Android product than

Apple if an injunction is entered.

        3.   ███████████████████████████████-

████████████████████████████████████████

████████████████████████████████████

████████ (Ex. MM at 26, 38 & 50.)   Where a patentee lacks the capacity to meet the demand

for the defendant's product, it cannot demonstrate that competition is irreparably harming its

market share.   *Tate Access Floors v. Interface Architectural Res., Inc.*, 132 F. Supp. 2d 365, 377

(D. Md. 2001) (stating that the patentee's manufacturing capacity can be relevant to irreparable

harm and "[i]f the holder could produce under the patent, it can obtain a preliminary injunction; if

not, it can obtain only any damages awarded after trial").

      C.    <u>Apple Has Presented No Evidence That Its Goodwill Will Be Harmed.</u>

        Damage to goodwill may constitute irreparable harm, if such harm is demonstrated through

actual evidence.   The mere existence of a competing product, even if infringing, however, cannot

establish irreparable harm to goodwill.   Apple simply cites evidence that its products are heavily

advertised and popular.   (Mot. at 25-27.)   That is evidence at best only of the *existence* of

goodwill, not damage or likelihood of damage to goodwill.   Apple, in fact, fails to offer any

explanation of how it believes its goodwill is being diminished.[16]   For example, Apple offers no

---

[16]   *See Z-Man Fishing Prods., Inc. v. Renosky*, No. 2:11-cv-428, 2011 WL 1930636, at *2
(D.S.C. May 17, 2011) (no irreparable harm where patentee had not offered any "evidence of lost
goodwill" and where the court was "not convinced consumers are likely to confuse Plaintiffs' and
Defendants'" products); *Red Bend Ltd. v. Google, Inc.*, No. 09-cv-11813, 2011 WL 1288503, at
*20 (D. Mass. Mar. 31, 2011) (no irreparable harm where patentee presented "no evidence that its
reputation has been tarnished in any way"); *Precision Links, Inc. v. USA Prods. Group, Inc.*, No.
  (footnote continued)

1  evidence of any confusion between the parties' products.   Indeed, as the Court has commented,

2  such confusion is unlikely in light of the sophistication of the consumers of these products, the

3  extent of Apple's advertising, and the fact that the Samsung Products bear the Samsung logo.[17]

4       Apple implicitly contends that its advertisements emphasize the iPhone's design, and

5  therefore, competing smartphones that use a similar design diminish its goodwill.   Again, it cites

6  no evidence or authority for that position, nor did it assert dilution as of its claims in support of its

7  motion.   When asked at deposition if Apple had any evidence of "erosion of Apple's

8  distinctiveness in customer's minds as a result of Samsung's phones," Apple's Rule 30(b)(6)

9  deponent testified, "I don't have evidence."   (Ex. NN at 193:6-9.) ███████████████████

10 █████████████████████████████████████████████████████████████

11 █████████████████████████████████████████████████████████████

12 ██████████████████████   (Ex. NN at 85:3-7, 125:18-23 & 147:20-148:3.)

13       D.       Apple Presents No Evidence That Any Injury Cannot Be Remedied By Damages.

14       To prove irreparable harm, Apple must show that any injury it identifies cannot be

15 compensated by money damages.   *eBay*, 547 U.S. at 391; *see also Automated Merch.*, 357 F.

---

17 3:08cv576, 2009 WL 3076114, at *8 (W.D.N.C. Sept. 22, 2009) (speculative claim of damage to
goodwill insufficient); *Kimberley-Clark*, 635 F. Supp. 2d at 880.

17       (Wagner Dec. ¶¶18-22); *see Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp.
2d 871, 881-82 (D. Minn. 2007) (no irreparable harm to goodwill in design patent case in part
because the products "prominently bear the parties' respective logos").   Apple cites *AstraZeneca
LP v. Apotex*, 633 F.3d 1042 (Fed. Cir. 2010), for the proposition that sale of an infringing product
can cause harm to goodwill.   That decision merely upheld the district court's factual findings of
likely harm to goodwill under the facts and evidence specific to that case.   *Id.* at 1062-63.
Nothing in *AstraZeneca* supports a presumption of damage to goodwill.   Apple also cites *Reebok
Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557-58 (Fed. Cir. 1994), for the proposition that "[h]arm
to reputation resulting from confusion between an inferior accused product and a patentee's
superior product is a type of harm that is often not fully compensable by money."   Apple's
reliance on *Reebok* is misplaced.   First, that opinion actually affirmed the ***denial*** of a preliminary
injunction.   Second, *Reebok* relied on the now discredited presumption of irreparable harm.   *Id.*
at 1558 (holding that the defendant "presented sufficient evidence to rebut a presumption that [the
patentee] would suffer harm that could not be fully compensated by money").   Third, Apple
presents no evidence of any confusion between Apple's products and Samsung's products or that
Samsung's product is inferior.   *See Quad/Tech, Inc.*, 701 F. Supp. 2d at 657 (no irreparable harm
where patentee had presented no evidence of actual confusion).

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1   Appx. at 301 (burden is on patentee to show that harms it has identified cannot be remedied by

2   monetary damages).   There is no presumption that money damages would be inadequate.   *High*

3   *Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995).

4   Neither lost market share nor damage to goodwill is necessarily irreparable.[18]

5        Apple has not even attempted to show that the ostensible injuries it identifies cannot be

6   fully compensated by a monetary award after trial or that Samsung would be unable to satisfy that

7   judgment.   Apple simply assumes that if a defendant competes with a patentee, a monetary award

8   is insufficient.   That is not the law.   *Nutrition 21*, 930 F.2d at 872.   Apple has, for example, not

9   submitted any evidence from an economist, accountant, or otherwise qualified damages expert

10  explaining why the injury to Apple could not be quantified.   There is no dispute that the sales

11  figures for Samsung's allegedly infringing products can be readily ascertained.   And Apple

12  identifies nothing unique about this case that would make the determination of a reasonable

13  royalty unreasonably difficult or impossible.   Apple has failed to meet its burden of proving any

14  injury it may suffer is irreparable.

15        E.      Any Showing of Irreparable Harm Is Rebutted.

16        Independently, Apple's delay in seeking a preliminary injunction and its licensing

17  practices rebut any suggestion of irreparable harm.

18             1.      Apple Has Unreasonably Delayed Seeking a Preliminary Injunction.

19        A prolonged or undue delay in bringing suit or seeking a preliminary injunction tends to

20  demonstrate that the "status quo" does not irreparably harm the patentee.   *Nutrition 21*, 930 F.2d

21  at 872.   The Federal Circuit has described the patentee's delay as "an important factor bearing on

22  the need for a preliminary injunction."   *High Tech Med.*, 49 F.3d at 1557.   Periods of delay as

23  short as two months have been found to tend to demonstrate that the patentee will not be

24  irreparably harmed.   *Novozymes A/S v. Danisco A/S*, No. 10-cv-251-bbc, 2010 WL 3783682, at

---

26  [18]   *Automated Merch.*, 357 F. App'x at 301 (lost market share not necessarily irreparable);
27  *John Mezzalingua Assoc., Inc. v. Pace Elecs., Inc.*, No. 10-64, 2010 WL 1839305, at *6 (D. Minn.
    May 5, 2010) (loss of market share is not necessarily irreparable).

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1   *4 (W.D. Wis. Sept. 24, 2010).   In *High Tech Medical Instrumentation*, the Federal Circuit cited

2   with approval cases holding that delays as short as nine and seven-and-a-half months were

3   unreasonable.   49 F.3d at 1557 (citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.

4   1985), and *Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc*., 335 F. Supp. 2d 278, 280

5   (S.D.N.Y. 1971)).   Apple delayed far longer here before seeking a preliminary injunction.

6        Apple alleges that Samsung has copied Apple's designs since 2007 (Am. Compl. ¶80),

7   though Apple has cited no evidence to support that accusation.   According to Apple, in that year,

8   Samsung released its allegedly infringing F700 smartphone, "copying the clean flat clear surface

9   of the Apple iPhone Trade Dress."   (Am. Compl. ¶80.)   Apple alleges that Samsung followed the

10  F700 with its Galaxy i9000 in March 2010, the Galaxy SVibrant in July 2010, and the Galaxy Tab

11  10.1 in March 2011—all of which Apple alleges copied the iPhone.   (Am. Compl. ¶¶81, 84 &

12  86.)   ████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████   (Ex. OO.)   ███████████

14  ████████████████████████████████████████████████████████████████████

15  (Ex. PP.)   Apple has therefore been on notice of Samsung's use of that technology since at least

16  ███████████.   Samsung also released its Vibrant and Captivate phones in July 2010.   (Ex. TT.)

17  Apple accuses both of these phones of infringing the bounce back feature in its amended

18  complaint.   Nevertheless, Apple waited until April 15, 2011 to file its complaint and then delayed

19  further until July 1, 2011 to move for a preliminary injunction.

20        Far shorter delays are commonly found to show a lack of irreparable harm in patent

21  cases.[19]   Apple has itself previously argued that a preliminary injunction is inappropriate in light

22  _____

23        [19]   *Novozymes A/S*, 2010 WL 3783682, at *4 (two month delay from filing of complaint
    weighs against finding of irreparable harm); *Precision Links*, 2009 WL 3076114, at *8 (five

24  month delay after filing complaint is "simply unjustified"); *Panduit Corp. v. Band-It-Idex, Inc*.,
    No. 00-C-1461, 2000 WL 1121554, at *24 (N.D. Ill. June 27, 2000) (nine-month delay in filing

25  complaint "raises questions concerning Panduit's claim of irreparable harm"); *Abbott Labs. v.
    Selfcare, Inc*., 17 F. Supp. 2d 43, 50 (D. Mass. 1998) (nine month delay from becoming licensee

26  with standing to sue renders it "manifestly unfair to be quick to enter a preliminary injunction
    against the defendants after they had less than two months' notice that their products are

27  accused"); *Tennant Co. v. Hako Minuteman, Inc*., 651 F. Supp. 945, 961-62 (N.D. Ill. 1986) (nine

28        (footnote continued)

1    of comparable delays.   *E.g., Tiger Direct, Inc. v. Apple Computer, Inc.*, No. 05-21136, 2005 WL

2    1458046, at *22 (S.D. Fla. May 11, 2005) (reflecting successful argument by that plaintiff's 12-

3    month delay foreclosed injunctive relief).

4           Apple argues that it has not delayed seeking a preliminary injunction because its motion is

5    directed at Samsung's "newly released products" and not "Samsung's older smartphones."   (Mot.

6    at 27-28.)   Apple argues that Samsung's "new" Galaxy smart phones were released from

7    February to June 2011.   (Mot. at 28 n.9.)   According to Apple, the delay has therefore been

8    approximately four months.   Even if four months were an acceptable period of delay, Apple's

9    argument fails because the designs of the phones Apple seeks to enjoin are no closer to the design

10   patents it asserts than Samsung's first generation Galaxy smartphones.   As this Court previously

11   found, "the length of time Apple has been aware of its claims and the long history of infringement

12   alleged in the complaint undermine Apple's claim of urgency to some extent."   (D.N. 110 at 2.)

13   Delay in seeking to stop known infringement is inconsistent with a contention that infringement

14   causes irreparable harm; "if the harm was so bad, why would one wait to seek a remedy?

15   *Panduit*, 2000 WL 1121554, at *24.   This is equally true where the patentee substantially delayed

16   taking action against earlier, similar products.[20]   Nor does Apple explain how the harm that the

17   Samsung Products will allegedly cause will differ in kind or extent from all the accused Samsung

18   products that Apple does not seek to preliminarily enjoin.

19          Apple's argument is further contrary to *Calmar, Inc. v. Emson Research, Inc.*, 838 F. Supp.

20   453 (C.D. Cal. 1993).   Calmar brought suit against the defendant in 1992, alleging infringement

21   of a patent on a type of "pump sprayer" and sought a preliminary injunction.   *Id*. at 454.   The

22   court denied the motion, however, finding that the patentee's delay in bringing suit refuted any

23   claim of irreparable harm.   *Id*. at 456.   In particular, the defendant had "continually manufactured

24   ────────────────────

25   month delay from the time patentee learned of infringement weighs against finding of irreparable
     harm).

26        [20]   Contrary to Apple's argument, this does not give Samsung a "free pass" to infringe

27   Apple's patents.   (*See* Mot. at 29.)   If Apple prevails at trial, it would be entitled to damages
     according to proof and any other applicable remedies.

28

1  and sold pump sprayers, identical in all material aspects to the allegedly infringing pump sprayers,

2  in direct competition with [the patentee] since at least 1981."   *Id.*

3  The only excuse that Apple offers for this delay is settlement negotiations between the

4  parties.   (Mot. at 28 n.10.)   In some instances, settlement negotiations can excuse reasonable

5  delay in seeking a preliminary injunction.   The discussions here, however, do not excuse Apple's

6  unreasonable delay.   ███████████████████████████████████████████████

7  ██████████ (Ex. M 48:24-50:24), ██████████████████████████████████████

8  █████████████████████████████ (Lutton Dec. ¶7.)   Apple filed this motion on

9  July 2011, resulting in a delay, by Apple's own admission, of ████████████ Lesser delays

10 have been found to rebut an inference of irreparable harm.   *Novozymes*, 2010 WL 3783682, at *4

11 (two month delay); *Precision Links,* 2009 WL 3076114, at *8 (five month delay after filing

12 complaint).[21]

2.   <u>Apple's Gamesmanship Belies Its Claim to Irreparable Harm.</u>

14 Apple's gamesmanship in filing this motion demonstrates that there is little risk of

15 irreparable harm.   Apple has accused a wide swath of Samsung products of infringement.[22]   Yet

16 Apple has moved to preliminarily enjoin only the Samsung Infuse 4G, Galaxy S4G, Droid Charge,

17 and Galaxy Tab 10.1.   Apple provides no explanation for why it contends that only this subset of

18 the accused products must be enjoined to prevent irreparable harm, why the other accused

19 products are not causing it irreparable harm, or why it has not sought a preliminary injunction in

20 previous litigation against the manufacturers of other Android products, such as Motorola, Nokia,

21 or HTC.   ██████████████████████████████████████████████████████

[21]   Apple does not even attempt to excuse the ten-week delay from the time it filed its complaint to the time it moved for a preliminary injunction.   Although Apple took discovery from Samsung during this period, it tellingly relies on none of that evidence in this motion.

[22]   Am. Compl. ¶92 (accusing "the Acclaim, Captivate, Continuum, Droid Charge, Exhibit 4G, Epic 4G, Fascinate, Gem, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Showcase i500, Showcase Galaxy S, Sidekick, Transform, and Vibrant phones, and the Galaxy Tab and Galaxy Tab 10.1 tablet computers and similar products").

1   ███████████████████   (Ex. LL at 24.)   ██████████████

2   ███████████████████████████████████████████████

3   ███████████████████████   The most reasonable inference

4   from Apple's strategy is that the preliminary injunction it seeks will ***not*** prevent the irreparable

5   harm Apple claims it will suffer.

              3.    <u>Apple's Practice of Licensing Its Patents Demonstrates That Any Injury Is</u>
6
                   <u>Redressed By a Reasonable Royalty.</u>
7

8         Evidence that a patentee has granted or offered nonexclusive licenses to the asserted

9   patents tends to demonstrate that any infringement can adequately be compensated by money

10  damages.   *High Tech Med.*, 49 F.3d at 1557.   Licensing activities demonstrate the patentee is

11  willing to forego exclusivity in exchange for monetary compensation.   *Id.*   ██████████████

12  ██████████████████████   (Ex. M. at 64-66 & 81-82.)   ████████████

13  ██████████████████████████████████████████████████

14  ██████████████████████████████   (Ex. OO at 9 & 17.)   █████

15  ██████████████████████████████████████████████

16  ██████████████████████████████████████████

17  ███████████████████████████████   (Ex. OO at 17.)   █████████

18  ████████████████████████████████████████████████

19  █████████████████████████   That offer is inconsistent with

20  irreparable harm.

**III.**    **<u>The Balance of Hardships Weighs Against A Preliminary Injunction</u>**
21

22        "An injunction should not be granted if its impact on the enjoined party would be more

23  severe than the injury the moving party would suffer if it is not granted."   *Litton Sys. Inc. v.*

24  *Sundstrand Corp.*, 750 F.2d 952, 959 (Fed. Cir. 1984).   "The hardship on a preliminarily enjoined

25  manufacturer who must withdraw its product from the market before trial can be devastating."

26  *Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990).   Apple has failed to

27  demonstrate that, in light of its meager showing of likelihood of success, the balance of hardship

28  favors a preliminary injunction.

1    Apple devotes a substantial portion of its motion to arguing that Samsung copied Apple's

2  products.   (Mot. at 1-4.)   Although willful infringement, including deliberate copying, may be

3  relevant to a preliminary injunction motion, Apple has offered no evidence of such copying or

4  willful infringement.   Apple merely points to evidence that Samsung's products — including

5  based on Apple's manipulated images — are similar to Apple's.[23]   If similarity were enough to

6  prove copying, copying would be proven in every case where the defendant is found liable.   *See*

7  *Wyers v. Master Lock Co*., 616 F.3d 1231, 1246 (Fed. Cir. 2010) ("Not every competing product

8  that arguably falls within the scope of a patent is evidence of copying . . .").   Indeed, Apple's

9  argument would require an inference that it copied Sharp's and LG's earlier mobile phone designs

10  when it designed the iPhone.   *See supra* at Section I.B.   As previously discussed, the similarities

11  Apple points to as "proof" of copying are simply part of the evolution of smartphones and tablets.

12  **IV.    An Injunction Will Not Serve the Public Interest**

13        A.    An Injunction Will Harm Competition and Consumers.

14    Apple contends that the public interest weighs in favor of enforcing patent rights.   (Mot. at

15  30.)   Apple's argument is predicated, however, on its assumption that there is a strong likelihood

16  that Samsung is infringing a valid patent, which there is not.   Where, as here, the patentee has not

17  made a strong showing that a valid patent has been infringed, the public interest favors free

18  competition.   *See Graceway Pharm., LLC v. Perrigo Co*., 722 F. Supp. 2d 566, 580 (D.N.J.

19  2010); *Bushnell, Inc. v. Brunton Co*., 673 F. Supp. 2d 1241, 1265 (D. Kan. 2009); *Voile Mfg.*

20  *Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1308 (D. Utah 2008).   "[T]he Supreme Court . . .

21  made clear long ago that 'the equities of the licensor do not weigh very heavily when they are

22  balanced against the important public interest in permitting full and free competition in the use of

23  ideas which are in reality a part of the public domain.'"   *Yamashita v. Wilbur-Ellis Co*., No. C 06-

24  01690, 2006 WL 1320470, at *8 (N.D. Cal. May 15, 2006) (quoting *Lear, Inc. v. Adkins*, 395 U.S.

25

26    [23]    (Mot. at 2-3.)   Apple also contends that Samsung "redesigned" the Galaxy Tab 10.1 to
    "more closely mirror" the iPad 2.   (Mot. at 27.)   Apple's "proof" reflects not unlawful copying,

27  but healthy competition.   After the iPad2's release, Samsung made its tablet even thinner—not
    "copying" any proprietary right to thinness, but advancing the technology.

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1   653, 670 (1969)).   Apple's own evidence supports this conclusion.   For example, Exhibit 4 to

2   Apple's Zhang Declaration states, "You can argue that [Samsung's Galaxy Tab] is a victory for

3   consumers, who'll now get an aggressively-priced Android tablet to rival Apple's iOS one, for

4   cheaper than the Motorola Xoom costs, and this sort of market diversity is a good thing."

5           The relevance of competition to the public interest is especially acute in this case because

6   this litigation does not stand alone, but rather is part of a broad and coordinated campaign by

7   Apple against makers of Android devices, which Apple evidently perceives as challenging its

8   would-be monopoly on smartphones and tablets.   Since its introduction in 2008, Android has

9   achieved great success through its philosophy of openness and freedom.   Android is a free, open-

10  source mobile software platform that any developer can use to create applications for mobile

11  devices, and that any handset manufacturer can install on a device.   (*See* Ex. RR at 5.)   Anyone

12  can download the most recent released Android source code from http://source.android.com.

13  Instead of rising to meet the competition offered by Android in the marketplace, Apple has

14  responded with a barrage of litigation against the largest sellers of Android devices, including

15  Samsung, HTC and Motorola.

16          B.      ████████████████████████████████████

17          Where a patentee lacks the capacity to produce enough product to supply the defendant's

18  customers, the public interest is not served by a preliminary injunction.   *See Am. Honda Motor*

19  *Co., Inc., v. Carolina Autosports Leasing and Sales, Inc*., 645 F. Supp. 863, 865-66 (W.D.N.C.

20  1986) (in trademark case, where plaintiff lacks ability to meet demand for product, balance of

21  harms weighs against a preliminary injunction).   ████████████████   ██████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  **V.      CONCLUSION**

25          For the foregoing reasons, Apple's Motion for a Preliminary Injunction should be denied.

26

27

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**

1    DATED: August 22, 2011                QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
2

3

4                                          By /s/ Victoria F. Maroulis
                                              Charles K. Verhoeven
5                                             Kevin P.B. Johnson
                                              Victoria F. Maroulis
6                                             Michael T. Zeller
                                              Attorneys for SAMSUNG ELECTRONICS CO.,
7                                             LTD., SAMSUNG ELECTRONICS AMERICA,
                                              INC., and SAMSUNG
8                                             TELECOMMUNICATIONS AMERICA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          -41-                    Case No. 11-cv-01846-LHK
                   **SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION**