Exhibit Q

ATTORNEYS' EYES ONLY

```
                                                              Page 1
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                   SAN JOSE DIVISION

 4   APPLE, INC., a California        )
     corporation,                     )
 5                                    )CASE NO.
                  Plaintiff,          )11-CV-01846-LHK
 6                                    )
     vs.                              )
 7                                    )
     SAMSUNG ELECTRONICS, CO., LTD.,  )
 8   A Korean business entity;        )
     SAMSUNG ELECTRONICS AMERICA,     )
 9   INC., a New York corporation;    )
     SAMSUNG TELECOMMUNICATIONS       )
10   AMERICA, LLC, a Delaware         )
     limited liability company,       )
11                                    )
                  Defendants.         )
12   ---------------------------------)

13

14

15             ***ATTORNEYS' EYES ONLY***

16

17

18

19             VIDEOTAPED DEPOSITION OF
                    ITAY SHERMAN
20              New York, New York
            Thursday, September 15, 2011
21

22

23

24   Reported by:
     JOMANNA DeROSA, CSR
25   JOB NO. 41963
```

ATTORNEYS' EYES ONLY

Page 2

1
2          Thursday, September 15, 2011
3          9:23 a.m.
4
5
6   Attorneys Eye's Only Videotaped Deposition
7   of ITAY SHERMAN, held at the
8   offices of Morrison & Foerster,
9   1290 Avenue of the Americas, New York,
10  New York, before Jomanna DeRosa, a
11  Certified Shorthand Reporter and
12  Notary Public of the States of
13  New York, New Jersey, California
14  and Arizona.
15
16
17
18
19
20
21
22
23
24
25

ATTORNEYS' EYES ONLY

Page 3

```
 1   A P P E A R A N C E S:

 2

 3        MORRISON & FOERSTER

 4        Attorneys for Plaintiff

 5             425 Market Street

 6             San Francisco, California 94105

 7        BY:  JENNIFER LEE TAYLOR, ESQ.

 8             PATRICK ZHANG, ESQ.

 9

10        QUINN EMANUEL URQUHART & SULLIVAN

11        Attorneys for Defendant

12             865 South Figueroa Street

13             Los Angeles, California 90017

14        BY:  MICHAEL T. ZELLER, ESQ.

15

16        QUINN EMANUEL URQUHART & SULLIVAN

17        Attorneys for Defendant

18             555 Twin Dolphin Drive

19             Redwood Shores, California 94065

20        BY:  ANNA T. NEILL, Ph.D., ESQ.

21

22

23

24   ALSO PRESENT:

25        Henry Marte, Legal Video Specialist
```

ATTORNEYS' EYES ONLY

Page 161

1      anything.
2              MR. ZELLER:  -- I'm entitled to
3      make my objections.  You have been asking this
4      witness now -- you ask him for a legal
5      opinion.  You do so in a bald-faced way.  Then
6      you pretend as though it is in his declaration
7      that that's the same meaning of it.
8              Ask him about his declaration if
9      that's what you want to do.  But don't pretend
10     like somehow, well, that --
11             MS. TAYLOR:  I was until you
12     interrupted me.
13             MR. ZELLER:  You just interrupted
14     me again, and you did so with an obnoxious
15     gesture.
16             MS. TAYLOR:  Let us move on.
17             MR. ZELLER:  So that's -- do you
18     think that's appropriate, counsel?
19             MS. TAYLOR:  I think it's tiresome
20     that you interrupt my questions halfway
21     through.  I am reading a paragraph from
22     Mr. Sherman's declaration.
23         Q.  Paragraph 184 says:
24             "It is my opinion that (1) the
25     D'889, 'D677, and D'087 patents are invalid in

TSG Reporting 877-702-9580

1   light of the prior art described above."

2              Do you see that sentence?

3       A.   Yes, I see that sentence.

4       Q.   Can you tell me what your

5   qualifications are to offer that opinion.

6       A.   So first of all, I would say that

7   that -- the term here that they are invalid is

8   related to my assessment as a technical expert and

9   not as legal advice.

10             But the qualifications are

11  obviously my experience in designing mobile

12  phones, the fact that I had seen multiple of these

13  designs as part of the work.

14             So I could assess prior art, and

15  also comment as to the capability of somebody who

16  is skilled in the art to be able to combine these

17  and be able to sort of define whether they're

18  obvious or not.

19             So these would be things that would

20  be necessary for me in order to go and provide

21  that opinion, and that is what I base it on.

22      Q.   Have you ever done that type of an

23  analysis before you were asked to do so in

24  connection with preparing the declaration that you

25  submitted in this case?

ATTORNEYS' EYES ONLY

Page 189

```
 1   to do with the manufacturing process which makes
 2   creation of rounded corners the -- I would say the
 3   preferred alternative versus sharp corners in
 4   terms of -- both in terms of manufacturing as well
 5   as the mechanical strengths of that structure.
 6            Q.   Now, the phone we looked at earlier
 7   called the MODU-1 --
 8            A.   Yes.
 9            Q.   -- seemed to have very sharp
10   corners to me.
11                 Were you not concerned about these
12   functionality issues that you have just described
13   when you were designing that phone?
14            A.   So on the -- specifically on the
15   MODU-1, the corners are not very sharp.  They are
16   rounded.  In fact, the need to round these metal
17   corners have cost MODU significantly.
18                 If you want, I can refer you to the
19   image itself.
20            Q.   Yeah.  Let's refer to the image,
21   and maybe you can show how they're rounded,
22   because they look square to me.
23            A.   Again, on the form here the metal
24   is curved, but this is not a 90-degrees curving.
25   It is -- it has some radius on the turnaround,
```

ATTORNEYS' EYES ONLY

Page 190

1  both here and in that size.
2          There is also rounding of the metal
3  when -- again, you can't see that here, but on the
4  top and bottom, these parts, when they basically
5  end, it doesn't end as a sharp corner, but rather,
6  the metal was bended over all through in order to
7  not create sharp corners.
8       Q.   So are they rounded, like, as --
9  from the front towards the back; is that the edge?
10      A.   From the front internally, the
11 whole part was basically bent over itself.
12      Q.   So the front looks -- because the
13 front -- it looks -- it looks straight in this
14 photo we're looking at.
15      A.   In the photo, again, I'm saying --
16      Q.   So where --
17      A.   -- the left and right here, this
18 one is basically bending over the sides.  And
19 again, I'm saying it doesn't bend in 90 degrees.
20 There is some radius there.
21          And if we're referring to the top
22 part when this one ends, the metal here again is
23 not cut straight, but rather folds over in.
24      Q.   When you say it folds over, are you
25 talking over the top?

ATTORNEYS' EYES ONLY

Page 191

1  A. It's over the top of itself. If
2 you would like, I can sort of make that if you
3 want to sketch that.
4  Q. Is it over the top, like, towards
5 the back of the phone?
6  A. It doesn't go through to the other
7 side.
8  Q. So why don't we look at the MODU-T.
9  A. Sure.
10  Q. If you'd look at the design on the
11 MODU-T on the next page.
12  A. Sure.
13  Q. MODU-T phone design.
14  A. Yeah.
15  Q. Does this demonstrate in any way
16 what you were describing on the MODU-1?
17  A. No. That is a different design.
18 This one is mostly made of plastic. The other one
19 was metal. So the whole construction is slightly
20 different.
21      So here on this one, you can see
22 the bottom part here. You have the corners
23 rounded on both sides. On the upper part, it's
24 simply -- you don't have sharp corners here
25 because that basically -- this part itself is not

ATTORNEYS' EYES ONLY

1    Let me see if there are other
2    elements mentioned here.  Again, the other
3    statement is regarding the fact that black usually
4    is perceived -- when you take something in black,
5    it's usually perceived as slimmer, but that's, I
6    would say, a very general thing that I think most
7    people are aware of.
8        Q.    So are you saying that the phone
9    shown on the first page of Exhibit 207 does not
10   achieve the functionality that you describe in
11   Exhibit 109 -- I'm sorry -- in paragraph 109 and
12   in the following paragraph in your declaration?
13            MR. ZELLER:  Mischaracterizes the
14      witness' testimony.
15       A.    Again, what I'm saying is if I read
16   each one of these, obviously it does not achieve
17   being black since it's white.  So that would mean
18   that it's not targeting the most popular color by
19   consumers.
20            As for its ability to -- again,
21   since black makes things look slimmer, since it's
22   white, it does not enjoy that specific advantage.
23   And as I said, in terms of the looks, when the
24   screen is switched off, then you will have
25   contrast versus the exterior, just because the

ATTORNEYS' EYES ONLY

Page 239

1  display is not white.  So that's basically what
2  I'm saying.
3          Q.    One of the items you have in the
4  paragraph following 109 is -- with reference to
5  the title that you have is "Blackness of Surface."
6  You state:
7                "It efficiently hides the wiring
8  and electronic components underlying it."
9                Do you think that doesn't work --
10 that that's not the case with the white iPhone
11 shown on the first page of Exhibit 207?
12               MR. ZELLER:  Do you -- do you want
13      him to comment on the construction of it?
14               First of all, if Apple actually
15      would agree that he can see Apple's internal
16      documents and provide an opinion.
17               No. 2, as far as I know, we have
18      repeatedly asked and Apple has hidden its
19      documents as to the development of the white
20      iPhone, which, by the way, common sense, as
21      well as public knowledge, state that there
22      were a whole variety of technical,
23      manufacturing and engineering challenges in
24      the development of that phone.  It is widely
25      known.

ATTORNEYS' EYES ONLY

1    So is Apple going to produce those
2    documents?  I mean, I'm going to start
3    instructing this witness on this, because if
4    you want an opinion on it, we're happy to give
5    it.  But Apple needs to stop concealing the
6    documents relating to it, particularly from
7    this witness.
8        Q.   Mr. Sherman, I think you can look
9　at the photograph on the front page of Exhibit 207
10 and tell me if you personally believe, looking at
11 that photograph, that the white hides the wiring
12 and electronic components underlying it.
13              If you are not able to answer that
14 question based upon looking at the front of
15 Exhibit 207, let me know.
16            MR. ZELLER:  Do you have the phone?
17    Why don't you give him the phone?
18            MS. TAYLOR:  I don't have the
19    phone.
20            MR. ZELLER:  Well, I think it's
21    your responsibility to bring it.
22              Also, I mean, what is the
23    construction of this?  You keep on saying "the
24    white."  Is that -- is that some sort of solid
25    piece?  Is it some sort of painting over it?

ATTORNEYS' EYES ONLY

```
 1  Is it a coloring?  I mean, what is it?
 2           MS. TAYLOR:  I'm asking him about a
 3  photograph.  If he is unable -- if he is
 4  unable --
 5           MR. ZELLER:  Counsel, if you
 6  provide the information for him to answer your
 7  question --
 8           MS. TAYLOR:  Mr. Zeller, I've
 9  asked -- let me finish --
10           MR. ZELLER:  Why are you
11  interrupting me?
12           MS. TAYLOR:  Because you
13  interrupted me.
14           MR. ZELLER:  No, I did not
15  interrupt you.
16           MS. TAYLOR:  I am asking him if he
17  is able to tell me if it hides the components.
18  If he cannot look at this and tell me if he
19  thinks it hides the components based upon this
20  picture, that's fine.  He can tell me that.
21  That's all I'm asking.
22           MR. ZELLER:  Counsel, that's still
23  misleading.  And you know it's misleading.
24  That is not --
25           MS. TAYLOR:  That's all I'm asking.
```

ATTORNEYS' EYES ONLY

Page 242

1              MR. ZELLER:  You are -- you are
2     refusing to provide him a phone or other kinds
3     of information to provide that.  And then
4     you're going to pretend, because of your
5     refusal and Apple's refusal to comply with
6     discovery, that somehow that is an appropriate
7     criticism of this expert.
8              So provide the white iPhone so we
9     can see it, or explain what is covering it.
10             MS. TAYLOR:  What is covering what?
11             MR. ZELLER:  Does Apple produce
12    that information?
13             MS. TAYLOR:  What is covering what?
14             MR. ZELLER:  You keep on asking,
15    does the white perform the same function.
16    What is the white made of?  Is it solid
17    material?  Is it paint?  Is it a coating?
18             MS. TAYLOR:  We need to move on
19    because you're not going to be permitted to
20    answer questions on that picture.
21        Q.   So please look at the following
22  picture, which is a phone.
23        A.   This one?
24        Q.   Okay.  If you'll go to the second
25  page of Exhibit 207.

```
 1   the device shown in Exhibit G has a completely
 2   flat surface?
 3           A.    Based on what is shown in the
 4   design patent here, the answer would be yes, it
 5   does have a flat surface.
 6                 And that is -- can be understood
 7   based on the -- there's a diagram which is titled
 8   A minus A dash, which is basically a cut-through
 9   of the device, which basically shows that the
10   device face is completely flat.
11           Q.    So I understand you looked at F and
12   G?
13           A.    As well as the other ones.
14           Q.    And the other ones.  I'm not saying
15   you didn't, but you highlighted F and G.  And so
16   we don't get an objection to the preamble, skip
17   all that.
18                 Is there a particular piece of
19   prior art here that you think discloses the rim
20   shown in the '889 patent?
21           A.    I'm sorry.  You've asked whether it
22   shows the exact rim?
23           Q.    Yes.
24           A.    Okay. I'm sorry.  It's a bit late.
25   I'm not completely focused.
```

ATTORNEYS' EYES ONLY

1           Q.    We understand.
2           A.    So if you look at Exhibit -- if you
3    look at Exhibit H, which is 172-8, the rim itself
4    around the display here on the front face, which
5    is what we were discussing, looks similar,
6    excluding the extra feature that it has.
7                 But again, excluding of that would
8    be trivial for somebody who is skilled in the art.
9    But apart from that, it has an appearance that is
10   very similar to what is shown in the '889 design
11   patent.
12          Q.    I'm going to ask you to do me a
13   favor because there are two pictures on the front.
14   Can you circle the one you're talking about so we
15   know what you're talking about?
16                MR. ZELLER:  He should probably
17      circle the actual exhibit.
18                MS. TAYLOR:  Oh, circle the one
19      that's in the exhibit.  That's right.  Not in
20      your copy of the declaration.
21          Q.    There we are.  Circle the one that
22   has the rim that you're discussing.  And I'm going
23   to put it back in here so it's safe.
24          A.    And as I mentioned, after
25   reviewing --

ATTORNEYS' EYES ONLY

Page 325

```
 1      analyses that it's done for the relevant
 2      patents in this case.  Once you stipulate
 3      that, he'll answer the questions.  So why
 4      don't you tell me?
 5              MS. TAYLOR:  So in any event, if
 6      the Judge orders you to come back, we will see
 7      you again.  If not, we won't.  But thank you.
 8              THE VIDEOGRAPHER:  This marks the
 9      end of today's deposition.  The time is
10      7:00 p.m., and we're going off the record.
11              (Time Ended:  7:00 p.m.)
12
13         _____
14         ITAY SHERMAN
15
16  Subscribed and sworn to
17  before me this      day
18  of              , 2011.
19
20  _____
21
22
23
24
25
```

ATTORNEYS' EYES ONLY

Page 328

```
 1
 2                    CERTIFICATE
 3    STATE OF NEW YORK )
 4                     )ss:
 5    COUNTY OF NEW YORK)
 6           I, JOMANNA DeROSA, a Certified
 7    Shorthand Reporter and Notary Public within
 8    and for the States of New York, New Jersey,
 9    California and Arizona, do hereby certify:
10           That ITAY SHERMAN, the witness
11    whose deposition is hereinbefore set forth, was
12    duly sworn by me and that such deposition is a
13    true record of the testimony given by such
14    witness.
15           I further certify that I am not
16    related to any of the parties to this action
17    by blood or marriage, and that I am in no
18    way interested in the outcome of this
19    matter.
20           In witness whereof, I have hereunto
21    set my hand this 16th day of September, 2011.
22
23                    _____
                      JOMANNA DeROSA
24
25
```