1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100

9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

15

16                UNITED STATES DISTRICT COURT

17         NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 APPLE INC., a California corporation,          CASE NO. 11-cv-01846-LHK

19                Plaintiff,                      **SAMSUNG'S NOTICE OF MOTION AND
                                                  MOTION TO EXCLUDE ORDINARY
20         vs.                                    OBSERVER OPINIONS OF APPLE
                                                  EXPERT COOPER WOODRING; AND**
21 SAMSUNG ELECTRONICS CO., LTD., a
   Korean business entity; SAMSUNG               **MEMORANDUM OF POINTS AND
22 ELECTRONICS AMERICA, INC., a New              AUTHORITIES IN SUPPORT**
   York corporation; SAMSUNG
23 TELECOMMUNICATIONS AMERICA,                   **Date: October 13, 2011
   LLC, a Delaware limited liability company,    Time: 1:30 pm**
24                                               **Place: Courtroom 8, 4th Floor**
                  Defendants.                    **Judge: Hon. Lucy H. Koh**
25

26                                               **PUBLIC REDACTED VERSION**

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 13, 2011 at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Lucy Koh in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") will, and hereby does, move this Court for an order excluding the Declaration of Cooper Woodring and his opinion regarding the alleged perceptions of ordinary observers from consideration on Apple Inc.'s ("Apple") motion for a preliminary injunction, as well as any testimony Apple may later attempt to submit him from concerning functionality.

This Motion is made pursuant to the *Federal Rules of Evidence* 403 and 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), on the grounds that Mr. Woodring has no sufficient factual basis for his opinions, and his opinions are not within his expertise, improperly ignore key facts, and are otherwise unreliable, incorrect, and unhelpful.

This Motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities in support thereof, the Declaration of Michael T. Zeller dated August 22, 2011, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

DATED: August 22, 2011                QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP


                                       By  */s/ Kevin Johnson*
                                       _____
                                           Charles K. Verhoeven
                                           Kevin P.B. Johnson
                                           Victoria F. Maroulis
                                           Michael T. Zeller
                                           Attorneys for SAMSUNG ELECTRONICS
                                           CO., LTD., SAMSUNG ELECTRONICS
                                           AMERICA, INC., and SAMSUNG
                                           TELECOMMUNICATIONS AMERICA, LLC

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

INTRODUCTION ................................................................................................................................ 1

RELEVANT FACTS ......................................................................................................................... 3

ARGUMENT ....................................................................................................................................... 8

I.      THE LAW REQUIRES THE EXCLUSION OF EXPERT TESTIMONY THAT IS
        UNHELPFUL, UNRELIABLE, OR OFFERED BY AN UNQUALIFIED
        WITNESS .............................................................................................................................. 8

II.     MR. WOODRING'S OPINIONS REGARDING THE ORDINARY OBSERVER
        MUST BE EXCLUDED BECAUSE HE LACKS THE SPECIALIZED
        KNOWLEDGE AND EXPERTISE TO SUPPORT THOSE OPINIONS ......................... 9

III.    MR. WOODRING'S OPINIONS REGARDING THE ORDINARY OBSERVER
        MUST BE EXCLUDED BECAUSE HE HAS NO SUFFICIENT FACTUAL
        BASIS FOR THEM ............................................................................................................. 12

IV.     MR. WOODRING'S SUBSTANTIAL SIMILARITY AND ORDINARY
        OBSERVER OPINIONS ARE UNRELIABLE BECAUSE HE IGNORED KEY
        FACTS ................................................................................................................................. 14

        A.      Mr. Woodring's Opinion Ignores Relevant and Invalidating Prior Art ................... 14

        B.      Mr. Woodring's Opinion Ignores the Functionality of the Claimed Elements
                of Apple's Designs ................................................................................................... 15

        C.      Mr. Woodring's Opinion Ignores Key Differences Between the Accused
                Products and Apple's Patented Designs .................................................................. 18

        D.      Mr. Woodring's Opinion Ignores the Sophistication of the Ordinary
                Purchaser of Smartphones and Computer Tablets .................................................. 22

CONCLUSION ................................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Astra Aktiebolag v. Andrx Pharm., Inc.,*
   222 F. Supp. 2d 423 (S.D.N.Y. 2002) ...................................................................................9

*In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.,*
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) .................................................................14, 16, 23

*Bourjaily v. United States,*
   483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987) ....................................................9

*Cano v. Cont'l Airlines Inc.,*
   193 Fed. Appx. 664 (9th Cir. 2006) ..................................................................................12

*Child Craft Indus., Inc. v. Simmons Juvenile Prods. Co., Inc.,*
   990 F. Supp. 638 (S.D. Ind. 1998) ....................................................................................22

*DSU Med. Corp. v. JMS Co., Ltd.,*
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) .........................................................................9, 11

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ........................................................................................1, 8, 9, 11, 12

*Durling v. Spectrum Furniture Co.,*
   101 F.3d 100 (Fed. Cir. 1996) ...........................................................................................15

*Edge Wireless, LLC v. U.S. Cellular Corp.,*
   312 F. Supp. 2d 1325 (D. Or. 2003) ..................................................................................22

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
   543 F.3d 665 (Fed. Cir. 2008) ...........................................................................................14

*General Elec. Co. v. Joiner,*
   522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) ..................................................11

*Gorham Mfg. Co. v. White,*
   81 U.S. 511 (1871) ......................................................................................................14, 15

*Guidroz-Brault v. Missouri Pacific R.R. Co.,*
   254 F.3d 825 (9th Cir. 2001) ...............................................................................................9

*Int'l Seaway Trading Corp. v. Walgreens Corp.,*
   589 F.3d 1233 (Fed. Cir. 2009) ....................................................................................14, 15

*Int'l Seaway Trading Corp. v. Walgreens Corp.,*
   599 F. Supp. 2d 1307 (S.D. Fla. 2009) , affirmed in part and vacated in part, 589 F.3d 1233
   (Fed. Cir. 2009) ...........................................................................................................14, 15

*Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am., Corp.,*
   103 F. Supp. 2d 268 (S.D.N.Y. 2000) ..............................................................................8, 9

*Jones v. United States*,
   933 F. Supp. 894 (N.D. Cal. 1996) aff'd, 127 F.3d 1154 (9th Cir. 1997) .................................12

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................................................8, 9

*Lloyd v. Conseco Fin. Corp.*,
   2001 WL 36097624 (C.D. Cal. Oct. 19, 2001) ..........................................................................12

*M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha*,
   250 F. Supp. 2d 91 (E.D.N.Y. 2003) .......................................................................................23

*Minka Lighting, Inc. v. Craftmade Intern., Inc.*,
   2001 WL 36186585 (N.D. Tex. May 16, 2001) .......................................................................22

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ....................................................................................................11

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997) ...............................................................................................16

*Reeves v. Commonwealth Edison Co.*,
   2008 WL 239030 (N.D. Ill. 2008) ...........................................................................................14

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010) ...............................................................................................16

*Robinson v. G.D. Searle & Co.*,
   286 F. Supp. 2d 1216 (N.D. Cal. 2003) ..................................................................................12

*Spotless Enter., Inc. v. A & E Products Group L.P.*,
   294 F. Supp. 2d 322 (E.D.N.Y. 2003) .....................................................................................16

*Textron Inc. By & Through Homelite Div. v. Barber-Colman Co.*,
   903 F. Supp. 1570 (W.D.N.C. 1995) .......................................................................................11

*Titan Tire Corp. v. Case New Holland, Inc.*,
   566 F.3d 1372 (Fed.Cir. 2009) ................................................................................................14

*Toomey v. Nextel Communications, Inc.*,
   2004 WL 5512967 (N.D. Cal. Sept. 23, 2004) ..........................................................................9

*U.S. v. Benson*,
   941 F.2d 598 (7th Cir. 1991) ..................................................................................................11

*U.S. v. Johnson*,
   54 F.3d 1150 (4th Cir. 1995) ..................................................................................................11

*United States v. Chang*,
   207 F.3d 1169 (9th Cir. 2000) ................................................................................................11

*United States v. McBride*,
   786 F.2d 45 (2d Cir. 1986) .......................................................................................................8

**MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF COOPER WOODRING**

1

**<u>Statutes</u>**

2  *Fed. R. Evid.* 702 ...................................................................................................8, 9, 11, 12

3  Transcript of Hearing on H.R. 1790 (102nd Congress) ...................................................17

4  Transcript of Hearing on SB 791 (100th Congress) ........................................................17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF COOPER WOODRING**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **Introduction**

In support of its motion for preliminary injunction, Apple submitted the Declaration of industrial designer, Cooper Woodring.  Mr. Woodring purports to opine on the ultimate issue of the perceptions of the ordinary observer of smartphones and computer tablets.  His opinions and methodology on that subject are inadmissible, however, because they fail the requirements of reliability and applicability to the facts under *Daubert* and the *Federal Rules*.

Mr. Woodring lacks the experience and relevant knowledge to opine about the perceptions of ordinary purchasers of smartphones and tablet computers or about the functionality of designs for smartphones and tablet computers.  He has never designed a smartphone or tablet computer and has never worked with the telecommunications carriers that sell them to consumers.   To reach his conclusions about smartphone and tablet computer consumer perceptions set forth in his Declaration, he relied on his vague recollections about undefined, unproduced consumer research that he reviewed in the 1970s and 1980s that was conducted for J.C. Penney, a mass-market department store that did not sell smartphones or tablet computers.  That information from a quarter of a century ago is not relevant to today's ordinary observer of smartphones and computer tablets.   As Mr. Woodring conceded, the retail environment he observed at J.C. Penny was "quite different" from the retail environment for Apple products.  Nonetheless, that research was the basis for Mr. Woodring's claimed expertise about consumer perceptions of smartphone and computer tablet design.  ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████.  Nor did he conduct any scientific study of such consumers.  When confronted with Apple's own data at his deposition, Mr. Woodring ████████████████████████████████

████████████████████████████████  Mr. Woodring's reliance on irrelevant market research from decades ago at J.C. Penney -- and his simultaneous failure to consider the much more on-point Apple market research -- render his opinions about the ordinary

observers of current smartphones and tablet computers unreliable and improperly divorced from the facts of this case.

Mr. Woodring's analysis in reaching his unfounded opinion about the perception of the ordinary observer is flawed at virtually every step.   To start, consideration of the relevant prior art is necessary to the substantial similarity analysis since the hypothetical ordinary observer is assumed to have knowledge of prior art.   Yet, in construing the scope of Apple's design patents, Mr. Woodring failed to account for the closest and most relevant prior art, analyzing instead only selected prior art from which he argued that Apple's designs were very different and therefore would not sharpen the hypothetical ordinary observer's perception of differences.

Similarly, Mr. Woodring's claim construction fails to account for the functionality of Apple's design, and his cavalier testimony that the Apple's design patents are not functional is unreliable.   Mr. Woodring knows that design patents do not protect functional design; he unsuccessfully lobbied Congress to change that.   But his declaration does not even pay lip service to the requirement of filtering out functionality.   When questioned about this omission, Mr. Woodring at first denied that any part of Apple's designs could be functional because the Patent and Trademark Office had approved them.   He then later asserted that he had also independently made this determination, based on his review of the design patents.   This was despite the fact that his Declaration made no mention of this alleged opinion.   Indeed, he had not even asked Apple for any information about the utilitarian functions any of the design elements serve, nor did he do any research about smartphone or tablet computer design to figure out any technological requirements or limitations.   Rather, Mr. Woodring merely said that he believed the fantastical testimony of an Apple designer, Christopher Stringer ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████   Such blind, unquestioning acceptance of a party's position, particularly when it is at odds with reason and common experience, reveals that Mr. Woodring's opinion cannot be considered that of a qualified, independent expert.

Mr. Woodring further diverges from reliable analysis by not comparing Samsung's actual products to Apple's designs, but instead manipulating images of Samsung's phones to shrink them

to the same height as Apple's iPhones.  Mr. Wooding cites no precedent for distorting critical evidence and offers no explanation of why an ordinary observer would mentally shrink the size of Samsung's phones when determining whether they would mistake them for the iPhone's design. Then, when comparing these distorted images, Mr. Woodring dismisses in wholly conclusory terms as "minor" such differences as significantly more ornamentation on both of Samsung's phones and, regarding the Infuse 4G, the lack of a distinct bezel element, much tighter corners of the rectangular shape, and generally oversized shape.

While Mr. Woodring may be qualified to leading advocacy efforts on behalf of industrial designers, his flawed analysis here that ignores core relevant facts like prior art, functionality, and Apple's non-litigation consumer research renders his opinions irrelevant, unreliable and inadmissible.

### **Relevant Facts**

<u>Mr. Woodring's Opinions.</u>   Mr. Woodring's declaration in support of Apple's preliminary injunction motion purports to address three topics:

- The alleged similarity between Apple's '677 design patent and Samsung's Galaxy S 4G and Infuse 4G products from the perspective of the ordinary observer;

- The alleged similarity between Apple's '087 design patent and Samsung's Galaxy S 4G and Infuse 4G products from the perspective of the ordinary observer; and

- The alleged similarity between Apple's '889 design patent and Samsung's Galaxy Tab 10.1 from the perspective of the ordinary observer.

*See* Woodring Dec. at ¶¶ 13-50.   In doing so, Mr. Woodring claims that on "visual inspection . . . all of the major design elements from the" '677 and '087 design patents are also found in the Galaxy S 4G and Infuse 4G products" and that "all of the major design elements from the patented 'D889 design are also found in the Galaxy Tab 10.1."   Woodring Dec. at ¶¶ 16, 22, 31, 37, 46. He concludes that "an ordinary observer purchasing a cellular phone would also find the [Galaxy S 4G and Infuse 4G designs] to be substantially the same as the patented ['677 and '087 designs]," *see* Woodring Dec. at ¶¶ 21, 27, 36 & 42, and "that an ordinary observer purchasing an electronic

device would also find the Galaxy Tab 10.1 design to be substantially the same as the patented 'D889 design."   *See* Woodring Dec. at ¶ 50.

In his opinions, Mr. Woodring ignores key facts and relevant considerations.   For example, Mr. Woodring's declaration is silent on functionality.   Mr. Woodring claimed at deposition that although Apple did not ask him to opine on functionality, he did assess the functionality of the design patents.[1]   Yet, as Mr. Woodring testified, he did not ask Apple for any information about the utilitarian functions any of the design elements serve, nor did he do any research about mobile phone or tablet computer design to figure out any technological requirements or limitations.[2]   Rather, all Mr. Woodring could point to support was his unquestioning reliance on the word of Apple designer Christopher Stringer ███████████ ███████████████████████████████████████████████████████████████ ██████[3]

Additionally, Mr. Woodring reviewed only the prior art cited in the file history of Apple's design patents and two prior designs identified by Samsung as non-exhaustive examples at a hearing soon after this litigation was filed[4] and, based on that review, concluded that the Samsung products "entirely overlap with" Apple's patented designs, but are "far afield from the designs of the prior art [he] considered."   Woodring Dec. ¶¶ 18, 24, 33, 39 & 47.   Mr. Woodring conducted no independent prior art analysis.   At his deposition, however, he admitted that Apple's D'677 and D'087 patents are "substantially the same" as the design of a prior art Japanese Design Registration 1241638 that was obtained by Sharp.[5]

---

[1]   Revised Deposition Transcript of Cooper Woodring ("Woodring Depo. Tr."), dated August 5, 2011, at 47:18-49:14, and 296:18-297:1, Zeller Dec. Exh. 1.
[2]   Woodring Depo. Tr. at 51:6-52:21, 49:16-50:19, Zeller Dec. Exh. 1.
[3]   Woodring Depo. Tr. at 170:8-12, 172:7-14, Zeller Dec. Exh. 1; *see id.* at 272:11-274:4, Zeller Dec. Exh. 1; Deposition Transcript of Christopher Stringer dated August 3, 2011 at 45:20-46:8, 56:5-23 (regarding the iPad), Zeller Dec. Exh. 8.
[4]   At the May 12, 2011 hearing in this case, Samsung identified U.S. Design Patent No. D498,754 and D563,929 as examples of prior art.   These are in no way the only prior art that Samsung will be submitting, and Mr. Woodring's surmise otherwise was wholly without basis.
[5]   Woodring Depo. Tr. at 207:10-208:21, 216:10-217:8, Zeller Dec. Exh. 1.

**MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF COOPER WOODRING**

1    Mr. Woodring's opinions additionally failed to consider a multitude of significant

2  differences between Apple's design patents and the accused Samsung products such that an

3  ordinary observer would not confuse the two.   For the few differences he perceived, he dismissed

4  them as "minor" and asserted that they "do not carry sufficient weight to alter the overall

5  impression."   *See* Woodring Dec. at ¶¶ 19-20, 25-26, 34-35, 40-41 & 48-49.   Yet, at deposition

6  (and in a prior declaration submitted under oath), Mr. Woodring admitted that ██████████

7  █████████████████████████████████████████████████████████████[6]   At

8  deposition, Mr. Woodring further admitted that customers pay more attention and exercise more

9  care when purchasing expensive items.[7]   In particular, he admitted that purchasers of smartphones

10 pay attention to design differences between products because they are on the more costly side.[8]

11 He also conceded that the fact that the purchase of smartphones typically requires customers to

12 enter into long-term contracts make consumers more careful in their purchasing decisions.[9]   In

13 opining on the beliefs of the ordinary observer of smartphones and computer tablets, however, his

14 declaration ignored these considerations.   And, instead of accounting for the key differences, Mr.

15 Woodring re-sized and re-scaled the images of the accused Samsung products in ways that

16 ordinary observers would never encounter because as he decided that such manipulation "makes

17 the comparison an easier one to make."[10]

18

19 _____

20    [6]   Woodring Depo. Tr. at 29:13-31:4, Zeller Dec. Exh. 1; Expert Design Report of Non
21 Infringement in the Case of TomTom International, B.V. v. Garmin International Inc., by Cooper
   Woodring, dated October 10, 2006, bates numbered APLNDC00010758, at 3 ██████████████
22 ████████████████, Zeller Dec. Exh. 3.
      [7]   Woodring Depo. Tr. at 188:16-23, Zeller Dec. Exh. 1.
23    [8]   Woodring Depo. Tr. at 74:21-75:3, Zeller Dec. Exh. 1.
      [9]   Woodring Depo. Tr. at 77:11-22, Zeller Dec. Exh. 1.
24    [10]   Woodring Depo. Tr. at 123:23-124:18 ("So to scale the drawings in a design patent to the
25 same scale or size as an accused product simply ***makes the comparison an easier one to make***.")
   (emphasis added), Zeller Dec. Exh. 1; *see e.g.,* Declaration of Cooper C. Woodring in Support of
26 Apple's Motion for Preliminary Injunction, dated June 30, 2011, Docket No. 90, ("Woodring
   Dec."), Ex. 9 (side-by-side comparisons of iPhone 3GS and Galaxy S 4G), Ex. 12 (side-by-side
27 comparisons of iPhone 4 and Infuse 4G), Ex. 15 (side-by-side comparisons of iPhone 1 and
   Galaxy S 4G), Ex. 18 (side-by-side comparisons of iPhone 1 and Infuse 4G), Zeller Dec. Exh. 4.

28

1        <u>Mr. Woodring's Background and Experience</u>.   Mr. Woodring has never designed a

2    smartphone or tablet computer.   Nor has he ever worked in a retail environment that sold

3    smartphones or tablets, or worked with carriers that sell them.[11]   Mr. Woodring did not even

4    understand such basic smartphone terminology as "4G" or know whether Apple sold such

5    phones.[12]   According to Mr. Woodring the main experience that ostensibly qualifies him as an

6    expert "as to how an ordinary observer would perceive and evaluate cellular phone and tablet

7    computer designs" is his tenure at J.C. Penney – which ended in 1986 some 25 years ago[13] – and

8    his own personal experience in purchasing electronics.[14]   Mr. Woodring's personal experience

9    without more does not sufficiently distinguish him from the millions of other purchasers of

10   consumer electronics to qualify him to opine as an expert.   That is all the more true because Mr.

11   Woodring has not purchased any smartphones or tablet computers by any manufacturer other than

12   Apple.[15]   Additionally, as he conceded, he does not have any personal experience that gives him

13   knowledge or information about the purchasers of smartphones or tablet computers by

14   manufacturers other than Apple.[16]

15       With respect to his experience at J.C. Penney, Mr. Woodring conceded that the retail

16   environment in 1986 is "quite different" than the retail environment for Apple products.[17]

---

[11]   Woodring Depo. Tr. at 108:6-12, Zeller Dec. Exh. 1.

[12]   Woodring Depo. Tr. at 41:2-8, Zeller Dec. Exh. 1.

[13]   Woodring Depo. Tr. at 192:18-19 (Mr. Woodring left J.C. Penney in 1986), Zeller Dec. Exh. 1.

[14]   *See* Woodring Dec. ¶7, Zeller Dec. Exh. 4; Woodring Depo. Tr. at 181:5-13 (Q.  Now, other than what you did at J.C. Penney and other than your own personal experiences, do you have any other experience -- that -- in observing purchasers of consumer electronics? A.  Nothing more than -- having purchased them myself and observing other people purchasing them probably while I was purchasing them. So, no, nothing more specific than what I've stated here."), Zeller Dec. Exh. 1.

[15]   Woodring Depo. Tr. at 184:6-11, Zeller Dec. Exh. 1.

[16]   Woodring Depo. Tr. at 184:12-25, Zeller Dec. Exh. 1.

[17]   Woodring Depo. Tr. at 183:1-12, Zeller Dec. Exh. 1.

Significantly, there were no smartphones or tablets when he worked at J.C. Penney.[18]   Despite this, Mr. Woodring testified that he relied on market research from J.C. Penney decades ago that has never been produced to reach his opinions about how ordinary observers perceive the products at issue in this case.[19]   He did not ask Apple for any internal research or data as to why consumers of smartphones or tablet computers purchase products or how they perceive and evaluate designs.[20]   Nor did he investigate what carriers believe is important in the design of smartphones and tablet computers.[21]   Although he purports to opine on the ordinary observer of smartphones and tablets, at deposition Mr. Woodring admitted he is not an expert on the reasons why consumers buy iPhones and iPads or smartphones and tablets in general.[22]   Moreover, he testified he did not know whether he was "offering an expert opinion in this case about what purchasers notice and care about in connection with the design of the iPhone".[23]   He guessed incorrectly, however, that the "vast majority" -- something like "70, 80" percent -- of iPhone purchasers purchase the iPhone because of its design.[24]   Apple's own market research, ███████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████[25]   Although he did not consider it, Mr. Woodring agreed that this type of "updated specific market research information about the purchasing

---

[18]   *See e.g.*, Woodring Depo. Tr. at 108:3-5 (testifies that J.C. Penney did not sell smartphones when he was working there); 185:1-7 (testifies that J.C. Penney did not sell smartphones or tablet computers when he was working there), Zeller Dec. Exh. 1.
[19]   Woodring Depo. Tr. at 188:25-190:24, 191:13-19, Zeller Dec. Exh. 1.
[20]   *See e.g.*, Woodring Depo. Tr. at 82:21-23 (Mr. Woodring admits he did not ask Apple for any of their internal research as to why consumers purchase iPhones.); 192:20-193:8 (Mr. Woodring testifies he didn't ask for any Apple market research regarding the products at issue because he "didn't think it was necessary."), Zeller Dec. Exh. 1.
[21]   Woodring Depo. Tr. at 83:5-9, Zeller Dec. Exh. 1.
[22]   Woodring Depo. Tr. at 81:2-17; 83:1-4, Zeller Dec. Exh. 1.
[23]   Woodring Depo. Tr. at 80:10-20, Zeller Dec. Exh. 1.
[24]   Woodring Depo. Tr. at 79:15-80:3, Zeller Dec. Exh. 1.
[25]   ████████████████████████████████ dated February 11, 2011, marked as Deposition Exhibit 14, at 23, Zeller Dec. Exh. 5.

**MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF COOPER WOODRING**

1  behavior of Apple's consumers *is relevant* to determining how an ordinary observer would

2  perceive and evaluate the smartphone and tablet computer designs at issue in this case."[26]

### Argument

## I.   THE LAW REQUIRES THE EXCLUSION OF EXPERT TESTIMONY THAT IS UNHELPFUL, UNRELIABLE, OR OFFERED BY AN UNQUALIFIED WITNESS

6       Under Rule 702, a witness may testify in the form of an opinion regarding scientific,

7  technical, or other specialized knowledge *only* if such knowledge will "assist the trier of fact to

8  understand the evidence or to determine a fact in issue"; if the witness is "qualified as an expert by

9  knowledge, skill, experience, training, or education"; and "if (1) the testimony is based on

10 sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

11 (3) the witness has applied the principles and methods reliably to the facts of the case."  *Fed. R.*

12 *Evid.* 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

13      Rule 702 "establishes a standard of evidentiary reliability" and "requires a valid . . .

14 connection to the pertinent inquiry as a precondition to admissibility."  *Daubert,* 509 U.S. at 590,

15 592; *see also Kumho Tire Co., Ltd.  v. Carmichael*, 526 U.S. 137, 149 (1999).   Determining the

16 admissibility of expert testimony is a two-step inquiry: is the testimony relevant and is it reliable?

17 *Kumho Tire Co.*, 526 U.S. at 147; *see also Daubert*, 509 U.S. at 590-591; *Johnson Elec. N. Am.,*

18 *Inc. v. Mabuchi Motor Am., Corp.*, 103 F. Supp. 2d 268, 280 (S.D.N.Y. 2000).

19      The relevance of an expert's opinion is measured by the same standards that govern

20 admission of other types of evidence.   But it is also analyzed under Federal Rule 702 to determine

21 whether the proposed testimony "fits" the facts of the case.  *See Daubert*, 509 U.S. at 591-92; *see*

22 *generally United States v. McBride*, 786 F.2d 45, 49 (2d Cir. 1986) (holding that the admission of

23 expert testimony calls for the application of the somewhat overlapping requirements of Federal

---

[26]   Woodring Depo. Tr. at 192:6-13 (emphasis added), Zeller Dec. Exh. 1.  Indeed, Mr. Woodring has sought to inflate his bona fides in the field of industrial design.  Mr. Woodring represented in his sworn declaration to the Court that he was one of only nine people in history to receive his "profession's highest award, the IDSA Personal Recognition Award."   Woodring Dec. at ¶ 4.  That claim is false and, in reality, 26 others have also received the award to date alone. Woodring Depo. Tr. at 178:24-180:4, Zeller Dec. Exh. 1.

Rules of Evidence 401, 402, 403 and 702).   Even if sufficiently reliable, an expert's opinion is not admissible if it will be "unhelpful" to the trier of fact and does not fit the facts of the case.   *See Daubert*, 509 U.S. at 591-92; *Astra Aktiebolag v. Andrx Pharm., Inc.*, 222 F. Supp. 2d 423, 488 (S.D.N.Y. 2002); *Johnson*, 103 F. Supp. 2d at 279-80.   "A trial court may exclude evidence when it finds that 'there is simply too great an analytical gap between the data and the opinion proffered.'"   *DSU Med. Corp. v. JMS Co., Ltd.* 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003) (internal citations omitted).   Assessment of the reliability or unreliability of an expert's opinion involves an examination of both the factual bases and assumptions underlying the opinion, and the soundness of the expert's methodology.   *See Johnson*, 103 F. Supp. 2d at 282-284.

The trial court must act as a "gatekeeper" to exclude scientific and non-scientific expert testimony that does not meet these admissibility requirements.   *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999); *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).   "The party offering challenged expert testimony has the burden of demonstrating, by a preponderance of the evidence, its admissibility."   *Toomey v. Nextel Communications, Inc.*, 2004 WL 5512967 at *3 (N.D. Cal. Sept. 23, 2004) (citing *Daubert*, 509 U.S. at 592 and n. 10 (internal citations omitted);   *DSU Med. Corp.*, 296 F. Supp. 2d at 1146-47 (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987).   Here, Apple cannot meet that burden.

## II.   MR. WOODRING'S OPINIONS REGARDING THE ORDINARY OBSERVER MUST BE EXCLUDED BECAUSE HE LACKS THE SPECIALIZED KNOWLEDGE AND EXPERTISE TO SUPPORT THOSE OPINIONS

A witness may be qualified as an expert "by knowledge, skill, experience, training, or education."   *Fed. R. Evid. 702*.   The party offering the expert's opinions has the burden to prove such qualifications.   *Toomey v. Nextel Communications, Inc.*, 2004 WL 5512967 at *5-8 (N.D. Cal. Sept. 23, 2004);   *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003).   Here, Apple has presented no evidence that qualifies Mr. Woodring as an expert with respect to the ordinary observer of smartphones and computer tablets.

1   Mr. Woodring has never designed a smartphone or tablet computer.  Significantly, Mr.

2   Woodring has never worked in any retail environment that sold smartphones or computer tablets

3   or worked with any of the carriers that sell them.[27]  Nor does Mr. Woodring have any training or

4   education in these areas.  Mr. Woodring's declaration and curriculum vitae are notably silent

5   regarding those areas.[28]  Nevertheless, he offers opinions concerning the ordinary observer of

6   smartphones and computer tablets.  He bases his opinions on his experience at J.C. Penney that

7   ended in 1986 – some 25 years ago – where no such products were sold[29]  and where the retail

8   environment was "quite different" from the retail environment in which Apple products are sold.[30]

9   Mr. Woodring also has no background or information as to the reasons consumers purchase smart

10   phones or computer tablets.[31]  In deposition he admitted he is not an expert on the reasons why

11   consumers buy iPhones and iPads or smartphones and tablets in general.[32]

12   Even Mr. Woodring's own personal experience purchasing electronics is limited and

13   insufficient.  For one, Mr. Woodring has not purchased any smartphones or tablet computers

14   other than those manufactured by Apple.  Second, he conceded he does not have any personal

15   experience that gives him knowledge or information about the purchaser of smartphones or tablet

16   computers by manufacturers other than Apple.[33]  Given these facts, Mr. Woodring's experience

17   purchasing products for his personal use does not sufficiently distinguish him from the millions of

18   other purchasers of consumer electronics to qualify him to opine as an expert.

19   Tellingly, Mr. Woodring claimed that the mere fact that he is an expert is enough for him

20   to opine on the observations of differences by the ordinary observer of Apple and Samsung's

21

22   [27]   *See, e.g.*, Woodring Depo. Tr. at 108:6-12, Zeller Dec. Exh. 1.

23   [28]   Curriculum Vitae of Cooper Woodring, Exhibit 6 to Woodring Dec., Zeller Dec. Exh. 4.
      Although Mr. Woodring claims to have firsthand experience observing purchasers of consumer

24   electronics – he mentions nothing specific with respect to smartphones and computer tablets.  See
      Woodring Dec. ¶ 7, Zeller Dec. Exh. 4.

25   [29]   *See* Woodring Depo. Tr. at 108:3-5, 185:1-7, Zeller Dec. Exh. 1.

26   [30]   Woodring Depo. Tr. at 183:1-12, Zeller Dec. Exh. 1.
      [31]   Woodring Depo. Tr. at 181:5-13, Zeller Dec. Exh. 1.

27   [32]   Woodring Depo. Tr. at 81:2-17, 83:1-4, Zeller Dec. Exh. 1.
      [33]   Woodring Depo. Tr. at 184:12-25, Zeller Dec. Exh. 1.

28

products.[34]   That is contrary to law.   "[N]ot every opinion offered by an expert is an expert opinion.   Rule 702 'does not afford the expert unlimited license to testify ... without first relating that testimony to some "specialized knowledge" on the expert's part....'.   Put another way, an expert's opinion 'must be an 'expert' opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert.'"   *Textron Inc. By & Through Homelite Div. v. Barber-Colman Co.*, 903 F. Supp. 1570, 1575 (W.D.N.C. 1995) (citing *U.S. v. Johnson*, 54 F.3d 1150, 1157 (4th Cir. 1995) and *U.S. v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991)).   Moreover, "'nothing in either *Daubert* or the *Federal Rules of Evidence* requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'   A trial court may exclude evidence when it finds that 'there is simply too great an analytical gap between the data and the opinion proffered.'"   *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 147, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)).

Mr. Woodring's opinions must be excluded because he is not qualified by knowledge, skill, experience, training or education to act as an expert on the beliefs of the ordinary observer of smartphones and computer tablets.   *See United States v. Chang*, 207 F.3d 1169, 1172-1173 (9th Cir. 2000) (district court did not abuse its discretion in precluding expert from testifying regarding matters beyond scope of expertise); *Nimely v. City of New York*, 414 F.3d 381, 399, n.13 (2d Cir. 2005) (holding that "because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields"); *Fed. R. Evid.* 702.

---

[34]   *See, e.g.*, Woodring Depo. Tr. at 264:6-21 (A.   The questions are getting longer and more difficult to answer, but your question says –asks me is there anything I'm relying on other than being an expert, and the answer is ***being an expert is enough***.   That's why I'm an expert.") (emphasis added), Zeller Dec. Exh. 1.

III.   **MR. WOODRING'S OPINIONS REGARDING THE ORDINARY OBSERVER MUST BE EXCLUDED BECAUSE HE HAS NO SUFFICIENT FACTUAL BASIS FOR THEM**

Rule 702 requires an expert's opinion to be "based upon sufficient facts or data."  *Fed. R. Evid.* 702; *Robinson v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216, 1221 (N.D. Cal. 2003) ("Rule 702 . . . requires, for expert testimony to be admissible, that the testimony be 'based on sufficient facts or data'"); *Cano v. Cont'l Airlines Inc.*, 193 Fed. Appx. 664, 666 (9th Cir. 2006).  "In *Daubert*, the Supreme Court noted that the question of relevance is whether the evidence is sufficiently tied to the facts of the case that it will assist the jury in resolving the issues before them."  *Lloyd v. Conseco Fin. Corp.*, 2001 WL 36097624 at *5 (C.D. Cal. Oct. 19, 2001).   The Court should "exclude scientific expert testimony under the second prong of the *Daubert* standard unless it is 'convinced that it speaks clearly and directly to an issue in dispute in the case.'"  *Jones v. United States*, 933 F. Supp. 894, 900 (N.D. Cal. 1996) aff'd, 127 F.3d 1154 (9th Cir. 1997) (quoting *Daubert*, 43 F.3d at 1321 n. 17).   Mr. Woodring's opinions must be excluded because he has no proper factual basis for them.   His opinions are not tied to the facts of the case.

Relying on amorphous, unproduced, market and consumer research from his experience at J.C. Penney over 25 years ago,[35] Mr. Woodring opines that the ordinary observer would find that the Samsung Galaxy S 4G and Infuse 4G designs are substantially the same as Apple's patented D'677 and D'087 designs, and Samsung's Galaxy Tab 10.1 design substantially the same as Apple's D'889 design.   Woodring Dec. ¶¶ 21, 27, 36, 42 & 50.   Mr. Woodring extrapolates his experience from quite a different set of circumstances, decades earlier, to purchasers of smartphones and tablet computers today and does so without any empirical data to support the extrapolation.   Mr. Woodring's experience at J.C. Penney in the 1970's and 1980's has nothing to do with the ordinary observer of smartphones and computer tablets – which are at issue in this case.   Mr. Woodring improperly applies those experiences to the facts here.   As Mr. Woodring admitted, the retail environment in 1986 is "quite different" than the retail environment for Apple

---

[35]   Woodring Depo. Tr. at 190:17-24, 191:13-19, Zeller Dec. Exh. 1.

products.[36]   Similarly, today's ordinary consumer has a very different experience than the one in 1970's and 1980's – the choices are different, the products are different, the technology is different – the entire market is different.

But Mr. Woodring's errors did not end there.   In addition to relying on irrelevant research, he failed to consider actually relevant consumer data.   Mr. Woodring did not ask Apple for any internal research or data on why consumers buy products or how they perceive and evaluate designs. ███████████████████████████████████████████████████████████████ ███████████ attempt to obtain up-to-date market research information about smartphones and tablet computers.[37]   Although he did not consider it, nor did he ask for it, Mr. Woodring agreed that this type of "updated specific market research information about the purchasing behavior of Apple's consumers *is relevant* to determining how an ordinary observer would perceive and evaluate the smartphone and tablet computer designs at issue in this case."[38]   In particular, one internal Apple market research Mr. Woodring did not consider, ██████████████████████████████████ ██████████████████████████████████████████████████████████████████ ███████████[39]   Nevertheless, as he also conceded at deposition, instead of seeking and analyzing such relevant market research, Mr. Woodring relied on the antiquated market and consumer research he obtained while at J.C. Penney some 25 years ago.[40]   In fact, once he learned of it for the first time at deposition, ███████████████████████████████████████████████ ████████████████████████████████████████████.[41]   Mr. Woodring's failure to account for it and instead his reliance on irrelevant market observations from decades ago makes his opinions unreliable and improperly divorced from the facts of this case.   They should be excluded.

---

[36]   Woodring Depo. Tr. at 183:1-12, Zeller Dec. Exh. 1.
[37]   Woodring Depo. Tr. at 166:14-23, 197:5-10, Zeller Dec. Exh. 1.
[38]   Woodring Depo. Tr. at 192:6-13 (emphasis added), Zeller Dec. Exh. 1.
[39]   ██████████████████████████████ dated February 11, 2011, marked as Deposition Exhibit 14, Zeller Dec. Exh. 5.
[40]   Woodring Depo. Tr. at 190:17-24; 191:13-19, Zeller Dec. Exh. 1.
[41]   Woodring Depo. Tr. at 82:21-23, 159:1-161:25, Zeller Dec. Exh. 1.

**MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF COOPER WOODRING**

1    **IV.    MR. WOODRING'S SUBSTANTIAL SIMILARITY AND ORDINARY OBSERVER**
2          **OPINIONS ARE UNRELIABLE BECAUSE HE IGNORED KEY FACTS**

3          When an expert ignores key facts or data contradicting his conclusions, the resulting
4    opinion is inadmissible because it is unreliable.   *See, e.g., In re Bextra and Celebrex Mktg. Sales*
5    *Practices and Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1181, 1184 (N.D. Cal. 2007) (finding an
6    expert opinion unreliable and inadmissible because the expert ignored evidence contradicting her
7    conclusions); *Reeves v. Commonwealth Edison Co.*, 2008 WL 239030, at *5-7 (N.D. Ill. 2008)
8    (precluding expert's opinions because he ignored key facts).   Here, Mr. Woodring ignores key
9    evidence regarding:   (1) relevant and invalidating prior art, (2) the functional aspects of the
10   claimed patented designs, (3) the significant differences between the accused products and Apple's
11   asserted patented designs, and (4) the sophistication of the purchasers of smart phones and
12   computer tablets at issue.   Each of these facts independently supports a finding of no design
13   patent infringement and requires the exclusion of Woodring's analysis.

14         **A.    Mr. Woodring's Opinion Ignores Relevant and Invalidating Prior Art**

15         Mr. Woodring's methodology is unreliable because he ignores key prior art.   Whether
16   substantially similarity exists is determined from the perspective of a hypothetical "ordinary
17   observer," who is assumed to have familiarity with all relevant prior art and who considers the
18   accused design "giving such attention as a purchaser usually gives."   *Gorham Mfg. Co. v. White*,
19   81 U.S. 511, 528 (1871); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir.
20   2008).   The hypothetical ordinary purchaser standard for determining substantial similarity is the
21   touchstone for determining infringement (comparing accused product to patented design), as well
22   as invalidity due to anticipation (comparing patented design to prior art) and obviousness
23   (comparing patented design to design one of ordinary skill in the relevant art would have found
24   obvious based on prior art at the time of invention or a year before the patent application was filed,
25   whichever comes later).   *Gorham Mfg. Co.*, 81 U.S. at 528; *Int'l Seaway Trading Corp. v.*
26   *Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) (anticipation); *Titan Tire Corp. v. Case*
27   *New Holland, Inc.*, 566 F.3d 1372, 1380-81 (Fed.Cir. 2009) (obviousness).   If "one of ordinary
28   skill would have combined teachings of the prior art to create the same overall visual appearance

as the claimed design," the challenged design is invalid as obvious.  *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).  "Pursuant to the ordinary observer test, a design is anticipated by prior art 'if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'"  *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 599 F. Supp. 2d 1307, 1317 (S.D. Fla. 2009) (quoting *Gorham Mfg. Co.*, 81 U.S. at 528), affirmed in part and vacated in part, 589 F.3d 1233 (Fed. Cir. 2009).  Whether determining infringement, anticipation, or obviousness, "[m]inor variations in the [design] are insufficient to preclude a finding of anticipation because they do not change the overall visual impression of the [design]."  *Int'l Seaway*, 589 F.3d at 1243.

Reviewing only the prior art cited in the file history of Apple's design patents and two prior designs identified by Samsung very early on in this litigation, Mr. Woodring concludes that the Samsung products "entirely overlap with" Apple's patented designs, but are "far afield from the designs of the prior art [he] considered."  Woodring Dec. ¶¶ 18, 24, 33, 39 & 47.  At his deposition, however, Mr. Woodring admitted that at least one prior art, Japanese design registration 1241638,[42] is substantially the same as the designs in Apple's D'677 and D'087 patents.[43]  Japanese design registration 1241638 was issued to Sharp on June 6, 2005, ten months before the purported invention of the iPhone, but was not disclosed by Apple during the prosecution of the D'677 and D'087 patents.  That Mr. Woodring did not consider substantially similar prior art, which invalidates Apple's design patents, render his opinions unreliable.  They should be excluded.

**B.      Mr. Woodring's Opinion Ignores the Functionality of the Claimed Elements of Apple's Designs**

Mr. Woodring's declaration is silent on the functionality of the claimed elements of Apple's patented designs.  *See generally*, Woodring Dec., *passim*.  His failure to identify and account for

---

[42]   Japanese design registration 1241638, Deposition Exhibit 67, Zeller Dec. Exh. 2.
[43]   Woodring Depo. Tr. at 207:10-208:21, 216:10-217:8, Zeller Dec. Exh. 1.

1    functionality renders his opinion irrelevant to the legal question of substantial similarity of the

2    non-functional design and unreliable by failing to account for the relevant facts.   *In re Bextra*, 524

3    F. Supp. 2d at 1181.

4         Identifying functional aspects of a design is indisputably a necessary step to construing the

5    protected scope of a design patent.   "Where a design contains both functional and non-functional

6    elements, the scope of the claim must be construed in order to identify the non-functional aspects

7    of the design as shown in the patent."   *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396,

8    1405 (Fed. Cir. 1997) (citation omitted).   When a design contains some ornamental aspects, "it is

9    entitled to a design patent whose scope is limited to those aspects alone and does not extend to any

10   functional elements of the claimed article."   *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288,

11   1294 (Fed. Cir. 2010) (upholding claim construction on basis the court properly excluded

12   functional elements of design in construing patent).   Even if not invalidating, the functional

13   elements of the design "'limit the scope of protected subject matter.'   Accordingly, even elements

14   that are not solely dictated by function are not included in the comparison to the extent they are

15   functional."   *Spotless Enter., Inc. v. A & E Products Group L.P.*, 294 F. Supp. 2d 322, 344

16   (E.D.N.Y. 2003) (quoting *OddzOn Prods.*, 122 F.3d at 1406).   Mr. Woodring's failure to exclude

17   the functional elements of the patented designs from his similarity comparisons render his

18   opinions unreliable.

19        Mr. Woodring recognizes that enhancing functionality is part of industrial design.   In his

20   Declaration, he states that "[t]he Industrial Designers Society of America ("IDSA") defines

21   industrial design as:

22        [T]he professional service of creating and developing concepts and

23        specifications that ***optimize the function***, value, and appearance of

24        products and systems for the mutual benefit of both user and

25        manufacturer.

26

27

28

**MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF COOPER WOODRING**

Woodring Dec. ¶ 2 (emphasis added).[44]   Moreover, Mr. Woodring is well aware that design patents do not protect functional design.   He unsuccessfully lobbied the Congress and Senate to change that – complaining that the current design patent law did not protect industrial designs.[45] Despite his advocacy, the law has not changed.[46]   Yet, Mr. Woodring testified that he did not include any functionality analysis in his declaration because he was not asked to opine on that subject.[47]   At first he claimed to have simply assumed the designs were ornamental because the Patent Office had granted Apple patents.[48]   Although his declaration is silent on functionality, he later claimed he did assess the functionality of the design patents.[49]   In doing so, however, Mr. Woodring did not review any engineering, design, manufacturing, or costing documents or indeed any other document apart from the design patents.[50]   He did not have any conversations with any of the inventors or anyone else at Apple about it.[51]   He did not ask Apple for any information about the utilitarian functions any of the design elements serve, nor did he conduct any research to determine any technological requirements or limitations.[52]   And of course Mr. Woodring has never designed a cell phone or tablet computer from which experience to extrapolate considerations of functionality.   Instead of all this, Mr. Woodring blindly relied on the

---

[44]   Comprehensive Description of Industrial Design, Exhibit 4 to Woodring Dec, Zeller Dec. Exh. 4.

[45]   Transcript of Hearing on SB 791 (100th Congress) before Senate Judiciary Subcommittee on Patents, Copyrights and Trademarks dated March 26, 1987, at 31-33, Zeller Dec. Exh. 6. Transcript of Hearing on HR 1790 (102nd Congress) before House Judiciary Subcommittee on Intellectual Property and Judicial Administration dated January 29, 1992, at 79-80, Zeller Dec. Exh. 7.

[46]   While Apple is free to retail lobbyists to support such a change, submitting Mr. Woodring's opinion as if it were valid under existing law is highly misleading.

[47]   Woodring Depo. Tr. at 47:18-49:14, Zeller Dec. Exh. 1.

[48]   Woodring Depo. Tr. at 46:14-47:14, Zeller Dec. Exh. 1.   He later contradicted his earlier testimony claiming he did not just assume that the designs were ornamental because of the Patent Office.   *Id.* at 49:3-5, Zeller Dec. Exh. 1. Rather, he summarily decided it was his opinion they were.   *Id.*

[49]   Woodring Depo. Tr. at 49:16-50:10, Zeller Dec. Exh. 1.

[50]   Woodring Depo. Tr. at 49:16-51:5, Zeller Dec. Exh. 1.

[51]   Woodring Depo. Tr. at 51:6-22, Zeller Dec. Exh. 1.

[52]   Woodring Depo. Tr. at 49:16-50:19, 51:6-22, Zeller Dec. Exh. 1.

1   demonstrably erroneous testimony of Mr. Stringer ████████████████████████████████

2   ████████████████████████████████████████████████████████.[53]

3          Despite this, during his deposition, even Mr. Woodring had to concede the functionality of

4   certain claimed elements of the Apple designs.   Mr. Woodring admitted for instance: (1) that the

5   black borders for the iPad and iPhone function to hide what is underneath them;[54] (2) the

6   rectangular shape is generally a comfortable shape for smartphones and convenient for tablet

7   computers;[55] (3) narrow borders on edges are more functional than wider borders, which would

8   either decrease the functionality of the display screen by forcing a more narrow display, or

9   decrease the comfort of the phone, by forcing a wider width;[56] (4) the simplicity of Apple's

10   designs communicates to the user that the technology is easy to understand and makes the product

11   less intimidating;[57] and (5) placing the speaker in the upper portion of phone allows it to

12   correspond with the user's ear.[58]   Yet his declaration makes no effort to carve out this

13   functionality from the claim construction he offers.   To the contrary, he specifically includes such

14   functional limitations as "rectangular" and "narrow borders" in each of his claim constructions and

15   his product similarity comparisons.

16          In light of the evidence of functionality of Apple's claimed designs, including through Mr.

17   Woodring's own testimony, Mr. Woodring's failure to exclude any functional aspects in making

18   his comparisons – as is required – was improper.

19         **C.**     **Mr. Woodring's Opinion Ignores Key Differences Between the Accused**

20                 **Products and Apple's Patented Designs**

21          Mr. Woodring downplays significant differences between Apple's design patents and the

22   accused Samsung products.   *See* Woodring Dec. at ¶¶ 19-20, 25-26, 34-35, 40-41 & 48-49.   Mr.

23

---

24       [53]   Woodring Depo. Tr. at 170:8-12, 172:7-14, Zeller Dec. Exh. 1;  *see id.* at 272:11-274:4, Zeller Dec. Exh. 1; Deposition Transcript of Christopher Stringer dated August 3, 2011 at 45:20-46:8, 56:5-23 (regarding the iPad), Zeller Dec. Exh. 8.

25       [54]   Woodring Depo. Tr. at 57:17-58:14, Zeller Dec. Exh. 1.

26       [55]   Woodring Depo. Tr. at 156:11-157:23, Zeller Dec. Exh. 1.

    [56]   Woodring Depo. Tr. at 122:22-123:14, Zeller Dec. Exh. 1.

27       [57]   Woodring Depo. Tr. at 154:9-16, 296:18-297:1, Zeller Dec. Exh. 1.

    [58]   Woodring Depo. Tr. at 171:24-172:3, Zeller Dec. Exh. 1.

28

1   Woodring admitted however ███████████████████████████████████████████

2   ████████████████████████.[59]   Yet Mr. Woodring fails to account for the designs' simplicity

3   in his opinion.   To the contrary, he summarily dismisses such readily perceptible and obvious

4   differences as the actual proportions, size and aspect ratio of the Samsung products as compared to

5   the Apple designs; the four navigational icons on the Samsung smartphones; and the placement of

6   a prominent Samsung logo on the accused products.

7        For example, with a 1.66 aspect ratio and a 4.5 inch rectangular screen, the proportions of

8   the Infuse 4G are substantially larger than the iPhone, which itself would be noticeable to any

9   smartphone purchaser.   The Infuse 4G is wider and longer than the iPhone, with wider borders on

10  the side of the screen, and narrower borders on the top and bottom.   Furthermore, the Infuse 4G

11  has a longer speaker that is raised above the glass, rather than a slot cut into the screen.   The rim

12  around the Infuse 4G is substantially thinner than that around the iPhone and depicted in the

13  patents.   The narrower top and bottom borders are even more significant given the substantial

14  amount of ornamentation on the front surface.   While the D'677 patent claims a design

15  "substantially free of ornamentation," the Infuse 4G has significant ornamentation in the form of

16  four navigational icons and the Samsung logo in the narrower border between the screen and

17  bottom edge.   This crowded border appears nothing like the thick, empty, black edge claimed by

18  the D'677 design.   Above the screen, the border has a raised speaker, the AT&T logo, and three

19  holes for cameras.   Finally, the narrow radius of the corners of the Infuse 4G creates the overall

20  impression of a large, rectangular device with minimally round edges, a prominent screen, and

21  substantial ornamentation.

22        While the D'087 design claims a "thin, continuous bezel" surrounding the front with an

23  "inwardly sloping profile," the Infuse 4G does not have a bezel at all.   Rather, the back case of the

24  Infuse 4G rounds up to the sides of the device to hold the screen and components in place.   Rather

25  _____

26   [59]   Woodring Depo. Tr. at 29:13-31:4, Zeller Dec. Exh. 1.; Expert Design Report of Non
     Infringement in the Case of TomTom International, B.V. v. Garmin International Inc., by Cooper
27   Woodring, dated October 10, 2006, bates numbered APLNDC00010758, at 3 █████████████
     ████████████████████████████████████, Zeller Dec. Exh. 3.

28

than sloping inward, the Infuse 4G casing forms a 90 degree angle with the screen, and then on the bottom half of the device, curves towards the flat back panel.  This creates a boxier look to the device, and further emphasizes the larger size of the Infuse 4G compared to the iPhone.  The Infuse 4G lacks entirely one of the "major features" Apple identifies for the D'087, which alone, and in combination with the other difference from the claimed design, demonstrates there is no likelihood that Apple will show smart phone customers will confuse the iPhone and Infuse 4G.

As with the Infuse 4G, the Galaxy S 4G has a larger screen than the iPhone (4 inches compared to 3.5) and an aspect ratio of 1.66 (compared to 1.50).  The corners of the Galaxy S have a wider radius than the iPhone.  Surrounding the larger screen are wider borders on the sides of the device, and narrower borders above and below the screen.  Like the Infuse 4G, the Galaxy S has a great deal of ornamentation on the narrower top and bottom borders, including the Samsung and T Mobile logos, four navigational icons, and three camera openings.  The result is that the only "open" space on the front surface is the screen, rather than have a minimalist overall design.  Though the Galaxy S 4G does have an actual bezel, the bezel is not flush with the front surface as with the iPhone.  The effect is to create a significantly thicker frame around the screen, giving the device a bulkier look than the iPhone.

There are also a number of very noticeable differences between the Galaxy Tab 10.1 and the design claimed by the D'889.  Unlike the 4:3 aspect ratio of the D'889 design, the Galaxy Tab 10.1 has an 16:9 aspect ratio – that is, it is noticeably wider and shorter than the claimed design.  Moreover, the Galaxy Tab 10.1's corners have a larger radius of curvature than that claimed by the D'889– that is, they are noticeably more round than those of the claimed design.

The back panel of the Galaxy Tab 10.1 shows significant departure from the D'889 design, as it has several prominent features and ornamentation that the D'889 lacks.  Whereas the back panel of the D'889 is completely uniform and without ornamentation, the Galaxy Tab 10.1 has a differently-colored, trapezoidal area appearing near the top of the device that is set off from the rest of the back surface and is made of a different material.  Further, two round features (camera and flash) are centered within the trapezoidal region.  A prominent "Samsung" logo is centered

**MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF COOPER WOODRING**

on the back of the device, and other writing is present towards the bottom of the back of the device.

The edges of the Galaxy Tab 10.1 are also very different from those claimed by the D'889. The top edge of the Galaxy Tab 10.1 has an off-center, prominent round feature as well as two rounded rectangular buttons towards the left side, and the right edge features an off-center, rounded rectangular feature (speaker). The bottom edge has a rounded rectangular feature centered thereon, as well as two round indentations on either side of that feature, and a small round hole to the right of center. The left edge features an off-center, rounded rectangular feature (speaker). In contrast, the D'889 claims only an optional round feature at the far right-hand side of the bottom edge and has an optional rectangular feature in the center of the left edge. Moreover, the actual shape of the edges is very different between the Galaxy Tab 10.1 and the D'889. While the D'889 features a fairly sharply-curved half-bullnose edge (so that the sides of the device are actually perpendicular to the front and back surfaces), the Galaxy Tab 10.1 edges are much more rounded, in a full-bullnose shape. Further, because of the shape of the edges of the device, from the front view the Galaxy Tab 10.1 has a much more pronounced rim than that claimed by the D'889. Finally, and also very noticeable to an ordinary observer, the depth of the Galaxy Tab 10.1 is approximately 1/30 of the width of the device, as opposed to the much thicker design claimed by the D'889 (depth is approximately 1/15 of the width).

In sum, the differences between the accused Samsung products and the design patents are not only numerous, but significant. Mr. Woodring's findings of substantially similarity are especially questionable since he "compared an actual physical sample of the Samsung product to the drawing figures of the patented design." Woodring Dec. ¶ 12. An ordinary observer comparing the actual product to the patented design would not only notice the differences listed above, but would recognize that they clearly differentiate the Samsung products from the claimed patented designs.

1       Instead of accounting for the key differences, Mr. Woodring manipulated the images of the

2  accused Samsung products to minimize the contrasts and "make[] the comparison an easier one to

3  make."[60]  By scaling the products so that the differences in size and proportion are artificially

4  eliminated, Mr. Woodring fails to consider the impact that the true size and dimensions of the

5  accused Samsung products would have on the overall impression in the eyes of the ordinary

6  observer. Mr. Woodring's manipulation of the true size of the products is misleading and

7  untethered from how an ordinary observer is likely to perceive the designs.

8      **D.**    **Mr. Woodring's Opinion Ignores the Sophistication of the Ordinary**

9             **Purchaser of Smartphones and Computer Tablets**

10       In the design patent context, ordinary observers "are presumed to accord an article they are

11  planning to purchase at least some level of discernment, although the sophistication and degree of

12  that review will vary with the type of product at issue."  *Minka Lighting, Inc. v. Craftmade*

13  *Intern., Inc.*, 2001 WL 36186585, at *12 (N.D. Tex. May 16, 2001).  The fact that the accused

14  product is expensive and not an "impulse purchase" is a significant factor in determining design

15  patent infringement.  *See Child Craft Indus., Inc. v. Simmons Juvenile Prods. Co., Inc.*, 990 F.

16  Supp. 638, 643-44 (S.D. Ind. 1998) (noting the fact that cribs are not impulse purchases is

17  important to a finding of no design patent infringement).   In other contexts, courts have

18  recognized the obvious—that consumers purchasing electronics for hundreds of dollars are

19  sophisticated, take care in making their purchases, and have knowledge of the range of products

20  under consideration.  *See Edge Wireless, LLC v. U.S. Cellular Corp.*, 312 F. Supp. 2d 1325, 1333

21  (D. Or. 2003) ("…consumers…buying expensive products…exercise a greater degree of care

22  when doing so and are thus less easily confused."   (citation omitted)); *M & G Elecs. Sales Corp.*

23

24

---

25     [60]   Woodring Depo. Tr. at 123:23-124:18 ("So to scale the drawings in a design patent to the
same scale or size as an accused product simply ***makes the comparison an easier one to make***.")

26  (emphasis added), Zeller Dec. Exh. 1; *see e.g.,* Woodring Dec., Ex. 9 (side-by-side comparisons of
iPhone 3GS and Galaxy S 4G), Ex. 12 (side-by-side comparisons of iPhone 4 and Infuse 4G), Ex.

27  15 (side-by-side comparisons of iPhone 1 and Galaxy S 4G), Ex. 18 (side-by-side comparisons of
iPhone 1 and Infuse 4G), Zeller Dec. Exh. 4.

28

**MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF COOPER WOODRING**

*v. Sony Kabushiki Kaisha*, 250 F. Supp. 2d 91, 104 (E.D.N.Y. 2003) (finding buyers of electronics equipment to be sophisticated).

Here, Mr. Woodring admitted at deposition that customers pay more attention and exercise more care when purchasing expensive items.[61]  In particular, he admitted that purchasers of smartphones pay attention to differences in designs because they are on the more costly side.[62] He also conceded that the fact that the purchase of smartphones requires customers to enter into long term contracts make consumers more careful in purchasing.[63]  Yet, Mr. Woodring's declaration completely ignores these considerations in opining on the beliefs of the ordinary observer of smartphones and computer tablets.  His opinions regarding the ordinary observer cannot be found reliable and must be excluded.

In sum, because the facts Mr. Woodring ignored – i.e., relevant invalidating prior art, the functionality of the patented designs, the significant differences between the accused products and Apple's ostensibly patented designs, and the sophistication of the ordinary purchaser of smartphones and computer tablets – are relevant to a finding of non-infringement, Mr. Woodring's deliberate failure to address these facts makes his opinions unreliable.  *See In re Bextra*, 524 F. Supp. 2d at 1179, 1181, 1184.  Accordingly, his ordinary observer and comparison analysis must be excluded because he ignores data that makes his analysis both unreliable and inapposite to the facts of this case.

---

[61]  Woodring Depo. Tr. at 188:16-23, Zeller Dec. Exh. 1.
[62]  Woodring Depo. Tr. at 74:21-75:3, Zeller Dec. Exh. 1.
[63]  Woodring Depo. Tr. at 77:11-22, Zeller Dec. Exh. 1.

## Conclusion

For the foregoing reasons, Samsung respectfully requests that this Court grant its motion.

DATED: August 22, 2011                    QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP


                                          By  /s/ Kevin Johnson
                                             Charles K. Verhoeven
                                             Kevin P.B. Johnson
                                             Victoria F. Maroulis
                                             Michael T. Zeller
                                             Attorneys for SAMSUNG ELECTRONICS
                                             CO., LTD., SAMSUNG ELECTRONICS
                                             AMERICA, INC., and SAMSUNG
                                             TELECOMMUNICATIONS AMERICA, LLC

**MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF COOPER WOODRING**