QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

CASE NO. 11-cv-01846-LHK

**REPLY IN SUPPORT OF SAMSUNG'S NOTICE OF MOTION AND MOTION TO EXCLUDE ORDINARY OBSERVER OPINIONS OF APPLE EXPERT COOPER WOODRING; AND**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**Date: October 13, 2011**
**Time: 1:30 pm**
**Place: Courtroom 8, 4th Floor**
**Judge: Hon. Lucy H. Koh**

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............ 1

INTRODUCTION ............ 1

ARGUMENT ............ 2

I. THERE IS NO SUFFICIENT "CONNECTION BETWEEN" THE FACTS AND MR. WOODRING'S OPINIONS REGARDING THE ORDINARY OBSERVER ............ 2

II. MR. WOODRING'S OPINIONS IGNORE KEY FACTS WHICH MAKE HIS OPINIONS UNRELIABLE ............ 4

A. Samsung Accurately Described the Prior Art and Mr. Woodring's Crucial Testimony That it is Substantially Similar to Apple's '087 and '677 Designs ............ 4

B. Apple Misrepresents Mr. Woodring's Purported Functionality Analysis ............ 8

C. Mr. Woodring Is Silent as to the Sophistication of the Ordinary Purchaser ............ 11

D. Apple Improperly Dismisses Significant Differences Between the Samsung Products and Apple's Patented Designs ............ 12

III. APPLE POINTS TO NO EVIDENCE THAT QUALIFIES MR. WOODRING AS AN EXPERT ON THE ORDINARY OBSERVER OF SMARTPHONES AND COMPUTER TABLETS ............ 13

CONCLUSION ............ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*,
67 F.2d 428 (6th Cir. 1933)....................8

*Avia Group Int'l, Inc., v. L.A. Gear California, Inc.*,
853 F.2d 1557 (Fed. Cir. 1988)....................10

*Best Lock Corp. v. Ilco Unican Corp.*,
94 F.3d 1563 (Fed. Cir. 1996)....................10

*In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.*,
524 F. Supp. 2d 1166 (N.D. Cal. 2007)....................4, 11

*Contessa Food Products, Inc. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002)....................7

*Crocs, Inc. v. ITC*,
598 F.3d 1294 (Fed. Cir. 2010)....................10

*Door-Master Corp. v. Yorktowne, Inc.*,
256 F.3d 1308 (Fed. Cir. 2001)....................7

*Durling v. Spectrum Furniture Co., Inc.*,
101 F.3d 100 (Fed. Cir. 1996)....................7

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008)....................6, 9

*Gorham Mfg. Co. v. White*,
81 U.S. 511 (1871)....................6, 14

*Hupp v. Siroflex of Am., Inc.*,
122 F.3d 1456 (Fed. Cir 1997)....................10

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
589 F.3d 1233 (Fed. Cir. 2009)....................7

*KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.*,
997 F.2d 1444 (Fed. Cir. 1993)....................8

*L.A. Gear v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993)....................12

*Lee v. Dayton-Hudson Corp.*,
838 F.2d 1186 (Fed. Cir. 1988)....................9

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997)....................8, 9

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010) ........ 9

*Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046 (D. Ariz. 2009) ........ 9

*Robinson v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216 (N.D. Cal. 2003) ........ 2

*Spotless Enterprises, Inc. v. A & E Products Group LP*, 294 F. Supp. 2d 322 (E.D.N.Y. 2003) ........ 10

*Sun Hill Indus. v. Easter Unlimited*, 48 F.3d 1193 (Fed. Cir. 1995) ........ 13

*Sun-Mate Corp. v. Koolatron Corp.*, *No. CV10-4735-JST (JCEx)*, 2011 U.S. Dist. LEXIS 84726 (C.D. Cal. Aug. 1, 2011) ........ 10

*U.S. v. Laurienti*, 611 F.3d 530 (9th Cir. 2010) ........ 14

*U.S. v. Lopez-Martinez*, 543 F.3d 509 (9th Cir. 2008) ........ 14

**Statutes**

37 C.F.R. sec. 1.56(a) ........ 6

Fed. R. Evid. 702 ........ 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Introduction**

It is undisputed, and Apple's Opposition cannot prove otherwise, that Apple's proffered expert, Cooper Woodring, based his ordinary observer opinion on facts that are inapplicable to consumer behavior for the accused products here -- smartphones and tablet computers -- and his opinion therefore should be excluded. Apple does not dispute that Mr. Woodring, in rendering his opinions, did not receive (or even ask for) Apple's available internal research or data on why consumers buy products or how they perceive and evaluate designs. [REDACTED] Apple undoubtedly chose to keep Mr. Woodring in the dark because [REDACTED] Instead, Mr. Woodring merely relied on his experience at J.C. Penney over 25 years ago where no smartphones or tablet computers were sold and where Mr. Woodring admits the retail environment was quite different. His reliance on irrelevant market research from decades ago, especially when coupled with his failure to consider research from today's market about smartphones and tablet computers that flatly contradicts his analysis, renders his ordinary observer opinions impermissibly speculative, unreliable and divorced from the facts. They should be excluded.

Mr. Woodring's flawed ordinary observer analysis also overlooks core facts like prior art and functionality, which likewise renders his opinion irrelevant, unreliable and inadmissible. Contrary to Apple's hyperbole, Samsung properly showed Mr. Woodring at his deposition the front surface of the Japanese design patent prior art from Sharp. Apple ignores that the two Apple phone design patents at issue cover *only* the front surface of those phones – the exact same portions that Mr. Woodring conceded was taught by the front surface of the Sharp prior art that he was examined on. Not only is Apple wrong on the facts, but it is wrong on the law. In demonstrating that a patent is invalid due to obviousness, it is appropriate under Federal Circuit law for Samsung to rely on a portion of the Sharp prior art. Apple also misrepresents Mr. Woodring's purported functionality opinion. Mr. Woodring conceded he did no such analysis,

and his declaration says nothing on functionality. Apple's assertion that Mr. Woodring had no duty to filter out the functional elements of the design patents, including the elements that he conceded at deposition were functional, is contrary to law and only serves to confirm that Mr. Woodring's opinions relied on an impermissible construction of the design patents at issue.

Despite all of these glaring flaws, Apple offers Mr. Woodring's opinions to advance its extreme positions in this litigation that competitors such as Samsung should be barred from using generalized design features that have long been common in smartphones and tablet computers, such as rounded corners and the color black. Apple may well have selected Mr. Woodring because of his own past advocacy that design patents be used as a "competitive weapon,"[1] just as Apple seeks to do in this litigation. Whatever the case, however, Mr. Woodring is not qualified to act as an expert with respect to the ordinary observer of smartphones and computer tablets, and Apple provides no evidence that he is. Indeed, he has never designed a smartphone or tablet computer (or even a phone for that matter) and has not worked with or at any retailer that sells them. As Mr. Woodring admitted, he is not an expert on the reasons why consumers purchase iPhones and iPads in particular or smartphones and tablets in general. Mr. Woodring's opinions are unreliable and irrelevant, and the Court should exclude them.

## Argument

### I. THERE IS NO SUFFICIENT "CONNECTION BETWEEN" THE FACTS AND MR. WOODRING'S OPINIONS REGARDING THE ORDINARY OBSERVER

Apple concedes that to be admissible, there must be "a 'sufficient connection' between the facts and the proffered opinion" of Mr. Woodring. Opp. at 2:6-8. *See also* Fed. R. Evid. 702; *Robinson v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216, 1221 (N.D. Cal. 2003) (Rule 702 "requires, for expert testimony to be admissible, that the testimony be 'based on sufficient facts or data'").

---

[1] Deposition Transcript of Cooper Woodring, dated August 5, 2011 ("Woodring Depo. Tr.") at 256:5-257:9, Supplemental Zeller Declaration In Support Of Samsung's Motion to Exclude Ordinary Observer Opinions of Apple Expert Cooper Woodring, dated September 20, 2011, ("Supp. Zeller Dec."), Exh. 1; *see also* Declaration of Cooper Woodring In Support of Apple's Motion For A Preliminary Injunction ("Woodring Dec."), Ex. 6 at 6, Zeller Dec. Exh. 4.

There is no such connection here, and Apple presents no evidence otherwise. Mr. Woodring relies on amorphous, conclusory claims about unproduced market and consumer research from his experience at J.C. Penney over 25 years ago.[2] Nowhere does Mr. Woodring, or even Apple, offer any empirical data or reliable basis to support his extrapolation of that experience to purchasers of smartphones and tablet computers today. Neither of them provide any plausible explanation as to why that experience is applicable to the facts of this case. It is not. As Mr. Woodring testified, that retail environment in 1986 is "quite different" than the retail environment for Apple products.[3] Apple tellingly does not dispute this proposition, let alone provide contrary proof. Opp. at 14.

Apple also concedes that even though Mr. Woodring's ordinary observer opinions rely on his claims about consumer behavior in a different retail environment involving different products during the 1980s, he did not receive — or even ask for — any of Apple's internal research or data on why consumers buy Apple products or how they perceive and evaluate Apple's designs. [REDACTED] and did not attempt to obtain current market research information about smartphones and tablet computers.[4] Without support, Apple dismisses such key data and information as irrelevant. Opp. at 10. Fatal to Apple's *ipse dixit* position, however, Mr. Woodring himself admitted that, as far as his opinion is concerned, this type of "updated specific market research information about the purchasing behavior of Apple's consumers ***is relevant*** to determining how an ordinary observer would perceive and evaluate the smartphone and tablet computer designs at issue in this case."[5] [REDACTED] is also relevant because it flatly refutes Mr. Woodring's opinion that ordinary observers overwhelming believe otherwise. And Apple's research defeats any

---

[2] Woodring Depo. Tr. at 190:17-24, 191:13-19, Zeller Dec. Exh. 1.
[3] Woodring Depo. Tr. at 183:1-12, Zeller Dec. Exh. 1.
[4] [REDACTED]
[5] Woodring Depo. Tr. at 192:6-13 (emphasis added), Zeller Dec. Exh. 1.
[6] [REDACTED]

argument that Apple could be suffering irreparable harm because it shows that the accused design infringement could have no meaningful effect on Apple's market share.

In a last ditch attempt to salvage Mr. Woodring, Apple posits that because the parties merely dispute Mr. Woodring's ultimate conclusions, those disagreements should only affect the weight afforded to Mr. Woodring's opinions. Opp. at 3. Apple is wrong. Samsung does not simply dispute Mr. Woodring's ultimate conclusions. Though Samsung believes they are also inaccurate, those opinions are based on key premises and methodologies that are unconnected to the facts of this case and ignore other, more relevant data. His opinions regarding the ordinary observer are therefore inadmissible under *Daubert*.

## II. MR. WOODRING'S OPINIONS IGNORE KEY FACTS WHICH MAKE HIS OPINIONS UNRELIABLE

Apple concedes that Mr. Woodring failed to consider certain facts in rendering his opinions. Yet, it also claims that Mr. Woodring actually did consider other facts — facts that Mr. Woodring himself admitted he failed to consider — but that they do not alter his analysis. Apple quibbles that the facts Mr. Woodring ignored were irrelevant or misconstrued by Samsung. Opp. at 2-12. Apple's arguments are unavailing. Each of the facts Mr. Woodring ignored — such as highly relevant prior art, functionality, sophistication of the purchasers, and the differences between the Apple patents and Samsung's products — requires the exclusion of his analysis. *See, e.g.*, *In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176-77, 1179-81 (N.D. Cal. 2007).

### A. Samsung Accurately Described the Prior Art and Mr. Woodring's Crucial Testimony That it is Substantially Similar to Apple's '087 and '677 Designs

Mr. Woodring testified at deposition that the front face of the device shown in Japanese design registration 1241638[7] is "substantially the same" as the designs in Apple's asserted D'677

---

[7] Deposition Exhibit 67, Zeller Dec. Exh. 2; *see also* Japanese design registration 1241638, Supp. Zeller Dec. Exh. 2.

and D'087 phone patents.[8] Unfortunately for Apple, this registration was filed by Sharp and issued by the Japanese Patent Office well before Apple's claimed invention dates for its iPhone design. Seeking to evade the admissions of its own expert, Apple nevertheless tries to spin his testimony. Opp. at 4-6. That attempt fails. In reality, during his deposition, Mr. Woodring repeatedly admitted that the front face of the device covered by Japanese design registration 1241638[9] is "substantially the same" as the designs in Apple's D'677 and D'087 patents.[10] Apple merely cites to a portion of Mr. Woodring's testimony where, only *after* he made his unambiguous admissions and only *after* the repeated, improper speaking objections by Apple's counsel that coached him to change his answers,[11] he *later* tried to vaguely claim (consistent with Apple's counsel's speaking objections)[12] that it would be "impossible to make [the] determination."[13] Contrary to Apple's attempts to portray this additional testimony as salvaging Mr. Woodring's admissions, these efforts by Apple's counsel and Mr. Woodring to back-peddle after Mr. Woodring's repeated admissions that the prior art was indeed "substantially the same" as Apple's claimed designed patents[14] only further show the impropriety of Mr. Woodring's opinions.

Moreover, Apple does not dispute that Mr. Woodring failed to consider Japanese design registration 1241638.[15] Apple complains that Samsung should have identified this prior art earlier in this case (Opp. at 3), but that assertion is baseless and indeed is backward. Apple was obligated to identify that prior art not only to Samsung, but also to the Patent Office when it sought the design patents at issue. Japanese design registration 1241638 was issued to Sharp on

---

[8] Woodring Depo. Tr. at 207:10-208:21, 216:10-22, Zeller Dec. Exh. 1.

[9] Deposition Exhibit 67, Zeller Dec. Exh. 2.

[10] Woodring Depo. Tr. at 207:10-208:21, 216:10-22, Zeller Dec. Exh. 1.

[11] Woodring Depo. Tr. at 217:5-224:19 (Woodring agreeing that Exhibit 67 shares the major design elements of the Apple D'087 design, as described in his declaration at paragraph 31, subparagraphs A through E, interspersed by counsel's objections), Supp. Zeller Dec. Exh. 1.

[12] Woodring Depo. Tr. at 217:9-14, 223:10-14 and 224:13-19, Supp. Zeller Dec. Exh. 1.

[13] Woodring Depo. Tr. at 224:20-225:9, Supp. Zeller Dec. Exh. 1.

[14] Woodring Depo. Tr. at 207:10-18, 208:8-21, 216:24-217:20, Zeller Dec. Exh. 1.

[15] Deposition Exhibit 67, Zeller Dec. Exh. 2.

June 6, 2005. That was ten months before the purported invention of the iPhone design patents. Yet, Apple did not disclose it during the prosecution of the D'677 and D'087 patents. 37 C.F.R. sec. 1.56(a) (patent applicant has "a duty to disclose to the Office all information known . . . to be material to patentability.").[16]

In any event, it is immaterial to this *Daubert* motion whose burden it is to identify relevant prior art, because Mr. Woodring's failure to consider it makes his opinion unreliable. The "ordinary observer" is assumed to have familiarity with all relevant prior art (*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676-77 (Fed. Cir. 2008)), and is one who considers the accused design "giving such attention as a purchaser usually gives." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). Given the Japanese prior art that Mr. Woodring failed to consider but admitted was "substantially the same" as the D'087 and D'677 patents, Mr. Woodring's opinion is not that of an ordinary observer conversant with the relevant prior art. Simply because Apple believes it does not have the burden to produce evidence does not mean that its experts' opinions are immunized from being challenged as unreliable when evidence comes along that proves those opinions failed to address highly relevant art. Otherwise, an expert could rely on the smallest amount of prior art possible and then state that any new invalidating prior art cannot affect the reliability of his opinion. Either Apple chose not to investigate relevant prior art in prosecuting its design patents and preparing Mr. Woodring to testify, or it knew about this patent and kept quiet about it. Either way, Apple cannot now cry foul. Mr. Woodring's opinions did not properly consider key prior art and thus his testimony is not that of someone conversant in the relevant prior art.

---

[16] Apple's reliance on the few prior art examples that Samsung cited during a hearing less than a month after Apple filed its lawsuit is misplaced for additional reasons. These examples are not and were not the only prior art that Samsung would be relying on — Samsung never said they were — and Apple's surmise otherwise is unsupported. Indeed, Samsung uncovered the key Japanese design registration 1241638 only as a result of its own investigation after this suit began because Apple never disclosed it. Apple's apparent suggestion that the prior art should be deemed "frozen" as of some hearing date unilaterally picked by Apple is not only inconsistent with the deadlines set by this Court, but asks the Court to reward *Apple* for concealing key prior art to both the Patent Office during patent prosecution and to Samsung in this litigation.

Apple contends that Samsung acted inappropriately by showing Mr. Woodring the front face design of the device as disclosed by Japanese design registration 1241638 and should have shown Mr. Woodring all views of that art so that he would have seen alleged differences between it and the Apple designs. Opp. at 4-6. Apple misstates the facts and the law. Critically, Apple ignores that the D'677 and D'087 patents which Apple has asserted on the preliminary injunction motion claim *only the front face of the phone design*. Thus, that front face was and remains the only material part of the Japanese prior art for comparison purposes as part of patent invalidity analysis. Apple's legal contention that Federal Circuit law requires a comparison of all available views for the substantial similarity analysis is demonstrably wrong as well. The obviousness test for invalidity still allows comparisons between individual aspects of prior art designs, and even individual aspects of multiple prior art designs, as the Federal Circuit affirmed in *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). Thus, the prevailing Federal Circuit precedent for obviousness remains *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996). The *Durling* test requires as an initial matter that a primary reference be found that has "basically the same" visual impression as the claimed design. *Id*. Then, the inquiry turns to combining prior art designs, if need be. Specifically, if "one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design," the challenged design is invalid as obvious. *Id.*[17]

Thus, in showing that the Apple design patents at issue are invalid due to obviousness, Samsung properly has relied on the front surface portion of the prior art because that is what corresponds to the Apple design patents that likewise claim only the front surface portion. As is seen from the front view of the Sharp prior art design, Apple's design phone patents at issue are obvious in light of that art because they include all of the main features that Apple claims: (1) the

---

[17] Apple's citations do not hold otherwise (see Opp. at 6). Instead they require a comparison with the entire design patent only in assessing infringement and anticipation, not when comparing prior art for invalidity due to obviousness. *See Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1381 (Fed. Cir. 2002) (requiring comparison of all views of a design in assessing infringement); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313-14 (Fed. Cir. 2001) (looking to all views in assessing infringement and anticipation).

speaker shape; (2) the rectangular design; (3) the rounded corners; and (4) the screen with thin borders on the side and wide borders on top and bottom. Apple's further assertion that the Sharp art "is no different than the prior art Mr. Woodring already considered" is unsupported by Mr. Woodring's testimony and is belied by the evidence. Opp. at 7. The Sharp prior art discloses all material features claimed by Apple in its D'677 and D'087 patents.[18] Mr. Woodring's failure to consider that art renders his opinions unreliable.

**B. Apple Misrepresents Mr. Woodring's Purported Functionality Analysis**

Mr. Woodring conceded at deposition that claimed elements of the Apple patented designs were functional. Opp. at 9. Apple acknowledges that he so testified, but it urges that Mr. Woodring had no duty to filter out those admittedly functional elements out of the infringement analysis. That is contrary to law. A design patent does not protect functional design. *See, e.g.*, *KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc*., 997 F.2d 1444, 1450 (Fed. Cir. 1993) ("A design patent protects the non-functional aspects of an ornamental design as shown in a patent."). If it were otherwise, it would subvert the purpose of design patent law. *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933) ("To hold that general configuration made necessary by function must give to a patented design such breadth as to include everything of similar configuration, would be to subvert the purpose of the law, which is to promote the decorative arts. . . .") (internal citations omitted).[19] Significantly here, "[a] design patent only protects the novel, ornamental features of the patented design." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). Thus, even if the presence of functional

[18] [redacted]

[19] Apple does not dispute that Mr. Woodring is well aware that design patents do not protect functional design since he unsuccessfully lobbied the Congress and Senate to change that. Tr. of Hearing on SB 791 (100th Congress) before Senate Judiciary Subcomm. on Patents, Copyrights and Trademarks dated March 26, 1987, at 31-33, Zeller Dec. Exh. 6. Transcript of Hearing on HR 1790 (102nd Congress) before House Judiciary Subcomm. on Intellectual Property and Judicial Administration dated January 29, 1992, at 79-80, Zeller Dec. Exh. 7.

elements in a design patent do not operate to invalidate it in its entirety, they still limit the scope of protection that the patent provides against alleged infringement. Mot. at 16. As the Federal Circuit has mandated, "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent" because "the patentee must show that the perceived similarity is based on the ornamental features of the design." *Id.* Indeed, cases cited by Apple to the contrary actually agree with Samsung on this score.[20]

Apple's confusion on the case law also accounts for its erroneous claim that Samsung has to prove that there are "no alternative smartphone or tablet computer designs" in order to show functionality. Opp. at 8.[21] The pertinent issue on this *Daubert* motion is not patent invalidity due to functionality, but rather Mr. Woodring's legally impermissible claim construction. It is the patentee's burden to prove infringement based solely on the ornamental elements of the design patent. *See OddzOn Prods.*, 122 F.3d at 1405 ("[Where] a design contains both functional and ornamental features, the patentee must show that the perceived similarity is based on the ornamental features of the design"). As both Samsung's and Apple's authorities hold as shown above, it is also black letter law that design patents can protect against infringement only insofar

---

[20] *See, e.g., Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1190 (Fed. Cir. 1988) (for infringement to occur, claimed patents and accused designs "must be equivalent in their ornamental, not functional, aspects.") (emphasis added); *Egyptian Goddess*, 543 F.3d at 680 (trial courts can aid fact finder in design patent infringement cases by "distinguishing between those features of the claimed design that are ornamental and those that are purely functional.") (citing *OddzOn Prods*, 122 F.3d at 1405 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.")).

[21] *Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1050 (D. Ariz. 2009), cited by Apple purportedly to the contrary, actually supports Samsung. There, certain elements were considered "functional and therefore not protected by the '167 patent" even though many alternate designs were possible. *Id.* ("[T]he jaw or claw element of the tool can take many different forms.") On appeal, the plaintiff contested this ruling, asserting exactly the same thing Apple has stated here, that "a design element is purely functional only when the function encompassed by that element cannot be performed by any other design." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). The Federal Circuit disagreed, holding that the district court had "properly factored out the functional aspects of Richardson's design as part of its claim construction." *Id.*

as the individual elements claimed in the patent are primarily ornamental, and not primarily functional, and that similarity of functional elements must be filtered out from the infringement analysis.[22] Because functionality is an essential element of the claim construction and infringement inquiries, the law required Mr. Woodring to exclude from his analysis (at the very least) the aspects of the claimed designs that he admitted are functional (Mot. at 18) as well as those product features that Apple likewise has admitted "may enhance the utility" of the product. Opp. at 9. Mr. Woodring's refusal to do so renders his opinions inadmissible under *Daubert*.

Contrary to Apple's assertions (Opp. at 7), Mr. Woodring himself testified at deposition that he was not asked to opine on functionality and for that reason did not include any functionality analysis in his declaration.[23] He simply *assumed* the designs were ornamental because the Patent Office had granted Apple patents.[24] Later in the deposition, after his counsel's repeated objections in an effort to coach him,[25] Mr. Woodring realized his error and did an about-

[22] Apple additionally fails to furnish any on-point precedent requiring Samsung to prove that no alternative designs exist when conducting an infringement analysis (as opposed to an invalidity one). This is not surprising. Courts recognize that "even elements that are not solely dictated by function are not included in the comparison to the extent they are functional." *See, e.g.*, *Spotless Enterprises, Inc. v. A & E Products Group LP*, 294 F. Supp. 2d 322, 344 (E.D.N.Y. 2003). Thus, "the process of distinguishing the ornamental features is merely a form of claim construction and is distinct from the functionality analysis of invalidity." *Id.* The cases cited by Apple purportedly to the contrary are inapposite. Opp. at 9 n.2. In *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996), *Avia Group Int'l, Inc., v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988), and *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460-61 (Fed. Cir 1997) — the Federal Circuit dealt with the issue of whether a design patent was invalid because it was purely functional, not whether and to what extent individual elements were functional or ornamental. The remaining cases cited by Apple — *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); and *Sun-Mate Corp. v. Koolatron Corp.*, No. CV10-4735-JST (JCEx), 2011 U.S. Dist. LEXIS 84726, at *8-10 (C.D. Cal. Aug. 1, 2011) — are irrelevant because they have nothing to do with determining functionality in the infringement context and merely warn against excessive verbal claim constructions in design patent cases, which is not at issue here.

[23] Woodring Depo. Tr. at 47:18-49:14, Zeller Dec. Exh. 1.

[24] Woodring Depo. Tr. at 46:14-47:14, Zeller Dec. Exh. 1. He later contradicted his earlier testimony claiming he did not just assume that the designs were ornamental because of the Patent Office. *Id.* at 49:3-5, Zeller Dec. Exh. 1. Rather, he summarily decided it was his opinion that they were. *Id*.

[25] Woodring Depo Tr. at 46:14-49:5, Supp. Zeller Dec. Exh. 1

face by claiming he did assess functionality.[26] However, no such analysis was in fact done. And, in any event, Mr. Woodring conceded he did not do any investigation or analysis sufficient to conduct a proper functionality analysis.[27] Mr. Woodring's failure to account for functionality — or to undertake a proper functionality analysis — renders his opinion irrelevant to the legal question of substantial similarity of the non-functional design and unreliable by failing to account for the relevant facts. *In re Bextra*, 524 F. Supp. 2d at 1181.

### C. <u>Mr. Woodring Is Silent as to the Sophistication of the Ordinary Purchaser</u>

Upon specific examination by Samsung, Mr. Woodring admitted that customers pay more attention and exercise more care when purchasing expensive items[28] and that purchasers of smartphones pay attention to differences in designs because they are on the more costly side.[29] Although he conceded these facts, Mr. Woodring did not factor them in his analysis. Despite the record that Mr. Woodring ignored the sophistication of the purchaser of smartphones and tablet computers in making his proffered ordinary observer opinions, Apple claims that he in fact did. Opp. at 10. Yet, Mr. Woodring's declaration is conspicuously silent as to the impact the sophistication of the purchaser of smartphones and tablet computers has on the ordinary observer analysis. Moreover, Mr. Woodring had ample opportunity at deposition to assert that he considered the sophistication of the consumer in his analysis — but he did not.[30] As a fall-back, Apple argues that Mr. Woodring's failure to consider these "arguably relevant fact[s]" should merely go to his testimony's weight. Opp. at 10. In reality, Mr. Woodring's failure to consider these plainly relevant facts, despite his knowledge of them, makes his opinions regarding ordinary observers unreliable. They should be excluded.

---

[26] Woodring Depo. Tr. at 49:16-50:10, Zeller Dec. Exh. 1.

[27] Woodring Depo. Tr. at 49:16-51:5, 51:6-22, 49:16-50:19, 51:6-22, Zeller Dec. Exh. 1.

[28] Woodring Depo. Tr. at 188:16-23, Zeller Dec. Exh. 1.

[29] Woodring Depo. Tr. at 74:21-75:3, Zeller Dec. Exh. 1.

[30] *See, e.g.*, Woodring Depo Tr. at 185:1-186:4, 181:5-182:6, 149:17-151:6, Supp. Zeller Dec. Exh. 1.

### D. Apple Improperly Dismisses Significant Differences Between the Samsung Products and Apple's Patented Designs

Contrary to Apple's assertion, the differences between the accused Samsung products and Apple's patented designs are not minute, but significant. Mot. at 18-22. Among others, Mr. Woodring wholly ignored obvious differences such as the actual proportions and aspect ratios of the Samsung products as compared to the Apple designs; the multiple navigational icons on the Samsung smartphones; and the placement of ornamentation[31] on the accused products. These critical differences change the overall impression on the ordinary observer. [REDACTED] Mr. Woodring nevertheless did not account for this in his opinions, but instead simply chose, improperly, to close his eyes to differences that did not advance Apple's cause.

Apple also cannot escape the fact that by manipulating the images of the accused Samsung products, Mr. Woodring makes them deceptively appear more similar than they appear to the ordinary observer. As Mr. Woodring admitted, these alterations "mak[e] the comparison an easier one to make."[33] That, by definition, is not what the ordinary observer encounters. Apple

---

[31] Apple claims, in a throw-away footnote, that logos and trade names do not avoid infringement. Opp. 11, n. 4. That misses the point. Apple has construed its own patents as covering designs that are "substantially free from ornamentation." Woodring Dec. at 5, 6, 8, 10, Zeller Dec. Exh. 4. The presence of surface ornamentation on Samsung's products – including in the form of Samsung logos and trade names – is an obvious difference that would be recognized by the ordinary observer under even Apple's view of its patents. The single authority that Apple cites, *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126 (Fed. Cir. 1993), says nothing to the contrary and involved a significantly different context since the lack of ornamentation was not claimed to be a feature of the asserted designs.

[32] Woodring Depo. Tr. at 29:13-31:4, Zeller Dec. Exh. 1; [REDACTED]

[33] Woodring Depo. Tr. at 123:23-124:18 ("So to scale the drawings in a design patent to the same scale or size as an accused product simply ***makes the comparison an easier one to make***.") (footnote continued)

also did not merely scale the images – but in fact skewed them, changing the proportions of the Samsung phone.[34] An ordinary observer comparing the actual product to the patented design would notice the differences, and recognize they clearly differentiate the Samsung products from the claimed patented designs. Mr. Woodring's analysis must be excluded because he ignores data that makes his analysis both unreliable and inapposite to the facts.

Unable to actually defend its conduct, Apple accuses Samsung of submitting inaccurate images. Unlike Apple, Samsung did not manipulate the images in its Opposition to the preliminary injunction motion to create artificial differences, as Apple alleges. Samsung's images were proportionate to the actual size and proportions of the products. And, further refuting Apple's false suggestions, Samsung provided the actual devices at issue to the Court to ensure that the Court could see for itself how the relevant products could look. In contrast, Apple submitted no actual products, but instead merely touted its images of demonstrably altered products, without even disclosing that they were altered.

## III. APPLE POINTS TO NO EVIDENCE THAT QUALIFIES MR. WOODRING AS AN EXPERT ON THE ORDINARY OBSERVER OF SMARTPHONES AND COMPUTER TABLETS

Mr. Woodring has no credentials or experience that qualifies him as an expert on the ordinary observations of the purchasers of smartphones and tablet computers, as his only "experience" is the time he spent working at J.C. Penney 25 years ago. J.C. Penney did not sell any smartphones or tablet computers during the time that Mr. Woodring worked there.[35] It did not even sell anything similar to such products, such as flat screen T.V.'s or monitor screens. Mr.

---

(emphasis added), Zeller Dec. Exh. 1; *see, e.g.*, Woodring Dec., Ex. 9, 12, 15, 18, Zeller Dec. Exh. 4.

[34] *Sun Hill Indus. v. Easter Unlimited*, 48 F.3d 1193, 1196-1197 (Fed. Cir. 1995), cited by Apple, did not involve manipulating images to change the proportions of the accused product. There the court was merely faulted for comparing an accused product to the commercial embodiment of the plaintiff's patent and finding non-infringement because the former was smaller than the latter, even though it looked the same. In *Sun Hill*, there was no skewing of an image to make the comparison easier – as is the case here.

[35] *See, e.g.*, Woodring Depo. Tr. at 108:3-5, 185:1-7, Zeller Dec. Exh. 1.

Woodring has never designed any phones, let alone smart phones or computer tablets, or any analogous products. Moreover, while Apple claims he studied the behavior of consumers when they shopped for the vague category of "electronics" and conducted interviews and surveys of those shoppers, that was over 25 years ago when no smartphones or tablet computers existed and when Mr. Woodring conceded the retail environment was quite different.[36] His observations decades ago are inapplicable to current smartphones and tablet computers. Nor has Apple met its burden of showing, with evidence, that such outdated, inapposite consumer information can be properly extrapolated to today's consumers of the products at issue in this case. In fact, Mr. Woodring admitted he is not an expert on the reasons why consumers buy iPhones and iPads in particular or smartphones and tablets in general.[37] Apple argues that an expert may be qualified to testify based on knowledge and experience alone. Opp. at 13. However, that experience and knowledge must be relevant to the facts at issue.[38] Apple touts Mr. Woodring as a great industrial designer. Opp. at 12. However, Mr. Woodring is not offering an opinion on industrial design. He is opining on the ordinary observations of purchasers of smartphones and computer tablets and basing his opinion on experience that is inapplicable. That Mr. Woodring's testimony has been admitted in other cases on other products does not make his opinions reliable or relevant here.

---

[36] Woodring Depo. Tr. at 183:1-12, Zeller Dec. Exh. 1.

[37] Woodring Depo. Tr. at 81:2-17, 83:1-4, Zeller Dec. Exh. 1. Moreover, Apple does not dispute that Mr. Woodring's personal experience purchasing electronics is hopelessly limited and insufficient to distinguish him from millions of other consumers. Tellingly, Mr. Woodring's only experience purchasing smartphones or tablet computers is confined to the products sold by the company paying him for his opinions in this case. Nor does Apple even attempt to defend Mr. Woodring's incorrect assertion that the mere fact that he is an expert is enough for him to opine on the observations of differences by the ordinary observer of Apple and Samsung's products. *See, e.g.*, Woodring Depo. Tr. at 264:6-21, Zeller Dec. Exh. 1.

[38] Apple's cited cases do not hold otherwise. *Gorham*, 81 U.S. at 531 (crediting testimony from *non-expert* ordinary observers); *U.S. v. Lopez-Martinez*, 543 F.3d 509, 514-15 (9th Cir. 2008) (expert was qualified to testify in border smuggling case due to 14 years experience as border patrol agent, 5 of which were in the same area involved in the case); *U.S. v. Laurienti*, 611 F.3d 530, 547-48 (9th Cir. 2010) (expert's 26 years experience in securities industry with NASD rules qualified him to testify about those rules).

Apple has presented no evidence that qualifies Mr. Woodring as an expert with respect to the ordinary observer of smartphones and computer tablets. His opinions must be excluded.

**Conclusion**

For the foregoing reasons, Samsung respectfully requests that this Court grant its motion.

DATED: September 20, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *[/s/ Kevin Johnson]*

Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC