# EXHIBIT F

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN JOSE DIVISION
 4
 5   APPLE INC., a California
     corporation,
 6
 7         Plaintiff,
 8   vs.                          Case No. 11-CV-01846-LHK
 9   SAMSUNG ELECTRONICS CO., LTD.,
     a Korean business entity;
10   SAMSUNG ELECTRONICS AMERICA,
     INC., a New York corporation;
11   SAMSUNG TELECOMMUNICATIONS
     AMERICA, LLC, a Delaware
12   limited liability company,
13         Defendants.
     ---------------------------------/
14
15
16                    CONFIDENTIAL
17                 ATTORNEYS' EYES ONLY
18                   OUTSIDE COUNSEL
19        VIDEOTAPED DEPOSITION OF SISSIE TWIGGS
                Redwood Shores, California
20               Wednesday, July 27, 2011
21
22
23
24         Reported by:
     LORRIE L. MARCHANT, CSR No. 10523, RPR, CRR, CCRR, CLR
25          JOB NO. 40670
```

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 2

1            July 27, 2011

2             10:12 a.m.

3

4    Videotaped Deposition of SISSIE

5    TWIGGS, held at the offices of Quinn

6    Emanuel Urquhart & Sullivan, LLP, 555

7    Twin Dolphin Drive, Redwood Shores,

8    California, before Lorrie L. Marchant,

9    a Certified Shorthand Reporter,

10   Registered Professional Reporter,

11   Certified Realtime Reporter,

12   California Certified Realtime Reporter

13   and Certified LiveNote Reporter.

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 3

```
 1              A P P E A R A N C E S:
 2

 3   FOR THE PLAINTIFF APPLE INC.:
 4       MORRISON & FOERSTER
         BY:  JENNIFER LEE TAYLOR, ESQ.
 5            JULIA D. KRIPKE, ESQ.
         425 Market Street
 6       San Francisco, California 94105
 7

 8

 9

10   FOR THE DEFENDANTS SAMSUNG:
11       QUINN EMANUEL URQUHART & SULLIVAN
         BY:  VICTORIA F. MAROULIS, ESQ.
12       555 Twin Dolphin Drive, 5th Floor
         Redwood Shores, California 94065
13

14
     and
15       BY:  ERIK OLSON, ESQ.
              ALEX BINDER, ESQ.
16            KEVIN JOHNSON, ESQ.
         50 California Street
17       San Francisco, California 94111
18

19

20

21   ALSO PRESENT:
22       Erica Tierney, Apple IP Litigation Counsel
23       Sean McGrath, Videographer
24                    ---oOo---
25
```

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 9

1  pages in.
2      A.   This page, this document?
3      Q.   Exhibit 2.
4      A.   Here.
5      Q.   Please look at Topic 11.
6      A.   Yes.
7      Q.   Is it your understanding that Apple designated
8  you to be a corporate representative to testify on Topic
9  11?
10     A.   Yes, they did.
11     Q.   Are there any other topics in this Notice of
12 Deposition that you are going to be testifying about as
13 a representative of Apple?
14     A.   I need to go through each topic.  I don't
15 believe there's anything else for me here.  I'll only be
16 speaking to Topic 11.
17     Q.   And as to Topic 11, which is Apple's contention
18 that Apple will be irreparability harmed in the absence
19 of a preliminary injunction, are you testifying as to
20 full topic or some subset of that topic?
21     A.   I'll be speaking to the part that I'm
22 responsible for that's within the scope of my
23 responsibility, which is worldwide advertising.  In this
24 case, United States advertising.
25     Q.   Will you be speaking about market share and

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 10

1   sales?
2      A.   I will not be speaking about market share and
3   sales.
4      Q.   That will be covered by another witness?
5      A.   I believe so.
6      Q.   Okay.  So is it fair to say that the subject on
7   which you're Apple's 30(b)(6) representative is the same
8   subject that's covered in your declaration?
9      A.   Yes.  It's the same subject in my declaration.
10     Q.   What have you done to prepare for today's
11  deposition?
12     A.   Yesterday I met with the three representatives
13  that are here.
14     Q.   Please don't tell me anything you discussed.
15  Just logistics, who you met with.
16     A.   Okay.  Jennifer, Julia and Erica Tierney.
17     Q.   How long did you meet for?
18     A.   It was about an hour.  We met for about an
19  hour, hour and a half.
20     Q.   Did you review any documents during that
21  meeting?
22     A.   We reviewed my declaration.
23     Q.   And attachments to the declaration?
24     A.   There were several attachments that were
25  collected.  I did not review each and every one of them.

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 188

1  refer to Exhibit 2 --
2      A.   Okay.
3      Q.   -- we looked at it before.
4           It states your -- and by "your" means Apple --
5  contention that Apple will be irreparably harmed in the
6  absence of a preliminary injunction.
7      A.   I'm sorry.  Can you remind me where I'm looking
8  for this?
9      Q.   Sure.
10          Let's take a look at Exhibit 2, which is a
11 30(b)(6) notice.
12     A.   Okay.  That's this.
13     Q.   Yeah.  So it refers to the back of the document
14 it says, Topics.
15     A.   It says, Topics.
16          MS. TAYLOR:  It says, Topics, here
17 (indicating).  She wants you looking at Topic 11.
18          BY MS. MAROULIS:
19     Q.   So I believe we established earlier today that
20 you were selected --
21     A.   Yes.
22     Q.   -- to cover Topic 11.
23          So do you see that it says, Your contention
24 that Apple will be irreparably harmed in the absence of
25 a preliminary injunction?

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 189

1    What is Apple's contention as to why it will be
2    harmed in the absence of an injunction?
3        A.   I want to make sure that I'm fully interpreting
4    that.  So --
5            MS. TAYLOR:  With respect to that, you're only
6    one of three witnesses who's been designated to testify
7    on that.  So you testified as to the areas where you
8    have knowledge, not the full scope of the contentions.
9    There are two other witnesses.
10           THE WITNESS:  Right.  So I've worked on
11   Apple advertising for a long time, certainly from the
12   beginning of iPhone and iPad.
13           What I'm aware of, the process, what the team
14   does, the amount of money that's spent, the care and
15   design throughout every stage of the process is a
16   critical part to getting Apple's message out.
17           What I have stated in my declaration is that
18   important -- the key to that message is our product
19   design.
20           We spend, as I said, a lot of time and money
21   and care and nights and weekends ensuring that we've
22   done that to beyond the best of our abilities.
23           BY MS. MAROULIS:
24       Q.   Do you have --
25       A.   If --

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 190

1  Q.  I'm sorry.  Go ahead and finish.

2  A.  No.  Go ahead.

3  Q.  Do you have any specific knowledge of Apple
4  being harmed by the sales of Samsung devices?

5  A.  I do not have specific knowledge of that, but
6  what I can say is that it's -- it seems to be quite
7  obvious that if you have a product that is well known
8  and has certain -- a certain look and feel and function
9  to it, and you've spent a lot of time, money and care
10 getting that product knowledge out in the field, and
11 someone comes along and copies what you've done, that at
12 some stage that will start to chip away at what you've
13 built.

14         And I think the question of irreparable is a
15 real one in consumer's minds.  It's hard -- it's hard to
16 get them to pay attention.  It's easy to get them to
17 diverge.  It's hard to bring them back.  It's not only
18 expensive, it's hard.  It's impossible in some cases.
19 You've lost them.

20         MS. MAROULIS:  Move to strike that as
21 nonresponsive.

22         BY MS. MAROULIS:

23 Q.  Do you have any evidence of Apple being harmed
24 by the sale of Samsung devices?

25         MS. TAYLOR:  That's been asked and answered.

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 191

1  THE WITNESS: Harmed by the sale of -- do I
2  have evidence that Apple has been harmed by the sale of
3  Samsung devices? I'm not sure I can answer that in the
4  way that you're looking for.
5  BY MS. MAROULIS:
6  Q. Have you seen any evidence showing that Apple's
7  sales declined as a result of the sale of Samsung
8  devices?
9  MS. TAYLOR: That's actually outside the scope
10 of her designation.
11 But you can answer if you know.
12 THE WITNESS: I -- I don't have our sales
13 figures. I believe somebody might speak to that.
14 BY MS. MAROULIS:
15 Q. But you yourself do not know of any evidence
16 showing that the Apple sales declined because of Samsung
17 devices; correct?
18 A. I don't have those figures.
19 Q. Do you have any information whether Apple's
20 market share declined as a result of the sale of Samsung
21 devices?
22 MS. TAYLOR: Again, that's outside the scope of
23 her designation.
24 But you can answer if you know.
25 THE WITNESS: I don't have that information.

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 192

1      BY MS. MAROULIS:
2      Q.   Okay.  Do you have any information on whether,
3  as a result of Samsung devices, Apple's advertising
4  became less effective?
5      A.   When there's confusion, when someone is coming
6  in with something that looks very much like your
7  product, that -- that causes some confusion.
8           And I have to state that it's not something
9  that's easy to get back.  Once you've derailed a
10 conversation, it's hard to bring that back, if at all
11 possible.  So I don't know that you get those customers
12 back.
13     Q.   Do you believe you lost any customers?  "You"
14 meaning Apple?
15     A.   There are probably -- there are probably a few
16 customers we lost.
17     Q.   Do you have any evidence of that or are you
18 just speculating?
19     A.   I don't have any evidence of that.  My guess --
20 my guess is that we lost some customers.
21     Q.   That is your guess, not supported by any
22 information; correct?
23     A.   I don't have the sales figures.
24          MS. TAYLOR:  Wait.  Wait.  She's not testifying
25 on behalf of the company on this.

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 193

1    But go ahead and answer in your personal
2 knowledge.
3    THE WITNESS: Okay. I don't have the sales
4 figures. Or the market share.
5    BY MS. MAROULIS:
6  Q. Do you have any evidence of erosion of Apple's
7 distinctiveness in customers' minds as a result of
8 Samsung's phones?
9  A. I don't have evidence.
10  Q. So you don't have evidence at all that Apple
11 has been harmed in any way by the sale of Samsung's
12 phones; correct?
13  A. I focus on our advertising and what we're doing
14 in our advertising and moving our advertising forward.
15 And I don't spend -- I don't have time to spend on
16 pulling data such as that. So I do not have that data.
17 Does it exist? Probably.
18  Q. You don't know whether it exists or not; right?
19  A. I don't know.
20  Q. So your testimony on this topic is limited to
21 amount of dollars that Apple spends on advertising; is
22 that right?
23    MS. TAYLOR: Mischaracterizes her testimony.
24 Move to strike -- you moved to strike her answer on the
25 topic.

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 194

1  THE WITNESS: I testified to some of our
2 spending today, yes. And part of my declaration is
3 Apple's advertising spending.
4  BY MS. MAROULIS:
5  Q. Ms. Twiggs, did you collect any documents in
6 connection with this litigation?
7  A. There was a document regarding our spending for
8 iPad and iPhone that was collected.
9  Q. Any other documents?
10  A. The documents as part of my declaration?
11  Q. Let me clarify.
12  In connection with the litigation parties
13 collective exchange of documents, besides the
14 spreadsheet you testified before about, did you collect
15 and give to counsel any additional documents?
16  A. I have -- there's been nothing else that I've
17 been asked to share or to collect.
18  Q. And so the collection of the advertisements
19 that were attached to your declaration did not come from
20 your files or did it?
21  MS. TAYLOR: That assumes facts not in evidence
22 and possibly mischaracterizes her testimony.
23  THE WITNESS: So the way that the ads were
24 collected, we have sort of a central collection point.
25 They were gathered together and shared with the legal

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 214

1  Sissie Twiggs.  The time is 5:02 p.m., and we are off
2  the record.
3           (Time noted:  5:02 p.m.)
4                   ---oOo---
5
6
7                          _____
                           SISSIE TWIGGS
8
9     Subscribed and sworn to
      before me this     day
10    of          2011.
11
      _____
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL - OUTSIDE COUNSEL ATTORNEYS' EYES ONLY

Page 215

1                          CERTIFICATE

2

       STATE OF CALIFORNIA )
3                          :   ss
       COUNTY OF SONOMA    )
4

5       I, Lorrie L. Marchant, a Certified Shorthand
6  Reporter, a Registered Professional Reporter, a
7  Certified Realtime Reporter, and a Certified Realtime
8  Professional within and for the State of California, do
9  hereby certify:
10      That SISSIE TWIGGS, the witness whose deposition is
11 herein set forth, was duly sworn/affirmed by me and that
12 such deposition is a true record of the testimony given
13 by such witness.
14      I further certify that I am not related to any of
15 the parties to this action by blood or marriage and that
16 I am in no way interested in the outcome of this matter.
17      In witness whereof, I have hereunto set my hand
18 this 27th day of July, 2011.
19
20
21
22      ---------------------------------------------
        LORRIE L. MARCHANT, CSR, RPR, CRR, CLR, CCRR
23      CSR No. 10523
24
25