UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation, | Case No.: 11-CV-01846-LHK |
| Plaintiff, | ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

Plaintiff Apple, Inc. ("Apple") brings this motion for a preliminary injunction seeking to enjoin Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") from "making, using, offering to sell, or selling within the United States, or importing into the United States" Samsung's Galaxy S 4G and Infuse 4G phones and Galaxy Tab 10.1 tablet computer ("tablet") because these Samsung products infringe upon Apple's Design Patent No. D618,677 ("the D'677 patent"), D593,087 ("the D'087 patent"), or D504,889 ("the D'889 patent").[1] *See* Proposed Prelim. Inj. Order, July 1, 2011, ECF No. 86-1. Additionally, Apple seeks to preliminarily enjoin Samsung

---

[1] Apple clarified at oral argument that it contends that the Galaxy Tab 10.1 infringes upon the D'889 patent, and the Galaxy S 4G and Infuse 4G infringe upon the D'087 and D'677 patents.

United States District Court
For the Northern District of California

from "making, using, offering to sell, or selling within the United States, or importing into the United States" Samsung's Galaxy S 4G, Infuse 4G, and Droid Charge phones and Galaxy Tab 10.1 tablet because these products infringe upon Apple's United States Patent No. 7,469,381 ("the '381 patent"). *See id.* After hearing oral argument on the matter, and reviewing the briefing by the parties, the evidence offered in support of the briefing, and the relevant case law, the Court DENIES Apple's Motion for a Preliminary Injunction.

## BACKGROUND

In the world of telecommunications and electronics, Apple and Samsung are industry leaders. Apple identifies itself as a revolutionary and an innovator in "mobile communication devices, personal computers, and portable digital media players." First Amended Complaint ("FAC") ¶ 13, June 16, 2011, ECF No. 75. Samsung, in its own right, is the "largest provider by volume of mobile devices in the United States and the second largest in the world." Samsung's Answer, Affirmative Defenses, and Counterclaims ¶ 22, June 30, 2011, ECF No. 80.

At the center of the parties' dispute in this lawsuit are Samsung's cellular telephones and tablet computers, which Apple claims are slavish copies of its own products. Apple introduced its popular cell phone, the iPhone, in 2007. At the time it was introduced, Apple contends that the iPhone "was radically different" from the previous versions of cell phones because the features "were combined in an elegantly designed product with a distinctive user interface, icons, and eye-catching displays that gave the iPhone an unmistakable look." FAC ¶ 1. The iPad, Apple's tablet computer, was introduced in 2010. According to Apple, the iPad was revolutionary because of the product's "innovative technology and distinctive design." FAC ¶ 3. Apple accuses Samsung of "creating products that blatantly imitate the appearance of Apple's products to capitalize on Apple's success." FAC ¶ 4.

Samsung disputes the innovativeness of Apple's designs and instead argues that smartphones and tablets have evolved naturally in the direction of Apple's design patents. Specifically, Samsung argues that technology advances have allowed screen sizes to increase and the overall size of electronic devices to decrease. Thus, according to Samsung, the design features

2

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  that Apple claims as proprietary are in fact the natural progression of technology and design in the

2  industry. *See generally* Samsung's Opp'n to Mot. for Prelim. Inj. ("Opp'n") at 2-4.

3  On April 15, 2011, Apple filed suit against Samsung alleging that Samsung's products

4  infringe on Apple's utility and design patents as well as Apple's trademark and trade dress.  It is

5  the design patents that are at the core of this preliminary injunction motion.  Importantly, the

6  Court's analysis will focus not on the function of these ubiquitous products, but on their visual

7  characteristics.  Apple moved for a preliminary injunction on July 1, 2011, seeking to enjoin the

8  sale of four recently released Samsung products.  First, Apple accuses two Samsung

9  smartphones—the Samsung Galaxy S 4G and the Samsung Infuse 4G—of infringing on Apple's

10 design patents.  The Galaxy S 4G was released in February 2011, and the Infuse 4G was released in

11 May 2011.  Apple alleges that the two phones infringe upon Apple's D'677 and D'087 patents.

12 Apple's D'087 patent application was filed on July 30, 2007, and the patent issued on May

13 26, 2009, for an electronic device with the following visual characteristics:



D'087 – Figure 43      D'087 – Figure 44      D'087 – Figures 47 and 48

24 Apple's D'677 patent application was filed on November 18, 2008 (with a related

25 application date of July 30, 2007), and the patent issued on June 29, 2010, for an electronic device

26 with the following visual characteristics:

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California



D'677 – Figure 3          D'677 – Figure 4          D'677 – Figures 7 and 8

Apple also moves for a preliminary injunction to enjoin the sale of Samsung's tablet computer, the Galaxy Tab 10.1, which was released on June 8, 2011. Apple contends that the Galaxy Tab 10.1 infringes upon Apple's D'889 design patent. The D'889 patent application was filed on March 17, 2004, and the patent issued on May 10, 2005, for an electronic device with the following visual characteristics:



D'889 – Figure 1                                      D'889 – Figure 4

D'889 – Figure 5

4

United States District Court
For the Northern District of California

Finally, Apple seeks to enjoin the Samsung Galaxy Tab 10.1, the Samsung Infuse 4G, the Samsung Galaxy S 4G, and a third phone, the 4G LTE (otherwise known as the Droid charge phone), because all of these products allegedly infringe upon Apple's '381 patent. The '381 patent, issued on December 23, 2008, claims a method for "List Scrolling and Document Translation, Scaling and Rotation on a Touch-Screen Display." The '381 patent affects the display of images on a touch screen device. When a user places a finger on a screen and drags a displayed image past the edge of the document and releases the finger, the page bounces back to fill the full screen. A bounce-back function, which Apple contends infringes upon its '381 patent, exists in all four of the Samsung devices at issue in this preliminary injunction motion.

Asserting its four patents at issue in this motion, Apple seeks to enjoin the four Samsung products at issue – the Infuse 4G, the Galaxy S 4G, the Galaxy Tab 10.1, and the Droid charge phone – from the U.S. market until Apple is able to have its claims heard at a full trial on the merits. Additional facts necessary to the determination of Apple's motion are more fully discussed below.

## EVIDENTIARY MOTIONS

Before addressing Apple's preliminary injunction motion, the Court considers several evidentiary matters that have been raised by both parties.

### I.      Motion to Exclude Ordinary Observer Expert

As a preliminary matter, Samsung has separately moved to exclude the declaration of Apple's proffered industrial design expert, Cooper Woodring, on the ground that he lacks the experience and relevant knowledge to opine on the ordinary observer's perceptions of smartphones and tablet computers. ECF No. 176, at 1, 8 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702). Apple submitted Mr. Woodring's declaration in support of the instant motion for a preliminary injunction.

The Court DENIES[2] Samsung's separate motion to exclude on the ground that Samsung failed to comply with Civil Local Rule 7-3, which requires that any evidentiary objections to a

---

[2] This motion is denied without prejudice. Samsung may renew its objections to the testimony of Mr. Woodring at the time of trial.

5

United States District Court
For the Northern District of California

1   motion be contained within the opposition memorandum. *See also Cortez v. Global Ground*

2   *Support, LLC*, No. 09-CV-4138, 2010 WL 5173861, at *2 n.5 (N.D. Cal. Dec. 15, 2010) (declining

3   to consider evidentiary objections filed in separate brief pursuant to Civ. L.R. 7-3(a)).

4   Furthermore, Civil Local Rule 7-3 limits the opposition memorandum to 25 pages. With leave of

5   the Court, Samsung filed a 40-page opposition memorandum that included none of the evidentiary

6   objections presented in Samsung's separate motion to exclude (indeed, it appears that Samsung

7   cited evidence from the declaration it seeks to exclude). Thus, it would further neither the spirit

8   nor the letter of Civil Local Rule 7-3 for the Court to consider Samsung's separate evidentiary

9   objections. *Cf. C & C Jewelry Mfg., Inc. v. West*, No. 09-CV-01303, 2011 WL 835821, at *3 (N.D.

10  Cal. Mar. 4, 2011) (considering objections contained in document separate from the opposition

11  memorandum because objections and opposition memorandum "together total[ed] less than twenty

12  five pages" and consideration of the evidentiary objections therefore did not violate the spirit of

13  Civil L.R. 7-3(a)).

14       Finally, in ruling on a motion for preliminary injunction, the Court has discretion to

15  consider evidence even if it would be inadmissible at trial. The Ninth Circuit has held that "[t]he

16  trial court may give even inadmissible evidence some weight, when to do so serves the purpose of

17  preventing irreparable harm before trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th

18  Cir. 1984); *see also V.L. v. Wagner*, 669 F. Supp. 2d 1106, 1115 n.8 (N.D. Cal. 2009) ("[O]n a

19  motion for a preliminary injunction, the Court may consider inadmissible evidence, giving such

20  evidence appropriate weight depending on the competence, personal knowledge, and credibility of

21  the declarants."). Thus, even if Samsung had complied with Civil Local Rule 7-3, the Court would

22  have had other grounds to deny Samsung's objection to the testimony of Cooper Woodring.

23  **II.     Other Evidentiary Objections**

24       Both parties have filed or lodged with the Court additional evidence and objections after

25  formal briefing of the motion for a preliminary injunction was closed. After Apple filed its reply

26  brief, Samsung was granted leave to file objections to any non-rebuttal evidence submitted in

27  support of Apple's reply to the motion for a preliminary injunction. ECF No. 276. Samsung filed

28  its objections to Apple's reply evidence on October 4, 2011, seeking either to have Apple's

6

United States District Court
For the Northern District of California

1    evidence stricken, or seeking leave to file a sur-reply. ECF No. 294. Two days before the

2    preliminary injunction hearing, Apple filed an administrative motion to augment the record with

3    additional documents in support of its preliminary injunction motion. ECF No. 248. Samsung has

4    objected to the admission of this additional evidence. ECF No. 301. Finally, several days after the

5    hearing, Samsung lodged with the Court more new evidence in opposition to Apple's motion for a

6    preliminary injunction. ECF No. 307. Apple has objected to this evidence as well. ECF No. 308.

7        The Court first addresses Samsung's objections to Apple's evidence offered in support of

8    the reply to the preliminary injunction motion. Samsung seeks to exclude the declarations and

9    supporting evidence of Terry Musika, Arthur Rangel, Sanjay Sood, Tony Blevins,[3] and Christopher

10   Stringer, because these new declarations were submitted for the first time in reply. Samsung also

11   seeks to strike several paragraphs and corresponding exhibits from the reply declarations of Peter

12   Bressler, Ravin Balakrishnan, and Cooper Woodring, because the opinions and evidence on claim

13   construction offered in these paragraphs were offered for the first time in reply. Finally, Samsung

14   moves to strike several documents produced by Apple after the production deadline, as well as

15   Apple's contention that the iPad 2 is a commercial embodiment of the D'889, because these

16   documents and contentions were produced and established after court-imposed deadlines.

17       As a general rule, new evidence presented in reply should not be considered without giving

18   the non-movant an opportunity to respond. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.

19   1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the

20   district court should not consider the new evidence without giving the [non-]movant an opportunity

21   to respond."). After reviewing the declarations, evidence, and arguments at issue in Samsung's

22   objections, the Court OVERRULES Samsung's objections to the Musika, Rangel, Sood, Blevins,

23   and Stringer declarations. While the Court is disturbed that Apple did not include these

24   declarations, particularly the Musika, Rangel, and Sood declarations, in its opening motion, the

25   evidence presented by Apple in these declarations is not "new." Rather the declarations were

26

27   [3] Samsung also objects to the Blevin declaration because he was not disclosed in Apple's initial
     disclosures. The Court OVERRULES this objection because pursuant to Fed. R. Civ. P. 26(e), the
28   parties may supplement initial disclosures after the fact. Moreover, Blevin's declaration is
     submitted in direct response to Samsung's arguments offered in its Opposition.

7

1 offered to rebut evidence presented by Samsung in its opposition papers that Apple is unlikely to

2 be irreparably harmed absent an injunction, and that the design patents are invalid because they are

3 entirely functional. Similarly, the Court OVERRULES Samsung's objections to several

4 paragraphs and corresponding exhibits from the reply declarations of Peter Bressler, Ravin

5 Balakrishnan, and Cooper Woodring. This evidence was responsive to Samsung's arguments in its

6 opposition regarding claim construction of both the utility and design patents. The Court also

7 OVERRULES Samsung's objections to Apple's contention that the iPad 2 is a commercial

8 embodiment of the D'889 and the objections to documents produced by Apple after the production

9 deadline.

10       Finally, even though the Court considers the evidence Apple offered in reply to be rebuttal

11 evidence, and thus admissible, the Court also notes that Samsung was given an opportunity to

12 respond, as is required under Ninth Circuit law. *See Provenz*, 102 F.3d at 1483. Samsung was

13 given the opportunity to counter the evidence during the preliminary injunction hearing, and then

14 submitted several hundred pages of additional evidence shortly after the hearing.[4] The Court

15 considers this sufficient to meet Samsung's right to respond both to the evidence introduced by

16 Apple in its reply briefing, and to the evidence lodged by Apple two days before the hearing itself.

17 As such, the Court GRANTS Apple's administrative motion to augment the record lodged on

18 October 11, 2011,[5] and OVERRULES Apple's objections to Samsung's newly lodged evidence.

19                    **MOTION FOR A PRELIMINARY INJUNCTION**

20       A preliminary injunction is an extraordinary remedy, never granted as a matter of right.

21 *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 9 (2008). The Patent Act provides that in cases of

22

23 [4] It appears that Samsung has neither publicly e-filed these documents nor submitted a motion to file under seal. Samsung is hereby ORDERED to either e-file these documents or to e-file an

24 administrative motion to file under seal the documents lodged with the Court in compliance with G.O. 62, Local Rules 7-11 and 79-5, and the Court's Standing Order regarding motions to seal,

25 within 5 days of this Order.
[5] While the Court grants Apple's administrative motion to augment the record, there appears to be

26 a remaining issue regarding whether the documents may be filed under seal. Pursuant to Apple's motion (ECF No. 298), Samsung does not appear to have filed a declaration and proposed order

27 regarding the documents that it has designated as confidential. Therefore, Samsung is ORDERED to file, within 5 days of this Order, the documents required pursuant to Local Rule 75-9(d), so that

28 the Court may consider the administrative motion.

8

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

patent infringement a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To prevail on its motion for a preliminary injunction, Apple must establish the following: (1) some likelihood of success on the merits of the underlying litigation; (2) immediate irreparable harm will result if the relief is not granted; (3) the balance of the hardships to the parties weighs in its favor; and (4) the public interest is best served by granting the injunctive relief. *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006). "The grant or denial of a preliminary injunction under 35 U.S.C. § 283 is within the sound discretion of the district court." *Id.*

Even at the preliminary injunction stage, the Court considers the evidence in light of the presumptions and burdens that will apply at trial. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). To establish a likelihood of success on its design patent infringement claims, Apple must show that it will likely prove at trial that Samsung's accused devices infringe upon Apple's design and utility patents and that Apple is likely to withstand a challenge to the validity of those patents. *See id.* At the preliminary injunction stage, as at trial, a patent is presumed valid. *Id.* at 1377. To overcome this presumption, the initial burden is on Samsung to produce evidence of invalidity. *Id.* Apple then bears the burden of "responding with contrary evidence" – in the form of evidence or argument – and "persuad[ing] the court that, despite the challenge presented to validity, [Apple] nevertheless is likely to succeed at trial on the validity issue." *Id.* If, "after weigh[ing] the evidence both for and against validity that is available at this preliminary stage in the proceedings . . . the trial court concludes there is a 'substantial question' concerning the validity of the patent, . . . it necessarily follows that the patentee has not succeeded in showing it is likely to succeed at trial on the merits of the validity issue." *Id.* at 1379. Ultimately, at the preliminary injunction stage, Apple bears the burden of persuading the Court that it is more likely than not that Samsung will be unable to prove invalidity by clear and convincing evidence at trial. *See id.* at 1379-80.

For purposes of a preliminary injunction, the Court does not have access to the full fruits of discovery. As such, all findings of fact and conclusions of law at the preliminary injunction stage

9

are "subject to change upon the ultimate trial on the merits." *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002); *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001).

Apple claims that Samsung's Galaxy S 4G and Infuse 4G cell phones infringe upon Apple's D'677 and D'087 design patents, and that Samsung's Galaxy Tab 10.1 tablet infringes upon Apple's D'889 patent. Apple also claims that all three Samsung devices, as well as the Droid Charge phones, infringe upon Apple's '381 patent. The Court analyzes whether Apple has met its burden to establish that it is entitled to a preliminary injunction on any of the four Samsung accused devices based upon each of Apple's patent infringement claims.

## I. Apple's Cell Phone Design Patents

Apple first argues that Samsung's Galaxy S 4G and Infuse 4G cell phones infringe upon two of Apple's design patents — the D'677 patent and the D'087 patent. Apple argues that it is entitled to a preliminary injunction prohibiting the sale of these devices based on this infringement. For the foregoing reasons, the Court DENIES Apple's motion for a preliminary injunction of the Samsung Infuse 4 and the Samsung Galaxy S 4G.

### A. Likelihood Of Success On The Merits

35 U.S.C. § 171 provides that a patent may be obtained for the ornamental design of an article of manufacture: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." The Federal Circuit has established the familiar "ordinary observer" test for design patent infringement. Under the ordinary observer test, an accused device infringes upon a design patent if "'in the eye of an ordinary observer, giving such attention as a purchaser usually gives,'" the design of the accused device and the patented design are "'substantially the same.'" The designs are "'substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary observer], inducing him to purchase one

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

1   supposing it to be the other.'"[6] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir.

2   2008) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)). This "ordinary observer" test

3   applies to the infringement, anticipation, and obviousness inquiries in the design patent context.

4   *See Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed. Cir. 2009). In

5   the infringement analysis, the focus should be on "the overall design" of the patent. For the

6   anticipation and obviousness analysis, the focus should likewise be on "the overall design" of the

7   patent as compared to the prior art. *Id.*

8          The Federal Circuit has cautioned against attempts to "construe" design patent claims by

9   providing a detailed verbal description of the claimed design. *Egyptian Goddess*, 543 F.3d at 679.

10  Indeed, the Federal Circuit has reversed an infringement determination based on a written claim

11  construction that impermissibly focused on particular features of the design patent-in-suit. *Crocs,*

12  *Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010) (finding that the

13  "Commission placed undue emphasis on particular details of its written description of the patented

14  design" and that "the concentration on small differences in isolation distracted from the overall

15  impression of the claimed ornamental features"). As such, this Court is generally persuaded that

16  the infringement analysis must be made based upon the overall visual impression of the claimed

17  designs and will avoid a detailed written claim construction to the extent practicable. *See also*

18  *180s, Inc. v. Gordini U.S.A., Inc.*, 699 F. Supp. 2d 714, 728-29 (D. Md. 2010) (declining to issue a

19  detailed verbal description construing design patent claims because the "illustrative figures speak

20  for themselves"). Samsung has raised several arguments challenging the validity of Apple's D'677

21  and D'087 patents. Apple, in turn, argues that these two patents are valid, and that Samsung's

22  products infringe on the patents.

23          **1. Functionality of the Cell Phone Design Patents**

24          Samsung argues that the D'677 and D'087 patents are invalid because they are functional,

25  and therefore not within the province of a design patent. Opp'n at 9. Design patents are directed

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [6]  Defendants argued at oral argument that actual confusion by consumers is required to establish

28  infringement. However, neither *Egyptian Goddess*, nor its progeny appear to create such a
    requirement.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1   "to the appearance of an article of manufacture.  An article of manufacture necessarily serves a

2   utilitarian purpose, and the design of a useful article is deemed to be functional when the

3   appearance of the claimed design is 'dictated by' the use or purpose of the article." *L.A. Gear, Inc.*

4   *v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (citation omitted).  "If the particular

5   design is essential to the use of the article, it can not be the subject of a design patent." *Id.*  "The

6   determination of whether the patented design is dictated by the function of the article of

7   manufacture must ultimately rest on an analysis of its overall appearance." *PHG Techs., LLC v. St.*

8   *John Cos., Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) (quotations omitted).  Invalidity due to

9   functionality is an affirmative defense to a claim of infringement of a design patent, and must be

10  proved by Samsung at trial. *See L.A. Gear*, 988 F.2d at 1123.

11          An example of the application of the "dictated by" standard can be seen in *Best Lock Corp.*

12  *v. Ilco Unican Corp.*, 94 F.3d 1563 (Fed. Cir. 1996).  There, the Federal Circuit invalidated a

13  design patent of a key blade because "the key blade must be designed as shown in order to perform

14  its intended function - to fit into its corresponding lock's keyway." *Id.* at 1566.  The court went on

15  to explain that:

16          An attempt to create a key blade with a different design would necessarily fail because no
        alternative blank key blade would fit the corresponding lock.  In fact, Best Lock admitted

17      that no other shaped key blade would fit into the corresponding keyway, and it presented no
        evidence to the contrary. Therefore, we find no clear error in the court's finding that the

18      claimed key blade design was dictated solely by the key blade's function.

19  *Id.*

20          Samsung argues that the core of Apple's D'677 and D'087 patents is "minimalistic."

21  Under this theory of design, ornamentation is stripped down to pure functionality, and therefore,

22  Samsung argues, the D'677 and D'087 patents are invalid based on functionality. Opp'n at 9.

23  Samsung offers a list of design features found in the D'677 and D'087 patents, which also have

24  functional benefits for the user of the patented article.  These design features include the design

25  patents' (1) rectangular shape; (2) rounded corners; (3) placement of the rounded speaker on the

26  upper portion of the front surface above the display screen; (4) horizontal slot shape of speaker; (5)

27  black color[7] and borders around the screen; (6) bezel; and (7) lack of significant ornamentation. *Id.*

28  _____

[7]  The black color of the patented device is only claimed in the D'677 patent.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

<table>
<tr><td>1</td><td>

at 10.  Samsung argues that all of the major elements in the D'677 and D'087 patents are

</td></tr>
</table>

at 10.  Samsung argues that all of the major elements in the D'677 and D'087 patents are

"primarily functional," and therefore the patents themselves are invalid.  *Id.*

Samsung's arguments, however, do not address the standard required to find that Apple's

D'677 and D'087 design patents are invalid.  The standard employed to invalidate a design patent

based upon functionality requires that the design itself be *dictated by* the functionality of the item.

Just because various elements of Apple's D'677 and D'087 patents *enhance* the user experience

does not necessarily mean that the patented design is *dictated by* functionality.  The Federal Circuit

has previously rejected precisely the type of argument advanced by Samsung.  In *L.A. Gear*, the

party seeking to invalidate a shoe design patent based on functionality argued that various design

elements had utilitarian purposes, increasing the benefit to the wearer of the shoe.  988 F.2d at

1123.  The Federal Circuit refused to find that a design patent was invalid as functional because

"the utility of each of the various elements that comprise the design is not the relevant inquiry with

respect to a design patent."  *Id.*  Viewing the patents at issue here as a whole, the Court cannot say

that the designs are purely functional.

Moreover, Apple has identified numerous alternative smartphone designs in which the

functions identified by Samsung as performed by the design elements in the D'677 and D'087

patents were achieved in another way.  Apple's Reply in Support of its Mot. for Prelim. Inj.

("Reply") at 2-3.  Evidence of alternative designs may support a finding that the patented design is

more likely to serve an ornamental function.  *See L.A. Gear*, 988 F.2d at 1123.

Samsung argues that evidence of alternative designs that "would adversely affect the utility

of the specified article . . . are not truly alternatives within the meaning of our case law."[8]  *PHG*

*Techs.*, 469 F.3d at 1367 (internal citations and quotation marks omitted).  In *PHG Technologies*,

the Federal Circuit overturned a district court finding that a design patent for a medical label sheet

was not invalid based on functionality.  *Id.* at 1363.  The design patent was for a sheet of medical

chart labels which included "eleven rows of labels, with each row containing three labels.  The first

nine rows are depicted to contain three labels of equal size, the size being consistent with a

---

[8]  Samsung referenced *PHG Technologies* during oral argument, though the case is not cited in
Samsung's Opposition brief.

13

United States District Court
For the Northern District of California

standard medical chart label." *Id.*  The district court found that the design of the arrangement of the labels was primarily ornamental because "there are other ways to arrange different sizes of labels on an 8 ½" x 11" sheet." *Id.* at 1364.

The Federal Circuit reversed the district court because alternative designs with different arrangements of labels would have adversely affected the utility of the patented design. *Id.* at 1367.  The Court explained that evidence in the record, in the form of prosecution history, testimony from the defendant, and admissions from the inventor himself, established that the arrangement of the labels on the sheet was dictated by the use and purpose of the medical label sheet. *Id.*

Unlike in *PHG Technologies*, the Court finds that the alternative smartphone designs identified by Apple — both other smartphones within the industry, and alternative designs considered and discarded by Apple in the process of designing the D'087 and D'677 patents — establish that there are alternative designs that do not adversely affect the utility of the design.  For example, Apple identified alternative designs that had different characteristics that were neither more nor less utilitarian than the design used in the D'677 and D'087 patents.  These included alternative designs that contained: more deeply rounded corners that gave an overall less rectangular visual impression; sharper corners; differently shaped speakers; differently sized and placed screens; and alternative designs with additional buttons. *See, e.g.*, Bressler Decl. ¶¶ 87-97; *see also* Stringer Decl. ¶¶ 8-25.  Indeed, several of these phone designs had additional buttons on the body of the phone, which are arguably more functional than the one button designs found in the D'087 and D'677 patents.  Accordingly, Samsung has failed to meet its burden of raising substantial questions as to the validity of the D'087 and D'677 patents based on functionality.

Although Samsung has not met its burden of showing that the D'087 and D'677 patents are invalid based on functionality, certain aspects of the design patents that *are* dictated by function may limit the claim scope of both the D'087 and D'677 patents. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010) ("However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article."). *Richardson* instructs the district court

14

United States District Court
For the Northern District of California

1   to identify the aspects of the design that are "dictated by" function and to consider only the

2   remaining aspects of the design in the infringement and anticipation analysis of the design patent.[9]

3   *Id.; see also OddzOn Prods., Inc v. Just Toys, Inc.*, 122 F.3d 1396, 1404-05 (Fed. Cir. 1997).

4        The D'087 and D'677 patents, though not invalid based on functionality, contain aspects

5   that the Court finds are "dictated by" functionality. Specifically, the Court finds that a smartphone

6   must be small enough to be handheld. *See* Sherman Decl. ¶ 114. Moreover, because the

7   smartphone functions by the user touching the screen, the smartphone must have a relatively large

8   screen in order to perform the functions of the product. *Id.* ¶¶ 106, 111-12. Because the

9   smartphone must be handheld, the screen necessarily must encompass a large portion of the front

10  face of the product. Additionally, the location of the speaker in the upper portion of the front face

11  of the smartphone is likewise dictated by function. Any other placement of a speaker (for example,

12  on the back side of the phone or on the lower portion of the front face) would adversely affect the

13  functionality of the product because otherwise it would not line up with the user's ear. *Id.* ¶¶ 119-

14  120. The Court therefore finds that a size that can be handheld, a screen that encompasses a large

15  portion of the front face of the smartphone, and a speaker on the upper portion of the front face of

16  the product are non-ornamental.

### 2.  Scope of Design Patent

18       Although a detailed written description of the claimed design is disfavored, an analysis of

19  the scope of the claimed designs in the D'677 and D'087 patents is necessary to analyze Apple's

20  infringement claims. *See, e.g., Egyptian Goddess*, 543 F.3d at 680 ("a trial court can usefully

21  guide the finder of fact by addressing a number of other issues that bear on the scope of the claim.

22  Those include such matters as describing the role of particular conventions in design patent

23  drafting, such as the role of broken lines; assessing and describing the effect of any representations

24  that may have been made in the course of the prosecution history; and distinguishing between those

25  features of the claimed design that are ornamental and those that are purely functional." (internal

---

[9] As instructed by the Federal Circuit, "there are a number of claim scope issues on which a court's guidance would be useful to the fact finder. Among them, we specifically noted, is the distinction between the functional and ornamental aspects of a design." *Richardson*, 597 F.3d at 1293 (internal citations and quotations omitted).

15

United States District Court
For the Northern District of California

citations and quotations omitted).   As explained above, the scope of the design patent is limited to those aspects alone that are ornamental and do not extend to any functional elements of the claimed design. *See Richardson*, 597 F.3d at 1294.

Additionally, in design patents, the patentee need not claim an entire article of manufacture. *See In re Zahn*, 617 F.2d 261, 268-69 (C.C.P.A. 1980).  The patentee may indicate the claimed part of the design with the use of solid lines and may indicate the unclaimed, remaining article of manufacture with the use of broken lines. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design." (citing *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001))), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665; *see also* Manual of Patent Examining Procedure ("MPEP") 1503.02 (2001).

The D'087 patent provides 6 different embodiments.   None of the embodiments, however, claims anything other than the front view of the patented design.  Although the patent contains "a sufficient number of views to constitute a complete disclosure of the appearance of the article," *Door-Master*, 256 F.3d at 1313 (internal citations and quotations omitted), all views except for the front view are delineated with broken lines and are explicitly excluded from the design patent claim scope. *See* D'087 patent ("None of the broken lines form a part of the claimed design."). Thus, Apple has only claimed the front face of the cell phone in the D'087 patent.

In contrast, there is only one embodiment of the D'677 patent.  The D'677 patent contains broken lines delineating the bezel, the center button, as well as broken lines depicting the side, top, and bottom views.  Thus, the D'677 patent, like the D'087 patent, appears to claim only the front view. *See, e.g., In re Zahn*, 617 F.2d at 263 (drill bit drawn in broken lines to show environment for claimed design of the drill shank); *Atlanta Motoring Accessories, Inc., v. Saratoga Techs., Inc.*, 33 F.3d 1362, 1365 (Fed. Cir. 1994) (automobile hardtop outlined in broken lines to show environment of rack device); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162

United States District Court
For the Northern District of California

1   F.3d 1113, 1114 (Fed. Cir. 1998) (broken lines used to show tire sidewall, which formed no part of

2   the design claimed).

3          The D'677 patent is different from the D'087 in one key respect – the D'677, unlike the

4   D'087, does not contain a statement explaining the use of broken lines in the design patent.  Thus,

5   unlike the D'087 patent, the broken lines in the D'677 patent may not, at least theoretically,

6   indicate unclaimed aspects of the article of manufacture.  *See Unique Indus., Inc. v. 965207 Alberta*

7   *Ltd.*, 722 F. Supp. 2d 1, 10 n.2 (D.D.C. 2009) (noting that broken lines may be considered part of

8   the claimed design, "if it is not clear that the inventor intended to exclude those portions from the

9   claim").

10          In this case, however, the broken lines used in the D'677 patent likely indicate unclaimed

11   aspects of the design.  Unlike other cases in which a court has found that broken lines indicate

12   something other than an unclaimed aspect of the design, there is no reasonable alternative

13   interpretation of the broken lines in this patent.  *Cf. 180s, Inc.*, 699 F. Supp. 2d at 729 (alternative

14   explanation for the broken lines was more plausible); *Bernardo Footwear, L.L.C. v. Fortune*

15   *Dynamics, Inc.*, No. 07-CV-0963, 2007 WL 4561476, at *1 (S.D. Tex. Dec. 24, 2007) (interpreting

16   the use of broken lines in a patent).  Indeed, Apple and Samsung appear to agree that only the front

17   view of the patent is claimed.  *Compare* Mot. for Preliminary Injunction ("Mot.") at 7-8 & n.5,

18   *with* Opp'n at 6-7.  Given the similarities between the D'087 patent and the D'677 patent, it is

19   likely that the broken lines which are used in the same way in the D'087 patent, disclaim similar

20   features in the D'677 patent.[10]  Therefore, the Court finds that, like the D'087 patent, Apple has

21   only claimed the front view in the D'677 patent.  Given the identified claim limitations of the

22   D'087 and D'677 patents, the Court analyzes the accused devices in light of the scope of these

23   patents.

24          **3.   Invalidity Based on Anticipation and Obviousness**

25

26   _____

27   [10] This claim construction occurs before a complete record has been established.  It may be that
     expert testimony, prosecution history, and a full briefing on the issue may provide additional data

28   points from which to draw a different conclusion.  Based on the limited evidence in the record,
     however, this is the most reasonable claim construction for the D'087 and D'677 patents.

United States District Court
For the Northern District of California

1    Samsung challenges the validity of the D'677 and the D'087 patents based on anticipation

2  and obviousness of the designs. *See* 35 U.S.C. §§ 102 (anticipation), 103 (obviousness). The test

3  for anticipation is the same as the test for infringement, the only difference being that the court

4  compares the patented design with the alleged anticipatory reference rather than with the accused

5  infringing product. *Int'l Seaway Trading*, 589 F3.d at 1238-39; *see id.* at 1239 ("'[T]hat which

6  infringes, if later, would anticipate, if earlier.'" (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530,

7  537 (1889)). A design patent is invalid based upon anticipation when, "in the eye of an ordinary

8  observer, giving such attention as a purchaser usually gives," the alleged anticipatory reference is

9  "substantially the same" as the patent-in-suit, meaning "the resemblance is such as to deceive such

10  an observer, inducing him to purchase one supposing it to be the other." *Id.* at 1239. Minor

11  differences between a patented design and an anticipatory reference cannot prevent a finding of

12  anticipation. *Id.* at 1243.

13    Alternatively, a design patent may also be invalid based on obviousness. *Titan Tire*, 566

14  F.3d at 1385. Whereas a design patent may be invalid as anticipated if an ordinary observer would

15  find the design substantially the same as a single existing prior art reference, a design patent may

16  be invalid as obvious if it "would have been obvious to a designer of ordinary skill who designs

17  articles of the type involved . . . [to] combine[] teachings of [multiple] prior art [references] to

18  create the same overall visual appearance as the claimed design." *Durling v. Spectrum Furniture*

19  *Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996).

20    Practically speaking, in applying the *Durling* test for obviousness, first "one must find a

21  single reference, a something in existence, the design characteristics of which are basically the

22  same as the claimed design." *Id.* (internal quotations and citations omitted). In identifying a

23  primary reference, the Court is tasked with "(1) discern[ing] the correct visual impression created

24  by the patented design as a whole; and (2) determin[ing] whether there is a single reference that

25  creates 'basically the same' visual impression. In comparing the patented design to a prior art

26  reference, the trial court judge may determine almost instinctively whether the two designs create

27  basically the same visual impression." *Id.* After a primary reference is found, other secondary

28  references "may be used to modify it," but "only if they are so related to the primary reference that

18

United States District Court
For the Northern District of California

1    the appearance of certain ornamental features in one would suggest the application of those

2    features to the other." *Id.* (internal quotation marks, citations, and alterations omitted). "Once that

3    piece of prior art has been constructed" by one skilled in the art, whether by "combin[ing] earlier

4    references . . . or [by] modify[ing] a single prior art reference," only then does "obviousness, like

5    anticipation, require[] application of the ordinary observer test," asking whether an ordinary

6    observer would find the patented design substantially the same as the hypothetical prior art

7    reference. *Int'l Seaway Trading*, 589 F.3d at 1240.

8          It appears to be an open question whether the obviousness test in *Durling* was altered by the

9    Federal Circuit's abandonment of the "point of novelty test" in *Egyptian Goddess*, and whether the

10   Supreme Court's decision in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), has any effect on

11   the application of the *Durling* analysis. *See Titan Tire*, 566 F.3d at 1384 (recognizing that "it is not

12   clear to what extent, if any, the doctrine applicable to obviousness should be modified to conform

13   to the approach adopted by this court in *Egyptian Goddess*" and that the application of *KSR* to

14   design patents is "new and untested ground"). Despite these reservations, there are several reasons

15   to apply the *Durling* test here. For one, both parties appear to have argued in favor of the *Durling*

16   analysis. Moreover, the Federal Circuit, as recently as 2009, applied the *Durling* test in analyzing

17   design patent obviousness. *See id.* Given that *Durling* currently remains binding precedent, and in

18   the absence of guidance to the contrary, the Court applies the *Durling* obviousness analysis to the

19   patents-in-suit here. Samsung argues that the D'667 and D'087 patents are either anticipated by

20   prior art, or, alternatively, they were obvious at the time they were invented. Samsung has

21   identified the Japanese Patent No. 1241638[11] ("the '638 patent") as the allegedly anticipatory

22   reference that invalidates both the D'677 and D'087 patents. Opp'n at 7-8. Alternatively,

23   Samsung argues that the Apple patents were obvious in light of the '638 patent and the other prior

24   art at the time of invention.

25

26

27   [11]  Design patents follow the same rules regarding whether a reference is considered prior art as
     utility patents. *See* 35 U.S.C. § 171. The Japanese Patent No. 1241638 reference was published on

28   June 6, 2005, more than one year before the January 5, 2007 application date of the D'677 patent.
     Therefore, the Court will consider it as a prior art reference.

19

| Apple's D'087 Patent | Apple's D'677 Patent | Sharp JPN No. 1241638 |
|---|---|---|
|  |  |  |

### The D'087 Patent

The D'087 patent discloses a flat front surface with four evenly rounded corners with an inset rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and substantial borders above and below the display screen. The D'087 patent has a horizontal speaker slot centered on the front surface. The front surface is also substantially free of additional ornamentation outside of an optional button centrally located below the display.

The front view of the D'087 patent appears to be substantially similar to the front view of the '638 patent reference. The '638 patent, like the D'087, has similar edges and rounded corners, a bezel, a similarly shaped speaker, and similar proportions of screen and border. The '638 patent discloses an overall simple, minimalist design. As seen above, an ordinary observer would likely consider the D'087 patent to be substantially the same as the front view of the '638 patent.

There are some differences between the D'087 and the '638 patents: for example, the speaker is placed slightly higher in the '638 patent, and the side view discloses a slightly convex screen in the '638 patent, whereas the D'087 patent discloses an entirely flat screen.[12] It may be

---

[12]   Apple also argues that the bezel on the '638 patent is thicker and non-uniform with a different profile than the D'087 patent. Reply at 6. It is not entirely clear from the patents that the bezel in the D'087 is, in fact, different, or that the side view of the D'087 patent is different from the '638 patent other than the flatness of the screen. Additionally, Apple argues that the Apple patents disclose a translucent and black-colored front surface. The D'087 does not disclose this element. Instead, this element is only disclosed in the D'677 patent and will be addressed below.

20

United States District Court
For the Northern District of California

1    that these differences are minor in the eyes of an ordinary observer, and therefore a finding of

2    anticipation is proper.[13]  *See Int'l Seaway Trading*, 589 F.3d at 1239-40.  In any event, the '638

3    patent raises "substantial questions" regarding the validity of the D'087 patent based on

4    anticipation.

5          In its Reply, Apple argues that all design views of the '638 patent must be considered and

6    that these views show that there are significant differences between the patented designs.  Reply at

7    4-6; *see Contessa Food Prods.*, 282 F.3d at 1381-82; *Int'l Seaway Trading*, 589 F.3d at 1241

8    (holding that the court must consider those features visible at any time in the "normal use" lifetime

9    of the accused product when conducting the anticipation inquiry).  Indeed, the other views of the

10   '638 patent show that the screen slides upwards to unveil a keypad and that, as a result, all views of

11   the '638 patent are not similar to the D'087 patent.

12         Apple, however, cannot compare all views of the '638 patent with all views of the D'087

13   patent because Apple never claimed all views of the D'087 patent.  The prior art should be

14   compared to the design patent "in its entirety, *as it is claimed*."  *Contessa Food Prods.*, 282 F.3d at

15   1378 (*citing L.A. Gear*, 988 F.2d at 1125) (emphasis added).  If Apple had wanted to claim the

16   entirety of the article of manufacture, it could have drafted the design patent to include all views.  It

17   has not, and the Court therefore should not compare aspects of the design not specifically claimed

18   by the patent.  In sum, the Court finds that Samsung has met its burden and raised substantial

19   questions regarding the validity of the D'087 patent, and Apple has not persuaded the Court that it

20   is likely to succeed at trial in the face of Samsung's challenge to the validity of the D'087 patent.

21                                    The D'677 Patent

22         The D'677 patent is substantially the same as the D'087 patent, and discloses an additional

23   element of a black transparent and glass-like front surface.[14]  Although this element was not

24   _____

25   [13]  Apple witnesses, including Cooper Woodring and Apple designer Christopher Stringer,

26   █████████████████████████████████████████████████████████

              Jenkins Decl. Ex. P at 210-211; *id.* Ex.O at 176-177.
27   [14]  The D'677 patent discloses surface shading and oblique lines which indicate a black surface and
     a polished surface, respectively.  *See* MPEP § 1503.02 ("Solid black surface shading is not
28   permitted except when used to represent the color black as well as color contrast.  Oblique line

                                         21

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    disclosed in the '638 patent, Samsung argues that the D'677 patent design was nonetheless obvious

2    to a person of ordinary skill in the art at the time that it was invented.

3           As a starting point, the '638 patent may serve as a primary reference for the D'677 patent

4    because it creates "basically the same visual impression" as both the D'087 and D'677 patents.

5    The D'087 and D'677 patents give a similar visual impression, and it appears as though the

6    significant difference between the two patents is a black, glass-like surface disclosed in the D'677

7    patent that is not disclosed in the D'087 patent.  Given the similarities between the D'677 and

8    D'087 patents, and the substantial similarities between the '638 patent and the D'087 patent, it is

9    appropriate for the '638 patent to serve as a primary reference for the D'677 patent.  Once a

10   primary reference is identified, secondary references may be considered to construct a hypothetical

11   piece of prior art that may be compared to the patented design. *Durling*, 101 F.3d at 103.

12          Samsung's expert, Itay Sherman, explained that it would have been obvious to make the

13   front face of the D'677 patent a transparent, glass-like black, with an inset screen.[15]  Sherman

14   explained that: "Even if the JP 1241638 is not understood as including the black surface claimed by

15   the D'677, making the front cover transparent black would have been an obvious choice in January

16   of 2006 because the display screens available at that time were only commercially available in

17   shades of black.  Unless a designer wanted to the [sic] make an unusual choice of creating a

18   multiple color unified front face, using black for the unified front surface was not only an obvious

19   choice; it was the natural default." Sherman Decl. ¶ 86.  By way of example, Sherman points to

20   the LG Chocolate,[16] announced in March 2006, which also contained a front face that was black

21   and flat.

22          Moreover, Sherman explained that "[m]obile electronic devices with a flat screen were

23   taught by the prior art by January of 2006," including prior art discussed in connection with the

24

25   shading must be used to show transparent, translucent and highly polished or reflective surfaces,
     such as a mirror.")

26   [15] Apple has objected to some of the "prior art" references discussed in the Sherman declaration,
     claiming that some of the references do not meet the priority requirements of Section 102. Reply at

27   6 n.4. The Court did not base its finding on the references in Sherman's declaration to which
     Apple objects, specifically the LG Prada.

28   [16] Apple has not objected to the LG Chocolate as a prior art reference.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

D'889 patent below.  Sherman Decl. ¶ 91; *see also id.* ¶¶ 93-97 (describing how technology at the time the D'677 patent was invented had evolved such that "placement of the active surface below an externally hardened surface (reinforced glass or plastic)" was feasible).  Mr. Sherman has offered several reasons as to why it would have been obvious to modify the primary reference – the '638 patent – in such a way as to include a glass-like, transparent black front cover on the D'677 patent.  *Int'l Seaway Trading*, 589 F.3d at 1240-41 ("For design patents, the role of one skilled in the art in the obviousness context lies only in determining whether to combine earlier references to arrive at a single piece of art for comparison with the potential design or to modify a single prior art reference.").

In response, Apple presents several arguments that the D'677 patent was not obvious at the time it was created.  First, Apple argues that neither the '638 patent, nor other prior art references, can serve as primary references because, when each reference is viewed as a whole, no reference creates the same overall visual impression as the D'677 patent.  Reply at 6-7.  As explained above, however, Apple did not claim all views of the D'677 patent, and thus comparing unclaimed views of the overall design would be inappropriate.

Even though the Court finds that the '638 patent may serve as a primary reference for the D'677 patent, Samsung has not met its burden of establishing that the D'677 patent would have been obvious to a designer skilled in the art of designing electronic devices.  While it may have been technologically *possible* at the time the D'677 patent was invented to have a flat, black, translucent front screen, this does nothing to explain why it would have been *obvious* for a designer to have adopted this design choice.  For example, unlike the D'889 patent discussed below, it isn't clear that there exists a secondary reference which discloses a flat, black, translucent screen.[17]  *See In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 1993) (explaining that secondary references may be properly relied on to modify a basic design when the references are "so related that the appearance of certain ornamental features in one . . . would have suggested application of those features to another.").  Moreover, it is not clear from Sherman's declaration why it would have been an

---

[17]  While the LG Chocolate screen is flat and black, it does not appear to contain the type of translucent, glass-like cover with an inset screen that is disclosed in the D'677 patent.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

obvious choice to import the prior art references from the tablet context into the cell phone field. It is possible that it would have been obvious to a designer skilled in the art to incorporate tablet-like screens into cell phone designs, but without more explanation or reasoning behind this decision, Samsung has not met its burden.

Additionally, secondary considerations, such as the commercial success of the embodiment of the D'677 patent, can be probative evidence of the non-obviousness of a design patent. *See Crocs*, 598 F.3d at 1310-11. Apple has provided press clippings from after the introduction into the market of the Apple iPhone, the commercial embodiment of the D'677 patent. Many writers commented upon the beauty of the overall design of the iPhone. Zhang Decl. Ex. 27-30. Specifically, some industry writers commented on not only the design as a whole, but also specifically the design of the front screen. *See id.* Ex. 27 ("As you'd expect of Apple, the iPhone is gorgeous. Its face is shiny black, rimmed by mirror-finish stainless steel."). While not dispositive, the commentary at the time of the introduction of the iPhone certainly suggests that the D'677 patent, even though only the front view of the cell phone is claimed, was not obvious.

After considering all the evidence and the arguments of the two parties, the Court finds that Samsung has not raised "substantial questions" regarding the validity of the D'677 patent.

### 4. Infringement

The test to determine whether a device infringes upon a design patent is "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same," meaning "the resemblance [between the accused device's design and the design patent] is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, [then] the first one patented is infringed by the other." *Egyptian Goddess*, 543 F.3d at 670 (internal quotations and citations omitted). This "ordinary observer" test requires that the accused device be analyzed within the context of both the design patent and the prior art: "when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Id.* at 678. When there are examples of many prior art designs, "differences between the claimed and accused designs that might not be

24

United States District Court
For the Northern District of California

1  noticeable in the abstract can become significant to the hypothetical ordinary observer who is

2  conversant with the prior art." *Id.*; *see also Crocs*, 598 F.3d at 1303 ("If the claimed design is

3  close to the prior art designs, small differences between the accused design and the claimed design

4  assume more importance to the eye of the hypothetical ordinary observer.").

The Samsung Galaxy S 4G

6  First, a side-by-side comparison of the D'677 and D'087 patents[18] and the Samsung Galaxy

7  S 4G cell phone appears below.

| Sharp JPN No. 1241638 | D'087 – Front View | D'677 – Front View | Samsung Galaxy S 4G |
|---|---|---|---|
|  | | | |

17  The prior art references identified by Samsung may make the minor differences between

18  the D'677 patent and the front view of the Galaxy S 4G take on greater significance in the eyes of

19  an ordinary observer. *See generally* Opp'n at 7-8. One minor difference that otherwise might not

20  be noticeable to the ordinary observer is the presence of four small functional buttons at the

21  bottom, and a camera lens at the top of the front face, that do not exist on the Apple patent.

22  Additionally, the Samsung Galaxy contains both the Samsung mark and the mark of the service

23  carrier on the front face. Typically, the use of a mark will not avoid infringement of an otherwise

24  infringing product. *See L.A. Gear*, 988 F.2d at 1126 ("Design patent infringement . . . does not . . .

25  allow avoidance of infringement by labeling"). Nonetheless, a logo's placement can be considered

26  when logo placement and appearance are part of the style claimed in the patented designs. *See*

---

[18]  The D'087 patent is included in the visual comparison for reference only and forms no basis of the infringement analysis in light of the finding that Samsung has raised "substantial questions" regarding the validity of the D'087 patent.

25

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    *Revision Military, Inc. v. Balboa Mfg. Co.*, 5:11-CV-149, 2011 WL 3875624, at *16 n.6 (D. Vt.

2    Aug. 31, 2011). In this case, additional writing on the front face of the Samsung phone alters the

3    minimalist style conveyed in the overall design disclosed by the D'677 and D'087 patents.

4    Moreover, given the simplicity of the design at issue, and the fact that consumers purchasing this

5    product are purchasing an expensive electronic device, minor differences between the patent and

6    the accused device are likely to take on greater significance in the eyes of the ordinary observer.

7           Even in light of these considerations, the Samsung Galaxy S 4G would likely appear

8    substantially the same to the ordinary observer. Samsung's design directly mirrors the D'677

9    patent. The overall design of the Galaxy S 4G's front face, even in light of the claim limitations

10   discussed above, is substantially similar to the patent-in-suit. *See Crocs*, 598 F.3d at 1304. The

11   Samsung Galaxy S 4G has a similar shape, size and glass-like black front face as the D'677 patent.

12   Moreover, the precise placement of the speaker, and the placement and relative size of the screen

13   on the front of the Samsung phone, is almost the same as the D'677 patent. Although this is a close

14   question in light of the claim limitations and other considerations previously addressed, the

15   Samsung Galaxy S 4G has an overall design that an ordinary observer would likely find

16   substantially the same as the D'677 patent.

17                                The Samsung Infuse 4

18          Again, a side-by-side comparison of the D'677 and D'087 patents[19] and Samsung's Infuse

19   4 cell phone appears below.

20

| Sharp JPN No. 1241638 | D'087 – Front View | D'677 – Front View | Samsung Infuse 4 |
|---|---|---|---|

21

22

23

24

25

26

---

27   [19] The D'087 patent is included in the visual comparison for reference only and forms no basis of

28   the infringement analysis in light of the finding that Samsung has raised "substantial questions"
     regarding the validity of the D'087 patent.

26



As explained above, the prior art references identified by Samsung, as well as the overall simplicity of the D'677 patent, may make minor differences between the patent-in-suit and the front view of the Infuse 4 – for example, the addition of buttons and writing on the Samsung Infuse 4 that are not present in the Apple patents – take on greater significance in the eyes of the ordinary observer. *See generally* Opp'n at 7-8. In addition, the Infuse 4 appears broader and longer, with a larger screen face relative to the rest of the front face, and sharper corners than the D'677 patent.

Even in light of these considerations, the Samsung Infuse 4, like the Galaxy S 4G, would likely appear substantially the same as the D'677 patent to an ordinary observer. *See Crocs, Inc.,* 598 F.3d at 1304. The Infuse 4, like the D'677 patent, contains a large, flat, transparent black front screen, a slot-shaped speaker, and a streamlined, simplistic design. Although the Samsung Infuse 4 does not contain a prominent bezel, and appears larger and broader than the D'677 patent, these differences do not preclude a finding of infringement. The D'677 does not claim the bezel as part of its design, and the design is not limited to the scale shown in the patent. *See* D'677 Patent Description ("The electronic device is not limited to the scale shown herein."). Although this is a close question in light of the claim limitations and other considerations previously addressed, the Samsung Infuse 4 likely infringes upon the D'677 patent.

## B.  Irreparable Harm

In order to obtain a preliminary injunction, Apple must also establish that it is likely to suffer irreparable harm in the absence of the requested relief. *Abbott Labs.,* 452 F.3d at 1348; *see also Winter,* 555 U.S. at 19 ("[P]laintiffs seeking preliminary relief [must] demonstrate that

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    irreparable injury is likely in the absence of an injunction."). As a general rule, plaintiffs seeking

2    injunctive relief must demonstrate that "remedies available at law, such as monetary damages, are

3    inadequate to compensate for that injury." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391

4    (2006). The burden is on Apple to provide "[s]ome evidence and reasoned analysis for that

5    inadequacy." *Nutrition 21 v. United States*, 930 F.2d 867, 872 (Fed. Cir. 1991). Several legal

6    principles shape the Court's irreparable harm analysis.

7    First, the Supreme Court has cautioned against applying categorical rules and presumptions

8    in fashioning equitable relief. *eBay*, 547 U.S. at 392-93. On the other hand, district courts do not

9    "act on a clean slate" when fashioning equitable relief. *Robert Bosch LLC v. Pylon Mfg. Corp.*,

10   659 F.3d 1142, 1149 (Fed. Cir. 2011). Indeed, "[d]iscretion is not a whim, and limiting discretion

11   according to legal standards helps promote the basic principle of justice that like cases should be

12   decided alike." *Id.* (citing *eBay*, 547 U.S. at 395 (Roberts, J., concurring)).

13   Historically, once a plaintiff in a patent case established a likelihood of success on the

14   merits, irreparable harm in the absence of an injunction was presumed. As the Federal Circuit has

15   recently made clear, however, there is no longer any presumption of irreparable harm, even if a

16   patentee is able to prove that a patent is valid and infringed. *Robert Bosch*, 659 F.3d at 1149.

17   While the presumption of irreparable harm no longer applies, the Federal Circuit noted that "it does

18   not follow that courts should entirely ignore the fundamental nature of patents as property rights

19   granting the owner the right to exclude." *Id.* Thus, the patentee's right to exclude must be

20   considered by a district court in determining whether an injunction is an appropriate remedy.

21   Apple argues that it is likely to be irreparably harmed by Samsung's infringing conduct in

22   two ways. First, Apple argues that the entrance of Samsung's infringing phones into the

23   smartphone market is likely to erode Apple's design and brand distinctiveness, resulting in a loss of

24   goodwill. Second, Apple argues that it is likely to lose market share as a result of Samsung's

25   infringing products. Apple argues that both of these losses are difficult to quantify and therefore

26   monetary damages would be insufficient to compensate Apple for the injury caused by Samsung's

27   infringement. Each of Apple's arguments is addressed in turn.

28                          **1.   Erosion of Design Distinctiveness**

1    Loss of goodwill as a result of infringing conduct may support a finding of irreparable

2    harm. *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1062 (Fed. Cir. 2010). Apple argues that

3    product design is an important factor in a consumer's decision to purchase a particular smartphone.

4    Because Apple's designs are both important to consumers and unique, Apple argues that the

5    introduction of Samsung's products erodes the design "distinctiveness" of Apple's products. Mot.

6    at 24, 27. Moreover, Apple argues that the design features of its products are closely entwined

7    with the Apple brand and that Samsung's products necessarily erode the distinctiveness of Apple's

8    brand. *Id.* at 27. Accordingly, Apple argues that the erosion of Apple's design and brand

9    distinctiveness is a loss of goodwill and an irreparable harm that cannot be compensated by

10   monetary damages.

11   Despite its intuitive appeal, Apple has cited no authority for the proposition that dilution of

12   design "distinctiveness" establishes irreparable harm. Indeed, if the introduction of a design-

13   patent-infringing product were sufficient to establish the erosion of design "distinctiveness," and

14   therefore irreparable harm, an injunction would presumably issue in every case in which a

15   defendant introduced an infringing product into the market. Such a rule would conflict with the

16   Supreme Court's admonition against applying categorical rules and presumptions in determining

17   whether a patentee will be irreparably harmed and whether a preliminary injunction should issue.

18   *See eBay*, 547 U.S. at 392-93. Accordingly, Apple has not articulated a theory as to how erosion of

19   "design distinctiveness" leads to irreparable harm in this case. In support of its argument that

20   Samsung's infringing cell phones harm goodwill by eroding Apple's reputation for innovation,

21   Apple has offered conclusory statements and theoretical arguments from its expert. *See* Sood Decl.

22   ¶¶ 40-41; Lutton Reply Decl. ¶ 29. At this point, without concrete evidence to support its

23   argument, Apple has not yet established that this harm to its reputation for innovation is likely to

24   occur.

25   Finally, Apple presents a novel argument that because its brand is effectively indistinct

26   from its product design, Samsung's sale of infringing smartphone products threatens to diminish

27   the value of Apple's brand. Apple appears to import the concept of brand dilution derived from

28   trademark law to its claim for patent infringement. *See* Reply at 20 (citing *Maxim Integrated*

29

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

1    *Prods., Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1035 (N.D. Cal. 2009) (finding that a loss of

2    control over reputation, loss of trade, and loss of goodwill supported irreparable harm in a

3    trademark infringement case)); *Marche Design, LLC v. TwinPro Int'l Holdings, Ltd.*, No. 08-cv-

4    2108, 2009 U.S. Dist. LEXIS 600, at *8-9 (D. Kan. Jan. 6, 2009) (finding irreparable harm on a

5    brand dilution theory for copying of a trade dress design).

6          The "underlying rationale of the dilution doctrine is that the gradual diminution or whittling

7    away of the value of a trademark, resulting from use by another, constitutes an invasion of the

8    senior user's property right and goodwill in his mark and gives rise to an independent wrong." J.

9    Thomas McCarthy, *Trademarks and Unfair Competition* § 24:73 (2011). It is not entirely clear

10   that irreparable harm in the form of brand dilution should apply to Apple's claim for design patent

11   infringement. Apple has offered no argument that trademark doctrines are applicable to design

12   patent infringement cases.

13         Moreover, even assuming that brand dilution could arise from design patent infringement,

14   Apple has not met its burden to provide evidence that such brand dilution is likely to occur in this

15   case. The declarations that Apple offers echo its general argument that Apple's advertisements

16   associate product design with the Apple brand. While such ads might show that design is

17   important to Apple's marketing efforts, they have no bearing on the impact of Samsung's products

18   on Apple as a brand. Without more evidence — for example, evidence of consumer confusion, or

19   consumer surveys showing blurring of the Samsung and Apple brands — Apple has not

20   demonstrated that brand dilution is likely to occur. *See, e.g., Horphag Research Ltd. v. Garcia*,

21   475 F.3d 1029, 1036-37 (9th Cir. 2007) (examples of evidence establishing brand dilution in a

22   trademark case).

23         Apple's conclusory declarations and opinions that Samsung's alleged infringement of the

24   asserted patents is likely to cause reputational harm or loss of goodwill are insufficient to meet

25   Apple's burden here.[20] *Tech-Wear Inc. v. Acme Laundry Prods., Inc.*, 38 F. Supp. 2d 1147, 1152

26

27       [20] Indeed, as Samsung explained at oral argument, Apple's witness, Sissie Twiggs, apparently

28   admitted at deposition that she had no evidence of "erosion of Apple's distinctiveness" in
     customers' minds as a result of Samsung's phones.

30

United States District Court
For the Northern District of California

(C.D. Cal. 1998) (declining to find loss of goodwill where plaintiffs provided "no evidentiary facts" to support that conclusion); *Quad/Tech, Inc. v. Q.I. Press Controls B.V.*, 701 F. Supp. 2d 644, 656-657 (E.D. Pa. 2010) (speculative harm insufficient).

### 2. Irreversible Loss of Market Share and Loss of Customers

It is well settled that loss of market share or the permanent loss of customers as a result of infringing conduct may support a finding of irreparable harm. *Robert Bosch*, 659 F.3d at 1153-54; *Polymer Techs. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996). Apple argues that it has lost market share and that it will permanently lose future customers and sales due to Samsung's infringement. Apple also argues that such harm cannot be remedied by money damages.

The relationship between the parties frames the Court's analysis. Courts are most likely to grant an injunction when the plaintiff and defendant are direct competitors in the same market. *See, e.g., Robert Bosch*, 659 F.3d at 1153. In that context, the potential harm in allowing the defendant to continue its infringing conduct may be the greatest. *See, e.g., id.; i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010). Samsung argues that they are not direct competitors because Samsung customers are unlikely to switch from a Samsung product to an Apple product. Samsung offers evidence that its products cater to a different part of the smartphone market than the Apple iPhone because the products have different operating systems.

Jenkins Decl. Ex. LL at 19, 25.

*See id.* Ex. LL at 8. However, even assuming Samsung's argument is true, the two companies directly compete for new consumers that are looking to make first-time smartphone purchases.

. *See* Wagner Dep. 59, 169-173. Accordingly, the evidence shows that both Apple and Samsung

31

United States District Court
For the Northern District of California

compete in the same smartphone market, particularly in the market for first-time smartphone

buyers, and thus the potential for harm from infringing conduct is strong.

The evidence in the record suggests that Apple's loyalty makes the initial decision

regarding which product to purchase even more important because the potential customers that

Apple loses to Samsung may have long-term effects that are difficult to calculate and may not be

recaptured. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

        *See* Jenkins Decl. Ex. LL at 19.

The high degree of brand loyalty to Apple, which discourages Apple purchasers from

switching to other brands, creates customer retention that potentially has long term implications for

downstream purchases. ██████████████████████████████████████████

███████████████████████████████████████████████████████████

Musika Decl. ¶¶ 30-33; *see also* Wagner Dep. at 63.  As Samsung's expert, Michael Wagner,

testified in his deposition, ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

        ██████████ Wagner Dep. at 46-49, 61-62.  This demonstrates yet another form of potential

lost future sales from a network effect that could potentially be lost by Apple to Samsung.  The loss

of customers and future downstream purchases would be difficult to recover and can support a

finding of irreparable harm.  *See MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F.

Supp. 2d 604, 638-39 (W.D. Va. 2010) (loss of future customers can establish irreparable harm).

Relatedly, Apple has also offered evidence to support a finding that it is likely to lose

market share to Samsung in the absence of an injunction.  Apple has introduced evidence that over

the span of 2010, ██████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████ Denison Dep. 289-

90.  Samsung's arguments and admissions regarding Apple's brand loyalty, and the evidence

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   presented by both Samsung's and Apple's experts regarding potential lost customers and lost

2   market share, could support a finding of irreparable harm.

3         In addition to showing injury, Apple must establish a nexus between Apple's harm of lost

4   customers and loss in market share and Samsung's allegedly infringing conduct. *See Quad/Tech,*

5   *Inc. v. Q.I. Press Controls B.V.,* 701 F. Supp. 2d 644, 657 (E.D. Pa. 2010) ("Quad/Tech has failed

6   to prove a causal relation between alleged loss and alleged infringement, which is necessary to

7   prove irreparable harm, and it failed to prove lost sales arising from the Defendants' alleged sale of

8   a markless registration control system."); *z4 Techs., Inc. v. Microsoft Corp.,* 434 F. Supp. 2d 437,

9   440-41 (E.D. Tex. 2006) (finding no irreparable harm in part because "it is not likely that any

10  consumer of Microsoft's Windows or Office software purchases these products for their product

11  activation functionality"); *cf. i4i,* 598 F.3d at 861 (upholding district court's conclusion that "i4i

12  was irreparably injured by Microsoft's infringement, based on its factual findings that Microsoft

13  and i4i were direct competitors in the custom XML market, and that i4i lost market share *as a*

14  *result of* the infringing Word products") (emphasis added); *Perfect 10, Inc. v. Google, Inc.,* 653

15  F.3d 976, 981-82 (9th Cir. 2011) (holding that there must be a causal connection between the

16  violation and the harm alleged in order to establish irreparable harm in copyright infringement

17  case). Although Apple bears the burden of establishing a likelihood of irreparable harm in the

18  form of lost market share or lost customers, "this showing need not be made with direct evidence."

19  *Robert Bosch,* 659 F.3d at 1154.

20        Apple argues that product design is an important driver in consumer demand and that the

21  release of Samsung's infringing products into the market will induce people that otherwise would

22  have purchased Apple smartphones to instead purchase Samsung's alleged copycat products.

23  Samsung, on the other hand, argues that there is no evidence that Samsung will take market share

24  from Apple as a result of the alleged infringement of Apple's patents-in-suit.  Wagner Decl. ¶ 33

25

26

27

28

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    The evidence regarding the causation between Samsung's infringing conduct and an

2    irreparable harm to Apple is somewhat contradictory.  It seems that at least some smartphone

3    purchasers consider the product's look in deciding which product to buy.  For example, Samsung's

4    expert acknowledged that ███████████████████████████████████████████████

5    ████████████.  Wagner Dep. 28-29.  ████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████  Sood Reply Decl. Ex. D at 67; Rangel Reply Decl. Ex. A at 28.  Moreover, at least one

8    of Samsung's own surveys indicates that ███████████████████████████████

9    ████████████████████████████████.  Ho Decl. Ex. A at 10.  This evidence suggests,

10   then, that product design generally is at least *one factor*, and for some people may be the *primary*

11   *factor*, influencing a person's decision to purchase a smartphone.

12   Samsung, in contrast, has provided some evidence that Apple's market share and potential

13   loss of customers is unrelated to Samsung's product design, and that smartphone design in general

14   is not a determinative factor in consumer decision-making.  ███████████████████████

15   ████████████████████████████████████████████████.  Wagner Decl. ¶¶ 35-36

16   & 40-43.  This suggests that the driver in consumer demand may be the novelty of the product, and

17   not necessarily the design.  ██████████████████████████████████████████

18   ████████████████████████████.  Jenkins Decl. Ex. MM at 13.  Samsung also offers

19   evidence that smartphone buyers are motivated to purchase products for a whole host of reasons,

20   ██████████████████████████████████████████████.  Wagner Decl. ¶

21   81.  Although Apple has offered some evidence that survey results underreport the impact that

22   design may have on consumer decision-making, it is not clear how much underreporting is likely to

23   occur. *See* Sood Reply Decl. ¶¶ 21-33.

24   Moreover, evidence regarding consumer choice is even more ambiguous in light of the fact

25   that Apple's patents do not claim the entire article of manufacture.  Therefore, even if "design"

26   matters to a new smartphone purchaser, it is not clear how much design of the front face of the

27   phone matters to that same purchaser.

28   **3.  Delay**

34

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Samsung also argues that Apple unduly delayed bringing its preliminary injunction motion, which suggests that Apple is not, in fact, irreparably harmed by the alleged infringement of the D'677 and D'087 patents.  Arguments of irreparable harm may be rebutted by a showing that the patent holder delayed in bringing its infringement action.  *See Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005); *but see High Tech Med. Instrumentation Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("[T]he period of delay may not have been enough, standing alone, to demonstrate the absence of irreparable harm.").

Apple alleges that Samsung has been copying Apple's designs since 2007.  Moreover, Apple specifically alleges that Samsung's Galaxy i9000 (released in March 2010) and the Galaxy S Vibrant (released in July 2010) both infringe upon the same design patents at issue here, but Apple did not seek to enjoin those products.  This suit was filed in April 2011, and the instant motion was filed in July 2011 – four years after Samsung allegedly began copying Apple's designs, and approximately one year after a previous generation of allegedly infringing Samsung products was released.  This delay and Apple's decision to seek a preliminary injunction only as to a few select products undercut Apple's claim of urgency.

Relying on *Rexnord, Inc. v. Laitram Corp.*, 1 U.S.P.Q.2d 1923 (E.D. Wisc. 1986), Apple argues that because it is seeking a preliminary injunction on only the newest generation of smartphones shortly after they were released in early 2011, there is no undue delay.  In *Rexnord*, the district court found that there was no undue delay in bringing a preliminary injunction motion because the movant timely sought to enjoin *newly discovered products* from the market. *Id.* at 1924.  Therefore, Apple argues, the clock begins for purposes of the delay analysis once the new product is introduced and discovered by the patent holder.  In *Rexnord*, however, the movant had brought a previous preliminary injunction motion against a previous generation of products.  As such, the movants in *Rexnord* appear to have been more diligent in asserting and protecting their patent rights than Apple has been here.

However, taken to its extreme, Samsung's position on delay would likely preclude Apple from ever seeking preliminary injunctive relief because of its initial delay in filing a motion for a preliminary injunction.  Such a rule would forever foreclose a patentee's right to preliminarily

35

United States District Court
For the Northern District of California

1    enjoin and protect its patent rights if it fails to timely enjoin a first generation of products. The

2    Court declines to adopt such a rule. Instead, Apple's overall diligence in seeking a preliminary

3    injunction, including the delay in seeking a preliminary injunction between 2007 and 2011 and its

4    decision to selectively enforce its patent rights, is but one factor in the irreparable harm analysis.[21]

5    On balance, Apple's delay in diligently pursuing its infringement claim against Samsung tips in

6    Samsung's favor.[22] *Cf. Robert Bosch*, 659 F.3d at 1151 ("The record reveals that Bosch has

7    diligently pursued infringers since the time it first learned of Pylon's infringing beam blades.").

8            Ultimately, the Court finds that Apple has not met its burden of establishing that Samsung's

9    allegedly infringing products will likely cause Apple irreparable harm. Although Apple and

10   Samsung are direct competitors in the market for new smartphone purchases, and Apple has a right

11   to exclude Samsung from marketing or selling infringing products, both of which are

12   considerations which suggest that there may be irreparable harm in the absence of an injunction,

13   Apple has not provided sufficient evidence to establish more than a mere possibility of future harm.

14   *See Winter*, 555 U.S. at 22. Given the ambiguity of the evidence regarding the importance of

15   design to smartphone purchasers, and the lack of evidence establishing actual consumer confusion,

16   or some other direct or circumstantial evidence that Samsung's design choices have impacted

17   Apple's market share or led Apple to lose customers, it is difficult to say that Apple is likely to

18   suffer irreparable harm as a result of Samsung's infringing conduct. *Compare Robert Bosch*, 659

19   F.3d at 1154 (evidence of lost customers to infringing product supports finding of irreparable

20   harm); *i4i*, 598 F.3d at 861 (evidence that infringing product rendered plaintiff's software obsolete

21   supports finding of irreparable harm). After considering all the evidence, the Court finds that

22   Apple has not established that it is likely to be irreparably harmed in the absence of an injunction.

---

[21] Apple argues that the delay was excusable because the parties were engaged in negotiations. This argument lacks merit, however, for two reasons. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Reply at 26-28. Second, there is no evidence on the record that the negotiations go back as far as 2007, when Apple alleges that Samsung began copying its designs.

[22] Samsung also argues that Apple cannot show irreparable harm because ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇Opp'n at 32. This argument, however, is dubious given the rebuttal evidence presented by Apple ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Blevins Decl.

36

C.    **Summary**

In determining whether to grant Apple's motion for the preliminary injunction of the Samsung Galaxy S 4G and the Infuse 4, the Court also considers the balance of the hardships to the parties, and whether the public interest is best served by granting the injunctive relief. *Abbott Labs.*, 452 F.3d at 1334.  "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)).  "The factors examined above—the balance of equities and consideration of the public interest—are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." *Winter*, 555 U.S. at 32.

> "[The] rule regarding whether a preliminary injunction should be granted or denied is that the trial court should weigh and measure each of the four factors against the other factors and against the magnitude of the relief requested.  Under this rule, no one factor, taken individually, is necessarily dispositive.  If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of others.  If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial."

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990) (internal citations and quotations omitted).

In this case, the balance of hardships weighs in favor of Samsung.  The Federal Circuit has acknowledged that "[t]he hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating." *Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990).  Nonetheless, in many circumstances, the infringer's hardship from an injunction is insufficient for a balance of hardships to weigh in its favor.  This is because "one who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against a continuing infringement destroys the business so elected." *Telebrands Direct Response Corp. v. Ovation Commc'ns, Inc.*, 802 F. Supp. 1169, 1179 (D.N.J. 1992) (quoting *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1002 n.12 (Fed. Cir. 1986).

In this case, because the Court considers the issue of infringement to be a close question, Samsung faces the distinct possibility of wrongly having to withdraw two of its cell phones from

37

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  the market. *See Ill. Tool Works*, 906 F.2d at 683. Moreover, it is not clear that an injunction on

2  Samsung's accused devices would prevent Apple from being irreparably harmed. Indeed, given

3  the evidence Samsung presented, it seems likely that a major beneficiary of an injunction would be

4  other smartphone manufacturers. Finally, the D'677 patent – in this case the design (as opposed to

5  the touch screen technology) of the front view of the smartphone – is but one of many features of

6  the Samsung accused devices. Issuing an injunction on both of these products based on one aspect

7  of the overall product does not advance equitable principles. In sum, a balance of equities weighs

8  in favor of Samsung here.

9          Additionally, the Court must consider whether the public interest would be served by

10  issuing an injunction. Samsung argues that an injunction will harm competition,[23] while Apple

11  argues that denying an injunction erodes intellectual property rights and encourages patent

12  infringement. While the public has an interest in the protection of patent rights, in this case, the

13  interest is counterbalanced by Samsung's continuing right to compete, which must be viewed as

14  legitimate at this stage in the process. *See id.* at 684. The public interest factor, therefore, does not

15  weigh strongly in either party's favor.

16          Weighing all of the factors, the Court is left with the firm impression that it would be

17  "inequitable for an injunction to issue." *Id.* at 681. At this point in the proceedings, although

18  Apple has established a likelihood of success on the merits at trial, there remain close questions

19  regarding infringement of the accused devices, and Samsung has raised substantial questions

20  regarding the validity of the D'087 patent. Moreover, Apple has not yet established a likelihood of

21  irreparable harm, and the balance of the equities weigh in favor of Samsung. Accordingly, the

22  Court DENIES Apple's motion for a preliminary injunction prohibiting Samsung from making,

23  using, offering to sell, or selling within the United States, or importing into the United States

24  ───────────────────────
[23] The Court granted third parties, Verizon Wireless and T-Mobile, administrative motions seeking
25  leave to file amicus curiae briefs. These third parties have voiced concerns regarding the effects of
a preliminary injunction on their ability to sell products to customers. While the Court is cognizant
26  of the consequences to third parties of granting preliminary injunctions, no additional weight was
placed upon the arguments contained in the briefs of amicus curiae. The amicus briefs focus either
27  on private interests (the interests in being able to sell products) or are duplicative of arguments
made by Samsung. If Samsung is infringing upon Apple's patents, it is no more acceptable for
28  third parties to benefit from Samsung's unlawful actions than it is for Samsung itself to benefit.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1   Samsung's Infuse 4 and Galaxy S 4G. *See id.* at 683. ("A court must remain free to deny a

2   preliminary injunction, whatever be the showing of likelihood of success, when equity in the light

3   of all the factors so requires.").

4   **II.   Apple's Tablet Design Patent**

5   Apple also seeks to enjoin the domestic sale of the Samsung Galaxy Tab 10.1. Apple

6   claims that the Galaxy Tab 10.1 infringes upon Apple's D'889 patent, that it will likely be

7   irreparably harmed absent an injunction, and that it meets the other requirements for granting

8   preliminary relief. Because Samsung has raised a "substantial question" regarding the validity of

9   the D'889 patent, Apple's motion for a preliminary injunction on the Galaxy Tab 10.1 is DENIED.

10   **A. <u>Likelihood of Success on the Merits</u>**

11   **1. Invalidity Based on Functionality**

12   Samsung first challenges the validity of the D'889 patent based on functionality.

13   Samsung's functionality argument is similar to its argument with respect to the D'677 and D'087

14   cell phone design patents. As explained above, the test for invalidity based on functionality is

15   whether "the claimed design is 'dictated by' the use or the purpose of the article." *L.A. Gear*, 988

16   F.2d at 1123. "If the particular design is essential to the use of the article, it cannot be the subject

17   of a design patent." *Id.*

18   The Court finds that Samsung has not raised substantial questions regarding the validity of

19   the tablet design based on functionality. Samsung once again offered a list of reasons as to why the

20   features of the D'889 enhance functionality. For the same reasons discussed above with regard to

21   the phone design patents, the Court finds that Samsung has not offered a compelling explanation of

22   why the patented features were "dictated by" the functionality of the tablet.

23   Nevertheless, the aspects of the design that are dictated by function limit the claimed scope

24   of the patent. *Richardson*, 597 F.3d at 1294 ("However, when the design also contains ornamental

25   aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not

26   extend to any functional elements of the claimed article."). The Court finds that several aspects of

27   the D'889 patent are dictated by function. Specifically, the tablet computer must be a size that

28   allows portability. Sherman Decl. ¶ 51. Additionally, because the tablet functions by the user

39

touching the screen, the tablet must have a relatively large screen in order to perform the functions

of the tablet. Because the size must allow portability, the screen necessarily must encompass a

large portion of the front face of the product. Sherman Decl. ¶ 35.

### 2. Obviousness

Samsung has identified several prior art references that it argues raise substantial questions

about the obviousness of the D'889 patent. The Court employs the obviousness analysis

articulated in *Durling*. The obviousness analysis for a design patent requires a search of the prior

art for a primary reference that creates "basically the same" visual impression as the patent at issue.

*Durling*, 101 F.3d at 103. The primary reference may then be modified using other references to

construct a hypothetical piece of prior art, which is subject to the ordinary observer test and a focus

on the overall design. *Id.*

The overall visual impression of the D'889 patent must first be discerned.[24] Apple's D'889

patent is a broad, simple design that gives the overall visual impression of a rectangular shape with

four evenly rounded corners, a flat glass-like surface without any ornamentation and a rim

surrounding the front surface. The back is a flat panel that rounds up near the edges. The overall

design creates a thin form factor. The screen takes up most of the space on the front of the design.

The Court finds that the 1994 Fidler/Knight Ridder tablet creates "basically the same visual

impression" as the D'889 patent. *See Durling*, 101 F.3d at 103 (internal quotations omitted). The

1994 Fidler/Knight Ridder tablet is also a simple rectangular tablet with four evenly rounded

---

[24] Unlike the D'677 and D'087 patents, Apple has claimed all views of the article in the D'889 patent. There is some ambiguity in the D'889 patent, in that there appear to be broken lines that delineate the inset screen below the surface of the glass-like front cover. The D'889 patent explicitly states that the broken lines in figure 9 form no part of the claimed design. *See* D'889 patent description. The D'889 patent description does not, however, explain whether the dotted lines used in the other views form no part of the claimed design. A reasonable interpretation of the dotted lines in the D'889 patent, unlike the D'677 patent, is that the dotted lines are intended to show the inset screen below the glass-like surface. At this point, without the aid of prosecution history, evidence regarding drafting principles, or argument from the parties, the Court considers the dotted lines to most likely indicate an inset screen and are likely part of the claimed design. *Bernardo Footwear, L.L.C. v. Fortune Dynamics, Inc.*, No. 07-0963, 2007 WL 4561476, at *1 (S.D. Tex. Dec. 24, 2007) (interpreting the use of broken lines in a patent as part of the claimed design where the drafter failed to explain the significance of the broken lines). Note that even if the dotted lines are not claimed as part of the design, the analysis likely would not change.

40

United States District Court
For the Northern District of California

corners. The front screen is a flat reflective surface surrounded by a rim on all four sides. The back-side, though it apparently has four screws, is essentially flat. The area surrounding the screen is admittedly not entirely symmetrical on all four sides, but none of these minor differences distracts from the overall visual appearance of the 1994 Fidler/Knight Ridder tablet as a simple and portable rectangular tablet with the same overall visual impression as the D'889 patent. *See Durling*, 101 F.3d at 103 ("In comparing the patented design to a prior art reference, the trial court judge may determine *almost instinctively* whether the two designs create basically the same visual impression.") (emphasis added).

At oral argument, Apple argued that the flat glass surface disclosed in the D'889 patent, which is not present in the 1994 Fidler/Knight Ridder tablet, precludes the Court from finding that the 1994 Fidler/Knight Ridder tablet may serve as a primary reference. The Court disagrees. The flat glass surface in the D'889 patent does not detract from the fact that the "overall visual impression" created by the D'889 patent is the same as the 1994 Fidler/Knight Ridder tablet. Essentially, it seems as though Apple is arguing for the primary reference to be "substantially the same" as the patent-in-suit. Apple's argument that one design element may be sufficient to defeat obviousness risks collapsing the obviousness inquiry into the anticipation inquiry in the design context. The Court declines to follow such reasoning.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Apple's D'889 Patent                    1994 Fidler/Knight Ridder Tablet

Once a primary reference has been identified, "secondary references may only be used to modify the primary reference if they are so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103 (internal quotation marks omitted). Samsung has identified several prior art references, including the 2002 Hewlett-Packard Compaq Tablet PC TC 1000 ("the HP Tablet"), which disclose additional features of the tablet that are related to the primary reference.[25] The HP

---

[25] The D'889 patent application was filed on March 17, 2004. Apple does not contest the rules of priority with respect to the prior art referenced by Samsung.

42

1    Tablet may serve as a secondary reference because it is related both in design and in use to the

2    1994 Fidler/Knight Ridder Tablet. *See In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 1993)

3    (explaining that secondary references may be properly relied on to modify a basic design when the

4    references are "so related that the appearance of certain ornamental features in one . . . would have

5    suggested application of those features to another."). The HP Tablet contains a flat glass screen

6    that covers the top surface of the tablet and a thin rim that surrounds the front face of the device.

7    Thus, the main element that Apple argued was not present in the 1994 Fidler/Knight Ridder Tablet

8    existed in the HP Tablet.

9         Finally, Mr. Sherman, Samsung's design expert, considered both the 1994 Fidler/Knight

10   Ridder Tablet and the HP Tablet (as well as other prior art available at the time of invention) and

11   indicated that: "The flat clear surface is plainly disclosed by the HP Compaq Tablet PC TC 1000.

12   Furthermore, the Japanese design registrations do not have surface shading lines similar to U.S.

13   design patents, but it would be obvious to one of ordinary skill from those designs to utilize a flat

14   clear surface for a tablet design, rather than an embedded screen design." Sherman Decl. ¶ 32. Mr.

15   Sherman further concluded that "[i]t is my conclusion, based on my review of the prior art, I

16   believe that a designer of ordinary skill in designing mobile electronic devices in March 2003

17   would have found it obvious to create the D'889 tablet design consisting of a rectangular design

18   with four evenly rounded corners, a relatively thin depth, a smooth back that curves up toward the

19   front of the device, and a flat, clear front surface that extended beyond the edges of the display

20   screen." Sherman Decl. ¶ 31. In light of Mr. Sherman's analysis[26] and conclusion regarding what

21   a designer of ordinary skill in designing mobile electronic devices would have known at the time of

---

[26] Moreover, Mr. Sherman identified several other prior art references that disclose various aspects of the D'889 patent, including: 1993 U.S. Patent No. D337,569 (discloses an electronic device with four evenly rounded corners, a flat surface, a relatively thin depth, and a largely smooth and continuous back surface); 2002 United States Patent No. D461,802 (discloses a smooth back surface and a thin depth); 1995 Japanese Patent No. 0921403 (discloses a thin bottom border, and a side edge and back surface free of ornamentation except for five small circles); 1993 Japanese Patent No. 0887388 (discloses an overall rectangular shape with four evenly rounded corners, a largely smooth face, and a thin rim surrounding the front surface); 2002 Japanese Patent No. 1142127 (discloses a flat smooth surface with a similar thin cross section view, edges tilted upward, and an almost uniformly smooth back-side).

43

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

1    invention, the theoretical reference's design would likely appear substantially the same as the

2    D'889 patent in the eyes of the ordinary observer. *See Int'l Seaway Trading*, 589 F.3d at 1240-41.

3    The Court therefore finds that Samsung has raised a substantial question regarding the validity of

4    the D'889 patent on obviousness grounds.

5         Apple argues that secondary factors support a finding that Apple's D'889 patent was not

6    obvious at the time of invention. Secondary considerations may establish that a patent was non-

7    obvious at the time it was invented. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk*

8    *Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010); *Iron Grip Barbell Co., Inc. v. USA*

9    *Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004). Specifically, Apple argues that the industry

10   skepticism and unexpected commercial success of the iPad, the embodiment of the D'889 patent,

11   support a conclusion that the design patent was not obvious at the time it was invented.

12        Apple's industry skepticism evidence of non-obviousness is inconclusive. The industry

13   skepticism in the form of articles and internet posts published around the time of the release of the

14   iPad consists of skepticism about the iPad's price, size, and functionality. *See, e.g.*, Ho Decl. Ex.

15   AA-DD. These articles and internet posts do not suggest skepticism about the iPad's design or the

16   opinion that the iPad's design would be an "unrealistic" or "radical departure" from previous

17   designs. *See Transocean Offshore Deepwater Drilling*, 617 F.3d at 1304 (relying on evidence of

18   industry skepticism that a patented invention would be successful).

19        Although Apple has not cited explicit evidence of the commercial success of the iPad, such

20   success may be inferred from the iPad's market share. Moreover, Apple asserts that Samsung has

21   conceded that ████████████████████████████████████████████████████

22   ███████████████████████████████████████. Lutton Reply Decl. ¶ 24; Ho Decl.

23   Ex. C (as corrected); *see Iron Grip Barbell Co.*, 392 F.3d at 1324 (evidence of commercial success

24   can support non-obvious determination of patent). Although the designs of the Galaxy Tab 10.1

25   and iPad appear indistinguishable, and Samsung's concession and survey results are persuasive

26   evidence, this evidence merely shows that generally design is important to Apple's success and that

27   design is important to the Galaxy Tab 10.1's success. This evidence fails to establish the requisite

28

44

1   nexus between the patented design and the success of the iPad. *Asyst Techs., Inc. v. Emtrak, Inc.,*

2   544 F. 3d 1310, 1316 (Fed. Cir. 2008).

3          Accordingly, given the strength of the prior art presented by Samsung, the Court does not

4   find that Apple's secondary considerations evidence of non-obviousness overcomes the substantial

5   questions of invalidity. *See Leapfrog Enters., Inc. v. Fisher-Price, Inc.,* 485 F.3d 1157, 1162 (Fed.

6   Cir. 2007) (upholding finding of obviousness by district court where substantial evidence of

7   commercial success, praise, and long-felt need did not overcome strong prima facie obviousness

8   showing). Therefore, Apple has not established that it is likely to succeed at trial against

9   Samsung's challenge to the validity of the D'889 patent.

10         **3. Infringement**

11         In addition to limiting the scope of the design patent to those aspects alone that are

12  ornamental and do not extend to any functional elements of the claimed design, *Richardson*, 597

13  F.3d at 1294, the Court must also view the infringement analysis in light of the relevant prior art.

14  *Egyptian Goddess*, 543 F.3d at 678. When there are examples of many prior art designs,

15  "differences between the claimed and accused designs that might not be noticeable in the abstract

16  can become significant to the hypothetical ordinary observer who is conversant with the prior art."

17  *Id.; see also Crocs*, 598 F.3d at 1303 ("If the claimed design is close to the prior art designs, small

18  differences between the accused design and the claimed design assume more importance to the eye

19  of the hypothetical ordinary observer.").

20         As explained above, because several aspects of the D'889 patent are functional, the scope

21  of the claims that may be considered in the infringement analysis is narrowed. In addition, the

22  Court agrees with Samsung that the ordinary observer buying an expensive electronics device will

23  be particularly attentive to smaller details.

24         Comparing the design of the Galaxy Tab 10.1 with the D'889 patent, even in light of the

25  narrow scope of the claimed design, the Court finds that Apple is likely to establish at trial that the

26  Galaxy Tab 10.1 is substantially similar to the D'889 patent in the eyes of an ordinary observer.

27  Several differences between the D'889 patent and the Galaxy Tab 10.1 are apparent: the profile

28  view of the D'889 patent is thicker and with a less curved/sloping profile view than the Galaxy Tab

45

United States District Court
For the Northern District of California

1   10.1; the Galaxy Tab 10.1 has a different aspect ratio than the D'889 design; and the Galaxy Tab

2   10.1 has an upper tab cut out of the top back portion with an embedded camera and a logo and

3   other writing that is not claimed in D'889.  These differences are admittedly more pronounced in

4   light of the narrowed scope of the D'889 patent.  Nonetheless, as seen from the comparisons

5   below, the similarities in the overall designs of the Galaxy Tab 10.1 and the D'889 patent

6   overcome these differences.



Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

The Court also compared the Samsung Galaxy Tab 10.1 to Apple's iPad and iPad 2, all three of which were provided to the Court by Samsung as physical exhibits.[27] The Court notes that the Galaxy Tab 10.1 is virtually indistinguishable from these Apple products.[28] Even considering minor differences in the aspect ratio, the thickness, the brand markings on the back of the tablet, and the existence of a physical button on the center screen, the Samsung product would be considered substantially similar "in the eye of an ordinary observer" to the Apple products.

---

[27] Samsung argues that Apple has only recently claimed that the iPad 2 is the commercial embodiment of the D'889 patent. In response to interrogatory requests for Apple to identify all of its products that embody the design patents at issue in this suit, Apple appears to have failed to identify any commercial embodiment of the D'889 patent. The Court does not construe Apple's response as an admission that no Apple product embodies the D'889 patent. While it may be an open question whether the iPad 2 is a commercial embodiment of the D'889 patent, the Court will assume, without deciding at this point, that the iPad 2 is the commercial embodiment of the D'889 patent.

[28] Direct comparisons of actual products are permissible to determine infringement. *See L.A. Gear*, 988 F.2d at 1125 ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly; indeed, such comparison may facilitate application of the *Gorham* criterion of whether an ordinary purchaser would be deceived into thinking that one were the other.") (internal citations omitted).

47

1    *Egyptian Goddess*, 543 F.3d at 670.  Samsung appears to have created a design that is likely to

2    deceive an ordinary observer, "inducing him to purchase one supposing it to be the other."  *Id.*



13         Ho Decl. Ex. II (Apple iPad 2 on left, Samsung Galaxy Tab 10.1 on right)

14   In light of the substantial similarities between the design of the accused product and the D'889

15   patent, the Court finds that Apple will likely be able to establish infringement of the D'889 patent

16   at trial.  Nonetheless, because Samsung has raised a substantial question regarding the validity of

17   the D'889 patent, Apple has not met its overall burden of establishing a likelihood of success on

18   the merits.

19        **B.   Irreparable Harm**

20         Apple must also establish that it is likely to suffer irreparable harm as a result of Samsung's

21   patent infringement in the absence of a preliminary injunction.  *Abbott Labs.,* 452 F.3d at 1348; *see*

22   *also Winter*, 555 U.S. at 19.  Apple's arguments concerning irreparable harm, and Samsung's

23   arguments to rebut Apple's showing are similar for both the iPhone and the iPad products, but with

24   several key differences.

25         Apple has a stronger argument for establishing irreparable harm in the absence of an

26   injunction against the Samsung Galaxy Tab 10.1.  "[T]he existence of a two-player market may

27   well serve as a substantial ground for *granting* an injunction" because "it creates an inference that

28   an infringing sale amounts to a lost sale for the patentee."  *Robert Bosch*, 659 F.3d at 1151

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

1  (emphasis in original). ████████████████████████

2  ██████ Musika Decl. ¶ 16 & Ex. 3. As of the second quarter in 2011, Apple and Samsung

3  together claimed ██████ of the tablet market. Musika Decl. Ex. 3. Indeed, from the third to

4  fourth quarter of 2010, the evidence shows that Apple's market share of the tablet market

5  decreased 20 percentage points, while Samsung's newly introduced tablet gained approximately

6  17% of the market. Bartlett Decl. Ex. 47. Because there appear to be fewer players in the tablet

7  market, and the market is growing, it is arguably more likely that market share lost by Apple will

8  be lost to Samsung.[29] *See Robert Bosch*, 659 F.3d at 1151.

9      Moreover, the ambiguity regarding the importance of design in consumer purchasing

10  appears to be less prominent in the tablet market than in the smartphone market. Apple has

11  established that design is an important driver in demand for tablets. Indeed, a recent Samsung

12  survey establishes unequivocally that ████████████████████████

13  ██████████████ Ho Decl. Ex. C (as corrected). This evidence supports Apple's argument

14  that consumers are likely to be induced to purchase the Galaxy Tab 10.1, instead of the Apple iPad,

15  because the overall designs of the products are substantially the same. *See Quad/Tech*, 701 F.

16  Supp. 2d at 657 ("Quad/Tech has failed to prove a causal relation between alleged loss and alleged

17  infringement, which is necessary to prove irreparable harm, and it failed to prove lost sales arising

18  from the Defendants' alleged sale of a markless registration control system."). Additionally,

19  because Apple claimed all views of the D'889 design patent, evidence regarding the importance of

20  design in consumer choice is likely to carry more weight than if only an aspect of the overall article

21  of manufacture was claimed.[30] In the tablet market, therefore, Apple has made a stronger showing

22  of irreparable harm from Samsung's allegedly infringing product.

23

24  [29] ████████████████████████████████

25  ██████████████ *See* Musika Decl. Ex. 3. ██████████████

26  ██████████ *Id.*

27  [30] Similarly, some of Samsung's arguments regarding delay are even less persuasive in the tablet
market. The Galaxy Tab 10.1 was released in March 2011, four months or less before Apple filed

28  its motion for a preliminary injunction. It appears that most of Samsung's delay arguments relate
to the smartphone designs and not to the tablet designs. Therefore, this additional argument that

49

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

## C. <u>Summary</u>

While Apple has established a likelihood of irreparable harm in the absence of a preliminary injunction, Samsung has raised substantial questions regarding the validity of the D'889 patent, and Apple has not established that it is likely to succeed overall at trial. The Court may deny a motion for a preliminary injunction when the patentee has failed to establish any one of the four factors – particularly if the patentee has failed to establish likelihood of success on the merits or likelihood of irreparable harm. *Jack Guttman*, 302 F.3d at 1356. The Court, therefore, finds that Apple has not met its burden and DENIES Apple's motion for a preliminary injunction prohibiting sale of the Samsung Galaxy Tab 10.1.

## III.     **Apple's '381 Patent**

Apple moves for a preliminary injunction arguing that the Galaxy S 4G, Infuse 4G, and Droid Charge phones and the Galaxy Tab 10.1 tablet computer also infringe upon Apple's '381 patent. The '381 patent is a utility patent that claims a method for scrolling on a touch-screen device. As explained below, Apple has met its burden of establishing that it is likely to succeed on the merits at trial on its infringement claim and that it is likely to withstand a challenge to the validity of the patent. Nonetheless, because Apple has not established that it would face irreparable harm absent an injunction, the Court DENIES the motion for a preliminary injunction with respect to the '381 patent infringement claim.

## A. <u>Likelihood of Success on the Merits</u>

Apple claims that Samsung's Infuse 4G, Galaxy S 4G, Droid Charge, and Galaxy Tab 10.1 infringe on several claims of the '381 patent. Specifically at issue are independent claims 1, 19, and 20, and dependent claims 2, 3, 4, 5, 7, 9, 10, 13, 14, and 16. Mot. at 19; ECF No. 91 ¶¶ 28-34 (Balakrishnan Decl.). Claim 1 of the '381 patent, on which both parties focus their attention, is an independent method claim for the use of a scroll back feature on a touch screen device.[31] Claim 1 states:

---

weighed in favor of Samsung with respect to the smartphones is not persuasive with respect to the Galaxy Tab 10.1.

[31] The '381 patent was filed on December 14, 2007. The patent claims several related application dates, the earliest of which is January 7, 2007.

50

> A computer-implemented method, comprising:
> At a device with a touch screen display:
> displaying a first portion of an electronic document;
> detecting a movement of an object on or near the touch screen display;
> in response to detecting the movement, translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion;
> in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touchscreen display:
> displaying an area beyond the edge of the document, and
> displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion; and
> in response to detecting that the object is no longer on or near the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion.

'381 col. 35:32-38. Dependent claims 2 through 18 disclose additional limitations. *Id.* at col. 35:59-36:58. Additionally, independent claims 19 and 20 disclose independent apparatus claims directed to devices that incorporate the feature of independent claim 1. *Id.* at col. 36:59-38:23.

### 1. Claim Construction

Claim construction is a question of law to be determined by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996). "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). Accordingly, a claim should be construed in a manner that "stays true to the claim language and most naturally aligns with the patent's description of the invention." *Id.*

In construing disputed terms, the court looks first to the claims themselves, for "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Id.* at 1312 (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Generally, the words of a claim should be given their "ordinary and customary meaning," which is "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    1312-13.  In some instances, the ordinary meaning to a person of skill in the art is clear, and claim

2    construction may involve "little more than the application of the widely accepted meaning of

3    commonly understood words." *Id.* at 1314.

4         In many cases, however, the meaning of a term to a person skilled in the art will not be

5    readily apparent, and the court must look to other sources to determine the term's meaning. *Id.*

6    Under these circumstances, the court should consider the context in which the term is used in an

7    asserted claim or in related claims, bearing in mind that "the person of ordinary skill in the art is

8    deemed to read the claim term not only in the context of the particular claim in which the disputed

9    term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

10   Indeed, the specification is "'always highly relevant'" and "'[u]sually . . . dispositive; it is the

11   single best guide to the meaning of a disputed term.'"  *Id.* at 1315 (*quoting Vitronics Corp. v.*

12   *Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Where the specification reveals that the

13   patentee has given a special definition to a claim term that differs from the meaning it would

14   ordinarily possess, the inventor's lexicography governs. *Id.* at 1316.  Likewise, where the

15   specification reveals an intentional disclaimer or disavowal of claim scope by the inventor, the

16   inventor's intention as revealed through the specification is dispositive.  *Id.*

17        The parties presently differ on the construction of two terms: "display" and "first direction."

18              a.  Display

19   Samsung argues that the word "displaying" should be construed so that the term requires an

20   "active display" and therefore an illuminated pixel.  Opp'n at 26; *See also* Johnson Decl. ¶ 48, ECF

21   No. 174.  In support of its construction, Samsung argues that this construction is consistent with the

22   '381 patent specification.  Opp'n at 26.  Specifically, the term "displaying" elsewhere in the claims

23   — "displaying a first portion," "displaying a second portion," "displaying a third portion," and

24   "displaying a fourth portion" — all involve displaying an electronic document, and therefore

25   require emitting light.  Additionally, Samsung argues that this interpretation is supported by several

26   Federal Circuit cases constructing "display" as "emitting light."  *Id.*

27        Apple argues the term must be given its plain meaning of "showing or revealing something

28   to the viewer."  Reply at 12.  Apple also argues that both the claims and the specification do not

52

United States District Court
For the Northern District of California

1   require that the area displayed emit light, but rather they specifically contemplate displaying black.

2   Reply at 12. Apple supports this argument with figure 8C from the specification, in which "an area

3   . . . beyond the bottom and right edges of the web page is displayed," and where this area is "black

4   and thus is visually distinct from the white background of the web page." '381 col. 29:57-62.

5   Moreover, independent Claim 1 requires "displaying an area beyond the edge of the document," *id.*

6   at col. 35:47, while dependent Claim 13 adds that "the area beyond the edge of the document is

7   *black*, gray, a solid color, or white," *id.* at col. 36:23-24 (emphasis added).

8         The Court construes the term "displaying" as meaning "showing or revealing to the

9   viewer." The term is not limited to emitting light or having an illuminated pixel. The patentee

10  specifically described displaying the area outside of the document as black in both the claims and

11  the specifications. *See* '381 col. 29:57-62; 35:47-48; 36:23-25. Conversely, nothing in the claims

12  or specifications hint that to display black means to emit light. If Samsung wishes to establish that,

13  in view of the technology at the time, a person skilled in the art would have understood displaying

14  black as emitting some light, it must provide more evidence than the conclusory allegations of its

15  expert. *See Phillips*, 415 F.3d at 1318.

16        Additionally, the Federal Circuit cases upon which Samsung relies are not compelling in

17  this context. In both cases, display was not used as a verb, as it is here. *Honeywell Int'l, Inc. v.*

18  *United States*, 609 F.3d 1292, 1295 (Fed. Cir. 2010) *cert. denied*, 131 S. Ct. 3021 (2011) ("local

19  color display"); *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1209-10 (Fed. Cir. 2002)

20  ("display area"). Moreover, while the court in *Texas Digital* held that a "display area" should be

21  limited to illuminated pixels, 308 F.3d at 1210, the court's analysis relied on language in the

22  specification not present in the instant case, *see id.* at 1209-10, and on a dictionary definition, an

23  approach which carries diminished significance after *Phillips*. *See Phillips*, 415 F.3d at 1320-21

24  (explicitly criticizing the dictionary-based approach of the court in *Texas Digital*). Finally, the

25  usage in the claims and specification of the patent at issue is the proper primary source for that

26  term's meaning, and extrinsic evidence is unlikely to be useful unless "considered in the context of

27  the intrinsic evidence." *Id.* at 1319.

28          b.  First Direction

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

Claim 1 first describes a method for "translating the electronic document displayed on the touch screen display in a first direction." Later, the claim again uses the term "first direction": "an edge of the electronic document [is] reached while translating the electronic document in the first direction." Samsung argues that the term "first direction," therefore, requires that the document move in the same straight line. Opp'n at 27. Thus, Samsung argues that Claim 1 only covers methods reacting to user inputs where the document is being translated in the same straight line both when it is being translated prior to reaching the edge and when it actually reaches the edge. *Id.*

According to Samsung, it is "not humanly possible to constrain the movements of a finger in a straight line." *Id.* Instead, Samsung argues that users move their fingers, and thus the document, along some curved or potentially non-differentiable path. *Id.* Therefore, even if the path of translation of the electronic document is linear, when the user reaches the edge of the electronic document, the path of translation was necessarily moving in a different direction before reaching the edge. *Id.* Samsung thus argues that the method covers only automatic document movement, rather than movement generated by the user's finger.

Apple disputes that a movement in the "first direction" must be strictly linear. Reply at 11. The '381 patent's specification states that the device is directed at the field of "devices with touch-screen displays" and aims to solve problems with prior devices by providing a user interface based on "finger contacts and gestures on the touch-screen display." '381 col. 1:45-46; 2:49-50. Because a person skilled in the art would understand that the claimed method acts in response to a user's fingers, they would not interpret the claims to require superhuman precision in the finger movements. Reply at 11.

The Court construes the term "first direction" as not requiring a strictly linear finger movement. The Court agrees with Apple that it must interpret the claims in a common-sense fashion in light of the technology and techniques described in the specification, and must reject any hyper-technical reading that the claim is incapable of performing. *See Lisle Corp. v. A.J. Mfg. Co.,* 398 F.3d 1306, 1314 (Fed. Cir. 2005). Because the patentee clearly anticipated applying the method to a touch-screen display being manipulated by fingers, the term must be interpreted in

54

light of the limitations of a human finger. '381 col. 2:48-50.  Indeed, Samsung's expert Dr. Van dam, seems to agree with this construction.  Van dam Dep. at 129 (stating that the "common-sense meaning" of direction was a predominantly horizontal or predominantly vertical movement).

### 2. Infringement

For a patentee to establish that it is likely to succeed on the merits, it "must demonstrate that it will likely prove infringement of one or more claims of the patents-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010).

The video clips attached as Exhibits 13a-13h to the Balakrishnan Declaration show that the gallery and contacts applications on Samsung's accused devices perform the same functions as those described in the '381 patent.  Therefore, the accused Samsung devices infringe upon both independent claim 1, and dependent claims 2-5, 7, 9-10, 13, 14, and 16.  Similarly, the accused devices also contain a program with instructions for performing the tasks and a computer readable storage medium with stored instructions that, when executed, cause a device with a touch screen display to perform the steps in claim 1 as recited in claims 19 and 20.  *See* Balakrishnan Decl. ¶¶ 88-124.

Moreover, Samsung only offered claim construction arguments to oppose Apple's infringement contention.  For example, Samsung argues that its devices do not infringe the '381 patent because the devices all use AMOLED technology, and when the devices show an area beyond the border of the electronic document, the area is black, and not emitting light.  Because the Court construed the term "display" as not requiring the illumination of light, the Court necessarily rejects Samsung's argument against an infringement finding.  Samsung also argues that if a user's finger sharply changes directions at exactly the point when the electronic document reaches the edge of the screen, as demonstrated in Samsung's expert's declaration, then Samsung's accused products arguably do not infringe in response to this particular input.  *See* Johnson Dec. ¶¶ 32, 44. However, the Court finds that because the term "first direction" does not require linear movement, Samsung's devices do infringe.

55

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

1  Based on the evidence presented in Exhibits 13a-13h to the Balakrishnan Declaration,

2  which demonstrates the touch screen scroll function of patent '381 in all four accused devices, and

3  the evidence provided by the parties, the Court finds that Apple is likely to succeed at trial in

4  establishing that the four Samsung products at issue infringe the '381 patent.

5  ### 3.  Invalidity Because of Anticipation

6  Novelty of a claimed invention is an explicit condition for patentability. 35 U.S.C. § 102

7  (2006).  A reference is anticipatory under § 102 when it discloses each and every element of the

8  claimed invention, whether it does so explicitly or inherently. *Eli Lilly & Co. v. Zenith Goldline*

9  *Pharm., Inc.*, 471 F.3d 1369, 1375 (Fed. Cir. 2006).  Samsung argues that the '381 patent is invalid

10  because it is anticipated by several prior art references.[32]  First, Samsung argues that some claims

11  in the '381 patent are anticipated (and the remaining claims are made obvious) by the Lira

12  Reference, a prior patent application.  Second, Samsung argues that two computer programs,

13  LaunchTile and XNAV anticipate every claim of the '381 patent.  A brief description of the

14  references is warranted, then an analysis as to whether these references anticipate the '381 patent

15  follows.

16  a.  Lira

17  The Lira reference, International Publication Number WO 03/081458 to Luigi Lira, was

18  published on October 2, 2003, before Apple's claimed invention date for the '381 patent, and is

19  thus prior art. *See* 35 U.S.C. § 102(a).  The patent generally addresses the problem of browsing

20  large documents — such as a web page — on small portable electronic devices with a finger or a

21  stylus. WO'458 p. 1.  For example, the patent discloses a method to reconfigure the document into

22  multiple columns, and then for allowing the user to scroll and zoom through these columns. *Id.* In

23  its specifications, the Lira reference discloses an alignment control technique for navigating

24  through the aforementioned columns where, after a user lifts the stylus or his finger, the column

25  "snap[s] into alignment with the display window." *Id.* p. 15:18-21.  The user can set a threshold

26  distance past the edge of the column so that the display window will only snap back if the distance

27

28  ---
[32] Samsung submitted additional prior art at the hearing on the preliminary injunction motion. The Court need not reach this new prior art in light of the Court's findings regarding irreparable harm.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    scrolled does not exceed this threshold. *Id.* at p. 15:21-23. Depending on the user's settings, a

2    scroll past the threshold can cause the display window to either stay where the user left it or "snap"

3    forward to the next column. *Id.* at p. 15:23-31. According to Samsung, this snap-back method

4    anticipates all elements of the '381 independent claim. Opp'n at 24-25.

5                         b.  Launch Tile/XNAV

6          LaunchTile is software written to provide a one-handed solution for interaction on a stylus-

7    free touch screen mobile device. ECF No. 165 ¶ 46 (Bederson Decl.). Dr. Bederson and his team

8    also created XNAV. XNAV was a variant of LaunchTile created to run on a different set of mobile

9    devices and operating systems, but containing substantially similar features.[33] *Id.* at ¶¶ 19-20.

10   Samsung identifies two behaviors of LaunchTile and XNAV which allegedly anticipate the '381

11   patent. LaunchTile and XNAV are substantially similar in operation, and so the Court will refer to

12   only LaunchTile for simplicity. Van dam Decl. ¶ 29.

13                        i.  **The World View**

14         The first behavior takes place on LaunchTile's world view, which is a type of home screen.

15   Id. ¶ 31. In the world view, LaunchTile displays 36 "tiles," each representing an application. *Id.*

16   The world view contains nine "Zones" of four tiles each. *Id.* A user has the option to zoom in on

17   one of the nine four-tile Zones. Id. ¶ 32. Once zoomed, the user can navigate between the Zones

18   by using her finger to scroll towards a neighboring Zone. *Id.* As with the Lira reference, if the

19   user scrolls the display area more than a threshold distance past the edge of the Zone, then the

20   display area will snap to the adjacent Zone. However, if the user scrolls the display area less than

21   the threshold distance past the edge of the Zone, then the display area will snap back to the original

22   Zone when the user lifts her finger. *Id.* According to Samsung's expert, Dr. Van dam,

23

24

25   ───────────────────────
     [33] Apple argues that Samsung has not established that this reference is "prior art" within the
26   meaning of Section 102. Section 102 (a)-(g) enumerates specific instances when a prior invention,
     prior knowledge, prior publication, prior sale, or prior public use can invalidate a patent. Samsung
27   has failed to identify under which theory it believes the XNAV and LaunchTile should be
     considered "prior art." Assuming, without deciding, that XNAV and LaunchTile meet the statutory
28   requirements of "prior art," neither of these references anticipates the '381 patent.

United States District Court
For the Northern District of California

1    LaunchTile's operation[34] and embodiment anticipate all of the independent and dependent claims

2    of the '381 patent.

3                              **ii.  The E-mail Application**

4          Samsung also argues that LaunchTile's e-mail application reads onto the '381 patent.  The

5    e-mail application displays a scrollable list of e-mails.  Opp'n at 21.  Each e-mail is represented as

6    a horizontal box, and the list of e-mails is composed of these boxes "stacked" upon one another.

7    *Id.*  The program contains an auto-align feature: if, when the user lifts her finger, the bottom of the

8    screen is not aligned with the edge of a box, the program will move forward or backwards to align

9    the edge of the e-mail box with the edge of the screen.  *Id.*; Reply at 15.  If the user scrolls past the

10   bottom-most e-mail, an area beyond the edge of the list is displayed.  Opp'n at 21.  If the user

11   scrolls past the edge of the list but less than a threshold amount, the area will snap back so that it is

12   flush with the edge of the list.  Opp'n at 21; Reply at 15-16.  If, however, the user scrolls past the

13   edge of the list but more than this threshold amount, then the display area will not auto-correct, and

14   the viewer will still be viewing at least a portion of the white area beyond the edge of the list.

15   Reply at 15.  According to Dr. Van dam, this sequence of events meets every limitation of the

16   asserted claims of the '381 patent.  Opp'n at 21.

17         Both references present the same issue: whether an auto-correct function that allows for a

18   snap back feature on some, but not all user inputs, anticipates the '381 patent.  Although the parties

19   seem to present the dispute as turning on the construction of the term "electronic document," (and

20   by implication "edge of a document") the Court finds that even adopting Samsung's construction

21   for the term "electronic document" (and by implication "edge of a document") as "something that

22   can be visually representable on a screen and that has a defined set of boundaries, such as (but not

23   limited to) length and width," Van dam Decl. ¶ 47; Balakrishnan Dep. at 27:13-28:18, Samsung

24   has still not established that the Lira patent is anticipatory.  This is because the snap-back function

25   that is required by the '381 patent is not always performed in the Lira and LaunchTile references.

---

[34] Dr. Van dam also examined another aspect of the world view, wherein a user can pan between different eight-tile Zones.  Opp'n at 22.  Dr. Van dam's analysis mirrors his analysis of the four-tile Zones.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

In the Lira reference, when a user scrolls past the edge of a column, one of two things will happen upon release of the stylus or finger: (1) if the user has scrolled less than the threshold amount past the edge, the screen will snap back to the original column, but (2) if the user has scrolled past this threshold amount, the screen will either stay put or snap to the next column, depending on the settings used. WO'458 p. 15:18-23. As described above, LaunchTile contains similar features. In contrast, the '381 patent contains no second behavior when a user scrolls past a certain threshold; the screen will always snap back. '381 col. 35:52-58.

It is axiomatic that "an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995). Arguably, because Lira and LaunchTile and the '381 patent snap back in response to a user scroll past the edge of an electronic document less than the threshold amount, the Lira and LaunchTile references sometimes practice '381's patented method.

In *Bell Communications* and its progeny, the allegedly infringing device practices multiple methods, and one of those methods reads on the patented method. *See id.* (rejecting the lower court's finding that a product escaped infringement because it sometimes practiced an additional step – a midcourse correction – which was incongruous with the claim's language); *Hewlett-Packard*, 340 F.3d at 1326 (Fed. Cir. 2003) (holding that a prior art scanner still embodies a limitation of a method patent even if changing a setting causes the scanner to fail to perform the limitation); *Sun Microsystems, Inc. v. Network Appliance, Inc.*, 710 F. Supp. 2d 925, 934 (N.D. Cal. 2008) (noting, in dicta, that a system which practices a claimed method most of the time still infringes); *Faroudja Labs., Inc. v. Dwin Elecs., Inc.*, 83 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000) (holding that a device to remove film artifacts and improve picture quality, which reads on a patent when operating on one type of film but not when operating on another type of film, still infringes the patent). Under the reasoning in *Bell Communications*, a theoretical snap-back program could not escape infringement just because the user had the option to turn the snap-back behavior off, or because the snap-back behavior was only implemented on certain edges.

Conversely, the Federal Circuit has recognized that when a method patent requires some action to always occur, then a method which only sometimes performs this action cannot read on

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   the patent despite *Bell Communications*. *See Ferguson Beauregard/Logic Controls, Div. of Dover*

2   *Res., Inc. v. Mega Systems, LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003); *WebZero, LLC v. ClicVU,*

3   *Inc.*, No. CV-08-0504-MRP PLAX, 2009 WL 8173102, at *4-5 (C.D. Cal. May 1, 2009) *aff'd*, 392

4   F. App'x 863 (Fed. Cir. 2010) (noting that "while it is true that an accused product that sometimes,

5   but not always, embodies a claimed method nonetheless infringes, the accused infringing product

6   must be capable of accomplishing the entire method of the claim") (internal quotation marks

7   omitted); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 243 F. Supp. 2d 31, 41-42 (S.D.N.Y.

8   2003), *aff'd on other grounds*, 363 F.3d 1263 (Fed. Cir. 2004). For example, in *Ferguson*, the

9   court considered a method patent that operated in cycles. 350 F.3d at 1335-36. Because the claim

10  language required an adjustment to the time period before the next cycle began (the "off-time"),

11  and taught further adjustment of either the off-time or exhaust-time in "each successive cycle," the

12  court concluded that the patent *required* an off-time adjustment in every cycle. The allegedly

13  infringing device did, "on occasion," adjust the off-time, but because the patent required adjusting

14  the off-time in every cycle, the device did not infringe. *Id.* at 1346. Thus, this Court must look to

15  the '381 patent to determine if *Bell Communications* or *Ferguson* apply.

16      The '381 patent is a method to respond to a certain type of user inputs: scrolling in a first

17  direction past the edge of an electronic document. As written, Claim 1 of the '381 patent is

18  fatalistic: if a user scrolls past the edge of an electronic document in the first direction, the screen

19  must snap back to that document when the user lifts her finger. '381 col. 35:52-58; *cf. Dippin'*

20  *Dots, Inc. v. Mosey*, 476 F.3d 1337, 1342-43 (Fed. Cir. 2007) (approving the district court's

21  construction where a patent describing a method for producing beads of ice-cream did not cover a

22  method which produced both beads and popcorn shapes). Because the claimed method explicitly

23  defines the inputs which will trigger the snap-back response, the method incorporates the response

24  to all such inputs as a limitation of the claim. As such, the Lira reference does not read onto the

25  '381 patent, and thus does not anticipate the '381 patent's independent claim. Because Samsung's

26  arguments as to the obviousness of the dependent claims hinge on the anticipation of the

27  independent claim, the dependent claims are also not anticipated. Similarly, even though the

28  LaunchTile and '381 methods respond identically to some subset of inputs, the LaunchTile world

60

1   view and e-mail application methods cannot read onto the '381 method, and thus cannot anticipate.

2   Therefore, Samsung has not raised a "substantial question of invalidity" concerning the '381

3   patent. *See Titan Tire*, 566 F.3d at 1377.

4           **4.  Inequitable Conduct**

5           To invalidate a patent based on non-disclosure of information to the United States Patent

6   and Trademark Office ("PTO"), a defendant must show, by clear and convincing evidence, that the

7   patentee failed to disclose a material reference and had a specific intent to deceive the PTO.

8   *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011).  The Federal Circuit

9   recently tightened the standards for an inequitable conduct claim "in order to redirect a doctrine

10  that has been overused to the detriment of the public." *Id.* at 1290.  The materiality of an omission

11  is no longer sufficient to show an intent to deceive. *Id.* at 1291.  At trial, to show that the patentee

12  had a specific intent to deceive the PTO, Samsung must prove that "the applicant knew of the

13  reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* at 1290.

14  While a district court may infer intent from indirect and circumstantial evidence, the "specific

15  intent to deceive must be the single most reasonable inference able to be drawn from the evidence."

16  *Id.* (internal quotations omitted).  Even if the applicant was grossly negligent, this is not sufficient

17  to infer intent. *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed.

18  Cir. 1988).  In light of this standard, Samsung has failed to make a sufficient showing to raise a

19  substantial question that the applicant made a deliberate decision to withhold a material reference

20  from the PTO.

21          Samsung claims that Apple improperly withheld a material reference from the PTO during

22  the examination of the '381 patent.  Opp'n at 25.  The '381 patent underwent an accelerated

23  examination, which obliged Apple to search for and identify the most relevant prior art.  U.S.

24  Patent & Trademark Office, U.S. Dep't of Commerce, Manual of Patent Litigation and Procedure §

25  708.02.VIII.[35]  Samsung claims that Apple knew of, but did not disclose, the Van den Hoven

26  reference, which disclosed a method that: "in response to reaching the end of a sequence of images,

27

28  _____

[35] Available at: http://www.uspto.gov/web/offices/pac/mpep/documents/0700_708_02.htm.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

an area beyond the edge of the sequence could be displayed and the direction could be reversed, resulting in a bounce." Opp'n at 25-26.

Samsung's expert concluded from his examination of the file history that "the inventor Ording and at least one prosecuting attorney on the '969 application [which led to the '381 patent], Mr. Beyers, likely knew of the Van den Hoven reference." Godici Decl. ¶ 73. Samsung argues that Apple "was fully aware" of the impact of the disclosure of the Van den Hoven reference and that Mr. Ording and Mr. Beyers "would have known" of the materiality of the Van den Hoven reference because it was cited in another patent application on which both Mr. Ording and Mr. Beyers had worked, and resulted in the rejection of the other patent. Because Mr. Beyers and Mr. Ording were presumably aware of the Van den Hoven reference, according to Samsung, they "would have known" the reference was on a related subject matter. Godici Decl. ¶ 76. Despite the use of the word "would," this chain of supposition — rooted in Godici's opinion — is exactly the "should have known" standard rejected by *Therasense*. 649 F.3d at 1290 ("Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.").

Nor is this analysis changed by the fact that Apple sought an accelerated examination for the '381 patent. If Apple had an additional duty to disclose relevant material prior art, perhaps they should have known of the Van der Hoven reference's materiality, but it provides no evidence that they had such knowledge. On the record before the Court, Samsung has failed to carry its burden that it will likely be able to prove specific intent to deceive the PTO at trial.[36] In sum, Samsung has failed to establish a substantial question regarding the validity of the '381 patent.[37]

---

[36] Because the Court finds that Samsung has not offered sufficient evidence to establish intent, it need not reach Apple's argument that the reference is also not material.

[37] In a footnote, Samsung argues that the '381 patent should be invalidated for the patentee's failure to disclose the best mode as required by 35 U.S.C. § 112. "The best mode requirement creates a statutory bargained-for-exchange by which a patentee obtains the right to exclude others from practicing the claimed invention for a certain time period, and the public receives knowledge of the preferred embodiments for practicing the claimed invention." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001). At this stage in the proceedings, Samsung has failed to proffer evidence that the inventor, Ording, subjectively believed that the method at issue was "superior to all other modes" disclosed in the specification as is required under the doctrine. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1330 (Fed. Cir. 2002).

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

1    Accordingly, Apple is likely to succeed on the merits at trial on its claims that the four accused

2    Samsung devices infringe the '381 patent.

3    **B. Irreparable Harm**

4    Apple must also establish that it is likely to suffer irreparable harm in the absence of a

5    preliminary injunction. *See Abbott Labs.*, 452 F.3d at 1348. Even though Apple has shown

6    Samsung's products likely infringe Apple's valid '381 patent, and that Apple and Samsung

7    compete in the same market for new smartphone customers and for tablet computer consumers,

8    Apple has offered no evidence that Samsung's infringement of the '381 patent is likely to cause

9    irreparable harm. The only evidence of irreparable harm in the record relates to physical

10   appearance and brand appeal as the driver of consumer demand in the iPhone and iPad markets.[38]

11   Indeed, Apple has failed to establish a relationship between any alleged loss of market share,

12   customers, or goodwill, and the infringement of the '381 patent. *See Quad/Tech*, 701 F. Supp. 2d

13   at 657; *see also Perfect 10*, 653 F.3d at 981-82 (*citing eBay* in explaining that there must be a

14   causal connection between the violation and the harm alleged in order to establish irreparable

15   harm).

16   Justice Kennedy, in his concurring opinion in *eBay*, instructed courts to be cognizant of the

17   nature of the patent being enforced and the economic function of the patent holder when applying

18   the equitable factors:

19       When the patented invention is but a small component of the product the companies seek to
20       produce and the threat of an injunction is employed simply for undue leverage in
         negotiations, legal damages may well be sufficient to compensate for the infringement and
21       an injunction may not serve the public interest.

22   *eBay*, 547 U.S. at 396-397. The Court finds this argument persuasive. While Apple undoubtedly

23   uses the patent and produces goods in the same market, Apple has neither alleged, nor established,

24   that the '381 patent is either necessary to, or a core functionality of, the products that it seeks to

25   enjoin. Nor has Apple shown that consumers' purchasing decisions are based on the existence of a

26   snap back feature protected by the '381 patent. *Compare Commonwealth Sci. & Indus. Research*

27   ---

[38] The evidence filed by Apple after briefing had closed but prior to the hearing on the preliminary
28   injunction does not change this Court's finding. Apple still has not established that it is likely to
     suffer irreparable harm absent an injunction based on the infringement of this patent.

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   *Org. v. Buffalo Techs. Inc.*, 492 F. Supp. 2d 600, 606 (E.D. Tex. 2007) (concluding that the patent

2   at issue is a "core technology" of the infringing products and thus monetary damages are less likely

3   to compensate for the infringement of the patent-in-suit), *with z4 Techs., Inc. v. Microsoft Corp.*,

4   434 F. Supp. 2d 437, 440-41 (E.D. Tex. 2006) (finding no irreparable harm because "Microsoft

5   only uses the infringing technology as a small component of its own software, and it is not likely

6   that any consumer of Microsoft's Windows or Office software purchases these products for their

7   product activation functionality"). Accordingly, the fact that the '381 patent is but one patent

8   utilized in the accused products, and does not appear to be either necessary for the product to

9   function, or a core technology of the product, weighs against a finding of irreparable harm.

10        An additional argument weighs in Samsung's favor and supports the finding that Apple has

11   not shown that it would likely be irreparably harmed absent a preliminary injunction.

12

13

14   [39]   Jenkins Ex. M at 65, 66, 248. While not dispositive, this fact does weigh in Samsung's

15   favor. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) ("While the fact

16   that a patentee has previously chosen to license the patent may indicate that a reasonable royalty

17   does compensate for an infringement, that is but one factor for the district court to consider.").

18

19

20                                                              Ultimately, the Court finds

21   that Apple has failed to meet its burden to establish that money damages will not be sufficient to

22   compensate Apple for the Samsung products that likely infringe the '381 patent.

23        **C.  Summary**

24   [39]   Apple objects to this evidence on the basis of Federal Rule of Evidence 408. Rule 408 prohibits
     the use of offers to compromise "when offered to prove liability for, invalidity of, or amount of a
25   claim that was disputed as to validity or amount, or to impeach through a prior inconsistent
     statement or contradiction." Samsung, however, does not offer this testimony to establish liability,
26   validity or amount of a claim.
27                                                        *See* Opp'n 38. In this case, this evidence goes to
     establish whether there would be irreparable harm to Apple, not the validity of the claim or amount
28   of the harm. The objection is therefore OVERRULED.

                                                        64

As explained above, the Court must "weigh and measure each of the four factors against the other factors and against the magnitude of the relief requested." *Chrysler Motors Corp.*, 908 F.2d at 953. "If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial." *Id.* Apple has established that it is likely to succeed in establishing infringement, and it is likely to withstand a challenge to the validity of the '381 patent, and therefore Apple has made a strong showing of likelihood of success on the merits. Nonetheless, Apple has failed to establish that it is likely to be irreparably harmed in the absence of a preliminary injunction, and that monetary damages would not sufficiently compensate it for the infringement of the '381 patent.

As to the third factor, the balance of hardships weighs in favor of Apple. Apple's interest in enforcing its patent rights is strong particularly because it has so far presented a strong case on the merits. Similarly, because the public has an interest in the protection of patent rights, the public interest factor, also weighs in favor of Apple.

After weighing all the factors, and despite the strong showing on the merits of its infringement claim, the Court DENIES Apple's motion for a preliminary injunction prohibiting sale of the Samsung products that likely infringe Apple's '381 patent because Apple has failed to meet its burden of showing likelihood of irreparable harm in the absence of an injunction. *See Jack Guttman, Inc.*, 302 F.3d at 1356.

## CONCLUSION

For the forgoing reasons, the Court DENIES Apple's motion to preliminarily enjoin the sale in the United States of the Samsung Infuse 4G, the Samsung Galaxy S 4G, the Samsung Tab 10.1, and the Droid Charge phone.

**IT IS SO ORDERED.**

Dated: December 2, 2011

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION