# EXHIBIT M

Confidential Attorneys' Eyes Only
Outside Counsel

Page 1

```
1            UNITED STATES DISTRICT COURT
2           NORTHERN DISTRICT OF CALIFORNIA
                 SAN JOSE DIVISION
3
4   APPLE INC., a California      Case No.
    corporation,
5                                 11-cv-01846-LHK
            Plaintiff,
6
    v.
7
    SAMSUNG ELECTRONICS CO.,
8   LTD., a Korean business
    entity; SAMSUNG ELECTRONICS
9   AMERICA, INC., a New York
    corporation; SAMSUNG
10  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited
11  liability company,
12          Defendants.
13           C O N F I D E N T I A L
14      A T T O R N E Y S'   E Y E S   O N L Y
15          O U T S I D E   C O U N S E L
16            VIDEOTAPED DEPOSITION
17          BENJAMIN B. BEDERSON, Ph.D.
18               Washington, D.C.
19         Saturday, September 17, 2011
20                   9:30 a.m.
21
22  Job No. 41965
23
24  Reporter: Linda S. Kinkade, RDR, CRR, RMR, CSR
25  Videographer: Conway Barker
```

Confidential Attorneys' Eyes Only
Outside Counsel

Page 2

        The following is the videotaped deposition of BENJAMIN B. BEDERSON, Ph.D. held at the offices of:

        Morrison & Foerster
        2000 Pennsylvania Avenue, N.W.
        Washington, DC 20005

        Taken pursuant to applicable Rules of Civil Procedure, before Linda S. Kinkade, Registered Diplomate Reporter, Certified Realtime Reporter, Registered Professional Reporter, Registered Merit Reporter, Certified Shorthand Reporter (CA), and Notary Public, in and for the District of Columbia.

Confidential Attorneys' Eyes Only
Outside Counsel

Page 8

1    VIDEOGRAPHER: The court reporter is
2    Linda Kinkade. The video camera operator is
3    Conway Barker, both in association with TSG.
4         Would you please swear in the witness and
5    we can begin.
6
7              BENJAMIN BEDERSON, Ph.D.
8         Being first duly sworn, testified as
9    follows:
10                    EXAMINATION
11   BY MR. JACOBS:
12        Q.  Good morning, Dr. Bederson.
13        A.  Good morning.
14        Q.  Have you had your deposition taken
15   before?
16        A.  Yes, I have.
17        Q.  In what context?
18        A.  A few different contexts.
19        Q.  So you've had your deposition taken
20   several times?
21        A.  Yes.
22        Q.  In any other patent cases?
23        A.  Yes.
24        Q.  What do you recall? Which cases?
25        A.  I was a fact witness for one case that

Confidential Attorneys' Eyes Only
Outside Counsel

Page 159

1    it to an individual?
2         Q.   Exactly.
3         A.   No, I cannot think of a specific one.
4         Q.   On paragraph 20 -- sorry -- on
5    paragraph 25 you -- the declaration says that
6    your team presented our work, which included
7    LaunchTile and its user interface features
8    including the snap and panning features
9    discussed above.  Do you see that?
10        A.   Yes, I do.
11        Q.   And what do you recall specifically of
12   demonstrations or discussions of the snap and
13   panning features discussed above in your
14   declaration?
15        A.   I think I -- I got confused in your
16   question, if you don't mind repeating it.
17        (Record read.)
18        THE WITNESS:  So I recall in the
19   presentation we showed the video, and the video
20   included the panning features and at least some
21   of the snap features, and I recall generally
22   demonstrating the software -- I recall both me
23   and Amy generally demonstrating the software --
24   at least me and Amy.  There may have been others
25   as well.  Aaron Clamage probably was there as

Page 160

1  well demonstrating it.  So that's what I recall.
2  BY MR. JACOBS:
3      Q.  Were you demonstrating the software in
4  a live basis in conformance with what was
5  demonstrated on the video?  Were you trying to
6  map what was on the video to your live
7  demonstration?
8          MR. HUANG:  Objection to the form.
9          THE WITNESS:  No.  The video was a
10 short, you know, narrow summary, and when we
11 gave live demos it was much more casual.  We
12 would typically hand the device over to whoever
13 we were showing it to, let them do whatever they
14 want, ask us any questions.  They had already
15 seen the video, so they typically would want to
16 go beyond that.
17 BY MR. JACOBS:
18     Q.  Do you recall anything specifically
19 being demonstrated in May 2005 that wasn't in
20 the video?
21     A.  I don't recall the specific details of
22 what was or was not shown to any specific
23 individual.
24     Q.  Let me show you an email that you
25 produced to us.