Exhibit P

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/677,958 | 02/22/2007 | Wayne Westerman | 10684-25086.04 | 1844 |

69753          7590          02/02/2010
APPLE C/O MORRISON AND FOERSTER ,LLP
LOS ANGELES
555 WEST FIFTH STREET SUITE 3500
LOS ANGELES, CA 90013-1024

| EXAMINER |
|---|
| SHARIFI-TAFRESHI, KOOSHA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2629 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/02/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

APLNDC00021674

| **Interview Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 11/677,958 | WESTERMAN ET AL. |
| | **Examiner** | **Art Unit** |
| | Koosha Sharifi | 2629 |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Amare Mengistu_.                               (3)_Gregory Weaver_.

(2) _Koosha Sharifi_.                               (4)_____.

Date of Interview: _27 January 2010_.

Type:   a)☐ Telephonic   b)☐ Video Conference
        c)☒ Personal [copy given to:  1)☐ applicant    2)☒ applicant's representative]

Exhibit shown or demonstration conducted:   d)☒ Yes    e)☐ No.
    If Yes, brief description: _keyboard_.

Claim(s) discussed: _1_.

Identification of prior art discussed: _Bisset et al._.

Agreement with respect to the claims f)☐ was reached.   g)☐ was not reached.   h)☒ N/A.


Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _The proposed amendment "mathematical fitting an ellipse" would overcome the art of record._.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

/K. S./
Examiner, Art Unit 2629

APLNDC00021675

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

### 37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

_____

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

APLNDC00021676

Application No.: 11/677,958                    2                    Docket No.: 106842508604

## AMENDMENTS TO THE CLAIMS

1. (currently amended)  A method of processing input from a touch-sensitive surface, the method comprising:

receiving at least one proximity image representing a scan of a plurality of electrodes of the touch-sensitive surface;

segmenting each proximity image into one or more pixel groups that indicate significant proximity, each pixel group representing proximity of a distinguishable hand part or other touch object on or near the touch-sensitive surface; and

mathematically fitting an ellipse to at least one of the pixel groups.

2. (original)  The method of claim 1 further comprising transmitting one or more ellipse parameters as a control signal to an electronic or electromechanical device.

3. (original)  The method of claim 2 wherein the one or more ellipse parameters is selected from the group consisting of position, shape, size, orientation, eccentricity, major radius, minor radius, and any combination thereof.

4. (original)  The method of claim 3 wherein the one or more ellipse parameters are used to distinguish a pixel group associated with a fingertip from a pixel group associated with a thumb.

5. (original)  The method of claim 1 wherein fitting an ellipse to a group of pixels comprises computing one or more eigenvalues and one or more eigenvectors of a covariance matrix associated with the pixel group.

6. (original)  The method of claim 1 further comprising: tracking a path of at least one of the one or more pixel groups through a time-sequenced series of proximity images;

fitting an ellipse to the at least one of the one or more pixel groups in each of the time-sequenced series of proximity images; and

la-1060965

APLNDC00021677

Application No.: 11/677,958                    3                    Docket No.: 106842508604

tracking a change in one or more ellipse parameters through the time-sequenced series of proximity images.

7. (original)  The method of claim 6 further comprising transmitting the change in the one or more ellipse parameters as a control signal to an electronic or electromechanical device.

8. (original)  The method of claim 7 wherein the change in the one or more ellipse parameters is selected from the group consisting of position, shape, size, orientation, eccentricity, major radius, minor radius, and any combination thereof.

9. (original)  The method of claim 6 wherein fitting an ellipse to the one pixel group comprises computing one or more eigenvalues and one or more eigenvectors of a covariance matrix associated with the pixel group.

10. (currently amended)  A touch-sensing device comprising:
a substrate;
a plurality of touch-sensing electrodes arranged on the substrate;
electronic scanning hardware adapted to read the plurality of touch-sensing electrodes;
a calibration module operatively coupled to the electronic scanning hardware and adapted to construct a proximity image having a plurality of pixels corresponding to the touch-sensing electrodes; and
a contact tracking and identification module adapted to:
segment the proximity image into one or more pixel groups, each pixel group representing proximity of a distinguishable hand part or other touch object on or near the touch-sensitive surface; and
mathematically fit an ellipse to at least one of the one or more pixel groups.

11. (original)  The touch-sensing device of claim 10 further comprising a host communication interface adapted to transmit one or more ellipse parameters as a control signal to an

la-1060965

APLNDC00021678

Application No.: 11/677,958                4                Docket No.: 106842508604

electronic or electromechanical device.

12. (original) The touch-sensing device of claim 11 wherein the touch-sensing device is integral with the electronic or electromechanical device.

13. (original) The touch-sensing device of claim 11 wherein the one or more ellipse parameters comprise one or more parameters selected from the group consisting of position, shape, size, orientation, eccentricity, major radius, minor radius, and any combination thereof.

14. (original) The method of claim 13 wherein the one or more ellipse parameters are used to distinguish a pixel group associated with a fingertip from a pixel group associated with a thumb.

15. (original) The touch-sensing device of claim 10 wherein the contact tracking and identification module is adapted to compute one or more eigenvalues and one or more eigenvectors to fit the ellipse.

16. (original) The touch-sensing device of claim 10 wherein the contact tracking and identification module is further adapted to:
    track a path of one or more pixel groups through a plurality of time-sequenced proximity images;
    fit an ellipse to at least one of the one or more pixel groups in a first proximity image of the plurality of time-sequenced proximity images; and
    track a change in one or more ellipse parameters associated with the fitted ellipse through two or more of the time-sequenced proximity images.

17. (original) The touch-sensing device of claim 16 further comprising a host communication interface adapted to transmit the change in at least one of the one or more ellipse parameters as a control signal to an electronic or electromechanical device.

la-1060965

APLNDC00021679

Application No.: 11/677,958                          5                          Docket No.: 106842508604

18.  (original)  The touch-sensing device of claim 17 wherein the touch-sensing device is integral with the electronic or electromechanical device.

19.  (original)  The touch-sensing device of claim 17 wherein the change in one or more ellipse parameters used as a control input to an electronic or electromechanical device comprises one or more parameters selected from the group consisting of position, shape, size, orientation, eccentricity, major radius, minor radius, and any combination thereof.

20.  (original)  The touch-sensing device of claim 16 wherein the contact tracking and identification module is adapted to compute one or more eigenvalues and one or more eigenvectors to fit the ellipse.

21.  (original)  The touch-sensing device of any one of claims 10-12 and 16-18 wherein the touch-sensing device is fabricated on or integrated with a display device.

22.  (original)  The touch-sensing device of claim 21, wherein the display device comprises a liquid crystal display (LCD) or a light-emitting polymer display (LPD).

23.  (original)  A computer-readable medium having embodied thereon instructions executable by a machine to perform a method according to any of claims 1-9.

24.  (original)   A touch-sensing device comprising:

means for producing a proximity image representing a scan of a plurality of electrodes of a touch-sensitive surface, the proximity image having a plurality of pixels corresponding to the touch-sensing electrodes; and

means for segmenting the proximity image into one or more pixel groups, each pixel group representing a touch object on or near the touch-sensitive surface; and

means for fitting an ellipse to at least one of the pixel groups.

la-1060965

APLNDC00021680

Application No.: 11/677,958                    6                    Docket No.: 106842508604

25. (original)  The touch-sensing device of claim 24 wherein the touch object comprises at least a portion of a hand.

26. (original)  The touch-sensing device of claim 24 wherein the touch object comprises at least a portion of one or more fingers.

27. (original)  The touch-sensing device of claim 24 wherein the touch object comprises at least a portion of a body part.

28. (original)  The touch-sensing device of claim 27 wherein the body part comprises one or more of a hand, a finger, an ear, or a cheek.

29. (original)  The touch-sensing device of claim 24 further comprising means for transmitting one or more ellipse parameters as a control signal to an electronic or electromechanical device.

30. (original)  The touch-sensing device of claim 27 wherein the touch-sensing device is integral with the electronic or electromechanical device.

31. (original)  The touch-sensing device of claim 24 further comprising:
means for tracking a path of one or more pixel groups through a plurality of time-sequenced proximity images;
means for fitting an ellipse to at least one of the pixel groups in a plurality successive proximity images; and
means for tracking a change in one or more ellipse parameters through a plurality of time-sequenced proximity images.

32. (original)  The touch-sensing device of claim 29 further comprising means for transmitting the change in the one or more ellipse parameters as a control signal to an electronic or

la-1060965

APLNDC00021681

Application No.: 11/677,958                     7                     Docket No.: 106842508604

electromechanical device.

33. (original)  The touch-sensing device of claim 32 wherein the touch-sensing device is integral with the electronic or electromechanical device.

34. (original)  The touch-sensing device of any one of claims 24 and 29-33 wherein the touch-sensing device is fabricated on or integrated with a display device.

35. (original)  The touch-sensing device of claim 34, wherein the display device comprises a liquid crystal display (LCD) or a light-emitting polymer display (LPD).

la-1060965

APLNDC00021682

CERTIFICATE OF TRANSMISSION UNDER 37 CFR § 1.8

I hereby certify that this document is being electronically transmitted via the
United States Patent and Trademark Office EFS-Web on February 24, 2010..

Signature: _____
(Lisa D. Bronk)

VIA EFS
Docket No.: 106842508604
Client Ref. No.: P3950USC13
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Wayne WESTERMAN et al.

Application No.: 11/677,958

Confirmation No.: 1844

Filed: February 22, 2007

Art Unit: 2629

For:  ELLIPSE FITTING FOR MULTI-TOUCH
      SURFACES

Examiner: Koosha Sharifi-Tafreshi

## STATEMENT OF SUBSTANCE OF INTERIVEW,
## REQUEST FOR CORRECTED OFFICE ACTION,
## AND
## AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

This is in response to the non-final Office Action dated December 24, 2009, for which a
response is due on March 24, 2010.  Reconsideration and allowance of the pending claims, as
amended, in light of the remarks presented herein are respectfully requested.

**Amendments to the claims** are reflected in the list beginning on page 2 of this paper.

**A Request for Corrected Office Action** begins on page 8 of this paper

**Remarks/Arguments** begin on page 10 of this paper.

la-1060965

APLNDC00021683

VIA EFS WEB
Patent
Docket No. 106842508604
Client Reference No. P3950USC13

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Wayne WESTERMAN et al.

Serial No.: 11/677,958

Filing Date: February 22, 2007

For:   ELLIPSE FITTING FOR MULTI-TOUCH
       SURFACES

Examiner: Koosha Sharifi-Tafreshi

Group Art Unit: 2629

Confirmation No.: 1844

## SUPPLEMENTAL INFORMATION DISCLOSURE
## STATEMENT UNDER 37 C.F.R. § 1.97 & § 1.98

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

Pursuant to 37 C.F.R. § 1.97 and § 1.98, Applicants submit for consideration in the above-identified application the documents listed on the attached Form PTO/SB/08a/b.  Copies of foreign documents and non-patent literature are submitted herewith.  The Examiner is requested to make these documents of record.

Applicants would like to draw the Examiner's attention to the fact that document no. 19 (EP-0 546 704) listed on the attached Form PTO/SB/08a/b is the English language counterpart of document no. 20 (JP-06-083523).

la-1061139

APLNDC00021684

Application No. 11/677,958

VIA EFS WEB<br>
Patent<br>
Docket No. 106842508604<br>
Client Reference No. P3950USC13

This Supplemental Information Disclosure Statement is submitted:

☐    With the application; accordingly, no fee or separate requirements are required.

☐    Before the mailing of a first Office Action after the filing of a Request for Continued Examination under § 1.114. However, if applicable, a certification under 37 C.F.R. § 1.97 (e)(1) has been provided.

☐    Within three months of the application filing date or before mailing of a first Office Action on the merits; accordingly, no fee or separate requirements are required. However, if applicable, a certification under 37 C.F.R. § 1.97 (e)(1) has been provided.

☒    After receipt of a first Office Action on the merits but before mailing of a final Office Action or Notice of Allowance.

        ☒    A fee is required. ~~Accordingly, a Fee Transmittal form (PTO/SB/17) is attached to this submission in duplicate.~~

        ☐    A Certification under 37 C.F.R. § 1.97(e) is provided above; accordingly; no fee is believed to be due.

☐    After mailing of a final Office Action or Notice of Allowance, but before payment of the issue fee.

        ☐    A Certification under 37 C.F.R. § 1.97(e) is provided above and a Fee Transmittal form (PTO/SB/17) is attached to this submission in duplicate.

Applicants would appreciate the Examiner initialing and returning the Form PTO/SB/08a/b, indicating that the information has been considered and made of record herein.

The information contained in this Supplemental Information Disclosure Statement under 37 C.F.R. § 1.97 and § 1.98 is not to be construed as a representation that: (i) a complete search has been made; (ii) additional information material to the examination of this application does not exist; (iii) the information, protocols, results and the like reported by third parties are accurate or enabling; or (iv) the above information constitutes prior art to the subject invention.

la-1061139

2

APLNDC00021685

Application No. 11/677,958

VIA EFS WEB
Patent
Docket No. 106842508604
Client Reference No. P3950USC13

In the unlikely event that the transmittal form is separated from this document and the Patent and Trademark Office determines that an extension and/or other relief (such as payment of a fee under 37 C.F.R. § 1.17 (p)) is required, Applicants petition for any required relief including extensions of time and authorize the Commissioner to charge the cost of such petition and/or other fees due in connection with the filing of this document to **Deposit Account No. 03-1952** referencing 106842508604.

Dated:   February 24, 2010

Respectfully submitted,

By: /Gregory S. Weaver, #53,751/
Gregory Weaver
   Registration No.:  53,751
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California  90013-1024
(213) 892-5399

APLNDC00021686

Application No.: 11/677,958                      8                      Docket No.: 106842508604

## <u>REQUEST FOR CORRECTED OFFICE ACTION</u>

The Office Action appears to contain an error that affects Applicants ability to reply, and therefore, Applicants respectfully request a corrected Office Action with a reset period for reply under MPEP § 710.06.

The Office Action indicates that Applicants have **"failed to further elect species from ... Species 1-4, and ... Species X, Y and Z and is required to [sic, do] this in response to this action."** (Office Action, page 2 (emphasis in the Office Action).) However, the Office Action also indicates that the restriction requirement is **"still deemed proper and is therefore made FINAL."** (Office Action, page 5 (emphasis in the Office Action).) According to 37 CFR § 1.143, because the Examiner made the requirement final, the Examiner has accepted Applicants' provisional election of claims as the invention elected:

> "In requesting reconsideration [of a restriction requirement] the applicant must indicate a provisional election of one invention for prosecution, which invention <u>shall be the one elected in the event the requirement becomes final</u>. The requirement for restriction will be reconsidered on such a request. If the requirement is repeated and made final, the examiner <u>will at the same time act on the claims to the invention elected</u>." (37 CFR § 1.143 (emphasis added).)

In other words, Rule 1.143 mandates that if the Examiner makes the requirement final, the Examiner *must* at the same time act on the provisionally elected claims as *the claims to the invention elected*. In line with the Rule, the Office Action does include a substantive examination of the claims provisionally elected by Applicants.[1] However, the Office Action's requirement that Applicants elect further species contradicts the Rule and results in an ambiguity that affects Applicants' ability to reply to the Office Action.

---

[1] The restriction requirement in the Office Action dated October 27, 2009 indicates "The species are independent or distinct because <u>claims</u> to the different species <u>recite the mutually exclusive characteristics of such species</u>" and "Currently, no claim is generic." (page 3 (emphasis added).) Therefore, the restriction requirement alleges that there are patentably distinct species claims. The acceptance of Applicants' provisional election of all claims (without amendment) and substantive examination of all claims is tantamount to an admission that the basis for requiring restriction is incorrect.

la-1060965

APLNDC00021687

If the Examiner intends to maintain the restriction requirement, Applicants request a corrected Office Action correcting this contradiction, so that the record is clear whether or not there is a requirement that Applicants elect further species. Under MPEP § 710.06, the corrected Office Action is a non-final action with a reset period for reply.

Alternatively, Applicants note that regardless of the propriety of the restriction requirement when first asserted, there currently appears to be no rationale for maintaining the restriction requirement because all of the claims have been searched on the merits and, consequently, no search burden exists. Furthermore, although the Office Action asserts "searching for the mutually exclusive characteristics/features would be a search burden for the examiner because different searches with different keywords would be required for each of the mutually [sic, exclusive] characteristics/features as identified above" (Office Action, page 5 (emphasis added)), the Examiner's December 14, 2009 Search History (available on PAIR) does not appear to contain any search keywords that would distinguish between the alleged "mutually exclusive characteristic" of provisionally elected species A and any alleged mutually exclusive characteristic of another species of the restriction requirement. In other words, the search actually performed by the Examiner does not appear to take into account any of the alleged "mutually exclusive characteristics" of the species, listed on pages 2-4 of the Office Action, on which the restriction requirement is based. Thus, there is currently no search burden because all of the claims have already been searched, and because none of the alleged mutually exclusive characteristics were actually considered in the search anyway.

Because the restriction requirement is moot, Applicants respectfully request that the Examiner withdraw the restriction requirement. In the case that the restriction requirement is withdrawn, Applicants withdraw the request for a corrected Office Action and request that the Examiner continue examination of the application on the merits by entering this paper as a response to the Office Action. Therefore, if the Examiner withdraws the restriction requirement in lieu of issuing a corrected Office Action, Applicants respectfully request the Examiner enter the foregoing amendments and consider the Applicants' following remarks in response to the Office Action.

la-1060965

Application No.: 11/677,958                    10                    Docket No.: 106842508604

## REMARKS

Claims 1-35 are pending in the application.  Further examination and reconsideration are respectfully requested.

Applicants would like to thank the Examiner for the indication of allowable subject matter in dependent claims 5, 9, 15, and 20.  Applicants have chosen not to amend these claims into independent form because the base claims are believed to be allowable.

Applicants would like to thank the Examiner for the courtesies and thoughtful treatment afforded to Applicants' undersigned representative during the January 26, 2010 interview.  The foregoing amendments and following remarks reflect the substance of the interview.

Claims 1-3, 6-8, 23-29, 31, and 32 were rejected under 35 U.S.C. § 102(e) over U.S. Patent No. 5,825,352 (Bisset).  The rejections are respectfully traversed.  Reconsideration and withdrawal of the rejections are respectfully requested.

THE OFFICE ACTION'S INTERPRETATION OF "FITTING AN ELLIPSE TO AT LEAST ONE OF THE PIXEL GROUPS" IS UNREASONABLE IN LIGHT OF THE PLAIN MEANING OF "FITTING AN ELLIPSE TO" AND, IN PARTICULAR, DISREGARDS THE REQUIREMENT TO INTERPRET CLAIMS IN LIGHT OF THE SPECIFICATION

During the interview, the Examiner's interpretation of the feature of "fitting an ellipse to at least one of the pixel groups" (claim 1) was discussed.  Applicants' representative disagreed with the Office Action's assertion that Bisset's "finger profile" (shown, e.g., in FIG. 7B of Bisset), which is simply a series of capacitance values measured when a finger contacts a touchpad, discloses the feature of "fitting an ellipse to ...".  Specifically, paraphrasing the Office Action's interpretation, merely *obtaining* measured data is the same as *fitting an ellipse to* the data, so long as the measured data happens to be measured from an object that "is in general ellipse-like".  (Office Action, page 7.)  Applicants representative asserted that, under the plain meaning of the language of the claims,

la-1060965

APLNDC00021689

Application No.: 11/677,958                    11                    Docket No.: 106842508604

without more, one skilled in the art would not interpret "fitting an ellipse to at least one of the pixel groups" in such a manner. Furthermore, the Office Action's interpretation is particularly unreasonable when the claim language is viewed in light of the specification, as it must be viewed. In this regard, Applicants submit that the Office Action fails to consider the disclosure of the specification when interpreting at least the feature of "fitting an ellipse to at least one of the pixel groups." In light of the foregoing, Applicants respectfully traverse the rejections.

Nonetheless, claim 1 has been amended to recite *mathematically* fitting an ellipse to at least one of the pixel groups. During the interview, the Examiner indicated that the amendment would overcome the rejections. Claim 10 has been similarly amended. Accordingly, withdrawal of the rejections of claims 1 and 10 is respectfully requested.

### THE OFFICE ACTION FAILS TO MEET THE REQUIREMENT TO EXPLAIN WHY "MEANS FOR" FEATURES ARE NOT BEING TREATED UNDER 35 U.S.C. § 112, SIXTH PARAGRAPH

Claim 24 has not been amended. The rejection of claim 24 is respectfully traversed. Claim 24 includes, among other features, means for fitting an ellipse to at least one of the pixel groups. In entering the rejection of claim 24, the Office Action does not indicate that this feature, or any other feature of the claim that begin with "means for," is being treated under 35 U.S.C. § 112, sixth paragraph. MPEP § 2181(I) requires examiners to state the reasons why a claim limitation that uses the phrase "means for" is not being treated under § 112, sixth paragraph:

> "If a claim limitation does include the phrase "means for" or "step for," that is, the first prong of the 3-prong analysis is met, but the examiner determines that either the second prong or the third prong of the 3-prong analysis is not met, then in these situations, the examiner <u>must include a statement in the Office action explaining the reasons why a claim limitation which uses the phrase "means for" or "step for" is not being treated under 35 U.S.C. 112, sixth paragraph.</u>"
> (MPEP § 2181(I) (emphasis added).)

Therefore, the rejection fails to meet the requirement of MPEP § 2181.

la-1060965

APLNDC00021690

Even more clearly than with the rejections of claims 1 and 10, the Office Action's rejection of claim 24 fails to interpret the claims in light of the specification.  In asserting that Bisset discloses a means for fitting an ellipse to at least one of the pixel groups, the Office Action simply cuts-and-pastes the language used in the rejection of claim 1.  Thus, the Office Action apparently does not interpret the language of the "means for" features of claim 24 as required by law.  (*See, e.g.,* MPEP § 2181 ("a "means-or-step-plus-function" limitation should be interpreted in a manner different than patent examining practice had previously dictated"); MPEP § 2106(II)(C) ("Where means plus function language is used to define the characteristics of a machine or manufacture invention, such language <u>must be interpreted to read on only the structures or materials disclosed in the specification and "equivalents thereof" that correspond to the recited function.</u>")(emphasis added)(citations omitted); *Id.* ("Thus, at the outset, USPTO personnel must attempt to correlate claimed means to elements set forth in the written description that perform the recited step or function. The written description includes the original specification and the drawings and USPTO personnel are to give the claimed means plus function limitations their broadest reasonable interpretation consistent with all corresponding structures or materials described in the specification and their equivalents <u>including the manner in which the claimed functions are performed.</u>")(emphasis added)(citations omitted).)

Therefore, Applicants have chosen not to amend claim 24.  Applicants respectfully request that, if the rejection is maintained, the Examiner clarify whether the language of claim 24 is being treated under § 112, sixth paragraph, and if so, the Examiner clarify how he interprets the language "means for fitting an ellipse to at least one of the pixel groups" to read only on the structures/materials disclosed in the specification and equivalents thereof including the manner in which the claims functions are performed.  However, in light of the foregoing, Applicants believe claim 24 is allowable.

The remaining claims depend from the independent claims discussed above, and are believed to be allowable for at least the foregoing reasons.  Therefore, each of the presently pending claims in this application is believed to be in immediate condition for allowance.  Accordingly, the Examiner is respectfully requested to withdraw the outstanding rejections of the claims and to pass

la-1060965

Application No.: 11/677,958                    13                    Docket No.: 106842508604

this application to issue.  If it is determined that a telephone conference would expedite the prosecution of this application, the Examiner is invited to telephone the undersigned at the number given below.

In the event the U.S. Patent and Trademark office determines that an extension and/or other relief is required, applicant petitions for any required relief including extensions of time and authorizes the Commissioner to charge the cost of such petitions and/or other fees due in connection with the filing of this document to Deposit Account No. 03-1952 referencing Docket No. 106842508604.  However, the Commissioner is not authorized to charge the cost of the issue fee to the Deposit Account.

Dated:   February 24, 2010                    Respectfully submitted,

By /Gregory S. Weaver, #53,751/
Gregory Weaver
   Registration No.: 53,751
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California  90013-1024
(213) 892-5399

la-1060965

APLNDC00021692