Exhibit 16

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415 268 7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D C

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

Writer's Direct Contact
415.268.6615
JasonBartlett@mofo.com

November 20, 2011

Via E-Mail (rachelkassabian@quinnemanuel.com)

Rachel Herrick Kassabian
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139

Re:     *Apple v. Samsung*, Case No. 11-cv-1846-LHK (PSG) (N.D. Cal.)

Dear Rachel:

I write to summarize the discussions in our meet-and-confer call Wednesday, November 16, 2011, and address a few follow-up items arising therefrom.

## A.  APPLE'S ISSUES

### 1.  <u>Samsung's production of documents referencing "Apple"</u>

We began the call by discussing Samsung's production of documents that reference the word "Apple" or any aliases used by Samsung for Apple Inc.  Samsung had already agreed in correspondence that it would produce documents referencing this word that are located in its designers' documents, with Apple's agreement that it would do likewise for Samsung and any aliases.  Apple has agreed to do this.  Therefore both parties have agreed to produce all designers' documents referencing the other party's name and any aliases.  You agreed that Samsung would search for these terms in both the English and Korean languages.  You stated that you would confirm what aliases Samsung uses to refer to Apple, if any.  We noted that "A Company" appears to be an alias used by Samsung.

As discussed in prior correspondence, the parties may use delimiters that would exclude irrelevant documents from production, so long as those delimiters are disclosed and do not also exclude relevant documents.  Please note that Samsung should continue to produce documents that hit other relevant search terms, such as the names of Apple's products and aliases therefor.

**Apple expects that this production from the documents of "each of Samsung designers of Samsung's Galaxy S 4G and Infuse 4G, Droid Charge phones and Galaxy Tab 10.1**

sf-3072492

MORRISON | FOERSTER

Rachel Herrick Kassabian
November 20, 2011
Page Two

**table computer identified in Samsung's Rule 26(a) disclosures or interrogatory responses" will be complete no later than the end of November.**

Apple's further proposal, which was contained in Wes Overson's November 15 letter to you, is that documents hitting the terms "Apple" and "Samsung," respectively, with appropriate delimiters, also be produced from the documents of all design, development, and marketing groups and custodians responsible for the products at issue (including customer survey, R&D management and product planning groups). You stated that you would run this proposal by your client but otherwise you took no issue with it.

You stated that you would not expect to find many irrelevant documents in either party's custodians' files that mention the other party's name. We discussed the question of whether a party may exclude documents it finds irrelevant to the lawsuit before producing documents that hit these terms. To avoid future disputes as to whether either party has excluded relevant documents from production, all non-privileged documents hitting these terms should be produced by Samsung, and Apple will do likewise. We note that Judge Grewal's September 28 order requires Samsung to "produce . . . all documents referencing the Apple products alleged by Apple to embody one or more of the ornamental or utility features claimed in the patents. All means all: email, memoranda, whatever."

Please confirm that Samsung agrees to make this production from all non-privileged documents of all Samsung design, development and marketing groups and custodians responsible for the products at issue (including customer survey, R&D management and product planning groups). This is an agreement Apple is prepared to make on its part.

## 2.  Samsung's production of survey documents pursuant to September 28 order

Regarding the production of survey documents pursuant to Judge Grewal's September 28, 2011 Order, you stated that Samsung had already agreed to broaden its search for and production of all survey documents globally that reference Apple products or any aliases therefor.

In Wes Overson's November 16, 2011 letter, Apple noted that the September 28 Order requires Samsung to produce from any central file or from the files of any custodian with survey responsibility, anywhere in the world, all survey documents that refer to Apple's products. The letter identified a specific search that Samsung should use for the search and production of documents against these files. Again, Samsung must also continue to use other relevant search terms, such as the names of Apple's products and aliases therefor, when conducting its searches for and production of survey documents.

sf-3072492

MORRISON | FOERSTER

Rachel Herrick Kassabian
November 20, 2011
Page Three


We confirmed that in performing this particular production Samsung need not search for documents that are located solely in the files of Samsung entities that have not been named as defendants in this lawsuit.

You stated that you would need to run this specific clarification of the search by your client but otherwise you took no issue with it.  You stated that your obtaining this confirmation will not substantially delay Samsung's production of these documents.  We look forward to your immediate response confirming that this clarified search will move forward.  **Apple expects that Samsung's production of these survey documents will be complete no later than the end of November.**

### 3. Samsung's failure to timely supplement Interrogatory Nos. 10 through 14

In previous communication regarding Apple's Second Set of Preliminary Injunction Interrogatories, Samsung had promised to provide supplemental responses to Interrogatory Nos. 10 through 14 by Monday, November 14, 2011. (*See, e.g.*, October 26, 2011 email from Rachel Kassabian to Wes Overson entitled "Samsung's interrogatory responses.")  That deadline came and went without any supplemental responses being served.  During Wednesday's call, you acknowledged that your supplemental responses had been promised by November 14 but had not yet been delivered.  You stated that you were still working on these supplemental responses and had not been able to complete them due to the press of other business.  You stated that you would provide the responses by Monday, November 21.

Samsung's delay in providing these supplemental responses, after promising over 2 weeks ago to amend by November 14, is inexcusable.  Although Apple acknowledges, as you stated during the call, that interrogatories need to be supplemented throughout the course of discovery with newly located information, the supplements Samsung owes to Apple are not of that nature.  As Apple has repeatedly noted in the past, your current responses to these questions are non-substantive and incomplete.  Interrogatories Nos. 10-11, for example, ask Samsung to describe among other things:  how its design and development process works, the names and titles of the people and entities involved, what role the relevant groups and employees play in that process, and how Samsung developed the accused hardware designs and functionality.  Samsung's current response simply incorporates by reference its initial disclosures and the entire transcript of a 30(b)(6) deposition, without providing a full, narrative response to these questions.  **Apple expects full and complete responses to these interrogatories no later than noon on November 21.**

### 4. Reciprocal agreements to produce inventor documents

We asked you to confirm that the document productions currently being made by Samsung in conjunction with currently ongoing depositions of Samsung inventors included at least the following categories of documents:  conception and reduction to practice documents,

sf-3072492

MORRISON | FOERSTER

Rachel Herrick Kassabian
November 20, 2011
Page Four


notebooks, drawings, schematics, specifications, development documents for practicing
products, and inventor publications related to the subject matter of the purported invention.
We further requested that Samsung agree to the inventor-related reciprocal obligation
proposed in Exhibit A to Wes Overson's November 15, 2011 letter.

You stated that Samsung is collecting documents from the inventors, reviewing the
documents that hit the disclosed search terms, and producing all non-privileged documents
responsive to any and all of Apple's outstanding document requests.  You stated that paper
documents are being collected separately and reviewed without running against search terms
because they are non-searchable.  You stated that Samsung is not excluding any particular
categories of documents that Apple has requested.  You stated that if no documents came up
for a particular inventor based on search terms, "that is what it is."

Apple reserves the right to re-open any and all inventor depositions as appropriate based on
Samsung's failure to produce and/or untimely production of inventor documents.

We asked you to confirm that other categories of standalone electronic documents,
unattached to emails, that were collected from the files of inventors being deposed, such as
electronic drawings and schematics, were also being reviewed for relevance and
responsiveness regardless of whether they hit the disclosed search terms.  We noted that
certain types of documents are highly unlikely to themselves hit search terms because they
contain little, if any, verbiage, but they nevertheless are relevant and responsive to
outstanding document requests and should be identified and produced.  Apple performed this
type of search as part of its review of inventor documents in connection with the inventor
depositions that took place in October.  Apple expects Samsung to have done this search as
well, but noted that the inventor productions taking place thus far contained very few of these
types of documents.

You stated that you would check with your team to confirm what steps Samsung is taking to
ensure that relevant, responsive standalone electronic documents unlikely to contain search
terms are nevertheless being produced.  Apple will also check with its document review team
to obtain a description of the steps it has taken to identify those categories of documents.

### 5. Additional proposed reciprocal document production agreements

You acknowledged receipt of the outstanding letter from Wes Overson, dated November 10,
attaching an "Exhibit A" that proposed specific, reciprocal production agreements for
numerous categories of documents requested by both parties.  As we have noted, "Exhibit A"
was not intended to cover all potential categories for reciprocal agreements, but was instead
meant to move the conversation forward quickly and to propose initial reciprocal obligations
in categories where production demands are currently most pressing.

sf-3072492

MORRISON | FOERSTER

Rachel Herrick Kassabian
November 20, 2011
Page Five

You stated that using the "Exhibit A" format was a "useful exercise," that you were in the process of analyzing the document, and that you would send us a redline showing proposed edits to Apple's proposals within two weeks and hopefully before Thanksgiving.  You also stated that you planned to suggest additional categories for the exhibit.  You requested that we send you a Word version of Exhibit A so that this redline could be prepared.  We emailed that Word document to you on Thursday, November 17.  Given that Samsung has had Exhibit A now for well over a week, we expect that you will be able to provide Samsung's positions on the reciprocal categories contained in Exhibit A before Thanksgiving.

You stated that Samsung would like counsel to negotiate reciprocal agreements in the first instance as a legal matter, and then seek client approval once agreements-in-principle have been otherwise made.  Apple has no problem with this general sequence for each individual category of reciprocal production agreements, but **it is critical the parties' general desire to reach a comprehensive set of reciprocal production agreements does not result in delay of the production of urgently-needed categories of documents.**  Exhibit A is not an "all or nothing" proposal, and therefore the parties should push forward with reaching reciprocal agreements as quickly as possible with respect to those categories that each party wishes to frontload.

As discussed during the meet-and-confer, at this time Apple needs to frontload certain specific categories for reciprocal agreement in the near term, including inventor-related documents, licensing documents, and source code.

The parties agreed that while these discussions are underway, both parties should be gathering and producing whatever documents they know need to be produced under each RFP.  Accordingly, nothing in this reciprocal-production approach is intended to preclude either party from making inquiries regarding the sufficiency of the other party's production of urgently-needed documents that are well within the scope of what is relevant and must be produced.

### 6.  Samsung's failure to produce documents related to SSOs

You acknowledged receipt of Calvin Walden's October 13 and November 15 letters, as well as Sam Maselli's November 8 letter, which addressed, among other things, Samsung's failure to produce documents related to standards-setting organizations.  We requested that Samsung begin producing these documents in earnest immediately, and that it provide a date certain for when its production of standards-related documents would be substantially complete.  Our prior letters have detailed the particular RFPs implicated, as well as the types of documents that should be part of Samsung's production.

You stated that this is a topic for which you believe there are reciprocal obligations, and that you would likely be proposing a reciprocal agreement on the scope of standards-related

sf-3072492

MORRISON | FOERSTER

Rachel Herrick Kassabian
November 20, 2011
Page Six

production as part of your edits to Exhibit A.  We stated that we would entertain any request to come to a reciprocal agreement on the scope of production on this topic, but that we expected the reciprocal obligations would *at least* include the types of documents we have been demanding in our letters, and that Samsung should not wait on any reciprocal agreement to begin its production.  You stated that a response to Sam's November 8 letter and Calvin's November 15 letter would be forthcoming, but you would not provide a date by which this production would be complete or substantially complete.

Apple reserves the right to re-open any and all inventor depositions as appropriate based on Samsung's withholding of these relevant documents.  We further expect to receive a date certain from Samsung for the substantial completion of standards-related documents by the time the parties meet and confer again on November 24.

### 7.  Protective order provisions regarding cross-use

You stated that you believed an agreement amongst the parties in the ITC actions was "imminent" and that all that remained were "wordsmithing" issues.  You confirmed that Samsung will agree to adopt in the N.D. Cal. case all applicable protective order provisions that are agreed to by the parties in the ITC actions.

### 8.  Samsung's overbroad assertions of privilege

We understood during the meet-and-confer that you had not had time to investigate Sam Maselli's November 15, 2011 e-mail detailing Samsung's recent overbroad assertions of privilege in recent depositions.  You stated that you would speak to the attorneys involved and provide a written response as soon as you are able.  We expect to receive a response soon, and that Samsung will cease making overbroad privilege objections as depositions continue.

### 9.  Samsung's violation of the 5-day rule

We discussed Samsung's numerous recent violations of the parties' agreed-upon 5-day rule for production of documents from witness's files in advance of depositions.  You stated that none of the recent productions had been deliberately delayed.  We asked that Samsung redouble its efforts to make timely productions, and further asked for agreement that the parties would notify the other party in advance where possible when they become aware that productions are going to be untimely.  You stated that the request was reasonable and Samsung would consider this proposal.  We look forward to your response.

sf-3072492

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
November 20, 2011
Page Seven

### 10.  Samsung's failure to produce source code and other technical documents

You acknowledged receipt of the outstanding letter from Wes Overson, dated November 10, identifying source code and other technical documents related to the accused features that Samsung has not produced but that Apple is entitled to receive.  You stated that you would respond to that letter as soon as possible.  We asked you whether there was any category of source code in the letter that Samsung was currently claiming it was not required to produce and you could not identify any such category.

You stated that Samsung views source code as a reciprocal issue that should be addressed within the context of the reciprocity negotiations.  We stated that Apple would like to frontload this for discussion and agreement, along with licensing and inventor documents.

## B.  SAMSUNG'S ISSUES

### 1.  Samsung's outstanding requests for production

You requested that Apple state in writing its positions regarding all of Samsung's outstanding Requests for Production that were identified in Marissa Ducca's September 30 letter.  The only requests for which Apple has not yet provided a specific substantive response, however, are requests to which Apple has objected on grounds of overbreadth and stated that Apple would meet and confer regarding an appropriate scope of production.  Ms. Ducca's September 30 letter did not ask for substantive responses on these requests, but rather a date and time to meet and confer.  Apple has been attempting to meet and confer on these requests, and as you know, Apple and Samsung have worked through some of them on the weekly calls.

We stated that it is Apple's intention to continue meeting and conferring on these requests through the negotiation of reciprocal agreements as discussed above.  We acknowledged that it may not be the case that all of Samsung's requests are reciprocal in nature.  We stated that we would provide, as soon as possible, an "Exhibit B" setting forth all remaining categories of documents that contain reciprocal production obligations, and then we would state Apple's position with respect to any remaining requests that Apple does not view as reciprocal in nature.  That letter and exhibit are forthcoming.

We stated that Samsung should likewise respond to Calvin Walden's October 13 and November 15 letters regarding certain outstanding Apple document requests, and you agreed to do so.  We asked that your response provide the same level of detail that Samsung expects Apple to include in its response letter.

sf-3072492

**MORRISON** | **FOERSTER**

Rachel Herrick Kassabian
November 20, 2011
Page Eight

**Please note that Apple has no intention of editing "Exhibit A" to Wes Overson's November 10 letter, so you should proceed with completing your redline of the Word document provided on November 17, as discussed above.**

    2.   <u>Documents from the Motorola case requested for Markman proceedings</u>

We stated that we are in the process of reviewing these documents for production and expect to produce them before Thanksgiving.

    3.   <u>Upper date cutoff for inventor documents</u>

Apple has produced all inventor documents created through the date the patent was filed, or a product embodying the patent was first introduced, whichever is later.  You stated, as you have stated in previous correspondence, that Samsung would like Apple to produce all inventor documents through the date the patent was issued.  We stated that Apple is in the process of considering Samsung's request.  We will attempt to provide a response before Thanksgiving, but more likely it will not be until after Thanksgiving.

    4.   <u>Lower date cutoffs for Industrial Design custodians</u>

Apple has ██████████████████ as the lower-range date cutoff for documents collected from Apple's Industrial Design custodians.  You asked for the reason why Apple chose this date.  We responded that this was a date that fell safely before the inception of the ████  ██████.  You asked us to provide a letter identifying the reasons why Apple chose other date cutoffs, but we declined to do so.  If Samsung believes that a particular date cutoff is too high or too low, please let us know.

As we have explained in earlier correspondence, and as we explained again during Wednesday's meet-and-confer call, the October 7 search terms disclosure did not provide search terms for Industrial Design inventors but rather stated that search terms for their documents were in the process of being determined.  No search terms were applied to designers' sketchbooks.  We later disclosed the search terms that were applied to the electronic documents of Industrial Designers.  Those search terms were run against the Industrial Designers' documents before their documents were reviewed and produced in advance of their depositions.  No members of the Industrial Design team were deposed until well after October 7.

Regarding date cutoffs generally, during the call we acknowledged that the October 7 disclosure was partially inaccurate because it inadvertently provided date cutoffs that did not match the date cutoffs actually applied before each inventor's deposition.  We noted that in each such case the date cutoff actually applied was broader than the cutoff disclosed, so the

sf-3072492

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
November 20, 2011
Page Nine


number of documents actually reviewed for production was greater.  The corrected
disclosure that was sent to you on November 15, 2011 identifies the dates that were applied.

### 5.  Transcripts of prior deposition testimony

You reiterated Samsung's request that Apple produce, for each witness who is deposed,
transcripts of all prior deposition testimony where the witness was being deposed in his or
her capacity as an employee of Apple.  You stated that this is the standard Samsung is
applying in its production of prior deposition transcripts, yet when we identified particular
witnesses for which we understand transcripts exist from the *Ericsson* case but have not been
produced, you stated only that a review had been conducted.  You had no explanation for
Samsung's failure to produce deposition transcripts that, by Samsung's requested standard,
should have been produced.

As we stated during the call, Apple is not inclined to produce prior deposition transcripts
covering such an overbroad scope.  Apple has already produced, for each witness deposed to
date, transcripts of all prior deposition testimony in cases where the patent-in-suit was one of
the patents-in-suit in the instant action.  Apple also will be producing, for each witness
deposed in the related ITC actions, transcripts of prior testimony in cases where the patent-
in-suit was one of the patents-in-suit in the ITC actions, so with a cross-use agreement those
documents will be available to Samsung for use in the N.D. Cal. action as well.

You acknowledged that during your depositions of Apple witnesses thus far you had an
opportunity to question the witness regarding whether the witness had had his or her
deposition taken in any previous cases and, if so, what the case was about and when the
deposition occurred.  To the extent such questioning has provided Samsung with reason to
believe that a particular deposition transcript exists that Samsung may be entitled to, please
let us know.

You requested that Apple provide Samsung with a list of all prior deposition transcripts it is
able to locate for each deponent, identifying the date of the deposition, the case, and a
description of what the case was about, so that Samsung can determine which additional
transcripts to request.  We agreed to take that request under consideration.

In an effort to compromise, Apple offered to produce any additional deposition transcripts
that it may be able to find from cases where the patent-in-suit bore a technological nexus to
one or more of the patents-in-suit in the instant action.  You agreed to take that proposal
under consideration.

sf-3072492

MORRISON | FOERSTER

Rachel Herrick Kassabian
November 20, 2011
Page Ten

### 6. Translations

You asserted that there had been errors in translations of documents that had been translated for use in depositions. You asked that only Korean language documents be used with Korean speakers rather than translations. We stated that translations would continue to be used, and would be produced to Samsung with as much advance notice as possible.

### 7. Missing load files

You noted that two recent productions to Samsung had been made without corresponding load files containing custodial information. We stated that the load files had now been provided. You stated that you would review the matter with your discovery team.

### 8. Alleged deficiencies in Apple's inventor productions

We acknowledged your October 18 and November 12 correspondence identifying various documents and categories of documents you believe may exist but are missing from Apple's inventor document production. We stated that we are in the process of drafting a response letter and also investigating each of the identified deficiencies so as to determine whether any additional information exists that should be produced. We agreed to provide you with a letter on Monday that will give whatever responses can currently be provided, and identify additional areas where our investigation is still pending.

### 9. Outstanding requests related to alleged prior art

We acknowledged receipt of Samsung's November 1 and November 8 letters requesting information about what it considers to be potential prior art. We stated that we are looking for that information. You requested that Apple waive any opposition to Samsung's motion to amend its invalidity contentions on grounds that the documents were produced late. We declined to make any waiver on Apple's behalf.

### 10. Alleged waiver of privilege

You requested that Apple agree that a complete waiver of the attorney-client privilege has been made with respect to certain individuals based on comments allegedly disclosed in a hearing before Judge Grewal. We stated that no such waiver was made and that Apple will have nothing further to state on that topic.

sf-3072492

MORRISON | FOERSTER

Rachel Herrick Kassabian
November 20, 2011
Page Eleven


### 11.  Samsung's opposition to disclosure of AEO information to Peter Bressler

Samsung confirmed that it opposes any disclosure by Apple of AEO information to its identified expert Peter Bressler.  We stated that Apple does not have any near-term plans to disclose AEO information to Mr. Bressler, but will let Samsung know if that changes.  At this time, Apple does not plan to file any motion on this issue.


### 12.  Apple's opposition to disclosure of AEO information to Itay Sherman

The parties confirmed that Apple opposes any disclosure of AEO information to Samsung's expert Itay Sherman without identifying in advance to Apple the specific documents Samsung wishes to show him.  You stated that Samsung plans to file a motion on this issue and requested a date and time for lead counsel meet and confer so that the parties may exhaust all opportunities for resolution on this issue.  We stated that we would check Mr. McElhinny's schedule.

We proposed that the parties schedule a lead counsel meet-and-confer session on this topic and then in advance of that meeting tee up any other issues for discussion at that meeting that it currently appears the parties will not be able to otherwise resolve.  You stated that you were not aware of anything other than the Sherman issue that was ripe for a lead counsel meet-and-confer at this time.

Sincerely,

/s/ *Jason Bartlett*

Jason Bartlett

cc:     Samuel Maselli
        Peter Kolovos
        Calvin Walden

sf-3072492