1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California  94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California  94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for Samsung Electronics Co., Ltd.,
   Samsung Electronics America, Inc., and Samsung
14 Telecommunications America LLC

15                     UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

17 | APPLE INC., a California corporation,            | CASE NO. 11-cv-01846-LHK
18 |     Plaintiff,                                   | **DECLARATION OF RICHARD WESEL IN SUPPORT OF SAMSUNG'S PROPOSED CLAIM CONSTRUCTION FOR U.S. PATENT NO. 7,200,792**
19 |     vs.                                          |
20 | SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Date: January 20, 2012
                                                        Time: 10:00 am
                                                        Courtroom 4, 5th Floor
                                                        Judge: Hon. Lucy H. Koh
23 |     Defendants.                                  |

28 02198.51855/4458776.1

I, Richard Wesel, declare:

1.   I am a professor at the University of California, Los Angeles, in the field of Electrical Engineering, specializing in communications.  I have been asked to provide an expert declaration on behalf of Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") as to the meaning of the term "symbol" in claims 11 and 14 of U.S. Patent No. 7,200,792, as it would have been understood by persons of ordinary skill in the art at the time of the invention (on or around December 2001).   If called upon as a witness, I could competently testify to the truth of each statement herein.

2.   I am being compensated for my work in this matter at the rate of $450 per hour. My compensation does not depend in any way on the outcome of this investigation or the particular testimony or opinions I provide.

3.   In preparing this declaration, I have considered my own experiences in the field, the items discussed herein, and the items listed below:

      A.   U.S. Patent No. 7,200,792 (" '792 patent").

      B.   U.S. Patent No. 7,200,792 prosecution history.

      C.   Declaration of Prof. Richard D. Gitlin in Support of Apple's Proposed Claim Construction for U.S. Patent No. 7,200,792, dated November 14, 2011 ("Gitlin Decl.").

      D.   Gitlin, Hayes and Weinstein, DATA COMMUNICATIONS PRINCIPLES, Kluwer Academic/Plenum Publishers (1992) ("Gitlin, et. al., DATA COMMUNICATIONS PRINCIPLES").

      E.   Apple's PLR 4-2 disclosure, dated Oct. 31, 2011, for the term "symbol," *i.e.,* Apple's PLR 4-2 disclosure at 12-17.

      F.   Samsung's PLR 4-2 disclosure, dated Oct. 31, 2011, for the term "symbol," *i.e.,* Samsung's PLR 4-2 disclosure, Exhibit A at 46.

4.   I reserve the right to supplement or amend this declaration based on any new information received that is relevant to my opinions.

## I. PROFESSIONAL BACKGROUND

5. I have a bachelor's and master's degrees in electrical engineering from the Massachusetts Institute of Technology and a doctorate in electrical engineering from Stanford University.

6. I am currently a Professor in the Electrical Engineering Department and Associate Dean of Academic and Student Affairs for the Henry Samueli School of Engineering and Applied Science (HSSEAS) at the University of California, Los Angeles.

7. I have been an electrical engineering professor at UCLA since 1996 teaching courses in error control coding and communication systems among other topics. I received the HSSEAS TRW Excellence in Teaching Award in 2000.

8. I have authored or co-authored over 130 conference and journal publications on communications and signal processing.

9. I have received the National Science Foundation CAREER Award and an Okawa Foundation Award for Excellence in Telecommunications Research.

10. Attached as Exhibit A is a copy of my curriculum vitae setting forth my qualifications and publications.

## II. PERSON OF ORDINARY SKILL IN THE ART

11. I understand that to determine the ordinary and customary meaning of a claim term, one looks to the meaning that a person of ordinary skill in the art would have given the term at the time of the invention, which in this case is at least as early as December 2001. Based on my experiences and the materials I have reviewed, it is my opinion that one of ordinary skill in the field of the '792 patent is a person in the field of electrical engineering specializing in communications, with either a Bachelor's degree and approximately three years of experience or a Master's degree with approximately one year of experience.

III.     MEANING OF "SYMBOL" – PLAIN AND ORDINARY MEANING

12.     I have been asked to provide my opinion about the meaning of the word "symbol" as used in claims 11 and 14 of the '792 patent. I understand that the meaning of a term is considered in the context of the patent as a whole, including the claim language and the specification, as well as the patent's prosecution history – collectively described as intrinsic evidence. I also understand that claim construction may take into account extrinsic evidence, such as dictionaries and treatises; however, such evidence is considered less reliable than intrinsic evidence, and is examined in the context of the available intrinsic evidence.

13.     I am informed and understand that district courts are not required to construe every limitation present in a patent's claim. In particular, a district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims. However, a determination that a claim term "needs no construction" or can be understood according to its "plain and ordinary meaning" may be inadequate when a term has more than one ordinary meaning or when reliance on a term's ordinary meaning does not resolve the parties' dispute.

14.     The '792 patent is directed to the field of communications, specifically to data transmission in a communication system. In that field, "symbol" is such a ubiquitous and well-understood term in data communications that some data communications textbooks use it without any definition. *See* Gitlin, et. al., DATA COMMUNICATIONS PRINCIPLES. In my opinion, it would be immediately apparent to a person of ordinary skill in the art that the '792 patent uses "symbol" in a manner similar to other books, documents, and writings in the communications field. Thus, a person of ordinary skill in the art would recognize that Claims 11 and 14 of the '792 patent are properly understood using the plain and ordinary meaning of "symbol." Because "symbol" is being used in this ordinary and customary sense, no construction of this term is necessary.

15.     The plain and ordinary meaning is clear in the context of data transmission and reception. In that context, "symbol" is widely understood to describe a modulated signal representing a number of bits of information. The signal is "modulated" in the sense that one or

02198.51855/4458776.1

more of its properties, such as phase, frequency, or amplitude, are altered to convey the information.  The selected modulation technique specifies the number of bits that a symbol represents.  Therefore, if the Court decides a construction of the term "symbol" is necessary, it should be given its plain and ordinary meaning: **"a modulated signal representing a number of bits specified according to the modulation technique."**  Apple's and Samsung's proposed constructions are summarized in the table below.

| Claim No. | Disputed Term | Apple's Proposed Construction | Samsung's Proposed Construction |
|---|---|---|---|
| 11 and 14 | "symbol" | "a modulated pattern in a sequence of such patterns that represents a plurality of bits" | Plain and ordinary meaning<br><br>If the Court decides a construction is necessary: "a modulated signal representing a number of bits specified according to the modulation technique" |

      a.)    <u>"a modulated signal" v. "a modulated pattern"</u>

            1.)    Intrinsic Evidence – "a modulated <u>signal</u>"

16. A "symbol" is a "modulated <u>signal</u>," and not a "modulated <u>pattern</u>."  The language of the claims indicates that symbol is used in this plain and ordinary sense.  Claims 11 and 14 both claim a "received symbol."   In order for a "symbol" to be "received," it must have been transmitted by a source.  The transmission and reception of a symbol indicate the "symbol" is a signal.

17. Moreover, Claims 11 and 14 include the language "demodulating a received symbol into a plurality of systematic bits and parity bits."  The ordinary meaning of "demodulating" requires a demodulator to receive a modulated signal.  The understanding of "symbol" in its ordinary sense as a "signal" is fully consistent with the use of "demodulating" in the claim language.

18. The specification further confirms that a "received symbol" refers to a "signal." Columns 21-24 of the specification teach the functionality of the receivers that is described in

02198.51855/4458776.1

DECLARATION OF RICHARD WESEL IN SUPPORT OF SAMSUNG'S
PROPOSED CLAIM CONSTRUCTION FOR U.S. PATENT NO. 7,200,792

5

1  Claims 11 and 14. Near the beginning of that section, entitled "Receiver According to Invention,"
2  the specification states, "Since a **received signal** is in the form of a **symbol modulated** by a
3  modulator in the transmitter, **the received signal is first demodulated** by a demodulator and then
4  provided to a deinterleaver." '792 patent at 21:48-51 (emphasis added). The specification
5  describes a "received signal" as a "symbol" because "symbol" refers to a type of signal under its
6  ordinary meaning.

7      19.    Indeed, the phrase "received signal" in the specification is used in a parallel manner
8  to the term "received symbol" in Claims 11 and 14. The specification language cited above
9  (21:48-51) closely tracks the language of Claims 11 and 14. Both the specification and the claim
10  language describe receiving information in the form of a signal/symbol, demodulating that
11  information, and then deinterleaving that information. Thus, a person of ordinary skill in the art
12  would have recognized that this specification language describes "symbol" as used in Claims 11
13  and 14. Below is a side-by-side comparison of the specification language and the claim language
14  that highlights the parallel use of "signal" and "symbol" in the specification and the claims of the
15  '792 patent.

| '792 Patent, 21:48-51 | Claim 11 | Claim 14 |
|---|---|---|
| "Since a **received signal** is in the form of a symbol modulated in the transmitter, the received signal is first **demodulated** by a demodulator and then provided to a **deinterleaver**." | "An apparatus for receiving data in a communication system comprising:<br><br>a demodulator for **demodulating** a **received symbol** into a plurality of systematic bits and parity bits; a first **deinterleaver** …" | "A method for receiving data in a communication system, comprising:<br><br>**demodulating** a **received symbol** into a plurality of systematic bits and parity bits; writing the plurality of systematic bits on a column by column basis in a first **deinterleaver**…" |

    **2.)**    **Extrinsic Evidence – "a modulated <u>signal</u>"**

25      20.    As mentioned above in ¶14, Dr. Gitlin's book does not even define "symbol,"
26  which is not surprising because "symbol" is a widely understood term.   However, Dr. Gitlin
27  implicitly uses "symbol" in its plain and ordinary sense to mean a "modulated signal," by using
28  02198.51855/4458776.1