| | |
|---|---|
| HAROLD J. MCELHINNY (CA SBN 66781) | WILLIAM F. LEE |
| hmcelhinny@mofo.com | william.lee@wilmerhale.com |
| MICHAEL A. JACOBS (CA SBN 111664) | WILMER CUTLER PICKERING |
| mjacobs@mofo.com | HALE AND DORR LLP |
| JENNIFER LEE TAYLOR (CA SBN 161368) | 60 State Street |
| jtaylor@mofo.com | Boston, MA 02109 |
| ALISON M. TUCHER (CA SBN 171363) | Telephone: (617) 526-6000 |
| atucher@mofo.com | Facsimile: (617) 526-5000 |
| RICHARD S.J. HUNG (CA SBN 197425) | |
| rhung@mofo.com | |
| JASON R. BARTLETT (CA SBN 214530) | MARK D. SELWYN (SBN 244180) |
| jasonbartlett@mofo.com | mark.selwyn@wilmerhale.com |
| MORRISON & FOERSTER LLP | WILMER CUTLER PICKERING |
| 425 Market Street | HALE AND DORR LLP |
| San Francisco, California 94105-2482 | 950 Page Mill Road |
| Telephone: (415) 268-7000 | Palo Alto, California 94304 |
| Facsimile: (415) 268-7522 | Telephone: (650) 858-6000 |
| | Facsimile: (650) 858-6100 |

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No. 11-cv-01846-LHK (PSG) |
| Plaintiff, | **APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO PERMIT SAMSUNG'S EXPERT ITAY SHERMAN TO REVIEW DESIGN MATERIALS DESIGNATED UNDER THE PROTECTIVE ORDER** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Judge: Hon. Lucy H. Koh |
| Defendants. | |

**PUBLIC REDACTED VERSION**

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO PERMIT ITAY SHERMAN TO REVIEW DESIGN MATERIALS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3082502

Samsung's motion to allow its expert Itay Sherman to view Apple confidential information should be denied. The damage to Apple from disclosing Apple's confidential information to Mr. Sherman, whose business and commercial activities compete with Apple, would greatly outweigh any possible prejudice to Samsung from denying this motion. Mr. Sherman is the founder and Chief Executive Officer ("CEO") of a company whose website announces that it "is aiming to bring innovative multi-touch technology to mass market." (*See* Declaration of Esther Kim in Support of Apple's Opposition to Samsung's Motion to Permit Samsung's Expert Itay Sherman to Review Design Materials Designated Under the Protective Order ("Kim Decl.") at ¶ 2.) He is the named inventor and is currently pursuing patents directed to systems "capable of detecting double point or finger taps or gestures, and districting [sic] them from single point or finger taps or gestures." (*Id.* at ¶ 3;                          ) He also has ongoing consulting arrangements with several of Apple's competitors in the smart phone market. The competitive intelligence Mr. Sherman would gain from reviewing Apple's design information would be invaluable to Mr. Sherman and the companies with which he consults. Thus, Apple faces substantial potential harm in allowing Mr. Sherman to have access to its confidential information.

In contrast, Samsung has not offered any reason why its defense to this action would be impeded if Mr. Sherman were denied access to Apple's confidential information. Samsung has sufficient time to retain another expert in this action, as opening expert reports are not due until March 22, 2012. (Dkt. 187.) Accordingly, the balance of harms weighs in favor of denying disclosure of Apple confidential information to Mr. Sherman.

## I.  FACTS

On September 6, 2011, Samsung disclosed that it had retained Itay Sherman as a design expert and demanded to know, by September 9, 2011, whether Apple objected to the disclosure to Mr. Sherman of Apple information designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the Interim Model Protective Order. (Kim Decl. at ¶ 5.) The next day, Apple responded that it needed more time to "evaluate Apple's potential objections to this expert." (*Id.* at ¶ 6.) Apple's initial review of Mr. Sherman's curriculum vitae gave Apple much

reason for concern, as it appeared that Mr. Sherman was "actively engaged in commercial activities and obtaining patents in areas that overlap with the subject matter of this case." (*Id.*) Apple promptly requested additional details regarding Mr. Sherman's commercial activities and his pending patent applications. (*Id.*) In particular, Apple sought reassurances that these activities and applications did not overlap with the subject matter of Apple highly confidential information, which Samsung was seeking to reveal to Mr. Sherman. (*Id.*) Samsung refused to make such representations (*id.*) because it could not. Mr. Sherman is the founder, CEO, and sole board member for DoubleTouch, Ltd., a company that develops and markets technology to be used in consumer electronics devices that compete directly with Apple's products.

Realizing the potential competitive harm to Apple that would result from disclosure of said sensitive information, Samsung proposed that Mr. Sherman "review only those confidential documents that relate to the design aspects of this case, and only those documents that relate to previously released Apple products." (Kim Decl. at ¶ 6.)

Samsung's assurances that it would show Mr. Sherman only documents relating to "the design aspects of this case" are not – and cannot – be sufficient to address Apple's concerns. Given Mr. Sherman's opinion that design and functionality are intertwined (Dkt. 172), virtually *all documents* would be deemed to relate to "the design aspects of this case." In correspondence and during the parties' meet-and-confer call on November 16, 2011, Apple – despite its uneasiness with his involvement – offered to consider allowing Mr. Sherman to view confidential Apple documents on a case-by-case basis, if Samsung would identify in advance the specific documents Samsung wished to show him. (Kim Decl. at ¶ 7.) Samsung again refused. (*Id.*) Instead, Samsung asked that Mr. Sherman be given access to broad categories of confidential documents: (1) all computer-aided design ("CAD") files; (2) all design inventor notebooks; (3) the deposition transcript of Apple design patent inventor Christopher Stringer; and (4) all Apple presentations purporting to show that certain features of designs are functional. (Dkt. 482-2 at ¶ 2.) These categories cover a wide array of information – beyond those that relate strictly to design. For example, Samsung believes that pricing and manufacturing information is relevant to

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO PERMIT ITAY SHERMAN TO REVIEW DESIGN MATERIALS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3082502

2

1  design issues, because such information indicates whether changes were made for commercial
2  rather than aesthetic reasons. (Kim Decl. at ¶ 8.)

3  Given Samsung's inadequate assurances and refusal to compromise, Apple has continued
4  to maintain its objection to Mr. Sherman's access to Apple confidential information, based on his
5  business activities and pending patent applications.

## II. ARGUMENT

The purpose of a protective order is to "prevent harm by limiting disclosure of *relevant* and *necessary* information." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (emphasis in original). In resolving disputes where the party receiving confidential information under a protective order seeks to utilize the information in a manner that is opposed by the producing party, the court will balance the interests of the parties. *Telular Corp. v. VOX2, Inc.*, No. 00 C 6144, 2001 WL 641188, at *1 (N.D. Ill. June 4, 2001); *also* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2043 (3d ed. 2010). Where, as here, the disclosure of confidential information to a third-party expert is opposed by the producing party, the court must balance the disclosing party's interest in protecting its trade secrets and confidential information from disclosure to its competitors against the interest of the party seeking disclosure in selecting the expert most beneficial to its case. *BASF Corp. v. United States*, 321 F. Supp. 2d 1373, 1379 (C.I.T. 2004); *Telular*, 2001 WL 641188, at *1. In balancing these interests, the Court should take into account the specific expertise of this expert and whether other experts possess similar expertise. *Id.* The balance of interests here weights heavily in Apple's favor.

Mr. Sherman should not be allowed to review Apple confidential information because he: (1) is the owner and CEO of DoubleTouch, Ltd., a company that is developing touch screen technology designed to compete with Apple's touch screen technology; (2) is a named inventor on numerous pending patent applications claiming multi-touch technology; and (3) has ongoing consulting relationships with companies that design technologies and products that have been, or may be, offered to handset manufacturers that are Apple's competitors.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO PERMIT ITAY SHERMAN TO REVIEW DESIGN MATERIALS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3082502

3

**A.  Apple Would Suffer Harm If Its Confidential Information Were Disclosed to Mr. Sherman, the Founder and CEO of a Company Developing Multi-Touch Technology Aimed at Apple's Market.**

The disclosure of sensitive Apple information to Mr. Sherman represents a significant competitive threat to Apple. Mr. Sherman is the founder, CEO, and sole board member of DoubleTouch, Ltd., a company that develops multi-touch technology competing directly with Apple's technology. Indeed, DoubleTouch markets its products as "providing the full experience of multi-touch with a fraction of the cost." (Kim Decl. at ¶ 9.) Samsung's own motion acknowledges that DoubleTouch "is in the business of licensing low-cost multi-touch technology" to "vendors that provide touch controllers to the consumer electronics market as well as consumer electronics companies themselves." (Samsung Mot. at 3.) Thus, it is undisputed that Mr. Sherman and his company DoubleTouch develop and market technology to be used in consumer electronics devices that compete directly with Apple's own products.

Samsung contends that Apple's concerns about providing its sensitive business information to Mr. Sherman are baseless because he would "only testify in this case about design patents, not utility patents." (*Id.* at 4.) Regardless of the nature of his testimony, however, Mr. Sherman's access to Apple's business information poses the risk of substantial competitive harm to Apple. Nor are Apple's concerns alleviated by Samsung's proposal that Mr. Sherman be provided only with "design documents." The list of documents Samsung proposes to provide to Mr. Sherman include some of the most sensitive documents Apple possesses, including CAD files, design sketchbooks, and "internal documents [purportedly] showing that design features are functional." (*Id.* at 4-5.) These documents go to the heart of the design of Apple's products, including information about designs that Apple has not yet pursued, as well as designs that Apple considered and chose not to pursue.

Apple views its designs, including its alternate designs to products already released, as crucial to its success. Maintaining the secrecy of Apple's designs and its design process itself is a top priority for Apple. For this reason, Apple guards its designs with security measures that are as high as (or even higher than) those used to guard its source code. Apple should not be required

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO PERMIT ITAY SHERMAN TO REVIEW DESIGN MATERIALS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3082502

4

to share this highly sensitive competitive information with someone who designs the same types of products for competitors.

**B.     Apple Will Suffer Harm Because Mr. Sherman Is Pursuing Patent Protection for Inventions Aimed at Apple's Market.**

Disclosing Apple confidential information to Mr. Sherman would also prejudice Apple because Mr. Sherman is currently seeking patent protection for inventions that are aimed directly at Apple's market.  For example, Mr. Sherman is the named inventor of a patent application – apparently assigned to his company DoubleTouch – entitled, "Implementation of Multi-Touch Gestures Using a Resistive Touch Display."  (Kim Decl. at ¶ 3.)  This patent application generally describes "a system based on a standard resistive touch screen that is capable of detecting double point or finger taps or gestures, and districting [sic] them from single point or finger taps or gestures."  (*Id.*; ▮.)  Mr. Sherman and his company are continuing to prosecute this patent application and related applications.  Access to Apple's design documents showing non-public information about Apple's designs could allow Mr. Sherman and his company to develop and modify their patent strategy, armed with inside knowledge about Apple's past and current designs.

**C.     Apple Will Suffer Harm Because Mr. Sherman Provides Consulting Services to Apple's Competitors.**

In addition to his current employment, Mr. Sherman has a history of working for or heading companies developing technology for use in products in direct competition with Apple. From 2007 and 2010, before founding DoubleTouch, Mr. Sherman was the Chief Technology Officer ("CTO") of Modu, Ltd., a company focused on developing mobile phones to compete with Apple's iPhone.  ▮ Modu's desire to compete with the iPhone was even documented in the press.  (Kim Decl. at ¶ 10.)  ▮

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO PERMIT ITAY SHERMAN TO REVIEW DESIGN MATERIALS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3082502

5

1   Before joining Modu, Mr. Sherman was the CTO for Texas Instruments Mobile
2   Connectivity Group, where he worked closely with Nokia, Motorola, and Sony Ericsson – all
3   competitors to Apple's products.  Mr. Sherman is an individual who is likely to continue to
4   specialize in technologies in which Apple competes.  (Dkt. 482-1.)
5   In addition to Mr. Sherman's intimate involvement with companies that are in competition
6   with Apple, he has ongoing consulting relationships with Apple's competitors. ████████
7   ████████████████████████████████████████████████████████████████████████████
8   ████████████████████████████████████████████████████████████████████████████
9   ██████████████████████████████████████████████████████████████████████
10  ████████████████████████████████████
11      ████████████████████████████████████████████████████████████████████
12  ████████████████████████████████████████████████████████████████████████████
13  ██████████████████████████████████████████████████████████████████████
14  ████████████████████████████████████████████████████████████████████████████
15  ████████████████████████████████████████████████████████████████████████████
16  ████████████████████████████████████████████████████████████████████████████
17  ████████████████████████████████████████████████████████████████████████
18  ██████████████████████████████████████████████████
19      ██████████████████████████████████████████████████████████████████
20  ████████████████████████████████████████████████████████████████████████████
21  ████████████████████████████████████████████████████████████████████████
22  ████████████████████████████████████████████████████████████████████████████
23  ████████████████████████████████████████████████████████████████████████████
24  ████████████████████████████████████████████████████
25  If Mr. Sherman were granted access to Apple's sensitive confidential materials, this
26  information would unavoidably become a part of his general knowledge and could be used to the
27  advantage of Apple's chief rivals.  "It is very difficult for the human mind to compartmentalize
28  and selectively suppress information once learned, no matter how well-intentioned the effort may

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO PERMIT ITAY SHERMAN TO REVIEW DESIGN MATERIALS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3082502

6

be to do so." *BASF*, 321 F. Supp. 2d at 1380.  Thus, Apple would be commercially harmed by the disclosure of its confidential documents and information to Mr. Sherman, who provides recent and ongoing consulting services to Apple's competitors regarding the same technology that is at issue in this case.

### D. Samsung Will Not Be Prejudiced Because Samsung Has Ample Time to Retain a Qualified Expert to Opine on Issues Related to Industrial Design.

Samsung will experience little prejudice if Mr. Sherman is denied access to Apple's confidential information.  As opening expert reports are not due until March 22, 2012, Samsung has enough time to retain another design expert.  Samsung could also choose to proceed with Mr. Sherman as an expert witness without showing him Apple confidential information.  Because there is enough time to retain another design expert and Mr. Sherman is still free to opine as to design, albeit without the benefit of Apple confidential documents, Samsung would suffer little prejudice in not being able to disclose Apple's confidential information to him.

Samsung suggests that any credible expert would "need to be someone with extensive experience in the mobile phone and mobile device markets."  (Samsung Mot. at 4.)  Samsung is free, however, to locate such an expert who is not *currently* the CEO of a company that designs and sells technology for such products, and who is not *currently* providing consulting services for a number of Apple's competitors.

## III. CONCLUSION

For the foregoing reasons, the injury to Apple from disclosure of its confidential information to Mr. Sherman, who engages in commercial activity and obtaining patent protection in areas that are competitive with and adverse to Apple's interests, far outweighs the slight inconvenience to Samsung of obtaining a different expert.  Accordingly, Apple respectfully requests that Samsung's motion be DENIED.

Dated:   December 15, 2011                     MORRISON & FOERSTER LLP

By:   */s/ Richard S.J. Hung*
       Richard S.J. Hung

Attorneys for Plaintiff
APPLE INC.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO PERMIT ITAY SHERMAN TO REVIEW DESIGN MATERIALS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3082502

7