1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                        SAN JOSE DIVISION

4

5

     APPLE INC., A CALIFORNIA     )  C-11-01846 LHK
6    CORPORATION,                 )
                                  )  SAN JOSE, CALIFORNIA
7                   PLAINTIFF,    )
                                  )  OCTOBER 13, 2011
8              VS.                )
                                  )  PAGES 1-104
9    SAMSUNG ELECTRONICS CO.,     )
     LTD., A KOREAN BUSINESS      )
10   ENTITY; SAMSUNG              )
     ELECTRONICS AMERICA,         )
11   INC., A NEW YORK             )
     CORPORATION; SAMSUNG         )
12   TELECOMMUNICATIONS           )
     AMERICA, LLC, A DELAWARE     )
13   LIMITED LIABILITY            )
     COMPANY,                     )
14                                )
                    DEFENDANTS.   )
15   ─────────────────────────────

16              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE LUCY H. KOH
17           UNITED STATES DISTRICT JUDGE

18

19

20            APPEARANCES ON NEXT PAGE

21

22

23

24   OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                     CERTIFICATE NUMBER 9595
25

                                                              1

1

2      A P P E A R A N C E S:

3      FOR PLAINTIFF          MORRISON & FOERSTER
       APPLE:                 BY:  HAROLD J. MCELHINNY,
4                                  MICHAEL A. JACOBS, AND
                                   RICHARD S.J. HUNG
5                             425 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94105
6
       FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
7      APPLE:                 HALE AND DORR
                              BY:  WILLIAM F. LEE
8                             60 STATE STREET
                              BOSTON, MASSACHUSETTS  02109
9

10     FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                              OLIVER & HEDGES
11                            BY:  KATHLEEN M. SULLIVAN
                              51 MADISON AVENUE, 22ND FLOOR
12                            NEW YORK, NEW YORK  10010

13                            BY:  VICTORIA F. MAROULIS,
                                   KEVIN P.B. JOHNSON AND
14                                 ANNA T. NEILL
                              555 TWIN DOLPHIN DRIVE
15                            SUITE 560
                              REDWOOD SHORES, CALIFORNIA  94065
16
                              BY:  MICHAEL T. ZELLER
17                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
18                            LOS ANGELES, CALIFORNIA  90017

19

20

21

22

23

24

25

                                                              2

```
 1    SAN JOSE, CALIFORNIA                OCTOBER 13, 2011
 2                  P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5              THE CLERK:  CALLING FIRST CASE NUMBER
 6    C-11-01846 LHK, APPLE INCORPORATED VERSUS SAMSUNG
 7    ELECTRONICS COMPANY LIMITED, ET AL.
 8              COUNSEL COME FORWARD, PLEASE, AND STATE
 9    YOUR APPEARANCES.
10              MR. MCELHINNY:  GOOD AFTERNOON, YOUR
11    HONOR.  HAROLD MCELHINNY, WILLIAM LEE, MIKE JACOBS
12    AND RICH HUNG ON BEHALF OF APPLE CORPORATION.
13              THE COURT:  GOOD AFTERNOON.
14              MS. SULLIVAN:  GOOD AFTERNOON, YOUR
15    HONOR.  KATHLEEN SULLIVAN HERE ON BEHALF OF
16    SAMSUNG, TOGETHER WITH MY COLLEAGUES FROM QUINN,
17    EMANUEL, MICHAEL ZELLER, KEVIN JOHNSON,
18    VICTORIA MAROULIS, AND ANNA NEILL.
19              THE COURT:  OKAY.  GOOD AFTERNOON.
20              MR. JOHNSON:  GOOD AFTERNOON, YOUR HONOR.
21              THE COURT:  SO LET ME ASK HOW YOU WOULD
22    LIKE TO PROCEED.
23              I, OF COURSE, HAVE MY OWN QUESTIONS FOR
24    YOU, BUT BASED ON ALL THE TECHNOLOGY YOU'VE
25    INSTALLED, I ASSUME YOU ALSO HAVE SOME PREPARED
```

```
1    PRESENTATIONS.  IS THAT CORRECT?
2              MR. MCELHINNY:  IT'S NOT OUR TECHNOLOGY,
3    YOUR HONOR.
4              THE COURT:  OKAY.  AND HOW DO YOU WANT TO
5    HANDLE ANY SEALING, NECESSARY SEALING OF THE
6    COURTROOM?
7              MR. MCELHINNY:  OUR -- OUR PRESENTATION,
8    I THINK, LARGELY DOES NOT DEAL WITH CONFIDENTIAL
9    INFORMATION, AND TO THE EXTENT THAT IT DOES, I
10   INTENDED TO DRAW YOUR HONOR'S ATTENTION TO SPECIFIC
11   EXHIBITS OR DOCUMENTS WITHOUT READING THEM INTO THE
12   RECORD.  THAT WAS HOW I PLANNED TO DO IT.
13             THE COURT:  OKAY.  WHAT ABOUT FOR
14   SAMSUNG?
15             MS. SULLIVAN:  YOUR HONOR, IF IT'S
16   ACCEPTABLE TO YOU, WE WOULD LIKE TO MAKE A
17   PRESENTATION.
18             WE HAVE A SET OF SLIDES.  WE WON'T GO
19   THROUGH THEM ALL, BUT WE'D LIKE TO HIT THE
20   HIGHLIGHTS WITH YOU AND, OF COURSE, BE OPEN TO YOUR
21   QUESTIONS AT ANY POINT.
22             BUT IF THAT WERE ACCEPTABLE, WE WOULD
23   WANT TO SHOW OUR PRESENTATION.
24             THE COURT:  WHAT'S THE LENGTH OF THE
25   PRESENTATION?
```

1          MS. SULLIVAN:  IT'S WAY TOO LONG, YOUR

2     HONOR, BUT WE ONLY INTEND TO SHOW YOU PORTIONS IT.

3          THE COURT:  SO WHAT'S THE ESTIMATED

4     LENGTH OF THAT PRESENTATION?

5          MS. SULLIVAN:  I THINK IF YOU WERE TO

6     GIVE US -- LET ME CONFER FOR A MOMENT.

7          THE COURT:  OKAY.

8          (DISCUSSION OFF THE RECORD BETWEEN

9     DEFENSE COUNSEL.)

10         MS. SULLIVAN:  WE THINK IT CAN BE DONE IN

11    30 MINUTES.

12         THE COURT:  THAT'S A LITTLE BIT LONGER

13    THAN I'D LIKE, BUT THAT'S FINE.

14         MS. SULLIVAN:  OKAY.  THANK YOU.

15         AND AS TO YOUR QUESTION ABOUT SEALING,

16    YOUR HONOR, WE INTEND TO BE CAREFUL NOT TO REFER TO

17    ANY SEALED DOCUMENT WHILE IN COURT, AND OBVIOUSLY

18    IF ANY CONFIDENTIAL INFORMATION DOES GET BROACHED,

19    WE WOULD RESPECTFULLY REQUEST THAT YOUR HONOR CLEAR

20    THE COURTROOM.

21         THE COURT:  OKAY.  IT SEEMS LIKE THAT IS

22    REALLY GOING TO COME UP ONLY IN ANY IRREPARABLE

23    HARM DISCUSSION.  I'LL HAVE SOME QUESTIONS ABOUT

24    THAT.

25         I GUESS IF YOU ALL CAN BE CAREFUL NOT TO

1    DISCLOSE ANYTHING THAT REQUIRES SEALING, THEN WE

2    CAN STILL HAVE THAT WITH THE OPEN PUBLIC.  OKAY?

3              MR. MCELHINNY:  THAT'S FINE, YOUR HONOR.

4              THE COURT:  OKAY.  I THINK THE MOVING

5    PARTY SHOULD GO FIRST.

6              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

7              I DO HAVE A BINDER FOR THE COURT.

8              THE COURT:  OKAY.

9              MR. MCELHINNY:  AND YOUR HONOR, I HAVE A

10   COUPLE FOR YOUR CLERKS IF THAT WOULD BE HELPFUL.

11             THE COURT:  OKAY.  THANK YOU.

12             (PAUSE IN PROCEEDINGS.)

13             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

14             APPLE HAS BROUGHT THIS PRELIMINARY

15   INJUNCTION, AS YOUR HONOR NOTED, IN ORDER TO

16   PREVENT THE CONTINUING INFRINGEMENT OF FOUR OF OUR

17   PATENTS AND TO HALT THE IRREPARABLE HARM WHICH

18   APPLE IS SUFFERING BETWEEN NOW AND WHEN WE CAN HAVE

19   THE TRIAL NEXT YEAR.

20             THERE ARE FOUR PATENTS THAT ARE AT ISSUE.

21   THREE OF THEM ARE DESIGN PATENTS, TWO OF THEM ARE

22   TELEPHONE PATENTS, AND ONE GOES TO THE TAB PRODUCT.

23             AND THEN WE HAVE A UTILITY PATENT, WHICH

24   WE CALL THE RUBBER BAND PATENT, OTHER PEOPLE HAVE

25   CALLED THE BOUNCE PATENT, WHICH GOES TO A LOOK AND

1    FEEL ASPECT OF THE OVERALL VISUAL PERSPECTIVE OF

2    THE PRODUCT, ALL FOUR OF THE PRODUCTS THAT ARE AT

3    ISSUE IN THIS MOTION.

4             ON DESIGN PATENTS, THE TEST IS A CLEAR

5    ONE SET OUT BY THE UNITED STATES SUPREME COURT, THE

6    WORLD FAMOUS GORHAM TEST THAT I'M SURE YOUR HONOR

7    KNOWS WELL.

8             IT'S IN THE EYE OF THE ORDINARY OBSERVER,

9    GIVING SUCH ATTENTION AS A PURCHASER USUALLY GIVES

10   TO DESIGNS THAT ARE SUBSTANTIALLY THE SAME, IF THE

11   RESEMBLANCE IS SUCH AS TO DECEIVE SUCH AN OBSERVER,

12   INDUCING HIM TO PURCHASE ONE SUPPOSING IT TO BE THE

13   OTHER, THE FIRST ONE PATENTED IS INFRINGED BY THE

14   OTHER.

15            YOU HAVE DECLARATIONS IN THE RECORD FROM

16   A NUMBER OF EXPERTS ON THE QUESTION OF INFRINGEMENT

17   OF THE DESIGN PATENTS AT ISSUE HERE, AND I THINK

18   THERE ARE SOME IMPORTANT HIGH LEVEL THINGS THAT I

19   WOULD LIKE TO CALL TO YOUR ATTENTION.

20            SAMSUNG'S EXPERT, A GENTLEMAN BY THE NAME

21   OF ITAY SHERMAN, CLEARLY APPLIES THE WRONG TEST.

22            IN HIS DECLARATION, HE SAYS THAT HE IS --

23   HE IS APPLYING SOMETHING WHICH HE CALLS THE

24   ORDINARY PURCHASER TEST.  THAT'S SET OUT

25   SPECIFICALLY IN HIS DECLARATION.  HE SAYS "APPLYING

1    THE ORDINARY PURCHASER TEST," AS OPPOSED TO THE

2    ORDINARY OBSERVER TEST.

3            HE DOESN'T EXPLAIN THE TEST.  HE DOESN'T

4    EXPLAIN WHAT THE NATURE OF THE TEST IS THAT HE IS

5    APPLYING.

6            BUT THERE IS CLEARLY, JUST AT THE

7    BEGINNING, AT LEAST ON MR. SHERMAN'S PART, AN

8    APPARENT MISUNDERSTANDING ABOUT WHAT THE LEGAL

9    STANDARD IS THAT THE COURT, AND ULTIMATELY THE

10   JURY, WILL BE APPLYING.

11           ANOTHER ELEMENT THAT IS CLEAR IS THAT

12   LIKELIHOOD OF CONFUSION AS TO THE SOURCE OF GOODS

13   IS NOT AN ELEMENT OF A DESIGN PATENT CASE.

14           AND, AGAIN, MR. SHERMAN IS CONFUSED ABOUT

15   THIS.

16           HE SPENDS SEVERAL DECLARATIONS -- SEVERAL

17   PARAGRAPHS OF HIS DECLARATION TALKING ABOUT WHETHER

18   OR NOT THERE'S LIKELY TO BE ANY CONFUSION IN THE

19   MARKETPLACE AS TO THE SOURCE.

20           BUT THAT'S NOT THE ELEMENT.  THAT'S NOT

21   THE -- THAT IS NOT AN ELEMENT OF THE CASE.  THE

22   FEDERAL CIRCUIT HAS SAID THAT QUITE CLEARLY IN THE

23   U-NET CASE, AND OTHERS.

24           THE CONFUSION IS THE CONFUSION BETWEEN

25   THE DESIGN OF THE CONFUSED -- OF THE ACCUSED

1    PRODUCT AND THE PATENTED DESIGN.

2             CUSTOMER CONFUSION, AS WE SEE IN

3    TRADEMARK CASES, IS NOT AN ELEMENT HERE.

4             THE COURT:  BUT LET ME ASK, THE LANGUAGE

5    THAT YOU JUST QUOTED DOES SAY, YOU KNOW,

6    SUBSTANTIAL SIMILARITIES SUCH THAT A CONSUMER WOULD

7    BE CONFUSED AND WOULD ACTUALLY BE INDUCED TO BUY

8    SOMETHING THAT THEY THINK IT IS BUT IT'S NOT.

9             MR. MCELHINNY:  IT DOES SAY THAT.

10            THE COURT:  UM-HUM.

11            MR. MCELHINNY:  AND THAT CLEARLY HAS

12   BEEN, OR AT LEAST AT ONE TIME WAS THE SOURCE OF

13   SOME CONFUSION AS TO THE ELEMENTS.

14            THE COURT:  UM-HUM.

15            MR. MCELHINNY:  BUT THAT'S WHY THE

16   FEDERAL CIRCUIT HAS GONE OUT OF ITS WAY IN SEVERAL

17   CASES.

18            THE CLEAREST EXPLANATION IS THE UNETTE

19   CASE BECAUSE THEY ACTUALLY ANSWER YOUR HONOR'S

20   QUESTION.  THAT'S AT 785 F.2D 1026.

21            AND WHAT THEY SAY IS THE QUESTION IS

22   WHETHER OR NOT A PURCHASER IS LIKELY TO CONFUSE THE

23   DESIGN OF THE ACCUSED PRODUCT WITH THE PATENTED

24   DESIGN THINKING THAT THEY ARE -- THAT THEY ARE

25   OBTAINING SOMETHING THAT WAS LAWFULLY DESIGNED AND

1    NOT, NOT ACTUALLY PREVIOUSLY PATENTED.

2           IT DOES NOT GO TO, IN THIS PARTICULAR

3    MOTION, IN THIS PARTICULAR CASE, THE QUESTION OF

4    WHETHER SOMEONE WOULD WALK INTO A STORE AND BUY A

5    SAMSUNG PRODUCT THINKING THAT THEY WERE BUYING AN

6    APPLE PRODUCT.  THAT IS NOT AN ELEMENT OF ANY OF

7    THE PATENTS THAT ARE BEFORE -- THE INFRINGEMENT

8    CLAIMS THAT ARE BEFORE YOUR HONOR.

9           THE COURT:  LET ME ASK A QUESTION.  THE

10   PROPOSED ORDER HAS THE GALAXY S 4G AND INFUSE 4G

11   AND THE GALAXY TAB 10.1 TABLET ALL BEING ENJOINED

12   FROM BEING SOLD IF THEY EMBODY THE '677, '087 AND

13   '889, BUT I JUST WANTED TO CLARIFY.

14          YOU'RE ONLY ASSERTING THE '889 AS TO THE

15   TABLET, AND ONLY ASSERTING THE '677 AND '087 AS TO

16   THE INFUSE 4 AND THE GALAXY S 4G.  IS THAT RIGHT?

17          MR. MCELHINNY:  THAT IS CORRECT.

18          THE COURT:  OKAY.

19          MR. MCELHINNY:  BUT, AGAIN, THERE'S

20   ANOTHER PHONE THAT GETS LOST IN THE SHUFFLE HERE,

21   THE DROID CHARGE, AND ON THIS MOTION, WE ARE NOT

22   ACCUSING IT OF A DESIGN PATENT INFRINGEMENT.

23          BUT WE ARE ACCUSING IT OF INFRINGEMENT OF

24   THE '381.

25          OTHERWISE WHAT YOUR HONOR SAYS IS EXACTLY

1    CORRECT.

2              THE COURT:  IS THE DESIGN PATENT '889

3    PRIOR ART TO THE OTHER TWO DESIGN PATENTS, THE '677

4    AND THE '087?

5              MR. MCELHINNY:  THEY ARE NOT, YOUR HONOR.

6              THE COURT:  OKAY.

7              MR. MCELHINNY:  THE OTHER OVERALL LESSONS

8    THAT THE FEDERAL CIRCUIT TEACHES US -- AND AGAIN,

9    THESE ARE IMPORTANT -- THE REASON I RAISE THIS IS

10   NOT TO GIVE YOUR HONOR A TUTORIAL IN PATENT LAW,

11   I'M SURE YOU HAVE NEITHER THE TIME OR THE NEED FOR

12   THAT, BUT IT'S BECAUSE THEY ARE THE THEMES THAT RUN

13   THROUGH SAMSUNG DEFENSE AND THEY ARE ERRONEOUS AS A

14   MATTER OF LAW.

15             THE OTHER THEME IS THE FEDERAL CIRCUIT

16   MAKES IT CLEAR THAT IN DETERMINING WHETHER OR NOT

17   THERE IS INFRINGEMENT, THE ORDINARY OBSERVER IS

18   REQUIRED TO COMPARE THE ENTIRE DESIGN, TO COMPARE

19   THE DESIGN AS A WHOLE.

20             THE QUICKSAND OF DEFENSES IS TO TRY TO

21   LURE THE OBSERVER INTO AN ELEMENT-BY-ELEMENT DESIGN

22   OR LOOKING AT IT IN TERMS OF CONCEPTS AS OPPOSED TO

23   ACTUALLY HOLDING UP THE PATENT AND COMPARING THE

24   DESIGN OF THE ACCUSED PRODUCT.

25             AND THE FEDERAL CIRCUIT HAS, AGAIN, MADE

1    IT CLEAR TIME AFTER TIME THAT -- DIRECTING THE

2    LOWER COURTS NOT TO GET DRAWN INTO THAT QUICKSAND,

3    BUT TO DO THE OVERALL ASSESSMENT IN ORDER.

4              AND FINALLY, THE COURT SAYS IN ORDER TO

5    DETERMINE WHETHER OR NOT THERE'S AN INFRINGEMENT,

6    OR ALSO FOR INVALIDITY ISSUES, YOU HAVE TO COMPARE

7    ALL OF THE FIGURES OF EITHER THE PATENT AT ISSUE OR

8    IN THE ALLEGED PRIOR ART IN ORDER TO DETERMINE

9    WHETHER OR NOT THE OVERALL DESIGN IS SUBSTANTIALLY

10   THE SAME AS THAT TO WHICH YOU'RE COMPARING IT.

11             IN YOUR BINDER AT TAB 4, WHAT WE HAVE

12   LAID OUT, AS SUGGESTED BY THE FEDERAL CIRCUIT --

13   THE FEDERAL CIRCUIT IN A NUMBER OF CASES SAYS THAT

14   THE BEST WAY TO GET THIS PICTURE IS TO TAKE A PIECE

15   OF THE PRIOR ART WHICH THE OTHER SIDE RELIES ON OR

16   SPENDS A LOT OF TIME TALKING ABOUT, TO COMPARE IT

17   TO THE PATENTED DESIGN AND THEN TO COMPARE THE

18   PATENTED DESIGN TO THE ACCUSED PRODUCT.

19             WHAT THE FEDERAL CIRCUIT SAYS IS, BY

20   DOING THAT, WHAT IT NOVEL ABOUT THE DESIGN

21   IMMEDIATELY BECOMES CLEAR AND THE TRIER OF FACT CAN

22   TELL WHETHER OR NOT THE ACCUSED DEVICE IS MORE LIKE

23   THE PATENT OR ACTUALLY IS MORE LIKE THE PRIOR ART.

24             AND I'M NOT GOING TO RUN THROUGH EACH OF

25   THESE, BUT WHAT WE HAVE PROVIDED FOR YOUR HONOR IS

1    A SIDE -- A THREE-WAY COMPARISON.

2              THE LG CHOCOLATE IS ONE OF SAMSUNG'S

3    FAVORITE BECAUSE IT HAS A BLACK SCREEN, AND THEY

4    TALK ABOUT IT EXTENSIVELY IN THEIR BRIEF, SO WE

5    HAVE COMPARED THE LG CHOCOLATE TO THE DESIGN, THE

6    '677, AND TO THE GALAXY 4G.

7              ON THE NEXT PAGE, WE COMPARED THE

8    CHOCOLATE TO THE '677 AND TO THE INFUSE 4G.

9              AND WHAT WE THINK YOUR HONOR WILL SEE,

10   AND WE THINK THE TRIER OF FACT WILL SEE, IS THE

11   SAME THING THAT ALL OF THE ORDINARY OBSERVERS WHO

12   HAVE EVER LOOKED AT THESE PHONES HAVE CONCLUDED.

13             ONE, THAT THE APPLE DESIGNS, WHEN

14   MR. JOHNSON AND HIS TEAM BROUGHT THOSE INTO THE

15   MARKETPLACE, WERE EARTHSHAKINGLY NEW, COMPLETELY

16   NOVEL.

17             AS ONE OF -- AS ONE OF SAMSUNG'S

18   WITNESSES SAID, MR. WAGNER, WHO I'LL TALK ABOUT A

19   LOT, MR. WAGNER SAID ON THE IPAD PATENT, THAT

20   STEVE JOBS AND APPLE CREATED AN ENTIRELY NEW

21   PRODUCT CATEGORY WITH THE DESIGN OF THAT PRODUCT.

22             AND AT TAB 1 WE HAVE PUT IN JUST A FEW OF

23   THE EXCERPTS THAT ARE -- ACTUALLY WE PUT MORE IN

24   THE RECORD SHOWING BOTH WHAT THE INITIAL REACTION

25   WAS TO THESE DESIGNS WHEN THEY CAME OUT IN THE

13

1    PUBLIC, AND THE ACCEPTANCE; AND THEN AT TAB 2, WHAT

2    THE PUBLIC REACTION WAS WHEN SAMSUNG ISSUED ITS

3    PRODUCTS AFTER THESE DESIGNS CAME OUT AND WHAT

4    ORDINARY OBSERVERS IN THE WORLD ACTUALLY SAW AT THE

5    TIME AND THE REACTIONS THAT THEY HAD.

6          ANOTHER IMPORTANT POINT IS WE HAVE

7    SUPPORTED OUR CASE WITH, WITH THE TESTIMONY OF

8    EXPERTS, COOPER WOODRING IS THE ONE, AND

9    MR. WOODRING OFFERS THE CONCLUSION, AFTER COMPARING

10   THESE, THAT BASED ON HIS EXPERTISE AND THE NUMBER

11   OF CASES IN WHICH HE'S TESTIFIED IN HIS

12   PROFESSIONAL CAREER, THAT AN ORDINARY OBSERVER

13   WOULD FIND THE DESIGNS TO BE SUBSTANTIALLY

14   IDENTICAL AS THE ACCUSED DEVICES.

15         THE COURT:  WHY DO WE NEED EXPERT

16   TESTIMONY ON WHAT AN ORDINARY OBSERVER WOULD FIND?

17   ISN'T THAT SORT OF A CONTRADICTION?

18         MR. MCELHINNY:  THE QUESTION -- THE WAY

19   YOU PHRASED THE QUESTION IS WHETHER OR NOT YOUR

20   HONOR NEEDS IT.

21         BUT THE ANSWER IS -- I MEAN, IT'S THE

22   SAME AS A PROFESSIONAL EXPERT.  WOULD IT BE HELPFUL

23   TO HAVE SOMEONE WHO HAS AN EXPERTISE IN DESIGN

24   DISCUSSING, A, WHETHER THESE DESIGNS ARE NOVEL,

25   WHAT THE DIFFERENCES ARE AND WHAT THE SIMILARITIES

                                                      14

1    ARE, AND TO BRING, BASED ON EXPERIENCE, WHAT AN

2    ORDINARY OBSERVER.

3            AND IF YOUR HONOR DOESN'T NEED IT, YOU

4    DON'T NEED IT.

5            BUT IN TERMS OF PREDICTING, WHICH IS WHAT

6    WE'RE DOING HERE, PREDICTING WHAT THE RESULT WILL

7    BE AT TRIAL, WE THINK IT IS HELPFUL BECAUSE IT

8    BRINGS A PROFESSIONAL VIEW, IN ADDITION TO THESE

9    NEWSPAPER ARTICLES, WHICH YOUR HONOR MAY OR MAY NOT

10   CREDIT, OF WHAT PEOPLE IN THE REAL WORLD WHO ARE

11   INVOLVED IN THESE KINDS OF DECISIONS ACTUALLY

12   CONCLUDE UPON SEEING THESE OBJECTS.

13           WHAT IS IMPORTANT, HOWEVER, IS THAT THERE

14   IS NO CONTRADICTORY, THERE IS NO REBUTTAL TESTIMONY

15   FROM ANYONE AT SAMSUNG.

16           MR. SHERMAN GOES THROUGH AN ANALYSIS,

17   WHICH I'LL TALK ABOUT IN A MOMENT, BUT MR. SHERMAN

18   NEVER TELLS YOU, OR OFFERS AN OPINION, NO ONE FROM

19   SAMSUNG OFFERS AN OPINION THAT SAYS AN ORDINARY

20   OBSERVER WOULD NOT FIND THESE THINGS SUBSTANTIALLY

21   IDENTICAL.

22           THAT TESTIMONY FROM SAMSUNG IS NOT IN THE

23   RECORD BEFORE YOU.

24           WHAT MR. SHERMAN DID, AGAIN, IS

25   EXACTLY -- VIOLATES ALL OF THE INSTRUCTIONS THAT

1    THE FEDERAL CIRCUIT HAS SET OUT.

2         WHAT MR. SHERMAN DOES IS HE DOES A

3    CATEGORY-BY-CATEGORY ANALYSIS, AN

4    ELEMENT-BY-ELEMENT ANALYSIS, AND TRIES TO DEFINE

5    EVERY ELEMENT OF THIS DESIGN AS FUNCTIONAL SO THAT

6    HE CAN THEN DISREGARD IT FOR THE PURPOSE OF HIS

7    ANALYSIS.

8         HE ALSO THEN GOES ON AN

9    ELEMENT-BY-ELEMENT DESIGN AND TRIES TO TALK ABOUT

10   WHAT WE THINK ARE TRIVIAL DIFFERENCES IN ELEMENTS,

11   INDIVIDUAL ELEMENTS.

12        AND, AGAIN, I KNOW YOUR HONOR HAS READ

13   THESE CASES.  IT'S HARD TO COUNT THE NUMBER OF

14   FEDERAL CIRCUIT CASES THAT HAVE SAID TO DISTRICT

15   COURTS, "DON'T GO THAT WAY."

16        THEY'RE SAYING, OF COURSE, ANY DESIGN IS

17   GOING TO HAVE TRIVIAL DIFFERENCES BECAUSE NO ONE IS

18   GOING TO BE COMPLETELY IDENTICAL, AND IT'S AN ERROR

19   TO TRY TO LOOK AT THINGS ON A LITTLE

20   ELEMENT-BY-ELEMENT PIECE BECAUSE WHAT YOU ARE

21   LOOKING AT IS THE OVERALL DESIGN.

22        ON TOP OF THAT, AGAIN -- I'M PICKING ON

23   POOR MR. SHERMAN BECAUSE HE'S THE INFRINGEMENT

24   GUY -- BUT HE USES THE WRONG LEGAL DEFINITION OF

25   FUNCTION.

16

1          HE ELIMINATES ALMOST EVERY ELEMENT, EVERY

2    PART OF ANY OF THESE DESIGNS BECAUSE HE SAYS IT

3    SERVES A FUNCTION.  THE BLACK COVER HIDES WHAT'S

4    INSIDE.  IT SERVES A FUNCTION AND, THEREFORE, IT'S

5    FUNCTIONAL.

6          THE ROUNDED CORNER STOPS IT FROM GETTING

7    CAUGHT ON YOUR POCKET AND, THEREFORE, IT'S

8    FUNCTIONAL AND I DON'T HAVE TO --

9          AND AT THE END OF THE DAY, HE HAS

10   DETERMINED THAT EVERY LITTLE PIECE OF THIS IS

11   FUNCTIONAL.

12         BUT THAT IS EXACTLY THE WRONG LEGAL

13   DEFINITION OF WHAT FUNCTIONAL IS, AND IT'S ONE

14   THAT'S BEEN REJECTED OVER AND OVER BY THE FEDERAL

15   CIRCUIT BECAUSE THE FEDERAL CIRCUIT SAYS IT'S

16   FUNCTIONAL IF THE DESIGN IS DICTATED BY THE USE.

17         THE COURT:  I AGREE WITH YOU ON THIS

18   POINT.

19         MR. MCELHINNY:  THANK YOU, YOUR HONOR.

20         THE COURT:  SO MOVE ON --

21         MR. MCELHINNY:  I'LL MOVE ON.

22         THE COURT:  -- TO SOMETHING ELSE.

23         THANK YOU.

24         MR. MCELHINNY:  HE ALSO MAKES THE

25   ARGUMENT WHICH, AGAIN, OUR REBUTTAL EXPERTS REJECT

17

1  OUT OF HAND, THAT MINIMALISM IS NOT -- AND I'M NOT

2  GOING TO WASTE MUCH TIME ON THIS, BUT HE SAYS

3  MINIMALISM IS NOT ENTITLED TO PROTECTION.

4         AGAIN, ANYONE WHO'S BEEN IN DESIGN KNOWS

5  THAT IT IS 15 TIMES HARDER TO DESIGN SOMETHING THAT

6  IS SIMPLE AND EASY TO USE AND BEAUTIFUL THAN IT IS

7  TO DO SOMETHING THAT IS COMPLEX, AND THAT'S

8  MR. BRESSLER'S DECLARATION THAT WAS SUBMITTED TO

9  YOU IN RETURN.

10         SO AT THE END OF THE DAY, IF MR. SHERMAN

11  WAS WRONG ABOUT FUNCTIONAL, IF HE'S WRONG ABOUT HIS

12  ELEMENT-BY-ELEMENT ANALYSIS, IF HE'S WRONG ABOUT

13  MINIMALISM, THERE IS NOTHING IN THIS RECORD THAT

14  APPLIES THE CORRECT STANDARD THAT DISAGREES WITH

15  THE OVERWHELMING EVIDENCE THAT WE'VE PROVIDED OF

16  INFRINGEMENT.

17         ON VALIDITY, AGAIN, IT'S A WRONG

18  ANALYSIS.  THE FEDERAL CIRCUIT HAS ABOUT FIVE CASES

19  THAT SAY WHEN YOU'RE ATTEMPTING TO PROVE

20  INVALIDITY, WHAT YOU DO IS YOU COME UP WITH A PIECE

21  OF ART WHICH BECOMES THE -- WHAT THEY CALL THE

22  BASIC REFERENCE, AND THAT BASIC REFERENCE IS

23  SUPPOSED TO BE SUBSTANTIALLY IDENTICAL TO YOUR

24  DESIGN.

25         AND THEN WORKING FROM THAT BASIC

1    REFERENCE, YOU THEN CAN BRING IN AN EXPERT WHO CAN

2    SAY IT WOULD HAVE BEEN OBVIOUS TO TWEAK THIS OR

3    TWEAK THAT.

4             YOU WILL NOT FIND IN SAMSUNG'S PLEADINGS

5    ANYWHERE WHERE THEY HAVE IDENTIFIED ANY PIECE OF

6    PRIOR ART AS A BASIC REFERENCE TO ANY OF OUR

7    PATENTS.

8             INSTEAD THEY DO THEY EXACTLY WHAT THE

9    FEDERAL CIRCUIT IN L.A. GEAR SAID YOU CAN'T DO,

10   WHICH IS THROW UP A COLLAGE, THROW UP A BUNCH OF

11   WRITINGS OR PICTURES, STICK THEM UP ON THE WALL AND

12   SEE IF SOMETHING WILL STICK, OR TRY TO CREATE A

13   COMPENDIUM OF LITTLE PIECES OF PRIOR ART.

14            THEY NEVER DO THE ANALYSIS THAT THE

15   FEDERAL CIRCUIT HAS ORDERED AS THE ONLY ANALYSIS

16   THAT'S CORRECT IN ORDER TO DO AN INVALIDITY

17   DETERMINATION.

18            THE COURT:  WHAT ABOUT THE 1994

19   KNIGHT-RIDDER?

20            MR. MCELHINNY:  THAT'S ON THE TAB.

21            THE COURT:  UM-HUM.

22            MR. MCELHINNY:  THAT'S ON THE TAB.

23            AND IF YOUR HONOR LOOKS AT -- I'M GOING

24   TO JUMP A LITTLE BIT AHEAD HERE, BUT IF YOUR HONOR

25   LOOKS AT THE TAB -- IF YOU LOOK AT TAB 8 OF THE

1    BINDER THAT I GAVE YOU, ON THE FIRST PAGE YOU'LL

2    SEE A PAGE-BY-PAGE COMPARISON WITH THE '889 PATENT

3    AND THE 1981 FIDLER PROTOTYPE, AND THEN ON THE NEXT

4    PAGE YOU'LL SEE THE '889 AND THE 1994 FIDLER

5    PROTOTYPE.

6            WHAT IS IMMEDIATELY APPARENT, AND

7    FRANKLY, COULDN'T BE MORE DIFFERENT, AND, IN FACT,

8    IS WHAT MADE THE IPAD SUCCESSFUL, IS THAT THE

9    KNIGHT-RIDDER MATERIALS WERE PICTURE FRAMES.  THEY

10   WERE THE STANDARD PRIOR ART FRAMED TABLET.  IT'S AN

11   INSET WITH AN OPAQUE FRAME AROUND THE EDGES.

12           IT WAS WHAT THE MARKET HAD ABSOLUTELY

13   REJECTED, NO ONE WAS BUYING.  IT'S TRUE ABOUT BOTH

14   OF THESE.

15           IT'S ALSO TRUE THAT THE RIDGE AROUND IT

16   WAS ASYMMETRICAL, AND IT'S ALSO THE SIDE PROFILE

17   THAT'S SUBSTANTIALLY DIFFERENT.

18           BUT THERE -- WE'RE NOT QUESTIONING -- IF

19   YOU LOOK AT -- I'M SORRY.

20           IF YOU LOOK AT TAB 3, WHICH IS WHAT WE

21   CALL SAMSUNG BEFORE AND AFTER, AND IN EACH OF THE

22   CASES WE GIVE YOU PICTURES OF WHAT SAMSUNG'S

23   PRODUCTS LOOKED LIKE BEFORE APPLE'S DESIGNS WERE

24   PUBLISHED AND ITS PRODUCTS BEGAN TO SHOW UP ON THE

25   MARKET.

```
 1              AND WE GIVE YOU A PICTURE OF WHAT THEIR

 2    PRODUCTS LOOK LIKE TODAY.

 3              AND IF YOU LOOK AT THEIR TABLET PICTURE,

 4    IT'S NOT THAT -- THE OLD ONE IS NOT THAT DIFFERENT

 5    FROM THE KNIGHT-RIDDER.  IT'S A FRAMED TABLET,

 6    COMPLETELY UNSUCCESSFUL.

 7              WHAT I DIDN'T TALK ABOUT BEFORE BUT I

 8    WANT TO PUT IN HERE IS THE, THE CONCEPT OF

 9    SECONDARY CONSIDERATIONS IN CASE YOUR HONOR NEEDS

10    TO GET TO THAT POINT.

11              BUT WE HAVE PUT INTO THE RECORD MY

12    FAVORITE QUOTE.  WHEN THE IPAD CAME OUT, THE

13    NEW YORK TIMES SAID "APPLE IS FOLLOWING THE TABLET

14    LIKE A" FLAME -- "LIKE A MOTH TO A FLAME AND IT

15    WILL BE UNSUCCESSFUL."  THEY PREDICTED IT WOULD BE

16    UNSUCCESSFUL.

17              AND NOW, LITERALLY, YOU CANNOT PICK UP A

18    NEWSPAPER TODAY WITHOUT SEEING THAT THE WORLD --

19    THE JUDGMENT THAT THE WORLD HAS FINALLY PASSED ON

20    THESE DESIGNS AND THE DIFFERENCE THAT THEY MAKE IN

21    THIS PRODUCT.

22              WE CONTINUE.  I'VE GOT -- I'M NOT GOING

23    TO TAKE YOUR TIME UNLESS YOU'VE GOT QUESTIONS.

24              WE DO A SIDE-BY-SIDE COMPARISON.  WE GIVE

25    YOU THE PICTURE FOR EVERY PIECE OF PRIOR ART WHICH
```

21

1    THEY DISCUSSED IN THEIR BRIEF, AND I'M PREPARED TO

2    DISCUSS IT IF YOUR HONOR HAS QUESTIONS, I MAY DO IT

3    ON REBUTTAL.

4              THE COURT:  NO.

5              LET ME ASK YOU, I DIDN'T SEE MUCH, IF

6    ANY, BRIEFING REGARDING IRREPARABLE HARM IN YOUR

7    MOVING PAPERS.  WHY IS THAT?

8              I SAW A LOT IN THE REPLY, BUT NOT A LOT

9    IN THE MOTION.

10             MR. MCELHINNY:  FRANKLY, WE -- WELL, WE

11   THOUGHT WE HAD COVERED IT IN THE MOVING PAPERS.

12             THE COURT:  UM-HUM.

13             MR. MCELHINNY:  I MEAN, WE DIDN'T KNOW

14   WHAT ARGUMENTS WERE GOING TO COME BACK.

15             THE COURT:  I COULDN'T FIND IT IN THE

16   MOVING PAPERS.

17             MR. MCELHINNY:  WELL, I'M SORRY, YOUR

18   HONOR.

19             BUT WHAT WE SHOWED WAS THESE COMPANIES

20   ARE HEAD-TO-HEAD COMPETITORS.

21             THE COURT:  OKAY.

22             MR. MCELHINNY:  AND THAT THE DESIGN OF

23   OUR PRODUCTS IS CRUCIAL TO OUR SUCCESS, THAT WE'VE

24   INVESTED HUNDREDS OF MILLIONS OF DOLLARS IN

25   ADVERTISING THAT ACTUALLY DO THE FACE-TO-FACE -- I

1    MEAN THAT ACTUALLY -- WE CALL IT PRODUCT AS HERO,

2    THAT ACTUALLY ADVERTISE OUR PRODUCTS AS THE DRIVING

3    FORCE, AND WE SHOWED INFRINGEMENT.

4              AND AS THE CASE WHICH I SENT TO YOUR

5    HONOR YESTERDAY THAT THE FEDERAL CIRCUIT JUST CAME

6    DOWN, WHEN YOU HAVE HEAD-TO-HEAD COMPETITORS,

7    COMPETITION, AND YOU HAVE COMPETING PRODUCTS, AND

8    YOU HAVE A PRODUCT THAT ELIMINATES DESIGN, THAT'S

9    WHAT -- THAT IS WHAT IS SO UNFAIR ABOUT THIS, WHICH

10   IS THAT SAMSUNG HAS ELIMINATED DESIGN AS A BASIS ON

11   WHICH WE CAN COMPETE WITH OUR HEAD-TO-HEAD

12   COMPETITOR.

13             AND THAT IS IRREPARABLE HARM.

14             NOW, I CONCEDE THAT OUR IRREPARABLE HARM

15   CASE GOT A LOT BETTER WHEN WE TOOK MR. WAGNER'S

16   DEPOSITION, AND I THINK WE BOTH CAN BE PRETTY

17   CONFIDENT THAT IF MR. WAGNER TESTIFIES AT TRIAL, IT

18   WILL BE ON OUR SIDE OF THE CASE, BECAUSE WHAT

19   MR. WAGNER CONCEDED IS THAT WE HAVE HEAD-TO-HEAD

20   COMPETITION; HE HAS CONCEDED THAT WE LOST MARKET

21   SHARE; BUT THE MOST IMPORTANT THING THAT HE SAID

22   THAT JUST, I THINK, IS OPEN AND SHUT HERE, WHICH IS

23   THAT -- I WANT TO NOT GET INTO CONFIDENTIAL

24   INFORMATION.

25             A LARGE PERCENTAGE OF THE AMERICAN PUBLIC

1    HAS YET TO CHOOSE A SMART PHONE.

2              AND WHAT HE SAID IS THAT THERE IS A

3    BATTLE GOING ON BETWEEN THE ANDROID OPERATING

4    SYSTEM AND THE IOS, AND HE SAID THAT ONCE PEOPLE

5    MAKE THAT CHOICE, THEY REMAIN LOYAL TO THAT

6    OPERATING SYSTEM AND THEY ARE LIKELY TO MAKE THEIR

7    FUTURE PURCHASES IN THAT ENVIRONMENT.

8              AND WHEN HE WAS ASKED THE QUESTION ABOUT

9    WHETHER OR NOT THEN THERE WAS A DANGER OF LOST

10   FUTURE SALES, HE ADMITTED THAT THERE WAS.

11             AND THEN, BECAUSE HE'S OBVIOUSLY ON THE

12   HOOK HERE BECAUSE HE'S GOING TO HAVE TO TESTIFY

13   THAT ALL THIS IS SPECULATIVE BY THE TIME WE GET TO

14   TRIAL, HE THEN SAID BUT CALCULATING THAT WILL

15   DEPEND ON FUTURE UNCERTAINTIES, THE FUTURE

16   UNCERTAINTY OF THE MARKETPLACE, THE FUTURE

17   UNCERTAINTY OF WHETHER APPLE CAN MAINTAIN ITS HIGH

18   LEVEL OF LOYALTY, AND HE LITERALLY DEFINED WHAT THE

19   FEDERAL CIRCUIT CALLS THE IRREPARABLE INJURY OF

20   LOST FUTURE SALES.

21             AND THEN NOT FINISHED THERE, HE TESTIFIED

22   THAT WHEN HE BOUGHT HIS APPLE, HE DIDN'T BUY ONE OF

23   THEM, HE BOUGHT SIX OF THEM SO THAT HE COULD BUY

24   THE FACE TIME APPLICATION FOR EVERY MEMBER OF HIS

25   FAMILY.

1          AND SO WHAT HE GOT US INTO IS THE AREA OF

2     CONVOYED SALES.  HE GOT US INTO THE AREA OF

3     APPLICATIONS.  HE GOT US INTO THE FUTURE

4     APPLICATIONS AND THE LOSS OF THAT INCOME, ALL OF

5     WHICH -- THERE ARE LITERALLY -- I COULD NOT BE --

6     I'M SURE I'LL BE CORRECTED BY THEM AT A MINIMUM,

7     BUT THERE COULD NOT BE A MORE TEXTBOOK DEFINITION

8     OF IRREPARABLE INJURY IN A PATENT CONTEXT, TWO

9     HEAD-TO-HEAD COMPETITORS LOSING CURRENT MARKET

10    VALUE, LOSING FUTURE SALES WHICH WILL TURN ON

11    SPECULATIVE FUTURE EVENTS IN ORDER TO BE ABLE TO

12    VALUE.

13          AND IN ADDITION, ADDITIONAL AREAS OF

14    CONVOYED SALES.

15          YOU KNOW.  YOU'RE AN EXPERIENCED -- I

16    MEAN, YOU'VE DONE THIS.

17          THE COURT:  DOESN'T THIS ALL SOUND LIKE

18    MONEY, THOUGH?  COULDN'T YOU HAVE YOUR EXPERT DO A

19    CALCULATION OF WHAT ACCESSORIES COULD BE PURCHASED,

20    WHAT OTHER APPLE PRODUCTS MIGHT BE PURCHASED --

21          MR. MCELHINNY:  IT'S A --

22          THE COURT:  -- WHAT DOWNSTREAM FUTURE

23    APPLE SMART PHONES --

24          MR. MCELHINNY:  I'M SORRY.  THAT'S

25    EXACTLY WHAT I WAS ABOUT TO SAY TO YOU, WHICH IS IN

1    THEORY, SOME OF THAT CAN BE VALUED.

2            BUT YOU KNOW THAT WHEN WE GET TO TRIAL,

3    SAMSUNG'S POSITION WILL BE THAT ALL FUTURE SALES

4    ARE SPECULATIVE, THAT HOW MANY APPS PEOPLE WOULD

5    HAVE BOUGHT IN THE FUTURE DEPEND ON WHAT APPS ARE

6    WRITTEN IN THE FUTURE, WHAT'S AVAILABLE TO THEM,

7    WHAT THE PRICING IS, AND THAT ALL OF THAT WAS

8    SPECULATIVE.

9            AND WE WILL BE FIGHTING A BATTLE IN IN

10   LIMINE MOTIONS AND DAUBERT MOTIONS IN FRONT OF YOUR

11   HONOR IN WHICH YOU WILL BE DETERMINING THE

12   BOUNDARIES OF THIS LOST FUTURE INCOME STREAM WHICH

13   YOU WILL ALLOW US TO RECOVER.

14           BUT THERE WILL BE ELEMENTS OF IT --

15   MR. WAGNER SAID THERE WILL BE ELEMENTS OF IT THAT

16   ARE NOT RECOVERABLE UNDER CURRENT DAMAGE LAW IN THE

17   UNITED STATES.

18           THE COURT:  LET ME ASK, IS YOUR CLAIM FOR

19   IRREPARABLE HARM FOR THE TABLET DESIGN PATENT, THE

20   '889, IS THAT THE SAME CLAIM OF IRREPARABLE HARM

21   FOR THE TWO SMART PHONE, THE '087 AND THE '677?

22           MR. MCELHINNY:  IT'S THE SAME TYPE --

23   YES, YOUR HONOR, IT'S THE SAME TYPES OF INJURY.

24           THE COURT:  OKAY.  I DIDN'T SEE MUCH

25   IRREPARABLE HARM ARGUMENT, IF ANY, WITH REGARD TO

1    THE '381 UTILITY PATENT.  IT SEEMS LIKE YOUR CLAIMS

2    ARE MORE TOWARDS THE PHYSICAL APPEARANCE, THE

3    DESIGN, THE BRAND, ET CETERA.

4              DO YOU HAVE ANYTHING WITH REGARD TO THE

5    UTILITY PATENT?

6              MR. MCELHINNY:  YOUR HONOR, NOW I'M --

7    YESTERDAY WE FILED -- I DON'T WANT TO GET TOO

8    DEEPLY INTO THIS -- BUT WE FILED A MOTION WITH YOUR

9    HONOR IN ORDER TO AUGMENT THE RECORD ABOUT

10   DOCUMENTS THAT WERE PRODUCED TO US UNDER ORDER BY

11   THE MAGISTRATE JUDGE BECAUSE THEY HADN'T BEEN

12   PRODUCED THE FIRST TIME AND AFTER THE DATE HE SET,

13   AND IF YOUR HONOR HAS A CHANCE TO LOOK AT THOSE

14   DOCUMENTS, THEY GO DIRECTLY TO THIS ISSUE OF THE

15   '381 PATENT.

16             THEY GO DIRECTLY TO YOUR HONOR'S QUESTION

17   ABOUT WHY IT'S VALUABLE.

18             THEY GO DIRECTLY TO WHAT IT WAS THAT

19   SAMSUNG HOPED TO ACCOMPLISH IN THAT ISSUE.

20             AND I WILL NOTE, BECAUSE THIS ALSO TIES

21   TO THE BALANCE OF THE --

22             THE COURT:  BUT YOU'RE CONCEDING, THEN,

23   THAT WHAT YOU SUBMITTED SO FAR DIDN'T REALLY

24   ADDRESS IRREPARABLE HARM OF THE '381?  I HAVE TO

25   LOOK AT WHAT YOU FILED YESTERDAY.

1           MR. MCELHINNY:  NO.  I JUST WANTED TO

2      MAKE SURE I DIDN'T LOSE THAT BIG POINT.

3                THE COURT:  ALL RIGHT.

4           MR. MCELHINNY:  I HAVE -- I THINK I HAVE

5      CONSISTENTLY DESCRIBED TO YOUR HONOR THE FACT THAT

6      THE NATURE OF THE '381 PATENT IS THAT IT IS A LOOK

7      AND FEEL PATENT.

8                IT IS A PATENT, LIKE THE DESIGN, THAT

9      MAKES THE PRODUCT ATTRACTIVE TO A CUSTOMER.

10               AND SO THE EFFECT OF LOSING -- OF LOSING

11     THE ABILITY TO COMPETE ON THOSE KINDS OF GRAPHICAL

12     INTERFACE EFFECTS IS THE SAME AS LOSING THE DESIGN

13     PATENT.

14               I NEED TO SAY ONE MORE THING ABOUT

15     IRREPARABLE HARM THOUGH.

16               THE COURT:  OKAY.

17          MR. MCELHINNY:  I DON'T WANT TO HAVE A

18     HEARING HERE IN WHICH WE DON'T TALK ABOUT CABBAGES,

19     BECAUSE THE OTHER ELEMENT OF IRREPARABLE HARM IS

20     SAMSUNG'S COUNSEL HAS TOLD YOU THAT THESE PRODUCTS

21     WILL NOT BE THE PRODUCTS THAT WILL BE IN THE

22     MARKETPLACE AT THE TIME WE HAVE A TRIAL.  THEY TURN

23     OVER TOO QUICKLY.

24               IN THE AUSTRALIA HEARING, WHICH YOUR

25     HONOR MAY HAVE HEARD THE AUSTRALIAN JUDGE BANNED

1    THE -- ISSUED A PRELIMINARY INJUNCTION AND BANNED

2    THE TABLET FROM AUSTRALIA YESTERDAY.

3            COUNSEL FOR SAMSUNG IN THERE SAID "WE'RE

4    NOT GOING TO BE FIGHTING ABOUT THE TABLET 1 BY THE

5    TIME WE GET TO TRIAL IN THIS CASE.  WE'RE GOING TO

6    BE TALKING ABOUT THE 2.1," BECAUSE THESE THINGS

7    TURN OVER, AS MR. VERHOEVEN SAID WHEN HE USED TO

8    COME HERE, THAT THEY TURN OVER LIKE CABBAGES.

9            SO PART OF THE IRREPARABLE INJURY HERE,

10   IN ADDITION TO THE THINGS I'VE GIVEN YOU, IS THAT

11   THESE PRODUCTS WILL HAVE DONE THEIR DAMAGE AND WE

12   WILL BE AT TRIAL FIGHTING ABOUT A NEW GENERATION OF

13   PRODUCTS WHICH WILL HAVE NEW DESIGNS WHICH WE STILL

14   HAVE NOT YET SEEN.

15           IF WE'RE GOING TO GET A REMEDY AGAINST

16   THESE PRODUCTS, WE CAN ONLY GET THE REMEDY TODAY

17   FROM YOU.

18           THE COURT:  LET ME ASK IF, FROM APPLE'S

19   PERSPECTIVE, THERE'S A DIFFERENCE BETWEEN BRAND AND

20   DESIGN, OR IS IT THE SAME THING FOR APPLE?  THEY'RE

21   LARGELY OVERLAPPING?

22           MR. MCELHINNY:  WHAT I WOULD SAY -- THE

23   HAROLD MCELHINNY ANSWER TO THAT QUESTION ON BEHALF

24   OF APPLE, IS WE THINK DESIGN DRIVES BRAND.

25           SO DESIGN -- AND, AGAIN, I'M NOT ALONE

1     HERE.  MR. WAGNER SAID THE SAME THING.

2             DESIGN IS ONE OF THE WAYS THAT APPLE HAS

3     CARVED OUT THE NAME FOR ITSELF WHICH HAS MADE IT

4     THE INTERNATIONAL LEADER IN THIS MARKET.

5             THERE IS -- PEOPLE RECOGNIZE THE DESIGN

6     AND IDENTIFY IT WITH THE BRAND, WHICH IS, OF

7     COURSE, THE LAST ELEMENT OF IRREPARABLE INJURY

8     HERE, WHICH IS IF WE NO LONGER CONTROL THE DESIGNS,

9     IT DOES UNDERCUT OUR ABILITY TO CONTROL OUR BRAND

10    IDENTITY AND THAT IS LOSS OF GOODWILL BY

11    DEFINITION.

12            THE COURT:  LET ME ASK, FOR THE '381,

13    WHICH I THINK IS PROBABLY LESS OF WHERE THE FIGHT

14    IS THAN THE THREE DESIGN PATENTS, DO WE HAVE TO

15    CONSTRUE "ELECTRONIC DOCUMENT" OR "EDGE OF

16    ELECTRONIC DOCUMENT"?

17            MR. MCELHINNY:  I -- I DON'T WANT TO GIVE

18    YOU THE IMPRESSION THAT THAT'S LESS OF WHERE THE

19    FIGHT IS.

20            THE COURT:  UM-HUM.

21            MR. MCELHINNY:  AT LEAST ON OUR PART.

22            IT IS -- I MEAN, TO BE CLEAR, DESIGNS ARE

23    SOMETHING THAT SAMSUNG SHOULD HAVE BEEN DOING ON

24    ITS OWN.  THEY CAN PUT OUT INFORMATION WITH

25    DESIGNS.  THEY CAN DO WHATEVER THEY WANT.

                                                    30

1          THE SOFTWARE AND THE GRAPHIC INTERFACE

2    AND HOW IT IS -- IS A LITTLE BIT HARDER TO DESIGN

3    AROUND, I THINK, AND IS JUST AS IMPORTANT, EQUALLY

4    IMPORTANT.

5          SO I DON'T KNOW WHAT I'VE SAID TO GIVE

6    YOU THE IMPRESSION THAT IT'S NOT AS IMPORTANT.  WE

7    SPEND A LOT OF TIME IN THE BRIEFING --

8          AND NOW I'VE FORGOTTEN YOUR QUESTION.

9          THE COURT:  OKAY.  WHETHER WE NEED TO

10   CONSTRUE "ELECTRONIC DOCUMENT" OR "EDGE OF

11   ELECTRONIC DOCUMENT."

12         MR. MCELHINNY:  OUR POSITION ON THAT IS

13   THAT WE DO NOT.

14         OUR POSITION ON THAT IS THAT IT'S THE

15   PLAIN USAGE OF THE MEANING OF THOSE DOCUMENTS -- OF

16   THOSE TERMS.

17         IT WAS NOT -- AS WE POINTED OUT TO YOUR

18   HONOR WHEN WE SUED NOKIA ON THIS PATENT, NOKIA

19   DIDN'T THINK IT NEEDED TO BE CONSTRUED.

20         IT WENT INTO RE-EXAMINATION, CAME OUT OF

21   RE-EXAMINATION WITHOUT ANYBODY HAVING TO ARGUE

22   ABOUT THE CONSTRUCTION.

23         WHAT IS TRUE IS THAT, YOU KNOW, DESPITE

24   THE SHOW WE'RE ABOUT TO SEE, THERE IS NOTHING IN

25   THE PRIOR ART THAT RECOGNIZES THE EDGE OF A

31

1    DOCUMENT.

2              IF YOU THINK OF THE E-MAIL APPLICATION

3    WHICH THEY SHOWED WHERE IF IT'S -- THESE ARE ALL

4    CENTERING DEVICES, AND IF YOU THINK OF THE E-MAIL

5    APPLICATION THEY SHOWED WHERE IT GOES A LITTLE BIT

6    OFF THE E-MAIL AND IT'LL SNAP BACK TO CENTER IT,

7    THAT HAPPENS NO MATTER WHAT NAME ANYPLACE IN THE

8    LIST IS OFF CENTER.

9              IT DOESN'T HAPPEN AT THE EDGE OF A

10   DOCUMENT.

11             AND IF YOU GET TO THE EDGE OF THE

12   DOCUMENT, YOU GO DIRECTLY INTO WHAT THE INVENTOR

13   CALLED DESERT FOG, THE SAME AS ALL OF THE PRIOR ART

14   DID, THE SAME -- EXACTLY THE PROBLEM THAT APPLE

15   RESOLVED AGAINST.

16             AND IF YOU LOOK AT THE TILES APPLICATION

17   WHERE THEIR EXPERT ARBITRARILY DREW A LINE AROUND

18   PART OF THE PAGE AND SAID "THIS IS A DOCUMENT" AND

19   WE ASKED HIM -- HIS ANSWER WAS TWO THINGS.  ONE HE

20   SAID, "TECHNICALLY IT HAS NO MEANING.  IF YOU SHOW

21   ME A RED SQUARE, I COULD SAY THAT'S A THOUSAND

22   DOCUMENTS."

23             BUT HE ALSO SAID A DOCUMENT IS WHEN

24   THERE'S NO INFORMATION BEYOND THE EDGE.

25             AND I'M USING HIS DEFINITION THERE, THE

1    APPLICATION AND THE TILES DOES NOT RESPOND.

2            IT'S THE SAME APPLICATION.  IT'S A

3    CENTERING DEVICE.  IT NEVER RESPONDS TO THE EDGE OF

4    A DOCUMENT.

5            SO THE ANSWER IS WE DON'T THINK IT NEEDS

6    TO BE CONSTRUED.  WE THINK EDGE OF A DOCUMENT HAS A

7    PERFECTLY CLEAR -- WE THINK EVERYONE WILL

8    UNDERSTAND IT WHEN THEY SEE IT.

9            AND, YOU KNOW, IF YOU USE THE DEFINITION

10   THAT THERE'S NO INFORMATION BEYOND THE EDGE,

11   THAT'S, I THINK, WHAT LARGELY WHAT MOST PEOPLE

12   WOULD SAY ABOUT IT.

13           AND THE PRIOR ART WHICH THEY'VE CITED

14   DOESN'T GO TO THAT.

15           THE COURT:  WHAT IS THE NEXUS THAT WOULD

16   HAVE TO BE FOUND BETWEEN THE INTELLECTUAL PROPERTY

17   IN DISPUTE AND THE REASON THAT CONSUMERS ACTUALLY

18   PURCHASE THE PRODUCT?  WHAT -- FOR A PRELIMINARY

19   INJUNCTION?

20           MR. MCELHINNY:  I'M ONLY PAUSING BECAUSE

21   I WANT TO RESPECT THE CONFIDENTIALITY HERE.

22           THE COURT:  UM-HUM.

23           MR. MCELHINNY:  IF YOU LOOK AT THE

24   DOCUMENTS THAT WE FILED WITH YOU YESTERDAY TO

25   AUGMENT THE RECORD, YOU WILL FIND A DOCUMENT, TWO,

33

```
 1    THAT DIRECTLY TIE BOTH -- ALL -- THAT DIRECTLY TIE

 2    ALL OF THE PATENTS AT ISSUE HERE TO CONSUMER

 3    DEMAND.

 4              BUT IN ADDITION TO THAT, WE OBVIOUSLY --

 5    YOU KNOW, WE SUBMITTED OUR OWN EXPERT DECLARATIONS

 6    WHICH SAY EXACTLY THE SAME THING.

 7              THE COURT:  BUT WHAT'S THE -- WHAT'S THE

 8    LEGAL STANDARD FOR THAT NEXUS?  DOES IT HAVE TO BE

 9    THE REASON WHY PEOPLE ARE BUYING THOSE PRODUCTS, OR

10    IS IT JUST ENOUGH THAT THEY HAPPEN TO LIKE THAT

11    AMONGST A NUMBER OF FEATURES?  WHAT'S THE REQUIRED

12    CONNECTION?

13              MR. MCELHINNY:  I THINK FOR THIS MOTION,

14    I DON'T THINK YOUR HONOR NEEDS TO GET THAT FAR.

15              I MEAN, THE ISSUE IS, ARE WE LIKELY TO

16    WIN AT TRIAL ON INFRINGEMENT AND VALIDITY?

17              AND THEN THE QUESTION IS WHETHER OR NOT

18    WE'RE SUFFERING IRREPARABLE INJURY.

19              AND I DON'T THINK -- AS A RESULT OF THAT

20    INFRINGEMENT.

21              BUT, AGAIN -- THIS IS THE BRAUN CASE,

22    WHICH THE FEDERAL CIRCUIT DECIDED YESTERDAY, WHAT

23    THEY SAID WAS WHEN THERE ARE TWO PEOPLE IN THE SAME

24    MARKET COMPETING HEAD-TO-HEAD FOR THE SAME

25    PRODUCTS, GIVING SOMEONE THE UNFAIR ADVANTAGE OF
```

1    ALLOWING THEM TO INFRINGE PATENTS IS PRESUMABLY --

2    THEY DIDN'T SAY IS PRESUMABLY -- BUT THAT IS WHAT

3    DRIVES THE SALE OF THOSE PRODUCTS.

4         COMING BACK, HOWEVER -- I DON'T WANT TO

5    HAMMER THIS POINT TOO -- BUT THE DESIGN PATENTS YOU

6    HAVE, THE DESIGN PATENTS THAT YOU HAVE ARE THE

7    ICONIC APPLE PATENTS.  THEY ARE THE DESIGN OF THE

8    IPHONE AND THEY ARE THE DESIGN OF THE IPAD.

9         MR. WAGNER SAID THE INTRODUCTION OF THIS

10   IPAD CREATED A NEW PRODUCT CATEGORY.

11        AGAIN, WE COULDN'T POSSIBLY HAVE PUT

12   EVERY NEWSPAPER ARTICLE THAT APPEARED IN THE

13   NEW YORK TIMES AND BUSINESS WEEK AND ALL THE REST

14   OF THAT WHERE THEY SAY IT WAS THE DESIGN THAT MADE

15   THE DIFFERENCE.

16        WE HAVE ONE QUOTE HERE, A GREAT ONE FROM

17   THE NEW YORK TIMES WHERE THEY SAID "APPLE WAVED THE

18   CINDERELLA WAND OVER THE UTILITARIAN, UGLY PHONE

19   AND TURNED IT INTO SOMETHING BEAUTIFUL."

20        AND TO ME, AT LEAST, OBVIOUSLY, THAT

21   SUGGESTS THAT THE DESIGN HERE IS SO CLOSELY TIED,

22   THE ADVERTISING -- EVEN IN OUR, YOU KNOW, IN OUR

23   INITIAL PAPERS, THAT'S THE POINT WE MADE, THAT WE

24   HAVE USED THESE DESIGNS AS THE ELEMENT THAT WE USE

25   IN OUR MARKETING TO SELL THESE PRODUCTS.

1          I'M GOING TO USE THE REST OF MY TIME FOR

2     REBUTTAL UNLESS YOUR HONOR HAS ANY OTHER QUESTIONS.

3          THE COURT:  NO.  THANK YOU.

4          MS. SULLIVAN:  YOUR HONOR, MAY I HAND UP

5     OUR BINDERS?

6          THE COURT:  YES, PLEASE.

7          (PAUSE IN PROCEEDINGS.)

8          THE COURT:  WELL, WE DEFINITELY WILL NOT

9     HAVE TIME FOR 249 SLIDES.

10         MS. SULLIVAN:  AND YOUR HONOR, WE

11    DEFINITELY WON'T GO THROUGH THEM.

12         THE COURT:  GOOD, THANK YOU.

13         MS. SULLIVAN:  YOUR HONOR, I'D JUST LIKE

14    TO BEGIN, OPPOSING COUNSEL MADE MENTION OF

15    MR. VERHOEVEN NOT BEING PRESENT.

16         I WANTED TO SIMPLY TELL YOUR HONOR THAT

17    HE'S IN TRIAL AND SO UNABLE TO BE HERE, SO IT'S MY

18    PRIVILEGE TO ARGUE FOR SAMSUNG TODAY.

19         YOUR HONOR, I'D LIKE TO TAKE A STEP BACK

20    AND REMIND US OF WHERE WE ARE.  WE'RE IN A

21    PRELIMINARY INJUNCTION HEARING, AND A PRELIMINARY

22    INJUNCTION IS AN EXTRAORDINARY STEP, AND IT'S

23    CERTAINLY NOT WARRANTED HERE WHERE APPLE HAS FAILED

24    TO MEET ITS BURDEN, HAS FAILED TO SHOW IRREPARABLE

25    HARM, AS YOUR HONOR NOTED, BARELY EVEN PUTTING IT

                                                        36

1    IN ITS MOVING PAPERS, AND HAS FAILED TO EXPLAIN ITS

2    UNREASONABLE DELAY.

3         BUT WHAT I MOST WANT TO EMPHASIZE, YOUR

4    HONOR, IS WHAT THE STANDARD IS ON PRELIMINARY

5    INJUNCTION REVIEW, AND IT'S CERTAINLY NOT THAT

6    SAMSUNG MUST PROVE INVALIDITY BY CLEAR AND

7    CONVINCING EVIDENCE OR PROVE NONINFRINGEMENT.

8         THE STANDARD UNDER NUMEROUS FEDERAL

9    CIRCUIT CASES, ESPECIALLY ASTRAZENECA, IS THAT WE

10   MUST SIMPLY SHOW A SUBSTANTIAL QUESTION ON

11   INFRINGEMENT OR INVALIDITY DEFENSES IN ORDER TO

12   DEFEAT THE PRELIMINARY INJUNCTION, OR AS THE

13   FEDERAL CIRCUIT PUT IT IN THE ALTANA DECISION, THE

14   ISSUE AT THE PRELIMINARY INJUNCTION STAGE IS THE

15   VULNERABILITY OF THE PATENTS, AND WE'VE AMPLY SHOWN

16   ENOUGH VULNERABILITY ON BOTH VALIDITY AND

17   NONINFRINGEMENT TO DEFEAT THE PRELIMINARY

18   INJUNCTION.

19        I'D LIKE TO BEGIN, YOUR HONOR, WITH THE

20   DESIGN PATENTS --

21        THE COURT:  LET ME STOP YOU A SECOND.

22        EVEN IF YOU DO ESTABLISH A SUBSTANTIAL

23   QUESTION OF INVALIDITY, THEN IS IT THE PLAINTIFF'S

24   BURDEN, OR AT LEAST OPPORTUNITY, TO SHOW THAT THERE

25   IS STILL -- THAT THE PATENT IS LIKELY VALID?

1          SO IT'S NOT JUST ENOUGH TO RAISE THE

2    SUBSTANTIAL QUESTION OF INVALIDITY.  THEY CAN COME

3    BACK AND THEN SAY, "WELL, WE STILL THINK THAT WE

4    CAN PROVE THAT THE PATENT IS LIKELY VALID."

5          MS. SULLIVAN:  NO, YOUR HONOR.  THEY

6    WOULD HAVE TO SHOW THAT IT IS LIKELY THAT THE

7    PATENT IS VALID.  IT WOULD SHIFT THE BURDEN TO THEM

8    TO SHOW THAT.

9          THAT'S EXACTLY THE KIND OF THING THAT'S

10   NOT APPROPRIATE ON A PRELIMINARY INJUNCTION

11   HEARING.

12         TO THE EXTENT WE NEED TO HAVE CLAIM

13   CONSTRUCTION, IT SHOULD AWAIT A FULL TRIAL.

14         AND JUST TO RECALL TO YOUR HONOR, OF

15   COURSE YOU'VE GRANTED APPLE AN EXPEDITED TRIAL.

16         SO THE IDEA THAT A PRELIMINARY INJUNCTION

17   IS NEEDED BETWEEN NOW AND A TRIAL THAT YOUR HONOR

18   WILL ENTERTAIN IN A VERY SHORT TIMEFRAME IS REALLY

19   IMPROPER.

20         BUT THE QUESTION OF -- THE ULTIMATE

21   QUESTION OF VALIDITY AND INFRINGEMENT CAN BE

22   DETERMINED AT TRIAL.

23         IF WE RAISE SUBSTANTIAL QUESTIONS, THE

24   EXACT LANGUAGE IN ASTRAZENECA IS THAT PRELIMINARY

25   INJUNCTION IS PRECLUDED.

1           BUT IF I COULD TURN FIRST TO THE VALIDITY

2     OF THE TELEPHONE PATENTS, AND IF WE COULD START

3     WITH THE PRIOR ART, YOUR HONOR -- AND BY THE WAY, I

4     JUST WANT TO CORRECT ONE POINT THAT WAS MADE

5     EARLIER BY OPPOSING COUNSEL.

6           WE DO CLEARLY CLAIM THAT THE '889 PATENT

7     WAS PRIOR ART FOR THE PHONE DESIGN PATENTS IN

8     ANSWER TO YOUR HONOR'S EARLIER QUESTION.  THE '889

9     ISSUED IN MAY OF '05 PRIOR TO THE '087 AND '677

10    CLAIMED INVENTION DATE BY APPLE.

11          BUT JUST GOING TO OTHER PRIOR ART, IF WE

12    COULD START WITH SLIDE 7, WE SHOW HERE THREE PRIOR

13    ART FOR THE TELEPHONE PATENTS, THE TELEPHONE DESIGN

14    PATENTS, THREE JAPANESE PATENTS, THE '317, THE '383

15    AND THE '638.

16          AND AGAIN, YOUR HONOR, YOU'RE QUITE

17    RIGHT.  THE ORDINARY OBSERVER TEST APPLIES HERE.

18          AND SO WE HAVE EXPERT TESTIMONY, BUT YOUR

19    HONOR CAN ALSO APPLY YOUR OWN OBSERVATIONS TO THIS.

20          IF WE GO TO SLIDE 11, WHAT I'D LIKE TO DO

21    IS JUST LIST THE PRIOR ART SIMILARITIES HERE

22    FEATURE BY FEATURE.

23          RECTANGULAR SHAPE.

24          AND, YOUR HONOR, SLIDE 11 IS A SLIDE THAT

25    TAKES THE PRIOR ART WE'RE POINTING OUT AND COMPARES

1    IT TO THE TWO TELEPHONE DESIGN PATENTS, THE '087

2    AND THE '677.

3            BUT YOUR HONOR, IN A NUTSHELL, WHAT'S

4    HAPPENING HERE IS THAT APPLE IS GOING TO CLAIM A

5    MONOPOLY RIGHT TO THE DESIGN OVER A RECTANGULAR

6    SMART PHONE WITH A FLAT SURFACE AND ROUNDED CORNERS

7    AND A FRONT SURFACE SUBSTANTIALLY FREE OF

8    ORNAMENTATION.

9            BUT WE'RE GOING TO SEE HOW THAT EXTREMELY

10   BROAD DESIGN CLAIM WAS IN THE PRIOR ART GOING

11   FEATURE BY FEATURE.

12           SLIDE 11 SHOWS THAT RECTANGULAR SHAPE WAS

13   IN THE PRIOR ART IN THE '638 AND THE '383.

14           IF WE GO TO SLIDE 12, YOU'LL SEE FOUR

15   EVENLY ROUNDED CORNERS, FOUR EVENLY ROUNDED CORNERS

16   IN THE PRIOR ART, FOUR EVENLY ROUNDED CORNERS IN

17   THE TWO DESIGN DRAWINGS IN THE '087 AND THE '677.

18           FLIPPING TO THE NEXT SLIDE, 13, A FRONT

19   SURFACE SUBSTANTIALLY FREE OF ORNAMENTATION.

20           REMEMBER, YOUR HONOR, THE PATENTS DON'T

21   HAVE THESE WORDS.  BUT THESE ARE THE WORDS WE'VE

22   DRAWN FROM THE APPLE EXPERT, MR. WOODRING'S

23   DECLARATION.

24           A FRONT SURFACE SUBSTANTIALLY FREE OF

25   ORNAMENTATION, PRESENT IN ALL THREE OF THE PRIOR

40

1    JAPANESE PATENTS.  NO DIFFERENT FROM THE '087 AND

2    THE '677 DRAWINGS.

3            NEXT SLIDE, 14, A DISPLAY SCREEN CENTERED

4    ON THE FRONT SURFACE.  THE SAME IN ALL THREE OF THE

5    PRIOR ART AS IN THE DESIGN DRAWINGS IN THE '087 AND

6    THE '677.

7            IN THE NEXT SLIDE, SLIDE 15, NARROW

8    BORDERS ON EITHER SIDE OF THE DISPLAY, SUBSTANTIAL

9    BORDERS ABOVE AND BELOW THE DISPLAY.  THE SAME IN

10   THE PRIOR ART AS IN THE '087 AND '677.

11           NEXT SLIDE, 16, A ROUNDED HORIZONTAL

12   SPEAKER SLOT CENTERED ON THE FRONT SURFACE ABOVE

13   THE DISPLAY SCREEN.  PRESENT IN TWO OF THE THREE

14   PRIOR JAPANESE PATENTS.  SAME AS IN THE DRAWINGS

15   FOR THE '087 AND '677.

16           REMEMBER, THE '087 CLAIMS A BEZEL.  THE

17   '677 DOES NOT.

18           BUT A THIN, UNIFORM BEZEL SURROUNDING THE

19   FRONT SURFACE.  THE SAME IN THE '638 AND THE '383

20   JAPANESE PATENTS AS IN THE '087.

21           AND FINALLY, IN THE '677, IF YOU PUT THE

22   '677 SIDE-BY-SIDE WITH THE PRIOR ART AND THE

23   JAPANESE PATENT FOR THE '638, YOU SEE ALL THOSE

24   FEATURES THAT MAKE THE '677 OBVIOUS AT THE TIME OF

25   INVENTION.

41

1            IT'S THE SAME IF YOU GO TO THE NEXT SLIDE

2      FOR SLIDE 19 AND TAKE AN ASPECT VIEW.  THE IDEA OF

3      A FLAT, CLEAR SMART PHONE, SAME IN THE PRIOR ART AS

4      IN THE '677.

5            THE '677 TALKS ABOUT A FLAT -- IT DOESN'T

6      TALK ABOUT, BUT IT'S BEEN CONSTRUED BY APPLE TO

7      INVOLVE A FLAT, CLEAR, BLACK COLORED FRONT SURFACE.

8            SAME IN THE PRIOR ART AS IN THE '677.

9            AND THE SHERMAN DECLARATION AT THE BOTTOM

10     SAYS "CREATING A SMART PHONE WITH A BLACK, FLAT

11     FRONT SCREEN WOULD HAVE BEEN OBVIOUS TO A DESIGNER

12     OF MOBILE DEVICES OF ORDINARY SKILL BY JANUARY"

13     6006 -- SORRY -- "JANUARY 2006."

14            YOUR HONOR, I WON'T BELABOR IT.  THE SAME

15     EXERCISE CAN BE DONE BETWEEN THE PRIOR ART AND THE

16     '087 PATENT.

17            NOW, I'D LIKE TO PAUSE FOR A MOMENT ON

18     SLIDE 22 IF I COULD, YOUR HONOR, BECAUSE IN SLIDE

19     22 YOU'LL SEE THERE WAS ACTUALLY AN ADMISSION BY

20     MR. WOODRING, AT LEAST IN HIS INITIAL STATEMENT, HE

21     CHANGED HIS VIEW LATER, BUT MR. WOODRING, APPLE'S

22     OWN EXPERT, CONCEDED THAT THE JAPANESE PRIOR ART

23     THAT WE'VE REFERRED YOUR HONOR TO WAS REALLY

24     SUBSTANTIALLY THE SAME TO THE ORDINARY OBSERVER AS

25     THE CLAIMED DESIGN PATENTS.

1           IF YOU LOOK AT THE ANSWER, WHAT HE'S --

2    WHAT HAPPENS IS IN HIS DEPOSITION, HE'S SHOWN

3    EXHIBIT 67.  EXHIBIT 67 IS ONE OF THE PIECES OF

4    JAPANESE PRIOR ART WE'VE JUST LOOKED AT.

5           HE'S ASKED, IF WE MOVE THE POSITION OF

6    THE SPEAKER SLOT SO IT'S CLOSER TO THE TOP, WOULD

7    THAT CHANGE THE OVERALL IMPRESSION?

8           AND HE SAYS NO, I DON'T THINK IT WOULD

9    CHANGE THE OVERALL IMPRESSION IN THE EYES OF THE

10   ORDINARY OBSERVER.

11          SO THERE'S AMPLE EVIDENCE TO SHOW THAT

12   THERE'S PRIOR ART TO INVALIDATE THE TWO TELEPHONE

13   DESIGN PATENTS.

14          AND OPPOSING COUNSEL SAID, WELL, WE

15   DIDN'T IDENTIFY A SINGLE REFERENCE.

16          BUT YOUR HONOR, WE'D SUBMIT THAT YOU CAN

17   TAKE ANY OF THE THREE PRIOR JAPANESE PATENTS AND

18   TREAT THEM AS THE INVALIDATING REFERENCE, MAKING

19   THE TELEPHONE DESIGN PATENTS BOTH OBVIOUS.

20          YOUR HONOR, I'D LIKE TO SPEND A LITTLE

21   TIME NEXT ON WHY, APART FROM INVALIDITY FOR

22   OBVIOUSNESS, THE DESIGN PATENTS HERE ARE INVALID

23   BECAUSE THEY'RE FUNCTIONAL AND NOT ORNAMENTAL.

24          AND IF I COULD, YOUR HONOR, I'D JUST LIKE

25   TO GO BACK TO ONE OF YOUR LAST QUESTIONS.  YOU

                                                      43

1    ASKED OPPOSING COUNSEL, WELL, ARE YOU CLAIMING

2    BRAND IS THE SAME AS DESIGN?

3             AND I THINK I HEARD APPLE SAY YES, BRAND

4    AND DESIGN, IT'S ALL ONE THING.  I KIND OF -- IT'S

5    A LOOK AND FEEL.  "I KNOW IT WHEN I SEE IT" TEST.

6             THAT'S ABSOLUTELY NOT WHAT WE'RE TALKING

7    ABOUT, YOUR HONOR.  "DESIGN" IS A VERY SPECIFIC

8    TERM OF ART IN PATENT LAW.

9             A DESIGN PATENT IS DISTINGUISHED FROM A

10   UTILITY PATENT BECAUSE IT APPLIES TO SOMETHING VERY

11   LIMITED, WHICH IS SIMPLY THE ORNAMENTAL DESIGN OF

12   AN ARTICLE.

13            RICHARDSON VERSUS STANLEY WORKS, THE

14   FEDERAL CIRCUIT CASE IN 2010, IS HELPFUL ON THIS

15   POINT AND ON A NUMBER OF OTHERS.

16            AND RICHARDSON SAYS THAT IF THE PATENTED

17   DESIGN IS PRIMARILY FUNCTIONAL RATHER THAN

18   ORNAMENTAL, THE PATENT IS INVALID.

19            SO, YOUR HONOR, WE'VE LOOKED AT THE PRIOR

20   ART.

21            IF WE COULD NEXT LOOK AT THE FUNCTIONAL

22   ELEMENTS, THE FUNCTIONAL ELEMENTS OF APPLE'S DESIGN

23   FEATURES STARTING WITH SLIDE 30.

24            AND I WANT TO BE CLEAR, YOUR HONOR, THAT

25   RICHARDSON DOES SAY THAT WE SHOULD LOOK AT

44

1    FUNCTIONAL ELEMENTS ELEMENT BY ELEMENT.  IT'S

2    ESSENTIAL TO CLAIM CONSTRUCTION.

3            WE'RE GOING TO SAY THAT ALL OF THE

4    ELEMENTS ARE FUNCTIONAL, SO WHEN YOU ADD THEM ALL

5    UP, YOU GET A FUNCTIONAL TOTALITY OF THE

6    CIRCUMSTANCES.

7            BUT LET'S GO THROUGH THEM ONE BY ONE.

8            THE RECTANGULAR SHAPE.  IT'S BEEN THE

9    STANDARD SHAPE FOR READING MEDIA SINCE CLAY

10   TABLETS, PAPER TABLETS, AND CERTAINLY FOR READING

11   MEDIA AND VIEWING SCREENS ON ALL MODERN MEDIA

12   DEVICES.

13           IT'S A CONVENIENT SHAPE FOR BEING HELD BY

14   A HUMAN HAND AND IT FOLLOWS THE FORM OF THE DISPLAY

15   SCREEN.

16           IF WE GO NEXT TO SLIDE 31, ROUNDED

17   CORNERS, AVOIDS SNAGS, AVOIDS INJURIES.

18           THERE'S A LITTLE BIT OF RIDICULE FROM

19   APPLE ON THAT POINT.

20           BUT LET'S THINK ABOUT SOME OTHER ASPECTS

21   THAT ARE FUNCTIONAL ABOUT ROUNDED CORNERS.

22           REMEMBER THAT THE LAW ON A DESIGN

23   PATENT'S FUNCTIONALITY ASKS IS THERE AN EFFECT ON

24   THE COST OR QUALITY OF THE ARTICLE?

25           WELL, THERE IS.  ROUNDED CORNERS ARE

45

1    EASIER TO MANUFACTURE FROM MOLDS AND THEY HAVE

2    GREATER STRUCTURAL INTEGRITY.  THEY WORK BETTER

3    BECAUSE THEY'RE HARDER TO BREAK THAN SHARP CORNERED

4    OBJECTS.

5              SLIDE 32.  AGAIN, THE SPEAKER IS LOCATED

6    ON THE UPPER PORTION OF THE FRONT SURFACE.

7              THAT'S FUNCTIONAL.  IT ALIGNS THE SPEAKER

8    WITH THE HUMAN EAR.  IT'S THE PLACE WHERE SPEAKERS

9    HAVE BEEN LOCATED SINCE THE VERY FIRST TELEPHONE

10   HANDSETS.

11             THE FUNCTIONAL ASPECT ON PAGE 33 IS THE

12   HORIZONTAL SLOT SHAPE.  IT'S FLEXIBLE.  IT GIVES

13   YOU MORE OPTIONS FOR YOUR --

14             THE COURT:  BUT HOW ARE -- HOW IS THIS

15   DESIGN DICTATED BY THE FUNCTIONALITY RATHER THAN

16   JUST ENHANCING FUNCTIONALITY?

17             MS. SULLIVAN:  SO, YOUR HONOR, THAT'S NOT

18   ACTUALLY THE TEST.

19             APPLE HAS TRIED TO SUGGEST THERE'S

20   FUNCTIONALITY ONLY IF THERE ARE NO OTHER POSSIBLE

21   ALTERNATIVES.

22             BUT THE LAW IS CLEAR IN THE FEDERAL

23   CIRCUIT THAT WHERE A PROPOSED ALTERNATIVE LEADS TO

24   LESS FUNCTIONALITY, LESS UTILITY, THAT THE

25   ALTERNATIVE IS NOT A TRUE ALTERNATIVE.

1          IF I COULD JUST FAST FORWARD FOR A MOMENT

2     TO PAGE 48 OF THE SLIDES, YOUR HONOR, I JUST WANT

3     TO BE CLEAR ON WHAT THE TEST IS HERE.

4          WE DO NOT HAVE TO PROVE THAT THE FUNCTION

5     COULD NEVER BE PERFORMED BY AN ALTERNATIVE DESIGN.

6     THE FEDERAL CIRCUIT'S REJECTED THAT TEST.

7          AND IN PHG TECHNOLOGIES, IT HAS LISTED A

8     SET OF CONSIDERATIONS FOR FUNCTIONALITY IN WHICH IT

9     SAYS YOU LOOK TO WHETHER THE PROTECTED DESIGN

10    REPRESENTS THE BEST DESIGN -- I'M SKIPPING FOR A

11    MOMENT -- WHETHER THERE ARE CONCOMITANT UTILITY

12    PATENTS, WHETHER THE ADVERTISING TOUTS FEATURES AS

13    HAVING UTILITY, WHETHER THERE ARE ELEMENTS IN THE

14    DESIGN OR AN OVERALL APPEARANCE CLEARLY NOT

15    DICTATED BY FUNCTION.

16         BUT GO BACK TO THE SECOND ONE, WHICH IS

17    KEY HERE, WHETHER ALTERNATIVE DESIGNS WOULD

18    ADVERSELY AFFECT THE UTILITY OF THE SPECIFIED

19    ARTICLE, WHETHER ALTERNATIVE DESIGNS WOULD

20    ADVERSELY AFFECT THE UTILITY OF THE SPECIFIED

21    ARTICLE.

22         AND WHERE THE ALTERNATIVE DESIGNS LEADS

23    TO HIGHER COST, LESSER QUALITY, HARDER TO USE, THEN

24    THE ALTERNATIVE DESIGN DOES NOT DEFEAT

25    FUNCTIONALITY.

47

1           I WONDER IF I COULD JUST -- IF WE COULD

2     TAKE ONE MOMENT, YOUR HONOR, I COULD SHOW YOU THIS

3     WITH RESPECT TO THE TAB PATENT.

4           IF WE GO FORWARD TO -- I THINK WE HAVE AN

5     ILLUSTRATION OF WHY ALTERNATIVES, THE EXISTENCE OF

6     AN ALTERNATIVE, IS NOT SUFFICIENT.

7           IF WE COULD GO TO SLIDE 99, WE'LL HAVE AN

8     AUDIO -- A VIDEO TO PLAY WITH YOU.

9           NOW, YOUR HONOR, I'M GOING AHEAD TO THE

10    TAB PATENT.  REMEMBER, THE TAB, THE CLAIMED -- THE

11    '889 DESIGN PATENT REFERS TO THE TAB --

12          THE COURT:  LET ME ASK YOU A QUESTION ON

13    THE TAB.

14          TELL ME WHICH ONE IS SAMSUNG AND WHICH

15    ONE IS APPLE (INDICATING).  TELL ME WHICH ONE.  I'M

16    NOT GOING TO SHOW YOU THE BACK.  CAN YOU TELL ME?

17          MS. SULLIVAN:  NOT AT THIS DISTANCE, YOUR

18    HONOR.

19          THE COURT:  ALL RIGHT.  I'LL BRING IT UP

20    CLOSER.

21          WHICH ONE IS WHICH (INDICATING)?  CAN ANY

22    OF THE SAMSUNG LAWYERS TELL ME, WITHOUT LOOKING AT

23    THE BACK, WHICH ONE IS SAMSUNG AND WHICH ONE IS

24    APPLE?

25          MS. SULLIVAN:  APPLE ON THE LEFT AS WE

48

1    FACE YOU.

2              THE COURT:  APPLE ON THIS SIDE

3    (INDICATING)?  THAT'S RIGHT.

4              IT TOOK A LONG TIME TO MAKE THAT

5    DISTINCTION.  THERE IS A SIZE DIFFERENCE.

6              BUT ANYWAY, I NOTICE IN THE BRIEFING YOU

7    HARDLY TOUCHED, REALLY, INFRINGEMENT AS MUCH AND --

8              MS. SULLIVAN:  IF WE -- YOUR HONOR, CAN I

9    JUST FINISH THE POINT ON ALTERNATIVES?

10             THE COURT:  GO AHEAD.

11             MS. SULLIVAN:  IF WE PLAY THIS FOR YOUR

12   HONOR BRIEFLY, IT'S A POINT ABOUT ALTERNATIVES.

13             YOU CAN HAVE IT TRIANGULAR -- IF APPLE

14   SAYS THE RECTANGLE SERVES NO FUNCTION, THE

15   RECTANGLE IS ALL ABOUT AESTHETIC AND ORNAMENT, THIS

16   CLIP SHOWS WHY IT'S ALL ABOUT FUNCTION, RECTANGULAR

17   SHAPE.

18             (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

19   OPEN COURT OFF THE RECORD.)

20             MS. SULLIVAN:  NOW, YOUR HONOR, IT'S AN

21   ELEMENT -- WE'RE LOOKING TO THE ABSURDITY OF THIS

22   SKIT FROM THE OFFICE, BUT TO MAKE A SERIOUS POINT,

23   WHICH IS YOU CAN'T SIMPLY SAY THERE IS AN

24   ALTERNATIVE OUT THERE, LIKE A TRIANGULAR TAB AS

25   OPPOSED TO A RECTANGULAR TAB THAT DOESN'T USE THE,

1    THE DESIGN THAT IS CLAIMED TO BE PATENTED.

2            YOU HAVE TO ASK WHETHER IT WOULD REDUCE

3    THE UTILITY OF THAT PATENT.  THAT'S THE TEST IN PHG

4    TECHNOLOGIES.

5            AND SO WE SUBMIT, YOUR HONOR, THAT THE

6    MERE ADVERTENCE TO ALTERNATIVES FOR THE TELEPHONE

7    OR THE TABLET ARE NOT ENOUGH.

8            BUT LET ME TURN TO YOUR HONOR'S QUESTION

9    ABOUT INFRINGEMENT.

10           THE COURT:  OKAY.

11           MS. SULLIVAN:  IF WE GO TO PAGE 52, WE'LL

12   GO BACK -- PAGE 52 OF THE DECK, OUR KEY -- LET ME

13   START WITH THE LEGAL STANDARD HERE.

14           NOW, AGAIN, INFRINGEMENT IS GOING TO BE

15   JUDGED BY THE ORDINARY OBSERVER FACTORING OUT THE

16   PRIOR ART, THAT IS, AWARE OF THE PRIOR ART AND

17   TAKING PRIOR ART INTO ACCOUNT AND FACTORING OUT ANY

18   FUNCTIONAL CONSIDERATIONS.

19           AND I JUST NEED TO FOLLOW UP ON YOUR

20   HONOR'S QUESTIONS TO APPLE'S COUNSEL BEFORE.

21           A COUPLE OF CORRECTIONS.

22           FIRST, THE GORHAM TEST DOES, AS YOUR

23   HONOR SUGGESTS, ASK WHETHER THERE'S GOING TO BE AN

24   INDUCEMENT TO THE ORDINARY OBSERVER TO PURCHASE THE

25   WRONG PRODUCT.

1           THE QUOTE FROM GORHAM IS, "IS THE

2      ORDINARY OBSERVER GOING TO BE INDUCED TO PURCHASE

3      ONE BY SUPPOSING IT TO BE THE OTHER?"  IS HE GOING

4      TO BE DECEIVED?

5           SO THE TEST IS WHETHER THE CONSUMER WOULD

6      BE DECEIVED INTO BUYING ONE RATHER THAN THE OTHER.

7           AND APPLE'S DESIGN WITNESS, MR. SHERMAN,

8      QUOTED THE PROPER TEST AT PARAGRAPH 14 OF HIS

9      DECLARATION AND HE DID NOT OPINE ON ORDINARY

10     PURCHASER.  HE OPINED PROPERLY ON THE GORHAM TEST

11     AND THE ORDINARY OBSERVER TEST.

12          BUT YOUR HONOR, UNDER THAT ORDINARY

13     OBSERVER TEST, THE KEY POINT THAT WE WANT TO MAKE

14     TO YOUR HONOR, YOU CAN FLIP THROUGH THESE AT YOUR

15     LEISURE, BUT WE'VE POINTED OUT THE NUMEROUS

16     DIFFERENCES BETWEEN THE SAMSUNG PRODUCT AND THE

17     APPLE DESIGN DRAWINGS THAT SHOW THAT THE

18     DIFFERENCES ARE NOT MINUTE OR MINOR.

19          APPLE WANTS TO SAY THEY'RE MINUTE OR

20     MINOR.  BUT IN EVERY ASPECT THERE ARE DIFFERENCES

21     THAT ADD UP WITH THE INFUSE 4G AT THE END.

22          IF YOU GO TO SLIDE 62 WITH A SET OF

23     DIFFERENCES AS TO SPEAKER LOCATION AND SHAPE AND

24     PERCEPTIBILITY.

25          BANDS, THE WIDTH OF THE BANDS ABOVE AND

51

1     BELOW AND ON THE SIDES; THE PRESENCE OF THE

2     BORDERS; THE ASPECT RATIO; THE PRESENCE OF THE

3     DESIGN ELEMENTS ON THE FRONT.

4              SO THESE DIFFERENCES ARE NOT MINUTE OR

5     MINOR.

6              THE SAME IS TRUE FOR THE GALAXY S 4G,

7     WHICH YOUR HONOR CAN SEE ON THE SUCCEEDING SLIDES

8     THAT ARE ADDED UP ON PAGE 71.

9              BUT YOU DON'T JUST HAVE TO TAKE IT FROM

10    SAMSUNG THAT THESE DIFFERENCES ARE NOT MINUTE OR

11    MINOR.

12             YOU CAN TAKE IT FROM APPLE'S OWN

13    WITNESSES.

14             AND IF YOU LOOK IN YOUR DECK -- I DON'T

15    WANT TO REVEAL ANY CONFIDENTIAL INFORMATION, BUT IF

16    YOU LOOK IN YOUR DECK AT PAGES 74 THROUGH 76,

17    YOU'LL SEE ADMISSIONS BY APPLE'S OWN DESIGNER THAT

18    DIFFERENCES WERE SIGNIFICANT BETWEEN THE APPLE

19    IPHONE AS INTRODUCED AND PRIOR MODELS THAT HAVE

20    SOME OF THE SAME ELEMENTS AS SAMSUNG'S PHONE.

21             IT CAN'T BE THAT APPLE CAN HAVE IT BOTH

22    WAYS.  IT CAN'T SAY THAT THE DIFFERENCES ARE MAJOR

23    FOR PURPOSES OF DISTINGUISHING PRIOR ART, BUT MINOR

24    WHEN IT COMES TO INFRINGEMENT.

25             IT CAN'T SAY THEY'RE MAJOR FOR TALKING

1    ABOUT THEIR OWN PRIOR PRODUCTS, BUT MINOR FOR

2    PURPOSES OF INFRINGEMENT.

3              WE WOULD SUBMIT THAT THE DIFFERENCES ARE

4    SIGNIFICANT.

5              AND IN FACT, IF YOU LOOK AT SLIDE 77,

6    THIS IS A PORTION THAT I AM ALLOWED TO READ IN

7    COURT, THIS IS MR. WOODRING, APPLE'S DESIGN EXPERT,

8    WHO COMPARES ONE OF THE JAPANESE PIECES OF PRIOR

9    ART WE LOOKED AT EARLIER WITH THE '087 PATENT, AND

10   HERE'S WHAT HE SAYS ABOUT IT.

11             HE COMPARES THE TWO AND HE SAYS, HIGHER

12   SPEAKER SLOT, SMALLER SPEAKER SLOT, FRONT SURFACE

13   NOT FLAT, THICKER BEZEL IN PROFILE AND NOT

14   SUBSTANTIALLY UNIFORM.

15             HE SAID EXTENSIVE MODIFICATIONS OF ONE --

16   OF THE '638 DESIGN WOULD BE REQUIRED TO MAKE IT

17   LOOK LIKE THE '087.

18             WELL, WHICH IS THE SAMSUNG PHONE MORE

19   LIKE?

20             IF YOU LOOK AT THE NEXT PAGE, YOUR HONOR,

21   PAGE 78, SAMSUNG GALAXY S 4G HAS A HIGHER SPEAKER

22   SLOT, A WIDER SPEAKER SLOT, A THICKER BEZEL THAT'S

23   NOT SUBSTANTIALLY UNIFORM.

24             IT LOOKS TO THE ORDINARY OBSERVER A LOT

25   MORE LIKE THE JAPANESE PRIOR ART THAT MR. WOODRING

1    SAID WOULD REQUIRE EXTENSIVE MODIFICATIONS TO BE

2    MADE INTO THE '087 DRAWING.

3           SO, YOUR HONOR, WE SUBMIT THAT THERE ARE

4    EXTENSIVE DIFFERENCES AND NOT MINOR OR MINUTE

5    DIFFERENCES, BY APPLE'S OWN ADMISSION, BETWEEN THE

6    PHONES THAT DEFEAT ANY INFRINGEMENT SHOWING.

7           YOU CAN SEE THE VERY SAME THING WITH

8    RESPECT TO THE TAB PATENTS.  I WON'T GO THROUGH

9    THIS IN DETAIL EXCEPT TO JUST NOTE THAT YOUR HONOR

10   IS CORRECT THAT WE VIEW THE FIDLER AND BLOOMBERG

11   TABLETS AS INVALIDATING PRIOR ART WITH RESPECT TO

12   THE '889 PATENT.

13          DOES YOUR HONOR HAVE ANY INTEREST IN

14   EXPLORING THE '381 PATENT?  I'M CONSCIOUS OF THE

15   LIMITATIONS OF TIME.  INVALIDITY INFRINGEMENT?

16          THE COURT:  JUST -- LET ME JUST ASK WITH

17   REGARD TO THE TWO PHONE DESIGN PATENTS IF SAMSUNG

18   CONTESTS THE INVENTION DATE.  I KNOW THERE WAS A

19   FOOTNOTE THAT SAID IT WAS CORROBORATED IN APPLE'S

20   REPLY.

21          MS. SULLIVAN:  WE DO NOT CONCEDE THE

22   INVENTION DATE, YOUR HONOR.

23          THE COURT:  OKAY.  WHAT DATE DO YOU

24   BELIEVE IT IS?  OR SHOULD BE?  NOT APRIL 20TH OF

25   '06?  DO YOU HAVE AN ALTERNATIVE?

54

1          MS. SULLIVAN:  YOUR HONOR, I THINK THAT

2     TAKES US INTO THE REALM OF CONFIDENTIAL

3     INFORMATION.

4          THE COURT:  OKAY.  IS IT SOMEWHERE IN

5     YOUR DOCUMENTS?

6          MS. SULLIVAN:  WE'LL MAKE SURE WE POINT

7     IT OUT TO YOUR HONOR.

8          THE COURT:  OKAY.

9          MS. SULLIVAN:  ALL OF THE PRIOR ART THAT

10    I'VE DESCRIBED, YOUR HONOR, IS -- PRECEDES ANY

11    CLAIM -- PRECEDES THE CLAIMED INVENTION DATE.

12         THE COURT:  I KNOW THERE'S SOME DISPUTE

13    ABOUT THAT WITH REGARD TO SOME OF THE ART.

14         LET ME JUST ASK THE SAME QUESTION I ASKED

15    MR. MCELHINNY.  WHAT DO YOU THINK THE NEXUS NEEDS

16    TO BE BETWEEN THE DISPUTED INTELLECTUAL PROPERTY

17    AND THE REASON THAT CONSUMERS ACTUALLY BUY A

18    CERTAIN DEVICE FOR A PRELIMINARY INJUNCTION?

19         MS. SULLIVAN:  WELL, YOUR HONOR, WE

20    BELIEVE THAT THE ORDINARY OBSERVER WOULD HAVE TO

21    PURCHASE THE ALLEGED INFRINGING PRODUCT MISTAKING

22    IT FOR THE OTHER ONE BASED ON THE DESIGN ELEMENTS,

23    WHICH WERE THE ORNAMENTAL ELEMENTS, NOT THE

24    FUNCTIONAL ELEMENTS.

25         AND IN OUR IRREPARABLE HARM SHOWING, YOUR

1    HONOR, WE'VE SHOWN THAT APPLE'S OWN STUDIES SHOW

2    THAT CONSUMERS DO NOT SWITCH TO ANDROID PHONES FROM

3    APPLE PHONES AND THAT APPLE'S OWN STUDIES SUGGEST

4    THAT THE DESIGN AND COLOR IS A TRIVIAL, A TRIVIAL

5    REASON FOR CONSUMERS TO BUY PHONES.

6         NOW, YOU HEARD MR. MCELHINNY TRY TO AVOID

7    THE CONSEQUENCE OF THAT STUDY BY SAYING, "WELL,

8    BRAND, DESIGN, IT'S ALL THE SAME THING."

9         BUT IT'S NOT.

10        TO PREVAIL ON AN INFRINGEMENT CLAIM FOR A

11   DESIGN PATENT, APPLE WOULD HAVE TO SHOW THAT

12   CONSUMERS ARE BEING DECEIVED INTO BUYING AN ACCUSED

13   PHONE, OR AN ACCUSED TABLET RATHER THAN APPLE'S

14   PRODUCTS BASED ON A CONFUSION ABOUT DESIGN, MEANING

15   ORNAMENT, NOT FUNCTION.

16        AND YOUR HONOR, THE CORE OF OUR ARGUMENT

17   IS REALLY THIS:  THAT DESIGN PATENT LAW IS NARROW

18   AND SPECIFIC.

19        IN FACT, RICHARDSON REMINDS US THAT IN A

20   CROWDED FIELD LIKE THIS ONE, THE DESIGN PATENT MUST

21   BE CONSTRUED NARROWLY, PRECISELY SO THAT DESIGN

22   PATENTS CAN'T OVERPROTECT, CAN'T SWALLOW UP A WHOLE

23   WORLD OF THINGS THAT AREN'T TRULY THE ORNAMENTAL

24   FEATURES OF A PHONE THAT ARE NOT NECESSARY TO ITS

25   FUNCTION.

1              WE'VE TRIED TO SHOW YOUR HONOR THAT THE

2     FEATURES OF THE CLAIMED PATENT, THE DESIGN

3     FEATURES, ELEMENT BY ELEMENT AND TAKEN AS A WHOLE,

4     ARE ALL ABOUT FUNCTIONALITY.

5              THEY'RE NOT JUST MORE FUNCTIONAL THAN

6     ORNAMENTAL.  THEY'RE ALL ABOUT FUNCTIONALITY.

7     THEY'RE ALL ABOUT HOW TO USE A PRODUCT BETTER AND

8     TO MAKE IT AT LOWER COST AND GREATER QUALITY.

9              AND WHERE THAT'S THE CASE, THE PATENT LAW

10    SHOULD NOT BE USED TO CREATE A MONOPOLY ON BLACK

11    FLAT SURFACED MEDIA SCREENS WITH ROUNDED CORNERS IN

12    WHICH NO ONE ELSE CAN ENTER THE SPACE AND COMPETE,

13    EVEN IF THE ORNAMENTAL FEATURES OF THEIR PHONES

14    HAVE MULTIPLE DIFFERENCES FROM THE CLAIMED DESIGN.

15             SO WE THINK THAT YOU DO HAVE TO ASK

16    WHETHER A PURCHASER WOULD BE DECEIVED INTO BUYING

17    THE WRONG PHONE BASED ON THE ORNAMENTAL ELEMENTS

18    RATHER THAN THE FUNCTIONAL ELEMENTS.

19             AND WHEN WE GET TO IRREPARABLE HARM,

20    WE'LL BE HAPPY TO TALK MORE ABOUT HOW TRIVIAL

21    DESIGN IS IN APPLE'S OWN STUDIES, DESIGN UNDERSTOOD

22    AS ORNAMENT IN APPLE'S OWN STUDIES AS A REASON FOR

23    BUYING A PHONE.

24             THE COURT:  LET ME ASK YOU ABOUT

25    IRREPARABLE HARM.

                                                    57

1          SO SAMSUNG HAS BEEN ACTUALLY GIVING ITS

2     TABLETS OUT FOR FREE WITH OTHER PURCHASES OF

3     SAMSUNG PRODUCTS WHICH, IN MY MIND, ENFORCES THAT

4     THERE IS SOME PATH DEPENDENCY.

5          IF YOU GET A SAMSUNG TABLET, THEN YOU'RE

6     MORE LIKELY TO BUY THE ACCESSORIES, BUY THE

7     DOWNSTREAM NEXT VERSION OF THE TABLET, THAT YOU'RE

8     GOING TO MAYBE BUY MORE APPLICATIONS THAT GO WITH

9     THE SAMSUNG TABLET, AND THAT -- OTHERWISE WHY WOULD

10    YOU GIVE IT OUT FOR FREE UNLESS YOU THOUGHT THAT

11    THERE WOULD BE SOME DOWNSTREAM VALUE?  BECAUSE

12    YOU'RE NOT MAKING ANY MONEY SINCE YOU'RE GIVING

13    THIS FOR FREE.

14         SO WHAT DO YOU THINK ABOUT THAT PATH

15    DEPENDENCY ARGUMENT IN TERMS OF ACCESSORIES,

16    APPLICATIONS, FUTURE PRODUCTS, AND THEN OTHER

17    PRODUCTS BY THE SAME COMPANY?

18         MS. SULLIVAN:  YOUR HONOR, THAT MAY BE

19    SO, BUT THAT'S LEGITIMATE COMPETITION.

20         THAT IS, COMPETITORS WHO ARE NOT

21    INFRINGING OF ANY PROTECTABLE ELEMENT OF APPLE

22    PHONES ARE FREE TO TRY TO ATTRACT PURCHASERS AWAY

23    FROM OLD PHONES, FLIP PHONES AND SO FORTH, AND GET

24    THEM SET ON THE ANDROID PATH.

25         BUT WHAT APPLE NEEDS TO SHOW TO SHOW

1    IRREPARABLE HARM IS THAT THERE'S BEEN MARKET SHARE

2    TAKEN AWAY FROM IT THROUGH THIS ACTIVITY, AND

3    THAT'S WHAT IT'S FAILED TO PUT IN EVIDENCE.

4         IT FAILED TO PUT ANY EVIDENCE IN,

5    MEANINGFUL AT ALL, IN THE OPENING PAPERS.

6         WE DON'T THINK IT'S DONE ANY BETTER IN

7    THE REPLY PAPERS, YOUR HONOR.

8         WE THINK IN PARTICULAR IT FAILED TO

9    CONSIDER -- LET'S LOOK AT A FEW --

10        THE COURT:  LET ME ASK YOU A QUESTION,

11   THOUGH.

12        ASSUMING -- AND THESE ARE A LOT OF

13   ASSUMPTIONS THAT ARE NOT NECESSARILY THE CASE

14   HERE -- ASSUMING THAT THE PATENT WAS VALID,

15   ASSUMING THERE WAS INFRINGEMENT, IF SOMEONE COULD

16   PROVE THAT THERE IS SOME PATH DEPENDENCY HERE, IF

17   THEY LOSE THIS ONE SALE, THEY'RE GOING TO LOSE

18   SALES OF DOWNSTREAM APPLICATIONS, ACCESSORIES,

19   THEY'RE GOING TO LOSE THE SALE OF THE NEXT VERSION

20   OF THE PHONE OR THE TABLET, WOULD THAT --

21        MS. SULLIVAN:  I DON'T THINK THAT --

22        THE COURT:  WOULD THAT CONSTITUTE

23   IRREPARABLE HARM?

24        MS. SULLIVAN:  IT WOULD NOT BY ITSELF,

25   YOUR HONOR.

```
 1            WHAT WOULD HAVE TO BE SHOWN IS THAT

 2   SAMSUNG IS TAKING MARKET SHARE AWAY FROM APPLE

 3   RATHER THAN FROM OTHER ANDROID COMPETITORS.

 4            THERE ARE A HOST OF COMPANIES NOW IN THE

 5   ANDROID SPACE.

 6            AND AS MR. WAGNER'S, OUR ECONOMIC

 7   EXPERT'S TESTIMONY WAS ASSAILED A MOMENT AGO BY

 8   APPLE, I THINK IT WAS MISCHARACTERIZED.

 9            MR. WAGNER MADE CLEAR THAT IN A GROWING

10   MARKET, MARKET SHARE ANALYSIS CAN BE VERY

11   MISLEADING BECAUSE WHAT YOU HAVE TO ASK IS, HAS

12   MARKET SHARE BEEN TAKEN AWAY FROM APPLE, NOT -- AND

13   THAT'S WHAT APPLE'S ANALYSIS FAILS TO DO.  IT FAILS

14   TO DISCOUNT THE POSSIBILITY THAT THE PATH

15   DEPENDENCY YOUR HONOR DESCRIBED COULD BE HELPING

16   SAMSUNG BEAT OUT OTHER RIVALS, WHETHER IT'S HTC OR

17   MOTOROLA OR BLACKBERRY.

18            THE COURT:  RIGHT.  BUT IT TOOK A LONG

19   TIME FOR SAMSUNG ATTORNEYS TO IDENTIFY WHICH ONE

20   WAS A SAMSUNG TABLET VERSUS AN APPLE TABLET.

21            SO IF IT LOOKS THAT SIMILAR, HOW CAN YOU

22   NOT ASSUME THAT THIS IS NOT GOING TO BE SOLD AT THE

23   EXPENSE OF SOME OTHER ANDROID TABLET THAT DOESN'T

24   LOOK LIKE THIS, THAT IT'S GOING TO BE LOOKING LIKE

25   AN APPLE TABLET?
```

1          MS. SULLIVAN:  YOUR HONOR, WITH RESPECT,

2     I'M STANDING FAR AWAY FROM YOU AND YOU COVERED UP

3     THE BRAND LOGO.

4          THE COURT:  NO, THERE'S NO LOGO ON THE

5     FRONT.  I'M SHOWING YOU.  THERE'S NO LOGO ON THE

6     FRONT.

7          MS. SULLIVAN:  I'M SORRY.

8          THE COURT:  THESE ARE JUST BLACK SCREENS.

9          I'M AS CLOSE TO YOU AS I CAN GET.  I'M AT

10    THE BENCH, AND UNLESS YOU WANT ME TO COME DOWN TO

11    THE WELL.

12         THESE ARE SO SIMILAR, I DON'T SEE HOW YOU

13    CAN SAY THAT IF I PURCHASE ONE OF THESE THAT LOOKS

14    ALMOST IDENTICAL TO THIS OTHER PRODUCT, THAT I'M

15    REALLY GOING FOR SOME OTHER ANDROID PRODUCT THAT

16    LOOKS COMPLETELY DIFFERENT.

17         MS. SULLIVAN:  OKAY.  WELL, YOUR HONOR, I

18    DON'T MEAN TO QUIBBLE OVER THE SMALL EXPERIMENT,

19    BUT THE '889 PATENT IS FOR THE WHOLE DEVICE AND YOU

20    DIDN'T SHOW US THE BACK, AND THE ORDINARY OBSERVER

21    IS NOT LIMITED TO THE SENSE OF SIGHT, ESPECIALLY

22    NOT AT 15 FEET.

23         THE ORDINARY OBSERVER IS ALLOWED TO USE

24    ALL SENSES, INCLUDING --

25         THE COURT:  I DON'T THINK THIS IS 15

61

1    FEET, BUT YOU CAN LOOK.  OF COURSE YOU CAN SEE THE

2    LOGO.

3              BUT THE BACK, THE SHAPE IS VERY SIMILAR

4    (INDICATING).

5              I'M SHOWING ALL SIDES NOW, SHOWING THE

6    SIDE, THE BACK, YOU CAN SHOW HOW IT'S A SLOPED BACK

7    (INDICATING).

8              YOU CAN SHOW THAT THE -- I'M HOLDING THEM

9    RIGHT NEXT TO EACH OTHER (INDICATING).  THE

10   THINNESS IS VERY SIMILAR, THE SLOPING ON THE EDGES

11   IS VERY SIMILAR (INDICATING).

12             MS. SULLIVAN:  AND, YOUR HONOR, UNTIL

13   RECENTLY, APPLE DID NOT EVEN KNOW WHETHER THE

14   TABLET, IF THE TABLET YOU'RE HOLDING UP NOW,

15   EMBODIED THE '889 PATENT.

16             IF YOU LOOK AT THE DRAWING, THE '889 IS

17   DRAWN TO A MUCH GREATER THICKNESS AND, IN FACT,

18   APPLE DIDN'T CLAIM THAT THE '889 EMBODIED --

19   SORRY -- DIDN'T CLAIM THAT THE TABLET THAT YOU JUST

20   HELD UP, THE IPAD, EMBODIED THE '889 PATENT UNTIL

21   RECENTLY.

22             SO REMEMBER WE'RE FOCUSSING NOT ON THE

23   PRODUCT, WE'RE FOCUSSING ON THE DRAWING, THE '889

24   DRAWING.

25             WE THINK THAT OUR TABLET OBVIOUSLY

1    DIFFERS FROM THE DESIGN DRAWING WITH RESPECT TO THE

2    ELEMENT OF THINNESS THAT YOUR HONOR JUST DESCRIBED.

3            IN FACT, SAMSUNG HAS LONG PRIDED ITSELF

4    ON MAKING VERY THIN PRODUCTS.  THEY'RE A LEADER IN

5    THAT AREA.

6            YOUR HONOR, I WANT TO GO BACK TO THE

7    IMPORTANT PIECE HERE, WHICH IS IT IS NOT OUR BURDEN

8    TO PROVE INVALIDITY BY CLEAR AND CONVINCING

9    EVIDENCE, AND IT IS NOT OUR BURDEN TO SHOW

10   NONINFRINGEMENT AT THIS STAGE.

11           WHAT IS OUR BURDEN TO DEFEAT THE

12   PRELIMINARY INJUNCTION IS TO RAISE SUBSTANTIAL

13   QUESTIONS, AND THERE CANNOT BE, I THINK, ANY DOUBT

14   ON THIS RECORD THAT WE RAISED SUBSTANTIAL QUESTIONS

15   OF INVALIDITY.

16           ON THE '889, YOUR HONOR, YOU ALREADY

17   REFERRED TO THE FIDLER TABLET, 1994.

18           WE THINK FIDLER AND BLOOMBERG ARE PRIOR

19   ART INVALIDATING THE '889 PATENT.

20           TABLETS WERE -- RECTANGULAR TABLETS

21   WERE --

22           THE COURT:  I PROBABLY AGREE WITH YOU ON

23   THE KNIGHT-RIDDER 1994.

24           MS. SULLIVAN:  WELL, THEN WE'LL ACCEPT

25   THAT, YOUR HONOR.

1           THE COURT:  BUT LET ME ASK, ISN'T THERE

2     SOME BRAND DILUTION, THOUGH?  IF YOU ARE SELLING

3     PRODUCTS THAT -- I WOULD SAY ON THESE TABLETS, I

4     THINK THEY DO INFRINGE.

5           BUT I THINK APPLE HAS A PROBLEM WITH THE

6     VALIDITY OF THE '889 BASED ON KNIGHT-RIDDER, THE

7     1981 AND 1994 MORE SPECIFICALLY.

8           BUT ISN'T THERE SOME BRAND DILUTION HERE

9     THAT'S GOING ON?  LIKE WHY SHOULD YOU BE ABLE TO

10    SELL A PRODUCT THAT LOOKS VIRTUALLY IDENTICAL FOR

11    MUCH LESS A PRICE, OR GIVE IT AWAY FOR FREE?  ISN'T

12    THERE SOME UNFAIR COMPETITION ASPECT OF THAT?

13          GO AHEAD.

14          MS. SULLIVAN:  YOUR HONOR, WE'RE NOT HERE

15    BEFORE YOU ON UNFAIR COMPETITION.

16          THE COURT:  I UNDERSTAND.

17          MS. SULLIVAN:  OR TRADEMARK INFRINGEMENT

18    OR TRADEMARK DILUTION BY -- OR CONFUSION OF SOURCE

19    CONFUSION OR ORIGIN CONFUSION.  WE'RE NOT TALKING

20    ABOUT THAT PART OF THE CASE HERE.

21          APPLE ELECTED TO SEEK A PRELIMINARY

22    INJUNCTION ON DESIGN PATENT INFRINGEMENT, AND THE

23    CONCEPT OF DILUTION IS NOT PART OF DESIGN PATENT

24    INFRINGEMENT ANALYSIS.

25

1              THE COURT:  BUT IT COULD BE PART OF THE

2    IRREPARABLE HARM IF THERE'S BRAND DILUTION THAT IS

3    LEADING CONSUMERS TO FEEL LIKE, "LOOK, I CAN GET

4    THE EXACT IDENTICAL LOOKING PRODUCT THAT HAS THE

5    SAME FUNCTIONALITY FOR HALF THE PRICE OR FOR FREE,"

6    THEN ISN'T THAT GOING TO LEAD TO SOME BRAND

7    DILUTION?

8              MS. SULLIVAN:  YOUR HONOR, THERE'S NO

9    EVIDENCE OF BRAND DILUTION.  APPLE HAS NOT PUT IN

10   ANY EVIDENCE THAT THIS DILUTING EFFECT HAS

11   HAPPENED.

12             IN FACT, THEIR OWN STUDIES SHOW THAT

13   APPLE CUSTOMERS ARE EXTRAORDINARILY LOYAL.

14             AND THEY HAVEN'T PROVED THAT MARKET SHARE

15   HAS BEEN TAKEN AWAY FROM THEM AS OPPOSED TO BEING

16   TAKEN AWAY FROM OTHER PHONE COMPETITORS.

17             SO WE DON'T THINK YOU CAN WAVE A VAGUE

18   KIND OF DON'T DO TO APPLE WHAT WAS DONE TO BORDEAUX

19   WINE, A DIMINISHMENT OF BRAND VALUE.  THAT'S NOT

20   WHAT'S AT ISSUE HERE.

21             ON A PRELIMINARY INJUNCTION, IT'S CLEAR

22   THAT APPLE HAS TO SHOW EVIDENCE, IT CAN'T RELY ON

23   ATTORNEY ARGUMENT, AND IT DOESN'T HAVE ANY EVIDENCE

24   THAT THE BRAND HAS BEEN DILUTED.

25             TO THE CONTRARY.  APPLE SALES AND

1    PREORDERS HAVE CONTINUED TO RISE EXPONENTIALLY

2    WITHOUT REGARD TO THE INTRODUCTION OF THE SAMSUNG

3    PHONES.  THAT'S CLEAR IN THE RECORD.

4             APPLE HAS FAILED TO SHOW THAT THE MARKET

5    SHARE HAS BEEN TAKEN AWAY AT THE EXPENSE OF APPLE

6    AS OPPOSED TO OTHER COMPETITORS.

7             AND APPLE'S OWN STUDIES SHOW THAT VERY

8    FEW CUSTOMERS SWITCH FROM AN APPLE PHONE TO AN

9    ANDROID PHONE.  THAT'S ILLUSTRATED IN YOUR DECK AT

10   PAGE 209.

11            SO I JUST WANT TO -- I DON'T WANT TO

12   SUGGEST WE AGREE WITH YOUR HONOR'S DESCRIPTION OF

13   WHAT WE DO.  WE'RE NOT GIVING AWAY THE PHONES FOR

14   FREE.

15            BUT LET'S JUST GO TO THE MAIN POINT,

16   WHICH IS IT'S APPLE'S BURDEN TO SHOW EVIDENCE OF

17   IRREPARABLE HARM.

18            NO, A VAGUE POSSIBILITY OF TRADE DILUTION

19   IS NOT ENOUGH.

20            BUT, YOUR HONOR, TWO OTHER FEATURES OF

21   OUR ARGUMENT -- AND THEN I'LL TURN IT OVER TO

22   MR. JOHNSON FOR ANY QUESTIONS YOU MIGHT HAVE ON

23   '381 -- TWO OTHER KEY FEATURES OF OUR ARGUMENTS ON

24   IRREPARABLE HARM ARE UNREASONABLE DELAY AND

25   COMPENSABILITY WITH MONEY DAMAGES.

1          THE UNREASONABLE DELAY IS CLEAR HERE.

2     YOUR HONOR HAS MENTIONED IT BEFORE IN THE JUNE

3     HEARING.

4          THE UNREASONABLE DELAY HERE, WHICH IS

5     ILLUSTRATED IN THE TIMELINES BEGINNING ON PAGE

6     220 -- I'M SORRY.

7          IF WE GO BACK AND START WITH THE

8     TELEPHONES, BEFORE WE GET TO THE BOUNCE BACK

9     PATENT, THE UNREASONABLE DELAY IS ILLUSTRATED ON

10    SLIDE 216.

11         IPHONE'S ANNOUNCED IN JANUARY '07.  IN

12    FEBRUARY OF '07, SAMSUNG INTRODUCED -- ANNOUNCES

13    THE F700, WHICH IS ONE OF THE FIRST PRODUCTS THAT

14    APPLE SAYS INFRINGED.

15         AGAIN, 50 MONTHS GO BY.  SAMSUNG

16    INTRODUCES, IN MARCH 2010, THE GALAXY I9000; IT

17    ANNOUNCES IN JUNE OF 2010 THE VIBRANT; IT ANNOUNCES

18    IN JANUARY OF 2011 THE GALAXY S 4G AND INFUSE 4G.

19         WHEN DOES APPLE FIRST FILE A COMPLAINT?

20    APRIL OF '11.

21         WHEN DOES IT FIRST FILE A REQUEST FOR A

22    PRELIMINARY INJUNCTION?  JULY OF '11.

23         NOW, IF THE COPYING OF THESE, THE

24    SUPPOSED COPYING OF THE SUPPOSED DESIGN PATENT

25    INFRINGEMENT WAS CAUSING IRREPARABLE HARM, WHY A

1    DELAY OF 50 MONTHS AND TWO AND A HALF MONTHS AFTER

2    YOU FILED A COMPLAINT BEFORE YOU FILE?

3             AND IF YOU FLIP FORWARD TO THE NEXT SLIDE

4    ON PAGE 217, THE SAME GOES TO THE BOUNCE FEATURE OF

5    THE '381 PATENT.

6             THERE'S AN E-MAIL WHICH IS POIGNANT TO

7    REVIEW AT THIS POINT, WHICH IS AN E-MAIL FROM

8    APPLE'S THEN COO, TIM COOK, TO STEVE JOBS

9    DESCRIBING SAMSUNG'S GALAXY SI9000 SHOWING THE

10   BOUNCE FEATURE.

11            AND YET FROM MARCH 2010 TO 4-11, TO APRIL

12   OF '11, THERE'S 13 MONTHS OF INTERVENING TIME.

13            SO THE DELAY IN FILING IS ALONE ENOUGH TO

14   DEFEAT ANY SHOWING OF IRREPARABLE HARM HERE.

15            IT'S CLEAR FROM CASES LIKE HIGH TECH AND

16   OTHER FEDERAL CIRCUIT CASES THAT WHERE THERE'S BEEN

17   UNREASONABLE DELAY, ANY CLAIM OF IRREPARABLE HARM

18   IS DEFEATED.

19            AND THE -- A FURTHER POINT IS THAT APPLE

20   WAITED FROM THE POINT AT WHICH WE BELIEVE IT'S

21   ESTABLISHED IN THE RECORD NEGOTIATIONS BROKE DOWN

22   BETWEEN THE COMPANIES, IT WAITED A CONSIDERABLE

23   PERIOD OF TIME AFTER THAT BEFORE IT FILED THE

24   COMPLAINT.

25            NOW, LAST ON COMPENSABILITY, YOUR HONOR,

1     YOU RAISED THE POINT, WHY CAN'T THERE BE A SHOWING

2     OF MONETARY DAMAGES AS TO THE ACCESSORIES?

3           THERE CERTAINLY COULD BE, AND THAT IS THE

4     ONLY KIND OF COMPENSATION THAT SHOULD BE APPLIED

5     HERE.

6           THERE'S NO IRREPARABLE HARM THAT CAN'T BE

7     SOLVED BY MONETARY DAMAGES AS TO LOSS OF ACCESSORY

8     SALES.

9           BUT, YOUR HONOR, THERE'S ALSO NO REASON

10     WHY MONETARY COMPENSATION IS NOT ENOUGH TO HANDLE

11     ANY INFRINGEMENT.

12           THERE IS NONE, AND THE PATENTS ARE

13     INVALID, BUT IF THERE WERE VALID PATENTS AND THEY

14     WERE FRINGED, THERE'S NO REASON WHY DAMAGES OR

15     ROYALTY BEARING LICENSES COULDN'T BE THE MEANS OF

16     SATISFYING THAT.

17           AND, IN FACT, JUST TO MAKE THE POINTS,

18     THE THREE KEY POINTS HERE, YOUR HONOR, THE -- APPLE

19     HAS LICENSED THE '381 PATENT TO IBM AND NOKIA, AND

20     APPLE HAS OFFERED SAMSUNG A LICENSE,

21     NOTWITHSTANDING ITS VIEW THAT THE PROPRIETARY

22     FEATURES OF APPLE PATENTS WERE INVOLVED IN THE

23     LICENSE, I'M NOT AT LIBERTY TO DISCUSS THE TERMS.

24           NOW, I KNOW THAT APPLE WILL GET UP AND

25     SAY, "OH, YOU CAN'T MENTION THAT LICENSE OFFER

1    BECAUSE OF RULE 408."

2              BUT THAT'S INCORRECT.  WE ARE FREE TO

3    REMIND YOUR HONOR THAT THE OFFER OF A LICENSE WAS

4    MADE.

5              WE'RE NOT INTRODUCING THAT FOR THE

6    PURPOSE OF PROVING LIABILITY, INVALIDITY, OR THE

7    AMOUNT OF A CLAIM, THAT'S WHAT'S PRECLUDED UNDER

8    FEDERAL RULE OF EVIDENCE 408, BUT ONLY TO SHOW THAT

9    ANY INFRINGEMENT CAN BE REMEDIED BY MONEY DAMAGES.

10             AND THE FACT THAT SAMSUNG WAS OFFERED A

11   LICENSE BY APPLE SHOWS THAT MONETARY COMPENSATION

12   FOR THE INFRINGEMENT IS SATISFACTORY.

13             SO WE DON'T THINK THERE'S ANYTHING CLOSE

14   TO A SHOWING OF IRREPARABLE HARM HERE, YOUR HONOR,

15   ESPECIALLY IN THIS WORLD OF --

16             THE COURT:  I AGREE WITH YOU ON THE '381.

17             MS. SULLIVAN:  OKAY.  DO YOU WANT TO HEAR

18   ANYTHING ON THE '381 WITH RESPECT TO INVALIDITY

19   OR -- WE HAVE SOME NEW PRIOR ART THAT MIGHT BE

20   HELPFUL TO SHOW YOUR HONOR.

21             THE COURT:  WELL, JUST TWO QUICK

22   QUESTIONS:  WHETHER -- WHETHER SAMSUNG BELIEVES

23   THAT WE DO NEED TO CONSTRUE "EDGE OF AN ELECTRONIC

24   DOCUMENT" OR NOT.

25             MS. SULLIVAN:  I'M GOING TO ASK

1      MR. JOHNSON TO ADDRESS THAT.

2               THE COURT:  OKAY.

3               MR. JOHNSON:  THANK YOU, YOUR HONOR.

4               YES, SAMSUNG BELIEVES "ELECTRONIC

5      DOCUMENT" AND "EDGE," AS WELL AS "DISPLAY" AND

6      "TRANSLATING THE FIRST DIRECTION" ACTUALLY NEED TO

7      BE CONSTRUED, AND THE REASON FOR THAT IS WE'VE

8      LOCATED -- IN THE SHORT AMOUNT OF TIME THAT THE

9      MOTION HAS BEEN PENDING, WE LOCATED THREE PIECES OF

10     PRIOR ART WHICH WE MENTION IN OUR PAPERS, THE

11     LAUNCHTILE PRIOR ART, WHICH WAS NOT CONSIDERED BY

12     THE PATENT OFFICE DURING RE-EXAMINATION PROCEEDINGS

13     BECAUSE IT'S NOT A PRINTED PUBLICATION, WHICH IS

14     REQUIRED; THE LIRA REFERENCE; THE VAN DEN HOVEN

15     REFERENCE; AND WE'VE ALSO LOCATED VERY RECENTLY, IN

16     THE LAST TWO WEEKS, A REFERENCE THAT WE REFER TO AS

17     THE DIAMONDTOUCH, A TOUCH SCREEN WHICH WAS

18     DEVELOPED BY MITSUBISHI.  AND THAT, AGAIN, IS NOT A

19     PUBLICATION.  WE PUT THAT IN OUR INVALIDITY

20     CONTENTIONS ON OCTOBER 7TH AND I'M PREPARED TO WALK

21     YOU THROUGH IT.

22              BUT THE REASON WE BELIEVE THAT THOSE

23     ELEMENTS, THOSE LIMITATIONS NEED TO BE CONSTRUED IS

24     BECAUSE WHEN I -- AND IF YOU COULD PUT UP SLIDE

25     137, PLEASE -- WHEN I DEPOSED APPLE'S EXPERT,

71

1    DR. BALAKRISHNAN, AND I WALKED HIM THROUGH THE

2    LAUNCHTILE PRIOR ART AND I ASKED HIM TO COMPARE IT

3    TO THE CLAIMS OF THE PATENT, HE -- IN THE 20 YEARS

4    I'VE BEEN DOING THIS, FRANKLY, I'VE NEVER RECEIVED

5    SUCH CLEAR ADMISSIONS FROM AN EXPERT WHERE HE

6    WALKED THROUGH AND HE SAID EACH ONE OF THESE

7    LIMITATIONS WAS PRESENT.

8              TURNING TO SLIDE 137.

9              DOES LAUNCHTILE HAVE A

10   COMPUTER-IMPLEMENTED METHOD?

11             IT IS A COMPUTER-IMPLEMENTED METHOD.

12             THE NEXT LIMITATION, AT A DEVICE WITH A

13   TOUCH SCREEN DISPLAY --

14             THE COURT:  BUT LET ME ASK YOU SOMETHING.

15   IF THE COURT ADOPTS APPLE'S CONSTRUCTION OF

16   "DISPLAY" AND "FIRST DIRECTION," DOES THAT MEAN

17   THEN YOU CONCEDE INFRINGEMENT?

18             MR. JOHNSON:  NO, YOUR HONOR.

19             THE COURT:  BECAUSE I'M NOT SURE I'M

20   BUYING THE FINGER WIGGLING AND NOT BEING ABLE TO GO

21   IN A STRAIGHT LINE ARGUMENT.

22             MR. JOHNSON:  NO, YOUR HONOR.

23             THE COURT:  OKAY.  WHY IS THAT?

24             MR. JOHNSON:  LET ME SAY FIRST OF ALL,

25   EVEN IF WE -- EVEN IF THE COURT ADOPTS APPLE'S

1    CONSTRUCTION -- AND THE REPLY DECLARATION OF

2    DR. BALAKRISHNAN HAS A NEW DEFINITION OF

3    "ELECTRONIC DOCUMENT" THAT WAS NOT PRESENT DURING

4    HIS DEPOSITION, AND FRANKLY, IT'S NOT IN OUR

5    OPPOSITION PAPERS BECAUSE IT'S BRAND NEW EVIDENCE

6    THAT WAS OFFERED FOR THE FIRST TIME IN REPLY, AND I

7    JUST WANT TO ADDRESS THAT BRIEFLY.

8            IF YOU GO TO SLIDE 152, I ASKED HIM IN

9    HIS DEPOSITION, IN AUGUST OF 2011, YOU KNOW, WHAT

10   IS YOUR DEFINITION OF AN ELECTRONIC DOCUMENT?

11           AND HE ANSWERED, "MY DEFINITION OF AN

12   ELECTRONIC DOCUMENT WOULD BE SOMETHING VISUALLY

13   REPRESENTABLE ON THE SCREEN THAT HAS A DEFINED SET

14   OF BOUNDARIES."

15           I ASKED HIM RIGHT AFTER THAT, AN

16   ELECTRONIC -- SLIDE 153 -- "AN ELECTRONIC DOCUMENT

17   CAN HAVE A BOUNDARY THAT IS INTERNAL TO THE SCREEN

18   OR, YOU KNOW, DOESN'T HAVE TO BE AT THE EDGE OF THE

19   SCREEN, RIGHT?"

20           "SO AS I ANSWERED EARLIER, AND MY OPINION

21   IS THAT THE BOUNDARY OF THE DOCUMENT, IN THIS CASE,

22   THIS EDGE IS ONE BOUNDARY OF IT, DOES NOT HAVE TO

23   MATCH THE EDGE OF THE SCREEN."

24           THAT'S IMPORTANT, BECAUSE WHEN YOU LOOK

25   AT SLIDE 155 AND YOU LOOK AT LAUNCHTILE'S PRIOR ART

1    AND YOU LOOK AT, FRANKLY, HOW THE PRODUCTS OPERATE,

2    WHAT YOU SEE IN SLIDE 155 IS HIS DEFINITION IN HIS

3    DEPOSITION OF AN ELECTRONIC DOCUMENT.

4         THESE ARE BOTH ELECTRONIC DOCUMENTS

5    ACCORDING TO THE DEPOSITION, THE DEPOSITION

6    TESTIMONY THAT WE RECEIVED.

7         DR. BALAKRISHNAN AND APPLE RECOGNIZED

8    THEY HAD A PROBLEM WITH THIS PRIOR ART.

9         SO WHAT DID THEY DO?  THEY SUBMITTED A

10   NEW DEFINITION OF "ELECTRONIC DOCUMENT."

11        AND LET ME SHOW YOU ACTUALLY SLIDE 157.

12        SLIDE 157 -- AND AGAIN, SORRY TO GO

13   THROUGH THIS, BUT IT'S NOT IN OUR OPPOSITION PAPERS

14   AND FIRST TIME WE SAW THIS ARGUMENT WAS ON REPLY,

15   157, I PUT A GRID IN FRONT OF DR. BALAKRISHNAN AND

16   I ASKED HIM TO DRAW, IF THIS WERE A SCREEN, ARE

17   THESE ELECTRONIC DOCUMENTS IN THE YELLOW

18   HIGHLIGHTING ON 157, AND HE SAID YES.

19        AND I ASKED HIM THEN, POINT TO THE EDGE

20   BEYOND THE ELECTRONIC DOCUMENT.

21        AND HE POINTED TO THE BOXES THAT ARE

22   LABELED 14 AND 20 HERE AND CIRCLED IN RED ON THE

23   SLIDE THAT WE SEE HERE.

24        AND HIS TESTIMONY MATCHES THAT.  QUOTE,

25   "SO GIVEN THOSE HYPOTHETICALS, AREA 14 AND 20 WOULD

1    BE BEYOND THE EDGE OF THE DOCUMENT, GIVEN THAT

2    SCENARIO."

3              WHAT HE DOES IN HIS REPLY DECLARATION IS

4    HE COMES IN FOR THE VERY FIRST TIME, IN TRYING TO

5    DISTINGUISH OVER LAUNCHTILE AND IN TRYING TO REFUTE

6    WHAT PROFESSOR VAN DAM HAS SAID FROM BROWN

7    UNIVERSITY, DR. BALAKRISHNAN COMES IN AND SAYS --

8    THIS IS SLIDE 158 -- "THESE INTERNAL LINES CANNOT

9    BE TREATED AS EDGES BECAUSE THERE IS STILL CONTENT

10   OUTSIDE OF THE BOUNDARIES THAT THE USER CAN SCROLL

11   TO."

12             THAT IS A NEW, MORE NARROW DEFINITION OF

13   "ELECTRONIC DOCUMENT."

14             AND UNDER THIS DEFINITION, YOUR HONOR,

15   THIS NEW DEFINITION, WE DON'T INFRINGE.

16             AND I'M HAPPY TO WALK THROUGH THE TWO

17   ARGUMENTS WITH RESPECT TO "DISPLAY," AND ALSO WITH

18   RESPECT TO "FIRST DIRECTION" IF YOU'D LIKE, IF

19   YOU -- IF YOU'D FIND THAT INSTRUCTIONAL.

20             THE COURT:  NO, THAT'S OKAY.  THAT'S

21   OKAY.

22             MR. JOHNSON:  BUT I DO WANT TO MENTION

23   THE DIAMONDTOUCH PRIOR ART, BECAUSE THE

24   DIAMONDTOUCH PRIOR ART IS SOMETHING THAT WE JUST

25   LOCATED, WE PUT IT IN OUR INVALIDITY CONTENTIONS.

```
 1                    IF YOU TURN TO SLIDE --

 2              MR. MCELHINNY:  EXCUSE ME, YOUR HONOR.

 3              THIS IS NOT IN THE RECORD AND WE HAVE NOT

 4    SEEN IT.

 5              MR. JOHNSON:  WELL, IT WAS IN OUR

 6    INVALIDITY CONTENTIONS WHICH WE SERVED ON YOU.  SO

 7    I -- I ACTUALLY THINK YOU HAVE SEEN IT.

 8              MR. MCELHINNY:  I'M TALKING ABOUT AS PART

 9    OF THE ARGUMENT FOR THIS.

10              NO ONE HAS BEEN DEPOSED.  THIS IS JUST --

11    IT'S NOT IN THE RECORD THAT'S BEFORE YOU.

12              THE COURT:  HOW IS THIS DIFFERENT THAN

13    WHAT YOU SUBMITTED YESTERDAY?

14              MR. MCELHINNY:  THE DIFFERENCE --

15              THE COURT:  YOU HAVE NOT PREVIOUSLY SEEN

16    THIS AT ALL?

17              MR. MCELHINNY:  WELL, I PERSONALLY HAVE

18    NOT SEEN THIS AT ALL.

19              BUT THE DIFFERENCE BETWEEN WHAT WE

20    SUBMITTED YESTERDAY WAS DOCUMENTS THAT WERE

21    PRODUCED DURING DISCOVERY BY THE OTHER SIDE

22    PURSUANT TO COURT ORDER.

23              THIS IS, AS I UNDERSTAND IT -- BECAUSE I

24    DON'T KNOW ANYTHING ABOUT IT -- BUT IT SOUNDS LIKE

25    THEY'RE OUT LOOKING FOR -- YOU KNOW, THEY'VE GOT A
```

1    WINNER CASE BUT THEY'RE OUT LOOKING FOR ADDITIONAL

2    PRIOR ART AND THEY WANT TO ARGUE IT TO YOU THIS

3    AFTERNOON FOR THE FIRST TIME.

4              THE COURT:  WELL, I'LL JUST SAY, I'M --

5    AT THIS POINT, I'M GOING TO DENY A PRELIMINARY

6    INJUNCTION ON THE '381 PATENT, AT A MINIMUM BECAUSE

7    I DON'T THINK THERE'S BEEN ANY SHOWING OF

8    IRREPARABLE HARM.

9              SO I DON'T KNOW IF IT'S NECESSARY EVEN TO

10   GET INTO THIS DISPUTE AT THIS TIME.

11             MR. JOHNSON:  OKAY.  THEN, YOUR HONOR,

12   I'LL SIT DOWN UNLESS YOUR HONOR HAS ANY OTHER

13   SPECIFIC QUESTIONS.

14             THE COURT:  NO, NO.  THANK YOU.

15             I DON'T THINK APPLE'S EVEN REALLY TRIED

16   TO MAKE AN IRREPARABLE HARM SHOWING AS TO THE '381

17   PATENT, SO --

18             MR. JOHNSON:  THANK YOU.

19             THE COURT:  JUST A FEW MINUTES,

20   MR. MCELHINNY.

21             LET ME ASK YOU IF YOU AGREE, JUST

22   LEGALLY, THAT SAMSUNG ONLY NEEDS TO ESTABLISH A

23   SUBSTANTIAL QUESTION OF INVALIDITY TO DEFEAT

24   LIKELIHOOD OF SUCCESS ON THE MERITS, OR -- THERE

25   DOES SEEM TO BE SORT OF UNCLARITY IN THE LAW, OR

1    WHETHER IF THEY MAKE THAT SHOWING, THEN THE MOVING

2    PARTY CAN COME BACK AND SHOW THAT THERE IS

3    LIKELIHOOD THAT THE PATENT IS VALID.

4         MR. MCELHINNY:  YES.  WE HAVE TWO

5    POSITIONS ON THIS.

6         THE COURT:  OKAY.

7         MR. MCELHINNY:  ONE, WE BELIEVE THAT THE

8    LAW, AS SET OUT BY THE UNITED STATES SUPREME COURT,

9    IS THAT ALL WE HAVE TO DO TO SHOW THAT IT IS LIKELY

10   THAT WE WILL WIN ON THE ISSUE OF VALIDITY AT TRIAL

11   SUBJECT TO THE PRESUMPTIONS THAT WILL BE APPLIED AT

12   TRIAL, THAT THAT IS OUR BASE POSITION.

13        THE COURT:  OKAY.

14        MR. MCELHINNY:  HAVING SAID THAT, I

15   ACKNOWLEDGE, BECAUSE WE'VE SUBMITTED BOTH OF THESE

16   CASES TO YOUR HONOR, THAT THERE IS CONFUSION IN THE

17   FEDERAL CIRCUIT LAW, BETWEEN SOME OF THE FEDERAL

18   CIRCUIT JUDGES WHO BELIEVE THAT THE FEDERAL CIRCUIT

19   SHOULD BE FOLLOWING THE SUPREME COURT, AND OTHER

20   CASES THAT SAY, AND YOUR HONOR HAS IT EXACTLY

21   RIGHT, IT'S THE TITAN TIRE CASE, THAT WE NEED TO

22   MAKE A SHOWING THAT IT'S LIKELY THAT WE WILL

23   SUCCEED AT TRIAL.

24        THE -- SAMSUNG CAN COME FORWARD AND RAISE

25   A SUBSTANTIAL QUESTION, AND THAT WE THEN HAVE THE

1    OPPORTUNITY TO SHOW THAT THAT SUBSTANTIAL QUESTION

2    LACKS SUBSTANTIAL MERIT.  THAT'S TITAN TIRE --

3    TITAN TIRE IS THE ONE THAT SETS THAT OUT, YOUR

4    HONOR.

5            THE COURT:  I DON'T HAVE ANY MORE

6    QUESTIONS FOR YOU, SO --

7            MR. MCELHINNY:  WHAT I WOULD LIKE TO DO,

8    JUST IF I -- FIRST, I UNDERSTAND YOUR HONOR'S

9    POSITION ON THE '381, BUT OF COURSE WE THINK WE

10   HAVE PROVED IRREPARABLE INJURY AND I WANTED TO

11   POINT OUT FOR YOUR HONOR THAT --

12           THE COURT:  OKAY.

13           MR. MCELHINNY:  -- ON INFRINGEMENT,

14   SAMSUNG HAS MADE NO SHOWING WHATSOEVER OF

15   INVALIDITY OF THE METHOD CLAIMS, THAT THERE'S NO

16   ARGUMENT THAT ANY OF THE METHOD CLAIMS WAS

17   DEMONSTRATED BEFORE THE CRITICAL DATE.

18           THE COURT:  OKAY.

19           MR. MCELHINNY:  ON -- WHAT I WOULD LIKE

20   TO DO, ON TWO PRIOR ART PIECES THAT WERE RAISED, I

21   WOULD LIKE TO SHOW YOU, ON THE PHONE PATENTS AT TAB

22   5, YOUR HONOR, IN THE BINDER THAT I GAVE YOU --

23           THE COURT:  WHY DON'T YOU ADDRESS THE

24   KNIGHT-RIDDER?

25           MR. MCELHINNY:  I WILL.  THAT'S WHAT I

1    WAS GOING TO --

2              THE COURT:  I THINK THAT INVALIDATES THE

3    '889, BUT GO AHEAD.

4              MR. MCELHINNY:  THAT IS AT TAB -- THAT IS

5    AT TAB 8, YOUR HONOR, OF OUR BINDER.  IT'S THE

6    SECOND TO LAST PAGE.

7              I ASSUME YOU'RE TALKING ABOUT THE 1994,

8    IS THAT THE ONE?

9              THE COURT:  1994.

10             MR. MCELHINNY:  AND I HAVE TO SAY THAT I

11   DON'T HAVE IT IN MY BINDER, BUT IN THE RECORD, AT

12   EXHIBIT D TO THE SHERMAN DECLARATION, SO THE

13   PICTURES THAT SAMSUNG SUBMITTED, THERE ARE EVEN

14   BETTER PICTURES BECAUSE THEY SHOW THE EDGE AND THE

15   BACK UNDER THIS CONCEPT THAT YOU NEED TO LOOK AT

16   THE FULL SCOPE OF THE DESIGN THAT'S PROVIDED.

17             AND I WANTED TO CALL YOUR ATTENTION TO

18   PARAGRAPH 45 OF MR. WOODRING'S DEPOSITION WHERE HE

19   GOES THROUGH LINE BY LINE ON THE SUBSTANTIAL

20   DIFFERENCES BETWEEN THIS AND THE APPLE IPHONE.

21             BUT IF YOU JUST LOOK AT THE PICTURES, AS

22   MR. WOODRING LOOKED AT THEM, THE 1994 FIDLER

23   PROTOTYPE IS NOT FLAT.

24             WHAT IT IS IS IT'S AN INSET GLASS PAGE

25   SURROUNDED BY A SOLID FRAME.

1          THE JUMPING FROM THESE FRAMES -- I SHOWED

2    YOU SAMSUNG'S EARLIER TABLETS, BUT THE JUMPING FROM

3    THE SOLID FRAME OUTSIDE TO A FLAT GLASS SURFACE

4    LITERALLY HAS BEEN ACKNOWLEDGED AS ONE OF THE

5    GREATEST JUMPS IN DESIGN IN TABLET PROGRESSION.

6    THAT IS THE BIG JUMP THAT HAPPENED HERE.

7          SO IT IS NOT A FLAT GLASS -- THE FRONT OF

8    IT IS NOT TRANSLUCENT BECAUSE IT HAS THIS OPAQUE

9    FRAME ALL THE WAY AROUND IT.

10          YOU HAVE TO UNDERSTAND THAT THE BAR

11   THAT'S SHOWN ON THE APPLE '889 PATENT, THE INSIDE

12   BAR, IS ACTUALLY UNDER THE GLASS.  THAT'S WHAT THE

13   HATCH LINES MEAN.

14          SO IF YOU LOOK AT YOUR IPAD THAT YOU HAD

15   UP THERE, THE BLACK RIM IS ACTUALLY UNDER THE FLAT

16   GLASS AND THE FLAT GLASS COVERS THE ENTIRE TOP OF

17   THE TABLET.

18          THE COURT:  WELL, WHY ISN'T THIS DESIGN

19   OBVIOUS?

20          MR. MCELHINNY:  WELL, FOR STARTERS, THERE

21   IS NO TESTIMONY FROM ANYONE IN THE RECORD --

22   THERE'S NO TESTIMONY FROM ANYONE IN THE WORLD, YOUR

23   HONOR, THAT THE DESIGN OF THE IPAD WAS OBVIOUS.

24          BUT THERE IS CERTAINLY NO PERSON OF

25   ORDINARY SKILL IN THE ART WHO SAID YOU COULD LOOK

81

1    AT THIS TABLET AND JUST DECIDE TO MAKE IT A FLAT

2    GLASS PLATE ON THE TOP AND NOT CHANGE THE WORLD.

3              AND IF YOU LOOK AT THE SECONDARY

4    CONSIDERATIONS, IF YOU LOOK AT THE QUOTES ABOUT

5    TABLETS ARE DEATH, NO ONE IS BUYING A TABLET UNTIL

6    THE IPAD CAME OUT, THE SECONDARY CONSIDERATIONS FOR

7    THE IPAD -- I MEAN, FRANKLY, YOUR HONOR, FOR YOUR

8    HONOR TO ISSUE AN OPINION THAT SAID THE DESIGN OF

9    THE IPAD WAS OBVIOUS WOULD BE SURPRISING, I GUESS.

10             BUT IF YOU -- IF YOU GET A CHANCE TO LOOK

11   AT THE FULL PICTURE, YOU'LL SEE THAT THE BACK OF

12   THIS FIDLER THING IS NOT A FLAT, SOLID PIECE OF

13   PLASTIC, EITHER.

14             IN FACT, IT HAS A DOOR WITH FOUR SCREWS.

15   IT'S GOT THE CLUNKY PORTS.

16             AND THE SIDE HAS THE PORTS -- IF YOU LOOK

17   AT THE ONE THAT'S IN OUR BINDER, FROM THE SIDE YOU

18   CAN SEE THAT IT DOESN'T HAVE THE SMOOTH SIDE.  IT

19   HAS NONE OF THE ELEGANCE.  IT HAS NONE OF THE

20   ELEGANCE.

21             WE ARE NOT ARGUING THAT THERE WERE NOT

22   TABLETS OUT THERE.  I SHOWED YOU THE SAMSUNG

23   TABLETS.  BUT THEY WERE ALL LIKE THIS.  THEY WERE

24   ALL BIG CLUNKY FRAMED ITEMS THAT LITERALLY NO ONE

25   WAS BUYING.

82

1          AND THE DIFFERENCE BETWEEN AN IPAD AND AN

2     OLD-FASHIONED -- IF YOU LOOK AT -- JUST TAKE A

3     KINDLE.  THIS IS A KINDLE.

4          AND IF YOU THINK OF THE DIFFERENCE OF A

5     FRAMED THING WITH A GLASS PAGE ON IT, IT IS AN

6     ENTIRELY DIFFERENT CONCEPT.

7          THE COURT:  OKAY.

8          MR. MCELHINNY:  JUST ON THE IRREPARABLE

9     INJURY, FOR THE RECORD, I WANT TO GIVE YOU

10    CITATIONS TO MR. WAGNER'S DEPOSITION, BECAUSE

11    WAGNER CONCEDED THAT APPLE IS LOSING MARKET SHARE.

12         AND THAT IS HO EXHIBIT D, PAGE 174, LINES

13    14 TO 19 OF HIS DEPOSITION.

14         HE ALSO CONCEDED WHAT YOUR HONOR --

15         THE COURT:  BUT DOES HE ACTUALLY -- IS HE

16    ABLE TO TIE THAT, THAT THAT MARKET SHARE LOSS IS

17    ACTUALLY BECAUSE OF SAMSUNG, OR IS THAT BECAUSE OF

18    SOME OF THE OTHER ANDROID PRODUCTS?

19         MR. MCELHINNY:  HE HAS CONCEDED IN HIS --

20    THE POSITION HE TOOK IN HIS DEPOSITION IS

21    BECAUSE -- ASSUMING THESE PATENTS ARE FRINGED,

22    APPLE WILL LOSE SALES.  IT HAS ALREADY LOST MARKET

23    SHARE BECAUSE THE PRODUCTS ARE IN THE MARKET.

24         BUT HE THEN SAYS, AS SAMSUNG WOULD SAY,

25    THAT THOSE DAMAGES ARE -- WILL BE CALCULABLE AT

```
1    TRIAL, AND THEN HE GOES INTO THE CROSS-EXAMINATION

2    THAT I GAVE YOUR HONOR ABOUT THE FUTURE PATH AND

3    THE PATH DEPENDENCY.

4              HE EXPRESSLY CONCEDES, AGAIN, IT'S

5    EXHIBIT D TO THE HO -- AT PAGES 154, LINE 22 TO

6    155, LINE 9, AND 170, LINES 19 TO 171, LINE 6.

7              SO THE QUESTIONS THAT YOUR HONOR HAS

8    RAISED ARE QUESTIONS THAT WE ASKED THEIR EXPERT AND

9    WHICH WERE EXPRESSLY CONCEDED.

10             THE COURT:  LET ME ASK ANOTHER QUESTION,

11   AND THIS IS WITH REGARD TO THE DELAY.

12             THERE'S CLEARLY A WAR GOING ON NOW

13   BETWEEN THE IPHONE OPERATING SYSTEM AND THE ANDROID

14   OPERATING SYSTEM.

15             IS THIS JUST A BIG PIECE OF THAT OVERALL

16   NUCLEAR WAR THAT'S HAPPENING, AND IS THAT WHAT'S

17   SORT OF CONTROLLING SOME OF THE TIMING OF THIS?

18             MR. MCELHINNY:  MY -- I DON'T -- THE

19   ANSWER TO YOUR QUESTION IS IT TAKES TWO SIDES TO

20   MAKE A WAR, SO I DON'T KNOW THE ANSWER TO ALL OF

21   THAT.

22             THE COURT:  UM-HUM.

23             MR. MCELHINNY:  MY PART OF IT -- MY PART

24   OF IT IS SAMSUNG'S INFRINGEMENT OF OUR PATENTS.

25             BUT ON THE DELAY ISSUE -- ON THE DELAY
```

1    ISSUE, ONE, WE'VE CITED YOUR HONOR PREVIOUS

2    DISTRICT COURT CASES THAT MAKE THE POINT THAT IT'S

3    NOT A FREE PASS.  YOU DON'T GET TO KEEP COMING OUT

4    WITH NEW PRODUCTS.

5            BUT ON THE QUESTION OF WHETHER

6    NEGOTIATIONS WERE STILL ONGOING, I CITE YOU TO

7    EXHIBIT D OF CHIP LUTTON'S REPLY DECLARATION, AND

8    THERE YOU WILL SEE WHAT SAMSUNG SAID TO US IN A

9    LETTER WHEN WE FILED THIS LAWSUIT.

10           THE COURT:  BUT THAT ONLY -- THAT DOESN'T

11   EXPLAIN THE DELAY FROM 2007.

12           MR. MCELHINNY:  THERE IS NO DELAY FROM --

13   FOR THE PRODUCTS -- ALL OF THE PRODUCTS -- LET'S BE

14   CLEAR.  THE TAB WAS RELEASED AFTER WE FILED THIS

15   LAWSUIT.

16           THE COURT:  WELL, YOU'RE SAYING THESE

17   PARTICULAR ITERATIONS.

18           MR. MCELHINNY:  NO, NO.  THERE WAS NO

19   PREVIOUS TAB.  THIS IS THE FIRST EVER GALAXY TAB.

20           THE COURT:  LET'S GO TO THE SMART PHONE.

21           MR. MCELHINNY:  THE PHONES --

22           THE COURT:  YOU'RE SAYING THERE WERE NO

23   PREVIOUS SAMSUNG SMART PHONES THAT APPLE BELIEVES

24   INFRINGED ITS I.P.

25           MR. MCELHINNY:  NO.

1          THE COURT:  OKAY.

2          MR. MCELHINNY:  WHAT I AM SAYING IS IF,

3    FOR VARIOUS REASONS, YOU MAKE A DECISION NOT TO

4    CHALLENGE A PARTICULAR PRODUCT, THAT DOES NOT GIVE

5    THE INFRINGER A FOREGOING -- A FREE PASS TO

6    CONTINUE TO BRING OUT NEW PRODUCTS THAT DO

7    INFRINGE.

8          AND THAT QUESTION HAS ARISEN TWICE BEFORE

9    DISTRICT COURTS, AND WE CITED THEM TO YOU, THE

10   LATRIM CASE AND THE WHISTLER VERSUS DYNASCAN CASE,

11   AND IN BOTH CASES THEY SAID "WE'RE NOT GOING TO

12   ENJOIN YOUR OLDER PRODUCTS BECAUSE YOU WAITED TOO

13   LONG FOR THOSE, BUT THE NEW PRODUCTS ARE NEW AND WE

14   ARE GOING TO ENJOIN THOSE PRODUCTS."

15         AND THAT TIES IN AGAIN TO THIS IDEA OF

16   HOW QUICKLY THE PRODUCTS MOVE IN CYCLES THROUGH

17   THIS WORLD.

18         THE COURT:  BUT DOESN'T THAT SORT OF

19   UNDERMINE YOUR IRREPARABLE HARM ARGUMENT?  I THINK

20   THE CABBAGE THING ACTUALLY UNDERMINES IT BECAUSE

21   CONSUMERS ARE FICKLE, ESPECIALLY IN ELECTRONICS.

22   THIS MAY BE BIG TODAY.

23         WHO KNOWS, IN A YEAR, WHAT'S GOING TO BE

24   THE NEXT BIG THING.

25         MR. MCELHINNY:  WELL, SEE, I --

                                             86

```
 1              THE COURT:  DON'T YOU THINK THAT SORT OF
 2    TEMPORAL LIMITATION ACTUALLY UNDERMINES YOUR
 3    IRREPARABLE HARM ARGUMENT?
 4              MR. MCELHINNY:  WELL, YOU GET TO DECIDE
 5    THIS.  I DON'T.
 6              THE COURT:  UM-HUM.
 7              MR. MCELHINNY:  BUT I DON'T SEE IT THAT
 8    WAY.
 9              THE COURT:  OKAY.
10              MR. MCELHINNY:  I SEE IT AS THE SUPREME
11    COURT'S LINE OF ACTIVITY THAT'S CAPABLE OF
12    REPETITION, BUT AVOIDS REVIEW.
13              IT'S TAKEN US FOUR AND A HALF MONTHS TO
14    GET TO THIS HEARING.
15              THEY ALREADY ARE ANNOUNCING NEW PRODUCTS.
16              WHEN THOSE PRODUCTS COME OUT, WE WILL SEE
17    THEM FOR THE FIRST TIME AND WE'LL DECIDE WHETHER OR
18    NOT WE HAVE TO BRING ACTIONS ABOUT THEM.
19              BUT IN THE MEANTIME, AS MR. MUSIKA AND AS
20    MR. WAGNER POINTED OUT, IN THE MEANTIME, THESE
21    PRODUCTS ARE INJURING US.
22              AND, AS YOUR HONOR DEMONSTRATED PRETTY
23    CLEARLY, THEY ARE INFRINGING THE PATENTS.
24              BUT FOR THE FACT THAT I -- YOU KNOW, YOU
25    NEED -- I HOPE YOU WILL LOOK MORE CAREFULLY AT THIS
```

1    KNIGHT-RIDDER THING BECAUSE IT SIMPLY COULDN'T BE

2    MORE DIFFERENT THAN ANY OF THE APPLE -- IT'S NO

3    DIFFERENT ACTUALLY FROM THE EARLIER SAMSUNG TABLET

4    WHICH I SHOWED YOU.

5             THE COURT:  OKAY.

6             MR. MCELHINNY:  I DID WANT TO SAY, JUST

7    BRIEFLY, I JUST -- WELL, TWO THINGS.

8             ONE, ON THE PUBLIC POLICY ISSUE, I JUST

9    WANTED TO MENTION THAT THERE HAS BEEN SOME BRIEFING

10   ON IT.

11            THE COURTS, WHEN THEY GRANT INJUNCTIONS,

12   THEY SIMPLY SAY THERE'S A STRONG PUBLIC POLICY IN

13   ENFORCING INTELLECTUAL PROPERTY.

14            AND THE PROBLEM WITH THAT IN TERMS OF

15   ORAL ARGUMENT IS THAT SORT OF GIVES THE IDEA OF

16   SHORT SHRIFT.

17            IN MY LIFETIME, THE UNITED STATES, AS YOU

18   KNOW, HAS SPENT A LOT OF TIME TRYING TO STRENGTHEN

19   INTELLECTUAL PROPERTY PROTECTION AROUND THE WORLD,

20   BECAUSE WE HAVE LEARNED -- WE NO LONGER HAVE A

21   TELEVISION INDUSTRY IN THIS COUNTRY, BUT WE HAVE

22   LEARNED THE DIRECT CONNECTION BETWEEN THE

23   IMPORTANCE OF INTELLECTUAL PROPERTY RIGHTS AND JOBS

24   AND ECONOMIC SUCCESS AND THE RETURN ON THE

25   INVESTMENT THAT PEOPLE MAKE.

88

1    AND I'M NOT ASKING FOR A CHIP.

2    BUT I'M SAYING IF, IN FACT, YOUR HONOR IS

3    CONVINCED THAT THERE'S INFRINGEMENT --

4    THE COURT:  WHICH -- AND I'M CERTAINLY

5    NOT SAYING THAT I -- I WAS COMMENTING ONLY ON THE

6    TABLET, NOT COMMENTING ON THE PHONES.

7    MR. MCELHINNY:  RIGHT.

8    THE COURT:  BUT GO AHEAD.

9    MR. MCELHINNY:  I'M SAYING IF YOUR HONOR

10   IS CONVINCED AND IF YOUR HONOR AGREES WITH US THAT

11   THERE'S NOT A SUBSTANTIAL QUESTION ON THE

12   INVALIDITY ISSUE, THERE IS, IN THIS INDUSTRY, AT

13   THIS TIME, WITH THESE PATENTS, AN INCREDIBLY STRONG

14   PUBLIC POLICY INTEREST IN TERMS OF ENFORCEMENT.

15   WITH THAT, I HAVE NOTHING MORE FOR YOUR

16   HONOR.

17   THE COURT:  OKAY.  GO AHEAD, PLEASE.

18   MS. SULLIVAN:  THANK YOU, YOUR HONOR.

19   VERY, VERY BRIEFLY.

20   FIRST ON THE STANDARD OF REVIEW.

21   LET ME JUST READ FROM ASTRAZENECA.  "A

22   PRELIMINARY INJUNCTION SHOULD NOT ISSUE" -- THIS IS

23   ON PAGE 5 OF SAMSUNG'S OPPOSITION PAPERS -- "A

24   PRELIMINARY INJUNCTION SHOULD NOT ISSUE IF AN

25   ALLEGED INFRINGER RAISES A SUBSTANTIAL QUESTION

1    REGARDING EITHER INFRINGEMENT OR VALIDITY, I.E.,

2    THE ALLEGED INFRINGER ASSERTS AN INFRINGEMENT OR

3    INVALIDITY DEFENSE THAT THE PATENTEE HAS NOT SHOWN

4    LACKS SUBSTANTIAL MERIT."

5           SO, YOUR HONOR, THE QUESTION IS NOT AS

6    MR. MCELHINNY MISCHARACTERIZED IT, WHETHER YOU WILL

7    RULE THE IPAD OBVIOUS.

8           THAT'S NOT AT STAKE HERE.

9           THE QUESTION IS, HAVE WE RAISED

10   SUBSTANTIAL QUESTIONS AS TO INVALIDITY BY SHOWING

11   YOU PRIOR ART ON THE TELEPHONE PATENTS, PRIOR ART

12   THAT YOUR HONOR HAS ALREADY SAID INVALIDATES THE

13   TABLET PATENT.

14          AND WE THINK WE'VE CLEARLY RAISED

15   SUBSTANTIAL QUESTIONS.

16          THEY HAVEN'T SHOWN THAT THEY ARE NOT

17   SUBSTANTIAL QUESTIONS, AND THAT'S THE ONLY

18   STANDARD.

19          IT'S NOT WHETHER YOU'RE GOING TO RULE.

20          SECONDLY, ON THE '889 PATENT, YOUR HONOR,

21   MR. MCELHINNY JUST GOT UP AND SAID LOOK AT THE 1995

22   FIDLER TABLET.  IT'S NOT FLAT.

23          WELL, IN SOME SENSE, IT'S ABSURD FOR US

24   TO BE ARGUING ON A PRELIMINARY INJUNCTION WHETHER

25   IT IS FLAT OR NOT.  THAT'S FOR A JURY TO DECIDE.

```
1                BUT IF YOU LOOK ON PAGE 87 OF OUR SLIDES,

2      YOUR HONOR, YOU'LL SEE HE LEFT OUT THE 1997 FIDLER

3      TABLET AND THE 2003 BLOOMBERG TABLET WHICH ARE

4      FLAT, WHICH ARE PRIOR ART THAT IS FLAT AND THAT

5      RENDER THE '889 PATENT OBVIOUS.

6                AND IN FACT, FIDLER ALSO TESTIFIED THAT

7      THE 1981 AND 1997 TABLETS WERE FLAT.  SO THAT'S ON

8      FLATNESS.

9                SO WE THINK YOUR HONOR WOULD BE CORRECT

10     TO RULE AT THIS POINT THAT WE'VE RAISED SUBSTANTIAL

11     QUESTIONS OF WHETHER THERE'S INVALIDATING PRIOR ART

12     ON THE '889 PATENT THAT WAS FLAT.

13               THIRD, ON THE -- I'D LIKE TO RETURN TO

14     YOUR HONOR'S POINT ON IRREPARABLE HARM, JUST A FEW

15     POINTS.

16               ON IRREPARABLE HARM, YOUR HONOR RAISED A

17     QUESTION WHETHER TRADE DILUTION COULDN'T BE A FORM

18     OF IRREPARABLE HARM HERE.

19               BUT I'D LIKE TO REFER YOUR HONOR TO THE

20     TESTIMONY OF SISSIE TWIGGS, THIS IS WHO APPLE PUT

21     FORWARD AS ITS HEAD OF ADVERTISING, AND SHE WAS

22     ASKED DIRECTLY, THIS IS ON PAGES 207 AND 208, DO

23     YOU BELIEVE YOU LOST ANY CUSTOMERS?

24               THERE ARE PROBABLY A FEW.

25               DO YOU HAVE ANY EVIDENCE OR ARE YOU JUST
```

1    SPECULATING?

2            I DON'T HAVE ANY EVIDENCE.  MY GUESS IS

3    THAT WE LOST SOME CUSTOMERS.

4            THAT IS YOUR GUESS, NOT SUPPORTED BY ANY

5    INFORMATION?

6            I DON'T HAVE THE SALES FIGURES.

7            BUT CRUCIALLY ON TRADE DILUTION, THE NEXT

8    SLIDE, 208, GIVES YOU YOUR ANSWER.  APPLE DOESN'T

9    HAVE PROOF OF TRADE DILUTION.

10           DO YOU HAVE ANY EVIDENCE OF EROSION OF

11   APPLE'S DISTINCTIVENESS IN CUSTOMERS' MINDS AS A

12   RESULT OF SAMSUNG'S PHONES?

13           I DON'T HAVE ANY EVIDENCE.

14           SO WITH RESPECT, WE DON'T THINK THE TRADE

15   DILUTION ARGUMENT, EVEN IF IT WERE THEORETICALLY

16   POSSIBLE, HAS BEEN REMOTELY MADE OUT BY THE

17   EVIDENCE THAT APPLE'S PRODUCED.

18           ON IRREPARABLE HARM, I MENTIONED EARLIER,

19   YOUR HONOR, THAT APPLE'S OWN STUDIES SHOW THAT

20   SHIFT FROM APPLE TO ANDROID HAS NOT BEEN PROVED.

21           APPLE HASN'T SHOWN IT'S LOST MARKET SHARE

22   FROM APPLE TO ANDROID PHONES.

23           I MENTIONED TO YOU THAT THERE WAS

24   EVIDENCE FROM APPLE'S OWN STUDIES THAT THE PERCENT

25   SHARE OF ANDROID USERS WHO SWITCHED FROM APPLE IS

92

1    TRIVIAL TO THE VANISHING POINT.

2                I JUST WANT TO POINT OUT TO YOUR HONOR,

3    IT'S CONFIDENTIAL, BUT IT'S AT SLIDE 209.

4                AND APPLE'S OWN STUDIES SHOWING THAT

5    DESIGN AS OPPOSED TO BRAND DIDN'T MATTER IS ON

6    SLIDE 210.

7                FINALLY, YOUR HONOR, ON IRREPARABLE HARM,

8    JUST A COUPLE OF MORE POINTS.

9                I WOULD LIKE TO POINT YOUR HONOR TO

10   CONFIDENTIAL SLIDE 213, WHICH SHOWS THAT

11   MR. MCELHINNY HAS MISCHARACTERIZED MR. WAGNER'S

12   TESTIMONY.

13               MR. WAGNER DID NOT ADMIT THAT SAMSUNG HAD

14   STOLEN APPLE'S SHARE OF THE TABLET MARKET.

15               AND ALSO WITH RESPECT TO COMPENSABILITY,

16   I JUST WANT TO REFER YOUR HONOR TO CONFIDENTIAL

17   SLIDE 228 WHICH SHOWS THAT, IN FACT, MONETARY

18   COMPENSATION WAS -- OR NEGOTIATION OF A LICENSE WAS

19   A FORM OF OFFER FROM APPLE TO SAMSUNG.

20               I CAN'T, OF COURSE, DISCUSS THE TERMS,

21   BUT THE IDEA THAT YOU NEED TO BRING A PRELIMINARY

22   INJUNCTION ACTION WHICH YOU'VE DISCUSSED ROYALTIES

23   IS SELF-DEFEATING.

24               AND YOUR HONOR, IT'S STRIKING.  YOU

25   MENTIONED THAT THIS IS ONE PHASE OF A WAR BETWEEN

1   THE TWO COMPANIES.

2              BUT THE IMPORTANT POINT FOR TODAY'S

3   HEARING, WHICH IS A PRELIMINARY INJUNCTION HEARING,

4   IS THAT APPLE HAS NOT SOUGHT A PRELIMINARY

5   INJUNCTION AGAINST ALL OF THE OTHER SUPPOSED

6   COPYISTS OF IPHONES.

7              IT SINGLED SAMSUNG OUT WITHOUT THE

8   EVIDENCE TO SUPPORT A PRELIMINARY INJUNCTION

9   REQUEST.

10             AND FINALLY, YOUR HONOR, JUST ONE QUICK

11   CORRECTION, GOING BACK TO THE TAB FOR A MINUTE.

12             MR. MCELHINNY INCORRECTLY SAID THAT THE

13   GALAXY TAB 10.1 WAS OUR FIRST TABLET RELEASED IN

14   JUNE OF 2011.

15             THAT'S NOT TRUE.

16             THE GALAXY TAB WAS ANNOUNCED IN

17   SEPTEMBER 2010, WHICH WAS BEFORE THE MARCH 2011

18   RELEASE OF THE -- ANNOUNCEMENT OF THE IPAD2 OR

19   MARCH 11TH, 2011 RELEASE OF THE IPAD2.

20             SO THAT'S SIMPLY NOT CORRECT.

21             SO, YOUR HONOR, IN SUM, WHAT WE'RE SAYING

22   TODAY ON THE DESIGN PATENTS, AND YOUR HONOR HAS

23   ALREADY PERHAPS DISPOSED OF '381 AND WE HOPE WILL

24   DISPOSE OF THE TAB PATENT BECAUSE OF THE PRIOR ART,

25   BUT ON THE TELEPHONE PATENTS, WE THINK WE'VE RAISED

94

1    SUBSTANTIAL QUESTIONS ON BOTH INVALIDITY AND

2    INFRINGEMENT.

3              WE THINK WE'VE GIVEN YOU PRIOR ART IN THE

4    JAPANESE PATENTS, YOU CAN LOOK AT IT.  WE THINK

5    WE'VE GIVEN YOU PLENTY OF DIFFERENCES TO RAISE A

6    SUBSTANTIAL QUESTION OF INFRINGEMENT.

7              WE'D LIKE YOUR HONOR TO REVIEW THE RECORD

8    AND SEE THAT APPLE CALLS THESE DIFFERENCES MINUTE

9    OR MINOR FOR PURPOSES OF DISTINGUISHING PRIOR ART,

10   BUT THEN CALLS THEM MAJOR WHEN IT COMES TO WHETHER

11   OR NOT WE'VE INFRINGED.

12             SO THE -- I'M SORRY -- CALLS THEM MINOR

13   WITH RESPECT TO INFRINGEMENT AND MAJOR WITH RESPECT

14   TO THE PRIOR ART.

15             BUT THE KEY POINT, YOUR HONOR, IS THAT TO

16   ISSUE A PRELIMINARY INJUNCTION IN THIS CASE WOULD

17   TAKE DESIGN PATENT INTO A NEW AREA IT'S NEVER GONE

18   BEFORE, A VEHICLE FOR MONOPOLIZING A CONCEPT, THE

19   CONCEPT OF A BLACK RECTANGULAR FLAT SCREEN DEVICE

20   FOR INTERACTING SMOOTHLY ON A FLAT SURFACE WITH

21   MEDIA IN A WAY THAT IS -- THAT INVOLVES CERTAIN

22   FEATURES LIKE NARROW BORDERS AND ROUNDED CORNERS,

23   TO BE ABLE TO PATENT A CONCEPT THROUGH A DESIGN

24   PATENT WOULD BE IMPROPER, AND IF I -- IF YOU LOOK

25   AT NOTHING ELSE IN THE SLIDES, YOUR HONOR, I HOPE

1       YOU'LL LOOK AT THE TESTIMONY OF APPLE'S OWN

2       DESIGNER, MR. IVE.  MR. IVE -- SORRY, IT'S NOT

3       TESTIMONY.  IT'S A STATEMENT IN THE PUBLIC DOMAIN

4       OF MR. IVE.

5               HE SAYS THAT WHAT APPLE DOES -- COULD I

6       HAVE THE NUMBER OF THAT SLIDE, PLEASE?

7               MAYBE WE COULD CLOSE WITH THIS SLIDE AND

8       THE AUDIO OF THE IVE SLIDE.

9               I'M SORRY.  DO YOU --

10              YOUR HONOR, IF WE COULD JUST CLOSE WITH

11      THIS, THIS IS MR. IVE.

12              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

13      OPEN COURT OFF THE RECORD.)

14              MS. SULLIVAN:  "EVERYTHING DEFERS TO THE

15      DISPLAY.  WHAT WE'RE DOING IS GETTING DESIGN OUT OF

16      THE WAY."

17              APPLE HAS NOT SHOWN THAT ANYONE BUYS AN

18      IPHONE BECAUSE OF ITS ROUNDED CORNERS OR ITS

19      APPEARANCE OR ORNAMENTAL FEATURES.  THAT'S WHAT'S

20      PROTECTED BY A DESIGN PATENT.

21              THEY BUY AN IPHONE IN ORDER TO GET DESIGN

22      OUT OF THE WAY, BECAUSE EVERYTHING DEFERS TO THE

23      DISPLAY, MEANING THE FEATURES THAT ENABLE YOU TO

24      INTERACT WITH THE MEDIA YOU SEE ON THE IPHONE.

25              IT IS -- IT WOULD BE UNPRECEDENTED TO

                                                        96

1    HOLD THAT THERE'S A DESIGN PATENT PRODUCT -- DESIGN

2    PATENT PROTECTION FOR A PRODUCT IN WHICH WE TRIED

3    TO GET DESIGN OUT OF THE WAY.

4            AND RESPECTFULLY, WE REQUEST THAT YOU

5    DENY THE PRELIMINARY INJUNCTION AS TO THE TELEPHONE

6    PATENTS, AS WELL AS TO THE '889 AND THE '381

7    PATENTS FOR THE REASONS WE'VE ALREADY GIVEN.

8            IF THERE ARE NO FURTHER QUESTIONS, YOUR

9    HONOR?

10           THE COURT:  NO.

11           MR. MCELHINNY:  I JUST HAVE ONE RECORD

12   THING, YOUR HONOR.  I WON'T ARGUE IT.

13           BUT ON THE QUESTION OF WHETHER OR NOT

14   THERE'S EVER BEEN A DISCUSSION ABOUT LICENSING

15   DESIGN PATENTS, I WOULD CITE YOUR HONOR TO OUR

16   REPLY BRIEF AT PAGE 28, LINES 7 THROUGH 10, WHICH

17   HAVE CITATIONS FROM BOTH SIDES.

18           THANK YOU, YOUR HONOR.

19           THE COURT:  ALL RIGHT.  THANK YOU ALL

20   VERY MUCH.

21           I AM GOING TO REVIEW EVERYTHING FURTHER.

22   ANYTHING I'VE STATED TODAY IS REALLY JUST SORT OF

23   TENTATIVE THOUGHTS BASED ON WHAT I'VE REVIEWED AND

24   ANALYZED SO FAR.  BUT I HOPE TO ISSUE AN ORDER

25   FAIRLY PROMPTLY.

1          OKAY.  THANK YOU ALL.

2          MR. MCELHINNY:  THANK YOU, YOUR HONOR.

3          THE COURT:  LET'S TAKE -- I HAVE TWO MORE

4     CASES.  LET'S TAKE A 15 MINUTE BREAK, AND THANK YOU

5     FOR YOUR PATIENCE FOR MY OTHER CASES.

6          MS. SULLIVAN:  YOUR HONOR, JUST AS A

7     HOUSEKEEPING MATTER, WOULD YOU LIKE US TO LODGE

8     THINGS NOW, LODGE DEPOSITIONS OR ANY OTHER

9     EVIDENCE, WOULD YOU LIKE US TO LODGE THAT NOW AND

10    TAKE CARE OF IT?

11         MR. JOHNSON:  OR YOUR HONOR, IF WE COULD

12    DO IT BY TOMORROW, FOR EXAMPLE?

13         THE COURT:  I ACTUALLY WAS NOT WELCOMING

14    MORE DOCUMENTATION.  I THINK YOU'VE GIVEN ME

15    PROBABLY IN TOTAL, WHAT, ABOUT EIGHT BOXES?  I

16    THINK IT'S BEEN SUFFICIENTLY BRIEFED.

17         MR. JOHNSON:  THERE WAS SOME DEPOSITION

18    TESTIMONY, FOR EXAMPLE, THAT WE PUT IN OUR SLIDES.

19         WOULD YOUR HONOR -- WHICH WAS NOT PART OF

20    OUR OPPOSITION PAPERS SINCE THEY WERE FILED BACK IN

21    AUGUST.

22         AND SO WHEN THE ISSUES WERE RAISED IN THE

23    REPLY AND WE ADDRESSED THEM TODAY -- IT'S JUST TO

24    REFER TO -- TO LODGE ITEMS THAT WE REFERRED TO

25    DURING TODAY'S ORAL HEARING.

1          THE COURT:  IS THERE ANY OBJECTION?

2          MR. MCELHINNY:  THERE'S NO OBJECTION TO

3     THAT, YOUR HONOR.

4          THE COURT:  ALL RIGHT.

5          MR. MCELHINNY:  OKAY, YES, THEN I CHANGE

6     MY MIND.  YES, I'M --

7          THE COURT:  NO, NO, I'M NOT ASKING YOU TO

8     OBJECT.

9          I'M JUST TRYING TO THINK OF WHEN CAN THAT

10    BE DONE?  I WOULD LIKE, BASICALLY, THE EVIDENCE

11    PORTION OF THIS TO CLOSE QUICKLY SO THAT I CAN

12    REVIEW EVERYTHING FULLY.

13         MR. JOHNSON:  BY TOMORROW?

14         THE COURT:  OKAY.  ALL RIGHT.

15         NOW, DO YOU HAVE ANY OBJECTIONS TO WHAT

16    APPLE FILED YESTERDAY?

17         MR. JOHNSON:  WE SUBMITTED A PAPER AFTER

18    THEY SUBMITTED THEIR PAPER SAYING THAT, TO THE

19    EXTENT THAT THEY BE GIVEN THE OPPORTUNITY TO

20    AUGMENT THE RECORD, WE WANTED THE OPPORTUNITY TO

21    AUGMENT, OR AT LEAST FILE A SURREPLY AND EXPLAIN

22    WHAT THOSE DOCUMENTS SAY, BECAUSE THEY'RE

23    MISCHARACTERIZING WHAT THOSE DOCUMENTS SAY.

24         BUT MOST OF THOSE DOCUMENTS GO TO THE

25    '381 PATENT, FRANKLY, YOUR HONOR, AND IF YOU'RE

1    GOING TO DENY THE MOTION ON THE '381 PATENT, THEN

2    I'M NOT SURE WE NEED A SURREPLY VIS-A-VIS THE '381

3    PATENT.  SO THAT COULD ELIMINATE A DOCUMENT.

4             THE COURT:  OKAY.  WELL, I REALLY DON'T

5    WANT ANY FURTHER BRIEFING ON THIS.

6             I DO WANT TO GET TO THE RIGHT ANSWER AND

7    I APPRECIATE ADDITIONAL INFORMATION, BUT BOTH SIDES

8    HAVE VERY, VERY THOROUGHLY AND ABUNDANTLY BRIEFED

9    THIS, SO I -- AT THIS POINT, I DON'T WANT TO HAVE

10   ANY FURTHER REPLIES, SURREPLIES, SUR-SURREPLIES OR

11   ANYTHING ELSE.

12            GO AHEAD AND FILE THE SUPPLEMENTAL

13   MATERIALS YOU JUST REFERENCED TOMORROW, AND I'M

14   GOING TO ASSUME THAT'S GOING TO BE THE END OF THE

15   BRIEFING ON THAT.

16            MR. MCELHINNY:  AND JUST SO I KNOW WHAT

17   THEY'RE LODGING, IS IT THE ACTUAL DEPOSITION

18   TRANSCRIPTS THAT THEY CITED IN THEIR SLIDES?

19            MR. JOHNSON:  IT'S JUST THE EVIDENCE,

20   YES.

21            THE COURT:  ALL RIGHT.

22            MR. MCELHINNY:  I -- I'M SORRY.  I HEARD

23   HIM TO SAY DEPOSITION TRANSCRIPTS WHEN HE FIRST

24   ASKED.  I DON'T KNOW WHETHER THEIR EVIDENCE IS IN

25   THESE 255 PAGES OF SLIDES.

1           MR. JOHNSON:  I --

2           THE COURT:  WHAT ELSE DO YOU WANT TO

3    LODGE TOMORROW?

4           MR. JOHNSON:  WELL, I MEAN, TO PRESERVE

5    THE RECORD, I GUESS I WOULD ALSO OFFER -- MAKE AN

6    OFFER OF PROOF WITH RESPECT TO THE ADDITIONAL PRIOR

7    ART WE OFFERED ON THE NEW PRIOR ART IN THE '381 OF

8    DIAMONDTOUCH.

9           HOWEVER, LIKE I SAID, IF YOUR HONOR IS

10   INCLINED TO DENY THAT, THEN I DON'T NEED TO DO THAT

11   AT THIS POINT.

12          WHAT I WAS LOOKING TO DO WAS JUST PUT IN

13   THE DEPOSITION TESTIMONY THAT RELATES TO ISSUES

14   THAT WERE IN APPLE'S REPLY BRIEF AND SO TO COMPLETE

15   THE RECORD, FRANKLY.  SO THAT'S THE NATURE OF THE

16   EVIDENCE.

17          MR. MCELHINNY:  THAT -- I'M SORRY.  THEN

18   I DO OBJECT TO THAT BECAUSE THAT'S NOT -- THAT'S

19   NOT DEPOSITION TRANSCRIPTS THAT WERE READ TO YOUR

20   HONOR.  THAT'S A BLANK CHECK.

21          I DON'T KNOW WHAT EVIDENCE THEY FEEL THEY

22   NEED TO COMPLETE THE RECORD.

23          MR. JOHNSON:  NO.  THEY WERE READ TO YOUR

24   HONOR, YES.

25          FOR EXAMPLE, DR. BALAKRISHNAN'S TESTIMONY

1    THAT I REFERRED TO AND READ, THAT WAS NOT PART OF

2    OUR OPPOSITION PAPERS THAT WE FILED.

3              THERE WAS TESTIMONY FROM DR. WAGNER THAT

4    WAS IN THEIR REPLY BRIEF, WHICH WE WOULD --

5    PROFESSOR SULLIVAN REFERRED TO.

6              SO IT'S JUST LODGING THAT WITHOUT ANY

7    BRIEF.  WE DON'T NEED A BRIEF.

8              THE COURT:  ALL RIGHT.  THIS IS WHAT I

9    WANT YOU TO DO.  I WANT LEAD TRIAL COUNSEL TO MEET

10   AND CONFER IN PERSON TOMORROW AND SHOW EACH OTHER

11   WHATEVER ELSE YOU ARE GOING TO FILE.  IT NEEDS TO

12   BE EXTREMELY LIMITED.

13             AND IF YOU CAN COME TO AN AGREEMENT, THEN

14   FILE IT BY THE END OF THE DAY TOMORROW.

15             IF YOU CANNOT COME TO AN AGREEMENT, THEN

16   BY MONDAY I WANT YOU TO LODGE WHATEVER ELSE YOU

17   WANT TO FILE WITH THE COURT WITH SOME EXPLANATION

18   AS TO WHY YOU WANT IT, WHY IT WASN'T PREVIOUSLY

19   PROVIDED, I WANT TO KNOW THAT IT WAS JUST RECENTLY

20   PRODUCED OR RECENTLY TAKEN AS A DEPOSITION.

21             AND THEN WITH THE PRELIMINARY INJUNCTION

22   ORDER, I'LL JUST RULE ON THOSE OBJECTIONS.

23             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

24             MR. JOHNSON:  THANK YOU, YOUR HONOR.

25             THE COURT:  OKAY?  BUT EACH OF THESE

1    MEMOS, EACH SIDE WILL ONLY GET ONE TO EITHER OBJECT

2    TO THE OTHER SIDE AND TO ADVOCATE FOR ANY

3    ADDITIONAL YOU WANT IS TWO PAGES MAXIMUM.  OKAY?

4              MS. SULLIVAN:  UNDERSTOOD.  THANK YOU.

5              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

6              THE COURT:  ALL RIGHT.  AND THAT'LL BE

7    FILED ON MONDAY.

8              ALL RIGHT.  THANK YOU.

9              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

10             MS. SULLIVAN:  THANK YOU, YOUR HONOR.

11             (WHEREUPON, THE PROCEEDINGS IN THIS

12   MATTER WERE CONCLUDED.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                CERTIFICATE OF REPORTER

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23          /S/
            _____
24          LEE-ANNE SHORTRIDGE, CSR, CRR
            CERTIFICATE NUMBER 9595
25

104