HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Counterclaim-Plaintiffs,<br><br>    v.<br><br>APPLE INC., a California corporation,<br><br>    Counterclaim-Defendant. | Civil Action No. 11-CV-01846-LHK<br><br><br>**APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SAMSUNG'S MOTION TO DISMISS APPLE'S COUNTERCLAIMS**<br><br><br><br>**Date:  April 5, 2012**<br>**Time:  1:30 p.m.**<br>**Place:  Courtroom 4, 5th Floor**<br>**Judge:  Hon. Lucy H. Koh** |

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ...........................................................................................1

3    II.   NATURE AND STAGE OF THE PROCEEDING.........................................1

     III.  STATEMENT OF FACTS ............................................................................2

4          A.   IPR Policies at Standards-Setting Organizations...........................2

5          B.   Samsung's Subversion of the Standardization Process ..................3

           C.   Samsung's Coercion and Refusal to Make a FRAND Offer ...................4

6    IV.   ARGUMENT .................................................................................................4

7          A.   Standard of Review........................................................................4

8          B.   Apple Has Properly Alleged its Monopolization Claim .......................5

9                1.   Apple Has Properly Pled a Relevant Antitrust Market................6

10               2.   Apple Has Properly Pled That Samsung Possesses
                      Monopoly Power in the Relevant Market....................................9

11               3.   Apple has Properly Pled that Samsung Engaged in Anticompetitive
12                    Exclusionary Conduct ................................................................12

           C.   Apple Has Adequately Pled Claims Under the California UCL...........................15

13         D.   Apple Has Properly Alleged Its Contract and Estoppel Claims .........................15

14               1.   French Law Applies to Apple's Contract and
15                    Promissory Estoppel Claims ......................................................16

16               2.   Apple Has Adequately Pled a Claim For a
                      Declaratory Judgment That It Is Presently Licensed ...............17

17               3.   Apple Has Properly Pled That Samsung Breached Its Contractual
18                    Obligations With ETSI and Its Members, Including Apple .........19

                 4.   Apple Has Properly Pled Its Promissory Estoppel Claim.........................24

19   V.    CONCLUSION.............................................................................................25

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

<u>Federal Cases</u>

3
*Apple Inc. v. Motorola Mobility*,
   2011 U.S. Dist. LEXIS 72745 (W.D. Wis. June 7, 2011) ....................... 6, 8, 10, 14, 15, 23, 24

4

5
*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)................................................................................................ 4

6
*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................... 4

7

8
*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007)...................................................... 6, 7, 8, 9, 10, 13, 15

9
*Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*,
   611 F.3d 495 (9th Cir. 2010) ................................................................................... 7

10

11
*Ess Tech., Inc. v. PC-TEL, Inc.*,
   1999 WL 33520483 (N.D. Cal. Nov. 4, 1999) ....................................................... 19

12
*Erickson v. Pardus*,
   551 U.S. 89 (2007)..................................................................................................... 9

13

14
*Forsyth v. Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997) ................................................................................. 9

15
*Grid Sys. Corp. v. Texas Instruments Inc.*,
   771 F. Supp. 1033 (N.D. Cal. 1991) ...................................................................... 6

16

17
*Hynix Semiconductor Inc. v. Rambus Inc.*,
   2008 WL 73689 (N.D. Cal. Jan. 5, 2008) ............................................................ 6, 8

18
*Illinois Tool Works, Inc. v. Indep. Ink, Inc.*,
   547 U.S. 28 (2006) ................................................................................................. 10

19

20
*In re Cathode Ray Tube Antitrust Litig.*,
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) .............................................................. 4, 5

21
*In re Rambus, Inc.*,
   2006-2 Trade Cas. ¶ 75364 (F.T.C. 2006) .............................................................. 7

22

23
*In re Webkinz Antitrust Litig.*,
   2010 WL 4168845 (N.D. Cal. Oct. 20, 2010).......................................................... 8

24
*Kaiser Found. Health Plan, Inc. v. Abbott Labs.*,
   552 F.3d 1033 (9th Cir. 2009) ................................................................................. 5

25

26
*Kodak Co. v. Image Technical Services, Inc.*,
   504 U.S. 451 (1992)............................................................................................... 10

27
*Meridian Project Sys., Inc. v. Hardin Const. Co.*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005) ................................................................ 15

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

*Microsoft Corp. v. A-Tech Corp.*,
   855 F. Supp. 308 (C.D. Cal. 1994) ..................................................................................... 15

*Microsoft Corp. v. Motorola, Inc.*,
   2011 U.S. Dist. LEXIS 73827 (W.D. Wa. June 1, 2011) ...................................................... 24

*Research in Motion Ltd. v. Motorola, Inc.*,
   644 F. Supp. 2d 788 (N.D. Tex. 2008) ....................................................... 6, 10, 13, 22, 24

*Newcal Indus., Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ...................................................................... 6, 7, 10, 12

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
   514 F.3d 856 (9th Cir. 2007) ................................................................................................ 17

*Townshend v. Rockwell Int'l Corp.*,
   2000 WL 433505 (N.D. Cal. Mar. 28, 2000)............................................................... 10, 11

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966)........................................................................................................ 5, 9

State Cases

*Aceves v. U.S. Bank, N.A.*,
   192 Cal. App. 4th 218 (Cal. Ct. App. 2011) ...................................................................... 25

*Attoe v. Madison Prof'l Policemen's Ass'n*,
   255 N.W.2d 489 (Wis. 1977)................................................................................................ 24

*Cal. Dental Ass'n v. Am. Dental Ass'n*,
   23 Cal. 3d 346 (Cal. 1979)................................................................................................... 23

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (Cal. 1999).................................................................................................. 15

*Copeland v. Baskin Robbins U.S.A.*,
   96 Cal. App. 4th 1251 (Cal. Ct. App. 2002) ...................................................................... 22

*Nedlloyd Lines B.V. v. Superior Court of San Mateo County*,
   3 Cal. App. 4th 459 (Cal. Ct. App. 1992) .................................................................... 16, 17

*US Ecology, Inc. v. California*,
   92 Cal. App. 4th 113 (Cal. Ct. App. 2001) ........................................................................ 25

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1

## I.      INTRODUCTION

2          Samsung does not dispute that Apple's Amended Counterclaims in Reply adequately

3  supply the factual particularity that the Court found lacking when it dismissed with leave to

4  amend Apple's original claims under Section 2 of the Sherman Act and the California UCL.

5  Instead, it makes newly-found arguments that Apple has failed adequately to allege Section 2

6  and UCL violations and contends for the first time that Apple's contract and promissory estoppel

7  counterclaims are deficient.  It is clear why Samsung never made any of these arguments before:

8  none has any merit.  The Court should deny Samsung's Motion to Dismiss.

9

## II.     NATURE AND STAGE OF THE PROCEEDING

10         On July 21, 2011, Apple filed its Answer, Defenses, and Counterclaims in Reply to

11  Samsung's Counterclaims ("Counterclaims in Reply").  The Court dismissed certain of Apple's

12  Counterclaims in Reply with leave to amend on October 18, 2011.  As to Apple's claim under

13  Section 2 of the Sherman Act, the Court found that, although "[i]t appears … that Apple has

14  sufficiently alleged monopoly power," Order Granting in Part, and Denying in Part, Motion to

15  Dismiss and Strike ("Order") at 6 n.4, Apple had failed to allege with sufficient particularity that

16  Samsung had obtained its monopolies in technology markets through illegal monopoly conduct.

17  *Id.* at 7-9.[1]

18         Apple filed its Amended Answer, Defenses, and Counterclaims in Reply to Samsung's

19  Counterclaims ("Amended Counterclaims in Reply" or "ACR") on November 8, 2011.  On

20  November 22, Samsung moved to dismiss Apple's Counterclaims Twenty-Five through Twenty-

21  Nine, which assert breach of contract, promissory estoppel, monopolization under Section 2 of

22  the Sherman Act, and violation of the California UCL and seek a declaration that Apple is

23  licensed to Samsung's declared-essential patents.  Samsung's Motion to Dismiss Apple's

24  Counterclaims ("Samsung Mot.").  Samsung does not challenge the sufficiency of Apple's other

25  ─────────────

[1] The Court also dismissed with leave to amend Apple's claims under Section 1 of the Sherman Act and
26  corresponding claim under the California Unfair Competition Law ("UCL"), and struck certain Apple claims for
   declaratory judgments as redundant of Apple affirmative defenses.  Order at 12-15.  Apple has not realleged its
27  Section 1 and corresponding UCL claims or the declaratory judgment claims the Court struck (which are sufficiently
   alleged through Apple's affirmative defenses).  The Court denied Samsung's motion to strike Apple's claim for
   declaratory judgment that Apple is licensed to Samsung's Declared-Essential Patents.  *Id.* at 14.

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1    counterclaims.

2    **III.    STATEMENT OF FACTS**

3         **A.    IPR Policies at Standards-Setting Organizations**

4         Apple and Samsung both sell telecommunications handsets that operate on wireless

5    networks.  ACR ¶ 23.  To facilitate the interoperability necessary for various manufacturers'

6    products to function on wireless networks, industry members, as participants in standard-setting

7    organizations ("SSO"), developed technical standards establishing specifications for essential

8    components of the technologies.  *Id.* ¶ 24.  This case involves the UMTS telecommunications

9    standard, the most widely adopted 3G telecommunications standard worldwide.  *Id.* ¶ 42.  UMTS

10   has been standardized by the 3rd Generation Partnership Project ("3GPP"), a collaboration of six

11   SSOs from around the world including ETSI and five others.  *Id.*

12        During the development of the UMTS standard, Samsung participated in working groups

13   and proposed and advocated for the standardization of certain technologies to perform functions

14   included in the standard.  *Id.* ¶ 57.  The working groups evaluated competing technical proposals

15   based on both technical merit and perceived cost.  *Id.* ¶¶ 30, 91.  Because technical standards

16   succeed only if they are widely adopted, and because those standards are widely adopted only if

17   the costs (including licensing costs) are not prohibitively high, SSOs seek to ensure that holders

18   of declared-essential patents will not be in a position to unduly exploit that position.  *Id.* ¶¶ 26-

19   29.  Before standardization, the royalty a patentee can earn from a patent license is constrained

20   because the SSO has not yet determined that the patentee's – and only the patentee's – patented

21   technology must be used to perform a function that has been included.  *Id.* ¶ 27.  Once the

22   standard is established, however, a patentee that controls technology essential to the standard is

23   in a position to demand exorbitant royalties or other terms, far in excess of what is warranted by

24   the intrinsic value of the technology, because implementers of the standard are "locked-in" to

25   using the patentee's technology.  *Id.* ¶¶ 27-28, 94.  ETSI has developed an IPR policy to address

26   this concern.  *Id.* ¶¶ 50-54.  ETSI members participating in 3GPP are required to comply with the

27   ETSI IPR policy.  *Id.* ¶ 45.  The IPR policy requires participants, like Samsung, timely to

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1    disclose IPR that might be essential to a proposed specification.  *Id.* ¶ 51.  ETSI's IPR policy

2    also requires commitments to license potentially essential IPR on fair, reasonable, and non-

3    discriminatory ("FRAND") terms.  *Id.* ¶¶ 31, 52-53.  Apple has made "massive" investments in

4    UMTS-compliant products, *id.* ¶ 87, and has done so in reliance on Samsung's FRAND

5    commitments.  *Id.* ¶ 70.

6        **B.    Samsung's Subversion of the Standardization Process**

7            In 1998, Samsung submitted a declaration to ETSI committing irrevocably to license all

8    of its declared-essential patents on FRAND terms under Clause 6.1 of the ETSI IPR policy.  *Id.* ¶

9    59.  That commitment constituted an irrevocable promise that all interested parties would be

10   licensed to claimed standards-essential patents on FRAND terms, *id.*, foreclosing Samsung from

11   asserting infringement claims or seeking to obtain an injunction to prohibit an implementer from

12   practicing the standard.

13           During the UMTS standard-setting process, Samsung deliberately and deceptively (i)

14   failed to disclose IPR that it now claims is essential to the UMTS standard and (ii) failed to

15   disclose that it did not intend to meet its commitments to license its IPR on FRAND terms.  *Id.*

16   ¶¶ 44, 57.  Indeed, in many cases, a named inventor on the concealed patent application or other

17   Samsung personnel participated in the relevant working group, actively championed Samsung's

18   technical proposal, and affirmatively steered the SSO to standardize the technology, *id.* ¶ 57,

19   while Samsung was engaging in its deceit regarding its IPR and intentions not to license on

20   FRAND terms.  Samsung then disclosed its IPR only long after the relevant standard or standard

21   specification was finalized.  *Id.*

22           Had the SSO known about Samsung's deceptive conduct, including both Samsung's

23   failure to disclose and its intention not to abide by its FRAND commitments, the SSO would

24   have either selected a competing technology or declined to make the relevant function essential

25   to the standard.  *Id.* ¶¶  48, 58.  As a result of its deception, Samsung excluded alternative

26   technologies that were available to perform the same functions as those covered by Samsung's

27   IPR, *id.* ¶ 58, and acquired monopoly power in the markets for technologies that perform the

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1   various functions covered by Samsung's purported essential patents (the "Input Technologies

2   Markets"). *Id.* ¶¶ 61, 67, 99.

3       **C.      Samsung's Coercion and Refusal to Make a FRAND Offer**

4       Samsung has sought to exploit this wrongfully acquired monopoly power to coerce Apple

5   into tolerating Samsung's pattern of repeatedly imitating the distinctive designs and functions of

6   Apple's highly successful iPhone and iPad products. *Id.* ¶¶ 72-75.  After the parties were unable

7   to resolve their dispute over Samsung's copying, Apple sued Samsung in this Court, bringing

8   claims that include infringement of patents that do not cover technologies included in any

9   industry standard and trade dress and trademark infringement. *Id.* ¶ 74.  In retaliation, Samsung

10  sued Apple for patent infringement and to enjoin Apple from selling Apple's consumer products,

11  even though Apple is licensed to any Samsung standards-essential patent by virtue of Samsung's

12  FRAND commitments. *Id.* ¶ 75.  Samsung has also sued Apple for infringement and sought

13  injunctions in no fewer than eight foreign countries. *Id.* ¶ 4.  Samsung has to date offered only

14  license terms that are manifestly not FRAND, a Dutch court has already found. *Id.* ¶ 49.

15  Samsung's course of conduct has been so egregious that the European Commission is currently

16  conducting a competition investigation. *Id.* ¶ 4.

17  **IV.    ARGUMENT**

18      **A.      Standard of Review**

19      A complaint must contain "enough facts to state a claim to relief that is plausible on its

20  face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), so that it "raise[s] a right to

21  relief above the speculative level." *Id.* at 555.  A court should assume that all well-pleaded

22  factual allegations are true, and then determine whether they plausibly give rise to an entitlement

23  to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  "A claim has facial plausibility

24  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

25  that the defendant is liable for the misconduct alleged." *Id.* at 1949.  "Specific facts are not

26  necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and

27  the grounds upon which it rests." *In re Cathode Ray Tube Antitrust Litig.*, 738 F. Supp. 2d 1011,

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1    1017 (N.D. Cal. 2010) (*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Apple's amended

2    counterclaims easily meet this standard.

3       **B.     Apple Has Properly Alleged its Monopolization Claim**

4       To state a claim for monopolization, Apple must allege that Samsung (1) "possess[es]

5    monopoly power in the relevant market[s;] and (2) [] willful[ly] acqui[red] or maint[ained] . . .

6    that power" through exclusionary conduct rather than by "growth or development as a

7    consequence of a superior product, business acumen, or historic accident."  *United States v.*

8    *Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *see also Kaiser Found. Health Plan, Inc. v. Abbott*

9    *Labs.*, 552 F.3d 1033, 1043-44 (9th Cir. 2009).  Apple has properly alleged both elements.

10      As to monopoly power, Samsung provides no basis for the Court to reconsider its prior

11   finding that "[i]t appears … that Apple has sufficiently alleged monopoly power."  *See* Order at

12   6 n.4.  Indeed, Samsung has made allegations essentially identical to those Apple makes here,

13   when Samsung stood accused of infringing declared essential patents in other litigation:  namely,

14   that its opponent held dominant positions in markets for UMTS technologies through patents

15   covering those technologies.[2]

16      As to exclusionary conduct, Samsung's sole argument is premised on a flagrant

17   misreading of Apple's Amended Counterclaims in Reply.  Samsung does not dispute that Apple

18   properly has alleged that Samsung abused standard setting processes and violated ETSI rules by

19   deliberately and deceptively (i) failing to disclose its purportedly essential IPR and (ii)

20   concealing that it would not fulfill its commitments to offer FRAND license terms, at the same

21   time it was aggressively advocating for standardization of technologies it now claims are covered

22   by its patents.  Rather, Samsung contends only that its misconduct could not have caused it

23   illegally to acquire monopolies in the relevant Input Technology Markets because the SSOs

24   would have standardized the same technologies even if Samsung timely had met its IPR

25   disclosure obligations.  In advancing this argument, Samsung simply ignores Apple's allegations

26   _____

27   [2] *See, e.g.*, Declaration of Mark D. Selwyn ("Selwyn Decl."), Ex. A (Re-Amended Defence and Counterclaim of Samsung, *Telefonaktiebolaget LM Ericsson v Samsung Electronics UK Ltd.*, Case No. HC06 C00618 (High Court of Justice, Chancery Division, Patents Court served Mar. 15, 2007)) at ¶ 70.

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

that Samsung illegally acquired monopoly power not only through its fraudulent concealment of IPR rights, but rather through a *combination* of that concealment *and* its deceitful failure to disclose its intentions to reject its FRAND commitments.

### 1.    Apple Has Properly Pled a Relevant Antitrust Market

A relevant antitrust market consists of "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008) (internal quotation marks omitted). "There is no requirement that [the relevant market or monopoly power] be pled with specificity." *Id.* Market definition is rarely grounds for dismissal because "the validity of the 'relevant market' is typically a factual element rather than a legal element," and therefore "alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Id.* Dismissal based on a failure to allege a relevant market is appropriate only where "it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect." *Id.*

Samsung contends that the Input Technology Markets Apple has defined in its Amended Counterclaims, ACR ¶¶ 58, 90-102, are facially unsustainable because they are technology markets, rather than "product" markets. Samsung Mot. at 9-11. But courts have time and again recognized that technologies can constitute relevant antitrust markets, particularly in cases alleging standard-setting misconduct.[3]

Samsung cites no cases holding to the contrary. Instead, it disingenuously relies on an

---

[3] *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007) (holding that input technologies markets for the UMTS standard constitute relevant antitrust markets); *Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905, 2008 WL 73689, at *2 (N.D. Cal. Jan. 5, 2008) ("Defining a technology market, as opposed to a product market, makes sense where rights to intellectual property are marketed separately from the products in which they are used.") (quotations omitted); *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008) (adopting *Broadcom*'s reasoning in case involving FRAND commitments for UMTS standard); *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-00178, 2011 U.S. Dist. LEXIS 72745 at *39 (W.D. Wis. June 7, 2011) ("The relevant markets include the various technologies competing to perform the functions covered by Motorola's declared-essential patents for each of the relevant standards."); *Grid Sys. Corp. v. Texas Instruments Inc.*, 771 F. Supp. 1033, 1039-41 (N.D. Cal. 1991) (rejecting arguments that "the PC Architecture Technology Market" was not a proper antitrust market); *see also* U.S. DEP'T OF JUSTICE AND THE FED. TRADE COMM'N, ANTITRUST GUIDELINES FOR THE LICENSING OF INTELLECTUAL PROPERTY § 3.2.2 (1995) ("When rights to intellectual property are marketed separately from the products in which they are used, the Agencies may rely on technology markets to analyze the competitive effects of a licensing arrangement.").

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1    out-of-context quote from *Newcal* for the broad and mistaken proposition that "the relevant

2    market must be a *product* market," Samsung Mot. at 9 (quoting *Newcal*, 513 F.3d at 1045).  In

3    *Newcal*, however, the Ninth Circuit was not considering any market definition distinction

4    between a physical "product" and a technology available for license.  Instead, it was

5    differentiating between markets defined by a set of consumers and markets defined by "products

6    or producers."  *Newcal*, 513 F.3d at 1045.  There is, of course, no requirement that the relevant

7    market must be defined in terms of physical goods rather than intangible ones, such as

8    intellectual property rights.  Indeed, *Newcal* itself sustained allegations of a services market.  *Id.*

9    at 1044-51; *see also, e.g.*, *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d

10   495, 507 (9th Cir. 2010) (observing that "services" can constitute antitrust markets) (internal

11   quotation marks omitted).

12          Samsung's effort to distinguish *Broadcom* because that case involved allegations of

13   monopoly power in a physical product market as well as in technology markets, Samsung Mot.

14   at 10, rests on an erroneous premise.  The *Broadcom* allegations concerning monopoly power in

15   a CDMA chipset market related to a claim entirely separate from the claim that the defendant

16   had illegally monopolized markets for technologies used in UMTS chipsets.  *Compare*

17   *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317-19 (3d Cir. 2007) (discussing allegations

18   that monopoly position in CDMA chipset market was used to attempt to obtain a monopoly in

19   UMTS chipset market), *with id.* at 315-17 (discussing allegations of monopolization of UMTS

20   technology markets).  The Third Circuit upheld the allegations defining UMTS technology

21   markets in a separate portion of the opinion, without any reference to – let alone reliance on – the

22   fact the plaintiff had also alleged a monopoly in a CDMA chipset market.  *Id.* at 315.[4]

23          Samsung also argues that Apple has not "identif[ied] the products that practice the

24   technology or any 'interchangeable substitute products' . . . for which cross-elasticity of demand

---

[4] Samsung's reliance on *In re Rambus, Inc.*, No. 9302, 2006-2 Trade Cas. ¶ 75364, at *39 (F.T.C. 2006), is also misplaced.  As Samsung acknowledges, Samsung Mot. at 11, the FTC clearly recognized there that technology markets are relevant antitrust markets.  Moreover, Samsung attempt to distinguish *In re Rambus* on the basis that "over 90% of DRAM" chips were subject to Rambus's patent claims, *id.*, makes no sense.  Here, Apple has alleged that Samsung claims that **all** UMTS-compliant products incorporate Samsung's patents.  ACR ¶ 57 (identifying Samsung's declarations of essentiality).

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1   could be evaluated." Samsung Mot. at 10. That is both false and irrelevant. Apple has alleged

2   that the relevant products incorporating Samsung's Declared-Essential Patents are UMTS-

3   compliant chipsets. ACR ¶ 5 ("Samsung's allegations of infringement concern UMTS-

4   compliant chipsets"). In any event, the alternatives relevant to market definition here are the

5   technology alternatives, not alternatives to the products in which the technologies may be

6   incorporated. Apple has identified in detail alternative technologies that, pre-standardization,

7   constituted "interchangeable substitute products" for the technologies Samsung claims are

8   covered by its patents.[5] ACR ¶ 58.

9        Finally, a review of similar standard setting antitrust cases involving technology markets

10  demonstrates that Apple has adequately alleged such markets here. In *Broadcom*, for example,

11  the Third Circuit held that the plaintiff had adequately defined technology markets, even though

12  it did not allege alternative technologies in nearly the detail that Apple has alleged in its

13  Amended Counterclaims in Reply.[6] *See Broadcom*, 501 F.3d at 316 (drawing "inference" from

14  complaint about availability of alternative technologies). In *Hynix*, Judge Whyte rejected, on

15  summary judgment, a challenge to relevant technology markets where the plaintiff defined such

16  markets as Apple has defined them here – based on the relevant standardized functions and

17  viable alternative technologies that competed pre-standardization with technologies that the

18  defendant claimed were covered by its patents. *Hynix Semiconductor Inc. v. Rambus Inc.*, No.

19  CV-00-20905, 2008 WL 73689, at *4-8 (N.D. Cal. Jan. 5, 2008); *see also, e.g.*, *Apple Inc. v.*

20  *Motorola Mobility*, No. 11-cv-00178, 2011 U.S. Dist. LEXIS 72745 at *39 (W.D. Wis. June 7,

21  2011).

22  _____

[5] Apple need not allege specific cross-elasticities of demand between the standardized technologies that Samsung
23  claims are covered by its patents and the alternative technologies that were available before standardization. *See In re Webkinz Antitrust Litig.*, No. C 08-1987, 2010 WL 4168845, at *3 (N.D. Cal. Oct. 20, 2010) (observing that "on a
24  motion to dismiss, the court need not engage in extensive analyses of reasonable interchangeability and cross elasticity of demand," and therefore considering only whether the market was "facially implausible") (internal quotation marks, brackets omitted)).

25  [6] *Compare* Amended Counterclaims in Reply ¶ 58, *with* Selwyn Decl., Ex. B (First Amended Complaint, *Broadcom Corp. v. Qualcomm Inc.*, No. 05-cv-03350 (D.N.J. Sept. 19, 2005)) at ¶¶ 58, 82. In other cases upholding
26  allegations of technology markets, the complaints also contained less detail regarding market definition than Apple has alleged here. *See, e.g.*, Selwyn Decl., Ex. C (Complaint, *Research in Motion Ltd. v. Motorola, Inc.*, No. 08-cv-
27  0284 (N.D. Tex. Feb. 16, 2008)) at ¶ 94; *Id.*, Ex. D (Apple Inc.'s First Amended Answer, Defenses and Counterclaims, *Nokia Corp. v. Apple Inc.*, No. 09-791 (D. Del. Feb. 19, 2010) at 65, 69, 81, motion to dismiss denied by *Id.*, Ex E (Transcript of Hearing (June 3, 2010)).

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

2.      **Apple Has Properly Pled That Samsung Possesses Monopoly Power in the Relevant Market**

"Monopoly power… is the power to control prices or exclude competition."  *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) (citing *United States v. Grinnell Corp.*, 384 U.S. at 570-71).  Monopoly power may be shown "by direct evidence or by circumstantial evidence."  *Id.*

Samsung argues that Apple has failed adequately to allege that Samsung obtained monopoly power in the Input Technology Markets when the SSOs incorporated technologies that Samsung claims are covered by its patents into the UMTS standard, Samsung Mot. at 11, without offering any real reason as to why the Court's prior conclusion that "[i]t appears … that Apple has sufficiently alleged monopoly power" should be disturbed.  To begin, Samsung disregards Apple's allegations that, as a result of Samsung's standard-setting misconduct, it has illegally obtained a "monopoly position" (i.e., 100% share) and "the power to raise prices and exclude competition" in the relevant Input Technology Markets.  ACR ¶¶ 99, 101-02.  Nor does Samsung address Apple's detailed allegations regarding the underlying reasons Samsung enjoys its monopoly position, for instance:  "the selection of a particular technology during the standard-setting process reduced to a single option the technology to perform each function that ETSI determined to include in the standard.  Parties implementing the standard such as Apple are thus 'locked-in' to the technology."  ACR ¶ 94; *see also id.* ¶¶ 93, 101-03.

Several courts, in the specific context of claims arising from standard-setting for UMTS, have held allegations that a party claims to hold patents covering technologies incorporated in the standard sufficient to allege monopoly power in relevant technology markets.  As the Third Circuit explained in *Broadcom*:

> A standard, by definition, eliminates alternative technologies. When a patented technology is incorporated in a standard, adoption of the standard eliminates alternatives to the patented technology. Although a patent confers a lawful monopoly over the claimed invention, its value is limited when alternatives technologies exist. That value becomes significantly enhanced, however, after the patent is incorporated in a standard.  Firms may become locked

into a standard requiring the use of a competitor's patented technology.

*Broadcom*, 501 F.3d at 314 (citations omitted).  Applying these principles, the court in *Broadcom* "easily" found that the plaintiff had alleged monopoly power, explaining that "the incorporation of a patent into [the UMTS] standard … makes the scope of the relevant market congruent with that of the patent."  *Id.* at 315; *accord Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 792-93 (N.D. Tex. 2008) (adopting reasoning of *Broadcom* and denying motion to dismiss for lack of allegations of monopoly power where defendant claimed to hold patents essential to UMTS standard); *Apple Inc. v. Motorola Mobility*, 2011 U.S. Dist. LEXIS 72745 at *39 ("By making false commitments that led to the establishment of worldwide standards incorporating its own patents and eliminating competing alternative technologies, [the defendant] has become a gatekeeper, accruing the power to harm or eliminate competition in the relevant [technology] markets if it so desires."); *see generally Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 476-77 (1992) (recognizing that customer lock-in may result in elimination of competition and supplier monopoly); *Newcal*, 513 F.3d at 1044-51 (same).[7]

Samsung cites *Townshend v. Rockwell Int'l Corp.*, No. 99-cv-0400, 2000 WL 433505, *12 (N.D. Cal. Mar. 28, 2000), for the proposition that the standardization of a patent "does not confer any power to exclude that exceeds the exclusionary power" of the patent.[8]  Samsung Mot. at 11.  But in *Townshend*, the court observed that there was no allegation that the standardization of the patented technology prevented the development of other proprietary technologies, i.e., that alternative technologies were excluded through the standardization process.  *Townshend*, 2000

---

[7] Indeed, Samsung, itself, has alleged in litigation in the United Kingdom that a holder of patents declared essential to the UMTS standard holds a dominant position in relevant technology markets.  Selwyn Decl., Ex. A at ¶ 70.  Similarly, in an amicus curiae brief in the Federal Trade Commission's *Rambus* proceeding, Samsung argued that "[b]y failing to disclose its patent rights, and by other misleading conduct, Rambus led [an SSO] and its members to adopt and implement technologies in the [SSO's] standards that Rambus contends violate its patents.  This, in turn, has given Rambus monopoly power."  *Id.*, Ex F. (Brief of Amici Curiae, *In re Rambus Inc.*, No. 9302 (FTC Sept. 15, 2006)) at 2.

[8] Samsung's reliance on *Illinois Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 42-45 (2006), is puzzling.  *See* Samsung Mot. at 11.  Apple does not allege that Samsung's patents, by themselves, create monopoly power.  Quite the contrary, Apple alleges that Samsung obtained monopoly power over the technologies Samsung asserts to be covered by these patents only through deceitful conduct that caused SSOs to include them in the UMTS standard.  "*Independent Ink* does not address holders of *essential* patents, that is, patents that are incorporated into a standard.  Essential patents are very different from normal patents."  *Research in Motion*, 644 F. Supp. 2d at 793.

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1    WL 433505, at *11.  Indeed, the court there observed that the counterclaim-plaintiff "has not

2    asserted that the [SSO] could have adopted a … standard which did not encompass [the

3    patentee's] technology."  *Id.*  Here, in contrast, we have just the opposite – Apple has alleged

4    that ETSI would not have standardized the technologies in question had it known of Samsung's

5    deceit and identified in detail alternative technologies.  ACR ¶¶ 57-58.[9]

6          Finally, Samsung argues that Apple has failed adequately to allege that it or other product

7    suppliers are locked in to the UMTS standard and could not switch from producing devices that

8    comply with another standard "without undue cost."  Samsung Mot. at 12.[10]  But Apple has

9    clearly alleged that it is locked into practicing the UMTS standard, and that it would be

10   extraordinarily costly to stop producing its UMTS-complaint products and switch to producing

11   only products that comply with another telecommunications standard.[11]  Apple has alleged that

12   "designers, such as Apple, *invest great resources* developing … products that … comply with

13   the technical standard.  Even if there were an alternative standard, the costs and disruption

14   associated with switching is typically prohibitively expensive.  The designer that implements a

15   standard thus becomes 'locked-in.'"  ACR ¶ 28 (emphasis added).  Apple has made clear that it

16   has incurred such costs and is locked into the UMTS standard, having made "massive

17   investments," *id.* ¶¶ 70, 87, in developing and improving UMTS-compliant products, which it

18   marketed and continued to develop for over three years before Samsung even raised an

19   objection.  *Id.* ¶¶ 16, 18.  Apple has alleged that UMTS "is the most widely adopted 3G

20

21   [9] Moreover, unlike here, *Townshend* did not involve deceit on the SSO, because the defendant had fully disclosed its patents and the terms on which it would license before the SSO established the relevant standard.  *Townshend*, 2000 WL 433505, at *11.

22   [10] In Samsung's brief discussion of this issue, there is some indication that it might be arguing that Apple could
23   switch technologies in the various Input Technology Markets – i.e., produce UMTS-compliant products without practicing Samsung's patents – rather than switch to a different standard altogether.  Samsung Mot. at 12 ("Apple
24   fails to plead specific facts showing that the costs of switching technologies in the various 'Input Technology Markets' it defined would actually be expensive or prohibitive here.").  But Apple has repeatedly alleged that the standardization of the technologies that Samsung claims are covered by its patents has eliminated all alternative
25   technologies from the Input Technology Markets, and that Apple is locked in to those technologies.  *See, e.g.*, ACR ¶¶ 93-94, 101.

26   [11] Indeed, Samsung has alleged much the same thing in other matters.  *See, e.g.*, Selwyn Decl., Ex. G (First Amended Complaint, *Samsung Elecs. Co. v. InterDigital Commc'ns Corp.*, No. 07-0167 (D. Del. Sept. 14, 2007)) at ¶14
27   (stating with reference to the UMTS standard that "[t]he payoff for owners of patents that are incorporated into the standard are substantial because the entire industry will need a license to the patents essential to the standard"); *Id.*, Ex. A at ¶ 63Z.1 (stating with reference to Europe that "the ETSI agreement [on UMTS] operates…to confer market power on its members who are owners of essential patents").

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

- 11 -

1   telecommunication standard worldwide," *id.* ¶ 42, and that customers wishing to use devices on a

2   UMTS network must purchase UMTS-compliant devices.  *Id.* ¶¶ 24, 96.  At bottom, Samsung's

3   argument that Apple has failed adequately to allege that it could not have simply scrapped its

4   huge investments in UMTS devices that it has sold for years, stopped offering devices altogether

5   to the large global customer base that requires compliance with the widely-adopted UMTS

6   standard, and switched to selling exclusively products that comply another standard  "without

7   undue cost" squarely contradicts the allegations in the Amended Counterclaims in Reply and

8   defies common sense.[12]

9           **3.      Apple has Properly Pled that Samsung Engaged in Anticompetitive**
                     **Exclusionary Conduct**
10

11          Samsung does not dispute the adequacy of Apple's allegations that Samsung engaged in

12   standard-setting abuses and violated the ETSI IPR Policy through deceitful non-disclosures of its

13   IPR and its true intentions not to meet its FRAND commitments.  It nevertheless argues that

14   Apple's allegations regarding Samsung's misconduct are inadequate to plead illegal

15   monopolization because even if Samsung had timely disclosed its claimed-essential IPR, the

16   SSO still would have standardized the relevant technologies.  Samsung Mot. at 12-14.[13]

17   Samsung ignores Apple's allegations that it was the combination of Samsung's non-disclosure

18   and its deceit regarding its intention not to meet the very FRAND commitment on which the

19   SSO relied that induced the SSO to standardize Samsung's purportedly essential technologies.

20          This Court previously found, in analyzing Apple's original counterclaims, that there was

21   nothing "legally defective about Apple's theory of monopoly conduct arising from false FRAND

22   licensing terms," but dismissed Apple's claims on the ground that they lacked specificity with

23   respect to which Samsung patents were disclosed when, and by whom.  Order at 7.  Apple now

24   ───────────────
     [12] Contrary to Samsung's argument, Samsung Mot. at 12, Apple need not allege details such as the specific costs it
     would incur in abandoning entire product lines.  *See Newcal*, 513 F.3d at 1045 ("There is no requirement that [the
25   relevant market or monopoly power] be pled with specificity.").

26   [13] Samsung notes, without discussion, that it made "specific disclosures of intellectual property rights" in addition to
     its 1998 general FRAND commitment.  Samsung Mot. at 13.  Apple, however, has alleged that these disclosures
     were made long after the standard was adopted, ACR ¶ 57, and therefore they could not have been the basis of the
27   initial decision to standardize Samsung's technology.  Equally important, Apple has alleged that Samsung made
     each of these declarations while concealing its true intention not to meet its FRAND commitments.  ACR ¶ 64.

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1   alleges detailed facts concerning when the false FRAND declarations were made, by whom, and

2   for which patents.  ACR ¶¶ 63-65.  Samsung does not dispute that Apple has remedied the

3   omissions in its pleading that the Court identified, and no longer challenges Apple's false

4   FRAND allegations.  Those allegations are independently sufficient to support a monopolization

5   claim.  *See Broadcom*, 501 F.3d at 314 (upholding Section 2 claim based on allegations that false

6   FRAND commitments induced SSO to standardize technologies as part of UMTS standard);

7   *Research in Motion*, 644 F. Supp. at 796 (same).

8        With regard to Apple's allegations that Samsung failed timely to disclose its Declared-

9   Essential IPR, the Court dismissed Apple's claims not due to any legal flaw, but because it found

10  that Apple had not alleged adequately that the SSOs would have standardized different

11  technologies had Samsung properly disclosed its IPR.  Order at 9.  The Court suggested one way

12  in which Apple might cure this defect: by making "factual allegations that there were other

13  technologies considered by the SSO at the time of standard setting."  Order at 9.  As Samsung

14  concedes, Samsung Mot. at 12, Apple has now identified in detail specific alternative

15  technologies that were available for the SSOs to standardize instead of the technologies that

16  Samsung now claims are covered by its patents.[14]  ACR ¶ 58.

17       Samsung nonetheless persists in arguing that Apple has failed to allege that Samsung's

18  deceit caused it to obtain monopoly power in the Input Technology Markets.  But it completely

19  disregards Apple's allegations that "[h]ad Samsung disclosed its IPR *and* its true intention not to

20  offer FRAND license terms for each Declared-Essential Patent, 3GPP would not have

21  standardized the input technologies that Samsung's now claims to be covered by each Declared-

22  Essential Patent."  *Id.* ¶ 61 (emphasis added).  Apple, moreover, has alleged that a fundamental

23  objective of the ETSI IPR Policy was to "reduce the risk" to those implementing standards that

24  their investment would be wasted "as a result of an ESSENTIAL IPR . . . being unavailable," *Id.*

---

25  [14] For the Declared-Essential Patents in suit, Apple has identified in the Amended Counterclaims in Reply viable
    alternative technologies that were available for 3GPP to select in place of Samsung's technology that was
26  purportedly standardized.  For instance, for the '410 patent, Apple has identified competing proposals for addressing
    rate matching in the UMTS network submitted to 3GPP by Nortel and one jointly submitted by Fujitsu and Siemens,
27  either of which could have been adopted as an alternative.  ACR ¶ 58(d); *see also id.* ¶ 58(a)-(c), (e)-(g).

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1   ¶ 54 (quoting ETSI IPR Policy Clause 3.1), and the specific rules in place to ensure that ETSI

2   would standardize patented technology only if such technology would be available to all

3   standard implementers on FRAND licensing terms.  *Id.* ¶¶ 51-55.  Indeed, Samsung recognizes

4   that where a patent owner is not prepared to license on FRAND terms, "the ETSI Rules of

5   Procedure provide that an alternative technology should be identified or that the patented

6   technology should not be incorporated into a standard."  Samsung Mot. at 13.  Accordingly,

7   Apple has plainly alleged adequately that had Samsung disclosed its IPR *and* that it did not

8   intend to live up to its FRAND commitments, the SSOs would not have standardized the

9   technologies that Samsung claims are covered by its patents.

10          Insofar as Samsung might contend that Apple has failed to plead monopoly conduct, even

11   when the Amended Counterclaims are construed properly, not only would that argument

12   contravene Apple's allegations it would defy logic.  The contention rests on the remarkable

13   proposition that if Samsung had disclosed its IPR and disavowed its obligation to grant FRAND

14   licenses, the SSOs would have just gone ahead and standardized technology purportedly covered

15   by Samsung's IPR anyway – notwithstanding the availability of ready alternatives to doing that.

16   But if the SSOs would have done nothing in the face of Samsung's flaunting of the rules, there

17   would have been no point in even having an IPR policy to protect against the sort of abuses

18   Apple alleges here.

19          In *Apple Inc. v. Motorola Mobility, Inc.*, 2011 U.S. Dist. LEXIS 72745, the court found

20   sufficient allegations of exclusionary conduct virtually identical to those Apple makes here.

21   There "Apple allege[d] that if [the defendant had] disclosed to the standards setting organizations

22   that its patents covered the standards, but that it would not offer fair, reasonable and non-

23   discriminatory licenses to all implementers of those standards, the organizations' members may

24   have chosen viable alternative technologies or declined to incorporate into the standards the

25   functions purportedly covered by [the defendant's] patents."  *Id.* at *37-*38.  After observing

26   that Apple had alleged "that [the defendant] had achieved its gatekeeper status not through

27   'growth or development as a consequence of a superior product, business acumen, or historic

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1   accident,' but through [the defendant's] false promises that it would license its patents on fair,

2   reasonable, and non-discriminatory terms," the court held that "[t]hese allegations imply that [the

3   defendant] engaged in anticompetitive conduct and has achieved monopoly power." *Id*. at *38-

4   *39.

5          Finally, Samsung's argument that Apple failed to plead either that the alternatives "were

6   unpatented or non-proprietary" or that they were "superior to Samsung's" misses the point.

7   Samsung Mot. at 13.  There is no requirement that Apple allege that the alternatives to

8   standardizing technology that Samsung's claims is covered by its patents were *free* or *better*

9   *performing* than the technologies that were standardized; it need only allege that the SSOs had

10  viable alternatives that were excluded by Samsung's deceit.  *See* Order at 9 (suggesting that

11  Apple plead "a viable alternative technology performing the same functionality" as Samsung's

12  proposal); *see also Broadcom*, 501 F.3d at 315-16 (finding anticompetitive conduct adequately

13  alleged because alternative technologies could be inferred from the complaint).

14          **C.      Apple Has Adequately Pled Claims Under the California UCL**

15          Because Samsung has adequately alleged a violation of Section 2 the Sherman Act (*see*

16  *supra* Part IV.B), it necessarily also alleged a violation of the California UCL.  *See Cel-Tech*

17  *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (Cal. 1999) (violations of

18  the Sherman Act also violate the UCL).[15]

19          **D.      Apple Has Properly Alleged Its Contract and Estoppel Claims**

20          Although Samsung challenges all three of Apple's contract and promissory estoppel

21  claims, its motion is directed principally at counterclaim Twenty-Seven, Apple's request for a

22  declaratory judgment that it is currently licensed to Samsung's Declared-Essential Patents by

23  ────────────────────────

24  [15] Samsung's assertion that "communications that bear some relation to judicial proceedings are absolutely immune from tort liability" under California Civil Code 47(b) and therefore cannot form the basis for an unfair competition claim, Samsung Mot. at 23, is beside the point.  Section 47(b) immunity covers *communications*, not *conduct. See, e.g., Meridian Project Sys., Inc. v. Hardin Const. Co.*, 404 F. Supp. 2d 1214, 1223 (E.D. Cal. 2005) (UCL claim

25  based on anticompetitive conduct was not precluded by Section 47(b)); *Microsoft Corp. v. A-Tech Corp.*, 855 F. Supp. 308, 314 (C.D. Cal. 1994) (Claims "based on tortious conduct rather than a communication or publication"

26  are "not barred by the Section 47 privilege.").  Apple's UCL claim is based on Samsung's conduct – the bringing of legal claims – not mere communications.

27

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1    virtue of Samsung's irrevocable offer of a license and Apple's acceptance thereof.  That claim

2    turns solely on questions of French law about contract formation.  Samsung misstates and

3    misapplies that law.

4            Apple has also properly pled in its Twenty-Fifth counterclaim that Samsung is

5    contractually bound to comply with the terms of the ETSI IPR Policy and that Samsung has

6    breached those in several respects by bringing infringement claims against Apple,

7    discriminating against Apple in failing to offer FRAND license terms, and breaching its

8    obligation timely to disclose its IPR under Clause 4.1 of the ETSI IPR Policy.

9            Finally, Apple has properly pled in counterclaim Twenty-Six a promissory estoppel

10   claim, also governed by French law, based on Samsung's irrevocable commitments to ETSI that

11   it would license its Declared-Essential Patents on FRAND terms.

## 1.    French Law Applies to Apple's Contract and Promissory Estoppel Claims

14           Samsung bases its arguments on the erroneous premise that California law applies to

15   Apple's contract and promissory estoppel claims.  But as Apple pled, the ETSI IPR Policy that is

16   the basis for Samsung's contractual obligations provides that it "shall be governed by the laws of

17   France."  ACR ¶ 54 (quoting ETSI IPR Policy Clause 12).  California law has a "strong policy

18   favoring enforcement" of choice-of-law provisions and will do so where "there is any . . .

19   reasonable basis for the parties' choice of law" and the chosen state's law is not contrary to a

20   fundamental policy of California.[16]  *Nedlloyd Lines B.V. v. Superior Court of San Mateo County*,

21   3 Cal. 4th 459, 464-66 (Cal. Ct. App. 1992).  Here, the choice of French law to govern contracts

22   between ETSI, a French organization, ACR ¶ 39, and its members is plainly reasonable.  Nor, as

23   shown below, does French law conflict with any fundamental policy of California.  Indeed,

---

24   [16] Further, "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement'
     between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how
25   they are characterized."  *Nedlloyd Lines B.V. v. Superior Court of San Mateo County*, 3 Cal. 4th 459, 470 (Cal.
     1992).  In view of this black letter principle and Apple's clear invocation of French law, ACR ¶ 54, Samsung's
26   contention that Apple "fails to identify which law would apply to a license arising from ETSI obligations" under
     Fed. R. Civ. P. 44.1 cannot be credited.  Samsung Mot. at 14.  Moreover, Samsung can hardly claim surprise or
     prejudice, given its own prior acknowledgment that French law governs, its submission of a French law declaration
     with its motion here, and the fact that Apple and Samsung have litigated a number of related cases under French law
27   throughout the world.  *See* Selwyn Decl. ¶ 2.

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1    Samsung has itself acknowledged that the "ETSI rules, including the ETSI IPR Policy, take

2    effect as a multilateral agreement between its members, governed by French law."  Selwyn

3    Decl., Ex. A at ¶ 63R.

4            French law also applies to Apple's promissory estoppel claim because Samsung made the

5    relevant promises in connection with the ETSI IPR Policy.  *See PAE Gov't Servs., Inc. v. MPRI,*

6    *Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("Because MPRI made its alleged promises in connection

7    with the Teaming Agreement, that agreement's choice-of-law clause governs PAE's promissory

8    estoppel claim.") (citing *Nedlloyd*).

             ## 2.    Apple Has Adequately Pled a Claim For a Declaratory Judgment
             ##        That It Is Presently Licensed

9
10           In its Twenty-Seventh counterclaim, Apple seeks three declaratory judgments:  (1) that it

11   is licensed to Samsung's declared-essential patents; (2) in the alternative, that Apple has the

12   irrevocable right to be licensed; and (3) determination of the FRAND terms and conditions for its

13   license to Samsung's declared-essential patents.  ACR ¶¶ 195-96.  Samsung directly challenges

14   only the first.  Samsung offers five arguments why Apple is not licensed to Samsung's declared-

15   essential patents.  Samsung Mot. at 18-19.  These arguments have no merit, and indeed review of

16   them demonstrates that Apple *is* licensed and entitled to a declaratory judgment to that effect.

17           First, a formal writing is required under Art. 613-8 of the French Intellectual Property

18   Code only when a license is concluded through direct negotiation and not, as here, where it is

19   formed through a general declaration (here to ETSI).  Declaration of Nicholas Molfessis

20   ("Molfessis Decl.") ¶ 109.  Even if a formal writing were required, Apple has alleged the

21   existence of such by way of Samsung's written ETSI declarations.  ACR ¶ 63.  Those written

22   declarations are sufficient to meet the purpose of Art. 613-8 that the patent holder expresses in

23   writing its consent to the granting of a license.  Molfessis Decl. ¶ 110.

24           Second, under French law, price is not an essential term for the formation of a binding

25   license to intellectual property.  Accordingly, the fact that Samsung's declarations, irrevocably

26   committing it to FRAND royalties under Clause 6.1, did not identify specific royalty amounts or

27

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

percentages did not prevent Apple from completing a binding license agreement by

implementing the UMTS standard.  Molfessis Decl. ¶¶ 29, 106 (citing J. Schmidt- Szalewski and

J.L. Pierre, Droit de la propriété industrielle, Litec 3nd ed., n° 251, 252, and 270).

Indeed, Samsung's own French law expert in prior litigation, Professor Xavier Boucobza

of the University of Paris XI, agreed that four decisions of the French Supreme Court in 1995

established that price is not a necessary element to form a valid license contract:

> The license contract -- I mean, *the contract is concluded independently of the fixing of the price*.  And this, according to the decisions of the Supreme Court of the 1st of December 1995 . . . .
>
> In other words, *the price is not a necessity in order to conclude a valid contract license. The license already exists, was concluded before the price is determined*.

Selwyn Decl., Ex. H (Hearing Transcript, *In the Matter of Certain 3G Wideband Code Division*

*Multiple Access Mobile Handsets and Components Thereof*, Inv. No. 337-TA-601 (ITC July 11,

2008)) at 1718 (emphasis added).[17]

Third, there is no merit to Samsung's argument that Apple has failed to plead a valid

license because Samsung's FRAND declarations were not made *intuitus personae* -- *i.e.*, with

regard to a particular person.  Under French law, the decision whether a contract will be *intuitus*

*personae* is left to the parties to decide depending on the nature of the contract.  Molfessis Decl.

¶ 45.  Here, a requirement of entering into a license agreement *intuitus personae* is at odds with

the general FRAND declarations made to ETSI.  Molfessis Decl. ¶¶ 123-126.  Indeed,

Samsung's own French counsel at Allen & Overy, who submitted a declaration in a Dutch

proceeding regarding the same dispute as that at issue here, acknowledged that "since French law

accepts the concept of an 'offer' to the public at large, the fact that this offer [*i.e.*, the ETSI

---

[17]  Professor Boucobza testified to this point repeatedly:

> Q. . . . What if the price term is missing, is there still a valid contract?
>
> A.  Yes. The framework agreement is still valid and with regards to that point, French case law pronounced itself very clearly. Four decisions were rendered by the Supreme Court . . . .  This Supreme Court on the 1st of December, '95 decided upon validity of such a framework agreement.

*Id*. at 1661-62.

1   declaration] was not made to a specific person . . . does not matter."  Selwyn Decl., Ex. I

2   (Statement from Laëtitia Benard (Sept. 12, 2011)) at ¶ 9.

3       Fourth, Apple has pled the existence of a valid offer by Samsung through its FRAND

4   declarations under Clause 6.1.  These offers contained both of the essential elements required

5   under French law to establish a patent license on acceptance:  the patents covered by the license

6   and the scope of the granted rights.  Molfessis Decl. ¶¶ 26, 100-101; ACR ¶¶ 52, 63.  French law

7   requires no more.

8       Fifth, Apple has properly alleged that it accepted Samsung's FRAND license offer when

9   Apple began to implement the UMTS standard, ACR ¶¶ 16-17, 69, and that constituted a valid

10  acceptance under French law.  Molfessis Decl. ¶¶ 11-13, 92-95.  That the parties had not yet

11  agreed on price -- a "secondary" element of the contract -- did not prevent formation of the

12  license agreement.  Molfessis Decl. ¶¶ 27-31, 103-106.  Accordingly, Apple is presently licensed

13  to Samsung's declared-essential patents as a matter of French law.

14      Finally, even if California law applied, Apple has properly pled the existence of a valid

15  license.  In *Ess Tech., Inc. v. PC-TEL, Inc.*, No. C-99-20292, 1999 WL 33520483, *3-4 (N.D.

16  Cal. Nov. 4, 1999), the court found a virtually identical licensing commitment to an SSO

17  sufficiently definite under California law to sustain a claim seeking specific enforcement of a

18  license agreement.  Recognizing that "under California law it must try to enforce the contract,"

19  that even though the commitment lacked certain express terms, such as a royalty, it could

20  nonetheless enforce the license and set its terms by looking to "defendants' other contracts to

21  determine what is fair, reasonable, and non-discriminatory."  *Id*. at *4.

22          **3.      Apple Has Properly Pled That Samsung Breached Its Contractual**
            **Obligations With ETSI and Its Members, Including Apple**
23

24      Apple's Twenty-Fifth counterclaim is based on the contractual obligations accepted by

25  Samsung through its membership in ETSI and Samsung's breach of those obligations by

26  (i) seeking an injunction against Apple, notwithstanding Samsung's irrevocable licensing

27  commitments under Clause 6.1; (ii) failing to offer FRAND license terms to and discriminating

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1    against Apple with respect to Samsung's Declared-Essential Patents; and (iii) failing timely to

2    disclose its IPR during the standard-setting process.  ACR ¶¶ 179-84.

3          ETSI is an association governed by the French Civil Code.  Molfessis Decl. ¶¶ 49, 56-57.

4    As Article 1 of the Code provides, an "association is an agreement whereby two or more persons

5    come together, in permanent fashion, to combine their knowledge or activities for a non-profit

6    purpose" and such an association "is governed, as to its validity, by the general principles of law

7    applicable to contracts and obligation."  Molfessis Decl. ¶ 49 (quoting Art. 1, French Civil Code,

8    July 1, 1901).  Accordingly, under French law, a party that becomes a member of an association

9    also becomes a party to, and is contractually bound by, the association's bylaws or articles.

10   Molfessis Decl. ¶ 49.  Thus, by joining ETSI, Samsung accepted and is bound contractually by

11   the ETSI IPR Policy.  ACR ¶¶ 45, 55; Molfessis Decl. ¶¶ 49, 58-59.  As a member of ETSI,

12   Apple is also a party to the ETSI IPR Policy.  ACR ¶ 8; Molfessis Decl. ¶ 49, 58.

13         Samsung does not contest that ETSI membership brings with it acceptance of contractual

14   obligations or that Apple may properly seek to enforce those obligations.[18]  Its arguments as to

15   the scope of those obligations and Apple's allegations of breach are unavailing.  In particular,

16   Samsung's contentions that the obligation to grant licenses under Clause 6.1 merely requires

17   negotiating in good faith and that a violation of the requirement of timely disclosure under

18   Clause 4.1 is without consequence again underscore that Samsung's views, if accepted, would

19   render toothless the ETSI IPR Policy and threaten the viability of effective standard setting there

20   and beyond.

21                    a.      **Apple Has Stated a Valid Claim for Breach of Clause 6.1**

22         By making a declaration under Clause 6.1 of the ETSI IPR Policy, a holder of declared-

23   essential patents contractually commits to ETSI and its members "that it is prepared to grant

24   _____

     [18] Indeed, Samsung previously has asserted such contractual claims in litigation with Ericsson:

25          The Claimant's enforcement of its intellectual property rights in these proceedings (in seeking injunctive
            relief, an order for delivery up and an account of profits) and/or its refusal to grant a license to the

26          Defendants on fair, reasonable and non-discriminatory terms is in breach of the contract which exists
            between the Claimant and the First Defendant as a result of their common membership of ETSI.

27   Selwyn Decl., Ex. A at ¶ 1A.

28
_____

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

irrevocable licenses on fair, reasonable and non-discriminatory [FRAND] terms and conditions." ACR ¶ 52 (quoting ETSI IPR Policy Clause 6.1).[19]  Samsung agreed to be bound by the conditions of Clause 6.1 when it submitted FRAND declarations for the patents it asserts here. ACR ¶¶ 63, 180-81.  As a matter of French law, the obligations under Clause 6.1 are contractual and binding.  Molfessis Decl. ¶¶ 63-64.

Contrary to Samsung's contention, the obligation under Clause 6.1 is more than just to negotiate in good faith, with it left solely in the IPR holder's discretion when to cut off such negotiations.  Samsung Mot. at 16, 20.  Rather, it requires the declarant actually to grant licenses and to provide FRAND terms for such licenses -- a process of contract formation that, as described above, is recognized by French law.  The requirement to actually grant licenses is evident in the fact that ETSI's purpose is to promote widespread, open adoption of its standards, and that purpose would be undermined if holders of declared-essential IPR were free to decide whether or not make their IPR available to particular implementers of the standard.  ACR ¶¶ 52-54, Molfessis Decl. ¶ 78.  Allowing the declarant to stipulate the condition of reciprocity in a declaration under Clause 6.1, rather than in later negotiations, further demonstrates that a binding offer has been made.  Molfessis Decl. ¶ 80.  Testifying on behalf of Samsung, Professor Boucobza also had no doubt that Clause 6.1 binds the declarant to grant FRAND licenses and not just to negotiate them:

- "According to article 6.1, the holder of essential patent[s] needs to grant licenses, is obliged to grant licenses to the ETSI members which request it." Selwyn Decl, Ex. H at 1659.

- "Q.  You testified that 6.1 requires that a party is – or a member is obliged to grant to ETSI licenses, correct?  And the only particular phrase I am referring to is the quote, obliged to grant.

  A.  Yes, that's correct.  He has a contractual obligation to grant licenses for the essential patents."  *Id*. at 1680.

Apple has properly alleged two breaches by Samsung of its obligations under Clause 6.1.

---

[19]  The FRAND obligations apply only after filing of a declaration under Clause 6.1; before then, members are not required to grant FRAND licenses merely by virtue of membership.  *See* ETSI IPR Policy, Clauses 6.1, 6.3.

First, by bringing an infringement suit against Apple and seeking an injunction, Samsung is directly contravening its agreement under Clause 6.1 to allow implementers to practice its patents in exchange only for FRAND royalties, without possibility of injunction.  ACR ¶¶ 49, 86, 182.

Second, Apple has sufficiently alleged that Samsung breached Clause 6.1 through its unfair, unreasonable, and discriminatory treatment of Apple as a licensee (or, at the least potential licensee) of Samsung's Declared-Essential Patents.  Specifically, Apple has alleged that Samsung repeatedly refused to offer Apple FRAND license terms, ACR ¶ 76; that Samsung's sole offer "after months of repeated Apple requests for a FRAND offer . . . was manifestly not FRAND," *Id.*  ¶ 77; and that on October 14, 2011, the District Court of the Hague in the Netherlands concluded that Samsung's offer was "plainly not on FRAND terms."  *Id.*  ¶ 78. Apple has also alleged that "Samsung is singling out Apple for abusive assertion of Declared-Essential Patents . . . because Apple owns non-essential patents that Samsung wishes to infringe with impunity."  *Id.*  ¶ 81; *see also id.* ¶¶ 82-87.[20]

Samsung's only response to Apple's allegations of breach is to contest the accuracy of the allegations regarding Samsung's conduct.  *See* Samsung Mot. at 20.  But that, of course, is just argument about what the facts will ultimately show, not about whether allegations are sufficient, and cannot support a motion to dismiss.  *See Research In Motion*, 644 F. Supp. 2d at 797 ("RIM has adequately pled that Motorola did not honor its promise to license on FRAND terms.  Motorola's contention otherwise is entitled to no weight on a Rule 12(b)(6) motion.").[21]

---

[20] Samsung contends that Apple's allegations support only a contract to negotiate a license on FRAND terms in good faith.  Samsung Mot. at 20.  Such a contract is recognized under both under French and California law.  *See* Molfessis Decl. ¶ 88; Declaration of Libchaber in Support of Samsung's Motion to Dismiss  ¶ 82; *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1257 (Cal. Ct. App. 2002) (parties can "enter into a valid, enforceable contract to negotiate the terms of a[n] . . . agreement").  Even on that minimalist view, Apple has pled a breach through its allegations of Samsung's refusal to provide a FRAND offer, its discriminatory treatment of Apple, and its seeking of an injunction.

[21] Apple's amended counterclaims contain significantly more detailed allegations regarding Samsung's refusal to offer a FRAND license or negotiate in good faith than the complaint filed by RIM.  *See* Selwyn Decl., Ex C at ¶¶ 83, 88-91, 165.

1

### b.     Apple Has Properly Alleged That Samsung Breached Its Obligation Timely To Disclose Its IPR

2

Apple has also properly alleged that Samsung breached Clause 4.1 of the ETSI IPR

3

Policy through its failure timely to disclose its IPR during the standard-setting process.  ACR

4

¶¶ 51, 57.  Samsung does not dispute that Apple has properly alleged that Samsung breached its

5

disclosure obligations.  Rather, it argues only that Apple has not alleged a plausible basis for

6

damages because, given Samsung's 1998 general FRAND commitment, 3GPP would have

7

standardized the technology Samsung claims is covered by its patents even if Samsung had

8

timely disclosed its patents.  Samsung Mot. at 20.  But, just as with its argument regarding

9

anticompetitive conduct, Samsung simply ignores Apple's allegations.  Apple has pled that

10

Samsung's also concealed its true intention *not* to comply with its FRAND undertaking.  ACR

11

¶¶ 60-62.  It was the combination of Samsung's deceitful IPR non-disclosures *and* its false

12

FRAND commitments that induced 3GPP to standardize the technologies that Samsung claims

13

are covered by its patents and allowed Samsung illegally to obtain a monopoly in the Input

14

Technology Markets, which it is now exploiting to damage Apple (as well as consumers).  *See*

15

*supra* Part IV.B.3.

16

### c.     Apple Has Pled the Existence of a Valid Contract Under California Law

17

18

Even if French law did not apply to ETSI obligations, Apple would still have alleged a

19

valid contract claims under California law.  California law recognizes that the rules and bylaws

20

of an organization contractually bind and benefit members as to one another.  *See Cal. Dental*

21

*Ass'n v. Am. Dental Ass'n*, 23 Cal. 3d 346, 353 (Cal. 1979) ("The rights and duties of the

22

members as between themselves and in their relation to [a private voluntary] association, in all

23

matters affecting its internal government and the management of its affairs, are measured by the

24

terms of [its] constitution and by-laws.") (alteration in original) (quotations omitted).

25

*Apple, Inc. v. Motorola Mobility, Inc.*, 2011 U.S. Dist. LEXIS 72745, is particularly

26

instructive.  There, the court held, applying Wisconsin law, that the IPR policies of various SSOs

27

"are binding on the members of the organizations" and, specifically, that the ETSI IPR Policy

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

imposed "contractual terms definite enough to constitute enforceable agreements." *Id*. at *27-*29.[22]  The court then concluded that Apple had adequately alleged two separate breaches of that contract:  that the defendant (a) "made royalty demands on Apple that exceeded those made on comparable parties" and (b) engaged in late disclosure.  *Id*. at *32; *see also Research in Motion*, 644 F. Supp.2d at 797 (denying motion to dismiss claim that Motorola "breached the contracts it made with IEEE and ETSI to license its patents on FRAND terms"); *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2011 U.S. Dist. LEXIS 73827, *12-*13 (W.D. Wa. June 1, 2011) (allegations of failure to offer license on reasonable and non-discriminatory terms and seeking injunctions on declared-essential patents sufficient to state breach of contract claim).

### 4.    Apple Has Properly Pled Its Promissory Estoppel Claim

Apple has adequately pled a claim for promissory estoppel under French law.  Samsung does not contest that Apple has properly alleged it is a beneficiary of Samsung's FRAND commitments, or that Apple relied on those commitments in making enormous investments in products that implement the UMTS standard.  ACR ¶¶ 69-70.  Although Samsung contends that Apple has failed to plead a sufficiently definite promise, it does concede that Apple has pled that Samsung was, at the very least, obligated to negotiate a license on FRAND terms.  Samsung Mot. at 16, 21; *see also* ACR ¶ 186.

French law recognizes that the act of reneging on a promise on which another party has relied -- as Samsung has done with its FRAND commitments -- can give rise to an estoppel.  Molfessis Decl. ¶¶ 53-54.  By alleging that Samsung made clear and binding commitments to offer licenses on FRAND terms, ACR ¶¶ 63, 68, 186, that those promises induced Apple to implement the UMTS standard, ACR ¶¶ 69, 188, and that Samsung now seeks to revoke those commitments by its refusal to make a FRAND offer and by claiming infringement and seeking injunctions against Apple, ACR ¶¶ 76-79, 190, Apple has stated a valid estoppel claim under French law.  Molfessis Decl. ¶¶ 53-54, 128.

---

[22]  In reaching that conclusion, the court relied on the fact that like California law, "[u]nder Wisconsin law, the constitution, by-laws and resolutions of a voluntary association may form a binding contract between members of that association."  *Id*. at *24 (citing *Attoe v. Madison Prof'l Policemen's Ass'n*, , 255 N.W.2d 489, 492 (Wis. 1977)).

1    Indeed, in a previous litigation where it pled that French law governed, Samsung itself

2 alleged that the "clear and unequivocal" commitment to ETSI embodied in a FRAND

3 commitment was sufficiently definite for it and other ETSI members to have reasonably relied on

4 and to bind those who made it under principles of estoppel.  Selwyn Decl., Ex. A at ¶¶ 63R, 88-

5 89, 96-97.  Having taken this position when the shoe was on its other foot, Samsung cannot now

6 be heard to contend that a FRAND commitment is not sufficiently definite to induce reliance.

7    Finally, even if California law applied, Apple has sufficiently alleged a claim for

8 promissory estoppel.  Samsung's commitment to negotiate in good faith licenses on FRAND

9 terms, which carried with it the obligation to make a FRAND offer and forego seeking injunctive

10 relief against Apple, is a promise sufficiently definite to state a claim for promissory estoppel.

11 *See, e.g.*, *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 226 (Cal. Ct. App. 2011) (bank's

12 agreement to "work with [Aceves] on a mortgage reinstatement and loan modification"

13 sufficiently "clear and unambiguous" promise to state claim for promissory estoppel) (alteration

14 in original) (quotations omitted); *US Ecology, Inc. v. California*, 92 Cal. App. 4th 113, 131 (Cal.

15 Ct. App. 2001) (allegation of promise to use "best efforts" to acquire property from federal

16 government "fit within the classic model of a promissory estoppel claim").

17 **V.    CONCLUSION**

18    For the reasons set forth above, the Court should deny Samsung's Motion to Dismiss

19 Apple's Counterclaims.

20

21

22

23

24

25

26

27

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1    Dated:  December 20, 2011

2

3                                                      /s/ Mark. D Selwyn
                                                       Mark D. Selwyn (SBN 244180)
4                                                      (mark.selwyn@wilmerhale.com)
                                                       WILMER CUTLER PICKERING
5                                                          HALE AND DORR LLP
                                                       950 Page Mill Road
6                                                      Palo Alto, California  94304
                                                       Telephone:  (650) 858-6000
7                                                      Facsimile:   (650) 858-6100

8
                                                       William F. Lee (admitted *pro hac vice*)
9                                                      (william.lee@wilmerhale.com)
                                                       WILMER CUTLER PICKERING
10                                                         HALE AND DORR LLP
                                                       60 State Street
11                                                     Boston, Massachusetts  02109
                                                       Telephone: (617) 526-6000
12                                                     Facsimile: (617) 526-5000

13
                                                       Harold J. McElhinny (SBN 66781)
14                                                     (HMcElhinny@mofo.com)
                                                       Michael A. Jacobs (SBN 111664)
15                                                     (MJacobs@mofo.com)
                                                       Richard S.J. Hung (CA SBN 197425)
16                                                     rhung@mofo.com
                                                       MORRISON & FOERSTER LLP
17                                                     425 Market Street
                                                       San Francisco, California 94105
18                                                     Telephone: ( 415) 268-7000
                                                       Facsimile:  (415) 268-7522
19

20                                                     Attorneys for Plaintiff and
                                                       Counterclaim-Defendant Apple Inc.
21

22

23

24

25

26

27

28

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 20, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ Mark. D Selwyn
Mark D. Selwyn

APPLE INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS APPLE'S
COUNTERCLAIMS – Case No. 11-cv-01846 (LHK)