# Exhibit E

```
  1                IN THE UNITED STATES DISTRICT COURT
                 IN AND FOR THE DISTRICT OF DELAWARE
  2                           -  -  -

  3     NOKIA CORPORATION,              )      Civil Action
                                        )
  4              Plaintiff,             )
                                        )
  5          v.                         )
                                        )
  6     APPLE INC.,                     )
                                        )
  7              Defendant.             )      No. 09-791-GMS

  8                           -  -  -

  9     APPLE INC.,                     )
                                        )
 10              Counterclaim-          )
                 Plaintiff,             )
 11                                     )
             v.                         )
 12                                     )
        NOKIA CORPORATION and NOKIA,    )
 13     INC.,                           )
                                        )
 14              Counterclaim-          )
                 Defendants.            )
 15
                              -  -  -
 16                   Wilmington, Delaware
                    Thursday, June 3, 2010
 17                       10:00 a.m.
                       Teleconference
 18                           -  -  -

 19     APPEARANCES:

 20              JACK B. BLUMENFELD, ESQ.
                 Morris, Nichols, Arsht & Tunnell LLP
 21                      -and-
                 PATRICK J. FLINN, ESQ., and
 22              MARK A. McCARTY, ESQ.
                 Alston & Bird
 23              (Atlanta, GA)

 24                           Counsel for Nokia

 25
```

```
 1    APPEARANCES CONTINUED:

 2
              DAVID E. MOORE, ESQ.
 3            Potter Anderson & Corroon LLP
                       -and-
 4            WILLIAM F. LEE, ESQ., and
              MICHELLE D. MILLER, ESQ.
 5            (Boston, MA)

 6                           Counsel for Apple

 7
                       -  -  -
 8

 9            THE COURT:  Good afternoon, counsel

10            (Counsel respond "Good afternoon.")

11            THE COURT:  Counsel, could we do a roll call for

12    the record, beginning with plaintiff?

13            MR. BLUMENFELD:  Your Honor, this is Jack

14    Blumenfeld for the Nokia parties, along with Patrick Flinn

15    and Mark McCarty from Alston & Bird.

16            THE COURT:  Good afternoon.

17            MR. FLINN:  Good afternoon.

18            MR. MOORE:  On behalf of the defendant Apple,

19    Your Honor, it is Dave Moore at Potter Anderson.  With me on

20    the line are Bill Lee and Michelle Miller from WilmerHale.

21            THE COURT:  Good afternoon.

22            MR. LEE:  Good afternoon, Your Honor.

23            THE COURT:  Counsel, as you know, I had previous

24    plans to have you come back, I think, but in the press of

25    business and just scheduling challenges, I thought it better
```

Case 1:09-cv-01846-DLK   Document 521-5   Filed 12/20/11   Page 4 of 24
Case 1:09-cv-00791-GMS   Document 55   Filed 06/07/10   Page 3 of 23 PageID #: 1823

3

1    to proceed in the manner I am about to, via the vehicle of

2    teleconference.

3              I want to do two things today.

4              I am going to announce my decision regarding

5    Nokia's motion docketed at Item 25 to dismiss.  I am going

6    to read the ruling into the record.  I will endeavor at some

7    point to memorialize this, but don't hold your breath while

8    that is happening.

9              But we are on the record.  I will go into some

10   detail, not perhaps as much as I will if I am able to issue

11   a more formal ruling in writing.

12             Then I am going to want to revisit the schedule

13   that has been entered upon in this case, to discuss a fairly

14   discrete issue, that is, the positioning and treatment, or

15   perhaps repositioning and treatment of the contract versus

16   the patent issues in the case.

17             So, counsel, I will now rule on Nokia's motion

18   to dismiss Apple's nonpatent counterclaims (Counts I through

19   VI) for failure to state a claim pursuant to Rule 12(b)(6)

20   of the Federal Rules of Civil Procedure.

21             For the record, this motion is docketed as

22   DI-25.

23             The Court will deny without comment Nokia's

24   motion with respect to Counts I, II, IV, V, and VI - the

25   breach of contract, promissory estoppel, and declaratory

1    relief claims.

2          The Court will also deny Nokia's motion to

3    dismiss Apple's Count III, an antitrust claim for

4    monopolization under Section 2 of the Sherman Act.

5          Given that the overwhelming majority of the

6    parties' briefs were devoted to this monopolization claim,

7    the Court will now take a few moments to state its

8    reasoning.

9          Both parties discuss at some length the Third

10   Circuit's decision in Broadcom v. Qualcomm.  Broadcom

11   provides in clear terms the general framework under which

12   courts should analyze a motion to dismiss a claim brought

13   under Section 2 of the Sherman Act where the claimant is

14   alleging that the defendant engaged in anticompetitive

15   conduct during a standards-setting possess.  Specifically,

16   the Court in Broadcom held that the following elements, if

17   established, are sufficient to state a monopolization claim

18   under Section 2:

19          (1) in a consensus-oriented private standard-

20          setting environment, (2) a patentholder's

21          intentionally false promise to license essential

22          proprietary technology on FRAND terms, (3) coupled

23          with an SSO's -- standard-setting organization's --

24          reliance on that promise when including the technology

25          in a standard and (4) the patentholder's subsequent

1  breach of that promise is actionable anticompetitive

2  conduct.

3  Apple will ultimately have to establish each of

4  the four elements listed in Broadcom in order to prevail on

5  its monopolization claim. At the stage in the proceedings,

6  however, the question is not whether Apple has shown enough

7  to prevail on this claim, but, rather, whether its

8  counterclaim complaint sufficiently pleads this claim.

9  While the Supreme Court's rulings in Twombly and

10  Iqbal raised the bar for surviving a motion to dismiss

11  somewhat, federal courts still operate under a notice

12  pleading system. Under Twombly and Iqbal, as long as the

13  plaintiff alleges enough facts to make his or her claim

14  plausible on its face, a motion to dismiss must be denied.

15  Put another way, and this is a quote from Iqbal:

16  "A claim has facial plausibility when the pleaded factual

17  content allows the Court to draw the reasonable inference

18  that the defendant is liable for the misconduct alleged."

19  Apple's counterclaim complaint easily passes

20  this test with respect to the monopolization claim. Nokia

21  argues that the allegations in Apple's complaint are

22  "conclusory" and "inconsistent." The Court does not agree.

23  Numerous paragraphs in the counterclaims plead facts that if

24  proven would support a finding that Nokia violated Section 2

25  of the Sherman Act. For instance, Paragraph 53 of the

1    counterclaims state that, "In order to ensure incorporation

2    into the standard and to avoid the SSO's consideration of

3    the cost of standardizing patent technology, Nokia

4    deliberately and deceptively did not disclose during the

5    standard-setting-process IPR [intellectual property

6    rights] that it now claims are essential to the standard.

7    In fact, in many cases, a named inventor on the concealed

8    patent application participated in the relevant working

9    group and championed Nokia's technical proposal.  Nokia

10   disclosed its IPR only after the relevant standard was

11   finalized."

12            In other paragraphs, Apple alleges specific

13   disclosures and nondisclosures that Nokia made during the

14   standards-setting possess and the commitments Nokia made to

15   license its technologies on RAND or FRAND terms.  In

16   Paragraph 71, 72, 83 and 84, among others, Apple alleges

17   that it relied on Nokia's FRAND and RAND commitments.  Later

18   paragraphs in the complaint detail the ways in which Nokia

19   allegedly broke its promise to license its technologies.

20   For instance, Paragraphs 88 and 89 allege that Nokia

21   demanded cross-licensing of a number of Apple patents that

22   Apple alleges were not standards-essential.  Paragraphs 90

23   and 91 allege that Nokia demanded excessive royalties,

24   specifically, royalties that were approximately three times

25   as much as earlier proposed royalties.  These are just a few

1    examples of specific factual allegations in the complaint

2    that support a plausible claim for monopolization.

3                It is true that it might have been possible for

4    Apple to be even more specific in its complaint.  Apple did

5    not, for instance, allege the specific dollar amounts and

6    royalties that Nokia demanded.  Apple did not specify the

7    exact patents to which Nokia demanded licenses and why those

8    patents were not standard-essential.  But neither the Third

9    Circuit nor the Supreme Court require such specificity at

10   the pleading stage.  It is always possible for a complaint,

11   it seems to me, to be more specific or extensive in

12   specifying the conduct allegedly giving rise to a claim.

13   The mere fact that greater specificity is possible does not,

14   however, render a complaint insufficient.  The facts alleged

15   in Apple's counterclaims are sufficient to create a

16   reasonable inference that Nokia engaged in conduct that

17   violated Section 2 of the Sherman Act.  That is all that is

18   required to survive a motion to dismiss.

19               As to Nokia's allegation that Apple was

20   "inconsistent" in its assertions regarding whether the ten

21   Nokia asserted patents were essential, the Court agrees with

22   Apple that this misapprehends the legitimate practice of

23   alternative meaning.  Nokia's complaint repeatedly asserts

24   that the asserted patents are essential.  As Apple correctly

25   asserts in its brief, "Apple is entitled to premise its

1   counterclaims on those allegations and to argue, in the

2   alternative, that if the patents are essential, Nokia

3   wrongfully acquired and abused its monopoly power in the

4   markets for the technologies covered by the patents."

5           In short, Apple's counterclaims allege facts

6   sufficient to support a plausible claim for monopolization

7   under Section 2 of the Sherman Act.

8           For the reasons stated, the Court will deny

9   Nokia's motion to dismiss.

10          That is the Court's ruling, counsel.

11          That leaves, then, in my view -- and I am

12   willing to discuss this with a somewhat open mind -- the

13   possible need to revisit the ordering of things.  We

14   discussed this extensively at our first visit, at the

15   scheduling conference.

16          Who wants to go first?

17          MR. LEE:  Your Honor, it's Bill Lee.

18          THE COURT:  Mr. Lee, I might have known you

19   would jump into the breach right away.

20          MR. LEE:  I apologize.  I missed the conference

21   at which Mr. Quarles appeared because I was in trial before

22   Judge Bonares (phonetic).

23          I think Mr. Quarles at least reported to me he

24   argued extensively but unsuccessfully to have the contract

25   claims litigated first.  Without being redundant, I would

1      say that we still think that is the right way to do it.  We

2      actually think if there were discovery and a trial on the

3      contract claims, that that actually may be the most likely

4      mechanism to resolve all of the patent claims before Your

5      Honor.  There are now two competing cases of Internet and

6      Trade Commission.  Nokia started another patent case against

7      Apple in the Western District of Wisconsin.

8           I think -- and I know Mr. Flinn may disagree --

9      but I think that if we could litigate the contract claim,

10     which is, there is a contract, there is a license, has there

11     been a breach because the offer is not FRAND, has the best

12     chance of getting the parties to ultimate resolution.

13          The only other point I will make, Your Honor,

14     is that it really would avoid a lot of duplication and a lot

15     of extra effort if we can litigate the contract claims

16     first.  If it can resolve the case, there will never be the

17     need to impose upon, frankly, the Court's resources to

18     decide ten patents, nor will the parties have to litigate

19     ten patents.  And these ten patents are just ten of

20     thousands that might be litigated, which I think no one

21     hopes will happen.  The contract claim and the resolution of

22     that has the prospect of resolving the dispute as to all of

23     them.

24          THE COURT:  Thank you, Mr. Lee.

25          Who would care to respond on behalf of Nokia?

1          MR. FLINN:  Good afternoon, Your Honor.  This is

2    Patrick Flinn from Alston & Bird.

3          THE COURT:  Good afternoon.

4          MR. FLINN:  Good afternoon.

5          It is nice to have Mr. Lee with us.  We did miss

6    him the last time we were in Delaware.

7          But let me say that beyond Mr. Lee's presence,

8    nothing really has changed from the schedule that the Court

9    set in our prior meeting.  The schedule was set with the

10   assumption that the nonpatent claims would, in fact, be in

11   the case.  And the fact that they are now confirmed to be in

12   the case I don't think causes much reason to revisit the

13   schedule.

14         And I do have to respectfully disagree with Mr.

15   Lee's suggestion that somehow litigating ten patents is

16   simpler than litigating the contract FRAND issue, because

17   that is going to require determining the fair, reasonable,

18   and nondiscriminatory rates for not ten patents but for the

19   several hundred patents that are in Nokia's portfolio.

20         The license dispute that gives rise to Apple's

21   breach of contract claim is one that is not limited to the

22   ten patents that are the subject of Nokia's original

23   infringement claims that started this litigation.

24         The contract claims broadly and significantly

25   opened the scope of the case from the simple ten patent

Case 1:05-cv-01046-LHK  Document 524-5  Filed 12/30/11  Page 12 of 24
Case 1:05-cv-00791-GMS  Document 55  Filed 06/07/10  Page 11 of 28 PageID #: 1831

11

1    infringement claims that were originally brought.

2                So I don't think that it is going to be any

3    simpler to do the contract case first.  It is going to be

4    much more significant to have to deal with the entire

5    portfolio and structure it that way.

6                The only other fact that I think counsel --

7    another fact that I believe counsel is against changing the

8    schedule that had been previously agreed is that now that

9    the pleadings on the counterclaim have been resolved and we

10   know what is at stake, Nokia will have to look at what

11   nonpatent claims it wants to bring, and their schedule

12   permits amendment, the commonplace amendment of Nokia's

13   pleadings in light of the presence of the nonpatent claims

14   in here.

15               So it is possible -- and it hasn't been

16   confirmed -- but it is possible that there will be nonpatent

17   claims, including contract claims, that Nokia will assert,

18   that will further make it more complicated to adjudicate

19   them first.

20               So I think, in summary, our view is that the

21   circumstances and structure of this case remains unchanged,

22   notwithstanding the Court's ruling, and if anything, the

23   reasons for the Court doing the patent issues first, as of

24   right now the simplest issues if the case, I think, remain

25   the persuasive ones.

1        THE COURT:  Mr. Flinn -- I know we talked about

2   this at the 16 conference.  I will give Mr. Lee a chance to

3   respond -- but could you revisit the point that was made I

4   think in the joint status report, where I think it was --

5   and I haven't had a chance to review it comprehensively --

6   there was mention made of a similar case and an approach

7   taken by another District Judge wherein the contract matter

8   was positioned first and it resulted in a relatively prompt

9   resolution of the action.  I am just not sure if it was by

10  way of settlement or not.

11       MR. FLINN:  That was, I believe, the

12  Samsung/Ericsson case.  I think it was significantly

13  different factually and procedurally from the situation we

14  are in right now.  And it did not involve the situation

15  where we have a lawsuit started simply on the infringement

16  of ten patents and then the defendant wanting to change the

17  subject to talk about what the value of an entire portfolio

18  of several hundred patents is worth and wanting that

19  resolved first.

20       The fact is that the ten patents are the only

21  patents that Nokia seeks to litigate in this case at this

22  point.  And to the extent that we are going to add anything

23  else, it will be noncontract claims, and possibly even an

24  explicit breach of contract against Apple.  Now that Apple

25  has pled the existence of the contract, we believe that it

 1   has contractual obligations that it has not fulfilled.  But

 2   that again is likely to a much broader, more factually

 3   complex case than ours.

 4              THE COURT:  Thank you.

 5              Mr. Lee, could you address in reverse order the

 6   assertion just made by Mr. Flinn that if Nokia elects to

 7   amend, seeks to amend, and brings in its own claims of

 8   breach of contract or failure to follow FRAND, that it will

 9   at least potentially significantly complicate matters, and

10   then move on.

11              MR. LEE:  Yes.  Your Honor, I don't think that

12   is correct.  I am not quite sure what the claim is going to

13   be from them on our breach of contract.  But I can say these

14   two things on that for sure.

15              One is, Your Honor, if we breach the contract to

16   them and they breach the contract to us, or there is

17   allegations of that, they are all arising from the same set

18   of contacts.  They are arising from the same interactions

19   that were spurred by Nokia's contact with us in 2007 when

20   the iPhone launched.

21              The second is, both claims of breach of contract

22   will be resolved by what is an appropriate FRAND rate and

23   whether offered.  So there is going to be a common set of

24   facts.  The fact of the matter is the parties only met a

25   half-dozen times.  It's not going to be quite as expansive,

Case 1:09-cv-01836-LHK Document 521-5 Filed 12/20/11 Page 15 of 24
Case 1:09-cv-00791-GMS Document 55 Filed 06/07/10 Page 14 of 23 PageID #: 1834

14

1    I think, as Mr. Flinn suggests.  Ultimately, the question of

2    whether there has been a FRAND offer and what is a FRAND

3    rate will resolve both of them.

4              The second is, I think the Eastern District of

5    Texas case is, in fact, quite analogous, and was we think

6    correct, because it recognized that resolving the FRAND

7    issue was likely to resolve the entire worldwide dispute for

8    the entire portfolio.  And it did resolve it.

9              The interesting thing, Your Honor, is that -- I

10   can't remember which judge did it in Texas.  But in the

11   opinion, he relied in part upon Vice Chancellor Strine.  The

12   opinion that they relied upon from Vice Chancellor Strine

13   was in the Qualcomm-Nokia case, where Nokia was advocating

14   precisely the position I am advocating now, which is:

15   Resolve the contract issue, and that will resolve the

16   dispute.

17             The last point, Your Honor, is something has

18   changed beyond the fact I have finished another trial and I

19   am here and Mr. Quarles isn't.  That is, Nokia has sued

20   Apple in Wisconsin, opening up yet another forum, five more

21   patents, part of the portfolio.  And it's the best

22   indication that we would urge the Court to help us find a

23   way to resolve all of this.  Otherwise, we are going to have

24   iterative patent cases one after another.

25             The fact of the matter is, if we litigate the

```
 1    ten patents before Your Honor, we have this massive Markman

 2    hearing, a 15-day trial, and the issue is resolved and some

 3    of the patents are valid and infringed, we are still going

 4    to have to decide the contract claim, because they claim

 5    that these patents are essential.  We claim, then, that we

 6    get a FRAND rate.  We are still going to have to resolve the

 7    contract claims.

 8              The contract claim is the one claim that has the

 9    prospect -- or it's the best claim that has the prospect of

10    taking all of these cases in all of these venues and

11    resolving it once and for all, or at least giving the

12    parties the incentive, a decision has been made, to go off

13    and reach a reasonable resolution.

14              THE COURT:  Okay.  This is the problem with good

15    lawyers.

16              Well, well argued on both sides.

17              Mr. Flinn, did you have anything else you wanted

18    to add.

19              MR. FLINN:  Very briefly, Your Honor.  I

20    appreciate your patience on this.

21               Mr. Lee mentioned the Wisconsin case, and

22    suggested that it, in fact, implicates FRAND issues.  It

23    does not.  The patents that are at issue in the Wisconsin

24    case aren't subject to a FRAND obligation.  They have not

25    been declared essential to any SSO, they are not asserted to
```

1     be essential to any SSO.  So they are in the same category

2     of patents that Apple has sued Nokia for infringing and

3     brought the ITC actions that Apple has brought against

4     Nokia.

5              The other point that I wanted to make that was

6     also made previously in our in-person hearing but is worth

7     revisiting, there are significant problems with adjudicating

8     the FRAND contract claim beyond simply the several hundred

9     U.S. patents that are at stake in this case.  We have

10    several hundred foreign patents that are part of the

11    portfolio that Mr. Lee, I think, would like the Court to

12    rule on what the value of those patents is, in terms of a

13    fair, reasonable, and nondiscriminatory rate.

14             The other thing that I think will become clear

15    when we plead, as I expect we will but I can't be sure, our

16    contract claim, we believe that the contract arises once a

17    party starts to use the technology claimed in an essential

18    patent.

19             Thus, we think that it is going to be

20    impossible to adjudicate the FRAND contract issue without

21    knowing which patents Apple actually uses.  And for ten

22    patents, that is going to be complicated enough, but for

23    several hundred U.S. patents, and I don't even know how we

24    are going to deal with the foreign patents, it becomes

25    nearly nightmarish.

Case 1:05-cv-01796-LHK   Document 521-5   Filed 12/20/11   Page 18 of 24
Case 1:09-cv-00791-GMS   Document 55   Filed 06/07/10   Page 17 of 23   PageID #: 1837

17

1            THE COURT:  Mr. Lee, Mr. Flinn has injected some

2     new matter.  Do you care to react to it?

3            MR. LEE:  Yes.  I would just say two things,

4     Your Honor.

5            I think that the idea that the contract arises

6     only when you use the technology is not correct.  A contract

7     that we are the beneficiary of is the contract they made

8     with the standard-setting organizations.  And we are the

9     beneficiary to that contract.

10            One of the cases that the Third Circuit cited in

11     the Broadcom appeal was a case that came out of San Diego,

12     that we actually tried, that involved these issues.  And

13     it's relevant in two respects according to what Mr. Flinn

14     described.

15            First, in that case Qualcomm declared the

16     patents essential after the litigation had commenced.  So

17     the mere fact that they may or may not have made the

18     disclosures now doesn't tell us whether they claim they are

19     essential or not.  In fact, Nokia has made declarations of

20     essentiality years after the standard has been adopted.

21            So I don't think that tells us much about

22     Wisconsin.

23            The second thing, Your Honor, is a contract

24     arises at the time that they participate in the standard

25     organization.  We are at least a third-party beneficiary to

1     that, which is in part what came out of the San Diego

2     decision.  On that issue I just disagree with Mr. Flinn.

3     And I continue to believe that we could have a five-day

4     trial, as Your Honor planned, on the contract claim, and the

5     likelihood is we would never need the second or third trial.

6                 THE COURT:  Okay.  Let me ask this of both

7     counsel.  I would like to give this some further thought, is

8     where I think I am going to end this.  Would it be as simple

9     if I were of a mind to reorder things, could it be as

10    simple, counsel, in your view, given how far out the trials

11    are in this matter and the due date for the pretrial

12    conference and the due date for the proposed pretrial order,

13    as simply reordering -- and this is what I have on my

14    mind -- repositioning the patent and contract, flipping

15    them, having them change positions, with the contract matter

16    going first and the patent matter going second?

17                MR. LEE:  Your Honor, I think from Apple's point

18    of view, the answer is yes.

19                THE COURT:  And it wouldn't affect discovery or

20    anything of that nature, the manner in which discovery is

21    proceeding?

22                MR. LEE:  I think that's right.

23                THE COURT:  We are not talking about -- at this

24    juncture, I think the order reflects that there is not going

25    to be 56 practice.  So it wouldn't affect that in any way.

1    Right?

2               MR. LEE:  Right.

3               THE COURT:  Mr. Flinn.

4               MR. FLINN:  Well, one of the things, Your Honor,

5    that I think is going to be -- potentially make it hard

6    simply to do the flipping is that it's pretty clear just

7    from this call that Mr. Lee and I are not going to agree on

8    some kind of very basic things about this contract, like

9    what creates it, what the obligations of the contract are,

10   and the like.

11               It's a contract that actually arises out of

12   French law, we believe, because the organization, the

13   standards-setting organization in question for at least the

14   telecom patents is a French entity called ETSE (phonetic).

15   We believe, the French law makes clear that use of the

16   patents is what triggers some contractual obligations.

17               We don't think there is an obligation, if

18   somebody is simply out walking down the street, that they

19   had a license to Nokia's patents.  They have to actually use

20   the technology to get a license to the patent and be

21   obligated to pay royalties on it.

22               So we are going to have to sort out that basic

23   legal framework.  And I think it's going to be hotly

24   contested.  The scope of what comes into the case is going

25   to turn on that.

1          If Mr. Lee is right that the only issue is what

2     offer was made and rejected two or three times over the

3     course of the negotiating history, that's one thing.  But we

4     don't think that's the contract that exists.  We think the

5     contract is not as simple as that.

6          THE COURT:  Pardon the interruption, Mr. Flinn.

7     Isn't that going to be the issue whether we try the contract

8     case on May the 21st or the patent case on June the 18th?

9     Those issues are still going to be extant, aren't they?

10         MR. FLINN:  They are going to get -- we are

11    going to make more progress on them if we try the patent

12    case first, because at least we are going to know whether or

13    not there is, in fact, an obligation at all, because if we

14    are correct in showing that the patents are essential and if

15    we are correct in showing that they are used, we at least

16    have something concrete in terms of what to value for

17    purposes of what the FRAND contract requires.

18         THE COURT:  Will the patent litigation establish

19    essentiality?

20         MR. FLINN:  Absolutely.  Absolutely.  We are

21    going to read the patents on the standard, and we are going

22    to show that Apple complies with the standard.  And that is

23    going to show essentiality.  And then the question is what

24    is a fair, reasonable, and nondiscriminatory rate.

25         THE COURT:  Mr. Lee.

Case 1:09-cv-01846-LHK Document 521-5 Filed 12/20/11 Page 22 of 24
Case 1:09-cv-00791-GMS Document 55 Filed 06/07/10 Page 21 of 23 PageID #: 1841

21

1        MR. LEE:  Your Honor, two things.

2        It may establish essentiality for some portion

3    of the ten, but it still leaves the portfolio.  I think what

4    neither of us has said, which may be the most important

5    thing to tell Your Honor, is these licenses, when they get

6    granted, even if they are resolving, for instance, the

7    Qualcomm-Nokia fight, are portfolio licenses.  No one is

8    going through and saying, well, this patent in Israel is

9    worth this, this patent in Germany is worth this, this

10   patent in the U.S. is worth that.

11       There are portfolio licenses that cover the

12   entire portfolio.  And the question is, what is the FRAND

13   offer and what is the FRAND rate for that portfolio?  That

14   is just a matter of expert testimony that Your Honor could

15   hear in a couple of days and would resolve everything.

16       If we followed Mr. Flinn's procedure to its

17   logical conclusion, we would have a trial on ten patents.

18   Some portion of them might be infringed.  We then have to

19   move to whether there was a contractual obligation to offer

20   FRAND, whether it was.  And then, having had that decided,

21   we could move on to the next portion of the portfolio.

22       But Nokia and Apple, without violating the NDA,

23   have always discussed this as a portfolio licensing matter.

24   And, in fact, that is what Nokia did with Qualcomm and how

25   they resolved it.  And that's what Nokia urged on Magistrate

1   Judge Strine.

2               THE COURT:  You mean Vice Chancellor Strine?

3               MR. LEE:  Yes.  Vice Chancellor Strine.  I got

4   it wrong.  I apologize.

5               I think, to be quite honest, one of the reasons

6   that I think Nokia would like to put the contract claim off

7   is that on certainly the key issues that we have been

8   arguing today, they have said the exact opposite.  To take

9   the positions they are going to take is hard because of what

10  happened in the other case.  That is why we would have the

11  trial.

12              THE COURT:  Does anyone have the cite to the

13  Eastern District of Texas case off the top of your heads?  I

14  don't remember where I saw it.  I was thumbing through the

15  joint status report.  I don't think it's actually there.

16              MR. FLINN:  Your Honor, we can track it down and

17  get it to the Court.  I will point out that I think there

18  were a number of lawsuits pending in different fora at the

19  same time.  We don't really know why they settled.  But we

20  know there was a District Court case, there were ITC cases.

21              We can track down the citation and forward that

22  to the Court.

23              THE COURT:  Did the judge in that case explain

24  his reasoning for the manner in which he managed that case?

25              MR. FLINN:  I don't believe that there is

1    anything significant about the reasoning.  But whatever

2    there is, Judge, we will find it and get it to you.

3              THE COURT:  All right.  Thank you.

4              Let me consider this.  I don't think my leaving

5    things status quo, moving along as I have already ordered,

6    interferes with progress in any way.

7              Does it, in your view, Mr. Lee?

8              MR. LEE:  It does not, Your Honor.

9              THE COURT:  Mr. Flinn?

10             MR. FLINN:  I agree, Your Honor.

11             THE COURT:  All right, gentlemen.  Thanks for

12   your time.  And take care.

13             (Counsel respond "Thank you.")

14             (Conference concluded at 2:36 p.m.)

15                       -   -   -

16   Reporter:  Kevin Maurer

17

18

19

20

21

22

23

24

25