# Exhibit G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD.,

        Plaintiff,

    v.

INTERDIGITAL COMMUNICATIONS CORPORATION,
INTERDIGITAL TECHNOLOGY CORPORATION, and
TANTIVY COMMUNICATIONS, INC.,

        Defendants.

Civil Action No. 07-167

**JURY TRIAL DEMANDED**

### First Amended Complaint

Plaintiff Samsung Electronics Co., Ltd. (hereinafter, "Samsung"), through its undersigned attorneys, alleges the following as and for its complaint against Defendants InterDigital Communications Corporation, InterDigital Technology Corporation, and Tantivy Communications, Inc. (collectively, "InterDigital").

### Nature and Basis of Action

1.    This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the laws of several states, including Delaware and California. Samsung seeks damages and injunctive relief for InterDigital's refusal to comply with its contractual obligations to be prepared to license its patents on fair, reasonable, and nondiscriminatory ("FRAND") terms. Samsung further requests declarations (i) that InterDigital's refusal to provide FRAND licenses, despite its contractual obligations to do so, constitutes an unfair business practice; (ii) that Samsung has a right to InterDigital's patents by virtue of their relationship with Qualcomm Incorporated; and (iii) that various patents allegedly owned by InterDigital are unenforceable.

### Parties

2.    Plaintiff Samsung Electronics Co., Ltd. ("Samsung") is a Korean corporation with its principle place of business at 250, 2-Ka, Taepying-Ro, Chung-Ku, Seoul, Korea. Plaintiff

Samsung researches, develops, and markets various electronic consumer devices, including DVD players, big-screen televisions, and digital cameras; computers, color monitors, LCD panels, and printers; semiconductors such as DRAMs, SRAMs, and flash memory; and communications devices ranging from wireless phones to networking switches, all under the brand name SAMSUNG.

3.       Defendant InterDigital Communications Corporation ("IDC") is a corporation organized and existing under the laws of the State of Pennsylvania, with offices at 781 Third Avenue, King of Prussia, Pennsylvania, 19406, USA.  Upon information and belief, Defendant IDC develops circuitry designs, software, and other technology using wireless telecommunications standards.  InterDigital also develops semiconductors and software to enable voice and data transmissions in mobile phones and portable computing devices.

4.       Defendant InterDigital Technology Corporation ("ITC") is a corporation organized and existing under the laws of the State of Delaware, with offices at 300 Delaware Avenue, Suite 527, Wilmington, Delaware, 19801, USA.  Upon information and belief, Defendant ITC is a wholly owned subsidiary of IDC and licenses the technology developed by Defendant IDC.

5.       Defendant Tantivy Communications, Inc. ("Tantivy") is a corporation organized and existing under the laws of the State of Delaware, with offices at 300 Delaware Avenue, Suite 527, Wilmington, Delaware, 19801, USA.  Upon information and belief, Defendant Tantivy is a wholly owned subsidiary of IDC.

**Jurisdiction and Venue**

6.       This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity between the parties and because the amount in controversy

2

exceeds the value of $75,000, exclusive of interests and costs.

7.      This Court has personal jurisdiction over InterDigital under the laws of the State of Delaware, including the Delaware long-arm statute, 10 Del. Code § 3104.

8.      Venue is proper in this District under 28 U.S.C. § 1391.

### Facts Giving Rise to this Action

9.      This case is about InterDigital's anticompetitive and illegal conduct in the cellular telephone industry and particularly in its dealings with Samsung.  Over a number of years and on a number of occasions, InterDigital has successfully induced standards development organizations ("SDOs") to incorporate InterDigital's patented technology into third-generation ("3G") cellular telecommunications standards by promising to provide licenses to its 3G intellectual property on fair, reasonable, and nondiscriminatory terms.  But now, with the standards in place, InterDigital refuses to provide Samsung with a license on FRAND terms.

10.     InterDigital's refusal to negotiate reasonable terms with Samsung is nothing new. In 1995, Samsung and InterDigital entered into a license agreement that covered second-generation ("2G") technology.  The parties are presently arbitrating the effect of the variable royalty terms provided under Samsung's most-favored-licensee clause in that agreement and, in particular, InterDigital's refusal to grant Samsung its contractual right to pay royalties on "equal footing" with Nokia, another InterDigital licensee.  But the claims at issue in this case are wholly unrelated to that arbitration.  Here, Samsung's claims relate exclusively to 3G technology, which is not presently covered by any existing Samsung–InterDigital license.

*The Cellular Telecommunications Industry*

11.     The wireless telecommunications industry is heavily regulated by technical standards developed and maintained by SDOs.  The first generation ("1G") of technology used

analog signals. The move to digital, and the second generation ("2G"), came in the 1990s, with two dominant technical standards capturing the market: Global System for Mobility ("GSM") and Code Division Multiple Access ("CDMA"). Today, most wireless service providers operate on either the GSM platform or the CDMA platform, and the two are incompatible. For instance, Cingular Wireless and T-Mobile operate on the GSM network, while Verizon Wireless and Sprint/Nextel use CDMA.

12.     The next generation of wireless technology (i.e., 3G) has long been anticipated for its promised capabilities to deliver multimedia and internet connectivity to cellular handsets. And 3G has been promised as a convergent standard that will join historically disparate 2G networks in the future along upgrade paths directed to a single global telecommunications standard. But for a decade, the widespread adoption of 3G and investment in 3G infrastructure by service providers like Cingular and Verizon has been hampered by complex issues relating to ownership of the intellectual property rights that cover 3G technology. The stakes are high, and recently the situation has boiled over. Cellular handset and chipset manufacturers faced with InterDigital's unreasonable royalty demands and license terms for its 3G intellectual property rights have sought relief through the courts.

*The Role of Standards Development Organizations in the Cellular Industry*

13.     At the core of this case is the role that SDOs play in the evolution of wireless technology and the rules by which SDOs must operate and regulate industry participants like InterDigital and Samsung. SDOs evaluate technology and are supposed to generate (usually by a vote of the SDO membership) a public standard representing the best technological solution that can be used to promote compatibility and enhance competition.

4

14.     Without certain rules, however, SDOs would be illegal trusts because SDOs are a forum in which competitors essentially negotiate to determine which products they will and will not make.  The payoff for owners of patents that are incorporated into the standard is substantial because the entire industry will need a license to the patents essential to the standard in order to make products designed to operate according to the standard.  To prevent patent owners from imposing monopolistic royalties and to mitigate the threat of a single patent owner holding up the industry, SDOs condition the standardization of proprietary technology upon the patent owner's promise to make the technology available to the public royalty-free or on fair, reasonable, and nondiscriminatory ("FRAND") terms.  Securing a promise from an intellectual property owner that it will provide FRAND license terms permits the SDOs to set industry standards despite antitrust laws because industry standards as a whole can have procompetitive benefits, lowering barriers to market entry and making more products available at lower prices.

15.     Unfortunately, for the same reason—avoiding antitrust scrutiny—SDOs refrain from setting any commercial license terms or attempting to articulate what terms would satisfy the FRAND standard, leaving the door open for monopolistic opportunists, like InterDigital, to either extract unreasonable terms and conditions or claim that FRAND is too vague to enforce, which is precisely what InterDigital did in the Telecommunications Industry Association.

*InterDigital's Commitments to Standards Development Organizations*

16.     InterDigital champions its participation in SDOs.  For instance, InterDigital notes that "[t]hrough active participation in both the principal wireless 3G standards and IEEE 802 working groups of the worldwide standards bodies, InterDigital is engaged in helping the industry define the next generation of wireless technologies."  Contributing to Industry Standards, INTERDIGITAL.COM, *at* http://www.interdigital.com/tech_products_contributing.shtml

(last visited Feb. 16, 2007).

17.     InterDigital has announced to the world that it participates in several SDOs, including:

      (a)     the European Telecommunications Standards Institute ("ETSI");

      (b)     the Alliance for Telecommunications Industry Solutions ("ATIS");

      (c)     the Telecommunications Industry Association ("TIA");

      (d)     the Association of Radio Industries and Business ("ARIB"); and

      (e)     the International Telecommunications Union Radio Sector ("ITU")

(hereinafter, collectively, "the wireless telecom SDOs").

18.     Each of the wireless telecom SDOs has a policy for handling intellectual property rights ("IPR").  Generally, each IPR policy requires every member of the SDO to inform the SDO of any IPR that the member contends is essential or potentially essential to practice a proposed standard.  Prior to incorporating a member's technology into a standard, each SDO requests that the member provide an undertaking or declaration stating that it is prepared to grant irrevocable licenses under its patented technology on fair, reasonable, and nondiscriminatory terms and conditions.  Put another way, in exchange for having its technology included in the standard, for having the SDO promote the standards worldwide, and for having the industry directed to use its patented technology, each member trades away the right to refuse to license its intellectual property to anyone willing to pay FRAND terms.  In short, the promise of FRAND licenses is the *quid pro quo* of the bargain struck between the SDO and the intellectual property owner.

19.     On information and belief, InterDigital has struck a bargain with each of the wireless telecom SDOs, committing irrevocably to provide its 3G intellectual property allegedly

essential to practice 3G standards on FRAND terms to all interested licensees.

*InterDigital's Refusal to Provide Samsung FRAND License Terms*

20.     Over the course of several months, Samsung and InterDigital have been engaged in comprehensive negotiations regarding Samsung's desire for a license on FRAND terms to InterDigital's 3G technology.

21.     Throughout the negotiations, Samsung has repeatedly sought from InterDigital a license on FRAND terms based on InterDigital's express promises to the wireless telecom SDOs that InterDigital would provide its intellectual property allegedly essential for the practice of 3G wireless telecommunication standards on FRAND terms.

22.     Throughout the negotiations, InterDigital has maintained that Samsung would infringe InterDigital's 3G intellectual property if Samsung manufactured a product that complied with the 3G wireless standards.

23.     Throughout the negotiations, InterDigital explicitly or implicitly threatened Samsung with patent infringement litigation if Samsung did not accept InterDigital's terms for a license—terms which were substantially out of line with InterDigital's FRAND obligations.

24.     InterDigital refused to negotiate any further, maintaining its insistence upon terms substantially in excess of FRAND terms, and thereby failing to comply with its obligations to Samsung based on InterDigital's bargain with the wireless telecom SDOs.

25.     In light of the litigation currently pending between InterDigital and Samsung regarding 2G technology, the explicit or implicit threats of litigation by InterDigital during licensing negotiations, and the fact that InterDigital has now terminated any further negotiations over FRAND licensing, Samsung has a reasonable apprehension of imminently being sued for infringement of InterDigital's 3G patents.

*The Current Status of Litigation Between Samsung and InterDigital*

26.     On March 23, 2007, Samsung filed the present original complaint in this action. On that same day, InterDigital asserted certain patents allegedly essential to 3G standards against Samsung in both this Court, Case No. 07-165-JJF, *InterDigital Communications Corp. et al. v. Samsung Electronics Co., Ltd., et al.* ("InterDigital's Delaware Action") and in the United States International Trade Commission, Inv. No. 337-TA-601, *In the Matter of Certain 3G Wideband Code Division Multiple Access (WCDMA) Handsets and Components Thereof* ("InterDigital's ITC Action"). InterDigital's Delaware action is currently stayed. InterDigital's ITC Action is in discovery; there have been no rulings on any substantive claims or defenses; and it is set for trial in January 2008.

### COUNT I.
### Breach of Contract (the ETSI IPR Policy)

27.     Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 26 as if set forth fully herein.

28.     As set forth above, the European Telecommunications Standards Institute ("ETSI") is an SDO responsible for, among other things, the development of 3G wireless telecommunications standards.

29.     Both Samsung and InterDigital are members of ETSI. As members of ETSI, Samsung and InterDigital entered into an actual or implied contract to comply with ETSI's governing documents, including, but not limited to, ETSI's Intellectual Property Rights Policy.

30.     Under the terms of the ETSI IPR Policy, prior to the approval of a proposed standard, ETSI requests that members commit that they are "prepared to grant irrevocable licenses on fair, reasonable, and nondiscriminatory terms and conditions."

31.     On information and belief, InterDigital has declared to ETSI that InterDigital

owns IPR allegedly essential to practicing 3G standards.   With InterDigital's declarations to ETSI, InterDigital made a binding and irrevocable promise that, as a condition to ETSI adopting standards that allegedly require InterDigital's IPR to implement, InterDigital would negotiate licenses in good faith and would be prepared to grant FRAND terms to all potential licensees.

32.     InterDigital breached its contractual obligations to Samsung when InterDigital refused to negotiate licenses in good faith and when it failed to provide FRAND terms.

33.     As a result of InterDigital's breaches, Samsung has been injured in its business or property through the loss of past, present, and future profits, by the loss of customers and potential customers, by the loss of goodwill and product image, and by the prospective damage to its handset business.

34.     As a result of Samsung' injuries, Samsung seeks damages in an amount to be proven at trial.

35.     As a result of Samsung' injuries, Samsung further seeks specific performance of InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND terms.

**COUNT II.**
**Breach of Contract (the ETSI IPR Policy),**
**with Samsung as an Intended, Third-Party Beneficiary**

36.     Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 35 as if set forth fully herein.

37.     Alternatively, InterDigital, as a member of ETSI, entered into an actual or implied contract with ETSI to comply with ETSI's governing documents, including, but not limited to, ETSI's IPR Policy.

38.     InterDigital's contract with ETSI created contractual rights in third parties,

9

including Samsung as a potential licensee of InterDigital's intellectual property allegedly essential for practicing 3G standards. InterDigital was on notice when it joined ETSI, when it agreed to comply with the ETSI IPR Policy, and when it submitted "IPR Licensing Declarations" to ETSI identifying intellectual property allegedly essential to the 3G standards. As a result, Samsung is an intended, third-party beneficiary of InterDigital's contract with ETSI, and Samsung can enforce InterDigital's promise to be prepared to grant FRAND licenses.

39.     Under the terms of the ETSI IPR Policy, prior to the approval of a proposed standard, ETSI requests that members commit that they are "prepared to grant irrevocable licenses on fair, reasonable, and nondiscriminatory terms and conditions."

40.     On information and belief, InterDigital has declared to ETSI that InterDigital owns IPR allegedly essential to practicing 3G standards. With InterDigital's declarations to ETSI, InterDigital made a binding and irrevocable promise that, as a condition to ETSI adopting standards that allegedly require InterDigital's IPR to implement, InterDigital would negotiate licenses in good faith and would be prepared to grant FRAND terms to all potential licensees.

41.     InterDigital breached its contractual obligations to Samsung when InterDigital refused to negotiate licenses in good faith and when it failed to provide FRAND terms.

42.     As a result of InterDigital's breaches, Samsung has been injured in its business or property through the loss of past, present, and future profits, by the loss of customers and potential customers, by the loss of goodwill and product image, and by the prospective damage to its handset business.

43.     As a result of Samsung' injuries, Samsung seeks damages in an amount to be proven at trial.

44.     As a result of Samsung' injuries, Samsung further seeks specific performance of

InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND terms.

## COUNT III.
### Breach of Contract (the ATIS IPR Policy)

45.    Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 44 as if set forth fully herein.

46.    As set forth above, the Alliance for Telecommunications Industry Solutions ("ATIS") is an SDO responsible for, among other things, the development of 3G wireless telecommunications standards.

47.    Both Samsung and InterDigital are members of ATIS. As members of ATIS, Samsung and InterDigital entered into an actual or implied contract to comply with ATIS's governing documents, including, but not limited to, ATIS's Intellectual Property Rights Policy.

48.    Under the terms of the ATIS IPR Policy, prior to the approval of a proposed standard, ATIS requests assurance from IPR holders that they are prepared to make available licenses to applicants "under reasonable terms and conditions that are demonstrably free of any unfair discrimination."

49.    On information and belief, InterDigital has made assurances to ATIS that InterDigital owned IPR allegedly essential to practicing 3G standards. With InterDigital's assurances to ATIS, InterDigital made a binding and irrevocable promise that, as a condition to ATIS adopting standards that allegedly required InterDigital's IPR to implement, InterDigital would negotiate licenses in good faith and would be prepared to grant FRAND terms to all potential licensees.

50.    InterDigital breached its contractual obligations to Samsung when InterDigital refused to negotiate licenses in good faith and when it failed to provide FRAND terms.

51.     As a result of InterDigital's breaches, Samsung has been injured in its business or property through the loss of past, present, and future profits, by the loss of customers and potential customers, by the loss of goodwill and product image, and by the prospective damage to its handset business.

52.     As a result of Samsung' injuries, Samsung seeks damages in an amount to be proven at trial.

53.     As a result of Samsung' injuries, Samsung further seeks specific performance of InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND terms.


## COUNT IV.
### Breach of Contract (the ATIS IPR Policy),
### with Samsung as an Intended, Third-Party Beneficiary

54.     Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 53 as if set forth fully herein.

55.     Alternatively, InterDigital, as a member of ATIS, entered into an actual or implied contract with ATIS to comply with ATIS's governing documents, including, but not limited to, ATIS's IPR Policy.

56.     InterDigital's contract with ATIS created contractual rights in third parties, including Samsung as a potential licensee of InterDigital's intellectual property allegedly essential for practicing 3G standards. InterDigital was on notice when it joined ATIS, when it agreed to comply with the ATIS IPR Policy, and when it made assurances to ATIS identifying IPR allegedly essential to the 3G standards. As a result, Samsung is an intended, third-party beneficiary of InterDigital's contract with ATIS, and Samsung can enforce InterDigital's

promise to be prepared to grant FRAND licenses.

57.     Under the terms of the ATIS IPR Policy, prior to the approval of a proposed standard, ATIS requests assurance from IPR holders that they are prepared to make available licenses to applicants "under reasonable terms and conditions that are demonstrably free of any unfair discrimination."

58.     On information and belief, InterDigital has made assurances to ATIS that InterDigital owned IPR allegedly essential to practicing 3G standards.  With InterDigital's assurances to ATIS, InterDigital made a binding and irrevocable promise that, as a condition to ATIS adopting standards that allegedly required InterDigital's IPR to implement, InterDigital would negotiate licenses in good faith and would be prepared to grant FRAND terms to all potential licensees.

59.     InterDigital breached its contractual obligations to Samsung when InterDigital refused to negotiate licenses in good faith and when it failed to provide FRAND terms.

60.     As a result of InterDigital's breaches, Samsung has been injured in its business or property through the loss of past, present, and future profits, by the loss of customers and potential customers, by the loss of goodwill and product image, and by the prospective damage to its handset business.

61.     As a result of Samsung' injuries, Samsung seeks damages in an amount to be proven at trial.

62.     As a result of Samsung' injuries, Samsung further seeks specific performance of InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND terms.

## COUNT V.
### Breach of Contract (the TIA IPR Policy)

63.     Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 62 as if set forth fully herein.

64.     As set forth above, the Telecommunications Industry Association ("TIA") is an SDO responsible for, among other things, the development of 3G wireless telecommunications standards.

65.     Both Samsung and InterDigital are members of TIA.  As members of TIA, Samsung and InterDigital entered into an actual or implied contract to comply with TIA's governing documents, including, but not limited to, TIA's Intellectual Property Rights Policy.

66.     Under the terms of the TIA IPR Policy, prior to the approval of a proposed standard, TIA must receive an effective "Patent Holder Statement" in the form of a document contained in "Annex H," which is included in TIA's "Engineering Manual" (i.e., TIA's bylaws). Among other things, the "Patent Holder Statement" requests that the IPR holder irrevocably commit to making available licenses "to all applicants under terms and conditions that are reasonable and non-discriminatory."

67.     On information and belief, InterDigital has filed "Patent Holder Statements" with TIA declaring that InterDigital allegedly owns IPR essential to practicing 3G standards.  With InterDigital's statements to TIA, InterDigital made a binding and irrevocable promise that, as a condition to TIA adopting standards that allegedly required InterDigital's IPR to implement, InterDigital would negotiate licenses in good faith and would be prepared to grant FRAND terms to all potential licensees.

68.     InterDigital breached its contractual obligations to Samsung when InterDigital refused to negotiate licenses in good faith and when it failed to make available FRAND terms.

14

69.     As a result of InterDigital's breaches, Samsung has been injured in its business or property through the loss of past, present, and future profits, by the loss of customers and potential customers, by the loss of goodwill and product image, and by the prospective damage to its handset business.

70.     As a result of Samsung' injuries, Samsung seeks damages in an amount to be proven at trial.

71.     As a result of Samsung' injuries, Samsung further seeks specific performance of InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND terms.

## COUNT VI.
### Breach of Contract (the TIA IPR Policy),
### with Samsung as an Intended, Third-Party Beneficiary

72.     Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 71 as if set forth fully herein.

73.     Alternatively, InterDigital, as a member of TIA, entered into an actual or implied contract with TIA to comply with TIA's governing documents, including, but not limited to, TIA's IPR Policy.

74.     InterDigital's contract with TIA created contractual rights in third parties, including Samsung as a potential licensee of InterDigital's intellectual property allegedly essential for practicing 3G standards.  InterDigital was on notice when it joined TIA, when it agreed to comply with the TIA IPR Policy, and when it made assurances to TIA identifying IPR allegedly essential to the 3G standards.  As a result, Samsung is an intended, third-party beneficiary of InterDigital's contract with TIA, and Samsung can enforce InterDigital's promise to be prepared to grant FRAND licenses.

75.     Under the terms of the TIA IPR Policy, prior to the approval of a proposed standard, TIA must receive an effective "Patent Holder Statement" in the form of a document contained in "Annex H," which is included in TIA's "Engineering Manual" (i.e., TIA's bylaws). Among other things, the "Patent Holder Statement" requests that the IPR holder irrevocably commit to making available licenses "to all applicants under terms and conditions that are reasonable and non-discriminatory."

76.     On information and belief, InterDigital has filed "Patent Holder Statements" with TIA declaring that InterDigital allegedly owns IPR essential to practicing 3G standards.  With InterDigital's statements to TIA, InterDigital made a binding and irrevocable promise that, as a condition to TIA adopting standards that allegedly required InterDigital's IPR to implement, InterDigital would negotiate licenses in good faith and would be prepared to grant FRAND terms to all potential licensees.

77.     InterDigital breached its contractual obligations to Samsung when InterDigital refused to negotiate licenses in good faith and when it failed to make available FRAND terms.

78.     As a result of InterDigital's breaches, Samsung has been injured in its business or property through the loss of past, present, and future profits, by the loss of customers and potential customers, by the loss of goodwill and product image, and by the prospective damage to its handset business.

79.     As a result of Samsung' injuries, Samsung seeks damages in an amount to be proven at trial.

80.     As a result of Samsung' injuries, Samsung further seeks specific performance of InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND terms.

## COUNT VII.
### Breach of Contract (the ARIB IPR Policy)

81.     Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 80 as if set forth fully herein.

82.     As set forth above, the Association of Radio Industries and Businesses ("ARIB") is an SDO responsible for, among other things, the development of 3G wireless telecommunications standards.

83.     Both Samsung and InterDigital are members of ARIB.  As members of ARIB, Samsung and InterDigital entered into an actual or implied contract to comply with ARIB's governing documents, including, but not limited to, ARIB's Intellectual Property Rights Policy.

84.     Under the terms of the ARIB IPR Policy, prior to the approval of a proposed standard, ARIB requests that members submit an effective statement that declares their willingness to "grant a non-exclusive and non-discriminatory license to the use of such Essential IPR on reasonable terms and conditions to anyone who uses such an ARIB Standard."

85.     On information and belief, InterDigital has made statements to ARIB that InterDigital owned IPR allegedly essential to practicing 3G standards.  With InterDigital's statements to ARIB, InterDigital made a binding and irrevocable promise that, as a condition to ARIB adopting standards that allegedly required InterDigital's IPR to implement, InterDigital would negotiate licenses in good faith and would be prepared to grant FRAND terms to all potential licensees.

86.     InterDigital breached its contractual obligations to Samsung when InterDigital refused to negotiate licenses in good faith and when it failed to provide FRAND terms.

87.     As a result of InterDigital's breaches, Samsung has been injured in its business or property through the loss of past, present, and future profits, by the loss of customers and

potential customers, by the loss of goodwill and product image, and by the prospective damage to its handset business.

88.    As a result of Samsung' injuries, Samsung seeks damages in an amount to be proven at trial.

89.    As a result of Samsung' injuries, Samsung further seeks specific performance of InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND terms.

**COUNT VIII.**
**Breach of Contract (the ARIB IPR Policy),**
**with Samsung as an Intended, Third-Party Beneficiary**

90.    Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 89 as if set forth fully herein.

91.    Alternatively, InterDigital, as a member of ARIB, entered into an actual or implied contract with ARIB to comply with ARIB's governing documents, including, but not limited to, ARIB's IPR Policy.

92.    InterDigital's contract with ARIB created contractual rights in third parties, including Samsung as a potential licensee of InterDigital's intellectual property allegedly essential for practicing 3G standards.  InterDigital was on notice when it joined ARIB, when it agreed to comply with the ARIB IPR Policy, and when it made statements to ARIB identifying IPR allegedly essential to the 3G standards.  As a result, Samsung is an intended, third-party beneficiary of InterDigital's contract with ARIB, and Samsung can enforce InterDigital's promise to be prepared to grant FRAND licenses.

93.    Under the terms of the ARIB IPR Policy, prior to the approval of a proposed standard, ARIB requests that members submit an effective statement that declares their

18

willingness to "grant a non-exclusive and non-discriminatory license to the use of such Essential

IPR on reasonable terms and conditions to anyone who uses such an ARIB Standard."

94.     On information and belief, InterDigital has made statements to ARIB that

InterDigital owned IPR allegedly essential to practicing 3G standards.   With InterDigital's

statements to ARIB, InterDigital made a binding and irrevocable promise that, as a condition to

ARIB adopting standards that allegedly required InterDigital's IPR to implement, InterDigital

would negotiate licenses in good faith and would be prepared to grant FRAND terms to all

potential licensees.

95.     InterDigital breached its contractual obligations to Samsung when InterDigital

refused to negotiate licenses in good faith and when it failed to make available FRAND terms.

96.     As a result of InterDigital's breaches, Samsung has been injured in its business or

property through the loss of past, present, and future profits, by the loss of customers and

potential customers, by the loss of goodwill and product image, and by the prospective damage

to its handset business.

97.     As a result of Samsung' injuries, Samsung seeks damages in an amount to be

proven at trial.

98.     As a result of Samsung' injuries, Samsung further seeks specific performance of

InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND

terms.

### COUNT IX.
### Breach of Contract (the ITU IPR Policy)

99.     Samsung incorporates and re-alleges all of the averments contained in paragraphs

1 through 98 as if set forth fully herein.

100.    As set forth above, the International Telecommunications Union ("ITU") is an

SDO responsible for, among other things, the development of 3G wireless telecommunications standards.

101.   Both Samsung and InterDigital are members of ITU.  As members of ITU, Samsung and InterDigital entered into an actual or implied contract to comply with ITU's governing documents, including, but not limited to, ITU's Intellectual Property Rights Policy.

102.   Under the terms of the ITU IPR Policy, prior to the approval of a proposed standard, ITU requests that IPR holders submit written statements declaring their willingness to "negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions."

103.   On information and belief, InterDigital has made written statements to ITU that InterDigital owned IPR allegedly essential to practicing 3G standards.  With InterDigital's statements to ITU, InterDigital made a binding and irrevocable promise that, as a condition to ITU adopting standards that allegedly required InterDigital's IPR to implement, InterDigital would negotiate licenses in good faith and would be prepared to grant FRAND terms to all potential licensees.

104.   InterDigital breached its contractual obligations to Samsung when InterDigital refused to negotiate licenses in good faith and when it failed to provide FRAND terms.

105.   As a result of InterDigital's breaches, Samsung has been injured in its business or property through the loss of past, present, and future profits, by the loss of customers and potential customers, by the loss of goodwill and product image, and by the prospective damage to its handset business.

106.   As a result of Samsung' injuries, Samsung seeks damages in an amount to be proven at trial.

107.   As a result of Samsung' injuries, Samsung further seeks specific performance of InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND terms.

## COUNT X.
### Breach of Contract (the ITU IPR Policy),
### with Samsung as an Intended, Third-Party Beneficiary

108.   Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 107 as if set forth fully herein.

109.   Alternatively, InterDigital, as a member of ITU, entered into an actual or implied contract with ITU to comply with ITU's governing documents, including, but not limited to, ITU's IPR Policy.

110.   InterDigital's contract with ITU created contractual rights in third parties, including Samsung as a potential licensee of InterDigital's intellectual property allegedly essential for practicing 3G standards.   InterDigital was on notice when it joined ITU, when it agreed to comply with the ITU IPR Policy, and when it made written statements to ITU identifying IPR allegedly essential to the 3G standards.   As a result, Samsung is an intended, third-party beneficiary of InterDigital's contract with ITU, and Samsung can enforce InterDigital's promise to be prepared to grant FRAND licenses.

111.   Under the terms of the ITU IPR Policy, prior to the approval of a proposed standard, ITU requests that IPR holders submit written statements declaring their willingness to "negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions."

112.   On information and belief, InterDigital has made written statements to ITU that InterDigital owned IPR allegedly essential to practicing 3G standards.   With InterDigital's

statements to ITU, InterDigital made a binding and irrevocable promise that, as a condition to ITU adopting standards that allegedly required InterDigital's IPR to implement, InterDigital would negotiate licenses in good faith and would be prepared to grant FRAND terms to all potential licensees.

113.   InterDigital breached its contractual obligations to Samsung when InterDigital refused to negotiate licenses in good faith and when it failed to provide FRAND terms.

114.   As a result of InterDigital's breaches, Samsung has been injured in its business or property through the loss of past, present, and future profits, by the loss of customers and potential customers, by the loss of goodwill and product image, and by the prospective damage to its handset business.

115.   As a result of Samsung' injuries, Samsung seeks damages in an amount to be proven at trial.

116.   As a result of Samsung' injuries, Samsung further seeks specific performance of InterDigital's contractual obligations to negotiate licenses in good faith and to provide FRAND terms.

## COUNT XI.
### Promissory Estoppel

117.   Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 116 as if set forth fully herein.

118.   In the alternative to its breach-of-contract claims set forth above, InterDigital expressly promised the wireless telecom SDOs, including ETSI, ATIS, TIA, ARIB, and ITU, all members of each of the wireless telecom SDOs, and any potential licensee of technology allegedly essential for compliance with the respective 3G wireless telecommunications standards, that InterDigital would be prepared to grant irrevocable licenses to its 3G IPR on

FRAND terms.

119.    Consistent with the purposes of standardization, InterDigital knew or reasonably should have expected that its promises to the wireless telecom SDOs would induce potential licensees, like Samsung, to take or refrain from taking certain actions.

120.    In reliance on InterDigital's promises to license on FRAND terms its IPR allegedly essential for practicing 3G wireless standards, Samsung has taken substantial action to develop new products.

121.    As set forth above, InterDigital has repeatedly failed to live up to its promises to provide licenses to its 3G IPR on FRAND terms.

122.    As a result of Samsung' foreseeable, reasonable, and justifiable reliance on InterDigital's promises to the wireless telecom SDOs—promises that have not been fulfilled by InterDigital—Samsung has been injured.

123.    Injustice to Samsung can only be avoided by enforcing InterDigital's promises completely.

124.    As a result of InterDigital's failure to perform, Samsung seeks specific performance of InterDigital's promises to negotiate licenses to its 3G IPR allegedly essential to practice the 3G wireless standards in good faith and to provide FRAND license terms.

**COUNT XII.**
**Unfair Business Practices**

125.    Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 124 as if set forth fully herein.

126.    As set forth above, InterDigital's anticompetitive and illegal conduct has injured and continues to injure Samsung and substantially injures California consumers of cellular handsets by raising prices, controlling output, and stemming innovation, all in violation of

California Business & Professional Code § 17200 *et seq.*

127.   In particular, in breach of its contractual commitments to the wireless telecom SDOs, InterDigital's refusal to license on FRAND terms its intellectual property allegedly essential to practicing 3G wireless telecommunications standards has injured Samsung by erecting an economically insurmountable barrier to entry into the handset market.

## COUNT XIII.
### Declaratory Judgment of Unenforceability

128.   Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 127 as if set forth fully herein.

129.   On information and belief, InterDigital has declared to the wireless telecom SDOs that it allegedly owns patents and patent applications that are allegedly essential to practice 3G wireless telecommunications standards.  With each declaration that a patent or patent application is allegedly essential to practice a 3G standard, InterDigital irrevocably committed to provide licenses to each patent or patent application on FRAND terms.

130.   InterDigital now refuses to provide a license to its allegedly essential 3G intellectual property on FRAND terms and has unilaterally decided to terminate license negotiations with Samsung unless it receives an offer from Samsung that is in the range of the amount sought by InterDigital in its earlier offers.  None of InterDigital's earlier offers was on FRAND terms.

131.   Samsung requests that this Court declare that InterDigital is estopped from, has waived, and is otherwise barred from enforcement of each and every patent or patent application that InterDigital has declared as allegedly essential to practicing any 3G wireless telecommunications standard promulgated by the wireless telecom SDOs as a result of

InterDigital's refusal to honor its commitments to the SDOs and to potential licensees, like Samsung.

### COUNT XIV.
### Declaration of Express License, Patent Exhaustion and/or Implied License Under Qualcomm–IDC License Agreement

132.    Samsung incorporates and re-alleges all of the averments contained in paragraphs 1 through 131 as if set forth fully herein.

133.    On information and belief, InterDigital entered into a license agreement with Qualcomm Incorporated ("Qualcomm"), a nonparty to this action, in which InterDigital granted a license to Qualcomm to InterDigital's 3G patents and patent applications ("the Qualcomm–InterDigital License Agreement").   On information and belief, the Qualcomm–InterDigital License Agreement granted Qualcomm the contractual right to sublicense InterDigital's 3G patents and patent applications.

134.    Samsung purchases chipsets from Qualcomm for use in Samsung's 3G handsets. Along with such purchase, Qualcomm has agreed to grant Samsung a sublicense to InterDigital's patents and patent applications ("the Qualcomm–Samsung Sublicense").

135.    By authorizing Qualcomm's manufacture and sale of chipsets pursuant to the Qualcomm–InterDigital License Agreement, InterDigital has exhausted and/or impliedly licensed all rights in each and every patent falling under the Qualcomm–InterDigital License Agreement.

136.    Samsung requests that this Court declare that Samsung is licensed to all of InterDigital's 3G patents and patent applications that are covered under the Qualcomm–InterDigital License Agreement as a result of Qualcomm's sublicense to Samsung in the Qualcomm–Samsung Sublicense, that the sale of Qualcomm's chipsets to Samsung exhausts all rights in each and every InterDigital patent falling under the Qualcomm–InterDigital License

Agreement, and/or that Samsung has an implied license to all rights in each and every InterDigital patent falling under the Qualcomm–InterDigital License Agreement.

### Jury Demand

Samsung hereby respectfully requests a trial by jury on all issues so triable.

### Prayer for Relief

WHEREFORE, Samsung respectfully requests that the Court enter judgment:

A.      that Samsung is entitled to damages in an amount to be determined at trial for Samsung's loss;

B.      that each and every patent or patent application promoted by InterDigital to the wireless telecom SDOs is unenforceable as to Samsung;

C.      that Samsung has a right to practice InterDigital's intellectual property incorporated into products purchased from Qualcomm;

F.      that InterDigital must offer Samsung a license on FRAND terms for any patent claim that InterDigital contends or has alleged in any context is necessary to implement a standard adopted by an industry standard-setting group;

G.      that Samsung is entitled to its costs and expenses of litigation, including attorneys' fees and expert witness fees; and

H.      that Samsung is entitled to such other and further relief as the Court deems just and proper.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff Samsung
Electronics Co., Ltd.*

*Of Counsel:*

David J. Healey
J. Nicholas Bunch
Wasif Qureshi
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

David C. Radulescu
Charan Sandhu
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Cabrach Connor
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Highway, Suite 1350
Austin, Texas 78758
Telephone: (512) 349-1930
Facsimile: (512) 527-0798

Dated: September 14, 2007
184143.1