HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

APPLE INC., a California corporation,

        Plaintiff,

        vs.

SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity, SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation, and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

        Defendants.

SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity, SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation, and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

        Counterclaim-Plaintiffs,

        v.

APPLE INC., a California corporation,

        Counterclaim-Defendant.

Civil Action No. 11-CV-01846-LHK

**APPLE INC.'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF**

Hearing:     January 20, 2012
Time:        10:00 a.m.
Place:       Courtroom 8, 4th Floor
Judge:      Hon. Lucy H. Koh

**PUBLIC REDACTED VERSION**

## TABLE OF CONTENTS

I.    INTRODUCTION .............................................................................................1

II.   LEGAL STANDARD......................................................................................1

III.  ARGUMENT ...................................................................................................2

      A.    The Parties Have Agreed to Stipulate to the Alternate Construction for
            "Symbol" Proposed by Samsung ...........................................................2

      B.    The Term "Applet" Is "An Operating System Independent Computer
            Program That Runs Within An Application Module" ..............................2

            1.    Background on Samsung's Alleged Invention in the '711 Patent .............2

            2.    "Applet" ......................................................................................3

            3.    Samsung Narrowed The Claims To Distinguish The Alleged
                  Invention Over Prior Art Systems Disclosing Mobile Phones That
                  Played Music ................................................................................5

            4.    The "Applet" Must Run Within An "Application Module," Not
                  Merely A Program. .......................................................................8

            5.    An "Applet" Is A Program That Runs Independently From The
                  Operating System. ........................................................................8

                  a)    Samsung's Construction Ignores The File History .........................8

                  b)    The Extrinsic Evidence Supports Apple's Construction ...............10

IV.   CONCLUSION...............................................................................................13

# TABLE OF AUTHORITIES

*Elekta Instrument S.A. v. O.U.R. Sci. Int'l*,
   214 F.3d 1302 (Fed. Cir. 2000) ................................................................. 9

*Fromson v. Anitec Printing Plates, Inc.*,
   132 F.3d 1437 (Fed. Cir. 1997) ................................................................. 1

*Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*,
   93 F.3d 766 (Fed. Cir. 1996) .................................................................... 9

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
   78 F.3d 1575 (Fed. Cir. 1996) ................................................................ 13

*Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*,
   540 F.3d 1337 (Fed. Cir. 2008) .............................................................. 13

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ........................................................... 1, 2

*Texas Instruments Inc. v. United States Int'l Trade Comm'n*,
   988 F.2d 1165 (Fed. Cir. 1993) ................................................................. 3

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ................................................................. 1

*Unique Concepts, Inc. v. Brown*,
   939 F.2d 1558 (Fed. Cir. 1991) ................................................................. 9

1  I.    **INTRODUCTION**

2         Pursuant to the Court's Case Management Order (Dkt. 187), Apple Inc. ("Apple")

3  submits this responsive brief in support of its construction of two claim limitations:  the term

4  "symbol" in U.S. Patent No. 7,200,792 ("'792 Patent") and the term "applet" in U.S. Patent No.

5  7,698,711 ("'711 Patent").

6         With respect to "symbol," the parties have agreed to stipulate to the alternate construction

7  of the term proposed by Samsung in its Opening Claim Construction Brief:  "a modulated signal

8  representing a number of bits specified according to the modulation technique."  With respect to

9  "applet," Apple's construction should be adopted as the only one consistent with the prosecution

10 history and Samsung's use of the term to distinguish the prior art.

11 II.   **LEGAL STANDARD**

12        Claim construction is necessary where there is a dispute between the parties or "when

13 necessary to explain what the patentee covered by the claims, for use in the determination of

14 infringement."  *U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997).

15 "When technical or scientific terms in the claims require definition or explanation or

16 understanding in the course of deciding whether the claims are infringed, it is the judicial duty to

17 do so."  *Fromson v. Anitec Printing Plates, Inc.*, 132 F.3d 1437, 1441-42 (Fed. Cir. 1997),

18 *abrogated on other grounds*, 138 F.3d 1448 (Fed. Cir. 1998).

19        The words of a claim generally should be given their "ordinary and customary meaning,"

20 the meaning that they would have to a person skilled in the art.  In determining the meaning of a

21 disputed claim term, the Court must consider the intrinsic evidence, including the specification

22 and the prosecution history, and may also consult extrinsic evidence, such as dictionaries and

23 treatises.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed. Cir. 2005).  Of particular

24 relevance to the interpretation of "applet," the "prosecution history can often inform the meaning

of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* at 1317.

## III. ARGUMENT

### A. The Parties Have Agreed to Stipulate to the Alternate Construction for "Symbol" Proposed by Samsung

Subsequent to the filing of Samsung's Opening Claim Construction Brief, the parties agreed to stipulate to the alternate construction of the claim term "symbol" proposed by Samsung: "a modulated signal representing a number of bits specified according to the modulation technique." Accordingly, Apple requests that the Court adopt this agreed-upon construction.

### B. The Term "Applet" Is "An Operating System Independent Computer Program That Runs Within An Application Module"

#### 1. Background on Samsung's Alleged Invention in the '711 Patent

The claims of the '711 patent are generally directed to the ability to play music on a mobile device while performing other tasks and require a software application that generates a "music background play object" with a background music playing function. Such a feature was well known prior to August 30, 2005, the earliest possible priority date of the '711 patent. Indeed, several commercial embodiments of the alleged invention were already on the mobile phone market before that date. *See, e.g.*, Nokia 3300 device and "Extended User's Guide," Nokia Corporation (2003) (Selwyn Dec. Ex A);[1] Sony W800i device and User Guide (1st ed.), Sony Ericsson Mobile Comm. AB (May 2005) (Selwyn Dec. Ex B); Sony K700 device and User

---

[1]  Citations to "Selwyn Dec. Ex. __" refer to the Declaration of Mark D. Selwyn in Support of Apple Inc.'s Responsive Claim Construction Brief and the exhibits thereto.

Guide (1st ed.), Sony Ericsson Mobile Comm. AB (March 2004) (Selwyn Dec. Ex C).[2]  None of these devices, each of which anticipates or renders obvious the claims of the '711 patent as issued, was before the patent examiner during prosecution.

Moreover, to have the claims of the '711 patent allowed over the cited prior art, Samsung added the phrase "an application module including at least one applet" during prosecution.  Yet, Samsung now advocates for a construction of the claim term "applet" that is so broad that it would render the term effectively meaningless and, further, fail to distinguish over any of the prior art, including the art that was before the Patent Office.  *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (rejecting a patentee's proffered claim construction because it "would render the disputed claim language mere surplusage").  As such, Samsung's proposed construction is contrary to the intrinsic evidence and should be rejected by the Court.

By contrast, Apple's proposed construction is consistent with the intrinsic evidence and the extrinsic evidence showing how those of skill in the art at the time of the alleged invention would understand the term.

### 2.      "Applet"

| Claim Term (relevant claims) | Samsung's Proposed Construction | Apple's Proposed Construction | Key Dispute(s) |
|---|---|---|---|
| "applet" (claims 1, 9, 17) | "A small application designed to run within another program." | "An operating system-independent computer program that runs within an application module." | Whether an "applet" is "operating system-independent" and runs within "an application module." |

[2] Apple cited these references in its Patent L.R. 3-3 Invalidity Contentions (served on October 7, 2011) at 39-40 and 92-93.

1    The parties' dispute turns on whether the required "applet" is satisfied by any small

2    application running within another program or, instead, is limited to an operating system-

3    independent program that runs within "an application module."

4    As is well understood in the art of computer programming, an operating system (*e.g.*,

5    Microsoft Windows) manages computer hardware resources and provides common services for

6    application software (*e.g.*, Microsoft Word).  Applications are the programs that are used to

7    perform specific tasks by the user.  *See*, *e.g.*, J. Hoskins and R. Bluethman, *Exploring IBM e-*

8    *server pSeries* (12th ed., 2004) ("Hoskins") at 189-90 (Selwyn Dec. Ex. D).[3]

9

10    Typically, some of the features and functioning of an application are provided by the

11    operating system.  *Id.* at 199-200.  For example, the operating system might provide the basic

12    Windows functionality of a word processing program, leaving to the application the specifics of

13    how words will appear on the screen.  However, it is also possible for a program to be

14    independent of the operating system; that is, for all its functionality to be derived from either the

15    application itself or some other source.  *See* Declaration of Tony Givargis, Ph.D. in Support of

16    Apple's Proposed Claim Construction for U.S. Patent No. 7,698,711 ("Givargis Declaration"), ¶

17    20 (Selwyn Dec. Ex. E).  "Java applets" are the best known example of this type of program.

18    Rather than relying on the operating system for basic functionality, the applet operates within

19    and draws on resources and services provided by a separate host application, for example,

20    applications written in "Java" language as originally provided by Sun Microsystems.  *Id.* at ¶ 21.

21    Samsung's proposed construction provides no definite limitation on the word "applet."

22    Although stating that the applet must be "small" and "run within another program," Samsung has

23

24

25

---

26    [3] Apple cited the Hoskins reference in the parties' Joint Claim Construction and Prehearing
27    Statement Pursuant to Patent L.R. 4-3 (Dkt. 394-A) ("Joint Statement") at 12, and it also was
     discussed at paragraphs 49-50 of the Givargis Declaration.

28

not placed any boundaries on what these limitations would mean given the inherent ambiguities of these terms themselves. ████████████████████████████████████████████ ████████████████████████████████████████████ Deposition of Joe Tipton Cole ("Cole Dep.") at 57:22-58:7 (Selwyn Dec. Ex. F).  Samsung instead seeks to preserve its ability to argue that any program capable of playing music would satisfy the claimed applet limitation.  In contrast, Apple's construction requires a specific type of application program – one that is independent of the operating system and runs within an application module – consistent with both the file history and how one of ordinary skill in the art would understand the term "applet."

        **3.**    **Samsung Narrowed The Claims To Distinguish The Alleged Invention Over Prior Art Systems Disclosing Mobile Phones That Played Music**

The term "applet" appears in all three independent claims of the '711 patent.  Representative claim 1 is reproduced below:

1.  A multi-tasking method in a pocket-sized mobile communication device including an MP3 playing capability, the multi-tasking method comprising:

generating a music background play object, wherein the music background play object ***includes an application module including at least one applet***;

providing an interface for music play by the music background play object;

selecting an MP3 mode in the pocket-sized mobile communication device using the interface;

selecting and playing a music file in the pocket-sized mobile communication device in the MP3 mode;

switching the MP3 mode to a standby mode while the playing of the music file continues;

displaying an indication that the music file is being played in the standby mode;

selecting and performing at least one function of the pocket-sized mobile communication device from the standby mode while the playing of the music file continues; and

continuing to display the indication that the music file is being played while performing the selected function.

'711 patent, claim 1 (emphasis added) (Selwyn Dec. Ex. G).  The term "applet" is also recited in independent claims 9 and 17, which claim "a controller for generating a music background play object, wherein the music background play object includes an application module including at least one *applet*."  *Id.*, claims 9, 17 (emphasis added).

The specification provides little assistance for the meaning of the term.  The only recitation of the term "applet" in the specification essentially mirrors the language of the claims in referring to an application module including at least one applet:

> FIG. 1 is a block diagram of a portable terminal according to an exemplary embodiment of the present invention, in which an MP3 music control processor is not included. Application modules of the portable terminal include at least one *applet* and each of the application modules, that is each menu of the portable terminal, independently performs multi-tasking.

*Id.* at 3:8-14 (emphasis added).

The prosecution history, in contrast, reveals that the word "applet" was specifically added to narrow the claims and thereby distinguish prior art mobile phones that could play music. Specifically, throughout prosecution, the Patent Office maintained rejections of the claims as obvious over U.S. Patent No. 7,123,945 ("Kokubo") (Selwyn Dec. Ex. H) in view of additional prior art.  *See* '711 file history, 12/12/07 Office Action; 2/28/08 Office Action; 8/1/08 Office Action; 1/26/09 Office Action; 5/27/09 Office Action; and 11/09/09 Office Action (Selwyn Dec. Exs. I-N).  The Kokubo patent discloses a portable phone that includes, among other things, a program that permits the playing of music.  Kokubo at 10:54-62 (Selwyn Dec. Ex. H).  To obtain allowance of its application, Samsung amended each independent claim to add the disputed limitation: "*wherein the music background play object includes an application module including at least one applet*."  '711 file history, 12/8/09 Amendment at 2-4 (Selwyn Dec. Ex. O).

In amending the claims, Samsung expressly referenced the suggestion of the Patent Office that the claims include a "limitation indicating that the music background play object includes an application module *including at least one applet*."  *Id.* at 7 (emphasis added).  Samsung then argued that "Kokubo makes no disclosure that the icon [denoting a specific task, such as the playing of music] includes an application module, or that the application module includes at least one applet as instantly claimed."  *Id.* at 10.  After these amendments were made, the Patent Office withdrew the rejections and issued a Notice of Allowance.  '711 file history, 1/13/10 Notice of Allowance (Selwyn Dec. Ex. P).  Thus, it is clear that during prosecution Samsung added the "applet" limitation to distinguish the '711 patent claims from the Kokubo patent, a fact admitted by Samsung's expert.  *See* Declaration of Joe Tipton Cole ("Cole Declaration"), ¶¶ 33-34 ("The claim language that includes the term 'applet' was added at the request of the patent examiner… As a result of this request, the claims were amended to include the language suggest [*sic*] by the patent examiner.  The language added to claims 1, 9, and 17 was 'wherein the music background play object includes an application module including at least one applet.'" (citations to the file history omitted)).[4]  *See also* '711 file history, 12/16/09 Examiner's Interview Summary (Continuation Sheet) (examiner noting her "suggest[ion] to further include the definition of 'a music background play object' as 'wherein the music background play objects including *an application module includes at least one applet*' as argued during the interview to distinct [*sic*] from the icon as taught by KOKUBO") (Selwyn Dec. Ex. Q).

---

[4] The Cole Declaration is attached as Ex. 4 to the Declaration of Brett Arnold in Support of Samsung's Administrative Motion to File Documents Under Seal (Dkt. 468-6).

### 4. The "Applet" Must Run Within An "Application Module," Not Merely A Program.

The language of the claims, the specification and the prosecution history mandate the portion of Apple's proposed construction stating that the applet runs "***within an application module***."  Throughout the intrinsic evidence, there is repeated reference to an "application module including at least one applet."  '711 file history, 12/16/09 Examiner's Interview Summary (Continuation Sheet) (Selwyn Dec. Ex. Q); '711 file history, 12/8/09 Amendment at 6-10 (Selwyn Dec. Ex. O).  In contrast, neither the specification nor the file history mentions an applet running within "another program," more generally, as in Samsung's proposed construction.  Therefore, only Apple's construction is consistent with the intrinsic evidence.

### 5. An "Applet" Is A Program That Runs Independently From The Operating System.

#### a) Samsung's Construction Ignores The File History

Samsung criticizes Apple's construction for including the phrase "operating system independent" when "the specification does not even use the term operating system."  Samsung's Opening Claim Construction Brief (Dkt. 466-1) ("Samsung Br.") at 14.  At the same time, Samsung curiously suggests that the specification's lone statement that "[a]pplication modules of the portable terminal include at least one applet" ('711 patent at 3:10-12 (Selwyn Dec. Ex. G)) somehow "closely tracks Samsung's proposed construction," despite the fact that Samsung's construction adds the word "small" and substitutes "program" for "application module," both without explanation.  Samsung Br. at 14.  In truth, other than making clear that the applet runs within an application module, not just any program, the specification provides little help to either party in construing the claim.

The prosecution history of the '711 patent, on the other hand, confirms that, at a minimum, the term "applet" cannot be broadly construed as proposed by Samsung.  The

examiner correctly found that the prior art before the Patent Office taught how to "generate a music background play object."  '711 file history, 11/9/09 Office Action at p. 3 (Selwyn Dec. Ex. N).  The term "applet" must be clearly limited as proposed by Apple, or it would do nothing to distinguish over the cited prior art.

Apple's interpretation of the claim language comports with the claim construction maxim that "[a]ll the limitations of a claim must be considered meaningful." *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991) (citing *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532-33 (Fed. Cir. 1987)).  Indeed, Samsung appears poised to argue that "applet" is so broad as to make the limitation meaningless.  Construing "applet" as proposed by Samsung must be rejected because it "would render meaningless [an] express claim limitation." *Unique Concepts*, 939 F.2d at 1563.

Prior to amendment, the claims required "generating a music background play object."
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████  *See* Deposition of Moon-Sang Jeong ("Jeong Dep.") at 44:21-45:16 ██████████████████████████████████████████████
████████  But the Patent Office only allowed the '711 patent to issue after Samsung added this very limitation.  *See supra* Part III.B.3.  Consistent with the file history, the word "applet" must therefore be construed in a manner that gives meaning to this limitation of the claims.  *See Elekta Instrument S.A. v. O.U.R. Sci. Int'l*, 214 F.3d 1302 (Fed. Cir. 2000) (construing claim to avoid rendering the 30 degree claim limitation superfluous); *Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) (reversing district court's construction where it "obliterated" claim limitation "each of").

b)      **The Extrinsic Evidence Supports Apple's Construction**

In support of its construction, Apple has submitted the Declaration of Professor Tony Givargis of the University of California, Irvine, who explained that the plain meaning of "applet" to one of ordinary skill in the art in 2005 is consistent with Apple's construction, including both the operating system independence and running within an application module aspects of the construction.  Givargis Declaration, ¶ 32 (Selwyn Dec. Ex. E).  Professor Givargis cites numerous publications supporting the proposition that applets are understood to be commonly Java-based programs that are executed within another application, such as a web browser, independent of the platform or operating system.  *Id.*, ¶¶ 42-55. The publications address the ability of applets to be widely distributed to diverse users, for example, over the Internet, and the security advantage of having the applets execute within another application.  *Id.*  Professor Givargis also explains, with support from the literature, how applets are understood to be translated by an interpreter, allowing them to be executed within a host application independent of the operating system.  *Id.*, ¶¶ 45-46. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Cole Dep. at 69:6-71:8 (Selwyn Dec. Ex. F). ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 57:9-21; 95:13-96:3. ███████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 65:3-12.  Thus, the extrinsic evidence ████████████████████████████████████ squarely supports Apple's construction.



In response, Samsung cites to various pieces of extrinsic evidence that allegedly show that "there were many different types of applets written in many different types of languages [besides Java] and that those applets may be operating system dependent or independent." Samsung Br. at 15.[5]

*See* Deposition of Tony Givargis ("Givargis Dep.") at 52:3-24; 82:16-84:6, 96:3-8; 97:8-14

(Selwyn Dec. Ex. S).[6]

*Id.* at 31:16-25; 32:9-14.

*Id.* at 29:20-30:16.

---

[5]  While Samsung's expert discusses over twenty pieces of extrinsic evidence in his declaration, Samsung only disclosed one piece of extrinsic evidence in the parties' Patent L.R. 4-3 claim construction statement.  *See* Joint Statement (Dkt. 394-A) at 12 (designating only a definition in Wiley Electrical and Electronics Engineering Dictionary, 2004, and column 3, lines 10-14, of the '711 patent as support for Samsung's proposed construction).  As set forth in Apple's Motion to Strike, the Court should reject any attempt by Samsung to rely upon evidence in support of its proposed construction that it did not timely disclose in accordance with the Patent Local Rules. *See* Apple's Motion to Strike Evidence Not Disclosed As Required By Patent Local Rule 4-3(b) (Dkt 532-1).

[6]  Samsung also cites the testimony by Professor Givargis that non-Java applets existed in 2005. Samsung Br. at 15.  But this is not disputed.

*See* Givargis Dep. at 85:3-8 (Selwyn Dec. Ex. S).



1

2      Cole Dep. at 89:20-91:7

3      (Selwyn Dec. Ex. F).

4          Samsung further attempts to support its improperly broad proposed construction by

5 pointing to contemporaneous notes and testimony from Dr. Jeong, the named inventor of the

6 '711 patent.  Samsung Br. at 15.

7

8

9      Jeong Dep.

10 at 35:4-36:3 (Selwyn Dec. Ex. R).

11

12      Samsung Br. at 15.

13

14

15

16

17

18

19      Cole Dep. at 53:8-11; 97:9-17 (Selwyn Dec. Ex. F).

20

21

22

23

24 [7]

25      Samsung Br. at 15-16

26      *See* Givargis Dep. at 40:24-42:17,

27 46:23-48:5 (Selwyn Dec. Ex S).

28

1

2

3

4

████████████████████   This is not proper.  *See Howmedica Osteonics Corp. v.*

*Wright Medical Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008) (inventor testimony "cannot be

relied on to change the meaning of the claims"); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78

F.3d 1575, 1580 (Fed. Cir. 1996) ("*Markman* requires [the court] to give no deference to the

testimony of the inventor about the meaning of the claims").[8]

Jeong Dep. at 36:4-37:8 (Selwyn Dec. Ex. R).

In sum, the weight of the extrinsic evidence clearly supports Apple's construction.

Samsung's extrinsic evidence is, at best, an unsuccessful attempt to undermine Apple's

construction, while providing no affirmative support for Samsung's own construction.  Apple's

construction should therefore be adopted by the Court.

## IV.     CONCLUSION

For the foregoing reasons, Apple requests that the Court adopt its proposed construction

of  "applet" and the agreed-upon construction of "symbol."

[8]

Cole Dep. at 98:19-99:13 (Selwyn Dec. Ex. F).

Dated:  December 22, 2011

/s/ Mark D. Selwyn
Mark D. Selwyn (SBN 244180)
(mark.selwyn@wilmerhale.com)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

William F. Lee (admitted *pro hac vice*)
(william.lee@wilmerhale.com)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Harold J. McElhinny (SBN 66781)
(HMcElhinny@mofo.com)
Michael A. Jacobs (SBN 111664)
(MJacobs@mofo.com)
Richard S.J. Hung (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: ( 415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on December 22, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ Mark. D Selwyn
Mark D. Selwyn