# EXHIBIT J



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/778,466 | 07/16/2007 | Moon-Sang  JEONG | 0201-0055 | 1475 |

68103        7590        02/28/2008
Jefferson IP Law, LLP
1730 M Street, NW
Suite 807
Washington, DC 20036

| EXAMINER |
|---|
| TO, JENNIFER N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2195 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/28/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 11/778,466 | JEONG, MOON-SANG |
| | Examiner | Art Unit |
| | JENNIFER N. TO | 2195 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>08 January 2008</u>.

2a)☒ This action is **FINAL**.   2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-20* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-20* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☒ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 08-06)        Office Action Summary        Part of Paper No./Mail Date 20080221

APLNDC-WH-A 0000016929

Application/Control Number: 11/778,466                                    Page 2
Art Unit: 2195

## DETAILED ACTION

1.      Claims 1-20 are pending for examination.

### Claim Rejections - 35 USC § 103

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for

all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described
> as set forth in section 102 of this title, if the differences between the subject matter sought to
> be patented and the prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary skill in the art to which
> said subject matter pertains.  Patentability shall not be negatived by the manner in which the
> invention was made.

3.      Claims 1-2, 6-10, 14-18, and 20 are rejected under 35 U.S.C. 103(a) as

being unpatentable over KOKUBO (U.S. Patent 7,123,945) in view of SENPUKU

(U.S. Patent Publication 2005/0083642).

4.      KOKUBO and SENPUKU were cited in the previous office action.

As to claim 1, KOKUBO teaches a multi-tasking method in a pocket-sized

mobile communication device including a MP3 playing capability, the multi-

tasking method comprising: selecting an MP3 mode in the pocket-sized mobile

communication device (an audio screen is displayed on the main display unit,

reproduction processing of audio data is carried out / the audio player software is

active) (col. 12, lines 44-47; col. 13, lines 4-10); selecting and playing a music file

in the pocket-sized mobile communication device in MP3 mode (via the audio

screen to the audio player allowing the user to listening to music) (col. 12, lines

Application/Control Number: 11/778,466                                    Page 3
Art Unit: 2195

44-47; col. 13, lines 4-10); and switching the pocket-sized mobile communication

device from the MP3 mode (audio player mode) to another application (switch to

telephone call software / other application software via the input / call keys) (col.

13, lines 10-22; col. 13, lines 23-41); displaying an indication that the music file is

being played (via displaying the music icon on the sub-display and moving the

display of the music application / music player / task such that the main display /

other application / other task is executed on the main display) (col. 13, lines 4-22;

col. 9, line 57 – col. 10, line 19; col. 10, lines 54-62); selecting and performing at

least one function of the communication device while the playing of the music file

continues (via continuing to play the music file in the sub-display while the new

task / application executes in the main display) (col. 13, lines 4-22; col. 9, line 57

– col. 10, line 19; col. 10, lines 54-62); and continuing to display the indication

that the music file is being played while performing the selected function (via the

display of the icon of the music file) (col. 14, lines 16-30).  Although KOKUBO

teaches that applications are parallel executed and switched from the main

display to the sub-display, KOKUBO does not explicitly detail that the switching

to the sub-display, displays the standby state / mode, e.g. the standby screen.

        SENPUKU teaches a mobile communication device that executes a

plurality of applications and allows for a) parallel execution of a plurality of

applications (pg. 6, paragraph 0105) and b) switching between applications

wherein when the sub-display is open the application currently executing on the

main display is displayed in sub-display (pg. 6, paragraph 0090).  SENPUKU

further details that when the sub-display is closed, the active screen on the

APLNDC-WH-A 0000016931

Application/Control Number: 11/778,466                                          Page 4
Art Unit: 2195

display is continued execution while the other executing applications are

continued in the background (pg. 6, paragraph 0105).   SENPUKU outlines that

parallel execution of applications allow for the content displayed on the main

display to not have a relation to the contents of the sub display, thereby being

independent application execution (pg. 6, paragraph 0106), and details wherein

when the sub-display is shown, the applications on the main display are

displayed on the sub-display and a standby screen is shown on the main display

(pg. 7, paragraph 0110; fig. 18).  Official Notice is taken in that it is well known in

the art that applications are invoked for execution from the desktop / menu of the

standby screen and since the two displayed contents do not need to have any

relation, e.g. independent application execution, the application executing /

moved on / to the sub-display does not have any relation to the application that is

potentially invoked in the main display.  It would be obvious to one of ordinary

skill in the art that the combination of references allow for the switching from the

MP3 mode to a standby mode while the playing of the music file continues since

playing music files is a mobile communication device application function (see

KOKUBO reference) and the opening of the sub-display (another function / key

or input combination) moves the application executing on the main display to the

sub-display (based on the KOKUBO reference teaching the main display initially

displaying a music playing application and moving it to a secondary display) such

that the main screen is now operating in standby mode (displaying a standby

screen) (see SENPUKU).  The combination of references also obviously teaches

displaying an indication that the music file is being played in the standby mode

Application/Control Number: 11/778,466                              Page 5
Art Unit: 2195

(via the sub-display); the selecting and performing at least one function of the

mobile communication device from the standby mode (standby screen) while

playing the music file; and continuing to display the indication that the music file

is being played while performing the selected function, since the continuing

playing of the music file is shown in the sub-display and the main display allows

users to select other functions/applications to execute in the main display which

neither parallel executing applications have any relationship to one another.

Therefore, it would be obvious to one of ordinary skill in the art to combine the

teachings of KOKUBO with the teachings of SENPUKU in order to facilitate the

improve user interfaces to handle the execution of a plurality of application

programs (pg. 1, paragraph 0004, 0006).


As to claim 2, KOKUBO teaches displaying of the indication comprises

displaying an icon (col. 13, lines 4-10; col. 14, lines 17-31).


As to claim 6, KOKUBO teaches selecting to continue the playing of the

music file (via once task B is finished execution, continuing the execution of task

A, the playing of music, back onto the main display) (col. 14, lines 17-30; see col.

7, line 65 - col. 8, line 36 for how this is performed via the pointer-type icon

without stopping the execution of the music player).


As to claims 7 and 8, KOKUBO teaches the switching execution between

selected functions wherein the functions are a telephone function or a message

APLNDC-WH-A 0000016933

function (via the portable telephone is equipped with multiple functions including

telephone calling functions and creation, transmission, and reception of e-mail

functions) (col. 10, lines 54-62) and switches between the software performing

these different tasks (col. 9, line 56—col. 10, line 21; col. 10, lines 59-62). It is

obvious to one of ordinary skill in the art that a telephone calling function invokes

the phone book of the telephone to call a registered number. SENPUKU teaches

that the switching of tasks on a mobile telephone involves moving the current

function to the sub-display and displaying the standby screen. It is well known in

the art that the stand-by screen allows for users to invoke functions for execution.

Therefore, the combination with the support of the well known teachings

discloses the limitations as detailed, e.g. invoking phonebook / messaging

functions via a standby screen.


As to claims 9, 10 and 14-16, reference is made to an apparatus that

corresponds to the method of claims 1, 2 and 6-8 and is therefore met by the

rejection of claims 1, 2 and 6-8 above.


As to claims 17, 18 and 20, reference is made to an apparatus that

corresponds to the method of claims 1, 2, and 6 and is therefore met by the

rejection of claims 1, 2 and 6 above. In addition, KOKUBO teaches a pocket

communication device consisting of a single display unit (col. 14, lines 52-54).

APLNDC-WH-A  0000016934

Application/Control Number: 11/778,466                                          Page 7
Art Unit: 2195

5.      Claims 3-5, 11-13 and 19 are rejected under 35 U.S.C. 103(a) as being

unpatentable over KOKUBO in view of SENPUKU as applied to claim 1 above,

and further in view of NIRHAMO (U.S. Patent Publication 2006/0246955).


6.      KOKUBO, SENPUKU, and NIRHAMO were cited in the previous office

action.


As to claims 3-5, the combination of KOKUBO and SENPUKU

substantially discloses the switching of playing MP3 music, e.g. MP3 mode, to

standby mode by switching the MP3 music playing to a sub-display wherein an

icon is displayed in the sub-display (col. 13, lines 4-10; col. 14, lines 17-31).

KOKUBO also details that sub-display displays the icons, data and the like,

including apparatus statuses, such as signal field strength, remaining batter

capacity, the time, information on apparatus settings, presence of stored data

and the like, through the icons and the like (col. 7, lines 3-17).  However, the

cited combination does not teach that the data indicates the information about

the music file, i.e. at least one of a music title, a musician, and an album title.

NIRHAMO teaches the display of header or other indicia notifying what

current software application is currently being run and a list of selections or

selectable items played with/ on/by the software application, including the song

title and artist (see pg. 3, paragraph 0035).  It is obvious based on the

combination that since the icon is an indication that the application is currently

execution (KOKUBO) that the other data is stored / displayed with the icon such

Application/Control Number: 11/778,466                                    Page 8
Art Unit: 2195

that it indicates information associated with a music file, e.g. the title or musician.

Therefore, it would be obvious to combine the teachings of KOKUBO with the

teachings of SENPUKU and NIRHAMO in order to enhance the presentation,

navigation, selection and/or operation options for mobile devices (pg. 1,

paragraph 0003-0004).


As to claims 11-13, reference is made to an apparatus that corresponds to

the method of claims 3-5 and is therefore met by the rejection of claims 3-5

above.


As to claim 19, reference is made to an apparatus that corresponds to the

method of claim 3 and is therefore met by the rejection of claim 3 above.


### *Response to Arguments*

7.      Applicant's arguments filed 01/08/2008 have been fully considered but

they are not persuasive.


8.      In the remark, applicant argued that KOKUBO and SENPUKU fail to teach

or suggest (1) switching the pocket-sized mobile communication device from the

MP3 mode to a standby mode while the playing of the music file continues; (2)

single display unit.


9.      Examiner respectful disagreed with applicant.

APLNDC-WH-A 0000016936

Application/Control Number: 11/778,466                                           Page 9
Art Unit: 2195

As to point (1), applicant is reminded that examiner rejected claims 1, 9 based on the teaching of KOKUBO, and in view of SENPUKU. Thus, applicant couldn't attack the reference individually. KOKUBO teaches a system that switching the execution of task A and its associated display (the execution of task A is an MP3 mode) while the execution of task A is continued (while the playing of the music continues) to execution of task B (figs. 4A-4B; col. 9, lines 56-67). Thus the execution mode of task A is switching to "another mode". While KOKUBO did not specifically disclosed what is the mode that the execution of task A is in. However, SENPUKU teaches when the execution of task A is switch to the execution of task B, the display association with the execution of task A being executed in the main display is now displayed in a sub-display (paragraphs [0100], [0090]). Thus SENPUKU teaches the execution mode of task A is switch to a standby mode. Thus, the combination of KOKUBO and SENPUKU teach switching the pocket-sized mobile communication device from the MP3 mode to a standby mode while the playing of the music file continues. In addition, applicant seem to give a weight to the term "standby mode", however, the specification is not defined what is applicant consider as "standby mode" that is consider as different from the references.

As to point (2), KOKUBO teaches a pocket communication device consisting of a single display unit (col. 14, lines 52-54).

APLNDC-WH-A 0000016937

Application/Control Number: 11/778,466                                      Page 10
Art Unit: 2195

### Conclusion

10.     The prior art made of record and not relied upon is considered pertinent to
applicant's disclosure.

        CAO et al. teaches a multitasking communication device that capable of
switching from one task to another.

        SONY.ERICSSON teaches a multitasking communication device (cell
phone that allowing a user to perform multiple functions).  Specifically, SONY
teaches switching the device from the MP3 mode to a standby mode while the
playing music continues (pages 9-10, 49-50).


11.     **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of
time policy as set forth in 37 CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire
THREE MONTHS from the mailing date of this action.  In the event a first reply is
filed within TWO MONTHS of the mailing date of this final action and the advisory
action is not mailed until after the end of the THREE-MONTH shortened statutory
period, then the shortened statutory period will expire on the date the advisory
action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be
calculated from the mailing date of the advisory action.  In no event, however, will
the statutory period for reply expire later than SIX MONTHS from the mailing
date of this final action.

APLNDC-WH-A  0000016938

Application/Control Number: 11/778,466                          Page 11
Art Unit: 2195

12.     Any inquiry concerning this communication or earlier communications from

the examiner should be directed to JENNIFER N. TO whose telephone number is

(571)272-7212.  The examiner can normally be reached on M-T 6AM- 3:30 PM,

F 6AM- 2:30 PM.


13.     If attempts to reach the examiner by telephone are unsuccessful, the

examiner's supervisor, Meng-Ai An can be reached on (571) 272-3756.  The fax

phone number for the organization where this application or proceeding is

assigned is 571-273-8300.


14.     Information regarding the status of an application may be obtained from

the Patent Application Information Retrieval (PAIR) system.  Status information

for published applications may be obtained from either Private PAIR or Public

PAIR.  Status information for unpublished applications is available through

Private PAIR only.  For more information about the PAIR system, see http://pair-

direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-

free). If you would like assistance from a USPTO Customer Service

Representative or access to the automated information system, call 800-786-

9199 (IN USA OR CANADA) or 571-272-1000.


/MENG-AI T. AN/
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100