# EXHIBIT C



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE
#### United States Patent and Trademark Office

**May 17, 2011**

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE
RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS
OF:

**APPLICATION NUMBER:** *08/821,004*
**FILING DATE:** *March 20, 1997*
**PATENT NUMBER:** *6,493,002*
**ISSUE DATE:** *December 10, 2002*

By Authority of the
**Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office**

*N. Williams*

N. WILLIAMS
**Certifying Officer**

**PART (3) OF (4) PART(S)**

APLNDC00027922

#55
bill
7/18/00

04860.P1365C2                                          *Patent*



| Response under 37 CFR 1.116 — Expedited Procedure |
| Examining Group 2773 |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:          )
                               )
    Steven W. Christensen      )
                               )
Serial No.   08/821,004        )     Examiner:   Dela Torre, C.
                               )
Filed:       March 20, 1997    )     Art Unit:   2773
                               )
For: METHOD AND APPARATUS      )
     FOR DISPLAYING AND        )
     ACCESSING CONTROL AND     )
     STATUS INFORMATION IN A   )
     COMPUTER SYSTEM           )

TC 2700 MAIL ROOM
JUL -7 2000
RECEIVED

### RESPONSE TO FINAL OFFICE ACTION

Assistant Commissioner
  for Patents
BOX AF
Washington, D.C.  20231

Sir:

        In response to the Final Office Action mailed January 28, 2000, Applicant

respectfully requests the Examiner to consider the following remarks:

### REMARKS

        Applicant respectfully requests reconsideration of this application as

amended.  Claims 1-31 remain in the application.  No claims have been amended.

No claims have been canceled.

        The Examiner rejected Claims 1-25 under 35 U.S.C. §103(a) as being

unpatentable over <u>Cohausz</u>, in view of <u>Takagi, et al.</u>, and further in view of

Ser. No. 08/821,004                      -1-                   04680.P1365C2

APLNDC00028082

<u>Hansen, et al</u>.  Applicant respectfully submits that the present invention as claimed is not anticipated by the above-referenced combination.  Specifically, the present invention sets forth displaying status information through a window in which the individual programming modules are associated with different programs to provide status and/or control functions.  Each of the program modules is associated with the different individual display areas in the window.  The Examiner admits that <u>Cohausz</u> does not disclose such programming modules.  The programming modules are utilized to overcome the problem having a single program that must be located and entered before execution (of the program to obtain the specific control or status information) as well as having everything done by a single program, requires a greater amount of time and maybe unduly long.  Thus, the use of the individual programming modules provides a less obtrusive way to access system control and status programming.

The Examiner asserts that <u>Takagi</u> as teaching such individual programming modules.  Applicant disagrees with the assertion and believes there is nothing in <u>Takagi</u> that indicates that there are individual programming modules and the Applicant contends that the document filing apparatus is a single application.  The fact that <u>Takagi</u> displays function keys and a function area does not change this fact.  Importantly, <u>Takagi</u> is not directed to the problem that the use of the individual programming modules for which the present invention as claimed is directed.  In <u>Takagi</u>, with status and control functions still require locating a single program for execution and the time to obtain any individual function of that single program may be long.  Using the individual programming modules set forth and claimed in the present invention avoids this problem.

Furthermore, the present invention as claimed includes having a window region with its independent display areas in a window that appears on top of

APLNDC00028083

application window programs that may be generated. Therefore, by implication, those window areas that are generated after the generation of the window layer will still not appear on top of the control/status window in the present invention as claimed when they are active. This allows the user to have an unobstructed view of the system/controller area regardless of the window that's selected as being active (even when the windows overlap each other). Thus, the window may be always visible to the user. The Examiner believes that this is clearly shown in Hansen, specifically referring to the dashboard interface. However, Hansen only allows the user an unobstructed view of the system if a button is selected (col. 4, lines 45-51). Thus, Applicant believes that one familiar with the art would not look to Hansen to arrive at the present invention because the present invention is directed at using individual programming modules that generate displays that are always visible on a top layer. It appears to Applicant that the Examiner is simply using impermissible hindsight to piece together parts of different patent in an attempt to reject the claims. Applicant respectfully submits that in view of the above, the present invention as claimed is not obvious in view of Cohausz, Takagi and Hansen.

The Examiner also rejected claims 26-31 under 35 U.S.C. §103(a) as being unpatentable over Takagi in view of Hansen. Applicant respectfully submits that for the same reasons given above with respect to Takagi and Hansen, the present invention as claimed is not obvious in view of the cited references.

Accordingly, Applicant respectfully submits that the rejections under 35 U.S.C. §103(a) have been overcome by the amendments and the remarks and withdrawal of these rejections is respectfully requested. Applicant submits that Claims 1-31 are in condition for allowance and such action is earnestly solicited.

APLNDC00028084

Please charge any shortages and credit any overcharges to our Deposit Account No. 02-2666.

Respectfully submitted,

BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN

Dated: June 28, 2000

Michael J. Mallie
Attorney for Applicant
Registration No. 36,591

12400 Wilshire Boulevard
Seventh Floor
Los Angeles, CA  90025-1026
(408) 720-8598

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail with sufficient postage in an envelope addressed to the Assistant Commissioner for Patents Washington, D.C.  20231 on June 28, 2000

Angela M. Quinn                    June 28, 2000
                                   Date

Ser. No. 08/821,004                    -4-                    04680.P1365C2

APLNDC00028085

Atty. Docket No.  004860.P1365C2           *Patent*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:             )

         Steven W. Christensen    )

Serial No.    08/821,004        )

Filed:        March 20, 1997      )

For:  METHOD AND APPARATUS   )
      FOR DISPLAYING AND      )
      ACCESSING CONTROL AND   )
      STATUS INFORMATION IN A   )
      COMPUTER SYSTEM        )

Examiner:    Dela Torre, C.

Art Unit:    2773

**RECEIVED**

JUN 0 6 2001

OFFICE OF PETITIONS

Honorable Commissioner of
Patents and Trademarks
Washington, D.C. 20231

## APPEAL BRIEF
## IN SUPPORT OF APPELLANTS' APPEAL
## TO THE BOARD OF PATENT APPEALS AND INTERFERENCES

Sir:

     Appellants (hereafter "Appellants") hereby submit this Brief in triplicate in

support of its appeal from a final decision by the Examiner, mailed January 28, 2000,

in the above-captioned case.  Appellants respectfully request consideration of this

appeal by the Board of Patent Appeals and Interferences for allowance of the above-

captioned patent application.

     An oral hearing is desired.

"Express Mail" mailing label number: <u>EL617183692US</u>
Date of Deposit: _____<u>June 1, 2001</u>
I hereby certify that I am causing this paper or fee to be
deposited with the United States Postal Service "Express Mail Post
Office to Addressee" service on the date indicated above and
that this paper or fee has been addressed to the Assistant
Commissioner for Patents, Washington, D.C. 20231
          <u>Conny Willesen</u>
(Typed or printed name of person mailing paper or fee)
         *Conny Willesen*
(Signature of person mailing paper or fee)
          <u>06-01-01</u>
(Date signed)

APLNDC00028103

## VIII.   ARGUMENT

### A.   REJECTION OF CLAIMS 1-31 WAS IMPROPER UNDER 35 U.S.C. §103 IN VIEW OF COHAUSZ, TAKAGI, AND FURTHER IN VIEW OF HANSEN BECAUSE THESE REFERENCES CANNOT BE LOGICALLY COMBINED.

Cohausz discusses a status bar for a computer program that permits tracking of location. Takagi teaches a document filing apparatus that allows a user to print, scan, and file documents within the program.  Hansen discusses a dashboard including a plurality of buttons, to permit management of various items.

There is no suggestion in any of these references for the combination made by the Examiner.  In fact, Cohausz and Takagi discuss different application programs that have various features available through function buttons and status bars. However, the functionalities of Takagi would not logically be applicable to Cohausz, and vice versa.  Additionally, there is no suggestion in Cohausz to incorporate the "individual programming modules" asserted by the Examiner in Takagi into Cohausz.

Furthermore, Hansen discusses a dashboard not associated with a particular application program.  Cohausz' application and Takagi's application cannot be logically combined with the dashboard of Hansen.  Again, no suggestion is found by the Examiner to combine these functionalities.

Additionally, since Takagi and Cohausz address function and status indicators that are associated with specific application programs, it would not be logical to combine these functionalities with the "always on top feature" Examiner alleges can be found in Hansen.  Rather, as is generally the case with application programs, it would only be logical to display the status indicators of Cohausz and Takagi while the application program in question is active.  When another application is active, it would not be logical to display the unavailable functionalities of Cohausz and/or

Serial No. 08/821,004                            -9-                              004860.P1365C2

Takagi on top of the window of the currently active application. Therefore, it is not logical to combine Cohausz, Takagi, and Hansen.

Therefore, Appellants respectfully submit that claims 1-31 are not obvious over Cohausz, Takagi, and Hansen.

**B.   THE REJECTION OF CLAIMS IN VIEW OF COHAUSZ, TAKAGI, AND HANSEN WAS IMPROPER BECAUSE EVEN IN COMBINATION, THESE REFERENCES DO NOT MAKE CLAIMS 1-31 OBVIOUS.**

In assessing obviousness under 35 U.S.C. § 103, certain inquiries should be made. These include (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) the effect of "secondary considerations." See Graham v. John Deere, 383 U.S. 1, 17-18 (1966).

**1.   The scope and content of the cited prior art.**

The Examiner has rejected claims 1-25 are obvious under 35 U.S.C. §103(a) in view of Cohausz, in view of Takagi, et al., and further in view of Hansen, et al. Claims 26-31 were rejected as obvious under 35 U.S.C. §103(a) in view of Takagi further in view of Hansen.

Cohausz discusses a status bar for a computer program (Cohausz, Abstract) that provides the status of the program. Each area in the status bar corresponds to an area of the program. Cohausz's status bar is a menu. However, the term menu in Cohausz refers to a table of contents, rather than to communication with a module. This is clarified on pg. 5 of Cohausz, where it states that "the oblong status indicator can represent a menu in which the individual fields represent menu points or menu subjects." No indication is found that this relates to communication with a programming module. The sentence above this one clarifies that "the individual fiends are control panels or control buttons, which, when activated (clicked on) lead

APLNDC00028112

to the respective program area, text, or information segment." This is the sole functionality of the indicator.

The indicator of Cohausz does not obtain information about the module. Cohausz refers to displaying where the user is located, i.e. actual location within a document. Along the oblong field, a square or other indicator is located at the same location as the cursor can be found in the text. This is similar to the scroll bar of most word processors. The difference is that the scroll bar of Cohausz is divided into subsections indicating a defined program area or program function. There is no indication of that the oblong field obtains information about a module. In fact, Cohausz does not indicate any communication between the indicator and any application or program outside the indicator. Furthermore, Cohausz' indicators are not interactive. Rather, they are passive indicators of location only.

Takagi teaches a document filing apparatus including:

> [A] document window 201 for displaying document images including characters is substantially centered in the display screen. Icons (also called "selection marks" or "commands") are arrayed in the right portion of the document window 201, and give an operator various necessary indications, such as image-enlarging and reducing, and rotation and scroll of the displayed image. . . . The display further contains a function area 202 provided in connection with function keys F1 to F10. The function area contains icons F1 to F10 indicating various devices for inputting and outputting documents such as a scanner, printer, display, and file.

(Takagi, column 3, lines 7-26). Thus, Takagi teaches a document filing apparatus, which is a single application that permits manipulation of documents. Takagi does not teach or suggest a window region independently displayed and independently active of any application program, the window region having interactive display areas. Rather, Takagi teaches displayed function keys that permit access to printing, scanning, saving, and other functions of a single "document filing apparatus" taught by Takagi. Furthermore, the display areas of Takagi are not

Serial No. 08/821,004                  -11-                  004860.P1365C2

APLNDC00028113

interactive. Rather, the display areas display static information, such as "scanner," "printer," "display," etc. The function keys of Takagi are not interactive. Rather, they provide access an input or output mechanism, such as a printer or scanner. If a user selects one of the functions, a window may be opened. However, the buttons are not interactive in that they do not change in response to user interaction.

Hansen discusses a dashboard including a plurality of buttons, to permit management of various items. Hansen provides a plurality of functions, such as rolodex, calendar, etc. Hansen's system further provides a selection option, which when pressed, brings the user interface shell before another window (Hansen, column 2, lines 23-28). However, Hansen does not teach or suggest a plurality of independent application programs associated with a plurality of independent areas in a display system. Furthermore, Hansen's display areas are not interactive. They do not change in response to user interaction. When the user wishes to alter the display on the dashboard of Hansen, a window is opened, and the configuration of the various icons is changed.

## 2.     The level of ordinary skill in the art.

The test for obviousness under 35 U.S.C. § 103(a) requires reference to obviousness at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. Appellants respectfully believe that the level of ordinary skill in the art is that of a computer programmer who works in the field of user interface design.

## 3.     The differences between the claimed invention and the prior art.

### A.     The Examiner's Rejections

The Examiner has rejected claims 1-25 are obvious under 35 U.S.C. §103(a) in view of Cohausz, in view of Takagi, et al., and further in view of Hansen, et al.

APLNDC00028114

Claims 26-31 were rejected as obvious under 35 U.S.C. §103(a) in view of <u>Takagi</u> further in view of <u>Hansen</u>.

Appellants respectfully submit that Cohausz, Takagi, and Hansen alone or in combination fail to render the claimed invention obvious.  Furthermore, Appellants respectfully submit that Takagi and Hansen in combination do not make claims 26-31 obvious.

**B.   Claim Group I:  None of Cohausz, Takagi, and Hansen, alone or in combination, teach or suggest a plurality of display areas associated with plurality of individual programming modules associated with different application programs.**

Claim 1 reads:

1.     An interactive computer-controlled display system comprising:
a processor;
a data display screen coupled to the processor;
a cursor control device coupled to said processor for positioning a cursor on said data display screen;
a window generation and control logic coupled to the processor and data display screen to <u>create an operating environment for a plurality of individual programming modules associated with different application programs that provide status and/or control functions</u>, wherein the window generation and control logic generates and displays a first window region having a plurality of display areas on said data display screen, wherein the <u>first window region is independently displayed and independently active of any application program</u>, and wherein each of the plurality of display areas is associated with one of the plurality of individual programming modules, the first window region and the <u>plurality of independent display areas implemented in a window layer that appears on top of application programming windows that may be generated</u>;
an indicia generation logic coupled to the data display screen to execute at least one of the plurality of individual programming modules to generate information for display in one of the plurality of display areas in the first window region, wherein at least one of the plurality of display areas and its associated

APLNDC00028115

programming module is <u>sensitive to user input</u>, and further wherein the window generation and control logic and the indicia generation logic use message-based communication to exchange information to coordinate activities of the indicia generation logic to enable <u>interactive display activity.</u>

(Claim 1). Thus, claim 1 recites a display system to display status information through a window in which the individual programming modules are associated with different programs to provide status and/or control functions. Each of the program modules is associated with the different individual display areas in the window. Furthermore, these display areas permit interactive display activity.

The Examiner stated in her rejection that:

> [Cohausz] does not teach a status bar with a plurality of individual programming modules associate with different programs, nor does Cohausz teach that the first window region is displayed separately from any application program. …
>
> Takagi teaches a first window region, with function area 202, which is displayed separately from application programs in window 201, and also teaches that the plurality of individual programming modules, F1-F4, in function area 202 are associated with different programs. …

(Final Office Action, page 4, paragraphs 1 and 2). The Examiner noted that Cohausz does not discuss a plurality of individual programming modules associated with different programs. However, The Examiner asserts that Takagi teaches this element. Appellants respectfully disagree with Examiner's interpretation of Takagi. Takagi teaches a document filing apparatus, which is a <u>single application</u> that permits manipulation of documents. Takagi states that:

> FIG. 2 shows an initial display on the screen of display 9 in the document filing apparatus according to the present invention. As shown, document window 201 for displaying document images including characters is substantially centered in the display screen. Icons (also called "selection marks" or "commands") are arrayed in the right portion of the document window 201, and give an operator various necessary indications, such as image-enlarging and reducing, and rotation and scroll of the displayed image. These

Serial No. 08/821,004                    -14-                    004860.P1365C2

APLNDC00028116

indications by the icons are designated by a mouse or related keys
on the keyboard. For example, if the "Enlarge" icon is designated,
the document displayed within the document window is enlarged.
    The display further contains a function area 202 provided in
connection with function keys F1 to F10. The function area contains
icons F1 to F10 indicating various devices for inputting and
outputting documents such as a scanner, printer, display, and file.

(Takagi, column 3, lines 7-25).  As can be seen in Figure 2, and as described in

Takagi, there is a <u>single</u> display area, which includes icons on the right hand side,

and function areas.  Note that Takagi specifically discusses, and illustrates a

"document filing apparatus," a single system, which includes a plurality of controls

and potential outputs and functions.  Furthermore, Takagi specifically notes that

"property sheets for changing or checking the properties of these devices [scanner,

printer, display and file] can be displayed by display 9.  (Takagi, column 4, lines 44-

45).  Thus, Takagi clearly does not teach or suggest a display that displays properties.

Furthermore, Takagi's system is a unitary system having a single display area, which

includes a plurality of functions.

    Takagi does not teach or suggest a "a window region <u>independently displayed</u>

<u>and independently active</u> of any application program, as claimed in Claim 1.  Rather,

Takagi teaches displayed function keys that permit access to printing, scanning,

saving, and other functions of a single "document filing apparatus" taught by Takagi.

There is nothing in <u>Takagi</u> that indicates that there are individual programming

modules and the Appellants submit that the document filing apparatus is a single

application.  The fact that <u>Takagi</u> displays function keys and a function area does not

change this fact.  <u>Takagi</u> is not directed to the use of individual programming

modules.  In <u>Takagi</u>, with status and control functions are part of a single program.

    Furthermore, since <u>Takagi</u> discusses a standard application window for a

document filing apparatus, <u>Takagi</u> does not teach or suggest an area that appears on

top of application windows.  The Examiner suggests that <u>Hansen</u> makes up for this

Serial No. 08/821,004              -15-              004860.P1365C2

shortcoming of <u>Takagi</u>. However, as discussed above <u>Hansen</u> discusses a dashboard. However, <u>Hansen</u> only allows the user an unobstructed view of the system if a button is selected (<u>Hansen</u>, col. 4, lines 45-51). For example, see Figure 18 of <u>Hansen</u>, the dashboard is obscured by a window. Thus, <u>Hansen</u> does not teach or suggest "window layer appears on top of application programming windows that may be generated."

Furthermore, <u>Hansen</u> does not teach "a plurality of individual programming modules associated with different application programs." As discussed above, neither Cohausz nor Takagi teaches or suggests individual programming modules associated with different application programs.

The Examiner asserts that Cohausz discusses an "interactive programming activity." Appellants respectfully disagree. The status indictor of Cohausz simply "indicates very precisely at which location in the program or information one is located." (Cohausz, page 3, paragraph 2). Furthermore, this is done by an overlay of an "indicator field" or "cursor." Cohausz does not teach or suggest the availability of "interactive display activity." Interactive display activity is described in detail in the Specification, for example at page 19, where examples of various modules are provided. For example, the interactivity of the display permits a user to "turn the network connection on or off without having to located and execute other network connection software" (Specification, page 18, lines 7-9). Thus, the user may interact with the modules, and thereby control computer functions. Cohausz provides no such interactivity. Rather, the indicator of Cohausz is simply a location indicator.

Furthermore, Takagi does not teach or suggest an interactive display either. Takagi's system permits the user to print, scan, or perform other actions. However, Takagi's system does not teach or suggest "interactive programming ability." Hansen does not make up for this shortcoming of Cohausz' either.

APLNDC00028118

Therefore, claim 1 is not obvious over Cohausz, in view of Takagi and Hansen. Claims 2-10 and 19-21 depend directly or indirectly on claim 1, and are not obvious over Cohausz in view of Takagi and Hansen for at least the same reasons recited above with respect to claim 1.

Similarly, claim 11 recites in part:

> window generation and control logic coupled to the processor and data display screen to create an operating environment for a plurality of individual programming modules associated with different application programs that provide status and/or control functions, wherein the window generation and control logic generates and displays a first window region having a plurality of display areas on said data display screen, wherein the first window region is independently displayed and independently active of any application program, and wherein each of the plurality of display areas is associated with one of the plurality of individual programming modules, the first window region and the plurality of independent display areas implemented in a window layer that appears on top of application programming windows that may be generated; . . .

(Claim 11).  As discussed above with respect to claim 1, none of the references, alone or in combination teach or suggest a system in which individual programming modules associated with different application programs that provide status and/or control information.  Furthermore, none of the references teach or suggest an independent first window region implemented in a window layer that appears on top of application programming windows.  Therefore, claim 11 is not obvious over Cohausz, in view of Takagi and Hansen.  Claims 12-14 and 22-24 depend on claim 11, and are not obvious over Cohausz in view of Takagi and Hansen for at least the same reasons recited above with respect to claim 11.

Similarly, claim 15 recites in part:

> creating an operating environment for a plurality of individual programming modules associated with different

APLNDC00028119

> application programs that provide status and/or control functions;
>
> generating a first window sized to accommodate a plurality of display areas for indicia resulting from executing at least one of the plurality of individual programming modules, wherein each of the plurality of display areas is associated with one of the plurality of individual programming modules, and wherein the first window is independently displayed and independently active of any application program, the first window region and the plurality of independent display areas implemented in a window layer that appears on top of application programming windows that may be generated;

(Claim 15). As discussed above with respect to claim 1, none of the references, alone or in combination teach or suggest creating an operating environment for a plurality of individual programming modules associated with different application programs that provide status and/or control functions. Furthermore, none of the references teach or suggest an independent first window region implemented in a window layer that appears on top of application programming windows. Therefore, claim 15 is not obvious over Cohausz, in view of Takagi and Hansen. Claims 16-18 depend on claim 15, and are not obvious over Cohausz in view of Takagi and Hansen for at least the same reasons recited above with respect to claim 15.

Similarly, claim 25 recites in part:

> a window generation and control logic to create an operating environment for a plurality of individual programming modules associated with different application programs that provide status and/or control functions, wherein the window generation and control logic generates and displays a first window region having a plurality of display areas, wherein the first window region is independently displayed and independently active of any application program, and wherein each of the plurality of display areas is associated with one of the plurality of individual programming modules, the first window region and the plurality of independent display areas implemented in a window layer that appears on top of application programming windows that may be generated;

Serial No. 08/821,004               -18-                    004860.P1365C2

APLNDC00028120

an indicia generation logic coupled to the data display screen to execute at least one of the plurality of individual programming modules to generate information for display in one of the plurality of display areas in the first window region, wherein at least one of the plurality of display areas and its associated programming module is sensitive to user input, and further wherein the window generation and control logic and the indicia generation logic use message-based communication to exchange information to coordinate activities of the indicia generation logic to enable interactive display activity.

(Claim 25). As discussed above with respect to claim 1, none of the references, alone or in combination teach or suggest a system in which individual programming modules associated with different application programs that provide status and/or control information. Furthermore, none of the references teach or suggest an first window region and the plurality of independent display areas implemented in a window layer that appears on top of application programming windows. Additionally, claim 25 recites an indicia generation logic enabling interactive display activity. As discussed above with respect to claim 1, none of Cohausz, Takagi, or Hansen teach or suggest interactive display activity, as claimed in claim 25.

Therefore, claim 25 is not obvious over Cohausz, in view of Takagi and Hansen.

Similarly, claim 26 recites:

26.      A system comprising:
a window region independently displayed and independently active of any application program, the window region having interactive display areas;

each of a plurality of the display areas associated with one of a plurality of individual programming modules, the first window region and the plurality of independent display areas implemented in a window layer that appears on top of application programming windows that may be generated;

wherein at least one of the individual programming modules is executable to generate information for display in the plurality of display areas, and wherein at least one of the display areas sensitive to user input.

Serial No. 08/821,004                       -19-                        004860.P1365C2

APLNDC00028121

(Claim 26). As discussed above with respect to claim 1, none of the references, alone or in combination teach or suggest a system in which each of a plurality of the display areas associated with one of a plurality of individual programming modules. Furthermore, none of the references teach or suggest a first window region and the plurality of independent display areas implemented in a window layer that appears on top of application programming windows that may be generated. Additionally, claim 26 recites interactive display areas. As discussed above with respect to claim 1, none of Cohausz, Takagi, or Hansen teach or suggest interactive display areas, as claimed in claim 26. Therefore, claim 26 is not obvious over Cohausz, in view of Takagi and Hansen. Claims 27-31 depend on claim 26, and are not obvious over Cohausz in view of Takagi and Hansen for at least the same reasons recited above with respect to claim 26.

### C.    Claim Group II:  Appellants Respectfully Submit that None of Cohausz, Takagi, and Hansen Teach or Suggest a Control Strip.

The claims of Group II depend on claims in Group I, and incorporate their respective limitations. Therefore, the claims of Group II are not obvious over the cited references for at least the same reasons advanced above with respect to the claims of Group I.

Furthermore, claim 2, which depends on claim 1, recites:

> The display system defined in Claim 1 wherein the first window region comprises a control strip.

(Claim 2). Thus, in accordance with Claim 2, the window region is a control strip  The Examiner stated that "Cohausz teaches a "control strip" with oblong field 1, at Figs. 1-3." (Final Office Action, page 5, third full paragraph)  Appellants respectfully disagree with Examiner's analysis. Cohausz does not teach or suggest a control strip. A control strip, by definition, is "a window of graphics depicting one

APLNDC00028122

or more display areas for control and/or status indicia." (Specification, page 14, 1-2). Cohausz's "oblong field" is not a control strip, since it does not include control or status indicia. Rather, Cohausz's oblong field only indicates the current <u>location</u> of the user. Although Cohausz does use the term "status," she is using it as a referent for <u>location</u>. On the other hand, the present invention clearly defines "status" as "information regarding application programs, as well as information produced by system programs, that are run on the computer system." (Specification, page 2, lines 1-2). Cohausz does not teach or suggest such a control strip. Takagi does not teach or suggest such a control strip either, nor does Hansen. Therefore, claim 2 is not obvious over Cohausz, in view of Takagi and Hansen.

Claim 13 adds the limitation that "the first window region comprises a control strip," to independent claim 11. As discussed above with respect to claim 2, none of the references alone or in combination disclose a control strip, as recited in claim 13. Therefore, claim 13 is not obvious over Cohausz, Takagi, and Hansen.

E.   **Claim Group III: Appellants Respectfully Submit that None of Cohausz, Takagi, and Hansen Teach or Suggest a Data Area displaying An Additional Display Element.**

The claim of Group IV depends on claims in Group I, and incorporates their limitations. Therefore, the claim of Group IV is not obvious over the cited references for at least the same reasons advanced above with respect to the claims of Group I.

Furthermore, claim 10, which indirectly depends on claim 1, recites:

The display system defined in Claim 9 wherein said at least one of the data areas display an additional display element.

(Claim 10). Thus, in accordance with Claim 10, at least one of the display areas is displays an additional display element. The Examiner stated that "Cohausz displays an additional display element" at p. 6 paragraph 3. (Final Office Action,

APLNDC00028123

page 6, third full paragraph).  Appellants respectfully disagree with Examiner's analysis.  Cohausz does not teach or suggest a display area that displays an additional display element.  Rather, Cohausz discusses a display area that "may not only display writing but additional, and as an alternative, also symbols or pictures as represented in the right region of the Figures."  (Cohausz, page 6, 3rd paragraph).  The Specification provides an example of such an additional display element, where it states:

> Note that buttons may display information on their surface.  When the user clicks a button, it is highlighted.  In one embodiment, buttons may also display additional elements such as pop-up menus (shown in Figure 2C) or help messages (e.g., balloons shown in Figure 2D).

(Specification, page 14, lines 15-18).  Cohausz, on the other hand, simply discusses using "images" instead of text to label an area. Cohausz does not teach or suggest additional elements, such as pop-up menus, help messages, etc.  Neither Takagi nor Hansen make up for this shortcoming of Cohausz.  Therefore, claim 10 is not obvious over Cohausz, in view of Takagi and Hansen.

> **F.  Claim Group IV: Appellants Respectfully Submit that None of Cohausz, Takagi, and Hansen Teach or Suggest a The First Window Region Implemented in a Private Window Layer that Appears in Front of Windows for All Application Layers.**

The claims of Group V depend on claims in Group I, and incorporate their respective limitations.  Therefore, the claims of Group V are not obvious over the cited references for at least the same reasons advanced above with respect to the claims of Group I.

Furthermore, claim 21, which depends on claim 1, recites:

> The display system defined in Claim 1 wherein the first window region is implemented in a private window layer that appears in front of windows for all applications layers.

APLNDC00028124

(Claim 21). Thus, in accordance with Claim 21, the first window region is implemented in a private window layer. The Examiner stated that Cohausz discusses "the first window region in a 'private window layer'" at p. 4 paragraph 5. (Final Office Action, page 12, first paragraph). Appellants respectfully disagree with Examiner's analysis. Cohausz does not teach or suggest a private window layer that is always in front of all applications layers. At the cited location, Cohausz merely discusses that the regions on the oblong field are adjacent. Cohausz does not teach or suggest a "private window layer." Takagi discusses only function keys attached to an application. Hansen discusses a dashboard that may or may not appear in front of other windows. However, Hansen does not teach or suggest the use of a private window layer. Therefore, claim 21 is not obvious over Cohausz, in view of Takagi and Hansen.

Similarly, claim 24 recites in part a system "wherein the first window region is implemented in a private window layer that appears in front of windows for all applications layers." As discussed above with respect to claim 21, none of the references teach or suggest a private window layer that appears in front of windows for all application layers. Therefore, claim 24 is not obvious over Cohausz, in view of Takagi and Hansen.

## 4.      The effect of secondary considerations.

In determining whether a patent claim is obvious, the secondary considerations, or factors, are considered because they sometimes provide circumstantial evidence of non-obviousness. The most common factors are (1) commercial success of the claimed invention, (2) solution by the claimed invention of long-standing problems in the art, (3) widespread recognition and copying of the invention in the industry, and (4) disbelief by experts that the invention would work. Appellants respectfully submit that, in view of the strength of the arguments

APLNDC00028125

presented herein, evidence of non-obviousness in the form of secondary considerations has not been presented heretofore in the prosecution of this application.

APLNDC00028126

IX.   **CONCLUSION**

Appellants submit that Cohausz, in view of Takagi and Hansen do not teach or suggest the invention claimed.  Appellants submit that Cohausz and Takagi cannot be logically combined.  Furthermore, Appellants submit that none of the references, alone or in combination teach or suggest a plurality of display areas associated with plurality of individual programming modules associated with different application programs.  Appellants further submit that the art cited by the Examiner provides absolutely no motivation for combining the references cited. Appellants further submit that Examiner provides no motivation for performing the Examiner's modification and that any further modification of the cited references is neither taught nor suggested by either reference.

Appellants respectfully submit that all the appealed claims in this application are patentable and requests that the Board of Patent Appeals and Interferences overrule the Examiner and direct allowance of the rejected claims.

This brief is submitted in triplicate, along with a check for $310.00 to cover the appeal fee for one other than a small entity as specified in 37 C.F.R. § 1.17(f).

Please charge any shortages and credit any overcharges to out Deposit Account No. 02-2666.

Respectfully submitted,
BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN LLP

Date:  6 / 1  , 2001

Judith A. Szepesi
Attorney for Appellants
Registration Number: 39,393

12400 Wilshire Boulevard, Seventh Floor
Los Angeles, CA 90025-1026
(408)-720-8300

Serial No. 08/821,004                    -25-                    004860.P1365C2

APLNDC00028127