# EXHIBIT X-8
# (Public Redacted Version)

# Apple's Unreasonable Delay: Bounce Feature

Subject: Samsung Galaxy
Date: Wed, 24 Mar 2010 19:13:55 +0000
From: "Tim Cook" <tcook@apple.com>
To: "Steve Jobs" <sjobs@apple.com>
Message-ID: <3C4F5B4A-654F-4759-9900-EF9FC2E9CCAE@apple.com>

check out the YouTube video.

tim

Samsung's stunning i9000 Galaxy S live in photos and video Live Photo Gallery

218

Source: Jenkins Decl. Ex. OO

# The YouTube Video Shows the Bounce Feature In the Samsung Phone



## Filename: Si9000_short.mpg

219

*Source: Jenkins Decl. Ex. PP*

# Apple's Unreasonable Delay: Bounce Feature



**2007**
Accused bounce feature introduced in Samsung Haptic (Dennison Dep. at 175:9-176:15)

**3/2010**
Apple COO Tim Cook sends CEO Steve Jobs a YouTube link describing Samsung's Galaxy Si9000 and showing bounce feature

**7/2010**
Samsung releases Vibrant and Captivate phones— Apple accuses both of infringing the '381 patent

**4/15/2011**
Apple files complaint

**7/1/2011**
Apple moves for PI

| 2007 | 2008 | 2009 | 2010 | 2011 |

220

104-05

# Apple Cannot Use Negotiations as an Excuse for Delay



**August 2010**
First meeting

**September 2010**
Second meeting

**October 2010**
Third meeting

**November 2010**
Fourth meeting

**April 2011**
Apple files lawsuit

No substantive interactions after Fourth meeting

2010

2011

221

166



# Apple Accused Nokia and HTC of Infringing the '381 Patent But Did Not Move for a Preliminary Injunction

- Apple asserted the '381 patent against Nokia in December 2009 but did not move for a preliminary injunction

*- Apple Motion at 17-18*

- Apple settled its claims with Nokia in June 2011

- Apple asserted the '381 patent against HTC in July 2011 but did not move for a preliminary injunction

223

315









# The Accused Bounce Feature Is a Small Feature In the Accused Smartphones and Tablets

- Accused products have hundreds, if not thousands of features

- Bounce feature is just one small feature

- Bounce feature exists in only certain applications on certain versions of software

  --*eBay Inc. v. MercExchange, LLC*

229

# Apple's PI Motion Should Be Denied

- Apple cannot prove likelihood of success on the merits
  - Apple is not likely to prevail on the D'677 and D'087 patents
  - Apple is not likely to prevail on the D'889 patent
  - Apple is not likely to prevail on the '381 patent

- Apple has not demonstrated irreparable harm

- **The balance of equities tips against Apple**

- The public interest favors denial of Apple's motion

230

# Apple's PI Motion Should Be Denied

- Apple cannot **prove** likelihood of success on the merits
  - Apple is not **like**ly to prevail on the D'677 and D'087 patents
  - Apple is not **like**ly to prevail on the D'889 patent
  - Apple is not **like**ly to prevail on the '381 patent

- Apple has not demonstrated irreparable harm

- The balance of equities tips against Apple

- **The public interest favors denial of Apple's motion**

231

001-07

# T-Mobile and Its Customers Will Be Harmed By a Preliminary Injunction

- **Galaxy S 4G is a top-five selling device for T-Mobile**

- **Galaxy Tab 10.1 is launching for holiday season and will be T-Mobile's only 10-inch tablet**

- **2011 holiday season inventory has already been ordered**

- **Marketing campaign is complete; No alternatives exist**

- **No other Android products with same features and price point**











170

232

# Verizon and Its Customers Will Be Harmed By a Preliminary Injunction

- Samsung DROID Charge is one of only five 4G LTE phones offered by Verizon

- Samsung Galaxy Tab 10.1 is the first 4G tablet device in the US

- Injunction on these devices would prevent customers from benefitting from billions of dollars Verizon has invested in 4G LTE network and hamper early adoption of the technology

- Impact of injunction magnified by holiday season timing











233

171

# Verizon Notes Harm Even Though It Sells Apple's iPhone and iPad





 iPhone 4

 iPad 2

234

172

# Apple on Public Interest Considerations



*Apple's Statement on the Public Interest*

Apple's iPhones are used everyday in the United States by millions of consumers to perform a countless number of essential personal, commercial, governmental, and safety-related tasks unrelated to the digital camera functionality at issue in this Investigation, including: (i) placing and receiving phone calls; (ii) sending and receiving text messages and e-mails; (iii) navigation; (iv) managing contact information; (v) managing calendars and schedules; (vi) mobile banking and e-commerce; (vii) monitoring weather and managing investments; and (viii) accessing the internet, among many others tasks.... Thus, when considering the countless tasks that the iPhone products perform, it is clear that the value of the accused digital camera technology is a small fraction of the overall economic value of the accused iPhone products to U.S. consumers.

–p. 1

235

# Apple on Public Interest Considerations



*Apple's Statement on the Public Interest*

An exclusion order would also impose undue burden on numerous other third parties, including at least Apple's component manufacturers, network carriers, and accessories suppliers.

*–p. 3*

236

# Apple on Public Interest Considerations



*Apple's Statement on the Public Interest*

Consumers rely on cellular phones for security because, among other reasons, cellular phones enable consumers to gain quicker access to emergency personnel when away from home. Consequently, eliminating Apple's iPhone products from the U.S. cellular handset market may adversely affect the market trend towards smart-phones as the preferred telecommunications technology and the sense of security cellular handsets provide to consumers.

*–p. 4*

237

# Woodring Daubert

# Comparison of Expert Qualifications

 ## Cooper Woodring


 ## Itay Sherman
 SAMSUNG

| | |
|---|---|
|  Has not designed a smartphone or tablet |  Lead designer on multiple handset devices including modu products |
|  Has not worked with telecommunications carriers |  CTO for TI Mobile Connectivity group; CTO for modu LTD |
|  Ignores most relevant prior art |  Considers wide range of prior art—including many not seen by the PTO during prosecution |
|  Fails to account for functionality of design |  Excluded functional elements, as law requires |
|  Relies on J.C. Penney consumer research from 1970s and 1980s |  Does not speculate as to consumer perception |

200-06

239



*Source: Woodring Decl. Ex. 10*

# Woodring's Improper Analysis



241

*Source: Woodring Decl. Ex. 10*

# Sherman's Proper Analysis



"far afield"?
"departs conspicuously"?

JP1009317     JP1241383     JP1241638      D'087

242

# Sherman's Proper Analysis



243

# Little Differences Mean a Lot



## Cooper Woodring Apple's expert

Q.  And it's true that when a design is reduced to a level of simplicity little things mean a lot?

A.  They can.

Q.  You, yourself, have said that; true?

A.  I have.

Q.  Was it true when you said it?

A.  Yes, of course.

Q.  It's something you still believe today?

A.  I said that in a certain context that may not apply to every situation. In general it—it's true that a—small nuances would be less noticeable on a highly-complex design than they would on a—a more simple design.

*−30:8−23*

244

*Source: Jenkins Decl. Ex. O, Woodring Depo. 8/5/11*

# Woodring Is Not Qualified to Provide Expert Opinions



## Cooper Woodring Apple's expert

Q.  What is "4G"?

A.  I don't know.

Q.  Does Apple have a 4G phone?

A.  I don't know.

*−41:2−8*

245

# Woodring Is Not Qualified to Provide Expert Opinions



## Cooper Woodring Apple's expert

Q. Are you an expert in to the reasons why consumers buy iPhones?

A. Not specifically with regard to why they buy iPhones.

Q. Are you an expert as to why consumers buy iPad products?

A. Not specifically with regard to why they buy iPad products.

Q. Are you an expert in why consumers buy smartphones?

A. No.

*−81:2−17*

246

# Woodring Is Not Qualified to Provide Expert Opinions



## Cooper Woodring Apple's expert

Q.  Did J.C. Penney sell—have any smartphones that it sold when you were there?

A.  I left in 1986, so I don't think so.

Q.  Have you ever worked at any retailer or any other vendor of smartphone products such that you were in a position to observe consumer behavior insofar as it related to the purchase or observation of smartphones or tablet computers?

A.  I've never worked in a retail environment that sold tablet computers or smartphones.

*−108:3−12*

247

204-03

*Source: Zeller Decl. Ex. 1, Woodring Depo. 8/5/11*



# JCPenney: Christmas 1986



249