EXHIBIT 3.01



IW 7302681

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

July 18, 2011

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:

APPLICATION NUMBER:  *10/840,862*
FILING DATE:  *May 06, 2004*
PATENT NUMBER:  *7,663,607*
ISSUE DATE:  *February 16, 2010*

By Authority of the

Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

N.  WILLIAMS
Certifying Officer

APLNDC00025465

 01919 U.S. PTO

050604



# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

CERTIFICATE OF EXPRESS MAILING
I hereby certify that this paper and the documents and/or fees referred to as attached therein are being deposited with the United States Postal Service on May 06, 2004 in an envelope as "Express Mail Post Office to Addressee" service under 37 CFR §1.10, Mailing Label Number EX33983185US, addressed to the Commissioner for Patents, P.O. Box 1450 Alexandria, VA 22313-1450.

Lauren Kimball

Attorney Docket No.:  APL1P305/P3266

First Named Inventor:  HOTELLING

## UTILITY PATENT APPLICATION TRANSMITTAL (37 CFR. § 1.53(b))

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:    This is a request for filing a patent application under 37 CFR. § 1.53(b) in the name of inventors:
**Steve Hotelling, Joshua A. Strickon and Brian Q. Huppi**

For:    **MULTIPOINT TOUCHSCREEN**

Assigned to:

Application Elements:

☒ **42** Pages of Specification, Claims and Abstract
☒ **14** Sheets of formal Drawings
☒ **3** Pages Combined Declaration and Power of Attorney

Accompanying Application Parts:

☒ Do not publish this application.  Nonpublication Request is attached.
☒ Assignment and Assignment Recordation Cover Sheet (recording fee of $40.00 enclosed)
☐ 37 CFR 3.73(b) Statement by Assignee
☐ Information Disclosure Statement with Form PTO-1449
   ☐ Copies of IDS Citations
☐ Preliminary Amendment
☒ Return Receipt Postcard
☐ Other:

APLNDC00025466

<u>Claim For Foreign Priority</u>

☐   Priority of          Application No.          filed on
        is claimed under 35 U.S.C. § 119.
            ☐  The certified copy is enclosed.
            ☐  The certified copy has been filed in prior application U.S. Application No.
            ☐  The certified copy will follow.


<u>Fee Calculation (37 CFR § 1.16)</u>

☐   Applicant is entitled to Small Entity Status under 37 C.F.R. §1.27.

|  | (Col. 1) Total Claims |  | (Col. 2) Claims | (Col. 3) Present Extra | Rate | Additional Fee |
|---|---|---|---|---|---|---|
| TOTAL | 31 | MINUS | 20 | =  11 | x 18 = | 198.00 |
| INDEP. | 6 | MINUS | 3 | =  3 | x 86 = | 258.00 |
| [ ] First presentation of multiple dependent claim |  |  |  |  | $290 = |  |
| Basic Filing Fee under 37 C.F.R. §1.16(a) |  |  |  |  | $770 = | 770.00 |
|  |  |  |  |  | TOTAL | 1,246.00 |
| SMALL ENTITY 50% FILING FEE REDUCTION (if applicable) |  |  |  |  |  |  |

☒  Check No. 22383 in the amount of $1,266.00 is enclosed.

☒  The Commissioner is authorized to charge any fees beyond the amount enclosed which may be required, or to credit any overpayment, to Deposit Account No. 500388 (Order No. APL1P305).


<u>General Authorization for Petition for Extension of Time (37 CFR §1.136)</u>

☒  Applicants hereby make and generally authorize any Petitions for Extensions of Time as may be needed for any subsequent filings.  The Commissioner is also authorized to charge any extension fees under 37 CFR §1.17 as may be needed to Deposit Account No. 500388 (Order No. APL1P305).


☒  Please send correspondence to the following address:

Customer Number 022434

022434

Date:  May 6, 2004

Quin C. Hoellwarth
Registration No. 45,738

(Revised 09/30, Pat App Trans 53(b) Reg)          Page 2

APLNDC00025467

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: Hotelling et al.

Application No.: Unassigned

Filed: Herewith

Title:  MULTIPOINT TOUCHSCREEN

Attorney Docket No.:  APL1P305/P3266

Examiner:  Unassigned

Group:  Unassigned

CERTIFICATE OF EXPRESS MAILING
I hereby certify that this paper and the documents and/or fees referred to as attached therein are being deposited with the United States Postal Service on May 06, 2004 in an envelope as "Express Mail Post Office to Addressee" service under 37 CFR §1.10, Mailing Label Number EV333983185US, addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

Signed: _Lauren Kimball_
Lauren Kimball

## NONPUBLICATION REQUEST AND CERTIFICATION
### (35 U.S.C. 122(b)(2)(B)(i))

Mail Stop Patent Application
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

I hereby certify that the invention disclosed in the attached application has not and will not be the subject of an application filed in another country, or under a multilateral agreement, that requires publication at eighteen (18) months after filing.  I hereby request that the attached application **NOT** be published under 35 U.S.C. 122(b).

Date:  5/6/04

Quin C. Hoellwarth
Registration No. 45,738

APLNDC00025468

Attorney Docket No. APL1P305/P3266

# PATENT APPLICATION

## MULTIPOINT TOUCHSCREEN

Inventor(s):  1.    Name:          Steve Hotelling
                    Address:       1351 Hidden Mine Rd.
                                   San Jose, CA  95120
                    Citizenship:   United States of America

             2.    Name:          Joshua A Strickon
                    Address:       333 Santana Row #212
                                   San Jose, CA  95128
                    Citizenship:   United States of America

             3.    Name:          Brian Q. Huppi
                    Address:       101 #2 28th Street
                                   San Francisco, CA  94131
                    Citizenship:   United States of America

             Assignee:            Apple Computer, Inc.

BEYER, WEAVER & THOMAS, LLP
P.O. Box 778
Berkeley, CA  94704-0778
Telephone (650) 961-8300

# MULTIPOINT TOUCHSCREEN

5

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

10        The present invention relates generally to an electronic device having a touch screen. More particularly, the present invention relates to a touch screen capable of sensing multiple points at the same time.

### 2. Description of the Related Art

15        There exist today many styles of input devices for performing operations in a computer system. The operations generally correspond to moving a cursor and/or making selections on a display screen. By way of example, the input devices may include buttons or keys, mice, trackballs, touch pads, joy sticks, touch screens and the like. Touch screens, in particular, are becoming increasingly popular because of their

20  ease and versatility of operation as well as to their declining price. Touch screens allow a user to make selections and move a cursor by simply touching the display screen via a finger or stylus. In general, the touch screen recognizes the touch and position of the touch on the display screen and the computer system interprets the touch and thereafter performs an action based on the touch event.

25        Touch screens typically include a touch panel, a controller and a software driver. The touch panel is a clear panel with a touch sensitive surface. The touch panel is positioned in front of a display screen so that the touch sensitive surface covers the viewable area of the display screen. The touch panel registers touch events

30  and sends these signals to the controller. The controller processes these signals and sends the data to the computer system. The software driver translates the touch events into computer events.

APL1P305                                    - 1 -

APLNDC00025470

There are several types of touch screen technologies including resistive, capacitive, infrared, surface acoustic wave, electromagnetic, near field imaging, etc. Each of these devices has advantages and disadvantages that are taken into account when designing or configuring a touch screen. In resistive technologies, the touch
5   panel is coated with a thin metallic electrically conductive and resistive layer. When the panel is touched, the layers come into contact thereby closing a switch that registers the position of the touch event. This information is sent to the controller for further processing. In capacitive technologies, the touch panel is coated with a material that stores electrical charge. When the panel is touched, a small amount of
10   charge is drawn to the point of contact. Circuits located at each corner of the panel measure the charge and send the information to the controller for processing.

In surface acoustic wave technologies, ultrasonic waves are sent horizontally and vertically over the touch screen panel as for example by transducers. When the
15   panel is touched, the acoustic energy of the waves are absorbed. Sensors located across from the transducers detect this change and send the information to the controller for processing. In infrared technologies, light beams are sent horizontally and vertically over the touch panel as for example by light emitting diodes. When the panel is touched, some of the light beams emanating from the light emitting diodes
20   are interrupted. Light detectors located across from the light emitting diodes detect this change and send this information to the controller for processing.

One problem found in all of these technologies is that they are only capable of reporting a single point even when multiple objects are placed on the sensing surface.
25   That is, they lack the ability to track multiple points of contact simultaneously. In resistive and capacitive technologies, an average of all simultaneously occurring touch points are determined and a single point which falls somewhere between the touch points is reported. In surface wave and infrared technologies, it is impossible to discern the exact position of multiple touch points that fall on the same horizontal or
30   vertical lines due to masking. In either case, faulty results are generated.

These problems are particularly problematic in tablet PCs where one hand is used to hold the tablet and the other is used to generate touch events. For example, as shown in Figs. 1A and 1B, holding a tablet 2 causes the thumb 3 to overlap the edge

APLNDC00025471

of the touch sensitive surface 4 of the touch screen 5. As shown in Fig. 1A, if the touch technology uses averaging, the technique used by resistive and capacitive panels, then a single point that falls somewhere between the thumb 3 of the left hand and the index finger 6 of the right hand would be reported. As shown in Fig. 1B, if

5      the technology uses projection scanning, the technique used by infra red and SAW panels, it is hard to discern the exact vertical position of the index finger 6 due to the large vertical component of the thumb 3. The tablet 2 can only resolve the patches shown in gray. In essence, the thumb 3 masks out the vertical position of the index finger 6.

10

APLNDC00025472

## SUMMARY OF THE INVENTION

The invention relates, in one embodiment, to a touch panel having a
5   transparent capacitive sensing medium configured to detect multiple touches or near
touches that occur at the same time and at distinct locations in the plane of the touch
panel and to produce distinct signals representative of the location of the touches on
the plane of the touch panel for each of the multiple touches.

10   The invention relates, in another embodiment, to a display arrangement.  The
display arrangement includes a display having a screen for displaying a graphical user
interface.  The display arrangement further includes a transparent touch panel
allowing the screen to be viewed therethrough and capable of recognizing multiple
touch events that occur at different locations on the touch sensitive surface of the
15   touch screen at the same time and to output this information to a host device.

The invention relates, in another embodiment, to a computer implemented
method.  The method includes receiving multiple touches on the surface of a
transparent touch screen at the same time.  The method also includes separately
20   recognizing each of the multiple touches.  The method further includes reporting
touch data based on the recognized multiple touches.

The invention relates, in another embodiment, to a computer system.  The
computer system includes  a processor configured to execute instructions and to carry
25   out operations associated with the computer system.  The computer also includes a
display device that is operatively coupled to the processor.  The computer system
further includes a touch screen that is operatively coupled to the processor.  The touch
screen is a substantially transparent panel that is positioned in front of the display.
The touch screen is configured to track multiple objects, which rest on, tap on or
30   move across the touch screen at the same time.  The touch screen includes a
capacitive sensing device that is divided into several independent and spatially
distinct sensing points that are positioned throughout the plane of the touch screen.
Each sensing point is capable of generating a signal at the same time.  The touch

APLNDC00025473

screen also includes a sensing circuit that acquires data from the sensing device and that supplies the acquired data to the processor.

The invention relates, in another embodiment, to a touch screen method. The method includes driving a plurality of sensing points. The method also includes reading the outputs from all the sensing lines connected to the sensing points. The method further includes producing and analyzing an image of the touch screen plane at one moment in time in order to determine where objects are touching the touch screen. The method additionally includes comparing the current image to a past image in order to determine a change at the objects touching the touch screen.

The invention relates, in another embodiment, to a digital signal processing method. The method includes receiving raw data. The raw data includes values for each transparent capacitive sensing node of a touch screen. The method also includes filtering the raw data. The method further includes generating gradient data. The method additionally includes calculating the boundaries for touch regions base on the gradient data. Moreover, the method includes calculating the coordinates for each touch region.

20

APLNDC00025474

## BRIEF DESCRIPTION OF THE DRAWINGS

5      The invention will be readily understood by the following detailed description in conjunction with the accompanying drawings, wherein like reference numerals designate like structural elements, and in which:

Figs. 1A and 1B show a user holding conventional touch screens.

10     Fig. 2 is a perspective view of a display arrangement, in accordance with one embodiment of the present invention.

Fig. 3 shows an image of the touch screen plane at a particular point in time, in accordance with one embodiment of the present invention.

15     Fig. 4 is a multipoint touch method, in accordance with one embodiment of the present invention.

Fig. 5 is a block diagram of a computer system, in accordance with one
20     embodiment of the present invention.

Fig. 6 is a partial top view of a transparent multiple point touch screen, in accordance with one embodiment of the present invention.

25     Fig. 7 is a partial top view of a transparent multi point touch screen, in accordance with one embodiment of the present invention.

Fig. 8 is a front elevation view, in cross section of a display arrangement, in accordance with one embodiment of the present invention.

30     Fig. 9 is a top view of a transparent multipoint touch screen, in accordance with another embodiment of the present invention.

APLNDC00025475

Fig. 10 is a partial front elevation view, in cross section of a display arrangement, in accordance with one embodiment of the present invention.

Figs. 11A and 11B are partial top view diagrams of a driving layer and a
5    sensing layer, in accordance with one embodiment.

Fig. 12 is a simplified diagram of a mutual capacitance circuit, in accordance with one embodiment of the present invention.

10    Fig. 13 is a diagram of a charge amplifier, in accordance with one embodiment of the present invention.

Fig. 14 is a block diagram of a capacitive sensing circuit, in accordance with one embodiment of the present invention.
15
Fig. 15 is a flow diagram, in accordance with one embodiment of the present invention.

Fig. 16 is a flow diagram of a digital signal processing method, in accordance
20    with one embodiment of the present invention.

Figs. 17A-E show touch data at several steps, in accordance with one embodiment of the present invention
25    Fig. 18 is a side elevation view of an electronic device, in accordance with one embodiments of the present invention.

Fig. 19 is a side elevation view of an electronic device, in accordance with one embodiments of the present invention.
30

APLNDC00025476

## DETAILED DESCRIPTION OF THE INVENTION

Embodiments of the invention are discussed below with reference to Figs. 2-
19.  However, those skilled in the art will readily appreciate that the detailed

5    description given herein with respect to these figures is for explanatory purposes as
the invention extends beyond these limited embodiments.

Fig. 2 is a perspective view of a display arrangement 30, in accordance with
one embodiment of the present invention.  The display arrangement 30 includes a

10   display 34 and a transparent touch screen 36 positioned in front of the display 34.
The display 34 is configured to display a graphical user interface (GUI) including
perhaps a pointer or cursor as well as other information to the user.   The transparent
touch screen 36, on the other hand, is an input device that is sensitive to a user's
touch, allowing a user to interact with the graphical user interface on the display 34.

15   By way of example, the touch screen 36 may allow a user to move an input pointer or
make selections on the graphical user interface by simply pointing at the GUI on the
display 34.

In general, touch screens 36 recognize a touch event on the surface 38 of the

20   touch screen 36 and thereafter output this information to a host device.  The host
device may for example correspond to a computer such as a desktop, laptop, handheld
or tablet computer.  The host device interprets the touch event and thereafter performs
an action based on the touch event.  Conventionally, touch screens have only been
capable of recognizing a single touch event even when the touch screen is touched at

25   multiple points at the same time (e.g., averaging, masking, etc.).  Unlike conventional
touch screens, however, the touch screen 36 shown herein is configured to recognize
multiple touch events that occur at different locations on the touch sensitive surface
38 of the touch screen 36 at the same time.  That is, the touch screen 36 allows for
multiple contact points T1-T4 to be tracked simultaneously, i.e., if four objects are

30   touching the touch screen, then the touch screen tracks all four objects.  As shown,
the touch screen 36 generates separate tracking signals S1-S4 for each touch point
T1-T4 that occurs on the surface of the touch screen 36 at the same time.  The number
of recognizable touches may be about 15.  15 touch points allows for all 10 fingers,
two palms and 3 others.

APLNDC00025477

The multiple touch events can be used separately or together to perform singular or multiple actions in the host device.   When used separately, a first touch event may be used to perform a first action while a second touch event may be used
5   to perform a second action that is different than the first action.   The actions may for example include moving an object such as a cursor or pointer, scrolling or panning, adjusting control settings, opening a file or document, viewing a menu, making a selection, executing instructions, operating a peripheral device connected to the host device etc. When used together, first and second touch events may be used for
10   performing one particular action.   The particular action may for example include logging onto a computer or a computer network, permitting authorized individuals access to restricted areas of the computer or computer network, loading a user profile associated with a user's preferred arrangement of the computer desktop, permitting access to web content, launching a particular program, encrypting or decoding a
15   message, and/or the like.

Recognizing multiple touch events is generally accomplished with a multipoint sensing arrangement.   The multipoint sensing arrangement is capable of simultaneously detecting and monitoring touches and the magnitude of those touches
20   at distinct points across the touch sensitive surface 38 of the touch screen 36.   The multipoint sensing arrangement generally provides a plurality of transparent sensor coordinates or nodes 42 that work independent of one another and that represent different points on the touch screen 36.   When plural objects are pressed against the touch screen 36, one or more sensor coordinates are activated for each touch point as
25   for example touch points T1-T4.   The sensor coordinates 42 associated with each touch point T1-T4 produce the tracking signals S1-S4.

In one embodiment, the touch screen 36 includes a plurality of capacitance sensing nodes 42. The capacitive sensing nodes may be widely varied.   For example,
30   the capacitive sensing nodes may be based on self capacitance or mutual capacitance. In self capacitance, the "self" capacitance of a single electrode is measured as for example relative to ground.   In mutual capacitance, the mutual capcitance between at least first and second electrodes is measured.   In either cases, each of the nodes 42

APLNDC00025478

works independent of the other nodes 42 so as to produce simultaneously occurring signals representative of different points on the touch screen 36.

5          In order to produce a transparent touch screen 36, the capacitance sensing nodes 42 are formed with a transparent conductive medium such as indium tin oxide (ITO).  In self capacitance sensing arrangements, the transparent conductive medium is patterned into spatially separated electrodes and traces.  Each of the electrodes represents a different coordinate and the traces connect the electrodes to a capacitive sensing circuit.   The coordinates may be associated with Cartesian coordinate system
10       (x and y), Polar coordinate system (r, $\theta$) or some other coordinate system.  In a Cartesian coordinate system, the electrodes may be positioned in columns and rows so as to form a grid array with each electrode representing a different x, y coordinate. During operation, the capacitive sensing circuit monitors changes in capacitance that occur at each of the electrodes.  The positions where changes occur and the
15       magnitude of those changes are used to help recognize the multiple touch events. A change in capacitance typically occurs at an electrode when a user places an object such as a finger in close proximity to the electrode, i.e., the object steals charge thereby affecting the capacitance.

20          In mutual capacitance, the transparent conductive medium is patterned into a group of spatially separated lines formed on two different layers.  Driving lines are formed on a first layer and sensing lines are formed on a second layer.  Although separated by being on different layers, the sensing lines traverse, intersect or cut across the driving lines thereby forming a capacitive coupling node.  The manner in
25       which the sensing lines cut across the driving lines generally depends on the coordinate system used.  For example, in a Cartesian coordinate system, the sensing lines are perpendicular to the driving lines thereby forming nodes with distinct x and y coordinates.  Alternatively, in a polar coordinate system, the sensing lines may be concentric circles and the driving lines may be radially extending lines (or vice
30       versa).  The driving lines are connected to a voltage source and the sensing lines are connected to capacitive sensing circuit.  During operation, a current is driven through one driving line at a time, and because of capacitive coupling, the current is carried through to the sensing lines at each of the nodes (e.g., intersection points). Furthermore, the sensing circuit monitors changes in capacitance that occurs at each

APL1P305                                   - 10 -

APLNDC00025479

of the nodes. The positions where changes occur and the magnitude of those changes are used to help recognize the multiple touch events. A change in capacitance typically occurs at a capacitive coupling node when a user places an object such as a finger in close proximity to the capacitive coupling node, i.e., the object steals charge

5   thereby affecting the capacitance.

By way of example, the signals generated at the nodes 42 of the touch screen 36 may be used to produce an image of the touch screen plane at a particular point in time. Referring to Fig. 3, each object in contact with a touch sensitive surface 38 of

10   the touch screen 36 produces a contact patch area 44. Each of the contact patch areas 44 covers several nodes 42. The covered nodes 42 detect surface contact while the remaining nodes 42 do not detect surface contact. As a result, a pixilated image of the touch screen plane can be formed. The signals for each contact patch area 44 may be grouped together to form individual images representative of the contact patch area

15   44. The image of each contact patch area 44 may include high and low points based on the pressure at each point. The shape of the image as well as the high and low points within the image may be used to differentiate contact patch areas 44 that are in close proximity to one another. Furthermore, the current image, and more particularly the image of each contact patch area 44 can be compared to previous

20   images to determine what action to perform in a host device.

Referring back to Fig. 2, the display arrangement 30 may be a stand alone unit or it may integrated with other devices. When stand alone, the display arrangement 32 (or each of its components) acts like a peripheral device (monitor) that includes its

25   own housing and that can be coupled to a host device through wired or wireless connections. When integrated, the display arrangement 30 shares a housing and is hard wired into the host device thereby forming a single unit. By way of example, the display arrangement 30 may be disposed inside a variety of host devices including but not limited to general purpose computers such as a desktop, laptop or tablet

30   computers, handhelds such as PDAs and media players such as music players, or peripheral devices such as cameras, printers and/or the like.

Fig. 4 is a multipoint touch method 45, in accordance with one embodiment of the present invention. The method generally begins at block 46 where multiple

APLNDC00025480

touches are received on the surface of the touch screen at the same time.  This may

for example be accomplished by placing multiple fingers on the surface of the touch

screen.  Following block 46, the process flow proceeds to block 47 where each of the

multiple touches is separately recognized by the touch screen. This may for example

5      be accomplished by multipoint capacitance sensors located within the touch screen.

Following block 47, the process flow proceeds to block 48 where the touch data

based on multiple touches is reported.  The touch data may for example be reported to

a host device such as a general purpose computer.


10          Fig. 5 is a block diagram of a computer system 50, in accordance with one

embodiment of the present invention.    The computer system 50 may correspond to

personal computer systems such as desktops, laptops, tablets or handhelds.  By way

of example, the computer system may correspond to any Apple or PC based computer

system.  The computer system may also correspond to public computer systems such

15     as information kiosks, automated teller machines (ATM), point of sale machines

(POS), industrial machines, gaming machines, arcade machines, vending machines,

airline e-ticket terminals, restaurant reservation terminals, customer service stations,

library terminals, learning devices, and the like.


20          As shown, the computer system 50 includes a processor 56 configured to

execute instructions and to carry out operations associated with the computer system

50.  For example, using instructions retrieved for example from memory, the

processor 56 may control the reception and manipulation of input and output data

between components of the computing system 50.  The processor 56 can be a single-

25     chip processor or can be implemented with multiple components.


            In most cases, the processor 56 together with an operating system operates to

execute computer code and produce and use data.  The computer code and data may

reside within a program storage block 58 that is operatively coupled to the processor

30     56.  Program storage block 58 generally provides a place to hold data that is being

used by the computer system 50.  By way of example, the program storage block may

include Read-Only Memory (ROM) 60, Random-Access Memory (RAM) 62, hard

disk drive 64 and/or the like.  The computer code and data could also reside on a

removable storage medium and loaded or installed onto the computer system when

APLNDC00025481

needed. Removable storage mediums include, for example, CD-ROM, PC-CARD, floppy disk, magnetic tape, and a network component.

5      The computer system 50 also includes an input/output (I/O) controller 66 that is operatively coupled to the processor 56. The (I/O) controller 66 may be integrated with the processor 56 or it may be a separate component as shown. The I/O controller 66 is generally configured to control interactions with one or more I/O devices. The I/O controller 66 generally operates by exchanging data between the processor and the I/O devices that desire to communicate with the processor. The I/O devices and

10     the I/O controller typically communicate through a data link 67. The data link 67 may be a one way link or two way link. In some cases, the I/O devices may be connected to the I/O controller 66 through wired connections. In other cases, the I/O devices may be connected to the I/O controller 66 through wireless connections. By way of example, the data link 67 may correspond to PS/2, USB, Firewire, IR, RF,

15     Bluetooth or the like.

       The computer system 50 also includes a display device 68 that is operatively coupled to the processor 56. The display device 68 may be a separate component (peripheral device) or it may be integrated with the processor and program storage to

20     form a desktop computer (all in one machine), a laptop, handheld or tablet or the like. The display device 68 is configured to display a graphical user interface (GUI) including perhaps a pointer or cursor as well as other information to the user. By way of example, the display device 68 may be a monochrome display, color graphics adapter (CGA) display, enhanced graphics adapter (EGA) display, variable-graphics-

25     array (VGA) display, super VGA display, liquid crystal display (e.g., active matrix, passive matrix and the like), cathode ray tube (CRT), plasma displays and the like.

       The computer system 50 also includes a touch screen 70 that is operatively coupled to the processor 56. The touch screen 70 is a transparent panel that is

30     positioned in front of the display device 68. The touch screen 70 may be integrated with the display device 68 or it may be a separate component. The touch screen 70 is configured to receive input from a user's touch and to send this information to the processor 56. In most cases, the touch screen 70 recognizes touches and the position and magnitude of touches on its surface. The touch screen 70 reports the touches to

APLNDC00025482

the processor 56 and the processor 56 interprets the touches in accordance with its programming.  For example, the processor 56 may initiate a task in accordance with a particular touch.

5         In accordance with one embodiment, the touch screen 70 is capable of tracking multiple objects, which rest on, tap on, or move across the touch sensitive surface of the touch screen at the same time.  The multiple objects may for example correspond to fingers and palms.  Because the touch screen is capable of tracking multiple objects, a user may perform several touch initiated tasks at the same time.
10  For example, the user may select an onscreen button with one finger, while moving a cursor with another finger.  In addition, a user may move a scroll bar with one finger while selecting an item from a menu with another finger.  Furthermore, a first object may be dragged with one finger while a second object may be dragged with another finger.  Moreover, gesturing may be performed with more than one finger.

15

        To elaborate, the touch screen 70 generally includes a sensing device 72 configured to detect an object in close proximity thereto and/or the pressure exerted thereon.  The sensing device 72 may be widely varied.  In one particular embodiment,
20  the sensing device 72 is divided into several independent and spatially distinct sensing points, nodes or regions 74 that are positioned throughout the touch screen 70.  The sensing points 74, which are typically hidden from view, are dispersed about the touch screen 70 with each sensing point 74 representing a different position on the surface of the touch screen 70 (or touch screen plane).  The sensing points 74 may be
25  positioned in a grid or a pixel array where each pixilated sensing point 74 is capable of generating a signal at the same time.  In the simplest case, a signal is produced each time an object is positioned over a sensing point 74.  When an object is placed over multiple sensing points 74 or when the object is moved between or over multiple sensing point 74, multiple signals are generated.

30

        The number and configuration of the sensing points 74 may be widely varied. The number of sensing points 74 generally depends on the desired sensitivity as well as the desired transparency of the touch screen 70.  More nodes or sensing points generally increases sensitivity, but reduces transparency (and vice versa).  With

APL1P305             - 14 -

APLNDC00025483

regards to configuration, the sensing points 74 generally map the touch screen plane into a coordinate system such as a Cartesian coordinate system, a Polar coordinate system or some other coordinate system. When a Cartesian coordinate system is used (as shown), the sensing points 74 typically correspond to x and y coordinates. When

5   a Polar coordinate system is used, the sensing points typically correspond to radial (r) and angular coordinates (θ).

The touch screen 70 may include a sensing circuit 76 that acquires the data from the sensing device 72 and that supplies the acquired data to the processor 56.

10  Alternatively, the processor may include this functionality. In one embodiment, the sensing circuit 76 is configured to send raw data to the processor 56 so that the processor 56 processes the raw data. For example, the processor 56 receives data from the sensing circuit 76 and then determines how the data is to be used within the computer system 50. The data may include the coordinates of each sensing point 74

15  as well as the pressure exerted on each sensing point 74. In another embodiment, the sensing circuit 76 is configured to process the raw data itself. That is, the sensing circuit 76 reads the pulses from the sensing points 74 and turns them into data that the processor 56 can understand. The sensing circuit 76 may perform filtering and/or conversion processes. Filtering processes are typically implemented to reduce a busy

20  data stream so that the processor 56 is not overloaded with redundant or non-essential data. The conversion processes may be implemented to adjust the raw data before sending or reporting them to the processor 56. The conversions may include determining the center point for each touch region (e.g., centroid).

25  The sensing circuit 76 may include a storage element for storing a touch screen program, which is a capable of controlling different aspects of the touch screen 70. For example, the touch screen program may contain what type of value to output based on the sensing points 74 selected (e.g., coordinates). In fact, the sensing circuit in conjunction with the touch screen program may follow a predetermined

30  communication protocol. As is generally well known, communication protocols are a set of rules and procedures for exchanging data between two devices. Communication protocols typically transmit information in data blocks or packets that contain the data to be transmitted, the data required to direct the packet to its destination, and the data that corrects errors that occur along the way. By way of

APLNDC00025484

example, the sensing circuit may place the data in a HID format (Human Interface Device).

The sensing circuit 76 generally includes one or more microcontrollers, each of which monitors one or more sensing points 74.   The microcontrollers may for example correspond to an application specific integrated circuit (ASIC), which works with firmware to monitor the signals from the sensing device 72 and to process the monitored signals and to report this information to the processor 56.

In accordance with one embodiment, the sensing device 72 is based on capacitance.  As should be appreciated, whenever two electrically conductive members come close to one another without actually touching, their electric fields interact to form capacitance. In most cases, the first electrically conductive member is a sensing point 74 and the second electrically conductive member is an object 80 such as a finger.  As the object 80 approaches the surface of the touch screen 70, a tiny capacitance forms between the object 80 and the sensing points 74 in close proximity to the object 80.  By detecting changes in capacitance at each of the sensing points 74 and noting the position of the sensing points, the sensing circuit can recognize multiple objects, and determine the location, pressure, direction, speed and acceleration of the objects 80 as they are moved across the touch screen 70.  For example, the sensing circuit can determine when and where each of the fingers and palm of one or more hands are touching as well as the pressure being exerted by the finger and palm of the hand(s) at the same time.

The simplicity of capacitance allows for a great deal of flexibility in design and construction of the sensing device 72.  By way of example, the sensing device 72 may be based on self capacitance or mutual capacitance.  In self capacitance, each of the sensing points 74 is provided by an individual charged electrode.  As an object approaches the surface of the touch screen 70, the object capacitive couples to those electrodes in close proximity to the object thereby stealing charge away from the electrodes.  The amount of charge in each of the electrodes are measured by the sensing circuit 76 to determine the positions of multiple objects when they touch the touch screen 70.  In mutual capacitance, the sensing device 72 includes a two layer grid of spatially separated lines or wires.  In the simplest case, the upper layer

APLNDC00025485

includes lines in rows while the lower layer includes lines in columns (e.g., orthogonal).  The sensing points 74 are provided at the intersections of the rows and columns.  During operation, the rows are charged and the charge capacitively couples to the columns at the intersection.  As an object approaches the surface of the touch

5   screen, the object capacitive couples to the rows at the intersections in close proximity to the object thereby stealing charge away from the rows and therefore the columns as well.  The amount of charge in each of the columns is measured by the sensing circuit76  to determine the positions of multiple objects when they touch the touch screen 70.

10

Fig. 6 is a partial top view of a transparent multiple point touch screen 100, in accordance with one embodiment of the present invention.  By way of example, the touch screen 100 may generally correspond to the touch screen shown in Figs. 2 and 4.  The multipoint touch screen 100 is capable of sensing the position and the pressure

15   of multiple objects at the same time.  This particular touch screen 100 is based on self capacitance and thus it includes a plurality of transparent capacitive sensing electrodes 102, which each represent different coordinates in the plane of the touch screen 100.  The electrodes 102 are configured to receive capacitive input from one or more objects touching the touch screen 100 in the vicinity of the electrodes 102.

20   When an object is proximate an electrode 102, the object steals charge thereby affecting the capacitance at the electrode 102.  The electrodes 102 are connected to a capacitive sensing circuit 104 through traces 106 that are positioned in the gaps 108 found between the spaced apart electrodes 102.  The electrodes 102 are spaced apart in order to electrically isolate them from each other as well as to provide a space for

25   separately routing the sense traces 106.  The gap 108 is preferably made small so as to maximize the sensing area and to minimize optical differences between the space and the transparent electrodes.

As shown, the sense traces 106 are routed from each electrode 102 to the sides

30   of the touch screen 100 where they are connected to the capacitive sensing circuit 104.  The capacitive sensing circuit 104 includes one or more sensor ICs 110 that measure the capacitance at each electrode 102 and that reports its findings or some form thereof to a host controller.  The sensor ICs 110 may for example convert the analog capacitive signals to digital data and thereafter transmit the digital data over a

APLNDC00025486

serial bus to a host controller.  Any number of sensor ICs may be used.  For example, a single chip may be used for all electrodes, or multiple chips may be used for a single or group of electrodes.  In most cases, the sensor ICs 110 report tracking signals, which are a function of both the position of the electrode 102 and the

5    intensity of the capacitance at the electrode 102.

The electrodes 102, traces 106 and sensing circuit 104 are generally disposed on an optical transmissive member 112.  In most cases, the optically transmissive member 112 is formed from a clear material such as glass or plastic.  The electrode

10   102 and traces 106 may be placed on the member 112 using any suitable patterning technique including for example, deposition, etching, printing and the like.  The electrodes 102 and sense traces 106 can be made from any suitable transparent conductive material.  By way of example, the electrodes 102 and traces 106 may be formed from indium tin oxide (ITO).  In addition, the sensor ICs 110 of the sensing

15   circuit 104 can be electrically coupled to the traces 106 using any suitable techniques.  In one implementation, the sensor ICs 110 are placed directly on the member 112 (flip chip).  In another implementation, a flex circuit is bonded to the member 112, and the sensor ICs 110 are attached to the flex circuit.  In yet another implementation, a flex circuit is bonded to the member 112, a PCB is bonded to the

20   flex circuit and the sensor ICs 110 are attached to the PCB.  The sensor ICs may for example be capcitance sensing ICs such as those manufactured by Synaptics of San Jose, CA, Fingerworks of Newark, DE or Alps of San Jose, CA.

The distribution of the electrodes 102 may be widely varied.  For example, the

25   electrodes 102 may be positioned almost anywhere in the plane of the touch screen 100.  The electrodes 102 may be positioned randomly or in a particular pattern about the touch screen 100.  With regards to the later, the position of the electrodes 102 may depend on the coordinate system used.  For example, the electrodes 102 may be placed in an array of rows and columns for Cartesian coordinates or an array of

30   concentric and radial segments for polar coordinates.  Within each array, the rows, columns, concentric or radial segments may be stacked uniformly relative to the others or they may be staggered or offset relative to the others.  Additionally, within each row or column, or within each concentric or radial segment, the electrodes 102 may be staggered or offset relative to an adjacent electrode 102.

APL1P305                                        - 18 -

APLNDC00025487

Furthermore, the electrodes 102 may be formed from almost any shape whether simple (e.g., squares, circles, ovals, triangles, rectangles, polygons, and the like) or complex (e.g., random shapes). Further still, the shape of the electrodes 102

5      may have identical shapes or they may have different shapes. For example, one set of electrodes 102 may have a first shape while a second set of electrodes 102 may have a second shape that is different than the first shape. The shapes are generally chosen to maximize the sensing area and to minimize optical differences between the gaps and the transparent electrodes.

10

In addition, the size of the electrodes 102 may vary according to the specific needs of each device. In some cases, the size of the electrodes 102 corresponds to about the size of a finger tip. For example, the size of the electrodes 102 may be on the order of 4-5 mm2. In other cases, the size of the electrodes 102 are smaller than

15     the size of the finger tip so as to improve resolution of the touch screen 100 (the finger can influence two or more electrodes at any one time thereby enabling interpolation). Like the shapes, the size of the electrodes 102 may be identical or they may be different. For example, one set of electrodes 102 may be larger than another set of electrodes 102. Moreover, any number of electrodes 102 may be used. The

20     number of electrodes 102 is typically determined by the size of the touch screen 100 as well as the size of each electrode 102. In most cases, it would be desirable to increase the number of electrodes 102 so as to provide higher resolution, i.e., more information can be used for such things as acceleration.

25     Although the sense traces 106 can be routed a variety of ways, they are typically routed in manner that reduces the distance they have to travel between their electrode 102 and the sensor circuit 104, and that reduces the size of the gaps 108 found between adjacent electrodes 102. The width of the sense traces 106 are also widely varied. The widths are generally determined by the amount of charge being

30     distributed there through, the number of adjacent traces 106, and the size of the gap 108 through which they travel. It is generally desirable to maximize the widths of adjacent traces 106 in order to maximize the coverage inside the gaps 108 thereby creating a more uniform optical appearance.

APLNDC00025488

In the illustrated embodiment, the electrodes 102 are positioned in a pixilated array. As shown, the electrodes 102 are positioned in rows 116 that extend to and from the sides of the touch screen 100. Within each row 116, the identical electrodes 102 are spaced apart and positioned laterally relative to one another (e.g., juxtaposed).

5      Furthermore, the rows 116 are stacked on top of each other thereby forming the pixilated array. The sense traces 106 are routed in the gaps 108 formed between adjacent rows 106. The sense traces 106 for each row are routed in two different directions. The sense traces 106 on one side of the row 116 are routed to a sensor IC 110 located on the left side and the sense traces 106 on the other side of the row 116

10     are routed to another sensor IC 110 located on the right side of the touch screen 100. This is done to minimize the gap 108 formed between rows 116. The gap 108 may for example be held to about 20 microns. As should be appreciated, the spaces between the traces can stack thereby creating a large gap between electrodes. If routed to one side, the size of the space would be substantially doubled thereby

15     reducing the resolution of the touch screen. Moreover, the shape of the electrode 102 is in the form of a parallelogram, and more particularly a parallogram with sloping sides.

Fig. 7 is a partial top view of a transparent multi point touch screen 120, in

20     accordance with one embodiment of the present invention. In this embodiment, the touch screen 120 is similar to the touch screen 100 shown in Fig. 6, however, unlike the touch screen 100 of Fig. 6, the touch screen 120 shown in Fig. 7 includes electrodes 122 with different sizes. As shown, the electrodes 122 located in the center of the touch screen 120 are larger than the electrodes 122 located at the sides of

25     the touch screen 120. In fact, the height of the electrodes 122 gets correspondingly smaller when moving from the center to the edge of the touch screen 120. This is done to make room for the sense traces 124 extending from the sides of the more centrally located electrodes 122. This arrangement advantageously reduces the gap found between adjacent rows 126 of electrodes 122. Although the height of each

30     electrode 122 shrinks, the height H of the row 126 as well as the width W of each electrode 122 stays the same. In one configuration, the height of the row 126 is substantially equal to the width of each electrode 122. For example, the height of the row 126 and the width of each electrode 122 may be about 4 mm to about 5 mm.

APLNDC00025489

Fig. 8 is a front elevation view, in cross section of a display arrangement 130, in accordance with one embodiment of the present invention. The display arrangement 130 includes an LCD display 132 and a touch screen 134 positioned

5    over the LCD display 132. The touch screen may for example correspond to the touch screen shown in Figs. 6 or 7. The LCD display 132 may correspond to any conventional LCD display known in the art. Although not shown, the LCD display 132 typically includes various layers including a fluorescent panel, polarizing filters, a layer of liquid crystal cells, a color filter and the like.

10

The touch screen 134 includes a transparent electrode layer 136 that is positioned over a glass member 138. The glass member 138 may be a portion of the LCD display 132 or it may be a portion of the touch screen 134. In either case, the glass member 138 is a relatively thick piece of clear glass that protects the display

15   132 from forces, which are exerted on the touch screen 134. The thickness of the glass member 138 may for example be about 2 mm. In most cases, the electrode layer 136 is disposed on the glass member 138 using suitable transparent conductive materials and patterning techniques such as ITO and printing.    Although not shown, in some cases, it may be necessary to coat the electrode layer 136 with a material of

20   similar refractive index to improve the visual appearance of the touch screen. As should be appreciated, the gaps located between electrodes and traces do not have the same optical index as the electrodes and traces, and therefore a material may be needed to provide a more similar optical index. By way of example, index matching gels may be used.

25

The touch screen 134 also includes a protective cover sheet 140 disposed over the electrode layer 136. The electrode layer 136 is therefore sandwiched between the glass member 138 and the protective cover sheet 140.   The protective sheet 140 serves to protect the under layers and provide a surface for allowing an object to slide

30   thereon. The protective sheet 140 also provides an insulating layer between the object and the electrode layer 136. The protective cover sheet 140 may be formed from any suitable clear material such as glass and plastic. The protective cover sheet 140 is suitably thin to allow for sufficient electrode coupling. By way of example, the thickness of the cover sheet 140 may be between about 0.3 -0.8 mm. In addition, the

APLNDC00025490

protective cover sheet 140 may be treated with coatings to reduce sticktion when touching and reduce glare when viewing the underlying LCD display 132. By way of example, a low sticktion/anti reflective coating 142 may be applied over the cover sheet 140. Although the electrode layer 136 is typically patterned on the glass

5    member 138, it should be noted that in some cases it may be alternatively or additionally patterned on the protective cover sheet 140.

Fig. 9 is a top view of a transparent multipoint touch screen 150, in accordance with another embodiment of the present invention. By way of example,

10   the touch screen 150 may generally correspond to the touch screen of Figs. 2 and 4. Unlike the touch screen shown in Figs. 6-8, the touch screen of Fig. 9 utilizes the concept of mutual capacitance rather than self capacitance. As shown, the touch screen 150 includes a two layer grid of spatially separated lines or wires 152. In most cases, the lines 152 on each layer are parallel one another. Furthermore, although in

15   different planes, the lines 152 on the different layers are configured to intersect or cross in order to produce capacitive sensing nodes 154, which each represent different coordinates in the plane of the touch screen 150. The nodes 154 are configured to receive capacitive input from an object touching the touch screen 150 in the vicinity of the node 154. When an object is proximate the node 154, the object steals charge

20   thereby affecting the capacitance at the node 154.

To elaborate, the lines 152 on different layers serve two different functions. One set of lines 152A drives a current therethrough while the second set of lines 152B senses the capacitance coupling at each of the nodes 154. In most cases, the top

25   layer provides the driving lines 152A while the bottom layer provides the sensing lines 152B. The driving lines 152A are connected to a voltage source (not shown) that separately drives the current through each of the driving lines 152A. That is, the stimulus is only happening over one line while all the other lines are grounded. They may be driven similarly to a raster scan. The sensing lines 152B are connected to a

30   capacitive sensing circuit (not shown) that continuously senses all of the sensing lines 152B (always sensing).

When driven, the charge on the driving line 152A capacitively couples to the intersecting sensing lines 152B through the nodes 154 and the capacitive sensing

APLNDC00025491

circuit senses all of the sensing lines 152B in parallel. Thereafter, the next driving line 152A is driven, and the charge on the next driving line 152A capacitively couples to the intersecting sensing lines 152B through the nodes 154 and the capacitive sensing circuit senses all of the sensing lines 152B in parallel. This happens

5    sequential until all the lines 152A have been driven. Once all the lines 152A have been driven, the sequence starts over (continuously repeats). In most cases, the lines152A are sequentially driven from one side to the opposite side.

The capacitive sensing circuit typically includes one or more sensor ICs that

10    measure the capacitance in each of the sensing lines 152B and that reports its findings to a host controller. The sensor ICs may for example convert the analog capacitive signals to digital data and thereafter transmit the digital data over a serial bus to a host controller. Any number of sensor ICs may be used. For example, a sensor IC may be used for all lines, or multiple sensor ICs may be used for a single or group of lines. In

15    most cases, the sensor ICs 110 report tracking signals, which are a function of both the position of the node 154 and the intensity of the capacitance at the node 154.

The lines 152 are generally disposed on one or more optical transmissive members 156 formed from a clear material such as glass or plastic. By way of example, the lines 152 may be placed on opposing sides of the same member 156 or

20    example, the lines 152 may be placed on opposing sides of the same member 156 or they may be placed on different members 156. The lines 152 may be placed on the member 156 using any suitable patterning technique including for example, deposition, etching, printing and the like. Furthermore, the lines152 can be made from any suitable transparent conductive material. By way of example, the lines may

25    be formed from indium tin oxide (ITO). The driving lines 152A are typically coupled to the voltage source through a flex circuit 158A, and the sensing lines 152B are typically coupled to the sensing circuit, and more particularly the sensor ICs through a flex circuit 158B. The sensor ICs may be attached to a printed circuit board (PCB). Alternatively, the sensor ICs may be placed directly on the member 156 thereby

30    eliminating the flex circuit 158B.

The distribution of the lines 152 may be widely varied. For example, the lines 152 may be positioned almost anywhere in the plane of the touch screen 150. The lines 152 may be positioned randomly or in a particular pattern about the touch screen

APLNDC00025492

150.  With regards to the later, the position of the lines 152 may depend on the coordinate system used.  For example, the lines 152 may be placed in rows and columns for Cartesian coordinates or concentrically and radially for polar coordinates.  When using rows and columns, the rows and columns may be placed at

5      various angles relative to one another.  For example, they may be vertical, horizontal or diagonal.

       Furthermore, the lines 152 may be formed from almost any shape whether rectilinear or curvilinear.  The lines on each layer may be the same or different.  For

10     example, the lines may alternate between rectilinear and curvilinear.  Further still, the shape of the opposing lines may have identical shapes or they may have different shapes.  For example, the driving lines may have a first shape while the sensing lines may have a second shape that is different than the first shape.  The geometry of the lines 152 (e.g., linewidths and spacing) may also be widely varied.  The geometry of

15     the lines within each layer may be identical or different, and further, the geometry of the lines for both layers may be identical or different.  By way of example, the linewidths of the sensing lines 152B to driving lines 152A may have a ratio of about 2:1.

20     Moreover, any number of lines 152 may be used.  It is generally believed that the number of lines is dependent on the desired resolution of the touch screen 150.  The number of lines within each layer may be identical or different. The number of lines is typically determined by the size of the touch screen as well as the desired pitch and linewidths of the lines 152.

25

       In the illustrated embodiment, the driving lines 152A are positioned in rows and the sensing lines 152B are positioned in columns that are perpendicular to the rows.  The rows extend horizontally to the sides of the touch screen 150 and the columns extend vertically to the top and bottom of the touch screen 150.

30     Furthermore, the linewidths for the set of lines 152A and 152B are different and the pitch for set of lines 152A and 152B are equal to one another.  In most cases, the linewidths of the sensing lines 152B are larger than the linewidths of the driving lines 152A.  By way of example, the pitch of the driving and sensing lines 152 may be about 5 mm, the linewidths of the driving lines 152A may be about 1.05 mm and the

APLNDC00025493

linewidths of the sensing lines 152B may be about 2.10 mm.  Moreover, the number
of lines 152 in each layer is different.  For example, there may be about 38 driving
lines and about 50 sensing lines.

5          As mentioned above, the lines in order to form semi-transparent conductors on
glass, film or plastic, may be patterned with an ITO material.  This is generally
accomplished by depositing an ITO layer over the substrate surface, and then by
etching away portions of the ITO layer in order to form the lines.  As should be
appreciated, the areas with ITO tend to have lower transparency than the areas

10    without ITO.  This is generally less desirable for the user as the user can distinguish
the lines from the spaces therebetween, i.e., the patterned ITO can become quite
visible thereby producing a touch screen with undesirable optical properties.  To
further exacerbate this problem, the ITO material is typically applied in a manner that
produces a relatively low resistance, and unfortunately low resistance ITO tends to be

15    less transparent than high resistance ITO.

          In order to prevent the aforementioned problem, the dead areas between the
ITO may be filled with indexing matching materials.  In another embodiment, rather
than simply etching away all of the ITO, the dead areas (the uncovered spaces) may

20    be subdivided into unconnected electrically floating ITO pads, i.e., the dead areas
may be patterned with spatially separated pads.  The pads are typically separated with
a minimum trace width.  Furthermore, the pads are typically made small to reduce
their impact on the capacitive measurements.  This technique attempts to minimize
the appearance of the ITO by creating a uniform optical retarder.  That is, by seeking

25    to create a uniform sheet of ITO, it is believed that the panel will function closer to a
uniform optical retarder and therefore non-uniformities in the visual appearance will
be minimized.  In yet another embodiment, a combination of index matching
materials and unconnected floating pads may be used.

30          Fig. 10 is a partial front elevation view, in cross section of a display
arrangement 170, in accordance with one embodiment of the present invention.  The
display arrangement 170 includes an LCD display 172 and a touch screen 174
positioned over the LCD display 170.  The touch screen may for example correspond
to the touch screen shown in Fig. 9.  The LCD display 172 may correspond to any

APLNDC00025494

conventional LCD display known in the art. Although not shown, the LCD display 172 typically includes various layers including a fluorescent panel, polarizing filters, a layer of liquid crystal cells, a color filter and the like.

5        The touch screen 174 includes a transparent sensing layer 176 that is positioned over a first glass member 178. The sensing layer 176 includes a plurality of sensor lines 177 positioned in columns (extend in and out of the page). The first glass member 178 may be a portion of the LCD display 172 or it may be a portion of the touch screen 174. For example, it may be the front glass of the LCD display 172

10       or it may be the bottom glass of the touch screen 174. The sensor layer 176 is typically disposed on the glass member 178 using suitable transparent conductive materials and patterning techniques.    In some cases, it may be necessary to coat the sensor layer 176 with material of similar refractive index to improve the visual appearance, i.e., make more uniform.

15

          The touch screen 174 also includes a transparent driving layer 180 that is positioned over a second glass member 182. The second glass member 182 is positioned over the first glass member 178. The sensing layer 176 is therefore sandwiched between the first and second glass members 178 and 182. The second

20       glass member 182 provides an insulating layer between the driving and sensing layers 176 and 180. The driving layer 180 includes a plurality of driving lines 181 positioned in rows (extend to the right and left of the page). The driving lines 181 are configured to intersect or cross the sensing lines 177 positioned in columns in order to form a plurality of capacitive coupling nodes 182. Like the sensing layer 176, the

25       driving layer 180 is disposed on the glass member using suitable materials and patterning techniques.    Furthermore, in some cases, it may be necessary to coat the driving layer 180 with material of similar refractive index to improve the visual appearance. Although the sensing layer is typically patterned on the first glass member, it should be noted that in some cases it may be alternatively or additionally

30       patterned on the second glass member.

          The touch screen 174 also includes a protective cover sheet 190 disposed over the driving layer 180. The driving layer 180 is therefore sandwiched between the second glass member 182 and the protective cover sheet 190. The protective cover

APLNDC00025495

sheet 190 serves to protect the under layers and provide a surface for allowing an object to slide thereon. The protective cover sheet 190 also provides an insulating layer between the object and the driving layer 180. The protective cover sheet is suitably thin to allow for sufficient coupling. The protective cover sheet 190 may be

5   formed from any suitable clear material such as glass and plastic. In addition, the protective cover sheet 190 may be treated with coatings to reduce sticktion when touching and reduce glare when viewing the underlying LCD display 172. By way of example, a low sticktion/anti reflective coating may be applied over the cover sheet 190. Although the line layer is typically patterned on a glass member, it should be

10   noted that in some cases it may be alternatively or additionally patterned on the protective cover sheet.

        The touch screen 174 also includes various bonding layers 192. The bonding layers 192 bond the glass members 178 and 182 as well as the protective cover sheet 190 together to form the laminated structure and to provide rigidity and stiffness to

15   the laminated structure. In essence, the bonding layers 192 help to produce a monolithic sheet that is stronger than each of the individual layers taken alone. In most cases, the first and second glass members 178 and 182 as well as the second glass member and the protective sheet 182 and 190 are laminated together using a

20   bonding agent such as glue. The compliant nature of the glue may be used to absorb geometric variations so as to form a singular composite structure with an overall geometry that is desirable. In some cases, the bonding agent includes an index matching material to improve the visual appearance of the touch screen 170.

25        With regards to configuration, each of the various layers may be formed with various sizes, shapes, and the like. For example, each of the layers may have the same thickness or a different thickness than the other layers in the structure. In the illustrated embodiment, the first glass member 178 has a thickness of about 1.1 mm, the second glass member 182 has a thickness of about 0.4 mm and the protective

30   sheet has a thickness of about 0.55 mm.. The thickness of the bonding layers 192 typically varies in order to produce a laminated structure with a desired height. Furthermore, each of the layers may be formed with various materials. By way of example, each particular type of layer may be formed from the same or different material. For example, any suitable glass or plastic material may be used for the glass

APLNDC00025496

members. In a similar manner, any suitable bonding agent may be used for the bonding layers 192.

5   Figs. 11A and 11B are partial top view diagrams of a driving layer 200 and a sensing layer 202, in accordance with one embodiment. In this embodiment, each of the layers 200 and 202 includes dummy features 204 disposed between the driving lines 206 and the sensing lines 208. The dummy features 204 are configured to optically improve the visual appearance of the touch screen by more closely matching the optical index of the lines. While index matching materials may improve the

10   visual appearance, it has been found that there still may exist some non-uniformities. The dummy features 204 provide the touch screen with a more uniform appearance. The dummy features 204 are electrically isolated and positioned in the gaps between each of the lines 206 and 208. Although they may be patterned separately, the dummy features 204 are typically patterned along with the lines 206 and 208.

15   Furthermore, although they may be formed from different materials, the dummy features 204 are typically formed with the same transparent conductive material as the lines as for example ITO to provide the best possible index matching. As should be appreciated, the dummy features will more than likely still produce some gaps, but these gaps are much smaller than the gaps found between the lines (many orders of

20   magnitude smaller). These gaps, therefore have minimal impact on the visual appearance. While this may be the case, index matching materials may be additionally applied to the gaps between the dummy features to further improve the visual appearance of the touch screen. The distribution, size, number, dimension, and shape of the dummy features may be widely varied.

25   Fig. 12 is a simplified diagram of a mutual capacitance circuit 220, in accordance with one embodiment of the present invention. The mutual capacitance circuit 220 includes a driving line 222 and a sensing line 224 that are spatially separated thereby forming a capacitive coupling node 226. The driving line 222 is

30   electrically coupled to a voltage source 228, and the sensing line 224 is electrically coupled to a capacitive sensing circuit 230. The driving line 222 is configured to carry a current to the capacitive coupling node 226, and the sensing line 224 is configured to carry a current to the capacitive sensing circuit 230. When no object is

APLNDC00025497

present, the capacitive coupling at the node 226 stays fairly constant.  When an object
232 such as a finger is placed proximate the node 226, the capacitive coupling
changes through the node 226 changes.  The object 232 effectively shunts some of the
field away so that the charge projected across the node 226 is less.  The change in
capacitive coupling changes the current that is carried by the sensing lines 224.  The
capacitive sensing circuit 230 notes the current change and the position of the node
226 where the current change occurred and reports this information in a raw or in
some processed form to a host controller.  The capacitive sensing circuit does this for
each node 226 at about the same time (as viewed by a user) so as to provide
multipoint sensing.

The sensing line 224 may contain a filter 236 for eliminating parasitic
capacitance 237, which may for example be created by the large surface area of the
row and column lines relative to the other lines and the system enclosure at ground
potential.  Generally speaking, the filter rejects stray capacitance effects so that a
clean representation of the charge transferred across the node 226 is outputted (and
not anything in addition to that).  That is, the filter 236 produces an output that is not
dependent on the parasitic capacitance, but rather on the capacitance at the node 226.
As a result, a more accurate output is produced.

Fig. 13 is a diagram of an inverting amplifier 240, in accordance with one
embodiment of the present invention.   The inverting amplifier 240 may generally
correspond to the filter 236 shown in Fig. 12. As shown, the inverting amplifier
includes a non inverting input that is held at a constant voltage (in this case ground),
an inverting input that is coupled to the node and an output that is coupled to the
capcitive sensing circuit 230.  The output is coupled back to the inverting input
through a capacitor.  During operation, the input from the node may be disturbed by
stray capacitance effects, i.e., parasitic capaciatnce.  If so, the inverting amplifier is
configured to drive the input back to the same voltage that it had been previously
before the stimulus.  As such, the value of the paraisitc capciatanec doesn't matter.

Fig. 14 is a block diagram of a capacitive sensing circuit 260, in accordance
with one embodiment of the present invention.  The capacitive sensing circuit 260
may for example correspond to the capacitive sensing circuits described in the

APLNDC00025498

previous figures.  The capacitive sensing circuit 260 is configured to receive input data from a plurality of sensing points 262 (electrode, nodes, etc.), to process the data and to output processed data to a host controller.

5        The sensing circuit 260 includes a multiplexer 264  (MUX).  The multiplexer 264 is a switch configured to perform time multiplexing.  As shown, the MUX 264 includes a plurality of independent input channels 266 for receiving signals from each of the sensing points 262 at the same time.  The MUX 264 stores all of the incoming signals at the same time, but sequentially releases them one at a time through an

10      output channel 268.

        The sensing circuit 260 also includes an analog to digital converter  270 (ADC) operatively coupled to the MUX 264 through the output channel 268.  The ADC 270 is configured to digitize the incoming analog signals sequentially one at a

15      time.  That is, the ADC 270 converts each of the incoming analog signals into outgoing digital signals.  The input to the ADC 270 generally corresponds to a voltage having a theoretically infinite number of values.  The voltage varies according to the amount of capacitive coupling at each of the sensing points 262.  The output to the ADC 270, on the other hand, has a defined number of states.  The states

20      generally have predictable exact voltages or currents.

        The sensing circuit 260 also includes a digital signal processor 272 (DSP) operatively coupled to the ADC 270 through another channel 274.  The DSP 272 is a programmable computer processing unit that works to clarify or standardize the

25      digital signals via high speed mathematical processing.  The DSP 274 is capable of differentiating between human made signals, which have order, and noise, which is inherently chaotic.  In most cases, the DSP performs filtering and conversion algorithms using the raw data.  By way of example, the DSP may filter noise events from the raw data, calculate the touch boundaries for each touch that occurs on the

30      touch screen at the same time, and thereafter determine the coordinates for each touch event.  The coordinates of the touch events may then be reported to a host controller where they can be compared to previous coordinates of the touch events to determine what action to perform in the host device.

APLNDC00025499

Fig. 15 is a flow diagram 280, in accordance with one embodiment of the present invention. The method generally begins at block 282 where a plurality of sensing points are driven. For example, a voltage is applied to the electrodes in self capacitance touch screens or through driving lines in mutual capacitance touch screens.

5    In the later, each driving line is driven separately. That is, the driving lines are driven one at a time thereby building up charge on all the intersecting sensing lines. Following block 282, the process flow proceeds to block 284 where the outputs (voltage) from all the sensing points are read. This block may include multiplexing and digitizing the outputs. For example, in mutual capacitance touch screens, all the

10   sensing points on one row are multiplexed and digitized and this is repeated until all the rows have been sampled. Following block 284, the process flow proceeds to block 286 where an image or other form of data (signal or signals) of the touch screen plane at one moment in time can be produced and thereafter analyzed to determine where the objects are touching the touch screen. By way of example, the boundaries

15   for each unique touch can be calculated, and thereafter the coordinates thereof can be found. Following block 286, the process flow proceeds to block 288 where the current image or signal is compared to a past image or signal in order to determine a change in pressure, location, direction, speed and acceleration for each object on the plane of the touch screen. This information can be subsequently used to perform an

20   action as for example moving a pointer or cursor or making a selection as indicated in block 290.

Fig. 16 is a flow diagram of a digital signal processing method 300, in accordance with one embodiment of the present invention. By way of example, the

25   method may generally correspond to block 286 shown and described in Fig. 15. The method 300 generally begins at block 302 where the raw data is received. The raw data is typically in a digitized form, and includes values for each node of the touch screen. The values may be between 0 and 256 where 0 equates to the highest capacitive coupling (no touch pressure) and 256 equates to the least capacitive

30   coupling (full touch pressure). An example of raw data at one point in time is shown in Fig. 17A. As shown in Fig. 17A, the values for each point are provided in gray scale where points with the least capacitive coupling are shown in white and the points with the highest capacitive coupling are shown in black and the points found between the least and the highest capacitive coupling are shown in gray.

APL1P305                                    - 31 -

Following block 302, the process flow proceeds to block 304 where the raw data is filtered. As should be appreciated, the raw data typically includes some noise. The filtering process is configured to reduce the noise. By way of example, a noise algorithm may be run that removes points that aren't connected to other points. Single or unconnected points generally indicate noise while multiple connected points generally indicate one or more touch regions, which are regions of the touch screen that are touched by objects. An example of a filtered data is shown in Fig. 17B. As shown, the single scattered points have been removed thereby leaving several concentrated areas.

Following block 304, the process flow proceeds to block 306 where gradient data is generated. The gradient data indicates the topology of each group of connected points. The topology is typically based on the capacitive values for each point. Points with the lowest values are steep while points with the highest values are shallow. As should be appreciated, steep points indicate touch points that occurred with greater pressure while shallow points indicate touch points that occurred with lower pressure. An example of gradient data is shown in Fig. 17C.

Following block 306, the process flow proceeds to block 308 where the boundaries for touch regions are calculated based on the gradient data. In general, a determination is made as to which points are grouped together to form each touch region. An example of the touch regions is shown in Fig. 17D.

In one embodiment, the boundaries are determined using a watershed algorithm. Generally speaking, the algorithm performs image segmentation, which is the partitioning of an image into distinct regions as for example the touch regions of multiple objects in contact with the touchscreen. The concept of watershed initially comes from the area of geograpgy and more particularly topography where a drop of water falling on a relief follows a descending path and eventually reaches a minimum, and where the watersheds are the divide lines of the domains of attracting drops of water. Herein, the watershed lines represent the location of pixels, which best separate different objects touching the touch screen. Watershed algorithms can be widely varied. In one particular implementation, the watershed algorithm includes

APLNDC00025501

forming paths from low points to a peak (based on the magnitude of each point), classifying the peak as an ID label for a particular touch region, associating each point (pixel) on the path with the peak.  These steps are performed over the entire image map thus carving out the touch regions associated with each object in contact

5    with the touchscreen.

Following block 308, the process flow proceeds to block 310 where the coordinates for each of the touch regions are calculated.  This may be accomplished by performing a centroid calculation with the raw data associated with each touch

10    region.  For example, once the touch regions are determined, the raw data associated therewith may be used to calculate the centroid of the touch region.  The centroid may indicate the central coordinate of the touch region.  By way of example, the X and Y centroids may be found using the following equations:

15    $X_c = \Sigma Z^* x / \Sigma Z$;  and
      $Y_c = \Sigma Z^* y / \Sigma Z$,

      where  $X_c$ represents the x centroid of the touch region
             $Y_c$ represents the y centroid of the touch region
20           x represents the x coordinate of each pixel or point in the touch region
             y represents the y coordinate of each pixel or point in the touch region
             Z represents the magnitude (capacitance value) at each pixel or point

. An example of a centroid calculation for the touch regions is shown in Fig.
25    17E.  As shown, each touch region represents a distinct x and y coordinate.  These coordinates may be used to perform multipoint tracking as indicated in block 312. For example, the coordinates for each of the touch regions may be compared with previous coordinates of the touch regions to determine positioning changes of the objects touching the touch screen or whether or not touching objects have been added
30    or subtracted or whether a particular object is being tapped.

Figs. 18 and 19 are side elevation views of an electronic device 350, in accordance with multiple embodiments of the present invention.  The electronic device 350 includes an LCD display 352 and a transparent touch screen 354

APL1P305                            - 33 -

APLNDC00025502

positioned over the LCD display 352.    The touch screen 354 includes a protective sheet 356, one or more sensing layers 358, and a bottom glass member 360.  In this embodiment, the bottom glass member 360 is the front glass of the LCD display 352. Further, the sensing layers 358 may be configured for either self or mutual

5    capacitance as described above.  The sensing layers 358 generally include a plurality of interconnects at the edge of the touch screen for coupling the sensing layer 358 to a sensing circuit (not shown).  By way of example, the sensing layer 358 may be electrically coupled to the sensing circuit through one or more flex circuits 362, which are attached to the sides of the touch screen 354.

10

As shown, the LCD display 352 and touch screen 354 are disposed within a housing 364.  The housing 364 serves to cover and support these components in their assembled position within the electronic device 350.  The housing 364 provides a space for placing the LCD display 352 and touch screen 354 as well as an opening

15    366 so that the display screen can be seen through the housing 364.  In one embodiment, as shown in Fig. 18, the housing 364 includes a façade 370 for covering the sides the LCD display 352 and touch screen 354.  Although not shown in great detail, the façade 370 is positioned around the entire perimeter of the LCD display 352 and touch screen 354.  The façade 370 serves to hide the interconnects leaving

20    only the active area of the LCD display 352 and touch screen 354 in view.

In another embodiment, as shown in Fig. 19, the housing 364 does not include a façade 370, but rather a mask 372 that is printed on interior portion of the top glass 374 of the touch screen 354 that extends between the sides of the housing 364.  This

25    particular arrangement makes the mask 372 look submerged in the top glass 356.  The mask 372 serves the same function as the façade 370, but is a more elegant solution. In one implementation, the mask 372 is a formed from high temperature black polymer.  In the illustrated embodiment of Fig. 19, the touch screen 354 is based on mutual capacitance sensing and thus the sensing layer 358 includes driving lines 376

30    and sensing lines 378.  The driving lines 376 are disposed on the top glass 356 and the mask 372, and the sensing lines 378 are disposed on the bottom glass 360.  The driving lines and sensing lines 376 and 378 are insulated from one another via a spacer 380.  The spacer 380 may for example be a clear piece of plastic with optical matching materials retained therein or applied thereto.

APLNDC00025503

In one embodiment and referring to both Figs. 18 and 19, the electronic device 350 corresponds to a tablet computer. In this embodiment, the housing 364 also encloses various integrated circuit chips and other circuitry 382 that provide
5    computing operations for the tablet computer. By way of example, the integrated circuit chips and other circuitry may include a microprocessor, motherboard, Read-Only Memory (ROM), Random-Access Memory (RAM), a hard drive, a disk drive, a battery, and various input/output support devices.

10    While this invention has been described in terms of several preferred embodiments, there are alterations, permutations, and equivalents, which fall within the scope of this invention. For example, although the touch screen was primarily directed at capacitive sensing, it should be noted that some or all of the features described herein may be applied to other sensing methodologies. It should also be
15    noted that there are many alternative ways of implementing the methods and apparatuses of the present invention. It is therefore intended that the following appended claims be interpreted as including all such alterations, permutations, and equivalents as fall within the true spirit and scope of the present invention.

20

APLNDC00025504

**What is claimed is:**

1.     A touch panel having a transparent capacitive sensing medium configured to detect multiple touches or near touches that occur at the same time and at distinct

5    locations in the plane of the touch panel and to produce distinct signals representative of the location of the touches on the plane of the touch panel for each of the multiple touches.

2.     The touch panel as recited in claim 1 wherein the transparent sensing medium

10   includes a pixilated array of transparent capacitance sensing nodes.

3.     The touch panel as recited in claim 1 wherein the transparent capacitive sensing medium comprises:
      a transparent electrode layer, the electrode layer including a plurality of

15   electrically isolated electrodes and electrode traces formed from a transparent conductive material, each of the electrodes being placed at different locations in the plane of the touch panel, each of the electrodes having an individual trace for operatively coupling to capacitive monitoring circuitry.

20   4.     The touch panel as recited in claim 3 further including one or more integrated circuits for monitoring the capacitance at each of the electrodes, the integrated circuits being operatively coupled to the electrodes via the traces.

5.     The touch panel as recited in claim 3 wherein the electrodes are placed in

25   rows and columns.

6.     The touch panel as recited in claim 3 wherein the electrodes and traces are formed from indium tin oxide (ITO).

30   7.     The touch panel as recited in claim 1 wherein the transparent capacitive sensing medium comprises:
      a first layer having a plurality of transparent conductive lines that are electrically isolated from one another; and

APLNDC00025505

a second layer spatially separated from the first layer and having a plurality of transparent conductive lines that are electrically isolated from one another, the second conductive lines being positioned transverse to the first conductive lines, the intersection of transverse lines being positioned at different locations in the plane of
5    the touch panel, each of the conductive lines being operatively coupled to capacitive monitoring circuitry.

8.    The touch panel as recited in claim 7 wherein the conductive lines on each of the layers are substantially parallel to one another.
10

9.    The touch panel as recited in claim 8 wherein the conductive lines on different layers are substantially perpendicular to one another.

10.    The touch panel as recited in claim 7 wherein the transparent conductive lines
15   of the first layer are disposed on a first glass member, and wherein the transparent conductive lines of the second layer are disposed on a second glass member, the first glass member being disposed over the second glass member.

11.    The touch panel as recited in claim 10 further including a third glass member
20   disposed over the first glass member, the first and second glass members being attached to one another via an adhesive layer, the third glass member being attached to the first glass member via another adhesive layer.

12.    The touch panel as recited in claim 7 wherein the conductive lines are formed
25   from indium tin oxide (ITO).

13.    A display arrangement comprising:
      a display having a screen for displaying a graphical user interface;
      a transparent touch panel allowing the screen to be viewed therethrough and
30   capable of recognizing multiple touch events that occur at different locations on the touch sensitive surface of the touch screen at the same time and to output this information to a host device.

APLNDC00025506

14.     The display arrangement as recited in claim 13 wherein the touch screen includes a multipoint sensing arrangement configured to simultaneously detect and monitor touches and the magnitude of those touches at distinct points across the touch sensitive surface of the touch screen.

5

15.     The display arrangement as recited in claim 14 wherein the multipoint sensing arrangement provides a plurality of transparent capacitive sensing nodes that work independent of one another and that represent different points on the touch screen.

10      16.     The display arrangement as recited in claim 15 wherein the capacitive sensing nodes are formed with a transparent conductive medium.

17.     The display arrangement as recited in claim 16 wherein the transparent conductive medium corresponds to indium tin oxide (ITO).

15

18.     The display arrangement as recited in claim 16 wherein the capacitive sensing nodes are based on self capacitance.

19.     The display arrangement as recited in claim 18 wherein the transparent

20      conductive medium is patterned into electrically isolated electrodes and traces, each electrode representing a different coordinate in the plane of the touch screen, and the traces connecting the electrodes to a capacitive sensing circuit.

20.     The display arrangement as recited in claim 16 wherein the capacitive sensing

25      nodes are based on mutual capacitance.

21.     The display arrangement as recited in claim 18 wherein the transparent conductive medium is patterned into a group of spatially separated lines formed on two different layers, driving lines are formed on a first layer and sensing lines are

30      formed on a second layer, the sensing lines being configured to traverse across the driving lines in order to form a capacitive sensing node, the driving lines being connected to a voltage source and the sensing lines being connected to a capacitive sensing circuit, the voltage source driving a current through one driving line at a time

APLNDC00025507

and because of capacitive coupling, the current is carried through to the sensing lines at each of the capacitive sensing nodes.

22.     The display arrangement as recited in claim 16 wherein the capacitive sensing nodes are coupled to a capacitive sensing circuit, and wherein the capacitive sensing circuit monitors changes in capacitance that occurs at each of the capacitive sensing nodes, the position where changes occur and the magnitude of those changes being used to help recognize the multiple touch events.

23.     The display arrangement as recited in claim 22 wherein the capacitive sensing circuit comprises:

a multiplexer that receives signals from each of the capacitive sensing nodes at the same time, stores all the signals and sequentially releases the signals one at a time through an output channel;

an analog to digital converter operatively coupled to the MUX through the output channel, the analog to digital converter being configured to convert the incoming analog signals into outgoing digital signals;

a digital signal processor operatively coupled to the analog to digital converter, the DSP filtering noise events from the raw data, calculating the touch boundaries for each touch that occurs on the touch screen at the same time and thereafter determining the coordinates for each touch.

24.     The display arrangement as recited in claim 13 wherein the touch panel comprises:

a glass member disposed over the screen of the display;

a transparent conductive layer disposed over the glass member, the conductive layer including a pixilated array of electrically isolated electrodes;

a transparent cover sheet disposed over the electrode layer; and

one or more sensor integrated circuits operatively coupled to the electrodes.

25.     The display arrangement as recited in claim 13 wherein the touch panel comprises:

a first glass member disposed over the screen of the display;

APLNDC00025508

a first transparent conductive layer disposed over the first glass member, the first transparent conductive layer comprising a plurality of spaced apart parallel lines having the same pitch and linewidths;

a second glass member disposed over the first transparent conductive

5   layer;

a second transparent conductive layer disposed over the second glass member, the second transparent conductive layer comprising a plurality of spaced apart parallel lines having the same pitch and linewidths, the parallel lines of the second transparent conductive layer being substantially perpendicular to the parallel

10   lines of the first transparent conductive layer;

a third glass member disposed over the second transparent conductive layer; and

one or more sensor integrated circuits operatively coupled to the lines.

15   26.    The display arrangement as recited in claim 25 further including dummy features disposed in the space between the parallel lines, the dummy features optically improving the visual appearance of the touch screen by more closely matching the optical index of the lines.

20   27.    A computer readable medium including at least computer code executable by a computer, the computer code comprising:

receiving multiple touches on the surface of a transparent touch screen at the same time;

separately recognizing each of the multiple touches; and

25          reporting touch data based on the recognized multiple touches.

28.    A computer system comprising:

a processor configured to execute instructions and to carry out operations associated with the computer system;

30          a display device that is operatively coupled to the processor;

a touch screen that is operatively coupled to the processor, the touch screen being a substantially transparent panel that is positioned in front of the display, the touch screen being configured to track multiple objects, which rest on, tap on or move across the touch screen at the same time, the touch screen including a capacitive

APL1P305                         - 40 -

APLNDC00025509

sensing device that is divided into several independent and spatially distinct sensing points that are positioned throughout the plane of the touch screen, each sensing point being capable of generating a signal at the same time, the touch screen also including a sensing circuit that acquires data from the sensing device and that supplies the acquired data to the processor.

29.     A touch screen method comprising:

driving a plurality of sensing points;

reading the outputs from all the sensing lines connected to the sensing points;

producing and analyzing an image of the touch screen plane at one moment in time in order to determine where objects are touching the touch screen; and

comparing the current image to a past image in order to determine a change at the objects touching the touch screen.

30.     A digital signal processing method, comprising:

receiving raw data, the raw data including values for each transparent capacitive sensing node of a touch screen;

filtering the raw data;

generating gradient data;

calculating the boundaries for touch regions base on the gradient data; and

calculating the coordinates for each touch region.

31.     The method as recited in claim 30 wherein the boundaries are calculated using a watershed algorithm.

APLNDC00025510

# MULTIPOINT TOUCHSCREEN

## ABSTRACT OF THE DISCLOSURE

5       A touch panel having a transparent capacitive sensing medium configured to detect multiple touches or near touches that occur at the same time and at distinct locations in the plane of the touch panel and to produce distinct signals representative of the location of the touches on the plane of the touch panel for each of the multiple touches is disclosed.

10

APLNDC00025511



FIG. 1A

FIG. 1B

Row projection
signal

Column projection
signal

APLNDC00025512



FIG. 2

APLNDC00025513



FIG. 3

APLNDC00025514



45

RECEIVE MULTIPLE
TOUCHES ON
SURFACE OF TOUCH
SCREEN

46

RECOGNIZE EACH OF
THE MULTIPLE
TOUCHES

47

REPORT TOUCH DATA
BASED ON MULTIPLE
TOUCHES

48

FIG. 4



FIG. 5

APLNDC00025515



FIG. 6A

FIG. 6B



FIG. 8A

FIG. 8B

APLNDC00025516



FIG. 7



150

156

158B

152B

152A

158A

154

FIG. 9

170

190

181

192

180

182

192

176

174

177

178

172

FIG. 10

APLNDC00025518



FIG. 11A

FIG. 11B

APLNDC00025519



FIG. 12



FIG. 13

APLNDC00025520



FIG. 14

APLNDC00025521



280

282
DRIVE SENSING POINTS

284
READ OUTPUT FROM SENSING
POINTS

286
PRODUCE AND ANALYZE
TOUCHSCREEN DATA

288
COMPARE CURRENT DATA TO PAST
DATA

290
PERFORM ACTION BASED ON
COMPARISON

FIG. 15



300

302
RECEIVE RAW DATA

304
FILTER RAW DATA

306
GENERATE GRADIENT DATA

308
CALCULATE BOUNDARIES FOR TOUCH REGIONS

310
CALCULATE COORDINATES FOR EACH TOUCH REGION

312
PERFORM MULTIPOINT TRACKING

FIG. 16

APLNDC00025523

**RAW DATA INCLUDING NOISE**



**FIG. 17A**

**FILTERED DATA**



**FIG. 17B**

**GRADIENT DATA**



**FIG. 17C**

**TOUCH REGIONS**



**FIG. 17D**

**COORDINATES OF TOUCH REGIONS**



**FIG. 17E**

APLNDC00025524



FIG. 18



FIG. 19

APLNDC00025525

# DECLARATION AND POWER OF ATTORNEY
# FOR ORIGINAL U.S. PATENT APPLICATION

Attorney's Docket No. APL1P305/P3266

As a below-named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe that I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled: MULTIPOINT TOUCHSCREEN the specification of which,

(check one)

1. ☒ is attached hereto.

2. ☐ was filed on _____ as
   U.S. Application No. _____
   and was amended on _____.

3. ☐ was filed on _____ as
   International PCT Application No. _____.
   and was amended on _____.

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the patentability of this application in accordance with Title 37, CFR § 1.56.

**Prior Foreign Application(s)**

I hereby claim foreign priority benefits under Title 35, United States code, § 119(a)-(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate, or § 365(a) of any PCT International application which designated at least one country other than the United States, listed below and have identified below, by checking the box, any foreign application for patent or inventor's certificate, or PCT International application having a filing date before that of the application on which priority is claimed:

Priority Benefits Claimed?
Yes ____ No ____

_____   _____   _____
(Application No.)                      (Country)                           (Filing Date)

Yes ____ No ____

_____   _____   _____
(Application No.)                      (Country)                           (Filing Date)

**Provisional Application(s)**

I hereby claim the benefit under 35 U.S.C. §119(e) of any United States provisional application(s) listed below:

_____   _____
(Application No.)                      (Filing Date)

_____   _____
(Application No.)                      (Filing Date)

APLNDC00025526

**Prior U.S. Application(s)**

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s), or § 365(c) of any PCT International application designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of Title 35, United States Code, § 112, I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56 which became available between the filing date of the prior application and the national or PCT international filing date of this application:

_____       _____       _____
(Application No.)                          (Filing Date)                              (Status - patented, pending, abandoned)

_____       _____       _____
(Application No.)                          (Filing Date)                              (Status - patented, pending, abandoned)

**Power of Attorney**

And I hereby appoint the law firm of **Beyer Weaver & Thomas, LLP** and all practitioners who are associated with the Customer Number 022434 as my principal attorneys to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith.

**Customer Number:  022434**

Direct Correspondence To:

```
22434
```

**Quin C. Hoellwarth at telephone number (650) 961-8300**

Direct Telephone Calls To:

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

| | |
|---|---|
| Typewritten Full Name of Sole or First Inventor: _Steve Hotelling_ | Citizenship: _USA_ |
| **Inventor's signature:** | Date of Signature: _5/5/04_ |
| Residence:        (City)    _San Jose_ | (State/Country)    _CA/USA_ |
| Post Office Address:   _1351 Hidden Mine Road, San Jose, CA  95120_ | |

| | |
|---|---|
| Second Inventor:    _Joshua A. Strickon_ | Citizenship: _USA_ |
| **Inventor's signature:** | Date of Signature: _5/5/04_ |
| Residence:        (City)    _San Jose_ | (State/Country)    _CA/USA_ |
| Post Office Address:   _333 Santana Row #212, San Jose, CA  95128_ | |

Page 2

Atty. Dkt. No.: APL1P305/P3266

(Revised 03/00)

APLNDC00025527

Cont.

| | | | | |
|---|---|---|---|---|
| Third Inventor: | Brian Q. Huppi | | Citizenship: | USA |
| **Inventor's signature:** | | | Date of Signature: | 5/5/04 |
| Residence:   (City) | San Francisco | | (State/Country) | CA/USA |
| Post Office Address: | 101#2 28th Street, San Francisco, CA 94131 | | | |

APLNDC00025528

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

05/11/2004 HMARZI1  00000078 10840862

```
01 FC:1001                770.00 OP
02 FC:1201                258.00 OP
03 FC:1202                198.00 OP
```

PTO-1556
(5/87)

*U.S. Government Printing Office: 2002 — 489-267/69033

APLNDC00025529

# PATENT APPLICATION FEE DETERMINATION RECORD
## Effective October 1, 2003

Application or Docket Number

10840862

## CLAIMS AS FILED - PART I

|  | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 31 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 3 | minus 20= | * | 11 |
| INDEPENDENT CLAIMS | 6 | minus 3 = | * | 3 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

SMALL ENTITY TYPE ☐  OR  OTHER THAN SMALL ENTITY

| RATE | FEE | | RATE | FEE |
|---|---|---|---|---|
| BASIC FEE | 385.00 | OR | BASIC FEE | 770.00 |
| X$ 9= | | OR | X$18= | 198 |
| X43= | | OR | X86= | 258 |
| +145= | | | +290= | |
| TOTAL | | OR | TOTAL | 1226 |

* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

| | (Column 1) | | (Column 2) | (Column 3) |
|---|---|---|---|---|
| AMENDMENT A | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA |
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

SMALL ENTITY  OR  OTHER THAN SMALL ENTITY

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X43= | | OR | X86= | |
| +145= | | OR | +290= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| | (Column 1) | | (Column 2) | (Column 3) |
|---|---|---|---|---|
| AMENDMENT B | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA |
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X43= | | OR | X86= | |
| +145= | | OR | +290= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| | (Column 1) | | (Column 2) | (Column 3) |
|---|---|---|---|---|
| AMENDMENT C | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA |
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X43= | | OR | X86= | |
| +145= | | OR | +290= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875  (Rev. 10/03)

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

APLNDC00025530

JUL. 28. 2004 12:21PM   16509618301                           NO. 233   P. 5



# DECLARATION AND POWER OF ATTORNEY
# FOR ORIGINAL U.S. PATENT APPLICATION

Attorney's Docket No. APL1P305/P3266

As a below-named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe that I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled: MULTIPOINT TOUCHSCREEN the specification of which,

(check one)      1. ☒ is attached hereto.

2. ☐ was filed on _____ as
        U.S. Application No. _____
        and was amended on _____.

3. ☐ was filed on _____ as
        International PCT Application No. _____
        and was amended on _____.

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the patentability of this application in accordance with Title 37, CFR § 1.56.

**Prior Foreign Application(s)**

I hereby claim foreign priority benefits under Title 35, United States code, § 119(a)-(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate, or § 365(a) of any PCT International application which designated at least one country other than the United States, listed below and have identified below, by checking the box, any foreign application for patent or inventor's certificate, or PCT International application having a filing date before that of the application on which priority is claimed:

Priority Benefits Claimed?
Yes ___ No ___

_____   _____   _____
(Application No.)            (Country)                  (Filing Date)

Yes ___ No ___

_____   _____   _____
(Application No.)            (Country)                  (Filing Date)

**Provisional Application(s)**

I hereby claim the benefit under 35 U.S.C. §119(e) of any United States provisional application(s) listed below:

_____        _____
(Application No.)                 (Filing Date)

_____        _____
(Application No.)                 (Filing Date)

Atty. Dkt. No.: APL1P305/P3266              Page 1
(Revised 03/00)

BEST AVAILABLE COPY

APLNDC00025531

JUL. 28. 2004 12:21PM 16509618301                                    NO. 233    P. 6

COPY

**Prior U.S. Application(s)**

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s), or § 365(c) of any PCT International application designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of Title 35, United States Code, § 112, I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56 which became available between the filing date of the prior application and the national or PCT international filing date of this application:

| (Application No.) | (Filing Date) | (Status - patented, pending, abandoned) |

| (Application No.) | (Filing Date) | (Status - patented, pending, abandoned) |

**Power of Attorney**

And I hereby appoint the law firm of Beyer Weaver & Thomas, LLP and all practitioners who are associated with the Customer Number 022434 as my principal attorneys to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith.

Direct Correspondence To:                    **Customer Number: 022434**

**22434**

Direct Telephone Calls To:              **Quin C. Hoellwarth at telephone number (650) 961-8300**

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

| | | | |
|---|---|---|---|
| Typewritten Full Name of Sole or First Inventor: | Steve Hotelling | Citizenship: | USA |
| Inventor's signature: | | Date of Signature: | 5/5/04 |
| Residence:    (City) | San Jose | (State/Country) | CA/USA |
| Post Office Address: | 1351 Hidden Mine Road, San Jose, CA 95120 | | |

| | | | |
|---|---|---|---|
| Second Inventor: | Joshua A. Strickon | Citizenship: | USA |
| Inventor's signature: | | Date of Signature: | 5/5/04 |
| Residence:    (City) | San Jose | (State/Country) | CA/USA |
| Post Office Address: | 333 Santana Row #212, San Jose, CA 95128 | | |

Atty. Dkt. No.: APL1P305/P3266                    Page 2

(Revised 03/00)

BEST AVAILABLE COPY

APLNDC00025532



Cont.

| | | | |
|---|---|---|---|
| Third Inventor: | Brian O. Huppi | Citizenship: | USA |
| Inventor's signature: | | Date of Signature: | 5/5/04 |
| Residence:   (City) | San Francisco | (State/Country) | CA/USA |
| Post Office Address: | 101#2 28th Street, San Francisco, CA  94131 | | |

Atty. Dkt. No.: APL1P305/P3266                    Page 3

(Revised 03/00)

BEST AVAILABLE COPY

APLNDC00025533

# BEYER WEAVER & THOMAS, LLP

### INTELLECTUAL PROPERTY LAW

590 W. El Camino Real, Mountain View, CA 94040
Telephone: (650) 961-8300    Facsimile: (650) 961-8301
www.beyerlaw.com

## FACSIMILE COVER SHEET

### July 28, 2004

**Receiver:**   **Office of Initial Examination's Filing Receipt Correction**
**United States Patent and Trademark Office**

**TEL #:**

**FAX # :**   **703-746-9195**

**Sender:**   Quin C. Hoellwarth, Reg. No. 45,738

**Re:**   Request for Corrected Filing Receipt (1 pg.)
Copy of Filing Receipt (2 pgs.)
Copy of Declaration and Power of Attorney (3 pgs.)
Copy of Cover Page of Application as Filed (1 pgs.)
Application No. 10/840,862
Attorney Docket No. APL1P305

Pages Including Cover Sheet(s): 8

**MESSAGE:**

**CONFIDENTIALITY NOTE**
The information contained in this facsimile (FAX) message is legally privileged and confidential information intended
only for the use of the receiver or firm named above. If the reader of this message is not the intended receiver, you are
hereby notified that any dissemination, distribution or copy of this FAX is strictly prohibited. If you have received this
FAX in error, please immediately notify the sender at the telephone number provided above and return the original
message to the sender at the address above via the United States Postal Service. Thank you.

APLNDC00025534

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: Hotelling et al.

Application No.: 10/840,862

Filed: May 6, 2004

Title: MULTIPOINT TOUCHSCREEN

Attorney Docket No.: APL1P305/P3266

Examiner: Unassigned

Group: 2673

CERTIFICATE OF FACSIMILE TRANSMISSION
I hereby certify that this correspondence is being transmitted by facsimile
to fax number 703-746-9195 to the U.S. Patent and Trademark Office on
July 28, 2004.

Signed:  _Agnes F Spence_
              Agnes Spence

## REQUEST FOR CORRECTED FILING RECEIPT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Enclosed is a copy of the Filing Receipt for the above-identified patent application.
Please reprint the Filing Receipt as follows and mail the corrected copy to the undersigned.

Change the third inventor's name from "Brian O. Huppi" to --Brian Q. Huppi--.

A copy of the Declaration and Power of Attorney and the cover page of the patent
application as filed are attached.

Since this is a Patent Office typographical error, no fee should be due. However, the
Commissioner is authorized to charge any fees that may be due to Deposit Account 500388
(Order No. APL1P305).

Respectfully submitted,
BEYER WEAVER & THOMAS, LLP

_Hoellwarth_

Quin C. Hoellwarth
Registration No. 45,738

P.O. Box 778
Berkeley, CA 94704-0778
(650) 961-8300

APLNDC00025535

JUL. 28. 2004 12:20PM   16509618301                                        NO. 233   P. 3
                                                                            Page 1 of 2



 **UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPL NO. | FILING OR 371 (c) DATE | ART UNIT | FIL FEE REC'D | ATTY. DOCKET NO | DRAWINGS | TOT CLMS | IND CLMS |
|----------|------------------------|----------|---------------|-----------------|----------|----------|----------|
| 10/840,862 | 05/06/2004 | 2673 | 1226 | APL1P305/P3266 | 14 | 31 | 6 |

022434
BEYER WEAVER & THOMAS LLP
P.O. BOX 778
BERKELEY, CA 94704-0778

**CONFIRMATION NO. 8470**

**FILING RECEIPT**

*OC000000013225965*

Date Mailed: 07/14/2004

Receipt is acknowledged of this regular Patent Application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. If an error is noted on this Filing Receipt, please write to the Office of Initial Patent Examination's Filing Receipt Corrections, facsimile number 703-746-9195. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections (if appropriate).

**Applicant(s)**

    Steve Hotelling, San Jose, CA;
    Joshua A. Strickon, San Jose, CA;
    Brian Q. Huppi, San Francisco, CA;

**Assignment For Published Patent Application**

    Apple Computer, Inc.;

**Domestic Priority data as claimed by applicant**


**Foreign Applications**


**If Required, Foreign Filing License Granted: 07/13/2004**

**Projected Publication Date:** Request for Non-Publication Acknowledged

**Non-Publication Request: Yes**

**Early Publication Request: No**

**Title**

    Multipoint touchscreen

Docketed
Date
JUL 21 2004
BERKELEY
COT/QCH

**BEST AVAILABLE COPY**

APLNDC00025536

Preliminary Class
345

# COPY

## LICENSE FOR FOREIGN FILING UNDER
### Title 35, United States Code, Section 184
### Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Office of Export Administration, Department of Commerce (15 CFR 370.10 (j)); the Office of Foreign Assets Control, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

APLNDC00025537



Attorney Docket No. APL1P305/P3266

# PATENT APPLICATION

## MULTIPOINT TOUCHSCREEN

Inventor(s):   1.   Name:        Steve Hotelling
                    Address:     1351 Hidden Mine Rd.
                                 San Jose, CA  95120
                    Citizenship: United States of America

               2.   Name:        Joshua A Strickon
                    Address:     333 Santana Row #212
                                 San Jose, CA  95128
                    Citizenship: United States of America

               3.   Name:        Brian Q. Huppi
                    Address:     101 #2 28th Street
                                 San Francisco, CA  94131
                    Citizenship: United States of America

               Assignee:        Apple Computer, Inc.

BEYER, WEAVER & THOMAS, LLP
P.O. Box 778
Berkeley, CA  94704-0778
Telephone (650) 961-8300

BEST AVAILABLE COPY

APLNDC00025538



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia  22313-1450
www.uspto.gov

| APPL. NO. | FILING OR 371 (c) DATE | ART UNIT | FIL FEE REC'D | ATTY.DOCKET NO | DRAWINGS | TOT CLMS | IND CLMS |
|---|---|---|---|---|---|---|---|
| 10/840,862 | 05/06/2004 | 2673 | 1226 | APL1P305/P3266 | 14 | 31 | 6 |

**CONFIRMATION NO. 8470**

022434
BEYER WEAVER & THOMAS LLP
P.O. BOX 778
BERKELEY, CA 94704-0778

**CORRECTED FILING RECEIPT**

*OC000000013524147*

Date Mailed: 08/12/2004

Receipt is acknowledged of this regular Patent Application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please write to the Office of Initial Patent Examination's Filing Receipt Corrections, facsimile number 703-746-9195. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections (if appropriate).**

**Applicant(s)**

Steve Hotelling, San Jose, CA;
Joshua A. Strickon, San Jose, CA;
Brian Q. Huppi, San Francisco, CA;

**Assignment For Published Patent Application**

Apple Computer, Inc.;

**Domestic Priority data as claimed by applicant**


**Foreign Applications**


**If Required, Foreign Filing License Granted:** 07/13/2004

**Projected Publication Date:** Request for Non-Publication Acknowledged

**Non-Publication Request:** Yes

**Early Publication Request:** No


**Title**

Multipoint touchscreen

APLNDC00025539