EXHIBIT 4.03

ALTERNATIVE TO PTO/SB/08A/B
(Based on PTO 08-08 version)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | 11/677,958 |
| | | | | Filing Date | February 22, 2007 |
| | | | | First Named Inventor | Wayne C. WESTERMAN |
| | | | | Art Unit | 2629 |
| | | | | Examiner Name | R. Hjerpe |
| Sheet | 1 | of | 9 | Attorney Docket Number | 106842508604 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | AA* | US-2002/0118848 | 08-29-2002 | Karpenstein | |
| | AB* | US-2003/0006974 | 01-09-2003 | Clough et al. | |
| | AC* | US-2003/0076301 | 04-24-2003 | Tsuk et al. | |
| | AD* | US-2003/0076303 | 04-24-2003 | Huppi | |
| | AE* | US-2003/0076306 | 04-24-2003 | Zadesky et al. | |
| | AF* | US-2003/0095095 | 05-22-2003 | Pihlaja | |
| | AG* | US-2003/0095096 | 05-22-2003 | Robbin et al. | |
| | AH* | US-2003/0098858 | 05-29-2003 | Perski et al. | |
| | AI* | US-2003/0206202 | 11-06-2003 | Moriya | |
| | AJ* | US-2003/0234768 | 12-25-2003 | Rekimoto et al. | |
| | AK* | US-2004/0263484 | 12-30-2004 | Montysalo et al. | |
| | AL* | US-2005/0012723 | 01-20-2005 | M. Pallakoff | |
| | AM* | US-2005/0052425 | 03-10-2005 | Zadeski et al. | |
| | AN* | US-2005/0104867 | 05-19-2005 | Westerman et al. | |
| | AO* | US-2005/0110768 | 05-26-2005 | Marriott et al. | |
| | AP* | US-2006/0022955 | 02-02-2006 | Kennedy | |
| | AQ* | US-2006/0022956 | 02-02-2006 | Lengeling et al. | |
| | AR* | US-2006/0026521-A1 | 02-02-2006 | Hotelling et al. | |
| | AS* | US-2006/0026535 | 02-02-2006 | Hotelling et al. | |
| | AT* | US-2006/0026536 | 02-02-2006 | Hotelling et al. | |
| | AU* | US-2006/0032680 | 02-16-2006 | Elias et al. | |
| | AV* | US-2006/0033724 | 02-16-2006 | Chaudhri et al. | |
| | AW* | US-2006/0053387 | 03-09-2006 | Ording | |
| | AX* | US-2006/0066582 | 03-30-2006 | Lyon et al. | |
| | AY* | US-2006/0085757 | 04-20-2006 | Andre et al. | |
| | AZ* | US-2006/0097991-A1 | 05-11-2006 | Hotelling et al. | |
| | AA1* | US-2006/0197753-A1 | 09-07-2006 | Hotelling | |
| | AB1* | US-2006/0232567 | 10-19-2006 | Westerman et al. | |
| | AC1* | US-2006/0238517 | 10-26-2006 | King et al. | |
| | AD1* | US-2006/0238518 | 10-26-2006 | Westerman et al. | |
| | AE1* | US-2006/0238519 | 10-26-2006 | Westerman et al. | |
| | AF1* | US-2006/0238520 | 10-26-2006 | Westerman et al. | |
| | AG1* | US-2006/0238521 | 10-26-2006 | Westerman et al. | |
| | AH1* | US-2006/0238522 | 10-26-2006 | Westerman et al. | |
| | AI1* | US-2007/0229464 | 10-04-2007 | Hotelling et al. | |
| | AJ1* | US-2007/0236466 | 10-11-2007 | Hotelling | |
| | AK1* | US-2007/0247429 | 10-25-2007 | Westerman | |
| | AL1* | US-2007/0257890 | 11-08-2007 | Hotelling et al. | |
| | AM1* | US-3,333,160 | 07-25-1967 | Gorski | |
| | AN1* | US-3,541,541 | 11-17-1970 | Engelhart | |
| | AO1* | US-3,662,105 | 05-09-1972 | Hurst et al. | |
| | AP1* | US-3,798,370 | 03-19-1974 | Hurst | |
| | AQ1* | US-4,246,452 | 01-20-1981 | Chandler | |
| | AR1* | US-4,550,221 | 10-29-1985 | Mabusth | |
| | AS1* | US-4,672,364 | 06-09-1987 | Lucas | |
| | AT1* | US-4,672,558 | 06-09-1987 | Beckes et al. | |
| | AU1* | US-4,692,809 | 09-08-1987 | Beining et al. | |

la-1008936

ALTERNATIVE TO PTO/SB/08A/B
(Based on PTO 08-08 version)

| | | | | | |
|---|---|---|---|---|---|
| Substitute for form 1449/PTO | | | **Complete if Known** | | |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 11/677,958 | |
| | | | Filing Date | February 22, 2007 | |
| | | | First Named Inventor | Wayne C. WESTERMAN | |
| ***(Use as many sheets as necessary)*** | | | Art Unit | 2629 | |
| | | | Examiner Name | R. Hjerpe | |
| Sheet | 2 | of | 9 | Attorney Docket Number | 106842508604 |

| | | | | | |
|---|---|---|---|---|---|
| | AV1* | US-4,695,827 | 09-22-1987 | Beining et al. | |
| | AW1* | US-4,733,222 | 03-22-1988 | Evans | |
| | AX1* | US-4,734,685 | 03-29-1988 | Watanabe | |
| | AY1* | US-4,746,770 | 05-24-1988 | McAvinney | |
| | AZ1* | US-4,771,276 | 09-13-1988 | Parks | |
| | AA2* | US-4,788,384 | 11-29-1988 | Bruere-Dawson et al. | |
| | AB2* | US-4,806,846 | 02-21-1989 | Kerber | |
| | AC2* | US-4,898,555 | 02-06-1990 | Sampson | |
| | AD2* | US-4,968,877 | 11-06-1990 | McAvinney et al. | |
| | AE2* | US-5,003,519 | 03-26-1991 | Noirjean | |
| | AF2* | US-5,017,030 | 05-21-1991 | Crews | |
| | AG2* | US-5,178,477 | 01-12-1993 | Gambaro | |
| | AH2* | US-5,189,403 | 02-23-1993 | Franz et al. | |
| | AI2* | US-5,194,862 | 03-16-1993 | Edwards | |
| | AJ2* | US-5,224,861 | 07-06-1993 | Glass et al. | |
| | AK2* | US-5,241,308 | 08-31-1993 | Young | |
| | AL2* | US-5,252,951 | 10-12-1993 | Tannenbaum et al. | |
| | AM2* | US-5,281,966 | 01-25-1994 | Walsh | |
| | AN2* | US-5,305,017 | 04-19-1994 | Gerpheide | |
| | AO2* | US-5,345,543 | 09-06-1994 | Capps et al. | |
| | AP2* | US-5,376,948 | 12-27-1994 | Roberts | |
| | AQ2* | US-5,398,310 | 03-14-1995 | Tchao et al. | |
| | AR2* | US-5,442,742 | 08-15-1995 | Greyson et al. | |
| | AS2* | US-5,463,388 | 10-31-1995 | Boie et al. | |
| | AT2* | US-5,463,696 | 10-31-1995 | Beernink et al. | |
| | AU2* | US-5,483,261 | 01-09-1996 | Yasutake | |
| | AV2* | US-5,488,204-A | 01-30-1996 | Mead et al. | |
| | AW2* | US-5,495,077 | 02-27-1996 | Miller et al. | |
| | AX2* | US-5,513,309 | 04-30-1996 | Meier et al. | |
| | AY2* | US-5,523,775 | 06-04-1996 | Capps, S. | |
| | AZ2* | US-5,530,455 | 06-25-1996 | Gillick et al. | |
| | AA3* | US-5,543,590 | 08-06-1996 | Gillespie, et al. | |
| | AB3* | US-5,543,591 | 08-06-1996 | Gillespie et al. | |
| | AC3* | US-5,563,632 | 10-08-1996 | Roberts | |
| | AD3* | US-5,563,996 | 10-08-1996 | Tchao | |
| | AE3* | US-5,565,658-A | 10-15-1996 | Gerpheide et al. | |
| | AF3* | US-5,579,036 | 11-26-1996 | Yates, IV | |
| | AG3* | US-5,581,681 | 12-03-1996 | Tchao et al. | |
| | AH3* | US-5,583,946 | 12-10-1996 | Gourdol | |
| | AI3* | US-5,590,219 | 12-31-1996 | Gourdol | |
| | AJ3* | US-5,592,566 | 01-07-1997 | Pagallo et al. | |
| | AK3* | US-5,594,810 | 01-14-1997 | Gourdol | |
| | AL3* | US-5,596,694 | 01-21-1997 | Capps | |
| | AM3* | US-5,612,719 | 03-18-1997 | Beernink et al. | |
| | AN3* | US-5,625,715 | 04-29-1997 | Trew et al. | |
| | AO3* | US-5,631,805 | 05-20-1997 | Bonsall | |
| | AP3* | US-5,633,955 | 05-27-1997 | Bozinovic et al. | |
| | AQ3* | US-5,634,102 | 05-27-1997 | Capps | |
| | AR3* | US-5,636,101 | 06-03-1997 | Bonsall et al. | |
| | AS3* | US-5,642,108 | 06-24-1997 | Gopher et al. | |
| | AT3* | US-5,644,657 | 07-01-1997 | Capps et al. | |

la-1008936

APLNDC00020401

ALTERNATIVE TO PTO/SB/08A/B
(Based on PTO 08-08 version)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 11/677,958 | |
| | | | Filing Date | February 22, 2007 | |
| | | | First Named Inventor | Wayne C. WESTERMAN | |
| *(Use as many sheets as necessary)* | | | Art Unit | 2629 | |
| | | | Examiner Name | R. Hjerpe | |
| Sheet | 3 | of | 9 | Attorney Docket Number | 106842508604 |

| | AU3* | US-5,666,113 | 09-09-1997 | Logan | |
|---|---|---|---|---|---|
| | AV3* | US-5,666,502 | 09-09-1997 | Capps | |
| | AW3* | US-5,666,552 | 09-09-1997 | Grayson et al. | |
| | AX3* | US-5,675,361 | 10-07-1997 | Santilli | |
| | AY3* | US-5,677,710 | 10-14-1997 | Thompson- Rohrlich | |
| | AZ3* | US-5,689,253 | 11-18-1997 | Hargreaves et al. | |
| | AA4* | US-5,710,844 | 01-20-1998 | Capps et al. | |
| | AB4* | US-5,729,250 | 03-17-1998 | Bishop et al. | |
| | AC4* | US-5,730,165 | 03-24-1998 | Philipp | |
| | AD4* | US-5,736,976 | 04-07-1998 | Cheung | |
| | AE4* | US-5,741,990 | 04-21-1998 | Davies | |
| | AF4* | US-5,745,116 | 04-28-1998 | Pisutha-Amond | |
| | AG4* | US-5,745,716 | 04-28-1998 | Tchao et al. | |
| | AH4* | US-5,746,818 | 05-05-1998 | Yatake | |
| | AI4* | US-5,748,184 | 05-05-1998 | Shieh | |
| | AJ4* | US-5,748,269 | 05-05-1998 | Harris et al. | |
| | AK4* | US-5,764,222 | 06-09-1998 | Shieh | |
| | AL4* | US-5,767,457 | 06-16-1998 | Shieh | |
| | AM4* | US-5,767,842 | 06-16-1998 | Korth | |
| | AN4* | US-5,790,104 | 08-04-1998 | Shieh | |
| | AO4* | US-5,790,107-A | 08-04-1998 | Kasser et al. | |
| | AP4* | US-5,802,516 | 09-01-1998 | Shwarts et al. | |
| | AQ4* | US-5,808,567 | 09-15-1998 | McCloud | |
| | AR4* | US-5,809,267 | 09-15-1998 | Moran et al. | |
| | AS4* | US-5,821,690 | 10-13-1998 | Martens et al. | |
| | AT4* | US-5,821,930 | 10-13-1998 | Hansen | |
| | AU4* | US-5,823,782 | 10-20-1998 | Marcus et al. | |
| | AV4* | US-5,825,351 | 10-20-1998 | Tam | |
| | AW4* | US-5,825,352-A | 10-20-1998 | Bisset et al. | |
| | AX4* | US-5,835,079 | 11-10-1998 | Shieh | |
| | AY4* | US-5,854,625 | 12-29-1998 | Frisch et al. | |
| | AZ4* | US-5,880,411-A | 03-09-1999 | Gillespie et al. | |
| | AB5* | US-5,898,434 | 04-27-1999 | Small et al. | |
| | AC5* | US-5,920,309 | 07-06-1999 | Bissett et al. | |
| | AD5* | US-5,923,319 | 07-13-1999 | Bishop et al. | |
| | AE5* | US-5,933,134 | 08-03-1999 | Shieh | |
| | AF5* | US-5,943,044 | 08-24-1999 | Martinelli et al. | |
| | AG5* | US-6,002,389 | 12-14-1999 | Kasser | |
| | AH5* | US-6,002,808 | 12-14-1999 | Freeman | |
| | AI5* | US-6,020,881 | 02-01-2000 | Naughton et al. | |
| | AJ5* | US-6,031,524 | 02-29-2000 | Kunert | |
| | AK5* | US-6,037,882 | 03-14-2000 | Levy | |
| | AL5* | US-6,050,825 | 04-18-2000 | Nichol et al. | |
| | AM5* | US-6,052,339 | 04-18-2000 | Frenkel et al. | |
| | AN5* | US-6,072,494 | 06-06-2000 | Nguyen | |
| | AO5* | US-6,084,576 | 07-04-2000 | Leu et al. | |
| | AP5* | US-6,107,997 | 08-22-2000 | M.J. Ure | |
| | AQ5* | US-6,128,003 | 10-03-2000 | Smith, et al. | |
| | AR5* | US-6,131,299 | 10-17-2000 | Raab et al. | |
| | AS5* | US-6,135,958 | 10-24-2000 | Mikula-Curtis et al. | |
| | AT5* | US-6,144,380 | 11-07-2000 | Schwarts et al. | |

la-1008936

APLNDC00020402

ALTERNATIVE TO PTO/SB/08A/B
(Based on PTO 08-08 version)

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | 11/677,958 |
| | | | Filing Date | February 22, 2007 |
| | | | First Named Inventor | Wayne C. WESTERMAN |
| | | | Art Unit | 2629 |
| | | | Examiner Name | R. Hjerpe |
| Sheet | 4 | of | 9 | Attorney Docket Number | 106842508604 |

| | | | | | |
|---|---|---|---|---|---|
| | AU5* | US-6,188,391-B1 | 02-13-2001 | Seely, et al. | |
| | AV5* | US-6,188,391 | 02-13-2001 | Seely et al. | |
| | AW5* | US-6,198,515 | 03-06-2001 | Cole | |
| | AX5* | US-6,208,329 | 03-27-2001 | Ballare | |
| | AY5* | US-6,222,465 | 04-24-2001 | Kumar et al. | |
| | AZ5* | US-6,239,790 | 05-29-2001 | Martinelli et al. | |
| | AA6* | US-6,243,071 | 06-05-2001 | Shwarts et al. | |
| | AB6* | US-6,246,862 | 06-12-2001 | Grivas et al. | |
| | AC6* | US-6,249,606 | 06-19-2001 | Kiraly et al. | |
| | AD6* | US-6,278,443-B1 | 08-21-2001 | Amro et al. | |
| | AE6* | US-6,288,707 | 09-11-2001 | Philipp | |
| | AF6* | US-6,289,326 | 09-11-2001 | LaFleur | |
| | AG6* | US-6,292,178 | 09-18-2001 | Bernstein et al. | |
| | AH6* | US-6,323,846-B1 | 11-27-2001 | Westerman et al. | |
| | AI6* | US-6,323,849 | 11-27-2001 | Westerman et al. | |
| | AJ6* | US-6,347,290 | 02-12-2002 | Bartlett | |
| | AK6* | US-6,377,009 | 04-23-2002 | Philipp | |
| | AL6* | US-6,380,931 | 04-30-2002 | Gillespie et al. | |
| | AM6* | US-6,411,287 | 06-25-2002 | Scharff et al. | |
| | AN6* | US-6,414,671 | 07-02-2002 | Gillespie et al. | |
| | AO6* | US-6,421,234 | 07-16-2002 | Ricks et al. | |
| | AP6* | US-6,452,514 | 09-17-2002 | Philipp | |
| | AQ6* | US-6,457,355 | 10-01-2002 | Philipp | |
| | AR6* | US-6,466,036 | 10-15-2002 | Philipp | |
| | AS6* | US-6,515,669 | 02-04-2003 | Mohri | |
| | AT6* | US-6,525,749 | 02-25-2003 | Moran et al. | |
| | AU6* | US-6,535,200 | 03-18-2003 | Philipp | |
| | AV6* | US-6,543,684 | 04-08-2003 | White et al. | |
| | AW6* | US-6,543,947 | 04-08-2003 | Lee | |
| | AX6* | US-6,570,557 | 05-27-2003 | Westerman et al. | |
| | AY6* | US-6,593,916 | 07-15-2003 | Aroyan | |
| | AZ6* | US-6,610,936 | 08-26-2003 | Gillespie et al. | |
| | AA7* | US-6,624,833 | 09-23-2003 | Kumar et al. | |
| | AB7* | US-6,639,577 | 10-28-2003 | Eberhard | |
| | AC7* | US-6,650,319 | 11-18-2003 | Hurst et al. | |
| | AD7* | US-6,658,994 | 12-09-2003 | McMillan | |
| | AE7* | US-6,670,894 | 12-30-2003 | Mehring | |
| | AF7* | US-6,677,932 | 01-13-2004 | Westerman | |
| | AG7* | US-6,677,934 | 01-13-2004 | Blanchard | |
| | AH7* | US-6,724,366 | 04-20-2004 | Crawford | |
| | AI7* | US-6,757,002 | 06-29-2004 | Oross et al. | |
| | AJ7* | US-6,803,906 | 10-12-2004 | Morrison et al. | |
| | AK7* | US-6,842,672 | 01-11-2005 | Straub et al. | |
| | AL7* | US-6,856,259 | 02-15-2005 | Sharp | |
| | AM7* | US-6,888,536 | 05-03-2005 | Westerman et al. | |
| | AN7* | US-6,900,795 | 05-31-2005 | Knight, III et al. | |
| | AO7* | US-6,927,761 | 08-09-2005 | Badaye et al. | |
| | AP7* | US-6,942,571 | 09-13-2005 | McAllister et al. | |
| | AQ7* | US-6,965,375 | 11-15-2005 | Gettemy et al. | |
| | AR7* | US-6,972,401 | 12-06-2005 | Akitt et al. | |

APLNDC00020403

ALTERNATIVE TO PTO/SB/08A/B
(Based on PTO 08-08 version)

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | 11/677,958 |
| | | | Filing Date | February 22, 2007 |
| | | | First Named Inventor | Wayne C. WESTERMAN |
| | | | Art Unit | 2629 |
| | | | Examiner Name | R. Hjerpe |
| Sheet | 5 | of | 9 | Attorney Docket Number | 106842508604 |

| | | | | |
|---|---|---|---|---|
| AS7* | US-6,977,666 | 12-20-2005 | Hedrick | |
| AT7* | US-6,985,801 | 01-10-2006 | Straub et al. | |
| AU7* | US-6,992,659 | 01-31-2006 | Gettemy | |
| AV7* | US-7,031,228 | 04-18-2006 | Born et al. | |
| AW7* | US-7,129,416 | 10-31-2006 | Steinfeld, et al. | |
| AX7* | US-7,339,580 | 03-04-2008 | Westerman et al. | |
| AY7* | US-RE40,153 | 03-18-2008 | Westerman et al. | |
| AZ7 | US-2003/164820 | 09-04-2003 | Kent | |
| AA8 | US-2003/132950 | 08-17-2003 | Surucu et al. | |
| AB8 | US-5,883,619 | 03-1999 | Ho et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | BA | CA-1243096 | 10-11-1988 | LAITRAM CORP | | |
| | BB | EP-1014295 | 01-09-2002 | TOKAI RIKA CO LTD | | |
| | BC | WO-92/02000 | 02-06-1992 | British Telecommunications Public Limited Company | | √ |
| | BD | EP-0288692 | 07-14-1993 | IBM | | |
| | BE | EP-0664504 | 01-24-1995 | US WEST TECHNOLOGIES INC | | |
| | BF | EP-0464908 | 09-04-1996 | PHILIPS ELECTRONICS UK LTD; PHILIPS NV | | |
| | BG | WO-97/018547 | 05-22-1997 | Ure | | |
| | BH | WO-97/023738 | 07-03-1997 | Philipp | | |
| | BI | WO-97/36225 | 10-02-1997 | Synaptics Inc. | | √ |
| | BJ | WO-97/40744 | 11-06-1997 | Philips Electronics N.V. | | √ |
| | BK | WO-98/14863 | 04-09-1998 | PHILIPS ELECTRONICS NV; PHILIPS NORDEN AB | | |
| | BL | WO-03/088176 | 10-23-2003 | SYNAPTICS INC | | |
| | BM | DE-10251296-A1 | 05-19-2004 | | | |
| | BN | WO-WO06/023569 | 03-02-2006 | FINGERWORKS INC | | |
| | BO | GB-2330670 A | 04-28-1999 | Sony United Kingdom Limited | | √ |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if information considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  [1] Applicant's unique citation designation number (optional).  [3] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).  [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.  [6] Applicant is to place a check mark here if English language Translation is attached.

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | CA | US Patent Application No. 10/654,108 filed on September 2, 2003 entitled "Ambidextrous | |

la-1008936

ALTERNATIVE TO PTO/SB/08A/B
(Based on PTO 08-08 version)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | 11/677,958 |
| | | | | Filing Date | February 22, 2007 |
| | | | | First Named Inventor | Wayne C. WESTERMAN |
| | | | | Art Unit | 2629 |
| | | | | Examiner Name | R. Hjerpe |
| Sheet | 6 | of | 9 | Attorney Docket Number | 106842508604 |

| | | | |
|---|---|---|---|
| | | Mouse" | |
| | CB | US Patent Application No. 10/789,676 filed on February 27, 2004 entitled "Shape Detecting Input Device" | |
| | CC | "4-Wire Resistive Touchscreens" obtained from http://www.touchscreens.com/intro-touchtypes-4resistive.html generated August 5, 2005 | |
| | CD | "5-Wire Resistive Touchscreens" obtained from http://www.touchscreens.com/intro-touchtypes-resistive.html generated August 5, 2005 | |
| | CE | "A Brief Overview of Gesture Recognition" obtained from http://www.dai.ed.ac.uk/Cvonline/LOCA_COPIES/COHEN/gesture_overview.html, generated April 20, 2004 | |
| | CF | "Capacitive Touchscreens" obtained from http://www.touchscreens.com/intro-touchtypes-capacitive.html generated August 5, 2005 | |
| | CG | "Capacitive Position Sensing" obtained from http://www.synaptics.com/technology/cps.cfm generated August 5, 2005 | |
| | CH | "Comparing Touch Technologies" obtained from http://www.touchscreens.com/intro-touchtypes.html generated October 10, 2005 | |
| | CI | "Gesture Recognition" http://www.fingerworks.com/gesture_recognition.html | |
| | CJ | "GlidePoint®" obtained from http://www.cirque.com/technology/technology_gp.html generated August 5, 2005 | |
| | CK | "How do touchscreen monitors know where you're touching?" obtained from http://www.electronics.howstuffworks.com/question716.html generated August 5, 2005 | |
| | CL | "How does a touchscreen work?" obtained from http://www.touchscreens.com/intro-anatomy.html generated August 5, 2005 | |
| | CM | "iGesture Products for Everyone (learn in minutes) Product Overview" FingerWorks.com | |
| | CN | "Infrared Touchscreens" obtained from http://www.touchscreens.com/intro-touchtypes-infrared.html generated August 5, 2005 | |
| | CO | "Mouse Emulation" FingerWorks obtained from http://www.fingerworks.com/gesture_guide_mouse.html generated August 30, 2005 | |
| | CP | "Mouse Gestures in Opera" obtained from http://www.opera.com/products/desktop/mouse/index.dml generated August 30, 2005 | |
| | CQ | "Mouse Gestures," Optim oz, May 21, 2004 | |
| | CR | "MultiTouch Overview" FingerWorks obtained from http://www.fingerworks.com/multoverview.html generated August 30, 2005 | |
| | CS | "Near Field Imaging Touchscreens" obtained from http://www.touchscreens.com/intro-touchtypes-nfi.html generated August 5, 2005 | |
| | CT | "PenTouch Capacitive Touchscreens" obtained from http://www.touchscreens.com/intro-touchtypes-pentouch.html generated August 5, 2005 | |
| | CU | "Surface Acoustic Wave Touchscreens" obtained from http://www.touchscreens.com/intro-touchtypes-saw.html generated August 5, 2005 | |
| | CV | "Symbol Commander" obtained from http://www.sensiva.com/symbolcomander/, generated August 30, 2005 | |
| | CW | "Tips for Typing" FingerWorks http://www.fingerworks.com/mini_typing.html generated August 30, 2005 | |
| | CX | "Touch Technologies Overview"  2001, 3M Touch Systems, Massachusetts | |
| | CY | "Wacom Components - Technology" obtained from http://www.wacom-components.com/english/tech.asp generated on October 10, 2004 | |
| | CZ | "Watershed Algorithm" http://rsb.info.nih.gov/ij/plugins/watershed.html generated August 5, 2005 | |

la-1008936

APLNDC00020405

ALTERNATIVE TO PTO/SB/08A/B
(Based on PTO 08-08 version)

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | Application Number | 11/677,958 |
| | | Filing Date | February 22, 2007 |
| | | First Named Inventor | Wayne C. WESTERMAN |
| | | Art Unit | 2629 |
| | | Examiner Name | R. Hjerpe |
| Sheet | 7 | of | 9 | Attorney Docket Number | 106842508604 |

| | | | |
|---|---|---|---|
| | CA1 | "FingerWorks - Gesture Guide - Application Switching," obtained from http://www.fingerworks.com/gesture_guide_apps.html, generated on 08/27/2004, 1-pg | |
| | CB1 | "FingerWorks - Gesture Guide - Editing," obtained from http://www.fingerworks.com/gesure_guide_editing.html, generated on 08/27/2004, 1-pg | |
| | CC1 | "FingerWorks - Gesture Guide - File Operations," obtained from http://www.fingerworks.com/gesture_guide_files.html, generated on 08/27/2004, 1-pg | |
| | CD1 | "FingerWorks - Gesture Guide - Text Manipulation," obtained from http://www.fingerworks.com/gesture_guide_text_manip.html, generated on 08/27/2004, 2-pg | |
| | CE1 | "FingerWorks - Gesture Guide - Tips and Tricks," obtained from http://www.fingerworks.com/gesture_guide_tips.html, generated 08/27/2004, 2-pgs | |
| | CF1 | "FingerWorks - Gesture Guide - Web," obtained from http://www.fingerworks.com/gesture_guide_web.html, generated on 08/27/2004, 1-pg | |
| | CG1 | "FingerWorks - Guide to Hand Gestures for USB Touchpads," obtained from http://www.fingerworks.com/igesture_userguide.html, generated 08/27/2004, 1-pg | |
| | CH1 | "FingerWorks - iGesture - Technical Details," obtained from http://www.fingerworks.com/igesture_tech.html, generated 08/27/2004, 1-pg | |
| | CI1 | "FingerWorks - The Only Touchpads with Ergonomic Full-Hand Resting and Relaxation!" obtained from http://www.fingerworks.com/resting.html, Copyright 2001, 1-pg | |
| | CJ1 | "FingerWorks - Tips for Typing on the Mini," obtained from http://www.fingerworks.com/mini_typing.html, generated on 08/27/2004, 2-pgs | |
| | CK1 | "iGesture Pad - the MultiFinger USB TouchPad with Whole-Hand Gestures," obtained from http://www.fingerworks.com/igesture.html, generated 08/27/2004, 2-pgs | |
| | CL1 | Bier, et al., "Toolglass and Magic Lenses:  The see-through interface" In James Kijiya, editor, Computer Graphics (SIGGRAPH '93 Proceedings), volume 27, pages 73-80, August 1993 | |
| | CM1 | BUXTON, W. et al. (July 22, 1985). "Issues and Techniques in Touch-Sensitive Tablet Input," *Proceedings ACM Siggraph*, pp. 215-224. | √ |
| | CN1 | CUTLER, L.D. et al. (April 27, 1997). "Two-Handed Direct Manipulation on the Responsive Workbench," *Proceedings of the 1997 Symposium on Interactive 3D Graphics*, Providence, RI, April 27-30, 1997, pp.107-114. | √ |
| | CO1 | DAVIS, J. et al. (October 31, 1994). "Determining 3-D Hand Motion," *Signals, Systems and Computers, 1994 Conference Record of the 28th Asilomar Conference on Pacific Grove*, CA, October 31 - November 2, 1994, Los Alamitos, CA, pp. 1262-1266. | √ |
| | CP1 | Douglas et al., The Ergonomics of Computer Pointing Devices (1997) | |
| | CQ1 | European Search Report received in EP 1 621 989 (@ Beyer Weaver & Thomas, LLP) dated March 27, 2006 | |
| | CR1 | EVB ELEKTRONIK "TSOP6238 IR Receiver Modules for Infrared Remote Control Systems" dated 01/2004 1-pg | |
| | CS1 | Fisher et al., "Repetitive Motion Disorders: The Design of Optimal Rate- Rest Profiles," Human Factors, 35(2):283-304 (Jun. 1993) | |
| | CT1 | Fukumoto, et al., "ActiveClick:  Tactile Feedback for Touch Panels," In CHI 2001 Summary, pages 121-122, 2001 | |
| | CU1 | Fukumoto and Yoshinobu Tonomura, "Body Coupled Fingering: Wireless Wearable Keyboard," *CHI 97*, pp. 147-154 (Mar. 1997) | |
| | CV1 | Hardy, "Fingerworks" March 7, 2002; BBC World On Line | |
| | CW1 | Hillier and Gerald J. Lieberman, *Introduction to Operations Research* (1986) | |
| | CX1 | Jacob et al., "Integrality and Separability of Input Devices," *ACM Transactions on Computer-Human Interaction*, 1:3-26 (Mar. 1994) | |
| | CY1 | Kinkley et al., "Touch-Sensing Input Devices," in CHI '99 Proceedings, pp 223-230, 1999 | |
| | CA2 | KIONX "KXP84 Series Summary Data Sheet" copyright 2005,dated 10/21/2005, 4-pgs | |

la-1008936

APLNDC00020406

ALTERNATIVE TO PTO/SB/08A/B
(Based on PTO 08-08 version)

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br><br>*(Use as many sheets as necessary)* | Application Number | 11/677,958 |
| | Filing Date | February 22, 2007 |
| | First Named Inventor | Wayne C. WESTERMAN |
| | Art Unit | 2629 |
| | Examiner Name | R. Hjerpe |

| Sheet | 8 | of | 9 | Attorney Docket Number | 106842508604 |
|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | CB2 | Lee et al., "A Multi-Touch Three Dimensional Touch-Sensitive Tablet," in CHI '85 Proceedings, pages 121-128, 2000 | |
| | CC2 | Lee, "A Fast Multiple-Touch-Sensitive Input Device," Master's Thesis, University of Toronto (1984) | |
| | CD2 | LEE, S.K. et al. (April 1985). "A Multi-Touch Three Dimensional Touch-Sensitive Tablet," *Proceedings of CHI: ACM Conference on Human Factors in Computing Systems*, pp. 21-25. | √ |
| | CE2 | Matsushita et al., "HoloWall: Designing a Finger, Hand, Body and Object Sensitive Wall," In Proceedings of UIST '97, October 1997 | |
| | CF2 | PAVLOVIC, V.I. et al. (July 1997). "Visual Interpretation of Hand Gestures for Human-Computer Interaction: A Review," *IEEE Transactions on Pattern Analysis and Machine Intelligence* 19(7):677-695. | √ |
| | CG2 | Quantum Research Group "QT510 / QWheel™ Touch Slider IC" copyright 2004-2005, 14-pgs | |
| | CH2 | Quek, "Unencumbered Gestural Interaction," *IEEE Multimedia*, 3:36-47 (Winter 1996) | |
| | CI2 | Radwin, "Activation Force and Travel Effects on Overexertion in Repetitive Key Tapping," *Human Factors*, 39(1):130-140 (Mar. 1997) | |
| | CJ2 | Rekimoto "SmartSkin: An Infrastructure for Freehand Manipulation on Interactive Surfaces" CHI 2002, April 20-25, 2002 | |
| | CK2 | Rekimoto et al., "ToolStone: Effective Use of the Physical Manipulation Vocabularies of Input Devices," In Proc. Of UIST 2000, 2000 | |
| | CL2 | Rubine et al., "Programmable Finger-Tracking Instrument Controllers," *Computer Music Journal*, vol. 14, No. 1 (Spring 1990) | |
| | CM2 | Rutledge et al., "Force-To-Motion Functions For Pointing," Human-Computer Interaction - INTERACT (1990) | |
| | CN2 | Subatai Ahmad, "A Usable Real-Time 3D Hand Tracker," Proceedings of the 28th Asilomar Conference on Signals, Systems and Computers - Part 2 (of2), Vol. 2 (October 1994) | |
| | CO2 | TEXAS INSTRUMENTS "TSC2003 / I2C Touch Screen Controller" Data Sheet SBAS 162, dated October 2001, 20-pgs | |
| | CP2 | Wellner, "The Digital Desk Calculators: Tangible Manipulation on a Desk Top Display" IN ACM UIST '91 Proceedings, Pages 27-34, November 1991 | |
| | CQ2 | Williams, "Applications for a Switched-Capacitor Instrumentation Building Block" Linear Technology Application Note 3, July 1985, pp. 1-16 | |
| | CR2 | Yamada et al., "A Switched-Capacitor Interface for Capacitive Pressure Sensors" IEEE Transactions on Instrumentation and Measurement, Vol. 41, No. 1, February 1992, pp.81-86 | |
| | CS2 | Yeh et al., "Switched Capacitor Interface Circuit for Capacitive Transducers" 1985 IEEE | |
| | CT2 | Zhai et al., "Dual Stream Input for Pointing and Scrolling," *Proceedings of CHI '97 Extended Abstracts* (1997) | |
| | CU2 | Zimmerman et al., "Applying Electric Field Sensing to Human-Computer Interfaces," In CHI '85 Proceedings, Pages 280-287, 1995 | |
| | CV2 | International Search Report received in corresponding PCT application number PCT/US2006/008349 dated October 6, 2006 | √ |
| | CW2 | International search report for PCT/US99/01454, mailed May 14, 1999. | √ |
| | CX2 | European supplementary search report for European Patent Application No. 99904228.6, mailed February 16, 2005. | √ |
| | CY2 | Supplementary European search report for U.S. patent Application No. 99904228.6, mailed July 8, 2005. | √ |
| | CZ2 | European examination report for European Patent Application No. 99904228.6, mailed April 20, 2006. | √ |

la-1008936

ALTERNATIVE TO PTO/SB/08A/B
(Based on PTO 08-08 version)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | 11/677,958 |
| | | | | Filing Date | February 22, 2007 |
| | | | | First Named Inventor | Wayne C. WESTERMAN |
| | | | | Art Unit | 2629 |
| | | | | Examiner Name | R. Hjerpe |
| Sheet | 9 | of | 9 | Attorney Docket Number | 106842508604 |

| | | | |
|---|---|---|---|
| | CA3 | European examination report for European Patent Application No. 99904228.6, mailed March 23, 2007. | √ |
| | CB3 | Extended European search report for European Patent Application No. 06016858.0, mailed December 21, 2007. | √ |
| | CC3 | Extended European search report for European Patent Application No. 06016856.4, mailed March 14, 2008. | √ |
| | CD3 | European examination report for European Patent Application No. 06016830.9, mailed August 6, 2008. | √ |
| | CD4 | European search report for European Patent Application No. 06016830.9 mailed December 3, 2007 | √ |
| | CD5 | European examination report for European Patent Application No. 06016856.4 mailed September 16, 2008 | √ |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

¹Applicant's unique citation designation number (optional).  ²Applicant is to place a check mark here if English language Translation is attached.

APLNDC00020408

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 4450058 |
| **Application Number:** | 11677958 |
| **International Application Number:** | |
| **Confirmation Number:** | 1844 |
| **Title of Invention:** | Ellipse Fitting for Multi-Touch Surfaces |
| **First Named Inventor/Applicant Name:** | Wayne  Westerman |
| **Customer Number:** | 69753 |
| **Filer:** | Kenneth Xin Xie/Raiza Singh |
| **Filer Authorized By:** | Kenneth Xin Xie |
| **Attorney Docket Number:** | 10684-25086.04 |
| **Receipt Date:** | 12-DEC-2008 |
| **Filing Date:** | 22-FEB-2007 |
| **Time Stamp:** | 18:48:21 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

### File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | General_Transmittal.pdf | 41800<br>191e55e962e1ed3d6086f9670b5242f01b8f d677 | no | 1 |

Warnings:

Information:

APLNDC00020409

| 2 | Information Disclosure Statement Letter | IDS_Letter.pdf | 78838<br><br>e9ddcc545d90da01794e4e7f0ee30b9d96a4fe72 | no | 2 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 3 | Information Disclosure Statement (IDS) Filed (SB/08) | IDS_Form.pdf | 525315<br><br>7cf1f1515845e7a7c0a03c9360a879829335241 | no | 9 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| This is not an USPTO supplied IDS fillable form |
|---|

| 4 | Foreign Reference | WO_9740744.pdf | 1034315<br><br>47811e7a0a550b2d83398024de818193798e6f75 | no | 25 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 5 | Foreign Reference | WO_9736225.pdf | 5161491<br><br>f0a79d896fa2ae9b305f6f82f456ac335f96c735 | no | 112 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 6 | Foreign Reference | WO_9202000.pdf | 1518297<br><br>33d4d319036e69622986a8514cc9d5f1f7e12123 | no | 35 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 7 | Foreign Reference | GB_2330670A.pdf | 755752<br><br>194e0526f038a7184159e0d835f15e9c352d2fce | no | 23 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 8 | NPL Documents | PCTUS9901454_Search_Report.pdf | 69280<br><br>d5360842dc1aa332daa9f5b91036a5bf1325d239 | no | 2 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 9 | NPL Documents | PCTUS06008349_Search_Report.pdf | 164195<br><br>8008f969fd57a52fa26e31fa573966222f373b84 | no | 5 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 10 | NPL Documents | Pavlovic_NPL.pdf | 1308066<br><br>7b792e84dd4d3639dfd3175ddab66ce257f4f784 | no | 19 |
|---|---|---|---|---|---|

| | Warnings: | | | | |
|---|---|---|---|---|---|
| | Information: | | | | |
| 11 | NPL Documents | Lee_NPL.pdf | 234104 | no | 6 |
| | | | d9c89b3e3f0b8f3adb68a9c2107222c5ee059317 | | |
| | Warnings: | | | | |
| | Information: | | | | |
| 12 | NPL Documents | EP_999042286_Search_Report_July2005.pdf | 186040 | no | 7 |
| | | | fdca86c2bd5e1b6a01ed8bd092c1495b5976e66f | | |
| | Warnings: | | | | |
| | Information: | | | | |
| 13 | NPL Documents | EP_999042286_Search_Report_Feb2005.pdf | 144984 | no | 5 |
| | | | cb42b876867942511ad07a0b411523bce530e944 | | |
| | Warnings: | | | | |
| | Information: | | | | |
| 14 | NPL Documents | EP_999042286_Exam_Report_March2007.pdf | 145458 | no | 5 |
| | | | 9a67a23d436b6c009083d085a05ea0e2537330c9 | | |
| | Warnings: | | | | |
| | Information: | | | | |
| 15 | NPL Documents | EP_999042286_Exam_Report_April2006.pdf | 424832 | no | 11 |
| | | | 29533677c198ef8ca7ff9a6f3463f3f445250c0c | | |
| | Warnings: | | | | |
| | Information: | | | | |
| 16 | NPL Documents | EP_060168580_Search_Report_Dec2007.pdf | 261923 | no | 8 |
| | | | e53d1bc8c1348df7ff5e492fb777cf4ea947623c | | |
| | Warnings: | | | | |
| | Information: | | | | |
| 17 | NPL Documents | EP_060168564_Search_Report_March2008.pdf | 228337 | no | 7 |
| | | | 9b67397c3d5058cdc3c4bd04b12ef8f62b115625 | | |
| | Warnings: | | | | |
| | Information: | | | | |
| 18 | NPL Documents | EP_060168564_Exam_Report_Sept2008.pdf | 257833 | no | 8 |
| | | | e8d062a0b00e3729f74cca287adf1e9d4e7b0413 | | |
| | Warnings: | | | | |
| | Information: | | | | |
| 19 | NPL Documents | EP_060168309_Search_Report_Dec2007.pdf | 275616 | no | 9 |
| | | | 32b5137dd4cc957f4a560d6c5acd07e6510c3e6a | | |

| | | | | | |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 20 | NPL Documents | EP_060168309_August2008.pdf | 87386 | no | 2 |
| | | | 309c294a0853efb324caefc7f629f4c1a518d93b7 | | |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 21 | NPL Documents | Davis_NPL.pdf | 246725 | no | 6 |
| | | | e35eb71fe35a274069cc35295cd960a6d766c9d1 | | |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 22 | NPL Documents | Cutler_NPL.pdf | 496590 | no | 8 |
| | | | b09e8435cd6e2d13acc7d7d3b8a47e4d565d557d | | |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 23 | NPL Documents | Buxton_NPL.pdf | 527442 | no | 10 |
| | | | 7befc81bd4c5f2e6ff908cd7814d76410484868 | | |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | | 14174619 | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

APLNDC00020412



| | |
|---|---|
| EPA/EPO/OEB | **Europäisches Patentamt** |
| ☎ +49 89 2399-0 | **European Patent Office** |
| TX 523 656 epmu d | **Office européen des brevets** |
| FAX +49 89 2399-4465 | |

| | Generaldirektion 2 | Directorate General 2 | Direction Générale 2 |

Meddle, Alan L.
FORRESTER & BOEHMERT,
Pettenkoferstrasse 20-22
80336 München
ALLEMAGNE

| **Telephone numbers:** | **Branch at The Hague** |
|---|---|
| **Primary Examiner** (substantive examination) | +31 70 340-4870 |
| **Formalities Officer / Assistant** (Formalities and other matters) | +31 70 340-1037 |



| Application No. | Ref. | Date |
|---|---|---|
| 99 904 228.6 - 1245 | FB9380-E14549EP | 20.04.2006 |

| Applicant |
|---|
| Westerman, Wayne |

**Communication pursuant to Article 96(2) EPC**

The examination of the above-identified application has revealed that it does not meet the requirements of the European Patent Convention for the reasons enclosed herewith. If the deficiencies indicated are not rectified the application may be refused pursuant to Article 97(1) EPC.

You are invited to file your observations and insofar as the deficiencies are such as to be rectifiable, to correct the indicated deficiencies within a period

**of   4   months**

from the notification of this communication, this period being computed in accordance with Rules 78(2) and 83(2) and (4) EPC.

One set of amendments to the description, claims and drawings is to be filed within the said period on separate sheets (Rule 36(1) EPC).

**Failure to comply with this invitation in due time will result in the application being deemed to be withdrawn (Article 96(3) EPC).**



Arranz, J
Primary Examiner
for the Examining Division

Enclosure(s):        10  page/s reasons (Form 2906)

**Registered Letter**
EPO Form 2001  07.02CSX

APLNDC00020413



| | |
|---|---|
| Datum<br>Date<br>Date | 20.04.2006 |
| Blatt<br>Sheet<br>Feuille | 1 |
| Anmelde-Nr.:<br>Application No.:<br>Demande n°: | 99 904 228.6 |

The examination is being carried out on the **following application documents**:

**Description, Pages**

1-83                    as originally filed

**Claims, Numbers**

1-121                    as originally filed

**Drawings, Sheets**

1/1-45/45                    as originally filed

1.    The following documents D1,D2 are referred to in this communication; the numbering will be adhered to in the rest of the procedure:

   D1:    WO 97/23738 A1 (PHILIPP, HARALD) 3 July 1997 (1997-07-03)
   D2:    EP-A-0 464 908 (PHILIPS ELECTRONICS UK LTD ; PHILIPS NV (NL)) 8 January 1992 (1992-01-08)

2.    Claims 1,2 include all the features of claim 3. Hence, claims 1,2 should be reformulated as claims dependent on claim 3 cf. Rule 29(4) EPC and the Guidelines C-III, 3.4.

3.    The examiner considers that the following separate inventions or groups of inventions are not so linked as to form a single general inventive concept (Article 82 EPC):

   (1) Invention 1: Claims 1-16,18-21,25-36

EPO Form 2906  01.91CSX

APLNDC00020414


Input device for detecting multiple simultaneous touch points.

(2) Invention 2: Claim 17
Capacitive proximity sensor detecting the position of non-conductive objects over the sensor.

(3) Invention 3: Claims 22,23
Haptic references points on a capacitive touch sensor.

(4) Invention 4: Claim 24
Improving the touch detection on a capacitive keypad.

(5) Invention 5: Claims 64-68
Determining the finger, thumb and palm of a hand on the scanned image.

(6) Invention 6: Claims 37-41
Gesture recognition on a capacitive touch sensor.

(7) Invention 7: Claim 42
Predicting hand trajectories.

(8) Invention 8: Claims 43-45
Adapting the input to the users hand size.

(9) Invention 9: Claims 46-63
Recognition of different hand configurations.

(10) Invention 10: Claims 69-82
Method for determining which hand is touching the sensor.

(11) Invention 11: Claims 83-89
Extracting simultaneous hand and finger motions.

(12) Invention 12: Claims 90-94

EPO Form 2906  01.91CSX

APLNDC00020415

Method to determine roll and tilt hand motions.

(13) Invention 13: Claims 95-118
Method for switching the input mode on an gesture controlled input device.

(14) Invention 14: Claims 119-121
Method for reducing hand movements on a motion controlled cursor control device.

3.1   Invention 1

From a comparison of the technical features of claim 3 and the disclosure of D1, the features which are known from D1 are the following:

a sensing device ("sensing system", page 4, line 41) that is sensitive to changes in self-capacitance (The device of D1 detects the changes in capacitance of the conductor to ground, i.e the changes in self-capacitance of the electrode) brought about by changes in proximity of a touch device to the sensing device ("proximity sensing", page 6, line 38), the sensing device comprising

two electrical switching means connected together in series having a common node, an input node, and an output node ("discharging switch (50)", page 6, line 22; "second charging switch (62)", page 7, line 21 and see figure 5);

a dielectric-covered sensing electrode connected to the common node between the two switching means ("nonconductive surface", page 5, line 5) and

a power supply providing an approximately constant voltage connected to the input node of the series-connected switching means ("voltage V+", page 7, line 23 and figure 5)

Hence, D1 discloses all the features of claim 3

The additional features of claims 1,2,4-6 are either known from D1 or relate are a mere choice of practical implementation.

The following features of dependent claim 7 can be seen to make contribution over D1 (STF-1, Special Technical Features, see Rule 30 EPC):

a multi-touch surface apparatus for detecting a spatial arrangement of multiple touch

EPO Form 2906  01.91CSX

APLNDC00020416


| Datum<br>Date<br>Date | 20.04.2006 | Blatt<br>Sheet<br>Feuille | 4 | Anmelde-Nr.:<br>Application No.:<br>Demande n°: | 99 904 228.6 |

devices on or near the surface of the multi-touch apparatus comprising
one of a rigid or flexible surface,

a two-dimensional array of the sensing devices of claim 1 arranged on the surface
with their output nodes connected together and sharing the same integrating capacitor,
charge depletion switch, and voltage-to-voltage translation device,

control circuitry for sequentially enabling each of the sensor devices,
voltage measurement circuitry to convert sensor data to a digital code and
circuitry for communicating the digital code to another electronic device.

The technical problem (Technical Problem 1) to be solved by the first invention can be
formulated as how to detect multiple simultaneous touch points.

### 3.2 Invention 2
The features of claim 17 can be seen to make contribution over D1 (STF-2, Special
Technical Features, see Rule 30 EPC).

The technical problem (Technical Problem 2) to be solved by the second invention can
be formulated as how to detect the position of non-conductive objects over the sensor.

### 3.3 Invention 3
The features of claim 22 can be seen to make contribution over D1 (STF-3, Special
Technical Features, see Rule 30 EPC).

The technical problem (Technical Problem 3) to be solved by the third invention can be
formulated as how to create haptic references points.

### 3.4 Invention 4
The features of claim 24 can be seen to make contribution over D1 (STF-4, Special
Technical Features, see Rule 30 EPC).

The technical problem (Technical Problem 4) to be solved by the fourth invention can
be formulated as how to selectively improve the touch detection.

### 3.5 Invention 5

APLNDC00020417

Bescheid/Protokoll (Anlage)    Communication/Minutes (Annex)    Notification/Procès-verbal (Annexe)

| | | | | |
|---|---|---|---|---|
| Datum<br>Date<br>Date | 20.04.2006 | Blatt<br>Sheet<br>Feuille | 5 | Anmelde-Nr.:<br>Application No.:<br>Demande n°: 99 904 228.6 |

The features of claim 64 can be seen to make contribution over D1 (STF-5, Special Technical Features, see Rule 30 EPC).

The technical problem (Technical Problem 5) to be solved by the fifth invention can be formulated as how to determine on the scanned image the areas of a hand.

3.6     Invention 6
The features of claim 37 can be seen to make contribution over D1 (STF-6, Special Technical Features, see Rule 30 EPC):

The technical problem (Technical Problem 6) to be solved by the sixth invention can be formulated as how to identify a gesture in the sequence of scanned images.

3.7     Invention 7
The features of claim 42 can be seen to make contribution over D1 (STF-7, Special Technical Features, see Rule 30 EPC):

The technical problem (Technical Problem 7) to be solved by the seventh invention can be formulated as how to predict hand trajectories.

3.8     Invention 8
The features of claim 43 can be seen to make contribution over D1 (STF-8, Special Technical Features, see Rule 30 EPC):

The technical problem (Technical Problem 8) to be solved by the eight invention can be formulated as how to adapt the input to the users hand size.

3.9     Invention 9
The features of claim 46 can be seen to make contribution over D1 (STF-9, Special Technical Features, see Rule 30 EPC):

The technical problem (Technical Problem 9) to be solved by the ninth invention can be formulated as how to improve the recognition of different hand configurations.

EPO Form 2906  01.91CSX

APLNDC00020418



| Datum / Date / Date | 20.04.2006 | Blatt / Sheet / Feuille | 6 | Anmelde-Nr.: / Application No.: / Demande n°: | 99 904 228.6 |

## 3.10 Invention 10

The features of claim 69 can be seen to make contribution over D1 (STF-10, Special Technical Features, see Rule 30 EPC):

The technical problem (Technical Problem 10) to be solved by the tenth invention can be formulated as how to determine which hand is touching the sensor.

## 3.11 Invention 11

The features of claim 83 can be seen to make contribution over D1 (STF-11, Special Technical Features, see Rule 30 EPC):

The technical problem (Technical Problem 11) to be solved by the eleventh invention can be formulated as how to extract simultaneous hand and finger motions across the sensor surface.

## 3.12 Invention 12

The features of claim 90 can be seen to make contribution over D1 (STF-12, Special Technical Features, see Rule 30 EPC):

The technical problem (Technical Problem 12) to be solved by the twelfth invention can be formulated as how to determine roll and tilt hand motions across the sensor.

## 3.13 Invention 13

The features of claim 95 can be seen to make contribution over D1 (STF-13, Special Technical Features, see Rule 30 EPC):

The technical problem (Technical Problem 13) to be solved by the thirteenth invention can be formulated as how to switch the input mode of a gestural input device.

## 3.14 Invention 14

The features of claim 119 can be seen to make contribution over D1 (STF-14, Special Technical Features, see Rule 30 EPC):

The technical problem (Technical Problem 14) to be solved by the fourteenth invention

APLNDC00020419



Case 5:11-cv-01846-LHK   Document 562-2   Filed 12/29/11   Page 22 of 93
Bescheid/Protokoll (Anlage)                Communication/Minutes (Annex)      Notification/Procès-verbal (Annexe)

| | | |
|---|---|---|
| Datum<br>Date<br>Date | 20.04.2006 | Blatt<br>Sheet<br>Feuille |

Blatt / Sheet / Feuille: 7

Anmelde-Nr.:<br>Application No.:<br>Demande n°: 99 904 228.6

can be formulated as how to reduce the hand movements on a motion controlled cursor control device.

3.15 The above analysis shows that none of the fourteen inventions have the same special technical features. Furthermore, since the Special Technical Features of the different inventions solve separate and unrelated technical problems they are not corresponding as required by Rule 30. Hence, the requirement for unity of invention referred to in Article 82 EPC is not fulfilled.

3.16 **As the applicant has not had a search report drawn up on the second and further inventions (Rule 46 EPC), the application will be prosecuted on the basis of the invention in respect of which a search has already been carried out, in other words the invention first mentioned in the claims. The applicant should therefore limit the application to the invention searched and excise those parts of the application relating to the second invention.**

3.17 The subject-matter to be excised may be made the subject of one or more divisional applications. The divisional applications must be filed directly at the European Patent Office in Munich or its branch at The Hague and in the language of the proceedings relating to the present application, cf. Article 76(1) and Rule 4 EPC. The time limit for filing divisional applications (Rule 25(1) EPC) must be observed.

3.18 The above analysis has been made in order to assess the compliance of the application with the requirements of Article 82 EPC and does not imply that the requirements of Article 84 EPC, Article 54 EPC and Article 56 EPC are also met.

4. The application does not meet the requirements of Article 84 EPC, for the following reasons:

4.1 Under Article 84 in combination with Rule 29(2) EPC an application may contain more than one independent claim in a particular category only if the subject matter claimed falls within one or more of the exceptional situations set out in paragraphs (a), (b) or (c) of Rule 29(2) EPC. This is not the case in the present application however, for the

APLNDC00020420



Case 5:11-cv-01846-LHK   Document 562-2   Filed 12/29/11   Page 23 of 93

| | |
|---|---|
| Datum Date Date | 20.04.2006 |
| Blatt Sheet Feuille | 8 |
| Anmelde-Nr.: Application No.: Demande n°: | 99 904 228.6 |

following reason: Although claims 3,26,27 and 28 have been drafted as separate independent claims, they appear to relate effectively to the same subject-matter and to differ from each other only with regard to the definition of the subject-matter for which protection is sought and in respect of the terminology used for the features of that subject-matter.

4.2 The vague statement "spirit of" in the description on page 81 implies that the subject-matter for which protection is sought may be different to that defined by the claims, thereby resulting in lack of clarity of the claims (Article 84 EPC) when used to interpret them (see the Guidelines, C-III, 4.3a). This statement should therefore be amended to remove this inconsistency.

5. The present application does not meet the requirements of Article 52(1) EPC, because the subject-matter of claim 3 is not new in the sense of **Article 54(1) and (2) EPC**.

5.1 Claim 3
D1 discloses a sensing device ("sensing system", page 4, line 41) that is sensitive to changes in self-capacitance (The device of D1 detects the changes in capacitance of the conductor to ground, i.e the changes in self-capacitance of the electrode) brought about by changes in proximity of a touch device to the sensing device ("proximity sensing", page 6, line 38), the sensing device comprising
two electrical switching means connected together in series having a common node, an input node, and an output node ("discharging switch (50)", page 6, line 22; " second charging switch (62)", page 7, line 21 and see figure 5);
a dielectric-covered sensing electrode connected to the common node between the two switching means ("nonconductive surface", page 5, line 5) and
a power supply providing an approximately constant voltage connected to the input node of the series-connected switching means ("voltage V+", page 7, line 23 and figure 5)

Consequently, D1 discloses all the features of claim 3.

6. Dependent claims 1,2,4-16,18-21,25,29-36 do not appear to contain any additional

APLNDC00020421



Case 1:11-cv-08146-LAK   Document 62-2   Filed 12/29/11   Page 24 of 93

Bescheid / Communication / Notification   Minutes / Minutes (Annexe)   Niederschrift / Process-verbal (Annexe)

Datum
Date        20.04.2006
Date

Blatt
Sheet        9
Feuille

Anmelde-Nr.:
Application No.:   99 904 228.6
Demande n°:

features which, in combination with the features of any claim to which they refer, meet the requirements of the EPC with respect inventive step (Article 56 EPC), the reasons being as follows:

6.1   Claim 7

D1 discloses a capacitive touch sensor responsive to the proximity of the user's hand for controlling the faucet of a wash bin. D1 further mentions the application of said sensor in computer input devices, e.g. a keypads. Nevertheless, D1 is silent about the implementation of said sensor in a keypad and about the way the detection of a position of a touch on a keypad is achieved.

The problem to be solved may therefore be regarded as how to implement said sensor configuration in an input device.

In order to solve the aforementioned problem, the skilled person would find document D2, which discloses a touch sensor comprising an array of individually controllable capacitive sensor elements, said sensors providing an indication of the positions that have been touched. The skilled person would therefore regard the sensor array configuration disclosed in D2 as a normal design option in order to solve the problem posed.

6.2   Claims 1,2,4-6,8-16,18-21,25,29-36

The additional features of claims 1,2,4-6,8-16,18-21,25,29-36 merely represent a choice of practical implementation (e.g. claims 1,2 for measuring the charge on the  sensor see D2, Col.9, lines 37-38) that the skilled person would make according to circumstances, without the exercise of inventive skill.

7.   It is not at present apparent which part of the application could serve as a basis for a new, allowable claim. Should the applicant nevertheless regard some particular matter as patentable, an independent claim should be filed taking account of Rule 29(1) EPC. The applicant should also indicate the difference of the subject-matter of the new claim vis-à-vis the state of the art and the significance thereof.

When filing an amended set of claims, the applicant should also take into account the following remarks.

APLNDC00020422


| Datum<br>Date<br>Date | 20.04.2006 | Blatt<br>Sheet<br>Feuille | 10 | Anmelde-Nr.:<br>Application No.:<br>Demande n°: | 99 904 228.6 |

7.1 To meet the requirements of Rule 27(1)(b) EPC, the documents D1,D2 should be identified in the description and the relevant background art disclosed therein should be briefly discussed.

7.2 Any amended independent claim should be filed in the two-part form (cf. Rule 29(1)EPC).

7.3 The features of the claims should be provided with reference signs placed in parentheses to increase the intelligibility of the claims (Rule 29(7) EPC). This applies to both the preamble and characterising portion (see the Guidelines, C-III, 4.11).

7.4 The applicant should bring the description into conformity with the amended claims. Care should be taken during revision, especially of the introductory portion and any statements of problem or advantage, not to add subject-matter which extends beyond the content of the application as originally filed (Article 123(2) EPC).

7.5 The applicant is also reminded that Rule 29(2) EPC only permits more than one independent claim in each category in certain defined circumstances. Therefore, should the applicant be considering filing multiple independent claims in the same category, he should also provide supporting argumentation as to why one more of the Rule 29(2) exceptions applies.

7.6 In order to facilitate the examination of the conformity of the amended application with the requirements of Article 123(2) EPC, the applicant is requested to clearly identify the amendments carried out, irrespective of whether they concern amendments by addition, replacement or deletion, and to indicate the passages of the application as filed on which these amendments are based.

If the applicant regards it as appropriate these indications could be submitted in handwritten form on a copy of the relevant parts of the application as filed.

EPO Form 2906  01.91CSX

APLNDC00020423



Europäisches
Patentamt

European
Patent Office

Office européen
des brevets

European Patent Office
Postbus 5818
2280 HV RIJSWIJK
NETHERLANDS
Tel. +31 (0)70 340-2040
Fax +31 (0)70 340-3016

**For any questions about
this communication:**

Tel.:+31 (0)70 340 45 00

Wombwell, Francis
Potts, Kerr & Co.
15, Hamilton Square
Birkenhead
Merseyside CH41 6BR
GRANDE BRETAGNE

| Date | |
|------|--|
| | 21.12.07 |

| Reference | Application No./Patent No. |
|-----------|----------------------------|
| FB9380H/E14549E | 06016858.0 - 1245 |

| Applicant/Proprietor |
|----------------------|
| Fingerworks, Inc. |

## Communication

The extended European search report is enclosed.

The extended European search report includes, pursuant to Rule 62 EPC, the European search report (R. 61 EPC) or the partial European search report/ declaration of no search (R. 63 EPC) and the European search opinion.

Copies of documents cited in the European search report are attached.

☑    2 additional set(s) of copies of such documents is (are) enclosed as well.

The following have been approved:

☑    Abstract                    ☑    Title

☐    The Abstract was modified and the definitive text is attached to this communication.

The following figure will be published together with the abstract:  1

### Refund of the search fee

If applicable under Article 9 Rules relating to fees, a separate communication from the Receiving Section on the refund of the search fee will be sent later.



APLNDC00020424

Datum
Date
Date

cf

Blatt
Sheet
Feuille

Anmelde-Nr.:
Application No.:
Demande n°:

Case 5:11-cv-01846-LHK   Document 562-2   Filed 12/29/11   Page 27 of 93   016 858.0

The examination is being carried out on the **following application documents**:


**Description, Pages**

1-81                          as originally filed


**Claims, Numbers**

1-3                           as originally filed


**Drawings, Sheets**

1/45-45/45                    as originally filed


1.      Reference is made to the following document/s; the numbering will be adhered to in the rest of the procedure:

        D1:   WO 97/36225 A (SYNAPTICS INC [US]) 2 October 1997 (1997-10-02)


2.      The application does not meet the requirements of Article 84 EPC, for the following reasons:

2.1.    Claim 1:
        (1) The expression "representative tangential velocities" is vague and unclear and leaves the reader in doubt as to the meaning of the technical features to which it refers. With respect to the description, it appears that the expression refers to "a past average translation speed" (description, page 61)

        (2) The expression "...liftoff velocity..." is not supported by the description as required

APLNDC00020425

by Article 84 EPC. The description merely discloses a method comprising the step of "computing translation velocity" (see the description, page 61 and Fig. 37).

(3) Furthermore, the expression "computing a liftoff velocity...<u>prior to</u> the touch device liftoff" as the application as filed does not in include a clear description in order to compute "a liftoff velocity <u>prior to</u> the touch device liftoff". Such a method is therefore not supported by the description as required by Article 84 EPC.

(4) The expression "...if a tangential liftoff direction approximately equals the representative tangential directions and a tangential liftoff speed is greater that a predetermined fractional multiple of representative tangential speeds" is vague and unclear and leaves the reader in doubt as to the meaning of the technical features to which it refers. With respect to the description, it appears that the expression refers to a method step for "computing the percentage acceleration or ratio of current translation speed to a past average translation speed".

(5) Furthermore, The expression "...if a tangential liftoff direction approximately equals the representative tangential directions <u>and</u> a tangential liftoff speed is greater that a predetermined fractional multiple of representative tangential speeds" is not supported by the description as required by Article 84 EPC. According to the description (page 61) the first condition refers to one embodiment and the second condition refers to a second embodiment. Accordingly, the claim 1 is understood as referring to first "or" a second condition.

2.2.  Claims 2,3:
The expressions "...a weighted average of several instantaneous velocities", "the cursor movement velocity is the hand ... <u>scaling velocity</u> extracted from <u>the touching</u> fingers" are vague and unclear and leave the reader in doubt as to the meaning of the technical features to which they refers.

2.3.  The statement in the description "...the spirit of the invention..." on page 81 implies that the subject-matter for which protection is sought may be different to that defined by the claims, thereby resulting in lack of clarity of the claims (Article 84 EPC) when used to interpret them (see the Guidelines, C-III, 4.4). This statement should therefore be deleted.

APLNDC00020426

Datum
Date
Date
cf
Blatt
Sheet
Feuille
Anmelde-Nr.:
Application No:
Demande n°:

3.   Furthermore, notwithstanding the above-mentioned lack of clarity, the subject-matter of claim 1 does not involve an inventive step within the meaning of Article 56 EPC, and the requirements of Article 52(1) EPC are not therefore met.

3.1.   Document D1 discloses a method for continuing generation of cursor movement or scrolling signals from a tangential motion of a touch device over a touch-sensitive input device surface after touch device liftoff from the surface if the touch device operator indicates that cursor movement continuation is desired by accelerating or failing to decelerate the tangential motion of the touch device before the touch device is lifted (pages 48-48),

the method comprising the following steps:

measuring, storing and transmitting to a computing device two or more representative tangential velocities during touch device manipulation;

computing and storing a liftoff velocity from touch device positions immediately prior to the touch device liftoff (page 49, lines 1-11);

entering a mode for continuously moving the cursor (page 49, lines 1-11)

continuously transmitting cursor movement signals after liftoff to a computing device (page 49, lines 1-11);

and ceasing transmission of the cursor movement signals when the touch device engages the surface again (page 49, line 22).

The subject-matter of claim 1 differs from the disclosure of D1 only in that the claimed method comprises the following steps:
"measuring, storing and transmitting to a computing device two or more representative tangential velocities during touch device manipulation"
"comparing the liftoff velocity with the representative tangential velocities, and entering a mode for continuously moving the cursor if a tangential liftoff direction approximately equals the representative tangential directions and a tangential liftoff speed is greater than a predetermined fractional multiple of representative tangential

APLNDC00020427

Datum
Date
Date

cf

Case 5:11-cv-01846-LHK   Document 562-2   Filed 12/29/11   Page 30 of 93

Blatt
Sheet
Feuille

Anmelde-Nr.:
Application No.:
Demande n°:

006 016 858.0

speds"
"continuously transmitting cursor movement signals after liftoff to a computing device
such that the cursor movement velocity corresponds to one of the representative
tangential velocities"

The problem to be solved may therefore be regarded as how to provided an
alternative solution for computing a threshold to start continuous cursor movement.

D1 discloses a method wherein continuous cursor movement is generated when the
finger's speed of motion prior to lift-off is above a predefined threshold.

The solution proposed in claim 1 of the present application cannot be considered to
involve an inventive step since it merely proposes an obvious alternative to compute
a threshold for entering a mode for continuously moving the cursor.
Consequently, the skilled person would arrive at the claimed subject-matter without
exercising any inventive step.


4.      The subject-matter of dependent claims 2-3 is also not allowable, Article 52(1) EPC,
        because not inventive, Article 56 EPC, for the following reasons.

4.1.    The additional features of claims 2-3. merely represent a choice of practical
        implementation that the skilled person would make according to circumstances,
        without the exercise of inventive skill.


5.      It is not at present apparent which part of the application could serve as a basis for a
        new, allowable claim. Should the applicant nevertheless regard some particular
        matter as patentable, an independent claim should be filed taking account of Rule
        43(1) EPC. The applicant should also indicate in the letter of reply the difference of
        the subject-matter of the new claim vis-à-vis the state of the art and the significance
        thereof.

        When filing an amended set of claims, the applicant should also take into account the
        following remarks:

APLNDC00020428

| Datum<br>Date<br>Date | cf | Blatt<br>Sheet<br>Feuille | Anmelde-Nr.:<br>Application No.:<br>Demande n°: | 95 016 858.0 |
|---|---|---|---|---|

5.1.  To meet the requirements of Rule 42(1)(b) EPC, the document D1 should be identified in the description and the relevant background art disclosed therein should be briefly discussed.

5.2.  Any amended independent claim should be filed in the two-part from (cf. Rule 43(1) EPC).

5.3.  The features of the claims should be provided with reference signs placed in parentheses to increase the intelligibility of the claims (Rule 43(7) EPC). This applies to both the preamble and characterising portion (see Guidelines, C-III, 4.19).

5.4.  The applicant should bring the description into conformity with the amended claims. Care should be taken during revision, especially of the introductory portion and any statements of problem or advantage, not to add subject-matter which extends beyond the content of the application as originally filed (Article 123(2) EPC).

5.5.  In order to facilitate the examination of the conformity of the amended application with the requirements of Article 123(2) EPC, the applicant is requested to clearly identify the amendments carried out, irrespective of whether they concern amendments by addition, replacement or deletion, and to indicate the passages of the application as filed on which these amendments are based.

If the applicant regards it as appropriate these indications could be submitted in handwritten form on a copy of the relevant parts of the application as filed.

APLNDC00020429



**European Patent Office**

## EUROPEAN SEARCH REPORT

Application Number

EP 06 01 6858

| | DOCUMENTS CONSIDERED TO BE RELEVANT | | | |
|---|---|---|---|---|
| Category | Citation of document with indication, where appropriate, of relevant passages | | Relevant to claim | CLASSIFICATION OF THE APPLICATION (IPC) |
| X | WO 97/36225 A (SYNAPTICS INC [US]) 2 October 1997 (1997-10-02) * page 35, line 18 - page 49, line 25 * ----- | | 1-3 | INV. G06F3/033 |
| | | | | TECHNICAL FIELDS SEARCHED (IPC) |
| | | | | G06F |

3

| The present search report has been drawn up for all claims | | |
|---|---|---|
| Place of search | Date of completion of the search | Examiner |
| The Hague | 5 December 2007 | Arranz, José |

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or after the filing date
D : document cited in the application
L : document cited for other reasons

.................................................................
& : member of the same patent family, corresponding document

EPO FORM 1503 03.82 (P04C01)

APLNDC00020430

**ANNEX TO THE EUROPEAN SEARCH REPORT
ON EUROPEAN PATENT APPLICATION NO.**                    EP 06 01 6858

This annex lists the patent family members relating to the patent documents cited in the above-mentioned European search report.
The members are as contained in the European Patent Office EDP file on
The European Patent Office is in no way liable for these particulars which are merely given for the purpose of information.

05-12-2007

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| WO 9736225 | A | 02-10-1997 | CN | 1185844 A | 24-06-1998 |
| | | | EP | 0829043 A1 | 18-03-1998 |
| | | | HK | 1017934 A1 | 01-04-2005 |
| | | | JP | 3764171 B2 | 05-04-2006 |
| | | | JP | 11506559 T | 08-06-1999 |
| | | | JP | 3920833 B2 | 30-05-2007 |
| | | | JP | 2004094964 A | 25-03-2004 |
| | | | JP | 2005149531 A | 09-06-2005 |

------------------------------------------------------------------------

For more details about this annex : see Official Journal of the European Patent Office, No. 12/82

APLNDC00020431



European Patent Office
Postbus 5818
2280 HV RIJSWIJK
NETHERLANDS
Tel. +31 (0)70 340-2040
Fax +31 (0)70 340-3016

Wombwell, Francis
Potts, Kerr & Co.
15, Hamilton Square
Birkenhead
Merseyside CH41 6BR
GRANDE BRETAGNE

**For any questions about
this communication:**

Tel.:+31 (0)70 340 45 00

| | |
|---|---|
| Date | 14.03.08 |

| Reference | Application No./Patent No. |
|---|---|
| FB9380B/E14549E | 06016856.4 - 1245 |

| Applicant/Proprietor |
|---|
| Fingerworks, Inc. |

## Communication

The extended European search report is enclosed.

The extended European search report includes, pursuant to Rule 62 EPC, the European search report (R. 61 EPC) or the partial European search report/ declaration of no search (R. 63 EPC) and the European search opinion.

Copies of documents cited in the European search report are attached.

☑   2 additional set(s) of copies of such documents is (are) enclosed as well.

The following have been approved:

☑   Abstract          ☑   Title

☐   The Abstract was modified and the definitive text is attached to this communication.

The following figure will be published together with the abstract:  1

### Refund of the search fee

If applicable under Article 9 Rules relating to fees, a separate communication from the Receiving Section on the refund of the search fee will be sent later.



APLNDC00020432

Datum
Date
Date

cf

Blatt
Sheet
Feuille

Anmelde-Nr.:
Application No.:
Demande n°:

Case 5:11-cv-01846-LHK   Document 562-2   Filed 12/29/11   Page 35 of 93   016 856.4

The examination is being carried out on the **following application documents**:


**Description, Pages**

1-81                        as originally filed


**Claims, Numbers**

1-3                         as originally filed


**Drawings, Sheets**

1/45-45/45                  as originally filed


1.    Reference is made to the following documents; the numbering will be adhered to in
      the rest of the procedure:

      D1:  US-A-5 625 715 (TREW TIMOTHY IAN PATERSON [GB] ET AL) 29 April 1997
           (1997-04-29)


2.    Article 84 EPC
      The application does not meet the requirements of Article 84 EPC, for the following
      reasons:

2.1.  Claims 1,2,3
      The following expressions "establishing fingertip, thumb or palm identities for each
      contact", "establishing an offset weighting for each contact", "computing the
      confidence in current contact identifications from the amount of information available
      for the identifications", "computing a weighted average of the individual hand contact

APLNDC00020433

velocities", "predicting a current hand and finger offset...", "computing current hand an finger offsets...", "setting the currently measured hand and finger offsets to zero if the hand has no contacts","...wherein the relative weighting given to the measured offsets increases in proportion to the confidence level in current identifications" and the wording of claim 3 merely attempt to define the subject-matter in terms of the result to be achieved. Such a definition is only allowable under the conditions elaborated in the Guidelines C-III, 4.10. In this instance, however, such a formulation is not allowable because it appears possible to define the subject-matter in more concrete terms, viz. in terms of how the effect is to be achieved.

2.2. Claims 1,2,3
The following expressions: "biasing future hand contact identifications", "offset weighting", "...a weighted average of the difference...", "a predetermined default position of a hand part", "...conservative estimates of...are maintained", "...even when hand contact identifications become unreliable", "the confidence in...", "the amount of information", "current contact identities", "the weighted average of predicted offsets", "the highest identification confidence" are vague and unclear and leaves the reader in doubt as to the meaning of the technical features to which they refer.

2.3. The statement in the description "...the spirit of the invention..." on page 81 implies that the subject-matter for which protection is sought may be different to that defined by the claims, thereby resulting in lack of clarity of the claims (Article 84 EPC) when used to interpret them (see the Guidelines, C-III, 4.4). This statement should therefore be deleted.

3. Article 56 EPC
Despite the objections raised above relating to the clarity of the claims an opinion of the examining division regarding an inventive step is given subsequently.

3.1. The present application does not meet the requirements of Article 52(1) EPC, because the subject-matter of claim 1 does not involve an inventive step in the sense of Article 56 EPC.

3.2. As far as claim 1 can be understood despite its lack of clarity, the subject-matter of this claim relates to a method for computing an offset between an image and a

APLNDC00020434

template ("predetermined default position") in order to predict the position of the moving image and to adapt the position of the template to this predicted position (see the description, fig.23, step 352). Such a method is disclosed in D1 (Col.6, line 41 - Col.11, line 67).

The subject-matter of claim 1 is distinguished from D1 in that the method predicts the position of a hand whereas in D1 the method is applied to a face.

The problem to be solved may therefore be regarded as how to apply the teaching of D1 in a hand tracking system.

The solution proposed in claim 1 cannot be considered as involving an inventive step since it merely applies the teaching of D1 in an analogous situation, namely for an image representing a hand of user. Consequently, the subject-matter of claim 1 does not involve an inventive step and therefore does not satisfy the criterion set forth in Articles 52(1) and 56 EPC.

4.  Dependent claims 2-3 do not contain any features which, in combination with the features of any claim to which they refer, meet the requirements of the EPC in respect of inventive step, see document D1 and the corresponding passages cited in the search report.

5.  It is not at present apparent which part of the application could serve as a basis for a new, allowable claim. Should the applicant nevertheless regard some particular matter as patentable, an independent claim should be filed taking account of Rule 43(1) EPC. The applicant should also indicate in the letter of reply the difference of the subject-matter of the new claim vis-à-vis the state of the art and the significance thereof.

When filing an amended set of claims, the applicant should also take into account the following remarks:

5.1.  To meet the requirements of Rule 42(1)(b) EPC, the document D1 should be identified in the description and the relevant background art disclosed therein should be briefly discussed.

APLNDC00020435

Datum
Date
Date

cf

Case 5:11-cv-01846-LHK   Document 562-2   Filed 12/29/11   Page 38 of 93

Blatt
Sheet
Feuille

Anmelde-Nr.:
Application No.:
Demande n°:

96 016 856.4

5.2.  Any amended independent claim should be filed in the two-part from (cf. Rule 43(1) EPC).

5.3.  The features of the claims should be provided with reference signs placed in parentheses to increase the intelligibility of the claims (Rule 43(7) EPC). This applies to both the preamble and characterising portion (see Guidelines, C-III, 4.19).

5.4.  The applicant should bring the description into conformity with the amended claims. Care should be taken during revision, especially of the introductory portion and any statements of problem or advantage, not to add subject-matter which extends beyond the content of the application as originally filed (Article 123(2) EPC).

5.5.  In order to facilitate the examination of the conformity of the amended application with the requirements of Article 123(2) EPC, the applicant is requested to clearly identify the amendments carried out, irrespective of whether they concern amendments by addition, replacement or deletion, and to indicate the passages of the application as filed on which these amendments are based.

If the applicant regards it as appropriate these indications could be submitted in handwritten form on a copy of the relevant parts of the application as filed.

APLNDC00020436



**European Patent Office**

## EUROPEAN SEARCH REPORT

Application Number

EP 06 01 6856

| DOCUMENTS CONSIDERED TO BE RELEVANT | | | |
|---|---|---|---|
| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (IPC) |
| X | US 5 625 715 A (TREW TIMOTHY IAN PATERSON [GB] ET AL) 29 April 1997 (1997-04-29) * column 2, lines 15-55; figures 1-6 * * column 6, line 40 - column 11, line 67 * ----- | 1-3 | INV. G06F3/033 |
| A | LEE S K ET AL: "A Multi-Touch Three Dimensional Touch-Sensitive Tablet" PROCEEDINGS OF CHI: ACM CONFERENCE ON HUMAN FACTORS IN COMPUTING SYSTEMS, XX, XX, April 1985 (1985-04), pages 21-25, XP009074849 * the whole document * ----- | 1-3 | |
| A | PAVLOVIC V I ET AL: "VISUAL INTERPRETATION OF HAND GESTURES FOR HUMAN-COMPUTER INTERACTION: A REVIEW" IEEE TRANSACTIONS ON PATTERN ANALYSIS AND MACHINE INTELLIGENCE, IEEE SERVICE CENTER, LOS ALAMITOS, CA, US, vol. 19, no. 7, July 1997 (1997-07), pages 677-695, XP000698168 ISSN: 0162-8828 * the whole document * ----- | 1-3 | **TECHNICAL FIELDS SEARCHED (IPC)** G06F G06K G06T |
| A | DAVIS J ET AL: "Determining 3-D hand motion" SIGNALS, SYSTEMS AND COMPUTERS, 1994. 1994 CONFERENCE RECORD OF THE TWENTY-EIGHTH ASILOMAR CONFERENCE ON PACIFIC GROVE, CA, USA 31 OCT.-2 NOV. 1994, LOS ALAMITOS, CA, USA,IEEE COMPUT. SOC, US, 31 October 1994 (1994-10-31), pages 1262-1266, XP010148780 ISBN: 0-8186-6405-3 * the whole document * ----- | 1-3 | |

The present search report has been drawn up for all claims

| Place of search | Date of completion of the search | Examiner |
|---|---|---|
| The Hague | 7 March 2008 | Arranz, José |

2

EPO FORM 1503 03.82 (P04C01)

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or after the filing date
D : document cited in the application
L : document cited for other reasons

& : member of the same patent family, corresponding document

APLNDC00020437

## ANNEX TO THE EUROPEAN SEARCH REPORT
## ON EUROPEAN PATENT APPLICATION NO.

EP 06 01 6856

This annex lists the patent family members relating to the patent documents cited in the above-mentioned European search report.
The members are as contained in the European Patent Office EDP file on
The European Patent Office is in no way liable for these particulars which are merely given for the purpose of information.

07-03-2008

| Patent document cited in search report | | Publication date | Patent family member(s) | Publication date |
|---|---|---|---|---|
| US 5625715 | A | 29-04-1997 | NONE | |

For more details about this annex : see Official Journal of the European Patent Office, No. 12/82

APLNDC00020438



European Patent Office
Postbus 5818
2280 HV RIJSWIJK
NETHERLANDS
Tel. +31 (0)70 340-2040
Fax +31 (0)70 340-3016

Wombwell, Francis
Potts, Kerr & Co.
15, Hamilton Square
Birkenhead
Merseyside CH41 6BR
GRANDE BRETAGNE

**For any questions about this communication:**

Tel.:+31 (0)70 340 45 00

| Date | |
|---|---|
| | 16-09-2008 |

| Reference | Application No./Patent No. |
|---|---|
| FB9380B/E14549E | 06016856.4 - 1245 / 1717682 |

| Applicant/Proprietor | |
|---|---|
| Apple Inc. | |

## Communication pursuant to Article 94(3) EPC

The examination of the above identified application has revealed that it does not meet the requirements of the European Patent Convention for the reasons already stated in the European search opinion. If the deficiencies indicated are not rectified the application may be refused pursuant to Article 97(2) EPC.

You are invited to file your observations and insofar as the deficiencies are such as to be rectifiable, to correct the indicated deficiencies within a period

### of four months

from the notification of this communication, this period being computed in accordance with Rules 126(2) and 131(2) and (4) EPC.

**One set** of amendments to the description, claims and drawings is to be filed within the said period on separate sheets (R. 50(1) EPC).

**Failure to comply with this invitation in due time will result in the application being deemed to be withdrawn (Art. 94(4) EPC).**

Primary Examiner
**for the Examining Division**



**Registered letter**

APLNDC00020439



European Patent Office
Postbus 5818
2280 HV RIJSWIJK
NETHERLANDS
Tel. +31 (0)70 340-2040
Fax +31 (0)70 340-3016

Wombwell, Francis
Potts, Kerr & Co.
15, Hamilton Square
Birkenhead
Merseyside CH41 6BR
GRANDE BRETAGNE

**For any questions about
this communication:**
Tel.:+31 (0)70 340 45 00

| Date | |
|---|---|
| | 14.03.08 |

| Reference | Application No./Patent No. |
|---|---|
| FB9380B/E14549E | 06016856.4 - 1245 |

| Applicant/Proprietor |
|---|
| Fingerworks, Inc. |

## Communication

The extended European search report is enclosed.

The extended European search report includes, pursuant to Rule 62 EPC, the European search report (R. 61 EPC) or the partial European search report/ declaration of no search (R. 63 EPC) and the European search opinion.

Copies of documents cited in the European search report are attached.

☑   2 additional set(s) of copies of such documents is (are) enclosed as well.

The following have been approved:

☑   Abstract          ☑   Title

☐   The Abstract was modified and the definitive text is attached to this communication.

The following figure will be published together with the abstract:  1

**Refund of the search fee**

If applicable under Article 9 Rules relating to fees, a separate communication from the Receiving Section on the refund of the search fee will be sent later.



APLNDC00020440

The examination is being carried out on the **following application documents**:


**Description, Pages**

1-81                          as originally filed


**Claims, Numbers**

1-3                           as originally filed


**Drawings, Sheets**

1/45-45/45                    as originally filed


1.    Reference is made to the following documents; the numbering will be adhered to in the rest of the procedure:

D1:   US-A-5 625 715 (TREW TIMOTHY IAN PATERSON [GB] ET AL) 29 April 1997 (1997-04-29)


2.    Article 84 EPC
      The application does not meet the requirements of Article 84 EPC, for the following reasons:

2.1.  Claims 1,2,3
      The following expressions "establishing fingertip, thumb or palm identities for each contact", "establishing an offset weighting for each contact", "computing the confidence in current contact identifications from the amount of information available for the identifications", "computing a weighted average of the individual hand contact

APLNDC00020441

Datum
Date
Date

cf

Blatt
Sheet
Feuille

Anmelde-Nr.:
Application No.:
Demande n°:

05 016 856.4

velocities", "predicting a current hand and finger offset...", "computing current hand an finger offsets...", "setting the currently measured hand and finger offsets to zero if the hand has no contacts","...wherein the relative weighting given to the measured offsets increases in proportion to the confidence level in current identifications" and the wording of claim 3 merely attempt to define the subject-matter in terms of the result to be achieved. Such a definition is only allowable under the conditions elaborated in the Guidelines C-III, 4.10. In this instance, however, such a formulation is not allowable because it appears possible to define the subject-matter in more concrete terms, viz. in terms of how the effect is to be achieved.

2.2.    Claims 1,2,3
The following expressions: "biasing future hand contact identifications", "offset weighting", "...a weighted average of the difference...", "a predetermined default position of a hand part", "...conservative estimates of...are maintained", "...even when hand contact identifications become unreliable", "the confidence in...", "the amount of information", "current contact identities", "the weighted average of predicted offsets", "the highest identification confidence" are vague and unclear and leaves the reader in doubt as to the meaning of the technical features to which they refer.

2.3.    The statement in the description "...the spirit of the invention..." on page 81 implies that the subject-matter for which protection is sought may be different to that defined by the claims, thereby resulting in lack of clarity of the claims (Article 84 EPC) when used to interpret them (see the Guidelines, C-III, 4.4). This statement should therefore be deleted.

3.    Article 56 EPC
Despite the objections raised above relating to the clarity of the claims an opinion of the examining division regarding an inventive step is given subsequently.

3.1.    The present application does not meet the requirements of Article 52(1) EPC, because the subject-matter of claim 1 does not involve an inventive step in the sense of Article 56 EPC.

3.2.    As far as claim 1 can be understood despite its lack of clarity, the subject-matter of this claim relates to a method for computing an offset between an image and a

APLNDC00020442

template ("predetermined default position") in order to predict the position of the moving image and to adapt the position of the template to this predicted position (see the description, fig.23, step 352). Such a method is disclosed in D1 (Col.6, line 41 - Col.11, line 67).

The subject-matter of claim 1 is distinguished from D1 in that the method predicts the position of a hand whereas in D1 the method is applied to a face.

The problem to be solved may therefore be regarded as how to apply the teaching of D1 in a hand tracking system.

The solution proposed in claim 1 cannot be considered as involving an inventive step since it merely applies the teaching of D1 in an analogous situation, namely for an image representing a hand of user. Consequently, the subject-matter of claim 1 does not involve an inventive step and therefore does not satisfy the criterion set forth in Articles 52(1) and 56 EPC.

4.  Dependent claims 2-3 do not contain any features which, in combination with the features of any claim to which they refer, meet the requirements of the EPC in respect of inventive step, see document D1 and the corresponding passages cited in the search report.

5.  It is not at present apparent which part of the application could serve as a basis for a new, allowable claim. Should the applicant nevertheless regard some particular matter as patentable, an independent claim should be filed taking account of Rule 43(1) EPC. The applicant should also indicate in the letter of reply the difference of the subject-matter of the new claim vis-à-vis the state of the art and the significance thereof.

When filing an amended set of claims, the applicant should also take into account the following remarks:

5.1.  To meet the requirements of Rule 42(1)(b) EPC, the document D1 should be identified in the description and the relevant background art disclosed therein should be briefly discussed.

APLNDC00020443

Datum
Date
Date

Blatt
Sheet
Feuille

Anmelde-Nr.:
Application No.:
Demande n°:

cf 016 856.4

5.2.   Any amended independent claim should be filed in the two-part from (cf. Rule 43(1) EPC).

5.3.   The features of the claims should be provided with reference signs placed in parentheses to increase the intelligibility of the claims (Rule 43(7) EPC). This applies to both the preamble and characterising portion (see Guidelines, C-III, 4.19).

5.4.   The applicant should bring the description into conformity with the amended claims. Care should be taken during revision, especially of the introductory portion and any statements of problem or advantage, not to add subject-matter which extends beyond the content of the application as originally filed (Article 123(2) EPC).

5.5.   In order to facilitate the examination of the conformity of the amended application with the requirements of Article 123(2) EPC, the applicant is requested to clearly identify the amendments carried out, irrespective of whether they concern amendments by addition, replacement or deletion, and to indicate the passages of the application as filed on which these amendments are based.

If the applicant regards it as appropriate these indications could be submitted in handwritten form on a copy of the relevant parts of the application as filed.

APLNDC00020444



**European Patent Office**

**EUROPEAN SEARCH REPORT**

Application Number

EP 06 01 6856

| | DOCUMENTS CONSIDERED TO BE RELEVANT | | |
|---|---|---|---|
| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (IPC) |
| X | US 5 625 715 A (TREW TIMOTHY IAN PATERSON [GB] ET AL) 29 April 1997 (1997-04-29) * column 2, lines 15-55; figures 1-6 * * column 6, line 40 - column 11, line 67 * ----- | 1-3 | INV. G06F3/033 |
| A | LEE S K ET AL: "A Multi-Touch Three Dimensional Touch-Sensitive Tablet" PROCEEDINGS OF CHI: ACM CONFERENCE ON HUMAN FACTORS IN COMPUTING SYSTEMS, XX, XX, April 1985 (1985-04), pages 21-25, XP009074849 * the whole document * ----- | 1-3 | |
| A | PAVLOVIC V I ET AL: "VISUAL INTERPRETATION OF HAND GESTURES FOR HUMAN-COMPUTER INTERACTION: A REVIEW" IEEE TRANSACTIONS ON PATTERN ANALYSIS AND MACHINE INTELLIGENCE, IEEE SERVICE CENTER, LOS ALAMITOS, CA, US, vol. 19, no. 7, July 1997 (1997-07), pages 677-695, XP000698168 ISSN: 0162-8828 * the whole document * ----- | 1-3 | TECHNICAL FIELDS SEARCHED (IPC) G06F G06K G06T |
| A | DAVIS J ET AL: "Determining 3-D hand motion" SIGNALS, SYSTEMS AND COMPUTERS, 1994. 1994 CONFERENCE RECORD OF THE TWENTY-EIGHTH ASILOMAR CONFERENCE ON PACIFIC GROVE, CA, USA 31 OCT.-2 NOV. 1994, LOS ALAMITOS, CA, USA,IEEE COMPUT. SOC, US, 31 October 1994 (1994-10-31), pages 1262-1266, XP010148780 ISBN: 0-8186-6405-3 * the whole document * ----- | 1-3 | |

The present search report has been drawn up for all claims

2

| Place of search | Date of completion of the search | Examiner |
|---|---|---|
| The Hague | 7 March 2008 | Arranz, José |

EPO FORM 1503 03.82 (P04C01)

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or after the filing date
D : document cited in the application
L : document cited for other reasons
...................................................................
& : member of the same patent family, corresponding document

**ANNEX TO THE EUROPEAN SEARCH REPORT
ON EUROPEAN PATENT APPLICATION NO.**

EP 06 01 6856

This annex lists the patent family members relating to the patent documents cited in the above-mentioned European search report.
The members are as contained in the European Patent Office EDP file on
The European Patent Office is in no way liable for these particulars which are merely given for the purpose of information.

07-03-2008

| Patent document cited in search report | | Publication date | Patent family member(s) | Publication date |
|---|---|---|---|---|
| US 5625715 | A | 29-04-1997 | NONE | |

-------------------------------------------------------------------------

EPO FORM P0459

For more details about this annex : see Official Journal of the European Patent Office, No. 12/82

APLNDC00020446



Europäisches
Patentamt

European
Patent Office

Office européen
des brevets

European Patent Office
Postbus 5818
2280 HV RIJSWIJK
NETHERLANDS
Tel.: +31 70 340 2040
Fax: +31 70 340 3016



Wombwell, Francis
Potts, Kerr & Co.
15, Hamilton Square
Birkenhead
Merseyside CH41 6BR
GRANDE BRETAGNE

**EPO Customer Services**

Tel.: +31 (0)70 340 45 00

| | |
|---|---|
| Date | 03.12.07 |

| Reference | Application No./Patent No. |
|---|---|
| FB9380D/E14549E | 06016830.9 - 1245 |

| Applicant/Proprietor |
|---|
| Fingerworks, Inc. |

## Communication

The extended European search report is enclosed.

The extended European search report includes, pursuant to Rule 44a EPC, the European search report (R. 44 EPC) or the partial European search report/ declaration of no search (R. 45 EPC) and the European search opinion.

Copies of documents cited in the European search report are attached.

☑    2 additional set(s) of copies of such documents is (are) enclosed as well.

The following have been approved:

☑    Abstract              ☑    Title

☐    the Abstract was modified and the definitive text is attached to this communication.

The following figure will be published together with the abstract:  1

**Refund of the search fee**

If applicable under Article 10 Rules relating to fees, a separate communication from the Receiving Section on the refund of the search fee will be sent later.



**Registered letter**

APLNDC00020447



| Datum Date Date | cf Form 1507 | Blatt Sheet Feuille | 1 | Anmelde-Nr.: Application No.: 06 016 830.9 Demande n°: |
|---|---|---|---|---|

The examination is being carried out on the **following application documents**:

**Description, Pages**

1-81                as originally filed

**Claims, Numbers**

1-14                as originally filed

**Drawings, Sheets**

1/45-45/45          as originally filed

1.  Reference is made to the following documents; the numbering will be adhered to in the rest of the procedure:

    D1: BUXTON W ET AL: "Issues and techniques in touch-sensitive tablet input" PROCEEDINGS ACM SIGGRAPH, XX, XX, 22 July 1985 (1985-07-22), pages 215-224, XP002363467
    D2: WO 92/02000 A (BRITISH TELECOMM [GB]) 6 February 1992 (1992-02-06)

2.  The application does not meet the requirements of Article 84 EPC, for the following reasons.

2.1. Claim 1 defines a method for determining which hand causes each surface contact comprising by dividing the set of all surface contacts into left hand clusters and right

APLNDC00020448

| Datum<br>Date<br>Date | cf Form 1507 | Blatt<br>Sheet<br>Feuille | 2 | Anmelde-Nr.:<br>Application No.:   06 016 830.9<br>Demande n°: |

hand clusters. Such an expression merely attempts to define the invention by a result to be achieved, since the claim does not specify any technical feature in order to achieve the division into a left hand cluster and a right hand cluster. Such a definition is only allowable under the conditions elaborated in the Guidelines C-III, 4.7. In this instance, however, such a formulation is not allowable because it appears possible to define the subject-matter in more concrete terms, viz. in terms of how the effect is to be achieved.

A similar objection applies to following expressions:

(1) Claim 1: "assigning finger and palm identities to the contacts", "computing for each partition an assignment fitness measure", "choosing the partition which has the best fitness measure" and "recognizing each hand's configuration from the combination of features..."

(2) Claim 2: "the hand assignments are recomputed only for proximity images in which new hand contacts are stabilizing"

(3) Claim 3: "wherein each attractor point is placed at an expected position of a corresponding hand part"

(4) Claim 5: "constructing a partition from each contour by tentatively assigning contacts..."

2.2.   The following terms have no well defined meaning in the art and leave the reader in doubt as to the meaning of the feature to which they refer:

(1) Claim 1: "attractor points", "assignment fitness measure", "true contact identities"
(2) Claim 2: "proximity images"
(3) Claim 11: "handedness weighting"

2.3.   Claim 2: It is not clear what is meant by "...in which new hand contacts <u>are</u> <u>stabilizing</u>". It is not clear if the expression refers to moving or not moving hand contacts".

APLNDC00020449

2.4.  Claim 10: It is not clear what is meant by the term "velocity" since the claims define a method for hand recognition and not gesture or movement detection.

2.5.  Claims 11-14: the wording of claims 11 - 14 is obscure and leaves the reader in doubt as to the meaning of the technical features to which it refers, thereby rendering the definition of the subject-matter of said claims unclear (Article 84 EPC).

2.6.  The statement in the description "...the spirit of the invention..." on page 81 implies that the subject-matter for which protection is sought may be different to that defined by the claims, thereby resulting in lack of clarity of the claims (Article 84 EPC) when used to interpret them (see the Guidelines, C-III, 4.3a). This statement should therefore be deleted.

3.  Furthermore, the above-mentioned lack of clarity notwithstanding, the subject-matter of claim 1 does not involve an inventive step in the sense of Article 56 EPC and therefore the requirements of Article 52(1) EPC are not met.

3.1.  Document D1 discloses a multi-touch sensitive touch tablet detecting both hands of a user. D1 is silent about the method for recognizing the hands on said tablet.

The problem to be solved by the present invention may therefore be regarded as to provide a method for recognizing which hand causes contact.

The solution proposed in claim 1 of the present application cannot be considered as involving an inventive step (Articles 52(1) and 56 EPC) since it merely refers to the well known template matching method used in image processing to detect body parts on an image (e.g. see D2, pages 22-23 and Fig.3)

As a consequence, the subject-matter of claim 1 does not involve an inventive step.

3.2.  Dependent claims 2-14 do not appear to contain any additional features which, in combination with the features of any claim to which they refer, meet the requirements of the EPC with respect to inventive step, the reasons being as follows: they are

APLNDC00020450

Case: Shield Protocol 1846-1-HK   Document 502-2 Filed 12/29/11   Page 53 of 93

| | | | |
|---|---|---|---|
| Datum<br>Date<br>Date | cf Form 1507 | Blatt<br>Sheet<br>Feuille  4 | Anmelde-Nr.:<br>Application No.:  06 016 830.9<br>Demande n°: |

obvious in the light of the disclosures of D1 and D2 and the common knowledge of a person skilled in the art.

4.  It is not at present apparent which part of the application could serve as a basis for a new, allowable claim. Should the applicant nevertheless regard some particular matter as patentable, an independent claim should be filed taking account of Rule 29(1) EPC. The applicant should also indicate in the letter of reply the difference of the subject-matter of the new claim vis-à-vis the state of the art and the significance thereof.

When filing an amended set of claims, the applicant should also take into account the following remarks:

4.1.  To meet the requirements of Rule 27(1)(b) EPC, the documents D1,D2 should be identified in the description and the relevant background art disclosed therein should be briefly discussed.

4.2.  Any amended independent claim should be filed in the two-part from (cf. Rule 29(1) EPC).

4.3.  The features of the claims should be provided with reference signs placed in parentheses to increase the intelligibility of the claims (Rule 29(7) EPC). This applies to both the preamble and characterising portion (see Guidelines, C-III, 4.11).

4.4.  The applicant should bring the description into conformity with the amended claims. Care should be taken during revision, especially of the introductory portion and any statements of problem or advantage, not to add subject-matter which extends beyond the content of the application as originally filed (Article 123(2) EPC).

4.5.  In order to facilitate the examination of the conformity of the amended application with the requirements of Article 123(2) EPC, the applicant is requested to clearly identify the amendments carried out, irrespective of whether they concern amendments by addition, replacement or deletion, and to indicate the passages of

EPO Form 1703  07.05CSX

APLNDC00020451

| Datum<br>Date<br>Date | cf Form 1507 | Blatt<br>Sheet<br>Feuille | 5 | Anmelde-Nr.:<br>Application No.:  06 016 830.9<br>Demande n°: |

the application as filed on which these amendments are based.

If the applicant regards it as appropriate these indications could be submitted in handwritten form on a copy of the relevant parts of the application as filed.

EPO Form 1703  07.05CSX

APLNDC00020452



**European Patent Office**

## EUROPEAN SEARCH REPORT

Application Number

EP 06 01 6830

### DOCUMENTS CONSIDERED TO BE RELEVANT

| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (IPC) |
|---|---|---|---|
| Y | BUXTON W ET AL: "Issues and techniques in touch-sensitive tablet input" PROCEEDINGS ACM SIGGRAPH, XX, XX, 22 July 1985 (1985-07-22), pages 215-224, XP002363467 * the whole document * ----- | 1-14 | INV. G06F3/033 G06K9/00 |
| Y | WO 92/02000 A (BRITISH TELECOMM [GB]) 6 February 1992 (1992-02-06) * page 20, line 16 - page 24, line 32; figure 3 * ----- | 1-14 | |
| A | US 5 594 469 A (FREEMAN WILLIAM T [US] ET AL) 14 January 1997 (1997-01-14) * the whole document * ----- | | |
| A | US 5 548 667 A (TU PETER [JP]) 20 August 1996 (1996-08-20) * the whole document * ----- | 1-14 | |
| A | PAVLOVIC V I ET AL: "VISUAL INTERPRETATION OF HAND GESTURES FOR HUMAN-COMPUTER INTERACTION: A REVIEW" IEEE TRANSACTIONS ON PATTERN ANALYSIS AND MACHINE INTELLIGENCE, IEEE SERVICE CENTER, LOS ALAMITOS, CA, US, vol. 19, no. 7, July 1997 (1997-07), pages 677-695, XP000698168 ISSN: 0162-8828 * the whole document * ----- -/-- | 1-14 | TECHNICAL FIELDS SEARCHED (IPC) G06F G06K |

The present search report has been drawn up for all claims

| Place of search | Date of completion of the search | Examiner |
|---|---|---|
| The Hague | 21 November 2007 | Arranz, José |

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or after the filing date
D : document cited in the application
L : document cited for other reasons
..........................................................................
& : member of the same patent family, corresponding document

EPO FORM 1503 03.82 (P04C01)

3

APLNDC00020453



**European Patent Office**

**EUROPEAN SEARCH REPORT**

Application Number

EP 06 01 6830

| | DOCUMENTS CONSIDERED TO BE RELEVANT | | |
|---|---|---|---|
| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (IPC) |
| A | CUTLER L D ET AL ASSOCIATION FOR COMPUTING MACHINERY: "TWO-HANDED DIRECT MANIPULATION ON THE RESPONSIVE WORKBENCH" PROCEEDINGS OF THE 1997 SYMPOSIUM ON INTERACTIVE 3D GRAPHICS. PROVIDENCE, APR. 27 - 30, 1997, PROCEEDINGS OF THE SYMPOSIUM ON INTERACTIVE 3D GRAPHICS, NEW YORK, ACM, US, 27 April 1997 (1997-04-27), pages 107-114, XP000725362 ISBN: 0-89791-884-3 * the whole document * ----- | 1-14 | |
| | | | TECHNICAL FIELDS SEARCHED (IPC) |

| | The present search report has been drawn up for all claims | | |
|---|---|---|---|
| | Place of search | Date of completion of the search | Examiner |
| | The Hague | 21 November 2007 | Arranz, José |

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another
    document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or
    after the filing date
D : document cited in the application
L : document cited for other reasons
................................................................
& : member of the same patent family, corresponding
    document

EPO FORM 1503 03.82 (P04C01)

3

APLNDC00020454

**ANNEX TO THE EUROPEAN SEARCH REPORT
ON EUROPEAN PATENT APPLICATION NO.**                    EP 06 01 6830

This annex lists the patent family members relating to the patent documents cited in the above-mentioned European search report.
The members are as contained in the European Patent Office EDP file on
The European Patent Office is in no way liable for these particulars which are merely given for the purpose of information.

21-11-2007

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| WO 9202000 | A | 06-02-1992 | CA | 2087523 C | 15-04-1997 |
| | | | DE | 69131350 D1 | 22-07-1999 |
| | | | DE | 69131350 T2 | 30-12-1999 |
| | | | EP | 0539439 A1 | 05-05-1993 |
| | | | JP | 3040466 B2 | 15-05-2000 |
| | | | JP | 5508951 T | 09-12-1993 |
| | | | US | 5719951 A | 17-02-1998 |
| US 5594469 | A | 14-01-1997 | JP | 2941207 B2 | 25-08-1999 |
| | | | JP | 8315154 A | 29-11-1996 |
| US 5548667 | A | 20-08-1996 | NONE | | |

EPO FORM P0459

For more details about this annex : see Official Journal of the European Patent Office, No. 12/82

APLNDC00020455



Europäisches
Patentamt

European
Patent Office

Office européen
des brevets

European Patent Office
Postbus 5818
2280 HV RIJSWIJK
NETHERLANDS
Tel. +31 (0)70 340-2040
Fax +31 (0)70 340-3016



Wombwell, Francis
Potts, Kerr & Co.
15, Hamilton Square
Birkenhead
Merseyside CH41 6BR
GRANDE BRETAGNE

**For any questions about
this communication:**
Tel.:+31 (0)70 340 45 00

| Date | |
|---|---|
| | 06−08−2008 |

| Reference | Application No./Patent No. |
|---|---|
| FB9380D/E14549E | 06016830.9 - 1245 / 1717677 |

| Applicant/Proprietor | |
|---|---|
| Apple Inc. | |

## Communication pursuant to Article 94(3) EPC

The examination of the above identified application has revealed that it does not meet the requirements of the European Patent Convention for the reasons already stated in the European search opinion. If the deficiencies indicated are not rectified the application may be refused pursuant to Article 97(2) EPC.

You are invited to file your observations and insofar as the deficiencies are such as to be rectibible, to correct the indicated deficiencies within a period

### of four months

from the notification of this communication, this period being computed in accordance with Rules 126(2) and 131(2) and (4) EPC.

**One set** of amendments to the description, claims and drawings is to be filed within the said period on separate sheets (R. 50(1) EPC).

**Failure to comply with this invitation in due time will result in the application being deemed to be withdrawn (Art. 94(4) EPC).**

Primary Examiner
**for the Examining Division**



**Registered letter**

APLNDC00020456

## Annex to EPO Form 2001A

The following applies in connection with the entry into force of the revised text of the European Patent Convention (EPC 2000):

1. The communication under Article 94(3) EPC 2000 refers to the reasons, given in the European search opinion, for which the application does not meet the requirements of the European Patent Convention.

2. If a European search opinion has been drawn up before EPC 2000 enters into force, it will contain references to provisions of EPC 1973 or of the Implementing Regulations to EPC 1973. In view of the entry into force of EPC 2000, such references are therefore to be read, for the purposes of the rest of the procedure and subject to the transitional provisions relating to EPC 2000, as <u>references to the corresponding provisions of EPC 2000 or of the Implementing Regulations to EPC 2000.</u>

3. It should be noted in this connection that EPC 2000 leaves <u>substantive</u> patent law largely unchanged. The principal substantive amendments concern the novelty-destroying effect of earlier European patent applications in accordance with Article 54(3) EPC 2000 and the introduction of an explicit provision governing purpose-related product protection for the "second" and every further medical use of a known substance in accordance with Article 54(5) EPC 2000. Additional information regarding current practice under these provisions can be found in the revised text (December 2007) of the Guidelines for Examination in the EPO (C-III, 8.1, C-IV, 4.8, C-IV, 7).

With regard to the novelty-destroying effect of earlier European patent applications, Article 54(4) in conjunction with Article 54(3) and Rule 23a <u>EPC 1973</u> continues to apply to European patent applications filed before EPC 2000 entered into force.

Concerning purpose-related product protection for the "second" or any further medical use of a known substance, Article 54(5) EPC 2000 is to be applied in the case of European patent applications pending on the date when it entered into force, unless a decision has already been issued on the grant of a patent.

4. The texts of EPC 2000 and the re-drafted and re-numbered Implementing Regulations to EPC 2000, a cross-reference index of the old and the new provisions of the Convention and the Implementing Regulations, and a table showing the transitional provisions, are contained in Special edition 1, OJ EPO 2007. These texts and the Guidelines for Examination in the EPO can also be accessed via the European Patent Office's website (<u>http://www.epo.org/</u>).

APLNDC00020457

# Determining 3-D Hand Motion*

James Davis[†]

Media Lab
Massachusetts Institute of Technology
Cambridge, MA  02139

Mubarak Shah

Computer Vision Lab
University of Central Florida
Orlando, FL  32826

## Abstract

*This paper presents a glove-free method for tracking hand movements using a set of 3-D models. In this approach, the hand is represented by five cylindrical models which are fit to the third phalangeal segments of the fingers. Six 3-D motion parameters for each model are calculated that correspond to the movement of the fingertips in the image plane. Trajectories of the moving models are then established to show the 3-D nature of hand motion.*

## 1   Introduction

The importance of human gestures has been greatly underestimated. We use hundreds of expressive movements every day [2, 9], with many of these movements pertaining to hand gestures. These movements may have radically different interpretations from country to country – one hand gesture may represent a meaning of "good" in one country, whereas in another country it may be viewed as offensive [9]. Finger-spelling, a subset of sign language, permits any letter of the English alphabet to be presented using a distinct hand gesture. Using the finger-spelling gesture set, people can communicate words to one another using only hand movements [4]. The media has realized the significance of gestures and was experienced in the final scene of the movie, *Close Encounters of the Third Kind* (**Columbia Pictures**, 1977), where a human and alien communicated to each another using hand movements. **McDonald's** demonstrated the utilization of gestures in a 1994 television commercial showcasing patrons ordering any one of four different meals using the appropriate hand gesture. If we are to enhance and extend the man-machine interface, it is imperative to enable computers to interpret hand movements and to act intelligently according to their meanings.

Tracking hand motion becomes more realistic with a 3-D, rather than a 2-D, approach. With 3-D information, we know the real-world location of the fingers at any time, and can exploit this knowledge to suit applications without having to concern ourselves with the weaker and possibly ambiguous 2-D information. Two-dimensional ambiguities which may arise are the 3-D trajectories which, after undergoing perspective projection, have the same corresponding 2-D trajectory. Also, using 3-D models and motion parameters avoids the need for motion correspondence for mapping feature points to their correct 2-D trajectory [10, 6], for each feature point is a member of a distinct model for a particular finger and thus has no ambiguity in which trajectory it belongs. Therefore to remove these uncertainties which may arise in 2-D, we can use 3-D information.

In this paper, we discuss our method for developing a computer vision system which has the ability to model and track rigid 3-D finger movement of a glove-free hand. In the rest of this paper we first identify the fingers in the image (Section 3.1) and fit a 3-D generalized cylinder to the third phalangeal segment of each finger (Section 3.2). Then six 3-D motion parameters are calculated for each model corresponding to the 2-D movement of the fingers in the image plane (Section 4). Experiments are shown with 3-D hand movements (Section 5).

## 2   Related Work

Regh and Kanade [11] describe a model-based hand tracking system called *DigitEyes*. This system uses stereo cameras and special real-time image processing

---

*The research reported here was supported by the National Science Foundation grants CDA-9200369, IRI 9122006, and IRI 9220768.

[†]The author was a member of the Computer Vision Lab at the University of Central Florida during this research.

1058-6393/95 $4.00 © 1995 IEEE

APLNDC00020458

hardware to recover the state of a hand model with 27 spatial degrees of freedom. In order for *DigitEyes* to be used in specific hand applications, the kinematics, geometry, and initial configuration of the hand must be known in advance. Hand features are measured using local image-based trackers within manually selected search windows. Rendered models and state trajectories are given demonstrating the 3-D nature of their results.

Darrell and Pentland [5] have proposed an approach for gesture recognition using sets of 2-D view models of a hand (one or more example views of a hand). These models are matched to stored gesture patterns using dynamic time-warping, where each gesture is warped to make it of the same length as the longest model. Matching is based upon the normalized correlation between the image and the set of 2-D view models. This method requires the use of special-purpose hardware to achieve real-time performance, and uses gray-level correlation which can be highly sensitive to noise.

Cipolla, Okamoto, and Kuno [3] present a structure from motion (SFM) method in which the 3-D visual interpretation of hand movements is used in a man-machine interface. A glove with colored markers is used as input to the vision system and movement of the hand results in motion between the markers in the images. The authors use the affine transformation of an arbitrary triangle formed by the markers to determine the projection of the axis of rotation, change in scale, and cyclotorsion. This information is used to alter the position and orientation of an object displayed on a computer graphics system.

Segan's [12] *Gest* is a computer vision system that learns to identify non-rigid 2-D hand shapes and computes their pose. The system displays a hand in a fixed position on the screen and the user responds by presenting that same gesture to the camera. The hand's pose is calculated and classified. Recognition involves graph matching and employs a preclassifier to offset the matching cost. Each gesture is determined from the hand's 2-D position, and does not use any motion characteristics or 3-D feature locations. *Gest* was used to control graphics applications, such as a graphics editor and flight simulator.

Kang and Ikeuchi [8] describe a framework for determining 3-D hand grasps. An intensity image is used for the identification and localization of the fingers using curvature analysis, and a range image is used for 3-D cylindrical fitting of the fingers. A *contact web* is used to map a low-level hand configuration to a more abstract grasp description. The grasp is then identified using a *grasp cohesive index*. Though this method uses 3-D finger information, it requires both intensity and costly range imagery to produce the finger models.

In an earlier paper [6], we presented a method for recognizing hand gestures using a 2-D approach. A finite state machine is used to model four qualitatively distinct phases of a generic gesture. If the hand is found to be in motion to the gesture position, fingertip trajectories are created using motion correspondence of the fingertip points in the image plane. Vectors are then used to approximate the trajectories, and the unknown gesture is matched to a library gesture using these vectors. Results show recognition of seven gestures (representatives for actions of *Left*, *Right*, *Up*, *Down*, *Grab*, *Rotate*, and *Stop*) without the use of any special hardware.

## 3   Finger Modelling

To generate an appropriate 3-D model for the hand, we require only one intensity image of the user's hand in a predefined start position. To begin, we first identify the fingers within the image and determine each finger's axis of orientation. Then generalized cylinders are fit to specific finger segments. Anatomical knowledge of the human hand is exploited to enhance the modelling process.

### 3.1   Identification of Finger Regions

Initially, we constrain the user to begin with the hand in a known start position (See Fig. 1.a). Using histogram thresholding, the original image is converted into a binary image in which small regions are removed (See Fig.1.b). We then find a set of points which can be used to differentiate the fingers from the rest of the image. Previous approaches for finding feature points involve boundary curvature extrema [8], interest operators to detect specially colored regions [3], and manual selection [11]. Our approach uses the knowledge of the start position and natural design of the hand to automatically determine five fingertip points $\{T_n\}_{n=0}^4$ and seven base points $\{B_m\}_{m=0}^6$ which are used to segment the fingers. Each finger region is found by applying a connected component algorithm using the respective fingertip and base points as bounds in the segmentation (See Fig. 1.c). Once the fingers have been identified, the axis of orientation for each finger can be calculated (See Fig. 1.d). The orientation axis is established by finding the line in which the integral of the square of the distance to

APLNDC00020459





Figure 2: TP Models. (a) Index finger's 3-D cylindrical TP model shown with nodes. (b) All five TP models representing a model set for the hand.

Figure 1: Determining Finger Orientation. (a) Start position of the hand. (b) Binary image resulting from histogram thresholding and removal of small regions. (c) Finger regions found using fingertip points $\{T_n\}_{n=0}^4$ and base points $\{B_m\}_{m=0}^6$. (d) Start position showing each finger's orientation axis.

points in the finger is a minimum. The integral to be minimized over finger $F$ is

$$E = \int\int_F r^2 \, dx \, dy \ , \tag{1}$$

where $r$ is the perpendicular distance from point $(x, y)$ to the axis sought after [7]. The fingers and axes will be used in generating cylindrical representations of finger segments.

### 3.2   Cylindrical Fitting

Cylindrical models can be employed to represent the fingers due to the inherent cylindrical nature of fingers. A finger as a whole is a non-rigid object, with the first phalangeal (FP), second phalangeal (SP), and third phalangeal (TP) segments (only FP and TP segments for thumb) [13] each exhibiting rigid behavior. We dismiss the concerns for non-rigidness, occlusion, and connectedness, and only model and track the TP segments (fingertip segments) for simplicity. To model the TP segments, we must know where they are located with respect to each finger in the image. In general, each FP, SP, and TP segment length occupies nearly a third of the total finger length. Using this heuristic, the major axis for the finger can be divided

into three parts (except for the thumb, where it is divided into two), designating the TP segment as the upper most third of the finger (upper half for the thumb) along the axis of orientation. A right straight homogeneous generalized cylinder (RSHGC)[14] can then be fit to give a 3-D model to each 2-D TP segment (See Fig. 2.a&b), such that each model's projection conforms to the actual respective fingertip in the image. A cross-section shape of an ellipse is used to fit the natural cross-section of a finger, with semi-major axis $a$ and semi-minor axis $b$, having $b = f(a) \mid f(a) < a$.

## 4   Motion Parameter Estimation

Given a set of TP models and a sequence of intensity images in which the hand is moving, we would like compute the 3-D motion of the fingertips employing the 2-D motion in the image plane. The 3-D motion of a model is represented in terms of translation $(T_x, T_y, T_z)$ and counter-clockwise rotation $(\omega_x, \omega_y, \omega_z)$ around the three coordinate axes based at the model's centroid. Our approach incorporates a direct method using spatio-temporal derivatives (instead of optical flow), a linearized rotation matrix (due to small motion changes), and a 3-D model (where the depth is known) to compute the 3-D motion. An over constrained set of equations is established and solved for the unknown motion parameters. The locations of the TP models are continually updated in 3-D to match the 2-D fingertip movement. Only visible model nodes can be used in the motion parameter calculation and can be determined by using together two methods (surface normals and depth array) for back-side elimination [1]. This process must be performed each time the model location is updated to ensure that pre-

APLNDC00020460

viously visible nodes have not become occluded and vice-versa.

## 4.1   Formulation of Motion Parameter Estimation

Consider the optical flow constraint equation:

$$f_x u + f_y v + f_t = 0 \; , \qquad (2)$$

where $f_x = \frac{\partial f}{\partial x}$, $f_y = \frac{\partial f}{\partial y}$, $f_t = \frac{\partial f}{\partial t}$, $u = \frac{dx}{dt}$, and $v = \frac{dy}{dt}$. Assume that the geometry projection from 3-D space onto the 2-D image plane is perspective projection with camera focal length $F$. Then the optical flow field $(u, v)$ induced by the 3-D instantaneous motion about the object centroid is given by:

$$u = \frac{F}{Z} \left[ (T_x + \omega_y Z_c - \omega_z Y_c) + \frac{-X}{Z} (T_z + \omega_x Y_c - \omega_y X_c) \right] \; , \quad (3)$$

$$v = \frac{F}{Z} \left[ (T_y + \omega_z X_c - \omega_x Z_c) + \frac{-Y}{Z} (T_z + \omega_x Y_c - \omega_y X_c) \right] \; , \quad (4)$$

where $(T_x, T_y, T_z)$ is the forward translation vector, $(\omega_x, \omega_y, \omega_z)$ is the counter-clockwise rotation vector, $(X, Y, Z)$ are the world coordinates, and $(X_c, Y_c, Z_c)$ are the object centered coordinates. Substituting the above equations for $u$ and $v$ in (2) and rearranging, we get

$$
\begin{aligned}
-f_t = & \; f_x \frac{F}{Z} \left[ (T_x + \omega_y Z_c - \omega_z Y_c) + \frac{-X}{Z} (T_z + \omega_x Y_c - \omega_y X_c) \right] \\
& + f_y \frac{F}{Z} \left[ (T_y + \omega_z X_c - \omega_x Z_c) + \frac{-Y}{Z} (T_z + \omega_x Y_c - \omega_y X_c) \right]
\end{aligned}
$$
$$(5)$$

which can also be written as

$$
\begin{aligned}
-f_t = & \left[ f_x \frac{F}{Z} \right] T_x + \left[ f_y \frac{F}{Z} \right] T_y - \left[ \frac{F}{Z^2} (f_x X + f_y Y) \right] T_z \\
& - \left[ \frac{F}{Z^2} (f_x X Y_c + f_y Z Z_c + f_y Y Y_c) \right] \omega_x \\
& + \left[ \frac{F}{Z^2} (f_x Z Z_c + f_x X X_c + f_y Y X_c) \right] \omega_y \\
& - \left[ \frac{F}{Z} (f_x Y_c - f_y X_c) \right] \omega_z \; .
\end{aligned}
$$
$$(6)$$

In this equation, $(X, Y, Z)$ and $(X_c, Y_c, Z_c)$ are known from the model, and $f_x$, $f_y$, and $f_t$ can be computed from image pairs. Therefore the only unknowns are the motion parameters $(T_x, T_y, T_z)$ and $(\omega_x, \omega_y, \omega_z)$. An over constrained set of equations is established using visible nodes and in matrix form is as follows

$$[A] \mathbf{x} = \mathbf{b} \; ,$$

with $\mathbf{x} = (T_x, T_y, T_z, \omega_x, \omega_y, \omega_z)^T$. A linear regression using least squares is used to approximate the six unknown motion parameters in $\mathbf{x}$, and is iterated to

account for linearizing. Initially, for calculating the motion parameters between frame 1 and frame 2, the visible model nodes record the corresponding intensity and gradient information from frame 1. Then the motion parameters are determined using the model nodes and frame 2. After application of the parameters to the model from frame 1, the model is now located to conform to frame 2. For frame 3, a new estimation is calculated using the model (compensated from frame 1 to frame 2) and frame 3. This process, continues for the remainder of the sequence.

## 5   Experiments

Our system was used to track two distinct hand motions: movement in the $XY$ plane (See Fig. 3 Sequence 1), and movement in the $XZ$ plane, i.e. scaling (See Fig. 3 Sequence 2). These examples are sufficient to demonstrate the advantage of a 3-D, rather than a 2-D, approach. In each sequence, the locations of the TP models were updated in each frame to match the movement of the fingertips in the image plane (See superimposed models in Fig. 3.1a&b and Fig. 3.2a&b). In sequence 1, with no depth changes, the 2-D trajectories are shown to be adequate to approximate the motion of the hand (Compare 2-D and 3-D trajectories in Fig. 3.1c&d). Sequence 2 demonstrates the hand changing in depth. This type of motion can be shown in 3-D (See 3-D trajectories in Fig. 3.2d) and cannot be distinguished in 2-D, where it appears that the hand is mainly at rest (See 2-D trajectories in Fig. 3.2c).

## 6   Conclusion

In this paper, we presented a 3-D hand modelling and motion estimation method for tracking hand movements. This approach does not require any glove or motion correspondence, and recovers 3-D motion information of the hand. The orientation of the fingers in a 2-D image are found, and a generalized cylinder is fit to each finger's third phalangeal segment. Six motion parameters for each finger are calculated, which correspond to the 2-D movement of the fingertips in the image plane. Three-dimensional trajectories are then determined from the motion of the models, which may be used in hand tracking and gesture recognition applications.

APLNDC00020461

## Acknowledgment

We would like to acknowledge Reinhold Koch and Niels da Vitoria Lobo for their suggestions.

## References

[1] Artwick, B. *Applied Concepts in Microcomputer Graphics.* Prentice-Hall, New Jersey, 1984.

[2] Baumi, B., and Baumi, F. *A Dictionary of Gestures.* The Scarecrow Press, New Jersey, 1975.

[3] Cipolla, R., Okamoto, Y., and Kuno, Y. Robust structure from motion using motion parallax. In *ICCV*, pages 374–382. IEEE, 1993.

[4] E. Costello. *Signing: How to Speak With Your Hands.* Bantam Books, New York, 1983.

[5] Darrell, T., and Pentland, A. Space-time gestures. In *CVPR*, pages 335–340. IEEE, 1993.

[6] Davis, J., and Shah, M. Recognizing hand gestures. In *ECCV*, pages 331–340, May 1994.

[7] Horn, B.K.P. *Robot Vision.* McGraw-Hill, 1986.

[8] Kang, S.B., and Ikeuchi, K. Toward automatic robot instruction from perception – recognizing a grasp from observation. *IEEE Transactions of Robotics and Automation*, 9:432–443, August 1993.

[9] Morris, D., Collet, P., Marsh, P., and O'Saughnessy, M. *Gestures: Their Origins and Distribution.* Stein and Day, 1979.

[10] Rangarajan, K., and Shah, M. Establishing motion correspondence. *CVGIP: Image Understanding*, 54:56–73, July 1991.

[11] Rehg, J., and Kanade, T. Visual tracking of high dof articulated structures: an application to human hand tracking. In *ECCV*, pages 35–46, May 1994.

[12] Segen, J. Gest: A learning computer vision system that recognizes hand gestures. *Machine Learning IV*, 1994.

[13] Taylor, C., and Schwarz, R. The anatomy and mechanics of the human hand. *Artificial Limbs*, 1955.

[14] Zerroug, M., and Nevatia, R. Segmentation and recovery of shges from a real intensity image. In *ECCV*, 1994.



Figure 3: Sequence 1: $XY$ translation. (1a)&(1b) First and last images with TP models (white). (1c) 2-D motion trajectories. (1d) 3-D motion trajectories. Sequence 2: $XZ$ translation. (2a)&(2b) First and last images with TP models (white). (2c) 2-D motion trajectories. (2d) 3-D motion trajectories. (Note: bold hand outline represents initial hand position.)

APLNDC00020462

APLNDC00020463

# Two-Handed Direct Manipulation
## on the
# Responsive Workbench

PUBLICATION DATE: 27. 04. 97
(further bibliographic data on next page)

Lawrence D. Cutler*     Bernd Fröhlich     Pat Hanrahan

Computer Science Department
Stanford University
{larryc, bernd.froehlich, hanrahan}@cs.stanford.edu

XP-000725362

P 107 – 114 = (8)

## Abstract

We have built a system that allows users to naturally manipulate virtual 3D models with both hands on the Responsive Workbench, a tabletop VR device. Our design is largely based upon Guiard's observations of how humans distribute work between the two hands in the real world. We show how to apply these principles for the workbench environment and describe many issues encountered during the design. We first develop a framework for two-handed interaction and then explore a variety of two-handed 3D tools and interactive techniques. Related issues include how constraints are implemented and controlled by the two hands and how transitions between one-handed and two-handed tasks occur seemlessly. Informal observations of the system in practice show that users can perform navigation and manipulation tasks easily and with little training using the two-handed environment. One of our interesting findings was that users often performed two-handed manipulations by combining two otherwise independent one-handed tools in a synergistic fashion. In these cases, we did not program two-handed behaviors explicitly into the system; instead they emerged naturally.

**CR Categories:**  I.3.6 [Computer Graphics]: Methodology and Techniques—Interaction techniques; I.3.7 [Computer Graphics]: Three-Dimensional Graphics and Realism—Virtual reality; H.5.2 [Information Interfaces and Presentation]: User Interfaces—Interaction styles;

**Keywords:**  two-handed interaction, virtual reality, three dimensional interaction, direct manipulation, 3D widgets, interactive 3D graphics

## 1  INTRODUCTION

Most current interactive 3D graphics applications are based on conventional desktop computing environments. Unfortunately these environments use two-dimensional input and output devices: a mouse for input and a CRT or flat-panel display for output. Such a 2D interface to a 3D world is often unnatural and unintuitive, and

*currently at Pixar Animation Studios

Permission to make digital/hard copies of all or part of this material for personal or classroom use is granted without fee provided that the copies are not made or distributed for profit or commercial advantage, the copyright notice, the title of the publication and its date appear, and notice is given that copyright is by permission of the ACM, Inc. To copy otherwise, to republish, to post on servers or to redistribute to lists, requires specific permission and/or fee.
1997 Symposium on Interactive 3D Graphics, Providence RI  USA
Copyright 1997 ACM 0-89791-884-3/97/04 ...$3.50

at worst frustrating and unproductive. 3D input and output technologies, such as a six degree of freedom (DOF) positional trackers and binocular stereo displays, provide much more flexibility than the mouse and CRT for modeling and visualizing 3D structures. But merely providing more channels of input and output is not enough to make the interface to a 3D virtual world natural and easy to use. In fact the flexibility afforded by more degrees of freedom makes the user interface design more complicated, not simpler. Design principles for such environments are largely unknown and certainly not in the same state of development as the modern desktop graphical user interface.

This paper describes two-handed interaction techniques that have been developed for the Responsive Workbench, a tabletop stereo display based on a workbench metaphor [9, 10]. It differs from most classical VR-systems, like head mounted displays (HMDs) and the CAVE [4], that try to immerse users completely in a virtual space. In contrast, the Responsive Workbench allows applications to set virtual objects on top of a real table which is integrated into the user's natural working environment. For example, an architectural design application places a virtual site model on the workbench to emulate the physical model. Two applications will be used in this paper to illustrate our interactive techniques: medical training and automotive design (Figure 1).

 

(a)                              (b)

Figure 1: Two-handed interaction for two different applications on the Responsive Workbench. (a) Medical education and training: A skeleton rests on the workbench like a body on the operating table. Users can reach in and grab bones and organs as well as perform manipulations on the entire model. (b) Automotive Design: A finite volume model of a car interior is placed on the Responsive Workbench. Engineers use the model for air flow analysis. The images in this paper were taken by switching the viewpoint from the user's head position to the actual camera location.

The user stands in close proximity to virtual objects on the Responsive Workbench, which enables two-handed direct manipulation techniques. The original interface to the system used simulated buttons at the front of the table to control different actions and a

standard one-handed grasp-and-manipulate interface. Both button pushes and manipulations were controlled by a single 6 DOF stylus. However, it soon became obvious that this interface was very limiting and we sought to improve it.

In this paper we report on some of our initial results using two-handed input on the Responsive Workbench. In particular, we apply Guiard's framework on how humans manipulate objects with both hands in the real world. The most interesting techniques involve an asymmetric division of labor between the two hands. We discuss the basic building blocks implemented for two-handed interaction and explore various two-handed tools and techniques. We also describe many issues in the design, such as how to specify constraints and how to transition between different tasks in a natural way. Finally, we present results and observations of the system in practice.

## 2   RELATED WORK

Guiard [5] has studied everyday activities to understand how humans distribute work between their right and left hands. He classifies manual activities into three categories. Certain tasks are inherently *unimanual* such as throwing darts or brushing one's teeth. Other tasks are *bimanual symmetric*; both hands perform an identical action either in phase such as in weightlifting or out of phase such as milking a cow. A third class of activities is *bimanual asymmetric* where a complex coordination between the hands is required. Examples include dealing cards or playing a musical instrument. Guiard also defines an orthogonal division of labor, where the hands exhibit mutual independence, such as when working on two unrelated, unimanual tasks.

The most common activities involve an asymmetric division of labor between the left and right hand (we assume right-handed individuals throughout this paper). Guiard presents three high-level principles regarding the different roles of each hand during such a coordinated movement.

- The left hand adjusts the spatial reference while the right hand performs actions using this reference frame. As an example, the left hand is used to position and orient an object while the right hand operates a tool.

- Right-handed movements tend to have a higher temporal and spatial frequency in comparison to left-handed movements. The right hand is capable of producing fine-grained gestures, while the left hand performs gross manipulations.

- The left hand initiates the action.

Several researchers have applied Guiard's framework to design two-handed desktop interfaces. The best example is the Toolglass and Magic Lenses system developed by Biers et al.[1, 2]. In this system one hand controls the Toolglass, a transparent sheet containing overlaid tools, via a trackball, and the other hand controls a cursor that interacts with application objects through the Toolglass. Kabbash et al.[8] followed Guiard's framework in creating bimanual asymmetric techniques for a drawing/coloring task based on the Toolglass. They showed that two-handed techniques reduce the number of operations, minimize the cognitive load, and enhance performance. This evidence was supported by a follow-up study [11] with the Toolglass on two-handed techniques for 2D drawing tasks. All these studies suggest that Guiard's framework is useful in the design of two-handed computer interfaces.

In the past few years, several VR systems have been built that enable the use of both hands. THRED [18] is a 3D CAD system designed for sketching polygonal surfaces such as terrains. THRED uses two 6 DOF Polhemus trackers with added buttons for input. The division of labor is as follows: the non-dominant hand controls the interaction mode while the dominant hand handles spatial tasks such as picking and manipulating an object.

PolyShop [12] concentrates on symmetric two-handed techniques for scaling, rotating, and stretching objects and navigating through the scene. Users can also align objects with both hands via anchors and constraints. In the CHIMP system [14], the user performs a unimanual operation for translations and rotations, and a bimanual symmetric movement for scales. Recently work on CHIMP has focused on more asymmetric two-handed manipulation[13].

Hauptmann has studied how users specify graphical object manipulations with a mixture of conversation and hand gestures[6]. Many subjects expressed rotations by giving a steering wheel turn or a paddle wheel motion, and most specified scaling by moving the hands apart or together. These experiments suggest that meaning is often naturally conveyed via bimanual symmetric hand motions.

One of the most novel two-handed input systems is the environment for neurosurgical planning described by Hinckley et al.[7]. In this system the user manipulates "passive real-world props" with both hands. These props are physical, everyday objects with embedded 6 DOF trackers. For example, the left hand controls the head position with a doll's head prop while the right hand manipulates a cutting-plane with a rectangular plate prop. Both the 3-Draw system [17] and the Worlds in Minature (WIM) project [15] employ props in a similar manner. The advantage of props is that they give the user kinesthetic and tactile feedback which aids in manipulation, and their physical shape provides a crucial affordance as to their appropriate use in the system.

## 3   THE RESPONSIVE WORKBENCH

The Responsive Workbench [9, 10] is a virtual environment based on a high resolution tabletop display system. Users interact directly with three dimensional virtual objects, which are projected as stereoscopic images onto the surface of a table (Figure 2). A separate image is computed for each eye, and the computer quickly alternates the display of the two views. Users wear shutter glasses, which cover the left eye while the right eye's image is displayed, and vice versa, thus producing the stereoscopic effect. We attach a Polhemus 6 DOF sensor to the shutter glasses for head tracking. This allows the system to compute the correct perspective image for any user location.

Manipulation of virtual objects and navigation within the environment is controlled by a Polhemus stylus, a pen-like 6 DOF input device, and Fakespace's PINCH gloves equipped with Polhemus 6 DOF sensors on the back of each hand. The stylus tip provides a single distinguished point of action, whereas for the PINCH gloves, such a point is not well-defined. We decided to use the position where the thumb and index finger meet as the point of action, and we estimate this point by adding a constant offset to the position information provided by the Polhemus. The stylus is a one button device, while PINCH gloves detect different pinches between fingers. The original system as described in [9, 10] used a Virtual Technologies CyberGlove, which also provides joint angle information for gesture recognition, but requires more extensive calibration than the PINCH gloves.

Navigation in traditional immersive VR systems using HMDs entails flying, walking, or driving around. In contrast, navigation on the Responsive Workbench typically exploits the natural spatial reference frame provided by the tabletop. We identified four basic navigational tasks:

1. The user slides the model around on the table plane, lifts it up, or pushes it back down.

2. The model is rotated around one of the principal axes that are naturally defined by the tabletop or by the model.

APLNDC00020465



Figure 2: The Responsive Workbench. A video projector projects a high resolution stereoscopic image through a mirror onto the table top. The system is currently driven by a Silicon Graphics Onyx RealityEngine2 graphics system at a resolution of 1025x768 pixels at 96Hz, 48Hz per eye.

3. The user zooms in or out by enlarging or shrinking the scene.

4. The user changes his or her position relative to the table and consequently relative to the model, e. g. by walking around the table or by moving the head closer to or away from the model.

The table serves in some sense as a large physical prop, since the model is anchored on the table and the user's head position is tracked with respect to the table. The visible parts of the model are mostly within arms length reach of the user, which enables easy direct manipulation of the scene and of objects in the scene.

# 4  BASIC BUILDING BLOCKS

We developed a system framework to support multiple input devices and two-handed interaction. During the initial phases of design, we decided on a virtual tools-based approach similar to [16, 19], mainly because the Responsive Workbench resembles a physical workbench. We created three basic building blocks: manipulators which encapsulate input devices, tools which define the interactions, and toolboxes which allow for transitions between different tools.

## Manipulators

Manipulators provide a logical abstraction for 3D input devices. Each device supplies the manipulator with position and orientation data as well as button click information. Manipulators also provide a mechanism for attaching to the various unimanual and bimanual tools. Our system supports both one-handed and two-handed manipulators. One-handed manipulators encapsulate a single-handed device and allow it to pick up a one-handed tool. The unimanual manipulators in our system are the stylus, the left glove, and the right glove. Two-handed manipulators bind two one-handed manipulators together. The two-handed manipulator can pick up a two-handed tool, or it can allow either one-handed manipulator to pick up a one-handed tool. In our system a two-handed manipulator can bind two gloves or a glove and a stylus (Figure 3).

We designed the manipulators so that two-handed behaviors would be developed independent of specific devices. This leads to



Figure 3: Basic Building Blocks. Devices refer to the physical input hardware, and manipulators provide an abstraction for these devices. Each of the devices is encapsulated by a one-handed manipulator. Layered on top of that, two-handed manipulators bind together two one-handed manipulators for bimanual interactions. The arrows in this diagram represent the possible attachments between manipulators and tools. By combining the one and two-handed manipulators in the above manner, we allow the user to pick up both one-handed and two-handed tools with the pinch gloves.

an extensible system that can easily incorporate new input technologies. Furthermore, we wanted to experiment with different combinations of input devices, such as the glove with the stylus. An interesting combination uses all three devices simultaneously. The user wears both gloves for two-handed manipulation but picks up the stylus in one hand to perform precision tasks. Thus, the user can choose the more appropriate manipulator for a given situation.

## Tools

Tools are used to perform specific tasks. Table 1 lists all of the one and two-handed tools referenced in this paper. We first implemented a one-handed 6 DOF grab, which allows the user to pick up a single object and move it around freely. We also created one-handed visualization tools, such as a cutting plane and an opacity tool. The automobile application has tools specifically designed for scientific visualizations: a temperature plane provides visualizations of 2D temperature slices, while two other tools emit particles or streamlines into the airflow. One-handed tools are usually initiated with a stylus click or pinch (thumb-to-index).

In contrast, two-handed tools engage both hands in a synergistic fashion. These tools display two 3D virtual cursors, one for each hand, to indicate the appropriate division of labor. Typically, the left hand has a coordinate system to signify positional subtasks, while the right hand shows a cursor implying specific functionality, such as a magnifying glass for zooms. Most of our two-handed tools deal with global scene positioning (zooms, rotations, and translations) or single object manipulations. Two-handed tools are usually initiated when both hands are pinched.

APLNDC00020466

| Type | Description |
|---|---|
| *Unimanual* | |
| one-handed grab | Pick up a single object and move it freely. |
| panning | Slide the model on the table top. |
| cutting plane | Cut away a portion of the model or a portion of a single object. |
| opacity | Adjust the transparency of the skin for the medical application. |
| temperature | Visualize 2D temperature slices within an automobile. |
| particle | Emit particles into an air stream. |
| streamline | Seed stream lines into an air stream. |
| *Bimanual symmetric* | |
| symmetric scale | Shrink or enlarge objects by moving both hands apart or together. |
| slide-and-turn | Slide and turn the model on the table top. |
| turntable | Turn the model on the table top about a fixed axis of rotation. |
| grab-and-twirl | Carry and turn an object around with both hands. Each hand can also be used independently as a one-handed grab tool. |
| grab-and-carry | Similar to the grab-and-twirl tool except it does not allow roll around the line connecting the two hands. |
| *Bimanual asymmetric* | |
| grab-and-scale | Left hand positions object while right hand moves towards or away from it. |
| trackball | Left hand positions object while right hand rotates it about its center. |
| zoom | Left hand positions the model and specifies the zoom region, right hand moves towards or away from the left hand to specify the zoom factor. |
| free rotation | Left hand positions the model. The axis of rotation is specified by the left hand's orientation. Right hand rotates around left hand. |
| axis rotation | Similar to the free rotation except the axis of rotation snaps to one of the principal axes. |
| heuristic rotation | Similar to the free rotation except the axis of rotation is constrained to one of the principal axes and infered from the motion of the right hand. |
| pinch rotation | Similar to the free rotation except the axis of rotation is specified by a pinch gesture with the left hand. |
| constrained translation | Left hand specifies a line or plane constraint, right hand translates. |

Table 1: List of tools referenced in this paper

## Toolboxes

Toolboxes allow the user to transition between different tools. They also give structure and organization to the system (Figure 4). In our original design, the user could place tools anywhere on the table, similar to a real-world workbench. Although such a system gives the user great flexibility, the table soon becomes cluttered and messy (like the real workspace). The toolbox groups the tools in a clear manner, much as toolbars do on many desktop applications. We did not implement hierarchical and movable toolboxes, but these extensions could be easily integrated.

## 5 TWO-HANDED INTERACTION

Once we developed an underlying system foundation, we explored two-handed interactions on the Responsive Workbench. We implemented both bimanual symmetric and bimanual asymmetric tools for the Workbench.

### Coordinated Symmetric Interaction

We present five different types of two-handed symmetric tools: symmetric scale, slide-and-turn, turntable, grab-and-carry, and grab-and-twirl. The scaling tool shrinks or enlarges objects by moving both hands together or apart, similar to [3, 12, 14].

The slide-and-turn (Figure 5) allows the user to perform a steering-wheel motion on the table top. This tool exploits the fact



Figure 4: Closeup of a toolbox containing various tools. Our system supports multiple toolboxes which group similar tasks together. The tools are displayed as 3D icons that visually represent their functionality. Users can pick up a tool by clicking on it with the stylus or by pinching it with the gloves. After finishing with a tool, the user can either pick up different tool or simply drop the current one in the toolbox, in which case the system returns to a default behavior.

 

Figure 5: The slide-and-turn tool: We use both hands in a symmetric manner to simultaneously rotate and slide the model on the table. The axis of rotation is always constrained to be perpendicular to the table plane.

 

Figure 6: The zoom tool: The left hand positions the skeleton and provides the focal point, while the right hand zooms in by moving away from the focal point. Similarly, one can zoom out by moving the left hand towards the focal point.

that many of our models rest on the table. The user pinches with both hands, which locks the scene to the center of the line connecting the two hands. The scene's movement is defined by a translation of the center of the line segment and a rotation around the center. The axis of rotation is fixed to be perpendicular to the table top, and the translation is constrained to the table plane. This tool gives users the flexibility of sliding the model on the table plane in addition to rotating it. We also implemented a second variation, the turntable, which fixes the rotation axis position at the start of the rotation and does not translate. This alternative behaves more like a real turntable, but provides less flexibility than the slide-and-turn.

The grab-and-carry lets the user hold onto an object with both hands, and "carry" it as well as turn it around. This tool is functionally identical to the slide-and-turn, except that its axis of rotation is not constrained nor is the translation. This widget has five degrees of freedom as we do not roll the object around the line connecting the two hands. The grab-and-twirl adds this sixth degree of freedom. The object's roll can either be controlled by the left hand's roll, the right hand's roll, or a combination of the two. We decided to use the right hand's roll, which introduces a slight asymmetry into the tool but provides the user with more direct control than a combination of the two rolls.

Both tools work well for large objects where it is easy and natural to pinch at the ends of the object. In such cases, it gives the user more control over an object than the one-handed grab. This interface is very similar to how we grab and maneuver objects with both hands in the real world, and it shows how two 6 DOF manipulators can effectively interact to specify a 6 DOF motion for a virtual object.

### Coordinated Asymmetric Interaction

For scene navigation, we implemented the following two-handed asymmetric tools: constrained translation, zoom, and several variations of a rotation tool. With the translation tool, the left hand specifies a line or plane constraint while the right hand translates the scene.

Two-handed zooming (Figure 6) allows the user to focus on a specific region of the scene. This tool introduces a tight coupling between the two hands that conforms to Guiard's principles on asymmetric bimanual activity. The left hand initiates the action and sets up the reference frame for the right hand in two ways: it positions the model before the zoom, and it provides the focal point for the manipulation. This type of zoom operation is perceived like a three-dimensional version of a zoom with a camera, but it does not have an equivalent in the real world. In an immersive environment, the exact same operation would make the user feel as if he or she were shrinking or growing with respect to the surrounding scene.

The free rotation tool divides the labor between the left and the right hand in the following manner: The left hand translates the model, but also specifies the position and orientation of the rotation axis by holding onto a virtual axis. The right hand performs the actual rotation by circling around this virtual axis. The non-dominant hand provides the reference frame for the dominant hand in three different ways. First, the user can position the scene in preparation for the rotation, much as with the zoom tool. Next, the user specifies the axis position, similar again to the zoom tool. Finally, the user specifies the orientation of rotation axis with the left hand. We realized that for certain applications users only wanted to rotate the scene around one of the principal axes, which are naturally defined by the table top. The next section deals with the specification of constraints for such situations.

We also implemented a set of two-handed tools for object manipulations, where the left hand grabs the object and positions it, while the right hand performs the intended action. The grab-and-scale works similarly to the two-handed zoom above. Since it is difficult to specify a focal point for small objects, we always scale about the center of the object's bounding sphere. Another tool of this type is the trackball, which rotates an object about the center of its bounding sphere.

## 6   CONSTRAINTS

Constraints can greatly simplify tasks in a virtual environment. Many of our tools constrain the axis of rotation. We also constrain translations to occur along an axis or plane. We have not yet implemented alignment tools that restrict object position with respect to other objects.

There must also be a natural means for the user to specify the constraint. In our system, the left hand usually articulates the constraint while the right hand performs the intended action. We explored four different techniques:

- **Built Into the Tool:** Many tools have a constraint built into their behavior. On the Responsive Workbench, built-in constraints often exploit the horizontal table top. The symmetric slide-and-turn described earlier (see Figure 5) restricts rotations around the axis perpendicular to the table plane. Similarly, the panning tool forces translations along the table top.

- **Hand Orientation:** The axis rotation tool computes the rotation axis based upon the user's hand orientation (see Figure 7a). Similarly, the constrained translation determines the line or plane from the orientation of the non-dominant hand. An open palm signifies planar translations while a closed fist denotes movements along a line.

APLNDC00020468



(a) hand orientation

(b) heuristic

(c) pinching

Figure 7: Constraining rotations around one of the three principal axes. We implemented three different methods for specifying the axis of rotation. (a) Hand orientation: The user orients the left hand along the desired axis. The axis of rotation snaps to the closest principal axis. (b) Heuristic: We infer the axis once the right hand begins rotating the scene. (c) Pinches: The user selects the axis by specifying one of three different pinches with the left PINCH glove.

- **Heuristic from Motion:** The heuristic rotation infers the axis of rotation based on the direction of the right hand's motion (see Figure 7b). The heuristic chooses a principal axis once the rotation angle of the right hand around this axis exceeds a certain threshold. We can also determine the line or plane of a constrained translation based on the translation path of the right hand, but this is currently not implemented.

- **Pinch Gestures:** A fourth approach maps the axis of rotation to different finger pinches (see Figure 7c), e. g. thumb to index maps to the x, thumb to ring to y, and thumb to pinky to z.

In comparing these approaches, heuristics involve an implicit specification of the constraint which tends to place minimal cognitive load on the user. However, any heuristic still has the potential of choosing incorrectly. Built-in constraints are also implicit and work very well with our system. Of course, users lose flexibility with built-in constraints as they can only rotate about one axis or translate within a single plane. The hand orientation approach generally requires brief training since we do not manipulate objects in the real world with gestures. However, this solution is explicit and visual with a direct mapping between the hand orientation and the axis or plane. Once learned, it gives users extensive control over the rotations or translations. Finally, specifying constraints with pinches involves an arbitrary mapping between the pinch and the constraint. With the pinch rotation tool, users can quickly learn the mapping since there are only three options. On the other hand, if we consider a pinch translation tool with six choices (three plane constraints and three line constraints), the mapping quickly becomes complicated and difficult to perform.

## 7 TRANSITIONS

Many tasks decompose into a number of sequential subtasks. Transitions refer to the change from one subtask to another. Two-handed input introduces an additional layer of complexity in handling transitions between one-handed and two-handed tools. We explore two explicit transition methods, toolbox and power widget transitions, as well as one implicit approach.

**Toolbox Transitions**

The toolbox provides an explicit means for the manipulators to transition between different tools. A manipulator attaches to a tool when the user picks it up and detaches when it gets dropped off (Figure 4). Toolbox transitions raise the interesting issue of what happens when a manipulator has not selected a tool (which occurs at startup time or after a tool has been dropped off). In these situations, the manipulator reverts back to a default tool. One-handed manipulators associate with a one-handed default. Two-handed manipulators can have a two-handed default or each hand can associate with a different one-handed default tool. For example, in the medical application, the default for each PINCH glove is a one-handed grab. When a tool has not been selected from the toolbox, the user can still pick up and move individual bones with the left and right hands. Other applications might define a different set of default behaviors. Figure 8 shows how toolbox transitions are handled in our system for a two-handed manipulator with two independent one-handed defaults.



Figure 8: The state diagram for toolbox transitions for a two-handed manipulator with two one-handed defaults. The transitions define if a one-handed or a two-handed tool gets picked up, switched, or dropped off. The two-handed manipulator switches between one of the following states: **(Default)** Both hands have the one-handed default tool. **(Mixed)** One hand has a default tool, the other has a one-handed tool. **(Two-Handed)** Both hands are attached to a two-handed tool. **(One-Handed)** Each hand has a one-handed tool.

APLNDC00020469

## Power Tool Transitions

A disadvantage in using the toolbox is that users have to alternate back-and-forth between the toolbox and the area of interest. Power tools provide an explicit mechanism which can reduce the time spent switching back-and-forth. A power tool allows the non-dominant hand to control transitions between tools as well as engage in two-handed interactions. It combines the functionality of two or three tools by mapping each to a different pinch gesture. Thus, power tools can group related tasks and minimize the cognitive load from context switching.

## Implicit Transitions

We also experimented with a more subtle method of transitioning, where the user is less aware that the transition is occuring. We define the grab-and-twirl (Figure 9) as the two-handed default behavior for an interaction. Initially, the system is identical to having the two one-handed grab defaults. But, often times the user will reach in with the second hand to help manipulate a grabbed object. At this point our default tool switches to the two-handed operation. The user can now twirl the object around with both hands. This transition occurs naturally much as one would fluidly switch from a one-handed to two-handed grab in the real world. The implicit transition was implemented by coupling a one-handed behavior with a two-handed behavior in the same tool. This technique could be extended to other situations as well.



Figure 9: The grab-and-twirl tool. The user first grabs an object with either hand and manipulates the object as a one-handed 6 DOF grab. At some point, the user pins the object with the other hand and performs a symmetric object twirl. Thus the user experiences a non-explicit transition between a one-handed grab and a two-handed grab.

## 8   RESULTS

We observed people using the Responsive Workbench while giving demos and during a planned informal user observation session. We showed users a skeleton and asked them to complete several positioning and manipulation tasks such as "zoom in on the kneecap" or "orient the skeleton vertically towards you and zoom in on the heart." In observing users, we hoped to ascertain whether our two-handed tools and the system as a whole were natural and intuitive for people. Specifically, we attempted to answer the following questions during these observations:

- Does Guiard's framework provide a good basis for designing two-handed interactions?
- Do users find constrained operations useful for positioning and orienting the entire scene (or is it more effective to simply do a 6 DOF grab)?

- Are transitions fluid and unobtrusive to the user?

On the whole, users found the two-handed tools natural and easy to manipulate (see video proceedings). Users became proficient after no more than a minute or two of instruction. During our observations, we also found that users often picked up two seemingly independent one-handed tools and used them together in a coordinated fashion. We noticed the following examples of this emergent behavior: First, users positioned the skeleton with the left hand while grabbing a bone or applying a cutting plane with the right hand. Second, users positioned a temperature cutting plane into the car with the left hand while injecting particles with the right hand. These examples might be seen as the juxtaposition of two independent activities, but in each case the left hand sets up a reference frame for the right hand. This shows that Guiard's observations are a sensible framework for the implementation of direct two-handed manipulations in a virtual environment such as the Responsive Workbench.

Users noticed that constraints often provide direct means to achieve the task they had in mind. Even basic tasks like turning around the skeleton on the table plane turned out to be quite difficult with the one-handed grab tool. Users usually needed multiple grab and move operations, since our hand is in fact not an unconstrained 6 DOF device. Using the slide-and-turn or one of the axis rotation tools allowed them to perform this task with ease.

One of the more suprising results was that the asymmetric combination of a PINCH glove for the left hand and stylus for the right hand worked much better in many situations than the two PINCH gloves, especially for asymmetric tasks. The stylus is a thinner input device with a distinguished point of action, and it serves at the same time as a pen-like physical prop. The asymmetric combination of input devices mirrors the asymmetric distribution of labor and is very much in tune with Guiard's observation that the right hand is capable of performing finer grained gestures than the left hand.

## 9   SUMMARY AND FUTURE WORK

We have described a system that allows a user to naturally manipulate virtual models with both hands as they are displayed on the Responsive Workbench. The most interesting two-handed interactions are coordinated and asymmetric: both hands perform different subtasks in a synergistic way to get a complex task done. When designing the system we took advantage of several design principles developed by Guiard from studies of how people use their hands. These principles are effective guidelines for VR environments. We have also investigated a variety of methods for interactively specifying 3D constraints, and for transitioning smoothly between subtasks.

When beginning this work we thought that all the two-handed input techniques would need to be explicitly designed and programmed. However, when using the system we found that perhaps the most interesting tasks emerged when the user combined two otherwise independent unimanual tools. For example, in the scientific visualization system for automobile cabin modeling, the user controlled the slicing plane showing temperature with one hand and the source of particles used to generate streamlines with the other hand. Presumably the user was testing a hypothesis that temperature distribution depends on the air flow. In retrospect, such emergent interactions are not that surprising since this is how many two-handed operations arise in the real world. From a systems point of view, adding uncoordinated two-handed input to an existing one-handed system is relatively easy, but already very powerful.

One of the areas that needs further studies are the methods that map the additional degrees of freedom provided by more input channels into simple actions. New technologies to sense the user increase the numbers of channels of input data: e. g. we receive position and orientation data for both hands, and potentially multiple

APLNDC00020470

joint angles. This additional data is needed to capture "natural" motions. but using all of the input channels directly can make precise manipulations difficult. Instead, intelligently mapping the various input degrees of freedom into a lower degree tool often provides the user with more control. For example, the grab-and-twirl combines two 6 DOF inputs into an easy to use 6 DOF manipulator. Another means of reducing the degrees of freedom is by specifying constraints. In our system, the additional degrees of freedom from one input device are actually used to restrict the degrees of freedom in the other input.

A very interesting area of future research is to have the system infer that the user is using both hands in a cooperative manner and to help coordinate the task further. Consider the example when each hand holds a one-handed grab tool which can be used to pick up two different objects. If the same object were picked by both hands, the two one-handed grabs could be coordinated as if they were a tightly coupled, two-handed tool. This potential scenario raises a host of interesting issues. For example, how does the system decide when both hands are being used together? How does it transition between one-handed and two-handed modes? And finally, are there interesting three-handed interactions, where the user provides two hands and the computer a third to assist?

## Acknowledgements

We would like to thank Maneesh Agrawala and Andrew Beers for contributing many ideas, Terry Winograd for valuable discussions, Tamara Munzner for helping with the video editing process, Sina Mostafawy for modeling the toolbox, and Gerold Wesche for help with encapsulating the visualization tools. GMD, Germany's National Research Center for Information Technology, developed part of the basic workbench software that was used for this project. GMD and Daimler-Benz AG implemented the visualization tools for the automotive application. The finite volume dataset is courtesy of Daimler-Benz AG. This work was supported by NASA under contract NAS2-14308, Interval Research Corporation, and Silicon Graphics, Inc.

## References

[1] Eric Bier, Maureen Stone, Ken Fishkin, William Buxton, and Thomas Baudel. A taxonomy of see-through tools. In *ACM Annual conference on Human Factors in Computing Systems*, pages 358–364. ACM, Addison-Wesley, April 1994.

[2] Eric A. Bier, Maureen C. Stone, Ken Pier, William Buxton, and Tony DeRose. Toolglass and Magic Lenses: The see-through interface. In James T. Kajiya, editor, *Computer Graphics (SIGGRAPH '93 Proceedings)*, volume 27, pages 73–80, August 1993.

[3] Richard A. Bolt and Edward Herranz. Two-handed gesture in multi-modal natural dialogue. In Gerrit C. van der Veer, Sebastiano Bagnara, and Gerard A. M. Kempen, editors, *Proceedings of the ACM SIGGRAPH Symposium on User Interface Software and Technology*, pages 7–14, 1992.

[4] Carolina Cruz-Neira, Daniel J. Sandin, and Thomas A. DeFanti. Surround-screen projection-based virtual reality: The design and implementation of the CAVE. In James T. Kajiya, editor, *Computer Graphics (SIGGRAPH '93 Proceedings)*, volume 27, pages 135–142, August 1993.

[5] Yves Guiard. Symmetric division of labor in human skilled bimanual action: the kinematic chain as a model. *The Journal of Motor Behaviour*, 19(4):486–517, 1987.

[6] Alexander G. Hauptmann. Speech and gestures for graphic image manipulation. In Martin Helander, editor, *Proceedings of ACM CHI'89 Conference on Human Factors in Computing Systems*, pages 241–245, 1989.

[7] Ken Hinckley, Randy Pausch, John C. Goble, and Neal F. Kassell. Passive real-world interface props for neurosurgical visualization. In Gavriel Salvendy, editor, *Proceedings of ACM CHI'94 Conference on Human Factors in Computing Systems*, pages 452–458, 1994.

[8] Paul Kabbash, William Buxton, and Abigail Sellen. Two-handed input in a compound task. In Gavriel Salvendy, editor, *Proceedings of ACM CHI'94 Conference on Human Factors in Computing Systems*, pages 417–423, 1994.

[9] Wolfgang Krüger, Christina-A. Bohn, Bernd Fröhlich, Heinrich Schüth, Wolfgang Strauss, and Gerold Wesche. The responsive workbench: A virtual work environment. *IEEE Computer*, pages 42–48, July 1995.

[10] Wolfgang Krüger and Bernd Fröhlich. The responsive workbench. *IEEE Computer Graphics and Applications*, pages 12–15, May 1994.

[11] Andrea Leganshuk, Shumin Zhai, and William Buxton. Bimanual direct manipulation in area sweeping tasks. *http://www.dgp.utoronto.ca/people/andrea/bimanual.html*, 1996.

[12] Daniel P. Mapes and J. Michael Moshell. A two-handed interface for object manipulation in virtual environments. *Presence*, 4(4):403–416, 1995.

[13] Mark R. Mine. *Personal communications 9/20/96.*

[14] Mark R. Mine. Working in a virtual world: Interaction techniques used in the chapel hill immersive modeling program. *Technical Report 1996-029*, 1996.

[15] Randy Pausch, Tommy Burnette, Dan Brockway, and Michael E. Weiblen. Navigation and locomotion in virtual worlds via flight into Hand-Held miniatures. In Robert Cook, editor, *SIGGRAPH 95 Conference Proceedings*, Annual Conference Series, pages 399–400. ACM SIGGRAPH, Addison Wesley, August 1995. held in Los Angeles, California, 06-11 August 1995.

[16] Timothy Poston and Luis Serra. The virtual workbench: Dextrous VR. In *Virtual Reality Software and Technology (Proceedings of VRST'94, August 23-26, 1994, Singapore)*, pages 111–122, Singapore, August 1994. World Scientific Publishing.

[17] Emanuel Sachs, Andrew Roberts, and David Stoops. 3-draw: A tool for designing 3D shapes. *IEEE Computer Graphics and Applications*, 11(6):18–26, November 1991.

[18] Chris Shaw and Mark Green. Two-handed polygonal surface design. In Gerrit C. van der Veer, Sebastiano Bagnara, and Gerard A. M. Kempen, editors, *Proceedings of the ACM Symposium on User Interface Software and Technology*, pages 205–212, 1994.

[19] Matthias M. Wloka and Eliot Greenfield. The virtual tricorder: A uniform interface for virtual reality. In Gerrit C. van der Veer, Sebastiano Bagnara, and Gerard A. M. Kempen, editors, *Proceedings of the ACM Symposium on User Interface Software and Technology*, pages 39–40, 1995.



| EPA/EPO/OEB | Europäisches | European | Office européen |
| D-80298 München | Patentamt | Patent Office | des brevets |

☎ +49 89 2399-0
TX 523 656 epmu d
FAX +49 89 2399-4465

Generaldirektion 2    Directorate General 2    Direction Générale 2

Meddle, Alan L.
FORRESTER & BOEHMERT,
Pettenkoferstrasse 20-22
80336 München
ALLEMAGNE

| Telephone numbers: | Branch at The Hague |
| --- | --- |
| Primary Examiner (substantive examination) | +31 70 340-4870 |
| Formalities Officer / Assistant (Formalities and other matters) | +31 70 340-7961 |



| Application No. | Ref. | Date |
| --- | --- | --- |
| 99 904 228.6 - 1245 | FB9380-E14549EP | 23.03.2007 |

| Applicant |
| --- |
| Westerman, Wayne |

**Communication pursuant to Article 96(2) EPC**

The examination of the above-identified application has revealed that it does not meet the requirements of the European Patent Convention for the reasons enclosed herewith. If the deficiencies indicated are not rectified the application may be refused pursuant to Article 97(1) EPC.

You are invited to file your observations and insofar as the deficiencies are such as to be rectifiable, to correct the indicated deficiencies within a period

**of   4   months**

from the notification of this communication, this period being computed in accordance with Rules 78(2) and 83(2) and (4) EPC.

One set of amendments to the description, claims and drawings is to be filed within the said period on separate sheets (Rule 36(1) EPC).

**Failure to comply with this invitation in due time will result in the application being deemed to be withdrawn (Article 96(3) EPC).**



Arranz, José
Primary Examiner
for the Examining Division

Enclosure(s):     4  page/s reasons (Form 2906)
                  WO9740744 A1

**Registered Letter**
EPO Form 2001  07.02CSX

APLNDC00020472



| | | |
|---|---|---|
| Datum<br>Date<br>Date | 23.03.2007 | Blatt<br>Sheet<br>Feuille | 1 | Anmelde-Nr.:<br>Application No.:<br>Demande n°: | 99 904 228.6 |

The examination is being carried out on the following **application documents**:

**Description, Pages**

1-7, 12, 13, 15-80, 82, as originally filed
83

8, 8a, 9-11, 14, 81    received on          25.10.2006  with letter of      19.10.2006

**Claims, Numbers**

1-15         received on         25.10.2006  with letter of      19.10.2006

**Drawings, Sheets**

1/45-45/45       as originally filed

1.    The applicant's effort to remedy the deficiencies identified in the previous communication is acknowledged. However, the Examining Division is not in a position to issue a communication under Rule 51(4) EPC.

2.    The following document is cited by the examiner (see the Guidelines, C-VI, 8.7). A copy of the document is annexed to the communication and the numbering will be adhered to in the rest of the procedure:

    D3:  WO9740744 A1 06.11.1997

3.    The present application does not meet the requirements of Article 52(1) EPC, because the subject-matter of claim 1 is not new in the sense of Article 54(1) and (2) EPC.

EPO Form 2906  01.91CSX

APLNDC00020473


Case 5:11-cv-01846-LHK   Document 562-2   Filed 12/29/11   Page 76 of 93

| Bescheid / Communication / Notification | | Communication Minutes (Annex) | | Minutes/Process Verbal (Annexe) | |
|---|---|---|---|---|---|
| Datum<br>Date<br>Date | 23.03.2007 | Blatt<br>Sheet<br>Feuille | 2 | Anmelde-Nr.:<br>Application No.:<br>Demande n°: | 99 904 228.6 |

3.1   The document D3 discloses (the references in parentheses applying to this document):

a multi-touch surface apparatus for detecting a spatial arrangement of multiple touch devices on or near the surface of the multi-touch apparatus comprising (page 9, lines 9-11, "electronic image"):

one of a rigid or flexible surface (page 4, lines 20-21);

an array of sensing devices arranged on the surface (page 3, line 23 and Fig.1-2);

control circuitry for enabling the sensor devices ("row driver circuit", page 9, line 18);

measurement circuitry to convert sensor data to a digital code ("sense amplifier circuit", page 10, line 7); and

circuitry for communicating the digital code to another electronic device (page 13, line 29. page 14, line 26 and Fig,6), wherein the sensing devices each comprise:

two electrical switching means connected together in series having a common node, an input node, and an output node (page 6, line 13 - page 7, line 22 and Fig.2);

a dielectric-covered sensing electrode connected to the common node between the two switching means (page 9, line 4 AND Fig.3); and

a power supply providing an approximately constant voltage connected to the input node of the series-connected switching means ("potential source", page 12, line 25 - page 13, line 3).

The subject-matter of claim 1 is therefore not new (Article 54(1) and (2) EPC).

4.   Dependent claims 2-15 do not appear to contain any additional features which, in combination with the features of any claim to which they refer, meet the requirements

EPO Form 2906  01.91CSX

APLNDC00020474



Case 5:11-cv-01846-LHK   Document 562-2   Filed 12/29/11   Page 77 of 93

Bescheid / Communication / Notification   Comunicazione / Minutes (Annex)   Notification / Procès-verbal (Annexe)

| Datum / Date / Date | 23.03.2007 | Blatt / Sheet / Feuille | 3 | Anmelde-Nr.: / Application No.: / Demande n°: | 99 904 228.6 |

of the EPC with respect to novelty and/or inventive step, the reasons being as follows:

4.1  The additional features of claims 8-10 are disclosed in D3
- claim 8, see page 12, lines 21-25
- claim 9, see page 7, lines 14-15
- claim 10, see page 7, line 15

4.2  Claims 2-3
The additional features of claims 2,3 merely refer to a well known alternative to measure a charge on a capacitor, e.g. see D1 page 9, lines 5-13 and Figure 7.

4.3  Claims 4-7
The additional features of claims 4-7 amount to a mere trade-off between having a higher performance measuring circuit, wherein the measuring circuits operate simultaneously on each column, and a simplified, common measuring circuit for all the sensing elements, requiring less components.
Hence, such a trade-off between known advantages and disadvantages does not involve an inventive step (e.g. see T36/86 or more particularly T38/87 at point 4.1.7, stating that acceptance of certain known disadvantages in order to be able to make use of certain advantages as a compromise between conflicting parameters results in no surprising effect and is therefore to be regarded as obvious).

4.4  Claims 11-15
The additional features of claims 11-15 merely represent a choice of practical implementation that the skilled person would make according to circumstances without the exercise of inventive skill.

5.  It is not at present apparent which part of the application could serve as a basis for a new, allowable claim.
At least some of the objections raised above are such that there appears to be no possibility of overcoming them by amendment. Refusal of the application under Article 97(1) EPC is therefore to be expected.

EPO Form 2906  01.91CSX

APLNDC00020475

| | | | | | |
|---|---|---|---|---|---|
| Datum<br>Date<br>Date | 23.03.2007 | Blatt<br>Sheet<br>Feuille | 4 | Anmelde-Nr.:<br>Application No.:<br>Demande n°: | 99 904 228.6 |

EPO Form 2906  01.91CSX

APLNDC00020476



P.B. 5818 Patentlaan 2
2280 HV Rijswijk (ZH)
☎ (070) 340 2040
Tx  31651 epo nl
FAX  (070) 340 3016

**Europäisches
Patentamt**
Zweigstelle in
Den Haag
Recherchen-
abteilung

**European
Patent Office**
Branch at
The Hague
Search
Division

**Office européen
des brevets**
Département à
La Haye
Division de la
recherche

Meddle, Alan Leonard
FORRESTER & BOEHMERT,
Pettenkoferstrasse 20-22
80336 München
ALLEMAGNE

| Datum/Date |
| --- |
| 1 6. 02. 05 |

| Zeichen/Ref./Réf. | Anmeldung Nr./Application No./Demande n°.//Patent Nr./Patent No./Brevet n° |
| --- | --- |
| FB9380-E14549EP | 99904228.6-1245/US9901454 |
| Anmelder/Applicant/Demandeur/Patentinhaber/Proprietor/Titulaire | |
| Westerman, Wayne, et al | |

# COMMUNICATION

The European Patent Office herewith transmits the partial supplementary European search report under Rule 46(1) EPC relating to the above-mentioned European patent application.

Copies of the documents cited in the search report are enclosed.

The applicant's attention is drawn to the following:

The search Division informs the applicant that if the supplementary European search report is also to cover inventions other than the invention first mentioned in the claims, a further search fee must be paid for each of these inventions, within ONE MONTH after notification of this communication.

If the application has been filed up to 30 June 1999, the search fee in force before 01 July 1999 (EUR 869,—) or the equivalent applicable on the date of payment is payable.
**This applies also to the search fees requested under Rule 46(1) EPC.**
See also OJ EPO 06/1999, 405.

☐ The abstract was modified by the Search Division and the definitive text is attached to the present communication.

☒ Additional set(s) of copies of the documents cited in the European search report is (are) enclosed as well.

## Note to users of the automatic debiting procedure:

Unless the EPO receives prior instructions to the contrary, the search fee(s) will be debited on the last day of the period for payment. For further details see the Arrangements for the automatic debiting procedure, Supplement to OJ EPO 02/1999.

REGISTERED LETTER



APLNDC00020477



**European Patent Office**

## SUPPLEMENTARY
## PARTIAL EUROPEAN SEARCH REPORT

**Application Number**

under Rule 46, paragraph 1 of the European Patent Convention

EP 99 90 4228

### DOCUMENTS CONSIDERED TO BE RELEVANT

| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (Int.Cl.6) |
|---|---|---|---|
| X | WO 97/23738 A1 (PHILIPP, HARALD) 3 July 1997 (1997-07-03) | 1-6 | G09G5/00 G06F3/033 |
| Y | * page 4, line 41 - page 7, line 26; figure 5 * | 7-16, 18-21, 25-36 | |
| | ----- | | |
| Y | EP 0 464 908 A (PHILIPS ELECTRONICS UK LTD ; PHILIPS NV (NL)) 8 January 1992 (1992-01-08) * figure 1 * | 7-16, 18-21, 25-36 | |
| | ----- | | |

**TECHNICAL FIELDS SEARCHED (Int.Cl.6)**

G06F
G05F

### LACK OF UNITY OF INVENTION

The Search Division considers that the present European patent application does not comply with the requirements of unity of invention and relates to several inventions or groups of inventions, namely:

see sheet B

The present partial European search report has been drawn up for those parts of the European patent application which relate to the invention first mentioned in the claims.

| Place of search | Date of completion of the search | Examiner |
|---|---|---|
| The Hague | 26 January 2005 | Arranz, J |

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or after the filing date
D : document cited in the application
L : document cited for other reasons

& : member of the same patent family, corresponding document

EPO FORM 1503 03 82 (P04C23)

5

APLNDC00020478



European Patent Office | **LACK OF UNITY OF INVENTION SHEET B** | **Application Number** EP 99 90 4228

The Search Division considers that the present European patent application does not comply with the requirements of unity of invention and relates to several inventions or groups of inventions, namely:

1. claims: 1-16,18-21,25-36

   Input device for detecting multiple simultaneous touch points.
   ———

2. claim: 17

   Capacitive proximity sensor detecting the position of non-conductive objects over the sensor
   ———

3. claims: 22,23

   Haptic references points on a capacitive touch sensor
   ———

4. claim: 24

   Improving the touch detection on a capacitive keypad.
   ———

5. claims: 64-68

   Determining the finger, thumb and palm of a hand on the scanned image.
   ———

6. claims: 37-41

   Gesture recognition on a capacitive touch sensor.
   ———

7. claim: 42

   Predicting hand trajectories.
   ———

8. claims: 43-45

   Adapting the input to the users hand size.
   ———

9. claims: 46-63

   Recognition of different hand configurations.
   ———

10. claims: 69-82

   Method for determining which hand is touching the sensor.

APLNDC00020479



**European Patent Office**

**LACK OF UNITY OF INVENTION SHEET B**

Application Number

EP 99 90 4228

---

The Search Division considers that the present European patent application does not comply with the requirements of unity of invention and relates to several inventions or groups of inventions, namely:

---

11. claims: 83-89

   Extracting simultaneous hand and finger motions.
   ---

12. claims: 90-94

   Method to determine roll and tilt hand motions.
   ---

13. claims: 95-118

   Method for switching the input mode on an gesture controlled input device.
   ---

14. claims: 119-121

   Method for reducing hand movements on a motion controlled cursor control device.
   ---

APLNDC00020480

**ANNEX TO THE EUROPEAN SEARCH REPORT
ON EUROPEAN PATENT APPLICATION NO.**

EP 99 90 4228

This annex lists the patent family members relating to the patent documents cited in the above–mentioned European search report.
The members are as contained in the European Patent Office EDP file on
The European Patent Office is in no way liable for these particulars which are merely given for the purpose of information.

26-01-2005

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| WO 9723738 | A1 | 03-07-1997 | US | 5730165 A | 24-03-1998 |
| | | | DE | 19681725 T0 | 26-11-1998 |
| | | | GB | 2337124 A ,B | 10-11-1999 |
| EP 0464908 | A | 08-01-1992 | GB | 2245708 A | 08-01-1992 |
| | | | DE | 69121806 D1 | 10-10-1996 |
| | | | DE | 69121806 T2 | 13-03-1997 |
| | | | EP | 0464908 A2 | 08-01-1992 |
| | | | JP | 4233619 A | 21-08-1992 |
| | | | US | 5194862 A | 16-03-1993 |

EPO FORM P0459

For more details about this annex : see Official Journal of the European Patent Office, No. 12/82

APLNDC00020481



P.B.5818 - Patentlaan 2
2280 HV Rijswijk (ZH)
☎ +31 70 340 2040
TX 31651 epo nl
FAX +31 70 340 3016

| **Europäisches Patentamt** | **European Patent Office** | **Office européen des brevets** |
|---|---|---|
| Zweigstelle in Den Haag Recherchenabteilung | Branch at The Hague Search division | Département à La Haye Division de la recherche |

Meddle, Alan Leonard
FORRESTER & BOEHMERT,
Pettenkoferstrasse 20-22
80336 München
ALLEMAGNE

## COPY

| Datum/Date |
|---|
| 0 8. 07. 05 |

| Zeichen/Ref./Réf. | Anmeldung Nr./Application No./Demande n°./Patent Nr./Patent No./Brevet n°. | | |
|---|---|---|---|
| FB9380-E14549EP | 99904228.6 | - | - |

| Anmelder/Applicant/Demandeur/Patentinhaber/Proprietor/Titulaire |
|---|
| Westerman, Wayne |

# COMMUNICATION

The European Patent Office herewith transmits

☐ the European search report

☐ the declaration under Rule 45 EPC

☐ the partial European search report under Rule 45 EPC

☒ the supplementary European search report concerning the international application under Article 157(2) EPC relating to the above-mentioned European patent application. ~~Copies of the documents cited in the search report are enclosed.~~

The following specifications given by the applicant have been approved by the Search Division :

☐ Abstract          ☐ Title          ☐ Figure

☐ The abstract was modified by the Search Division and the definitive text is attached to this communication.

☐ The following figure will be published with the abstract, since the Search Division considers that it better characterises the invention than the one indicated by the applicant.

Figure:

☐ Additional copy(copies) of the documents cited in the European search report.

## REFUND OF THE SEARCH FEE

If applicable under Article 10 Rules relating to fees, a separate communication from the Receiving Section on the refund of the search fee will be sent later.

| EPO Form 1507 02.93 |
|---|

APLNDC00020482



**European Patent Office**

**SUPPLEMENTARY EUROPEAN SEARCH REPORT**

Application Number

EP 99 90 4228

## DOCUMENTS CONSIDERED TO BE RELEVANT

| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (Int.Cl.6) |
|---|---|---|---|
| X | WO 97/23738 A1 (PHILIPP, HARALD) 3 July 1997 (1997-07-03) | 1-6 | G09G5/00 G06F3/033 |
| Y | * page 4, line 41 - page 7, line 26; figure 5 * | 7-16, 18-21, 25-36 | |
| | ----- | | |
| Y | EP 0 464 908 A (PHILIPS ELECTRONICS UK LTD ; PHILIPS NV (NL)) 8 January 1992 (1992-01-08) * figure 1 * | 7-16, 18-21, 25-36 | |
| | ----- | | |

| | TECHNICAL FIELDS SEARCHED (Int.Cl.6) |
|---|---|
| | G06F G05F |

The supplementary search report has been based on the last set of claims valid and available at the start of the search.

| Place of search | Date of completion of the search | Examiner |
|---|---|---|
| The Hague | 26 January 2005 | Arranz, J |

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or after the filing date
D : document cited in the application
L : document cited for other reasons
& : member of the same patent family, corresponding document

EPO FORM 1503 03.82 (P04C04)

5

APLNDC00020483

 European Patent
Office

**Application Number**

EP 99 90 4228

---

## CLAIMS INCURRING FEES

The present European patent application comprised at the time of filing more than ten claims.

☐ Only part of the claims have been paid within the prescribed time limit. The present European search report has been drawn up for the first ten claims and for those claims for which claims fees have been paid, namely claim(s):

☐ No claims fees have been paid within the prescribed time limit. The present European search report has been drawn up for the first ten claims.

---

## LACK OF UNITY OF INVENTION

The Search Division considers that the present European patent application does not comply with the requirements of unity of invention and relates to several inventions or groups of inventions, namely:

see sheet B

☐ All further search fees have been paid within the fixed time limit. The present European search report has been drawn up for all claims.

☐ As all searchable claims could be searched without effort justifying an additional fee, the Search Division did not invite payment of any additional fee.

☐ Only part of the further search fees have been paid within the fixed time limit. The present European search report has been drawn up for those parts of the European patent application which relate to the inventions in respect of which search fees have been paid, namely claims:

☒ None of the further search fees have been paid within the fixed time limit. The present European search report has been drawn up for those parts of the European patent application which relate to the invention first mentioned in the claims, namely claims:

1-16, 18-21, 25-36

APLNDC00020484

 **European Patent Office**     **LACK OF UNITY OF INVENTION SHEET B**     Application Number

EP 99 90 4228

The Search Division considers that the present European patent application does not comply with the requirements of unity of invention and relates to several inventions or groups of inventions, namely:

1. claims: 1-16,18-21,25-36

   Input device for detecting multiple simultaneous touch points.
   ---

2. claim: 17

   Capacitive proximity sensor detecting the position of non-conductive objects over the sensor
   ---

3. claims: 22,23

   Haptic references points on a capacitive touch sensor
   ---

4. claim: 24

   Improving the touch detection on a capacitive keypad.
   ---

5. claims: 64-68

   Determining the finger, thumb and palm of a hand on the scanned image.
   ---

6. claims: 37-41

   Gesture recognition on a capacitive touch sensor.
   ---

7. claim: 42

   Predicting hand trajectories.
   ---

8. claims: 43-45

   Adapting the input to the users hand size.
   ---

9. claims: 46-63

   Recognition of different hand configurations.
   ---

10. claims: 69-82

   Method for determining which hand is touching the sensor.

APLNDC00020485



**European Patent Office**

## LACK OF UNITY OF INVENTION
### SHEET B

Application Number

EP 99 90 4228

The Search Division considers that the present European patent application does not comply with the requirements of unity of invention and relates to several inventions or groups of inventions, namely:

---

11. claims: 83-89

    Extracting simultaneous hand and finger motions.
---

12. claims: 90-94

    Method to determine roll and tilt hand motions.
---

13. claims: 95-118

    Method for switching the input mode on an gesture controlled input device.
---

14. claims: 119-121

    Method for reducing hand movements on a motion controlled cursor control device.
---

APLNDC00020486

**ANNEX TO THE EUROPEAN SEARCH REPORT
ON EUROPEAN PATENT APPLICATION NO.**

EP 99 90 4228

This annex lists the patent family members relating to the patent documents cited in the above-mentioned European search report.
The members are as contained in the European Patent Office EDP file on
The European Patent Office is in no way liable for these particulars which are merely given for the purpose of information.

26-01-2005

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| WO 9723738 | A1 | 03-07-1997 | US | 5730165 A | 24-03-1998 |
| | | | DE | 19681725 T0 | 26-11-1998 |
| | | | GB | 2337124 A ,B | 10-11-1999 |
| EP 0464908 | A | 08-01-1992 | GB | 2245708 A | 08-01-1992 |
| | | | DE | 69121806 D1 | 10-10-1996 |
| | | | DE | 69121806 T2 | 13-03-1997 |
| | | | EP | 0464908 A2 | 08-01-1992 |
| | | | JP | 4233619 A | 21-08-1992 |
| | | | US | 5194862 A | 16-03-1993 |

EPO FORM P0459

For more details about this annex : see Official Journal of the European Patent Office, No. 12/82

APLNDC00020487



Patentlaan 2
2280 HV Rijswijk (ZH)
☎ (070) 3 40 20 40
FAX (070) 3 40 30 16

| Europäisches Patentamt | European Patent Office | Office européen des brevets |
|---|---|---|
| Generaldirektion 1 | Directorate General 1 | Direction générale 1 |

Meddle, Alan L.
FORRESTER & BOEHMERT,
Pettenkoferstrasse 20-22
80336 München
ALLEMAGNE



**EPO Customer Services**

Tel.: +31 (0)70 340 45 00

| Date |
|---|
| 08.07.05 |

| Reference | Application No./Patent No. |
|---|---|
| FB9380-E14549EP | 99904228.6 - 2205   PCT/US9901454 |

| Applicant/Proprietor |
|---|
| Westerman, Wayne, et al |

## COMMUNICATION

The European Patent Office herewith transmits as an enclosure the European search report for the above-mentioned European patant application.

If applicable, copies of the documents cited in the European search report are attached.

☑  Additional set(s) of copies of the documents cited in the European search report is (are) enclosed as well.

**Refund of the search fee**

If applicable under Article 10 Rules relating to fees, a separate communication from the Receiving Section on the refund of the search fee will be sent later.



# A MULTI-TOUCH THREE DIMENSIONAL TOUCH-SENSITIVE TABLET

SK. Lee, W. Buxton, K.C. Smith
Computer Systems Research Institute
University of Toronto
Toronto, Ontario
Canada, M5S 1A4

(416)-978-6320

## ABSTRACT

A prototype touch-sensitive tablet is presented. The tablet's main innovation is that it is capable of sensing more than one point of contact at a time. In addition to being able to provide position coordinates, the tablet also gives a measure of degree of contact, independently for each point of contact. In order to enable multi-touch sensing, the tablet surface is divided into a grid of discrete points. The points are scanned using a recursive area subdivision algorithm. In order to minimize the resolution lost due to the discrete nature of the grid, a novel interpolation scheme has been developed. Finally, the paper briefly discusses how multi-touch sensing, interpolation, and degree of contact sensing can be combined to expand our vocabulary in human-computer interaction.

## 1. INTRODUCTION

Rapid advancement of computer technology has opened a variety of new applications. New applications and users mean demands for new modes of interaction. One consequence of this is a growing appreciation of the importance of using appropriate input technologies (Buxton, 1982). Positioning devices are seen to be essential to graphics applications, image transducers are required for pattern recognition in medical diagnosis, touch screens are useful for the education of young children, and the QWERTY keyboard remains the usual standard for text processing. However, the range of input devices available is still quite limited, as is our understanding of how to use them in the most effective manner.

The intent of the research presented in this paper is to increase the vocabulary that can be utilized in human-computer interaction. Our approach has been to develop a new input technology that enlarges the domain of human physical gestures that can be captured for control purposes. In what follows, we will describe the technology, what it evolved from, and some aspects of how it can be used.

## 2. OVERVIEW

The transducer that we have developed is a touch-sensitive tablet; that is, a flat surface that can sense where it is being touched by the operator's finger. This in itself is not new. Several such devices are commercially available from a number of manufacturers (see Appendix A). What is unique about our tablet is that it com-

bines two additional features. First, it can sense the degree of contact in a continuous manner. Second, it can sense the amount and location of a number of simultaneous points of contact. These two features, when combined with touch sensing, are very important in respect to the types of interaction that we can support. Some of these are discussed below, but see Buxton, Hill, and Rowley (1985) and Brown, Buxton and Murtagh (1985) for more detail. The tablet which we present is a continuation of work done in our lab by Sasaki et al (1981) and Metha (1982).

In the presentation which follows, we focus mainly on issues relating to the transducer's implementation. Two important contributions discussed are our method of scanning the tablet surface, and our method of maintaining high resolution despite the surface being partitioned into a discrete grid. Additional technical details can be found in Lee (1984).

## 3. WHY MULTI-TOUCH?

Touch sensing has a number of important characteristics. There is no physical stylus or puck to get lost, broken, or vibrate out of position. Touch tablets can be molded so as to make them easy to clean (therefore making them useful in clean environments like hospitals, or dirty environments like factories). Since there is no mechanical intermediary between hand and tablet, there is nothing to prevent multi-touch sensing. Templates can be placed over the tablet to define special regions and, since the hand is being used directly, these regions can be manually sensed, thereby allowing the trained user to effectively "touch type" on the tablet.

Without pressure sensing, however, the utility of touch tablets is quite limited. One can move a tracking symbol around the screen, for example, but when the finger is over a light button, there is nothing equivalent to the button on a mouse to push in order to make a selection. Yes, we could lift the finger off the tablet, but that would be more like pulling (rather than pushing) the button. And what if we wanted to drag an item being pointed at, or to indicate that we wanted to start inking? Lifting our finger would leave our finger off the tablet, just when we want it in contact with it the most. There are ways around this problem, but they are indirect. If, however, the tablet has pressure sensing, we can push a virtual button by giving an extra bit of pressure to signal a change in state.

Pressure has other advantages. One example is to control line thickness in a paint program. But why do we want multiple point sensing? A simple example would be if we had a template placed over the tablet which delimited three regions of 9 cm by 2 cm. Where we touch each region could control the setting of a parameter associated with each region. If we wanted to simultaneously adjust all three parameters, then we would have to be able to sense all three regions. An even easier example is using the tablet to emulate a piano keyboard that can play polyphonic music.

Permission to copy without fee all or part of this material is granted provided that the copies are not made or distributed for direct commercial advantage, the ACM copyright notice and the title of the publication and its date appear, and notice is given that copying is by permission of the Association for Computing Machinery. To copy otherwise, or to republish, requires a fee and/or specific permission.

© 1985 ACM 0-89791-149-0/85/004/0021    $00.75

APLNDC00020489

XP009074849
Case 5:11-cv-01846-LHK   Document 562-2   Filed 12/29/11   Page 92 of 93

## 4. HARDWARE DESCRIPTION

A brief description of the hardware of the fast multiple-touch-sensitive input device (FMTSID) is introduced here. The design of the hardware is based on the requirements of the fast scanning algorithm and on tradeoffs between software and hardware. Many sensors have been examined for our particular application, however (Hurst, 1974; Hillis, 1982; TSD, 1982; TASA, 1980; JSRC, 1981; Metha, 1982) none seemed to have the properties that satisfy the requirements of a FMTSID. The hardware basically consists of a sensor matrix board, row and column selection registers, A/D converting circuits and a controlling CPU.

The design of the sensor matrix is based on the technique of capacitance measurement between a finger tip and a metal plate. To minimize hardware, the sensors are accessed by row and column selection. Row selection registers select one or more rows by setting the corresponding bits to a high state in order to charge up the sensors while the column selection registers select one or more columns by turning on corresponding analog switches to discharge the sensors through timing resistors. The intersecting region of the selected rows and the selected columns represents the selected sensors as a group. A/D converting circuits measure the discharging time interval of the selected sensors.   A University of Toronto 6809 board is used as a controlling CPU. The touch surface of the sensor board consists of number of small metal-coated rectangular-shaped areas serving as sensor plate capacitors. The design of the metal plate area of a unit sensor depends on the measurable capacitance change that results when the area is covered by a finger tip, and on the resolution that can be implemented.



Fig. 1   A model of a selected sensor in the sensor matrix.

In order to select a sensor by row and column access, two diodes are used with each sensor. One diode, connected to the row line, is used to charge up the sensors in the row. It is referred to as the Charging Diode (CD) as shown in Figure 1. The CD also serves to block the charge flowing back to the row line when the row line voltage is dropped to zero. The other diode called the Discharging Diode(DD), connected to the column line, enables discharging of the selected row sensors to a virtual ground. Also the DD blocks charge flow from the sensors in the selected row to the sensors in the unselected rows during the discharging period. The selection of rows, by the row selection procedure, causes the sensors to be charged. The sensors in the column are ... discharged through associated timing resistors connected ... ne column selection switches.

The charges stored in the selected rows ... flow down through the selected switches to the virtual ground of a fast operational amplifier. All the discharging currents are correspondingly added to produce a signal from which the discharging time of all the selected sensors is found by comparison with a threshold voltage.

Pressure sensitivity is incorporated by two measures: First there is the effect, here minor, of compression of the overlaying insulator. Second there is the effect of intrinsic spreading of the compressable finger tip as pressure is increased.

The software in the controlling CPU utilizes communication with the host computer to accommodate the interpolation scheme. The clock rate (10 MHz) allows about 10 counts to correspond to the sensor capacitance change due to a touch. But, of course, the capacitance of all the circuitry attached to the column line during the discharging period is much larger than the sensor capacitance. Thus before scanning the tablet for a touch, it is scanned completely in all possible resolution modes  when not touched. The values so obtained are stored as references.  Touches are identified by the differences between the reference values and the values measured during use.

The capacitance change corresponding to the touch by more than one finger (or by the whole hand) is very large. Thus the number of bits in the counter should be enough to measure the maximum capacitance. However it is unnecessary either to have sufficient bits to measure the entire capacitance including the surrounding capacitances, or to store the corresponding "complete" counter values as references.  It is necessary only to have one more bit than the number of bits required  to count the value of change in the capacitance rather than the complete value in order to measure the differences of capacitance due to touch. Thus only an 8 bit counter is implemented. The counter enables the measurement of a 7 bit capacitance change regardless of the degree of overflow in the counter.

A facility is also provided for identifying templates applied to the surface of the tablet.

## 5. SCANNING ALGORITHM

One idea of some significance that can be introduced is to avoid scanning of all the pixels in the tablet which contain no information. For example, scanning all 2048 points of a tablet having a resolution 64 by 32 for fewer than 10 points is really quite a ridiculous idea. In fact, if the number of points to be searched is comparably small, then an improved algorithm, here called recursive area subdivision, can be used. A particular implementation example is described as follows.

Consider a tablet with resolution 8 by 8 to be searched for a touch point as shown in Figure 2. First, check the tablet for touch as a whole region as shown by the area ABCD in the figure. If touch is detected, divide the tablet into two equal regions shown by the line EF and check each of the two regions ABEF and EFCD for touchedness. Select the touched region, region EFCD in this case, and divide this into two equal regions as shown by the division line GH. Continue this process on the touched region until no further division is possible, that is, until a unit sensor, designated as the region PKMO in Figure 2, is reached. The figure also shows the sequence of subdivision in the recursive subdivision scheme.



(n)=Sequence of subdivision in binary operation.

Fig. 2   Recursive subdivision operation for 8 by 8 tablet.

APLNDC00020490

Using this algorithm, a search for one point on a tablet having a resolution 64 by 32, requires 22 scanning times, that is

$$2 * \{\log_2 2\} (64 * 32) = 22$$

If there is no overhead in the recursive subdivision process and scanning begins at the "top of the tree" (that is, with a region in which all pixels are grouped together), then using this scheme, the number of touched points that can be identified in the time that it would take to detect one touch directly (that is, if all pixels are scanned one by one sequentially) is

$$N = \{(64 * 32) \text{ over } 22\} = 186.$$

This shows immediately that the recursive subdivision scheme is much superior to sequential scanning if the number of points to be scanned is fewer than 186.

## 6. INTERPOLATION

It may seem that the resolution of the hardware is too low for use in graphics applications. However touch intensity and multi-touch sensitivity can be used to enhance resolution. This is possible because the center of a touch can be most accurately estimated by an interpolation utilizing the values of the adjacent sensor intensities.

Direct interpolation schemes for a few cases has been implemented. One of interest is to interpolate an array of 3 by 3 sensors using a touched point in the center. Another is to interpolate all points on the tablet. The later one obviously provides the highest resolution but as a result it simply emulates a single touch tablet with very high resolution.

## 7. PERFORMANCE

### 7.1 Sensor

An ideal sensor matrix for a FMTSID would be one that has uniform and small reference values over a grouping level, a large variation of intensity due to a touch, and fast measurement time. The sensor matrix of the prototype, however, has a relatively wide range of reference values. However these values do not change very much over extended periods of time. The results show that doubling the number of sensors in a group in the column direction increases the reference value by a factor of about 1.5. This corresponds well to theoretical estimates. As well the results show that increasing the number of sensors in a group in the row direction, in contrast, does not increase the reference value in general, even if the number of the sensors is doubled in a group. The reference value ranges from 40 (for a single sensor in a group) to 580 (for the entire array of 64 by 32 sensors considered as a group).

In order to account for time and other variations of the reference values, a threshold is included which must be overcome in order for a touch to be detected. The threshold used ranges from 2 to 7 counts depending on group size. Using these threshold values the CPU does not report untouched points wrongly over intervals of at least 3 hours in either sequential or recursive subdivision modes. The recursive subdivision scheme uses 6 different thresholds, consequently it is very unlikely to report a wrong point whereas the linear scanning mode using only a single threshold is likely to be more sensitive.

The intensity of a single touch for a single sensor group varies over the tablet but usually ranges above the threshold value by as much as 15. For a single 64 by 32 sensor group, the intensity varies from person to person but it ranges from the threshold to 124. This maximum is obtained when a palm rather than a finger touches the tablet. Another interesting feature is that the response time becomes faster as the number of sensors in a group becomes larger, and furthermore that for the 64 by 32 sensor group, it is possible to detect of a hand merely placed in the vicinity of the tablet.

### 7.2 Spatial Resolution

One possible and immediate interpolation scheme is to interpolate a "touched" point with all adjacent values which may not be large enough to be reported as touched. A local array of 3 by 3 points can be used for this interpolation. Some examples drawn on a laser printer (consequently having no intensity scale) are shown in Figure 3. These pictures are produced without feedback, that is, drawn without the operator looking at the output screen. This does not allow the operator to compensate, that is, to select points where data are sparse in comparison with the intended figure, but rather takes direct input from the location of the figure drawn on the input device. The first picture (a) is drawn by moving a finger in a straight line (guided by a ruler) for various angles and the second one (b) is drawn by moving a finger in a line guide by a circle drawn on a template. These tests show that interpolation actually increases the spatial resolution as well as the locatability of a fine point on a screen.



(a) **Straight lines drawn by the tablet using 3 by 3 sensor array interpolation.** The scales shown represent the boundaries of the actual sensors.



(b) **A circle drawn by the tablet using 3 by 3 sensor array interpolation.** The scales shown represent the boundaries of the actual sensors.

**Fig 3 Points drawn by the tablet using an interpolation method.**

APLNDC00020491