EXHIBIT 4.15

Application/Control Number: 11/428,515                                    Page 2
Art Unit: 2629

## 9DETAILED ACTION

### *Response to Arguments*

1.     Applicant's arguments with respect to claims 1-16 have been considered but are

moot in view of the new ground(s) of rejection.


### *Allowable Subject Matter*

2.     The indicated allowability of claims 5-8 and 12-14 is withdrawn in view of the

newly discovered reference(s) to Yasutake (US 5,483,261), Redlich (US 5,877,748),

Siddiqui et al (US 6,097,371) and Cutler et al (Two-Handed Direct Manipulation on the

Responsive Workbench; as submitted by applicant).   Rejections based on the newly

cited reference(s) follow.


### *Claim Rejections - 35 USC § 103*

3.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

4.     Claims 1, 5 and 15 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Yasutake in view of Siddiqui et al.

In regards to claim 1, Yasutake discloses a method for mapping gestures

performed on a multi- touch surface to graphical user interface commands, the method

comprising:

APLNDC00021556

Application/Control Number: 11/428,515                                    Page 3
Art Unit: 2629

> detecting a plurality of contacts on the multi-touch surface (col. 3, lines 49-61);
>
> associating the plurality of contacts with a whole hand (col. 3, lines 49-61); and
>
> determining a whole hand translation across the multi-touch surface from

movement of the whole hand contacts (col. 4, lines 4-23).

Yasutake does not disclose generating a pan command in response to the whole

hand translation on the multi-touch surface.

Siddiqui discloses generating a pan command in response to the whole hand

translation (col. 21, lines 25-44).  By incorporating the motion of moving a mouse to

generate a pan command as shown in Siddiqui into the device of Yasutake, one would

achieve the ability to generate a pan command by mimicking the motion of moving a

mouse.

It would have been obvious at the time of invention to modify Yasutake with the

teachings of Siddiqui, generating pan command by moving mouse, because it allows

the user to freely move what is being displayed on the display without having to use

scroll bars.


In regards to claim 5, Yasutake does not disclose the method of claim 1 further

comprising generating a zoom command in response to detecting hand scaling by

uniformly flexing or extending fingers on the multi-touch surface.

Siddiqui discloses generating a zoom command in response to detecting hand

scaling by uniformly flexing or extending fingers (col. 18, lines 20-35).  By incorporating

the motion of moving a scroll wheel to generate a zoom command as shown in Siddiqui

APLNDC00021557

Application/Control Number: 11/428,515                                    Page 4
Art Unit: 2629

into the device of Yasutake, one would achieve the ability to generate a zoom command

by mimicking the motion of moving a scroll wheel.

It would have been obvious at the time of invention to modify Yasutake with the

teachings of Siddiqui, generating zoom command by moving scroll wheel, because it

allows the user to freely zoom what is being displayed on the display without having to

continuously touch a zoom in or zoom out button.

In regards to claim 15, Yasutake discloses a method for mapping gestures

performed on a multi- touch surface to graphical user interface commands, the method

comprising:

detecting a plurality of contacts on the multi-touch surface (col. 3, lines 49-61);

and

associating the plurality of contacts with a whole hand (col. 3, lines 49-61).

Yasutake does not disclose detecting hand scaling resulting from uniformly

flexing or extending the fingers on the multi-touch surface and generating a zoom

command in response to the detected hand scaling.

Siddiqui discloses detecting hand scaling resulting from uniformly flexing or

extending the fingers on the multi-touch surface and generating a zoom command in

response to the detected hand scaling (col. 18, lines 20-35).  By incorporating the

motion of moving a scroll wheel to generate a zoom command as shown in Siddiqui into

the device of Yasutake, one would achieve the ability to generate a zoom command by

mimicking the motion of moving a scroll wheel.

APLNDC00021558

It would have been obvious at the time of invention to modify Yasutake with the

teachings of Siddiqui, generating zoom command by moving scroll wheel, because it

allows the user to freely zoom what is being displayed on the display without having to

continuously touch a zoom in or zoom out button.


5.      Claims 2-4 and 6-8 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Yasutake in view of Siddiqui et al in further view of Redlich.

In regards to claim 2, Yasutake and Siddiqui do not disclose the method of claim

1 further comprising generating a rotate command in response to detecting a hand

rotation on the multi-touch surface.

Redlich discloses generating a rotate command in response to detecting a hand

rotation (col. 10, lines 29-58).  By incorporating the motion of rotating a mouse to

generate a rotate command as shown in Redlich into the device of Yasutake, one would

achieve the ability to generate a rotate command by mimicking the motion of rotating a

mouse.

It would have been obvious at the time of invention to modify Yasutake and

Siddiqui with the teachings of Redlich, generating rotate command by rotating a mouse,

because it would allow the user to rotate what is being displayed on the display without

having to touch a rotate left or rotate right button.


In regards to claim 3, Yasutake and Siddiqui do not disclose the method of claim

2 wherein the hand rotation is rotation about a wrist.

APLNDC00021559

Application/Control Number: 11/428,515                                    Page 6
Art Unit: 2629

   Redlich discloses wherein the hand rotation is rotation about a wrist (col. 10, lines 29-58).

   It would have been obvious at the time of invention to modify Yasutake and Siddiqui with the teachings of Redlich, generating rotate command by rotating a mouse, because it would allow the user to rotate what is being displayed on the display without having to touch a rotate left or rotate right button.


   In regards to claim 4, Yasutake, Siddiqui and Redlich do not disclose the method of claim 2 wherein the hand rotation is rotation between fingers.

   Redlich discloses wherein the hand rotation is rotation about a wrist (col. 10, lines 29-58).

   Since there is no benefit or advantage described in the specification for choosing hand rotation about a wrist or between fingers, it would have been obvious to one of ordinary skill in the art at the time of invention to choose either having hand rotation between fingers or about a wrist based on a design choice.


   In regards to claims 6-8, Yasutake does not disclose the method of claim 2 further comprising generating a zoom command in response to detecting hand scaling by uniformly flexing or extending fingers on the multi-touch surface.

   Siddiqui discloses generating a zoom command in response to detecting hand scaling by uniformly flexing or extending fingers (col. 18, lines 20-35). By incorporating the motion of moving a scroll wheel to generate a zoom command as shown in Siddiqui

APLNDC00021560

into the device of Yasutake, one would achieve the ability to generate a zoom command by mimicking the motion of moving a scroll wheel.

It would have been obvious at the time of invention to modify Yasutake with the teachings of Siddiqui, generating zoom command by moving scroll wheel, because it allows the user to freely zoom what is being displayed on the display without having to continuously touch a zoom in or zoom out button.

6.      Claims 9-11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Yasutake in view of Redlich.

In regards to claim 9, Yasutake discloses a method for mapping gestures performed on a multi- touch surface to graphical user interface commands, the method comprising:

detecting a plurality of contacts on the multi-touch surface (col. 3, lines 49-61);

associating the plurality of contacts with a whole hand (col. 3, lines 49-61); and

Yasutake does not disclose determining a hand rotation from movement of the hand contacts and generating a rotate command in response to detecting a hand rotation on the multi-touch surface.

Redlich discloses determining a hand rotation from movement of the hand and generating a rotate command in response to detecting a hand rotation (col. 10, lines 29-58).  By incorporating the motion of rotating a mouse to generate a rotate command as shown in Redlich into the device of Yasutake, one would achieve the ability to generate a rotate command by mimicking the motion of rotating a mouse.

APLNDC00021561

Application/Control Number: 11/428,515                                    Page 8
Art Unit: 2629

It would have been obvious at the time of invention to modify Yasutake with the teachings of Redlich, generating rotate command by rotating a mouse, because it would allow the user to rotate what is being displayed on the display without having to touch a rotate left or rotate right button.

In regards to claim 10, Yasutake does not disclose the method of claim 2 wherein the hand rotation is rotation about a wrist.

Redlich discloses wherein the hand rotation is rotation about a wrist (col. 10, lines 29-58).

It would have been obvious at the time of invention to modify Yasutake with the teachings of Redlich, generating rotate command by rotating a mouse, because it would allow the user to rotate what is being displayed on the display without having to touch a rotate left or rotate right button.

In regards to claim 11, Yasutake and Redlich do not disclose the method of claim 2 wherein the hand rotation is rotation between fingers.

Redlich discloses wherein the hand rotation is rotation about a wrist (col. 10, lines 29-58).

Since there is no benefit or advantage described in the specification for choosing hand rotation about a wrist or between fingers, it would have been obvious to one of ordinary skill in the art at the time of invention to choose either having hand rotation between fingers or about a wrist based on a design choice.

APLNDC00021562

Application/Control Number: 11/428,515                                             Page 9
Art Unit: 2629

7.      Claims 12-14 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Yasutake in view of Redlich in further view of Siddiqui et al.

        In regards to claims 12-14, Yasutake and Redlich do not disclose the method of

claim 2 further comprising generating a zoom command in response to detecting hand

scaling by uniformly flexing or extending fingers on the multi-touch surface.

        Siddiqui discloses generating a zoom command in response to detecting hand

scaling by uniformly flexing or extending fingers (col. 18, lines 20-35).  By incorporating

the motion of moving a scroll wheel to generate a zoom command as shown in Siddiqui

into the device of Yasutake, one would achieve the ability to generate a zoom command

by mimicking the motion of moving a scroll wheel.

        It would have been obvious at the time of invention to modify Yasutake and

Redlich with the teachings of Siddiqui, generating zoom command by moving scroll

wheel, because it allows the user to freely zoom what is being displayed on the display

without having to continuously touch a zoom in or zoom out button.


8.      Claim 16 is rejected under 35 U.S.C. 103(a) as being unpatentable over

Yasutake in view of Cutler et al.

        In regards to claim 16, Yasutake discloses a method for mapping gestures

performed on a multi- touch surface to graphical user interface commands, the method

comprising:

APLNDC00021563

Application/Control Number: 11/428,515                                          Page 10
Art Unit: 2629

> detecting a plurality of contacts on the multi-touch surface (col. 3, lines 49-61);

and

associating the plurality of contacts with a whole hand (col. 3, lines 49-61).

Yasutake does not disclose detecting a first gesture being performed by the first hand and a second gesture being performed by the second hand and manipulating a foreground object in accordance with the first gesture and manipulating a background object with the second gesture.

Cutler discloses detecting a first gesture (moving hand to position model) being performed by the first hand and a second gesture (moving hand to zoom) being performed by the second hand and manipulating (position model) a foreground object in accordance with the first gesture and manipulating a background object (zooming) with the second gesture (Table 1 and page 5, Coordinated Asymmetric Interaction, paragraph 2; two-handed zooming).

### *Conclusion*

9.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to Michael Pervan whose telephone number is (571) 272-0910.  The examiner can normally be reached on Monday - Friday between 8am - 5pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Amr Awad can be reached on (571) 272-7764.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

APLNDC00021564

Application/Control Number: 11/428,515                                    Page 11
Art Unit: 2629

  Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


MVP

/Amr Awad/
Supervisory Patent Examiner, Art Unit 2629

Mar. 12, 2009

APLNDC00021565



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,501 | 07/03/2006 | WAYNE WESTERMAN | 10684-20086.02 | 4116 |

69753        7590        04/02/2009

APPLE C/O MORRISON AND FOERSTER ,LLP
LOS ANGELES
555 WEST FIFTH STREET SUITE 3500
LOS ANGELES, CA 90013-1024

| EXAMINER |
|---|
| AMADIZ, RODNEY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2629 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/02/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

APLNDC00021566

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/428,501 | WESTERMAN ET AL. |
| | Examiner | Art Unit | |
| | RODNEY AMADIZ | 2629 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>03 July 2006</u>.

2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-8</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-8</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☒ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>03 July 2006</u> is/are:  a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date <u>11/14/06, 12/11/08, 3/27/09</u>.

4)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

APLNDC00021567

Application/Control Number: 11/428,501                                      Page 2
Art Unit: 2629

## DETAILED ACTION

### *Specification*

1.      The title of the invention is not descriptive.  A new title is required that is clearly

indicative of the invention to which the claims are directed.

### *Double Patenting*

2.      The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to exclude" granted by a patent
and to prevent possible harassment by multiple assignees.   A nonstatutory
obviousness-type double patenting rejection is appropriate where the conflicting claims
are not identical, but at least one examined application claim is not patentably distinct
from the reference claim(s) because the examined application claim is either anticipated
by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140
F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29
USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir.
1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422
F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ
644 (CCPA 1969).
        A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)
may be used to overcome an actual or provisional rejection based on a nonstatutory
double patenting ground provided the conflicting application or patent either is shown to
be commonly owned with this application, or claims an invention made as a result of
activities undertaken within the scope of a joint research agreement.
        Effective January 1, 1994, a registered attorney or agent of record may sign a
terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with
37 CFR 3.73(b).

3.      Claims 1-8 are rejected on the ground of nonstatutory obviousness-type double

patenting as being unpatentable over claims 1, 5 and 7 of U.S. Patent No. 6,323,846.

| Claim 1 of Current Application 11/428,501 | Claims 1 and 7 of Patent 6,323,846 |
|---|---|
|  |  |

APLNDC00021568

Application/Control Number: 11/428,501                                    Page 3
Art Unit: 2629

| A sensing device comprising: | A sensing device (Col. 60, line 55) |
|---|---|
| two series connected switches having a common node, an input node, and an output node; | two electrical switching means connected together in series having a common node, an input node, and an output node; (Col. 60, lines 60-62)… |
| a dielectric-covered sensing electrode connected to the common node; | a dielectric-covered sensing electrode connected to the common node… (Col. 60, lines 63-64)… |
| a capacitor coupled to the output node to accumulate charge transferred from the sensing electrode during multiple cycles of the switches. | an integrating capacitor to accumulate charge transferred during multiple consecutive switching of the series connected switching means; (Col. 61, lines 1-3)... <br><br> …their output nodes connected together and sharing the same integrating capacitor (Col. 61, lines 54-56)… |

Although the conflicting claims are not identical, they are not patentably distinct from each other.  The 846' patent does not expressly teach that the capacitor is specifically coupled to the output node of the series connected switches.   The Examiner takes Official Notice that it is old and well-known to couple a capacitor to an output node.  At the time the invention was made, it would have been obvious to a person of ordinary

APLNDC00021569

Application/Control Number: 11/428,501                                                    Page 4
Art Unit: 2629

skill in the art to couple the capacitor to the output node of the series connected

switches in order to  accumulate charge transferred during multiple consecutive

switching's of the series connected switching means.

As to Claims 2-4, these limitations are not patentably distinct from claims 1, 5

and 7 of the '846 patent.

| Claim 5 of Current Application 11/428,501 | Claims 1 and 7 of Patent 6,323,846 |
|---|---|
| A sensing device comprising: | A sensing device (Col. 60, line 55) |
| a power supply connected to a first terminal of a first switch having a second terminal; and | … two electrical switching means connected together in series having a common node, an input node, and an output node; (Col. 60, lines 60-62) ...a power supply providing an approximately constant voltage connected to the input node of the series-connected switching means; (Col. 60, lines 65-67) |
| a capacitor coupled to the second terminal of the second switch to accumulate charge transferred from the power supply by operation of the first and second switches. | an integrating capacitor to accumulate charge transferred during multiple consecutive switching of the series connected switching means; (Col. 61, lines 1-3)... …their output nodes connected together and sharing the same integrating capacitor |

APLNDC00021570

Application/Control Number: 11/428,501                                    Page 5
Art Unit: 2629

| | (Col. 61, lines 54-56)… |
|---|---|

Although the conflicting claims are not identical, they are not patentably distinct from each other.  As noted above, the instant application differs from the '846 in terminology. For instance the '501 application uses the terms "a first terminal" and "a second terminal".  These terms are equivalent to "the input node" and "the output node", respectively, found in the '846 patent.  Furthermore, the 846' patent does not expressly teach that the capacitor is coupled to the second terminal of the second switch.    The Examiner takes Official Notice that it is old and well-known to couple a capacitor to an output node.  At the time the invention was made, it would have been obvious to a person of ordinary skill in the art to couple the capacitor to the second terminal of the second switch in order to accumulate charge transferred during multiple consecutive switching's of the series connected switching means. As can be seen, the scope of protection of claim 1 of the '501 Application encompasses the scope of claims 1 and 7 of the '846 Patent.

As to Claims 6-8, these limitations are not patentably distinct from claims 1, 5 and 7 of the '846 patent.

4.     Claims 1-3 and 5-7 are rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claim 1 of U.S. Patent No. 6,888,536.

| Claim 1 of Current Application 11/428,501 | Claim 1 of the Patent 6,888,536 |
|---|---|

APLNDC00021571

Application/Control Number: 11/428,501                                    Page 6
Art Unit: 2629

| A sensing device comprising: | ...a plurality of sensing devices (Col. 60, line 58)... |
| two series connected switches having a common node, an input node, and an output node; | two electrical switching means connected together in series having a common node, an input node, and an output node (Col. 60, lines 60-62)… |
| a dielectric-covered sensing electrode connected to the common node; | a dielectric-covered sensing electrode connected to the common node (Col. 60, lines 63-64)… |
| a capacitor coupled to the output node to accumulate charge transferred from the sensing electrode during multiple cycles of the switches. | an integrating capacitor to accumulate charge transferred during multiple consecutive switching's of the series connected switching means |

Although the conflicting claims are not identical, they are not patentably distinct from each other.  The 536' patent does not expressly teach that the capacitor is coupled to the output node of the series connected switches.   The Examiner takes Official Notice that it is old and well-known to couple a capacitor to an output node.   At the time the invention was made, it would have been obvious to a person of ordinary skill in the art to couple the capacitor to the output node of the series connected switches in order to

APLNDC00021572

Application/Control Number: 11/428,501                                    Page 7
Art Unit: 2629

accumulate charge transferred during multiple consecutive switching's of the series

connected switching means.

      As to Claims 2 and 3, these limitations are not patentably distinct from claim 1 of

the '536 patent.

| Claim 5 of Current Application 11/428,501 | Claim 1 of the Patent 6,888,536 |
|---|---|
| A sensing device comprising: | a plurality of sensing devices (Col. 60, line 58)… |
| a power supply connected to a first terminal of a first switch having a second terminal; and | … two electrical switching means connected together in series having a common node, an input node, and an output node; (Col. 60, lines 60-62)a power supply providing an approximately constant voltage connected to the input node of the series connected switching means (Col. 60, lines 65-67) |
| a capacitor coupled to the second terminal of the second switch to accumulate charge transferred from the power supply by operation of the first and second switches. | an integrating capacitor to accumulate charge transferred during multiple consecutive switching of the series connected switching means; (Col. 61, lines 1-3)… |

APLNDC00021573

Application/Control Number: 11/428,501                                         Page 8
Art Unit: 2629

| | |
|---|---|
| | |

Although the conflicting claims are not identical, they are not patentably distinct from
each other.  As noted above, the instant application differs from the '536 in terminology.
For instance the '501 application uses the terms "a first terminal" and "a second
terminal".  These terms are equivalent to "input node" and "output node", respectively,
found in the '846 patent.  Furthermore, the 536' patent does not expressly teach that the
capacitor is coupled to the second terminal of the second switch.    The Examiner takes
Official Notice that it is old and well-known to couple a capacitor to an output node.  At
the time the invention was made, it would have been obvious to a person of ordinary
skill in the art to couple the capacitor to the second terminal of the second switch in
order to accumulate charge transferred during multiple consecutive switching's of the
series connected switching means.

As to Claims 6 and 7, these limitations are not patentably distinct from claim 1 of
the '536 patent.


5.     Claims 1 and 5 are provisionally rejected on the ground of nonstatutory
obviousness-type double patenting as being unpatentable over claims 4-6 of copending
Application No. 11428503.

This is a <u>provisional</u> obviousness-type double patenting rejection because the
conflicting claims have not in fact been patented.

APLNDC00021574

Application/Control Number: 11/428,501                                    Page 9
Art Unit: 2629

| Claim 1 of Current Application 11/428,501 | Claims 4 and 6 of Application 11428503 |
|---|---|
| A sensing device comprising: | …a two-dimensional array of sensing devices (Claim 4, line 3) |
| two series connected switches having a common node, an input node, and an output node; | two series connected switches having a common node, an input node, and an output node; (Claim 4, lines 5-6) |
| a dielectric-covered sensing electrode connected to the common node; | a dielectric-covered sensing electrode connected to the common node (Claim 4, line 7); |
| a capacitor coupled to the output node to accumulate charge transferred from the sensing electrode during multiple cycles of the switches. | a capacitor coupled to the output node to accumulate charge transferred from the sensing electrode during multiple cycles of the switches (Claim 6, line 7). |

Although the conflicting claims are not identical, they are not patentably distinct from each other because the scope of protection of claim 1 of the '501 Application encompasses the scope of claims 5 and 6 of the '503 application.

| Claim 5 of Current Application 11/428,501 | Claims 5 and 6 of Application 11428503 |
|---|---|
| A sensing device comprising: | …a two-dimensional array of sensing |

Application/Control Number: 11/428,501                                    Page 10
Art Unit: 2629

| | devices (Claim 5, line 3) |
|---|---|
| a power supply connected to a first terminal of a first switch having a second terminal; and | a first switch having first and second terminals, the first terminal being an input node adapted for connection to a power supply (lines 5-6)... |
| a capacitor coupled to the second terminal of the second switch to accumulate charge transferred from the power supply by operation of the first and second switches. | a second switch having first and second terminals, the first terminal being coupled to the second terminal of the first switch, and the second terminal being an output node (Claim 5, lines 7-9)... a capacitor coupled to the output node to accumulate charge transferred from the sensing electrode during multiple cycles of the switches. (Claim 6, lines 4-5) |

Although the conflicting claims are not identical, they are not patentably distinct from each other because the scope of protection of claim 1 of the '501 Application encompasses the scope of claims 5 and 6 of the '503 application.

### *Inquiries*
    Any inquiry concerning this communication or earlier communications from the examiner should be directed to RODNEY AMADIZ whose telephone number is (571)272-7762.  The examiner can normally be reached on M-F 8:30-5:00.

APLNDC00021576

Application/Control Number: 11/428,501                                    Page 11
Art Unit: 2629

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Sumati Lefkowitz can be reached on (571) 272-3638.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Sumati  Lefkowitz/
Supervisory Patent Examiner, Art Unit 2629

/R. A./
Examiner, Art Unit 2629
3/26/09



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,503 | 07/03/2006 | WAYNE WESTERMAN | 10684-20086.03 | 4119 |

69753        7590        04/02/2009
APPLE C/O MORRISON AND FOERSTER ,LLP
LOS ANGELES
555 WEST FIFTH STREET SUITE 3500
LOS ANGELES, CA 90013-1024

| EXAMINER |
|---|
| AMADIZ, RODNEY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2629 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/02/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

APLNDC00021578

| **Office Action Summary** | **Application No.** | **Applicant(s)** |
|---|---|---|
| | 11/428,503 | WESTERMAN ET AL. |
| | **Examiner** | **Art Unit** | |
| | RODNEY AMADIZ | 2629 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

   A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS,
   WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
   - Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
     after SIX (6) MONTHS from the mailing date of this communication.
   - If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
   - Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
     Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
     earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

   1)☒ Responsive to communication(s) filed on <u>13 July 2006</u>.
   2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.
   3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
       closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

   4)☒ Claim(s) <u>1-14</u> is/are pending in the application.
       4a) Of the above claim(s) _____ is/are withdrawn from consideration.
   5)☐ Claim(s) _____ is/are allowed.
   6)☒ Claim(s) <u>1-14</u> is/are rejected.
   7)☐ Claim(s) _____ is/are objected to.
   8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

   9)☒ The specification is objected to by the Examiner.
   10)☒ The drawing(s) filed on <u>13 July 2006</u> is/are:  a)☒ accepted or b)☐ objected to by the Examiner.
       Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
       Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
   11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

   12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
       a)☐ All   b)☐ Some * c)☐ None of:
       1.☐ Certified copies of the priority documents have been received.
       2.☐ Certified copies of the priority documents have been received in Application No. _____.
       3.☐ Copies of the certified copies of the priority documents have been received in this National Stage
           application from the International Bureau (PCT Rule 17.2(a)).
       * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

| | |
|---|---|
| 1)☒ Notice of References Cited (PTO-892) | 4)☐ Interview Summary (PTO-413) |
| 2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948) |     Paper No(s)/Mail Date. _____ . |
| 3)☒ Information Disclosure Statement(s) (PTO/SB/08) | 5)☐ Notice of Informal Patent Application |
|     Paper No(s)/Mail Date <u>11/14/06, 12/11/08, 3/27/09</u>. | 6)☐ Other: _____ . |

APLNDC00021579

Application/Control Number: 11/428,503                                          Page 2
Art Unit: 2629

## DETAILED ACTION

### *Specification*

1.      The title of the invention is not descriptive.  A new title is required that is clearly

indicative of the invention to which the claims are directed.

### *Double Patenting*

2.      The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to exclude" granted by a patent
and to prevent possible harassment by multiple assignees.   A nonstatutory
obviousness-type double patenting rejection is appropriate where the conflicting claims
are not identical, but at least one examined application claim is not patentably distinct
from the reference claim(s) because the examined application claim is either anticipated
by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140
F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29
USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir.
1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422
F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ
644 (CCPA 1969).
        A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)
may be used to overcome an actual or provisional rejection based on a nonstatutory
double patenting ground provided the conflicting application or patent either is shown to
be commonly owned with this application, or claims an invention made as a result of
activities undertaken within the scope of a joint research agreement.
        Effective January 1, 1994, a registered attorney or agent of record may sign a
terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with
37 CFR 3.73(b).

3.      Claims 1-14 are rejected on the ground of nonstatutory obviousness-type double

patenting as being unpatentable over claims 1, 5, 7, 10-12 and 15 of U.S. Patent No.

6,323,846.

Application/Control Number: 11/428,503                                          Page 3

Art Unit: 2629

| Claim 1 of Current Application 11/428,503 | Claims 1 and 7 of Patent 6,323,846 |
|---|---|
| A multi-touch surface apparatus comprising: | A multi-touch surface apparatus…comprising (Col. 61, lines 49-51): |
| a substrate; | one of a rigid or flexible surface (Col. 61, line 52); |
| a two-dimensional array of sensing electrodes arranged on the substrate; | a two-dimensional array of the sensing devices of claim 1 arranged on the surface (Col. 61, lines 53-54) |
| at least one power supply connectable to a plurality of the sensing electrodes <u>along a first direction of the two-dimensional array</u>, | a power supply providing an approximately constant voltage to the input node of the series connected switching means (Col. 60, lines 65-67) |
| at least one capacitor connectable to a plurality of the sensing electrodes <u>along a second direction of the two-dimensional array</u>, the at least one capacitor arranged to accumulate charge transferred <u>from the at least one power supply</u> via one of the plurality of sensing electrodes. | a two-dimensional array of the sensing devices of claim 1 arranged on the surface with their output nodes connected together and sharing the same integrating capacitor (Col. 61, lines 53-56)… …an integrating capacitor to accumulate charge transferred during multiple consecutive switching of the series connected switching means (Col. 61, lines |

APLNDC00021581

Application/Control Number: 11/428,503                                   Page 4
Art Unit: 2629

| | 1-3) |
|---|---|

Although the conflicting claims are not identical, they are not patentably distinct from each other.  The '503 application states that connections are made "along a first direction of the two dimensional array" and "along a second direction of the two dimensional array".  The '846 reference does not use that terminology.  However, the '846 patent does teach that there is a connection for the power supply and another connection for the capacitor; therefore, it is inherent that these connections must have directions with respect to the two-dimensional array.  The '503 application does not state that the first direction is different than the second direction; therefore, because the '846 application inherently teaches two connections; thus having two directions, the claim limitation is met.

The '846 patent does not expressly state that the capacitor accumulates a charge transferred from at least one power supply; however, the only thing powering the multi-touch apparatus in the '846 is a power supply.  Therefore the capacitor accumulates its charge from the power supply.

As to Claims 2 and 3, these limitations are not patentably distinct from claim 7 of the '846 patent.

| Claim 4 of Current Application 11/428,503 | Claims 1 and 7 of Patent 6,323,846 |
|---|---|
| A multi-touch surface apparatus | A multi-touch surface |

APLNDC00021582

Application/Control Number: 11/428,503                                    Page 5

Art Unit: 2629

| | |
|---|---|
| comprising: | apparatus…comprising (Col. 61, lines 49-51): |
| a substrate; | one of a rigid or flexible surface (Col. 61, line 52); |
| a two-dimensional array of sensing electrodes arranged on the substrate, each sensing device comprising: | a two-dimensional array of the sensing devices of claim 1 arranged on the surface (Col. 61, lines 53-54) |
| two series connected switches having a common node, an input node, and an output node; and | two electrical switching means connected together in series having a common node, an input node, and  an output node (Col. 60, lines 60-62) |
| a dielectric-covered sensing electrode connected to the common node; | a dielectric-covered sensing electrode connected to the common node (Col. 60, lines 63-64) |
| wherein the input nodes of a plurality of sensing devices are coupled together along a first dimension of the two-dimensional array and the output nodes of a plurality of sensing devices are coupled together along a second dimension of the array. | a power supply providing an approximately constant voltage to the input node of the series connected switching means (Col. 60, lines 65-67)… a two-dimensional array of the sensing devices of claim 1 arranged on the surface with their output nodes connected together |

APLNDC00021583

Application/Control Number: 11/428,503                                        Page 6
Art Unit: 2629

| | and sharing the same integrating capacitor (Col. 61, lines 53-56)… |
|---|---|
| | |

Although the conflicting claims are not identical, they are not patentably distinct from each other.  The '846 patent teaches that the input node of the series-connected switching means is connected to the power supply.  The two-dimensional array of the '846 patent fails to teach that all the input nodes of sensing devices are coupled together.  The Examiner takes Official Notice that that it is old and well-known in the art to couple input nodes together.  At the time the invention was made, it would have been obvious to a person of ordinary skill in the art to couple all the input nodes of the sensing devices together so that they may all receive power from the power supply.

The '503 application states that the input nodes are coupled together "along a first dimension" and "along "a second dimension".  The '846 reference does not use that terminology.  However, the '846 patent does teach that there is a connection from the sensing device to the power supply and another connection from the sensing device to a capacitor.  This connection reads on a first dimension and a second dimension.

| Claim 5 of Current Application 11/428,503 | Claims 1 and 7 of Patent 6,323,846 |
|---|---|

APLNDC00021584

Application/Control Number: 11/428,503                                          Page 7
Art Unit: 2629

| A multi-touch surface apparatus comprising: | A multi-touch surface apparatus…comprising (Col. 61, lines 49-51): |
|---|---|
| a substrate; | one of a rigid or flexible surface (Col. 61, line 52); |
| a two-dimensional array of sensing devices arranged on the substrate, each sensing device comprising: | a two-dimensional array of the sensing devices of claim 1 arranged on the surface (Col. 61, lines 53-54) |
| a first switch having first and second terminals, the first terminal being an input node adapted for connection to a power supply; | two electrical switching means connected together in series having a common node, an input node, and  an output node (Col. 60, lines 60-62)… a power supply providing an approximately constant voltage to the input node of the series connected switching means (Col. 60, lines 65-67) |
| a second switch having first and second terminals, the first terminal being coupled to the second terminal of the first switch, and the second terminal being an output node adapted for connection to an output circuit; | two electrical switching means connected together in series having a common node, an input node, and  an output node (Col. 60, lines 60-62)… a voltage-to-voltage translation device connected to the output node of the series- |

APLNDC00021585

Application/Control Number: 11/428,503                                      Page 8
Art Unit: 2629

| | connected switching means (Col. 61, lines 6-7) |
|---|---|
| wherein the input nodes of a plurality of sensing devices are coupled together along a first dimension of the two-dimensional array and the output nodes of a plurality of sensing devices are coupled together along a second dimension of the array. | a power supply providing an approximately constant voltage to the input node of the series connected switching means (Col. 60, lines 65-67)… a two-dimensional array of the sensing devices of claim 1 arranged on the surface with their output nodes connected together and sharing the same integrating capacitor (Col. 61, lines 53-56)… |

Although the conflicting claims are not identical, they are not patentably distinct from each other.  The '846 patent teaches that the input node of the series-connected switching means is connected to the power supply.  The two-dimensional array of the '846 patent fails to teach that all the input nodes of sensing devices are coupled together.  The Examiner takes Official Notice that that it is old and well-known in the art to couple input nodes together.  At the time the invention was made, it would have been obvious to a person of ordinary skill in the art to couple all the input nodes of the sensing devices together so that they all receive power from the power supply.

APLNDC00021586

Application/Control Number: 11/428,503                                            Page 9
Art Unit: 2629

The '503 application states that the input nodes are coupled together "along a first

dimension" and "along "a second dimension".  The '846 reference does not use that

terminology.  However, the '846 patent does teach that there is a connection from the

sensing device to the power supply and another connection from the sensing device to

a capacitor.  This connection reads on a first dimension and a second dimension.


        As to Claims 6-14, these limitations are not patentably distinct from claims 7, 10-

12 and 15 of the '846 patent.



                                        ***Inquiries***
        Any inquiry concerning this communication or earlier communications from the

examiner should be directed to RODNEY AMADIZ whose telephone number is

(571)272-7762.  The examiner can normally be reached on M-F 8:30-5:00.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Sumati Lefkowitz can be reached on (571) 272-3638.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

APLNDC00021587

Application/Control Number: 11/428,503                                      Page 10
Art Unit: 2629

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Sumati  Lefkowitz/
Supervisory Patent Examiner, Art Unit 2629

/R. A./
Examiner, Art Unit 2629
3/26/09



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

69753          7590          07/10/2009

APPLE C/O MORRISON AND FOERSTER ,LLP
LOS ANGELES
555 WEST FIFTH STREET SUITE 3500
LOS ANGELES, CA 90013-1024

| EXAMINER |
| --- |
| SHENG, TOM V |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 2629 | |

DATE MAILED: 07/10/2009

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 11/428,521 | 07/03/2006 | WAYNE WESTERMAN | 10684-20086.07 | 4142 |

TITLE OF INVENTION: IDENTIFYING CONTACTS ON A TOUCH SURFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 10/13/2009 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.  THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.  SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.  IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.

APLNDC00021589

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to: Mail**    Mail Stop ISSUE FEE
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax   (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

| CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address) | Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission. |
|---|---|

```
69753        7590        07/10/2009

APPLE C/O MORRISON AND FOERSTER ,LLP
LOS ANGELES
555 WEST FIFTH STREET SUITE 3500
LOS ANGELES, CA 90013-1024
```

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,521 | 07/03/2006 | WAYNE WESTERMAN | 10684-20086.07 | 4142 |

TITLE OF INVENTION: IDENTIFYING CONTACTS ON A TOUCH SURFACE

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 10/13/2009 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| SHENG, TOM V | 2629 | 345-173000 |

**1.** Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2.** For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a.** The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b.** Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

APLNDC00021590



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/428,521 | 07/03/2006 | WAYNE WESTERMAN | 10684-20086.07 | 4142 |

69753        7590        07/10/2009

APPLE C/O MORRISON AND FOERSTER ,LLP
LOS ANGELES
555 WEST FIFTH STREET SUITE 3500
LOS ANGELES, CA 90013-1024

| EXAMINER |
|---|
| SHENG, TOM V |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2629 | |

DATE MAILED: 07/10/2009

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)

(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702.  Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101   or (571)-272-4200.

Page 3 of 3

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.

APLNDC00021591

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 11/428,521 | WESTERMAN ET AL. | |
| | Examiner | Art Unit | |
| | TOM V. SHENG | 2629 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>RCE of 5/11/2009</u>.

2. ☒ The allowed claim(s) is/are <u>3-9</u>.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftperson's Patent Drawing Review (PTO-948)

3. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>5/11/09,6/29/09</u>

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

/Richard Hjerpe/
Supervisory Patent Examiner, Art Unit 2629

APLNDC00021592

# COMBINING GESTURES AND DIRECT MANIPULATION

*Dean Rubine*

Information Technology Center
School of Computer Science
Carnegie Mellon University
Pittsburgh, PA
412-268-3650
Rubine@andrew.cmu.edu

## INTRODUCTION

A gesture, as the term is used here, is a handmade mark used to give a command to a computer. The attributes of the gesture (its location, size, extent, orientation, and dynamic properties) can be mapped to parameters of the command. An operation, operands, and parameters can all be communicated simultaneously with a single, intuitive, easily drawn gesture. This makes gesturing an attractive interaction technique.

Typically, a gestural interaction is completed (e.g. the stylus is lifted) before the the gesture is classified, its attributes computed, and the intended command performed. There is no opportunity for the interactive manipulation of parameters in the presence of application feedback that is typical of drag operations in direct manipulation interfaces. This lack of continuous feedback during the interaction makes the use of gestures awkward for tasks that require such feedback.

The video presents a *two-phase* interaction technique that combines gesture and direct manipulation. A two-phase interaction begins with a gesture, which is recognized during the interaction (e.g. while the stylus is still touching the writing surface). After recognition, the application is informed and the interaction continues, allowing the user to manipulate parameters interactively. The result is a powerful interaction which combines the advantages of gesturing and direct manipulation.

## EXAMPLE 1: GDP

GDP is a mouse-based drawing program that utilizes the two-phase interaction to create, copy, move, rotate, scale, delete, and group lines, rectangles, ellipses, and text. For example, the create-line gesture consists of positioning the mouse, pressing the button and making the gesture (a straight segment). The user stops moving the mouse (while continuing to press the mouse button) and the gesture is recognized. A line is created, one endpoint of which is placed at the start of the gesture, the other endpoint at the current mouse location. The user drags around the latter endpoint (rubberbanding) until the mouse button is released. The other creation gestures work similarly, utilizing the starting point of the gesture as one parameter and interactive dragging to determine another.

The gestures that operate on existing objects (move, copy, rotate-scale, group, and delete) work similarly. The copy gesture begins on an object. After it is recognized (and the mouse button is still being pressed) a copy of the object appears and may be dragged. The start of the rotate-scale gesture determines the object to be rotated as well as the center of rotation; after it is recognized the user drags a point on the object interactively rotating and scaling the object. The group gesture collects together all objects encircled by the gesture into a single composite object; after recognition, additional objects may be added to the group by touching them with the mouse cursor until the mouse button is released.

All the gestures in GDP are single strokes. While this restricts the possible gestures, it has the important property that the user holds the mouse button down during the entire two-phase interaction, releasing the button only at the end. Thus the physical tension and relaxation of the interaction correlates nicely with the mental tension and relaxation involved in performing a primitive task in the application.

Though not shown in the video, it is possible to tie other gestural attributes to application parameters in GDP. For example, one version uses the length of the create-line gesture to determine the thickness of the resulting line and the orientation of the create-rectangle gesture to determine the initial orientation of the rectangle.

## EXAMPLE 2: EAGER RECOGNITION

Example 1 illustrated the two-phase interaction in which the user makes the gesture, stops moving the mouse while holding the mouse button, the gesture is recognized, and direct manipulation begins. The mouse must remain still for an interval of time (one-quarter second by default) before recognition occurs. In some contexts, forcing the user to stop is awkward. For example, using a gesture to turn a

APLNDC00021593

Case 5:11-cv-01846-LHK   Document 562-14   Filed 12/29/11   Page 40 of 102

knob would involve making the turn-knob gesture (which would presumably be the beginning of a natural turn motion of the knob), stopping, and then resuming the knob turning, this time with application feedback.

It seems desirable to have the gesture recognized as soon as enough of it has been seen to do so unambiguously. This is the goal of *eager recognition*. Thus the user would begin the turn the knob, the knob-turning gesture would be recognized, and then the knob would start to turn. No stopping or other explicit indication of the end of the gesture is necessary. What begins as a gesture smoothly becomes a direct-manipulation interaction.

The second example shows GDP with eager recognition enabled. Since the create-rectangle gesture, an 'L', is the only expected gesture that begins with a downward stroke, it is recognized almost immediately, a rectangle created, and direct manipulation of its corner begins. The copy gesture, a 'C', works similarly: as soon as the curvature of the 'C' is apparent, the gesture is recognized, the object is copied, and the copy is dragged. The line gesture, a straight segment, is not eagerly recognized. This is because the system recognizes that the gesture in progress may also be a move gesture, an arrow drawn with a single stroke. Thus the line gesture is only recognized when the mouse motion stops, as in the non-eager GDP. The rotate-scale and delete gestures are eagerly recognized.

## EXAMPLE 3: GSCORE

GSCORE is an editor for musical scores which uses gestures and the two-phase interaction. For example, after the time-signature gesture is recognized, the $x$ and $y$ coordinates of the mouse interactively control the numerator and denominator of the time signature. GSCORE has separate gestures for whole notes, half notes, quarter notes, eighth notes and sixteenth notes (actually, there are two gestures for each except whole notes, one for upward stems, and one for downward stems). While it would be possible to have a single note gesture and then interactively control the duration and stem direction of the note, having separate gestures appears to result in faster interactions. It is possible to edit the set of gestures and their meanings (at runtime) to try out various interfaces, so the two approaches may be compared.

The video shows how a new gesture is added to GSCORE. Gestures are associated with classes of views on the screen (e.g. a note responds to a different set of gestures than a staff), so the user first clicks to examine the set of gestures associated with a particular view. Adding a new gesture involves pressing the "new class" button and then entering fifteen examples of the new gesture. There is a click-and-drag interface to an Objective-C interpreter through which the semantics of the gesture are specified. The new gesture may be tried immediately. Although not shown, it is possible to evaluate the new classifier by testing all the training examples. This evaluation indicates when a new gesture is

mistaken for an existing gesture (or vice versa), indicating that the new gesture needs to be redesigned to look different.

## EXAMPLE 4: MULTIPLE FINGER GESTURES

The two-phase interaction may be used with multi-finger input. The video shows MDP, a version of the drawing program that uses a Sensor Frame as a multi-finger input device. The mouse gestures of GDP are mapped to single-finger gestures in MDP. After the gesture is recognized, additional fingers may be brought into the sensing plane of the Sensor Frame to control additional parameters. For example, after recognizing create-line, the first finger rubberbands one endpoint of the new line (as in GDP), and additional fingers control the line's color and thickness.

Multiple finger gestures are also recognized. The training of the undo gesture is shown, and later the use of undo is demonstrated. The two-phase interaction allows the amount of "undoing" to be determined interactively after the gesture is recognized. Also interesting is the two finger rotate-scale-translate gesture. After recognition, each of the two fingers attaches to a point on the object. By spreading the fingers apart or moving the fingers closer together the object can be scaled, by changing the orientation of the fingers the object can be rotated, and by moving the two fingers in parallel the object can be translated. It is seen that multiple finger interaction allows for the intuitive manipulation of many parameters simultaneously.

## CONCLUSION

The purpose of the video is to demonstrate the two-phase interaction technique, in which gesture and direct-manipulation are combined. While previously described in print [1, 2, 3], the video shows the dynamic aspects of the interaction in ways that print cannot. In particular, it shows how the two-phase interaction is applicable in two applications, a drawing program and a score editor, and for both single-pointer and multiple-pointer input devices. Eager recognition, a technique for smoothing the transition between the gesture and the direct manipulation phases of the interaction, is also shown. While the video demonstrates the potential of combining gesture and direct manipulation, user testing is needed to determine if this potential can be realized.

## REFERENCES

[1] RUBINE, D. Integrating gesture recognition and direct manipulation. In *Proceedings of the Summer '91 USENIX Technical Conference* (June 1991), USENIX Association, pp. 281–298.

[2] RUBINE, D. Specifying gestures by example. *Computer Graphics 25*, 4 (July 1991), 329–337.

[3] RUBINE, D. *The Automatic Recognition of Gestures.* PhD thesis, School of Computer Science, Carnegie Mellon University, CMU-CS-91-202, 1991.

660

APLNDC00021594

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5840370 |
| **Application Number:** | 11677958 |
| **International Application Number:** | |
| **Confirmation Number:** | 1844 |
| **Title of Invention:** | Ellipse Fitting for Multi-Touch Surfaces |
| **First Named Inventor/Applicant Name:** | Wayne  Westerman |
| **Customer Number:** | 69753 |
| **Filer:** | Glen Masashi Kubota/Lisa Bronk |
| **Filer Authorized By:** | Glen Masashi Kubota |
| **Attorney Docket Number:** | 10684-25086.04 |
| **Receipt Date:** | 06-AUG-2009 |
| **Filing Date:** | 22-FEB-2007 |
| **Time Stamp:** | 13:30:02 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 2508604SIDS.pdf | 236168<br>b6f8bdb6113fd05735827e2d2f64c84fab01919f | yes | 5 |

APLNDC00021595

**Multipart Description/PDF files in .zip description**

| | Document Description | | Start | | End |
|---|---|---|---|---|---|
| | Transmittal Letter | | 1 | | 3 |
| | Information Disclosure Statement (IDS) Filed (SB/08) | | 4 | | 5 |

| Warnings: |
|---|

| Information: |
|---|

| 2 | Foreign Reference | 8_JP02056017A_w_Abstract.pdf | 286099 | no | 5 |
|---|---|---|---|---|---|
| | | | 2756bb829a99609baf55f4f23f26c006810f125 | | |

| Warnings: |
|---|

| Information: |
|---|

| 3 | Foreign Reference | 9_JP02304613A_w_Abstract.pdf | 930709 | no | 13 |
|---|---|---|---|---|---|
| | | | ed7e3e7b9734b44799e728df6ed2bd771f6cf103 | | |

| Warnings: |
|---|

| Information: |
|---|

| 4 | Foreign Reference | 10_JP04233619A_w_Abstract.pdf | 947752 | no | 10 |
|---|---|---|---|---|---|
| | | | 0c7da540a30d0873b62eba5ae51709b7750eec61 | | |

| Warnings: |
|---|

| Information: |
|---|

| 5 | Foreign Reference | 11_JP07129312A_w_Abstract.pdf | 1105494 | no | 14 |
|---|---|---|---|---|---|
| | | | 6a1d1a290f9d4e1775aa5162f27601534d5e885 | | |

| Warnings: |
|---|

| Information: |
|---|

| 6 | NPL Documents | 12_FOA_3_19_09.pdf | 217292 | no | 7 |
|---|---|---|---|---|---|
| | | | d77df7006382b05635a049a2662ab9a4b7248982 | | |

| Warnings: |
|---|

| Information: |
|---|

| 7 | NPL Documents | 13_OA_3_18_09.pdf | 396757 | no | 12 |
|---|---|---|---|---|---|
| | | | 23d2e9d8d6e1618ef0f5c2a16c8659e6357f538a | | |

| Warnings: |
|---|

| Information: |
|---|

| 8 | NPL Documents | 14_OA_4_2_09.pdf | 396457 | no | 12 |
|---|---|---|---|---|---|
| | | | 0657c00c0b811737b13f97aa96b73095beed0074 | | |

| Warnings: |
|---|

| Information: |
|---|

APLNDC00021596

| 9 | NPL Documents | 15_OA_4_2_09.pdf | 356780<br><br>ede4e65e458d3bf4f0a3938bbe35a18f8305e91f | no | 11 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 10 | NPL Documents | 16_NOA_7_10_09.pdf | 251812<br><br>20027ea93775bdce2e140a7d97cb67a5a7a607d5 | no | 4 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 11 | NPL Documents | 17_RUBINE_1992.pdf | 2754688<br><br>13140a6fccc91760d5f7c06b5da6f1134aeb5050 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 7880008 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

APLNDC00021597

VIA EFS WEB
Patent
Docket No. 106842508604
Client Reference No. P3950USC13

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Wayne Carl WESTERMAN et al.

Serial No.:  11/677,958

Filing Date:  February 22, 2007

For:   ELLIPSE FITTING FOR MULTI-TOUCH
      SURFACES

Examiner: Bipin H. Shalwala

Group Art Unit:  2629

Confirmation No.: 1844

## SUPPLEMENTAL INFORMATION DISCLOSURE
## STATEMENT UNDER 37 C.F.R. § 1.97 & § 1.98

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Madam:

      Pursuant to 37 C.F.R. § 1.97 and § 1.98, Applicants submit for consideration in the above-identified application the documents listed on the attached Form PTO/SB/08a/b.  Copies of U.S. Patent Application Nos. 12/342,027, 12/422,197, 12/422,205, 12/422,212, 12/422,222, 12/422,225, 12/434,439, 12/479,573, 12/479,617, and 12/479,678 (documents numbered 18-27) on the attached Form PTO/SB/08a/b are not submitted herewith.  This protocol conforms with the waiver of the requirement under 37 C.F.R. § 1.98 to provide copies of pending U.S. Patent Applications. Copies of foreign documents and non-patent literature are submitted herewith.  The Examiner is requested to make these documents of record.

      Applicants would like to draw the Examiner's attention to the fact that the English language counterpart of document no. 10 (JP-04-233619) on the attached Form PTO/SB/08a/b is

la-1036501

APLNDC00021598

Application No. 11/677,958

VIA EFS WEB
Patent
Docket No. 106842508604
Client Reference No. P3950USC13

document number AI2 (US 5,194,862) submitted in an Information Disclosure Statement on December 12, 2008, in the instant application. Also, document no. 2 (US Patent No. 5,270,711) is the English language counterpart of document no. 9 (JP-02-304613).

This Supplemental Information Disclosure Statement is submitted:

☐     With the application; accordingly, no fee or separate requirements are required.

☐     Before the mailing of a first Office Action after the filing of a Request for Continued Examination under § 1.114.  However, if applicable, a certification under 37 C.F.R. § 1.97 (e)(1) has been provided.

☒     Within three months of the application filing date or before mailing of a first Office Action on the merits; accordingly, no fee or separate requirements are required.  However, if applicable, a certification under 37 C.F.R. § 1.97 (e)(1) has been provided.

☐     After receipt of a first Office Action on the merits but before mailing of a final Office Action or Notice of Allowance.

        ☐     A fee is required.  A check in the amount of __ is enclosed.

        ☐     A fee is required.  Accordingly, a Fee Transmittal form (PTO/SB/17) is attached to this submission in duplicate.

        ☐     A Certification under 37 C.F.R. § 1.97(e) is provided above; accordingly; no fee is believed to be due.

☐     After mailing of a final Office Action or Notice of Allowance, but before payment of the issue fee.

        ☐     A Certification under 37 C.F.R. § 1.97(e) is provided above and a check in the amount of __ is enclosed.

        ☐     A Certification under 37 C.F.R. § 1.97(e) is provided above and a Fee Transmittal form (PTO/SB/17) is attached to this submission in duplicate.

Applicants would appreciate the Examiner initialing and returning the Form PTO/SB/08a/b, indicating that the information has been considered and made of record herein.

APLNDC00021599

Application No. 11/677,958

VIA EFS WEB
Patent
Docket No. 106842508604
Client Reference No. P3950USC13

The information contained in this Supplemental Information Disclosure Statement under 37 C.F.R. § 1.97 and § 1.98 is not to be construed as a representation that: (i) a complete search has been made; (ii) additional information material to the examination of this application does not exist; (iii) the information, protocols, results and the like reported by third parties are accurate or enabling; or (iv) the above information constitutes prior art to the subject invention.

In the unlikely event that the transmittal form is separated from this document and the Patent and Trademark Office determines that an extension and/or other relief (such as payment of a fee under 37 C.F.R. § 1.17 (p)) is required, Applicants petition for any required relief including extensions of time and authorize the Commissioner to charge the cost of such petition and/or other fees due in connection with the filing of this document to **Deposit Account No. 03-1952** referencing 106842508604.

Dated: 8/6/09

Respectfully submitted,

By: _____
Glenn M. Kubota
Registration No.: 44,197
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California 90013-1024
(213) 892-5752

la-1036501

3

APLNDC00021600

| *Index of Claims* | Application/Control No.<br><br>11677958 | Applicant(s)/Patent Under Reexamination<br><br>WESTERMAN ET AL. |
|---|---|---|
| | Examiner<br><br>Koosha Sharifi | Art Unit<br><br>2629 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**      ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/19/2009 | | | | | | | |
| | 1 | ÷ | | | | | | | |
| | 2 | ÷ | | | | | | | |
| | 3 | ÷ | | | | | | | |
| | 4 | ÷ | | | | | | | |
| | 5 | ÷ | | | | | | | |
| | 6 | ÷ | | | | | | | |
| | 7 | ÷ | | | | | | | |
| | 8 | ÷ | | | | | | | |
| | 9 | ÷ | | | | | | | |
| | 10 | ÷ | | | | | | | |
| | 11 | ÷ | | | | | | | |
| | 12 | ÷ | | | | | | | |
| | 13 | ÷ | | | | | | | |
| | 14 | ÷ | | | | | | | |
| | 15 | ÷ | | | | | | | |
| | 16 | ÷ | | | | | | | |
| | 17 | ÷ | | | | | | | |
| | 18 | ÷ | | | | | | | |
| | 19 | ÷ | | | | | | | |
| | 20 | ÷ | | | | | | | |
| | 21 | ÷ | | | | | | | |
| | 22 | ÷ | | | | | | | |
| | 23 | ÷ | | | | | | | |
| | 24 | ÷ | | | | | | | |
| | 25 | ÷ | | | | | | | |
| | 26 | ÷ | | | | | | | |
| | 27 | ÷ | | | | | | | |
| | 28 | ÷ | | | | | | | |
| | 29 | ÷ | | | | | | | |
| | 30 | ÷ | | | | | | | |
| | 31 | ÷ | | | | | | | |
| | 32 | ÷ | | | | | | | |
| | 33 | ÷ | | | | | | | |
| | 34 | ÷ | | | | | | | |
| | 35 | ÷ | | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 20091019



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/677,958 | 02/22/2007 | Wayne Westerman | 10684-25086.04 | 1844 |

69753          7590          10/27/2009
APPLE C/O MORRISON AND FOERSTER ,LLP
LOS ANGELES
555 WEST FIFTH STREET SUITE 3500
LOS ANGELES, CA 90013-1024

| EXAMINER |
|---|
| SHARIFI-TAFRESHI, KOOSHA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2629 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/27/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

APLNDC00021602

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 11/677,958 | WESTERMAN ET AL. |
| | Examiner | Art Unit | |
| | Koosha Sharifi | 2629 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>*1*</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>22 February 2007</u>.

2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>*1-35*</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☐ Claim(s) _____ is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☒ Claim(s) <u>*1-35*</u> are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

APLNDC00021603

Application/Control Number: 11/677,958                                              Page 2

Art Unit: 2629

# DETAILED ACTION

### *Election/Restrictions*

1.      This application contains claims directed to the following patentably distinct

species of manual input apparatuses:

## Species Group: Proximity sensor with amplifier:

- Species 1: Fig. 2;

- Species 2: Fig. 3A;

- Species 3:  Fig. 3B;

- Species 4: Fig. 4A;

## Species Group: Architecture for 2D array of proximity sensors:

- Species A: Fig.6;

- Species B: Fig.8;

## Species Group: Side view of proximity sensor:

- Species X: Fig.10;

- Species Y: Fig.11;

- Species Z; Fig.12;

APLNDC00021604

Application/Control Number: 11/677,958                                          Page 3
Art Unit: 2629

2.      The species are independent or distinct because claims to the different species

recite the mutually exclusive characteristics of such species.  In addition, these species

are not obvious variants of each other based on the current record.

        Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, **for**

**e.g. elect one species from each of the Species Groups above**, for prosecution on

the merits to which the claims shall be restricted if no generic claim is finally held to be

allowable. Currently, no claim is generic.

        There is an examination and search burden for these patentably distinct species

due to their mutually exclusive characteristics.  The species require a different field of

search (e.g., searching different classes/subclasses or electronic resources, or

employing different search queries); and/or the prior art applicable to one species would

not likely be applicable to another species; and/or the species are likely to raise different

non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

        **Applicant is advised that the reply to this requirement to be complete must**

**include (i) an election of a species to be examined** even though the requirement

may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing**

**the elected species**, including any claims subsequently added.  An argument that a

claim is allowable or that all claims are generic is considered nonresponsive unless

accompanied by an election.

        The election of the species may be made with or without traverse. To preserve a

right to petition, the election must be made with traverse. If the reply does not distinctly

and specifically point out supposed errors in the election of species requirement, the

APLNDC00021605

Application/Control Number: 11/677,958                                    Page 4
Art Unit: 2629

election shall be treated as an election without traverse. Traversal must be presented at

the time of election in order to be considered timely. Failure to timely traverse the

requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are

added after the election, applicant must indicate which of these claims are readable on

the elected species.

Should applicant traverse on the ground that the species are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the species to be obvious variants or clearly admit on the record that this is the

case. In either instance, if the examiner finds one of the species unpatentable over the

prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a)

of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration

of claims to additional species which depend from or otherwise require all the limitations

of an allowable generic claim as provided by 37 CFR 1.141.


3.      Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).

APLNDC00021606

Application/Control Number: 11/677,958                                    Page 5
Art Unit: 2629

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Koosha Sharifi whose telephone number is (571) 270-

5897.  The examiner can normally be reached on Mon - Fri / 8am - 5pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Amare Mengistu can be reached on (571) 272-7674.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

                                              Koosha  Sharifi
                                              Examiner
                                              Art Unit 2629

/K. S./
Examiner, Art Unit 2629
                              /Amare  Mengistu/
                    Supervisory Patent Examiner, Art Unit 2629

Application No.: 11/677,958                    8                    Docket No.: 106842508604

## REMARKS

Applicants respectfully traverse the restriction requirement as improper under MPEP § 808 because the restriction requirement is based on mere statements of conclusion without any statement of the reasons for the conclusions.  MPEP § 808.01 explains:

> The particular reasons relied on by the examiner for holding that the inventions as claimed are either independent or distinct should be concisely stated. <u>A mere statement of conclusion is inadequate</u>. (MPEP § 808.01 (emphasis added).)

Likewise, MPEP § 808 states:

> Every requirement to restrict has two aspects: (A) the reasons (<u>as distinguished from the mere statement of conclusion</u>) why each invention *as claimed* is either independent or distinct from the other(s); and (B) the reasons why there would be a serious burden on the examiner if restriction is not required, i.e., the reasons for insisting upon restriction therebetween as set forth in the following sections. (MPEP § 808 (emphasis in original and added).)

However, in contrast to the requirement to provide more than a statement of conclusion, the Office Action merely alleges "claims to the different species recite the mutually exclusive characteristics of such species."  (Office Action, page 3.)  The Office Action fails to provide even a hint of the reasons for its conclusion.  For example, what are the alleged mutually exclusive characteristics of the alleged species?  How are the claims being viewed by the Office Action as directed to the alleged species?  What elements of the claims are being viewed as reciting the alleged mutually exclusive characteristics?  In other words, how are the claims being viewed by the Office Action as reciting mutually exclusive features such that "one claim recites limitations disclosed for a first species but not a second, while a second claim recites limitations disclosed only for the second species and not the first."?  (MPEP § 806.04(f) (titled "Restriction Between Mutually Exclusive Species").)   Accordingly, the restriction requirement is improper under MPEP § 808.

Furthermore, the Office Action fails to establish why there would be a serious burden on the Patent Office if restriction is not required.  The Office Action alleges "an examination and

la-1052131

APLNDC00021608

search burden for these patentably distinct <u>species</u> due to their mutually exclusive characteristics",
and that the "<u>species</u> require a different field of search".  (Office Action, page 3 (emphasis added).)
However, MPEP § 808.02 explains that "a different field of search" relates to inventions (i.e.,
claims), not species.  (*See,* MPEP § 808.02 ("Where it is necessary to search for one of the
<u>inventions</u> in a manner that is not likely to result in finding art pertinent to the other <u>invention(s)</u> …
a different field of search is shown")(emphasis added).)  The Office Action's statement that the
species would require a different field of search fails even to allege, much less to provide an
"appropriate explanation" required by MPEP § 808.02, that the claims would require a different
field of search.  (*See,* MPEP § 808.02 (Further stating "The indicated different field of search must
in fact be pertinent to the type of subject matter <u>covered by the claims</u>.")(emphasis added).)  For this
additional reason, the restriction requirement is traversed.

In light of the foregoing, Applicants respectfully request the Examiner withdraw the
restriction requirement.  If the Examiner maintains the restriction requirement, Applicants
respectfully request the Examiner provide the reasons for the restriction requirement.

## **PROVISIONAL ELECTION**

Applicants provisionally elect Species A and claims 1-35.

In the unlikely event that the transmittal form is separated from this document and the
Patent Office determines that an extension and/or other relief is required, Applicants petition for any
required relief including extensions of time and authorize the Commissioner to charge the cost of
such petitions and/or other fees due in connection with the filing of this document to **<u>Deposit</u>**

la-1052131

APLNDC00021609

Application No.: 11/677,958                    10                    Docket No.: 106842508604


**Account No. 03-1952** referencing Docket No. 106842508604.  However, the Commissioner is not authorized to charge the cost of the issue fee to the Deposit Account.


Dated:   November 27, 2009                    Respectfully submitted,

                                              By /Gregory S. Weaver, #53,751/
                                              Gregory Weaver
                                                 Registration No.: 53,751
                                              MORRISON & FOERSTER LLP
                                              555 West Fifth Street
                                              Los Angeles, California  90013-1024
                                              (213) 892-5399


la-1052131

APLNDC00021610

Application No.: 11/677,958                    2                    Docket No.: 106842508604

## THE CLAIMS

1.  (original)  A method of processing input from a touch-sensitive surface, the method comprising:

receiving at least one proximity image representing a scan of a plurality of electrodes of the touch-sensitive surface;

segmenting each proximity image into one or more pixel groups that indicate significant proximity, each pixel group representing proximity of a distinguishable hand part or other touch object on or near the touch-sensitive surface; and

fitting an ellipse to at least one of the pixel groups.

2.  (original)  The method of claim 1 further comprising transmitting one or more ellipse parameters as a control signal to an electronic or electromechanical device.

3.  (original)  The method of claim 2 wherein the one or more ellipse parameters is selected from the group consisting of position, shape, size, orientation, eccentricity, major radius, minor radius, and any combination thereof.

4.  (original)  The method of claim 3 wherein the one or more ellipse parameters are used to distinguish a pixel group associated with a fingertip from a pixel group associated with a thumb.

5.  (original)  The method of claim 1 wherein fitting an ellipse to a group of pixels comprises computing one or more eigenvalues and one or more eigenvectors of a covariance matrix associated with the pixel group.

6.  (original)  The method of claim 1 further comprising: tracking a path of at least one of the one or more pixel groups through a time-sequenced series of proximity images;

fitting an ellipse to the at least one of the one or more pixel groups in each of the time-sequenced series of proximity images; and

la-1052131

APLNDC00021611

Application No.: 11/677,958                    3                    Docket No.: 106842508604

tracking a change in one or more ellipse parameters through the time-sequenced series of proximity images.

7.  (original)  The method of claim 6 further comprising transmitting the change in the one or more ellipse parameters as a control signal to an electronic or electromechanical device.

8.  (original)  The method of claim 7 wherein the change in the one or more ellipse parameters is selected from the group consisting of position, shape, size, orientation, eccentricity, major radius, minor radius, and any combination thereof.

9.  (original)  The method of claim 6 wherein fitting an ellipse to the one pixel group comprises computing one or more eigenvalues and one or more eigenvectors of a covariance matrix associated with the pixel group.

10.  (original)  A touch-sensing device comprising:
a substrate;
a plurality of touch-sensing electrodes arranged on the substrate;
electronic scanning hardware adapted to read the plurality of touch-sensing electrodes;
a calibration module operatively coupled to the electronic scanning hardware and adapted to construct a proximity image having a plurality of pixels corresponding to the touch-sensing electrodes; and
a contact tracking and identification module adapted to:
segment the proximity image into one or more pixel groups, each pixel group representing proximity of a distinguishable hand part or other touch object on or near the touch-sensitive surface; and
fit an ellipse to at least one of the one or more pixel groups.

11.  (original)  The touch-sensing device of claim 10 further comprising a host communication interface adapted to transmit one or more ellipse parameters as a control signal to an

APLNDC00021612

Application No.: 11/677,958                4                Docket No.: 106842508604

electronic or electromechanical device.

12.  (original)  The touch-sensing device of claim 11 wherein the touch-sensing device is integral with the electronic or electromechanical device.

13.  (original)  The touch-sensing device of claim 11 wherein the one or more ellipse parameters comprise one or more parameters selected from the group consisting of position, shape, size, orientation, eccentricity, major radius, minor radius, and any combination thereof.

14.  (original)  The method of claim 13 wherein the one or more ellipse parameters are used to distinguish a pixel group associated with a fingertip from a pixel group associated with a thumb.

15.  (original)  The touch-sensing device of claim 10 wherein the contact tracking and identification module is adapted to compute one or more eigenvalues and one or more eigenvectors to fit the ellipse.

16.  (original)  The touch-sensing device of claim 10 wherein the contact tracking and identification module is further adapted to:

track a path of one or more pixel groups through a plurality of time-sequenced proximity images;

fit an ellipse to at least one of the one or more pixel groups in a first proximity image of the plurality of time-sequenced proximity images; and

track a change in one or more ellipse parameters associated with the fitted ellipse through two or more of the time-sequenced proximity images.

17.  (original)  The touch-sensing device of claim 16 further comprising a host communication interface adapted to transmit the change in at least one of the one or more ellipse parameters as a control signal to an electronic or electromechanical device.

la-1052131

APLNDC00021613

Application No.: 11/677,958                    5                    Docket No.: 106842508604

18.  (original)  The touch-sensing device of claim 17 wherein the touch-sensing device is integral with the electronic or electromechanical device.

19.(original)  The touch-sensing device of claim 17 wherein the change in one or more ellipse parameters used as a control input to an electronic or electromechanical device comprises one or more parameters selected from the group consisting of position, shape, size, orientation, eccentricity, major radius, minor radius, and any combination thereof.

20.  (original)  The touch-sensing device of claim 16 wherein the contact tracking and identification module is adapted to compute one or more eigenvalues and one or more eigenvectors to fit the ellipse.

21.  (original)  The touch-sensing device of any one of claims 10-12 and 16-18 wherein the touch-sensing device is fabricated on or integrated with a display device.

22.  (original)  The touch-sensing device of claim 21, wherein the display device comprises a liquid crystal display (LCD) or a light-emitting polymer display (LPD).

23.  (original)  A computer-readable medium having embodied thereon instructions executable by a machine to perform a method according to any of claims 1-9.

24.  (original)   A touch-sensing device comprising:
means for producing a proximity image representing a scan of a plurality of electrodes of a touch-sensitive surface, the proximity image having a plurality of pixels corresponding to the touch-sensing electrodes; and
means for segmenting the proximity image into one or more pixel groups, each pixel group representing a touch object on or near the touch-sensitive surface; and means for fitting an ellipse to at least one of the pixel groups.

la-1052131

APLNDC00021614

Application No.: 11/677,958                    6                    Docket No.: 106842508604

25.  (original)  The touch-sensing device of claim 24 wherein the touch object comprises at least a portion of a hand.

26.  (original)  The touch-sensing device of claim 24 wherein the touch object comprises at least a portion of one or more fingers.

27.  (original)  The touch-sensing device of claim 24 wherein the touch object comprises at least a portion of a body part.

28.  (original)  The touch-sensing device of claim 27 wherein the body part comprises one or more of a hand, a finger, an ear, or a cheek.

29.  (original)  The touch-sensing device of claim 24 further comprising means for transmitting one or more ellipse parameters as a control signal to an electronic or electromechanical device.

30.  (original)  The touch-sensing device of claim 27 wherein the touch-sensing device is integral with the electronic or electromechanical device.

31.  (original)  The touch-sensing device of claim 24 further comprising:
means for tracking a path of one or more pixel groups through a plurality of time-sequenced proximity images;
means for fitting an ellipse to at least one of the pixel groups in a plurality successive proximity images; and
means for tracking a change in one or more ellipse parameters through a plurality of time-sequenced proximity images.

32.  (original)  The touch-sensing device of claim 29 further comprising means for transmitting the change in the one or more ellipse parameters as a control signal to an electronic or

la-1052131

APLNDC00021615

Application No.: 11/677,958                    7                    Docket No.: 106842508604

electromechanical device.

    33.  (original)  The touch-sensing device of claim 32 wherein the touch-sensing device is
integral with the electronic or electromechanical device.

    34.  (original)  The touch-sensing device of any one of claims 24 and 29-33 wherein the
touch-sensing device is fabricated on or integrated with a display device.

    35.  (original)  The touch-sensing device of claim 34, wherein the display device comprises a
liquid crystal display (LCD) or a light-emitting polymer display (LPD).

la-1052131

APLNDC00021616

PTO/SB/21 (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office;  U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TRANSMITTAL FORM | Application Number | 11/677,958 |
|---|---|---|
| | Filing Date | February 22, 2007 |
| | First Named Inventor | Wayne WESTERMAN |
| | Art Unit | 2629 |
| | Examiner Name | Koosha Sharifi-Tafreshi |
| *(to be used for all correspondence after initial filing)* | | |
| Total Number of Pages in This Submission         11 | Attorney Docket Number | 106842508604 **Client Ref. No.: P3950USC13** |

## ENCLOSURES  *(Check all that apply)*

| | | |
|---|---|---|
| ☐ Fee Transmittal Form | ☐ Drawing(s) | ☐ After Allowance Communication to TC |
|    ☐ Fee Attached | ☐ Licensing-related Papers | ☐ Appeal Communication to Board of Appeals and Interferences |
| ☐ Amendment/Reply | ☐ Petition | ☐ Appeal Communication to TC **(Appeal Notice, Brief, Reply Brief)** |
|    ☐ After Final | ☐ Petition to Convert to a Provisional Application | ☐ Proprietary Information |
|    ☐ Affidavits/declaration(s) | ☐ Power of Attorney, Revocation Change of Correspondence Address | ☐ Status Letter |
| ☐ Extension of Time Request | ☐ Terminal Disclaimer | ☒ Other Enclosure(s) (please identify below): RESPONSE TO RESTRICTION REQUIREMENT |
| ☐ Express Abandonment Request | ☐ Request for Refund | |
| ☐ Information Disclosure Statement | ☐ CD, Number of CD(s) _____ | |
| ☐ Certified Copy of Priority Document(s) |    ☐ Landscape Table on CD | |
| ☐ Reply to Missing Parts/ Incomplete Application | Remarks | |
|    ☐ Reply to Missing Parts under 37 CFR 1.52 or 1.53 | | |

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm Name | MORRISON & FOERSTER LLP (Customer No. 69753) | | |
|---|---|---|---|
| Signature | /Gregory S. Weaver, #53,751/ | | |
| Printed name | Gregory Weaver | | |
| Date | November 27, 2009 | Reg. No. | 53,751 |

la-1053515

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 6533012 |
| **Application Number:** | 11677958 |
| **International Application Number:** | |
| **Confirmation Number:** | 1844 |
| **Title of Invention:** | Ellipse Fitting for Multi-Touch Surfaces |
| **First Named Inventor/Applicant Name:** | Wayne  Westerman |
| **Customer Number:** | 69753 |
| **Filer:** | Gregory Scott Weaver |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 10684-25086.04 |
| **Receipt Date:** | 28-NOV-2009 |
| **Filing Date:** | 22-FEB-2007 |
| **Time Stamp:** | 01:35:13 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | Response.pdf | 17725<br>cb648a36a365a41321f94133599d11be18b1312d | yes | 10 |

APLNDC00021618

**Multipart  Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Response to Election / Restriction Filed | 1 | 1 |
| Claims | 2 | 7 |
| Applicant Arguments/Remarks Made in an Amendment | 8 | 10 |

**Warnings:**

**Information:**

| 2 | Transmittal Letter | transmittal.pdf | 7096<br>0f9eb6de60cf11a251480baf78f3b5608d49 4e37 | no | 1 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 24821 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

APLNDC00021619

CERTIFICATE OF TRANSMISSION UNDER 37 CFR § 1.8

I hereby certify that this document is being electronically transmitted via the
United States Patent and Trademark Office EFS-Web on November 27, 2009.

Signature: /Gregory S. Weaver, #53,751/
(Gregory Weaver)

**VIA EFS**
Docket No.: 106842508604
Client Ref. No.: P3950USC13
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Wayne WESTERMAN et al.

Application No.: 11/677,958                     Confirmation No.: 1844

Filed: February 22, 2007                        Art Unit: 2629

For:   ELLIPSE FITTING FOR MULTI-TOUCH          Examiner: Koosha Sharifi-Tafreshi
       SURFACES

## RESPONSE TO RESTRICTION REQUIREMENT

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

This is in response to the restriction requirement set forth in the Office Action mailed
October 27, 2009, for which a response is due November 27, 2009.

la-1052131

APLNDC00021620

PTO/SB/07 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

**MULTIPLE DEPENDENT CLAIM FEE CALCULATION SHEET**
Substitute for Form PTO-1360
(For use with Form PTO/SB/06)

| | |
|---|---|
| Application Number: 11/677,958 | Filing Date: 22 February, 2007 |
| Applicant(s) WESTERMAN ET AL. | ☐ To be Mailed — Page 1 of 1 |

\* May be used for additional claims or amendments

| CLAIMS | AS FILED Indep | AS FILED Depend | AFTER FIRST AMENDMENT Indep | AFTER FIRST AMENDMENT Depend | AFTER SEC. AMENDMENT 11/28/2009 Indep | AFTER SEC. AMENDMENT 11/28/2009 Depend | CLAIMS | * Indep | * Depend | * Indep | * Depend | * Indep | * Depend |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | 1 | | 51 | | | | | | |
| 2 | | | | | | 1 | 52 | | | | | | |
| 3 | | | | | | 1 | 53 | | | | | | |
| 4 | | | | | | 1 | 54 | | | | | | |
| 5 | | | | | | 1 | 55 | | | | | | |
| 6 | | | | | | 1 | 56 | | | | | | |
| 7 | | | | | | 1 | 57 | | | | | | |
| 8 | | | | | | 1 | 58 | | | | | | |
| 9 | | | | | | 1 | 59 | | | | | | |
| 10 | | | | | 1 | | 60 | | | | | | |
| 11 | | | | | | 1 | 61 | | | | | | |
| 12 | | | | | | 1 | 62 | | | | | | |
| 13 | | | | | | 1 | 63 | | | | | | |
| 14 | | | | | | 1 | 64 | | | | | | |
| 15 | | | | | | 1 | 65 | | | | | | |
| 16 | | | | | | 1 | 66 | | | | | | |
| 17 | | | | | | 1 | 67 | | | | | | |
| 18 | | | | | | 1 | 68 | | | | | | |
| 19 | | | | | | 1 | 69 | | | | | | |
| 20 | | | | | | 1 | 70 | | | | | | |
| 21 | | | | | | 6 | 71 | | | | | | |
| 22 | | | | | | 6 | 72 | | | | | | |
| 23 | | | | | | 9 | 73 | | | | | | |
| 24 | | | | | 1 | | 74 | | | | | | |
| 25 | | | | | | 1 | 75 | | | | | | |
| 26 | | | | | | 1 | 76 | | | | | | |
| 27 | | | | | | 1 | 77 | | | | | | |
| 28 | | | | | | 1 | 78 | | | | | | |
| 29 | | | | | | 1 | 79 | | | | | | |
| 30 | | | | | | 1 | 80 | | | | | | |
| 31 | | | | | | 1 | 81 | | | | | | |
| 32 | | | | | | 1 | 82 | | | | | | |
| 33 | | | | | | 1 | 83 | | | | | | |
| 34 | | | | | | 6 | 84 | | | | | | |
| 35 | | | | | | 6 | 85 | | | | | | |
| 36 | | | | | | | 86 | | | | | | |
| 37 | | | | | | | 87 | | | | | | |
| 38 | | | | | | | 88 | | | | | | |
| 39 | | | | | | | 89 | | | | | | |
| 40 | | | | | | | 90 | | | | | | |
| 41 | | | | | | | 91 | | | | | | |
| 42 | | | | | | | 92 | | | | | | |
| 43 | | | | | | | 93 | | | | | | |
| 44 | | | | | | | 94 | | | | | | |
| 45 | | | | | | | 95 | | | | | | |
| 46 | | | | | | | 96 | | | | | | |
| 47 | | | | | | | 97 | | | | | | |
| 48 | | | | | | | 98 | | | | | | |
| 49 | | | | | | | 99 | | | | | | |
| 50 | | | | | | | 100 | | | | | | |
| Total Indep | | | | | 3 | | Total Indep | | | | | | |
| Total Depend | | | | | | 60 | Total Depend | | | | | | |
| Total Claims | | | | | 3 | | Total Claims | | | | | | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2 — Part of Paper No20091201-1.

APLNDC00021621

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/677,958 | Filing Date<br>02/22/2007 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

|  |  |  | SMALL ENTITY ☐ | OR | OTHER THAN<br>SMALL ENTITY |
|---|---|---|---|---|---|

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A |  | N/A |  |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A |  | N/A |  |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A |  | N/A |  |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 63 minus 20 = | * 43 | X $ = |  | X $50 = | 2150 |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 3 minus 3 = | * 0 | X $ = |  | X $200 = | 0 |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). |  |  |  |  |  |
| ☒ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) |  |  |  |  |  | 360 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. |  |  | TOTAL |  | TOTAL | 2510 |

### APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **11/28/2009** | CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | PRESENT<br>EXTRA | RATE ($) | ADDITIONAL<br>FEE ($) | | RATE ($) | ADDITIONAL<br>FEE ($) |
| | Total (37 CFR<br>1.16(i)) | * 63 | Minus | ** 63 | = 0 | X $ = | | OR | X $52= | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 3 | Minus | ***3 | = 0 | X $ = | | OR | X $220= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) |  |  |  |  |  | OR |  |  |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) |  |  |  |  |  | OR |  |  |
| | |  |  |  | TOTAL<br>ADD'L<br>FEE |  | OR | TOTAL<br>ADD'L<br>FEE | 0 |

|  |  | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL<br>FEE ($) | | RATE ($) | ADDITIONAL<br>FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | PRESENT<br>EXTRA | RATE ($) | ADDITIONAL<br>FEE ($) | | RATE ($) | ADDITIONAL<br>FEE ($) |
| | Total (37 CFR<br>1.16(i)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) |  |  |  |  |  | OR |  |  |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) |  |  |  |  |  | OR |  |  |
| | |  |  |  | TOTAL<br>ADD'L<br>FEE |  | OR | TOTAL<br>ADD'L<br>FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/GERALDINE STANLEY/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/677,958 | 02/22/2007 | Wayne Westerman | 10684-25086.04 | 1844 |

69753        7590        12/24/2009
APPLE C/O MORRISON AND FOERSTER ,LLP
LOS ANGELES
555 WEST FIFTH STREET SUITE 3500
LOS ANGELES, CA 90013-1024

| EXAMINER |
|---|
| SHARIFI-TAFRESHI, KOOSHA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2629 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/24/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

APLNDC00021623

| **Office Action Summary** | **Application No.** | **Applicant(s)** |
|---|---|---|
|  | 11/677,958 | WESTERMAN ET AL. |
|  | **Examiner** | **Art Unit** |  |
|  | Koosha Sharifi | 2629 |  |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>28 November 2009</u>.

2a)☐ This action is **FINAL**.　　2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-35</u> is/are pending in the application.

　　4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-4,6-8,10-14,16-19 and 21-35</u> is/are rejected.

7)☒ Claim(s) <u>5,9,15 and 20</u> is/are objected to.

8)☒ Claim(s) <u>1-35</u> are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>22 February 2007</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

　　Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

　　Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

　　a)☐ All　b)☐ Some * c)☐ None of:

　　　1.☐ Certified copies of the priority documents have been received.

　　　2.☐ Certified copies of the priority documents have been received in Application No. _____.

　　　3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

　　* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO/SB/08)
　　Paper No(s)/Mail Date <u>12/12/2008, 03/27/2009, 08/06/2009</u>.

4)☐ Interview Summary (PTO-413)
　　Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____ .

APLNDC00021624

Application/Control Number: 11/677,958                                                    Page 2
Art Unit: 2629

## DETAILED ACTION

### *Election/Restrictions*

1.      Applicant's election with traverse of Species A (Fig.6) directed towards claims 1-
35 in the reply filed on 11/28/09 is acknowledged, **however the Applicant has failed to
further elect species from "Species Group: Proximity sensor with amplifier",
Species 1-4, and "Species Group: Side view of proximity sensor", Species X, Y
and Z and is required to this in response to this action**.  The traversal is on the
ground(s) that the restriction requirement is improper under MPEP 808 because the
restriction requirement is based on mere conclusion without any statement of the
reasons for the conclusion.

2.      This is not found persuasive because the Examiner, has previously stated that
the species show mutually exclusive characteristic, and thus are considered to be
different species, the identified species clearly show the mutually exclusive features.
The mutually exclusive features can be easily identified from the drawings:


For e.g. refer to:

**Species Group: Proximity sensor with amplifier:**

- Species 1:………………… Fig. 2;

- Species 2:………………… Fig. 3A;

- Species 3:…………………  Fig. 3B;

- Species 4:………………… Fig. 4A;

Application/Control Number: 11/677,958                                          Page 3
Art Unit: 2629

(Species 1: Fig.2) comprises element (36) and element (37) which none of the other species 2-4 comprise. Element 36 and 37 is a mutually exclusive feature.

(Species 2: Fig.3A) comprises element 40 which none of the other species 1, 3 and 4 comprise. Element 40 is a mutually exclusive feature.

(Species 3: Fig.3B) comprises element 69 which none of the other species 1, 2 and 4 comprise. Element 69 is a mutually exclusive feature.

(Species 4: Fig.4) comprises element 42 which none of the other species 1, 2 and 3 comprise. Element 42 is a mutually exclusive feature.

Thus, Species 1-4 have each a mutually exclusive feature and the Applicant is required to elect a species from the "**Species Group: Proximity sensor with amplifier"** as identified above.  The Applicant is require to elect a species from this group.

Further, refer to:

**Species Group: Architecture for 2D array of proximity sensors:**

- Species A: Fig.6;
- Species B: Fig.8;

(Species A: Fig.6) comprises element (45) which species B (Fig.8) does not comprise. Element 45 is a mutually exclusive feature.

APLNDC00021626

Application/Control Number: 11/677,958                                    Page 4
Art Unit: 2629

(Species B: Fig.8) comprises element (58 h-b ) which species (Fig.6) does not comprise. Element (58 h-b ) is a mutually exclusive feature.


Thus, Species A and B have each a mutually exclusive feature and the Applicant is required to elect a species from the "**Species Group: Architecture for 2D array of proximity sensors"** as identified above. The Applicant has already elected Species A from this group.


Further, refer to:

**Species Group: Side view of proximity sensor:**

- Species X: Fig.10;
- Species Y: Fig.11;
- Species Z; Fig.12;


(Species X: Fig.10) comprises element (87) and (86) which species Y (Fig.11) and species Z (Fig.12) do not comprise. Elements (87) and (86) are mutually exclusive features.

(Species Y: Fig.11) comprises element (90) which species X (Fig.10) and species Z (Fig.12) do not comprise. Element 90 is a mutually exclusive feature.

(Species Z: Fig.12) comprises element (92) which species X (Fig.10) and species Y (Fig.11) do not comprise. Element 92 is a mutually exclusive feature.

APLNDC00021627

Application/Control Number: 11/677,958                                     Page 5
Art Unit: 2629

 Thus, Species X, Y and Z have each a mutually exclusive feature and the

Applicant is required to elect a species from the "**Species Group: Side view of**

**proximity sensor"** as identified above. The Applicant is require to elect a species from

this group.


 Note, that searching for the mutually exclusive characteristics/features would be

a search burden for the examiner because different searches with different keywords

would be required for each of the mutually characteristics/features as identified above.


  **The requirement is still deemed proper and is therefore made FINAL.**


### *Claim Rejections - 35 USC § 102*

(e) the invention was described in (1) an application for patent, published under section 122(b), by
another filed in the United States before the invention by the applicant for patent or (2) a patent
granted on an application for patent by another filed in the United States before the invention by the
applicant for patent, except that an international application filed under the treaty defined in section
351(a) shall have the effects for purposes of this subsection of an application filed in the United States
only if the international application designated the United States and was published under Article 21(2)
of such treaty in the English language.

Claims 1-3, 6-8, 23-29, 31 and 32 are rejected under 35 U.S.C. 102(e) as being

anticipated by **[Bisset; Stephen J. et al., US 5825352 A]**.


**Regarding claim 1:**

 Bisset discloses:

 A method of processing input from a touch-sensitive surface **[Bisset: Title: …TOUCH**

**SENSOR PAD…]**, the method comprising: receiving at least one proximity image

APLNDC00021628

Application/Control Number: 11/677,958                                                Page 6
Art Unit: 2629

**[Bisset:  Fig.7B; X profile and Y profile and/or Finger in contact with touch sensor; Examiner: Note that the touch pad array, see Fig.2 (30), of Bisset is scanned. The output of the touchpad arrays (30) can be interpreted as being an image. For e.g. see Fig.7B, each of the contact areas of the fingers with the touch sensor can be interpreted as corresponding to Applicant's proximity image/s, further each of the X profile and Y profile of the finger in contact with the touch sensor can be additionally be interpreted as corresponding to Applicant's proximity image/s]** representing a scan of a plurality of electrodes of the touch-sensitive surface **[Bisset: Fig.2; Examiner: Note that sensor pad array 30 is scanned, the horizontal traces and vertical traces correspond to Applicants electrodes]**;  segmenting each proximity image into one or more pixel groups **[Bisset: Fig.7B; Examiner: Area of contact with Finger as shown in Fig.7b can be interpreted as corresponding to applicant's pixel group]** that indicate significant proximity **[Bisset: Fig.7B; Examiner: Each X and Y profile can be interpreted as a single segment, or in the case where two fingers are in contact with the touch pad as shown in Fig. 7B, each area of contact of each finger can be interpreted as being a segment]**, each pixel group representing proximity of a distinguishable hand part or other touch object on or near the touch-sensitive surface **[Bisset: Fig.7B; Examiner: The area of contact with the touch sensor is representative of a finger tip]**; and fitting an ellipse to at least one of the pixel groups **[Bisset: Fig.7B; Also inherent that the contact area of a human fingertip with a surface has is of a ellipse-like shape; Examiner: The area of contact with the touch sensor is**

APLNDC00021629

representative of a finger tip, note that the area of contact of the tip of the finger

with the touch sensor is an ellipse-like shape, see Fig.7B; Examiner: Note that if a

tip of a finger is in contact with an surface, the contact area is in general ellipse-

like because of the shape at the tip of a human finger, the examiner will cite

pertinent reference to prove this].


**Regarding claim 2:**

      Bisset discloses:

The method of claim 1 further comprising transmitting one or more ellipse

parameters as a control signal to an electronic or electromechanical device **[Bisset:**

**(Column 5, Lines 47-55): "The analog to digital converter 80 then supplies the**

**signals to the microcontroller 60, which operates to form, among other things, a**

**finger profile for one or more fingers, X-Y cursor data, and control signals.**

**Depending on the operation being performed at the particular time, the output of**

**microcontroller 60 is then supplied to an interface to a PC or other device, such**

**as a PS/2 interface, an RS-232 interface, or an Apple Desktop Bus (ADB)"].**


**Regarding claim 3:**

      Bisset discloses:

The method of claim 2 wherein the one or more ellipse parameters is selected from the

group consisting of position **[Bisset: (Column 5, Lines 47-55): "X-Y cursor data"]**,

shape **[Bisset: (Column 5, Lines 47-55): "finger profile", see in combination with**

Application/Control Number: 11/677,958                                      Page 8
Art Unit: 2629

**Fig.7B (X,Y profile)]**, size **[Inherent from Finger profile, XY profile]**, orientation

**[Inherent from Finger profile, XY profile]**, eccentricity **[Inherent from Finger profile,**

**XY profile]**, major radius **[Inherent from Finger profile, XY profile]**, minor

radius **[Inherent from Finger profile, XY profile]**, and any combination thereof.


**Regarding claim 6:**

        Bisset discloses:

The method of claim 1 further comprising: tracking a path of at least one of the one or

more pixel groups through a time-sequenced series of proximity images **[Bisset:**

**(Column 5, Line 58-61): "  In a typical embodiment, the operation of the circuit of**

**FIG. 2 _cycles_ continuously. As noted above, the cycle begins by scanning the**

**traces and measuring the capacitance on each trace."; (Column 6, Lines 14-end**

**of Paragraph); Examiner: Note that the position of a finger is determined in**

**Bisset, by continuously scanning and storing the x and y positions of the fingers**

**in each cycle. See also Fig.5 and 6, specifically xcompute, ycompute and x and y**

**motion]**; fitting an ellipse to the at least one of the one or more pixel groups in each of

the time-sequenced series of proximity images **[Bisset: Fig.7B; Also inherent that the**

**contact area of a human fingertip with a surface has is of a ellipse-like shape;**

**Examiner: The area of contact with the touch sensor is representative of a finger**

**tip, note that the area of contact of the tip of the finger with the touch sensor is an**

**ellipse-like shape, see Fig.7B; Examiner: Note that if a tip of a finger is in contact**

**with an surface, the contact area is in general ellipse-like because of the shape at**

Application/Control Number: 11/677,958                                         Page 9
Art Unit: 2629

the tip of a human finger, the examiner will cite pertinent reference to prove this];
and tracking a change in one or more ellipse parameters through the time-sequenced
series of proximity images **[Bisset: (Column 6, Lines 14-end of paragraph); (Column
7, Lines 34-end of Paragraph)]**.


**Regarding claim 7:**

        Bisset discloses:

 The method of claim 6 further comprising transmitting the change in the one or more
ellipse parameters **[Bisset: (Column 6, Lines 14-end of paragraph); (Column 7,
Lines 34-end of Paragraph)]** as a control signal to an electronic or electromechanical
device **[Bisset: (Column 5, Lines 47-55): "The analog to digital converter 80 then
supplies the signals to the microcontroller 60, which operates to form, among
other things, a finger profile for one or more fingers, X-Y cursor data, and control
signals. Depending on the operation being performed at the particular time, the
output of microcontroller 60 is then supplied to an interface to a PC or other
device, such as a PS/2 interface, an RS-232 interface, or an Apple Desktop Bus
(ADB)"]**.


**Regarding claim 8:**

        The limitations of claim 8 have been addressed in the discussion of claim 3
above.

Application/Control Number: 11/677,958                                             Page 10
Art Unit: 2629

**Regarding claims 23:**

A computer-readable medium having embodied thereon instructions executable by a

machine **[Bisset: Fig.2, Inherent from Microcontroller, Fig.5 and 6.; Examiner: Note**

**that Microcontrollers execute instructions stored in a type of memory device.; ]** to

perform a method according to any of claims 1-9 **[Examiner: Refer to any of the**

**claims 1-9]**.


**Regarding claim 24:**

        Bisset discloses:

A touch-sensing device **[Bisset: Title: …TOUCH SENSOR PAD…]** comprising: means

**[Bisset: Fig.2; 45 and 60]**  for producing a proximity image representing a scan of a

plurality of electrodes of a touch-sensitive surface **[Bisset:  Fig.7B; X profile and Y**

**profile and/or Finger in contact with touch sensor; Examiner: Note that the touch**

**pad array, see Fig.2 (30), of Bisset is scanned. The output of the touchpad arrays**

**(30) can be interpreted to being an image. For e.g. see Fig.7B, each of the contact**

**areas of the fingers with the touch sensor can be interpreted as corresponding to**

**Applicant's proximity image/s, further each of the X profile and Y profile of the**

**finger in contact with the touch sensor can be additionally be interpreted as**

**corresponding to Applicant's proximity image/s]**, the proximity image having a

plurality of pixels corresponding to the touch-sensing electrodes **[Bisset: Fig.2;**

**Examiner: Note that sensor pad array 30 is scanned, the horizontal traces and**

**vertical traces correspond to Applicants electrodes]**; and means **[Bisset: Fig.2: 60]**

APLNDC00021633

Application/Control Number: 11/677,958                                    Page 11
Art Unit: 2629

for segmenting the proximity image into one or more pixel groups **[Bisset: Fig.7B;**
**Examiner: Area of contact with Finger as shown in Fig.7b can be interpreted as**
**corresponding to applicant's pixel group]**, each pixel group representing a touch
object on or near the touch-sensitive surface; and means for fitting an ellipse to at least
one of the pixel groups **[Bisset: Fig.7B; Also inherent that the contact area of a**
**human fingertip with a surface has is of a ellipse-like shape; Examiner: The area**
**of contact with the touch sensor is representative of a finger tip, note that the**
**area of contact of the tip of the finger with the touch sensor is an ellipse-like**
**shape, see Fig.7B; Examiner: Note that if a tip of a finger is in contact with an**
**surface, the contact area is in general ellipse-like because of the shape at the tip**
**of a human finger, the examiner will cite pertinent reference to prove this]**.


**Regarding claim 25:**

        Bisset discloses:

The touch-sensing device of claim 24 wherein the touch object comprises at least a
portion of a hand **[Bisset: Fig.7B; Examiner: Note that the finger/s as shown in**
**Fig.5 are considered to be a portion of a hand]**.


**Regarding claim 26:**

        Bisset discloses:

The touch-sensing device of claim 24 wherein the touch object comprises at least a
portion of one or more fingers **[Bisset: Fig.7B]**.

APLNDC00021634

Application/Control Number: 11/677,958                                             Page 12
Art Unit: 2629

**Regarding claim 27:**

    Bisset discloses:

The touch-sensing device of claim 24 wherein the touch object comprises at least a

portion of a body part **[Bisset: Fig.7B; Examiner: A finger is a body part]**.

**Regarding claim 28:**

    Bisset discloses:

The touch-sensing device of claim 27 wherein the body part comprises one or

more of a hand, a finger **[Bisset: Fig.7B; Examiner: Note that the finger/s as shown**

**in Fig.5 are considered to be a body part]**, an ear, or a cheek.

**Regarding claim 29:**

    The limitations of claim 29 have been addressed in the discussion of claim 2

above.

**Regarding claim 31:**

    The limitations of claim 31 have been addressed in the discussion of claim 6

above.

**Regarding claim 32:**

Application/Control Number: 11/677,958                                    Page 13
Art Unit: 2629

     The limitations of claim 32 have been addressed in the discussion of claims 2

and/or 7 above.


### *Claim Rejections - 35 USC § 103*

1.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

2.    The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

    1.    Determining the scope and contents of the prior art.
    2.    Ascertaining the differences between the prior art and the claims at issue.
    3.    Resolving the level of ordinary skill in the pertinent art.
    4.    Considering objective evidence present in the application indicating obviousness or nonobviousness.

3.    Claims 10-13, 16-19, 21, 22, 30 and 33-35 are rejected under 35 U.S.C. 103(a)

as being unpatentable over **[Bisset; Stephen J. et al., US 5825352 A]**.


**Regarding claim 10:**

    Bisset disclose:

 A touch-sensing device comprising: a plurality of touch-sensing electrodes **[Bisset:**

**Fig.2; Examiner: Note that sensor pad array 30 is scanned, the horizontal traces**

**and vertical traces correspond to Applicants electrodes]**; electronic scanning

hardware **[Bisset: Fig.2; 45]** adapted to read the plurality of touch-sensing electrodes **[Bisset: Fig.2; Inherent from 45; (Column 5, Lines 28-34): "The rows and columns are connected to an analog multiplexor 45 through a plurality of X (row) direction conductors 50 and a plurality of Y (column) direction conductors 55, one conductor for each row and each column. Under the control of a microcontroller 60, the analog multiplexor 45 selects which traces of the matrix 30 will be sampled, and the output of those traces is then provided to a capacitance measuring circuit 70"]**; a calibration module **[Bisset: Fig.2; 45 and 70  and 80 and 60]** operatively coupled to the electronic scanning hardware  **[Bisset: Fig.2; Examiner: Note that 45 is coupled to 70,80 and 60]** and adapted to construct a proximity image **[Bisset:  Fig.7B; X profile and Y profile and/or Finger in contact with touch sensor; Examiner: Note that the touch pad array, see Fig.2 (30), of Bisset is scanned. The output of the touchpad arrays (30) can be interpreted to being an image. For e.g. see Fig.7B, each of the contact areas of the fingers with the touch sensor can be interpreted as corresponding to Applicant's proximity image/s, further each of the X profile and Y profile of the finger in contact with the touch sensor can be additionally be interpreted as corresponding to Applicant's proximity image/s]** having a plurality of pixels corresponding to the touch-sensing electrodes **[Bisset: Fig.2; Examiner: Note that sensor pad array 30 is scanned, the horizontal traces and vertical traces correspond to Applicants electrodes]** ; and a contact tracking and identification module **[Bisset: Fig.2: 60]** adapted to: segment the proximity image into one or more pixel groups **[Bisset: Fig.7B; Examiner: Area of**

Application/Control Number: 11/677,958                                      Page 15
Art Unit: 2629

**contact with Finger as shown in Fig.7b can be interpreted as corresponding to**

**applicant's pixel group]**, each pixel group representing proximity of a distinguishable

hand part or other touch object on or near the touch-sensitive surface **[Bisset: Fig.7B;**

**Examiner: The area of contact with the touch sensor is representative of a finger**

**tip]**; and fit an ellipse to at least one of the one or more pixel groups **[Bisset: Fig.7B;**

**Also inherent that the contact area of a human fingertip with a surface has is of a**

**ellipse-like shape; Examiner: The area of contact with the touch sensor is**

**representative of a finger tip, note that the area of contact of the tip of the finger**

**with the touch sensor is an ellipse-like shape, see Fig.7B; Examiner: Note that if a**

**tip of a finger is in contact with an surface, the contact area is in general ellipse-**

**like because of the shape at the tip of a human finger, the examiner will cite**

**pertinent reference to prove this]**.

       However, Bisset does not expressly disclose:

 a substrate and electrodes arranged on the substrate.

       The Examiner takes official notice that it is old and well known in the art that

sensor arrays (vertical and horizontal traces/electrodes) such as the one disclosed by

Bisset is placed on a substrate, or sandwiched between substrates. The motivation do

so, is for e.g. to isolate or shield the array from noise and/or prevent electrical short

circuits.

       Evidence for the Official Notice can be seen for e.g. in [Tareev; Aleksey A. US

6147680 A], see Fig.1 of Tareev.

APLNDC00021638

Application/Control Number: 11/677,958                                   Page 16
Art Unit: 2629

**Regarding claim 11:**

      Bisset discloses:

The touch-sensing device of claim 10 further comprising a host communication interface
adapted to transmit one or more ellipse parameters as a control signal to an electronic
or electromechanical device **[Bisset: (Column 5, Lines 47-55): "The analog to digital
converter 80 then supplies the signals to the microcontroller 60, which operates
to form, among other things, a finger profile for one or more fingers, X-Y cursor
data, and control signals. Depending on the operation being performed at the
particular time, the output of microcontroller 60 is then supplied to an interface to
a PC or other device, such as a PS/2 interface, an RS-232 interface, or an Apple
Desktop Bus (ADB)"].**


**Regarding claim 12:**

      Bisset discloses:

 The touch-sensing device of claim 11.

      However, Bisset does not expressly disclose: wherein the touch-sensing device
is integral with the electronic or electromechanical device.

      The Examiner takes official notice that it old and well known in the art to have a
touch-sensing device integral with an electronic device, for e.g. touchpad's integrated in
laptop computers. Thus, it would have been obvious to one having ordinary skill in the
art at the time the invention was made to have integrated a touch-sensing device into an

APLNDC00021639

Application/Control Number: 11/677,958                                      Page 17
Art Unit: 2629

electronic device in order to yield the predictable result of a more compact and/or

integral device.


**Regarding claim 13:**

The limitations of claim 13 have been addressed in the discussion of claim 3

above.


**Regarding claim 16:**

The limitations of claim 16 have been addressed in the discussion of claim 6

above.


**Regarding claim 17:**

Bisset discloses:

The touch-sensing device of claim 16 further comprising a host communication interface

adapted to transmit the change in at least one of the one or more ellipse parameters as

a control signal to an electronic or electromechanical device **[Bisset: (Column 5, Lines**

**47-55): "The analog to digital converter 80 then supplies the signals to the**

**microcontroller 60, which operates to form, among other things, a finger profile**

**for one or more fingers, X-Y cursor data, and control signals. Depending on the**

**operation being performed at the particular time, the output of microcontroller 60**

**is then supplied to an interface to a PC or other device, such as a PS/2 interface,**

**an RS-232 interface, or an Apple Desktop Bus (ADB)"]**.

Application/Control Number: 11/677,958                                    Page 18
Art Unit: 2629

**Regarding claim 18:**

The limitations of claim 18 have been addressed in the discussion of claim 12 above.

**Regarding claim 19:**

The limitations of claim 19 have been addressed in the discussion of claim 3 above.

**Regarding claim 21:**

The limitations of claim 21 have been addressed in the discussion of claim 12 above.

Note that laptops have a display, and thus are considered display devices.

**Regarding claim 22:**

Bisset discloses:

The touch-sensing device of claim 21.

However, Bisset does not expressly disclose:

wherein the display device comprises a liquid crystal display (LCD) or a light-emitting polymer display (LPD).

The Examiner takes official notice that it is old and well known in the art to have laptop computers integrated with a touchpad device and a displays Thus, it would have

Application/Control Number: 11/677,958                                    Page 19
Art Unit: 2629

been obvious to one having ordinary skill in the art at the time the invention was made

to have substituted one type of display of a laptop computer with another type of display

in order to yield the predictable result of displaying an image to a user.

**Regarding claim 30:**

The limitations of claim 30 have been addressed in the discussion of claim 12

above.

**Regarding claim 33:**

The limitations of claim 33 have been addressed in the discussion of claim 12.

**Regarding claim 34:**

The limitations of claim 34 have been addressed in the discussion of claim 12

above.

Note that laptops have a display, and thus are considered display devices.

**Regarding claim 35:**

The limitations of claim 35 have been addressed in the discussion of claim 22

above.

APLNDC00021642

Application/Control Number: 11/677,958                                          Page 20
Art Unit: 2629

4.      Claims 4 are rejected under 35 U.S.C. 103(a) as being unpatentable over

**[Bisset; Stephen J. et al., US 5825352 A]** in view of **[Shieh; Johnny Meng-Han, US**

**5748184 A].**


**Regarding claim 4:**

        Bisset discloses:

 The method of claim 3.

        However, Bisset does not expressly disclose:

wherein the one or more ellipse parameters are used to distinguish a pixel group

associated with a fingertip from a pixel group associated with a thumb.

        Shieh discloses:

wherein the one or more ellipse parameters are used to distinguish a pixel group

associated with a fingertip from a pixel group associated with a thumb **[Shieh: Fig.2;**

**Examiner: Note that the user's thumb 216 is detected to trigger the function of a**

**FOCUS and the user's finger such as the index finger (257) is used to trigger the**

**fuinction of OPEN, thus Shieh's device is necessarily capable of differentiating**

**between the user's finger]**.

        It would have been obvious to one having ordinary skill in the art at the time the

invention was made to have included the concept of differentiating a finger from a

thumb of Shieh in the device of Bisset in order to trigger different functions based on

which finger has been user as implicitly disclosed by Shieh **[Shieh: Fig.2].**

Application/Control Number: 11/677,958                                    Page 21
Art Unit: 2629

**Regarding claim 35:**

The limitations of claim 14 have been addressed in the discussion of claim 4 above.

### Allowable Subject Matter

5.    Claims 5, 9, 15 and 20 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

**Regarding claims 5, 9, 15 and 20:**

The prior art does not teach or suggest:

"…wherein fitting an ellipse to a group of pixels comprises computing one or more eigenvalues and one or more eigenvectors of a covariance matrix associated with the pixel group."

### Conclusion

6.    The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

[Shieh; Johnny Meng-Han, US 5896126 A] discloses: Selection device for touchscreen systems.

Application/Control Number: 11/677,958                                      Page 22
Art Unit: 2629

[Tareev; Aleksey A. US 6147680 A] discloses: A substrate.


     Any inquiry concerning this communication or earlier communications from the examiner should be directed to Koosha Sharifi whose telephone number is (571) 270-5897.  The examiner can normally be reached on Mon - Fri / 8am - 5pm.

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Amare Mengistu can be reached on (571) 272-7674.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


                                Koosha  Sharifi
                                Examiner
                                Art Unit 2629

/K. S./
Examiner, Art Unit 2629

Application/Control Number: 11/677,958                                    Page 23
Art Unit: 2629

/Amare  Mengistu/

Supervisory Patent Examiner, Art Unit 2629

APLNDC00021646

| Index of Claims | Application/Control No. 11677958 | Applicant(s)/Patent Under Reexamination WESTERMAN ET AL. |
|---|---|---|
| | Examiner Koosha Sharifi | Art Unit 2629 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/19/2009 | 12/14/2009 | | | | | | |
| | 1 | ÷ | ✓ | | | | | | |
| | 2 | ÷ | ✓ | | | | | | |
| | 3 | ÷ | ✓ | | | | | | |
| | 4 | ÷ | ✓ | | | | | | |
| | 5 | ÷ | O | | | | | | |
| | 6 | ÷ | ✓ | | | | | | |
| | 7 | ÷ | ✓ | | | | | | |
| | 8 | ÷ | ✓ | | | | | | |
| | 9 | ÷ | O | | | | | | |
| | 10 | ÷ | ✓ | | | | | | |
| | 11 | ÷ | ✓ | | | | | | |
| | 12 | ÷ | ✓ | | | | | | |
| | 13 | ÷ | ✓ | | | | | | |
| | 14 | ÷ | ✓ | | | | | | |
| | 15 | ÷ | O | | | | | | |
| | 16 | ÷ | ✓ | | | | | | |
| | 17 | ÷ | ✓ | | | | | | |
| | 18 | ÷ | ✓ | | | | | | |
| | 19 | ÷ | ✓ | | | | | | |
| | 20 | ÷ | O | | | | | | |
| | 21 | ÷ | ✓ | | | | | | |
| | 22 | ÷ | ✓ | | | | | | |
| | 23 | ÷ | ✓ | | | | | | |
| | 24 | ÷ | ✓ | | | | | | |
| | 25 | ÷ | ✓ | | | | | | |
| | 26 | ÷ | ✓ | | | | | | |
| | 27 | ÷ | ✓ | | | | | | |
| | 28 | ÷ | ✓ | | | | | | |
| | 29 | ÷ | ✓ | | | | | | |
| | 30 | ÷ | ✓ | | | | | | |
| | 31 | ÷ | ✓ | | | | | | |
| | 32 | ÷ | ✓ | | | | | | |
| | 33 | ÷ | ✓ | | | | | | |
| | 34 | ÷ | ✓ | | | | | | |
| | 35 | ÷ | ✓ | | | | | | |

APLNDC00021647

# EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 2 | "US 20070139395" | US-PGPUB; USPAT; USOCR; DERWENT | OR | ON | 2009/12/10 10:36 |
| S2 | 4508 | ellipse same (hand \| finger) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 10:54 |
| S3 | 447 | S2 same (image \| scan$4) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 10:55 |
| S4 | 681364 | touch$3 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 10:56 |
| S5 | 104 | S4 and S3 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 10:56 |
| S6 | 64 | S5 and ("345".clas. \| "382".clas.) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 11:06 |
| S7 | 104 | ("4734685" \| "4746770" \| "4968877" \| "5189403" \| "5305017" \| "5376948" \| "5463388" \| "5495077" \| "5530455" \| "5543590" \| "5543591" \| "5563632" \| "5565658" \| "5666113" \| "5675361" \| "5689253" \| "5767457" \| "5790107" \| "5821690" \| "5821930" \| "5825352" \| "5880411").PN. OR ("6323846").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:06 |
| S8 | 29 | ("5017030" \| "5194862" \| "5281966" \| "5642108" \| "5689253" \| "5808567" \| "5825352" \| "6107997" \| "6323846").PN. OR ("6570557").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:09 |
| S9 | 2067 | (scan$4 \| image) near5 (fingers) | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:11 |
| S10 | 271 | S9 and ("345".clas.) | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:12 |
| S11 | 1094 | (scan$4 \| image) with ((fingers) \| thumb) with (area \| surface) | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:16 |
| S12 | 1190 | (scan$4 \| image \| images) with ((fingers) \| thumb) with (area \| surface) | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:16 |
| S13 | 169 | S12 and "345".clas. | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:16 |

APLNDC00021648

| S14 | 146890 | ((fingers) \| thumb \| finger) with (area \| surface) | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:20 |
|---|---|---|---|---|---|---|
| S15 | 151029 | ((fingers) \| thumb \| finger \| palm) with (area \| surface) | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:20 |
| S16 | 5769 | S15 and "345".clas. | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:20 |
| S17 | 8281 | (345/173-178.ccls. \| 178/18.01,18.03,19.01,20.01.ccls.) | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:22 |
| S18 | 2865 | S15 and S17 | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:22 |
| S19 | 4299 | ((fingers) \| thumb \| finger \| palm) with (area \| surface) with (image \| images \| scan$4) | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:22 |
| S20 | 377 | S19 and S17 | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:23 |
| S21 | 386 | S17 and "382".clas. | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/10 11:33 |
| S22 | 3611585 | finger \| touch$3 \| hand \| palm | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:35 |
| S23 | 344 | S22 and S21 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:35 |
| S24 | 323858 | (finger \| touch$3 \| hand \| palm \| thumb) same (scan$4 \| image) | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:35 |
| S25 | 201 | S24 and S21 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:36 |
| S26 | 23 | ("4310839" \| "4573193" \| "4914624" \| "5319747" \| "5327161" \| "5335557" \| "5376946" \| "5420936" \| "5428367" \| "5483601" \| "5546523").PN. OR ("5748184").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:41 |
| S27 | 13 | ("4914624" \| "5164713" \| "5319747" \| "5327161" \| "5335557" \| "5376946" \| "5428367" \| "5748184" \| "5764222").PN. OR ("5872559").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:42 |
| S28 | 31 | ("4903012" \| "4914624" \| "5319747" \| "5327161" \| "5335557" \| "5376946" \| "5420936" \| "5428367" \| "5493621" \| "5515081" \| "5546523" \| "5612719" \| "5621438").PN. OR ("5764222").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:45 |
| S29 | 31 | ("3641431" \| "4353056" \| "4641350" \| "4958129" \| "5325442" \| "5369228" \| "5374787" \| "5495077" \| "5543588" \| "5543590" \| "5543591" \| "5648642" \| "5861583" \| "5943044" \| "6166370").PN. OR ("6392636").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:53 |
| S30 | 119234 | (finger \| touch$3 \| hand \| palm \| thumb) same (scan$4) | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:55 |
| S31 | 119414 | (finger \| touch$3 \| hand \| palm \| thumb \| (fingertip)) same (scan$4) | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:56 |
| S32 | 1433 | S31 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:56 |
| S33 | 79 | S31 and S17 and "382".clas. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 11:56 |
| S34 | 170 | scan$4 with image with (finger \| hand \| palm) with electrode | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:00 |

APLNDC00021649

| S35 | 34 | S34 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:00 |
|---|---|---|---|---|---|---|
| S36 | 1985 | scan$4 same image same (finger \| hand \| palm) same electrode | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:00 |
| S37 | 48 | S36 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:01 |
| S38 | 14 | S37 not S35 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:01 |
| S39 | 2 | ("6323846").PN. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/12/10 12:03 |
| S40 | 2081 | scan$4 same image same (finger \| hand \| palm \| touch$3) same electrode | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:04 |
| S41 | 69 | S40 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:05 |
| S42 | 126 | scan$4 same image same (touch$3) same electrode | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:05 |
| S43 | 32 | S42 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:05 |
| S44 | 198842 | scan$4 with (electrode \| line) | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:06 |
| S45 | 155857 | image with (finger \| hand \| palm \| touch $3 \| finger tip) | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:07 |
| S46 | 145365 | image with (finger \| hand \| palm \| touch $3 \| fingertip) | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:07 |
| S47 | 26658 | S46 and S44 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:07 |
| S48 | 356 | S47 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:07 |
| S49 | 19816 | palm same finger | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:10 |
| S50 | 394 | S49 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:10 |
| S51 | 64 | S50 and S44 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:10 |
| S52 | 13335 | (index adj finger) same thumb | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:15 |
| S53 | 181 | S52 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:15 |
| S54 | 4922 | (multi \| plurality) near2 (touch$3) | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:18 |
| S55 | 1257 | S54 and S15 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:18 |
| S56 | 677 | S55 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:19 |
| S57 | 228 | S54 and palm and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:19 |
| S58 | 877 | multi adj touch$3 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:21 |
| S59 | 365 | S58 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:21 |
| S60 | 2074 | (multi$1touch$3 \| multi$1finger) | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:33 |

APLNDC00021650

| S61 | 438 | S60 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:33 |
|---|---|---|---|---|---|---|
| S62 | 4621 | segment$5 same hand same image | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:44 |
| S63 | 59 | S62 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 12:44 |
| S64 | 663 | fingers with gestur$3 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/12/10 12:49 |
| S65 | 184 | S64 and S17 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/12/10 12:49 |
| S66 | 451 | ("20020118848" \| "20020140668" \| "20030006974" \| "20030076301" \| "20030076303" \| "20030076306" \| "20030095095" \| "20030095096" \| "20030098858" \| "20030132950" \| "20030164820" \| "20030206202" \| "20030234768" \| "20040146688" \| "20040263484" \| "20050012723" \| "20050052425" \| "20050104867" \| "20050110768" \| "20060022955" \| "20060022956" \| "20060026521" \| "20060026535" \| "20060026536" \| "20060032680" \| "20060033724" \| "20060053387" \| "20060066582" \| "20060085757" \| "20060097991" \| "20060197753" \| "20060232567" \| "20060238517" \| "20060238518" \| "20060238519" \| "20060238520" \| "20060238521" \| "20060238522" \| "20070070050" \| "20070070051" \| "20070070052" \| "20070078919" \| "20070081726" \| "20070229464" \| "20070236466" \| "20070247429" \| "20070257890" \| "20070268273" \| "20070268274" \| "20070268275" \| "20080041639" \| "20080042986" \| "20080042987" \| "20080042988" \| "20080042989" \| "20080128182" \| "20090021489" \| "20090160816" \| "3333160" \| "3541541" \| "3662105" \| "3798370" \| "4246452" \| "4550221" \| "4672364" \| "4672558" \| "4692809" \| "4695827" \| "4733222" \| "4734685" \| "4746770" \| "4771276" \| "4788384" \| "4806846" \| "4898555" \| "4968877" \| "5003519" \| "5017030" \| "5178477" \| "5189403" \| "5194862" \| "5224861" \| "5241308" \| "5252951" \| "5270711" \| "5281966" \| "5305017" \| "5345543" \| "5376948" \| "5398310" \| "5442742" \| "5463388" \| "5463696" \| "5471578" \| "5479528" \| "5483261" \| "5488204" \| "5495077" \| "5513309" \| "5523775" \| "5530455" \| "5543590" \| "5543591" \| "5548667" \| "5563632" \| "5563996" \| "5565658" \| "5579036" \| "5581681" \| "5583946" \| "5589856" \| "5590219" \| | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/12/10 12:59 |

APLNDC00021651

"5592566" | "5594469" | "5594810" |
"5596694" | "5612719" | "5625715" |
"5631805" | "5633955" | "5634102" |
"5636101" | "5642108" | "5644657" |
"5666113" | "5666502" | "5666552" |
"5675361" | "5677710" | "5689253" |
"5710844" | "5729250" | "5730165" |
"5736976" | "5741990" | "5745116" |
"5745716" | "5746818" | "5748184" |
"5748269" | "5764222" | "5767457" |
"5767842" | "5790104" | "5790107" |
"5802516" | "5808567" | "5809267" |
"5821690" | "5821930" | "5823782" |
"5825351" | "5825352" | "5835079" |
"5854625" | "5856824" | "5877748" |
"5880411" | "5883619" | "5898434" |
"5917476" | "5920309" | "5923319" |
"5933134" | "5943043" | "5943044" |
"5982302" | "6002389" | "6002808" |
"6020881" | "6031524" | "6037882" |
"6050825" | "6052339" | "6072494" |
"6084576" | "6097371" | "6107997" |
"6128003" | "6131299" | "6135958" |
"6144380" | "6188391" | "6188391" |
"6198515" | "6208329" | "6222465" |
"6239790" | "6243071" | "6246862" |
"6249606" | "6255604" | "6278443" |
"6288707" | "6289326" | "6292178" |
"6323846" | "6323849" | "6347290" |
"6377009" | "6380931" | "6411287" |
"6414671" | "6421234" | "6452514" |
"6457355" | "6466036" | "6515669" |
"6525749" | "6535200" | "6543684" |
"6543947" | "6570557" | "6593916" |
"6610936" | "6624833" | "6639577" |
"6650319" | "6658994" | "6670894" |
"6677932" | "6677934" | "6724366" |
"6757002" | "6803906" | "6842672" |
"6856259" | "6888536" | "6900795" |
"6927761" | "6942571" | "6965375" |
"6972401" | "6977666" | "6985801" |
"6992659" | "7031228" | "7129416" |
"7339580" | "RE40153").PN.

| S68 | 665 | 715/863.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 13:00 |
| S69 | 581 | S68 and (hand \| palm \| finger) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 13:03 |
| S70 | 2 | ("5483261").PN. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/12/10 13:18 |
| S71 | 89 | ("3761877" \| "4990900" \| "5025314" \| "5086197" \| "5107541").PN. OR ("5483261").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 13:18 |
| S72 | 790 | multi$1touch$3 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 13:44 |

APLNDC00021652

| S73 | 2597943 | scan$4 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 13:44 |
|-----|---------|--------|------------------------|-----|-----|------------------|
| S74 | 332 | S72 and S73 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 13:44 |
| S75 | 197 | S74 and S17 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/10 13:44 |
| S76 | 31 | (US-20020015024-$ or US-20020071277-$ or US-20030137494-$ or US-20020030668-$ or US-20030001825-$ or US-20080309632-$ or US-20080309629-$ or US-20090256818-$ or US-20030067451-$).did. or (US-6323846-$ or US-6570557-$ or US-5281966-$ or US-7030861-$ or US-5982302-$ or US-5511148-$ or US-6429856-$ or US-6614422-$ or US-5745046-$ or US-5748184-$ or US-5872559-$ or US-7046235-$ or US-5764222-$ or US-5621438-$ or US-6166370-$ or US-6392636-$ or US-3644935-$ or US-5825352-$ or US-5841078-$ or US-5751843-$ or US-6043805-$ or US-5896126-$).did. | US-PGPUB; USPAT | OR | ON | 2009/12/10 13:49 |
| S77 | 22 | S76 and scan$4 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 13:49 |
| S78 | 7023 | scan$4 same image same touch$3 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 13:56 |
| S79 | 323 | S78 and S17 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 13:57 |
| S80 | 689 | 345/175.ccls. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 13:58 |
| S81 | 46 | S78 and S80 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 13:59 |
| S82 | 309 | S80 and array | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 14:00 |
| S83 | 133 | S82 and scan$3 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/10 14:00 |

APLNDC00021653

| S84 | 178 | S82 and scan$4 | US-PGPUB;<br>USPAT; USOCR;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2009/12/10<br>14:00 |
|------|-------|-----------------------------------------------|-----------------------------------------------------------|-----|-----|-------------------------|
| S85 | 73276 | sens$3 near2 array | US-PGPUB;<br>USPAT; USOCR;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2009/12/10<br>14:02 |
| S86 | 12825 | S85 and (scan$3 same image) | US-PGPUB;<br>USPAT; USOCR;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2009/12/10<br>14:02 |
| S87 | 146 | S86 and S17 | US-PGPUB;<br>USPAT; USOCR;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2009/12/10<br>14:02 |
| S88 | 4 | 08/321,987 | US-PGPUB;<br>USPAT; USOCR;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2009/12/10<br>14:53 |
| S89 | 11451 | (eigenvalue \| eigenvector) | US-PGPUB;<br>USPAT; USOCR;<br>EPO; JPO;<br>DERWENT;<br>IBM_TDB | OR | ON | 2009/12/10<br>16:06 |
| S90 | 8281 | (345/173-178.ccls. \|<br>178/18.01,18.03,19.01,20.01.ccls.) | US-PGPUB;<br>USPAT; USOCR | OR | OFF | 2009/12/10<br>16:06 |
| S91 | 49 | S89 and S90 | US-PGPUB;<br>USPAT; USOCR | OR | OFF | 2009/12/10<br>16:06 |
| S92 | 665 | 715/863.ccls. | US-PGPUB;<br>USPAT; USOCR | OR | OFF | 2009/12/10<br>16:10 |
| S93 | 8 | S89 and S92 | US-PGPUB;<br>USPAT; USOCR | OR | OFF | 2009/12/10<br>16:10 |
| S94 | 69428 | "382".clas. | US-PGPUB;<br>USPAT; USOCR | OR | OFF | 2009/12/10<br>16:11 |
| S95 | 1772 | S94 and S89 | US-PGPUB;<br>USPAT; USOCR | OR | OFF | 2009/12/10<br>16:11 |
| S96 | 163495 | (image \| scan$4) with (finger \| hand \|<br>fingertip) | US-PGPUB;<br>USPAT; USOCR | OR | ON | 2009/12/10<br>16:12 |
| S97 | 750 | S96 and S89 | US-PGPUB;<br>USPAT; USOCR | OR | ON | 2009/12/10<br>16:12 |
| S98 | 432 | S97 and S94 | US-PGPUB;<br>USPAT; USOCR | OR | ON | 2009/12/10<br>16:12 |
| S99 | 17408 | (image \| scan$4) with (finger \| fingertip) | US-PGPUB;<br>USPAT; USOCR | OR | ON | 2009/12/10<br>16:13 |
| S100 | 124 | S99 and S89 | US-PGPUB;<br>USPAT; USOCR | OR | ON | 2009/12/10<br>16:13 |
| S101 | 2 | "US 20070139395" | US-PGPUB;<br>USPAT; USOCR;<br>DERWENT | OR | ON | 2009/12/14<br>10:03 |
| S102 | 150 | (distinguish$3 \| differentiate \|<br>differentiating) with thumb with finger | US-PGPUB;<br>USPAT; USOCR | OR | ON | 2009/12/14<br>11:50 |

APLNDC00021654

| S103 | 8281 | (345/173-178.ccls. \| 178/18.01,18.03,19.01,20.01.ccls.) | US-PGPUB; USPAT; USOCR | OR | OFF | 2009/12/14 11:50 |
| S104 | 44 | S102 and S103 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/14 11:50 |
| S105 | 688 | (distinguish$3 \| differentiate \| differentiating) same thumb same finger | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/14 11:52 |
| S106 | 62 | S105 and S103 | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/14 11:52 |
| S107 | 780 | (distinguish$3 \| differentiate \| differentiating \| discriminat$3 ) same thumb same finger | US-PGPUB; USPAT; USOCR | OR | ON | 2009/12/14 11:52 |
| S108 | 816 | (distinguish$3 \| differentiate \| differentiating \| discriminat$3 ) same thumb same finger | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/14 11:52 |
| S109 | 71 | S108 and S103 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/14 11:53 |
| S110 | 60362 | finger with thumb | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/14 11:55 |
| S111 | 523 | S110 and S103 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/14 11:56 |
| S112 | 2 | ("6323846").PN. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/12/14 12:27 |
| S113 | 2 | ("5748184").PN. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2009/12/14 12:37 |
| S114 | 7399 | (eigenvalue \| eigenvector) same (covariance \| matrix) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/14 12:48 |
| S115 | 47 | S103 and S114 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/14 12:48 |
| S116 | 1211 | S114 AND "382".CLAS. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/14 12:53 |

APLNDC00021655

| S117 | 217795 | (FINGER SAME (THUMB \| HAND \| PALM)) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/14 12:53 |
| S118 | 37 | S117 AND S116 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/12/14 12:53 |

**EAST Search History (Interference)**

< This search history is empty>

**12/14/2009 2:03:01 PM**
**C:\ Documents and Settings\ KSHARIFI\ My Documents\ EAST\ Workspaces\ 11677958.wsp**

APLNDC00021656