1          IN THE UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

      APPLE, INC.,                 )  CV-11-1846-LHK
5                                  )
                  PLAINTIFF,       )  SAN JOSE, CALIFORNIA
6                                  )
           VS.                     )
7                                  )  DECEMBER 16, 2011
      SAMSUNG ELECTRONICS CO.      )
8     LTD., ET AL,                 )
                                   )  PAGES 1-66
9                 DEFENDANT.       )
       _____

10

11              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE PAUL S. GREWAL
12            UNITED STATES DISTRICT JUDGE

13

14    A P P E A R A N C E S:

15

16    FOR THE PLAINTIFF:  MORRISON & FOERSTER, LLP
                          BY:  MICHAEL JACOBS
17                             ESTHER KIM
                               JASON BARTLETT
18                             RICHARD HUNG
                          425 MARKET STREET
19                        SAN FRANCISCO, CA 94105

20    FOR THE DEFENDANT:  QUINN EMANUEL
                          BY:  VICTORIA MAROULIS
21                        555 TWIN DOLPHIN DR., 5TH FL
                          REDWOOD SHORES, CA 94065

22

23         (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25    OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                               CERTIFICATE NUMBER 13185

                                                        1

```
 1    FOR THE DEFENDANT:  QUINN EMANUEL
                          BY:  BRETT ARNOLD
 2                             SARA JENKINS
                               MELISSA CHAN
 3                        555 TWIN DOLPHIN DRIVE, 5TH FL
                          REDWOOD SHORES, CA 94065
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    SAN JOSE, CALIFORNIA            DECEMBER 16, 2011
2                 P R O C E E D I N G S
3              (WHEREUPON, COURT CONVENED AND THE
4    FOLLOWING PROCEEDINGS WERE HELD:)
5              THE CLERK:  APPLE, INC. VERSUS SAMSUNG
6    ELECTRONICS COMPANY.  CASE NUMBER CV -11-1846.
7              MATTER ON FOR PLAINTIFF'S MOTION TO
8    COMPEL AND DEFENDANT'S MOTIONS TO COMPEL.
9              COUNSEL, PLEASE STATE YOUR APPEARANCES.
10             MR. JACOBS:  GOOD AFTERNOON YOUR HONOR.
11   MICHAEL JACOBS FROM MORRISON & FOERSTER FOR APPLE.
12             WITH ME IS RICH HUNG, JASON BARTLETT AND
13   ESTHER KIM FROM MORRISON & FOERSTER.
14             THE COURT:  ALL RIGHT.
15             GOOD MORNING, OR I SHOULD SAY GOOD
16   AFTERNOON TO EACH OF YOU.
17             MS. MAROULIS:  GOOD MORNING, YOUR HONOR.
18             VICTORIA MAROULIS FROM QUINN EMANUEL.
19   WITH ME ARE MY COLLEAGUES BRETT ARNOLD,
20   MELISSA CHAN AND SARA JENKINS.
21             THE COURT:  ALL RIGHT.  GOOD AFTERNOON TO
22   EACH OF YOU.
23             ALL RIGHT.  I HAVE A TOTAL OF THREE
24   MOTIONS BEFORE ME.  I HAVE READ THE PAPERS,
25   INCLUDING THOSE THAT WERE MOST RECENTLY SUBMITTED.
```

1          AS I UNDERSTAND IT THERE'S ONE MOTION

2     FROM APPLE AND TWO FROM SAMSUNG BEFORE ME THIS

3     AFTERNOON.

4          AGAIN, I'M AFRAID GIVEN THE OTHER

5     CONSTRAINTS IN MY SCHEDULE I CAN ONLY AFFORD AN

6     HOUR OF TIME FOR TODAY'S ARGUMENT, SO I WILL LEAVE

7     IT FOR YOU ALL TO DECIDE HOW YOU SPEND YOUR HALF AN

8     HOUR, BUT UNFORTUNATELY MY CRIMINAL CALENDAR TAKES

9     PRIORITY AND I HAVE TO STOP AT 1:30.

10          SO MR. JACOBS, I'LL START WITH YOU.  HOW

11    DO YOU WANT TO SPEND YOUR HALF-HOUR?

12          MR. JACOBS:  CONCISELY, YOUR HONOR.  WE

13    HAVE NO PRESENTATIONS.

14          AND I THINK WHAT WE ARE ASKING FROM YOU

15    TODAY CAN BE SUMMARIZED AS FOLLOWS:

16          WE NEED TO LIGHT A FIRE UNDER SAMSUNG TO

17    GET PRODUCTION DONE VERY QUICKLY.  IT HAS LAGGED.

18    WE HAVE BEEN IN THIS CASE FOR A FAIR AMOUNT OF

19    TIME.

20          WE HAD A VERY PRODUCTIVE OCTOBER AND

21    NOVEMBER BUT WE REALLY NEED TO GET DECEMBER TO BE A

22    PRODUCTIVE MONTH GIVEN OUR SCHEDULE.  AND WE HAVE

23    NOTICED DEPOSITIONS IN KOREA FOR JANUARY.

24          I THINK THE HEART OF THE ISSUE, ACTUALLY

25    LOOKING AT SAMSUNG'S OPPOSITION BRIEF, IS THAT WE

1    ENVISIONED GETTING THIS PRODUCTION IN TIME FOR

2    THOSE DEPOSITIONS TO GO FORWARD.  WE ARE ONLY NOW,

3    LITERALLY LAST NIGHT, THIS MORNING, GETTING DATES

4    FROM SAMSUNG.  THEY ARE LATER THAN WE ASKED FOR.

5              BUT THERE'S A KIND OF AN ALFONSE AND

6    GASTON ASPECT TO THIS.  WE NEED THESE DOCUMENTS.

7    WE NEED THEM FOR THE DEPOSITIONS.  THEY ARE CORE

8    DOCUMENTS, WE ARE NOT FISHING HERE.

9              WE HAVE ILLUSTRATED TO YOUR HONOR SOME OF

10   THE DOCUMENTS WE GOT ALREADY THAT LEAD US TO THINK

11   THAT WHEN THIS PRODUCTION IS DONE WE ARE GOING TO

12   HAVE VERY PRODUCTIVE RESULTS.

13             SO NUMBER ONE, WE WERE ASKING YOU TO

14   PRESS SAMSUNG FOR REALLY EXPEDITIOUS PRODUCTION OF

15   THE DOCUMENTS THAT THEY CONCEDE ARE RELEVANT.

16     THERE ARE REALLY ACTUALLY -- IN GENERAL,

17   THERE'S NOT A LOT OF FIGHTS HERE ABOUT RELEVANCE,

18   IT'S ABOUT GETTING IT DONE.

19             SO THAT'S NUMBER ONE WHAT WE ARE ASKING

20   FOR.

21             ON THEIR COMEBACK MOTIONS, IN MOST CASES

22   WE ARE DONE ALREADY.  WE CONVEYED THAT IN OUR

23   OPPOSITION BRIEF, OR THERE'S SOME THINGS THAT I

24   THINK THIS IS KIND OF THE LONG TAIL OF THE

25   PRODUCTION WE ARE AT NOW WHERE THEY ARE ASKING FOR

1    THINGS THAT SURFACED IN DEPOSITIONS.

2          WE ARE ASKING FOR A COUPLE THINGS.  WE'RE

3    ASKING FOR CONFIDENTIALITY PROTECTION FROM

4    YOUR HONOR.  WE ARE ASKING FOR SOME TIME WHERE WE

5    ARE CHASING DOWN THINGS, ESPECIALLY WHERE WE ARE

6    CHASING DOWN THINGS THAT ARE QUITE OLD.

7          AND THEN WE'RE ASKING FOR -- WE THINK WE

8    DREW REASONABLE RELEVANCE CUTS SO THAT THE TOTAL

9    BURDEN OF THIS PRODUCTION IS JUST MASSIVE AND NOT

10   GARGANTUAN, AND WE WOULD LIKE YOUR SUPPORT FOR

11   THOSE RELEVANCE DETERMINATIONS WE'VE MADE.

12          SO THAT'S IT IN A NUT SHELL.

13          AND ON THE OFFENSIVE MOTION, IF YOU WILL,

14   ON OUR MOTION TO COMPEL, IT'S REALLY JUST A

15   QUESTION OF GETTING IT DONE.  SAMSUNG WILL PROTEST

16   THAT THIS IS WAY TOO FAST AND WHY THE RUSH BUT WE

17   HAVE A RUSH WE HAVE A MARCH CUTOFF DATE.

18          AND ON OUR SIDE THE ASYMMETRY IN THIS

19   SITUATION IS THAT WE ARE GOING TO HAVE TO GO TO

20   KOREA TO TAKE THE DEPOSITIONS AND THE DOCUMENTS

21   WILL BE IN KOREAN AND WILL HAVE TO HAVE BEEN

22   TRANSLATED.

23          THE COURT:  CAN I ASK A QUESTION ABOUT

24   THE SOURCE CODE THAT SAMSUNG HAS PRODUCED OR NOT

25   PRODUCED TO DATE.

1          I HAVE REVIEWED THE DECLARATIONS

2    SUBMITTED BY SAMSUNG IN RESPONSE TO YOUR MOTION AND

3    THEY SEEM TO SUGGEST THAT ON MULTIPLE OCCASIONS

4    THEY HAVE IN FACT PRODUCED CODE.

5          IS THAT NOT TRUE?  IS THERE SOME PROBLEM

6    WITH WHAT THEY HAVE PRODUCED?

7          I WOULD LIKE TO HEAR YOUR THOUGHTS ABOUT

8    THAT.

9          MR. JACOBS:  SURE.

10         AS I READ THE PAPERS, WHAT THEY SAID IS

11   THEY HAVE PROMISED TO PRODUCE.  WHAT WE HAVE BEEN

12   ASKING FOR IS PRODUCTION OR DEADLINES FOR

13   PRODUCTION.  AND EXCEPT FOR MINOR FRAGMENTS OF CODE

14   THAT I UNDERSTAND WERE VERY RECENTLY PRODUCED, THEY

15   HAVEN'T ACTUALLY PRODUCED THE CODE.

16         SO THIS GOES BACK TO THE LOCAL RULE, THE

17   REQUIREMENT THAT YOU PRODUCE CODE FOR AN ACCUSED

18   INSTRUMENTALITY.

19         IN THEIR ANSWER TO THAT THEY SAID, WE

20   WILL GET AROUND TO IT AFTER WE MEET AND CONFER,

21   AFTER WE HAVE A PROTECTIVE ORDER, NOTWITHSTANDING

22   WE HAVE A DEFAULT PROTECTIVE ORDER.

23         THEN THERE WERE VARIOUS LETTERS BACK AND

24   FORTH AND VARIOUS COMMITMENTS, IN PRINCIPLE TO

25   PRODUCE, BUT WHAT WE NEVER GOT FROM THEM WAS

1    NATURAL PRODUCTION OR A HARD DATE FOR THAT

2    PRODUCTION.

3              AND I'M GOING TO TURN TO MY TEAM AND MAKE

4    SURE I'M REPRESENTING TO THE COURT ACCURATELY.

5              MR. HUNG:  THAT IS CORRECT.

6              WHAT HAPPENED WAS WE RECEIVED THE PROMISE

7    ON OCTOBER 7TH AND THEN MULTIPLE LETTERS RELATING

8    TO SOURCE CODE, ALMOST ALL OF WHICH WERE ON THE

9    DEFENSIVE SIDE OF THE CASE, MEANING THEIR ASSERTION

10   OF PATENTS AGAINST US.

11             AND FINALLY LAST NIGHT WITHIN A WEEK WE

12   RECEIVED SOME LIMITED AMOUNTS OF SOURCE CODE.

13             BEFORE THIS WEEK'S OFFER OF ACCESS TO

14   SOURCE CODE, I BELIEVE THE TOTAL AMOUNT WAS A

15   COUPLE OF PAGES OF A PRINTOUT RELATED TO ONE CODE,

16   AT LEAST FOR THE OFFENSIVE SIDE.

17             THE COURT:  ALL RIGHT.

18             I HAD ANOTHER QUESTION REGARDING THE

19   DESIGN HISTORY DOCUMENTS YOU ALL POINT TO.

20             SO AS I UNDERSTAND IT THERE HAS BEEN A

21   PRODUCTION; IS THAT NOT CORRECT?

22             AGAIN, IS THE PROBLEM WITH THE QUALITY OR

23   SUFFICIENCY OF THE PRODUCTION OR, TO DATE, HAVE YOU

24   NOT RECEIVED ANYTHING LIKE CAD FILES AND THINGS OF

25   THAT NATURE REGARDING PRODUCTS?

1          MR. JACOBS:  RIGHT.  LET'S TAKE THE CAD

2     FILES TO START WITH.

3          WHAT WE RECEIVED WERE THE FINAL CAD FILES

4     FOR THE PRODUCT AS SHIPPED.  BUT WE HAVEN'T GOTTEN

5     THE CAD FILES THAT REPRESENT DEVELOPMENT

6     DOCUMENTATION FOR THESE DESIGNS.

7          THE COURT:  HAVE YOU GOT ANY SKETCHBOOKS,

8     ANYTHING LIKE THAT?

9          MR. JACOBS:  I DON'T BELIEVE UNLESS, VERY

10    RECENTLY.

11          MR. HUNG:  AFTER FILING OUR MOTION WE

12    RECEIVED ABOUT 20,000 PAGES WHICH I UNDERSTAND

13    INCLUDE SOME SKETCHBOOKS.  THEY CAN TELL -- THEY

14    CAN SAY BETTER THAN WE CAN WHETHER IT'S ALL.  I

15    DOUBT IT'S ALL BECAUSE THEY WERE PRIMARILY

16    MARKETING DOCUMENTS AND THE LIKE WITHIN THOSE

17    20,000 PAGES.

18          THE COURT:  OKAY.

19          AND WHETHER WE'RE TALKING ABOUT CAD FILES

20    OR I WILL CALL THEM INTERIM CAD FILES FOR LACK OF A

21    BETTER TERM, SKETCHBOOKS AND SO FORTH, I TAKE IT

22    IT'S THE DESIGNERS WHO WANT TO USE THESE FOUR, IT'S

23    THE DEPOSITIONS OF THEIR DESIGNERS?

24          MR. JACOBS:  ABSOLUTELY.

25          THE COURT:  HAVE THOSE DEPOSITIONS BEEN

1    FIXED YET?

2              MR. JACOBS:  THEY HAVE NOT.

3              AGAIN, THE SEQUENCING ISSUE.  JUST TO

4    GIVE YOU OUR DEPOSITION STRATEGY HERE, WE

5    IDENTIFIED WITNESSES UP FRONT THAT WE THOUGHT COULD

6    HELP US SET THE STAGE FOR DOING THOUGHTFUL

7    DEPOSITIONS GOING FORWARD.

8              AND SO WE WERE TRYING TO GET THE

9    DOCUMENTS DONE TO HAVE THE DEPOSITIONS TO DO THE

10   THOUGHTFUL EXERCISE OF DEPOSITIONS AFTER THAT.

11             THE COURT:  NOW, YOU ALSO, I BELIEVE

12   REQUESTED A NUMBER OF E-MAILS REGARDING, TO WHAT

13   EXTENT AT ALL THEY LOOKED AT YOUR PRODUCTS DURING

14   THE DESIGN PROCESS.  I AM IN A FOG AS TO THAT

15   PRODUCTION.  HAVE YOU RECEIVED ANY SUCH E-MAILS?

16             MR. JACOBS:  NOT SINCE THE PRELIMINARY

17   INJUNCTION DISCOVERY.

18             AND AGAIN, WE HAVE AN AGREEMENT IN

19   PRINCIPLE TO SEARCH FOR ALL REFERENCES TO APPLE.

20   SIMILARLY, WE'RE SEARCHING FOR ALL REFERENCES TO

21   SAMSUNG AND THAT'S WHAT WE ARE LOOKING FOR RIGHT

22   AWAY.

23             THE COURT:  ALL RIGHT.

24             AND I HAD THOUGHT THAT BACK IN SEPTEMBER

25   I ISSUED AN ORDER ON THIS; IS THAT CORRECT?

1          MR. JACOBS:  YOU HAD.

2          THE COURT:  SO EVEN AS TO THE PRELIMINARY

3     INJUNCTION PHASE MATERIALS, YOUR POSITION IS THAT

4     SAMSUNG HAS NOT COMPLIED WITH MY ORDER ON THAT?

5          MR. JACOBS:  THAT'S CORRECT.

6          I THINK TO BE FAIR TO THE SAMSUNG SIDE ON

7     THIS, IN THE PRELIMINARY INJUNCTION WE HAD A

8     LIMITED TARGET SET OF PRODUCTS AND A LIMITED

9     TARGETED SET OF PATENTS.  I HOPE THEY FOCUSED ON

10    THAT IN PRODUCING IN RESPONSE TO THE PRELIMINARY

11    INJUNCTION.

12          BUT NOW WE ARE, OF COURSE IT'S A LARGER

13    SET OF PRODUCTS, A LARGER SET OF RIGHTS, PRESUMABLY

14    A LARGER SET OF DESIGNERS.

15          THE COURT:  LARGER SET OF FEATURES AND SO

16    FORTH.

17          MR. JACOBS:  EXACTLY.

18          THE COURT:  AGAIN, I'M JUST GOING THROUGH

19    THE LIST OF REQUESTS IN YOUR MOTION.

20          ON THE SURVEY AND MARKETING DOCUMENTS, SO

21    WHAT IS THE STATUS OF THAT PRODUCTION?  I SUSPECT

22    THIS HAS BEEN A MOVING TARGET AS YOU MOVE THROUGH

23    THE MOTION PRACTICE, BUT WHERE DO THINGS STAND

24    TODAY?

25          MR. JACOBS:  WE HAVE GOTTEN SOME SURVEY

1    DOCUMENTS, QUITE INTERESTING SURVEY DOCUMENTS, BUT

2    WE HAVE A LOT OF REASON TO BELIEVE THEY ARE NOT

3    DONE YET AND I THINK THEY HAVEN'T REPRESENTED THAT

4    THEY ARE DONE.

5              THE COURT:  ALL RIGHT.

6              AND AS BETWEEN THESE FOUR MAJOR

7    CATEGORIES OF REQUESTS THAT YOU'VE IDENTIFIED, YOU

8    BROUGHT UP THE ISSUE OF SEQUENCING.

9              IS THERE ANY KIND OF RESOLUTION YOU MIGHT

10   REACH ABOUT WHAT YOU NEED SOONER RATHER THAN LATER?

11   LATER ISN'T VERY LATE GIVEN THE SCHEDULE JUDGE KOH

12   SET.

13             ARE THERE PARTICULAR CATEGORIES THAT ARE

14   MOST CRITICAL?

15             MR. JACOBS:  I THINK THE ONLY HONEST

16   ANSWER, YOUR HONOR, THAT I CAN GIVE YOU IS THAT WE

17   HONED IT DOWN FOR PURPOSES OF THIS MOTION.

18   THESE ARE -- WE CHARACTERIZE IT AS SUCH AND

19   PREPARING FOR THE HEARING I THOUGHT THROUGH THAT

20   QUESTION AGAIN, ARE THESE REALLY CORE DOCUMENTS?

21   ARE THESE THE, TO USE A PHRASE I RATHER LIKE, THE

22   NUGGET OF THE CASE?

23             AND WITH RESPECT TO, JUST TO CLICK

24   THROUGH THEM, WITH RESPECT TO SOURCE CODE, ALTHOUGH

25   ANDROID IS PROBABLY AVAILABLE, SAMSUNG IS NOT

1      STIPULATING THAT ANDROID IS THE RELEVANT UNIVERSE

2      OF CODE AND THEY HAVE THEIR OWN SKIN ON TOP OF

3      ANDROID PHONES.

4              THE COURT:  I SEE.

5              MR. JACOBS:  SO YOU SEE WHERE THIS IS

6      GOING.

7              THE COURT:  YES.

8              SO AT LEAST AS OF TODAY, THE

9      MODIFICATIONS OR IMPLEMENTATION OF ANDROID THAT

10     SAMSUNG HAS DEPLOYED IS IN PLAY IN THIS CASE AND SO

11     THE PUBLICLY AVAILABLE ANDROID SOURCE IS

12     INSUFFICIENT, FROM YOUR PERSPECTIVE.

13             MR. JACOBS:  EXACTLY.

14             TO BE SLIGHTLY MORE PRECISE, THERE'S A

15     TOUCHWIZ SAMSUNG USER INTERFACE THAT SAMSUNG

16     DEVELOPED AND TOUCHWIZ IS AN IMPORTANT COMPONENT OF

17     THE CODE WE SEEK.

18             SIMILARLY, WITH DESIGN HISTORY WE HAVE AN

19     EARLY PRODUCTION OF SOME DOCUMENTS THAT GO TO SOME

20     OF OUR COPYING CASE.  BUT WE BELIEVE THAT THERE IS

21     A LOT MORE THERE.

22             WE INFER THAT THERE'S A LOT MORE THERE BY

23     LOOKING AT THE SIMILARITY OF THE PRODUCTS, BUT WE

24     BELIEVE BASED ON SOME OF THE EVIDENCE WE'VE

25     RECEIVED THAT THERE'S A LOT MORE THERE AS WELL.

1          THE COURT:  SO ACROSS THESE FOUR

2     CATEGORIES, ARE ANY SPECIFIC SUBCATEGORIES OR TYPES

3     OF DOCUMENTS WITHIN THE CATEGORIES THAT SAMSUNG

4     JUST TOLD YOU, LOOK, WE DON'T THINK YOU NEED TO

5     PRODUCE THEM, OR IS THE ISSUE SPEED AND

6     SUFFICIENCY?

7          MR. JACOBS:  SPEED AND SUFFICIENCY,

8     YOUR HONOR.

9          THE COURT:  ALL RIGHT.

10          WELL, BEFORE WE TURN TO ANY OF THE

11     SAMSUNG ISSUES, ANY OTHER POINTS YOU WANT TO MAKE

12     IN YOUR MOTION?

13          I WOULD LIKE TO HEAR FROM SAMSUNG, OF

14     COURSE, BUT I THINK IT'S EASIEST TO STICK TO THIS.

15          MR. JACOBS:  THE TOUGHEST ISSUE ON OUR

16     MOTION IS EXACTLY WHAT TIME.

17          AND I WOULD LOVE TO BE ABLE TO SAY WE

18     COULD GIVE THEM AN EXTRA WEEK OR AN EXTRA TWO WEEKS

19     FROM WHAT WE ARE ASKING FOR, BUT I FEAR THAT IF WE

20     DON'T GET AN ORDER TO DO IT AS QUICKLY AS OBVIOUSLY

21     POSSIBLE, IT'S GOING TO HAUNT US AS WE CAREEN

22     TOWARD THE DISCOVERY CUTOFF.

23          THE COURT:  I DON'T MEAN TO QUIBBLE, BUT

24     I TAKE SAMSUNG AT THEIR WORD THAT THEY ARE ACTING

25     AS QUICKLY AS POSSIBLE.

1          THE ISSUE SEEMS TO ME AS IF THEY'RE AT

2     THEIR LIMITS.  ARE YOU LOOKING FOR DATES CERTAIN

3     FROM THE COURT?

4          MR. JACOBS:  OH, YES.

5          I THINK THAT THE -- WHAT WE HAVE SEEN

6     WHEN WE HAVE SOUGHT PRODUCTION FROM SAMSUNG, WHEN

7     THE COURT SETS A DATE, THEY DO THEIR BEST TO

8     COMPLY.

9          SO YOU WILL RECALL THAT IN THE

10    PRELIMINARY INJUNCTION PHASE ORDER THAT YOU ISSUED

11    YOU SAID FRIDAY BEFORE THE HEARING, AND I THINK

12    THEY REALLY TRIED.  IT TURNED OUT IT CAME IN OVER

13    THE WEEKEND AND EVEN ON MONDAY BECAUSE OF SOME

14    TECHNICAL GLITCHES, BUT WE BELIEVE THEY RESPOND TO

15    COURT ORDERS.

16         THE COURT:  ALL RIGHT.

17         MR. JACOBS:  THANK YOU, YOUR HONOR.

18         THE COURT:  THANK YOU, MR. JACOBS.

19         MS. MAROULIS?

20         MS. MAROULIS:  GOOD AFTERNOON,

21    YOUR HONOR.

22         THE COURT:  GOOD AFTERNOON.

23         MS. MAROULIS:  JUST TO FOCUS ON THE MAIN

24    POINT OF THE APPLE MOTION WHICH IS THE TIMING OF

25    THE PRODUCTION, AS YOU SAW FROM OUR PAPERS AND AS

1    APPLE KNOWS FROM MULTIPLE MEET AND CONFERS, WE ARE

2    COMMITTED TO PRODUCING VIRTUALLY ALL OF THESE

3    DOCUMENTS AROUND JANUARY 6TH.

4         THEY MAY HAVE WANTED IT EARLIER BUT WE

5    CANNOT MAKE IT EARLIER.  AND IF THERE'S AN ORDER

6    THAT REQUIRES US TO DO IT EARLIER, WE WOULD HAVE TO

7    SEEK SOME KIND OF RELIEF FROM THAT ORDER.

8         THE COMBINATION OF ISSUES, INCLUDING THE

9    NUMBER OF CUSTODIANS --

10        THE COURT:  I HAVEN'T EVEN ISSUED THE

11   ORDER AND YOU ARE ALREADY TELLING ME YOU ARE GOING

12   TO SEEK RELIEF.

13        MS. MAROULIS:  THIS IS BECAUSE APPLE

14   REPRESENTED THEY NEED THIS NOW.

15        I THINK ORIGINALLY THEY ASKED FOR

16   DECEMBER 15TH, IN THE MOTION PAPERS THEY SAY

17   DECEMBER 23RD.  AND IT'S JUST NOT VIABLE.

18        WE SUBMITTED DECLARATIONS FROM OUR TEAM

19   MEMBERS AND FROM SAMSUNG ABOUT THE FACT THAT THAT'S

20   NOT GOING TO HAPPEN.

21        AND WE ARE TRYING VERY HARD TO WORK WITH

22   THAT BOTH IN TERMS OF MEET AND CONFERS WITH THE

23   PRODUCTION OBLIGATIONS TO MOVE THE CASE ALONG

24   BECAUSE WE UNDERSTAND THAT'S THE COURT ORDER TO US

25   FROM JUDGE KOH.

1           BUT REALISTICALLY WE STARTED PRODUCING

2      ALL THE CATEGORIES OF DOCUMENTS AND WE TOLD THEM WE

3      WILL COMPLETE THEM SOON.  SO FROM SAMSUNG'S

4      PERSPECTIVE THIS MOTION WAS NOT NECESSARY AT ALL.

5           THE COURT:  WOULD YOU AGREE MS. MAROULIS,

6      THEN, THAT THE ISSUE BEFORE ME NOW ISN'T YOUR

7      WILLINGNESS TO PRODUCE THESE DOCUMENTS IT'S UNDER

8      WHAT SCHEDULE AND UNDER WHAT DEMANDS APPLE IS

9      INSISTING UPON, THAT IS REALLY THE CRUX OF THE

10     DEBATE?

11          MS. MAROULIS:  THAT IS THE CRUX OF THAT.

12          THERE'S A COUPLE EXCEPTIONS, AND THAT HAS

13     TO DO WITH APPLE MOVED ON SOME REQUESTS THAT WERE

14     NEVER MET AND CONFERRED ON IN THE TECHNICAL

15     DOCUMENT SECTION.

16          FOR EXAMPLE, THEY LIST A NUMBER OF

17     REQUESTS WE COVER IN THE CHAN DECLARATION,

18     PARAGRAPHS 21 TO 22, THAT BROADLY TAKE A SWIPE AT

19     TECHNICAL DOCUMENTS.

20          OTHER THAN SOURCE CODE, THOSE THINGS WERE

21     NOT DISCUSSED AMONG THE PARTIES.

22          SO SOURCE CODE, WE OFFERED THEM FOR

23     INSPECTION.  AND THEY'RE GOING TO BE INSPECTING

24     THAT.  BUT I CANNOT MAKE A REPRESENTATION AS TO

25     EACH ONE OF THESE, I THINK IT'S 17 DIFFERENT

1    REQUESTS THAT HAS NOT BEEN VENTILATED YET.

2            THE SECOND POINT WE WANTED TO MAKE WAS TO

3    THE EXTENT THE COURT IS INCLINED TO SET A DATE BY

4    WHICH SAMSUNG NEEDS TO COMPLETE ITS PRODUCTION, THE

5    SAME SHOULD APPLY TO APPLE.

6            IN OUR MOTION WE EXPLAINED THE DIFFERENT

7    CATEGORIES, THE SAME CATEGORIES IN THEIR MOTION

8    THAT APPLE HAS NOT ITSELF MET.

9            FOR EXAMPLE, THEY HAVE NOT PRODUCED ANY

10   SOURCE CODE.  THEY OFFERED YESTERDAY TO FILE A

11   MOTION TO COMPEL TWO PAGES OF SOURCE CODE THAT

12   RELATES TO PRIOR ART.

13           THE COURT:  WOULD YOU BE SO KIND AS TO

14   REFRESH ME IN THIS CASE.  I HAVE A NUMBER OF THESE

15   HERE, YOU JUST HEARD ONE OF THEM.  ARE YOU ALL

16   MAKING SOURCE CODE AVAILABLE THROUGH SOME TYPE OF

17   LIVE ACCESS, LAPTOP PRODUCTION?

18           MS. MAROULIS:  IT'S FOR INSPECTION,

19   YOUR HONOR, NOT IN ESCROW BUT IN COUNSEL'S OFFICES.

20           THE COURT:  RIGHT.  OKAY.

21           AND I KNOW WE HAD THE DISCUSSION AROUND

22   THAT BEFORE, SO I APPRECIATE YOU REMINDING ME.

23           MS. MAROULIS:  YES, YOUR HONOR.

24           SO WITH RESPECT TO THE FOURTH CATEGORY AT

25   ISSUE.  SOURCE CODE DESIGN DOCUMENTS, SURVEY

1    DOCUMENTS AND DOCUMENTS THAT REFLECT A SEARCH BASED

2    ON THE TERM "APPLE" FOR US AND "SAMSUNG" FOR THEM,

3    THEY HAVE NOT COMPLETED THEIR PRODUCTION.

4           SO TO THE EXTENT THERE'S A DATE,

5    JANUARY 6TH OR JANUARY 10TH, IT HAS TO BE

6    RECIPROCAL.

7           WE --

8           THE COURT:  AND I TAKE YOUR POINT AND

9    SAUCE FOR THE GOOSE IS SAUCE FOR THE GANDER, THE

10   ARGUMENT IS USUALLY A GOOD ONE.

11          IS IT YOUR RECOMMENDATION ARGUMENT,

12   POSITION, HOWEVER YOU WANT TO FRAME IT TO THE

13   COURT, THAT IF I'M GOING TO APPLY A SINGLE STANDARD

14   TO BOTH PARTIES THAT THE BETTER STANDARD IS TO SET

15   A DATE FURTHER OUT AS OPPOSED TO AN EARLIER DATE?

16          IN OTHER WORDS, AS BETWEEN THOSE TWO

17   WHICH POSITION DO YOU THINK IS MORE APPROPRIATE?

18          MS. MAROULIS:  YOUR HONOR, I THINK IT

19   WOULD BE MORE REALISTIC TO SET IT FOR MID-JANUARY,

20   WOULD BE MORE REALISTIC WITH SOME CATEGORIES OF

21   DOCUMENTS BEING PRIORITIZED FOR DEPOSITIONS.

22          FOR EXAMPLE, WE'VE WORKED SUCCESSFULLY

23   WITH APPLE FOR THE INVENTION PROSECUTING ATTORNEY

24   DEPOSITIONS.  WE JUST COMPLETED ABOUT 50 OF THEM

25   WHERE WE PRODUCED DOCUMENTS SEVERAL DAYS BEFORE

1    DEPOSITIONS.

2          SO EVEN IF THERE'S A DEADLINE THAT'S

3    FURTHER OUT IN JANUARY, WE CAN CERTAINLY EXPEDITE

4    SOME CATEGORIES OF DOCUMENTS TARGETED TO THE

5    SPECIFIC DEPOSITIONS.

6          THE COURT:  SO ARE THERE PARTICULAR -- I

7    MEAN, THE CONCERN I HAD IS JUST THE SCHEDULE IS

8    MIGHTY TIGHT.  AND, YOU KNOW, EVEN A DEADLINE IN

9    MID-JANUARY WOULD SUGGEST WE LOSE THE FIRST TWO

10   WEEKS OF THE MONTH FOR DEPOSITION PURPOSES.

11         ARE THERE PARTICULAR INDIVIDUALS OR

12   CATEGORIES RELATING TO INDIVIDUALS THAT I MIGHT

13   PRIORITIZE IN YOUR VIEW?  SO WE TAKE ADVANTAGE OF

14   THOSE FIRST TWO WEEKS.

15         MS. MAROULIS:  THERE WERE A COUPLE

16   DEPOSITION DATES OFFERED TO APPLE.  ONE IS

17   DECEMBER 30TH AND ANOTHER ONE IS JANUARY 12TH.

18         SO FOR THOSE CUSTODIANS WE WILL

19   PRIORITIZE AND PRODUCE THEIR DOCUMENTS, IF THEY

20   HAVEN'T ALREADY BEEN PRODUCED, NO LATER THAN THREE

21   DAYS BEFORE THE DEPOSITION LIKE WE HAVE DONE WITH

22   THE INVENTOR DEPOSITIONS FOR BOTH SIDES.

23         AND TO THE EXTENT YOUR HONOR NEEDS

24   EXAMPLES OF WHY WE BELIEVE APPLE'S PRODUCTION IS

25   NOT COMPLETE, IT'S LISTED IN THE PAPERS.

1          BUT FOR EXAMPLE, THEY ARE PRESSING FOR

2     THE SURVEYS.  AND APPLE ITSELF PRODUCED ONLY FIVE

3     SURVEYS TOTAL THAT WE COULD FIND IN THE PRODUCTION.

4     AND CLEARLY ORGANIZATIONS SUCH AS APPLE PROBABLY

5     HAS AN ENTIRE CONSUMER SURVEY DEPARTMENT.

6          THE COURT:  WELL, I WILL GET TO APPLE'S

7     PRODUCTION IN A MINUTE.  I STILL WANT TO FOCUS ON

8     YOUR PRODUCTION, JUST SO I CAN KEEP ALL OF THIS

9     STRAIGHT.

10         IN YOUR ORGANIZATION, IS THERE A SIMILAR

11    ORGANIZATION THAT'S RESPONSIBLE?

12         MS. MAROULIS:  WE HAVE SEVERAL CUSTODIANS

13    WHO ARE PRIMARILY RESPONSIBLE AND WE SEARCHED THEIR

14    FILES, AND WE PRODUCED SOME OF THE DOCUMENTS.

15         I DON'T KNOW IF IT'S ALL, I WILL NEED IT

16    TO CONFER --

17         THE COURT:  YOU ARE NOT OBJECTING TO

18    MAKING THEM A COMPLETE PRODUCTION, YOUR POINT IS

19    IT'S IN PROCESS?

20         MS. MAROULIS:  IT'S IN THE PROCESS.

21       THERE'S ONE LIMITATION WE'VE ASKED IT BE

22    FOCUSED ON THE PRODUCTS SOLD IN THE U.S. THAT ARE

23    ACCUSED IN THE COMPLAINT AS OPPOSED TO PRODUCTS

24    SOLD IN A NETHERLANDS OR CHINA OR SOMEWHERE ELSE.

25         BUT FOR THE U.S. WE DO NOT HAVE AN

1    OBJECTION.

2             THE COURT:  ON THE ISSUE OF THE E-MAIL,

3    AN ISSUE OF SOME INTEREST TO ME THESE DAYS, THE

4    QUESTION I HAVE IS:  SO THEY ESSENTIALLY ARE ASKING

5    YOU TO PAW THROUGH A NUMBER OF CUSTODIANS E-MAILS

6    LOOKING FOR REFERENCES TO APPLE.  I ASSUME YOU HAVE

7    ALL REACHED SOME CONSENSUS OR AGREEMENT ON WHO

8    EXACTLY YOU NEED TO BE RESEARCHING E-MAILS FOR?

9             MS. MAROULIS:  WELL, THEY WANT US TO

10   SEARCH EVERY SINGLE CUSTODIAN FOR THE TERM "APPLE."

11            WE'VE GENERALLY AGREED TO IT, BUT SUBJECT

12   TO THE CONDITION.  ONE, THEY WANTED US TO SEARCH

13   FOR SAMSUNG, AND THEY HAVEN'T YET COMMITTED TO

14   THAT.

15            AND TWO, UNFORTUNATELY "APPLE" IS A MORE

16   COMMON TERM THAN "SAMSUNG."  SO IN ADDITION TO

17   PEOPLE BUYING FOOD FOR DINNER, YOU ALSO GET

18   QUICKTIME, ITUNE FILES.

19            SO IN SEARCHING CUSTODIAN FILES, WE'RE

20   GETTING A LOT OF FALSE HITS.  WE ARE TRYING TO

21   FILTER IT OUT BUT THAT'S ONE OF THE THINGS SLOWING

22   DOWN THE PRODUCTION.

23            THE COURT:  I JUST WANT TO MAKE SURE,

24   THERE WAS ONE OTHER QUESTION I HAD FOR YOU AND THEN

25   WE'LL TURN TO YOUR MOTION AFTER REBUTTAL ON THIS

1      ARGUMENT TO CLOSE THIS OUT.

2             THE ADDITIONAL QUESTION I HAD CONCERNS

3      THE SOURCE CODE WHEN IT WAS FIRST AVAILABLE TO

4      APPLE.

5             YOUR DECLARATION SEEMS TO SUGGEST OR

6      IMPLY THAT THERE HAS BEEN SOURCE CODE AVAILABLE TO

7      THEIR FOLKS FOR SOME TIME, AM I READING THOSE RIGHT

8      OR IS THE THAT NOT TRUE?

9             MS. MAROULIS:  YES, YOUR HONOR.

10            WE MADE REPRESENTATIONS IN OUR INITIAL

11     PATENT RULES DISCLOSURES UNDER 3-4 THAT THE SOURCE

12     CODE WILL BE AVAILABLE TO APPLE UPON THE PROTECTIVE

13     ORDER CONCLUSION.

14            WE'VE HAD AN UNUSUALLY DIFFICULT TIME

15     HERE NEGOTIATING THE PROTECTIVE ORDER BETWEEN THE

16     SIDES AND WE HAVE BEEN WAITING FOR THE PROTECTIVE

17     ORDER.  BUT SEEING HOW THE PROTECTIVE ORDER IS NOT

18     YET COMPLETE WE STARTED OFFERING SOURCE CODE WHILE

19     IT'S STILL BEING NEGOTIATED.

20            THE COURT:  SINCE YOU BROUGHT UP THE

21     PROTECTIVE ORDER, ARE YOU SAYING -- I WILL

22     APOLOGIZE WITH ANY PROBLEMS WITH THE COURT.  YOU

23     HAVE NOT ALL SUBMITTED A PROTECTIVE ORDER TO ME.

24            MS. MAROULIS:  NO, YOUR HONOR.

25            WE HAVE BEEN OPERATING UNDER THE INTERIM

1    PROTECTIVE ORDER AND WE GENERALLY PRODUCED VERY

2    HIGHLY CONFIDENTIAL INFORMATION PURSUANT TO IT.

3            SOURCE CODE IS A BIT DIFFERENT, SO WE

4    NEGOTIATED A FAIRLY ROBUST PROVISION UNDER WHICH

5    BOTH SIDES WILL BE PRODUCING TO EACH OTHER CODE.

6            THERE HAS BEEN SOME SOURCE CODE PRODUCED

7    BY SAMSUNG IN CONNECTION TO THE INVENTOR

8    DEPOSITIONS, SO THAT'S OLD, HISTORIC SOURCE CODE,

9    SO NOT THE SAME CONFIDENTIALITY ISSUES NECESSARILY

10   IN PLAY.

11           THE COURT:  SO IT WOULD SEEM TO ME THAT

12   GETTING THAT PROTECTIVE ORDER ISSUE RESOLVED IS ONE

13   OF THE HIGHEST PRIORITIES IF WE ARE TALKING ABOUT

14   CODE GETTING PRODUCED IN ADVANCE OF DEPOSITIONS; IS

15   THAT FAIR?

16           MS. MAROULIS:  IT IS, YOUR HONOR.

17   IT'S SUBJECT OF THE NEGOTIATIONS.  YOU PROBABLY

18   SURMISED FROM OUR PAPERS WE HAVE A WEEKLY MEET AND

19   CONFER CALL THAT LASTS BETWEEN THREE AND SIX HOURS.

20   IT'S BEING DISCUSSED VERY ACTIVELY AND WE ARE VERY

21   CLOSE.

22           THE COURT:  ALL RIGHT.

23           THOSE ARE THE QUESTIONS I HAD.  UNLESS

24   YOU HAVE ANYTHING FURTHER, I WILL HEAR FROM

25   MR. JACOBS AND WE WILL COME BACK AND TALK ABOUT

1    YOUR NEGOTIATIONS.

2              ANY REBUTTAL, MR. JACOBS?

3              MR. JACOBS:  YES, YOUR HONOR.

4              I THINK THERE'S A FALSE SYMMETRY,

5    YOUR HONOR, BEING ADVANCED.  WE HAVE MADE ENORMOUS

6    PRODUCTIONS IN THE PRELIMINARY INJUNCTION PHASE.

7              THEY HAVE MADE A TINY PRODUCTION.  THIS

8    IS A PROBLEM OF SAMSUNG'S OWN MAKING FOR NOT HAVING

9    GOTTEN TO IT AND FOR HAVING ENGAGED IN DILATORY

10   TACTICS.

11             WE SAW AN EXAMPLE OF IT JUST NOW.

12   THERE'S NO EXCUSE FOR US NOT HAVING GOTTEN THEIR

13   SOURCE CODE UNDER THE INTERIM PROTECTIVE ORDER.

14             AND THE FACT THAT THERE'S A COMPLEX

15   PROTECTIVE ORDER GOING ON, COMPLEX NEGOTIATION IS

16   NO EXCUSE FOR THAT ONCE WE SAID WE REALLY NEED IT.

17   MAYBE WHILE WE WERE TALKING EARLIER, BUT ONCE WE

18   SAY WE NEED IT, WE NEED IT.

19             AS FOR APPLE'S PRODUCTION, THERE'S A

20   MESSAGE FROM WILMER HALE TO SAMSUNG DATED

21   DECEMBER 6TH THAT SAYS, THE SOURCE CODE WE ARE

22   PREPARED TO PRODUCE IT AND HERE'S HOW WE ARE GOING

23   TO PRODUCE IT, AND IT'S ALL OUT THERE FOR THEM.

24             SO WE HAVE, THIS IS THE SOURCE CODE,

25   THAT'S THE CORRESPONDING SOURCE CODE, THE

1    DEFENDER'S SOURCE CODE.

2            THE COURT:  JUST SO THAT I UNDERSTAND

3    YOUR POINT COMPLETELY, ARE YOU TELLING ME THAT

4    BECAUSE OF THIS PROTECTIVE ORDER ISSUE, YOU HAVE

5    NOT HAD ANY ACCESS TO SOURCE CODE FROM SAMSUNG?

6            I'M STILL UNCLEAR ON THAT.

7            MR. JACOBS:  ESSENTIALLY, THAT'S CORRECT.

8            THESE FILES THAT WE WERE BOTH REFERRING

9    TO OF HISTORICAL NATURE.  BUT IN TERMS OF TOUCHWIZ,

10   IN TERMS OF THE CURRENT SAMSUNG CELL PHONE

11   OPERATING SYSTEM, WE HAVE NOT HAD ACCESS.

12           THE COURT:  THE TOUCHWIZ, IS THAT THE UI

13   LAYER?

14           MR. JACOBS:  EXACTLY.

15           AND I DON'T MEAN BY THAT TO BE LIMITING,

16   I THINK OUR REQUESTS SPEAK FOR THEMSELVES AND

17   THERE'S BEEN PLENTY, YOUR HONOR, OF MEET AND

18   CONFER.

19           IF ANYTHING WAS CONVEYED TO YOU IN THE

20   PILE OF PAPERS YOU GOT, IT'S BEEN THERE'S LOTS OF

21   DISCUSSIONS, LOTS OF EFFORTS TO WORK IT OUT.

22           WE REACHED OUR LIMIT IN TWO WAYS.  WE

23   REACHED OUR TIME LIMIT, WE JUST HAVE TO GET THIS

24   STUFF QUICKLY.  AND WE REACHED OUR LIMIT WHERE WE

25   STARTED MEASURING WHAT WE HAD DONE AS AGAINST WHAT

1    SAMSUNG HAD DONE.

2              AND THAT ASYMMETRY JUST STARTED TO JUMP

3    OUT AT ALL OF US.

4              THE COURT:  I CONFESS I HAVE NOT REVIEWED

5    THE INTERIM PROTECTIVE ORDER RECENTLY, BUT I

6    BELIEVE UNDER THE TERMS OF THAT ORDER THERE'S A

7    PROVISION FOR SOURCE CODE.

8              MR. JACOBS:  EXACTLY.

9              THE COURT:  OKAY.  ALL RIGHT.

10             ANYTHING FURTHER?

11             MR. JACOBS:  SO THAT'S THE ESSENCE OF IT,

12   YOUR HONOR.

13             IN TERMS OF TIME, IF WE -- IF THIS MOTION

14   WERE NOT NECESSITATED BY A PATTERN THAT WE SAW OF

15   COMMITMENTS, BUT NOT REAL HARD COMMITMENTS, THEN WE

16   WOULD HAVE MORE SYMPATHY FOR SAMSUNG.

17             WE DO KNOW THERE ARE ISSUES COMING BACK

18   OUR WE WAY, BUT WE THINK WE HAVE MOVED HEAVEN AND

19   EARTH TO MEET TIME DEADLINES AND WE DON'T SEE THAT

20   ON THEIR SIDE.

21             THE COURT:  IN THE E-MAIL, HOW MANY

22   CUSTODIANS ARE AT ISSUE HERE?

23             MR. JACOBS:  I THINK WE HAD A GOOD

24   DISCUSSION ABOUT CUSTODIANS AND I DON'T KNOW THE

25   ANSWER BUT I DON'T THINK THAT'S THE NATURE OF THE

```
 1    DISPUTE.  I KNOW YOU'RE INTERESTED IN IT FOR OTHER

 2    REASONS, BUT I DON'T THINK --

 3              THE COURT:  WE ARE TALKING ABOUT A DOZEN,

 4    A THOUSAND, YOU ALL HAD A LOT OF FOLKS WHO KNOW

 5    STUFF.

 6              MR. HUNG:  IT'S CERTAINLY IN THE DOZENS,

 7    I BELIEVE IT'S THE HIGH DOZENS; IS THAT FAIR?

 8              MS. MAROULIS:  I THINK IT WOULD BE AROUND

 9    50 PROBABLY.

10              THE COURT:  SOMEWHERE IN THAT RANGE?

11              ALL RIGHT.  IS THERE ANYTHING ELSE YOU

12    WANT TO ADD, MR. JACOBS?

13              MR. JACOBS:  WELL, THERE'S SOME SPECIFIC

14    ISSUES THAT SAMSUNG RAISED.

15              I THINK THEY ARE WELL BRIEFED AND I WOULD

16    BE SURPRISED IF YOU WANTED TO HEAR VERY GRANULAR

17    ARGUMENT ABOUT INDIVIDUAL ISSUES.

18              BUT LIMITING TO U.S. PRODUCTS, WHEN THE

19    PRODUCTS ARE SOLD ON AN INTERNATIONAL BASIS AND

20    MAYBE JUST LABELED AND TAILORED FOR A PARTICULAR

21    MARKET, THAT'S UNACCEPTABLE.  THAT WOULD BE A HUGE

22    CARVE OUT FROM SAMSUNG'S DEVELOPMENT ACTIVITY.

23              THIS PRODUCT SHIPPED IN THE UNITED STATES

24    MAY BE A VERSION OF THIS PRODUCT THAT WAS SHIPPED

25    IN KOREA OR AUSTRALIA OR THE NETHERLANDS.  THE
```

1    COPYING MAY HAVE BEEN DONE FOR THE PRODUCT IN MY

2    LEFT HAND AND THEN REFLECTED IN THE COPY IN MY

3    RIGHT HAND.

4            THE COURT:  IF YOUR THEORY IS THAT

5    THERE'S A SUBSTANTIAL RELATIONSHIP THAT JUSTIFIES

6    DISCOVERY WITH RESPECT TO EACH OF THOSE PRODUCT

7    VERSIONS, DO YOU NEED TO HAVE DISCOVERY AS TO ALL

8    THOSE PRODUCT VERSIONS IN ORDER TO PROVE UP YOUR

9    THEORY?  DO YOU SEE WHAT I'M GETTING AT?

10           IT SEEMS TO ME IF WHAT YOU ARE SAYING IS,

11   THERE MAY BE A DUTCH VERSION OF THIS PRODUCT THAT

12   SHEDS LIGHT ON ISSUES CONCERNING THE U.S. VERSION,

13   OF COURSE IT'S THE U.S. VERSION THAT'S ACCUSED,

14   RIGHT?  WHAT DO YOU NEED THE DUTCH VERSION FOR?

15   I'M STRUGGLING WITH THAT.

16           MR. JACOBS:  WELL, IF THE DUTCH VERSION

17   WAS AFTER THE U.S. VERSION THEN NO NEW COPYING

18   WOULD HAVE SHOWN UP IN THE U.S. VERSION BY VIRTUE

19   OF BEING DERIVED FROM THE DITCH VERSION.

20           BUT IF THE KOREAN VERSION -- THE U.S. IS

21   NOT THE FIRST MARKET TO GET THE PRODUCTS WHEN

22   SAMSUNG RELEASES.  SO IF YOU SAY THE KOREAN VERSION

23   IS THE ONE THAT SAMSUNG WAS DEVELOPING OR TESTING

24   ON ITS CONSUMERS TO SEE HOW THEY -- WHAT APPLE

25   FEATURES THEY WERE MISSING, LET'S SAY, WHICH IS THE

1   KIND OF THING THAT COULD SHOW UP IN THE DOCUMENT,

2   BELIEVE ME, THEN WE WOULD NEED THE DOCUMENTATION OF

3   HOW THE KOREAN VERSION WAS DEVELOPED.

4           THE COURT:  IS THERE ANY KIND OF

5   AGREEMENT WE COULD FORGE HERE THAT FOR CERTAIN

6   PHONES OR TABLETS, THE U.S. WAS THE PRIMARY.

7           OR, YOU KNOW, IN OTHER WORDS, DOES THIS

8   ISSUE IMPLICATE THE ENTIRE SET OF ACCUSED PRODUCTS

9   OR THERE ARE SPECIFIC PRODUCTS OR VERSIONS THAT ARE

10  MORE PARTICULARLY IMPACTED BY THIS REALITY THAT

11  AMERICA DOESN'T ALWAYS GET THE FIRST VERSION OF THE

12  PRODUCT.

13          MR. JACOBS:  I THINK IT'S ALMOST ALWAYS

14  THE CASE THAT THE UNITED STATES HAS NOT BEEN THE

15  FIRST.

16          THE COURT:  WE ARE ALWAYS SECOND OR

17  THIRD.

18          MR. JACOBS:  I'M JUST DOING A MENTAL

19  CHECK LIST, YOUR HONOR, THIS ISN'T A REPRESENTATION

20  BUT A MENTAL CHECK LIST OF WHAT WE'VE SEEN AND HOW

21  THESE PRODUCTS ROLL OUT.

22          ON THE OTHER HAND, I'D BE SURPRISED IF

23  ZIMBABWE WAS THE FIRST MARKET.

24          THE COURT:  KOREA AND EUROPE ARE

25  OBVIOUSLY VERY IMPORTANT MARKETS.

1          MR. JACOBS:  KOREA, JAPAN, AUSTRALIA,

2     EUROPE ARE CRITICAL.

3          THE COURT:  OKAY.  ALL RIGHT.

4          THANK YOU, MR. JACOBS.

5          ALL RIGHT.  MS. MAROULIS, LET'S TURN TO

6     YOUR MOTIONS.

7          I WOULD LIKE TO START WITH THE MOTION

8     WITH RESPECT TO DOCUMENTS AND ANSWERS.

9          MS. MAROULIS:  YES, YOUR HONOR.

10          MAY I MAKE ONE BRIEF POINT ABOUT

11     MR. JACOBS'S REBUTTAL?

12          THE COURT:

13          MS. MAROULIS:  NEITHER SIDE HAS PRODUCED

14     SOURCE CODE TO EACH OTHER, JUST SO IT'S CLEAR.

15     NEITHER SIDE HAS.

16          THE COURT:  OTHER THAN THE HISTORICAL

17     CODE.

18          MS. MAROULIS:  BOTH SIDES HAVE PRODUCED

19     SMALL AMOUNTS OF HISTORICAL CODE.

20          TURNING TO SAMSUNG'S MOTION, THERE WERE

21     THREE DIFFERENT CATEGORIES RAISED IN OUR PAPERS,

22     AND I'M PLEASED TO REPORT THAT ONE OF THEM SEEMS TO

23     HAVE BEEN RESOLVED.

24          SO WITH RESPECT TO THE UTILITY DOCUMENTS

25     THAT WE ASKED FOR IN CONNECTION WITH THE CLAIMS

1    CONSTRUCTION, JUST YESTERDAY APPLE SENT US A LETTER

2    SAYING THAT THEY WILL PRODUCE THE SUPERCLOCK AND A

3    MAC CODE THAT WE HAVE BEEN ASKING FOR.

4            AND ASSUMING THAT THE CODE WHEN YOU LOOK

5    AT IT ACTUALLY IS THE CODE THEY REPRESENT IT IS, WE

6    DON'T THINK THE COURT NEEDS TO CONCERN ITSELF WITH

7    THAT.

8            THE COURT:  IS THE SUPERCLOCK THE

9    RELEVANT PORTION OF THE 10.0 CODE OR --

10           MS. MAROULIS:  NO, IT'S THE 7.5.

11           THE COURT:  I THOUGHT I WAS WITH YOU, BUT

12   ALL RIGHT.

13           MS. MAROULIS:  YES, YOUR HONOR.  IT

14   APPEARS THAT'S BEEN RESOLVED.

15           WITH RESPECT TO THE PLEADINGS FROM

16   MOTOROLA AND OTHER PRIOR CASES, AGAIN, THEY'VE

17   STARTED PRODUCING THOSE PLEADINGS TO US BUT WOULD

18   LIKE SOME KIND OF CLARIFICATION FROM THE COURT OR

19   FROM THEM THAT THEY HAVE GIVEN US EVERYTHING.

20   BECAUSE THIS IS A VERY DISCREET SET OF DOCUMENTS

21   AND IT'S EASIER FOR THEM TO TELL US WHETHER THEY

22   PRODUCED IT OR NOT.

23           THE COURT:  AND WHEN YOU SAY YOU WANT

24   EVERYTHING FROM THE MOTOROLA LITIGATION MATERIALS,

25   ARE YOU TALKING ABOUT PLEADINGS, BRIEFS,

1   TRANSCRIPTS?

2         MS. MAROULIS:  CORRECT, YOUR HONOR.

3       IT'S WITH RESPECT TO JUST A COUPLE OF PATENTS,

4   IT'S NOT EVERYTHING FROM THE LITIGATION.

5         THE COURT:  YOU ARE JUST LOOKING TO

6   FIGURE OUT WHAT THEY SAID ABOUT THOSE TERMS IN

7   OTHER CASES.

8         MS. MAROULIS:  EXACTLY.

9         AND IN ADDITION TO THAT THEY HAVE

10  REDACTED CERTAIN CONFIDENTIAL INFORMATION OF THIRD

11  PARTIES FROM THAT LITIGATION, BUT WE HAVE AN

12  INTERIM PROTECTIVE ORDER AND THEY HAVE ASKED US TO

13  PRODUCE THIRD PARTY CONFIDENTIAL INFORMATION SUCH

14  AS LICENSES.

15        SO WE BELIEVE IT'S APPROPRIATE FOR THEM

16  TO PRODUCE THAT INFORMATION SUBJECT TO THE HIGHEST

17  LEVEL OF CONFIDENTIALITY OF THE PROTECTIVE ORDER.

18        WITH RESPECT TO THE OTHER CATEGORIES,

19  YOUR HONOR, I THINK MR. JACOBS FAILED TO RAISE IT

20  AS A FOLLOW ON OR VERY DISCREET SET.

21        IT IS A VERY TARGETED MOTION AND THAT IS

22  WHY WE THINK APPLE SHOULD HAVE NO PROBLEM COMPLYING

23  WITH IT BECAUSE WE GAVE THEM A LIST OF THINGS THAT

24  ARE DISCREET BUT CRUCIALLY IMPORTANT TO OUR CASE.

25        AND GIVEN HOW QUICKLY THEY REACTED, FOR

1    EXAMPLE WITH THE SOURCE CODE, AFTER WE FILED THE

2    MOTION WE THINK IT SHOULD BE FAIRLY EASY FOR THEM

3    TO COMPLY WITH OUR REQUESTS.

4            SO TURNING TO THE CATEGORY OF THE DESIGN

5    DOCUMENTS, THAT'S THE MAIN AREA OF OUR MOTION,

6    THERE ARE BASICALLY FOUR DIFFERENT THINGS WE ARE

7    ASKING FOR.

8            ONE IS VERY FAMILIAR TO YOUR HONOR.  IT

9    RELATES TO THE 035 MOCK UP WHICH IS THE PRODUCT

10   TYPE FOR THE '889 DESIGN PATENT.

11           THE COURT:  YOU ARE LOOKING FOR THE CAD

12   FILES.

13           MS. MAROULIS:  WE ARE LOOKING FOR A

14   VARIETY OF THINGS.

15           FIRST OF ALL, IT SHOULD BE A REALLY

16   SIMPLE ISSUE, BUT WE ARE ASKING FOR THE RETURN OF

17   OUR WORK PRODUCT PHOTOS.

18           THE COURT:  THESE ARE THE MEMORY CARDS?

19           MS. MAROULIS:  YES, THE MEMORY CARDS.

20           AS YOUR HONOR RECALLS, ON DECEMBER 2ND

21   YOU WERE ASKED TO RULE ON A MOTION BY APPLE WHEN

22   THEY VIDEO TAPED AN INSPECTION OF ONE OF THE

23   PROTOTYPES WE OFFERED.  AND THEY ARGUED THAT IT'S

24   WORK PRODUCT, AND YOUR HONOR AGREED WITH THAT.

25           YOUR HONOR FURTHER SAID THAT THESE ARE

1    THE RULES THAT APPLY TO BOTH SIDES.

2              SO UNDER THAT RULING AND IN THE GENERAL,

3    MOTIONS OF WORK PRODUCT WE ASKED FOR THE RETURN OF

4    THAT AND APPLE IS REFUSING.

5              THIS SHOULD BE A VERY SIMPLE THING, THEY

6    NEED TO RETURN US THE MEMORY STICK AND THE PHOTOS.

7              THE COURT:  I HAVE TAKE IT YOU HAVE NOT

8    WITHHELD OR OBJECTED TO ANY OF THEIR ATTENTION FROM

9    THEIR INSPECTION?

10             MS. MAROULIS:  THAT'S CORRECT.

11             THE ONLY TIME WE DID OBJECT WE WERE

12   OVERRULED BY YOUR HONOR SO WE COMPLIED.

13             THAT SHOULD BE A SIMPLE ISSUE.

14             OTHER RELATED ITEMS TO THE 035 MOCK UP,

15   ONE IS WE NEED TO SEARCH FOR HIGHER QUALITY PHOTOS

16   OF THIS PRODUCT.

17             A RELATED ISSUE IS VERY IMPORTANT TO US

18   WHICH IS APPLE CONTINUES TO SHIELD THE 035 MOCK UP

19   WITH A SECRECY IN THE PROTECTION OF THE ORDER.

20             HOWEVER, THIS IS THE SAME MOCK UP THEY

21   SUBMITTED TO THE PTO IN THE FORM OF PHOTOS.

22             THIS IS WHAT THEY BASE THEIR PATENT ON.

23   THIS IS WHY THE PATENT OFFICE GAVE THEM THE PATENT.

24   THEY SUBMITTED PHOTOS TO THE PATENT OFFICE AND THAT

25   WAS PART OF THE FILE HISTORY AND PART OF WHAT THE

1    PATENT EXAMINER CONSIDERED.

2              NOW THEIR OBJECTIONS TO DESIGNATING THIS

3    IS THAT OUR PICTURES ARE APPARENTLY MUCH MORE

4    FOCUSED AND CLEAR THAN WHAT THEY SUBMITTED TO THE

5    PATENT OFFICE.

6              BUT WE CAN'T REALLY, SERIOUSLY HAVE THIS

7    CONVERSATION THAT THEY SENT THE BLURRY PICTURES TO

8    THE PATENT OFFICE AND THEREFORE MORE CLEAR, USEFUL

9    EVIDENCE THAT WE COULD SUBMIT TO THE JURY AND TO

10   YOUR HONOR AND TO OTHER PARTS OF THIS CASE, SHOULD

11   BE GRANTED TO US.

12             SO THAT'S AN ISSUE WHERE WE NOT ONLY NEED

13   ADDITIONAL DOCUMENTS FOR THE 035 MOCK UP, BUT WE

14   NEED TO DE-DESIGNATE THE PICTURES THAT WERE OF

15   PUBLIC KNOWLEDGE BECAUSE THEY WERE SUBMITTED IN TO

16   THE PATENT OFFICE IN SOME FORM.

17             THE COURT:  JUST SO I UNDERSTAND YOUR

18   POINT, YOU ARE SAYING THAT THERE ARE ADDITIONAL

19   PICTURES THAT EXIST AND THERE'S NO DISPUTE THE

20   ADDITIONAL PICTURES EXIST; IS THAT RIGHT?

21             MS. MAROULIS:  NO, YOUR HONOR.

22             THE PICTURES WE ARE DISCUSSING IS THE

23   PICTURES WE TOOK OF THE MOCK UP.

24             SO THEY PRODUCED THE MOCK UP FOR

25   INSPECTION, WE TOOK THE PHOTOS AND THE PHOTOS ARE

1    ATTACHED TO THE MOTION.

2              AND YOU WILL SEE THAT IN CONTRAST TO THE

3    PHOTOS THAT WERE SENT TO THE PTO, IT HAS MULTIPLE

4    VIEWS OF THE DEVICE AND MUCH MORE GRANULAR AND THAT

5    IS VERY IMPORTANT TO OUR ARGUMENTS.

6              APPLE IS REFUSING TO DE-DESIGNATE THEM

7    EVEN THOUGH THEY ARE OF THE SAME MOCK UP WHICH THEY

8    SUBMITTED TO THE PTO IN THE PHOTO FORM.

9              AND FINALLY, YOUR HONOR, AS MENTIONED

10   WE'RE SEEKING ADDITIONAL CAD FILES, RECORDS, SHOP

11   RECORDS FROM THE MODEL AND ANYTHING ELSE YOU CAN

12   FIND ON THIS 035 MOCK UP BECAUSE IT GOES DIRECTLY

13   TO THE SCOPE OF THEIR PATENT, AND HOW TO INTERPRET

14   IT AND WHETHER THE SIMILARITY OF THE SAMSUNG

15   DEVICE.

16             THE COURT:  DO YOU HAVE ANY AFFIRMATIVE

17   PROOF OR DEMONSTRATION THAT THESE CAD DRAWINGS OR

18   MODEL SHOP RECORDS EXIST AND THEY ARE NOT BEING

19   PRODUCED?

20             OR IS YOUR COMPLAINT THAT THEY HAVEN'T

21   LOOKED IN THE CORRECT PLACES?

22             MS. MAROULIS:  I THINK OUR COMPLIANT IS

23   MORE IN THE TERMS OF THE SEARCH.

24             ALL RIGHT.  MOVING ON TO OTHER CATEGORIES

25   OF DESIGN DOCUMENTS, THERE ARE QUITE A FEW.

1        I WOULD LIKE A BETTER PRODUCTION OF

2   SKETCHBOOKS THAT WE ALSO DISCUSSED WITH YOUR HONOR

3   SEVERAL MONTHS AGO.

4        THE COPIES THAT WE RECEIVED WERE SEVERELY

5   REDACTED.  AND WHILE WE AGREED THAT THERE SHOULD BE

6   SOME REDACTION OF FUTURE PRODUCTS THAT WE SHOULD

7   NOT BE LOOKING AT, WE INTRODUCED OR DEPOSED VARIOUS

8   WITNESSES AND ONE INVENTOR CONCEDED WE HAD ABOUT 50

9   DIFFERENT SKETCHBOOKS AND ONLY SEVEN PAGES FROM

10  THAT INDIVIDUAL WERE PRODUCED.

11       AND UNLESS HE WAS WORKING WITH

12  REFRIGERATORS OR SOMETHING COMPLETELY DIFFERENT

13  THERE'S GOT TO BE --

14       THE COURT:  WHAT IF HE WAS WORKING ON

15  FUTURE PRODUCTS?

16       WAS HE CLEAR THAT THE 50 BOOKS HE WAS

17  REFERENCING WERE PAST PRODUCTS?

18       MS. MAROULIS:  IT WAS -- I WAS NOT AT

19  THAT DEPOSITION, BUT MY UNDERSTANDING WAS WITH PAST

20  PRODUCTS.

21       THEN FINALLY THERE'S A CATEGORY THAT I

22  WILL TERM "PRIOR ART" AND I CAN SPEAK DIRECTLY TO

23  IT IF YOUR HONOR WOULD LIKE.  IT'S SONY DEVICES,

24  TRIO DEVICES --

25       THE COURT:  THE RAZOR AND THE PHILIPS?

1           MS. MAROULIS:  THE RAZOR AND THE PHILIPS

2    AND BRAINBOX AND APPLE, APPLE CINEMA, THOSE ARE

3    PRETTY SELF EXPLANATORY BECAUSE WE NEED THEM TO

4    SHOW THE INVALIDITY OF APPLE'S PATENTS AND ALSO TO

5    SHOW THE EVOLUTION OF THE DESIGN LANGUAGE THAT

6    WE'RE DISCUSSING IN THIS CASE.

7           THIS IS A BRIEF SUMMARY OF THE PRIOR ART

8    ISSUES.  AND WITH RESPECT TO THE VERY LAST CATEGORY

9    WHICH IS THE TRANSCRIPT FOR THE PRIOR INVENTOR

10   DEPOSITIONS AND PRIOR EMPLOYEE DEPOSITIONS.

11          WE ASKED APPLE TO PRODUCE MANY OF THE

12   TRANSCRIPTS FROM PRIOR LITIGATIONS.  THIS CASE IS

13   DIFFERENT FROM MANY OF THE PATENT CASES BECAUSE IN

14   THE PATENT CASE YOU SAY, OKAY, I WILL PRODUCE YOU

15   TRANSCRIPTS FROM THE SAME PATENT OR FROM SOMETHING

16   SIMILARLY TECHNOLOGICALLY.

17          BECAUSE APPLE PUT AT ISSUE THE LOOK AND

18   FEEL OF THE IPHONE, THE REASON IT'S SUCCESSFUL, WHY

19   PEOPLE BUY IT, HOW IT EVOLVED, THE CONSUMER

20   BEHAVIOR, A LOT WIDER SPECTRUM OF TRANSCRIPTS IS

21   RELEVANT.

22          THE COURT:  AREN'T AT LEAST -- WELL, FOR

23   EXAMPLE, YOU POINT TO THIS MOTION THAT THERE MAY BE

24   ANY NUMBER OF REASONS WHY THE IPHONE IS SUCCESSFUL.

25          ISN'T THAT AN ISSUE IN PRETTY MUCH EVERY

1    PATENT CASE INVOLVING THE IPHONE?

2          MS. MAROULIS:  THAT'S TRUE AS WELL, BUT

3    IT ISN'T JUST LIMITED TO THE PATENT CASES.

4          IF THERE'S A FALSE ADVERTISING CASE THERE

5    COULD BE SOME PRODUCTS LIABILITY CASES WHERE

6    FUNCTIONALITY IS DISCUSSED.  THAT'S WHY THEY SAY WE

7    ARE GOING TO LIMIT IT TO A TECHNOLOGICAL NEXUS.  WE

8    DON'T KNOW HOW TO ASSESS THAT, AND WE WILL ONLY GET

9    THE TRANSCRIPTS THAT DISCUSS THE PATENT --

10         THE COURT:  WELL, HAVE YOU ALL TAKEN A

11   LOOK AT THE CASES THAT HAVE BEEN FILED THAT

12   IMPLICATE THESE PRODUCTS AND TAKEN A FIRST CUT AT

13   THE CASES THAT YOU ARE PARTICULARLY INTERESTED?

14         MS. MAROULIS:  WE SUGGESTED TO APPLE THAT

15   THEY PRODUCE TO US A LIST OF, AND THIS WOULD BE

16   RECIPROCAL AS WELL, A LIST OF DEPOSITION

17   TRANSCRIPTS IMPLICATED THERE, BECAUSE IT'S POSSIBLE

18   THE MAJORITY OF CUSTODIANS HAVE NEVER BEEN DEPOSED

19   OR VERY FEW OF THEM HAD BEEN.  THEY REJECTED THAT

20   PROPOSAL.

21         IT IS DIFFICULT TO DETERMINE FOR PUBLIC

22   SEARCH OF PACER AND SIMILAR DATABASES, WHAT IS AT

23   STAKE AND WHAT TECHNOLOGY IS AT STAKE.  IT'S

24   IMPOSSIBLE TO DO IT VIA PATENT NUMBER SEARCH, BUT

25   NOT THE --

1          THE COURT:  WELL, I GUESS WHAT I WAS

2     THINKING OF IS WHY NOT JUST LOOK FOR ALL OF THE --

3     THE COMPLAINTS ARE CERTAINLY MATTERS OF PUBLIC

4     RECORD, SO WHY NOT IDENTIFY, YOU KNOW, A UNIVERSE

5     OF APPLE CASES, CASES IN WHICH APPLE IS A DEFENDANT

6     IN WHICH THE PRODUCTS HAVE BEEN ACCUSED OF

7     INFRINGEMENT TO START, AND REVIEW THE COMPLAINTS

8     AND YOU COULD PRETTY QUICKLY UNDERSTAND WHAT

9     PATENTS ARE AT ISSUE AND WHAT FUNCTIONS AND

10    FEATURES WERE BEING PUT IN PLAY BY THOSE CASES;

11    ISN'T THAT ONE WAY OF AT LEAST FOCUSING THE REQUEST

12    A LITTLE BIT?

13          MS. MAROULIS:  YES, YOUR HONOR.  THAT'S

14    DEFINITELY ONE OF THE WAYS.

15          THE COURT:  AND THIS WOULD APPLY TO BOTH

16    SIDES.  I'M JUST BRAIN STORMING.

17          OKAY.  ALL RIGHT.

18          MS. MAROULIS:  SO THIS, IN SHORT, IS THE

19    SUBSTANCE OF OUR MOTION, AND I'M SURE YOUR HONOR

20    HAS SOME SPECIFIC QUESTIONS THAT I'M HAPPY TO

21    ANSWER, BUT I'M MINDFUL OF THE CRIMINAL CALENDAR.

22          THE COURT:  WELL, I THINK WE STILL HAVE A

23    LITTLE BIT OF TIME, SO LET ME HEAR FROM MR. JACOBS

24    OR ONE OF HIS COLLEAGUES THEN I'LL GIVE YOU A

25    CHANCE FOR REBUTTAL ON THIS ISSUE.

41

1          MR. JACOBS:  SO LET ME BREAK IT DOWN BY

2    RELEVANCE AND BY CONFIDENTIALITY.

3          ON THE TRANSCRIPT ISSUE IT'S A RELEVANCE

4    QUESTION.  WE DREW A REASONABLE CUT, WE SAID

5    TECHNOLOGICAL NEXUS.

6          APPLE IS IN LITIGATION FOR A VARIETY OF

7    REASONS.  WITNESSES MIGHT BE DEPOSED FOR EMPLOYMENT

8    CASES, THEY MIGHT BE DEPOSED IN A PRODUCT DEFECT

9    CASES WHERE IT'S JUST REMOTE.

10         WE THINK WE MADE A REASONABLE RELEVANCE

11   CUT THERE AND WE WOULD ASK FOR YOU TO SUPPORT IT.

12         SIMILARLY, WE HAVE -- IN SOME CASES THERE

13   ARE REQUESTS WHILE IF NARROWLY CONSTRUED MIGHT BE

14   THOUGHT OF AS TARGETED, THEY GO OFF INTO

15   IRRELEVANCY.

16         SO FOR EXAMPLE ON THE 035 AND IPAD ON

17   MODEL SHOP ORDERS AND OTHER RECORDS, WELL WHAT DOES

18   "OTHER RECORDS" MEAN?  WHAT'S THE RELEVANCE OF

19   OTHER RECORDS WHEN WE ARE TALKING ABOUT A CLAIM

20   THAT A DESIGN PATENT IS INVALID FOR SOME REASON.

21         I SHOULD PAUSE FOR A MINUTE.

22         ONE OF THE BENEFITS OF THE PRELIMINARY

23   INJUNCTION ORDER THAT WE GOT IS I THINK THE ISSUES

24   HAVE BECOME FOCUSED.

25         WE KNOW HOW TO ASSESS VALIDITY, WE KNOW

1      HOW TO ASSESS INFRINGEMENT.  NOT NOW BETWEEN THE

2      BRIEFS OF THE PARTIES, BUT THE JUDGE HAS LAID THAT

3      OUT FOR US.

4              ONE OF THE IMPACTS OF THAT IS I THINK IT

5      HAS NARROWED ON THE VALIDITY SIDE THE SCOPE OF

6      RELEVANT MATERIAL.

7              SO LET'S TAKE THE 035, FOR EXAMPLE, WHICH

8      IS AGAIN KIND OF A MIX OF RELEVANCE AND

9      CONFIDENTIALITY.

10             AS WE NOTED IN OUR BRIEF, THE EXAMINER

11     SPECIFICALLY DISCLAIMED THE RELEVANCE OF THE

12     PHOTOGRAPHS THAT WE SUBMITTED.

13             THEY WANT NOW TO DE-DESIGNATE AS

14     CONFIDENTIAL THE PHOTOGRAPH THEY TOOK OF THE ACTUAL

15     MODEL.  WHY?  BECAUSE THEY ARE MORE DETAILED.

16             WHAT'S THE POSSIBLE RELEVANCE OF MORE

17     DETAILED INFORMATION THAN THAT WHICH WAS SUBMITTED

18     TO THE PATENT OFFICE WHEN THE EXAMINER SAID EVEN

19     THAT WHICH YOU SUBMITTED TO THE PATENT OFFICE IS

20     NOT RELEVANT.

21             WE TAKE THESE MODELS AND THEIR

22     CONFIDENTIALITY VERY SERIOUSLY.  WHEN YOU MIX THE

23     LIMITED RELEVANCE WITH THE CONFIDENTIAL TREATMENT

24     WE GIVE TO THOSE MODELS, THEN IT'S CLEAR THAT THEY

25     SHOULD BE KEEPING THE PHOTOGRAPHS OF THE MODELS AS

43

1    CONFIDENTIAL.

2            SEGWAY FOR A MINUTE, CAN'T QUITE FIGURE

3    OUT WHY THEY NEED THESE DE-DESIGNATED, BECAUSE THEY

4    WANT TO USE THEM IN FOREIGN PROCEEDINGS?  I'M NOT

5    SURE THAT'S ALL THAT PERMISSIBLE HERE TO USE THIS

6    VEHICLE FOR THAT, BUT WE COULD WORK SOMETHING OUT

7    SO THAT AS LONG AS THEIR CONFIDENTIALITY IS

8    MAINTAINED, THAT'S OUR CORE INTEREST.  WE ARE NOT

9    TRYING TO BLOCK THEM FROM DEVELOPING THE CASE.

10           SO ON CLICKING THROUGH THEN, THE LIST TO

11   MAKE SURE I'M COMPLETE, WE HAVE REALLY TAKEN CARE

12   OF A LOT OF THESE THINGS.

13           SO ON THE MOTOROLA DOCUMENTATION, IT'S

14   EITHER PRODUCED OR IT DOESN'T EXIST.  SO WE

15   PRODUCED EVERYTHING WITH THE ONLY EXCLUSION BEING

16   REDACTIONS FOR GOOGLE CONFIDENTIAL INFORMATION IN

17   THE MOTOROLA TRANSCRIPTS.

18           IF YOU ORDER US TO PRODUCE REGARDLESS OF

19   THE REDACTIONS, OF COURSE WE WILL COMPLY WITH YOUR

20   ORDER BUT WE'VE GONE TO GOOGLE AND ASKED THEM FOR

21   PERMISSION TO PRODUCE THE REDACTED --

22           THE COURT:  WHAT HAVE THEY SAID?

23           MR. JACOBS:  -- PORTION.

24           I THINK WE ARE STILL WAITING FOR AN

25   ANSWER.

1           THE COURT:  I SHOULD HAVE ASKED THEM.

2           ALL RIGHT.

3           MR. JACOBS:  I THINK SOME OF THIS

4    MS. MAROULIS CONCEDED.

5           ON MAC OS 10, ALREADY PRODUCED.

6    SUPERCLOCK, ALREADY PRODUCED.  MEMORY CARDS, I'M

7    GOING TO LET MR. HUNG HANDLE BECAUSE HE WAS ON THE

8    PHONE WITH YOU AND THIS WAS DISCUSSED BEFORE.

9           ON THE 035, ASIDE FROM THE CONFIDENTIAL

10   ISSUE, THEY ARE ASKING FOR "OTHER RECORDS AND CAD

11   DRAWINGS."

12          AND WE ARE GOING TO TRY TO TIE THE CAD TO

13   THE 035, AND WE WILL TRY TO TELL THEM AS BEST WE

14   CAN, YES, THIS IS THE CAD FOR THIS MODEL.

15          MR. JACOBS:  SKETCHBOOKS.

16          SO THIS IS PRETTY IMPORTANT.  WE HAVE

17   AGREED THAT WE ARE GOING TO TRY TO MAKE THE

18   SKETCHBOOK PRODUCTION MORE COMPLETE FROM THE

19   STANDPOINT OF DATES AND DATE IDENTIFICATION.

20          BUT YOU RULED ON THIS IN SEPTEMBER AND

21   SAID THAT AS TO IRRELEVANT PRODUCTS WE DON'T NEED

22   TO PRODUCE THOSE SKETCHES SO WE WOULD CONTINUE TO

23   REDACT.

24          AND WE THINK THAT'S IMPORTANT AND

25   CONSISTENT WITH THE DIRECTION THAT YOU HAVE GIVEN

1     US.

2              ON THE SONY TRIO AND THE RAZOR, WE ARE

3     LOOKING, THESE ARE OLD PROJECTS.  WE'RE LOOKING.

4     WE WILL DO OUR BEST.

5              ON THE 1989 FLAT PANEL DISPLAY BRAINBOX,

6     IT'S 20 YEARS OLD BUT WE ARE LOOKING.

7              ON APPLE CINEMA DISPLAY, THIS IS BACK TO

8     A RELEVANCE ISSUE.  THEY ASK FOR ALL DOCUMENTS

9     ABOUT CINEMA DISPLAY.

10             I MEAN, THAT'S A PRODUCT.  THE ONLY

11    RELEVANCE IS WHAT WAS MADE AVAILABLE TO THE PUBLIC

12    AS A CLAIMED INVALIDITY PRIOR ART REFERENCE.  SO

13    WAY TOO EXTREME IN TERMS OF WHAT THEY ARE SEEK.

14             WE PROPOSED TO PRODUCE THE CAD OR THE

15    FINAL DESIGN ON THAT, SO THEY WILL HAVE THE CAD.

16             I TALKED ABOUT THE DEPOSITION

17    TRANSCRIPTS, I THINK I COVERED IT EXCEPT FOR THE

18    MEMORY CARDS.

19             THE COURT:  MR. HUNG, DO YOU WANT TO

20    ADDRESS THE MEMORY CARD?

21             MR. HUNG:  SURE.

22             JUST TO CLARIFY ONE THING.

23             IN TERMS OF ASKING GOOGLE FOR PERMISSION

24    TO PRODUCE THE TRANSCRIPTS, WE ASKED, SIMPLY

25    UNDERSTAND THAT QUINN EMANUEL DOES REPRESENT

1    GOOGLE.  WE DID SAY, CAN YOU ASK YOUR CLIENT?  WE

2    SAID, YOU SHOULD BE ASKING THE TWO PARTIES GOOGLE

3    AND I BELIEVE ATMEL.

4         THEY THEN WENT BACK AND SAID, NO YOU

5    SHOULD DO IT.  I THINK THAT'S THE CURRENT STATUS.

6    WE DO HAVE TO DO IT, THAT'S IN OUR COURT, BUT WE

7    HAVEN'T DONE IT YET.

8         TO CLARIFY THE ISSUE ON MEMORY CARDS --

9         THE COURT:  WOULD YOU AGREE, MR. HUNG, IF

10   I JUST SIMPLY ORDERED IT THERE WOULD BE NO PROBLEM?

11        MR. HUNG:  IN TERMS OF THE TRANSCRIPTS?

12        THE COURT:  WITH RESPECT TO GOOGLE'S

13   CONFIDENTIALITY CLAIMS.

14        MR. HUNG:  I THINK THAT'S RIGHT.    WE

15   WOULD HAVE TO INFORM THEM OF THE ORDER IN CASE THEY

16   WANTED TO SEEK PROTECTION.  I THINK THAT'S RIGHT.

17        MR. HUNG:  SO ON THE MEMORY CARD ISSUE, I

18   THINK THERE'S SOME CONFUSION GOING ON BECAUSE WHEN

19   WE LAST SPOKE THE ISSUE WAS THIS DIAMOND TOUCH

20   WASN'T A PROTOTYPE IT WAS A PUBLIC PIECE OF PRIOR

21   ART, SOMETHING YOU COULD BUY ON EBAY IF IT WAS

22   STILL CARRIED ON EBAY.

23        THE ISSUE WITH THE 035, IT'S A PRIVATE

24   DOCUMENT, IT'S A CONFIDENTIAL MODEL.  WE'VE ASKED

25   THEM FOR COPIES OF OUR MODELS, IN THE BRIEF WE

1    ASKED THEM FOR CAD FILES AND WE WOULDN'T PURPORT TO

2    GO TO KOREA AND INSPECT THE MODEL AND TAKE A

3    VIDEOTAPE AND TAKE THE PICTURES AND NOT SHARE IT

4    WITH THEM.  THAT'S THE POINT OF THE PROTECTIVE

5    ORDER.

6            WHEN WE LAST SPOKE YOU SAID, WHAT'S GOOD

7    FOR THE GOOSE IS GOOD FOR THE GANDER, AND IT

8    APPLIES BOTH WAYS.

9            YOU EMPHASIZE THE WORK PRODUCT ISSUE.  WE

10   ARE NO LONGER COMING CLOSE TO HAVING SOMEONE

11   SITTING IN THE ROOM MONITORING, WE AGREE WORK

12   PRODUCT TO GET PROTECTIVE WORK PRODUCT.

13           THE ISSUE COMES DOWN TO WHEN YOU TAKE

14   PHOTOGRAPHS OR VIDEOS OF WHATEVER ELSE YOU WANT OF

15   A CONFIDENTIAL DOCUMENT PROTECTED BY THE PROTECTIVE

16   ORDER, DOES THAT HAVE TO BE PRODUCED?

17           AND YOU DID SAY AT THE END OF THE LAST

18   HEARING WE SHOULD GO AND MAKE SURE IT'S COVERED BY

19   THE PROTECTIVE ORDER.

20           WHAT THE PROTECTIVE ORDER SAYS IS DURING

21   AN INSPECTION IT'S DESIGNATED CONFIDENTIAL, THEN

22   YOU PRODUCE AND YOU BATES LABEL IT.

23           THE IMPLICATION IS YOU REVIEW AND YOU

24   PRODUCE, THAT WAY EVERYONE CAN TRACK AND KNOWS WHAT

25   HAPPENED TO IT.

1          THE COURT:  IT WOULDN'T SEEM TO DESTROY

2     THE WORK PRODUCT PROTECTION THAT IS ATTACHED TO IT,

3     WOULDN'T IT?

4          MR. HUNG:  BUT THAT'S ALWAYS THE CASE

5     WHEN YOU REVIEW SOURCE CODE.  FOR EXAMPLE, OR WHEN

6     YOU REVIEW IN THIS CASE CAD DRAWINGS.

7          THE PURPOSE BEHIND THE PROTECTIVE ORDER

8     IS IT'S AN AGREED ORDER, WHETHER AN INTERIM ORDER

9     OR THE ACTUAL ENTERED ORDER.  YOU WANT TO PROTECT

10    THE CONFIDENTIALITY AND IT'S SECRET STUFF.  YOU

11    DON'T WANT TO ALLOW SOMEONE TO WALK IN AND MAKE A

12    VIDEO AND NOT SHOW YOU WHAT THEY DID, STORE IT

13    SOMEWHERE WHERE YOU DON'T EVEN KNOW HOW MANY COPIES

14    THEY MADE OR WHAT THEY MADE.

15          SO THAT'S WHY THE INTERIM PROTECTIVE

16    ORDER, THE ORDER WE PROPOSED OR WE ARE GOING TO

17    PROPOSE, WOULD HAVE A PROVISION WHERE WE TREAT IT

18    LIKE SOURCE CODE.  THEY INSPECT IT, WE BATES LABEL,

19    IT WE SHARE IT.

20          PUBLIC PRIOR ART, AGREED, TOTALLY

21    DIFFERENT.  IF WE'RE GOING TO LOOK AT DIAMOND TOUCH

22    AGAIN, THEY SHOULD HAVE TO GIVE US THE MEMORY CARD.

23          IF THEY WERE GOING TO LOOK AT ONE OF OUR

24    ITEMS ON THE DEFENSIVE CASE, WE SHOULDN'T BE IN THE

25    ROOM WHEN THEY'RE LOOKING AT THE PUBLIC ITEM AS

49

1    WELL IF WE HAVE THE ONLY COPY.

2              SO THAT'S OUR VIEW ON THAT ISSUE.

3              THE COURT:  THANK YOU, MR. HUNG.

4              ANY REBUTTAL ON THIS MOTION,

5    MS. MAROULIS?

6              MS. MAROULIS:  BRIEFLY, YOUR HONOR.

7              LET'S START FROM THE BACK OF WHAT

8    MR. HUNG DISCUSSED.

9              APPLE DID INSPECT SAMSUNG PROTOTYPES AND

10   TOOK A NUMBER OF PICTURES AND NEVER GAVE US A COPY.

11             THE DISTINCTION THAT YOUR HONOR DREW IN

12   THE DECEMBER 2ND ORDER WAS BETWEEN WORK PRODUCT AND

13   NOT.  NOT BETWEEN CONFIDENTIAL AND NONCONFIDENTIAL.

14             SO WE BELIEVE THAT'S THE DISTINCTION THAT

15   APPLIES AND THE SAME RULE SHOULD APPLY TO BOTH

16   PARTIES, AND THAT IS WHY APPLE NEEDS TO RETURN OUR

17   MATERIALS.

18             SECOND POINT RELATES TO DESIGNATIONS AS

19   WELL, AND THAT'S THE POINT MR. JACOBS RAISED WHICH

20   IS:  WHY DO WE NEED TO DE-DESIGNATE THE PHOTOS OF

21   THE 035.

22             ONE OF THE REASONS IF IT'S NOT

23   CONFIDENTIAL IS WE CAN SHARE IT WITH THE CLIENT TO

24   HELP US FIND MORE PRIOR ART.  WE CAN SHARE WITH OUR

25   EXPERT, AND AS WE WILL DISCUSS IN A MINUTE IN A

1    DIFFERENT MOTION, THEY ARE BLOCKING OUR EXPERT'S

2    ACCESS TO CONFIDENTIAL INFORMATION.

3              SO HAD THIS INFORMATION ABOUT 035 MOCK UP

4    BEEN PROPERLY DESIGNATED AS PUBLIC, WE COULD HAVE

5    SHOWN IT TO MR. SHERMAN LONG AGO WHILE THIS MOTION

6    WAS PENDING.

7              THE COURT:  OR I CAN GRANT THE OTHER

8    MOTION AND HE COULD GET ACCESS THAT WAY.

9              MS. MAROULIS:  THAT IS ALSO TRUE, BUT WE

10   CANNOT OBVIOUSLY SHOW IT TO SAMSUNG EVEN THOUGH

11   IT'S THE SAME PHOTO JUST WITH DIFFERENT ANGLES

12   THAT'S SUBMITTED TO THE PATENT OFFICE.

13             FINALLY, MR. JACOBS MADE A STATEMENT THEY

14   WERE LOOKING FOR THE VARIOUS CATEGORIES THAT ARE

15   LISTED IN OUR MOTION, SAME IS TRUE FOR US.

16             TO DATE, THEY DID NOT PRODUCED AND NOT

17   AGREED ON VARIOUS CATEGORIES OTHER THAN WHAT I

18   STATED AT THE OUTSET OF MY ARGUMENT WHICH IS THE

19   SOURCE CODE FOR THE TWO PRIOR ART DEVICES AND

20   PLEADINGS FROM THE MOTOROLA LITIGATION.

21             SO THE REST IS SUBJECT TO THE MOTION.

22             THE COURT:  ALL RIGHT.

23             SHALL WE TURN OUR LAST FEW MINUTES TO

24   YOUR SECOND MOTION WITH RESPECT TO MR. SHERMAN?

25             I'M SORRY, MR. HUNG, IF YOU WANT TO TAKE

1    A MINUTE, I WILL GIVE YOU A MINUTE.

2              MR. HUNG:  CAN I ADD ONE POINT IN TERMS

3    OF THE INSPECTION?

4              TO THE EXTENT THAT WE PREVIOUSLY KEPT AND

5    CAN DID NOT GIVE THEM COPIES OF PHOTOGRAPHS WE TOOK

6    OF SOMETHING THAT'S CONFIDENTIAL, WE'RE HAPPY TO

7    DESTROY AND RETURN IT TO TAKE CARE OF THIS ISSUE.

8              WHAT'S GOOD FOR THE GOOSE IS GOOD FOR THE

9    GANDER.

10             RELATEDLY, BEFORE THE LAST INSPECTION

11   WHEN WE CALLED YOU THERE WAS ANOTHER INSPECTION

12   WHERE THEY DID TAKE A COPY OF OUR MEMORY STICK, SO

13   THAT SHOULD BE GIVEN BACK TO US AS WELL.

14             IT SHOULD APPLY BOTH WAYS, BUT WE THINK

15   THAT PROTECTIONS SHOULD CONTINUE TO APPLY TO

16   CONFIDENTIAL INFORMATION.

17             THE COURT:  LET'S TURN TO THE SECOND OF

18   SAMSUNG'S MOTIONS.

19             MS. MAROULIS:  YOUR HONOR, THE SECOND

20   MOTION WE HAVE IS A MOTION TO ALLOW ACCESS FOR OUR

21   DESIGN EXPERT MR. SHERMAN.  MR. SHERMAN IS AN

22   EXPERT ON THE ISSUES OF PHONE DESIGN WHICH IS

23   CENTRAL TO THIS CASE.

24             HE'S BEING DESIGNATED SOLELY FOR THE

25   PURPOSE OF LOOKING AT THE OUTSIDE HARDWARE LOOK AND

52

1    FEEL OF THE PHONES.  HE SUBMITTED HIS TESTIMONY IN

2    CONNECTION WITH THE PRELIMINARY INJUNCTION

3    PROCEEDINGS AND JUDGE KOH CREDITED HIS TESTIMONY.

4              WE STRONGLY BELIEVE AN EXPERT WHO CAN BE

5    USEFUL TO THE COURT AND THE JURY IN THIS CASE IS

6    SOMEONE WHO KNOWS ABOUT PHONE DESIGN BECAUSE THE

7    ISSUES OF INVALIDITY, THE ISSUES OF FUNCTIONALITY

8    AND THE ISSUES OF HOW THESE PHONES COME INTO BEING.

9    THEREFORE, THIS MOTION IS NOT JUST ABOUT

10   MR. SHERMAN.  WE BELIEVE APPLE WILL HAVE SIMILAR

11   OBJECTIONS TO ANY OTHER PERSON WHO KNOWS AND

12   PRACTICES DESIGN OF PHONES.

13             THE COURT:  THE ONLY PROBLEM IS FOLKS

14   WITH EXPERTISE, I SUSPECT ARE IN GREAT DEMAND BY

15   THE MARKET.  SO WHAT LINE SHOULD I DRAW AROUND

16   THAT?

17             MS. MAROULIS:  YOUR HONOR, THERE ARE TWO

18   BASIC LINES HERE.

19             ONE IS THAT WE HAVE TOLD APPLE THAT WE

20   WILL ONLY SHOW TO MR. SHERMAN THE DESIGN DOCUMENTS,

21   WE WILL NOT SHOW THEM ANY TECHNICAL DOCUMENTS.

22             THEIR CONCERN, AS STATED IN THEIR PAPERS,

23   IS THAT MR. SHERMAN'S CONSULT CURRENT CONSULTANT

24   COMPANY, WHICH IS ALL OF ONE PERSON, IS ENGAGED IN

25   THE BUSINESS OF PROVIDING CONSULTING ON MULTI TOUCH

1   TECHNOLOGY.

2          WE WOULD NOT SHOW HIM ANY SOURCE CODE OR

3   ANY OF APPLE'S TECHNICAL DOCUMENTATION.  HE WILL BE

4   REVIEWING DESIGN CAD FILES, DESIGN HISTORY

5   DOCUMENTS AND OTHER DESIGN SKETCHBOOKS AND DESIGN

6   DOCUMENTS.

7          HE IS NOT IN BUSINESS RIGHT NOW OF

8   DESIGNING HARDWARE.  HE'S NOT DOING ANY CONSULTING

9   RELATING TO THAT.  AND APPLE QUESTIONED HIM DURING

10  HIS DEPOSITION REGARDING WHAT HE DOES ACTUALLY DO.

11          THE COURT:  SO THE LINE BETWEEN DESIGN

12  AND FUNCTION IS AN ATTRACTIVE ONE, BUT HASN'T YOUR

13  OWN WITNESS SUGGESTED THAT'S PRETTY BLURRY WHEN YOU

14  GET DOWN TO SPECIFIC INSTANCES OF WHETHER SOMEONE

15  SHOULD LOOK AT THE DOCUMENT OR NOT?

16          MS. MAROULIS:  YOUR HONOR, WHEN I SAY I'M

17  NOT GOING TO SHOW HIM TECHNICAL DOCUMENTS, WE WILL

18  NOT SHOW HIM THE GUTS OF THE FILM.

19          HOW ONE -- IN THAT, THE MULTITOUCH

20  SYSTEM, HOW ONE DEALS WITH THE TOUCH SCREEN

21  TECHNOLOGY.  WHAT HE WAS TALKING ABOUT THE FUNCTION

22  IS THAT DEPENDING WHERE YOU PLACE THE SPEAKERS

23  DICTATE THE FACT WHERE YOUR EAR IS.  THAT'S A

24  FUNCTIONAL ARGUMENT BUT IT DOESN'T REQUIRE HIM TO

25  GO TO THE SOURCE CODE WHEN YOU HAVE THE ASPECTS OF

1    THE CASE.

2         WE HAVE PREVIOUSLY DISCUSSED WITH APPLE

3    SUBMITTING TO THEM A BROAD LIST OF CATEGORIES THAT

4    WE WILL SHOW THEM.  SUBMITTED DECLARATIONS THAT

5    DOES CREEP INTO THE WORK PRODUCT ISSUES WE WERE

6    WILLING TO DO THAT, THEY REJECTED THAT PROPOSAL.

7         WE WILL CERTAINLY NOT BE REQUIRED TO VET

8    WITH THEM EVERY DOCUMENT WE SHOW TO OUR EXPERT.

9         BUT IN GENERAL WE BELIEVE IN OUR MOTION

10   AND IN MR. SHERMAN'S DECLARATION, WE LAID OUT

11   SUFFICIENT BASIS TO SHOW THAT HE -- TWO THINGS.

12        ONE, HE'S NOT DIRECTLY COMPETING WITH

13   APPLE IN ANY WAY.

14        AND TWO, THAT BECAUSE HE WILL BE GIVEN

15   ONLY DESIGN DOCUMENTS AND NOT ANY KIND OF SOURCE

16   CODE OR TECHNICAL DOCUMENTS THAT CAN POTENTIALLY

17   HELP SOMEONE IN THE MULTI TOUCH BUSINESS, THIS WILL

18   NOT BE A THREAT TO APPLE.

19        AND I KNOW YOU WILL HEAR ON RESPONSE HOW

20   APPLE IS VERY CAREFUL ABOUT THE SECRECY OF ITS

21   DOCUMENTS AND WE OBVIOUSLY WE RESPECT THAT, BUT

22   THERE'S A NEED IN THIS CASE TO LOOK AT THE DESIGN

23   DOCUMENTS AND THERE'S A NEED FOR SOMEONE WHO KNOWS

24   ABOUT PHONE DESIGN.

25        ONE OF THE REASONS WE CHALLENGED ON THE

1    DAUBERT MOTION, APPLE'S EXPERT, IS HE DOESN'T KNOW

2    ANYTHING ABOUT FILM DESIGN.  AND WE SHOULD NOT BE

3    FORCED TO GO WITH A SIMILAR EXPERT WHO DOES NOT

4    HAVE PRACTICAL EXPERIENCE IN LEARNING HOW TO DESIGN

5    PHONES AND EXPLAINING THAT TO THE JUDGE AND TO THE

6    JURY.

7         THE COURT:  THE QUESTION I HAVE ON THAT

8    IS, IT SEEMS TO ME WHEN I'M DEALING WITH MOTIONS

9    LIKE THIS, ONE REASONABLE CONSIDERATION IS THE

10   UNIVERSAL POOL OF TALENT FROM WHICH TO DRAW ONE OR

11   MORE EXPERTS.

12        IN THIS PARTICULAR INSTANCE ARE YOU

13   TELLING ME THAT MR. SHERMAN IS ONE OF ONLY A

14   HANDFUL OF FOLKS IN THE WORLD, SAMSUNG IS A

15   WORLDWIDE COMPANY, THEY HAVE AMPLE REAL ESTATE

16   SOURCES WHO CAN INTELLIGENTLY SPEAK TO THE ISSUES

17   OF DESIGN?

18        MS. MAROULIS:  YOUR HONOR, YOU SHOULD

19   PROBABLY PICK UP FROM OUR PAPERS THAT MR. SHERMAN

20   IS IN ISRAEL.  SO WE HAD TO GO ALL THE WAY THERE TO

21   GET SOMEBODY WHO IS NOT IN SOME CAPACITY INVOLVED

22   WITH APPLE, SAMSUNG OR ANY OF ITS DIRECT

23   COMPETITORS.

24        THE COURT:  HE SHOULD LOVE TO WORK WITH

25   ALL OF YOU.

1          MS. MAROULIS:  AFTER THESE MOTIONS, I'M

2     SURE YOU WILL FORM THAT OPINION.

3          THE COURT:  I'M EXPRESSING NO OPINION AT

4     ALL.

5          MS. MAROULIS:  IT WOULD BE DIFFICULT.

6          THE COURT:  I KNOW SOMETIMES THAT'S AN

7     ISSUE RIGHT.

8          MS. MAROULIS:  IT'S A VERY SMALL POOL,

9     RIGHT, FOR REASONS OF BOTH SPECIFIC EXPERTISE AND

10    THE CONFLICT ISSUES.

11          WE OBVIOUSLY CANNOT WORK WITH ANYONE WHO

12    IS WORKING DIRECTLY OR INDIRECTLY WITH APPLE.  WE

13    CANNOT WORK WITH ANYONE WHO IS WORKING DIRECTLY OR

14    INDIRECTLY WITH SAMSUNG.

15          THERE'S SEVERAL OTHER LARGE COMPETITORS

16    OF BOTH COMPANIES WHERE THAT WOULD BE AN ISSUE AS

17    WELL VIS A VIE LOOKING AT BOTH APPLE'S CONFIDENTIAL

18    DOCUMENTS BUT OURS AS WELL.

19          THE COURT:  IS HE THE ONLY EXPERT YOU

20    HAVE ON THIS PARTICULAR SUBJECT?

21          I DON'T WANT TO INTRUDE UPON YOUR

22    CONFIDENTIAL --

23          MS. MAROULIS:  HE'S THE ONLY EXPERT

24    DISCLOSED IN THE DESIGN.

25          SO IN CONCLUSION WE WOULD GREATLY

1      APPRECIATE A RULING ON THIS ISSUE.  WE ACTUALLY

2      TEED IT UP ABOUT TWO MONTHS AGO BUT WE HAD BEEN

3      HOPING TO RESOLVE IT WITH APPLE WITHOUT A MOTION

4      PRACTICE, AND IT LOOKED AT ONE POINT THAT WE WERE

5      CLOSE BUT PARTIES FELL APART AGAIN, ON THIS ISSUE.

6              AND SO IT WOULD BE VERY IMPORTANT FOR US

7      TO BE ABLE TO START SHOWING MR. SHERMAN THE

8      CONFIDENTIAL DOCUMENTS BECAUSE SO FAR HIS OPINION

9      HAS BEEN BASED ON PUBLIC INFORMATION AND HE NEEDS

10     TO GET ACCESS TO THE CONFIDENTIAL INFORMATION.

11             THE COURT:  ALL RIGHT.  THANK YOU.

12             MS. MAROULIS:  THANK YOU, YOUR HONOR.

13             THE COURT:  MR. JACOBS?

14             MR. JACOBS:  WELL, AGAIN, WE'RE SEEKING

15     HELP FOR PROTECTION OF OUR CONFIDENTIAL

16     INFORMATION.  THIS IS AN INDIVIDUAL WHO IS

17     GEOGRAPHICALLY REMOTE BUT QUITE PROXIMAL IN SUBJECT

18     AREA.

19             AND THE FACT THAT HE'S STILL ENGAGED IN

20     MULTI TOUCH, WHICH IS DIRECTLY COMPETITIVE WITH

21     APPLE, AND WHERE IN SAMSUNG'S VIEW OF THE CASE

22     MULTI TOUCH DRIVES DESIGN, MEANS THAT THERE'S --

23     THE OVERLAP BETWEEN, AS YOU WERE SUGGESTING THE

24     OVERLAP BETWEEN WHAT MIGHT BE REGARDED AS FUNCTION

25     AND WHAT MIGHT BE REGARDED AS DESIGN ESPECIALLY

1    FROM SAMSUNG'S STANDPOINT IS QUITE WIDE.

2              SO RECENTLY HE DID PHONE RELATED WORK.

3    HE CONSULTS.  NOW THEY DESIGNATED SOME OF HIS

4    CONSULTING INFORMATION AS ATTORNEY'S EYES ONLY, SO

5    ALL I WILL SAY ABOUT IT IS HE CONSULTS NOW AND

6    WOULD NOT DISCLOSE ALL OF HIS CONSULTING CLIENTS,

7    AND SOME OF HIS CONSULTING CLIENTS ARE IN THE PHONE

8    BUSINESS.

9              SO THE TEMPTATION THAT HE MIGHT HAVE,

10   BECAUSE ONCE YOU SEE THESE DESIGNS, I MEAN ONCE YOU

11   SEE THE DESIGN IDEAS, IT'S YOUR HEAD.  THAT'S WHY

12   WE HAVE THESE PROTECTIVE MEASURES.  THAT'S WHY WE

13   HAVE A PROSECUTION BAR WHICH WOULD CUT MORE BROADLY

14   FOR LAWYERS THAN THE LINE THEY WOULD DRAW FOR

15   SHERMAN.

16             SO FOR ALL THOSE REASONS WE THINK THIS

17   ONE IS TOO CLOSE.

18             AND IT'S A MULTI FACTORIAL.  I DON'T WANT

19   TO PIN IT TO ANY INDIVIDUAL ASPECT, ONCE HE GETS

20   INTO THE CIRCLE OF THE SUBJECT MATTER.  BUT TO ADD

21   TO THE COMPLEXITY HERE OR OUR CONCERN THAT HE'S NOT

22   AN ACADEMIC, SO HE'S IN THE BUSINESS OF SELLING HIS

23   KNOWLEDGE AND TIME TO PEOPLE WHO WILL PAY FOR IT.

24             AND WE ARE JUST VERY, VERY CONCERNED.

25   BECAUSE OF THE IMPORTANCE OF THIS INFORMATION AND

1    ITS SENSITIVITY

2              THE COURT:  DO YOU HAVE A -- HAVE YOU

3    DISCLOSED YET A COUNTERPART TO MR. SHERMAN?

4              MR. JACOBS:  YES.

5              THE COURT:  CAN YOU DESCRIBE FOR ME WHO

6    THAT PERSON IS AND THEIR EXPERTISE?

7              MR. JACOBS:  WE HAVE TWO.

8              THE COOPER WOODRING IS A LONG TIME DESIGN

9    EXPERT WHO IS HEAD OF THE INDUSTRIAL DESIGN

10   ASSOCIATION, FOR THE MOMENT I CAN'T REMEMBER HIS

11   NAME.

12             THEY DID CHALLENGE HIS CREDENTIALS --

13   JUDGE KOH DID NOT GRANT THAT MOTION AND ADMITTED

14   HIS TESTIMONY FOR PURPOSES OF THE PRELIMINARY

15   INJUNCTION.

16             WE ALSO HAVE ANOTHER EXPERT, IF YOU WILL

17   JUST GIVE ME A MINUTE

18             THE COURT:  SURE.

19             MR. JACOBS:  A BRESSLER, A DOCTOR

20   BRESSLER WHO HAS -- AND HE IS AN INDUSTRIAL

21   DESIGNER BY BACKGROUND.  AND WE HAVE DISCLOSED HIM,

22   AND I DON'T THINK -- HAVE WE DRAWN AN OBJECTION?

23             MR. JACOBS:  OH, THEY ARE OBJECTING.

24   THERE YOU GO.

25             SO WE DO NEED TO DRAW THE LINE.  BUT WE

1    WOULD DRAW IT AGAINST SHERMAN AND WE'LL GET TO

2    BRESSLER WHEN WE GET TO HIM.

3              THE COURT:  IS THERE ANY ROLE FOR

4    MR. SHERMAN THAT YOU THINK IS APPROPRIATE?

5              I MEAN, OBVIOUSLY HE CAN LOOK AT

6    NONCONFIDENTIAL INFORMATION, THAT'S NO PROBLEM.

7              MR. JACOBS:  EXACTLY.  AND HE DID THAT.

8    AND HE TESTIFIED IN THE PRELIMINARY INJUNCTION AND

9    JUDGE KOH ACKNOWLEDGED HIS TESTIMONY.

10             THE COURT:  BUT YOUR VIEW IS THAT GIVEN

11   HIS EXPERIENCE AND SUCCESS AT WHAT HE DOES, THERE'S

12   NO LINE I COULD DRAW AS TO CONFIDENTIALITY

13   INFORMATION THAT WOULD ADEQUATELY PROTECT YOUR

14   INTEREST?

15             MR. JACOBS:  I DON'T THINK SO, AND LET ME

16   GIVE YOU AN EXAMPLE AS TO WHY ITS SO DIFFICULT.

17             ONE OF THEIR PROPOSED CATEGORIES IS

18   DESIGN DOCUMENTATION THAT GO TO THE DESIGN OF APPLE

19   PRODUCTS.

20             WELL, APPLE'S PRODUCTS ARE CAPTURED IN

21   REVIEW DOCUMENTS AND THOSE REVIEW DOCUMENTS WOULD

22   MIX WHAT WE MIGHT THINK OF DESIGN, INDUSTRIAL

23   DESIGN WITH HARDWARE DESIGN OR PRODUCT DESIGN AND

24   THAT WILL ALL BE INTERMINGLED.

25             THE FACT OF ITS INTERMINGLING, I IMAGINE

1    WILL BE SOMETHING SAMSUNG WILL USE TO SAY, LOOK,

2    THIS IS ALL FUNCTIONALLY DRIVEN.  BUT THAT MEANS

3    THEN THAT THE DOCUMENT THAT THEY WOULD PROPOSE TO

4    RELY ON WOULD NOT BE A PURE INDUSTRIAL DESIGN

5    DOCUMENT, IT WOULD HAVE A MINGLING OF MOTION.

6            THE COURT:  IF I WERE ABLE TO DEFINE AND

7    DELINEATE A CATEGORY OF PURELY INDUSTRIAL DESIGN

8    DOCUMENTS THAT WERE NOT TAINTED IN ANY WAY BY MORE

9    FUNCTIONAL OR HARDWARE DRIVEN CONCERNS, WOULD THAT

10   BE SOMETHING I COULD DO THAT WOULD ADEQUATELY

11   PROTECT APPLE'S INTEREST?  OR WHY WOULD THAT STILL

12   NOT WORK?

13           MR. JACOBS:  I THINK BECAUSE HE'S SO

14   ACTIVE IN A CLOSE AREA.  THE FACT THAT HE'S DEALING

15   WITH MULTI TOUCH NOW AND CONSULTING FOR CONSUMERS

16   OF MULTI TOUCH, WHICH BY DEFINITION IS HANDHELD

17   PRODUCTS THAT YOU ARE GOING TO USE TO TOUCH, THAT'S

18   ALL PRETTY CLOSE TO AN IPAD OR IPHONE OR WHATEVER

19   OTHER DOCUMENTS MIGHT SURFACE IN THAT PRODUCTION.

20           THE COURT:  ALL RIGHT.

21           THANK YOU VERY MUCH.

22           MR. JACOBS:  THANK YOU VERY MUCH.

23           THE COURT:  ANY LAST REMARKS,

24   MS. MAROULIS.

25           MS. MAROULIS:  YES, YOUR HONOR.

1          MR. JACOBS INVOKED THE MIX DOCUMENTS THAT

2     MIGHT INVOLVE TECHNICAL SPECIFICATIONS WITH THE

3     DESIGN.

4          HOWEVER, THERE'S A HUGE NUMBER OF

5     CATEGORIES THAT ARE NOT MIXED AT ALL.

6          FOR EXAMPLE, CAD FILES WILL HAVE NO

7     TECHNICAL INFORMATION AS TO MULTI TOUCH TECHNOLOGY.

8     SAME WITH THE SKETCHBOOKS.

9          IN FULL, THEY WILL NOT HAVE THE

10    INFORMATION EITHER

11         THE COURT:  I TAKE IT THAT THEIR

12    INDUSTRIAL DESIGNERS ARE NOT CONCERNED VERY MUCH

13    WITH THE BLOOD AND GUTS OF THE MICROPROCESSOR,

14    RIGHT?

15         MS. MAROULIS:  CORRECT, YOUR HONOR

16    IT'S PURELY OUTSIDE THE HARDWARE AND SUCH.

17         AND THEN FINALLY, WE CAN NOT HAVE THE

18    CONCERNS ABOUT SECRECY OF APPLE'S PRODUCTS OVER

19    SAMSUNG'S NEED TO HAVE ACCESS TO INFORMATION

20    BECAUSE APPLE CHOSE TO PUT THE DESIGN AT ISSUE IN

21    THIS CASE.

22         THIS IS A CASE WHERE APPLE IS MOVING FULL

23    FORWARD ON ITS REVOLUTIONARY DESIGNS.  THERE'S A

24    COST TO INITIATING LITIGATION, AND THAT IS YOU HAVE

25    TO LET YOUR OPPONENT DO DISCOVERY.

63

1          AND THIS IS GOING TO BE PROTECTED BY THE

2     PROTECTIVE ORDER BY HIGHEST LEVEL OF DESIGNATION.

3     MR. SHERMAN IS GOING TO BE SUBJECT TO THE

4     PROTECTIVE ORDER UNDERTAKING.  IF HE VIOLATES IT,

5     HE'S GOING TO BE SUBJECT TO SANCTIONS OF THIS

6     COURT.

7          AND WE CANNOT SIMPLY NOT ALLOW US ACCESS

8     TO THE INFORMATION BECAUSE APPLE PREFERS TO KEEP

9     ITS FILES SUPER CONFIDENTIAL.

10          THE COURT:  IS MR. SHERMAN SUBJECT TO ANY

11     RESTRICTIONS AT ALL?

12          UNDER THE TERMS OF THE PROTECTIVE ORDER,

13     FOR EXAMPLE, PATENT ATTORNEYS ARE BOUND BY

14     PROSECUTION BARS, OFTEN THERE ARE COMPETITIVE

15     DECISION MAKING BOUNDARIES THAT ARE DRAWN.

16          IS MR. SHERMAN SUBJECT TO ANY

17     RESTRICTIONS?

18          MS. MAROULIS:  YOUR HONOR, I BELIEVE THAT

19     THE EXHIBITS TO PROTECTIVE ORDER UNDERTAKING SAYS I

20     THEREBY SUBJECT MYSELF TO THE JURISDICTION OF THIS

21     COURT.

22          I CANNOT QUOTE IT FROM MEMORY, BUT THERE

23     IS SOME LINE ABOUT THAT, SO HE WILL BE BOUND BY

24     THAT.

25          THE COURT:  ALL RIGHT.

1          UNLESS YOU HAVE ANYTHING FURTHER, I'M

2     AFRAID I'M OUT OF TIME.

3          MS. MAROULIS:  THANK YOU, YOUR HONOR.

4          THE COURT:  THANK YOU.

5          ALL THESE MOTIONS ARE SUBMITTED.  I WILL

6     WORK AS DILIGENTLY AS I CAN TO GET YOU AN ORDER

7     SHORTLY.  IN THE MEANTIME, HAVE A GOOD WEEKEND.

8          MR. JACOBS:  THANK YOU, YOUR HONOR.

9          THE CLERK:  THE COURT IS IN RECESS.

10          (WHEREUPON THE MATTERS IN THIS CASE WERE

11     CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                          **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22              _____

                SUMMER A. FISHER, CSR, CRR
23              CERTIFICATE NUMBER 13185

24

25