QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
   charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

  Kevin P.B. Johnson (Bar No. 177129
   kevinjohnson@quinnemanuel.com
  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100


  Michael T. Zeller (Bar No. 196417)
   michaelzeller@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100


Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>            Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S REPLY MEMORANDUM IN SUPPORT OF SAMSUNG'S MOTION TO DISMISS APPLE'S COUNTERCLAIMS**<br><br>Date:     April 5, 2012<br>Time:    1:30 p.m.<br>Place:    Courtroom 4, 5th Floor<br>Judge:   Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. APPLE'S ANTITRUST COUNTERCLAIMS SHOULD BE DISMISSED ....................... 2

    A. Apple's Definition of a "Relevant Market" is Facially Implausible ......................... 2

    B. Apple's Allegations of Market Power Rely on Its Flawed Definition of the Market. ......................................................................................................................... 4

    C. Apple's Theory of Non-Disclosure as Anticompetitive Conduct Must Fail ............. 6

III. APPLE'S UNFAIR COMPETITION COUNTERCLAIMS SHOULD BE DISMISSED .......................................................................................................................... 6

IV. APPLE'S CONTRACT AND PROMISSORY ESTOPPEL COUNTERCLAIMS SHOULD BE DISMISSED AGAIN ..................................................................................... 7

    A. Apple Failed To Provide Notice of Its Intent To Rely on French Law ..................... 7

    B. The Court May Properly Resolve Any Disputes Regarding French Law and Determine Whether a Contract Exists in Ruling on Samsung's Motion to Dismiss. ........................................................................................................................ 7

    C. Apple's Claim for Declaratory Judgment That It Has an Irrevocable Right to a License Has No Legal Basis. ................................................................................ 8

    D. Apple Fails To Plead a Claim for Breach of Contract. .............................................. 9

        1. The ETSI IPR Policy and ETSI Declarations Are Not Sufficiently Definite To Constitute an Offer That Apple Could Have Accepted ............. 9

        2. Apple Did Not Accept Any Offer Made by Samsung ................................ 11

        3. Apple Has Failed To Plead That Any License Was Formalized as a Writing ........................................................................................................... 12

        4. Samsung's Declarations Were Not *Intuitu Personae* and, Therefore, Do Not Constitute a License ......................................................................... 13

        5. Apple Has Failed To State a Claim for Breach of a Contract To Negotiate for Which Relief Can Be Granted ............................................... 13

    E. Apple's Alternative Pleading Under California Law Must Also Be Dismissed. .................................................................................................................. 14

    F. Apple's Promissory Estoppel Claim Must Be Dismissed. ....................................... 14

V. CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

Apple, Inc. v. Motorola Mobility, Inc.,
  2011 U.S. Dist. LEXIS 72745 (June 7, 2011) ................................................................... 13

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009) ........................................................................................................ 8

Baloco ex rel. Tapia v. Drummond Co., Inc.,
  640 F.3d 1338 (11th Cir. 2011) ......................................................................................... 12

Broadcom Corp. v. Qualcomm Inc.,
  501 F.3d 297 (3d Cir. 2007) ........................................................................................ 7, 8, 9

Broadcom Corp. v. Qualcomm Inc.,
  No. 05-cv-03350 (D.N.J. Sept. 19, 2005) ........................................................................... 8

Brown Shoe Co. v. United States,
  370 U.S. 294 (1962) ............................................................................................................ 7

Colonial Med. Group v. Catholic Healthcare West,
  No. C-09-2192 MMC, 2010 WL 2108123 (N.D. Cal. May 25, 2010) ............................... 6

Copeland v. Baskin Robbins U.S.A.,
  96 Cal. App. 4th 1251 (Cal. Ct. App. 2002) ..................................................................... 18

Ess Tech., Inc. v. PC-TEL, Inc.,
  No. C-99-20292, 1999 WL 33520483 (N.D. Cal. Nov. 4, 1999) ..................................... 18

Glen Holly Entertainment, Inc. v. Tektronix Inc.,
  343 F.3d 1000 (9th Cir. 2003) .......................................................................................... 19

Griffith v. Bank of America, N.A.,
  2011 WL 6849048 ............................................................................................................. 12

Hawkins v. Portal Publ'ns, Inc.,
  189 F.3d 473 (9th Cir. 1999) ............................................................................................ 11

Ladas v. Cal. State Auto. Ass'n,
  19 Cal. App. 4th 761 (Cal. Ct. App. 1993) ....................................................................... 19

Meridian Project Sys., Inc. v. Hardin Const. Co., LLC,
  404 F. Supp. 2d 1214 (E.D. Cal. 2005) ............................................................................ 11

Newcal Indus., Inc. v. Ikon Office Solution,
  513 F.3d 1038 (9th Cir. 2008) ............................................................................................ 6

Parrino v. FHP, Inc.,
  146 F.3d 699 (9th Cir. 1998) ............................................................................................ 14

Prime Start Ltd. v. Maher Forest Products, Ltd.,

1     442 F. Supp. 2d 1113 (W.D. Wash. 2006) ...............................................................................11

2 Queen City Pizza, Inc. v. Domino's Pizza, Inc.,
    124 F.3d 430 (3rd Cir. 1997) .............................................................................................6, 7

In re Rambus, Inc.,
    No. 9302, 2006-2 Trade Cas. ¶ 75364 (F.T.C. 2006) ..............................................................8

R.C. Olmstead, Inc., v. CU Interface, LLC,
    606 F.3d 262 (6th Cir. 2010) ..................................................................................................14

Research In Motion Ltd. v. Motorola, Inc.,
    644 F. Supp. 2d 788 (N.D. Tex. 2008) ...................................................................................13

Rubin v. Green,
    4 Cal. 4th 1187 (1993) ............................................................................................................11

Samson v. One West Bank,
    2011 WL 3269397 (N.D. Cal. Jul. 28, 2011) .........................................................................12

Standard Oil Co. of Ind. v. United States,
    283 U.S. 163 (1931) .................................................................................................................6

Tobar v. United States,
    639 F.3d 1191 (9th Cir. 2011) ................................................................................................12

Townshend v. Rockwell Int'l Corp.,
    2000 WL 433505 (N.D. Cal. Sept. 4, 2007) .......................................................................7, 9

United States v. Continental Can Co.,
    378 U.S. 441 (1964) .................................................................................................................6

**Statutes**

Cal. Civ. Code § 47(b) ....................................................................................................................11

Fed. R. Civ. P. 44.1 ..................................................................................................................11, 12

## I. INTRODUCTION

Apple seeks to overcome the deficiencies in its antitrust, unfair competition, and contract counterclaims by urging the Court to adopt an unduly expansive view of antitrust law and by ignoring fundamental legal rules governing contract formation. The Court should reject Apple's flawed interpretations of these legal doctrines.

To allege a violation of antitrust law, Apple must plead a product market in which Samsung exercises monopoly power. Apple contends that the mere incorporation of Samsung's patented technology into the W-CDMA standard both creates a market for that technology and establishes that Samsung is a monopolist. This is not and cannot be the law. Absent any factual basis for alleging that the adoption of Samsung's technology into the W-CDMA standard conferred market power upon Samsung, Apple's antitrust claim cannot stand. Apple has also failed to assert any independent basis for contending that Samsung's alleged failure to timely disclose its Essential IPR to the European Telecommunications Standards Institute ("ETSI") gave rise to any antitrust injury. Accordingly, this theory fails.

This Court has already dismissed Apple's Unfair Competition Claims as duplicative of its federal antitrust claims. Apple admits that its newly pled unfair competition claims are premised on the same theory as its antitrust claims and, therefore, the Court should dismiss these claims once again.

Apple's contract and promissory estoppel claims rest on the theory that a unilateral declaration that certain Samsung patents are essential to an ETSI standard can constitute a binding offer to license, despite the fact that the declaration includes no terms regarding the royalty rate, duration, or geographic scope of the license. Moreover, Apple claims that it can accept this nearly term-less "offer" by simply implementing the standard, practicing Samsung's patents without Samsung's knowledge, and without ever paying royalties. Unsurprisingly, this theory is not supported by French law, which Apple contends is applicable here. Nor does French law provide a mechanism by which a party can bind itself to enter into a license in the future, as Apple contends. Finally, Apple's promissory estoppel claim fails because French law does not recognize any such doctrine.

1   For the aforementioned reasons, Apple's counterclaims must be dismissed.

## II. APPLE'S ANTITRUST COUNTERCLAIMS SHOULD BE DISMISSED

### A. Apple's Definition of a "Relevant Market" is Facially Implausible

Apple's flawed market definition defines a market by the consumers of W-CDMA technology. Both the Supreme Court and the Ninth Circuit have held that consumer-defined markets are facially unsustainable and must be dismissed. Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038 (9th Cir. 2008); see also Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430 (3rd Cir. 1997).

Apple misapprehends Samsung's arguments that Apple has failed to define a product market. The argument does not rest on the fact that the technology is intangible. (See Opp. at 6-7.) Rather, it rests on the proposition that a market must be delineated by the product, not the consumers of the product. Newcal, 513 F.3d 1038; see also Queen City Pizza, 124 F.3d 430. For example, in this district, Judge Chesney rejected a market defined as "the provision of inpatient medical services and treatment by medical doctors *for inmates of the California prison system*." Colonial Med. Group v. Catholic Healthcare West, No. C-09-2192 MMC, 2010 WL 2108123, at *3 (N.D. Cal. May 25, 2010). The court noted that the plaintiff failed to give any reason why medical services provided to "inmates of local jails or other locked facilities by reason of criminal or civil proceedings" were not reasonable substitutes for the medical services provided in prisons. Id. at *4; see also United States v. Continental Can Co., 378 U.S. 441, 449 (1964) (rejecting a market limited only to glass or metal containers as insufficient when long-term competition occurred between the two); Standard Oil Co. of Ind. v. United States, 283 U.S. 163, 176-77 (1931) (refusing to find monopoly conduct in the pooling of patents for a particular gasoline manufacturing technique when downstream gasoline prices were checked by competition through other manufacturing techniques).

Similarly, Apple's antitrust counterclaims allege a flawed market definition because they are defined by consumers. Apple contends that the relevant antitrust markets are defined by the provision of each of the Input Technologies *to consumers that practice the W-CDMA standard*. (Am. Counterclaims ¶ 101; Opp. at 13 (contending that Samsung has "100% share" in each "Input

Technology Market" by virtue of its technology being incorporated into the W-CDMA standard).) Apple acknowledges that competing technologies exist (Am. Counterclaims ¶ 58), and does not make any allegations as to whether current consumers of an Input Technology would switch to a competing standard if Samsung were to raise prices. In the absence of any such pleadings regarding the cross-elasticity of demand, Apple has failed to plead a cognizable antitrust market and its counterclaims must be dismissed. See Brown Shoe Co. v. United States, 370 U.S. 294, 325 (1962) ("[P]roduct markets are determined by the reasonable interchangeability of use or the cross-elasticity of demand . . . ."); Queen City Pizza, 124 F.3d at 436.

The mere fact that the technology claimed in Samsung's patents has been incorporated in a standard does not established that there is a distinct market for the technology defined by that standard. The patent's incorporation into a standard has no antitrust significance unless the *standard* confers some sort of market power. See Townshend v. Rockwell Int'l Corp., 2000 WL 433505 (N.D. Cal. Sept. 4, 2007). Here, Apple even pleads the existence of predecessor and successor standards to UMTS that could serve as substitutes. (Am. Counterclaims ¶¶ 35-37.) Yet, Apple does not plead facts regarding the substitutability of these standards for the UMTS standard.

Apple misreads Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297 (3d Cir. 2007), as sanctioning any market definition in which it is alleged that a patented technology has been incorporated in a standard, regardless of whether there are alternative standards, incorporating alternative technology, that can be utilized. (Opp. at 5.) If Apple's position is accepted, every member of a standard setting organization ("SSO") who holds a standard-essential patent will be deemed in a position of monopoly power, regardless of whether the standard confers market power on the patent-holder.[1]

Broadcom does not stand for the broad proposition that Apple asks this Court to adopt. In that case, Broadcom's allegations of market power inextricably linked the adoption of Qualcomm's patents by the W-CDMA standard to the underlying market for W-CDMA chipsets.

---

[1] To the extent that the Court reads Broadcom in the broad way advocated by Apple, it should not adopt the reasoning in that decision. To do so would be contrary to Supreme Court and Ninth Circuit precedent requiring that a market be defined with regard to cross-elasticity of demand. Brown Shoe, 370 U.S. at 325; Newcal, 513 F.3d at 1045.

See Selwyn Decl. Ex. B (First Am. Compl., Broadcom Corp. v. Qualcomm Inc., No. 05-cv-03350 (D.N.J. Sept. 19, 2005)) at ¶ 104 ("Qualcomm's patent licensing practices are designed to extend Qualcomm's monopoly position *into the UMTS chipset market*.") (emphasis added). In concluding that Broadcom had alleged a market, the court relied on Broadcom's allegations that Qualcomm's actions "effectively foreclosed Broadcom's entry into the UMTS *chipset market*" and that "Qualcomm's patents are a barrier to entry *into the relevant product market*." (Selwyn Decl. Ex. B at ¶¶ 82, 86; Broadcom, 501 F.3d at 315 (citing to Broadcom's complaint at ¶¶ 82, 86.)) Similarly, in In re Rambus, Inc., Rambus controlled patents that applied to over 90% of the DRAM market, *across multiple standards*. No. 9302, 2006-2 Trade Cas. ¶ 75364, at *39 (F.T.C. 2006). In other words, the adoption of Rambus' technology across these standards gave Rambus power in the DRAM market. In this case, Apple makes no allegation that ETSI's adoption of Samsung's patents into the W-CDMA standard gives Samsung power in the chipset market.[2]

### B. Apple's Allegations of Market Power Rely on Its Flawed Definition of the Market.

Apple bases its allegations of Samsung's market power on its flawed definition of an antitrust market. For example, Apple's contention that Samsung possesses "100% share" in each "Input Technology Market" presumes that the market is limited to consumers implementing W-CDMA. (Opp. at 13.) Apple itself concedes that there are alternatives to the technologies claimed in Samsung's declared-essential patents. (Am. Counterclaims ¶ 58.) Therefore, if the market is defined by the available technologies, and not solely by users of W-CDMA technology, Samsung cannot control 100% of that market.

Apple's contention that Samsung has market power rests on the conclusory assertion that it is "locked in" to the ETSI standard. (Opp. at 11.) However, Apple's allegations lack factual substance from which this inference can be drawn. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). To the extent that Apple's conclusion that it is "locked in" to the W-CDMA standard rest on any factual allegation, it is the sole assertion that UMTS is the most widely adopted

---

[2] The mere statement that "Samsung's allegations of infringement concern UMTS-compliant chipsets" (Opp. at 8) does not imply that the relevant market for Apple's claims is the chipset market.

telecommunication standard.  (Opp. at 11-12.)  But, even if this allegation is taken as true, it does nothing to establish that Apple is "locked in" to the W-CDMA standard.  In particular, Apple fails to allege that it would be prohibitively expensive for either Apple or its customers to switch to another standard, if faced with hypothetical unreasonable FRAND demands made by Samsung.  Broadcom, 501 F.3d at 310.  While Apple argues in its Opposition that it has made "massive investments" in complying with the W-CDMA standard (Opp. at 11), these allegations are not pled in its amended complaint.  Rather, Apple simply contends that it "has invested substantial resources in developing and marketing its iPhone and iPad products" and made "massive investments in innovation and product development."  (Am. Counterclaims at ¶¶ 70, 87.)  Further, Apple has not pled that its customers are locked into using a UMTS device.  Even if "customers wishing to use devices on a UMTS network must purchase UMTS-compliant devices" (Opp. at 12), this unremarkable (and unpled) contention raises no inference as to whether, when faced with a price increase for UMTS-compliant devices, users would switch to mobile devices compliant with another standard.  Thus, Apple's contention that it is "locked in" to the W-CDMA standard is not facially plausible and there is no basis for inferring that the incorporation of Samsung's declared-essential patents into that standard confers any market power to Samsung.

The Northern District of California case, Townshend v. Rockwell Int'l Corp., 2000 WL 433505 (N.D. Cal. Sept. 4, 2007), correctly recognized that the adopter of a standard is not "locked in" to the extent that the participant can utilize alternative technologies.  In Townshend, the Northern District rejected antitrust claims pleading that adoption of 3Com's patents into an industry standard granted monopoly power.  Id. at *12-13.  Apple asserts that the Townshend court dismissed the antitrust claims because the plaintiff failed to plead that alternative technologies were eliminated by standardization.  (Opp. at 10-11.)  But the Townshend court focused on whether alternative technologies were *prevented from being developed*.  Townshend, 2000 WL 533505, at *13.  Apple has not and cannot plead that the development of alternative standards, not incorporating Samsung's patents, has in any way been impeded.  In fact, the existence of alternative standards to UMTS requires the conclusion that patent standardization grants no more market power than inheres in a patent.  Id. at *12.

-5-  Case No. 11-cv-01846-LHK
SAMSUNG'S REPLY MEMORANDUM IN SUPPORT OF
SAMSUNG'S MOTION TO DISMISS APPLE'S COUNTERCLAIMS

### C. Apple's Theory of Non-Disclosure as Anticompetitive Conduct Must Fail

By its previous Order, the Court recognized that Apple pled two separate bases of anticompetitive conduct: a "Failure to Disclose IPR Theory" and a "False FRAND Declaration Theory." (Dkt. No. 315 at 6-9.) With respect to the first theory, the Court held that Apple "has failed to allege sufficient facts to support a plausible inference that had Samsung disclosed its intellectual property rights to the SSO, a viable alternative technology performing the same functionality would have been incorporated into the UMTS standard, or the relevant functionality would not have been incorporated into the standard at all." (Dkt. No. 315 at 9.)

In its Opposition, Apple fails to contend that, but for Samsung's allegedly belated disclosure of its Essential IPR, ETSI would not have incorporated Samsung technology into its standards. Rather, Apple attempts to merge this belated disclosure theory with its second theory, that Samsung fraudulently declared it would license its patents on FRAND terms. (Opp. at 12-14.) But Apple's fraudulent disclosure theory is based on Samsung's alleged breach of Clause 6.1 of ETSI's IPR policy, whereas the untimely disclosure is based on an alleged breach of Clause 4.1 (Am. Counterclaims ¶¶ 51-52.) These theories are, thus, independent of one another. (Id. ¶ 47 ("Samsung's abuse of the standards-setting process went far beyond untimely disclosure of its IPR.")) Accordingly, Samsung cannot cure the defect in its untimely disclosure theory by relying on its fraudulent disclosure theory and the former claim should be dismissed.

### III. APPLE'S UNFAIR COMPETITION COUNTERCLAIMS SHOULD BE DISMISSED

Apple does not dispute that its Unfair Competition Law claims are duplicative of its antitrust counterclaims. Accordingly, for all the reasons that the Court previously dismissed these claims in its first Order, they should be dismissed here as well. (See Dkt. No. 315 at 12-13.)

Further, Samsung's participation in judicial proceedings, which Apple asserts is the underlying act forming the basis of its unfair competition claims, is absolutely immune from liability. CAL. CIV. CODE § 47(b). Apple's contention that Samsung's pleadings are not qualified communications is baseless. See Hawkins v. Portal Publ'ns, Inc., 189 F.3d 473 (9th Cir. 1999); Rubin v. Green, 4 Cal. 4th 1187, 1204 (1993) (explicitly harmonizing conflict between unfair

competition law and § 47(b)).  The case that Apple cites, Meridian Project Sys., Inc. v. Hardin Const. Co., LLC, 404 F. Supp. 2d 1214, 1223 (E.D. Cal. 2005), clearly extends the "absolute" § 47(b) privilege to "statements made in the courtroom *and in pleadings*."  Id. (emphasis added).  The tortious conduct claim allowed in that case arose outside of the litigation context, not as part of a lawful suit.

### IV. APPLE'S CONTRACT AND PROMISSORY ESTOPPEL COUNTERCLAIMS SHOULD BE DISMISSED AGAIN

Apple fails to provide any legal basis for its contract and promissory estoppel claims under either French or California law.  Accordingly, these claims must be dismissed.

#### A. Apple Failed To Provide Notice of Its Intent To Rely on French Law.

Despite the fact that it now contends the Court should apply French law in deciding its contract claims, Apple does not dispute that it failed to provide Samsung with notice of its intention to rely on French law.  FED. R. CIV. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.").  Apple cannot now skirt the rule by claiming that Samsung should have divined its intention to rely on French law based on representations Apple made in other jurisdictions.  (Opp. at 16 n.16.)  In the Ninth Circuit, under Rule 44.1, "where no specific foreign law is asserted, the Court is under no obligation to apply a general body of foreign law to construe a contract."  Prime Start Ltd. v. Maher Forest Products, Ltd., 442 F. Supp. 2d 1113, 1119 (W.D. Wash. 2006).  As such, this Court is not obliged to apply French law in deciding whether to dismiss Apple's claims.  Nevertheless, regardless of whether French law or California law is applied, Apple has failed to state contract claims on which relief may be granted.

#### B. The Court May Properly Resolve Any Disputes Regarding French Law and Determine Whether a Contract Exists in Ruling on Samsung's Motion to Dismiss.

If the Court decides to apply French law, it is appropriate for the Court to resolve disputes under French law at this stage.  FED. R. CIV. P. 44.1 ("The court's determination must be treated as a ruling on a question of law.").  No additional facts are necessary for the Court to determine whether Apple has adequately stated a claim under French law, and the Court may properly

consider declarations setting forth the principles of French contract law.  Id.  Courts in this circuit and others apply Rule 44.1 to determine foreign law and to test the pleadings.  See Tobar v. United States, 639 F.3d 1191, 1200 (9th Cir. 2011) (requiring district court to decide question of Ecuadorian law at pleading stage); Baloco ex rel. Tapia v. Drummond Co., Inc., 640 F.3d 1338, 1349 (11th Cir. 2011) (deciding question of Columbian law at pleading stage).

Once the Court resolves any disputes regarding the tenets of French law, it may apply that law to determine whether Apple has properly pled the existence of a contract.  Courts routinely dismiss claims for breach of contract where the claimant has failed to plead facts sufficient to establish a contract.  See, e.g., Griffith v. Bank of America, N.A., 2011 WL 6849048. at *6 (C.D. Cal. Dec. 13, 2011) (dismissing claims for breach of contract for failure to allege facts sufficient to show contract); Samson v. One West Bank, 2011 WL 3269397, at *5. (N.D. Cal. Jul. 28, 2011) (dismissing claim of breach of duty of good faith and fair dealing for failure to allege facts sufficient to show contract).

**C.    Apple's Claim for Declaratory Judgment That It Has an Irrevocable Right to a License Has No Legal Basis.**

Apple fails to refute Samsung's arguments that neither the ETSI IPR Policy nor Samsung's ETSI declarations can be construed as a binding "agreement to agree" to a license.  (Mot. at 19-20.)  In particular, while Prof. Molfessis opines that Samsung actually agreed to a license, he does not refute Prof. Libchaber's statements that interpreting either the ETSI IPR Policy or the ETSI declarations as an obligation to agree to a license "would blatantly breach the *freedom of contract* principle, which is a founding principle of French contract law."  (Libchaber Decl. ¶ 108; see also id. ¶ 111 ("The refusal to contract is a manifestation of freedom.").)  Thus, it is undisputed that there is no legal basis under French law for Apple's Twenty-Seventh Counterclaim seeking a judicial declaration that Apple has an irrevocable right to a license.

Research In Motion Ltd. v. Motorola, Inc., 644 F. Supp. 2d 788 (N.D. Tex. 2008) is not to the contrary.  In that case, the court denied the motion to dismiss claims that RIM was entitled to a FRAND license because the motion only "contradict[ed] the factual accuracy" of RIM's allegations.  Research In Motion, 644 F. Supp. 2d at 797.  Here, Samsung accepts Apple's factual

allegations, but argues that, as a legal matter, Apple has not pled the existence of a contract that could be breached.  The case cited by Apple, Apple, Inc. v. Motorola Mobility, Inc., 2011 U.S. Dist. LEXIS 72745 (June 7, 2011), is irrelevant.  As Apple admits, in that case the court applied Wisconsin law, not French or California law.  (Opp. at 23.)  As such, the case does not contradict either Prof. Libchaber's declaration regarding French law or the California case law cited by Samsung holding that an "agreement to agree" is not enforceable.  (See Mot. at 15-17.)

### D. Apple Fails To Plead a Claim for Breach of Contract.

Apple's claim that ETSI's IPR Policy and Samsung's declarations to ETSI somehow granted Apple an enforceable license to Samsung's patents is not facially plausible and, therefore, must be dismissed.  See Iqbal, 129 S. Ct. at 1949.  The logical implications of Apple's allegations demonstrate their fallacy.  By Apple's reasoning, Samsung's mere declaration that it was "prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory [FRAND] terms" constituted an offer that Apple (or any third party) could accept simply by practicing the UMTS standard, even though no royalty rate was specified, and despite the fact that Apple never paid any royalties.  (Opp. at 17-18; Molfessis Decl. ¶ 94.)  Apple goes on to assert that even if it practices the standard without paying Samsung any royalties, Samsung is further barred from bringing an infringement suit or seeking an injunction.  (Opp. at 3.)

ETSI's IPR Policy does not bind signatories to automatically license their patents without any agreement as to the terms of that license and foreswear seeking any remedies where a third party does not pay royalties.  Apple's claim that Samsung has breached a contract to agree to a license must therefore be dismissed.

#### 1. The ETSI IPR Policy and ETSI Declarations Are Not Sufficiently Definite To Constitute an Offer That Apple Could Have Accepted

Apple's allegation that Samsung executed declarations to ETSI that it was "prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory [FRAND] terms" is insufficient to establish that Samsung made a sufficiently definitive offer to license its declared-essential patents to Apple.  (Opp. at 19.)  Under French law, "an offer must be specific enough for the contract to be formed by a simple acceptance of the person to whom the offer is

1  communicated." (Libchaber Decl. ¶ 70.)  Samsung's ETSI declarations only provide the numbers
2  of the patents or patent applications that Samsung is declaring "are, or are likely to become,"
3  essential and the standards to which they are likely to become essential. (See Declaration of Alex
4  Baxter ("Baxter Decl."), Ex. 1-4 (declarations to ETSI).)  The declarations do not disclose the
5  duration of the license, the geographic scope of the license, or the applicable royalty rate, and, as a
6  matter of French law, lack the requisite precision to constitute an offer.  (Libchaber Decl. ¶ 119;
7  Declaration of Professor Rémy Libchaber in Support of Defendant Samsung's Reply
8  Memorandum ("Reply Libchaber Decl.") ¶¶ 16-19.)
9       In its Opposition, Apple seeks to fill in these missing terms by hypothesizing the existence
10 of a one-size-fits-all offer in which Samsung offers to license all of its declared essential patents,
11 regardless of the geographic region to which they pertain, for as long as they are incorporated into
12 an ETSI standard. (Molfessis Decl. ¶¶ 72, 75, 82, 101.)  A review of the actual ETSI
13 declarations—which is permissible here, as there is no dispute as to the authenticity of these
14 documents—demonstrates that such terms are not specified. Parrino v. FHP, Inc., 146 F.3d 699,
15 706 (9th Cir. 1998).  The ETSI declarations do not specify either the geographic scope or duration
16 of any license.  Apple's attempt to substitute Prof. Molfessis' opinion for enforceable contract
17 terms fails.  Prof. Molfessis' contention that the geographic scope of the license is congruent with
18 the scope of the patents is an unsupported assertion untethered to any language in the ETSI
19 declarations.  (Molfessis Decl. ¶ 101.)  This conclusory assertion must be rejected. See R.C.
20 Olmstead, Inc., v. CU Interface, LLC, 606 F.3d 262, 271 (6th Cir. 2010) ("Expert reports must
21 include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory
22 opinions.").
23     Prof. Molfessis' contention that Samsung's ETSI declarations include a term regarding the
24 duration of the license is similarly baseless.  The declarations state that Samsung is "***prepared to***
25 ***grant irrevocable licenses under the IPRs*** on terms and conditions which are in accordance with
26 Clause 6.1 of the ETSI IPR Policy, in respect of the STANDARD, ***to the extent that the IPRs***
27 ***remain ESSENTIAL***." (See, e.g., Baxter Decl., Ex. 1, at 1 (declaration of Sept. 19, 2003)
28 (emphasis added).)  By these declarations, Samsung is simply stating that it need no longer offer

1  licenses of its declared-essential patents in the event that the patents are no longer deemed

2  essential to any standard.  (Reply Libchaber Decl. ¶ 18.)  As a matter of French law, the language

3  does not establish the duration of a license.

4  Apple concedes that neither the ETSI policy nor the ETSI declarations specify a royalty

5  rate.  (Opp. at 17-18; Molfessis Decl. ¶¶ 29, 106.)  Apple contends, however, that the price term

6  need not be specified in order to form a contract.  (Id.)  Apple's assessment of French law is

7  incorrect.  French law treats patent licenses as a type of lease.  (Libchaber Decl. ¶¶ 43-51; Reply

8  Libchaber Decl. ¶¶ 31-36.)  The *Cour de cassation*, the highest French Court, has held that "a

9  promise of lease can only be considered as a lease if it contains an agreement of the parties on the

10  price."  (Libchaber Decl. ¶¶ 43-51.)  The two cases cited by Prof. Molfessis are not to the contrary.

11  In the first case, the *Cour de cassation* "ruled that a bank had not acted abusively in determining a

12  price when it raised the price of a safety box by 100%, because the other party was timely

13  informed of that increase."  (Molfessis Decl. ¶ 37.)  However, in that case, the question was

14  whether the contract would be renewed on different terms, not whether the parties required a price

15  term.  The price for the safety box was known with specificity.  (Reply Libchaber Decl. ¶ 41.)

16  Prof. Molfessis also cites another *Cour de cassation* case in which the Court concluded that the

17  reference to a lease in a notarized document was sufficient to bind the signer to the terms of the

18  referenced lease.  (Molfessis Decl. ¶ 38.)  The Court's decision about the sufficiency of this

19  reference to the lease is not a ruling on whether price constitutes an essential element for the

20  formation of a lease.[3]  (Reply Libchaber Decl. ¶ 41.)

21  2.  Apple Did Not Accept Any Offer Made by Samsung

22  Apple's contention that it agreed to Samsung's alleged "offer" by practicing the UMTS

23

---

[3] Apple's citation to the testimony of Prof. Boucobza is likewise inapposite.  Prof. Boucobza considered the issue of contract formation within the context of an agreement independent from an ETSI declaration.  (Selwyn Ex. M at 1716.)  Contrary to Prof. Molfessis' opinion, Prof. Boucobza concluded that the ETSI declaration itself did not constitute a license.  (Id.)  For the same reason, Prof. Boucobza's statement that, even without a price term, "[t]he *framework* [ETSI] agreement is still valid" is not relevant.  (Id. n.17 (emphasis added).)  Prof. Boucobza distinguishes between "framework agreements," such as the ETSI IPR Policy binding all ETSI members, and "implementing contracts," which are actual license agreements established between individual ETSI members.  (Selwyn Decl., Ex. H (Hearing Transcript, *In the Matter of Certain 3G Wideband Code Division Multiple Access Mobile Handsets and Components Thereof*, Inv. No. 337-TA-601 (ITC July 11, 2008)) at 1661.)

standard is also incorrect.  Under French law, formation of a contract requires a clear acceptance of the offer by the promisee.  (Reply Libchaber Decl. ¶¶ 10-11.)  Here, Apple concedes that it never expressed acceptance of any offer of a license to Samsung.  Nor does Apple plead that it paid any royalties to Samsung for its use of Samsung's declared-essential patents.  Thus, under Apple's theory, Apple accepted Samsung's offer of license by practicing Samsung's patents, not informing Samsung of its actions, and not paying any royalties to Samsung.

This absurd theory of acceptance is unsupported by French law.  The case law Prof. Molfessis cites pertains to unrelated situations, such as the implied acceptance of a transportation contract by a rider boarding a bus.  (Molfessis Decl. ¶ 13.)  Further, Apple's theory is belied by its own conduct.  After Samsung brought suit against Apple for infringement of its patents, Apple sought a license to those patents.  (Am. Counterclaims ¶¶ 76-78.)  Accordingly, Apple's contention that its infringement of Samsung's patents constituted acceptance should be rejected.

### 3. Apple Has Failed To Plead That Any License Was Formalized as a Writing

Apple wrongly contends that under French law a patent license agreement need not be made in writing and that, even if such a requirement exists, Samsung's ETSI declarations constitute a sufficient writing.  (Opp. at 17.)  Neither contention is supported.  Prof. Molfessis concedes that, under French law, "acts bearing a transfer or a license . . . must be acknowledged in writing, under penalty of nullity."  (Molfessis Decl. ¶ 109.)  He nevertheless contends that the provision is inapplicable because this particular article of the French civil code applies only where the contract is negotiated ("gré à gré"), as opposed to a contract of adhesion offered on a "take it or leave it" basis.  Prof. Molfessis provides no legal support for his contention.  Nor does he ever opine that Samsung's ETSI declaration are preformulated boilerplate contracts, the formation of which requires no judicial intervention.  (Reply Libchaber Decl. ¶ 22.)  Obviously, given that Apple is seeking judicial determination of the royalties to be paid, Samsung's declarations cannot be preformulated license agreements.  (Reply Libchaber Decl. ¶ 23.)

Prof. Molfessis' assertion that Samsung's declarations satisfy the writing requirement, despite the absence of any corresponding writing by Apple, must also be rejected.  Prof. Molfessis' contention that only Samsung's assent to a patent license is necessary is unsupported

by the commentary he cites, which does not reference patent licenses at all.[4]  (Reply Libchaber Decl. ¶ 25.)  To the contrary, French law requires that both parties assent to a patent license in writing to avoid the very issue in dispute here—whether or not an agreement exists at all.  (Id.)

### 4. Samsung's Declarations Were Not *Intuitu Personae* and, Therefore, Do Not Constitute a License

Apple's next contention, that license agreements need not be *intuitu personae* (Opp. at 18-19), follows from its untenable position that Samsung's ETSI declaration was a one-size-fits-all offer that could be accepted by anybody.  (See supra Section IV.D.1.)  This theory is implausible, as the ETSI IPR Policy obviously contemplates individualized license agreements by providing that members may grant licenses "subject to the condition that those who seek licenses agree to reciprocate."  (ETSI IPR Policy ¶ 6.1.)  In other words, an ETSI IPR member may customize a license offer, distinguishing between a party that owns other patents and one that does not.[5]

### 5. Apple Has Failed To State a Claim for Breach of a Contract To Negotiate for Which Relief Can Be Granted

At best, the ETSI IPR Policy and the ETSI Declarations establish only that Samsung had an obligation to negotiate.[6]  (Libchaber Decl. ¶ 103.)  However, Apple has failed to allege facts that would constitute a breach of such an agreement for which relief can be granted.

Apple alleges that Samsung committed breach by bringing a suit for infringement and seeking an injunction.  (Opp. at 21-22.)  Apple also alleges that Samsung committed breach by refusing to offer Apple a license on FRAND terms and failing to timely disclose its IPR.  (Id. at 22-23.)  The damages Apple seeks are, again, related to Samsung's initiation of this lawsuit.  (Am.

---

[4]  Prof. Molfessis' reliance on the Luxembourg Convention (Decl. ¶ 111) is not only irrelevant, but the Convention actually specifies that the royalty at which a patent is licensed must be stated in writing.  (Reply Libchaber Decl. ¶¶ 26-27.)

[5]  Apple mischaracterizes Laëtitia Benard's statement concerning contractual offers to the public at large by adding bracketed words and omitting others.  (Opp. 18-19.)  Ms. Benard states that, generally, "French law accepts the concept of an offer to the public at large," but concludes that the ETSI Declaration does not constitute such an offer because it is neither firm nor offers a license on determined conditions.  (Selywn Decl., Ex. I (Statement from Laëtitia Benard (Sept. 12, 2011)) at ¶ 9.)

[6]  Construing the ETSI IPR Policy in this way does not render it "toothless."  (Opp. at 20.)  ETSI's General Assembly can remedy a member's refusal to grant a license to Essential IPR on FRAND terms without any judicial intervention by modifying the appropriate standards so that the unlicensed IPR is no longer essential.  (ETSI IPR Policy § 8.2.)

1  Counterclaims ¶¶ 184, 190.)  However, Samsung's initiation of this lawsuit cannot be a breach of
2  an agreement to negotiate, because a party does not oblige itself to reach an agreement merely by
3  consenting to negotiate.  (Libchaber Decl. ¶¶ 61-68.)  Rather, these allegations are premised on the
4  assumption that Apple is licensed to the patents-in-suit and, therefore, Samsung cannot bring a
5  lawsuit against Apple.  (Am. Counterclaims ¶ 49.)  Because this assumption is unsupported by
6  French law, Apple has failed to state a claim for which this Court may grant relief.  Moreover,
7  because Apple seeks relief for breach of an actual license, it has not pled damages that arise from
8  breach of an agreement to negotiate.  An agreement to negotiate does not require the parties to
9  reach an actual agreement and breach of such an agreement does not entitle a claimant to the
10 benefits of an agreement that might have resulted from successful negotiations.  (Libchaber Decl.
11 ¶ 93; Copeland v. Baskin Robbins U.S.A., 96 Cal. App. 4th 1251, 1261-62 (Cal. Ct. App. 2002).)

12      **E.     Apple's Alternative Pleading Under California Law Must Also Be Dismissed.**

13         Apple pleads in the alternative that, even if French law does not apply to its claim for
14 breach of the ETSI agreement, it has shown the existence of an enforceable license agreement with
15 Samsung under California law.  (Opp. at 19.)  In support of this dubious proposition, Apple cites
16 Ess Tech., Inc. v. PC-TEL, Inc., No. C-99-20292, 1999 WL 33520483 (N.D. Cal. Nov. 4, 1999).
17 In Ess Tech., however, the court declined to dismiss a claim for specific performance of the
18 defendant's membership agreement with an SSO when, after extensive license negotiations
19 between the parties, the plaintiff made a "take-it-or-leave-it-offer," and told the defendant that its
20 "only recourse was to . . . 'go to court and let them decide.'"  Ess Tech. at *1.  Here, Apple has not
21 brought a counterclaim for specific performance of Samsung's membership agreement with ETSI.
22 Rather, Apple seeks a declaratory judgment that, under California law, it has a license to
23 Samsung's standards-essential patents despite not having negotiated such a license and while
24 practicing Samsung's intellectual property without Samsung's knowledge.  Not surprisingly,
25 Apple cannot cite any California law supporting its position.

26      **F.     Apple's Promissory Estoppel Claim Must Be Dismissed.**

27         Apple's amended complaint fails to allege facts that, if proven, would adequately plead a
28 promissory estoppel claim.  Apple contends that French law governs its promissory estoppel

counterclaim.  (Opp. at 17.)  French law, however, does not recognize the doctrine of promissory estoppel.  (Reply Libchaber Decl. ¶ 51.)  Rather, French cases have simply prohibited parties from making contradictory statements before a court.  Prof. Molfessis' statement that the *Cour de cassation* "***will likely*** apply the principle not only for procedural matters, but also with regard to substantive issues" (Molfessis Decl. ¶ 54), betrays the fact that French courts have only recognized an estoppel doctrine within the context of court proceedings.  (Reply Libchaber Decl. ¶ 52-54.)

Apple's promissory estoppel claim is not and cannot be based on any sort of pleading relating to contradictory statements made in court.[7]  Rather, Apple alleges that "Samsung made clear and definite promises to potential licensees through its commitments to ETSI that it would license the Declared-Essential Patents on FRAND [terms]."  (Am. Counterclaims ¶ 186.)  Because such promises do not form the basis for any estoppel claim under French law, Apple's promissory estoppel counterclaim must be dismissed.[8]  (Reply Libchaber Decl. ¶ 55.)

## V.    CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court dismiss Apple's Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, and Twenty-Ninth Counterclaims.

---

[7] Apple's promissory estoppel claims do not rely on the judicial representations that Apple cites in its Opposition and they are, therefore, irrelevant.  Moreover, Samsung did not allege that commitments to ETSI gave rise to a promissory estoppel claim in the previous litigation cited by Apple.  (Opp. at 25.)

[8] Applying California law, Apple is still not entitled to promissory estoppel.  In order to invoke the doctrine, Apple must demonstrate that Samsung made a promise "definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages."  Glen Holly Entertainment, Inc. v. Tektronix Inc., 343 F.3d 1000, 1017 (9th Cir. 2003) (citing Ladas v. Cal. State Auto. Ass'n, 19 Cal. App. 4th 761 (Cal. Ct. App. 1993)).  For the reasons set forth in Section IV.D.1, the ETSI Declaration is too indefinite to establish the scope of a duty on the part Samsung to license its patents to Apple.

DATED: January 9, 2012                Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Victoria F. Maroulis*
   Charles K. Verhoeven, Kevin P.B. Johnson,
   Victoria F. Maroulis, Michael T. Zeller
   Attorneys for SAMSUNG ELECTRONICS CO.,
   LTD., SAMSUNG ELECTRONICS AMERICA,
   INC. and SAMSUNG TELECOMMUNICATIONS
   AMERICA, LLC