# EXHIBIT B

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                SAN JOSE DIVISION

4

   ----------------------------------x
5  APPLE INC., a California          )
   corporation,                      )
6                                    )
                    Plaintiff,       )
7                                    )
          vs.                        )
8                                    )No. 11-CV-01846LHK
   SAMSUNG ELECTRONICS CO., LTD.,    )
9  a Korean entity; SAMSUNG          )
   ELECTRONICS AMERICA, INC., a      )
10 New York corporation; SAMSUNG     )
   TELECOMMUNICATIONS AMERICA, LLC,  )
11 a Delaware limited liability      )
   Company,                          )
12                                   )
                    Defendants.      )
13 ----------------------------------x

14

15

16

17    VIDEOTAPED DEPOSITION OF TONY GIVARGIS, PH.D.

18              Los Angeles, California

19            Tuesday, December 6, 2011

20

21      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

22

23 Reported by:

24 SUSAN A. SULLIVAN, CSR #3522, RPR, CRR

25 JOB NO. 44330

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 5

1  MR. SHAH: Ali Shah, WilmerHale, for the witness
2  and representing Apple.
3  THE VIDEOGRAPHER: Thank you.
4  And will the reporter now swear or affirm
5  the witness.
6
7  TONY GIVARGIS, PH.D.,
8  called as a witness, having been duly sworn by
9  the court reporter, was examined and testified
10  as follows:
11
12  EXAMINATION
13  BY MS. MAROULIS:
14  Q  Good morning, Mr. Givargis. How are you
15  today?
16  A  Good, thank you.
17  Q  My name is Victoria Maroulis and I will be
18  asking you some questions today.
19  Have you ever been deposed before?
20  A  No.
21  Q  In that case let me briefly run you through
22  the rules of the deposition.
23  First of all, do you understand that you
24  are testifying today like you would be in a court of
25  law under oath even though we're sitting in a

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 35

1  thing?
2      A   Not the entire thing, no.
3      Q   How did you decide what portions of that
4  file history to review?
5      A   The file history was provided to me by the
6  attorneys.
7      Q   The file history that you see before you is
8  double-sided, so do you remember giving me documents
9  that is this thick or thicker or was it a smaller
10 document?
11     A   I recall a smaller document.
12     MS. MAROULIS:  Counsel, I would appreciate
13 seeing the version of the file history that was
14 provided to the witness.
15     MR. SHAH:  I can represent that we provided the
16 certified file history.
17     MS. MAROULIS:  The entire file history?
18     MR. SHAH:  We did.
19     MS. MAROULIS.  Via PDF file, not via paper.
20     Q   BY MS. MAROULIS:  This is not a memory
21 test, but do you recall any references to Java in
22 the context of applets in the file history?
23     A   There was absolutely no reference to Java
24 in the file history that I reviewed.
25     Q   Was there any reference to applet being

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 36

1  operating-systems independent?
2      A    I do not recall any reference to operating-
3  system-independent applets in the file history that
4  I reviewed.
5      Q    Turning back to Exhibit 2 which is the
6  patent-in-suit, is it correct, sir, that there's
7  only one place where applets are mentioned in the
8  patent?
9      A    There is only one place in the
10 specification that refers to patents.
11     Q    Thank you.
12     A    And to applet.
13     Q    Thank you for correcting me.  I did mean
14 specification.
15          And is it correct, sir, that that place in
16 the specification is Column 3, Lines 8 through 14?
17     A    Yes, that is correct.
18     Q    This passage does not mention Java as well,
19 correct?
20     A    That is correct.
21     Q    And it does not mention operating-systems
22 independent.
23     A    That is correct, yes.
24     Q    Why do you cite this passage to support
25 your definition in your declaration?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 37

1   A   Yes.  The important element of this passage
2  is the part that says at least one applet within an
3  application model -- module or in each of the
4  application modules, and that relationship of an
5  applet within an application module or in the
6  context of an application module is relevant to my
7  understanding and definition of applets being
8  interpreted by a host application module.
9   Q   Where do you see the word "within," sir?
10  A   There is no "within" in this, in this
11 particular text.
12  Q   Okay.
13  A   There's an association, yes.
14  Q   Can you explain how you read this last
15 sentence to support your definition.
16  A   "Application modules of the portable
17 terminal include at least one applet and each of the
18 application modules, that is each menu of the
19 portable terminal, independently performs multi-
20 tasking."
21      So as I interpret it, the applets run
22 within or execute within an application module or
23 execute in the context of an application module.
24  Q   Do you draw a distinction between
25 "application module" and "program"?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 38

1    A    Typically in computer science the two terms
2    are often interchangeable, but an application module
3    does represent an entity that has certain features
4    that one can -- one can point at or determine.
5    Q    So you agree me that in the definition at
6    issue we can use "program" instead of "application
7    module"?
8        MR. SHAH:  Objection; mischaracterizes the
9    testimony.
10       THE WITNESS:  I agree that commonly one would,
11   in conversational sort of environments one would
12   sort of interchange "program" with "application" but
13   an application is a well-defined entity.
14   Q    BY MS. MAROULIS:  What do you mean when you
15   say application is a well-defined entity?
16   A    A computer program is just some
17   instructions on how to compute the function.  An
18   application certainly has a program or performs many
19   functions but in addition has certain properties.
20   It has a starting point, it has some resource
21   utilization requirements, it is typically packaged
22   in some form so it can be distributed or stored on a
23   hard disc, et cetera.
24   Q    What in particular about this sentence
25   supports the notion in your declaration of

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 39

1  operating-system independent?
2      A    This passage does not make reference to
3  operating-system independent.  However, the
4  association between an applet and an application
5  module, together with the claim language and the
6  prosecution, the file history, does suggest to me
7  that the applet requires the application module as
8  a, sort of as a context, and that relationship is
9  what one would expect from Java applets or Java-like
10 applets, that interpreted.
11     Q    Setting aside the claim language and
12 prosecution history, is it correct that there's
13 nothing in this particular passage that indicates
14 operating-system independence?
15     A    Nothing in the passage mentions anything
16 about being operating-system independent, yes.
17     Q    Let's take a look at the claim language.
18 For example, Claim 1 in Column 7, do you see that?
19     A    Yes.
20     Q    The relevant limitation is "Generating a
21 music background play object, wherein the music
22 background play object includes an application
23 module including at least one applet."
24          Is there any mention of operating-system
25 independence here?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 40

1      A    No.

2      Q    Is there anything in this claim that you
3   see that supports your notion of operating-system
4   independence?
5      A    What I see in this sentence, passage, is,
6   again, the association between an applet running or
7   an applet that is within an application module and
8   that association to me suggests a Java-like
9   interpreted environment.
10     Q    Did you review the testimony of the
11  inventor of this patent?
12     A    Yes. I reviewed a subset of it.
13     Q    Did you see that the inventor who was
14  developing this technology was working with system-
15  dependent applets?
16     A    That is correct, yes.
17     Q    Which system-dependent applets was he
18  working with, to your understanding?
19          MR. SHAH: If you need to see any documents to
20  refresh your recollection, you can ask.
21          THE WITNESS: Yes. I think this one I can
22  answer without the document, but it was a Qualcomm
23  chipset.
24     Q    BY MS. MAROULIS: Do you disagree that the
25  technology he was working on is described by Claim

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 41

1   1?
2       MR. SHAH:  Object to the extent it calls for a
3   legal conclusion.
4       THE WITNESS:  I have not formed that position
5   yet.
6       Q    BY MS. MAROULIS:  Do you understand that he
7   was asked during deposition about the embodiments of
8   the patent?
9       MR. SHAH:  Same objection.
10      THE WITNESS:  Yes.  I'm not sure exactly what he
11  was asked.
12      Q    BY MS. MAROULIS:  If the technology that he
13  was working on embodies this claim would you agree
14  with me that the claim includes applets that are
15  also system dependent?
16      MR. SHAH:  Same objection.
17      THE WITNESS:  Based on -- I recognize that the
18  inventor was working with a system that was
19  OS-dependent, specifically the Qualcom chipset.
20  However, that use of the term "applet" within that
21  context was unusual or it was not consistent with
22  the common understanding of the term "applet" at the
23  time and the '711 patent does not make that
24  distinction clear.
25      Q    BY MS. MAROULIS:  If the '711 patent does

```
1   State of California   )
                          )  ss.
2   County of Los Angeles )

3

4           I, SUSAN A. SULLIVAN, CALIFORNIA CSR No.
5   3522, RPR, CRR, do hereby certify:
6           That prior to being examined TONY GIVARGIS,
7   PH.D., the witness named in the foregoing
8   deposition, was, before the commencement of the
9   deposition, duly administered an oath in accordance
10  with C.C.P. Section 2094;
11          That the said deposition was taken before
12  me at the time and place therein set forth, and was
13  taken down by me in shorthand and thereafter
14  transcribed into typewriting under my direction and
15  supervision; that the said deposition is a true and
16  correct record of the testimony given by the
17  witness;
18          I further certify that I am neither counsel
19  for, nor in any way related to any party to said
20  action, nor in any way interested in the outcome
21  thereof.
22          IN WITNESS WHEREOF, I have subscribed my
23  name on this 6th day of December, 2011.
24                      _____
25                          SUSAN A. SULLIVAN
```