1

2   HAROLD J. MCELHINNY (CA SBN 66781)          WILLIAM F. LEE
    hmcelhinny@mofo.com                         william.lee@wilmerhale.com
3   MICHAEL A. JACOBS (CA SBN 111664)           WILMER CUTLER PICKERING
    mjacobs@mofo.com                            HALE AND DORR LLP
    JENNIFER LEE TAYLOR (CA SBN 161368)         60 State Street
4   jtaylor@mofo.com                            Boston, MA 02109
    ALISON M. TUCHER (CA SBN 171363)            Telephone: (617) 526-6000
5   atucher@mofo.com                            Facsimile: (617) 526-5000
    RICHARD S.J. HUNG (CA SBN 197425)
6   rhung@mofo.com
    JASON R. BARTLETT (CA SBN 214530)           MARK D. SELWYN (SBN 244180)
7   jasonbartlett@mofo.com                      mark.selwyn@wilmerhale.com
    MORRISON & FOERSTER LLP                     WILMER CUTLER PICKERING
8   425 Market Street                           HALE AND DORR LLP
    San Francisco, California  94105-2482       950 Page Mill Road
9   Telephone:  (415) 268-7000                  Palo Alto, California 94304
    Facsimile:  (415) 268-7522                  Telephone: (650) 858-6000
10                                              Facsimile: (650) 858-6100

11

12  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                          SAN JOSE DIVISION

17  APPLE INC.,                                 Case No.    11-cv-01846-LHK (PSG)

18                  Plaintiff,                  **DECLARATION OF MIA MAZZA
                                                IN SUPPORT OF MOTION TO
19        v.                                    COMPEL PRODUCTION OF
                                                DOCUMENTS AND THINGS**
20  SAMSUNG ELECTRONICS CO., LTD., A
21  Korean business entity; SAMSUNG
    ELECTRONICS AMERICA, INC., a New York
22  corporation; SAMSUNG
    TELECOMMUNICATIONS AMERICA, LLC, a
23  Delaware limited liability company.,

24                  Defendants.

25

26

27

28

I, Mia Mazza, declare as follows:

1.      I am a partner in the law firm of Morrison & Foerster LLP, counsel for Apple Inc. ("Apple").  I am licensed to practice law in the State of California.  Unless otherwise indicated, I have personal knowledge of the matters stated herein or understand them to be true from members of my litigation team.  I make this Declaration in support of Apple's Motion to Compel Production of Documents and Things.

2.      To date, Apple has produced more than 870,000 pages of documents to Samsung in support of Apple's affirmative case.  This excludes a large number of improperly rendered documents that were clawed back immediately after their production.  Apple has also produced more than 400,000 pages of documents to Samsung in Apple's offensive ITC proceedings, which will be available for cross-use in this case under the parties' negotiated Protective Order.

3.      The Court's September 28, 2011, Order required Samsung to produce several categories of documents by Friday, October 7, 2011.  Samsung, citing technical difficulties, did not finish producing the required documents until Tuesday, October 12, 2011, the day before the October 13, 2011 hearing on Apple's Motion for Preliminary Injunction.  Over the following six weeks the only documents Samsung produced in response to Apple's document requests relating to Apple's claims against Samsung were attachments that had been omitted from Samsung's preliminary injunction production.

4.      Samsung subsequently stopped producing documents in Apple's offensive case.  Between October 18, 2011, and December 21, 2011, with the exception of Thanksgiving week, the parties engaged in weekly meet-and-confer calls amongst non-lead counsel.  Throughout each week, the parties exchanged correspondence regarding outstanding document production issues.  Throughout that period, however, Samsung did not produce a *single* additional document (other than some missing attachments) responsive to Apple's document requests relating to its claims against Samsung.  On Apple's agenda every week, and in at least one letter every week, Apple pushed Samsung to produce additional documents that Samsung was supposed to have produced by October 7, 2011.  Despite these regular discussions, Apple advised Samsung on November 30,

2011, that Apple would be moving to compel on December 8, 2011.  On December 7, 2011, the day before Apple filed its motion, Samsung started producing documents.

5.     Between September 30, 2011 and December 1, 2011, Samsung deposed 48 Apple patent prosecutors and inventors.  The parties had agreed that each deponent's relevant documents would be produced no fewer than five days before his or her deposition.  Between late September and early November, Apple produced documents to Samsung almost every day.  More than 15,000 documents were produced by Apple during that time frame, totalling more than 750,000 pages.

6.     With the March 8, 2012, discovery cut-off quickly approaching, Apple has noticed the depositions of 38 Samsung witnesses, and expects those depositions to take place primarily in January and early February 2012.  At least two of these witnesses are software programmers who helped develop and write the source code for the allegedly infringing "rubber banding" feature claimed by U.S. Patent No. 7,469,381.  Twenty of these individuals are industrial or graphical user interface designers, identified by Samsung or its documents as being involved in the design of the Samsung products at issue.  Other noticed deponents were involved in the hardware redesign of the Galaxy Tab 10.1.  Still others were copied on documents showing Samsung's analysis of Apple's products.

7.     This list of 38 witnesses is just the initial list of individuals whom Apple would like to depose.  Apple plans to depose several additional witnesses in February 2012, including Samsung employees with knowledge of Samsung's product development, witnesses familiar with sales and financial information, and employees responsible for customer surveys, marketing and business strategy.  Apple also plans to depose several additional Samsung witnesses with knowledge relevant to Apple's trademark infringement, damages and other claims.  Because of the sparsity of Samsung's document production, however, Apple has had difficulty both preparing for these depositions and identifying the most relevant additional deponents.  The financial, marketing, design and technical documents being sought in this motion are relevant to all of these depositions.

8.      Samsung has resisted scheduling 26 of the 38 depositions that Apple has noticed, and will not tell Apple which of these it will not schedule.  To date, Samsung has provided dates for only 12 of these deponents.  Samsung recently agreed to notify Apple by January 13, 2012 which of its witnesses it will not put up for deposition voluntarily.

9.      Between December 22, 2011, and December 31, 2011, counsel for Samsung sent at least 16 discovery-related letters to counsel for Apple.  Thirteen of those letters were focused on Samsung's requests of Apple, for everything from search terms, interrogatory responses, special inspections of alleged prior art, MCOs, and prototypes to the return of memory cards, repeating an inventor deposition, Samsung's Rule 30(b)(6) notice, and even the meet-and-confer process itself.  Samsung also propounded more than 100 document requests on December 30, 2011.

10.     Since January 1, 2012, Samsung has sent numerous communications to Apple in which Samsung claimed not to understand Apple's requests, claimed they are "not ripe," asserted that they are overbroad without identifying a specific, narrowed scope of production Samsung would agree to, or offered to produce documents but with additional conditions and soft or far-off deadlines.

11.     The parties held their first in-person lead trial counsel meeting on January 5, 2012, to try to crystallize each party's position on numerous outstanding discovery issues and resolve at lesat some of them.  At the end of the meeting, the parties agreed to exchange letters the next day (January 6) providing their best positions on certain issues discussed.  On January 6, counsel for Samsung sent me an email stating that she would not be able to provide the letter until Sunday, January 8.  There was no word from Samsung on Sunday.  On Monday morning, counsel for Samsung stated that she was "finalizing [Samsung's] written response."  The letter finally arrived at 7:45 p.m. on Tuesday, the same day the parties had originally agreed their briefs would be filed.  Attached hereto as Exhibit A is a true and correct copy of Samsung's January 10, 2012, letter.

12.     Samsung's delay in producing technical documents has hampered Apple's ability to prepare for depositions of Samsung's technical witnesses, which commenced January 11, 2012 (the day of this submission).  Their delay in producing even custodial documents is now beyond egregious:  this morning, the deposition of one Samsung witness began at 9:00 a.m.  Shortly thereafter, Samsung produced 476 Korean-language documents from her files.  And this evening (January 11), Samsung produced 5,287 Korean-language documents (32,469 pages) from the files of a witness being deposed in 62 hours.

13.     I am informed by my litigation team as follows:  It would be unduly burdensome, if not impossible, for Apple to glean the technical information it seeks from Samsung based solely on teardowns of publicly-available versions of the accused products or on inspection of Samsung's piecemeal source code production (which does not and cannot show the evolution of the accused functionalities in Samsung's products over time).  Samsung's production of source code to date appears to include, at most, just a single version of software for each accused device.  Samsung has pushed out to consumer devices a number of software updates that have affected accused functionalities on Samsung's products.  Information regarding these and other updates is practically impossible for Apple to obtain on its own, as Apple cannot "undo" software updates that are applied to Samsung's products.  Thus, Apple would lose its ability to analyze an earlier version of Samsung's software on a device each time it wished to assess the impact of an update.  The various iterations of software updates, rendered obsolete by newer updates and versions of the software, are not readily publicly available.  This is particularly true for the earlier-released accused devices that are no longer actively supported or maintained.

14.     Attached hereto as Exhibit B is a true and correct copy of correspondence sent by counsel for Samsung to counsel for Apple, dated January 3, 2012, regarding Samsung's production of source code and technical documents.

15.     Attached hereto as Exhibit C is a true and correct copy of a letter sent by counsel for Samsung to counsel for Apple, dated December 30, 2011, regarding Samsung's production of additional sketchbooks, CAD, and physical models.

16.     Samsung has a practice of designing a core product, such as the Galaxy S phone, and then offering that product under a variety of names with only slight design modifications. Attached hereto as Exhibit D are true and correct copies of a printout of a web page discussing Samsung's practice.

17.     Samsung has produced models of the F700 mobile phone, which is a non-accused device in this case.

18.     Samsung is currently running or has recently run advertisements that refer to Apple, that mock Apple, or that copy Apple's ads or use Apple's actresses, all to trade on Apple's goodwill.  Attached hereto as Exhibit E is a collection of true and correct copies of printouts from web pages discussing this practice.

19.     Samsung has made an overbreadth objection to Apple's request for product placement requests.  Attached hereto as Exhibit F is a true and correct copy of a letter from counsel for Samsung to counsel for Apple dated January 6, 2011, discussing this objection.

20.     Apple has learned of one survey, sent by Samsung to purchasers of Samsung products, concerning customer usage of and preferences for various Apple products, including the Apple products at issue.  Apple brought this survey to Samsung's attention on November 29, 2011, and again on January 6, 2012.  Attached hereto as Exhibits G and H are letters from counsel for Apple to counsel for Samsung regarding this survey.

21.     Attached hereto as Exhibit I is a true and correct copy of a letter sent by counsel for Samsung to counsel for Apple, dated January 2, 2012, regarding Samsung's production of revenue, sales, pricing, and other financial information..

22.     Attached hereto as Exhibit J is a true and correct copy of an excerpt of the transcript of the December 21, 2011, deposition of Tim Sheppard in *In the Matter of Certain Electronic Digital Media Devices and Components Thereof*, ITC Investigation No. 337-TA-796.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of January, 2012, at San Francisco, California.

*/s/ Mia Mazza*
Mia Mazza

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file this Declaration.  In compliance with General Order 45, X.B., I hereby attest that Mia Mazza has concurred in this filing.

Dated:  January 11, 2012                              _/s/ Michael A. Jacobs_____
                                                                          Michael A. Jacobs