# EXHIBIT I
# FILED UNDER SEAL

Confidential Attorneys' Eyes Only

```
                                                              Page 1
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4
 5   APPLE INC., a California
     corporation,
 6
                 Plaintiff,
 7
     vs.                           CASE NO.  11 cv 01846 LHK
 8
     SAMSUNG ELECTRONICS CO.,
 9   LTD., a Korean business
     entity; SAMSUNG ELECTRONICS
10   AMERICA,INC., a New York
     corporation; SAMSUNG
11   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited
12   liability company,
13               Defendants.
     _____/
14
15
16           C O N F I D E N T I A L
17       A T T O R N E Y S   E Y E S   O N L Y
18
19     VIDEOTAPED DEPOSITION OF BRIAN Q. HUPPI
20          REDWOOD SHORES, CALIFORNIA
21           TUESDAY, OCTOBER 18, 2011
22
23   BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR.
24   CSR LICENSE NO. 9830
25   JOB NO. 42679
```

Confidential Attorneys' Eyes Only

Page 4

1            REDWOOD SHORES, CALIFORNIA

2            TUESDAY, OCTOBER 18, 2011

3                 9:38 a.m.

4

5

6       THE VIDEOGRAPHER:  Good morning.  This is the
7  start of tape labeled No. 1 in the videotaped
8  deposition of Brian Huppi.
9       In the matter of Apple, Inc., versus Samsung
10 Electronics Co., Ltd., et al.
11      In the United States District Court, Northern
12 District of California, San Jose Division.  Case
13 No. 11 cv 01846 LHK.
14      This deposition is being held at 555 Twin
15 Dolphin Drive in Redwood Shores, California on
16 October 18th, 2011, at approximately 9:38 a.m.
17      My name is Pete Sais from TSG Reporting,
18 Inc., and I'm the legal video specialist.
19      Our court reporter is Andrea Ignacio in
20 association with TSG Reporting.
21      Will counsel please introduce yourselves, and
22 the court reporter can swear in the witness.
23      MR. MACK:  Brian Mack of Quinn Emanuel,
24 representing Samsung.
25      MR. BARTLETT:  Jason Bartlett of Morrison &

1  Foerster, representing Apple.
2
3                    BRIAN Q. HUPPI,
4         having been sworn as a witness,
5         by the Certified Shorthand Reporter,
6                 testified as follows:
7
8
9                EXAMINATION BY MR. MACK
10       MR. MACK:  Q.  Mr. Huppi, could you please
11  state your name and address for the record.
12       A    Sure.  It's Brian Quentin Huppi.  My address
13  is 262 Rutledge Street in San Francisco, California.
14       Q    Have you been deposed before?
15       A    Yes.
16       Q    How many times?
17       A    Once.
18       Q    And do you remember what case that was in?
19       A    It was a case involving Motorola.  I don't
20  remember the case number.
21       Q    Okay.  And was    were you deposed as your
22  role as an inventor on any patent asserted    asserted
23  in that case?
24       A    Yes.
25       Q    Okay.  Do you remember which patent it was?

Page 88

1  parallel, yes.
2       MR. MACK:  Q.  Would
3     A   They're heading in the same direction,
4  basically.
5     Q    would they be considered parallel or
6  substantially parallel?
7       MR. BARTLETT:  Objection; calls for a legal
8  conclusion.
9       THE WITNESS:  I think I'd have to see it
10  to    to be able to characterize it.
11      MR. MACK:  Okay.
12    Q   The next claim, Claim 3, says that:
13      "The conductive lines on different layers are
14  substantially perpendicular."
15      Do you see that?
16    A   Yes.
17    Q   And what did you understand the phrase
18  "substantially perpendicular" to mean when you
19  reviewed this patent application?
20      MR. BARTLETT:  Objection; calls for a legal
21  conclusion; calls for speculation; lack of foundation.
22      THE WITNESS:  Yeah, I can't give you, you
23  know, a legal definition of this.  But I can tell you
24  that in our    our design, we implemented the second
25  layer such that they were basically at right angles to

Confidential Attorneys' Eyes Only

Page 89

1  the first layer.
2        MR. MACK:  Q.  So would substantially
3  perpendicular mean orthogonal to you.
4        MR. BARTLETT:  Same objections.
5        THE WITNESS:  I'm not sure to that exact
6  definition.  I   again, I can only tell you how we
7  did it, which was they were   they were oriented
8  basically 90 degrees to each other.
9        MR. MACK:  Okay.  Fair enough.
10     Q   Claim 10   Claim 10, do you see the
11  "wherein" clause about halfway down, "wherein the
12  touch panel comprises," on Line 36?
13     A   Okay.  Yeah.
14     Q   And then it talks about a number of glass
15  members; do you see that?
16     A   Yes.
17     Q   Do you see a first glass member and then a
18  second glass member, two limitations down?
19     A   Yep.
20     Q   And then a third glass member two limitations
21  down from that?
22     A   Yes.
23     Q   Are you familiar with P E T, PET?  Do you
24  know what that is?
25     A   PET?

1    Q    Yeah.

2    A    Yes.  It's a type of plastic.

3    Q    Okay.  And PET is not a type of glass;
4  correct?

5         MR. BARTLETT:  Objection; calls for a legal
6  conclusion in this context.

7         THE WITNESS:  Yeah, I don't know the exact
8  definition of -- of PET.  I don't understand it to be
9  glass, no.

10        MR. MACK:  Okay.

11   Q    But a -- but a polymer plastic would not be a
12  type of glass; correct?

13        MR. BARTLETT:  Same objection.

14        THE WITNESS:  I -- yeah, I can't really
15  conclude on that.  I -- I mean, there are types of
16  plastic called plexiglas which is not -- it's not
17  silicon based or anything, but it's -- it's made out
18  of a polymer, but it's sometimes referred to as
19  plexiglas.

[REDACTED]

Page 91

2    Q    And are there certain benefits of using glass
3  over plastic?
4         MR. BARTLETT:  Objection; calls for expert
5  testimony; incomplete hypothetical; calls for
6  speculation.
7         THE WITNESS:  There are probably a number of
8  different pros and cons.  An example I can give you is
9  some    some pros to using glass are potentially the
10 durability of glass as far as it's scratch resistance,
11 and it has a different dielectric constant than
12 plastic, so there could be a potential pro to using
13 glass.  That's just a couple of examples.
14        MR. MACK:  Okay.  I think we'll go off the
15 record for a few seconds.
16        THE VIDEOGRAPHER:  This marks the end of
17 Volume I, Disc 1, in the deposition of Brian Huppi.
18        The time is 11:43 a.m., and we are off the
19 record.
20        (Recess taken.)
21        THE VIDEOGRAPHER:  This marks the beginning
22 of Volume I, Disc 2, in the deposition of Brian Huppi.
23        The time is 11:52 a.m., and we are on the
24 record.
25        MR. MACK:  Q.  Mr. Huppi, could you look at

Confidential Attorneys' Eyes Only

Page 92

1   Claim No. 11, please.
2       A   Yes.
3       Q   Claim No. 11 references something called
4   dummy features; do you see that?
5       A   Yes.
6       Q   And specifically it says that there are:
7           "Dummy features disposed in the space between
8   the parallel lines."
9           Do you see that?
10      A   Yes.
11      Q   And it also says that the dummy features
12  optically improve:
13          "The visual appearance of the touch screen by
14  more closely matching the optical index of the lines."
15          Do you see that?
16      A   Yes.
17      Q   Do you know who developed the idea of --
18  behind the dummy features?
19      A   I don't recall whose idea it was, no.
20      Q   Could it have been a collaborative effort
21  between you, Mr. Hotelling and Joshua?
22      A   Could have been.
23      Q   Okay.  And what -- what were the dummy
24  features?
25          MR. BARTLETT:  Objection; vague.