Exhibit 8

MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

January 7, 2012

Writer's Direct Contact
415.268.6024
MMazza@mofo.com

*Via E-Mail* (charlesverhoeven@quinnemanuel.com)

Charles K. Verhoeven
Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

Re:   *Apple v. Samsung*, Case No. 11-cv-1846-LHK (PSG) (N.D. Cal.)

Dear Mr. Verhoeven:

This letter follows up on the parties' in-person lead trial counsel meeting Thursday. This letter addresses only those issues related to Samsung's requests for information from Apple. Apple continues to be seriously concerned about the disproportionality between Samsung's meager document production and the substantial production Apple has made.

      A.   Apple's financial documents.

You asked us to confirm that Apple will produce comprehensive sales revenue data for the accused products, detailed by unit and dollar volume. Apple has already produced this information in the ITC 794 Investigation. Samsung will have access to and use of this data in this action as a result of the parties' agreement on cross-use.

      B.   Apple's Industrial Design sketchbook production.

We can confirm that undated sketchbooks were scanned, reviewed, redacted as appropriate, and produced. If there was a sketchbook bearing a pre-2003 date on the cover, but including a date on or after January 1, 2003, inside, it would have been scanned, reviewed, redacted as appropriate, and produced.

      C.   Information regarding NeXT software.

During the meeting, you asked us to identify the scope of Apple's agreed production of NeXT-related information. Apple agrees to produce to Samsung all information regarding NeXT software that was produced in the *Apple v. Motorola* matter that was pending in Wisconsin but is now pending in Illinois. We have been informed that this includes at least the following: source code for NeXTSTEP (described as release 3.0 and 3.3), NeXTSTEP

**MORRISON | FOERSTER**

Charles K. Verhoeven
January 7, 2012
Page Two

manuals, a book called "NeXTSTEP Operating System Software," and another set of books called "NeXTSTEP General Reference, Release 3." To the extent these and additional NeXT-related items were produced in the *Motorola* action, Apple will produce them subject to the confidentiality restrictions in the protective order operative in that case. We expect to complete this production by January 13, 2012.

In addition, Apple hereby produces, for inspection in Morrison & Foerster's San Francisco offices, a NeXTstation workstation with a working version of NeXTSTEP Operating System version 3.0 installed. Please let us know when you would like to come inspect.

Apple does not believe it is in possession, custody, or control of any NeXTcube workstation, any NeXTstation workstation running version 3.1 of NeXTSTEP Operating System, or any related executable software. To the extent Apple locates, after a reasonably diligent search, any NeXT-related source code for NEXTSTEP Operating System 3.0 or 3.1 beyond what was produced in the *Motorola* action identified above, Apple will produce it by January 13, 2012. Apple does not agree to conduct a further search for NeXT-related documents beyond what was produced in the *Motorola* action identified above.

     D.  Baseband source code.

Samsung has requested that Apple produce baseband source code for the accused products (as identified in Samsung's PLR 3-1 infringement contentions). We now understand that Apple has possession of certain Intel baseband code, although this does not include HDL code. We will review the Intel baseband code in Apple's possession to identify code we believe may be relevant to the accused functionalities, and (subject to obtaining Intel's consent) will make any relevant code available for your inspection on the source code computer in WilmerHale's Palo Alto offices no later than January 16, 2012. To the extent Samsung can provide more specificity regarding the baseband code that it believes is relevant to its infringement claims in this action—as Samsung did for the ITC 794 Investigation through Robert Becher's January 5 letter to Sam Maselli—we ask that you do so by Monday.

     E.  Apple's documents related to its own trademark and trade dress claims.

          1.  Apple's survey documents.

During the meeting, you requested that we confirm the scope of Apple's intent to produce further survey-related information. Apple agrees to produce, to the extent not already produced, all final survey reports, questionnaires, demographic studies, and raw survey data for all customer surveys conducted by Apple relating to iPhone, iPod touch, and iPad, to the extent they are located after a reasonable search, by January 31, 2012. Apple further agrees to produce all market research reports purchased by Apple in the ordinary course of business

MORRISON | FOERSTER

Charles K. Verhoeven
January 7, 2012
Page Three

relating to iPhone, iPod touch, and iPad, to the extent they are located after a reasonable search, by January 31, 2012.

       2.   Marketing and advertising documents.

During the meeting, you requested that we identify the advertising-related documents that Apple has produced thus far. All of the documents produced from the files of Sissy Twiggs, Art Rangel, and the MRA Server are related to advertising and marketing. Apple has provided custodial information for each document it has produced, to allow Samsung to readily locate this information.

You also requested that we identify additional marketing and advertising documents Apple intends to produce. Apple agrees to produce the following additional information, to the extent it can be located after a reasonable search and has not already been produced: all print, television, and outdoor advertisements regarding iPhone, iPad, and iPod touch, by January 13, 2012; all database reports of iPhone, iPad, and iPod touch use in media, by January 13, 2012; all media plans regarding iPhone, iPad, and iPod touch by January 20, 2012; all "click count" reports for search engine marketing regarding iPhone, iPad, and iPod touch by January 20, 2012; all advertising campaign binders regarding iPhone, iPad, and iPod touch, by January 31, 2012; all online display advertisements regarding iPhone, iPad, and iPod touch, by January 31, 2012; and all audits of media regarding iPhone, iPad, and iPod touch as run, by January 31, 2012.

We have been unable to find any documents referencing "builds" in the documents of Ms. Twiggs or the other custodians referenced above. It is our understanding that her reference to this term was to Apple's general advertising strategy of a single message or group of messages building upon itself over time. To the extent, if any, that documents regarding this general strategy have not already been produced, they will be found in the productions described in this Section E.

       3.   Documents requested by Apple of Samsung.

In a letter dated January 3, 2012, Apple requested that Samsung produce 13 specific categories of marketing and advertising documents by January 23, 2012. These are core documents that Apple needs for (among other things) its trademark and trade dress infringement and dilution claims and its damages and irreparable harm case. During Thursday's meeting, you asked us to advise as to whether Apple intends to produce documents in the same categories.

Apple intends to produce a broad range of documents regarding the marketing and advertising of its iPhone, iPad, and iPod touch products, and expects that this production will

MORRISON | FOERSTER

Charles K. Verhoeven
January 7, 2012
Page Four


cover at least the categories set forth in our January 3, 2012 letter. Apple has already begun producing these documents and will continue to produce them on a rolling basis.

        4.  Documents requested in certain Samsung RFPs.

During Thursday's meeting you asked us to confirm whether Apple has produced, or agrees to produce, the documents described in its Requests for Production Nos. 146, 152, 154, 156, 157, 159, 162, 165, 179, 181, 182, and 192, which you describe in a December 30, 2011, letter as "related to the alleged infringement/willful infringement by Samsung of Apple's trade dress, trademarks, and design patents."

To the extent non-privileged documents within these categories exist and are in Apple's possession, custody, or control, they have either been produced or will be included in the productions described in this Section E. Most of these requested documents are in the possession, custody, or control of Samsung, not Apple. For example, any information responsive to RFP 156 or 159 (documents relating to Apple's contention that Samsung willfully violated Apple's alleged rights in the Apple trademarks or trade dress), would be in Samsung's possession, custody, or control.

As mentioned during Thursday's meeting, to the extent documents responsive to RFP No. 157 (documents sufficient to show any "objection" made by Apple to Samsung regarding the design of the Samsung accused products) exist, they have already been produced in the documents sourced to Chip Lutton, Bruce Sewell, and Steve Jobs. Apple has provided custodial information for each document it has produced, to allow Samsung to readily locate this information.

    F.  Protective Order.

Apple does not agree to add the "Confidential" designation to the Protective Order as suggested by Samsung, unless the first sentence of Paragraph 12 is edited to read as follows:

> Prior to disclosing any Protected Material to any person described in ***Paragraphs 8(b)(iii), 9(b)(iii), or 10(c)(iii)*** (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes: (i) the name of the Person; (ii) the present employer and title of the Person; (iii) an identification of all of the Person's past or current employment or consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person, within the last five (5) years; (iv) an up-to-date curriculum vitae of the

**MORRISON | FOERSTER**

Charles K. Verhoeven
January 7, 2012
Page Five

> Person; and (v) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.

(Emphasis added and need not be included in final Protective Order.)  Unless we receive Samsung's consent to this edit before Monday, we will assume that the parties will be submitting competing versions of the Protective Order, with and without this edit, to the Court.

  G. Dates for noticed depositions of Apple witnesses.

During the meeting, we offered to provide deposition dates for all outstanding deposition notices no later than January 13, 2012, and demanded that Samsung do the same.  This proposal has been confirmed by Apple.  Samsung has not accepted it.

  H. Apple's search for "Samsung" and related terms.

    1. Search of design inventor documents.

Design inventor documents have been searched for the term "Samsung" and any relevant, nonprivileged documents located as a result of that search are being produced on a rolling basis.  Apple's production of those documents is substantially complete, but a small number of additional documents may be produced next week.

The names of the Samsung accused products have been run through the design inventor documents and added to the review database.  Any relevant, non-privileged documents located as a result of that search are being produced on a rolling basis.  Apple expects this production to be substantially complete by January 23, 2012.

    2. Search of non-inventor documents.

The word "Samsung" and the names of the Samsung accused products are included in the list of search terms being run against each relevant custodian in Apple's Market Research, Product Marketing, and Marketing Communications groups, and any relevant central files used by those groups.  Any relevant, nonprivileged documents located as a result of that search are being produced on a rolling basis.  Apple expects this production to be complete by January 31, 2012.

    3. Search for "Android" and "Droid."

Apple agrees to search for documents in the above-referenced locations that contain the word "Android" with the delimiter "DomainSender = Apple" and produce relevant, non-privileged documents located as a result of that search.  Apple will not search for "Droid" with or

MORRISON | FOERSTER

Charles K. Verhoeven
January 7, 2012
Page Six


without this delimiter, as "Droid" is a Motorola product, and we see no evidence that anyone at Apple used "Droid" as shorthand for "Android" or for anything else involving Samsung. Such a search would therefore not be reasonably calculated to lead to the discovery of admissible evidence, and the burden of including those documents in Apple's review would outweigh any relevance.

        4.  Aliases for "Samsung" or any Samsung accused product.

We have been unable to find any evidence that any of the design inventors or marketing custodians used any aliases for Samsung or for any of the accused products, but we will continue searching and if we find anything we will add it to the relevant search terms lists.

    I.  Apple's MCOs.

During the meeting, you requested that we identify the scope of Apple's agreed production of MCO data. Apple agrees to produce MCO data relating to the external appearance of products that are the subject of asserted patents, that it is able to locate after a reasonable search, by January 31, 2012. Apple will not produce MCO data relating to features other than external appearance.

    J.  Apple's working prototypes.

You requested that we identify the scope of Apple's agreed production of prototypes. Apple agrees to produce representative working prototypes relating to the asserted utility patents, that Apple is able to locate after a reasonable search, by January 31, 2012.

Apple will not produce pieces of prototypes, or non-working prototypes, and it will not attempt to make non-working prototypes work. The relevance of such items is far outweighed by the burden involved in producing them.

    K.  Stanford archive.

During the meeting, you asked for Apple's assistance in gaining full access to Stanford University's archive of Apple information. We are preparing a letter to Stanford, with the names you identified by email today, for Apple's transmission on Monday.

    L.  Peter Bressler.

You asked that Apple provide additional information regarding its disclosed expert Peter Bressler, including his association with Bresslergroup and his work in the smartphone and tablet space.

MORRISON | FOERSTER

MORRISON | FOERSTER

Charles K. Verhoeven
January 7, 2012
Page Seven


Mr. Bressler has not participated in projects with Bresslergroup for over 2 years, having turned over his client base to the new management in August of 2009.  He has agreed to sell his shares in Bresslergroup to that management team, and the settlement is expected to be complete by the end of this month.  Mr. Bressler last performed any consulting work for the Bresslergroup over a year ago, and that project did not involve smartphones or tablets.

As part of his work for Bresslergroup in 1991, Mr. Bressler worked on a tablet computer project for Telepad.  And in 1997–1998, Mr. Bressler, as part of his work for Bresslergroup, worked on a cellphone project for Motorola.  Since that time, neither he nor Bresslergroup has worked on any other mobile phone, smartphone, or tablet projects.

Besides Mr. Bressler's work on this case for Apple, Mr. Bressler is not currently working with, and has no plans to work with, any mobile phone, smartphone, or tablet manufacturer.  This includes Kodak, Motorola, Polk Audio, Thomson/RCA, Sony, or Hewlett-Packard.

Sincerely,

*/s/ Mia Mazza*

Mia Mazza

cc:    Samuel Maselli
       S. Calvin Walden
       Peter Kolovos