HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO COMPEL**<br><br>Date:    Jan. 19, 2012<br>Time:    10:00 a.m.<br>Place:    Courtroom 5, 4th Floor<br>Judge:    Hon. Paul S. Grewal |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................... 1

II.  ARGUMENT ........................................................................................................ 2

  A.  "All" Source Code and Technical Documents Showing Operation of
      Allegedly Infringing Product Features ..................................................... 2

    1.  Samsung's Motion to Compel Production of Source Code is Moot .......... 2

    2.  Samsung's Motion to Compel Production of Technical Documents
        is Similarly Unnecessary ................................................................ 4

  B.  "All" Source Code and Technical Documents Related to Known Prior Art ........... 6

  C.  All Documents Mentioning Samsung and its Accused Products ........................ 7

  D.  Samsung's Proposed Search Terms ........................................................ 9

  E.  Design History ................................................................................ 10

    1.  CAD and Sketchbooks ................................................................. 10

    2.  Models ................................................................................... 10

    3.  ███ ███ .................................................................................. 11

    4.  All Documents Regarding Tiger ..................................................... 11

  F.  Survey and Marketing Documents ......................................................... 3

  G.  Financial Documents ........................................................................ 3

  H.  Rule 30(b)(6) Deposition Notice .......................................................... 4

  I.  Fact Witness Depositions ................................................................... 6

CONCLUSION ...................................................................................... 9

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Acton v. Target Corp.*,
    No. C08-1149RAJ,
5
    2009 WL 5214419 (W.D. Wash. Dec. 22, 2009) ...................................................................... 5

6

*Affinity Lab of Texas v. Apple, Inc.*,
    No. C 09-4436 CW (JL),
7
    2011 U.S. Dist. LEXIS 53649 (N.D. Cal. May 9, 2011) ...................................................... 7, 8

8

*Bowers v. Mortg. Elec. Registration Sys., Inc.*,
    No. 10-4141-JTM,
9
    2011 WL 6013092 (D. Kan. Dec. 2, 2011) .............................................................................. 5

10

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
    No. C 05-04374 MMC(JL),
11
    2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ............................................................................ 7

12

*Fausto v. Credigy Servs. Corp.*,
    251 F.R.D. 427 (N.D. Cal. 2008) .............................................................................................. 4

13

14

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*,
    No. 10-cv-00148 LJO JLT,
15
    2011 U.S. Dist. LEXIS 67253 (E.D. Cal. June 23, 2011) ...................................................... 11

16

*J&M Assocs. v. Nat'l Union Fire Ins. Co.*,
    No. 06-cv-0903-W (JMA),
17
    2008 U.S. Dist. LEXIS 97542 (S.D. Cal. Dec. 2, 2008) ........................................................ 12

18

*JSR Micro, Inc. v. QBE Insurance Corp.*,
    No. C-09-03044 JPH (EDL),
19
    2010 WL 1338152 (N.D. Cal. Apr. 5, 2010) ............................................................................ 8

20

*Lipari v. U.S. Bancorp., N.A.*,
    No. 07-2146-CM-DJW,
21
    2008 WL 4642618 (D. Kan. Oct. 16, 2008) ............................................................................. 5

22

*Rahman v. Smith & Wollensky Restaurant Group, Inc.*,
    No. 06 Civ. 6198,
24
    2009 WL 72441 (S.D.N.Y. Jan. 7, 2009) .................................................................................. 9

25

*Ryan v. Paychex, Inc.*,
    Civ. No. 08CV1151 (WWE),
26
    2009 WL 2883053 (D. Conn. Sept. 1, 2009) ............................................................................ 8

19

20

21

22

23

24

25

26

27

28

*Securities and Exchange Comm'n. v. Aqua Vie Beverage Corp.*,
No. CV 04414-S-EJL,
2006 WL 2457525 (D. Idaho Aug. 23, 2006) ............................................................. 9

*Somerset Studios, LLC v. Sch. Specialty, Inc.*,
No. C 10-5527 MEJ,
2011 U.S. Dist. LEXIS 103927 (N.D. Cal. Sept. 14, 2011) ...................................... 7

STATUTES

Fed. R. Civ. P. 26(b)(2) ...................................................................................... 6, 7

Rule 26(b)(2)(C)(iii) ................................................................................................. 2

Rule 30(b)(6) ................................................................................................. 4, 6, 8

Rule 30(d)(1) ............................................................................................................ 6

Local Rule 3-4(a) ..................................................................................................... 2

Local Rule 37-2 ..........................................................................................*passim*

## I.    INTRODUCTION

Samsung lacks any legitimate reason for moving to compel.  Every one of Samsung's requests is either: (1) moot because Apple has already produced the requested documents or will produce the requested documents by a specific date; or (2) unreasonably broad because Samsung requests "all" documents—even those that bear no relationship to Samsung's claims or defenses.

Samsung's motion is an attempt to disguise its own failures to produce responsive documents and lack of compliance with this Court's orders.  Samsung has long refused to respond to Apple's requests for documents, ultimately offering inadequate last-minute compromises the day before Apple moved to compel.

By contrast, Apple fully set forth its positions, in writing, a full week before Samsung filed its motion.  (*See* Declaration of Jason R. Bartlett in Support of Apple's Opposition to Samsung's Motion to Enforce Various Court Orders filed herewith ("Bartlett Decl. ISO Opp. to Motion to Enforce") Ex. B.)[1]  In its letter, Apple explained that it had produced or committed to producing by a specific date much of the documents and things Samsung now requests.  (*See id.*) These documents and things come on top of the *millions* of pages of documents and *thousands* of models, prototypes, source code, CAD files, and other native-format data Apple already produced.  (Declaration of Jason R. Bartlett in Support of Apple's Opposition to Samsung's Motion to Compel ("Bartlett Decl. ISO Opp. to Motion to Compel") ¶ 2.)  Despite Apple's willingness to produce documents by a specific date or compromise where Samsung's requests were overly broad, Samsung has ignored or rejected Apple's offers and never explained why they are inadequate.  (*Id.* ¶ 3.)  Samsung's motion to compel should be denied.

---

[1] In the interest of avoiding filing redundant paper and to avoid attaching identical exhibits to multiple declarations, Apple refers herein to certain exhibits attached to the Bartlett Decl. ISO Opp. to Motion to Enforce.

## II.    ARGUMENT

### A.    "All" Source Code and Technical Documents Showing Operation of Allegedly Infringing Product Features

#### 1.    Samsung's Motion to Compel Production of Source Code is Moot

Samsung's assertion that Apple has refused to produce source code relating to the accused features in Apple's accused products is false.  In fact, Apple has produced its source code showing the operation of the accused features as required by Patent Local Rule 3-4(a), and *Samsung has inspected it*.  On October 7, 2011, in its Invalidity Contentions, Apple stated that "upon entry of an appropriate protective order … and upon receiving the consent of any necessary non-parties, Apple will make available the source code in its possession sufficient to show the operation of the accused functionality."  On December 6, having received a request for inspection of source code from Samsung two business days earlier on December 2, Apple informed Samsung that it was "currently prepared to produce" source code relevant to various accused features in the accused products.  For avoidance of doubt, Apple identified the specific categories of source code that it had available for Samsung's review.  (*See* the Declaration of Samuel J. Maselli In Support of Apple Inc.'s Opposition to Samsung's Motion to Compel Discovery ("Maselli Decl.") Ex. A.)  These categories consisted of:

- Portions of the Photos app, Photo Bucket app, and Camera app source code that relate to capturing images, displaying images, and attaching images to e-mail;

- Portions of the iPod and Music app source code that relate to playing music;

- Portions of the Clock app source code that relate to a world clock and time information;

- Portions of the Messages app source code that relate to display of incoming and outgoing messages; and

- Portions of Apple's source code relating to display of the app multitasking bar shown when a user double-clicks the Home button.

1  This code relates to the features accused of infringing the Samsung '055, '460, '711, '871, and '897

2  patents—in other words, all the "implementation" (i.e., not declared standards essential) patents

3  asserted by Samsung.  This code is "home grown" by Apple, unlike the code relating to the

4  accused features for the other seven declared-essential patents, which is not developed by Apple

5  but rather is owned and supplied by Intel.

6       Despite Apple's invitation on December 6, Samsung chose not to inspect Apple's source

7  code until January 6, 2012—the day *after* the in-person meet and confer that preceded Samsung's

8  filing of this motion.[2]  Samsung could have inspected this same Apple source code on any of the

9  20 business days between December 6 and January 6.  Moreover, in the four days between

10 Samsung's source code inspection on January 6 and the filing of Samsung's motion to compel on

11 January 10, Samsung did not advise Apple of any alleged deficiencies in the code that Apple had

12 made available and that Samsung had inspected.  Samsung's motion to compel likewise does not

13 identify *any* alleged deficiencies in the content or the scope of the source code inspected by

14 Samsung.

15      With respect to the source code for the baseband processor chips incorporated in the

16 accused products, Samsung fails to mention that these components are supplied by a non-party

17 vendor, Intel.  The source code for these components is confidential information owned by Intel.

18 As Apple informed Samsung before it filed this motion, Intel only provides Apple with some of

19 the source code for these chips.  Nonetheless, three days before Samsung filed its motion, Apple

20 advised Samsung that it would "review the Intel baseband code in Apple's possession to identify

21 code we believe may be relevant to the accused functionalities, and (subject to obtaining Intel's

22 consent) will make any relevant code available for your inspection" by January 16.  (Maselli

23 Decl. Ex. D.)  Thus, Apple did not take the "factually impossible" position that it does not have

24

25     [2]  Instead, on January 2, Samsung accused Apple of withholding source code.  (*See*
Maselli Decl. Ex. B.)  In response, *the very next day*, Apple reaffirmed—two days before the lead

26 counsel in-person meet and confer and eight days before Samsung filed its motion to compel—
that it was "currently prepared" to produce relevant source code in its possession, as identified in

27 Apple's December 6 letter, and advised Samsung that it "may begin its inspection at any time."
(*See* Maselli Decl. Ex. C.)

28

any baseband source code, but has instead informed Samsung that it does not have certain kinds of source code (*e.g.*, Hardware Design Language (HDL) source code) in its possession, but would be willing to produce any relevant Intel source code in its possession subject to Intel's consent. (*Id.*)

Since the filing of Samsung's motion, Intel has advised Samsung that it does *not* consent to Apple's production of Intel's source code, but would instead produce the relevant source code itself.  (*See* Maselli Decl. Ex. E.)  We understand that Samsung and Intel have been in communication since at least December 22, 2011 about the production of Intel's baseband source code for Apple's accused products.  (*See* Maselli Decl. ¶ 3.)  These discussions were still ongoing when Samsung filed its motion.  In fact, Intel informed Samsung on January 9—*two days before Samsung filed its motion to compel*—that it would produce the requested source code once its protective order concerns are addressed.  (*See* Maselli Decl. Ex. E.)

On January 13, Intel reiterated to Samsung that "subject to the entry of an adequate protective order, *Intel intends to produce HDL and source code sufficient to show the accused functionality of the relevant chips with respect to the seven declared-essential patents in suit*."  (*See id.* (emphasis added).)  Intel also stated that it "has not given Apple consent to produce" Intel source code because (1) "the proposed protective order is inadequate" and (2) "Samsung has no need for Apple to produce such source code" because "any confidential Intel source code in Apple's possession will either be (a) cumulative of the source code that Intel will be producing or (b) irrelevant."  (*Id.*)  Accordingly, this motion is moot (and indeed should never have been brought) because Samsung will be able to obtain all relevant Intel source code in Apple's possession and more from Intel.

**2.      Samsung's Motion to Compel Production of Technical Documents is Similarly Unnecessary**

In addition to making available source code, with its patent local rule disclosures, Apple produced detailed schematics, schematic board diagrams, and programming guides for the accused Apple products. These documents show circuit schematics, pin layouts, and subcomponents of the accused products, and include a comprehensive guide on programming in

iOS.  Apple's production of technical documents related to the accused Apple products has continued both in this action and a related action between the parties—to date, Apple's total production across both United States cases includes over *four million* pages of documents relevant to this action from the files of Apple engineers whose work relates to the accused Apple products.  (*See* Maselli Decl. ¶ 4.)[3]  These materials include additional schematics, bills of material, specifications, testing data, certification documentation, project build status information and data, and email correspondence concerning accused product technical issues.  Samsung's suggestion that Apple is continuing to "defy" its production obligations under the Patent Local Rules thus rings hollow.  Indeed, Samsung offers no specific explanation for why or how the vast number of technical documents produced by Apple to date are insufficient to show the operation of the accused functionalities.  Nor does Samsung's motion identify any category of technical documents, other than baseband processor related documents, that are allegedly "missing" from Apple's production.

        With respect to technical documents relating to the Intel baseband processor chips used in the accused Apple products, Apple received Intel's consent on January 11 to produce those Intel documents that Apple has located thus far.  (*See* Maselli Decl. Ex. E.)  As a result, Apple will be producing over 21,000 pages of such documents this week.  As was the case with the baseband source code, these baseband processor technical documents are third party confidential Intel documents.  These documents reflect



---

        [3] The parties have submitted two different proposed protective orders for the Court's consideration, but both protective orders permit cross-use of documents between this litigation and other ongoing litigation between the parties before the International Trade Commission.

1     •

2     •

3

4     •

5

6     •

7    (*See* Maselli Decl. ¶ 5.)  Accordingly, Samsung's motion to compel additional source code and

8    technical documents relating to the Samsung asserted patents is without merit.

9           **B.**     **"All" Source Code and Technical Documents Related to Known Prior Art**

10       Samsung moves to compel "all" source code and technical documents relating to "known

11    prior art" to Apple's asserted utility patents.  (Samsung Mot. at 6.)  Apple has already produced

12    documents sufficient to show all such alleged prior art references.  (Bartlett Decl. ISO Opp. to

13    Motion to Compel ¶ 4.)  Samsung fails to explain in its motion to compel why it needs "all"

14    documents "related" to those alleged references.  Samsung's request for "all" such documents

15    instead appears calculated to impose an impossible burden on Apple—to require Apple to search

16    through files, many 10 to 20 years old, to gather "all" documents, even those only tangentially

17    "related" to the alleged prior art references.  N.D. Cal. Civil Local Rule 37-2 requires Samsung to

18    "detail the basis for [its] contention that it is entitled to the requested discovery and must show

19    how the proportionality and other requirements of Fed. Civ. P. 26(b)(2) are satisfied."

20    Samsung has not met this burden.

21       Nor has Samsung identified the specific prior art it is seeking, except in one instance.

22    Samsung's sole example of prior art it still needs in this category concerns NeXT OS.  NeXT OS

23    is alleged to be relevant to a single asserted Apple patent, U.S. Patent No. 6,429,002 (the "'002

24    Patent").  The '002 patent claims a computer-controlled display system having a particular status

25    bar.  The status bar has programming modules, such as a clock or battery life indicator, which is

26    sensitive to user input.  In the accused Galaxy products, for instance, the user might be able to

27    touch the time indicator shown on the status bar to cause the date to be displayed.

28

1    The NeXTSTEP OS that is the subject of Samsung's motion was developed by NeXT,

2    Inc., a company founded by Steve Jobs and purchased by Apple in 1996 when Mr. Jobs rejoined

3    Apple.  *This was over fifteen years ago.*  It would be unduly burdensome to require Apple to

4    search for *all* documents and things relating to the NeXTSTEP OS, just to provide evidence

5    regarding the narrow question of whether the NeXTSTEP OS had a status bar within the meaning

6    of the '002 patent.  Nevertheless, Apple has already produced *all* source code that it has been able

7    to locate.  (Bartlett Decl. ISO Opp. to Motion to Compel ¶ 4.)  Apple has also agreed to produce

8    all technical documents relating to NeXTSTEP OS that Apple has previously produced in other

9    litigation.  (*Id.* ¶ 4 & Ex. 8 at 1-2.)  Apple also made available a NeXT OS 3.0 work station,

10   which Samsung already has inspected.  (*Id.* ¶ 4.)

11   Thus, Apple has already produced far more information than Samsung reasonably needs

12   relating to prior art defenses based on NeXT OS.  Samsung never explains why it needs more.

13   Thus, Samsung has failed to show how the "proportionality and other requirements of Fed. R.

14   Civ. P. 26(b)(2) are satisfied."  *See* Civil Local Rule 37-2.

### C.   All Documents Mentioning Samsung and its Accused Products

16   Samsung asserts that it is entitled to "all" documents showing Apple's analysis and

17   consideration of Samsung and Samsung products.  Samsung states that its demand for these

18   documents rests on "exactly the same basis upon which Apple demanded Samsung search for and

19   produce all documents using 'Apple' in certain custodians' files"—specifically, "because they

20   evidence the extent to which Apple designers, engineers, and marketing personnel were aware of

21   and copied Samsung's products."  (Samsung Mot. 7-8.)

22   This argument is premised on a false assumption of symmetry.  Apple is entitled to

23   Samsung's documents containing the word "Apple" because Samsung denied copying Apple's

24   design.  For this reason, the Court ordered Samsung to search for those documents:

> From the custodial files of each of Samsung designers of
> Samsung's Galaxy S 4G and Infuse 4G, Droid Charge phones and
> Galaxy Tab 10.1 table computer identified in Samsung's Rule 26(a)
> disclosures or interrogatory responses, all documents referencing
> the Apple products alleged by Apple to embody one or more of the
> ornamental or utility features claimed in the patents. All means all:
> email, memoranda, whatever. ***Samsung put these documents at***

*issue when*, at page 39 of its opposition to Apple's preliminary injunction motion, *it boldly declared that* "[a]lthough willful infringement, including *deliberate copying*, may be relevant to a preliminary injunction motion, Apple has offered no evidence of such *copying* or willful infringement."

(Dkt. No. 267 at 3.)

None of this reasoning applies to Apple.  There is no legitimate dispute whether Apple copied the Samsung products in suit.  Apple could not have done so, because there was nothing to copy at the time Apple introduced its products.  Apple's iPhone was introduced in 2007, the iPhone 3G in 2008, and the iPhone 4 in June 2010, but Samsung did not introduce the first of the products in suit until July 2010.  (Bartlett Decl. ISO Opp. to Motion to Compel ¶ 5.)  Apple introduced the iPad in 2010 and the iPad 2 in March 2011.  (*Id.*)  Samsung introduced its first tablet in November 2010 and its iPad 2 look-alike Tab 10.1 in June 2011.  (*Id.*)  In fact, Samsung's accused products were introduced *long* after Apple's design and technical work on current iPhone, iPad and iPod touch products were completed.  Accordingly, none of the evidence sought by Samsung in this category is relevant, because none of it can show that Apple personnel "were aware of and copied Samsung's products."   Indeed, Samsung has not even *alleged* that Apple copied any Samsung products or technologies.  Under these circumstances, Samsung does not and cannot meet its burden under Local Rule 37-2 to show that the burden of the requested production is proportional to its need.

Nevertheless, *solely* to avoid unnecessary motion practice, Apple has already searched for *and produced* inventor documents referencing "Samsung."  (*Id.* ¶ 6 & Ex. 8 at 5.)  Apple has also already agreed to produce market research and customer surveys, whether or not those documents mention Samsung.  Samsung alleges Apple failed to run the search term "Samsung" on files collected from other custodians, but has never identified those additional custodians or explained why such a search is necessary.  (*Id.* ¶ 6.)  In addition, Apple accepted a long list of Samsung's proposed search terms and has made reasonable attempts to narrow the handful it has not accepted, as discussed in the following section.  (*Id.* ¶ 7.)  Accordingly, to the extent that

1    Samsung had any basis to demand Apple search for "Samsung" and related search terms in its

2    documents—which it did not—the motion is moot.[4]

3        **D.    Samsung's Proposed Search Terms**

4            Pursuant to the Court's Order of September 28, 2011 (Dkt. No. 267), Apple disclosed to

5    Samsung the search terms it used to search the files of Apple design inventors.  Samsung was

6    unsatisfied with Apple's search and demanded that Apple run *114* new search strings.  (Bartlett

7    Decl. ISO Opp. to Motion to Compel ¶ 7.)  Apple agreed to run, and did run, almost all of

8    Samsung's requested searches.  (*Id.*)  Apple objected to some of Samsung's proposed search

9    terms, however, as facially overbroad.  Samsung demanded, for example that Apple search for all

10   instances of the word "look," as well as all instances of the word "feel."  Other searches were

11   unreasonable as proposed but Apple was able to propose modified searches that Samsung

12   accepted.

13           The remaining disagreements between Apple and Samsung are limited to a very small

14   number of remaining terms.  The specific terms in dispute were set out in Apple's January 5,

15   2012 letter to Samsung.  (Bartlett Decl. ISO Opp. to Motion to Enforce Ex. B at 7-10.)  Apple

16   believes that its proposals on these few remaining terms are more than adequate to provide any

17   relevant discovery to Samsung.  Moreover, as demonstrated in Apple's supporting papers,

18   applying Samsung's overbroad search terms without modification would result in an

19   unreasonable number of hits that have nothing to do with this case.  (Bartlett Decl. ISO Opp. to

20   Motion to Compel ¶ 7.)  Samsung has not responded to this point, nor does Samsung's motion

21   even attempt to explain why Apple's proposed compromises are deficient in any way.  Under

22   these circumstances, Samsung has failed to establish an adequate basis for the relief it seeks.

23   _____

24       [4] Samsung insinuates that Apple agreed to a reciprocal production of all documents
     containing their proposed search terms.  (Samsung Mot. at 7.)  Apple never made such a
25   sweeping agreement.  Rather, as noted above, Apple agreed to a reasonable search of the files of
     certain custodians, including inventors, despite Samsung's failure to articulate any need for such
     an exercise.  Apple has accepted the general principle that, where relevant to both sides,
26   documents on certain issues should be produced on a reciprocal basis.  But that concept cannot be
     applied indiscriminately to issues that, like the underlying copying issue here, are relevant to only
27   one party's case.

28

E.     **Design History**

Samsung wrongly argues that Apple has failed to produce relevant design history materials.  As detailed in the accompanying Opposition to Samsung's Motion to Enforce Various Court Orders ("Opp. to Motion to Enforce"), Apple has produced a substantial amount of design history documents, including CAD, sketchbooks, and models or prototypes.  The only items that Apple has *not* produced are items that are irrelevant or of such limited or questionable relevance that it would be unduly burdensome for Apple to search for and produce them.

1.     **CAD and Sketchbooks**

Samsung includes "CAD" in its motion headings and repeatedly emphasizes the relevance of CAD (*see, e.g.*, Samsung Mot. at 10 ("███████████  CAD Drawings, Prototypes, and Models Must be Produced"), but does not actually point to any additional CAD that Samsung needs.  This is because Samsung has nothing to point to.  Apple began producing CAD files long ago.  (Bartlett Decl. ISO Opp. to Motion to Enforce ¶ 4.)  As of December 30, 2011, Apple produced *all* of the CAD its industrial designers created during the development of *all released iPhone, iPod touch, and iPad product*.  (*Id.* Ex. B.)

Apple has not produced all electrical diagrams or other computer aided design documents relating to circuit boards, electrical and mechanical components, and other internal aspects of these products, because they are plainly not relevant to design patents or trade dress.  In any event, it is not even clear that Samsung is seeking these kinds of documents through its motion, and Samsung has not attempted to show the relevance of such documents.

In addition to CAD, as discussed in Apple's Motion to Enforce Opposition, Apple has produced sketchbooks related to every design patent at issue.  (*See* Opp. to Motion to Enforce Section I.)  Here too, it is unclear what else Samsung seeks by its motion.

2.     **Models**

Apple has produced all design models that it has been able to find (more than a thousand) that industrial designers created or had created when they were designing the products at issue for Samsung's inspection.  (Bartlett Decl. ISO Opp. to Motion to Enforce ¶¶ 4, 7.)  Apple has canvassed individuals working on touch hardware, design, operating system software, core driver

1   software, and product design to identify any working prototypes, and has asked that Samsung do

2   the same.  (*Id.* ¶ 8.)  Samsung has not responded.  (*Id.*)

3          Apple should not be expected to empty the company of non-working prototypes and spare

4   parts.  (*Id.*)  The burden of collecting, transporting, and presenting for inspection those pieces far

5   outweighs any relevance.



7          As discussed in the Opp. to Motion to Enforce,

8                                                      (*Id.* ¶ 9, Ex. H (example of

#### 4.      All Documents Regarding Tiger

23         Samsung's demand for "all documents regarding Tiger" fails for two reasons.  First,

24   Samsung has never propounded a Request for Production seeking Tiger documents.  Samsung's

25   failure to cite any Tiger-related RFP in its motion confirms as much.  Samsung cannot move to

26   compel production of documents that it has not requested under the Federal Rules of Civil

27   Procedure.  *See Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, No.10-cv-00148 LJO JLT,

28   2011 U.S. Dist. LEXIS 67253, at *9 (E.D. Cal. June 23, 2011) ("Defendant cannot expand the

1    scope of its requests on a motion to compel"); *J&M Assocs. v. Nat'l Union Fire Ins. Co.*, No. 06-

2    cv-0903-W (JMA), 2008 U.S. Dist. LEXIS 97542 (S.D. Cal. Dec. 2, 2008) ("The Court can only

3    compel the production of documents actually asked for in discovery").

4         Second, Samsung's demand places an impossible burden on Apple that far outweighs any

5    need by Samsung for Tiger-related documents.  Tiger is a version of the Mac OS X operating

6    system.  (Bartlett Decl. ISO Opp. to Motion to Compel ¶ 8.)  "All materials" relating to Tiger

7    would encompass a vast range of source code, technical materials, emails, project management

8    documents, marketing, advertising, finance, retail, and customer support documents.  Samsung's

9    insistence that Apple search for, collect, and produce *all* this material is wildly disproportionate to

10   any conceivable benefit it could provide Samsung.  The one and only aspect of Tiger that is even

11   alleged to be relevant here is *its dock icons*, which Samsung alleges constitute prior art to Apple's

12   '305 design patent.

13        Samsung alleges that the dock icons in Tiger, which look like this:



invalidate Apple's asserted design patent, which looks like this:



Although Apple does not believe that Tiger is relevant prior art, Apple produced documents and things sufficient to show the Tiger dock icons. (*Id.*)  In particular, Apple has produced a new, in-the-box, version of Tiger 10.4.3 for inspection. (*Id.*)  Samsung has articulated *no* reason why Tiger is relevant other than other than its dock icons, or why the copy of Tiger that Apple provided is insufficient.

Incredibly, Samsung's motion makes *absolutely no attempt* to narrow the scope of its demand to a set of documents and things that it reasonably needs and that are within the scope of its document requests.  Samsung's motion is a frivolous and abusive tactic that is aimed at only one thing:  harassment.  Apple has produced Tiger-related material that is more than sufficient in light of the exceedingly remote relevance of the Tiger OS to this case.  Requiring production of the vast array of additional documents demanded by Samsung would impose a significant burden on Apple, with little benefit to Samsung.  Samsung's demand for "all documents regarding Tiger" is thus improper under Rule 26(b)(2)(C)(iii) and Local Rule 37-2 and should be denied.

**F.     Survey and Marketing Documents**

Apple has agreed to produce numerous survey and marketing documents related to Apple's design and utility patents, trade dress, and trademarks.  Apple specifically explained in writing over a week before Samsung filed its motion to compel that it would provide the following documents by January 31, 2012:

- Final survey reports, questionnaires and raw survey data for all customer surveys conducted by Apple related to iPhone, iPod Touch, and iPad; and

- All market research reports purchased by Apple in the ordinary course of business relating to iPhone, iPod touch and iPad.

(Bartlett Decl. ISO Opp. to Motion to Enforce Ex. B; Barlett Decl. ISO Opp. to Motion to Compel Ex. 8 at 2-3.)  These documents are sufficient to support any alleged defenses Samsung asserts.

The only dispute is whether Apple needs to produce even more documents.  But Samsung never meets its Civil Local Rule 37-2 burden to show why it needs additional documents beyond those that Apple offered, nor does Samsung even explain which types of additional documents it would need.  Apple believes that both parties should produce a broad set of survey-related documents and has invited Samsung to describe the additional categories of survey-related documents it is seeking.  Samsung has failed to do so.

**G.     Financial Documents**

As with Survey documents, Apple has produced numerous financial documents in response to Samsung's request.  The following categories of documents have been produced:

- U.S. and world wide units by quarter from FY 2007 to 2011 for iPhone, iPod touch and iPad;

- U.S. and world wide revenue by quarter from FY 2007 to 2011 for iPhone, iPod touch and iPad;

- GAAP line of business reports setting forth Standard Margins, Adjusted Standard Margins, Gross Margins, allocated SG&A, and Research and Development Costs for iPhone, iPad and iPod for FY 2007 to 2011;

1    • Bills of Materials for all accused Apple products (including line item cost

2    information); and

3    • Capital expenditure data for the U.S. and worldwide relating to iPhone,

4    iPad and iPod.

5    These documents reflect how Apple itself tracks financial information in the ordinary

6    course of business.  As explained in Apple's January 5 letter to Samsung, additional documents

7    would be unreasonably duplicative, burdensome, and unreliable because (unlike the documents

8    identified above) they would not necessarily represent final financial figures.  *Fausto v. Credigy*

9    *Servs. Corp.*, 251 F.R.D. 427, 430 (N.D. Cal. 2008) (ordering production of specific financial

10   statements and tax returns, but otherwise denying motion to compel "broad array" of financial

11   documents that was "unduly broad" given narrow relevance of such documents).

12   Samsung's motion fails to explain why it needs even more documents than those proposed

13   in Apple's letter.  For example, Samsung does not attempt to explain why it would be reasonable

14   to demand every Apple email that mentions sales results or pricing, or every document that refers

15   to customer demand.  Samsung thus fails to carry its burden under Local Rule 37-2.

16   The only additional category of documents Samsung identifies in its motion is "business

17   plans and strategies."  Apple did not address that issue in its previous correspondence with

18   Samsung because Samsung *never raised* a request for business plans and strategies at the January

19   5 lead trial counsel meet and confer.  (Mazza Decl. ¶ 3.)  Under Judge Koh's Case Management

20   Order, Samsung therefore cannot move to compel on these documents.  In any event, Apple has

21   agreed to produce a reasonable scope of marketing and strategy documents collected from its

22   Product Marketing, Advertising, and Market Research groups.  Samsung's demand for all

23   "business plans and strategies," however, is too vague for Apple to respond to without more

24   specificity.

25   **H.      Rule 30(b)(6) Deposition Notice**

26   As discussed in greater detail in Apple's Motion for Protective Order Regarding

27   Samsung's First Rule 30(b)(6) Deposition Notice (Dkt. No. 599), Samsung's 30(b)(6) notice is

28   improper on its face and plainly calculated to harass.  The notice spans 46 single-spaced pages,

sets forth 229 topics for examination, and includes more than 600 subparts.  The total number of subjects for examination exceeds 800.  Even if it were possible to prepare one or more witnesses to testify on this many subjects before the close of fact discovery, doing so would impose an immense burden on Apple.  Apple would likely be required to devote hundreds, if not thousands, of hours to preparing deponents on the myriad subjects.  Apple's counsel would need to spend substantial additional time working with the deponents to ensure that their preparation was adequate.

This colossal expenditure of time and effort would result in little, if any, benefit to Samsung.  Samsung has already used more than 123 hours of its allotted time, leaving less than 127 hours for its remaining depositions.  (Bartlett Decl. ISO Opp. to Motion to Compel ¶ 9.)  Moreover, Samsung has noticed depositions of 49 other Apple witnesses.  Given these constraints, Samsung knows that it cannot cover more than a small fraction of the over 800 topics listed in its notice in its remaining time.  Its true objective is to force Apple to spend hundreds of hours preparing perhaps dozens of witnesses to testify on numerous topics which Samsung has no intention of covering.  The Court should reject this tactic.  *See, e.g.*, *Bowers v. Mortg. Elec. Registration Sys., Inc*., No. 10-4141-JTM, 2011 WL 6013092, at *6-7 (D. Kan. Dec. 2, 2011) ("the burden on [the party] of producing a representative to testify to the far-reaching 22 topics contained [in the notice] outweighs the likely benefit of the discovery sought"); *Acton v. Target Corp*., No. C08-1149RAJ, 2009 WL 5214419, at *4 (W.D. Wash. Dec. 22, 2009) (advising party whose 30(b)(6) notice listed over 400 subjects that "it is unlikely [the party] will have anyone to blame but himself" if it turned out that its adversary was "unprepared on one or more subjects").

In addition, numerous topics in the notice are inappropriate.  For example, many topics are so overbroad that Apple "is unable to identify the outer limits of the areas of inquiry noticed, and designating a representative in compliance with the deposition notice becomes impossible."  *Lipari v. U.S. Bancorp., N.A*., No. 07-2146-CM-DJW, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008).  These overbroad topics include 15 topics seeking testimony concerning "all communications" with certain broad categories of persons on 112 separate subjects, and 17 other topics seeking testimony concerning "all software" relating to 157 separate features or subjects.

1   Numerous other topics seek facts supporting certain legal theories advanced by Apple in this

2   litigation, or seek facts or data such as the amount of sales and revenue from each Apple accused

3   product or identification of all products with which Apple's accused products compete.  These

4   topics should be the subject of interrogatories, not deposition questioning.

5          Despite the manifest impropriety of Samsung's notice, Apple offered to provide Rule

6   30(b)(6) testimony on a narrowed set of topics, provided that Samsung agreed to provide

7   reciprocal 30(b)(6) testimony on similar topics.  Contrary to Samsung's assertion that Apple tried

8   to "add to its [deposition] time" (Samsung Mot. at 14), Apple never suggested that either side's

9   reciprocal testimony should be exempt from Judge Koh's time limit for depositions.  Indeed, as

10  noted above, it is Samsung that is pretending that those limits do not exist.  Nor is Apple

11  "conditioning" 30(b)(6) testimony on reciprocal testimony from Samsung.  If Samsung serves a

12  notice with a *reasonable* list of specific topics appropriate for 30(b)(6) examination, and

13  withdraws its patently unreasonable notice, Apple will provide the requested testimony.

14         **I.      Fact Witness Depositions**

15         Apple provided deposition dates for all of the noticed Apple deponents by January 13, in

16  accord with the parties' agreement.[5]  (Mazza Decl. ¶ 4.)  Samsung's motion to compel with

17  respect to these deponents is moot.

18         Samsung also requests that the Court order Apple to provide a *second* deposition of

19  Jonathan Ive, Apple's Senior Vice President of Industrial Design.  Samsung's request for still

20  more time with Mr. Ive is completely unsupported by any facts and plainly intended to harass.

21  Among other things, Samsung has already deposed Mr. Ive for a full seven hours, a second

22  deposition would be cumulative of other witnesses' testimony and documents, and the burden of

23  subjecting Mr. Ive to another deposition outweighs its benefits.

24         Under Rule 30(d)(1), "[u]nless otherwise stipulated or ordered by the court, a deposition is

25  limited to 1 day of 7 hours." *See* Fed. R. Civ. P. 30(d)(1).  Pursuant to the "good cause"

---

26         [5] Samsung purported to provide dates too, but did not.  Most of the dates provided by
    Samsung were avowedly "tentative" and subject to further "confirmation" by Samsung.  (Mazza
27  Decl. Ex. A.)

28

1   requirement of Rule 26(b)(2), a Court must allow additional time only if needed to "fairly

2   examine the deponent" or "if the deponent, another party, or any other circumstance impedes or

3   delays the examination."  *See id.*  In determining whether there is good cause for additional

4   deposition time, "the court should begin with the presumption that the seven-hour limit was

5   carefully chosen and that *extensions of that limit should be the exception, not the rule.*"  *Somerset*

6   *Studios, LLC v. Sch.  Specialty, Inc.*, No. C 10-5527 MEJ, 2011 U.S. Dist. LEXIS 103927, at *12-

7   13 (N.D. Cal. Sept. 14, 2011) (emphasis added).

8        Because Mr. Ive is one of Apple's most senior executives, Samsung's burden to continue

9   his deposition is even greater.  A party seeking to depose a high-ranking corporate officer, such as

10  Mr. Ive, must "first establish that the executive (1) has unique, non-repetitive, firsthand

11  knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery,

12  such as interrogatories and depositions of other employees, have been exhausted without

13  success."  *Affinity Lab of Texas v. Apple, Inc.*, No. C 09-4436 CW (JL), 2011 U.S. Dist. LEXIS

14  53649, at *40-41 (N.D. Cal. May 9, 2011).  "Virtually every court that has addressed deposition

15  notices directed at an official at the highest level or 'apex' of corporate management has observed

16  that such discovery creates a tremendous potential for abuse or harassment."  *Celerity, Inc. v.*

17  *Ultra Clean Holding, Inc.*, No. C 05-04374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal.

18  Jan. 25, 2007).

19       Samsung fails to show that it is entitled under these standards to continue Mr. Ive's

20  deposition.  First, Samsung fails to show good cause as required under Rule 26(b)(2).  Samsung

21  deposed Mr. Ive for the full seven hours allowed under the Federal Rules.  (Bartlett Decl. ISO

22  Opp. to Motion to Compel ¶ 10.)  Samsung covered a wide range of issues during its full-day

23  deposition of Mr. Ive, including his personal background, Apple's design process, the

24  development of the iPhone, iPad and iPod touch designs, and issues relating to document

25  creation.  (*Id.*)  Samsung fails to explain why it needs more time to examine Mr. Ive.  Samsung

26  does not:

27        • identify any additional topics that it needs to cover with Mr. Ive;

28

1        • demonstrate that Samsung was prevented from addressing those topics in

2          Mr. Ive's first deposition;

3        • identify any additional documents or evidence which were unavailable at

4          the time of Mr. Ive's deposition and on which it now wishes to examine

5          him;

6        • explain why it believes Mr. Ive would be in a position to offer useful

7          testimony on the topics it intends to cover; or

8        • demonstrate that its questions could not be addressed to other witnesses

9          who have not been deposed.

10       Samsung knew before deposing Mr. Ive that he had substantive knowledge of Apple's

11  product designs.  And Samsung knew at the time it scheduled Mr. Ive's deposition that Apple had

12  not completed its entire production of "all" documents Samsung now seeks.  Samsung should not

13  be heard to complain about the fact that it took Mr. Ive's deposition early in the case before

14  discovery was complete—that is the schedule Samsung itself requested.

15       Second, Samsung fails to even attempt to meet the requirements for an apex deposition.

16  Samsung has already deposed Mr. Ive for a full seven hours.  To justify further examination time,

17  it must show that he has "unique, non-repetitive, firsthand knowledge" of any issues that were not

18  covered during his deposition." *Affinity Labs.*, 2011 U.S. Dist. LEXIS 53649, at *40.  Samsung

19  does not identify any non-covered issues, much less show that Mr. Ive has unique knowledge of

20  them.  Nor does Samsung bother to show that "other less intrusive means of discovery, such as

21  interrogatories and depositions of other employees, have been exhausted without success." *Id.*

22       None of the authorities cited in Samsung's brief supports its assertion that Mr. Ive's

23  purported status as a "key witness" by itself justifies additional deposition time.  In each of those

24  cases, additional time was granted on grounds that do not apply here.  *See Ryan v. Paychex, Inc.*,

25  Civ. No. 08CV1151 (WWE), 2009 WL 2883053, at *1 (D. Conn. Sept. 1, 2009) (witness

26  repeatedly resisted answering questions and otherwise "disrupted" the deposition); *JSR Micro,*

27  *Inc. v. QBE Insurance Corp.*, No. C-09-03044 JPH (EDL), 2010 WL 1338152, at *6 (N.D. Cal.

28  Apr. 5, 2010) (Rule 30(b)(6) witness "failed to prepare" regarding topics listed in the deposition

1   notice); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, No. 06 Civ. 6198, 2009 WL

2   72441, at *4 (S.D.N.Y. Jan. 7, 2009) (witness was the "only identified" plaintiff in a class action

3   that alleged a wide range of claims and thus was the "best source of information" regarding the

4   class, "the nature of their claims, and the scope of their possible damages"); *Securities and*

5   *Exchange Comm'n. v. Aqua Vie Beverage Corp.*, No. CV 04414-S-EJL, 2006 WL 2457525, at *3

6   (D. Idaho Aug. 23, 2006) (deponent produced a set of documents at 2:45 p.m. on the day of his

7   deposition and the examining party had no opportunity to review or use them at the deposition).

8   Samsung's demand for additional time to depose Mr. Ive should be denied.

9                                          **CONCLUSION**

10          For these reasons, Apple respectfully requests that Samsung's Motion to Compel be

11   DENIED.

12

13   Dated: January 17, 2012                    MORRISON & FOERSTER LLP

14                                        By:    */s/ Richard S.J. Hung*
                                                 Richard S.J. Hung
15

16                                               Attorneys for Plaintiff
                                                 APPLE INC.

17

18

19

20

21

22

23

24

25

26

27

28