1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for Samsung Electronics America, Inc.
   and Samsung Telecommunications America LLC

14

15                    UNITED STATES DISTRICT COURT

16           NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

17 | APPLE INC., a California corporation, | CASE NO. 5:11-cv-01846-LHK |
|---|---|
| Plaintiff, | **SAMSUNG'S OPPOSITION TO APPLE'S PROPOSED PROTECTIVE ORDER** |
| vs. | Date: January 19, 2012 |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Time: 10:00 am  Courtroom 5, 4th Floor  Judge: Hon. Paul S. Grewal |
| Defendants. | |

**Preliminary Statement**

Apple asks that this Court adopt a convenient protective order rather than a fair one. First, Apple says that because the *interim* protective order included only an "Attorneys' Eyes Only" (AEO) tier of confidentiality protection, the *actual* protective order cannot differ: having to now conform to a new order would be "inefficient and counterproductive" (Dkt. 599 at 10) and so AEO should be the only available designation.[1] *Without even arguing, let alone proving, that it properly designated all its productions as AEO,* Apple complains about reviewing its production and designating documents at the *appropriate* level of confidentiality. If Apple is to be taken at its word, then the great inefficiency here was the time the parties and Court spent deciding the terms of a new protective order—an order that Apple now says comes too late to meaningfully change the interim order. This cannot be a serious position. The parties' lengthy discussions have been about setting aside the interim order to make sure this case is now to be governed by a just and workable protective order, balancing the needs of the parties to maintain confidentialities while still fully litigating their claims. Throughout this process, changes to the structure of the interim order were necessarily contemplated. Just because imposing the *right* protective order might require some effort does not mean this important case does not deserve it.

Second, Apple argues that the parties should have a duty to disclose *all* experts, even those who are consulting experts protected from disclosure and who see *any* confidential document, no matter how weak the basis for confidentiality happens to be.[2] The purpose of a multi-tiered protective order, such as the one Samsung proposes, is to thoughtfully separate those documents that should be closely protected from those that, while not properly made public, should be generally available to a litigant's consultants and experts without delay. Apple's portrait of this

---

[1] "(a) Available Designations. Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein: CONFIDENTIAL - ATTORNEYS' EYES ONLY, or CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE." (Dkt. 599-7 at 8 (Apple's Proposed Protective Order).)

[2] Based on discussion between the parties, Samsung had filed its motion under the impression that Apple was also proposing a three-tiered protective order, but intended to apply the Notice of Disclosure requirement even to the lower tier. When Apple filed its actual motion, however, Apple departed from its prior positions and unjustifiably proposed a protective order that only includes AEO-level protection. (*See* Dkt. 599-7 at 8.)

case fails to capture the many documents that simply do not warrant the close scrutiny of an AEO designation.[3]  While Apple attempts to reduce this issue to Itay Sherman (who this Court already has ruled can review documents that Apple claims are even more sensitive than AEO), Samsung's concern is primarily about the many non-testifying experts and consultants that will be necessary to properly try this complex case.  The parties' legal right to keep such identities secret is destroyed by Apple's needlessly drawn-out disclosure requirements.

Finally, Apple's claim that Samsung's "Confidential" and "Highly Confidential- AEO" tier are identical is incorrect.  Samsung's proposed protective order employs distinguishable definitions of the tiers that allow for ready determinations of which category a document properly belongs in.

## Argument

### I. Replacing a Temporary Protective Order is not Unduly Burdensome.

"[P]rotective orders that are on their face temporary or limited may not justify reliance by the parties.  Indeed, in such circumstances reliance may be unreasonable . . . . Where a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order.  In such a case, whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court."  *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 231 (2d Cir. 2001) (internal citations and quotations omitted); *see also Welsh v. San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) ("Even in a situation where an interim protective order is agreed upon by the parties, the Court is free to retain it, modify it, or dispense with the protective order entirely.").  Apple cannot claim that re-designating documents it knew were produced under a *temporary* order is unreasonable, especially when it fails to claim that its designations were not objectively overbroad.  *Johnson v. Allstate Ins. Co.*, 07-CV-0781-MJR, 2008 WL 4279992 (S.D. Ill. Sept. 17, 2008) (protective order is impermissibly overbroad if it "gives [a party] carte blanche to decide what portions of the record shall be kept secret.").  A case

---

[3]  Samsung's Motion sets out a number of categories of documents Apple has unnecessarily designated as Attorneys' Eyes Only.  (*See* Dkt. 607 at 3-4.)

1   of this complexity demands that materials be designated under the correct level of confidentiality,
2   not the one under which they are conveniently already listed.
3         Contrary to Apple's unsupportable complaints, protective orders typically include a non-
4   AEO "Confidential" designation in suits between competitors. *Zest IP Holdings, LLC v. Implant*
5   *Direct Mfg., LLC*, CIV. 10-0541-LAB WVG, 2011 WL 5525990 (S.D. Cal. Nov. 14, 2011) ("The
6   Court recognizes that Plaintiffs and Defendants are 'fierce competitors' as Defendants contend.
7   However, this intense rivalry does not trump Plaintiffs' right and access to relevant information
8   they need to prosecute their case.  The Court has approved a two-tier Protective Order proposed by
9   the parties in this action. . . . The Protective Order, at paragraph 4, allows the party producing a
10  document to designate the document as 'Confidential' and 'Confidential—For Counsel Only.'").
11  A litigant would be remiss to assume that a final protective order would fail to include the normal
12  and basic "Confidential" designation and Apple would be remiss to think it could perpetually
13  maintain an AEO designation over documents Apple *does not even assert warrant it.*
14        Re-designating documents at their appropriate level of confidentiality is also a far more
15  reasonable request than Apple represents it to be.  Samsung is not asking that Apple independently
16  review every document it has already produced and make a re-designation.  Rather, Samsung has
17  itself already identified a number of documents in its own briefing that Apple has over-designated.
18  (*See* Ex. B-J to Hutnyan Decl. (Dkt. 607-1).) This process of requesting re-designation as needed
19  is how courts best handle the creation of new tiers under protective orders in the middle of
20  litigation.  *Lockheed Martin Corp. v. Boeing Co.*, 6:03CV796 ORL28KRS, 2005 WL 5278461 at
21  *4 (M.D. Fla. Jan. 26, 2005). After granting plaintiff's request to modify an existing protective
22  order to add another tier, the *Lockheed* court explained: "Because thousands, if not millions, of
23  pages of documents and items of information have been previously designated 'Protected
24  Litigation Information' under the Original Protective Order, a procedure must be developed to
25  allow the litigation to continue without the need to review and redesignate all such documents.
26  Because the Original Protective Order provided that 'Protected Litigation Information' could not
27  be disclosed to individuals engaged in competitive decisionmaking, the amended protective order
28  will require that previously designated documents be treated as Restricted Confidential Litigation

-3-  Case No. :11-cv-01846-LHK
SAMSUNG'S OPPOSITION TO APPLE'S PROPOSED PROTECTIVE ORDER

1  Information until such time as a party believes, in good faith, that review and redesignation of the
2  information is necessary for purposes of the litigation." *Id.*   As parties must initially designate
3  documents in the proper confidentiality tier in good faith, *Van v. Wal-Mart Stores, Inc.*, C 08-5296
4  PSG, 2011 WL 62499 at *3 (N.D. Cal. Jan. 7, 2011), when a party is asked to re-designate a
5  document under the new protective order's categories, this good faith duty should stave off many
6  further debates.  *Lockheed Martin Corp.*, 2005 WL 5278461 at *4 n.4 ("Under the amended
7  protective order, Boeing will have the option to designate documents as it, in good faith, deems
8  appropriate, recognizing that if its designation is challenged, it will have to present to the Court
9  prima facie evidence in support of its designation.").  Imposing a protective order with the normal
10 and basic "Confidentiality" tier that Samsung requests will "waste precious time," (Dkt. 599 at 5),
11 only if Apple chooses to maintain its over-designation of documents in bad faith.

12 **II.    The Record is Rife With Apple Documents That Do Not Qualify for "Attorneys' Eyes**
13 **Only" Protection and Which Samsung Should be Allowed to Show its Non-Testifying**
14 **Consultants Without Disclosing Their Identities.**

15         Apple argues that "[t]he expert-disclosure provisions of the originally agreed protective
16 order are necessary to provide each party with a reasonable opportunity to object before such
17 sensitive, commercial information is shown to potential competitors.  This requirement should be
18 true for all confidential documents prior to access by potential competitors." (*Id.* at 9.)  In practice,
19 this would mean that any time counsel for either party wishes to show anything to a consultant,
20 they must wait a week in case the other side objects.  (Dkt. 599-7 at 22.)  In a case where Apple
21 admits time is "precious," (Dkt. 599 at 5), its version of the protective order only stands to slow
22 discovery to a crawl and unfairly hinder Samsung's ability to prepare its defenses.  The central
23 feature of Samsung's proposed "Confidential" tier is that it allows for the parties to accelerate the
24 preparation of their cases by easily sharing less sensitive documents with experts and consultants.
25 After suffering through months of Apple's over-designation of low-risk materials, Samsung
26 believes a more efficient procedure as proposed by Samsung  plainly is warranted.

27         Apple fails to discuss the distinction at the heart of Samsung's proposed protective order:
28 some documents deserve to be AEO and some do not.  When Apple produces the "most sensitive

1  materials in its possession," the AEO designation is likely correct.  (*Id.* at 8.)  But when Apple
2  designates an email circulating a public news article as AEO, it is clearly abusing the one-
3  dimensional nature of the Interim Protective Order.  (*See* Dkt. 607-4.)  Case law "consistently
4  holds that trade secrets and other confidential business information are not entitled to protection
5  unless disclosure would result in a specified harm. . . .   [T]he requirement of a showing of harm is
6  designed to prevent the parties from designating information that is *too stale to be of current*
7  *commercial value*, or information about which the designating party can only articulate a
8  speculative belief that the information might, someday and somehow, be damaging if it were
9  revealed."  *Lockheed Martin Corp.*, 2005 WL 5278461 at *2.  Including a "Confidential" tier is
10 not only consistent with the usual practice in federal court protective orders in intellectual property
11 cases, but serves as a compromise to Apple's reluctance to participate in discovery in litigation it
12 chose to instigate and expedite.  While Samsung agrees some level of confidentiality protection is
13 often reasonable, it is groundless for Apple to assert that everything it produces warrants AEO
14 status.  Samsung's graduated tiers allow Apple to designate as AEO that which it deems most
15 private, but not to hamper discovery by abusing that designation for materials of lesser
16 significance.

### III. Samsung's Proposed Protective Order Effectively Distinguishes Between the "Confidential" and "Highly Confidential" Tiers.

19         Apple contends that "[t]here is conceptually no difference between what Samsung
20 describes as "Confidential" and "Confidential – AEO."  (Dkt. 599 at 10.)  Samsung's proposed
21 protective order defines the two tiers with distinct language.  Under Samsung's protective order, a
22 document can be designated as "Confidential" if it "contains or reflects information that qualifies
23 for protection under Federal Rule of Civil Procedure 26(c). (*See* Dkt. 607-2 at 10. (Samsung's
24 Proposed Protective Order)); *see also* Fed. R. Civ. P. 26(c) (Protective orders can be issued to
25 "require[e] that a trade secret or other confidential research, development, or commercial
26 information not be revealed or be revealed only in a specified way.").  A "Highly Confidential –
27 Attorneys' Eyes Only" document is one that "contains or reflects sensitive business information
28 that is confidential and/or, proprietary, trade secret, and/or commercially sensitive, where

1  substantial harm from disclosure cannot otherwise be avoided." (Dkt. 607-2 at 12.) Samsung's
2  proposal just requires the parties to make a good faith determination as to how "sensitive" the
3  information at issue is and how "substantial" harm from disclosure would be prior to selecting a
4  designation. *Cf. Lockheed Martin Corp.*, 2005 WL 5278461 at *4 n.4 ("Under the amended
5  protective order, Boeing will have the option to designate documents as it, in good faith, deems
6  appropriate, recognizing that if its designation is challenged, it will have to present to the Court
7  prima facie evidence in support of its designation.").

**IV.    Apple's Allegations that Samsung Is Attempting to Avoid the Sherman Order Are Unfounded.**

Much of Apple's brief contains yet more unprofessional attacks on Samsung's integrity. Apple distorts an out-of-context quote to ascribe to Samsung the insidious motive of using this protective order to re-address the Court's ruling on Itay Sherman. First, Samsung openly addressed that ruling in its Motion for Clarification,[4] so Apple's accusations that Samsung is making "an end-run around the Court's Sherman Order," (Dkt. 599 at 5), through its proposed protective order is nonsensical. Second, as the full context of Samsung's January 8th correspondence with Apple, makes clear, Samsung was offering to accept Apple's unreasonable and *legally incorrect*[5] request that non-testifying consultants be disclosed in exchange for a concession on Apple's part regarding Itay Sherman.[6] In full, the relevant passage reads:

> Why should Samsung have to disclose consultants that are merely looking at "confidential" documents? Consultants' identities are attorney work product, and there is no reason that Samsung should have to disclose their identities or other information and subject them to an objection process with respect to "confidential"

---

[4] Samsung's Motion for Clarification Regarding the Court's December 22, 2011 Order may be found at Dkt. 606.

[5] As discussed in Samsung's Motion, Samsung has a right not to disclose to Apple the identities of its non-testifying expert consultants. Fed. R. Civ. Pro. 26(b)(4)(D) states: "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Under this standard, the party seeking this information must make a "showing of exceptional circumstances before names of retained or specially employed consultants may be discovered." *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 502 (10th Cir. 1980) (citing cases). Apple makes no such showing here.

> documents, especially when they have already agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and are not a current officer, director, or employee of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party.
>
> That said, we will agree to the confidential tier with the "edit" you describe in your letter if you will agree that Itay Sherman may see any design-related items that are designated "Confidential."

To characterize Samsung counsel's attempt to reach a *quid-pro-quo* compromise (to avoid further motion practice) as duplicitous is offensive. *See In re Livent, Inc.*, 98 CIV.5686(VM)(DFE), 2004 WL 385048 at *5 (S.D.N.Y. Mar. 2, 2004) (parties are encouraged to compromise in solving discovery disputes). As explained above and in its motion, Samsung's concerns with Apple's proposed protective order are justified and serious. But Samsung would be within its rights to voluntarily waive these concerns for a concession by Apple elsewhere. For this Court to treat Samsung's effort to informally resolve the parties' dispute on this issue as Apple demands is unsupported by law and would only serve to undermine future efforts to avoid burdening this Court with motions through voluntary compromise.

## Conclusion

For the foregoing reasons, Samsung respectfully requests that the Court deny Apple's Proposed Protective Order and adopt Samsung's Proposed ProtectivSe Order.

DATED: January 16, 2012            QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP


                                    By /s/ Victoria F. Maroulis
                                        Charles K. Verhoeven
                                        Kevin P.B. Johnson
                                        Victoria F. Maroulis
                                        Michael T. Zeller
                                        Attorneys for SAMSUNG ELECTRONICS
                                        AMERICA, INC., and SAMSUNG
                                        TELECOMMUNICATIONS AMERICA, LLC