1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15

16                    UNITED STATES DISTRICT COURT

17          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| 18  APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| 19              Plaintiff, | **SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO COMPEL** |
| 20          vs. | Date:     January 19, 2012 |
| 21  SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG | Time:     10:00 a.m. |
| 22  ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG | Place:    Courtroom 5, 4th Floor |
| 23  TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Judge:    Honorable Paul S. Grewal |
| 24              Defendants. | |
| 25 | |

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

I.     APPLE'S DEMANDS REGARDING SAMSUNG'S INVENTOR DOCUMENT
       PRODUCTION ARE UNREASONABLE AND UNNECESSARY. ................................. 1

       A.     Samsung's Inventor Searches Were Reasonable and Comprehensive ...................... 1

       B.     Apple's Proposed Search Terms are Irrelevant, Overbroad and Duplicative. .......... 4

       C.     Apple Mischaracterizes the Testimony of Samsung's Inventors .............................. 7

II.    APPLE'S REQUESTS FOR "ALL" ETSI AND 3GPP DOCUMENTS ARE
       HOPELESSLY OVERBROAD AND UNDULY BURDENSOME. ................................... 9

       A.     Apple's Requests for All Documents Related to Samsung's Participation in
              ETSI and/or 3GPP Amount to an Enormous Fishing Expedition. ........................... 9

       B.     Samsung Has Already Agreed to Produce Documents Relevant to Apple's
              Defenses and Counterclaims. ............................................................................... 10

       C.     To the Extent that Apple Seeks Documents Beyond What Samsung Has
              Agreed to Produce, Its Motion to Compel Should be Denied ................................ 11

       D.     Apple's Demands Make a Mockery of the Proportionality Requirement .............. 14

III.   APPLE'S REQUESTS FOR LICENSES AND NEGOTIATION DOCUMENTS
       FAR EXCEED THE RELEVANT SCOPE OF DISCOVERY ......................................... 15

CONCLUSION ............................................................................................................. 17

**INTRODUCTION**

In this latest installment of Apple's "Death by Discovery" litigation plan, Apple seeks a veritable ocean of documents when it is entitled to no more than a few droplets.   First, Apple insists that Samsung run over 100 newly-identified search terms in its inventors' custodial files, despite the fact that those terms are overly broad, unfocused, and wholly unnecessary.   Second, Apple demands that Samsung produce every single document related to Samsung's more than decade-long participation in several standard-setting organizations ("SSOs") and working groups—despite the fact that the vast majority of the standards, specifications and technologies involved have absolutely nothing to do with this case.   And finally, Apple urges that Samsung produce every single license agreement and all related negotiation documents for each of the 3,500+ Samsung patents that have been declared essential to any ETSI or 3GPP standard – despite the fact that very few of those agreements have any bearing on the technology or patents at issue.

Samsung has already agreed to produce the sliver of documents within these categories that are arguably relevant.   The remaining documents – which would include things like standards documents related to broadcasting, and license agreements related to television technology -- have no bearing whatsoever on this case. Apple's motion is a model of overreaching, and should be denied in its entirety.

**ARGUMENT**

**I.    APPLE'S DEMANDS REGARDING SAMSUNG'S INVENTOR DOCUMENT PRODUCTION ARE UNREASONABLE AND UNNECESSARY.**

Apple claims that Samsung's search terms for its inventor custodial files were deficient, and that these searches were done without attorney supervision.   Apple is wrong on both counts, and its attempts to saddle Samsung with pointless and costly busywork should be rejected.

**A.    Samsung's Inventor Searches Were Reasonable and Comprehensive.**

In its motion, Apple grossly – and misleadingly – mischaracterizes Samsung's inventor-related document production.   In truth, Samsung has produced over 122,000 pages of documents -- enough to fill fifty bankers' boxes -- from the custodial files of seventeen inventors of the Samsung patents-in-suit.   (Declaration of Melissa N. Chan ("Chan Decl.") at ¶ 7.)   This averages

1  to more than 7,000 pages (or more than three bankers' boxes) per witness.  (*Id.*)   Samsung also

2  produced source code, documents from Samsung's central files, and documents from other

3  litigation, all relating to the patents-in-suit.  (*Id.*)   In short, Apple's claim that "very few

4  responsive documents" were produced by Samsung is a fiction.

5       ***Samsung's Collection Methodology.***   Contrary to Apple's accusations, in-house and

6  outside counsel for Samsung were deeply involved throughout the inventor document collection

7  process.  (*Id.*at ¶ 6.)  ████████████████████████

8  ███████████████████████████████████

9  ████████████████████████████████████

10  ████████████████████████████████████

11  ████████████████████████   All documents and things related to the

12  invention as disclosed in the patent at issue were collected and reviewed for production.  (*Id.*)

13       While Samsung expected that virtually all relevant documents would have been found

14  through this painstaking process, Samsung nonetheless then took the additional step of running

15  search terms on the inventors' computers and email accounts in order to make sure that no relevant

16  documents were overlooked in the primary document collection.  ██████████████

17  ████████████████████████████████████

18  ████████████████████████████████████

19  ███████████████████████████████████

20  ██████████████████████████████

21  Finally, after the inventors' documents were collected and reviewed, outside counsel met with

22  each inventor personally, to ensure that the search protocol had been properly executed.[1]  (Chan

23  Decl. ¶ 6.)

24  _____

25  [1]   Although Samsung's searches yielded robust results, no documents were located in the

26  custodial files of fifteen inventors.   For instance, █████████████████████

27  ████████████████████████████████████

28     (footnote continued)

1    ***Samsung's Chosen Search Terms***.   Over the course of several weeks, Samsung's in-

2    house and outside counsel worked together to determine the appropriate search terms that would

3    capture relevant documents without pulling every document in each of these inventors' files.[2]   A

4    team of Quinn Emanuel attorneys generated an initial list of relevant search terms, and those terms

5    were revised, supplemented and refined in collaboration with in house counsel and the inventors

6    themselves.   (*Id.*)   Ultimately, a comprehensive search strategy—one that would return all

7    relevant and responsive documents while minimizing false positives—was developed.   This is the

8    very same search term methodology that Apple itself claims to use.   (Chan Decl. Ex. 2)

9          In sum, Samsung has more than met its discovery obligations on this issue, and nothing

10   more should be required.   *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (a

11   party may use "defined search strategies," and need not "examine every scrap of paper in its

12   potentially voluminous files in order to comply with its discovery obligations.   Rather, it must

13   conduct a diligent search, which involves developing a reasonably comprehensive search

14   strategy").   Despite having deposed Samsung's inventors with more than 100,000 pages of

15   relevant documents in hand, Apple has not identified any specific documents missing from

16   Samsung's production relating to the conception and reduction to practice of the asserted claims or

17

18

19

20

21

22                                                        This is not surprising, given that the relevant inventive

23   activity occurred anywhere from five to fifteen years ago.   Compelling Samsung to repeat its
     searches would do nothing to overcome these realities.
24

25     [2]   The use of search terms in e-discovery is a widely accepted practice.   *See, e.g.* The Sedona
     Principles, Best Practices Recommendations & Principles for Addressing Electronic Document
26   Production at 11 (2003) ("A responding party may properly access and identify potentially
     responsive electronic data and documents by using reasonable selection criteria, such as search
27   terms or samples.").

28

1  to potential inequitable conduct claims.[3]   Samsung has repeatedly detailed its search process to

2  Apple in correspondence and in meet and confer discussions.   Inexplicably, Apple filed its motion

3  to compel anyway.

4      **B.    Apple's Proposed Search Terms are Irrelevant, Overbroad and Duplicative.**

5          In a transparent attempt to play Monday morning quarterback, Apple proposes an entirely

6  new set of more than 100 overbroad and unnecessary search terms, and demands that Samsung be

7  ordered to (1) run them on its dozens of inventor files, (2) review them all and (3) produce

8  resulting responsive documents, all in the space of just *four days*.   Aside from the sheer

9  impossibility of Apple's demand – not to mention the fact that Apple's proposed deadline falls on

10 what Apple knows is the Lunar New Year, a major Korean holiday -- it is also completely

11 unnecessary because any relevant documents retrieved by Apple's proposed terms would already

12 have been collected through the search process outlined above.   Apple's overreaching and

13 harassing discovery demands should be given short shrift.

14

15          1.    Apple's "Patent-Specific" Search Terms are Overbroad and Unnecessary
           Apple's proposed list of search terms contains terms that are so broad and generic as to

16 defeat the purpose of utilizing search terms in the first place.   One can only imagine the number

17 of email files retrieved by a search using terms like "email," "attach*" or "enclose*," as Apple

18 proposes for the '460 patent.   Similarly, terms such as "cell* phone," "mobile phone," "mobile

19 device," "music," "MP3," "mode," and "camera" are likely to yield hundreds of thousands of

20 documents, few of which will be related to the precise technologies disclosed in the Samsung

21 patents-in-suit.

22          Lest it be accused of speculating, Samsung ran some sample searches on the documents of

23 the inventors of the '941 patent, to illustrate this point.   The terms that Apple proposes for the

24 '941 Patent retrieved ████████████████████████████████████████

25

26  [3]  To the extent any of the inventors participated in standards setting organizations, Samsung
    has already agreed to supplement its production of documents in certain relevant respects relating
27  to the participation of Samsung and its inventors in the relevant standards bodies.

28

1    ████████████████████████████████████████████.[4]   (Chan Decl. ¶¶

2    12-13)   Thus, through its ill-contrived search terms, Apple demands that Samsung review ████

3    ████████████████████████████████████████████████████████████████

4    ██████████████     This is unacceptable.   *Cf. DCG Sys. Inc. v. Checkpoint Tech., LLC*, C-

5    11-03792, 2011 WL 5244356 (N.D. Cal. Nov. 2, 2011) (discussing the need "to impose

6    reasonable restrictions on the timing and scope" of electronic discovery in patent cases involving

7    competitors.)   Such hopelessly overbroad search terms defeat the very purpose of using search

8    terms in the first place; Apple might as well just demand that Samsung manually review the

9    inventors' entire hard drives.

10        Given the number of hits on Apple's proposed search terms, reviewing and producing

11   them would be oppressively burdensome.   ████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ██████████████████████████████████████   Assuming these results

14   are typical of what would be retrieved from the other inventors for whom custodial files are

15   available, ██████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████   Samsung would

19   have to hire several hundred new attorneys immediately to even have a fighting chance at meeting

20   Apple's absurd January 23, 2012 Lunar New Year deadline.[5]

21        This is a textbook example of overreaching.   Apple is trying to generate useless, time

22   consuming and expensive busywork to prevent Samsung from effectively defending itself in this

23   case or prosecuting its counterclaims.   Having failed to point to even a single missing document

24   ────────────────────────

25   [4]    At the parties' January 5, 2012 lead counsel meet and confer conference, Apple stated that
     it refused to review or produce the search results for "Android" since the search term resulted in
26   hundreds of thousands of hits.   (Chan Decl. ¶ 15)

     [5]
27   ████████████████████████████████████████████████████████████████

28   ████████████████████████████████████   (Chan Decl. ¶ 13.)

1  in Samsung's inventor productions, the burden to Samsung generated by this oppressive demand
2  far outweighs any speculative or theoretical benefit to Apple.

3    2.  ████████████████████████████
4  ████████████████████████████
5  ████████████████████████████████████
6  ████████████████████████████████████
7  ████████████████████  Although Samsung has produced some
8  documents from its central files relating to the subject matter of these patents (*see id.* at ¶ 29),
9  ████████████████████████████████████
10 ████████████████████  Samsung's investigation thus far has
11 not identified any additional repositories that would contain documents relevant to the '055 Patent
12 and the '871 Patent, which were filed 13 years ago and 8 years ago, respectively.   Samsung's
13 investigation is ongoing, however, and Samsung will produce all relevant and responsive
14 documents in its possession, custody or control relating to these patents.

15
16    3.  Samsung's Searches Using Korean Search Terms Was Adequate
       In other contexts, Apple complains about the volume of Korean language documents
17 produced by Samsung.  (Dkt. No. 613 at 2.)   In its latest motion, however, Apple does an about-
18 face and claims that Samsung somehow excluded Korean-language documents from its
19 production.  (*See* Mot. to Compel at 8.)  ████████████████████
20 ████████████████████████████████████
21 ████████████████████████████████
22 ████████████████████████████████████
23 ████████████████████

24
25    4.  Samsung's Searches Using SSO-Related Search Terms Was Adequate.
26     Samsung's search terms relating to declared-essential technology were likely to capture all
27 documents relevant to the inventors' involvement with standards bodies relating to the patents-in-
28 suit.  As Apple concedes, Samsung's search resulted in a substantial number of SSO-related

1  documents produced from its inventors' files.  (Mot. to Compel at 12.)   Searching for SSO-

2  specific search terms, as Apple proposes, generated an inordinate number of false positives,

3  including documents authored by other entities relating to technology that is far afield from the

4  inventions disclosed in the patents-in-suit.   In any event, Samsung has already agreed to

5  supplement its production of documents relating to the inventors' participation in SSOs, thus

6  mooting Apple's request.

7       **C.**     **Apple Mischaracterizes the Testimony of Samsung's Inventors**

8       Apple attempts to cobble together a handful of vague comments from the deposition of just

9  five inventors (out of 24 deposed in this action) in order to support its contention that Samsung

10  failed to adequately direct or supervise its inventors' searches.   Not one inventor testified that

11  counsel was absent during these searches; instead, the inventors testified that along with counsel,

12  they themselves were heavily involved in the search process because they also knew the relevant

13  terms or documents to look for.



     Case No. 11-cv-01846-LHK



Apple fails to cite even one case holding that inventors are prohibited from being involved in the formulation of the search strategy for their files, or that inventors cannot be involved in the search of their files or computers pursuant to counsel's direction.   Nor does any case say that inventors are not permitted to search for relevant documents on their own, so long as such searches are reviewed and verified for sufficiency.   Moreover, on closer read of the several of the cases cited in Apple's motion, not one is applicable to the facts of this case.   For example, in *Play Visions, Inc. v. Dollar Tree Stores, Inc.*, No. C09-1769, 2011 WL 2292326 (W.D. Wash. June 8, 2011), the plaintiff's counsel produced 360 bankers' boxes of documents without making any effort to narrow the documents to those that were responsive to defendant's requests, and thus the Court found that counsel had failed "to assist and guide his client's production of discovery responses."   *Id.* at *2, *6.   Here, by contrast, Samsung has done the opposite: Samsung has gone the extra mile to ensure that its production identified the documents that were responsive to Apple's requests, and Samsung's counsel worked with inventors to determine the appropriate search terms, guided inventors through the searches in custodial interviews, and were personally present to quality-check the results.

Nor did Samsung rely on inventors to make their own, independent decisions about the relevance of documents, or to "turn over whatever documents they thought were responsive,

1  without verifying that the searches were sufficient." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81

2  (D.N.J. 2006).   In *Wachtel*, the paralegal asked specific individuals for specified documents, but

3  then did not follow up with them to see if they had further responsive documents; moreover, the

4  paralegal did not attempt to identify other locations for responsive documents.   *Id.* at 92.   Unlike

5  *Wachtel*, Samsung not only interviewed its inventors, but also supervised the collection of

6  documents returned by keyword searches, and then reviewed those results to verify that all

7  potentially relevant and responsive documents were searched.   For these same reasons, Apple's

8  reliance on *Jones v. Bremen High School District 228*, No. 08 C 3548, 2010 WL 2106640 (N.D.

9  Ill. May 25, 2010), is also misplaced; unlike *Jones*, where defendant failed to place a litigation

10  hold on its employees' email, Samsung has issued multiple litigation holds—and Apple has not

11  contested these holds—and Samsung's counsel actively assisted its inventors in the search for

12  relevant documents.

13  **II.      APPLE'S REQUESTS FOR "ALL" ETSI AND 3GPP DOCUMENTS ARE**

14  **HOPELESSLY OVERBROAD AND UNDULY BURDENSOME.**

15          Apple's demand that Samsung produce "entire categories of documents" related to

16  Samsung's more than decade-long participation in the European Telecommunications Standards

17  Institute ("ETSI") and the 3rd Generation Partnership Project ("3GPP"), encompasses documents

18  that have nothing to do with Apple's defenses or counterclaims – or even smartphones or tablets,

19  for that matter.   ( Mot. to Compel at 12.)   As detailed below, Samsung agrees to produce a

20  narrower subset of documents that are relevant to this litigation, thus mooting Apple's motion.

21  As the remaining documents requested by Apple are not relevant and would be crushingly

22  burdensome to produce, its motion to compel these documents should be denied.

23          **A.      Apple's Requests for All Documents Related to Samsung's Participation in**

24          **ETSI and/or 3GPP Amount to an Enormous Fishing Expedition.**

25          Apple ties its document requests relating to Samsung's participation in ETSI and 3GPP to

26  its unenforceability defense and antitrust, unfair competition, and contract counterclaims.   (Mot.

27  to Compel at 9-10.)   Apple alleges that Samsung has declared seven of the patents-in-suit

28  essential to certain specifications of the UMTS standard adopted by ETSI, but has violated

1  antitrust and unfair competition laws by untimely disclosing the patents and failing to offer Apple

2  a license to the patents on FRAND terms.   (Am. Counterclaims at ¶¶ 77-86.)   Similarly, Apple's

3  unenforceability defense and contract counterclaims are based on the contention that, due to this

4  alleged commitment to license these patents on FRAND terms, Samsung's lawsuit breaches a

5  license or an irrevocable right to license these patents to Apple.   (Am. Counterclaims at ¶¶ 180-

6  182.)   Thus, Apple's counterclaims are limited to Samsung's conduct with respect to particular

7  standards-essential patents relevant to just a few specifications of the UMTS standard.[6]   Yet

8  Apple's motion seeks much, much more.

9      **B.**    <u>Samsung Has Already Agreed to Produce Documents Relevant to Apple's</u>

10          <u>Defenses and Counterclaims.</u>

11       Samsung has agreed to produce documents relevant to Apple's defenses and

12  counterclaims.   These documents are necessarily limited to the relevant specifications of the

13  UMTS standard and the patents in suit, which relate to WCDMA/HSPA technology.   Samsung

14  previously agreed to produce all relevant documents required by the proportionality considerations

15  contemplated by the rules, including all "nonpublic communications between Samsung and the

16  ETSI working groups that developed the UMTS specifications identified in Apple's counterclaims

17  [*i.e.* 25.212, 25.213, and 25.214], and internal communications regarding Samsung's participation

18  in these working groups relating to the patents-in-suit."   (Mot. to Compel at 13-14.)   Even

19

20

---

21     [6]   Apple's counterclaims no. 24-29, discussed above, have already been dismissed once (Dkt.

22  No. 315), and are subject to Samsung's Second Motion to Dismiss currently noticed for April 4
   due to the Court's heavy motion calendar.   (Dkt. No. 405.)   Samsung incorporates that motion by

23  reference here and submits that given that Apple's claims suffer fatal weakness on the merits, it is
   particularly appropriate to limit the discovery in this case.   *In re Sulfuric Acid Antitrust Litig.*, 231

24  F.R.D. 331, 336 (N.D. Ill. 2005) ("Limitation or postponement of discovery may be appropriate
   when a defendant files a motion to dismiss," and such limitations or postponements are granted

25  with "substantial frequency."); *see also Spencer Trask Software & Info. Services, LLC v. RPost

26  Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) ("[D]iscovery may in a proper case be stayed
   pending the outcome of a motion to dismiss.").   The Court may "consider the strength of the

27  dispositive motion," particularly where, as here, the Court has already dismissed Apple's
   counterclaims once before.   *Id.*

28

        Case No. 11-cv-01846-LHK

1  meeting this burden will require significant resources and manpower from Samsung.   (Kim Decl.

2  ¶¶ 9-10.)

3        Nevertheless, in the spirit of compromise, Samsung will also agree to produce documents

4  falling within the following categories outlined by Apple in its Motion:

5

6     •   Documents showing Samsung's "general policies and/or practices with regard to the

7          disclosure of purportedly essential IPR to ETSI and 3GPP";

8
9     •   Documents showing the "structure of the departments or teams at Samsung that work

10          on SSO-related issues so that Apple may identify pertinent fact witnesses to depose";

11          and

12     •   "Documents related to Samsung's decision to disclose (or not to disclose) the patents-

13          in-suit to ETSI and 3GPP."

14  (Mot. to Compel at 14.)   Apple is entitled to nothing more.

15       **C.**    **To the Extent that Apple Seeks Documents Beyond What Samsung Has**

16            **Agreed to Produce, Its Motion to Compel Should be Denied.**

17        While Apple's counterclaims and defenses are limited to particular specifications of the

18  UMTS standard, Apple's requests for production encompass documents relating to thousands of

19  standards promulgated by ETSI and the 3GPP.   These standards are not relevant to the litigation.

20  More specifically, ETSI has promulgated over 4,900 standards for information and

21  communications technologies, including fixed, mobile, radio, converged, broadcast and internet

22  technologies.   (Kim Decl. ¶ 7.)   ETSI also promulgates standards relating to intelligent transport

23  systems, medical devices, aeronautics, and mobile television formats (*e.g.*, MBMS and DVB-H)

24  which have no relevance at all to Apple's defenses or counterclaims.   (*Id.*)   ETSI is just one of

25  the six standards-setting organizations that comprise 3GPP, which promulgates standards relating

26  to a broad array of telecommunications standards and technologies.   WCDMA/ HSPA is just one

27  of six standardized technologies that form the 3GPP specifications.   (*Id.*)   Apple does not

28

1    contend that the Samsung patents in suit have been declared essential to any mobile

2    telecommunications standard other than WCDMA/ HSPA.  Despite the fact that Samsung's

3    participation in ETSI and 3GPP is only relevant to the extent that the participation involved the

4    specifications identified in Apple's complaint, Apple seeks an enormous volume of discovery

5    regarding Samsung's participation with respect to *any* standard set by ETSI or 3GPP.   Apple has

6    not limited its motion to the relevant standards body, a particular specification, or even by any

7    time period, patent family, custodian, or technological subject matter.   Moreover, Apple does not

8    claim to have been harmed by Samsung's conduct before any of the five other organizations which

9    comprise 3GPP, nor does it allege that Samsung violated the rules or policies of SSOs other than

10    ETSI.   Given the dizzying array of acronyms and the many layers of irrelevance in Apple's

11    demand, Samsung has prepared the following diagram to illustrate just how sweepingly overbroad

12    Apple's document demands are:

Case No. 11-cv-01846-LHK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24 While Apple is seeking the contents of the large black circle above (all documents related to

25 Samsung's 18-year participation in ETSI), it is in fact entitled only to the tiny red sliver of

26 documents in the white circle at the bottom of the chart, which represents the three specifications

27 accused in Apple's counterclaims.   Apple is overreaching on a stunning scale.

28

1

### D.      Apple's Demands Make a Mockery of the Proportionality Requirement

2       Apple's motion fails to even acknowledge the burden of its demands on Samsung.

3   Samsung has disclosed over 3,500 patent or patent applications as essential to various ETSI and

4   3GPP standards.   Apple would have Samsung locate, interview and search every inventor of each

5   one of these patents, as well as virtually all individuals who have worked in its standards groups

6   for the last fifteen years.   (Kim Decl. ¶ 8.)   Apple's conclusory assertion that its requests meet

7   the proportionality requirement (Mot. to Compel at 14 n.10) cannot satisfy its burden to show that

8   such discovery is "reasonably calculated to lead to the discovery of admissible evidence."   Fed.

9   R. Civ. P. 26(b)(1).   It is not.

10       None of the cases cited by Apple ordered anywhere near the extraordinary scope of

11   production Apple seeks here.   In fact, the scope of discovery called for in these cases more

12   closely resembles Samsung's most recent offer to produce documents relevant to the declared-

13   essential patents-in-suit for the standard in question.   For instance, in *LG Elecs., Inc. v. Motorola,*

14   *Inc.*, No. 10-CV-3179, 2010 WL 3075755 (N.D. Ill. Aug. 5, 2010), the court *denied* LG's motion

15   to compel in part, with respect to LG's document requests directed to Motorola's involvement

16   with SSOs in general, since LG had failed to establish how Motorola's activities in those SSOs

17   related to or were "necessary" to LG's claims.   *Id.* at *3.   The court thus tailored its order to two

18   *very specific* standards (SCTE 07 and ITU-T J.83), declining LG's invitation to order production

19   of a broad range of SSO-related documents for an entire specification.   *See id.* at *3, *5.

20       Similarly, in *SmithKline Beecham Corp. v. Apotex Corp.*, 2006 WL 279073 (E.D. Pa. Jan.

21   31, 2006), the defendant moved to compel communications between the plaintiff and three,

22   discrete private organizations.   In that case, the plaintiff did not contest the relevance of these

23   organizations, but only complained that two of the organizations were located in Europe.   *Id.* at

24   *3.   The court thus only considered and ruled that plaintiff's communications with the two

25   organizations located outside the U.S. were within the scope of permissible discovery.[7]   Finally,

26

27   _____

     [7]   Likewise, *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988), also
     cited by Apple, has nothing to do with a motion to compel documents, nor, as Apple appears to
28   (footnote continued)

1   *In Re Rambus*, 7 Fed. Appx. 925 (Fed. Cir. 2001), is entirely inapposite, as Samsung has already

2   offered to produce all documents relating to its disclosures of the patents-in-suit to the relevant

3   working groups of the UMTS standard.   Samsung's offer of production therefore includes all

4   documents possibly relevant to Apple's affirmative defenses.   *Townshend Intellectual Prop.,*

5   *L.L.C. v. Broadcom Corp.*, C 06-05118 JF(RS), 2007 WL 2462152 at * 3 (N.D. Cal. Aug. 29,

6   2007) (denying requests for documents relating to "[Defendant's] interactions with industry

7   standard setting organizations ('SSOs'), and those seeking information regarding [Defendant's]

8   products other than the V.90-compliant modems alleged in this action to be infringing.")

9   **III.     APPLE'S REQUESTS FOR LICENSES AND NEGOTIATION DOCUMENTS FAR**

10  **EXCEED THE RELEVANT SCOPE OF DISCOVERY**

11          Just as with its request for all documents relating to Samsung's participation in the ETSI

12  and 3GPP SSOs, Apple's requests for licenses and negotiation documents are overly broad.

13  Apple has not limited its requests for licenses or negotiation documents by the standard to which

14  the underlying intellectual property applies, time period, technological subject matter, or product

15  line, nor has Apple limited its request to licenses for the patents-in-suit, or even to all U.S. patents

16  and/or patent applications.   Rather, Apple demands every license for every Samsung patent

17  declared essential to any technological standard promulgated by ETSI or 3GPP – which would

18  include such things as licenses for television technology.   Apple also requests, for the first time in

19  its motion, that Samsung should produce licenses to "relevant technologies" to the patents in suit,

20  without defining that term in its brief or in prior meet and confer.   (Motion to Compel at 15-16.)

21          Only a few of the documents sought by Apple are relevant to any claim or defense in this

22  litigation.   Samsung agrees to produce these relevant categories of documents:

23

24

25

26  ────────────────

27  contend, does it stand for any broad proposition that communications between a corporation and
    any SSO is discoverable simply because it can form the basis of an antitrust claim.

28

1    • All communications with third parties negotiating the terms of licenses to the patents in

2       suit;[8]

3    • All licenses to Samsung patents incorporated in the UMTS specifications identified in

4       Apple's Amended Answer, Defenses, and Counterclaims (25.212, 25.213, and 25.214).

5  The first category of documents includes the information that Apple contends is relevant to its

6  license and exhaustion claims.   (Mot. to Compel at 17.)   The second category of documents

7  includes information that may be relevant to a reasonable royalty.   (*Id.*)

8        The remaining requests for production either seek documents that are not relevant to this

9  litigation or are so ill-defined that Samsung has no hope of locating responsive documents.   Apple

10  asserts without any basis in fact or law that "documents reflecting patent license negotiations for

11  declared-essential patents (even declared-essential patents not asserted in this action) are relevant

12  to the determination of an appropriate 'Fair, Reasonable, and Non-Discriminatory' (FRAND)

13  royalty rate, if any."   (Mot. to Compel at 17.)   Apple does not and cannot cite any law for this

14  proposition.   Further, Apple provides no rationale as to why the terms of a license to declared-

15  essential patents relating to an unrelated ETSI technology, such as medical devices or aeronautics,

16  should have any bearing on licenses to declared-essential patents relating to the UMTS standard.

17  Analogously, courts have limited discovery in the reasonable royalty context to licenses that relate

18  to the same technology as the patents in suit.   *Bally Technologies, Inc. v. Bus. Intelligence Sys.*

19  *Solutions, Inc.*, 2:10-CV-00440-PMP, 2011 WL 3892221 at *3 (D. Nev. Aug. 30, 2011) (denying

20  discovery because Plaintiff failed to establish that "license agreements involving other patents are

21  sufficiently relevant to be discoverable.").

22        As referenced above, Apple also contends that Samsung should produce licenses to

23  "relevant technologies" to the patents in suit.   (Mot. to Compel at 15-16.)   Apple has not defined

24  what it means by "relevant technologies" and has not met and conferred with Samsung regarding

25  the particular technologies it contends to be relevant.   As such, Apple's motion is premature.

26  _____

27    [8]   Samsung's agreement to provide these documents moots Apple's contention that Samsung

28  is withholding documents relevant to its license and exhaustion claims.   (Mot. at 17.)

1    Samsung is willing to meet and confer with Apple to determine whether the parties can reach an

2    agreement as to which technologies are relevant to the patents in suit rather than unnecessarily

3    burdening the court with this (or another) motion to compel.

4

5                                   **CONCLUSION**

6          For the foregoing reasons, the Court should DENY Apple's Motion to Compel.

7

8    DATED: January 17, 2012                QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
9

10

11                                          By /s/ Rachel Herrick Kassabian
                                               Charles K. Verhoeven
12                                             Kevin P.B. Johnson
                                               Victoria F. Maroulis
13                                             Michael T. Zeller
                                               Rachel Herrick Kassabian
14                                             Attorneys for SAMSUNG ELECTRONICS CO.,
15                                             LTD., SAMSUNG ELECTRONICS AMERICA,
                                               INC., and SAMSUNG
16                                             TELECOMMUNICATIONS AMERICA, LLC

17

18

19

20

21

22

23

24

25

26

27

28

**GENERAL ORDER ATTESTATION**

I, Victoria Maroulis, am the ECF user whose ID and password are being used to file the foregoing document.   I hereby attest pursuant to General Order 45.X.B. that concurrence in the electronic filing of this document has been obtained from Rachel Herrick Kassabian.

_/s/ Victoria Maroulis_