Mueller Exhibit 49

Salans

*Translation from French for information – waf – 9/11/2011*

FRENCH REPUBLIC
In the name of the French People



EXTRACT
from the Court Registry records

# PARIS

## *TRIBUNAL*

## *DE GRANDE*

## *INSTANCE*

**ENFORCEABLE AUTHENTIC COPY**

RG No.: **11/58301**

Maître David Masson, Attorney, court mailbox No. P0372



**PARIS**
*TRIBUNAL DE*
*GRANDE*
*INSTANCE*

***EX PARTE* ORDER**
**of December 8, 2011**

RG No.
**11/58301**

BF/No. 1

Summons of
October 5, 2011

by **Marie-Christine COURBOULAY, Vice Presiding Judge** of the Paris
*Tribunal de Grande Instance*, acting by delegation of the Presiding Judge of the
Tribunal.

Assisted by **Thomas BLONDET, Clerk.**


<u>**CLAIMANTS**</u>

**The Korean company SAMSUN ELECTRONICS CO. LTD**
Maetan – 3-Dong – Yeongtong-gu
Suwon, Gyeonggi-do, Carée 443-742

**SAMSUNG ELECTRONICS FRANCE**
270 avenue du Président Wilson
93210 LA PLAINE SAINT-DENIS

represented by Maître Laetitia BENARD, attorney at the PARIS Bar - #J022


<u>**DEFENDANTS**</u>

**S.A.R.L. APPLE FRANCE**
7 place d'Iéna
75116 PARIS

Represented by SCP SALANS & ASSOCIES, in the person of Maître <u>David
MASSON</u>, attorney at the PARIS Bar - #P0372 and FRESHFIELDS
BRUCKHAUS DERINGER in the person of Maître <u>BENOUVILLE</u> and Maître
<u>Jérôme PHILIPPE</u>, attorneys at the PARIS Bar


**Enforceable
copies issued on:**

**APPLE RETAIL FRANCE EURL**
8 avenue Hoche
75008 PARIS

Represented by SCP SALANS & ASSOCIES, in the person of Maître David MASSON, attorney at the PARIS Bar - #P0372 and FRESHFIELDS BRUCKHAUS DERINGER in the person of Maître BENOUVILLE and Maître Jérôme PHILIPPE, attorneys at the PARIS Bar

**APPLE INC.**
Infinite Loop, Cupertino
California
95014 UNITED STATES OF AMERICA

Represented by SCP SALANS & ASSOCIES, in the person of Maître David MASSON, attorney at the PARIS Bar - #P0372 and FRESHFIELDS BRUCKHAUS DERINGER in the person of Maître BENOUVILLE and Maître Jérôme PHILIPPE, attorneys at the PARIS Bar

**APPLE SALES INTERNATIONAL**
Hollyhill Industrial Estate
Hollyhill, Cork - IRELAND

Represented by SCP SALANS & ASSOCIES, in the person of Maître David MASSON, attorney at the PARIS Bar - #P0372 and FRESHFIELDS BRUCKHAUS DERINGER in the person of Maître BENOUVILLE and Maître Jérôme PHILIPPE, attorneys at the PARIS Bar


**PROCEEDINGS**

At the November 17, 2011 hearing, held in public, presided by **Marie-Christine COURBOULAY**, Vice Presiding Judge, assisted by **Thomas BLONDET**, Clerk



**PROCEDURE**

Samsung Electronics Co. Ltd and Samsung Electronics France, authorized by an order of the Presiding Judge of October 7, 2011, the latter's licensee, summoned Apple France, Apple Retail France EURL, Apple Inc and Apple Sales International to an expedited hearing by a writ of October 5, 2011, on the basis of Articles L.615-3, L.613-3 and L.615-1 of the Intellectual Property Code, in order to:

- prohibit Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France from manufacturing, importing, offering for sale, putting on sale to the public, using and holding the iPhone 4S for the aforementioned purposes, subject to a penalty of EUR 100,000 (one hundred thousand euros) for each iPhone 4S manufactured, imported, offered for sale, sold, used or held which reproduces the characteristics of the European patents, Nos. EP 1 188 269 and EP 1 097 516;

- order Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France to withdraw from the distribution networks the iPhone 4S already sold, delivered or transferred in any manner whatsoever to a third party, subject to a penalty of EUR 1.000,000 (one million euros) per day of delay starting three days after the date that the forthcoming order is notified;

- Hold and judge that Madam the Presiding Judge will have competence to liquidate the penalties as appropriate;

- order Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France to pay the claimants EUR 200,000 (two hundred thousand euros) pursuant to Article 700 of the Civil Procedure Code."


At the hearing on October 20, 2011, the case was postponed to allow the Samsung companies to respond to the most recent brief of the Apple companies and to the exhibits produced resulting from the discovery procedure which is taking place at the same time before the California courts, to allow the Apple companies to respond to the rejoinder filed by the Samsung companies and finally so that the two parties can agree on the expurgated form of the exhibit coming from the discovery procedure which will be submitted to the appreciation of the judge in summary proceedings.

The Samsung companies at the hearing of November 7, 2011 requested the judge in summary proceedings to:

Considering Articles L.615-3, L.613-3 and L.615-1 of the Intellectual Property Code,
Considering the European patents Nos. EP 1 188 269 and EP 1 097 516,

- prohibit Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France from manufacturing, importing, offering for sale, putting on sale to the public, using and holding the iPhone 4S for the aforementioned purposes, subject to a penalty of EUR 100,000 (one hundred thousand euros) for each iPhone 4S manufactured, imported, offered for sale, sold, used or held which reproduces the characteristics of the European patents, Nos. EP 1 188 269 and EP 1 097 516;

- order Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France to withdraw from the distribution networks the iPhone 4S already sold, delivered or transferred in any manner whatsoever to a third party, subject to a penalty of EUR 1,000,000 (one million euros) per day of delay starting three days after the date that the forthcoming order is notified;

- hold and judge that Madam the Presiding Judge will have competence to liquidate the penalties as appropriate;

- dismiss all the claims, pleas and briefs of Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France;

Order Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France to pay the claimants EUR 200,000 (two hundred thousand euros) pursuant to Article 700 of the Civil Procedure Code."

The Apple companies requested the judge in summary proceedings to:
Considering Articles L.613-3, L.614-12, L.615-1, L.615-3 of the Intellectual Property Code;
Considering Articles 52 and 138 of the Munich Convention of October 5, 1973;
Considering Article 1er of the law of July 1, 1901 on association contract;
Considering Articles 1101 and following of the Civil Code and Article 1382 of such same Code;
Considering Articles 32-1 and 700 of the Civil Procedure Code;
Considering the exhibits produced in the proceedings;

- hold and judge that the claims of Samsung Electronics Co. Ltd and Samsung Electronics France are inadmissible and unfounded,

- acknowledge that Samsung Electronics Co., Ltd and Samsung Electronics France do not demonstrate and do not even propose demonstrating that the iPhone 4S implements the actual patents EP 1 188 269 and EP 1 097 516 but confine themselves to mentioning the compatibility of this telephone with the UMTS standard,

- acknowledge that Qualcomm Inc. supplies the chips integrated in the iPhone 4S telephone and that it is the beneficiary of a license from Samsung Electronics Co.,

- acknowledge that Apple Inc., Apple Sales International, Apple France and Apple Retail France EURL are the beneficiaries of a so-called "FRAND" license to use the European patents EP 1 188 269 and EP 1 097 516 of Samsung Electronics Co. Ltd by the effect of the European Telecommunication Standards Institute (ETSI) Rules, including Article 6-1 of such Rules on intellectual property rights;

- acknowledge, in the alternative, that the irrevocable undertaking made by Samsung Electronics Co., Ltd in accordance with Article 6.1 of the ETSI Rules on intellectual property rights is an irrevocable offer to contract and that it has not been retracted;

- hold and judge that the rights in the European patents EP 1 188 269 and EP 1 097 516 are exhausted as regards Apple Inc., Apple Sales International, Apple France and Apple Retail France EURL and the iPhone 4S telephone;

- hold and judge that Samsung Electronics Co., Ltd and Samsung Electronics France have no grounds for opposing the European patents EP 1 188 269 and EP 1 097 516 against Apple Inc., Apple Sales International, Apple France and Apple Retail France EURL and against the manufacturing, importation, offer for sale, putting on sale to the public and use for the aforementioned purposes of the iPhone 4S telephone;

- hold and judge that Samsung Electronics Co., Ltd and Samsung Electronics France do not demonstrate any "plausible" infringement of their rights,

- acknowledge that there are very sound reasons for the nullification of the European patent EP 1 188 269, the subject-matter of which has been extended beyond the initial application, for absence of novelty, and particularly due to the fact of the nullification of the claimed Korean priority of July 6, 1999, the fact that its claim 1 does not correspond to its description, that the patentability of its claims is excluded and there is a lack of inventiveness,

- acknowledge that there are very sound reasons for the nullification of the European patent EP 1 097 516 particularly for absence of novelty and, in the alternative, due to extension beyond the text which was filed and insufficient description, the fact that the patentability of its claims is excluded and there is a lack of inventiveness,

- hold and judge that Apple Inc., Apple Sales International, Apple France and Apple Retail France EURL raise serious arguments concerning the validity of the invoked patents,

- acknowledge that, pursuant to a writ of summons to appear before the *Tribunal de Grande Instance* of July 8, 2011 served on the defendants, Samsung Electronics Co., Ltd and Samsung already requested the Tribunal to: "*acknowledge the infringement of the claimant's rights and consequently prohibit the defendants from manufacturing, importing, offering for sale, marketing, using and holding for the aforementioned purposes, in France, any product which functions on the mobile telephone network using the 3G/UMTS system in France*" and the request is the same concerning the iPhone 4s telephone;

- hold and judge that Samsung Electronics Co., Ltd and Samsung Electronics France do not demonstrate any "*imminent*" infringement of their rights;

- acknowledge that, even if it was judged that the patents EP 1 188 269 and EP 1 097 516 could be opposed against the defendant companies, their implementation to prohibit Apple Inc., Apple Sales International, Apple France and Apple Retail France EURL from exploiting telephones compatible with the UMTS standard would clearly constitute abuse of a dominant position;

- hold and judge that the prohibition measures requested by Samsung Electronics Co., Ltd and Samsung Electronics France are neither appropriate nor admissible;

- hold and judge that the conditions of Article L.615-3 of the Intellectual Property Code are not validly met;

Consequently,
- dismiss all the claims of Samsung Electronics Co., Ltd and Samsung Electronics France;

As a counterclaim,
- Hold and judge that this proceeding is obviously abusive and wrongful,

- order *in solidum* Samsung Electronics Co., Ltd and Samsung Electronics France to pay to Apple Inc., Apple Sales International, Apple France and Apple Retail France EURL EUR 300,000 to compensate the prejudice suffered due to abuse of process,

In any event,
- order *in solidum* Samsung Electronics Co., Ltd and Samsung Electronics France to pay to Apple Inc., Apple Sales International, Apple France and Apple Retail France EURL EUR 150,000 pursuant to the provisions of Article 700 of the Civil Procedure Code;

- Order *in solidum* Samsung Electronics Co., Ltd and Samsung Electronics France to pay all the procedural costs, in accordance with the provisions of Article 699 of the Civil Procedure Code.

**FACTS**

**The economic context**



The Samsung companies belong to a group which has business activities in areas going from electronics via financial services, the chemical industries and heavy industry to trading and services.

They say that they invest every year at least 9% of their turnover in, amongst others, research and development activities within the Samsung Institute of Technology and participate in the standardization of high technology new generation mobile telephone technologies and the securitization of intellectual property rights.

Samsung Electronics Co. Ltd. is the leader in telecommunications, offering an extensive range of mobile telephones on the current market, including multimedia and 3G telephones, and communication systems (280 million mobile telephones were sold by the Samsung companies in 2010).

It is more specifically the leader for sales of Smartphones on the French market, marketed under the names "Galaxy S" and "Galaxy S II", and tablet computers marketed under the name "Galaxy Tab".

Apple Inc., a Californian company, is the parent company of Apple Retail and Apple Sales. Apple Inc. is listed in the US on the NASDAQ, it claims that it is a pioneer in the technology and design of mobile telephones and tablet computers and had caused a genuine revolution in the use of interfaces and tactile screens.

It designed its mobile telephones (the iPhone) and tablet computers (the iPad) according to different specific features which, according to it, make them recognizable among all others.

The Apple group also invests more than one billion dollars a year in research and development.

Apple Retail France is a subsidiary of Apple Inc and its principal business is the management of sales outlets – known as "Apple Stores" – in France.

Apple Sales International, also a subsidiary of Apple Inc, is a company established in Ireland whose business is in particular the management of orders placed on line.

The Apple and Samsung companies have significant commercial links since Apple obtains its supplies of components from Samsung (for example the screen or the processor) for the iPhone (launched in 2007) or the iPad for an amount of several billions of dollars a year.


**The dispute**

At the end of the summer of 2010, the Apple companies considered that a certain number of products manufactured and marketed by the Samsung companies (the Galaxy range of Smartphones and tablet computers) unlawfully reproduced the features and functionalities of its own products (particularly the Mac Book, iPhone and iPad).

After the initial exchanges of correspondence of the end of August 2010, meetings were held between the representatives of the various entities involved, particularly on September 9, 2010, October 5, 2010, November 4, 2010, then in January 2011 and on April 10, 2011.

However, this first attempt to reach an amicable solution was unsuccessful.

In the spring of 2011, Samsung launched a new range of Galaxy Smartphones, followed by tablet computers (Galaxy Tab), which according to Apple had obvious similarities with its products.

On April 15, 2011, Apple Inc initiated infringement proceedings against the Samsung companies with respect to several patents (non-essential patents, i.e. patents protecting its products), models

trademarks and trade dress applications against Samsung Ltd and its two American subsidiaries Samsung Electronics America Inc and Samsung Telecommunications America LLC before the District Court of the Northern District of California in the United States.

Apple's initiative was followed by an immediate counter-attack by Samsung which in turn commenced proceedings against Apple in Japan, Korea, Italy and the United Kingdom. The dispute became international within several months throughout nine countries, including France.

The Samsung companies on their side summoned the Apple companies to summary proceedings for an expedited hearing on the grounds that their two patents EP 269 and EP 516, which were essential for the UMTS standard declared as such, were used by the defendant companies in the iPhones 4S which were on the point of being sold to the public in France on October 15, 2011, and that Apple is not paying any royalties at all to the Samsung companies.

**The judicial context in Europe and the world**

**In Europe**

➢ In France

On July 8, 2011, following three seizures in connection with an infringement carried out on July 6, 2011 at the registered offices of Apple France and Apple Retail France EURL and in an Apple Store, and a bailiff's report on the Internet, carried out on the sites www.apple.com/fr and www.store.apple.com/fr, the Samsung companies summoned the Apple companies on the merits before the Paris TGI on the grounds that the Apple iPhone 3G, iPhone 3GS and iPhone 4 and the iPad and iPad 2 in their "Wi-Fi and 3G" versions, reproduce the claims of three patents (the European patent No. 1 188 **269** (highlighted in bold to identify the patents which are common to the proceeding before the judge in summary proceedings), the European patent No. 1 720 373 and the European patent No. 1 714 404) covering the UMTS standard and declared essential in that respect.

This case is pending before the 3rd Chamber 4th Section of the Paris TGI, under the RG No. 11/10464.

The Samsung companies are arguing that this case concerns different products from those said to be infringements in this summary proceeding since the dispute concerns only the iPhone 4S.

➢ In the Netherlands

On June 27, 2011 Apple Inc. summoned to summary proceedings Samsung Electronics Co., Ltd., Samsung Electronics Benelux B.V., Samsung Electronics Europe Logistics B.V. and Samsung Electronics Overseas B.V. to obtain an interim injunction against Samsung concerning its Galaxy S, Galaxy IS II and Galaxy Ace Smartphones and its Galaxy Tab tablet computers, on the grounds that the Samsung companies were reproducing the claims of three patents, six Community designs and models and copyrights.

In an August 24, 2011 decision, the Netherlands court dismissed all Apple's claims, except for one of the patents concerning some of the implicated products.

Apple Inc. lodged an appeal against this decision. The appeal procedure is still pending.

On July 12 and August 9, 2011, the Samsung companies submitted counterclaims against Apple, according to which the Apple iPhone 3G, iPhone 3GS and iPhone 4 and the iPad and iPad 2 in their "Wi-Fi and 3G" versions were infringing four patents (the European patent No. 1 188 **269**, the European patent No. 1 478 136, the European patent No. 1 097 **516** and the European patent No. 1 114 528) covering the UMTS standard and declared essential in that respect.

The hearing for oral arguments concerning patents No. 1 097 **516** and No. 1 114 528 was scheduled for October 17 and 18, 2011.

On September 8, 2011, Samsung Electronics Co., Ltd. brought an action for a declaratory ruling of non-infringement (*action déclaratoire en non contrefaçon*) against Apple Inc. to have it judged that the Samsung Galaxy Tab tablet computers do not infringe the Community model No. 000181607-0001 held by Apple Inc.

On October 14, 2011, the Hague court entered a decision in summary proceedings in which it was held that the price offer made by Samsung was clearly not "FRAND" and that Samsung was in breach of its obligation to hold *bona fide* negotiations with Apple concerning the terms of a license so that its request for the prohibition of the Apple products was not justified.

The Hague court also indicated that it could not be ruled out that Samsung's action may be deemed on the merits to be an abuse of the right to bring legal proceedings.

➢ In Germany

On April 21, 2011, Samsung Electronics GmbH summoned Apple Inc., Apple GmbH, Apple Retail Germany GmbH and Apple Sales International on the merits to have it judged that the Apple iPhone 3G, iPhone 3GS and iPhone 4 and the iPad and iPad 2 in their "Wi-Fi and 3G" versions infringe three patents (the European patent No. 1 005 726, the European patent No. 1 114 528 and the European patent No. 1 188 **269**) covering the UMTS standard and declared essential in that respect.

This case is pending before the Mannheim Regional Court and oral arguments should be presented in November or December 2011.

On June 17, 2011, Apple Inc. brought an action against Samsung Electronics GmbH and Samsung Electronics Co., Ltd. before the Mannheim Regional Court for infringement of six patents by the Samsung Smartphones and tablet computers.

On August 4, 2011, in a non-adversarial procedure and relying on its Community design and model No. 181607-0001 allegedly protecting the shape of its iPad devices, Apple Inc. submitted an application to the Düsseldorf regional court seeking an interim injunction against Samsung Electronics GmbH and Samsung Electronics Co., Ltd. from marketing their Galaxy Tab tablet computers.

On September 9, 2011, the Düsseldorf regional court confirmed the *ex parte* order of August 9, 2011, which temporarily prohibited Samsung from marketing tablets said to infringe Apple's Community design and model No. 181607-0001.

The Samsung companies lodged an appeal against this decision.

➢ In the UK

On June 29, 2011, Samsung Electronics Co., Ltd. brought in infringement action against Apple Retail UK Limited, Apple Sales International and Apple Inc. to have it judged that the Apple iPhone 3G, iPhone 3GS and iPhone 4 and the iPad and iPad 2 in their "Wi-Fi and 3G" versions infringe three patents (the European patent No. 1 714 404, the European patent No. 1 005 726 and the European patent No. 1 357 675) covering the UMTS standard and declared essential in that respect.

On September 8, 2011, Samsung Electronics Co., Ltd. and Samsung Electronics (UK) Limited brought an action for a declaratory ruling of non-infringement against Apple Inc. to have it judged that the Samsung Galaxy Tab tablet computers do not infringe the Community design and model No. 000181607-0001.

On September 12, 2011, Apple Inc. brought an infringement action against Samsung Electronics (UK) Limited before the British High Court of Justice concerning the Samsung Smartphones and tablet computers on the basis of four patents.

➢ In Spain

On September 8, 2011, Samsung Electronics Co., Ltd. and Samsung Electronics Iberia, S.A.U. brought an action for a declaratory ruling of non-infringement against Apple Inc. to have it judged that the Samsung Galaxy Tab tablet computers do not infringe the Community design and model No. 000181607-0001.

➢ In Italy

On July 1, 2011, Samsung Electronics Co., Ltd. and Samsung Electronics Italia SpA brought an infringement action against Apple Inc., Apple Italia, S.r.l., Apple Retail Italia S.r.l. and Apple Sales International Private Unlimited Company to have it judged that the Apple iPhone 3G, iPhone 3GS and iPhone 4 and the iPad and iPad 2 in their "Wi-Fi and 3G" versions infringe three patents (the European patent No. 1 714 404, the European patent No. 1 005 726 and the European patent No. 1 720 373) covering the UMTS standard and declared essential in that respect.

➢ Before the OHIM

On August 9, 2011, Samsung Electronics Co., Ltd, Samsung Electronics Benelux B.V., Samsung Electronics Europe Logistics B.V. and Samsung Electronics Overseas B.V. brought actions before the OHIM for the nullification of five Apple Community designs and models, including the one referred to in the German procedure.

**In the world**

➢ In the USA

On April 15, 2011, Apple Inc. brought an infringement action against Samsung Electronics Co., Ltd, Samsung Electronics America Inc. and Samsung Telecommunications America LLC before the U.S. District Court, Northern District of California on the basis of seven patents, two models, eight trademarks and three trade dress applications.

On April 27, 2011, Samsung Electronics Co., Ltd and Samsung Telecommunications America LLC brought a patent infringement action against Apple Inc. on the basis of 12 patents declared essential for the 3G standard, whose claims were said to be reproduced in Apple's iPhone and iPad.

On June 16, 2011, Apple Inc. modified its claims in the procedure it had brought on April 15, 2011; it now bases them on eight patents, five additional models and four additional trade dress applications and claims that Samsung is allegedly infringing these rights.

On June 30, 2011, the Samsung companies withdrew the proceeding they had brought on April 27, 2011 and, on the basis of the 12 patents mentioned above, submitted claims of patent infringement in the form of counterclaims in the proceeding brought by Apple.

This case is currently pending.

➢ In Japan



On April 21, 2011, Samsung Electronics Co., Ltd. brought two actions against Apple Japan Inc. before the Tokyo Court for an interim injunction on the basis of a patent, asserting that it is infringed by Apple's iPhone 3GS, iPhone 4, iPad and iPad 2.

On June 17, 2011, Apple Inc. brought two actions for an interim injunction against Samsung Japan Corp. and Samsung Telecom Japan before the Tokyo Court, asserting patent infringement by Samsung's Galaxy S Smartphone and the Galaxy Tab tablet.

On August 23, 2011, Apple Inc brought two infringement actions before the Tokyo court invoking patent infringement by Samsung's Galaxy S and Galaxy S II Smartphones and Galaxy Tab tablet computers.

➢ In Korea

On April 21, 2011, Samsung Electronics Co., Ltd. brought a patent infringement action against Apple Korea Ltd before the Seoul Court on the basis of five patents allegedly infringed Apple's iPhone 3GS, iPhone 4, iPad and iPad 2.

On June 22, 2011, Apple Inc. brought an infringement action against Samsung Electronics Co., Ltd. Smartphones and tablet computers before the Seoul Court on the basis of four patents and five designs and models and also submitted a claim for unfair competition.

➢ In Australia

On July 28, 2011, Apple Inc. and Apple Australia Pty Limited brought an action for an interim injunction against Samsung Electronics Co., Ltd. and Samsung Electronics Australia Pty Limited before the New South Wales Federal Court of Australia, arguing that ten patents were infringed by Samsung's Galaxy Tab 10.1 tablet computer.

On September 16, 2011, the Samsung companies submitted a claim against the Apple companies asserting the infringement of seven patents by the iPhone 3GS, iPhone 4 and iPad 2.

On August 1, 2011 the Samsung companies made the voluntary commitment before the Australian court, without acknowledging any liability, that they would not launch the US version of the Galaxy Tab 10.1 tablet computer in Australia before Friday, September 30, 2011, with a view to the hearings scheduled by the Australian court for September 26 and 29, 2011.

On October 13, 2011, the New South Wales Federal Court of Australia entered a decision in summary proceedings prohibiting Samsung from putting on sale to the public the Australian version of the "Tab 10.1" tablet computer, which infringed Apple's property rights in patents not declared essential for any standard, whereas Samsung had itself removed some infringing functionalities from this product.

**The technical context**

The UMTS System is the third generation of mobile telephone networks. The UMTS/WCDMA standard is the principal standard for the implementation of third generation networks. WCDMA means Wide Band Code-Division Multiple-Access and refers to a technology used to increase the quantity of data which may be exchanged on the bandwidth of mobile telecommunications.

The UMTS standard is also the standard in Japan whereas the CDMA2000 is the standard developed in the USA.

Modern mobile telephones use the new possibilities offered by this standard since in addition to classical voice calls, they can also deliver text messages (SMS), MMS messages (including particularly videos or photographs), emails, they can use an Internet access, send short range wireless

communications (infrared, Bluetooth) and send photographs. These mobile telephones are called "Smartphones". More recently, tablet computers have been developed to allow users to have access to wireless communication services.

➡ The UMTS standard

So that manufacturers can develop their products and operators supply 3G networks that work, standardization projects have been organized, including the "3rd Generation Partnership Project" (3GPP), the principal objective of which is to develop technical specifications applicable to the evolution of the 3G and following systems, to be transposed by the Organizational Partners such as the ETSI into appropriate standards

At end of 1999, the 3GPP terminated the first full project of third general specifications, known as "Release 99".

This set of specifications defined the essential bases of the UMTS standards.

The 3GPP specifications are a compulsory standard once adopted by the Organizational Partners, which include the ETSI.

The 3GPP specifications are covered in several series, which concern different aspects of the UMTS, such as the Service aspects (22 Series), the Multiple radio access technology aspects (37 Series) or the Radio aspects (25 Series).

The Radio aspects of the 25 Series compile a great number of specifications.

Specification TS 25.21227, which will be called the UMTS standard in the rest of the decision, concerning Multiplexing and Channel Coding, was accepted as a standard by the ETSI and published under the ETSI reference "ETSI TS 125 212 V3.11.0 (2002- 11) – Universal Mobile Telecommunications System (UMTS); Multiplexing and Channel Coding (FDD) (3GPP TS 25.212 version 3.11.0 Release 1999)".

➡ The ETSI

The ETSI, European Telecommunications Standards Institute, is a body whose role is to create information technology and communications standards applicable the world over. It is one of the three regional bodies recognized in Europe by the European Union.

The ETSI comprises approximately 700 members from 62 countries including the most important manufacturers in the field of telecommunications, network operators and telecommunications service providers.

Samsung Electronics (an English subsidiary of the claimant) and Apple (UK) Limited (an English subsidiary of the defendant) are both members of the ETSI in the "Manufacturers" category.

The members of the ETSI are governed by its by-laws and rules enacted by it. The rules enacted by the ETSI also apply to the members of the ETSI participating in the development process of the UMTS standard by the 3GPP. These rules are expressly governed by French law.

➡ Samsung's declarations to the ETSI

The Samsung companies own the two patents EP 269 and EP 516.

They made:

. a declaration on December 31, 2003 of the essentiality of the patent EP 269 for the specification TS 25.212 of the UMTS standard;

. a declaration on December 31, 2003 of the essentiality of the patent EP 516 for the specification TS 25.212 of the UMTS standard.

In exchange for declaring the patents essential, which means that these patents are deemed to be integrated in the standard, the companies undertake to grant irrevocable licenses in consideration for a royalty calculated on a fair, reasonable and non-discriminatory (or "FRAND") basis for patents deemed essential for specification TS 25.212 and consequently essential for the UMTS standard, in accordance with Article 6.1 of the ETSI Rules on intellectual property rights.

The judge of this court recalls that when a patent is declared essential for the standard, the ETSI does not verify either the validity of the patent or whether it is really essential, as these questions can always be submitted to a court.

He also observes that there is no indication of the number of patents which have been declared essential for the specification TS 25.212 of the UMTS standard or by which companies.

Finally he emphasizes that these two rules, "irrevocability of the exploitation authorizations" and "FRAND royalty rate", were created to avoid having any holder of a declared essential patent taking advantage of its necessarily dominant situation to abuse it and to prevent a competitor from having access to the market or developing its own products, notably by revoking the exploitation authorization at the time of another dispute.

## GROUNDS

According to Article L.615-3 of the Intellectual Property Code:

*"Any person with authority to bring an action for infringement may, in summary proceedings, request the competent civil court to order, subject to a penalty if necessary, against the alleged infringer or intermediaries whose services it uses, any measure aimed at preventing an imminent infringement of rights conferred by the title or aimed at stopping any further allegedly infringing acts...*
*In summary or ex parte proceedings, the court may order the requested measures only if evidence, reasonably accessible to the claimant, makes it likely that its rights are infringed or that such infringement is imminent".*

The Samsung companies sought an injunction founded of Article L.615-3 of the Intellectual Property Code with respect to two patents 516 and 269, held by Samsung Electronics Co., Ltd and of which Samsung France is a licensee, which it declared essential for the UMTS, i.e., 3G, standard, considering that the iPhone 4S would necessarily be infringing these patents which are integrated in the standard and arguing that the Apple companies do not pay it any royalty to do so.

The Apple companies responded, without being contradicted, that the alleged infringement, which has not been demonstrated by the Samsung companies, concerned the chips installed in the iPhones 4S.

They then maintained that these chips had been purchased from Qualcomm, which benefited from a cross license agreement discovered during the American procedure, about which the Samsung companies kept silent; this agreement authorizes Qualcomm to sell to third parties the chips implementing the Samsung companies' patents declared essential for the UMTS standard so that they cannot be accused of any infringement.

They added that was no imminent or plausible infringement of the Samsung companies' rights

The Samsung companies responded that the Apple companies had not sufficiently demonstrated that it obtained its supplies of chips from Qualcomm or that the agreement entered into between Samsung Electronics Co. Ltd and Qualcomm, produced in the proceedings, established the exhaustion of their rights in the declared essential patents; no money at all had been paid to them in consideration for the Apple companies' implementation of their essential patents.

The parties indicated that their negotiations had been unsuccessful on the license rate proposed by the Samsung companies since it did not meet FRAND license conditions.

Finally, the Apple companies contested the validity of the two patents declared essential by the Samsung companies.


**WHEREUPON**

The Samsung companies contended that they were suffering an imminent infringement of their rights as holders of essential patents 516 and 269, on the grounds that the iPhone 4S was going to be put on sale to the public from October 5, 2011 in France and they maintain that this infringement is occurring because of the actual putting on sale of the iPhones 4S to the public.

However, even though sales of the iPhone 4S are actually being made in France, it is still necessary to review the complaints made by the Apple companies and assess whether or not they are genuine.


**The supply of the iPhone 4S chips by Qualcomm**

The Samsung companies assert that the Apple companies, which indicate clearly on their product and in the attached instruction booklets, that the iPhones 4S comply with the 3G standard, thereby acknowledging that they implement the two patents EP 269 and EP 516, which have been declared essential.

The Apple companies respond that the Samsung companies do not demonstrate the alleged infringement.

On October 28, 2011, they served a formal demand on the Samsung companies to produce iPhone 4S telephones to establish whether the chips inserted in these telephones were Qualcomm chips.

In view of Article 15.6 of the Rules on intellectual property rights, the term "essential" as applied to intellectual property rights means that it is not possible, on technical (but not commercial) grounds, taking into account current normal practice and the state of the art generally available at the time of standardization, to manufacture, sell, lease, otherwise dispose of, repair, use or operate the equipment or methods which use a standard, without infringing intellectual property rights.

Therefore, claiming the implementation of the specification TS 25.212 of the UMTS standard is tantamount to claiming the implementation of the patents EP 269 and EP 516, held by the Samsung companies, so that infringement is presumed and it is up to the party claiming this standard to demonstrate either that it pays royalties, or that it acquired the products from someone who pays royalties or that the patents declared essential are null.

However, for the fairness of the proceedings, it would have been necessary for the Samsung companies to have explained that the reproduced technology was implemented in the chips equipping the iPhone 4S; that these chips were supplied by whichever company with which they had not concluded any license agreement for essential patents and to specify the name of the supplier of the

chip to demonstrate the reasons why they were accusing the Apple companies of infringing their essential patents and whereas they had not accused the defendant companies of 2007 of any infringement in July 2011 for that which concerns France for the other Smartphones put on sale to the public by the Apple companies.

In the present case, the Samsung companies not having indicated the name of the suppliers of the chips in issue, the Apple companies assert that the baseband chip known as "3G" equipping the iPhone 4S is supplied by Qualcomm, which benefits from a license from the Samsung companies.

To do so, the Apple companies produce in the proceedings the bailiff's reports drawn up on October 26, 28 and 31, 2011 by Maître Proust, bailiff in Paris, and by Maître Roll, bailiff in Marseille, showing first that the iPhone 4S telephones were purchased, then they were opened and the chips were extracted, so that it has been established that each of the iPhones 4S acquired were all equipped with Qualcomm MDM6610 chips.

They further produce the bill of materials of the iPhone 4S, which mentions the Qualcomm MDM6610 chip as a component of the iPhone 4S.

This document was submitted to Mr. Bitan, the expert, who was able to read an unexpurgated version of the bill of materials and who certifies in his report produced in the proceedings that the only chip allowing the iPhone 4S to implement the UMTS standard is the Qualcomm chip bearing the reference MDM6610.

They indicate that this information is common knowledge as it is available on the website "ifixit" at the following address: http://www.ifixit.com/Teardown/iPhone-4STeardown/6610/276.

Finally the Apple companies produce in the proceedings:

-      the two declarations of Mr. Eric Koliander, Sales Director of Qualcomm, dated October 31, 2001 and November 6, 2011, which indicate that his company did design the MDM-6610 chip which equips the iPhone 4S,

-      the declaration of November 1, 2011 of Mr. Saku Hieta, Apple's Senior Manager of Wireless Procurement, who confirms that the chips equipping the iPhones 4S are indeed supplied exclusively by Qualcomm.

Finally, they produce in the proceedings the mail from Samsung of April 21, 2011 sent to Qualcomm and to Apple Inc. in which it is indicated that because of the legal proceedings brought by the Apple companies against the Samsung companies on the basis of Apple Inc. patents, Samsung was limiting the scope of the agreements between itself and Qualcomm.

Consequently, even if the Apple companies have not produced in the proceedings the supply agreement of Qualcomm MDM6610 chips able to establish that these chips equip the iPhones 4S, they have sufficiently substantiated at the summary proceeding stage by all the evidence examined above, of which the declarations are not the only probative evidence, that the iPhones 4S put on sale to the public by the Apple companies in France are equipped with Qualcomm MDM6610 chips.

**<u>The agreement concluded between the Samsung companies and Qualcomm</u>:**

The Qualcomm agreement (in which Samsung is indicated at the "licensee") is composed of three main documents, i.e.:



a license dated August 31, 1993 entitled "Infrastructure and Subscriber Unique License and Technical Assistance Agreement",

an amendment dated March 30, 2004 (2004 Amendment), and

-   an amendment of January 1st, 2009 signed on November 4, 2009 and dated January 1, 2009 (2009 Amendment).

The parties each produce a legal opinion from a US lawyer and a professor having analyzed the agreements.

It is sufficient to say that the Qualcomm license is governed by the laws of the State of California, that it covers the whole world including France, that it concerns the components manufactured by Qualcomm as defined in Article 1 which includes the chips.

Article 5.1 of the 2004 Amendment stipulates that:

"LICENSEE [Samsung], on behalf of itself and its Affiliates, covenants not to Assert any of LICENSEE's Intellectual Property and/or its Affiliates' Intellectual Property (as such term would be defined if each such Affiliate was a Party) against (i) QUALCOMM or its Affiliates for making, having made, using, importing, leasing, selling, or otherwise disposing of Components (including but not limited to associated software) or (ii) QUALCOMM's and its Affiliates' suppliers for manufacturing Components for, or selling Components to, QUALCOMM or its Affiliates, provided that nothing herein shall prevent LICENSEE from asserting its intellectual property rights against QUALCOMM's and its Affiliates' suppliers for making Components for, or selling Components to, any third party other than QUALCOMM and/or its Affiliates. The term "Assert or Assertion" means to assert any claim for patent infringement or to commence or prosecute (or threaten to commence or prosecute) patent infringement litigation (or a similar proceeding, including any proceedings in the International Trade Commission). For the avoidance of doubt, LICENSEE's Intellectual Property and its Affiliates' Intellectual Property shall not include any intellectual property rights acquired or developed after December 31, 2000 by LICENSEE or its Affiliates. Without limiting the covenants granted above, nothing in this Section 5.1 shall be construed as granting a license to QUALCOMM, its Affiliates or their suppliers or any rights to any QUALCOMM Customer or its Affiliates."

Therefore, the 2004 Amendment contains stipulations concerning the intellectual property rights held by the Samsung companies prior to December 31, 2000 and notably patents EP 269 and EP 516 filed respectively on July 6, 2000 (claiming the priority of July 6, 1999) and May 19, 2000 (claiming the priority of May 19 and 21, 1999).

Consequently, the Qualcomm chips MDM6610 are indeed components referred to by the agreements.

Pursuant to this article, Samsung undertakes not to bring any infringement action against customers which have integrated components supplied by Qualcomm and which implement its intellectual property rights provided these customers do not bring any infringement action against it.

If the last line of the paragraph in the agreement specifies that it cannot constitute granting of a license, this paragraph should be construed by the judge on the merits in light of the entire agreement.

It seems that despite the terms of this last sentence, Samsung and Qualcomm intended to conclude a cross-license allowing Qualcomm to implement Samsung's patents including patents EP 269 and EP 516; Qualcomm which produces components which are necessarily integrated in more elaborate products needs to sell components free and clear of rights with respect to Samsung in order to be able to sell them to its customers as defined in the agreement. Finally and even if the agreement defines the law between the parties, it is impossible to insert a sentence excluding the fact that Samsung

Electronics Co. Ltd. does not intend to qualify its authorization to reproduce the licensed patents in the agreement to avoid this agreement receiving its necessary legal qualification.

Article 5.2 of the agreement for its part provides that:

"LICENSEE [Samsung], on behalf of itself and its Affiliates, covenants not to Assert any of LICENSEE's Limited Intellectual Property against (i) a QUALCOMM Customer or its Affiliates (as such term would be applied if such customer were a Party) for making, having made, using, importing, selling, leasing or otherwise disposing of Covenant Products where the alleged basis for infringement arises from the use or incorporation of such QUALCOMM Components (including but not limited to associated software) in such Covenant Products and/or (ii) any other third party against which LICENSEE would not have been able to Assert LICENSEE's Limited Intellectual Property had the licenses granted to QUALCOMM in Section 6.1.1 and 6.1.2 of the License Agreement with respect to Components remained in effect (the "Covered Third Parties") with respect to a QUALCOMM Customer's or its Affiliates' Covenant Products to the extent LICENSEE would not have been able to Assert LICENSEE's Limited Intellectual Property against such third party had the licenses granted to QUALCOMM in Sections 6.1.1 and 6.1.2 of the License Agreement with respect to Components remained in effect (the "Covenant Rights")."

The 2004 agreement defines a "Qualcomm Customer" as "(…) any entity that purchases Components from Qualcomm and/or its Affiliates and incorporates such Components into its Subscriber Units or Infrastructure Equipment (as such terms would be applied if such entity were a Party)."

As such, this Article 5.2 does indeed indicate that it is a license agreed between the parties.

The 2009 amendment did not have the effect of changing the definition of customers or third parties to the agreement as they were defined by the 2004 amendment.

Furthermore, it should be observed that this amendment was signed in April 2004, i.e. after Samsung declared the two patents EP 269 and EP 516 as essential patents to ETSI and that it cannot therefore revoke the license granted to Qualcomm with respect to the implementation of these two patents.

Samsung also could not limit the scope of the license granted to Qualcomm to exclude from it a customer such as Apple Inc as it did in its April 21, 2011 letter, in any event for the patents declared essential in specification TS 25.212 of the UMTS standard, the license granted to Qualcomm for these essential patents being irrevocable in accordance with the ETSI Rules.

It is of little consequence that Samsung does not receive any amount as a result of this implementation since because of the reciprocity of the agreements, it has benefited from Qualcomm's technology and therefore received revenues as a result thereof.

It is also just as irrelevant that the Apple companies assemble the iPhone 4S telephones themselves or through Foxconn since the exhaustion of Samsung's rights concern the chip supplied by Qualcomm to be integrated into an object in accordance with the provisions of Article 5.2 of the 2004 Amendment. It is not claimed that these chips were purchased illegally since Qualcomm acknowledged having supplied Apple Inc.

Consequently, the plausibility of the infringement alleged by the Samsung companies is not demonstrated since the Apple companies produce sufficiently serious contestations, with respect to the exhaustion of Samsung's rights in patents EP 269 and EP 516 declared essential, and because it is noted that the claimants had omitted the agreements concluded with Qualcomm in the writ of summons whereas they had taken the precaution of revoking them by a letter date April 21, 2011 notified to Apple, and because the reasons for this notice are the actions brought against the Samsung companies, which proves that these companies considered until that day that the Qualcomm MDM6610 chips fell within the scope of the Qualcomm license.

The Samsung companies cannot claim that the Apple companies were aware of the need to negotiate a FRAND royalty to implement the patents EP 269 and EP 516 integrated into specification TS 25.212 of the UMTS standard, since on the contrary, all the letters exchanged during the negotiations opened between the parties show that the Apple companies have always contested that Samsung's patents EP 269 and EP 516 gave it rights under this standard and made reservations in this respect.

It is even less up to the summary proceedings judge to rule whether the royalty rate proposed by the Samsung companies to the Apple companies is FRAND since it is a contestation which must be referred to the judges on the merits, particularly as the elements necessary to verify the FRAND nature of the proposed royalty rate are insufficient on the one hand because the number of patents constituting this standard is not given and that to determine a FRAND rate, it is necessary to know all the rates likely to be applied for a single product.

In view of what has been judged above, it is not necessary to rule on the contestation of the validity of patents EP 269 and EP 516 or on the abuse of a dominant position by Samsung as a result of the integration of these patents EP 269 and EP 516 in specification TS 25.212 of the UMTS standard.

Finally, the judge of this court finds that it is uncontested that the products in issue in the action on the merits, i.e. the iPhone 3, iPhone 3GS, iPhone 4 and, iPad 3G and iPad 2-3G, all implement the UMTS technology which supposedly reproduces the lessons of its patents EP 269 declared essential insofar as they integrate UMTS baseband chips in order to be compatible with the UMTS supplied to Apple by Qualcomm or Intel, whereas the first of these Apple products have been commercialized since 2007; the Samsung companies did not make any claims for an injunction before the case preparation judge in the case on the merits and have not initiated any judicial action against suppliers of chips integrating the UMTS-compatible technology such as Intel or Qualcomm.

In addition, it should be found that the disproportionate nature of the prohibition measure brought by the Samsung companies against the Apple companies is blatant.

Therefore, all claims presented by the Samsung companies will be dismissed.


**The Apple companies' counterclaims**:

The claims for damages for abuse of process presented by the Apple companies on the basis of Article 32-1 of the Civil Procedure Code are ill founded since this article allows courts to order a party to pay a civil fine payable to the Public Treasury and not in favor of one of the parties to the proceedings.

Furthermore on the basis of Article 1382 of the Civil Code, although the Samsung companies initiated their application for summary proceedings thoughtlessly by omitting to recall the relations which bind them to Qualcomm, the fact remains that the Apple companies do not demonstrate that they have suffered any prejudice other than that resulting from the expenses incurred for their defense compensated by an indemnity pursuant to Article 700 of the Civil Procedure Code.

The Apple companies' claim for damages on the ground of abuse of process will be dismissed.


**The other claims**:

The conditions are met to award to the Apple companies a global amount of EUR 100,000 pursuant to Article 700 of the Civil Procedure Code.

As representation is not mandatory before the summary proceedings judge, the claim for payment of the procedural fees to the Apple companies' counsel will be dismissed.

## ON THESE GROUNDS

Ruling in summary proceedings, by an order rendered after adversarial proceedings in first instance and made available at the Court Registry,

**ACKNOWLEDGE** the existence of a serious argument concerning the plausibility of the infringement alleged by Samsung Electronics Co. Ltd. and Samsung Electronics France;

**ACKNOWLEDGE** the disproportionate nature of the requested prohibition measure;

Consequently,

**DISMISS** all the requests for injunctions presented by Samsung Electronics Co. Ltd. and Samsung Electronics France against Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France;

**DISMISS** the claim for damages on the grounds of abuse of process presented by Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France;

**ORDER** Samsung Electronics Co. Ltd. and Samsung Electronics France to pay to Apple Inc., Apple Retail France EURL, Apple Sales International and Apple France a global amount of EUR 100,000 pursuant to Article 700 of the Civil Procedure Code;

**RECALL** that this order is immediately enforceable;

**DISMISS** the remainder of the parties' claims;

**ORDER** Samsung Electronics Co. Ltd. and Samsung Electronics France to pay the procedural costs.

Made in Paris on **December 8, 2011**

The Clerk                                    The Presiding Judge

Thomas Blondet                               Marie-Christine Courboulay



RG No. **11/58301**

**AUTHENTIC COPY** enforceable in the case:

Claimants: **Korean company SAMSUNG ELECTRONICS CO. LTD**

against

Defendants: **S.A.R.L. APPLE FRANCE**



    CONSEQUENTLY, THE FRENCH REPUBLIC summons and orders:

    All court marshals, when so requested, to enforce this judgment,

    The Directors of Public Prosecution and the State's Attorneys at Courts of General Jurisdiction to provide assistance,

    All Police Commanders and Officers to help carry it out whenever legally asked to do so.

    In witness whereof, this order was signed and delivery by us, the undersigned Chief Clerk, at the registry office of the Paris TGI.

        for/ THE CHIEF CLERK

*Certifié conforme à l'original en Français n° 39678 Visé par moi ne varietur LE : 16. 12. 2011*