Mueller Exhibit 52

# UNITED STATES
# INTERNATIONAL TRADE COMMISSION

In the Matter of:         )   Investigation No.

CERTAIN 3G WIDEBAND CODE )   337-TA-601

DIVISION MULTIPLE ACCESS )

WCDMA) MOBILE HANDSETS    )

AND COMPONENTS THEREOF    )

**OPEN SESSION**

Pages:    1459 through 1880 (with excerpts)

Place:    Washington, D.C.

Date:     July 11, 2008

## HERITAGE REPORTING CORPORATION
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C.  20005
(202) 628-4888

ORIGINAL

APLNDC-WH-A0000022865

1459

```
 1                      BEFORE THE

 2        UNITED STATES INTERNATIONAL TRADE COMMISSION

 3

 4        _____

 5    In the Matter of:        )   Investigation No.

 6    CERTAIN 3G WIDEBAND CODE  )   337-TA-601

 7    DIVISION MULTIPLE ACCESS  )

 8    (WCDMA) MOBILE HANDSETS   )

 9    AND COMPONENTS THEREOF    )

10        _____

11                    Hearing Room B

12

13                    United States

14            International Trade Commission

15              500 E Street, Southwest

16                 Washington, D.C.

17

18                Friday, July 11, 2008

19

20                    VOLUME IV

21

22        The parties met, pursuant to the notice of the

23    Judge, at 8:30 a.m.

24

25        BEFORE:   THE HONORABLE PAUL J. LUCKERN
```

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022866

1460

```
 1    APPEARANCES:

 2         For Complainant InterDigital:

 3              SMITH R. BRITTINGHAM, IV, ESQ.

 4              PATRICK J. COYNE, ESQ.

 5              JOHN D. CROCETTI, ESQ.

 6              STEVEN M. ANZALONE, ESQ.

 7              ELIZABETH A. NIEMEYER, ESQ.

 8              QINGYU YIN, ESQ.

 9              HOUTAN K. ESFAHANI, ESQ.

10              RAJEEV GUPTA, ESQ. Ph.D.

11              Finnegan Henderson Farabow

12                Garrett & Dunner LLP

13              901 New York Avenue, N.W.

14              Washington, D.C. 20001-4413

15

16              STEPHEN E. KABAKOFF, ESQ.

17              Finnegan Henderson Farabow

18                Garrett & Dunner LLP

19              3500 SunTrust Plaze

20              303 Peachtree Street, N.E.

21              Atlanta, GA 30308-3263

22

23

24

25
```

APLNDC-WH-A0000022867

1461

```
 1     APPEARANCES (Continued):
 2          For Complainant InterDigital:
 3                    CHRISTOPHER P. ISAAC, ESQ.
 4                    JUDY W. CHUNG, ESQ.
 5                    JOHN M. MULCAHY, ESQ.
 6                    Finnegan Henderson Farabow
 7                      Garrett & Dunner LLP
 8                    11855 Freedom Drive
 9                    Two Freedom Square
10                    Reston, VA 20190-5675
11
12          For Respondent Samsung:
13                    MATTHEW D. POWERS, ESQ.
14                    STEVEN S. CHERENSKY, ESQ.
15                    ANNE M. CAPPELLA, ESQ.
16                    SONAL N. MEHTA, ESQ.
17                    Weil, Gotshal & Manges LLP
18                    201 Redwood Shores Parkway
19                    Redwood Shores, CA 94065
20
21                    DAVID J. HEALEY, ESQ.
22                    GARLAND T. STEPHENS, ESQ.
23                    Weil, Gotshal & Manges LLP
24                    700 Louisiana Street, Suite 1600
25                    Houston, TX 77002
```

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022868

1    For Respondent Samsung:

2         DAVID A. HICKERSON, ESQ.

3         DAVID N. SOUTHARD, ESQ.

4         Weil, Gosthal & Manges LLP

5         1300 Eye Street, N.W,  Suite 900

6         Washington, D.C. 20005

7

8    For ITC Staff:

9         BENJAMIN LEVI, ESQ.

10        THOMAS FUSCO, ESQ.

11        MATTHEW COX, Summer Intern

12        U.S. International Trade Commission

13        500 E Street, S.W.

14        Washington, D.C. 20436

15   INTERPRETER:  Lily Olm

16

17   Attorney-Advisor:

18        ROBERT HALL, ESQ.

19        Attorney-Advisor

20        Office of Administrative Law Judges

21        U.S. International Trade Commission

22        500 E Street, S.W.

23        Washington, D.C. 20436

24

25        *** Index appears at end of transcript ***

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022869

1463

```
 1                P R O C E E D I N G S
 2                            (8:30 a.m.)
 3          JUDGE LUCKERN:  This is day four in
 4    the evidentiary hearing in the matter of
 5    Certain 3G Wideband Code Division Multiple
 6    Access (WCDMA) Mobile Handsets and Components
 7    Thereof, Investigation Number 337-TA-601.
 8          Before we start the cross-examination
 9    of Mr. Merritt, who wants to report on the
10    times for yesterday?
11          MR. POWERS:  I will, Your Honor.  The
12    agreed times are for Complainants, they have
13    consumed 14 hours and 49 minutes.  And
14    Respondents have consumed 11 hours and 41
15    minutes.
16          JUDGE LUCKERN:  And that's the total,
17    correct?
18          MR. POWERS:  That is cumulative.
19          JUDGE LUCKERN:  Obviously it is the
20    total.  It could not be anything but the total.
21    Okay.  All right.  Come on there, Mr. Powers.
22          MR. POWERS:  As long as yesterday felt
23    and was, it wasn't that long.
24          JUDGE LUCKERN:  Let's hope this is
25    going to be a short cross.  No.  You take all
```

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022870

1    JUDGE LUCKERN:  Well, so you are ready
2    to call the next witness?
3    MR. POWERS:  We are.
4    JUDGE LUCKERN:  Who is it going to be?
5    I have got your appendix 9 here to your
6    prehearing statement.  So what is going to --
7    MR. POWERS:  Mr. Kowalski.  Ms. Mehta
8    will conduct the examination.
9    JUDGE LUCKERN:  All right.  Mr. John
10   Kowalski.  He is the first.  Who is going to be
11   the second?  And with him, how much time do you
12   think you are going to be with him?  I guess it
13   must be someplace in your prehearing statement.
14   How much time do you think you are going to be
15   with him?
16   MR. POWERS:  It will be quite short,
17   about 15 minutes or less.
18   JUDGE LUCKERN:  Maybe we can get him
19   out.  Who is the next one?
20   MR. POWERS:  Who is the next one?
21   JUDGE LUCKERN:  You don't know?
22   MR. POWERS:  Mr. Boucobza.  He is the
23   French law expert who will be testifying with a
24   translator.
25   JUDGE LUCKERN:  This is

APLNDC-WH-A0000022871

```
1    B-o-l-o-u-r-c-h-i?

2              MR. POWERS:  It is B-o-u-c-o-b-z-a.

3              JUDGE LUCKERN:  I'm sorry.  I have the

4    wrong name here.  Where is he on appendix 9,

5    Mr. Powers or somebody on your team?

6              MR. POWERS:  I will find it.

7              JUDGE LUCKERN:  Can you tell me what

8    page it is?

9              MR. POWERS:  We don't have it here.

10             JUDGE LUCKERN:  I have it.  Professor

11   Xavier Boucobza.  And his area of expertise is

12   French law, on page 9.

13             MR. POWERS:  That's it, Your Honor.

14             JUDGE LUCKERN:  What do you estimate

15   for him, how long?

16             MR. POWERS:  Probably a half hour.

17             JUDGE LUCKERN:  We don't know about --

18   let's at least get rid of one of them if we can

19   before lunch.  So, all right, we're doing

20   great.  I compliment you people.

21             Respondents, who is going to do any

22   cross-examination of Mr. Kowalski?

23             MR. LAVENUE:  Lionel Lavenue, Your

24   Honor.

25             JUDGE LUCKERN:  All right.  Do
```

APLNDC-WH-A0000022872

1649

```
1                    AFTERNOON SESSION
2                         (12:53 p.m.)
3              JUDGE LUCKERN:  Mr. Powers, do you
4     want to call your next witness, please?
5              MR. POWERS:  Yes, Your Honor.
6              MR. HICKERSON:  David Hickerson from
7     Weil, Gotshal & Manges for the Samsung
8     Respondents.  We call Professor Xavier
9     Boucobza.
10             JUDGE LUCKERN:  Okay, Professor, do
11    you want to take the witness stand?  And we
12    have a translator and check translator?
13             MR. HICKERSON:  Your Honor, we have a
14    translator, Lily Olm.
15             JUDGE LUCKERN:  Do you have a card?
16    Could I have it, please?  Did I hear something
17    about a check translator?  Do we have one?  We
18    do not?
19             MS. NIEMEYER:  No.
20             JUDGE LUCKERN:  We're on the public
21    record.  What I usually do is put the witness
22    under oath and I don't put a translator under
23    oath, I just ask the translator if she will
24    make an accurate translation.  And I don't know
25    what Lily will say, but we will see.  That's
```

APLNDC-WH-A0000022873

1  all I do.  And it is on the record and we leave

2  it like that.

3           So who -- we have Ms. Niemeyer.  Okay.

4  So, Professor, do you want to raise your right

5  arm, please.

6  Whereupon--

7                    XAVIER BOUCOBZA,

8  having been first duly sworn, was examined and

9  testified through the interpreter as follows:

10           THE INTERPRETER:  Yes, I swear to God.

11           JUDGE LUCKERN:  We do have a

12  translator.  Her name is Lily Olm.  She is

13  consecutive/simultaneous interpretation,

14  French, German, Dutch.  She has a place at 7718

15  Lafayette Forest Drive, apartment 14 -- I hope

16  you don't mind me putting this in the record,

17  do you?  Lily?

18           THE INTERPRETER:  No problem.

19           JUDGE LUCKERN:  Annandale, Virginia,

20  22003.  And she has something about voice,

21  703-862-2456.  Lily, you will make an accurate

22  translation, won't you?

23           THE INTERPRETER:  I will do that.

24           JUDGE LUCKERN:  All right.  That's

25  wonderful.

APLNDC-WH-A0000022874

1     (Discussion off the record.)

2          JUDGE LUCKERN:  I believe I heard

3     Complainant's counsel say something.  What did

4     you say, Ms. Niemeyer?

5          MS. NIEMEYER:  I had just asked that

6     the interpreter speak into the microphone when

7     she does her translation.

8          JUDGE LUCKERN:  You understand that,

9     Lily, don't you?

10          THE INTERPRETER:  Yes, I do.

11          JUDGE LUCKERN:  And I have Lily's

12     card.  I read it into the record.  Off the

13     record.

14          (Discussion off the record.)

15          JUDGE LUCKERN:  Back on the public

16     record.  I have given the card to Karen.  She

17     may need it for the transcript, et cetera, et

18     cetera.  So that's where we stand.  All right.

19     Let's ask your first question, counselor.

20          MR. HICKERSON:  Thank you, Your Honor.

21                   DIRECT EXAMINATION

22     BY MR. HICKERSON:

23     Q.     Professor, could you state your full

24     name for the record, please.

25     A.     Yes.  My name is Xavier Boucobza.

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022875

1    Q.    And where are you currently employed?

2    A.    I work as a law professor at the

3    University, Paris, 11.

4    Q.    And how long have you been employed as

5    a professor of law?

6    A.    I am a law professor since 1997.

7    Q.    Could I ask you to look at

8    Exhibit RX-2791.

9    A.    Yes.

10   Q.    Do you recognize that document?

11   A.    Yes, absolutely.  That is my witness

12   statement.

13   Q.    And did you prepare this witness

14   statement?

15   A.    Yes, I prepared it myself.

16          MR. HICKERSON:  Your Honor, in order

17   to speed things up, I would propose that I ask

18   that the professor be qualified as an expert in

19   French law on the basis of his witness

20   statement and the contents thereof.  I could go

21   through all of his qualifications if you would

22   prefer.

23          JUDGE LUCKERN:  All right.  Let me --

24   first of all, let me just take a quick look at

25   the exhibit which you had identified as

APLNDC-WH-A0000022876

1  RX-2791.  Is it in this book?

2          MR. HICKERSON:  Yes, Your Honor, it is

3  in your binder.

4          JUDGE LUCKERN:  I have volume 1 of 1.

5  Is there another -- I should have how many

6  binders up here?

7          MR. HICKERSON:  One binder, Your

8  Honor.

9          JUDGE LUCKERN:  I have it here, all

10 right.  Yes.  I have before me the witness

11 statement of Professor Xavier Boucobza that

12 speaks for itself.  It indicates his high

13 school, Ph.D. in law, et cetera, et cetera.

14 And his professional positions, as I am looking

15 at question number 4, et cetera.

16          And Mr. Hickerson wants me to qualify

17 this witness as an expert in French law on the

18 basis of this exhibit, again, which is RX-2791.

19 What is the position of Complainant's counsel

20 on that proffer?

21          MS. NIEMEYER:  InterDigital does not

22 object, Your Honor.

23          JUDGE LUCKERN:  What about the staff?

24          MR. LEVI:  Staff has no objection,

25 Your Honor.

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022877

1        JUDGE LUCKERN:  All right.  Based on

2   my review of RX-2791, I don't have any problem

3   qualifying the good professor as an expert in

4   French law.  Go ahead, counselor.

5   BY MR. HICKERSON:

6       Q.    Professor, have you been asked to

7   render any expert opinions in this case?

8       A.    Yes, I was asked by Samsung to render

9   my expert opinion in this case.

10      Q.    Can you state what the questions that

11  you were asked to render opinions on were?

12      A.    Two questions were asked of me.  The

13  first one with regards to the legal nature of

14  the relation between the members of ETSI, and

15  the second one with regards to the legal extent

16  of article 6.1 of the ETSI rules.

17      Q.    Nate, could you just pull up RDX-21,

18  please.

19            And are these the two questions that

20  you addressed in your initial expert report?

21            MS. NIEMEYER:  Objection, Your Honor.

22            THE WITNESS:  Yes, absolutely.

23            JUDGE LUCKERN:  All right.  Go ahead,

24  Ms. Niemeyer.  What is the basis for your

25  objection?

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022878

1    MS. NIEMEYER:  We don't object to the

2    first sort of block that's up that identifies

3    the questions put to the expert that he just

4    testified as to, but the portion at page 5

5    which is basically an excerpt from his expert

6    report, which has not been admitted into

7    evidence, and this is a way to lead the expert

8    and get around that.

9    JUDGE LUCKERN:  Mr. Hickerson, how do

10   you want to respond?

11   MR. HICKERSON:  We're not seeking to

12   have his expert reports admitted into evidence.

13   We're simply, you know, putting as a

14   demonstrative exhibit for aiding the Court, you

15   know, the questions he was asked and the answer

16   that was given to one of the questions.

17   That is his opinion.  I can certainly

18   have him testify to it.

19   MS. NIEMEYER:  We don't object if that

20   second square on the RDX is redacted.

21   JUDGE LUCKERN:  Well, let me just read

22   the transcript, please.  This portion of page

23   5, that is page 5 of the RX-2791?  You said

24   page 5.

25   MS. NIEMEYER:  It is an excerpt from

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022879

1      his expert report.

2                JUDGE LUCKERN:  Oh, oh, all right.

3      Well, Mr. Hickerson, why don't you have him

4      testify to it, Mr. Hickerson.

5                MR. HICKERSON:  Very well, Your Honor.

6      BY MR. HICKERSON:

7        Q.    Professor, you referred to an entity

8      named ETSI.  Can you tell me what ETSI is?

9        A.    Yes.  ETSI is an association which is

10     governed by French law.  It has been created by

11     initiative of the European Union.  And it

12     regroups the operators that deal with

13     telecommunications.

14       Q.    Could you --

15                MS. NIEMEYER:  Objection, Your Honor,

16     move to strike as outside -- objection, Your

17     Honor, I move to strike that response as

18     outside the scope of his expert report.  He did

19     not provide that detail on what ETSI is in his

20     report.

21                JUDGE LUCKERN:  How do you want to

22     respond, Mr. Hickerson?

23                MR. HICKERSON:  Your Honor, I am

24     simply establishing the foundation for the

25     witness's testimony.  He certainly provided

APLNDC-WH-A0000022880

1    expert reports on the ETSI organization, the

2    documents governing the organization, the

3    obligations of the party to the organization

4    and I think it is certainly fair game to ask

5    the witness if he knows what the organization

6    is.

7            I do not think that every single word

8    that comes out of the witness's mouth here

9    today must be mimicked in an expert report that

10   I am not even allowed to put into evidence.

11           JUDGE LUCKERN:  Mr. Levi, what is your

12   position with respect to the motion to strike?

13           MR. LEVI:  Your Honor, the information

14   elicited by Mr. Hickerson -- I'm sorry, Your

15   Honor, my mic was off.

16           Your Honor, the information that

17   Mr. Hickerson elicited or sought to elicit by

18   his question would seem to be more factual in

19   nature as opposed to opinion testimony, so it

20   seems to be a fair question for Mr. Hickerson

21   to ask as background for this witness's

22   testimony.

23           JUDGE LUCKERN:  All right.  I am going

24   to deny the motion to strike.  And you

25   certainly, Ms. Niemeyer, have the opportunity

APLNDC-WH-A0000022881

1    to any cross to go into that matter, but the

2    motion to strike is denied.  Go ahead,

3    Mr. Hickerson.

4              MS. NIEMEYER:  Could we also have the

5    slide taken down, as long as page 5 is up

6    there?  It appears to be just leading the

7    expert.

8              JUDGE LUCKERN:  All right.  Could we

9    do that?

10             MR. HICKERSON:  Absolutely.  Please

11   take the slide down.

12             JUDGE LUCKERN:  All right.  Thank you.

13   It is taken down.  Go ahead, Mr. Hickerson.

14   BY MR. HICKERSON:

15        Q.    Professor, I would like you to look

16   at -- first, let me ask you, have you looked at

17   the documents that govern ETSI?

18        A.    Yes.  In order to prepare my report, I

19   had to look over the documents that govern

20   ETSI.

21        Q.    Could you take a look at

22   Exhibit RX-2083, please.

23        A.    Yes.

24        Q.    Can you tell me what that document is?

25        A.    Those are the ETSI rules.

APLNDC-WH-A0000022882

1    Q.    Okay.  And is this a document, the

2    ETSI IPR policy?

3    A.    Yes, that's correct.

4    Q.    And does the ETSI IPR policy say

5    anything about the obligations of ETSI members

6    who own IPR that is essential to the ETSI

7    standard?

8    A.    Yes.  The first one of the obligations

9    is the burden of the holder of one of the

10   essential patents, he needs to declare that

11   patent before ETSI, so that this would comport

12   with article 4.1.

13   Q.    Nate, could you pull up article 4.1

14   there, please.  And can you also pull up

15   article 6.1.

16         Professor, after making a disclosure

17   pursuant to article 4.1, does the ETSI IPR

18   policy oblige the declarant to do anything

19   else?

20   A.    According to article 6.1, the holder

21   of essential patent needs to grant licenses, is

22   obliged to grant licenses to the ETSI members

23   which request it.

24   Q.    And does article 6.1 say anything

25   about the terms of such licenses?

APLNDC-WH-A0000022883

1    A.    Yes, according to article 6.1, those

2    licenses should be granted fairly, reasonable,

3    and nondiscriminatory.

4    Q.    Now, earlier you said that one of the

5    questions you were asked to give an opinion on

6    was the nature of the relationship between the

7    ETSI members?

8    A.    That's correct.

9    Q.    And so under French law, can you tell

10   us what the nature of the relationship is

11   between ETSI members?

12   A.    Under French law, the relationship

13   which exists between the members of an

14   association is always of contractual nature.

15   Q.    And is there any particular type of

16   contract under French law that is applicable

17   here?

18   A.    Yes.  Here we have to do -- we are in

19   the context of what is called, under French

20   law, framework agreement.

21   Q.    And what is, under French law, a

22   framework agreement?

23   A.    A framework agreement is before

24   anything else a contract, a real contract.

25   That means that it has a binding force, which

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022884

```
 1       binds the parties.   Then it is a contract which
 2       frames the relationship between the parties.
 3              And in this context, it necessitates
 4       the existence of the creation of implementing
 5       contracts.
 6       Q.    What is an implementing contract?
 7       A.    An implementing contract is a contract
 8       which implements the framework agreement in
 9       order to accomplish the objective set forth in
10       the framework agreement.
11       Q.    And in the context of ETSI, what are
12       the implementing contracts?
13       A.    On the implementing contract are the
14       licenses which are granted the way it is
15       foreseen, set forth by article 6.1 of the ETSI
16       rules.
17       Q.    Now, under French law, does the
18       framework agreement have to set forth all of
19       the terms of the implementing contracts?
20       A.    No, not at all.   The framework
21       agreement only needs to foresee, set forth the
22       principle of the application -- the
23       implementing contract.
24       Q.    Well, what about the price term?   What
25       if the price term is missing, is there still a
```

APLNDC-WH-A0000022885

1    valid contract?

2      A.    Yes.   The framework agreement is still

3    valid and with regards to that point, French

4    case law pronounced itself very clearly.   Four

5    decisions were rendered by the Supreme Court in

6    its most Solinow formation.   This Supreme Court

7    on the 1st of December, '95 decided upon

8    validity of such a framework agreement.

9      Q.    Professor, could you turn to

10   Exhibit RX-508, please.

11          MR. HICKERSON:   Your Honor, this is a

12   case that's in French, we have attached a

13   certified translation in English as part of the

14   exhibit.   Nate, could you turn to page 4 of the

15   exhibit, please.

16          JUDGE LUCKERN:   You have it there,

17   don't you, Ms. Niemeyer?

18          MS. NIEMEYER:   Yes, Your Honor.

19          JUDGE LUCKERN:   And Mr. Levi, you have

20   it, don't you?

21          MR. LEVI:   Yes.

22          JUDGE LUCKERN:   He says yes.   Go

23   ahead, Mr. Hickerson.

24   BY MR. HICKERSON:

25     Q.    Professor, is this one of the Supreme

APLNDC-WH-A0000022886

1663

1    Court cases that you just mentioned?

2        A.    Yes, absolutely.  This is one of the

3    decisions I just mentioned.

4        Q.    And could you tell us what the holding

5    of this case is?

6        A.    Yes, in this case, there was a

7    framework agreement which necessitated

8    implementing contracts.  And the price for the

9    implementing contracts was not mentioned.  The

10   Supreme Court declared the framework agreement

11   to be valid.  And so for that reason, the

12   implementing contracts had to be executed.

13       Q.    Professor, are you aware that

14   InterDigital has made declarations pursuant to

15   section 4. -- sorry, section 6.1 with respect

16   to certain of its patents?

17       A.    Yes, absolutely.  Certain declarations

18   were given to me before I started authoring my

19   expert report.

20       Q.    Now, once InterDigital made these

21   declarations, was it obliged to offer a license

22   to ETSI members to the patents that it included

23   in its declaration?

24            MS. NIEMEYER:  Objection, Your Honor.

25   The professor did not opine on the specific

APLNDC-WH-A0000022887

1    obligations by InterDigital in his expert

2    report.

3              MR. HICKERSON:  Your Honor, the expert

4    report opined on the obligations of ETSI

5    members, including InterDigital and Samsung,

6    who are both ETSI members.

7              JUDGE LUCKERN:  Mr. Levi, what is your

8    position with respect to the objection to the

9    question?

10             MR. LEVI:  Your Honor, if

11   Mr. Hickerson is correct that the professor

12   opined on the obligations of ETSI members at

13   large, and if it is true that InterDigital is a

14   member of ETSI, then I think it logically

15   follows that the professor's opinion --

16   opinions would apply to InterDigital.  So the

17   staff opposes the objection.

18             JUDGE LUCKERN:  I am going to overrule

19   the objection.  You will have the opportunity,

20   if you want to, to get into it on cross,

21   Ms. Niemeyer.  Objection is overruled.  Go

22   ahead.

23             Sir, you may answer the question.  The

24   question -- off the record.

25             THE INTERPRETER:  I have it.

APLNDC-WH-A0000022888

1    JUDGE LUCKERN:  Go ahead.  Back on the

2    public record.  The translator has the

3    question.  Go ahead, please.

4    THE WITNESS:  Yes.  Every ETSI member

5    that makes a declaration that has to do with

6    the essential patent is bound because of the

7    binding force of the contract to grant licenses

8    to the other ETSI members that request such a

9    license.

10   BY MR. HICKERSON:

11   Q.    Now, assuming the parties don't agree

12   on the price for the license, under French law,

13   how is the price determined?

14   A.    The solution is clear with regards to

15   French law.  It is the patent holder who needs

16   to unilaterally determine the price.

17   Q.    Now, can the patent holder here,

18   InterDigital, set any price it wants?

19   A.    No.  They are restricted, there is a

20   twofold restriction.  First, they are

21   restricted by the contract itself, the terms of

22   the contract.  And then, second, they are

23   restricted by the rules of French law.

24   BY MR. HICKERSON:

25   Q.    Nate, can you pull up RDX-19.

APLNDC-WH-A0000022889

1    Professor, you said there was limitations

2    imposed by the contract.  Can you tell us what

3    limitations those are?

4              MS. NIEMEYER:  Objection.

5              JUDGE LUCKERN:  Go ahead, the basis

6    for your objection, Ms. Niemeyer?

7              MS. NIEMEYER:  Objection, there is no

8    foundation for this exhibit, and it appears to

9    be just leading the witness.

10             MR. HICKERSON:  Your Honor, it is a

11   demonstrative exhibit.  It is supported by the

12   testimony he just gave and the testimony he

13   will give.  And it is, I think, completely in

14   line with the ground rules in this case

15   concerning proper demonstrative exhibits.

16             MS. NIEMEYER:  It does not follow the

17   testimony he has already given.  It appears to

18   lead him to the question that Mr. Hickerson

19   wants him to give.

20             MR. HICKERSON:  He testified that

21   there were limitations under the contract and

22   under French law.  The exhibit goes precisely

23   to those two points.

24             JUDGE LUCKERN:  Mr. Levi, what is your

25   position with respect to the objection?

APLNDC-WH-A0000022890

1           MR. LEVI:  Well, Your Honor, the

2    way -- I think the way we have been proceeding

3    this week, in numerous instances that I can

4    recall the examining attorney has put up slides

5    in advance of the witness's testimony.  I don't

6    particularly see the problem, unless the

7    objection is foundation, in which case I think

8    Mr. Hickerson could ask the witness if he is

9    familiar with the slide.  But as the objection

10   currently stands, I am not inclined to support

11   it, Your Honor.

12          JUDGE LUCKERN:  You said you are not

13   inclined to what?

14          MR. LEVI:  I am not supporting the

15   objection, Your Honor.

16          JUDGE LUCKERN:  All right.

17   Ms. Niemeyer, do you want to say anything

18   further?

19          MS. NIEMEYER:  If Mr. Hickerson would

20   like to lay some foundation for the exhibit, I

21   might withdraw my objection.

22          JUDGE LUCKERN:  How do you want to

23   proceed, Mr. Hickerson?

24          MR. HICKERSON:  Your Honor, I have

25   already asked him about limitations.  He has

APLNDC-WH-A0000022891

1    given answers about contract and French law.  I

2    am going to follow up and ask him now specifics

3    about those contract and French law

4    limitations, which are on the slide.

5         At this point, I am merely using a

6    demonstrative.  I believe that's exactly what

7    the ground rules provide that a demonstrative

8    needs to do, either it is in the record or it

9    is going to be followed up and put in the

10   record.  And this is what this is.  So I would

11   ask the Court to overrule the objection.

12        JUDGE LUCKERN:  First of all, I don't

13   make a big distinction between demonstratives

14   and documentary.  Demonstratives are not in

15   yet.  In any event, no, I am going to overrule

16   the objection.  And you will have the

17   opportunity for cross, Ms. Niemeyer.  I am

18   overruling the objection.  He can answer the

19   question.

20        Maybe in the long run, maybe the

21   demonstrative will never get in.  Usually if

22   there is testimony about some portion of it, it

23   will get in, maybe a portion of the

24   demonstrative.  In any event, it is overruled.

25   Can you find that question?  Do you want me to

APLNDC-WH-A0000022892

1    read it?

2            MR. HICKERSON:  Your Honor, I would

3    restate the question at this point.  I am not

4    sure there was a question pending.

5            JUDGE LUCKERN:  Don't put another

6    little phrase in it or something.  That's the

7    only reason many times I want to read it

8    because I find attorneys, not purposely -- but

9    go ahead.

10   BY MR. HICKERSON:

11       Q.    Professor, you said that there were

12   limitations on setting the price imposed by

13   contract.  Can you tell me what in this case

14   those limitations are?

15       A.    The limitations are a direct result

16   from article 6.1.  Because of what is said in

17   this article, the price needs to be fair,

18   reasonable and nondiscriminatory.

19       Q.    And does the licensor, that would here

20   be InterDigital, have to take into account the

21   purposes and policies of ETSI in setting the

22   price?

23       A.    Absolutely.  This is a contractual

24   obligation that links the ETSI members.  It is

25   a firm obligation.

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022893

1   Q.   And you also said there were
2   limitations under French law that applied here.
3   Can you tell us what those are?
4   A.   Yes.  There are two restrictions.
5   First of all, the holder of an essential patent
6   needs to fix this price in good faith.  The
7   notion of good faith results directly from the
8   code, from the civil code.
9        And then the price which is determined
10  cannot be an abusive price.  And the
11  jurisdictions will surveil and eventually
12  sanction an abusive price.
13  Q.   Now, can you turn to Exhibit RX-545,
14  please.
15  A.   Yes.
16       MR. HICKERSON:  Again, Your Honor,
17  this is a document in French.  It does have
18  attached to it a certified English translation.
19  BY MR. HICKERSON:
20  Q.   Professor, do you recognize this
21  document?  Can you tell us what it is?
22  A.   Yes, of course.  This is a comment
23  given by a professor, it has a very
24  long-standing reputation in France.  It is
25  Professor Jacques Gestau, and he gave a comment

1    here with regards to the four decisions which

2    were pronounced by the Supreme Court.

3         Q.    And is this a source that you have

4    cited in your expert opinions and relied on in

5    forming your opinions?

6         A.    Yes.  This is, indeed, a comment which

7    is cited several times in my expert opinions.

8         Q.    Professor, under French law, if the

9    licensee disagrees with the price set by the

10   licensor, what happens?

11        A.    The licensee may then go against that

12   price, dispute that price.  So the licensee may

13   sue before the jurisdictions in order to either

14   request a lower price or in order to be paid

15   damages.

16        Q.    Okay.  I would like you to turn,

17   again, to Exhibit RX-2083, please.  That's the

18   ETSI IPR policy.  Can you just pull that up,

19   please.

20            And if you could just focus on article

21   6.1.  In particular, the last sentence of

22   section 6.1.  And I will just read it into the

23   record.  It says, "The above undertaking may be

24   made subject to the condition that those who

25   seek licenses agree to reciprocate."


Heritage Reporting Corporation
(202) 628-4888

1672

1    Have you looked at that section of

2    6.1?

3    A.    Yes, absolutely.  I even established

4    an additional report with regards to that

5    point.

6    Q.    And what is your understanding of that

7    sentence of section 6.1?

8    A.    This is a reciprocity clause.  It

9    means that every licensee who is the holder of

10   an essential patent which falls within the

11   realm, the domain, the operation of ETSI, has

12   the obligation to give out licenses, to grant

13   licenses with regards to this essential patent.

14   Q.    Now, would tying an offer to license

15   its essential patents with other business

16   proposals that have nothing to do with either

17   party's essential IPR comport with ETSI

18   obligations?

19        MS. NIEMEYER:  Objection, leading.

20        JUDGE LUCKERN:  Sustained.

21   BY MR. HICKERSON:

22   Q.    Professor, what is your opinion with

23   respect to an offer to license essential IPR

24   with requirements that are not connected with

25   either party's essential IPR?

APLNDC-WH-A0000022896

1     A.    That would be a violation of article

2    6.1.  It said that only essential patents are

3    subject of that article and the obligation to

4    grant licenses has only to do with the

5    essential patents.

6    Q.    Nate, could you pull up RDX-20,

7    please.  So, Professor, if InterDigital's

8    offers to license its essential patents is

9    conditioned on a requirement that Samsung also

10    take a license to InterDigital's nonessential

11    patents, would that comport with InterDigital's

12    ETSI obligations?

13    MS. NIEMEYER:  Objection, lack of

14    foundation, leading by this demonstrative.

15    JUDGE LUCKERN:  Do you want a ruling?

16    Do you want to lay some foundation?  Do you

17    want to rephrase or do you want to argue?

18    MR. HICKERSON:  Your Honor, he has

19    just testified and he has given an expert

20    opinion in this case.

21    JUDGE LUCKERN:  So you want -- go

22    ahead.  Finish arguing.  That's it, huh?

23    MR. HICKERSON:  He has given an expert

24    opinion on this case that tying an offer for

25    essential patents with other business proposals

APLNDC-WH-A0000022897

1674

1    does not comport with ETSI obligations.  I am

2    simply asking him with respect to an offer from

3    InterDigital, the condition, a license to its

4    essential patents with a requirement that a

5    license to nonessential IPR also be taken,

6    would that comport with section 6.1?

7              He has issued extensive reports in

8    this case about the obligations of the parties

9    under section 6.1.  He has issued an opinion in

10   this case with respect to tying offers for

11   licenses to essential IPR with other business

12   proposals and other requirements that don't

13   have anything to do with the parties' essential

14   IPR.  I can't see what possible objection there

15   is to the question that I have asked.  So I

16   would like a ruling, yes.

17             JUDGE LUCKERN:  All right.

18   Ms. Niemeyer, do you have anything new you want

19   to say before I hear the position of Mr. Levi?

20             MS. NIEMEYER:  Yes.  There is no

21   foundation that Professor Boucobza has any idea

22   what InterDigital has or has not done.  And

23   this slide seems to suggest that either he did

24   or it leads him to draw conclusions about

25   offers that have or have not been made.

APLNDC-WH-A0000022898

1    JUDGE LUCKERN:  All right.  Mr. Levi,

2    what is your position with respect to the

3    objection?

4    MS. NIEMEYER:  One other thing, Your

5    Honor.

6    JUDGE LUCKERN:  Go ahead.

7    MS. NIEMEYER:  Also in his report, he

8    gave no conclusion on the ultimate issue of

9    whether or not particular acts by InterDigital

10   comported, since he had no knowledge of those.

11   That's all.

12   JUDGE LUCKERN:  All right.  Mr. Levi,

13   what is your position with respect to the

14   objection?

15   MR. LEVI:  Well, Your Honor, I would

16   like to make two points.  First, as I noted a

17   few moments ago, the way we have been

18   proceeding this week, the examining attorney

19   has on several instances placed demonstrative

20   exhibits on the screen prior to questioning the

21   witness regarding subject matter of that

22   demonstrative.

23   So the staff would have no objection

24   to the witness's responding to Mr. Hickerson's

25   question.  With regard to the demonstrative

APLNDC-WH-A0000022899

1    exhibit itself, Mr. Hickerson has yet to move

2    that exhibit, this exhibit into evidence.  So I

3    think any objection Ms. Niemeyer has to this

4    particular exhibit is premature.

5              JUDGE LUCKERN:  Fine.  Let me just

6    make one comment.  Over the years, I try not to

7    do it, but I take each situation that comes up

8    by itself.  And the fact that there is

9    similarity with what I have done earlier

10   doesn't mean that I have to do the same thing

11   here because there may be a little bit of

12   difference here.

13             So whatever is done earlier, unless a

14   party wants to point out on such and such a

15   date, you did this and this and this and this,

16   exactly the same, I usually don't give any --

17   much weight to prior rulings.  That doesn't

18   mean I don't stand by my prior rulings, but

19   there are various facets that come in here.

20             And the demonstrative is not in yet.

21   And he has been qualified as an expert and,

22   Ms. Niemeyer certainly would have the

23   opportunity to cross-examine him.  So I am

24   going to overrule the objection on this

25   particular question, you will have an answer

APLNDC-WH-A0000022900

1677

1    and we will see where we are going to go.   Only

2    on this.   Keep up the work, Ms. Niemeyer.   You

3    are protecting your client's interests.   If you

4    don't want to do it, fine with me.

5         Go ahead.   You may answer that

6    question.

7         MR. HICKERSON:   Shall I restate the

8    question, Your Honor?

9         JUDGE LUCKERN:   Well, so long as you

10   don't put in a little nuance on there which is

11   different and I am going to hear from

12   Ms. Niemeyer again.   Do you understand?

13        MR. HICKERSON:   I will do my best to

14   repeat it exactly.

15        JUDGE LUCKERN:   That's why I do it

16   most of the time because I have found in the

17   past, lawyers will throw in another little

18   thing here.   Go ahead.

19   BY MR. HICKERSON:

20        Q.   Professor, if InterDigital's offer to

21   license its essential patent is conditioned on

22   a requirement that Samsung also take a license

23   to InterDigital's nonessential patents, would

24   that comport with InterDigital's ETSI

25   obligations?

APLNDC-WH-A0000022901

1   A.    No.   According to article 6.1, the

2   price needs to be fixed for the license of

3   essential patent and only of an essential

4   patent.

5   Q.    Well, what if InterDigital's offers

6   require Samsung to cross-license Samsung's

7   nonessential IPR to InterDigital in order to

8   obtain the license on the essential IPR, would

9   that comport with InterDigital's ETSI

10  obligations?

11  A.    That, again, would be a violation of

12  article 6.1.  It would also be a bad

13  interpretation of the reciprocity clause.  Only

14  the essential patents are the ones that fall in

15  the context of article 6.1.

16        We also have to mention that there is

17  no obligation whatsoever to grant licenses to

18  nonessential IPRs.

19  Q.    Professor, what if InterDigital's

20  offers required Samsung to enter into a joint

21  venture or other business arrangement with

22  InterDigital that was unrelated to

23  InterDigital's essential patents, would that

24  comport with InterDigital's ETSI obligations?

25  A.    For the same reasons, this would be a

APLNDC-WH-A0000022902

1    violation of article 6.1 of the ETSI rules.

2              MR. HICKERSON:  I have no further

3    questions on direct, Your Honor.

4              JUDGE LUCKERN:  All right.  Who goes

5    next?  Ms. Niemeyer, you are going next?

6              MS. NIEMEYER:  Yes, please, Your

7    Honor.

8              JUDGE LUCKERN:  Are you ready to

9    proceed with your cross-examination?

10   How is the professor doing?

11             THE WITNESS:  Everything is fine.

12             JUDGE LUCKERN:  Is this his first time

13   testifying in court?

14             THE WITNESS:  I was the witness before

15   a court in Great Britain in the past.

16             JUDGE LUCKERN:  But this is the first

17   in the United States?

18             THE WITNESS:  Yes.

19             JUDGE LUCKERN:  This is not a District

20   Court.  This is an administrative proceeding

21   here.  It is a little different than in the

22   District Courts, Professor.  You have a lovely

23   city.  You live in Paris?  Beautiful city.

24   Beautiful city.

25             (Discussion off the record.)

APLNDC-WH-A0000022903

1680

```
1              JUDGE LUCKERN:  Ms. Niemeyer, are you
2      ready?
3              MS. NIEMEYER:  Yes, Your Honor.
4              JUDGE LUCKERN:  Back on the public
5      record.
6                      CROSS-EXAMINATION
7      BY MS. NIEMEYER:
8         Q.   Good morning, or good afternoon,
9      Professor Boucobza.
10        A.   Good afternoon.
11        Q.   Could you please turn to
12     Exhibit RX-2083, which is the ETSI rules and
13     procedures, please.
14        A.   Yes, okay.
15        Q.   You testified that 6.1 requires that a
16     party is -- or a member is obliged to grant to
17     ETSI licenses, correct?  And the only
18     particular phrase I am referring to is the
19     quote, obliged to grant.
20        A.   Yes, that's correct.  He has a
21     contractual obligation to grant licenses for
22     the essential patents.
23        Q.   Okay.  And what 6.1 actually says is
24     the entity is prepared to grant irrevocable
25     licenses on fair, reasonable and
```

APLNDC-WH-A0000022904

1    nondiscriminatory terms, correct, the actual

2    language in the rule is prepared to grant,

3    correct?

4         A.    Yes.   That is correct.   And the

5    wording here means that every ETSI member who

6    wishes to obtain a license can have it.

7         Q.    Okay.

8         A.    And that is why it is said that the

9    holder of the patent is prepared, he is ready

10   to grant the licenses.

11        Q.    There isn't anywhere in 6.1 that says

12   is prepared to grant licenses to ETSI members,

13   there is no limitation, including that it is

14   only to ETSI members, correct?

15        A.    The limitation speaks for itself, if I

16   can say.   Because the article is in a contract

17   which binds only ETSI members.

18        Q.    Okay, under your theory, except there

19   is nothing in 6.1 that says it is only

20   applicable to ETSI members, correct?

21        A.    In every contract, when there are --

22   when there are dispositions, when there are

23   terms set, they are not repeated.   It is not

24   repeated that these are only for the advantage

25   of the members of the -- I mean, of the parties

APLNDC-WH-A0000022905

1682

1    concerned.

2        Q.    So you agree that it is not in 6.1?

3             MR. HICKERSON:  Your Honor, before the

4    answer, I would object that that

5    mischaracterizes his testimony.  She has asked

6    this question several times now, he has given

7    the answer.

8             JUDGE LUCKERN:  How do you respond?

9             MS. NIEMEYER:  That's fine.  I think

10   the language speaks for itself.  I will

11   withdraw the question.

12            JUDGE LUCKERN:  Thank you.  Move on.

13   BY MS. NIEMEYER:

14       Q.    Earlier you testified in response to

15   Mr. Hickerson's questions regarding what

16   happens if the parties don't agree on the

17   price.

18       A.    Yes, that's correct.

19       Q.    And what happens is the patentee

20   unilaterally sets a price, correct?

21       A.    That's correct.

22       Q.    There are no negotiations between the

23   parties, correct?

24       A.    Well, practically speaking, there may,

25   of course, be negotiations which take place if

APLNDC-WH-A0000022906

1    the parties wish to do that.  But if the

2    parties do not agree, it is upon the shoulders

3    of the holder of the patent to unilaterally

4    determine the price.

5        Q.    Could you please turn to, in your

6    witness binder, the yellow cover, under the

7    first tab that says deposition, Min-U-Script,

8    on page 63 of your deposition testimony, then I

9    will read from line 4 to page 66, line 1.

10            "Question:  Okay --"

11            JUDGE LUCKERN:  Mr. Hickerson, you

12    have it there?

13            MR. HICKERSON:  I do have it, Your

14    Honor.

15            JUDGE LUCKERN:  And the witness has it

16    there?  Make sure the witness has it in front

17    of him and he can follow it.  If he wants to

18    read it ahead of time, he can read it, et

19    cetera.  Lily, you make sure the witness --

20            MR. HICKERSON:  Your Honor, he does

21    have it in front of him but, of course, it is

22    going to have to be translated, so I guess I

23    would ask Ms. Niemeyer which portion of this

24    she plans to read and what the purpose is.

25            If she is reading it for impeachment,

Heritage Reporting Corporation
(202) 628-4888

1    I don't see how this relates to the answer he

2    just gave.

3         JUDGE LUCKERN:  All right.  I

4    understand that.  But we have had this argument

5    many times and you know my position on that.  I

6    do want the English in the record, so somebody,

7    Ms. Niemeyer, read it in and then have it

8    translated and then ask your question.

9    BY MS. NIEMEYER:

10       Q.    So at page 63, line 4 to 22.

11            "Question:  Okay.  Going back to if an

12   offer is made, and it is rejected because the

13   parties don't agree that the terms meet the

14   contractual obligations, and they can't agree

15   by discussing the issue, is the only opinion

16   then litigation?"

17            Mr. Healey objected to the form of the

18   question, vague and ambiguous.

19            "The Witness:  Can you repeat the

20   question, please?  Just you -- translation.

21            "Answer:  Several remarks regarding

22   your question.  First, that the determination

23   of a price is not an offer, it's an obligation,

24   which is incumbent upon the patent owner, who

25   fixes the price or determines the price,

APLNDC-WH-A0000022908

1    unilaterally in that regard or in that -- in

2    that regard, it is not, strictly speaking, an

3    offer."

4              Then the purpose which does impeach

5    his testimony.

6              "A second point as was stated earlier,

7    the parties can always discuss in reality --"

8              JUDGE LUCKERN:  A little slower.  Go

9    ahead.

10             MS. NIEMEYER:  "Answer:  Or have

11   discussions in reality, but the price cannot

12   result from these discussions."

13             JUDGE LUCKERN:  Have you finished?

14             MS. NIEMEYER:  Yes.

15             JUDGE LUCKERN:  Can you translate

16   that?  That's what Ms. Niemeyer said he

17   testified to in the deposition.  Can you

18   transit first, and then we will have the

19   question.

20             THE WITNESS:  I don't need a

21   translation.  I know it.

22   BY MS. NIEMEYER:

23       Q.   So every time --

24             JUDGE LUCKERN:  Wait a minute.  Is

25   this the witness?

Heritage Reporting Corporation
(202) 628-4888

1686

1    THE INTERPRETER:  The witness
2  speaking.
3    JUDGE LUCKERN:  You understand the
4  question?
5    THE WITNESS:  (In English)  Yes, I
6  understand it.  Thank you.
7    JUDGE LUCKERN:  So now ask your
8  question.  I don't think there is a question,
9  Ms. Niemeyer.
10    MS. NIEMEYER:  There is not.
11    JUDGE LUCKERN:  Please proceed.
12  BY MS. NIEMEYER:
13    Q.    So every time there is a dispute
14  between the parties to -- regarding the price,
15  what they have to do to find out what the right
16  price is, they have to go to court, correct?
17    A.    More exactly, it is upon the licensee
18  to dispute the price before the owner of the
19  patent and this before the court.
20    Q.    Okay.  And it is true in your view
21  that the declaration submitted to ETSI, there
22  must be one for each patent, correct?
23    A.    That's correct, article 6.1 applies to
24  every essential patent.
25    Q.    And a party would have to license on a

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022910

1    per patent basis, correct?

2         A.    Yes.   In order to be -- to comport

3    with article 6.1, it definitely needs to

4    license patent by patent on a per patent basis.

5         Q.    So if an entity wanted to license five

6    patents, it would have to get five licenses and

7    a different rate or whatever the appropriate

8    rate is for each patent, correct?

9         A.    Yes, with regards to article 6.1,

10   that's correct.  Of course, it may be the case

11   that the parties agree among themselves to take

12   then that price for several licenses.

13        Q.    Okay.  You aren't actually personally

14   familiar with how -- what ETSI members do to

15   reach their licenses, are you?

16        A.    May you specify that question?

17        Q.    You haven't personally studied the

18   license agreements made by ETSI members

19   pursuant to their membership, correct?

20        A.    Well, my expert report does not deal

21   at all with licenses which were granted, but

22   with the legal extent of article 6.1.

23        Q.    And could you please turn to CX-816,

24   which is in your binder with the yellow cover

25   on it.  And they are organized numerically.

APLNDC-WH-A0000022911

1    JUDGE LUCKERN:  Let me know, sir, when

2    you get it.  It is towards the end.  I have it

3    here in front of me.  Do you have it there?

4    THE WITNESS:  I do have the page.

5    JUDGE LUCKERN:  Go ahead,

6    Ms. Niemeyer.

7    BY MS. NIEMEYER:

8    Q.    If you look at question 7 and its

9    answer, if you turn to the third page, I

10   basically have just taken the exhibit and just

11   made it larger so that it can be read by

12   someone without a microscope.

13         Just for the record, this is a

14   printout from the ETSI web site and ETSI's IPR

15   policy FAQs.  The question, question 7 reads,

16   "does the firm concerned have to pay some

17   consideration to ETSI for utilizing the said

18   patents or while buying the technology from

19   another company?"

20         Answer, in the second paragraph,

21   indicates "to this end, the concerned firm has

22   to enter into negotiations with the companies

23   holding patents in order to obtain licenses for

24   the use of the patented technology included in,

25   and essential for the implementation of an ETSI

APLNDC-WH-A0000022912

1      standard."

2            THE INTERPRETER:  I am going to

3      translate that.

4            Just one second.  I am referring to

5      this because I think of something.

6            MR. HICKERSON:  Your Honor.

7            JUDGE LUCKERN:  Mr. Hickerson?

8            MR. HICKERSON:  Your Honor, I object

9      to this.  Ms. Niemeyer has taken a document

10     that is in English with no translation for the

11     witness, called out a small portion of that

12     document.  The witness doesn't know what the

13     document is, what the context is, what the rest

14     of the document is.  He has no way to know, per

15     the rule of completeness, the full context of

16     the document, and I object to this question.

17           JUDGE LUCKERN:  Ms. Niemeyer, how do

18     you respond?  Do you want a ruling?  Do you

19     want to rephrase?  Do you want to argue the

20     objection?

21           MS. NIEMEYER:  Well, I will respond.

22           JUDGE LUCKERN:  Go ahead.

23           MS. NIEMEYER:  There is no requirement

24     that parties submit documents in a foreign

25     language.  My object is not to confuse or

APLNDC-WH-A0000022913

```
1    mislead the witness.  And I haven't even asked
2    a question yet.
3              JUDGE LUCKERN:  That's what I was
4    trying to find out, what was at issue.  And
5    that's why I was looking at the realtime.  Let
6    me just read the realtime.  We don't have a
7    question yet.
8              THE INTERPRETER:  May I translate the
9    question again for him?
10             JUDGE LUCKERN:  Is there a question,
11   Mr. Hickerson?
12             MS. NIEMEYER:  I don't think there is
13   a question pending.
14             JUDGE LUCKERN:  I am looking at the
15   realtime, Mr. Hickerson.  I don't see a
16   question.  She has read something from this
17   document, but I don't know where the question
18   is.  So can we at least hear the question?
19             MR. HICKERSON:  We can.  But I also
20   object to the use of the document in this
21   fashion.
22             JUDGE LUCKERN:  Well, let's get a
23   question so I know what I can do right now.  So
24   get your question up and then, Mr. Hickerson,
25   you can say I rely on what I just said and
```

APLNDC-WH-A0000022914

1    anything else.  Do you understand what I am

2    saying, Ms. Niemeyer?

3              MS. NIEMEYER:  Yes.

4              JUDGE LUCKERN:  Go ahead.  Right now,

5    actually, there doesn't have to be a

6    translation.  Why don't you finish your

7    question.  Then we will see what Mr. Hickerson

8    said, without translating it.  Because if I

9    sustain the objection, we can move on.  So go

10   ahead with whatever your question is going to

11   be.

12   BY MS. NIEMEYER:

13     Q.    Do you agree, then, that according to

14   ETSI publicly available information, they

15   direct parties to negotiate to determine to

16   reach a license agreement?

17             JUDGE LUCKERN:  Did you finish your

18   question?

19             MS. NIEMEYER:  Yes.

20             JUDGE LUCKERN:  Mr. Hickerson, do you

21   stand by what you said?

22             MR. HICKERSON:  I do, Your Honor.  And

23   I just want to point out, you know, why my

24   objection should be sustained here.  This

25   document is talking about that the members

APLNDC-WH-A0000022915

1    don't pay money to ETSI for the licenses, that

2    they pay money to the license owner.  And the

3    witness has no way of knowing what this

4    document is to know the context of what I know,

5    because I can read it in English.

6           If she is going to ask this question,

7    the witness needs to have the entire document

8    translated so that he understands what this

9    document says.

10    MS. NIEMEYER:  Your Honor, during

11    Professor Boucobza's deposition, he was asked

12    do you speak English?

13           "Answer:  I have a very average level

14    of English."  I don't know that he needs to

15    have the whole document translated -- why he

16    would need to have the whole document

17    translated.  I am asking a very simple question

18    about one portion of a document that's on a

19    publicly available web site of ETSI.

20    JUDGE LUCKERN:  Does he have available

21    the whole document in English?

22    MS. NIEMEYER:  He has the whole

23    document available in front of him.  If he

24    wants to review it to answer the question

25    asked, he is welcome to do so.  I think it

APLNDC-WH-A0000022916

1   would be a waste of the Court's time because it

2   doesn't bear on the specific question asked.

3            JUDGE LUCKERN:  Mr. Hickerson, I don't

4   have any problem, I can ask the witness, you

5   know, whether he, by himself, looking at the

6   document, reading it and then do it.  I don't

7   know how much English he knows or not,

8   Mr. Hickerson.

9            Do you have any comment you want to

10  make on what I am saying from the bench?

11           MR. HICKERSON:  I have nothing further

12  to add to my objection, Your Honor.

13           JUDGE LUCKERN:  All right.  Well, let

14  me ask the witness.  I don't know how much

15  English, and I want this witness comfortable.

16  And is the witness able to read this document

17  to himself and understand it?  It is all in

18  English.  It is not translated.

19           And I just don't know.

20           THE WITNESS:  (In English) I think

21  that I understand the question.

22           MR. HICKERSON:  Could I at least ask

23  and make sure that the question at the top is

24  read and translated to the professor?  I

25  couldn't even see it on the exhibit to begin

APLNDC-WH-A0000022917

1    with.

2                    JUDGE LUCKERN:  You mean question 7

3    you want read?

4                    MR. HICKERSON:  Yes.

5                    JUDGE LUCKERN:  So you want him to

6    understand the question?  And you have no

7    problem answering it?  That's what the witness

8    says, Mr. Hickerson.  And I will be glad to --

9    does he know what this question 7 itself says?

10   It is sort of gray here.  It is a little hard

11   for me to read.

12                    THE WITNESS:  Yes, I have it here on

13   my document and I can read it.

14                    JUDGE LUCKERN:  All right.  Then I am

15   going to overrule the objection.  Go ahead and

16   answer any way you want to.  Go ahead.

17                    THE WITNESS:  Well, as far as I

18   understand it, this question 7 has nothing to

19   do with granting of the licenses.  It has to do

20   with who is the entity to which I have to pay

21   the royalties.  Moreover, with regards to the

22   statement which is highlighted, they don't tell

23   us here whether they are talking about ETSI

24   members or third parties.

25                    If it has to do with third parties,

APLNDC-WH-A0000022918

1    meaning any company, of course they have to

2    negotiate with the patent holder because there

3    is no contract which binds it to the patent

4    holder.

5              The existence of the obligation to

6    grant a license is only valid for the ETSI

7    members, which has nothing to do with this

8    question.

9              THE INTERPRETER:  Question on the

10   screen, he meant.

11   BY MS. NIEMEYER:

12      Q.    Okay.  Do you see anything in question

13   7 or in this document that says it is limited

14   to, that the question and answer is limited to

15   non-ETSI members?

16             MR. HICKERSON:  Before you answer, I

17   have an objection.

18             JUDGE LUCKERN:  I'm sorry.

19             MR. HICKERSON:  I object to the

20   question as asked.  Ms. Niemeyer is now asking

21   whether there is anything in this document --

22             JUDGE LUCKERN:  It is a double

23   question.  It is a compound question in a way.

24             MR. HICKERSON:  Yes.  So I object to

25   extent that the question goes beyond this

APLNDC-WH-A0000022919

1    question 7, which she has focused the witness

2    on.  If she does want the witness to read the

3    entire document before answering it, I would

4    ask that the witness be allowed to do that and

5    that the time be charged to InterDigital.

6        JUDGE LUCKERN:  I certainly don't have

7    a problem with this witness reading the whole

8    document if he wants this question the way it

9    is.

10        MS. NIEMEYER:  I will withdraw the

11   question, Your Honor.  The document speaks for

12   itself.

13        JUDGE LUCKERN:  Move on.

14   BY MS. NIEMEYER:

15   Q.    Could you also take a look at question

16   6, which is immediately above it, which is,

17   "does one have to take permission from ETSI for

18   using the patents as listed by ETSI in the

19   standard?

20        "Answer:  It is necessary to obtain

21   permission to use patents declared as essential

22   to ETSI standards.  To this end, each standard

23   user should seek directly a license from a

24   patent holder.  In order to obtain the contact

25   details of a patent holder, please make your

APLNDC-WH-A0000022920

1       request to the ETSI legal service."

2               Do you see that?

3       A.      Yes.

4       Q.      So according to that question and

5       answer, this ETSI FAQ, frequently asked

6       question, is directing anyone who uses a

7       standard to contact the patent holder who has

8       declared it as essential to ETSI, correct?

9               JUDGE LUCKERN:  I am not sure,

10      Mr. Hickerson, whether you have an objection or

11      what.

12              MR. HICKERSON:  I thought we would

13      have the translation, and then I would state my

14      objection.

15              JUDGE LUCKERN:  All right.  Okay.

16      Translate it and then I don't want to hear from

17      the witness, we will hear what the lawyer has

18      to say.  Go ahead, translate it.

19              Mr. Hickerson.

20              MR. HICKERSON:  Yes, Your Honor.  My

21      objection is that Ms. Niemeyer has now put the

22      text of this document on the screen, she has

23      read it to the witness and she has

24      recharacterized in her own words what the

25      document says.  And then asked the witness

APLNDC-WH-A0000022921

1    whether he agrees with it.

2              I think that's improper.  I think that

3    if she wants to ask the witness what his

4    understanding of the text of this document is,

5    that's one thing, but I do not think that it is

6    proper for her to be asking, putting the words

7    into this witness's mouth, through a

8    translator, and asking him whether or not he

9    agrees with her tortured interpretation of the

10   document.

11             JUDGE LUCKERN:  How do you respond?

12             MS. NIEMEYER:  I am cross-examining

13   the witness, Your Honor.  He is free to agree

14   or not agree with my question.  He is an expert

15   and I think he can answer the question.

16             JUDGE LUCKERN:  I am going to overrule

17   the objection.  He has been qualified as an

18   expert.  It has been translated into French.

19             So let's hear what he has to say.  You

20   will have your opportunity for redirect.  So do

21   we have to translate it again or does he

22   remember what the question is?

23             THE WITNESS:  I remember the question.

24             JUDGE LUCKERN:  Thank you very much.

25   Go ahead.

APLNDC-WH-A0000022922

```
 1              THE WITNESS:  Well, first, this
 2      question and this answer, they are not ETSI
 3      rules.  And they do not have a binding force.
 4      My second comment, the general nature of this
 5      question, and this also was with -- regarding
 6      to the preceding question, the general nature
 7      of these questions, makes us think that we have
 8      to do with questions that concern third parties
 9      to ETSI.
10              And then the answer, which is given
11      here, which simply states that you have to have
12      the permission of the patent holder, that is
13      totally acceptable.  In fact, if you make a
14      declaration to ETSI of your essential patent, I
15      mean, the patent holder of the essential patent
16      accepts that the other ETSI members might
17      benefit from a license.  So it is with his
18      agreement that the license was granted.
19      BY MS. NIEMEYER:
20         Q.   I just have a couple more questions on
21      the Samsung confidential record.
22              JUDGE LUCKERN:  All right.  We're on
23      the confidential record.  Whose information is
24      it?
25              MS. NIEMEYER:  Samsung's.
```

APLNDC-WH-A0000022923

1700

1        JUDGE LUCKERN:  Okay.  Anybody not

2   associated with Samsung, not subscribed to the

3   protective order has to leave the hearing room.

4        (Whereupon, the trial proceeded in

5   confidential session.)

6

7

8

9

10

11

12

13

14

15

16

17

18                                    ·

19

20

21

22

23

24

25

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022924

```
 1                O P E N   S E S S I O N

 2    BY MS. NIEMEYER:

 3         Q.    Professor Boucobza, you have never

 4    seen any of InterDigital's offers to Samsung to

 5    license, have you?

 6         A.    No, never.

 7         Q.    And you have never seen any of

 8    Samsung's offers to InterDigital to license,

 9    correct?

10         A.    No, no, that wasn't necessary for me

11    to establish my report.

12              MS. NIEMEYER:  I have no more

13    questions, Your Honor.  Thank you, Professor

14    Boucobza.

15              JUDGE LUCKERN:  Mr. Levi, do you have

16    anything?

17              MR. LEVI:  I do, Your Honor, very

18    briefly.

19              JUDGE LUCKERN:  Fine, fine, no

20    problem.

21                EXAMINATION BY COUNSEL FOR ITC STAFF

22    BY MR. LEVI:

23         Q.    Good afternoon, Professor.

24         A.    Good afternoon.

25         Q.    I would like to return to
```

APLNDC-WH-A0000022925

1706

1    Ms. Niemeyer's questioning of you and, in

2    particular, I would like to return to her -- do

3    you recall when she showed you a portion of

4    your deposition transcript?

5        A.    Yes.

6        Q.    And then do you recall when she asked

7    you a question about going to court?  Do you

8    recall generally that question?

9        A.    Yes.

10       Q.    And your response to Ms. Niemeyer's

11   question was it was up to the party seeking a

12   license to dispute the price before the owner

13   of the patent, and to do this before going to

14   court.  Do you recall giving that response?

15       A.    It is, indeed, the burden of the

16   licensee to dispute the price that is fixed by

17   the patent holder, and he has to bring this

18   dispute before the Court, if there was no

19   agreement between the parties.

20       Q.    And the "he" you referred to in your

21   response, under ETSI rules, does the "he" refer

22   to the patentee or the party seeking the

23   license?

24       A.    I'm going to clarify.  It is the one

25   seeking the license.  The license is concluded

APLNDC-WH-A0000022926

1    before there has been an agreement on the

2    price.  If there is no agreement with regards

3    to the price, the price is then unilaterally

4    defined by the patent holder.

5         And this price fixing is done while

6    the license is executed.  It is the contract --

7    the license which is the contract to execute.

8    And so the licensee, the beneficiary of the

9    license, if the beneficiary of the license does

10   not accept the price, which is fixed, has the

11   burden to show in court that this price is

12   abusive.

13        Q.    Okay.  I appreciate that -- that

14   response, Professor.

15        And I think you did -- you did state,

16   at least I understood you to state that the

17   burden to go to court lies on the party seeking

18   the license as opposed to the patentee.  Is

19   that correct?

20        A.    That's correct.

21        Q.    Thank you.  Now --

22        A.    And under French law, this is looked

23   upon as an advantage to the patent holder.

24        Q.    Okay.  Now, when the -- assuming the

25   situation where the party who is seeking a

APLNDC-WH-A0000022927

1    license goes to court, what question would that

2    party ask the court to answer?

3         A.    This party would have to prove that

4    the price is abusive.  Meaning that the price

5    is too high.  And case law shows with certain

6    examples of cases how one can judge if a price

7    is abusive.

8         Q.    Do ETSI rules contemplate that in

9    place of the party seeking the license going to

10   court to seek an answer to the question you

11   just described, do ETSI rules contemplate an

12   action by the patentee in court asserting

13   infringement of their patent?

14             MS. NIEMEYER:  Objection, Your Honor,

15   this is outside the scope of Professor

16   Boucobza's expert report.

17             JUDGE LUCKERN:  Mr. Levi, how do you

18   want to respond?

19             MR. LEVI:  It is certainly within the

20   scope of Ms. Niemeyer's cross-examination.

21             MS. NIEMEYER:  I disagree.

22             JUDGE LUCKERN:  Did I hear you say

23   something?

24             MS. NIEMEYER:  I disagree.

25             MR. LEVI:  I think it is squarely

APLNDC-WH-A0000022928

1   within the scope, Your Honor.

2           JUDGE LUCKERN:  Mr. Hickerson, what is

3   your position on the objection?

4           MR. HICKERSON:  We do not support the

5   objection, Your Honor.

6           MS. NIEMEYER:  It is also leading,

7   Your Honor.

8           JUDGE LUCKERN:  Where do we stand on

9   the leading with respect to Mr. Levi and this

10  witness.  Is he a hostile witness to you and

11  Mr. Levi?  I would have to go back to your

12  prehearing statement and see.

13          MR. LEVI:  Your Honor, if the rule

14  we're following is on an issue by issue basis,

15  then I believe I'm aligned with Samsung on the

16  issue related to this particular witness's

17  testimony.

18          JUDGE LUCKERN:  It would be rule by

19  rule, I mean, issue by issue, yes.  Let me just

20  -- you indicated, Mr. Levi, that it is

21  certainly within the scope -- well, wait a

22  minute.

23          I am going to then sustain the

24  objection on the leading nature of it.  Go

25  ahead.

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022929

```
1              MR. LEVI:  I will be happy to
2    rephrase, Your Honor.
3    BY MR. LEVI:
4       Q.    Do ETSI rules -- strike that.
5              Professor, you described an action
6    that a potential licensee can bring under ETSI
7    rules.  My question is, do ETSI rules
8    contemplate a patentee bringing an action for
9    patent infringement?
10             MS. NIEMEYER:  Objection, Your Honor,
11   that's the same question.
12             MR. LEVI:  I don't believe that
13   question is leading.  So if it is the same
14   question, then I don't think the first question
15   was leading.
16             JUDGE LUCKERN:  And the basis for your
17   objection?
18             MS. NIEMEYER:  I think -- still think
19   it is leading, and I also dispute that it is
20   within the scope of Professor Boucobza's expert
21   report or cross-examination.
22             MR. LEVI:  I am asking him if ETSI
23   rules provide for a certain scenario.  It is
24   either yes or no.  They do or they don't.
25             JUDGE LUCKERN:  Okay.  Let me just go
```

APLNDC-WH-A0000022930

1    to the other area that Ms. Niemeyer raised.

2              MR. LEVI:  It was the same basis that

3    Your Honor did not find merit to, within the

4    scope.

5              JUDGE LUCKERN:  I am going to overrule

6    the objection.  You can answer that.

7              THE WITNESS:  The answer is no.  There

8    is no objection for infringement of the

9    license.  But the response, according to French

10   law, is, in reality, quite simple.

11             When there was a contract between

12   parties, then you are immediately not in the

13   framework, in the context anymore of

14   infringement.  Then you are in a context of a

15   case which can result by contract.  For

16   example, it can result in a lawsuit with

17   regards to the price.

18             And then measures are taken, are

19   executed in order to obtain -- to change that

20   price.  But this has only to do with contract

21   law, the domain of contract law.  This has

22   nothing to do with infringement.

23             MR. LEVI:  Thank you, Professor.

24   Nothing further.

25             JUDGE LUCKERN:  You are finished?

APLNDC-WH-A0000022931

1712

1    Redirect, Mr. Hickerson?

2              MR. HICKERSON:  Yes, Your Honor.

3                    REDIRECT EXAMINATION

4    BY MR. HICKERSON:

5        Q.    Professor, with respect to the last

6    answer you just gave, when the interpreter

7    interpreted, she said infringement of the

8    license.  I think you said infringement of the

9    patent, didn't you?

10       A.    (In English) Of the patent.

11       Q.    Okay, thank you.

12             Professor, Ms. Niemeyer asked you some

13   questions about an ETSI frequently asked

14   questions document.  It was CX-816.  Do you

15   remember those questions?  Question 6 and

16   question 7.

17             Now --

18             MR. HICKERSON:  Please interpret.

19             THE WITNESS:  Yes, absolutely.

20   BY MR. HICKERSON:

21       Q.    Okay.  Now, to the extent that there

22   is anything inconsistent with those frequently

23   asked questions with the ETSI IPR policy, which

24   would control?

25       A.    There is no possible dispute.  Those

APLNDC-WH-A0000022932

1       questions and answers have absolutely no legal

2       value.  So only the ETSI IPR policy is valid

3       and would control any question.

4          Q.    Okay.  And one last area I want to

5       talk to you about is Ms. Niemeyer asked you

6       whether the licenses under section 6.1 had to

7       be done on a patent by patent basis.  Do you

8       remember those questions?

9          A.    Yes, absolutely.

10         Q.    Now, if an ETSI member made a

11      declaration of essential patents under section

12      4.1 that included more than one patent, a

13      number of patents, that would be okay, wouldn't

14      it?

15             MS. NIEMEYER:  Objection, leading,

16      Your Honor.

17      BY MR. HICKERSON:

18         Q.    Would that be okay?

19             JUDGE LUCKERN:  Wait a minute now.

20             MR. HICKERSON:  I am just trying to

21      hurry things along, Your Honor.  I am trying to

22      focus the question on Ms. Niemeyer's questions.

23             MS. NIEMEYER:  I have no objection to

24      hurrying things along in accordance with --

25             JUDGE LUCKERN:  Right now we had a

APLNDC-WH-A0000022933

1   question and you said objection, leading.  And

2   then the question was, would that be okay?  And

3   I am just not sure.

4           MR. HICKERSON:  I was making the

5   question open-ended, Your Honor, with that

6   phrase.

7           JUDGE LUCKERN:  Why can't you rephrase

8   it in some way?

9   BY MR. HICKERSON:

10      Q.    Would it be okay, Professor -- I will

11   rephrase.  Would it be okay, Professor, if a

12   party that held multiple patents that it

13   thought were essential, to make a declaration

14   under section 4.1 that included all of those

15   patents in a single declaration?

16          MS. NIEMEYER:  Objection, leading.

17          JUDGE LUCKERN:  I am not sure that

18   suggests an answer.  I am going to overrule the

19   objection.  You can answer that.  We have an

20   expert here.

21          THE WITNESS:  Well, on section 4.1 of

22   the rules is pointing towards one essential

23   patent and not a whole regrouping of patents.

24          MR. HICKERSON:  Thank you.

25          JUDGE LUCKERN:  You are finished,

APLNDC-WH-A0000022934

1    Mr. Hickerson?

2              MR. HICKERSON:  Yes, I am.

3              JUDGE LUCKERN:  What about exhibits?

4    Everybody happy or should we go off the record?

5    I don't want to have argument going back and

6    forth.

7              MS. NIEMEYER:  May I briefly respond

8    to Mr. Levi's examination?

9              JUDGE LUCKERN:  Yes, you may.  But you

10   mean with further questions of this witness,

11   Ms. Niemeyer?  Is that what you want to do?

12             MS. NIEMEYER:  I want to, I guess,

13   either redirect or cross in response to Mr.

14   Levi.

15             JUDGE LUCKERN:  You want to ask this

16   witness more questions?

17             MS. NIEMEYER:  Yes, in response to Mr.

18   Levi's questions.

19             JUDGE LUCKERN:  We will go around

20   again then.  You are not going to have the last

21   say, that's for sure.  But then we will have

22   the staff and Mr. Hickerson.  Mr. Hickerson is

23   going to end up.  So I will let you do it.

24   Mr. Hickerson, you have another crack, based on

25   what you hear now.

APLNDC-WH-A0000022935

1716

1          MR. HICKERSON:  Thank you, Your Honor.

2                   RECROSS-EXAMINATION

3     BY MS. NIEMEYER:

4          Q.    Professor Boucobza, in response to Mr.

5     Levi's question, you indicated that the license

6     is concluded before the price is agreed upon.

7     Do you recall that?

8          A.    Yes, absolutely.

9          Q.    I just want to refer you to your

10    deposition transcript, page 40, line 17,

11    through 41, line 5 which reads:

12              "Question:  So basically until the

13    implementing contract is signed, or the

14    license, an ETSI member does not have a license

15    to practice patents that have been declared to

16    ETSI; is that correct?

17              "Answer:  Yes, that is correct, that

18    means that it does not have a license in order

19    to be able to use the patent.  On the other

20    hand, as of the moment the declaration exists,

21    there is an obligation for the patent owner or

22    holder to grant a license under contract --

23    under the contractual conditions."

24              JUDGE LUCKERN:  Are you finished?

25              MS. NIEMEYER:  With that question,

APLNDC-WH-A0000022936

```
1    yes.
2              JUDGE LUCKERN:  Do you want to
3    translate that, Lily?  The witness understands
4    it?
5              THE INTERPRETER:  No, I am going to
6    translate it.  I'm sorry, I am going to
7    translate it.  He needs the translation.  It
8    started at line 17, Ms. Niemeyer?
9              MS. NIEMEYER:  Yes.
10             JUDGE LUCKERN:  So it is translated.
11   What is your question?
12             MS. NIEMEYER:  I don't have a
13   question.  Basically, he just gave
14   contradictory testimony in his deposition from
15   today.
16             MR. HICKERSON:  Your Honor --
17             JUDGE LUCKERN:  Wait a minute.  We
18   read it in and I don't have a question -- well
19   --
20             MS. NIEMEYER:  He had stated -- sorry.
21             JUDGE LUCKERN:  You say it is
22   contradictory.  But let's have a question.  Do
23   you agree with this today or something?
24   BY MS. NIEMEYER:
25        Q.   So you stated to Mr. Levi that you can
```

APLNDC-WH-A0000022937

1     conclude the license before the price is agreed

2     upon, whereas in your deposition, you must have

3     a price to have a license?

4         A.    No, as you can see from the response I

5     gave to your question, I never said that the

6     price was necessary to conclude the license.  I

7     only state that there needs to be a license

8     contract.  And on this point, case law is very

9     clear.

10             The license contract -- I mean, the

11    contract is concluded independently of the

12    fixing of the price.  And this, according to

13    the decisions of the Supreme Court of the 1st

14    of December, 1995, which were earlier

15    mentioned.

16             In other words, the price is not a

17    necessity in order to conclude a valid contract

18    license.  The license already exists, was

19    concluded before the price is determined.  I do

20    not believe having said anything else.

21        Q.    But that is your -- the testimony that

22    I just read was the testimony you gave at your

23    deposition, correct?

24        A.    Yes, that's correct, and, again, I

25    approve completely with what I said in my

Heritage Reporting Corporation
(202) 628-4888

APLNDC-WH-A0000022938

1719

1    answer.

2         Q.   Okay.  And you also indicated in

3    response to Mr. Levi's question that a patentee

4    may not sue for patent infringement on a patent

5    that's been declared essential to ETSI.  Do you

6    recall that?

7         A.   Yes, that's correct, but with regards

8    to ETSI members, not with regards to third

9    parties.

10        Q.   Okay.  So, for example, if Samsung

11   sued Ericsson for infringement of patents that

12   it had declared essential to Sony or to ETSI,

13   that would be a violation of French law,

14   correct?

15             JUDGE LUCKERN:  Mr. Hickerson?

16             MR. HICKERSON:  I object, Your Honor.

17   This is an incomplete hypothetical.  There

18   could be, you know, many other factors involved

19   and I don't think that the question is

20   appropriate.

21             JUDGE LUCKERN:  Ms. Niemeyer, how do

22   you respond?

23             MS. NIEMEYER:  I think he is an expert

24   and he testified what an ETSI member can do,

25   having declared its patents essential to ETSI.

APLNDC-WH-A0000022939

1    It is just changing the names of the parties.

2            JUDGE LUCKERN:  I am going to overrule

3    the objection.  He has been qualified as an

4    expert.  He seems to be doing a great job, as

5    all witnesses do.  You may answer that.  Do you

6    want to translate it again?

7            THE WITNESS:  (In English)  No.  (In

8    French)  The question is very vague.

9            JUDGE LUCKERN:  Well, wait a minute.

10   The question is very vague.  Well, if you don't

11   understand it or it is ambiguous or something,

12   sir, you can just tell me that.  And I will --

13   however you want to do it.  But if you feel you

14   can answer it, but you want to qualify it in

15   some way, you can do that.  You have been

16   qualified as an expert.  However you want to --

17   you are the king right there in that box.  What

18   do you want to do?

19           THE WITNESS:  I am going to specify

20   the hypothesis.

21           JUDGE LUCKERN:  All right, fine.

22           MS. NIEMEYER:  I don't know what he is

23   going to say.

24           JUDGE LUCKERN:  Wait a minute now.

25   Well, I know you don't know what to say.  I'm

APLNDC-WH-A0000022940

1    sure he didn't go up to you and tell you what

2    he is going to say.  I am going to let the

3    witness -- go ahead.  Ms. Niemeyer opened it,

4    you go ahead and say whatever you want to and

5    we will see what Ms. Niemeyer does.  Go ahead.

6           THE WITNESS:  If the patent is used so

7    that Samsung or Ericsson, I don't remember the

8    name of the party in your hypothesis, expressed

9    a will to exploit the license, then according

10   to the application of 6.1, article 6.1, there

11   it is not possible that there is infringement.

12          On the other hand, if the patent is

13   used without having requested the benefit of a

14   license, then the situation is totally

15   different because the one who exploits then the

16   license is not in the place of the licensee.

17   And then you could talk about infringement.

18   But only in that context, in that situation.

19          MS. NIEMEYER:  Okay, thank you.

20          JUDGE LUCKERN:  Are you finished?

21          MS. NIEMEYER:  Yes, thank you, Your

22   Honor.

23          JUDGE LUCKERN:  Mr. Levi, do you have

24   anything you want to do?

25          MR. LEVI:  Thank you, Your Honor,

APLNDC-WH-A0000022941

1722

1   nothing further.

2           JUDGE LUCKERN:  Mr. Hickerson?  You

3   have the last say.

4           MR. HICKERSON:  Nothing further, Your

5   Honor.

6           JUDGE LUCKERN:  All right.  I am going

7   to release this witness.  If nobody has any

8   problems with that?  If you do or not, I am

9   going to.  Thank you very much.

10          THE WITNESS:  Thank you, Your Honor.

11          JUDGE LUCKERN:  Have a pleasant trip

12  back to Paris.  I wish I could go with you, not

13  just leave, go to Paris.  That would be

14  fantastic.  Where do we go?  Stay here if you

15  want to.

16          MS. NIEMEYER:  Your Honor --

17          JUDGE LUCKERN:  Wait a minute.  We

18  have exhibits.  You better wait a bit.  Sorry,

19  sorry.  Why don't you -- is there agreement on

20  these exhibits or what?

21          MR. HICKERSON:  We're about to find

22  out, Your Honor.

23          JUDGE LUCKERN:  Off the record.

24          (Discussion off the record.)

25          JUDGE LUCKERN:  Back on the public

APLNDC-WH-A0000022942