1
2
3
4
5
6
7
8
9
10
11
12

**United States District Court**
For the Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., ) | Case No.: C 11-1846 LHK (PSG) |
| ) | |
| Plaintiff, ) | **ORDER RE DISCOVERY MOTIONS** |
| v. ) | |
| ) | **(Re: Docket Nos. 598, 599, 600, 611, 603,** |
| SAMSUNG ELECTRONICS CO., LTD, a ) | **604, 604, 606, 607, 613)** |
| Korean corporation; SAMSUNG ) | |
| ELECTRONICS AMERICA, INC., a New York ) | |
| corporation; and SAMSUNG ) | |
| TELECOMMUNICATIONS AMERICA, LLC, ) | |
| a Delaware limited liability company, ) | |
| ) | |
| Defendants. ) | |

In this patent infringement action, Plaintiff Apple Inc. ("Apple") and Defendants and counter-claimants Samsung Electronics Co., LTD., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") bring to the court nine additional discovery motions on shortened time. Several of these motions seek enforcement or clarification of earlier court orders. Two motions present opposing sides of a dispute relating to the appropriate form of protective order after a break-down in the parties' negotiation for a stipulated solution. The remaining motions address new topics that have arisen in the past month of active

discovery efforts on both sides. On January 19, 2012, the parties appeared for over six hours of oral argument.

In light of the substantial volume of material presented and the accelerated schedule in this case, the court – for the most part – will resist the temptation to offer a lengthy account of its reasons and analysis, and simply rules as follows. All production subject to this order must be completed on a rolling basis and no later than February 3, 2012, with priority placed on completing relevant production no later than three-days prior to any deposition.

**A.     Competing Motions for Entry of Protective Order (Docket Nos. 599 and 607)**

Each party moves for entry of its version of the stipulated protective order ("PO") that has been under negotiation for several months. Apple contends that the parties effectively had agreed to submit its proposed PO when Samsung reneged and proposed an alternate confidentiality structure in an attempt to get around the court's December 22, 2011 order concerning the dissemination of confidential material to an expert witness. Samsung responds that its position is necessitated not by the treatment of any single expert, but by the adverse effect on all experts and non-testifying experts and consultants caused by the inflexible structure of Apple's proposed PO.

The main difference between the parties' proposals lies with the confidentiality designation(s), for which Apple proposes a single-tier ("Highly Confidential-Attorneys' Eyes Only ("AEO")") and Samsung proposes two tiers ("Confidential" and "Highly Confidential-AEO"). Apple's single-tier would allow disclosure of marked material to expert witnesses, including non-testifying experts and consultants, only after the party seeking to disclose has provided notice and an opportunity to the other side to object and intercede. Apple argues that its PO is consistent with the parties' practice thus far in this litigation and in concurrent litigation before the International Trade Commission ("ITC"), and thus averts the risk of increased motion practice based on shifting to a two-tier structure. Samsung argues that rather than simply maintaining the status quo, the final PO should balance the protections sought by both parties with the well-established practice of retaining undisclosed, non-testifying experts and consultants, as well as being able to seek re-designation of materials that have been improperly over-designated.

2

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

The purpose behind two confidentiality tiers in litigation between commercial competitors is well-understood and reflects the form used in both the relevant Northern District of California model and interim protective orders.[1] In general, parties should be able to share documents with their experts that, while confidential, do not qualify for "highly confidential" designation. In a two-tier system, this may be done without a party having to disclose the non-testifying expert or consultant, secure the other side's approval, and run the risk of facing and litigating objections.

The court finds that Samsung's proposal best addresses each side's legitimate concerns regarding confidentiality and respects the role of non-testifying experts and consultants. Accordingly, the court grants Samsung's motion for protective order and denies Apple's motion for protective order regarding disclosure and use of discovery materials. So long as the material disclosed is merely "confidential" and the non-testifying consultant agrees to be bound by the provisions of the PO, the role of non-testifying experts and consultants may remain unfettered by a requirement to seek permission for every confidentiality disclosure. The court will separately enter the PO as proposed by Samsung.[2]

**B.    Apple's Motion for Protective Order re Samsung's Rule 30(b)(6) Deposition Notice (Docket No. 598)**

Apple seeks relief from any obligation to comply with Samsung's first 30(b)(6) deposition notice, which it argues is so egregiously overbroad as to be harassing and oppressive. Apple received the notice, which spans 46 single-spaced pages and sets forth 229 topics for examination, on December 14, 2011. Apple contends that the breadth of subjects identified and number of topic subparts – over 600 – defy any attempt by Apple to identify and meaningfully prepare witnesses for deposition. Samsung argues that the expansive notice is consistent with the breadth of Apple's

---

[1] *See* Patent L.R. 2-2 Interim Model Protective Order; Model Stipulated Protective Order for Litigation Involving Patents, Highly Confidential Information and/or Trade Secrets, *available at* http://www.cand.uscourts.gov/stipprotectorder.

[2] The court does not view the entry of a two-tiered confidentiality structure to require wholesale review of designations already made in the course of the litigation. Rather, the party wishing to disclose the material to an expert or consultant must initiate a request for de-designation or to lower the designation. The burden of establishing the propriety of any confidentiality designation remains, however, with the party making the designation.

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

suit, and that the number of topics is not determinative.[3] Samsung also argues that any deficiencies with the notice or with particular topics or groups of topics do not justify a blanket refusal to produce any witness at all.

The court finds that under the circumstances, Samsung's 229-topic notice is facially excessive. There is no question that the nature of this litigation is expansive. Yet the purpose served by Fed. R. Civ. P. 30(b)(6) – to require an organization to identify and designate a witness who is knowledgeable on the noticed topic, particularly where the noticing party is unable to itself identify an appropriate witness because that knowledge lies within the organization[4] – does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation. This would render unworkable the obligation of the responding party to "'make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter,"[5] as that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand. To require Apple to respond to this notice would be to ignore the directive of Fed. R. Civ. P. 26(b)(2)(C)(iii) to limit the extent of otherwise relevant

---

[3] Samsung notes that it could reduce the number of topics by grouping related subtopics into broader topics – but these would be likely to trigger an objection for failure to identify the information sought with reasonable particularity, and ultimately would be unhelpful to Apple.

[4] *See, e.g.,* Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases before Judge William Alsup ¶ 23 (July 6, 2011); *Great Am. Ins. Co. of New York v. Vegas Constr. Co., Inc.,* 251 F.R.D. 534, 538 (D. Nev. 2008) (explaining the responsibility of the party responding to a 30(b)(6) deposition notice to produce one or more witnesses knowledgeable about the subject matter and provide binding answers on behalf of the corporation) (citations omitted). *See also Arkema Inc. v. Asarco, Inc.,* No. C05-5087 RBL, 2007 WL 641847, at *2 (W.D. Wash., Feb. 23, 2007) ("The purpose of a 30(b)(6) deposition is to gather information from a knowledgeable spokesperson of the defendant whose answers bind the corporation.") (citing *Reilly v. Natwest Mkts. Group Inc.,*181 F.3d 253, 268 (2d Cir. 1999)).

[5] *See Great Am. Ins. Co. of New York,* 251 F.R.D. at 539 (quoting *Starlight Int'l, Inc. v. Herlihy,* 186 F.R.D. 626, 639 (D. Kan. 1999); *Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D. Neb. 1995)). *See also Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 197 (5th Cir. 1993) (noting Rule 30(b)(6) obliges the corporation to designate an agent through which the corporation vicariously appears, such that "[i]f the agent is not knowledgeable about relevant facts, and the principal has failed to designate [a] knowledgeable … witness, then the appearance is, for all practical purposes, no appearance at all").

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

discovery[6] where the benefit to and need of the propounding party is outdone by the burden, expense, and in this case – impracticable demand imposed on the other side.[7]

Although the court agrees that Apple could and perhaps should have offered one or more witnesses on a selection of the more discrete topics noticed, in light of the parties' inability to negotiate such a reasonable starting point and the limited time remaining for fact discovery, the court grants Apple's motion for protective order as to this 30(b)(6) notice. This ruling is without

---

[6] The court does not disagree with Samsung that the topics as noticed are relevant to the litigation. But the breadth and number of topics, taken together, border on extreme. At oral argument, Samsung's counsel struggled to articulate to the court how Apple could be expected to prepare a witness on such topics as:

> For each Apple accused product, Apple's involvement in conceiving, designing, developing, engineering, manufacturing, or testing, including identification of every individual who participated in any such involvement and a complete account of the role each such person played in the involvement. (Topic No. 47);

> For each Apple patent-in-suit, all facts and circumstances concerning first manufacture; first demonstration; first disclosure; first disclosure outside Apple; first public disclosure outside Apple; first written description; first publication; first prototype; first use in the United States; first public use in the United States; first offer for sale in the United States; first sale in the United States; and first importation for sale in the United States. (Topic No. 61);

> All communications with any third party, including suppliers and customers, including but not limited to instructions, standards, guidelines, specifications, training materials, and user guides, regarding the abilities of the Apple accused products that relate to [12 identified functions]. (Topic Nos. 123, 129, 144);

> The conception and development of the designs reflected in the Apple design patents, all iPhone, iPad, and iPod Touch versions, and packaging of those products, including when and how those products and designs were conceived of and developed, all inspirations for them, all mock-ups and prototypes created during the course of their development, all alternative designs considered for those products and designs, and who contributed to the industrial design and user interface design of those products and designs, including any non-Apple employees. (Topic No. 210)

*See* Docket No. 598-4 (Mazza Decl.), Ex. A at 11-56.

[7] Courts have granted protective orders in less extreme circumstances. *See e.g., Bowers v. Mortg. Elect. Registration Sys., Inc.,* No. 10-4141-JTM, 2011 WL 6013092, at *7 (D. Kan. Dec. 2, 2011) (requiring plaintiff to issue a new 30(b)(6) deposition notice where the first, 22-topic notice subjected defendant to an undue burden because many topics were overly broad and some not relevant to the claims asserted); *F.D.I.C. v. Wachovia Ins. Servs., Inc.,* No. 3:05 CV 929 (CFD), 2007 WL 2460685, at *3-4 (D. Conn. Aug. 27, 2007) (finding it "difficult to imagine how [defendant's] 30(b)(6) notice could be more broadly drawn" and noting the discovery already completed would allow defendant to significantly narrow the topics appropriately subject to 30(b)(6) notice).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

United States District Court
For the Northern District of California

prejudice to Samsung narrowing the scope and number of topics and issuing a new notice.[8] Apple

remains responsible, pursuant to Rule 30(b)(6), for making a good faith effort to respond to any

alternative 30(b)(6) deposition notice that Samsung chooses to serve as a result of this order.

**C.     Apple's Motion to Compel Discovery Relating to its Affirmative Defenses and
        Counterclaims (Docket Nos. 600 and 611)**

Apple seeks complete production of three categories of documents, arguing that Samsung

has not yet made a meaningful production or committed to a date certain. Apple also alleges

serious flaws in Samsung's document collection process to date with respect to inventor files and

in Samsung's production of documents relevant to Apple's affirmative defenses. Samsung

responds that Apple's requests are largely unreasonable, but has agreed to produce a portion of the

documents that it deems relevant.

**1. Inventor files.**

Apple seeks a repeat and complete production based on a search and collection conducted

in a "forensically-sound manner" with appropriate search terms, including Korean-language terms,

and with the unambiguous oversight of Samsung's counsel. But in the absence of specific evidence

that Samsung's methods for production from inventor files failed to yield responsive documents or

allowed evidence of misconduct to be shielded from production, the court is loath to impose a

requirement for counsel's further participation or additional Korean-language terms. Such

unyielding standards for outside counsel control over the production process and for limiting the

inventors' role in conducting searches and forwarding the results – even when doing so based on

the instructions of counsel – would add additional cost to litigation of this magnitude without any

indication or likelihood of improved results.[9] In contrast, a best practice of first making

---

[8] In amending or crafting an alternative notice, Samsung should take into account those topics
requiring deposition by subject area due to an ability to otherwise identify percipient witnesses or
the need to bind testimony on issues unresolved by earlier discovery efforts, the time remaining for
deposition of fact witnesses under Judge Koh's scheduling order, and the need to limit the topics to
matters that are not unreasonably cumulative or duplicative of other discovery.

[9] For example, Samsung has provided detailed and sworn explanations for its failure to produce
any responsive documents for 15 out of 32 named inventors. *See* Docket No. 643-4 (Kim Decl. ¶¶
24-35) (under seal). Samsung also has explained in detail its search terms and parameters used for
the patents-in-issue. *See* Docket No. 643-5 (Chan Decl.), Ex. 1 (under seal). The court credits

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

transparency disclosures with respect to the search terms to be used and locations to be searched would help avert the type of post-hoc critique of the quality of production that is the subject of this motion.

### 2. Documents Related to Samsung's Participation in Standards Setting Organizations ("SSOs").

In response to Samsung's claim that Apple is infringing on twelve Samsung patents, seven of which are "essential" to the Universal Mobile Telecommunications System ("UMTS") standard, Apple has asserted affirmative defenses and counterclaims based on Samsung's alleged failure to make required disclosures to SSOs regarding its intellectual property. Apple seeks broad classes of public and non-public documents relating to Samsung's participation in the European Telecommunications Standards Institute ("ETSI") and the Third Generation Partnership Project ("3GPP"), among others. Samsung responds that Apple's requests for "all" such documents[10] is overbroad and unduly burdensome, especially in light of Samsung's longtime participation in these SSOs and the limited relevance of such broad requests to the patents and UMTS specifications actually identified in Apple's counterclaims.[11]

Samsung has proposed to provide Apple with more limited responsive documents – to the extent they exist and are in Samsung's possession, custody or control – including:

- nonpublic communications between Samsung and the working groups that developed the UMTS specifications identified in Apple's counterclaims;

- internal communications regarding Samsung's participation in the working groups relating to the patents-in-suit;

---

counsels' representations and finds no indication that another search under the full control of Samsung's counsel would turn up any additional documents.

[10] *See, e.g.,* Apple's request for production nos. 142 seeking "[a]ll documents relating to Samsung's identification, disclosures, or notification to any of the defined wireless SSOs of any of Samsung's technology as essential or allegedly essential to any of the defined wireless standards" (where "defined wireless standards" includes "all standards to which Samsung claims or has claimed that its patents are essential, including but not limited to the UMTS standard and any standard that is backwards compatible thereto, including but not limited to Global System for Mobile communications ("GSM"), Enhanced Data Rates for GSM Evolution ("EDGE"), and GSM Packet Radio Services ("GPRS")). Docket No. 600-3 (Apple's Third Set of Requests for Production of Documents and Things).

[11] *See* Docket No. 643-4 ¶¶ 6-10; Docket No. 643-19 (Chan Decl.), Ex. 12 (under seal).

7

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

- documents showing the structure of the departments or teams at Samsung that work on SSO-related issues;

- documents relating to Samsung's general policies regarding the disclosure of essential intellectual property rights to ETSE and 3GPP; and

- internal documents relating to Samsung's decision to disclose the patents-in-suit to the relevant working groups.[12]

Apple responds that these concessions are insufficient because Apple's antitrust allegations sweep more broadly than the few specifications identified. At a minimum, Apple seeks all responsive documents relating to the UMTS standard, which comprises 248 specifications, and any standard that is backwards compatible with UMTS, including GSM, EDGE, and GPRS.

The pertinent issue is to what extent Apple's antitrust and related claims govern the scope of relevant documents that it may request under the balancing framework set by the federal rules. Due to the size of the organizations at issue, the numbers of standards or family of standards, patents declared essential to the standard, and specifications relating to each standard, even a single request directed at one SSO or family of standards has the potential to cast an extraordinarily wide net. Although this net may capture information or documents that are technically relevant to the broadly-stated anti-competition claims,[13] it is unlikely that the burden and costs imposed on Samsung[14] are justified, let alone outweighed, by the benefit to Apple.[15] By limiting Samsung's responsive obligations to communications and documents relating to the patents-in-suit and the

---

[12] *See* Docket No. 643-3 at 11 (Samsung's Opp'n to Apple's Mot. to Compel Discovery Related to its Affirmative Defenses and Counterclaims); Docket No. 643-19 (Chan Decl.), Ex. 12 at 4 (Jan. 10 letter); Docket No. 643-4 (Kim Decl. ¶¶ 10-12).

[13] Neither party disputes the relevance of SSO-related discovery to Apple's affirmative defense based on allegations that Samsung breached its duty to disclose. *See Qualcomm, Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1026 (Fed. Cir. 2008) (affirming the equitable remedy of unenforceability where the SSO member was found to have known of and breached its duty to disclose).

[14] *See* Docket No. 643-4 (Kim Decl. ¶¶ 8-9, 13).

[15] *See* Fed. R. Civ. P. 26(b)(2)(C).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

specifications addressed by Apple's claims, the court finds that the legitimate interests of both parties may be met.[16]

Looking to Apple's claims based on "Samsung's deliberate non-disclosure of and false commitments concerning its purported essential intellectual property," the court finds the following patents and specifications have been identified: the '561, '941, '001, '410, '604, '792, '867 patents; and specifications 24.214, 25.212, and 25.213 of UMTS.[17] For this reason, the court accepts the scope of Samsung's proposed production to be sufficient, as stated in its response to Apple's motion, the Kim Declaration, and the January 10, 2012 letter from Samsung's counsel to Apple's counsel. Broader discovery relating to UMTS and the backwards compatible standards, including GSM, EDGE, and GPRS, is appropriate only insofar as these technologies are also included within or implicated by documents and communications regarding the patents-in-suit or Samsung's structure and policies regarding the disclosure of essential intellectual property rights to ETSE and 3GPP.

**3. Documents related to license agreements and negotiations regarding declared essential and non-essential patents to the wireless standards.**

The same analysis applies generally to Apple's motion to compel license and negotiation documents insofar as Apple's requests sweep more broadly than the patents-in-suit and

---

[16] *See LG Electronics, Inc. v. Motorola, Inc.*, No. 10 CV 3179, 2010 WL 3075755, at *3 (N.D. Ill. Aug. 5, 2010) (limiting discovery to the two standards referenced in the parties' pleadings and rejecting LG's request for documents relating to other SSOs).

The court finds the additional case references of both parties to be unhelpful, if not misleading. In *Smithkline Beecham Corp. v. Apotex Corp.*, No. Civ.A.99-CV-4304 et seq., 2006 WL 279073, at *3-4 (E.D. Pa. Jan. 31, 2006), the court found the relevance of communications and data sent between the plaintiff corporation and two, foreign SSOs to be uncontroversial in light of the defendant's broad antitrust claims alleging monopolization of the relevant domestic pharmaceutical market. The court was not asked, and did not address, any limitations on the appropriate scope of discovery of such communications based on the particular standards alleged to be affected. *See id.* In *Townshend Intellectual Prop., L.L.C v. Broadcom Corp.*, No. C 06-5118 JF (RS), 2007 WL 2462152, at *3-4 (N.D. Cal. Aug. 29, 2007), the court did not reach the issue presented in the motion to compel information regarding Broadcom's interactions with SSOs because it found that the parties would benefit from additional meet and confer negotiations on that category of requests.

[17] *See* Docket No. 381 ¶¶ 57-58 (Apple's Amended Answer, Defenses and Counterclaims in Reply to Samsung's Counterclaims). At oral argument, Apple stated that the 25.322 specification also is implicated, although the court found no mention of it in Apple's answer and counterclaims.

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

United States District Court
For the Northern District of California

specifications identified in Apple's claims. Apple argues that executed license agreements for patents not declared essential to UMTS, and both executed agreements and negotiation documents for patents declared essential to UMTS – including the backwards compatible standards – are relevant to Apple's affirmative defenses and to its FRAND reasonable royalty claims. The court agrees that the relevance of license and negotiating documents to unenforceability claims and to the calculation of a reasonable royalty rate is well established.[18] Moreover, Samsung has agreed to produce responsive documents encompassing (1) license agreements for the patents-in suit (declared essential or non-essential), (2) licenses, royalty information, and negotiating documents referencing royalty rates or amounts for licenses for the patents-in-suit declared essential to the standards at issue, and (3) all communications with third parties negotiating the terms of licenses to the patents-in-suit.[19]

The court finds the scope of Samsung's proposed production to be appropriate, except as follows. Samsung shall not limit its production of negotiating documents to those "referencing royalty rates or amounts for licenses," but shall include all non-privileged negotiating documents for the patents declared essential to the standards at issue, as defined by the UMTS specifications stated in Apple's amended affirmative defenses and counterclaims. In addition to its production of licenses to the patents-in-suit, Samsung shall undertake a reasonable search and produce licenses for patents not-in-suit but nevertheless declared essential to the standards at issue, as defined above. On balance, the production of final license agreements for all patents-in-suit and extending to Samsung's patents declared essential to the limited specifications at issue, in combination with all non-privileged negotiating documents for the patents-in-suit as further limited by specification, should provide Apple with ample material to support its defenses and counterclaims based on

---

[18] *See Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008) (listing the "multitude of ways" in which correspondence with third parties related to license negotiations could be relevant and lead to admissible evidence).

[19] *See* Docket No. 643-19, Ex. 12 at 5 (Jan. 10 letter); Docket No. 643-4 (Kim Decl. ¶ 20); Docket No. 643-3 at 16. At oral argument, counsel for Samsung confirmed that its production of executed licenses would include portfolio licenses that incorporate the patents-in-suit.

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

1   Samsung's alleged anticompetitive practices while protecting Samsung from the undue burden of

2   producing license-related documents for patents with limited relevance to Apple's claims.[20]

3   **D.     Apple's Motion to Compel Production of Documents and Things (Docket No. 613)**

4        Apple moves to compel four categories of documents and emphasizes what it represents to

5   be an ongoing and growing disparity between the parties' compliance with discovery obligations.

6   Samsung disputes this characterization and argues that for the purposes of this motion, it has

7   produced or has agreed to produce by a date certain the majority of Apple's requests. With respect

8   to other demands, Samsung argues that Apple failed to meet and confer appropriately before filing

9   the motion. Apple declares that it voluntarily has narrowed its request to the most critical

10  documents, none of which Samsung has disputed to be irrelevant or otherwise objectionable.

11       **1. Technical documents relevant to Apple's utility patent infringement case.**

12       Apple seeks fourteen types of technical documents[21] that it argues are relevant to proving

13  infringement of Apple's touchscreen hardware patents and other accused functionalities, and which

14  should have been produced months ago with Samsung's invalidity contentions.[22] Samsung has

15  agreed to produce a number of these categories, including documents relating to its touchscreens,[23]

16  as well as information on versions, updates or changes made to operating systems and software that

17  shows when the accused functionalities were incorporated into the accused products.[24] However, to

---

18  [20] *See Atmel Corp. v. Authentic Inc.*, C-06-02138 CW (EDL), 2008 WL 276393, at *1 (N.D. Cal.
19  Jan. 31, 2008) (finding the patent license agreements sought to "at a minimum have some
    relevance to damages even if they do not involve the precise patents-in-suit"). *Cf. Bally*
20  *Technologies, Inc. v. Business Intelligence Systs. Solutions, Inc.*, No. 2:10-cv-00440-PMP-GWF,
    2011 WL 3892221, at * 2-3 (D. Nev. Aug. 30, 2011) (finding evidence of license agreements
21  involving patents other than the patents-in-suit to be insufficiently relevant to outweigh the burden
    and expense of production).

22
23  [21] *See* Docket No. 616 (Apple's Proposed Order Granting Mot. to Compel Production of
    Documents and Things).

24  [22] *See* Patent L.R. 3-4(a).

25  [23] *See* Docket No. 642 at 7 (Samsung's Opp'n to Apple's Mot. to Compel) (agreeing to produce
26  documents sufficient to show design, specifications, manufacturing tolerances, arrangement of
    elements, bills of materials, data sheets, and documents relating to circuitry design for the accused
27  touchscreens).

28  [24] *See* Docket No. 642 at 7-8; Docket No. 642-1 (Chan Decl.), Ex. 1 at 2-3 (Jan. 10 letter).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

the extent that Samsung's agreed-upon production does not address all fourteen document types sought by Apple, Samsung has not demonstrated that the highly-relevant information sought should not be produced. Samsung therefore must undertake a reasonable search for and produce material responsive to the fourteen document types, as limited by the language used in Apple's proposed order. Alternatively, in order to reduce Samsung's burden in producing the additional material – in particular that relating to version histories, updates, and changes made to functionalities or features – Samsung can negotiate a stipulation that its production adequately represents the functionality of the entire set of accused products.[25]

### 2. Documents related to Apple's design patent, trademark, & trade dress claims.

These requests include documents (a) relating to "all" of Samsung's design-around efforts, including the "blue glow" feature allegedly developed in the face of Apple's "rubber-banding" feature; and (b) demonstrating alternative designs and satisfaction of the *Sleek-Craft*[26] factors for trade dress and trademark claims.

### a. Design arounds.

Apple argues that documents relating to design around efforts are relevant to determining the scope of infringement, willfulness of Samsung's alleged infringement, and reasonable royalty rates. Samsung argues that at the eleventh hour Apple significantly expanded its requests and has not allowed adequate time for meet and confer, but nonetheless has agreed to produce all non-privileged documents relating to "blue glow" functionality and to search for any responsive documents regarding design arounds in released products.[27] Given the concern that most pre-release material constitutes work-product, it is reasonable for Samsung at this stage to limit production to potential design arounds in already released products. To the extent that Samsung

---

[25] If a dispute regarding such a stipulation arises with respect to the "proxy" production selected by Samsung, the parties may seek relief or guidance from the undersigned.

[26] *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (establishing an eight-factor test to be applied by courts considering likelihood of confusion in the context of trademark infringement claims), *abrogated on a different point of law by Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 810, n.19 (9th Cir. 2003).

[27] *See* Docket No. 642 at 8.

12

locates non-privileged material relating to design arounds in unreleased products, it shall produce

such material as well.

### b. Alternative designs and satisfaction of the *Sleek-Craft* factors for trade dress and trademark claims.

Apple seeks a broad spectrum of documents relating to alternative designs in order to prove

that Apple's designs are not-functional and have acquired distinctiveness. Apple also contends that

Samsung must produce documents relevant to the contested elements in Apple's trade dress and

trademark claims. This includes documents discussing actual or possible consumer confusion

between the parties' products at issue, trademark, trade dress, and design patent reports relating to

Apple's asserted trade dress or trademarks, advertising of both accused and non-accused products,

and survey documents already ordered by the court. Despite its objections relating to the breadth of

Apple's requests and timing of its motion with respect to meet and confer, Samsung has agreed to

produce responsive documents in several categories, including:

- relating to or discussing actual or possible consumer confusion;

- documents discussing or assessing Apple's designs;

- documents identifying and including communications of designers and developers responsible for the graphical user interface and hardware design of the products at issue;

- a sample of each Apple product in Samsung's possession, control or custody as well as a sample of each Samsung accused product and accompanying end user documentation; and

- marketing and advertising documents, including: copies of U.S. advertisements that mention Apple; Samsung's U.S. retail outlets and market and media outlets; Samsung online advertising tracking data; U.S. product placements for Samsung phone and tablet products; and U.S. or global media plans related to the accused products.[28]

Samsung objects to several Apple requests for design documents relating to "any Samsung" mobile

phone, tablet, or touchscreen digital media player "regardless of where sold," as well as to those

requests respecting "any" such product beginning in January 2000. Apple argues that alternative

designs or discussions of alternative designs are relevant to assess Samsung's functionality

argument, and that a fair assessment of alternatives must include those used or proposed in non-

---

[28] *See id.* at 11-12.

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    accused products. Samsung also objects to various requests related to advertising and marketing,

2    pending further meet and confer.

3         Although the availability of alternative designs is a factor relevant to the determination of

4    functionality in trade dress cases,[29] Apple has not shown that this justifies its requests relating to

5    the entire scope of products that it seeks, which Samsung has represented implicates hundreds of

6    non-accused products.[30] The court finds Samsung's offer to produce the requested information for

7    accused products only to strike a reasonable balance, with one condition. Samsung must include in

8    its production for accused products those responsive documents that relate to non-accused products

9    that nevertheless constitute a variant of or are part of a family of products where at least one

10   member has been accused, or where Samsung itself has put the non-accused product at issue by

11   referencing it or producing information or models related to it.[31] Furthermore, to the extent that any

12   aspect of the court's December 22, 2011 order for Samsung to complete production of design

13   history documents, including CAD, inventor and designer notebooks, models and mockups, and

14   design-related email correspondence[32] has not been met and falls within the scope of Apple's

15   requests currently at issue, Samsung must complete production without any further delay.[33] Any

16   further delay in this latter production will put Samsung at risk of appropriate sanctions.

17

18   ───────────────
     [29] *See Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006, 1008-09 (9th Cir. 1998).

19   [30] *See* Docket No. 642-1 (Chan Decl. ¶ 28).

20   [31] *See* Docket No. 613 at 13, n.4; Docket No. 613-2 (Mazza Decl. ¶ 16 (asserting that Samsung

21   often designs a core product and then offers that product under a variety of names with slight
     design modifications, and that "[g]iven this practice, documents from the design history of non-
22   accused products may be directly relevant to the design of accused products if their design
     originated with the same core product"); ¶ 17 (asserting that Samsung has produced documents
23   and things related to non-accused devices, such as the F700 mobile phone, when that production
     benefits Samsung)).

24   [32] *See* Docket No. 537 at 3 (Order Granting-In-Part Plaintiff's Motion to Compel).

25   [33] The court notes that neither its December 22, 2011 order nor Apple's underlying motion at that
     time (Docket No. 467-1) specified for the production of the design history documents to include
26   documents and things dating back to January 2000, nor did either include such broad terms as "for
     any Samsung mobile phone product, tablet product, or touchscreen digital media player, regardless
27   of where sold…"). To the extent that that this motion may seek to broaden the reach of the court's
     previous order, that attempt fails.

28

                                            14
     Case No.: CV 11-1846 LHK (PSG)
     ORDER RE DISCOVERY MOTIONS

**3. Marketing and advertising documents relevant to Apple's showing of irreparable harm.**

Apple seeks additional marketing, market research, and advertising documents relevant to Samsung's position that its products do not compete with Apple, and that an injunction would result in increased sales of third-party products, not Apple products. Samsung has agreed to produce those marketing and advertising related documents noted in previous sections. Samsung otherwise argues that Apple has not allowed for meaningful meet and confer regarding its additional demands for marketing, market analysis, and strategy documents relating to the parties' products at issue, for advertisements that "target or evoke Apple or its products," or for documents reflecting foreign retail outlets and scripts or sales points for Samsung's products at issue.

Because Apple did not refute Samsung's representations that additional meet and confer is required or address this aspect of its motion at oral argument, the court will defer ruling on these particular requests at this time and remind both parties of the meet and confer requirements of both the presiding judge and the local rules of this court.

**4. Sales and financial information relevant to establishing damages.**

Apple seeks a number of categories of sales and marketing information, including U.S. and worldwide sales and revenues, selling price per accused product, gross margin, expenses and operating profit, and Samsung's audited or unaudited financial reports. Apple argues that Samsung's production to date has provided scattered and piecemeal financial information that does not offer any consistent record for Apple to draw from. Samsung does not dispute that sales and profitability information is relevant to Apple's damages, if any. Samsung has agreed to supplement its production to date and provide responsive documents to all of the categories listed by Apple.[34] The court finds Samsung's proposed production to be sufficient to meet Apple's legitimate requests for this category of documents.

**E.     Samsung's Motion to Compel Production of Documents and Things (Docket No. 603)**

Samsung moves to compel production of six "discrete" categories of documents, and for Apple to produce deposition dates for all noticed depositions. Samsung argues that notwithstanding

---

[34] *See* Docket No. 642 at 14; Docket No. 642-1, Ex. 1 (Jan. 10 letter).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

Apple's representations regarding its production to date, there remain whole categories of documents that Apple has failed to produce, in addition to its withholding of both corporate and individual deposition witnesses. For example, Samsung contends that Apple has withheld source code on baseband processors and even concealed a library of documents relating to prior art. Apple responds that most of the topics for this motion are not at issue, and those that remain are based on Samsung's overreaching and failure to respond to Apple's suggested compromises.

### 1. Source code and technical documents showing the operation of the allegedly infringing product features.

Samsung has accused Apple of infringing twelve utility patents, seven of which relate to wireless communications performed by baseband processors in the accused products. Samsung seeks a complete production of all relevant source code, including for the baseband processors, technical documents detailing how the processors operate and are integrated into the accused Apple products, and technical documents related to customizations of the baseband processors. Apple responds that it has produced all categories of source code relating to the accused features, but that it has been unable to produce the baseband processor code which is supplied by and is proprietary to Intel, because of an objection by Intel.[35]

Samsung has failed to raise any specific issues in its moving papers or at oral argument with respect to Apple's confirmed production of source code and technical documents, other than related to the baseband processors. Moreover, Apple has represented that notwithstanding ample opportunity, Samsung has failed to undertake a reasonable inspection of the source code provided. On this basis, the court finds Apple's production of "home grown" source code to be adequate. As to production of the baseband processor code and related technical documents, Intel has not demonstrated how its own production to Samsung under a separate protective order will result in more secure protections for the code, or how that will satisfy Samsung's need to receive the source

---

[35] Although no formal appearance was made, counsel for Intel attended oral argument and confirmed that it has withheld its permission for Apple to produce the baseband processor source code, but is in negotiations with Samsung for a protective order so that it can provide the code to Samsung directly. *See* Docket No. 657 at 243:11 - 244:24 (Tr. of Proceedings held on 1/19/2012).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

code directly from Apple so it may confirm whether it has been modified. The court therefore

grants Samsung's motion to compel as to the baseband processors.

### 2. Source code and technical documents related to known prior art.

Samsung seeks documents relating to Apple's patents and products embodying those

patents that it argues should have been produced months ago.[36] Because many of the asserted

utility patents have been asserted in earlier litigation, Samsung argues that Apple has ready access

to the prior art references and any related source code and documents. Samsung specifically

identifies "NeXTSTEP OS" as an example, arguing that this earlier operating system is prior art to

the '002 patent but that Apple denied its relevance for weeks before agreeing to a limited

production of source code and documents. Apple responds that Samsung's broad request seeking

"all" source code and documents imposes an undue burden, considering the age of the technology

and the limited feature of NeXTSTEP OS that allegedly is prior art to the '002 patent.

The court accepts Apple's representations that it has produced all source code that it has

been able to locate, a NeXTSTEP work station, and all technical documents relating to NeXTSTEP

OS that Apple previously has produced in other litigation.[37] To the extent that Apple locates

additional source code related to NeXSTEP OS or to any other prior art to the asserted patents –

including prior art alleged in earlier litigation or discovered by Samsung and requested of Apple –

Apple has a continuing obligation to supplement its production.

### 3. Emails and documents showing Apple's analysis and consideration of Samsung, Samsung products, and Samsung's proposed search terms.

Samsung asserts that both sides agreed to include the other company's name, products, and

aliases in searches of all custodial files. But rather than search its designer, engineer, marketing

custodians, and central files accordingly, Samsung contends that Apple has reneged and run more

limited searches that do not include aliases, amongst other shortcomings. Apple argues that

Samsung presents a false symmetry to the court regarding the relevance of searching for

---

[36] *See* Pat. L.R. 3-2(b) and 3-4(b).

[37] *See* Docket No. 636 (Bartlett Decl. ¶ 4).

17

1   "Samsung" and its aliases in Apple's custodial and central files, stating that it does not face

2   copying charges and that it agreed to and did carry out such a search for its inventor files only in

3   order to avoid motion practice.

4        The parties may not share equal footing justifying including the disputed search terms in all

5   electronic searches. But it should go without saying that both sides need to respect agreements they

6   make in the interest of shrinking – however so slightly – the crushing burdens imposed on both the

7   parties and the court by cases of this type. In light of Apple's unambiguous commitment to include

8   the "Samsung" name, alias, and product search terms in its custodial file search,[38] the court finds it

9   reasonable to hold Apple to its word.[39] With respect to Samsung's proposed search terms, Apple

10   has represented that it implemented the majority of terms from Samsung's list and minimized those

11   that it will not produce responsive documents for because they yield an enormous volume of

12   irrelevant material.[40] The court accepts Apple's representations regarding the limited relevance of

13   those terms and encourages the parties to meet and confer further regarding appropriate delimiters

14   to the remaining disputed terms, including "Android" and "Droid," as proposed by Apple.[41]

15        **4. Design history documents relevant to Apple's design patents.**

16        Samsung contends that Apple has failed to produce complete or timely responses to various

17   requests for documents critical to Samsung's assessment of the validity of Apple's design patents,

18   including mechanical outlines ("MCOs"), CAD files, prototypes, physical models, and sketchbooks

19   pertaining to all iPhone, iPad, and iPod Touch products. Samsung also seeks documents relating to

20   "Tiger," a prior art reference that allegedly inspired certain Apple design patents. Apple responds

21

22   [38] *See* Docket No. 603-1 (Hutnyan Decl.), Ex. V at 2-3 (Dec. 5 letter) (under seal) (outlining
Samsung's search for Apple terms and products and confirming that "Apple is reciprocating. Apple
23   agrees to search for 'Samsung,' or any Samsung product at issue in this case, or any alias therefore,
with respect to documents in the files of its designers and engineers who worked on the relevant
24   products, employees responsible for marketing those products, and employees responsible for
developing the features at issue.").

25   [39] The court notes that this commitment allows for reasonable delimiters on both sides. *See id.* at 3.

26   [40] *See* Docket No. 636 (Bartlett Decl. ¶ 7); Docket No. 603-1 (Hutnyan Decl.), Ex. Y at 7-9 (Dec.
27   24 letter) (under seal).

28   [41] *See* Docket No. 637-3 (Bartlett Decl.), Ex. B (Jan. 5 letter).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

United States District Court
For the Northern District of California

1    that it has produced substantial design history files in all of the categories sought, and those not

2    produced are of limited or no relevance.

3                    **a. CAD files and Sketchbooks.**

4    The court will address these items in the context of Samsung's motion to enforce, below.

5                    **b. Mechanical Outlines.**

6    Samsung argues that MCOs provide detail that is not visible from CAD, such as wall

7    thickness and placement of internal components, which may be relevant to show whether design

8    features also have a functional purpose. Apple responds that MCOs show the internal blueprint and

9    are of limited relevance and cumulative of already extensive production of CAD where the patents-

10   in-suit cover external appearance. Apple also notes that there is a substantial burden to producing

11   the thousands of MCOs covered by Samsung's broad request for "all" relevant MCOs, because

12   they are not subject to any systematic export mechanism.[42] In a letter to Samsung on January 5th,

13   Apple nevertheless agreed to produce "MCO data, if any, relating to the external appearance of

14   products that are the subject of asserted patents by January 31st."[43]

15   Samsung has not demonstrated the relevance of the MCOs, beyond any that bear directly on

16   the external appearance and design of the accused products, so as to justify the extensive effort

17   required of Apple to gather and export all MCO data files. The court therefore finds that Apple

18   must conduct a reasonable search and produce the MCO files as stated in its January 5th letter, but

19   is not obligated to produce MCO files that are not related to and do not bear on external design.

20                    **c. Models and prototypes.**

21   Apple states that it canvassed its designers and engineers for working prototypes, and

22   ultimately identified and produced over 1,000 prototypes, models and partial models that represent

23   an enormous variety of designs.[44] Samsung argues that the production is inadequate because Apple

24   has not agreed to produce "all the tangibles" relating to features, parts, and the products, or models

25   ───────────────────

26   [42] *See* Docket No. 637-3 (Bartlett Decl. ¶ 9) (under seal).

27   [43] *See* Docket No. 603-1 (Hutnyan Decl.), Ex. A at 4 (Jan. 5 letter) (under seal).

28   [44] *See* Docket No. 637-3 (Bartlett Decl. ¶¶ 7, 8).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

United States District Court
For the Northern District of California

1    that may not be "complete," even though Apple's own designer has testified that such "small

2    samples" or pieces of a whole prototype were utilized in the design of products at issue.[45]

3          The court finds that the burden on Apple to produce all prototype pieces and parts, even

4    non-working "old dead parts" that may be stowed in various locations or designer and engineer

5    offices, outweighs the benefit of relevant discovery to Samsung. However, to the extent that Apple

6    may have excluded "parts" or "small samples" actually used in the design process for accused

7    products, such as those described in the Ive deposition, Apple shall conduct a reasonable search

8    and supplement its production, if necessary.

9                    **d. Mac OS X Tiger.**

10         Samsung contends that  Apple's own designer testified that "Tiger" had inspired certain

11   Apple design patents based on its icons, and thus is relevant to the invalidity of the D'305 patent

12   and to knowledge and use of the prior art. Yet Apple has withheld production of a computer to

13   demonstrate Tiger, agreeing to produce only a DVD copy of Tiger version 10.4.3 but then refusing

14   to agree to a stipulation regarding the produced copy. Apple argues that the burden of producing

15   "all materials" related to Tiger, which would include source code, technical and marketing

16   documents, and emails and financial data, far outweighs any benefit, where the alleged relevance is

17   limited to Tiger's "dock icons," and furthermore where Tiger was not the subject of any proper

18   discovery request.[46]

19         The court finds that Samsung's request for "all" materials overreaches, and Apple's

20   production of a "new, in-the-box" version for Samsung's inspection is sufficient to show the

21   limited features of Tiger alleged to be relevant to Samsung's defenses. Apple also shall produce

22   technical and marketing documents related to the dock icons, other than emails.

23         **5. Survey and marketing documents related to Apple's alleged design and utility
24         patents, trade dress and trademarks.**

25         Samsung seeks responses to various requests for production related to consumer surveys,

26   focus groups, demographic studies, and other marketing-related documents argued to be relevant to

27   ---

[45] *See* Docket No. 603-1 (Hutnyan Decl.), Ex. K at 29:10-33:7 (Ive Depo.) (under seal).

28   [46] *See* Docket No. 636 (Bartlett Decl. ¶ 8).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

damages and (lack of) confusion or distinctiveness. Apple has agreed to produce final survey reports and raw survey data for all customer surveys related to iPhone, iPod Touch, iPad products, market research reports relating to those products, and a wide variety of print, television, and other advertisement media plans, as well as online click counts for the iPhone, iPod Touch, iPad products.[47] Apple also has offered to Samsung to follow up if needed, after reviewing the production.[48]

Because Samsung has not demonstrated why Apple's commitment to produce marketing and survey documents is insufficient, or what additional production it seeks, Samsung's request for additional production on these topics is denied, with one exception. Apple shall produce surveys or survey documents referencing Samsung products, as requested in Samsung's RFP No. 165.

### 6. Financial documents.

Samsung contends that Apple only recently agreed to produce a subset of relevant financial documents needed to assess damages, if any, and has not agreed to produce business plans and strategies relevant to the development and marketing of Apple's products. Apple argues that it already agreed to produce sufficient financial information to meet all of Samsung's requests, other than that for business plans and strategies, which was not raised previously or subject to meet and confer. At oral argument, Apple further committed to query Apple's system of record to the level of granularity that Samsung seeks, including providing data on a model or product basis, if the system of record is able to provide data in that form.[49]

The court finds Apple's proposed production to be sufficient in response to Samsung's requests. As to business plans and strategies, they are specifically requested in Samsung's RFP No. 55, and the court sees no reason why Apple should not produce them.

---

[47] *See* Docket No. 636 (Bartlett Decl.), Ex. 8 at 2-3 (Jan. 7 letter).

[48] *See id.*

[49] *See* Docket No. 657 at 234:18 - 235:6.

21

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

United States District Court
For the Northern District of California

**7. Production of witnesses.**

Samsung moves the court to order Apple to offer deposition dates for all noticed depositions, including for fact witnesses and in response to Samsung's 30(b)(6) deposition notice. Samsung also seeks more time with Apple's lead designer and senior vice president of industrial design, Jonathan Ive ("Ive"), on the basis that he is a key witness and the best or only source of information regarding several issues on which Samsung only received documents and discovery after his seven-hour deposition was completed. Apple argues that Samsung has exhausted its allotted seven-hours with Ive under Fed. R. Civ. P. 30(d)(1) and has failed to demonstrate good cause for additional time,[50] especially given Ive's senior status at Apple and the undue burden that additional deposition time would present.[51]

Samsung has not disputed Apple's representations that it now has provided deposition dates for all of the noticed Apple deponents. The court thus denies this aspect of Samsung's motion as moot. The court also denies Samsung's motion with respect to Apple producing a 30(b)(6) deposition witness, as explained above in the ruling on Apple's motion for protective order.

As to Samsung's motion for additional time with Ive, the court accepts Samsung's representations that such time is required based on Samsung's receipt of extensive design-related discovery in January, including Apple's production of models and prototypes, as well as that other designers in their depositions pled ignorance to certain subjects and pointed specifically to Ive as having knowledge.[52] Because Samsung was not in receipt of significant design-related material at

---

[50] *See Somerset Studios, LLC v. Sch. Specialty, Inc.*, No. C 10-5527 MEJ, 2011 WL 4344596, at *5 (N.D. Cal. Sept. 14, 2011) (explaining the presumption behind the seven-hour limit and the need to limit a grant of additional time based on any of the factors set out in Rule 26(b)(2)).

[51] *See Affinity Lab of Texas v. Apple, Inc.*, No. C 09-4436 CW (JL), 2011 WL 1753982, at *10 (N.D. Cal. May 9, 2011) (denying motion to compel deposition of then-Apple CEO Steve Jobs because plaintiff failed to show that it exhausted other, less burdensome means of acquiring the information, such as by written discovery); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. 05-04374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (noting well-established rule that high-level corporate management should not be deposed where the information sought can be obtained through less intrusive discovery, including depositions of lower-level employees with more direct knowledge of the facts at issue).

[52] *See* Docket No. 657 at 213:20 - 215:1.

22

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

United States District Court
For the Northern District of California

1  the time of Ive's deposition, Ive has unique first-hand knowledge of Apple's design processes and

2  the products at issue, and other designers referred to Ive in the course of their depositions, it is

3  reasonable for Samsung to have an additional opportunity to question him. Unlike in *Celerity, Inc.*

4  *v. Ultra Clean Holding, Inc.*, the court finds no indication that Samsung might gain the information

5  it seeks from other sources, or that Ive himself lacks personal knowledge of the facts at issue.[53]

6        The court therefore grants Samsung's motion with respect to Ive, subject to the following

7  limitations to minimize any undue burden. The deposition shall last no more than two hours.

8  Samsung shall accommodate Apple's choice of time and place.[54] Samsung must identify topics and

9  produce any documents or things that it seeks to introduce at the deposition no less than 72-hours

10  in advance.

11  **F.  Samsung's Renewed Motion to Compel Relating to Mac OS 10.0 (Docket No. 604)**

12        Samsung does not dispute Apple's representation that it has corrected its production of the

13  Mac OS 10.0 software so that the brightness adjustment button and window are fully functional.

14  Counsel for Apple further agreed at oral argument to stipulate that the Mac OS 10.0 produced to

15  Samsung was made available to the public for sale as of a certain date.[55] On these grounds, the

16  court finds the issues in Samsung's motion to be resolved and denies the motion as moot.

17  **G.  Samsung's Motion to Enforce Various Court Orders re Production Relevant to
     Apple's Asserted Design Patents (Docket No. 605)**

18

19        Samsung contends that Apple has failed to comply with earlier court orders relating to the

20  following categories of discovery: inventor sketchbooks; CAD files, MCOs, prototypes and

21  models; photos taken by Samsung of the 035 tablet mockup; and photos from Apple's custodial

22  files used in Apple's patent prosecution of the D'889 patent. Apple responds that it has fully

23  complied with the court's orders, and that Samsung's motion is based on an overbroad reading of

24  its own requests and brought for an improper purpose.

25  [53] *Cf. Celerity, Inc.*, 2007 WL 205067, at *2-4.

26  [54] This includes the possibility that Apple chooses to have Ive sit for deposition immediately

27  following the February 8, 2012 deposition already scheduled in the ITC matter.

     [55] *See* Docket No. 657 at 262:7-25.

28

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

**1. Design inventor sketchbooks.**

In its September 13, 2011 order, the court directed Apple to produce "all 'sketchbooks,' or relevant sections thereof, relating to the four patents at issue in Apple's preliminary injunction motion."[56] On December 22, 2011, the court reaffirmed Apple's obligation to produce copies of the sketchbooks containing all pages and redacting only those portions that reveal future product designs or that are not relevant to the patents-in-issue.[57] Samsung argues that in violation of the court's order, Apple since has imposed an arbitrary cut-off date of January 1, 2003, before which it will not produce any sketchbooks. Samsung also criticizes Apple's redactions, which it states were determined by outside counsel rather than by designers with an understanding of the "often impossible to decipher" sketches. Apple responds that it openly disclosed the cutoff date to Samsung in November 2011, and that only after it completed its production on December 30th did Samsung request sketchbooks dating back to 2002.

The court's earlier orders were straightforward – or so at least the court thought. Although there is no specified time frame or cutoff date for sketchbook production, Apple must produce only those sketchbooks or portions thereof that contain material relevant to the asserted patents. To the extent that there is material located in sketchbooks dating to 2002 that is relevant under this standard, Apple is obligated to produce that material. If the 2002 sketchbooks contain no relevant material, then Apple's production to date is sufficient. With respect to sketchbook redactions, Samsung has not pointed to any instance in which the redactions were poorly applied or demonstrated how the role of outside counsel should have been different in determining sketchbook redactions than it is, for example, in reviewing and redacting other forms of highly technical proprietary material. The redactions may stand.

---

[56] *See* Docket No.233 at 2 (Order Granting-In-Part and Denying-In-Part Defendant's Motion to Compel).

[57] *See* Docket No. 536 at 4-5 (Order Granting-In-Part Defendant's Motion to Compel).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

**2. MCOs, CAD files, prototypes, and models.**

As in its motion to compel, Samsung argues that Apple has been deficient in its production of MCOs, CAD, and models and prototypes relating to the conception and reduction to practice of the design patents. Yet Samsung points to only a few discrete categories that remain deficient. Regarding MCOs and any non-working or incomplete prototypes or models not produced, the court refers the parties to its ruling above on Samsung's motion to compel. Regarding CAD, Apple argues that it agreed to and did produce all of the CAD files created by its industrial designers for the products at issue, including the CAD for the 035 tablet mockup in PDF and native CAD. The court accepts these representations and denies the motion as to CAD files as moot.[58]

**3. Photographs of the 035 tablet mockup.**

The court's December 22, 2011 Order required Apple to remove the confidentiality designation from the photographs taken by Samsung of Apple's tablet mockups, except for those few photos that revealed details not disclosed in the original patent filings.[59] Samsung argues that Apple has retained the designations and continues to raise objections regarding details in Samsung's photos that are not actually confidential. Apple states that it complied with the court's order and produced the de-designated photos, but redacted the "rulers" or scale information because that detail was not previously disclosed to the public.

The court is satisfied that Apple has complied with the court's order regarding de-designation. The precise scale of the tablet mockups was not a detail previously visible in the public filings. Apple therefore is within its rights to refrain from de-designating those details.

**4. Search for photographs in custodian files.**

On November 16, 2011, the court ordered Apple to identify custodians' files that had been searched to find photographs submitted to the U.S. Patent and Trademark Office for the prosecution of the D'889 patent, and to stipulate that the photographs produced were the highest

---

[58] If Samsung continues to experience difficulties accessing the CAD files purportedly made available for its inspection, Apple must remedy its production.

[59] *See* Docket No. 536 at 3.

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

quality that Apple found.[60] Samsung argues that notwithstanding Apple's representations

consistent with the order, it is unclear if at least one custodian's files were searched properly.

Samsung bases its assertion on deposition testimony by the custodian that she had no obligation to

search for documents, and further that there may be additional CDs from those files containing

potentially relevant material. Apple responds that it has fully complied with the court's order and

that Samsung's assertions are unfounded and based on a misleading and selective quotation from

the deposition.

Samsung has not provided any evidence in support of its statement regarding the CDs, and

the deposition excerpt referenced does not contradict Apple's representation that its counsel

searched the custodial files, even if the custodian herself felt no obligation to do so. The court thus

finds Samsung's surmising to be speculative and denies its motion as to the search for photographs.

**H.    Samsung's Motion for Clarification regarding Itay Sherman (Docket No. 606 )**

Samsung asks the court to clarify the boundaries of its December 22, 2011 order relating to

Samsung's expert Itay Sherman ("Sherman") and the categories of documents that he may review.

Samsung contends that in its motion prior to the order, it sought permission for Sherman to review

all design-related material, excluding anything relating to multi-touch technology. Because the

resulting Sherman Order limited its discussion to four specific categories of documents, the parties

disagree where other categories of documents not explicitly addressed fall within its scope.

Samsung seeks clarification regarding several discrete categories of information designated

confidential: exhibits used in depositions of Apple's design patent inventors; testimony of Apple's

design experts; declaration testimony and accompanying exhibits of Apple's design inventors;

Apple's design models and prototypes, including photographs taken of them; and internal design

team emails relating to phone, music player, and tablet industrial designs. Samsung states that the

motion for clarification is made without prejudice to its raising additional categories later,

consistent with Apple's ongoing production.

---

[60] *See* Docket No. 398 at 3 (Order Granting-In-Part Defendant's Motion to Compel).

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

**United States District Court**
For the Northern District of California

1    Apple argues that Samsung's motion actually and improperly seeks reconsideration of the

2 Sherman Order, for which it does not qualify. Substantively, Apple argues that the categories of

3 documents for which Samsung now seeks "clarification" pose the same risks to Apple's

4 commercial interests that resulted in the strict limitations imposed by the court's earlier order.

5    As a general matter, the Sherman Order did not set the upper limit of what may be shown to

6 Samsung's expert. In acknowledging the merits of both parties' concerns and interests, the court

7 delineated an appropriate balance between material that presents "an insufficient likelihood of

8 containing technical information pertaining to multi-touch or other utility functions" and material

9 that is "more ambiguous" and "of a nature that is not strictly design-oriented and [] may contain

10 input from a broader range of Apple's people and processes."[61] This same distinction may be

11 appropriately applied to the categories presented in the motion for clarification.

12    For example, documents that originate with a design inventor or design expert and mirror

13 the descriptive function of a deposition transcript, such as declarations and oral and written

14 testimony, are unlikely to present the type of technical information that would pose a risk to

15 Apple's interests in the multi-touch field. To the extent that particular exhibits may run afoul of the

16 restrictions imposed in the Sherman Order, the parties have the obligation to apply the court's

17 standard rigorously and in good faith.[62] Apple's design models, prototypes, and photos thereof may

18 pose greater difficulty to ascertain the division between what is "strictly design-oriented" and what

19 is not. As a general rule, the court finds that models of exterior or design-related features are

20 acceptably low-risk whereas prototypes – designed to demonstrate functionality – may present a

21 greater risk of including non-design or functional features. Insofar as internal design team emails

22 relating to phone, music player, and tablet designs contain communications strictly from within

23

24 [61] *See* Docket No. 535 at 4 (Order Granting-In-Part Motion to Permit Defendant's Expert to
Review Design Materials Designated Under the Protective Order).

25

26 [62] In particular with respect to exhibits, the court reminds the parties that subject to the provisions
of the two-tiered protective order, Samsung may seek a lower designation for materials that do not

27 merit AEO-level confidentiality, facilitating its ability to share exhibits that are not highly
sensitive.

28

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS

Apple's industrial design team and information that is "strictly design-oriented," Samsung may present that material to Sherman.

On the whole, counsel for Samsung remains responsible for reviewing all material ahead of time, regardless of the court's indication as to a particular category, and for excluding from Sherman's purview any and all documents, tangible materials, or other information that falls outside the bounds of what the court describes as "strictly design-oriented."

**IT IS SO ORDERED.**

Dated: January 27, 2012

PAUL S. GREWAL
United States Magistrate Judge

Case No.: CV 11-1846 LHK (PSG)
ORDER RE DISCOVERY MOTIONS