# EXHIBIT 1



**ADDUCI MASTRIANI & SCHAUMBERG LLP**

ATTORNEYS AT LAW
1200 SEVENTEENTH STREET, N.W. WASHINGTON, DC 20036
Tel:(202) 467-6300  Fax:(202) 466-2006  Web:www.adduci.com

CBI 11-346

July 8, 2011



DOCKET
NUMBER

2828

Office of the
Secretary
Int'l Trade Commission

V JAMES ADDUCI II

LOUIS S MASTRIANI

TOM M SCHAUMBERG

WILL E LEONARD

MUNFORD PAGE HALL II

MICHAEL L DOANE

SARAH E HAMBLIN

JAMIE D UNDERWOOD

ANDREW F PRATT *

WILLIAM C SJOBERG

JONATHAN J ENGLER

IAN A TARONJI

QIAN SHENG *

DAVID H HOLLANDER JR

KATHERINE R LAHNSTEIN

DANIEL F SMITH

ASHA ALLAM *

BEAU A JACKSON *

THOMAS R BURNS JR

ROWAN E MORRIS

EVAN H LANGDON *

PAUL M BARTKOWSKI

OF COUNSEL

JOHN C STEINBERGER

PAUL G HEGLAND

DEBORAH S STRAUSS

*admitted to a bar other
than DC; practice limited
to federal courts & agencies

HARVEY B FOX (1941-2010)

AFFILIATE

AM&S TRADE SERVICES LLC

CARLOS MOORE, PRESIDENT

**VIA HAND DELIVERY**

The Honorable James R. Holbein
Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC 20436

Re:  *Certain Portable Electronic Devices and Related Software*, ITC Inv. No. 337-TA-_____

Dear Secretary Holbein:

Enclosed for filing on behalf of Complainant Apple Inc., f/k/a Apple Computer, Inc. ("Apple") are documents in support of Apple's request that the Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended.  A request for confidential treatment of Confidential Exhibits 22 and 26-27 is included with this letter.

Accordingly, Complainant submits the following documents for filing:

1. An original and twelve (12) copies of the verified Non-Confidential Complaint, and an original and six (6) copies of the accompanying exhibits, with Confidential Exhibits 22 and 26-27 segregated from the other material submitted (Commission Rules 201.6(c), 210.4(f)(3)(i) and 210.8(a));

2. Three (3) additional copies of both the verified Non-Confidential Complaint and accompanying Non-Confidential exhibits for service upon each proposed respondent (Commission Rules 210.4(f)(3)(i), 210.8(a) and 210.11(a));

3. Three (3) additional copies of Confidential Exhibits 22 and 26-27 for service upon each proposed respondent (Commission Rules 210.4(f)(3)(i), 210.8(a) and 210.11(a));

The Honorable James R. Holbein
July 8, 2011
Page 2

4.  Certified copies of United States Patent Nos. 7,844,915 B2 ("the '915 patent"); 7,469,381 B2 (the '381 patent"); 7,084,859 B1 ("the '859 patent"); 7,920,129 B2 ("the '129 patent"); and 6,956,564 B1 ("the '564 patent") and legible copies of each patent included in the Complaint as Exhibits 1- 5, respectively;

5.  Original certified and additional unbound copies of the assignments for the '915, '381, '859, '129 and '564 patents listed in the verified Complaint as Exhibits 6–10;

6.  Original certified copies of the prosecution history of the '915 Patent (Appendix A), the '381 Patent (Appendix B), the '859 Patent (Appendix C), the '129 Patent (Appendix D) and the '564 patent (Appendix E); one additional unbound copy of each, and 3 additional copies on CD's;

7.  Four (4) copies on CD of each reference document identified in the prosecution histories of the patents-at-issue (Appendices F through J) (Commission Rule 210.12(c)(3));

8.  One (1) additional copy of the Non-confidential Complaint for service upon the Embassy of Taiwan, Republic of China, in Washington, D.C.  (19 C.F.R.  §§ 210.8(a) and 210.11(a)(1)); and

9.  Physical Exhibits 1-3 as identified in the Complaint.

A certification is provided below pursuant to Commission Rules 201.6(b) and 210.5(d) requesting confidential treatment of Confidential Exhibits 22 and 26-27.

The information for which confidential treatment is sought is proprietary commercial information not otherwise publicly available.  Specifically, Confidential Exhibits 22 and 26-27 contain business information not otherwise publicly available and contain proprietary information regarding Apple's domestic industry and investments.  The information described above qualifies as confidential business information pursuant to Rule 201.6(a) because:

a.  it is not available to the public;
b.  unauthorized disclosure of such information could cause substantial harm to the competitive position of Apple; and
c.  its disclosure could impair the Commission's ability to obtain information necessary to perform its statutory function. Thank you for your attention to this matter.



The Honorable James R. Holbein
July 8, 2011
Page 3

     Please contact me if you have any questions.

                 Respectfully submitted,

                 V. James Adduci II

VJA:tse
Enclosures
Apple700111-12.doc

# UNITED STATES INTERNATIONAL TRADE COMMISSION
# WASHINGTON, D.C.

**In the Matter of**

**CERTAIN PORTABLE ELECTRONIC
DEVICES AND RELATED SOFTWARE**

Investigation No. 337-TA-_____

## COMPLAINT OF APPLE INC. UNDER
## SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

**COMPLAINANT**

Apple Inc., f/k/a Apple Computer, Inc.
1 Infinite Loop
Cupertino, CA 95014
Telephone:  (408) 996-1010

**PROPOSED RESPONDENTS**

HTC Corp.
23 Xinghua Road, Taoyuan 330
Taiwan, Republic of China
Telephone:  +886 3 3753252

HTC America, Inc.
13920 SE Eastgate Way, Suite 400
Bellevue, Washington 98005
Telephone:  (425) 679-5318

Exedea, Inc.
5950 Corporate Drive
Houston, TX 77036
Telephone:  (213) 356-6652

**COUNSEL FOR COMPLAINANT**
V. James Adduci II
Jonathan J. Engler
David H. Hollander, Jr.
Rowan E. Morris
**Adduci Mastriani & Schaumberg LLP**
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC  20036

Mark D. Fowler
Aaron Wainscoat
Erik Fuehrer
**DLA Piper LLP (US)**
2000 University Avenue
East Palo Alto, CA. 94303

Tiffany Miller
Robert Williams
**DLA Piper LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101
Tel:  619-699-2700
Fax: 619-699-2701

David Alberti
Elizabeth Day
Clayton Thompson
Yakov Zolotorev
**Feinberg, Day, Alberti & Thompson, LLP**
401 Florence Street, Suite 200
Palo Alto, CA 94301

George Riley
**O'Melveny & Meyers LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

Jon Yuen Chow
**O'Melveny & Meyers LLP**
400 South Hope Street
Los Angeles, CA 90071

Kenneth H. Bridges
Michael T. Pieja
James Shimota
**Bridges Mavrakakis LLP**
3000 El Camino Real
One Palo Alto Square
Palo Alto, CA 94306

TABLE OF SUPPORTING MATERIALS

EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Certified copy of U.S. Patent No. 7,844,915 B2 |
| 2 | Certified copy of U.S. Patent No. 7,469,381 B2 |
| 3 | Certified copy of U.S. Patent No. 7,084,859 B1 |
| 4 | Certified copy of U.S. Patent No. 7,920,129 B2 |
| 5 | Certified copy of U.S. Patent No. 6,956,564 B1 |
| 6 | Certified copy of Assignment Records for U.S. Patent No. 7,844,915 B2 |
| 7 | Certified copy of Assignment Records for U.S. Patent No. 7,469,381 B2 |
| 8 | Certified copy of Assignment Records for U.S. Patent No. 7,084,859 B1 |
| 9 | Certified copy of Assignment Records for U.S. Patent No. 7,920,129 B2 |
| 10 | Certified copy of Assignment Records for U.S. Patent No. 6,956,564 B1 |
| 11 | List of Foreign Counterpart Patents and Applications |
| 12 | Infringement Claim Chart for U.S. Patent No. 7,844,915 B2 |
| 13 | Infringement Claim Chart for U.S. Patent No. 7,469,381 B2 |
| 14 | Infringement Claim Chart for U.S. Patent No. 7,084,859 B1 |
| 15 | Infringement Claim Chart for U.S. Patent No. 7,920,129 B2 |
| 16 | Infringement Claim Chart for U.S. Patent No. 6,956,564 B1 |
| 17 | Documents detailing purchase of HTC Evo 4G |
| 18 | Documents detailing purchase of HTC Flyer |
| 19 | Domestic Industry Claim Chart for U.S. Patent No. 7,844,915 B2 |
| 20 | Domestic Industry Claim Chart for U.S. Patent No. 7,469,381 B2 |
| 21 | Domestic Industry Claim Chart for U.S. Patent No. 7,084,859 B1 |
| 22 | Domestic Industry Claim Chart for U.S. Patent No. 7,920,129 B2 **[CONFIDENTIAL]** |
| 23 | Domestic Industry Claim Chart for U.S. Patent No. 6,956,564 B1 |
| 24 | Apple Inc. SEC Form 10-K (2010) |
| 25 | HTC Evo 4G User Guide |
| 26 | Declaration of Boris Teksler **[CONFIDENTIAL]** |
| 27 | List of Licensees for the Asserted Patents **[CONFIDENTIAL]** |
| 28 | Infringement Claim Chart for U.S. Patent No. 6,956,564 B1 – Amended Claim 4 |

APPENDICES

| Appendix Item | Description |
|---|---|
| A | Certified copy of Prosecution History for U.S. Patent No. 7,844,915 B2 |
| B | Certified copy of Prosecution History for U.S. Patent No. 7,469,381 B2 |
| C | Certified copy of Prosecution History for U.S. Patent No. 7,084,859 B1 |
| D | Certified copy of Prosecution History for U.S. Patent No. 7,920,129 B2 |
| E | Certified copy of Prosecution History for U.S. Patent No. 6,956,564 B1 |
| F | Cited References for U.S. Patent No. 7,844,915 B2 |
| G | Cited References for U.S. Patent No. 7,469,381 B2 |
| H | Cited References for U.S. Patent No. 7,084,859 B1 |
| I | Cited References for U.S. Patent No. 7,920,129 B2 |
| J | Cited References for U.S. Patent No. 6,956,564 B1 |

PHYSICAL EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Apple iPhone 4 (in box with packaging) |
| 2 | HTC EVO 4G (in box with packaging) |
| 3 | HTC Flyer (in box with packaging) |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................. 1

II.     COMPLAINANT .................................................................................. 4

III.    THE PROPOSED RESPONDENTS .................................................... 5

IV.     THE TECHNOLOGY AND PRODUCTS AT ISSUE ......................... 6

V.      THE ASSERTED PATENTS AND NON-TECHNICAL
        DESCRIPTIONS OF THE INVENTIONS ........................................... 8

        A.      Overview and Ownership of Asserted Patents............................ 8

        B.      Non-Technical Description of the '915 Patent ........................... 8

        C.      Non-Technical Description of the '381 Patent ........................... 9

        D.      Non-Technical Description of the '859 Patent ......................... 10

        E.      Non-Technical Description of the '129 Patent ......................... 11

        F.      Non-Technical Description of the '564 Patent ......................... 11

        G.      Foreign Counterparts .............................................................. 12

        H.      Licenses.................................................................................. 12

VI.     UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS-PATENT
        INFRINGEMENT............................................................................... 13

        A.      The '915 Patent ...................................................................... 14

        B.      The '381 Patent ...................................................................... 14

        C.      The '859 Patent ...................................................................... 15

        D.      The '129 Patent ...................................................................... 15

        E.      The '564 Patent ...................................................................... 16

VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE .............. 17

VIII.   HARMONIZED TARIFF SCHEDULE ITEM NUMBERS ................ 17

IX.     RELATED LITIGATION ................................................................... 18

X.      THE DOMESTIC INDUSTRY .......................................................... 18

        A.      Apple's Investments In The Domestic Industry ...................... 19

        B.      Apple's Practice of the Asserted Patents ................................ 22

XI.     RELIEF REQUESTED........................................................................ 23

## I.      INTRODUCTION

1.      Apple Inc. ("Apple") is a leading designer and manufacturer of personal computers, mobile communications devices, portable digital media players and software. Apple's portable electronic devices, such as the iPhone, iPad and iPod touch, are groundbreaking products that revolutionized their respective industries, enjoy enormous commercial success and popular acclaim, and continue to lead their fields in innovation, performance and ease of use.

2.      Apple's extraordinary record of launching technically innovative and commercially successful products reflects its deep commitment to research and development. Throughout its history, Apple has made substantial investments in research and development in a wide variety of technical fields, including computer hardware and software, graphical and touch-based user interfaces, digital media players and personal communications. Substantially all of this research and development has been conducted by Apple employees located in the company's headquarters in Cupertino, California.

3.      Apple's commitment to research and development has led to pioneering innovations that have laid the groundwork for, and are used extensively in, each of Apple's product lines, including the iPhone, iPad and iPod touch. Apple has been awarded patent protection for certain of its innovations by the United States Patent and Trademark Office ("PTO"). Apple continues to seek and obtain patent protection for its recent and ongoing innovations, including innovations related to its iPhone, iPad and iPod touch products.

4.      HTC Corp. ("HTC"), HTC America, Inc. ("HTC America") and Exedea, Inc. ("Exedea") (collectively, "Respondents") manufacture, import, sell for importation,

sell after importation, and service and repair portable electronic devices, including cellular phones, smartphones, tablet computers and other handheld devices, and software to be loaded into and used on such devices and components of such devices (collectively, the "Accused Products").  The Accused Products manufactured, imported and sold by Respondents incorporate, without license, many technologies developed by Apple and protected by patents issued to and owned by Apple.

5.     Accordingly, Apple files this complaint under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. §1337, based on the unlawful importation into the United States, the sale for importation into the United States and the sale within the United States after importation by the Respondents of certain portable electronic devices and related software that infringe certain claims of U.S. Patent Nos. 7,844,915 (the "'915 patent"), 7,469,381 (the "'381 patent"), 7,084,859 (the "'859 patent"), 7,920,129 (the "'129 patent") and 6,956,564 (the "'564 patent") (collectively, the "Asserted Patents").

6.     The Asserted Patents include groundbreaking technologies developed by Apple in conjunction with the development of its innovative iPhone, iPad and iPod touch products.  The presently asserted claims of the Asserted Patents are as follows:

| U.S. Patent Number | Asserted Claims |
|---|---|
| 7,844,915 | 1-5, 7-12, 14-19 and 21 |
| 7,469,381 | 1-20 |
| 7,084,859 | 14-20, 25, 28 |

| 7,920,129 | 1-3, 5-12, 14-19, 21-22, 24-28 |
| 6,956,564 | 28, 36[1] |

7.      Apple owns all right, title and interest in and to each of the Asserted Patents.  Certified copies of the Asserted Patents are attached as Exhibits 1 through 5. Certified copies of the assignment records of the Asserted Patents are attached as Exhibits 6 through 10.

8.      A domestic industry as required by 19 U.S.C. §§1337(a)(2) and (3) exists in the United States relating to the Apple products protected by the Asserted Patents.

9.      Apple seeks as relief a permanent limited exclusion order prohibiting infringing portable electronic devices and related software, manufactured or sold by or on behalf of Respondents, from entry into the United States.   Apple further seeks a

---

[1] At the time of filing this Complaint, the '564 patent was subject to a reissue proceeding, wherein claim 4 was amended and claim 108, which depends from claim 4, was added.  Both of these claims have been allowed and are expected to issue shortly. Apple intends to file a motion to amend this complaint to add the reissued amended claim 4 and add issued claim 108 to the list of asserted claims for the '564 patent once the reissue patent issues. At the time of filing this Complaint, Apple asserts infringement of existing claims 28 and 36. The language of the amended claim 4 and issued claim 108 is reproduced below in its entirety, and an exemplary infringement claim chart for amended claim 4 is attached as a courtesy as Exhibit 28:

Claim 4 (Amended):

A portable computer comprising: at least one acceleration detection means responsive to movement of the computer to produce an electrical output signal representative of such movement; processing means responsive to the output of said movement detection means to determine detected movement data defining a user's intention; the processing means using said data to provide a mode response selected from a multiplicity of stored possible modes; and wherein the processing means is responsive to detected movement data to determine a most likely orientation of a computer display means, the processing means causing the displayed information to be oriented accordingly.

Claim 108 (New):

The portable computer of claim 4, wherein the at least one acceleration detection means comprises a plurality of acceleration detection means

permanent cease and desist order prohibiting Respondents from marketing, distributing, selling, offering for sale, warehousing inventory for distribution or otherwise transferring or bringing into the United States infringing portable electronic devices and related software.

## II.   COMPLAINANT

10.     Apple is a California corporation having its principal place of business at 1 Infinite Loop, Cupertino, California 95014.

11.     Apple designs, develops, markets and sells the iPhone, the iPad and the iPod products (which include the iPod touch) as well as a variety of related products, accessories, peripherals and services, including warranty and customer support.  Apple also designs, develops, markets and sells the iOS operating system for the iPhone, iPad and iPod touch.  Apple provides a complete software development kit ("SDK") providing tools for programmers to create their own applications for the iPhone, iPad and iPod touch.  Apple sells its products worldwide through its online stores, its own retail stores, its direct sales force and third-party wholesalers, resellers and value-added resellers.

12.     Apple researched and developed the technology that is protected by the Asserted Patents.  Apple has made and continues to make significant investment in the design and development of products protected by the Asserted Patents, as described in Section X below.  These include the iPhone, iPad and iPod touch products.

13.     Apple uses the technologies covered by the Asserted Patents in the United States as described in Section X below.  In connection with the exploitation of these technologies, Apple has made and continues to make significant investment in the United States in facilities, equipment, labor and capital also as described in Section X below.

4

### III.   THE PROPOSED RESPONDENTS

14.   On information and belief, HTC is a corporation organized and existing under the laws of Taiwan and having its principal place of business at 23 Xinghua Road, Taoyuan City, Taoyuan County 330, Taiwan, Republic of China.   On information and belief, HTC is engaged in the design, manufacture, importation into the United States and sale after importation of the Accused Products.

15.   On information and belief, HTC (BVI) Corp. is a wholly-owned subsidiary of Respondent HTC.  HTC (BVI) Corp., while not a Respondent, is engaged in activities on behalf of its parent, Respondent HTC, and is itself the parent company of an additional Respondent.

16.   On information and belief, HTC America Holding, Inc. is a wholly-owned subsidiary of Respondent HTC.  HTC America Holding, Inc., while not a Respondent, is engaged in activities on behalf of its parent, Respondent HTC, and is itself the parent company of an additional Respondent.

17.   On information and belief, HTC America is a corporation organized and existing under the laws of the State of Washington and having a principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005.   On information and belief, HTC America is a wholly-owned subsidiary of HTC America Holding, Inc.  On information and belief, HTC America performs several services to support the importation and sale of Accused Products into and within the United States, including marketing of the Accused Products, repair of the Accused Products and other after-sale services, such as supporting and configuring the Accused Products, as well as

interfacing with U.S.-based customers and distributors to conform the Accused Products to purchaser requests.

18.    On information and belief, Exedea is a corporation organized and existing under the laws of the State of Texas and having a principal place of business at 5950 Corporate Drive, Houston, Texas 77036.  On information and belief, Exedea is a wholly-owned subsidiary of HTC (BVI) Corp.  On information and belief, Exedea, inter alia, imports the Accused Products into the United States and distributes and sells the Accused Products after their importation into the United States.

## IV.    THE TECHNOLOGY AND PRODUCTS AT ISSUE

19.    The technologies at issue relate generally to hardware and software used in a variety of portable electronic devices, including mobile communication equipment imported into and sold within the United States by or on behalf of Respondents.  The technologies at issue in the '915, '381 and '859 patents relate generally to software architectures, frameworks and implementations for user interfaces that can be utilized in portable electronic devices.  The technology at issue in the '129 patent relates generally to hardware for touch screens that can be used in portable electronic devices.  The technology at issue in the '564 patent relates generally to movement or acceleration sensors that can be used in portable electronic devices.

20.    The Accused Products include portable electronic devices, including but not limited to cellular phones, smartphones and tablet computers, together with software designed for use on and intended to be loaded onto, such devices.  The Accused Products are imported into and sold within the United States by or on behalf of Respondents.

21.     Certain imported Accused Products comprise, include or contain software based on an operating system known as "Android." These products are referred to herein as the "Accused HTC Android Products." Exemplary Accused HTC Android Products include at least the following smartphones: HTC Droid Incredible, the HTC Droid Incredible 2, the HTC Wildfire, the HTC T-Mobile myTouch 3G, the HTC T-Mobile myTouch 3G Slide, the HTC T-Mobile myTouch 4G, the HTC T-Mobile G1, the HTC T-Mobile G2, the HTC Evo 4G, the HTC Aria, the HTC Desire, the HTC Hero, the HTC Merge, the HTC Inspire 4G, the HTC Evo Shift 4G and the HTC Thunderbolt 4G; and at least the following tablet computers: the HTC Flyer.

22.     Certain Accused Products comprise, include or contain a capacitive touch sensor panel including a set of traces that serve the dual functions of driving the touch sensor panel and also shielding another set of traces from the effects of capacitive coupling. These products are referred to herein as the "Accused HTC Capacitive Touch Panel Products." Exemplary Accused HTC Capacitive Touch Panel Products include at least the HTC Droid Incredible, the HTC Droid Incredible 2, the HTC EVO 4G, the HTC Desire, the HTC T-Mobile G2, the HTC Inspire 4G, and the HTC Thunderbolt.[2]

---

[2] The portable electronic devices listed in Section IV are a shorthand summary of products currently accused of infringement by Apple. The specific products listed therein are exemplary only and are not intended to exclusively define or otherwise limit the category of Accused Products. For instance, Respondents have announced their intention to release additional products that will infringe the Asserted Patents, such as the HTC Evo 3D and the HTC Evo View 4G. *See* http://www.eweek.com/c/a/Mobile-and-Wireless/HTC-Evo-3D-Evo-View-4G-Coming-June-24-from-Sprint-774936. Apple may, if necessary, amend or modify the above descriptions, or add additional exemplary products, as discovery progresses.

## V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTIONS OF THE INVENTIONS

### A.    Overview and Ownership of Asserted Patents

23.    As set forth below, Apple owns by assignment the entire right, title and interest in and to each of the Asserted Patents.  *See* Exhibits 6 through 10.

24.    Pursuant to Commission Rule 210.12(c), certified copies of the prosecution histories of each of the Asserted Patents have been submitted with this Complaint as Appendices A through E.  Pursuant to Commission Rule 210.12(c), the cited references for each of the Asserted Patents also have been submitted with this Complaint as Appendices F through J.

### B.    Non-Technical Description of the '915 Patent[3]

25.    The '915 patent, entitled "Application Programming Interfaces for Scrolling Operations" issued on November 30, 2010 to inventors Andrew Platzer and Scott Herz.   The '915 patent issued from United States Patent Application No. 11/620,717 filed on January 7, 2007.  The '915 patent expires on January 7, 2027.  Apple owns by assignment the entire right, title and interest in and to the '915 patent.

26.    The '915 patent has twenty-one claims:  three independent claims and eighteen dependent claims.

---

[3] This description and any other non-technical descriptions within this Complaint are for illustrative purposes only.  Nothing in any non-technical description contained within this Complaint is intended to, either implicitly or explicitly, express any position regarding the proper construction of any claim of the Asserted Patents.

27.     The '915 patent relates generally to user interface software interacting with a software application to enable the recognition and processing of gestures on a multitouch display.   Broadly speaking, the '915 patent relates to an application programming interface for implementing scrolling and multitouch gesturing operations on a portable electronic device including a multitouch-sensitive display.

### C.     Non-Technical Description of the '381 Patent

28.     The '381 patent, entitled "List Scrolling and Document Translation, Scaling, and Rotation On A Touch-Screen Display," issued on December 23, 2008 to inventor Bas Ording.  The '381 patent issued from Application No. 11/956,969 filed on December 14, 2007.  An ex parte request for reexamination was filed on April 28, 2010. On April 26, 2011, claims 1-20 of the '381 patent emerged from reexamination without amendment.  The '381 patent expires on December 14, 2027.  Apple owns by assignment the entire right, title and interest in and to the '381 patent.

29.     The '381 patent contains twenty claims:   three independent claims and seventeen dependent claims.

30.     The '381 patent relates to a method and apparatus for use in conjunction with a portable electronic device with a touch screen display.  Broadly speaking, the '381 patent relates to a scrolling method for a touch screen display that allows a user to scroll to and past the end of a displayed document in a natural and intuitive manner by using a "bounce-back" or "rubber band" effect when the edge of a document is reached.  By way of example, a user using a portable electronic device that practices the claimed invention of the '381 patent may scroll an electronic document in a downward direction with their finger.  If the bottom of the electronic document is reached and the user's finger is still

**9**

detected on or near the touch screen display, an area beyond the bottom of the document is displayed; that is, the document temporarily scrolls past its bottom-most edge.  After the finger is no longer detected on or near the touch screen display, the document "snaps back" such that the area beyond the bottom of the document is no longer displayed.

**D.    Non-Technical Description of the '859 Patent**

31.    The '859 patent, entitled "Programmable Tactile Touch Screen Displays and Man-Machine Interfaces for Improved Vehicle Instrumentation and Telematics," issued on August 1, 2006 to inventor Timothy Pryor.  The '859 patent issued from United States Patent Application No. 09/789,538 filed on February 22, 2001.  A request for reexamination was filed on June 10, 2009.  The '859 patent emerged from reexamination on May 17, 2011.  The '859 patent expires on September 18, 2014.  Apple owns by assignment the entire right, title and interest in and to the '859 patent.

32.    The '859 patent has thirty-nine claims:  fourteen independent claims and twenty-five dependent claims.

The '859 patent generally relates to methods for controlling computer systems using multitouch sensitive display screens – that is, touch screens that can process inputs from multiple fingers simultaneously.  The '859 patent relates generally to a number of gestures that a user can use on such screens to control the contents of the screen or data presented on the screen or otherwise represented in the computer system.

**E.     Non-Technical Description of the '129 Patent**

33.     The '129 patent, entitled "Double-Sided Touch-Sensitive Panel With Shield And Drive Combined Layer," issued on April 5, 2011 to inventors Steve Porter Hotelling and Brian Richards Land.  The '129 patent issued from United States Patent Application No. 11/650,182 filed on January 3, 2007.  The '129 patent expires on January 23, 2030.  Apple owns by assignment the entire right, title and interest in and to the '129 patent.

34.     The '129 patent has 29 claims: 9 independent claims and 20 dependent claims.

35.     The '129 patent generally relates to designs for capacitive touch-sensitive panels.  In general, capacitive touch screens use two sets of conductive traces, known as row traces and column traces.  The touch screen operates by sensing changes in the electrical capacitance at junctions between the sets of traces that occurs when a finger or other object approaches a particular place on the screen.  The '129 patent discloses, among other things, the benefits associated with placing the drive traces between the sense traces and the display element.  The '129 patent further teaches advantageously shielding the column traces from electrical interference by controlling the width of the row traces.

**F.     Non-Technical Description of the '564 Patent**

36.     The '564 patent, entitled "Portable Computers," issued on October 18, 2005 to inventor Hilary Lyndsay Williams.  The '564 patent issued from United States Patent Application No. 09/171,921 filed on October 8, 1998.  The '564 patent expires on

October 8, 2018.  Apple owns by assignment the entire right, title and interest in and to the '564 patent.

37.    The '564 patent has 36 claims:  14 independent claims and 22 dependent claims.

38.    The '564 patent generally relates to the implementation and use of accelerometers and movement sensors in portable electronic devices, including handheld computing devices, to improve viewing orientation.   For example, the '564 patent discloses using accelerometers or movement sensors to detect changes in the orientation of an electronic device and then adjusting the display of information to match the most likely orientation of the device.

### G.    Foreign Counterparts

39.    A list of foreign counterparts to the Asserted Patents is included with this Complaint as Exhibit 11.  Apple owns all right, title and interest in and to each of these foreign counterparts.  Apple is not aware of any other foreign counterparts or foreign counterpart applications corresponding to the Asserted Patents that have been issued, abandoned, denied or which remain pending.

### H.    Licenses

40.    Confidential Exhibit 27 includes a list of licensed entities for the Asserted Patents.   On information and belief there are no other current licenses involving the Asserted Patents.

## VI.   UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS-PATENT INFRINGEMENT

41.     On information and belief, the Respondents manufacture abroad, sell for importation into the United States, import into the United States, and/or sell within the United States after importation, portable electronic devices and components thereof that infringe one or more of the Asserted Patents.

42.     Respondents directly infringe and/or will infringe the Asserted Patents by making, using, selling, offering for sale, and importing the articles claimed by, or practicing the claimed methods of, the Asserted Patents.   Moreover, Respondents are aware of the Asserted Patents, at least because Respondents were provided with a copy of this Complaint via registered mail as of the date of its filing.   In addition, as set forth below, the '381 patent already is the subject of a complaint filed by Apple against the Respondents on March 2, 2010, in Apple Inc. v. High Tech Computer Corp. a/k/a HTC Corp. et al., currently pending in the District of Delaware, and concurrent with the filing of this complaint, Apple will file a civil action in the United States District Court for the District of Delaware accusing Respondents of infringing the '915 patent, the '859 patent, the '129 patent and the '564 patent.

43.     On information and belief, Respondents indirectly infringe the Asserted Patents by contributing to and/or inducing the infringement of these patents by end users of their products because Respondents know that the sale of the accused portable electronic devices, together with user manuals, service manuals, guides, and other materials, constitute infringing use of the portable electronic devices and related software.

## A.      The '915 Patent

44.      On information and belief, the Accused HTC Android Products infringe at least claims 1-5, 7-12, 14-19 and 21 of the '915 patent.  Additionally, on information and belief, users making routine use of the Accused HTC Android Products infringe at least claims 1-5, 7-12, 14-19 and 21 of the '915 patent.  On information and belief, as set forth in paragraph 43, above, Respondents are aware of the '915 patent.  Further, on information and belief, Respondents knowingly induce users of the Accused HTC Android Products to infringe at least claims 1-5, 7-12, 14-19 and 21 of the '915 patent. On information and belief, Respondents contribute to infringement of at least claims 1-5, 7-12, 14-19 and 21 of the '915 patent because Respondents know that the Accused HTC Android Products are made for use in an infringement of these claims and are not staple articles of commerce suitable for substantial noninfringing use.  An exemplary claim chart comparing the asserted independent claims of the '915 patent to an exemplary one of the Accused HTC Android Products (*i.e.*, the HTC EVO 4G) is attached as Exhibit 12.

## B.      The '381 Patent

45.      On information and belief, the Accused HTC Android Products infringe claims 1-20 of the '381 patent.  Additionally, on information and belief, users making routine use of the Accused HTC Android Products infringe claims 1-20 of the '381 patent.  On information and belief, as set forth in paragraph 43, above, Respondents are aware of the '381 patent.  Further, on information and belief, Respondents knowingly induce users of the Accused HTC Android Products to infringe claims 1-20 of the '381 patent.  On information and belief, Respondents contribute to infringement of claims 1-20 of the '381 patent because Respondents know that the Accused HTC Android Products

14

are made for use in an infringement of these claims and are not staple articles of commerce suitable for substantial noninfringing use.   An exemplary claim chart comparing the asserted independent claims of the '381 patent to an exemplary one of the Accused HTC Android Products (*i.e.*, the HTC EVO 4G) is attached as Exhibit 13.

### C.   The '859 Patent

46.   On information and belief, the Accused HTC Android Products infringe at least claims 14-20, 25 and 28 of the '859 patent.  Additionally, on information and belief, users making routine use of the Accused HTC Android Products infringe at least claims 14-20, 25 and 28 of the '859 patent.  On information and belief, as set forth in paragraph 43, above, Respondents are aware of the '859 patent.  Further, on information and belief, Respondents knowingly induce users of the Accused HTC Android Products to infringe at least claims 14-20, 25 and 28 of the '859 patent.   On information and belief, Respondents contribute to infringement of at least claims 14-20, 25 and 28 of the '859 patent because Respondents know that the Accused HTC Android Products are made for use in an infringement of these claims and are not staple articles of commerce suitable for substantial noninfringing use.   An exemplary claim chart comparing the asserted independent claims of the '859 patent to an exemplary one of the Accused HTC Android Products (*i.e.*, the HTC EVO 4G) is attached as Exhibit 14.

### D.   The '129 Patent

47.   On information and belief, the Accused HTC Capacitive Touch Panel Products infringe at least claims 1-3, 5-12, 14-19, 21-22, 24-28 of the '129 patent. Additionally, on information and belief, users making routine use of the Accused HTC Capacitive Touch Panel Products infringe at least claims 1-3, 5-12, 14-19, 21-22, 24-28

of the '129 patent.  On information and belief, as set forth in paragraph 43, above, Respondents are aware of the '129 patent.  Further, on information and belief, Respondents knowingly induce users of the Accused HTC Capacitive Touch Panel Products to infringe at least claims 1-3, 5-12, 14-19, 21-22, 24-28 of the '129 patent.  On information and belief, Respondents contribute to infringement of at least claims 1-3, 5-12, 14-19, 21-22, 24-28 of the '129 patent because Respondents know that the Accused HTC Capacitive Touch Panel Products are made for use in an infringement of these claims and are not staple articles of commerce suitable for substantial noninfringing use. An exemplary claim chart comparing the asserted independent claims of the '129 patent to an exemplary one of the Accused HTC Capacitive Touch Panel Products (*i.e.*, the HTC EVO 4G) is attached as Exhibit 15.

> **E.     The '564 Patent**

48.    On information and belief, the Accused HTC Android Products infringe at least claims 28 and 36 of the '564 patent.  Additionally, on information and belief, users making routine use of the Accused HTC Android Products infringe at least claims 28 and 36 of the '564 patent.  On information and belief, as set forth in paragraph 43, above, Respondents are aware of the '564 patent.  Further, on information and belief, Respondents knowingly induce users of the Accused HTC Android Products to infringe at least claims 28 and 36 of the '564 patent.  On information and belief, Respondents contribute to infringement of at least claims 28 and 36 of the '564 patent because Respondents know that the Accused HTC Android Products are made for use in an infringement of these claims and are not staple articles of commerce suitable for substantial noninfringing use.  An exemplary claim chart comparing the asserted

16

independent claims of the '564 patent to an exemplary one of the Accused HTC Android Products (*i.e.*, the HTC EVO 4G) is attached as Exhibit 16.

## VII.   SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

49.    Respondents, either themselves or through subsidiaries or third parties acting on behalf of Respondents, are engaged in the manufacture, importation, sale for importation, offer for sale after importation, sale and/or use after importation into the United States of infringing portable electronic devices and related software.

50.    The HTC Evo 4G is manufactured in Taiwan.   (*See* Exhibit 17, photograph of an HTC Evo 4G (indicating that device is "Made in Taiwan").)  The HTC Evo 4G is imported into the United States.  For example, the photographed HTC Evo 4G was purchased from Radio Shack in Salt Lake City, Utah on May 31, 2011.  The receipt for this purchase is attached as Exhibit 17.  The photographed HTC Evo 4G device, in its packaging, is submitted as Physical Exhibit 2.

51.    The HTC Flyer is manufactured in Taiwan. (See Exhibit 18, photograph of an HTC Flyer (indicating that device is "Made in Taiwan").  The HTC Flyer is imported into the United States.   For example, the photographed HTC Flyer was purchased from Best Buy in San Diego, California on May 31, 2011.  The receipt for this purchase is attached as Exhibit 18.   The photographed HTC Flyer device, in its packaging, is submitted as Physical Exhibit 3.

## VIII.   HARMONIZED TARIFF SCHEDULE ITEM NUMBERS

52.    On information and belief, the accused products fall within at least the following classification of the Harmonized Tariff Schedule ("HTS") of the United States: 8517.12.00 (mobile phone) and 8471.30.01; 8471.41.01 or 8471.49.00 (portable

computers).  The HTS number is intended to be for illustration only and is not exhaustive of the products accused of infringement in this Complaint.  The HTS number is not intended to limit the scope of the Investigation.

## IX.    RELATED LITIGATION

53.    At present, the '381 patent is the subject of a complaint filed by Apple on March 2, 2010, in Apple Inc. v. High Tech Computer Corp. a/k/a HTC Corp., HTC (BVI) Corp., HTC America, Inc. and Exedea, Inc., Civil Action 10-167-GMS, currently pending in the District of Delaware.  In addition, the '381 patent and the '915 patent are the subject of a complaint filed by Apple on April 15, 2011, in Apple Inc. v. Samsung Electronics Co., LTD., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC, Civil Action 11-1846-LB, currently pending in the Northern District of California.

54.    Concurrent with the filing of this complaint, Apple will file a civil action in the United States District Court for the District of Delaware accusing Respondents of infringing the '915 patent, the '859 patent, the '129 patent and the '564 patent.

55.    None of the other Asserted Patents has been the subject of any other foreign or domestic court or agency litigation.

## X.    THE DOMESTIC INDUSTRY

56.    There is a domestic industry, as defined under 19 U.S.C. § 1337(a)(3)(A), (B), and (C), comprising significant investments in physical operations, employment of labor and capital and exploitation of the Asserted Patents.

**A.     Apple's Investments In The Domestic Industry**

57.     Apple makes extensive use of the inventions claimed in the Asserted Patents in numerous products, including the iPhone, iPad and iPod touch products.  The iPhone, iPad and iPod touch products are developed in the United States, manufactured abroad, and sold within the United States.  As set forth in greater detail below, these products collectively practice each of the Asserted Patents.

58.     Apple has made significant investment in plant and equipment with respect to the Apple products that practice the Asserted Patents.  Apple's headquarters is located in Cupertino, California.  (*See* Exhibit 24, Apple 2010 Form 10-K at 21.)  As of September 25, 2010,[4] Apple owned facilities for research and development and corporate functions in Cupertino, California, including land for the future development of its second corporate campus in Cupertino, California.  (*Id.* at 21.)  Apple also owned a data center in Newark, California and land in North Carolina for a new data center facility currently under construction.  (*Id.*)  Substantially all of the research, development, design, engineering, and testing of the Apple products that practice the Asserted Patents was done by Apple employees using or working within Apple's headquarters or facilities in Cupertino, or in Apple's Newark data center facilities.

---

[4] Apple's fiscal year is the 52 or 53-week period that ends on the last Saturday of September. Unless otherwise stated, all information presented is based on Apple's fiscal calendar. (*See* Exhibit 24, Apple 2010 Form 10-K at 1.)

59.     Moreover, as of September 25, 2010, Apple had opened a total of 317 retail stores, including 233 stores in the United States. (Exhibit 24 at 2.)  Apple has made substantial investments in its 233 United States retail stores which, in addition to sales, provide product advice, service, and training for Apple hardware and software, including the Apple products that practice the Asserted Patents.  (*Id.*)  Apple also maintains customer service centers at its retail locations called Genius Bars.  Genius Bars are staffed by specially trained employees (or "Geniuses") who provide support services for Apple products that practice the Asserted Patents, as well as Apple's other products, such as troubleshooting problems, identifying needed repairs, and training customers to use Apple's products.  Apple uses its Genius Bars to create a personal relationship with its customers that is unique in the industry.  During 2010, Apple's capital expenditures for retail store facilities was approximately $404 million.  (Exhibit 24 at 41.)

60.     Apple has made substantial investments in the Apple products that practice the Asserted Patents, including, by way of example, investments in engineering, research, and development.   Detailed information regarding Apple's research and development expenditures may be found in the accompanying Confidential Declaration of Boris Teksler, Apple's Director of Patent Licensing and Strategy.  (*See* Exhibit 26, Teksler Decl., ¶5.)  Substantially all of the research, development, design, engineering, and testing of the Apple products that practice the Asserted Patents was done by Apple employees working within the United States. (*Id.*)

61.     Apple has been and is engaged in a significant employment of labor with respect to the Apple products that practice the Asserted Patents.  As of September 25, 2010, Apple had approximately 46,600 full-time equivalent employees and an additional

2,800 temporary equivalent employees and contractors.  (Exhibit 24 at 10.)  Most of Apple's key employees are located in Silicon Valley, California.  (*Id.* at 17.) Substantially all of the research, development, design, engineering, and testing of the Apple products that practice the Asserted Patents was done by Apple employees working within the United States.  (*See* Exhibit 26, ¶ 5.)

62.     Apple has established a network of authorized service centers in the United States to provide repair and replacement services for Apple products, including the Apple products that practice the Asserted Patents.  For instance, Apple has developed a training and certification program for Apple-certified technicians to ensure that Apple's customers receive industry-leading support for its iPhone, iPad and iPod touch products and related software and services.  Apple has also established an extensive support program for developers to create applications for the iPhone, iPad and iPod touch. (Exhibit 26, ¶ 9.)

63.     For the 2010 fiscal year, Apple's net revenues were $65.23 billion, including approximately $25 billion from iPhone and related products and services, approximately $5 billion from iPad and related products and services, and approximately $8 billion from iPod product sales.  (*See* Exhibit 24 at 33; Exhibit 26, ¶ 6.)  During the 2010 fiscal year, Apple sold 40.0 million iPhone units, 7.5 million iPad units, and 50.3 million iPod units.  (*See* Exhibit 24 at 33.)  The United States represents Apple's largest geographic marketplace.  (*Id.* at 9.)  Approximately 44% of Apple's net sales in fiscal year 2010 came from sales to customers inside the United States.  (*Id.*)

64.     Additional confidential business information regarding Apple's investments in plant, equipment, labor, and research and development related to products

that incorporate technology protected by the Asserted Patents is set forth in the accompanying Teksler Declaration. (Exhibit 26.)

65.     Apple's investments in the relevant domestic industry are continuing and ongoing.

**B.      Apple's Practice of the Asserted Patents**

66.     Apple makes extensive use of the Asserted Patents in numerous different products. As noted above, Apple currently makes and sells the iPhone, iPad and iPod touch products. Each of these products practices one or more claims of each of the Asserted Patents. In particular, the iPhone 4, the iPad and the iPod touch each practices at least claims 1 and 8 of the '915 patent, at least claim 1 of the '381 patent, at least claim 28 of the '859 patent, at least claim 1 of the '129 patent, and at least claim 36 of the '564 patent. The allocation of revenue and cost items for each of these product lines is set forth in the accompanying Teksler Declaration. (*See* Exhibit 26.) Specific examples of use are described in this section, below, and charted in associated exhibits.

67.     A sample iPhone 4 is provided concurrently with this Complaint as Physical Exhibit 1.

68.     The '915 patent is practiced by Apple products including, without limitation, the iPhone, iPad, and iPod touch products. A claim chart comparing an iPhone 4 to exemplary claims 1 and 8 of the '915 patent is attached as Exhibit 19.

69.     The '381 patent is practiced by Apple products including, without limitation, the iPhone, iPad, and iPod touch products. A claim chart comparing an iPhone 4 to exemplary claim 1 of the '381 patent is attached as Exhibit 20.

22

70.     The '859 patent is practiced by Apple products including, without limitation, the iPhone, iPad, and iPod touch products.   A claim chart comparing an iPhone 4 to exemplary claim 28 of the '859 patent is attached as Exhibit 21.

71.     The '129 patent is practiced by Apple products including, without limitation, the iPhone, iPad, and iPod touch products.   A claim chart comparing an iPhone 4 to exemplary claim 1 of the '129 patent is attached as Exhibit 22.

72.     The '564 patent is practiced by Apple products including, without limitation, the iPhone, iPad, and iPod touch products.   A claim chart comparing an iPhone 4 to exemplary claim 36 of the '564 patent is attached as Exhibit 23.

## XI.     RELIEF REQUESTED

73.     WHEREFORE, by reason of the foregoing, Apple respectfully requests that the United States International Trade Commission:

(a)     Institute an immediate investigation, pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337(a)(l)(B)(i) and (b)(1), with respect to violations of Section 337 based on the importation, sale for importation, and sale after importation, into the United States of Respondents' portable electronic devices and related software, and products and components thereof made on behalf of Respondents, that infringe one or more asserted claims of the '915, '381, '859, '129 and '564 patents;

(b)     Schedule and conduct a hearing on said unlawful acts and, following said hearing;

(c)     Issue a permanent exclusion order, pursuant to 19 U.S.C. § 1337(d)(1), barring from entry into the United States all portable electronic devices and related software, and products and components thereof made by or on behalf of

23

Respondents, and products containing same, that infringe one or more asserted claims of the '915, '381, '859, '129 and '564 patents;

      (d)    Issue a permanent cease and desist order, pursuant to 19 U.S.C. § 1337(f), prohibiting Respondents, and others acting on their behalf, from importing, marketing, advertising, demonstrating, warehousing inventory for distribution, distributing, offering for sale, selling, licensing, using, or transferring outside the United States for sale in the United States any portable electronic devices and related software, and products and components containing same, that infringe one or more asserted claims of the '915, '381, '859, '129 and '564 patents; and

      (e)    Grant such other and further relief as the Commission deems just and proper based on the facts determined by the investigation and the authority of the Commission.

Dated: July _8_, 2011

Respectfully Submitted

V. James Adduci II
Jonathan J.  Engler
David H.  Hollander, Jr.
Rowan E.  Morris
**Adduci Mastriani & Schaumberg LLP**
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC  20036
Tel: 202-467-6300
Fax: 202-466-2006

24

Mark D. Fowler
Aaron Wainscoat
Erik Fuehrer
**DLA Piper LLP (US)**
2000 University Avenue
East Palo Alto, CA. 94303
Tel: 650-833-2000
Fax: 650-833-2001

Tiffany Miller
Robert Williams
**DLA Piper LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101
Tel: 619-699-2700
Fax: 619-699-2701

David Alberti
Elizabeth Day
Clayton Thompson
Yakov Zolotorev
**Feinberg, Day, Alberti & Thompson, LLP**
401 Florence Street, Suite 200
Palo Alto, CA 94301

George Riley
**O'Melveny & Meyers LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

Jon Yuen Chow
**O'Melveny & Meyers LLP**
400 South Hope Street
Los Angeles, CA 90071

Kenneth H. Bridges
Michael T. Pieja
James Shimota
**Bridges Mavrakakis LLP**
3000 El Camino Real
One Palo Alto Square
Palo Alto, CA 94306

Apple700011-12.doc

## VERIFICATION OF COMPLAINT

I, Boris Teksler, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

1.      I am currently Apple's Director of Patent Licensing and Strategy.  I am duly authorized by Apple to verify the foregoing Complaint.

2.      To the best of my knowledge, information, and belief, formed after a reasonable inquiry, the allegations of the Complaint are well grounded in fact and have evidentiary support, or, where specifically identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

3.      To the best of my knowledge, information, and belief, formed after a reasonable inquiry, the claims and other legal contentions set forth in the Complaint are warranted by existing law or by a good faith, non-frivolous argument for extension, modification, or reversal of existing law, or by the establishment of new law; and

4.      The Complaint is not being filed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed this 29th day of June, 2011

Boris Teksler
Apple Inc.

26