```
13:20:46  1              IN THE UNITED STATES DISTRICT COURT

          2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

          3                    SAN JOSE DIVISION

          4

          5     APPLE, INC.,                )  C-11-01846-LHK
                                            )
          6              PLAINTIFF,          )  JANUARY 20, 2012
                                            )
          7                 V.              )
                                            )
          8     SAMSUNG ELECTRONICS         )  PAGES 1 - 237
                COMPANY, LTD., ET AL.,      )
          9                                 )
                         DEFENDANTS.        )
         10     _____    )

         11

         12            THE PROCEEDINGS WERE HELD BEFORE

         13         THE HONORABLE UNITED STATES DISTRICT

         14                 JUDGE LUCY H. KOH

         15     A P P E A R A N C E S:

         16     FOR THE PLAINTIFF:  MORRISON & FOERSTER
                                    BY:  HAROLD J. MCELHINNY
         17                              DEOK KEUN MATTHEW AHN
                                         ANDREW E. MONACH
         18                              MICHAEL A. JACOBS
                                    425 MARKET STREET
         19                         SAN FRANCISCO, CALIFORNIA 94105

         20

         21        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

         22

         23     OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                                         CERTIFICATE NUMBER 8074
         24

         25

                                                            1
```

1    A P P E A R A N C E S: (CONT'D)

2

3    FOR THE PLAINTIFFS: WILMER, CUTLER, PICKERING, HALE
                         AND DORR
                         BY:  DAVID B. BASSETT
4                             MARK D. SELWYN
                              WILLIAM F. LEE
5                        399 PARK AVENUE
                         NEW YORK, NEW YORK 10022

6

7    FOR THE DEFENDANTS: QUINN, EMANUEL, URQUHART &
                         SULLIVAN
8                        BY:  CHARLES VERHOEVEN
                              KEVIN P.B. JOHNSON
9                             TODD M. BRIGGS
                              VICTORIA F. MAROULIS
10                            ALAN WHITEHURST
                         555 TWIN DOLPHIN DRIVE
11                       5TH FLOOR
                         REDWOOD SHORES, CALIFORNIA 94065

12

13   ALSO PRESENT:       UNIVERSITY OF TORONTO
                         DEPARTMENT OF COMPUTER SCIENCE
14                       BY:  RAVIN BALAKRISHNAN
                         40 ST. GEORGE STREET, ROOM 5270
15                       TORONTO, ONTARIO CANADA M5S 2E4

16

17

18

19

20

21

22

23

24

25

                                                        2

```
 1    SAN JOSE, CALIFORNIA              JANUARY 20, 2012

 2                  P R O C E E D I N G S

 3

 4         (WHEREUPON, COURT CONVENED AND THE

 5    FOLLOWING PROCEEDINGS WERE HELD:)

 6         THE CLERK:  CALLING CASE NUMBER

 7    C-11-01846-LHK, APPLE, INCORPORATED, VERSUS SAMSUNG

 8    ELECTRONICS COMPANY LIMITED, ET AL.

 9         COUNSEL, STATE YOUR APPEARANCES, PLEASE.

10         MR. JACOBS:  GOOD MORNING, YOUR HONOR.

11    MICHAEL JACOBS FOR MORRISON & FOERSTER FOR APPLE

12    AND WITH ME FROM MORRISON & FOERSTER IS HAROLD

13    MCELHINNY, ANDREW MONACH, AND MATT AHN.

14         MR. LEE:  GOOD MORNING, YOUR HONOR.  BILL

15    LEE FROM WILMER HALE FOR APPLE AND WITH ME ARE MARK

16    SELWYN AND DAVID BASSETT.

17         THE COURT:  GOOD MORNING.

18         MR. VERHOEVEN:  GOOD MORNING, YOUR HONOR.

19    CHARLES VERHOEVEN REPRESENTING SAMSUNG.  WITH ME AT

20    COUNSEL TABLE ARE MY PARTNERS KEVIN JOHNSON,

21    VICTORIA MOURALIS, ALAN WHITEHURST, AND TODD

22    BRIGGS.

23         WE ALSO HAVE SEVERAL REPRESENTATIVES FROM

24    SAMSUNG HERE INCLUDING SENIOR VICE PRESIDENT

25    KI JOONG KANG.
```

Timestamps:
13:29:08  5
13:33:34  6
13:33:38  7
13:33:43  8
13:33:45  9
10:12:00  10
10:12:02  11
10:12:06  12
10:12:11  13
10:12:13  14
10:12:14  15
10:12:17  16
10:12:18  17
10:12:21  18
10:12:22  19
10:12:25  20
10:12:29  21
10:12:37  22
10:12:37  23
10:12:39  24
10:12:43  25

3

10:12:43 1          THE COURT:  ALL RIGHT.  GOOD MORNING.

10:12:50 2          I GUESS LET'S HANDLE THE MOTION TO STRIKE

10:12:53 3     FIRST.

10:12:58 4          LET ME HEAR FROM APPLE, I GUESS, WHAT

10:13:01 5     YOUR RESPONSE IS TO SAMSUNG'S RESPONSE TO YOUR

10:13:04 6     MOTION AND WHAT IS THE EXACT RELIEF THAT YOU'RE

10:13:08 7     REQUESTING.

10:13:09 8          MR. LEE:  YOUR HONOR, LET ME START AT THE

10:13:11 9     END AND EXACTLY IS TO STRIKE FROM THE RECORD THOSE

10:13:17 10    22 REFERENCES AND THE ARGUMENTS THAT ARE PREDICATED

10:13:23 11    UPON THEM IN THE MARKMAN BRIEFINGS, YOUR HONOR, ON

10:13:26 12    THE TERM "APPLET."  I THINK THAT'S THE RULING.

10:13:29 13         AND TO BE MORE SPECIFIC, YOUR HONOR, IT

10:13:31 14    IS TO STRIKE PARAGRAPHS 13 TO 15, 17 TO 23, 35 TO

10:13:41 15    37, 39 TO 42, 45 TO 46, 51 TO 57, AND 64 TO 65 OF

10:13:50 16    THE COLE DECLARATION, ALONG WITH EXHIBITS 2 THROUGH

10:13:53 17    4 AND 6 THROUGH 12 AND THE CORRESPONDING PARAGRAPHS

10:13:58 18    OF SAMSUNG'S CLAIMS CONSTRUCTION BRIEF ARE SECTIONS

10:14:02 19    5(B)(1) PARAGRAPHS 4 THROUGH 6.

10:14:05 20         THE COURT:  OKAY.  I'M NOT GOING TO DO

10:14:07 21    THAT.  SO LET'S TALK ABOUT SOMETHING ELSE.

10:14:09 22         LET ME FIRST SAY, I MEAN, WITH REGARD TO

10:14:11 23    THE FILE HISTORY, THE PREJUDICE AS TO INCLUDING

10:14:14 24    EXCERPTS OF THE FILE HISTORY OF THE PATENT, I JUST

10:14:18 25    DON'T REALLY SEE THAT IT WAS A SURPRISE OR THAT IT

4

10:14:22  1     WAS PREJUDICIAL TO APPLE.

10:14:24  2            MR. LEE:  YOUR HONOR, IF I COULD ADDRESS

10:14:26  3     THE CHRONOLOGY AND THEN I THINK OUR FOCUS IS LESS

10:14:30  4     ON THE FILE HISTORY AND MORE ON THE EXTRINSIC

10:14:35  5     EVIDENCE WHICH ARE THE INDEPENDENT REFERENCES, THAT

10:14:37  6     THEY NOW CLAIM DEMONSTRATE THAT AN APPLET WOULD BE

10:14:42  7     OPERATING INDEPENDENT.  THAT'S THE FOCUS.

10:14:44  8            THE COURT:  I AGREE WITH YOU -- I'M SORRY

10:14:45  9     TO INTERRUPT YOU -- THAT THAT'S THE STRONGEST OF

10:14:47 10     THE THREE BECAUSE ALSO THE INVENTOR DEPOSITION

10:14:50 11     TESTIMONY, I MEAN, YOU KIND OF WERE AWARE OF THAT

10:14:53 12     AND YOU WERE THERE AT THE DEPOSITIONS AND WHERE IS

10:14:54 13     THE PREJUDICE ON THAT?

10:14:56 14            MR. LEE:  WELL, YOUR HONOR, THE PREJUDICE

10:14:58 15     IS THAT THEY AREN'T INVENTORS.

10:15:00 16            YOUR HONOR, THE LOCAL RULES REQUIRE THAT

10:15:02 17     IF YOU'RE GOING TO RELY UPON EXTRINSIC EVIDENCE FOR

10:15:06 18     REFERENCES THAT YOU MAKE A PRELIMINARY DISCLOSURE

10:15:08 19     TO US AND THIS IS UNDER RULE 4.2 AND THAT WAS

10:15:11 20     OCTOBER 31ST.

10:15:12 21            AND THAT DATE IS IMPORTANT I THINK IN

10:15:14 22     THIS CONTEXT, YOUR HONOR, BECAUSE IT'S NOT

10:15:20 23     SOMETHING THAT WE HAD TO FILE WITH YOUR HONOR, BUT

10:15:22 24     THAT'S THE DATE ON WHICH EACH PARTY DISCLOSED THEIR

10:15:25 25     CLAIM INTERPRETATION.  SO WE KNEW WHAT THEY WERE

5

10:15:28  1    GOING TO SAY AND THEY KNEW WHAT WE WERE GOING TO

10:15:30  2    SAY AND THERE WAS A DISCLOSURE OF THE EXTRINSIC

10:15:33  3    EVIDENCE.

10:15:33  4            THEY DISCLOSED THE TWO REFERENCES, AND WE

10:15:35  5    ADDRESSED THOSE TWO REFERENCES.

10:15:37  6            TWO WEEKS LATER WE FILED WITH THE COURT

10:15:40  7    THE JOINT CLAIMS CONSTRUCTION STATEMENT THAT HAS

10:15:42  8    THOSE SAME REFERENCES BOTH WAYS.

10:15:44  9            AND YOU WILL SEE THAT WE DISCLOSED

10:15:46  10   EVERYTHING ON BOTH DATES THAT WE RELY UPON.

10:15:49  11           OUR EXPERT FILED HIS DECLARATION ON THAT

10:15:54  12   DAY AND ADDRESSES SPECIFICALLY THE ONLY TWO

10:15:57  13   REFERENCES THAT HAVE BEEN DISCLOSED ON

10:15:59  14   OCTOBER 31ST.  HE HAD NO OPPORTUNITY TO ADDRESS

10:16:01  15   ANYTHING ELSE.

10:16:01  16           ONE WEEK LATER THEIR EXPERT, AS HE'S NOW

10:16:07  17   TESTIFIED, FOR THE FIRST TIME LOOKS FOR THESE OTHER

10:16:11  18   REFERENCES AND TWO WEEKS LATER DISCLOSES THEM FOR

10:16:14  19   THE FIRST TIME WITH NO OPPORTUNITY FOR OUR EXPERT

10:16:17  20   TO ADDRESS THEM.

10:16:18  21           SO, YOUR HONOR, WE'RE NOT FIGHTING OVER

10:16:21  22   THE FILE HISTORY.  YOU KNOW, IT'S SOMETHING THAT

10:16:23  23   SHOULD HAVE BEEN DISCLOSED.  WE'LL SET IT ASIDE.

10:16:25  24           THE COURT:  OKAY.

10:16:26  25           MR. LEE:  THE INVENTOR IS THEIR INVENTOR.

6

10:16:29  1      IF YOUR INVENTOR HAS SOMETHING TO SAY ABOUT WHAT

10:16:31  2      THE MEANING OF THE CLAIM TERMS ARE, AND I THINK WE

10:16:34  3      CAN FIGHT OVER IN THE THEORETICAL SENSE WHETHER AN

10:16:39  4      EXPERT INVENTOR SHOULD HAVE ANYTHING TO SAY,

10:16:41  5      PARTICULARLY IN THIS CASE WHERE THE INVENTOR'S

10:16:45  6      TESTIMONY IS THAT I DID SOMETHING AND IT WAS

10:16:47  7      OPERATING SYSTEM DEPENDENT AND IT'S NOT DISCLOSED

10:16:50  8      IN THE PATENT.

10:16:51  9             THERE'S A QUESTION OF HOW MUCH WEIGHT IT

10:16:56 10      WOULD GET IN ANY EVENT, BUT IT'S THEIR INVENTOR,

10:16:57 11      YOUR HONOR.

10:16:57 12             THE COURT:  OKAY.  BUT WHEN WAS THAT

10:16:59 13      DEPOSITION AND WEREN'T YOU ALL THE ONES DEPOSING

10:17:03 14      THAT INVENTOR?

10:17:04 15             MR. LEE:  THAT DEPOSITION WAS AFTER

10:17:05 16      NOVEMBER 14TH, THEY'RE CORRECT, AND WE WERE THE

10:17:07 17      PARTY DEPOSING IT.

10:17:08 18             THE COURT:  OKAY.  THAT'S NOVEMBER 17TH.

10:17:10 19      OKAY.

10:17:11 20             MR. LEE:  I'M SORRY.

10:17:12 21             THE COURT:  LET ME ASK A QUESTION, THERE

10:17:13 22      WAS AN AGREEMENT BETWEEN THE PARTIES TO DISCLOSE

10:17:18 23      THE EXPERT DECLARATION LATER BUT NOT EXTRINSIC

10:17:21 24      EVIDENCE UPON WHICH THE EXPERTS WOULD RELY; IS THAT

10:17:25 25      CORRECT?

7

10:17:25 1          MR. LEE:  I THINK THAT'S THE CORRECT

10:17:26 2     READING, YOUR HONOR.

10:17:27 3          THE COURT:  SO WHAT WAS THE AGREEMENT AS

10:17:29 4     TO WHEN EXTRINSIC EVIDENCE WOULD BE EXCHANGED WITH

10:17:32 5     THE JOINT STATEMENT?

10:17:34 6          MR. LEE:  THAT WAS OUR UNDERSTANDING,

10:17:35 7     YOUR HONOR.  IT REFERENCES EXTRINSIC EVIDENCE.

10:17:39 8          HERE IS -- IF I COULD JUST STEP BACK FOR

10:17:41 9     A SECOND.  I THINK, YOUR HONOR, WE DISCLOSED

10:17:43 10    REFERENCES AND EXTRINSIC EVIDENCE AND THEN OUR

10:17:45 11    EXPERT FILED A DECLARATION IN WHICH HE PROVIDED

10:17:48 12    OPINIONS BASED UPON THAT.

10:17:51 13         THEIR EXPERT TWO WEEKS LATER FILED A

10:17:54 14    DECLARATION THAT IS HIS OPINION BUT IT'S BASED UPON

10:17:57 15    22 NEW REFERENCES NEVER PREVIOUSLY DISCLOSED.

10:18:00 16         THAT, WE SUGGEST, DOESN'T COMPLY WITH THE

10:18:05 17    COURT'S RULE AND GIVEN THE SEQUENCE THROUGH WHICH

10:18:08 18    WE'RE MOVING THROUGH THE MARKMAN PROCESS IS

10:18:10 19    PREJUDICE TO US.

10:18:12 20         AND JUST FOR A SECOND, YOUR HONOR, NOT TO

10:18:14 21    GO BACK TO IT IF YOUR HONOR DOES NOT WANT ME TO,

10:18:17 22    BUT ON THE INVENTOR TESTIMONY, IF YOUR INVENTOR HAS

10:18:19 23    SOMETHING TO SAY ABOUT THE MANNER IN WHICH THE

10:18:22 24    CLAIMS SHOULD BE INTERPRETED, IF HE OR SHE HAS DONE

10:18:26 25    SOMETHING THAT HAS IMPLICATIONS FOR HOW IT SHOULD

8

10:18:29  1    BE INTERPRETED, YOU, WE, WHOEVER THE SPONSORING

10:18:34  2    PARTY IS, OUGHT TO DISCLOSE THAT ON OCTOBER 31ST.

10:18:37  3            WE WOULD THEN HAVE KNOWN ON OCTOBER 31ST,

10:18:40  4    THAT THEIR INVENTOR WAS GOING TO SAY SOMETHING THAT

10:18:43  5    THEY WOULD CLAIM SHOULD GUIDE THE COURT IN CLAIM

10:18:46  6    INTERPRETATION.

10:18:47  7            WE HAD NO CLUE.  WE HAD NO CLUE UNTIL

10:18:51  8    NOVEMBER 17TH, THAT HE WAS GOING TO SAY IT, AND

10:18:56  9    THEY WERE GOING TO RELY UPON IT.

10:18:58 10            AND THE SAME IS TRUE FOR THESE 22

10:19:00 11    REFERENCES, WE HAD NO IDEA UNTIL NOVEMBER 28TH THAT

10:19:03 12    THEY WERE GOING TO SAY OPERATING SYSTEM DEPENDENT,

10:19:06 13    SOMETHING THAT HAS BEEN AN ISSUE SINCE

10:19:09 14    OCTOBER 31ST.

10:19:09 15            WE NOW HAVE 22 REFERENCES THAT WOULD

10:19:11 16    SUGGEST SOME OTHER INTERPRETATION.  IF THEY HAD

10:19:15 17    BEEN DISCLOSED ON OCTOBER 31ST, WE WOULD HAVE HAD

10:19:18 18    AN OPPORTUNITY TO DO TWO THINGS.  WE WOULD HAVE HAD

10:19:23 19    AN OPPORTUNITY TO COLLECT OTHER EXTRINSIC EVIDENCE

10:19:26 20    THAT MIGHT PUT THOSE IN CONTEXT OR DEMONSTRATE THAT

10:19:30 21    THEY WERE SIMPLY NOT INTERPRETING THEM CORRECTLY.

10:19:34 22            WE CERTAINLY COULD HAVE HAD DR. GIVARGIS

10:19:39 23    ADDRESS THEM ON NOVEMBER 14TH, WHEN HE FILED HIS

10:19:41 24    DECLARATION.

10:19:42 25            I THINK WHAT SAMSUNG IS SAYING, YOUR

9

10:19:44  1    HONOR, IS THAT EXPERT TESTIMONY IS EXTRINSIC

10:19:49  2    EVIDENCE.  WE AGREED THAT EXPERT TESTIMONY WOULD

10:19:51  3    COME IN ON NOVEMBER 14TH AND THEREAFTER, THEREFORE,

10:19:54  4    ALL EXTRINSIC EVIDENCE COULD COME IN ON

10:19:56  5    NOVEMBER 14TH OR THEREAFTER.

10:19:58  6         THAT'S NOT A FAIR READING OF WHAT THE

10:20:01  7    PARTIES DID.  AND ACTUALLY, IN SOME SENSE, WHAT

10:20:05  8    SPEAKS LOUDEST IS WHAT THE PARTIES DID.

10:20:07  9         AND WHAT THE PARTIES DID IS THAT THEY

10:20:09 10    DISCLOSED THE REFERENCES THAT THEY WERE GOING TO

10:20:12 11    RELY UPON.

10:20:13 12         IN FACT, YOUR HONOR, HERE THE UNDISPUTED

10:20:15 13    RECORD IS THAT THESE 22 REFERENCES, OR MOST OF

10:20:18 14    THEM, THEY DIDN'T EVEN FIND THEM ON NOVEMBER 21ST.

10:20:22 15         SO THE PREJUDICE HERE, YOUR HONOR, IS THE

10:20:25 16    FACT THAT BOTH FOR THE INVENTOR TESTIMONY -- AND I

10:20:28 17    THINK, YOUR HONOR, THIS IS DIFFERENT.  IF IT WERE

10:20:30 18    OUR INVENTOR, IT'S MUCH HARDER FOR ME TO CLAIM

10:20:34 19    PREJUDICE THAT THEY'RE RELYING UPON OUR INVENTOR TO

10:20:37 20    MAKE AN INTERPRETATION.

10:20:38 21         BUT FOR THE INVENTOR TESTIMONY, WHICH IS

10:20:40 22    ENTIRELY WITHIN THEIR CONTROL, AND FOR THESE

10:20:45 23    REFERENCES NOT DISCOVERED UNTIL SEVEN DAYS -- THREE

10:20:52 24    WEEKS AFTER THE PRELIMINARY DISCLOSURE, THAT'S THE

10:20:54 25    PREJUDICE AND YOUR HONOR KNOWS BETTER THAN I.

                                                          10

10:20:56  1          I MEAN, THE RULES EXIST FOR A REASON.  WE

10:20:59  2     HAVE TO MOVE THROUGH THIS IN AN ORDERLY WAY, AND WE

10:21:01  3     THOUGHT WE MOVED THROUGH IT IN AN ORDERLY WAY.

10:21:04  4     SAMSUNG DID NOT MOVE THROUGH IT IN AN ORDERLY WAY.

10:21:06  5          AND TO HAVE LITERALLY THE NUMBER OF

10:21:09  6     REFERENCES GROW BY A MAGNITUDE IS PREJUDICIAL.

10:21:15  7          THE COURT:  OKAY.  WELL, LET ME ASK A

10:21:18  8     COUPLE MORE QUESTIONS.  SO WHEN YOU EXCHANGED THE

10:21:20  9     PRELIMINARY CLAIM CONSTRUCTIONS ON OCTOBER 31, I

10:21:23 10     THINK BOTH SIDES KNEW AT THAT POINT WHAT THE ISSUES

10:21:25 11     WERE GOING TO BE EITHER, YOU KNOW, OPERATING SYSTEM

10:21:28 12     INDEPENDENT OR DEPENDENT AND WHETHER IT WAS GOING

10:21:31 13     TO BE WITHIN THE APPLICATION MODULE OR WITHIN A

10:21:36 14     PROGRAM.

10:21:37 15          THOSE SEEMED TO BE THE ONLY TWO DISPUTES

10:21:41 16     WITH REGARD TO APPLET; IS THAT RIGHT?

10:21:43 17          MR. LEE:  AND THIS QUESTION OF THE WORD

10:21:45 18     "SMALL," BUT THAT'S CORRECT.

10:21:46 19          THE COURT:  SO WHAT IS THE PREJUDICE IF

10:21:48 20     BOTH SIDES KNEW WHERE YOU WERE GOING ON THAT?

10:21:50 21     WOULDN'T YOU JUST ANTICIPATE THAT THEY WERE GOING

10:21:51 22     TO TRY TO FIND SOME EXTRINSIC EVIDENCE ON THE

10:21:55 23     OPERATING SYSTEM ISSUE?

10:21:57 24          MR. LEE:  THE ANSWER IS YES, AND YOU

10:21:59 25     WOULD HAVE ANTICIPATED THEY WOULD HAVE FOUND IT AND

11

10:22:01 1    YOU WOULD HAVE ANTICIPATED THEY WOULD HAVE

10:22:02 2    DISCLOSED IT.

10:22:03 3            AND THEY DISCLOSED TWO REFERENCES.  AND

10:22:06 4    DR. GIVARGIS SPECIFICALLY ADDRESSES THOSE TWO

10:22:09 5    REFERENCES.

10:22:09 6            AND I THINK, YOUR HONOR, WHAT IS GOOD FOR

10:22:12 7    THE GOOSE NEEDS TO BE GOOD FOR THE GANDER IN THIS

10:22:15 8    CONTEXT.

10:22:16 9            IF YOUR HONOR LOOKS AT THIS DISCLOSURE,

10:22:18 10   YOU'LL SEE THAT OUR DISCLOSURE IS LENGTHY AND DEALS

10:22:20 11   WITH SOME OF WHAT WE HAVE BRIEFED YOUR HONOR ON THE

10:22:24 12   PLAIN MEANING OF AN APPLET IN 2005, AND

10:22:29 13   APPLICATIONS AND PROGRAMS AND THAT SORT OF THING.

10:22:31 14           EVERYTHING THAT WE RELIED UPON WAS

10:22:33 15   DISCLOSED ON OCTOBER 31ST AND THEN WE REITERATED IT

10:22:38 16   ON NOVEMBER 14TH AND THEN DR. GIVARGIS PROVIDED HIS

10:22:42 17   DECLARATION.

10:22:43 18           AND I THINK IT GOES SPECIFICALLY TO YOUR

10:22:45 19   HONOR'S QUESTION, WHEN WE GOT THEIR DISCLOSURE ON

10:22:47 20   OCTOBER 31ST AND IT DIDN'T CHANGE ON NOVEMBER 14TH,

10:22:50 21   I THINK WE FAIRLY UNDERSTOOD THAT TO THE EXTENT

10:22:53 22   THAT THEY DISPUTE OPERATING SYSTEM DEPENDENCE OR

10:22:58 23   INDEPENDENCE, IT'S ALL THERE AND THAT'S WHAT WE

10:23:01 24   HAVE TO DEAL WITH.

10:23:02 25           AND THAT'S THE PREJUDICE.  AND I THINK

                                                           12

10:23:03 1    THAT'S WHAT THE FRAMEWORK OF THE RULES EXIST FOR.

10:23:09 2            THE COURT:  SO YOUR EXPERT WOULD HAVE NOT

10:23:11 3    HAVE SAID ANYTHING DIFFERENT IN HIS NOVEMBER 14TH

10:23:13 4    DECLARATION, HE JUST WOULD HAVE SAID MORE?

10:23:16 5            OR ARE YOU SAYING THAT YOU TOOK A

10:23:17 6    POSITION THAT YOU WOULD WANT TO MODIFY HAD YOU

10:23:19 7    KNOWN ABOUT THESE ADDITIONAL EXTRINSIC EVIDENCE?

10:23:22 8            MR. LEE:  THE FORMER.  I THINK HE WOULD

10:23:23 9    HAVE SAID MORE AND HE WOULD HAVE DEALT WITH THEM --

10:23:26 10   THERE ARE TWO THINGS.  HE WOULD HAVE SAID MORE FOR

10:23:28 11   SURE TO DEAL WITH THEM SPECIFICALLY AND, YOU KNOW,

10:23:31 12   TO BE CANDID WITH THE COURT, HE ADDRESSED THEM WHEN

10:23:34 13   ASKED IN HIS DEPOSITION.  I THINK YOUR HONOR KNOWS

10:23:36 14   THAT WE RELIED ON HIS DEPOSITION TO OFFER WHAT SOME

10:23:39 15   OF HIS VIEWS MIGHT HAVE BEEN.

10:23:41 16           BUT THE SECOND THING WE WOULD HAVE DONE

10:23:42 17   AND HE CERTAINLY WOULD HAVE DONE IS GONE OUT AND

10:23:44 18   FIND OTHER REFERENCES TO PUT SOME OF THIS IN

10:23:46 19   CONTEXT SO YOUR HONOR COULD UNDERSTAND JUST WHAT

10:23:49 20   MOVIE AND FLASH AND THE MICROSOFT APPLET WERE.

10:23:54 21           AND I THINK, YOUR HONOR, PARTICULARLY FOR

10:23:59 22   EXTRINSIC EVIDENCE, ONE OF THE REASONS FOR THE

10:24:01 23   DISCLOSURE IS THAT IT'S NOT THE CLAIM, THE

10:24:04 24   SPECIFICATION OR THE FILE HISTORY, WHICH ARE AT

10:24:06 25   LEAST A SET SET OF DOCUMENTS.

13

10:24:10 1          WHEN WE MOVE TO EXTRINSIC EVIDENCE, ONE

10:24:12 2     OF THE REASONS I THINK THE RULE EXISTS IS, IS THAT

10:24:14 3     IT'S AN INFINITE UNIVERSE.  ALL RIGHT.  THERE'S AN

10:24:18 4     AWFUL LOT THAT CAN COME IN ONCE YOU MOVE BEYOND THE

10:24:21 5     PATENT FILE HISTORY AND THE SPECIFICATION.

10:24:23 6          THIS IS TO CABIN WHAT THE PARTIES ARE

10:24:26 7     DEALING WITH AND WHAT THE COURTS ARE GOING TO DEAL

10:24:29 8     WITH AND IT'S BOTH LOGICAL GIVEN YOUR DEALING WITH

10:24:33 9     EXTRINSIC EVIDENCE, AND IT'S, I THINK, FAIR TO BOTH

10:24:37 10    PARTIES BUT IT'S ONLY FAIR IF BOTH PARTIES LIVE BY

10:24:41 11    THE SAME RULES.

10:24:41 12         THE COURT:  LET ME ASK, BECAUSE ANOTHER

10:24:43 13    ARGUMENT THAT SAMSUNG MAKES IS THAT, WELL, YOU DID

10:24:46 14    HAVE THE DEPOSITION OF YOUR EXPERT AFTER, YOU DID

10:24:49 15    HAVE THE OPPORTUNITY TO FILE YOUR OPPOSITION, AND

10:24:51 16    THOSE GAVE YOU THE OPPORTUNITIES TO ADDRESS THOSE

10:24:54 17    ADDITIONAL DICTIONARY DEFINITIONS.

10:24:57 18         MR. LEE:  AND, YOUR HONOR, MY

10:24:58 19    ANTICIPATION IS THAT YOU WOULD WANT US TO ADDRESS

10:25:00 20    THEM ON THE MERITS IN ANY EVENT AND WE ARE PREPARED

10:25:03 21    TO DO THAT.

10:25:04 22         AND WHEN WE GET TO APPLET PROBABLY THIS

10:25:06 23    AFTERNOON, WE WILL.

10:25:09 24         BUT, YOUR HONOR, THE WAY THAT -- IF

10:25:11 25    THAT'S THE ARGUMENT, IF THAT'S THE ARGUMENT THAT A

                                                        14

10:25:14 1    PARTY CAN MAKE THAT THERE'S NO PREJUDICE, THEN WE

10:25:18 2    OUGHT TO JUST FORGET ABOUT RULE 4.2 AND RULE

10:25:25 3    4.2(B).

10:25:26 4              I MEAN, THAT IS GOING TO PUT ANY PARTY IN

10:25:29 5    A SITUATION LIKE THIS IN A PROFILE LIKE THIS, TO

10:25:34 6    SAY, OKAY, YOU KNOW, I KNOW THE DEPOSITIONS ARE

10:25:36 7    COMING AFTER THE DISCLOSURE, AND I KNOW I'M GOING

10:25:38 8    TO FILE MY DECLARATION AND I'M GOING TO DISCLOSE

10:25:40 9    THEIR EXPERT AND I KNOW I CAN ASK THEIR EXPERT

10:25:42 10   ABOUT THOSE REFERENCES AFTER WE PUT THEM IN THE

10:25:46 11   RECORD.

10:25:46 12             AND THE ANSWER WILL BE NO PREJUDICE.

10:25:48 13             AND, YOUR HONOR, I'M NOT HERE TO SAY THAT

10:25:50 14   WE DIDN'T HAVE A CHANCE TO HAVE OUR EXPERT DEPOSED,

10:25:54 15   I'M NOT SAYING THAT HE DIDN'T ADDRESS THEM AND I

10:25:57 16   ASKED THAT HE ADDRESS THEM FULLY AND COMPLETELY IN

10:25:59 17   A WAY AND HONESTLY IN A DISPOSITIVE WAY.

10:26:03 18             I'M SAYING WE WOULD HAVE DONE MORE AND WE

10:26:05 19   WOULD HAVE DONE IT DIFFERENTLY IF WE HAD COMPLIED

10:26:08 20   WITH THE RULE.  THERE WOULD PROBABLY BE MORE

10:26:11 21   DOCUMENTS BEFORE YOU ON FLASH AND RUBY AND THE

10:26:14 22   MICROSOFT APPLET TO PUT THEM IN FULL CONTEXT SO

10:26:17 23   THAT YOU CAN SEE, IN FACT, WHAT DR. GIVARGIS SAID

10:26:21 24   IN HIS DEPOSITION, WHICH WAS THAT EVERY SINGLE ONE

10:26:23 25   OF THEM HAS AN INTERPRETER EXCEPT FOR MICROSOFT

15

10:26:27 1    APPLET AND THE MICROSOFT APPLET SITS ON TOP OF AN

10:26:30 2    OPERATING SYSTEM.  SO IT'S OPERATING SYSTEM

10:26:34 3    DEPENDENT AND DOESN'T EXIST WITHIN ANOTHER PROGRAM.

10:26:36 4         WE ACTUALLY COULD HAVE BROUGHT TO THE

10:26:39 5    COURT THE DOCUMENTS THAT WOULD DEMONSTRATE THAT OUR

10:26:42 6    INTERPRETATION GIVEN BY DR. GIVARGIS AT HIS

10:26:47 7    DEPOSITION IS AS A MATTER OF DOCUMENTARY PROOF TRUE

10:26:50 8    THAT THEY ARE OPERATING SYSTEM INDEPENDENT IN

10:26:52 9    ONE CASE AND MICROSOFT DOESN'T FIT WITH ANYBODY'S

10:26:57 10   DEFINITION.

10:26:58 11        THAT'S WHAT WE WERE DEPRIVED OF THE

10:26:59 12   OPPORTUNITY TO DO.

10:27:03 13        AND IT ALSO DEPRIVES THE COURT OF THE

10:27:05 14   OPPORTUNITY TO SEE THAT.  SO NOW WHAT YOU HAVE

10:27:08 15   BEFORE YOU IS THEIR DECLARATION WITH THEIR EXHIBITS

10:27:10 16   ON NOVEMBER 28TH, AND OUR EXPERT BEING ASKED ABOUT

10:27:13 17   IT IN THE DEPOSITION, AND YOU'RE ASKED TO DECIDE

10:27:16 18   HOW DOES THAT EXTRINSIC EVIDENCE AFFECT THE CLAIM

10:27:19 19   INTERPRETATION OF APPLE?

10:27:20 20        THE COURT:  WELL, LET ME ASK, BECAUSE I'M

10:27:22 21   INCLINED TO GIVE YOU SOME RELIEF.  I DON'T WANT TO

10:27:27 22   STRIKE IT.  I THINK THIS IS ONE WHERE, FRANKLY,

10:27:33 23   WHAT HAS BEEN PRESENTED BY BOTH SIDES IS NOT

10:27:35 24   CONCLUSIVE.

10:27:36 25        BUT I THINK WHAT HAS BEEN PRESENTED IS

16

10:27:40  1    HELPFUL.  AND I THINK EXCLUDING IT WOULDN'T ENHANCE

10:27:42  2    THE TRUE SEEKING FUNCTION OF WHAT WE'RE SUPPOSED TO

10:27:47  3    BE ABOUT HERE.

10:27:47  4              SO TELL ME WHAT -- BUT ON THE OTHER HAND,

10:27:50  5    I DON'T WANT TO COMPLETELY REOPEN, RETHINK

10:27:55  6    DEPOSITIONS AND NOW BOTH SIDES ARE GOING TO GO FIND

10:27:58  7    MORE EXTRINSIC EVIDENCE.

10:28:00  8              TELL ME WHAT IS A NARROW RELIEF THAT

10:28:02  9    WOULD NOT -- BECAUSE I WOULD LIKE TO TRY TO ISSUE

10:28:04 10    AN ORDER FAIRLY PROMPTLY, BUT IF WE EXTEND THE

10:28:10 11    BRIEFING, IT'S GOING TO DELAY THAT.  SO GO AHEAD.

10:28:13 12              MR. LEE:  AND I THINK, YOUR HONOR, OUR

10:28:15 13    INTEREST IS THE SAME AS YOURS WHICH IS TO HAPPEN

10:28:17 14    QUICKLY.

10:28:18 15              MAYBE I CAN MAKE A SUGGESTION.  WE'LL

10:28:20 16    ARGUE APPLET PROBABLY LAST TODAY.

10:28:22 17              THE COURT:  OKAY.

10:28:23 18              MR. LEE:  PERHAPS AT THE END OF THE

10:28:25 19    ARGUMENT BOTH OF US CAN COME BACK TO YOU AND SAY

10:28:27 20    HERE'S OUR SUGGESTION OF WHAT WE DO.

10:28:29 21              IT MAY BE THAT WHATEVER DISPUTES EXIST ON

10:28:33 22    THIS EXTRINSIC EVIDENCE, WHICH IS THE PLAIN AND

10:28:36 23    ORDINARY MEANING TO ONE OF ORDINARY SKILL IN THE

10:28:38 24    ART IN 2005, WILL NOT BE AS IMPORTANT ONCE WE WALK

10:28:42 25    YOU THROUGH THE INTRINSIC EVIDENCE.

17

10:28:46 1          IT MAY BE THAT IT'S MORE IMPORTANT THAN

10:28:48 2     WE THINK IT IS NOW, AND THEN WE MIGHT ASK FOR SOME

10:28:52 3     OPPORTUNITY TO OFFER SOMETHING IN ADDITION.

10:28:54 4          BUT IT MIGHT BE BETTER IF WE ADDRESS IT

10:28:56 5     SPECIFICALLY AT THE CONCLUSION OF THAT ARGUMENT.

10:28:59 6          THE COURT:  WELL, LET ME GIVE A CHANCE

10:29:01 7     TO, MR. VERHOEVEN OR MR. JOHNSON, WHOEVER IS GOING

10:29:05 8     TO ADDRESS THIS ISSUE.

10:29:07 9          MR. JOHNSON:  THANK YOU, YOUR HONOR.  THE

10:29:10 10    AGREEMENT BETWEEN THE PARTIES WAS THAT EXTRINSIC

10:29:15 11    EVIDENCE COULD CONTINUE TO BE EXCHANGED.

10:29:16 12         THE COURT:  I DON'T FIND THAT TO BE THE

10:29:18 13    CASE, AND I DON'T THINK THAT YOUR BRIEF EVEN SAYS

10:29:20 14    THAT.  I THINK YOUR BRIEF IS KIND OF QUIET.

10:29:23 15         IT SAYS THERE WAS AN AGREEMENT THAT

10:29:25 16    EXPERT DECLARATIONS WOULDN'T BE EXCHANGED ON THE

10:29:27 17    31ST OF OCTOBER, AND IT'S A LITTLE BIT KIND OF

10:29:30 18    VAGUE ABOUT THE EXTRINSIC EVIDENCE WHICH IS WHY I

10:29:32 19    ASKED THAT AT THE TUTORIAL BECAUSE YOU DON'T

10:29:35 20    EXPLICITLY SAY THAT AND YOU DIDN'T EXPLICITLY SAY

10:29:38 21    THAT ON TUESDAY.  AND SO I'M HEARING THAT FOR THE

10:29:41 22    FIRST TIME TODAY WHICH MAKES IT A LITTLE SUSPECT.

10:29:45 23         MR. JOHNSON:  IN ALL FAIRNESS, I DIDN'T

10:29:47 24    PARTICIPATE IN THE INITIAL MEET AND CONFERS THAT

10:29:51 25    TOOK PLACE BETWEEN THE PARTIES BUT GOING BACK AND

                                                            18

10:29:52  1   CHECKING WITH OUR TEAM, WHAT HAPPENED WAS IS THAT

10:29:55  2   WE RECEIVED DR. GIVARGIS'S EXPERT REPORT ON 10:51

10:30:01  3   P.M. ON THE NIGHT OF NOVEMBER 14TH.

10:30:04  4        AND WHAT HAD HAPPENED BEFORE THAT IS

10:30:06  5   IMPORTANT BECAUSE I HEARD MR. LEE SAY THAT THERE

10:30:08  6   WAS FULL DISCLOSURE WITH RESPECT TO THE PARTY'S

10:30:10  7   POSITIONS AND ALL OF THE EXTRINSIC EVIDENCE WAS

10:30:12  8   CITED IN THE CONTEXT OF 4-2, IN THE 4-2

10:30:18  9   DISCLOSURES.

10:30:18 10        AND THAT SIMPLY WASN'T THE CASE.  IF YOU

10:30:20 11   LOOK AT THE 4-2 DISCLOSURES, WHICH I HAVE WITH ME

10:30:23 12   AND WHICH ARE PART OF THE RECORD, APPLE'S

10:30:27 13   CONSTRUCTIONS AND SUPPORT FOR THE CONSTRUCTION

10:30:30 14   INVOLVING SIX OUT OF THE EIGHT TERMS THAT WE'RE

10:30:33 15   DISCUSSING TODAY, THEY IDENTIFY NO CONSTRUCTION AND

10:30:36 16   NO SUPPORT FOR THE CONSTRUCTION.

10:30:37 17        SO THE PARTIES OPERATED UNDER THE

10:30:40 18   ASSUMPTION THAT THERE WAS GOING TO BE ANOTHER

10:30:42 19   OPPORTUNITY TO SUBMIT ADDITIONAL EVIDENCE.

10:30:45 20        AND WHEN WE RECEIVED DR. GIVARGIS'S

10:30:49 21   STATEMENT, LIKE I SAID, AT 10 -- ACTUALLY IT WAS

10:30:52 22   10:17 P.M. ON NOVEMBER 14TH, THE JOINT CLAIM

10:30:56 23   CONSTRUCTION STATEMENT WAS DUE BY MIDNIGHT, WE

10:30:58 24   DIDN'T HAVE THE OPPORTUNITY TO GO BACK AND SAY,

10:31:02 25   OKAY, NOW THAT WE HAVE SEEN THAT DR. GIVARGIS HAS

                                                          19

10:31:05  1    TAKEN THE POSITION THAT -- BECAUSE HE CITED THAT WE

10:31:08  2    HAD SEEN THAT THERE WERE JAVA REFERENCES THAT WERE

10:31:10  3    DISCLOSED.  WE DID NOT KNOW THAT HE WAS GOING TO

10:31:13  4    SAY, OKAY, BECAUSE THERE WERE THESE JAVA REFERENCES

10:31:16  5    THAT THAT MEANS THAT ALL OF THESE APPLETS ARE

10:31:19  6    OPERATING SYSTEM INDEPENDENT.

10:31:21  7         THE COURT:  WHY DIDN'T YOU KNOW THAT?

10:31:23  8    WASN'T IT IN THE CLAIM CONSTRUCTION THAT THEY GAVE

10:31:25  9    YOU ON OCTOBER 31ST?

10:31:26  10        MR. JOHNSON:  THE OCTOBER 31ST CLAIM

10:31:28  11   CONSTRUCTION HAD APPLET AND IT HAD THAT THEY WERE

10:31:31  12   ARGUING OPERATING SYSTEM INDEPENDENT.

10:31:32  13        THE COURT:  SO WHY DIDN'T YOU KNOW THAT?

10:31:35  14        MR. JOHNSON:  WE DIDN'T KNOW THAT

10:31:37  15   GIVARGIS WAS GOING TO TAKE THE NEXT STEP OF THEN

10:31:39  16   ARGUING THAT THESE JAVA DISCLOSURES, THESE JAVA

10:31:42  17   REFERENCES SOMEHOW THEN MEANT THAT EVERYTHING MUST

10:31:46  18   BE OS INDEPENDENT.

10:31:47  19        THAT WAS NEW NEWS THAT WE RECEIVED THAT

10:31:50  20   NIGHT.  IT DIDN'T COME UP BEFORE THEN.  AND SO IT

10:31:52  21   WAS ONLY AFTER THAT POINT.

10:31:54  22        AND THERE HAD BEEN AN AGREEMENT BETWEEN

10:31:56  23   THE PARTIES TO TAKE DEPOSITIONS AFTER THE FACT.

10:31:59  24        AND DR. GIVARGIS HAD THE OPPORTUNITY,

10:32:03  25   JUST GOING TO THE PREJUDICE ISSUE, DR. GIVARGIS HAD

20

10:32:06 1    THE OPPORTUNITY TO REVIEW MR. COLE'S DECLARATION

10:32:08 2    AND, IN FACT, HE WAS ASKED ABOUT THAT DURING HIS

10:32:10 3    DEPOSITION AND HE SAID THAT HE REVIEWED THE

10:32:12 4    DECLARATION ALONG WITH ALL OF THE EXHIBITS AND THAT

10:32:17 5    WERE REFERENCED IN THAT DECLARATION.

10:32:18 6         AND HE WAS SPECIFICALLY ASKED BY

10:32:20 7    MS. MAROULIS WHETHER ANY OF THOSE EXHIBITS CHANGED

10:32:24 8    HIS OPINIONS IN ANY WAY.

10:32:25 9         AND I'M READING FROM PAGE 26 FROM THE

10:32:28 10   TRANSCRIPT, "YOU KNOW, MY QUESTION WAS WHETHER UPON

10:32:30 11   REVIEWING MR. COLE'S DECLARATION YOUR OPINION

10:32:31 12   CHANGED IN ANY WAY?"  AND HIS ANSWER WAS, "NO."

10:32:35 13        SO THE PREJUDICE HERE I THINK, PUTTING

10:32:39 14   ASIDE WHETHER THERE'S AN ARGUMENT OR A DISAGREEMENT

10:32:42 15   ON WHAT WAS EXPECTED WITH RESPECT TO ULTIMATELY

10:32:47 16   EXCHANGING REBUTTAL EXHIBITS, AND WHETHER IT WAS

10:32:50 17   PART OF THE JOINT CLAIMS CONSTRUCTION STATEMENT,

10:32:52 18   YOUR HONOR, I SUBMIT THAT THE PARTIES, EVEN GIVEN

10:32:55 19   APPLE'S OWN DISCLOSURES IN THE OCTOBER 31ST, 4-2

10:32:59 20   REPORT DIDN'T IDENTIFY -- I MEAN, YOU CAN LOOK AT

10:33:02 21   THIS PAGE AFTER PAGE CONSTRUCTIONS FOR THE TERMS

10:33:05 22   THAT ARE AT ISSUE.

10:33:06 23        SO THE PARTIES WERE OPERATING UNDER THAT

10:33:08 24   BASIS.  AND, FRANKLY, THERE WAS A LOT GOING ON.  I

10:33:12 25   MEAN, WE HAD TAKEN ALL OF THESE TERMS AND DISTILLED

21

10:33:14 1   THEM DOWN TO THE TEN, EACH SIDE CHOOSING FIVE AND

10:33:18 2   THEN DISTILLED THEM DOWN FURTHER.

10:33:21 3           AND SO THE OPPORTUNITY, APPLE HAD THE

10:33:24 4   PLAIN OPPORTUNITY TO AND, IN FACT, REDIRECTED

10:33:28 5   MR. GIVARGIS AT HIS OWN DEPOSITION.  AND SO THEY

10:33:30 6   HAD THE OPPORTUNITY TO ASK ADDITIONAL QUESTIONS,

10:33:32 7   AND THEY HAD THE OPPORTUNITY TO SUPPLEMENT THE

10:33:34 8   RECORD, AND THEY HAD THE OPPORTUNITY TO BRING IN

10:33:36 9   ADDITIONAL EXHIBITS.

10:33:38 10          FROM OUR STANDPOINT, YOUR HONOR, THIS IS

10:33:40 11  WHAT THE RECORD, FRANKLY, SHOULD BE AT THIS POINT.

10:33:42 12          AND, YOU KNOW, WITH RESPECT --

10:33:44 13          THE COURT:  WELL, YOU KNOW, I'M NOT GOING

10:33:46 14  TO EXCLUDE THE DEPOSITION TESTIMONY OF THE INVENTOR

10:33:52 15  OR THE FILE HISTORY OR THE EXTRINSIC EVIDENCE THAT

10:33:54 16  YOU CITED, BUT I'M OPEN TO SOME OTHER RELIEF AND

10:33:58 17  I'M FINE WITH SORT OF POSTPONING WHAT THAT MAY OR

10:34:00 18  MAY NOT BE UNTIL THE END AND MAYBE BOTH SIDES CAN

10:34:03 19  MEET AND CONFER AT SOME POINT DURING A BREAK ON

10:34:05 20  THAT ISSUE.

10:34:05 21          MR. JOHNSON:  OKAY.  WHY DON'T WE DO

10:34:07 22  THAT.  THAT'S FINE.

10:34:08 23          THE COURT:  ALL RIGHT.  LET'S GO TO THE

10:34:10 24  -- THANK YOU FOR STIPULATING TO THE CONSTRUCTION

10:34:13 25  FOR TIMER.

                                                          22

10:34:15  1          AND WHAT YOU AGREED TO IS HOW I WAS GOING

10:34:18  2   TO CONSTRUE THAT CLAIM ANYWAY.  SO THANK YOU FOR

10:34:26  3   STIPULATING TO STARTING A TIMER'S CONSTRUCTION.

10:34:28  4          WERE YOU NOT ABLE TO REACH AN AGREEMENT

10:34:32  5   ON GROUP?  WHAT ABOUT GROUP AND PIXEL GROUP?  NO

10:34:36  6   AGREEMENT ON THAT ONE?

10:34:37  7          MR. JACOBS:  THAT'S CORRECT, YOUR HONOR.

10:34:39  8   AND SAMSUNG I BELIEVE IS ARGUING ONE OR MORE AND I

10:34:42  9   THINK A GROUP IS MORE THAN ONE.

10:34:43 10          THE COURT:  I THINK A GROUP IS MORE THAN

10:34:46 11   ONE.  HOW CAN ONE PERSON BE A GROUP?

10:34:48 12          MR. VERHOEVEN:  I'M SORRY, YOUR HONOR.  I

10:34:50 13   DIDN'T HEAR THE QUESTION.

10:34:51 14          THE COURT:  HOW CAN ONE PERSON BE -- OR

10:34:55 15   ONE THING BE A GROUP?

10:34:57 16          MR. VERHOEVEN:  WELL, A GROUP IS LIKE A

10:34:58 17   SET.  AND A SET IS ONE OR MORE, YOUR HONOR.

10:35:00 18          WELL, TO BACK UP, YOUR HONOR, I THINK AS

10:35:02 19   YOU KNOW, WE DON'T THINK THIS TERM NEEDS TO BE

10:35:05 20   CONSTRUED.  WE DON'T THINK IT MATTERS -- EXCUSE ME,

10:35:07 21   YOUR HONOR -- IT MATTERS FOR ANY NON-INFRINGEMENT

10:35:09 22   OR ANY INVALIDITY REASON.

10:35:12 23          WE MADE A STRONG EFFORT TO REACH A

10:35:15 24   COMPROMISE OVER THE LAST TWO DAYS AND IN ITS BRIEF

10:35:22 25   YOUR HONOR MAY RECALL SAMSUNG NOTED THAT IF THE

23

10:35:26 1    CONSTRUCTION IS NECESSARY FOR THE TERM "PIXEL,"

10:35:30 2    THAT WE BELIEVED THAT IT WAS THE SMALLEST

10:35:33 3    DISCERNABLE PART OF AN IMAGE.

10:35:35 4            ON JANUARY 18TH, WHEN WE WERE

10:35:38 5    NEGOTIATING --

10:35:38 6            THE COURT:  WELL, I DON'T WANT TO --

10:35:40 7    WE'LL TALK ABOUT PIXEL LATER.  I DON'T WANT TO TALK

10:35:43 8    ABOUT THAT NOW, UNLESS YOU WANT TO DO THAT TERM

10:35:45 9    FIRST.

10:35:46 10           MR. VERHOEVEN:  THAT'S FINE.  OKAY.

10:35:49 11           THE COURT:  ALL RIGHT.  WELL, THERE'S NO

10:35:51 12   AGREEMENT ON GROUP.

10:35:52 13           WHAT ABOUT THE PERSONS OF ORDINARY SKILL

10:35:54 14   IN THE ART?  HAVE YOU COME TO ANY MORE AGREEMENTS

10:35:59 15   AS TO WHAT THAT PERSON WOULD HAVE BY WAY OF

10:36:02 16   EDUCATION OR EXPERIENCE FOR THE DIFFERENT PATENTS?

10:36:06 17           MR. JACOBS:  NOT SINCE THE SUBMISSION

10:36:09 18   YESTERDAY AFTERNOON.  I DO BELIEVE TWO THINGS.

10:36:11 19   ONE, I BELIEVE IF WE WORK ON IT SOME MORE WE'LL GET

10:36:14 20   MUCH CLOSER AND RESOLVE SOME OF THE DISAGREEMENTS.

10:36:17 21           I ALSO BELIEVE THAT I CAN SPEAK FOR BOTH

10:36:19 22   SIDES ON THIS, THAT OUR CLAIM CONSTRUCTION

10:36:21 23   ARGUMENTS WON'T TURN ON OUR VARYING, OUR CURRENT

10:36:24 24   VARYING VIEWS ON THE LEVEL OF A PERSON OF ORDINARY

10:36:28 25   SKILL IN THE ART.

                                                              24

10:36:28   1         THE COURT:  DO YOU AGREE WITH THAT?

10:36:29   2         MR. JOHNSON:  I AGREE WITH THE LAST

10:36:31   3   STATEMENT.  I THINK THE PARTIES ARE CLOSE AND IT

10:36:32   4   WOULD BENEFIT THE PARTIES TO BE GIVEN THE

10:36:35   5   OPPORTUNITY TO TALK A LITTLE BIT MORE ABOUT THESE.

10:36:37   6         THE COURT:  OKAY.  LET ME ASK YOU, THE

10:36:39   7   ONE WHERE THE LEVEL OF SKILL IN THE ART MAY HAVE

10:36:43   8   SOME EFFECT MIGHT BE ACTUALLY APPLET AND WHAT

10:36:49   9   SOMEONE WOULD UNDERSTAND, YOU KNOW, JAVA VERSUS

10:36:55  10   INDEPENDENT OPERATING SYSTEM OR NOT.  DO YOU ALL

10:36:58  11   THINK THAT --

10:36:58  12         MR. JOHNSON:  I THINK WE'RE CLOSE ON

10:37:00  13   THAT.  THE ISSUE THAT WE HAVE WITH APPLE'S

10:37:02  14   CONSTRUCTION ON THAT IS THAT IF YOUR HONOR HAS THE

10:37:04  15   DOCUMENT THAT WE SUBMITTED, OUR ISSUE WITH IT IS

10:37:08  16   THAT APPLE'S CONSTRUCTION -- APPLE'S DEFINITION

10:37:12  17   INCLUDES EXPERIENCE IN THE AREAS OF MULTITASKING

10:37:16  18   SYSTEMS, WHICH IS FINE WITH US.

10:37:17  19         THE COURT:  OKAY.

10:37:18  20         MR. JOHNSON:  IMBEDDED SYSTEMS, I DON'T

10:37:21  21   KNOW WHAT IMBEDDED SYSTEMS MEANS.

10:37:23  22         AND THEN THE NEXT PART IS OR PROGRAMMING

10:37:25  23   FOR HANDHELD DEVICES?

10:37:27  24         WE TRIED TO MEET IN THE MIDDLE AND OUR

10:37:29  25   CONSTRUCT, YOU KNOW, OUR DEFINITION INCLUDES

                                                          25

10:37:32  1    EXPERIENCE IN MULTITASKING SYSTEMS AND COMPUTER

10:37:35  2    PROGRAMMING BUT IMBEDDED SYSTEMS, I JUST DON'T

10:37:38  3    UNDERSTAND WHAT THAT MEANS AND I ASKED THEM IF THEY

10:37:40  4    WOULD BE WILLING TO DROP IT AND THE ANSWER WAS NO.

10:37:45  5         THE COURT:  WELL, THE REASON I'M SAD

10:37:47  6    ABOUT '711 IS THAT YOU ALL WERE CLOSER IN YOUR

10:37:51  7    EXPERT DECLARATIONS TO AN AGREEMENT ON WHAT A

10:37:55  8    PERSON OF ORDINARY SKILL IN THE ART WOULD HAVE BY

10:37:57  9    WAY OF EXPERIENCE AND YOU HAVE GONE FURTHER AFTER

10:37:59 10    MEETING AND CONFERRING, WHICH IS UNFORTUNATE.

10:38:02 11         MR. JOHNSON:  I THINK WE'RE VERY CLOSE.

10:38:04 12    THE ISSUE IS THE IMBEDDED SYSTEMS ISSUE.

10:38:16 13         THE COURT:  OKAY.  DID YOU ALL CHANGE

10:38:18 14    BASED ON MR. COLE AND DR. GIVARGIS'S DECLARATIONS?

10:38:24 15    DID YOU ALL CHANGE WHAT YOU BELIEVED WOULD BE A

10:38:26 16    PERSON OF ORDINARY SKILL IN THE ART?  BECAUSE I

10:38:28 17    REMEMBER THINKING THAT THEY WERE, THEY WERE VERY,

10:38:31 18    VERY CLOSE BEFORE.

10:38:33 19         OKAY.  I GUESS DR. GIVARGIS STILL HAD

10:38:36 20    IMBEDDED SYSTEMS --

10:38:44 21         MR. JOHNSON:  WELL, WE ALSO TRIED TO

10:38:46 22    EXPLAIN THAT IF SOMEONE HAS A MASTER'S DEGREE, THEN

10:38:48 23    YOU DON'T NEED AS MUCH REAL WORLD EXPERIENCE IN

10:38:51 24    THAT SENSE BECAUSE WITH THE MASTER'S DEGREE YOU'RE

10:38:54 25    GOING TO GET AN EXTRA YEAR.

26

10:38:55  1                THE COURT:  AND HE, I THINK, AT LEAST

10:38:57  2       DR. GIVARGIS AGREES WITH YOU.

10:38:59  3                HE SAYS IF YOU HAVE A MORE ADVANCED

10:39:01  4       DEGREE, THEN YOU CAN HAVE SOMEWHAT LESS RESEARCH OR

10:39:05  5       WORK EXPERIENCE.

10:39:06  6                MR. JOHNSON:  RIGHT.

10:39:06  7                THE COURT:  I THINK THAT PART IS THE

10:39:08  8       SAME.

10:39:09  9                MR. JOHNSON:  I AGREE WITH YOU, IT'S JUST

10:39:10 10       THE WORDING IS A LITTLE BIT DIFFERENT FOR US AND

10:39:13 11       THE ISSUE WAS IMBEDDED SYSTEMS.

10:39:16 12                THE COURT:  SO LET ME ASK, FROM YOUR

10:39:18 13       PERSPECTIVE, THAT'S THE ONLY DIFFERENCE THAT IS

10:39:20 14       SIGNIFICANT?

10:39:20 15                MR. JOHNSON:  YES.

10:39:21 16                THE COURT:  OTHER THAN SORT OF --

10:39:23 17                MR. JOHNSON:  RIGHT.

10:39:24 18                THE COURT:  ALL RIGHT.  LET ME HEAR FROM

10:39:26 19       MR. LEE.

10:39:27 20                DO YOU AGREE THAT THAT'S THE ONLY

10:39:29 21       DIFFERENCE BETWEEN THE PARTIES USE AS IMBEDDED

10:39:34 22       SYSTEMS, OR NOT?

10:39:35 23                MR. LEE:  WELL, YOUR HONOR, IF IT IS, AT

10:39:37 24       LEAST THE MOST RECENT VERSION THAT I HAVE OF

10:39:40 25       SAMSUNG'S PROPOSAL HAS NOTHING IN IT ABOUT

                                                                27

10:39:43 1    MULTITASKING SYSTEMS AND PROGRAMMING FOR HANDHELD

10:39:48 2    DEVICES.

10:39:48 3              NOW, I MAY BE HEARING THAT'S NOT AN

10:39:53 4    ISSUE -- BUT WE HAVE THREE THINGS THAT WE'VE SAID,

10:39:56 5    YOUR HONOR, THAT REQUIRES PARTICULARLY FOR SOMEONE

10:39:58 6    WITH A BACHELOR'S DEGREE AND MORE SPECIFIC

10:40:00 7    EXPERIENCE, AND IT'S MULTITASKING IMBEDDED SYSTEMS

10:40:03 8    AND PROGRAMMING FOR HANDHELD DEVICES.

10:40:06 9              AND THE REASON THAT WE HAVE TRIED TO

10:40:09 10   IDENTIFY THOSE THREE IS, PARTICULARLY THE PERSON

10:40:12 11   WITH THE BACHELOR'S DEGREE WHO HAS A LESS ADVANCED

10:40:15 12   DEGREE, IS THE EXPERIENCE BECOMES MORE IMPORTANT.

10:40:17 13             AND AS YOUR HONOR KNOWS THE '711 THAT

10:40:20 14   CONCERNS THE HANDHELD DEVICE, IT CONCERNS

10:40:24 15   MULTITASKING AND IT CONCERNS DIFFERENT TYPES OF

10:40:29 16   IMBEDDED SYSTEMS FOR ACCOMPLISHING THE

10:40:31 17   MULTITASKING.

10:40:33 18             AND THE KEY HERE WILL BECOME JUST WHAT IS

10:40:35 19   AN APPLICATION MODULE AND WHAT IS APPLICATION

10:40:39 20   SOFTWARE?

10:40:39 21             SO IN ORDER TO READ THE SPECIFICATION AND

10:40:42 22   ITS REFERENCES TO THOSE TERMS, TO READ THE KOKUBO

10:40:46 23   REFERENCE, YOU NEED TO HAVE SOMEONE WHO HAS A

10:40:49 24   BACHELOR'S DEGREE AND SOME EXPERIENCE IN THOSE

10:40:55 25   AREAS, AND THAT'S WHY WE HAVE IDENTIFIED THOSE

                                                              28

10:40:57 1       THREE.

10:41:03 2                   THE COURT:  BOIL THAT DOWN FOR ME.  SO

10:41:04 3       YOU THINK THE DIFFERENCES ARE IMBEDDED SYSTEMS AND

10:41:07 4       THE PROGRAMMING EXPERIENCE HAS TO BE SPECIFIC TO

10:41:08 5       HANDHELD DEVICES.

10:41:10 6                   MR. LEE:  I WOULD SAY YES, YOUR HONOR,

10:41:12 7       AND I WOULD ADD MULTITASKING SYSTEMS.

10:41:15 8                   THE COURT:  OKAY.  BUT SAMSUNG HAS THAT

10:41:17 9       IN THEIR DEFINITION AS WELL, SEVERAL YEARS OF

10:41:22 10      EXPERIENCE IN MULTITASKING SYSTEMS AND COMPUTER

10:41:26 11      PROGRAMMING IS WHAT THEY HAVE.

10:41:27 12                  MR. LEE:  AND THERE HAVE BEEN A COUPLE OF

10:41:29 13      DIFFERENT DEFINITIONS THAT HAVE FLOWN AROUND, AND

10:41:32 14      I'M LOOKING AT THE DEFINITION THAT CAME IN COLE'S

10:41:35 15      DECLARATION, WHICH IS BROADER THAN THAT.

10:41:37 16                  MR. JOHNSON:  THIS IS -- WE DID THIS AS

10:41:39 17      PART OF THE MEET AND CONFER WITH YOUR TEAM.

10:41:41 18                  THE COURT:  YEAH.  MR. COLE'S JUST SAYS

10:41:44 19      RELATIVE EXPERIENCE AND IT DOESN'T DEFINE THE

10:41:46 20      SPECIFIC AREA.

10:41:47 21                  MR. LEE:  RIGHT.

10:41:48 22                  THE COURT:  BUT I THINK YOU'RE IN

10:41:49 23      AGREEMENT ON MULTITASKING SYSTEMS NOW.

10:41:53 24                  MR. LEE:  RIGHT.

10:41:54 25                  THE COURT:  OKAY.

                                                                29

10:41:57  1          MR. JOHNSON:  OUR ISSUE WITH HANDHELD

10:41:59  2     DEVICES IS THAT THE CLAIMS ARE NOT SO LIMITED WITH

10:42:02  3     HANDHELD DEVICES.  THE PATENT IS NOT SO LIMITED TO

10:42:05  4     HANDHELD DEVICES NECESSARILY.

10:42:06  5          SO I THINK OUR DEFINITION COVERS THE

10:42:09  6     EXPERIENCE THAT APPLE HAS IN MIND BUT IT'S NOT SO

10:42:16  7     LIMITED TO HANDHELD DEVICES.

10:42:19  8          THE COURT:  OKAY.  LET ME ASK, HOW IS THE

10:42:24  9     COURT TO DECIDE WHICH ONE IS CORRECT?  IT SEEMS

10:42:27 10     SOMEWHAT -- WHAT WOULD THE BASIS BE, JUST LOOKING

10:42:30 11     AT THE PATENT AND WHAT WAS WITHIN THE SCOPE OF THE

10:42:33 12     PATENT LIKE MR. JOHNSON SUGGESTS OR --

10:42:38 13          MR. LEE:  YOUR HONOR, IT'S A HARD

10:42:40 14     QUESTION.  I THINK THE ANSWER IS ONCE THE COURT

10:42:42 15     CONSIDERS THE PATENTS, THE CLAIM, AND THE

10:42:45 16     SPECIFICATION, BUT ALSO CONSIDERS THE FILE HISTORY,

10:42:48 17     THE QUESTION THEN BECOMES WHO IS THE PERSON OF

10:42:51 18     ORDINARY SKILL IN THE ART FOR THAT INTRINSIC

10:42:54 19     EVIDENCE?

10:42:55 20          AND I THINK THAT'S WHERE WE HAVE A LITTLE

10:42:57 21     BIT OF A DISPUTE.  WE THINK THAT WHEN THE COURT

10:43:02 22     CONSIDERS WHAT THE PATENT SAYS AND IT SAYS ABOUT

10:43:06 23     APPLICATION SYSTEMS AND IMBEDDED PROGRAMS, THE

10:43:11 24     REQUIREMENT THAT THERE BE A HIGHER LEVEL OF

10:43:15 25     EXPERIENCE WITH SOMEONE WITH A BACHELOR'S DEGREE

30

10:43:17 1    MAKES SENSE TO US.

10:43:26 2           THE COURT:  WHEN WE COVER APPLET LATER,

10:43:28 3    WILL YOU BE ARGUING THAT WHETHER IMBEDDED SYSTEMS

10:43:31 4    AND HANDHELD DEVICES PROGRAMMING IS INCLUDED OR NOT

10:43:36 5    IN WHAT A PERSON OF ORDINARY SKILL IN THE ART WOULD

10:43:40 6    KNOW THAT THAT'S GOING TO MAKE A DIFFERENCE AS TO

10:43:42 7    SMALL OR WITHIN AN APPLICATION MODULE OR WHETHER

10:43:46 8    THE OPERATING SYSTEM IS DEPENDENT OR INDEPENDENT?

10:43:53 9           MR. LEE:  I THINK, YOUR HONOR, ON THE

10:43:57 10   FIRST TWO I THINK THE ANSWER IS NO.  I THINK UNDER

10:44:00 11   THE FIRST TWO ENTRIES, NO, BECAUSE WE CAN ADDRESS

10:44:01 12   THAT WITH MR. COLE'S TESTIMONY ITSELF.

10:44:04 13          I THINK AS TO THE LATTER IT GOES BACK A

10:44:06 14   LITTLE BIT TO THE MOTION TO STRIKE AND THE QUESTION

10:44:10 15   OF HOW MUCH YOUR HONOR HAS BEFORE YOU.

10:44:11 16          THE QUESTION OF SOME OF THESE OTHER

10:44:13 17   REFERENCES THAT MR. COLE RELIES UPON LIKE RUBY,

10:44:16 18   LIKE FLASH, SOMEONE WHO HAS A BACHELOR'S DEGREE BUT

10:44:19 19   SOME EXPERIENCE WITH IMBEDDED SYSTEMS IS GOING TO

10:44:22 20   KNOW THAT THEY OPERATE THROUGH AN INTERPRETER, AND,

10:44:24 21   THEREFORE, OPERATING SYSTEM INDEPENDENT.

10:44:30 22          NOW, IF THE ARGUMENT -- I'M NOT SURE

10:44:32 23   THERE'S A DIFFERENCE IN THE ARGUMENT, DEPENDING

10:44:34 24   UPON WHO THE PERSON OF ORDINARY SKILL IS.

10:44:38 25          IF THE ARGUMENT TO BE MADE BY SAMSUNG IS

31

10:44:41 1    THE PERSON WITH THE LOWER LEVEL OF SKILL IN THE ART

10:44:44 2    WOULD NOT KNOW THAT THEY WERE OPERATING SYSTEMS

10:44:47 3    INDEPENDENT, THEN WE DO HAVE A DISPUTE.

10:44:48 4          IF THAT'S NOT GOING TO BE THE ARGUMENT,

10:44:51 5    THEN IT MAY NOT MAKE A DIFFERENCE.

10:44:53 6          MR. JOHNSON:  I'M NOT SURE IT'S -- IT'S

10:44:57 7    APPLE'S ARGUMENT IN THAT SENSE.  I MEAN, FROM OUR

10:45:01 8    STANDPOINT WE ARE -- THEY'RE MAKING THE ARGUMENT TO

10:45:03 9    TRY AND LIMIT APPLET TO OPERATING SYSTEMS

10:45:05 10   INDEPENDENT APPLET.

10:45:07 11         AND SO IT SOUNDS LIKE THE DEFINITION TO

10:45:09 12   INCLUDE, YOU KNOW, SOMEBODY HAS EXPERIENCE WITH

10:45:12 13   PARTICULARLY HANDHELD DEVICES IS TIED TO THAT.

10:45:15 14         I DON'T THINK THE PATENT -- I DON'T THINK

10:45:17 15   THE PATENT IS SO LIMITED, AND I THINK YOUR HONOR IS

10:45:19 16   CORRECT TO THINK ABOUT IT IN TERMS OF LOOKING AT

10:45:22 17   THE PATENT, THE SPECIFICATION, THE CLAIMS, THE

10:45:25 18   PROSECUTION HISTORY TO DETERMINE WHO IS THIS PATENT

10:45:31 19   BASICALLY AIMED AT AND WHO ARE THE PERSONS OF

10:45:34 20   ORDINARY SKILL IN THE ART.

10:45:35 21         AND, YOU KNOW, THE PRIOR ART THAT WAS

10:45:37 22   DISCUSSED, I DON'T THINK THE PRIOR ART THAT WAS

10:45:39 23   DISCUSSED EVEN IN THE CITED REFERENCES, I'LL CHECK,

10:45:42 24   BUT I DON'T THINK IT WAS LIMITED TO HANDHELD

10:45:44 25   DEVICES.

32

10:45:45 1          SO I THINK THAT THIS IS IMPORTING ANOTHER

10:45:48 2     SORT OF LIMITATION INTO EVEN THE DEFINITION OF

10:45:52 3     ORDINARY SKILL IN THE ART.

10:45:52 4          NOW I UNDERSTAND WHY APPLE WAS TRYING TO

10:45:55 5     DO IT.

10:45:56 6          THE COURT:  OKAY.  CAN I ASK A QUESTION?

10:45:59 7          MR. JOHNSON, DO YOU AGREE THAT OTHER THAN

10:46:02 8     FOR APPLET, WHO A PERSON OF ORDINARY SKILL IN THE

10:46:06 9     ART IS REALLY SHOULDN'T CHANGE THE CONSTRUCTION?

10:46:09 10         MR. JOHNSON:  YES.

10:46:09 11         THE COURT:  OKAY.  SO THE PARTIES AGREE

10:46:11 12    ON THAT?

10:46:12 13         MR. LEE:  YES.

10:46:12 14         THE COURT:  OKAY.  SO LET'S SEE IF WE CAN

10:46:14 15    NARROW AT LEAST FOR APPLET WHETHER IT MATTERS.

10:46:17 16         DO YOU THINK -- DO BOTH SIDES THINK THAT

10:46:19 17    FOR "SMALL" IT MATTERS WHETHER EXACTLY THE TYPE OF

10:46:24 18    EXPERIENCE THE PERSON HAS?

10:46:27 19         MR. LEE:  I THINK THE ARGUMENT CAN BE

10:46:28 20    SUBMITTED, YOUR HONOR, AND THE ANSWER IS NO.

10:46:31 21         THE COURT:  OKAY.  SO YOU AGREE WITH

10:46:33 22    THAT?  OKAY.  IT DOESN'T MATTER.

10:46:35 23         OKAY.  WHAT ABOUT WITHIN AN APPLICATION

10:46:37 24    MODULE BEING EITHER WITHIN AN APPLICATION PROGRAM.

10:46:40 25    DOES IT MATTER?

                                                        33

10:46:41 1                    MR. LEE:  YES.

10:46:42 2                    THE COURT:  IT MATTERS?

10:46:43 3                    MR. LEE:  YES, THAT'S THE IMBEDDED

10:46:45 4    SYSTEMS ISSUE.

10:46:46 5                    THE COURT:  DO YOU AGREE THAT IT MATTERS?

10:46:48 6                    MR. JOHNSON:  WELL, I GUESS IT DOES.  I

10:46:49 7    WOULD HAVE SAID STARTING OUT THAT IT DOESN'T

10:46:52 8    NECESSARILY MATTER, BUT NOW THAT I HEAR HIS

10:46:54 9    ARGUMENT, I THINK IT DOES.

10:46:55 10                   THE COURT:  IT MATTERS.  OKAY.  AND THEN

10:46:56 11   I ASSUME THAT BOTH SIDES AGREE THAT WITH REGARD TO

10:47:00 12   OPERATING SYSTEM INDEPENDENT IT MATTERS?

10:47:03 13                   MR. LEE:  YES.

10:47:04 14                   MR. JOHNSON:  YES.

10:47:04 15                   THE COURT:  ALL RIGHT.  THEN WHY DON'T WE

10:47:06 16   DO THIS, WHEN WE GET TO APPLET, CAN BOTH SIDES AT

10:47:10 17   THAT -- DURING THAT TERM EXPLAIN WHY IT MATTERS AND

10:47:13 18   HOW IT MATTERS?

10:47:15 19                   MR. LEE:  YES.

10:47:15 20                   THE COURT:  OKAY.  ALL RIGHT.  ALL RIGHT.

10:47:22 21   I'M SORRY THE HOUSEKEEPING STUFF IS TAKING A LONG

10:47:25 22   TIME.  I THINK THAT WAS IT, RIGHT, THE MOTION TO

10:47:28 23   STRIKE AND THEN -- ALL RIGHT.  THEN WHY DON'T WE

10:47:30 24   START WITH WHATEVER TERM YOU WANT TO START WITH.

10:47:33 25                   MR. JOHNSON:  I THINK WE'RE STARTING WITH

                                                                    34

10:47:34  1      THE '002 PATENT.

10:47:36  2              THE COURT:  THE '002?

10:47:38  3              MR. JACOBS:  YES.  AND PER YOUR

10:47:48  4      INSTRUCTIONS, YOUR HONOR, WE'LL ALTERNATE BETWEEN

10:47:50  5      THE PATENTS.  IN ONE PARTICULAR CASE WE HAVE A

10:47:54  6      SLIGHTLY DIFFERENT ORDER WITHIN A PATENT, BUT I'LL

10:47:56  7      HIGHLIGHT THAT FOR YOU WHEN WE GET TO THAT.

10:47:58  8      MEANING I'LL GO FIRST AND THEN SAMSUNG WILL RESPOND

10:48:02  9      ON THE CLAIM CONSTRUCTION DISPUTE ON THAT PATENT.

10:48:06 10              THE COURT:  OKAY.  AND WE'RE STARTING

10:48:07 11      WITH THE '002 --

10:48:09 12              MR. JACOBS:  THE '002 PATENT, THE CONTROL

10:48:14 13      STRIP.

10:48:15 14              THE COURT:  OKAY.

10:48:31 15              MR. JACOBS:  YOUR HONOR, YOU WILL I

10:48:32 16      BELIEVE RECALL THAT THIS PATENT IS ABOUT HAVING A

10:48:35 17      CONTROL STRIP THAT APPEARS IN FRONT OF APPLICATION

10:48:37 18      WINDOWS AND PROVIDES STATUS INFORMATION.

10:48:42 19              IF ONE THINKS OF A MODERN MOBILE DEVICE

10:48:45 20      THIS WOULD BE THE BAR THAT TELLS YOU THAT YOUR

10:48:47 21      BATTERY STRENGTH AND YOUR SIGNAL STRENGTH AND THAT

10:48:50 22      KIND OF STATUS INFORMATION THAT WANTS TO BE IN

10:48:54 23      FRONT OF A USER IN MOST CASES.  AND THAT'S WHAT

10:48:58 24      THIS PATENT DESCRIBES.

10:49:02 25              THE SPECIFICATION AT FIGURE 2A SHOWS THE

                                                              35

10:49:04  1    STATUS BAR AT THE BOTTOM AND SHOWS IT APPEARING IN

10:49:07  2    FRONT OF APPLICATION WINDOWS THAT ARE ALSO OPEN ON

10:49:10  3    THE SCREEN.

10:49:15  4           LATER ON, YOUR HONOR, WE'RE GOING TO BE

10:49:17  5    TALKING ABOUT MATHEMATICALLY FITTING AN ELLIPSE AND

10:49:22  6    THE PROCESS OF FITTING.  AND AS WE GET INTO THIS

10:49:25  7    CLAIM CONSTRUCTION ISSUES, IT STRUCK ME THAT WE'RE

10:49:29  8    DOING A FITTING PROCESS AS WELL.

10:49:30  9           WE'RE LOOKING AT THE EVIDENCE, WE ARE

10:49:31 10    LOOKING AT THE EVIDENCE IN THE HIERARCHY THAT THE

10:49:32 11    FEDERAL CIRCUIT HAS DIRECTED US THAT WE LOOK AT THE

10:49:34 12    EVIDENCE, AND WE'RE DETERMINING WHAT IS THE BEST

10:49:36 13    FIT AND WHETHER IT'S IMPORTANT TO GO BEYOND THE

10:49:40 14    PLAIN LANGUAGE OF THE CLAIM AND NARROW IT OR EXPAND

10:49:45 15    UPON IT IN SOME WAY TO ADD CLARITY.

10:49:47 16           IN THIS PARTICULAR CASE WE URGE THAT THE

10:49:49 17    BEST FIT IS TO STAY WITH THE PLAIN LANGUAGE AND

10:49:53 18    THAT TO ADD SAMSUNG'S PROPOSED LIMITATION WOULD BE

10:49:58 19    LEGAL ERROR AND AN ERROR IN THE SENSE OF JUST

10:50:02 20    LOOKING AT THE EVIDENCE AND TRYING TO FIGURE OUT

10:50:04 21    WHAT THE INVENTION IS AND WHAT THE APPLICANT WAS

10:50:08 22    CLAIMING AS PROSECUTION PROCEEDED THROUGH THE

10:50:10 23    PATENT OFFICE.

10:50:11 24           SO IN THIS PARTICULAR CASE ONE CAN SEE

10:50:13 25    FROM SAMSUNG'S PROPOSED INSTRUCTION SOME VERY

                                                              36

10:50:17  1    POWERFUL CLAIM CONSTRUCTION WORDS, WORDS THAT YOU

10:50:20  2    JUST KNOW WHERE THE NON-INFRINGEMENT ARGUMENT IS

10:50:23  3    GOING.

10:50:23  4         THERE IS NEVER OBSCURED BY ANY PORTION OF

10:50:27  5    ANY APPLICATION WINDOWS THAT ARE GENERATED OR THAT

10:50:31  6    ARE CAPABLE OF BEING GENERATED.

10:50:32  7         THAT IS A PROPOSED NARROWING OF THE CLAIM

10:50:36  8    LANGUAGE THAT ON ITS FACE SIGNALS TO US WHERE

10:50:40  9    SAMSUNG WOULD PROPOSE TO GO WITH ITS

10:50:43 10    NON-INFRINGEMENT POSITION.

10:50:44 11         SO ONE CAN ASK A COUPLE OF QUESTIONS

10:50:46 12    ABOUT THIS CLAIM LANGUAGE IN THE PATENT.  DOES IT

10:50:49 13    APPLY IF THE USER TOGGLES KIND OF AN ON AND OFF ON

10:50:53 14    THE STATUS BAR?

10:50:54 15         IS THE CLAIM LANGUAGE TO BE NARROWED SUCH

10:50:56 16    THAT SAMSUNG WOULD HAVE AN ARGUMENT OF

10:50:59 17    NON-INFRINGEMENT IF THE USER HAS THAT KIND OF

10:51:02 18    CAPABILITY?

10:51:02 19         WHAT IF THERE IS KIND OF A TOGGLING ON

10:51:06 20    AND OFF OF THE STATUS BAR ON ACCOUNT OF A

10:51:07 21    PARTICULAR APPLICATION THAT IS RUNNING?

10:51:09 22         WHAT IF THE APPLICATION -- WHAT IF THE

10:51:11 23    SYSTEM GIVES AN APPLICATION THE CAPABILITY TO SAY

10:51:14 24    TO IT, YOU KNOW WHAT, I WANT THE WHOLE SCREEN, I

10:51:17 25    WANT TO OBSCURE THE CONTROL STRIP, AND I WANT TO

37

10:51:20 1    OBSCURE THIS FIRST WINDOW REGION?

10:51:25 2              NOW, THIS IS THE PARTICULAR CLAIM

10:51:31 3    LANGUAGE THAT IS AT ISSUE:  "THE FIRST WINDOW

10:51:36 4    REGION AND THE PLURALITY OF INDEPENDENT DISPLAY

10:51:39 5    AREAS IMPLEMENTED IN A WINDOW LAYER THAT APPEARS ON

10:51:42 6    TOP OF APPLICATION PROGRAMMING WINDOWS THAT MAY BE

10:51:46 7    GENERATED."

10:51:47 8              AND WHAT SAMSUNG IS DOING, IN EFFECT, IS

10:51:50 9    THAT THEY'RE PROPOSING TO ADD AN "ANY" ON TOP OF

10:51:54 10   "ANY APPLICATION WINDOWS THAT MAY BE GENERATED" OR

10:51:58 11   "ALWAYS APPEARS ON TOP OF APPLICATION WINDOWS."

10:52:03 12             SO THE FIRST THING TO OBSERVE IS THAT THE

10:52:05 13   CLAIM LANGUAGE DOES NOT HAVE THAT -- DOES NOT

10:52:08 14   FORMULATE IT IN THAT WAY, AND THERE IS NO "ANY" OR

10:52:10 15   "ALWAYS" IN THIS PARTICULAR LOCATION OF CLAIM 1 OF

10:52:13 16   THE '002 PATENT.

10:52:19 17             THERE ARE EMBODIMENTS THAT ANSWER THE

10:52:21 18   QUESTION THAT I POSED AT THE BEGINNING:  CAN THE

10:52:24 19   USER TOGGLE ON AND OFF?  CAN AN APPLICATION PROGRAM

10:52:29 20   TOGGLE ON AND OFF?

10:52:32 21             AND SO IN THE '002 PATENT THERE IS AN

10:52:36 22   EMBODIMENT AND IT'S CLAIMED IN A DEPENDENT CLAIM IN

10:52:40 23   WHICH THE FIRST WINDOW -- THERE'S AN EMBODIMENT

10:52:41 24   THAT IS CLAIMED IN WHICH IT'S ALWAYS ON TOP AND

10:52:43 25   THERE'S ANOTHER EMBODIMENT IN WHICH THE USER CAN

                                                              38

10:52:45  1      HIDE THE CONTROL STRIP.

10:52:47  2              SO THE SPECIFICATION READS:  "IN ONE

10:52:50  3      EMBODIMENT TO MAKE THE CONTROL STRIP DISAPPEAR

10:52:54  4      COMPLETELY, THE USER CAN CLICK THE HIDE BUTTON IN

10:52:57  5      THE CONTROL STRIP CONTROL PANEL AS DESCRIBED LATER

10:53:00  6      IN CONJUNCTION WITH FIGURE 3."

10:53:02  7              AND THEN FIGURE 3 SHOWS PRECISELY THIS

10:53:04  8      KIND OF TOGGLING HIDE/DON'T HIDE CAPABILITY.

10:53:08  9              BUT THE SPECIFICATION ALSO ANSWERS MY

10:53:11 10      SECOND QUESTION, WHICH IS WHAT ABOUT IN THE

10:53:13 11      CAPABILITY OF AN APPLICATION PROGRAM TO SAY HIDE

10:53:16 12      THE CONTROL STRIP?

10:53:18 13              CAN AN APPLICATION PROGRAM SAY THAT I

10:53:20 14      WANT TO OCCUPY THE WHOLE SCREEN?  I DON'T WANT A

10:53:24 15      LAYER OR A PORTION AT THE TOP OR BOTTOM HIDDEN BY A

10:53:27 16      CONTROL STRIP?

10:53:27 17              THIS IS LANGUAGE, BY THE WAY, THAT COMES

10:53:30 18      FROM THE ATTACHMENT TO THE CHRISTENSEN TESTIMONY

10:53:35 19      THAT SAMSUNG ADDED AND PUT IN ITS OPPOSITION.

10:53:38 20              SO THE INVENTOR IS ASKED, DOES THE -- WAS

10:53:42 21      YOUR INVENTION TO HIDE -- TO HAVE THE CONTROL STRIP

10:53:46 22      BE ON TOP?

10:53:47 23              AND HE SAYS SOMETHING ALONG THE LINES OF,

10:53:49 24      YES, IT WAS TO BE ON TOP.  THEY NEVER ASKED HIM

10:53:53 25      ALWAYS AND THEY NEVER ASKED HIM ABOUT THE MATERIAL

                                                            39

10:53:55  1    ATTACHED TO THAT TRANSCRIPT, WHICH IS HIS

10:53:58  2    DISCLOSURE, INTERNAL DISCLOSURE OF THE

10:54:00  3    SPECIFICATION WHICH FINDS ITS WAY INTO THE

10:54:02  4    SPECIFICATION.

10:54:03  5            AND WHAT THE SPECIFICATION SAYS IS,

10:54:06  6    THERE'S A SHOW HIDE CONTROL STRIP ROUTINE.  IT

10:54:11  7    PROVIDES A MEANS FOR OTHER SOFTWARE TO HIDE THE

10:54:14  8    CONTROL STRIP WHEN IT IS IN THE WAY.

10:54:15  9            SO THE SPECIFICATION ANSWERS BOTH OF MY

10:54:19 10    QUESTIONS AT THE BEGINNING.  AS DISCLOSED, AS

10:54:23 11    DESCRIBED, CAN THE USER TOGGLE ON AND OFF?  AND CAN

10:54:27 12    AN APPLICATION PROGRAM HIDE THE CONTROL STRIP?

10:54:33 13            THE COURT:  LET ME ASK YOU A QUESTION.

10:54:37 14    WOULD YOU AGREE THAT THE FIRST WINDOW REGION IS

10:54:40 15    EITHER HIDDEN OR NOT VISIBLE OR IF IT IS VISIBLE

10:54:46 16    THEN IT HAS TO BE ON TOP?

10:54:55 17            MR. JACOBS:  I DON'T THINK THAT IS THE

10:54:57 18    CASE.

10:54:57 19            THE COURT:  WHY?

10:54:58 20            MR. JACOBS:  BECAUSE THERE IS NO SUCH

10:54:59 21    LIMITATION IN THE CLAIM LANGUAGE.  IT IS ON TOP OF

10:55:03 22    APPLICATION PROGRAMMING WINDOWS THAT MAY BE

10:55:05 23    GENERATED IMPLIES A, TO ME, A SOME OR ALL.  BOTH

10:55:20 24    CASES WOULD BE MET BY THE CLAIM LANGUAGE.

10:55:22 25            SO WHAT ARE SAMSUNG'S LEGAL ERRORS?  THIS

                                                              40

10:55:25 1    NEGATIVE LIMITATION THAT THERE IS NEVER, ALWAYS,

10:55:28 2    ANY KIND OF APPROACH THAT THEY'VE ADOPTED IN THEIR

10:55:31 3    CONSTRUCTION IS PUTTING A NEGATIVE LIMITATION IN

10:55:33 4    THE CLAIM THAT SHOULD JUST NOT BE FOUND THERE.

10:55:36 5          AS INDICATED EARLIER, THEIR PROPOSED

10:55:38 6    CONSTRUCTION WOULD IMPROPERLY EXCLUDE THESE HIDE

10:55:41 7    CONTROL STRIP EMBODIMENTS, AND THEY VIOLATE THE

10:55:46 8    DOCTRINE OF CLAIM DIFFERENTIATION.

10:55:48 9          I SHOULD SAY ONE THING THAT BECAME

10:55:51 10   APPARENT IN PREPARING FOR THIS MARKMAN, I THINK THE

10:55:54 11   CLAIM LANGUAGE ITSELF IN MORE CASES THAN THE

10:55:56 12   PARTIES HAVE FOCUSSED ANSWERS A LOT OF THESE CLAIMS

10:56:01 13   CONSTRUCTIONS AND THIS IS AN EXAMPLE OF ONE.

10:56:03 14         AND IN PARTICULAR IN CLAIM 1, WHAT IS

10:56:06 15   NOTEWORTHY IS "ANY" WAS USED WHEN "ANY" WAS MEANT.

10:56:12 16         SO ELSEWHERE IN THIS CLAIM WHERE IT SAYS,

10:56:15 17   "WITHIN THE FIRST WINDOW REGION IS INDEPENDENTLY

10:56:18 18   DISPLAYED AND INDEPENDENTLY ACTIVE OF ANY

10:56:21 19   APPLICATION PROGRAM."

10:56:23 20         SO "ANY" APPEARS RIGHT THERE.  IT IS

10:56:24 21   INDEPENDENTLY DISPLAYED AND INDEPENDENTLY ACTIVE OF

10:56:28 22   ANY APPLICATION PROGRAM.

10:56:29 23         BUT LATER ON WHEN WE'RE TALKING ABOUT THE

10:56:31 24   APPEARANCE ON TOP QUESTION, THE "ANY" IS OMITTED.

10:56:35 25         SO THE CLAIM DRAFTERS KNEW WHERE TO WRITE

41

10:56:38  1    "ANY" WHEN THEY MEANT "ANY" AND WHERE NOT TO.

10:56:44  2              THERE IS, OF COURSE, AN EMBODIMENT, ONE

10:56:47  3    EMBODIMENT WHERE "THE CONTROL STRIP WINDOWS APPEARS

10:56:49  4    ON TOP OF ALL APPLICATION PROGRAMMING WINDOWS THAT

10:56:52  5    MAY BE GENERATED AS PART OF THE EXECUTION OF AN

10:56:54  6    APPLICATION PROGRAM."

10:56:56  7              AND THAT EMBODIMENT AS CLAIMED IN CLAIM

10:57:02  8    12 OR 13 IS IN SLIGHTLY DIFFERENT WAYS.

10:57:04  9              IN CLAIM 12 "ALWAYS" IS IN THE CLAIM

10:57:07 10    LANGUAGE.  "THE DISPLAY SYSTEM DEFINED IN CLAIM 1

10:57:11 11    WHEREIN THE FIRST WINDOW REGION ALWAYS APPEARS IN

10:57:15 12    FRONT OF THE APPLICATION WINDOWS."

10:57:18 13              OR IN CLAIM 13, "THE DISPLAY SYSTEM

10:57:22 14    DEFINED IN CLAIM 1 WHEREIN THE FIRST WINDOW REGION

10:57:25 15    IS IMPLEMENTED IN A PRIVATE WINDOW LAYER THAT

10:57:28 16    APPEARS IN FRONT OF WINDOWS FOR ALL APPLICATION

10:57:31 17    LAYERS."

10:57:33 18              AND ALSO IN THE CLAIM OF THE '002 PATENT

10:57:36 19    ONE WILL FIND THIS LIMITATION AS WELL.

10:57:38 20              SO THIS IS A CASE WHERE THE CLAIM

10:57:41 21    DIFFERENTIATION ARGUMENT IS QUITE SYNERGISTIC AND

10:57:44 22    REENFORCING OF THE OTHER ARGUMENTS.

10:57:46 23              WE HAVE ALTERNATIVE EMBODIMENTS DISCLOSED

10:57:48 24    IN THE SPECIFICATION; AND WE HAVE CLAIM LANGUAGE

10:57:51 25    WHICH IT DISTINGUISHES IN THE INDEPENDENT CLAIM

42

10:57:53 1    BETWEEN THE "ANY" AND THE "NON-ANY" CASE; AND THEN

10:57:55 2    WE HAVE DEPENDENT CLAIMS THAT THROUGH THE USE OF

10:57:58 3    THE WORD "ALWAYS" CLAIM THE "ALWAYS IN FRONT"

10:58:02 4    NARROWING LIMITATION.

10:58:13 5         THE OFFICE ACTION AND FILE HISTORY

10:58:16 6    ARGUMENT THAT SAMSUNG MAKES FOCUSES ON SOME

10:58:21 7    LANGUAGE THAT THE APPLICANT PUT BEFORE THE PATENT

10:58:25 8    OFFICE IN EXPLAINING WHAT THE INVENTION WAS ALL

10:58:27 9    ABOUT.

10:58:27 10        THIS IS WHERE FITTING AND HIERARCHY COMES

10:58:31 11   INTO PLAY BECAUSE THE LANGUAGE IS NOT A CRISP,

10:58:37 12   CLEAR DISCLAIMER SUCH THAT THAT "ANY" LIMITATION

10:58:44 13   SHOULD BE READ INTO CLAIM 1.

10:58:45 14        IN FACT, THE LANGUAGE ITSELF IS LARGELY

10:58:48 15   INCONSISTENT WITH THE TAILEND OF CLAIM 1, WHICH

10:58:50 16   ITSELF DOES NOT HAVE THIS "ANY" OR "ALWAYS"

10:58:52 17   LANGUAGE.

10:58:53 18        AND IN PARTICULAR, ESPECIALLY IF ONE

10:58:56 19   READS THE ACTUAL LANGUAGE OF THE OFFICE ACTION

10:59:00 20   RESPONSE AT THE LOWER LEVEL AT THE P.T.O., ALL THAT

10:59:03 21   THE APPLICANT SAID WAS THAT IT ALLOWS THE USER TO

10:59:06 22   HAVE AN UNOBSTRUCTED VIEW OF THE AREA AND THUS THE

10:59:10 23   WINDOW ALWAYS MAY BE VISIBLE -- I'M SORRY -- MAY BE

10:59:14 24   ALWAYS VISIBLE.  THERE'S AN ERROR IN SAMSUNG'S

10:59:17 25   BRIEF.  THE WINDOW MAY BE ALWAYS VISIBLE.  AND SO

43

10:59:21  1    MAY BE -- IT DOESN'T SAY "ALWAYS VISIBLE."

10:59:24  2           THE COURT:  I'M SORRY TO INTERRUPT YOU.

10:59:26  3    I AGREE WITH YOU THAT I DON'T AGREE WITH SAMSUNG

10:59:30  4    THAT IT HAS TO AL -- THAT IT CAN NEVER BE OBSCURED.

10:59:33  5           BUT WHERE I'M NOT AGREEING WITH YOU IS IF

10:59:34  6    IT IS VISIBLE WHETHER IT HAS TO BE ON TOP OF THE

10:59:38  7    APPLICATION.

10:59:38  8           SO MAYBE YOU CAN TALK ABOUT APPLE

10:59:40  9    DISTINGUISHED THE HANSEN REFERENCE IN THE

10:59:46 10    PROSECUTION HISTORY BECAUSE I THINK THAT'S WHERE

10:59:48 11    SAMSUNG ARGUES THAT --

10:59:50 12           MR. JACOBS:  I THINK YOU HAVE TO LOOK

10:59:52 13    VERY CLOSELY AT HANSEN.  HANSEN ITSELF IS A PRIOR

10:59:57 14    ART REFERENCE THAT IF YOU LOOK AT THE CLAIM, IT HAS

11:00:00 15    A KIND OF ALWAYS CHARACTERISTIC.

11:00:02 16           I THINK WHAT YOU HAVE TO DO IN THIS CASE

11:00:04 17    WHEN LOOKING AT THE WAY THAT APPLICANTS DISTINGUISH

11:00:07 18    PRIOR ART REFERENCE AND LOOK AT WHAT THEY'VE SAID

11:00:09 19    AND WHETHER THERE'S A CLEAR DISCLAIMER OR NOT.

11:00:12 20           APPLE CAN ADVANCE ARGUMENTS AND SAY

11:00:17 21    THINGS TO THE P.T.O.  I THINK ONE OF SAMSUNG'S

11:00:19 22    APPROACHES TO CLAIM CONSTRUCTION HERE IS TO LOOK --

11:00:21 23    TO SAY LOOK AT THE PRIOR ART AND LOOK AT THIS

11:00:23 24    ARGUMENT, AND THIS ARGUMENT CAN ONLY MEAN X WHEN

11:00:25 25    THE ARGUMENT WAS NOT X.  THE ARGUMENT WAS SOMETHING

                                                         44

11:00:28 1    MUCH SHORT OF X.  AND THAT IS THE RIGHT THING TO DO

2    HERE BECAUSE WHAT APPLE SAYS IN ITS APPEAL BRIEF,

3    AGAIN DISTINGUISHING HANSEN, IS IT MAKES IT VERY

4    CLEAR IS THAT WE ARE JUST TALKING ABOUT IN ONE

5    EMBODIMENT THE CONTROL STRIP THAT IS IMPLEMENTED IN

6    A PRIVATE WINDOW LAYER THAT APPEARS IN FRONT OF THE

11:00:51 7    WINDOWS OF ALL OF THE OTHER APPLICATION LAYERS.

11:00:51 8    THIS PREVENTS OTHER WINDOWS FROM OBSCURING IT.

11:00:54 9            SO I THINK MY ARGUMENT IS TWO-FOLD.  ONE,

11:00:55 10   WE CAN HYPOTHESIZE ABOUT WHAT MIGHT HAVE BEEN IN

11:00:58 11   THE MINDS OF THE EXAMINER WITH THAT REFERENCE IN

11:01:01 12   FRONT OF HIM IN TRYING TO REINTERPRET THE ACTUAL

11:01:04 13   LANGUAGE THAT APPLE USED.

11:01:05 14            I THINK THAT'S ERROR.

11:01:10 15            WHEN YOU LOOK AT THAT PROSECUTION

11:01:12 16   HISTORY, WE SHOULD LOOK AT THAT LANGUAGE MORE AT

11:01:14 17   FACE VALUE.  AND, SECONDLY, IF YOU DO DRILL DOWN, I

11:01:18 18   JUST DON'T THINK THAT YOU'LL SEE THE RESTRICTION IN

11:01:20 19   CLAIM 1 THAT SAMSUNG IS PROPOSING.

11:01:23 20            AND I THINK IT'S IMPORTANT THAT CLAIM

11:01:25 21   DIFFERENTIATION ARGUMENT BEARS ON THIS ISSUE AS

11:01:27 22   WELL.

11:01:27 23            ONE OF THE THINGS THAT CLAIM

11:01:30 24   DIFFERENTIATION HELPS US WITH HERE IS THAT HAD THE

11:01:33 25   EXAMINER HAD IT IN ITS HEAD THAT THIS HAS TO APPEAR

45

11:01:36 1    IN FRONT OF ANY APPLICATION PROGRAMS THAT ARE

11:01:40 2    VISIBLE, I THINK THAT'S THE QUESTION THAT YOU'RE

11:01:43 3    ASKING, AND THEN HE SEES DOWN THE DEPENDENT CLAIMS

11:01:46 4    THAT THERE ARE ALWAYS LIMITATIONS, HE WOULD ASK,

11:01:49 5    WELL, SHOULDN'T YOU BE INSERTING "ALWAYS" IN CLAIM

11:01:49 6    1.

11:01:52 7            AND IT'S RIGHT IN FRONT OF HIM THAT APPLE

11:01:56 8    IS DISTINGUISHING THE CASE OF "NOT ALWAYS" FROM

11:02:05 9    "ALWAYS."

11:02:05 10           THE COURT:  CAN I ASK YOU WHAT WINDOW

11:02:08 11   LAYER IS AND HOW IT RELATES TO THE FIRST REGION

11:02:16 12   WINDOW?

11:02:17 13           MR. JACOBS:  I THINK THE RIGHT WAY TO

11:02:19 14   UNDERSTAND WINDOW LAYER IS IN A KIND OF A WAY OF

11:02:21 15   WHAT THE USER SEES WAY.

11:02:24 16           WHEN THE USER LOOKS AT A SCREEN WHICH IS,

11:02:26 17   OF COURSE, PHYSICALLY AND ONLY TWO DIMENSIONS, THE

11:02:29 18   USER SEES THE WINDOWS APPEARING IN A KIND OF A

11:02:32 19   LAYERED SORT OF WAY.  IT'S AN IMPRESSION THAT THE

11:02:40 20   SYSTEM CREATES WHEN GENERATING THESE IMAGES.

11:02:43 21           THAT MAY HAVE SOME UNDERLYING TECHNICAL

11:02:45 22   BACKUP THAT SUPPORTS LAYERING.  OF COURSE, THE

11:02:50 23   CLAIM IS NOT REALLY DIRECTED TO THE UNDERLYING

11:02:53 24   TECHNICAL BACKUP, BUT, OF COURSE, THERE MUST BE

11:02:55 25   SOMETHING IN THE SYSTEM THAT SAYS THAT MAKE IT LOOK

                                                           46

11:02:57 1    LIKE I'M ON TOP.

11:02:58 2              SO I THINK WINDOW LAYER HERE SIMPLY MEANS

11:03:02 3    IMAGINE THAT YOU'RE LOOKING AT THIS TWO DIMENSIONAL

11:03:05 4    OBJECT AND YOUR EYE IS GIVEN A THREE-DIMENSIONAL

11:03:09 5    SENSE, THE LAYERS ARE THE EFFECT OF THE DIFFERENT

11:03:14 6    WINDOW REGIONS ON TOP OF EACH OTHER AND NOTHING

11:03:17 7    MORE THAN THAT.

11:03:19 8              THE COURT:  SO THE WINDOW LAYER IS THE

11:03:22 9    COMPILATION OF ALL OF THE WINDOW REGIONS OR REGION

11:03:28 10   WINDOWS?

11:03:29 11             MR. JACOBS:  SO MAYBE LET'S LOOK AT 2A

11:03:31 12   AND I CAN EXPLAIN THIS IN THE WAY THAT WE'RE SEEING

11:03:35 13   IT.

11:03:42 14             SO FIGURE 2A IN THE PATENT IS THE

11:03:45 15   DOMINANT DISCLOSURE, IF YOU WILL.  IT'S THE DRAWING

11:03:50 16   THAT REALLY SHOWS THE CONTROL STRIP IN ITS FULL

11:03:58 17   EXTENSION.

11:03:58 18             AND WHAT YOU CAN SEE IS THE LAYERS.  AND

11:04:00 19   SO THE CONTROL STRIP DOWN AT THE BOTTOM IS IN A

11:04:03 20   LAYER THAT IS ON TOP OF AN APPLICATION WINDOW THAT

11:04:09 21   IS UNDERNEATH IT.

11:04:11 22             THAT FINDER WINDOW IN THE MIDDLE WHERE IT

11:04:19 23   SAYS APPLICATIONS IS IN A LAYER THAT IS ON TOP OF

11:04:22 24   EXTENSIONS.

11:04:24 25             AND IT'S JUST AN APPEARANCE.  IT'S A

47

11:04:27  1    WINDOW LAYER THAT IS CREATED BY APPEARANCE.

11:04:29  2              THE COURT:  SO APPLICATIONS IS A WINDOW

11:04:31  3    LAYER AND EXTENSIONS IS A SEPARATE WINDOW LAYER OR

11:04:35  4    WINDOW LAYER IS --

11:04:37  5              MR. JACOBS:  WINDOW LAYER IS THE -- I

11:04:39  6    WOULD SAY -- I WOULD SAY IT SLIGHTLY DIFFERENT.

11:04:43  7              APPLICATIONS IS PRESENTED IN A WINDOW

11:04:45  8    LAYER AND EXTENSIONS IS PRESENTED IN A DIFFERENT

11:04:48  9    WINDOW LAYER.

11:04:48 10              THE COURT:  OH, OKAY.  WHAT ABOUT IF THE

11:04:55 11    FIRST WINDOW REGION, THE CONTROL STRIP?

11:05:00 12              MR. JACOBS:  YES.

11:05:10 13              THE COURT:  WHAT HAPPENS IF THE CONTROL

11:05:15 14    STRIP IS VISIBLE, IT'S NOT HIDDEN, BUT IT'S

11:05:20 15    OBSCURED BY AN APPLICATION WINDOW, BY ANOTHER

11:05:24 16    WINDOW LAYER?

11:05:36 17              MR. JACOBS:  IT'S A CASE THAT IS NOT

11:05:38 18    SPECIFICALLY DESCRIBED IN THE SPECIFICATION.

11:05:39 19              THE COURT:  UH-HUH.

11:05:40 20              MR. JACOBS:  IT'S A CASE THAT IS NOT

11:05:43 21    SPECIFICALLY DISCLAIMED, I WOULD BELIEVE, IN CLAIM

11:05:46 22    1.

11:05:47 23              IT'S ALSO NOT SOMETHING THAT I YET

11:05:52 24    BELIEVE IS AN ISSUE IN THE CASE.

11:05:54 25              SO I DON'T THINK THAT EITHER OF US

                                                              48

11:05:56 1    DEBATED THIS CONSTRUCTION ISSUE, AND I'M NOT AWARE

11:05:59 2    YET OF AN INFRINGEMENT ISSUE THAT TURNS ON THIS.

11:06:02 3            I CAN --

11:06:03 4            THE COURT:  OKAY.

11:06:05 5            MR. JACOBS:  YOUR HONOR, I DO THIS WITH

11:06:07 6    HESITATION.  IF YOU DON'T -- IF THIS IS GETTING TOO

11:06:11 7    CLOSE TO INFRINGEMENT, STOP ME, BUT I CAN SHOW YOU

11:06:13 8    ON SLIDE 89 WHAT WE ARE LOOKING AT IN THE SAMSUNG

11:06:17 9    PHONE.

11:06:20 10           SO WE HAVE -- THIS IS FROM A SAMSUNG

11:06:24 11   DROID AND WHAT YOU CAN SEE IS THE CONTROL STRIP AT

11:06:26 12   THE TOP AS I DESCRIBED IT WITH THE BATTERY POWER

11:06:29 13   AND THE ANTENNA STRENGTH AND THE LIKE.

11:06:31 14           AND THEN THERE ARE APPLICATIONS THAT ARE

11:06:33 15   IN WINDOW LAYERS UNDERNEATH THAT CONTROL STRIP.

11:06:38 16           AND IN THE OVERWHELMING MAJORITY OF THE

11:06:40 17   CASES THAT WE HAVE SEEN THE CONTROL STRIP IS

11:06:43 18   PRESENTED ON TOP OF THE APPLICATIONS PROGRAM.

11:06:50 19           BUT THERE ARE CASES INVOLVING PHOTOGRAPHY

11:06:53 20   IN WHICH WE INFER THAT THE SYSTEM HAS PRECISELY

11:06:56 21   THAT MODULE THAT IS DESCRIBED IN THE SPECIFICATION

11:07:00 22   WHERE AN APPLICATION CAN SAY I WANT THE WHOLE

11:07:03 23   SCREEN, I DON'T WANT TO BE OBSCURED BY A CONTROL

11:07:06 24   STRIP.

11:07:07 25           AND SO WE -- I'M TRYING TO ANTICIPATE --

49

11:07:10 1    I'M TRYING TO ANSWER YOUR HONOR'S QUESTION FROM THE

11:07:13 2    TUTORIAL.

11:07:14 3          OUR IMAGINATION, IF YOU WILL, OUR

11:07:17 4    SURMISE, IS THAT THIS IS SAMSUNG'S NON-INFRINGEMENT

11:07:20 5    ARGUMENT BASED ON "ALWAYS."

11:07:21 6          WE HAVE NOT SEEN -- FRANKLY, I HAVE NOT

11:07:24 7    SEARCHED FOR THE CASE THAT YOUR HONOR HAS POSITED

11:07:26 8    WHERE THERE'S AN APPLICATION PROGRAM, I GUESS,

11:07:29 9    PARTIALLY OBSCURING THE CONTROL STRIP.

11:07:38 10          SO PART OF THE REASON I DON'T HAVE A

11:07:40 11   SUPER CRISP ANSWER TO YOUR HONOR'S QUESTION IS THAT

11:07:43 12   THE PARTIES HAVE NOT BRIEFED IT AND WE HAVE NOT

11:07:45 13   SEEN THAT CASE IN OUR OBSERVATION OF THE SAMSUNG

11:07:48 14   PHONES.

11:07:49 15          THE COURT:  I DON'T WANT TO GO DEEPLY

11:07:51 16   INTO EITHER INFRINGEMENT OR INVALIDITY TODAY,

11:07:56 17   EITHER SIDE.

11:07:56 18          TO THE EXTENT THAT IT'S HELPFUL TO TRY TO

11:07:58 19   UNDERSTAND THE CONTEXT OF WHY THIS ARGUMENT IS

11:08:01 20   COMING UP, I'M OKAY WITH A LITTLE BIT, BUT I DON'T

11:08:03 21   WANT TO GO INTO THAT.  WE CAN HAVE A SUMMARY

11:08:08 22   JUDGMENT BRIEF ABOUT THIS.

11:08:09 23          SO YOU'RE SAYING THE ISSUE IS THAT IN

11:08:15 24   CERTAIN ACCUSED DEVICES THERE MAY OR MAY NOT BE

11:08:17 25   SOME OBSCURING OF A CONTROL STRIP?

50

11:08:22 1          MR. JACOBS:  CORRECT.  AND JUST TO PUT A

11:08:24 2     FINER POINT ON IT, THE ARGUMENT WOULD BE THAT'S AN

11:08:26 3     APPLICATION PROGRAM AND IT'S OPERATING IN A WINDOW

11:08:28 4     LAYER AND THAT WINDOW LAYER IS FOR VISIBILITY

11:08:33 5     PURPOSES ON TOP OF THE CONTROL STRIP AND THE

11:08:35 6     CONTROL STRIP HAS DISAPPEARED.

11:08:36 7          THE COURT:  AND WHY ARE YOU FIGHTING NOT

11:08:39 8     HAVING THE CONTROL STRIP BE ON TOP?  WHY ARE YOU

11:08:42 9     FIGHTING THAT?

11:08:48 10         MR. JACOBS:  I'M SORRY.

11:08:48 11         THE COURT:  I HAD ASKED YOU EARLIER.  I

11:08:51 12    AGREE THAT THE CONTROL STRIP DOESN'T ALWAYS HAVE TO

11:08:53 13    BE VISIBLE, BUT IF IT IS VISIBLE IT NEEDS TO BE ON

11:08:56 14    TOP AND YOU'RE RESISTING THAT AND YOU'RE SAYING,

11:08:59 15    NO, NO, NO, THAT'S NOT HOW WE DISTINGUISH HANSEN.

11:09:03 16         WHY ARE YOU FIGHTING THAT?

11:09:05 17         MR. JACOBS:  I'M FIGHTING THAT BECAUSE --

11:09:07 18    IN ALL HONESTY, YOUR HONOR, IT'S A CASE THAT

11:09:09 19    NEITHER SIDE BRIEFED IT AND I'M A LITTLE CONCERNED

11:09:13 20    ABOUT CONCEDING THAT CASE WHEN I DON'T KNOW ALL OF

11:09:15 21    THE POSSIBLE DESIGN-AROUND THAT SAMSUNG MAY ADVANCE

11:09:17 22    AND I DON'T WANT TO GIVE THEM A NON-INFRINGEMENT

11:09:21 23    ARGUMENT THAT IS A LITTLE DIFFERENT THAN THE ONE

11:09:23 24    WE'RE SEEING HERE WHERE THEY JUST PARTIALLY

11:09:25 25    OBSCURED THE CONTROL STRIP.

51

11:09:27  1          THE COURT:  I HAVE TO SAY I WASN'T

11:09:28  2    CONVINCED ON HOW YOU ADDRESSED HANSEN.  I'LL GIVE

11:09:31  3    YOU ONE LAST OPPORTUNITY AND THEN I'D LIKE TO HEAR

11:09:33  4    FROM SAMSUNG.

11:09:34  5          ANYTHING ELSE ON THAT ISSUE BECAUSE IT

11:09:36  6    DOES SEEM LIKE IF IT'S VISIBLE, IT DOES NEED TO BE

11:09:40  7    ON TOP?

11:09:45  8          MR. JACOBS:  I DON'T THINK THAT APPLE --

11:09:48  9    THE APPLICANT WAS ADDRESSING THAT SITUATION IN

11:09:50 10    HANSEN WITH ITS RESPONSE BECAUSE IT WASN'T DEALING

11:09:56 11    WITH A CASE, FOR EXAMPLE, WHERE HANSEN HAD A

11:10:00 12    PARTIALLY OBSCURED CONTROL STRIP, WHICH IS REALLY I

11:10:03 13    THINK THE CASE THAT YOUR HONOR IS POSITING.

11:10:05 14          SO IMAGINE THAT THE APPL -- IF IT'S FULLY

11:10:09 15    OBSCURED, THEN WE HAVE MY CASE, THE ONE -- AND WE

11:10:14 16    HAVE THE ONE ILLUSTRATED BY THE SLIDES.

11:10:17 17          THE COURT:  UH-HUH.

11:10:18 18          MR. JACOBS:  IF IT'S PARTIALLY OBSCURED,

11:10:20 19    THEN WE HAVE THE CASE THAT YOUR HONOR IS POSITING,

11:10:22 20    WHERE THE APPLICATION PROGRAM IS ON TOP OF THE

11:10:27 21    CONTROL STRIP BUT THE CONTROL STRIP IS STILL

11:10:30 22    VISIBLE IN SOME WAY.

11:10:31 23          THE COURT:  OKAY.

11:10:32 24          MR. JACOBS:  HANSEN DID NOT PRESENT THAT

11:10:34 25    CASE.

                                                              52

11:10:39  1          THE COURT:  OKAY.

11:10:50  2          MR. VERHOEVEN:  YOUR HONOR, I HAVE SOME

11:10:51  3   SLIDES I WOULD LIKE TO HAND UP IF I MAY.

11:10:54  4          THE COURT:  OKAY.  PLEASE.

11:11:10  5          MR. VERHOEVEN:  GIVEN YOUR HONOR'S

11:11:10  6   COMMENTS, I THINK I WOULD LIKE TO START MY

11:11:12  7   PRESENTATION IF IT'S ALL RIGHT WITH THE COURT ON

11:11:15  8   SLIDE 10 WITH THE PROSECUTION HISTORY.

11:11:16  9          THE COURT:  OKAY.

11:11:24 10          MR. VERHOEVEN:  THIS PARTICULAR PATENT,

11:11:27 11   YOUR HONOR, WENT THROUGH MANY, MANY REJECTIONS AND

11:11:29 12   IT HAD TO BE APPEALED BEFORE IT WAS FINALLY

11:11:29 13   ALLOWED.

11:11:37 14          AND I THINK THE PROSECUTION HISTORY, TO

11:11:37 15   THE EXTENT YOUR HONOR IS NOT CONVINCED BY THE

11:11:37 16   SPECIFICATION WITH RESPECT TO THE ISSUE "ALWAYS"

11:11:38 17   I THINK THE PROSECUTION HISTORY FAIRLY READ DOES

11:11:39 18   PROVIDE A DISCLAIMER, AND I'D LIKE TO GO THROUGH IT

11:11:42 19   IN DETAIL WITH YOUR HONOR.

11:11:47 20          THE COURT:  OKAY.

11:11:48 21          MR. VERHOEVEN:  SO WHAT WE'RE LOOKING AT

11:11:50 22   IS THE CLAIMS THAT WERE AMENDED IN 1998.

11:11:53 23          AND YOU CAN SEE I JUST HIGHLIGHTED WHERE

11:11:55 24   THE LANGUAGE WOULD HAVE BEEN.

11:11:56 25          THERE IS NO LIMITATION -- THE LIMITATION

                                                        53

11:11:59 1    WE'RE TALKING ABOUT DID NOT EXIST.

11:12:01 2            IF YOU GO TO THE NEXT SLIDE, YOUR HONOR,

11:12:03 3    SLIDE 11, ON MAY 3, 1999 THERE WAS AN OFFICE ACTION

11:12:10 4    WHERE THAT VERSION OF THE CLAIMS WAS REJECTED BY

11:12:13 5    THE PATENT OFFICE.  AND WE JUST PULLED OUT THE

11:12:16 6    PARAGRAPH, YOUR HONOR, FROM THE PROSECUTION HISTORY

11:12:18 7    TO ILLUSTRATE THAT.  IT WAS REJECTED IN VIEW OF

11:12:24 8    TAKAGI.

11:12:27 9            AND THEN IF YOU GO TO THE NEXT SLIDE,

11:12:29 10   YOUR HONOR, NOVEMBER 8TH, 1999, THERE'S AN

11:12:31 11   AMENDMENT AND THIS IS WHEN THE PHRASE APPEARS.  AND

11:12:38 12   WE HAVE HIGHLIGHTED THAT.  THAT'S NOVEMBER 8TH,

11:12:43 13   1999.

11:12:43 14           "THE FIRST WINDOW REGION AND THE

11:12:46 15   PLURALITY INDEPENDENT DISPLAY AREAS IMPLEMENTED IN

11:12:48 16   A WINDOW LAYER THAT APPEARS ON TOP OF APPLICATION

11:12:52 17   PROGRAMMING WINDOWS THAT MAY BE GENERATED."

11:12:55 18           IF YOU GO TO SLIDE 13, YOUR HONOR, THE

11:12:58 19   REMARKS THAT WENT TOGETHER WITH THAT AMENDMENT

11:13:01 20   DEMONSTRATE THE AMENDMENT WAS MADE TO TRAVERSE

11:13:04 21   PRIOR ART.

11:13:05 22           SO I'VE HIGHLIGHTED THE SENTENCE:

11:13:08 23   "FURTHERMORE, THE PRESENT INVENTION AS CLAIMED SETS

11:13:10 24   FURTHER THAT THE FIRST WINDOW REGION AND THE

11:13:13 25   PLURALITY OF INDEPENDENT DISPLAY AREAS IMPLEMENTED

54

11:13:16 1    IN A WINDOW LAYER THAT APPEARS ON TOP OF

11:13:18 2    APPLICATION PROGRAMMING WINDOWS THAT MAY BE

11:13:21 3    GENERATED."

11:13:23 4        AND THEN IT DISTINGUISHES TAKAGI.

11:13:26 5    "TAKAGI DOES NOT DISCLOSE THE FIRST WINDOW REGION

11:13:29 6    AND INDEPENDENT DISPLAY AREAS BEING IN A WINDOW

11:13:32 7    LAYER THAT APPEARS ON TOP OF APPLICATION

11:13:34 8    PROGRAMMING WINDOWS THAT MAY BE GENERATED."

11:13:38 9        IF WE GO TO SLIDE 14, YOUR HONOR. THAT

11:13:41 10    WASN'T ENOUGH FOR THE EXAMINER.

11:13:47 11        AND ON JANUARY 21ST, 2000 THE PATENT

11:13:51 12    OFFICE REJECTS THE AMENDED CLAIM AS BEING

11:13:53 13    ANTICIPATED BY HANSEN, ANOTHER REFERENCE.

11:13:55 14        AND IF YOU LOOK HERE, I'LL JUST READ IT

11:13:58 15    INTO THE RECORD, THIS IS THE JANUARY 21, 2000

11:14:03 16    OFFICE ACTION.

11:14:04 17        "ON THE OTHER HAND, HANSEN, ET AL.,

11:14:07 18    HEREINAFTER HANSEN, TEACH A FIRST WINDOW REGION,

11:14:11 19    WITH DASHBOARD INTERFACE 10, HAVING A PLURALITY OF

11:14:12 20    INDEPENDENT DISPLAY AREAS, WITH VARIOUS PANELS, AT

11:14:14 21    FIGURE 1 AND COLUMN 3, LINES 27 THROUGH 43, WHEREIN

11:14:18 22    THE DASHBOARD INTERFACE IS INDEPENDENT DISPLAYED,

11:14:20 23    AS SHOWN THROUGHOUT FIGURES 1 THROUGH 37, AND

11:14:24 24    INDEPENDENTLY ACTIVE OF ANY APPLICATION PROGRAM,"

11:14:27 25    AND THERE WAS A CITE, "WHICH TEACHES THAT EACH

55

11:14:30  1     PANEL MODULE IS INDIVIDUALLY CONFIGURABLE."

11:14:33  2          AND THIS IS THE SENTENCE THAT I WOULD

11:14:35  3     LIKE YOUR HONOR TO FOCUS ON, AND I'VE HIGHLIGHTED

11:14:37  4     IT THAT THE PATENT OFFICE SAYS, "IN ADDITION,

11:14:40  5     HANSEN TEACHES THAT THE DASHBOARD INTERFACE AND THE

11:14:43  6     PLURAL PANEL MODULES ARE CONTINUALLY DISPLAYED ON

11:14:48  7     TOP OF ANY OTHER APPLICATION PROGRAMS."

11:14:58  8          SO WHAT I READ IS THAT THE EXAMINER IS

11:14:59  9     REJECTING THE '002 PATENT SAYING THAT HERE'S A

11:15:02 10     PIECE OF PRIOR ART IN WHICH THIS DASHBOARD

11:15:05 11     INTERFACE AND PLURAL PANEL MODULES ARE CONTINUALLY

11:15:10 12     DISPLAYED ON TOP OF ANY OTHER APPLICATION PROGRAMS.

11:15:16 13     THE VERY ISSUE THAT WE'RE TALKING ABOUT, THE

11:15:18 14     "ALWAYS" ISSUE.

11:15:19 15          NOW, THE NEXT SLIDE IS WHERE THERE IS A

11:15:22 16     CLEAR DISCLAIMER, YOUR HONOR, AND I PULLED THE

11:15:25 17     WHOLE PARAGRAPH OUT.  I THINK EVERY SENTENCE OF THE

11:15:27 18     PARAGRAPH IS IMPORTANT.

11:15:28 19          THIS IS A RESPONSE TO THAT REJECTION THAT

11:15:31 20     WAS FILED ON JUNE 28TH, 2000 BY THE APPLICANT.

11:15:35 21          AND IN IT THE APPLICANT STATES:

11:15:38 22          "FURTHERMORE, THE PRESENT INVENTION AS

11:15:40 23     CLAIMED INCLUDES HAVING A WINDOW REGION WITH ITS

11:15:42 24     INDEPENDENT DISPLAY AREAS IN A WINDOW THAT APPEARS

11:15:45 25     ON TOP OF APPLICATION WINDOW PROGRAMS THAT MAY BE

56

11:15:48  1    GENERATED.  THEREFORE, BY IMPLICATION, THOSE WINDOW

11:15:52  2    AREAS THAT ARE GENERATED AFTER THE GENERATION OF

11:15:55  3    THE WINDOW LAYER WILL STILL NOT APPEAR ON TOP OF

11:15:58  4    THE CONTROL/STATUS WINDOW IN THE PRESENT INVENTION

11:16:03  5    AS CLAIMED WHEN THEY ARE ACTIVE.

11:16:05  6            "THIS ALLOWS THE USER TO HAVE AN

11:16:08  7    UNOBSTRUCTED VIEW OF THE SYSTEM/CONTROLLER AREA

11:16:11  8    REGARDLESS OF THE WINDOW THAT'S SELECTED AS BEING

11:16:15  9    ACTIVE (EVEN WHEN THE WINDOWS OVERLAP EACH OTHER).

11:16:20  10   "THUS, THE WINDOW MAY BE ALWAYS VISIBLE

11:16:22  11   TO THE USER.  THE EXAMINER BELIEVES THAT THIS IS

11:16:25  12   CLEARLY SHOWN IN HANSEN," AND WE JUST SAW THAT,

11:16:31  13   "SPECIFICALLY REFERRING TO THE DASHBOARD INTERFACE.

11:16:33  14   "HOWEVER, HANSEN ONLY ALLOWS THE USER AN

11:16:36  15   UNOBSTRUCTED VIEW OF THE SYSTEM IF A BUTTON IS

11:16:39  16   SELECTED.  THUS, APPLICANT BELIEVES THAT ONE

11:16:41  17   FAMILIAR WITH THE ART WOULD NOT LOOK TO HANSEN TO

11:16:43  18   ARRIVE AT THE PRESENT INVENTION BECAUSE THE PRESENT

11:16:46  19   INVENTION IS DIRECTED AT USING INDIVIDUAL

11:16:50  20   PROGRAMMING MODULES THAT GENERATE DISPLAYS THAT ARE

11:16:54  21   'ALWAYS' VISIBLE ON A TOP LAYER."

11:17:01  22           HERE WE HAVE A CLEAR AND EXPRESS

11:17:04  23   LIMITATION, IF THERE'S ANY AMBIGUITY ABOUT THIS

11:17:06  24   CLAIM LANGUAGE, WHERE THEY DISTINGUISH HANSEN BY

11:17:09  25   SAYING THAT HANSEN DOESN'T ALWAYS HAVE ITS DISPLAY

57

11:17:14 1      UNOBSTRUCTED.

11:17:16 2              WE ARE DIFFERENT FROM HANSEN BECAUSE THE

11:17:20 3      PRESENT INVENTION, NOT ANY EMBODIMENTS, THE PRESENT

11:17:25 4      INVENTION IS DIRECTED AT USING INDIVIDUAL

11:17:27 5      PROGRAMMING MODULES THAT GENERATE DISPLAYS THAT ARE

11:17:31 6      ALWAYS VISIBLE ON A TOP LAYER.

11:17:33 7              NOW, COUNSEL SAID, YOUR HONOR, THAT THE

11:17:36 8      APPLICANT KNEW HOW TO USE THE WORD "ANY" WHEN IT

11:17:40 9      MEANT THE WORD "ANY."

11:17:41 10             WELL, I WOULD RESPECTFULLY SUBMIT THAT

11:17:43 11     THE APPLICANT KNEW HOW TO USE THE WORD "ALWAYS"

11:17:46 12     WHEN IT MEANT "ALWAYS."

11:17:47 13             AND HERE WE HAVE A DISCLAIMER IF THERE'S

11:17:50 14     ANY DOUBT IN THE SPECIFICATION OR CLAIMS, AND I'LL

11:17:52 15     GET TO THOSE IN A MOMENT, THAT IS VERY CLEAR AND

11:17:55 16     VERY UNAMBIGUOUS.

11:17:56 17             THE EXAMINER, IF YOU GO BACK TO SLIDE 14

11:17:59 18     AGAIN, THE EXAMINER SAID HANSEN CONTINUALLY

11:18:02 19     DISPLAYED ON TOP OF ANY OTHER APPLICATION PROGRAMS.

11:18:05 20             AND THEIR SOLE BASIS HERE IN THIS

11:18:08 21     PARAGRAPH FOR TRAVERSING HANSEN IS TO SAY THAT, NO,

11:18:11 22     IT DIDN'T, THERE WAS AN OPTION WHERE YOU COULD

11:18:13 23     OBSCURE THAT CONTROL STRIP AND WE'RE DIFFERENT FROM

11:18:18 24     THAT BECAUSE IN OUR PRESENT INVENTION AS CLAIMED,

11:18:22 25     THE PROGRAMMING MODULE DISPLAY IS ALWAYS VISIBLE ON

58

11:18:26  1        THE TOP LAYER.  THERE'S NO AMBIGUITY IN THAT.

11:18:29  2               THE COURT:  YEAH, BUT IF YOU GO UP JUST

11:18:32  3        ABOVE THAT, GO UP FIVE OR SIX LINES MORE WHERE IT

11:18:36  4        SAYS, "THUS, THE WINDOW MAY BE ALWAYS VISIBLE TO

11:18:44  5        THE USER."

11:18:45  6               SO IT'S NOT SAYING -- I AGREE WITH YOU IF

11:18:46  7        IT'S VISIBLE THEN IT NEEDS TO BE -- WELL, I DON'T

11:18:46  8        AGREE WITH YOU THAT THIS SUPPORTS THAT IT ALWAYS

11:18:49  9        HAS TO BE VISIBLE BECAUSE THIS SAYS THAT THE WINDOW

11:18:52 10        MAY BE ALWAYS VISIBLE TO THE USER.

11:18:55 11               MR. VERHOEVEN:  THAT IN ISOLATION SAYS

11:18:58 12        THAT, BUT IF YOU LOOK AT THE CONTEXT OF THIS

11:19:00 13        PARAGRAPH AND YOU LOOK AT THE OFFICE ACTION THAT

11:19:02 14        PRECEDED THAT, THE DEBATE HERE IS WHETHER OR NOT

11:19:05 15        THIS PATENT SHOULD BE ISSUED BECAUSE UNLIKE HANSEN,

11:19:10 16        IT'S ALWAYS VISIBLE.

11:19:11 17               THE DISTINCTION MADE IN THIS PARAGRAPH,

11:19:17 18        YOUR HONOR, IF YOU READ ON PAST THE SENTENCE YOU'RE

11:19:19 19        FOCUSSING ON IS SAYING HANSEN, HANSEN ONLY ALLOWS

11:19:24 20        THE USER AN UNOBSTRUCTED VIEW OF THE SYSTEM IF A

11:19:28 21        BUTTON IS SELECTED.

11:19:29 22               THAT'S JUST LIKE THE HIGH AND THE LAO

11:19:32 23        BUTTON IN THE SPECIFICATION.  IT SAYS HANSEN HAS

11:19:37 24        THAT.  YOU CAN TURN IT OFF.  IT'S ONLY WHEN IT'S

11:19:40 25        TURNED ON THAT IT'S ALWAYS ON TOP OF THE

                                                              59

11:19:43 1    APPLICATION.

11:19:44 2              WE'RE DIFFERENT THAN THAT BECAUSE THE

11:19:45 3    PRESENT INVENTION AS CLAIMED IS DIRECTED TO USING

11:19:49 4    INDIVIDUAL PROGRAM MODULES THAT GENERATE DISPLAYS

11:19:52 5    THAT ARE ALWAYS VISIBLE ON THE TOP LAYER.

11:19:57 6              SO I WOULD SUBMIT, YOUR HONOR, THAT

11:19:58 7    FOCUSSING ON THE WORD "MAY BE" IN ISOLATION, DOES

11:20:02 8    NOT FULLY APPRECIATE THE ENTIRE CONTEXT OF THE

11:20:06 9    OFFICE ACTION IN THIS PARAGRAPH IN RESPONSE.

11:20:08 10             AND IF I COULD JUST GO BACK TO THE

11:20:09 11   SPECIFICATION, YOUR HONOR, AND MAKE A FEW COMMENTS

11:20:12 12   ON THAT.

11:20:12 13             THE COURT:  OKAY.

11:20:25 14             MR. VERHOEVEN:  EXCUSE ME.  LET'S GO TO

11:20:27 15   SLIDE 6, PLEASE.

11:20:29 16             NOW, I READ THIS PATENT AND I SAW TWO --

11:20:32 17   AS IT PERTAINS TO THIS CONTROL STRIP, I SAW TWO

11:20:35 18   EMBODIMENTS, IF YOU WILL.

11:20:37 19             NOW -- AND ONLY TWO.

11:20:41 20             THE FIRST IS ILLUSTRATED IN FIGURE 2A.

11:20:45 21   AND IN FIGURE 2A, AS YOU CAN SEE, THE CONTROL

11:20:49 22   WINDOW, I DON'T THINK THERE'S ANY DISPUTE ABOUT

11:20:51 23   THESE HIGHLIGHTS I PUT ON HERE.

11:20:53 24             THE CONTROL WINDOW THAT IS ILLUSTRATED

11:20:56 25   YOU CAN SEE IS ON TOP OF THE APPE -- AN APPLICATION

                                                      60

11:21:01  1     WINDOW THAT OVERINTERSECTS WITH IT.

11:21:04  2               SO THAT'S AN EMBODIMENT.

11:21:10  3               AND IF YOU GO TO SLIDE 7, PLEASE.  AND

11:21:14  4     SLIDE 7 IS DISCUSSING THIS EMBODIMENT, AND IT SAYS,

11:21:16  5     "IN ONE EMBODIMENT, THE CONTROL STRIP IS

11:21:19  6     IMPLEMENTED IN A PRIVATE WINDOW LAYER THAT APPEARS

11:21:22  7     IN FRONT OF THE WINDOWS OF ALL OF THE APPLICATION

11:21:24  8     LAYERS AND THAT IS THE CONTROL STRIP WINDOW APPEARS

11:21:27  9     ON TOP OF ALL OF APPLICATION PROGRAMMING WINDOWS

11:21:29 10     THAT MAY BE GENERATED AS PART OF THE EXECUTION OF

11:21:32 11     AN APPLICATION PROGRAM.  THIS PREVENTS OTHER

11:21:36 12     WINDOWS FROM OBSCURING IT."

11:21:37 13               THAT IS DESCRIBING THIS FIRST EMBODIMENT,

11:21:41 14     YOUR HONOR.

11:21:41 15               SO IN READING THE SPECIFICATION -- SO

11:21:49 16     THIS IS ONE EMBODIMENT, READING THE SPECIFICATION,

11:21:52 17     THIS EMBODIMENT IS CLEARLY STATING "ALL, ALWAYS."

11:21:57 18     YOU CAN'T OBSCURE IT.

11:21:59 19               NOW, THERE'S ONLY ONE OTHER EMBODIMENT

11:22:02 20     THAT IS IN THE SPECIFICATION, YOUR HONOR.

11:22:03 21               LET'S GO TO SLIDE 8, PLEASE.  AND I HAVE

11:22:06 22     PULLED OUT -- THERE'S MORE CITES TO IT THAN THIS,

11:22:10 23     BUT I'VE PULLED OUT A REPRESENTATIVE DESCRIPTION OF

11:22:14 24     THE SECOND EMBODIMENT.  AND THIS IS FROM COLUMN 7,

11:22:17 25     LINES 29 THROUGH 32.

                                                          61

11:22:20 1          IT SAYS, "THE USER MAY ALSO HIDE THE

11:22:23 2     CONTROL STRIP.  IN ONE EMBODIMENT, TO MAKE THE

11:22:26 3     CONTROL STRIP DISAPPEAR COMPLETELY, THE USER CAN

11:22:29 4     CLICK THE HIDE BUTTON IN THE CONTROL STRIP CONTROL

11:22:32 5     PANEL AS DESCRIBED LATER IN CONJUNCTION WITH FIGURE

11:22:34 6     3."

11:22:35 7          AND THEN WE ILLUSTRATED FIGURE 3 WHICH

11:22:38 8     WILL SHOW THAT YOU CAN CLICK A BUTTON THAT WILL

11:22:41 9     HIDE IT OR YOU CAN CLICK A BUTTON THAT WILL SHOW

11:22:43 10    IT.

11:22:43 11         AND THAT'S IT, YOUR HONOR.  AND I BELIEVE

11:22:47 12    COUNSEL CONCEDED IN RESPONSE TO YOUR QUESTION,

11:22:50 13    THERE'S NO DISCUSSION OR DISCLOSURE OF AN OBSCURED,

11:22:53 14    A PARTIALLY OBSCURED CONTROL STRIP.  THERE'S NO

11:22:55 15    DISCLOSURE IN THE SPECIFICATION OF THE EMBODIMENT

11:22:59 16    WHERE AN APPLICATION OVERLAPS WITH THE CONTROL

11:23:05 17    STRIP THAT IS BEING DISPLAYED.  THE APPLICATION

11:23:08 18    WOULD BE ON TOP OF IT.

11:23:09 19         IT'S EITHER YOU TURN ON THE CONTROL STRIP

11:23:11 20    AND NO APPLICATIONS EVER COVER IT OR YOU TURN IT

11:23:15 21    OFF AND IT'S JUST NOT THERE.

11:23:18 22         THE COURT:  I GUESS THAT'S WHAT I DON'T

11:23:19 23    UNDERSTAND ABOUT YOUR CONSTRUCTION.  YOU'RE SAYING

11:23:22 24    YOU NEVER OBSCURE IT BUT ONE OF YOUR EMBODIMENTS

11:23:25 25    SAY YOU CAN HIDE IT.  SO HOW DID DO YOU --

62

11:23:29 1          MR. VERHOEVEN:  IF YOU LOOK AT 8, THIS

11:23:31 2    EMBODIMENT IS NOT CLAIMED.  THE HIDE, THE CONTROL

11:23:36 3    STRIP BY ANY CONSTRUCTION WOULD NOT MEET THIS

11:23:40 4    LANGUAGE.

11:23:40 5          THE LANGUAGE IS, "THE FIRST WINDOW REGION

11:23:44 6    AND THE PLURALITY OF INDEPENDENT DISPLAY AREAS

11:23:47 7    IMPLEMENTED IN A WINDOW LAYER THAT APPEARS ON TOP

11:23:50 8    OF APPLICATION PROGRAMMING WINDOWS THAT MAY BE

11:23:53 9    GENERATED."

11:23:54 10          IN THE EMBODIMENT WHERE YOU HAVE HIDDEN

11:23:56 11   THE CONTROL STRIP HE DOESN'T EVEN DISPLAY MUCH LESS

11:24:00 12   ON TOP OF OTHER APPLICATIONS.  THIS EMBODIMENT WAS

11:24:03 13   NOT CLAIMED.  AND IT'S A VERY COMMON PRACTICE, YOUR

11:24:06 14   HONOR, TO CLAIM ONE EMBODIMENT BUT NOT CLAIM OTHER

11:24:08 15   EMBODIMENTS.

11:24:09 16          THIS LANGUAGE DOES NOT EVEN CONCERN THE

11:24:13 17   FUNCTIONALITY OF HIDING A CONTROL STRIP.

11:24:15 18          THEY CAN FILE A CONTINUATION AND WRITE A

11:24:18 19   DIFFERENT CLAIM THAT TALKS ABOUT THAT, YOUR HONOR,

11:24:19 20   BUT THEY DIDN'T.

11:24:20 21          AND THIS CLAIM, THIS SECOND EMBODIMENT IS

11:24:25 22   NOT CLAIMED.  SO WE HAVE A SITUATION, I WOULD

11:24:28 23   SUBMIT, YOUR HONOR, WHERE WE HAVE TWO EMBODIMENTS.

11:24:30 24          ONE IS ALWAYS ON TOP, AND ONE IS HIDDEN.

11:24:33 25          AND THE CLAIM IS SAYING ON TOP.  IT HAS

                                                          63

11:24:37 1    TO BE REFERRING TO THE ALWAYS ON TOP EMBODIMENT.

11:24:41 2    IT'S NOT CLAIMING THE HIDDEN EMBODIMENT.

11:24:45 3            THE COURT:  WHY CAN'T IT JUST BE SAYING

11:24:47 4    IF IT'S NOT HIDDEN AND IT'S VISIBLE, THEN IT'S ON

11:24:50 5    TOP?

11:24:50 6            I GUESS I DON'T THINK THAT'S INCONSISTENT

11:24:52 7    WITH THE TWO EMBODIMENTS.  ONE IS THAT YOU CAN HIDE

11:24:55 8    IT AND ONE IS THAT YOU DON'T HIDE IT AND IF IT'S

11:24:58 9    NOT HIDDEN, IT'S ON TOP.

11:25:01 10           MR. VERHOEVEN:  IF IT'S NOT HIDDEN, IT'S

11:25:05 11   THE EMBODIMENT THAT IS CLAIMED HERE.  BUT IF YOU

11:25:08 12   LOOK AT THE SPECIFICATION, YOUR HONOR, THAT

11:25:10 13   EMBODIMENT CLEARLY SAYS, LET'S GO BACK TO IT, SLIDE

11:25:14 14   7, PLEASE, AND I DON'T REALLY HIGHLIGHT IT

11:25:16 15   APPROPRIATELY, BUT THIS IS COLUMNS 6, LINE 40

11:25:21 16   THROUGH 46.

11:25:22 17           AND THIS IS THE FIRST EMBODIMENT.  AND IT

11:25:23 18   SAYS, "THE CONTROL STRIP IS IMPLEMENTED IN A

11:25:26 19   PRIVATE WINDOW LAYER THAT APPEARS IN FRONT OF THE

11:25:28 20   WINDOWS OF ALL OF THE APPLICATION LAYERS."  IT USES

11:25:30 21   THE WORD "ALL."

11:25:32 22           "THAT IS, THE CONTROL STRIP APPEARS ON

11:25:35 23   TOP OF ALL APPLICATION PROGRAMMING WINDOWS THAT MAY

11:25:37 24   BE GENERATED AS PART OF THE EXECUTION OF AN

11:25:40 25   APPLICATION PROGRAM."  WHY?  BECAUSE THIS PREVENTS

                                                          64

11:25:43  1    OTHER WINDOWS FROM OBSCURING IT.

11:25:45  2          I WOULD SUBMIT, YOUR HONOR, TWO

11:25:47  3    EMBODIMENTS.  ONE IS YOU HAVE THE CONTROL

11:25:50  4    DISPLAYED, AND IT HAS THIS FUNCTIONALITY.  AND TO

11:25:52  5    THE EXTENT THAT YOUR HONOR IS CONCERNED BECAUSE THE

11:25:55  6    CLAIM LANGUAGE DOESN'T SAY THE WORD "ALL," IT JUST

11:25:58  7    SAYS "ON TOP OF," I WOULD SUBMIT THAT YOU NEED TO

11:26:01  8    READ THAT IN LIGHT OF THE SPECIFICATION.

11:26:03  9          BUT THE THING THAT SEALS THE DEAL FOR ME

11:26:05 10    PERSONALLY AS I LOOK THROUGH THE INTRINSIC EVIDENCE

11:26:09 11    IS GOING BACK TO -- EXCUSE ME -- SLIDE 15 AGAIN.

11:26:15 12          AND THE DISTINCTION IN HANSEN WHERE

11:26:17 13    THEY'RE CLEARLY SAYING THAT THE PRESENT INVENTION

11:26:20 14    AS CLAIMED, IT TALKS ABOUT THE WINDOW REGION ON

11:26:23 15    TOP, THAT'S THIS EMBODIMENT, AND IT VERY CLEARLY

11:26:27 16    SAYS THAT THE DISPUTE WITH THE PATENT OFFICE IS

11:26:29 17    WHETHER OVER HANSEN HAD THIS FUNCTIONALITY OF

11:26:35 18    ALWAYS HAVING THIS FUNCTIONAL SCROLL STRIP ON TOP.

11:26:38 19          THEY SAID, NO, HANSEN DOESN'T.  HANSEN

11:26:40 20    ONLY ALLOWS THE USER OF AN UNOBSTRUCTED VIEW IF A

11:26:44 21    BUTTON IS SELECTED.  THAT MEANS YOU CAN TURN IT

11:26:48 22    OFF.

11:26:49 23          "THUS, APPLICANT BELIEVES THAT ONE

11:26:51 24    FAMILIAR WITH THE ART WOULD NOT LOOK TO HANSEN TO

11:26:53 25    ARRIVE AT THE PRESENT INVENTION BECAUSE THE PRESENT

65

11:26:55  1    INVENTION IS DIRECTED AT USING INDIVIDUAL

11:26:57  2    PROGRAMMING MODULES THAT GENERATE DISPLAYS THAT ARE

11:27:00  3    ALWAYS VISIBLE ON A TOP LAYER."

11:27:02  4              AND TO ME, TO THE EXTENT THAT THERE'S ANY

11:27:04  5    AMBIGUITY OF THE CLAIMS IN THE SPEC, THIS IS A

11:27:09  6    DISCLAIMER THAT REQUIRES THAT THIS CLAIM LANGUAGE

11:27:11  7    BE INTERPRETED IN THE MANNER THAT WE'RE SUGGESTING.

11:27:14  8              THE COURT:  LET ME ASK YOU TWO QUESTIONS.

11:27:16  9              FIRST, DO YOU AGREE THAT THE FIRST WINDOW

11:27:19 10    REGION IS THE CONTROL STRIP?  I THOUGHT YOU ALL

11:27:24 11    AGREED TO THAT AT THE TUTORIAL?

11:27:27 12              MR. VERHOEVEN:  YEAH, I THINK WE DO AGREE

11:27:29 13    TO THAT.

11:27:29 14              THE COURT:  ALL RIGHT.  AND LET ME ASK

11:27:30 15    YOU IF YOU AGREED WITH WHAT MR. JACOBS SAID ABOUT

11:27:35 16    WINDOW LAYER?  BECAUSE --

11:27:37 17              MR. VERHOEVEN:  I'M NOT SURE.  HE SAID A

11:27:39 18    LOT OF THINGS ABOUT WINDOW LAYER.

11:27:40 19              THE COURT:  ALL RIGHT.  WELL, LET ME JUST

11:27:42 20    ASK YOU WHY WINDOW LAYER IS NOT IN YOUR CLAIM

11:27:46 21    CONSTRUCTION?

11:27:47 22              MR. VERHOEVEN:  I THINK WE WERE JUST

11:27:48 23    TRYING TO FOCUS ON WHERE WE PERCEIVED THERE WAS A

11:27:51 24    DISPUTE AS TO THE INTERPRETATION OF THE CLAIM.

11:27:53 25              AND I THINK THAT THE REASON THAT THIS

                                                              66

11:27:56  1    "ALWAYS" ISSUE IS IMPORTANT IS BECAUSE, QUITE

11:28:00  2    FRANKLY, THE ACCUSED CONTROL STRIPS DON'T EXIST AT

11:28:05  3    THAT FUNCTIONALITY IN THE ACCUSED DEVICES.

11:28:07  4             SO, YOU KNOW, WE'RE TRYING TO NARROW --

11:28:10  5    IT'S A BIG PHRASE, I KNOW, BUT WE'RE TRYING TO

11:28:14  6    NARROW THE CONSTRUCTION TO THE PARTS OF IT THAT WE

11:28:17  7    THINK MATTER.

11:28:18  8             THE COURT:  OKAY.  BUT WHAT DO YOU THINK

11:28:20  9    WINDOW LAYER IS AND IT MAY ULTIMATELY BE THAT IT'S

11:28:22  10   NOT REALLY RELEVANT.

11:28:26  11            MR. VERHOEVEN:  LET ME MAKE SURE I DON'T

11:28:28  12   MAKE A MISTAKE.  CAN I CONFER WITH COUNSEL FOR ONE

11:28:31  13   SECOND?

11:28:32  14            THE COURT:  SURE.  GO AHEAD.

11:28:50  15            (PAUSE IN PROCEEDINGS.

11:28:51  16            MR. VERHOEVEN:  BY WAY OF EXAMPLE, MAYBE

11:28:53  17   THAT'S THE EASIEST WAY TO ANSWER.  GO BACK TO SLIDE

11:28:56  18   6.

11:28:56  19            THE COURT:  OKAY.

11:28:57  20            MR. VERHOEVEN:  SLIDE 6 IN THE RED

11:28:59  21   HORIZONTAL BOX WHERE IT SAYS CONTROL WINDOW.

11:29:02  22            THE COURT:  YES.

11:29:03  23            MR. VERHOEVEN:  IF YOU WERE TO READ THE

11:29:05  24   CLAIM LANGUAGE ONTO THIS, THAT ENTIRE BOX WOULD BE

11:29:07  25   THE WINDOW LAYER.

67

11:29:09  1                    THE COURT:  IS THERE A REASON WHY YOU

11:29:10  2     SAID CONTROL WINDOW AND EVERYWHERE ELSE IN THE

11:29:13  3     PATENT IT SAYS CONTROL STRIP?

11:29:15  4                    MR. VERHOEVEN:  NO.

11:29:16  5                    THE COURT:  OKAY.  AND YOU THINK

11:29:21  6     APPLICATIONS IS A WINDOW LAYER AND EXTENSIONS IS A

11:29:24  7     WINDOW LAYER?

11:29:31  8                    MR. VERHOEVEN:  YES.  THERE'S ONE THING I

11:29:33  9     HAVE NOT REACHED IF I CAN TAKE TWO SECONDS ON IT.

11:29:36 10                    THE COURT:  PLEASE.

11:29:36 11                    MR. VERHOEVEN:  THE CLAIM DIFFERENTIATION

11:29:39 12     ARGUMENT.

11:29:39 13                    THE COURT:  UH-HUH.

11:29:40 14                    MR. VERHOEVEN:  GO TO SLIDE 23.

11:29:45 15                    THE PROSECUTION DISCLAIMER BLACK LETTER

11:29:48 16     LAW TAKES PRIORITY OVER ANY CLAIM DIFFERENTIATION

11:29:52 17     ARGUMENT.  AND HERE IT SOUNDS LIKE IF WE'RE GOING

11:29:55 18     TO PERSUADE YOUR HONOR, THE ONLY CHANCE IS THROUGH

11:29:59 19     OUR PROSECUTION HISTORY ARGUMENT, AND I JUST WANTED

11:30:01 20     TO POINT OUT THAT IF YOU FIND A DISCLAIMER THEN

11:30:04 21     THAT TRUMPS ANY CLAIM DIFFERENTIATION ARGUMENT.

11:30:08 22                    AND THE OTHER THING I WOULD POINT OUT,

11:30:10 23     YOUR HONOR, IS THAT IF YOU GO TO SLIDE 10.  THE

11:30:15 24     DEPENDENT CLAIMS THAT THEY POINT TO THAT USE THE

11:30:17 25     WORD "ALL," THOSE WERE FILED BEFORE THIS NARROWING

                                                              68

11:30:26 1    OF THE CLAIM LANGUAGE OCCURRED.

11:30:28 2              SO I DON'T KNOW IF THIS IS EXACTLY WHEN

11:30:30 3    THEY WERE FILED, YOUR HONOR, BUT I WILL REPRESENT

11:30:33 4    TO YOU THAT THEY WERE -- THOSE DEPENDENT CLAIMS

11:30:36 5    EXISTED BEFORE THE APPLICANT AMENDED ON SLIDE 12 TO

11:30:44 6    ADD THIS LANGUAGE TO TRAVERSE PRIOR ART.

11:30:49 7              SO WHAT MAY HAVE HAPPENED HERE IS THAT

11:30:53 8    THE EXAMINER SIMPLY DIDN'T DO SOME OF THE CLEANUP

11:30:57 9    THAT MAY BE HE OR SHE SHOULD HAVE DONE IN POINTING

11:31:01 10   OUT THOSE DEPENDENT CLAIMS WERE A LITTLE BIT

11:31:03 11   REDUNDANT, BUT I JUST WANT TO POINT THAT OUT, YOUR

11:31:06 12   HONOR.

11:31:06 13             IT'S NOT LIKE THIS WAS ALL WRITTEN AT THE

11:31:09 14   SAME TIME.  THERE WERE MANY, MANY REJECTIONS AND

11:31:12 15   THE EXAMINERS WAS FOCUSSED ON THE INDEPENDENT

11:31:14 16   CLAIMS AND THE VALIDITY ISSUES WITH THE INDEPENDENT

11:31:19 17   CLAIMS.  WITH THAT I'LL SIT DOWN.

11:31:22 18             THE COURT:  ALL RIGHT.  THANK YOU.

11:31:22 19             MR. JACOBS:  YOUR HONOR, CAN I HAVE A

11:31:23 20   MINUTE?

11:31:24 21             THE COURT:  VERY BRIEFLY, VERY BRIEFLY

11:31:25 22             MR. JACOBS:  I THINK I DIDN'T QUITE

11:31:26 23   CAPTURE THE DISTINCTION THAT HANSEN HAS OVER THE

11:31:29 24   CLAIMED INVENTION, AND I THINK THAT ALL ONE REALLY

11:31:32 25   NEEDS TO DO ON HANSEN IS LOOK AT THE APPEAL BRIEF

                                                            69

11:31:35  1    JUST THE ABOVE THE PORTION THAT SAMSUNG CITES ON

11:31:40  2    PAGE 16.

11:31:41  3            AGAIN, THE POINT HERE IS NOT TO DRILL

11:31:45  4    DOWN SO DEEPLY THAT ONE EXAMINES WHETHER ONE NOW

11:31:49  5    AGREES OR DISAGREES WITH THE DISTINCTION THAT THE

11:31:51  6    APPLICANT WAS DRAWING, BUT THE APPLICANT DID NOT

11:31:55  7    DRAW A DISTINCTION BASED ON "ALWAYS ON TOP IF THERE

11:31:58  8    IS AN APPLICATION PROGRAM PRESENT."

11:32:00  9            WHAT THE APPLICANT SAID WAS AS FOLLOWS:

11:32:03 10    "HOWEVER --" AND AGAIN, THIS IS ON PAGE 16,

11:32:07 11    "HOWEVER, AS DISCUSSED ABOVE, HANSEN DISCUSSES A

11:32:10 12    DASHBOARD.  HOWEVER, HANSEN ONLY ALLOWS THE USER AN

11:32:14 13    UNOBSTRUCTED VIEW OF THE SYSTEM IF A BUTTON IS

11:32:17 14    SELECTED."  CITING HANSEN AT COLUMN 4, LINES 45 TO

11:32:22 15    51.  AND HANSEN AT THOSE PORTIONS, THERE'S A

11:32:26 16    DISCUSSION OF THE TOGGLING THAT IS ALLOWED THE

11:32:28 17    USER.

11:32:31 18            FOR EXAMPLE, SEE FIGURE 18 OF HANSEN THE

11:32:35 19    DASHBOARD IS OBSCURED BY A WINDOW.  THUS, HANSEN

11:32:38 20    DOES NOT TEACH OR SUGGEST WINDOW LAYER APPEARS ON

11:32:41 21    TOP OF APPLICATION PROGRAMMING WINDOWS THAT MAY BE

11:32:44 22    GENERATED.  THE APPLICANT DIDN'T SAY ANYTHING MORE

11:32:47 23    THAN THAT ON THIS TOPIC OF YOUR HONOR'S I'LL CALL

11:32:51 24    IT THE INTERMEDIATE CASE WHERE THERE IS SOME --

11:32:54 25    THERE IS A VISIBLE CONTROL STRIP, AND IS IT ON TOP

                                                              70

11:32:57 1    OF ANY APPLICATION PROGRAMS.

11:33:01 2              SO THE REASON THAT WE RESIST THAT IT MUST

11:33:04 3    BE ON TOP OF ANY APPLICATION PROGRAMS THAT ARE

11:33:07 4    PRESENT, WHICH I THINK IS YOUR HONOR'S QUESTION, IS

11:33:09 5    THAT IT'S NOT CLAIMED IN THE INDEPENDENT CLAIM, AND

11:33:12 6    IT IS CLAIMED IN THE DEPENDENT CLAIMS, AND IT'S NOT

11:33:16 7    THE DISTINCTION THAT THE APPLICANT DREW SUFFICIENT

11:33:19 8    TO CALL FOR A CLEAR DISCLAIMER OF THAT CASE.

11:33:25 9              THANK YOU, YOUR HONOR.

11:33:26 10             THE COURT:  OKAY.  THANK YOU.  I HOPE THE

11:33:29 11   '002 IS THE ONE THAT WAS GOING TO TAKE THE MOST

11:33:32 12   TIME.

11:33:32 13             DO YOU AGREE OR NO OR ARE WE GOING TO BE

11:33:35 14   HERE UNTIL MIDNIGHT?

11:33:36 15             MR. MCELHINNY:  IT DEPENDS ON YOU, YOUR

11:33:38 16   HONOR.

11:33:38 17             THE COURT:  ALL RIGHT.  SORRY.  LET ME

11:33:40 18   ASK MS. RODRIGUEZ.

11:33:53 19             ALL RIGHT.  LET'S GO TO THE NEXT ONE,

11:33:55 20   PLEASE.

11:33:57 21             MR. JACOBS:  THE NEXT ONE IS THE 381,

11:33:59 22   THIS IS THE RUBBERBANDING OF THE EDGE PATENT.  AND

11:34:03 23   YOUR HONOR MAY RECALL THAT IT ADDRESSES SOME

11:34:07 24   PROBLEM IN USER INTERFACE AND IN PARTICULAR IN USER

11:34:09 25   NAVIGATION PARTICULARLY IN THE CONTEXT OF

                                                        71

11:34:11 1    TOUCHSCREENS AND IT ADDRESSES THE CONCERN THAT A

11:34:14 2    USER MIGHT HAVE WHETHER THE SCREEN WAS FROZEN OR

11:34:16 3    WHETHER THE USER WAS LOST IN DESERT FOG.

11:34:19 4         WE HAVE ILLUSTRATED THE FROZEN SCREEN

11:34:23 5    PROBLEM WITH AN ANIMATION.

11:34:25 6         SO TOUCHSCREENS, ESPECIALLY WHEN THEY

11:34:29 7    WERE INTRODUCED, IS IT REALLY WORKING, IS THE

11:34:31 8    SCREEN RESPONSIVE OR IS THE SCREEN NOT?  IF THE

11:34:34 9    SCREEN JUST STOPS?  YOU DON'T KNOW THE ANSWER TO

11:34:41 10   THAT.

11:34:42 11        THEN THE DESERT FOG PROBLEM, WHICH I

11:34:42 12   THOUGHT WHEN I LEARNED ABOUT THE DESERT FOG PROBLEM

11:34:45 13   I IMMEDIATELY THOUGHT OF MICROSOFT EXCEL WHERE

11:34:48 14   YOU'RE DOWN IN THE ZZ'S OR THE YY'S IN THE CELLS

11:34:52 15   AND YOU DON'T KNOW WHAT HAPPENED TO YOU.

11:34:54 16        AND THE PARTICULARLY DESERT FOG PROBLEM

11:34:57 17   THAT ONE COULD ENCOUNTER IS WONDERING WHETHER ONE

11:35:00 18   WAS -- WHERE ONE WAS NAVIGATIONALLY IF ONE HAD GONE

11:35:05 19   OFF THE EDGE OF A DOCUMENT.

11:35:06 20        THE COURT:  CAN I -- MAYBE I -- IF IT'S

11:35:09 21   OKAY.  CAN I JUST ASK MY QUESTIONS AND THEN I'LL

11:35:12 22   GIVE YOU LIKE MAYBE A MINUTE TO SUMMARIZE OR STATE

11:35:16 23   WHATEVER YOU'RE HOPING TO CONVEY?

11:35:19 24        MR. JACOBS:  YEP.

11:35:20 25        THE COURT:  AND LET ME FIRST ASK WHAT,

72

11:35:24 1    YOU KNOW, BOTH SIDES KEEP USING CONTENT BUT IT'S

11:35:26 2    NOT REALLY DEFINED.

11:35:28 3           SO WHAT DO YOU MEAN BY CONTENT AND IN THE

11:35:34 4    PAPER IMAGE CONTENT?

11:35:35 5           MR. JACOBS:  I DON'T BELIEVE WE PROPOSED

11:35:37 6    CONTENT, YOUR HONOR.

11:35:39 7           WE THINK WHAT SAMSUNG IS DOING TO ITS

11:35:42 8    PROPOSED INSTRUCTION IS ADDING CONTENT WHERE

11:35:44 9    CONTENT NOT -- IS, IN FACT, NOT PART OF THE CLAIM

11:35:47 10   LANGUAGE AND NOT PART OF ANYTHING IN THE SPEC THAT

11:35:49 11   IS RELEVANT TO "EDGE OF A DOCUMENT."

11:35:51 12          SO MAYBE TO UNPACK THAT SLIGHTLY, THE

11:35:54 13   SPECIFICATION DOES TALK ABOUT EXEMPLARY DOCUMENTS.

11:35:58 14   IT TALKS ABOUT A WEB PAGE.  IT TALKS ABOUT A

11:36:00 15   PRESENTATION.  IT TALKS ABOUT AN IMAGE, BUT IT

11:36:06 16   DOESN'T TALK ABOUT SUBDIVISIONS OF CONTENT WITHIN A

11:36:08 17   WEB PAGE, WHICH IS THE HEART OF SAMSUNG'S ARGUMENT.

11:36:11 18          THE HEART OF SAMSUNG'S ARGUMENT IS THAT

11:36:13 19   YOU COULD CROSS THE BOUNDARY OF SOMETHING LIKE A

11:36:15 20   WEB PAGE, THE BOUNDARY AND CONTENT OF A WEB PAGE,

11:36:19 21   OR SOMETHING LIKE A WEB PAGE, AND THAT'S THE EDGE

11:36:22 22   OF THE DOCUMENT.  THAT'S NOT WHAT THE SPECIFICATION

11:36:24 23   SAYS.  IT SAYS, "EDGE OF A DOCUMENT."

11:36:26 24          SO WE DON'T HAVE A DEFINITION FOR

11:36:28 25   "CONTENT" BECAUSE WE DON'T THINK THAT CONTENT IS

73

11:36:33  1    APPROPRIATE HERE FOR A CLAIM CONSTRUCTION.

11:36:34  2              THE COURT:  WELL, I KNOW YOU WANT PLAIN

11:36:35  3    AND ORDINARY MEANING, BUT -- AND MAYBE THIS IS NOT

11:36:42  4    RIPE, BUT DID YOU IMPLICITLY OR WOULD YOU AGREE TO

11:36:46  5    AN EXTERNAL EDGE BEYOND WHICH THERE IS AN AREA WITH

11:36:49  6    NO CONTENT?

11:36:51  7              MR. JACOBS:  I SEE WHERE YOU'RE GOING.

11:36:52  8    THAT WASN'T PART OF OUR DEFINITION.

11:36:54  9              THE COURT:  OKAY.

11:36:55 10              MR. JACOBS:  SO IF THERE IS NO CONTENT,

11:37:01 11    DO WE MEAN -- I'LL DO IT THIS WAY SO WE ARE ALL

11:37:01 12    LOOKING AT THIS THE SAME WAY.

11:37:03 13              IF YOU SLIDE THIS PICTURE OVER TO THE

11:37:05 14    LEFT AND THERE CAN'T BE ANOTHER PICTURE OVER TO THE

11:37:08 15    RIGHT WITH SOME SUBSTANTIAL BOUNDARY IN BETWEEN

11:37:12 16    INDICATING THAT THIS IS A DOCUMENT AND THIS IS A

11:37:14 17    DOCUMENT, THAT CASE IS PROVIDED FOR BY THE ORDINARY

11:37:16 18    MEANING OF THE CLAIM LANGUAGE.

11:37:17 19              YOU COULD HAVE RUBBERBANDING AT THIS

11:37:20 20    FIRST PICTURE.  THERE WOULD STILL BE CONTENT BEYOND

11:37:22 21    THE EDGE OF THE DOCUMENT.

11:37:24 22              WE WEREN'T ARGUING -- THAT WAS SOMETHING

11:37:26 23    THAT SAMSUNG INFERRED THAT WE NEVER STATED AND

11:37:32 24    DON'T BELIEVE AND DON'T PROPOSE.

11:37:37 25              THE COURT:  WELL, DO YOU THINK THAT A

                                                            74

11:37:39 1    WALLPAPER IMAGE COULD BE CONTENT?

11:37:41 2         MR. JACOBS:   NO.   WALLPAPER IMAGE WAS

11:37:44 3    EXPRESSED IN THE SPECIFICATION AS A KIND OF A

11:37:46 4    BACKGROUND.   IT'S IN A STRING OF IT COULD BE A

11:37:49 5    COLOR, IT COULD BE BLACK, OR IT COULD BE WALLPAPER

11:37:55 6    CONTENT.

11:37:55 7         WALLPAPER I THINK IS WHAT IT SAYS.   SO IF

11:37:58 8    WE'RE INTO A WORLD OF CONTENT, I DON'T THINK THAT

11:38:00 9    IT'S CONTENT AND I THINK THAT IS BACKGROUND.

11:38:02 10        THE COURT:   AND, NOW, IS AN ELECTRONIC

11:38:05 11   IMAGE ALWAYS AN ELECTRONIC DOCUMENT?

11:38:13 12        MR. JACOBS:   AN ELECTRONIC IMAGE IF IT

11:38:15 13   HAS DEFINED BOUNDARIES AND IT'S NOT WITHIN A WEB

11:38:18 14   PAGE, SUCH AS, FOR EXAMPLE, A DISTINCT PHOTOGRAPH,

11:38:20 15   WOULD BE AN ELECTRONIC DOCUMENT.

11:38:23 16        THAT'S A SLIGHTLY LONGER ANSWER THAN YOU

11:38:25 17   MAY HAVE ASKED FOR, BUT I NEEDED TO BE PRECISE

11:38:28 18   ABOUT THAT BECAUSE ONE COULD IMAGINE -- SINCE WE

11:38:30 19   HAVE WEB PAGE IS AN ELECTRONIC DOCUMENT, THAT'S

11:38:33 20   JUST WHAT THE SPECIFICATION SAYS, I THINK THAT

11:38:35 21   TRUMPS THE POSSIBILITY OF AN IMAGE WITHIN A WEB

11:38:38 22   PAGE BEING THE RELEVANT ELECTRONIC DOCUMENT.   THE

11:38:43 23   WEB PAGE IN THAT CONTEXT IS THE ELECTRONIC

11:38:45 24   DOCUMENT.

11:38:46 25        THE COURT:   OKAY.   WELL, THAT WAS THE

75

11:38:47 1    NEXT QUESTION.  ALL RIGHT.

11:38:59 2              WELL, GO AHEAD WITH WHATEVER ELSE YOU

11:39:02 3    WERE GOING TO SAY.

11:39:03 4              MR. JACOBS:  SO BRIEFLY WHAT I THINK THE

11:39:05 5    SPECIFICATION REALLY DOES IS MAKE THIS CLEAR

11:39:07 6    BECAUSE WHAT THE SPECIFICATION IS SHOWING IN

11:39:09 7    FIGURES 8A THROUGH D IS A WEB PAGE WITH BLOCKS OF

11:39:15 8    CONTENT TO USE SAMSUNG'S FORMULATION.

11:39:17 9              AND WHAT FIGURES 8A AND 8D SHOW IS THAT

11:39:22 10   WE HAVE ANIMATED THE FIGURES TO SHOW THAT IT ONLY

11:39:26 11   RUBBERBANDS WHEN THE EDGE OF THE WEB PAGE IS

11:39:28 12   REACHED.  THAT'S THE EDGE OF THE ELECTRONIC

11:39:31 13   DOCUMENT.  THERE'S NO RUBBERBANDING FOR --

11:39:33 14              THE COURT:  FOR BLOCK 5, FOR EXAMPLE?

11:39:36 15              MR. JACOBS:  EXACTLY.  AND SIMILARLY IN A

11:39:39 16   MODERN DEVICE LIKE HERE ILLUSTRATED THE IPHONE, OF

11:39:44 17   COURSE IT RUBBERBANDS AT THE EDGE OF THE WEB PAGE

11:39:48 18   AND NOT CONTENT WITHIN THE WEB PAGE.

11:39:51 19              THE IMPORTANT POINT HERE FROM THE

11:39:53 20   CONCEPTUAL STANDPOINT IS THAT WITHIN A WEB PAGE,

11:39:55 21   YOU HAVE NEITHER THE FROZEN SCREEN NOR THE DESERT

11:39:59 22   FOG PROBLEM.

11:40:04 23              THAT IS WHAT I WISH TO CONVEY TO YOUR

11:40:06 24   HONOR.

11:40:06 25              THE COURT:  OKAY.  ALL RIGHT.  BUT YOU

76

11:40:10 1    WOULD SAY THAT WHAT IS BEYOND THE EDGE OF AN

11:40:14 2    ELECTRONIC DOCUMENT CAN BE GREY, IT CAN BE WHITE OR

11:40:18 3    IT CAN BE WALLPAPER?

11:40:21 4          MR. JACOBS: AND TO FINISH THE THOUGHT,

11:40:23 5    YES, AND THAT WOULD NOT NEGATE THAT THEY'RE

11:40:25 6    SPEAKING ABOUT THE EDGE OF AN ELECTRONIC DOCUMENT

11:40:29 7    IF IT IS OTHERWISE AN ELECTRONIC DOCUMENT.

11:40:31 8          I THINK THIS IS NOT A -- LET ME SEE IF I

11:40:39 9    CAN SAY THIS AND GIVE YOU THE PRECISE FORMULATION

11:40:41 10   IN RESPONSE TO YOUR ANSWER.

11:40:42 11         AN ELECTRONIC DOCUMENT IS AN ELECTRONIC

11:40:45 12   DOCUMENT. IT MAY HAVE AN ADJACENT ELECTRONIC

11:40:51 13   DOCUMENT OR IT MAY NOT. IT MAY BE BOUNDED BY A

11:40:57 14   KIND OF A BACKGROUND BLACKNESS, COLOR OR WALLPAPER.

11:41:03 15         ALL OF THOSE CASES ARE CONSISTENT WITH

11:41:05 16   THE ELECTRONIC DOCUMENT AND THE EDGE OF THE

11:41:08 17   ELECTRONIC DOCUMENT BEING THE EDGE OF THE

11:41:10 18   ELECTRONIC DOCUMENT.

11:41:11 19         THE COURT: OKAY. ALL RIGHT. LET ME

11:41:13 20   HEAR FROM SAMSUNG. AND THE FIRST QUESTION I WANTED

11:41:18 21   TO ASK YOU IS WHAT DO YOU MEAN BY "CONTENT" IN YOUR

11:41:20 22   PROPOSED CONSTRUCTION?

11:41:22 23         MR. VERHOEVEN: JUST TEXT, IMAGES,

11:41:25 24   INFORMATION AS IT'S COMMONLY USED WHEN PEOPLE ARE

11:41:28 25   DESCRIBING CONTENT ON THE INTERNET, FOR EXAMPLE.

77

11:41:33 1          THE COURT:  SO TEXT, IMAGES, INFORMATION.

11:41:34 2     WOULD YOU INCLUDE WALLPAPER IMAGE OR NOT AS

11:41:36 3     CONTENT?

11:41:38 4          MR. VERHOEVEN:  YEAH.  AND ELECTRONIC

11:41:41 5     DOCUMENT IMAGE IN OUR VIEW, YOUR HONOR, IS ALWAYS

11:41:43 6     AN ELECTRONIC DOCUMENT.

11:41:52 7          THE COURT:  NOW, DR. VAN DAM APPEARS TO

11:41:55 8     SUGGEST THAT THERE CAN'T BE CONTENT BEYOND THE EDGE

11:41:57 9     OF AN ELECTRONIC DOCUMENT.  DO YOU WANT TO ADDRESS

11:42:00 10    THAT?  THAT'S A POINT THAT APPLE MAKES.

11:42:02 11         MR. VERHOEVEN:  WELL, I WILL ADDRESS

11:42:04 12    THAT, YOUR HONOR.

11:42:05 13         I HAVE SOME SLIDES.

11:42:16 14         THE COURT:  HAVE BOTH PARTIES EXCHANGED

11:42:18 15    THEIR SLIDES BECAUSE IF THERE'S GOING TO BE AN

11:42:19 16    OBJECTION, I WOULD LIKE TO KNOW BEFORE WE GET

11:42:22 17    STARTED.

11:42:22 18         MR. VERHOEVEN:  YES.

11:42:36 19         THE COURT:  RATHER THAN DRIBBLE OUT

11:42:38 20    PATENT BY PATENT, LET'S JUST DO A COMPLETE EXCHANGE

11:42:42 21    NOW.

11:42:42 22         IF THERE'S ANY OBJECTION THAT EITHER SIDE

11:42:44 23    HAS TO EITHER SIDE'S POWERPOINT, PLEASE LET ME KNOW

11:42:48 24    BEFORE WE START.

11:42:50 25         MR. JACOBS:  VERY WELL, YOUR HONOR.

                                                        78

11:42:51  1          THE COURT:  OKAY.

11:42:53  2          MR. VERHOEVEN:  IF WE GO TO SLIDE 22, I

11:42:55  3   BELIEVE THIS IS THE EXCERPT -- WELL, THERE ARE TWO

11:42:58  4   DIFFERENT EXCERPTS THAT APPLE CITED, I BELIEVE.

11:43:01  5   THIS IS TO ILLUSTRATE VAN DAM'S DEPOSITION

11:43:06  6   TESTIMONY PAGE 3, LINES 5 THROUGH 18 AND THEY POINT

11:43:11  7   TO "NO NEW INFORMATION."

11:43:13  8          NOW, IF YOU GO TO THE NEXT SLIDE, I'VE

11:43:15  9   HIGHLIGHTED IT A LITTLE LATER IN THE QUOTE AND YOU

11:43:18 10   SEE THERE YOU SEE HE CONTINUES, "IF YOUR EXCURSION

11:43:24 11   BEYOND THE EDGE IS SMALL, AND YOU LIFT YOUR FINGER

11:43:29 12   OR YOUR STYLUS, WHATEVER YOUR POINTING DEVICE IS,

11:43:32 13   THEN THE VIEW WILL SNAP BACK SO THERE IS NO

11:43:37 14   UNRELATED INFORMATION TO BE SEEN."

11:43:39 15          SO WHAT HE'S SAYING HERE IN CONTEXT, YOUR

11:43:41 16   HONOR, IS THAT THERE'S NO NEW INFORMATION FROM THAT

11:43:43 17   SAME ELECTRONIC DOCUMENT AND THEN WHEN YOU SNAP

11:43:45 18   BACK, IF YOU GO BEYOND THE EDGE YOU MAY SEE SOME

11:43:47 19   UNRELATED INFORMATION AND SO IT SNAPS BACK SO YOU

11:43:49 20   DON'T SEE ANY -- THERE'S NO UNRELATED INFORMATION

11:43:51 21   TO BE SEEN.

11:43:52 22          SO WE DON'T THINK THAT THAT'S

11:43:54 23   INCONSISTENT WITH THE POSITIONS THAT WE'RE TAKING,

11:43:56 24   YOUR HONOR.

11:43:56 25          I WANT TO POINT OUT, YOUR HONOR, HOWEVER,

                                                    79

11:43:58 1    THAT APPLE IS -- THE CONSTRUCTION IT'S ADVOCATING

11:44:05 2    IS 100 PERCENT INCONSISTENT WITH THE POSITION IT'S

11:44:08 3    CURRENTLY TAKING IN THE I.T.C. CASE AGAINST H.T.C.

11:44:12 4    AND I WOULD DIRECT YOU TO SLIDE 11, AND IT'S A

11:44:15 5    PUBLIC DOCUMENT, AND WE'LL ASK YOUR HONOR TO TAKE

11:44:17 6    JUDICIAL NOTICE OF THIS.

11:44:18 7            MR. JACOBS:  YOUR HONOR, WE'RE GOING TO

11:44:24 8    OBJECT.

11:44:24 9            THE COURT:  HAVE YOU ALL EXCHANGED EACH

11:44:26 10   OTHER'S DEMONSTRATIVES?  I WAS HOPING THAT WOULD

11:44:30 11   HAVE BEEN DONE BEFORE TODAY.

11:44:30 12           MR. JACOBS:  NO, WE HAVEN'T.

11:44:32 13           THE COURT:  YOU HAVEN'T.  DO YOU NOW HAVE

11:44:35 14   EACH OTHER'S DEMONSTRATIVES FOR ALL THE PATENTS?

11:44:37 15           MR. VERHOEVEN:  WE HAVE HANDED THEM ALL

11:44:39 16   OUT.

11:44:40 17           THE COURT:  WHAT IS YOUR OBJECTION?

11:44:41 18           MR. JACOBS:  THIS WAS NOT SOMETHING THAT

11:44:43 19   WAS DISCLOSED IN ANY PRIOR MATERIALS THAT WE

11:44:46 20   RECEIVED FROM THEM, AND SO WE HAVE NOT BEEN ABLE TO

11:44:48 21   GO BACK AND CHECK OUT WHAT IT'S ALL ABOUT.

11:44:52 22           MR. VERHOEVEN:  YOUR HONOR, THIS SHOULD

11:44:53 23   HAVE BEEN DISCLOSED TO THE COURT.  IT WAS A

11:44:56 24   DOCUMENT FILED BY APPLE AT THE I.T.C. WHERE THEY

11:44:59 25   TAKE THE EXACT OPPOSITE POSITION THAT THEY'RE

80

11:45:01 1    TAKING HERE ABOUT THE EXTERNAL EDGE VERSUS INTERNAL

11:45:05 2    EDGE, AND IT SHOULD HAVE BEEN DISCLOSED TO US, AND

11:45:08 3    IT SHOULD HAVE BEEN DISCLOSED TO THE COURT.

11:45:10 4           IT'S NOT NEW EVIDENCE.  IT'S AN ADMISSION

11:45:13 5    BY THIS VERY SAME -- IF YOU LOOK, YOUR HONOR, TO

11:45:15 6    THE SLIDE YOU CAN SEE.

11:45:19 7           MR. JACOBS:  I WOULD APPRECIATE A RULING

11:45:20 8    BEFORE MR. VERHOEVEN EXPANDS ON --

11:45:25 9           MR. VERHOEVEN:  HE DOESN'T WANT YOU TO

11:45:26 10   SEE THE INCONSISTENCY.  YOUR HONOR, IF YOU LOOK AT

11:45:29 11   WHAT THEY ARE DOING HERE, THEY ARE CLAIMING AN

11:45:31 12   INTERNAL EDGE OF AN INTERNAL DOCUMENT AS MEETING

11:45:36 13   THIS VERY SAME CLAIM.

11:45:40 14          THE COURT:  YOU KNOW, THIS WOULD HAVE

11:45:41 15   BEEN BETTER -- I KNOW THE SANDBAGGING IS VERY

11:45:44 16   STRATEGICALLY HELPFUL, BUT THIS WOULD HAVE BEEN

11:45:47 17   BETTER IF THE DISPUTES WOULD BE WORKED OUT IN

11:45:50 18   ADVANCE.  I DON'T LIKE GETTING THIS RIGHT NOW.

11:45:53 19          MR. VERHOEVEN:  I JUST DISCOVERED THIS

11:45:55 20   YESTERDAY, YOUR HONOR.

11:45:55 21          THE COURT:  WE TALKED ABOUT ON TUESDAY

11:45:57 22   WHETHER YOU WERE GOING TO BRING IN OTHER I.T.C.

11:46:00 23   MATERIAL AND THE DECISION WAS THAT YOU WERE NOT.

11:46:03 24          MR. VERHOEVEN:  THAT WAS ABOUT A

11:46:04 25   DIFFERENT CASE, YOUR HONOR.

81

11:46:05 1          THE COURT:  WELL, IT WASN'T EVEN

11:46:06 2     MENTIONED THEN THAT YOU WERE GOING TO BRING UP THIS

11:46:08 3     CASE ON TUESDAY.

11:46:09 4          MR. VERHOEVEN:  I WASN'T AWARE OF THIS

11:46:11 5     DOCUMENT, YOUR HONOR, AND IT'S VERY PROBATIVE

11:46:13 6     BECAUSE IT SHOWS APPLE REPRESENTING TO ANOTHER

11:46:17 7     TRIBUNAL THAT THIS VERY LANGUAGE APPLIES TO AN

11:46:22 8     INTERNAL DOCUMENT WITHIN A LARGER DOCUMENT AND IT

11:46:25 9     SHOWS ON AN APPLE PRODUCT AN INTERNAL DOCUMENT SNAP

11:46:29 10    BACK.

11:46:30 11         AND THERE'S A CLAIM CHART THAT THEY

11:46:32 12    PREPARED TO DEMONSTRATE TO THE I.T.C. THAT THEIR

11:46:35 13    OWN PRODUCT HAS DOMESTIC INDUSTRY PRACTICES THESE

11:46:40 14    CLAIMS BY USING AN INTERNAL SNAP BACK.

11:46:43 15         THE COURT:  WELL, THAT IS WHAT I'M GOING

11:46:44 16    TO DO, WE'RE NOT GOING TO CONSIDER THIS RIGHT NOW

11:46:47 17    BECAUSE I THINK IT IS SANDBAGGING.

11:46:49 18         DO YOU HAVE THE REST OF YOUR PRESENTATION

11:46:51 19    ON THIS?  LET'S DO IT AND THEN WE CAN DISCUSS THIS

11:46:56 20    LATER.

11:46:56 21         MR. VERHOEVEN:  YES, YOUR HONOR.

11:47:02 22         CAN I ASK ONE QUESTION, YOUR HONOR?  THEY

11:47:04 23    HAVE BEEN USING DEMONSTRATIVES FROM THEIR OWN PHONE

11:47:06 24    THAT WERE NOT DISCLOSED AS PART OF THEIR

11:47:09 25    PRESENTATION.

                                                          82

11:47:10 1          MAY I AT LEAST SHOW YOU THE DEMONSTRATIVE

11:47:13 2     OF THIS INTERNAL PRODUCT THAT THEY HAVE THAT SNAPS

11:47:17 3     BACK TO SHOW YOU WHY IT WOULD BE USEFUL FOR A SNAP

11:47:20 4     BACK TO OCCUR WITHIN AN INTERNAL DOCUMENT WITHIN A

11:47:23 5     LARGER DOCUMENT?

11:47:23 6          THE COURT:  DID YOU GET THIS FROM THE

11:47:25 7     I.T.C. CASE?

11:47:27 8          MR. VERHOEVEN:  NO.  THIS IS AN

11:47:28 9     APPLICATION THAT APPLE SELLS THAT HAS AN INTERNAL

11:47:32 10    SNAP BACK, AND IT'S CALLED STOCKS.

11:47:34 11         THE COURT:  ALL RIGHT.  WHAT IS YOUR

11:47:35 12    POSITION?

11:47:37 13         MR. JACOBS:  YOUR HONOR, I'M ALWAYS HAPPY

11:47:39 14    TO HAVE THE COURT SEE THE IPHONE, BUT I REALLY

11:47:42 15    THINK THIS IS PRETTY TANGENTIAL HERE.

11:47:46 16         THE IPHONE MAY OR MAY NOT IMPLEMENT MORE

11:47:49 17    THAN THE SNAP BACK THAT IS CLAIMED IN THE '381

11:47:52 18    PATENT.

11:47:53 19         I'M NOT -- UNLIKE QUINN EMANUEL, WE'RE

11:47:57 20    NOT IN THE H.T.C. CASE, SO I DON'T KNOW WHAT IS

11:47:59 21    BEING ARGUED THERE.  I CAN'T RESPOND TO THE

11:48:01 22    SUBSTANCE OF THE ARGUMENT, AND I THINK WHAT

11:48:04 23    MR. VERHOEVEN IS TRYING TO DO IS BACK-DOOR ON THE

11:48:07 24    RULING YOU JUST MADE.

11:48:08 25         MR. VERHOEVEN:  WHAT I'D LIKE TO SHOW,

                                                             83

11:48:10  1    YOUR HONOR, IS THAT THE CLAIM LANGUAGE DOES NOT SAY

11:48:13  2    EXTERNAL EDGE.

11:48:14  3            THEY'RE SAYING UNDER THE GUISE OF THE

11:48:16  4    PLAIN MEANING THEY'RE ADVOCATING, YOUR HONOR, TO

11:48:18  5    IMPORT AN INTERPRETATION OF THE CLAIM LANGUAGE THAT

11:48:20  6    SAYS THAT THE EDGE HAS TO BE AN EXTERNAL EDGE, YOU

11:48:23  7    CAN'T BE AN INTERNAL EDGE AS PART OF A SUBDOCUMENT

11:48:27  8    IN A LARGER DOCUMENT.

11:48:28  9            THIS INVENTION OF THEIRS, TO THE EXTENT

11:48:31 10    THAT IT IS VALID, IS JUST AS USEFUL ON AN INTERNAL

11:48:35 11    DOCUMENT SO THAT YOU CAN SEE YOU HAVE REACHED THE

11:48:38 12    EDGE OF THE SCROLL AS IT IS ON AN EXTERNAL, AND, IN

11:48:44 13    FACT, IT'S IMPLEMENTED IN APPS ON THE IPHONE AND

11:48:48 14    JUST I WOULD LIKE TO SHOW YOU SO YOU CAN SEE HOW IT

11:48:52 15    WORKS.

11:48:52 16            THEY HAVE SHOWN, YOUR HONOR, WHEN THEY

11:48:54 17    THINK IT'S HELPFUL TO THEM WITHOUT PREVIOUS

11:48:56 18    DISCLOSURE ON THEIR SLIDES PICTURES OF THEIR IPHONE

11:48:59 19    AND HOW IT WORKS.

11:49:00 20            AND YOU JUST SAW HIM SHOW PICTURES OF

11:49:02 21    THEIR IPHONE AND HOW IT WORKS WITH RESPECT TO THIS

11:49:05 22    CLAIM CONSTRUCTION.  I'M MERELY REQUESTING AN

11:49:07 23    OPPORTUNITY TO DO THE SAME.

11:49:16 24            THE COURT:  GO AHEAD.

11:49:17 25            MR. VERHOEVEN:  THANK YOU.

                                                          84

11:49:18  1          THIS IS A VIDEO OF THE STOCKS

11:49:22  2     APPLICATION, YOUR HONOR.

11:49:22  3          (WHEREUPON, A VIDEO WAS PLAYED IN OPEN

11:49:22  4     COURT.)

11:49:26  5          MR. VERHOEVEN:  THAT'S THE STOCKS

11:49:27  6     APPLICATION.  YOU CAN SEE THAT THERE'S A LARGER

11:49:29  7     APPLICATION DISPLAY AND INSIDE OF IT THERE ARE TWO

11:49:32  8     SUBDOCUMENTS AND YOU CAN SEE THAT THEY BOUNCE BACK

11:49:36  9     WITHIN THE LARGER DOCUMENT.

11:49:39 10          THE SAME FUNCTIONALITY AS WHEN YOU HAVE A

11:49:42 11     PICTURE THAT BOUNCES BACK AND IT'S THE WHOLE

11:49:44 12     SCREEN, BUT IT'S A BOUNCE BACK OF AN ELECTRONIC

11:49:48 13     DOCUMENT WITHIN A LARGER ELECTRONIC DOCUMENT.  AND

11:49:49 14     THIS IS USEFUL.  IT'S CONTEMPLATED.  THERE'S

11:49:54 15     NOTHING IN THE CLAIM THAT EXCLUDES IT, YOUR HONOR.

11:49:57 16          AND SO, YES, THE PATENT DOESN'T SHOW A

11:50:01 17     BOUNCE BACK OF ONE OF THE BLOCKS WITHIN THE WEB

11:50:04 18     PAGE WITHIN THE SPECIFICATION, BUT NOTHING IN THE

11:50:06 19     CLAIM PRECLUDES THAT, YOUR HONOR.

11:50:08 20          IT'S, IT'S -- THE CLAIM LANGUAGE, IF WE

11:50:11 21     GO TO SLIDE 3, IT SIMPLY SAYS, "AN EDGE OF AN

11:50:23 22     ELECTRONIC DOCUMENT."

11:50:24 23          NOW, IF WE GO TO SLIDE 5, APPLE PURPORTS

11:50:29 24     THAT IT'S MERELY ADVOCATING THE PLAIN AND ORDINARY

11:50:32 25     MEANING OF THAT PHRASE, BUT NOBODY DISPUTES THAT IN

85

11:50:35 1    THE WEB PAGE YOU HAVE INTERNAL ELECTRONIC DOCUMENTS

11:50:38 2    AND THOSE ELECTRONIC DOCUMENTS HAVE EDGES.

11:50:41 3            AND THE PLAIN AND ORDINARY MEANING OF

11:50:43 4    EDGE AND ELECTRONIC DOCUMENT WOULD APPLY EQUALLY TO

11:50:48 5    THOSE INTERNAL DOCUMENTS AS WELL AS TO THE EXTERNAL

11:50:50 6    WEB PAGE LARGER DOCUMENT.

11:50:52 7            AND WHAT APPLE IS REALLY ADVOCATING FOR

11:50:55 8    YOUR HONOR TO DO IS NOT PLAIN AND ORDINARY MEANING

11:50:57 9    BUT TO INTRODUCE A DISTINCTION THAT DOESN'T APPEAR

11:51:03 10   IN THE CLAIM LANGUAGE BETWEEN THE INTERNAL AND

11:51:06 11   EXTERNAL EDGES.

11:51:07 12           AND WE WOULD SUBMIT THAT WOULD BE

11:51:09 13   INAPPROPRIATE AND IT'S INCONSISTENT WITH THEIR

11:51:11 14   STATEMENT THAT THEY SIMPLY WANT TO USE THE PLAIN

11:51:15 15   AND ORDINARY MEANING.

11:51:16 16           THE CLAIMS DO NOT PRECLUDE ANOTHER

11:51:18 17   ELECTRONIC DOCUMENT OR OTHER CONTENT FROM APPEARING

11:51:21 18   BEYOND AN EDGE OF AN ELECTRONIC DOCUMENT.

11:51:24 19           AND IF WE LOOK AT, FOR EXAMPLE, WE'RE

11:51:36 20   TALKING ABOUT ORDINARY MEANING, IF YOU LOOK AT

11:51:40 21   SLIDE 17, PLEASE, DR. BALAKRISHNAN, APPLE'S EXPERT,

11:51:48 22   SAYS THAT "MY DEFINITION OF AN ELECTRONIC DOCUMENT

11:51:51 23   WOULD BE SOMETHING VISUALLY REPRESENTABLE ON THE

11:51:54 24   SCREEN THAT HAS A DEFINED SET OF BOUNDARIES."

11:51:58 25           WELL, THAT COULD BE AN IMAGE WITHIN A WEB

86

11:52:00 1          PAGE.  IF YOU GO TO SLIDE 18.

11:52:06 2                  HE ADMITS THAT "THE BOUNDARY OF AN

11:52:10 3     ELECTRONIC DOCUMENT, IN THIS CASE, THIS EDGE IS ONE

11:52:15 4     BOUNDARY OF IT DOES NOT HAVE TO MATCH THE EDGE OF

11:52:18 5     THE SCREEN."

11:52:19 6                  SO THIS IS THE ORDINARY YOU WOULD

11:52:21 7     UNDERSTAND EDGE AND ELECTRONIC DOCUMENT, AND IT'S

11:52:21 8     NOT REQUIRED TO BE COEXTENSIVE WITH THE DISPLAY

11:52:25 9     SCREEN.

11:52:25 10                 AND IF WE LOOK AT SLIDE 19.  AT HIS

11:52:28 11    DEPOSITION HE WAS SHOWN THIS MATRIX THAT YOU SEE

11:52:33 12    AND HE SAYS -- AND HE WAS ASKED A HYPOTHETICAL

11:52:37 13    QUESTION.  AND HE WAS ASKED, "IF IN THIS

11:52:40 14    HYPOTHETICAL SCENARIO THIS DOCUMENT IS THIS 2-BY-4

11:52:45 15    GRID LABELLED 15, 16, 17, 18, 21, 22, 23, 24 AND IF

11:52:51 16    THAT IS THE DOCUMENT, THEN ANYTHING BEYOND THAT

11:52:54 17    EDGE WOULD BE AN AREA OUTSIDE OF THE DOCUMENT

11:52:56 18    BEYOND THE EDGE OF THE DOCUMENT.  SO GIVEN THOSE

11:52:58 19    HYPOTHETICALS, AREA 14 AND 20 WOULD BE BEYOND THE

11:53:03 20    EDGE OF THE DOCUMENT GIVEN THAT SCENARIO."

11:53:06 21                 SO THIS IS NOT CONTROVERSIAL.  THIS IS

11:53:09 22    PLAIN AND ORDINARY MEANING WHEN YOU SAY EDGE OF A

11:53:11 23    DOCUMENT.

11:53:12 24                 AND WE WOULD SUBMIT, YOUR HONOR, THAT

11:53:13 25    WHAT APPLE IS REALLY DOING HERE IS THAT THEY'RE

                                                               87

11:53:16 1    TRYING TO IMPORT A LIMITATION TO AVOID SOME PRIOR

11:53:22 2    ART INTO THIS PLAIN AND ORDINARY LANGUAGE.

11:53:24 3            IT'S NOT CONSISTENT WITH THE

11:53:25 4    SPECIFICATION OR CLAIMS AND IT'S NOT CONSISTENT

11:53:27 5    WITH THE WAY THAT APPLE ITSELF IS USING

11:53:37 6    APPLICATIONS ON ITS IPHONE.

11:53:40 7            IF YOUR HONOR HAS ANY FURTHER QUESTIONS,

11:53:44 8    OTHERWISE I'LL SIT DOWN.

11:53:45 9            THE COURT:  I DO HAVE ONE QUESTION AND

11:53:46 10   THAT IS -- OKAY.  SO THE DEFINITION -- OR I'M

11:53:50 11   SORRY -- THE CONSTRUCTION THAT YOU'RE PROPOSING IS

11:53:53 12   A BOUNDARY OF ELECTRONIC DOCUMENT THAT

11:53:56 13   DISTINGUISHES IT FROM ANOTHER ELECTRONIC DOCUMENT,

11:53:57 14   OTHER CONTENT OR OTHER BACKGROUND AREAS.

11:54:06 15           AND THE QUESTION THAT I HAVE IS THAT

11:54:08 16   CLAIM 14 SAYS THAT THE COMPUTER IMPLEMENTED METHOD

11:54:09 17   OF CLAIM 1 WHEREIN THE AREA BEYOND THE EDGE OF THE

11:54:11 18   DOCUMENT IS VISUALLY DISTINCT FROM THE EDGE OF THE

11:54:17 19   DOCUMENT.

11:54:18 20           SO I GUESS HOW DO YOU RECONCILE THAT?  IF

11:54:22 21   CLAIM 1 IS SUPPOSED TO BE SEEING AN ELECTRONIC

11:54:25 22   DOCUMENT THAT DISTINGUISHES IT FROM ANOTHER

11:54:28 23   ELECTRONIC DOCUMENT, THEN WHY WOULD YOU EVER HAVE

11:54:33 24   CLAIM 14 SAYING THAT THE AREA BEYOND THE EDGE OF

11:54:35 25   THE DOCUMENT IS VISUALLY DISTINCT FROM THE

                                                              88

11:54:38 1    DOCUMENT?  ISN'T THAT THE SAME THING?

11:54:58 2              MR. VERHOEVEN:  THAT'S A GOOD QUESTION.

11:55:00 3    CAN I CONFER WITH MY COCOUNSEL?

11:55:05 4              THE COURT:  PLEASE.  GO AHEAD.

11:55:32 5              (PAUSE IN PROCEEDINGS.)

11:55:33 6              MR. VERHOEVEN:  I GUESS MY RESPONSE WOULD

11:55:35 7    BE THAT OUR CONSTRUCTION IT SAYS DISTINGUISHES IT,

11:55:37 8    NOT VISUALLY DISTINGUISHES IT.

11:55:39 9              SO WE'RE TRYING TO FIND -- THE EDGE HAS

11:55:41 10   TO MEAN SOMETHING, THAT DOCUMENT ENDS AND SOMETHING

11:55:44 11   ELSE STARTS.

11:55:44 12             THE COURT:  WELL, IF IT'S NOT VISUAL,

11:55:46 13   WHAT ARE THE OTHER WAYS THAT IT'S BEING

11:55:48 14   DISTINGUISHED THEN?

11:55:50 15             MR. VERHOEVEN:  SO IT COULD BE -- WHAT

11:55:53 16   WE'RE TRYING TO SAY IS THAT YOU HAVE AN ELECTRONIC

11:55:56 17   DOCUMENT, IT HAS AN EDGE AND THEN IT DOESN'T EXIST

11:55:59 18   BEYOND THAT EDGE.

11:55:59 19             SO THERE MIGHT BE ANOTHER ELECTRONIC

11:56:02 20   DOCUMENT THERE, THERE MIGHT BE A BACKGROUND AREA

11:56:04 21   THERE, THERE MIGHT BE JUST SOME OTHER CONTENTS

11:56:06 22   THERE.

11:56:07 23             AND WE'RE JUST TRYING TO GET THAT CONCEPT

11:56:10 24   THAT THE MATERIAL CONTENT OR WHATEVER IN THE

11:56:16 25   ELECTRONIC DOCUMENT ENDS AT THAT EDGE.

89

11:56:19  1          AND THAT EDGE IS WHAT DISTINGUISHES THE

11:56:22  2     END OF THAT CONTENT TO THE START OF SOMETHING ELSE

11:56:26  3     IS BASICALLY ALL WE'RE TRYING TO SAY.

11:56:28  4          THE COURT:  WELL, I WAS LEANING YOUR WAY

11:56:35  5     BUT THEN I THINK THAT TO SAY THAT DISTINGUISHED IS

11:56:40  6     DISTINCT FROM VISUALLY DISTINGUISHED, I DON'T THINK

11:56:43  7     THAT THAT'S GOING TO FLY.

11:56:45  8          MR. VERHOEVEN:  MAY I CONFER AND SEE IF

11:56:46  9     WE CAN'T PROPOSE SOMETHING, YOUR HONOR.

11:56:48 10          THE COURT:  IF THERE'S SOME WAY TO LIMIT

11:56:52 11     THE SCOPE OF AN ELECTRONIC DOCUMENT, I WANT TO HEAR

11:56:54 12     IT.

11:57:03 13          (PAUSE IN PROCEEDINGS.)

11:57:03 14          MR. VERHOEVEN:  WELL, WHAT IF WE JUST

11:57:04 15     SAID A BOUNDARY OF ELECTRONIC DOCUMENT AND ENDED

11:57:08 16     IT?  THAT'S REALLY WHAT WE'RE SAYING, THE BOUNDARY,

11:57:12 17     THE EDGE.

11:57:13 18          THE COURT:  SO YOU'RE SAYING YOU WOULD

11:57:14 19     SUPPORT EDGE OF ELECTRONIC DOCUMENT MEANS A

11:57:17 20     BOUNDARY OF AN ELECTRONIC DOCUMENT?

11:57:21 21          MR. VERHOEVEN:  YES.

11:57:21 22          THE COURT:  LET ME HEAR FROM APPLE.  CAN

11:57:23 23     YOU ALL AGREE TO THAT?  CAN YOU STIPULATE TO THAT?

11:57:30 24          MR. JACOBS:  YES, YOUR HONOR.  I WOULD

11:57:31 25     NOTE THAT WE'RE SUBSTITUTING "BOUNDARY" FOR "EDGE"

                                                              90

11:57:35 1    BUT THAT'S FINE, I THINK AN EDGE IS A BOUNDARY.

11:57:35 2              MR. VERHOEVEN:  MY UNDERSTANDING OF IT

11:57:41 3    THE PARTIES --

11:57:41 4              THE COURT:  DO YOU WANT SOME TIME TO

11:57:43 5    THINK ABOUT THIS?

11:57:48 6              I MEAN THE BOUNDARY OF AN ELECTRONIC

11:57:49 7    DOCUMENT, THAT WOULD BE ACCEPTABLE TO THE COURT AND

11:57:51 8    IF THAT'S WHAT THE PARTIES STIPULATE TO, THAT WOULD

11:57:52 9    MAKE IT EASIER BUT IF YOU WANT TO THINK ABOUT IT.

11:57:54 10             MR. VERHOEVEN:  CAN WE GET BACK TO YOU

11:57:56 11   AFTER WE HAVE OUR BREAK AND MAKE SURE OUR CLIENTS

11:57:59 12   ARE ON BOARD WITH EVERYTHING?

11:58:00 13             THE COURT:  THAT'S FINE.  THAT'S FINE.

11:58:07 14             OKAY.  LET'S TAKE OUR LUNCH BREAK NOW.  I

11:58:07 15   APPRECIATE EVERYONE'S PATIENCE.

11:58:10 16             IF IT'S OKAY WITH YOU ALL, GOING FORWARD

11:58:10 17   I WOULD JUST GO FORWARD AND ASK MY QUESTIONS.  AND

11:58:13 18   IF THERE'S A MINUTE OR TWO THAT YOU WANT TO WRAP

11:58:16 19   UP, I THINK THAT WOULD MOVE IT A LITTLE FASTER THAN

11:58:18 20   GOING THROUGH YOUR FULL PRESENTATIONS.

11:58:20 21             BUT I WILL REVIEW YOUR FULL

11:58:22 22   PRESENTATIONS.  SO THIS IS NOT WORK THAT HAS GONE

11:58:24 23   TO WASTE.

11:58:25 24             IF YOU HAVE ANY OBJECTIONS TO EITHER

11:58:27 25   SIDE'S PRESENTATIONS, LOOK AT IT OVER THE LUNCH

91

11:58:29  1      BREAK AND THEN JUST LET ME KNOW WHEN WE GET BACK.

11:58:32  2              WE'RE GOING TO HAVE A ONE-HOUR BREAK

11:58:34  3      UNTIL 1:00 O'CLOCK.

11:58:37  4              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

11:58:37  5              (WHEREUPON, THE LUNCH RECESS WAS TAKEN.)

          6

          7

          8

          9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

                                                            92

**AFTERNOON SESSION**

   (WHEREUPON, COURT CONVENED AND THE
FOLLOWING PROCEEDINGS WERE HELD:)

   THE COURT:  DID YOU REACH ANY AGREEMENT
ON "EDGE OF THE DOCUMENT"?

   MR. JACOBS:  I DON'T BELIEVE SO, YOUR
HONOR.  FOR TWO REASONS, NUMBER ONE, AS IN OTHER
CASES I THINK WE URGE THE RESISTANCE TO TINKERING
AND "EDGE" HAS A CONNOTATION TO IT THAT WE THINK IS
IMPORTANT.

   PROBABLY MORE IMPORTANTLY, I THINK THAT
AGREEMENT DOESN'T REALLY RESOLVE THE DISAGREEMENT
OR THE PROPOSED AGREEMENT WOULDN'T RESOLVE THE
DISAGREEMENT WHICH IS LESS ABOUT EDGE AND MORE
ABOUT ELECTRONIC DOCUMENT.

   SAMSUNG BELIEVES THAT AN ELECTRONIC
DOCUMENT INCLUDES CONTENT WITHIN A DOCUMENT, AND WE
DISAGREE WITH THAT PROPOSITION.

   SO I THINK THAT'S THE REASON WE HAVE NOT
REACHED CLOSURE.

   THE COURT:  OKAY.  WELL, WHY NOT JUST
LEAVE THAT ISSUE FOR THE JURY TO SHOW THAT
DEMONSTRATION AND LET A JURY DECIDE IT?

   MR. JACOBS:  AND IN A SENSE I THINK
THAT'S WHERE WE'RE GOING.  OUR PROPOSITION IS THAT

93

13:06:13   1   EDGE OF THE ELECTRONIC DOCUMENT COUPLED WITH THE

13:06:17   2   DEPENDENT CLAIMS THAT SAYS WHETHER THE DOCUMENT IS

13:06:21   3   A WEB PAGE, THE ELECTRONIC DOCUMENT IS A

13:06:27   4   PRESENTATION, THOSE DEPENDENT CLAIMS WILL BE IN

13:06:32   5   FRONT OF THE JURY AS WELL.  IT IS BEST LEFT -- THE

13:06:35   6   ENTIRE PHRASE "EDGE OF AN ELECTRONIC DOCUMENT" IS

13:06:38   7   BEST LEFT TO ITS ORDINARY MEANING AND THEN LEFT TO

13:06:41   8   THE TRIAL.

13:06:41   9            NOW, IT MAY TURN OUT THAT IN THE COURSE

13:06:43  10   OF THE TRIAL IT BECOMES APPARENT TO YOUR HONOR THAT

13:06:45  11   ACTUALLY ONE SIDE OR THE OTHER URGES ON YOU THERE

13:06:48  12   IS REALLY A LEGAL ISSUE HERE OF CLAIM CONSTRUCTION

13:06:51  13   THAT YOU HAVE TO CALL.  OUR PROPOSAL IS LET'S DEAL

13:06:56  14   WITH IT WHEN IT ARISES.

13:06:59  15            THE COURT:  LET ME HEAR FROM SAMSUNG.

13:07:01  16            MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

13:07:02  17            FIRST TO REPORT BACK, I HAVE CONFERRED

13:07:04  18   WITH OUR CLIENT AND WE WOULD BE PREPARED TO MODIFY

13:07:10  19   OUR CONSTRUCTION TO "A BOUNDARY OF THE ELECTRONIC

13:07:14  20   DOCUMENT," PERIOD, IF THAT'S HELPFUL TO YOUR HONOR.

13:07:17  21            THE COURT:  OKAY.

13:07:18  22            MR. VERHOEVEN:  AND I AGREE THERE IS

13:07:19  23   STILL A DISPUTE IN THAT EVEN THOUGH APPLE IS SAYING

13:07:23  24   THAT THEY'RE USING THE PLAIN AND ORDINARY MEANING,

13:07:26  25   THEY HAVE TOLD US THAT THEIR INTERPRETATION OF THIS

94

13:07:29 1    SUPPOSED PLAIN AND ORDINARY MEANING WOULD EXCLUDE

13:07:35 2    DOCUMENTS WITHIN DOCUMENTS THAT HAVE EDGES.

13:07:37 3           AND I DISAGREE WITH COUNSEL IN SAYING

13:07:43 4    THAT IT'S APPROPRIATE TO LET THIS GO TO THE JURY

13:07:45 5    UNDER THE '02 MICRO CASE, I'M SURE YOUR HONOR IS

13:07:48 6    FAMILIAR WITH IT, IF THERE IS A GENUINE DISPUTE

13:07:51 7    THAT IS MEANINGFUL, AND HERE THIS DISPUTE RELATES

13:07:52 8    TO SOME VALIDITY ISSUES WITH SOME PRIOR ART, IT'S

13:07:56 9    INCUMBENT UPON THE COURT TO RESOLVE INTERPRETATIONS

13:07:58 10   OF THE CLAIMS.

13:08:01 11          I HAD A CASE JUST RECENTLY IN THE FEDERAL

13:08:03 12   CIRCUIT LAST YEAR, COMPUTER, C.A.I.C. VERSUS YAHOO

13:08:10 13   WHERE THE JUDGE LET AN ISSUE THAT WASN'T EVEN

13:08:13 14   RAISED FORMALLY IN CLAIMS CONSTRUCTION, BUT IT WAS

13:08:15 15   RAISED BEFORE TRIAL, AND SAID WE'LL LET THE JURY

13:08:18 16   DECIDE THAT.

13:08:19 17          AND THE FEDERAL CIRCUIT REVERSED AND SAID

13:08:22 18   EVEN IN THAT SCENARIO IF THERE'S A MEANINGFUL

13:08:24 19   DISPUTE AS TO HOW TO INTERPRET THE WORDS, IT'S FOR

13:08:27 20   THE COURT TO DECIDE.

13:08:29 21          THE COURT:  BUT I DON'T THINK YOUR

13:08:32 22   DEFINITION OR YOUR CONSTRUCTION SOLVES THAT ISSUE.

13:08:33 23          YOU CAN SAY "A BOUNDARY OF ELECTRONIC

13:08:36 24   DOCUMENT," AND WE'RE STILL GOING TO HAVE THAT SAME

13:08:38 25   ISSUE AT TRIAL AS TO WHETHER THAT STOPPED

95

13:08:41  1    APPLICATION.

13:08:42  2           MR. VERHOEVEN:  WE BELIEVE THIS

13:08:44  3    CONSTRUCTION WOULD COVER INTERNAL EDGES OF

13:08:46  4    DOCUMENTS AND EXTERNAL EDGES OF DOCUMENTS, YOUR

13:08:49  5    HONOR, AND THAT'S WHY WE PROPOSED IT.

13:08:51  6           THE REASON WE DON'T HAVE A FRAMED ISSUE

13:08:56  7    SQUARELY IS BECAUSE WHAT APPLE IS DOING IS THEY'RE

13:08:58  8    SAYING NO CONSTRUCTION NECESSARY OR PLAIN AND

13:09:00  9    ORDINARY MEANING INSTEAD OF PROPOSING THE

13:09:02 10    CONSTRUCTION FORMALLY, AT LEAST, THAT THEY'RE

13:09:04 11    ACTUALLY INTERPRETING, WHICH IS TO INSERT, IN OUR

13:09:07 12    OPINION, THE LIMITATION IN THIS PLAIN CLAIM

13:09:10 13    LANGUAGE THAT IT HAS TO BE AN EXTERNAL OR OUTER

13:09:13 14    MOST EDGE OF AN ELECTRONIC DOCUMENT AND IT CAN'T

13:09:19 15    INCLUDE A DOCUMENT WITHIN A DOCUMENT THAT HAS ITS

13:09:21 16    OWN EDGES.

13:09:22 17           AND THEY HAVEN'T PUT THAT AS A FORMAL

13:09:24 18    CONSTRUCTION, BUT THEY'RE TELLING US THIS IS HOW

13:09:26 19    WE'RE GOING TO INTERPRET IT.  AND THEY SHOULDN'T BE

13:09:29 20    ABLE TO AVOID HAVING THE COURT RULE ON THIS DISPUTE

13:09:33 21    SIMPLY BY NOT PROFFERING A CONSTRUCTION AT ALL AND

13:09:36 22    URGING THE COURT TO DEFER IT.

13:09:39 23           THE COURT:  IS THE DISPUTE REALLY WHAT IS

13:09:41 24    THE CONSTRUCTION OF AN ELECTRONIC DOCUMENT MORE

13:09:45 25    THAN WHAT IS EDGE?

96

13:09:46  1          BECAUSE IF THAT'S THE CASE, NEITHER SIDE

13:09:48  2     HAS DEFINED ELECTRONIC DOCUMENT FOR ME.

13:09:55  3          MR. VERHOEVEN:  I'LL TRY TO FRAME IT AS

13:09:56  4     BEST I CAN.  I THINK THE DISPUTE IS WHETHER OR NOT

13:09:58  5     THIS LANGUAGE, THIS "EDGE OF ELECTRONIC DOCUMENT"

13:10:02  6     CAN READ ON A DOCUMENT WITHIN A DOCUMENT.

13:10:06  7          SO THE DISPUTE IS THAT YOU CAN TAKE THIS

13:10:08  8     EXACT CLAIM AND COULD YOU HAVE THIS BOUNCE BACK

13:10:15  9     FUNCTIONALITY, WITHIN, SAY YOU HAD A WEB PAGE, AND

13:10:17 10     THE SIMILAR THING I JUST SHOWED YOU, YOUR HONOR,

13:10:20 11     YOU HAD A PAGE OF AN APPLICATION AND WITHIN IT

13:10:22 12     THERE WERE TWO DIFFERENT SUB BOXES THAT WERE

13:10:25 13     SEPARATE DISPLAYS THAT HAD THEIR OWN BOUNCE BACK

13:10:28 14     FUNCTIONALITY.

13:10:29 15          AND THE QUESTION IS, IS IT APPROPRIATE TO

13:10:32 16     LIMIT AN EDGE OF ELECTRONIC DOCUMENT TO EXCLUDE

13:10:37 17     THOSE INTERNAL DOCUMENTS THAT HAVE THEIR OWN EDGES

13:10:40 18     AND AS YOU SAW HAVE THEIR OWN BOUNCE BACK

13:10:43 19     FUNCTIONALITY?

13:10:44 20          THE COURT:  WHAT DOES BOUNDARY ADD OVER

13:10:50 21     EDGE?

13:10:57 22          MR. VERHOEVEN:  IT DOESN'T ADD MUCH, YOUR

13:10:59 23     HONOR.

13:11:00 24          FRANKLY, THE DISTINCTION HERE IS WHETHER

13:11:02 25     OR NOT IT'S APPROPRIATE TO INSERT UNDER THE GUISE

                                                      97

13:11:03  1   OF NO CONSTRUCTION NECESSARY OR UNDER PLAIN AND

13:11:08  2   ORDINARY MEANING ADDITIONAL WORDS TO THE EDGE OF

13:11:11  3   THE ELECTRONIC DOCUMENT TO SAY EXTERNAL OR OUTER

13:11:13  4   MOST EDGE OF A DOCUMENT THAT DOES NOT INCLUDE

13:11:15  5   SUBDOCUMENTS.

13:11:16  6            AND THAT'S WHAT THEY ARE, UNDER THE GUISE

13:11:18  7   OF INTERPRETING THE PLAIN LANGUAGE, THAT'S WHAT

13:11:20  8   THEY'RE SAYING THAT THAT MEANS.

13:11:22  9            AND WE'RE SAYING THIS MEANS WHAT IT SAYS.

13:11:24  10           WE HAVE TRIED TO PROPOSE A CONSTRUCTION

13:11:27  11   THAT WE BELIEVE IS THE PLAIN AND ORDINARY MEANING.

13:11:29  12           SO I THINK WE ACTUALLY HAVE, IN MY VIEW,

13:11:31  13   YOUR HONOR, THE OUTWARD APPEARANCE OF APPLE SAYING

13:11:37  14   WE'RE JUST DOING PLAIN AND ORDINARY MEANING AND

13:11:39  15   WE'RE PROPOSING A CONSTRUCTION, BUT IN REALITY,

13:11:42  16   WE'RE ATTEMPTING TO GET THE COURT AND HELP THE

13:11:46  17   COURT DEFINE THE PLAIN AND ORDINARY MEANING.

13:11:48  18           AND WHAT APPLE IS DOING UNDER THE GUISE

13:11:50  19   OF PLAIN AND ORDINARY MEANING NOT PROPOSING ANY

13:11:53  20   CONSTRUCTION AND SAYING IN THE ARGUMENT OF THEIR

13:11:56  21   BRIEF THAT THIS EXCLUDES, AND I'VE HEARD IT SEVERAL

13:11:58  22   TIMES TODAY, THIS EXCLUDES HAVING AN EDGE OF A

13:12:00  23   DOCUMENT WITHIN A DOCUMENT THAT HAS BOUNCE BACK

13:12:02  24   FUNCTIONALITY.

13:12:04  25           MR. JACOBS:  MAY I, YOUR HONOR?

98

13:12:06  1          THE COURT:  WHY DO YOU OPPOSE A BOUNDARY

13:12:09  2     OF ELECTRONIC DOCUMENT?

13:12:10  3          MR. JACOBS:  WHY?

13:12:11  4          THE COURT:  UH-HUH.

13:12:12  5          MR. JACOBS:  THE CLAIM LANGUAGE IS EDGE

13:12:14  6     AND THE EDGE TO US HAS AN EDGE TO IT.

13:12:17  7          IT HAS A CONNOTATION OF BEING OF

13:12:21  8     SOMETHING YOU WOULD FALL OFF OF IF YOU REACHED IT.

13:12:24  9          AND THAT'S CLOSER, THAT'S MUCH CLOSER TO

13:12:26 10     THE ILLUSTRATION IN THE SPECIFICATION THAT IS

13:12:28 11     CLOSER TO THE WAY THAT IT ACTUALLY IS IMPLEMENTED

13:12:31 12     AND IT DEALS A LITTLE BIT WITH THIS QUESTION THAT

13:12:34 13     MR. VERHOEVEN IS RAISING OF DOCUMENTS WITHIN

13:12:39 14     DOCUMENTS.

13:12:41 15          IF I CAN RESPOND SLIGHTLY BRIEFLY TO HIS

13:12:45 16     COMMENTS?

13:12:45 17          THE COURT:  BRIEFLY.

13:12:48 18          MR. JACOBS:  THE DEFINITION HAS NOW

13:12:49 19     CHANGED.  THE PROPOSED DEFINITION IS "CONTENT."

13:12:53 20     NOW IT'S SUBDOCUMENTS WITHIN DOCUMENTS.  THE

13:12:55 21     CHALLENGE HE WAS RAISING WITH HIS ANIMATION WAS TO

13:12:59 22     DOCUMENTS WITHIN APPLICATIONS.

13:13:00 23          SO WE'RE NOT BEING REALLY CLEAR ON THE

13:13:03 24     SAMSUNG SIDE EXACTLY WHAT THEY'RE URGING.

13:13:06 25          THAT VIDEO THAT MR. VERHOEVEN SHOWED OF

                                                          99

13:13:09  1    THE IPHONE AND THAT STOCK APPLICATION IS PERFECTLY

13:13:12  2    CONSISTENT WITH OUR PROPOSED CONSTRUCTION.

13:13:13  3         THE END OF THE LIST WAS THE EDGE OF THE

13:13:16  4    DOCUMENT.

13:13:17  5         THE END -- WHEN THE END OF THE LIST WAS

13:13:20  6    REACHED, RUBBERBANDING OCCURRED.

13:13:23  7         THE DEPENDENT CLAIMS STATE THAT THE

13:13:26  8    ELECTRONIC DOCUMENT CAN BE A LIST.  SO WE'RE ALL --

13:13:31  9    THAT'S PERFECTLY IN ALIGNMENT.

13:13:33  10        THE CLAIM CONSTRUCTION DISPUTE IN THAT

13:13:35  11   CASE IS OVER WHETHER AN ELECTRONIC DOCUMENT

13:13:39  12   INCLUDES DATA.  THAT'S WHAT THE RESPONDENT IS

13:13:43  13   ARGUING THERE.  AND WE SAY, NO, AN ELECTRONIC

13:13:45  14   DOCUMENT IS A DOCUMENT.

13:13:46  15        IT IS, BY EXAMPLE, A WEB PAGE, AN IMAGE

13:13:50  16   ON A STAND-ALONE BASIS NOT IMBEDDED WITHIN A WEB

13:13:54  17   PAGE AS WE DISCUSSED EARLIER.

13:13:55  18        AND I THINK WE COME BACK TO WHERE YOU

13:13:58  19   STARTED.  I THINK THIS CAN GO TO THE JURY AND IF

13:14:00  20   THE JURY NEEDS TO BE INSTRUCTED AT THE END OF THE

13:14:02  21   TRIAL ON A LEGAL ISSUE THAT YOUR HONOR CONCLUDES

13:14:06  22   BASED ON ARGUMENTS BY OTHER SIDES, THEN THAT CAN BE

13:14:09  23   DONE.

13:14:09  24        I DON'T THINK WE'RE ADVANCING THE BALL

13:14:11  25   RIGHT NOW IN THE ABSTRACT BY TRYING TO PUT MORE

                                                        100

13:14:13  1    WORDS INTO THIS CLAIM LANGUAGE.

13:14:15  2            THE COURT:  SO YOUR POSITION IS THAT ON

13:14:20  3    THE ANIMATION THERE WERE TWO SEPARATE ELECTRONIC

13:14:22  4    DOCUMENTS SO THERE WERE TWO SEPARATE EDGES OF THE

13:14:26  5    ELECTRONIC DOCUMENT.

13:14:26  6            MR. JACOBS:  THERE WERE MULTIPLE EDGES TO

13:14:29  7    THOSE ELECTRONIC DOCUMENTS, BUT THE FIRST PART WAS

13:14:30  8    RIGHT.  IF I'M LOOKING AT THE ANIMATION FOR THE

13:14:33  9    FIRST TIME AND I SAW THE TOP --

13:14:35 10            MR. VERHOEVEN:  WE CAN PUT IT UP.

13:14:37 11            MR. JACOBS:  THAT WOULD BE FINE, BUT IT'S

13:14:39 12    A GOOD MOVE THOUGH.

13:14:41 13            I SAW THE TOP LIST SCROLL AND THE BOTTOM

13:14:44 14    LIST SCROLL, AND MR. VERHOEVEN DESCRIBED IT AS

13:14:46 15    SCROLLING WITHIN THE APPLICATION IMPLYING THAT WE

13:14:49 16    WERE ARGUING THAT THE APPLICATION OR THE FULL

13:14:51 17    SCREEN IS THE EDGE OF THE ELECTRONIC DOCUMENT,

13:14:53 18    WHICH IS NOT OUR ARGUMENT.  IT DOESN'T HAVE TO BE

13:14:55 19    THE EDGE OF THE SCREEN, IT DOESN'T HAVE TO BE A

13:14:57 20    WHOLE APPLICATION WINDOW.  IT DOES HAVE TO BE AN

13:15:02 21    ELECTRONIC DOCUMENT.

13:15:03 22            THE COURT:  BUT YOU WERE SAYING -- YOUR

13:15:04 23    POSITION IS THAT THERE ARE TWO ELECTRONIC DOCUMENTS

13:15:07 24    ON THAT SCREEN?

13:15:09 25            MR. JACOBS:  CORRECT, THAT'S THE WAY I

                                                          101

13:15:12  1    UNDERSTOOD IT.

13:15:12  2              THE COURT:  WELL, CAN WE MOVE TO GLASS

13:15:15  3    MEMBER?

13:15:15  4              MR. JACOBS:  YES.

13:15:16  5              THE COURT:  THANK YOU.  IT'S HELPFUL.  IT

13:15:18  6    STILL MAKES IT PRETTY COMPLICATED FOR THE COURT,

13:15:20  7    BUT I APPRECIATE IT.

13:15:21  8              OKAY.  CAN WE GO TO GLASS MEMBER?  AND

13:15:25  9    THIS IS MY QUESTION, IT SEEMS LIKE IN THE PATENT

13:15:27 10    THERE ARE CONFLICTING STATEMENTS ON THE ONE HAND

13:15:30 11    SAYING A GLASS, A GLASS MEMBER CAN BE ANY SUITABLE

13:15:36 12    GLASS OR GLASS PLASTIC MEMBER BUT THEN ON THE OTHER

13:15:39 13    HAND IT SAYS NO GLASS, IS THAT RELATIVELY A THICK

13:15:42 14    CLEAR PIECE OF GLASS.

13:15:44 15              SO I DON'T THINK IT'S AS CLEAR AND

13:15:45 16    DELIBERATE ENOUGH FOR YOU TO SAY THAT YOUR INVENTOR

13:15:50 17    WAS HIS OR HER OWN LEXICOGRAPHER AND CAME UP WITH

13:15:54 18    THEIR OWN DEFINITION OF THAT.

13:15:55 19              I JUST DON'T THINK THAT IT'S THAT CLEAR.

13:15:58 20    IT'S AMBIGUOUS.  SO WHAT AM I SUPPOSED TO DO IF

13:16:01 21    THEY'RE JUST CONFLICTING STATEMENTS?

13:16:05 22              MR. JACOBS:  TWO -- A COUPLE OF

13:16:07 23    RESPONSES.        FIRST, I THINK IT'S IMPORTANT

13:16:09 24    TO THINK OF THIS AS GLASS MEMBER AS A KIND OF A

13:16:15 25    COINED TERM IN THE PATENT.

                                                          102

13:16:18  1          GLASS MEMBER IS NOT AN EVERY DAY USAGE.
13:16:20  2   AND SO WHEN ONE ENCOUNTERS GLASS MEMBER, THERE'S AN
13:16:22  3   AMBIGUITY LURKING IN THAT PHRASE, WHICH IS, ARE WE
13:16:27  4   TALKING ABOUT GLASS, THE SUBSTANCE, OR ARE WE
13:16:29  5   TALKING ABOUT GLASS AS WE THINK ABOUT IT THROUGH
13:16:31  6   THE LOOKING GLASS, LET'S SAY, WHICH IS, I THINK,
13:16:35  7   NEUTRAL ON THE QUESTION OF WHAT THE LOOKING GLASS
13:16:38  8   IS COMPOSED OF.
13:16:39  9          MEMBER WE KNOW FROM READING LOTS OF
13:16:42 10   PATENTS TOGETHER.  MEMBER IS USED TO DENOTE READING
13:16:47 11   A STRUCTURE.  SO WE'RE TALKING ABOUT SOME KIND OF A
13:16:49 12   STRUCTURE THAT IS GLASS-LIKE IN SOME RESPECT.
13:16:52 13          SO I START WITH THAT, THAT WE'RE TALKING
13:16:54 14   ABOUT GLASS MEMBER THAT ITSELF DOES NOT HAVE AN
13:16:57 15   ORDINARY USAGE.
13:16:58 16          AND THEN WE READ THE SPECIFICATION TO TRY
13:17:01 17   AND GET THE CLEAREST, THE CLEAREST LANGUAGE ON WHAT
13:17:03 18   A GLASS MEMBER IS.
13:17:05 19          AND THERE ARE -- I THINK WE CAN DIVIDE
13:17:08 20   THOSE STATEMENTS INTO SEVERAL BUCKETS.
13:17:10 21          THERE ARE A LOT OF USAGES OF GLASS ON A
13:17:13 22   STAND-ALONE BASIS WITHOUT ASSOCIATION WITH GLASS
13:17:15 23   MEMBER.
13:17:16 24          THERE IS A -- I THINK I SPOTTED ONE GLASS
13:17:21 25   IN ASSOCIATION WITH GLASS MEMBER, WHICH I THINK

                                                            103

13:17:26  1   MAYBE IS THE ONE YOU'RE THINKING OF WHEN YOU RAISE

13:17:28  2   YOUR QUESTION.

13:17:28  3            AND THEN THERE IS THIS LANGUAGE, WHICH IS

13:17:30  4   IN, BY THE WAY, A SECTION ENTITLED "DETAILED

13:17:38  5   DESCRIPTION OF THE INVENTION."  "DETAILED

13:17:42  6   DESCRIPTION OF THE INVENTION," I BELIEVE.

13:17:43  7            AND WE'RE GOING TO BE -- SO THIS IS AT

13:17:47  8   COLUMN 4.  THAT'S THE HEADING.

13:17:50  9            AND WE'RE GOING TO -- I'M GOING TO BE

13:17:52 10   FOCUSSING ON THESE HEADINGS A LITTLE BIT IN SOME OF

13:17:55 11   THE OTHER PATENTS.  THIS IS DETAILED DESCRIPTION OF

13:17:57 12   THE INVENTION.

13:17:58 13            LATER ON WE'RE GOING TO SEE DESCRIPTION

13:18:00 14   OF PREFERRED EMBODIMENTS, AND I THINK THAT HAS SOME

13:18:03 15   IMPORTANCE TO IT.

13:18:04 16            HERE WE'RE TALKING ABOUT A DETAILED

13:18:06 17   DESCRIPTION OF THE INVENTION AND THEN WE HAVE THIS

13:18:09 18   LANGUAGE.  SLIDE 42.

13:18:19 19            "FURTHERMORE, EACH OF THE LAYERS MAY BE

13:18:22 20   FORMED WITH VARIOUS MATERIALS.  BY WAY OF EXAMPLE,

13:18:25 21   EACH PARTICULAR TYPE OF LAYER MAY BE FORMED FROM

13:18:27 22   THE SAME OR DIFFERENT MATERIAL.  FOR EXAMPLE, ANY

13:18:29 23   SUITABLE GLASS OR PLASTIC MATERIAL MAY BE USED FOR

13:18:32 24   THE GLASS MEMBERS.  IN A SIMILAR MANNER, ANY

13:18:36 25   SUITABLE BONDING AGENT MAY BE USED FOR THE BONDING

                                                      104

13:18:38  1    LAYERS."

13:18:39  2            NOW, I THINK THAT LANGUAGE HAS A COUPLE

13:18:41  3    OF -- THAT LANGUAGE HAS A COUPLE OF SIGNIFICANCES

13:18:51  4    TO IT.  THE FIRST IS JUST THE PLAIN WORDS

13:18:55  5    THEMSELVES, "ANY SUITABLE GLASS OR PLASTIC MATERIAL

13:18:59  6    MAY BE USED FOR THE GLASS MEMBERS."

13:19:02  7            BUT WHAT THAT LANGUAGE IS ALSO TELLING US

13:19:05  8    THIS IS NOT -- WE'RE NOT DRAWING THE BOUNDARIES IN

13:19:08  9    THE INVENTION AROUND WHAT THE SUBSTANCE IS FOR THE

13:19:11  10   MEMBER, FOR THE GLASS MEMBER.

13:19:12  11           THIS IS NOT WHAT WE WANT YOU, PATENT

13:19:14  12   OFFICE, TO FOCUS ON WHEN YOU'RE DECIDING WHETHER OR

13:19:17  13   NOT THIS IS PATENTABLE OVER THE PRIOR ART.

13:19:19  14           WHAT IS GOING TO RENDER THIS PATENTABLE

13:19:22  15   OVER THE PRIOR ART IS OTHER ELEMENTS OF THE CLAIMS,

13:19:25  16   NOT THE LIMITATION OF GLASS MEMBER TO SOME

13:19:27  17   PARTICULAR GLASS SUBSTANCE.

13:19:29  18           THAT -- SO THERE ARE TWO LAYERS TO THAT

13:19:33  19   HERE.  IT HAS SIGNIFICANCE IN TERMS OF JUST ARE WE

13:19:37  20   INFORMING THE READER WHAT GLASS MEMBER MEANS WHEN

13:19:40  21   GLASS MEMBER IS NOT A TERM THAT IS USED ORDINARILY

13:19:43  22   AND IT'S INFORMING THE EXAMINER -- WE'RE NOT

13:19:46  23   RESTING OUR CLAIM TO PATENTABILITY ON SOME

13:19:49  24   DISTINCTION OF GLASS OVER SOME OTHER CLEAR

13:19:51  25   SUBSTANCE.

                                                        105

13:19:55  1          THE COURT:  THE PROBLEM IS THAT STATEMENT

13:19:57  2     THAT "GLASS MEMBERS ARE ALSO A PIECE OF CLEAR

13:20:05  3     GLASS" IS ALSO IN THE DETAILED DESCRIPTION OF THE

13:20:07  4     INVENTION.

13:20:08  5          MR. JACOBS:  YES.

13:20:09  6          THE COURT:  SO WHAT AM I SUPPOSED TO DO

13:20:11  7     IF THE DETAILED DESCRIPTION OF THE INVENTION HAS

13:20:14  8     SEEMINGLY CONFLICTING --

13:20:17  9          MR. JACOBS:  OUR POSITION OR OUR ARGUMENT

13:20:19 10     IS THAT THIS LANGUAGE TRUMPS THE LANGUAGE I FOCUS

13:20:21 11     THE COURT ON AT COLUMN 16, 43 TO 49 TRUMPS.

13:20:26 12          THE COURT:  WHY?

13:20:28 13          MR. JACOBS:  BECAUSE IT IS THE LANGUAGE

13:20:29 14     THAT IS SAYING WHAT CAN YOU USE FOR THE "GLASS

13:20:31 15     MEMBERS."

13:20:31 16          I MAY HAVE USED "GLASS MEMBERS" EARLIER

13:20:34 17     IN MY SPECIFICATION, BUT HERE I'M TELLING YOU PLAIN

13:20:38 18     AND SIMPLE WHAT YOU CAN USE FOR THE GLASS MEMBERS,

13:20:40 19     AND I'M TELLING YOU GLASS OR PLASTIC.

13:20:46 20          IT'S NOT A GLANCING DESCRIPTION.  IT'S

13:20:51 21     NOT AN IMBEDDED IN SOMETHING ELSE DESCRIPTION WHERE

13:20:55 22     THE WORD "GLASS" HAS TO BE USED.  IT'S FRONT AND

13:21:00 23     CENTER, "ANY SUITABLE GLASS OR PLASTIC MATERIAL MAY

13:21:03 24     BE USED FOR THE GLASS MEMBERS."

13:21:05 25          THE COURT:  LET ME ASK YOU WHERE IT SAYS,

                                                          106

13:21:08 1    "IN EITHER CASE THE GLASS MEMBER IS A RELATIVELY

13:21:08 2    THICK PIECE OF CLEAR GLASS," DO YOU THINK THAT

13:21:12 3    MEANS GLASS OR PLASTIC IN THAT SENTENCE?

13:21:16 4              MR. JACOBS:  IN THAT SENTENCE?  WHERE ARE

13:21:17 5    YOU, YOUR HONOR?

13:21:17 6              THE COURT:  I'M AT COLUMN 12, LINES 38

13:21:24 7    THROUGH 41.

13:21:36 8              MR. JACOBS:  IN THAT CASE, YOUR HONOR, I

13:21:37 9    THINK THE RIGHT INTERPRETATION IS THAT THAT IS

13:21:39 10   GLASS, THE GLASS, THE SUBSTANCE.

13:21:40 11             THE COURT:  OKAY.  ALL RIGHT.  ANYTHING

13:21:43 12   ELSE ON THIS, OTHERWISE I'LL HEAR FROM

13:21:45 13   MR. VERHOEVEN?

13:21:46 14             MR. JACOBS:  NO, YOUR HONOR.

13:21:47 15             THE COURT:  OKAY.  THANK YOU.

13:21:52 16             MR. VERHOEVEN:  CAN WE GO TO SLIDE 20,

13:21:54 17   PLEASE.  I'M GOING TO ANSWER YOUR HONOR'S PRECISE

13:21:57 18   QUESTION TO MY OPPOSING COUNSEL IF I MAY?

13:21:59 19             WHAT DO YOU DO IF IT'S AMBIGUOUS?  UNDER

13:22:02 20   NINTH CIRCUIT LAW, "TO THE EXTENT THE CLAIM IS

13:22:04 21   AMBIGUOUS, A NARROW READING WHICH EXCLUDES THE

13:22:11 22   AMBIGUOUSLY COVERED SUBJECT MATTER MUST BE

13:22:17 23   ADOPTED."

13:22:17 24             AND THAT'S THE CASE WE HAVE HERE, YOUR

13:22:33 25   HONOR.

                                                            107

13:22:33  1              IF I MAY GO TO SLIDE 7, PLEASE.  OH, I

13:22:37  2      NEGLECTED TO HAND THESE UP.

13:22:40  3              THE COURT:  OH, OKAY.

13:22:42  4              MR. VERHOEVEN:  I'M GOING TO HAND ALL OF

13:22:44  5      THESE UP.

13:22:45  6              THE COURT:  THAT WOULD BE GREAT.

13:23:04  7              MR. VERHOEVEN:  THESE ARE ALL OF THE

13:23:05  8      REMAINING TERMS.

13:23:06  9              THE COURT:  OKAY.  THANK YOU.

13:23:08 10              MR. VERHOEVEN:  IT'S NOT ON THE TOP, YOUR

13:23:10 11      HONOR.  I APOLOGIZE.

13:23:11 12              THE COURT:  THANK YOU.  I'VE GOT IT.

13:23:18 13              MR. VERHOEVEN:  SO WHAT I WOULD LIKE TO

13:23:19 14      DO HERE, YOUR HONOR, ON SLIDE 7, I HAVE PULLED OUT

13:23:22 15      THE TWO SENTENCES THAT APPLE IS RELYING ON.

13:23:27 16              AND I NOTE, BY THE WAY, THEY BOTH START

13:23:30 17      WITH "BY WAY OF EXAMPLE" OR "FOR EXAMPLE" WHICH IS

13:23:35 18      NOT LANGUAGE THAT IS DEFINITIONAL.

13:23:37 19              BUT I WANT TO TAKE A LOOK AT THE CONTEXT

13:23:39 20      IN WHICH THIS APPEARS.

13:23:40 21              SO IF WE GO TO SLIDE 8, THIS IS THE IN

13:23:46 22      THE CONTEXT OF THIS LARGER DISCUSSION IN COLUMNS 15

13:23:48 23      AND 16, YOU CAN'T READ IT YET, I'M JUST

13:23:51 24      HIGHLIGHTING IT THERE.

13:23:51 25              THIS IS A DISCUSSION OF FIGURE 10.

                                                              108

13:23:56 1     SO IF YOU GO TO SLIDE 9, I'VE PULLED OUT

13:23:59 2 THE FIRST SENTENCE OF THAT DISCUSSION.  AND YOU SEE

13:24:12 3 IT SAYS, "FIGURE 10 IS A PARTIAL FRONT ELEVATION

13:24:17 4 VIEW, IN CROSS SECTION OF A DISPLAY ARRANGEMENT 170

13:24:21 5 IN ACCORDANCE WITH ONE EMBODIMENT OF THE PRESENT

13:24:26 6 INVENTION."

13:24:27 7     AND THIS WHOLE DISCUSSION IS BASICALLY OF

13:24:29 8 FIGURE 10.

13:24:30 9     WE'RE GOING TO THE NEXT SLIDE JUST TO

13:24:31 10 SHOW YOU FIGURE 10.  AND THAT'S WHAT IT LOOKS LIKE.

13:24:35 11 THIS IS FIGURE 10.  IT'S A VERY SPECIFIC STRUCTURE

13:24:39 12 THAT HAS SPECIFIC LAYERS.  THIS IS SLIDE 10.

13:24:43 13     AND IF WE GO TO THE NEXT SLIDE, SLIDE 11,

13:24:47 14 FROM COLUMN 15:24 THROUGH COLUMN 16:33 THE PATENTEE

13:24:58 15 WALKS US THROUGH THAT STRUCTURE THAT IS ILLUSTRATED

13:25:00 16 IN FIGURE 10 AND UNIFORMLY DESCRIBES THAT

13:25:06 17 PARTICULAR STRUCTURE, THE THREE LAYERS THAT ARE

13:25:08 18 TRANSPARENT AS GLASS.

13:25:12 19     SO IT TALKS ABOUT A FIRST GLASS MEMBER,

13:25:14 20 178.  AND IT TALKS ABOUT A SECOND GLASS MEMBER,

13:25:18 21 182.

13:25:19 22     AND IF WE TOGGLE BACK TO FIGURE 10 HERE,

13:25:22 23 YOU CAN SEE HERE THEY'RE IDENTIFIED BY NUMBER.

13:25:24 24     AND GOING BACK TO SLIDE 11, IT UNIFORMLY

13:25:29 25 DESCRIBES THIS PARTICULAR EMBODIMENT AS HAVING

109

13:25:32  1       GLASS AS THE TRANSPARENT LAYERS.

13:25:36  2                AND I'M NOT GOING TO READ THE WHOLE

13:25:38  3       THING, YOUR HONOR.

13:25:41  4                BUT THE LAST PARAGRAPH, YOUR HONOR,

13:25:44  5       BEFORE IT STARTS TALKING ABOUT FIGURE 11 IS WHERE

13:25:50  6       THE LANGUAGE THAT APPLE TALKS ABOUT IS PULLED OUT.

13:25:54  7                SO I'M GOING TO GO TO SLIDE 12, IF I MAY.

13:25:58  8                AND HERE AT SLIDE 12 WE PULLED OUT THE

13:26:01  9       LAST PARAGRAPH AND THIS IS, IF YOU READ THROUGH

13:26:08 10       THIS, YOUR HONOR, YOU'LL SEE THAT STARTING WITH

13:26:11 11       THIS PARAGRAPH, THEY STOP TALKING ABOUT THE

13:26:14 12       SPECIFIC STRUCTURE OF FIGURE 10 AND THEY ARE

13:26:18 13       BASICALLY SAYING, YOU CAN TAKE FIGURE 10 AND DO IT

13:26:21 14       A WHOLE BUNCH OF DIFFERENT WAYS.

13:26:23 15                SO THEY SAY, "WITH REGARDS TO

13:26:26 16       CONFIGURATION, EACH OF THE VARIOUS LAYERS MAY BE

13:26:30 17       FORMED WITH VARIOUS SIZES, SHAPES, AND THE LIKE.

13:26:34 18       FOR EXAMPLE, EACH OF THE LAYERS MAY HAVE THE SAME

13:26:37 19       THICKNESS OR A DIFFERENT THICKNESS THAN THE OTHER

13:26:39 20       LAYERS IN THE STRUCTURE.  IN THE ILLUSTRATED

13:26:42 21       EMBODIMENT, THE FIRST GLASS MEMBER HAS A THICKNESS

13:26:45 22       OF ABOUT 1.1 MILLIMETER," AND IT GOES ON TO TALK

13:26:48 23       ABOUT THE SPECIFIC THICKNESSES.

13:26:49 24                AND THEN IN THE NEXT HIGHLIGHTED SECTION

13:26:54 25       IT SAYS, "FURTHERMORE, EACH OF THE LAYERS MAY BE

                                                              110

13:26:57  1    FORMED WITH VARIOUS MATERIALS."

13:26:59  2              SO IT'S SAYING WE HAVE JUST DESCRIBED A

13:27:02  3    SPECIFIC EMBODIMENT THAT HAS GLASS MEMBER, BUT YOU

13:27:07  4    CAN DO THIS A DIFFERENT WAY SO EACH OF THE LAYERS

13:27:12  5    FORM VARIOUS MATERIALS.  "BY WAY OF AN EXAMPLE,

13:27:15  6    EACH PARTICULAR TYPE OF LAYER MAY BE FORMED FROM

13:27:17  7    THE SAME OR DIFFERENT MATERIAL."

13:27:21  8              THAT'S SAYING YOU CAN USE PLASTIC FOR ONE

13:27:23  9    LAYER AND GLASS FOR ANOTHER.

13:27:25 10              AND THEN IT CONTINUES, "FOR EXAMPLE, ANY

13:27:28 11    SUITABLE GLASS OR PLASTIC MATERIAL MAY BE USED FOR

13:27:30 12    THE GLASS MEMBERS."

13:27:32 13              NOW, I WOULD SUBMIT, YOUR HONOR, WHEN

13:27:34 14    READ IN CONTEXT, WHAT THAT IS SAYING IS THAT THE

13:27:37 15    ANTECEDENT OF THE GLASS MEMBER THERE IS FIGURE 10,

13:27:41 16    AND IT'S SAYING PROPERLY CONSTRUED, YOU COULD USE

13:27:44 17    ANY SUITABLE GLASS FOR THAT OR YOU CAN USE ANY

13:27:46 18    SUITABLE PLASTIC FOR THAT.  THAT IS NOT

13:27:50 19    DEFINITIONAL.

13:27:50 20              THAT'S NOT SAYING AS USED IN THIS PATENT,

13:27:53 21    GLASS MEMBER MEANS GLASS AND PLASTIC AND ESPECIALLY

13:27:58 22    WHEN WHAT YOUR HONOR POINTED OUT THERE'S ANOTHER

13:28:00 23    PLACE WHERE THEY SAID, USED THE WORD "IS," THE

13:28:04 24    GLASS MEMBER IS MADE OF CLEAR GLASS, AND COUNSEL

13:28:07 25    ADMITS THAT'S GLASS, WHICH IS INCONSISTENT WITH THE

                                                          111

13:28:09  1    READING OF THIS.

13:28:14  2          ANOTHER THING I WOULD LIKE TO POINT OUT,

13:28:16  3    YOUR HONOR, IS IF YOU LOOK AT THE CLAIMS, AND IF

13:28:18  4    YOU GO TO SLIDE 5, PLEASE.

13:28:24  5          HERE YOU SEE FURTHER EVIDENCE THAT "GLASS

13:28:26  6    MEMBER" DOES NOT MEAN "ANY SUITABLE GLASS OR

13:28:29  7    PLASTIC MATERIAL" BECAUSE IN THE CLAIMS, THE TWO

13:28:32  8    INDEPENDENT CLAIMS HERE, CLAIM 1 IS MUCH BROADER

13:28:36  9    AND IS CLAIMED TO COVER ANY SUITABLE MATERIAL.

13:28:39 10          SO IT TALKS ABOUT A TOUCH PANEL

13:28:41 11    COMPRISING A TRANSPARENT CAPACITIVE SENSING MEDIUM.

13:28:46 12          THAT MEANS IT CAN BE ANY TRANSPARENT

13:28:48 13    ISOLATING MATERIAL.

13:28:49 14          AND THEN IT JUST TALKS ABOUT A FIRST

13:28:51 15    LAYER AND A SECOND LAYER.  IT DOESN'T SPECIFY

13:28:58 16    WHETHER IT'S GLASS OR PLASTIC.

13:28:59 17          SO IN CLAIM 1 THE PATENTEE WROTE THE

13:29:03 18    CLAIM TO COVER GLASS AND PLASTIC.

13:29:05 19          IN CONTRAST, IN CLAIM 10, THE CLAIM WAS

13:29:08 20    LIMITED SPECIFICALLY TO GLASS, A GLASS MEMBER, THE

13:29:12 21    FIRST GLASS MEMBER, THE SECOND GLASS MEMBER, A

13:29:15 22    THIRD GLASS MEMBER.  IT LOOKS A LOT LIKE FIGURE 10.

13:29:19 23          SO THE CLAIMS SUPPORT THE INTERPRETATION

13:29:23 24    THAT I'M TALKING ABOUT, YOUR HONOR, THAT CLAIM 10

13:29:27 25    IS TALKING ABOUT GLASS, AND CLAIM 1 IS TALKING

112

13:29:31  1    ABOUT THAT LAST PARAGRAPH WHERE YOU COULD USE ANY

13:29:34  2    SUITABLE MATERIAL AS LONG AS IT'S TRANSPARENT.

13:29:47  3            NOW, IF WE CAN GO TO SLIDE 13, I'LL TRY

13:29:50  4    TO BE BRIEF ON THIS, YOUR HONOR, THERE ARE OTHER

13:29:52  5    PLACES IN THE PATENT WHERE THE PATENTEE USED

13:29:56  6    BROADER PHRASES TO ENCOMPASS BOTH GLASS AND

13:29:59  7    PLASTIC.

13:30:00  8            SO, FOR EXAMPLE, IN COLUMN 10, LINES 39

13:30:03  9    THROUGH 40 IT REFERS TO THE OPTICALLY TRANSMISSIVE

13:30:08  10   MEMBER IS FORMED FROM A CLEAR MATERIAL SUCH AS

13:30:11  11   GLASS OR PLASTIC.

13:30:12  12            AT COLUMN 12, LINE 60 THROUGH 62, "THE

13:30:17  13   PROTECTIVE COVER SHEET MAY BE FORMED FROM ANY

13:30:20  14   SUITABLE CLEAR MATERIAL SUCH AS GLASS OR PLASTIC."

13:30:22  15            THEY WOULDN'T BE SAYING THIS IF THEY

13:30:24  16   INTENDED TO DEFINE GLASS MEMBER TO BE GLASS OR

13:30:27  17   PLASTIC.  IT WOULD BE REDUNDANT.  IT WOULDN'T MAKE

13:30:29  18   ANY SENSE.

13:30:30  19            IF YOU GO TO SLIDE 15, PLEASE.

13:30:34  20            THIS IS ANOTHER PLACE THAT YOUR HONOR WE

13:30:37  21   BELIEVE IS SPOTTED ON, COLUMN 12, LINE 35 THROUGH

13:30:43  22   41.

13:30:43  23            "THE TOUCHSCREEN INCLUDES A TRANSPARENT

13:30:47  24   ELECTRODE LAYER THAT IS POSITIONED OVER A GLASS

13:30:49  25   MEMBER.  THE GLASS MEMBER MAY BE A PORTION OF THE

113

13:30:52  1    LCD DISPLAY OR IT MAY BE A PORTION OF THE

13:30:54  2    TOUCHSCREEN.  IN EITHER CASE, THE GLASS MEMBER IS A

13:30:57  3    RELATIVELY," IS, IS MUCH MORE DEFINITIONAL, YOUR

13:31:02  4    HONOR, THAN "FOR EXAMPLE," AND "MAY."

13:31:06  5            IT SAYS, "IS A RELATIVELY THICK PIECE OF

13:31:11  6    CLEAR GLASS," WHICH COUNSEL HAS ADMITTED THAT'S

13:31:15  7    REFERRING TO GLASS NOT PLASTIC.

13:31:17  8            THIS IS A MORE DEFINITIONAL STATEMENT

13:31:18  9    ACTUALLY THAN THE ONE THEY POINT TO WHICH USES THE

13:31:20  10   WORD "FOR EXAMPLE" AND "MAY" WHICH I BELIEVE YOU

13:31:23  11   COULD INTERPRET THE WORD "FOR" IN THAT SENTENCE TO

13:31:25  12   MEAN "IN PLACE OF."  IN PLACE OF THE GLASS MEMBER

13:31:28  13   IN FIGURE 10.

13:31:29  14           THE FINAL POINT ON THIS, YOUR HONOR, IF I

13:31:36  15   MAY, GO TO SLIDE 21, PLEASE.

13:31:45  16           I BELIEVE IN APPLE'S IN TERMS OF THE CASE

13:31:48  17   LAW CITED BY APPLE, THE ONLY CASE THEY CITE, I

13:31:52  18   THINK, IT'S AN UNREPORTED DISTRICT COURT CASE

13:31:56  19   TRANSWEB VERSUS 3M, AND IT CLAIMS THAT THAT

13:32:01  20   LANGUAGE THERE IS ANALOGOUS TO THE LANGUAGE IN THIS

13:32:06  21   CASE BUT TRANSWEB IS CLEARLY NOT APPOSITE.

13:32:11  22           TRANSWEB IS CLEARLY USING I.E.  NOW,

13:32:16  23   I.E.:  THAT IS.  WHAT DO WE HAVE HERE?  WE HAVE

13:32:19  24   "FOR EXAMPLE."  WHAT IS FOR EXAMPLE?  FOR EXAMPLE

13:32:22  25   IS E.G., NOT I.E.  AND THERE'S NO CASE SAYING THAT

                                                        114

13:32:25 1  THE USE OF E.G. IS DEFINITIONAL.

13:32:29 2          SO THIS DOES NOT SUPPORT, WE WOULD

13:32:33 3  SUBMIT, YOUR HONOR, THIS ARGUMENT.

13:32:34 4          AND WITH THAT I'LL SIT DOWN UNLESS YOU

13:32:36 5  HAVE ANY FURTHER QUESTIONS.

13:32:37 6          THE COURT:  NO THANK YOU.  OKAY.  JUST

13:32:39 7  VERY BRIEFLY IF YOU'RE GOING TO SAY ANYTHING.

13:32:43 8          MR. JACOBS:  I THINK ACTUALLY THE MORE WE

13:32:45 9  READ IT, THE MORE OUR VIEW IS REINFORCED.

13:32:48 10          THAT LANGUAGE THAT WE'RE FOCUSSING ON IS

13:32:51 11  LANGUAGE WHERE THE DRAFTSMAN OF THE PATENT SAYS

13:32:54 12  THAT I KNOW I DESCRIBED A PARTICULAR EMBODIMENT OR

13:32:57 13  PARTICULAR EMBODIMENTS IN THIS PATENT, BUT DON'T

13:33:00 14  READ MY USAGE OF THE WORD "GLASS" IN "GLASS MEMBER"

13:33:03 15  AS A LIMITATION TO "GLASS."  THAT'S WHAT THAT

13:33:06 16  PARAGRAPH IS ALL ABOUT.

13:33:07 17          THE COURT:  AND WHICH PARAGRAPH ARE YOU

13:33:08 18  REFERRING?

13:33:09 19          MR. JACOBS:  THE ONE WE'RE FOCUSSING ON

13:33:11 20  IN THE --

13:33:15 21          THE COURT:  COLUMN 16, LINES 43 THROUGH

13:33:25 22  49?

13:33:30 23          MR. JACOBS:  COLUMN 16, YES.  SO THAT'S

13:33:31 24  THE PLACE WHERE THE DRAFTSMAN SAYS, YOU KNOW, I

13:33:34 25  BETTER REALLY MAKE IT CLEAR BECAUSE I'M USING --

                                                    115

13:33:37 1    AROUND THIS APPLICATION I'M USING THE WORD "GLASS"

13:33:41 2    AND HERE'S WHAT I MEAN BY THAT.  I DON'T MEAN GLASS

13:33:44 3    AND GLASS MEMBER, AND I DON'T MEAN THE SUBSTANCE

13:33:46 4    GLASS.  I MEAN ANY SUITABLE PLASTIC OR GLASS THAT

13:33:49 5    WILL SERVE THE PURPOSE OF THE GLASS MEMBER THAT I

13:33:51 6    HAVE DESCRIBED.

13:34:03 7            THE COURT:  OKAY.  LET'S GO TO THE NEXT

13:34:04 8    ONE.  DO YOU WANT TO DO PIXEL OR --

13:34:08 9            MR. JACOBS:  SURE.  SO LET ME GO TO 44,

13:34:15 10   PLEASE.

13:34:19 11           THE HEART OF THE ISSUE HERE, YOUR HONOR,

13:34:20 12   IS THAT A PIXEL IS BEING USED IN A DIFFERENT WAY IN

13:34:24 13   THIS PATENT AND IN THE '828 PATENT THAN IT IS USED

13:34:29 14   ORDINARILY IN, FOR EXAMPLE, DISPLAY ARTS OR PHOTO

13:34:36 15   SENSITIVE DEVICES.

13:34:42 16           AND WE THINK IT IS IMPORTANT TO CLARIFY

13:34:44 17   THAT BECAUSE THERE IS A POTENTIAL FOR CONFUSION

13:34:46 18   WHEN THE JURY HEARS THE WORD "PIXEL" IF ANY OF THEM

13:34:50 19   ARE TECHNICALLY ASTUTE AND THEY HAVE NOT READ THE

13:34:53 20   SPECIFICATION, THEY MAY NOT GRASP THAT PIXEL HERE

13:34:56 21   IS BEING USED A LITTLE BIT DIFFERENTLY.

13:34:57 22           SO I THINK WE SHOULD START WITH THE CLAIM

13:35:00 23   LANGUAGE.  AS I MENTIONED AT THE OUTSET, THIS IS A

13:35:03 24   CASE WHERE THE CLAIM LANGUAGE HELPS US A GREAT DEAL

13:35:05 25   IN UNDERSTANDING WHAT THE WORD MEANS.

116

13:35:07 1          WE'RE GOING TO RECEIVE AT LEAST ONE

13:35:11 2     PROXIMITY IMAGE REPRESENTING A SCAN OF A PLURALITY

13:35:16 3     OF ELECTRODES OF THE TOUCH SENSITIVE SURFACE.

13:35:19 4          SO WE KNOW TO BEGIN WITH THAT WE'RE

13:35:21 5     TALKING ABOUT ELECTRODES ON A TOUCH SENSITIVE

13:35:24 6     SURFACE NOT LIKE A CLASSIC DISPLAY PIXEL LIKE AN

13:35:29 7     LCD PIXEL THAT WE'RE ALL FAMILIAR WITH WHEN YOU GET

13:35:34 8     GRANULATED SCREEN.

13:35:34 9          AND THEN WE'RE GOING TO SEGMENT EACH

13:35:36 10    PROXIMITY IMAGE INTO ONE OR MORE PIXEL GROUPS THAT

13:35:38 11    INDICATES SIGNIFICANT PROXIMITY.  EACH PIXEL GROUP

13:35:42 12    REPRESENTING PROXIMITY OF A DISTINGUISHABLE HAND

13:35:45 13    PART, ET CETERA.

13:35:46 14         SO WE'RE GOING TO PICK UP SIGNALS FROM

13:35:48 15    THE ELECTRODES AND THEN WE'RE GOING TO SEGMENT THAT

13:35:50 16    IMAGE INTO PIXEL GROUPS.

13:35:52 17            THE COURT:  CAN I STOP YOU HERE A SECOND?

13:35:55 18            MR. JACOBS:  YOU BET.

13:35:55 19            THE COURT:  WOULD BOTH SIDES, AND I'M

13:35:58 20    THROWING THIS OUT, AGREE THAT THE SMALLEST

13:36:00 21    DISCERNIBLE PART OF A PROXIMITY IMAGE.  SO IT'S

13:36:04 22    ADDING PROXIMITY TO IMAGE.

13:36:07 23            MR. VERHOEVEN:  WE WOULD, YOUR HONOR.

13:36:08 24            THE COURT:  AND WOULD YOU AGREE?

13:36:10 25            MR. JACOBS:  WE DO NOT.

                                                        117

13:36:10  1                 THE COURT:  WHY IS THAT?

13:36:11  2                 MR. JACOBS:  AND I'M NOT SURE,

13:36:12  3      DISCERNIBLE BY WHAT?  DISCERNIBLE TO THE EYE?

13:36:16  4      DISCERNIBLE TO THE ELECTRONICS TO THE SYSTEM?

13:36:21  5      DISCERNIBLE TO AN ELECTRON MICROSCOPE THAT IS

13:36:24  6      ANALYZING THE SUBSTANCE?

13:36:25  7                 SO WE THINK THAT DISCERNABLE ADDS A LOT

13:36:30  8      OF CONFUSION.  AND IN THIS CASE I THINK

13:36:38  9      UNAMBIGUOUSLY WE HAVE DEFINITIONAL LANGUAGE IN THE

13:36:38 10      PATENT.

13:36:42 11                 AT COLUMN 18, 1 THROUGH 15 ON SLIDE 48 WE

13:36:44 12      HAVE PIXEL IN QUOTES.  SO "THE PROXIMITY DATA

13:36:47 13      MEASURED AT ONE ELECTRODE DURING A PARTICULAR SCAN

13:36:50 14      CYCLE CONSTITUTES ONE 'PIXEL' OF THE PROXIMITY

13:36:54 15      IMAGE CAPTURED IN THAT SCAN CYCLE."

13:36:56 16                 SO THE PATENTEE COULD NOT HAVE BEEN

13:36:59 17      CLEARER HERE ABOUT WHAT IT WAS REFERRING TO WHEN IT

13:37:01 18      USED THE WORD "PIXEL."

13:37:03 19                 AND THEN, OF COURSE, IF WE GO A LITTLE

13:37:06 20      DEEPER INTO THE SPECIFICATION WE SEE THE PROXIMITY

13:37:09 21      DATA BEING CAPTURED AS PIXELS.  AND ON --

13:37:13 22                 THE COURT:  SORRY.

13:37:14 23                 SO FOR YOUR CONSTRUCTION, ARE YOU SAYING

13:37:16 24      THAT PIXEL CORRESPONDS TO THE PROXIMITY DATA

13:37:19 25      MEASURED AT ONE ELECTRODE AND THEN PIXEL GROUP IS

                                                              118

13:37:23  1    THE PROXIMITY DATA MEASURED AT MORE ELECTRODES, OR

13:37:30  2    WHEN DO YOU GO FROM ONE TO MORE?

13:37:32  3         MR. JACOBS:  SO I SHOULD REPORT THAT WE

13:37:34  4    DID REACH AGREEMENT THAT I HOPE WILL SIMPLIFY THIS

13:37:36  5    AND THAT WE'RE NOT URGING A CONSTRUCTION OF "PIXEL

13:37:39  6    GROUPS" AT THIS TIME.

13:37:39  7         IF WE GET A CONSTRUCTION OF "PIXEL" THEN

13:37:42  8    "GROUP" WILL FOLLOW NATURALLY.  I BELIEVE I'M

13:37:47  9    ACCURATELY RECITING AND SAMSUNG IS COMFORTABLE ALSO

13:37:50 10    PROCEEDING JUST TO DEFINE PIXEL.

13:37:52 11         MR. VERHOEVEN:  WE ARE FINE WITH THAT.

13:37:54 12    SO THE PHRASE TO BE CONSTRUED NOW WILL BE PIXEL.

13:37:59 13         THE COURT:  NOW, AM I JUST KICKING THE

13:38:01 14    CAN DOWN THE ROAD AND THEN YOU WOULD FIGHT WHETHER

13:38:05 15    A "GROUP" IS ONE OR MORE?  I WAS JUST GOING TO DO

13:38:07 16    PLAIN AND ORDINARY MEANING OF "GROUP."

13:38:10 17         MR. JACOBS:  THAT'S FINE.

13:38:11 18         MR. VERHOEVEN:  THAT'S FINE.

13:38:17 19         THE COURT:  BUT ARE WE GOING TO FIGHT

13:38:18 20    ABOUT WHAT "GROUP" MEANS?  I DON'T WANT US TO THEN

13:38:21 21    HAVE A WHOLE FIGHT ABOUT WHAT "GROUP" MEANS AT

13:38:23 22    TRIAL.

13:38:27 23         MR. JACOBS:  WE'RE NOT SURE WHERE THEY'RE

13:38:29 24    GOING ON THIS ISSUE YET, YOUR HONOR.  SO IT'S A

13:38:30 25    LITTLE HARD FOR US TO TELL WHETHER THIS IS REAL.

                                                         119

13:38:32  1          BUT I THINK ONE REASON WE'RE COMFORTABLE

13:38:35  2    WITH THIS IS THAT GROUP CONNOTES MORE THAN JUST A

13:38:38  3    NUMERICAL ASPECT TO THIS.  "GROUP" CONNOTES A

13:38:38  4    GROUPING, A TOGETHERNESS, A CO-RELATIONSHIP, AND

13:38:41  5    THAT'S WHAT IS GOING ON HERE IF YOU LOOK AT FIGURE

13:38:43  6    13.  WE SEE THESE PIXELS IN A GROUP ASSOCIATED WITH

13:38:47  7    THE FINGER IMAGE.

13:39:00  8          THE COURT:  WELL, WHAT IS THE ISSUE HERE?

13:39:02  9    ARE YOU WORRIED ABOUT PRIOR ART RELATING TO T.V.'S

13:39:07 10    AND CAMERAS?  IS THAT IT?

13:39:13 11          MR. JACOBS:  THAT'S OUR HYPOTHESIS ABOUT

13:39:15 12    WHERE SAMSUNG IS GOING ON THIS ONE.  BUT THIS IS

13:39:18 13    ONE THAT IS A LITTLE MYSTERIOUS BECAUSE THERE'S SO

13:39:21 14    MUCH TO THIS CLAIM THAT IT'S HARD FOR US TO SEE HOW

13:39:24 15    IT'S GOING TO GET THEM VERY FAR, EVEN IF THEY GET

13:39:27 16    IT.

13:39:27 17          BUT NONETHELESS, GIVEN THE CLEAR

13:39:29 18    DEFINITION IN THE SPECIFICATION, WE THOUGHT WE

13:39:31 19    SHOULD ADOPT THAT.

13:39:32 20          THE COURT:  IS THAT WHY, MR. VERHOEVEN,

13:39:34 21    YOUR CLIENT CARES ABOUT THIS BECAUSE YOU WANT TO

13:39:36 22    BRING IN T.V.'S AND CAMERAS?

13:39:38 23          MR. VERHOEVEN:  I'M SORRY.  WE DON'T

13:39:39 24    THINK THIS NEEDS TO BE CONSTRUED.  WE DON'T THINK

13:39:42 25    THERE IS AN ISSUE HERE.  WE DON'T THINK THIS IS A

                                                          120

13:39:46  1      MICRO '02 SITUATION.

13:39:49  2               THE COURT:  SO HOW DOES LOPPING OFF

13:39:52  3      "GROUP" AFFECT YOUR PROPOSED CONSTRUCTION?

13:39:55  4               MR. JACOBS:  OUR PROPOSED CONSTRUCTION

13:39:57  5      WOULD BE THAT A PIXEL IS A PORTION OF A PROXIMITY

13:40:05  6      IN THE IMAGE THAT INDICATES THE PROXIMITY DATA

13:40:07  7      MEASURED AT AN ELECTRODE.

13:40:16  8               THE COURT:  A PORTION OF A PROXIMITY

13:40:18  9      IMAGE THAT INDICATES THE PROXIMITY DATA MEASURED AT

13:40:21 10      AN ELECTRODE?

13:40:23 11               MR. JACOBS:  YES.

13:40:23 12               THE COURT:  OKAY.

13:40:26 13               MR. JACOBS:  AND JUST TO GIVE YOU COMFORT

13:40:28 14      THAT I'M NOT GOING FAR FROM WHAT THE DRAFTSMAN OF

13:40:31 15      THE PATENT SAID.  IN M48 IT SAYS ONE.  I'M

13:40:37 16      PERFECTLY COMFORTABLE WITH ONE AS WELL, BUT ROAD

13:40:40 17      WAS JUST INTENDED TO BE A SMOOTHER WAY OF

13:40:43 18      EXPRESSING THE THOUGHT.

13:40:44 19               THE COURT:  OKAY.  DO YOU HAVE ANY MORE?

13:40:55 20      I'M OKAY WITH THAT.

13:40:58 21               ALL RIGHT.  LET ME ASK MR. VERHOEVEN, IS

13:41:02 22      THERE ANYTHING IN THE SPECIFICATION OR ANYTHING

13:41:04 23      THAT SUGGESTS THAT A PIXEL REFERS TO ANYTHING OTHER

13:41:07 24      THAN AN ELEMENT OF A PROXIMITY IMAGE?

13:41:14 25               BECAUSE I DON'T THINK THIS APPLIES TO

                                                            121

13:41:16   1    T.V.'S AND CAMERAS.

13:41:18   2              MR. VERHOEVEN:  I'LL HAVE TO CONFER TO

13:41:20   3    GIVE YOU THE ANSWER.

13:41:21   4              THE COURT:  OKAY, PLEASE.  IF YOU COULD

13:41:23   5    DO THAT.

13:41:43   6              (PAUSE IN PROCEEDINGS.)

13:41:44   7              MR. VERHOEVEN:  I'M TOLD BY SOMEBODY WHO

13:41:45   8    KNOWS THE PATENT THAT WE DON'T THINK THERE IS.

13:41:48   9              THE COURT:  THERE'S NO SUPPORT OTHER THAN

13:41:49  10    THE PROXIMITY IMAGE?

13:41:51  11              MR. VERHOEVEN:  IS THAT RIGHT?  COULD I

13:41:53  12    HAVE MR. WHITEHURST COME UP?

13:41:55  13              THE COURT:  YES, PLEASE.

13:42:00  14              MR. WHITEHURST:  WE BELIEVE PIXEL AS USED

13:42:02  15    IN THE PATENT IS REFERRING TO PART OF THE PROXIMITY

13:42:04  16    IMAGE.

13:42:05  17              THE COURT:  OKAY.

13:42:08  18              MR. WHITEHURST:  THAT'S WHY WE HAD

13:42:09  19    PROPOSED A COMPROMISE, "SMALLEST DISCERNIBLE PART

13:42:13  20    OF THE PROXIMITY IMAGE."

13:42:15  21              I THINK WE'RE TRYING TO REACH THE SAME

13:42:17  22    DEFINITION FROM TWO DIFFERENT DIRECTIONS.

13:42:19  23              I DON'T KNOW THAT THERE'S A REAL DISPUTE

13:42:22  24    HERE.

13:42:22  25              APPLE'S PROPOSED CONSTRUCTION IS NOW

                                                          122

13:42:25 1    TALKING ABOUT ELECTRODES.

13:42:26 2              IF YOU LOOK AT THE FIGURES OF THE PATENT,

13:42:29 3    WHAT IS MEASURED AT THE ELECTRODES WE BELIEVE IS

13:42:31 4    THE SMALLEST DISCERNIBLE PART OF THE IMAGE.

13:42:34 5              I'M NOT SURE THERE'S A REAL DISPUTE HERE.

13:42:38 6    GIVEN THE CHOICE BETWEEN THE TWO CONSTRUCTIONS, WE

13:42:41 7    THINK OURS IS MORE ACCURATE AND MORE PRECISE AND

13:42:43 8    WILL SERVE THE COURT BETTER DOWN THE ROAD, BUT WE

13:42:45 9    DON'T FEEL STRONGLY ONE WAY OR THE OTHER, YOUR

13:42:49 10   HONOR.

13:42:49 11             THE COURT:  ALL RIGHT.  BECAUSE I WAS

13:42:50 12   THINKING GOING WITH PORTION OF PROXIMITY IMAGE THAT

13:42:54 13   INDICATES THE PROXIMITY DATA MEASURED AT ONE

13:42:57 14   ELECTRODE.

13:42:57 15             SO YOU'RE FINE WITH THAT?

13:43:01 16             MR. WHITEHURST:  WE'D LIKE TO CHECK WITH

13:43:02 17   OUR CLIENT.  IF WE CAN CHECK WITH OUR CLIENT, YOUR

13:43:05 18   HONOR.

13:43:05 19             THE DEFINITION THAT YOU'RE CONSIDERING?

13:43:07 20             THE COURT:  IT'S BASICALLY ADOPTING

13:43:09 21   APPLE'S CONSTRUCTION ON THIS ONE.

13:43:16 22             MR. VERHOEVEN:  WELL, YOUR HONOR, WHAT WE

13:43:18 23   WOULD PROPOSE IS THE DEFINITION THAT YOU PROPOSED

13:43:20 24   AT THE OUTSET, IN FACT, WE DID PROPOSE THAT

13:43:23 25   DEFINITION DURING OUR MEET AND CONFER, WHICH WAS

                                                      123

13:43:26  1    THE SMALLEST DISCERNIBLE -- EXCUSE ME.  LET ME

13:43:29  2    START OVER.

13:43:29  3            "THE SMALLEST DISCERNIBLE PART OF A

13:43:31  4    PROXIMITY IMAGE," I THINK THAT THAT'S MORE

13:43:36  5    ACCURATE.

13:43:37  6            THE COURT:  NO.  WHAT YOU ORIGINALLY

13:43:39  7    PROPOSED WAS JUST "SMALLEST DISCERNIBLE PART OF AN

13:43:42  8    IMAGE," AND I DON'T WANT THIS GETTING INTO CAMERAS

13:43:45  9    AND SCREENS AND OTHER THINGS BECAUSE I DON'T THINK

13:43:47 10    THAT THAT'S WHAT THE INVENTORS MEANT HERE.

13:43:51 11            MR. WHITEHURST:  AND THAT'S WHY WE SINCE

13:43:52 12    CLARIFIED IT AND OFFERED IT AS A COMPROMISE,

13:43:55 13    "SMALLEST DISCERNIBLE PART OF THE PROXIMITY IMAGE,"

13:43:57 14    HOPEFULLY ADDRESSING YOUR CONCERN, YOUR HONOR, AND

13:43:59 15    TYING IT BACK TO THE PROXIMITY DATA.

13:44:03 16            BUT I DON'T BELIEVE YOU NEED TO INTERJECT

13:44:05 17    THE ADDITIONAL AMBIGUITY OF MEASURED AT ONE OF THE

13:44:10 18    ELECTRODES AND SOME OF THE LANGUAGE THAT IS

13:44:12 19    CURRENTLY IN APPLE'S PROPOSED CONSTRUCTION.

13:44:15 20            WE BELIEVE THAT BY TYING IT BACK TO THE

13:44:18 21    PROXIMITY IMAGE THAT'S THE MOST ACCURATE AND

13:44:20 22    SUFFICIENT FOR ADDRESSING YOUR HONOR'S CONCERN.

13:44:22 23            THE COURT:  ALL RIGHT.  WELL, THANK YOU.

13:44:24 24    I THINK I HAVE HEARD ENOUGH ON THIS ONE.

13:44:26 25            CAN WE GO TO FITTING AN ELLIPSE BECAUSE

                                                      124

THAT ONE IS PRETTY COMPLICATED.

MR. JACOBS:  IT CAN BE COMPLICATED, YOUR HONOR, BUT I THINK IT MAY HAVE GOTTEN A LITTLE OVERCOMPLICATED.

AND THE REASON I SAY THAT AS WE RETURN TO MY THEMES, ONE, THE STRUCTURE OF THE CLAIMS; AND, TWO, THE LANGUAGE OF THE SPECIFICATION IN WHICH THE PORTION THAT SAMSUNG RELIES ON SO HEAVILY.

THE HEADING, YOUR HONOR, IN THE SECTION IN WHICH THE LANGUAGE APPLYING WOULD BE UNITARY TRANSFORMATION OF THE GROUP COVARIANCE MATRIX OF SECOND MOMENTS OF PROXIMITY DATA FOR ALL PIXELS IN THAT PIXEL GROUP TO FIT AN ELLIPSE.

SAMSUNG'S PROPOSED DEFINITION, THE SOURCE OF THAT DEFINITION IS FOUND IN A DESCRIPTION OF THE PREFERRED EMBODIMENT.

AND SO WE'RE IN THAT TERRITORY, YOUR HONOR, WHERE THE DECISIONAL LAW ON CLAIM CONSTRUCTION GUIDES US POWERFULLY AGAINST TOYING WITH THE CLAIM LANGUAGE AND READING LIMITATIONS INTO THE CLAIM.

"MATHEMATICALLY FITTING AN ELLIPSE" IS A CONCEPT THAT THROUGH THE TUTORIAL I THINK SOME CLARITY WAS GAINED ABOUT WHAT THE MEANING OF "MATHEMATICALLY FITTING AN ELLIPSE" IS AND THAT

125

13:45:54 1    IT'S NOT A PARTICULARLY MATHEMATICALLY TECHNIQUE

13:45:58 2    FOR FITTING AN ELLIPSE.

13:46:00 3            SO I THINK AS A MATTER OF CLAIM

13:46:04 4    CONSTRUCTION LAW THAT IF YOU WROTE AN OPINION THAT

13:46:06 5    SAID, THE LANGUAGE THAT SAMSUNG FOUND IS IN THE

13:46:08 6    SECTION CALLED THE DESCRIPTION OF THE PREFERRED

13:46:10 7    EMBODIMENT, AND THIS IS A SINGLE EMBODIMENT BEING

13:46:14 8    DISCLOSED AND I'M NOT GOING TO READ THE LIMITATION

13:46:17 9    INTO THE CLAIM AND CITE THE RELEVANT FEDERAL CASES,

13:46:20 10   IT'S UNASSAILABLE.

13:46:22 11           BY CONTRAST, IF IT'S READ INTO THE CLAIM,

13:46:25 12   THIS VERY NARROW, VERY PARTICULAR FORMULA, JUST

13:46:28 13   BECAUSE THE WORD "REQUIRED" APPEARED IN THAT

13:46:31 14   PARTICULAR FLOW OF THE TEXT, THEN I THINK WE'RE

13:46:35 15   VIOLATING THE BASIC CANONS OF CLAIM CONSTRUCTION.

13:46:38 16           NOW, HAVING SAID THAT AS THE -- THAT

13:46:41 17   SIMPLIFIES IT.  THAT'S IN A WAY ALL YOU NEED TO DO.

13:46:44 18           LET'S GO TO ONE ADDITIONAL -- IT'S NOT

13:46:48 19   REALLY A COMPLICATION, IT'S A REINFORCEMENT, WHICH

13:46:52 20   IS THAT IN THIS PATENT -- I'M ON SLIDE 57 NOW --

13:46:55 21   THERE ARE MANY PLACES IN WHICH THE SPECIFICATION

13:46:58 22   WAS DEFINITIONAL.

13:46:59 23           WE CITED FROM COLUMNS 14, LINES 22

13:47:02 24   THROUGH 35 IN THIS SLIDE WHERE TERMS LIKE

13:47:06 25   PROXIMITY, HORIZONTAL, VERTICAL, INNER, OUTER,

126

CONTACT ARE DEFINED EXPLICITLY.

SO WE SEE THIS AS A SPECIFICATION WHERE WHEN THE DRAFTSMAN INTENDED TO BE DEFINITIONAL, HE WAS DEFINITIONAL; WHEN HE WAS INTENDING TO DESCRIBE THE SPECIFIC EMBODIMENT, HE DISCLOSED THE SPECIFIC EMBODIMENT.

LET'S GO ONE LEVEL DOWN IN TERMS OF OUR KNOWLEDGE OF ELLIPSE FITTING.

WE POINTED OUT AND I BELIEVE THERE WAS AGREEMENT AT THE TUTORIAL THAT ELLIPSE FITTING IS A CONCEPT THAT PREDATES THIS PATENT.

THE INVENTION HERE IS NOT THE MATHEMATICAL FORMULA FOR ELLIPSE FITTING.

THE INVENTION HERE IS A POWERFUL PATENT, IT'S A POWERFUL INVENTION.  IT'S ALL ABOUT THIS CHALLENGE OF DETECTING THESE FINGERS ON A TOUCHSCREEN AND ENABLING SOMETHING LIKE THE IPHONE.

THAT'S THE INVENTION.

ELLIPSE FITTING ITSELF WAS KNOWN IN THE ART, AND THERE WERE VARIOUS METHODS OF DOING IT.

WE CITED SAMSUNG'S PRIOR ART FOR THAT PROPOSITION, ELLIPSE FITTING IS A CONCEPT, IT'S AN APPROACH TO GETTING AN ELLIPSE TO FIT AROUND A GROUP.

AND SO WE CITED THEIR MACHINE VISION ART,

127

13:48:19 1    WE CITED SOME PATENTS IN WHICH ELLIPSE FITTING IS

13:48:23 2    DISCLOSED, AND SAMSUNG DID THE SAME THING.

13:48:28 3         IN ITS TUTORIAL SAMSUNG DESCRIBED VARIOUS

13:48:31 4    APPROACHES TO "FITTING AN ELLIPSE."

13:48:39 5         SO WE ENCOUNTER CLAIM LANGUAGE

13:48:42 6    "MATHEMATICALLY FITTING AN ELLIPSE," AND WE ASK

13:48:44 7    OURSELVES IS THAT UNDERSTOOD TO A MATHEMATICIAN OR

13:48:44 8    TO SOMEONE SKILLED IN THIS AREA?

13:48:49 9         ELLIPSE FITTING?  WE KNOW WHAT THAT IS

13:48:49 10   AND WE CAN GO TO TEXTBOOKS AND WE CAN FIND OUT HOW

13:48:53 11   TO FIT AN ELLIPSE.  AND IS THERE ANY REASON TO

13:48:55 12   NARROW THE PLAIN LANGUAGE OF THE CLAIM HERE?  AND

13:48:59 13   THE ANSWER IS NO.

13:49:00 14        NOW, WE LOOK AT SAMSUNG'S PROPOSED

13:49:03 15   DEFINITION, AND I'M ON SLIDE 62, AND WE ASK

13:49:06 16   OURSELVES DOES UNITARY TRANSFORMATION OF GROUP

13:49:10 17   COVARIANCE MATRIX OF SECOND MOMENTS ACTUALLY

13:49:14 18   CALCULATE AN ELLIPSE?

13:49:15 19        BECAUSE SAMSUNG'S PROPOSED DEFINITION OF

13:49:18 20   "MATHEMATICALLY FITTING AN ELLIPSE" IS -- THEY WANT

13:49:24 21   THE JURY TO BE TOLD THIS -- FOR AT LEAST ONE OF THE

13:49:27 22   PIXEL GROUPS APPLYING A UNITARY TRANSFORMATION OF

13:49:31 23   THE GROUP COVARIANCE MATRIX OF SECOND MOMENTS OF

13:49:31 24   PROXIMITY DATA FOR ALL PIXELS IN THAT PIXEL GROUP

13:49:35 25   TO FIT AN ELLIPSE.

13:49:37   1          THAT IS WHAT THEY SAY MATHEMATICALLY

13:49:39   2    FITTING AN ELLIPSE IS.  NOW, WE KNOW THAT ALREADY,

13:49:42   3    WE KNOW THAT IS NOT TRUE.  WE KNOW "MATHEMATICALLY

13:49:44   4    FITTING AN ELLIPSE" IS A BROADER CONCEPT.

13:49:47   5          BUT WE ALSO KNOW THAT UNITARY

13:49:50   6    TRANSFORMATION OF GROUP COVARIANCE MATRIX OF SECOND

13:49:53   7    MOMENTS DOES NOT FIT AN ELLIPSE.  IT'S KIND OF A

13:49:56   8    SET-UP STEP.  IT'S A STEP IN THE FLOW OF PROCESSING

13:50:01   9    THAT IS DESCRIBED IN THE PATENT.  AFTER YOU FIND

13:50:03  10    SOME OF THE PARAMETERS AND BEFORE YOU FIND SOME

13:50:05  11    OTHER PARAMETERS.

13:50:07  12          HOW DO WE KNOW THAT THAT'S TRUE?  I THINK

13:50:09  13    WE KNOW IT FROM THE TUTORIALS AND WE ALSO KNOW IT

13:50:12  14    BECAUSE AS ILLUSTRATED ON SLIDE 63, WE SAID IT IN

13:50:18  15    OUR BRIEF AND SAMSUNG DID NOT RESPOND TO IT.

13:50:22  16          THE COURT:  WHAT IF WE USE SAMSUNG'S

13:50:25  17    CONSTRUCTION BUT AT THE END JUST ADDED -- LET'S

13:50:33  18    READ THE WHOLE THING.

13:50:34  19          "AT LEAST ONE OF THE PIXEL GROUPS

13:50:36  20    APPLYING A UNITARY TRANSFORMATION OF THE GROUP

13:50:40  21    COVARIANCE MATRIX OF SECOND MOMENTS OF PROXIMITY

13:50:42  22    DATA FOR ALL PIXELS IN THAT PIXEL GROUP AS PART OF

13:50:48  23    MATHEMATICALLY FITTING AN ELLIPSE TO THAT PIXEL

13:50:50  24    GROUP."

13:50:50  25          THEY'RE NOT SAYING THAT THAT IS THE

                                                          129

13:50:53  1    MATHEMATICAL FITTING BUT THAT IS JUST PART OF IT.

13:50:55  2    BECAUSE YOU YOURSELF SAID IT IS ONE OF THE SET

13:50:59  3    TERMS WHICH YOU CAN MATHEMATICALLY FIT AN ELLIPSE.

13:51:02  4             MR. JACOBS:  THAT WOULD ADDRESS THE

13:51:03  5    TECHNICAL POINT I HAVE JUST MADE.

13:51:05  6             THE COURT:  OKAY.

13:51:06  7             MR. JACOBS:  IT WOULD NOT ADDRESS THE

13:51:07  8    PROBLEM THAT WE'RE READING IN FROM THE PREFERRED

13:51:12  9    EMBODIMENT, A VERY NARROWING LIMITATION INTO THE

13:51:15 10    CLAIM.

13:51:15 11             ALL IT WOULD DO IS ADDRESS MY ARGUMENT

13:51:17 12    THAT THIS UNITARY TRANSFORMATION DOES NOT

13:51:25 13    NECESSARILY ITSELF FIT AN ELLIPSE.

13:51:26 14             THE COURT:  OKAY.  WELL, I AGREE WITH YOU

13:51:28 15    ON THAT.  BUT YOU'RE GOING TO HAVE TO CONVINCE ME

13:51:31 16    OTHERWISE THAT IT'S NOT REQUIRED AS PART OF THE

13:51:34 17    "MATHEMATICAL FITTING OF AN ELLIPSE."

13:51:39 18             MR. JACOBS:  WELL, IN ORDER FOR YOU TO

13:51:41 19    REACH THAT CONCLUSION, THE COURT WOULD HAVE TO

13:51:43 20    CONCLUDE THAT IN THE FIRST EMBODIMENT, THE PATENTEE

13:51:46 21    WAS BEING DEFINITIONAL ABOUT "MATHEMATICALLY

13:51:48 22    FITTING AN ELLIPSE" RATHER THAN MERELY SAYING IN

13:51:51 23    THIS PARTICULAR APPROACH TO ELLIPSE FITTING THAT

13:51:54 24    I'M ELABORATING HERE, ONE OF THE THINGS THAT YOU

13:51:57 25    HAVE TO DO IS THIS COVARIANCE MATRIX TRANSFORMATION

                                                        130

13:52:04  1       PROCESS, WHICH IS ALL THAT THE APPLICANT, I SUBMIT,

13:52:08  2   ALL THE APPLICANT WAS SAYING THERE.

13:52:10  3           HE WAS NOT SAYING IN THIS -- THERE'S --

13:52:12  4   NONE OF THE LANGUAGE THAT YOU SEE SUCH AS IN THE

13:52:16  5   ELLIPSE FITTING OF THE INVENTION, THIS IS HOW YOU

13:52:18  6   DO IT.  IT DOESN'T SAY OF THE INVENTION.

13:52:20  7           IT'S SIMPLY A PART OF THE FLOW OF THIS

13:52:22  8   EMBODIMENT.

13:52:23  9           AND SO TO READ THAT EMBODIMENT, WHAT YOU

13:52:28  10  NECESSARILY WOULD BE DOING IS READING THE WHOLE

13:52:30  11  EMBODIMENT IN BECAUSE THE LANGUAGE REQUIRES, IT'S

13:52:33  12  JUST PART OF THE EMBODIMENT.

13:52:35  13          THERE'S NO REASON TO SINGLE OUT THAT

13:52:36  14  LANGUAGE MERELY BECAUSE IN THE DESCRIPTION OF THE

13:52:39  15  EMBODIMENT, THIS PARTICULAR STEP WAS INDICATED AS

13:52:43  16  REQUIRED.

13:52:48  17          THE COURT:  SO YOU'RE SAYING EMBODIMENTS

13:52:50  18  DON'T HAVE TO MATHEMATICALLY FIT AN ELLIPSE?  IS

13:52:53  19  THAT WHAT YOU'RE SAYING?

13:52:55  20          MR. JACOBS:  I'M SAYING THAT THERE ARE

13:53:00  21  MANY WAYS TO MATHEMATICALLY FIT AN ELLIPSE.

13:53:03  22          THE COURT:  I'M OKAY WITH THAT.

13:53:05  23          MR. JACOBS:  THE PATENTEE DESCRIBES, AS

13:53:07  24  IT HAPPENS, TWO WAYS TO MATHEMATICALLY FIT AN

13:53:09  25  ELLIPSE.  WE HAVEN'T GOTTEN TO THE SECOND

131

13:53:11 1   EMBODIMENT.  I KNOW THERE IS A DISPUTE AS TO WHAT

13:53:13 2   IS GOING ON THERE.  BUT OUR VIEW IS THAT THE

13:53:16 3   PATENTEE DESCRIBED TWO OUT OF THE MANY.

13:53:18 4            THE QUESTION IS DO YOU READ THE TWO OUT

13:53:20 5   OF THE MANY INTO THE CLAIM LANGUAGE?  AND WE'RE IN

13:53:23 6   THAT AREA WHERE IF THE COURT DOES THAT, IT'S

13:53:25 7   VIOLATING THE BASIC PRINCIPLES OF CLAIM

13:53:27 8   CONSTRUCTION THAT YOU DON'T READ A PREFERRED

13:53:29 9   EMBODIMENT INTO THE CLAIM LANGUAGE.

13:53:32 10           THE COURT:  WELL, SO ARE YOU SAYING YES

13:53:33 11  OR NO, DOES AN EMBODIMENT HAVE TO MATHEMATICALLY

13:53:36 12  FIT AN ELLIPSE?

13:53:39 13           MR. JACOBS:  I THINK I'M CONFUSED ABOUT

13:53:40 14  WHEN YOU SAY "AN EMBODIMENT"?  WHEN YOU SAY AN

13:53:45 15  INFRINGING DEVICE?

13:53:46 16           THE COURT:  DOES THE PATENT REQUIRE THE

13:53:48 17  "MATHEMATICAL FITTING OF AN ELLIPSE"?

13:53:50 18           MR. JACOBS:  OH, YES, THE CLAIMS WE'RE

13:53:52 19  LOOKING AT REQUIRE "MATHEMATICALLY FITTING AN

13:53:55 20  ELLIPSE."

13:53:56 21           THE COURT:  SO WHERE IS THAT IN COLUMN

13:53:58 22  27?  WHERE IS THAT HAPPENING IN COLUMN 27.

13:54:00 23           MR. JACOBS:  IN COLUMN 27, THAT'S THE

13:54:02 24  SECOND EMBODIMENT?

13:54:03 25           THE COURT:  YES.  WHERE IS THE

                                                        132

13:54:05  1    "MATHEMATICALLY FITTING THE ELLIPSE" THERE?

13:54:09  2              MR. JACOBS:  SO WHAT HAPPENS IN COLUMN 27

13:54:11  3    IS THAT THE FIRST FEW STEPS OF COLUMN 26 HAD BEEN

13:54:20  4    PERFORMED -- LET ME -- I THINK THIS IS PROBABLY THE

13:54:25  5    EASIEST WAY TO SEE IT, YOUR HONOR.  SO THE FIRST

13:54:28  6    THREE STEPS OF COLUMN 26 HAVE BEEN PERFORMED.

13:54:30  7              AND THEN IN COLUMN 27, SO WE HAVE GOT

13:54:32  8    THOSE G VALUES, AND ON LOW RESOLUTION ELECTRODE

13:54:37  9    ARRAYS, THE TOTAL GROUP PROXIMITY GZ IS A MORE

13:54:40 10    RELIABLE INDICATOR OF CONTEXT SIZE AS WELL AS

13:54:44 11    FINGER PRESSURE THAN THE FITTED ELLIPSE PARAMETERS.

13:54:47 12              THE COURT:  WELL, I DISAGREE WITH YOU

13:54:49 13    THAT EVERYTHING IN 26 HAPPENS IN 27.

13:54:53 14              MR. JACOBS:  AND THAT'S NOT WHAT I SAID.

13:54:55 15              THE COURT:  THEN WHAT DID YOU SAY THEN?

13:54:57 16              MR. JACOBS:  SO IF WE LOOK AT THE SLIDE

13:54:59 17    69.

13:54:59 18              THE COURT:  OKAY.

13:55:00 19              MR. JACOBS:  WE HAVE PUT BRACES AROUND

13:55:02 20    LINE -- THE FIRST -- THE G STEPS ABOVE THE TEXT

13:55:07 21    NOTE THAT.

13:55:08 22              THE COURT:  OKAY.

13:55:10 23              MR. JACOBS:  AND THAT'S COMPUTE SIZE AND

13:55:13 24    CENTROID.

13:55:13 25              THE COURT:  OKAY.

                                                        133

13:55:15  1          MR. JACOBS:  AND THOSE STEPS HAVE BEEN

13:55:16  2    PERFORMED.  THE SIZE AND THE CENTROID HAVE BEEN

13:55:19  3    PERFORMED.

13:55:19  4          AND NOW AT COLUMN 27 WE'RE GOING TO SORT

13:55:24  5    OF BRANCH OFF AT THAT POSITION, AND INSTEAD OF

13:55:27  6    GOING AND DOING MORE ELLIPSE FITTING, INCLUDING THE

13:55:29  7    UNITARY TRANSFORMATION OF COVARIANCE MATRIX,

13:55:33  8    INSTEAD OF DOING THOSE ADDITIONAL STEPS, WE'RE

13:55:36  9    GOING TO TAKE GROUP PROXIMITY GZ AS AN INDICATOR OF

13:55:47 10    CONTEXT SIZE AS WELL AS FINGER PRESSURE, AND WE'RE

13:55:51 11    GOING TO SET ORIENTATION AND ECCENTRICITY OF SMALL

13:55:58 12    CONTEXT TO DEFAULT VALUES RATHER THAN THEIR

13:56:00 13    MEASURED VALUES AND TOTAL GROUP PROXIMITY GZ AS

13:56:05 14    USED AS THE PRIMARY MEASURE OF CONTACT SIZE INSTEAD

13:56:09 15    OF MAJOR AND MINOR AXIS LENGTHS.

13:56:12 16          SO WHAT THIS IS SAYING IS THAT ONCE YOU

13:56:14 17    HAVE CALCULATED THE G VALUES AT THE TOP OF COLUMN

13:56:17 18    26, WHEN WE'RE DEALING WITH SMALL GROUPS OF PIXELS,

13:56:21 19    IT TURNS OUT THAT IT'S GOING TO BE MORE ACCURATE IN

13:56:25 20    COMING UP WITH PARAMETERS IF WE USE THOSE VALUES

13:56:27 21    AND SOME DEFAULTS THAN IF WE GO THROUGH ALL OF THE

13:56:31 22    CALCULATIONS OF UNITARY TRANSFORMATION OF

13:56:34 23    COVARIANCE MATRIX IN AN ACTUAL COMPUTATION AS

13:56:37 24    OPPOSED TO DEFAULT VALUES FOR MAJOR AND MINOR AXIS

13:56:42 25    LENGTHS.

                                                        134

13:56:46  1          SO WE HAVE TWO WAYS TO FIT AN ELLIPSE:

13:56:48  2     ONE FOR LARGER GROUPS.  WE'RE GOING TO GO THROUGH

13:56:52  3     THE WHOLE COLUMN OF 26.  AND THE SECOND FOR SMALLER

13:56:54  4     GROUPS WE'RE GOING TO START IN THE TOP OF COLUMN

13:56:57  5     26, GO THROUGH THOSE STEPS AND THEN BRANCH OFF, OH,

13:57:00  6     I REALIZE THIS IS TOO SMALL.  IF I RUN

13:57:03  7     CALCULATIONS, IT'S NOT GOING TO BE VERY GOOD HIGH

13:57:06  8     QUALITY ELLIPSE FITTING AND I MAY HAVE TO USE

13:57:09  9     HIGHER VALUES.

13:57:10 10          AND THAT'S WHAT WE THINK THE TESTIMONY

13:57:12 11     WAS SHOWING AND IT WAS DESCRIBED IN THE VARIOUS

13:57:14 12     PROCEEDINGS THAT YOU HAVE IN FRONT OF YOU AND WE

13:57:16 13     THINK THAT'S THE RIGHT WAY TO READ THE

13:57:18 14     SPECIFICATION AND WE THINK THAT'S CONSISTENT WITH

13:57:19 15     THE TUTORIAL THAT YOU RECEIVED THE OTHER DAY.

13:57:21 16          THE COURT:  SO FROM YOUR VIEWPOINT

13:57:24 17     COMPUTING THE SIZE OF THE CENTROID THAN USING THOSE

13:57:28 18     DEFAULT VALUES THAT IS FITTING AN ELLIPSE?  THAT'S

13:57:33 19     THE MATHEMATICALLY FITTING AN ELLIPSE?

13:57:37 20          MR. JACOBS:  I THINK I WOULD SAY IT

13:57:39 21     SLIGHTLY DIFFERENTLY.  IN THE DEFAULT CASE, IN THE

13:57:41 22     COLUMN 27 CASE, WE DO THOSE CALCULATIONS AND THEN

13:57:45 23     WE WOULD MAKE ANOTHER DECISION ABOUT WHETHER WE'RE

13:57:49 24     LOOKING AT LARGE OR SMALL GROUPS.

13:57:50 25          AND IF WE'RE LOOKING AT SMALL GROUPS, WE

                                                             135

13:57:52   1    SET THE REMAINING PARAMETERS TO THEIR DEFAULT

13:57:57   2    VALUES THAT HAVE BEEN SET BY THE SYSTEM.

13:58:00   3             AND THEN WHEN YOU HAVE THOSE PARAMETERS,

13:58:02   4    YOU HAVE FITTED AN ELLIPSE BECAUSE I THINK

13:58:05   5    MATHEMATICALLY FITTING AN ELLIPSE IS DETERMINING

13:58:08   6    THE PARAMETERS ASSOCIATED WITH A FITTED ELLIPSE.

13:58:12   7             AND WE HAVE DONE THAT IN TWO WAYS IN THIS

13:58:14   8    SPECIFICATION.

13:58:25   9             THE COURT:  ON TUESDAY DR. BALAKRISHNAN

13:58:26  10    TALKED ABOUT THIS PRINCIPAL COMPONENT ANALYSIS.

13:58:38  11             TELL ME WHAT THAT IS AND HOW IT

13:58:40  12    MATHEMATICALLY RELATES TO FITTING AN ELLIPSE.

13:58:44  13             MR. JACOBS:  YOUR HONOR, I PLANNED AHEAD,

13:58:46  14    AND DR. BALAKRISHNAN IS HERE IN CASE THIS COMES UP.

13:58:52  15             LET ME TRY THIS OUT AND I'LL TURN AROUND

13:58:52  16    AND SEE IF I'VE GOT IT RIGHT.

13:58:52  17             PRINCIPAL COMPONENT ANALYSIS IS A RUBRIC

13:58:54  18    FOR A SET OF TECHNIQUES FOR UNDERSTANDING DATA AND

13:58:58  19    ASSOCIATING IT WITH SOME PARAMETERS AND THEN

13:59:02  20    CREATING A, IN THIS CASE CREATING AN ELLIPSE AROUND

13:59:08  21    THE DATA SO THAT YOU CAN MANIPULATE THE

13:59:10  22    MATHEMATICAL PARAMETERS AND THE ELLIPSE -- THE

13:59:14  23    FITTED ELLIPSE, YOU'RE MANIPULATING THE ELLIPSE

13:59:16  24    THAT CIRCUMSCRIBE AS THIS GROUP OF DATA RATHER THAN

13:59:19  25    MANIPULATING THE DATA DIRECTLY.

136

13:59:20  1            AND THAT'S THE POINT OF PRINCIPAL

13:59:22  2      COMPONENT ANALYSIS.

13:59:23  3            AND CLOSE ENOUGH?

13:59:38  4            JUST GIVE ME ONE SECOND, YOUR HONOR.

13:59:52  5            (PAUSE IN PROCEEDINGS.)

13:59:52  6            MR. JACOBS:  I WAS THANKFULLY

13:59:53  7      SUPPLEMENTED AND NOT CORRECTED, YOUR HONOR, THAT

13:59:55  8      COLUMN 26 IS ILLUSTRATING PRINCIPAL COMPONENT

13:59:59  9      ANALYSIS.

13:59:59 10            THE COURT:  THE WHOLE THING?

14:00:02 11            MR. JACOBS:  YES, I BELIEVE SO.

14:00:03 12            THE COURT:  ALL FOUR BATCHES OF EQUATION.

14:00:05 13            MR. JACOBS:  I THINK THE PCA MAY BE

14:00:08 14      PROPERLY FOCUSSED AROUND THE UNITARY TRANSFORMATION

14:00:12 15      OF THE COVARIANCE MATRIX STEPS AND THE COMPUTATION

14:00:17 16      OF THE MAJOR AXIS AND MINOR AXIS AND ORIENTATION.

14:00:22 17            THE COURT:  SO IT'S EQUATION 15 THROUGH

14:00:22 18      21?

14:00:22 19            MR. JACOBS:  YES.

14:00:34 20            THE COURT:  SO DOES IT ALWAYS REQUIRE A

14:00:35 21      UNITARY TRANSFORMATION OF COVARIANCE MATRIX?

14:00:38 22            MR. JACOBS:  DOES PRINCIPAL COMPONENT

14:00:41 23      ANALYSIS ALWAYS REQUIRE?

14:00:43 24            THE COURT:  YES.

14:00:44 25            MR. JACOBS:  YES.  YOUR HONOR, I'D LIKE

                                                              137

14:01:03   1       TO FOCUS ON ONE OTHER ASPECT OF THE SPECIFICATION

14:01:07   2       TO REINFORCE THE BASIC POINT I'M MAKING, THAT WOULD

14:01:19   3       VIOLATE BASIC PRINCIPLES OF CLAIM CONSTRUCTION

14:01:22   4       BECAUSE IF YOU LOOK AT THE STRUCTURE OF THE CLAIMS

14:01:24   5       AND YOU LOOK AT CLAIM 5 YOU'LL SEE THAT IT IS "THE

14:01:30   6       METHOD OF CLAIM 1 WHEREIN FITTING AN ELLIPSE TO A

14:01:33   7       GROUP OF PIXELS COMPRISES COMPUTING ONE OR MORE

14:01:37   8       EIGENVALUES AND ONE OR MORE EIGENVECTORS OF A

14:01:41   9       COVARIANCE MATRIX ASSOCIATED WITH A PIXEL GROUP."

14:01:45  10            SO IN CLAIM 5 WE ACTUALLY SEE THE

14:01:47  11       COVARIANCE MATRIX DELINEATED AND WE SEE EIGENVALUES

14:01:50  12       AND EIGENVECTORS REFERRED TO.

14:01:52  13            NOW, IF WE THEN GO A LITTLE BIT FURTHER

14:01:54  14       INTO THE CLAIMS, WE SEE CLAIM 6 DEPENDING FROM

14:01:57  15       CLAIM 1, IT'S TALKING ABOUT A PATH OF PIXEL GROUPS

14:02:01  16       WITHOUT THE REFERENCE TO THE COVARIANCE MATRIX OR

14:02:10  17       THE EIGENVALUES AND EIGENVECTORS AND THEN CLAIM 9

14:02:16  18       DEPENDS ON CLAIM 6 AND NOW WE'RE GOING TO COMPUTE

14:02:20  19       ONE OR MORE EIGENVALUES OR EIGENVECTORS ASSOCIATED

14:02:24  20       WITH THE PIXEL GROUP.

14:02:25  21            AND IF WE GO BACK TO COLUMN 26 WE CAN SEE

14:02:29  22       A REFERENCE TO EIGENVALUES RIGHT AFTER THE

14:02:32  23       COVARIANCE MATRIX STEP, AND WE CAN SEE THAT THE

14:02:35  24       COVARIANCE MATRIX IS BEING REFERRED TO IN THOSE

14:02:41  25       CLAIMS, AND WE SEE THE REFERENCE TO EIGENVALUES

138

THAT ARE BEING REFERRED TO OR ILLUSTRATED IN THIS
EMBODIMENT FOR THOSE CLAIMS.

THE ONLY THING WE DON'T SEE IS THE WORD
EIGENVECTORS BUT EIGENVECTORS AND EIGENVALUES, ANY
MATH TREATISE WILL TELL YOU THEY GO TOGETHER.  YOU
CAN'T CALCULATE AN EIGENVALUE WITHOUT AN
EIGENVECTOR.

SO ONE SHOULDN'T TARRY LONG WHEN ONE
OBSERVES THAT EIGENVECTORS IS NOT EXPLICITLY
DISCLOSED IN COLUMN 26.  BECAUSE EIGENVALUES AND
EIGENVECTORS GO TOGETHER, THE REFERENCE TO
EIGENVALUES AND EIGENVECTORS ARE SUPPORTED BY
COLUMN 26 AS IS THE, OF COURSE, THE COVARIANCE
MATRIX THAT IS DESCRIBED IN THOSE CLAIMS.

THE COURT:  WHAT AM I SUPPOSED TO DO WITH
COLUMN 26, LINES 18 THROUGH 21 THAT SAY THE ELLIPSE
FITTING PROCEDURES REQUIRES A UNITARY
TRANSFORMATION OF THE GROUP COVARIANCE MATRIX?

MR. JACOBS:  I THINK HERE IS THE LEGAL
QUESTION IN A NUTSHELL, IS THAT THE ELLIPSE FITTING
PROCEDURE OF THE INVENTION OR IS THAT THE ELLIPSE
FITTING PROCEDURE OF THIS EMBODIMENT?

AND BECAUSE THIS IS AN EMBODIMENT BEING
DISCUSSED IN A PORTION OF THE SPECIFICATION THAT IS
LABELLED DESCRIPTION OF THE PREFERRED EMBODIMENTS,

139

14:04:05 1    THE ANSWER TO THE CLAIM CONSTRUCTION ISSUE HERE IS

14:04:10 2    TO US PLAIN.  THE PROPER WAY TO READ THAT LANGUAGE

14:04:13 3    IS THE ELLIPSE FITTING PROCEDURE OF THIS COLUMN 26

14:04:19 4    EMBODIMENT REQUIRES A UNITARY TRANSFORMATION, AND,

14:04:24 5    THEREFORE, THIS REQUIRED LANGUAGE IS IN NO WAY TO

14:04:28 6    BE READ AS A LIMITATION ON THE SCOPE OF

14:04:32 7    MATHEMATICALLY FITTING AN ELLIPSE AS CLAIMED IN

14:04:35 8    CLAIM 1.

14:04:48 9          YOUR HONOR, IN ALL LINES, WE'RE DOING A

14:04:51 10   BEST FIT HERE.  WE HAVE CLAIM LANGUAGE AND WE

14:04:54 11   UNDERSTAND THE BREADTH OF THE CLAIM LANGUAGE ON ITS

14:04:56 12   OWN.

14:04:57 13         WE'RE NOT SUPPOSED TO BE IN THE BUSINESS

14:04:59 14   OF IMPORTING LIMITATION INTO THE CLAIMS.  THE

14:05:01 15   FEDERAL CIRCUIT HAS TOLD US THAT OVER AND OVER

14:05:03 16   AGAIN.

14:05:04 17         AND UNLESS THERE'S REALLY GOOD REASON AND

14:05:06 18   UNLESS THERE IS LANGUAGE LIKE "THE INVENTION

14:05:07 19   COMPRISES" OR A SUMMARY OF THE INVENTION SOMETIMES,

14:05:10 20   THAT'S LANGUAGE -- THAT'S STRONG ENOUGH TO TRUMP A

14:05:15 21   CLAIM LANGUAGE READING.  SOMETIMES THAT'S TRUMPED

14:05:22 22   INTO THE CLAIMS.

14:05:22 23         BUT HERE WE HAVE CLAIM LANGUAGE THAT IS

14:05:28 24   CLEAR TO A PERSON OF ORDINARY SKILL IN THE ART; WE

14:05:29 25   HAVE EMBODIMENTS DISCLOSE IN A SECTION CALLED

140

14:05:29 1    EMBODIMENTS; WE HAVE DEPENDENT CLAIMS THAT MORE

14:05:31 2    NARROWLY CLAIM THE BREADTH OF "MATHEMATICALLY

14:05:37 3    FITTING AN ELLIPSE" THAT ARE SUPPORTED BY THOSE

14:05:39 4    PARTICULAR EMBODIMENTS AND ALL OF THIS EVIDENCE,

14:05:41 5    THEREFORE, IS CONSISTENT WITH OUR PROPOSED

14:05:44 6    CONSTRUCTION.

14:05:47 7             "MATHEMATICALLY FITTING AN ELLIPSE" IS

14:05:48 8    "MATHEMATICALLY FITTING AN ELLIPSE."  IT NEEDS NO

14:05:51 9    FURTHER ELABORATION, AND WE SHOULDN'T TINKER AND WE

14:05:56 10   SHOULDN'T READ A PREFERRED EMBODIMENT IN THE CLAIM.

14:05:58 11            THE COURT:  OKAY.  LET ME ASK SOME

14:05:59 12   QUESTIONS OF MR. VERHOEVEN.

14:06:06 13            OKAY.  FIRST OF ALL, DO YOU AGREE THAT

14:06:08 14   CLAIMS 15 THROUGH 18 REPRESENT UNITARY

14:06:12 15   TRANSFORMATION OF THE COVARIANCE MATRIX?

14:06:14 16            MR. VERHOEVEN:  YES, YOUR HONOR.

14:06:15 17            THE COURT:  OKAY.  AND DO YOU THINK

14:06:17 18   THAT'S SUFFICIENT TO FIT AN ELLIPSE?

14:06:19 19            MR. VERHOEVEN:  NO.  WHAT WE INTENDED TO

14:06:21 20   DO WITH OUR CONSTRUCTION IS TO SAY THAT THAT IS

14:06:23 21   REQUIRED AS PART OF THE CALCULATION AND TO ANSWER

14:06:30 22   YOUR PERHAPS NEXT QUESTION, THE PROPOSED

14:06:32 23   MODIFICATION OF OUR CONSTRUCTION THAT YOU READ TO

14:06:34 24   COUNSEL FOR APPLE WOULD BE ACCEPTABLE TO US.

14:06:37 25            THEIR ARGUMENT IS THAT, WELL, JUST USING

141

14:06:39  1       THAT ALONE WOULDN'T EVEN FIT AN ELLIPSE.  YOU NEED

14:06:42  2    TO DO ADDITIONAL STEPS.  THAT WASN'T OUR INTENT.

14:06:46  3             OUR INTENT WAS TO CAPTURE THE STATEMENT

14:06:49  4    AND THE ONLY DISCLOSURES IN THE ENTIRE PATENT FOR

14:06:52  5    "MATHEMATICALLY FITTING AN ELLIPSE" THAT THE

14:06:57  6    ELLIPSE FITTING PROCEDURE REQUIRES A UNITARY

14:07:00  7    TRANSFORMATION OF THE GROUP COVARIANCE MATRIX OF

14:07:03  8    SECOND MOMENTS.

14:07:08  9             AN ARGUMENT WAS MADE, WELL, THAT IF YOU

14:07:10 10    LOOK AT SOME OF THE DEPENDENT CLAIMS THEY TALK

14:07:12 11    ABOUT EIGENVALUES AS CALCULATE OR AS ALSO BEING

14:07:15 12    USED.

14:07:16 13             WE'RE NOT SAYING THAT OUR CONSTRUCTION

14:07:18 14    FOR "MATHEMATICALLY FITTING AN ELLIPSE" IN CLAIM 1

14:07:25 15    REQUIRES THE CALCULATION OF THOSE EIGENVALUES IN

14:07:29 16    THOSE DEPENDENT CLAIMS.

14:07:30 17             WE'RE SAYING THAT IT REQUIRES WHAT THE

14:07:35 18    SPEC SAYS IT REQUIRES, WHICH IS THE "UNITARY

14:07:41 19    TRANSFORMATION OF THE GROUP OF COVARIANCE MATRIX."

14:07:44 20    THAT IS REQUIRED AS PART OF MATHEMATICALLY FITTING

14:07:46 21    AN ELLIPSE.  THAT'S WHAT THE PATENT SAYS AND THAT'S

14:07:48 22    WHAT WE INTENDED IN OUR CONSTRUCTION, YOUR HONOR.

14:07:56 23             THE COURT:  DO YOU FEEL THAT ALL OF THE

14:07:57 24    EQUATIONS THAT ARE IN COLUMN 26 ARE NECESSARY FOR

14:08:02 25    "MATHEMATICALLY FITTING AN ELLIPSE"?

                                                           142

14:08:04  1         MR. VERHOEVEN:  UNDER THE CLAIM TERMS

14:08:05  2   THAT WE'RE CONSTRUING, YOUR HONOR, WE'RE ONLY

14:08:08  3   ASKING YOUR HONOR TO SAY THAT THE "UNITARY

14:08:12  4   TRANSFORMATION OF COVARIANCE MATRIX OF SECOND

14:08:17  5   MOMENTS IS REQUIRED."

14:08:18  6         AND ADDITIONAL VARIATIONS ON THE REST OF

14:08:22  7   THE FORMULAS IS PERMITTED UNDER THE CLAIM.

14:08:24  8         BUT THE ONLY DISCLOSED EMBODIMENT OF

14:08:27  9   "MATHEMATICALLY FITTING AN ELLIPSE" IN THIS PATENT

14:08:30  10  STATES THAT THE ELLIPSE FITTING PROCEDURE REQUIRES

14:08:36  11  THAT STEP.

14:08:37  12        SO IF I COULD JUST --

14:08:39  13        THE COURT:  BUT I GUESS -- OKAY.  I KNOW

14:08:41  14  YOU'RE SAYING THAT UNITARY TRANSFORMATION OF

14:08:44  15  COVARIANCE MATRIX IS REQUIRED, BUT WHAT YOU'RE

14:08:51  16  SAYING IS THAT THAT ALONE IS NOT MATHEMATICALLY

14:08:53  17  FITTING AN ELLIPSE.

14:08:55  18        MR. VERHOEVEN:  THAT IS REQUIRED TO

14:08:58  19  MATHEMATICALLY FIT AN ELLIPSE.  THEN YOU WOULD HAVE

14:08:59  20  MORE FLEXIBILITY TO ALTER THE SPECIFIC FORMULAS IN

14:09:03  21  HERE.

14:09:03  22        BUT IF YOU DON'T DO THAT, YOUR HONOR, IF

14:09:05  23  YOU DON'T USE THAT "UNITARY TRANSFORMATION OF

14:09:08  24  COVARIANCE MATRIX," IF YOU GO TO SLIDE 8 HERE,

14:09:14  25  PLEASE.  I DON'T KNOW IF YOU HAVE OUR SLIDES.

                                                    143

14:09:18  1          REMEMBER WE TALKED IN THE TUTORIAL ABOUT

14:09:20  2     THE FIVE PARAMETERS GENERALLY?  THAT'S ABOUT

14:09:25  3     ACHIEVING THE PARAMETERS AND NOT ABOUT THE

14:09:27  4     CALCULATIONS USED TO GET THEM.

14:09:28  5          AND WE TALKED ABOUT WE USE THIS

14:09:31  6     ILLUSTRATION ON SLIDE 8.

14:09:32  7          NOW, YOUR HONOR, IF WE TOOK THOSE FIVE

14:09:34  8     VALUES AND CALCULATE THEM WITHOUT USING THE

14:09:39  9     "UNITARY TRANSFORMATION OF COVARIANCE MATRIX," IF I

14:09:43 10     COULD APPROACH THE SCREEN?

14:09:44 11          THE COURT:  PLEASE.

14:09:46 12          MR. VERHOEVEN:  YOU COULD HAVE A

14:09:47 13     RECTANGLE RIGHT HERE USING THOSE SAME PARAMETERS.

14:09:50 14          IT'S THE "UNITARY TRANSFORMATION OF

14:09:53 15     COVARIANCE MATRIX," WHICH IS USED TO MATHEMATICALLY

14:09:56 16     FIT THE ELLIPSE WITHIN THOSE PARAMETERS.

14:09:59 17          AND THAT'S WHY THE SPEC IS SAYING THAT'S

14:10:01 18     REQUIRED.

14:10:05 19          SO WE'RE NOT TRYING TO SAY THAT YOU'RE

14:10:09 20     LIMITED TO EVERY SINGLE FORMULA IN THE

14:10:11 21     SPECIFICATION, BUT WHERE THE SPEC, WITH THE ONLY

14:10:14 22     DISCLOSURE OF THIS ELLIPSE FITTING PROCEDURE,

14:10:17 23     SAYING THAT THIS MATHEMATICALLY FITTING REQUIRES

14:10:18 24     THIS CALCULATION, THEN WE BELIEVE THAT IT'S

14:10:21 25     APPROPRIATE TO AT LEAST SAY "MATHEMATICALLY FITTING

                                                      144

14:10:27 1    AN ELLIPSE" MEANS IT HAS TO AT LEAST HAVE THAT STEP

14:10:33 2    IN IT AND THAT'S WHAT WE'RE PROPOSING.

14:10:35 3         THE COURT:  LET ME ASK, DOES THIS PRIOR

14:10:37 4    ARTICLE DISCLOSE "MATHEMATICALLY FITTING AN

14:10:39 5    ELLIPSE"?

14:10:40 6         MR. VERHOEVEN:  PRIOR ART GENERALLY, YES,

14:10:42 7    ABSOLUTELY.  AND WE SHOWED A BRIEF SLIDE.  AND IT'S

14:10:45 8    NOT DISPUTED, AND THEY ALSO HAVE TAKEN THE POSITION

14:10:48 9    THAT THERE'S A NUMBER OF DIFFERENT WAYS TO

14:10:50 10   MATHEMATICALLY FIT AN ELLIPSE.

14:10:51 11        THE ONLY WAY THAT THIS PATENT WILL BE

14:10:55 12   VALID IS, IF IT IS AT ALL, YOUR HONOR, IS IF THIS

14:10:59 13   IS PART OF THE CLAIM, THIS THING THAT THEY'RE

14:11:01 14   SAYING THAT IS REQUIRED.

14:11:02 15        I'LL GIVE YOU AN -- IF WE GO TO THE

14:11:05 16   PROSECUTION HISTORY, I HAVE SOME SLIDES ON THAT,

14:11:07 17   YOUR HONOR.

14:11:07 18        THE COURT:  SO THEN WHY CAN'T THE

14:11:10 19   DISCLAIMER BE JUST A DISCLAIMER OF NON-MATHEMATICAL

14:11:13 20   WAYS OF FITTING AN ELLIPSE?

14:11:15 21        MR. VERHOEVEN:  BECAUSE THERE'S

14:11:16 22   MATHEMATICAL FITTING OF THE ELLIPSE IN THE PRIOR

14:11:22 23   ART.

14:11:22 24        FOR EXAMPLE, YOUR HONOR, IF I COULD

14:11:23 25   BRIEFLY GO THROUGH THE PROSECUTION HISTORY AT SLIDE

                                                        145

14:11:26  1    14, INITIALLY THE CLAIM JUST SAID "FITTING AN

14:11:28  2    ELLIPSE TO AT LEAST ONE OF THE PIXEL GROUPS."

14:11:32  3            THEN SLIDE 15, PLEASE.  THE EXAMINER

14:11:37  4    REJECTED THOSE CLAIMS AS ANTICIPATED BY BISSET AND

14:11:40  5    POINTED TO BISSET AS DISCLOSING "FITTING AN ELLIPSE

14:11:44  6    TO AT LEAST ONE OF THE PIXEL GROUPS."

14:11:48  7            AND BISSET DISCLOSED "FITTING AN ELLIPSE

14:11:51  8    TO AT LEAST ONE OF THE PIXEL GROUPS."  THIS IS A

14:11:53  9    PICTURE OF BISSET.  NEXT SLIDE.

14:11:55 10            IN RESPONSE TO TRAVERSE ONE OF THESE

14:11:58 11    PIECES OF PRIOR ART, THE APPLICANTS AMENDED THE

14:12:01 12    CLAIMS TO REQUIRE "MATHEMATICALLY FITTING AN

14:12:04 13    ELLIPSE."

14:12:05 14            AND THEN THE NEXT SLIDE.  IN THEIR

14:12:07 15    REMARKS, THEY ARGUED THAT THE EXAMINER WAS -- IT

14:12:13 16    WAS INAPPROPRIATE FOR THE EXAMINER TO REJECT THE

14:12:14 17    CLAIMS BECAUSE HE WAS NOT INTERPRETING THE CLAIMS

14:12:17 18    IN LIGHT OF THE SPECIFICATION.

14:12:19 19            AND YOU'LL RECALL THE SPECIFICATION SAID

14:12:21 20    THAT THERE'S A SPECIFIC PROCEDURE THAT IS REQUIRED.

14:12:24 21            AND SO HE SAYS, THE OFFICE ACTION'S

14:12:27 22    INTERPRETATION OF FITTING AN ELLIPSE TO AT LEAST

14:12:29 23    ONE OF THE PIXEL GROUPS IS UNREASONABLE IN LIGHT OF

14:12:31 24    THE PLAIN MEANING OF THE FITTING AN ELLIPSE AND IN

14:12:41 25    PARTICULAR DISREGARDED THE REQUIREMENT TO INTERPRET

                                                        146

14:12:43 1    THE CLAIMS IN LIGHT OF THE SPECIFICATION.

14:12:44 2              AND IN THE REMARK IT SAYS, "WHEN THE

14:12:47 3    CLAIM LANGUAGE IS THEN VIEWED IN LIGHT OF THE

14:12:50 4    SPECIFICATION, AS IT MUST BE VIEWED, IN THIS

14:12:54 5    REGARD, APPLICANT SUBMITS THAT THE OFFICE ACTION

14:12:56 6    FAILS TO CONSIDER THE DISCLOSURE OF THE

14:12:59 7    SPECIFICATION WHEN INTERPRETING AT LEAST THE

14:13:01 8    FEATURE OF FITTING AN ELLIPSE TO AT LEAST ONE OF

14:13:04 9    THE PIXEL GROUPS.

14:13:10 10             WHAT THEY'RE SAYING THERE IS THAT WE

14:13:10 11   DON'T EVEN NEED TO ADD THIS MATHEMATICAL BECAUSE IF

14:13:11 12   YOU LOOK AT THE SPECIFICATION IT REQUIRES THIS

14:13:13 13   PROCEDURE.  THE SPECIFICATION HAD THAT LANGUAGE IN

14:13:16 14   THERE.

14:13:16 15             AND SO THAT'S -- THAT'S NOT A DISCLAIMER,

14:13:20 16   SO MUCH, YOUR HONOR, BUT THAT IS A PIECE OF

14:13:23 17   INTRINSIC EVIDENCE THAT SUPPORTS AND CORROBORATES

14:13:27 18   THE PLAIN SENTENCE IN THE SPECIFICATION ITSELF.

14:13:33 19             SLIDE 19, PLEASE.

14:13:34 20             WHEN AS HERE, THE SPECIFICATION ONLY

14:13:37 21   DISCLOSES ONE WAY OF MATHEMATICALLY FITTING AN

14:13:41 22   ELLIPSE.  AND IT GOES FURTHER AND IT SAYS A PORTION

14:13:44 23   OF IT IS A REQUIREMENT, THEN IT'S APPROPRIATE TO

14:13:48 24   INTERPRET THE CLAIMS TO INCLUDE THAT REQUIREMENT.

14:13:51 25             HERE, YOUR HONOR, THERE'S ONLY ONE PLACE

147

14:13:55  1    IN THE ENTIRE SPECIFICATION WHERE THERE'S A

14:13:58  2    DISCUSSION OF "MATHEMATICALLY FITTING AN ELLIPSE"

14:14:00  3    AND IN THAT ONE PLACE, YOU FIND THE SENTENCE THAT

14:14:04  4    IS REQUIRED.

14:14:06  5         THIS IS NOT A SITUATION WHERE YOU HAVE

14:14:09  6    MULTIPLE EMBODIMENTS AND WE'RE TRYING TO IMPORT ONE

14:14:12  7    OF THOSE EMBODIMENTS INTO THE CLAIM.

14:14:14  8         THE ONLY DESCRIPTION SAYS THAT THIS

14:14:17  9    ELLIPSE FITTING PROCEDURE REQUIRES THIS STEP.

14:14:20 10         NOW, IF WE GO TO SLIDE 20, THIS IS THE

14:14:26 11    COLUMN 27 WHERE APPLE SAYS, WELL, THIS IS THE

14:14:31 12    ALTERNATE EMBODIMENT, BUT ON THE FACE OF IT YOU CAN

14:14:34 13    SEE THAT IT'S SAYING IF YOU CAN'T FIT AN ELLIPSE,

14:14:38 14    YOU CAN GO TO DEFAULTS.

14:14:39 15         SO IT SAYS, "ON LOW RESOLUTION ELECTRODE

14:14:42 16    ARRAYS, THE TOTAL GROUP PROXIMITY GZ IS A MORE

14:14:46 17    RELIABLE INDICATOR OF CONTACT SIZE AS WELL AS

14:14:50 18    FINGER PRESSURE," AND HERE'S THE CRITICAL THING,

14:14:53 19    "THAN THE FITTED ELLIPSE PARAMETERS."

14:14:57 20         IT GOES ON.  "SO THEREFORE, IF PROXIMITY

14:15:00 21    IMAGES HAVE LOW RESOLUTION, THE ORIENTATION AND

14:15:04 22    ECCENTRICITY OF SMALL CONTACTS ARE SET TO DEFAULT

14:15:06 23    VALUES RATHER THAN THEIR MEASURED VALUES."

14:15:09 24         SO IT'S SAYING IF YOU HAVE A LOW

14:15:12 25    RESOLUTION, YOU CAN'T USE THE MATHEMATICAL ELLIPSE

148

14:15:14  1    FITTING.

14:15:15  2              SO YOU'RE BETTER JUST TO USE THE CENTER

14:15:18  3    POINT AND THEN DO THE DEFAULTS AROUND IT THAN IT IS

14:15:22  4    TO TRY AND MATHEMATICALLY FIT IT.

14:15:24  5              AND SO YOU DON'T USE THE FITTED ELLIPSE

14:15:27  6    PARAMETERS.  INSTEAD YOU USE DEFAULT VALUES.

14:15:31  7              SO, AGAIN, ORIENTATION, ECCENTRICITY, WE

14:15:40  8    WENT THROUGH THOSE.  THAT'S THE RELATIONSHIP OF THE

14:15:42  9    X TO Y, HOW LONG -- HOW LONG IS THE OVAL OF THE

14:15:46 10    ELLIPSE?

14:15:47 11              ORIENTATION.  HOW IS IT ORIENTED ON THE

14:15:50 12    X-Y AXIS?  THAT'S THE FITTING OF THE ELLIPSE, YOUR

14:15:53 13    HONOR, AND THEY'RE SET TO ZERO AND ONE.  THEY'RE

14:15:56 14    NOT FITTING AN ELLIPSE HERE, YOUR HONOR.

14:15:58 15              AND SO HERE'S AN EXAMPLE OF THEM -- OF

14:16:03 16    THE PATENT FITTING THE ELLIPSE WHEN IT'S GOT ENOUGH

14:16:06 17    DATA TO DO SO AND IT USES THE UNITARY

14:16:10 18    TRANSFORMATION OF COVARIANCE MATRIX AS A

14:16:14 19    REQUIREMENT IN ORDER TO DO THAT.

14:16:16 20              AND HERE'S AN EXAMPLE OF WHERE THE DATA

14:16:19 21    IS TOO SMALL AND THERE'S NO EFFORT AT ALL MADE TO

14:16:22 22    FIT AN ELLIPSE.

14:16:23 23              AS YOU HEARD FROM DR. BALAKRISHNAN, THEY

14:16:26 24    SIMPLY CALCULATE THE CENTER POINT OF THE TOUCH AND

14:16:28 25    DO DEFAULT VALUES ON IT.

                                                          149

14:16:30  1          THAT CANNOT BE FAIRLY SAID TO BE A SECOND

14:16:32  2     EMBODIMENT OF "MATHEMATICALLY FITTING AN ELLIPSE."

14:16:35  3          IF I COULD GO TO THE NEXT ARGUMENT THAT

14:16:39  4     COUNSEL HAS MADE.  I KNOW WE'RE SHORT ON TIME, YOUR

14:16:41  5     HONOR.

14:16:41  6          THE CLAIM -- THE ARGUMENT WAS MADE, WELL,

14:16:44  7     THESE DEPENDENT CLAIMS TALK ABOUT EIGENVECTORS AND

14:16:48  8     EIGENVALUES, AND, THEREFORE, OUR CONSTRUCTION MUST

14:16:50  9     BE REJECTED.

14:16:51 10          BUT IF YOU LOOK -- IF I MAY APPROACH THE

14:16:54 11     SCREEN, HERE'S THE PHRASE WE'RE TALKING ABOUT

14:16:58 12     "MATHEMATICALLY FITTING AN ELLIPSE TO AT LEAST ONE

14:17:00 13     OF THE PIXEL GROUPS."

14:17:02 14          AND HERE'S WHAT WE'RE SAYING IS REQUIRED

14:17:07 15     OR THAT IS A REQUIREMENT AS PART OF THAT.  AND

14:17:10 16     WE'RE SAYING THE ELLIPSE FITTING PROCEDURE REQUIRES

14:17:12 17     A UNITARY TRANSFORMATION OF THE GROUP COVARIANCE

14:17:15 18     MATRIX OF SECOND MOMENTS, 15, 16, 17, AND 18 ARE

14:17:22 19     PART OF THIS.

14:17:22 20          DOWN HERE WHERE THEY'RE TALKING ABOUT

14:17:24 21     EIGENVALUE AND EIGENVECTORS, THEY'RE CLAIMING LATER

14:17:29 22     STEPS IN THE CALCULATION THAT WE ARE NOT TRYING TO

14:17:31 23     IMPORT INTO MATHEMATICALLY FITTING AN ELLIPSE.  SO

14:17:31 24     THERE IS NO CLAIM DIFFERENTIATION HERE.  OUR

14:17:34 25     PROPOSED CONSTRUCTION DOES NOT TALK ABOUT

                                                          150

14:17:37 1    EIGENVECTORS.

14:17:38 2              IN FACT, WE WERE CHASTISED BY COUNSEL --

14:17:41 3              THE COURT:  BUT I GUESS YOU KIND

14:17:43 4    OF STEPPED AWAY FROM THIS -- NOW IT SEEMS LIKE

14:17:44 5    YOU'RE GOING BACK TO YOUR ORIGINAL ARGUMENT WHICH

14:17:47 6    IS THAT THE GROUP COVARIANCE MATRIX IS

14:17:51 7    MATHEMATICALLY FITTING AN ELLIPSE BUT NOW YOU'RE

14:17:53 8    SAYING, NO, IT IS NOT.

14:17:54 9              YOU'RE EQUATING THAT LANGUAGE IN CLAIM 1

14:17:57 10   WITH THE GROUP COVARIANCE MATRIX AND YOU'RE SORT OF

14:18:00 11   BACK TO WHAT --

14:18:03 12             MR. VERHOEVEN:  I DON'T BELIVE SO, YOUR

14:18:04 13   HONOR.  I THINK ALL I'M SAYING IS THAT THIS IS A

14:18:06 14   REQUIREMENT TO DO THIS, NOT THAT YOU COULDN'T --

14:18:09 15   GET RID OF 5 AND 15 AND YOU'RE JUST LOOKING AT

14:18:11 16   CLAIM 1.

14:18:18 17             IF SOMEBODY FITTED AN ELLIPSE AND USED

14:18:21 18   THIS -- THESE EQUATIONS BUT DIDN'T DO OTHER THINGS

14:18:23 19   AND THEY USED OTHER EQUATIONS IN ADDITION TO IT,

14:18:24 20   THEN THEY WOULD INFRINGE CLAIM 1.

14:18:27 21             IF THEY -- SO IF THEY DIDN'T DO

14:18:30 22   EIGENVECTORS, THEY STILL INFRINGE CLAIM 1 UNDER OUR

14:18:34 23   CLAIM CONSTRUCTION.

14:18:34 24             IF THEY WENT AHEAD AND THEN ALSO AFTER

14:18:39 25   DOING THE UNITARY TRANSFORMATION OF COVARIANCE

                                                        151

14:18:47 1    MATRIX CALCULATION, THEN THEY WENT ON AND

14:18:50 2    CALCULATED EIGENVALUES, THEN THEY WENT AND

14:18:53 3    INFRINGED CLAIM 1 AND CLAIM 5.

14:18:55 4         SO WE'RE NOT SAYING -- AS I ATTEMPTED TO

14:18:59 5    CLARIFY AT THE START, WE'RE NOT SAYING THAT A TO Z

14:19:01 6    TOTALITY OF THE CALCULATIONS YOU DO TO

14:19:03 7    MATHEMATICALLY FIT AN ELLIPSE ARE ONLY UNITARY

14:19:09 8    TRANSFORMATION OF COVARIANCE MATRIX.

14:19:10 9         WE'RE SIMPLY SAYING MATHEMATICALLY

14:19:12 10   FITTING AN ELLIPSE REQUIRES AT LEAST THE USE OF THE

14:19:20 11   UNITARY TRANSFORMATION OF THE COVARIANCE MATRIX,

14:19:24 12   WHICH IS WHAT IT SAYS EXPRESSLY IN THE ONLY

14:19:27 13   DISCLOSURE IN THE SPECIFICATION.

14:19:37 14        I THINK THAT'S ALL I HAVE, YOUR HONOR,

14:19:39 15   UNLESS YOU HAVE ANY FURTHER QUESTIONS FOR ME.

14:19:41 16        THE COURT:  NO, NOTHING FURTHER.  THANK

14:19:42 17   YOU.

14:19:42 18        ANYTHING FURTHER, MR. JACOBS?  VERY

14:19:45 19   SHORT, PLEASE.

14:19:53 20        MR. JACOBS:  YOUR HONOR, I THINK YOU HAVE

14:19:55 21   THE EVIDENCE BEFORE YOU.  I THINK WE'RE ALL CITING

14:19:57 22   TO THE SAME MATERIAL NOW.

14:19:58 23        I THINK WE'RE ARGUING REALLY A LEGAL

14:20:00 24   POINT, WHICH IS WHEN YOU READ IN A PREFERRED

14:20:04 25   EMBODIMENT OR EMBODIMENT INTO THE CLAIMS, AND WE

152

14:20:06  1      THINK THE LAW IS CLEAR ON THAT HERE, AND THAT

14:20:08  2      SAMSUNG WOULD LEAD YOU INTO ERROR.

14:20:09  3              I WOULD NOTE AT THE BOTTOM OF COLUMN 59

14:20:14  4      AND THE TOP OF 60, THE TRADITIONAL LANGUAGE OF A

14:20:17  5      PATENT DRAFTSMAN WHO IS WORRIED THAT A COURT MIGHT

14:20:20  6      VIEW AN EMBODIMENT AS A LIMITATION, OTHER

14:20:24  7      EMBODIMENTS OF THE INVENTION WILL BE APPARENT TO

14:20:27  8      THOSE SKILLED IN THE ART FROM CONSIDERATION OF THE

14:20:29  9      SPECIFICATION AND PRACTICE OF THE INVENTION

14:20:30 10      DISCLOSED HEREIN.

14:20:32 11              IT IS INTENDED THAT THE SPECIFICATION AND

14:20:34 12      EXAMPLES BE CONSIDERED AS EXEMPLARY ONLY WITH A

14:20:38 13      TRUE SCOPE AND SPIRIT OF THE INVENTION BEING

14:20:41 14      INDICATED BY THE FOLLOWING CLAIMS.

14:20:45 15              SO WE BOOKENDED THIS DESCRIPTION, YOUR

14:20:47 16      HONOR, WE BOOKENDED IT WITH AN INTRODUCTION WHICH

14:20:50 17      SAYS THAT THIS IS A DESCRIPTION OF THE PREFERRED

14:20:51 18      EMBODIMENT AND WE'VE ENDED IT WITH THAT THIS IS

14:20:54 19      MERELY ILLUSTRATIVE.

14:20:55 20              SAMSUNG CITED A CASE WHICH ACTUALLY HELPS

14:20:59 21      US, THE IMAGE CUBE CASE AND FUNNY ENOUGH IT KIND OF

14:21:04 22      REQUIRED LANGUAGE IN THE CASE.  AND THE FEDERAL

14:21:06 23      CIRCUIT AFFIRMED THE LOWER COURT BUT IT HAD "OF THE

14:21:13 24      INVENTION" IN IT AND THAT'S WHAT THE -- BUT THAT'S

14:21:15 25      WHAT TOGGLED THE COURT FROM THIS IS JUST AN

                                                        153

14:21:17 1     EMBODIMENT TO THIS IS A DESCRIPTION OF THE

14:21:19 2     INVENTION.

14:21:20 3             AND SO THAT CASE IS ACTUALLY OUR CASE.

14:21:25 4     AND THE DEPENDENT CLAIMS, THOSE ARE OUR CLAIMS,

14:21:28 5     YOUR HONOR, IN THE SENSE THAT THEY ABSOLUTELY

14:21:30 6     REINFORCE THE POINT WE'RE DRIVING AT.

14:21:32 7             IF YOU GO FURTHER INTO THE CLAIM

14:21:34 8     STRUCTURE, YOU WILL SEE OTHER INSTANCES IN WHICH A

14:21:37 9     BROAD INDEPENDENT CLAIM THAT DOESN'T CLAIM A

14:21:40 10    PARTICULAR METHOD OF MATHEMATICALLY FITTING AN

14:21:42 11    ELLIPSE IS SET FORTH.

14:21:44 12            AND THEN FURTHER DOWN WE SEE THE SPECIFIC

14:21:47 13    PARAMETERS, I'M LOOKING, FOR EXAMPLE, AT CLAIM 19,

14:21:55 14    SPECIFIC PARAMETERS THERE ARE CLAIMED.

14:21:57 15            THEN CLAIM 20, WE HAVE THE EIGENVALUES

14:22:00 16    AND EIGENVECTORS BEING DISCLOSED.

14:22:04 17            WHEN SAMSUNG DISCUSSED CLAIM 5 WITH YOU A

14:22:07 18    MOMENT AGO, THEY LEFT OUT CRITICAL LANGUAGE OF

14:22:10 19    CLAIM 5.

14:22:11 20            IT'S NOT JUST EIGENVALUES AND

14:22:13 21    EIGENVECTORS, IT'S OF THE COVARIANCE MATRIX.

14:22:17 22    THAT'S OF THE COVARIANCE MATRIX.  THAT COVARIANCE

14:22:20 23    MATRIX IS ILLUSTRATED IN THE PASSAGE WITH THE

14:22:24 24    REQUIRED FORE LANGUAGE THAT SAMSUNG SO HEAVILY

14:22:28 25    RELIES ON.

                                                            154

14:22:29 1          SO WE'RE GETTING CLOSER TO THE COURT'S

14:22:32 2   ADJUSTED SAMSUNG DEFINITION IN CLAIM 5.  IT'S NOT

14:22:35 3   ACTUALLY THE PARTICULAR FORMULA THERE FOR

14:22:37 4   CALCULATING THE COVARIANCE MATRIX.  IT CLAIMS A

14:22:40 5   COVARIANCE MATRIX EIGENVALUES EIGENVECTORS BUT AT

14:22:45 6   LEAST WE'RE GETTING IN THE RANGE OF, OKAY, WE'RE

14:22:48 7   TALKING ABOUT A PROCESS IN WHICH CALCULATING A

14:22:51 8   COVARIANCE, IN WHICH DEALING WITH A COVARIANCE

14:22:54 9   MATRIX IS AT ISSUE.

14:22:55 10          AND SO BASIC DOCTRINES OF CLAIMS

14:22:58 11  CONSTRUCTION APPLIED HERE CONFIRM THAT SAMSUNG'S

14:23:00 12  PROPOSED DEFINITION, EVEN AS ADJUSTED BY THE COURT,

14:23:04 13  WOULD VIOLATE ALL OF THE RULES OF CLAIM

14:23:08 14  CONSTRUCTION THAT WE HAVE INHERITED OVER THE PAST

14:23:10 15  YEARS FROM THE FEDERAL CIRCUIT.

14:23:15 16          THE COURT:  OKAY.  THANK YOU.  CAN WE GO

14:23:18 17  TO THE '915, PLEASE.  I THINK WE HAVE THREE MORE

14:23:22 18  TERMS LEFT.

14:23:40 19          MR. JACOBS:  SO THIS IS A PATENT THAT IS

14:23:43 20  ALSO LIKE THE PATENT WE JUST LOOKED AT.  IT'S PART

14:23:46 21  OF THE MAGIC OF THIS, YOUR HONOR.

14:23:48 22          HOW DO WE GET THESE TOUCHSCREENS TO

14:23:50 23  INTERPRET WHAT TO A SCREEN MUST BE THOUGHT OF ROUGH

14:23:55 24  HUMAN GESTURES AND MAKE THEM MEANINGFUL IN THE

14:23:57 25  CONTEXT OF A COMPUTING DEVICE?

                                                        155

14:23:59  1          AND SO THE '915 DISTINGUISHES BETWEEN

14:24:01  2    SCROLLING AND GESTURING.  THAT'S WHAT THE CLAIM OR

14:24:04  3    WHAT THE PATENT IS GENERALLY ABOUT.

14:24:06  4          AND THEN WE HAVE THIS CLAIM LANGUAGE,

14:24:08  5    EXCUSE ME, ON SLIDE 27, "SCROLLING A WINDOW HAVING

14:24:11  6    A VIEW ASSOCIATED WITH THE EVENT OBJECT."

14:24:14  7          ONCE AGAIN, WE THINK THAT SAMSUNG IS

14:24:17  8    READING A PARTICULAR LIMITATION INTO THE CLAIM.

14:24:20  9          THE HEART OF THIS, YOUR HONOR, IS THAT

14:24:22 10    THEY READ "SCROLLING A WINDOW," THEY SEE THE WORD

14:24:25 11    "WINDOW" AND THEY IMAGINE A PICTURE FRAME.

14:24:27 12          AND SO WHEN SAMSUNG SEES "SCROLLING A

14:24:30 13    WINDOW" IN THE CLAIM LANGUAGE, THEY IMAGINE THAT

14:24:32 14    YOU'RE PULLING A PICTURE FRAME ACROSS AN OBJECT.

14:24:35 15          AND SO THE WAY THAT THEY EXPLICATE THAT

14:24:39 16    IN THEIR PROPOSED CONSTRUCTION IS THAT THE

14:24:41 17    DIRECTION OF THE USER INPUT, THE WINDOW SLIDES IN A

14:24:45 18    DIRECTION CORRESPONDING TO THE DIRECTION OF THE

14:24:47 19    USER INPUT OVER A VIEW THAT IS STATIONARY RELATIVE

14:24:50 20    TO THE WINDOW.

14:24:51 21          THAT'S A LOT OF WORDS TO DESCRIBE A

14:24:53 22    PARTICULAR MOTION OF SCROLLING ASSOCIATED WITH A

14:24:58 23    FINGER MOVEMENT, AND WE DON'T SEE HOW THE CLAIM CAN

14:25:01 24    BE LIMITED IN THE WAY THAT SAMSUNG PROPOSES FOR

14:25:05 25    SEVERAL REASONS.

                                                            156

14:25:06 1          THE SPECIFICATION TELLS US THAT

14:25:08 2     "SCROLLING IS MERELY THE ACT OF SLIDING A

14:25:11 3     DIRECTIONAL, E.G., HORIZONTAL OR VERTICAL,

14:25:14 4     PRESENTATION OF CONTENT ACROSS A SCREEN OR A

14:25:17 5     WINDOW."

14:25:17 6          IMPORTANTLY, IMPORTANTLY FOR THE HEART OF

14:25:21 7     SAMSUNG'S ARGUMENT, THE SPECIFICATION EXPLAINS THAT

14:25:24 8     "THE WINDOW IS A DISPLAY REGION WHICH MAY NOT HAVE

14:25:27 9     A BORDER AND MAY BE THE ENTIRE DISPLAY REGION OR

14:25:30 10    AREA OF A DISPLAY."

14:25:32 11         I'M ON SLIDE 30, AND WE'RE RECITING FROM

14:25:36 12    COLUMNS 5, LINES 25 TO 28.

14:25:40 13         SO THIS IDEA THAT SAMSUNG IS PROPOSING

14:25:42 14    THAT WHEN YOU HEAR THIS WORD "WINDOW" WE HAVE TO

14:25:46 15    THINK OF PICTURE FRAME OR WINDOW FRAME, IS NOT ONLY

14:25:49 16    NOT SUPPORTED, BY CONTROVERTED BY THE SPECIFICATION

14:25:52 17    DESCRIPTION OF A WINDOW IN THIS PATENT.

14:25:54 18         AGAIN, A WINDOW IS A REGION WHICH MAY OR

14:25:57 19    MAY NOT HAVE A BORDER.

14:26:03 20         IN THE IPHONE AND SAMSUNG DEVICES, WHEN

14:26:06 21    YOU PULL DOWN ON THE CONTENT, IT MOVES WITH YOUR --

14:26:08 22    IN THE DIRECTION OF YOUR FINGER.

14:26:11 23         IN SOME DEVICES, AND, IN FACT, I WAS JUST

14:26:14 24    PLAYING WITH ONE OF MY APPLE DEVICES, NOT AN IPHONE

14:26:18 25    BUT A COMPUTER, YOU CAN ACTUALLY SWITCH WHICH WAY

                                                    157

14:26:20  1    THE CONTENT MOVES DEPENDING ON HOW YOU SCROLL ON

14:26:25  2    THE TRACK PAD.

14:26:27  3            BUT, AGAIN, ON THESE PHONES, WHEN YOU

14:26:30  4    PULL DOWN WITH YOUR FINGER, THE CONTENT MOVES DOWN

14:26:34  5    WITH YOUR FINGER.

14:26:35  6            IN THE SPECIFICATION, THERE'S KIND OF A

14:26:37  7    BUILT-IN ANIMATION OF WHAT SCROLLING IS, WHAT IS

14:26:40  8    MEANT BY OR IS ILLUSTRATED BY SCROLLING IN THE

14:26:44  9    EMBODIMENTS OF THE PATENT.

14:26:45 10            SO WE HAVE TAKEN FIGURE 6A AND B AND

14:26:48 11    ANIMATED THEM, AND YOU'LL SEE IT'S JUST LIKE THE

14:26:52 12    PHONE DEVICE.

14:26:53 13            SO IF YOU LINE UP 6A AND B AND YOU PUT

14:26:56 14    THE FINGER ON THAT LIST, YOU PULL DOWN, THE LIST

14:26:59 15    PULLS DOWN IN THE SAME DIRECTION AS YOUR FINGER.

14:27:03 16            THE COURT:  IS THE ONLY DISPUTE WITH

14:27:05 17    REGARD TO THIS TERM WHAT DIRECTION THE SCROLL

14:27:08 18    FUNCTION UNCOVERS?

14:27:10 19            MR. JACOBS:  I THINK THAT'S THE HEART OF

14:27:12 20    IT, YOUR HONOR.  I THINK ALL OF THIS EXTRA WORDING

14:27:14 21    KIND OF IS UNNECESSARY AIMED AT THE DIRECTIONAL

14:27:19 22    QUESTION.

14:27:19 23            "SLIDING A WINDOW," I MEAN, WE'RE SLIDING

14:27:24 24    A WINDOW -- WE'RE NOT REALLY SLIDING A WINDOW.

14:27:29 25    WE'RE SCROLLING A WINDOW.  I DON'T KNOW WHY YOU

                                                          158

14:27:32  1    WANT TO SLIDE THE WINDOW.  WHAT IS WRONG WITH

14:27:36  2    SCROLLING THE WINDOW?

14:27:37  3            BUT IF YOU ALREADY HAVE THAT DIRECTIONAL

14:27:39  4    ISSUE, THEN I MAY BE ABLE TO -- LET ME SHOW JUST

14:27:42  5    YOU THIS ANIMATION.

14:27:43  6            WE ANIMATED THEIR BRIEF.  THEIR BRIEF

14:27:46  7    SAID THAT THE BEHAVIOR THAT THEY THINK IS REQUIRED

14:27:48  8    BY THE CLAIMS, THAT THE CLAIM IS LIMITED TO, IS

14:27:51  9    WHAT WOULD HAPPEN IF YOU PUT THEIR BRIEF IN ADOBE

14:27:56 10    ACROBAT IN A WINDOWS BASED PC, AND THAT'S WHAT THEY

14:28:00 11    SAID IN THEIR BRIEF.

14:28:01 12            SO THIS SCROLLING BEHAVIOR IS EXACTLY

14:28:03 13    WHAT ONE WOULD EXPERIENCE, FOR EXAMPLE, READING

14:28:06 14    THIS BRIEF ON A WINDOWS BASED PC USING ADOBE

14:28:09 15    ACROBAT.

14:28:10 16            SO WE DID THAT AND WE ANIMATED THAT.  AND

14:28:13 17    YOU WILL SEE WHAT IS BEING SHOWN HERE IS THE

14:28:15 18    OPPOSITE DIRECTION FROM WHAT YOU SEE ON AN IPHONE

14:28:18 19    OR ON A SAMSUNG DEVICE AS IT HAPPENS.

14:28:21 20            AND IT'S THE OPPOSITE OF THE SCROLLING

14:28:24 21    DIRECTIONALITY THAT IS DISCLOSED IN THE

14:28:26 22    SPECIFICATION.

14:28:26 23            SO THIS IS REDOING FIGURE 6A AND B TO

14:28:30 24    CORRESPOND TO SAMSUNG'S PROPOSAL, AND NOW WE'RE

14:28:33 25    BACK TO WHAT THE SPECIFICATION DISCLOSES ACTUALLY

159

14:28:35 1    IN 6A OR 6B.  I'M ON SLIDE 36 AND THE ANIMATIONS

14:28:42 2    ASSOCIATED WITH IT.

14:28:43 3              SO IF WE ACTUALLY DO THOSE SIDE BY SIDE

14:28:46 4    NOW.

14:28:50 5              SO THAT'S WHY SAMSUNG REALLY JUST HAS TO

14:28:53 6    BE WRONG.  "SCROLLING A WINDOW MEANS SCROLLING A

14:28:55 7    REGION."  IT DOES NOT MEAN MOVING A FRAME AROUND

14:28:59 8    OVER CONTENT IN PARTICULAR DIRECTIONALITY.  NO

14:29:02 9    PARTICULAR DIRECTIONALITY IS CLAIMED HERE, AND THE

14:29:05 10   CLAIM SHOULD NOT BE LIMITED TO THAT DIRECTIONALITY

14:29:07 11   AND IT CERTAINLY SHOULD NOT BE LIMITED TO THE

14:29:10 12   DIRECTIONALITY THAT SAMSUNG PROPOSES.

14:29:14 13             THE COURT:  LET ME ASK MR. JOHNSON, I

14:29:16 14   TEND TO AGREE THAT YOU HAVE READ OUT SEVERAL

14:29:19 15   EMBODIMENTS WITH YOUR CONSTRUCTION.

14:29:21 16             CAN YOU RESPOND TO THAT?

14:29:22 17             MR. JOHNSON:  SURE.  WITH RESPECT TO

14:29:24 18   FIGURE 5 AND 6, FOR EXAMPLE, THE CLAIM LANGUAGE IS

14:29:28 19   IMPORTANT -- IT'S IMPORTANT TO LOOK AT THE CLAIM

14:29:31 20   LANGUAGE BECAUSE THE CLAIM LANGUAGE OBVIOUSLY

14:29:33 21   COVERS AND TELLS THE PERSON OF ORDINARY SKILL IN

14:29:35 22   THE ART WHAT IS COVERED.

14:29:36 23             AND THE CLAIM LANGUAGE SAYS, "SCROLLING A

14:29:38 24   WINDOW, HAVING A VIEW."  IT DOES NOT SAY,

14:29:41 25   "SCROLLING A VIEW."  IT DOES NOT SAY, "SCROLLING A

                                                          160

VIEW."  IT SAYS, "YOU SCROLL THE WINDOW."

AND AS WE -- AS MR. JACOBS POINTED OUT, COLUMN 1 OF THE PATENT SAYS "SCROLLING" MEANS SLIDING.

THE ISSUE HERE IS THAT THE LANGUAGE THAT WAS INSERTED WITH RESPECT TO EACH OF THE INDEPENDENT CLAIMS FOR SCROLLING A WINDOW HAVING A VIEW, I ACTUALLY -- I CLAIM -- FIGURES 5 AND 6 I DON'T THINK ARE ACTUALLY COVERED BY SCROLLING A WINDOW HAVING A VIEW, AND THEY'RE NOT COVERED FOR TWO REASONS.

ONE IS THAT AS WE SAW IN THE ANIMATION THAT I JUST SAW, WHAT WAS HAPPENING WAS THE FINGER WAS TOUCHING THE CONTENT, IT WAS TOUCHING THE VIEW.

AND WHEN YOU LOOK AT THE PATENT SPECIFICATION, THE SPECIFICATION DESCRIBES VIEW AS THE CONTENT.

AND IF YOU LOOK AT, FOR EXAMPLE, OUR SLIDE 13, "A VIEW IS THE WEB, THE TEXT, OR IMAGE CONTENT."

AND WE SEE THREE DIFFERENT CITES FROM THE SPEC, COLUMNS 5, 29 THROUGH 30, "A VIEW IS THE WEB, TEXT OR IMAGE CONTENT."

"SCROLLING A WINDOW HAVING A VIEW," APPEARS AT COLUMN 6, LINE 50.  "FOR EXAMPLE, WEB,

161

14:30:51  1    TEXT OR IMAGE CONTENT."

14:30:51  2              "THE VIEW, E.G., WEB, TEXT OR IMAGE

14:30:53  3    CONTENT, HAS A FIRST SCALE FACTOR."  THAT'S AT

14:30:58  4    COLUMN 13, LINES 43 TO 44.

14:31:05  5              THE VIEW IS THE CONTENT.  SO IT'S THE

14:31:06  6    PICTURE OF THE ROYAL FAMILY.  SO WHAT WE SAW IN

14:31:09  7    FIGURE 6, IT WAS A FINGER THAT TOUCHED A LIST AND

14:31:12  8    SCROLLED A LIST DOWN.

14:31:14  9              IT DID NOT SCROLL A WINDOW.  IT SCROLLED

14:31:16 10    A LIST.

14:31:18 11              SO BY TOUCHING THE VIEW, IT WAS TOUCHING

14:31:20 12    THE CONTENT AND THAT'S DIFFERENT FROM WHAT IS

14:31:22 13    REQUIRED IN THE CLAIM LANGUAGE.

14:31:24 14              AND IT'S ALSO -- FIGURES 5 AND 6 ARE NOT

14:31:27 15    COVERED BY THE CLAIMS BECAUSE THE CLAIMS ALSO

14:31:32 16    REQUIRE SCALING A VIEW.

14:31:33 17              IF WE GO BACK TO SLIDE 3, THE LAST

14:31:44 18    LIMITATION REFERS TO "RESPONDING TO AT LEAST ONE

14:31:47 19    GESTURE CALL, IF ISSUED, BY SCALING THE VIEW

14:31:55 20    ASSOCIATED WITH THE EVENT."

14:31:55 21              WE DIDN'T SEE IN FIGURES 5 AND 6 ANY

14:31:56 22    REFERENCE TO SCALING THE VIEW.  WE SAW THE FINGER

14:31:59 23    MOVE DOWN.

14:32:04 24              I DON'T THINK FIGURES 5 AND 6 ARE COVERED

14:32:06 25    BY THE CLAIMS BECAUSE THE LANGUAGE THAT WAS

                                                          162

14:32:08 1    INSERTED IN THE CLAIMS -- AND APPLE DRAFTED THIS

14:32:11 2    LANGUAGE.  AND COULD THEY HAVE BEEN MORE CLEARER?

14:32:13 3    PERHAPS.  BUT AT THE END OF THE DAY A PERSON OF

14:32:18 4    ORDINARY SKILL IN THE ART WOULD UNDERSTAND THAT

14:32:20 5    THERE'S A DISTINCTION, A VERY REAL DISTINCTION

14:32:22 6    BETWEEN "SCROLLING A WINDOW WITH A VIEW" AND

14:32:24 7    "SCROLLING A VIEW."

14:32:25 8            AND THE REASON FOR THAT IS WHEN WE LOOKED

14:32:31 9    AT -- LET'S GO BACK TO SOME OF THE IMAGES WE LOOKED

14:32:34 10   AT IN THE TUTORIAL.  SLIDE 6, PLEASE.

14:32:39 11           WE START WITH A VIEW, HERE A PHOTOGRAPH.

14:32:40 12   IT COULD BE A WEB PAGE OR WHAT HAVE YOU.

14:32:42 13           WE START WITH A VIEW.  SLIDE 7 IS A

14:32:45 14   WINDOW HAVING A VIEW.  AND THIS IS A METAPHOR.  THE

14:32:49 15   FRAME, AS WE POINTED OUT, DOES NOT NECESSARILY HAVE

14:32:51 16   TO HAVE A WORD, BUT I THINK FOR PURPOSES OF

14:32:54 17   EXPLAINING WHAT IS GOING ON AND WHY THERE'S A

14:32:56 18   DISTINCTION BETWEEN SCROLLING A WINDOW HAVING A

14:32:58 19   VIEW AND SCROLLING A VIEW, IT'S IMPORTANT TO SEE

14:33:01 20   WHAT HAPPENS WHEN WE ACTUALLY SCROLL THE WINDOW

14:33:04 21   THAT HAS A VIEW.

14:33:05 22           SLIDE 8, PLEASE, SHOWS WHAT WE'RE DOING

14:33:08 23   HERE.

14:33:09 24           THE COURT:  IS YOUR ARGUMENT IT'S SIMILAR

14:33:10 25   TO THE ONE MADE BEFORE THAT THE CLAIMS WERE NOT

163

14:33:12 1    INTENDED TO GOVERN THESE EMBODIMENTS?  IS THAT IT?

14:33:18 2    KIND OF LIKE WHAT THE ARGUMENT THAT MR. VERHOEVEN

14:33:21 3    MADE EARLIER ON?

14:33:26 4         MR. JOHNSON:  THAT'S CORRECT, AND THERE

14:33:27 5    WAS A RESTRICTION REQUIREMENT MADE IN THE

14:33:29 6    PROSECUTION AND ULTIMATELY THERE WERE OTHER

14:33:30 7    APPLICATIONS THAT WERE PROSECUTED AND CONTINUE TO

14:33:33 8    BE PROSECUTED, I THINK, BUT NEVERTHELESS, WHAT IS

14:33:36 9    DESCRIBED IN FIGURES 5 AND 6 ARE NOT DESCRIBED BY

14:33:41 10   THE CLAIM LANGUAGE.

14:33:43 11        AND WHEN YOU GO TO -- WHEN YOU SEE --

14:33:46 12   JUST TO RUN THAT THROUGH AGAIN PLEASE, SLIDE 8,

14:33:49 13   SCROLLING AND HAVING A VIEW.  WE SEE THE VIEW

14:33:52 14   STAYED THE SAME AND WE'RE MOVING THE WINDOW ACROSS

14:33:55 15   THE VIEW.

14:33:55 16        "SCALING THE VIEW," WHICH IS ALSO

14:33:57 17   DESCRIBED IN THE CLAIMS, SLIDE 9, SHOWS THE VIEW --

14:34:01 18   THE WINDOW REMAINS THE SAME AND NOW WE'RE GOING TO

14:34:06 19   SCALE THE VIEW.  THE PHOTOGRAPH IS ENLARGED.  SO WE

14:34:11 20   ARE ZOOMING IN ON A PARTICULAR SECTION.

14:34:12 21        THIS IS ALL DIFFERENT FROM "SCROLLING A

14:34:15 22   VIEW."

14:34:16 23        IF WE GO TO SLIDE 10 WE SEE AN EXAMPLE OF

14:34:19 24   "SCROLLING A VIEW."

14:34:20 25        NOW, WHAT IS HAPPENING HERE IS THAT THE

                                                        164

14:34:23  1    VIEW IS GOING TO SCROLL, THE VIEW IS GOING TO MOVE.

14:34:27  2            THE PHOTOGRAPH, THE FRAME, THE WINDOW

14:34:32  3    REMAINS THE SAME.  SO LET'S RUN THROUGH THAT AGAIN.

14:34:36  4    IT DOES HAVE A DIFFERENCE IN THE DIRECTIONALITY

14:34:39  5    THAT WE'RE LOOKING AT.

14:34:40  6            "SCROLLING A VIEW," WE LOOK AT BOTH OF

14:34:42  7    THEM TOGETHER, AND IT'S SLIDE 11 AND I THINK IT

14:34:45  8    ACTUALLY SHOWS THE DIFFERENCE.

14:34:46  9            "SCROLLING A VIEW," WHICH IS ON THE

14:34:49 10    LEFT-HAND SIDE, WE'RE GOING TO MOVE ULTIMATELY THE

14:34:51 11    PHOTOGRAPHS ON THE RIGHT-HAND SIDE.  "SCROLLING A

14:34:56 12    WINDOW AND HAVING A VIEW," WE'RE GOING TO MOVE THE

14:34:59 13    FRAME.

14:35:00 14            AND WHAT HAPPENS IS THAT ON THE LEFT-HAND

14:35:02 15    SIDE WHEN YOU MOVE THE VIEW FROM THE RIGHT TO LEFT,

14:35:04 16    THE WINDOW HAS THE APPEARANCE OF MOVING FROM LEFT

14:35:07 17    TO RIGHT.  IT MOVES IN THE OPPOSITION DIRECTION,

14:35:09 18    WHEREAS ON THE RIGHT-HAND SIDE, WHEN YOU MOVE THE

14:35:12 19    WINDOW, WHEN YOU SCROLL THE WINDOW HAVING A VIEW,

14:35:15 20    WHICH IS WHAT THE CLAIM LANGUAGE IS SAYING, YOU

14:35:19 21    HAVE THE SAME DIRECTION OF MOVEMENT AS BOTH THE

14:35:21 22    FRAME ULTIMATELY AND THE VIEW.

14:35:22 23            IF WE CAN RUN THAT ANIMATION, PLEASE.

14:35:33 24            SO ULTIMATELY MOVING ONE WE END UP ON THE

14:35:36 25    LEFT-HAND SIDE OF THE PHOTOGRAPH, WHICH IS

                                                        165

14:35:37  1    "SCROLLING A WINDOW AND HAVING A VIEW."

14:35:40  2            WHEN WE HAVE JUST SIMPLY "SCROLLING A

14:35:42  3    VIEW" WE END UP ON THE RIGHT-HAND SIDE OF THE

14:35:45  4    PHOTOGRAPH.  THERE IS A DIFFERENCE, AND A PERSON OF

14:35:46  5    ORDINARY SKILL IN THE ART WOULD UNDERSTAND THE

14:35:47  6    DIFFERENCE.  AND, IN FACT, THE SPECIFICATION TALKS

14:35:50  7    ABOUT THE DIFFERENCES.

14:35:50  8            AND WHEN WE LOOK, FOR EXAMPLE, AT SLIDE

14:35:53  9    14, PLEASE.

14:35:56  10            IN TWO DIFFERENT PLACES THE SPECIFICATION

14:35:59  11   IN COLUMNS 6, LINES 48 TO 53 TALKS ABOUT "SCROLLING

14:36:03  12   A WINDOW HAVING A VIEW, E.G., WEB, TEXT, IMAGE, OR

14:36:08  13   CONTENT ASSOCIATED WITH THE EVENT OBJECT."

14:36:11  14            LATER ON IN THE PATENT ON COLUMN 17 IT

14:36:17  15   DISCUSSES WITH FIGURE 25 "SCROLLING THE VIEW."

14:36:19  16            THEY'RE MEANT TO BE TWO DIFFERENT IDEAS,

14:36:23  17   THE CLAIM LANGUAGE USES "SCROLLING A WINDOW WITH A

14:36:25  18   VIEW."

14:36:26  19            AND JUST TO PROVE THE POINT, I THINK THE

14:36:28  20   ANIMATION THAT MR. JACOBS SHOWED YOU ACTUALLY

14:36:32  21   PROVES THE POINT.

14:36:33  22            AND IF WE CAN PULL UP APPLE'S SLIDE 35

14:36:37  23   THAT WE JUST SAW.

14:36:38  24            DO YOU HAVE THE ABILITY TO DO THAT?

14:36:45  25            CAN YOU GUYS DO THAT?  THANKS.

                                                            166

14:36:49  1          SO MR. JACOBS PUT THIS UP AND HE SAID,

14:36:52  2    YOU KNOW, THIS PROVES APPLE'S POINT BECAUSE THIS IS

14:36:56  3    AN EXAMPLE OF SAMSUNG'S BRIEF HERE AND ON THE

14:37:02  4    RIGHT-HAND SIDE WE SEE THE CURSOR AND WHAT HE

14:37:05  5    DIDN'T EXPLAIN WAS THAT THE CURSOR ACTUALLY MOVED

14:37:08  6    OVER TO THE RIGHT-HAND SIDE TO THE SCROLL BAR.

14:37:13  7          THAT'S DIFFERENT FROM -- AND, IN FACT,

14:37:15  8    THIS IS ACTUALLY SCROLLING A WINDOW WITH A VIEW.

14:37:18  9    BY MOVING THE CURSOR AND SCROLLING THE SCROLL BAR

14:37:21 10    ON THE RIGHT-HAND SIDE, WHAT YOU'RE DOING IS YOU'RE

14:37:23 11    MOVING THE PICTURE FRAME.  YOU'RE MOVING THE

14:37:26 12    WINDOW.

14:37:26 13          IMAGINE THE BORDERS OF THE SCROLL BAR TO

14:37:29 14    BE ON WHEELS, THE UNDERLYING DOCUMENT, THE

14:37:33 15    UNDERLYING TEXT STAYS THE SAME.

14:37:36 16          WHAT YOU'RE DOING IS THAT YOU'RE MOVING

14:37:38 17    THE WINDOW UP AND YOU'RE MOVING IT DOWN.  AND

14:37:40 18    THAT'S DIFFERENT.

14:37:41 19          AND WHAT WAS INTENDED AND WHAT WAS

14:37:42 20    DESCRIBED IN OUR BRIEF WAS SCROLLING A WINDOW --

14:37:45 21    SORRY -- WAS SCROLLING A VIEW, WHICH WAS IN THE

14:37:47 22    CONTEXT OF ADOBE ACROBAT, IF YOU HAVE EXPERIENCE

14:37:51 23    WITH THAT, YOU HAVE THE HAND WHICH YOU CAN PUT IN

14:37:54 24    THE MIDDLE OF THE DOCUMENT AND YOU CAN PHYSICALLY

14:37:57 25    SCROLL DOWN OR USE YOUR THUMBWHEEL OR YOUR FINGER

                                                         167

14:38:01 1   WHEEL TO GRAB SOMETHING IN THE MIDDLE AND CHANGE

14:38:04 2   THE VIEW.

14:38:05 3            SO WHEN YOU PHYSICALLY DO THAT IN ADOBE

14:38:08 4   ACROBAT, THAT IS FUNDAMENTALLY DIFFERENT FROM

14:38:12 5   SCROLLING ON THE SCROLL BAR ON THE RIGHT-HAND SIDE

14:38:14 6   AS WE SEE IN THIS ANIMATION.

14:38:16 7            SO CAN WE GO AHEAD AND JUST RUN THIS SO

14:38:19 8   WE CAN SEE THE WINDOW SWITCHING?

14:38:23 9            YOU SEE ON THE RIGHT-HAND SIDE, THE

14:38:25 10  SCROLL BAR MOVES UP, AND THAT'S MOVING THE WINDOW

14:38:28 11  UP, AND THE DOCUMENT LOOKS LIKE IT'S COMING DOWN.

14:38:31 12           WHAT THEY DON'T SHOW YOU IS THE IDEA OF

14:38:34 13  MOVING THE CURSOR TO THE MIDDLE OF THE DOCUMENT IN

14:38:36 14  ADOBE ACROBAT AND PHYSICALLY PULLING IT DOWN.  AND

14:38:40 15  THAT WOULD BE SCROLLING A VIEW.

14:38:42 16           WHAT WE SEE IN THIS ANIMATION IS

14:38:44 17  SCROLLING A WINDOW HAVING A VIEW.  AND THEY'RE

14:38:47 18  DIFFERENT AND A PERSON OF ORDINARY SKILL IN THE ART

14:38:49 19  WOULD UNDERSTAND IT.

14:38:49 20           AND AT THE END OF THE DAY, WHAT GOVERNS

14:38:52 21  IS THE CLAIM LANGUAGE, THAT'S WHAT INFORMS A PERSON

14:38:55 22  OF ORDINARY SKILL IN THE ART, APPLE INSERTED THE

14:38:58 23  TERM "WINDOW," AFTER SCROLLING.

14:39:00 24           "SCROLLING," AS WE SAW FROM COLUMN 1

14:39:03 25  REFERS TO SLIDING IN A DIRECTION.  AND WHAT WE SEE

168

14:39:07 1     HERE IS THAT WHEN YOU "SCROLL A WINDOW HAVING A

14:39:09 2     VIEW," IT'S DIFFERENT FROM "SCROLLING A VIEW."

14:39:15 3              UNLESS YOUR HONOR HAS ANY QUESTIONS?

14:39:17 4              THE COURT:  NO THANK YOU.  ALL RIGHT.  I

14:39:25 5     BELIEVE WE HAVE TWO LEFT.  DID YOU WANT TO SAY

14:39:30 6     SOMETHING ABOUT THIS?

14:39:31 7              MR. JACOBS:  I WAS GOING TO SUM UP.  I

14:39:33 8     THINK WE'RE BOTH POINTING TO THE SAME EVIDENCE, AND

14:39:34 9     WE BOTH HAVE THE SAME EVIDENCE IN FRONT OF YOU.

14:39:36 10             I WOULD ECHO MUCH OF WHAT MR. JOHNSON

14:39:39 11    SAID.  I THINK THE KEY LIES IN THEIR IMPLICIT

14:39:43 12    DEFINITION OF "WINDOW" AS NECESSARILY A KIND OF A

14:39:45 13    MICROSOFT WINDOWS WINDOW, AND THERE IS A

14:39:48 14    DESCRIPTION OF A "WINDOW" IN THE SPECIFICATION THAT

14:39:50 15    MAKES IT CLEAR IT'S NOT THAT KIND OF A WINDOW AT

14:39:52 16    ALL.

14:39:52 17             SO I'M PERFECTLY HAPPY WITH THE ADOBE

14:39:55 18    EXAMPLE THAT HE GAVE -- THAT HE CALLED "SLIDING A

14:39:58 19    VIEW," BUT I THINK READING THE SPECIFICATION THAT'S

14:40:01 20    "SLIDING A WINDOW HAVING A VIEW."  THAT WAS TO GRAB

14:40:04 21    THE TEXT AND MOVE IT DOWN.  THAT'S THE WAY THE

14:40:07 22    PHONES WORK.

14:40:07 23             SO THAT'S IT IN A NUTSHELL.  "SCROLLING A

14:40:10 24    WINDOW" DOESN'T MEAN SCROLLING A MICROSOFT WINDOW.

14:40:13 25             THE COURT:  ALL RIGHT.  THANK YOU.  LET'S

                                                        169

14:40:15 1    GO THEN TO "THE FIRST WINDOW HAS BEEN DISPLAYED

14:40:15 2    INDEPENDENTLY FROM A POSITION OF A CURSOR ON THE

14:40:44 3    SCREEN."

14:40:44 4            MR. JACOBS:  THIS IS THE '891 PATENT.

14:40:47 5    AND SAMSUNG IS ADDING A LOT OF VERBIAGE TO PRETTY

14:40:51 6    FORWARD CLAIM LANGUAGE WITH ITS PROPOSED

14:40:53 7    DEFINITION.

14:40:53 8            THAT SHOULD MAKE ONE SUSPICIOUS TO BEGIN

14:40:56 9    WITH.

14:40:56 10           THE CLAIM LANGUAGE IS PRETTY SIMPLE.  THE

14:40:59 11   CLAIM LANGUAGE IS "THE FIRST WINDOW HAS BEEN

14:41:02 12   DISPLAYED INDEPENDENTLY FROM A POSITION OF A CURSOR

14:41:05 13   ON THE SCREEN."

14:41:07 14           AND SAMSUNG IS READING IN A HOST OF

14:41:10 15   ADDITIONAL LIMITATIONS INTO THAT CLAIM LANGUAGE.

14:41:13 16           SO FIRST THEY ARE LIMITING THE ICON TO AN

14:41:18 17   ICON THAT IS CONTROLLED BY A MOUSE, TRACK BALL, OR

14:41:22 18   TOUCH PAD.  I THINK THAT'S WHAT THEY'RE CALLING THE

14:41:26 19   CURSOR.

14:41:28 20           AND THEN THEY'RE REQUIRING THAT THE

14:41:30 21   CURSOR BE VISIBLE ON THE SCREEN WHEN THE FIRST

14:41:33 22   WINDOW IS DISPLAYED.

14:41:36 23           AND THEN THEY'RE -- THIS IS JUST KIND OF

14:41:39 24   A FUNNY CHOICE, THEIR USER MOVEMENT OF THE MOUSE

14:41:44 25   POINTER OR SIMILAR ICON DOES NOT AFFECT THE

                                                          170

14:41:47 1     LOCATION OF THE FIRST WINDOW.

14:41:48 2              AND WHAT THE LANGUAGE SAYS IS THAT IT'S

14:41:52 3     JUST INDEPENDENT OF THE POSITION OF A CURSOR.  IT'S

14:41:54 4     NOT DIRECTED TO MOVEMENT OF THE POSITION OF A

14:41:56 5     CURSOR.

14:41:57 6              THERE IS NO PARTICULAR --

14:42:01 7              THE COURT:  HOW DO YOU DEFINE CURSOR?

14:42:04 8              MR. JACOBS:  YES.  SO LET ME JUST GO

14:42:06 9     RIGHT TO THAT.

14:42:07 10             THE COURT:  OKAY.

14:42:09 11             MR. JACOBS:  WE PROTESTED ON TUESDAY THAT

14:42:12 12    SAMSUNG HAD A QUITE ARGUMENTATIVE TUTORIAL, AND ONE

14:42:14 13    OF THE THINGS THAT SAMSUNG ADVANCED AS A TECHNICAL

14:42:17 14    POINT IN THE CONTEXT OF A TUTORIAL WAS THAT A

14:42:20 15    CURSOR IS DIFFERENT FROM A CARET.  AND THEY JUST

14:42:23 16    PUT THAT TO YOU AS SOMETHING THAT WAS A FACT.

14:42:27 17             WE WENT TO WIKIPEDIA IN RESPONSE AND AT

14:42:33 18    SLIDE 86 WE'LL SHOW YOU WHAT WIKIPEDIA TELLS US.

14:42:37 19             MR. JOHNSON:  YOUR HONOR, WE TRIED TO

14:42:38 20    MEET AND CONFER WITH RESPECT TO THIS SLIDE OVER THE

14:42:41 21    LUNCH BREAK.

14:42:42 22             THIS IS A SLIDE AND A CITE TO A REFERENCE

14:42:44 23    THAT WE HAVE NEVER SEEN BEFORE, NOT IN THE JOINT

14:42:47 24    CLAIM CONSTRUCTION STATEMENT, NOT IN 4-2, NOT IN

14:42:50 25    ANY OF THEIR BRIEFS, WE HAVE NEVER SEEN IT UNTIL WE

                                                           171

14:42:53  1    RECEIVED A COPY OF THEIR SLIDES.

14:42:54  2            THE COURT:  THEN WE'RE NOT GOING TO SEE

14:42:56  3    IT.

14:42:56  4            GO AHEAD AND GO TO SOMETHING ELSE,

14:42:58  5    PLEASE.

14:42:59  6            MR. JACOBS:  I WOULD NOT LIMIT A CURSOR

14:43:00  7    TO AN OBJECT ON THE SCREEN THAT IS CONTROLLED BY A

14:43:04  8    KEYBOARD -- I'M SORRY -- A MOUSE, A TRACK BALL, OR

14:43:07  9    A TOUCH PAD.

14:43:09 10            IT CAN BE AN INDICATION OF POSITION ON

14:43:12 11    THE SCREEN THAT IS CONTROLLED BY ANY INPUT DEVICE,

14:43:17 12    AND IT IS NOT TO BE DISTINGUISHED FROM A CARET.

14:43:19 13            THE SPECIFICATION IS BROAD WHEN IT

14:43:22 14    DISCUSSES INPUT DEVICES, AND THERE IS NO EXPLICIT

14:43:28 15    LIMITATION OF THE CURSOR TO A PARTICULAR FORM OF

14:43:31 16    POSITIONING SIGNAL ON THE SCREEN.

14:43:33 17            THE COURT:  WHAT ABOUT AN INDICATOR TO

14:43:38 18    HELP A USER INTERACT IN THE DISPLAY?  SO SIMILAR

14:43:44 19    TO --

14:43:48 20            MR. JACOBS:  THAT WOULD BE CONSISTENT

14:43:48 21    WITH WHAT I -- I BELIEVE THAT'S A SATISFACTORY

14:43:49 22    DEFINITION, YOUR HONOR.

14:43:58 23            AN INDICATOR ON THE SCREEN, POSITIONAL

14:43:59 24    INDICATOR ON THE SCREEN BECAUSE THERE ARE A LOT OF

14:44:00 25    INDICATORS ON THE SCREEN THAT HELP USERS INTERACT

                                                          172

14:44:02  1    WITH THE DISPLAY, AND I WOULD THINK THAT WHAT A

14:44:05  2    CURSOR DOES IS TELL YOU WHERE YOU ARE WHEN YOU'RE

14:44:08  3    INPUTTING.

14:44:12  4            THE COURT:  WHAT SHOULD I USE AGAIN?

14:44:14  5            MR. JACOBS:  A POSITIONAL INDICATOR ON

14:44:16  6    THE SCREEN.

14:44:17  7            AND I THINK AOKI IS SAMSUNG'S ARGUMENT,

14:44:25  8    REALLY, YOUR HONOR, THAT SOMETHING HAPPENED IN THE

14:44:28  9    AOKI BACK AND FORTH THAT LIMITS THE SCOPE OF THIS

14:44:31 10    CLAIM IN THE WAY THAT THEY'RE DESCRIBING.

14:44:33 11            AND WE HAVE SEEN THIS PHENOMENON BEFORE

14:44:36 12    WHERE SAMSUNG TRIES TO INTERPRET WHAT THEY SAID

14:44:39 13    INTO A LIMITATION.

14:44:40 14            WE HAVE THE LAW ON CLEAR DISCLAIMER, AND

14:44:42 15    WE ALSO HAVE THE VERY CAREFULLY CHOSEN WORDS OF THE

14:44:46 16    PATENTEE, AND SO I'LL JUMP RIGHT TO THAT IN SLIDE

14:44:50 17    88.

14:44:51 18            THE COURT:  CAN I ASK YOU AGAIN?

14:44:54 19            MR. JACOBS:  SURE.

14:44:55 20            THE COURT:  SO YOU DON'T LIKE AN

14:44:55 21    INDICATOR TO HELP A USER TO INTERACT WITH A

14:44:56 22    DISPLAY; YOU WANT THE POSITIONAL INDICATOR ON THE

14:44:59 23    SCREEN?

14:44:59 24            MR. JACOBS:  FOR A CURSOR?

14:45:00 25            THE COURT:  YEAH.

173

14:45:01  1          MR. JACOBS:  LET ME JUST DOUBLE-CHECK

14:45:03  2    BECAUSE WE'RE DOING THIS ON THE FLY.

14:45:22  3          (PAUSE IN PROCEEDINGS.)

14:45:22  4          MR. JACOBS:  I THINK THAT'S FINE, YOUR

14:45:23  5    HONOR.  IT MAY ACTUALLY HAVE SOME WORDS THAT ARE

14:45:26  6    UNNECESSARY.  IT'S REALLY A POSITIONAL INDICATOR

14:45:29  7    AND A SCREEN ASSOCIATED WITH A USER INPUT OR

14:45:34  8    ASSOCIATED WITH A USER INTERACTION.

14:45:36  9          BUT WE'RE GETTING CLOSE.  I DON'T MEAN TO

14:45:39 10    QUIBBLE, IT'S JUST THAT AS WE DO CLAIM

14:45:42 11    CONSTRUCTION, THE CONSTRUCTION ITSELF STARTS TO GET

14:45:45 12    ARGUED ABOUT AND I TRY TO AVOID THAT.

14:45:47 13          SO AOKI, THIS IS THE COMPLETE DESCRIPTION

14:45:51 14    AND COMPLETE PASSAGE OF WHAT WAS SAID IN THE -- BY

14:45:58 15    THE APPLICANT.

14:45:59 16          SO FIRST AOKI WAS CHARACTERIZED AND AOKI

14:46:02 17    DISCLOSES DISPLAYING AN IMAGE MAP IN A POP-UP

14:46:07 18    WINDOW THAT PROVIDES TEXTURAL DIRECTIONAL TIPS TO

14:46:10 19    GUIDE A USER TO A DESIRED AREA ON THE IMAGE MAP.

14:46:14 20          IN PARTICULAR, AOKI DISCLOSES THAT WHEN

14:46:16 21    THE USER GESTURE POSITIONS THE STYLUS CONTACT WITH

14:46:19 22    THE DISPLAYED IMAGE MAP, DIRECTIONAL TIPS IN A

14:46:23 23    POP-UP TEXT WINDOW COULD APPEAR.

14:46:26 24          SO WHAT IS BEING DESCRIBED HERE IS THESE

14:46:29 25    BUBBLES THAT APPEARED WHEN THE STYLUS TOUCHED THE

                                                        174

14:46:31 1    SCREEN, BUT THEY APPEARED AT THE LOCATION OF THE

14:46:33 2    STYLUS.

14:46:33 3          IN PARTICULAR, AOKI DISCLOSES THAT THE

14:46:36 4    POP-UP WINDOW INDICATES TO A USER THAT THE ACTIVE

14:46:40 5    AREA IS UP AND TO THE RIGHT OF THE POSITION AT

14:46:43 6    WHICH THE STYLUS WAS PLACED WITHIN THE DISPLAYED

14:46:45 7    IMAGE MAP BY THE USER.

14:46:47 8          AND IN CONTRAST, AND THE POINT IS THAT

14:46:49 9    THIS IS ALL THAT WAS SAID AND SO WE SHOULDN'T GO

14:46:52 10   BEYOND WHAT WAS SAID.

14:46:53 11         IN CONTRAST, AMENDED CLAIM 1 REFERS TO

14:46:56 12   DISPLAYING THE FIRST WINDOW INDEPENDENTLY FROM A

14:46:59 13   POSITION OF A CURSOR ON THE SCREEN.

14:47:01 14         AOKI FAILS TO DISCLOSE CLOSING THE FIRST

14:47:03 15   WINDOW IN RESPONSE TO A DETERMINATION THAT THE

14:47:06 16   TIMER EXPIRED, AND THIS IS THE CLOSING POINT, AND

14:47:09 17   THEN WHEREIN THE FIRST WINDOW HAS BEEN DISPLAYED

14:47:09 18   INDEPENDENTLY FROM A POSITION OF THE CURSOR ON THE

14:47:09 19   SCREEN AS RECITED IN CLAIM 1.

14:47:18 20         THAT IS ALL THE APPLICANT SAID.  AND THE

14:47:19 21   EXAMINER ACCEPTED THAT AND THE PATENT ISSUED.

14:47:22 22         NOTHING WAS SAID ABOUT WHAT THAT MEANT IN

14:47:24 23   TERMS OF WHAT WAS REQUIRED AND WHAT WAS LIMITED.

14:47:27 24         AS WE SAID HERE IS THE LANGUAGE AND IT

14:47:29 25   DISTINGUISHES OVER AOKI.

175

14:47:32  1          SAMSUNG WANTS TO KIND OF REVERSE ENGINEER

14:47:34  2     OF WHAT WAS IN THE THOUGHTS OF THE APPLICANT AND

14:47:37  3     THE EXAMINER AND THAT WOULD BE INAPPROPRIATE IN

14:47:39  4     LIGHT OF THE LAW ON CLEAR DISCLAIMER.

14:47:47  5          THE COURT:  WHAT DO YOU THINK ABOUT "USER

14:47:48  6     INPUT DEVICE" VERSUS "CURSOR CONTROL DEVICE"?

14:47:56  7          ARE THOSE DIFFERENT?  ARE THOSE THE SAME

14:47:59  8     THING?

14:48:11  9          MR. JACOBS:  THE CLAIM LANGUAGE SAYS,

14:48:13 10     "USER INPUT DEVICE" AND "A CURSOR CONTROL DEVICE."

14:48:18 11     I THINK THE PROBLEM WITH "CURSOR CONTROL DEVICE" IS

14:48:21 12     THAT A USER INPUT DEVICE MAY BE BROADER THAN A

14:48:25 13     "CURSOR CONTROL DEVICE."

14:48:26 14          SO AS I THINK ABOUT HOW YOU CAN CONTROL A

14:48:29 15     CURSOR ON THE SCREEN, YOU CAN USE DEVICES THAT

14:48:31 16     MIGHT NOT BE THOUGHT OF AS CURSOR CONTROL DEVICES

14:48:34 17     BUT HAVE CURSOR CONTROL CAPABILITIES.

14:48:39 18          THE COURT:  BUT DOESN'T IT SEEM LIKE THE

14:48:43 19     SPECIFICATION WAS ASSUMING THAT THE CURSOR WOULD BE

14:48:44 20     CONTROLLED BY A CURSOR CONTROLLED DEVICE, A MOUSE,

14:48:48 21     OR TRACK BALL OR TOUCH PAD?

14:48:54 22          MR. JACOBS:  THE SPECIFICATION USES THOSE

14:48:55 23     AS EXEMPLARY.  SO, OF COURSE, THE CONTROL FOR THE

14:48:59 24     CURSOR HAS TO COME FROM THE DEVICE THAT HAS CURSOR

14:49:02 25     CONTROL CAPABILITIES.

                                                          176

14:49:03 1          WHAT I THINK WE SHOULD SEEK TO AVOID IS A

14:49:06 2    FIGHT ABOUT WHETHER THE PARTICULAR DEVICE AND THE

14:49:08 3    ACCUSED DEVICE IS A -- IS THOUGHT OF AS A CURSOR

14:49:11 4    CONTROLLED DEVICE, EVEN IF IT HAS CURSOR CONTROL

14:49:14 5    CAPABILITIES.

14:49:15 6          THAT'S THE PROBLEM WITH THAT PROPOSED

14:49:17 7    LANGUAGE.

14:49:20 8          IS A FINGER A CURSOR CONTROL DEVICE?  IT

14:49:23 9    CAN CONTROL A CURSOR, BUT DO YOU THINK OF A FINGER

14:49:26 10   AS A CURSOR CONTROL DEVICE?  DO YOU THINK OF A

14:49:29 11   TOUCHSCREEN AS A CURSOR CONTROL DEVICE?  IT CAN

14:49:32 12   CONTROL A CURSOR.

14:49:33 13         THE FIRST THING THAT COMES TO MIND ABOUT

14:49:37 14   THOSE IS NOT IT'S A CURSOR CONTROL DEVICE.  THE

14:49:39 15   FIRST THING THAT COMES TO MIND IS A BROAD USER

14:49:44 16   INPUT DEVICE.

14:49:50 17         I HAVE NOTHING FURTHER, YOUR HONOR.

14:49:51 18         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

14:49:54 19         LET ME ASK MR. JOHNSON, YOU RELY A LOT ON

14:50:07 20   AOKI BUT THERE WAS NO CURSOR THERE WITH A STYLUS.

14:50:10 21   WHY IS SO MUCH DEPENDING ON?

14:50:12 22         MR. JOHNSON:  THAT'S THE POINT, YOUR

14:50:14 23   HONOR, AND I'LL COME BACK TO CURSOR CONTROL IN A

14:50:16 24   SECOND.  BUT IF I CAN TURN JUST TO TALK ABOUT AOKI?

14:50:20 25         THE COURT:  OKAY.

                                                          177

14:50:21  1        MR. JOHNSON:  IF I COULD TURN TO PLEASE

14:50:23  2   SLIDE 10.

14:50:29  3        SO WHAT IS GOING ON HERE REALLY IS THAT

14:50:31  4   APPLE IS TRYING TO DEFINE CURSOR TO INCLUDE A

14:50:35  5   BLINKING CARET.  AND THAT'S INCONSISTENT WITH WHAT

14:50:36  6   HAPPENED DURING THE FILE HISTORY AND A PERSON OF

14:50:37  7   ORDINARY SKILL WOULD UNDERSTAND THAT.

14:50:39  8        WHEN THE CLAIMS WERE ORIGINALLY FILED,

14:50:41  9   THEY DID NOT INCLUDE A FIRST WINDOW AS BEING

14:50:44 10   DISPLAYED INDEPENDENTLY FROM A POSITION OF A CURSOR

14:50:47 11   ON THE SCREEN.

14:50:48 12        WHAT WE SEE ON SLIDE 10 IS CLAIM 1 AS IT

14:50:51 13   WAS ORIGINALLY FILED AND THAT LIMITATION DOES NOT

14:50:54 14   APPEAR IN THAT CLAIM.

14:50:58 15        AOKI DESCRIBES USING A STYLUS, NOT A

14:51:02 16   CURSOR, A STYLUS, TO ULTIMATELY SELECT HYPERLINK

14:51:06 17   TARGETS OR ACTIVE AREAS WITHIN A DISPLAYED IMAGE.

14:51:09 18        AND RIGHT UPFRONT IN THE ABSTRACT AS

14:51:10 19   YOUR HONOR POINTS OUT, IT SAYS, "A FEEDBACK

14:51:12 20   MECHANISM USEABLE WITH GRAPHICAL USER INTERFACE

14:51:16 21   SYSTEMS THAT DO NOT HAVE A CURSOR IMPROVES THE

14:51:18 22   USEFULNESS OF SUCH GRAPHICAL USER INTERFACES."

14:51:26 23        WHAT HAPPENED NEXT WERE THE CLAIMS WERE

14:51:27 24   REJECTED IN LIGHT OF AOKI, 102, AND AS ANTICIPATED.

14:51:32 25        AND WHAT THE OFFICE ACTION SAYS IS THAT

                                                        178

14:51:35 1    AOKI TEACHES DISPLAYING A FIRST WINDOW, HERE 115,

14:51:40 2    DOWN HERE IN THE SMALLER BOX, IN RESPONSE TO

14:51:43 3    RECEIVING A FIRST INPUT FROM A USER INPUT DEVICE.

14:51:51 4    AS A RESULT OF THE USER GESTURE OF TOUCHING THE

14:51:54 5    STYLUS 102 TO THE DISPLAYED IMAGE MAP 103 DISPLAYED

14:51:59 6    ON DISPLAY 104 OF THE DIGITAL PROCESSING SYSTEM

14:52:02 7    WHICH IS CAPABLE OF DISPLAYING AT LEAST A PORTION

14:52:04 8    OF A SECOND WINDOW.

14:52:05 9         SO AOKI WAS ANTICIPATED AND THE

14:52:08 10   APPLICANTS HAD NO CHOICE BUT TO AMEND THE CLAIMS TO

14:52:12 11   REQUIRE A CURSOR AS OPPOSED TO AOKI'S STYLUS OR

14:52:16 12   NON-CURSOR SYSTEM.

14:52:16 13        THEY PUT THE LIMITATION IN THAT THESE

14:52:21 14   CLAIMS ARE ONLY GOING TO READ ON DEVICES THAT HAVE

14:52:23 15   CURSORS.

14:52:24 16        AND THAT THE POP-UP WINDOW IS ULTIMATELY

14:52:27 17   DISPLAYED INDEPENDENTLY FROM A POSITION OF THE

14:52:30 18   CURSOR ON THE SCREEN.

14:52:31 19        WHAT WAS GOING ON HERE WAS THAT

14:52:35 20   ULTIMATELY IF THE CURSOR INCLUDED A CARET OR A

14:52:40 21   STYLUS, WHICH IS, I THINK, A USER INPUT DEVICE EVEN

14:52:45 22   UNDER MR. JACOB'S VIEW, THESE CLAIMS WOULD NOT HAVE

14:52:48 23   BEEN ALLOWED.  THE EXAMINER WOULD NOT HAVE ALLOWED

14:52:51 24   THESE CLAIMS.

14:52:52 25        THE REASON HE ALLOWED THEM ULTIMATELY WAS

179

14:52:55  1    BECAUSE APPLE DISTINGUISHED OVER AOKI BY INSERTING

14:52:59  2    THIS NOTION THAT YOU HAD TO HAVE A CURSOR AND THAT

14:53:01  3    THE CURSOR WAS GOING TO BE DISPLAYED INDEPENDENTLY

14:53:04  4    FROM THE POSITION OF THE CURSOR -- SORRY, THAT

14:53:07  5    THE -- LET ME GO BACK TO THE CLAIM LANGUAGE.

14:53:10  6            THE COURT:  WHY DOES THE CURSOR HAVE TO

14:53:12  7    BE VISIBLE ON THE SCREEN?

14:53:13  8            MR. JOHNSON:  BECAUSE THAT'S WHAT THE

14:53:15  9    CLAIM LANGUAGE SAYS, AND THAT'S WHAT A PERSON OF

14:53:17 10    ORDINARY SKILL WOULD UNDERSTAND PARTICULARLY IN

14:53:20 11    LIGHT OF WHAT WAS DONE WITH RESPECT TO AOKI.

14:53:22 12            WE KNOW FROM AOKI THERE'S NO CURSOR.

14:53:27 13            SO THE WAY THEY GOT AROUND AOKI WAS TO

14:53:30 14    REQUIRE THAT THERE BE A CURSOR AND THAT ULTIMATELY

14:53:36 15    THE WINDOW IS DISPLAYED INDEPENDENTLY FROM THE

14:53:39 16    POSITION OF THE CURSOR ON THE SCREEN.

14:53:41 17            IT SAYS, "OF A CURSOR ON THE SCREEN."

14:53:43 18            THE COURT:  HOW DO YOU DEFINE "CURSOR"?

14:53:48 19            MR. JOHNSON:  WE LOOKED AND WE FOUND

14:53:49 20    REFERENCES IN THE SPEC TO A MOUSE, POINTER OR A

14:53:53 21    SIMILAR ICON THAT IS CONTROLLED BY A MOUSE, TRACK

14:53:57 22    BALL OR TOUCH PAD.

14:53:58 23            AND I THINK YOUR HONOR REFERRED TO A

14:54:00 24    CURSOR CONTROL DEVICE.  LET ME JUST GO BACK TO

14:54:06 25    SLIDE 7.

                                                              180

14:54:06 1          THE COURT:  AREN'T THOSE JUST EXEMPLARY?

14:54:10 2     IT DOESN'T SAY THAT IT HAS TO BE A MOUSE POINTER.

14:54:14 3          MR. JOHNSON:  BUT WHAT THESE -- YOUR

14:54:16 4     HONOR IS RIGHT IN THE SENSE THAT IT SAYS E.G.  BUT

14:54:19 5     WHAT IS IMPORTANT HERE IS THAT A PERSON OF ORDINARY

14:54:21 6     SKILL IN THE ART READING THIS PATENT AND SEEING THE

14:54:25 7     DIFFERENCES BETWEEN INPUT DEVICES AND CURSOR

14:54:29 8     CONTROL DEVICES WOULD UNDERSTAND THAT KEYBOARDS

14:54:33 9     WERE DEFINED AS INPUT DEVICES THAT WERE NOT DEFINED

14:54:36 10    AS CURSOR CONTROL DEVICES.

14:54:38 11         WHEN APPLE WANTED TO USE KEYBOARD, THEY

14:54:41 12    DID SO IN THE CONTEXT OF A USER INPUT DEVICE.

14:54:44 13         AND THAT'S WHAT WE SEE ON THE LEFT-HAND

14:54:47 14    SIDE.

14:54:47 15         COLUMN 1, LINE 28, "USER INPUT DEVICE,

14:54:51 16    E.G., A KEYBOARD AND A MOUSE."

14:54:55 17         COLUMN 2, LINES 45 TO 46, "DISPLAYING A

14:54:58 18    FIRST WINDOW IN RESPONSE TO RECEIVING A FIRST INPUT

14:55:02 19    FROM A USER INPUT DEVICES, E.G. KEYBOARD, MOUSE,"

14:55:05 20    ET CETERA.

14:55:06 21         COLUMN 8, 29 THROUGH 31, "USER INPUT

14:55:11 22    DEVICES, E.G., A KEYBOARD."

14:55:13 23         COMPARE THAT TO WHEN THE PATENT IS

14:55:15 24    TALKING ABOUT CURSOR CONTROL DEVICES AND IN EACH OF

14:55:17 25    THESE INSTANCES LISTED ON SLIDE 7, COLUMN 1, COLUMN

181

14:55:22 1    9, COLUMN 1, COLUMN 2 AGAIN WE SEE "CURSOR CONTROL

14:55:26 2    DEVICE."  KEYPAD -- KEYBOARD DOES NOT APPEAR IN ANY

14:55:29 3    OF THESE.

14:55:29 4            SO A PERSON OF ORDINARY SKILL IN THE ART

14:55:32 5    READING THE CLAIM LANGUAGE, READING THE

14:55:34 6    SPECIFICATION, AND READING WHAT HAPPENED IN THE

14:55:37 7    PROSECUTION HISTORY WOULD UNDERSTAND THAT A CURSOR

14:55:41 8    IS REQUIRED AND THAT IT BE DISPLAYED INDEPENDENTLY.

14:55:47 9            AND THOSE ARE THE TWO ISSUES.

14:55:49 10           AND APPLE CAN POINT TO THE LANGUAGE OF

14:55:54 11   OUR CONSTRUCTION AND MAY HAVE QUIBBLES WITH RESPECT

14:55:56 12   TO SOME OF THE LANGUAGE THAT IS USED BUT ULTIMATELY

14:56:00 13   ON THE TWO ISSUES, DOES A CURSOR INCLUDE A CARET?

14:56:04 14   THE ANSWER IS, NO, IT DOESN'T INCLUDE A CARET.

14:56:06 15           IS THE CURSOR DISPLAYED?  YES, IT'S

14:56:09 16   DISPLAYED.  THE PROSECUTION HISTORY, THE SPEC, AND

14:56:12 17   MOST IMPORTANTLY THE CLAIM LANGUAGE SAYS THAT IT'S

14:56:14 18   DISPLAYED.

14:56:18 19           THE COURT:  WHAT ABOUT YOUR THIRD

14:56:20 20   LIMITATION?

14:56:25 21           MR. JOHNSON:  MOVEMENT OF THE MOUSE,

14:56:27 22   POINTER OR SIMILAR ICON DOES NOT AFFECT THE

14:56:31 23   LOCATION OF THE FIRST WINDOW.

14:56:31 24           THE COURT:  WHERE DID YOU GET THAT FROM?

14:56:33 25           MR. JOHNSON:  WE WERE TRYING TO EXPLAIN

                                                          182

14:56:35 1    WHAT "INDEPENDENTLY" MEANT, BUT AS I MENTIONED, THE

14:56:40 2    TWO REAL ISSUES WITH RESPECT TO THIS PATENT ARE

14:56:41 3    DOES A CURSOR INCLUDE A CARET AND IS THE CURSOR

14:56:45 4    DISPLAYED.

14:56:45 5         THE COURT:  SO YOU'RE LESS CONCERNED

14:56:48 6    ABOUT THAT THIRD RESTRICTION?

14:56:49 7         MR. JOHNSON:  THAT'S CORRECT.  IT'S

14:56:56 8    IMPORTANT IN THE CLAIM LANGUAGE AND INDEPENDENTLY

14:56:59 9    IS OBVIOUSLY A REQUIREMENT OF THE CLAIMS.

14:57:00 10        SO I DON'T WANT TO SAY IT'S NOT

14:57:03 11   IMPORTANT, BUT THE TWO ISSUES WITH RESPECT TO THIS

14:57:06 12   PARTICULAR LIMITATION ARE DOES A CURSOR INCLUDE A

14:57:08 13   CARET AND IS THE CURSOR DISPLAYED.

14:57:12 14        THE COURT:  OKAY.  ALL RIGHT.  ARE WE

14:57:13 15   DONE WITH THIS TERM?

14:57:14 16        MR. JACOBS:  BRIEFLY, YOUR HONOR, JUST TO

14:57:16 17   HIGHLIGHT ONE CONTRADICTION IN SAMSUNG'S ARGUMENT.

14:57:19 18        THE CLAIM LANGUAGE, OF COURSE, IS "USER

14:57:21 19   INPUT DEVICE," NOT "CURSOR CONTROL DEVICE."

14:57:25 20        SO IF IT'S "USER INPUT DEVICE," THEN

14:57:27 21   THERE'S KIND OF AN INHERENT CONTRADICTION.

14:57:30 22        SPECIFICALLY IF YOU GO TO CLAIM 19, WHICH

14:57:32 23   IS A DEPENDENT CLAIM, IT CLAIMS "WHEREIN THE USER

14:57:35 24   INPUT DEVICE IS ONE OF A KEYBOARD."

14:57:37 25        SO A KEYBOARD, ACCORDING TO SAMSUNG,

183

14:57:41 1    CANNOT CONTROL A CURSOR.  A CURSOR CAN ONLY BE

14:57:44 2    CONTROLLED BY A CARET -- I'M SORRY -- A KEYBOARD

14:57:47 3    CAN ONLY BE CONTROLLED BY A CARET.  A CARET IS

14:57:50 4    DIFFERENT FROM A CURSOR.  THROUGH THAT STEP OF

14:57:51 5    LOGIC WE RUN INTO A REAL CONTRADICTION IN THE

14:57:54 6    CLAIM.

14:57:54 7            I THINK THE RIGHT ANSWER IS THAT A CURSOR

14:57:56 8    IS NOT LIMITED, IT'S NOT DISTINGUISHED FROM A

14:57:58 9    CARET, AND A USER INPUT DEVICE IS ANY USER INPUT

14:58:03 10   DEVICE AND THE REST -- AND IN CLAIM 1 AND IN THE

14:58:06 11   SPECIFICATION USER INPUT DEVICES AND THE CURSOR

14:58:10 12   CONTROL DEVICES ARE EXEMPLARY.

14:58:20 13           THE COURT:  THANK YOU.  LET'S GO TO THE

14:58:22 14   LAST TERM, PLEASE.

14:58:36 15           AND I'LL JUST SAY I THINK THE FOCUS

14:58:38 16   SHOULD BE ON WHETHER IT'S OPERATING SYSTEM

14:58:44 17   INDEPENDENT OR OPERATING SYSTEM DEPENDENT BECAUSE I

14:58:47 18   THINK WITH REGARDS TO WHETHER IT RUNS WITHIN A

14:58:51 19   PROGRAM, I THINK IT RUNS WITHIN AN APPLICATION

14:58:53 20   MODULE.

14:58:55 21           MR. JOHNSON:  YOUR HONOR, WE AGREE THAT

14:58:57 22   THAT IS THE ISSUE.  IS APPLET LIMITED TO AN

14:59:00 23   OPERATING SYSTEM INDEPENDENT COMPUTER PROGRAM?  THE

14:59:02 24   ANSWER IS NO.

14:59:02 25           THE COURT:  WELL, YOU SAID DESIGNED

                                                          184

14:59:06  1    WITHIN ANOTHER PROGRAM, ARE YOU NOW AGREEING THAT

14:59:14  2    WITHIN AN APPLICATION MODULE IS OKAY?

14:59:15  3              MR. JOHNSON:  WELL, I THINK OURS TRACKS

14:59:16  4    THE LANGUAGE MORE CLEARLY, BUT I DON'T HAVE A MAJOR

14:59:21  5    DISAGREEMENT WITH RESPECT TO APPLICATION MODULE

14:59:23  6    VERSUS PROGRAM.

14:59:23  7              THE COURT:  I THINK THE LANGUAGE ACTUALLY

14:59:25  8    IS WITHIN AN APPLICATION MODULE AND NOT WITHIN

14:59:27  9    ANOTHER PROGRAM.  BUT THAT'S FINE.

14:59:30 10              MR. JOHNSON:  BUT YOUR HONOR IS CORRECT

14:59:31 11    THAT THE ISSUE HERE IS OPERATING SYSTEM

14:59:34 12    INDEPENDENCE.

14:59:35 13              AND I HEARD COUNSEL FOR APPLE THROUGHOUT

14:59:39 14    THE COURSE OF THE DAY ARGUE THAT THE PREVAILING LAW

14:59:43 15    IS POWERFULLY AGAINST IMPORTING LIMITATIONS INTO

14:59:47 16    CLAIM TERMS.

14:59:48 17              THE CLAIM LANGUAGE HERE SAYS APPLE.

14:59:54 18    THERE'S NOTHING IN THE CLAIM LANGUAGE THAT SAYS

14:59:56 19    OPERATING SYSTEM INDEPENDENT/DEPENDENT.  THERE'S NO

15:00:01 20    LIMITATION THAT IS INCLUDED WITHIN APPLET IN THE

15:00:04 21    CLAIM LANGUAGE.

15:00:05 22              AND WHEN WE ASKED APPLE'S EXPERT DURING

15:00:08 23    HIS DEPOSITION, DR. GIVARGIS, WHETHER THE CLAIM

15:00:12 24    LANGUAGE HAD ANY LIMITATION OF OPERATING SYSTEM

15:00:12 25    INDEPENDENCE, HE SAID,

                                                          185

15:00:19  1                "QUESTION:  LET'S TAKE A LOOK AT THE

15:00:20  2        CLAIM LANGUAGE.  FOR EXAMPLE, CLAIM 1 IN COLUMN 7,

15:00:23  3        DO YOU SEE THAT.

15:00:24  4                "YES.

15:00:25  5                "THE RELEVANT LIMITATION IS GENERATING A

15:00:27  6        MUSIC BACKGROUND PLAY OBJECT, WHEREIN THE MUSIC

15:00:30  7        BACKGROUND PLAY OBJECT INCLUDES AN APPLICATION

15:00:32  8        MODULE INCLUDING AT LEAST ONE APPLET.

15:00:34  9                "IS THERE ANY MENTION OF OPERATING SYSTEM

15:00:39 10        INDEPENDENCE HERE?

15:00:40 11                "NO."

15:00:40 12                THE COURT:  LET ME ASK A QUESTION, WHY

15:00:42 13        DID YOU USE "WITHIN ANOTHER PROGRAM" INSTEAD OF

15:00:42 14        "WITHIN AN APPLICATION MODULE"?

15:00:43 15                DOES THAT HAVE SOME IMPLICATION ON

15:00:47 16        WHETHER IT'S OPERATING DEPENDENT OR INDEPENDENT?

15:00:54 17                MR. JOHNSON:  WE UNDERSTOOD IT TO MEAN TO

15:00:57 18        TALK ABOUT TO RUN WITHIN ANOTHER PROGRAM, IT'S

15:00:59 19        BASICALLY SYNONYMOUS WITH APPLICATION MODULE.  BUT

15:01:03 20        PROGRAM -- DURING THE MEET AND CONFER PROCESS, WE

15:01:06 21        UNDERSTOOD APPLE TO TRY TO IMPORT ADDITIONAL

15:01:10 22        LIMITATIONS WITH RESPECT TO APPLICATION MODULE.

15:01:12 23                AND I THINK WE'LL HEAR A LITTLE BIT ABOUT

15:01:14 24        THAT ABOUT WHAT THE DISTINCTION IS IN THEIR VIEW.

15:01:16 25        AND FROM OUR VIEW IN THE PLAIN AND ORDINARY MEANING

                                                              186

15:01:19 1      OF PROGRAM VERSUS APPLICATION MODULE, I THINK

15:01:22 2      PEOPLE OF ORDINARY SKILL IN THE ART WOULD

15:01:24 3      UNDERSTAND THE TWO TO BE SYNONYMOUS.

15:01:26 4              THE COURT:  AND IT DOESN'T HAVE

15:01:28 5      IMPLICATIONS FOR WHETHER ITS OPERATING SYSTEM

15:01:32 6      INDEPENDENT OR DEPENDENT?

15:01:34 7              MR. JOHNSON:  NOT FROM OUR STANDPOINT.

15:01:35 8      WE REALLY BELIEVE FIRMLY THAT APPLET IN AND OF

15:01:39 9      ITSELF AS CONSTRUED IN BOTH THE CLAIMS AND THE

15:01:41 10     SPECIFICATION AND THE PROSECUTION HISTORY, AGAIN,

15:01:43 11     IS NOT LIMITED TO OPERATING SYSTEM INDEPENDENT,

15:01:45 12     IT'S NOT LIMITED TO OPERATING SYSTEM DEPENDENT.

15:01:49 13             IT WILL COVER, AND I THINK WE'LL SEE AS

15:01:51 14     WE SEE FROM THE INTRINSIC EVIDENCE, AND ALSO FROM

15:01:53 15     APPLE'S OWN EXPERT'S ADMISSIONS, HE ADMITTED THAT

15:01:59 16     THERE ARE APPLETS THAT ARE OPERATING SYSTEM

15:02:01 17     INDEPENDENT AND DEPENDENT.

15:02:02 18             THE COURT:  I'M STILL NOT CLEAR HOW THIS

15:02:05 19     APPLET FUNCTIONS WITH REGARD TO ALLOWING THE MUSIC

15:02:09 20     TO STILL PLAY IN THE BACKGROUND WHILE YOU'RE DOING

15:02:11 21     OTHER THINGS.

15:02:12 22             MR. JOHNSON:  JUST AS A REAL WORLD

15:02:14 23     EXAMPLE, IT'S THE IDEA OF BEING TO, FOR EXAMPLE, TO

15:02:18 24     LISTEN TO MUSIC AND YOU WANT TO RECEIVE AN E-MAIL

15:02:20 25     AT THE SAME TIME OR YOU WANT TO SEND AN E-MAIL AT

187

15:02:22  1    THE SAME TIME.

15:02:23  2           THE APPLET COULD, FOR EXAMPLE, ON THE

15:02:26  3    MUSIC SIDE, WHILE YOU'RE LISTENING TO MUSIC, THE

15:02:30  4    APPLET COULD SHOW YOU THE DIFFERENT ALBUM COVERS OR

15:02:34  5    THE LIST OF SONGS OR THE TIME LEFT ON THE SONG, HOW

15:02:37  6    MUCH TIME, HOW MUCH OF THE SONG HAS PLAYED AND HOW

15:02:40  7    MUCH OF THE SONG IS REMAINING.

15:02:41  8           THERE ARE DIFFERENT APPLETS, DIFFERENT

15:02:44  9    SMALL PROGRAMS THAT RUN WITHIN OTHER PROGRAMS AND

15:02:48 10    BY "SMALL" IT'S MEANT IN A RELATIVE SENSE, YOU

15:02:51 11    KNOW, COMPARATIVELY SPEAKING.

15:02:54 12           I KNOW APPLE TAKES ISSUE WITH RESPECT TO

15:02:56 13    THE DEFINITION OF "SMALL."  THE REAL ISSUE HERE IS

15:02:59 14    OPERATING SYSTEM INDEPENDENT VERSUS DEPENDENT.  AND

15:03:01 15    "SMALL" IS INTENDED IN A RELATIVE SENSE AND THAT'S

15:03:04 16    WHERE THE WORD "APPLET" ULTIMATELY CAME FROM.

15:03:06 17           THE COURT:  LET ME ASK YOU, WITH A LOT OF

15:03:08 18    THE DEFINITIONS, THE DICTIONARY DEFINITIONS THAT

15:03:12 19    WERE SUBMITTED WITH MR. COLE'S DECLARATION, THEY

15:03:18 20    SAID THAT A LIMITATION THAT THE PROGRAM PERFORM ONE

15:03:23 21    OR MORE SIMPLE TASKS, WHICH SEEMS CONSISTENT WITH

15:03:27 22    WHAT MR. COLE SAID AT THE TUTORIAL, THAT THE APPLET

15:03:30 23    FUNCTION CAN BE AN INCREMENTAL ADDITIONAL ACTIVITY.

15:03:36 24           SO WHY DIDN'T YOU USE THAT LANGUAGE

15:03:38 25    INSTEAD OF SMALL?

                                                              188

15:03:40  1          MR. JOHNSON:  WELL, FRANKLY, WHEN WE

15:03:42  2     STARTED DOWN THIS PROCESS, RIGHT, WHEN WE DID OUR

15:03:45  3     ORIGINAL DISCLOSURES BACK IN OCTOBER, WE THOUGHT

15:03:49  4     "SMALL" WAS PRETTY STRAIGHTFORWARD, AND IT

15:03:51  5     COMPORTED WITH THE ULTIMATE DEFINITION OF APPLET

15:03:54  6     THAT WE'LL SEE IN THE WILEY DICTIONARY, FOR

15:03:58  7     EXAMPLE, IF YOU TURN TO SLIDE 16, "A SMALL

15:04:04  8     APPLICATION DESIGNER TO RUN WITHIN ANOTHER

15:04:09  9     PROGRAM."

15:04:09 10          THE COURT:  MR. COLE GAVE TWO DIFFERENT

15:04:13 11     DEFINITIONS FOR "SMALL" IN THE TUTORIAL.  ONE WAS

15:04:15 12     AN INCREMENTAL DEFINITION, AND I FORGET WHAT THE

15:04:19 13     OTHER ONE WAS.

15:04:20 14          SMALL IS PRETTY --

15:04:22 15          MR. JOHNSON:  I THINK OF SMALL IN TERMS

15:04:24 16     OF FEATURES.

15:04:25 17          THE COURT:  SO WHAT DOES THAT MEAN "A

15:04:27 18     SMALL FEATURE"?

15:04:29 19          MR. JOHNSON:  SO I WANT TO PLAY MUSIC.

15:04:30 20     THE OVERALL FEATURE IS PLAYING MUSIC.

15:04:32 21          IF I THEN WANT TO BE ABLE TO DO THINGS

15:04:34 22     ASSOCIATED WITH THE MUSIC, LOOK AT THE ALBUM AND

15:04:37 23     LOOK AT THE LIST OF SONGS IN A PARTICULAR ALBUM.

15:04:41 24          IF I WANT TO SEE A PICTURE OF THE ALBUM

15:04:43 25     OR IF I WANT TO DO OTHER SMALL APPLICATIONS

                                                        189

15:04:48  1    ASSOCIATED WITH THAT.  AND IT DOESN'T ALWAYS HAVE

15:04:50  2    TO NECESSARILY BE TIED SPECIFICALLY TO THE MUSIC,

15:04:56  3    BUT SMALL MEANS IN A RELATIVE SENSE COMPARED TO,

15:04:59  4    AND I THINK WE'RE TALKING ABOUT THE FEATURES, THE

15:05:03  5    NUMBER OF FEATURES.

15:05:04  6         THE COURT:  WELL, MR. COLE SAID THAT

15:05:09  7    "APPLET" MEANT PERFORMING ONE OR A SIMPLE FEW

15:05:12  8    TASKS, WHICH IS THE DEFINITIONS THAT WERE ATTACHED

15:05:14  9    TO HIS DECLARATION SAY.

15:05:16 10         SO WOULD YOU BE OPPOSED TO THAT?

15:05:21 11         MR. JOHNSON:  I DON'T THINK WE'RE OPPOSED

15:05:23 12    TO THAT.

15:05:23 13         THE COURT:  AS OPPOSED TO THE WORD

15:05:25 14    "SMALL"?

15:05:26 15         MR. JOHNSON:  I DON'T THINK WE'RE OPPOSED

15:05:28 16    TO THAT.

15:05:28 17         THE COURT: OKAY.  OKAY.

15:05:37 18         MR. JOHNSON:  BUT JUST GOING BACK TO

15:05:41 19    SLIDE 1 -- ACTUALLY LET ME GO TO SLIDE 8.  THE

15:05:50 20    SPECIFICATION ALSO CLOSELY TRACKS SAMSUNG'S

15:05:56 21    CONSTRUCTION.

15:05:56 22         THE SPEC ONLY DISCUSSES APPLET ONCE AND

15:06:01 23    IT DOESN'T SUGGEST ANYWHERE THAT IT'S OPERATING

15:06:04 24    SYSTEM INDEPENDENT OR DEPENDENT.

15:06:06 25         AND WE SEE AT COLUMN 3, LINES 8 TO 14,

                                                    190

15:06:07 1    "AT LEAST ONE APPLET IN EACH OF THE APPLICATION

15:06:11 2    MODULES."  AND THERE'S NO MENTION OF OPERATING

15:06:15 3    SYSTEM INDEPENDENCE.

15:06:15 4         AND WHEN WE ASKED DR. GIVARGIS ABOUT IT

15:06:18 5    IN HIS DEPOSITION, HE ALSO CONFIRMED THAT THERE WAS

15:06:20 6    NO REFERENCE TO IT DURING THE SPECIFICATION.

15:06:23 7         WE THEN ASKED DR. GIVARGIS ABOUT THE

15:06:28 8    PROSECUTION HISTORY, DOES THE PROSECUTION HISTORY

15:06:31 9    MENTION OPERATING SYSTEM INDEPENDENT?  QUOTE,

15:06:34 10   HERE'S THE QUESTION, "WAS THERE ANY REFERENCE TO

15:06:37 11   APPLET BEING OPERATING SYSTEMS INDEPENDENT?

15:06:39 12        "ANSWER:  I DO NOT RECALL ANY REFERENCE

15:06:42 13   TO OPERATING SYSTEM INDEPENDENT APPLETS IN THE FILE

15:06:46 14   HISTORY THAT I REVIEWED."

15:06:47 15        SO A PERSON OF ORDINARY SKILL IN THE ART

15:06:50 16   READING THE CLAIMS THAT SAY APPLET, READING THE

15:06:53 17   SPECIFICATION THAT REFERS TO APPLET, LOOKING AT THE

15:06:56 18   FILE HISTORY WHICH REFERS TO APPLET BUT DOESN'T

15:06:59 19   MENTION OPERATING SYSTEM INDEPENDENCE OR DEPENDENCE

15:07:03 20   AND THERE'S NO REASON TO IMPORT THESE ADDITIONAL

15:07:06 21   LIMITATIONS INTO THE CLAIM.

15:07:07 22        DURING AN INTERVIEW SUMMARY WITH THE

15:07:10 23   EXAMINER, THE EXAMINER -- THERE WAS A REFERENCE

15:07:14 24   CALLED KOBUKO THAT HAD BEEN CITED.  AND DURING THAT

15:07:18 25   INTERVIEW THE EXAMINATION SUGGESTED THAT THE CLAIMS

191

15:07:21 1   SHOULD INCLUDE THE LIMITATION, QUOTE, "WHEREIN THE

15:07:24 2   MUSIC BACKGROUND PLAY OBJECT INCLUDED AN

15:07:27 3   APPLICATION MODULE INCLUDING AT LEAST ONE APPLET TO

15:07:30 4   DISTINGUISH OVER THE KOBUKO PRIOR ART."

15:07:35 5        NOW, THE KOKUBO PRIOR ART DOES NOT

15:07:38 6   DISCUSS OPERATING SYSTEM DEPENDENCE OR

15:07:43 7   INDEPENDENCE.  AND THE EXAMINER DIDN'T DISCUSS

15:07:46 8   OPERATING SYSTEM DEPENDENCE OR INDEPENDENCE.

15:07:49 9        WHEN THE INVENTOR CONCEIVED OF THE

15:07:53 10  INVENTION, HE TESTIFIED THAT HE WAS WORKING ON

15:07:55 11  OPERATING SYSTEM DEPENDENT APPLETS AT THE TIME.

15:07:57 12       MR. JEONG WAS ASKED, AND HE'S THE

15:08:01 13  INVENTOR ON THE '711 PATENT, "WAS THAT TRUE IN

15:08:04 14  2005?

15:08:05 15       "YOU MEAN AS TO THE WORD -- THE FACT THAT

15:08:07 16  APPLET CAN BE USED WITH RESPECT TO AN OS DEPENDENT

15:08:11 17  INSTANCE?

15:08:11 18       "QUESTION:  CORRECT.

15:08:12 19       "ANSWER:  YES, IT WAS SO USED.

15:08:14 20       "QUESTION:  BY WHOM?

15:08:16 21       "FOR INSTANCE, AROUND THE 2005 TIMEFRAME,

15:08:20 22  AS AN ENGINEER, AT THAT TIME QUALCOMM PLATFORM WAS

15:08:23 23  USED AND IT COMES TO QUALCOMM PLATFORM, THEY USED

15:08:27 24  QUALCOMM CHIP SETS AND IN THAT CHIP SET

15:08:30 25  APPLICATIONS WERE DEVELOPED AND THE WORD APPLET

192

15:08:33 1   WERE USED IN THAT INSTANCE.

15:08:34 2           "QUESTION:  AND WHEN THE WORD APPLET WAS

15:08:37 3   USED IN THAT INSTANCE, IT WAS YOUR UNDERSTANDING

15:08:39 4   THAT IT WAS REFERRING TO SOMETHING THAT WAS

15:08:41 5   OPERATING SYSTEM DEPENDENT?

15:08:43 6           "ANSWER:  YES, FROM AN ENGINEER'S

15:08:45 7   PERSPECTIVE SEEING HOW THE -- IN THE CASE OF THE

15:08:48 8   QUALCOMM ENVIRONMENT, THE USE OF THE TERM APPLET IN

15:08:52 9   THAT CASE WAS SOMETHING THAT APPLIED WITH RESPECT

15:08:54 10  TO QUALCOMM PLATFORM ONLY, SO FROM THAT PERSPECTIVE

15:08:58 11  THE USE OF SAID WORD CAN BE USED ALSO IN AN OS

15:09:04 12  DEPENDENT SENSE."

15:09:04 13          SO EVEN THE INVENTOR, WHEN HE CONCEIVED

15:09:05 14  IT, THE INVENTION WAS USING OPERATING SYSTEM

15:09:06 15  DEPENDENT APPLETS.

15:09:07 16          NOW, WHEN DR. GIVARGIS WAS ASKED ABOUT

15:09:10 17  MR. JEONG'S TESTIMONY HE ADMITTED, QUOTE, "I

15:09:14 18  RECOGNIZE THAT THE INVENTOR WAS WORKING WITH A

15:09:16 19  SYSTEM THAT WAS OS DEPENDENT, SPECIFICALLY THE

15:09:18 20  QUALCOMM CHIP SET."  AND THIS WAS AT LINE -- PAGE

15:09:22 21  41, LINE 17 TO 19 OF HIS TRANSCRIPT.

15:09:28 22          THE COURT:  ON THIS OPERATING SYSTEM, I'M

15:09:30 23  LEANING YOUR WAY ON THIS SO LET ME JUST ASK A

15:09:32 24  QUESTION.  ON THE PERSON OF ORDINARY SKILL IN THE

15:09:37 25  ART, IT SEEMS THAT SOMEONE WITH LESS SPECIFIC

193

15:09:42 1    KNOWLEDGE MIGHT ACTUALLY THINK THAT IT'S OS --

15:09:50 2    WELL, THEY MAY BE MORE THINKING OF APPLETS AS JAVA

15:09:53 3    APPLETS BUT SOMEONE WITH MORE SKILL AND EXPERIENCE

15:09:56 4    WOULD NOT.

15:09:58 5            DO YOU AGREE WITH THAT OR NOT?  OR DO YOU

15:10:01 6    THINK IT'S THE REVERSE?

15:10:02 7            MR. JOHNSON:  NO.  I THINK THAT PEOPLE OF

15:10:04 8    ORDINARY SKILL IN THE ART, WHETHER THEY'RE PEOPLE

15:10:07 9    WHO ARE -- HAVE THE BACKGROUND OF AS WE, YOU KNOW,

15:10:11 10   DESCRIBED JUST PEOPLE WITH EXPERIENCE AND IN

15:10:14 11   PROGRAMMING AND COMPUTER SCIENCE WITH MULTITASKING,

15:10:17 12   THEY'RE GOING TO KNOW THE DIFFERENCE.  THEY'RE

15:10:19 13   GOING TO KNOW THAT AN APPLET COULD INCLUDE BOTH OS

15:10:22 14   INDEPENDENT AND OS DEPENDENT.

15:10:25 15           I THINK ON APPLE'S SIDE WITH RESPECT TO

15:10:28 16   TRYING TO INSERT THE ADDITIONAL LIMITATION OF

15:10:31 17   IMBEDDED SYSTEMS AND THE ADDITIONAL LIMITATION THAT

15:10:33 18   INCLUDES HANDHELD DEVICES, THEY'RE ALSO GOING TO

15:10:37 19   RECOGNIZE THAT APPLETS CAN INCLUDE OS INDEPENDENT

15:10:41 20   AND DEPENDENT AND THAT'S ULTIMATELY WHAT APPLE'S

15:10:44 21   OWN EXPERT RECOGNIZED WHEN HE WAS ASKED ABOUT IT

15:10:48 22   DURING HIS DEPOSITION.

15:10:49 23           HE ADMITTED, AND THIS IS SLIDE 17, "IN

15:10:52 24   THE CONTEXT OF THE HOST APPLICATION, CAN AN APPLET

15:10:55 25   BE STILL SYSTEM DEPENDENT OR ARE YOU SAYING IT IS

                                                          194

15:10:59  1   ALWAYS SYSTEM INDEPENDENT?

15:11:00  2         "ANSWER:  SYSTEM INDEPENDENCE IS NOT

15:11:03  3   UNIVERSALLY THE CASE BUT COMMON."

15:11:06  4         THE COURT:  YEAH, I READ HIS DECLARATION.

15:11:07  5   THERE'S DEFINITELY ENOUGH GENERALLIES AND USUALLIES

15:11:11  6   IN THERE THAT I AGREE WITH YOU THAT HE HAS CONCEDED

15:11:15  7   THAT IT'S NOT ALWAYS OPERATING SYSTEM INDEPENDENT.

15:11:22  8         BUT I'M JUST WONDERING FOR SOMEONE,

15:11:25  9   MR. COLE WAS SAYING JAVA APPLET IS LIKE SAYING

15:11:30 10   KLEENEX TISSUE.  AND IT SEEMS LIKE PEOPLE WHO ARE

15:11:33 11   LESS FAMILIAR WITH THE FIELD MIGHT BE MORE LIKELY

15:11:39 12   OR MORE APT TO ASSOCIATE THE SORT OF MOST COMMON

15:11:45 13   BRAND NAME WITH APPLET THAN SOMEONE WHO REALLY

15:11:47 14   KNOWS, YOU KNOW, THE VARIATIONS OF APPLETS.

15:11:50 15         MR. JOHNSON:  AND WHAT I'M SAYING IS THAT

15:11:52 16   FIRST WE START FROM THE STANDPOINT THAT THE PATENT

15:11:54 17   IS WRITTEN TOWARDS A PERSON OF ORDINARY SKILL IN

15:11:56 18   THE ART.

15:11:57 19         AND UNDER EITHER ONE OF THESE

15:12:01 20   DEFINITIONS, THESE COMPETING DEFINITIONS OF A

15:12:04 21   PERSON OF ORDINARY SKILL, THEY'RE GOING TO

15:12:05 22   RECOGNIZE THE DIFFERENCE, THAT IT IS INCLUDED.

15:12:07 23         NOW, IF, YOU KNOW, AND GOING BACK AND I

15:12:11 24   THOUGHT ABOUT THIS OVER THE LUNCH TIME THE

15:12:14 25   DISTINCTION BETWEEN THE TWO COMPETING VERSIONS OF A

195

15:12:17 1    PERSON OF ORDINARY SKILL.

15:12:18 2            I COULD BE -- I THINK IF YOU INCLUDED

15:12:22 3    IMBEDDED SYSTEMS IN OUR DEFINITION AND CHANGE

15:12:26 4    HANDHELD DEVICE, I THINK HANDHELD DEVICE IS TOO

15:12:30 5    SPECIFIC.

15:12:31 6            I THINK IF YOU CHANGED IT TO PORTABLE

15:12:33 7    DEVICE, WHICH IS WHAT THE TITLE OF THE PATENT TALKS

15:12:36 8    ABOUT, AND IF YOU LOOK AT THE CITED ART, WHICH I

15:12:39 9    SPENT SOME TIME DOING OVER THE LUNCH BREAK, THE

15:12:41 10   LUNCH BREAK REFERS TO -- THE CITED ART REFERS TO

15:12:48 11   LAPTOPS, COMPUTER SYSTEMS, CHIP DESIGNS, THINGS

15:12:52 12   LIKE THAT, ULTIMATELY A PERSON OF ORDINARY SKILL IN

15:12:55 13   THE ART, YOU COULD HAVE ON OUR SIDE A DEFINITION

15:12:59 14   THAT INCLUDED IMBEDDED SYSTEMS, AND IT COULD ALSO

15:13:02 15   INCLUDE, INSTEAD OF HANDHELD DEVICES, PORTABLE

15:13:05 16   DEVICES BUT I THINK THAT THAT'S BROADER.

15:13:07 17           THE COURT:  AND IS THAT BECAUSE SOMEONE

15:13:10 18   WITH EXPERIENCE IN HANDHELD DEVICE PROGRAMMING

15:13:13 19   WOULD COME OUT DIFFERENTLY ON THIS QUESTION?

15:13:15 20           WHY DOES IT MATTER?  WOULD SOMEONE COME

15:13:19 21   OUT DIFFERENTLY DEPENDING ON WHAT EXPERIENCE THEY

15:13:21 22   HAD?

15:13:22 23           MR. JOHNSON:  NO.  THAT'S WHY I

15:13:23 24   STARTED -- THAT'S THE WAY I STARTED BY ANSWERING

15:13:25 25   YOUR QUESTION, I DON'T THINK IT MATTERS FROM OUR

                                                      196

15:13:28 1    STANDPOINT.

15:13:29 2              AND ULTIMATELY JUST GOING BACK TO

15:13:30 3    MR. COLE'S DESCRIPTION OF KLEENEX, ANYBODY IN THIS

15:13:33 4    ROOM UNDERSTANDS THAT THERE ARE DIFFERENT VERSIONS

15:13:36 5    AND DIFFERENT BRANDS OF KLEENEX OUT THERE.

15:13:39 6              SO, SURE, IF SOMEBODY ASKED FOR A BOX OF

15:13:41 7    TISSUE, I MEAN, IT'S NOT JUST A PERSON OF ORDINARY

15:13:47 8    SKILL IN THE ART WOULD UNDERSTAND THAT JAVA APPLETS

15:13:50 9    ARE SURE ONE KIND OF APPLET, BUT AS WE LOOK THE

15:13:54 10   TERM APPLET CAME TO BE MUCH EARLIER THAN THE JAVA

15:13:58 11   DID.

15:13:58 12             SO APPLET HAS EXISTED BEFOREHAND AND

15:14:01 13   PEOPLE OF ORDINARY SKILL IN THE ART WOULD

15:14:03 14   UNDERSTAND THAT IT'S NOT LIMITED TO JAVA, IT'S NOT

15:14:06 15   LIMITED TO INDEPENDENT.  JUST LIKE TISSUE IS NOT

15:14:09 16   LIMITED TO KLEENEX.

15:14:10 17             THE COURT:  OKAY.  LET ME HEAR FROM

15:14:14 18   APPLE.  I DON'T THINK THERE'S ANY INTRINSIC

15:14:16 19   EVIDENCE SUPPORTING THIS OPERATING SYSTEM

15:14:19 20   INDEPENDENT.  IT LOOKS KIND OF LIKE YOU PUT IT IN

15:14:22 21   THERE FOR A NON-INFRINGEMENT ARGUMENT.

15:14:26 22             MR. LEE:  CAN I BUG YOU WITH SLIDES?

15:14:31 23             THE COURT:  YES.  AND HAVE YOU GIVEN THEM

15:14:33 24   TO THEM?

15:14:35 25             MR. LEE:  YES, THEY GOT THEM THIS

197

15:14:37 1    MORNING, AND THERE'S NO OBJECTION AS I UNDERSTAND

15:14:39 2    IT.

15:14:43 3              YOUR HONOR, TO ANSWER YOUR QUESTION,

15:14:43 4    THERE ACTUALLY IS INTRINSIC EVIDENCE TO ANSWER THAT

15:14:45 5    QUESTION.  BUT COULD I MOVE INTO IT IN ORDER?

15:14:48 6              THE COURT:  SURE.

15:14:50 7              MR. LEE:  BECAUSE TO ANSWER YOUR HONOR'S

15:14:52 8    FIRST QUESTION TO MR. JOHNSON, AND THERE ARE THREE

15:14:54 9    ISSUES AND YOU DISCUSSED ALL OF THEM WITH

15:14:57 10   MR. JOHNSON.

15:14:58 11             THERE'S SMALL; AND THERE'S PROGRAM VERSUS

15:15:00 12   APPLICATION MODULE; AND THEN THERE'S OPERATING

15:15:04 13   SYSTEM INDEPENDENT AND DEPENDENT.

15:15:05 14             AND I'D LIKE TO ADDRESS ALL THREE BECAUSE

15:15:07 15   EACH GIVES RISE TO AN INDEPENDENT INFRINGEMENT

15:15:11 16   ISSUE.  WITHOUT SAYING WHAT IT IS, EACH

15:15:12 17   INDEPENDENTLY GIVE RISE TO AN INFRINGEMENT ISSUE,

15:15:15 18   AND THAT'S WHY I'D LIKE TO ADDRESS EACH.

15:15:29 19             IF I COULD GO TO SLIDE 11 ON OURS --

15:15:29 20   ACTUALLY I'D LIKE TO GO TO M12.  AND THIS IS

15:15:31 21   MR. COLE'S DEPOSITION TESTIMONY.  AND THIS IS AFTER

15:15:34 22   THEY HAD PROPOSED "SMALL" IN THE JOINT CLAIM

15:15:37 23   CONSTRUCTION STATEMENT.

15:15:38 24             "QUESTION:  HOW WOULD YOU DEFINE SMALL IN

15:15:40 25   THE CONTEXT OF AN APPLET?

                                                          198

15:15:42 1          "ANSWER:  I DIDN'T.

15:15:43 2          "QUESTION:  DO YOU HAVE IN MIND ANY

15:15:46 3     DEFINITION OF WHAT SMALL WOULD MEAN IN THE CONTEXT

15:15:48 4     OF AN APPLET?

15:15:49 5          "ANSWER:  NO.

15:15:51 6          "QUESTION:  WHAT DO YOU THINK WOULD BE

15:15:54 7     THE UNDERSTANDING OF SOMEONE OF ORDINARY SKILL IN

15:15:57 8     THE ART IN 2005 AS TO THE TERM SMALL IN THE CONTEXT

15:16:04 9     OF AN APPLET?

15:16:05 10         "ANSWER:  I DON'T KNOW."

15:16:07 11         SO --

15:16:08 12         THE COURT:  YOU HAVE ME ON "SMALL."

15:16:10 13         MR. LEE:  AND ACTUALLY, YOUR HONOR, THE

15:16:12 14    PROPOSAL YOU MADE, I THINK IT WAS ONE OR MORE

15:16:15 15    SIMPLE --

15:16:21 16         THE COURT:  ONE OR FEW SIMPLE TASKS.  I'M

15:16:24 17    NOT PROPOSING IT.  I'M SAYING IT WAS IN SEVERAL

15:16:26 18    DEFINITIONS IN MR. COLE'S DECLARATION.

15:16:27 19         MR. LEE:  IF IT HELPS, THAT'S ACCEPTABLE

15:16:29 20    TO US.

15:16:29 21         THE COURT:  OH, OKAY.  ALL RIGHT.

15:16:34 22         MR. LEE:  WE WOULD AGREE.  SO LET ME NOW

15:16:35 23    GO TO THE APPLICATION MODULE VERSUS THE PROGRAM.

15:16:39 24         AND AGAIN, I'M GOING TO GO TO MR. COLE'S

15:16:41 25    TESTIMONY BECAUSE HE ACTUALLY ANSWERED THE QUESTION

                                                     199

15:16:45 1    THAT YOU ASKED MR. JOHNSON BUT HE ANSWERED IT IN

15:16:48 2    THE OPPOSITE WAY.

15:16:49 3              SO IF I GO TO SLIDE 13.

15:16:55 4              "QUESTION:  NOW, THE PATENT SAYS AN

15:16:58 5    APPLICATION MODULE INCLUDES AN APPLET, CORRECT?

15:17:02 6              "ANSWER:  YES.

15:17:03 7              "QUESTION:  SO DO YOU THINK IT WOULD BE

15:17:05 8    MORE PRECISE TO SAY THAT AN APPLET RUNS WITHIN AN

15:17:08 9    APPLICATION MODULE RATHER THAN WITHIN A PROGRAM?

15:17:12 10             "ANSWER:  WOULD IT BE MORE PRECISE TO SAY

15:17:15 11   THAT?  IT CERTAINLY TRACKS THE LANGUAGE OF THE

15:17:18 12   PATENT MORE CLOSELY, YES."

15:17:20 13             WE AGREE WITH MR. COLE ON THIS.  AND,

15:17:23 14   YOUR HONOR, HERE'S THE ANSWER WHY.  ON THE

15:17:26 15   LEFT-HAND SIDE OF OUR SLIDE, YOU SEE SAMSUNG'S

15:17:29 16   DEFINITION.  THAT COULD COVER AN APPLICATION

15:17:35 17   PROGRAM RUNNING ON AN OPERATING SYSTEM.

15:17:37 18             AND THAT IS SPECIFICALLY WHAT THEY

15:17:40 19   DISTINGUISHED DURING THE COURSE OF THE FILE

15:17:43 20   HISTORY.

15:17:43 21             AND THAT'S WHY WITHIN ANOTHER PROGRAM,

15:17:46 22   WHICH COULD INCLUDE AN OPERATING SYSTEM, IS

15:17:50 23   INCORRECT IN LIGHT OF THE SPECIFICATION, THE FILE

15:17:54 24   HISTORY, AND THE CLAIM TERM ITSELF BECAUSE IT SAYS

15:17:57 25   THAT APPLICATION MODULE.  AND THAT'S WHY THEIRS IS

                                                              200

1    TOO BROAD.

2              NOW, IF I COULD MOVE INTO THE INTRINSIC

3    EVIDENCE, I THINK IT WILL DEMONSTRATE BOTH, YOUR

4    HONOR, WHY IT HAS TO BE AN APPLICATION MODULE AND

5    ALSO ANSWER YOUR HONOR'S QUESTION ABOUT THE

6    OPERATING SYSTEM DEPENDENT AND INDEPENDENT.

7              AND THERE ARE A COUPLE OF PARTS OF THE

8    FILE HISTORY IN KOBUKO WHICH I THINK I WOULD LIKE

9    TO DRAW YOUR ATTENTION TO.

10             THE COURT:  I'M SORRY.  I MIGHT NOT HAVE

11   CAUGHT IT.  DID YOU SAY THERE IS A CONNECTION

12   BETWEEN OPERATING SYSTEM INDEPENDENT AND DEPENDENCE

13   IF YOU USED APPLICATION MODULE?

14             MR. LEE:  NO.  THE PORTIONS OF THE FILE

15   HISTORY THAT ARE RELEVANT TO BOTH ISSUES, ARE

16   RELEVANT TO BOTH ISSUES BUT THEY'RE SEPARATE

17   ISSUES, AND, IN FACT, THEY WILL GIVE SEPARATE

18   INFRINGEMENT DISPUTES BETWEEN US IS MY BET.

19             THE COURT:  OKAY.

20             MR. LEE:  BUT WHAT I'M GOING TO TAKE YOUR

21   HONOR THROUGH NOW WILL BE RELEVANT TO BOTH, BUT

22   INDEPENDENTLY RELEVANT TO BOTH.  DOES THAT ANSWER

23   YOUR QUESTION?

24             THE COURT:  THAT IS FINE.

25             MR. LEE:  OKAY.  LET ME ANSWER THE LAST

                                                    201

15:19:07 1  QUESTION YOU ASKED ABOUT THE LEVEL OR ORDINARY

15:19:08 2  SKILL IN THE ART.  I THINK YOUR HONOR'S INTUITIVE

15:19:09 3  REACTION TO HIGHER VERSUS LOWER IS CORRECT.

15:19:13 4       THE REASON YOU HAVE THE OPPOSITE

15:19:14 5  POSITIONS TAKEN BY THE PARTIES IS BECAUSE OF WHAT

15:19:17 6  I'M ABOUT TO TAKE YOU THROUGH BECAUSE IF SOMEONE

15:19:19 7  HAD A HIGHER LEVEL OF SKILL IN THE ART AND LOOKS AT

15:19:26 8  WHAT I'M GOING TO SHOW YOUR HONOR ABOUT KOBUKO AND

15:19:32 9  THEN WHAT THEY SAID ABOUT KOBUKO, YOU'LL KNOW IT'S

15:19:34 10  AN OPERATING SYSTEM INDEPENDENT.

15:19:36 11       NOW, LET ME SAY ONE MORE THING ABOUT THE

15:19:39 12  LEVEL OF SKILL IN THE ART.  THE QUESTION OF WHAT

15:19:41 13  THE PATENT COVERS, THE ASSERTED CLAIMS ARE 1, 2, 7

15:19:44 14  TO 10 AND 15 TO 18.

15:19:47 15       EVERY SINGLE ONE OF THEM INCLUDES A

15:19:49 16  LIMITATION, THAT IS, QUOTE, "A POCKET SIZED MOBILE

15:19:53 17  COMMUNICATION DEVICE."

15:20:01 18       SO THE DISCUSSION WE HAD WITH YOUR HONOR

15:20:03 19  ABOUT WHETHER OR NOT SOMEONE OF ORDINARY SKILL IN

15:20:05 20  THE ART SHOULD HAVE EXPERIENCE IN THIS FIELD, THE

15:20:09 21  CLAIMS, AND I MAY HAVE MISHEARD MR. JOHNSON, THE

15:20:12 22  CLAIMS ARE NOT LIMITED AND THAT'S WHAT THE CLAIMS

15:20:15 23  SAY "A POCKET SIZED MOBILE COMMUNICATION DEVICE."

15:20:19 24       SO, YOUR HONOR, IF I GO TO SLIDE 14, AND

15:20:22 25  I'LL GO THROUGH THIS QUICKLY IN LIGHT OF THE HOUR,

202

15:20:24 1     BUT I'M GOING TO LOOK VERY QUICKLY AT WHAT THE

15:20:26 2     PATENT CLAIM SAYS AND THE SPEC SAYS BECAUSE IT'S

15:20:29 3     ONLY TWO SENTENCES.

15:20:30 4          BUT THEN WE HAVE TO GO TO THE FILE

15:20:34 5     HISTORY BECAUSE SAMSUNG ACTUALLY SAID A LOT.

15:20:37 6          SO SLIDE NUMBER 14 IS THE LIMITATION THAT

15:20:41 7     INCLUDES APPLET BUT IT'S THE BROADER LIMITATION OR

15:20:45 8     THE ENTIRE LIMITATION WAS ADDED TO GET ALLOWANCE.

15:20:51 9          IF I TURN, YOUR HONOR, TO SLIDE NUMBER

15:20:54 10    15, YOU HAVE THE ENTIRETY OF WHAT THIS

15:20:57 11    SPECIFICATION SAYS ABOUT AN APPLET.

15:20:59 12         IT'S AT COLUMN 3, LINE 8 TO 14.

15:21:03 13         AND ALL IT SAYS IS "APPLICATION MODULES

15:21:06 14    OF THE PORTABLE TERMINAL INCLUDES AT LEAST ONE

15:21:09 15    APPLET AND EACH OF THE APPLICATION MODULES THAT IS

15:21:13 16    EACH MENU OF THE PORTABLE TERMINAL INDEPENDENTLY

15:21:16 17    PERFORMS MULTITASKING."  THAT'S IT.

15:21:18 18         NOW, HERE'S WHAT HAPPEN IF WE GO TO SLIDE

15:21:24 19    NUMBER 16.

15:21:26 20         DURING THE PROSECUTION THE CLAIMS WERE

15:21:29 21    REJECTED BEFORE THIS LIMITATION WAS ADDED IN LIGHT

15:21:34 22    OF KOKUBO.

15:21:36 23         AND RATHER THAN MAKE THE ARGUMENT, I'LL

15:21:39 24    JUST TAKE WHAT MR. JOHNSON SAID ABOUT AOKI IN THE

15:21:42 25    LAST ARGUMENT ON A CLAIM TERM.

203

IF YOU TAKE, YOUR HONOR, SLIDE 16 TO 23,
WHICH I'M NOT GOING TO GO THROUGH NOW BUT WE'LL
LEAVE WITH THE COURT, 16 THROUGH 23 IDENTIFIES FOR
THE COURT WHERE THE PATENT EXAMINER FOUND EVERY
SINGLE ASPECT OF THE PENDING CLAIMS IN KOKUBO.
EVERY SINGLE LIMITATION.

IF I TURN, YOUR HONOR, TO SLIDE NUMBER
24, YOU WILL SEE WHAT KOKUBO SAID ABOUT OPERATING
SYSTEM APPLICATIONS PROGRAMS.

THIS IS NOW, THROUGHOUT KOKUBO, YOUR
HONOR, KOKUBO REFERS TO APPLICATIONS SOFTWARE AND
IT DOES IT PARENTHETICALLY A NUMBER OF TIMES, IT
DOES IT DIRECTLY A NUMBER OF TIMES.

THE PARAGRAPH THAT I CITE, YOUR HONOR,
COLUMN 6 ON 52 TO COLUMN 7, LINE 2 WHICH IS AT
SLIDE 24, SPECIFICALLY ADDRESSES THE ISSUE THAT IS
BEFORE US.

AND WHAT YOU WILL SEE IS THAT IT REFERS
TO A CONVENTIONAL OPERATING SYSTEM FOR CONTROLLING
THE APPARATUS.  IT REFERS TO APPLICATION SOFTWARE
TASKS THAT ARE UNDER THE CONTROL OF THE OPERATING
SYSTEM.

AND IT EXPLICITLY TELLS YOU, YOUR HONOR,
IT TELLS THE PUBLIC, THAT YOU HAVE THIS OPERATING
SYSTEM, YOU HAVE THIS APPLICATION SOFTWARE, WHICH

204

15:23:17 1    IS CONTROLLED BY THE OPERATING SYSTEM.

15:23:21 2              AND WHAT DOES IT DO?  IF YOUR HONOR LOOKS

15:23:24 3    AT THE BOTTOM OF THE PAGE OR THE BOTTOM OF THE

15:23:26 4    COLUMN, IT'S RUNNING TASKS LIKE E-MAIL, WEB

15:23:29 5    BROWSERS, AND THE LIKE.

15:23:30 6              SO THERE IS A CLASSIC APPLICATIONS

15:23:33 7    PROGRAM RUNNING AN OPERATING SYSTEM.

15:23:38 8              AND IF I TURN, YOUR HONOR, TO THE NEXT

15:23:40 9    SLIDE, WHICH IS COLUMN 10 FROM KOKUBO, LINE 54 TO

15:23:44 10   62, IT TELLS YOU EXACTLY WHAT TASKS ARE BEING RUN

15:23:51 11   ON THIS OPERATING SYSTEM BY THESE APPLICATION

15:23:56 12   PACKAGES, AND IT'S E-MAIL, BROWSING, GAMING, AND

15:24:00 13   MOST IMPORTANTLY, MUSIC.

15:24:02 14             SO WITH THIS SPECIFIC DISCLOSURE OF

15:24:09 15   KOKUBO, WHICH THE EXAMINER FOUND IN SLIDE 16 TO 24,

15:24:09 16   HAS EVERYTHING INCLUDING AN APPLICATION SOFTWARE

15:24:23 17   PERFORMING TASKS, WHICH IS ONE OF THE THINGS THAT

15:24:24 18   YOUR HONOR DISCUSSED WITH MR. JOHNSON, AND THE

15:24:26 19   TASKS OF BROWSING, E-MAILING, AND MUSIC, WHAT

15:24:30 20   HAPPENED.

15:24:31 21             AND IF YOU TURN TO SLIDE 26, YOUR HONOR,

15:24:33 22   THIS IS WHEN THE EXAMINER HAVING MADE THE REJECTION

15:24:41 23   IN LIGHT OF WHAT KOKUBO SAID, SAYS LET'S ADD THIS

15:24:45 24   LIMITATION.

15:24:46 25             SO WE NOW HAVE THE LIMITATION THAT WAS

205

ADDED TO SPECIFICALLY DISTINGUISH THE VERY

TWO PAGES THAT I HAVE JUST SHOWN YOU.

WHAT WOULD ONE OF ORDINARY SKILL IN THE

ART UNDERSTAND THAT THEY WERE SAYING?

WELL, I'M NOT ONE OF ORDINARY SKILL IN

THE ART, YOUR HONOR, BUT EVEN I UNDERSTAND THAT

THEY ARE SAYING THAT THIS IS DIFFERENT THAN THE

APPLICATION SOFTWARE SITTING ON AN OPERATING

SYSTEM, CONTROLLED BY THE OPERATING SYSTEM,

EXPRESSLY DISCLOSED IN KOKUBO.

SO THE EXAMINER SUGGESTED.  AND WHAT DID

SAMSUNG DO?

THEY SAY, THAT'S RIGHT, WE'LL ADD THIS

LIMITATION AND THIS IS THE LIMITATION THAT

DISTINGUISHES KOKUBO, BUT THEY SAY MORE.  IF YOU

TURN TO SLIDE 28.

THEY SAY, QUOTE, "KOKUBO MERELY DISCLOSES

THE GENERATING OF AN ICON CORRESPONDING TO A TASK

(APPLICATION SOFTWARE)"  AND THEN IT REFERS TO

COLUMN 2, LINES 34 AND COLUMN 13, LINES 8 TO 10.

THIS IS EXACTLY THE APPLICATION SOFTWARE

PERFORMING THE TASKS ON TOP OF AN OPERATING SYSTEM.

AND THEN WHAT DO THEY SAY?  AND, YOUR

HONOR, THIS IS WHERE THEY HAD THE POWER OF THE PEN.

THEY SHOULD BE HELD TO THEIR WORD.

15:26:10  1          "THE GENERATING OF THE ICON BY KOKUBO IS

15:26:14  2     NOT THE DISCLOSURE OF GENERATING A MUSIC BACKGROUND

15:26:17  3     PLAY OBJECT, WHEREIN THE MUSIC BACKGROUND PLAY

15:26:19  4     OBJECT INCLUDES AN APPLICATION MODULE INCLUDING AT

15:26:22  5     LEAST ONE APPLET."

15:26:24  6          SO THEY HAVE SPECIFICALLY DISTINGUISHED

15:26:27  7     EXACTLY THE TWO QUOTATIONS AND EXCERPTS THAT I HAVE

15:26:33  8     SHOWN YOUR HONOR FROM KOKUBO, AND THAT'S WHAT

15:26:35  9     RESULTS IN ALLOWANCE OF THE CLAIMS.

15:26:39 10          NOW, WHAT DOES THIS MEAN, YOUR HONOR?

15:26:41 11     THIS IS, AS DR. GIVARGIS SAID, THIS IS THE FILE

15:26:45 12     HISTORY THAT WOULD LEAD ONE OF ORDINARY SKILL IN

15:26:48 13     THE ART TO UNDERSTAND THAT IN ADDITION TO THE

15:26:51 14     APPLET HAVING TO BE A PROGRAM RUNNING WITHIN AN

15:26:53 15     APPLICATION MODULE AS OPPOSED TO SOME PROGRAM

15:26:57 16     GENERALLY INCLUDING AN OPERATING SYSTEM, THERE'S A

15:27:00 17     SECOND REQUIREMENT AND IT NEEDS TO BE OPERATING

15:27:03 18     SYSTEM INDEPENDENT.

15:27:05 19          THE COURT:  WELL, THAT'S WHAT I DON'T

15:27:06 20     SEE.

15:27:07 21          MR. LEE:  WELL, YOUR HONOR, THAT'S -- I

15:27:09 22     WON'T GO THROUGH IT AGAIN, BUT IF YOUR HONOR

15:27:12 23     LOOKS -- ALL WE CAN ASK YOUR HONOR TO DO IS IF YOU

15:27:15 24     LOOK AT KOKUBO AND YOU LOOK AT THOSE TWO PAGES AND

15:27:17 25     THE QUOTATIONS, THAT IS AN OPERATING SYSTEM

207

15:27:20 1    DEPENDENT/INDEPENDENT PROGRAM AND THE QUESTION IS

15:27:28 2    THIS, YOUR HONOR, WHAT IS IT ABOUT APPLET THAT

15:27:30 3    DISTINGUISHES THAT COLUMN?

15:27:40 4            THE COURT:  LET'S GO BACK TO SLIDE 24

15:27:42 5    WHERE YOU SAID THIS SAYS -- YOU SEE IT SAYS

15:27:46 6    OPERATING SYSTEM AS I GUESS A DEFINITION OF CONTROL

15:27:49 7    PROGRAM.

15:27:50 8            MR. LEE:  RIGHT.

15:27:51 9            THE COURT:  BUT TELL ME HOW THIS SAYS

15:27:53 10   THAT TO DISTINGUISH FROM KOKUBO YOU HAVE TO ASSUME

15:28:01 11   OPERATING SYSTEM?

15:28:02 12           MR. LEE:  THE READ ONLY MEMORY IS

15:28:04 13   CONNECTED TO THE CONTROL UNIT 115 AND STORES A

15:28:09 14   CONTROL PROGRAM AND OPERATING SYSTEM.

15:28:14 15           SO THE READ ONLY MEMORY IS CONNECTED TO

15:28:16 16   THE CONTROL UNIT 115, AND THE READ ONLY MEMORY HAS

15:28:20 17   THE OPERATING SYSTEM.

15:28:21 18           THE NEXT PARAGRAPH.  THE OPERATION UNIT

15:28:28 19   160 IS CONNECTED TO THE CONTROL UNIT 115, THE SAME

15:28:32 20   ONE WE JUST TALKED ABOUT, AND BY THE CONTROL UNIT

15:28:36 21   115, THAT IS THAT WHICH HAS THE OPERATING SYSTEM,

15:28:39 22   GIVES OPERATING INSTRUCTIONS SUCH AS.

15:28:44 23           AND THEN IT GOES DOWN AND TALKS ABOUT HOW

15:28:46 24   HAVING GIVEN THOSE INSTRUCTIONS, YOU EXECUTE THE

15:28:49 25   APPLICATIONS SOFTWARE TASK.

208

15:28:51  1          AND, YOUR HONOR, THIS IS A PLACE WHERE

15:28:58  2     YOUR HONOR ASKED TODAY ABOUT SOMETHING ABOUT AN

15:29:00  3     INTERMEDIATE REMEDY BEYOND STRIKING THE REFERENCES.

15:29:04  4          THIS IS A PLACE WHERE I CAN REPRESENT TO

15:29:06  5     THE COURT IF DR. GIVARGIS COULD SUBMIT A

15:29:10  6     SUPPLEMENTAL DECLARATION, HE WOULD TAKE THAT

15:29:12  7     LAUNDRY LIST OF DICTIONARY DEFINITIONS AND SAY YOU

15:29:17  8     COULDN'T GIVE THOSE DEFINITIONS IN LIGHT OF WHAT

15:29:19  9     THEY SAID ABOUT KOKUBO.

15:29:25 10          AND YOU'RE GOING TO GET DIFFERENT

15:29:27 11     INTERPRETATIONS FROM MR. JOHNSON AND FROM ME ABOUT

15:29:29 12     THIS PROVISION, BUT THIS IS THE PROVISION THAT FOR

15:29:32 13     LACK OF A LESS PEJORATIVE WORD PUTS A LIE TO THE

15:29:37 14     DEFINITIONS THAT WERE SUBMITTED LATE.

15:29:38 15          AND THE QUESTION IS THIS, YOUR HONOR --

15:29:41 16     WE DON'T -- THERE ARE TWO SEPARATE QUESTIONS HERE.

15:29:44 17          ONE IS WHAT IS THE DIFFERENCE BETWEEN

15:29:48 18     KOKUBO AND THIS APPLET LIMITATION?

15:29:51 19          WE KNOW THAT'S THE KEY.  THAT'S THE ONLY

15:29:53 20     THING THAT GOT THESE PATENTS ALLOWED.

15:29:55 21          SO WE HAVE TO GO BACK TO KOKUBO AND SAY

15:29:59 22     HOW DO THEY RUN THEIR APPLICATIONS SOFTWARE?  HOW

15:30:03 23     DO THEY RUN THEIR MUSIC PROGRAM BECAUSE YOU KNOW IT

15:30:06 24     HAS TO BE DIFFERENT.

15:30:09 25          IF THEY'RE NOT DIFFERENT, THEN KOKUBO

                                                             209

15:30:11 1      ANTICIPATES AND THE PATENT IS INVALID.

15:30:13 2              BUT WE KNOW THAT THE PROGRESSION IS THAT

15:30:15 3      EVERY -- CLAIMS ARE PENDING WITHOUT THIS LIMITATION

15:30:17 4      AND REJECTED IN THEIR ENTIRETY.

15:30:20 5              THE EXAMINER PROPOSED THIS LIMITATION AND

15:30:22 6      SAMSUNG SAYS, YES, AND THEN SAMSUNG SAYS THIS IS BY

15:30:27 7      ITSELF THE DISTINCTION.  THAT'S THE FIRST QUESTION.

15:30:31 8      IS THIS A DISTINCTION THAT MATTERS?  I THINK THE

15:30:34 9      ANSWER IS UNEQUIVOCALLY YES.

15:30:36 10             AND THEN THE HARDER QUESTION BECOMES,

15:30:38 11     WHAT IS THE DISTINCTION, WHICH IS WHAT I THINK YOUR

15:30:40 12     HONOR IS ASKING ME NOW.

15:30:41 13             WE SAY THAT THE DISTINCTION IS THIS

15:30:45 14     COLUMN AGAINST WHAT THEY SAY ABOUT APPLET.

15:30:50 15             SAMSUNG HAS NOT OFFERED YOU ANY

15:30:55 16     EXPLANATION FOR WHAT THE DIFFERENCE IS BETWEEN

15:31:00 17     APPLET IN THAT LIMITATION AND KOKUBO.

15:31:03 18             AND, IN FACT, WHAT THEY DID IS THAT THEY

15:31:05 19     OFFERED YOU A DEFINITION, A SMALL WITHIN A PROGRAM,

15:31:09 20     AND, YOUR HONOR, THAT COVERS EXACTLY WHAT IS ON

15:31:12 21     THIS PAGE M24.

15:31:15 22             THEY HAVE OFFERED YOU A DEFINITION THAT

15:31:20 23     WITHOUT A DOUBT EXPLICITLY COVERS WHAT IS DISCLOSED

15:31:23 24     IN KOKUBO.  WE KNOW THAT'S NOT RIGHT.

15:31:25 25             SO I THINK THE QUESTION YOUR HONOR MAY

210

15:31:28  1    WANT TO POSE TO BOTH OF US IS SO WHAT IS THE
15:31:31  2    DIFFERENCE?  WE KNOW THERE'S A DIFFERENCE.  WE KNOW
15:31:35  3    IT'S THE ONLY DIFFERENCE THAT COUNTED AND WHAT IS
15:31:37  4    THE DIFFERENCE?
15:31:38  5             AND THAT YOUR HONOR HAS ANSWERED I GUESS
15:31:43  6    BY THE EXPERTS AND BY YOUR HONOR'S READING OF THE
15:31:46  7    CLAIMS.
15:31:46  8             LET ME SAY JUST THREE OTHER THINGS ABOUT
15:31:48  9    THIS.  ONE IS THAT, FIRST, THE INVENTOR'S
15:31:52 10    TESTIMONY.
15:31:53 11             THIS INVENTOR'S TESTIMONY ABOUT WHAT HE
15:31:55 12    WAS DOING AND WHAT THE OPERATING SYSTEM WAS NOT
15:32:00 13    DISCLOSED ANYWHERE IN THE SPECIFICATION OR THE FILE
15:32:02 14    HISTORY, RIGHT.
15:32:03 15             IF THAT WERE THE DIFFERENCE, THEN IF
15:32:08 16    THAT'S WHAT HE WAS DOING AND THE PUBLIC WAS TO KNOW
15:32:10 17    THAT IT INCLUDED A QUALCOMM CHIP THAT WAS OPERATING
15:32:15 18    SYSTEM INDEPENDENT, THEY SHOULD HAVE SAID SO.
15:32:17 19             IF THAT WAS THE DISTINCTION FROM KOKUBO,
15:32:21 20    HE SHOULD HAVE SAID SO.  NO ONE WOULD HAVE HAD A
15:32:23 21    CLUE THAT THAT WAS TRUE AND, IN FACT, THE BEST
15:32:26 22    EVIDENCE OF THAT IS THAT MR. COLE DID NOT HAVE A
15:32:29 23    CLUE THAT WAS TRUE.
15:32:30 24             THE SECOND THING IS THAT ALL OF THE
15:32:32 25    DEFINITIONS THAT THEY HAVE GIVEN LATE, IF WE HAD

                                                          211

15:32:36 1    GOTTEN IT ON TIME, WHAT DR. GIVARGIS WOULD HAVE

15:32:41 2    SAID IS THAT, YES, THERE'S THESE DEFINITIONS OUT

15:32:44 3    THERE, BUT TO ONE OF ORDINARY SKILL IN THE ART, BY

15:32:47 4    MY DEFINITION, READING KOKUBO AND READING WHAT THEY

15:32:50 5    SAID AS THE DISTINCTION, THOSE DEFINITIONS WON'T

15:32:55 6    WORK BECAUSE UNDER THOSE DISTINCTIONS THEY WOULD

15:32:58 7    ANTICIPATE.

15:32:59 8              THE COURT:  SO WAIT.  ARE YOU SAYING THAT

15:33:01 9    IF THE PATENT EXAMINER KNEW THAT WHAT THE INVENTOR

15:33:12 10   -- THAT THE INVENTOR WAS ALSO REFERRING TO A SYSTEM

15:33:17 11   DEPENDENT APPLET, THAT THEN IT COULD NOT HAVE

15:33:22 12   OVERCOME KOKUBO?

15:33:26 13             MR. LEE:  NO.  IF THAT'S WHAT I SAID, I

15:33:29 14   MISSPOKE.  I MAY HAVE COLLAPSED TWO THOUGHTS.  LET

15:33:30 15   ME BREAK THEM DOWN AND ANSWER YOUR HONOR'S QUESTION

15:33:32 16   PRECISELY FIRST.

15:33:33 17             IF THE FACT THAT HE WAS WORKING ON AN

15:33:36 18   OPERATING SYSTEM DEPENDENT PROGRAM ON THE QUALCOMM

15:33:44 19   CHIP, AND THAT MADE IT DIFFERENT THAN KOKUBO, I

15:33:47 20   DON'T THINK IT DOES, BUT --

15:33:49 21             THE COURT:  BUT DID THE EXAMINER KNOW HE

15:33:51 22   WAS WORKING, THE INVENTOR WAS WORKING ON AN

15:33:54 23   OPERATING SYSTEM DEPENDENT APPLET?

15:33:56 24             MR. LEE:  NO, THE EXAMINER DIDN'T KNOW.

15:33:58 25   THE DAY THE PATENT PUBLISHED THE PUBLIC DIDN'T

212

15:34:00 1    KNOW.  THE DAY WE WERE SUED WE DIDN'T KNOW.

15:34:03 2    DR. COLE DIDN'T KNOW.

15:34:04 3            THE FIRST TIME THAT ANYBODY KNEW THAT

15:34:06 4    THIS WAS A BASIS TO INTERPRET A CLAIM WAS ON

15:34:10 5    NOVEMBER THE 17TH, 2011, WHEN HE WAS DEPOSED.

15:34:14 6            THAT CAN'T SATISFY THE PUBLIC NOTICE

15:34:19 7    FUNCTION OF SECTION 112, THAT AN INVENTOR 10 YEARS

15:34:23 8    LATER SAYS, MORE THAN 10 YEARS LAYER, 16 YEARS

15:34:26 9    LATER SAYS, OH, BY THE WAY, THIS IS WHAT I'M DOING.

15:34:29 10           THE COURT:  MAYBE THAT JUST MEANS IT'S

15:34:31 11   IRRELEVANT.

15:34:33 12           MR. LEE:  YEAH, I THINK HIS TESTIMONY IS

15:34:35 13   IRRELEVANT.  IT'S -- IF YOU TAKE THE BASIC

15:34:42 14   PROPOSITION THAT INVENTOR TESTIMONY IS NOT TO GUIDE

15:34:45 15   THE COURT'S CONSTRUCTION, AND THEN YOU ADD IT IN TO

15:34:48 16   THIS SPECIFIC SITUATION THAT IT'S NOT DISCLOSED

15:34:50 17   ANYWHERE EITHER IN THE SPECIFICATION OR THE FILE

15:34:55 18   HISTORY, WAS NOT DISCLOSED TO MR. COLE AND THE

15:34:58 19   BASIS OF HIS CLAIM INTERPRETATION, CANNOT FOR THE

15:35:00 20   FIRST TIME 16 YEARS AFTER THE FILING DATE, AND IT'S

15:35:04 21   OTHERWISE NOT PUBLIC, I DON'T THINK IT SHOULD GUIDE

15:35:06 22   THE CLAIM INTERPRETATION DECISION AS A MATTER OF

15:35:09 23   SECTION 112.

15:35:10 24           THE COURT:  I ACTUALLY WAS COMING OUT

15:35:13 25   WITH A DIFFERENT CONCLUSION.  MAYBE THE PATENT

213

15:35:16  1   EXAMINER THOUGHT THE DISTINCTION OF OPERATING

15:35:18  2   SYSTEM INDEPENDENT OR DEPENDENT WAS IRRELEVANT AND

15:35:21  3   THAT IT WASN'T NECESSARY TO LOOK AT THAT OR

15:35:23  4   CONSIDER THAT IN DECIDING WHETHER APPLICATION

15:35:27  5   MODULE THAT INCLUDES AT LEAST ONE APPLET OVERCAME

15:35:31  6   KOKUBO OR NOT.

15:35:32  7            MR. LEE:  THAT'S POSSIBLE, BUT HERE'S THE

15:35:34  8   QUESTION THEN:  WHAT DID THE EXAMINER THINK WAS

15:35:36  9   DIFFERENT?

15:35:37 10            AND THAT'S -- AND I'VE OFFERED YOU ONE

15:35:39 11   EXPLANATION THAT I THINK LEGITIMATELY READS WHAT IS

15:35:44 12   IN KOKUBO, LEGITIMATELY READS WHAT SAMSUNG SAYS IS

15:35:49 13   THE DISTINCTION AND IS ACTUALLY CONFIRMED BY WHAT

15:35:52 14   MOST FOLKS WOULD THINK AN APPLET WAS IN 2005.

15:35:57 15            WHAT IS THE OTHER EXPLANATION THAT YOUR

15:36:01 16   HONOR HAS FOR HOW THIS LIMITATION OVERCAME KOKUBO?

15:36:08 17   AND I THINK THE ANSWER IS THAT THERE IS NONE.

15:36:10 18            AND WHEN I PRESSED A LITTLE -- USUALLY,

15:36:13 19   YOUR HONOR, THE DIFFERENCE BETWEEN PEOPLE OF

15:36:14 20   ORDINARY SKILL IN THE ART DOESN'T MATTER.

15:36:16 21            THIS TIME IT DOES MATTER BECAUSE THERE IS

15:36:18 22   A VERY SPECIFIC DISTINCTION BEING MADE BETWEEN ONE

15:36:21 23   SYSTEM AND ANOTHER.

15:36:23 24            AND THE SLIGHTLY ELEVATED EXPERIENCE THAT

15:36:27 25   YOU ARE SUGGESTING WOULD HELP THEM ANSWER THE

214

15:36:30 1    QUESTION. AND AGAIN, AS I SAID, YOUR HONOR, THERE

15:36:32 2    ARE TWO QUESTIONS. MUST THERE BE A DIFFERENCE

15:36:34 3    BETWEEN KOKUBO AND APPLICATIONS AND MODULES WITH AN

15:36:40 4    APPLET?

15:36:40 5            AND THE ANSWER IS, YES, AS A LEGAL

15:36:43 6    MATTER. AND THE QUESTION BECOMES WHAT IS IT? AND

15:36:45 7    WE HAVE OFFERED ONE EXPLANATION, AND I DON'T THINK

15:36:47 8    THERE IS ANOTHER.

15:36:48 9            THE COURT: LET ME ASK, WITH REGARD TO

15:36:53 10   DR. GIVARGIS'S DECLARATION, HE DOES HAVE A LOT OF

15:36:56 11   QUALIFYING WORDS, YOU KNOW, THAT GENERALLY AN

15:36:59 12   APPLET WOULD BE CONSIDERED A JAVA APPLET.

15:37:05 13           HE NEVER EXPLICITLY SAYS THAT ALL APPLETS

15:37:07 14   HAVE TO BE JAVA APPLETS. SO THAT SORT OF I THINK

15:37:14 15   BOLSTERS WHAT SAMSUNG IS SAYING.

15:37:17 16           MR. LEE: YOUR HONOR, FIRST I THINK HE

15:37:19 17   HAS ANSWERED THE GENERALLIES AND THE USUALLIES AND

15:37:23 18   THAT'S AN HONEST ANSWER AND HE'S GIVING

15:37:26 19   STRAIGHTFORWARDLY.

15:37:27 20           AND IF YOUR HONOR IS LOOKING AT IS IT

15:37:32 21   POSSIBLE THAT THERE ARE OPERATING SYSTEM DEPENDENT,

15:37:34 22   THINGS THAT PEOPLE HAVE CALLED APPLETS, THE ANSWER

15:37:37 23   FOR ME IS YES.

15:37:38 24           BUT HERE'S THE ISSUE WITH IT: YOU HAVE

15:37:40 25   THE MICROSOFT APPLET THAT IS CALLED AN APPLET BUT

                                                            215

15:37:46   1    IT'S NOT AN APPLET EVEN BY THEIR DEFINITION AND

15:37:48   2    IT'S NOT WITHIN ANOTHER PROGRAM.

15:37:50   3              AND, YOUR HONOR, I WOULD SAY THIS, AND

15:37:52   4    I'LL DO IT QUICKLY IN THE INTEREST OF TIME.

15:37:55   5              IF THERE HAD NOT BEEN KOKUBO AND KOKUBO'S

15:38:00   6    DISCLOSURE OF AN OPERATING SYSTEM AND AN

15:38:01   7    APPLICATION SOFTWARE HAD NOT BEEN WHAT LED TO

15:38:05   8    REJECTION AND THIS LIMITATION, THEN THIS GENERAL

15:38:10   9    QUESTION OF WERE THERE APPLETS OUT THERE THAT WERE

15:38:13  10    OPERATING SYSTEM DEPENDENT AND INDEPENDENT WOULD

15:38:16  11    PROBABLY BE ENOUGH TO DEFINE THE TERM UNDER THE

15:38:23  12    PRINCIPLES OF PHILLIPS.

15:38:24  13              BUT HERE WE HAVE MORE.  THIS IS A CASE

15:38:26  14    WHERE YOU HAVE ONE CLAIM TERM, ONE SENTENCE IN THE

15:38:29  15    SPECIFICATION, AND -- BUT A LOT IN THE FILE

15:38:32  16    HISTORY.

15:38:32  17              AND THE QUESTION BECOMES, I THINK AGAIN

15:38:34  18    AS WE SAID, SO WHAT IS THE DIFFERENCE, WHAT IS THE

15:38:37  19    DIFFERENCE BETWEEN KOKUBO AND THIS LIMITATION IF

15:38:43  20    NOT THIS?

15:38:47  21              AND WHAT DR. GIVARGIS WOULD TELL YOU AND

15:38:50  22    WE WOULD OFFER AS THE INTERMEDIATE RELIEF TO HAVE

15:38:53  23    THE DECLARATION WITHIN A WEEK, IF YOU WERE TO USE

15:38:55  24    THE DEFINITIONS THAT SAMSUNG HAS PROPOSED, YOU

15:38:58  25    WOULD HAVE NEVER HAVE MADE THIS DISTINCTION.

216

15:39:00   1           AND THAT'S THE -- I REALLY THINK AT THE

15:39:03   2   END, I'M NOT SURE THERE'S A BIG FIGHT ABOUT

15:39:05   3   "SMALL."  THERE SHOULD NOT BE A FIGHT ABOUT WHETHER

15:39:08   4   THE APPLICATION MODULE AS OPPOSED TO ANY PROGRAMS

15:39:11   5   REQUIRED.

15:39:13   6           ON THIS THIRD ISSUE IT REALLY COMES DOWN

15:39:16   7   TO HERE'S WHAT KOKUBO SAYS, AND THEY SAY IT'S

15:39:18   8   DIFFERENT AND HOW IS IT DIFFERENT?

15:39:20   9           THE COURT:  WELL, I GUESS I COULD AGREE

15:39:22  10   WITH YOU THAT MAYBE THAT MAY HAVE BEEN A DIFFERENCE

15:39:28  11   WITH KOKUBO, BUT IT APPEARS THAT THAT WASN'T A

15:39:34  12   DIFFERENCE THAT WAS OF IMPORTANCE TO THE EXAMINER.

15:39:36  13   IT DIDN'T SEEM LIKE THAT WAS WHY THE EXAMINER

15:39:40  14   ALLOWED THE '711 OVER KOKUBO.

15:39:44  15           MR. LEE:  COULD I GO TO M26, M26 OR M27?

15:39:48  16   AND MAYBE -- SO, YOUR HONOR, IF I GO TO M26, THE

15:39:52  17   EXAMINER PROPOSES THE SUGGESTION AND THEN HE SAYS

15:39:56  18   I'M PROPOSING IT BECAUSE THIS IS WHAT WAS ARGUED BY

15:40:03  19   SAMSUNG TO DISTINGUISH THE ICON AS TAUGHT BY

15:40:06  20   KOKUBO.  THAT'S THE MUSIC ICON.

15:40:09  21           SO THERE'S AN INTERVIEW, YOUR HONOR.

15:40:11  22   THERE'S THIS PROPOSAL, AND IT'S THE SPECIFIC

15:40:14  23   DISTINCTION.

15:40:14  24           NOW, LET'S GO TWO SLIDES FORWARD, M28.

15:40:25  25           AND I GOT DIVERTED, AND I APOLOGIZE.  THE

                                                      217

15:40:28  1    LAST SENTENCE IS THE KEY, "THE GENERATING OF THE

15:40:32  2    ICON IN KOKUBO," I'M SORRY, THE TWO SENTENCES,

15:40:35  3    "KOKUBO MERELY DISCLOSES THE GENERATING OF AN ICON

15:40:39  4    CORRESPONDING TO A TASK (APPLICATION SOFTWARE)."

15:40:45  5            SO HE'S SAYING -- I'M SORRY.  SAMSUNG IS

15:40:49  6    ARGUING HERE'S WHAT KOKUBO MERELY DISCLOSES AND,

15:40:51  7    YOUR HONOR, IT IS REFERRING SPECIFICALLY TO

15:40:53  8    APPLICATION SOFTWARE, WHICH IS EXACTLY WHAT I WAS

15:40:58  9    DESCRIBING TO YOUR HONOR IN THAT ONE COLUMN.

15:40:59 10            SO THIS IS KOKUBO'S MERE DISCLOSURE.

15:41:04 11            HOW THEN IS THIS '711 PATENT IN THIS

15:41:08 12    LIMITATION DIFFERENT?

15:41:09 13            "THE GENERATING OF THE ICON BY KOKUBO IS

15:41:12 14    NOT A DISCLOSURE OF GENERATING A MUSIC BACKGROUND

15:41:15 15    PLAY OBJECT, WHEREIN THE MUSIC BACKGROUND PLAY

15:41:18 16    OBJECT INCLUDES AN APPLICATION MODULE INCLUDING AT

15:41:21 17    LEAST ONE APPLET."

15:41:23 18            SO, YOUR HONOR, WHAT YOU DO KNOW IS

15:41:25 19    SAMSUNG TOLD THE EXAMINER, AND THE PATENT WAS THEN

15:41:29 20    ALLOWED, THAT A MUSIC BACKGROUND PLAY OBJECT THAT

15:41:36 21    INCLUDES AN APPLICATION MODULE, INCLUDING AT LEAST

15:41:41 22    ONE APPLET, IS DIFFERENT FROM THE MERE DISCLOSURE

15:41:43 23    OF AN ICON CORRESPONDING TO A TASK (APPLICATION

15:41:49 24    SOFTWARE).

15:41:50 25            AND YOU KNOW WHEN YOU GO TO KOKUBO THE

                                                              218

15:41:52   1   APPLICATION SOFTWARE WAS SITTING IN AN APPLICATION

15:41:56   2   CONTROLLED BY CONTROLLER 160.

15:42:10   3           THE COURT:  LET ME ASK, AT THE TUTORIAL

15:42:19   4   APPLE WAS GIVING SOME REASONS WHY YOU WOULD USE AN

15:42:21   5   APPLET, AND I DON'T KNOW IF IT HAS ANY RELEVANCE

15:42:24   6   HERE ABOUT ACCESSIBILITY AND PORTABILITY.  IS THAT

15:42:28   7   WHERE THIS SORT OF OPERATING SYSTEM FOR SECURITY?

15:42:31   8   I GUESS HOW WOULD SECURITY AFFECT OPERATING SYSTEM?

15:42:33   9           MR. LEE:  ONE OF THE REASONS FOR AN

15:42:38  10   APPLET BACK IN 1995, OR FRANKLY TODAY, IS THIS, YOU

15:42:41  11   HAVE YOUR OPERATING SYSTEM AND THEN YOU HAVE

15:42:45  12   PROGRAMS THAT SIT ON TOP OF IT AND OPERATE.

15:42:48  13           AND I THINK EVERYBODY AGREES THAT'S NOT

15:42:50  14   WHAT THEIR -- SHOULD NOT BE WHAT THIS PATENT IS

15:42:53  15   TALKING ABOUT.

15:42:54  16           ONE OF THEM CAN BE YOUR WEB BROWSER, YOUR

15:42:59  17   WEB BROWSER YOU USE WHEN YOU GO OUT AND YOU

15:43:01  18   DOWNLOAD A PROGRAM OFF OF THE INTERNET.

15:43:05  19           WHEN YOU DOWNLOAD A PROGRAM LIKE THAT YOU

15:43:07  20   DON'T WANT IT TO SIT DIRECTLY ON TOP OF YOUR

15:43:09  21   OPERATING SYSTEM BECAUSE IF THERE'S A VIRUS OR YOU

15:43:12  22   HAVE A PROBLEM, YOU RUN THE RISK THAT IT WILL CAUSE

15:43:15  23   SECURITY PROBLEMS FOR YOUR ENTIRE COMPUTER.

15:43:17  24           SO YOU DOWNLOAD IT SEPARATELY.  IT SITS

15:43:20  25   ON THIS HOST APPLICATION WHICH THEN RUNS -- EITHER

219

15:43:25 1    INTERPRETS OR RUNS THE PROGRAM AND PROVIDES

15:43:28 2    SECURITY FOR YOUR OPERATING SYSTEM.

15:43:29 3            IT ALSO ALLOWS THAT APPLICATION PROGRAM

15:43:36 4    TO RUN ON ANY OPERATING SYSTEM THAT HAS A HOST

15:43:38 5    APPLICATION THAT CAN INTERPRET FOR THE OPERATING

15:43:41 6    SYSTEM.

15:43:41 7            SO IT'S TWO THINGS:  IT'S SECURITY AND

15:43:43 8    ACCESSIBILITY.

15:43:44 9            AND THE IMPORTANT THING FOR OUR PURPOSES,

15:43:47 10   YOUR HONOR, IS WHEN YOU LOOK AT THIS AMENDMENT,

15:43:51 11   JAVA APPLETS WERE WELL-KNOWN IN 1995.  THE FACT

15:43:55 12   THAT THEY PROVIDED SECURED ACCESSIBILITY WAS

15:43:58 13   WELL-KNOWN IN 1995.  AND IT WAS WELL-KNOWN -- THERE

15:44:01 14   WAS A REASON FOR THEM.  YOU DIDN'T HAVE THREE

15:44:03 15   LEVELS INSTEAD OF TWO JUST FOR NO PURPOSE AT ALL.

15:44:09 16           AND WHEN IT CAME TIME TO DISTINGUISH

15:44:12 17   KOKUBO, WHICH HAD AN APPLICATION SOFTWARE INCLUDING

15:44:16 18   MUSIC PLAY, INCLUDING BROWSING, INCLUDING E-MAIL,

15:44:20 19   SITTING ON AN OPERATING SYSTEM CONTROLLED BY A

15:44:23 20   CONTROLLER, SAMSUNG TOOK ONE SENTENCE FROM THE

15:44:27 21   PATENT, WENT TO AN INTERVIEW, CONVINCED THE

15:44:30 22   EXAMINER IT WAS DIFFERENT, TOLD THE EXAMINER IT WAS

15:44:32 23   DIFFERENT FROM THE MERE DISCLOSURE.

15:44:34 24           AND THIS IS I THINK THE INTERESTING

15:44:37 25   QUESTION OF, WE KNOW THEY'RE DIFFERENT, THEY HAVE

                                                        220

15:44:39  1    TO BE.  WHY?  HERE'S THE ANSWER.

15:44:43  2              THE COURT:  IS THERE ANYTHING IN THE

15:44:44  3    INTRINSIC EVIDENCE THAT WOULD SAY PORTABILITY AND

15:44:50  4    THE SECURITY WERE BENEFITS OF THIS INVENTION OR

15:44:54  5    WHAT WAS TRYING TO BE ACHIEVED?

15:44:56  6              MR. LEE:  YOUR HONOR, YOUR HONOR, NO.

15:45:00  7    BUT LET'S GO BACK TO THE ONE SENTENCE ON APPLET.

15:45:03  8              CAN I FLIP BACK TO MAYBE M17, MAYBE,

15:45:06  9    DENNIS.  BACK ONE MORE.  AND EVEN ONE MORE.

15:45:16 10              THIS IS THE ONLY SENTENCE.  AND I THINK

15:45:22 11    THE HONEST ANSWER, YOUR HONOR, THIS SENTENCE

15:45:25 12    DOESN'T ANSWER HOW KOKUBO IS DIFFERENT EITHER IN

15:45:28 13    APPLE'S FAVOR NOR DOES IT ANSWER IT IN SAMSUNG'S

15:45:32 14    FAVOR.

15:45:33 15              I THINK THE DIRECT ANSWER TO YOUR HONOR'S

15:45:35 16    QUESTION IS IN TERMS OF TELLING US WHY THIS

15:45:37 17    SENTENCE IS THERE AND WHY THE APPLICATION MODULE

15:45:41 18    INCLUDED AT LEAST ONE APPLET, THE PATENT DOESN'T

15:45:45 19    SAY SO AT ALL.

15:45:46 20              NOW, PEOPLE OF ORDINARY SKILL IN THE ART

15:45:48 21    HAD SOME IDEA WHY YOU USED APPLETS IN 2005 AND THAT

15:45:53 22    HAS BEEN THE SUBJECT OF THE DEBATE BETWEEN US.

15:46:02 23              IF YOUR HONOR HAS NO FURTHER QUESTIONS --

15:46:04 24    THE ONLY THOUGHT I WOULD LEAVE YOUR HONOR WITH IS

15:46:07 25    THERE -- I THINK, AS I SAID, I THINK SMALL

                                                              221

15:46:10 1   APPLICATIONS MODULE, WHICH ARE INDEPENDENT ISSUES,

15:46:13 2   I HAVE NOTHING FURTHER TO SAY ON.

15:46:14 3           AS YOUR HONOR REFLECTS ON THIS, I WOULD

15:46:16 4   JUST ASK THE COURT TO ASK THIS QUESTION, WHAT IS

15:46:18 5   THE DIFFERENCE BETWEEN KOKUBO AND THIS LIMITATION?

15:46:26 6           MR. JOHNSON:  YOUR HONOR, BRIEFLY.

15:46:28 7   MR. LEE SAID IN REFERENCING THAT SEGMENT FROM THE

15:46:33 8   KOKUBO REFERENCE, SAID THAT HE AND I ARE GOING TO

15:46:36 9   HAVE DIFFERENT VIEWS ON WHAT THAT PARTICULAR

15:46:38 10  SECTION OF THE SPECIFICATION DISCLOSES.

15:46:42 11          WELL, WHAT I WOULD LIKE TO ASK YOUR HONOR

15:46:44 12  TO DO IS DON'T TAKE OUR WORD FOR IT.  LET'S LOOK AT

15:46:47 13  WHAT APPLE'S EXPERT SAID ABOUT IT.

15:46:50 14          HE WAS ASKED DURING HIS DEPOSITION,

15:46:52 15  QUOTE, HE WAS ASKED BY MS. MAROULIS, QUOTE, "DO YOU

15:46:57 16  AGREE WITH MR. COLE'S INTERPRETATION OF THE KOKUBO

15:47:00 17  REFERENCE?

15:47:00 18          "ANSWER:  YES, I AGREE WITH THE BRIEF

15:47:03 19  SUMMARY OF THE KOKUBO PATENT AND I ALSO AGREE WITH

15:47:07 20  THE FACT THAT THE KOKUBO PATENT DOES NOT DEFINE OR

15:47:10 21  REFER TO APPLETS, OPERATING SYSTEM INDEPENDENCE."

15:47:16 22          HE WAS ASKED AGAIN AND HE TESTIFIED

15:47:19 23  SIMILARLY, PAGE 50, LINE 15.

15:47:24 24          "GOING BACK TO THE FILE HISTORY THAT WE

15:47:33 25  WERE DISCUSSING, THE EXAMINER MENTIONED THE KOKUBO

222

15:47:35   1     REFERENCE.  DID YOU REVIEW THAT ONE?

15:47:37   2               "ANSWER:  YES, I READ THROUGH THE KOKUBO

15:47:39   3     PATENT.

15:47:40   4               "QUESTION:  IS THERE ANYTHING IN THE

15:47:41   5     KOKUBO PATENT THAT SUPPORTS YOUR OPINION REGARDING

15:47:44   6     THE MEANING OF THE TERM APPLET?

15:47:46   7               "ANSWER:  I BELIEVE THAT THE KOKUBO

15:47:49   8     PATENT DOES NOT SPEAK OF APPLETS, JAVA, OR THE

15:47:53   9     NOTION OF OPERATING SYSTEM DEPENDENT OR

15:47:58  10     INDEPENDENT.

15:47:58  11               "QUESTION:  SO THE ANSWER IS NO?

15:48:01  12               "ANSWER:  YES.  NO."

15:48:05  13               APPLE'S OWN EXPERT ADMITS THAT THE KOKUBO

15:48:09  14     REFERENCE DOES NOT DISCLOSE OPERATING SYSTEM

15:48:11  15     INDEPENDENCE OR DEPENDENCE.

15:48:13  16               WHAT I HEARD FROM MR. LEE FOR THE LAST

15:48:16  17     SEVERAL MINUTES WAS KOKUBO DISCLOSES OPERATING

15:48:21  18     SYSTEM DEPENDENCE.

15:48:25  19               WE SAW THAT AT SLIDE 28, AND HE ACTUALLY

15:48:29  20     ASKED AS A REMEDY THE OPPORTUNITY TO PROVIDE

15:48:31  21     ANOTHER DECLARATION ON BEHALF OF MR. GIVARGIS.

15:48:32  22               NOW, THE KOKUBO REFERENCE WAS DISCLOSED,

15:48:38  23     DISCUSSED IN THE 4-2 AND 4-3 STATEMENTS, CONSIDERED

15:48:44  24     BY DR. GIVARGIS AS WE JUST SAW.

15:48:46  25               HE HAD EVERY OPPORTUNITY TO TALK ABOUT IT

                                                                  223

15:48:48 1   AND REVIEW IT AND YET IN HIS DEPOSITION TESTIMONY

15:48:50 2   WHEN HE WAS ASKED THE SPECIFIC QUESTION ABOUT

15:48:52 3   WHETHER IT SAYS ANYTHING ABOUT OPERATING SYSTEM

15:48:56 4   INDEPENDENCE/DEPENDENCE, THE ANSWER WAS NO.

15:49:00 5           RIGHT?  THE KOKUBO REFERENCE DOES NOT

15:49:03 6   DISCLOSE ANYTHING ABOUT OPERATING SYSTEM

15:49:06 7   INDEPENDENCE OR DEPENDENCE.

15:49:07 8           GENERATING AN ICON WHICH IS, WHICH IS

15:49:11 9   DISCUSSED IN KOKUBO HAS NOTHING TO DO WITH

15:49:15 10  OPERATING SYSTEM DEPENDENCE OR OPERATING SYSTEM

15:49:19 11  INDEPENDENCE.  IT'S A NON SEQUITUR.

15:49:21 12          THE COURT:  BUT WHAT IS THE DIFFERENCE

15:49:23 13  BETWEEN AN ICON CORRESPONDING TO AN APPLICATION

15:49:27 14  SOFTWARE AND GENERATING A MUSIC BACKGROUND PLAY

15:49:30 15  OBJECT, WHICH I ASSUME IS AN ICON.

15:49:32 16          WHERE IN THE ICON INCLUDES AN APPLICATION

15:49:36 17  MODULE INCLUDING AT LEAST ONE APPLET?

15:49:39 18          THEY BOTH ARE MUSIC BACKGROUND PLAY ICONS

15:49:45 19  CORRESPONDING TO THE APPLICATIONS TO PLAY THE MUSIC

15:49:46 20  IN THE BACKGROUND.

15:49:48 21          MR. JOHNSON:  WHAT KOKUBO WAS ABOUT WAS

15:49:49 22  THE OPPORTUNITY TO SWITCH BETWEEN PROGRAMS, RIGHT?

15:49:52 23          YOU'RE ON MUSIC AND YOU WANT TO SWITCH TO

15:49:54 24  E-MAIL AND IT WOULD GENERATE AN ICON.  IT DID NOT

15:49:59 25  DISCUSS ANYTHING ABOUT AN APPLET.  IT DID NOT

224

15:50:03  1      DISCLOSE GENERATING AN APPLET WHEN YOU WERE PLAYING

15:50:05  2      MUSIC OR WHEN YOU'RE IN ONE PROGRAM VERSUS THE

15:50:08  3      OTHER.

15:50:09  4           IT DID NOT DISCLOSE ANYTHING ABOUT AN

15:50:10  5      OPERATING INDEPENDENT OR DEPENDENT AND THAT'S WHY

15:50:13  6      THE EXAMINER CAME BACK AND SAID WHAT I SUGGEST YOU

15:50:15  7      DO IS PUT IN A LIMITATION ABOUT APPLET AND THAT

15:50:20  8      WILL GET BEYOND WHAT IS IN KOKUBO.

15:50:23  9           KOKUBO SAYS NOTHING ABOUT APPLET AND SAYS

15:50:25 10      NOTHING ABOUT OPERATING SYSTEM INDEPENDENCE OR

15:50:29 11      DEPENDENCE.

15:50:30 12           AND SO YOUR HONOR ASKED MR. LEE THE

15:50:32 13      QUESTION, IS THIS -- I DON'T SEE ANY EVIDENCE THAT

15:50:34 14      THIS IS RELEVANT TO THE EXAMINER, AND YOUR HONOR IS

15:50:37 15      EXACTLY RIGHT.

15:50:38 16           WE ALL KNOW FROM SITTING HERE TODAY AND

15:50:42 17      FROM STUDYING THE BLACK LETTER LAW, ANY CLAIM TERM

15:50:47 18      DISAVOWAL, ANY DISAVOWAL IN THE PROSECUTION HISTORY

15:50:51 19      HAS TO BE CLEAR AND UNMISTAKABLE.

15:50:53 20           AND WE HEARD APPLE SAY THAT ALL DAY

15:50:56 21      TODAY, AND WE HEARD IT SAY IT IN THE PAST.

15:50:58 22           THIS IS NOT CLEAR AND UNMISTAKABLE IN ANY

15:51:02 23      SENSE AND THIS DOES NOT TELL A PERSON OF ORDINARY

15:51:04 24      SKILL IN THE ART THAT SAMSUNG WAS LIMITING THE TERM

15:51:07 25      "APPLET" TO OPERATING SYSTEM INDEPENDENT PROGRAMS

                                                            225

15:51:09 1    OR APPLETS.  IT HAS NOTHING TO DO WITH THAT.

15:51:12 2              THEY'RE TRYING TO READ A LIMITATION INTO

15:51:14 3    THE CLAIMS.

15:51:18 4              LET ME GO BACK AGAIN TO DR. GIVARGIS

15:51:20 5    BECAUSE HE HAD EVERY OPPORTUNITY TO REVIEW THE

15:51:22 6    PROSECUTION HISTORY AND HE DID.

15:51:24 7              AND HE WAS ASKED AT SLIDE 10.

15:51:26 8              "WAS THERE ANY REFERENCE TO APPLETS BEING

15:51:33 9    OPERATING SYSTEM INDEPENDENT?

15:51:35 10             "ANSWER:  I DO NOT RECALL ANY REFERENCE

15:51:37 11   TO OPERATING SYSTEM INDEPENDENT APPLETS IN THE FILE

15:51:40 12   HISTORY THAT I REVIEWED."

15:51:41 13             IT'S NOT IN HIS DECLARATION.  FRANKLY,

15:51:44 14   THIS ARGUMENT ABOUT KOKUBO NOW DISCLOSING OPERATING

15:51:47 15   SYSTEM DEPENDENCE, THAT'S NOT IN THEIR BRIEFS.  I

15:51:51 16   LOOKED WHEN MR. LEE WAS TALKING ABOUT IT, AND I

15:51:53 17   LOOKED AT THE SLIDES THAT THEY POSTED AND THERE'S

15:51:57 18   NO REFERENCE TO OR CITE TO DR. GIVARGIS IN SUPPORT

15:52:00 19   OF THIS.  THERE'S NO REFERENCE TO MR. COLE IN

15:52:02 20   SUPPORT OF THIS.

15:52:02 21             AND THIS IS PURE ARGUMENT THAT WE HAVE

15:52:05 22   SEEN FOR THE FIRST TIME TODAY.  I DIDN'T SEE IT IN

15:52:08 23   THEIR BRIEFS.

15:52:08 24             GOING BACK TO OUR SLIDE 13.

15:52:16 25             THERE ARE APPLETS THAT ARE BOTH CAN BE

                                                         226

15:52:19  1    OPERATING SYSTEM DEPENDENT LIKE APPLESCRIPT,

15:52:24  2    PYTHON, RUBY; AND INDEPENDENT, JAVA.  THE PATENT

15:52:28  3    SAYS APPLET.  THE CLAIMS SAY APPLET.

15:52:31  4            THE ONE SENTENCE IN THE SPEC SAYS APPLET.

15:52:36  5    THERE'S NO LIMITATIONS IN THE CLAIMS, IN THE SPEC

15:52:39  6    OR IN THE PROSECUTION HISTORY THAT LIMITS APPLET TO

15:52:41  7    OPERATING SYSTEM INDEPENDENCE.  IT'S JUST NOT

15:52:45  8    THERE.

15:52:50  9            AND I THINK OPERATING SYSTEM INDEPENDENT

15:52:53 10    ACTUALLY ADDS A MEASURE OF AMBIGUITY THAT WOULD NOT

15:52:57 11    INFORM THE JURY IN THIS CASE OR ANYWHERE ELSE.

15:53:00 12            AND WHEN DR. GIVARGIS WAS ASKED ABOUT

15:53:04 13    OPERATING SYSTEM INDEPENDENT HE TESTIFIED, SLIDE 7,

15:53:07 14    PLEASE, "WOULD YOU BE ABLE TO RUN AN APPLESCRIPT

15:53:12 15    APPLETS ON A WINDOWS COMPUTER?

15:53:13 16            THIS, BY APPLE'S ADMISSION, YOU HEARD IN

15:53:14 17    THE TUTORIAL APPLESCRIPT IS AN OS DEPENDENT APPLET.

15:53:20 18            "WOULD YOU BE ABLE TO RUN AN APPLESCRIPT

15:53:23 19    APPLET ON A WINDOWS COMPUTER?

15:53:25 20            "ANSWER:  IF I COULD OBTAIN THE

15:53:27 21    SPECIFICATION FOR THE APPLESCRIPT PROGRAMMING

15:53:29 22    LANGUAGE AND THIS SCRIPTING LANGUAGE, AND IF I WERE

15:53:31 23    TO BUILD AN INTERPRETER THAT RAN NATIVELY ON

15:53:34 24    WINDOWS, THEN I COULD TAKE AN APPLESCRIPT APPLET

15:53:37 25    AND WITHOUT MODIFICATION RUN IT AND INTERPRET IT ON

227

15:53:40  1      THE WINDOWS ENVIRONMENT."

15:53:42  2                THIS JUST GOES TO SHOW THE AMBIGUITY THAT

15:53:45  3      APPLET IS TRYING TO INTERJECT INTO THIS SIMPLE

15:53:47  4      CLAIM TERM "APPLET" SHOULD BE REJECTED.

15:53:54  5                AND JUST ADDRESSING THIS ONE FINAL POINT

15:53:57  6      THAT MR. LEE RAISED WITH RESPECT TO INTERNET

15:54:00  7      EXPLORER AND THE ISSUE OF SECURITY.  INTERNET

15:54:03  8      EXPLORER IS NOT AN APPLET.  THAT'S A PROGRAM.

15:54:06  9      THAT'S AN APPLICATION PROGRAM.  THAT'S NOT AN

15:54:09 10      APPLET.

15:54:10 11                SO THE DISCUSSION WITH RESPECT TO WEB

15:54:14 12      BROWSING USE INTERNET EXPLORER WAS JUST IRRELEVANT

15:54:17 13      IN OUR VIEW.  AND UNLESS YOUR HONOR HAS ANY OTHER

15:54:20 14      QUESTIONS?

15:54:21 15                THE COURT:  NO, THAT'S IT.

15:54:23 16                I WAS INITIALLY OPEN TO HAVING SOME SMALL

15:54:34 17      RELIEF AS TO THE 4-2 EXTRINSIC EVIDENCE DISCLOSURE,

15:54:39 18      BUT IF THE REQUEST IS TO ADDRESS KOKUBO, WHICH HAS

15:54:42 19      REALLY NOT ANY RELEVANCE TO WHAT WAS UNTIMELY

15:54:47 20      DISCLOSED, THAT REQUEST FOR RELIEF IS DENIED.

15:54:53 21                OKAY.  LET'S SET UP A FOLLOW-UP CMC.

15:54:58 22                WE HAVE FACT DISCOVERY CUT-OFF OF MARCH

15:55:05 23      8TH.  SO SHOULD WE HAVE A CMC ON MARCH 11TH?  THE

15:55:14 24      OTHER OPTION WOULD BE APRIL 11TH, BUT THAT'S IN THE

15:55:18 25      MIDST OF EXPERT DISCOVERY.

                                                              228

15:55:21 1     THE CLERK:  DID YOU MEAN MARCH 21?  THE

15:55:23 2 11TH IS A SUNDAY.

15:55:58 3     THE COURT:  WHAT ABOUT THE 27TH?

15:56:01 4     THE CLERK:  THAT'S THE LEE TRIAL.  THE

15:56:03 5 7TH, WE HAVE BROCADE.

15:56:07 6     THE COURT:  WHAT ABOUT APRIL 11TH UNLESS

15:56:11 7 YOU NEED SOMETHING SOONER?

15:56:13 8     WE HAVE YOU SCHEDULED THROUGH TRIAL SO I

15:56:17 9 DON'T ANTICIPATE.

15:56:18 10     THE CLERK:  THE 11TH LOOKS REALLY GOOD.

15:56:20 11     THE COURT:  IS APRIL 11TH OKAY FOR

15:56:22 12 FURTHER CMC?

15:56:24 13     MR. JACOBS:  YES.  YES, YOUR HONOR.

15:56:27 14     MR. VERHOEVEN:  YES, YOUR HONOR.

15:56:29 15     THE COURT:  OKAY.  NOW, OBVIOUSLY YOUR

15:56:33 16 DISPOSITIVE MOTIONS MAY DEPEND ON CLAIM

15:56:36 17 CONSTRUCTION, BUT I WOULD LIKE TO LIMIT THE NUMBER

15:56:38 18 OF DISPOSITIVE MOTIONS, AND WE NEED TO TALK ABOUT

15:56:44 19 THAT.

15:56:45 20     WE ACTUALLY COULD TALK ABOUT IT ON

15:56:47 21 APRIL 11TH.  WOULD YOU LIKE TO DO THAT THEN?  IF

15:56:49 22 THE LAST DATE TO FILE DISPOSITIVE MOTIONS IS MAY

15:56:52 23 17TH.  SO THAT WOULD GIVE YOU ABOUT A MONTH.

15:57:02 24     MR. LEE:  YOUR HONOR, THAT'S FINE.  WE

15:57:04 25 ACTUALLY PLANNED TO FILE ONE EARLY NEXT WEEK THAT

229

15:57:07 1      GO TO ISSUES OF LICENSE AND CLAIM DISCLOSURE AND

15:57:12 2      IT'S PARTIAL SUMMARY JUDGMENT.  IT WOULDN'T DEAL

15:57:14 3      WITH THE CASE ENTIRELY BUT ON THE DEFENSIVE SIDE.

15:57:19 4              THE COURT:  AND WHAT IS IT AGAIN?

15:57:21 5              MR. LEE:  IT'S GOING TO DEAL WITH ISSUES

15:57:23 6      OF LICENSE, ENFORCEABILITY OF THE STANDARD

15:57:27 7      ESSENTIAL PATENTS UNDER THE FEDERAL CIRCUIT'S

15:57:30 8      BROADCOM DECISION, AND THE QUESTION OF WHETHER

15:57:33 9      INJUNCTIVE RELIEF IS AVAILABLE AS A REMEDY IN LIGHT

15:57:40 10     OF DECLARATIONS.

15:57:42 11             AND I THINK THAT WILL BE IN BY NEXT

15:57:44 12     TUESDAY OR WEDNESDAY.

15:57:45 13             AND SINCE YOUR HONOR WAS SETTING UP A

15:57:47 14     SCHEDULE, I DIDN'T WANT TO WAIT TO SET THE SCHEDULE

15:57:50 15     AND THEN HAVE THAT DROP IN FROM OUTER SPACE.

15:58:02 16             THE COURT:  LET ME ASK MS. PARKER-BROWN

15:58:04 17     WHEN ARE WE SETTING MOTIONS?

15:58:06 18             THE CLERK:  THE EARLY PART OF MAY.

15:58:08 19             THE COURT:  WELL, I GUESS WHEN YOU HAVE

15:58:10 20     THOSE ON FILE YOU WILL HAVE TO CALL HER TO GET THE

15:58:13 21     NEXT AVAILABLE DATE, BUT IT MAY NOT BE UNTIL EARLY

15:58:16 22     MAY.

15:58:30 23             WHAT WOULD THIS DISPOSE OF?  OBVIOUSLY

15:58:33 24     INJUNCTIVE RELIEF.  ONE OF THE PATENTS?  ALL OF THE

15:58:38 25     PATENTS.

                                                            230

15:58:39  1          MR. LEE:  IT COULD BE ALL OF THE ASSERTED

15:58:41  2     PATENTS THAT ARE ASSERTED BY SAMSUNG AGAINST APPLE.

15:58:46  3          IT'S PARTIAL, YOUR HONOR, SINCE YOU HAVE

15:58:48  4     BOTH CASES BEFORE YOU.  IT WOULD -- THE LICENSE

15:58:51  5     DEFENSES WOULD DISPENSE WITH THOSE STANDARD

15:58:54  6     CENTRAL -- THE PLAINTIFFS ASSERTED AGAINST CERTAIN

15:58:58  7     PRODUCTS AS A RESULT OF OUR PURCHASE FROM INTEL AND

15:59:02  8     IT WOULD ALSO ADDRESS THE ISSUE OF INJUNCTIVE

15:59:05  9     RELIEF ENTIRELY AS TO APPLE.

15:59:20 10          THE COURT:  ALL RIGHT.  IS THERE GOING TO

15:59:22 11     BE A LOT OF EXPERTS ON WHAT IS ESSENTIALLY AND WHAT

15:59:25 12     IS NOT?

15:59:26 13          MR. LEE:  THE ANSWER IS, NO, YOUR HONOR.

15:59:28 14     ACTUALLY MOST OF THE SUPPORTING MATERIALS COMES

15:59:31 15     DIRECTLY FROM SAMSUNG'S FILES.

15:59:33 16          THERE WILL BE A DECLARATION OF A FRENCH

15:59:36 17     LAW EXPERT.  YOU HAVE ONE OF THOSE ON THE MOTION TO

15:59:39 18     DISMISS THE ANTITRUST CLAIMS AND THE RELATED CLAIMS

15:59:44 19     IN ANY EVENT.

15:59:45 20          THE ONLY DECLARATION THAT WE INTEND TO

15:59:48 21     FILE IS THE FRENCH LAW EXPERT.  MAYBE I SHOULD

15:59:51 22     DOUBLE-CHECK.

15:59:58 23          THERE ARE TWO.  THERE'S AN ETSI,

16:00:07 24     DECLARATION, AND YOU'RE NOT GOING TO HAVE 10 OR 15

16:00:10 25     DECLARATIONS.  THE MOTION IS BASED ON A DISCRETE

                                                          231

16:00:12  1        SET OF FACTS.

16:00:13  2                  THE COURT:  ALL RIGHT.  DID YOU WANT TO

16:00:14  3        BE HEARD?

16:00:16  4                  MR. VERHOEVEN:  IF YOUR HONOR WANTS, THIS

16:00:18  5        IS THE FIRST I'M HEARING OF THIS.  IT SOUNDS LIKE

16:00:20  6        AT LEAST PART OF THEIR MOTION IS A MOTION SIMILAR

16:00:23  7        TO MOTIONS THAT HAVE BEEN FILED MANY TIMES IN

16:00:26  8        STANDARD PATENT CASES WHEN THE ACCUSED INFRINGER

16:00:33  9        HAS SOUGHT TO OBTAIN A REMEDY OR GET AN ADVISORY

16:00:40 10        OPINION FROM THE COURT AS TO WHAT REMEDIES ARE

16:00:43 11        AVAILABLE BEFORE THERE'S ANY DETERMINATION AS TO

16:00:45 12        INFRINGEMENT IN THE FIRST PLACE.

16:00:47 13                  THOSE, AS FAR AS I'M AWARE, HAVE ALWAYS

16:00:51 14        BEEN DENIED, BUT I CAN'T STOP THEM FROM FILING THE

16:00:55 15        MOTION.

16:00:56 16                  THE SECOND POINT, THOUGH, I WOULDN'T

16:01:00 17        MENTION IS THAT MY UNDERSTANDING IS THAT WE'RE

16:01:02 18        SMACK DAB IN THE MIDDLE OF DISCOVERY ON THESE

16:01:06 19        ISSUES.  MS. MAROULIS IS MORE FAMILIAR THAN ME ON

16:01:10 20        THAT.

16:01:10 21                  BUT THE QUESTION AND THE LOGIC OF FILING

16:01:13 22        ONE AT THIS POINT, WHETHER IT'S PROBABLY GOING TO

16:01:15 23        BE A 56(F) MOTION ON IT BECAUSE DISCOVERY HAS NOT

16:01:19 24        BEEN COMPLETED.

16:01:20 25                  THE COURT:  BUT ISN'T THIS YOUR

                                                              232

16:01:22   1    DISCOVERY, THESE ARE YOUR PATENTS, YOU'RE THE

16:01:25   2    MEMBER OF THE STANDARD SETTING BODY.  WHAT 56(F)

16:01:29   3    WOULD YOU NEED?

16:01:30   4             MR. VERHOEVEN:  WELL, I HAVEN'T SEEN THE

16:01:31   5    MOTION YET.

16:01:33   6             MS. MAROULIS:  YOUR HONOR, IF I MAY

16:01:34   7    ADDRESS BRIEFLY.  FIRST OF ALL, WE HAVE A MOTION TO

16:01:36   8    BE DISMISS THAT IS SCHEDULED TO BE HEARD ON

16:01:39   9    APRIL 4TH, AND THAT MOTION MAY DISPOSE OF SOME OF

16:01:41  10    THESE CLAIMS WITH RESPECT TO ANTITRUST.

16:01:44  11             BESIDES THAT THERE'S DISCOVERY

16:01:47  12    OUTSTANDING.  FOR EXAMPLE, I HEARD MR. LEE MENTION

16:01:49  13    THE QUESTION OF INTEL AND THE EXHAUSTION DEFENSE,

16:01:51  14    AND WE HAVE DISCOVERY OUTSTANDING AS TO BOTH APPLE

16:01:54  15    AND INTEL AS TO VARIOUS ISSUES AND THAT'S NOT

16:01:59  16    SQUARELY IN SAMSUNG'S FILES.  AND THERE MAY BE

16:02:01  17    ADDITIONAL POINTS THAT THEY WANT TO READ THE MOTION

16:02:04  18    AND AS SOON AS THEY GIVE IT TO US WE CAN ADVISE THE

16:02:07  19    COURT ON THE STATE OF DISCOVERY.

16:02:09  20             THE COURT:  LET ME HEAR MR. LEE.  WOULD

16:02:11  21    IT MAKE SENSE TO JUST HAVE -- I DON'T WANT TO SPEND

16:02:18  22    A LOT OF EFFORT TO JUST SAY THAT THERE'S, A, YOU

16:02:21  23    KNOW, ONGOING DISCOVERY THAT NEEDS TO HAPPEN.

16:02:25  24             MR. LEE:  YOUR HONOR, I HAVE TWO

16:02:27  25    RESPONSES.  IF IT'S NOT GOING TO BE HEARD UNTIL MAY

                                                          233

16:02:29 1    THE 5TH -- I ACTUALLY THINK THESE ISSUES ARE

16:02:33 2    DISCRETE ISSUES.

16:02:35 3              I DON'T -- TO THE EXTENT THAT

16:02:38 4    MR. VERHOEVEN IS CHARACTERIZING WHAT OTHER COURTS

16:02:42 5    HAVE DONE, I DON'T THINK YOU CAN DESCRIBE THAT WITH

16:02:44 6    UNANIMITY.

16:02:45 7              FIRST, YOUR HONOR, THIS IS NOT GOING TO

16:02:48 8    BE AFFECTED BY THE MOTION TO DISMISS.  THIS IS THE

16:02:50 9    QUESTION OF WHETHER THEY CAN PURSUE THE CLAIMS

16:02:52 10   UNDER THE PATENTS THEY HAVE ASSERTED AGAINST US,

16:02:55 11   AGAINST US.

16:02:56 12             THIS IS A DEFENSE OF UNENFORCEABILITY.

16:02:59 13             THIS IS A DEFENSE THAT -- THIS IS PARTIAL

16:03:02 14   SUMMARY JUDGMENT AND INJUNCTIVE RELIEF IS NOT

16:03:05 15   AVAILABLE AND IT'S PARTIAL SUMMARY JUDGMENT THAT

16:03:07 16   WE'RE LICENSED UNDER THE INTEL LICENSE.

16:03:16 17             SO, YOUR HONOR, I WOULD LIKE TO ASK YOUR

16:03:19 18   HONOR'S PERMISSION, WE'LL FILE NEXT WEEK.  I THINK

16:03:21 19   IT'S IMPORTANT TO GET IT BEFORE THE COURT AND

16:03:23 20   DECIDED.

16:03:23 21             I WILL ALSO REPRESENT TO THE COURT THAT

16:03:25 22   IF IT'S HEARD IN MAY, GIVEN WHEN THE TRIAL IS

16:03:28 23   SCHEDULED FOR, THIS WOULD SUBSTANTIALLY NARROW THE

16:03:31 24   ISSUES FOR TRIAL.  IT WOULD TAKE UP ALL OF THE

16:03:34 25   ESSENTIAL PATENTS.

234

16:03:35 1       THE COURT: LET ME ASK YOU ANOTHER

16:03:37 2  QUESTION THOUGH, TO AVOID THEM MAKING A 56(D)

16:03:40 3  MOTION THAT THEY NEED MORE EVIDENCE, WOULD YOU ALL

16:03:43 4  AGREE TO SOME BRIEFING SCHEDULE IF IT'S NOT GOING

16:03:46 5  TO BE HEARD UNTIL MAY?

16:03:48 6       MR. LEE: YES.

16:03:48 7       THE COURT: I THINK THAT WOULD TAKE CARE

16:03:50 8  OF IT.

16:03:51 9       I MEAN, I DO WANT THIS TO BE HEARD BEFORE

16:03:59 10 OUR -- I MEAN OUR PRETRIAL CONFERENCE IS JULY 14TH,

16:04:02 11 AND I UNDERSTAND IN ORDER TO GET SOMETHING FILED

16:04:04 12 YOU NEED TO FILE IT NOW JUST BECAUSE THE WAY OUR

16:04:07 13 DOCKET IS SO CONGESTED.

16:04:08 14      BUT IF YOU CAN WORK WITH SAMSUNG ON A

16:04:11 15 BRIEFING SCHEDULE, THEN TO TRY TO OBVIATE THE NEED

16:04:13 16 FOR A 56(D) MOTION THEN I APPRECIATE THAT.

16:04:17 17      MR. LEE: WE'LL DO THAT.

16:04:19 18      THE COURT: OKAY. ALL RIGHT. WELL, IT

16:04:21 19 COULD BE THAT WE END UP -- WELL, WE HAVE A HEARING

16:04:24 20 YOU SAID ON THE MOTION TO DISMISS ON APRIL 4TH?

16:04:27 21      THE CLERK: APRIL 5TH.

16:04:30 22      THE COURT: AND WHY DON'T WE SCRATCH THIS

16:04:31 23 CMC ON APRIL 11TH AND LET'S DO IT ON THAT DAY,

16:04:37 24 APRIL 5TH OF 2012 AT 1:30.

16:04:40 25      OKAY. NOW, LET ME ASK ONE LAST QUESTION,

235

16:04:48  1    AND THIS MIGHT BE A WASTE OF BREATH, WILL THERE BE

16:04:51  2    ANY POINT WHERE YOU THINK THAT ADR MIGHT BE USEFUL

16:04:55  3    OR NOT?  WOULD IT BE AFTER A CLAIM CONSTRUCTION

16:05:00  4    RULING?  OR NO?  OR IS THIS JUST MARCHING TO TRIAL?

16:05:07  5              MR. JACOBS:  I DON'T THINK THE COURT

16:05:08  6    ORDERED ADR IS NECESSARY OR HELPFUL IN THIS

16:05:11  7    PARTICULAR CASE.

16:05:12  8              THE COURT:  OKAY.

16:05:19  9              MR. VERHOEVEN:  WE'RE IN AGREEMENT WITH

16:05:20 10    THAT, NOT BECAUSE I DON'T WANT TO GIVE YOU THE

16:05:23 11    IMPRESSION IT'S NOT BECAUSE WE'RE NOT TALKING.  WE

16:05:25 12    ARE TALKING.

16:05:26 13              THE COURT:  OKAY.  ALL RIGHT.  WELL,

16:05:28 14    THANK YOU.

16:05:29 15              THEN I DON'T THINK THAT THERE IS ANYTHING

16:05:32 16    ELSE UNLESS YOU THINK WE NEED TO COVER ANYTHING

16:05:35 17    ELSE.

16:05:36 18              MR. VERHOEVEN:  I THINK THAT'S IT FOR

16:05:38 19    TODAY.

16:05:38 20              THE COURT:  OKAY.  THANK YOU VERY MUCH.

16:05:41 21              MR. MCELHINNY:  WE APPRECIATE YOUR TIME,

16:05:45 22    YOUR HONOR.

16:05:46 23              MR. VERHOEVEN:  THANK YOU.

16:05:49 24              (WHEREUPON, THE EVENING RECESS WAS

16:05:49 25    TAKEN.)

                                                            236

1

2

3

4                    CERTIFICATE OF REPORTER

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23                    /S/

                      _____
24                    IRENE RODRIGUEZ, CSR, CRR
                      CERTIFICATE NUMBER 8074
25
                      DATED:  JANUARY 26, 2012

                                                        237