# EXHIBIT 1

# EXHIBIT O

# FILED UNDER SEAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

vs. Case No. 11-CV-01846-LHK

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

--------------------------------/

CONFIDENTIAL
ATTORNEYS' EYES ONLY
OUTSIDE COUNSEL
VIDEOTAPED DEPOSITION OF IMRAN CHAUDHRI
Redwood Shores, California
Friday, October 14, 2011

Reported by:
LORRIE L. MARCHANT, CSR No. 10523, RPR, CRR, CCRR, CLR

JOB NO. 42879

(Marked for identification purposes, Exhibit 570 through 572.)

THE VIDEOGRAPHER: We are on the video record at 9:34 a.m. In the matter of Apple Inc., versus Samsung, in the United States District Court, Northern District of California. Case No. 11-CV-01846-LHK.

We are located today at 555 Twin Dolphin Drive, in the City of Redwood Shores, California. Today is October 14, 2011, and the time is 9:35 a.m.

My name is Alan Dias from TSG Reporting.

Counsel, would you please identify yourself for the record.

MR. WHITEHURST: Good morning. My name Alan Whitehurst. And with me today is my colleague, Alex Baxter. We are with the law firm Quinn Emanuel, and we represent Samsung.

MR. KREEGER: Matthew Kreeger, Morrison & Foerster, representing Apple. With me is Cyndi Wheeler from Apple.

THE VIDEOGRAPHER: Will the court reporter please swear in the witness.

THE REPORTER: Do you solemnly swear or affirm under the penalties of perjury that the testimony you are about to offer will be the truth,

the whole truth and nothing but the truth?
THE WITNESS: I do.
THE VIDEOGRAPHER: You may proceed.
EXAMINATION BY MR. WHITEHURST
BY MR. WHITEHURST:
Q. Good morning, Mr. Chaudhri.
A. Good morning.
Q. My name is Alan Whitehurst, and I will be taking your deposition today.
Could you please state your full name and address for the record.
A. My name is Imran Chaudhri. My address is 57 Beaumont, San Francisco, California 94118.
Q. And before the deposition, I marked as Exhibit 570 a copy of your Deposition Notice.
Have you testified in a deposition before?
A. I have.
Q. How many times?
A. Once.
Q. And what case was that for?
A. It was a -- a case involving Motorola.
Q. Was that for a litigation between Motorola and Apple?
A. I believe so.
Q. And when was that deposition?





Q. When did you first find out about that Apple-Samsung litigation that you're testifying in today?

A. I don't remember exactly.

Q. Just looking for the date.

REDACTED

Q. And when did this occur?

A. I don't know exactly the date. But it would be the 2000 time frame.

Q. How do you know it was the 2000 time frame?
A. That's when we were doing most of our -- our work on the version.
Q. Do you have any documents that would show this work?
A. Other than the prototypes I mentioned, I -- I don't know of anything more than that.
Q. Sometimes in cartoons you'll see somebody come up with a great idea, and a light bulb would -- goes off. Kind of that aha moment.
Did you ever have an aha moment, a eureka moment, for the '891 patent?
MR. KREEGER: Objection. Form.
Go ahead.
THE WITNESS: I don't know.
BY MR. WHITEHURST:
Q. So sitting here today, you can't remember a particular moment or a particular instance in time that you came up with the '891 patent?
A. I don't remember the time.
Q. Would you say that it was a gradual process?
A. What -- what process?
Q. The process of coming up with the idea for the '891 patent. Let me reask my question.

Would you say that the process of coming up with the idea for the '891 patent was a gradual process?

A. I don't know. I -- I know it went rather quickly.

Q. Why do you say it went rather quickly?

A. We -- we spent a lot -- spent -- we used to have a lot more time back then. And we spent a lot of hours on it. So days were shorter, hours were longer.

Q. And when was this time period?

A. 2000.

Q. So we're talking about 11 years ago; correct?

A. M-hm.

Q. And 11 years ago, there was a time period when it went rather quickly?

A. I -- I think there's aspects of it that go quickly.

Q. So how do you know that there was a time period 11 years ago that went very quickly?

A. I remember working on it for a long time.

Q. So now I'm confused. You said you worked it on for a long time, but it went rather quickly.

A. I remember concentrating on it for a long

period of time in terms of hours. Like I said earlier, we spent more -- had more time to spend on it in terms of hours versus the amount of days we spent on it.

Q. And when did this time period start?

A. I don't know exactly what time it was.

Q. And when did this time period end?

A. I don't remember.

Q. Was it spring?

A. I couldn't say.

Q. Was it summer?

A. I don't know.

Q. Was it fall?

A. I don't know.

Q. Was it winter?

A. I don't believe so.

Q. So there's a time period somewhere in 2011, but you can't remember whether it's spring, summer, fall or winter?

MR. KREEGER: Did you mean to say 2011?

MR. WHITEHURST: Thank you.

BY MR. WHITEHURST:

Q. So there's a time period somewhere in 2000, but you can't remember whether it's spring, summer, fall or winter?

Q. Any others?
A. Those are really the ones I had.
Q. When did you use an Amiga monitor?
A. It would be late '80s.
MR. WHITEHURST: I'm going to mark as Exhibit 573 a copy of Apple's interrogatory responses.
(Marked for identification purposes, Exhibit 573.)
BY MR. WHITEHURST:
Q. Have you seen this document before?
A. No, I haven't.
Q. If you would please turn to page 10.
A. Okay.
Q. Do you see at the top of page 10 a header with the '891 patent number?
A. M-hm.

REDACTED

Confidential Attorneys' Eyes Only





BY MR. WHITEHURST:

Q. So you're not sure whether this is an accurate statement or not?

A. Yeah. It's something that I would have to do some due diligence -- due diligence on to really verify.




BY MR. WHITEHURST:

Q. If you would please turn back to Exhibit 571.

A. '891?

Q. Yes, the '891 patent. And then turn to Column 10.

A. Okay.

Q. You see at the top of Column 10 a Claim 1 that begins on line 5?

A. Yes.

Q. If you would please read Claim 1 to yourself. And let me know when you're done reading it, please.

A. Okay. Okay.

Q. Do you understand Claim 1?

A. To the best of my ability.

Q. Do you believe that you're an inventor of Claim 1?

A. I believe so.

Q. Do you believe that Bas Ording is an inventor of Claim 1?

A. He and I worked on it together, so, yeah.

Q. What was your contribution to Claim 1?

A. It would be the idea of the window starting a timer and essentially not having to close with any management.

Q. Anything else?

A. Beyond it reacting to some input, which is just part of the -- it's just part of the whole story.

Q. So what part of Claim 10 are you looking at -- excuse me, Claim 1 are you looking at?

CERTIFICATE

STATE OF CALIFORNIA )
) : ss
COUNTY OF SONOMA )

I, Lorrie L. Marchant, a Certified Shorthand Reporter, a Registered Professional Reporter, a Certified Realtime Reporter, and a Certified Realtime Professional within and for the State of California, do hereby certify:

That IMRAN CHAUDHRI, the witness whose deposition is herein set forth, was duly sworn/affirmed by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

In witness whereof, I have hereunto set my hand this 15th day of October, 2011.

---------------------------------------------
LORRIE L. MARCHANT, CSR, RPR, CRR, CLR, CCRR
CSR No. 10523