# EXHIBIT 1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO APPLE'S EFFORTS TO OBTAIN DESIGN PATENTS RELATED TO THE PATENTS-IN-SUIT**<br><br>Date: April 10, 2012<br>Time: 3:00 p.m.<br>Courtroom: 5, 4th Floor<br>Honorable Paul S. Grewal<br><br>**FILED UNDER SEAL** |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 10, 2012, at 3:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court for an order compelling Apple Inc. ("Apple") to produce for inspection documents and things in response to Samsung's Requests for Production Nos. 81, 82, 97, 98, and 362 including without limitation any documents relating to any Apple applications for design patents related to the patents-in-suit, including those related to Apple's claimed commercial embodiments of the patents-in-suit.

This motion is based on this notice of motion and supporting memorandum of points and authorities; the declaration of Diane C. Hutnyan (the "Hutnyan Decl."); and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

## RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 37(a)(1), Samsung seeks an order compelling Apple to produce to Samsung the documents and things set forth in Samsung's Civil L.R. 37-2 Statement (below) by April 20, 2012.

## SAMSUNG'S CIVIL L.R. 37-2 STATEMENT

Pursuant to Civil L.R. 37-2, Samsung's discovery requests to Apple are set forth in full below along with Apple's responses and objections:

**SAMSUNG'S REQUEST FOR PRODUCTION NO. 81**:

Prosecution histories of the APPLE IP, including all PRIOR ART cited therein, patents related to the APPLE PATENTS-IN-SUIT, and any foreign counterpart patents, registrations, or applications to the APPLE IP or patents related to the APPLE PATENTS-IN-SUIT, including, without limitation, any reexamination and reissue applications.

**APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

[redacted]

**SAMSUNG'S REQUEST FOR PRODUCTION NO. 82:**

All DOCUMENTS and things relating to the preparation, filing and/or prosecution of the APPLE IP, patents related to the APPLE PATENTS-IN-SUIT, and any foreign counterpart patents or patent applications to the APPLE PATENTS-IN-SUIT or patents related to the APPLE PATENTS-IN-SUIT, including, without limitation, any reexamination and reissue applications.

**APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 82**:

[redacted]

1

2

3

4

5

6

7

8

9

10

11 **SAMSUNG'S REQUEST FOR PRODUCTION NO. 98:**

12      All DOCUMENTS and things relating to any information, including patents, publications,

13 prior knowledge, public uses, sales, or offers for sale, that may constitute, contain, disclose, refer

14 to, relate to, or embody any PRIOR ART to any alleged invention claimed by the APPLE IP.

15 **APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 98**:

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3    **SAMSUNG'S REQUEST FOR PRODUCTION NO. 97:**

4    All DOCUMENTS and COMMUNICATIONS concerning the patentability, novelty,

5    scope, infringement, validity, invalidity, enforceability or unenforceability of any claim in any of

6    the APPLE IP.

7    **APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    **SAMSUNG'S REQUEST FOR PRODUCTION NO. 362:**

25    All DOCUMENTS RELATING to any applications or other attempts by APPLE to obtain

26    any design patent registration for the iPad 2, whether in a foreign country or in the U.S.

27    **APPLE'S RESPONSE TO REQUEST FOR PRODUCTION NO. 362:**

28

1

2

3

4

5

6

7

8

9

10

11

12    **SAMSUNG'S CERTIFICATION PURSUANT TO FED. R. CIV. P. 37(a)(1)**

13         Samsung hereby certifies that it has in good faith conferred with Apple in an effort to obtain

14   the discovery described immediately above without Court action.    Samsung's efforts to resolve

15   this discovery dispute without court intervention are described in paragraphs 9-10 of the declaration

16   of Diane C. Hutnyan, submitted herewith.

17   DATED: March 6, 2012                QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
18

19

20                                        By   /s/ Victoria F. Maroulis
                                             Charles K. Verhoeven
21                                           Kevin P.B. Johnson
                                             Victoria F. Maroulis
22                                           Michael T. Zeller
                                             Attorneys for SAMSUNG ELECTRONICS CO.,
23                                           LTD., SAMSUNG ELECTRONICS AMERICA,
                                             INC., and SAMSUNG
24                                           TELECOMMUNICATIONS AMERICA, LLC

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.     Introduction ................................................................................................................ 1

II.    Facts .......................................................................................................................... 2

       A.     Apple's Claims Based on the D'889 Design Patent.................................. 2

       B.     Samsung's Effort To Obtain Documents Relating To Any Apple Design
              Patent Applications For The Designs Embodied In The iPad2.......................... 3

III.   LEGAL STANDARDS ............................................................................................. 4

IV.    Argument..................................................................................................................... 5

       A.     Apple's Patent Applications Relating To The Patents-In-Suit Or Their
              Claimed Commercial Embodiments Are Relevant To Samsung's Defenses ........... 5

       B.     Any Confidentiality Or Competitive Concerns Are Satisfied By The
              Protective Order ............................................................................................... 7

V.     Conclusion.................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page**

## Cases

*Caliper Technologies Corp. v. Molecular Devices Corp.*,
  213 F.R.D. 555 (N.D. Cal. 2003) ...................................................................5, 7

*Tristrata Technology, Inc. v. Neoteric Cosmetics, Inc.*,
  35 F. Supp. 2d 370 (D. Del. 1998) ...............................................................7, 8

*Zest IP Holdings, LLC v. Implant Direct MGG, LLC*,
  2011 WL 5525990 (S. D. Cal. 2011) ............................................................5, 7

## Statutes

37 C.F.R. § 1.56 ....................................................................................................6

Fed. R. Civ. P. 26(b)(1) .......................................................................................4

Fed. R. Civ. P. 26(b)(2) .......................................................................................4

Fed. R. Civ. P. 34(a) ............................................................................................4

Local Rule 37-2 .....................................................................................................4

## **MEMORANDUM OF POINTS AND AUTHORITIES**

I.        INTRODUCTION

By this motion, Samsung seeks an order compelling Apple to produce any documents relating to its efforts to secure design patent protection for designs related to the patents-in-suit, including products Apple claims embody the patents-in-suit, such as the iPad2.

For example, Apple belatedly claimed during litigation of the preliminary injunction that the iPad2 is a commercial embodiment of one of the design patents in suit, the D'889 patent.    Its motivation for doing so was to enhance its ability to contend that Samsung's Galaxy Tab 10.1 tablet device infringed its patent; the problem for Apple was that Samsung's product was nothing like the design depicted in the D'889 patent.    By claiming that the D'889 design was embodied in the iPad 2, Apple argued, one could compare the iPad2 to Samsung's tablet device to analyze infringement.    The Court did just that in reaching its preliminary views on infringement.

But this has now created a dilemma for Apple.    In order to secure design patent protection for the design embodied in the iPad2, Apple would necessarily have to certify that the design was "new" and "original" as compared to other designs, including its own previously patented designs. If, as Apple has asserted in interrogatory responses and pleadings to the Court on the motion for preliminary injunction, the iPad2 is a commercial embodiment of the D'889 patent, which was issued back in 2005, a newly claimed design on the iPad2 can hardly be "new" and "original." Thus, either the iPad2 is not, in fact, a commercial embodiment of the D'889 patent, which would fundamentally undermine Apple's claims in this action, or Apple gave a false certification to the Patent Office in its iPad2 design applications, and any issued patents would be invalid. Regardless of which is true, documents relating to any design patents or design patent applications for the iPad2, including unpublished applications, would be very relevant to determining to the scope of coverage of the D'889 patent.

And this is just one example.    ████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████

**SAMSUNG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RELATING TO THE PATENTS-IN-SUIT**

1    Numerous courts have recognized the relevance of such documents, and Apple no longer

2    disputes that prosecution history documents related to the patents-in-suit, or related to design

3    patents or applications related to the products it has claimed are commercial embodiments, are

4    relevant to Apple's claims and Samsung's defenses in this action.   With respect to the file

5    wrappers of issued patents and published applications, Apple agreed over two weeks ago to

6    produce any such materials, in particular, those relating to a published foreign application

7    claiming the iPad2 as a commercial embodiment.   Yet it has not produced them.

8    In addition, Apple is refusing to produce any prosecution documents relating to any of its

9    *unpublished* applications.   Apple claims that to produce these unpublished applications would

10   allow Samsung to "design around" Apple's patents, but this is absurd.   The protective order in

11   this case would not allow Samsung employees or in-house lawyers to see such applications and

12   does not allow uses of produced documents other than for this litigation.   And Apple's claimed

13   concern that production of documents would allow Samsung to *avoid* infringing Apple's design

14   patents – while not surprising given Apple's clear preference for litigating over competing in the

15   marketplace – is hardly a reason to withhold critical discovery.

16   II.    FACTS

17       A.    Apple's Claims Based on the D'889 Design Patent

18   The relevance of these prosecution documents is best illustrated with an example:

19   Among the claims being asserted in this case are infringement claims based on the D'889

20   design patent, which depicts a design for a electronic device.   During the preliminary injunction

21   proceedings, Apple belatedly supplemented an interrogatory response and asserted that the D'889

22   patent was embodied in the iPad2.[1]

23   In its Order denying Apple's motion for a preliminary injunction, after considering the

24   prior art cited by Samsung, the Court concluded that "Samsung has raised a substantial question

25   regarding the validity of the D'889 patent on obviousness grounds."   Order at 44.   The Court

26   _____

27       [1]   *See* Hutnyan Decl., Exh. D (Apple Inc's Amended Objections and Responses to
     Samsung's Interrogatory No. 7 to Apple Relating to Apple Inc's Motion for a Preliminary
28   Injunction, at 5.)

1   also relied on a comparison between the iPad2 and Samsung's Galaxy Tab 10.1 tablet to support

2   its conclusion that "Apple will likely be able to establish infringement of the D'889 patent at

3   trial."   Order at 47-48.

4   ██████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   █████████████████████████████████████████████████████████████████

7   ████████████████████████████[2]

8       B.   Samsung's Effort To Obtain Documents Relating To Any Apple Design Patent
             Applications For The Designs Embodied In The iPad2

9

10      In its initial and subsequent discovery requests, Samsung has requested that Apple produce

11  documents relating to its efforts to secure design patent protection for inventions relating to the

12  patents-in-suit, including those related to products Apple claims embody the patents-in-suit such

13  as the iPad2.   With respect to the iPad2 in particular, Samsung has requested in Request 362

14  "[a]ll DOCUMENTS RELATING to any applications or other attempts by APPLE to obtain any

15  design patent registration for the iPad 2, whether in a foreign country or in the U.S."

16      Correspondence between the parties demonstrates Apple's continuing intransigence on this

17  issue.[3]   Samsung followed up on its Requests for Production Nos. 81 and 82 on January 16, and

18  then, after hearing no response from Apple, again on January 24.[4]   After asserting that it would,

19  at some unspecified time in the future, "update its production of applications and patents relating

20  to the patents-in-suit,"[5] Samsung was unable to secure further promises from Apple.[6]

21      The parties met and conferred in person on February 6, when Apple agreed to inform

22  Samsung of what "specific information it is willing to provide with respect to unissued patent

23  _____

24      [2]   *See* Hutnyan Decl., Exh. F (February 15, 2012 ITC Deposition of Christopher Stringer,
         Exh. 7 at 1-2.)

25      [3]   *See* Hutnyan Decl. ¶ 10.
        [4]   Hutnyan Decl., Exh. C (Letter, Scott C. Hall to Jason Bartlett, Jan. 16, 2012); *id.* (Letter,

26  Scott C. Hall to Jason Bartlett, Jan. 24, 2012).
        [5]   *Id.* (Letter, Jason Bartlett to Scott. C. Hall, Jan. 30, 2012).

27      [6]   *See, e.g.*, *id.* (Letter, Scott C. Hall to Jason Bartlett, Feb. 3, 2012); *id.* (Letter, Jason
        Bartlett to Scott C. Hall, Feb. 3, 2012) (simply reiterating that Apple would "update its production

28  of patents and applications").

-3-              Case No. 11-cv-01846-LHK
                                    **SAMSUNG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
                                              RELATING TO THE PATENTS-IN-SUIT**

1  applications."[7]    Apple did not dispute that it agreed to do so, but has completely failed to provide

2  the promised information.[8]    At the next lead counsel meet and confer meeting on February 14,

3  Apple said it agreed to produce the documents relating to any design patents or *published* design

4  patent applications, including with respect to the iPad2 by Friday, February 17, 2012 -- but it has

5  yet to do so.[9]    In short, at *both* meet and confer sessions, Apple has promised to provide specific

6  information to Samsung, and Apple has failed to follow through on *both* occasions.

7        In addition to the foregoing, Apple has declined to produce any documents relating to

8  unpublished applications, claiming that Samsung has failed to satisfy the "heightened relevancy

9  standard" that it claims governs such documents, and asserting in the most recent lead counsel

10  meet and confer that it did not want such documents to be produced because that might allow

11  Samsung to "design around" Apple's patents.[10]    As explained below, neither of these arguments

12  provides a valid basis to withhold this critical evidence.

13  III.    LEGAL STANDARDS

14        A party is entitled to seek through discovery "any nonprivileged matter that is relevant to

15  any party's claim or defense."    Fed. R. Civ. P. 26(b)(1).    "A party may serve on any other party

16  a request within the scope of Rule 26(b): (1) to produce . . . . (A) any designated documents . . . ;

17  or (B) any designated tangible things."    Fed. R. Civ. P. 34(a).    "[T]he moving papers [on a

18  motion to compel] must detail the basis for the party's contention that it is entitled to the requested

19  discovery and must show how the proportionality and other requirements of Fed. R. Civ. P.

20  26(b)(2) are satisfied."    Civil Local Rule 37-2.

21

22

23

24        [7]    *Id.* (Letter, Diane C. Hutnyan to Jason Bartlett, et. al, Feb. 7, 2012).
      [8]    *See, e.g., id.* (Letter, Marc J. Pernick to Diane C. Hutnyan, Feb. 9, 2012) (setting out

25  disagreements with the Feb. 7, 2012 Diane Hutnyan letter *but making no mention of a
   disagreement as to information on unissued patents*); *id.* (Letter, Jason Bartlett to Scott C. Hall,

26  Feb. 14, 2012) (providing disclosures but not as to unissued patents)).
      [9]    *See* Hutnyan Dec. ¶ 11.

27        [10]    *See* Hutnyan Decl., Exh. C (Letter, Jason Bartlett to Scott C. Hall, Feb. 3, 2012
   (heightened relevancy standard)); *id.* (Letter, Diane C. Hutnyan to Jason Bartlett, et al, Feb. 17,

28  2012 ("design around" argument)).

1    IV.    ARGUMENT

2        A.    Apple's Patent Applications Relating To The Patents-In-Suit Or Their Claimed
              Commercial Embodiments Are Relevant To Samsung's Defenses
3

4        "Many courts have concluded that [pending and abandoned patent applications] are

5    relevant because they 'may contain information or admissions that clarify, define or interpret the

6    claims of the patent in suit.'"    *Caliper Technologies Corp. v. Molecular Devices Corp.*, 213

7    F.R.D. 555, 561 (N.D. Cal. 2003).    *See also Zest IP Holdings, LLC v. Implant Direct MGG, LLC*,

8    2011 WL 5525990 at *1 (S. D. Cal. 2011) (same).    In *Caliper*, the Court ordered the plaintiff to

9    produce pending patent applications, including unpublished applications, finding that they

10   described similar technology to that at issue in the pending action and had the same inventor as the

11   patent-in-suit.    213 F.R.D. at 561.    "This and any similar application will also shed light on the

12   technology claimed in the patent-in-suit as well as the language used to claim it."    *Id.*

13       Similarly, in *Zest*, the court concluded that "[t]he relevance of the patent applications is

14   obvious to the Court, as both applications make extensive reference to Plaintiffs' patents, . . .

15   which are the subject of this action.    The Court does not share Defendants' restrictive view of

16   relevance that the only comparison that need be made is between Plaintiffs' patent claims and

17   Defendants' allegedly infringing products. . . . Relevant evidence regarding willful infringement,

18   prior art, and equivalency may be present within Defendants' two patent applications."    2011 WL

19   5525900 at *1.

20       Apple said it did not object to the production of documents relating to issued patents or

21   published patent applications – including with regard to the iPad2 design.    But it has refused to

22   produce them, even weeks later, and should be required to produce them promptly as part of the

23   relief in this motion.    Although it continues to object with regard to pending but unpublished

24   applications, there is no valid distinction for relevance purposes between published and

25   unpublished applications.    As the cases above make clear, they are highly relevant to a number of

26   issues.    Among other things, Samsung will defend against Apple's D'889 patent infringement

27   claims by establishing that the iPad2 is not an embodiment of the D'889 patent, contrary to what

28

**SAMSUNG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RELATING TO THE PATENTS-IN-SUIT**

1   Apple now claims, and that therefore Samsung's products should not be compared to the iPad2 in

2   order to determine whether the D'889 patent has been infringed.

3        In support of this defense, Samsung is entitled to obtain all documents relating to any

4   effort by Apple to obtain design patent protection for the iPad2, including published *and*

5   *unpublished* applications.   The reason these documents are highly relevant is that any such

6   application by Apple would have had to certify that the designs that are the subject of the

7   application are "new" and "original" as compared to other designs, including its own patented

8   designs.   *See* Hutnyan Decl., Exh. E (Excerpts from the Certified File Wrapper for U.S. Design

9   Patent D504, 889, as produced to Samsung by Apple).

10        If Apple gave a truthful certification, then the iPad2 cannot possibly be an embodiment of

11   the D'889 design, which was issued years earlier in 2005.   If the iPad2 is not an embodiment of

12   the D'889 design, then the iPad2 cannot be used by Apple to support its infringement claims with

13   regard to that patent.   This, in turn, would significantly undermine Apple's infringement claims,

14   given the absence of similarity between Samsung's tablet devices and the D'889 design.

15        On the other hand, if Apple continues to maintain that the iPad2 is an embodiment of the

16   D'889 patent, then its certifications in connection with any new design applications would have

17   been false, and any subsequently issued patents would be invalid on that basis.[11]   Either way, the

18   documents relating to any applications, published or unpublished, are highly relevant to

19   Samsung's defense to the D'889 claims.

20        Similar reasoning would justify production of documents relating to patent applications for

21   any design patents relating to any other products Apple claims are embodied in the patents-in-suit

22   – whether published or not.   These documents will necessarily contain admissions by Apple

23   regarding what distinguishes the patent from prior art, including other Apple patents.   These

24   admissions are relevant to establish whether the patents Apple is asserting in this action satisfy the

25

26        [11] Indeed, this is likely the reason Apple has not claimed the first iPad as an additional
     embodiment of D'889.   Apple has two subsequently issued patents on the iPad:   D627,777 and
27   D637,596.   Aside from being nearly identical, these patents preclude Apple from claiming that
     the first iPad also embodies the D'889 patent.   So far, Apple's ability to hide its pending U.S.
28   patent applications from Samsung has allowed it to avoid this problem with the iPad2.

1   novelty requirement, or are invalid under the bar against double patenting, or defenses of

2   obviousness or anticipation.    These admissions will also bear directly on whether Samsung's

3   accused products infringe, as they will constitute Apple's own view of differences in features or

4   design that distinguish one patent from another.    Samsung will establish that the products Apple

5   has claimed infringe are far more distinct from the patents-in-suit than the distinctions Apple has

6   articulated between its own patents and prior art.

7           B.       Any Confidentiality Or Competitive Concerns Are Satisfied By The Protective

8                    Order

9           In the most recent meet and confer, Apple claimed it should not have to produce the

10  unpublished application documents because these documents would allow Samsung to "design

11  around" Apple's patents.    Even putting aside the reality that Apple has already disclosed these

12  patent applications to the U.S. Patent and Trademark Office, Apple's "objection" is meritless.    A

13  party's concern that its opponent will use documents to avoid infringement cannot justify

14  withholding highly relevant documents where, as here, is an attorneys' eyes only protective order

15  in place.    In *Zest*, for example, the court recognized that the parties were "fierce competitors" but

16  concluded:

17              this intense rivalry does not trump Plaintiffs' right and access to
                relevant information they need to prosecute this case. The Court has
18              approved a two-tier protective Order    . . . proposed by the parties in
                this action.    The Protective Order, at paragraph 4, allows the party
19              producing a document to designate the document as "Confidential"
                and "Confidential – For Counsel Only."    Moreover, the Protective
20              Order, at paragraph 22, allows a party to object to the disclosure of
                information on any ground "other than the mere presence of
21              Confidential Information."    Clearly, the parties, and especially
                Defendants, in a case involving highly sensitive information
22              regarding products which are the life-blood of their respective
                businesses, contemplated the necessity of having to release such
23              information to each other and took positive steps to propose such a
                Protective Order.    Defendants' unease with the protection provided
24              by the Protective Order, which was jointly submitted to the Court,
                lacks justification.

25

26  2011 WL 5525990    at *1.    The Court also rejected Defendants' argument that opposing counsel

27  may not honor the protective order, because he is a member of the same firm that prosecutes

28  Plaintiffs' patent applications.    *Id*. at *2.    *See also Caliper*, 213 F.R.D. at 562 (ordering

**SAMSUNG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RELATING TO THE PATENTS-IN-SUIT**

1   production of pending patent applications subject to protective order); *Tristrata Technology, Inc.*

2   *v. Neoteric Cosmetics, Inc.*, 35 F. Supp. 2d 370, 372 (D. Del. 1998) (competitor's interest in

3   maintaining secrecy of information in pending applications "can be adequately preserved with a

4   particularized protective order").

5         The Court has entered a two-tier protective order in this case that specifically prohibits the

6   parties from using any produced information for any purpose other than this case. And any

7   discovery materials marked "Highly Confidential – Attorneys Eyes Only" cannot be viewed by

8   any Samsung personnel, or even by outside counsel that is involved in competitive decision-

9   making.   *See Apple Inc. v. Samsung Electronics Co., Ltd.*, Agreed Upon Protective Order

10  Regarding Disclosure and Use of Discovery Materials, No. 11-CV-01846, Document 687

11  ("Protective Order"), at ¶ 9 (N.D. Cal. Jan. 30, 2012).    Apple's concern that Samsung will obtain

12  and misuse the information – much less in order to *avoid* inadvertently infringing Apple's IP – is

13  premised on multiple, solely theoretical, violations of the Protective Order, not on any legitimate

14  confidentiality concern.

15        Finally, with respect to each application that has been filed on the designs embodied in

16  the iPad2, the iPhone, the iPhone 3G, or any other products Apple has identified as its commercial

17  embodiments, the designs being claimed are already public.    Again, not only has Apple disclosed

18  them to a third party – the U.S. Patent Office – but the designs are visible on the products.

19        Apple's objection should be overruled and production of these prosecution documents

20  should be ordered without further delay.

21

22

23

24

25

26

27

28

V.      <u>CONCLUSION</u>

For the foregoing reasons, Samsung respectfully requests that the Court grant this motion and Order Apple to produce all documents relating to any efforts by Apple to obtain design patents relating to the inventions of the patents-in-suit, including any related to products Apple claims embody the patents-in-suit, including the iPad2.


DATED: March 6, 2012                  QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP

                                      By   /s/ Victoria F. Maroulis
                                          Charles K. Verhoeven
                                          Kevin P.B. Johnson
                                          Victoria F. Maroulis
                                          Michael T. Zeller
                                          Attorneys for SAMSUNG ELECTRONICS CO.,
                                          LTD., SAMSUNG ELECTRONICS AMERICA,
                                          INC., and SAMSUNG
                                          TELECOMMUNICATIONS AMERICA, LLC