# EXHIBIT M



**MORRISON** | **FOERSTER**

2000 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20006-1888

TELEPHONE:202.887.1500
FACSIMILE:202.887.0763
WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

CBI 11 -344

2837

Office of the
Secretary
Int'l Trade Commission

July 5, 2011

Writer's Direct Contact
202.887.1560
AHadjis@mofo.com

**By Hand Delivery**

The Honorable James R. Holbein
Secretary
United States International Trade Commission
500 E Street, SW
Washington, DC 20436

Re:    Complaint under 19 U.S.C. § 1337: *Certain Electronic Digital Media Devices and Components Thereof*, Inv. No. 337-TA-_____

Dear Secretary Holbein:

Enclosed for filing on behalf of Apple Inc. (Apple) is a Complaint requesting that the Commission commence an investigation pursuant to 19 U.S.C. § 1337(a)(1)(B).

The Complaint alleges the unlawful importation into the United States, sale for importation into the United States, sale within the United States, and/or offering for sale within the United States of electronic digital media devices, including mobile telephones, tablet computers, and components thereof, including software, touch-pads, and audio interfaces, that infringe claims of Apple's valid and enforceable U.S. Patent No. 7,479,949 (the '949 patent), RE 41,922 (the '922 patent), U.S. Patent No. 7,863,533 (the '533 patent); U.S. Patent No. 7,789,697 (the '697 patent), U.S. Patent No. 7,912,501 (the '501 patent), U.S. Patent No. D558,757 (the D'757 patent), and U.S. Patent No. D618,678 (the D'678 patent).

Please note that Confidential Exhibit Nos. 42C, 42-1C-42-5C, 43C, and 48C to the Complaint contain confidential business information, and, pursuant to the Commission's Rules of Practice and Procedure, Apple concurrently is making a separate request for confidential treatment of these documents.  Accordingly, Apple submits the following:

1.    an original and twelve (12) copies of Apple's verified Complaint (210.8(a)(1)(ii));

2.    an original and one copy unbound, plus six (6) copies in electronic format on a CD of the confidential exhibits and six (6) copies in electronic format on a CD of the non-confidential exhibits to the Complaint, with the confidential exhibits

MORRISON | FOERSTER

The Honorable James R. Holbein
July 5, 2011
Page Two

clearly labeled "confidential business information" and segregated from the non-confidential exhibits (Rules 201.6(c), 210.4(f)(3)(i) and 210.8(a)(1)(i));

3.  three (3) copies of the Complaint and three (3) copies in electronic format of the confidential and non-confidential exhibits to the Complaint for service upon the three proposed respondents (Rules 201.6(c), 210.4(f)(3)(i), 210.8(a)(1)(iii) and 210.11(a)(1)(i));

4.  one (1) additional copy of the Complaint for service upon the Embassy of the government of the Republic of Korea (Rule 210.8(a)(1)(iv) and 210.11(a)(1)(ii));

5.  certified copies of the '949 patent, the '922 patent, the '697 patent, the '501 patent, the D'757 patent, and the D'678 patent, provided as Exhibits 1, 2, and 4-7, respectively (Rule 210.12(a)(9)(i));

6.  a non-certified copy of the '533 patent, provided as Exhibit 3; Apple will supplement with a certified copy shortly;

7.  the identification of the ownership and a certified copy of each assignment available from the U.S. Patent and Trademark Office of the'949 patent, the '922 patent, the '697 patent, the '501 patent, the D'757 patent, and the D'678 patent, provided as Exhibits 8, 9, and 11-14 (Rule 210.12(a)(9)(ii)), and the identification of the ownership and a non-certified copy of the assignment of the '533 patent; Apple will supplement with a certified copy of the identification of the ownership and a certified copy of the assignment of the '533 patent shortly;

8.  an original copy of the non-certified prosecution history of the '949 patent, '922 patent, the '533 patent, the '697 patent, the '501 patent,  the D'757 patent, and the D'678 patent provided as Appendix A, C, E, G, I, K, and M, respectively, plus four (4) additional copies in electronic format on a CD filed concurrently herewith (Rule 210.12(c)(1)); Apple will supplement with a certified copy shortly;

9.  an original copy of each technical reference mentioned in the prosecution histories of the '949 patent, the '922 patent, the '533 patent, the '697 patent, the '501 patent, the D'757 patent, and the D'678 patent provided as Appendix B, D, F, H, J, L, and N, respectively, plus four (4) additional copies in electronic format on a CD filed concurrently herewith (Rule 210.12(c)(2));

10.  one set of physical exhibits identified as Physical Exhibit No. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 (Rule 210.12(a)(9)(x)); and

MORRISON | FOERSTER

The Honorable James R. Holbein
July 5, 2011
Page Three

11.     a letter and certification requesting confidential treatment of Confidential Exhibit
        Nos. 42C, 42-1C, 42-2C, 42-3C, 42-4C, 42-5C, 43C, and 48C (Rules 201.6(b)
        and 210.5(d)).

Thank you for your assistance in this matter.  Please do not hesitate to contact us if you have
any questions.

Respectfully submitted,

Alexander J. Hadjis
Counsel for Apple Inc.

Enclosures

MORRISON | FOERSTER

2000 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20006-1888

TELEPHONE:202.887.1500
FACSIMILE:202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

July 5, 2011

Writer's Direct Contact
202.887.1560
AHadjis@mofo.com

**By Hand Delivery**

The Honorable James R. Holbein
Secretary
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436

Re:     Complaint under 19 U.S.C. § 1337:  *Certain Electronic Digital Media Devices and Components Thereof*, Inv. No. 337-TA-_____

Dear Secretary Holbein:

We are counsel for Apple Inc. (Apple).  In accordance with Commission Rule 201.6, Apple requests confidential treatment of the information contained in Confidential Exhibit Nos. 42C, 42-1C-5C, 43C, and 48C to the Complaint.

The information for which confidential treatment is sought involves proprietary and sensitive information regarding research, development, design, commercialization, and support of products that practice the patents-at-issue (Confidential Exhibit No. 43C), proprietary and sensitive information regarding licensing of the patents-at-issue (Confidential Exhibit Nos. 42C and 42-1C-5C), and proprietary and sensitive information regarding hardware used in the patents-at-issue (Confidential Exhibit No. 48C).

The information described above qualifies as confidential business information pursuant to Rule 201.6(a)(1) in that:

a)  it is not available to the public;

b)  unauthorized disclosure of such information could cause substantial harm to the competitive positions of Apple; and

**MORRISON | FOERSTER**

The Honorable James R. Holbein
July 5, 2011
Page Two

c) the disclosure of such information could impair the Commission's ability to obtain information necessary to perform its statutory functions.

Respectfully submitted,

Alexander J. Hadjis
Counsel for Apple Inc.

SUBSCRIBED and sworn before me on the 5th day of July 2011.

_____ Sylvia B. Nelson
Notary Public in and for the District of Columbia

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, DC

In the Matter of

CERTAIN ELECTRONIC DIGITAL MEDIA
DEVICES AND COMPONENTS THEREOF

Investigation No. 337-TA- ___

## APPLE INC.'S COMPLAINT UNDER
## SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

Complainant:

Apple Inc.
1 Infinite Loop
Cupertino, California 95014
Telephone: (408) 996-1010

Proposed Respondents:

Samsung Electronics Co., Ltd.
416 Maetan-3dong, Yeongtong-gu
Suwon-City, Gyeonggi-do, Korea 443-742
Telephone: 011-82-31-200-1114

Samsung Electronics America, Inc.
85 Challenger Road
Ridgefield Park, New Jersey 07660
Telephone: (201) 229-4000

Samsung Telecommunications America, LLC
1301 East Lookout Drive
Richardson, Texas 75082
Telephone: (972) 761-7000

Counsel for Complainant:

Alexander J. Hadjis
G. Brian Busey
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW, Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500

Harold J. McElhinny
Michael A. Jacobs
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, California 94105
Telephone: (415) 268-7000

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     COMPLAINANT ........................................................................................... 5

III.    PROPOSED RESPONDENTS ....................................................................... 6

        A.      Samsung Electronics Co., Ltd .......................................................... 6

        B.      Samsung Electronics America, Inc ................................................... 6

        C.      Samsung Telecommunications America, LLC .................................. 7

IV.     THE PRODUCTS-AT-ISSUE ....................................................................... 7

V.      THE PATENTS-AT-ISSUE ........................................................................... 8

        A.      Graphical Interface Patents .............................................................. 8

                a)      The '949 Patent .................................................................... 8

                b)      The '922 Patent .................................................................. 10

        B.      Hardware Interface Patents ............................................................ 11

                a)      The '533 Patent .................................................................. 11

                b)      The '697 Patent .................................................................. 11

                c)      The '501 Patent .................................................................. 12

        C.      Design Patents ................................................................................ 13

                a)      The D'757 Patent ............................................................... 13

                b)      The D'678 Patent ............................................................... 14

VI.     UNFAIR ACTS OF THE PROPOSED RESPONDENTS ............................ 15

VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE ............. 19

VIII.   HARMONIZED TARIFF SCHEDULE ITEM NUMBERS .............................. 20

IX.     LICENSEES ............................................................................................... 20

X.      DOMESTIC INDUSTRY ............................................................................ 20

        A.      Apple's Investment in the Domestic Industry ......................... 20

        B.      Apple Practices the Patents-at-Issue ....................................... 23

XI.     RELATED LITIGATION ............................................................................. 25

XII.    RELIEF REQUESTED ................................................................................ 25

## TABLE OF EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 1. | Copy of United States Patent No. 7,479,949 (the '949 patent) |
| 2. | Copy of United States Patent RE 41,922 (the '922 patent) |
| 3. | Copy of United States Patent No. 7,863,533 (the '533 patent) |
| 4. | Copy of United States Patent No. 7,789,697 (the '697 patent) |
| 5. | Copy of United States Patent No. 7,912,501 (the '501 patent) |
| 6. | Copy of United States Patent D558,757 (the D'757 patent) |
| 7. | Copy of United States Patent No. D618,678 (the D'678 patent) |
| 8. | Copy of Assignment Papers for the '949 patent |
| 9. | Copy of Assignment Papers for the '922 patent |
| 10. | Copy of Assignment Papers for the '533 patent |
| 11. | Copy of Assignment Papers for the '697 patent |
| 12. | Copy of Assignment Papers for the '501 patent |
| 13. | Copy of Assignment Papers for the D'757 patent |
| 14. | Copy of Assignment Papers for the D'678 patent |
| 15. | Apple Inc. 2010 Form 10-K |
| 16. | Samsung Electronics Co., Ltd. Fourth Quarter 2010 Earnings Release |
| 17. | Printouts From www.samsung.com/us and www.samsungmobile.com |
| 18. | Printout From http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html |
| 19. | Samsung Galaxy Tab User Manual |
| 20. | Photographs and Receipt From Purchase of Samsung Fascinate |
| 21. | Photographs and Receipt From Purchase of Samsung Galaxy S 4G |
| 22. | Photographs and Receipt From Purchase of Samsung Transform |
| 23. | Photographs and Receipt From Purchase of Samsung Intercept |
| 24. | Photographs and Receipt From Purchase of Samsung Captivate |
| 25. | Photographs and Receipt From Purchase of Samsung Infuse 4G |
| 26. | Photographs and Receipt From Purchase of Samsung Galaxy Tab |
| 27. | Photographs and Receipt From Purchase of Samsung Galaxy Tab 10.1 |
| 28. | Foreign Counterparts to the D'757 Patent |

| Exhibit No. | Description |
|---|---|
| 29. | Foreign Counterparts to the D'678 Patent |
| 30. | Infringement Claim Chart Comparing the '949 Patent With the Samsung Captivate |
| 31. | Infringement Claim Chart Comparing the '949 Patent With the Samsung Galaxy Tab |
| 32. | Infringement Claim Chart Comparing the '922 Patent With the Samsung Fascinate |
| 33. | Infringement Claim Chart Comparing the '922 Patent With the Samsung Galaxy Tab |
| 34. | Infringement Claim Chart Comparing the '533 Patent With the Samsung Captivate |
| 35. | Infringement Claim Chart Comparing the '533 Patent With the Samsung Galaxy Tab |
| 36. | Infringement Claim Chart Comparing the '697 Patent With the Samsung Fascinate |
| 37. | Infringement Claim Chart Comparing the '697 Patent With the Samsung Galaxy Tab |
| 38. | Infringement Claim Chart Comparing the '501 Patent With the Samsung Fascinate |
| 39. | Infringement Claim Chart Comparing the '501 Patent With the Samsung Galaxy Tab |
| 40. | Infringement Claim Chart Comparing the D'757 Patent With the Samsung Fascinate and Transform |
| 41. | Infringement Claim Chart Comparing the D'678 Patent With the Samsung Galaxy S 4G, Fascinate, Transform, and Infuse 4G |
| 42C. | Confidential Exhibit – Licensees of the Patents-at-Issue |
| 42C-1. | Confidential Exhibit – Patent Licensing Agreement |
| 42C-2. | Confidential Exhibit – Patent Licensing Agreement |
| 42C-3. | Confidential Exhibit – Patent Licensing Agreement |
| 42C-4. | Confidential Exhibit – Patent Licensing Agreement |
| 42C-5. | Confidential Exhibit – Patent Licensing Agreement |
| 43C. | Confidential Exhibit – Apple's Domestic Investment in the Products-at-Issue |
| 44. | Domestic Industry Claim Chart Comparing the '949 Patent With the iPhone 4 |

| Exhibit No. | Description |
|---|---|
| 45. | Domestic Industry Claim Chart Comparing the '922 Patent With the iPad |
| 46. | Domestic Industry Claim Chart Comparing the '533 Patent With the iPhone 3GS |
| 47. | Domestic Industry Claim Chart Comparing the '697 Patent With the iPod Touch |
| 48C. | Confidential Domestic Industry Claim Chart Comparing the '501 Patent With the iPhone 4 |
| 49. | Domestic Industry Claim Chart Comparing the D'757 Patent With the iPhone 3GS |
| 50. | Domestic Industry Claim Chart Comparing the D'678 Patent With the iPhone 4 |

### TABLE OF PHYSICAL EXHIBITS

| Physical Exhibit No. | Description |
|---|---|
| 1. | iPhone 4 |
| 2. | iPhone 3GS |
| 3. | iPad |
| 4. | iPod Touch |
| 5. | Samsung Galaxy S 4G (model SGH-T959V) |
| 6. | Samsung Fascinate (model SCH-I500) |
| 7. | Samsung Transform (model SPH-M920) |
| 8. | Samsung Intercept (model SPH-M910) |
| 9. | Samsung Captivate (model SGH-I897) |
| 10. | Samsung Infuse 4G (model SGH-I997) |
| 11. | Samsung Galaxy Tab (model SCH-I800) |
| 12. | Samsung Galaxy Tab 10.1 (model SCH-1905) |

## APPENDIX OF ADDITIONAL MATERIALS

As required by 19 C.F.R. § 210.12(c), a certified copy of each of the prosecution histories of the patents-at-issue, including the references cited therein, is submitted in the following appendices:

- Appendix A – Prosecution history for U.S. Patent No. 7,479,949

- Appendix B – Technical references cited in the prosecution history of U.S. Patent No. 7,479,949

- Appendix C – Prosecution history for U.S. Patent No. RE 41,922

- Appendix D – Technical references cited in the prosecution history of U.S. Patent No. RE 41,922

- Appendix E – Prosecution history for U.S. Patent No. 7,863,533

- Appendix F – Technical references cited in the prosecution history of U.S. Patent No. 7,863,533

- Appendix G – Prosecution history for U.S. Patent No. 7,789,697

- Appendix H – Technical references cited in the prosecution history of U.S. Patent No. 7,789,697

- Appendix I – Prosecution history for U.S. Patent No. 7,912,501

- Appendix J – Technical references cited in the prosecution history of U.S. Patent No. 7,912,501

- Appendix K – Prosecution history for U.S. Patent No. D558,757

- Appendix L – Technical references cited in the prosecution history of U.S. Patent No. D558,757

- Appendix M – Prosecution history for U.S. Patent No. D618,678

- Appendix N – Technical references cited in the prosecution history of U.S. Patent No. D618,678

## I.   INTRODUCTION

1.   Complainant Apple Inc. (Apple) is a leading designer and manufacturer of mobile

communication devices, tablets computers, and portable digital media players.  Apple's

electronic digital media devices, such as the iPhone, iPad, and the iPod, are

groundbreaking products that have revolutionized their respective markets.  They have

enjoyed enormous commercial success and popular acclaim, and they continue to lead

their markets in innovation, performance, and ease of use.

2.   Apple's innovative and commercially successful products stem from its on-going

commitment to research and development and creative acumen.  Throughout its history,

Apple has made substantial investments in research and development in a wide variety of

technical fields, including personal communication, computer hardware and software,

graphical and touch-based user interfaces, and digital media players.  Apple is based in

the United States, and it conducts substantially all of this research and development in its

Cupertino, California headquarters.  Apple's commitment to research and development

has led to pioneering innovations that have laid the groundwork for, and are used

extensively in, each of Apple's product lines, including the iPhone, iPad, and iPod.  The

United States Patent and Trademark Office has awarded patent protection to Apple for

many of its innovations, and Apple continues to apply for patent protection for its recent

and ongoing inventions.

3.   Many of Apple's innovations have become so popular and so recognized that they have

become virtually synonymous with Apple's products and the Apple brand.  Indeed, an

Apple product can be readily identified, for example, by the way it operates and

interfaces with its user.  The unique features and functionality that are found in Apple's innovative products have contributed to their success by attracting consumers.

4.  As a result, Apple's innovations and products have been the subject of widespread imitation by Apple's competitors.  Others have attempted to capitalize on Apple's success by copying its innovative technology, distinctive user interface, and overall product design instead of independently developing their own technology.

5.  One of the principal infringers of Apple's intellectual property is electronics giant Samsung.  Samsung has followed each of Apple's groundbreaking products with imitation products that incorporate Apple's technology and distinctive design.

6.  For example, to capitalize on the enormous market success of the iPhone, Samsung recently introduced its "Galaxy S" line of mobile phones.  The Galaxy S line of mobile phones has been designed to look and operate like the iPhone, and it infringes multiple Apple utility and design patents.  The Galaxy S phones use the Android operating system.

7.  Then, after Apple introduced its widely acclaimed iPad tablet computer, Samsung continued the pattern of copying Apple's industry-leading technology by following suit with a tablet product called the "Galaxy Tab."  Like the Galaxy S mobile phones, the Galaxy Tab electronic tablet has been designed to look and operate like an Apple iPad, and it infringes multiple Apple utility and design patents.  The Galaxy Tab also uses the Android operating system.

8.  Apple requests that the United States International Trade Commission ("USITC" or "Commission") commence an investigation pursuant to 19 U.S.C. § 1337(a)(1)(B) (alternatively referred to herein as "Section 337") to remedy the unlawful importation into the United States, sale for importation into the United States, sale within the United

States, and/or offer for sale within the United States of certain electronic digital media devices, including mobile phone handsets and tablets computers, and components thereof, including software, touch-pads, and hardware interfaces (collectively, "the Accused Products").

9.   On information and belief, the proposed Respondents, Samsung Electronics Co., Ltd, Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung"), have engaged in unfair acts in violation of Section 337 through the unlicensed importation, sale for importation, and/or sale within the United States after importation of Accused Products that directly and indirectly infringe one or more claims of U.S. Patent Nos. 7,479,949 (the '949 patent); RE 41,922 (the '922 patent); 7,863,533 (the '533 patent); 7,789,697 (the '697 patent); 7,912,501 (the '501 patent); D558,757 (the D'757 patent); and D618,678 (the D'678 patent) (collectively, "the patents-at-issue").

10.   On information and belief, Samsung Accused Products infringe at least the following claims of the patents-at-issue:

| Patent Number | Asserted Claims |
|---------------|-----------------|
| 7,479,949 | 1, 3-6, and 9-20 |
| RE 41,922 | 29-35 |
| 7,863,533 | 1, 4, 7, 9, 11, 12, 15-17, 19, and 20 |
| 7,789,697 | 1-3, 11-16, and 21-27 |
| 7,912,501 | 1-4 and 8 |
| D558,757 | Only Claim in Patent |
| D618,678 | Only Claim in Patent |

11.   A copy of the '949 patent accompanies this complaint as **Exhibit 1**.  Apple owns by assignment the entire right, title, and interest in this patent.

12.   A copy of the '922 patent accompanies this complaint as **Exhibit 2**.  Apple owns by assignment the entire right, title, and interest in this patent.

13.   A copy of the '533 patent accompanies this complaint as **Exhibit 3**.  Apple owns by assignment the entire right, title, and interest in this patent.

14.   A copy of the '697 patent accompanies this complaint as **Exhibit 4**.  Apple owns by assignment the entire right, title, and interest in this patent.

15.   A copy of the '501 patent accompanies this complaint as **Exhibit 5**.  Apple owns by assignment the entire right, title, and interest in this patent.

16.   A copy of the D'757 patent accompanies this complaint as **Exhibit 6**.  Apple owns by assignment the entire right, title, and interest in this patent.

17.   A copy of the D'678 patent accompanies this complaint as **Exhibit 7**.  Apple owns by assignment the entire right, title, and interest in this patent.

18.   As required by Section 337(a)(2) and defined by Section 337(a)(3), an industry in the United States relating to the patents-at-issue exists by virtue of at least Apple's investment in plant and equipment, employment of labor and capital, and/or investment in the exploitation with respect to the patents-at-issue.

19.   Apple seeks a limited exclusion order pursuant to Section 337(d) excluding the importation of Samsung Accused Products manufactured by or for Samsung.  Apple also seeks a cease-and-desist order pursuant to Section 337(f) directing Samsung to immediately cease the importation into the United States, sale for importation into the United States, and sale in the United States after importation of the Accused Products.  Apple also requests that the cease-and-desist order direct Samsung to cease the

demonstration, sale, offer for sale, use, and movement or shipment of United States

inventory of the Accused Products immediately.

## II.    COMPLAINANT

20.   Apple is a U.S. company organized and existing as a corporation under the laws of

California.  Apple maintains its principal place of business at 1 Infinite Loop, Cupertino,

California 95014.

21.   Apple is the owner by assignment of all right, title, and interest in and to the '949 patent;

the '922 patent; the '533 patent; the '697 patent; the '501 patent; the D'757 patent; and

the D'678 patent.  (See **Exhibits 8-14**.)

22.   Apple designs, develops, markets, and sells: (i) the iPhone, including the iPhone 3GS and

the iPhone 4, and related accessories and services; (ii) the iPad; (iii) the iPod line of

digital media devices; (iv) a portfolio of software, such as the iOS operating system

installed on iPhones, iPads, and iPod touches; (v) a variety of related products,

accessories, peripherals, services including warranty and customer support; and (vi) a

complete software development kit (SDK) providing tools for programmers to create

their own applications.  Apple sells its products worldwide through its online stores, its

own retail stores, its direct sales force, and third-party wholesalers, resellers, and value-

added resellers.  (See **Exhibit 15,** Apple Inc. 2010 Form 10-K, at 27.)

23.   Apple researched and developed the technology that is protected by the patents-at-issue.

Apple has made and continues to make significant investment in the design and

development of products protected by the patents-at-issue, including the iPhone, iPad,

iPods, and iOS software products, among others, in the United States.  (See id. at 39.)

### III.   PROPOSED RESPONDENTS

#### A.   Samsung Electronics Co., Ltd.

24.   On information and belief, Samsung Electronics Co., Ltd. (Samsung Electronics) is a corporation organized and existing under the laws of the Republic of Korea and has its principal place of business at 416 Maetan-3dong, Yeongtong-gu, Suwon-City, Gyeonggi-do, Korea 443-742.

25.   On information and belief, Samsung Electronics develops, manufactures or has manufactured, markets, and sells Accused Products.  (See **Exhibit 16**, Samsung Electronics Fourth Quarter 2010 Earnings Release, at 9-10.)  On information and belief, Accused Products are manufactured overseas, and Samsung Electronics and others then import Accused Products into the United States, sell Accused Products for importation into the United States, and/or sell Accused Products after they have been imported into the United States.  Accused Products are sold in the United States under various brand names.  (See **Exhibit 17**, Printouts from www.samsung.com/us and www.samsungmobile.com.)

#### B.   Samsung Electronics America, Inc.

26.   On information and belief, Samsung Electronics America, Inc. (SEA) is a subsidiary of Samsung Electronics, and is organized and existing under the laws of New York with its principal place of business at 85 Challenger Rd., Ridgefield Park, NJ 07660.

27.   On information and belief, SEA distributes and markets Accused Products manufactured by or for Samsung Electronics or its affiliates.  (See **Exhibit 18**, Printout from http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html.)  On information and belief, SEA imports such Accused Products into the United

States, sells such Accused Products for importation into the United States, operates such Accused Products in the United States, and/or sells such Accused Products after they have been imported into the United States.  (See **Exhibit 17**.)

### C.      Samsung Telecommunications America, LLC

28.  On information and belief, Samsung Telecommunications America, LLC (Samsung Telecom) is a subsidiary of SEA, and is incorporated in Delaware with its principal place of business at 1301 E. Lookout Dr., Richardson, Texas 75082.

29.  On information and belief, Samsung Telecom distributes and markets Accused Products manufactured by or for Samsung Electronics or its affiliates.  (See **Exhibit 17**.)  On information and belief, Samsung Telecom imports such Accused Products into the United States, sells such Accused Products for importation into the United States, operates such Accused Products in the United States, and/or sells such Accused Products after they have been imported into the United States.  On information and belief, Samsung Telecom also provides warranty repair service and support for the Accused Samsung Products. (See **Exhibit 19**, Samsung Galaxy Tab User Manual, at 1, 4, and 135-138.)

## IV.    THE PRODUCTS-AT-ISSUE

30.  The Samsung Accused Products include electronic digital media devices, including mobile phone handsets and tablet computers, designed, operated, distributed, sold, or offered for sale by or for Samsung.  The Samsung Accused Products also include infringing components incorporated in the Samsung Accused Products, such as software, touch-pads, and hardware interfaces.  Examples of the Samsung Accused Products are listed below and described in the attached claim charts.  Photographs of certain examples of the Samsung Accused Products are attached as **Exhibits 20-27**.

## V.      THE PATENTS-AT-ISSUE

### A.      Graphical Interface Patents

#### a)  The '949 Patent

##### (1)      Identification and ownership of the '949 patent

31.   U.S. Patent No. 7,479,949, entitled "Touch Screen Device, Method, and Graphical User
Interface for Determining Commands by Applying Heuristics," issued on January 20,
2009, to inventors Steven P. Jobs, Scott Forstall, Greg Christie, Stephen O. Lemay, Scott
Herz, Marcel van Os, Bas Ording, Gregory Novick, Wayne C. Westerman, Imran
Chaudhri, Patrick Lee Coffman, Kenneth Kocienda, Nitin K. Ganatra, Freddy Allen
Anzures, Jeremy A. Wyld, Jeffrey Bush, Michael Matas, Paul D. Marcos, Charles J.
Pisula, Virgil Scott King, Chris Blumenberg, Francisco Ryan Tolmasky, Richard
Williamson, Andre M. J. Boule, and Henri C. Lamiraux.  The '949 patent remains in full
force and effect, and Apple is the owner of all right, title, and interest in and to the '949
patent.  (See **Exhibit 8**.)

##### (2)      Non-technical description of the invention of the '949 patent[1]

32.   The '949 patent is directed to a touchscreen-based device that applies heuristics to inputs,
or gestures, made on its touchscreen, to determine the command that the gesture
corresponds to and the resulting device behavior.  For instance, the '949 patent discloses
a vertical-scrolling heuristic that determines that a screen contact corresponds to a one-
dimensional vertical screen scrolling command, a two-dimensional screen translation
heuristic that determines that a screen contact corresponds to a command to translate the

---

[1] The text of this Complaint and the sections providing non-technical descriptions of the patents-at-issue are not
intended to construe either the specification or the claims of the patents-at-issue.

screen in two dimensions, and a next item heuristic that determines that a screen contact corresponds to a command to transition between displaying items in a set.

### (3)      Foreign counterparts

33.   The following is a list of foreign counterparts to the '949 patent:

| Jurisdiction | Patent/App. No. | Filing Date | Status |
|---|---|---|---|
| AU | 2007286532 | 9/6/2007 | Issued |
| AU | 2008100179 | 9/6/2007 | Issued |
| AU | 2009200372 | 9/6/2007 | Issued |
| AU | 2009233675 | 9/6/2007 | Pending |
| CA | 2658413 | 9/6/2007 | Pending |
| CA | 2735309.00 | 9/6/2007 | Pending |
| CN | 200780001219.1 | 9/6/2007 | Pending |
| DE | 202007018413.1 | 9/6/2007 | Issued |
| EP | 07841984.3 | 9/6/2007 | Pending |
| HK | 8111516.40 | 9/6/2007 | Pending |
| HK | 11103414.90 | 9/6/2007 | Pending |
| JP | 2009-527567 | 9/6/2007 | Pending |
| JP | N/A | 9/6/2007 | Pending |
| JP | 2010-227806 | 9/6/2007 | Pending |
| KR | 2009-7003948 | 9/6/2007 | Pending |
| KR | 2009-7006231 | 9/6/2007 | Pending |
| WO/PCT | PCT/US2007/077777 | 9/6/2007 | Pending |

34.   To the best of Apple's knowledge, information, and belief, there are no other foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '949 patent.

### b) The '922 Patent

#### (1)   Identification and ownership of the '922 patent

35.   U.S. Patent No. Re 41,922, entitled "Method and Apparatus for Providing Translucent Images on a Computer Display," issued on November 9, 2010, to inventors Michael Gough, Joseph MacDougald, Gina Venolia, Thomas Gilley, Greg Robbins, Daniel Hansen, and Abhay Oswal.  The '922 patent is a reissue of U.S. Patent No. 6,072,489, which issued on June 6, 2000.  The '922 patent remains in full force and effect, and Apple owns by assignment the entire right, title, and interest in the '922 patent.  (See **Exhibit 9**.)

#### (2)   Non-technical description of the invention of the '922 patent

36.   The '922 patent is directed to the simultaneous presentation of opaque images and translucent images on a display screen.

37.   In the patented system, a first opaque image is presented to the user on a touch screen.  A second translucent image is then presented to the user over the opaque image so that portions of the opaque image are visible through the translucent image.  When both the opaque and translucent images are presented, the user may input data and perform image operations on either the opaque or translucent image.

#### (3)   Foreign counterparts

38.   To the best of Apple's knowledge, information, and belief, there are no foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '922 patent.

### B.     Hardware Interface Patents

#### a)     The '533 Patent

##### (1)     Identification and ownership of the '533 patent

39.  U.S. Patent No. 7,863,533, entitled "Cantilevered Push Button Having Multiple Contacts and Fulcrums," issued on January 4, 2011, to inventors Bradley J. Hamel, Tang Yew Tan, and Erik Wang.  The '533 patent remains in full force and effect, and Apple owns by assignment the entire right, title, and interest in the '533 patent.  (See **Exhibit 10**.)

##### (2)     Non-technical description of the invention of the '533 patent

40.  The '533 patent is directed to a cantilevered push button on an electronic device. Electronic devices are typically configured to receive multiple user inputs.  The '533 patent describes a push button system with two distinct ends to accept user inputs corresponding to different electrical contacts.  When one end of the button is pressed, the button pivots on a fulcrum located away from that particular end.  The same is true when the other end of the button is pushed.  In addition, both ends of the push button can be pressed simultaneously.

##### (3)     Foreign counterparts

41.  To the best of Apple's knowledge, information, and belief, there are no foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '533 patent.

#### b)  The '697 Patent

##### (1)     Identification and ownership of the '697 patent

42.  U.S. Patent No. 7,789,697, entitled "Plug Detection Mechanisms," issued on September 7, 2010, to inventor Hugo Fiennes.  The '697 patent remains in full force and effect, and

Apple owns by assignment the entire right, title, and interest in the '697 patent.  (See **Exhibit 11**.)

> **(2)** **Non-technical description of the invention of the '697 patent**

43. The '697 patent is directed to a headphone interface that detects the presence of a headphone or headset plug, and alters certain functions in the device in which the assembly resides.

44. Electronic digital media devices are typically configured to operate with headphones and headsets.  In these devices, the patented headphone interface can detect whether a headphone or headset is inserted into the device.  The functionality of the device can be altered depending on whether a headphone or headset is present.

> **(3)** **Foreign counterparts**

45. To the best of Apple's knowledge, information, and belief, there are no foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '697 patent.

> **c)  The '501 Patent**

> **(1)** **Identification and ownership of the '501 patent**

46. U.S. Patent No. 7,912,501, entitled "Audio I/O Headset Plug and Plug Detection Circuitry," issued on March 22, 2011, to inventors Timothy Johnson and Achim Pantfoerder.  The '501 patent remains in full force and effect, and Apple owns by assignment the entire right, title, and interest in the '501 patent.  (See **Exhibit 12**.)

### (2)    Non-technical description of the invention of the '501 patent

47.  The '501 patent is directed to a headphone interface that is configured to accept and operate with a headphone or headset, which contains a microphone, and to detect whether the component inserted into the jack is a headphone or headset.

48.  Electronic digital media devices are typically configured to operate with headphones or headsets.  In these devices, the patented headphone interface can detect whether a component inserted into the device is a headphone or headset.  The functionality of the device can be altered depending on whether the inserted component is a headphone or headset.

### (3)    Foreign counterparts

49.  The following is a list of foreign counterparts to the '501 patent:

| Jurisdiction | Patent/App. No. | Filing Date | Status |
|---|---|---|---|
| WO/PCT | PCT/US2008/0000177 | 1/4/2008 | Expired |
| CN | CN2008020002203.4 | 1/4/2008 | Issued |
| TW | 097100427 | 1/4/2008 | Issued |

50.  To the best of Apple's knowledge, information, and belief, there are no other foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '501 patent.

### C.    Design Patents

### a)  The D'757 Patent

### (1)    Identification and ownership of the D'757 patent

51.  U.S. Patent No. D558,757, entitled "Electronic Device," issued on January 1, 2008, to inventors Bartley Andre, Daniel Coster, Daniele De Iuliis, Richard Howarth, Jonathan Ive, Steve Jobs, Duncan Kerr, Shin Nishibori, Matthew Rohrbach, Douglas Satzger,

Calvin Seid, Christopher Stringer, Eugene Whang, and Rico Zorkendorfer.  The D'757 patent remains in full force and effect, and Apple is the owner of all right, title, and interest in and to the D'757 patent.  (See **Exhibit 13**.)

        **(2)**        **Non-technical description of the invention of the D'757 patent**

52.    The D'757 patent is directed to specific ornamental design features for an electronic device, such as a communication device.  These ornamental features are shown in the D'757 design patent's figures.

        **(3)**        **Foreign counterparts**

53.    A list of foreign counterparts to the D'757 patent is attached as **Exhibit 28**.

54.    To the best of Apple's knowledge, information, and belief, there are no other foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the D'757 patent.

    **b)**  **The D'678 Patent**

        **(1)**        **Identification and ownership of the D'678 patent**

55.    U.S. Patent No. D618,678, entitled "Electronic Device," issued on June 29, 2010, to inventors Bartley K. Andre, Daniel J. Coster, Daniele De Iuliis, Richard P. Howarth, Jonathan P. Ive, Steve Jobs, Duncan Robert Kerr, Shin Nishibori, Matthew Dean Rohrbach, Douglas B. Satzger, Calvin Q. Seid, Christopher J. Stringer, Eugene Antony Whang, and Rico Zorkendorfer.  Apple owns by assignment all right, title, and interest in the D'678 design patent.  (See **Exhibit 14**.)

(2)     **Non-technical description of the invention of the D'678 Patent**

56.   The D'678 patent is directed to specific ornamental design features for an electronic device, such as a communication device. These ornamental features are shown in the D'678 design patent's figures.

(3)     **Foreign counterparts**

57.   A list of foreign counterparts to the D'678 patent is attached as **Exhibit 29**.

58.   To the best of Apple's knowledge, information, and belief, there are no other foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the D'678 patent.

**VI.   UNFAIR ACTS OF THE PROPOSED RESPONDENTS**

59.   On information and belief, the proposed Samsung Respondents import into the United States, sell for importation into the United States, and/or sell in the United States after importation certain electronic digital media devices that infringe one or more of the patents-at-issue in violation of 35 U.S.C. § 271(a). (See **Exhibits 20-27**.)

60.   On information and belief, Samsung Accused Products infringe the patents-at-issue, including without limitation the following: (1) the Samsung Fascinate smartphone infringes at least claims 1, 3-6, and 9-20 of the '949 patent, at least claims 29-35 of the '922 patent, at least claims 1-3, 11-16, and 21-27 of the '697 patent, at least claims 1-4 and 8 of the '501 patent, the D'757 patent, and the D'678 patent; (2) the Samsung Galaxy S 4G smartphone infringes at least the D'678 patent; (3) the Samsung Transform smartphone infringes at least the D'757 patent and the D'678 patent; (4) the Samsung Captivate smartphone infringes at least claims 1, 3-6, and 9-20 of the '949 patent and at least claims 1, 4, 9, 11, 12, 15, 17, 19, and 20 of the '533 patent; (5) the Samsung

Intercept smartphone infringes at least claims 29-35 of the '922 patent; (6) the Samsung

Infuse 4G smartphone infringes at least claims 1, 3-6, and 9-20 of the '949 patent, at least

claims 29-35 of the '922 patent, and the D'678 patent; (7) the Samsung Galaxy Tab tablet

computer infringes at least claims 1, 3-6, and 9-20 of the '949 patent, at least claims 29-

35 of the '922 patent, at least claims 1, 4, 7, 9, 11, 12, 15-17, 19, and 20 of the '533

patent, at least claims 1-3, 11-16, and 21-27 of the '697 patent, and at least claims 1, 3-4,

and 8 of the '501 patent; and (8) the Samsung Galaxy Tab 10.1 tablet computer infringes

at least claims 1, 3-6, and 9-20 of the '949 patent, at least claims 29-35 of the '922 patent,

at least claims 1, 4, 7, 9, 11, 12, 15-17, 19, and 20 of the '533 patent, at least claims 1-3,

11-16, and 21-27 of the '697 patent, and at least claims 1, 3-4, and 8 of the '501 patent.

61. Infringing Samsung Accused Products are being manufactured, assembled, and/or

packaged and tested overseas, specifically, at least in Korea.  (See **Exhibits 20-27**.)

These same Accused Products are then being imported into the United States, operated

and tested in the United States, sold for importation into the United States, and/or sold

after importation in the United States.  (See **Exhibits 20-27**.)  The aforesaid acts of

Samsung constitute direct infringement of at least claims 1, 3-6, and 9-20 of the '949

patent; at least claims 29-35 of the '922 patent; at least claims 1, 4, 7, 9, 11, 12, 15-17, 19,

and 20 of the '533 patent; at least claims 1-3, 11-16, and 21-27 of the '697 patent; at least

claims 1-4 and 8 of the '501 patent; the D'757 patent; and the D'678 patent.

62. On information and belief, Samsung has notice and knowledge of the patents-at-issue and

its infringement of those patents at least by the date of receipt of this complaint.

63. On information and belief, Samsung knowingly contributes to the infringement of at least

claims 11-20 of the '949 patent; at least claims 29-35 of the '922 patent; and at least

claims 1, 4, 9, 11, 12, 15, 17, 19, and 20 of the '533 patent by offering to sell within the United States, selling within the United States, or importing into the United States Accused Products used to perform the claimed methods and knowing that the Accused Products are especially made or adapted for infringing use and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

64.     On information and belief, Samsung actively and knowingly induces the infringement, with the intent to cause infringement, of at least claims 11-20 of the '949 patent; at least claims 29-35 of the '922 patent; and at least claims 1, 4, 9, 11, 12, 15, 17, 19, and 20 of the '533 patent by providing the Accused Products along with directions, demonstrations, guides, manuals, training for use, and other materials that encourage and facilitate the infringing use by another.

65.     A claim chart demonstrating how claims 1, 11, and 17 of the '949 patent read onto the Samsung Captivate smartphone is attached as **Exhibit 30**.  This claim chart references documentation attached as part of **Exhibit 30**.

66.     A claim chart demonstrating how claims 1, 11, and 17 of the '949 patent read onto the Samsung Galaxy Tab tablet computer is attached as **Exhibit 31**.  This claim chart references documentation attached as part of **Exhibit 31**.

67.     A claim chart demonstrating how claims 29, 31, and 33 of the '922 patent read onto the Samsung Fascinate smartphone is attached as **Exhibit 32**.  This claim chart references documentation attached as part of **Exhibit 32**.

68.     A claim chart demonstrating how claims 29, 31, and 33 of the '922 patent read onto the Samsung Galaxy Tab tablet computer is attached as **Exhibit 33**.  This claim chart references documentation attached as part of **Exhibit 33**.

69.  A claim chart demonstrating how claims 1, 11, and 19 of the '533 patent read onto the Samsung Captivate smartphone is attached as **Exhibit 34**.  This claim chart references documentation attached as part of **Exhibit 34**.

70.  A claim chart demonstrating how claims 1, 11, and 19 of the '533 patent read onto the Samsung Galaxy Tab tablet computer is attached as **Exhibit 35**.  This claim chart references documentation attached as part of **Exhibit 35**.

71.  A claim chart demonstrating how claims 1 and 12 of the '697 patent read onto the Samsung Fascinate smartphone is attached as **Exhibit 36**.  This claim chart references documentation attached as part of **Exhibit 36**.

72.  A claim chart demonstrating how claims 1 and 12 of the '697 patent read onto the Samsung Galaxy Tab tablet computer is attached as **Exhibit 37**.  This claim chart references documentation attached as part of **Exhibit 37**.

73.  A claim chart demonstrating how claim 1 of the '501 patent reads onto the Samsung Fascinate smartphone is attached as **Exhibit 38**.  This claim chart references documentation attached as part of **Exhibit 38**.

74.  A claim chart demonstrating how claim 1 of the '501 patent reads onto the Samsung Galaxy Tab tablet computer is attached as **Exhibit 39**.  This claim chart references documentation attached as part of **Exhibit 39**.

75.  A claim chart demonstrating how the D'757 patent reads onto the Samsung Fascinate and Transform smartphones is attached as **Exhibit 40**.  This claim chart references documentation attached as part of **Exhibit 40**.

76.   A claim chart demonstrating how the D'678 patent reads onto the Samsung Galaxy S 4G, Fascinate, Transform, and Infuse 4G smartphones is attached as **Exhibit 41**. This claim chart references documentation attached as part of **Exhibit 41**.

## VII.   SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

77.   On information and belief, the Samsung Accused Products are imported into the United States, sold for importation into the United States, and/or sold after they are imported into the United States.

78.   On information and belief, the Samsung Accused Products are manufactured, assembled, and/or packaged and tested in Korea. (See **Exhibits 20-27**.) Samsung Accused Products are then imported into the United States, operated and tested in the United States, sold for importation into the United States, and/or sold after importation into the United States by Samsung and others. (See **Exhibits 20-27**.)

79.   Attached as **Exhibits 20-25** are receipts and photographs of the following Samsung cell phone handsets bearing "Phone Made in Korea" or "Made in Korea" designations: Samsung Fascinate, Galaxy S 4G, Intercept, Transform, Captivate, and Infuse 4G. Distributors in the United States sell such Samsung Accused Products. (See **Exhibits 20-25**.) The aforesaid Samsung Accused Products bearing "Phone Made in Korea" or "Made in Korea" designations have been imported and can be purchased in the United States. (See **Exhibits 20-25**.)

80.   Attached as **Exhibits 26 and 27** are receipts and photographs of the following Samsung tablet computers bearing "Phone made in Korea" or "Made in Korea by Samsung" designations: Samsung Galaxy Tab and Samsung Galaxy Tab 10.1. Distributors in the United States sell such Samsung Accused Products. (See **Exhibits 26-27**.) The aforesaid

Samsung Accused Products bearing "Phone made in Korea" or "Made in Korea by Samsung" designations have been imported and can be purchased in the United States. (See **Exhibits 26-27**.)

## VIII.   HARMONIZED TARIFF SCHEDULE ITEM NUMBERS

81.   On information and belief, the Samsung Accused Products are believed to fall within at least the following classification of the Harmonized Tariff Schedule of the United States: item number 8517.12.00 and 8471.30.01.  The Harmonized Tariff Schedule numbers are for illustrative purposes only, and are not intended to be restrictive of the scope of the Accused Products.

## IX.   LICENSEES

82.   Apple has licensed the patents-at-issue.  A list of licensees of the patents-at-issue is attached to this complaint as **Confidential Exhibit 42C** and the licensing agreements covering the patents-at-issue are attached as **Confidential Exhibits 42-1C-5C**.

## X.   DOMESTIC INDUSTRY

83.   There is a domestic industry, as defined under 19 U.S.C. § 1337(a)(3)(A), (B), and (C), comprising significant investments in physical operations, employment of labor and capital, and exploitation of the patents-at-issue.

### A.   Apple's Investment in the Domestic Industry

84.   Apple uses the inventions claimed in the patents-at-issue in numerous products.  For example, Apple makes the iPhone, which practices at least the '949, '922, '533, '697, and '501 utility patents and the D'757 and D'678 design patents; the iPad, which practices at least the '949, '922, '533, '697, and '501 utility patents; and the iPod Touch, which practices at least the '949, '922, '533, '697, and '501 utility patents.  Apple sells

these products with iOS pre-installed.  Apple researched, designed, and developed its

products that practice the patents-at-issue (the Domestic Industry Products) in the United

States and sells them and provides customer support within the United States through its

retail stores and other channels.  (**Confidential Exhibit 43C** at ¶¶ 1-5.)

85.    Apple has invested substantial amounts in the Domestic Industry Products, including

investments in engineering, research, and development.  Overall, Apple spent more than

$2.9 billion on research and development from fiscal year 2010 through the first half of

2011,[2] of which a substantial amount is allocable to the Domestic Industry Products.  (Id.

at ¶¶ 2, 5.)  **Confidential Exhibit 43C** contains detailed information regarding Apple's

research and development expenditures within the United States.  (Id.)  Apple conducted

substantially all of the research and development covered by these expenditures,

including those related to researching and developing the Domestic Industry Products, in

the United States.  (Id.)

86.    Apple has also invested substantial amounts on customer support and service for its

products, including the Domestic Industry Products.  (Id. at ¶¶ 3-4.)  These investments

include investments in establishing a network of authorized service centers in the United

States and developing a training and certification program for Apple-certified technicians

to ensure that Apple's customers receive industry-leading customer support for the

Domestic Industry Products and other Apple products.  (Id. at ¶ 3.)  From 2007 through

the first half of 2011, Apple spent a substantial amount on its training and certification

program.  (Id.)  **Confidential Exhibit 43C** contains additional information concerning

---

[2] Apple's fiscal year is the period that begins on the last Sunday of September and ends on the last Saturday of
September of the following calendar year.  All information presented here is based on Apple's fiscal calendar.

Apple's investment in customer support and service for the Domestic Industry Products. (Id.)

87.  Apple also supports its products through its retail stores.  Apple has opened more than 300 retail stores, more than 230 of which are located in the United States.  (Id.)  In addition to using these stores to sell its products, Apple provides customer support for the Domestic Industry Products and other products at in-store customer service centers called "Genius Bars."  (Id.)  Apple uses Genius Bars to provide support services for the Domestic Industry Products and other products, including troubleshooting technical problems, identifying needed repairs, and training customers to use products such as the Domestic Industry Products.  (Id.)  Apple has invested substantial amounts in its domestic retail stores.  Overall, Apple spent more than $6.8 billion on sales, marketing, and distribution from fiscal year 2010 through the first half of 2011, of which a substantial amount is allocable to the Domestic Industry Products.  (Id. at ¶ 4.) **Confidential Exhibit 43C** contains additional information concerning Apple's investment in its United States retail segment.  (Id. at ¶¶ 3-4.)

88.  Apple has made significant investments in plant and equipment with respect to the Domestic Industry Products.  Apple's headquarters are located in Cupertino, California. **(Exhibit 15** at 21.)  Apple owns facilities for research and development and corporate functions in Cupertino, California, and owns a warehousing and distribution operation and customer support call center in Elk Grove, California and a data center in Newark, California.  (Id.)  Through the end of fiscal year 2010, Apple owned or leased approximately 10.6 million square feet of building space, most of which is located in the United States.  (Id.)

89. Pursuant to 19 U.S.C. § 1337(a)(3)(C), Apple has also made substantial investments in exploiting its patent portfolio through patent licensing activities, such that a domestic industry exists or, alternatively, is in the process of being established.  Apple has entered into cross-licenses that include patents-at-issue, and thus has leveraged its patents to obtain access to other firms' valuable intellectual property.  (See **Confidential Exhibit 42C; see also Confidential Exhibits 42-1C-5C**.)  **Confidential Exhibit 43C** contains additional information concerning Apple's investment in licensing the patents-at-issue.  (Id. at ¶ 6.)

90. In 2010, Apple's net sales surpassed $65 billion, including more than $25 billion from iPhones and related products and services, more than $4.9 billion from iPad products, and more than $8 billion from iPod products.  (**Exhibit 15** at 33.)  During 2010, Apple sold nearly 40 million iPhone units, more than 7.4 million iPad units, and more than 50 million iPod units.  (Id.)  The United States represents Apple's largest geographic marketplace.  (Id. at 9.)  More than 44% of Apple's net sales in 2010 came from sales to customers within the United States.  (Id. at 33.)

91. Apple's domestic industry investments and expenditures with respect to the patents-at-issue are continuous and ongoing.  (**Confidential Exhibit 43C** at ¶¶ 1-5.)

**B.     Apple Practices the Patents-at-Issue**

92. As noted above, Apple makes numerous products that practice the patents-at-issue.  The features and operations described and claimed in the patents-at-issue are present throughout Apple's product portfolio.  The allocation of revenue and cost items for each of these product lines is shown in the tables contained in **Confidential Exhibit 43C**.

Specific examples of use are described below and compared to the above-referenced claims of the patents-at-issue in associated exhibits.

93. A sample iPhone 4 is provided concurrently with this Complaint as **Physical Exhibit 1**.

94. A sample iPhone 3GS is provided concurrently with this Complaint as **Physical Exhibit 2**.

95. A sample iPad is provided concurrently with this Complaint as **Physical Exhibit 3**.

96. A sample iPod Touch is provided concurrently with this Complaint as **Physical Exhibit 4**.

97. The '949 patent is practiced by Apple products including, without limitation, iPhone, iPad, and iPod products. A claim chart comparing an iPhone 4 to exemplary claim 1 of the '949 patent is attached as **Exhibit 44**.

98. The '922 patent is practiced by Apple products including, without limitation, iPhone, iPad, and iPod products. A claim chart comparing an iPad to exemplary claim 31 of the '922 patent is attached as **Exhibit 45**.

99. The '533 patent is practiced by Apple products including, without limitation, iPhone, iPad, and iPod products. A claim chart comparing an iPhone 3GS to exemplary claim 1 of the '533 patent is attached as **Exhibit 46**.

100. The '697 patent is practiced by Apple products including, without limitation, iPhone, iPad, and iPod products. A claim chart comparing an iPod Touch to exemplary claim 1 of the '697 patent is attached as **Exhibit 47**.

101. The '501 patent is practiced by Apple products including, without limitation, iPhone, iPad, and iPod products. A claim chart comparing an iPhone 4 to exemplary claim 1 of the '501 patent is attached as **Confidential Exhibit 48C**.

102. A claim chart comparing an iPhone 3GS to the D'757 patent is attached as **Exhibit 49**.

103. A claim chart comparing an iPhone 4 to the D'678 patent is attached as **Exhibit 50**.

## XI.   RELATED LITIGATION

104. The '949 Patent is currently being litigated in <u>Apple Inc. v. High Tech Computer Corp.,</u>
<u>et al.,</u> 1:10-cv-00167-GMS (D. Del.).  That action was filed by Apple on March 2, 2010.

## XII.   RELIEF REQUESTED

105. WHEREFORE, by reason of the foregoing, Apple respectfully requests that the United
States International Trade Commission:

    a.    institute an immediate investigation pursuant to Section 337 of the Tariff Act of
1930, as amended, into the unlawful importation into the United States, the sale
for importation into the United States, and/or the sale within the United States
after importation by Samsung of certain electronic digital media devices,
including mobile phone handsets and tablet computers, and components thereof,
including software, touch-pads, and hardware interfaces used in electronic digital
media devices that infringe one or more claims of the United States patents-at-
issue;

    b.    determine that there has been a violation of Section 337;

    c.    issue a limited exclusion order pursuant to Section 337(d) excluding from entry
into the United States all Accused Products manufactured, imported, sold, or sold
for importation by or on behalf of the named Samsung entities or any of their
affiliates, subsidiaries, other related business entities, or their successors or
assigns that infringe one or more claims of the United States patents-at-issue;

    d.    issue a permanent cease-and-desist order pursuant to Section 337(f) prohibiting
the named Samsung entities and their affiliates, subsidiaries, successors, or

assigns from importing, selling, servicing, marketing, advertising, demonstrating,

distributing, offering for sale, transferring, including moving or shipping

inventory, in the United States, and soliciting U.S. agents or distributors for any

imported Accused Products that infringe one or more claims of the United States

patents-at-issue; and

e.    issue such other and further relief as the Commission deems appropriate.

Respectfully submitted,

Alexander J. Hadjis
AHadjis@mofo.com
G. Brian Busey
GBusey@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW, Suite 6000
Washington, DC 20006
Telephone:  (202) 887-1500
Facsimile: (202) 887-0763
Harold J. McElhinny
HMcElhinny@mofo.com
Michael A. Jacobs
MJacobs@mofo.com
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Counsel for Complainant Apple Inc.

## VERIFICATION OF COMPLAINT

I, Gregory Joswiak, declare, in accordance with 19 C.F.R. §§ 210.4 and 210. 12(a), under penalty of perjury, that the following statements are true:

1.      I am currently Apple's Vice President of Worldwide Product Marketing for the iPod and iPhone. I am duly authorized by Apple to verify the foregoing Complaint.

2.      To the best of my knowledge, information, and belief, formed after a reasonable inquiry, the allegations of the Complaint are well grounded in fact and have evidentiary support, or, where specifically identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

3.      To the best of my knowledge, information, and belief, formed after a reasonable inquiry, the claims and other legal contentions set forth in the Complaint are warranted by existing law or by a good faith, non-frivolous argument for extension, modification, or reversal of existing law, or by the establishment of new law.

4.      The Complaint is not being filed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed this 1st day of July, 2011

Gregory Joswiak
Apple Inc.