1               IN THE UNITED STATES DISTRICT COURT

2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                       SAN JOSE DIVISION

4

5    APPLE, INC.,                )  C-11-01846-LHK
                                 )
6              PLAINTIFF,        )  FEBRUARY 17, 2012
                                 )
7                   V.           )
                                 )
8    SAMSUNG ELECTRONICS         )  PAGES 1 - 29
     COMPANY, LTD., ET AL.,      )
9                                )
               DEFENDANTS.       )
10   _____    )

11

12            THE PROCEEDINGS WERE HELD BEFORE

13          THE HONORABLE UNITED STATES DISTRICT

14            MAGISTRATE JUDGE PAUL S. GREWAL

15   A P P E A R A N C E S:

16

17

18   FOR THE PLAINTIFF:  MORRISON & FOERSTER
     TELEPHONICALLY      BY:  HAROLD J. MCELHINNY
19                       425 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA 94105
20

21

22
            (APPEARANCES CONTINUED ON THE NEXT PAGE.)
23

24   OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                              CERTIFICATE NUMBER 8074
25

                                                              1

```
 1      A P P E A R A N C E S: (CONT'D)

 2

        FOR THE DEFENDANTS: QUINN, EMANUEL, URQUHART &
 3      TELEPHONICALLY       SULLIVAN
                             BY:  RACHEL KASSABIAN
 4                                VICTORIA F. MAROULIS
                             555 TWIN DOLPHIN DRIVE
 5                           5TH FLOOR
                             REDWOOD SHORES, CALIFORNIA 94065
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

2

```
 1    SAN JOSE, CALIFORNIA              FEBRUARY 17, 2012

 2                    P R O C E E D I N G S

 3

 4              (WHEREUPON, COURT CONVENED AND THE

 5    FOLLOWING PROCEEDINGS WERE HELD:)

 6              THE COURT:  MR. RIVERA, WOULD YOU CALL

 7    OUR FIRST MATTER ON THIS AFTERNOON'S CALENDAR.

 8              THE CLERK:  YES, YOUR HONOR.

 9              CALLING APPLE V. SAMSUNG ELECTRONICS, ET

10    AL., CASE NUMBER CV-11-1846.

11              MATTER ON FOR HEARING ON APPLE IS MOTION

12    TO SHORTEN TIME FOR BRIEFING AND HEARING ON APPLE'S

13    MOTION TO COMPEL.

14              COUNSEL, PLEASE STATE YOUR APPEARANCES.

15              MR. MCELHINNY:  GOOD AFTERNOON, YOUR

16    HONOR.  THIS IS HAROLD MCELHINNY WITH MORRISON AND

17    FOERSTER FOR APPLE.

18              THE COURT:  MR. MCELHINNY, GOOD

19    AFTERNOON, SIR.

20              AND FOR SAMSUNG?

21              MS. MAROULIS:  THIS IS VICTORIA MAROULIS

22    FOR SAMSUNG FROM QUINN EMANUEL.  I APOLOGIZE FOR

23    THE QUALITY OF THE RECEPTION.  I'M CALLING YOU FROM

24    SEOUL, KOREA.

25              THE COURT:  ALL RIGHT.  GOOD AFTERNOON OR
```

U.S. COURT REPORTERS

1    GOOD MORNING AS THE CASE MAY BE.

2              COUNSEL, I HAVE RECEIVED AND REVIEWED A

3    REQUEST FROM APPLE FOR EXPEDITED CONSIDERATION OF

4    ITS MOTION TO COMPEL.

5              I HAVE ALSO RECEIVED AND REVIEWED AN

6    OPPOSITION THAT SAMSUNG FILED SHORTLY THEREAFTER.

7              MR. MCELHINNY, I'LL START WITH YOU.  I

8    TAKE IT MY EARLIER ORDER WASN'T TERRIBLY CLEAR

9    ABOUT MY ATTITUDE REGARDING EXPEDITED CONSIDERATION

10   IN THIS CASE AND WHAT YOU ALL HAVE DONE WITH THAT

11   OPPORTUNITY.

12             WHY ARE YOU FILING THIS AND WHY SHOULD I

13   NOT CONSIDER IT TO BE A, PERHAPS, AT LEAST A

14   DISREGARD OF THE MESSAGE THAT I WAS TRYING TO SEND

15   EARLIER?

16             MR. MCELHINNY:  WE ARE -- WE DID RECEIVE

17   YOUR EARLIER ORDER, YOUR HONOR.

18             WE CONSIDERED IT VERY -- WE UNDERSTAND --

19   I THINK WE UNDERSTOOD YOUR MESSAGE PERFECTLY.

20             THE COURT:  WELL, APPARENTLY NOT

21   PERFECTLY ENOUGH BECAUSE I NOW HAVE YET ANOTHER

22   REQUEST FOR EXPEDITED CONSIDERATION.  SO WHY SHOULD

23   I ENTERTAIN THIS?

24             MR. MCELHINNY:  FIRST, WE HAVE FILED

25   OTHER MOTIONS SINCE YOUR ORDER IN WHICH WE HAVE NOT

1    ASKED FOR EXPEDITED TIME.  AND THE REASONS WE

2    THOUGHT IT WAS JUSTIFIED TO ASK FOR EXPEDITED TIME

3    IN THIS CASE ON THIS PARTICULAR MOTION IS BECAUSE

4    THE NATURE OF THE ISSUE, WHICH IS WITH 13 WITNESSES

5    BEING WITHHELD FROM DEPOSITION, WITH THE TIME THAT

6    IS REMAINING FOR US TO TAKE DISCOVERY, WE CAN'T GET

7    AN ORDER -- WE CAN'T GET A MOTION OUT IN A

8    REGULARLY NOTICED TIME UNTIL AFTER THE DATE.

9         THE COURT:  ARE THERE 13 WITNESSES IN

10   DISPUTE NOW OR 14?  I HAD READ YOUR PAPERS TO

11   SUGGEST THAT THERE WERE 14 WITNESSES.

12        MR. MCELHINNY:  I'VE GOT.  LET ME SEE.

13   I'M SORRY.  THEY JUST GAVE ME THE NUMBER.

14        I'M SORRY, YOUR HONOR.  YOU'RE RIGHT,

15   THERE ARE 14 WITNESSES IN DISPUTE.

16        THE COURT:  ALL RIGHT.

17        MR. MCELHINNY:  THE NATURE -- AND PLEASE

18   LET ME FINISH BECAUSE I KNOW THIS IS THE MOST

19   IMPORTANT QUESTION, BUT THERE ARE TWO ISSUES.  WHAT

20   IS UNIQUE ABOUT THIS IS THAT WE HAVE A CERTAIN

21   NUMBER OF HOURS OF DEPOSITION BUDGETED AND UNTIL WE

22   KNOW WHETHER OR NOT IF WE USE THAT TIME AND THEN

23   FIND OUT WE GET THESE WITNESSES, THEN WE WON'T HAVE

24   IT AVAILABLE.

25        IF WE SAVE THE TIME FOR THESE WITNESSES

```
1        AND THEN DON'T GET THESE WITNESSES, WE WILL HAVE

2        LOST THE TIME.  THAT'S A STRATEGIC CONSIDERATION.

3                BUT THE REASON -- THE UNDERLYING REASON

4        IN TERMS OF UNDERSTANDING YOUR ORDER, WHAT I TOOK

5        AWAY FROM YOUR ORDER WAS THAT YOU WOULD NOT GIVE US

6        PRIORITY BECAUSE YOU DIDN'T THINK THAT WE WERE

7        DOING A THOROUGH AND ADEQUATE JOB OF MEETING AND

8        CONFERRING AND RESOLVING THESE KINDS OF ISSUES.

9                AND WHAT WE SET OUT IN OUR MOTION PAPERS

10       FOR YOU TO UNDERSTAND IS THAT WE HAVE MET AND

11       CONFERRED ABOUT THIS NOT JUST ONCE BUT TWICE.  IN

12       BETWEEN THE FIRST MEETING AND THE SECOND MEETING,

13       WE LITERALLY SENT OUT OUR MOTION PAPERS TO SAMSUNG

14       AND SAID HERE IS OUR JUSTIFICATION FOR EACH ONE OF

15       THESE EXPERTS -- NOT EXPERTS BUT WITNESSES.

16               WE LITERALLY LAID IT ALL OUT FOR THEM AND

17       SAID THIS IS WHAT WE WILL BRING TO THE COURT AND WE

18       STILL HAVE NOT BEEN ABLE TO RESOLVE THIS.

19               THE IDEA THAT MEETING AND -- I MEAN, THEY

20       TOOK -- TO BE FAIR, THEY TOOK THREE WITNESSES OFF

21       AND WE DROPPED SIX.  THERE WAS PROGRESS MADE, BUT

22       IT'S NOT GOING TO GO ANY FURTHER WITHOUT AN ORDER

23       FROM YOUR HONOR.

24               AND WE ARE IN THE POSITION THAT THE

25       PLAINTIFFS -- OF TRYING TO HOLD ON TO OUR TRIAL
```

6

```
 1      DATE.  IN ORDER TO DO THAT WE HAVE TO HOLD ON TO
 2      THE DISCOVERY DATE, AND WE'RE FACING A SITUATION OF
 3      JUST AN ABSOLUTE REFUSAL TO PRODUCE, AS YOUR HONOR
 4      WILL SEE IF YOU HAVE TIME TO SEE THE PAPERS, THE
 5      MOST CENTRAL WITNESSES IN THE CASE.
 6              AND --
 7              THE COURT:  WHEN WERE THESE DEPOSITION
 8      NOTICES SERVED?
 9              MR. MCELHINNY:  THEY WERE SERVED -- WELL,
10      THEY WERE SERVED A LONG TIME AGO.
11              THE COURT:  HOW LONG AGO?
12              MR. MCELHINNY:  PRIOR TO FEBRUARY 3RD,
13      BECAUSE IT WAS FEBRUARY 3RD, THAT I KNOW IN TERMS
14      OF THE CHRONOLOGY THAT I KNOW THAT WE WERE TOLD
15      THEY WOULD NOT BE PRESENTED.
16              THE COURT:  WELL, I'M ASKING FOR MORE
17      PRECISE INFORMATION, MR. MCELHINNY, ONLY BECAUSE IF
18      YOU SERVED THESE NOTICES AS FAR BACK AS, WHAT,
19      DECEMBER, NOVEMBER, HOW FAR BACK ARE WE TALKING
20      ABOUT HERE?
21              MR. MCELHINNY:  I'M SORRY.  I WALKED OUT
22      OF A DEPOSITION.  I'M ACTUALLY AT THE QUINN EMANUEL
23      LAW OFFICES, AND I DON'T HAVE THAT SPECIFIC DATE.
24              THE COURT:  DO YOU HAVE A SENSE OF IT?
25              HERE'S MY POINT, IF THE DEPOSITIONS WERE
```

1     NOTICED MONTHS AND MONTHS AND MONTHS AGO, SO FAR

2     AGO, PERHAPS, THAT YOU CAN'T RECALL EXACTLY WHEN,

3     WHY WASN'T THIS ISSUE JOINED WEEKS AGO IF NOT

4     MONTHS AGO?

5                 MR. MCELHINNY:  AND, AGAIN, A FAIR

6     QUESTION.  BUT THE REASON FOR THAT WAS BECAUSE THE

7     MEET AND CONFER REQUIREMENTS THAT THE COURT HAS PUT

8     US -- IN OTHER WORDS, THEY SERVED US A LETTER.  WE

9     MET AND CONFERRED AT A LOWER LEVEL.  WE FINALLY GOT

10    THIS AT A LEAD COUNSEL MEET AND CONFER WITH

11    MR. VERHOEVEN AND MYSELF.  WE SAT DOWN AND TRIED TO

12    RESOLVE HOW TO DO THIS.

13                AND WE AGREED, WE, MORRISON, AGREED TO

14    SERVE THEM WITH A LETTER SETTING OUT IN GREAT

15    DETAIL, AND, IN FACT, THE DOCUMENTS THAT CALLED

16    THESE PEOPLE'S NAMES OUT AND WHY THEY WERE

17    REQUIRED.  WE SENT THEM A 13-PAGE LETTER.  AND WE

18    THEN HAD ANOTHER MEET AND CONFER MEETING IN ORDER

19    TO DISCUSS THAT LETTER.  WE HAD THAT ON THE 14TH.

20                AND WHEN THEY SAID, YOU KNOW, THEY WERE

21    NOT GOING TO DO IT, WE FILED THIS MOTION.  BUT,

22    JUDGE, IF YOU READ THEIR PAPERS, THEIR POSITION IS

23    THAT THE MEET AND CONFER PROCESS IS NOT OVER YET.

24    THEIR POSITION IS THAT WE HAVE NOT EVEN MET AND

25    CONFERRED WITH THEM EVEN IN GOOD FAITH.

1            BUT WE'RE TRAPPED IN THIS CYCLE OF HAVING

2     TO DECIDE WHEN WE HAVE MET AND CONFERRED

3     SUFFICIENTLY SO THAT THAT WON'T BE THE RESULT.  I

4     MEAN, IF WE DON'T GO THROUGH THE WHOLE MOTION

5     PROCESS AND FIND THAT YOUR HONOR DISAGREES WITH

6     THAT.

7            THE COURT:  WELL, BUT THE PROBLEM THAT

8     YOU'RE DESCRIBING, MR. MCELHINNY, IS, AGAIN, THE

9     CONSTRAINTS IMPOSED BY THE LEAD COUNSEL ON THE MEET

10    AND CONFER REQUIREMENTS, I DON'T KNOW HOW MANY

11    TIMES I HAVE SAID THIS IN HEARINGS IN THIS CASE,

12    WHY HAVE YOU ALL NOT ATTEMPTED TO SEEK RELIEF FROM

13    JUDGE KOH ON THIS, SIR?  SHE IMPOSED THE ORDER,

14    SIR.

15            I HAVE RAISED THE POSSIBILITY OF SEEKING

16    RELIEF FROM HER HALF A DOZEN TIMES.  AND YET OVER

17    AND OVER AGAIN WHEN EXPEDITED RELIEF IS REQUESTED

18    I'M TOLD ABOUT THE PAIN AND SUFFERING IMPOSED BY

19    JUDGE KOH'S REQUIREMENTS, AND ALL OF WHICH MAY BE

20    LEGITIMATE, AND YET THAT'S THE ORDER OF THE

21    PRESIDING JUDGE.

22            MR. MCELHINNY:  I'M SORRY, YOUR HONOR.  I

23    WAS NOT CLEAR ABOUT IT.  I'M NOT TALKING ABOUT THE

24    SCHEDULING REQUIREMENT.  I'M NOT TALKING ABOUT THE

25    MEET AND CONFER REQUIREMENT.

9

1          I'M TALKING ABOUT THE FACT THAT WE HAVE

2     LOST EITHER TWO OR THREE MOTIONS IN FRONT OF YOUR

3     HONOR BECAUSE AFTER WE THOUGHT WE HAD MET AND

4     CONFERRED AND AFTER IT WAS BRIEFED, YOUR HONOR

5     DETERMINED THAT WE HAD NOT SUFFICIENTLY MET AND

6     CONFERRED.

7          SO IN THIS -- THAT'S WHAT I'M TALKING

8     ABOUT HERE.  WE DID NOT WANT TO COME IN FRONT OF

9     YOUR HONOR WITH A PROCESS THAT YOUR HONOR WOULD

10    THINK HAD BEEN INSUFFICIENT.

11         SO THIS PROCESS, AS I SAY, MR. VERHOEVEN

12    AND I HAVE MET IN PERSON ON THIS TWICE, AND WE

13    EXCHANGED 13-PAGE LETTERS ON THIS.

14         THE PROCESS WE HAVE BEEN THOROUGH, BUT

15    THAT PROCESS TOOK THE TIME FROM FEBRUARY 3RD, UNTIL

16    OUR LAST MEET AND CONFER, WHICH WAS FEBRUARY 14TH.

17         THE COURT:  AND DOESN'T THAT SUGGEST,

18    MR. MCELHINNY, THAT IF THIS LENGTHY PROCESS HAD

19    BEEN INITIATED WEEKS AGO, RATHER THAN, SAY, ON

20    FEBRUARY 3RD, YOU MIGHT NOT FACE THE TIME

21    CONSTRAINT YOU FACE RIGHT NOW?

22         MR. MCELHINNY:  IN FAIRNESS, YOUR HONOR,

23    WE WERE TOLD ON FEBRUARY 3RD, THAT THESE WITNESSES

24    WOULD NOT BE PRESENTED.

25         THE COURT:  AND, AGAIN, IF YOU SERVE THE

                                                        10

```
 1    NOTICES AS FAR BACK AS LAST YEAR, NOVEMBER I'M
 2    GUESSING, PERHAPS, I DON'T HAVE THE INFORMATION IN
 3    FRONT OF ME, WOULDN'T YOU HAVE GOTTEN THAT
 4    INFORMATION SOONER OR MORE QUICKLY IF YOU HAD
 5    ENGAGED AND SIMPLY ASKED SAMSUNG, ARE YOU GOING TO
 6    TENDER THE WITNESS OR NOT?
 7              MR. MCELHINNY:  IN FAIRNESS, YOUR HONOR,
 8    THE ANSWER IS THAT WE DID THAT.  WE GOT DATES FOR
 9    SOME.  WE HAVE BEEN GETTING DATES ON A ROLLING
10    BASIS.  WE ESCALATED THIS, AND THAT'S WHY WE GOT A
11    LETTER ON FEBRUARY 3RD.
12              WE HAVE BEEN PUSHING THIS CONSISTENTLY
13    AGAINST THE POSITION THAT WE'RE NOT DOING ENOUGH
14    MEETING AND CONFERRING, WE'RE NOT PROVIDING ENOUGH
15    INFORMATION, WE HAVE TO TAKE LOWER LEVEL PEOPLE
16    FIRST, WE HAVE TO TAKE 30(B)(6) DEPOSITIONS FIRST.
17              IT HAS BEEN A CONCERTED STALLING CAMPAIGN
18    THAT WE HAVE TO FIGURE OUT WHAT IS THE RIGHT TIME
19    THAT YOUR HONOR IS GOING TO AGREE THAT WE HAVE DONE
20    ENOUGH PROCESS.  AND, THAT IS, WE WERE NOT
21    COMFORTABLE THAT THAT CAN BE FINISHED IN THE LAST
22    MEET AND CONFER.
23              THE COURT:  NOW, WHY -- LET'S ASSUME
24    YOU'RE RIGHT ON ALL OF THOSE POINTS.  WHY DON'T THE
25    LOCAL RULES AND THEIR PROVISION FOR RELIEF AFTER
```

11

1    THE CLOSE OF FACT DISCOVERY MITIGATE THE PREJUDICE

2    THAT YOU'RE POINTING TO JUSTIFY THIS EXPEDITED

3    REQUEST?

4              MR. MCELHINNY:  BECAUSE IN THE LAST TWO

5    MEET AND CONFERS, THE ISSUE HAS STARTED TO COME UP

6    FROM THE SAMSUNG SIDE ABOUT BECAUSE OF THE PROBLEMS

7    WITH DISCOVERY AND DELAYS, IT'S CLEAR THAT THERE'S

8    GOING TO HAVE TO BE A MOTION TO PUSH OUT DATES AND

9    TO PUSH OUT TRIAL DATES.

10             AND THE ISSUE HERE THAT I'M VERY WORRIED

11   ABOUT IS THAT IF WE GET POST-DISCOVERY RELIEF HERE,

12   THAT THAT WILL TRIGGER THE AVALANCHE THAT BECAUSE

13   THIS INFORMATION WAS SO CRITICAL, IT WILL MOVE THE

14   DATES OF THE EXPERT REPORTS, IT'S PART FROM MY

15   PERSPECTIVE, WHICH, YOUR HONOR, I UNDERSTAND YOU

16   CAN'T SEE FULLY, BUT IT IS A VERY CALCULATED

17   STRATEGY THAT I PREDICTED FOR JUDGE KOH THE SECOND

18   TIME WE WERE HERE ABOUT UNDOING THE ORDER

19   EXPEDITING THE TRIAL.

20             THE COURT:  ALL RIGHT.  MS. MAROULIS, DO

21   YOU WANT TO SPEAK TO THIS?

22             FIRST OF ALL, WHERE IS MR. VERHOEVEN?

23             MS. MAROULIS:  YOUR HONOR, WE WERE NOT

24   ABLE TO OBTAIN MR. VERHOEVEN QUICKLY ENOUGH FOR

25   THIS CALL.  I WILL RESPOND BRIEFLY, AND THAT IS, WE

                                                    12

1    TOOK YOUR HONOR'S ORDER FROM THE LAST HEARING VERY

2    SERIOUSLY.  WE HAVE A LOT OF PROBLEMS WITH APPLE'S

3    DISCOVERY.  AND WE HAVE NOT FILED THOSE MOTIONS ON

4    AN EXPEDITED SCHEDULE BECAUSE WE UNDERSTOOD THE

5    COURT TO SAY WE HAVE TO WAIT IN LINE.

6            WE ARE PREPARING AND WE WILL BE FILING

7    TODAY A MOTION FOR PROTECTIVE ORDER FOR THOSE

8    WITNESSES AND WE HAVE PUT THEM ON A NORMAL

9    SCHEDULE, AND WE SUBMIT THEY SHOULD BE HEARD

10   TOGETHER, BOTH OUR MOTION AND THEIR MOTION.

11           THEY HAVE NOT BEEN ABLE TO JUSTIFY WHY

12   THEY SHOULD IGNORE YOUR HONOR'S ADMONITIONS, WHICH

13   WE HAVE TAKEN SERIOUSLY AND HAVE NOT BROUGHT A

14   WHOLE NEW WRATH OF OTHER DISPUTES BEFORE THE COURT

15   ON THE SHORTENED SCHEDULE.

16           WE DISAGREE WITH COUNSEL'S

17   CHARACTERIZATION ABOUT STALLING.  THAT'S NOT THE

18   CASE AT ALL.

19           APPLE HAS SERVED MORE THAN 80 DEPOSITIONS

20   ON US IN THE LAST MONTH AND A HALF.  I DON'T HAVE

21   THE EXACT NUMBERS HERE WITH ME, BUT WE HAVE BEEN

22   DOING WHAT EVERYONE DILIGENTLY COULD.  WE HAVE A

23   LARGE NUMBER OF ATTORNEYS IN KOREA HERE, AND WE

24   HAVE DONE EVERYTHING WE CAN TO EXPEDITE ALL OF THE

25   DEPOSITION SCHEDULES AND PROCESSING.  THIS IS AN

1    IMPORTANT APEX ISSUE, AND WE SHOULD ALSO NOT BE

2    FORCED TO GIVE UP OUR RIGHTS AND DO THAT.

3            THE COURT:  WHEN DID YOU FIRST EXPLAIN TO

4    APPLE THAT YOU WOULD NOT BE TENDERING ANY OF THESE

5    14 WITNESSES?

6            MS. MAROULIS:  WHEN DID WE TELL THEM?  I

7    UNDERSTOOD THAT WE TOLD THEM ON FEBRUARY 3RD, AS TO

8    MOST OF THEM, AND THEN I BELIEVE IN JANUARY THERE

9    WERE 12 OF THEM THAT THEY --

10           THE COURT:  I CAN'T UNDERSTAND YOU,

11   MS. MAROULIS AND THE TRANSCRIPT IS GOING TO BE

12   TERRIBLY MUDDLED.  AND I CAN'T UNDERSTAND.  SO

13   UNFORTUNATELY YOUR CONNECTION IS PREVENTING THIS.

14           MS. KASSABIAN:  YOUR HONOR?

15           THE COURT:  YES, MA'AM.  GO AHEAD.  WHO

16   IS SPEAKING?

17           MS. KASSABIAN:  SORRY FOR THE

18   INTERRUPTION.  THIS IS RACHEL KASSABIAN.

19           IS MY CONNECTION OKAY.

20           THE COURT:  YES, IT'S FINE,

21   MS. KASSABIAN.  GO AHEAD.

22           MS. KASSABIAN:  SO I JUST WANTED TO POINT

23   OUT A FEW FACTS.  WE RECEIVED DEPOSITION NOTICES

24   FROM APPLE ON THESE APEX WITNESSES HAVE STRADDLED

25   IN BETWEEN DECEMBER 6TH, 2011, THROUGH AS LATE AS

14

1    JANUARY 28TH, 2012.

2                ON THE EARLIER NOTICES, YOUR HONOR, WE

3    AGREE THAT IF THIS WAS SUCH A PRESSING ISSUE FOR

4    APPLE, THEY SHOULD HAVE ESCALATED THIS ISSUE MANY,

5    MANY, MANY WEEKS AGO, NOT ON FEBRUARY 16TH.

6                AND AS TO THE LATER NOTICED DEPOSITIONS,

7    YOU KNOW, THOSE APPEAR TO BE, YOU KNOW, UNTIMELY.

8                IF THIS WAS SUCH AN IMPORTANT ISSUE, THEY

9    SHOULD HAVE SERVED THOSE SOONER.

10               AS FAR AS WHEN DID SAMSUNG RAISE THESE

11   OBJECTIONS, AS I MENTIONED IN MY DECLARATION FILED

12   YESTERDAY, THIS WAS FIRST DISCUSSED ON JANUARY 5TH,

13   THE ISSUES WAS RAISED AT ONE OF THE LEAD COUNSEL'S

14   MEET AND CONFER --

15               THE COURT:  I'M SORRY FOR INTERRUPTING

16   YOU, MS. KASSABIAN, BUT DID MR. VERHOEVEN EXPLAIN

17   ON JANUARY 5TH, OR THEREABOUTS, THAT THESE

18   WITNESSES WOULD NOT BE APPEARING FOR DEPOSITION?

19               MS. KASSABIAN:  WELL, AS OF JANUARY 5TH,

20   NOT ALL OF THOSE NOTICES HAD EVEN BEEN SERVED BUT

21   ON THAT DATE I WAS THERE AND I DO RECALL THAT WE

22   RAISED THE ISSUE, HEY, SOME OF THESE DEPOSITIONS

23   ARE GOING TO BE APEX AND WE ARE GOING TO HAVE

24   OBJECTIONS.

25               ON JANUARY 13TH, WE SENT A LETTER TO

                                                          15

1    APPLE REGARDING ONE OF THE EARLIEST NOTICED APEX

2    DEPOSITIONS AND THAT WAS AN SPA CHIEF EXECUTIVE

3    OFFICER DALE SOHN, AND WE SENT THAT LETTER ON

4    JANUARY 13TH.

5         APPLE DID NOT RESPOND FOR THREE WEEKS

6    UNTIL FEBRUARY 9TH, TO THAT LETTER.

7         SO THE ADDITIONAL APEX DEPOSITION NOTICES

8    HAD TRICKLED IN, AS I SAID, IN MID- TO LATE JANUARY

9    AND THOSE -- WE FORMALLY RESPONDED IN WRITING TO

10   THOSE ON FEBRUARY 3RD, I BELIEVE, THAT IS THE DATE

11   THAT OUR LETTER WENT OUT.

12        AND, AGAIN, IT'S NOW FEBRUARY, YOU KNOW,

13   16TH, 17TH.

14        SO WE AGREE WITH YOUR HONOR THAT THE

15   PARTIES SHOULD GET IN LINE ON THIS ONE.  WE DON'T

16   THINK THAT CAUSE HAS BEEN SHOWN TO SHORTEN TIME.

17        THE COURT:  I TAKE IT THAT IF I WERE TO

18   ULTIMATELY GRANT APPLE'S MOTION AND ORDER THE

19   DEPOSITIONS OF ALL 14 OF THESE INDIVIDUALS, SAMSUNG

20   WOULD HAVE NO OBJECTIONS IF THOSE DEPOSITIONS COULD

21   ONLY BE TAKEN AFTER THE CURRENT DEADLINE FOR FACT

22   DISCOVERY.

23        MS. KASSABIAN:  YOUR HONOR, I DON'T THINK

24   THAT WE WILL -- WE WILL FOLLOW WHATEVER ORDER YOUR

25   HONOR ISSUES.

```
 1                    THE COURT:  WELL, I HOPE THAT'S TRUE.
 2      BUT LET ME ASK YOU, WHAT IS YOUR POSITION IF I'M
 3      NOT ABLE TO AFFORD RELIEF AS REQUESTED BY APPLE
 4      UNTIL AFTER THE CLOSE OF FACT DISCOVERY?
 5                    WILL THERE BE ANY OBJECTION TO THOSE
 6      DEPOSITIONS GOING FORWARD, EVEN THOUGH THEY'RE
 7      AFTER THAT DATE?
 8                    MS. MAROULIS:  VICTORIA MAROULIS.  IF
 9      YOUR HONOR GRANTS, WE WILL RESPECTFULLY PROVIDE THE
10      WITNESSES AFTER THE CUT OFF.
11                    THE COURT:  ALL RIGHT.  MS. KASSABIAN,
12      I'M GOING TO ADDRESS THIS TO YOU ONLY BECAUSE I'M
13      HAVING TROUBLE WITH MS. MAROULIS'S CONNECTION.
14                    IS IT REALLY SAMSUNG'S VIEW THAT 14
15      SEPARATE WITNESSES ALL QUALIFY AS APEX WITNESSES?
16                    IT'S DIFFICULT TO SQUARE WITH MY
17      UNDERSTANDING OF WHAT AN APEX IS.
18                    MS. KASSABIAN:  I UNDERSTAND YOUR
19      CONCERN, YOUR HONOR, AND IT IS.  WE INITIALLY
20      IDENTIFIED MORE WITNESSES THAT APPEARED TO FALL
21      WITHIN THE APEX CATEGORY, AND WE HAVE SINCE BEEN
22      DROPPING OUR APEX OBJECTIONS TO AS MANY OF THESE
23      PEOPLE AS WE CAN.
24                    THE COURT:  WHAT IS YOUR VIEW OF WHAT AN
25      APEX IS?  I'M CURIOUS.
```

17

1              MS. KASSABIAN:  WELL, YOUR HONOR, UNDER

2      THE CASE LAW APEX MOTIONS HAVE BEEN GRANTED FOR

3      VICE PRESIDENT TITLE AND HIGHER.  I DON'T THINK THE

4      TITLE IS ANY SORT OF A MAGIC --

5              THE COURT:  THAT WOULD ENCOMPASS,

6      PERHAPS, DOZENS AND DOZENS AND HUNDREDS OF PEOPLE

7      AT SAMSUNG, WOULDN'T IT?

8              MS. KASSABIAN:  ABSOLUTELY.  YOUR HONOR,

9      THE COMPANY HAS 190,000 EMPLOYEES.  WE DID NOT

10     CONTROL WHO APPLE CHOSE TO NOTICE, BUT TRUTH BE

11     TOLD, THEY HAD NOTICED -- ABOUT ONE IN FIVE OF

12     THEIR DEPOSITION NOTICES HAVE BEEN DIRECTED TO

13     VARIOUS SENIOR LEVEL PERSONNEL.  THEY ARE DEPOSING

14     MANY VP'S AND THEY ARE DEPOSING EVP'S AND SVP'S AS

15     WELL.  WE ARE NOT OBJECTING TO EVERY SINGLE

16     DEPOSITION NOTICE THAT WENT TO A VP OR HIGHER.

17             WHAT WE ARE OBJECTING TO ARE NOTICES

18     GOING TO VERY, VERY SENIOR PERSONNEL WHERE THERE IS

19     LITTLE OR NO CONNECTION BETWEEN THAT PERSON AND

20     THIS CASE.

21             AND, YOUR HONOR, I THINK WHEN WE OPPOSED

22     THIS MOTION, I THINK YOU'LL SEE THAT IN TRUE FORM.

23     WE DON'T HAVE THOSE OPPOSITION PAPERS TOGETHER

24     RIGHT NOW TO PRESENT THEM TO YOU ORALLY, BUT WE'RE

25     TALKING ABOUT EXECUTIVES WITH HUNDREDS AND TENS OF

1    THOUSANDS OF EMPLOYEES BELOW THEM WHO ARE FAR MORE
2    SUITABLE DEPOSITION CANDIDATES.
3            THE COURT:  I'M CURIOUS, AFTER APPLE
4    REQUESTED A MEET AND CONFER AMONG LEAD COUNSEL ON
5    THIS ISSUE, HOW LONG -- HOW MANY DAYS DID IT TAKE
6    MR. VERHOEVEN TO MAKE HIMSELF AVAILABLE?
7            MS. KASSABIAN:  THAT -- I BELIEVE THAT
8    THEIR FEBRUARY 9TH LETTER MADE THAT REQUEST, AND WE
9    ALL GOT TOGETHER ON FEBRUARY 14TH.
10           THE COURT:  SO FEBRUARY 9TH, WAS THE
11    FIRST TIME THAT COUNSEL REQUESTED A LEAD COUNSEL
12    MEET AND CONFER ON THESE 14?
13           MS. KASSABIAN:  THAT'S MY RECOLLECTION,
14    BUT I WOULD HAVE TO CHECK ALL OF THE CORRESPONDENCE
15    TO CONFIRM THAT.
16           THE COURT:  ALL RIGHT.  MR. MCELHINNY, DO
17    YOU WISH TO RESPOND TO ANY OF THESE POINTS?
18           MR. MCELHINNY:  JUST BRIEFLY TWO THINGS.
19    THE MOST IMPORTANT, YOUR HONOR, I APPRECIATE YOU
20    ASKING ABOUT A REPRESENTATION ABOUT MAKING
21    WITNESSES AVAILABLE.
22           THE REPRESENTATION THAT WOULD BE MOST
23    HELPFUL TO US WOULD BE A REPRESENTATION THAT THEY
24    WON'T RELY ON THE POST-DISCOVERY, DISCOVERY TO MOVE
25    FOR CONTINUATIONS THE OTHER DATES IN THE TRIAL.

19

1           BUT ON THE MERITS OF THIS, IN THE WAY

2    THAT SAMSUNG WAS RESPONDING WAS THAT THEY WERE

3    GIVING US ROLLING DATES FOR DEPOSITIONS.

4           AND WHEN WE SAID GIVE US ALL OF THE

5    DATES, THEY SAID WE'RE GOING TO GIVE THEM TO YOU ON

6    A ROLLING BASIS.  THERE WILL BE OBJECTIONS LATER

7    ON.

8           WE HAD OUR FIRST MEET AND CONFER ON THIS

9    AND AGREED TO A DATE BY WHICH ALL OF THE OBJECTIONS

10   WOULD BE MADE CLEAR.  WE GOT THAT ON FEBRUARY 3RD.

11          MR. VERHOEVEN AND I -- MR. VERHOEVEN HAS

12   BEEN AVAILABLE.  SO WE MET AND CONFERRED SINCE

13   FEBRUARY 3RD, TWICE.  ACTUALLY MET AND CONFERRED

14   THREE TIMES IN PERSON, BUT THIS HAS BEEN ON THE

15   AGENDA TWICE.

16          AT THE FIRST MEETING WE SAID THAT WE WILL

17   GIVE YOU THE 13 PAGES.  THE REASON WE'RE DEPOSING

18   THESE PEOPLE IS BECAUSE THE DECISIONS TO MAKE THESE

19   COPIES OF APPLE WERE MADE AT THIS LEVEL.

20          WE HAVE WITNESS TESTIMONY THAT SAYS THAT

21   THIS PERSON MADE THE DECISION.  WE HAVE DOCUMENTS

22   FROM THEM.  WE LAID IT ALL OUT IN THE 13-PAGE

23   DOCUMENT SO THAT WHEN WE MET ON THE 14TH THEY COULD

24   MAKE A GO OR NO-GO DECISION.

25          THEY JUST TOLD YOU, I JUST HEARD

```
 1      MS. MAROULIS, THAT THEY'RE FILING THEIR

 2      COUNTER-MOTION OR PROTECTIVE ORDER MOTION ON

 3      MONDAY.  SO THEY HAVE ALL OF THE FACTS.  THEY HAVE

 4      IT ALL LAID OUT.  THEY'RE READY TO GO.

 5              THE REAL ISSUE IS WHETHER OR NOT WE MET

 6      WHAT I KNEW WAS GOING TO BE A VERY, VERY HIGH

 7      BURDEN ON YOUR PART ON THE WILLINGNESS TO HEAR THIS

 8      MOTION ON AN EXPEDITED BASIS, AND WE THOUGHT IN

 9      GOOD FAITH THAT WE HAD A VERY STRONG ARGUMENT TO

10      MAKE, AND WE HOPED THAT YOUR HONOR WOULD AGREE WITH

11      THAT.

12              THE COURT:  LET ME ASK YOU ALL, I'M

13      LOOKING AT MY DOCKET RIGHT NOW AND I SEE ANY NUMBER

14      OF MOTIONS ON TOP OF THE MANY MOTIONS THAT YOU

15      ALREADY FILED REQUESTING RELIEF FROM THIS COURT ON

16      DISCOVERY MATTERS.

17              I SEE, OF COURSE, APPLE'S MOTION TO

18      COMPEL 14 ADDITIONAL DEPOSITIONS.

19              I ALSO SEE MOTIONS THAT HAVE BEEN FILED

20      BY APPLE FOR SANCTIONS AND FEES AND COSTS AND SO

21      FORTH.

22              SAMSUNG FOR ITS PART HAS MOTIONS ON MY

23      DOCKET TO COMPEL, RESPONSES, AND EXPERT ACCESS TO

24      INFORMATION PRODUCED UNDER THE PROTECTIVE ORDER,

25      AND I SEE AN APPLE MOTION TO COMPEL TIMELY
```

21

1    PRODUCTION TO FOREIGN LANGUAGE DOCUMENTS.

2              DOESN'T THIS LAUNDRY LIST OF REQUEST AND

3    NEED ON BOTH SIDES SUGGEST THAT THERE IS SOME HORSE

4    TRADING LEFT TO BE DONE HERE?

5              I MEAN, I DON'T UNDERSTAND WHY.  YOU ALL

6    HAVE NEEDS, YOU ALL HAVE ISSUES, MATERIALS THAT YOU

7    BELIEVE ARE ESSENTIAL TO YOUR CASE BUT NEITHER ONE

8    OF YOU IS GOING TO GET EVERYTHING YOU WANT.

9              SO, FOR EXAMPLE, HAVE YOU TALKED ABOUT

10   TRADING RESPONSES TO SAMSUNG'S RFA'S IN EXCHANGE

11   FOR A CERTAIN NUMBER OF APEX DEPOSITIONS?  DID THAT

12   SUBJECT COME UP IN THE MEETING BETWEEN

13   MR. MCELHINNY AND MR. VERHOEVEN?

14             MR. MCELHINNY:  THIS IS MCELHINNY, YOUR

15   HONOR.  WE HAVE RESOLVED ISSUES.

16             THE COURT:  WHAT IS AN EXAMPLE OF AN

17   ISSUE THAT YOU RESOLVED IN THE LAST MEET AND

18   CONFER?  I'M CURIOUS?

19             MR. MCELHINNY:  TWO THAT I CAN THINK OF.

20   WE ARE IN THE PROCESS -- WE HAVE SET UP A PROCESS,

21   WE'RE ATTEMPTING TO RESOLVE THE OBJECTIONS TO

22   EXPERTS.

23             THE COURT:  THAT DOESN'T SOUND LIKE A

24   RESOLUTION.  THAT SOUNDS LIKE YOU'RE IN THE MIDDLE

25   OF TALKING.

1          MR. MCELHINNY:  NO, NO.  IT TURNED OUT TO

2     BE -- I THINK IT'S GOING TO BE A RESOLUTION, YOUR

3     HONOR.

4          I MEAN, IT GOT VERY CLOSE IN THE MEET AND

5     CONFER, AND, INDEED, IT COULD BE CARRIED OUT IN THE

6     SUBSEQUENT PHONE CONVERSATION WHICH HAPPENED

7     YESTERDAY WAITING ON GETTING APPROVAL.

8          WE ALSO RESOLVED -- IN THE MEET AND

9     CONFER WHEN WE MET ON THE 14TH, WE HAD 15 ITEMS ON

10    OUR LIST.  SAMSUNG HAD CLOSE TO, I THINK, 25 OR 30

11    ON THEIR LIST.

12         AND I BELIEVE FROM MY LIST, I THINK WE

13    RESOLVED A THIRD OF THEM.

14         BUT WHAT I REALLY WANTED TO SAY IS THAT

15    WHAT IS MISSING IN YOUR ANALYSIS.

16         THE COURT:  TELL ME WHAT I'M MISSING IN

17    MY ANALYSIS.

18         MR. MCELHINNY:  WHAT IS MISSING IN YOUR

19    ANALYSIS IS THE CONCEPT THAT BOTH PARTIES HAVE AN

20    EQUAL INTEREST IN RESOLVING THESE THINGS ACCORDING

21    TO THE DATES THAT ARE CURRENTLY SET.

22         AND SAMSUNG DOES NOT HAVE THAT INTEREST?

23         THE COURT:  AND ON WHAT BASIS DO YOU MAKE

24    THAT CLAIM?

25         MR. MCELHINNY:  THIRTY YEARS OF

23

1      EXPERIENCE AND WATCHING THE LETTERS AND MEET AND

2      CONFER AND THE THINGS THAT THEY HAVE SAID TO ME IN

3      THE MEET AND CONFER PROCESS AND UNDERSTANDING THE

4      IMPORTANCE IN THIS CASE OF GETTING THE TRIAL DATE

5      MOVED BY SAMSUNG.

6            THE COURT:  ALL RIGHT.  MS. KASSABIAN,

7      DID YOU HEAR MR. VERHOEVEN MAKE ANY PROPOSALS TO

8      TRADE, FOR EXAMPLE, ACCESS FOR MR. LUCENDI FOR A

9      COUPLE OF EXTRA APEX DEPOSITIONS?  WAS THAT KIND OF

10     PROPOSAL MADE DURING THIS DISCUSSION THAT TOOK

11     PLACE?

12            MS. KASSABIAN:  YOUR HONOR, WE WOULD

13     WELCOME AND EMBRACE THE NOTION OF HORSE TRADING.

14     WE HAVE NOT GOTTEN ANYWHERE ON THAT FRONT.

15            THERE HAVE BEEN -- FOR INSTANCE, BOTH

16     SIDES HAVE MADE OBJECTIONS TO EACH OTHER'S EXPERTS

17     ON VARIOUS GROUNDS, THAT'S AN AREA OF HORSE

18     TRADING.  THERE'S APEX DEPOSITIONS ON BOTH SIDES.

19     THAT IS AN AREA.  WE HAVE RAISED THAT ISSUE.

20            I KNOW SPECIFICALLY ON APEX ISSUES THAT

21     WAS RAISED BY ME, I BELIEVE, ON OUR FEBRUARY 14TH

22     MEETING I HAD ASKED IS APPLE GOING TO RESPOND ON

23     THE TIM COOK DEPOSITION OR SOME OF THEIR OTHER

24     SENIOR FOLKS?

25            AND I WAS TOLD THEY ARE STILL CONSIDERING

24

1      THAT.

2              WE WOULD LOVE TO TALK ABOUT HORSE

3      TRADING, AND I THINK THAT'S THE RIGHT MOVE, YOUR

4      HONOR, AND IF APPLE IS WILLING TO DISCUSS THAT MORE

5      SERIOUSLY, WE ABSOLUTELY ARE AS WELL.

6              THE COURT:  LET ME ASK YOU,

7      MS. KASSABIAN, WOULD YOU BE WILLING TO TRADE

8      RESPONSES TO YOUR RFA'S FOR, SAY, SIX OF THESE

9      PROPOSED DEPOSITIONS?  WILL YOU MAKE THAT TRADE

10     RIGHT NOW?

11             MS. KASSABIAN:  WELL, YOUR HONOR, I DID

12     NOT PERSONALLY HANDLE THE RFA ISSUE.  I WOULD NEED

13     TO CONSULT WITH MY TEAM TO FIND OUT, YOU KNOW, HOW

14     SIGNIFICANT IS THAT ISSUE.  I DON'T THINK THAT I

15     CAN MAKE THAT STATEMENT RIGHT NOW.

16             THE COURT:  WOULD YOU BE WILLING TO

17     TRADE, SAY, ACCESS FOR MR. LUCENDI (PHONETIC) IN

18     EXCHANGE FOR A CERTAIN NUMBER OF APEX DEPOS?  DID

19     YOU WORK ON THAT ISSUE?

20             MS. KASSABIAN:  WELL, ALSO LUCENDI I'M

21     NOT THE LEAD PERSON AT MY FIRM FOR WORKING ON THAT.

22     SO I WOULD ASK IF I COULD CONSULT WITH MY TEAM

23     BEFORE WE COULD TALK ABOUT THAT.

24             I WOULD SAY THAT IT'S PROBABLY BETTER TO

25     MAKE HORSE TRADES OFF APPLES AND APPLES AND

25

1    EXPERTS, YOU KNOW, IN ONE COLUMN, AND DEPOSITIONS

2    IN ANOTHER COLUMN, WRITTEN DISCOVERY RESPONSES IN

3    ANOTHER COLUMN.

4            AND I'D BE HAPPY TO, YOU KNOW, SET UP A

5    MEETING WHERE THE PARTIES CAN SPECIFICALLY TALK

6    ABOUT THAT, BUT, YOU KNOW, OFF THE TOP OF MY HEAD

7    OFF, THE TOP OF THIS CALL, I DON'T THINK THAT I

8    CAN, YOU KNOW, AGREE TO THAT WITHOUT CONFERRING

9    WITH MY TEAM.

10            THE COURT:  YOU MAY BE RIGHT ABOUT THAT,

11   BUT YOU'VE GOT ME ON THE PHONE NOW.

12            YOU KNOW, MAY BE I'M JUST BEING WISHFUL

13   ABOUT ALL OF THIS.  IT'S JUST, I DON'T HAVE 30

14   YEARS OF EXPERIENCE, I DON'T CLAIM TO HAVE THAT,

15   BUT I HAVE A FEW AND IN MY MORE LIMITED EXPERIENCE,

16   IT SEEMS TO ME THAT LAWYERS CAN WORK OUT SOME DEALS

17   AND OCCASIONALLY WHERE THERE'S JUST THAT FINAL

18   IMPASSE YOU COME TO THE COURT.

19            BUT HERE IN THIS CASE THE DEFAULT SEEMS

20   TO BE, WELL, IF YOU'RE NOT WILLING TO SURRENDER,

21   I'M GOING TO GO TAKE IT TO JUDGE KOH OR JUDGE

22   GREWAL.  I DON'T UNDERSTAND THAT AT ALL.  I DON'T

23   UNDERSTAND IT AT ALL.

24            MS. KASSABIAN:  YOUR HONOR, WE WOULD BE

25   HAPPY TO MAKE OURSELVES AVAILABLE IN A POSSIBLE

26

```
 1      HORSE TRADING MEET AND CONFER SESSION WITH APPLE
 2      RIGHT AWAY.  I THINK THAT WOULD BE A GREAT IDEA.
 3              THE COURT:  I'M ON THE PHONE RIGHT NOW.
 4      CAN WE DO IT WHILE I'M ON THE PHONE?
 5              MS. KASSABIAN:  WELL, I JUST DON'T HAVE
 6      THE AUTHORITY WITHOUT SPEAKING TO MY PARTNERS WHO
 7      ARE IN CHARGE OF THOSE ISSUES, I DON'T HAVE THE
 8      AUTHORITY, OR THE KNOWLEDGE, QUITE FRANKLY, TO KNOW
 9      WHAT WE CAN LIVE WITH AND WHAT WE CAN'T.  I
10      APOLOGIZE FOR THAT.
11              THE COURT:  ALL RIGHT.  MR. MCELHINNY,
12      ANYTHING FURTHER YOU WISH TO SAY?
13              MR. MCELHINNY:  NO.  THANK YOU, YOUR
14      HONOR, FOR HEARING US OUT.
15              THE COURT:  MS. KASSABIAN, MS. MAROULIS,
16      ANYTHING FURTHER FROM YOU?
17              MS. MAROULIS:  NO, YOUR HONOR.  THANK
18      YOU.
19              THE COURT:  ALL RIGHT.  YOU'LL HAVE AN
20      ORDER FROM ME SHORTLY ON THE MOTION FOR LEAVE TO
21      FILE THE EXPEDITED RELIEF REQUEST.  THANK YOU.
22              MR. MCELHINNY:  THANK YOU, YOUR HONOR.
23              THE COURT:  THE MATTER IS SUBMITTED.
24      HAVE A GOOD DAY.
25              MS. KASSABIAN:  YOU, TOO.  BYE.
```

1           (WHEREUPON, THE PROCEEDINGS IN THIS

2    MATTER WERE CONCLUDED.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

1

2

3

4                    <u>CERTIFICATE OF REPORTER</u>

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23                    /S/

                      _____
24                    IRENE RODRIGUEZ, CSR, CRR
                      CERTIFICATE NUMBER 8074
25
                      DATED:  MARCH 7, 2012

                                                        29