Exhibit N

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415 268 7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D C

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

March 12, 2012

Writer's Direct Contact
415.268.6615
JasonBartlett@mofo.com

*By Email* (dianehutnyan@quinnemanuel.com)

Diane Hutnyan
Quinn Emanuel
865 South Figueroa St., 10th Floor
Los Angeles, CA 90017-2543

Re:   *Apple v. Samsung*, Case No. 11-cv-1846 LHK (N.D. Cal.)

Dear Diane:

I write to respond to your February 13, February 25, February 28, and March 1 letters.

Discovery in this case has been ongoing for ten months.  The Court has adjudicated fourteen motions and cross motions to compel.  Apple has produced millions of pages of documents in this and related actions from more than 150 different custodians.  Apple has fully disclosed the nature and scope of its productions in countless meet and confer sessions (including multiple lengthy lead counsel sessions), in three sets of detailed transparency disclosures, and in a six hour 30(b)(6) deposition.  Samsung has taken over eighty depositions (including depositions of over sixty Apple witnesses, many of whom were deposed more than once) in the Northern District of California action alone.  The discovery period ended Thursday.

Recent correspondence makes plain that Samsung's primary mission is to derail the orderly conclusion of discovery.  Samsung is now issuing shotgun-blast discovery demands.  Its letters appear to have been drafted without regard to Apple's actual document production, Samsung's document requests, or ten month history of discovery disputes and negotiations that have taken place.

Apple responds below to each of the issues Samsung raises in its letters below.  Many of these documents could—and should—have been found by Samsung in Apple's production. Samsung has even used many documents falling within the categories that it claims Apple has not produced in recent depositions of Apple witnesses.

sf-3115447

MORRISON | FOERSTER

Diane Hutnyan
March 12, 2012
**Samsung's Letter of February 13**

| Samsung's Demand | Apple's Response |
|---|---|
| Confirm that Apple has complied with prior court orders by producing fourteen categories of documents and things. | Apple responded in detail in a letter of February 23. |
| All documents concerning the iPhone design having sharp edges or injuring a user. | Apple has already produced documents relating to the iPhone designs at issue as set forth in Apple's transparency disclosures.<br><br>Documents relating to iPhone sharp edges and user injuries are not responsive to any Samsung discovery request (your letter identifies none).<br><br>In an effort to avoid unnecessary disputes, Apple has searched documents of its Industrial Design and Product Design custodians documents containing the terms *iphone* and *sharp* as well as *sharp* within 20 of *injur\** or *wound*. |
| All antenna test reports and issues relating to antenna malfunctions, including all documents in the possession of the "antenna team." | Apple has already produced documents relating to the iPhone designs at issue as set forth in Apple's transparency disclosures.<br><br>Documents relating to antenna function are not responsive to any Samsung discovery request (your letter identifies none).<br><br>In an effort to avoid unnecessary disputes, Apple has searched documents of its Industrial Design and Product Design custodians' documents containing the term "antenna" in the file name or path where the text contains the term "antenna" in a ten word proximity to the words "performance" or "test". Apple excluded from this search documents falling outside the range of years in which any released iPhone was under development. Apple excluded from this search documents containing search terms associated with unreleased Apple products. |
| All documents relating to the | Apple has already produced documents relating to the |

**MORRISON | FOERSTER**

Diane Hutnyan
March 12, 2012

| Samsung's Demand | Apple's Response |
|---|---|
| "design of the bezel of the iPhone," including "bezel test reports" and "bezel strength studies." | iPhone designs at issue as set forth in Apple's transparency disclosures. "Bezel," without further substantive limitation, was a search term in Apple's Industrial Design production.<br><br>Documents relating to bezel test reports and "bezel strength studies" are not responsive to any Samsung discovery request (your letter identifies none).<br><br>In an effort to avoid unnecessary disputes, Apple has searched documents of its Industrial Design and Product Design custodians' documents containing the term "bezel" and "strength" in a ten word proximity. Apple excluded from this search documents falling outside the range of years in which any released iPhone was under development. Apple excluded from this search documents containing search terms associated with unreleased Apple products. |
| All documents and things relating to competitive teardowns. | Apple has already conducted an extensive search for documents relating to Samsung in the possession of nearly *ninety* Apple custodians. Apple's production of Samsung-related documents is discussed in more detail in Apple's letter of February 23. Across the three pending cases to which cross-use applies, Apple's production of documents containing the word "Samsung" exceeds *two million pages*.<br><br>Apple's extensive Samsung-related production includes ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████<br><br>████████████████████████████████ |

sf-3115447

**MORRISON | FOERSTER**

Diane Hutnyan
March 12, 2012

| Samsung's Demand | Apple's Response |
|---|---|
| | ████████████████ |
| All documents relating to the design of the iPad's audio jack. | Your reference to documents relating to iPad's audio jack appears to arise ████████████████ in which Mr. Ive discussed a 2 millimeter adjustment. Apple disagrees that such documents are responsive, but has searched Industrial Design and Product Design collections for documents containing references to iPad and *jack* near 15 of *margin*. |
| All documents sourced to or received by each design inventor, including Steve Jobs, or in the Human Interface server relating to the external and UI design of the iPad, iPhone, or iPod touch. | Apple has produced extensive documents to and from all of its design inventors and from its Human Interface server relating to the asserted design patents, as disclosed in its transparency disclosures. Apple is reviewing its collections for "exceptions" such as Photoshop, Illustrator, and other native data, and will produce if any responsive material is located. |
| Deposition transcripts for each design inventor that have been taken in the ITC. | Samsung already has the deposition transcripts for each of Apple's inventors of the design patents-in-suit taken in the ITC. Samsung has even filed excerpts from those transcripts as exhibits in this action. Apple is considering Samsung's proposal to amend the Protective Order. |
| All documentation relating to source code for the accused devices, purportedly responsive to RFP No. 16 (all documents regarding software for the APPLE ACCUSED PRODUCTS that transmits, images, messages, and addresses by email or multimedia messages). | Apple has conducted a reasonable search and is unaware of any documents relating to the source code for the Apple Accused Products that transmits images, messages, and addresses by email or multimedia messages. Apple has made the relevant source code available. |

sf-3115447

MORRISON | FOERSTER

Diane Hutnyan
March 12, 2012
**Samsung's Letter of February 25**

**1. Documents Allegedly Indentified by Freddy Anzures**

Freddy Anzures was deposed in mid-October. Samsung waited four months until the eve of the close of discovery to raise these alleged deficiencies. Apple cannot and will not conduct new searches and production simply to appease Samsung's overbroad, last-minute requests for burdensome productions of irrelevant documents. Doing so would be completely incompatible with the orderly conclusion of the discovery period.

In addition, Samsung's latest requests are not responsive to its discovery requests. Your letter cites two requests. Request 92 requests for documents relating to "performance, advantages, disadvantages, problems, features . . . benefits, or improvements of any alleged invention of the APPLE IP." Request 193 requests documents relating to the "functionality" of elements in the asserted design patents, trade dress and trademarks.

With respect to Request 92, Apple has searched for documents relating to the asserted Apple intellectual property, as disclosed in Apple's transparency disclosures. Most of Apple's searches on this topic were disclosed in October and November. Samsung requested that Apple conduct follow-up searches, and in most cases Apple complied. The parties' dispute regarding design-related search terms was the subject of motion practice and orders. It is far too late for Samsung to conjure entirely new categories of demands for documents relating to the asserted intellectual property.

With respect Request 193, Samsung's demand for all documents relating to such diverse topics as "using empty space to distinguish the dock," "early Apple touchscreen device studies," and the "Dashboard application" on Apple's Mac OS X computer operating system (which runs on Apple computers, not phones and tablets) simply proves the overbreadth of the request as construed by Samsung. Rule 34 requires that document requests identify "each item" or "category of items" with "reasonable particularity."

Samsung also continues to ignore the law of the case. Simply asserting that an element of a product has a "function" within the common meaning of that word does not make that element "functional" within the meaning of trade dress and design patent law. The Court already rejected Samsung's misguided view of the functionality doctrine in its order on Apple's motion for preliminary injunction [Dkt. No. 452], citing a Federal Circuit opinion that held that the relevant inquiry with respect to a design patent is *not* "the utility of each of the various elements," but rather whether the design as a whole is *dictated* by function. The Court ruled that design elements such as rounded corners, speaker shapes, screen size and placement, the presence of buttons, and the concept of minimalism itself were not "functional."

Functionality, the Court held, could dictate that the "smartphone is small enough to be handheld," that the screen be "relatively large" and "encompass a large portion of the front

sf-3115447

MORRISON | FOERSTER

Diane Hutnyan
March 12, 2012

face," and that the "speaker" be placed in the "upper portion of the front face" to allow the slot to line up with the user's ear.  *Id.*  These may be examples of form "dictated" by function.  In responding to Samsung's Request 193, Apple is guided by, and will continue to be guided by, the Court's order.

Responding specifically to Samsung's requests relating to documents identified by Mr. Anzures:

| Samsung's Demand | Apple's Response |
|---|---|
| Documents relating to the Dashboard application in Mac OS X. | Documents relating to the "Dashboard" application in Apple's Mac OS X computer operating system are not responsive to any Samsung request, nor are they relevant.  The "Dashboard" is a program that allows users to install and run small applications (called "widgets") from a special screen on Apple desktop and laptop computers.  This suit does not implicate Apple computers or computer software, let alone "widgets."<br><br>Samsung's request is also extremely untimely, particularly considering that the parties already litigated the issue of production of documents relating to Apple OS X "Tiger" icons. |
| Early Apple touchscreen device studies. | Documents relating to "touchscreen device studies" are not responsive to requests 92 or 193.<br><br>Apple has already searched for and produced documents relating to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ an early project involving multitouch touchscreen technology. |
| Documents debating a list vs. icon approach to the homescreen/springboard | Documents relating to the list vs. icon approach to the homescreen/springboard are not responsive to requests 92 or 193.<br><br>Apple has already produced responsive documents relating to the relevant projects which led to the claimed Graphical User Interface design. |
| Documents discussing viable icon sizes and how icon size needs to match finger size | Documents discussing how icon size needs to match finger size are not responsive to requests 92 or 193.  Moreover, contrary to your assertion, Apple does not see *any* testimony by Mr. Anzures that this category of |

sf-3115447

MORRISON | FOERSTER

Diane Hutnyan
March 12, 2012

| **Samsung's Demand** | **Apple's Response** |
|---|---|
| | documents exists.<br><br>Apple has already produced responsive documents relating to the relevant projects which led to the claimed Graphical User Interface design. |
| Documents discussing reasons for grid layout for icons | Documents discussing reasons for a grid layout for icons are not responsive to requests 92 or 193. Moreover, contrary to your assertion, Apple does not see *any* testimony by Mr. Anzures that this category of documents exist.<br><br>Apple has already produced responsive documents relating to the relevant projects which led to the claimed Graphical User Interface design. |
| Documents discussing familiarity of particular Apple iOS icons | The implicit suggestion in your request that "familiar" equals "functional" is incorrect. Moreover, as with several categories above, contrary to your assertion, Apple sees no testimony by Mr. Anzures that this category of documents exists. |
| Documents discussing dock function, in particular discussions of using empty space to distinguish dock and how dock icons could be selected by thumb when device is held in one hand | Again, Apple sees no testimony by Mr. Anzures that this category of documents exists. In fact, in response to questioning regarding empty space, Mr. Anzures replied, "We didn't have a conversation about that particular aspect of the design."<br><br>The only discussion of the thumb arises from the questioner—not Mr. Anzures—who asks whether the dock is in a "logical position" because it can be reached by the thumb. ■■■■■■ |

sf-3115447

MORRISON | FOERSTER

Diane Hutnyan
March 12, 2012

**2. Documents Allegedly Identified by Douglas Satzger**

You request two categories of documents allegedly identified in Mr. Satzger's deposition in early November. You offer no explanation as to why you waited three and a half months to request these documents.

Apple will not produce "standard material reports" or materials specifications. Materials are not at issue in this litigation, and this category of documents is not relevant or responsive to any request. Apple will produce an example of a color control specification not withstanding its irrelevance and non-responsiveness. Please review it and reconsider your request.

Samsung also requests documents relating to the "black mask" covering the LCD circuitry outside the area of the display and documents relating to the "function" of the mask. Such documents are not responsive to Samsung's request. A mask is not "functional," as is made clear by the Court's Order and explained above, and Apple is aware of no testimony that the mask serves any non-cosmetic purpose.

**3. Documents Allegedly Identified by Richard Dinh**

You request "surface files" relating to the iPhone and iPad generated by the Industrial Design team CAD group and sent to the Product Design team. Over several months of discovery, Apple already produced all industrial design CAD, all sketches, all industrial design models, and even MCOs relating to the external design of the products at issue, including early iPhone designs. As the parties have previously discussed at great length, that is already *more* than sufficient to satisfy any reasonable demand for documents pertaining to the designs at issue. Nevertheless, in an attempt to avoid unnecessary disputes, Apple produced on February 28 surface files exchanged between the Product Design and Industrial Design group for Samsung's inspection. (See 2-28-2012 Bartlett Letter to Hutnyan producing files for inspection).

You next request eleven separate categories of documents which, like your request for documents allegedly identified by Freddy Anzures, serve only to demonstrate the overbreadth of Samsung's requests. A single request for documents relating to "functionality" is not a "reasonabl[y] particular[]" request within the meaning of Rule 34 for a hodgepodge of documents as diverse as:

- strategies for fitting components into products
- antenna tests
- build test reports
- repeated drop tests
- storage tests
- heat soak tests

sf-3115447

MORRISON | FOERSTER

Diane Hutnyan
March 12, 2012

- drop tests
- temperature tests
- dust tests
- acoustic tests
- post-drop functionality tests

Such extensive testing documentation is completely irrelevant. Does Samsung seriously contend that the Apple iPhone design is *dictated* by the need to resist heat and dust, send and receive radio signals, emit sound, and withstand drops? And if that *is* Samsung's contention, why did Samsung fail to request such documents seven months ago? Apple cannot undertake the burden to respond to these broad requests at this, the close of the discovery period.

Samsung next requests documents relating to eleven alleged "problems with the iPhone 4 and 4S" including problems with "proximity sensors," "ambient light sensors," the "gasket on the home button," to name a few. There is no Apple IP at issue in this case relating to proximity sensors, ambient light sensors, or the home button gasket. Apple cannot comprehend what relevance such documents could have or what requests they would respond to.

Samsung's list concludes with fifteen *additional* categories of documents alleged to have been identified by Mr. Dinh (though Samsung fails to cite any relevant transcript excerpts). Responding to each:

| Samsung's Demand | Apple's Response |
|---|---|
| Surface files relating to iPhone and iPad | As discussed above, Apple produced such files for Samsung's inspection on February 28. (See 2/28/2012 Bartlett Letter to Hutnyan.) |
| Cosmetic models, button models, and ID models. | As discussed in extensively in correspondence, lead trial counsel meet and confer sessions, briefing, and court orders, Apple produced for inspection *all* of its ID models relating to iPhone, iPad, and iPod touch. Apple's production included 1,230 models, 263 partial models, and 537 bags of miscellaneous parts and small samples. Apple's ID models have been kept available for Samsung's inspection for *seven weeks* at great expense to Apple, and are still available in escrow to this day. |
| [redacted] | [redacted] |

sf-3115447

**MORRISON | FOERSTER**

Diane Hutnyan
March 12, 2012

| Samsung's Demand | Apple's Response |
|---|---|
| ███████████ | ███████████ |
| Documents related to the "zero-gap" | It is astonishing that you are asking for documents relating to the "zero-gap" based on Mr. Dinh's testimony when Mr. Dinh testified explicitly that he could think of *no* functional reason for the zero-gap. He testified, "I wouldn't want a zero-gap," "I can't think of an engineering or manufacturing advantage," and that the only reason he could think of would be "to be beautiful or to be good looking."<br><br>As with many of your requests above, despite your assertion that Mr. Dinh testified to the existence of this "categor[y] of information," Mr. Dinh testified to no such thing. |
| Additional drop testing results | Apple's response to Samsung's requests for various "testing reports" is set out above. |
| ███████████ | ███████████ |
| Costing analyses relating to components and labor | As you know, Apple has produced cost-related documents including costed Bills of Material. The scope of Apple's production of cost-related information has been previously litigated and resolved. |
| Documents discussing plan to have single horizontal slot | These documents are not responsive to Samsung's requests, and Mr. Dinh did not testify to their existence. |

sf-3115447

**MORRISON | FOERSTER**

Diane Hutnyan
March 12, 2012

| Samsung's Demand | Apple's Response |
|---|---|
| aperture for sensors and receivers | |
| Documents discussing mesh and acoustic transparency | Mesh is not an element of Apple's asserted design patents or trade dress.  Moreover, the assertion that these documents relate to functionality is misguided.  Samsung cannot credibly assert that the iPhone design is *dictated* by acoustic transparency concerns. |
| High level charts for executives discussing trade-offs of different design options | Apple performed searches relating to the design of the products at issue as disclosed in its transparency disclosures.  As part of that production, Apple searched for and produced executive reviews. |
| Results of acoustic simulations | This request is exceedingly vague and overbroad.  Once again, Samsung cannot credibly assert that the iPhone trade dress is dictated by acoustics. |
| [redacted] | [redacted] |
| Studies relating to curved glass | This request is not responsive to Samsung's requests, and Mr. Dinh did not testify that such documents exist. |

### Samsung's Letter of February 28

Like the letters discussed above, Samsung's letter regarding the depositions of Jonathan Ive and Scott Forstall relies on an overbroad and legally incorrect reading of "functionality" in an attempt to justify a massive fishing expedition late in the case.

| Samsung's Demand | Apple's Response |
|---|---|
| Documents pertaining to stress tests, drop testing, bezel strength, still images and video footage from the Reliability Group | Apple's response to Samsung's requests for various "testing reports" is set out above. |
| Surface studies | [redacted] |

**MORRISON | FOERSTER**

Diane Hutnyan
March 12, 2012

| | Apple has produced ID CAD and all ID models, including partial models. Samsung's demand for additional documents relating to "surface studies" is baseless and unduly burdensome. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
|---|---|
| "Description of revision" drawings, Pro/E, Unigraphics drawings of the iPhone and iPad, "Design of experiments" work, "final assembly, test and pack." | The documents requested in your letter are vague, overbroad, irrelevant, and nonresponsive to Samsung's requests. As explained in more detail above, Apple has made an extensive production including all ID CAD, all ID models, MCOs bearing directly on the external designs of the products at issue, surface files, and is reviewing "exceptions" such as Photoshop, Illustrator, and other native data, and will produce if any responsive material is located. Apple's production of "drawings" related to the products at issue is more than complete. |
| Specs for Apple devices provided to Apple by wireless carriers | Samsung cannot seriously contend that the design of Apple's phones is dictated by specs provided by *wireless carriers*. The multitude of alternative designs Apple has cited throughout this proceeding, operating on the same wireless carriers as Apple, disproves that baseless theory. This request has no relevance to Samsung's "functionality" defense and is nonresponsive to Samsung's requests. |

**Samsung's Letter of March 1**

Samsung's letter of March 1 seems to be a hastily prepared list of documents mentioned in the February 23 and 24 deposition of Greg Joswiak without regard to or understanding of Apple's document production. Samsung identifies thirteen categories of documents that Samsung says Apple does not "appear to have produced." Apple cannot understand how Samsung could have made such a claim in good faith if it had actually reviewed Apple's production.

| Samsung's Demand | Apple's Response |
|---|---|

sf-3115447

**MORRISON | FOERSTER**

Diane Hutnyan
March 12, 2012

| Samsung's Demand | Apple's Response |
|---|---|
| Documents related to Apple's market share in various sectors, including quarterly reports and documents prepared by third parties regarding Apple's market share. | Apple has made an extensive production of internal and third-party market, consumer, and market share studies. Apple essentially produced its entire server of third-party materials in this area as well as voluminous documents created internally. This totaled *thousands* of documents, including APLNDC-X0000313770-314368; APLNDC-X0000051955-69414; APLNDC-Y0000023661-Y0000029204; and APLNDC-Y0000029205-29227 and included documents from nearly *fifty* different independent market research firms.<br><br>It is frankly unbelievable that in the face of this production, you are asserting Apple has failed to produce documents prepared by third parties regarding Apple's market share, or that Samsung needs *more*. |
| Marketing presentations, product presentations and brain dumps | Apple has searched for documents relating to marketing of the products at issue as disclosed in Apple's transparency disclosures. Apple has produced many "brain dump" and "brain dump"-related documents, which Samsung can identify by searching Apple's production. For examples, see APLNDC0001921587 and APLNDC0001837450. The category "marketing presentations" is too vague and would cover far too many produced documents to list here, but documents that would fit this definition can be found throughout Apple's production from product marketing custodians, which Samsung can search itself. |
| Product briefs | Apple has produced all product briefs found after a reasonable search in accordance with Apple's transparency disclosures. See, e.g., APL-ITC796-0000174523 and 400744 as well as APLNDC0002007938, 2008237, 1922005, 1925874, 1897457, and 1960538. |
| [redacted] | [redacted] |

sf-3115447

**MORRISON | FOERSTER**

Diane Hutnyan
March 12, 2012

| Samsung's Demand | Apple's Response |
|---|---|
| | ███████████████████████████. |
| Documents relating to store displays and point of sale presence | Apple has produced many such documents, sourced to its MarCom Server, containing logical keywords such as "display," "channel," and "sign."  For example, see APLNDC0002630301, 2630303, 2630261, 2630253-2630256, 2630237-2630238, 2630233, 2630224, 2630221, 2630220, 2630205-2630206, 2630197-2630198, 2630194, 2630183, 2630165, 2630109, 2630081, 2630075, 2630060-2630062, and 2630030-2630031.  These documents are easily located in Apple's production. |
| Communications between Apple and third-party channel partners regarding market share and competitor performance | Apple's production of market share and market research studies, including information on the performance of competitors, is beyond extensive.  As detailed above, it includes *thousands* of studies across Apple's internal research department and nearly fifty outside vendors.  Samsung cannot possibly need more market share information.  Apple's *communications* with channel partners regarding market share and competitor performance are irrelevant. |
| Observations of Apple employees reviewing competitor products | Apple employees' informal evaluations of newly released competitive products, which Mr. Joswiak described as playing with, using, and looking at products (2-23-12 Joswiak Deposition 136:8-10) are irrelevant to this matter and not responsive to any Samsung requests.<br><br>Moreover, your claim that Mr. Joswiak testified to such a "categor[y] of documents" is directly contradicted by the transcript itself. ████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████ |
| ████████████████████████ | ████████████████████████████ |

sf-3115447

MORRISON | FOERSTER

Diane Hutnyan
March 12, 2012

| Samsung's Demand | Apple's Response |
|---|---|
| ██████████ | ██████████ |
| Trademark and icon guidelines provided to third-party application developers | Apple's iOS Human Interface Guidelines, including guidelines for using Apple's icons and for creating custom icons, as well as Apple's Trademark Guidelines are publicly available *and* many versions have been produced.  As just one example, see APLNDC0001359149, a document directed at third-party application developers with sections entitled "Using System-Provided Buttons and Icons" and "Creating Custom Icons and Images."  Samsung can easily find this document, and many other such documents, in Apple's production. |
| Documents, tools, and screenshots of the "portal" used by third-party application developers | Apple's third-party application developer "portal" is publicly available at developer.apple.com. |
| Weekly sales reports of product sales and spreadsheets containing sales and quarterly forecasts | We are addressing the production of financial data, which you have addressed in more detail separately, via separate letter.  In short, Apple has produced extensive financial documents.  You have provided no basis for a need for *weekly* numbers, nor for the claim that Samsung needs forecasts. |

This letter responds to each of Samsung's *88* separate document production–related complaints raised in the last three weeks.  We trust that your alleged concerns about Apple's production are now resolved.

sf-3115447

MORRISON | FOERSTER

Diane Hutnyan
March 12, 2012
Sincerely,

*/s/ Jason R. Bartlett*

Jason R. Bartlett

cc:     Peter Kolovos
        S. Calvin Walden

sf-3115447