# EXHIBIT 7

# WILMERHALE

February 28, 2012

**S. Calvin Walden**

+1 212 937 7215(t)
+1 212 230 8888(f)
calvin.walden@wilmerhale.com

**Via Electronic Mail**

Rachel Kassabian, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065

Re:   <u>Apple Inc. v. Samsung Electronics Co. Ltd. et al.</u>,
      Case No. 11-cv-01846-LHK (N.D. Cal.)

Dear Rachel:

I write in response to your letter dated February 16, 2012.  Apple disagrees with Samsung's characterization of its requests for production and believes Samsung's reliance upon the Court's January 27, 2012 Order is misplaced.

## Request No. 115

We appreciate your agreement to produce "documents sufficient to show royalty payments made to Samsung by each licensee of the patents-in-suit." However, Samsung's agreement is narrower than Judge Grewal's order, which requires Samsung to produce "licenses for patents not-in-suit but nevertheless declared essential to the standards at issue." The production of the licenses ordered by Judge Grewal is incomplete without production of the applicable royalty payments, and we ask that you confirm your agreement to produce documents sufficient to show those royalty payments.  In addition, please confirm that your agreement to produce "documents sufficient to show royalty payments made to Samsung by each licensee of the patents-in-suit." includes any portfolio license that includes one or more of the patents-in-suit.

## Request Nos. 131 and 160

We appreciate your proposal to produce "documents sufficient to show licensing policies applicable to UMTS-essential patents and/or the patents-in-suit that are not essential to any standard" as well as "documents sufficient to show which Samsung employees were involved in licensing the patents-in-suit."  Apple would like to confirm the scope of that offer.  Does "licensing policies applicable to UMTS-essential patents" include general policies that are applicable to all of Samsung's licensing?  Does it include policies that are applicable to all standards-essential licenses?  Apple seeks assurance that Samsung's offer is not limited to a policy, practice, custom, guideline, or procedure or a licensing program that by their terms apply *exclusively* to UMTS-essential patents but rather to *all* policies practices, customs, guidelines, or procedures and *all* licensing programs that would also cover a UMTS-essential patent (or patent-in-suit).  Please confirm the scope of this offer.

WILMERHALE

Rachel Kassabian, Esq.
February 28, 2012
Page 2


**Request Nos. 140 and 141**

Requests 140 and 141 are not broad requests for compensation information. Accordingly, your reference to the parties' general practice of not inquiring into private compensation matters is inapt. Instead, Apple is seeking specific information that goes to the core of Apple's defenses. The requests are narrowly tailored to "documents sufficient to show" and are limited to any specific compensation associated with patents that have been declared essential to an industry standard. If Samsung would like to redact the portions of such policies and documents that do not apply to compensation tied to standards-essentiality, Apple is amendable to such a compromise.

**Request Nos. 151 – 154; 185 – 187; 501 – 503**

While "technological nexus" may be the correct standard to apply when determining which patent litigation documents must be produced in a subsequent patent litigation, that standard is completely inapplicable to determining which documents are relevant to an antitrust claim. Apple has narrowly tailored its requests to litigation positions Samsung has taken on issues that are identical to the issues in this case. Apple is entitled to explore Samsung's views on its IPR disclosure and FRAND licensing obligations; Samsung's prior litigation statements are among the best sources of that information. Further, the production is not burdensome.

Assuming that we reach agreement on the relevant litigations, Apple would be amenable to a limitation that would exclude, "discovery motions, filings prepared by other parties [and] reports prepared by non-testifying experts."

We understand you are conferring with your client and look forward to your further response.

Samsung has also offered to meet and confer in response to Apple's RFP's 501-503, which seek similar documents relating to the Panasonic litigation. Apple's offer to compromise with respect to RFP's 151-154, 186-187 applies to RFP's 501-503 as well.

**Request No. 132**

Your suggestion that this request overlaps with the "standards" requests that were the subject of the prior motion to compel is mistaken. Rather than seeking documents relating to standards setting activity, this request relates to refusals to offer a FRAND license and Samsung's reaction, positions and discussions of the same. Accordingly, Apple continues to demand production of these documents, with substitution of the word "UMTS" for "Defined Wireless Standard." Please confirm that Samsung will produce these documents.

**WILMERHALE**

Rachel Kassabian, Esq.
February 28, 2012
Page 3

### Request No. 134

We appreciate your agreement to "produce business plans, strategy documents, financial projections and licensing plans that are applicable to patents that have been declared essential to the UTMS specifications identified in Apple's answers and counterclaims (25.212, 25.213, 25.214, and 25.322)." Does Samsung intend to produce all "business plans, strategy documents, financial projections and licensing plans" that would include or cover any UMTS essential patent? Apple seeks assurance that Samsung's offer is not limited to "business plans, strategy documents, financial projections and licensing plans" that by their terms apply *exclusively* to UMTS-essential patents but rather to *all* "business plans, strategy documents, financial projections and licensing plans" that would also cover a UMTS-essential patent (or patent-in-suit). Please confirm the scope of this offer.

### Request No. 113

If we can reach agreement on the issues related to the other requests, Apple is willing to no longer pursue this request.

### Request No. 67

The relevance of documents relating to the research and development of the products that Samsung itself claims are embodied by the patents-in-suit should be self-evident. At a minimum, these documents are relevant to whether there were significant problems encountered by Samsung that were solved by the claimed patented technology, as well as to how the patented technology developed, the relative importance to Samsung of that technology versus other technologies incorporated into its products, and whether there are viable alternatives to its claimed technology. Given that these documents are highly-relevant and well within Samsung's ability to collect and produce, they must be produced.

### Request No. 117

Judge Grewal has ordered Samsung to produce documents relating to licenses to the patents-in-suit (including portfolio licenses containing any of the patents-in-suit). We believe that this is the proper criteria for production under RFP 117 as well, and therefore cannot accept Samsung's offer to produce documents in response to RFP 117 for only an undefined "representative sample" of these licensees. We are not seeking documents in response to RFP 117 for all of Samsung's licenses, but only those licenses to the patents-in-suit (including portfolio licenses).

WILMERHALE

Rachel Kassabian, Esq.
February 28, 2012
Page 4

**Requests Relating to the Underlying Technology of the '516, '941 and '001 Patents (Nos. 175, 176, 179, 180, 182 and 183)**

Contrary to your assertion in your February 16 letter, the scope of discovery that Apple sought to compel on January 10, 2012 did not encompass every relevant document responsive to these requests. In Apple's January 10 motion, Apple sought to compel additional searches of Samsung's inventor files and production of documents related to Samsung's participation in ETSI and 3GPP. Apple's Requests Nos. 175, 176, 179 and 182 are not limited to Samsung's inventor files or Samsung's participation in standards setting organizations.

These requests cover the technology in the 7,447,516 ("the '516 patent"), 7,386,001 ("the '001 patent") and 7,675,941 ("the '941 patent") patents. Given that the language in these requests comes directly from the claim language of the '516, '001 and '941 patents, Samsung cannot dispute that the documents requested are relevant. Moreover, relevant documents responsive to these requests may be found outside of the inventors' files. Those documents would be outside the scope of Apple's January 10 motion to compel and should be produced in response to these requests.

While Apple does not agree that Requests Nos. 175, 176, 179 and 182 are overbroad, in the interest of facilitating discovery, Apple is willing to limit its requests. For Request No. 175, Apple requests Samsung produce documents from before July 7, 1999 concerning "segmentation, multiplexing, channel coding and interleaving." For Request No. 176, Apple requests Samsung produce documents constituting or concerning the categories (b)-(f), (i) and (k). For Request No. 179, Apple requests Samsung produce documents constituting or concerning the categories (b)-(i), (l), and (n). For Request No. 182, Apple requests Samsung produce documents constituting or concerning the categories (b)-(h), (k), and (n).

If we can reach an agreement on the issues related to Requests Nos. 175, 176, 179 and 182, Apple is willing to no longer pursue Requests Nos. 180 and 183.


Best regards,

*/s/ S. Calvin Walden*

S. Calvin Walden