1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

   APPLE, INC.,                    )  CV-11-1846-LHK
5                                   )
                   PLAINTIFF,       )  SAN JOSE, CALIFORNIA
6                                   )
             VS.                    )
7                                   )  MARCH 6, 2012
   SAMSUNG ELECTRONICS CO.          )
8  LTD., ET AL,                     )
                                    )  PAGES 1-61
9                  DEFENDANT.       )
   _____

10

11              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE PAUL S. GREWAL
12            UNITED STATES DISTRICT JUDGE

13

14  A P P E A R A N C E S:

15

16  FOR THE PLAINTIFF:  MORRISON & FOERSTER, LLP
                        BY:  MICHAEL JACOBS
17                           JASON BARTLETT
                             MIA MAZZA
18                           NATHAN SABRI
                        425 MARKET STREET
19                      SAN FRANCISCO, CA 94105

20

   FOR THE DEFENDANT:  QUINN EMANUEL
21                     BY:  VICTORIA MAROULIS
                            RACHEL KASSABIAN
22                          JOBY MARTIN
                       555 TWIN DOLPHIN DRIVE, 5TH FL
23                     REDWOOD SHORES, CA 94065

24

25  OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                             CERTIFICATE NUMBER 13185

1    SAN JOSE, CALIFORNIA          MARCH 6, 2012

2              P R O C E E D I N G S

3              (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5              THE CLERK:  YES, YOUR HONOR CALLING APPLE

6    INC. VERSUS SAMSUNG ELECTRONICS COMPANY.

7              CASE NUMBER CV-11-1846.

8              MATTER ON FOR PLAINTIFF AND DEFENDANT'S

9    MOTIONS TO COMPEL.

10             COUNSEL, PLEASE STATE YOUR APPEARANCES.

11             MS. KASSABIAN:  RACHEL KASSABIAN,

12   VICKY MAROULIS AND JOBY MARTIN FOR SAMSUNG.

13             THE COURT:  GOOD MORNING, COUNSEL.

14             MR. JACOBS:  GOOD MORNING, YOUR HONOR.

15             MICHAEL JACOBS, MIA MAZZA, JASON BARTLETT

16   AND NATHAN SABRI, MORRISON & FOERSTER, FOR APPLE.

17             THE COURT:  GOOD MORNING TO YOU AS WELL.

18             ALL RIGHT.  I HAVE TWO MOTIONS BEFORE ME.

19   I WOULD LIKE TO START WITH THE APPLE MOTION

20   REGARDING DEPOSITIONS.

21             MR. JACOBS, WHO IS GOING TO ARGUE THAT

22   ONE FOR YOU?

23             MR. JACOBS:  I WILL, YOUR HONOR.

24             YOUR HONOR, WE SEEK YOUR HELP IN BRINGING

25   SOME ORDER TO THE DEPOSITION PROCESS.  WE MADE A

1    SHOWING IN OUR PAPERS THAT THERE IS DISORDER, THAT

2    WE'RE NOT GETTING DOCUMENTS NOT ONLY BASED ON THE

3    TEN-DAY SHOWING WE MADE OR THE SIX-DAY SHOWING THAT

4    WE OFFERED AS A COMPROMISE SOME WEEKS AGO.  AND NOT

5    EVEN THE FIVE DAYS THAT THE PARTIES AGREED TO BACK

6    IN SEPTEMBER, I BELIEVE IT WAS, NOR EVEN THE THREE

7    DAYS THAT APPLIED TO CERTAIN DEPOSITIONS IN

8    YOUR HONOR'S ORDERS.

9            AND MOST RECENTLY WE'VE HAD ADDITIONAL

10   DEPOSITIONS AND WE'VE HAD DOCUMENTS PRODUCED TO US

11   ONE DAY, TWO DAYS BEFORE IN KOREAN.

12           WE SHOWED IN OUR PAPERS, AND SAMSUNG DOES

13   NOT REBUT, THAT DEALING WITH KOREAN LANGUAGE

14   DOCUMENTS IN THIS DISPUTE OR FOREIGN LANGUAGE

15   DOCUMENTS TAKES MORE DAYS, MORE TIME, MORE

16   PROCESSING, MORE TRANSLATION THAN DEALING WITH

17   ENGLISH LANGUAGE DOCUMENTS.  WE SHOWED THE ACTUAL

18   MECHANICS OF PROCESSING THE DOCUMENTS AND HOW WE

19   GOT TO OUR TEN-DAY REQUEST.

20           SO I THINK WE MADE OUR BASIC SHOWING THAT

21   THERE SHOULD BE -- THAT SAMSUNG SHOULD BE REQUIRED

22   TO PRODUCE TEN DAYS IN ADVANCE FOR KOREAN LANGUAGE

23   DOCUMENTS, FIVE DAYS IN ADVANCE FOR ENGLISH

24   LANGUAGE DOCUMENTS.

25           THE HARD ISSUE IS HERE WE ARE, IT'S -- WE

1    ARE WHERE WE ARE, AND WHY ARE WE EVEN STILL

2    BOTHERING WITH THIS MOTION?

3              AND THERE ARE TWO REASONS:  ONE, I THINK

4    WE WILL HAVE SOME DEPOSITIONS THAT SPILL OVER INTO

5    THE COMING WEEKS.  THEY WILL BE IMPORTANT

6    DEPOSITIONS.  YOUR HONOR HAS BEFORE YOU CROSS

7    MOTIONS ON APEX DEPOSITIONS.  AND SO THOSE WILL BE

8    DEPOSITIONS THAT WE'LL WANT TO HANDLE AS

9    EFFICIENTLY AS POSSIBLE.

10             IT'S POSSIBLE YOUR HONOR WOULD GIVE US,

11   OR SAMSUNG DEPENDING ON HOW THIS ALL WORKS OUT,

12   LIMITED TIME WITH THOSE DEPONENTS, ALL THE MORE

13   REASON WE'LL NEED DOCUMENTS WELL IN ADVANCE SO WE

14   CAN PREPARE PROPERLY FOR THOSE DEPOSITIONS.

15             THE COURT:  MR. JACOBS, LET ME ASK YOU

16   FOR CONTEXT, WHERE ARE YOU IN YOUR DEPOSITION

17   SCHEDULE?

18             I UNDERSTAND YOU HAVE ALL OF THREE OR

19   FOUR MORE DAYS LEFT OF THE FACT DISCOVERY PERIOD.

20   HAS EACH SIDE EXHAUSTED THE BULK OF ITS 250 HOURS,

21   OR WHERE DO THINGS STAND?

22             MR. JACOBS:  WE HAVE NOT EXHAUSTED THE

23   HOURS.  WE HAVE MORE DEPOSITIONS COMING, LITERALLY,

24   AS WE ARE SPEAKING.

25             I THINK IT'S FAIR TO SAY FOR BOTH SIDES

1   THAT WE'VE BROKEN THE BACK OF IT.  WE HAVE TAKEN A

2   LOT OF DEPOSITIONS, SOME OF THEM VERY FRUSTRATING

3   DEPOSITIONS BECAUSE OF THIS ISSUE.  SAMSUNG HAS

4   TAKEN, WHAT WAS OUR LAST COUNT, 50 --

5               MS. MAZZA:  70 SOMETHING.

6               MR. JACOBS:  70 IN THE NORTHERN DISTRICT.

7               SO WE HAVE THE PARALLEL PROCEEDING GOING

8   ON AS WELL IN THE ITC WHICH HAS A SOMEWHAT LATER

9   CUTOFF IN OUR CASE AGAINST SAMSUNG.

10              SO ONE REASON WE CAN MANAGE SOME OF THESE

11  ISSUES IS WE WILL LIKELY BE GETTING WITNESSES IN

12  THE COMING WEEKS ON THAT CASE AS WELL.

13              SO I THINK WE HAVE BROKEN THE BACK OF IT.

14  WE HAVE KEY DEPOSITIONS THAT WE NEED TO TAKE,

15  THAT'S THE APEX DEPOSITION MOTION THAT WE HAVE

16  FILED.

17              AND THEN I -- JUST TO ALERT YOU, WE'VE

18  GOT, AND I THINK YOU ALREADY REALIZED THIS, WE HAVE

19  A MOTION ON FOR DAMAGES RELATED PRODUCTION, THAT'S

20  TO ENFORCE A PREVIOUS ORDER OF THE COURT.  THERE'S

21  SOME OTHER ORDERS OF THE COURT THAT WE ARE GOING TO

22  HAVE TO MOVE TO COMPEL COMPLIANCE WITH AND THAT MAY

23  SPAWN SOME LONG TAIL DEPOSITIONS.

24              BUT TO COME BACK TO WHERE YOU ASKED, I

25  THINK WE'VE REALLY DONE A LOT ON APPLE'S SIDE.  WE

1    HAVE MOVED HEAVEN AND EARTH TO TRY TO ACCOMPLISH

2    THIS BY THE CUTOFF.

3            THE COURT:  SO IN TERMS OF THE REMEDY

4    THAT YOU ARE SEEKING AT THIS POINT IN TIME, I THINK

5    YOU'VE INDICATED YOUR AGREEMENT THAT WE ARE AT A

6    DIFFERENT PLACE THAN PERHAPS WE ALL WERE WHEN YOU

7    FIRST FILED THIS MOTION.

8            WHAT EXACTLY ARE YOU ASKING ME TO ORDER?

9            MR. JACOBS:  SO WE HAVE GIVEN SOME

10   FURTHER THOUGHT TO THAT QUESTION.

11           I THINK YOU SAW IN OUR REPLY THAT WE MADE

12   A PROPOSAL THAT HAD SOME PROVISION FOR ADDITIONAL

13   DEPOSITION TIME.  LAST NIGHT, THIS MORNING MAYBE,

14   WE GOT A COUNTER PROPOSAL FROM SAMSUNG THAT HAD A

15   DIFFERENT VIEW OF HOW THAT WOULD BE TREATED.

16           WE CAN'T ACCEPT THAT PROPOSAL BUT IT DID

17   CAUSE US TO THINK HARDER ABOUT WHAT EXACTLY WE ARE

18   SEEKING.

19           I THINK THE BEST MODEL HERE IS WHAT

20   YOUR HONOR DID WITH THE JONY IVE DEPOSITION.  AND

21   YOU MAY RECALL HIS DEPOSITION WAS TAKEN IN EARLY

22   DECEMBER AND SAMSUNG MADE A SHOWING, YOUR HONOR

23   FOUND, THAT SOME ADDITIONAL DOCUMENTS HAD BEEN

24   PRODUCED THAT GAVE THEM GOOD CAUSE TO REOPEN THAT

25   DEPOSITION.

1          YOUR HONOR GAVE THEM AN ADDITIONAL TWO

2    HOURS AND SAID YOU HAVE TO SEND A LETTER IN ADVANCE

3    THAT DETAILS THE TOPICS.

4          AND HIS DEPOSITION, IT HAPPENED, HAS BEEN

5    TAKEN IN THE ITC, SO YOUR HONOR SAID MAKE THAT WORK

6    SAMSUNG, LET'S DO IT ALL TOGETHER.

7          SO IT HAPPENED.  THERE WERE TWO HOURS, IT

8    WAS FOCUSED AND THAT WAS THE RESOLUTION.

9          WE DON'T WANT TO BRING MORE MOTIONS TO

10   YOU.  SO I THINK YOU WOULD HAVE TO SAY SOMETHING

11   VERY STRONG ABOUT THE PARTIES WORKING IN GOOD FAITH

12   TO --

13          THE COURT:  DIDN'T I ALREADY SAY THAT

14   ONCE OR TWICE?  IT DOESN'T SEEM TO HAVE WORKED.

15          MR. JACOBS:  I REALIZE, YOUR HONOR.

16          SO OUR PROPOSAL THEN IF IT'S NOT GOING TO

17   BE IN GOOD FAITH IT'S GOT TO BE SOME SHOWING OF

18   NONCUMULATIVE DOCUMENT PRODUCTION IN A CONTEXT IN

19   WHICH SUBSTANTIAL COMPLIANCE WAS NOT ACCOMPLISHED

20   BY THE TIME SET BY THE ORDER.

21          LET SAY YOUR ORDER HAD PREVIOUSLY SET A

22   THREE-DAY DEADLINE AND WE IN FACT GOT,

23   OVERWHELMINGLY, THE SAMSUNG PRODUCTION FOR THAT

24   WITNESS A DAY BEFORE.  AND THAT PRODUCTION WAS A --

25   THAT PRODUCTION OF DOCUMENTS A DAY BEFORE WAS

1    NONCUMULATIVE DOCUMENTS THAT HAD EARLIER BEEN

2    PRODUCED.  IF THAT IS THE CASE, THEN WE SHOULD GET

3    ADDITIONAL TIME WITH THAT WITNESS.

4         THE COURT:  ON THIS ISSUE OF A STANDARD

5    THAT OUGHT TO APPLY IN ORDERING A NEW DEPOSITION, I

6    LOOKED EAGERLY IN THE PAPERS FOR ANY CLUES AS TO

7    WHAT THESE DOCUMENTS PRODUCED, RELATED TO WHO THESE

8    WITNESSES WERE.

9         I DIDN'T SEE VERY MUCH ABOUT THAT.  CAN

10   YOU TELL ME -- SURELY YOU DON'T NEED DEPOSITIONS OF

11   ALL OF THESE PEOPLE ALL OVER AGAIN.

12        WHO MATTERS HERE?

13        MR. JACOBS:  THAT'S CORRECT.

14        AND ACTUALLY, I SHOULD ADD AN ELEMENT OF

15   THE PROPOSAL THAT SELF REGULATES HERE.  WE DON'T

16   HAVE THAT MANY HOURS LEFT.  AND OUR PROPOSAL WAS WE

17   NOT GET ADDITIONAL HOURS TO ACCOMPLISH THIS.

18        THAT WILL REGULATE THIS BECAUSE DEPENDING

19   ON HOW WE WORK OUT AS BETWEEN THE DEFENSIVE AND

20   OFFENSIVE CASES, WE HAVE TEN HOURS LEFT ON OUR SIDE

21   TO TAKE DEPOSITIONS.

22        SOME OF THEM ARE VERY IMPORTANT

23   DEPOSITIONS OF PEOPLE WHO WERE ACTUAL DECISION

24   MAKERS WHEN IT COMES TO THE DESIGN OF A PRODUCT.

25   SOME OF THEM WERE IMPLEMENTERS OF THE PRODUCTS WHO

1    WERE RESPONDING TO THAT DIRECTION.  I DON'T HAVE A

2    GLOBAL GENERALIZATION FOR YOU AS TO THE WITNESSES

3    AS TO WHOM WE HAD A SERIOUS LATE PRODUCTION

4    PROBLEM.  WE PROBABLY CAN DEVELOP THAT FOR YOU IF

5    YOU LIKE BUT I DON'T HAVE IT FOR YOU RIGHT NOW.

6            THE COURT:  ALL RIGHT.

7            SO AGAIN, YOU WOULD SUGGEST THAT I, IN

8    LIGHT OF THIS PRODUCTION DELAY, ORDER ADDITIONAL

9    DEPOSITIONS AND ARTICULATE SOME STANDARD OF

10   MATERIALITY IN TERMS OF THE VOLUME PRODUCED PAST

11   THE DEADLINE, WHATEVER THAT DEADLINE MIGHT BE?

12           MR. JACOBS:  SO I THINK THE RIGHT TEST

13   SHOULD BE:  WAS THERE SUBSTANTIAL COMPLIANCE?

14       A LOT OF SAMSUNG'S RIPOSTE TO OUR MOTION IS

15   YOU2APPLE.  THE FUNDAMENTAL DIFFERENCE ON THE

16   YOU2APPLE SIDE IS THAT WE ACHIEVED SUBSTANTIAL

17   COMPLIANCE WITH OUR PRODUCTION OBLIGATIONS IN

18   ADVANCE OF WHATEVER DEADLINE WAS APPLICABLE.

19           THE COURT:  YOU ARE NOT URGING A STRICT

20   STANDARD THAT A SINGLE DOCUMENT WAS PRODUCED AFTER

21   THE DEADLINE.

22           MR. JACOBS:  THAT'S EXACTLY RIGHT.

23       SO NON CUMULATIVENESS WAS OUR STANDARD.  I

24   THINK THAT APPLIES MATERIALITY IN A WAY THAT WOULD

25   BE IMPORTANT TO AN ISSUE IN THE CASE.

1              THE -- LET ME SEE IF I LAID OUT ALL THE

2     ELEMENTS.

3              SO NONCUMULATIVE, SUBSTANTIAL COMPLIANCE

4     NOT ACHIEVED IN ADVANCE OF WHATEVER DEADLINE WAS

5     APPLICABLE OR IS APPLICABLE.

6              THE HOURS LIMIT IS STILL IN FORCE.  WE

7     WOULD BE HAPPY IF WE -- TO HAVE AN OBLIGATION TO

8     SEND THEM A LETTER AND SAY, THESE ARE THE DOCUMENTS

9     WE ARE GOING TO ASK ABOUT.  BECAUSE ACTUALLY GIVING

10    THEM THAT ADVANCE NOTICE SO THE WITNESS KNOWS --

11             THE COURT:  YOU GET A BETTER PREPARED

12    WITNESS.

13             MR. JACOBS:  IF THE WITNESS IS

14    SHILLY-SHALLYING ON THE DOCUMENTS, IT WON'T BE

15    BECAUSE THE WITNESS WAS SURPRISED ON THE DOCUMENTS.

16             SO I THINK THOSE ELEMENTS WOULD BE A

17    WORKABLE SOLUTION.  WE DID ASK THAT THE WITNESSES

18    BE BROUGHT TO THE UNITED STATES UNDER THESE

19    CIRCUMSTANCES, THE SAMSUNG WITNESSES.  AND GIVEN

20    THAT THE DEPOSITIONS, I EXPECT WOULD BE SHORT, THAT

21    SOUNDS LIKE A LOT OF TRAVEL TIME FOR A SHORT

22    DEPOSITION.

23             ON THE OTHER HAND, THIS REALLY IS A HUGE

24    PROBLEM THAT THEY'VE CREATED.  AND WE THINK WE'VE

25    DOCUMENTED THAT WE DID THAT, THEREFORE THE BURDEN

1    SHOULD BE ON THEM.

2              THE COURT:  WELL, I WILL GIVE YOU AN

3    OPPORTUNITY FOR REBUTTAL.

4              I WOULD LIKE TO HEAR FROM SAMSUNG FOR ALL

5    THE POINTS YOU HAVE RAISED.

6              MS. KASSABIAN, ARE YOU UP?

7              MS. KASSABIAN:  I AM, YOUR HONOR.

8    THANK YOU.

9              SO I THINK YOUR QUESTIONS HERE THIS

10   MORNING, AGAIN, ARE ALL THE RIGHT ONES.

11             THOSE QUESTIONS SHOULD HAVE BEEN ANSWERED

12   IN A PROPERLY FILED AND NOTICED MOTION TO REOPEN

13   DOZENS OF FOREIGN DEPOSITIONS.

14             THAT MOTION HAS NOT BEEN FILED.  SO IT IS

15   NOT PROPERLY BEFORE YOU.  THE SITUATION IS NOT

16   NEARLY SO SIMPLE AS MR. JACOBS WOULD LIKE TO MAKE

17   IT SEEM.

18             SOME OF THESE STANDARDS HE JUST WENT

19   THROUGH THAT THEY WERE ADDITIONAL MATERIAL

20   DOCUMENTS, THAT THEY WERE NONCUMULATIVE, THAT THE

21   PARTIES HADN'T SUBSTANTIALLY COMPLIED.  THIS IS THE

22   FIRST TIME I'M HEARING OF THIS STANDARD.

23             I AGREE THAT SOUNDS RIGHT, LET'S BRIEF

24   IT.  INSTEAD WHAT HAS HAPPENED IS APPLE HAS MADE

25   THIS BLANKET DEMAND, THIS KNEE JERK REACTION SAYING

1    IF A SINGLE DOCUMENT -- THIS IS WHAT THEIR MOTION

2    SAYS, THE REPLY BRIEF -- IF THE SINGLE DOCUMENT WAS

3    PRODUCED LESS THAN DEN DAYS BEFORE A DEPOSITION,

4    YOU'VE GOT TO FLY THAT PERSON TO THE UNITED STATES

5    REGARDLESS OF THEIR RELEVANCE, REGARDLESS OF

6    WHETHER APPLE TOOK A GOOD DEPOSITION THE FIRST TIME

7    AND A MEANINGFUL ONE WITH WHAT IT DID HAVE,

8    REGARDLESS OF THAT WITNESS'S PERSONAL

9    CIRCUMSTANCES, REGARDLESS OF WHETHER ANY OF THE

10   ADDITIONAL DOCUMENTS WERE MERELY DUPES OF OTHER

11   DOCUMENTS THAT HAD BEEN PRODUCED BY OTHER

12   COLLEAGUES THAT HAD BEEN DEPOSED EARLIER.

13        THERE ARE SO MANY FACTORS THAT MUST BE

14   CONSIDERED BEFORE --

15        THE COURT:  WELL, I THINK THEY ABANDONED

16   THAT POSITION IF THEY EVER TOOK IT.

17        SO LET'S TALK ABOUT WHAT'S NOW ON THE

18   TABLE.

19        MS. KASSABIAN:  WHAT'S NOW ON THE TABLE

20   IS APPLE'S MOTION IS LARGELY MOOT AND SHOULD BE

21   DENIED.

22        NOW IT'S TRUE THAT THERE ARE A FEW

23   REMAINING DEPOSITIONS TO BE SCHEDULED, OR THAT HAVE

24   BEEN SCHEDULED AND HAVEN'T YET TAKEN PLACE.

25   THERE'S A HANDFUL OF THEM.  I'M NOT INCLUDING

1    DEPOSITIONS TAKING PLACE RIGHT NOW AND TOMORROW

2    SINCE OBVIOUSLY THE 10 OR 5-DAY RULE WOULDN'T

3    AFFECT THOSE.

4          BUT CERTAINLY WITH RESPECT TO THE

5    DEPOSITIONS THAT WOULD NEED TO BE TAKEN, AS WE

6    POINTED OUT IN OUR OPPOSITION BRIEF, YOU KNOW, HAD

7    APPLE CONSULTED WITH US AND PROPERLY MET AND

8    CONFERRED, YOU KNOW, WE HAD TALKED ABOUT SOME

9    ALTERNATIVE, OUR OPPOSITION BRIEF SAYS, YOU KNOW,

10   HEY, WE WOULD BE WILLING TO AGREE TO A 5-DAY RULE

11   BUT IT'S GOT TO BE RECIPROCAL, AND IT HASN'T BEEN,

12   RIGHT?

13         SO TO THE EXTENT YOUR HONOR WANTS TO

14   ORDER SOMETHING ON THE ACTUAL MOTION THAT IS BEFORE

15   YOU PROPERLY ON THE PRODUCTION OF DOCUMENTS A

16   CERTAIN NUMBER OF DAYS IN ADVANCE OF DEPOSITIONS,

17   FIVE DAYS WHICH IS THE RULE THE PARTIES WERE BOTH

18   VOLUNTARILY AND COOPERATIVELY TRYING TO ABIDE BY

19   BACK LAST FALL WHEN THE INVENTOR DEPOSITION TOOK

20   PLACE, WOULD BE THE APPROPRIATE RULE FOR THE

21   PROSPECTIVE DEPOSITIONS.

22         AS TO PAST DEPOSITIONS THAT HAVE TAKEN

23   PLACE, THAT IS NOT BEFORE YOUR HONOR.  SURELY APPLE

24   KNEW ON JANUARY 30TH, FIVE WEEKS AGO WHEN

25   YOUR HONOR DENIED THE MOTION TO SHORTEN TIME, THAT

13

1    THIS COULD BE AN ISSUE, RIGHT?

2              APPLE COULD HAVE IMMEDIATELY CALLED US

3    AND SAID OKAY, JUDGE GREWAL HAS EFFECTIVELY DENIED

4    THE VAST MAJORITY OF OUR MOTION TO COMPEL, LET'S

5    TALK ABOUT --

6              THE COURT:  I DIDN'T DO ANY SUCH THING.

7    I DENIED MOTION FOR LEAVE TO FILE AN EXPEDITED

8    HEARING, I DIDN'T ADDRESS THE MERITS AT ALL.

9              MS. KASSABIAN:  YOU DIDN'T.

10             BUT APPLE ADMITTED IN ITS PAPERS THAT IF

11   ITS MOTION TO SHORTEN WASN'T GRANTED, IT'S MOTION

12   TO COMPEL DOCUMENTS WOULD EFFECTIVELY BE MOOT.

13             SO APPLE KNEW THAT, IT ADMITTED THAT IN

14   ITS MOTION TO SHORTEN TIME, SHOULD HAVE PICKED UP

15   THE PHONE AND CALLED US AND SAID YOU KNOW WHAT,

16   LET'S TALK ABOUT WHAT ELSE WE CAN DO.

17             INSTEAD I THINK WHAT APPLE IS TRYING DO

18   IS SAY OKAY FINE, WE WILL TAKE ALL OF YOUR

19   WITNESSES AND THEN WE ARE GOING TO ASK AT A SECOND

20   PASS AT THEM, YOU KNOW, IN A BLANKET ORDER WITHOUT

21   LOOKING TO SEE WHETHER ANY OF THOSE DEPOSITIONS

22   NEED TO BE REOPENED, AND FRANKLY WITHOUT LOOKING TO

23   ITSELF AND SAYING OKAY, YOU KNOW, WE ACTUALLY HAVE

24   COMMITTED SOME OF THE SAME SUPPOSED SINS OF

25   PRODUCING DOCUMENTS AS FAST AS WE CAN BUT PERHAPS

```
 1    NOT AS FAST AS OUR OPPONENTS WOULD LIKE.  AND SO
 2    WHATEVER WE DEMAND OF SAMSUNG WE MUST BE WILLING TO
 3    AGREE TO OURSELVES.
 4              AND SO FAR THEY HAVEN'T DONE THAT.
 5              SO, YOU KNOW, IF I WERE IN YOUR HONOR'S
 6    SHOES I THINK THAT IT IS REASONABLE THAT YOUR HONOR
 7    HAD INDICATED IN TWO PRIORS ORDERS, WE ARE FINE
 8    WITH THAT.
 9              THE COURT:  WHERE DID I INDICATE IN MY
10    PRIOR ORDER THAT THERE WAS A 3-DAY RULE?
11              I READ MY PRIOR ORDERS AS SETTING
12    DEADLINES FOR YOU TO COMPLY WITH MY ORDER, AND AT A
13    MINIMUM THEY WOULD BE PRODUCED NO LATER THAN THREE
14    DAYS BEFORE THE DEPOSITION.
15              MS. KASSABIAN:  THAT'S RIGHT.
16              AND NEITHER PARTY --
17              THE COURT:  I DIDN'T SET A 3-DAY STANDARD
18    FOR DEPOSITIONS AND DOCUMENTS, DID I?
19              MS. KASSABIAN:  NO, BUT WHAT YOUR HONOR
20    DID IS YOUR HONOR CAME UP WITH THAT SUA SPONTE.
21              NEITHER PARTIES ON THOSE MOTIONS SAID,
22    YOUR HONOR, MAKE SURE YOU ORDER DOCUMENTS PRODUCED
23    THREE DAYS BEFORE THE DEPOSITION.
24              CLEARLY YOUR HONOR FELT THAT WAS A
25    REASONABLE AMOUNT OF TIME TO INSIST THAT DOCUMENTS
```

1    RELATED TO --

2              THE COURT:  I THINK I CAN IMAGINE WHAT I

3    FELT IN MY OWN ORDER.  I APPRECIATE THE SUGGESTION.

4              BUT THE FACT OF THE MATTER IS I DIDN'T

5    SET A 3-DAY RULE, DID I?

6              MS. KASSABIAN:  WELL, WE THINK YOU DID.

7    WE THINK THAT YOUR GUIDANCE WAS THREE DAYS IS

8    REASONABLE.

9              NOW YOUR ORDER CERTAINLY DID NOT SAY WITH

10   RESPECT TO DOCUMENTS NOT SUBJECT TO THIS ORDER ALL

11   PARTIES MUST, YOU KNOW, SERVE DOCUMENTS NO LATER

12   THAN THREE DAYS IN ADVANCE.  YOU DIDN'T.

13             BUT WE TOOK YOUR GUIDANCE FROM YOUR PRIOR

14   ORDER AND WE'VE USED THAT AS A FLOOR.  NOW THAT

15   DOESN'T MEAN THAT WE'RE SITTING ON DOCUMENTS AND

16   HANDING THEM OVER ON DAY 3.

17             IN FACT, AS YOU WILL SEE FROM THE PAPERS

18   THERE ARE MANY INSTANCES, AT LEAST 20 OF THE

19   DEPOSITIONS OF SAMSUNG EMPLOYEES, THE DOCUMENTS

20   WERE PRODUCED MORE THAN 10 DAYS IN ADVANCE OF THE

21   RELEVANT DEPOSITION.  IN SOME INSTANCES IT'S WEEKS,

22   IN SOME INSTANCES IT'S EVEN MONTHS.

23             THE COURT:  AND IN SOME INSTANCES YOU

24   PRODUCED LESS THAN THREE DAYS.

25             MS. KASSABIAN:  ABSOLUTELY.

1           AND TRY AS WE MIGHT, WE HAVE MADE

2    MISTAKES BECAUSE OF TECHNICAL ISSUES.

3           THE COURT:  WELL, WHAT REMEDY HAVE YOU

4    OFFERED IN EACH OF THOSE INSTANCES TO ADDRESS THE

5    PREJUDICE OF APPLE FOR GETTING DOCUMENTS LESS THAN

6    THREE DAYS IN ADVANCE?

7           MS. KASSABIAN:  AS EARLY AS JANUARY 16TH

8    I HAVE TRIED TO ENGAGE APPLE IN THAT DISCUSSION

9    UNSUCCESSFULLY.

10           I SPECIFICALLY CALLED THAT OUT AND SAID,

11    LOOK, THIS IS AN ISSUE ON BOTH SIDES, WHAT ARE WE

12    GOING TO DO TO FIX THAT?

13           THE COURT:  SO WHAT DID YOU OFFER TO

14    THEM?

15           MS. KASSABIAN:  I SAID, LET'S TALK ABOUT

16    WHAT WE COULD DO, WHETHER IT BE REOPENING

17    DEPOSITIONS, WHETHER IT BE HORSE TRADING, WHETHER

18    IT BE -- I SUPPOSE THERE'S A VARIETY OF OPTIONS,

19    BUT THE RESPONSE I GOT WAS, NO THANK YOU, WE ARE

20    FILING OUR MOTION.

21           AND IT WASN'T UNTIL SIX WEEKS LATER, SIX

22    WEEKS AFTER I RAISED THE ISSUE ON FEBRUARY 23RD, 10

23    HOURS BEFORE THEY FILED THE REPLY BRIEF ON ITS

24    MOTIONS TO COMPEL DOCUMENTS THAT IT FIRST RAISED

25    THE SPECTOR OF REOPENING DEPOSITIONS.

1           I SHOULD MENTION, YOUR HONOR, MY

2    COLLEAGUE REMINDS ME IN THE INSTANCES WHERE

3    DOCUMENTS COULD NOT BE PRODUCED MORE THAN THREE

4    DAYS IN ADVANCE, EITHER AT THE DEPOSITION OR IN

5    ADVANCE OF THE DEPOSITION, IN SEVERAL INSTANCES WE

6    OFFERED TO CONTINUE THAT DEPOSITION SO THAT THEY

7    COULD HAVE A FEW MORE DAYS TO LOOK AT DOCUMENTS,

8    AND OFTEN TIMES APPLE DECLINED.

9           I THINK THERE WAS ONE INSTANCE WHERE THEY

10   ACCEPTED OUR OFFER.  AND MANY INSTANCES WHERE THEY

11   SAID, NO THANK YOU, WE ARE GOING TO PROCEED.  THEY

12   DID SO AT THEIR OWN RISK.

13          SO THE POINT IS THIS IS SOMETHING THAT

14   NEEDS TO BE MEANINGFULLY DISCUSSED BY THE PARTIES.

15   IT'S AN ISSUE ON BOTH SIDES.  IT'S NOT ONE-SIDED

16   IT'S NOT ANYONE SITTING ON DOCUMENTS INTENTIONALLY.

17   IT'S THE PARTIES DOING THEIR VERY BEST TO COMPLY

18   WITH AN UNBELIEVABLY EXPEDITED PRETRIAL SCHEDULE

19   AND A MASSIVE AMOUNT OF DEPOSITIONS NOTICED AROUND

20   THE WORLD.

21          EVERYONE HERE I THINK IS DOING THE VERY

22   BEST THEY CAN.  BOTH SIDES HAVE FACED TECHNICAL

23   GLITCHES.  BOTH SIDES HAD FOUND DOCUMENTS

24   INADVERTENTLY LATER THAN THEY WOULD HAVE PREFERRED,

25   NOT THE FULL PRODUCTION BUT SOME ADDITIONAL

1    DOCUMENTS FROM VARIOUS WITNESSES.

2            THESE THINGS HAPPEN IN THIS TYPE OF

3    LITIGATION.  AND THAT NEEDS TO BE WORKED OUT WITH

4    THE PARTIES BECAUSE IT IS COMPLETELY RECIPROCAL,

5    NOT BROUGHT TO YOUR HONOR AS A ONE-SIDED DISPUTE IN

6    A FEW SENTENCES TOSSED INTO A REPLY BRIEF ON A

7    MOTION TO COMPEL DOCUMENTS.

8            THE COURT:  WELL, SINCE YOU BROUGHT UP

9    YOUR EFFORTS TO ENGAGE APPLE ON THIS ISSUE WEEKS

10   AND WEEKS AGO, CUTTING THROUGH ALL OF THIS, WHAT

11   WOULD YOU PROPOSE AS A REASONABLE COMPROMISE FOR

12   BOTH SIDES TO ADDRESS THE PROBLEM OF LATE

13   PRODUCTION?

14           MS. KASSABIAN:  I THINK YOUR HONOR IS

15   COMPLETELY RIGHT THAT AN INSTANCE OF LATE

16   PRODUCTION DOES NOT MEAN THAT DEPOSITION NEEDS TO

17   BE REOPENED.

18           THE PARTIES NEED TO SIT DOWN, APPLE HAS

19   NOT GIVEN US ANY INDICATION THAT THEY'VE DONE THIS.

20   WE ARE DOING IT RIGHT NOW ON OUR SIDE WITH RESPECT

21   TO THE MANY, MANY TENS OF THOUSANDS OF DOCUMENTS

22   THAT WE RECEIVED AFTER WE DEPOSED APPLE'S INVENTORS

23   MANY WEEKS AND MONTHS AFTER.

24           WE ARE GOING THROUGH THOSE LISTS AND

25   FIGURING OUT, OKAY, IS THIS REALLY PREJUDICIAL?

1    ARE THESE ADDITIONAL DOCUMENTS MATERIAL?  WERE WE

2    UNABLE TO GET WHAT WE NEEDED FROM THE DEPONENT THE

3    FIRST TIME AROUND?  THAT'S THE EXERCISE THAT APPLE

4    NEEDS TO UNDERTAKE AS WELL.

5         THE PARTIES CAN THEN COME TOGETHER AND

6    SAY ALL RIGHT, HERE'S OUR SHORT LIST OF WHO WE

7    REALLY WOULD LIKE ANOTHER CRACK AT BASED ON THE

8    LATE PRODUCED DOCUMENTS SPECIFIC CATEGORIES OF LATE

9    PRODUCED DOCUMENTS AND THEN HORSE TRADE.

10        IT'S REALLY NOT ROCKET SCIENCE.  THAT

11   NEEDS TO HAPPEN AND IT HASN'T BECAUSE --

12        THE COURT:  SO HOW DO I MAKE THAT HAPPEN?

13   YOU ALL APPARENTLY HAVE BEEN UNABLE TO MANAGE THIS

14   ON YOUR OWN FOR SEVERAL WEEKS AND MONTHS.

15        MS. KASSABIAN:  I THINK YOU NEED TO BE

16   MORE SPECIFIC, YOUR HONOR.

17        THE COURT:  TELL ME WHAT YOU WANT ME TO

18   BE SPECIFIC ABOUT.

19        MS. KASSABIAN:  ISSUE AN ORDER SAYING THE

20   PARTIES NEED TO GET TOGETHER.

21        THE COURT:  I'VE ALREADY SAID THAT.  I'VE

22   SAID THAT DOZENS OF TIMES IN THIS CASE THAT YOU ALL

23   NEED TO GET TOGETHER AT THE HIGHEST LEVEL AND TRY

24   TO WORK THIS OUT.

25        THE PRESIDING JUDGE HAS SAID THIS DOZENS

1    OF TIMES AND HERE WE ALL ARE.

2              AND I'M WELL AWARE THIS IS JUST THE

3    LATEST ROUND OF MOTIONS.  I HAVE MANY MORE ALREADY

4    SITTING ON MY DOCKET THAT ARE COMING IN THE NEXT

5    FEW WEEKS.

6              WHAT CAN I SPECIFICALLY DO?  WHAT WOULD

7    YOU HAVE ME DO?

8              MS. KASSABIAN:  FIRST OF ALL, DENY

9    APPLE'S MOTION.  YOU NEED TO SEND THE MESSAGE THAT

10   THE ANSWER IS NOT TO RUN TO YOUR HONOR, THE ANSWER

11   IS TO RUN TO US FIRST.

12             SECOND OF ALL I WOULD ORDER THE PARTIES

13   TO GET TOGETHER AT A SPECIFIC DATE, A SPECIFIC

14   TIME --

15             THE COURT:  HOW ABOUT RIGHT NOW WHILE

16   WE'RE ALL TOGETHER?

17             MS. KASSABIAN:  WE CAN DO THAT.

18             THE COURT:  SO FOLLOW ME.

19             MS. KASSABIAN:  WE ARE TALKING ABOUT 50

20   TO 70 DEPOSITIONS PER SIDE, I DON'T WANT TO WASTE

21   YOUR HONOR'S TIME.

22             THE COURT:  YOU ALREADY MANAGED TO WASTE

23   ENOUGH OF IT ON THIS ISSUE, SO LET'S TRY TO GET

24   SOMETHING DONE.

25             MY POINT IS WE ARE ALL HERE.  THE PROCESS

1    THAT I THOUGHT JUDGE KOH HAD LAID OUT MONTHS AGO

2    HAS OBVIOUSLY BROKEN DOWN.

3              WHAT CAN WE DO WHILE WE ARE ALL HERE

4    SPENDING YOUR CLIENT'S MONEY AND YOUR TIME TO GET

5    THIS THING RESOLVED?

6              MS. KASSABIAN:  AS I SAID, I THINK THE

7    PARTIES NEED TO GO THROUGH THEIR LIST OF

8    DEPOSITIONS.  IF APPLE HAS THAT INFORMATION, IF

9    THEY ARE READY TO DO THAT WE CAN STEP OUT INTO THE

10   ATTORNEY LOUNGE RIGHT NOW AND DO THAT.

11             THE COURT:  I BELIEVE IT MAY HAVE BEEN IN

12   MS. MAZZA'S DECLARATION, THERE'S A LIST OF ANY

13   NUMBER OF SAMSUNG DEPONENTS OF DOCUMENTS PRODUCED

14   LATE ACCORDING TO APPLE.

15             MS. KASSABIAN:  RIGHT.  AND THAT'S NOT

16   THE ISSUE, BOTH SIDES HAVE THAT PROBLEM.

17             THE ISSUE IS --

18             THE COURT:  BUT THEY ARE THE ONLY ONES

19   WHO BROUGHT A MOTION, RIGHT?

20             MS. KASSABIAN:  WELL, THAT'S BECAUSE WE

21   ARE TRYING NOT TO WASTE YOUR TIME.  WE ARE TRYING

22   TO ENGAGE IN A MORE THOUGHTFUL PROCESS AND SEND TO

23   APPLE AT A MEET AND CONFER, A SPECIFIC LIST OF

24   DEPONENTS WE WANT AND A SPECIFIC BASIS FOR THEM,

25   NOT THE KIND OF BROAD BRUSH, WE WANT IT ALL.

1           THE COURT:  SO WHEN ARE YOU GOING TO SEND

2     APPLE THAT LIST?

3           MS. KASSABIAN:  I CAN SEND IT TO APPLE AS

4     EARLY AS -- I WILL HAVE TO CHECK WITH MY TEAM WHO

5     IS WORKING ON IT, BUT I THINK NEXT WEEK.

6           AND APPLE NEEDS TO SEND US THAT LETTER

7     BECAUSE THERE ARE PROBABLY DEPONENTS IF THEY REALLY

8     SAT AND THOUGHT ABOUT IT, IF THEY REALLY LOOK AT

9     THE DOCUMENTS, THEY ARE CUMULATIVE OR THEY ARE

10    UNNECESSARY.  THAT EXERCISE HAS TO HAPPEN.

11          AND MAYBE A WAY TO HANDLE THIS IS FOR

12    YOUR HONOR TO SET A DEADLINE FOR THE PARTIES TO

13    EXCHANGE THESE LETTERS AND TO AGREE RECIPROCALLY TO

14    AN EQUAL AMOUNT OF REOPENED DEPOSITIONS, YOU KNOW,

15    BASED UPON, YOU KNOW, PROVIDING SOME SORT OF A

16    CONCRETE BASIS AND HORSE TRADING AS TO THE NUMBERS.

17          THE COURT:  SO DO YOU AGREE OF THE

18    PRINCIPLE THAT FURTHER DEPOSITIONS ARE APPROPRIATE

19    IN LIGHT OF LATE PRODUCTIONS?

20          MS. KASSABIAN:  I THINK THAT APPLE HAS

21    NOT MADE THAT SHOWING WHATSOEVER.

22          THE COURT:  NO, I'M ASKING FOR YOUR

23    POSITION.

24          MS. KASSABIAN:  IT ABSOLUTELY CAN BE,

25    DEPENDING ON THE CIRCUMSTANCES WITHOUT QUESTION, IF

1    DOCUMENTS -- THOUSANDS OF DOCUMENTS IN AN

2    INVENTOR'S FILES ARE PRODUCED TWO MONTHS AFTER WE

3    DEPOSED THE INVENTOR, WITHOUT QUESTION THAT CAN BE

4    PREJUDICIAL.  BUT YOU HAVE TO UNDERTAKE THE

5    EXERCISE OF LOOKING AT THE DOCUMENTS, LOOKING AT

6    THE DEPOSITION AND FIGURING OUT IF YOU NEED MORE

7    AND IF SO IN WHAT RESPECT.

8         NOT SIMPLY SAYING, JUST BECAUSE SOMETHING

9    WAS PRODUCED LATE WE AUTOMATICALLY GET TO FLY THAT

10   PERSON HALFWAY AROUND THE WORLD AND MAKE THEM SIT

11   THROUGH ANOTHER WASTEFUL DEPOSITION.  THAT'S NOT

12   THE PROPER EXERCISE.

13        THE COURT:  WELL, IF TENS OF THOUSANDS OF

14   PAGES OF DOCUMENTS NON CUMULATIVE, NON REDUNDANT

15   DOCUMENTS ARE PRODUCED AFTER A DEPOSITION HAS TAKEN

16   PLACE, WOULD YOU AGREE THAT THAT'S AN APPROPRIATE

17   BASIS UPON WHICH TO ORDER A LIMITED FURTHER

18   DEPOSITION?

19        MS. KASSABIAN:  IF A SHOWING HAS BEEN

20   MADE.

21        IT MAY BE -- FOR INSTANCE, STRATEGICALLY

22   THE PARTIES DECIDE WELL, GIVEN OUR LIMITED NUMBER

23   OF HOURS WHILE WE COULD ARGUABLY ASK FOR THE

24   PARTICULAR DEPOSITION BE REOPENED, WE WOULD RATHER

25   HAVE THIS OTHER ONE.

1           TOUGH CHOICES HAVE TO BE MADE.  NO ONE IS

2     GOING TO GET EVERYTHING THEY WANT ON THIS SCHEDULE

3     THAT WE ARE OPERATING UNDER.  SO THERE HAS TO BE

4     SOME DISCRETION APPLIED AND SOME STRATEGIC

5     DECISIONS MADE.  THAT HAS NOT HAPPENED AT ALL ON

6     APPLE'S SIDE, IT'S NOT ANYWHERE IN THEIR PAPERS.

7           AND WE'RE HERE, YOUR HONOR, WASTING YOUR

8     TIME BECAUSE APPLE FILED A MOTION, NOT BECAUSE

9     SAMSUNG DID.

10          THE COURT:  WELL, I BELIEVE WE HAVE A

11    MOTION FROM SAMSUNG BEFORE ME.

12          MS. KASSABIAN:  THAT IS EXTREMELY

13    MERITORIOUS AND IT DOESN'T RELATE TO THIS ISSUE.

14          THE COURT:  I'M SURE IT IS, IN YOUR VIEW.

15          BUT ON THIS PARTICULAR SUBJECT, IT SEEMS

16    TO ME THAT WHAT YOU ARE SUGGESTING IS THAT WHEN A

17    PARTY NOTICES A DEPOSITION, TAKES THE DEPOSITION,

18    AND PERHAPS DAYS AFTER THE FACT RECEIVES DOCUMENTS

19    RELATING TO THAT WITNESS, THE PARTY TAKING THE

20    DEPOSITION HAS THE BURDEN AND THE UNDERTAKING OF AN

21    EXERCISE TO EVALUATE, THEN WHAT ADDITIONAL

22    DEPOSITIONS ARE APPROPRIATE?

23          MS. KASSABIAN:  SO THAT --

24          THE COURT:  THAT THE PARTY THAT PRODUCED

25    THE DOCUMENTS LATE BY ITS OWN ADMISSION, ACCORDING

1   TO ITS OWN STANDARD, HAS NO RESPONSIBILITY IN THAT

2   CIRCUMSTANCE TO ENGAGE THE OTHER SIDE AND SAY, WE

3   KNOW WE ARE LATE, WE KNEW WE BLEW OUR DEADLINE, WE

4   KNOW WE VIOLATED THE JUDGE'S ORDER AND HERE'S HOW

5   WE ARE PROPOSING TO MAKE THIS RIGHT.

6        MS. KASSABIAN:  I HAVE THREE RESPONSES TO

7   THAT.

8        NUMBER ONE, YES, THE PARTIES SHOULD

9   PROPOSE A SOLUTION, AND IN MANY INSTANCES WHERE WE

10  HAD A LATE PRODUCTION WE DID.

11        SOMETIMES APPLE ENGAGED US IN THAT,

12  SOMETIMES THEY DIDN'T.

13        APPLE, IN ITS LATE PRODUCTIONS, HAS NEVER

14  SAID VOLUNTARILY, BY THE WAY, WE WILL AGREE TO LET

15  YOU HAVE MORE TIME WITH THIS WITNESS.  THEY'VE

16  NEVER SAID THAT.  THEY SHOULD SAY THAT, THEY

17  HAVEN'T YET, THE PARTIES NEED TO WORK THAT OUT.

18        SECONDLY, AS FAR AS PRODUCING THE

19  DOCUMENTS AFTER THE DEPOSITION, ONLY APPLE HAS DONE

20  THAT.  SAMSUNG HASN'T --

21        THE COURT:  YOU'VE NEVER DONE THAT?

22        MS. KASSABIAN:  I DON'T BELIEVE THAT HAS

23  HAPPENED IN THIS CASE.

24        THE COURT:  IS THAT CORRECT?

25        MS. KASSABIAN:  THAT'S CORRECT.

26

1            THE COURT:  SO YOU ARE DISPUTING THE

2     FACTS THAT WERE SUBMITTED IN MS. MAZZA'S

3     DECLARATION?

4            MS. KASSABIAN:  I DON'T THINK MS. MAZZA

5     SAYS THAT.

6            SHE SAYS CERTAIN DOCUMENTS WERE PRODUCED

7     DURING DEPOSITIONS WITH RESPECT TO HEONBAE KIM, I

8     BELIEVE, AND THERE MIGHT HAVE BEEN ONE OR TWO

9     ANOTHERS.  IT'S A DIZZYING ARRAY OF WITNESSES,

10    YOUR HONOR.

11           WE SUBMITTED A CHART THAT REFLECTS ALL

12    THE INFORMATION.  SHE POINTS TO ONE DEPOSITION

13    WHERE WE PRODUCED DOCUMENTS FOUR HOURS BEFORE THE

14    DEPOSITION, THAT'S TRUE.  THAT'S NOT AFTER, THAT'S

15    BEFORE.

16           AND THERE WAS ANOTHER INSTANCE WITH

17    MS. KIM WHERE DOCUMENTS WERE PRODUCED DURING HER

18    DEPOSITION.

19           I DON'T THINK THERE'S ANYTHING IN THE

20    CHART POINTING TO DOCUMENTS AFTER THE DEPOSITION.

21    WHAT SHE SAYS INSTEAD IS, HEY SAMSUNG, IN A

22    DIFFERENT CASE, IN THE ITC PROCEEDINGS, SAMSUNG

23    PRODUCED SOME DOCUMENTS IN RESPONSE TO ITC DOCUMENT

24    REQUESTS AFTER THAT WITNESS HAD BEEN DEPOSED IN THE

25    NDCA CASE.

1            THAT'S A COMPLETE RED HERRING.  THAT WAS

2    NOT AN NDCA PRODUCTION.  THERE WERE DIFFERENT

3    PATENTS, DIFFERENT PRODUCTS AT ISSUE.  SOME WERE

4    OVERLAPPING WITNESSES

5            THE COURT:  I WILL ACCEPT YOUR

6    REPRESENTATION IF I GO BACK AND LOOK AND SEE IF

7    THAT REPRESENTATION IS NOT CORRECT I WILL DEAL WITH

8    IT.

9            MS. KASSABIAN:  WELL, YOUR HONOR, I'M NOT

10   TRYING TO MISSTATE ANYTHING, THERE ARE MANY CHARTS

11   AT ISSUE.

12           I CAN TAKE A MOMENT TO LOOK AT THEM, BUT

13   MY UNDERSTANDING IS THE ONLY DOCUMENTS IN THIS CASE

14   THAT HAVE BEEN PRODUCED COMPLETELY AFTER A

15   DEPOSITION HAS BEEN TAKEN IS ON APPLE'S SIDE WHERE

16   THEY PRODUCED TENS OF THOUSANDS OF DOCUMENTS AFTER

17   THEIR INVENTOR DEPOSITIONS.

18           WHAT THEY'RE COMPLAINING ABOUT SAMSUNG'S

19   NDCA PRODUCTIONS IS THAT THEY HAVE COME TOO CLOSE

20   IN TIME TO THE DEPOSITION AND IN SOME INSTANCES

21   ADDITIONAL SUPPLEMENTAL PRODUCTIONS HAVE BEEN

22   DURING THE DEPOSITIONS.

23           I DON'T THINK THEY POINTED TO ANY

24   INSTANCES ANY WHERE DOCUMENTS WERE PRODUCED

25   LITERALLY AFTER AN NDCA DEPOSITION EXCEPT THE ACUTE

1    ARGUMENT THAT DOCUMENTS PRODUCED IN AN ENTIRELY

2    DIFFERENT ACTION, THE ITC ACTIONS, SOMEHOW ARE

3    IMPUTED AS RELEVANT AND RESPONSIVE IN THE NDCA, AND

4    THEY HAVEN'T WITH THAT SHOWING.

5              THE COURT:  AND YOU ARE TELLING ME THAT

6    DOCUMENTS PRODUCED IN THE ITC ACTION HAVE NOT BEEN

7    DEEMED PRODUCED IN THIS CASE UNDER AN AGREEMENT

8    BETWEEN THE PARTIES?

9              MS. KASSABIAN:  THEY ABSOLUTELY HAVE.

10             THE COURT:  SO WHAT DOES IT MATTER IF

11   THAT'S AN ITC BATES STAMP ON THE DOCUMENT THAT WERE

12   PRODUCED AFTER THE DEPOSITION -- WERE PRODUCED

13   AFTER THE DEPOSITION.

14             MS. KASSABIAN:  BECAUSE THEY ARE

15   RESPONSIVE TO ISSUES THAT ARE ONLY PRESENT IN THE

16   ITC ACTIONS.  WHO CARES, RIGHT?

17             IN THIS CASE, IN THE NDCA CASE, WE RAN

18   SEARCH TERMS BASED ON RELEVANT ISSUES AND RELEVANT

19   PRODUCTS IN THIS CASE, WE DISCLOSED THOSE SEARCH

20   TERMS TO APPLE.  APPLE HASN'T COMPLAINED ABOUT

21   THEM.

22             WE DID CUSTODIAL PULLS FOR THOSE

23   WITNESSES AND PRODUCED THOSE DOCUMENTS.  THERE'S A

24   SEPARATE TEAM OF LAWYERS WORKING ON THE ITC ACTIONS

25   WITH SEPARATE DOCUMENTS, SEPARATE ISSUES, SOME

1    OVERLAPPING WITNESSES.

2              AND THE FACT THAT --

3              THE COURT:  AND SOME OVERLAPPING ISSUES.

4              MS. KASSABIAN:  I SUSPECT.  I I'M NOT ON

5    THOSE CASES, BUT SUSPECT THERE MAY BE SOME.

6              BUT APPLE IN ITS SUPPLEMENTAL REPLY BRIEF

7    IS, YOU KNOW, SILENT ON THE NOTION OF THE ISSUE OF

8    WHETHER THOSE ADDITIONAL PRODUCTIONS HAVE ANYTHING

9    TO DO WITH THIS CASE.

10             I DIDN'T HAVE A CHANCE IN THE 24 HOURS

11   SINCE I RECEIVED THE SUPPLEMENTAL BRIEF TO PULL

12   THOSE DOCUMENTS AND SEE, BUT THE POINT IS THOSE

13   WERE NOT THE SEARCHES RUN BY THE NDCA TEAM IN THE

14   NDCA ACTION.

15             THE FACT THAT THERE ARE OTHER ISSUES THAT

16   THE WITNESS MIGHT BE RELEVANT TO IN THE ITC CASE IS

17   WHETHER THERE WERE DIFFERENT APPLE PATENTS AT ISSUE

18   AND SOME DIFFERENT PRODUCTS AT ISSUE IS ENTIRELY

19   UNREMARKABLE, AND IT JUST GOES TO SHOW THAT THEY

20   MUST NOT HAVE BEEN ABLE TO FIND ANY EXAMPLES WHERE

21   SAMSUNG PRODUCED DOCUMENTS AFTER THE DEPOSITION IN

22   THE NDCA PRODUCTION BECAUSE THEY RESORTED TO

23   POINTING TO ITC PRODUCTIONS.

24             IT'S CUTE, BUT IT'S INACCURATE AND IT'S

25   NOT A BASIS TO REOPEN AN NDCA DEPOSITION.

1          THE COURT:  ALL RIGHT.

2          ANYTHING FURTHER ON THE ISSUE OF

3     DEPOSITIONS, MS. KASSABIAN?

4          MS. KASSABIAN:  NOT UNLESS YOU HAVE ANY

5     OTHER QUESTIONS, YOUR HONOR.

6          THE COURT:  THANK YOU VERY MUCH.

7          MR. JACOBS, ANY BRIEF REBUTTAL?

8          MR. JACOBS:  NOTHING ABOUT THIS IS CUTE,

9     YOUR HONOR.  IT'S A VERY SERIOUS PROBLEM.     AND

10    THE FRIVOLITY WITH WHICH IT IS TREATED IS ITSELF

11    VERY DISCONCERTING.

12         IN OUR DECLARATIONS WE SOUGHT TO BE JUST

13    AS FACTUAL AS WE COULD BE ABOUT EACH ASPECT OF WHAT

14    WE WERE SEEKING AND WHAT HAD HAPPENED.

15         SO FOR EXAMPLE, MS. KASSABIAN PAINTS WITH

16    A VERY BROAD BRUSH ABOUT THE THOUSANDS OF INVENTOR

17    DOCUMENTS THAT WERE PRODUCED AFTER THEIR

18    DEPOSITIONS.

19         WE RAN OUR DISCLOSED SEARCH TERMS DURING

20    THE DEPOSITION PROCESS FOR THOSE INVENTORS.

21    SAMSUNG ASKED US AFTER THE DEPOSITIONS TO RUN MORE

22    SEARCHES.  AND IN THE SPIRIT OF ACCOMMODATION, WE

23    RAN MORE SEARCH TERMS AND PRODUCED ADDITIONAL

24    DOCUMENTS.

25         THOSE CIRCUMSTANCES ARE VERY DIFFERENT

1    FROM THE CIRCUMSTANCES WE'VE BEEN FACING IN KOREA

2    GETTING DOCUMENTS IN KOREAN MOMENTS BEFORE THE

3    DEPOSITION -- JUST THE OTHER DAY, A DAY BEFORE THE

4    DEPOSITION.

5             WHAT HAPPENED AFTER WE FILED OUR MOTION

6    WAS WE ACTUALLY SAW SAMSUNG GETTING ITS ACT

7    TOGETHER AND GETTING US -- IN THE PERIOD RIGHT

8    AFTER THE MOTION WAS FILED IT LOOKED LIKE WE WERE

9    GOING TO BE OKAY.  IN FACT, WE EVEN TALKED AMONG

10   OURSELVES, MAYBE WE CAN STIPULATE AROUND THIS,

11   MAYBE FILING THE MOTION HAD THE EFFECT WE SAW.

12            AND THEN IT DETERIORATED AGAIN AND THAT'S

13   WHEN WE REALIZED WE NEEDED ADDITIONAL REMEDIAL

14   ASSISTANCE.

15            AND THE CHART THAT WE HAVE GIVEN YOU

16   DOCUMENTS THAT PROCESS.

17            BELIEVE ME, I TOTALLY UNDERSTAND, I

18   SYMPATHIZE, I SHARE YOUR FRUSTRATION.  WE HAVE BEEN

19   TEEING THESE MOTIONS UP IN AS ORDERLY A WAY AS WE

20   CAN DOING EVERYTHING WE CAN ON THE MEET AND CONFER

21   SIDE TO RESOLVE THEM.  HAROLD MCELHINNY COULDN'T BE

22   HERE TODAY BUT HE HAS MET SEVERAL TIMES WITH

23   CHARLIE VERHOVEN.  WE'VE DONE WHAT WE CAN TO TRY TO

24   RESOLVE THIS AMONG OURSELVES.

25            I BELIEVE THAT SEVERAL THINGS ARE GOING

1    ON HERE.  SAMSUNG ITSELF HAS NEVER FIGURED OUT,

2    NOTWITHSTANDING THE LITIGATION ITS IN, HAS NOT

3    INTRODUCED ORDERLY DOCUMENT PRODUCTION PROCESSES

4    INTO ITS LITIGATION SYSTEM.

5            SAMSUNG'S LEGAL STRATEGY IN THIS CASE IS

6    TO MAKE THIS DISCOVERY AS PROLONGED AND DELAYED AS

7    POSSIBLE SO THAT THEY CAN FILE A MOTION WE'VE BEEN

8    WARNING ABOUT SINCE LAST MAY TO MOVE OFF THE TRIAL

9    DATE.

10           WE ARE DOING EVERYTHING WE CAN CONSISTENT

11   WITH EVERY DIRECTION YOU GIVE US TO PUT THIS GROUP

12   OF PEOPLE, INCLUDING YOUR HONOR, IN THE MODE OF

13   HELPING JUDGE KOH GET THIS CASE TO TRIAL BY AUGUST,

14   AND THAT'S BY JULY 31ST, AND THAT'S ALL WE SEEK.

15           THE COURT:  ON THAT SAME POINT, COULD YOU

16   SHARE WITH ME, HAS JUDGE KOH SET ANY LIMITS FOR

17   TRIAL IN TERMS OF THE NUMBER OF HOURS?

18           MR. JACOBS:  YES.

19           THE COURT:  ROUGHLY, I'M NOT GOING HOLD

20   ANYBODY TO IT.

21           MR. JACOBS:  I BELIEVE -- WE ARE VERY

22   CONSCIENCE OF THIS, IT'S A THREE-WEEK TRIAL, CLAIMS

23   AND COUNTERCLAIMS.

24           THE COURT:  ALL RIGHT.

25           SO IF IT'S A THREE-WEEK TRIAL, HOW MANY

1    WITNESSES DO YOU POSSIBLY EXPECT TO TESTIFY?

2            MR. JACOBS:  IT WILL BE A VERY TIGHT,

3    EFFICIENT TRIAL.  IT WILL BE BASED ON THE DOCUMENTS

4    AND THE DEPOSITION TESTIMONY AS INTRODUCED AS

5    EFFICIENTLY AS POSSIBLE.

6            WE WOULD HAVE BOTH AN OPPORTUNITY AND A

7    CHALLENGE IN THIS TRIAL.  THE OPPORTUNITY IS THAT

8    THE EVIDENCE WE'VE DEVELOPED OF SAMSUNG'S

9    INTENTIONAL COPYING, DOWN TO THE VERY FEATURES THAT

10   WE ARE TALKING ABOUT IN THIS DISPUTE, IS MASSIVE.

11   TRACING IT ALL THE WAY THROUGH IS A CHALLENGE.

12           SO IF YOU HAVE A DOCUMENT THAT SAYS DO

13   IT, TRACING IT THROUGH TO SHOW THAT IT WAS DONE AND

14   THAT THERE'S CAUSATION, ET CETERA, THAT IS A BIT OF

15   A CHALLENGE FOR US, BUT IT'S ALSO AN OPPORTUNITY

16   BECAUSE THERE'S NO QUESTION OF HOW THIS ALL

17   HAPPENED.  YOU'VE SEEN SOME DOCUMENTS ALREADY, IT'S

18   QUITE INCULPATORY OF SAMSUNG'S CONDUCT.

19           BUT THAT'S WHAT WE'RE TRYING DO THROUGH

20   THIS DEPOSITION PROCESS IS FIGURE OUT EXACTLY WHAT

21   HAPPENED SO WE CAN TELL THE STORY AT TRIAL IN THE

22   MOST EFFICIENT AND COMPELLING WAY.

23           THE COURT:  WHERE I'M GOING WITH ALL OF

24   THIS IS IF IT'S A THREE-WEEK TRIAL, WE'RE NOT

25   TALKING ABOUT DOZENS AND DOZENS OF WITNESSES.

1           MR. JACOBS:  THAT'S CORRECT.

2           THE COURT:  SO AT THE END OF THE DAY WITH

3      ALL THE DISCOVERY THAT'S BEEN UNLEASHED WE ARE

4      TALKING ABOUT A HANDFUL OF PEOPLE AND A HANDFUL OF

5      DOCUMENTS, JUST LIKE EVERY OTHER CASE IN THIS

6      COURT.

7           SO WHY, EVEN THOUGH YOU HAVE BEEN

8      AUTHORIZED TO TAKE THESE HUNDREDS OF HOURS OF

9      DEPOSITIONS, YOU HAVE BEEN APPEAR TO BE SEEKING RE

10     DEPOSITION OF MANY WITNESSES.

11          WHY WOULD IT MAKE SENSE FOR ME TO UNLEASH

12     THAT WHEN IT WOULD SEEM TO ME THAT THERE MAY -- AT

13     MOST, THERE WOULD BE A HANDFUL OF PEOPLE WHO ARE

14     TRULY IMPORTANT TO YOUR CASE.

15          MR. JACOBS:  I THINK THE BEST ANSWER TO

16     THAT IS WHAT I GAVE EARLIER.

17          WE HAVE AN HOURS LIMIT.  WE HAVE BEEN

18     USING THOSE HOURS EFFICIENTLY.  SO MANY OF THE

19     DEPOSITIONS WE HAVE TAKEN ARE TWO HOURS OF KOREAN

20     LANGUAGE WHICH TRANSLATES TO ONE HOUR OF DEPOSITION

21     TIME.

22          UNDER THE PARTY'S ARRANGEMENT WE ARE

23     AUTHENTICATING THE DOCUMENTS BECAUSE SAMSUNG

24     REFUSED TO STIPULATE TO AUTHENTICATION.  THAT'S THE

25     PRIMARY PURPOSE OF MANY OF THESE DEPOSITIONS TO GET

1   THE DOCUMENTS IN ADMISSIBLE FORM SO THAT WE CAN

2   INTRODUCE THEM AND HAVE SOMEBODY EXPLAIN WHAT THEY

3   ARE ALL ABOUT.

4         I DON'T WANT TO -- WE DO HAVE A HIGHLY

5   CONFIDENTIAL PROTECTIVE ORDER.  I DON'T WANT TO GET

6   TOO MUCH INTO DETAIL, BUT WE LEARNED IMPORTANT AND

7   CULPATORY FACTS AS WE BUILT THE RECORD, INCLUDING A

8   WHOLE OFFICE THAT'S ABOUT THIS WHOLE PROJECT OF

9   COPING APPLE ONLY IN THE LAST COUPLE OF WEEKS.

10        AND SO PART OF OUR STRATEGY AS WE HURDLE

11  OURSELVES AT THE CUTOFF IS TO MAKE SURE WE GET THE

12  RECORD DEVELOPED ON THAT OFFICE.

13        THE COURT:  SO IF I WERE TO AGREE THAT

14  SOME FURTHER DEPOSITIONS WERE APPROPRIATE, WHY

15  WOULDN'T IT MAKE SENSE FOR ME TO SIMPLY SAY YOU

16  KNOW WHAT, YOU CAN TAKE FIVE OF THESE WITNESSES,

17  MAYBE TEN, AND MAYBE YOU CAN TAKE A TOTAL

18  DEPOSITION, THE TOTAL NUMBER OF HOURS FOR THOSE

19  DEPOSITIONS SHALL NOT EXCEED TEN HOURS.

20        WHY NOT FOCUS FURTHER DEPOSITIONS IN THAT

21  WAY?

22        MR. JACOBS:  I THINK I WOULD -- I THINK

23  THAT'S A PERFECTLY PRACTICAL OUTCOME, YOUR HONOR.

24  WE WOULD WORK WITH WHATEVER YOU GAVE US.

25        I THINK IF WE HAD 15, 20, IF IT'S --

1    FIRST OF ALL, UNDERSTAND OUR TRANSLATION OF HOURS

2    FROM KOREAN LANGUAGE INTO ENGLISH IS 2 TO 1.

3            I THINK IF WE HAD 20 HOURS TO DO THAT IN

4    AND TEN WITNESSES, WE COULD WORK WITH THAT.  WE

5    WOULD MAKE THOSE HARD, STRATEGIC CALLS TO MAKE

6    THOSE AS USEFUL AS POSSIBLE.

7            THE COURT:  THANK YOU, MR. JACOBS.

8            MS. KASSABIAN, ANY FINAL POINT?

9            MS. KASSABIAN:  JUST A FEW, YOUR HONOR.

10           AS I SAT IN THE HALL BEFORE COMING IN

11   THIS MORNING I TRIED TO STEP OUT OF MY OWN ROLE AND

12   STEP OUT OF WHAT I IMAGINE APPLE'S ROLE WOULD BE

13   AND THINK ABOUT WHERE YOU MIGHT END UP ON THIS

14   MOTION, AND WHAT YOU JUST SAID IS EXACTLY WHERE I

15   THOUGHT YOU MIGHT GO.

16           THE COURT:  SO ARE YOU SAYING WE ARE OF A

17   LIKE MIND, MS. KASSABIAN?

18           MS. KASSABIAN:  PERHAPS.  I WOULD BE

19   FLATTERED IF YOU THINK SO.

20           BUT IN ANY EVENT, I THINK THAT'S THE

21   RIGHT CALL.  IF THERE'S GOING TO BE AN ORDER HERE

22   AND NOT A DENIAL OF APPLE'S MOTION FOR FAILURE TO

23   LAY THE FOUNDATION, MAKE A SHOWING AND MEET AND

24   CONFER, I THINK A RECIPROCAL ORDER SAYING OKAY,

25   EACH SIDE YOU'VE GOT TO MAKE SOME HARD DECISIONS,

1    PICK THE FIVE PEOPLE YOU REALLY WANT WHOSE

2    DOCUMENTS YOU THINK WERE NOT TIMELY PRODUCED AND

3    TAKE THOSE ADDITIONAL FIVE DEPOSITIONS IN, SAY, TEN

4    HOURS.

5              AND OBVIOUSLY THAT WOULD FACTOR IN THE

6    FACT THAT FOR KOREAN WITNESSES APPLE GETS DOUBLE

7    THAT, BUT SOME OF THESE WITNESSES WILL BE ENGLISH

8    SPEAKING IF THEY CHOOSE TO PUT ON THEIR LIST OF

9    FIVE.

10             SO AGAIN, IF THERE'S GOING TO BE AN

11   ORDER, I THINK THAT'S THE RIGHT CALL.

12             JUST A FEW -- TO THE EXTENT YOUR HONOR

13   WAS PERSUADED BY ANYTHING THAT MR. JACOBS SAID JUST

14   NOW, I JUST WANTED TO REBUT JUST TO SAY THAT

15   APPLE'S TARDY PRODUCTIONS ARE DIFFERENT, DIFFERENT

16   CIRCUMSTANCES, IS ACTUALLY BESIDE THE POINT.

17             THE FACT THAT APPLE JUST DIDN'T UNDERTAKE

18   THE RIGHT SEARCH PARAMETERS IN TERMS OF THE DATE

19   RESTRICTIONS THEY APPLIED IN THE FIRST INSTANCE

20   DOES NOT EXCUSE THE LATE PRODUCTION, AND IT ALSO

21   DOES NOT CHANGE THE PREJUDICE TO SAMSUNG OF NOT

22   HAVING THOSE DOCUMENTS IN TIME FOR THE DEPOSITIONS.

23             I ALSO TAKE ISSUE WITH MR. JACOBS'S CLAIM

24   THAT APPLE HAS DONE EVERYTHING THEY CAN TO RESOLVE

25   THIS ISSUE INCLUDING LEAD COUNSEL MEET AND CONFERS.

1    THAT'S COMPLETELY INCORRECT.

2              NEVER ONCE DURING ANY COUNSEL MEET AND

3    CONFER, AND I'VE ATTENDED THEM ALL IN THE PAST FIVE

4    MONTHS, HAS APPLE EVER MENTIONED IT WANTED TO

5    REOPEN DEPOSITIONS, NOT ONCE.

6              THE VERY FIRST TIME APPLE RAISED THAT

7    ISSUE WAS IN A LETTER IT SENT FRIDAY AFTERNOON,

8    FEBRUARY 23RD RIGHT BEFORE IT FILED ITS REPLY

9    BRIEF.  THAT JUST IS NOT MEANINGFUL MEET AND CONFER

10   BY ANY STRETCH OF THE IMAGINATION.

11             THE COURT:  SHALL WE TURN TO YOUR MOTION?

12             MS. KASSABIAN:  AND YOUR HONOR,

13   SUBMITTED.  YES, THANK YOU, YOUR HONOR.

14             THE COURT:  MS. MAROULIS.

15             MS. MAROULIS:  GOOD MORNING, YOUR HONOR.

16             THE COURT:  GOOD MORNING.

17             MS. MAROULIS:  I WANT TO PICK UP WHERE

18   YOUR HONOR TOUCHED BRIEFLY WHICH IS WE HAVE A TRIAL

19   APPROACHING AND WE ONLY HAVE ABOUT 13 COURT DAYS

20   WHICH IS TRANSLATED TO THREE WEEKS.

21             SO OUR MOTION HERE IS INTENDED TO

22   SIMPLIFY ISSUES FOR TRIAL WHICH IS WHAT OUR PAPER

23   IS FOR.

24             THE CORE ISSUE IN THE DESIGN SIDE OF

25   APPLE'S CASE IS THE SCOPE OF APPLE'S PATENTS.  IT'S

1    GOING TO BE A BIG ISSUE IN TRIAL AND IT HAS BEEN A

2    BIG ISSUE ALREADY.

3           THE RELEVANCE OF OUR CASE CANNOT BE

4    QUESTIONED, AND HERE'S THE BASIC SUMMARY OF WHAT'S

5    GOING ON.  WHEN COMPARING ITS OWN DESIGNS TO

6    SAMSUNG'S PRODUCTS, APPLE READS ITS PATENTS VERY

7    BROADLY AND SAYS THAT NO DIFFERENCES BETWEEN ITS

8    DESIGNS AND SAMSUNG'S PRODUCTS CAN POSSIBLY BE

9    SEEN.

10          THE COURT:  IT'S NOT ATYPICAL OF

11   PATENTEES IN CASES OF THIS NATURE.

12          MS. MAROULIS:  THAT'S TRUE, YOUR HONOR,

13   BUT THERE'S A DIFFERENCE BETWEEN UTILITIES PATENTS

14   AND DESIGN PATENTS AND THEY ARE A LOT LES PRECISE

15   HERE.

16          WHAT APPLE IS DOING IN THEIR MOTION FOR

17   PRELIMINARY INJUNCTION AND IN THE COMPLAINT AND

18   MR. JACOBS IS SAYING HERE TALKING ABOUT ALLEGATIONS

19   OF COPYING, THEY ARE CONSTANTLY SAYING THAT YOUR

20   PRODUCTS ARE THE SAME AS OUR DESIGNS AND THERE'S NO

21   DIFFERENCE.

22          WHEN WE TURN TO THE OTHER SIDE TO THE

23   INVALIDITY SIDE AND PRESENT PRIOR ART THAT'S

24   INCREDIBLY CLOSE IF NOT IDENTICAL TO WHAT APPLE PUT

25   FORWARD HERE IN THE DESIGN PATENTS, THEY SAY

1    THERE'S A HUGE DIFFERENCE BETWEEN THOSE TWO, THE

2    RADIUS OF THE CURVATURE IS DIFFERENT, THE THICKNESS

3    OF THE PENCIL IS DIFFERENT, EVERYTHING WAS

4    DIFFERENT.

5            THE RFA'S THAT WERE PROPOUNDED ARE

6    INTENDED TO PIN THEM DOWN ON THE SCOPE OF THEIR

7    PATENTS.  AND THERE ARE BASICALLY THREE ISSUES THAT

8    ARE RELEVANT TO THIS MOTION.

9            A, ARE THEY RELEVANT TO THE SCOPE OF THE

10   PATENT, WHICH IS GOING TO BE AN IMPORTANT ISSUE IN

11   TRIAL WITH JUDGE KOH.

12           B, WHETHER THEY PROPERLY APPLY LAW TO

13   FACTS AS REQUIRED BY THE PLAIN BLACK LETTER RULE OF

14   RULE 36.

15           AND FINALLY, WHERE APPLE'S MINOR AND

16   BELATED OBJECTIONS OF AMBIGUITY, HYPOTHETICAL

17   QUESTIONS AND BURDEN CAN BE REJECTED.  AND THE

18   ANSWER TO ALL OF THOSE IS YES.

19           SO WITH RESPECT TO RELEVANCE, THAT I WILL

20   NOT BELABOR IT BECAUSE THEY DIDN'T OBJECT TO ACTUAL

21   OBJECTIONS ON RELEVANCE BECAUSE THEY COULDN'T.

22           BASICALLY WHAT IT COMES DOWN TO IS THIS:

23   IF THEY ADMIT AND SAY THAT THESE ARE ESSENTIALLY

24   SIMILAR OR SUBSTANTIALLY THE SAME AS THE TEST

25   REQUIRES, THEY ARE GOING TO HAVE INVALIDITY

1   PROBLEMS.  AND WE ARE GOING TO SHOW ANYTHING

2   RANGING FROM DOUBLE PATENT TO LYING TO THE PATENT

3   OFFICE.

4           IF THEY ADMIT THAT THEY ARE SUBSTANTIALLY

5   NOT THE SAME, AS THEY PROBABLY ARE --

6           THE COURT:  THEN YOU HAVE INFRINGEMENT

7   RIGHTS.

8           MS. MAROULIS:  WE HAVE INFRINGEMENT

9   ISSUES, WHICH IS WHY WE PROPOUNDED THE EXTREMELY

10  NARROW AND TARGETED DISCOVERY.  BECAUSE,

11  YOUR HONOR, DISCOVERY IS NOT A PROCESS ONTO ITSELF.

12          THE COURT:  YOU COULD HAVE FOOLED ME IN

13  THIS CASE.

14          MS. MAROULIS:  IT'S DESIGNED TO LEAD TO

15  AN ORDERLY, SHORT AND PROPERLY PRESENTED TRIAL,

16  WHEN AS YOUR HONOR YOURSELF SAID, WE ARE ONLY GOING

17  TO HAVE THIS MANY WITNESSES TO PUT ON AND THIS MANY

18  DAYS TO DO IT IN.

19          THE SECOND ISSUE IS WHAT THEY SPENT THE

20  BULK OF THEIR OPPOSITION ON WHICH IS, IS THIS

21  CALLED FOR A CONCLUSION OR IS THIS THE PROPER

22  APPLICATION OF LOGICAL FACTS?

23          FIRST OF ALL, WE CITED AMPLE AUTHORITY OF

24  DIFFERENT CASES WHERE THE COURTS APPROVE VERY

25  SIMILAR LAW TO FACTS.

                                                    42

1          IT MIGHT BE THAT SOME OF THE CASES FROM

2     COME FROM A DIFFERENT FIELD OR GENERA.  IT COULD BE

3     POLICE BRUTALITY CASES AND WHAT DOES IT MEAN TO ACT

4     UNDER THE COLOR OF LAW?  WHAT DOES IT MEAN TO

5     ENGAGED IN FIDUCIARY DUTY OR HAVE A DUTY TO INFORM

6     A MEDICAL ESTABLISHMENT OR SOMETHING.

7          BUT THE PRINCIPLE IS THE SAME WHICH IS

8     THERE'S AN APPLICATION OF LAW TO THE FACTS, AND YOU

9     KNOW THE FACTS.

10          HERE WE ARE TALKING ABOUT APPLE AND IT'S

11     OWN PATENTS.  WE ARE NOT TALKING ABOUT SOMEBODY

12     ELSE'S PATENTS, WE'RE NOT TALKING ABOUT

13     HYPOTHETICAL PATENTS.  IT'S NOT AS IF I WOULD COME

14     IN AND DRAW SOME DESIGNS AND SHOW IT TO THE WITNESS

15     AND ARE THEY SIMILAR OR ARE THEY NOT.

16          THESE ARE APPLE'S PATENTS.  AND WHEN

17     APPLE APPLIED FOR THOSE PATENTS TO THE PATENT

18     OFFICE IT HAD TO MAKE AN INTERNAL DETERMINATION.

19     IS THIS NEW?  WELL, I HAVE A BASIS TO STICK A

20     PATENT FROM THE PATENT OFFICE ON THIS RECORD.  AND

21     IT APPARENTLY MADE THAT DETERMINATION.

22          BUT NOW WE'RE ASKING THEM TO MAKE THE

23     SAME ADMISSION IN THE RFA CONTEXT AND THEY ARE

24     SAYING NO, THEY CANNOT DO THAT.

25          AND MORE IMPORTANTLY, APPLE HAS DONE THIS

1    REPEATEDLY, THE VERY COMPARISON THEY SAY THEY

2    CANNOT MAKE IN THE PRELIMINARY INJUNCTION PAPERS

3    AND THE COMPLAINT.

4            IF YOU LOOK AT THE PRELIMINARY INJUNCTION

5    PAPERS, THEY HAVE TESTIMONY OF COOPER WOODRING WHO

6    SAYS THIS DESIGN IS SUBSTANTIALLY THE SAME AS THIS

7    SAMSUNG PRODUCT.  HE GOES THROUGH ALL THE PRODUCTS

8    AND SAYS THEY ARE SUBSTANTIALLY THE SAME.

9            THEY ARE SAYING ESSENTIALLY THE SAME

10   THING IN THEIR COMPLAINT WHEN THEY'RE PUTTING

11   PICTURES TOGETHER AND MAKING CLAIMS.  THEY ARE

12   SAYING THAT EVERY TIME THEY COME INTO YOUR

13   COURTROOM THERE'S ALLEGED COPING.  BASICALLY THEY

14   MADE THE DETERMINATION TO THEMSELVES BUT THEY

15   REFUSE TO STATE IT IN THE ADMISSIBLE BINDING WAY

16   THAT YOU ARE SEEKING.

17           THEIR OTHER OBJECTIONS ARE VARIED BUT

18   NONE OF THEM ARE REALLY PARTICULARLY MERITORIOUS.

19           ONE IS AMBIGUITY.  WITH THE DEFINITIONS

20   THAT WERE PROVIDED, THE FACT THAT THEY KNOW WHAT AN

21   ORDINARY OBSERVER TEST COMES, FROM

22   EGYPTIAN GODDESS.  THEY CANNOT POSSIBLY BE

23   CONFUSED.

24           BUT EQUALLY IMPORTANT, AS THIS COURT

25   PREVIOUSLY NOTED, IF YOU DON'T UNDERSTAND SOMETHING

1    THEN SEEK CLARIFICATION.

2              AND THIS IS SOMETHING WHICH I'M SURE

3    YOUR HONOR HAS BEEN FRUSTRATED WHICH IS THE PARTIES

4    ABILITY TO MEET AND CONFER TO SHORT CIRCUIT SOME OF

5    THESE.

6              WE HAD A MEETING ON THIS ISSUE AND IT WAS

7    TOLD TO US FLATLY THAT NO, WE WILL NOT DO IT.  THEY

8    DIDN'T SAY WE WILL DO IT IF YOU EXPLAINED TO US

9    WHAT YOU MEANT OR WE'LL DO IT IN SOME

10   CIRCUMSTANCES, THEY JUST SAID NO, WE ARE NOT GOING

11   TO DO IT UNDER ANY CIRCUMSTANCES.

12             SO AMBIGUITY IS NOT A REAL OBJECTION.

13             THE COURT:  MS. MAROULIS, LET ME ASK

14   YOU, READING THE CASE LAW UNDER OR APPLYING RULE

15   36, IT SEEMS LIKE ALL OF THESE OBJECTIONS IN THIS

16   DISPUTE ON THIS TOPIC CAN BE BOILED DOWN TO REALLY

17   A SIMPLE QUESTION.

18             IS IT REASONABLE FOR APPLE TO ANSWER

19   THESE QUESTIONS?  CAN APPLE DO SO AFTER A

20   REASONABLE INQUIRY?

21             WHAT ARE YOUR THOUGHTS ON THAT?  DO YOU

22   HAVE ANY GUIDANCE FOR ME, ANY CASES EVEN IN THE

23   CONTEXT OF A PATENT OR NONPATENT?

24             MS. MAROULIS:  YOUR HONOR, IT IS

25   REASONABLE FOR APPLE TO ANSWER BECAUSE THERE ARE

1    CASES THAT SAY THAT TO THE EXTENT YOU CAN CONSULT

2    YOURSELF OR EVEN YOUR EXPERT, WE CITED THE CASE BUT

3    I DO NOT REMEMBER THE NAME IN OUR BRIEF.  YOU CAN

4    FIGURE OUT THE INFORMATION BY KNOWING YOURSELF OR

5    CONSULTING THE EXPERT, THAT'S REASONABLE.

6         THERE'S A CASE THAT YOUR HONOR DECIDED,

7    OBVIOUSLY A DIFFERENT CONTEXT, IT HAD TO DO WITH

8    DOOR MEASUREMENTS.  AND THE POINT WAS THE PARTIES

9    SAID WELL, WE DON'T KNOW BECAUSE IT HAPPENED THREE

10   YEARS AGO.  AND THE ANSWER WAS WELL, YOU CAN GO

11   MEASURE YOUR DOOR NOW AND FIGURE OUT IF SOMETHING

12   CHANGED.

13        SO IT IS REASONABLE FOR APPLE TO SIT DOWN

14   WITH ITS OWN PATENTS LOOK AT THEMSELVES AND SAY, I

15   THINK THIS IS SUBSTANTIALLY THE SAME OR I THINK

16   IT'S NOT SUBSTANTIALLY THE SAME

17        THE COURT:  IS IT REALLY ANALOGOUS FOR ME

18   TO TELL A BURRITO SHOP TO GO BUY ITSELF A TAPE

19   MEASURE AND FIGURE OUT HOW TALL THE SINK IS?  IS

20   THAT REALLY ANALOGOUS TO A SITUATION HERE WHERE YOU

21   ARE ASKING THEM TO BRING IN, ESSENTIALLY, THE

22   ENTIRE LITIGATION TEAM.

23        LET'S BE HONEST HOW THESE THINGS ARE

24   REALLY ANSWERED AND EVALUATE DOZENS AND DOZENS OF

25   REFERENCES FOR SIMILARITY.

1          MS. MAROULIS:  YOUR HONOR, THIS GOES TO

2     THE ISSUE OF BURDEN, AND THEY RAISED THE ISSUE OF

3     BURDEN.  BUT I BELIEVE THAT APPLE IS ILL SUITED TO

4     COMPLAIN ABOUT THE BURDEN BECAUSE OF THE KIND OF

5     BURDEN THEY ARE IMPOSING ON SAMSUNG QUITE FRANKLY.

6          THEY SERVED 16 OR 1700 RFA'S, THOUSANDS

7     OF DOCUMENT REQUESTS, PROPOUNDED A HUNDRED NOTICES

8     OF DEPOSITIONS.

9          A WEEK OR TWO AFTER THEY CAME TO YOUR

10    COURTROOM SEEKING TO QUASH THE SINGLE NOTICE OF

11    MOTION, THE 30(B)(6) RULE, THEY SERVED EIGHT MORE

12    NOTICES AND NOW WE HAVE 300 TOPICS WE RESPONDED TO.

13         SO YES, IT'S A LOT MORE BURDENSOME THAN

14    ASKING THE BURRITO SHOP TO MEASURE ITS DOOR, BUT

15    THIS IS A MUCH BIGGER LITIGANT WITH A LOT MORE

16    RESOURCES WHO, BY THEIR OWN CHOICE, UNLEASHED THE

17    WAVE OF ENORMOUS DISCOVERY ON THE OTHER PARTY AND

18    ON THE COURT BECAUSE ITS DEMANDS AND INSATIABLE

19    REQUESTS ARE LEADING US TO BE HERE.

20         THAT'S PARTLY WHAT THE FIRST MOTION IS

21    ABOUT AND MANY OTHERS THAT CAME BEFORE YOU OR WILL

22    COME BEFORE YOU AGAIN.

23         THERE ARE A COUPLE OF CASES IN OUR PAPERS

24    THAT, I BELIEVE IT'S THE JOVANOVICH CASE THAT'S

25    MORE CLOSELY ALIGNED.  IT'S A PATENT CASE AND I

1      THINK THE COURT SAID THAT IT'S APPROPRIATE TO APPLY

2      THE CLAIMS SCOPE TO FACTS.

3              SO THE QUESTION WAS WHETHER YOU CAN MAKE

4      AN ADMISSION ABOUT WHETHER SOMETHING IS PRIOR ART,

5      AND THE COURT SAID YES, YOU COULD.

6              THE COURT:  SO -- AND I APPRECIATE YOUR

7      HIGHLIGHTING THE DIFFERENCE BETWEEN DESIGNS UTILITY

8      PATENTS HERE.

9              LET'S ASSUME WE ARE TALKING ABOUT A

10     UTILITY PATENT FOR THE MOMENT.  I UNDERSTAND WE'RE

11     NOT, BUT LET'S ASSUME THAT WE ARE.

12             DO YOU BELIEVE THAT RULE 36 AUTHORIZES A

13     PARTY LIKE SAMSUNG TO SAY, TELL ME YES OR NO, ADMIT

14     OR DENY WHETHER THIS LIMITATION IS DISCLOSED IN

15     THIS PRIOR ART REFERENCE.

16             MS. MAROULIS:  YOUR HONOR, THERE'S

17     CERTAINLY CASES SUPPORTING A PROPOSITION THAT YOU

18     CAN PROPOUND AN RFA SAYING, WAS THIS LIMITATION --

19     DOES THIS APPEAR IN THE PRIOR ART.  OR THE MORE

20     COMMON VARIETY IS, WAS THIS PARTICULAR LIMITATION

21     KNOWN BEFORE A CRITICAL DATE?  BECAUSE THAT'S MORE

22     FACTUAL, SOMETHING KNOWN EVEN THOUGH IT LEADS

23     ULTIMATELY TO INVALIDITY.

24             BUT I WANT TO MAKE SURE I ANSWER YOUR

25     QUESTION THAT BRINGS US BACK TO THE DESIGN PATENTS.

1               AND THE DESIGN PATENTS, WHY THIS IS KIND

2      OF A DIFFERENT BREED IN ITS OWN RIGHT.  THE

3      ORDINARY OBSERVER TESTS IN EGYPTIAN GODDESS

4      BASICALLY PRESUPPOSES YOU CAN LOOK AT THE DESIGN IN

5      THE PRODUCT AND COMPARE THEM.  SOMETIMES IT'S DONE

6      BY SOMEONE LIKE MR. WOODRING OR OUR EXPERT

7      MR. SHERMAN, OR IT CAN POTENTIALLY BE DONE NOT BY

8      AN EXPERT.

9               THERE'S NO BRIGHT LINE RULE THERE, AND

10     UNFORTUNATELY THE DESIGN IS NOT NEARLY AS DEVELOPED

11     AS THE UTILITY, SO WE HAVE LESS PRECEDENT TO FALL

12     BACK ON THAT.

13              BUT WHAT IS CLEAR IS THESE ARE PICTURES,

14     THERE'S NO SPECIFIC CLAIM.  SO ONE OF THE ARGUMENTS

15     IS WELL, WE DON'T KNOW WHICH CLAIM YOU WANT US TO

16     COMPARE; THERE'S NO CLAIMS, RIGHT.  THERE'S ONE

17     CLAIM AND IT BASICALLY GOES BACK TO THE PICTURE.

18              AND WHAT WE ARE TRYING TO SHOW HERE IS

19     THAT APPLE HAS A HUGE DESIGN PORTFOLIO AND IT

20     PATENTED ITS DESIGNS FROM EVERY WHICH WAY, AND SOME

21     OF THESE DESIGNS QUITE FRANKLY, SOME OF THE PATENTS

22     ARE OVERLAPPING.

23              SO THEY ARE TRYING TO DISTANCE THEMSELVES

24     AND ONLY FOCUS THE COURT ON THE HANDFUL OF PATENTS

25     IN THIS CASE, BUT THAT'S NOT PROPER.

49

1          AND IN PART BECAUSE WHEN WE DO CLAIMS

2    CONSTRUCTION IN UTILITY PATENTS, WE LOOK AT

3    INTRINSIC EVIDENCE, EXTRINSIC, AND IT'S A DIFFERENT

4    PROCESS OF CONSTRUING CLAIMS AND DESIGN CONCEPTS.

5          AND WE NEED TO A, EXCLUDE EVERYTHING

6    THAT'S PRIOR ART; AND B, TAKE OUT FUNCTIONALITY.

7    SO IT'S A SLIGHTLY DIFFERENT ANALYSIS.

8          BUT TO GO BACK TO YOUR HONOR'S QUESTION,

9    YES, THERE ARE CASES THAT SUPPORT THE PROPOSITION

10   YOU CAN ADMIT OR DENY SOMETHING IS OR IS NOT PRIOR

11   ART.

12          THE COURT:  ALL RIGHT.

13          NOW LET'S ASSUME FOR THE MOMENT THAT I

14   ORDER APPLE TO RESPOND TO YOUR RFA'S AND THE

15   RESPONSE BACK TO EACH OF THESE DOZENS OF PAIRS, IS

16   HOW I'VE LOOKED AT IT ANYWAY, IS DENY, DENY, DENY,

17   DENY, OKAY.

18          THE CONSEQUENCE FOR THAT DENIAL, EXPLAIN

19   TO ME THE NEXT STEP.  I'M TRYING TO THINK A MOVE OR

20   TWO AHEAD HERE.  WHERE DOES IT GO IF THEY COME BACK

21   AND HIT YOU ABOUT A BUNCH OF DENIALS?

22          MS. MAROULIS:  SO IF THEY ARE SAYING THE

23   TWO DESIGNS ARE NOT SUBSTANTIALLY THE SAME AND WE

24   CAREFULLY COMPARED THEM --

25          THE COURT:  I SUSPECTED THAT WASN'T BY

1    ACCIDENT.

2              MS. MAROULIS:  YES, YOUR HONOR.

3              SO IF -- THERE ARE TWO PATENTS THAT TO US

4    LOOK IDENTICAL, AND THEY'RE SAYING THEY ARE

5    COMPLETELY DIFFERENT.  THE DIFFERENCE BETWEEN

6    SAMSUNG'S PRODUCT AND EITHER OF THOSE TWO PATENTS

7    IS TREMENDOUS.

8              THIS IS SOMETHING THAT WE CAN TAKE TO

9    JUDGE KOH ON SUMMARY JUDGEMENT OR WE CAN TAKE IT TO

10   THE JURY AT TRIAL DEPENDING HOW THAT DEVELOPS WITH

11   THE DESIGN PATENT SIDE OF THINGS.

12             THIS IS THE NARROWING WE WERE TALKING

13   ABOUT.  AND NOT NECESSARILY THAT WE ARE GOING TO

14   TAKE ALL HUNDRED PAIRS, BUT THERE COULD BE THREE OR

15   FOUR PAIRS THAT COULD BE DISPOSITIVE OF THIS CASE.

16             JUST TO MAKE SURE I ROUNDED UP ALL THE

17   POINTS, ANOTHER OBJECTION THEY RAISE WAS THAT THIS

18   IS THE HYPOTHETICAL QUESTION.  AND IN FACT IT'S NOT

19   A HYPOTHETICAL QUESTION.  THE CASES APPLE RELIES ON

20   HAVE TRUE HYPOTHETICALS.

21             FOR EXAMPLE, THERE WAS A

22   GODIVA CHOCOLATIER CASE WHERE THE QUESTION WAS --

23   INVOLVED A HYPOTHETICAL RETAIL AND A HYPOTHETICAL

24   CUSTOMER.  OBVIOUSLY APPLE IS A REAL COMPANY.

25             THE COURT:  SO YOU'RE NOT MAKING UP

                                                          51

1    PATENTS HERE, YOU ARE POINTING TO THE ASSERTED

2    PATENT AND OTHER --

3              MS. MAROULIS:  OTHER PATENTS OWNED BY

4    APPLE, NOT JUST ANY PATENT.

5              THE COURT:  AND THEY ARE IN THE

6    PORTFOLIO.

7              MS. MAROULIS:  EXACTLY.

8              THAT'S AN IMPORTANT DISTINCTION BECAUSE

9    IF IT'S ANOTHER PATENT, THEY POTENTIALLY COULD HAVE

10   HAD AN ISSUE SAYING IT'S BEYOND OUR INFORMATION, WE

11   DON'T HAVE ENOUGH INFORMATION TO ANSWER.

12             BUT BEFORE YOU APPLY FOR ANY PATENT OR

13   UTILITY OR DESIGN YOU HAVE TO HAVE GOOD FAITH THAT

14   THE PATENT IS NEW AND UNIQUE AND COME FROM

15   SOMETHING BEFORE NOT FROM SOMEONE ELSE.

16             SO THAT PRETTY MUCH IS THE SUM TOTAL OF

17   THE ARGUMENTS.  IT'S A SIMPLE BUT VERY IMPORTANT

18   MOTION, YOUR HONOR.

19             I WILL RESERVE SOME TIME FOR REBUTTAL.

20             THE COURT:  ALL RIGHT.  THANK YOU.

21             MR. JACOBS.

22             MR. JACOBS:  YOUR HONOR, I WOULD LIKE TO

23   START WITH THE DECISIONAL LAW BECAUSE WE HAVE A

24   DECISION FROM JUDGE ILLSTON THAT I THINK IS QUITE

25   ON POINT AND TILTS VERY MUCH AGAINST THE USE OF

1    RFA'S FOR THIS KIND OF PURPOSE.

2              SO JUST IN CASE YOU HADN'T HAD A CHANCE

3    TO LOOK AT IT, THIS IS THE GEM ACQUISITION CO. CASE

4    FROM 2010.

5              AND AT THE END OF THAT DECISION,

6    JUDGE ILLSTON ACTUALLY DECIDED TWO THINGS THAT ARE

7    RELEVANT TO THIS DISPUTE.

8              ONE IS THAT A CONTRACT PROVISION AS

9    APPLIED TO, YOU KNOW, WHAT DOES THIS CONTRACT

10   PROVISION MEAN IN LIGHT OF THE EVIDENCE?  AND THE

11   ADMISSION DIRECTED TO THAT WAS A REQUEST FOR A

12   LEGAL CONCLUSION.

13             OF COURSE THE ARGUMENT WOULD HAVE BEEN

14   JUST THE SAME, LOOK, YOU KNOW WHAT YOU THINK THE

15   CONTRACT MEANT, ANSWER THE QUESTION.  WHAT DO YOU

16   THINK THE CONTRACT MEANS?

17             BUT SHE SAID NO, THAT'S NOT A PROPER

18   SUBJECT FOR AN RFA.

19             AND THEN PERHAPS EVEN MORE IMPORTANTLY,

20   GIVEN THE WAY SAMSUNG HAS KEYED UP THIS MOTION,

21   IT'S ALL ABOUT THE TRIAL AND WHAT THEY WANT TO

22   PROVE AT TRIAL, JUDGE ILLSTON SAID A REQUEST FOR

23   ADMISSION SHOULD NOT BE USED TO ESTABLISH FACTS

24   WHICH ARE OBVIOUSLY IN DISPUTE.

25             SO WHAT SAMSUNG HAS DONE IS USED THE FACT

1    THAT RFA'S ARE UNLIMITED TO ESSENTIALLY TRY TO GET

2    OUR LEGAL POSITION ON HOW OUR ENTIRE DESIGN PATENT

3    PORTFOLIO AS IT RELATED TO THE DESIGN PATENTS IN

4    SUIT.

5              HOW DOES IT ALL FIT TOGETHER?

6              IT'S A COMPLICATED QUESTION.  THEY IGNORE

7    MANY OF THE COMPLICATIONS.  MANY OF THE DESIGN

8    PATENTS HAVE THE SAME FILING DATE.

9              SO THEY ARE IN THE SENSE DIVISIONALS OF

10   EACH OTHER.  SO WHAT DOES IT MEAN FOR US TO ADMIT

11   THAT THEY ARE SUBSTANTIALLY THE SAME DESIGN WHEN

12   THEY HAVE THE SAME FILING DATE?

13             THE COURT:  SO WHY ADMIT THAT FACT AND

14   THEN ARGUE THE LAW IN RESPONSE TO AN APPROPRIATE

15   MOTION THAT SAMSUNG WOULD BRING?

16             MR. JACOBS:  BECAUSE THEN YOU ARE BEING

17   ASKED TO PUT THE WHOLE SPECTRUM OF DESIGN PATENTS

18   AGAINST THE WALL IN THIS CASE AND SAY, THIS IS

19   SUBSTANTIALLY THE SAME, THIS IS NOT.

20             AND THAT IS VERY MUCH A QUESTION THAT IS

21   GOING TO BE INFORMED BY PROGRESS OF THE LITIGATION.

22             WE ALREADY HAVE SOME GUIDANCE FROM

23   JUDGE KOH IN THE PRELIMINARY INJUNCTION CONTEXT OF

24   ABOUT WHAT IS SUBSTANTIALLY THE SAME AND WHAT IS

25   NOT.

1          BUT IT'S ULTIMATELY -- I THINK OUR USUAL

2     LEGAL CATEGORIES HERE DON'T REALLY APPLY TO THIS.

3     IT'S VERY MUCH A, WHAT DOES THE FACT FINDER THINK

4     OF THIS WHEN THE FACT FINDER IS PRESENTED WITH THE

5     ARRAY OF EVIDENCE?

6          IN THE CONTEXT IN WHICH THE ARRAY OF

7     EVIDENCE IS PRESENTED, IT'S ONE OF THOSE ULTIMATE

8     TRIAL ISSUES.  TAKE IN ALL OF THIS INFORMATION

9     LADIES AND GENTLEMEN AND YOU TELL US, IS THIS

10    DESIGN OF THE SAMSUNG PHONE SUBSTANTIALLY SIMILAR

11    TO THE DESIGN CAPTURED BY THIS DESIGN PATENT?

12          TAKING INTO THE ACCOUNT THE COMMERCIAL

13    SUCCESS OF THE IPHONE, IS THIS DESIGN PATENT REALLY

14    RENDERED INVALID?  THE APPLE DESIGN PATENT REALLY

15    RENDERED INVALID BY THIS PIECE OF PUTATIVE PRIOR

16    ART?

17          THE COURT:  BUT THEY ARE NOT REALLY

18    ASKING ABOUT WHAT YOU THINK THE FACT FINDER WILL

19    FIND, THEY ARE ASKING WHAT YOU THINK, RIGHT?

20          SO TO USE YOUR LAST EXAMPLE, WHY NOT

21    SIMPLY DENY IT?

22          MR. JACOBS:  WE'VE PAUSED ON THAT.  WHY

23    NOT JUST DENY, DENY.  THEY HAVE DONE THE PAIR THING

24    AND IT'S TWO HUNDRED -- HOW MANY COMPARISONS 286 --

25    226 COMPARISONS.  SO THE BURDEN HERE IS A HUGE

1    PROBLEM.

2              LET ME BACK UP A SECOND.  IF THEY HAD

3    SAID LOOK, HERE ARE 10 LEADING PRIOR ART REFERENCES

4    TELL US ADMIT/DENY IF YOU THINK THIS IS

5    SUBSTANTIALLY THE SAME DESIGN.

6              WELL, THAT IS THE ANALYSIS WE WILL HAVE

7    TO DO, THAT WOULD HAVE BEEN A DIFFERENT QUESTION.

8              THIS IS THE INTERNALS OF THE APPLE PATENT

9    PORTFOLIO AND THE ARCANE OF APPLYING FOR DESIGN

10   PATENTS IN THE PTO WHETHER YOU CAN GET A DESIGN

11   PATENT ON THE IMPROVEMENT OF A DESIGN EVEN IF THAT

12   IMPROVEMENT IS VERY SIMILAR TO THE ORIGINAL DESIGN.

13             SO THEY ARE ASKING US TO MAKE SOME LEGAL,

14   WHAT ARE I THINK ARE LEGAL CONCLUSIONS ABOUT THE

15   DESIGN PATENTS IN THIS LITIGATION THAT MIGHT HAVE

16   AN IMPACT ON DOWNSTREAM LITIGATION BECAUSE THEY ARE

17   BEING ASKED TO TAKE THIS DESIGN PATENT WHERE THIS

18   ONE OVER HERE, B IS NOT IN THIS CASE, AND TELL US

19   WHETHER B IS SUBSTANTIALLY SIMILAR TO A IN ORDER TO

20   CATCH US IN INCONSISTENCIES.  THAT JUST STRIKES US

21   AS AN INVASION OF THE PURPOSE OF RFA'S.

22             ACCORDING TO JUDGE ILLSTON'S DECISION, I

23   THINK THE RIGHT WAY TO THINK ABOUT RFA'S, THEY

24   REALLY AREN'T DESIGNED TO MAKE LIFE MORE

25   COMPLICATED FOR EVERYBODY, THEY ARE DESIGNED TO

1    SIMPLIFY LIFE.

2         WE HAVE PROPOUNDED A LOT OF RFA'S BECAUSE

3    WE ARE TRYING GET THESE DOCUMENTS AUTHENTICATED.

4    THE 30(B)(6) NOTICE YOU REFERRED TO, THOSE ARE

5    TOPIC-BY-TOPIC.  TELL US ABOUT THIS DOCUMENT

6    BECAUSE WE ASKED WITNESS WHOSE NAME IS ON THE

7    DOCUMENT AND THE WITNESS SAYS, I DON'T KNOW

8    ANYTHING ABOUT IT.

9         SO THAT'S WHAT'S GOING ON WITH OUR USE OF

10   RFA'S.  AND WITH THE SUPPOSED BURDEN I THINK WE

11   COUNT THEM AS A THOUSAND MORE RFA'S THAN WE DO, SO

12   WE ARE LOSING THAT ARM'S RACE.

13        I THINK I COME BACK TO JUDGE ILLSTON'S

14   DECISION.  I THINK WE HAVE VERY STRONG GUIDANCE IN

15   THIS DISTRICT ON PROPER USE OF RFA'S.

16        THE COURT:  ALL RIGHT.  THANK YOU.

17        MS. MAROULIS, ANY REBUTTAL?

18        MS. MAROULIS:  YES, YOUR HONOR.

19   JUDGE ILLSTON'S CASE DOES NOT APPLY TO THE

20   SITUATION HERE.  JUDGE ILLSTON'S CASE, SHE RULED

21   THAT CONTRACTURAL INTERPRETATION OR -- WHAT THE

22   INTERPRETATION IS WAS NOT A PROPER DECISION.

23   HERE WE ARE NOT ACTUALLY ASKING APPLE'S VIEW

24   ON WHAT THE STANDARD IS.  WE KNOW WHAT THE STANDARD

25   IS, IT'S IN EGYPTIAN GODDESS AND WAS ADOPTED BY

57

1    JUDGE KOH.  WE DON'T NEED THEM TO TELL US WHAT THAT

2    IS.

3           WHAT WE'RE ASKING FOR IS SIMILAR TO WHAT

4    THEY ARE ASKING LOTS OF OUR WITNESSES IN

5    DEPOSITION.  WHAT APPLE IS DOING IS THEY ARE

6    PUTTING IN FRONT OF SAMSUNG WITNESSES TWO PHONES,

7    MOST OF THE WITNESSES HAVE NEVER SEEN THE PHONE,

8    AND THEY SAY HEY, IS THIS SIMILAR?  IS THIS SIMILAR

9    TO THAT?

10          THAT'S WHAT THEY ARE DOING IN

11   DEPOSITIONS, BECAUSE FOR THEIR PURPOSES APPLE IS

12   FINDING THIS RELEVANT, RIGHT.

13          WHEN THE SHOE IS ON THE OTHER FOOT AND

14   THEY ARE ASKED TO COMMENT ON THEIR OWN PATENTS IN A

15   SIMILAR CONTEXT, SOMEHOW IT'S BOTH BURDENSOME AND

16   INAPPROPRIATE LEGAL CONCLUSION.

17          INCIDENTALLY, THE 10 PATENTS OFFERED THAT

18   CAME HERE WAS NOT OFFERED DURING THE LEAD COUNSEL

19   MEET AND CONFER OR ANY OTHER MEET AND CONFER.

20   THAT'S NOT GOING TO BE SUFFICIENT, BUT THAT'S NOT

21   SOMETHING WE EVER HEARD BEFORE AND THAT'S PART OF

22   THE PROBLEM HERE.

23          AND THEN FINALLY, YOUR HONOR, I WANTED TO

24   HIGHLIGHT ONE OF THE 1900 OR 1600 RFA'S THAT APPLE

25   SERVED ON US, AND BASICALLY THEY ARE ASKING SAMSUNG

1    TO ADMIT THAT PMB, PARTICULAR BASEBAND CHIP,

2    SUBSTANTIALLY EMBODIES CERTAIN PATENTS AS THAT TERM

3    IS USED IN THE <u>QUANTA COMPUTER</u> CASE.

4         SO THEY ARE PROPOUNDING RFA'S THAT

5    ACTUALLY HAVE LEGAL CASES IN THEM.  AND AT THE SAME

6    TIME THEY ARE SAYING THIS IS INAPPROPRIATE AND

7    BURDENSOME.

8         AND AGAIN, I RETURN TO THE QUESTION OF

9    BURDEN WHICH IS IN SOME CASES IT WOULD BE

10   BURDENSOME, IN THIS CASE APPLE SHOULD BE HELD TO A

11   DIFFERENT STANDARD THAT A LOT OF LITIGANTS IN THESE

12   POLICE BRUTALITY CASES OR MEDICAL RECORDS CASES.

13        AND IN FACT IN THEIR OPPOSITION BRIEF

14   THEY ADMIT THAT THE <u>GRIMES</u> CASE AND THE OTHER CASE

15   THAT WE CITE ARE APPROPRIATE RFA'S, THEY JUST SAY

16   THE SCOPE OF THEM IS DIFFERENT, WHICH IS TWO OR

17   THREE RFA'S VERSUS A HUNDRED.

18        BUT THAT IS A DIFFERENCE IN LITIGANTS IN

19   THEIR STATUTE AS WELL.

20        THE COURT:  ALL RIGHT.  THANK YOU.

21        MR. JACOBS:  REALLY BRIEFLY, YOUR HONOR.

22   I REALIZE I DIDN'T ANSWER YOUR QUESTION.  YOU ASKED

23   ABOUT DENIAL.

24        AND WHAT'S LURKING IN THIS QUESTION IS

25   WHAT IS THE LEGAL IMPACT OF A DENIAL OF AN RFA.

1    AND THAT'S WHY WE DIDN'T JUST DENY AND WE DECIDED

2    TO CONFRONT THIS FRONTALLY AND SAY THESE RFA'S ARE

3    APPROPRIATE.

4              THE COURT:  WHAT IS THE LEGAL --

5              MR. JACOBS:  WELL, IN SOME CASES THEY SAY

6    RFA'S ARE ADMISSIBLE, BUT THAT'S NOT SOMETHING I

7    WOULD BET APPLE'S DESIGN PATENT PORTFOLIO ON.

8              THE COURT:  ALL RIGHT.  THE MOTION IS

9    SUBMITTED.

10             I APPRECIATE YOUR ARGUMENTS TODAY.  YOU

11   WILL HAVE YOUR ORDER SHORTLY.

12             (WHEREUPON, THE PROCEEDINGS IN THIS

13   MATTER WERE CONCLUDED.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9   REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22            _____
             SUMMER A. FISHER, CSR, CRR
23            CERTIFICATE NUMBER 13185

24

25