# EXHIBIT 1

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100

9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for Defendants,
   SAMSUNG ELECTRONICS CO., LTD.,
14 SAMSUNG ELECTRONICS AMERICA, INC.
   and SAMSUNG TELECOMMUNICATIONS
15 AMERICA, LLC

16                        UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 | APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK
19 |     Plaintiff,                        | **SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER**
20 |     vs.                               |
21 | SAMSUNG ELECTRONICS CO., LTD., a      | Date: March 27, 2012
   | Korean business entity; SAMSUNG       | Time: 10:00 a.m.
22 | ELECTRONICS AMERICA, INC., a New      | Place: Courtroom 5, 4th Floor
   | York corporation; SAMSUNG             | Judge: Hon. Paul S. Grewal
23 | TELECOMMUNICATIONS AMERICA,
   | LLC, a Delaware limited liability company,
24 |
   |     Defendants.
25

26
27                              **FILED UNDER SEAL**
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I. APPLE MISAPPREHENDS THE REQUISITE STANDARD FOR PROTECTION OF APEX WITNESSES FROM UNWARRANTED DEPOSITIONS ................................. 3

II. APPLE HAS NOT SATISFIED THE REQUIREMENTS FOR AN APEX DEPOSITION OF ANY OF THE EXECUTIVES IT SEEKS. ............................................ 3

    A. Apple Seeks To Depose CEO Gee Sung Choi Based On Nothing More Than His Titles And Generalized Comments Regarding Unrelated Products. .......... 5

    B. Apple Should Not Be Permitted To Depose President Jong Kyun Shin Based On Generalized Comments Attributed To Him And E-mails Written By Lower Level Employees. ................................................................................. 8

    C. Apple's Argument That Executive Vice President Won-Pyo Hong Should Be Deposed Merely Because His Team Developed The Products At Issue Must Fail ............................................................................................................ 10

    D. Apple Should Not Be Permitted to Depose Executive Vice President Seunghwan Cho About Unaccused Products And Features .................................. 11

    E. Permitting the Depositions of CEO Dale Sohn and CFO Joseph Cheong Merely Because They Signed Financial Forms Would Eviscerate The Apex Doctrine. ............................................................................................................. 12

III. APPLE'S ATTEMPT TO SHIELD ITS OWN EXECUTIVES FROM DEPOSITION FURTHER UNDERMINES ITS ARGUMENTS ..................................... 13

IV. SAMSUNG WAS REQUIRED TO MOVE FOR A PROTECTIVE ORDER WHILE APPLE ELECTED TO FILE AN UNNECESSARY MOTION TO COMPEL ................................................................................................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Affinity Labs of Texas v. Apple, Inc.*,
   2011 WL 1753982 (N.D. Cal. May 9, 2011) ............................................................... 6, 9

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
   2007 WL 205067 (N.D. Cal. 2007) ............................................................................. 3, 4

*Doble v. Mega Life and Health Ins. Co.*,
   2010 WL 1998904 (N.D. Cal. May 18, 2010) ................................................................ 8

*Dobson v. Twin City Fire Ins. Co.*,
   2011 WL 6179154 (C.D. Cal. Dec. 12, 2011) ................................................................ 4

*Genentech, Inc. v. Trustees of Univ. of Penn.*,
   2011 WL 7074210 (N.D. Cal. Sep. 19, 2011) ............................................................... 15

*In re Google Litig.*,
   2011 WL 4985279 (N.D. Cal. Oct. 19, 2011) ................................................................. 4

*Groupion, LLC v. Groupon, Inc.*,
   2012 WL 359699 (N.D. Cal. Feb. 2, 2012) ..................................................................... 9

*Kintsley v. City & County of San Francisco*,
   2009 WL 412458 (N.D. Cal. Feb. 17, 2009) ................................................................. 14

*Mehmet v. PayPal, Inc.*,
   2009 WL 921637 (N.D. Cal. April 3, 2009) ................................................................... 3

*Rodrigues v. Barrita, Inc.*,
   2011 WL 5854397 (N.D. Cal. Nov. 21, 2011) ............................................................... 15

*Rolscreen Co. v. Pella Prods. Of St. Louis, Inc.*,
   145 F.R.D. 92 (S.D. Iowa 1992) ...................................................................................... 4

*Vieste, LLC v. Hill Redwood Dev.*,
   2011 WL 2181200 (N.D. Cal. June 3, 2011) ................................................................ 14

*WebSideStory, Inc. v. NetRatings, Inc.*,
   2007 WL 1120567 (S.D. Cal. April 6, 2007) ................................................................ 10

## Statutes

18 U.S.C. § 1350 ................................................................................................................... 12

Fed. R. Civ. P. 37(d)(1)(A)(i) and 37(d)(2) .......................................................................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In its opposition papers, Apple ignores the very purpose of the "apex rule," which serves to shield high-ranging executives from unnecessary and harassing depositions. Not only does the evidence on which Apple relies fail to establish the "key roles" these executives allegedly played, but Apple misapprehends the very standard under which these issues are adjudicated.

As a result of Samsung's decision to withdraw its objections to five apex executives initially identified in Apple's Motion to Compel, coupled with Apple's belated agreement to withdraw its notices to three more executives, there are now just six of Samsung's highest-ranking executives at issue in both Apple's motion to compel and Samsung's protective order motion – four employed by Samsung Electronics Corporation ("SEC") and two employed by Samsung Telecommunications America ("STA"). Contrary to Apple's claims that the four high-ranking SEC witnesses were uniquely instrumental in the development of the accused products and features, the totality of the evidence demonstrates just the opposite: these executives were far removed from the design and development of the products at issue, and thus, have no unique knowledge of the granular, fact-intensive issues in this case. Similarly, Apple has failed to demonstrate that the two STA executives have any more knowledge regarding STA's finances than the lower level employees and Rule 30(b)(6) witnesses Apple has already deposed.

Moreover, Apple's opposition brief provides *no* plausible justification for its systematic failure to depose lower level employees regarding the issues and documents that supposedly justify these apex depositions. Having failed to pursue these avenues, Apple cannot now claim that depositions of the apex executives are the *only* means by which Apple can obtain relevant discovery. Because Samsung has demonstrated good cause under Federal Rule of Civil Procedure 26(c), Samsung's motion for a protective order should be granted.

## STATEMENT OF FACTS

To expedite this Court's review of the parties' cross-motions, Samsung hereby refers to and incorporates herein by reference its Statements of Facts from its Motion for Protective Order Regarding Certain Samsung Apex Executives (Dkt No. 754) ("MPO") and Opposition to Apple's

Motion to Compel Apex Witnesses (Dkt. No. 773) ("Samsung Opp."). Samsung will include in this reply brief only the additional facts necessary for the Court to decide these motions.

### Apple's 80+ Depositions Taken To Date

As Samsung highlighted in its MPO, Apple noticed nearly 100 depositions of current or former Samsung employees (MPO at 1-2.) Now, at the end of fact discovery, Apple has taken 84 depositions totaling nearly 200 hours. (Declaration of Rachel Herrick Kassabian in Support of Samsung's Reply in Support of its Motion for a Protective Order ("Kassabian Reply Decl.") ¶ 2.) In addition, Apple is taking up to 25 hours of additional deposition time with nine of these 84 witnesses next week. (*Id.* Ex. I.)

### Apple's Repeated Refusals To Discuss Reasonable Limitations On Apex Discovery

Between January 5, 2012 (when Samsung first raised its apex objections) and the date of this filing, Samsung has continued to narrow its apex objections down from 23 to 17, to 14, to 10, to 9 executives. (Kassabian Reply Decl. ¶ 3.) By contrast, Apple did not make a single concession on these issues until March 12, when Apple finally offered its first compromise, electing to forego depositions of three of the remaining nine apex executives at issue in these cross-motions—Jaewan Chi, Executive Vice President in SEC's Intellectual Property Center; Heonbae Kim, Executive Vice President of the Korea R&D Team of Mobile Communications for SEC; and Dong Jin Koh, Executive Vice President of the Technology Strategy Team of Mobile Communications for SEC. (Kassabian Reply Decl. Ex. A.) Apple continues to press for the depositions of Samsung's most senior executives, including CEO Gee Sung Choi and President Jong Kyun Shin.

### ARGUMENT

Apple's Opposition (Dkt. 799) fails to rebut Samsung's arguments that these depositions are unwarranted. If anything, it lays plain the illegitimacy of Apple's efforts to cherry-pick high-ranking executives for deposition. This Court should rebuff Apple's efforts because (1) the information sought from these executives is not unique, first-hand, and non-repetitive; and (2) Apple has not exhausted efforts to obtain information regarding the disputed issues through other less intrusive means of discovery.

## I. APPLE MISAPPREHENDS THE REQUISITE STANDARD FOR PROTECTION OF APEX WITNESSES FROM UNWARRANTED DEPOSITIONS

In arguing that Samsung has "fail[ed] to establish that the depositions would, in fact, severely burden or harass Samsung," Apple Opp. at 3, Apple misapprehends the case law governing protective orders for the deposition of apex witnesses, which equates a showing that the witnesses lack unique personal knowledge *with* proof that the depositions are unwarranted. As the court stated in *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, * 3 (N.D. Cal. 2007), "[w]here a high-level decision maker 'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue, a deposition of the official *is improper*." *Id*. (emphasis added). "This is especially so where the information sought in the deposition can be obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees with more direct knowledge of the facts at issue." *Id*.

Thus, by showing both that the executives lack unique, personal knowledge *and* that less intrusive means were available, Samsung necessarily satisfied its evidentiary burden of proving that the depositions are improper. Samsung thus has demonstrated good cause for issuance of a protective order. *See Mehmet v. PayPal, Inc*., 2009 WL 921637, at *2 (N.D. Cal. April 3, 2009). Moreover, subjecting executives at the pinnacle of a multi-national corporation with over 190,000 employees to sit for depositions would be unduly burdensome.

## II. APPLE HAS NOT SATISFIED THE REQUIREMENTS FOR AN APEX DEPOSITION OF ANY OF THE EXECUTIVES IT SEEKS.

The facts in this case belie Apple's repeated and amorphous assertions that the six Samsung executives it seeks to depose know certain "key" facts regarding the critical issues in dispute. (Apple Opp. at 1-2.) To the contrary, the record shows that these executives have only an attenuated relationship to the disputed product decisions at the heart of this litigation. Even if Apple's claims were true (which they are not), Apple fails to show how the purported "key facts" are (1) unique, (2) non-repetitive of information other employees possess, and (3) cannot be obtained through interrogatories or depositions of other, lower-level executives, many of whom Apple has declined to depose. (*See* MPO at 18-19.)

Moreover, the very purpose of the apex doctrine is to protect high-ranking executives from the risk of abusive and harassing depositions, and thus, requires exhaustion of all other means before such depositions may be considered. *See Celerity, Inc.*, 2007 WL 205067, * 3 (noting that "[v]irtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.")  As Samsung's pleadings demonstrate, Apple has failed to pursue available, less intrusive means of obtaining the information it seeks. (*See* Samsung's Opp. at 12-14; MPO at 18-19.)[1]  Accordingly, unless and until Apple fully exhausts these other avenues, these apex depositions may not proceed.

Further, Apple's assertion that Samsung seeks protection for these witnesses "based solely on title" (Apple Opp. at 2) is unfounded.  Samsung focused on the realities *associated* with title, which gave these executives responsibility for overseeing Samsung entities with thousands, and in some cases hundreds of thousands, of employees. (MPO at 5-6; 9-18.)  Such critical, high level management responsibilities precluded these executives from engaging in the granular details involved with product design at issue in this dispute that would give them unique knowledge that their subordinates – often many levels removed from the executive suites – lacked. The case law Apple cites does not prove otherwise.[2]

---

[1]  Apple's questioning of lower level employees heightens Samsung's concern of harassment. For instance, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[2]  *Dobson v. Twin City Fire Ins. Co.*, 2011 WL 6179154 (C.D. Cal. Dec. 12, 2011), is irrelevant to this case.  There, the court found the plaintiff had not established that the witness was a "high level corporate officer at the apex of *their* organization." *Id.* at *6 (emphasis in original). *In re Google Litig.*, 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011), only highlights the weaknesses of Apple's Motion since the Court prohibited the deposition of Sergey Brin, and only approved only
   (footnote continued)

Samsung hereby incorporates by reference the reasons set forth in its MPO and Opposition for why each of these apex executives should not be compelled to sit for deposition. The following discussion addresses only the new arguments raised in Apple's Opposition.

### A. Apple Seeks To Depose CEO Gee Sung Choi Based On Nothing More Than His Titles And Generalized Comments Regarding Unrelated Products.

Apple bases its purported right to depose Mr. Choi on three principal grounds: (1) his prior role as the President of Samsung's Telecommunications Division, which allegedly gives him unique knowledge (Apple Opp. at 4); (2) his alleged involvement in ████████████████ ████████████████████████, (*see id*.), and (3) several documents purportedly establishing his personal knowledge and involvement in key decision-making of Samsung's products. None of these assertions has merit or provides adequate grounds to depose Samsung's most senior executive.

#### 1. The mere fact that Mr. Choi once held the title of President of the Telecommunications Division does not justify a deposition.

Contrary to Apple's assertions, the fact that Mr. Choi at one time held the title of President of Samsung's Telecommunications Division does not demonstrate any unique, first-hand knowledge of the disputed facts in this case. In fact, immediately before he became CEO in 2009, Mr. Choi was the President of the Digital Media and Communications Division, which was uninvolved in developing the products and features at issue. (Declaration of Hankil Kang in Support of Samsung's Reply ("Kang Reply Decl.") ¶ 3 )  During his career at Samsung, Mr. Choi

---

three hours of deposition for co-founder Larry Page, even though: (1) Page was the named inventor on several patents at issue; (2) Page's patent was initially rejected by the USPTO; (3) Page had worked with the inventor of plaintiff's asserted patent; (4) Page had direct knowledge of the search industry; (5) Page was involved in licensing negotiations; (6) Page was one of fewer than 10 Google employees at the time of hypothetical negotiations over the patents at issue; and most importantly, (7) Google's discovery responses referenced both Page's and Brin's unique knowledge and both were listed in Google's initial disclosures. *Id*. at * 1.  None of those factors exist for the executives at issue here. Finally, that Apple had to reach as far as Iowa to find a case remotely supportive, *Rolscreen Co. v. Pella Prods. Of St. Louis, Inc*., 145 F.R.D. 92, 97 (S.D. Iowa 1992), only underscores the weaknesses of its position, and the anomalous holding denying a protective order for a company president when "virtually every other court" has ruled the opposite, *see Celerity*, 2007 WL 205067 at * 3, is not binding on this Court in any event.

1  has also worked in the Visual Display Division and the Digital Media Division, neither of which
2  were involved in developing the products and features at issue here.  (*Id.*)  The mere fact that Mr.
3  Choi was the head of the Telecommunications Division, which has over 68,000 employees, at some
4  point does not provide sufficient basis to depose him where, as here, he lacks unique, first-hand
5  knowledge.  *See Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9,
6  2011) (holding that the mere facts that a witness was the CEO and made some public comments was
7  insufficient to justify a deposition absent a showing of unique, personal knowledge that could not be
8  obtained from lower level employees).

9        2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮  However, Apple's argument conveniently ignores the complete
16 absence of evidence that Mr. Choi was *actually involved* in the creation or implementation of the
17 strategy or that he was even the one who approved the document.  ▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  This fact is hardly exceptional;
21 where else would the President of a division be listed?   Apple's assumption that an apex witness
22 should be deposed merely because he is at the top of the food chain would subject virtually every
23 senior management-level executive to deposition, eviscerating the doctrine.
24     Further, Apple has already deposed lower-level employees regarding this supposedly
25 important document.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[redacted]

3. Other documents Apple cites are irrelevant.

Apple cites four other documents that supposedly show Mr. Choi's personal involvement in the development of the products and features at issue: [redacted] As explained below, these documents are completely irrelevant. None of these documents were authored by Mr. Choi and the first three refer to products and features not at issue in this case.

[redacted]

Apple also relies on comments Mr. Choi supposedly made regarding [redacted] However, Apple fails to mention that the comments were regarding [redacted] The comments also pertained [redacted] Similarly, Apple cites to comments Mr. Choi supposedly made [redacted]

Moreover, Apple's failure to question lower level employees is fatal to its Opposition. For example, Apple seeks to depose Mr. Choi regarding generalized comments he purportedly made

1   regarding Samsung's phones in comparison with Apple's products.  (Apple Opp. at 8; Mazza Reply

2   Decl. Ex. 10.)  ███████████████████████████████

3   ███████████████████████████████

4   　　　　In short, far from "Mr. Choi's active involvement in design decision and setting policy"

5   (Apple Opp. at 9), the very documents Apple cites show nothing more than that Mr. Choi was at the

6   top of SEC's corporate hierarchy and made generalized comments regarding Samsung products –

7   something every CEO does.  These generalized comments do not justify compelling his deposition.

8   *See Doble v. Mega Life and Health Ins. Co.*, 2010 WL 1998904, at *2 (N.D. Cal. May 18, 2010)

9   (attending high-level business meetings or making generalized comments "is not the level of

10   personal involvement which would justify deposition of" a high ranking executive).

11   　　　**B.　　Apple Should Not Be Permitted To Depose President Jong Kyun Shin Based On**

12   　　　　　　**Generalized Comments Attributed To Him And E-mails Written By Lower**

13   　　　　　　**Level Employees.**

14   　　　　Apple's attempts to justify the deposition of Mr. Shin likewise fail.  As with Mr. Choi,

15   Apple argues that Mr. Shin also held the role of Executive Vice President of Samsung's R&D

16   Group in 2007 and that "[t]he Court should order Mr. Shin to appear for deposition on that ground

17   alone." (Apple Opp. at 10.)  This assertion again erroneously assumes that high-ranking executives

18   should be deposed based merely on the fact that the teams they head may have been involved in

19   developing the accused products or features.[3]  But the apex doctrine requires more.  Apple offers

20   nothing to rebut Samsung's showing that Mr. Shin lacks any unique, first-hand knowledge that

21   cannot be obtained through the depositions of lower-level employees.

22   　　　　The generalized comments Apple cites do not justify Mr. Shin's deposition.  Apple asserts

23   that Mr. Shin ███████████████████████████████████████

24   ███████████████████████████████████████████████

25

26   　　[3]  Apple's Combined Reply also recycles the same arguments it made in its MTC.  (Apple Opp.
27   at 10-11.)  Samsung's arguments here will be restricted to responding to new documents and
　　　arguments.
28

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Even assuming this were true, it does not justify an apex deposition, as
2  Apple may depose the receiver of those comments.  *See Affinity Labs of Texas*, 2011 WL 1753982,
3  at *8-*9 (holding that apex deposition was unwarranted where lower level employees testified
4  regarding the statements of the executive).  Apple also points to Mr. Shin's comments ▓▓▓▓▓▓
5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  However,
7  the witness whose testimony Apple relies on, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Moreover,
9  Apple mischaracterizes ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  In fact, the deposition transcript makes it clear that Apple's
11  counsel was confused ("I think I got mixed up, I'm afraid").  (*Id.* at 132.)  ▓▓▓▓▓▓▓▓▓▓▓▓
12  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13  ▓▓▓▓▓▓▓▓
14      Finally, the comments ▓▓▓▓▓▓▓▓▓▓ were not from Mr. Shin at all.  The e-mail that
15  includes the comments, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19  ▓▓▓▓▓▓▓▓▓▓▓▓  *Cf. Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, at *3 (N.D. Cal. Feb. 2,
20  2012) (holding that an inference that apex witnesses could have unique knowledge was
21  insufficient).  It is telling that Apple did not question ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  This failing, too, undermines Apple's claimed
23  entitlement to circumvent the apex doctrine and directly question Mr. Shin.
24      Apple also mistakenly claims that a report ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ justifies Mr. Shin's
25  deposition.  (Apple Opp. at 12; Mazza Reply Decl. Ex. 12.)  First, the comments Apple cites are
26  nothing more than generalized admonitions that Samsung ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
27  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Second, even though ▓▓▓▓▓▓▓▓▓▓▓
28  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1
2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Apple's failure to seek the
3 information from lower level employees should not be rewarded.
4     Finally, Apple cites to miscellaneous e-mails that supposedly show ▓▓▓▓▓▓▓▓▓
5 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Apple Opp. at
6 12; ▓▓▓▓▓▓▓▓▓ )  But Exhibits 13 and 14 were e-mails ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7 ▓▓▓▓▓▓  Additionally, the e-mails Apple cites reflect the comments of the respective authors, not
8 Mr. Shin's.  For example, Exhibit 17 is an e-mail from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Accordingly, these emails, like the
10 other "evidence" Apple cites, cannot provide a basis for deposing Mr. Shin.

11     **C.**     **Apple's Argument That Executive Vice President Won-Pyo Hong Should Be**
12           **Deposed Merely Because His Team Developed The Products At Issue Must Fail**

13     Apple's reliance on "[r]ecent deposition testimony" to show that Mr. Hong has unique, first-
14 hand knowledge is misplaced.  That testimony merely reflects that Mr. Hong was ▓▓▓▓▓▓▓
15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓ and that in his role, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  ▓▓
17 ▓▓▓▓  All apex executives hold ultimate responsibility for the organizations they lead.  Apple
18 fails to demonstrate how Mr. Hong's role translates into unique, first-hand knowledge regarding the
19 design and development of the products at issue.
20     The facts that Mr. Hong's "*team* prepared the product proposal for the Galaxy Tab 10.1" or
21 that his "*team* also prepared an analysis of Apple's product-launching strategy" (Apple Opp. at 13)
22 do not demonstrate unique, first-hand knowledge.  In fact, as Don Joo Lee testified, ▓▓▓▓▓▓
23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓
24 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  However, Apple failed to ask Mr. Chang *any* questions
25 regarding the study.   Again, Apple's failure to pursue available avenues of inquiry establishes good
26 cause for a protective order.  *WebSideStory, Inc. v. NetRatings, Inc*., 2007 WL 1120567 at *2 (S.D.
27 Cal. April 6, 2007).
28

1    Apple also seeks to justify the deposition of Mr. Hong based on a series of e-mails that
2 supposedly reflect his comments regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  But Apple omits the referenced emails all pertain to a *particular*
5 Samsung phone not at issue in this case – ▮▮▮▮▮▮.  These emails are thus irrelevant.
6    Finally, Apple's Opposition reveals the type of irrelevant, harassing questions Apple intends
7 to ask Mr. Hong.  As Apple admits, it seeks to depose Mr. Hong since Mr. Chang was unable to
8 speculate about "whether the exterior design of the iPhone was a factor in its sales success."  (Apple
9 Opp. at 14.)  There is no reason why a Samsung witness would know what drives the success of
10 *Apple* products; nor is it proper to haul him into a deposition to speculate.  Apple's failure to offer
11 any evidence that even remotely establishes that Mr. Hong has any unique knowledge of the
12 specific products in dispute, or that it has pursued other available avenues to obtain such
13 information, justifies Samsung's request for a protective order.

14    **D.    Apple Should Not Be Permitted to Depose Executive Vice President Seunghwan**
15          **Cho About Unaccused Products And Features**

16    Apple's argument to depose Seughwan Cho is based almost entirely on comments he
17 supposedly made regarding the Samsung ▮▮▮▮▮▮▮ product.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮  However, the e-mails Apple cites undercut its argument.  The e-mail ▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 Moreover, as previously discussed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26
27
28

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was nothing more than a generalized observation.[4]  More

2  importantly, Apple did not question Vice President Yong Suk Moon, ▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Once again, Apple's attempt to circumvent

4  lower-level employees is improper.

     **E.    Permitting the Depositions of CEO Dale Sohn and CFO Joseph Cheong Merely Because They Signed Financial Forms Would Eviscerate The Apex Doctrine.**

Apple relies on unsupported assertions that "[o]nly Mr. Sohn and particularly Mr. Cheong are equipped to discuss the connection between SEC and STA's finances." (Apple Opp. at 16.)  Apple's justification for Mr. Cheong's deposition remains that he "is on assignment from SEC" and signed financial statements and agreements.  (*Id.* at 16-17.)  In addition to the damages witnesses identified in Samsung's MPO and Opposition, Apple has also recently deposed Vice President Jaehwang Sim, and will re-depose Tim Sheppard, STA's 30(b)(6) damages designee.  (Kassabian Reply Decl. ¶ 8.)  By Apple's standard, the CEO and CFO of every publicly traded company would be subject to depositions in any case that includes a damages claim.  *See* 18 U.S.C. § 1350 (requiring CEO and CFO to certify all financial statements).  This is not the law.

Apple's newly-asserted evidence for Mr. Sohn's deposition is similarly weak.  In addition to re-hashing the arguments it made in its MTC, Apple cites an e-mail from Mr. Sohn that includes a statement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  It is evident that Mr. Sohn's e-mail merely ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)  There is no evidence that Mr. Sohn actually ▮▮▮▮▮▮▮ would have any unique knowledge regarding STA's finances.

In sum, nothing in Apple's submission justifies the deposition of Samsung's most senior executives.  Samsung's Motion for a Protective Order should therefore be granted.

---

[4] The entirety of Mr. Cho's comment was, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## III. APPLE'S ATTEMPT TO SHIELD ITS OWN EXECUTIVES FROM DEPOSITION FURTHER UNDERMINES ITS ARGUMENTS

Apple's claim that Samsung has failed to demonstrate good cause for a protective order is undermined by its attempt to shield its own apex executives from depositions. Even as Apple pressed forward with motion practice seeking to justify its deposition of Samsung's apex witnesses, Apple has refused to produce its own senior executives on purported relevance and apex grounds. A week after filing its motion seeking to depose 14 Samsung executives, including Samsung's CEO and President, Apple wrote to Samsung that it would not produce a number of witnesses for deposition, including several Apple executives.  (Kassabian Reply Decl. Ex. J.)

Apple's recognition that the deposition of senior executives carries a stringent burden, and its claim that its own senior executives are too removed from the central factual issues in dispute to justify their depositions, belies its claim that Samsung's executives should be deposed.   For instance, Apple's argument that CEO Choi should be deposed simply because he was once President of the Telecommunications Division rings especially hollow since Apple has refused to schedule the deposition of Apple CEO Tim Cook, Apple's operations chief until August 2011.  *See* http://www.apple.com/pr/bios/tim-cook.html.  Based on Apple's own argument that Mr. Choi should be deposed merely because he held ultimate authority (*see* Apple Opp. at 6), there is no reason for Apple to resist Mr. Cook's deposition, given that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬   Moreover, Mr. Cook is the only person who can testify about communications between him and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Similarly, Chief Operating Officer Jeff Williams was a lower level employee in Apple's operations department until 2011.  (Kassabian Reply Decl. Ex. K.)  In his role, Mr. Williams was personally involved in the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

1   Apple's inconsistency also extends to witnesses it included in its Initial Disclosures.  Bruce

2  Sewell, Apple's General Counsel, was listed as having relevant knowledge regarding licensing

3  issues.  (Kassabian Reply Decl.  Ex. O.)  Moreover, Mr. Sewell ███████████████

4  ███████████████████████████ (*Id.* Ex. P.)  Mr. Sewell thus likely ██████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████  Yet despite seeking depositions of nearly every senior

7  executive in Samsung's Intellectual Property Center, Apple has refused to schedule the depositions

8  of Mr. Sewell or Noreen Krall, ████████████████████████████████████

9  ████████████████████████████

10   Finally, Apple cannot in one breath seek depositions of Samsung executives who were

11  merely mentioned in e-mails, and in the next breath refuse to permit the depositions of its senior

12  executives—including Eddie Cue and Jeff Robbin—on the basis that these executives merely

13  received e-mails ████████████████████████████████████████

14  (*See* Kassabian Reply Decl. Ex. R.)

15   In short, the arguments Apple makes to shield its own executives from deposition apply with

16  equal force to its attempts to depose Samsung's executives. At a minimum, if this Court denies

17  Samsung's motion and permits the depositions to proceed, Apple's apex executives should likewise

18  be deposed.

19  **IV.  SAMSUNG WAS REQUIRED TO MOVE FOR A PROTECTIVE ORDER WHILE**

20      **APPLE ELECTED TO FILE AN UNNECESSARY MOTION TO COMPEL**

21   In its March 9, 2012 Order, the Court requested an explanation for why Samsung moved for

22  a protective order precluding the depositions of apex executives instead of opposing Apple's motion

23  to compel.  While Apple would like the court to believe that Samsung's decision was part of some

24  conspiracy to "obtain the strategic advantage of having the last word in a reply brief" (Apple Opp.

25  at 21), the answer is far more mundane.

26   Rules 37 (d)(1) and (2) subject a party and its officers to sanctions for failing to appear at a

27  properly noticed deposition in the absence of a pending motion for a protective order.  *See* Fed. R.

28  Civ. P. 37(d)(1)(A)(i) and 37(d)(2). *See, e.g. Kintsley v. City & County of San Francisco*, 2009 WL

412458, at *2 (N.D. Cal. Feb. 17, 2009) (granting sanctions for plaintiff's failure to appear at a deposition without a pending motion for a protective order); *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *6 (N.D. Cal. June 3, 2011) (ordering sanctions for failure to offer a 30(b)(6) witness without filing a motion for a protective order). The motion for a protective order was filed to preserve its objections to Apple's notices. It was Apple who engaged in unnecessary motion practice by "jumping the gun" and filing a superfluous motion to compel when it knew Samsung was preparing a protective order motion. (Kassabian Reply Decl. ¶ 19.)

Apple's accusation that Samsung was trying to get "the last word" is baseless. It was Apple who proposed a stipulation to combine its Opposition to Samsung's MPO and Reply in support of its MTC. (Kassabian Reply Decl. ¶ 20.) Samsung accepted Apple stipulation to reduce the burdens on the Court. (*Id.*) If Apple was concerned about Samsung getting the "last word," it could have filed its own Reply and a separate Opposition. In any case, parties routinely file for a protective order, while opposing a motion to compel. *See, e.g., Rodrigues v. Barrita, Inc.*, 2011 WL 5854397 (N.D. Cal. Nov. 21, 2011); *Genentech, Inc. v. Trustees of Univ. of Penn.*, 2011 WL 7074210 (N.D. Cal. Sep. 19, 2011). Apple's attempts to cast aspersions on Samsung's filings do not pass muster.

## CONCLUSION

For the reasons stated, here and in Samsung's MPO and Opposition, Apple's Motion to Compel should be denied, and Samsung's Motion for a Protective Order should be granted.

DATED: March 19, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Rachel Herrick Kassabian
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller
Rachel Herrick Kassabian
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC