# EXHIBIT G

1  HAROLD J. MCELHINNY (CA SBN 66781)
   hmcelhinny@mofo.com
2  MICHAEL A. JACOBS (CA SBN 111664)
   mjacobs@mofo.com
3  JENNIFER LEE TAYLOR (CA SBN 161368)
   jtaylor@mofo.com
4  ALISON M. TUCHER (CA SBN 171363)
   atucher@mofo.com
5  RICHARD S.J. HUNG (CA SBN 197425)
   rhung@mofo.com
6  JASON R. BARTLETT (CA SBN 214530)
   jasonbartlett@mofo.com
7  MORRISON & FOERSTER LLP
   425 Market Street
8  San Francisco, California 94105-2482
   Telephone: (415) 268-7000
9  Facsimile: (415) 268-7522

   WILLIAM F. LEE
   william.lee@wilmerhale.com
   WILMER CUTLER PICKERING
   HALE AND DORR LLP
   60 State Street
   Boston, MA 02109
   Telephone: (617) 526-6000
   Facsimile: (617) 526-5000

   MARK D. SELWYN (SBN 244180)
   mark.selwyn@wilmerhale.com
   WILMER CUTLER PICKERING
   HALE AND DORR LLP
   950 Page Mill Road
   Palo Alto, California 94304
   Telephone: (650) 858-6000
   Facsimile: (650) 858-6100

10 Attorneys for Plaintiff and
   Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No. 11-cv-01846-LHK |
| Plaintiff, | **APPLE INC.'S SEVENTH RULE 30(B)(6) DEPOSITION NOTICE** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff Apple Inc., by and through its attorneys, will take the deposition upon oral examination of Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung").  The deposition will commence at 9:00 a.m. on February 10, 2012, at the offices of Morrison & Foerster LLP, 425 Market Street, San Francisco, California, 94105.  The deposition will be taken by a notary public or other authorized officer and will continue from day to day until concluded, or may be continued until completed at a future date or dates.  Pursuant to Federal Rule of Civil Procedure 30(b)(6), Samsung shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf and who are most knowledgeable and competent to testify concerning each of the subjects set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(3), the deposition will be videotaped and recorded stenographically.

Dated:  January 31, 2012                    MORRISON & FOERSTER LLP

By:    */s/ Richard S.J. Hung*
　　　　RICHARD S.J. HUNG
　　　　Attorneys for Plaintiff
　　　　APPLE INC.

# EXHIBIT A

# DEFINITIONS

1.	"Samsung," "You," "Your," and/or "Defendants" mean Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC and all predecessors, successors, predecessors-in-interest, successors-in-interest, subsidiaries, divisions, parents, and/or affiliates, past or present, any companies that have a controlling interest in Defendants, and any current or former employee, officer, director, principal, agent, consultant, representative, or attorney thereof, or anyone acting on their behalf.

2.	"Apple" means Apple Inc. and its subsidiary entities, divisions, predecessors, successors, present and former officers, directors, employees, representatives, agents, and anyone acting on its behalf.

3.	"Products at Issue" or "Products in Suit" means the following products that Samsung has imported into or sold, or will import into or sell, in the United States: Acclaim, Captivate, Continuum, Droid Charge, Exhibit 4G, Epic 4G, Fascinate, Gem, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Showcase i500, Showcase Galaxy S, Sidekick, Transform, Vibrant, all products in the Galaxy S line of phones, all Galaxy S II (aka Galaxy S 2) phones, the Samsung Nexus Prime, and the Galaxy Tab, Galaxy Tab 10.1, and Galaxy Tab 8.9 tablet computers, any similar products, and any products that Apple accuses of infringing its intellectual property in this litigation. "Products at Issue" also includes all Galaxy phone and tablet products and any other product identified in Apple's Amended Complaint.

4.	"Apple Products" means the original iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPad, iPad 2, iPod touch, and future versions thereof.

5.	"Utility Patents at Issue" means U.S. Patent Nos. 7,812,828 (the "'828 Patent"), 6,493,002 (the "'002 Patent"), 7,469,381 (the "'381 Patent"), 7,844,915 (the "'915 Patent"), 7,853,891 (the "'891 Patent"), 7,663,607 (the "'607 Patent"), 7,864,163 (the "'163 Patent"), and 7,920,129 (the "'129 Patent").

6.	"Design Patents at Issue" means U.S. Design Patent Nos. D627,790 (the "D'790

1  Patent"), D617,334 (the "D'334 Patent"), D604,305 (the "D'305 Patent"), D593,087 (the "D'087
2  Patent"), D618,677 (the "D'677 Patent"), D622,270 (the "D'270 Patent"), and D504,889 (the
3  "D'270 Patent").

4        7.     "Patents at Issue" or "Patents in Suit" means the Utility Patents at Issue and the
5  Design Patents at Issue.

6        8.     "Hardware Design" means a device's casing, screen and screen borders, bezel or
7  band, buttons, ports, speaker, and all hardware, insignia, or ornamentation thereon.

8        9.     "Graphical User Interface Design" means the graphical user interface displayed
9  on a device's screen, including all of the icons displayed as part of the graphical user interface.

10      10.    "Original iPhone Trade Dress" means the following elements of Apple's product
11 designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the
12 front of the product; the appearance of a metallic bezel around the flat clear surface; a display
13 screen under the clear surface; under the clear surface, substantial black borders above and below
14 the display screen and narrower black borders on either side of the screen; when the device is on,
15 a matrix of colorful square icons with evenly rounded corners within the display screen; and
16 when the device is on, a bottom dock of colorful square icons with evenly rounded corners set
17 off from the other icons on the display, which does not change as other pages of the user
18 interface are viewed.

19      11.    "iPhone 3G Trade Dress" means the following elements of Apple's product
20 designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the
21 front of the product; the appearance of a metallic bezel around the flat clear surface; a display
22 screen under the clear surface; under the clear surface, substantial black borders above and below
23 the display screen and narrower black borders on either side of the screen; when the device is on,
24 a row of small dots on the display screen; when the device is on, a matrix of colorful square
25 icons with evenly rounded corners within the display screen; and when the device is on, a bottom
26 dock of colorful square icons with evenly rounded corners set off from the other icons on the
27 display, which does not change as other pages of the user interface are viewed.

28      12.    "iPhone 4 Trade Dress" means the following elements of Apple's product

1  designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the
2  front of the product; a display screen under the clear surface; under the clear surface, substantial
3  neutral (black or white) borders above and below the display screen and narrower black borders
4  on either side of the screen; a thin metallic band around the outside edge of the phone; when the
5  device is on, a row of small dots on the display screen; when the device is on, a matrix of
6  colorful square icons with evenly rounded corners within the display screen; and when the device
7  is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other
8  icons on the display, which does not change as other pages of the user interface are viewed.

9     13.  "iPhone Trade Dress" means the following elements of Apple's product designs:
10  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of
11  the product; a display screen under the clear surface; under the clear surface, substantial neutral
12  (black or white) borders above and below the display screen and narrower neutral borders on
13  either side of the screen; when the device is on, a matrix of colorful square icons with evenly
14  rounded corners within the display screen; and when the device is on, a bottom dock of colorful
15  square icons with evenly rounded corners set off from the other icons on the display, which does
16  not change as other pages of the user interface are viewed.

17     14.  "iPad Trade Dress" means the following elements of Apple's product designs: a
18  rectangular product with four evenly rounded corners; a flat clear surface covering the front of
19  the product; the appearance of a metallic rim around the flat clear surface; a display screen under
20  the clear surface; under the clear surface, substantial neutral (black or white) borders on all sides
21  of the display screen; and when the device is on, a matrix of colorful square icons with evenly
22  rounded corners within the display screen.

23     15.  "iPad 2 Trade Dress" means the following elements of Apple's product designs:
24  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of
25  the product; the appearance of a metallic rim around the clear flat surface; a display screen under
26  the clear surface; under the clear surface, substantial neutral (black or white) borders on all sides
27  of the display screen; and when the device is on, a matrix of colorful square icons with evenly
28  rounded corners within the display screen.

1     16.     "Trade Dress Registrations" means U.S. Registration Nos. 3,470,983; 3,457,218;
2 and 3,475,327.

3     17.     "Trade Dress Applications" means U.S. Application Serial Nos. 77/921,838;
4 77/921,829; 77/921,867; and 85/299,118.

5     18.     "Registered Icon Trademarks" means the marks shown in U.S. Registration
6 Nos. 3,866,196; 3,889,642; 3,886,200; 3,889,685; 3,886,169; and 3,886,197.

7     19.     "Purple iTunes Store Trademark" means the mark shown in U.S. Application
8 Serial No. 85/041,463.

9     20.     "iTunes Eighth Note and CD Design Trademark" means the mark shown in U.S.
10 Registration No. 2,935,038.

11    21.     "Apple Trademarks and Trade Dress" means the: Original iPhone Trade Dress,
12 iPhone 3G Trade Dress, iPhone 4 Trade Dress, iPhone Trade Dress, iPad Trade Dress, iPad 2
13 Trade Dress, Trade Dress Registrations, Trade Dress Applications, Registered Icon Trademarks,
14 Purple iTunes Store Trademark, and iTunes Eighth Note and CD Design Trademark

15    22.     "Accused Feature" means any aspect, element or function of any Product at Issue
16 that is alleged to infringe any of the Patents at Issue, including each function identified in
17 Apple's Infringement Contentions.  The term includes each of the following: (1) the function that
18 allows for an image, list, or webpage to be scrolled beyond its edge until it is partially displayed;
19 (2) the function that allows for an image, list, or webpage that is scrolled beyond its edge to
20 scroll back or bounce back into place so that it returns to fill the screen; (3) the function that
21 allows for the automatic closing of a user interface window; (4) the function that allows for the
22 display and operation of a user interface status bar; (5) the function that allows for the detection
23 and identification of a touch or object on a touch screen display; (6) the function for detecting
24 and interpreting user input or gestures on a touch screen display, including the function that
25 determines whether a user input relates to scrolling or a scaling gesture; (7) the touch screen on
26 the accused devices and any software, firmware, or other system used to control said touch
27 screen.

28    23.     "Samsung Practicing Products" means any and all products sold by Samsung that

1  Samsung contends practices or practiced one or more of the Samsung Patents In Suit.

2  24. "Source Code" means source code and source code repositories, including but not limited to: (1) all makefiles, history files, or similar code-generation control or version-control files for such source code, including files identifying (a) the date when code was checked in; (b) the identity of persons who coded and checked-in the code; and (2) an identification of such source code, including (a) version number(s), (b) the compiler used in the development of such source code and (c) the operating system used in the development of such source code. Requests for Source Code cover prototypes, released and unreleased versions, and public and proprietary Source Code.

25. "Document(s)" has the broadest possible meaning permitted by Federal Rules of Civil Procedure Rules 26 and 34 and the relevant case law, and the broadest meaning consistent with the terms "writings" or "recordings" as set forth in Rule 1001 of the Federal Rules of Evidence, and specifically and without limitation include tangible things and electronically stored information, including e-mail and information stored on computer disk or other electronic, magnetic, or optical data storage medium. "Document(s)" also includes all drafts or non-final versions, alterations, modifications, and amendments to any of the foregoing.

26. "Communication(s)" means the transmittal of information in the form of facts, ideas, inquiries, and any exchange or transfer of information whether written, oral, electronic, or in any form.

27. "Tangible Thing(s)" has the broadest possible meaning permitted by Federal Rules of Civil Procedure 26 and 34 and the relevant case law.

28. "Concerning" or "Relating" mean regarding, referring to, concerning, mentioning, reflecting, pertaining to, analyzing, evidencing, stating, involving, identifying, describing, discussing, documenting, commenting on, dealing with, embodying, responding to, supporting, contradicting, comprising, containing, or constituting (in whole or in part), as the context makes appropriate.

29. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

APPLE INC.'S SEVENTH RULE 30(B)(6) DEPOSITION NOTICE
CASE NO. 11-CV-01846-LHK
sf-3097914
6

30. The use of the singular form of any word includes the plural and vice versa.

31. "And" as well as "or" are to be construed either disjunctively or conjunctively to acquire the broadest meaning possible, so as to bring within the scope of the Request all information that might otherwise be construed to be outside its scope. The term "all" is to be construed to mean "any" and "each" and vice versa.

32. "Including" shall be construed to mean "including, without limitation" or "including, but not limited to."

33. "Person(s)" means natural persons as well as business entities and associations of all sorts, including partnerships, companies, proprietorships, joint ventures, corporations, government agencies, and unincorporated associations.

34. "Entity" or "Entities" means, including without limitation, corporation, company, firm, partnership, joint venture, association, governmental body or agency, or persons other than a natural person.

35. "Third Party" or "Third Parties" means all persons who are not parties to this Litigation, as well as their officers, directors, employees, agents and attorneys.

36. "First Amended Complaint" means the first amended complaint in the above-captioned action dated June 16, 2011.

37. "Answer" means Samsung's answer to the First Amended Complaint in the above-captioned action dated June 30, 2011.

38. "Samsung's Counterclaims" means Samsung's Counterclaims asserted in response to the First Amended Complaint in the above-captioned action dated June 30, 2011.

39. "Related Foreign Proceedings" means any litigation or court proceeding involving Apple and Samsung occurring outside the United States regarding any of the same subject matter, patents, trademarks, or products at issue in this case.

40. "Opposition" means your Opposition to Apple's Motion for a Preliminary Injunction and all supporting declarations and exhibits.

41. "Samsung Patents in Suit" shall mean United States Patent Nos. 6,928,604, 7,050,410, 7,069,055, 7,079,871, 7,200,792, 7,362,867, 7,386,001, 7,447,516, 7,456,893,

1    7,577,460, 7,675,941, and 7,698,711, individually and collectively, and all foreign counterparts
2    thereof.

**TOPICS**

**DAMAGES-RELATED INFORMATION**

1. The sales in units and revenue by any defendant of the: (a) Products at Issue from 2009 to the present (including any available breakdown by carrier); and (b) Samsung Practicing Products from 2006 to the present.

2. The standard costs or other manufacturing costs that defendants have incurred to manufacture each of the: (a) Products at Issue from 2009 to the present; and (b) Samsung Practicing Products from 2006 through the present.

3. The gross margin as a percent of sales that the defendants collectively have obtained on a consolidated basis for the sale of each of the: (a) Products at Issue from 2009 to the present; and (b) Samsung Practicing Products from 2006 through the present.

4. The contribution margin, operating profit, EBITDA, or any other measure of profitability tracked internally that the defendants collectively have obtained on a consolidated basis for the sale of each of the: (a) Products at Issue from 2009 to the present; and (b) Samsung Practicing Products from 2006 through the present.

5. The identity of the documents (whether obtained directly from SAP or printed) that defendants consider to be the most reliable measure on a consolidated basis of revenues, cost of goods sold, gross margin, research and development expenses, or sales and general and administrative expenses for the: (a) Products at Issue from 2009 to the present; and (b) Samsung Practicing Products from 2006 through the present.

6. Business plans, strategies, and forecasts with respect to the Products at Issue and the Samsung Practicing Products for the years 2010 and after.

7. The identity of any products that Samsung sells in conjunction with the sale or marketing of the Products at Issue or Samsung Practicing Products, and the amount of Samsung's gross or operating profit with respect to such products for the years 2009 to the present.

8. Any license agreement by which any defendant has obtained a right to use technology that is incorporated into any Product at Issue or any Samsung Practicing Product.

9. Any license agreement by which any defendant has granted another entity the right to use or has covenanted not to sue with respect to any patent being asserted by defendants in this action.

10. Defendants' policies, if any, regarding the technology it will and will not license to or from other parties.

11. Market research and analysis or internal evaluations, including any surveys of customers, conducted to measure the importance to consumers of: the physical design or appearance of a Product at Issue; the multi-touch display and its functioning; the ability to tap on content to zoom in on it; the ability to use a single figure to scroll data; the ability to use two figures to scale the size of data displayed on a screen; any method used to identify to users that they have come to the end of content displayed on a touch screen; timed notifications in a translucent window; or a visible "control strip."

12. Market research and analysis, including any surveys of customers, regarding what end users who purchase any Samsung Product at Issue value with respect to their purchases, including any study of the relative value that they place on any of the features included in any Product at Issue.

13. The share of the mobile phone or smartphone market that the: (a) Products at Issue comprised in the United States on a quarterly basis from 2009 to the present; and (b) Samsung Practicing Products comprised in the United States on a quarterly basis from 2006 through the present.

14. The share of the tablet computer market that the: (a) Products at Issue comprised in the United States on a quarterly basis from 2010 to the present; and (b) Samsung Practicing Products comprised in the United States on a quarterly basis from 2010 to the present.

15. The date when each Product at Issue and each Samsung Practicing Product was introduced into the U.S. market.

16. Samsung's gross profit and cost of goods sold for each Product at Issue and each Samsung Practicing Product, including:

    a.    For each accused product, Samsung's calculation of its consolidated gross margin for the Products at Issue from June 2009 to the present.
    b.    Samsung's gross margins or gross profit consolidated for the Products at Issue, for tablets and for smartphones or for the Galaxy S and Galaxy SII line of phones as reflected on a quarterly or monthly basis.
    c.    Samsung's method of determining standard costs of components for the Products at Issue and method of allocating other expenses (such as freight, variances, and manufacturing overhead) to calculate a consolidated costs of goods sold.
    d.    Samsung's calculation of its gross margin for the Samsung Practicing Products from 2006 through the present.
    e.    Samsung's gross margins or gross profit consolidated for the Samsung Practicing Products as reflected on a quarterly or monthly basis.
    f.    Samsung's method of determining standard costs of components for the Samsung Practicing Products and method of allocating other expenses (such as freight, variances, and manufacturing overhead) to calculate a consolidated costs of goods sold.

17. Samsung's accounting and financial methods and/or conventions (including whether and to what degree any expenses other than manufacturing costs are tracked by product).

18. The date on which Samsung became aware of Apple's assertion of the Patents in Suit.

19. The date on which Samsung made Apple aware of its assertions of the Samsung Patents in Suit.

20. Samsung's operating costs and profitability with respect to smartphones or tablet products, including:

    a.    Any expenses not included in costs of goods sold that Samsung incurs for or allocates to any U.S. smartphone or tablet products, including any research and development expenses, sales and marketing expenses, and general and administrative expenses.
    b.    Any comparison of how Samsung's expenses for the Products at Issue and the Samsung Practicing Products compare to U.S. expenses for mobile phones more generally and/or to worldwide expenses.
    c.    Samsung's operating profit for any of the Products at Issue, the Samsung Practicing Products, for smartphones, for tablet computers, and for mobile phones more broadly reflecting the foregoing expenses.

21. Samsung's valuation or in-process research and/or development calculations of any patent or technology related to any: (a) Product at Issue; and (b) Samsung Practicing Product, including any valuation used for balance sheet valuations, amortization, or a write-off of intangible assets.

22. Samsung's expense for research and development, including the expense Samsung incurred to develop any of the: (a) Products at Issue; and (b) Samsung Practicing Products.

23. Any calculation of the actual or projected expense to design around any patent (including design patents) that covers features of Samsung's smartphones and tablets.

24. Any calculation of the actual or projected expense to design around any Patents at Issue or the Apple Trademarks and Trade Dress.

25. Any calculation of actual or projected expense to design around any of the Samsung Patents in Suit.

26. Any quarterly, annual, or multi-year business plans prepared for the Products at Issue or the divisions of Samsung that sell the Products at Issue for 2012.

27. Any quarterly, annual, or multi-year business plans prepared for the Samsung Practicing Products or the divisions of Samsung that sell the Samsung Practicing Products for the period 2006 through the present.

28. Any "Pumi" reports provided for SEA and STA, including any forecasts, actual sales, and calculation of profitability in the reports.

29. Any profit targets for STA or SEA used in connection with STA's or SEA's MBO goals and evaluations.

30. The amount in profit that the Samsung entities, including SEC, SEA, and STA, transfer in profit by virtue of their intercompany transfer pricing arrangements, and the basis for this transfer.

APPLE INC.'S SEVENTH RULE 30(B)(6) DEPOSITION NOTICE
CASE NO. 11-CV-01846-LHK
sf-3097914

12

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2012, a true and correct copy of **APPLE INC.'S SEVENTH RULE 30(B)(6) DEPOSITION NOTICE** was served via electronic mail on the following counsel of record at the addresses indicated below:

Charles Kramer Verhoeven
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Email: charlesverhoeven@quinnemanuel.com

Edward J. DeFranco
Quinn Emanuel Urquhart & Sullivan, LLP
335 Madison Avenue , 22nd Floor
New York, NY 10017
Tel: 212-849-7000
Fax: 212-849-7100
Email: eddefranco@quinnemanuel.com

Kevin P.B. Johnson
Quinn Emanuel Urquhart & Sullivan LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-801-5100
Email: kevinjohnson@quinnemanuel.com

Michael Thomas Zeller
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street , 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
Email: michaelzeller@quinnemanuel.com

Victoria F. Maroulis
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, Fifth Floor
Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-801-5100
Email: victoriamaroulis@quinnemanuel.com

1  Margret Mary Caruso
   Quinn Emanuel Urquhart & Sullivan, LLP
2  555 Twin Dolphin Drive, Suite 560
   Redwood Shores, CA 94065
3  Tel: 650-801-5000
   Fax: 650-801-5100
4  Email: margretcaruso@quinnemanuel.com

5  Todd Michael Briggs
   Quinn Emanuel Urquhart & Sullivan, LLP
6  555 Twin Dolphin Drive, Fifth Floor
   Redwood Shores, CA 94065
7  Tel: 650-801-5000
   Email: toddbriggs@quinnemanuel.com

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California, this 31st day of January 2012.

                              */s/ Esther Kim*
                                Esther Kim

CERTIFICATE OF SERVICE
CASE NO. 11-CV-01846-LHK
sf-3097914

2