1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

15

16                    UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18  APPLE INC., a California corporation,      CASE NO. 11-cv-01846-LHK

19           Plaintiff,

20       vs.                                   **REPLY MEMORANDUM IN SUPPORT
                                               OF SAMSUNG'S MOTION TO COMPEL
21  SAMSUNG ELECTRONICS CO., LTD., a           PRODUCTION OF DOCUMENTS
    Korean business entity; SAMSUNG            RELATING TO APPLE'S EFFORTS TO
22  ELECTRONICS AMERICA, INC., a New           OBTAIN DESIGN PATENTS RELATED
    York corporation; SAMSUNG                  TO THE PATENTS-IN-SUIT**
23  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited liability company, Date: April 10, 2012
24                                             Time: 3:00 p.m.
             Defendants.                       Courtroom: 5, 4th Floor
25                                             Honorable Paul S. Grewal

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion seeks a narrow category of highly relevant documents: documents relating to Apple's efforts to obtain *design patents* relating to the iPod Touch, iPad, and iPhone. Unable to justify its refusal to produce this material, Apple's opposition addresses a request Samsung did not make in its motion – one seeking "in essence" "*all patent applications* that relate to products that relate to the patents-in-suit" – and claims this request is "unprecedented." Opp. at 2. Because Apple's brief addresses this hypothetical request, rather than the one Samsung has made, its arguments miss the point. Apple has not even attempted to demonstrate, nor could it presumably show, that the volume of *design* patent prosecution histories relating to the iPhone, iPod Touch, or iPad devices is overbroad, or is not relevant to the issues presented by Apple's design patent claims in this action. Accordingly, this motion should be granted.

Beyond addressing a discovery request Samsung is not making, Apple's arguments should be rejected for other reasons as well. *First*, the documents are within the scope of Samsung's requests. Apple acknowledges that Samsung has served a specific request for applications relating to the iPad2, and its strained reading of Samsung's other requests to exclude applications relating to designs for other products is inconsistent with the plain language of those requests.

*Second*, Apple cannot dispute that numerous cases Samsung cited in its moving papers have recognized the relevance of such applications, whether published or not. Samsung has made a particularized showing of relevance in its moving papers, including the need to impeach Apple's assertion that iPad2 embodies the D'889 patent because that claim is directly inconsistent with Apple's sworn representations years later to the Patent Office that the iPad2 design was purportedly "new and original." Further, Apple's wholesale repackaging of Samsung's motion – in order to avoid having to produce a fairly narrow category of materials – belies its suggestions that these files are not relevant .

*Third*, Apple has failed to make any particularized showing of burden, which is required in order to defeat this motion on that ground. It has not stated the volume of *design* patents relating

-1-   Case No. 11-cv-01846-LHK
**SAMSUNG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO THE PATENTS-IN-SUIT**

to the devices embodying the patents-in-suit is voluminous, and its reference to the patents it claims to have already produced only shows that production in fact is not as burdensome as Apple now claims.

*Finally*, Apple's confidentiality argument is a red herring. The design materials requested depict **designs already embodied in products Apple has put to market**. Why would Samsung's outside attorneys violate three different provisions of the protective order in order to help Samsung "design around" when Samsung could buy the product on the market? Even if there were a legitimate confidentiality concern here, the Protective Order issued by this Court has been sufficient to disclose and protect all manner of highly confidential materials, including CAD files, source code, contract terms, and more, and Apple has shown no reason why the Court's Order is no longer adequate to protect its interests.

Apple has no legitimate reason for not producing these materials long ago, and its failure to do so has already impeded the preparation of Samsung's expert reports and its preparation for summary judgment. Accordingly, Samsung respectfully requests that the Court grant this motion and order Apple to produce without further delay all applications and related documentation for the iPad2 and for any other products it claims embody the design patents-in-suit.

## II.     ARGUMENT

### A.     The Documents Are Relevant

Apple cannot possibly make a good faith relevance argument with regard to the limited category of design documents Samsung is seeking. So it tries to mislead the Court into believing that Samsung's request is far broader, encompassing "in essence" "*all* Apple patent applications that relate to products that relate to the patents-in-suit" *Id*. at 2 (emphasis added). But as Apple itself acknowledges, the motion only seeks *design* patent documents. Opp. at 1 (describing request as "all documents relating to any efforts by Apple to obtain *design* patents relating of the inventions of the patents-in-suit, including any related to products Apple claims embody the patents-in-suit, including the iPad2") (emphasis added). Because Apple's relevance arguments are directed to a discovery request Samsung is not making, they are themselves entirely irrelevant.

1         Samsung's moving papers cited several cases recognizing the relevance of patent
2 applications to the scope and validity of the patents being asserted, and supporting the relevance of
3 the narrowly tailored discovery Samsung is pursuing in this motion.  Motion at 5.  These courts'
4 discussion of relevance did not, as Apple erroneously suggests (Opp. at 2), depend on the specific
5 scope of the requests in those cases.  Rather, as another Judge of this Court recognized in *Caliper*
6 *Technologies*, "[m]any courts have concluded that [pending and abandoned patent applications
7 that are related to the patent-in-suit] are relevant because they 'may contain information or
8 admissions that clarify, define, or interpret the claims of the patent in suit.'"  *Caliper*
9 *Technologies Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 561 (N.D. Cal. 2003) (citing
10 cases).  Moreover, the request at issue in *Caliper* – "all applications (foreign or domestic,
11 pending, abandoned, or issued) owned or controlled by Caliper that refer to or relate to inventions
12 involving any fluorescence polarization assay method, system or apparatus" – is no more specific,
13 and arguably far broader, than Samsung's narrow design-related request here.
14         Equally meritless is Apple's claim that Samsung has not satisfied a "heightened relevance"
15 requirement with regard to unpublished applications that would outweigh Apple's concerns about
16 secrecy.  Opp. at 2-4.  Because these are design patent applications and related documents,
17 Apple has implemented these designs in commercial products already available on the market.  A
18 visual comparison of the D'087 design to the original iPhone product, for example, demonstrates
19 that any confidential information related to the D'087 was revealed long ago by the original
20 iPhone product.



        D'087 Patented Design                        First Generation iPhone

The documents sought here – documents related to Apple's efforts to obtain design patent protection for its iPhone, iPod Touch and iPad – by definition must similarly disclose the *external* features of the design claimed. Apple has failed to show how any information in these design patents on its products would be any different than what is shown by viewing the products themselves, much less how any new information is so confidential that it cannot be protected by the protective order it has permitted to protect its trade secrets and other types of highly confidential business information throughout the course of this litigation. Dkt. 687.

The real reason Apple would prefer not having to produce these materials is their probative value. Each design application necessarily relates to Apple's claimed commercial embodiments, and necessarily must describe what distinguishes each design from prior art, all of which is directly relevant to whether the designs at issue in this action are invalid or infringed.[1]

The applications relating to the iPad2, for example, would necessarily show either that its assertion in this Court that the iPad2 embodies the D'889 patent is untrue, or that it made false representations of novelty to the Patent Office that would invalidate any related patents. While Apple disputes that any such admissions of novelty would be found in the application file, Opp. at 3 n.1, the D'889 file wrapper states on the very first page that the listed inventors "have invented a *new, original, and ornamental design* for an ELECTRONIC DEVICE . . . ." *See* Hutnyan Decl. Exh. E. Similarly, in its own application for the D'677 patent at issue in this action, Apple

---

[1] Further, given that Apple has adopted a practice of patenting virtually identical designs it claims are embodied in the same iPhone, iPod Touch, and iPad devices, Samsung is entitled to review application files for these designs to support its anticipation, obviousness, and non-infringement defenses.

represents that it is "an application for a *new, original, and ornamental design*" for an electronic device.   *See* Supplemental Declaration of Diane Hutnyan, Exh. A at APLPROS0000011609. This assertion, along with every other statement in the application, is certified as true by the inventors.   *Id*. at 11623.   Having brought a plethora of design patent claims against Samsung, Apple must certainly recognize that novelty and originality are requirements for patenting a design, and its attempt to dispute this basic proposition shows just how far it will go to avoid production of highly relevant documents.

Certainly, even if Apple's patent applications contained any information that could legitimately be deemed confidential, case law still favors their disclosure.   In each of the cases Samsung cited, the courts concluded that the relevance of the applications outweighed any secrecy concerns, confirming that there is no *per se* presumption against production of such materials. *Caliper*, 213 F.R.D. at 562; *Zest IP Holdings, LLC v. Implant Direct MGG, LLC*, 2011 WL 5525990 at *1 (S. D. Cal. 2011);   *Tristrata Technology, Inc. v. Neoteric Cosmetics, Inc.*, 35 F. Supp. 2d 370, 372 (D. Del. 1998).

By contrast, in the *Ideal Toy* case upon which Apple relies, the court denied the motion to compel, largely because the one patent as to which any relevance argument had been made was withdrawn from the litigation.   *Ideal Toy Corp. v. Tyco Industries, Inc.*, 478 F.Supp. 191, 1194-95 (D. Del. 1979).   Similarly, in the *Microsoft* case, Microsoft did not even attempt "to make a showing of something other than the potential that all 'related' patent applications may be relevant because they may contain admissions."   *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 2001 U.S. Dist. LEXIS 23155 at *20.[2]   Given the showing of relevance Samsung has made, these authorities are plainly inapposite.

---

[2]   In *ICU Medical*, the Court did not describe the relevance arguments made by the party requesting production of patent applications, but denied the request because, among other things, the parties were "engaged in simultaneous adjudication of a contractual dispute in the Central District of California."   *ICU Medical, Inc. v. B. Braun Medical, Inc.*, 224 F.R.D. 461, 462 (N.D. Cal. 2002).

B.     The Documents Are Within The Scope of Samsung's Requests

Apple asserts that Samsung's discovery does not encompass the documents it is seeking, Opp. at 1, but it conspicuously fails to ever quote the language of Samsung's requests. Samsung's request No. 81 seeks not only prosecution histories for the design patents-in-suit, but also for "patents related to" those patents.   Similarly, Request No. 82 seeks not only documents relating to the preparation, filing and/or prosecution of the design patents-in-suit, but also such documents and applications for "patents related to" the design patents in suit.   As noted above, Apple contends that the design patents-in-suit are embodied in the iPad, iPhone, and iPod Touch products.   Applications and related documents with respect to other design patents for the same devices would fall within the scope of the "patents related to" language in these requests.   And as Apple concedes, Samsung has made a specific request for documents relating to any application with respect to the iPad2.[3]

C.     Apple's Burden Argument Is Wholly Unsupported

Apple argues that Samsung's requests should be rejected on burden grounds, Opp. at 2, yet it has failed to present any *evidence* relating to the category of design patent documents that are at issue.   Instead, Apple attempts to manufacture a burden argument by misleadingly claiming Samsung is seeking *all* patent applications, and then asserting that it already has produced "thousands of patents and published applications for patents . . . ."   Opp. at 1.   If Apple's assertions are credited, its production thus far shows only that it is certainly *not* unduly burdensome to provide what should be a fairly narrow group of patent applications and related documents.

What is relevant here is how many *design* patent applications Apple has made with regard to the iPhone, iPod touch, and iPad devices.   Apple has not identified the number of such patents,

---

[3]   Apple has represented that it would "produce U.S. design patents and published design patent applications relating to iPad 2, if any."   Hutnyan Decl., Exh. C (Letter, Jason Bartlett to Diane C. Hutnyan, Feb. 14, 2012).   Yet nowhere in its opposition does it confirm that it has done so, or state that no such documents exist.   This Court should therefore compel Apple to honor its agreement to produce these documents immediately, or state that they do not exist.

or provided any other evidence to support its generalized burden objection. Accordingly, its objections should be overruled.[4]

### D. The Protective Order Is Sufficient to Address Any Confidentiality Concerns

Apple's confidentiality objection is equally without foundation. First, Apple cannot reasonably claim that documents it disclosed to the Patent Office to claim protection on the design of Apple's products are confidential. As demonstrated above, the designs in question are in the marketplace, so any depictions in its filings with the PTO cannot be considered confidential.

Second, the suggestion that production of this information could provide Samsung with a competitive advantage when the documents by definition pertain to products that are on the market, and have been for some time, is absurd. If Samsung wanted to design around the design of the iPad2, or any other Apple product, it could simply buy one.

But even to the extent there are materials within the design application documents as to which a legitimate claim of confidentiality could be asserted, Apple could choose to designate such information as Confidential or Highly Confidential - Attorneys' Eyes Only under the Protective Order. Dkt. 687. Information that meets the requirements for either level of

---

[4] *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 70-71 (D. Conn. 2004) ("A party may object to a request if it is overly broad or unduly burdensome. To assert a proper objection on this basis, however, one must do more than simply intone familiar litany that the interrogatories are burdensome, oppressive or overly broad. Instead, the objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.") (internal citations omitted); *Convertino v. U.S. Dept. of Justice*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008) ("Nor will the Court accept any of Convertino's objections on the grounds of undue burden. This Court only entertains an unduly burdensome objection when the responding party demonstrates how discovery of the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.") (internal quotations omitted); *AIG Centennial Ins. Co. v. O'Neill*, 09-60551-CIV-ZLOCH, 2010 WL 4116555 at *8 n.9 (S.D. Fla. Oct. 18, 2010) ("Centennial also raises an objection on the basis of undue burden but provides no evidence or showing of how or why the production imposes an undue burden. Consequently, the Court does not consider Centennial's objection in this regard.").

1  confidentiality cannot be shown to Samsung personnel."[5]   Further, paragraph 1(a) of the
2  Protective Order makes clear that "[u]nless otherwise agreed by the parties, Protected Material
3  designated under the terms of this Protective Order shall be used by a Receiving Party solely for
4  this case, and shall not be used directly or indirectly for any other purpose whatsoever."   Apple
5  never disputed the Protective Order to the extent that it permitted the use of confidential
6  information in this case, nor did it ever dispute the controlling standard or attendant obligations of
7  the "Highly Confidential – Attorneys' Eyes Only" designation.   It should not be allowed to now
8  make the Protective Order into something other than what it is (i.e., a means to *facilitate* the
9  disclosure of confidential business information) and use it to deny Samsung undoubtedly relevant
10 discovery.

11      There is absolutely no basis for Apple's (offensive) speculation that Samsung's counsel
12 will violate the Protective Order and use the information disclosed for purposes outside the
13 litigation.   Moreover, the Protective Order clearly states in paragraph 6(b) that "[a]bsent the
14 written consent of the Producing Party, anyone who receives one or more items designated
15 "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL –
16 OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" shall not be involved, directly or
17 indirectly, in any of the following activities: advising on, consulting on, preparing, prosecuting,
18 drafting, editing, and/or amending of patent applications (whether for design or utility patents),
19 specifications, claims, and/or responses to office actions, or otherwise affecting the disclosure in
20 patent applications or specifications or the scope of claims in patents or patent applications

---

[5]   Paragraph 9(a) of the Protective Order states: A Producing Party may designate Discovery Material as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" if it contains or reflects sensitive business information that is   trade secret, and/or commercially sensitive, where substantial harm from disclosure cannot otherwise be avoided.   The Parties agree that at least the following information, if non-public, shall be presumed to merit the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation:   trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, cost information, licensing of the Producing Party's intellectual property, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

-8-    Case No. 11-cv-01846-LHK
**SAMSUNG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RELATING TO THE PATENTS-IN-SUIT**

1  relating to the subject matter of the patents-in-suit before any foreign or domestic agency,
2  including the United States Patent and Trademark Office."   And according to paragraph 9(b)(i),
3  "unless otherwise agreed no Outside Counsel who is involved in competitive decision-making, as
4  defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), shall have access
5  to Discovery Material designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
6  ONLY."   In short, there is already a Court Order with three separate provisions, each prohibiting
7  Samsung's counsel from doing that which Apple speculates it will do.   Almost a year into this
8  case, Apple's purported concern that Samsung's counsel will not respect Apple's rights in its
9  confidential business information is clearly a smokescreen, designed to deny Samsung relevant
10 discovery.

11     Samsung's moving papers cited several cases where courts had recognized that protective
12 orders were sufficient to address any confidentiality objections to producing patent application
13 documents.   Motion at 7-8 citing *Zest, Calper*, and *Tristata*.   This was true even where, unlike
14 here, the opposing counsel was a member of the same firm that prosecutes Plaintiffs' patent
15 applications.   *Zest,* at *2.   Apple does not even attempt to discuss or distinguish these
16 authorities, one of which is from this District.   Nor does it cite any case where the Court refused
17 to require production of relevant patent application documents solely on confidentiality grounds.
18 Instead, it makes wholly unsupported assertions that the Protective Order the Court has entered in
19 this case will not protect its rights.   Apple's confidentiality objection should therefore be
20 rejected.

III.    CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court grant this motion and Order Apple to produce all documents relating to any efforts by Apple to obtain design patents relating to the inventions of the patents-in-suit, including any related to products Apple claims embody the patents-in-suit, including the iPad2.

DATED: March 28, 2012         QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   /s/ Victoria F. Maroulis
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC