QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

  Kevin P.B. Johnson (Bar No. 177129
  kevinjohnson@quinnemanuel.com
  Victoria F. Maroulis (Bar No. 202603)
  victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF MATERIALS FROM RELATED PROCEEDINGS AND TO ENFORCE DECEMBER 22, 2011 COURT ORDER**<br><br>Date: April 10, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

02198.51855/4680052.2

Case No. 11-cv-01846-LHK
SAMSUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF
MATERIALS FROM RELATED PROCEEDINGS AND TO ENFORCE DECEMBER 22, 2011 COURT ORDER

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ..................................................................................................1

II. ARGUMENT .................................................................................................................................3

    A. Apple's Admitted Failure to Produce the 796 Employee Transcripts Shows It Has Not Complied With This Court's December 22 Order ................................... 3

        1. Apple Does Not Dispute That Employee Transcripts From The 796 Investigation Bear A Technological Nexus To This Action ......................... 3

        2. The Employee Transcripts Discuss At Length Technological And Design Issues Relevant In This Action ......................................................... 5

        3. This Court's December 22 Order Contains No Exceptions, And Nothing In The Protective Orders Governing The ITC Proceeding Or This Action Justifies Apple's Noncompliance ............................................. 6

        4. Apple's Supposed Offer to Compromise by Agreeing to *In Camera* Submission of the ITC 796 Transcripts Is a Further Effort by Apple to Obstruct Already-Compelled Discovery ....................................................... 9

    B. Apple Imposed Additional Limitations On The Court's Order To Avoid Production Of Other Deposition Transcripts ........................................................... 11

    C. Apple's Refusal To Provide Non-Employee-Deposition Litigation Materials Is Equally Without Merit ............................................................................................ 13

III. CONCLUSION ..........................................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Gibbs v. City of New York*,
    243 F.R.D. 95 (S.D.N.Y. 2007)..................................................................................................5

*Harrisonville Tel. Co. v. Illinois Commerce Comm'n*,
    472 F. Supp. 2d 1071 (S.D. Ill. 2006) .....................................................................................10

*Lurensky v. Wellinghoff*,
    271 F.R.D. 345 (D.D.C. 2010) ..................................................................................................5

*Mead Data Cent., Inc. v. United States Dep't of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ..................................................................................................5

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ..................................................................................................5

**Statutes**

5 U.S.C. Appendix 3 ..........................................................................................................................9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Samsung's motion seeks two specific, overlapping categories of materials from other proceedings: (1) Apple employee deposition transcripts bearing a technological nexus with this action; and (2) other materials, including pleadings, expert reports, and non-employee depositions, and hearing transcripts bearing such a technological nexus. With respect to the first category, Apple's opposition falsely asserts that it has complied with this Court's December 22 Order requiring production of all employee deposition transcripts with a technological nexus by January 15, 2012, when Apple knows it has not done so. While the full extent of deposition transcripts Apple has withheld can only be known by Apple, what it knows for certain is that Apple still has not produced, for use in this action transcripts of depositions of its own design patent inventors in the ITC 796 action, the very same inventors who are listed on the design patents Apple is pursuing in this action, and whose testimony in the ITC depositions establishes that the patents Apple is asserting here are invalid.

Apple never disputes – not could it dispute – that these ITC employee depositions are within the scope of the Court's December 22 Order. *See* Dkt. 536 at 5. Yet, among other excuses, it claims it need not produce these transcripts because Samsung as a party to the ITC proceeding already has them. This is absolute nonsense. This Court's December 22 Order did not carve out any exceptions,[1] and the fact that Samsung may have access to these transcripts for use in another case does not, as Apple well knows, equate with the right to use them in this action. That is why this Court ordered Apple to produce them here in the first place. And until Apple produces the transcripts for use in this

---

[1] This is not the first time in this litigation where Apple has taken it upon itself to limit its own Court-ordered production, necessitating a second motion from Samsung to enforce the Court's order. In response to Samsung's Motion to Enforce Various Court Orders (*See* Dkt. 605) the Court had to compel Apple to produce *all* of the designer sketchbooks, after Apple had unilaterally limited this production to sketchbooks created in 2003 or later, causing the Court to remark that it believed its "earlier orders were straightforward" and that Apple had to produce all relevant sketchbooks regardless of the date. *See* Dkt. 673 at 24. . Similarly, it was only long after Samsung's Renewed Motion to Compel Production of Mac OS X 10.0 that Apple eventually produced a computer installed with Mac OS X 10.0. *See* Dkt. 604.

1  proceeding, it has not complied with the Court's Order.

2  Further, contrary to Apple's suggestion, nothing in the Protective Order in this action
3  ("Northern District Protective Order") prohibits the use of relevant deposition transcripts taken in the
4  ITC action, much less overrules this Court's December 22 Order to produce them.  While the Order
5  allows automatic cross-use of all *documents* produced in the ITC Investigation here in the Northern
6  District, it expressly states that nothing in the Order precludes the parties from seeking deposition
7  transcripts through formal discovery requests, which is precisely what Samsung did.  It is these very
8  requests that the Court already enforced in its December 22 Order.

9  Apple has also read its own limitations into the Court's December 22 Order in an effort to
10 further avoid compliance.  Specifically, Apple has admitted that it only produced deposition
11 transcripts that bore a technological nexus to this action if 1) the deposition was of an Apple witness
12 appearing in this case and 2) that witness' role at Apple is technical.  The Court's Order does not say
13 this.  Rather, Apple must produce the deposition transcripts of any Apple employee, if the testimony
14 bear a technological nexus to this action.  Whether that employee testifies in this case or not, and
15 whether that employee's function is technical, and whether that testimony was taken in one of the
16 cases identified by Samsung in its motion or in some other proceeding, is of no consequence.  Relying
17 on these unreasonable limitations, Apple has only produced 15 transcripts from related proceedings,
18 despite the fact that Samsung has identified eight separate cases that involve the patents at issue (or
19 related patents), implying the existence a much greater number of deposition transcripts.  Apple's
20 flawed and self-serving reading of the Court's Order has allowed it to avoid compliance thus far.  It
21 cannot be allowed to deny Samsung access to deposition transcripts from other actions any longer.

22 Apple also has inexplicably failed to produce the second category of materials encompassed
23 within Samsung's requests, or to provide any legitimate reason why they should not immediately be
24 produced.  These materials were requested in August 2011, and are relevant for the very same reasons
25 as the employee deposition transcripts – because they include valuable evidence and admissions
26 regarding the scope, validity and infringement of the patents-in-suit.  Apple's opposition seeks to
27 blame its non-production on issues presented by third-party confidential business information ("CBI"),
28 but Apple's representations to this Court that it was too burdensome to redact CBI, and its promise to

Samsung that it would produce these materials as soon as consent was secured, turned out to be just a way for it to delay or avoid production. Although Samsung has now secured consent from four of the five third parties at issue, Apple still has not produced any of the materials. Nor did Apple ever produce many of its own pleadings, deposition transcripts, or expert reports that do not contain third-party CBI.

Samsung respectfully submits that the Court should enforce its December 22 Order and require Apple to produce forthwith all employee deposition transcripts with a technological nexus, from the ITC 796 action or any other proceedings, along with the other materials that satisfy the technological nexus standard Apple proposed and this Court adopted.

## II.  ARGUMENT

### A.  Apple's Admitted Failure to Produce the 796 Employee Transcripts Shows It Has Not Complied With This Court's December 22 Order

Apple has the audacity to assert that it "has already complied with" the Court's December 22 Order requiring Apple to produce deposition transcripts of Apple employees that bear a technological nexus to this action. But in the same brief it acknowledges that it has not produced for use in this litigation a major category of these transcripts: those from the ITC Investigation Apple is pursuing against Samsung, in which it asserting very similar design patents invented by the very same inventors as the design patents Apple is pursuing in this action.[2]  As explained below, those transcripts are within the scope of the Court's Order, and Apple's failure to produce them is inexcusable.[3]

#### 1.  Apple Does Not Dispute That Employee Transcripts From The 796 Investigation Bear A Technological Nexus To This Action

---

[2] This is not the first time Apple has made misleading representations to the Court regarding its production of employee deposition transcripts. In opposition to Samsung's initial motion to compel, Apple's counsel asserted that "[f]or the inventors of the patents in suit, it has already produced prior testimony that bears a technological nexus to the patents at issue in this case." *See* Dkt. 502-4 at ¶ 34 (Declaration of Mia Mazza, dated December 15, 2012). . *See also* Dkt. 502-3 at 19(Apple's Opposition to Motion to Compel). Apple knew when it made these statements that it had not produced relevant transcripts from the ITC action.

[3] Apple also acknowledges now that it produced at least one responsive deposition transcript long beyond the January 15 deadline, but claims this was "inadvertent[]". Opp. at 3.

1    The Court's December Order required Apple to produce by January 15, 2012 "all responsive
2 transcripts" from other cases containing "relevant employee testimony from other actions" that bears a
3 "technological nexus" to this case. Dkt. 536 at 5. The Court adopted Apple's own definition of
4 technological nexus to mean "prior cases involving the patents-in-suit or patents covering the same or
5 similar technologies, features, or designs as the patents-in-suit." *Id.* at 5 n.6. "[W]ith respect to
6 design patent inventors, this would include prior cases involving the asserted design patents or other
7 design patents coving the same designs or design elements." *Id.*

8    Apple has never disputed that the employee depositions from the 796 Investigation have a
9 technological nexus with the present case, and for good reason. As the drawings reproduced in
10 Samsung's moving papers demonstrate, the designs depicted in the D'757 and D'678 patents Apple is
11 asserting before the ITC are virtually identical to the D'677 and D'087 designs at issue in this action.
12 Beyond the designs themselves, these patents: (1) have the exact same inventors; (2) list virtually
13 identical prior art, *including the D'889 tablet design patent Apple is asserting in this action*; (3) are
14 claimed by Apple to be embodied in the same products; and (4) are claimed to be infringed by the
15 same Samsung devices. This is shown graphically in the chart attached at the end of this brief as an
16 Appendix. *See* Supp. Hutnyan Decl., Exh. F. Moreover, the 796 Investigation and this action involve
17 the exact same commercial embodiments of Apple's design patents. s*ee* Mot. at 9-10, Exh. N. If the
18 796 Investigation does not bear a technological nexus to this action, then nothing could, and Apple's
19 definition is meaningless.

20    Further, it is notable that while resisting the production of these transcripts, Apple has agreed
21 that (1) *all* documents produced in the 796 Investigation were automatically deemed produced here in
22 the instant Northern District action and vice versa; (2) *all* deposition transcripts from the Northern
23 District Action are automatically deemed produced in the 796 Investigation; and (3) *all* documents
24 and depositions from the 796 Investigation should be deemed produced in the new Northern District
25 matter Apple brought in February. *See* Supplemental Declaration of Diane C. Hutnyan ("Supp.
26 Hutnyan Decl.)", Exh. A-B. Whenever it has suited Apple's interests to claim there a technological
27 nexus between the 796 Investigation and the Northern District cases, it has been more than happy to
28 do so. Yet it has violated a Court order to ensure that its employee deposition transcripts from the 796

Investigation cannot be included in Samsung's experts' reports or summary judgment briefing in this case, with the result that Apple can continue to assert patents it knows are invalid.

### 2. The Employee Transcripts Discuss At Length Technological And Design Issues Relevant In This Action

Not surprisingly, deposition testimony from the many witnesses given in the 796 Investigation is directly relevant to Samsung's defenses to the design claims in this case, including anticipation, obviousness, functionality, and non-infringement. Since Apple has not permitted Samsung to attach excerpts as exhibits or use the testimony at issue in its brief (*see* subsection 4 below), Samsung has provided some general summaries below. In each case, the bulk of the transcript from the 796 Investigation focuses on issues relevant in this action, and many transcripts contain important admissions that will substantially narrow the scope of the case.

- **Jonathan Ive** is one of the lead design inventors at Apple, responsible for the designs of the iPod Touch and iPhone products at issue in both the ITC 796 and California action. In his ITC 796 deposition on February 7, 2012, Mr. Ive testified about the origins, functionality and alleged novelty of the iPhone, iPod Touch and iPad designs at issue in both cases..

- **Douglas Satzger** is a former Apple employee who worked for the company for 10 years and who was an important designer for the iPod touch, iPhone, and iPad. Mr. Satzger testified in detail regarding the functionality of various aspects of the design patents and the products that embody those patents.

- **Christopher Stringer** is an inventor with the Industrial Design group at Apple and has done work with respect to the patents and commercial embodiments of these patents at issue in both this action and the ITC 796 Investigation. During his February 15, 2012 deposition in the ITC 796 Investigation, Stringer testified to many issues relevant to this action, including patent invalidity based on prior art, functionality of various features of the designs, and competitive analyses.

- **Rico Zorkendorfer** is an Apple design inventor who worked on the iPhone and iPod Touch designs. In his ITC deposition, Mr. Zorkendorfer testified about the design and manufacturing processes, the functionality of the designs, the novelty of the designs, and prior art references.

- **Matthew Rohrbach** is an inventor with Apple and has done work with respect to the patents and commercial embodiments of the patents at issue in both this action and the ITC 796 investigation. During his February 23, 2012 deposition in the ITC 796 Investigation, Rohrbach discussed his work on the iPhone, iPad, and iPod Touch, the D'889 patent Apple is asserting in this action, and general functionality issues.

- **Richard Howarth** is an inventor design engineer at Apple who was deeply involved in the design of the iPhone and iPod Touch. In his ITC deposition, he spent substantial time

discussing a number of functionality issues that support Samsung's invalidity defenses.

- **Vincent Voron** is an ergonomics expert who worked on the design and testing of the iPhone. His ITC deposition covered a number of functionality and design questions.

- **Duncan Kerr** has been an industrial designer at Apple for over a decade, and worked on many aspects relating to the iPhone. During his ITC deposition, he also testified on a number of critical functionality issues.[4]

All of this deposition testimony, and that of many other witnesses taken in the 796 Investigation, is critical to Samsung's defenses. The testimony in at least one transcript, Mr. Stringer, would invalidate the very design patents Apple is pursuing here.[5] It is precisely for this reason that Apple is trying so hard to avoid its obligations under the Court's December 22 Order to produce these transcripts for use in this action, and has even refused to allow Samsung to file excerpts under seal in connection with this reply. There is no question that these depositions fall squarely within this Court's Order, and Apple's repeated assertions that it has complied with that Order while withholding these transcripts is a blatant misrepresentation. Indeed, until Samsung has received in this action the employee deposition transcripts from the 796 Investigation – the proceeding with the ***closest*** technological nexus of all – Apple cannot have done so.

### 3. This Court's December 22 Order Contains No Exceptions, And Nothing In The Protective Orders Governing The ITC Proceeding Or This Action Justifies Apple's Noncompliance

Notwithstanding the plain language of the Court's December 22 Order – which requires *all* the transcripts with a technological nexus to be produced without exception – Apple attempts to justify its

---

[4] These are just examples of the many witnesses who provided testimony in the 796 Investigation that is directly relevant to issues here in the Northern District of California. Others include: Bart Andre, Daniel Coster, Eugene Whang, Daniele de Iuliis, Michael Ferrazano, Justin White, Erin Wong, Tracy Durkin, Quinn Hoellworth, Alyssa Sandrowitz, Texas Instruments, David Bungo, Kurt Dammermann, and Bob Borchers.

[5] In order to review the actual testimony, the Court can simply order Apple to make it available to Samsung for use in a supplemental submission (indeed, the Court already ordered Apple to make it available to Samsung for all-purpose use in this case). While Samsung is barred by the ITC protective order from sharing it with the Court, nothing prevents Apple from giving it to the Court, or prevents this Court from requiring Apple to produce these deposition transcripts.

refusal to comply with the Order by arguing that it need not "produce" the transcripts from the 796 Investigation because Samsung already has access to those transcripts, claiming "[t]here is nothing for Apple to 'produce.'" Opp. at 6. But as Apple well knows, the discovery request and this Court's Order required production *for use in this action*. That Samsung has access to these deposition transcripts for use in the ITC 796 Investigation does not allow Samsung use of these materials *in this action*. The Protective Order in place in the 796 Investigation ("ITC Protective Order") prevents Samsung from showing those transcripts to the Northern District Court, court personnel, the jury, witnesses, or anyone else who is not part of the ITC 796 proceeding, preventing the use that this Court granted Samsung back in December.[6]

Apple has claimed that the ITC Protective Order "prohibits cross-use of transcripts." Opp. at 7:10. It does not have any such provision (which is why Apple did not cite one). Further, nothing in that Order would ever prevent *Apple* from producing these transcripts in another matter, or otherwise using them outside the Investigation. These transcripts contain Apple's own testimony, and parties are free to use their own confidential information however they want. Recognizing this fact, of course, Apple readily agreed to deem produced *all* of the CBI documents it had produced in the 796 Investigation here in the Northern District (Dkt. 687, at 33) and there is no reason it cannot do the same with its employee transcripts taken in the 796 proceeding.

---

[6] *See* Supp. Hutnyan Decl. Exh. E at ¶ 3 (796 Investigation Protective Order) ("In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than (i) outside counsel for parties to this investigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of the investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any government agency as authorized by the Commission; and (v) the Commission, its employees, and contract personnel who are acting in the capacity of Commission employees, for developing or maintaining the records of this investigation or related proceedings for which this
  (footnote continued)

1    Nor are there any provisions in the ITC Protective Order that would bar Apple from complying
2    with this Court's December 22 order by producing these employee depositions, or that would excuse
3    Apple from compliance with this Court's December 22 Order.  And no case or statute provides any
4    support for the notion that a party cannot produce its own confidential information because it has
5    designated it as "confidential" in some unrelated proceeding.  Indeed, Apple's position perverts the
6    ITC Protective Order, which was put in place to facilitate the proper disclosure of discovery materials,
7    not to hide evidence.  "The purpose of the provisions of Rule 26 governing protective orders is to
8    facilitate discovery by shielding from disclosure trade secrets and other confidential business
9    information, thereby encouraging parties apprehensive about the disclosure of such information to
10   cooperate in discovery." *Harrisonville Tel. Co. v. Illinois Commerce Comm'n*, 472 F. Supp. 2d 1071,
11   1077 (S.D. Ill. 2006).  In trying to use a protective order as a shield to obstruct discovery, Apple's
12   logic is backwards.

13   Equally unavailing is Apple's attempt to rely on the Protective Order entered in *this* action to
14   excuse Apple from compliance with the Court's December 22 Order.  Apple argues that the parties'
15   agreement to allow automatic cross-use of documents in this case bars the use of any deposition
16   transcripts, but this makes no sense.  The Protective Order actually spells out the opposite: "[n]othing
17   in [the cross-use] paragraph, however, prohibits a party from seeking such other forms of discovery
18   through service of formal discovery requests in this action."  Protective Order, Dkt. 687, ¶ 22.
19   Samsung did precisely that, when it served document requests that this Court enforced in its
20   December 22 Order.

21   Apple suggests that Samsung must have rejected the cross-use of any and all deposition
22   transcripts forever, in deciding against an automatic cross-use provision for all deposition transcripts.
23   Not true.  Some transcripts would not be relevant – that is, those *without* a technological nexus – so
24   there was no need for a provision requiring automatic cross-use of every transcript.  This Court agreed
25   with that view and granted Samsung's motion for production of relevant employee transcripts – which

---

27   information is submitted, or in internal audits and investigations relating to the programs and
     operations of the Commission pursuant to 5 U.S.C. Appendix 3.")

1  it defined as all those with a technological nexus from any case – by January 15, 2012.  In sum,
2  nothing in the Court's December 22 Order, in the protective orders in either proceeding, or anything
3  else, justifies Apple's noncompliance with this Court's Order to produce 796 employee deposition
4  transcripts.

5     **4.**  **Apple's Supposed Offer to Compromise by Agreeing to *In Camera***
6       **Submission of the ITC 796 Transcripts Is a Further Effort by Apple to**
7       **Obstruct Already-Compelled Discovery**

8    After Apple filed its Opposition claiming that it need not produce the ITC 796 transcripts,
9  Samsung requested that Apple agree to permit Samsung to submit the transcripts for this Court's
10 consideration in connection with Samsung's motion to enforce.  Samsung also provided Apple's ITC
11 counsel with a copy of the Protective Order entered in this action and indicated that submission of the
12 transcripts under seal and designated as "Highly Confidential – Attorneys' Eyes Only" would provide
13 sufficient protection for any confidential information in the transcripts.  *See* Supp. Hutnyan Decl.,
14 Exh. C.  But Apple refused and insisted that it would only permit this Court to review the relevant
15 transcripts *in camera* "so that they are not available to the public." *See* Supp. Hutnyan Decl., Exh. D
16 (3-25-2012 email from K. Yohannan to D. Hutnyan).[7]

17   Aside from its nonsensical rejection of under seal filing on the basis that "*in camera* review by
18 Judge Grewal" is needed so "[the transcripts] are not available to the public," Apple made no attempt
19 to justify its insistence of *in camera* submission, ignoring well-established policy favoring protective
20 orders, over the burdensome in camera review process.  *Lurensky v. Wellinghoff,* 271 F.R.D. 345, 356
21 (D.D.C. 2010) (". . . *in camera* review, because of the burden it places on the Court, should be the
22 exception, and not the norm.").  *Gibbs v. City of New York*, 243 F.R.D. 95, 96 (S.D.N.Y. 2007)
23 ("Defendants have suggested that the Court review the documents *in camera* before deciding whether
24 to order their production. While courts have occasionally taken this approach, *in camera* review
25 should not be routinely conducted because it places a substantial burden on the Court . . . .'
26 Defendants in this case have not shown why *in camera* review would be a superior option to
27
28

disclosure under a protective order.") (internal citations omitted).  Normally, *in camera* review is reserved for use in circumstances, such as disputes as to the proper application of privilege, where some parties are not permitted to see the materials submitted *in camera*.  As Apple itself points out, however, Samsung already has the transcripts Apple would subject to *in camera* review.

The reason Apple has insisted upon *in camera* review is because it would 1) require Samsung to seek leave to submit the items *in camera,* delaying  a decision about submission *in camera* until long after the reply brief is due and the hearing is over; 2) force the Court to analyze the documents without the benefit of argument from Samsung about their significance and 3) keep the transcripts out of the record of this action, to obstruct review by Judge Koh and the Federal Circuit.[8]  In fact, aside from creating these obvious problems, there is no meaningful difference between *in camera* review and under seal submission in these circumstances.

The ITC 796 transcripts contain facts about the same designs Apple asserted here, the same embodiments asserted here, the same prior art at issue here, and the same accused products at issue here.  And here, Apple has freely permitted such information to be disclosed under the terms of the Court's Protective Order.  There is simply no conceivable reason those same categories of information from the same witnesses, elicited in the ITC, could not be sufficiently protected under the same Protective Order, unless Apple seeks to create further delay, prevent Samsung from showing this Court the true significance of this testimony and/or prevent the transcripts from becoming part of the record in this case.

Moreover, Apple has made no showing that the information contained in the transcripts was somehow more confidential or sensitive than the highest tier of protection afforded by the Protective Order, Highly Confidential – Attorneys' Eyes Only, could protect.  Apple has accepted this designation as sufficient to protect its most confidential and sensitive information, including its trade

---

[8] "In camera inspection also creates problems for appellate review. District court opinions, like the one in this case, are generally stated in conclusory terms, and the disappointed requestor is not in a position to challenge those conclusions or even to assist the appellate court in focusing its inquiry."
   (footnote continued)

1  secrets and other business information.  Yet Apple's 796 counsel offering *in camera* review only

2  stated that she was not interested in what was in the Protective Order and would not read it.[9]

3  After its *in camera* review proposal was rejected as insufficient, Apple subsequently offered to

4  allow Samsung to attach "the first five pages of each of the transcripts" as exhibits to this brief. *See*

5  Supp. Hutnyan Decl., Exh. C (3-26-2012 email from K. Yohannan to D. Hutnyan).  Such a submission

6  would be useless, allowing the Court to see the caption page, the addresses of the attorneys, the list of

7  exhibits, and perhaps one page of witness testimony.  But in the same email, Apple offered to

8  "*stipulate to the fact that there is a technological* nexus between the NDCal case and the 796

9  Investigation." *Id.*  If Apple is willing to stipulate to there being a technological nexus, how can it

10 justify its failure to produce these transcripts pursuant to Court's December 22 Order, much less argue

11 that the transcripts may be submitted to the same Court that ordered their production only on an *in*

12 *camera* basis?  Apple knows these transcripts are squarely within the scope of the December 22 Order

13 and doesn't want Samsung to be able to prove to the Court that they are.

14 **B.   Apple Imposed Additional Limitations On The Court's Order To Avoid**
15 **Production Of Other Deposition Transcripts**

16 While Apple presents flawed and misleading excuses as to why it has not produced employee

17 transcripts from the 796 Investigation, at least it admits it has not done so.  Opp. at 6-7.  As far as

18 deposition transcripts from other actions are concerned, Apple seeks to avoid its obligations by

19 twisting the Court's December Order into something it is not and creating the illusion of compliance.

20 Specifically, Apple argues in its Opposition that IT has complied because it "searched for prior

21 deposition transcripts for Apple employees who are witnesses in the present matter from Samsung's

22 list of eight cases."  Opp. at 3.  But nowhere in the Court's Order requiring 'production of all

23 responsive transcripts," Dkt. 536 at 5, is Apple entitled to limit its search to only cases Samsung was

24 able to independently learn about.  Apple should have produced all employee deposition transcripts

---

26 *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) *(citing Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973)).

27 [9] *See* Supp. Hutnyan Decl. at ¶ 7.

whose subject matter has a technological nexus with this action regardless of the venue or case in which it was given.

Further, nothing in the Court's Order permits Apple to limit its search to the transcripts of only those employees who were witnesses in this case. Indeed, once it learned of an individual through his or her testimony in a related action, Samsung might have chosen to notice such an employee for deposition in this case. Apple's self-serving reading of this Order deprived Samsung of this opportunity. Moreover, Apple's standard is simply unreasonable. If Steve Jobs, former CEO of Apple, had testified in a proceeding that involved the same patents as those here at issue, would Samsung not be entitled to this transcript simply because Mr. Jobs passed away before he could give testimony in this action? The Court's Order is plainly written, and nowhere states it is limited to witnesses testifying in this case. The technological nexus test governs for all Apple employees regardless of their status in this case.

Last, Apple admits it has not produced testimony given in other proceedings by its employee Mark Buckley because "Mr. Buckley testifies for Apple solely on financial issues. His testimony therefore has no technological nexus to this lawsuit." Opp. at 3. Not so. If Mr. Buckley has testified about financial issues concerning the same Apple products as those here at issue, his testimony would undoubtedly concern the same technology. The Court's Order did not state that the technological nexus test only applies to technical witnesses. Rather, the test looks to whether the patents or products discussed in the deposition are the same as those in this action. A technological nexus can thus, and often does, exist for Apple employees involved in areas such as marketing, finance, licensing and manufacturing, insofar as their work involved the iPhone, iPad or iPod Touch products.

Finally, Apple's partial identification of deposition transcripts it has produced strongly suggests these additional limitations (and perhaps others) severely limited the number of responsive deposition transcripts that were produced. Apple's Opposition identifies by name only four deposition transcripts from other actions it has produced, and does not quantify or identify the overall scope of its production. Samsung has searched Apple's production and located just 15 (from four of the cases identified by Samsung) in Apple's production. Certainly, given even the eight other proceedings Samsung identified that involve the same or closely related patents as those here at issue, and the large

1  numbers of inventors Apple puts on its patents, it is implausible that there could only be 15 deposition
2  transcripts with a technological nexus.

3  As the Court originally contemplated in January, Apple should be ordered again to produce
4  from related proceedings all deposition transcripts bearing a technological nexus to this action, insofar
5  as they contain the sworn testimony of any Apple employee.

6  **C.   Apple's Refusal To Provide Non-Employee-Deposition Litigation Materials Is
7  Equally Without Merit**

8  Apple's violation of this Court's December 22 Order by failing to produce the 796 employee
9  depositions, and its multiple assertions in its opposition that it has complied, are sanctionable on their
10 own, particularly given the importance of this evidence to Samsung's defenses and its devastating
11 impact on Apple's claims. But Apple's disregard for its discovery obligations does not end there, as it
12 has also failed to produce materials from other proceedings that satisfy the technological nexus test.
13 Here too, Apple's conduct is completely unjustifiable.

14 First, there is nothing untimely about Samsung's request for these materials. Apple does not
15 dispute that the materials were requested back in August 2011 when Samsung served its Request No.
16 75 seeking "ALL DOCUMENTS" from the related proceedings, "including, without limitation, any
17 pleading, paper, motion, affidavit, declaration, report, decision, or order . . . ." When Apple refused to
18 comply, Samsung was forced to move to compel, and Samsung had hoped that Apple would produce
19 the other materials once the Court issued its order to produce the employee deposition transcripts.
20 Samsung then negotiated with various third parties to secure consents for the release of confidential
21 business information pursuant to a procedure set forth in the Court's December 22 Order. But even
22 when that consent had been secured, Apple still refused to produce the responsive materials. Apple
23 has only itself to blame for any delay. And that Samsung had to move *again* to obtain the deposition
24 transcripts reflects Apple's complete obstructionism, not any lack of diligence on Samsung's part.

25 Nor is Samsung's request overbroad. The technological nexus standard the Court adopted
26 with respect to deposition transcripts supports the production of other materials. Once the
27 technological nexus standard is satisfied, by definition the materials meet the relevance threshold for
28 production, as they are likely to contain admissions or other evidence relating to same or similar

patents Apple is asserting in this action. For example, in each action involving Apple's design patents, Apple likely will have had to explain how each design patent differs from prior art, including other design patents Apple has obtained. These differences are directly relevant to whether the Samsung products Apple claims infringe are "substantially similar" to Apple's designs. They also bear directly on Samsung's claims that Apple has improperly double-patented the same designs multiple times. If anything, these materials should be relatively easy to locate, because Apple can search for the types of litigation documents from the listed cases that relate to the scope and validity of its patents, or to the claimed features of its products – infringement contentions, invalidity contentions, expert reports and declarations, claim construction briefing and other materials, and the like. In fact, Apple has already located some of these materials, as it recently produced the cover pages only of some of these documents.[10]

Finally, there is no basis to deny the motion based on third-party confidential business information. Apple has never disputed that much of the responsive material does not even contain third-party CBI. Certainly no such information is contained in materials from Apple itself – none of which Apple has produced – and even many third-party materials do not contain third-party CBI.

Moreover, the CBI concern was never real to begin with. In December, Apple told the Court a story about how burdensome it was to redact CBI from these materials and that Samsung should be made to obtain the consents without the benefit of having seen any of the documents at issue or even knowing all the third parties from which consents needed to be sought. As Samsung secured consent from four of the five affected third parties to disclose their CBI to Samsung (the fourth was obtained after Samsung submitted its opening brief), it notified Apple of that consent. Yet weeks later, Apple still refuses to provide responsive information and has offered more excuses and distractions, falsely claiming that Samsung asked for these materials for the first time at the end of discovery and blithely suggesting implementation of a new procedure that would put counsel for Samsung in violation of one

---

[10] Where Apple has nominally provided materials from these related matters, it has in fact only produced cover pages or deposition errata. Certainly, production of caption sheets cannot constitute compliance with this Court's Order nor satisfy Apple's discovery obligations.

1  or more protective orders. The facts show that Apple's intent has never been to facilitate the
2  production of these materials, but rather to stonewall and run out the clock.

3  **III.    CONCLUSION**

4      Apple's opposition confirms that there is nothing it will not do to avoid production of relevant
5  employee deposition transcripts, even if it means thumbing its nose at this Court's Order, and making
6  repeated false statements to the Court about its compliance. While Apple's conduct warrants severe
7  sanctions, which Samsung intends to seek separately in accordance with the Court's Local Rules, this
8  Court should enforce its December 22 Order, and demand that Apple produce the 796 transcripts, and
9  any other responsive transcripts, regardless of the proceeding it is connected to and regardless of
10 whether the deponent is a witness in this action or a "technical" employee of Apple, forthwith. The
11 Court should also order Apple to produce all other materials from the identified related proceedings
12 that satisfy the technological nexus standard.

14 DATED: March 28, 2012               Respectfully submitted,

                                      QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                      By/s/ *Victoria F. Maroulis*
                                          Charles K. Verhoeven
                                          Kevin P.B. Johnson
                                          Victoria F. Maroulis
                                          Michael T. Zeller
                                          Attorneys for SAMSUNG ELECTRONICS CO.,
                                          LTD., SAMSUNG ELECTRONICS AMERICA,
                                          INC. and SAMSUNG TELECOMMUNICATIONS
                                          AMERICA, LLC