# EXHIBIT 11

European Telecommunications Standards Institute

ETSI

10th Technical Assembly
Nice, 4-6 June 1991

ETSI/TA 10 (91) 17

Date:            15 May 1991

Source:          S. Temple, Chairman of the Technical Assembly

Title:           Reflections of the TA Chairman on ETSI's IPR policy

Agenda item:     6

Document for:    Decision

D/215/91/ST/jg

Confidential Business Information,
Subject to Protective Order

S-ITC-003390553

Source:   Chairman of the TA

Subject:   Reflections of the TA Chairman on ETSI's IPR policy


1.    This is the most difficult issue I've been required to handle as Chairman of the TA. The matter is complex and I'm no IPR expert. I've even managed to misquote the ISO text. But I've now spent enough hours under the guidance of real experts to know enough to come to a fairly firm conclusion that:

i      The present ISO policy is quite insufficient for ETSI.

ii     We are in the risk reduction not the risk elimination business

iii    There is no perfect answer.

iv     We find ourselves seeking a delicate compromise between conflicting but quite legitimate interest of members.

v      We are not likely to improve the quality of that compromise by further negotiation, bearing in mind that we have already had two years of discussion in the IPRC

2.     At the last TA I undertook a personal initiative to find a way out of the impasse ETSI finds itself in. I had envisaged an informal meeting of some interested parties to find a compromise. In fact I've had some 5 meetings of varying size and twenty telephone calls. The public network operators will be no doubt pleased to note that some of the telephone calls were very long indeed.   I've emerged with a compromise proposal. Its weakness is that nobody is yet committed to it and most members can no doubt find something in it to criticise. Its strengths are the following:

1      It preserves the right of members to decide whether to put specific IPR they own into the ETSI arrangement or not.

2      It reduces the risks of IPR complications in a progressive way. For example when a work item begins we all know immediately that all members' IPR not otherwise declared will be available on fair and reasonable non discriminatory terms. This will help keep the IPR lawyers out of the arguments in ETSI Technical Committees since the IPR rules are the same for all solutions.

3      It fully recognises the financial reality that IPR searches will be expensive. The division of standards into two categories will allow ETSI to contain costs of searches but those it does embark on can be thorough. This priority setting provision is in keeping with ETSI's businesslike management approach.

Confidential Business Information,
Subject to Protective Order

4    It also recognises that IPR searches will be time
     consuming. It is not just a question of finding IPR
     titles from a computer search. The claims must be
     compared by experts with the detailed content of our
     standards. Thus the 21 months offers a practical
     working basis. This leads logically onto separating
     the IPR search from the approval procedures.

5    The indemnity proposal is a compromise based on an
     analysis of what exactly is new and where the risk
     break points are. Before GSM came along I doubt if any
     Engineer had heard of IPR indemnity provisions in
     procurement contracts. Now the matter has grown into
     a tiger frightening us all. My compromise proposal is
     aimed at slaying this tiger. I've set out to
     significantly reduce the size of the problem and then
     asking for an effort from all sides for an equitable
     sharing of the much reduced problem.

6    It addresses the criticisms made of the current IPR
     undertaking such as the practical aspects of the
     cumulative royalty provision. The problem is not
     ignored but solutions are not imposed.

7    The careful balancing of different interests, after
     wide consultation, gives grounds for thinking that it
     stands the best chance, given good will, of securing
     a consensus.

3.   All members have the right to put alternative proposals to
the Technical Assembly. If presented in writing in advance they
will be given preference in the TA discussion. In the absence of
any such alternatives, I will put my compromise proposal forward
to the TA as a package of principles. Note the word "principles".
I propose we avoid getting involved in discussion of detail. The
TA is not being asked to approve a text but only a set of
principles. Note also the word "package". In theory everything
can be changed. In practice it is likely to mean that if anyone
tries too hard to eliminate one bit they don't particularly like,
others are likely to emerge to try to eliminate other bits.
However, we must face the fact that we may have to make changes
in the light of advice from the political/regulatory authorities.
There is also a lot of detail to be filled in afterwards.

4.   It is my intention to make every effort to secure a
consensus. However, the TA has to come to a clear view on where
we go from here.

Source - TA Chairman

D/215/91/ST/io

Confidential Business Information,
Subject to Protective Order

ETSI/TA 10 (91) 17
Page 4

## COMPROMISE PROPOSAL ON THE PRINCIPLES OF AN IPR POLICY FOR ETSI

The 10th Technical Assembly:

**RECOGNISING**

that the mission of ETSI is to contribute to a high order of standardisation, facilitating compatibility between telecommunications infrastructure and inter-operability of services across Europe and between Europe and the rest of the world

that ETSI needs to have an IPR policy for its mission to be successful and that the ISO/IEC or CCITT policy is not sufficient for all ETSI standards both now and in the future

that the objective of an ETSI IPR policy to reduce the risks to its mission can best be achieved by some sort of undertaking given by ETSI members in respect of their IPR

that in drawing up such an undertaking it is necessary to achieve a balance bearing in mind the significant R&D investments members have had to invest in order to create their IPR and the not insignificant benefits to them, both directly and indirectly, that an ETSI standard can confer.

that an undertaking has to be put in the context of ETSI's rules and standards making procedures and the IPR policy needs to include an IPR search for the more significant standards to further reduce the risks of IPR complications

**NOTING**

the high risk ETSI and its members are incurring in there being no ETSI IPR policy and therefore the urgency to agree the procedures, rules and undertaking related to IPR matters in ETSI

the fact that there is no perfect solution to the IPR issue and that any solution will be a compromise that attempts to find the fairest possible balance between quite legitimate, but at times conflicting, interests of different members that ETSI, as a private organisation, needs to take care that it doesn't itself create distortions in the market and at the same time cannot be expected to redress the distortion that can arise when regulatory authorities legally enforce voluntary ETSI standards and such problems are the province of the regulatory authorities

D/215/91/ST/jg

Confidential Business Information,
Subject to Protective Order

**INSTRUCTS THE DIRECTOR**, in consultation with the GA Chairman and TA Chairman and drawing upon the expertise of the IPRC, to draw up an IPR policy document (in a form understandable to all members), comprising a revised members' undertaking, procedures and consequential amendments to the ETSI Rules of Procedure according to the following principles :

1    **Members rights to refuse use of their IPR**

Members having IPR should have the discretion to decide that a specific IPR is not to be included in the ETSI IPR policy arrangements for a specific standard. However, to be fair to other members, that decision and associated details must be made known before work begins on a specific standard so as to avoid nugatory work and investments by all other members.    The ETSI IPR policy arrangements will be based on the premise that silence on the matter after a defined period following the Technical Assembly that adopts the work item is an undertaking by all members that, subsequently, all relevant essential IPR they may have comes within the arrangements. This shall apply to all ETSI standards. Here and subsequently "standards" shall mean both ETSs and I-ETSs. Where any software, algorithms and mask work is included in a standard it shall result from a proposal to ETSI from a member or members who, in submitting the proposal, will be undertaking that the associated IPR will come within the ETSI IPR policy arrangements.

2    **Setting priorities for IPR risk reduction**

At the Technical Assembly that adopts the work item for a specific standard, the members shall decide whether the standard is to fall into one of two categories:

Category A –    Those for which there shall be no IPR search activity organised by ETSI.

Category B –    Those for which ETSI will organise an IPR search activity. Standards where members feel particularly difficult indemnity problems may arise are likely to be put in this category.

Confidential Business Information,
Subject to Protective Order

S-ITC-003390557

An effective IPR search activity will be expensive and the TA may be expected to take budgetary guidance from the GA into account, as well as other factors, in deciding which standards will fall into category B.

3   **Disclosure by members of essential IPR for category B standards during the public enquiry**

For category B standards, at the time of the public enquiry, members shall undertake, on a best endeavour basis, to submit to the Director any relevant essential IPR they are aware they have. This will significantly reduce the cost of search activities. As a confidence building measure between members, particular effort will be made by members to submit relevant essential IPR filed during the work programme period but only that for that specific standard.   For IPR filed during the work programme period that is not declared or found in the subsequent ETSI organised search, members undertake not to seek retrospective royalty.

4   **Partial information on essential IPR for category A standards during the public enquiry**

For category A standards members may, at the time of the public enquiry and if they so wish, submit to the Director any information they have on essential IPR, either their own or belonging to others.   The Director will circulate this information to all members.

5   **ETSI organised IPR search for category B standards to further reduce risks**

For category B standards ETSI shall organise an IPR search paid for from one of the ETSI budgets. This will begin as soon as the draft standard is put out on public enquiry. At least 18 months after the draft standard is put out on public enquiry, a top-up search shall be carried out to flush out any IPR in the patent system pipe line.

6   **Fair and reasonable non-discriminatory reward for IPR owners**

Members will be entitled to just recompense for the use of their IPR. This shall be on fair and reasonable non discriminatory terms. Payment shall be in cash unless the two parties mutually decide to the contrary. Non discriminatory shall mean that those entitled to receive a licence shall be given comparable terms.

7   **Final assessment of financial risk in implementing a category B standard**

For category B standards members shall submit to the Director the maximum royalty they seek for their essential IPR. The Director will write to third parties identified as

Confidential Business Information,
Subject to Protective Order

holding essential IPR and seek the same information. This information shall be submitted to a meeting of the IPRC on that standard. This IPRC meeting shall be termed an IPR declaration meeting for that standard and shall be held typically 21 months after the public enquiry date. Where the IPRC decides that the cumulative royalties are likely to prejudice the successful implementation of that standard, it may initiate a cumulative royalty negotiation between members having essential IPR. The IPRC may invite third parties to this negotiation. Members undertake to enter such negotiations in good faith but there is no obligation on members to accept any particular outcome. The IPRC shall issue a IPR declaration statement on the standard in question containing all the available information. This shall be available to all members and any party in the territory.

## 8   Risk sharing against a third party blocking IPR being revealed prior to completion of the search activity

Where members place purchasing contracts that include a requirement of compliance with a category B standard and where these contracts are placed prior to the IPRC declaration meeting, then there is a high risk that a third party IPR could be discovered where a licence is not available on fair and reasonable non discriminatory terms. Members placing such contracts in this period agree to share the risks with their supplier on a 50:50 basis. After the IPRC declaration meeting a risk still remains of third party IPR being discovered. However the risk is considerably lower. Thus purchasers and suppliers agree their own terms on indemnity in the usual way.

## 9   Territory, entitlement for a licence and reciprocity

Licences must be for all the territory. To be entitled to a licence parties, who may be ETSI members or non members, must be established in the territory and the relevant equipment and systems to the ETSI standard must be manufactured in the territory. However, licences must allow manufacturers to have sub-equipment and components only manufactured outside the territory. There is no requirement for technology transfer other than that agreed between the parties.  The territory shall be as defined in the present IPRC draft undertaking. Associate Members who have signed the IPR undertaking and apply the ETSI standard are also entitled to a licence. However, ETSI members shall not be required to grant a licence to any party who refuses to grant to them a licence for an essential IPR for the ETSI standard or a directly equivalent standard.

## 10   Irreducible third party IPR blockage

Where, for either category of standard, a third party refuses to licence their IPR on fair and reasonable non

Confidential Business Information,
Subject to Protective Order

discriminatory terms, members having a relationship with the third party will, on a best endeavour basis, make every effort to resolve the problem according to the principles of ETSI's IPR policy. If this is not possible the standard will be withdrawn and returned to the Technical Committee with a view to finding an alternative non-infringing solution. If this is not possible the standard will not be re-issued.

11   **Legal aspects**

The undertaking shall be binding on members and their affiliates. The precise legal form of the undertaking is to be studied taking into account, to the extent possible, any special problems. There needs to be an incentive for members to sign the undertaking. The preferred one is to make it a condition of membership. But an alternative of making it a condition of participation in ETSI Technical Committees will be kept open for the GA to take a decision on the basis of the political and legal advice. Enforcement of the undertaking between members as well as between a member and ETSI shall be possible. Disputes between members on IPR matters shall be resolved through arbitration.

12   **Decision taking in ETSI**

Decision taken within ETSI in support of the operation of an ETSI IPR policy shall be based on weighted individual member voting.

**FURTHER INSTRUCTS THE DIRECTOR**

A.   To seek the advice of the EC Commission and the EFTA Secretariat on the principles set out above from the viewpoint of competition policy, standardisation policy, telecommunications policy and external trade policy.

B.   To seek the views of CEN and CENELEC via the Joint Presidents Group.

C.   To seek the opinions of the Director of the CCITT and CCIR.

D.   To seek the opinions of the USA T1 Committee and the Japanese TTC at the inter-regional meeting in September on the draft ETSI undertaking as the basis for a new CCITT policy.

E.   To clear the final draft of the IPR undertaking and other associated documents with the EC Competition authorities.

F.   To put before the next Technical Assembly an IPR policy document comprising a revised members undertaking, procedures and consequential amendments to the ETSI Rules of Procedure for comment and to the next General Assembly for their consideration and approval.

Confidential Business Information,
Subject to Protective Order

**DRAWS THE ATTENTION OF THE EC COMMISSION AND THE EFTA SECRETARIAT TO**

i   the potential problem that could arise in respect of the utilities directive where a member decides to withhold IPR for the highest known technology. This relates to the derogation on the mandatory use of standards, where the solution is of a genuine innovative nature.

ii   the potential problems arising more generally with the EC legal enforcement of ETSI standards, since these standard are likely to infringe Intellectual Property Rights held by individuals and organisations both inside and outside the EC.

D/215/91/ST/lq

Confidential Business Information,
Subject to Protective Order