# EXHIBIT 12

**ETSI GA ahg on IPR#2**
**Sophia Antipolis,**
**3 − 4 March 2003**

| | |
|---|---|
| **Source:** | **GA Secretary** |
| **Title:** | **Secretary's meeting notes** |

Note:    These are not formal minutes but the Secretary's detailed notes of the meeting. Important issues and agreed decisions/actions are <u>highlighted</u>. Text quoted directly from emails/documents is given in Blue.

## 1    Opening of the meeting and adoption of the agenda

Karl Heinz Rosenbrock, Director-General, opened the meeting and welcomed the attendees. The draft agenda was adopted [GA/IPR02(03)01].

Secretary's raw notes to be provided immediately after the meeting.

## 2    Results from Questionnaire sent to ETSI Members

Stephane Tronchon reported that the questionnaire had been sent to the members as CL 2233. So far, ten replies have been received: two in favour of removing the SUN declaration and eight in favour of keeping it and adding a note referring to the EC comments.

Director-General - insufficient replies to be representative.

## 3    Discussion of issues

Director-General - documents provided from issue managers are the basis for consolidation on each issue and are to be further developed to provide the final result on each.

### 3.1    Timely disclosure of essential IPRs (John Phillips)

John Phillips introduced [GA/IPR02(03)08]. May be some overlap with Issue 2.

Section by section:
**section 2.1** - no problems
**section 2.2** - Director-General highlighted first sentence as important.
**section 3.1** -

> Recommendation 1: There should be no further definition of timely since this would change the policy, but we should implement mechanisms to improve timeliness and deal as far as possible with the uncertainties.

Lafuente - comments provided on document [GA/IPR02(03)08 - comments ALB]. Highlighting that TB Chairman's guide is not accurate and needs clarification, see below:

We do not believe that a definition of "timely" would necessarily imply to change the policy. The definition could be added to the Technical Body Chairman's Guide as a reference. We nevertheless believe that it is better to define what is "out of time" or "unfair delay" within the scope of "issue#02 – Issues arising from Late submission of IPR declarations."

For better guidance, it is also proposed to extend the text included in page 6 of the TB Chairman's guide as follows:

"A formal call for IPR must be made by the Chairman at the beginning of each meeting. A shorter call for IPRs should be made:

Confidential Business Information,
Subject to Protective Order

    i)        On formal submission of a technical solution
    ii)      On completion of the first stable draft of the Standard;
    iii)     On working group approval of a draft Standard
    iv)     On TB approval of a draft standard

Any essential or potentially essential IPR declaration shall be made at the earliest possible stage within i) to iv) above."

Phillips - happy to include a recommendation to update the guide.

Ibottson - many possibilities that TB members have no obligation to search, early disclosure encouraged but may not happen until standard is stable to prevent many declarations which become irrelevant. need to find balance between early disclosure and timely disclosure.

KHR - encourage early/timely general declaration and with further clarifications to follow.

Wimmer - is Chairman's guide sufficient for highlighting these issues, could consider other ways to do it.

KHR - lets focus on addressing the problems and then decided how to implement.

Love - what about third parties, concept of timely may be different, more of a problem than member's IPRs. Encourage Members to raise the issue of 3rd party IPRs as soon as they become aware of them.

Kar - what about use of simple form for third party declarations.

Tronchon - this is already current practice in ETSI (e.g. when informed, the ETSI Secretariat contacts the IPR holder to inform about the ETSI IPR Policy obligations and to ask about his position). From a contractual point of view it is not possible to make a declaration on behalf of someone else (you cannot bind a third party, the IPR declaration has to come from the third party itself).

section 3.2 -



> Recommendation 2: The implementation guide should recommend specific mechanisms to all members having IPR portfolios, which improve their internal IPR coordination processes and ensure as far as possible that their standards body attendees' understand their obligations, and know how to discharge them.

Tronchon - current practice is to perform an IPR call at the beginning of every TB/WG meeting.

KHR - is this valid ?.

Phillips - OK within ETSI but need to make suggestions towards the internal process of the Members themselves.

Lafuente - Draft text proposed to be included in the TB Chairman's Guide (or in the "IPR Implementation Guide):

In order to settle down the basis for a "timely" disclose of IPR coming from ETSI members, an appropriate internal information policy should be established by those ETSI members which may have essential IPR. The objective of this internal information policy is to guarantee that participants in technical working groups within ETSI Technical Bodies are aware of any essential or potentially essential IPR its company may have related the on-going work on a particular ETSI STANDARD or TECHNICAL SPECIFICATION



> Recommendation 3: The implementation guide should encourage members to use general IPR declarations and then refine or withdraw their declarations as more information becomes available.

Confidential Business Information,
Subject to Protective Order

Lafuente - proposals for additional text:

As a specific example (which will need to be developed), the guide on the implementation of the IPR policy should invite members who may have essential IPRs to adopt the following procedures:

- At the approval of a new Work Item members should be encouraged to provide a general declaration under the existing IPR policy relating to any products meeting the standards which emerge from that work item. If the IPR declaration is related to either granted patents or public patent applications, this information should also be provided in a detailed IPR declaration.

- At the stages of completion of the first stable draft of the standard, working group approval of a draft standard and approval of the draft standard by the Technical Body, members providing a general declaration under a specific Work Item should be invited to refine or remove their general declaration. If during any of these stages there are either granted patents or public patent applications not previously declared, this information should be provided, at the earliest possible stage, in a detailed IPR declaration.

KHR - difficult to make individual declarations at the creation of a new WI as the scope is not clear at that point.

Lafuetne - if IPR does exist and is clear then should be declared at this time.

KHR - agrees if possible but may be a general statement and follow-up with detailed declaration later.

Kar - if the call results in no declaration information then this should be noted (as per Document 08).

Lafuente - but some people do not declare and then leave iot very late.

KHR - difficult to be complete ask Phillips to include these ideas.

Hengevoss - two other communities:  IPR holders not members of ETSI, and members not active in the TB who may also have an IPR.

KHR - problem is how to communicate to the members not active in the TB ?

Lafuente - proposal for new Recommendation:

> Recommendation 3a: work closely with other SDOs and propose then to adopt ETSI procedures related "timely" disclosure of IPR. This proposal should be based on the outcome of this GA Ad Hoc Group.

Adams - welcomes passing on our findings to other organizations, valuable cross-fertilization, e.g. ITU.

KHR - agreed that after GA approval we will disseminate our results to all other SDOs (via GSC ?).

Action on all to consider mechanisms for members internal processes for management of IPR portfolios. Phillips to include these ideas.

## Section 3.3

> Recommendation 4: The implementation guide should recommend that those members developing products based on standards where there may be essential IPRs, but there is uncertainty, should put in place financial contingency, based on their assessment of "reasonable" (a separate issue in this discussion) against the possibility that license fees might become payable.

Lafuente disagrees - *We do not agree with recommendation 4 as it is going too far. The decision to put in place a financial contingency to be prepared for the payment of license fees, if that would finally be the case, is an internal company decision and ETSI should not make any recommendation on this issue.*

**Confidential Business Information,**
**Subject to Protective Order**

Ibbotson - Rec.4 is a good business sense recommendation, even though the its the individual members business to do it or not.

Lafuente - information on IPR existence affects all members but financial is a company matter only.

KHR - should not prevent members providing examples of "good practice".

Kar - seems like a good recommendation, up to the member to follow or ignore.

KHR - Lafuente position noted but majority in favour of keeping initial Recommendation 4.

Hengevoss - text could be perceived as a threat to marketing people.

KHR - idea is to remind members that some license fees may be payable and early provision should be made to cover them.

Love - this simply backs up the policy with states that IPR holders should be adequately and fairly rewarded for the use of their IPRs.

### 3.2    "Late" IPR Information Statement and Licensing Declaration (Peter Adams)

Peter Adams - [GA/IPR02(03)02].

KHR - Phillips/Adams to resolve overlaps issues between 01 & 02.

### Section 2

Lafuente - at TB level Non-availability of licenses may be the only problem. For ETSI members also may be related to FRAND and late declarations.

Adams - need to make a distinction between late declarations and actual cost of licenses. The latter is not an ETSI issue.

Kar - if there is a declaration then either no licenses or must be under FRAND.

KHR - note comment from Lafuente.

KHR - 3rd bullet, re. "unfair delay is not always intended" ?

Adams - should be simply "extra delay..." as delay can be due to error or omission rather than deliberate.

Tronchon - bullet 6, re. Article 8 - what is a substantially breach and then what are the obligations. Obligations are to inform in a timely manner, then to make a licensing declaration. At present, timely is not tightly defined - late declaration is not necessarily a breach.

Lafuente - minimum is to document and demonstrate in writing when a breach is suspected.

Kar - if a general declaration has been made then subsequent declaration cannot be late, however there may be a commercial issue.

Lafuente -
> Article 8 of the Statutes: "Expulsion shall be decided by the General Assembly for non-payment of contribution or for other substantial breach of obligations as a member". There is no need to change the Policy; there is just a need to determinate if an unfair delay may be considered as a substantial breach of the obligations of an ETSI member.

Adams - seems that text is doc.02 is basically - maybe change unfair delay to unreasonable delay. Seems to be that we are trying to define something which is outside of the present policy.



**Confidential Business Information,**
**Subject to Protective Order**

KHR - Lafuente point is only relevant to case where a members has deliberately delayed declaration to obstruct the policy, in this case then some sort of penalty by the GA could be foreseen. This would not necessarily need to be a change of the policy.

Lafuente - if you can demonstrate that a member has an IPR and are aware of it but do not declare it (or refuse to declare it) then this would be a breach.

Tronchon - in such a case only the GA could decide if this is a breach of ETSI policy or not - but penalty issue is difficult.

KHR - ok, proving is a different issue, case under discussion is assuming proof is available.

Adams - seems to be a dangerous situation for such a GA decisions.

Frain - even if a member is expelled then the IPR would still exist but would be from a 3rd party. So expulsion may not be a good penalty.

Tronchon - even then we deal with it as a normal 3rd party issue - most likely that we would already have to consider redrafting the standard - this could be more problematic.

KHR - Lafuente to provide clear proposals/example for inclusion in next document.

Love - in the US, there is a case of a company who deliberately retracted their SDO membership to escape from FRAND conditions. Note for background information (Rambus).

Sanchez, case has been reversed and is being completely re-run. Problem can be for ETSI members being taken to court in the US and then having a large court ruling against them because the US court doesn't understand the rules.

KHR - should make this case info available as input for future discussion.

Wimmer - re bullet 2. other SDOs, what happens when ETSI takes over something from another SDO and no IPR call has been performed.

Adams - this is a particular case. This text covers "on-block" usage of other SDO work. Maybe need to add guidance in TB Chairman's guide to contact ETSI legal advisor before accepting input from outside bodies.

Ibbotson - if PAS then normal process applies and it includes an IPR check provision.

Lafuente - Proposals to sanction "unfair delays" may be considered as "recommendations" or as "implementation guidelines" to be included in the Technical Body Chairman's Guide or in the "ETSI IPR Policy guidelines". We agree that issues related to sanctions are more related with issue 7 – Dispute resolution.

King (by email) - Perhaps could define the delay as "intentional delay" rather than "unfair delay", where the intent must be evidenced by some tangible evidence. E.g., the party later seeks additional licensing fees for the patent which was not timely declared. If a portfolio of patents is licensed, this would not typically be an issue, since even if the patent was late being declared, no additional licensing fees would be charged by the portfolio licensor. Adams - to consider in next version.

Lafuente - re. last bullet:
Alternative proposal: it is proposed to extend the text included in page 6 of the TB Chairman's guide as follows:

"A formal call for IPR must be made by the Chairman at the beginning of each meeting. A shorter call for IPRs should be made:

v)      On formal submission of a technical solution
vi)     On completion of the first stable draft of the Standard;
vii)    On working group approval of a draft Standard
viii)   On TB approval of a draft standard

Confidential Business Information,
Subject to Protective Order

Any essential or potentially essential IPR declaration shall be made at the earliest possible stage within i) to iv) above (already proposed on issue 1 # Timely disclosure of essential IPRs)."

A declaration not made at the earliest possible stage may be considered as made "out of time" if there are evidences that demonstrate that the delay was unfair and intentional.

Sanchez - if you don't assert you IPR rights you may loose it.

Tronchon - this is not the case under French (civil) law.

Adams - to take proposal into consideration. Need to identify between adding to the Policy and changing the policy. This could be in the grey area of change or clarification.

**Section 3**

Lafuente - see version of document with comments.

re. bullet 1) - implementations may be delayed if there are late declarations.

KHR - basic issue is if a late declaration is only a major problem if it does not comply with FRAND.

Adams - remove "only".

re. bullet 2) - comment Lafuente agreed.

re. bullet 3) - risk in direction of change to policy ?

Hengevos - supports the 3/6 months idea. Kar also supports but it means that a company which does not even come with a general statement within 6 months should have their IPR excluded !

Kar - a member bringing an IPR declaration after the publication nof atsndards should not be permitted to block implementation.

Urie - what happens if someone misses the fact that the have an IPR - would the company then take court action agnaist other members for use of IPR without a license.   KHR - please provide written inputs for consideration.

re. bullet 4) - comment Lafuente noted.

Ibbotson - difficult subject, not sure what's timely, not sure what's unfair, need to focus on ETSI's role as a standards body.  Should not get involved in commercial issues of members companies.

KHR - any members can appeal to the GA at any time.

Adams - ETSI policy in-line with ITU policy.  In ITU have had cases of standards being stopped due to IPR issues.

Urie - fixed timing is dangerous, should focus on defining the crime.

re. bullet 5) - comment Lafuente noted under out-of-scope.  Need to define first then look for how to handle.

re. bullet 6) - comment Lafuente noted. Need to define first then look for how to handle.


**3.3      Challenges to declaration of essentiality (Albin Schaetzle)**

Document presented by Alistair Urie for Albin Schatzle [GA/IPR02(03)07].



Confidential Business Information,
Subject to Protective Order

Section 1) =ok
Section 2) =ok

Section 3.1) =

Kar - if only a court can judge on it then we should have a European court.

KHR - what does IPR policy 6.2 say.

Urie - 6.2 covers only requests to investigate a search for an IPR which has not been notified.

Sanchez - thinks ETSI did this in the past.

KHR - so we see that article 6.2 cannot be used to request ETSI to check the essentiality of a notified IPR only to search for non-notified IPR.

Frain - article 6.2 is not related to investigated essentiality, it is related to searching for missing IPRs.

KHR - what does 6.2 really say for ETSI.

Adams - does not express any judgement on essentiality, always "maybe be" or "may become".

Lafuente - believes that the logical conclusion of article 6.2 could imply the removal of a declaration if the investigation shows that its non-essential.

Urie - this fits better under section 3.2.2.

Tronchon - 6.2 has no obligation for ETSI to prove essentiality - only to search for missing IPRs.

Lafuente - "an investigation including an IPR search"  so can be anything.

KHR - majority seem to understand that this means that the EC cannot use this clause to challenge an existing declaration but only to search for undeclared IPRs.  Noted that Lafuente does not agree.
Ibbotson - even then the best ETSI could achieve is a legal OPINION and not a decision.

Hengevoss - is there any other article which could be used to force ETSI to perform a search or check = no.

Urie - no concl;usion under 6.2 could cancel the obligation under 6.1 to publish information.

KHR - Stop this discussion.  Majority understand that the EC cannot use this clause 6.2 to challenge an existing declaration but only to search for undeclared IPRs.

**Section 3.2**

Kar - as notifications in the database are bone-fide ETSI cannot removed them or change them in any way.

Urie - ETSI can add to complete and existing declaration, to update legal information or to add additional information.

Adams - clear that ETSI can update the database with facts but cannot give any opinion.

Lafuente - supports addition of warning messages as customers believe that existence of a declaration means that there is a need to pay license fees so they want to see all additional information included (as a minimum a warning message).

Suff - can only publish bone-fide information or information which has been validated, otherwise it is only hearsay.  Must include disclaimers and pass the buck to the source of the information.

**Confidential Business Information,
Subject to Protective Order**

Ibbotson - need to be careful, even with information from the EC.  Must avoid being used for political purposes.  ETSI should not get involved.  Would think twice about accepting any comment except from a court judgement.

Urie - how do we decided what is valid source.  need to agree on the three bullets first.

Adams -

Kar - information could be miss-used or used to change a standard to avoid ......

Tronchon - ETSI would only reflect information which is public, of a certain legitimacy and only when agreed by the membership.

Pocknell - don't see the difference between a bona-fide declaration and a bona-fine challenges.

Kallay - ~~burden of proof is on the challenger~~Indeed there is no reason to place a higher burden of proof on the IPR-challenger than on the entity declaring the IPRs.  Mr. Tronchon's suggested interpretation assumes that all IPR declarations true and represent essential IPRs and thus do not require proof, while declarations challenging IPR are presumed invalid unless positively proven.  What is the rationale behind placing all the burden of proof on the challenger alone?  Note that allocating the burden of proof in this manner inherently tilts the policy in favor or IPR holders and against entities which possess less or no IPRs.  Therefore common sense gives that the burden of proof should rest equally on both contenders[1].

KHR - if the holder agrees to FRAND does it matter whether its essential or not.

Sanchez - in the beginning of GSM, ETSI did look at the IPR issues and resolved a number of patent issues.  re. the database, in US courts this is being used to justify the validity of essential IPRs, also with the proof of burden shifted.  List is being used for purposes which was not intended.

Ibbotson - ETSI did not perform GSM searches it was the pre-ETSI CEPT working group.

Buttrick - yes, exact.

Friis - message is that people are mis-using our database.

Tronchon - use of database is covered in 5.

Hengevoss - SMEs suffer from not having their own IPR portfolio for exchange so they rely on the ETSI database - SMEs want all valid information to be available.

Frain - if updates are allowed, how do you set the threshold to decide its valid input for addition.

Kar - issue is who takes responsibility for publishing it.  Why not create an IPR discussion forum on the website and let all concerned debate openly about comments/challenges to declarations.

KHR - back to three bullets under 3.2.2 = first two bullets agreed - difficult to decide on 3rd.

**Section 3.2.3**

KHR - reaction of TB if there is a change. ?

Lafuente - if an IPR becomes non-essential then the implementations don't need to pay license fees.

Wimmer - if some changes from non-essential to essential no change needed.  If from essential to non-essential then change to database so people know they don't need licenses.

section 3.2.4) removal



---

[1] Change requested by Dina Kallay.

Confidential Business Information,
Subject to Protective Order

Urie - if a court proves non-essential then can be removed. Problem if ETSI removes something because it believes its non-essential and then a court finds it is essential - oops..

Frain - notifications in database are indicating that there is a risk that there may be an IPR, so should not delete anything from the database.

Suff - could have two sections: essential and non-essential.

Lafuente - could be deleted upon a Board decisions or resulti9ng from article 6.2.

KHR - if there is a court decision stating that an IPR is non-essential can we remove it. No because the court is only valid on a national basis.

Sanchez - in US you can get different decisions from different federal courts on the same patent.

Friss - the fact that is is in the database is the only issue which matters.

Ibbotson - courts only decided on individual infringements for a particular implementations and not on the essentiality of the IPR.

KHR - so we can't trust court decisions.

Urie - seems that conclusion is that we never remove a declaration excpet on request of the patent holder.

Frain - a different issue if a court decides that a patent is invalid, i.e is not a valid patent (Urie - careful even that is only national).

Hengevos - but we can always change the status without removing it.

KHR - can the ETSI GA decide to remove a declaration ? = only the owner of the declaration can remove it. !!

**Section 4** = updates are encoraged.

**Section 5**

5.1 = OK
5.2 = OK

Breidthardt - but if there is an essential IPR but FRAND is refused would it be included in the database.

KHR - if there is an essential IPR and the owner is not prepared to grant licenses (member or not member) then we have to take action on the standard.

Frain - late disclosure and conduct could have impact on the market. What about false declarations, even knowingly false declarations ?

KHR - every Member has the option to decide on its own accord (risk) to decide to pay license fees or not.

Frain - if not sanctions for false declarations what is there to stop a company flooding the database with false declarations to "fog" the issue.

Sanchez - some patents are declared and can be on the lost but never make it through patent agency.

Kar - engineering approach is simply, you look to see if you can make an implementation with out using the IPRs then you only pay for the licenses you need.

Hengevoss - some large portfolio holders make you buy a whole package when you only want one or two.

Confidential Business Information,
Subject to Protective Order

KHR - so we seem to have a new issue "flooding the database with false declarations" = Tim Frain as issue manager.  Comments to be provided to Albin Schatzle.

**3.4      How to handle FRAND Information (Fair, reasonable and non-discriminatory) (Tom Sanchez & Willy Verbestel)**

Tom Sanchez [GA/IPR02(03)05]

- Lafuente - need to have a checking mechanism to see that people are respecting the policy.

 1.  It is proposed to establish a mechanism to determinate, under the request of an ETSI member or a Technical Body or the GA, if terms and conditions for licenses under an essential or potentially essential IPR fulfill the ETSI IPR Policy from the perspective of ETSI.

   • Option 1: The ETSI Director-General shall be aware of the terms and conditions of essential or potentially essential IPR related to an ETSI STANDARD or TECHNICAL SPECIFICATION. The ETSI Director-General, appropriately assessed, should, according to the best possible criteria, determinate if proposed terms and conditions are fair, reasonable and non-discriminatory.

   • Option 2: the creation of an "ETSI Consultative IPR Committee" as proposed in document IPR02(03)06.doc (Dispute Resolution – issue#07). This group can provide the GA with its best understanding about if proposed terms and conditions are FRAND.

 2.  It is proposed to clarify in the "ETSI IPR Policy Guidelines" that terms and conditions for licenses under an ESSENTIAL IPR should include details of the applicable patents. Applicable patents means both granted patents and public patents applications. There are some experiences of receiving a license contract for signing without any reference to the applicable patents.

 3.  We believe that the terms and conditions for licenses should be delivered to ETSI for evaluation (according to Options 1 or 2 above) before the IPR owner will make, as described in Article 6.1 of the Policy, the general undertaking in writing stating that it is prepared to grand licenses on fair, reasonable and non-discriminatory terms and conditions.

 As this general undertaking must be given within three months from request, it is proposed to deliver ETSI for evaluation (according to options 1 or 2 above) the terms and conditions of a claimed essential or potential essential IPR within a maximum time frame of two months from request. In this case there will be a period of one month for ETSI to evaluate if proposed terms and conditions fulfils the ETSI IPR Policy.

KHR - as an Institute we have always tried to avoid being in the middle of a conflict between members.

Adams - ???? (sorry missed it)

Sanchez - history of UMTS decisions where it was said that the licensing costs would be as low as GSM but now it is looking like it will be more expensive.  Some governments are starting to set limits on royalty levels.

Pocknell - no mechanism to ensure licensing obligations, cannot move forward unless we have some system or knowledge.

KHR - always understood that if FRAND was questioned then the issue will be decided in a court, not in ETSI. This was the principle agreed when the present policy was written.

Kallay -
 • A suggestion that "grantback" clauses be considered as prima facie unreasonable or unfair.  A grantback is an arrangement under which a licensee agrees to extend to the licensor of intellectual property the right to use the licensee's improvements to the licensed technology. Grantbacks are different from a cross-license because they are forward-looking, awarding the licensor right to future ideas that have not been thought-of yet.

**Confidential Business Information,
Subject to Protective Order**

- Grantbacks are arguable unfair because they extort an unreasonable price from licensees, who, in order to be able to obtain a license that will allow them to use the standard and survive in the market, must give away all their future innovation. More generally, it is commonly said that grantbacks may adversely affect competition where they substantially reduce the licensee's incentives to engage in research and development and thereby limit rivalry in innovation markets.

- Another issue for discussion is the suggestion that a certain excessive ratio between the upfront royalty fee and the per-unit royalty fee may be considered unfair. In other words, where the flat upfront royalty fee is more than x times the per unit fee, that could be viewed as prima facie "unreasonable".

Hengevoss - upfront payment is discriminatory and should not exist. Possible definitions are:

With reference to a standardization process like TETRA, ETSI recognizes that the contribution of some companies in that process is the origin of the essential IPRs. Taking into account that the essential IPR holders already take advantage due to the fact that they define the specification (1) ( the standard ), the terms F R and ND must be interpreted as follows :

Fair : The investment of the holders ( time dedicated to produce the specification ) must be divided among the overall market value. It should be the cost of the royalty to be paid.

Reasonable : this must be interpreted as the profit over the cost above defined.

Note : the royalty to be paid must be equal to everybody. It means that it's not possible to :

- claim upfront payments, as it is discriminatory to companies with low volume of sales
- claim fixed amounts per unit sold, as most of Tetra holders require for the infrastructure.

In other words, the royalties must be proportional to each company market share.

Sanchez - welcomes input on definitions and will try to put it together.

Adams - looking back to selection of UMTS CDMA, at Paris meeting the FDD and TDD camps got together and agreed to work together and find a solution.

KHR - basic issue is that FRAND has to be agreed between the Licensor and Licensee. Problem is what to do when they can't agree ?

Seedle - would be nice to know what is happening in the market place and what the real charges are. Only information seems to be from court reports in the US. This is because within Europe all discussions seem to include a NDA - so not information leaks out.

Sanchez - is it possible to have UMTS IPR fees which are three times more than was the case for GSM. How much bigger is unacceptable.

Hengevoss - can we find consensus on FRAND ? Nothing to do with past GSM fees. Could set an upper limit percentage royalty. More difficult is to define as reasonable profit - if not then we leave it to courts to judge on something they know nothing about) from the techno/commercial view).

KHR - problem is that it is always a case-by-case discussion. However, can point to cases where everyone was happy (e.g. GSM) as best practice. Could also indicate suggested max cumulative rate according to best practice.

Hengevoss - if we can agree some limits then industry will save a lot of money in legal/court fees.

Buttrick - happy to see new ideas but thinks its unlikely that this can be achieved.

Confidential Business Information,
Subject to Protective Order

re. Section 5) - Is it possible to research documents well enough to determine past agreements that form a guideline as to what is "fair and reasonable."

Sanchez - figures for UMTS are going to be too high compared with the GSM agreements, is that fair?
Pocknell - it's never single IPRs its usually a bundle or package of rights - supports guidelines.

Examples:  GSM, MPEG ?

Seedle - nobody here is willing to say what their IPR fees are ?

Sanchez - people would have to go back to their senior management and ask for advice/permission.....

Ibbotson - differences of approach between the manufacturers versus the large IPR portfolio only companies.

Buttrick - all have to interwork for the whole system to work, so what has changed if UMTS fees are that much higher ?   Sanchez - in the early GSM days the IPR holders where manufacturers with an interest in the system going forward so they had to set the levels at a reasonable level.  Today the situation is not the same.

Ibbotson - what about the high license fees charged by some governments when looking at the royalty fees.

re. Section 5) - Is there conduct that can be agreed upon to be clearly a violation of "non-discriminatory" requirement?

Seedle - ??? (sorry missed-it).

re. Section 5) - Non-discriminatory: geographically

silence !!!

### 3.5    Geographical scope of Licensing (Richard Buttrick)

Richard Buttrick [GA/IPR02(03)03].  A sensitive issue so was not included in the Policy.

Four proposals under section 6).

**Bullet 1) -** Requesting that holders of essential patents indicate to which patents an undertaking definitively relates – this would clarify, if not necessarily improve the situation

Ibbotson - what if the TB says standard is not for worldwide use.  Not aware of any problems due to refusal of IPR in a country.  Marketplace tends to decide the geography.

Seedle - big chance that the DIIS work will fail due to Geographical licensing issues.   The manufacturers say that for this issue only a global market will be big enough to make it worthwhile so they will abandon if licensing is only possible in Europe (and blocked in the US by an IPR holder).

Adams - even for GSM/UMTS we still have to have TC MSG to cover the EU regulatory issues.

**Bullet 2) -** A policy statement from ETSI encouraging members to give licensing undertakings on a world wide basis – this would be a non-binding statement expressing the expectations of ETSI

= supported by all.

**Bullet 3) -** The identification of ETSI work items on a case-by-case basis as being for global application, and creation of an adoption procedure by which ETSI members would accept for that standard that undertaking from Essential IPR holders would have to be to grant licences on world-wide basis - cf comments from Microsoft

= seems acceptable.

Confidential Business Information,
Subject to Protective Order

**Bullet 4)** - <u>A modification to the IPR Policy requiring all undertakings to be world-wide - Clearly this is out of scope of the present ad hoc IPR Group</u>

= moved to out-of-scope.

Seedle - re. Annex 2 - global licensing opens the return on investments and widens income from license fees. = all to provide comments.

### 3.6    Normative referencing (Kurt Wimmer)

Kurt Wimmer [GA/IPR02(03)12 rev.1].

* Clearly we have to have normative references.
* NRs to other SDOs seems not to be a problem.
* NR to a documents held by a non-SDO.  OK if ETSI obtains it or has some guarantees of availability.
* application of same principles when importing work from other groups (DVB, etc).

Phillips - all seems to be under the control of the TBs so could be included in the Chairmens's guide. KHR- add check list.

Pritchard - thinks that checking of NRs is a part of the SMS EDS process before letting documents pass through the to enquiry/Vote/publication etc.  (action to check).

Kar - two separate issue: 1) References themselves, 2) IPRS which may be implied in the referenced document.

Ibbotson - should only accept external references when ETSI has an undertaking that the IPR issues are covered.

Lafuente - ...and also any test suites attached to external references.

### 3.7    Dispute resolution (Azucena Hernández)

Azucena Hernández [GA/IPR02(03)06].

Buttrick - what is role of this Consultative Committee.  Hernandez - a new body (Consultative Committee)to be set-up by the GA as a permanent entity, to solve IPR problems without going to court (expensive).

Phillips - problem is that IPR holders are unlikely to tell such a group what the licensing conditions are. Hernández - can at least bring the two sides together and try to help resolve issues which are causing the difficulty, voluntary approach from both sides, in confidence.  Concept is to offer a voluntary solution within the existing policy.

Lafuente - some issues can be resolved with such a committee, not all, but may help to prevent issues being brought to the GA.

Kar - Consultative Committee may need to be run/include external legal consultants.

Frain - two issues, how to force 2nd party to engagement in process with committee; timely disclosure issues.  Hernández - its voluntary, if one party refuses to work with the committee then it has to go via another route, e.g. GA or court.

Hernández - only binding issue is the existing policy and GA decisions.

Adams - no conflict in members going to court to resolve IPR issues, does not conflict with membership of ETSI, wonders when Members would use such a Consultative Committee. concerns

Confidential Business Information,
Subject to Protective Order

about the cost of running/supporting such a Consultative Committee and the risk of ETSI being sued if the Consultative Committee gives wrong advice.

Wimmer - surprising that such a committee doesn't exist already (e.x. in DVB, as voluntary group with open attendence).

KHR - we had an IPR committee in the past which created the present policy but this was a painful process and nobody wanted to open the IPR issue since. This ad hoc group is the first check of the policy systems since then.

Buttrick - conflict in make-up of the committee between open group for discussion of broad issues and confidential issue resolution between members.
Hernández - think its better to have a single place rather than two, maybe have small confidential group as basis with options to call open meetings to discuss broader issues, when necessary.

KHR - responsibilities - overlap with THIS ad hoc group, so maybe should not be included here.

Hernández, the idea is to create the Consultative Committee as a follow-on group after this one is finished.

KHR - should try to solve all the know problems in THIS group.  Should restrict the Consultative Committee to dispute resolution. 

Reinhardt - if there is a dispute they can go to the arbitration panel of ICC (International Chamber of Commerce).  This Protects ETSI from making wrong decisions on its own policy.

Suff - probably won't work anyway as holder will not disclose levels of fees, etc.  stick with ICC.

Phillips - better if the dispute resolution is perform outside of ETSI, better to put in place an access system to an external arbitration service like the ICC.

Ibbotson - inconceivable under Competition law that members of ETSI could be involved in solving disputes within their own areas, better to direct people to external & independent arbitration services.

KHR - seems to be a choice now between abandoning idea in favour of an external body or to continue with the Consultative Committee idea - but with a rethink maybe ?.

Hernández - as ETSI members have not made use of external bodies up to know (why not) then there must be a reason, should try to use the Consultative Committee route as an option, does not prevent members going to external arbitration. 

KHR - during 3GSM conference, hear that in addition to ICC, there is a 3G3P group (Brian Kearsey) - see doc.12-  to do a similar issues and have just received negative clearance from the EC - could be another solution.

Sanchez - probably less than 15 people in the world who know how this system and conditions fees are agreed and would need these people be on the Consultative Committee and they probably won't be willing to sit on it, external arbitration can be very expensive (lack of trust also), also in the interest of the industry to find solutions to IPR issues without going to court, members will probably accept some sort of ad hoc consultative committee to help resolve issues.

Wimmer - can group be accepted with a reduced scope and not a to handle broader issues.
Hernández - yes, this would be better than no group.

Seedle - the people who would benefit from such a Consultative Committee are not present in this group (new entrants & licensees - SMEs).  Options of small companies taking the big players to court is too expensive.  Also, just providing info/advice could be useful and help resolve issues.  New entrants do not understand the secrecy involved and the needs for NDAs, such a group would provide a great service to SMEs and small members, in fact the number of disputes is very small so group should not be overloaded.  Keep the proposal and develop the idea further.

Confidential Business Information,
Subject to Protective Order

S-ITC-003390575

Adams - question of liability of decisions from such a Consultative Committee ?  Who will pay for the "independent" advisors on such a CC.

Suff - submitting to binding arbitration with ICC is unacceptable but some advisory tools could be used, 3G3P is not taking-of and many major IPR holders have not signed-up, IPR agreements are very complex so each agreement is different so not so much secret as impossible to make comparisons.

KHR - many wishes and concerns, seems to be of interest to SMEs , need to complies with Competition law, could be a service to assist members avoid going to court, many implementation problems. Consider all this and refocus proposal on dispute resolution.
Hernández - will try again as long as its clear that other members will not block the idea at the next stage. KHR - OK, lets see during coffee breaks and Board meeting if it will allowed to fly.

### 3.8       Non-disclosure agreements (Alberto Perez Lafuente)

Alberto Perez Lafuente [GA/IPR02(03)11r1] - wants clarification that NDAs should be according to French law.

### Section 6.1)

Hernández - FRAND can only apply when you can compare it with something else, also aware that much info is confidential.  need to find some approach to solve the issues.  NDAs should not be a part of the IPR Policy, as a first approach we should state that NDAs cannot be imposed = only on voluntary agreement.

KHR - agrees that it seems to be wrong if you have to sign an NDA prior to starting discussions of IPR terms.

Frain - a usual clause is a "most favoured nation" which guarantees that a licensee will get at least the best terms available to other licensees.

Suff - licensees also sometimes request NDAs to protect their product/implementation information. Can be many reasons for NDAs.  "most favoured nation" refers to comparable terms but no definition of comparable.

Seedle - how can you sign something which says trust me when you don't know the terms ?

KHR - need to accept that some confidentiality is necessary on both  sides.  Seems that NDAs have become common practice.  seems that

Phillips - seems that NDAs are sometimes needed so cannot forbid them.  Need to document best practice, could say that the use of an NDA in some circumstances is not appropriate (e.g. miss-use to prevent challenges to FRAND conditions).

Ibbotson - not possible to forbid NDAs and force negotiations into public domain.  Remember that all Member companies are bound by FRAND obligation under the ETSI IPR Policy, is someone proposing that all ETSI members IPR holders are "of dubious integrity".

KHR - remember we are discussion a very small number of problem issues per year.

Lafuente - you sign a NDA and then you find that the licensing fee kills you and so you are lost and you cannot say anything.  If you don't sign you cannot discuss terms and you are delayed and miss the market. The small companies loose both ways.

Buttrick - global practice is that IPR licensing terms and negotiations are confidential regardless of an NDA or not - may be a false discussion - don't see any viable solution to this issue.

Hernández - not happy with this, need to make some positive movement to help the members with such problems.  Buttrick - not against but simply does not believe a solution is possible due to

**Confidential Business Information,
Subject to Protective Order**

framework used, NDA is a red-herring and is not the real issue. FRAND terms , do they exist or not, is the real issue. Not inflexible, just noting that oit will never work.

Lafuente - minimum is to ask for Members compliance with the IPR Policy and to be able to check that is it fulfilled.

Sanchez - disagrees that all agreements are secrets - some licensors do have open information and approach FRAND by licensing with the same conditions across the Board. Disagrees with Buttrick. ... but will depend on parties concerned in any particular issue.

Buttrick - different issue, that is FRAND terms and nothing to do with NDAs.

KHR - problem is how to safeguard against miss-use of NDAs rather than NDAs themselves.
Frain - not just an SME / licensor problem. Some companies have published guidelines on terms.

Kar - possible way forward is to recognise need for confidentiality, can have NDAs, but include a copy of the licence contracts being lodged with the D-G for eventual reference in case of dispute.

Lafuente - believes we need some mechanism.

KHR - Lafuente, Phillips, Buttrick to try drafting a new proposal taking best practice into consideration. Note that this is not a part of the Policy.

### Section 6.2)

Hernández - need to remove the word "never" in the Chairman's guide.

Phillips - as this is a guide to TBs, "never" is the correct word for the rule inside the TB work process. The problem is that this text is being used outside of the TB process.

KHR - deal with changes to guides later.

### Section 6.3)

Lafunete - NDAs shall be under French Law unless both parties agree.

Tronchon - does not agree, French law only applies under dispute covered by the ETSI RoPs, article 18. Issues related to the IPR policy outside of the ETSI rules is up to the choice of the parties concerns.

Hernández - RoP, article 18 refers to anything in dispute under ETSI, so also applies to disputes under IPR Policy. Issues outside can use whatever law they like. ... but problems related to NDAs may eventually become a problem so should be under French law.

Lafuente - believes there is a clear link between implementation of policy and artcile 18, so French law should apply.

Ibbotson - what about a German company negotiating with a Swiss companies, actions in court are usually taken oin the country of the holder or the licensee.

Buttrick - was originally rejected (in 1994) as it gives preference to French companies.

Hernández - article 18 must apply to issues under an NDA relating to ETSI IPR policy but other law can be used for non-policy related issue.

KHR - let's see what comes out of the re-work under 6.1 and look at this point again later

### 3.9    Members' compliance with the undertaking (Michael Breidthardt)

Michael Breidthardt [GA/IPR02(03)04].

**Confidential Business Information,**
**Subject to Protective Order**

1. a member does not respond at all or not in the 3 months time frame to the request from ETSI to give an undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory terms and conditions as defined in Clause 6.1 of Annex H;
2. like 1, but the IPR owner is a **non-member.**
3. a member, who has given the requested undertaking to grant licences on FRAND conditions does (a) not respond or (b) unduly delays such a response to a request for a license by a potential implementer;
4. like 3, but the IPR owner is a **non-member**, who has given the requested undertaking
5. like 1 and 2, with the additional condition that the IPR holder itself informs ETSI that he owns potentially essential IPRs for a standard.

Regarding the standard itself:
   a) Standard has already been published: the ETSI IPR policy does not contain rules for such a case, but the procedures laid out in Clause 8.1 and/or 8.2 could be followed in order to solve the problem. If no viable alternative solution is available the standard should be withdrawn following the normal processes defined for specific document types in the ETSI Technical Working Procedures.
   b) Standard has not yet been published: Clause 8.1 contains the rules to be followed.

> **Proposal 1:**
> As case 1a) is not yet sufficiently defined, it is suggested to add some guidelines to the Chairman's Guide on IPR (see also proposal 2).

Ibbotson - once a standard is published does the TB still exist, it change to a standard a higher level decision that a TB chairman.  Pritchard - change to a deliverable requires same process as original approval.

KHR - so what happens if there is no response from a member after a request for license underatking the three months period ?

Lafuente - no response may be considered as a breach of the Policy.

KHR - could also say that no response = licensing will be for free.

Adams - situation is when an IPR is identified but the owner has not responded to a D-G request for declaration.  A court would not respect such a decision even if taken by the GA.  Also, the IPR might not be essential so there would be no problem.  KHR - we are assuming thte case where it is assumed that the IPR is essential.

Herriàndez - already have example of a member asking for licensing fees prior to making the declaration.  This caused delays in the TB work.  Agrees that legally cannot do much but equally cannot do nothing.  Should at least bring to GA and request the GA to request the reply, if still no response then reason for sanctions against members concerned (expulsion !).  No reply is unfair - if its not an essential IPR then at least that reply should be provided.

Breidthardt - sanction of expulsion is possible by the GA.

<u>KHR - Breidthardt to take comments into consideration.</u>

> **Proposal 2:**
> In addition to the above mentioned steps the Chairman's Guide on IPR should contain some guidelines:
>    a) Standard has not yet been published: if the Technical Body concerned believes that no viable alternative solution exists, work on the standards should cease until a solution for the non-availability of the licenses has been found.
>    a) Standard has already been published: if the process described in clause 8.2. of the IPR rules does not solve the issue of non-availability of licenses the process to withdraw the standard according to the ETSI Directives should be started.

Confidential Business Information,
Subject to Protective Order

KHR - all to provide comments

> **Proposal 3:**
> A reasonable time limit for responses should be added in a) the IPR Licensing Declaration Form, and/or b) the guidance document envisioned under Issue #04 ("FRAND").

Lafuente - linked to FRAND discussions, earlier in the meeting.

KHR - idea could be to establish some best practice rules. (acceptable time limits, etc).

Phillips - yes, need to provide some sort of guidance - some sort of best practice timeout after which the issue get raised to the GA.

Ibbotson - licence terms can be difficult and 3 months might be too short in some case for the IPR holder to estimate the value of a new technology IPR.

KHR - complaint to GA not applicable for non-members. All to provide comments

> **Proposal 4:**
> The letter from the ETSI secretariat requesting the undertaking according to clause 6.1 should contain some sentences, which clearly state that a non-response under this condition would be considered as a withdrawal of the previous IPR declaration.

Breidthardt - need to have some proof in the case of a court actions downstream.

Hengevoss - is this a real case ?   KHR - problem is when indication of IPR is present but agreement to use FRAND is not confirmed.

KHR - All to provide comments

**3.10     ETSI Secretariat assistance in IPR matters (Hans van der Veer)**

Hans van der Veer  [GA/IPR02(03)13].

Hernández - Secretariat is doing a great job.  Specific requests may need additional resources from outside.

KHR - All to provide comments

**3.11     Others (Stephane Tronchon)**

Stephane Tronchon [GA/IPR02(03)09].

**Issue 11-1**

Hernández - would it be a good idea to resubmitted the IPR Policy to the commission for clearance?

KHR - worth considering but would like to complete the work of this group first and then do it.

Hernández - yes, at the end of this process - recommend the GA to pass it all to the EC for clearance.

Phillips - don't agree to be proactive in this case.  Telling them what we are doing is fine, but not to ask them to approve it.  Absence of an EC comfort letter does not say that we are not in compliance with Competition law.

KHR - OK, lets come back to this idea at the end of the process.  In any case, we report our findings to the EC.

**Issue 11-3= ongoing.**



**Issue 11-4=** <u>ongoing</u>.

**Issue 11-5=** <u>ongoing</u>.

**Issue 11-6=** <u>ongoing</u>.  Adams - re. 3GPP see notes of previous meeting, don't want this input to get lost.

**Issue 11-10=** <u>ongoing</u>.

Lafuente - additional text for clarification.  <u>Comments to Tronchon.</u>

Other issues closed or transferred.

**3.12   "out-of-scope" (Stephane Tronchon)**

Stephane Tronchon [GA/IPR02(03)10].

Sanchez - r.e. 12.3 - don't think quantification is out of scope but for clarification.  <u>Move to FRAND.</u>

Hernández - need some way to make any valid information related to IR issues available to the membership.  Not a Secretariat measure but for action by members themselves.  Maybe a special area on the web-site. - <u>add to the collection</u>.

<u>Comments to Tronchon to add to the collection.</u>

**4       Progress report to GA#41**

KHR - proposed to present the the working methods from meeting #01, the issues & Issue managers agreed so far, and in tention to provide findings for November GA. <u>= agreed.</u>

**5       Next steps**

<u>Meeting #03 - 19-20 may 2003 start at 14.00.</u>

**6       AoB**

None

Confidential Business Information,
Subject to Protective Order

## Annex A:    List of participants

**Chairman**

| | | |
|---|---|---|
| ROSENBROCK Karl Heinz | ETSI Secretariat | FR |

**Secretary**

| | | |
|---|---|---|
| PRITCHARD Julian | ETSI Secretariat | FR |
| | | |
| ADAMS Peter M. | BT Group Plc | GB |
| BAWA Karima | RIM | CA |
| BREIDTHARDT Michael | IBM EUROPE | DE |
| BUTTRICK Richard | PHILIPS Consumer Electronics | NL |
| DRAIBYE Sandra | RIM | CA |
| FRAIN Tim | NOKIA Corporation | FI |
| GODBY Georgina | UbiNetics Ltd | GB |
| HENGEVOß Karl-Heinrich | ROHDE & SCHWARZ | DE |
| HERNÁNDEZ Azucena | TELEFONICA de España S.A. | ES |
| HICKS Simon | DTI | GB |
| HORSNELL Verina | Sun Microsystems Ltd | GB |
| IBBOTSON Harry | MOTOROLA Ltd | GB |
| KALLAY Dina | Microelectronica Espanola SA | ES |
| KAR Radivoj | MITSUBISHI Electric Telecom | FR |
| LOVE Philippa | VODAFONE Group Plc | GB |
| NAM Tae | SAMSUNG Electronics | GB |
| OBERMÜLLER Bernhard | SIEMENS AG | DE |
| PARK Sang-Whan | SAMSUNG Electronics | GB |
| PEREZ LAFUENTE Alberto | Microelectronica Espanola SA | ES |
| PHILLIPS John | NORTEL NETWORKS (EUROPE) | GB |
| POCKNELL Robert | Sendo International Ltd | HK |
| SANCHEZ Tom | RIM | CA |
| SEEDLE Brian | FYLDE MICROSYSTEMS LTD | GB |
| SUFF Jeffrey | Panasonic (MMCDE) | GB |
| TRONCHON Stephane | ETSI Secretariat | FR |
| VAN BREDA Marc | KPN N.V. | NL |
| VERBESTEL Willy | RIM | CA |
| VON GREYERZ Walo | ERICSSON L.M. | SE |
| WIMMER Kurt | MICROSOFT EUROPE SARL | FR |
| VAN DER VEER Hans | Lucent Technologies B.V. | NL |

**By Webcast/Audioconference:**

| | | |
|---|---|---|
| BARTLETT David | Cambridge Positioning Sytems | GB |
| KING Joseph | INTERDIGITAL COMMUNICATIONS | US |
| LIOTT Caroline | Agere Systems Deutschland GmbH | DE |
| LUDWIG Harald | FEEI | AT |
| MCCARTHY Catherine | Sun Microsystems Ltd | GB |
| TEUFEL Fritz | IBM EUROPE | DE |
| URIE Alistair | ALCATEL S.A. | FR |

N° of Attendees: (additional Secretariat staff attended for the appropriate agenda items): 39

Confidential Business Information,
Subject to Protective Order