# EXHIBIT 15

Case 5:11-cv-01846-LHK   Document 847-64   Filed 04/02/12   Page 2 of 15

ETSI GA ahg on IPR Review #2          ETSI GA/IPRR02(06)02
Sophia Antipolis,                      17 February 2006
22-23 February 2006                    page 1 of 13

Source:        Tim Frain, Rapporteur, E1 Discussion Group

Title:         Consolidated Discussion in E1 - FRAND

Agenda item:   4 - E1

Document for:

| Decision   |   |
|------------|---|
| Discussion |   |
| Information | X |

*This is a consolidated account of the discussion that has taken place in E1 - FRAND*

**Tim Frain, Rapporteur of E1, 23 Jan 2006:**

Further to Julian Pritchard's email on Friday, I would now like to start the ball rolling and invite everyone to participate in our work on FRAND (element E1).

In order to provide some structure to our work and discussions, and to help us achieve a more useful work product in the short time available to us, I would like to propose the following framework:

**E1 DISCUSSION FRAMEWORK:**

1. Do you think there is a need/benefit to clarify the interpretation of FRAND in the ETSI IPR Policy (FRAND+)?
2. Please provide any supporting evidence why FRAND needs to be clarified, if you think it does
   - Please provide any concrete examples of experiences in the field
   - It is recognized that confidentiality and commercial sensitivities may make this more difficult
   - Please indicate if you are aware of difficulties in practice even if you are unable to provide concrete evidence/examples
3. Develop/agree formulation of Key Issues
   - To help get the discussion started I attach an initial proposal below. This is taken from ETSI contribution IPRR01(06)08. Please comment on this text and/or feel free to make further or alternative suggestions of your own
4. Table, discuss & develop possible proposals for change:
   - What do you see as the main principles that need to be taken into account?
   - Do you agree in principle with the idea of a FRAND+ definition based on AGGREGATED REASONABLE TERMS (ART) ?
   - Do you agree in principle with the idea of a FRAND+ definition based on PROPORTIONALITY ?
   - Below for discussion purposes are the preliminary definitions of ART and PROPORTIONALITY contained in ETSI contribution IPRR01(06)08
   - Please comment on this text and/or feel free to make further or alternative suggestions

I look forward to an active and fruitful discussion.

Tim Frain
Director, IPR Regulatory Affairs
Nokia Corporation
Tel: +44 1252 865239
Mob: +44 7785 367920

Confidential Business Information,
Subject to Protective Order

S-ITC-003390615

Email: tim.frain@nokia.com

**The Key Issues (for discussion):**

The ETSI IPR policy requires Members to undertake to license their essential patents on fair, reasonable and non-discriminatory terms (FRAND). However, currently no express definition or qualification of FRAND exists in the ETSI rules.

Consequently, each essential patent owner can develop its own idea of how FRAND should be applied in practice. This fragmented approach means that when there are many essential patents and many essential patent owners the overall license cost, i.e. the "cumulative royalties", are more uncertain.

Also, the increasing tendency for multi-function, multi-technology products means there are ever more patents covering the end product, giving rise to the phenomenon of so-called "royalty stacking".

Overall, cumulative royalties are perceived to be uncertain and often too high, possibly even prohibitive. The application of FRAND at the cumulative royalty level as well as at the individual patent owner level can be difficult to achieve.

As an overall principle, FRAND must balance the interests of both the developers and users of the technology. The major contributors to standards invest significant amounts of money and resourcing to develop open standards for the benefit of the whole industry and consumers. IPR policies need to be formulated in a way that such contributors are not at a competitive disadvantage due to their high investment in technology development but rather can be compensated for their effort. At the same time the technology needs to be affordable for the whole industry and the consumers.

**Change Proposal (for discussion):**

Introduce the principles of AGGREGATED REASONABLE TERMS and PROPORTIONALITY into the FRAND definition, as follows:

1. **AGGREGATED REASONABLE TERMS.** To clarify that the FRAND obligation means essential patent owners agree to grant licences on terms that are *objectively commercially reasonable* taking into account the *overall* licensing situation including the cost of obtaining all necessary licences from other relevant patent holders for all relevant technologies in the end product.

2. **PROPORTIONALITY.** Compensation under FRAND must reflect the patent owner's proportion of all essential patents. This is not simply a numeric equation but the compensation must, within reasonable bounds, reflect the contribution.

........................................................................
Larry Basuk, Texas Instruments, 23 January 2006:

Thanks for starting this discussion.

I have a question that really should be asked in several ways to make sure you, or others, understand the information that I need to make good decisions for TI and ETSI.

I really need to understand the reason for the IPR Review Committee of ETSI wanting to define the elements of FRAND licensing commitment in the ETSI IPR Policy. I will preface each question with my initials so that everyone can identify the questions that I ask.

LJB#1. Why is this definition of FRAND being proposed for the IPR Policy of ETSI instead of being proposed to a legislative body?

LJB#2. What underlying problem does this definition try to solve?

Confidential Business Information,
Subject to Protective Order

S-ITC-003390616

LJB#3. How will ETSI adopting this definition affect patent licensing? What is the intended effect of ETSI adopting this statement?

LJB#4. Who will be bound by this definition of FRAND?

I know that answering these questions will take some effort fully to describe the answers, but the answers are extremely important; they could affect millions of dollars in patent licensing and hundreds of companies.

I encourage anyone to respond or supplement any responses provided to these questions.

Tim, again, thank you for your time and efforts.

Regards,

Larry Bassuk

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**Steve Mecrow, O2, 23 January 2006:**

Larry,

These are good questions that to which I think we need to fully understand the answers. I have outlined my understanding below:

LJB#1. Why is this definition of FRAND being proposed for the IPR Policy of ETSI instead of being proposed to a legislative body?

SAM - the term FRAND is used in the ETSI procedures, but is currently not defined in detail. It is therefore open to interpretation and consequently different ETSI IPR holders and licensees interpret it differently, to best suit their individual objectives.

LJB#2. What underlying problem does this definition try to solve?

SAM - Avoiding unreasonable IPR expectations by some ETSI members holding essential IPR.

LJB#3. How will ETSI adopting this definition affect patent licensing? What is the intended effect of ETSI adopting this statement?

SAM - a consistent interpretation of FRAND.

LJB#4. Who will be bound by this definition of FRAND?

SAM - ETSI members.

Best Regards, Steve

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**Larry Basuk, Texas Instruments, 23 January 2006:**

Steve,

Thank you for your answers and I do greatly appreciate your time in considering the answers and responding.

Confidential Business Information,
Subject to Protective Order

S-ITC-003390617

Interleaved below after your answers, I have tried to more fully develop the discussion with further questions.

Regards,
Larry

*LJB#1. Why is this definition of FRAND being proposed for the IPR Policy of ETSI instead of being proposed to a legislative body?*

*SAM - the term FRAND is used in the ETSI procedures, but is currently not defined in detail. It is therefore open to interpretation and consequently different ETSI IPR holders and licensees interpret it differently, to best suit their individual objectives.*

LJB - Yes I understand that in the past the definition of FRAND has intentionally been made indefinite to accommodate the enormous range of possible business relationships that can occur. Most companies need this flexibility to interpret FRAND to conduct business. If this is a general business problem, why is it being settled in ETSI and not in the EU legislature?

*LJB#2. What underlying problem does this definition try to solve?*

*SAM - Avoiding unreasonable IPR expectations by some ETSI members holding essential IPR.*

LJB - Yes I understand that making things more determined can be good for making good business decisions. While there always will be some difficult companies, have you heard of any particular unrealistic expectation that needs specific attention?

*LJB#3. How will ETSI adopting this definition affect patent licensing?*
*What is the intended effect of ETSI adopting this statement?*

*SAM - a consistent interpretation of FRAND.*

LJB - Will ETSI be able to provide a consistent interpretation of FRAND for all the different styles of patent licensing? Will the enormous range of business considerations be accounted for?

*LJB#4. Who will be bound by this definition of FRAND?*

*SAM - ETSI members.*

LJB - ETSI members is a limited number of companies holding IPR. Will defining FRAND for ETSI members limit the ability of ETSI members to create balanced licensing activities with non-members?

..................................................................

**Earl Nied, Intel, 23 January 2006:**

There is an important point in this thread: Whether there is a need to further limit the definition of "FRAND."

For a multitude of reasons, I don't believe that we should attempt to redefine FRAND, including but not limited to:

1) All existing license commitments are made to the definition we have. A mixture of definitions would be incomprehensible.

2) FRAND is not just ETSI but FRAND/RAND is use by hundreds of SDOs in many geographies (Asia, Africa, N & S America, Australia ISO, ITU, ANSI, IEEE, etc).

Confidential Business Information,
Subject to Protective Order

S-ITC-003390618

3) Innumerable business models require reasonable flexibility

4) Arbitrary refinement (even with the best of intentions) could preclude creative and beneficial licensing models from being used (e.g., inhibit companies with defensive models and force royalty collection where none previously was required).

I submit that a commitment to license within an "Aggregate Reasonable Royalty" is potentially a FRAND term just as much as a commitment to license: a) under a patent pool; b) under a defensive strategy; c) RF-RAND; or d) something else.

If possible, if may be useful to create an ETSI definition of "Aggregate Reasonable Royalty" so that there would be a common understanding. That way those who VOLUNTARILY invoke it in their patent statements would be bound to a meaningful and well understood term. This however should NEVER take the place of FRAND/RAND and may not be appropriate in all business circumstances for all standards.

Earl
-------------------------------------------------------------------------

**Gil Ohana, Cisco, 24 January 2006:**

Like Earl and Larry, I don't see a discussion of how to define FRAND as being especially useful. Instead (and this is where I feat that I may part company with Larry at least), standards bodies like ETSI should move away from relying on "reasonableness" as the touchstone of contributor licensing commitments. They should instead encourage or require contributors of intellectual property to declare at the time they make disclosures the terms on which they will licensed the disclosed IP. In this way, the other participants in standard-setting can make informed decisions about whether to include particular inventions in a standard, and implementers of. standards-compliant products can make informed decisions about the cost of implementing a standard in products.

"Reasonableness" will always be an inherently elusive concept. Better, in my view, to move away from "reasonableness" to concrete licensing terms disclosed ex ante.

Gil Ohana
-------------------------------------------------------------------------

**Jan Vercruysse, Option, 24 January 2006:**

There is a need to redefine FRAND. As long as it concerns a single patent for a single product you need indeed the flexibility to negotiate reasonable terms. But we are talking here about essential IPRs which means that you have to negotiate with hundreds of IPR holders before you can make ONE SINGLE product. That's one of the characteristics of essentiality, you need all of them. They all ask a reasonable 1% of the retail price, but as they are with 100, it means you have to pay out immediately all your hard-earned money and you are out of business, although you have FRAND for each single patent. The single essential patent licensor has no clue what effect he will have with his 1% on the total business of the licensee. So here the single licensor can make no creative and win-win licensing models, because the licensee may not even tell about the others licensor agreements and terms under NDA.

The essential IPR patent is not anymore a product that you can deal as it was the case for a single patent over hundreds of years, the essential patent is part of a product like a tire is a component of a car. You need the engine as well, I hope. If I may use this picture once more, today we are selling the essential patents one by one as if it were an end-customer goes to a dealer and purchase his car broken up by first the tires, than the engine, the wipers, the windows, etc. I don't have to tell you that finally the customer shall pay way too much. FRAND is good and may still be used, but not for essential IPRs. You need another definition when it concerns essential patents.

Confidential Business Information,
Subject to Protective Order

S-ITC-003390619

LJB#4. Who will be bound by this definition of FRAND?

SAM - ETSI members. LJB - ETSI members is a limited number of companies holding IPR. Will defining FRAND for ETSI members limit the ability of ETSI members to create balanced licensing activities with non-members?

JAN - At some point the EU will adopt the specifications of ETSI and bring the work of a private organisation into the public domain. So the EU > legislature has to think about the "new definitions" and bring it or not into the EU legislature.

Kind regards,
Option
Jan Vercruysse

..........................................................................

Oliver Kunz, Coding Technologies, 24 January 2006:

Hi                                                                                                                                    Jan,

I am not 100% sure about the actual proposal you are making, but I would anyway like to start one step earlier.

You are describing a scenario in your first paragraph which would obviously end up in a commercially difficult situation for the product manufacturer.

Is this scenario a theoretical example or can you point the group specifically to a case in which this behaviour of patent owners has prevented a technology from being deployed because it would be overpriced?

I would appreciate if you could give the group additional information in that matter.

BTW: I think you could even argue that 1% of retail is not reasonable if a particular piece of essential IPR is only one out of many. Insofar, a clarification of FRAND to express this consideration better could in fact help.

Thank you very much.
Oliver

..........................................................................

Jan Vercruysse, Option, 24 January 2006:

Hello Oliver, everyone reading,

Indeed I didn't present a proposal yet. It's too early as yet many people aren't convinced of the necessity. I would be seed on a rocky ground.

This scenario I described isn't yet reality, we are still in business ;-°) however today we are at a level that all essential patent holders watching greedily the wireless market. And they are with many. Making today wireless products with the most recent specified HSDPA technology, is even triggering the very early GSM essential patent holders in the late 80's. You can't blame them. According to the rules, they all have right to get a piece of the pie. As a product manufacturer you have to make deals with them one by one. I underline once more, you can't miss one! Studies are showing, sorry I have to stay quite vague, that it might accumulate to 20-30% of the retail price based on those essentials reported to ETSI, ARIB and searches on databases. Why should we stay with UMTS and for instance go with TD-SCDMA which will be probably much cheaper.

You can say that 1% of retail is not reasonable but on the basis of what? You can't do open book in order to point them to their unfairness. You can't say anything about the accumulated royalties. You have signed NDA's with all of them.

Sorry for making another picture. A car is a marvellous invention. It brings you fast from A to B. Todays cars have low pollution emission rates. However today we are standing still in a lot of traffic jams and the air is polluted so that we need Tokyo conferences. Here as with the essential patents, the scaling factor is detrimental. For essential patents it's even unavoidable.

So we need something for 'the scaling factor' to bring FRAND back to fair, reasonable and non-discriminatory.

Kind regards,
Jan

**Stefanie Mattes, BenQ Mobile, 30 January 2006:**

Dear all,

I agree with Earl to take into consideration the fact that FRAND/RAND is also used in many other SDOs. Thus if changes will be done, this should be kept in mind. But I think there is no need for a new definition of "FRAND" by inserting new (binding) terms/phrases in ETSI IPR policy.
Maybe a satisfactorily solution could also be achieved by "extending" the interpretation of the meaning of "reasonable" by inserting an economic aspect, i.e. (as proposed by Nokia, Ericsson and Motorola) to consider the total cost of a standard. But who should (re)interpret the meaning of "reasonable"? One proposal during the meeting in Munich was to bring several "test cases" to courts in order to get a legally binding definition. As it is foreseen (within this proposal) to keep the licensing negotiations bilateral this seems to be a limited solution. A court has no means to get the information needed for the general view of the total costs of a standard, i.e. the totals which are claimed by other parties involved in the standardization process. In addition it is a fact that different courts have different views and therefore different findings. There is no guarantee to get a "straight line" of court decisions which are useful for future negotiations in regard to "reasonable" conditions. Due to this it could be worth to think about a kind of internal "arbitration" solution placed within the ETSI guide on IPRs. Already provided in the ETSI guide on IPRs under 4.2 "Dispute Resolution" is a "friendly mediation." Maybe it will be possible to install a permanent body of dispute settlement. As in other organizations you could think of installing a list of former industry members and/or former patent lawyers/judges etc. with knowledge and experience in standardization, having no more financial interest in (or alliance to) the standardization process. Continuity or a kind of "case law" on how FRAND should be interpreted for ETSI members should be achieved much faster than by ordinary courts. Furthermore (depending on the law system) this could be also cheaper for the parties involved etc..

Looking forward to comments...

Best regards, Stefanie

**Tom Sanchez, Research In Motion (RIM), 30 January 2006:**

I don't agree with Earl. Anyone who has licensed large portfolios of GSM IPR since the begining of GSM deployment has had to deal with large variations in threshold re FRAND. The SDOs have always had different interpretations.
Frankly, ETSIs standard like GSM has done ok in growth since its inception.

Tom Sanchez

Confidential Business Information,
Subject to Protective Order

S-ITC-003390621

**Larry Basuk, Texas Instruments, 30 January 2006:**

Tom,

While TI is aware that most SDOs provide a list of terms that must be in a RAND license, such as non-exclusive, worldwide, personal, non-sublicenseable, defensive suspension, reciprocity, TI is unaware of any SDO providing an interpretation of RAND or FRAND.

Which SDOs did you have in mind?

Regards,  Larry Bassuk
..............................................................................

**Tom Sanchez, Research In Motion (RIM), 30 January 2006:**

Look up Working Group 5 and what they did circa 1988 and 1989. They did a good job in most instances and as result successor called ETSI had comparatively few IPR problems.

Please also look at footnotes from Bekkers paper cited re Dancall FRAND and then follow the thread. You cant google it, as story was followed mainly in trade magazines now out print I suspect so it will have to be library work and hard copy. And of course Dancall and the Premier League had something in common at that time as a trivia question. As before, the assumptions as to why patents came into standard originally by some companies is wrong in the Bekkers paper, but the conclusion re the race to put patents into standard is correct look into the future in Bekkers at time of publication.

Tom Sanchez
..............................................................................

**Earl Nied, Intel, 30 January 2006:**

I think my message may be misunderstood.

I agree that the definition of FRAND is very broad and that there is cause for frustration on price and terms in some standards. However, there are very strong reasons for that flexibility and there are positive effects as well (not the least of which is allowing most patent holders to forego the active pursuit of royalties).

What I am saying is that RAND and FRAND are clear, albeit possibly disconcerting to some in some standards situations. You may recall that in an informal poll that Intel did of 5 major SDOs, we found approximately 2500 hardware interface standards developed in these groups over the last one-two years. Of those only 5 had serious issues with price sensitivity. This was very unscientific but I do feel that the proportions are correct – for the vast majority of interface standards, market forces usually allow RAND to work, even ex-post.

What we have is a situation where (because a varietary of factors) ex-post RAND is encountering significant problems in some standards.  When appropriately applied, Ex-ante RAND seems to offer the potential of some relief.  At a minimum, ex-ante disclosures will supply considerably more information that market dynamics should be able to sort out.

However, the amount of information could be considerable and therefore a lexicon on terms of the various business models would help people to sort through and compare what is being offered. Patent holders should be able to offer creative solutions, and frankly the best solutions given the market requirements, should win out. However, artificially trying to re-define/constrain what RAND/FRAND means is unnecessary and would result in a cascade of problems  *Just think about what a new definition would do to all the existing FRAND commitments already made.  Let's see now, since that is the 2005 commitment, I'll license X and since that is a 2007 standard, I'll license Y.  Also, What about*

Confidential Business Information,
Subject to Protective Order

S-ITC-003390622

referencing another standard that has a different definition of FRAND? It is unlikely that we can ever achieve a "one-size-fits-all" definition – there are may more.

I fervently believe that we should not interfere with the creativity in licensing FRAND allows. I do believe that the real achievable challenge is how to efficiently use the new information that ex-ANTE disclosure can provide.

We should allow any appropriate business model. We especially shouldn't prohibit the benign business models. When appropriately used, definitions could provide a convenient clarification and common understanding. Patent holders who invoke these defined terms would be subject to the ETSI definition. If a company making an assurance found that the term did not adequately describe his/her business, they could use other terms.

For example: "Aggregated Reasonable Terms" is an interesting proposal but really needs to be defined further. I wouldn't want that to be the only definition of FRAND but I do see great value to ETSI if those choosing to make that type of FRAND commitment were consistent in what they meant.

Earl
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**Fernando Sorianovallejo, Telefonica, 3 Februay 2006:**

Hello all,

In my opinion, Stefanie's idea of setting up a arbitration entity may be a very good solution to resolve problems that may rise regarding IPR disputes inside ETSI. It may be called Arbitration Council.

This solution is already in place among other industry and commercial players. An arbitration formula related to accepting the resolution of the Arbitration Council, included in contracts, is a very efficient (fast, cheap, clean) way to solve disputes. It, perhaps,could be made that the Arbitration Council resolutions regarding IPR in ETSI could be granted a legal, binding value, as it is the case in other commercial grounds.

The formula could be that any one that want to participate in standard development, should agree to accept in case of dispute the arbitration procedure and accept the resolution of the Arbitration Council

The Arbitration Council, could be created in ETSI, but it could be also be an independent entity in the sense that the Arbitration formula may be extended to other SDOs. For example, OMA, could also include an arbitration procedure submitted to the arbitration council.

In my opinion this formula may work: further study legal study is required:
BR, FS
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**Harald Heiske, Siemens, 3 February 2006:**

I think this might be an interesting idea in particular for resolution of disputes before signature of licensing agreements. We should keep this on our radar screen.

Members of such a body would require a significant experience with licensing agreements in addition to a decent level of experience with standardization.

Stefanie, could you elaborate a bit further what you mean with "case law" on FRAND? I would have expect that any proposal made by such a body would remain strictly confidential.

Best regards, Harald
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Confidential Business Information,
Subject to Protective Order

S-ITC-003390623

Fernando Sorianovallejo, Telefonica, 7 Februay 2006:

Hello all,

After analyze the problems that may be related to FRAND, I believe that we should not only try to find a formula to calculate the FRAND price, but we should also propose FRAND conditions for the different ways of payment.

For example, an IPR that applies to a standard implemented in a handset could be paid at once (when the handset is bought), per user in yearly or monthly basis, per utilization (each time the standard is used), etc. But, some of those pay-per-use formulas may required control on the operator side, and setting up the systems to be able to have the control required may be quite expensive, difficult and, perhaps, not even possible to be done.

In may opinion we should try to include a reference in our FRAND definition in that sense, to considered not-reasonable to ask payments for an IPR in a way that the implementation of the standard, itself, doesnot allow to measure and to control.

Furthermore, if we consider that the mean life time of a handset is... say, two years, any pay per user price, could be converted in pay per handset equivalent price. The same may be estimated for pay per use.

Any thoughts about it?

Best regards, Fernando

···································································

Harald Heiske, Siemens, 3 February 2006:

I) Formulas are a technicians approach to solving equations. Please allow me two comments on this issue:

1) It is practically impossible that any such formula can be identified before the market is developed and matured.

2) FRAND is a legal term and should therefore further qualified with legal concept rather than with technical concepts or mathematical formulas, if appropriate.

II) As for the list of concerns: "control required may be
- quite expensive,
- difficult and [or?], perhaps,
- not even possible
to be done."

1) If control is not possible you are legally not allowed to ask for such a control, anyway, even under given law. So any such clarification is not required.

2) If control is difficult or expensive then this might be a fact that you possibly just have to accept as a consequence of the demand for FAIR conditions. Because FAIR conditions mean almost automatically introduction of CONTROL mechanisms. If you don't CONTROL the usage of a technology UNFAIR distribution of royalties is the very likely consequence because those who use the technology a lot will pay much less in relation to those that use it only seldom. This means that you maybe just cannot ask for everything in parallel but may have to accept at least some of the consequences as being the "normal rules of the game".

Confidential Business Information,
Subject to Protective Order

S-ITC-003390624

H.Heiske
..............................................................................

**Fernando Sorianovallejo, Telefonica, 7 Februay 2006:**

Hi,

First of all, I think this "Arbitration body" discussion should be in E6-Enforment, but that group is still dormant. I suggest that Tim takes it into E1-FRAND, until the enforcement goes to live.

I would like to add another flavour to the proposed "Arbitration Body" for IPR in ETSI. It should not only be for economical issues related to FRAND and so on, but it could do a paper in the technical ground:

Arbitration Body could help to solve IPR declarations: May be the entity that will solve a problem it it has to be decided wheter a declared Essential IPR is Essential or not.

It could also help to do patent searchs in a more aseptic way. For example any working group may direct to the Arbitration Body a request to launch a patent search. It will be more difficult for trolls to determine to which standard is the search associated to.

Arbitration Body may grow in experience and become something as the authority in IPR within ETSI, that will help to solve issues and future problems related to IPR in standards (a knowledge tank).

Stefanie and Harald, will this new flavour may fit with your proposals?

Best regards
Fernando
..............................................................................

**Charly Hengevoß, ROHDE & SCHWARZ, R&S BICK Mobilfunk GmbH, 9 February 2006:**
Dear all,

I'd been following the discussion in silence with great interest. Having been very happy with Tim Frain's approach and Larry's valuable questions I became a bit disappointed, that the discussion went away from trying to find answers to your and Larry's questions very rapidly. II would find it valuable to turn back a bit and to try to clarify Larry's question, in particular

> "LJB#1. Why is this definition of FRAND being proposed for the IPR Policy of ETSI instead of being proposed to a legislative body?
>
> SAM - the term FRAND is used in the ETSI procedures, but is currently not defined in detail. It is therefore open to interpretation and consequently different ETSI IPR holders and licensees interpret it differently, to best suit their individual objectives.
>
> LJB - Yes I understand that in the past the definition of FRAND has intentionally been made indefinite to accommodate the enormous range of possible business relationships that can occur. Most companies need this flexibility to interpret FRAND to conduct business. If this is a general business problem, why is it being settled in ETSI and not in the EU legislature?
>
> LJB#2. What underlying problem does this definition try to solve?
>
> SAM - Avoiding unreasonable IPR expectations by some ETSI members holding essential IPR.
>
> LJB - Yes I understand that making things more determined can be good for making good business decisions. While there always will be some difficult companies, have you heard of any particular unrealistic expectation that needs specific attention? before we try to find remedy?

Confidential Business Information,
Subject to Protective Order

S-ITC-003390625

I guess, that the reason for (F)RAND in ETSI Policy has something to do with the nature of licensing agreements. If such agreement would only be governed by "contract law" the case would be simple and we would talk of e.g. "price adjustment clause" and "most preferred clause".

The different fields of law applicable and the complex situation of often many parties being involved in the completion of a standardized make under licence require rules to be set by experts. We shouldn't leave this to the courts. Probably you all know the bitter joke:

An engineer, a physicist, and a lawyer were being interviewed for a position as chief executive officer of a large corporation. The engineer was interviewed first, and was asked a long list of questions, ending with "How much is two plus two?" The engineer excused himself, and made a series of calculations before returning to the board room and announcing, "Four." The physicist was next interviewed, and was asked the same questions. Again, the last question was, "How much is two plus two?" After a consultation with the United States Bureau of Standards and many calculations, he also announced, "Four." The lawyer was interviewed last, and again the final question was, "How much is two plus two?" The lawyer drew all the shades in the room, looked outside to see if anyone was there, checked the telephone for listening devices, and then whispered, "How much do you want it to be?"

Let's find the answer, even if it's more than just four!

Regards, Charly Hengevoß

**Steve Mecrow, O2, 10 February 2006:**

All,

The discussion to date indicates that there is no consensus (so far!) to produce a detailed description/definition of FRAND for use in the context of ETSI IPR.

An alternative approach would be to consider producing an ETSI Guide on FRAND which would include the overall objectives and principles that should be adhered to as part of an IPR agreement based upon FRAND. Clearly this would need to provide more detail than is currently included within the ETSI directives, and producing it would enable us to identify and capture those aspects of FRAND where there is common agreement regarding its scope and meaning.

Is it worth perusing this approach? – at least it would provide a vehicle for progressing our discussion!

Regards, Steve

**Stefanie Mattes, BenQ Mobile, 16 February 2006**

Dear all,

Harald asked me to go more into details what is meant by "case law" in regard to a permanent arbitration body. I will go further and outline some of my thoughts about the arbitration body in general and the different options which might be possible.

In regard to recent comments, I agree to keep out the juridical view/problems (close to the different business cases and therefore also to the different commercial views etc.) of the standardization process as such.

There is a reason why the ETSI Guide on IPR already mentioned in 4.1."Technical Bodies are not the appropriate place to discuss IPR issues. Technical Bodies don't have the competence to deal with commercial issues. Members attending ETSI Technical Bodies are often technical experts who do not have legal or business responsibilities with regard to licensing issues. Discussion on licensing issues

Confidential Business Information,
Subject to Protective Order

S-ITC-003390626

among competitors in a standard making process can significantly complicate, delay or derail this process."

I think we should search for practicable solutions, and therefore try to find a way to discuss the patent/licensing issues separately from the pure technical process.

One solution might be the "arbitration body". Unlike a patent pool the members of the arbitration body would be objective/neutral and solutions might found much easier, if the decisions are accepted by the parties.

There are different options how to form and how to rule an arbitration body.

As already proposed, you could think of a list with experts, which could be assigned each year by e.g. the GA.

In regard to this list one could imagine that for each/different projects all members agree to solve differences relating to IPRs by the arbitration body.

Another way to minimize problems could be the commitment of parties to ask for an ETSI internal arbitration, before suing each other at court

To answer the question what is meant by "case law": Each time the members of the arbitration body work on the definition of FRAND, e.g. what is the meaning of "reasonable" in the context of/having in mind the whole standardization process, they have to work out "criteria" to find an acceptable solution. In regard to confidentiality, different solutions might be possible. Either the findings will be made (in regard to the parties) anonymous or the parties agree on a publication. It is also possible to publish the "abstract" criteria, used by the arbitration body. I recognize that there are also difficulties, but I think they can be solved. One could even imagine, that the findings are not public (or ETSI internal) available, but are always available for the other members of the arbitration board (dealing with separate cases). So they will be able to work and develop the criteria. After certain time and after different parties have participated in an arbitration procedure, they will also have a feeling what is meant by "reasonable".
..to be continued...

Looking forward for comments..

Best Regards, Stefanie

Confidential Business Information,
Subject to Protective Order

S-ITC-003390627

Confidential Business Information,
Subject to Protective Order

S-ITC-003390628