1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No.: C 11-cv-1846 LHK (PSG) |
| Plaintiff, | **ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS, AND GRANTING-IN-PART DEFENDANT'S CROSS-MOTION FOR A PROTECTIVE ORDER** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD, a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **(Re: Docket Nos. 736, 754)** |
| Defendants. | |

In this patent infringement action, Plaintiff Apple Inc. ("Apple") moves to compel Defendants and counter-claimants Samsung Electronics Co., LTD, Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") to produce six witnesses for depositions.[1] Samsung cross-moves for a protective order to prevent the depositions.[2] On March 27, 2017, the parties appeared for hearing. Having considered the argument and evidence presented, the court hereby GRANTS Apple's motion to compel, but only in PART. The court also GRANTS-IN-PART Samsung's motion for a protective order.

---

[1] Docket No. 736 (Pl.'s Mot. to Compel Depositions of 14 of Samsung's Purported Apex Witnesses).

[2] Docket No. 754 (Def.'s Mot. for Protective Order).

Case No.: CV 11-1846 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

# I.     BACKGROUND AND PROCEDURAL HISTORY

Apple originally moved to compel depositions of fourteen Samsung employees.[3] Subsequently, Samsung filed a protective order to prevent Apple from taking the deposition of ten of those employees, having dropped its apex objections to Dong Hoon Chang, Minhyung Chung, Ken Korea, and Seung Gun Park.[4] In its opposition to Apple's motion to compel depositions, Samsung further narrowed its apex objections to nine Samsung employees.[5] Apple thereafter withdrew deposition notices for three Samsung employees.[6] The six remaining Samsung employees at issue are high-ranking employees of Samsung Electronics Co., LTD ("SEC")[7] or Samsung Telecommunications America, LLC ("STA"):

1.  Gee Sung Choi ("Choi");

2.  Jong Kyun Shin ("Shin");

3.  Won-Pyo Hong ("Hong");

4.  Seungwhan Cho ("Cho");

5.  Dale Sohn ("Sohn");

6.  Joseph Cheong ("Cheong").

Apple argues that it is entitled to these depositions because each SEC witness has unique, firsthand, non-repetitive knowledge of facts and events central to this litigation. The SEC witnesses acted in their authoritative, decisionmaking capacities regarding certain Samsung policies that

---

[3] *See* Docket No. 736.

[4] *See* Docket No. 754 at 4.

[5] *See* Docket No. 773 at 2 (Def.'s Opp'n to Pl.'s Mot. to Compel 14 Depositions).

[6] *See* Docket No. 799 at (Pl.'s Combined Reply in Support of Mot. to Compel Depos. and Opp'n to Samsung's Mot. for Protective Order).

[7] SEC is Samsung's Korean corporation and parent of Samsung's U.S. corporations, Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC. *See* Docket No. 75 at 2 (Pl.'s Amended Compl.).

Case No.: CV 11-1846 LHK (PSG)
ORDER

1  directed other employees to consider and compare Apple products when designing or re-designing

2  the accused products or features. The STA witnesses are personally knowledgeable of or

3  responsible for development, marketing, and finance decisions relating to the U.S. market for the

4  accused products. Because Samsung has not produced any discovery from these witnesses, all of

5  the evidence it relies upon has been pieced together from other witness sources. There are no

6  extraordinary circumstances or burdens that should prevent Apple from taking the depositions.

7        Samsung responds that these six witnesses hold the title of Executive Vice President or

8  higher, oversee at a minimum entire groups or divisions of employees, and have only high-level

9  knowledge far removed from the facts at issue in the case. Apple has not demonstrated that the

10  information it seeks is unique, first-hand, and non-repetitive, principally because Apple has failed

11  to obtain this information through other less burdensome means.

12                   **II.      LEGAL STANDARDS**

13        Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, "[t]he court may, for good

14  cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

15  undue burden or expense,"[8] including forbidding a deposition,[9] or limiting its scope.[10] The party

16  seeking a protective order bears the burden of showing good cause for the order by "demonstrating

17  harm or prejudice that will result from the discovery."[11] When a party seeks the deposition of a

18  high-level executive (a so-called "apex" deposition), courts have "observed that such discovery

19  creates a tremendous potential for abuse or harassment."[12] The court therefore has discretion to

20  limit discovery where the discovery sought "can be obtained from some other source that is more

21  convenient, less burdensome, or less expensive."[13]

---

22  [8] Fed. R. Civ. P. 26(c)(1).

23  [9] *See* Fed. R. Civ. P. 26(c)(1)(A).

24  [10] *See* Fed. R. Civ. P. 26(c)(1)(B).

25  [11] *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

26  [12] *Celerity, Inc. v. Ultra Clean Holding, Inc.*, C 05-4374MMC(JL), 2007 WL 205067, at *3 (N.D.

27  Cal. Jan. 25, 2007). *See also Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985).

28  [13] Fed. R. Civ. P. 26(b)(2)(C)(i).

Case No.: CV 11-1846 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

1    "In determining whether to allow an apex deposition, courts consider (1) whether the

2    deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2)

3    whether the party seeking the deposition has exhausted other less intrusive discovery methods."[14]

4    However, "a party seeking to prevent a deposition carries a heavy burden to show why discovery

5    should be denied."[15] Thus, it is very unusual "for a court to prohibit the taking of a deposition

6    altogether absent extraordinary circumstances."[16] "When a witness has personal knowledge of facts

7    relevant to the lawsuit, even a corporate president or CEO is subject to deposition."[17] "A claimed

8    lack of knowledge, by itself it is insufficient to preclude a deposition."[18]

9                    **III.    DISCUSSION**

10           The "apex" doctrine exists in tension with the otherwise broad allowance for discovery of

11   party witnesses under the federal rules. This judicially-created vehicle appropriately seeks to limit

12   the potential for the discovery rules to serve as a tool for harassment. Yet the court finds the

13   doctrine's common application to the classic paradigm of a single-hierarchy corporate structure to

14   be ill-suited to determining apex status and the resulting bounds of appropriate discovery in the

15   case of a large, multi-national corporation. A company of global proportions, like Samsung, may in

16   a single breath identify tens of high-level executives, each in charge of what amounts to its own,

17   significant division or sub-organization within the company. In such a case, the two-prong test for

18   unique first-hand, non-repetitive knowledge and for the party's attention to other, less intrusive

19   discovery methods must form only part of a more nuanced equation. In order that the "apex"

20   _____

21   [14] *In re Google Litig.*, C 08-03172 RMW (PSG), 2011 U.S. Dist. LEXIS 120905, at *10 (N.D. Cal.
     Oct. 19, 2011) (citations omitted).

22
     [15] *Celerity*, 2007 WL 205067 at *3. *See also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th
23   Cir. 1975).

24   [16] *WebSideStory, Inc. v. NetRatings, Inc.*, 06CV408 WQH (AJB), 2007 WL 1120567, at *2 (S.D.
     Cal. Apr. 6, 2007).
25
26   [17] *Id.*; *see also In re Google Litig.*, 2011 U.S. Dist. LEXIS 120905 at *10 (allowing deposition of
     Chief Executive Officer but denying deposition of President).

27
     [18] *Id.*
28

                                              4

1    designation as applied to multiple executives does not itself become a tool for evading otherwise

2    relevant and permissible discovery, the court must assess not only the materiality of the proposed

3    deponent's knowledge of pertinent facts and the availability of other means for the party to access

4    that knowledge, but – with apologies – the person's degree of "apex-ness" in relation to these

5    factors. On the proverbial sliding scale, the closer that a proposed witness is to the apex of some

6    particular peak in the corporate mountain range, and the less directly relevant that person is to the

7    evidence proffered in support of his deposition, the more appropriate the protections of the apex

8    doctrine become.

9        It is thus Samsung's burden to demonstrate that each "apex" witness is so entitled to that

10   designation, and where less entitled, is even further removed from having personal, non-repetitive

11   knowledge of discoverable information. Although not expressly set forth in its papers, at oral

12   argument Apple did not concede the apex status of the witnesses at issue, other than Samsung's

13   Chief Executive Officer, Gee Sung Choi.[19] The court therefore looks first to the relative position of

14   the proposed witness in the company and within his sub-organization, second to the materiality and

15   uniqueness of the witness' likely knowledge, and third to the availability or exhaustion of other less

16   burdensome discovery methods. Because many of the facts supporting each party's position may

17   be subject to sealing, the court will provide only a high-level summary of the evidence offered,

18   notwithstanding the detailed investigation that it has undertaken with respect to each witness at

19   issue.

20   **A.  SEC Chief Executive Officer – Gee Sung Choi**

21       Apple seeks to compel the deposition of Choi by arguing that he has been deeply involved

22   in directing Samsung's employee to make Samsung products more like Apple's products. To show

23   Choi's unique, first-hand knowledge regarding Samsung's purported strategy of considering

24   Apple's products when creating new Samsung products, Apple offers two categories of documents.

25   The first category consists of emails and meeting minutes authored by other Samsung employees

---

26   [19] In its opening brief, Apple argues generally that Samsung uses mere labels to "paint[] with far
27   too broad a brush" an "apex" objection onto far more witnesses than merit the special protections
     afforded by the doctrine. *See* Docket No. 736 at 7.

28

Case No.: CV 11-1846 LHK (PSG)
ORDER

1    that indicate Choi presided over meetings or discussions involving, for example, "product

2    competiveness against i-PAD2" and resulting design changes for Samsung's own tablet product,[20]

3    or that summarize statements or directives attributed to Choi that reference the need to evaluate

4    Samsung's high-end products against Apple's and thereby develop products that are more

5    competitive.[21] The second category consists of documents from 2007 – shortly after Apple's

6    release of the iPhone and before Samsung launched its Galaxy line of products – that were

7    developed and approved by Samsung's "Design Management Center" of which Choi was the head

8    at the time. The proffered document outlines a strategy that Apple contends mimics its own,

9    renowned strategy for customer experience, as well as directly cites Apple products.[22] Apple

10   argues that it has tried to obtain information pertaining to these strategy documents from lower-

11   level employees with no success.[23]

12          Samsung responds that Apple seeks to depose Choi based on nothing more than his current

13   title as CEO and former title of President of SEC's Telecommunications Network Business in

14   2007, and on comments attributed to him by others, many regarding the need to improve Samsung

15   products not at issue in this case. Samsung argues that Apple has produced no evidence indicating

16   Choi was involved in the creation or implementation of the strategy documents touted by Apple.

17   Instead, the documents merely show that Samsung was at the top of the relevant corporate

18   hierarchy.[24] Samsung further argues that Apple failed to acknowledge the statements of Samsung's

19   30(b)(6) designee, Yunjung Lee, who already explained that the strategy about which Apple seeks

20   to depose Choi did not influence the development of the accused products and features.[25]

---

[20] *See, e.g.*, Docket No. 736, Ex. 3 (Mazza Decl.), Exs. 11, 12 (under seal).

[21] *See, e.g.*, Mazza Decl. Exs. 8, 10 (under seal).

[22] *See id.*, Ex. 6 (under seal).

[23] *See id.*, Ex. 6 at 45-52, Ex. 7 at 101-04, Ex. 40 at 89-91(under seal).

[24] *See* Docket No. 799, Ex. 6 at 41 (Depo. Tr. Seogguen Kim) (under seal).

[25] *See* Docket No. 819, Ex. 4 (Kassabian Reply Decl.), Ex. B at 33-38 (Depo. Tr. Yunjung Lee) (under seal).

6

Case No.: CV 11-1846 LHK (PSG)
ORDER

1    Choi's position as CEO of Samsung Electronics Company does not automatically shield his

2    deposition.[26] In *In re Google*, this court ordered the limited deposition of the defendant's CEO after

3    the plaintiff showed that he had unique knowledge of facts that could not be secured by other less

4    intrusive means of discovery.[27] Specifically, the CEO was a named inventor on several patents, he

5    was one of a few employees at Google during at the time of hypothetical negotiations of the patents

6    at issue, and he had direct knowledge of the patent search industry.[28] In light of the evidence

7    proffered by Apple that Choi was at the head of a strategic shift in Samsung's design mentality at

8    precisely the time that certain accused products were being developed, the court is similarly

9    persuaded that Choi may have engaged in "the type of hands-on action which demonstrates the

10   unique personal knowledge required to compel a deposition of a CEO."[29] Although Samsung is

11   correct that holding rank at the top of the relevant hierarchy is not enough, Apple has set forth

12   additional bases that warrant discovery into Choi's role in developing the policies or strategies

13   identified as suspect by Apple.[30]

14       Because Choi represents the quintessential "apex," however, Apple's proffer of evidence

15   suggesting unique knowledge is insufficient to warrant unrestricted deposition time and subject

16   matter. The court therefore GRANTS Apple's motion to compel Choi's deposition, subject to the

17   following limitations. Apple may depose Choi for no more than two hours.[31]

18

---

19   [26] *See In re Google Litig.*, 2011 U.S. Dist. LEXIS 120905 at *11.

20   [27] *See id.*

21   [28] *See id.* at *8-9.

22   [29] *See Doble v. Mega Life & Health Ins. Co.*, C 09-1611 CRB (JL), 2010 WL 1998904, at *3 (N.D.
23   Cal. May 18, 2010).

24   [30] *Cf. Kennedy v. Jackson Nat'l Life Ins. Co.*, 2010 U.S. Dist. LEXIS 47866, at *7-8 (N.D. Cal.
25   Apr. 22, 2010) (court allowed deposition of CEO because he was the main decision maker in
     numerous relevant, discrete areas of the company).

26   [31] The hours of deposition are subject to the agreement of the parties regarding the calculation of
27   deposition time for translated depositions. *See, e.g.*, Docket No. 683 ¶ 16 (Mazza Decl. in Support
     of Pl.'s Mot. to Compel).

28

7

Case No.: CV 11-1846 LHK (PSG)
ORDER

**B.  President of SEC's Mobile Division – Jong Kyun Shin**

Apple also seeks to compel the deposition of Shin, arguing that he has directed the development of Samsung's mobile touchscreen products at a hands-on level, including by promoting comparisons to Apple's products. According to Apple, Shin's instrumental role includes his time in 2007 as the former Executive VP of SEC's R&D group for mobile phones. Apple relies on an email relaying a speech given by Shin in February 2010 in which he highlights the gap in user experience between a line of Samsung phones and the iPhone, and also explains what carriers are telling him about the need to sell a high-end phone like the iPhone.[32] Apple argues that when it deposed another Samsung employee who attended the subject meeting, it received only evasive testimony and failure to recollect Shin's comments. Apple also points to email communications in which Shin gave specific orders to round the corners of another Samsung product.[33] Apple contends that deposition testimony from Samsung witness Don-Joo Lee indicates that Shin reviewed mockups of the Galaxy Tab and provided comments and feedback for the design group.[34] In another email, directions to research ways to lighten the unit are attributed to the "head of the division."[35] Apple similarly points to a marketing report containing comments by Shin regarding the need to find a "global common denominator" in order to plan a product like the iPhone.[36]

Samsung responds that Apple's evidence demonstrates nothing but third-party and lower-level employee input, and does not demonstrate actual involvement by Shin in the relevant design decisions. For example, the employee email summarizing Shin's speech makes clear that his purported comments reflect input provided by third parties and do not suggest Shin's own views, other than regarding the Omnia product not at issue in this case. Samsung also contends that Apple has failed to demonstrate it exhausted other means to obtain the information, particularly from

---

[32] *See* Mazza Decl., Ex. 9 (under seal).

[33] *See id.*, Ex. 17 at 8 (under seal).

[34] *See* Docket No. 799, Ex. 4 (Mazza Reply Decl.), Ex. 7 at 127, 146-48 (under seal).

[35] *See id.*, Ex. 15 at 2 (under seal).

[36] *See* Mazza Reply Decl., Ex. 12 (under seal).

Case No.: CV 11-1846 LHK (PSG)
ORDER

1    those employees who authored the emails offered in support of Apple's motion. For example,

2    Samsung points out that the report relied upon by Apple suggests only high-level comments by

3    Shin regarding the need to measure against the "global denominator," and that Apple failed to

4    question the report's author on the meaning of the comments in the report during his deposition.[37]

5        With respect to this lawsuit, Shin inhabits a key, high-level position for which Apple's

6    showing of unique knowledge and exhaustion of other means of obtaining discovery is insufficient.

7    The court is not persuaded that Shin has unique, first-hand knowledge that implicates anything

8    beyond the statements of a business executive voicing Samsung's need to remain competitive and

9    to plan its designs accordingly.[38] Unlike the overarching, "copycat" strategy that Apple offers

10   evidence to suggest Choi may have had a direct hand in authoring, the evidence cited by Apple

11   does not demonstrate a personal role or strategic design decision that Shin orchestrated or even

12   approved. The court therefore DENIES Apple's motion to compel Shin's deposition, and GRANTS

13   Samsung's cross-motion for a protective order.

14   **C. Executive Vice President of SEC Mobile Division's Product Strategy Team –
        Won-Pyo Hong**

15        Apple argues that as the head of the product strategy team, Hong has both the knowledge

16   about Samsung's strategy behind design decisions and the authority to carry out those directives,

17   particularly the consideration and copying of Apple's products. Apple proffers an email chain with

18   an email from Hong his team to present product designs alongside Apple designs of a similar or

19   corresponding product in order to engage in a "compare and contrast."[39]Apple argues that Hong

20   was likely responsible for a design study that opined on the successful design of the iPhone,[40] and

---

[37] *See id.*, Ex. 7 at 74-77 (under seal).

[38] *Cf. Affinity Labs of Texas v. Apple, Inc.*, C 09-4436 CW JL, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) (the fact that the witness is a CEO by itself is insufficient to justify taking his deposition); *Groupion, LLC v. Groupon, Inc.*, 11-0870 MEJ, 2012 WL 359699, at *3 (N.D. Cal. Feb. 2, 2012) (denying opportunity to depose CEO and other apex witnesses because evidence that 30(b)(6) witness had not verified his information with them was insufficient to demonstrate their unique, non-repetitive, firsthand knowledge).

[39] *See* Mazza Decl., Ex. 22 (under seal).

[40] *See* Mazza Reply Decl., Ex. 19 (under seal).

Case No.: CV 11-1846 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

that other deponents have confirmed that Hong made the "final decision" with respect to new product proposals, including for the Galaxy Tab 10.1.[41] Apple argues that the testimony of Samsung's 30(b)(6) witness, Senior VP Dong Hoon Chang, regarding the same study and Samsung's position regarding the iPhone[42] directly conflicts with statements in the study created by Hong's team. Apple seeks to depose Hong to get a more accurate picture of Samsung's design strategy in relation to Apple's products.

Samsung argues that Hong is one of the highest ranking executives in the Mobile Communication Division, overseeing approximately 800 employees. Samsung contends that Apple has not traced any unique personal knowledge to Hong that Apple cannot obtain from other employees. With regard to the referenced design study, Samsung contends that Apple failed to ask Chang – the witness whom Samsung had identified to be most knowledgeable – about the purported discrepancy between his statements and the study itself. Samsung further contends that Apple has exhaustively deposed eighteen lower-level employees, three vice presidents, and a senior vice president who were involved with the day-to-day design and development of the products at issue, including Samsung's designated 30(b)(6) witnesses on topics related to the Product Strategy Team's activities. Samsung argues that Apple has not shown why these depositions are insufficient or how Hong will provide additional, unique information.

Apple largely relies on the design study created by Hong's team and on his placement as the head of product strategy. Apple's failure to introduce evidence that Hong actually created or oversaw the study or particular decisions is tempered by the fact that he was named multiple times during other's deposition as responsible. In addition, Samsung fails to address the significance of the email evidence in which Hong directly orders side-by-side comparisons of Apple and Samsung products for design presentations. This suggests at least one area in which Hong is has unique, firsthand knowledge (of his own intent and meaning in issuing such a directive) that cannot be supplied by other means. Because Samsung has not identified any particular burden to Hong, other

---

[41] *See id.*, Ex. 7 at 124-25, 136-37,148-51, 154-55 (under seal).

[42] *See id.*, Ex. 40 at 88.

10

Case No.: CV 11-1846 LHK (PSG)
ORDER

than his position as one of the highest-ranking executives in the Mobile Communications Division and responsible for overseeing nine groups, each managed by a senior vice president or vice president, the court finds that limited deposition time with Hong is warranted. Accordingly, the court GRANTS Apple's motion to compel Hong's deposition, which may last for no more than three hours.

### D.  Senior Vice President of Advanced R&D – Seunghwan Cho

Apple argues that Cho led software development for the accused Galaxy S and Galaxy Tab products and "oversaw the development of features that Apple contends infringe its utility patents." Apple points to a series of emails in which Cho explained that the user experience of another Samsung product not at issue in this case was deficient compared to the iPhone,[43] and another in which he ordered improvements in graphic user interface usability.[44] In one email thread, Cho requests input from the designers regarding Samsung's efforts to develop animation effects that he identifies as a key difference between the Galaxy Tab and iPad.[45] The response to Cho includes a detailed checklist of various graphical user interfaces, including accused features, while providing detailed feedback on user experience designs and models. Apple points to another email in the thread – in which Cho remarks that the Galaxy Tab is inferior in certain effects and aspects compared to the iPad – as evidence of Cho's having provided firsthand his opinion and directives concerning features that are likely include many of the accused features at issue in this case.[46]

Samsung responds that Cho did not have primary responsibility for the day-to-day decisions concerning the design of Samsung's products, especially considering that he has overseen the development of 75 products in the past year alone. Samsung contends that the entirety of comments made by Cho in the referenced email chain represent only generalized observations and requests

---

[43] *See* Mazza Decl., Ex. 34 (under seal).

[44] *See id.*, Ex. 35 at 4-5 (under seal).

[45] *See* Mazza Reply Decl., Ex. 28 (under seal).

[46] *See id.*

11

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   for improvements, as opposed to express or implied directions to copy Apple.[47] Samsung argues

2   that Apple could have questioned the primary recipient of Cho's email, Vice President Yong Suk

3   Moon, during his deposition, but chose not to. Moreover, Samsung points out that Apple already

4   deposed Vice President SungSik Lee, who gave the specific instructions in the email regarding the

5   improvements suggested by Cho. Finally, Samsung contends that the deposition of Cho is

6   unwarranted because Apple canceled depositions of lower-level employees in that division.

7        Samsung opposes largely on the ground that Apple has not exhausted less intrusive

8   methods of discovery, specifically depositions of lower level employees.[48] However, Apple has

9   sufficiently shown that Cho was directly involved in reviewing certain Samsung features in relation

10  to Apple, and seeking detailed feedback from designers.[49] Whether Apple should have questioned

11  the recipient of Cho's email as well does not negate the fact that Cho, as the sender, is likely to

12  have his own unique knowledge of what he intended by his comments and questions. As with

13  Hong, Samsung further fails to articulate any burden or extraordinary circumstance present –

14  besides the fact that Cho is an executive vice president who oversees approximately 800 employees

15  – that would set provide a counter-balance to Apple's showing. Accordingly, as to Cho, the court

16  GRANTS Apple's motion to compel, and DENIES Samsung's motion for a protective order. Apple

17  may depose Cho for no more than three hours.

18  **E. President and CEO of Samsung Telecommunications America ("STA") – Dale Sohn**

19       Apple argues that because sales of the accused products make up more than half of STA's

20  sales, STA's sales strategies, projections, marketing plans, and profits are all relevant to the

---

[47] *See id.*, Ex. 28 (under seal) ("[s]ince the Galaxy Tab is currently inferior in effect [sic] and emotional aspects compared to the iPad, please show your interest and give ideas on these aspects as well")

[48] *See Affinity Labs of Texas*, 2011 WL 1753982, at *6-7 (the court "required that depositions of lower-level employees must first be taken to establish whether there was a need to depose high-level executives"); *Groupion, LLC*, 2012 WL 359699, at *4 (plaintiff did not show "that it even attempted less intrusive means of discovery, such as interrogatories or depositions of lower-ranking employees").

[49] *See First United Methodist Church of San Jose v. Atl. Mut. Ins. Co.*, No. C-95-2243 DLJ, 1995 U.S. Dist. LEXIS 22469, at *8 (N.D. Cal. Sept. 19, 1995).

Case No.: CV 11-1846 LHK (PSG)
ORDER

**United States District Court**
For the Northern District of California

1   remedies Apple seeks to prove. Apple argues that Sohn is responsible for the U.S. market and has

2   unique knowledge regarding Samsung's positioning to infringe Apple's intellectual property.

3   Apple argues that Sohn made decisions that contributed directly to the trademark, trade dress, and

4   patent infringement alleged by Apple. Specifically, Apple refers to a series of emails sent by Sohn

5   in which he outlines the goals and implementation strategy for a "Beat Apple" campaign.[50] In one

6   of the emails, Sohn states that he cannot afford the luxury of thinking and talking about the big

7   things, but instead must focus on the details,[51] which Apple argues demonstrates that Sohn was

8   immersed in day-to-day decision making. Apple also points to an email thread regarding the

9   placement of Samsung's logo on the Galaxy Tab products in which Sohn voices his opinion

10  regarding the logo placement and requests that such decisions go through STA first.[52] Finally,

11  Apple argues that it deposed the head of marketing at Samsung Electronics Company Don-Joo Lee,

12  who stated that he did not know whether Samsung decided to adopt a strategy to have the Galaxy

13  Tab rival the iPad, but "whoever is responsible in the U.S. market would know best."[53]

14          Samsung asserts that Sohn oversees over 1,000 employees and three business divisions, and

15  that his deposition is not warranted simply because he makes high-level decisions. Samsung argues

16  that Sohn's knowledge regarding the design, development, and marketing of the relevant products

17  is based solely on reports received at high-level meetings.[54] Samsung also argues that numerous

18  lower-level employees have already testified, and Samsung has designed three STA employees as

19  30(b)(6) witnesses on product design and strategy, market topics, and financial topics. Samsung

20  argues that Sohn's deposition will not provide any unique, non-repetitive information. Samsung

21  further argues that the email stating Sohn was going to "deep dive" into the details only shows his

---

[50] *See* Mazza Decl., Ex. 39 (under seal).

[51] *See* Mazza Reply Decl., Ex. 29 (under seal).

[52] *See id.*, Ex. 41 (under seal).

[53] *See id.*, Ex. 7 at 36:16-37:6 (under seal).

[54] *See* Docket No. 754, Ex. 10 ¶ 5 (Sohn Decl.).

13

Case No.: CV 11-1846 LHK (PSG)
ORDER

1   concern regarding STA's performance, not any action actually taken to dive into design or

2   marketing-related details.

3        Although Sohn's communications regarding the "Beat Apple" campaign do not reveal

4   direct involvement in design decisions related to Apple's patent infringement claims, they do

5   reveal responsibility taken for developing and implementing details of the U.S. market approach,

6   many of which may be relevant to Apple's trademark claims, as well as to evidence on damages.

7   This includes Sohn's directive for decisions regarding such product and marketing issues as logo

8   placement to go through STA first, before being brought to the Korea headquarters. This indicates

9   that Sohn is likely to have knowledge that Apple is entitled to explore, especially where another

10  high-level, U.S. based executive testified that Sohn would be the appropriate person.[55] Although

11  Sohn's position as the head of STA does indicate apex status, at least as to STA, Samsung does not

12  provide further justification for withholding his deposition. The court therefore GRANTS Apple's

13  motion to compel the deposition of Sohn, and DENIES Samsung's cross-motion for a protective

14  order. Apple may depose Sohn for no more than three hours.

15  **F.  Chief Financial Officer of STA – Joseph Cheong**

16       Finally, Apple seeks the deposition of Cheong because has unique knowledge of the

17  financial position, profitability, and operations of STA in relation to Samsung Electronics

18  Company. Apple argues that Cheong has the ultimate authority to make decisions that impact

19  STA's profitability from the sale of the accused products. Apple further argues that because

20  Cheong signs the financial statements and submits them to Samsung's headquarters in Korea, he

21  takes ultimate responsibility for each statement's accuracy and contents, and thus is best equipped

22  to testify about them. Apple points to the "Advanced Pricing Agreement,"[56] signed by Cheong,

23  which creates a transfer-pricing basis to provide the IRS with a pre-determined minimum income

24

25  [55] *See Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 103 (S.D.N.Y.
    2001); *Kennedy,* 2010 U.S. Dist. LEXIS 47866 at *7-8 (the court allowed the deposition of the
26  CEO where other employees testified that the CEO was the person most likely to have the
    information).

27  [56] *See* Mazza Decl., Ex. 44 (under seal).

28

                                                    14

Case No.: CV 11-1846 LHK (PSG)
ORDER

1   for STA's activities. Apple further argues that memorandum to Cheong and emails discussing a

2   request by Cheong to negotiate a settlement with a wireless carrier show that Cheong was involved

3   in the daily financial decisions of STA.

4          Samsung asserts the same general objections to Cheong as it did for Sohn – namely that

5   Cheong does not have any unique, first-hand knowledge as all of his knowledge, and his deposition

6   is not warranted simply because he makes high-level decisions. Samsung concedes that Cheong

7   may have unique knowledge regarding the financial relationship between STA and Samsung

8   Electronics Company, but insists that Cheong does not have unique knowledge of the particular

9   design, development, or marketing of the disputed products that form the core of the present

10  dispute. Samsung contends that Apple has already deposed Samsung's 30(b)(6) damages

11  designees, and Apply cannot gain any additional, unique information from a potential deposition of

12  Cheong. Finally, Samsung contends that Apple's standard would subject virtually all senior

13  financial officers to depositions merely because they have knowledge of corporate financial

14  information.

15         The court finds that the unique financial relationship between SEC and STA, and Cheong's

16  specific role interfacing between the two entities, supports Apple's argument regarding unique

17  knowledge. As the court noted earlier, in the context of a multi-national company with many high-

18  level executives, the fact that the named deponent is a chief financial officer factors alongside the

19  relevance and materiality of his knowledge and the availability of other sources of the information

20  being sought. Like that in *Kennedy*, where the court found that the CEO had relevant personal

21  knowledge because he was identified by other employees as the main decision-maker regarding

22  certain issues that were in dispute,[57] Cheong maintains a unique role as the financial interface

23  between SEC and SEC. As to Cheong, the court therefore GRANTS Apple's motion to compel and

24  DENIES Samsung's cross-motion for a protective order. Apple may depose Cheong for no more

25  than three hours.

26

27  [57] *See Kennedy,* 2010 U.S. Dist. LEXIS 47866 at *7-8.

28

Case No.: CV 11-1846 LHK (PSG)
ORDER

IV.    **CONCLUSION**

Apple's motion to compel depositions of Choi, Hong, Cho, Sohn, and Cheong is GRANTED-IN-PART in accordance with the limitations set forth above. Samsung shall offer dates for these depositions, to take place no later than April 20, 2012. The court further GRANTS Samsung's motion for a protective order with respect to Shin.

**IT IS SO ORDERED.**

Dated: 4/4/2012

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: CV 11-1846 LHK (PSG)
ORDER