1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6  CORPORATION,                )
                               )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,       )
                               )  MARCH 27, 2012
8         VS.                   )
                               )  PAGES 59-143
9  SAMSUNG ELECTRONICS CO.,     )
   LTD., A KOREAN BUSINESS      )  **AFTERNOON SESSION**
10 ENTITY; SAMSUNG              )
   ELECTRONICS AMERICA,         )
11 INC., A NEW YORK             )
   CORPORATION; SAMSUNG         )
12 TELECOMMUNICATIONS           )
   AMERICA, LLC, A DELAWARE     )
13 LIMITED LIABILITY            )
   COMPANY,                     )
14                             )
               DEFENDANTS.      )
15 _____

16      TRANSCRIPT OF PROCEEDINGS
   BEFORE THE HONORABLE PAUL S. GREWAL
17    UNITED STATES MAGISTRATE JUDGE

18

19

20      APPEARANCES ON NEXT PAGE

21

22

23

24 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                 CERTIFICATE NUMBER 9595
25

                                             59

1

2     A P P E A R A N C E S:

3     FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                 BY:  HAROLD J. MCELHINNY
4                                 RICHARD S.J. HUNG
                                  ALISON M. TUCHER
5                            425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
6

7

8     FOR THE DEFENDANT:  QUINN, EMANUEL, URQUHART,
                          OLIVER & HEDGES
9                         BY:  KEVIN P.B. JOHNSON
                               JOHN QUINN
10                             VICTORIA F. MAROULIS
                               RACHEL H. KASSABIAN
11                        555 TWIN DOLPHIN DRIVE
                          SUITE 560
12                        REDWOOD SHORES, CALIFORNIA  94065

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              60

```
 1    SAN JOSE, CALIFORNIA              MARCH 27, 2012

 2                      AFTERNOON SESSION

 3              (WHEREUPON, COURT CONVENED AND THE

 4    FOLLOWING PROCEEDINGS WERE HELD:)

 5              THE COURT:  MR. RIVERA, JUST SO THAT THE

 6    RECORD IS CLEAR, COULD YOU CALL THE MATTER WE WERE

 7    ADDRESSING THIS MORNING ON THE CIVIL CALENDAR?

 8              THE CLERK:  YES, YOUR HONOR.

 9              CALLING APPLE, INC. VERSUS SAMSUNG

10    ELECTRONICS COMPANY, CASE NUMBER CV-11-1846.

11              COUNSEL, PLEASE STATE YOUR APPEARANCES.

12              THE COURT:  I'LL ACTUALLY ALLOW YOU ALL

13    TO INCORPORATE BY REFERENCE YOUR APPEARANCES FROM

14    THIS MORNING.  WHY DON'T WE MOVE ON?

15              MR. MCELHINNY:  WE'LL DO IT ANY WAY YOU

16    WANT.  YOUR REPORTER ASKED US TO DO IT SO SHE HAD

17    IT ON THE RECORD.

18              THE COURT:  I'LL DEFER TO MY REPORTER.

19              MR. MCELHINNY:  I JUST DON'T WANT TO GET

20    IN TROUBLE WITH EITHER OF YOU.

21              THE COURT:  DO IT QUICKLY.

22              MR. MCELHINNY:  MY NAME IS

23    HAROLD MCELHINNY.  I'M HERE WITH RICH HUNG AND

24    ALLISON TUCHER ON BEHALF OF APPLE.

25              THE COURT:  GOOD AFTERNOON.
```

1            MR. JOHNSON:  YOUR HONOR, GOOD AFTERNOON.

2     KEVIN JOHNSON ON BEHALF OF SAMSUNG.  WITH ME IS

3     JOHN QUINN, RACHEL KASSABIAN, VICTORIA MAROULIS.

4            THE COURT:  GOOD AFTERNOON TO YOU AS

5     WELL.

6            ALL RIGHT.  COUNSEL, BEFORE WE BROKE, I

7     BELIEVE WE WERE ABOUT TO TURN TO THE FOURTH OF THE

8     DEPONENTS AT ISSUE IN THE THREE MOTIONS WE WERE

9     DISCUSSIONS THIS MORNING, MR. CHO.

10            MR. MCELHINNY:  YOUR HONOR HAS BEEN VERY

11     GENEROUS WITH YOUR TIME.  I'M GOING TO TRY TO SPEED

12     UP A LITTLE BIT.  I DON'T WANT TO RUN THE RISK OF

13     UNDERSELLING, BUT I'M SURE IF YOUR HONOR HAS

14     QUESTIONS, YOU'LL ASK ME.

15            ON MR. CHO, AGAIN, WE'LL TALK ABOUT THIS

16     IN THE SANCTIONS PART, BUT ONE OF THE COUNSEL

17     SITTING AT SAMSUNG'S TABLE STOOD UP IN FRONT OF

18     THIS COURT AND SAID, "PART OF THE PROBLEM IN THIS

19     DISCOVERY IS APPLE IS LOOKING FOR SMOKING GUNS AND

20     THERE AREN'T ANY AND WE CAN'T PRODUCE THEM BECAUSE

21     THERE AREN'T ANY AND THEY CAN'T FORCE US TO PRODUCE

22     DOCUMENTS THAT WE DON'T HAVE."

23            IF YOUR HONOR HAS HAD A CHANCE TO LOOK AT

24     EXHIBIT 28 TO THE REPLY DECLARATION OF MS. MAZZA,

25     IF IT WASN'T SETTING OFF THE FIRE ALARMS IN YOUR

1    OFFICE FROM THE SMOKE THAT'S GENERATED FROM IT, I

2    DON'T KNOW WHAT WOULD.

3              IF YOU DON'T HAVE IT IN FRONT OF YOU, I

4    WILL SHOW IT TO YOU.

5              THE COURT:  I HAVE IT.  YOU CAN --

6              MR. MCELHINNY:  OKAY.  ON THE THIRD PAGE

7    IT BEGINS WITH AN E-MAIL FROM MR. CHO IN WHICH HE

8    SAYS, "IN COMPARING THE GALAXY TAB AND THE IPAD,

9    THE MOST INSUFFICIENT PART IS THE SCREEN SWITCH

10   EFFECT.  PLEASE HAVE INTERNAL DISCUSSIONS," I'VE

11   LEFT OUT SOME OF THIS, "IN RESPONSE TO THIS AND

12   PROVIDE SOLUTIONS."

13             MR. QUINN:  EXCUSE ME, YOUR HONOR.  CAN

14   WE ASK FOR THE BATES NUMBER FOR THE PAGE?

15             MR. MCELHINNY:  CERTAINLY.  THAT PAGE WAS

16   00532563.

17             MR. QUINN:  63.

18             MR. MCELHINNY:  ON THE NEXT PROCEEDING

19   PAGE, SO SUBSEQUENTLY IN THE CHAIN AT 00532562, A

20   MR. MOON RESPONDS AND SAYS, "FOR NOW AT THE

21   PLATFORM LEVEL, COMPARED TO THE IOS4," WHICH IS

22   OBVIOUSLY THE APPLE OPERATING SYSTEM, "OTHER SWITCH

23   ANIMATIONS BESIDES THE CARD VIEW TASK SWITCHING

24   ANIMATION ARE ABUNDANTLY SUPPORTED AND ANIMATION

25   CUSTOMIZATION FOR API APPEARS TO BE SUPPORTED AS

1    WELL."

2              AND THEN APPEARS THIS SENTENCE:  "THUS,

3    EVEN AT THE CURRENT CONDITIONS, MOST APPLE

4    ANIMATIONS, BESIDES A SMALL PORTION, WILL BE MOST

5    LIKELY POSSIBLE."

6              AND THEN THERE'S A LIST, A CHECKLIST OF

7    78 ITEMS IN WHICH THEY MAKE CHANGES IN ORDER TO

8    CARRY OUT MR. CHO'S DIRECTIONS, SEVERAL OF WHICH

9    REFER SPECIFICALLY TO THE IPAD.

10             I DON'T NEED TO MAKE MY CLOSING ARGUMENT

11   TO YOU, BUT HERE IS THE MAN WHOSE DEPOSITION WE

12   WANT TO TAKE WHO IS SAYING, "I'M LOOKING AT THESE

13   THINGS.  IT DOESN'T LOOK LIKE THE IPAD TO ME.  CAN

14   WE MAKE IT LOOK LIKE THE IPAD?"

15             AND HE GETS BACK A REPORT WITH 78 CHANGES

16   SAYING, "YES, THAT'S EXACTLY WHAT WE CAN DO."

17             THE COURT:  WAS MR. MOON A RECIPIENT OF

18   THIS E-MAIL?

19             MR. MCELHINNY:  AT THE TOP, AT THE TOP IN

20   THE FINAL E-MAIL, I'M SORRY, TO MR. SEUNGHWAN CHO,

21   THE MAN WE'RE TALKING ABOUT, THE FINAL REPORT OF

22   THE ENTIRE E-MAIL CHAIN GOES BACK TO HIM ON

23   OCTOBER 4TH, 2010, THAT'S BATES PAGE 00532560, WITH

24   THE STATEMENT, "THE FOLLOWING IMPROVEMENT PLAN

25   RESULTED FROM THE ANALYSIS OF THE 78 PROBLEMS."

1          THE COURT:  PERHAPS I MISSPOKE.  I WAS

2     SIMPLY ASKING WHETHER MR. YONG SEOK MOON WAS ONE OF

3     THE RECIPIENTS OF THIS COMMUNICATION.  IF I'M

4     THINKING OF THE WRONG DOCUMENT, THEN I APOLOGIZE.

5          MR. MCELHINNY:  LET ME JUST HAND IT UP TO

6     YOU AND THEN YOUR HONOR CAN LOOK AT IT.

7          THE COURT:  SURE.

8          YES.  SO I SEE A MR. MOON IDENTIFIED AS A

9     RECIPIENT, AND IT'S MY UNDERSTANDING THAT MR. MOON

10    WAS DEPOSED.  WAS HE ASKED ABOUT THAT SUBJECT?  DO

11    YOU KNOW?

12         MR. MCELHINNY:  I DON'T -- I CAN -- I

13    KNOW WE ADDRESSED THIS DIRECTLY IN THE REPLY BRIEF.

14    I JUST DON'T REMEMBER THE ANSWER AS I'M STANDING

15    HERE.

16         THE COURT:  LET'S ASSUME FOR THE MOMENT

17    THAT THE ANSWER TO MY QUESTION IS NO, HE WAS NOT.

18         MR. MCELHINNY:  OKAY.

19         THE COURT:  THIS IMPLICATES OBVIOUSLY A

20    NUMBER OF THESE WITNESSES.

21         WHAT -- I'D LIKE YOUR THOUGHTS,

22    MR. MCELHINNY, ON THE IMPORT OR SIGNIFICANCE OF

23    APPLE TAKING DEPOSITIONS OF A NUMBER OF RECIPIENTS

24    OF THESE VARIOUS COMMUNICATIONS WHICH YOU SAY

25    SHOULD SUBJECT THESE APEX WITNESSES TO DEPOSITION

1    AND APPLE FAILING TO DIRECT QUESTIONS TO THOSE

2    WITNESSES FIRST BEFORE SEEKING TO TAKE THIS.

3              HOW WOULD YOU SQUARE THAT?

4              MR. MCELHINNY:  FIRST -- AND I APOLOGIZE.

5    I'M GOING TO MAKE -- THE REASON THIS DOCUMENT IS IN

6    THE REPLY BRIEF IS BECAUSE IT WAS PRODUCED TO US

7    SINCE THE OPENING BRIEF WAS FILED.

8              I'M NOT IN A POSITION TO MAKE

9    REPRESENTATIONS ONE WAY OR ANOTHER.  I SHOULD KNOW

10   THE ANSWER.  I JUST DON'T KNOW THE ANSWER.

11             BUT WHETHER OR NOT -- IT'S NOT CLEAR TO

12   ME THAT WE HAD THIS DOCUMENT AT THE -- AT THE TIME

13   MR. MOON'S DEPOSITION WAS TAKEN.

14             BUT LET'S SAY HYPOTHETICALLY THAT IT

15   WAS -- LET ME JUST ANSWER YOUR QUESTION DIRECTLY,

16   WHICH IS IF YOU'RE GOING -- I MEAN, IF WE HAVE THE

17   OPPORTUNITY TO ASK THE PERSON WHO ACTUALLY GAVE THE

18   DIRECTION ABOUT A DIRECTION THAT HE GAVE IN A CASE

19   WHERE INTENTIONAL COPYING IS THE ISSUE, I DON'T

20   THINK THAT IT LETS HIM OFF THE HOOK, THE FACT THAT

21   WE DIDN'T ASK OTHER PEOPLE ABOUT HIS INTENT.

22             THE COURT:  OR EVEN IF YOU DID, I ASSUME

23   YOU WOULD SAY THAT YOU SHOULD BE ABLE TO ASK BOTH

24   OF THESE PEOPLE.

25             MR. MCELHINNY:  WE KNOW FROM A LOT OF

1    EXPERIENCE THAT THE PEOPLE WE DID ASK IN THOSE

2    SITUATIONS SAID TO US, "I DON'T KNOW WHAT HE WAS

3    THINKING, WHAT HIS INTENT WAS."  THAT WAS A COMMON

4    REFRAIN.

5            BUT IT JUST IS LOGICAL.  I MEAN, WHAT --

6    WHAT DID THIS MAN MEAN?  WHY WAS HE GIVING THIS

7    DIRECTION?  WHAT DID HE EXPECT TO HAPPEN AND DID

8    THIS SATISFY THOSE DIRECTIONS?

9            THERE'S NO UNDERLING THAT CAN ANSWER

10   THAT.  THAT IS CLASSIC.  WHEN YOU HAVE AN E-MAIL

11   MESSAGE FROM A PERSON, THAT'S A CLASSIC IN ASKING,

12   LET'S TURN AROUND AND MAKE IT AN EVIDENTIARY

13   QUESTION.

14           SO I ASK MR. MOON, YOU KNOW, "WHAT DID

15   MR. CHO MEAN WHEN HE SENT YOU THIS?  WHAT DID HE

16   MEAN?"

17           THE COURT:  "OBJECTION, CALLS FOR

18   SPECULATION."

19           MR. MCELHINNY:  EXACTLY.  WE WOULD BE

20   FACING A TON OF OBJECTIONS ABOUT THIS.

21           THIS IS A SMOKING GUN.  MR. CHO WROTE IT.

22   MR. CHO GOT THE FINAL REPORT.  HE SHOULD HAVE TO

23   TESTIFY ABOUT IT.

24           THE COURT:  ALL RIGHT.  THANK YOU.

25           MR. QUINN?

1              MR. QUINN:  YOUR HONOR, MR. -- MY FRIEND

2      MR. MCELHINNY BEGAN BY SAYING HE DIDN'T WANT TO

3      OVERSELL, AND I SUBMIT HE OVERSOLD THIS DOCUMENT BY

4      A THOUSAND MILES.

5              THERE IS NO DIRECTION HERE TO MAKE

6      CHANGES IN ACCORDANCE WITH APPLE'S ANIMATIONS.  IF

7      YOU RUN DOWN THIS LIST, IT IDENTIFIES, AS I READ

8      IT, A NUMBER OF DEFECTS THAT AN ENGINEER HAS

9      IDENTIFIED IN SAMSUNG'S PRODUCT.

10              I THINK IT'S REALLY IMPORTANT THAT, I

11      WOULD SUGGEST, YOUR HONOR, THAT WE READ THE

12      DOCUMENT AND NOT MR. MCELHINNY'S GLOSS ON IT.

13              THIS IS NOT ONLY NOT A SMOKING GUN, BUT I

14      DON'T SEE ANYTHING HERE ABOUT COPYING.

15              THERE'S A STATEMENT HERE TO THE EFFECT

16      THAT THE GALAXY TAB IS CURRENTLY INFERIOR IN EFFECT

17      AND EMOTIONAL ASPECTS COMPARED TO THE IPAD.  PLEASE

18      SHOW YOUR INTEREST AND GIVE US IDEAS ON THESE

19      ASPECTS AS WELL.

20              THERE IS NO DIRECTION TO GO COPY

21      ANYTHING.

22              THERE IS A LONG LIST HERE OF 78 ITEMS,

23      BUT IF YOU READ IT, THERE'S NO -- THERE IS NOTHING

24      IN THIS DOCUMENT TO INDICATE THAT ANY OF THESE

25      CHANGES ARE MADE BASED ON ANY APPLE PRODUCT.

```
 1              WHEN -- LET'S LOOK AT, YOU KNOW, NUMBER
 2   ONE -- THESE ARE CRITICISMS OF THE SAMSUNG PRODUCT.
 3              NUMBER ONE, SLOW RESPONSE SPEED IN MOVING
 4   SPLIT SIDEWAYS IN ARTIST TAB.
 5              NUMBER TWO.  SCROLL IS NOT SMOOTH IN
 6   ALBUM SONGS.
 7              THREE.  THE BOUNCE EFFECT IS NOT
 8   EMOTIONAL IN ALBUM SONGS.
 9              IT DOESN'T SAY ANYTHING THAT
10   MR. MCELHINNY SAID IT SAYS.  IT JUST ISN'T THERE.
11              AND IN TERMS OF WHO ON THIS DOCUMENT WAS
12   DEPOSED, NO LESS THAN FOUR PEOPLE,
13   MR. BYUNG WOOK KIM, YONG SEOK MOON, CHOLE SANG
14   CHEUNG, AND DOO-JU BYUN WERE ALL DEPOSED BY APPLE.
15              NOW, IN TERMS OF STATE OF MIND AND WHAT
16   DID HE MEAN, THE AFFINITY CASE INVOLVING MR. JOBS,
17   HE WAS PROTECTED AS AN APEX WITNESS, THESE LONG
18   STATEMENTS, AND THE COURT SAID, "YOU CAN ASK OTHER
19   EMPLOYEES WHAT THAT MEANT," AND THAT'S NOT AN
20   UNUSUAL RESPONSE IN THESE CASES.
21              SO I DON'T THINK THERE'S BEEN ANY SHOWING
22   HERE AS TO MR. CHO THAT OTHER WITNESSES COULD NOT
23   ADDRESS THIS DOCUMENT.
24              AND I'M TOLD MR. MCELHINNY, WHO WAS
25   CAREFUL TO SAY HE DIDN'T WANT TO REPRESENT TO THE
```

1   COURT THAT THIS WASN'T PRODUCED UNTIL AFTER THE

2   MOVING PAPERS, WE'VE LOOKED IT UP.  WE REPRESENT

3   THIS DOCUMENT WAS PRODUCED OCTOBER 14TH, 2011.

4           THE COURT:  ALL RIGHT.  THANK YOU,

5   MR. QUINN.

6           MR. MCELHINNY, ANY BRIEF REBUTTAL BEFORE

7   WE TURN TO MR. SOHN?

8           MR. MCELHINNY:  WELL, YOUR HONOR HAS THE

9   DOCUMENT, BUT THE IDEA THAT I'M OVERSELLING THIS

10  DOCUMENT WHEN MR. CHO'S DIRECTION SAYS, "IN

11  COMPARING THE GALAXY TAB AND THE IPAD, THE MOST

12  INSUFFICIENT PART IS THE SCREEN SWITCH EFFECT.

13  PLEASE HAVE INTERNAL DISCUSSIONS IN RESPONSE TO

14  THIS AND PROVIDE SOLUTIONS."

15          AND THE RESPONSE IS, "THUS, EVEN AT THE

16  CURRENT CONDITION, MOST APPLE ANIMATIONS, BESIDES A

17  SMALL PORTION, WILL BE MOST LIKELY POSSIBLE."

18          IN THE LIST OF 78, ROUGHLY 20 CALL OUT

19  THE IPAD DIRECTLY.

20          A BUNCH OF THEM CALL OUT THE BOUNCE

21  EFFECT, WHICH IS ONE OF THE PATENTS THAT'S DIRECTLY

22  AT ISSUE IN THIS CASE.

23          THEN IT REPORTS BACK.  "THE FOLLOWING

24  IMPROVEMENT PLAN RESULTED FROM THE ANALYSIS OF 78

25  PROBLEMS.  YOU TOLD US TO DO THIS.  HERE'S THE

1    ANALYSIS WE DID.  WE'RE REPORTING BACK TO YOU."

2              MR. QUINN:  IF I COULD JUST ADD ONE FINAL

3    THING, YOUR HONOR?

4              THE COURT:  GO AHEAD, MR. QUINN.

5              MR. QUINN:  IT STARTS OUT, "BUT THE

6    SCREEN SWITCH EFFECT."  NOT AN ISSUE IN THIS CASE.

7              THE COURT:  LET'S TURN TO MR. SOHN.

8              MR. MCELHINNY:  MR. SOHN IS THE PRESIDENT

9    OF SAMSUNG TECH -- TELECOMMUNICATIONS AMERICA IN

10   DALLAS, TEXAS.

11             HE REPORTS BACK TO THE PEOPLE -- SO IN

12   TERMS OF THE CHAIN THAT WE'VE BEEN SEEING, HE

13   REPORTS BACK TO THE PEOPLE WE'VE ALREADY TALKED

14   ABOUT.

15             HE -- WE SUBMITTED ONE DOCUMENT, THEY

16   SUBMITTED A DECLARATION SORT OF FOR ALL OF THEIR

17   PEOPLE SAYING "I JUST COME TO WORK IN THE MORNING,"

18   AND AS YOUR HONOR SAYS, "EAT DONUTS IN THE CORNER

19   AND I'M NOT" --

20             WE SUBMITTED A DOCUMENT FROM HIM WHERE HE

21   DESCRIBES HIS OWN JOB AS BEING DEEPLY INVOLVED IN

22   ALL OF THE DETAILS OF THE MATTER.

23             HE CREATED WHAT THEY CALL THEIR "BEAT

24   APPLE" CAMPAIGN.  WHEN WE WENT ACTUALLY TO SOMEBODY

25   OVER HIM IN KOREA AND TRIED TO ASK QUESTIONS

71

1    ABOUT -- TO THIS FAMOUS DON-JOO LEE, WHO WE'VE

2    TALKED ABOUT --

3            THE COURT:  THIS IS MR. LEE YOU'RE

4    TALKING ABOUT?

5            MR. MCELHINNY:  YES, MR. LEE THE HELPFUL

6    DEPONENT, BUT HE'S ACTUALLY OVER HIM IN TERMS OF

7    PRODUCT STRATEGY, AND WE SAID TO HIM -- WE TRIED TO

8    ASK HIM ABOUT THE PRODUCT STRATEGY IN THE

9    UNITED STATES, AND HE RESPONDED THAT "TO GET

10   ANSWERS TO THAT, YOU WOULD HAVE TO TALK TO THE MAN

11   WHO WAS IN CHARGE IN THE UNITED STATES," THAT HE

12   COULDN'T GIVE US THOSE ANSWERS.

13           SO HE'S ACTUALLY POINTING -- WHATEVER THE

14   OPPOSITE IS, THE BASE AS OPPOSED TO APEX, HE'S

15   SAYING, "YOU'RE TOO HIGH IN THE ORGANIZATION.  YOU

16   HAVE TO GO TO MR. SOHN TO GET THE ANSWERS TO THOSE

17   QUESTIONS."

18           AND IN TERMS OF SPECIFIC DETAIL, WE KNOW

19   THAT HE WAS THE PERSON WHO MADE THE DECISION ABOUT

20   WHETHER OR NOT TO PUT THE SAMSUNG LOGO ON THE BACK

21   OF THE GALAXY TABLET, WHICH IS ONE OF THE ARGUMENTS

22   THAT SAMSUNG HAS RAISED IN THIS CASE ABOUT WHY THE

23   APPEARANCE OF THE DOCUMENTS LOOKS DIFFERENT.

24           THE COURT:  THE APPEARANCE OF THE

25   PRODUCTS?

1           MR. MCELHINNY:  THE APPEARANCE OF THE

2    PRODUCTS LOOKS DIFFERENT.

3           THE COURT:  ALL RIGHT.  THANK YOU,

4    MR. MCELHINNY.

5           MR. QUINN.

6           MR. QUINN:  YOUR HONOR KNOWS THIS IS THE

7    CEO OF SAMSUNG AMERICA.  THEY BASE THEIR REQUEST TO

8    TAKE THE DEPOSITION ON THE "BEAT APPLE" CAMPAIGN

9    DOCUMENT AUTHORED BY MR. SOHN AND INVITE THE COURT

10   TO TAKE A LOOK AT IT.  IT'S EXHIBIT 39 THAT THEY

11   FILED.

12          AND IT TALKS ABOUT HOW TO BEAT APPLE BY

13   ATTRACTING MORE PEOPLE INTO THE STORES.

14          NOTHING ABOUT, YOU KNOW, EXACTLY HOW TO

15   DO IT.  NOTHING ABOUT PRODUCT STRATEGY.  NOTHING

16   ABOUT FEATURES.  NO DETAILS ABOUT IT AT ALL.

17          IT'S HOW TO SELL MORE PHONES AND GET

18   PEOPLE INTO STORES.

19          I THINK THE DOCUMENT SHOWS -- IF THAT'S

20   THEIR BEST EVIDENCE THAT THEY NEED TO TAKE THE CEO

21   OF SAMSUNG AMERICA'S DEPOSITION, I THINK THAT SHOWS

22   THAT THEY DON'T REALLY HAVE GROUNDS TO DO IT.

23          THE COURT:  IS THE LOCATION OF SAMSUNG'S

24   LABEL ON ONE OR MORE OF ITS PRODUCTS AN ISSUE IN

25   THIS CASE?  HAS SAMSUNG PUT THAT AT ISSUE?

1           MR. QUINN:  CAN I MAKE A --

2           THE COURT:  OF COURSE YOU CAN.

3           MR. QUINN:  -- CALL TO -- PERHAPS YOU

4   SHOULD --

5           WITH THE COURT'S PERMISSION?

6           THE COURT:  OF COURSE.  MS. MAROULIS.

7           MS. MAROULIS:  YOUR HONOR, THE PURPOSE OF

8   WHY THE LABEL WAS PUT ON THERE IS NOT AT ISSUE.

9           THE LOGO ITSELF MIGHT GO TO THE GENERAL

10  APPEARANCE, BUT THE LOGO EITHER IS OR IS NOT.

11  THERE'S SOME MODELS THAT HAVE LOGOS AND THERE ARE

12  SOME THAT DO NOT.

13          SO WHY IT WAS PUT IN THERE IS NOT AN

14  ISSUE IN THE CASE.

15          THE COURT:  SO NO PERCIPIENT WITNESS, NO

16  EXPERT HAS POINTED TO THE PRESENCE OR NOT PRESENCE

17  OF THE LOGO AS A MATERIAL ISSUE IN EVALUATING THE

18  SIMILARITY OF THESE DESIGNS?

19          MS. MAROULIS:  I HAVE NOT YET HAD A

20  CHANCE TO STUDY MR. BRESSLER'S, APPLE'S REPORT,

21  WHICH IS THEIR INFRINGEMENT EXPERT.  MAYBE HE IS.

22          AND TO THE EXTENT HE IS, THERE MIGHT BE

23  SOME TESTIMONY TO THAT EFFECT.

24          THE COURT:  BUT NO SAMSUNG WITNESS HAS

25  DONE THAT?

74

1          MR. JOHNSON, WELCOME.

2          MR. JOHNSON:  NO SAMSUNG -- WE HAVEN'T

3    DONE EXPERT REPORTS YET ON THESE PARTICULAR ISSUES,

4    SO OUR EXPERTS ARE CURRENTLY EVALUATING THE REPORTS

5    THAT WERE SERVED LAST WEEK.

6          I CAN'T STAND HERE RIGHT NOW AND SAY THAT

7    WON'T BE AN ISSUE, BECAUSE WE ARE WORKING THROUGH

8    THOSE ISSUES AS WE SPEAK.

9          THE COURT:  ALL RIGHT.  IF I MIGHT RETURN

10   TO MR. QUINN.

11         SO IF IT COULD BE AN ISSUE, WHY WOULDN'T

12   IT BE AN APPROPRIATE SUBJECT OF DISCOVERY TO ASK

13   QUESTIONS OF THE MAN WHO GAVE DIRECTIONS ON THAT

14   VERY SUBJECT?

15         MR. QUINN:  GAVE DIRECTION ON THE SUBJECT

16   OF THE PLACEMENT OF THE LOGO?

17         THE COURT:  YEAH.

18         MR. QUINN:  I HAVE NO INFORMATION THAT HE

19   GAVE SUCH INSTRUCTIONS.

20         THE COURT:  WASN'T THERE A -- WELL, I'LL

21   LET MR. MCELHINNY CORRECT ME IF I'M

22   MISUNDERSTANDING, BUT I THOUGHT APPLE WAS MAKING

23   THAT VERY POINT.

24         I'LL LET YOU HAVE A CHANCE TO RESPOND.

25         MR. MCELHINNY, AM I MISUNDERSTANDING

1    WHETHER THIS LOGO PLACEMENT IS AN ISSUE OR NOT?

2              MR. MCELHINNY:  FIRST OF ALL, IT CLEARLY

3    IS AN ISSUE.

4              I'M SORRY.  I'M GETTING MY DOCUMENTS.

5              THE TWO ISSUES -- ONE, THE ISSUE OF WHERE

6    THE PLACEMENT OF THE LOGO IS AND WHETHER OR NOT

7    THAT CONTRIBUTES TO SUBSTANTIAL SIMILARITY, UNLESS

8    THEY'RE GOING TO DROP IT, WAS EXPRESSLY ARGUED AT

9    THE PRELIMINARY INJUNCTION HEARING AS A REASON FOR

10   THE FACT THERE WAS NOT SIMILARITY.

11             THE ISSUE ABOUT MR. SOHN MAKING THAT

12   DETERMINATION AROSE IN A DEPOSITION ACTUALLY THAT I

13   TOOK OF LOWER PEOPLE AT SAMSUNG.  THERE ARE A

14   SERIES OF CORE -- OF E-MAILS ABOUT THE ISSUE, AND

15   IT ULTIMATELY WAS SENT UP TO HIM AND THEN HE MADE A

16   REFERRAL TO TOKYO FOR THE DECISION.

17             THE COURT:  SO THERE ARE -- THERE ARE

18   DEPOSITION TRANSCRIPTS, E-MAILS WHICH CONFIRM THAT

19   MR. SOHN GAVE THE DIRECTION ON THE PLACEMENT OR

20   NON-PLACEMENT OF THE LOGO?

21             IF THEY'RE CITED IN YOUR PAPERS, I'LL

22   FIND THEM.  I'M SIMPLY NOT RECALLING THE SPECIFICS.

23   IF YOU TELL ME THAT, I'LL LOOK FOR THEM MYSELF.

24             MR. MCELHINNY:  I AM TELLING YOU THAT

25   BECAUSE I'VE GOT IT ON MY NOTES AND I'M TRYING TO

1    FIND WHERE I FOUND IT FROM.

2           WHAT I'M FALLING BACK ON IS I ACTUALLY

3    TOOK A DEPOSITION IN WHICH I MARKED THE EXHIBIT AND

4    THE DOCUMENTS, SO I KNOW THEY EXIST.

5           THE COURT:  OKAY.  WELL, IF THEY'RE

6    THERE, I'LL LOOK FOR THEM.

7           DO YOU HAVE ANYTHING ELSE TO ADD ON

8    MR. SOHN?

9           MR. MCELHINNY:  NOT ON MR. SOHN.

10          THE COURT:  MR. QUINN, I'LL GIVE YOU

11   ANOTHER CHANCE.

12          MR. QUINN:  YOUR HONOR, I'M TOLD BY THOSE

13   ASSEMBLED HERE THAT THEY DON'T RECALL ANY SUCH

14   TESTIMONY; THAT THERE IS, THERE IS A DOCUMENT,

15   EXHIBIT 41, WHICH IS IN THE MOVING PAPERS, WHERE

16   MR. SOHN SAYS -- IT'S ADDRESSED TO VARIOUS PEOPLE

17   AND HE SAYS, "THANK YOU FOR YOUR FEEDBACK ON LOGO

18   ISSUE.  FROM NOW ON PLEASE CONSULT WITH STA (NANDA

19   AND SHONEE) ON THIS KIND OF PRODUCT AND MARKETING

20   ISSUE BEFORE YOU GO TO HQ.  I DON'T PERSONALLY

21   AGREE THAT WE SHOULD HAVE SAMSUNG LOGO ON THE FRONT

22   CONSIDER THIS BEZEL OF THE DESIGN."

23          THAT'S --

24          THE COURT:  DOESN'T THAT SUGGEST HE WAS

25   GIVING DIRECTIONS AS TO WHETHER OR NOT --

1          MR. QUINN:  HE SAYS --

2          THE COURT:  -- IT SHOULD BE ON THE BEZEL?

3          MR. QUINN:  HE SAYS CONSULT WITH THESE

4    TWO PEOPLE ON THIS ISSUE.  HE PERSONALLY STATES HIS

5    OWN OPINION.

6          THAT SOUNDS DIFFERENT TO ME THAN GIVING

7    DIRECTION ABOUT WHAT TO DO.

8          THE COURT:  YOU MIGHT BE RIGHT.

9          BUT DOESN'T THIS ALL SUGGEST THAT WE TAKE

10   A DEPOSITION ON THIS TO GET TO THE BOTTOM OF IT?  I

11   MEAN, IT SEEMS TO ME WINDING ITS WAY THROUGHOUT

12   MUCH OF THE ARGUMENT TODAY HAVE BEEN A NUMBER OF

13   ARGUMENTS ON THE MERITS ONE WAY OR THE OTHER.

14         IT SEEMED TO ME THAT, UNDER RULE 26, THIS

15   WOULD AT LEAST WARRANT A VERY BRIEF DEPOSITION ON

16   THAT TOPIC.

17         WHERE AM I WRONG?

18         MR. QUINN:  YOUR HONOR, I GUESS THERE IS

19   ANALYSIS THE COURTS HAVE DEVELOPED UNDER THIS APEX

20   DOCTRINE THAT -- I MEAN, YOU HAVE TO SHOW CERTAIN

21   THINGS, UNIQUE KNOWLEDGE, NOT AVAILABLE ELSEWHERE,

22   THAT'S FIRSTHAND, AND, YOU KNOW, AND I JUST DON'T

23   THINK THAT SHOWING HAS BEEN MADE HERE.

24         THE COURT:  ALL RIGHT.

25         MR. QUINN:  IF WE WEREN'T WHERE WE ARE AT

1     THIS POINT, MAYBE THE QUESTION WOULD BE DIFFERENT.

2              BUT WHAT WE'VE GOT NOW IS, I GUESS,

3     DIFFERENT RECOLLECTIONS, PERHAPS, ABOUT WHETHER

4     THERE IS ANY DEPOSITION TESTIMONY ABOUT WHETHER HE

5     MADE A DIRECTION.

6              THE ONLY THING WE HAVE IS AN EXHIBIT

7     WHERE HE SAYS, "GO TALK TO SOMEBODY ELSE.  I

8     PERSONALLY DON'T AGREE."  PERIOD.  THAT'S ALL THAT

9     WE'VE GOT BEFORE US.

10             THE COURT:  ALL RIGHT.

11             MR. MCELHINNY, SHOULD WE TURN TO

12    MR. CHEONG?

13             MR. MCELHINNY:  YES, YOUR HONOR.

14             MR. CHEONG IS ACTUALLY TIED TO THE MOTION

15    YOU'LL HEAR NEXT WEEK ON THE FINANCIAL DOCUMENTS,

16    AND I WILL ADMIT STRAIGHT OUT THAT IN TERMS OF

17    HAVING SPECIFIC DOCUMENTS WITH HIS NAME ON IT TO

18    SHOW YOU, BECAUSE AS WE'RE FIGHTING NEXT WEEK, WE

19    DON'T HAVE PRODUCTION OF THOSE.  I DON'T HAVE

20    THOSE.

21             SO WITH MR. CHEONG, WHAT I -- OUR

22    ARGUMENT IS WHERE HE STANDS IN THE ORGANIZATION AND

23    WHAT WE KNOW ABOUT HIM.  HE WAS THE CONDUIT FROM

24    S.E.C. TO STA.  HE IS THE CHIEF FINANCIAL CONDUIT

25    ON ALL OF THESE NUMBERS.

1           THE COURT:  HE'S THE CFO?

2           MR. MCELHINNY:  HE IS THE CFO.

3           BUT HE IS MORE THAN THAT, BECAUSE HE IS

4   THE PERSON THAT HAS MADE THE REPRESENTATIONS TO THE

5   U.S. IRS ABOUT THE TRANSFER TAX, THE TRANSFER

6   PRICING LEVEL, SO HE'S THE PERSON THAT IS THE MOST

7   KNOWLEDGEABLE ABOUT HOW SAMSUNG INTERNALLY IS

8   SETTING THESE PRICES.

9           HE'S THE PERSON WHO CERTIFIES BACK TO

10  S.E.C. WHAT THE NUMBERS WERE AND THE ACCURACY THAT

11  ARE MADE FOR PLANNING.

12          HE INDIVIDUALLY DOES THOSE THINGS.

13          THE COURT:  SO WHAT DOES THE INTERNAL

14  PRICING REVEAL ABOUT ANY ISSUE UNDER A REASONABLE

15  ROYALTY THEORY OR ANY OTHER THEORY THAT YOU'RE

16  PURSUING?

17          MR. MCELHINNY:  I GUESS WE -- YOU'LL GET

18  THIS NEXT WEEK.  WE ACTUALLY DISCUSSED THIS ONCE

19  BEFORE.

20          BUT WHAT HAPPENS IN THESE INTERNATIONAL

21  CONGLOMERATES, AS YOUR HONOR IS WELL AWARE, IS THAT

22  THEY HAVE THE ABILITY TO MOVE -- THEY HAVE THE

23  ABILITY TO MOVE BOTH COSTS AND PROFITS AROUND THE

24  WORLD.

25          THE COURT:  UM-HUM.

1          MR. MCELHINNY:  AND THEY CAN DO THAT BY

2     SETTING INTERNAL PRICING, BOTH IN TERMS OF THE

3     SUPPLY IN AND IN TERMS OF THE REVENUE COMING IN,

4     AND THEY CAN DO IT IN TERMS OF KEEPING MONEY IN THE

5     UNITED STATES OR BRINGING IT BACK.

6          BECAUSE THEY HAVE SO MUCH FLEXIBILITY TO

7     DO THIS, THE U.S. GOVERNMENT ACTUALLY, IN THE IRS

8     REGULATIONS, POLICES IT, AND SO THERE ARE --

9     THERE'S A WINDOW WITHIN WHICH THEY HAVE TO OPERATE.

10    THEY CAN'T SET THESE PRICES ARTIFICIALLY LOW OR

11    ARTIFICIALLY HIGH.  THE U.S. HAS TO BE SURE THAT

12    IT'S GETTING A FAIR TAXATION RATE FOR THE PROFITS

13    THAT ARE GENERATED.

14          SO THE ANALYSIS OF HOW THEY ARE DOING

15    THAT WITHIN THE WINDOW ALLOWS US TO DETERMINE THE

16    ACCURACY OF THE ONE PAGE OF FINANCIAL INFORMATION

17    THAT THEY GAVE US THAT WE'RE SUPPOSED TO RELY ON

18    FOR NOW, THE SECOND REVISION OF THAT ONE PAGE.

19          THE COURT:  SO IT'S AT LEAST MATERIAL TO

20    THE APPROPRIATE AND ACCURATE CALCULATION OF THE

21    ROYALTY BASE, FOR EXAMPLE?

22          MR. MCELHINNY:  EXACTLY.  WELL, BUT --

23    AND TO REMIND YOUR HONOR, WE GET THEIR PROFITS IN

24    THIS CASE, BECAUSE IF IT'S A DESIGN PATENT, IT'S

25    NOT JUST -- WE GET PROFITS.

1          THE COURT:  I SEE.

2          MR. MCELHINNY:  AND SO THE QUESTION OF

3     WHAT THEIR FAIR PROFITS ARE -- AND WHEN WE GET TO

4     THAT POINT, THERE'S GOING TO BE A LOT, I ASSUME --

5     I DON'T KNOW WHERE THEY'RE GOING TO GET THE

6     WITNESSES TO TESTIFY ABOUT IT -- BUT THERE'S GOING

7     TO BE A LOT OF ARGUMENT ON WHETHER THAT REALLY

8     REFLECTS THE U.S. PROFIT OR SOMETHING ELSE AND ALL

9     THE REST OF THAT.

10          AND AS YOU'LL HEAR NEXT WEEK, SO FAR

11     WE'RE BEING ASKED TO RELY ON A SINGLE PIECE OF

12     PAPER WHICH THEY'VE GENERATED AND TOLD US IS THE

13     TRUTH, VERSION 2.

14          BUT THIS IS THE MAN WHO KNOWS THOSE

15     ISSUES.

16          THE COURT:  AND THIS IS THE MAN WHOSE

17     SIGNATURE APPEARS ON DOCUMENTS CERTIFYING THOSE

18     FIGURES?

19          MR. MCELHINNY:  CERTIFYING THE DOCUMENTS

20     BACK TO KOREA, AND ALSO ON U.S. GOVERNMENT

21     DOCUMENTS.

22          THE COURT:  SO THESE ARE DOCUMENTS

23     SUBMITTED TO THE IRS?

24          MR. MCELHINNY:  THE PRICING DOCUMENTS ARE

25     SUBMITTED TO THE IRS, AND THEN THEY ALSO HAVE TO

1   SUBMIT TAX FORMS.

2           SINCE THIS IS MY LAST PERSON, I JUST WANT

3   TO TOUCH ON -- I DON'T WANT TO ANTICIPATE WHERE

4   YOUR HONOR IS GOING ON THIS, BUT IF YOUR HONOR DOES

5   ALLOW US TO TAKE SOME OF THESE DEPOSITIONS, THE TWO

6   THINGS THAT I WANT TO REMIND YOU OF ARE, ONE, FOR

7   THE MOST PART, THESE WOULD BE TRANSLATED

8   DEPOSITIONS AND SO THE TRANSLATION TIME, WE'VE BEEN

9   USING, UP UNTIL --

10          THE COURT:  TWO FOR ONE, RIGHT?

11          MR. MCELHINNY:  TWO FOR ONE, YES, YOUR

12   HONOR.

13          AND THE OTHER THING WAS THAT IN THE ORDER

14   THAT YOUR HONOR ISSUED SETTING THIS HEARING TODAY,

15   YOUR HONOR QUOTED THE REPRESENTATION THAT WAS MADE

16   BY, BY SAMSUNG'S COUNSEL THAT IN THE EVENT YOUR

17   HONOR ORDERED DEPOSITIONS, THEY WOULD BE OFFERED

18   IMMEDIATELY WAS THE WORD THAT YOU USED IN YOUR

19   ORDER.

20          IN ORDER TO AVOID A DISPUTE OVER WHAT

21   "IMMEDIATELY" MEANS, IF YOUR HONOR ORDERS

22   DEPOSITIONS, WE WOULD ENCOURAGE YOU TO SET A

23   NO-LATER-THAN SORT OF DATE, AND TO HELP YOUR HONOR

24   WITH THAT, THE REPLY EXPERT REPORTS, OUR REPLY

25   EXPERT, OUR LAST ROUND, ARE DUE APRIL 16TH.

1          THE COURT:  OKAY.  THANK YOU,

2    MR. MCELHINNY.

3          MR. MCELHINNY:  THANK YOU, YOUR HONOR.

4          THE COURT:  MR. QUINN.

5          MR. QUINN:  YOUR HONOR, I'M AT A LOSS TO

6    UNDERSTAND WHY INTERNAL TRANSFER PRICING IS

7    RELEVANT HERE.  THE RESULTS ARE CONSOLIDATED.

8          THE MAN IS THE CFO.  HE DOES SIGN

9    FINANCIAL STATEMENTS.

10          BUT, YOU KNOW, WE KNOW FROM THE DOBBS

11    DECISION, THE MAN WHO'S THE CEO SIGNED THE

12    SETTLEMENT AGREEMENT, AND THE COURT SAID THAT'S NOT

13    ENOUGH.

14          THEY'VE HAD A 30(B)(6) WITNESS ON

15    PROFITS.  TIM SHEPPARD WAS PRODUCED MORE THAN ONCE.

16    HE'S STA'S VICE-PRESIDENT OF FINANCE.  I DIDN'T

17    HEAR MR. MCELHINNY SAY WHY THAT WASN'T ADEQUATE.

18          I MEAN, USUALLY IN AN APEX MOTION, YOU

19    COME TO THE FLOOR AND SAY "I DEPOSED THE

20    VICE-PRESIDENT IN THIS CIRCUMSTANCE, THE

21    VICE-PRESIDENT OF FINANCE, AND HE COULDN'T ANSWER

22    QUESTION X, Y, Z AND THAT'S WHY WE NEED THE CFO."

23          THEY DEPOSED JUSTIN --

24          THE COURT:  I'M SORRY, MR. QUINN.  I

25    APOLOGIZE.  DID MR. SHEPPARD APPEAR IN A 30(B)(6)

1    CAPACITY?

2              MR. QUINN:  YES.  YES.

3              THEY DEPOSED JUSTIN DENISON, WHO'S THE

4    STA CHIEF STRATEGY OFFICER, AND ASKED HIM FINANCIAL

5    QUESTIONS.  ALSO OMAR KHAN, STC'S FORMER CHIEF

6    PRODUCT AND TECHNOLOGY OFFICER, ASKED HIM FINANCIAL

7    QUESTIONS; AND BRIAN ROSENBERG, STA'S SENIOR

8    VICE-PRESIDENT OF SALES, AND ASKED HIM FINANCIAL

9    QUESTIONS AS WELL.

10             SO I DON'T THINK THERE HAS BEEN ANY

11   SHOWING HERE ABOUT WHY THEY ALSO NEED TO DEPOSE THE

12   CFO.

13             THEY HAVEN'T BEEN HINDERED IN GETTING

14   EXPERT OPINION ON PROFITS AND DAMAGES.  THEY'VE

15   JUST SERVED US WITH A VERY SUBSTANTIAL, VOLUMINOUS

16   EXPERT WITNESS REPORT WITH THEIR LOST PROFITS

17   THEORY, THEIR PROFITS THEORY LAID OUT.

18             SO WE DON'T THINK THAT A SHOWING HAS BEEN

19   MADE FOR TAKING THE DEPOSITION OF THE CFO.

20             IF I COULD, WITH THE COURT'S PERMISSION,

21   AS LIKE MR. MCELHINNY, SINCE THIS MAY BE THE LAST

22   TIME I'M ADDRESSING THE COURT ON THIS ISSUE, JUST

23   BACK UP TO COVER A COUPLE OF THINGS AND MAKE A

24   COUPLE OF SUGGESTIONS DEPENDING UPON HOW THE COURT

25   RULES HERE.

1           THE COURT:  GO AHEAD.

2           MR. QUINN:  FIRST, OVER LUNCH, WE WENT

3    BACK AGAIN -- I KNOW THE COURT WAS INTERESTED IN

4    THE QUESTION ABOUT ORDERS REGARDING ROUNDED CORNERS

5    FOR DEVICES.

6           WE WENT BACK, AND THE ONLY REFERENCE WE

7    CAN FIND TO IT -- AND I INVITE MR. MCELHINNY TO

8    HELP IF WE'RE OVERLOOKING SOMETHING -- IS IN

9    EXHIBIT 17 WHERE MR. J.K. SHIN, IN AN E-MAIL TO

10   MR. HONG, ONE OF THE OTHER SIX, AT BATES PAGE 5363,

11   REFERS TO ROUNDED CORNERS ON THE CETUS, C-E-T-U-S.

12          IT'S, YOU KNOW, NOT THE GALAXY.  IT'S NOT

13   THE TAB.

14          THE COURT:  NOT AT ISSUE.

15          MR. QUINN:  IT'S NOT ANYTHING THAT'S AT

16   ISSUE IN THIS CASE.

17          IF WE'RE MISSING SOMETHING ON THAT, I'M

18   SURE THEY'LL CORRECT US.  BUT WE JUST DON'T THINK

19   THAT'S AN ISSUE.

20          THE COURT ASKED ME AT ONE POINT ABOUT THE

21   ISSUE -- YOU KNOW, APEX, ISN'T THIS REALLY JUST A

22   CONCERN ABOUT THE POTENTIAL FOR HARASSMENT?

23          AND I RESPONDED TO THE COURT ABOUT THE --

24   THAT THERE MUST BE SOMETHING IN THE BACKGROUND

25   ABOUT POTENTIAL HARASSMENT FOR SENIOR PEOPLE.

86

1          BUT NOW WE HAVE AN ADDITIONAL ISSUE ABOUT

2     ALL THE DISCOVERY THAT'S BEEN TAKEN.

3          I DO WANT TO POINT OUT A COUPLE OF

4     THINGS, IF I MAY, TO THE COURT ABOUT -- ON THE

5     SUBJECT OF POTENTIAL FOR HARASSMENT.

6          AMONG THE WITNESSES WHO WE INITIALLY TOOK

7     THE POSITION WERE APEX WITNESSES AND THEN WITHDREW

8     AND PRODUCED THEM FOR DEPOSITION WERE SEVERAL WHO

9     THEY HAVE NOW DEPOSED, AND I'LL TELL THE COURT, IT

10    WAS A COMPLETE AND TOTAL WASTE OF TIME.  IT WAS, IN

11    OUR VIEW, BORDERING ON HARASSMENT.

12         AND I REFER SPECIFICALLY TO THE

13    DEPOSITION OF KEN KOREA, THE CHIEF I.P. COUNSEL.

14    WE TOLD THEM IN ADVANCE, WE THINK THIS DEPOSITION

15    IS TERMINALLY PRIVILEGED.

16         90 PERCENT OF THE QUESTIONS CALLED FOR

17    PRIVILEGED INFORMATION.  I DON'T THINK THEY'RE

18    CHALLENGING THE PRIVILEGE CALLS IN THAT DEPOSITION.

19    IT WAS A WASTE OF TIME.

20         DR. AHN, THE CHIEF INTELLECTUAL PROPERTY

21    OFFICER IN KOREA, WAS ANOTHER ONE.  WE WITHDREW THE

22    APEX DESIGNATION.  HE WAS DEPOSED.  HE WAS SHOWN

23    REPEATEDLY TIME AFTER TIME DOCUMENTS HE HAD NEVER

24    SEEN BEFORE.  HIS NAME WASN'T ON IT.  THERE'S NO

25    FOUNDATION, NO EFFORT TO LAY A FOUNDATION.  THEY

1    PUT IT BEFORE HIM AND JUST ASKED HIM KIND OF

2    OPEN-ENDED QUESTIONS TRYING TO GET A SOUND BITE

3    THAT THEY CAN USE.  NOTHING WAS -- NOTHING THAT,

4    YOU KNOW, HE HAD PERSONAL KNOWLEDGE OF.

5            SIMILARLY WITH D.J. LEE, ANOTHER ONE THAT

6    WE PRODUCED.

7            IN OUR REPLY BRIEF ON PAGE 4 IN THE

8    FOOTNOTE, WE RECOUNT SOME OF THE OTHER WHAT WE

9    REGARD AS TIME THAT JUST REALLY WAS INDEFENSIBLY

10   SPENT IN DEPOSITIONS, MR. CHUNG BEING ASKED AT

11   LENGTH ABOUT A $50,000 GOLD PHONE THAT NEITHER

12   COMPANY MAKES.

13           MR. -- OH, THEN IN ASKING TO DEPOSE

14   MR. HONG HERE TODAY IN THEIR BRIEFS, THEY JUSTIFY

15   IT IN PART ON THE FACT THAT THEY ASKED WITNESS

16   DONG HOON CHANG WHETHER THE APPEARANCE OF THE

17   EXTERIOR DESIGN OF THE IPHONE WAS A FACTOR IN ITS

18   SUCCESS.

19           AND MR. CHANG, AT HIS DEPOSITION, SAID "I

20   DON'T KNOW THAT I CAN SPEAK TO THAT, ABOUT WHAT THE

21   FACTORS WERE IN YOUR PRODUCTS' SUCCESS."

22           AND THEY SAY IN THEIR PAPERS IN THE REPLY

23   BRIEF AT PAGE 14, LINES 15 TO 18, THEY CITE THIS AS

24   AN EXAMPLE ABOUT WHY THEY HAVE TO DEPOSE MR. HONG,

25   BECAUSE THEY COULDN'T GET A STRAIGHT ANSWER FROM

1    MR. CHANG AS TO WHETHER THE APPEARANCE WAS A FACTOR

2    IN THE SUCCESS OF THEIR OWN PRODUCT.

3            I THINK THAT TELLS US SOMETHING ABOUT HOW

4    IMPORTANT THIS REALLY IS, HOW POTENTIALLY -- AND

5    WHAT THE POTENTIAL IS, FRANKLY, FOR HARASSMENT AND

6    TIME NOT WELL SPENT.

7            FINALLY, YOUR HONOR, IF THE COURT IS

8    INCLINED TO GIVE THEM SOME ADDITIONAL TIME WITH ANY

9    OF THESE WITNESSES, I WOULD ASK THE COURT THAT IN

10   EVENHANDEDNESS -- AND WE WERE UNABLE TO MAKE A

11   MOTION TO COMPEL BECAUSE JUDGE KOH HAS ISSUED A

12   DIRECTIVE THAT THERE'S BEEN ENOUGH MOTIONS TO

13   COMPEL -- BUT THEY TOOK -- APPLE HAS TAKEN THE

14   POSITION THAT TIM COOK IS AN APEX WITNESS AND

15   REFUSED TO PRODUCE HIM.

16           IF OUR CEO IS GOING TO BE DEPOSED,

17   MR. COOK SHOULD BE DEPOSED.  HE SENT E-MAILS TO

18   MR. JOBS WHEN THE SAMSUNG PHONE FIRST -- WHEN THE

19   I9000 FIRST CAME OUT IN KOREA.

20           THE QUESTION OF WHEN THEY FIRST KNEW THAT

21   THE SAMSUNG PHONE CAME OUT, QUESTIONS ABOUT DELAY

22   AND ISSUES OF THAT NATURE ARE AN ISSUE IN THIS

23   CASE.

24           AND IRREPARABLE HARM, WE HAVEN'T HAD A

25   CHANCE -- WE OBVIOUSLY CAN'T ASK MR. JOBS ABOUT

1       THAT.  WE HAVE NOT HAD A CHANCE TO ASK TIM COOK

2       ABOUT THAT ISSUE.

3               JEFF WILLIAMS, WHO WAS IN OPERATIONS

4       UNTIL 2011, HE WAS INVOLVED IN THE TESTING PROCESS.

5       THERE'S AN ISSUE ABOUT WHETHER THE BLACK PHONE

6       WHICH THEY CLAIM IS PART OF THEIR TRADE DRESS

7       CLAIM, ABOUT WHETHER THAT'S FUNCTIONAL BECAUSE THEY

8       COULDN'T MANUFACTURE A WHITE PHONE.  THIS IS

9       SOMETHING THAT MR. WILLIAMS HAS KNOWLEDGE OF.

10              AND THEIR MANUFACTURING CAPABILITIES GOES

11      TO THE FUNCTIONALITY ISSUE.

12              MR. SEWELL, THE GENERAL COUNSEL, HE'S

13      KNOWLEDGEABLE ABOUT LICENSING ISSUES.  THEIR FRAN

14      DEFENSE AND THE DISCUSSIONS ABOUT FRAN, VERY

15      IMPORTANT ISSUE IN THIS CASE.  HE NEGOTIATED WITH

16      DR. AHN.

17              WE PRODUCED DR. AHN.  THEY HAVE HAD A

18      CHANCE TO ASK DR. AHN ABOUT THOSE QUESTIONS.

19              IMPORTANTLY, MR. SEWELL, WHO THEY REFUSED

20      TO PRODUCE CLAIMING HE WAS AN APEX WITNESS, WAS

21      IDENTIFIED IN THEIR INITIAL DISCLOSURES AS A

22      WITNESS HAVING KNOWLEDGE OF IMPORTANT FACTS IN THIS

23      CASE.

24              AND FINALLY, NOREEN KRALL, ANOTHER

25      LAWYER, SHE HAS KNOWLEDGE ABOUT DISCUSSIONS ABOUT

1    LICENSING, THE EXCHANGE OF OFFERS, AND ISSUES

2    REGARDING FRAN.

3            IF THERE'S GOING TO BE MORE DEPOSITIONS

4    IN THIS CASE, WE SHOULD ALSO HAVE AN OPPORTUNITY TO

5    DEPOSE THESE FOUR WITNESSES WE RESPECTFULLY

6    REQUEST.

7            THANK YOU, YOUR HONOR.

8            THE COURT:  THANK YOU, MR. QUINN.

9            ALL RIGHT.  I'D LIKE TO NEXT TURN -- DO

10   YOU HAVE A REBUTTAL, MR. MCELHINNY?

11           MR. MCELHINNY:  WELL, I JUST WANT -- YOUR

12   HONOR WILL BE STUNNED TO FIND OUT THAT THERE ARE

13   ISSUES AND DISAGREEMENTS THAT WE HAVE NOT BROUGHT

14   TO YOUR HONOR FOR RESOLUTION.

15           BUT ONE OF THEM IS RELEVANT TO THE

16   ARGUMENT THAT MR. QUINN WAS JUST MAKING, AND THAT

17   IS I THINK STARTING IN JANUARY, IT MAY HAVE BEEN

18   EARLIER, BUT AT LEAST BY JANUARY I REALIZED WHERE

19   WE WERE HEADING AND IT WAS ON -- FOR TRIAL WAS ON

20   AN AUTHENTICATION ISSUE.

21           AND SO I INTRODUCED INTO THE MEET AND

22   CONFERS -- I'D SPOKEN TO MR. VERHOEVEN PERSONALLY

23   ABOUT FOUR OR FIVE TIMES -- GETTING A STIPULATION

24   FOR AUTHENTICATION OF DOCUMENTS SO THAT WE DIDN'T

25   HAVE TO TAKE DOCUMENTS TO WITNESSES AND WE DIDN'T

```
1    HAVE TO SERVE EIGHT MILLION RFA'S.

2              SOMEHOW WE NEVER GOT TO THAT.  AND SO IT

3    IS, IT IS ABSOLUTELY TRUE THAT BECAUSE WE DIDN'T

4    GET TO THAT STIPULATION, WE HAVE BEEN TRYING TO

5    SHOW DOCUMENTS TO AS MANY WITNESSES AS POSSIBLE TO

6    GET THEM TO AUTHENTICATE THE DOCUMENT; AND IT IS

7    ABSOLUTELY TRUE, AS MR. QUINN JUST TOLD YOU, THAT

8    UNLESS THE PERSON WHO WROTE THE DOCUMENT IS THE

9    DEPONENT, THE SAMSUNG WITNESSES, EITHER FORTUNATELY

10   OR SOMEHOW HAVE UNIFORMLY REFUSED TO AUTHENTICATE

11   ANY DOCUMENT THAT THEY DIDN'T WRITE.

12             AND THAT'S JUST A FACT THAT WE'RE DEALING

13   WITH, AND IT -- BUT IT IS A FACT ABOUT WHY WE NEED

14   SOME OF THESE OTHER DEPOSITIONS FOR PEOPLE WHO

15   ACTUALLY WROTE THESE THINGS.

16             THE COURT:  ALL RIGHT.  LET'S TURN TO THE

17   MOTION FOR SANCTIONS.

18             MR. QUINN.

19             MR. QUINN:  YOUR HONOR, I HAVE KIND OF

20   PLANNED THAT WHEN MY PART WAS CONCLUDED TODAY, WITH

21   THE COURT'S PERMISSION, I WILL LEAVE.

22             THE COURT:  YOU'RE FREE TO GO, MR. QUINN.

23   THANK YOU VERY MUCH.

24             MR. QUINN:  THANK YOU, YOUR HONOR.

25             THE COURT:  GO AHEAD, MR. MCELHINNY.
```

1          MR. MCELHINNY:  YOUR HONOR KNOWS, BECAUSE

2     YOUR HONOR WAS A SKILLED TRIAL LAWYER, THAT EVERY

3     TIME YOU DEAL WITH A CLIENT WHO COMES TO THE U.S.

4     LITIGATION SYSTEM FOR THE FIRST TIME AND YOU

5     EXPLAIN TO THAT CLIENT THE WAY THE SYSTEM WORKS AND

6     THE FACT THAT THE RULES REQUIRE EVERYBODY TO TURN

7     OVER THEIR OWN DAMAGING DOCUMENTS, YOUR HONOR KNOWS

8     THAT THE RESPONSE IS DISBELIEF.

9          THE FIRST RESPONSE IS DISBELIEF, AND THE

10    SECOND RESPONSE IS A RESPONSE THAT ONLY A FOOL

11    WOULD DO THAT BECAUSE IF YOU DO THAT, THE OTHER

12    SIDE WON'T DO IT AND THERE'S NO WAY ANYBODY CAN

13    EVER FIND IT OUT AND THE SYSTEM WILL NEVER FIND IT

14    OUT AND ALL THE REST OF THIS.

15          AND AT LEAST IN MY EXPERIENCE, THIS

16    INTERCHANGE HAPPENS MORE COMMONLY WITH FOREIGN

17    CLIENTS BECAUSE THEY'RE MORE OF A STRANGER TO THE

18    SYSTEM.

19          AND YOUR HONOR KNOWS, BECAUSE I'M SURE

20    YOU DID IT, AND I'VE DONE IT A MILLION TIMES, TO

21    SAY THE SYSTEM WORKS AND THE REASON THE SYSTEM

22    WORKS IS BECAUSE IF A PARTY IS CAUGHT VIOLATING

23    THOSE RULES, LIKE ANY OTHER SORT OF SELF-ENFORCING

24    SYSTEM, THE PENALTIES FOR THAT ARE DRAMATIC AND

25    THEY'RE DRACONIAN AND PEOPLE ARE MADE EXAMPLES OF

1    BECAUSE IT'S ABSOLUTELY TRUE THAT IF THAT DOESN'T

2    HAPPEN, THEN THE SYSTEM DOESN'T WORK AND WE DON'T

3    GET FAIR HEARINGS.

4           AND IN THIS CASE, WE DIDN'T GET A FAIR

5    HEARING AT THE PRELIMINARY INJUNCTION HEARING.

6    WE -- I READ TO YOU NOW, I WAS GOING TO READ IT TO

7    YOU BEFORE, THE 30(B)(6) TESTIMONY THAT WE GOT THAT

8    SAID NOT ONLY DO THEY NOT COPY APPLE PRODUCTS, BUT

9    THEY DON'T EVEN LOOK AT THEM, THEY DON'T EVEN

10   COMPARE.  THAT WAS THE TESTIMONY THAT WE GOT.

11          AND THAT TESTIMONY WAS CITED TO YOUR

12   HONOR IN THIS COURTROOM BY MS. MAROULIS IN OPPOSING

13   THE FIRST -- SHE SAID, "WE DON'T HAVE THE

14   DOCUMENTS.  THIS IS WHAT OUR 30(B)(6) WITNESS

15   SAID."

16          YOUR HONOR ISSUED AN ORDER ANYWAY SETTING

17   A COMPLIANCE DATE.  YOU MADE IT AS CLEAR AS

18   POSSIBLY COULD BE.  YOU SAID "ALL MEANS ALL" IN

19   THAT ORDER.

20          WHEN WE CAME BACK AND SHOWED YOU THAT

21   THEY STILL -- AND YOUR HONOR SAID, "BECAUSE THAT'S

22   THE WAY THE SYSTEM WORKS, AND IF YOU DON'T COMPLY

23   WITH THIS, YOU WILL BE LIABLE FOR SANCTIONS."

24          AND WE CAME BACK TO YOU AGAIN AND SHOWED

25   YOU AGAIN THAT THEY STILL WERE NOT MEETING THE DATE

1       AND WE MADE ARGUMENTS ABOUT WHETHER OR NOT THEY

2    WERE EVEN ATTEMPTING TO MEET THE DATE.

3            AND AGAIN YOUR HONOR ISSUED A SECOND

4    ORDER AND AGAIN YOU SAID, "HERE'S A DEADLINE, AND

5    IF YOU DON'T MEET THIS DEADLINE, YOU'RE GOING TO BE

6    EXPOSED TO SANCTIONS."

7            AND WE NOW KNOW, WE NOW KNOW THAT THEY

8    DIDN'T MEET THE DEADLINE.  THEY DON'T EVEN DENY THE

9    FACT THAT AT LEAST 1500 DOCUMENTS FROM AT LEAST TEN

10   CUSTODIANS WERE NOT PRODUCED UNTIL AFTER THE SECOND

11   DEADLINE.

12           THERE ARE -- THERE ARE TROUBLING THINGS

13   HERE.  ONE, IF YOU READ THEIR OPPOSITION CLOSELY,

14   THEY DON'T DENY THIS REALLY.  THEY SAY, "WELL, IT

15   WAS SUBSTANTIAL COMPLIANCE."

16           BUT ONE OF THE POINTS THAT JUMPED OUT AT

17   ME WAS THEY SAID, "OH, MAN, WE REALLY SUBSTANTIALLY

18   COMPLIED" BECAUSE THE DAY AFTER YOUR FIRST ORDER,

19   THEY PUT AMERICAN LAWYERS ON PLANES AND SENT THEM

20   TO KOREA.

21           AND I LOOKED AT THAT AND I THOUGHT, WHO

22   DID THE ORIGINAL PRODUCTION?  WHO DID THE

23   PRODUCTION THAT WAS SUPPOSED TO HAVE BEEN DONE IN

24   ADVANCE OF THE PRELIMINARY INJUNCTION MOTION?

25   APPARENTLY NOT THE AMERICAN LAWYERS.  APPARENTLY

1    THEY ALLOWED SAMSUNG TO DO THAT INTERNALLY.

2              AND THEN THEY ALLOWED EVEN MR. DENISON TO

3    LIE UNDER OATH, OR THEY ALLOWED THEIR HARDWARE

4    ENGINEERS TO MISINFORM MR. DENISON.

5              AND BUT FOR FOUR DOCUMENTS WHICH WE PUT

6    IN AT THE LAST MINUTE, THAT WAS THE SUM TOTAL.

7              ALL OF THESE DOCUMENTS THAT WE'VE BEEN

8    TALKING ABOUT TODAY ABOUT DIRECTIONS AND ORDERS AND

9    THE INVOLVEMENT OF SENIOR PEOPLE WERE NOT PRODUCED.

10   WE DIDN'T HAVE THEM.  AND WE DIDN'T HAVE THEM IN

11   DIRECT, DIRECT RESPONSE TO THIS COURT INTERVENING

12   NOT ONCE, BUT TWICE.

13             WE ALSO SEE THAT, THAT THEY TOOK

14   ADVANTAGE OF THE SITUATION.  YOUR HONOR POINTED OUT

15   IN YOUR FIRST ORDER, THEY DRAGGED IN THEIR

16   OPPOSITION TO THE PRELIMINARY INJUNCTION.  THEY

17   SAID, "APPLE SAYS WE COPIED," BUT THEY COULDN'T

18   FIND A SINGLE DOCUMENT.

19             MS. MAROULIS STOOD HERE AND SAID, "THERE

20   ARE NO DOCUMENTS.  THERE ARE NO SMOKING GUNS

21   BECAUSE OUR 30(B)(6) WITNESSES TESTIFIED THAT THERE

22   WERE NO SMOKING GUNS."

23             1500 DOCUMENTS SHOWING SIDE-BY-SIDE

24   COMPARISON WITH APPLE.

25             AND, AGAIN, WE MADE IT QUITE CLEAR IN OUR

1    BRIEF.  THERE'S NO WAY OF KNOWING PRECISELY WHAT

2    JUDGE KOH WOULD HAVE DONE OR WOULDN'T HAVE DONE.

3              BUT WE DO KNOW A COUPLE OF THINGS THAT

4    ARE QUITE IMPORTANT.  WE KNOW THAT SHE MADE AN

5    EXPRESS FINDING THAT WE HAD NOT PROVEN THAT DESIGN

6    DRIVES DECISIONS.

7              AND INTERESTINGLY, SHE CITED, IN SUPPORT

8    OF THAT, AN APPLE SURVEY WHICH WE HAD PRODUCED.

9              WHAT SHE DIDN'T CITE, BECAUSE WE COULDN'T

10   OFFER IT BECAUSE WE DIDN'T HAVE IT, WAS THE

11   DOCUMENT THAT NOW IS IN FRONT OF YOU AS CHUNG

12   EXHIBIT D, WHICH IS THE SAMSUNG DOCUMENT THAT SAID

13   EXTERIOR DESIGN IS THE MAIN REASON THAT PEOPLE BUY

14   THESE PRODUCTS.

15             JUDGE KOH ALSO, IN HER ORDER, SAID THAT

16   WE HAD NOT BEEN ABLE TO MAKE A SHOWING THAT IF

17   SOMEONE DIDN'T, COULDN'T BUY THE SAMSUNG PRODUCT,

18   THEY WOULD COME TO APPLE, BUT THAT THEY WOULD --

19   THAT IT WAS JUST AS LIKELY THAT THEY WOULD STAY

20   INSIDE THE ANDROID WORLD.

21             AND, AGAIN, THAT WAS RIGHT.  I MEAN, WE

22   HAD EXPERTS WHO OPINED THAT.

23             BUT WHAT WE DIDN'T HAVE WAS CHUNG

24   DECLARATION O WHERE SAMSUNG'S OWN USER SURVEYS

25   DEMONSTRATED THAT WHAT PEOPLE WERE TELLING THEM WAS

                                                    97

1    THAT APPLE WAS THE SECOND CHOICE IF SAMSUNG WAS NOT

2    AVAILABLE.

3            HUNDREDS AND HUNDREDS OF SIDE-BY-SIDE

4    COMPARISON DOCUMENTS.

5            WE HAVE REPRESENTATIONS TO US THAT THEIR,

6    THAT THEIR, THAT THEIR PRODUCTION UNDER THE ORDERS

7    WERE COMPLETE.

8            THEY'RE STILL PRODUCING DOCUMENTS.  I

9    MEAN, THE IRONY HERE IS THAT IF YOU GRANT OUR

10   DEPOSITIONS AND THEY SEARCH THESE FILES THAT WE'RE

11   ABOUT TO SEE, WE'RE GOING TO GET MORE INTO THESE

12   DOCUMENTS.

13           IT WAS SIMPLY INCREDIBLE THAT THESE

14   PRODUCTS COULD HAVE ENDED UP LOOKING SO SIMILAR BY

15   ACCIDENT OR BY NATURAL EVOLUTION.

16           AND AT THE END OF THE DAY, BECAUSE

17   SAMSUNG DID NOT COMPLY, FIRST OF ALL, WITH THE

18   DUTIES SET OUT BY THE FEDERAL RULES, BUT SECONDLY

19   BECAUSE THEY WERE NOT, I DON'T KNOW, INTIMIDATED,

20   WORRIED -- PICK YOUR RIGHT WORD -- ABOUT YOUR FIRST

21   ORDER, AND THAT THEY UNDERESTIMATED WHAT "ALL MEANS

22   ALL" SAYS, BUT THAT SOMEHOW EVEN AFTER YOUR SECOND

23   ORDER, THEY DIDN'T UNDERSTAND, WHEN YOUR HONOR SAID

24   THEY WERE EXPOSING THEMSELVES TO SANCTIONS, WHAT

25   YOU REALLY MEANT.

1    SO WE ARE SEEKING SANCTIONS.  WE'VE TOLD

2    THE COURT THAT THIS WAS GOING TO HAPPEN.  WE TOLD

3    YOU THAT WE WOULD COME BEFORE YOU.

4            I WANT TO BE, AGAIN, VERY CANDID ABOUT

5    THIS.  IT WAS VERY HARD AND WE SPENT A LOT OF TIME

6    TRYING TO FIGURE OUT WHAT, WHAT WERE THE

7    APPROPRIATE SANCTIONS HERE.

8            I DO FEEL VERY STRONGLY -- NOT THAT THAT

9    MATTERS, BUT I DO -- THAT AN ORDER FINDING THAT

10   THEY DIDN'T COMPLY WITH YOUR ORDER IS A MINIMUM.  I

11   MEAN, I THINK THAT IS APPROPRIATE.

12           THE COURT:  HAVEN'T I ALREADY GIVEN YOU

13   ONE OF THOSE?  I MEAN, I READ MY DECEMBER 22ND

14   ORDER AS EXPLICITLY REFERENCING SAMSUNG'S FAILURE

15   TO COMPLY WITH MY SEPTEMBER 28TH ORDER.  SO YOU

16   HAVE ONE ALREADY.

17           MR. MCELHINNY:  WELL, YES.

18           THE COURT:  MAYBE YOU NEED -- MAYBE YOU

19   DESERVE ANOTHER ONE.

20           MR. MCELHINNY:  YES, YES, YES.

21           BUT I -- LET'S JUST SAY WE ALSO KNOW THAT

22   OTHER PEOPLE READ YOUR ORDER AS GIVING THEM A

23   SECOND DEADLINE AND AS AN EXTENSION AS OPPOSED TO A

24   FINDING THAT THEY HAD NOT COMPLIED WITH THE FIRST

25   ORDER.

1          SO I -- YES, I WOULD LIKE AN UNAMBIGUOUS

2     FINDING IN THAT REGARD.

3          THE OTHER QUESTION, THEN, IS SANCTIONS.

4     AND YOU CAN GO WRONG SO MANY WAYS WHEN YOU ASK FOR

5     SANCTIONS.  IT'S SORT OF A FUNNY THING.

6          AND, YOU KNOW, THE ARGUMENT WILL BE MADE,

7     IT HAS BEEN MADE, THAT WE WERE OVERREACHING, THAT

8     WE ASKED FOR TOO MUCH.

9          AND THE FINAL DECISION THAT I MADE ON

10    THIS WAS WHAT I WANTED TO DO WAS LAY OUT FOR YOU

11    OUR VIEW OF WHICH MOTIONS WERE INFLUENCED BY THE

12    FAILURE TO COMPLY WITH YOUR ORDERS.

13         BECAUSE IF YOUR ORDER -- IF YOUR HONOR

14    FINDS, WHICH I THINK IS ADMITTED, THAT THERE WAS

15    NOT COMPLIANCE WITH THESE TWO ORDERS, HARD TO DENY,

16    BUT IF YOUR HONOR FINDS THAT AND IF YOU FIND THAT

17    SANCTIONS ARE APPROPRIATE, THEN, YOU KNOW, IT'S UP

18    TO YOU, TO YOUR DISCRETION.

19         THERE IS CERTAINLY CASE AUTHORITY -- I

20    DON'T WANT TO UNDERSELL HOW CRITICAL THIS WAS.  I

21    MEAN, I -- I ARGUED THE PRELIMINARY INJUNCTION.  I

22    MEAN, I SAT THERE IN FRONT OF JUDGE KOH AND I KNEW

23    WHAT WE HAD, I KNEW WHAT WE'D BEEN ABLE TO FIND,

24    AND I KNOW WHAT WE COULD HAVE DONE WITH THE

25    DOCUMENTS THAT I SHOWED YOU TODAY.

1        I KNOW WHAT -- I KNOW WHAT THE POWER OF

2   THOSE DOCUMENTS -- AT LEAST, I HAVE A VIEW OF WHAT

3   THE POWER OF THOSE DOCUMENTS WERE, AND APPLE NEVER

4   GOT A CHANCE TO DO THAT, AND THEY NEVER GOT A

5   CHANCE TO DO IT BECAUSE SAMSUNG DID NOT COMPLY.

6        AND SO IF YOU AWARD US THE COSTS OF THAT

7   MOTION, IF YOU AWARD US THE COSTS THAT WE'VE SET

8   OUT, I DON'T THINK THAT'S OVERREACHING.  I DON'T

9   THINK -- YOU'LL DO WHAT, YOU KNOW, WHAT YOU DO.

10  YOU'LL MAKE THE FINDINGS YOU THINK ARE APPROPRIATE

11  AND YOU'LL ENTER THE AWARD.

12        BUT IT IS IMPORTANT, IT IS IMPORTANT TO

13  THE SYSTEM THAT THE DISCOVERY PROCESS WORK.  IT IS

14  IMPORTANT THAT MAJOR MOTIONS DON'T TURN ON THE FACT

15  THAT SOMEONE DIDN'T COMPLY WITH DISCOVERY.

16        THE COURT:  LET ME ASK YOU,

17  MR. MCELHINNY, BEFORE YOU SIT DOWN --

18        MR. MCELHINNY:  SURE.

19        THE COURT:  -- DOES IT, FRANKLY, MATTER

20  IN YOUR VIEW WHETHER THESE DOCUMENTS WOULD HAVE

21  TURNED JUDGE KOH OR NOT?

22        I MEAN, IF WHAT YOU'RE SAYING NOW IS

23  CORRECT, THAT THE SYSTEM RELIES UPON A COMPLETE AND

24  FULL DISCLOSURE OF DOCUMENTS REQUESTED AND ORDERED

25  BY THE COURT, WHAT DOES IT MATTER IF THEY -- DOES

1    IT -- SHOULD I WEIGH OR CONSIDER THE MATERIALITY OR

2    THE EFFECT OF THESE DOCUMENTS ON HER DECISION?

3              AND IF I NEED TO, HOW ON EARTH DO I MAKE

4    THAT CALL?

5              MR. MCELHINNY:  WELL, THAT'S THE SECOND

6    PART.

7              HERE -- HERE'S -- HERE'S THE WAY I WOULD

8    ANNOUNCE -- HERE'S HOW I RESPOND TO ALL OF THAT,

9    AND IT'S MULTIPLE QUESTIONS.  I CAN'T STAND UP

10   HERE -- I ALREADY TOLD YOU THAT -- I CAN'T STAND UP

11   HERE AND SAY "IF ONLY JUDGE KOH HAD SEEN THIS

12   DOCUMENT, SHE WOULD HAVE COME OUT DIFFERENTLY."

13             AS YOUR HONOR NOW WELL KNOWS, YOU TAKE IN

14   ALL THE FACTS, YOU WRITE YOUR ORDER, YOU CITE THE

15   THINGS THAT SUPPORT YOUR ORDER.  SOME ARE GOOD,

16   SOME ARE BAD, AND WHAT MOVES YOU COMES OUT IN THE

17   ORDER.

18             BUT THAT DOESN'T MEAN IF ONE OF THEM WAS

19   WRONG THAT YOU WOULD CHANGE YOUR MIND ABOUT THE

20   ORDER.  I MEAN, I THINK MOST JUDGES FIGURE OUT

21   WHAT'S THE RIGHT THING FIRST.

22             SO I CAN'T SAY IT WOULD HAVE CHANGED THE

23   ORDER.

24             IF IT HAD CHANGED THE ORDER, WOULD THAT

25   MAKE A DIFFERENCE TO US?  JUDGE KOH EXPRESSLY FOUND

1    THAT WE WERE SUFFERING IRREPARABLE INJURY, AND WE

2    ARE SUFFERING IRREPARABLE INJURY.

3            IF THAT MOTION HAD COME OUT DIFFERENTLY,

4    THE MARKETPLACE WOULD LOOK SUBSTANTIALLY DIFFERENT.

5    OUR INTELLECTUAL PROPERTY WOULD HAVE BEEN SUPPORTED

6    IN A CORRECT WAY.

7            I MEAN, WE'RE GOING TO BE ARGUING NEXT

8    WEEK IN FRONT OF THE FEDERAL CIRCUIT WHETHER IT

9    SHOULD HAVE BEEN DIFFERENT.

10           BUT THE MARKET SHARE THAT SAMSUNG HAS

11   GOTTEN IN THE MEANTIME, ITS ABILITY TO MARKET

12   PRODUCTS AND WITHDRAW INFRINGING -- I MEAN, THE

13   BOUNCE EFFECT IS GONE, YOU KNOW?  A LOT OF THE

14   THINGS ARE SORT OF OFF OF THE TABLE WITH NO

15   ANNOUNCEMENT, COME OUT, BUT SAMSUNG STILL HAS THE

16   POSITION THAT IT'S MADE IN THE MARKETPLACE.

17           LOSING THAT PRELIMINARY INJUNCTION WAS

18   INCREDIBLY DAMAGING TO MY CLIENT.

19           WHAT I CAN TELL YOU, AND THIS IS WHERE

20   YOU GET TO MAKE -- I CAN TELL YOU WITHOUT A DOUBT

21   THAT THE ISSUES WERE MATERIAL, THE DOCUMENTS ARE

22   MATERIAL.

23           BUT THIS IS LIKE TRYING TO TELL A JUDGE

24   HOW THEY SHOULD REACT TO EVIDENCE.  GO BY YOUR OWN

25   JUDGMENT.  GO BY THE DOCUMENTS THAT YOU SEE.

```
 1              THE COURT:  WELL, I WILL.  I UNDERSTAND

 2    YOUR PERSPECTIVE ON THIS.

 3              MR. MCELHINNY:  I'M JUST SAYING, THE

 4    DOCUMENT THAT I SHOWED YOU AS A SMOKING GUN TODAY,

 5    IT'S AN ADMISSION THAT ON THE IPAD, IF YOU LOOK

 6    THROUGH THE NUMBER OF THINGS THEY CHANGED,

 7    INCLUDING THE BOUNCE EFFECT PATENT, WHICH IS THE

 8    ONE, YOU KNOW, IN WHICH SHE FOUND PROBABLE

 9    INFRINGEMENT, THESE DOCUMENTS ARE INCREDIBLY

10    POWERFUL AND THAT'S, FRANKLY, WHY I BELIEVE THEY

11    WERE WITHHELD.  IT'S WHY SAMSUNG DIDN'T PRODUCE

12    THEM.

13              I MEAN, THIS IS -- NOW I CAN GET WAY OFF.

14              THIS IS NOT THE FIRST CASE I'VE HAD WITH

15    SAMSUNG.  THIS IS THE WAY THIS COMPANY RESPONDS TO

16    THE AMERICAN DISCOVERY PROCESS.

17              AND THE VIEW IS -- I TOLD THIS TO

18    JUDGE KOH.  I TOLD HER THIS IN THE PRELIMINARY

19    INJUNCTION.

20              THEY ARE SO BIG AND THEY ARE SO

21    INTERNATIONAL THAT THE COURTS CAN'T CATCH UP TO

22    THEM.  YOU CANNOT ISSUE ORDERS FAST ENOUGH TO UNDO

23    THE DECISIONS THAT THEY ARE MAKING.

24              AND AT THE END OF THE DAY WHEN THEY, WHEN

25    THEY ADD UP THE PLUSES AND THE MINUSES -- WHAT I
```

1    THOUGHT YOU WERE GOING TO ASK ME IS A MUCH MORE, I

2    GUESS, HARD QUESTION.  YOU KNOW, "OKAY, FINE.  I'M

3    GOING TO GIVE YOU A MILLION DOLLARS IN SANCTIONS.

4    WHAT DIFFERENCE DOES THAT MAKE?"

5            THE COURT:  WE'RE GOING TO GET TO THAT,

6    BUT THAT'S FOR THEM.

7            MR. MCELHINNY:  AND THE ANSWER THERE IS A

8    MILLION DOLLARS WITH THESE COMPANIES, THAT'S THEIR

9    POINT.

10           WE CAN'T UNDO THE DAMAGE THAT WAS DONE.

11   BUT WHAT WE CAN DO IS EXPRESS THE WAY OUR SYSTEM IS

12   SUPPOSED TO WORK, AND EXPRESS WHAT -- I MEAN, I

13   HATE TO USE THE, YOU KNOW, "SEND A MESSAGE, MAKE AN

14   EXAMPLE," BUT IF YOU DON'T DO THAT ON THESE KINDS

15   OF FACTS, THERE REALLY IS A RISK, PARTICULARLY TO A

16   COMPANY LIKE THIS, WHICH IS INVOLVED IN SO MUCH

17   LITIGATION ON ALL OF THE REST OF THE ISSUES, THEY

18   LEARN.  I MEAN, YOU KNOW, ALL THIS EDUCATION COMES

19   BACK.

20           EVERY TIME I LITIGATE WITH SAMSUNG I'M IN

21   FRONT OF A DIFFERENT JUDGE AND THE DIFFERENT JUDGE

22   IS GIVING THEM THE BENEFIT OF THE DOUBT AND SAYING,

23   "OKAY, YOU KNOW, THEY HAVEN'T DONE ANYTHING BAD IN

24   MY COURT."

25           BUT THE POINT IS IT'S ALL -- IT'S ALL

1    CONSCIOUS.  IT'S ALL PART OF THE PLAN.  WE CLEARLY

2    ARE NOT DEALING WITH SOMEONE WHO WAS INTIMIDATED BY

3    YOUR ORDERS.  WE ARE NOT DEALING WITH SOMEONE WHO

4    SAID, "OH, MY GOD.  A FEDERAL JUDGE HAS NOW

5    THREATENED US WITH SANCTIONS TWICE."  THAT WAS NOT

6    THEIR RESPONSE.

7            AND IF YOU'RE ASKING ME WHETHER OR NOT,

8    NO MATTER WHAT YOU DO AT THE END OF THE DAY, THEY

9    HAVE SUCCEEDED BECAUSE THEY DEFEATED THE

10   PRELIMINARY INJUNCTION, THE ANSWER TO THAT IS YES.

11           THE COURT:  ALL RIGHT.  THANK YOU,

12   MR. MCELHINNY.

13           MR. JOHNSON, ARE YOU GOING TO SPEAK TO

14   THIS?

15           MR. JOHNSON:  YES, YOUR HONOR.  THANK

16   YOU.

17           YOUR HONOR, I WANT TO START WITH WHERE

18   MR. MCELHINNY LEFT OFF, WHICH IS HE SAYS WE WERE

19   NOT INTIMIDATED BY YOUR HONOR'S -- BY YOUR ORDERS,

20   RATHER, AND I WANT TO STAND HERE AND I WANT TO TELL

21   YOU FIRST AND FOREMOST THAT SAMSUNG AND OUR FIRM,

22   QUINN, EMANUEL, HAS PUT AN INCREDIBLE PRIORITY ON

23   YOUR HONOR'S ORDERS, AS WELL AS JUDGE KOH'S ORDERS,

24   AND HAS TREATED THESE ORDERS VERY, VERY SERIOUSLY.

25           WE'VE KNOWN FROM THE BEGINNING, BACK WHEN

1    APPLE, BEFORE THE CASE, OR RIGHT AFTER THE CASE WAS

2    FILED, SENT US A LETTER LAST JUNE, SENT US A LETTER

3    SAYING, BASICALLY, THAT "WE HAVE NOTICED THAT

4    SAMSUNG HAS HAD DISCOVERY ISSUES IN OTHER CASES.

5    WE WANT YOU TO KNOW THAT WE'RE BASICALLY GOING TO

6    BE LOOKING TO PREPARE SANCTIONS MOTIONS."

7              THEY'VE NOW FILED SEVEN SANCTIONS MOTIONS

8    ACROSS DIFFERENT CASES BETWEEN THE PARTIES AT THIS

9    POINT.  I'LL COME BACK TO THAT IN A SECOND.

10             BUT I WANT TO EXPLAIN FROM THE VERY

11   BEGINNING THAT SAMSUNG, FROM THE VERY BEGINNING OF

12   THIS CASE, HAS PUT A MASSIVE EFFORT INTO THE

13   DISCOVERY AND IS TAKING ITS OBLIGATIONS IN

14   CONJUNCTION WITH YOUR ORDERS VERY, VERY SERIOUSLY.

15             WE TOOK IMMEDIATE ACTION AND ACTED IN

16   GOOD FAITH.  WE DIDN'T WAIT UNTIL AUGUST OR

17   SEPTEMBER TO SEND PEOPLE TO GO COLLECT DOCUMENTS.

18             DOCUMENT COLLECTION STARTED RIGHT AFTER

19   THE CASE WAS BROUGHT.  I WENT TO KOREA.

20   MS. MAROULIS WENT TO KOREA.  PEOPLE NOT IN THIS

21   ROOM, OTHER PARTNERS OF MINE, WENT TO KOREA,

22   STARTED THE INTERVIEW PROCESS RIGHT AWAY, STARTED

23   THE DOCUMENT COLLECTION PROCESS RIGHT AWAY,

24   MR. ZELLER, MR. BRIGGS, A TEAM OF ASSOCIATES.

25             AND FOR MR. MCELHINNY TO SAY THAT WE

1    WAITED UNTIL SEPTEMBER TO SEND NOW AMERICAN

2    LAWYERS -- WHICH I THINK IS BORDERLINE OFFENSIVE,

3    FRANKLY, THERE ARE LAWYERS WITHIN SAMSUNG WHO ARE

4    TRAINED U.S. LAWYERS WHO ARE -- WHO -- ACTUALLY ONE

5    OF THEM WAS A FORMER PARTNER OF MINE AT QUINN,

6    EMANUEL.  THERE ARE ASSOCIATES WHO USED TO BE AT

7    QUINN.  THERE ARE ASSOCIATES FROM SOME OF THE

8    LARGEST AND MOST REPUTABLE FIRMS IN THE

9    UNITED STATES, JONES DAY, MCDERMOTT, WILL, A NUMBER

10   OF THEM.

11           AND SO I WANT THIS COURT TO UNDERSTAND

12   THAT AT THE VERY BEGINNING OF THIS CASE, WE TOOK

13   THESE ORDERS AND WE TOOK THIS CASE VERY SERIOUSLY

14   WITH RESPECT TO DISCOVERY AND OUR OBLIGATIONS IN

15   THIS CASE.

16           OUR DEFENSIVE, JUST OUR DEFENSIVE

17   DISCOVERY TEAM, THE TEAM RESPONSIBLE FOR COLLECTING

18   DOCUMENTS HAS BEEN 8 PARTNERS, 33 ASSOCIATES, 56

19   CONTRACT REVIEWERS, 5 DIFFERENT DOCUMENT VENDORS

20   WHO THEMSELVES HAVE 31 ASSOCIATES WORKING INSIDE TO

21   PRODUCE THE DOCUMENTS AND WORK THROUGH THOSE.

22           WE'VE HAD CLOSE TO TEN IN-HOUSE LAWYERS

23   DEVOTED FULL TIME TO THE DEFENSIVE ISSUES AND

24   COLLECTING AND INTERVIEWING WITNESSES.

25           THIS HAS BEEN A TEAM EFFORT ACROSS BOTH

1     QUINN, EMANUEL AND SAMSUNG.

2         AND THE RESULTS ARE SHOWN IN THE MASSIVE

3     AMOUNT OF DISCOVERY THAT'S BEEN PRODUCED IN THIS

4     CASE IN, FRANKLY, THE SHORT AMOUNT OF TIME THAT

5     THIS CASE HAS BEEN AROUND.

6         AND JUST TO GIVE YOU SOME NUMBERS,

7     BECAUSE I DO THINK THE NUMBERS ARE IMPORTANT HERE,

8     THERE WAS AN AGREEMENT, I SHOULD SAY, BETWEEN THE

9     PARTIES TO SHARE DOCUMENTS BETWEEN THIS NORTHERN

10     DISTRICT OF CALIFORNIA CASE AND THE ITC CASES

11     BECAUSE OF THE OVERLAP.  SO THERE'S AN AGREEMENT

12     THAT DOCUMENTS PRODUCED IN ONE CASE COULD BE USED

13     IN THE OTHER CASES.

14         SO FAR SAMSUNG HAS PRODUCED 12.6 MILLION

15     PAGES OF DOCUMENTS ACROSS THESE CASES, 2 MILLION IN

16     THE NORTHERN DISTRICT OF CALIFORNIA, 10.6 IN THE

17     ITC.  APPLE HAS BEEN USING THE ITC DOCUMENTS IN

18     THIS CASE, AND VICE-VERSA.

19         THAT DOES NOT INCLUDE, YOUR HONOR, 850

20     GIGABYTES OF SOURCE CODE, WHICH IS BASICALLY

21     EQUIVALENT TO ABOUT 50 MILLION PAGES OF DOCUMENTS

22     ON ALL THE ACCUSED PRODUCTS, 100 DIFFERENT MODELS

23     AND MOCK-UPS OF DIFFERENT ACCUSED PRODUCTS, AS WELL

24     AS 1400 CAD FILES.

25         NOW, APPLE HAS ALSO TAKEN -- WE HEARD

1   MR. QUINN TALK ABOUT THE FACT THAT APPLE HAS TAKEN

2   ABOUT 100 DEPOSITIONS JUST IN THE NORTHERN DISTRICT

3   OF CALIFORNIA CASE.

4           DURING THE SAME TIMEFRAME, APPLE HAS

5   TAKEN ANOTHER 129 IN THE ITC CASE.

6           THERE HAVE BEEN DEPOS ALMOST EVERY DAY

7   SINCE SEPTEMBER IN THESE CASES, SOMETIMES GETTING,

8   YOU KNOW, UPWARDS OF FIVE OR SEVEN PER DAY.

9           LAST WEEK WE RECEIVED 29 EXPERT REPORTS

10  FROM APPLE.

11          SO MY POINT IS WE'VE ACTED IN GOOD FAITH.

12  WE'VE TRIED TO PRODUCE DOCUMENTS AS QUICKLY AS WE

13  CAN.

14          AND THIS HAS BEEN A PROCESS, YOUR HONOR.

15  I MEAN, WE STARTED WITH THE PRELIMINARY INJUNCTION

16  DISCOVERY AND THERE WAS A -- JUDGE KOH ISSUED AN

17  ORDER LAST JULY WHICH SAID, BASICALLY, QUOTE, "KEEP

18  DISCOVERY REQUESTS REASONABLE IN SCOPE AND NARROWLY

19  TAILORED TO ADDRESS THE PRELIMINARY INJUNCTION

20  MOTION."

21          AND THAT'S WHAT BOTH PARTIES DID IN

22  CONNECTION WITH THE PRELIMINARY INJUNCTION MOTION.

23          WE WERE UNDER SHORT TIME CONSTRAINTS

24  THERE.

25          AND APPLE HAD THE VERY SAME

1      UNDERSTANDING, THAT THE PRELIMINARY INJUNCTION

2      DISCOVERY WAS GOING TO BE NARROWLY TAILORED.  AND,

3      IN FACT, MR. JACOBS SENT US A LETTER ON

4      OCTOBER 7TH -- AND THIS IS ATTACHED AS JENKINS

5      EXHIBIT D -- WHERE HE SAID, "SOME OF THE DOCUMENTS

6      LOCATED AS PART OF APPLE'S GENERAL DISCOVERY

7      PROCESS MAY ALSO BE RESPONSIVE TO SAMSUNG'S

8      PRELIMINARY INJUNCTION DISCOVERY REQUESTS."

9            APPLE PRODUCED LOTS OF DOCUMENTS AFTER

10     THE PRELIMINARY INJUNCTION STAGE.  IN FACT, BY THE

11     TIME THAT THE INJUNCTION HEARING OCCURRED, THEY HAD

12     PRODUCED 150,000 PAGES.

13           THEY'VE NOW PRODUCED, BETWEEN THE TWO

14     CASES, 24 MILLION PAGES.  MOST OF THE PRODUCTION

15     HAS COME IN SINCE JANUARY 15TH.  THEY'VE PRODUCED 3

16     MILLION PAGES SINCE JANUARY 15TH JUST IN THE

17     NORTHERN DISTRICT OF CALIFORNIA CASE.

18           SO MY POINT IS THAT WE STARTED DOWN THE

19     PATH.  WE HAD THE SEPTEMBER 28TH ORDER WITH YOUR

20     HONOR WHERE WE WERE GIVEN A WEEK TO COMPLY WITH

21     PRODUCING ADDITIONAL DOCUMENTS.

22           WE -- AFTER SENDING PEOPLE AGAIN IN MAY,

23     JULY, AND AGAIN IN JULY -- WE HAD TWO SEPARATE

24     TRIPS IN JULY TO COLLECT, JUST TO COLLECT

25     DOCUMENTS -- WE THEN SENT ANOTHER TEAM TO KOREA, AS

1    WELL AS VENDORS, TO SEARCH FOR ADDITIONAL

2    DOCUMENTS, AND THIS IS LAID OUT IN THE DECLARATION

3    OF MR. KANG.

4            WE RAN SEARCHES ON CUSTODIANS, DESKTOPS,

5    THEIR CENTRAL FILES, THE SURVEY CENTRAL FILES, AND

6    WE OBTAINED A LOT OF FALSE HITS AS A RESULT OF

7    THAT.

8            I MEAN, APPLE AND SAMSUNG HAVE A CUSTOMER

9    RELATIONSHIP AND SO THERE ARE A LOT OF DOCUMENTS

10   THAT AREN'T RELEVANT.

11           AND, YOU KNOW, IT TOOK A LOT OF TIME TO

12   SORT THROUGH THESE DOCUMENTS.

13           AT THE END OF THE DAY, WE PRODUCED THE

14   DOCUMENTS FOR THE PRELIMINARY INJUNCTION AND WE

15   WERE BACK -- AND THEN DEPOSITIONS STARTED SHORTLY

16   THEREAFTER.

17           AND I'M GOING TO COME BACK AND I WANT TO

18   TALK ABOUT SOME OF THE SPECIFIC DOCUMENTS THAT

19   MR. MCELHINNY RAISED, BECAUSE -- AND I'M GOING TO

20   TALK A LITTLE BIT ABOUT WHY -- WE'VE SEEN THESE

21   DOCUMENTS BEFORE AND I HEARD HIM SAY THAT THERE ARE

22   1500 COPYING DOCUMENTS AND THAT SIMPLY IS NOT TRUE.

23           THE DECEMBER 22ND ORDER, AGAIN, WE SENT

24   PEOPLE TO KOREA.  WE HAD A FULL TEAM OF PARTNERS

25   AND ASSOCIATES.  THEY SPENT THOUSANDS OF MAN HOURS

1    JUST IN THAT WEEK COLLECTING ADDITIONAL DOCUMENTS.

2    THEY WORKED ON CHRISTMAS EVE.  THEY WORKED ON

3    CHRISTMAS DAY.

4            BUT I DON'T WANT TO MAKE IT SEEM LIKE

5    THERE WEREN'T PEOPLE THERE DURING THE FALL AS WELL.

6    THERE WERE PEOPLE THERE COLLECTING DOCUMENTS, AND

7    AS NEW PEOPLE WERE FOUND -- AND, FRANKLY, WE HAD

8    DEPOSITIONS OCCURRING AT THE SAME TIME.

9            IF YOU RECALL IN THE JUDGE'S ORDER, THE

10   WAY THIS STARTED WAS AFTER THE PRELIMINARY

11   INJUNCTION HEARING, WE STARTED WITH THE DEPOSITIONS

12   OF THE APPLE INVENTORS AND THEN APPLE TOOK THE

13   DEPOSITIONS OF THE SAMSUNG INVENTORS.

14           AND SO AS PART OF THAT SEQUENCE, THERE

15   WERE DOCUMENTS THAT STARTED TO COME UP AS INVENTORS

16   WERE GETTING DEPOSED ON BOTH SIDES AND WE WENT BACK

17   AND LOOKED FOR ADDITIONAL DOCUMENTS AS PEOPLE WERE

18   GETTING DEPOSED AND DOCUMENTS WERE FOUND AND THOSE

19   WERE PRODUCED.

20           THERE WAS NO BAD FAITH ON SAMSUNG'S PART.

21   THERE WAS NO SITUATION AT ANY POINT WHERE WE HID

22   ANY DOCUMENTS, CONCEALED ANY DOCUMENTS.

23           WE WENT BACK AND TRIED TO BE AS

24   COMPREHENSIVE AS WE COULD.

25           AND ON DECEMBER 31ST, BY FAR AND AWAY

                                                        113

1     MOST OF THE DOCUMENTS THAT MR. MCELHINNY CLAIMS

2     SHOULD HAVE BEEN PRODUCED BEFORE DECEMBER 31ST

3     WERE, IN FACT, PRODUCED BEFORE DECEMBER 31ST.

4              DOCUMENTS THAT ARE LISTED IN THEIR MOVING

5     PAPERS FROM MR. BO-RA KIM, WHICH IS CHUNG EXHIBIT

6     E, WAS PRODUCED BEFORE DECEMBER 31ST.

7              EXHIBIT -- CHUNG EXHIBIT F, DOCUMENTS

8     FROM MINHYOUK LEE, WERE PRODUCED BEFORE

9     DECEMBER 31ST.

10             DOCUMENT FROM JAEGWAN SHIN, EXHIBIT L;

11    JING YOO, EXHIBIT O; TIM BENNER, EXHIBITS P AND Q

12    WERE ALL PRODUCED BEFORE DECEMBER 31ST.

13             AND THERE'S NO VIOLATION OF ANY ORDER,

14    EVEN UNDER APPLE'S DEFINITION OF VIOLATION.

15             THERE ARE ALSO INCORRECT ASSERTIONS THAT

16    THEY'VE MADE EVEN IN THEIR REPLY PAPERS.

17             AND JUST, YOUR HONOR, TO GIVE YOU A

18    FLAVOR OF A FEW EXAMPLES, BECAUSE THESE ARE

19    IMPORTANT BECAUSE THE ACCUSATIONS THAT

20    MR. MCELHINNY IS RAISING AGAINST OUR FIRM AND

21    SAMSUNG ARE VERY, VERY SERIOUS.

22             CHUNG REPLY EXHIBIT R THEY CLAIM IS A NEW

23    DOCUMENT THAT THEY HADN'T SEEN BEFORE WHEN, IN

24    FACT, IT WAS A DUPLICATE OF A DOCUMENT THAT WAS

25    PRODUCED ON OCTOBER 7TH OF FROM SANG HUNG'S FILES.

1          THEY'RE INCORRECT ABOUT THAT.

2                    THEY SAY THAT THERE ARE 400 DOCUMENTS

3     THAT WERE PRODUCED FROM SANG HUNG'S FILES AFTER THE

4     ORDER, THE DECEMBER 28TH ORDER.

5                    THERE ARE AT LEAST 96 OF THOSE THAT WERE

6     PRODUCED THAT WERE PRODUCED IN THE FALL BEFORE,

7     BEFORE THEY SAY THAT THEY WERE PRODUCED IN

8     FEBRUARY.  AT LEAST 96.

9                    I MEAN, YOUR HONOR, WE'VE BEEN GOING BACK

10    SINCE THEY FILED THE REPLY PAPERS TO SEE IF THERE

11    ARE DUPLICATES WITHIN THE 12 MILLION PAGE

12    PRODUCTION, AND THAT'S A TIME CONSUMING AND

13    INCREDIBLE PROCESS WHILE WE'RE IN THE MIDST OF

14    EXPERT REPORTS AND EVERYTHING ELSE THAT'S GOING ON

15    IN THE CASE.  SO I'M SURE THAT THERE ARE OTHERS AS

16    WELL.

17                    OLSON REPLY EXHIBIT 2 IS A, IS SOME RAW

18    DATA FROM A THIRD PARTY INVOLVED IN A SURVEY.

19                    WHAT APPLE FAILS TO TELL YOU IS THAT THEY

20    PRODUCED THE -- THAT WE PRODUCED THE 50-PAGE SURVEY

21    DOCUMENT THAT WAS BASED ON THIS RAW DATA.  IT WAS

22    PRODUCED BACK IN OCTOBER, OCTOBER 7TH BEFORE THE

23    EXPIRATION -- IN CONNECTION WITH THAT

24    SEPTEMBER 22ND ORDER.

25                    THEY THEN ASKED FOR THE RAW DATA

1      ASSOCIATED WITH THAT AS WE WERE GETTING READY FOR

2      MR. BRENNER'S DEPOSITION.

3              THAT RAW DATA WAS IN THE POSSESSION AND

4      CUSTODY OF A THIRD PARTY WHO ACTUALLY DID THE

5      SURVEY.  MR. BENNER CALLED THEM UP, ASKED THEM FOR

6      THAT DATA.  WE RECEIVED THE DATA AND WE PRODUCED IT

7      BEFORE HIS DEPOSITION.

8              AND THEY'RE GOING TO BE DEPOSING

9      MR. BENNER AGAIN THIS FRIDAY.  THEY HAVE ANOTHER

10     OPPORTUNITY TO ASK HIM ABOUT THAT RAW DATA.

11             CHUNG REPLY EXHIBIT B, JUST -- THIS IS

12     JUST ANOTHER EXAMPLE TO SHOW YOU SOME OF THE

13     TECHNICAL GLITCHES THAT WE HAD.

14             THAT EXHIBIT ONLY REFERENCES THE TERM

15     "IPAD" AND IT INSERTS HYPHEN BETWEEN I AND PAD2.

16             SO WHEN THE SEARCHES WERE DONE FOR

17     "IPAD," "IPHONE," BECAUSE IT HAD THE -- BECAUSE IT

18     HAD THE HYPHEN, IT DIDN'T PULL THAT UP.

19             WHEN WE FOUND IT, WE PRODUCED IT RIGHT

20     AWAY.  THERE WAS NO INTENTION TO HIDE THAT DOCUMENT

21     OR CONCEAL THAT DOCUMENT, AND THAT'S WHAT WE'VE

22     TOLD APPLE.

23             SO -- AND BY THE WAY, THAT DOCUMENT WAS

24     PRODUCED IN ADVANCE OF MR. LEE'S DEPOSITION ON

25     FEBRUARY 23RD.

1          SO AS WE'VE FOUND PEOPLE GETTING DEPOSED,

2    AS APPLE IDENTIFIED WITNESSES AND AS WE -- AS OUR

3    DEPONENTS IDENTIFIED WITNESSES, BOTH -- WE MADE

4    THOSE PEOPLE AVAILABLE.  APPLE NOTICED THOSE

5    PEOPLE'S DEPOSITIONS.

6          WE THEN WENT BACK AND WE DID SEARCHES FOR

7    ADDITIONAL DOCUMENTS FROM THESE PEOPLE AND WE FOUND

8    ADDITIONAL DOCUMENTS AT TIMES THAT -- THIS WAS NOW

9    NO LONGER THE PRELIMINARY INJUNCTION DISCOVERY

10   ASSOCIATED WITH IT.

11         AND THIS IS -- THIS IS -- TO BE FRANK, I

12   MEAN, THIS IS HOW THE DISCOVERY IS WORKED IN THESE

13   CASES.  THERE'S BEEN NO ATTEMPT TO HIDE ANYTHING AT

14   ANY POINT.

15         WE'VE -- I THINK WE'VE BEEN MINDFUL OF

16   APPLE'S M.O. FROM THE BEGINNING, THAT THEY'D BE

17   LOOKING TO FILE SANCTIONS MOTIONS, AND WE'VE BEEN

18   AS AGGRESSIVE AS WE CAN BE, BOTH AT SAMSUNG AND AT

19   QUINN, TO MAKE SURE THAT THE RIGHT THING IS BEING

20   DONE EVERY STEP OF THE WAY.

21         NOW, MR. JEEYEUN WANG'S DOCUMENTS, THOSE

22   DOCUMENTS WERE COLLECTED FROM MR. WANG AND WERE

23   PRODUCED BACK IN OCTOBER OF 2011, ON OCTOBER 7TH.

24         AS HE WAS GETTING READY TO BE DEPOSED ON

25   FEBRUARY 2ND, WE DID AN ADDITIONAL SEARCH.  WE

1    HAD -- YOU KNOW, WHEN WE MOVED OUT OF THE

2    PRELIMINARY INJUNCTION, WE HAD DIFFERENT -- WE HAD

3    MORE VENDORS, DIFFERENT SOFTWARE, AS WELL AS MORE

4    SEARCHES WERE RUN, AND WE LOCATED ADDITIONAL

5    DOCUMENTS FROM HIM.

6            THOSE WERE NOT COPYING DOCUMENTS.  THOSE

7    WERE ADDITIONAL DOCUMENTS THAT IDENTIFIED EITHER

8    IPHONE OR IPAD, AND WE PRODUCED THEM.

9            THERE WAS, AGAIN, NO ATTEMPT TO WITHHOLD

10   ANY OF THE DOCUMENTS.

11           AND, IN FACT, SOME OF THOSE DOCUMENTS

12   RELATE TO PRODUCTS THAT ARE NOT INVOLVED IN THIS

13   CASE, LIKE THE ALCON PRODUCTS, AND THEY INVOLVE

14   UNACCUSED FEATURES.

15           BUT WE WENT AHEAD AND PRODUCED EVERYTHING

16   ASSOCIATED WITH MR. WANG'S DOCUMENTS.

17           THE SURVEY DOCUMENTS, YOU KNOW, WE

18   PRODUCED -- I HEARD MR. MCELHINNY SAY THAT WE

19   DIDN'T PRODUCE ANY DOCUMENTS ASSOCIATED WITH

20   SURVEYS BEFORE THE PRELIMINARY INJUNCTION.

21           WELL, THAT'S JUST NOT CORRECT.  WE

22   PRODUCED 2500 PAGES OF SURVEYS FROM MR. TIM BENNER,

23   MR. HUNG, AND FROM THE CENTRAL MARKETING FILES.  WE

24   PRODUCED THOSE BY OCTOBER 7TH AND THAT'S DESCRIBED

25   IN THE JENKINS EXHIBIT, JENKINS DECLARATION AT

1    PARAGRAPH 11.

2              IN NOVEMBER WHEN WE WERE DOING A MEET AND

3    CONFER CALL WITH APPLE, WE BECAME AWARE OF THE FACT

4    THAT THERE WERE TWO SURVEY CUSTODIANS WHO, IT

5    APPEARED, HAD NOT -- THAT WE HAD NOT PRODUCED

6    DOCUMENTS FROM THEIR FILES AS WE HAD ORIGINALLY

7    THOUGHT.

8              SO WE WENT BACK AND WE CHECKED AND WE

9    DISCOVERED THAT THE SAMSUNG PEOPLE WHO HAD BEEN

10   RESPONSIBLE FOR, YOU KNOW, SENDING US THE

11   DOCUMENTS -- BECAUSE WE'RE NOT DRIVING DOWN TO

12   CUPERTINO TO PICK UP DOCUMENTS.  THESE DOCUMENTS

13   ARE COMING FROM ACROSS THE PACIFIC OCEAN IN LARGE

14   MEASURE, AND THERE ARE A LOT OF TECHNICAL ISSUES

15   ASSOCIATED WITH THAT BECAUSE THEY'RE OBVIOUSLY

16   CRITICAL, CRUCIAL DOCUMENTS THAT INVOLVE LOTS OF

17   SECURITY AND LARGE -- IN MANY INSTANCES, THERE ARE

18   PEOPLE WHO GET ON PLANES WITH SECURED HARD DRIVES

19   AND SECURED SYSTEMS TO BRING THE DOCUMENTS OVER

20   PERSONALLY.

21             IN OTHER INSTANCES WE'VE HAD TO DO

22   SPECIAL SECURITY WAYS TO TRANSFER THOSE FILES,

23   WHICH HAS REQUIRED ENCRYPTION ON ONE SIDE, SENDING

24   IT, LOADING IT ON OUR SIDE, DECRYPTING IT ON OUR

25   SIDE.

1           THERE HAVE BEEN A LOT OF TECHNICAL ISSUES
2    ASSOCIATED WITH THAT.
3           AND THEN WE FIGURED OUT THAT WHEN
4    DOCUMENTS WERE SENT, BECAUSE THE QUINN, EMANUEL
5    SERVER ONLY ACCEPTS DOCUMENTS OF A CERTAIN SIZE,
6    DOCUMENTS BOUNCED BACK AND THOSE -- SO WE FIGURED
7    OUT AFTER THIS MEET AND CONFER THAT THERE HAD BEEN
8    E-MAIL BOUNCEBACKS.
9           AND THESE ARE IMPORTANT FOR US BECAUSE
10   I'M TRYING TO EXPLAIN THAT EVERY STEP OF THE WAY
11   WHEN WE REALIZED THAT THERE WAS AN ISSUE, WE FIXED
12   IT.  WE TRIED TO FIX IT.
13          SO, AGAIN, THERE HASN'T BEEN ANY BAD
14   FAITH ASSOCIATED WITH ANY OF THIS.
15          AND I WANT TO ADDRESS THE PREJUDICE
16   ISSUES AS WELL BECAUSE, YOU KNOW, I HEARD
17   MR. MCELHINNY SAY THAT HE DIDN'T HAVE THE
18   OPPORTUNITY TO ARGUE IN THE PRELIMINARY INJUNCTION
19   THE, THE DESIGN, THE IMPORTANCE OF, YOU KNOW, THE
20   INDUSTRIAL DESIGN, SO TO SPEAK.
21          WELL, YOUR HONOR, IF YOU MAY RECALL,
22   THERE WERE DOCUMENTS -- I JUST WANT TO SHOW THAT
23   THERE ARE DOCUMENTS THAT ARE ACTUALLY CUMULATIVE.
24          THE DOCUMENTS THAT APPLE IS RAISING NOW
25   ARE CUMULATIVE WITH A LOT OF THE DOCUMENTS THAT

                                                       120

1    WERE RAISED DURING THE PRELIMINARY INJUNCTION.

2              AND SO IF YOU LOOK, FOR EXAMPLE, AT

3    APPLE'S MOTION TO AUGMENT THE PRELIMINARY

4    INJUNCTION RECORD, WHICH WAS GRANTED BY JUDGE KOH,

5    AND IF YOU LOOK AT, FOR EXAMPLE, EXHIBIT E TO THAT,

6    YOU WILL SEE THAT THIS IS A SAMSUNG DOCUMENT THAT,

7    ON PAGE 533135, TALKS SPECIFICALLY ABOUT DESIGN

8    CONSIDERATIONS AND THE IMPORTANCE OF DESIGN

9    CONSIDERATIONS OR LACK THEREOF.

10             THEY HAD THAT ARGUMENT.  THEY HAD THIS

11   DOCUMENT.  THE DOCUMENTS THAT MR. MCELHINNY HAS

12   IDENTIFIED ARE NOT NEW THEORIES HERE.  THERE ARE NO

13   SMOKING GUNS.

14             THE DOCUMENTS THAT THEY FOUND OR THAT

15   HAVE BEEN PRODUCED SUBSEQUENT TO THE PRELIMINARY

16   INJUNCTION ARE, IN LARGE MEASURE, CUMULATIVE OR --

17   NOT IN LARGE MEASURE.  THEY ARE CUMULATIVE WITH THE

18   EXHIBITS THAT WERE CONSIDERED AS PART OF THE

19   PRELIMINARY INJUNCTION.

20             SO IF YOU LOOK, FOR EXAMPLE, AT CUSTOMER

21   ANALYSIS DOCUMENTS WHICH ARE CHUNG EXHIBITS D, E,

22   F, H, AND I, THOSE ARE CUMULATIVE OF EXHIBITS A AND

23   E IN CONNECTION WITH THE MOTION TO AUGMENT.

24             A TALKS SPECIFICALLY ABOUT, YOU KNOW, THE

25   FUN WOW EFFECT, THE BOUNCE EFFECT, THE NO SPRINGING

1    BOUNCE EFFECT.

2            SO WE CAN SIT HERE AND TRY TO SPECULATE

3    ABOUT WHAT JUDGE KOH WOULD HAVE DONE AND WE CAN

4    TALK ABOUT WHETHER THE RIGHT MOVE WOULD HAVE BEEN

5    FOR APPLE -- THEY HAVE NOT SOUGHT ANY LEAVE TO FILE

6    A MOTION FOR RECONSIDERATION, IN LIGHT OF ANY OF

7    THESE DOCUMENTS, OF THE PRELIMINARY INJUNCTION

8    MOTION, WHICH THEY COULD.  THAT'S THEIR

9    PREROGATIVE.  THEY COULD DO THAT AND WE COULD

10   OBVIOUSLY, YOU KNOW, ARGUE ABOUT IT.

11           BUT THEY HAVEN'T DONE THAT.  THEY HAVEN'T

12   SOUGHT TO DO ANY OF THAT.

13           AND, YOU KNOW, WHEN YOU LOOK AT THE

14   DOCUMENTS THAT WERE CONSIDERED BY JUDGE KOH IN

15   CONNECTION WITH THE PRELIMINARY INJUNCTION, THEY

16   ARE, IN FACT, CUMULATIVE OF WHAT APPLE IS TRYING TO

17   RAISE NOW AND WHAT THEY CALL AS THEIR SMOKING HOT

18   GUN DOCUMENTS.

19           IT'S IMPORTANT TO ALSO TALK ABOUT

20   COMPETITIVE ANALYSIS DOCUMENTS, BECAUSE

21   MR. MCELHINNY AND APPLE REFER TO ALL THESE

22   DOCUMENTS AS COPYING DOCUMENTS.  THOSE ARE ALL

23   EVIDENCE OF COPYING.

24           WELL, WE KNOW COMPETITIVE ANALYSIS DOES

25   NOT EQUATE TO COPYING.  EVERYBODY DOES COMPETITIVE

1    ANALYSIS.  APPLE DOES COMPETITIVE ANALYSIS.  WE

2    KNOW -- WE TOOK THE DEPOSITION ON A 30(B)(6)

3    WITNESS OF APPLE ON MARKETING, MR. GREG JOSWIAK,

4    AND AT PAGE 182 OF HIS DEPOSITION TRANSCRIPT, LINES

5    7 TO 12, HE WAS ASKED, "AND TO ENSURE THAT YOU

6    CONTINUE TO DELIVER THE BEST BATTERY LIFE, IT IS

7    IMPORTANT TO UNDERSTAND WHAT COMPETITORS ARE DOING;

8    RIGHT?"

9            "ANSWER:  IF YOU'RE GOING TO BE THE BEST

10   AT SOMETHING, YOU HAVE TO KNOW WHAT YOUR

11   COMPETITION IS DOING."

12           HE WAS THEN ASKED:

13           "QUESTION:  AND THE CREATION OF THESE

14   COMPETITOR DOCUMENTS DOESN'T MEAN THAT APPLE HAS

15   INTEREST IN COPYING; RIGHT?

16           "ANSWER:" --

17           MR. MCELHINNY:  EXCUSE ME, YOUR HONOR.

18   THIS IS CONFIDENTIAL INFORMATION.  IF HE WANTS TO

19   SHOW YOU THE TRANSCRIPT, I HAVE NO OBJECTION TO

20   THAT.

21           THE COURT:  ALL RIGHT.  IF YOU SIMPLY

22   WANT TO CITE TO ME THE DOCUMENT, I'LL REVIEW IT

23   AFTER I HAVE THE TRANSCRIPT TO AVOID ANY ISSUES.

24           MR. JOHNSON:  OKAY.

25           AND MR. STRINGER, WHO IS ALSO AN APPLE

1    WITNESS IN CHARGE OF DESIGN, TESTIFIED SIMILARLY.

2    THERE'S NOTHING WRONG WITH COMPETITIVE ANALYSIS,

3    BASICALLY.

4           SO COMPETITIVE ANALYSIS DOES NOT EQUATE

5    TO COPYING.

6           AND WHEN YOU LOOK AT ALL THE DOCUMENTS

7    THAT THEY'VE IDENTIFIED IN CONNECTION WITH THIS

8    MOTION -- AND WE CAN PARSE OUT WHICH ONES THEY

9    CLAIM ARE REALLY PREJUDICE, ARE REALLY PREJUDICING

10   THEM -- BY MY COUNT, YOUR HONOR, IN THEIR OPENING

11   PAPERS, THEY'VE IDENTIFIED 10 DOCUMENTS OUT OF THE

12   12 MILLION PAGES OF DOCUMENTS THAT HAVE BEEN

13   PRODUCED.  THEY IDENTIFIED 10 DOCUMENTS IN THEIR

14   OPENING PAPERS.  IT'S EXHIBITS D THROUGH I, EXHIBIT

15   L, O, P, AND Q.

16          AND OF ALL THE DOCUMENTS THEY IDENTIFIED,

17   THEY CAN BASICALLY BE GROUPED INTO FOUR BASIC

18   CATEGORIES:  EVIDENCE THAT THE DESIGN OF SMART

19   PHONES IS IMPORTANT AND CONSUMERS PREFER APPLE

20   PRODUCTS; ANOTHER CATEGORY IS EVIDENCE THAT SAMSUNG

21   ANALYZED COMPETITORS' PRODUCTS, INCLUDING APPLE'S;

22   EVIDENCE THAT SAMSUNG ANALYZED CERTAIN ASPECTS OF

23   APPLE'S USER INTERFACE; AND EVIDENCE THAT SOME OF

24   SAMSUNG'S CUSTOMERS MAY SWITCH TO APPLE.

25          FOR EACH ONE OF THOSE CATEGORIES, FIRST

1    OF ALL, DOCUMENTS WERE PRODUCED IN CONNECTION WITH

2    THE ORIGINAL PRELIMINARY INJUNCTION THAT JUDGE KOH

3    CONSIDERED, AND WHEN YOU READ JUDGE KOH'S ORDER,

4    APPLE LOST THE PRELIMINARY INJUNCTION PRIMARILY

5    BECAUSE IT FAILED TO SUBMIT ITS OWN EVIDENCE OF THE

6    NEXUS BETWEEN IRREPARABLE HARM AND THE PATENTED

7    FEATURES, IN ADDITION TO OTHER ISSUES, LIKE THE

8    FACT THAT LICENSES HAD BEEN OFFERED UNDER SOME OF

9    THEIR PATENTS.

10           THERE WERE A WHOLE MYRIAD OF REASONS,

11   INCLUDING THE INVALIDITY OF TWO OF THE PATENTS

12   INVOLVED IN THE PRELIMINARY INJUNCTION.

13           SO ALL THIS IS A LONG WAY OF SAYING THIS

14   MOTION IS REALLY A COLLATERAL ATTACK ON THE

15   PRELIMINARY INJUNCTION MOTION.

16           AND THE COURT -- APPLE IS ASKING THE

17   COURT TO SPECULATE AS TO WHAT JUDGE KOH MAY OR MAY

18   NOT HAVE FOUND PERSUASIVE IN THAT REGARD, AND SO

19   I'D SUBMIT THAT THE RIGHT THING TO DO IS TO FILE A

20   MOTION FOR RECONSIDERATION.

21           NOW, IF YOUR HONOR CONCLUDES ULTIMATELY

22   THAT SAMSUNG FOR SOME REASON FAILED TO COMPLY WITH

23   THE ORDERS, THAT FAILURE IS SUBSTANTIALLY JUSTIFIED

24   AND SHOULD NOT WARRANT SANCTIONS.

25           AND, YOU KNOW, RULE 37 TALKS ABOUT THE

1    FACT THAT IF THEIR FAILURE WAS JUSTIFIED OR OTHER

2    CIRCUMSTANCES MAY MAKE AN AWARD OF EXPENSES UNJUST,

3    YOUR HONOR HAS THAT PREROGATIVE.

4         NOW, YOU KNOW, HERE THERE WERE LOTS OF

5    JUSTIFICATIONS FOR -- TO THE EXTENT THAT THERE WERE

6    ANY DOCUMENTS THAT CONTINUED TO TRICKLE IN AFTER

7    THE FACT, WE HAD AN INCREDIBLY COMPRESSED TIME

8    SCHEDULE CAUSED BY APPLE'S PRELIMINARY INJUNCTION,

9    AND ALSO THE REQUEST FOR A SPEEDY TRIAL.

10        WE ALSO HAVE -- YOU KNOW, GOING BACK TO

11   THE PRELIMINARY INJUNCTION PHASE, APPLE WAITED

12   UNTIL THE VERY LAST MINUTE, OCTOBER 26TH, TO SERVE

13   DISCOVERY REQUESTS IN CONNECTION WITH THE

14   PRELIMINARY INJUNCTION.

15        THOSE WERE VERY BROAD DISCOVERY REQUESTS

16   AND, YOU KNOW, WE DID THE BEST THAT WE COULD EVERY

17   STEP OF THE WAY IN THIS CASE WITH RESPECT TO

18   DISCOVERY.

19        WE'VE ALSO HAD FOREIGN LANGUAGE ISSUES

20   AND SEARCH ISSUES BASED ON THE FACT THAT THESE

21   DOCUMENTS MOSTLY ARE COMING FROM ABROAD.

22        WE'VE HAD COMPLICATED TECHNICAL ISSUES

23   AND DECRYPTION ISSUES, AS WELL AS, LIKE I SAID,

24   JUST THE LOGISTICAL ISSUES OF SEARCHING FOR AND

25   MOVING VASTS AMOUNT OF DATA FROM KOREA TO THE

1    UNITED STATES.

2         BUT AT BOTTOM, AS DOCUMENTS AND AS PEOPLE

3    WERE DISCOVERED, WE LOOKED UNDER EVERY ROCK THAT WE

4    COULD FIND FOR ADDITIONAL DOCUMENTS AND WE PRODUCED

5    THEM ALONG THE WAY.

6         NOW, MOST OF THOSE DOCUMENTS, ALMOST ALL

7    OF THOSE DOCUMENTS WERE PRODUCED BEFORE

8    DECEMBER 31ST THAT WERE RELATED TO THE

9    SEPTEMBER 28TH AND THE DECEMBER 22ND ORDER.

10        THE DECEMBER 22ND ORDER ALSO HAD A

11   PROVISION THAT SAID, TO THE EXTENT THAT THERE WERE

12   OTHER DOCUMENTS, PRODUCE THOSE BY JANUARY 15TH.

13        WE DID OUR BEST TO PRODUCE THOSE BY

14   JANUARY 15TH, AND IT'S REFLECTED IN JUST THE SHEER

15   NUMBER OF PEOPLE AND THOUSANDS OF MAN HOURS AND

16   MILLIONS OF DOLLARS THAT SAMSUNG HAS SPENT

17   COLLECTING THESE DOCUMENTS.

18        NOW, AS PEOPLE WERE DEPOSED -- AND,

19   AGAIN, THIS IS ON BOTH SIDES -- I MEAN, YOU KNOW,

20   AT THE VERY FIRST HEARING WE HAD IN THIS CASE, WE

21   KEEP GOING BACK TO WHAT MR. VERHOEVEN WAS SAYING

22   ABOUT WHAT'S GOOD FOR THE GOOSE IS GOOD FOR THE

23   GANDER.

24        YOU KNOW, WE'VE HAD AN INCREDIBLE AMOUNT

25   OF DOCUMENTS PRODUCED BY BOTH PARTIES IN THIS CASE,

127

1    AND THERE HAVE BEEN SIGNIFICANT DISCOVERY ISSUES ON

2    BOTH SIDES.

3              WE'VE -- EVERY STEP OF THE WAY, WHEN WE

4    FOUND DOCUMENTS, WE PRODUCED THEM.

5              NOW, WE KNOW, AS I MENTIONED, THAT THERE

6    WERE CRITICAL DOCUMENTS THAT APPLE PRODUCED AFTER

7    THE PRELIMINARY INJUNCTION HEARING, AND THEY WERE

8    THE SUBJECT OF MOTIONS TO COMPEL THAT YOUR HONOR

9    HEARD, DOCUMENTS INVOLVING INVENTOR NOTEBOOKS,

10   DESIGN INVENTOR E-MAILS, MOCK-UPS, THE PHOTOGRAPHS

11   OF THOSE MOCK-UPS, THE SONY DESIGN E-MAILS,

12   COMPETITIVE ANALYSES, ALL OF THESE DOCUMENTS WERE

13   PRODUCED AFTER THE FACT.

14             AND, YOU KNOW, WE WERE IN HERE IN JANUARY

15   AND YOUR HONOR ISSUED AN ORDER ON JANUARY 27TH TO

16   PRODUCE -- FOR APPLE TO PRODUCE ADDITIONAL

17   DOCUMENTS BY FEBRUARY 3RD.

18             NOW, WE'RE STILL WAITING FOR A LOT OF

19   THOSE DOCUMENTS THAT WERE SUPPOSED TO BE PRODUCED

20   BY FEBRUARY 3RD.  WE HAVEN'T BROUGHT A MOTION TO

21   COMPEL ASSOCIATED WITH THAT.  WE'RE NOT ABLE TO

22   BRING A MOTION TO COMPEL AS PART OF THAT.  THERE

23   HAVE BEEN ISSUES ASSOCIATED WITH LEAD COUNSEL MEET

24   AND CONFER.

25             BUT, YOU KNOW, THE BOTTOM LINE IS WE'VE

1    BEEN DOING OUR BEST ASSOCIATED WITH THAT.

2             AND, YOU KNOW, AS I MENTIONED AT THE

3    BEGINNING, I MEAN, APPLE HAS PRODUCED A MILLION --

4    THEY PRODUCED A MILLION PAGES OF DOCUMENTS IN THE

5    LAST EIGHT DAYS OF DISCOVERY IN THIS CASE.  THEY

6    PRODUCED 210,000 PAGES AFTER MARCH 8TH IN THIS CASE

7    ALONE.

8             SO EVERY STEP OF THE WAY, WE, ON OUR

9    SIDE, FEEL LIKE WE'VE BEEN DOING EVERYTHING WE CAN,

10   ONLY TO BE CONFRONTED WITH, YOU KNOW, SITUATIONS ON

11   THE OTHER SIDE WHICH ARE VERY -- WHICH HAVE BEEN

12   INCREDIBLY FRUSTRATING FOR US FOR THE SAME TOKEN.

13            I WISH I HAD THOSE PRELIMINARY INJUNCTION

14   DOCUMENTS, THE INVENTORS' NOTEBOOKS, THE DOCUMENTS

15   ASSOCIATED WITH THE MOCK-UP, I WISH I HAD THAT FOR

16   THE PRELIMINARY INJUNCTION.

17            I MEAN, WE'RE GOING IN NOW FOR AN

18   ARGUMENT NEXT WEEK IN THE FEDERAL CIRCUIT WHERE I

19   THINK THE RECORD IS INCOMPLETE ON MY SIDE AND, YOU

20   KNOW, I'M SURE MR. MCELHINNY WILL SAY THE SAME

21   THING ABOUT HIS SIDE.

22            BUT, YOU KNOW, I HAVE THE SAME ARGUMENTS

23   AND I FEEL VERY STRONGLY THAT THERE WERE DOCUMENTS

24   THAT SHOULD HAVE BEEN PRODUCED.

25            THE PARTIES OPERATED -- THEY HAD AN

129

1    AGREEMENT, AND THEY OPERATED UNDER THE BELIEF THAT

2    DISCOVERY ON THE PRELIMINARY INJUNCTION WAS GOING

3    TO BE NARROWLY TAILORED AND EVERYTHING ELSE WAS

4    GOING TO CATCH UP.  GENERAL DISCOVERY WOULD

5    BASICALLY PROCEED IN A WAY -- AS EXPEDITIOUSLY AS

6    WE COULD TO PRODUCE EVERYTHING ASSOCIATED WITH YOUR

7    HONOR'S ORDERS.

8         SO I WANT TO ADDRESS BRIEFLY, IF YOUR

9    HONOR WOULD LIKE TO HEAR, THE SCOPE OF THE FEE

10   REQUEST.

11        THE COURT:  WELL, I DO HAVE OTHER PARTIES

12   THAT NEED TO BE HEARD AND MY TIME IS RUNNING SHORT

13   IN THIS MATTER.  I'LL GIVE YOU ONE LAST POINT AND

14   THEN I HAVE A FEW QUESTIONS I'D LIKE TO ASK.

15        MR. JOHNSON:  OKAY.

16        THE COURT:  SO GO AHEAD.

17        MR. JOHNSON:  THEIR STANDING -- YOU KNOW,

18   AS THE LEW AND THE WILSON CASES, AND EVEN WRIGHT

19   AND MILLER SAYS, YOU KNOW, TO THE EXTENT THAT ANY

20   EXPENSES CAN BE RECOVERED, THEY NEED TO BE COVERED

21   BY -- OR IT'S THOSE EXPENSES THAT ARE CAUSED BY THE

22   FAILURE TO OBEY AN ORDER.

23        ALL RIGHT.  THE PRELIMINARY INJUNCTION

24   EXPENSES, WHICH PRESUMABLY APPLE, AT THE VERY FIRST

25   HEARING INDICATED THEY WERE GOING TO BE FILING, SO

1      PRELIMINARY INJUNCTION EXPENSES SPENT BEFORE ANY OF

2      THESE ORDERS EVEN OCCURRED REFLECTS THE FACT THAT

3      THIS -- THAT THEIR DEMAND IS JUST WAY, WAY TOO

4      BROAD AND IS NOT TIED TO THE CAUSE OF ANY ALLEGED

5      VIOLATION.

6                AND I GO BACK TO THE FACT OF

7      JUSTIFICATION HERE, BECAUSE I REALLY BELIEVE THAT

8      FROM -- YOU KNOW, THAT WE SUBSTANTIALLY COMPLIED

9      WITH THE ORDERS.

10               IF YOU'RE GOING TO ASK ME WHETHER WE

11     ABSOLUTELY COMPLIED WITH THE ORDERS ON

12     DECEMBER 31ST AND JANUARY 15TH, THERE WERE

13     DOCUMENTS THAT WERE DISCOVERED THAT WERE PRODUCED

14     AFTER JANUARY 15TH.

15               THE COURT:  SO DOES THAT MEAN YOU

16     VIOLATED MY ORDER?

17               MR. JOHNSON:  NO, YOUR HONOR, I DON'T

18     THINK IT MEANS THAT WE VIOLATED --

19               THE COURT:  SO WHEN MY ORDER BACK IN

20     SEPTEMBER SAYS "ALL," THE FACT THAT DOCUMENTS ARE

21     PRODUCED WELL AFTER THAT FIRST DEADLINE, THAT'S NOT

22     A VIOLATION?

23               WHETHER IT'S JUSTIFIED, WHETHER FEES ARE

24     APPROPRIATE, YOU CAN'T AT LEAST AGREE THAT THERE

25     WAS A VIOLATION OF MY ORDER?

1           MR. JOHNSON:  THE SPIRIT -- THE LETTER --

2     THE SPIRIT OF YOUR ORDER -- AND PERHAPS WE'RE, WE

3     ARE LOOKING AT SEMANTICS.  I READ YOUR ORDER AND I

4     ACTUALLY THINK THAT YOUR DECEMBER 22ND ORDER,

5     THERE'S SOME AMBIGUITY IN THE --

6           THE COURT:  WHERE WAS IT AMBIGUOUS?

7           MR. JOHNSON:  IN THE PORTION -- I THINK

8     THERE'S AMBIGUITY WITH RESPECT TO WHETHER THERE WAS

9     AN OBLIGATION TO SEARCH BEYOND THE CUSTODIANS.

10           NOW, I'LL TELL YOU, WE DID NOT TREAT

11     IT -- WE DID NOT LOOK AT IT THAT WAY.  WE TREATED

12     IT AS A BROAD ORDER THAT REQUIRED US TO PRODUCE

13     EVERYTHING AS MUCH AS -- BY JANUARY 15TH.

14           THE COURT:  IF YOU HAD TO PRODUCE

15     EVERYTHING, WHAT'S AMBIGUOUS ABOUT THAT?

16           MR. JOHNSON:  WELL, WE -- I'M SAYING THAT

17     IT'S SUBJECT TO SOME AMBIGUITY WITH RESPECT TO

18     WHETHER THE DOCUMENTS NEED TO BE PRODUCED FOR

19     ADDITIONAL CLAIMS AND ADDITIONAL PRODUCTS FROM THE

20     CUSTODIANS OR FROM EVERYBODY WITHIN THE COMPANY.

21           AND I DO THINK THAT THERE'S SOME

22     AMBIGUITY WITH RESPECT TO THAT.

23           SO -- AND I'M STANDING HERE BEFORE YOUR

24     HONOR SAYING THAT WE TREATED IT BROADLY AND WE

25     COLLECTED DOCUMENTS ASSOCIATED WITH IT.

1        YOU ASKED ME IF THERE WAS A VIOLATION,

2   AND I THINK THAT'S WHY I'M HESITATING ON THAT,

3   BECAUSE I THINK THAT THERE -- YOU KNOW, I DON'T

4   THINK WE VIOLATED AN ORDER HERE.

5        AND IF -- TO THE EXTENT THAT YOUR HONOR

6   DISAGREES, WE WERE JUSTIFIED FOR ALL THE REASONS

7   I'VE DESCRIBED.

8        THE COURT:  SO ON SEPTEMBER 28TH, I SAY

9   THAT "SAMSUNG IS TO PRODUCE ALL DOCUMENTS

10  REFERENCING THE APPLE PRODUCTS ALLEGED BY APPLE TO

11  EMBODY ONE OR MORE OF THE ORNAMENTAL OR UTILITY

12  PATENT FEATURES AT ISSUE," AND WHEN I SAY "ALL

13  MEANS ALL," YOUR POSITION IS THAT THERE'S AN

14  AMBIGUITY CREATED IN A REFERENCE TO THAT ORDER AND

15  AN ORDER THAT ISSUES A FEW MONTHS LATER ON

16  DECEMBER 22ND?

17       MR. JOHNSON:  I'M SAYING THAT THERE

18  ARE -- I DIDN'T TREAT IT THAT WAY, OUR TEAM DIDN'T

19  TREAT IT THAT WAY, BUT IT COULD BE READ THAT WAY.

20       THE COURT:  WELL, DID YOU READ IT THAT

21  WAY?

22       MR. JOHNSON:  I DID -- I DID -- I DID NOT

23  READ IT THAT WAY, AND I READ IT --

24       THE COURT:  OKAY.  SO IT SOUNDS LIKE WE

25  AGREE THAT ALL MEANS ALL AND THAT THERE WERE

1    DOCUMENTS THAT FALL WITHIN THE DEFINITION OF "ALL"

2    PRODUCED AFTER MY DEADLINES.  RIGHT?

3              MR. JOHNSON:  THAT'S CORRECT.

4              THE COURT:  OKAY.  SO HOW IS THAT NOT A

5    VIOLATION?

6              MR. JOHNSON:  WELL, BECAUSE I THINK, LIKE

7    I SAID, THERE IS SOME AMBIGUITY AS TO WHETHER THE

8    ORDER COVERS THE CUSTODIANS OR SOMETHING BROADER

9    THAN THAT.

10             THE COURT:  ALL RIGHT.  MY NEXT QUESTION

11   IS, ASSUMING I DISAGREE WITH YOUR POSITION AND

12   THERE IS AT LEAST ONE VIOLATION OF MY ORDER, TO SAY

13   NOTHING OF MANY VIOLATIONS OF MY ORDER, WHAT

14   SANCTIONS WOULD BE APPROPRIATE TO REMEDY THE HARM

15   INFLICTED?

16             AND I'M NOT TALKING ABOUT THE HARM

17   NECESSARILY TO APPLE.  I'M TALKING ABOUT THE HARM

18   TO THE SYSTEM, THE SYSTEM THAT EVERYONE IN THIS

19   COURT RELIES UPON IN ORDER TO ASSURE AN EFFICIENT

20   PROSECUTION OF ANY LITIGATION.

21             IF THE COURT ISSUES ORDERS TO PRODUCE ALL

22   AND ALL IS NOT COMPLIED WITH, WHAT OTHER OPTION OR

23   TOOL DO I HAVE AT MY DISPOSAL OTHER THAN TO IMPOSE

24   A SANCTION?

25             MR. JOHNSON:  WELL, THE HARD PART -- THE

1    HARD PART, WHICH YOUR HONOR I'M SURE APPRECIATES,

2    IS WHEN YOU HAVE A COMPANY, WHETHER IT'S 40,000

3    PEOPLE OR 200,000 EMPLOYEES, AND YOU SAY ALL IS ALL

4    AND YOU ASK ME IF -- AND I STAND BEFORE YOU AND YOU

5    SAY, "MR. JOHNSON, HAVE YOU PRODUCED EVERY SINGLE

6    DOCUMENT THAT IS RELEVANT TO THIS CASE?" IT'S SET

7    UP, IN MY MIND, FOR -- IT'S IMPOSSIBLE FOR ME TO

8    STAND HERE AND SAY, "YES, YOUR HONOR, EVERYTHING

9    HAS ABSOLUTELY BEEN PRODUCED."

10          I MEAN, IT'S -- SO THE HARM IS -- IN THIS

11   CASE WE WERE UNDER AN INCREDIBLY TIGHT SCHEDULE,

12   AND WE STILL ARE, AND WE'VE BEEN DOING THE BEST WE

13   CAN.

14          THERE'S NO BAD FAITH ON OUR PART.

15   THERE'S NO -- THERE'S NO HIDING OF ANY DOCUMENTS OR

16   CONCEALING OF ANY DOCUMENTS, WHICH IS WHAT THE

17   CASES TALK ABOUT ON APPLE'S SIDE.

18          AND, YOU KNOW, WHEN YOU LOOK AT THE

19   SEARCHES THAT WE DID AND YOU LOOK AT -- YOU KNOW,

20   WHICH WE SHARED WITH APPLE, I MEAN, THERE'S

21   TRANSPARENCY IN THIS SEARCH PROCESS FROM THE

22   BEGINNING.  RIGHT?

23          WE WERE HERE LAST FALL, YOUR HONOR, AND

24   YOU SAID APPLE -- SAMSUNG, HAVE YOU SHARED THE

25   SEARCH REQUEST WITH APPLE?

135

1          AND YOU ASKED APPLE THE SAME THING, AND

2     YOU SAID EACH SIDE SHOULD DISCLOSE THEM TO EACH

3     OTHER.

4          THERE'S BEEN MORE TRANSPARENCY IN THIS

5     CASE THAN, FRANKLY, IN ALMOST ALL MY OTHER CASES

6     THAT I HAVE.

7          AND IT'S BECAUSE OF THE TIME CONSTRAINTS

8     AND REALLY THE FACT THAT WE'VE HAD THESE

9     DEPOSITIONS OCCURRING -- I MEAN, THEY REALLY WERE,

10    YOU KNOW, SEQUENCED WITH APPLE'S WITNESSES GOING

11    FIRST ON THEIR INVENTORS, OUR INVENTORS GOING NEXT,

12    AND THEN ALL THE OTHER DEPOSITIONS OCCURRING OF ALL

13    THE OTHER WITNESSES.

14         WHEN THOSE STARTED OCCURRING, THEN THAT'S

15    WHEN ADDITIONAL DOCUMENTS STARTED TO BE FOUND ON

16    BOTH SIDES.  I MEAN, THAT'S WHY APPLE PRODUCED

17    THREE MILLION PAGES OF DOCUMENTS SINCE JANUARY.

18         THEY'VE PRODUCED -- I MEAN, THEY PRODUCED

19    ANOTHER FIVE MILLION JUST IN THE ITC IN THE LAST

20    MONTH.

21         SO WHEN YOU ASK WHAT, WHAT IS IT THAT WE

22    CAN DO, YOU KNOW, IN TERMS OF WHAT AN APPROPRIATE

23    SANCTION IS ASSOCIATED WITH THIS, I -- I

24    RESPECTFULLY SUBMIT THAT NO SANCTION IS WARRANTED

25    HERE BECAUSE THE SANCTION IS UNFAIR, UNWARRANTED.

1           TO THE EXTENT THAT THERE WERE ADDITIONAL

2    DOCUMENTS THAT CAME IN AFTER THE FACT, THEY WERE

3    JUSTIFIED.

4           AND THERE'S BEEN NO PREJUDICE ON THEIR

5    SIDE.  THEY'VE BEEN ABLE TO TAKE THE DEPOSITIONS OF

6    PEOPLE.  THEY'VE GOT THE OPPORTUNITY TO TAKE TEN

7    MORE DEPOSITIONS AND REOPEN DEPOSITIONS.

8           SO, YOU KNOW, LIKE I SAID, THERE HAVE

9    BEEN -- ON BOTH SIDES THERE HAVE BEEN DISCOVERY

10   ISSUES AND WE'VE TAKEN THESE OBLIGATIONS VERY, VERY

11   SERIOUSLY FROM THE BEGINNING.

12          THE COURT:  ALL RIGHT.  THANK YOU,

13   MR. JOHNSON.

14          MR. MCELHINNY, BRIEF REBUTTAL?

15          MR. MCELHINNY:  JUST ONE POINT, YOUR

16   HONOR.  WELL, A COUPLE POINTS.

17          MOTION FOR RECONSIDERATION ON THE

18   PRELIMINARY INJUNCTION, THAT INJUNCTION IS ON

19   APPEAL TO THE FEDERAL CIRCUIT, SO THERE ARE

20   JURISDICTIONAL ISSUES ABOUT THAT.

21          YOUR HONOR, CLEARLY IT'S ALL OVER THE

22   CALENDAR HERE, WHICH IS THAT THE PRODUCTION WAS DUE

23   IN SEPTEMBER; YOUR FIRST ORDER ORDERED THEM

24   PRODUCED BY OCTOBER AND PRODUCING THEM IN DECEMBER

25   IS ALREADY IN VIOLATION OF YOUR FIRST ORDER; AND

1    THEN THERE WERE PRODUCTIONS AFTER THAT.

2              BUT THE ONE POINT I WANT TO FOCUS ON,

3    BECAUSE I DON'T -- THIS IS NOT A SMALL MOTION TO

4    ME, AND WINNING SANCTIONS IS, IS NOT SOMETHING THAT

5    I DO A LOT ACTUALLY.

6              BUT MR. JOHNSON MADE A POINT.  HE SAID,

7    "WE DIDN'T TRY TO HIDE ANYTHING," AND BY THAT HE

8    MEANS SAMSUNG AND HIS FIRM.  HE SAYS, "WE DIDN'T

9    TRY TO HIDE ANYTHING."

10             AS I POINTED OUT THIS MORNING, AS

11   MR. QUINN POINTED OUT, WE TOOK A 30(B)(6)

12   DEPOSITION IN THIS CASE, AND WE TOOK IT ON

13   SEPTEMBER 21ST, AND THEIR 30(B)(6) WITNESS

14   TESTIFIED UNDER OATH, WITH RESPECT TO THE PRODUCTS

15   AT ISSUE, I ASKED EACH HARDWARE DESIGNER --

16             MR. JOHNSON:  EXCUSE ME, YOUR HONOR.  I'M

17   SORRY, BUT THIS IS UNDER SEAL FOR THE SAME REASON.

18             MR. MCELHINNY:  WELL, I READ IT BEFORE.

19   OKAY.  BUT I READ IT BEFORE AND THEY GOT THAT

20   TESTIMONY.

21             AND THEN WHAT'S MORE IMPORTANT IS THAT ON

22   SEPTEMBER 28TH, MS. MAROULIS CAME IN THIS COURT AND

23   STOOD BEFORE YOU AND SAID, ABOUT APPLE, "THEY ARE

24   LOOKING FOR A SMOKING GUN DOCUMENT, A DOCUMENT THAT

25   SAYS WE COPIED SOMETHING FROM APPLE.  WE DON'T HAVE

1    THOSE DOCUMENTS.  WE HAVE TAKEN A 30(B)(6)

2    DEPOSITION LAST WEEK" -- AND YOUR HONOR, OF COURSE,

3    SAYS -- YOU INTERRUPT AND SAY, "WELL, THAT'S ONLY

4    BASED ON WHO YOU'VE TALKED TO."

5         AND SHE SAYS, "BUT I DO WANT TO TALK

6    BRIEFLY ABOUT THE 30(B)(6) DEPOSITION OF THE

7    SAMSUNG REPRESENTATIVE WHO WAS ASKED SPECIFICALLY

8    WHETHER HE INTERVIEWED THE DESIGNER OF THE PRODUCTS

9    AT ISSUE.  HE TESTIFIED HE SPOKE WITH ALL OF THEM

10   AND INQUIRED EXTENSIVELY WHETHER ANY OF THEM

11   CONSIDERED APPLE PRODUCTS WHEN DESIGNING THEIR

12   PRODUCTS, NOT JUST COPYING, BUT ANY CONSIDERATION

13   OF FRAME OF REFERENCE.  THEY TESTIFIED THEY HAVE

14   NOT."

15        THAT WAS THE ARGUMENT THAT WAS MADE BY A

16   SAMSUNG LAWYER BEFORE YOU, AND THE ONLY DIFFERENCE

17   BETWEEN THAT ARGUMENT AND THE PRELIMINARY

18   INJUNCTION WAS THAT THEY LOST THE ARGUMENT IN FRONT

19   OF YOU.

20        THE COURT:  ALL RIGHT.

21        MR. JOHNSON:  YOUR HONOR, JUST TO RESPOND

22   BRIEFLY --

23        THE COURT:  BRIEFLY.

24        MR. JOHNSON:  -- REFERRING TO WHAT

25   MR. DENISON SAID.

1          AS I SAID, THERE'S A DISTINCTION BETWEEN

2     COPYING AND COMPETITIVE ANALYSIS.  MR. DENNISON'S

3     STATEMENT IS TRUE.  I MEAN, HE INTERVIEWED

4     WITNESSES TO PREPARE FOR THE 30(B)(6), AND THAT'S

5     WHAT HE TESTIFIED TO.

6          NOW, THEY'LL HAVE THE OPPORTUNITY TO

7     RAISE THAT AT TRIAL.  THEY'LL HAVE THE OPPORTUNITY

8     TO IMPEACH MR. DENISON OR RAISE WHATEVER ARGUMENTS

9     THEY WANT TO RAISE WITH RESPECT TO THAT.  THEY CAN

10    PLAY IT IN HIS OPENING AND WE CAN HEAR ABOUT THAT

11    LATER ON.

12         BUT THAT DOES NOT RISE TO THE LEVEL OR

13    WARRANT SANCTIONS IN CONNECTION WITH THIS.

14         AND WHEN YOU LOOK MORE CAREFULLY AT THE

15    ACTUAL LANGUAGE, WHICH I ENCOURAGE YOUR HONOR TO

16    DO, THAT MR. DENISON TESTIFIED TO, WHAT HE SAID WAS

17    HE'S NOT TYING ANY PARTICULAR STUDY TO THE

18    DEVELOPMENT OF THE SAMSUNG PRODUCTS.

19         THERE'S NO TESTIMONY THAT AN ENGINEER

20    SOMEWHERE HAD THE APPLE PRODUCT IN FRONT OF THEM

21    WHEN THEY WERE DESIGNING THE SAMSUNG PRODUCTS AT

22    ISSUE.

23         AND JUST TO GO BACK BRIEFLY TO YOUR

24    HONOR -- YOU KNOW, UNDER MR. MCELHINNY'S VIEW OF

25    THE WORLD, IN CONNECTION WITH YOUR SEPTEMBER 22ND

                                                        140

1    ORDER, THERE WOULD HAVE BEEN AN OBLIGATION FOR US,

2    SAMSUNG, TO HAVE PRODUCED EVERYTHING UNDER THE SUN

3    BY OCTOBER 7TH, AND THAT SIMPLY JUST WAS NOT --

4    THAT DOES NOT COMPORT WITH JUDGE KOH'S JULY ORDER

5    WHICH SAYS PRELIMINARY INJUNCTION DISCOVERY IS

6    SUPPOSED TO BE NARROWLY TAILORED IN THIS RESPECT.

7          NOW, THERE WASN'T AN ATTEMPT TO CONCEAL

8    ANYTHING OR WITHHOLD ANYTHING, BUT THE PARTIES, YOU

9    KNOW, BOTH REACTED AND PRODUCED DOCUMENTS UNDER THE

10   TIME CONSTRAINTS THERE, AND THAT'S WHY WHEN YOU

11   LOOK AT THE FACT THAT, YOU KNOW, BY OCTOBER 13TH,

12   APPLE HAD ONLY PRODUCED 150,000 PAGES OF DOCUMENTS

13   AND, SINCE THEN, THEY'VE PRODUCED ANOTHER 24

14   MILLION PAGES OF DOCUMENTS.

15         SO I WOULD JUST STAND BEFORE YOUR HONOR

16   AND ASK YOU TO RECONSIDER, OR TO CONSIDER THAT

17   SANCTIONS HERE SIMPLY ARE NOT WARRANTED.

18         THE COURT:  ALL RIGHT.

19         MR. MCELHINNY:  I'M SORRY, YOUR HONOR.  I

20   JUST -- IT JUST HAPPENED AGAIN.

21         THE COURT:  TEN SECONDS.

22         MR. MCELHINNY:  IT JUST HAPPENED AGAIN.

23   IT JUST HAPPENED AGAIN.  MR. JOHNSON JUST TOLD YOU

24   THERE IS NO TESTIMONY IN THIS CASE THAT A SAMSUNG

25   DESIGNER HAD AN APPLE PRODUCT NEXT TO HIM WHILE HE

1    WAS DOING THE DESIGN.  HE JUST TOLD YOU THAT.

2              ONE, I DOUBT THAT HE KNOWS ALL THIS.

3              BUT I CAN TELL YOU THAT I TOOK THE

4    DEPOSITION OF WOOKYUN KHO, K-H-O, AND HE TESTIFIED

5    TO EXACTLY THAT.

6              SO YOU ARE GETTING REPRESENTATIONS IN

7    THESE HEARINGS THAT ARE SIMPLY FACTUALLY NOT TRUE.

8              THE COURT:  ALL RIGHT.  THE MOTIONS ARE

9    SUBMITTED.

10             THANK YOU FOR YOUR ARGUMENTS TODAY.

11   YOU'LL HAVE A RULING FROM ME SHORTLY.  HAVE A GOOD

12   AFTERNOON.

13             (WHEREUPON, THE PROCEEDINGS IN THIS

14   MATTER WERE CONCLUDED.)

15

16

17

18

19

20

21

22

23

24

25

142

1

2

3

4                    CERTIFICATE OF REPORTER

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23          /S/
            _____
24          LEE-ANNE SHORTRIDGE, CSR, CRR
            CERTIFICATE NUMBER 9595
25