UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No.: C 11-1846 LHK (PSG) |
| Plaintiff, | **ORDER (1) GRANTING-IN-PART DEFENDANTS' MOTION TO COMPEL PRODUCTION OF CERTAIN DESIGN PATENTS; (2) GRANTING-IN-PART DEFENDANTS' MOTION TO COMPEL PRODUCTION OF MATERIALS FROM RELATED PROCEEDINGS AND TO ENFORCE DECEMBER 22, 2011 COURT ORDER** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD, a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | **(Re: Docket Nos. 781, 782)** |

In this patent infringement suit, Defendants and counter-claimants Samsung Electronics Co., LTD., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") bring two motions before the court. Samsung moves to compel the production of certain design patent applications, and separately moves to enforce an earlier court order regarding production of certain deposition transcripts as well as to compel the production of materials from related proceedings. Plaintiff Apple Inc. ("Apple") opposes both motions. On April 9, 2012, the parties appeared for hearing. Having considered the argument and evidence presented, the court hereby GRANTS-IN-PART Samsung's motions.

## I. BACKGROUND

Samsung's motions arise out of a series of discovery requests propounded in August 2011, including the following:

- Request for Production ("RFP") No. 75 requesting "all documents relating to any lawsuit, administrative proceeding, or other proceeding involving any of the Apple accused products, Apple IP, or patents related to the Apple patents-in-suit, including, without limitation, any pleading, paper, motion, affidavit, declaration, report, decision, or order, for cases to include [10 listed cases]."

- RFP No. 97 requesting "all documents and communications concerning the patentability, novelty, scope, infringement, validity, invalidity, enforceability, or unenforceability of any claim in any of the Apple IP."

- RFP No. 98 requests "all documents and things relating to any information, including patents, publications, prior knowledge, public uses, sales, or offers for sale, that may constitute, contain, disclose, refer to, relate to, or embody any prior art to any alleged invention claimed by the Apple IP."

- RFP No. 81 requesting "the prosecution histories of the Apple IP, including all prior art cited therein, patents related to the Apple patents-in-suit, and any foreign counterpart patents, registrations, or applications to the Apple IP or patents related to the Apple patents-in-suit, including, without limitation, any reexamination and reissue applications."

- RFP No. 82 requesting "all documents and things relating to the preparation, filing and /or prosecution of the Apple IP, patents related to the Apple patents-in-suit, and any foreign counterpart patents or patent applications to the Apple patents-in-suit or patents related to the Apple patents-in-suit, including, without limitation, any reexamination an reissue applications."[1]

Samsung defines "Apple IP" in its first set of RFPs as "the Apple patents-in-suit, Apple trade dress, and Apple trademarks."[2] In December 2011, Samsung also propounded RFP No. 362, requesting "all documents relating to any applications or other attempts by Apple to obtain any design patent registration for the iPad 2, whether in a foreign country or in the U.S."[3]

Apple timely objected to these RFPs on a number of grounds, which for the purposes of the instant motions can be summarized as: overly broad, unduly burdensome, not relevant to the extent they seek information regarding patents and claims not asserted by Apple, and improper to the

---

[1] Docket No. 781-4 (Hutnyan Decl., Ex. A) (Samsung's First Set of Requests for Production to Apple Inc.).

[2] *Id.* ¶ 38.

[3] Docket No. 781-3 ¶ 8 (Hutnyan Decl).

2
Case No.: 11-1846 LHK (PSG)
ORDER

extent they seek the production of non-public patent applications and documents that are subject to an applicable privilege or immunity.[4] As a result of discussions between the parties, Apple has produced or agreed to produce a substantial volume of responsive documents, including more than 3,000 patents and published applications for patents in the family trees of the patents-in-suit, foreign counterpart patents, and cited prior art.[5] With respect to Samsung's request for documents relating to other lawsuits or administrative proceedings involving the accused Apple products or patents related to the Apple patents-in-suit, Apple has produced transcripts of prior deposition testimony of certain Apple witnesses, and has readied for production certain court documents from litigation involving the patents-in-suit.[6] A subset of this production was the subject of the court's December 22, 2011 order ("December 22 Order") on an earlier Samsung motion to compel, as discussed in detail below.

Notwithstanding these productions, Samsung argues that Apple has failed to produce responsive documents as to a number of these requests, and furthermore has failed to comply with the court's December 2011 order pertaining to the production of transcripts from other litigation and proceedings. The court addresses each of Samsung's motions in turn.

## II.  DISCUSSION

### A.  Motion to Compel Production of Documents Relating to the Patents-in-Suit

Based on RFP Nos. 81, 82, 98, 97, and 362, Samsung moves to compel production of all documents relating to efforts by Apple to obtain design patents relating to the patents-in-suit, including products that Apple claims embody the patents-in-suit. Samsung specifically seeks production of Apple's unpublished and pending design patents that relate to the patents-in-suit or

---

[4] *See* Docket No. 781 at i-iv (Def.'s Mot. to Compel Production of Documents Relating to the Patents-in-Suit); Docket No. 782 at 1-3 (Def.'s Mot. to Compel Production of Material from Related Proceedings and to Enforce December 22, 2011 Court Order).

[5] *See* Docket No. 827-1 ¶ 2 (Bartlett Decl).

[6] *See* Docket No. 835 at 1, 4 (Pl.'s Opp'n to Def.'s Mot. to Compel Production of Materials from Related Proceedings).

3
Case No.: 11-1846 LHK (PSG)
ORDER

extent they seek the production of non-public patent applications and documents that are subject to an applicable privilege or immunity.[4] As a result of discussions between the parties, Apple has produced or agreed to produce a substantial volume of responsive documents, including more than 3,000 patents and published applications for patents in the family trees of the patents-in-suit, foreign counterpart patents, and cited prior art.[5] With respect to Samsung's request for documents relating to other lawsuits or administrative proceedings involving the accused Apple products or patents related to the Apple patents-in-suit, Apple has produced transcripts of prior deposition testimony of certain Apple witnesses, and has readied for production certain court documents from litigation involving the patents-in-suit.[6] A subset of this production was the subject of the court's December 22, 2011 order ("December 22 Order") on an earlier Samsung motion to compel, as discussed in detail below.

Notwithstanding these productions, Samsung argues that Apple has failed to produce responsive documents as to a number of these requests, and furthermore has failed to comply with the court's December 2011 order pertaining to the production of transcripts from other litigation and proceedings. The court addresses each of Samsung's motions in turn.

## II.  DISCUSSION

### A.  Motion to Compel Production of Documents Relating to the Patents-in-Suit

Based on RFP Nos. 81, 82, 98, 97, and 362, Samsung moves to compel production of all documents relating to efforts by Apple to obtain design patents relating to the patents-in-suit, including products that Apple claims embody the patents-in-suit. Samsung specifically seeks production of Apple's unpublished and pending design patents that relate to the patents-in-suit or

---

[4] *See* Docket No. 781 at i-iv (Def.'s Mot. to Compel Production of Documents Relating to the Patents-in-Suit); Docket No. 782 at 1-3 (Def.'s Mot. to Compel Production of Material from Related Proceedings and to Enforce December 22, 2011 Court Order).

[5] *See* Docket No. 827-1 ¶ 2 (Bartlett Decl).

[6] *See* Docket No. 835 at 1, 4 (Pl.'s Opp'n to Def.'s Mot. to Compel Production of Materials from Related Proceedings).

Case No.: 11-1846 LHK (PSG)
ORDER

their claimed commercial embodiments.[7] Samsung justifies its request on the basis that there is no distinction between published and unpublished patent applications for relevance purposes,[8] and that any confidentiality interest is addressed by the parties' protective order. Apple responds that Samsung's RFPs do not cover the broad scope of the request framed in this motion and that Samsung has failed to offer a justification sufficient to meet the heightened standard that applies to the production of still-confidential patent applications.

Under the federal rules, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[9] Yet courts have applied a heightened relevancy standard in the case of pending patent applications and related materials.[10] This heightened standard requires a court to "weigh the requesting party's interest in materials against the objector's legitimate interest in secrecy."[11] In the absence of any dispute between the parties that the heightened standard applies here – and in light of the clear congressional determination that a design patent application is entitled to a period of confidentiality up until issuance of the patent[12] – the court proceeds on that basis.

---

[7] Apple has not objected to producing documents relating to issued patents or published patent applications.

[8] For example, Apple has claimed in the course of the litigation that the iPad 2 is a commercial embodiment of the asserted D'889 patent. Samsung argues that any pending or unpublished patent applications seeking to secure protection for the design embodied in the iPad 2 will necessarily contain relevant information and admissions about what distinguishes the design applications related to the iPad 2 from prior art and earlier patents, such as the D'889 patent. Samsung seeks a baseline against which the jury may compare differences between Samsung's designs and the asserted design patents, just as Apple presumably has differentiated between its asserted patents and prior art. The same rationale applies to all applications for design patents relating to all other products Apple claims embody the patents-in-suit.

[9] *See* Fed. R. Civ. P. 26(b)(1).

[10] *See, e.g., ICU Medical, Inc. v. B. Braun Med., Inc.*, 224 F.R.D. 461, 462 (N.D. Cal. 2002) (holding it "well established that materials relating to a pending patent application are confidential, and therefore enjoy a degree of protection against disclosure").

[11] *Id.*; *see also Microsoft Corp. v. Multi-Tech Systems, Inc.*, No. 00-1412 (ADM/RLE), 2001 U.S. Dist. LEXIS 23155, at *18-19 (D. Minn. Dec. 14, 2001); *Vibrosaun USA, Inc. v. Saunamassage Int'l, Inc.*, No. 87-0656-CV-W-6, 1988 U.S. Dist. LEXIS 10574, at *8 (W.D. Mo. Sept. 19, 1988); *Ideal Toy Corp. v. Tyco Indus.*, 478 F. Supp. 1191, 1194-95 (D. Del. 1979).

[12] *See* 35 U.S.C. § 122(b)(2)(A)(iv) (excepting design patent applications from publication after the expiration of 18 months from the earliest filing date).

4
Case No.: 11-1846 LHK (PSG)
ORDER

The court finds as a preliminary matter that the RFPs at issue do not encompass the full scope of what Samsung demands by its motion. RFP No. 362, requesting documents relating to applications or other attempts to obtain any design patent protection, pertains only to the iPad 2. The other RFPs that Samsung relies on reference a wide range of documents and materials pertaining to Apple IP, prior art to any alleged invention claimed by the Apple IP, and to any claim in the Apple IP. But "Apple IP" is defined only as Apple's patents-in-suit, trade dress, and trademarks, and does not include later-filed patents that Apple claims to be embodied by the same products. Samsung's motion to compel must be limited by the bounds of its document requests. The court therefore will address Samsung's motion only to the extent that it seeks to compel the production of design patent applications relating to the patents-in-suit or to the iPad 2.

Using examples of published Apple patents already implemented in products that are commercially available, Samsung has shown that a pending patent application asserts the novelty and nonobviousness of the ornamental design being claimed, and that such an assertion may be highly relevant to evaluating the scope of the design patents-in-issue. The court thus finds the relevance of pending design patent applications – at least those that relate to the patents-in-suit or to the same or similar design features as those claimed by Apple in the iPad 2 to embody one or more of the patents-in-suit – to be sufficient for their production, unless outweighed by Apple's competing confidentiality interest.[13]

Apple contends that the significant risk of competitive harm that could result from disclosure of its pending design patents far outweighs any relevance of the materials to Samsung's defense or counterclaims. Apple further contends that the strict protections of the parties' protective order for the treatment of materials marked "Highly Confidential – Attorneys' Eyes Only" are insufficient, because Samsung's outside counsel is advising Samsung in connection with

---

[13] *See Caliper Technologies Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 562 (N.D. Cal. 2003) ("Many courts have concluded that [pending, abandoned, and issued patent] applications are relevant because they 'may contain information or admissions that clarify, define or interpret the claims of the patent in suit.") (quoting *Tristrata Tech. v. Neoteric Cosmetics*, 35 F. Supp. 2d 370, 372 (D. Del. 1998)); *Zest IP Holdings, LLC v. Molecular Devices Corp.*, No. 10-0541-LAB(WVG), 2011 WL 5525990, at *1 (S.D. Cal. Nov. 14, 2011).

5
Case No.: 11-1846 LHK (PSG)
ORDER

design-around efforts relating to the patents-in-suit. According to Apple, such assistance with design-around efforts would give Samsung an "unfair competitive edge."

The court is not persuaded by Apple's arguments. To be sure (as if there were any doubt beforehand), this case confirms that the parties are fierce competitors – a factor that several courts have held weighs against disclosure.[14] Yet Apple's position regarding the danger posed by disclosure of pending design patents – under the protective order and for products already released in the market – is unreasonable. The parties' protective order prohibits the use of "Highly Confidential – Attorneys' Eyes Only" information for activities relating to advising or consulting on patent drafting or prosecution, and prohibits outside counsel who is involved in competitive decision-making, as defined by *U.S. Steel v. United States*,[15] from access to "Highly Confidential – Attorneys' Eyes Only" information.[16] Apple has offered no support for its contention that Samsung's counsel is engaged in improperly advising Samsung on design-around efforts. Moreover, at oral argument Apple's counsel conceded that Apple has a lesser confidentiality interest to the extent the pending design applications pertain only to a released product like the iPad 2.

In sum, the court recognizes that Apple's design applications reflect in part its competitive assessments, but finds that under the circumstances, Apple's confidentiality interest does not outweigh Samsung's right to obtain the relevant discovery. The court therefore GRANTS Samsung's motion to compel production of documents relating to Apple's efforts to obtain design patents, but only IN PART, as limited to those unpublished and pending design patents embodied

---

[14] *See ICU Medical, Inc.*, 224 F.R.D. at 462; *Microsoft Corp.*, 2001 U.S. Dist. LEXIS 23155 at *19.

[15] 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984) (defining "competitive decisionmaking" as "serviceable [] shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor").

[16] *See* Docket No. 687 ¶¶ 6(b), 9(a), 9(b)(1) (Protective Order Regarding Disclosure and Use of Discovery Material).

6
Case No.: 11-1846 LHK (PSG)
ORDER

by one or more features in the iPad 2 claimed by Apple to embody a patent-in-suit, and any patent applications that otherwise relate to the patents-in-suit.

**B.     Motion to Compel Production of Materials from Related Proceedings and to Enforce December 22, 2011 Court Order**

Based on RFP Nos. 75 and 97, Samsung seeks the production of deposition transcripts and "other materials" from cases and "Related Proceedings" bearing a technological nexus to this action, as well as a court order allowing Samsung to serve written discovery on and take the deposition of witnesses whose transcripts in other matters were produced late. Samsung argues, as it did in its December 2011 motion to compel, that these materials are plainly relevant to and contain critical admissions regarding the scope of Apple's claimed patents and their purported novelty over prior art. Samsung contends that despite the court's December 22 Order requiring Apple to produce by January 15, 2012 the deposition transcripts of its employees from other actions that bear a technological nexus to the issues here,[17] Apple has failed to produce all of the responsive transcripts and has resisted production of other materials from related proceedings that satisfy the same standard.

Samsung identifies two categories of incomplete or non-existent production: (1) deposition transcripts from proceedings Samsung has identified that fall within the court's December 22 Order, including depositions of Apple employees taken during the currently-pending United States International Trade Commission Inv. No. 337-TA-796 ("796 ITC Investigation"); and (2) other material from these cases that satisfies the nexus standard, including testimony of non-employee witnesses, declarations and affidavits, expert reports, hearing transcripts, court rulings, and pleadings. Apple responds that Samsung conflates multiple requests, including for the production of transcripts subject to the December 22 order, the production of documents from "other proceedings" involving an alleged technological nexus, the production of "other documents" from proceedings involving the patents-in-suit, and what is effectively an improper motion to amend the parties' protective order to allow the use of deposition transcripts from the 796 ITC Investigation.

---

[17] *See* Docket No. 536 at 5-6 (Order Granting-In-Part Def.'s Mot. To Compel).

7

Case No.: 11-1846 LHK (PSG)
ORDER

### 1. Deposition Transcripts Within the Scope of the December 22 Order

In relevant part, the court's December 22 Order addressed Samsung's motion to compel "transcripts of prior deposition testimony of Apple witnesses testifying in their employee capacity." The court held that Apple's proposed definition of a "technological nexus" provided an appropriate means to balance the production of relevant employee testimony from other actions, and required that Apple, no later than January 15, 2012, produce deposition transcripts by applying the technological nexus standard. As defined by Apple and applied by the court, the technological nexus standard includes "prior cases involving the patents-in-suit or patents covering the same or similar technologies, features, or designs as the patents-in-suit."[18]

Samsung argues that Apple has failed to comply with the December 22 Order by refusing to produce relevant deposition transcripts from the 796 ITC Investigation, as well as by reading its own limitations into the court's order so as to exclude all depositions but of those Apple witnesses scheduled to testify in this case and who meet a secondary "technological nexus" test in their individual role. For example, Apple has refused to produce transcripts from prior depositions of a 30(b)(6) representative who "testifies for Apple solely on financial issues" and therefore "has no technological nexus to this lawsuit."[19] With respect to the 796 ITC Investigation, Samsung points out the myriad ways in which the parallel investigation meets the technological nexus standard, and in fact has produced testimony by Apple designers that directly supports Samsung's defense in this case and even threatens to invalidate certain design patents-in-issue here. According to Samsung, Apple has produced limited transcripts from four other actions, even though Samsung provided Apple with a narrowed list of nine actions that it believes, at a minimum, fall within the scope of the December 22 Order.[20]

Apple responds that it has produced all transcripts it believes to be responsive to the December 22 Order. After Samsung produced its narrowed list of cases bearing an alleged

---

[18] *Id.* at 5, n.6.

[19] *See* Docket No. 825-1 ¶ 12 (Sabri Decl.).

[20] *See* Docket No. 782-12 (Hutnyan Decl., Ex. 12).

8

Case No.: 11-1846 LHK (PSG)
ORDER

technological nexus, Apple reviewed its production and supplemented with a few transcripts from depositions that occurred after January 15, 2012, as well as with a single transcript that it had overlooked inadvertently.[21] Notwithstanding the broad language in RFP No. 75, Apple argues that through the course of negotiations leading up to the Samsung's motion to compel and the December 22 Order, Samsung agreed to narrow its request to transcripts that would allow it to assess the credibility of Apple's witnesses in this case.[22] Apple argues that this rationale also formed the basis for Samsung's arguments to the court in the motion to compel.[23]

Regarding transcripts from the 796 ITC Investigation, Apple contends that there is nothing for it to "produce" because Samsung is a party and already has the materials. Re-designating the deposition transcripts for this proceeding would run contrary to the protective order in this case and would render meaningless the district judge's order limiting the number of hours of deposition time allowed. According to Apple, counsel in the 796 ITC Investigation has had to repeatedly object to Samsung's use of the ITC forum – which has no limit on the overall amount of deposition hours or the length of an individual deposition – to question Apple witnesses regarding matters relevant only to this case.

The December 22 Order drew the line at cases having a "technological nexus" to this suit in order to manage the reasonable production of relevant and discoverable deposition transcripts from other actions. It did not limit Apple's obligation to produce transcripts to witnesses set to testify in this case or to witnesses testifying on technical matters. Apple must produce all relevant deposition transcripts based on the standard that it itself proffered. This includes, but is not limited to, the eight cases that Samsung has identified and justified as having an undisputed technological nexus to this action. In addition, Apple must produce the deposition transcripts from the 796 ITC Investigation. Nothing in the parties' protective order proscribes Samsung's request for production

---

[21] *See* Docket No. 825-1 ¶¶ 9-11.

[22] *See* Docket No. 825-2 (Sabri Decl., Ex. 1).

[23] *See* Docket No. 487 at 20-21 (Samsung's Mot. To Compel Apple to Produce Documents and Things) (citing *Inventio AG v. Thyssenkrup Elevator Am. Corp.*, 662 F. Supp. 2d 375, 384 (D. Del. 2009) (allowing discovery of inventor depositions in a related case, but denying discovery of other transcripts for individuals who, amongst other reasons, would note testify in the pending case)).

9
Case No.: 11-1846 LHK (PSG)
ORDER

of the deposition transcripts.[24] Nor does the production of these deposition transcripts after the fact create an end-run around the 250-hour limit on depositions in this case.[25] If this were the case, the production of deposition transcripts – or for that matter any form of discovery response – from other related actions from which Apple readily agreed to produce transcripts similarly would threaten the limits imposed by the court and the federal rules on discovery in the instant action.

For these reasons, the court GRANTS Samsung's motion to enforce the December 22 Order as to all deposition transcripts of Apple employees, testifying in their employee capacity, from actions bearing a technological nexus to this case.[26] Apple shall produce the transcripts on a rolling basis and shall complete its production by April 27, 2012. In order to mitigate the prejudice to Samsung caused by Apple's failure to produce all responsive deposition transcripts in a timely manner, Samsung may take up to five additional depositions, for a total time not to exceed ten hours. The ten-hour allowance shall not count against the 250-hour limit in this case. Samsung must complete any deposition to be taken as a result of this order by May 10, 2012.[27]

---

[24] Under the terms of the protective order, the automatic cross-use provision that applies to document production does not extend to disposition materials; but a party may seek the production of such materials "through service of formal discovery requests in this action." *See* Docket No. 687 ¶ 22.

[25] Apple's argument regarding circumvention of the 250-hour time limit due to Samsung's alleged abuse of the ITC deposition discovery process would have had more punch early in the discovery process. At this late stage, the court considers first and foremost whether material from the related proceeding may be useful to the jury and the trial court. The court also notes that in the recently filed suit against Samsung, Case No. 12-CV-00630, Apple has stipulated to a broader cross-use agreement for material produced in the 796 ITC Investigation that includes deposition transcripts. *See* Docket No. 839-3 (Hutnyan Supp. Decl., Ex. B). Apple's allegations that Samsung is manipulating the deposition process in the ITC proceeding – even if substantiated – do not appear to have interfered with an agreement to deem those depositions produced in the newly filed action.

[26] Because Apple must produce the deposition transcripts from the 796 ITC Investigation, the court DENIES Samsung's request for an order placing those materials submitted by Samsung to the court for *in-camera* review in the record. *See* Docket No. 854 (Samsung's Notice of In Camera Submission).

[27] The court is aware that expert discovery in this case closes on April 27, 2012. The production and additional depositions subject to this order shall not serve as a basis for changing any of the deadlines set by Judge Koh.

10
Case No.: 11-1846 LHK (PSG)
ORDER

### 2. Other Material from Cases and Proceedings Satisfying the Technological Nexus Standard

Samsung also moves to compel the production of other materials from proceedings that satisfy the technological nexus standard. These include deposition transcripts from witnesses other than Apple employees, such as patent prosecution attorneys, Apple adversaries, third parties, and experts, as well as declarations and affidavits, expert reports, hearing transcripts, court rulings, and pleadings, including *Markman* filings. As with Apple's employee deposition transcripts, Samsung argues that the relevance of these materials is not in dispute. Apple in fact has agreed to produce some of these documents, but has delayed due to the parties' disagreement over the handling of confidential business information ("CBI") of third parties that may be present in certain documents.

Apple verifies that it has agreed to produce court documents, including *Markman* filings, from litigation involving the patents-in-suit, but argues that Samsung has failed to obtain the necessary third-party consent, instead providing Apple with complicated guidelines for the redacted production of the material which implicates third-party confidentiality interests. As to "other materials" from proceedings that bear a technological nexus to this action, Apple argues that Samsung's request constitutes an overbroad and untimely attempt at a fishing expedition for documents bearing no relationship to this case.

Samsung's request for "other materials" falls squarely within the scope of its RFP No. 75. RFP No. 75 also formed the basis of Samsung's December motion to compel regarding the deposition transcripts,[28] rendering Apple's distinction between materials from litigation involving the patents-in-suit and those bearing a "technological nexus" a distinction without a difference. Materials from other actions that meet the technological nexus standard are relevant, and in the case of court documents, the relevance is substantial enough to justify the burden to Apple of producing them.

For those documents that implicate third-party CBI, the parties have carried forward a process referenced in an earlier court order by which Samsung tried to obtain the appropriate third-

---

[28] *See* Docket No. 487 at 20.

11
Case No.: 11-1846 LHK (PSG)
ORDER

party consent.[29] The court's earlier order provided that, should Samsung be unsuccessful, it may request the court's assistance in securing the sought-after documents.[30] With respect to the materials requested in this motion, Samsung represents that it has secured consent from four of the five third-parties whose materials may be disclosed.[31] To the extent that Samsung obtained only qualified consent from certain parties, Apple points to the burden of making determinations regarding the confidential nature of third-party material and redacting that material before producing it as a basis for withholding the documents.

The court previously ruled on a similar dilemma in a January 27, 2012 order. In that instance, Apple relied on the objections of third-party Intel Corporation ("Intel") to withhold production of baseband processor code that Intel supplied to Apple. Intel represented to the court its preference to produce the code directly to Samsung under the terms of a separate protective order. The court found that Intel had not demonstrated how a separate protective order would result in more secure protections and ordered the production by Apple.[32] As in the scenario with Intel, the court sees no reason that the protective order in this case is inadequate to protect third-party confidentiality interests. Apple therefore shall produce the unredacted court documents, marked as "Highly Confidential – Attorneys' Eyes Only," from the eight cases that Samsung has identified bear a technological nexus to this case. As above, Apple shall produce the court documents on a rolling basis and shall complete its production by April 27, 2012.

### III. CONCLUSION

In accordance with the foregoing and subject to the limitations outlined above, the court GRANTS-IN-PART Samsung's motion to compel production of documents relating to Apple's efforts to obtain design patents related to the patents-in-suit, and further GRANTS-IN-PART

---

[29] *See* Docket No. 536 at 2 n.1.

[30] *See id.*

[31] Docket No. 782-3 ¶¶ 21-22 (Hutnyan Decl.). At oral argument, Samsung's counsel confirmed that in addition to the third-parties referenced in the declaration, it has secured consent from one additional company.

[32] *See* Docket No. 673 at 16-17 (Order Re Discovery Motions).

1  Samsung's motion to compel production of materials from related proceedings and to enforce the
2  December 22 Order.

3  **IT IS SO ORDERED.**

4  Dated: 4/12/2012

　　　　　　　　　　　　　　　　　　　　　　*Paul S. Grewal*
　　　　　　　　　　　　　　　　　　　　　　PAUL S. GREWAL
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Case No.: 11-1846 LHK (PSG)
ORDER