UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD, a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.: C 11-1846 LHK (PSG) <br><br> **ORDER (1) GRANTING-IN-PART APPLE'S MOTION FOR 37(B)(2) SANCTIONS RE SEPTEMBER 28 AND DECEMBER 22 DISCOVERY ORDERS; (2) GRANTING-IN-PART APPLE'S MOTION FOR 37(B)(2) SANCTIONS RE DAMAGES DISCOVERY** <br><br> **(Re: Docket Nos. 715, 759)** |

In this patent infringement suit, Plaintiff Apple Inc. ("Apple") seeks sanctions pursuant to Fed. R. Civ. P. 37(b)(2) against Defendants and counter-claimants Samsung Electronics Co., LTD., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung"). Before the court are two separate motions. On March 27, 2012, the court heard oral argument on Apple's first motion regarding alleged violations of two discovery orders during the preliminary injunction phase of the case. On April 9, 2012, the court heard oral argument on Apple's second motion regarding alleged violations of the court's January 27, 2012 order regarding damages discovery. Having considered the argument and evidence presented in both motions, the court hereby GRANTS-IN-PART Apple's motions.

1

Case No.: 11-1846 LHK (PSG)
ORDER

## I. LEGAL STANDARDS

Rule 37(b) of the Federal Rules of Civil Procedure authorizes sanctions against a party who "fails to obey an order to provide or permit discovery under Rule 26(f), 35, or 37(a)." Sanctions may range in severity from monetary to case-dispositive preclusion or terminating sanctions.[1] The selection of the particular sanction is left to the discretion of the trial court.[2] The disobedient party bears the burden of showing that the failure was justified or that special circumstances make an award of expenses unjust.[3]

## II. DISCUSSION

By its first motion related to preliminary injunction discovery, Apple seeks a court finding that Samsung violated the court's discovery orders of September 28, 2011[4] and December 22, 2011[5] – presumably laying the foundation for Apple to pursue additional penalties at the end of the case – as well as an award now of its attorneys' fees and expenses incurred in connection with Samsung's violations. According to Apple, these fees and expenses cover no less than:

- Apple's motion for preliminary injunction and its appeal from the district court's denial of that motion;

- Apple's motion to compel that resulted in the December 22 Order and related analysis of Samsung's production responsive to the September 28 Order, as well as related meet and confer efforts;

- Apple's analysis of Samsung's compliance with the December 22 Order, related meet and confer efforts, and review and analysis of documents produced from December 22 to the present;

- Apple's motion to compel timely production of foreign-language and other documents in advance of related depositions that resulted in the court's April 4, 2012 order; and

- Apple's fees and expenses for this motion.

---

[1] *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii); 37(b)(2)(C).

[2] *See Nat'l Hockey League v. Metr. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976); *David v. Hooker, Ltd.,* 560 F.2d 412, 418-19 (1977).

[3] *See David,* 560 F.2d at 419; *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981).

[4] Docket No. 267 ("September 28 Order").

[5] Docket No. 537 ("December 22 Order").

2
Case No.: 11-1846 LHK (PSG)
ORDER

By its second motion related to damages discovery and Samsung's production of sales and financial data, Apple seeks evidentiary sanctions. These would take the form of a court order that:

- requires Samsung to produce all documents that Apple had listed in its January 11, 2012 proposed order on Apple's motion to compel, which resulted in the court's January 27, 2012 order;[6]
- permits Apple's damages experts to base their opinions at trial on the documents to be produced as a result of this motion without providing a new expert report and without being deposed or cross-examined based on their earlier reports;
- permits Apple to depose additional Samsung 30(b)(6) witness(es) based on the new documents to be produced;
- precludes Samsung damages experts or witnesses from relying on any documents at trial other than the spreadsheet produced by Samsung on February 3, 2012 in response to the January 27 Order; and
- precludes Samsung from seeking a continuance or extension of the trial date or another case deadline in connection with this motion or a resulting order.

In addition, Apple seeks a finding by the court that Samsung materially violated the court's January 27 Order.

To assess the merits of Apple's motions, the court looks to: (1) what it ordered Samsung to produce in the September 28, December 22, and January 27 Orders and by when; (2) whether Samsung complied; and (3) if Samsung did not comply, whether Apple's requested sanctions are appropriate. Despite the simple nature of these questions, the answers are anything but. Both sides have submitted a ream or more of declarations, exhibits, and briefing in support of their contradictory positions, most of which has been submitted under seal in light of their claimed proprietary nature. With these documents in mind, the court turns to Apple's motions, each in turn.

**A.    Apple's Motion for Rule 37(b)(2) Sanctions for Samsung's Violation of Two Discovery Orders**

*1.   The Court's September 28 and December 22 Orders*

In relevant part, the court's September 28 Order required Samsung to produce two categories of documents no later than October 7, 2011. These were: (1) all documents from the custodial files of Samsung designers of the Samsung products at issue during the preliminary injunction motion "referencing the Apple products alleged by Apple to embody one or more of the

---

[6] Docket No. 673 ("January 27 Order").

3

Case No.: 11-1846 LHK (PSG)
ORDER

ornamental or utility features claimed in the patents"[7] – in response to Apple's Request for Production ("RFP") No. 1 for all documents pertaining to copying, consideration, analysis or review of Apple products;[8] and (2) all survey documents from central or custodial files that reference the Apple products-in-issue[9] – in response to Apple's RFP No. 214 relating to marketing materials that "discuss or refer directly or indirectly to Apple or Apple products."[10] The court's order reflected a clear finding of relevance based on Samsung's position, in opposition to the preliminary injunction motion, that "Apple has offered no evidence of [] copying or willful infringement."[11] The September 28 Order further emphasized that "[a]ll means all: email, memoranda, whatever."[12]

The October 7 deadline for Samsung's production sought to ensure that Apple would have any relevant documents in hand by the October 13 hearing on Apple's preliminary injunction motion. Yet on December 8, 2011, Apple brought a second motion to compel and argued that Samsung's production had been woefully inadequate. In its December 22 Order, the court granted-in-part Apple's motion and ordered that with respect to any materials subject to the September 28 Order, including "emails and documents showing Samsung's analysis of and consideration of Apple's products" and "survey and marketing documents," Samsung "shall complete its production immediately and, in any event, no later than December 31, 2011."[13] The order further stated that "any further failure to comply with the September 28 Order will subject Samsung to sanctions."[14] With respect to responsive documents relating to the additional products and patent claims that

---

[7] Docket No. 267 at 3.

[8] *See* Docket No. 245 at 2 (Apple's Sept. 20, 2011 Mot. to Compel).

[9] Docket No. 267 at 4.

[10] *See* Docket No. 245 at 4.

[11] *See* Docket No. 267 at 3.

[12] *See id.*

[13] Docket No. 537 at 3.

[14] *Id.*

4

Case No.: 11-1846 LHK (PSG)
ORDER

were not at issue during the preliminary injunction phase, the court ordered Samsung to produce them on a rolling basis and no later than January 15, 2012.[15]

   2. *Samsung's Production by October 7, 2011 and December 31, 2012*

Apple contends that before the court's September 28 Order but after the deadline on preliminary injunction discovery, Samsung had produced no documents responsive to RFP Nos. 1 and 214. In fact, at the September 28 hearing on Apple's motion to compel, Samsung's counsel stated that it had undertaken a reasonable search and produced the documents it had found, but that Samsung simply did not have the type of "smoking gun" documents sought by Apple.[16] Yet on October 7, 8, and 10, Samsung produced approximately 10,000 documents, a number of which were responsive to RFP Nos. 1 and 214, including a Samsung survey concerning consumer preferences regarding Apple and Samsung smartphones. Then, on December 9, 2011, Samsung produced 117 additional documents from two of the three survey custodians that were subject to the September 28 Order, and another 82 documents between December 23-31, including 24 documents from a certain designer custodian that directly referenced Apple.[17] During that time Samsung also produced approximately 300 documents from its identified survey custodians. Finally, in the deposition-specific productions beginning in January 2012, Samsung produced thousands of relevant documents, including over 4,000 from designer custodians, 1,034 of which reference Apple or Apple products.[18]

Samsung does not deny that certain documents were produced late, but attributes those to "isolated and inadvertent delays in Samsung's production due to technical glitches."[19] Samsung argues that it substantially and in good faith complied with both court orders. Samsung points out first that Apple served its RFPs on August 26, 2011 – the last possible day for preliminary

---

[15] *Id.*

[16] Docket No. 715-2 (Chung Decl.), Ex. T at 45:7-49:24 (Hearing Tr. 9/28/2011).

[17] *See id.* ¶ 8, Ex. C.

[18] *See id.* ¶ 9, Exs. C, S.

[19] *See* Docket No. 758-3 at 1 (Samsung's Opp'n to Mot. for Rule 37(b)(2) Sanctions).

5
Case No.: 11-1846 LHK (PSG)
ORDER

injunction discovery– after which Samsung scrambled to respond, beginning rolling production on September 1 and producing over 32,000 pages by September 20, 2011.[20] Although the discovery was supposed to be narrowly tailored, Apple's motion to compel on September 20 broadly sought designer comparison and market survey documents relating to Apple generally. Instead, the court's September 28 Order limited Samsung's obligation to "documents referencing the Apple products alleged by Apple to embody one or more of the ornamental or utility features claimed in the patents."[21] In response to the September 28 Order, Samsung outside counsel flew immediately to Korea to oversee further document collection efforts, confirming the identities of custodians for documents relating to the products and features at issue in the preliminary injunction proceedings, and in only a few days producing 10,000 pages of additional documents.[22] After the December 22 Order, Samsung retained a second e-discovery vendor, continued its effort on-the-ground in Korea through the holidays, and by January 15, 2012 produced 390,000 pages documents.[23]

Samsung further explains that the October 2011 and December-January searches were run using different hardware, software and vendors, resulting in some discrepancies between those productions, but which affected a very small fraction of the total production. For example, Apple incorrectly states that no survey documents were produced by October 7; in fact, Samsung produced 2,500 pages from two survey custodians and from central files.[24] During discussions in November, Samsung realized that it inadvertently had not produced files from two other survey custodians, but then corrected the situation on December 9, 2011. Samsung also discovered in December 2011 the 24 documents from a designer custodian referenced in Apple's motion that contained the term iPhone or iPad, although 18 of the 24 were iterations of the same email string. Samsung produced these right away. Finally, Samsung states that it fully complied with the

---

[20] Docket No. 758-4 ¶¶ 5, 8 (Jenkins Decl.).

[21] Docket No. 267 at 3 (emphasis added).

[22] Docket No. 758-4 ¶¶ 9, 10.

[23] *Id.* ¶¶ 18-20.

[24] *Id.* ¶11.

6

Case No.: 11-1846 LHK (PSG)
ORDER

December 22 Order, producing "all but one" survey document by December 31, the late document coming not from Samsung's custodial files but from a third-party vendor that had conducted the survey.[25]

The scale of Samsung's production and the burden placed on it by the compressed case schedule and the numerous claims at issue are not in doubt. That burden, however, does not negate Samsung's obligation to comply with no fewer than two court orders specifying the production of documents that reference Apple's products claimed to embody the features and designs at issue. As this court has stated under similar circumstances, "[o]nce the order compelling production issued, the focus of this court's appropriate inquiry necessarily shifts to compliance."[26] Notwithstanding Samsung's efforts, the court agrees with Apple that Samsung's production as of October 7 and December 31, 2011 failed to comply with the court's orders.

*3. Apple's Request for Sanctions Overreaches*

The Ninth Circuit has held that a party's failure to produce documents as ordered is considered sufficient prejudice to establish sanctionable conduct.[27] Except as to terminating sanctions, a showing of willfulness, bad faith, or fault is not required.[28] "Prejudice from unreasonable delay is presumed. Failure to produce documents as ordered is sufficient prejudice, whether or not there is belated compliance."[29] Even though a finding of bad faith is not required for imposing sanctions, "good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust.[30]

---

[25] *Id.* ¶¶ 13, 14.

[26] *In re Google Litig.*, No. C08-3172-RMW (PSG), 2011 U.S. Dist. LEXIS 151337, at *21 (N.D. Cal. Aug. 2, 2011).

[27] *See Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004). *See also Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997); *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

[28] *See Payne*, 121 F.3d at 507; *Computer Task Group, Inc.*, 364 F.3d at 1115.

[29] *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1236 -1237 (9th Cir. 2006) (citing *In re Eisen*, 31 F.3d 1447, 1452-53 (9th Cir. 1994)).

[30] *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

7
Case No.: 11-1846 LHK (PSG)
ORDER

1     Apple argues that Samsung's December 2011 and January 2012 document productions
2 included "the most inculpatory evidence Samsung has produced to date" – evidence critical to the
3 motion for preliminary injunction because it showed that the Apple designs and features in issue
4 were important to consumers and that Samsung's designers were considering Apple's products.[31]
5 Apple argues that the nature of the documents that were withheld until after the preliminary
6 injunction hearing directly contradicted Samsung's representations that its designers had not
7 considered Apple's products, and also were probative of an issue that the presiding judge found to
8 be material to her denial of a preliminary injunction – that the patented features had a significant
9 impact on consumer purchasing decisions. As discovery violations that threatened to and
10 potentially did "interfere with the rightful decision of the case," Apple contends that Samsung's
11 actions justify the dramatic, monetary sanctions Apple seeks.[32]

12     Samsung responds that under Rule 37, sanctions are not appropriate where the violation
13 was substantially justified, the moving party's fees not "caused by the failure" to comply, or where
14 other circumstances make the award unjust. Samsung argues that any failure on its part was
15 substantially justified based on the "monumental obstacles" it faced in its discovery efforts.[33] In
16 addition, Apple's attempt to demonstrate prejudice fails because many of the "outcome
17 determinative" documents cited by Apple were duplicative of documents that the district court
18 considered for the preliminary injunction motion, and additional evidence on the "infringement
19 prong" would not have helped because the district court based its ruling on the inadequate showing
20 by Apple of irreparable harm and the likely invalidity of two of Apple's asserted patents. Finally,
21 Samsung points out that Apple has failed to offer any evidence that connects the relief requested to

---

[31] *See* Docket No. 715-1 at 14 (Apple's Mot. for Rule 37(b)(2) Sanctions).

[32] Docket No. 769 at 10 (Apple's Reply in Support of Mot. for Rule 37(b)(2) Sanctions) (quoting *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).

[33] Samsung cites the "drastically compressed time-frame caused by Apple's desire for a quick trial, sweepingly broad discovery demands from Apple that were served at the very last minute, foreign language translation issues, complicated decryption and technical issues, and logistical issues in connection with moving vast amounts of data halfway across the world." *See* Docket No. 758-3 at 15.

8
Case No.: 11-1846 LHK (PSG)
ORDER

Samsung's alleged violations. Based on its "herculean discovery efforts" to comply and on Apple's failure to demonstrate prejudice or to support its dramatic request for fees and expenses, Samsung argues that any award would be manifestly unjust.

There is little doubt that Apple overreaches in claiming the monetary sanctions it seeks. The court would have to engage in rank speculation to determine the effect, if any, of the belatedly-produced documents on the merits of Apple's preliminary injunction motion. Equally attenuated is Apple's request for fees and expenses for the preliminary injunction motion itself, which Apple chose to bring before promulgating any discovery requests. The court thus DENIES Apple's motion for fees and expenses in connection with Apple's motion for preliminary injunction as well as Apple's appeal of the district court's order denying a preliminary injunction.

Apple nevertheless has demonstrated that as late as December 2011 and even January and February of this year, Samsung produced documents that were responsive to Apple's RFP Nos. 1 and 241 served in August 2011 and subject to the court's September 28 Order. Moreover, Samsung's belated production of these documents directly contradicts counsel's multiple representations to this court that the type of documents Apple sought did not exist. Even more troubling is Samsung failure to address the inaccuracy of these earlier representations to the court. The court thus GRANTS Apple's motion as to fees and expenses incurred in connection with Apple's motion to compel that resulted in the December 22 Order. Because Apple's December motion to compel and the December 22 Order addressed more issues than are the subject of the instant motion, and similarly Apple's analysis of Samsung's compliance with the September 28 Order and the parties' meet and confer efforts were part and parcel of both sides' ongoing litigation efforts, Apple shall not collect fees related to those activities. Apple's further requests for fees and expenses related to its analysis of compliance with the December 22 Order, its review and analysis of documents produced from December 22, 2011 to the present, and its fees and expenses for this motion are also DENIED. No later than May 7, 2012, Apple shall file all appropriate declarations detailing the fees and expenses it has incurred in connection with bringing the motion to compel that resulted in the court's December 22 Order. No later than May 14, 2012, Samsung may file any objection to the fees and costs Apple claims.

9
Case No.: 11-1846 LHK (PSG)
ORDER

**B.   Apple's Motion for Rule 37(b)(2) Sanctions for Samsung's Violation of January 27 Damages Discovery Order**

*1. The Court's January 27 Order*

The relevant part of the January 27 Order states:

"**Sales and financial information relevant to establishing damages.** Apple seeks a number of categories of sales and marketing information, including U.S. and worldwide sales and revenues, selling price per accused product, gross margin, expenses and operating profit, and Samsung's audited or unaudited financial reports. Apple argues that Samsung's production to date has provided scattered and piecemeal financial information that does not offer any consistent record for Apple to draw from. Samsung does not dispute that sales and profitability information is relevant to Apple's damages, if any. Samsung has generally agreed to supplement its production to date and provide responsive documents to all of the categories listed by Apple.[FN] The court finds Samsung's proposed production to be sufficient to meet Apple's legitimate requests for this category of documents."[34]

The footnote in the order refers to Samsung's opposition brief and to a January 10, 2012 letter ("January 10 letter") from Samsung's counsel to Apple offering to produce six categories of documents in response to Apple's damages discovery requests. "[A]ll of the categories listed by Apple" refers to Apple's submission of a proposed order, together with its motion to compel, setting forth eight, detailed categories of sales and other financial documents that it required for formulating its damages case.[35] The January 27 Order further called for Samsung to complete production on a rolling basis and no later than February 3, 2012.

The parties dispute whether the court's order required Samsung to produce all documents listed in Apple's proposed order, or only those promised by Samsung in its January 10 letter. Samsung argues that in referencing its January 10 letter and opposition, as opposed to Apple's proposed order, the January 27 Order did not require the full scope of Apple's sought-after production. Yet Samsung's representations to the court in opposing Apple's motion to compel unequivocally stated that Samsung had "agreed to produce all of the financial information" that Apple requested, other than "a few exceptions for duplicative or non-existent information."[36]

---

[34] Docket No. 673 at 15.

[35] *See* Docket No. 759 (Apple's Mot. for Rule 37(b)(2) Sanctions re Damages), Appendix A at 8-10 (Proposed Order Granting Apple's Mot. to Compel).

[36] Docket No. 642 at 14, 2 (Samsung's January 17, 2012 Opp'n to Apple's Mot. to Compel).

Samsung reiterated this position at oral argument.[37] The court thus finds that the January 27 Order required the production requested by Apple other than duplicative or non-existent information.

### 2. *Samsung's Production by February 3, 2012*

The evidence submitted by both parties leaves little doubt that Samsung's production by February 3, 2012 was insufficient – even under Samsung's reading of the January 27 Order. On February 3, 2012, Samsung produced a 26-page spreadsheet that purportedly responded to Apple's request for detailed financial data taken directly from Samsung's system of record, as maintained in the course of business (the "February 3 Spreadsheet"). According to Samsung, the February 3 Spreadsheet consists of data extracted from Samsung's electronic database, constituting its system of record, and contains detailed sales information per month, quarter, and accused model – worldwide – from May 2010 – December 2011. The spreadsheet also shows the cost of goods sold, operating expenses, and profit for each accused product.[38] In addition, before February 3, 2012, Samsung had produced substantial other documents responsive to Apple's requests, including business plans, profit and loss ("P/L") statements for Samsung divisions responsible for the accused products, monthly and weekly sales reports, documents showing unit pricing and quantities sold to carriers and distributors, and non-public audited financial reports for Samsung's U.S. entities covering 2010 and 2011.[39]

It is not necessary to parse each detail of Apple's extended critique of both the content and quality or reliability of Samsung's production in order to conclude that, as of February 3, 2012, it was indeed deficient. As an example, "documents reflecting sales and revenue information" – one

---

[37] At the hearing, counsel for Samsung stated, for example: "We've made clear our offer that for the accused defendants which would include STA which is a subsidiary of SEC, that all those financial documents are going to be produced and have been and we have agreed to produce them. *** There's not been a refusal on Samsung's part to produce documents relating to the financial categories involved for the three named defendants." When the court questioned whether Samsung's offer "include[d] sales data, revenue data outside the United States," counsel for Samsung responded, "For the products that are sold outside, yes, we agreed to that and still this motion was filed." *See* Docket No. 759-4 (Olson Decl.), Ex. 8 at 155:11- 156:25, 167:16-169:25 (Hearing Tr. 1/19/2012).

[38] *See* Docket No. 801-22 ¶¶ 10, 12 (Sheppard Decl.).

[39] *See* Docket No. 801-9 ¶¶ 7, 8, 9 (Martin Decl.).

11
Case No.: 11-1846 LHK (PSG)
ORDER

of Samsung's six promised categories of production – should have included detailed sales information by month and by quarter, and per accused model for the U.S. and Korean corporate defendants for the relevant time period. Yet based on a review of developments after February 3, 2012, the information contained in the February 3 Spreadsheet and in the other documents produced in this and the ITC proceeding fell short. On February 28, 2012, Samsung produced a revised spreadsheet ("the Revised Spreadsheet") to add a version of the accused Galaxy Tab 7.0 that had been left off of the February 3 Spreadsheet, and to correct a discrepancy whereby the 29 individual product tabs did not "add across" to total the amount in the "Total" tab.[40] Samsung also concedes that it left three products (the Galaxy S II Skyrocket, Galaxy S II Epic 4G edition, and Galaxy Tab 10.1 LTE) off of the February 3 Spreadsheet and later spreadsheet versions, but argues that these models are not accused instrumentalities in this case and therefore should not have been included.[41] At a minimum, Samsung's production by February 3 thus lacked data for at least one product, and potentially up to four products.[42] By failing to "add across" for the accused products, the February 3 Spreadsheet did not consistently convey the units sold and total sales amount.[43] Apple also criticizes the Spreadsheet's failure to "add down," whereby the quantity and sales amount in one section do not agree with those amounts in another section.[44] Although Samsung explains this failure to be the result of the manner and timing by which Samsung's products move through its global chain of companies,[45] the court agrees with Apple that as a matter of basic

---

[40] *See id.* ¶ 5; Docket No. 801-22 ¶ 7.

[41] *See* Docket No. 801-3 at 14-15. (Samsung's Opp'n to Apple's Rule 37(b)(2) Mot. for Sanctions re Damages).

[42] The merits of Samsung's basis for excluding sales and revenue data for the Galaxy S II Skyrocket, Galaxy S II Epic 4G edition, and Galaxy Tab 10.1 LTE is not the subject of the motion before the court. The court merely notes that having not sought court intervention to establish those models as being outside the scope of Apple's claims and contentions or to otherwise limit Samsung's obligation respecting damages production, Samsung was obligated to produce responsive discovery under the liberal standard set by Fed. R. Civ. P. 26(b).

[43] *See* Docket No. 759-5 ¶ 13 (Roberts Decl.).

[44] *See id.* ¶¶ 5, 12.

[45] *See* Docket No. 801-22 ¶ 17.

Case No.: 11-1846 LHK (PSG)
ORDER

accounting, such discrepancies call into question the accuracy of the data or at least the manner in which Samsung has chosen to report it.

Another example from Samsung's selected categories is for data covering "cost of goods sold, operating expenses and profitability." Samsung argues that its February 3 Spreadsheet reflects accurate data per accused product, and that its other productions, including business plans and P/L statements, provide detailed information concerning cost of goods sold, operating and other expenses, materials and manufacturing costs, other types of costs, as well as fees and R&D expenses.[46] Yet on March 8, 2012, Samsung produced two additional spreadsheets ("the Supplemental Spreadsheets") in order to respond to Apple's request for more detailed break-outs of operating expenses[47] and to remove data that Samsung erroneously had included in the earlier spreadsheet versions. This data contained financial results from certain Chinese subsidiaries that do not manufacture or distribute any of the accused products, and thus whose data – Samsung argues – is not relevant to the case.[48] The March 8 changes also collapsed certain categories of operating expenses that had been separated in the earlier spreadsheet version. When Apple tried to question Samsung's 30(b)(6) witness regarding specific changes from the February 3 to March 8 versions, Samsung's counsel instructed the witness not to answer questions about items that were in the February 3 Spreadsheet and "superseded by later versions."[49] At oral argument, Samsung's counsel insisted that the instructions not to answer regarding the earlier-provided breakdown of data were not inappropriate, despite being based on neither a privilege or harassment objection.[50]

---

[46] *See* Docket No. 801-9 ¶ 8, Ex. 3.

[47] *See id.* ¶ 6; Docket No. 801-22 ¶ 30.

[48] *See* Docket No. 801-3 at 14; Docket No. 801-4 (Gordon Decl.), Ex. 6 at 11:14:56-11:19:55 (Sim Depo., Uncertified Tr.).

[49] *See* Docket No. 822-3 (Olson Reply Decl.), Ex. D at 92:10-93:22, 96:7-96:14, 99:15-100:25, 131:9-132:14 (Sim Depo.).

[50] *See* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to limit or limit the deposition on ground that it is being conducted in bad faith, or to unreasonably annoy, embarrass, or oppress the deponent].").

1    Other evidence further demonstrates that the manner in which the February 3 Spreadsheet,
2    and the subsequent versions, presents data for operating expenses and allocation of expenses by
3    accused product is inconsistent with Samsung's own witness testimony regarding how companies
4    usually allocate expenses, and ultimately does not allow Apple to answer the question covered by
5    the January 27 Order – how to determine profits per accused product, as between STA, SEA, and
6    SEC.[51] Still other material sought by Apple – some of it produced well after the February 3
7    deadline and some of it not yet produced – falls within the scope of the January 27 Order. These
8    materials include "costed bills of materials" for the accused products and certain internal, financial
9    reports provided to Samsung's U.S. or corporate management – including reports that analyze
10   profitability at a product level and are vetted by several tiers of employees before their final
11   submission. The court finds puzzling Samsung's narrow reading of the January 27 Order so as to
12   exclude these documents when counsel for Samsung insisted during the oral argument on that
13   motion to compel that, for example, "all those financial documents are going to be produced and
14   have been and we have agreed to produce them … relating to the financial categories involved for
15   the three named defendants," including bills of materials even though they were "overkill."[52]

16   Samsung argues that it should not be sanctioned for its compliance with its reasonable,
17   good faith reading of the January 27 Order, and especially for its continuing efforts to respond to
18   Apple's insatiable appetite and insistence for more detail. But the court cannot ignore the fact that
19   long after the February 3 deadline, Samsung has continued to produce data that was required by the
20   January 27 Order. Especially in light of Samsung's assurances that its production by that date
21   would cover Apple's categories of requests for data on a consolidated basis – across the three
22   defendants – Samsung cannot now argue that the shortcomings in its production are substantially
23   justified. Late-produced and never-produced product data, inconsistent presentations regarding the
24   cost of goods sold and total profits that result in improper witness instructions during deposition,
25   and errors that require additional iterations of what Samsung insists was an accurate and complete

---

[51] *See* 759-5 ¶ 13; Docket No. 759-2 at 12.

[52] *See* Docket No. 759-4, Ex. 8 at 155:25-156:4, 168:22-169:3 (Hearing Tr. 1/10/2012).

14
Case No.: 11-1846 LHK (PSG)
ORDER

spreadsheet, are indicative of a failure to provide damages data that accurately and fully complied with the court's order by the indicated date.

### 3. Narrowly Tailored Evidentiary Sanctions Are Appropriate

Despite Apple's attempts to show that Samsung's actions in providing damages discovery have been in bad faith and suggest an "effort to disproportionately allocate expenses to the accused products and artificially lower [] profits on accused products,"[53] the court finds insufficient evidence to support a conclusion of bad faith or willful disobedience. This alone counsels against imposing the full range of sanctions that Apple seeks,[54] which although not case dispositive, would severely limit Samsung's ability to present its own damages case and would impose limitations on the cross-examination of expert witnesses at trial. These sanctions, though well within the discretion of the court to impose, also tread on the territory of the presiding judge in fashioning limits for trial, and are sufficiently preclusive as to warrant analysis under the five-factor test set forth in *Valley Eng'rs v. Electric Eng'g Co.*,[55] and reinforced in numerous Ninth Circuit and district court opinions. As Apple did not brief these factors, neither will the court consider them.

Yet the law of this circuit also establishes that "[d]isobedient conduct not shown to be outside the litigant's control" alone meets the standard for willfulness, suggesting that some level of sanctions is justified.[56] Moreover, with the close of fact discovery over a month past and the close of expert discovery less than two weeks away, any remedy to mitigate harm to Apple must be limited to fit the narrow window of time remaining. That harm primarily takes the form of Apple's ability to validate its damages analysis with reliable, underlying data, especially as to the allocation

---

[53] *See* Docket No. 759-5 ¶ 18.

[54] *See Hyde & Drath*, 24 F.3d at 1171.

[55] 158 F.3d 1051, 1057 (9th Cir. 1998).

[56] *See In re Phenylpropanolamine*, 460 F.3d 1217 at 1233 (citations omitted). *See also G-K Properties v. Redevelopment Agency of City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978) (noting that "in this era of crowded dockets," willful disregard of court discovery orders – including "last-minute tender of relevant documents" – merits sanctions based on the prejudice to the opposing party and the imposition on other litigants of the courts).

15
Case No.: 11-1846 LHK (PSG)
ORDER

of expenses to the accused products between the three defendants and the resulting, associated profits. On balance, in order to mitigate the harm to Apple in a narrowly tailored and timely fashion, the court will require the following:

- No later than April 30, Samsung shall produce any and all remaining, responsive discovery outlined by Apple in its proposed order to the motion to compel that resulted in the court's January 27 Order;

- No later than May 7, Apple may supplement its expert report(s) on damages, limited to explaining any changes to the initial report(s) that are the result of the additional production;

- Samsung shall wait to depose Apple's damages expert(s) until production of the supplemental report(s). Samsung's deposition time for Apple's expert(s) shall be limited to half of the time otherwise allowed under the federal rules and the discovery orders of the presiding judge. The delayed deposition(s) must be completed no later than May 14.[57]

The modifications to the expert report and deposition schedule as set forth above shall not otherwise interfere with or serve as a basis for a motion to alter Judge Koh's schedule, including the close of expert discovery on April 27, 2012 and the May 17, 2012 filing of *Daubert* or dispositive motions.[58]

**IT IS SO ORDERED.**

Dated: 4/23/2012

　　　　　　　　　　　　　　　　　　　　PAUL S. GREWAL
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[57] The court appreciates that under this schedule, Samsung's preparation of its *Daubert* and any summary judgment motion is highly compressed. But any prejudice to Samsung is of its own making.

[58] *See* Docket No. 869 (Case Management Order).

16
Case No.: 11-1846 LHK (PSG)
ORDER