1          IN THE UNITED STATES DISTRICT COURT

2       FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

  APPLE, INC,                    )  CV-11-1846-LHK
5                                 )
                  PLAINTIFF,      )  SAN JOSE, CALIFORNIA
6                                 )
            VS.                   )
7                                 )  APRIL 24, 2012
  SAMSUNG ELECTRONICS, CO.       )
8  LTD., ET AL,                   )
                                  )  PAGES 1-51
9                 DEFENDANT.      )
   ──────────────────────────────

10

11            TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE PAUL S. GREWAL
12           UNITED STATES DISTRICT JUDGE

13

14  A P P E A R A N C E S:

15

16  FOR THE PLAINTIFF:  MORRISON & FOERSTER, LLP
                        BY:  ALISON TUCHER
17                           RICHARD HUNG
                             MARC PERNICK
18                      425 MARKET STREET
                        SAN FRANCISCO, CA 94105
19

20  FOR THE DEFENDANT:  QUINN EMANUEL
                        BY:  KEVIN JOHNSON
21                           MELISSA CHAN
                        555 TWIN DOLPHIN DRIVE, STE 560
22                      REDWOOD SHORES, CA 94065

23

24

25  OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                             CERTIFICATE NUMBER 13185

                                                        1

1    SAN JOSE, CALIFORNIA          APRIL 24, 2012

2                P R O C E E D I N G S

3              (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5              THE COURT:  MR. RIVERA, WOULD YOU CALL

6    THE NEXT MATTER ON THIS MORNING'S CALENDAR.

7              THE CLERK:  YES, YOUR HONOR.

8              CALLING APPLE, INC. VERSUS SAMSUNG

9    ELECTRONICS COMPANY, ET AL.

10             CASE CV-11-1846.  MATTER ON FOR

11   PLAINTIFF'S RULE 37 (B)(2) MOTION.

12             COUNSEL, PLEASE COME FORWARD AND STATE

13   YOUR APPEARANCES.

14             MR. JOHNSON:  GOOD MORNING, YOUR HONOR.

15             KEVIN JOHNSON.  AND WITH ME IS MELISSA

16   CHAN FROM QUINN EMANUEL ON BEHALF OF SAMSUNG.

17             THE COURT:  MR. JOHNSON, GOOD MORNING

18   SIR.

19             MS. TUCHER:  GOOD MORNING, YOUR HONOR.

20             ALLISON TUCHER FROM MORRISON & FOERSTER.

21   WITH ME TODAY ARE MY PARTNERS RICH HUNG AND

22   MARC PERNICK.

23             THE COURT:  MS. TUCHER, GOOD MORNING TO

24   YOU AS WELL.

25             ALL RIGHT.  THE LATEST IN THE SERIES OF

1    MOTIONS FOR SANCTIONS.

2              I TAKE IT YOU ALL SAW MY ORDER THAT I

3    ISSUED LAST EVENING.  I DON'T WANT TO RE PLOW OLD

4    GROUND, BUT I HOPE THAT GIVES YOU AT LEAST SOME

5    SENSE OF WHERE I'M AT GENERALLY IN THIS CASE

6    REGARDING COMPLIANCE WITH MY ORDERS.

7              THIS IS APPLE'S MOTION SO I WILL START

8    WITH YOU MS. TUCHER.

9              MS. TUCHER:  THANK YOU, YOUR HONOR.

10             APPLE HAS ALLEGED CONTINUING INFRINGEMENT

11   IN THIS CASE.  THAT MEANS WE HAVE TO PROVE NOT ONLY

12   THAT SAMSUNG INFRINGES OUR PATENTS ON THE DAY THAT

13   IT RELEASES A NEW PRODUCT, BUT ALSO THAT IT

14   CONTINUES TO INFRINGE OUR PATENTS AS IT UPDATES THE

15   SOFTWARE OVER THE WEEKS AND MONTHS THE PRODUCTS

16   REMAIN ON THE MARKET.

17             BECAUSE WE NEED THAT SOFTWARE WE ISSUED

18   REQUEST FOR PRODUCTION AND THEN WE GOT AN ORDER

19   FROM THIS COURT IN DECEMBER OF LAST YEAR REQUIRING

20   SAMSUNG TO PRODUCE ALL VERSIONS OF SOURCE CODE ON

21   ALL OF THE ACCUSED PRODUCTS, AT LEAST --

22             THE COURT:  DID I SAY ALL VERSIONS?

23             MS. TUCHER:  NO.

24             WHAT YOU SAID WAS THAT SAMSUNG WAS

25   REQUIRED TO PRODUCE THE SOURCE CODE THAT APPLE

3

1    HAD -- LET ME GIVE YOU THE EXACT LANGUAGE.

2              SAMSUNG SHALL PRODUCE THE SOURCE CODE

3    REQUESTED BY APPLE'S MOTION, WITH AN EXCEPTION, AND

4    THE EXCEPTION WENT TO -- SORRY, IT WAS SOURCE CODE

5    AND TECHNICAL DOCUMENTS.  THEN IT WAS AN EXCEPTION

6    THAT WENT TO TECHNICAL DOCUMENTS AS TO WHICH THERE

7    HAD BEEN NO MEET AND CONFER.

8              BY TECHNICAL DOCUMENTS, SOME OF THESE

9    HAVE RELATION TO SOURCE CODE.

10             SO FOR EXAMPLE, WE ASKED FOR VERSION LOGS

11   THAT WOULD ENABLE US TO TELL WHEN DIFFERENT

12   VERSIONS OF SOURCE CODE WERE IMPLEMENTED.

13             BUT YOUR HONOR'S ORDER WAS QUITE CLEAR

14   INCLUDING IN A FOOTNOTE BY REQUEST NUMBER, THE

15   REQUESTS THAT WERE EXEMPTED BECAUSE THEY DIDN'T

16   INVOLVE MEET AND CONFER, IT LOOKS TO US AS THOUGH

17   YOU TOOK THAT LIST STRAIGHT FROM A SAMSUNG

18   DECLARATION PROVIDED BY MR. CHAN.

19             AND IN THAT DECLARATION, PARAGRAPH 21 OF

20   THE DECLARATION WHERE MR. CHAN LISTS EXACTLY THAT

21   SAME LIST OF REQUESTS FOR PRODUCTION THAT APPEAR IN

22   THE FOOTNOTE OF YOUR ORDER, HE REFERS TO THESE

23   REQUESTS AS NON SOURCE CODE DOCUMENTS.

24             INDEED, THEY ARE, AND THAT'S WHY NOTHING

25   IN THE EXEMPTION WITH THE EXCEPTION OF YOUR

4

1    DECEMBER ORDER APPLIES TO THE SOURCE CODE.

2              HAVING SECURED THE ORDER, WE THEN GOT

3    FROM SAMSUNG A SINGLE VERSION OF SOFTWARE FOR

4    ALMOST EVERY ONE OF THE PHONES THAT HAD BEEN

5    RELEASED.  AND I SAY ALMOST EVERY ONE ONLY BECAUSE

6    THERE'S A COMPLICATION WITH REGARD TO THE S2.

7              YOU WILL REMEMBER --

8              THE COURT:  EXPLAIN THAT TO ME.

9              MS. TUCHER:  YOU WILL REMEMBER THAT WE

10   ACCUSED THE S2 OF INFRINGING OUR UTILITY PATENTS

11   AND THAT SAMSUNG RELEASED THE S2 IN MANY DIFFERENT

12   VARIANTS OR MANY DIFFERENT VERSIONS.

13             IT RELEASED IN SEPTEMBER OF 2011 A

14   VERSION TO -- SORRY, SEPTEMBER WAS THE S2 EPIC 4G

15   TOUCH, WHICH IS A SPRINT PHONE.  AND THEN IN

16   OCTOBER IT RELEASED THE AT&T VERSION OF THE GALAXY

17   S2.  AND THE T-MOBILE VERSION OF THE GALAXY S2.

18             THEN IT WENT ON LATER IN THE FALL TO

19   RELEASE FURTHER VERSIONS THROUGH OTHER CARRIERS AND

20   A SECOND AT&T VERSION.

21             SO THE REASON THIS IS IMPORTANT IS THAT

22   IF SAMSUNG HAD DONE WHAT IT SAID IT WAS DOING IN

23   PRODUCING ONE, IN PRODUCING THE FIRST VERSION OF

24   SOFTWARE FOR EACH OF THE PHONES, YOU WOULD EXPECT

25   THAT THEY EITHER HAD GIVEN US THE GALAXY S2 EPIC 4G

1    TOUCH AND EXPECTED US TO VIEW THAT AS SOFTWARE

2    REPRESENTATIVE OF ALL THE S2'S OR THAT THEY HAVE

3    GIVEN US SOFTWARE FOR EACH OF THE DIFFERENT

4    VARIANTS OF EACH OF THE DIFFERENT CARRIERS SO THAT

5    WE COULD ANALYZE EACH OF THOSE.

6            THE COURT:  I TAKE IT YOUR POINT IS THEY

7    DID NOT.

8            MS. TUCHER:  THEY DIDN'T.

9            INSTEAD, THEY THOSE THE T-MOBILE VERSION

10   OF THE S2 AND THEY GAVE US A SINGLE VERSION OF THAT

11   ONLY.

12           SO THE REASON THAT MATTERS IS THAT WHEN

13   WE GET TO THE APPROPRIATE SANCTION FOR THEIR

14   VIOLATION OF YOUR ORDER, THE QUESTION IS HOW DO WE

15   FILL IN THE GAPS?

16           AND FIRST, I WANT TO JUST ESTABLISH THE

17   IMPORTANCE OF FILLING IN THE GAPS.  IT'S NOT JUST

18   HYPOTHETICAL THAT SOMEHOW SAMSUNG IS GOING TO

19   ATTACK APPLE'S PROOF ON THE GROUNDS THAT WE CAN

20   ONLY PROVE INFRINGEMENT BASED ON A SINGLE PHONE, SO

21   HOW CAN APPLE MAINTAIN CONTINUING INFRINGEMENT.

22           ON THE RUBBER BANDING PATENT WE HAVE AN

23   EXPERT BY THE NAME OF ROBERT BALAKRISHNAN.  HE WAS

24   CROSS-EXAMINED, ONE OF THE EXPERT DEPOSITIONS THAT

25   TOOK PLACE JUST LAST FRIDAY.

6

1              AND IN THAT DEPOSITION FOR THREE PAGES OF

2      TRANSCRIPT THE QUESTIONS GO ON.

3              WELL, AS TO THE CAPTIVATE, HOW MANY DID

4      YOU LOOK AT?

5              I LOOKED AT JUST ONE.  I LOOKED AT ONE, I

6      FOUND INFRINGEMENT.  I LOOKED AT THE CODE.

7              WELL THEN, SO YOU CAN'T OPINE AS TO

8      WHETHER ANY OF THE OTHER MILLIONS OF CAPTIVATES WE

9      SOLD INFRINGE, CAN YOU?

10             IT GOES ON PAGE AFTER PAGE, AND I HAVE

11     THE TRANSCRIPT IF YOU WANT TO SEE IT.

12             THE COURT:  I WOULD LIKE TO SEE IT.

13             MS. TUCHER:  OKAY.  I HAVE MULTIPLE

14     COPIES OF THIS.  LET ME HAND UP ONE FOR YOUR HONOR.

15             AND I BELIEVE, YOUR HONOR, THE LAWYER WHO

16     TOOK THIS DEPOSITION IS IN THE COURTROOM, IT'S

17     MR. JOHNSON.

18             IF I COULD PASS ONE HERE.

19             THE COURT:  SO IF YOU COULD DIRECT ME TO

20     THE PORTION OF THE TESTIMONY.

21             MS. TUCHER:  YES.

22             STARTING ON PAGE 70 AT LINE 15.

23             YOU DO NOT HAVE AN OPINION THAT ALL

24     SAMSUNG CAPTIVATE PHONES USING THE GALLERY

25     APPLICATION INFRINGE THE '381 PATENT, RIGHT?

7

1           SO THE '381 PATENT IS THE RUBBER BAND

2     PATENT.  AND IT GOES ON FOR SEVERAL PAGES.

3           THEN I WOULD DIRECT YOUR ATTENTION

4     SPECIFICALLY TO PAGE 72, LINE 16.

5           BUT IF THERE ARE, A CERTAIN NUMBER,

6     MILLIONS OF CAPTIVATES THAT HAVE A DIFFERENT

7     VERSION OF GALLERY ON IT, YOU ARE NOT ACCUSING

8     THOSE MILLIONS OF OTHER PRODUCTS OF INFRINGING

9     BECAUSE YOU HAVEN'T LOOKED AT THEM.

10           AND OF COURSE OUR EXPERT WAS HONEST IN

11     ANSWERING THE QUESTION THAT HE CAN'T SAY ABOUT THE

12     OTHER MILLIONS OF CAPTIVATES WHETHER THEY INFRINGE

13     THE WAY THE ONE HE EXAMINED DOES BECAUSE HE DOESN'T

14     HAVE THE CODE.

15           THE COURT:  ALL RIGHT.

16           MS. TUCHER:  SO, THE RELIEF THAT WE ARE

17     SEEKING HERE IS, FIRST OF ALL, A FINDING THAT THEY

18     VIOLATED YOUR HONOR'S ORDER BECAUSE WE BELIEVE IT'S

19     PART OF A PRACTICE OF SAMSUNG DECIDING UNILATERALLY

20     WHAT DISCOVERY APPLE IS ENTITLED TO, AND WE BELIEVE

21     THAT'S RELEVANT FOR OTHER ISSUES IN THIS CASE.

22           SECOND, WE WOULD ASK THE COURT TO PROVIDE

23     WHAT SAMSUNG SHOULD HAVE PROVIDED IN BY WAY OF A

24     STIPULATION, AND THAT IS TO DEEM REPRESENTATIVE THE

25     SOURCE CODE THAT THEY DID PROVIDE.

1              AND THE ONE PLACE WE HAVE TO MAKE MORE

2     COMPLICATED WHAT SHOULD BE SIMPLE AND

3     STRAIGHTFORWARD IS WITH REGARD TO THE S2.  BECAUSE

4     THE S2 SOURCE CODE THAT THEY GAVE US ON THE

5     T-MOBILE IS NOT REPRESENTATIVE OF THE S2 SOURCE

6     CODE WITH REGARD TO THE RUBBER BANDING FUNCTION

7     ONLY BECAUSE THE T-MOBILE VERSION, WHEN IT WAS

8     RELEASED, HAD A DESIGN AROUND, A BLUE GLOW DESIGN

9     AROUND.

10              AND WE ARE NOT EVEN ACCUSING THE

11     T-MOBILE --

12              THE COURT:  AND IS THAT BECAUSE THE

13     T-MOBILE RELEASE OF THE PRODUCT CAME OUT AFTER THE

14     COMPLAINT WAS FILED?

15              MS. TUCHER:  ALL OF THE VERSIONS OF THE

16     S2 CAME OUT AFTER THE COMPLAINT WERE FILED.

17        THEY CAME OUT IN SEPTEMBER, OCTOBER AND LATER

18     DATES IN 2011.  AND OUR COMPLAINT DATES TO APRIL

19     AND THE INFRINGEMENT CONTENTIONS --

20              THE COURT:  SO AS TO THE S -- I THINK I'M

21     FINALLY CATCHING UP TO WHERE YOU WERE EIGHT MINUTES

22     AGO.

23              YOU ARE TELLING ME, I THINK, THAT THE

24     T-MOBILE VERSION OF THE S2, IS THE ONLY VERSION FOR

25     WHICH CODE HAS BEEN PRODUCED.

1           AND AS BEST YOU CAN TELL, IT'S ACTUALLY A

2    VERSION WHICH DOESN'T PRACTICE THIS PARTICULAR

3    INVENTION BECAUSE OF DESIGN AROUND; IS THAT FAIR?

4           MS. TUCHER:  THAT'S RIGHT.

5           IT IS REPRESENTATIVE OF OTHER ASPECTS OF

6    THE UNDERSTOOD CODE AND OUR OTHER PATENTS, BUT AS

7    TO THE RUBBER BANDING FUNCTIONALITY EITHER WE NEED

8    SAMSUNG TO PRODUCE THE FIRST S2 CODE, THE EPIC 4G

9    TOUCH S2 AS IT WAS RELEASED AND HAVE THAT DEEMED

10   REPRESENTATIVE OR WE NEED TO BE ABLE TO LOOK TO

11   OTHER PHONES THAT USE THE SAME SOURCE CODE.

12          SO FOR EXAMPLE, THE EPIC 4G S2 PHONE AND

13   THE AT&T S2 VERSION WERE RELEASED FROM ANDROID

14   GINGERBREAD 2.3.

15          AND WE HAVE GINGERBREAD PHONES THAT WE

16   HAVE LOOKED AT AND BALAKRISHNAN HAD TESTIFIED

17   ABOUT.

18          THE COURT:  SO YOU HAPPILY TAKE THE

19   GINGERBREAD RELEASED AS REPRESENTATIVE OF THIS

20   PARTICULAR VERSION?

21          MS. TUCHER:  THAT'S RIGHT.

22          SO FOR EXAMPLE, THE EXHIBIT 4G, IT MUST

23   HAVE BEEN A LAWYER WHO NAMED THAT PHONE BUT IT'S

24   ACTUALLY CALLED THE EXHIBIT 4G.  SO THE EXHIBIT 4G

25   OR OTHER GINGERBREAD PHONE COULD BE DEEMED

1    REPRESENTATIVE OF THE RUBBER BANDING FUNCTION OF

2    THE S2.

3              THE COURT:  IN TALKING ABOUT A

4    STIPULATION WITH THE OTHER SIDE, DID APPLE INSIST A

5    STIPULATION INCLUDE A FINDING OR PROVISION THAT

6    SAMSUNG HAD VIOLATED THE DECEMBER ORDER?

7              MS. TUCHER:  NO, YOUR HONOR, WE DIDN'T.

8              IN THE TIME THAT YOUR HONOR HAD ORDERED

9    SAMSUNG TO COMPLY WITH THIS ORDER, THERE WAS NO

10   STIPULATION NEGOTIATED.

11             WE -- APPLE'S SIDE MADE SEVERAL

12   PROPOSALS.  WE GOT NO SUBSTANTIVE FEEDBACK FROM

13   SAMSUNG.  AND IN PARTICULAR, NO PROPOSAL FROM

14   SAMSUNG UNTIL AFTER WE HAD ALREADY FILED THIS

15   ORDER.

16             WHEN WE GOT AN ORDER FROM SAMSUNG --

17   SORRY, A PROPOSED STIPULATION FROM SAMSUNG, THAT

18   WAS MARCH 15TH AFTER FILING OUR MOTION, AND IN THAT

19   STIPULATION IT WAS A NONSTARTER FOR A COLLECTION OF

20   REASONS.

21             AND ONE OF THE REASONS IT WAS A

22   NONSTARTER WAS IT ASKED APPLE TO STIPULATE THAT

23   CERTAIN DESIGN AROUND CODE WAS REPRESENTATIVE WHEN

24   IN FACT WE KNOW IT WASN'T.

25             SOME OF THE DESIGN AROUND CODE WE HAVEN'T

1    HAD A CHANCE TO EXAM PROPERLY, AND WE DON'T KNOW

2    WHEN AND WHERE WAS IT WAS DEPLOYED.

3            BUT AS TO THE RUBBER BANDING DESIGN

4    AROUND CODE, WE ASKED TO STIPULATE THAT ALL THE

5    PRODUCTS AFTER A CERTAIN DATE IN AUGUST EMPLOYED

6    AROUND THIS DESIGN AROUND CODE, WE KNOW THAT'S NOT

7    TRUE.

8            THE COURT:  ARE YOU TALKING ABOUT THE

9    T-MOBILE VERSION?

10           MS. TUCHER:  NOT THE T-MOBILE IN THE

11   SENSE THAT THE T-MOBILE DOES EMPLOY THE DESIGN

12   AROUND, BUT THE AT&T S2 DID NOT AT THE DATE OF

13   RELEASE, AND THE EPIC 4G TOUCH VERSION OF THE S2,

14   DID NOT ON THE DAY OF THE RELEASE.

15           AND I THINK THERE ARE OTHER PHONES AS

16   WELL, INFUSED 4G, FOR EXAMPLE.

17           SO THERE ARE A NUMBER OF PHONES THAT WE

18   KNOW ESTABLISH THAT THE STIPULATION THAT SAMSUNG

19   PROVIDED US IS JUST FACTUALLY INACCURATE.  SO WE

20   WERE NOT WILLING TO GO WITH THAT.

21           WE ALSO DIDN'T THINK IT MOOTED OUR MOTION

22   BECAUSE IT CAME AFTER WE FILED THE MOTION.  AND WE

23   TOLD THEM WE THOUGHT IN ORDER TO MOOT THE MOTION

24   THEY WOULD HAVE TO STIPULATE TO A VIOLATION OF THE

25   ORDER.  BUT WE NEVER SAID IN ORDER TO REACH AN

1   ADEQUATE STIPULATION ON WHAT SOURCE CODE IS

2   REPRESENTATIVE THAT THEY WOULD HAVE TO STIPULATE TO

3   HAVING VIOLATED THE ORDER.

4           THE COURT:  I INTERRUPTED YOU, SO I

5   APOLOGIZE FOR THAT.

6           COULD YOU GIVE ME AGAIN YOUR LAUNDRY LIST

7   OF ASKS FOR THIS VIOLATION.

8           MS. TUCHER:  IT'S ACTUALLY A SHORT LIST.

9           MY FIRST ASK IS FOR A FINDING OF

10  INFRINGEMENT -- I WOULD LOVE ONE OF THOSE, BUT

11  ACTUALLY --

12          THE COURT:  I'M SURE YOU WOULD, I CAN'T

13  HELP YOU OUT THERE.

14          MS. TUCHER:  WE ARE NOT SEEKING THAT

15  BECAUSE WE ARE ALLOWING THEM TO MAKE THE WHATEVER

16  NON VALIDITY ARGUMENTS THEY HAVE BASED ON THE

17  SOURCE CODE.

18          THE COURT:  PROBABLY A GOOD IDEA

19  CONSIDERING MY JURISDICTION IS LIMITED ON THIS ONE.

20          MS. TUCHER:  WHAT I MEANT TO SAY IS WE

21  ARE SEEKING A FINDING THAT THEY VIOLATED YOUR

22  ORDER, YOUR DECEMBER ORDER, REQUIRING THEM TO

23  PRODUCE THE SOURCE CODE.

24          WE ARE SEEKING A FINDING THAT THE SOURCE

25  CODE THAT THEY HAVE PRODUCED BY DECEMBER 31ST IS

1     REPRESENTATIVE OF THE PRODUCTS, OF ALL THE PRODUCTS

2     SOLD FOR THE SOURCE CODE -- I'M STATING THIS BADLY,

3     THIS IS STATED BETTER IN OUR PAPERS.

4              BUT BASICALLY THE ONE VERSION THEY GAVE

5     US OF EACH OF THE PRODUCTS IS REPRESENTATIVE OF ALL

6     THE PHONES SOLD OF THAT PRODUCT.

7              THE COURT:  WITH ONE EXCEPTION.

8              MS. TUCHER:  I WAS JUST GOING TO SAY,

9     WITH ONE EXCEPTION.

10             THAT AS TO THE S2 PHONES, AND AS TO THE

11    RUBBER BANDING FEATURE ONLY, INSTEAD OF DEEMING THE

12    T-MOBILE S2 REPRESENTATIVE, THE EXHIBIT 4G BE

13    DEEMED REPRESENTATIVE OF HOW THE RUBBER BANDING

14    FUNCTION OPERATES IN THOSE S2'S THAT WERE RELEASED

15    USING ANDROID 2.3 OR GINGERBREAD.

16             THE COURT:  IS EXHIBIT 4G THE VERSION OF

17    THE PHONE AVAILABLE ON AT&T OR ANY OTHER NETWORK

18    CARRIER?

19             MS. TUCHER:  IT'S AVAILABLE THROUGH THE

20    CARRIER.  I CAN'T TELL YOU OFF HAND WHICH CARRIER.

21    IT IS A GINGERBREAD PHONE THAT HAS BEEN THE SUBJECT

22    OF EXPERT TESTIMONY IN THE CASE.

23             BUT WE WOULD BE SATISFIED WITH AN ORDER

24    THAT SPECIFIED ANY GINGERBREAD PHONE THAT THE

25    PARTIES HAD ANALYZED.  I JUST NAME THAT ONE BECAUSE

1    I KNOW THAT'S THE ONE DR. BALAKRISHNAN FOCUSED ON

2    WHEN HE REGARDED HIS TESTIMONY ABOUT HOW THE

3    GINGERBREAD OPERATES WITH REGARD TO THE BALANCE

4    FUNCTIONALITY.

5                THE COURT:  ANYTHING ELSE ON YOUR LIST?

6                MS. TUCHER:  NOT UNLESS YOU HAVE

7    QUESTIONS, THANK YOU.

8                THE COURT:  ALL RIGHT.  THANK YOU.

9                MR. JOHNSON?

10               SO DID MY ORDER PERMIT SAMSUNG TO CHERRY

11   PICK CERTAIN VERSIONS OR WAS IT FAIRLY EXPLICIT?

12               MR. JOHNSON:  THERE WASN'T ANY CHERRY

13   PICKING OF VERSIONS.

14               WITH RESPECT TO THE S2, THIS IS THE FIRST

15   TIME HEARING OF THE ISSUE WITH RESPECT TO THE S2 IN

16   PARTICULAR.

17               SO THIS SORT OF GOES BACK TO

18   YOUR HONOR'S, I THINK, POINT AT THE LAST HEARING AS

19   WELL WHICH WAS THE MEET AND CONFER PROCESS ON THE

20   FUNCTIONALITY OF THE SOURCE CODE DIDN'T START IN

21   MARCH, DIDN'T START IN FEBRUARY.

22               THIS STARTED IN THE FALL.  AND THEY

23   SERVED DISCOVERY ON OCTOBER ON DESIGN AROUNDS THEN

24   THEY SERVED AN INTERROGATORY IN JANUARY ON DESIGN

25   AROUNDS.  AND WE RESPONDED FEBRUARY 3RD, AND WE

1    ARTICULATED WHAT THE DESIGN AROUNDS WERE.

2            WITH RESPECT TO THE BLUE GLOW

3    APPLICATION, THEY'VE KNOWN ABOUT THE BLUE GLOW FOR

4    A WHILE AND THEIR EXPERTS, INCLUDING

5    DR. BALAKRISHNAN, HAS SAID HE DOESN'T NEED SOURCE

6    CODE TO DETERMINE WHETHER THAT'S INFRINGEMENT OR

7    NOT.

8            SO THIS IS A LITTLE BIT OF, I AGREE THAT

9    WE WERE BOUND TO PRODUCE SOURCE CODE AND WE

10   PRODUCED SOURCE CODE.  BUT TO DETERMINE WHETHER

11   THERE'S INFRINGEMENT, YOU LOOK AT THE DEVICE AND

12   YOU SEE IF IT OPERATES ACCORDING TO THE CLAIMS IN

13   THE PATENT.

14           AND I DID DEPOSE DR. BALAKRISHNAN ON

15   FRIDAY AND I ASKED HIM ABOUT THE PRODUCTS BECAUSE I

16   COULDN'T TELL FROM HIS REPORT WHAT PHONE HE HAD.

17   HE DIDN'T BRING ANY OF THE PHONES TO HIS

18   DEPOSITION.

19           AND I ASKED HIM WHAT VERSION OF GALLERY

20   HE WAS LOOKING AT BECAUSE THERE ARE LOTS OF

21   DIFFERENT ITERATIONS WITHIN THE GALLERY APPLICATION

22   THAT THEY CLAIM ARE INFRINGING.

23           AND SOME OF THOSE WHEN YOU MOVE A PHOTO

24   FROM ONE PHOTO TO THE NEXT, THAT'S A DIFFERENT

25   INFRINGEMENT READING THAN WHEN YOU ZOOM IN ON A

1    PHOTOGRAPH AND YOU MOVE THE PHOTOGRAPH AROUND BY

2    ITSELF.  THERE ARE DIFFERENT THEORYS EVEN WITHIN

3    THE GALLERY.

4            SO WHEN I WAS ASKING HIM ABOUT WHAT ARE

5    THE DIFFERENT VERSIONS HE WAS LOOKING AT BECAUSE IT

6    WASN'T IN HIS REPORT AND I WAS TRYING TO UNDERSTAND

7    WHAT CAPTIVATE PHONE HE HAD LOOKED AT AND I DIDN'T

8    HAVE ANY PROOF OF THAT.

9            SO TO GO BACK, WE WERE ORDERED TO PRODUCE

10   SOURCE CODE, AND I DO THINK THERE'S AN IMPORTANT

11   EXCEPTION IN YOUR HONOR'S DECEMBER 22ND ORDER THAT

12   SAID PRODUCE THE SOURCE CODE BY DECEMBER 31ST.

13           WE PRODUCED THE AS RELEASED SOURCE CODE

14   FOR ALL OF THE PRODUCTS THAT WERE ACCUSED.

15   DR. BALAKRISHNAN, WHEN I DID DEPOSE HIM, I DON'T

16   HAVE THE BENEFIT OF HAVING THE OTHER PARTS OF THE

17   TRANSCRIPT HERE, BUT HE SAID THE AS RELEASED CODE

18   IS WHAT'S IMPORTANT, IT'S WHAT HE'S CONSIDERED.

19   THEY'VE HAD A PERSON, THEY HAD CODE REVIEWERS IN

20   OUR OFFICE SINCE DECEMBER EVERY DAY, SATURDAYS AND

21   SUNDAYS INCLUDING THIS PAST WEEKEND LOOKING AT THE

22   SOURCE CODE.

23           WE PRODUCED SOMETHING ON THE ORDER OF 50

24   MILLION PAGES OF CODE AS BACK IN DECEMBER 31ST.

25           THERE WAS A SUBSEQUENT ORDER, YOUR HONOR,

1    WHERE APPLE MOVED TO COMPEL DOCUMENTS RELATED TO

2    THE EVOLUTION, THE FEATURES AND THE UPDATES OF THE

3    SOFTWARE.  AND WE THEN COLLECTED THAT INFORMATION

4    AND PRODUCED THE INFORMATION THAT RELATES TO THE

5    VERSION CHANGES.

6              AND IN -- YOUR HONOR, FROM JANUARY 27TH

7    YOU ASKED, YOU PROVIDED BASICALLY AN ALTERNATIVE

8    AND YOU SAID IN ORDER TO AVOID SOME OF THE BURDEN

9    ASSOCIATED WITH IT, PARTIES CAN AGREE TO REACH SOME

10   SORT OF STIPULATION.

11             AND WE SAW THAT AS A REAL RESPONSIBILITY.

12   WE STARTED NEGOTIATING WITH THEM RIGHT AWAY.

13             THEY DID REQUIRE FROM THE VERY BEGINNING,

14   YOUR HONOR, THAT SAMSUNG STIPULATE TO THE FACT THAT

15   SOMEHOW SAMSUNG HAD VIOLATED THE COURT'S

16   DECEMBER 22ND ORDER IN THE INITIAL STIP THAT THEY

17   SENT TO US.

18             AND EVEN IN THE LETTER THAT'S ATTACHED TO

19   EXHIBIT -- IT'S EXHIBIT 2 TO THE BRIGGS DECLARATION

20   FROM MR. PERNICK, HE SAYS IN PARAGRAPH 2:

21   "SAMSUNG CANNOT MOOT THIS ASPECT OF APPLE'S MOTION

22   UNLESS IT FORMALLY AGREES TO THIS IN A STIPULATION.

23

24             WE UNDERSTAND THAT SAMSUNG DOES AGREE

25   THAT IT HAS VIOLATED THE ORDER AND THEREFORE

1    SUGGEST ADDING THIS TO THE STIPULATION UNDER THE

2    DISCUSSION WITHOUT SUCH A PROVISION, APPLE'S MOTION

3    COULD NEVER BE MOOT."

4            AND HE GOES ON TO SAY, "THAT AS A GENERAL

5    MATTER, APPLE'S PROPOSED STIPULATION WAS NEVER

6    INTENDED TO RESOLVE ALL OF THE DISPUTES.  "

7            THE COURT:  AND WHEN WAS THAT

8    COMMUNICATION SENT?

9            MR. JOHNSON:  MARCH 16TH.

10           THIS IS HARDLY NEGOTIATING IN GOOD FAITH

11   WITH RESPECT TO THE STIPULATION.  IT'S CERTAINLY

12   NOT BAD FAITH ON SAMSUNG'S PART.

13           THE COURT:  SO IF YOU HAD A PROBLEM

14   NEGOTIATING THE STIPULATION WHY DIDN'T YOU FOLLOW

15   MY GUIDANCE IN FOOTNOTE 25 TO SEEK RELIEF?

16           IN OTHER WORDS, I THOUGHT IN MY

17   JANUARY 27TH ORDER I WAS PRETTY EXPLICIT THAT THE

18   STIPULATION WAS PROVIDED AS AN ALTERNATIVE TO

19   MITIGATE THE BURDEN IN COMPLYING WITH MY ORDER AND

20   IF THERE WAS A PROBLEM WITH APPLE'S GOOD FAITH IN

21   REACHING THE STIPULATION, YOU SHOULD SEEK GUIDANCE

22   FROM THE COURT.

23           TO MY KNOWLEDGE, SAMSUNG DIDN'T DO THAT;

24   WHY NOT?

25           MR. JOHNSON:  YOUR HONOR, THEY HAD FILED

1     A MOTION FOR SANCTIONS ALREADY.  THEY FILED A

2     MOTION FOR SANCTIONS ON MARCH 9TH WITHOUT EVER

3     MEETING AND CONFERRING.

4             WE THOUGHT WE WERE STILL NEGOTIATING WITH

5     THEM.  THEY DON'T MEET AND CONFER.  THE NEXT THING

6     WE KNOW THEY FILE A MOTION FOR SANCTIONS.  WE

7     DISCUSS INTERNALLY, CONTINUE TO DISCUSS INTERNALLY

8     THE REPRESENTATIVE PRODUCTS OR FUNCTIONALITY

9     ISSUES.

10            WE CALL THEM BACK UP AND THIS IS THE

11    LETTER WE GET BACK SAYING THERE'S NO WAY WE ARE

12    GOING TO AGREE TO IT UNLESS YOU -- UNLESS YOU

13    STIPULATE TO THE FACT THAT WE'VE, THAT SAMSUNG HAS

14    VIOLATED THE DECEMBER 22ND ORDER.

15            AT THAT POINT WE WERE, FROM MY

16    STANDPOINT, WE WERE IN BETWEEN.  HOW WERE WE TO

17    THEN BRING THIS TO YOUR HONOR'S ATTENTION?

18            THE COURT:  I MEAN, YOU ALL HAVE SHOWN A

19    FAIRLY EXPANSIVE CREATIVITY IN COMING UP WITH

20    MOTIONS AND PLEADINGS TO GET MY ATTENTION AT ALL

21    DAYS AND HOURS OF THE WEEK.

22            HERE'S WHAT I'M STRUGGLING WITH

23    MR. JOHNSON, LET'S GO BACK TO DECEMBER 22ND.

24            I THOUGHT THIS WAS A PRETTY SPARTAN

25    COMMAND.  PRODUCE THE SOURCE CODE AND TECHNICAL

1    DOCUMENTS REQUESTED BY APPLE'S MOTION WITH ONE

2    EXCEPTION.  THE EXCEPTION DOESN'T APPLY TO

3    VERSIONS, SO HOW AM I TO READ SAMSUNG'S PRODUCTION

4    AS OF DECEMBER 31ST, 2011, AS ANYTHING OTHER THAN A

5    VIOLATION OF THAT SPECIFIC COMMAND?

6         MR. JOHNSON:  BECAUSE WE PRODUCED, WE

7    PRODUCED THE SOURCE CODE IN THE TECHNICAL DOCUMENTS

8    REQUESTED BY APPLE'S MOTION.

9         THE COURT:  SO EVERY VERSION WAS PRODUCED

10   BY THE 31ST.

11        MR. JOHNSON:  NOT -- LET'S BACK UP.

12        THE COURT:  BECAUSE THEIR MOTION WAS NOT

13   LIMITED TO PARTICULAR VERSIONS, WAS IT?

14        MR. JOHNSON:  NO, I THINK IT WAS.

15   THEIR MOTION, WHEN YOU GO BACK AND YOU LOOK AT WHAT

16   THEY WERE ASKING FOR -- AND BY THE WAY, IT'S ALSO

17   WHEN YOU LOOK AT WHAT THEY ARE ASKING FOR IN THEIR

18   JANUARY MOTION WHERE THEY SPECIFICALLY, AS

19   YOUR HONOR POINTS OUT IN YOUR JANUARY ORDER TO LOOK

20   AT THE 14 CATEGORIES OF DOCUMENTS IN THEIR PROPOSED

21   ORDER, THEY SPECIFICALLY ASK FOR THE PROPOSED ORDER

22   WHICH IS DOCKET NUMBER 616.  THEY ASK FOR THE

23   DESIGN AROUND DOCUMENTATION AND THEY ASK FOR THE

24   VERSIONS OF THE CODE.

25        WHEN YOU LOOK AT CATEGORIES, FOR EXAMPLE

1      A THROUGH R, THEY'RE SPECIFICALLY ASKING FOR THE

2      FEATURES, YOU KNOW, CHANGES MADE TO EACH VERSION OF

3      THE SOFTWARE FIRM WEAR PROGRAM OR OTHER SYSTEMS.

4              THE COURT:  WAS THIS A PROPOSED ORDER

5      SUBMITTED IN CONNECTION WITH THE --

6              MR. JOHNSON:  WITH THE JANUARY MOTION TO

7      COMPEL.

8              THE COURT:  OKAY.  SO LET'S GO BACK TO

9      DECEMBER.

10             APPLE FILES A MOTION IN ADVANCE OF

11     DECEMBER, I SHOULD SAY ORDER.  THEY INCLUDE A --

12     PRESUMABLY THEY INCLUDE A PROPOSED ORDER.  DID THAT

13     PROPOSED ORDER INDICATE THAT THE ASK WAS FOR LESS

14     THAN ALL VARIATIONS?

15             MR. JOHNSON:  THEY SENT A NARROW SCOPE,

16     THE MOTION POINTS OUT THE NARROWED SCOPE OF

17     REQUESTED CATEGORIES ON DECEMBER 6TH.  THEIR NARROW

18     SCOPE DOESN'T ASK FOR EACH AND EVERY VERSION OF THE

19     SOFTWARE.

20             IN FACT, YOU KNOW, SAMSUNG OPERATES

21     DIFFERENTLY THAN APPLE DOES IN THE SENSE THAT THERE

22     ARE LITERALLY HUNDREDS AND HUNDREDS OF VERSIONS OF

23     THE CODE THAT WITH RESPECT TO EACH CARRIER

24     SOMETIMES THEY UPDATE THE CODE, 2, 3 TIMES A DAY

25     AND IT'S DELIVERED OVER THE AIR.

1        SO WITH RESPECT TO THE FUNCTIONALITY OF

2   THE ACCUSED PRODUCTS OF THE ACCUSED FEATURES IN THE

3   PATENTS, WE PROVIDED THE CODE AS IT WAS CONTAINED

4   ON THE 27 PRODUCTS THAT WAS IN EXISTENCE.

5        WE PRODUCED IT ON DECEMBER 31ST.  AND WE

6   WERE WILLING TO STIPULATE THAT THE FUNCTIONALITY,

7   THE ACCUSED FEATURES WAS BASICALLY THE SAME FOR

8   EVERYTHING ELSE EXCEPT FOR THE THREE DESIGN AROUNDS

9   FOR THE '381 PATENT THE '891 AND THE '163 PATENT.

10        AND THOSE WERE PRODUCED.  THE '381 DESIGN

11   AROUND CODE WAS PRODUCED JANUARY 23RD.  AND THEY --

12   IT SOUNDS LIKE IT MAY HAVE EVEN BEEN PRODUCED WHEN

13   COUNSEL WAS REFERRING TO THE S2, T-MOBILE VERSION

14   HAVING BLUE GLOW, IT SOUNDS LIKE THEY HAD THAT BY

15   DECEMBER 31ST, SO MAYBE THEY EVEN HAD THE BLUE GLOW

16   DESIGN AROUND BY DECEMBER 31ST FOR THE SOURCE CODE.

17        THE OTHER TWO SOURCE CODE VERSIONS WERE

18   PRODUCED AT THE END OF DISCOVERY RIGHT AFTER, JUST

19   AS APPLE PRODUCED 250,000 PAGES OF DOCUMENTS AFTER

20   THE CLOSE OF DISCOVERY.

21        THERE WAS A BIG RUSH TO PRODUCE A LOT OF

22   DOCUMENTS AT THE END OF DISCOVERY.

23        AND WHAT THEY --

24        THE COURT:  SO JUST ON THOSE POINTS THEN,

25   IS IT ACCURATE FOR ME TO UNDERSTAND THAT AT LEAST

1    AS TO THOSE TWO VERSIONS, THOSE VERSIONS WERE NOT

2    PRODUCED BY THE 31ST?

3            MR. JOHNSON:  RIGHT.  THEY WERE NOT

4    PRODUCED BY THE 31ST.

5            AND YOUR HONOR -- THEY WERE IN A PRODUCT

6    THAT WASN'T RELEASED.  WE DIDN'T HAVE THE SOURCE

7    CODE FOR THOSE TWO VERSIONS, THE DESIGN AROUNDS FOR

8    THE '891 AND THE '163.  WE DIDN'T HAVE THEM BY

9    DECEMBER 31ST.

10           THE COURT:  AND WHY IS THAT?

11           MR. JOHNSON:  BECAUSE AS BEST AS WE WERE

12   ABLE TO TELL, IT WASN'T RELEASED UNTIL THE EARLIEST

13   WE CAN SEE IS DECEMBER 23RD.  WE DIDN'T KNOW ABOUT

14   IT UNTIL AFTER DECEMBER 31ST.

15           AND SO WE DIDN'T HAVE THAT THE UNTIL SOME

16   TIME AFTER DECEMBER 31ST.

17           THE COURT:  WHEN YOU SAY "WE" DO YOU MEAN

18   YOU AS OUTSIDE COUNSEL AS OPPOSED TO YOUR CLIENT?

19   YOUR CLIENT OBVIOUSLY HAD THE CODE WELL IN ADVANCE

20   OF THE 31ST.

21           MR. JOHNSON:  I DON'T THINK THEY HAD IT

22   WELL IN ADVANCE OF DECEMBER 31ST.  I DON'T KNOW

23   SPECIFICALLY.

24           ALL I KNOW IS THAT IT WAS RELEASED.

25   THERE WAS A PRODUCT THAT HAD A RELEASED VERSION OF

24

1    THE '891 AND '163 DESIGN AROUND CODE.  THAT PRODUCT

2    WAS RELEASED DECEMBER 23RD.

3              I DON'T KNOW WHICH ENTITY HAD IT.  A LOT

4    OF THIS IS DONE OUTSIDE OF THE UNITED STATES.  IT'S

5    DONE OUTSIDE OF KOREA AS WELL.

6              THE COURT:  OKAY.

7              SO -- I WANT TO MAKE SURE.  I'M

8    STRUGGLING, AS YOU CAN TELL, TO UNDERSTAND WHAT THE

9    FACTS ARE LET ALONE THE IMPLICATIONS OF THOSE

10   FACTS.

11             AM I ACCURATE IN UNDERSTANDING THAT AT

12   LEAST AS OF DECEMBER 31ST, 2011, WHICH IS MY

13   DEADLINE, THERE WERE TWO VERSIONS OF PRODUCTS AT

14   LEAST TWO VERSIONS OF PRODUCT IN THE MARKETPLACE

15   FOR WHICH NO SOURCE CODE WAS PRODUCED, WHETHER IT'S

16   JUSTIFIED, WHETHER IT'S PERFECTLY REASONABLE,

17   WHETHER YOU TRIED AS HARD AS YOU COULD, IS THAT AN

18   ACCURATE UNDERSTANDING?

19             MR. JOHNSON:  I THINK THAT'S ACCURATE.

20             THE COURT:  OKAY.

21             SO AS TO ANY OTHER VERSIONS IN COMMERCIAL

22   RELEASE AS OF THE 31ST WERE THERE ANY OTHER

23   VERSIONS OF CODE FOR WHICH NO SOURCE WAS PRODUCED

24   TO APPLE BY MY DEADLINE.

25             MR. JOHNSON:  I'M SORRY, COULD YOU REPEAT

1    THAT.

2              THE COURT:  SURE.

3              I WANT TO UNDERSTAND WHETHER THERE ARE

4    ANY OTHER VERSIONS OF THE CODE WHICH WERE IN

5    COMMERCIAL RELEASE AS OF THE 31ST FOR WHICH NO COPY

6    WAS PRODUCED TO APPLE.

7              MR. JOHNSON:  WELL, THEIR VERSIONS.

8         THAT'S WHAT I'M SAYING THERE ARE VERSIONS OF

9    CODE THAT WERE DELIVERED AFTER DECEMBER 31ST.  THEY

10   MAY CHANGE A COLOR OF A PARTICULAR WIDGET HERE, IT

11   HAS NOTHING TO DO WITH THE FUNCTIONALITY.  SO THERE

12   ARE HUNDREDS OF THESE VERSIONS.

13             THE COURT:  SO THERE ARE HUNDREDS OF

14   VERSIONS OF THE CODE THAT WERE IN COMMERCIAL

15   RELEASE AS OF THE 31ST FOR WHICH NO COPY WAS

16   PRODUCED TO APPLE.

17             MR. JOHNSON:  WE GAVE THEM A LOG

18   DESCRIBING ALL THE CHANGES THAT WERE MADE TO THE

19   CODE.

20             THE COURT:  RIGHT.  BUT WAS A COPY OF

21   THAT CODE PRODUCED BY THE 31ST?

22             MR. JOHNSON:  WELL, SOME OF THAT CODE

23   WASN'T IN EXISTENCE AT THE 31ST.

24             THE COURT:  LET'S TALK ABOUT THE CODE

25   THAT WAS IN EXISTENCE.

1        YOU AGREED WITH ME THERE ARE AT LEAST TWO

2   VERSIONS OF CODE WHICH WERE IN COMMERCIAL RELEASE

3   AS OF THE 31ST FOR WHICH NO COPY WAS PRODUCED TO

4   APPLE.

5        WHAT I'M TRYING TO UNDERSTAND IS WHAT IS

6   THE UNIVERSE OF ADDITIONAL VERSIONS OF CODE IN

7   COMMERCIAL RELEASE OF THE 31ST FOR WHICH NO COPY

8   WAS PRODUCED BY THAT DATE.  HUNDREDS?  DOZENS?

9        MR. JOHNSON:  I DON'T KNOW THE ANSWER TO

10  THAT FOR SURE.

11       NOW, WITH RESPECT TO THE ACCUSED

12  FUNCTIONALITY OF THOSE FEATURES, FOR THE VERSIONS

13  OF THE CODE, THEY OPERATED THE SAME WAY.  AND

14  THAT'S WHAT WE TOLD APPLE AND THAT'S WHAT APPLE'S

15  EXPERT BELIEVES AND THAT'S WHAT SAMSUNG BELIEVES.

16       SO WITH RESPECT TO -- THE ONLY CHANGE

17  WITH RESPECT TO THE EIGHT PATENTS THE UTILITY

18  PATENTS THAT HAVE BEEN ACCUSED THE ONLY CHANGE THAT

19  IS HAVE OCCURRED WITH RESPECT TO THE DESIGN AROUND

20  FOR THE '381 WHICH THEY HAVE KNOWN ABOUT, THEIR

21  EXPERT HAS KNOWN ABOUT, IT'S IN THE EXPERT REPORT,

22  HE TESTIFIED ABOUT IT, THERE'S NO PREJUDICE WITH

23  RESPECT TO THAT.

24       THE COURT:  SO WE WILL GET TO PREJUDICE

25  IN A MOMENT.

```
 1            AGAIN, I WANT TO MAKE SURE I'M NOT

 2   MISUNDERSTANDING YOUR POSITION ON WHAT HAPPENED

 3   HERE.

 4            IT SOUNDS LIKE WE ARE ALL IN AGREEMENT

 5   THAT THERE ARE AT LEAST DOZENS IF UNDERSTAND

 6   HUNDREDS OF VERSIONS OF THIS CODE THAT WERE IN

 7   COMMERCIAL RELEASE AS OF THE 31ST OF DECEMBER AND

 8   FOR WHICH NO COPY WAS PRODUCED TO APPLE BY THAT

 9   DATE.

10            ARE WE IN AGREEMENT THERE?

11            MR. JOHNSON:  WE ARE IN AGREEMENT.

12       BUT I GO BACK TO YOUR HONOR'S ORDER WITH

13   RESPECT TO THE -- WHAT WAS REQUIRED TO BE PRODUCED

14   BY DECEMBER 31ST, AND THE HUNDREDS OF VERSIONS OF

15   CODE THAT OR --

16            THE COURT:  ARE YOU ALL MAKING THIS CODE

17   AVAILABLE?

18            MR. JOHNSON:  IT'S --

19            THE COURT:  ARE COPIES AT QUINN'S OFFICES

20   OR --

21            MR. JOHNSON:  YES.

22            JUST ON BOTH SIDES THERE ARE COPIES AT

23   EACH OTHER'S OFFICES THEY CAN COME AND LOOK AT IT.

24            THE COURT:  IS IT REMOTE ACCESS AT THE

25   OFFICES OR ARE THERE ACTUALLY LOCAL COPIES THAT ONE
```

1    COULD INSPECT?

2            MR. JOHNSON:  THERE ARE LOCAL COPIES AND

3    THEY ASKED FOR THINGS TO BE PRINTED OUT AND WE

4    PRINT THEM OUT.  AND IT'S IT IS SAME ON BOTH SIDES

5    PURSUANT TO THE PROTECTIVE ORDER.

6            THE COURT:  WHAT WAS THE PROBLEM IN

7    SIMPLY TELLING YOUR CLIENT THAT THERE WAS AN ORDER

8    OF THIS COURT TO PRODUCE EVERYTHING SO GET IT

9    PRODUCED BY THE 31ST.

10           WHAT WAS THE PROBLEM WITH THAT?

11           MR. JOHNSON:  AS I SAID, FIRST OF ALL,

12   THERE'S CODE THAT COMES FROM THE CARRIERS THERE'S

13   CODE THAT --

14           THE COURT:  THE CARRIERS GET IT FROM

15   SAMSUNG, RIGHT?

16           MR. JOHNSON:  WELL, THE CARRIERS GET IT

17   FROM SAMSUNG.  THEY GET IT FROM -- THERE ARE ALSO,

18   I THINK THERE ARE OTHER ENTITIES INVOLVED.  I

19   MEAN'S LOT OF THIS CODE COMES FROM GOOGLE, FOR

20   EXAMPLE.

21           THE COURT:  RIGHT.

22           I UNDERSTAND YOU HAVE YOUR MODIFICATIONS

23   AND ADDITIONAL APPLICATIONS WHICH ARE INCLUDED IN

24   THE BUNDLE THAT'S DELIVERED.  BUT THE POINT IS THE

25   CARRIERS GET THE CODE FROM SAMSUNG, RIGHT, THAT WE

1    ARE TALKING ABOUT.

2              MR. JOHNSON:  RIGHT.

3              THE COURT:  SO WHAT'S THE RELEVANCE OF

4    THE FACT THAT THE CARRIERS -- WHAT WAS THE BURDEN

5    IN PRODUCING ALL OF THIS?

6              MR. JOHNSON:  THE CARRIERS ARE WHO

7    ULTIMATELY WHO DELIVER IT OVER THE AIR POTENTIALLY

8    TO THE ULTIMATELY TO THE SUBSCRIBERS.

9              THE COURT:  THEY ARE ULTIMATELY

10   RESPONSIBLE FOR THE INSTALLMENTS.

11             MR. JOHNSON:  SO WHAT GETS DELIVERED, IT

12   TAKES COORDINATION WITH THE CARRIERS AS WELL.

13   THAT'S MY POINT.  IT'S NOT JUST SAMSUNG.

14             THE COURT:  SO IS THE CODE THAT'S

15   AVAILABLE FOR INSPECTION IN YOUR FIRM'S OFFICE IS

16   CODE COMING FROM THE CARRIERS?

17             MR. JOHNSON:  IT'S COMING FROM SAMSUNG

18   AND WE'VE CONFIRMED THIS IS CODE AVAILABLE OVER THE

19   AIR THROUGH THE CARRIERS TO THE CUSTOMERS.

20             THE COURT:  ALL RIGHT.

21             MR. JOHNSON:  SO GOING BACK TO YOUR

22   QUESTION ABOUT THE VERSIONS OF SOFTWARE THE

23   VERSIONS OF THE CODE, THERE ARE VERSIONS OF CODE

24   THAT WERE NOT PRODUCED BY DECEMBER 31ST.

25             TO THE EXTENT THAT, AS I SAID, WE READ

1    YOUR HONOR'S ORDER AND WE READ THE MOTION THAT SET

2    UP YOUR HONOR'S ORDER.  AND THROUGH THE MEET AND

3    CONFER PROCESS BECAUSE THERE WAS NOT DONE PURELY IN

4    THE A VACUUM WITH RESPECT TO OUR DISCUSSIONS WITH

5    APPLE.  WE WERE ALL HEADING TOWARDS AGREEING ON

6    REPRESENTATIVE FUNCTIONALITY WITH RESPECT TO THESE

7    FEATURES.

8         SO THERE ARE VERSIONS THAT WERE NOT MADE

9    AVAILABLE BUT WE PRODUCED THE VERSIONS OF THE CODE

10   THAT WERE DELIVERED ON THE PRODUCTS AS THEY WERE

11   RELEASED FOR THE PRODUCTS THAT WERE ACCUSED.

12        NOW AS THE PRODUCTS THEN WERE, TO THE

13   EXTENT THERE ARE ANY DESIGN AROUNDS, THOSE WERE

14   THEN DELIVERED TO APPLE.

15        AS I SAID --

16        THE COURT:  BY DECEMBER 31ST?

17        MR. JOHNSON:  DECEMBER 31ST OR

18   JANUARY 23RD IN THE CONTEXT OF THE '381, AND

19   MARCH 10TH AND 12TH WITH RESPECT TO THE OTHER TWO

20   PATENTS.

21        I MEAN, WHAT APPLE SEEKS WITH RESPECT TO

22   ITS MOTION HERE, AND I HEARD COUNSEL SORT OF SECOND

23   ASK WAS THAT THE SOURCE CODE THAT -- THEY WANT A

24   REPRESENTATION THAT THE SOURCE CODE WE PRODUCED BY

25   DECEMBER 31ST IS REPRESENTATIVE OF ALL PRODUCTS.

1          AND THAT'S JUST SIMPLY NOT THE CASE AND

2    IT'S PARTICULARLY WITH RESPECT TO THE THREE DESIGN

3    AROUNDS.

4          THEY ESSENTIALLY WANT THE COURT TO FIND

5    THAT THE PRODUCT THAT IS HAVE THE DESIGN AROUNDS IN

6    THEM OPERATE THE SAME DAY THE PRODUCTS THAT DON'T

7    HAVE THE DESIGN AROUNDS IN THEM.  AND THAT'S

8    PREJUDICIAL AND SIMPLY NOT FAIR AT THIS POINT.

9          WE PRODUCED THE SOURCE CODE FOR THE

10   PHONES WITH RESPECT TO THE DESIGN AROUNDS IN

11   ADVANCE OF WHEN THEY HAD THEIR EXPERT REPORTS DUE.

12          AND BEFORE THE CLOSE OF DISCOVERY, WITH

13   RESPECT TO THE '381, AND RIGHT AT THE CLOSE OF

14   DISCOVERY WITH THE OTHER TWO PATENTS.

15          THE COURT:  WERE ANY OF THE THREE DESIGN

16   AROUNDS THAT YOU ARE REFERRING TO, WERE ANY OF THEM

17   IN COMMERCIAL RELEASE BEFORE DECEMBER 23RD?

18          MR. JOHNSON:  YES.  THE BLUE GLOW.

19          THE COURT:  OKAY.

20          AND WAS THE BLUE GLOW CODE PRODUCED BY

21   THE 31ST?

22          MR. JOHNSON:  I DON'T KNOW THE ANSWER TO

23   THAT.  I'M HEARING COUNSEL'S --

24          THE COURT:  WELL, ISN'T THAT KIND OF THE

25   OPERATIVE QUESTION HERE?

1           MR. JOHNSON:  HEARING COUNSEL'S

2     REPRESENTATION TODAY THAT WE PRODUCED CODE FOR THE

3     S2 T-MOBILE TELLS ME, THAT WAS DONE BY

4     DECEMBER 31ST TELLS ME IT WAS PRODUCED BY

5     DECEMBER 31ST.

6           NOW I DON'T KNOW THE ANSWER WITH RESPECT

7     TO THE SPECIFIC QUESTION.  I WAS COMING HERE TODAY

8     THINKING THAT THE FIRST SOURCE CODE PRODUCED FOR

9     THE BLUE GLOW WAS PRODUCED ON JANUARY 23RD.

10          THE COURT:  IF THAT'S THE CASE, WOULD YOU

11    AGREE THAT WOULD BE A VIOLATION OF MY ORDER?

12          MR. JOHNSON:  NO, YOUR HONOR, BECAUSE

13    WITH RESPECT TO THE ORDER, I GO BACK TO YOUR ORDER,

14    YOUR ORDER SAYS, PRODUCE SOURCE CODE AND TECHNICAL

15    DOCUMENTS REQUESTED BY APPLE'S MOTION.

16          THE DOCUMENTS REQUESTED BY APPLE'S MOTION

17    WERE NOT ALL VERSIONS OF THE SOURCE CODE.  AND IN

18    FACT THE -- WHAT HAPPENED AFTER THAT WITH RESPECT

19    TO THE MOTION TO COMPEL THAT APPLE BROUGHT IN

20    JANUARY AND THE SUBSEQUENT MEET AND CONFERS

21    ASSOCIATED WITH THAT THROUGH THE LEAD COUNSEL

22    ARRANGEMENTS, AND THE SUBSEQUENT DISCOVERY THAT

23    THEY SERVED WITH RESPECT TO DESIGN AROUNDS IN

24    JANUARY, ALL ESTABLISH THAT THEY KNEW ABOUT THE

25    BLUE GLOW, WE KNEW ABOUT THE BLUE GLOW BUT THAT

33

1    WASN'T COVERED BY THE DECEMBER 31ST ORDER, THE

2    DECEMBER 22ND ORDER.

3            NOW, THEY'VE KNOWN ABOUT IT SINCE JANUARY

4    23RD, TWO MONTHS BEFORE THE CLOSE OF DISCOVERY WITH

5    RESPECT TO THE BLUE GLOW.

6            AND I DO WANT TO JUST GO BACK BRIEFLY, IF

7    YOUR HONOR WILL PERMIT, WITH RESPECT TO PREJUDICE

8    BECAUSE WITH RESPECT TO PREJUDICE DR. BALAKRISHNAN

9    HAS ADMITTED THAT THE BLUE GLOW DOESN'T INFRINGE,

10   IT HAS AN IMPACT ON DAMAGES OBVIOUSLY.

11           IF THE PRODUCTS DON'T INFRINGE, THAT

12   REDUCES THE AMOUNT THAT APPLE CAN COLLECT.

13           THEY'VE KNOWN ABOUT IT SINCE JANUARY 23RD

14   AT THE VERY LATEST AND MAYBE DECEMBER 31ST.  AND

15   THIS IS WHAT I WAS TALKING ABOUT WITH RESPECT TO, I

16   DO BELIEVE THAT ADDITIONAL MEETING AND CONFERRING

17   WITH RESPECT TO THE REPRESENTATIVE FUNCTIONALITY OF

18   THESE PRODUCTS IS ESSENTIAL BECAUSE WHEN WE HEAD TO

19   TRIAL NOW THAT WE HAVE A 25-HOUR LIMIT FROM

20   JUDGE KOH, WE ARE NOT GOING TO SIMPLY BE IN A

21   POSITION TO BE ABLE TO ARGUE WITH ALL OF THESE

22   DIFFERENT VERSIONS WE HAVE TO REACH SOME AGREEMENT

23   WITH RESPECT TO THE FUNCTIONALITY.

24           AND I HONESTLY THOUGHT WE WERE HEADED IN

25   THAT DIRECTION UNTIL APPLE DREW THE LINE IN THE

34

1    SAND SAYING THAT SAMSUNG HAD TO ADMIT THAT IT HAD

2    VIOLATED THE DECEMBER 22ND ORDER IN ORDER TO COME

3    TO SOME UNDERSTANDING.

4           SO WITH THAT, WE FELT THAT OUR HANDS WERE

5    TIDE WITH RESPECT TO REACHING AGREEMENT ON THESE

6    ISSUES.

7           NOW, I THINK IT WOULD BE, AND I DON'T

8    MEAN TO PRESUME ANYTHING, BUT I THINK IT WOULD BE

9    HELPFUL IF THE PARTIES WERE THEN REQUIRED NOW TO

10   SIT DOWN AND REACH SOME AGREEMENT WITH RESPECT TO

11   THE FUNCTIONAL REPRESENTATIVE ASPECTS OF WHAT THIS

12   CODE DOES AND WHAT IT DOESN'T DO.

13          I STAND HERE BEFORE YOU WITH THE

14   STIPULATION THAT WE SUBMITTED AND THE BRIGGS

15   DECLARATION EXHIBIT NUMBER 1 AS A STIPULATION THAT

16   SUBSTANTIVELY SAYS ALL OF THE CODE WITH RESPECT TO

17   THE ACCUSED FEATURES OPERATES THE SAME WAY FOR THE

18   DIFFERENT VERSIONS THAT ARE OUT THERE, EXCEPT FOR

19   THE BLUE GLOW CODE AND THE CODE FOR THE '891 AND

20   THE '167.

21          AT THE END OF THE DAY, RATHER THAN HAVING

22   A FINDING THAT THE DESIGN AROUNDS OPERATE THE SAME

23   WAY AS THE NON DESIGN AROUNDS PRODUCTS WE SHOULD

24   JUST TAKE THE DESIGN AROUNDS OUT OF THIS CASE.

25          THAT FINDING IS SO PREJUDICIAL TO SAMSUNG

1     FOR US NOT TO BE ABLE TO ARGUE THAT PRODUCTS THAT

2     HAVE DESIGN AROUNDS IN THEM DON'T INFRINGE THE

3     PATENTS, IS SO INCREDIBLY DRASTIC AND IT

4     OBVIOUSLY -- ONE OF THE REQUIREMENTS OR ONE OF THE

5     FACTORS IN LOOKING AT SANCTIONS IS THE PUBLIC

6     POLICY ASSOCIATED WITH FAVORING DISPOSITION OF

7     CASES ON THE MERITS.

8              THERE'S BEEN NO REAL PREJUDICE HERE WITH

9     RESPECT TO APPLE AND ITS CONSIDERATION OF THE

10    DESIGN AROUNDS.

11             AND I GO BACK TO THE FACT THAT THEIR

12    EXPERTS TOLD US BACK IN THE CONTEXT OF THE

13    PRELIMINARY INJUNCTION HEARING AND THROUGHOUT THE

14    FALL THAT THEY DON'T EVEN NEED THE SOURCE CODE TO

15    SHOW WHETHER A PRODUCT INFRINGES.

16             THE COURT:  ALL RIGHT.

17             WELL, WE WILL PASS THAT.  I ISSUED ORDERS

18    REQUIRING THEM PRODUCE IT.

19             AND WITH ALL DUE RESPECT, IT SEEMS LIKE

20    IN THIS CASE OVER AND OVER AGAIN YOU SEEM TO HAVE A

21    REVISITING OF THE MERITS OF AN ORDER.

22             ONCE THE ORDER IS OUT, IT'S OUT, AND THE

23    ONLY QUESTION IS DID YOU COMPLY.

24             WHETHER I WAS COMPLETELY WRONG IN

25    ORDERING THE SOURCE CODE PRODUCED OR NOT IS NO

1    LONGER A QUESTION.  THE ONLY QUESTION IS DID YOU

2    COMPLY.

3              CAN WE AGREE ON THAT AT LEAST?

4              MR. JOHNSON:  I BELIEVE WE COMPLIED, YES.

5    WE DID COMPLY.

6              AND THE ORDER WAS FRAMED SUCH THAT IT

7    REFERRED BACK TO APPLE'S MOTION AND SPECIFICALLY

8    CARVED OUT THE ISSUE THAT IS HAD NOT BEEN MET AND

9    CONFERRED UPON.

10             AND THAT'S MY POINT, THE MEET AND CONFER

11   ISSUES WERE SUBSEQUENTLY DISCUSSED IN THE CONTEXT

12   OF THE JANUARY MEET AND CONFER AND WERE

13   SUBSEQUENTLY DISCUSSED --

14             THE COURT:  SO MR. JOHNSON, IT SOUNDS

15   LIKE THEN YOU WOULD URGE ME IN DECIDING THIS ISSUE

16   SIMPLY TO LOOK AT THE ORIGINAL APPLE MOTION AND TO

17   LOOK AT WHAT ISSUES WERE THE SUBJECT OF THE

18   APPROPRIATE MEET AND CONFER OR NOT.

19             AND IF I DO THAT, YOU ARE TELLING ME I

20   WILL UNDERSTAND THAT ALL OF THE CODE THAT WAS NOT

21   PRODUCED BY THE 31ST WAS NOT THE SUBJECT OF THAT

22   MOTION?  IS THAT FAIR?

23             MR. JOHNSON:  AND I WOULD ONLY ADD THAT I

24   THINK TO GIVE IT GUIDANCE, I WOULD URGE YOUR HONOR

25   TO ALSO LOOK AT THE JANUARY MOTION AND THE MOTION

1    TO COMPEL WAS FILED THERE ALONG WITH THE PROPOSED

2    ORDER THAT APPLE SUBMITTED.

3            BECAUSE THE JANUARY ORDER REFERS BACK TO

4    APPLE'S PROPOSED ORDER MOTION AND SAYS, BASICALLY,

5    THAT SAMSUNG IS COMPELLED TO PRODUCE THE 14

6    CATEGORIES OF DOCUMENTS THAT ARE REFERENCED IN

7    APPLE'S PROPOSED ORDER.

8            SO I THINK WHEN YOU LOOK AT THE

9    TRAJECTORY OF WHAT HAPPENED DURING THAT TIME FRAME

10   AND YOU ALSO LOOK AT THE DISCOVERY THAT APPLE HAD

11   SERVED AND YOU LOOK AT WHERE THE PARTIES WERE

12   HEADED WITH RESPECT TO MEETING AND CONFERRING ON

13   THE REPRESENTATIVE ASPECTS, BECAUSE THAT'S WHERE WE

14   ARE REALLY GOING IS IN MY VIEW, IT'S LOOK AT EITHER

15   THE PARTIES AGREE THAT THESE FEATURES ARE ALL

16   REPRESENTATIVE OF EACH OTHER AND THE DESIGNS

17   OPERATE DIFFERENTLY AND THEY ARE INCLUDED OR WE

18   TAKE THE DESIGNS COMPLETELY OUT OF THIS CASE AND WE

19   PUT THEM IN THIS SOME SUBSEQUENT FOLLOWING.

20           BECAUSE TO FIND THAT THE DESIGN AROUNDS

21   ARE NOT DESIGN AROUNDS AT THIS JUNCTURE IN THE CASE

22   --

23           THE COURT:  SOMEWHAT DEFEATS THE PURPOSE.

24           MR. JOHNSON:  EXACTLY.

25           THE COURT:  ALL RIGHT.

```
1              ANYTHING ELSE YOU WANT TO ADD,
2      MR. JOHNSON?
3              MR. JOHNSON:  NO, YOUR HONOR.
4              THE COURT:  ALL RIGHT.
5              THANK YOU VERY MUCH.
6              REBUTTAL?
7              MS. TUCHER:  THANK YOU, YOUR HONOR.
8          SEVERAL POINTS.
9              STARTING WITH THE QUESTION AS TO WHETHER
10     APPLE'S ORIGINAL MOTION SOUGHT ALL VERSIONS, I
11     WOULD REFER YOU TO THE TEXT QUOTED ON PAGE 2 OF OUR
12     REPLY BRIEF FOR A NUMBER OF REQUESTS FOR PRODUCTION
13     THAT WERE THE SUBJECT OF THAT ORDER THAT REFER
14     REPEATEDLY TO ALL VERSIONS AND TO MULTIPLE
15     VERSIONS.
16             THE COURT:  BEFORE YOU MOVE ON, LET ME
17     MAKE SURE I'M FOLLOWING ALONG.
18             I'M ON PAGE 2 OF THE REPLY RFP NUMBER
19     224, FOR EXAMPLE.
20             MS. TUCHER:  EXACTLY.
21             BETTER YET, LOOK AT RFP 224, ALL SOURCE
22     CODE FOR EACH VERSION.  RFP 228, THE SOURCE CODE
23     FOR EACH VERSION.
24             RFP232, ALL SOURCE CODE FOR EACH VERSION.
25             THE COURT:  ALL RIGHT.
```

1           MS. TUCHER:  ON THE QUESTION OF WHETHER

2    THE JANUARY ORDER IN ANY WAY RELIEVES SAMSUNG OF

3    THE BURDEN OF COMPLYING WITH THE DECEMBER ORDER,

4    BESIDES THE FACT THAT THAT WOULD BE NONSENSICAL IN

5    TERMS OF TIMELINE, THE REASON WE DON'T VIEW IT THAT

6    WAY IS THE JANUARY ORDER WENT TO NON SOURCE CODE

7    DOCUMENTS ADMITTEDLY RELATED TO THE SOURCE CODE IN

8    THE SENSE THAT THIS CHANGE LOG THAT THEY GAVE US IS

9    WHAT WE NEED WITH THE SOURCE CODE TO BE ABLE TO

10   TELL WHAT GOT DEPLOYED WHEN.

11           SO IF WE HAD THE SOURCE CODE, WE KNOW

12   WHAT GOT DEPLOYED.  WE HAVE THE CHANGE LOG WE KNOW

13   WHEN DID THE SOURCE CODE GET DEPLOYED IN THE MANY

14   VERSIONS.

15           PUT THE TWO TOGETHER AND WE HAVE AN EXACT

16   PICTURE OF WHAT SAMSUNG DID.

17           IF WE HAD THAT INFORMATION WE WOULD BE IN

18   A POSITION TO NEGOTIATE FROM A FAIR FOOTING THE

19   STIPULATION THAT WE SHOULD HAVE NEGOTIATED LAST

20   FALL.

21           BUT WE NEVER GOT THE INFORMATION, SO WE

22   COULDN'T DO THAT.

23           AS FOR WHETHER THE STIPULATION THAT

24   SAMSUNG HAS PROVIDED THIS COURT AND PROVIDED APPLE

25   IN MARCH AFTER WE FILED THE ORDER, AS THE QUESTION

1      OF WHETHER THAT PROVIDES SOME SORT OF FAIR BASIS

2      FOR A MEET AND CONFER TO RESOLVE THE ISSUE NOW, I

3      WOULD SUBMIT THAT IT DOESN'T BECAUSE WE KNOW THAT

4      IT IS FACTUALLY MISTAKEN.

5                AND I WOULD USE AS THE EXAMPLE WE ALREADY

6      TALKED ABOUT, THE RUBBER BANDING PATENT WHERE THE

7      STIPULATION SAYS THAT THE RUBBER BANDING DESIGN

8      AROUNDS CODE WAS DEPLOYED IN PRODUCTS -- ALL

9      PRODUCTS AS OF A DATE IN AUGUST, WHEN WE KNOW

10     THAT'S NOT TRUE.

11                THEY ALSO ASK US TO STIPULATE THAT THE

12     DESIGN AROUNDS FOR THE '891 AND '163 PATENTS WAS

13     DEPLOYED AS OF DECEMBER 23RD.

14                WE HAVE NO IDEA, FIRST OF ALL, WHETHER IT

15     WAS DEPLOYED IN ANY PRODUCTS IN THE UNITED STATES

16     AS OF DECEMBER 23RD.

17                AND SECOND OF ALL, WHETHER IT WAS

18     DEPLOYED IN ALL PRODUCTS AS OF THAT DATE AS SAMSUNG

19     STIPULATION SEEMS TO SUGGEST.

20                AND IT SOUNDS AS THOUGH SAMSUNG OUTSIDE

21     COUNSEL ALSO DOESN'T KNOW THE ANSWER TO THE

22     QUESTION BECAUSE HE STARTED TO SAY, WELL, WE KNOW

23     THE CODE EXISTS AS OF DECEMBER 23RD BUT WE

24     OURSELVES DIDN'T HAVE IT, SO WE DON'T KNOW THAT IT

25     WAS COMMERCIALLY RELEASED IN THE UNITED STATES AS

1    OF THAT DATE.

2            SO I SUBMIT WE HAVE NEVER, EVEN TO THIS

3    DATE, RECEIVED THE APPROPRIATE INFORMATION FROM

4    SAMSUNG.  WE AREN'T IN A POSITION TO SIT DOWN AND

5    MEET AND CONFER AT THIS TIME TO TRY TO THE RESOLVE

6    THE ISSUES.

7            AS TO THE QUESTION OF HOW MANY VERSIONS

8    OF CODE WERE IN COMMERCIAL EXISTENCE IN THE

9    UNITED STATES AS OF DECEMBER 31ST AS TO WHICH WE

10   NEVER GOT COPIES, THE CLOSEST INFORMATION THAT WE

11   HAVE TO ANSWER THAT QUESTION IS EXHIBIT D TO THE

12   PERNICK DECLARATION IN SUPPORT OF OUR REPLY, THAT

13   IS THE CHANGE LOG INFORMATION.

14           I CAN'T CLAIM TO UNDERSTAND THIS WELL

15   ENOUGH TO EXPLAIN EVERY ENTRY TO YOU, BUT THE

16   VOLUME OF ENTRIES IN THAT DOCUMENT SHOWS YOU THE

17   VOLUME OF THE DIFFERENT VERSIONS OF SOURCE CODE

18   THAT WERE RELEASED IN THE UNITED STATES AT THE

19   DATES INDICATED IN THAT LOG.

20           AND AS YOU KNOW, WE ONLY GOT ONE VERSION

21   FOR EACH OF THE DOCUMENTS.

22           I WANTED TO ALSO ADD THAT WHEN YOU ASKED

23   ME TO GO OVER THE ELEMENTS OF THE RELIEF I LEFT ONE

24   OUT, AND THAT IS NOT JUST THAT APPLE BE ALLOWED TO

25   ASSUME THE SOURCE CODE WAS REPRESENTATIVE, BUT THAT

1    SAMSUNG NOT BE ALLOWED TO ARGUE THAT IT'S NOT

2    REPRESENTATIVE.  BOTH PARTIES HAVE TO BE ARGUING

3    FROM THE SAME BASE AS TO WHAT THE INFORMATION IS IN

4    THIS CASE.

5            AND AS FOR PREJUDICE, WITH REGARD IN

6    PARTICULAR TO THE '891 AND '163 PATENT, WHAT

7    SAMSUNG IS ASKING YOUR HONOR TO DO, AND WHAT

8    SAMSUNG IS ASKING APPLE TO DO IS TO ACCEPT AS

9    SOMEHOW RELEVANT TO THE CASE AND IN FACT TO ACCEPT

10   AS HAVING BEEN DEPLOYED IN CUTTING OFF OUR RIGHT TO

11   DAMAGES AND INJUNCTIVE RELIEF, SOURCE CODE THAT WE

12   NEVER SAW, NOT ONLY BY DECEMBER 31ST, BUT BY THE

13   CLOSE OF FACT DISCOVERY IN THIS CASE.

14           THE COURT:  MAY I ASK DR. BALAKRISHNAN'S

15   ANALYSIS, DOES HE CITE TO SOURCE CODE IN HIS

16   REPORTS?

17           MS. TUCHER:  ABSOLUTELY.

18           THE COURT:  AND DOES HE ADDRESS OR

19   EXPLAIN IN HIS REPORT THE FACT THAT THERE ARE

20   VERSIONS OF THE SAMSUNG PRODUCTS THAT HE BELIEVES

21   ARE INFRINGING FOR WHICH HE'S RECEIVED NO SOURCE

22   CODE?

23           HAS HE ADDRESSED THAT AT ALL ANYWHERE?

24           MS. TUCHER:  WE KNOW HE PROCEEDS BY

25   VIRTUE OF EXEMPLARY PRODUCTS.  I DON'T KNOW WHETHER

1    THERE'S ANYWHERE IN HIS REPORT THAT TALKS ABOUT

2    WHAT HE DIDN'T HAVE AND WHY.  I THINK THAT'S MORE

3    WHAT WE CONSIDERED A LAWYER ISSUE.

4              THE COURT:  ALL RIGHT.

5              NOW, IF DR. BALAKRISHNAN IN HIS ANALYSIS

6    HAS BEEN PREJUDICED BY SAMSUNG'S FAILURE TO PRODUCE

7    CODE FOR ALL THE VERSIONS THAT ARE AT ISSUE IN THIS

8    CASE, EXPLAIN TO ME WHY THE APPROPRIATE REMEDY HERE

9    WOULDN'T BE SIMPLY TO GIVE HIM THE ACCESS THAT HE

10   WAS DENIED TO DATE.

11             MS. TUCHER:  SO THE PROBLEM IS, AS YOU'VE

12   HEARD FROM SAMSUNG'S COUNSEL, IT TAKES A LOT OF

13   TIME TO ANALYZE THE SOURCE CODE AND THAT'S WHY EVEN

14   FOR THE SOURCE CODE WE ALREADY HAVE, WE'VE BEEN

15   DAY-IN, DAY-OUT ANALYZING WHAT WE'VE GOT.

16             IF WE GET A MASSIVE SOURCE CODE DUMP NOW

17   AFTER THE FACT AND EXPERT DISCOVERY IS OVER, IT

18   DEFIES MY ABILITY TO UNDERSTAND HOW WE COULD

19   GRAPPLE WITH THAT INFORMATION AT THIS POINT IN THE

20   CASE.

21             THE COURT:  SO IT'S A TIMING ISSUE.

22             MS. TUCHER:  YEAH.  IF WE HAD HAD IT IN

23   THE FALL, WE COULD HAVE MET AND CONFERRED IN ORDER

24   TO GET THE PARTIES TOGETHER TO IDENTIFY WHICH

25   SOURCE CODE ACTUALLY NEEDED ANALYZING AND WHICH

1    COULD BE DEEMED REPRESENTATIVE.

2           BUT IT DIDN'T HAPPEN IN THE FALL, IT

3    DIDN'T HAPPEN IN THE SPRING, AND NOW EXPERT

4    DISCOVERY IS ALMOST OVER.

5           THE COURT:  SO HERE WE ARE.

6           MS. TUCHER:  YEAH.

7           THE COURT:  ALL RIGHT.

8           THANK YOU VERY MUCH.

9           MR. JOHNSON:  JUST BRIEFLY, YOUR HONOR.

10          THE COURT:  SURE.

11          MR. JOHNSON:  I JUST WANT TO GO BACK TO

12   THE DECEMBER MOTION TO COMPEL.

13          YOUR HONOR, THERE WERE REQUESTS FOR

14   PRODUCTION THAT WERE BASICALLY ENUMERATED AT THE

15   BEGINNING OF THEIR MOTION.  AND I WOULD URGE

16   YOUR HONOR TO LOOK AT THE MOTION TO COMPEL AS IT

17   WAS ARGUED IN THE BRIEFING AND SUBSEQUENTLY THE

18   REPLY BRIEFING BECAUSE THEY DID NARROW THE SCOPE OF

19   WHAT THEY WERE ASKING FOR.

20          AND THAT'S ALSO BOURNE OUT IN THE

21   PROPOSED ORDER IN CONNECTION WITH THE DECEMBER

22   MOTION TO COMPEL.

23          THEY ASKED FOR NOT ALL VERSIONS OF THE

24   CODE, THIS IS DOCUMENT 467-21 IN THE DOCKET, THEIR

25   PROPOSED ORDER.

1          AND THEN I WILL JUST GO BACK TO THE LAST

2    QUESTION YOU ASKED WITH RESPECT TO

3    DR. BALAKRISHNAN.  I HAVE DEPOSED HIM SEVERAL TIMES

4    NOW AND HE HASN'T COME BACK AND SAID THAT, LET ME

5    STATE IT THIS WAY, THESE FEATURES THAT ARE ACCUSED,

6    WITH RESPECT TO THE APPLE PATENTS, HAVE REALLY --

7    BASICALLY OPERATE THE SAME WAY THROUGHOUT THE CODE

8    EXCEPT FOR THE DESIGN AROUNDS.  AND THAT'S WHAT HE

9    BASICALLY TESTIFIES TO.

10          SO THERE REALLY HASN'T BEEN ANY PREJUDICE

11   WHICH IS WHY HE'S TESTIFIED TO THE FACT THAT THE

12   BLUE GLOW DOESN'T INFRINGE.  HE KNOWS THAT FROM

13   LOOKING AT IT.  HE KNOWS IF FROM THE SOURCE CODE

14   BECAUSE HE'S LOOKED AT THE SOURCE CODE AND HE

15   REFERS TO IT IN HIS EXPERT REPORT.

16          SO I GO BACK TO -- WE ARE WILLING TO

17   STIPULATE TO THE FUNCTIONALITY OF THE SOURCE CODE

18   FEATURES ACROSS THESE PATENTS, ACROSS THE PRODUCTS

19   EXCEPT FOR THE DESIGN AROUNDS.

20          AND IT'S ALSO LAID OUT IN OUR PROPOSED

21   STIPULATION.  AND THAT'S WHERE I THINK WE CAN GO.

22   IF IN FACT AT THE END OF THE DAY APPLE WANTS US TO

23   BASICALLY SAY THAT THE DESIGN AROUNDS OPERATE THE

24   SAME WAY AS THE NON DESIGN AROUNDS, OBVIOUSLY

25   THAT'S SOMETHING WE ARE NOT WILLING TO DO.  AND IF

1    THAT'S THE CASE THEN WE PULL IT OUT OF THIS CASE AT

2    THIS POINT.

3              BUT THE REPRESENTATIVE FUNCTIONALITY WITH

4    RESPECT TO THESE VERSIONS -- THAT'S WHY AT THE END

5    OF THE DAY WHEN YOU LOOK AT THE TIME COMPRESSION OF

6    THE CASE AND YOU LOOK AT WHAT EVERYBODY WAS DOING

7    AT THE TIME, IT MAKES SENSE TO ME APPLE NARROWED

8    WHAT THEY WERE LOOKING FOR.

9              THEY DON'T WANT TO LOOK AT HUNDREDS AND

10   HUNDREDS OF VERSIONS OF THE SOURCE CODE.  THEY WANT

11   TO LOOK THE AT SOURCE CODE SEE IF IT OPERATES THE

12   SAME WAY ACROSS THE FUNCTIONALITY.  THAT'S WHAT

13   WE'VE DONE ON OUR END OF THE CASE.

14             AND SO THAT'S WHAT THE PARTIES WERE

15   TALKING ABOUT IN THE CONNECTION WITH THE DECEMBER

16   ORDER AND THAT'S THE WAY WE READ THE DECEMBER

17   ORDER.

18             THE COURT:  SO IF YOU ALL ARE -- AND I

19   DON'T BEGRUDGE YOU FOR THIS, BUT IF YOU ARE ALL ARE

20   WORKING TO ACTIVELY IMPLEMENT THE DESIGN AROUNDS IN

21   FALL OF 2011, IT WOULD SEEM TO ME YOU WOULD HAVE A

22   VERY SOLID POSITION IN THAT TIME PERIOD TO SAY TO

23   APPLE, LOOK, HERE ARE THE FUNCTIONS THAT ARE AT

24   ISSUE FOR WHICH THERE'S NO DIFFERENCES FROM VERSION

25   TO VERSION, BUT AS TO THESE VERSIONS WHICH HAVE

1    BEEN RELEASED WHICH INCLUDE DESIGN AROUNDS FOR ONE

2    OR MORE OF THE ACCUSED FUNCTIONALITIES, THERE ARE

3    MATERIAL DIFFERENCES.

4             WHY NOT HAVE THAT DISCUSSION IN THE FALL?

5    WHY DOES IT REQUIRE THE COURT TO ORDER YOU TO HAVE

6    THAT DISCUSSION?

7             MR. JOHNSON:  WE DID -- WE HAD THAT

8    DISCUSSION WITH APPLE'S COUNSEL WITH RESPECT TO --

9    THEY'VE KNOWN ABOUT THE BLUE GLOW, AS I SAID, FROM

10   THE FALL.

11            SO THIS DOESN'T COME AS ANY SURPRISE WITH

12   RESPECT TO THAT.  WE WERE DISCUSSING IT WHICH IS

13   WHY I DIDN'T UNDERSTAND WHY THEY FILED THE MOTION

14   FOR SANCTIONS OUT OF THE BLUE WITHOUT ANY MEET AND

15   CONFERRING IN CONNECTION WITH IT.

16            I KNOW STRATEGICALLY WHY THEY DID IT AND

17   THIS WAS A SERIAL SORT OF REQUEST FOR SANCTIONS

18   THAT I SAID IN THE LAST HEARING THAT THEY SET THIS

19   UP LAST JULY WHEN THEY SAID THAT THEY WERE -- WHEN

20   THEY POINTED OUT DEFICIENCIES IN OTHER SAMSUNG

21   CASES, SAID THEY WERE GOING TO BE LOOKING TO FILE

22   SANCTIONS MOTIONS.

23            AND THAT'S WHAT THEY'VE DONE IN EVERY ONE

24   OF THE CASES BETWEEN SAMSUNG AND APPLE.  IT'S NOT

25   JUST THE NORTHERN DISTRICT CASE IT'S THE ITC CASE

1    AS WELL.

2            AND UNFORTUNATELY, IT'S TURNED INTO ITS

3    OWN STRATEGY ON THE SIDE.  AND IT'S UNFORTUNATE

4    BECAUSE THIS IS A CASE THAT'S BIG ENOUGH AND THE

5    TIME COMPRESSION IS SUCH THAT IT REQUIRES

6    COOPERATION AMONG THE PARTIES.

7            AND THE -- I FRANKLY -- I DO NOT KNOW WHY

8    WE ARE HERE WITH RESPECT TO THAT BECAUSE WITH

9    RESPECT TO THE FUNCTIONALITY ACROSS THESE PRODUCTS,

10   THIS IS SOMETHING THAT THE PARTIES SHOULD BE ABLE

11   TO AGREE TO.  BOTH SIDES NEED IT.

12           THE COURT:  ALL RIGHT.

13           THANK YOU VERY MUCH.

14           MS. TUCHER:  MAY I MAKE THREE QUICK

15   POINTS?

16           THE COURT:  I WILL LET YOU MAKE ONE QUICK

17   POINT.  WE'VE GOT A LOT OF OTHER PEOPLE THAT NEED

18   TO BE HEARD AS WELL.

19           MS. TUCHER:  OKAY.

20           WITH REGARD TO WHETHER WE SOMEHOW

21   NARROWED OUR REQUEST BEFORE YOUR DECEMBER ORDER, I

22   WOULD REFER YOU TO THE LANGUAGE OF OUR PROPOSED

23   ORDER WHERE WE ASK THAT SAMSUNG SPECIFY BY ANDROID

24   VERSION THE CODE THAT IT WAS TO PROVIDE WHICH

25   SEEMED TO BE CLEAR EVIDENCE IN THE PROPOSED ORDER

1    ITSELF, NOT TO MENTION THAT COUNSEL HAS NO

2    DOCUMENTARY EVIDENCE TO SUPPORT HIS ALLEGATION THAT

3    WE SOMEHOW GAVE UP A BIG PART OF WHAT WE HAD ASKED

4    FOR.

5              THANK YOU, YOUR HONOR

6              THE COURT:  THANK YOU VERY MUCH.

7              THE MATTER IS SUBMITTED.  YOU WILL HAVE

8    AN ORDER FROM ME SHORTLY.

9              HAVE A GOOD DAY.

10             (WHEREUPON, THE PROCEEDINGS IN THIS

11   MATTER WERE CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

50

1

2

3

4                   **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22        _____
          SUMMER A. FISHER, CSR, CRR
23        CERTIFICATE NUMBER 13185

24

25