1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No.: C 11-1846 LHK (PSG) |
| Plaintiff, | **ORDER GRANTING APPLE'S** |
| v. | **MOTION FOR 37(B)(2) SANCTIONS** |
| | **RE DECEMBER 22 DISCOVERY** |
| SAMSUNG ELECTRONICS CO., LTD, a | **ORDER** |
| Korean corporation; SAMSUNG | |
| ELECTRONICS AMERICA, INC., a New York | **(Re: Docket No. 795)** |
| corporation; and SAMSUNG | |
| TELECOMMUNICATIONS AMERICA, LLC, | |
| a Delaware limited liability company, | |
| Defendants. | |

In this patent infringement suit, Plaintiff Apple Inc. ("Apple") moves for sanctions pursuant to Fed. R. Civ. P. 37(b)(2) against Defendants Samsung Electronics Co., LTD., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung"). On April 24, 2012, the court heard oral argument on Apple's motion. Having considered the arguments and evidence presented, the court hereby GRANTS Apple's motion.

# I.    INTRODUCTION

In a typical patent infringement case involving computer software, few tasks excite a defendant less than a requirement that it produce source code. Engineers and management howl at the notion of providing strangers, and especially a fierce competitor, access to the crown jewels. Counsel struggle to understand even exactly what code exists and exactly how it can be made available for reasonable inspection. All sorts of questions are immediately posed. Exactly who representing the plaintiff gets access—and does this list include patent prosecution counsel, undisclosed experts, and so-called "competitive decision makers"? Must requirements and specification documents that explain the functionality implemented by the code be included? What compilation, debugging and analysis tools are required? What about the test database and user manuals? Make files? Build files? Does the code have to produce in a native repository such as CVS or Perforce? Must daily builds in development be produced (and if so, in real-time or batch?) or is production limited only to copies in commercial release? Put simply, source code production is disruptive, expensive, and fraught with monumental opportunities to screw up.

There is, however, no source code exception to the production requirements of Fed. R. Civ. P. 34. And so, subject to the proportionality and burden considerations imposed by Fed. R. Civ. P. 26, when a patentee requests source code for one or more accused products, a defendant must produce it. This is especially true when the defendant makes clear that it will challenge any infringement claim at least in part by questioning the patentee's failure to analyze the accused product's source code. With these considerations in mind, on December 22, 2011, the court granted Apple's Motion to Compel Samsung to produce its accused products' source code no later than December 31, 2011 (the "December 22 Order"). Apple now complains that Samsung did not comply with this order and moves for sanctions.

While Apple's motion raises a number of complaints, the court will focus on just one: Samsung's production of code for its "design-around" products. Like many accused infringers, Samsung developed these products with the specific intent of avoiding the plaintiff's asserted patents, in this case the '381, '891, and '163 utility patents. This is of course Samsung's right, and in many ways exactly what the disclosure requirements of the patent system are designed to

Case No.: 11-1846 LHK (PSG)
ORDER GRANTING APPLE'S MOTION FOR 37(B)(2) SANCTIONS

United States District Court
For the Northern District of California

achieve. The court focuses on design-arounds because by their very nature design-arounds impact key questions of liability, damages, and injunctive relief.[1] They are inevitably designed with substantial input from counsel for the specific purpose of distinguishing other products at issue. In short, they matter. A lot. Because Samsung had these products in hand in some cases months before the court's December 31 deadline, and in other cases did not produce them until months after, the court finds that Samsung clearly violated the court's order and that sanctions are warranted, as set out below.

## II.    LEGAL STANDARDS

Rule 37(b) of the Federal Rules of Civil Procedure authorizes sanctions against a party who "fails to obey an order to provide or permit discovery under Rule 26(f), 35, or 37(a)."[2] Sanctions may range in severity from monetary to case-dispositive preclusion or terminating sanctions.[3] The selection of the particular sanction is left to the discretion of the trial court.[4] Instead of or in addition to the orders above, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees . . . [unless] the opposing party's nondisclosure, response or objection was substantially justified or other circumstances make an award of expenses unjust."[5] The disobedient

---

[1] *See Tivo Inc. v. Echostar Corp.*, 646 F.3d 869, 882-83 (Fed. Cir. 2011) (*en banc*) ("The [obviousness] analysis may also take account of the policy that legitimate design-around efforts should always be encouraged as a path to spur further innovation. But an assertion that one has permissibly designed around a patent should not be used to mask continued infringement. Determining the requisite level of difference is a question of fact.") (citing *State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235-36 (Fed. Cir. 1985) ("One of the benefits of a patent system is the so-called negative incentive to design around competitor's product.") (internal quotation marks omitted)); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) (finding no evidence that the defendant ever made a good faith effort to avoid infringement by, for example, attempting a design-around) (citing *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1328-29 (Fed. Cir. 2009) (finding design around issues relevant to obviousness analysis)).

[2] Fed. R. Civ. P. 37(b)(1)(A).

[3] *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii); 37(b)(2)(C).

[4] *See Nat'l Hockey League v. Metr. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976); *David v. Hooker, Ltd.*, 560 F.2d 412, 418-19 (9th Cir. 1977).

[5] Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

Case No.: 11-1846 LHK (PSG)
ORDER GRANTING APPLE'S MOTION FOR 37(B)(2) SANCTIONS

**United States District Court**
For the Northern District of California

party bears the burden of showing that the failure was justified or that special circumstances make an award of expenses unjust.[6]

### III.  DISCUSSION

In its motion, Apple seeks: (i) a finding that Samsung violated the court's December 22 Order by failing to adequately produce source code; (ii) an order precluding Samsung or any of its experts from presenting, using, or relying on any source code that was not timely produced under the December 22 Order; and (iii) an order deeming that, for purposes of assessing infringement by any version of a Samsung accused product, the product version for which Samsung timely produced source code is representative of all versions of that product.[7] Conversely, Samsung seeks a finding that it did not violate either the court's December 22 Order, or the court's order of January 27, 2012 (the "January 27 Order").[8]

To assess the merits of Apple's motion, the court looks to: (i) what it ordered Samsung to produce in the December 22 Order and by when; (ii) whether Samsung complied; and (iii) if Samsung did not comply, are Apple's requested sanctions appropriate? The court will address each issue in turn.

### A.  The Court's December 22 Order Required Samsung to Produce Design-Around Source Code No Later Than December 31

The plain language of the order required Samsung to produce all source code for all accused products. In relevant part, Samsung was to "produce the source code and technical documents" Apple requested in its December 8, 2011 Motion to Compel no later than December 31, 2011. Apple's motion explained that it had defined "Source Code" in its Sixth Set of Requests for Production of Documents, served on October 26, 2011, as covering "prototypes, *released and*

---

[6] *See David,* 560 F.2d at 419; *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981).

[7] *See* Docket No. 795 (Apple's Mot. for Rule 37(b)(2) Sanctions) at ii.

[8] *See* Docket No. 834 (Samsung's Opp'n to Mot. for Rule 37(b)(2) Sanctions) at 1.

Case No.: 11-1846 LHK (PSG)
ORDER GRANTING APPLE'S MOTION FOR 37(B)(2) SANCTIONS

United States District Court
For the Northern District of California

*unreleased versions*, and public and proprietary Source Code."[9] The motion further explained that Apple had requested source code "for each version" in several of its Requests for Production.[10]

In light of this court's directive that Samsung produce all source code responsive to Apple's December 8, 2011 Motion to Compel, and Apple's comprehensive definition of "Source Code" contained in its Sixth Request for Production giving rise to the motion, it is clear that the December 22 Order required the production by December 31, 2011 of all relevant Samsung source code versions, and not only the release-version source code that Samsung deemed most relevant. In sum, Samsung was not permitted to exclude from production the design-around code Apple requested.[11]

**B.    Samsung Did Not Produce All Source Code For the Design-Around Products
Until March 12**

Samsung's actions plainly violated the court's December 31 deadline. The court's December 22 Order required Samsung to produce all relevant source code by that date. Samsung admits that it placed into commercial release its "blue glow" design-around for the '381 patent as early as August 12, 2011[12], but did not produce any "blue glow" source code until January 23, 2012.[13] More troubling still is Samsung's design-around code production for the '891 and '163

---

[9] Docket No. 845-3 (Reply Decl. of Marc J. Pernick in Support of Apple's Rule 37(b)(2) Mot. at Ex. A) (emphasis added).

[10] *See, e.g.*, Apple's Sixth Set of Req. for Produc. of Doc. nos. 224, 228, and 232. Because the court found that Apple had failed to adequately meet and confer before filing its December 8, 2011 Motion to Compel, the court excluded Apple's Sixth Set of Requests for Production of Documents nos. 193, 225-227, 229-231, 233-235, 240, and 243-245 from the December 31, 2011 deadline. *See* Docket No. 537 at 3 n.2 (December 22 Order). None of these requests contemplated the production of source code; all pertained only to documents. *See* Docket No. 845-3 (Reply Decl. of Marc J. Pernick in Support of Apple's Rule 37(b)(2) Mot. at Ex. A).

[11] Samsung's explanation as to why exclusion of design-arounds was justified by the court's January 27 Order is somewhat nonsensical. The January 27 Order did not address source code at all, but rather the source code-related technical documents referenced in Apple's proposed order and explicitly incorporated into the language of the January 27 Order. The court's language regarding a potential stipulation between the parties that "[Samsung's] production adequately represents the functionality of the entire set of accused products" did nothing to obviate that fact. Docket No. 673 (January 27 Order) at 12. This language was at most a suggestion to the parties, and was made in the spirit of minimizing Samsung's burden—it did not relieve Samsung of its underlying obligations, much less its obligation to comply with this court's previous orders.

[12] *See* Docket No. 834-1 ¶ 6 (Stipulation and Proposed Order Regarding Source Code for the Accused Devices).

[13] *See id.*; Docket No. 883 at 23:10-11 (Mot. Hr'g Tr.).

Case No.: 11-1846 LHK (PSG)
ORDER GRANTING APPLE'S MOTION FOR 37(B)(2) SANCTIONS

United States District Court
For the Northern District of California

1   patents. Fact discovery closed on March 8, 2012.[14] Samsung did not produce source code for its

2   '891 and '163 design-arounds until March 10 and 12, 2012—*after* the close of fact discovery—

3   knowing full well that the court would not grant the parties any exceptions.[15] Samsung offers no

4   explanation why it could not produce code in commercial release months before the deadline, or

5   produce other code in commercial release until months after the deadline. Samsung also offers no

6   explanation why it failed to bring any source code production problems to the court's attention as

7   soon as practicable and instead put the onus on Apple to seek relief. While the court has no doubt

8   of the challenge to Samsung in complying with the court's order, Samsung's present arguments

9   about those challenges are untimely. As this court has previously explained, "the time for

10  arguments about those considerations was before the order issued. Once the order compelling

11  production issued, the focus of this court's appropriate inquiry necessarily shifts to compliance."[16]

12  **C.     The Substantial Prejudice to Apple From Samsung's Unjustified Delay Warrants
        Preclusive Sanctions**

13

14          Preclusive sanctions are within the court's discretion.[17] "If counsel or a party acts willfully,

15  in bad faith, or is at fault in failing to comply with court orders, the Ninth Circuit has encouraged

16  the exercise of the court's discretion to impose sanctions."[18] Furthermore, "[d]isobedient conduct

17  not shown to be outside the control of the litigant is all that is required to demonstrate willfulness,

18  bad faith, or fault."[19] Because the record is clear that Samsung violated the December 21 Order,

19  equally clear that Samsung's conduct was well within its own control, sanctions of some type are

20  [14] Docket No. 187 (Minute Order and Case Management Order).

21  [15] *See* Docket No. 883 at 31:17-20 (Mot. Hr'g Tr.).

22  [16] *In re Google Litig.*, Case No. C 08-03172 RMW (PSG), 2011 WL 6951972, at *21 (N.D. Cal.
    July 8, 2011).

23

24  [17] *See Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2011) ("Sanctions may be warranted under
    Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the
    established issue bears a reasonable relationship to the subject of the discovery."); *see also Oracle
25  USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) (finding a grant of sanctions
    precluding certain evidence at trial to be within a magistrate judge's authority).

26

27  [18] *G-K Properties v. Redevelopment Agency of the City of San Jose*, 577 F.2d 645, 647 (9th Cir.
    1978).

28  [19] *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985).

Case No.: 11-1846 LHK (PSG)
ORDER GRANTING APPLE'S MOTION FOR 37(B)(2) SANCTIONS

warranted. But are preclusive sanctions of the type requested by Apple warranted? The Ninth Circuit has set forth five factors to consider whether a given sanction is just: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.[20] Where a court order is violated, the crux of the analysis is the risk of prejudice to the party seeking sanctions, and the availability of less dramatic sanctions.[21] Both are addressed below.

The Ninth Circuit has held that a party's failure to produce documents as ordered is considered sufficient prejudice to establish sanctionable conduct.[22] Moreover, in the Ninth Circuit prejudice from unreasonable delay is presumed.[23] Even if prejudice were not presumed, the prejudice here is particularly onerous in light of the significance of design-around code. Fact discovery closed on March 8, 2012, and expert discovery closed on April 27, 2012.[24] Samsung's delay until after the close of fact discovery undoubtedly prevented Apple from conducting any follow-up discovery on code that lies at the center of critical issues in this case. This was not code akin to that otherwise produced save for immaterial differences. This code was specifically written to design around Apple's claims in this case. In other words, it was code specifically written to be

---

[20] *See Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

[21] *See id.* ("We have said that where a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less dramatic sanctions, are decisive.").

[22] *See, e.g., Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004); *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997); *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

[23] *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1236-37 (9th Cir. 2006) ("Prejudice from unreasonable delay is presumed. Failure to produce documents as ordered is sufficient prejudice, whether or not there is belated compliance.") (citing *In re Eisen*, 31 F.3d 1447, 1452-53 (9th Cir. 1994)); *see also G-K Properties*, 577 F.2d at 647 (noting that "in this era of crowded dockets," willful disregard of court discovery orders – including "last minute tender of relevant documents" – merits sanctions based on the prejudice to the opposing party and the imposition on other litigants of the courts).

[24] Docket No. 187 (Case Management Order).

Case No.: 11-1846 LHK (PSG)
ORDER GRANTING APPLE'S MOTION FOR 37(B)(2) SANCTIONS

United States District Court
For the Northern District of California

materially different from that otherwise produced. And source code is not something that can be reviewed casually. It often takes even highly trained, highly paid experts extraordinary time and effort to understand, let alone fit into the framework of this case. Apple's experts were left with no meaningful opportunity to comprehend this code, even as they face criticism from Samsung in deposition (and assuredly at trial) that their code analysis was deficient.[25] Nothing Samsung offers justifies a conclusion other than that Apple suffered substantial prejudice from Samsung's violations.

As for factor five, the availability of less dramatic sanctions, there is in the court's view no less drastic alternative than a preclusive sanction—and Samsung does not suggest one—that also remedies the prejudice to Apple. Even if Samsung did eventually produce the missing source code, it would be far too late. Fact and expert discovery have closed.[26] Dispositive motion practice and trial are already upon us. The amount of data at issue is enormous. Apple cannot be expected to perform such a massive undertaking and spend valuable time and resources this late because of its opponent's failure to follow the court's orders.[27] Deadlines have to matter.

The court has no evidence that Samsung or its counsel intended to deceive Apple, and by implication this court. But Samsung offers precisely zero evidence to show that its actions were in good faith, or otherwise justified. Samsung stresses the design-around code's importance as weighing against preclusion.[28] But this only begs the question—if the design-around source code is so important, why did Samsung wait to produce it even though in one case it had it well before the December 31, 2012 cutoff date set by the court's December 22 Order, and in the other two cases,

---

[25] *See* Docket No. 883 at 6:16-8:14 (Mot. Hr'g Tr.).

[26] *Oracle USA*, 264 F.R.D. 541 at 554-55 (granting preclusive sanctions when trial was more than one year away on the grounds that more time is necessary to prepare for trial in highly complex litigation with wide-ranging scope).

[27] *See U.S. v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980) ("Preclusionary orders ensure that a party will not be able to profit from its own failure to comply.").

[28] *See, e.g.*, Docket No. 883 at 35:25-36:3 (Mot. Hr'g Tr.) ("That finding [preclusion of design around code] is so prejudicial to Samsung for us not to be able to argue that products that have design arounds in them don't infringe the patents, is so incredibly drastic.").

8

Case No.: 11-1846 LHK (PSG)
ORDER GRANTING APPLE'S MOTION FOR 37(B)(2) SANCTIONS

United States District Court
For the Northern District of California

1   several days after the close of fact discovery. Samsung fails to offer the court an adequate

2   explanation, and the court too is at a loss.

3          In light of the above, it is clear to the court that only preclusive sanctions, as they relate to

4   Samsung's design-around efforts for the '381, '891, and '163 patents, will sufficiently remedy

5   Apple's harm. Indeed, at this late hour, no other remedy is adequate.

6                                    **IV.      CONCLUSION**

7          In accordance with the foregoing, the court GRANTS Apple's Motion for Sanctions, and

8   finds that Samsung's failure to adequately produce source code to Apple violated the court's

9   December 22 Order. Samsung shall be precluded from offering any evidence of its design-around

10   efforts for the '381, '891, and '163 patents, and shall not argue that the design-arounds are in any

11   way distinct from those versions of code produced in accordance with the court's order. Samsung

12   must instead rely solely on the versions of code that were produced on or before December 31,

13   2011.

14   **IT IS SO ORDERED.**

15   Dated: 5/4/2012

16                                    _____

17                                    PAUL S. GREWAL
                                     United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

Case No.: 11-1846 LHK (PSG)
ORDER GRANTING APPLE'S MOTION FOR 37(B)(2) SANCTIONS