# Exhibit 3

# LAW OF

# OBLIGATIONS

### 11th Edition

**Philippe Malinvaud**
Professor emeritus of the Pantheon-Assas University (Paris-II)

**Dominique Fenouillet**
Professor at the Pantheon-Assas University (Paris II)

Lexis Nexis.®

# LITEC

**Lexis Nexis S.A**
**141, rue de Javel, 75015 Paris**

ORIGINS OF OBLIGATIONS

SUB-SECTION 2

# CONSENT OF THE PARTIES

**112. – The contract is a meeting of minds [agreement of intentions].** Contracting is the desire to commit to perform such and such services or obligations (to give, to make or not to make) in favor of such and such co-contracting party, generally in exchange for a reciprocal benefit, for example to receive a certain sum of money.

Since the contract is a meeting of minds, there must be as many consents as there are parties to the act, and concordant consents (39).  Thus, consent appears as the fundamental element of any contract.  Whereas the absence of other conditions leads only to rendering the contract flawed, if there is not consent, there is nothing.  The draft reform dedicates a chapter to the formation of the contract, a chapter whose first article recalls that "the formation of the contract requires the meeting of the intention to commit of each of the parties" (art. 19).  And it specifies in a second paragraph that this meeting of minds "results either from the acceptance of an offer demonstrated by a statement or by conduct which expresses the agreement of the parties with certainty".

As a rule, the agreement of intentions is sufficient for concluding the contract, any formalities excepted (40).  Nevertheless, the drawing up of a written document and its signing by the parties are made almost mandatory for reasons of proof.  What purpose would it serve to enter into a contract if it were impossible to prove it, and thus, to invoke it? (see hereinafter, nos. 360 and f.).

In a system based on the autonomy of the will (see hereinabove, no. 77 and f.), the necessity of consent underlies all of the rules on the matter.  The idea is so obvious that the authors of the Civil Code omitted stating it and limited themselves to considering consent from the perspective of the defects that may affect it adversely; article 414-1 only reminds one that "in order for an act to be valid, one must be of sound mind."

It is likewise with the draft reform which, while replacing the requirement of "the consent of the party who binds himself" with the requirement of "the consent of the contracting parties", deals principally with the defects of consent following an article dedicated to the duty to inform (41).

**113. – The principle of freedom to contract and its limits (42).** The first manifestation of the autonomy of the will is the principle of *the freedom to contract,* which has as a necessary corollary the *freedom not to contract*.  If contracting is.... [text is not complete here]

---

(39) For the distinction between the exchange of consents and the meeting of minds, See M.-A. Frison-Roche, *Remarques sur la distinction de la volonte and du consentement en droit des contrats* [*Remarks on the distinction between intention and consent in contract law*]: *RTD civ.*1995, 573.
(40) For an application, see Cass., 3rd civ. Nov. 27, 1990: *JCP* 1991, II, 21808 and note Y. Dagome-Labbé.
(41) The preliminary draft, itself, dealt as much with the existence (art. 1109 to 1109-2) as with the integrity (art. 1110 to 1110-2) of the consent and the defects likely to affect it (art. 1111 and s.) – Y. Lequette, G. Loiseau and Y.-M. Serinet, *Validite du contrat – Consentement,*[*Validity of the Contract – Consent*] in *Avant-projet de reforme du droit des obligations et de la prescription,  Exposé des motifs [Preliminary draft of the reform of the law of obligations and of specification, Statement of grounds],* La Documentation française, 2006, p. 29. – P. Stoffel-

Munck, *Autour du consentement et de la violence économique [On consent and economic violence]*, *RDC* 2006, p. 45.
(42) P.-Y. Gadhoun, *La liberte contractuelle dans la jurisprudence du Conseil constitutionnel [Contractual freedom in the case-law of the Constitutional Council]*, Dalloz, Bibl. Theses, 2008, preface D. Rousseau.

**90**