# Exhibit 5

# PRIVATE LAW LIBRARY
under the direction of
## HENRY SOLUS
Honorary Professor in the Faculty of Law and of Economic Sciences of Paris
**VOLUME CIX**

_____

# NOTIONS AND ROLES OF THE OFFER AND OF THE ACCEPTANCE IN THE CREATION OF THE CONTRACT

BY

## Jean-Luc AUBERT
Doctor at Law
Laureate of the Faculty of Law and of Economic Sciences of Paris
Lecturer
of the Faculty of Law and of Economic Sciences of Nancy

PREFACE BY

## Jacques FLOUR
Professor of the Faculty of Law and of Economic Sciences of Paris

**Work awarded a grant**
**by the Ministry of National Education**

P A R I S
GENERAL LAW AND JURISPRUDENCE BOOKSTORE
R. PICHON AND R. DURAND-AUZIAS
20 AND 24, Rue Soufflot, 20 and 24
____
1970

…constant[117], unless the creation of the contract is precisely subordinated to the label. This is what is clearly highlighted by a ruling of the Court of Cassation, in accordance to which the fact that the trial judges had decided that the agreement of the parties took place on the date of the signing of the agreement by the party who had not yet signed, which necessarily assumes that said party had not already previously given his assent.[118]

That which remains true, is that, when one is dealing with a contract that includes relatively complex clauses, the signature of the act, insofar as one were to admit that it does effectively bring about the acceptance of the whole,[119] permits to precisely indicate the contents of the agreement, something that cannot always be possible when there is nothing more than a tacit acceptance.[120] The fact that the latter might be suffering from a practical inferiority, compared to the express manifestation of their will, would not be able to prevent its judicial effectiveness.

307. – The Civil Code has itself foreseen a case of tacit agreement, in the event of the mandate. In effect Article 1985 lays forth, in its paragraph 2, that "the acceptance of the mandate may only be tacit and result from the execution that has been enacted by the proxy [mandatary]."

In this case, one is incontrovertibly dealing with a direct tacit acceptance, insofar as the manifestation of the acceptance is made through the execution of the contract, which is to say immediately, directly towards the purpose of the contract itself. The idea of acceptance by way of performance of the offered contract is acknowledged as a general principle.[121] Jurisprudence allows in the same manner, the effectiveness of the acceptance by means of execution, this whether there is no prior contract,[122] or whether a new contract were to be substituted for one that was being currently executed. This is firstly valid in the case where this last convention differs sufficiently from the preceding one, so as to be able to perceive novelty in the execution thereof. This is the case when a company proposes new work conditions as well as new remuneration to one of its employees, and the same, upon leaving the location of his/her first assignment, makes his/her way to that which has newly been assigned to him/her and regularly receives the newly agreed upon

---

[117] Sa., December 9, 1964, Bulletin Civil, 1964, IV, No. 829, p. 684.
[118] 1st Civ., March 13, 1957, Bulletin Civil, 1957, I, No. 136, p. 113.
[119] See hereunder, No. 354 et seq.
[120] Com., December 30, 1958, Bulletin Civil 1958, III, No. 465, P. 390. The company C.P.F. had requested delivery to its retail pharmacists by a company T. It sent a contract together with its request, a contract that was never signed. The shipping company did nonetheless execute the trade and for 4 years undertook the requested deliveries. At this point the company C.P.F. decided to put an end to these services, all the while granting a notice period. The company T, having charged them with wrongful termination of contract, saw their claims rejected on the basis of the absence of a written contract; one was not able to allow that the verbal agreement covered all of the stipulations of the offer, most notably the term of the agreement. Compare here below No. 362.
[121] With reserve in the case of solemn covenants, insofar as one can still find precedents, in this matter, such as the hand-given gift, which, through the fulfillment, removes the legally required solemnity.
[122] Com., December 30, 1958, cited previously.

salary.[123]  The same also holds true when one is dealing with a modification that does not bring about any apparent change to the prior contract, in particular when remuneration based upon an hourly or task-based rate is substituted with another method of salary evaluation.[124]

308. – The acceptance by means of direct tacit agreement, can likewise come to be by means of an attitude which tends directly to the creation of the contract.  Therefore, when following up on sales offer, the mandatary of the recipient calls upon the one making the offer to enact the sales contract;[125] or yet again, and this is a case that is constantly applied in the matter of transport, when the travel candidate makes contact, in whatever manner, with the transportation vehicle. Likewise, the fact of setting foot on the platform of a bus is also a form of acceptance. [126]  In a more general manner, one would say that there is acceptance of the transportation contract, according to the formula of Mr. Rodière,[127] as soon as the traveler enters the vehicle, or more precisely "comes in contact with the transportation vehicle for this purpose."  It is as of this moment that all of the obligations of the transporter, and most notably, the obligation of safety which is placed under their responsibility, take effect, and not at the moment in which, on the inside of the vehicle, the passenger pays the trip cost and receives their travel ticket.  This delivery of the travel document is, all told, nothing more than the "statement of the pre-existing judicial situation and the proof of the execution of the obligations of the traveler."[128]  The same is confirmed by a cassation ruling of the Supreme Court which refuses to allow that, in the case where it is possible to purchase one's travel document in advance, the contract becomes effective immediately upon this purchase, which would have brought about the effect of inhibiting the application of new rates to the holders of old tickets.[129]

In addition to these acceptances, which have been admitted by the courts, which are the result of a direct, but tacit, manifestation of will, the same remains of those set forth by common practice.  One is always dealing with the attitudes of the recipient of the proposal which imply acceptance, whether directly, or also, indirectly.

Therefore, in the case of a proposal for the sale of logs by the square meter, where the recipient beats each log that has been verified from top to bottom…

---

[123] Corporate, December 9, 1964, Bulletin Civil 1964, IV, No. 829, p. 684.

[124] Corporate, April 29, 1965, Bulletin Civil 1965, IV, No. 330, p. 270; Corporate Law of February 10, 1965, Bulletin Civil 1965, IV, No. 119, p. 96.

[125] 1st Civil, May 4, 1954, Bulletin Civil, 1954, I, No. 132, p. 112.  This ruling is quite significant insofar as it refuses to allow, as the date of the sales contract, that of the act of deposit of the minutes recorded by the notary which includes an express mention of the acceptance (June 15, 1946) and instead prefers that corresponding to the date in which the summoning was sent to the party making the offer (June 3 1946).

[126] T.G.I. Seine, February 24 1962, D. 1962, Summary III; See also Grenoble, April 14, 1958, D. 1958, 414, Rodière note; and Nancy, March 1st, 1950, J.C.P. 1950, II, 5892, Hémard note.

[127] Rodière, note under Grenoble, April 14, 1958, mentioned previously.

[128] Hémard, note under Nancy, March 1st, 1950, mentioned previously.

[129] 1st Civil, February 22, 1955, Bulletin Civil 1955, I, No. 86, p. 77.