# Exhibit 9

**5892.** 1st TRANSPORT. – Formation of the contract. Determination. Requirement for safety. Point of departure; 2nd CIVIL LIABILITY. – Transporter. Obligation of safety. Point of departure. Formation of the contract. Traveler injured when getting on board a bus (Nancy, 1st Chamber, March 1st, 1950; Fiaux vs. Rapides de la Meuse). [Ed. G.]

*For transportation by bus* where the traveler pays the price of the trip either after having boarded the vehicle when passing near the driver, or during the trip, or even upon arrival at destination, the transportation contract – *with the accompanying obligation of safety* – begins as of the moment in which the traveler takes possession of the vehicle to which he has free access, *in other words*, at the moment in which having taken contact with the bus, he/she leaves the roadway to take a seat.

Annotate: J.-Cl. *Responsabilité Civile* [Civil Liability]*: Section XXXIV i and J.-CL. Civil: Article* 1382-1383 (3rd *P.), See Voituriers et Transporteurs* [Haulage Carriers and Transporters] *(9th Section)*

THE COURT; – Upon the appeal launched by Fiaux and the incident appeal of the company Les Rapides de la Meuse, of a judgment of the Civil Tribunal of Verdun of June 16, 1949, which, ruling subsequent to an investigation which was ordered by a preceding judgment of December 2, 1948, relating to the accident that occurred to Fiaux, who, on January 30, 1947, at the moment in which he was boarding a bus of the company Les Rapides de la Meuse in Vatronville, sustained a broken right thumb caused by the closing of the door, has: – firstly, deemed that there were grounds for a sharing of the responsibility in a proportion of 2/3 charged to the transporter and 1/3 to the victim; – secondly, sentenced the company to pay Fiaux the sum of 50,000 francs as compensation and to divide the expenditures in the proportion of 1/3 to the latter and 2/3 to the company; – Whereas the appeals of each one of the parties tend to have the other carry the whole responsibility of the accident; – Whereas it is accepted that the accident took place when Fiaux was boarding the bus; – That at such time, he had placed his right hand against the fixed part of the door, which was suddenly closed by an unknown person; – That his right thumb was broken in this manner; – That Les Rapides de la Meuse had argued in vain that the transportation contract did not yet exist, insofar as Fiaux had not bought his ticket; – That contrarily, it results from the investigation that the driver of the bus assured on his own both the driving and the collection of the travel price, either after having got on board the vehicle when they passed near the driver, or during the travel, or even upon arrival at the destination; – That it is not disputed in jurisprudence that, in these diverse cases, the transportation contract begins from the moment in which the traveler takes possession of the vehicle to which he has free access and of which he takes possession, most notably in the case of a bus being used for public transit in which there are free places as in the case at issue, at the moment where he/she makes contact with the bus and leaves the roadway to access a place; – That it must therefore reject these grounds; – That therefore, insofar as we are dealing with a transportation contract and an accident that took place during the execution of this contract, the company Les Rapides de la Meuse must in principle and under application of Article 1147 of the Civil Code, be presumed to be responsible, insofar as they held the task of transporting Fiaux safe and sound to his destination, apart from the case where it were to demonstrate that the

accident was due to a foreign cause, which is to say an unforeseeable and inevitable fault of the victim or of a third party; – Whereas it is not disputed that, in the case at issue, the accident is due to the action of a non-identified third party, insofar as it has never been alleged that Fiaux had closed the door of the bus himself; – Whereas such a circumstance would only be sufficient to exonerate the company of the responsibility that is incumbent upon it in the event that it is demonstrated that the accident was unforeseeable and inevitable; – That, to the contrary, it appears that the company Les Rapides de la Meuse, which could perfectly well foresee an accident of this type, also had several ways to avoid it; – That it was up to them to either double up their driver by adding a ticket-taker who would have had the task of overseeing the access of the travelers, or to immobilize the door by means of a lever of which only the driver was able to activate or by any other method; – That it is in keeping with the law that the first judges found the responsibility of the transporter; – But whereas erroneously, they have held against Fiaux that he had imprudently placed his hand on the door jamb, on the side of the hinges, so as to pull himself up into the bus; – that in effect, the action, made by the latter so as to take place in a vehicle that was immobilized and open to the users who had free access, was only fatal to him due to the lack of precautions of the transporter, who had not been able to either foresee or avoid the accidents that might have resulted from the fact that the door was not immobilized as it should have been, either up until the moment of departure, or up until all of the seats inthe vehicle were occupied; – That it is therefore fitting that the judgment under appeal be reformulated in this respect and to place the entire responsibility of the accident to the charge of the company; – Whereas, lastly, there is cause to give effect to the claim of Fiaux which would lead to a compensation of 75,000 francs which is due to him, taking into account as a whole the total incapacity which ran from April 29 to July 10, 1947, of the *pretium doloris* which occurred as a result, of the permanent reduction of capacity which was judged to be of 10% and of 2,888 francs in medical and pharmaceutical expenses to which he is justified.

*On these grounds:* – Dismisses the incidental appeal of Les Rapides de la Meuse and giving effect to the main appeal of Fiaux, reformulates the judgment which has been issued; – States that the company is wholly responsible for the accident; – Sentences it to pay to Fiaux, as compensation, the amount of 75,000 francs in the name of damages-interest,

Messieurs Talandier, Esq. first President; Hauss, Esq. General Advocate; Messieurs Mentre and Gasse, Attorneys.

*Observations.* – The problem of the formation of the transportation contract has always raised controversy insofar as the determination of the moment in time from which parties assumed obligations depended on the concept that one had of this contract. For some, the obligations came to be when the thing, the object of the contract, had been remitted to the transporter, with this contract being considered as real (*Lyon-Caen and Renault, Tr. Dr. comm.* 5th *edition, by Amiaud, T.* III, *Mo.* 559. – *Thaller and Percerou, Tr. Élém dr. comm.* 8th *edition, T. I, No.* 1166. – *Roger, Nouveau manuel jur. des transports* [New Judicial Manual of Transportation], *No.* 3. – *Civ., May* 27, 1918*: Gaz. Pal,* 1918-1919, I, 361). For the others, the transportation contract is formed by the exchange of agreements of the parties, with no text being able to derogate to the principle

that governs all contracts in French law (*Josserand, Les Transports* [Transportation]*, 2nd edition, No. 8 – Escarra, Manuel élémentaire droit commun* [Elementary Common Law Manual], No. 1065 – *Ripert, Tr. élémentaire droit commun* [Elementary Common Law] No. 2415 – *Compare Fredericq, Tr. droit commun belge* [Belgian Common Law], *T. III, No.* 382). To be truthful, the problem is frequently poorly framed and one confuses the formation of the contract with the execution of the same; the obligations relating to the object of the transportation can only be assumed by the transporter from the moment in which they have been remitted to him/her, whereas the contract may well have been concluded previously.

I. – As regards the transportation of persons, a new difficulty stems from the fact that the traveler cannot be considered to be nothing more than a package. Nonetheless, the jurisprudence has decided that the rules of contractual responsibility govern this transportation just as it does merchandise. However, the obligation relating to safety towards the traveler, to which the transporter is held, is only admissible if there exists a transportation contract, which gives considerable importance to the determination of the moment of its formation: immediately as of this instant, it is equally true that if the traveler has suffered an accident, he does not need to prove the fault of the transporter who on the contrary must produce an event that exonerates him/her of his/her responsibility: any force majeure, action of the victim or action of a third party. Transportation technology has permitted to rather easily find a solution for a portion of them: when the carrying out of the transportation comprises the existence of special premises that are closed to the public and to which the access is reserved for the travelers who present a ticket that has been delivered against payment of the price of the transportation (railways, air and maritime transportation), as soon as the access has been permitted, upon presentation of this ticket, the obligation of providing safety applies and it lasts as long as the traveler has not exited after having delivered their ticket to an agent of the transporter (*See lastly: Paris, March* 2, 1950*: J. C. P.* 1950, II, 5470, *observations Rodière*). Therefore in principle, few problems should present themselves in these transportations and we will not linger upon them.

In effect, it is another category of mode of transport in which the access to the transportation vehicle is not subordinated to the previous purchase of a ticket, insofar as the price is paid over the course of the travel (tramways, short-haul bus, long-haul bus and local railways). One could sustain that the transportation contract is formed immediately upon entry in the vehicle or that it is only formed upon payment of the price: the starting point of the obligation of safety is delayed in the second opinion. We must again insist that the same can only arise when the contract has been concluded, insofar as it has no foundation if one does not take from this a transportation contract. Whereas, the entire contract assumes that in exchange for agreements between the traveler and the transporter, and one would be tempted to expect, to say that the contract is formed, the traveler has paid the price of the transportation and has thus obtained the delivery of a ticket, because the agreements of the parties would be reunited and one would have a proof thereof. However that would be to forget that a contract does not solely get formed by the express and concomitant exchange of two agreements, it is also formed by a single agreement – better yet, an accession – of a previously expressed offer. The transporter is in effect in a position of permanent offer resulting from the publication of its transport

conditions, from billboards, or more simply from the fact that the vehicles are at the disposal of people who require them. The transporter cannot accept the traveler, the traveler, the traveler accepts the offer by using the transporter's vehicles: it is through the same that the transportation contract is formed, without the delivery of a ticket bringing anything more than a confirmation of the pre-existing judicial situation and the proof of the execution of his obligations by the traveler (*Civil Tribunal of Nice, January 9,* 1922*. Gaz Pal.* 1922, I, 186). Jurisprudence is well established in this sense (*Req. May 7,* 1935*: S.* 1935*,* I. 206*; D.H.* 1935, 348*. – Civ. April 20,* 1942*:   J. C. P.* 1943, II, 2200*; D.A.* 1942, 127 *– Req. March 1st* 1944*; Gaz. Pal.* 1994, I, 220*)* and it is approved by doctrine (*Josserand No.* 795*. – H. and L. Mazeaud. Tr. De la responsabilité civile* [Tr. of civil liability] 4th *edition, T. I. No.* 153*).*

II. – The reported ruling proceeds from this jurisprudence, however its interest stems from that which it brings up, the question to know at what precise time the formation of the transportation contract takes place. When the accident occurs when the traveler has boarded the vehicle, there is no difficulty that is presented, in principle, even if the price of transportation has not yet be paid off (*see Cependant Douai* [Douai nonetheless]*, October 20,* 1949*:   Rev. trim. Dr. comm.* 1950*, p.* 268*, No.* 16*)*; it is not the same if it takes place at the moment in which the traveler is about to enter the vehicle or has just exited. In the case in point, a traveler was going to board a bus and had pressed his hand against the fixed part of the door when the same was suddenly closed by a third party who remains unidentified, and the traveler sustained a broken thumb. The ruling, noting that in this case the price of the transportation was paid to the driver/ticket-taker, this either when the traveler passed near him/her after having boarded the bus, or during the trip, or even upon arrival at destination, affirms that the transportation contract starts as of the moment in which the traveler takes possession of the vehicle to which he has free access and that he takes possession of the vehicle, particularly in the case of a bus that is being used for public transit in which there are free places, as in the case at hand, at the moment in which the traveler makes contact with the bus, when he/she leaves the roadway so as to take a seat. Certainly, the formulation of the "taking possession of the vehicle" by the traveler is not the most fortunate – has one not at times sustained that it was the transporter who took "possession" of the traveler, so as to make the transportation of passenger a real contract? However, the idea is exact. The ruling therefore declares that an obligation of safety existed under the responsibility of the company that owned the bus and that only a *force majeure* of the fault of the victim could have exonerated it of its responsibility. Whereas, the action of a third party who closes the door in an unscheduled manner was neither unforeseeable not irresistible, and the company would have been able to prevent it through the use of adequate means (presence of another ticket-taker in addition to the driver, a system for the blocking of the door, etc…). Let us nonetheless remark that to be able to allow joint responsibility between the transporter and the third party, the action of the latter need not be unforeseeable or irresistible (*See Civ. October 27,* 1948*:   J. C. P.* 1949, II. 4793*, note Esmcin*). However the tribunals are not very likely to allow a portion of the damage to the charge of the victim if the third party is unknown. As regards a fault of the victim, the company invoked the fact that the victim had imprudently placed his hand on the fixed jamb of the door as being just such a fault; the ruling does not allow this, insofar as this motion is

normal for the users of a parked vehicle and insofar as it was only able to cause damage because the company had not foreseen a blocking of the door during the boarding of the travelers.  This is what the jurisprudence has decided in a similar case relating to transportation by railroad (*Civ. February* 28, 1923*; Gaz. Pal.* 1923. I. 616).

An analogous accident occurring upon descending from the vehicle brought about the same solution:  it must be admitted that the transporter remains responsible for accidents that have occurred to travelers as long as the same have not yet regained the roadway and lost any contact with the vehicle (*See Civ. May* 7, 1946*:  D.* 1946, 324*).*

III. – The responsibility of the transporter is therefore heavy, however it appears to better justify itself if one refers to the formulation of the rulings of the Supreme Court, the same deciding that the transportation contract is formed at the moment in which the traveler "is admitted to take place in the vehicle" (*Reg., March* 7, 1935*, Civ. April* 20, 1944*, Reg. March* 1st, 1944 *mentioned previously):*  the same would seem to indicate that the transporter does indeed need to manifest their approval.  In reality, there is nothing of the sort, and, for reasons that we have indicated, which is to say, that the transporter is in a state of permanent offer.  It is only required that the other party manifest their accession.  This formulation has nothing more than a purely negative sense:  there is a transportation contract as soon as the transporter has not refused access to the vehicle to the traveler, however a jurisprudence which, even if already dated, but still valid, prohibits him from doing so if he does not have legitimate grounds for this refusal (*Civ. December* 3, 1867*:  S.* 1868, I, 193. *Note A.* [illegible name] *D.* 1867, I. 471. – *Bordeaux, March* 8, 1881*:  S.* 1882. 2. 631.*)*  When he had offered by means of advertising to transport all persons, he is not permitted to refuse a traveler without a valid reason, under penalty of committing his own responsibility towards the one whom he is refusing his services.  Moreover, today, the free transporter no longer deserves this appellation other than to show that he does not enjoy a monopoly similar to that of the railroads; administrative rules and provisions demand that he admit any person wishing transportation; Furthermore, when a traveler presents themselves and accepts their transportation conditions, it must permit him/her access to his/her vehicles apart from in the case where the presence of this traveler were to inconvenience the other travelers (state of drunkenness, apparent contagious illness) or were to constitute a danger for them (armed status).  The transporter is still within their rights to refuse the entry to a traveler once the regulatory number of seats of the vehicle has been met, and it is able to prohibit them from locating themselves on the roof or on the step:  in this latter case, were an accident to occur due to this action to the traveler, the transporter will be responsible for not having prevented them from doing it as well as for having thus consented to transport them (*Req, May* 7, 1935 [Illegible] 1946*, cited previously*).  As a consequence, the agreement of the transporter which is not required when the traveler has normally accessed the vehicle must be proven when the latter finds themselves placed in abnormal conditions, the existence of a transportation contract therefore bringing about an obligation for the transporter to conduct the traveler safe and sound to destination.  Also when a traveler has boarded a vehicle unbeknownst to the transporter and without respecting the safety measures applicable to him, whether they are regulatory or not, then the absence of a transportation contract and the fault that was committed relieve the transporter of any responsibility for any incurred accidents (*Douai, October* 20, 1949*,*

*cited previously)*. One does not, in effect, conceive that the traveler who attempts to board a moving bus or tramway that is underway and who then falls victim to an accident, is able to invoke the requirement of safety: The transportation contract can only be formed if the conditions of the transporter are respected, which imply a normal boarding of their vehicles. It is of little importance if subsequently the action of the traveler does or does not constitute a violation in the eyes of the traffic police, insofar as the proof of existence of a contract is not reported. On the contrary, entry in a vehicle that was not the one that was meant to be used for the transportation does not constitute an error of the traveler that is sufficient to eliminate the responsibility of the transporter, if the same has not advised the traveler nor did they prevent their boarding: leaving its vehicles parked, it places the same at the disposal of the travelers, and were an accident to occur in one of them, it will be held to remedy the damaging consequences (*Civ. April* 20, 1942*, cited previously*).

IV. – The distinction between the various modes of transportation depending on whether or not the traveler is required to supply himself/herself of a travel document prior to boarding the vehicle therefore appears to, in fact, be very clear, and brings along with consequences that are certain before the law. Nonetheless, does the organization of transportation not bring about a rapprochement, not only on a verbal level, for example when "bus stations" are created, but also on an effective level and that merits attention? One has already pointed out the case of the stations of secondary networks where there are no ticket-distribution personnel (*See Rodière, note: J. C. P.* 1950, 1950, II, 5470). However, above all, in the opposite manner, public-road traveler transit is becoming organized bit by bit and in certain cities there are precisely these long-haul bus stations, with boarding platforms, installations which are destined to channel the travelers, etc… If the access is only open to those holders of tickets, there is no difficulty if one were to want to initiate the obligation of safety at the same moment as is the case of transportation by railway. However it can only be so for those travelers who are obliged to take their seat in the vehicles without a travel document being required previously, insofar as the same is obtained in the vehicle itself: a ruling has admitted that the transportation contract was then formed as soon as the traveler accessed an installation which allowed the differentiation between traveler and non-traveler (*Paris, December* 24, 1912*; Annotated Bulletin, Railway,* 1916, 2, 247). Its solution must be approved, if it is permitted to the transporter to prove that the person who suffered the accident was not at all meant to make use of its vehicles and that this fact may not have as a result a link with a transportation operation. The circumstances of the accident itself will facilitate this proof insofar as it will generally take place upon boarding of the vehicle itself, with the installations meant to facilitate access being normally very minimal; furthermore, the distribution of sequential numbers will often allow one to establish the intentions of the traveler.

The judicial system of transportation contracts necessarily needed to take into account the conditions in which the transportation is undertaken, and as a follow-up or to assist in its differentiation according to the type of transportation, for example travelers or merchandise, and according to the locomotion process employed. Without doubt, in creating the requirement of safety, jurisprudence has unified this system as regards the responsibility of the transporter, however the existence of this obligation assumes that a

transportation contract has been formed, and that it is not formed in the same manner as regards the transportation of travelers as for the transportation of merchandise, nor in the various traveler transportation enterprises.  We have recalled the distinction that has today become classical, between those that require that the traveler be the holder of a travel document and those that collect the transportation price on the road, in other words following the boarding of the traveler in the transportation vehicle.  However the facts do not permit one to stick to such a clear distinction and it appears certain that as the organization of, in particular, road transportation, will become more widespread, it will tend to become more blurred.  No matter which the case may be, it is still valid at the present time and the reported ruling has made it an interesting application.

J. HEMARD.
*Professor to the Law Faculty of Lille*