# Exhibit 10

Recueil Dalloz – 1958

COURT OF APPEALS OF GRENOBLE
April 14, 1958

**TRANSPORTATION CONTRACT** . Liability, passengers, safety obligation, scope, start of contract, bus, accident when boarding, victim's fault

*By having its bus stand at the usual point of departure, with doors open, the carrier indicates its intention to welcome customers (1):*

*It is not important that the fare for the trip is collected inside the bus; the transportation contract is established as soon as the tacit agreement of wishes has taken place (2);*

*If the carrier contracts towards the passenger a safety obligation, the latter only goes into effect within the framework of obligations resulting from the terms and conditions of the transportation and does not cover the imprudence or clumsiness of the transported passenger who, maintaining with his/her movements his/her own initiative and judgment, is required to undertake himself/herself the safety measures imposed by his/her personal conduct (3);*

*In particular, the carrier is exonerated from its contractual responsibility when the customer, who did not request any assistance to board the bus, owed it to his/her clumsiness to place his/her foot improperly on a step in normal condition and that his/her abnormal conduct, which could not be anticipated by the carrier, has been the exclusive cause of the injury  (4).*

*Consequently, the accident results from the contractual transportation provisions, and the grounds put forward subsidiarily by the victim are not applicable, under art. 1384 paragraph 1, civil code (5).*

(Miss Beau vs. Soc. des transports Alloncle) – Decree

THE COURT : Deciding following the appeal properly filed by miss Beau of a judgment, dated February 6, 1957 by the Commercial Court of Romans which declares as without grounds the liability action undertaken by her against the Société Alloncle, her carrier: - Whereas the appellant objects to the decision which failed to appreciate, with the transportation contract established, that the carrier could only free itself from its responsibility by showing the non-execution of its obligation arising out of a foreign cause which cannot be assigned to it or by the victim's fault, the exclusive cause of the prejudice suffered by her;  - Whereas the Société Alloncle argues by alleging that at the time of the accident, the transportation contract had not been entered into; and if it had been the case, there was exclusive fault by the victim;  - Whereas the facts of the proceeding, not disputed by the victim, show that on July 10, 1954 a bus of the Société Alloncle providing service to Valence was positioned at 3.30 PM at the point of departure at Saint-Marcellin, with its door open; that miss Beau, then 54 years of age, who had not requested any assistance to board the bus and who was by herself, wanted to take the bus, but since her foot slipped from the step, she fell down on her behind on the sidewalk and she fractured her left tibial plate; - Whereas the fare for the trip is collected inside the bus, but that in this case, the transportation contract was achieved as soon as the tacit agreement of intentions took place; that the carrier, by having its bus parked at the usual point of departure, with its door open, indicated its intention to welcome customers and that miss Beau, wishing to board the vehicle, responded to this offer; - Whereas, if the carrier contracts with respect to the passenger the obligation to keep them safe, the latter is applicable only under the obligations resulting from the terms and conditions of transportation and cannot cover the imprudence or clumsiness of the person transported, who, maintaining in his/her actions or movements his/her own initiative and judgment, is required to provide himself/herself with safety measures imposed by his/her personal conduct; - Whereas that it is not contested that the bus was standing still; that the first step, in accordance with the regulations was 0.45 m from the ground, had a length of 0.25 m and a depth of 0.20 m; that its undistorted surface contained asperities of the honeycomb type aimed at preventing the foot from slipping; finally, a

handle was secured to the door; - Whereas miss Beau who had not requested any assistance to board the bus, owes it solely to her clumsiness for having placed her foot improperly on a step in good condition and that her abnormal conduct, unforeseeable by the carrier, is the exclusive cause for the injuries that she sustained. -  Whereas the present case, finding its settlement in the contractual transportation provisions, the grounds claimed subsidiarily by the victim under article 1384 of the civil code are not applicable. – Whereas, finally, miss Beau declares very subsidiarily that in the event that the carrier would want to show her error, an investigation would have to be ordered; - But whereas the facts stated have never been shown to be false by her; that they situate with precision the circumstances of the accident and that any new measure of investigation four years after the accident would be superfluous; that by substituting these motives for those of the first judges, the judgment rendered must be confirmed.

For these reasons, admits the appeal, but rejects it as being without grounds; confirms the judgment issued.

April 14, 1958. Court of Grenoble, 2nd chamber – MM Guillot Denis, presiding judge; Guillot Charles, reporter, Guy, president of the barristers associated with the French court, Chassigneyx (the latter from the bar of Bourgoin), esquire.

NOTE

(1 to 5)  A 54-year old woman wants to board a standing bus. The door is open. She grabs the handle, pulls herself onto the step, slides, falls back onto the sidewalk and fractures a tibia. She sues the transportation company. The latter points out that the step of the bus was at the regulatory height,  that it had the depth and the width required, that it was flat and undistorted, that it contained slight asperities to prevent the travelers from slipping.
And of all of this, the court concludes: 1. The contract was in place and the liability of the company must be judged on a contractual level; 2. This liability is not involved because such an accident can only be due to clumsiness by the victim and this clumsiness cannot be assigned in any way to the carrier.
Does this solution fall without any problem within the set of rules that constitute our positive right in the matter ? (Cons. R. Rodière, *Le régime légal de l'obligation de sécurité due par les transporteurs à leurs voyageurs*, J.C.P. 1952. I 997, and the bibliography cited. *Adde*. : P. Durand, *Prévision des dangers et cas fortuit en matière de transport de voyageurs, Bull transp., internal, chem. de fer*, 1952, 128 ; J. Hémard, *Les contrats commerciaux*, f. 2, numbers1020 et al.).

I -  *About the nature of the liability* – To position itself on a contractual level, the court of Grenoble is of the opinion that the contract had already been entered into between miss B, and the transportation company. It bases itself on the tacit agreement that came about, on the part of the company, by the fact that its bus was standing still, the door was open, at its point of standing before departure; on the part of the traveler, that by wanting to board the bus, she responded to the company's offer.
This analysis is correct. It responds to the intention of the parties and jurisprudence has already provided it. When access to the vehicles is not regulated, the transportation contract takes place as soon as the traveler enters the vehicle, in particular, for such purpose, she makes contact with the transportation vehicle. And it is at the same time that the carrier contracts the safety obligation which its contract makes it a promise to the travelers. (Req. May 7, 1935, D.H. 1935, 348; S. 1935, I 206; Civ. April 20, 1942, D.A. 1942, 127; Nancy, March 1, 1950, J.C.P. 1950, II 5892, note by J. Hémard. – For the justification of this solution, see our aforementioned article No. 24). As such, the injuries which the traveler may experience while boarding the bus are covered by the obligation arising out of the contract. (About the interest of this qualification, also see the end of this note).

II – *About the scope of the safety obligation*
The court's wording merits attention. Since we find ourselves in a contract, the safety obligation which represents a debt owed by the carrier was involved. But it "is only applicable within the framework of obligations resulting from the terms and conditions of the transportation and cannot

cover imprudence or clumsiness by the person transported who, maintaining in his/her movements his/her own initiative and judgment, is required to provide for himself/herself the safety measures imposed by his/her personal conduct".

In reality, for a better wording, it would have been necessary: 1. To explain or at least state that the safety obligation was already in effect; because this does not result from the sole fact that the contract had been entered into; as such, for railroad or airline travel, the contract is entered into when the ticket is purchased, sometimes several days in advance, and nevertheless, the safety obligation only starts at the time when the traveler enters into the reserved space; as such, a link is missing in the reasoning of the court of appeals but it can be made good without a problem; 2. Avoid this hard-to-understand statement "the debt for safety applies only within the framework of obligations resulting from the terms and conditions of transportation." This means, without a doubt, that the bus carrier does not promise the safety promised by an airline carrier, or that a bus with a step is different from a modern vehicle without a step… It would have been simpler and clearer to state that *the implementation of the safety obligation must be considered taking into account the conditions in which the transportation must normally take place.*

These observations having been made, the wording of the Court of Grenoble has the merit, without standing up against the certain solution of our positive right regarding the debt of safety owed by the carrier to its passengers, to set limitations for such debt. Certainly, the carrier owes safety to its customers but on their part, they must adopt the measures imposed by their personal conduct. (see our abovementioned article, No. 52, and the decrees cited – *Adde* Montpellier, December 3, 1956, D, 1957, Somm. 40). In other words, the carrier owes a *collective safety* which it provides through means left at its discretion because it is an obligation of result or outcome that weighs on it, and which must be of an average and sufficient efficiency. If statistics teach us that a certain device is good in 999 out of 1000 cases, the carrier does not have to provide for the 1000th, being the abnormal situation which may occur. More concretely, the devices provided for boarding must correspond to the size and to the average aptitudes of the individuals who must take the bus. They are not made for dwarfs nor for giants who must take the measures imposed by their personal situation. The same is true if a lady of 54 is not in a condition of taking a bus by herself, the carrier is not required to provide it, *within the framework of its responsibility*. Or else, the terms "responsibility" does not have meaning anymore and one must acknowledge that the carriers are made by the law into insurers of their customers.

This being recognized, if one analyzes this case and one refers the decree to the common jurisprudence regarding the need for the carrier to administer the *pertinent proof* that the injury is exclusively due to an event which cannot be assigned to carrier, it is necessary to make an observation: the carrier is released in this case without having truly shown that the victim was at fault. What it has established above all is that the device for boarding was perfectly proper; but I do not read here that witnesses came to state that the victim did not place her foot properly or that she boarded too quickly or without holding herself adequately onto the handle … We are remaining in the domain of conjecture: it is more likely that the accident is due to the clumsiness or the inaptitude of the victim than to any other fact assigned to the carrier.

I believe that the solution is an excellent one because it appears to me that the debtor can establish by *de facto presumptions* that the accident cannot be assigned to it. (see for article 1384, paragraph 1, civil code, R. Rodière, *La responsabilité civile*, No. 1660). But the court of Grenoble would have been more prudent by motivating its decision in a tighter way. In case of appeal, would the court of appeals considered itself sufficiently enlightened about the *reality of the victim's fault* ? Even if one regrets it, some doubt may remain … It is true that the court of Grenoble made good by affirming in a more peremptory manner that the victim "owes it to her clumsiness of having improperly positioned her foot on a step which was in normal condition and that her abnormal conduct, unforeseeable for the carrier, is the exclusive cause for the injuries suffered by her," but it is here that one measures the insufficiency of wording,  nevertheless tested, because can one seriously claim that the fact (which in fact does not seem to have been directly established) of improperly placing one's foot on a step is an unforeseeable event for the carrier. The wording of the law (art. 1147 civil code) is better: the

company had to be released because it had established (by presumptions by the man) that the injury was not due to an event for which it was responsible.

A last observation: qualification of the responsibility possibly incurred by the carrier did not show any interest and article 1384, paragraph 1, invoked subsidiarily by the victim, would not have been more helpful, because the presumption which this text states fails to stand before the evidence that the injury is not assignable to the guardian and this proof would have been equally contested or recognized in this case (V.R. Savatier, note J.C.P, 1954, II, 8421, *in fine*). The qualification interest would only have presented itself (to the possible benefit of the carrier) if one refused to apply article 1384, paragraph 1, to *inert* things; but since this is not a solution acquired in jurisprudence (H. et L. Mazeaud et A. Tune, *Traité theor. et prat. de la responsabilité civile*, t. 2, 1958, No. 1211-7; R. Rodière, Responsabilité civile, No. 1508 – See R. Savatier, *Traité de la responsabilité civile*, No. 358 bis), the carrier would not have been in a better position if it had been able to admit that, since the contract was not yet entered into at the time of the accident, its liability could only have been unlawful in nature, because the victim would have been able to invoke art. 1384 paragraph 1, of which the force here is similar to the one of the obligation of safety for which the contract makes the carriers responsible since 1911.

René Rodière
*Professor at the Faculty of Law and*
*Economic Sciences of Paris.*