# Exhibit 17

COURT OF CASSATION

(3$^D$ CIV. CH.)

**January 14, 1987**

**SALES, Promise of sale, Promise constituting sale, Agreement on the thing and the price, Incidental modality, Ratification by notary, Parties, Consent, Constituent element (no), Perfected sale.**

*A sale is perfected between the parties as soon as the thing and the price are agreed upon, and the lack of a definitive agreement on the sale's incidental elements cannot prevent the perfection of the sale unless the parties intended to delay contract formation until agreeing on these methods (1);*

*With regard to Civil Code art. 1134 and 1589, the Court of Appeal's decision was based on statute when, to uphold an agreement, the Court decided in its discretion that the parties to the document in question had agreed on the thing and the price and that while they had intended to have the document ratified by a notary, neither the provisions of this document (promise of sale of real and movable property), nor the circumstances of the case, indicate that they wanted to make this incidental modality a constituent element of their consent (2).*

(Ms. Lebel-Orset v. Lignel.) – DECISION

THE COURT; -- On the only argument: -- Whereas according to the appealed decision (Orléans, sol. hrg., May 23, 1985), ruling on remand after reversal: that by private document of Nov. 13, 1978, Ms. Steinlen committed to transferring to Mr. Lignel a house and all the works of the Steinlen family in her possession in exchange for an amount to be paid in full and a monthly life annuity; that the document specified that the possibility of making the house into a museum or a Steinlen foundation would be studied with the National Library; that Lignel made various commitments including in particular to make available to Steinlen the means necessary to finish the biography of her uncle, Alexandre Steinlen, and have it published as a book, and to organize in his gallery a series of exhibitions of Steinlen family works; that it was mentioned that the agreement would not take definitive effect until after having been ratified by a notary; that after Lignel paid the portion of the price to be paid in full and the first term of the annuity, Steinlen refused to proceed with the agreement; --

Whereas Steinlen's successor, Ms. Lebel-Orset, challenges the decision for having upheld the agreement made Nov. 13, 1978 between Steinlen and Lignel when, according to the argument: "while a sale is perfected as soon as the parties' agreement on the thing and the price is observed, the parties may subordinate the perfect and definitive nature of the sale to the completion of a condition precedent; in the case at bar, in the document of Nov. 13, 1978 concerning the transfer not only of real property but also of movable property and the rights attaching thereto, the parties expressly stipulated that their agreement would not take definitive effect until after having been ratified by a notary (Me. du Boys, 104, rue du Faubourg Saint-Honoré); the Court of Appeal did not provide a statutory basis for its decision with regard to Civ. Code art. 1134 and, by erroneous application, violated Civ. Code art. 1589 when, to declare that there was no provision in the document or circumstance in the case indicating that the parties intended to delay contract formation until signature of an authenticated deed, it limited itself to retaining that they had agreed on the thing and the price as of Nov. 13, 1978 and that it had not been established that Steinlen had intended to make the incidental terms enumerated in the document a constituent element of the sale, without seeking to determine what the common intent of the parties was in providing in the document of Nov. 13, 1978 that their agreement would not take definitive effect until after having been ratified by the designated notary;

But whereas, after having correctly stated that the sale is perfected between the parties as soon as the thing and the price have been agreed on and the lack of a definitive agreement as to incidental

elements of the sale cannot prevent the perfection of the sale unless the parties had intended to delay contract formation until these modalities have been determined, the Court determined in its discretion that the parties to the document of Nov. 13, 1978 had, as of that date, agreed on the thing and the price and that while they had provided for ratification of the document by a notary, neither the provisions of this document nor the circumstances of the case indicate they wanted to make this incidental modality a constituent element of their consent; for these reasons alone, the decision has a statutory basis;

For these reasons, denied.

Jan. 14, 1987. – 3d Civ. Ch. – Mssrs. Monégier du Sorbier, pres. – Senselme, rapp. – Ms. Ezratty, adv. Gen. – S.C.P. Lyon Caen-Fabiani-Liard and S.C.P. Guiguet-Bachellier-Potier de la Varde, atty.

NOTE

(1 and 2) By contract of Nov. 13, 1978, Ms. Steinlen agreed to transfer to Mr. Lignel a building as well as the works of the Steinlen family, in consideration for payment of an amount to be paid in full, a life annuity, and various other services. The agreement specified that it "would not take definitive effect until after having been ratified by a notary." After having accepted the first payments provided for, Steinlen refused to deliver the property that was the subject of the property on the grounds that the sale had not been definitive, but "merely a draft of intent."

This characterization was retained by the Court of Appeal of Paris in its decision of June 15, 1981 (unpublished). Noting agreement on the thing and the price, the Court interpreted the terms of the contract as delaying the transfer of property until the date of the notarized deed. It concluded from this that the disputed agreement did not create the characteristic obligations of a sale, but only an "obligation to do" capable of giving the purchaser, in the event of seller's refusal to perform its obligation, merely a claim in the form of damages. On Lignel's petition, the decision was overruled for lack of a basis in statute (3d Civ., Jan. 5, 1983, D. 1983.617, note Jourdain; J.C.P. 1984.II.20312, note H. Thuillier), to the extent the Court of Appeal, after having noted the agreement on the essential elements of a sale, had refused to give it effect, without having specified "whether the ratification provided by a notarized deed was necessary to bind seller and purchaser to a definitive contract."

The case was remanded to the Court of Appeal of Orléans, which, affirming the first decision, held that the disputed agreement was indeed a final sale. The Court considered that it had not been proven that the parties "had intended to delay contract formation until the authentic deed." Application of Civil Code art. 1134 and 1589 thus led it to hold that agreement on the thing and the price was sufficient to form the sale, which the parties were ordered to perform. In the second petition, filed by Steinlen's sole beneficiary, it was claimed that the Court of Orléans had not provided a statutory basis for its decision with regard to Civ. Code art. 1134, and had violated art. 1589. The 3d Civil chamber of the Court of Cassation rejected these criticisms in its above-reported decision.

Its decision should put an end to the confusion and uncertainty concerning the regime of the bilateral promise of sale (or of any other consensual contract [Translator's Note: a consensual (also called formal) contract requires only consent, as opposed to a solemn contract, which requires ratification by a notary]). These uncertainties result from the very definition of a bilateral promise, a contract by which the parties give their consent to a future contract, the formation of which they subordinate to the accomplishment of a contractual formality (Weill and Terré, *Droit civil. Les obligations*, 4th ed., 1986, no. 109; Boyer, Les promesses synallagmatiques de vente. Contribution à la théorie des avant-contrats, *Rev. trim. dr. civ*. 1949.1; J. Schmidt, *Négociation et conclusion de contrats*, Dalloz, 1982, no. 554, p. 297). The ambiguity of the promise comes from the fact that it seems necessarily to blend with the definitive contract when it is consensual, because it already includes consent to this contract. If such is the case, the bilateral promise is never an autonomous preparatory contract, such that its practical utility appears limited. One feels, however, that the intent of the parties is often to conclude two distinct agreements, the

first preparing the second. And the theoretical regime of promises, as it results from Civil Code art. 1589 and 1134 and their interpretation by the courts, responds to the concerns of practitioners.

## I. – *In theory, a promise of sale "constitutes a sale".*

In holding that "a promise of sale constitutes a sale when there is mutual consent by the parties to the thing and the price," Civ. Code art 1589 illustrates the rule set forth in art. 1583, according to which a sale is perfected between the parties "as soon as the thing and the price are agreed …." One concludes that a sale (and any other consensual contract) is formed by agreement on the elements the law considers essential. Such an agreement is therefore not only necessary, but also sufficient, to form a contract, which explains the solution in Civ. Code art. 1589.

### A. – *Agreement on the essential elements is necessary.*

The consent necessary to form a contract must, at a minimum, bear on the contract's essential elements.

Determining the essential elements depending on the nature of the contract is relatively simple in contracts named by statute (*contrats nommés*): they are the elements that belong to the definition (in statute or case law) of the contract under consideration. The thing and the price are thus the characteristic essential elements of a sale. The price is, generally speaking, the characteristic element of any contract for valuable consideration. In a contract not named by statute (*contrat innommé*), the obligations essential to achieving its economic objective constitute its essential elements. In the absence of agreement on one of these elements, the courts refuse to recognize contract formation (e.g.: Civ. 3d, Feb. 26, 1975, *Bull. civ.* III, no. 83, p. 62; disagreement on the subject of the contract: Civ. 3d, March 22, 1977, *ibid*. III, no. 144, p. 111; Com. June 9, 1980, D. 1981.I.R.40: disagreement as to price).

An agreement where the essential elements are missing is neither a definitive contract, nor a promise of such a contract (e.g.: Paris, 5th ch., Apr. 24, 1980, *Juris Data*, no.0435; Paris, 25th ch. B, Feb. 20, 1985, *ibid*., no.020690); depending on the interpretation of the will of the parties, it may be a simple "draft" contract, an agreement in principle, or a partial contract.

In ignoring the elements other than the thing and the price, Civil Code art. 1583 implicitly recognizes that agreement on the essential elements is not only necessary, but also sufficient to form a consensual contract.

### B. – Agreement on the essential elements is sufficient.

Any elements other than those that can be qualified as essential due to the nature of the contract are presumed to be incidental (until proof to the contrary). Disagreement as to these elements is not an obstacle to contract formation. Such is the case, for example, of methods for performing obligations (e.g.: Civ. 3d, Jul. 16, 1974, D. 1974.681, note Malaurie; Rép. Defrénois 1975, art. 30882, no. 3, p. 383, note Aubert; Com. Apr. 17, 1980, J.C.P., C.I., 1980.1.8848) or the tax consequences of the agreement (Civ. 3d, Jan. 14, 1975, *Bull. civ*. III, no. 11, p. 9).

This rule is applied to the clause by which the parties provide for accomplishing a specific formality. Such a provision is presumed to constitute a simple method of performing the contract, definitively formed by agreement on the essential elements as defined by law (see Civ. 1st, Oct. 6, 1966, *Bull. civ*. I, no. 460, p. 350; Civ. 3d, May 2, 1968, *ibid*. III, no. 182, p. 144; J.C.P. 1968.IV.100; Dec. 7, 1971, J.C.P. 1972.IV.19; Paris, Feb. 18, 1976, *Rev. loyers* 1977.403, note Viatte; Civ. 3d, June 13, 1978, *Gaz. Pal*. 1978.2. Somm. 354; Jan. 31, 1978, D. 1978.348; Paris, Apr. 29, 1982, *Juris Data*, no. 023776; Nov. 17, 1983, *ibid*., no. 028307; May 14 1984, *ibid*., no. 022461).

A sales contract that includes agreement on the thing and the price therefore constitutes, in theory, the definitive sale not only due to art. 1589, but also pursuant to Civil Code art. 1583 and 1138. If the

formality considered by the parties was an authentic deed, the judicial decision recognizing the definitive character of the sale will take the place of this deed and may be published at plaintiff's request.

In the instant case, the conclusion of the final sale seemed to be corroborated by the beginning of performance of the purchaser's obligations, accepted without protest by the seller. She was therefore particularly unfounded in claiming that the contract was merely preparatory. Even assuming the parties had initially wanted to delay conclusion of the sale until the authentic deed, the beginning of performance would have constituted the waiver of this additional condition to formation of the definitive contract. Unlike ratification formalities required by law, contractual formalities may, in fact, be waived (Civ. 1st, June 13, 1961, *Bull. civ.* I, no. 311, p. 245; Jul. 6, 1964, *ibid.* I, no. 369, p. 288; Nov. 24, 1965, ibid. I, no. 652, p. 496; *Rev. trim. dr. civ.* 1966.529, obs. Chevallier; Feb. 5, 1971, D. 1971.281).

To recognize the validity of the seller's pretensions, one would have to have shown that there are cases where the promise of sale "does not constitute a sale" and that the disputed contract fell within one of these hypotheses.

### II. – *Exceptions where a promise of sale "does not constitute a sale"*

The terms and effects of this exceptional solution must be set out.

#### A. – *Terms of the preliminary contract to a bilateral promise*

To be valid as an autonomous contract, a promise must always include agreement on the essential elements of the definitive contract, because it already expresses the consent to this contract. However, this contract will not be formed until accomplishment of the formality the parties commit to accomplish. The principle of consent does not prohibit the parties from choosing a specific form to express their will; on the contrary, they are given this choice. When the parties have voluntarily conditioned the validity (the formation) of their contract on a form that is not required by law, this form becomes mandatory for them, pursuant to Civ. Code art. 1134 (M. J. Guerriero, *L'acte juridique solonnel*, L.G.D.J., 1975, p. 85).

A bilateral promise may therefore constitute a preliminary contract distinct from the final sale when the parties intend for the chosen formality to be a condition to forming the sale. All the decisions rendered in the instant case recognize this principle. Implementing this solution requires knowing the intent of the parties as to the role played by the formality for which they have provided. In theory, contract formation is not subject to any particular form; one's desire to derogate from this principle must therefore be clearly expressed: "the announcement, in a privately drawn up deed of sale concerning the agreement on the thing and the price, that a notarized deed will be drawn up later, will subordinate the contract's formation and effectiveness to the accomplishment of this formality only if either the terms of the contract or the circumstances clearly indicate that such was the will of the parties" (Pet. May 4, 1936, D.H. 1936.313).

Consequently, if the clause is ambiguous and requires interpretation, it cannot be recognized as derogating from the principle of consensual contract formation. In the case at bar, the appellate decisions split over the interpretation of the will of the parties as to the meaning of the disputed clause, reaching contradictory substantive solutions. The Court of Paris recognized that the parties had "reserved the transfer of ownership of the property to the purchaser until the day the notarized deed was signed"; the Court of Orléans held that the clause constituted merely an incidental modality of the sale. Such a clause in fact raises doubts as to the role the parties intended to assign the notarized deed. It seems to be a standard formula to which they did not attach any original meaning; its terms are not sufficiently explicit to express the will to derogate from the common law of contract formation (cf. Civ. Nov. 21, 1932, D.H. 1933.20, where, regarding a clause providing for the payment "in cash, in gold or silver and not otherwise," the Court considers that such a standard formula cannot . . . be considered an essential condition of the sales contract."

When in doubt as to the role assigned to the formality provided for, the formality must therefore be considered as a simple method of performing the definitive contract formed by agreement on its

essential elements (the opposite solution is provided by art. 14 of the Swiss Code of Obligations and art. 125 and 154, §2, of the B.G.B., which presume that the form voluntarily chosen by the parties is a condition to forming their contract).

     This solution, which complies with the fundamental principles of French contract law, raises the issue of drafting bilateral promises the parties intend to constitute preliminary agreements.

     The apparent uncertainty of case law as to the regime of bilateral promises can be explained by the imprecision of contractual provisions, which makes their interpretation difficult. The mere fact that the parties delayed the transfer of property to the day their contract is evidenced by an authentic deed is not sufficient to establish that they intended to delay the creation of the sale until that date (Civ. 3rd, May 2, 1968, supra; Aix-en-Provence, Jan. 12, 1965, J.C.P. 1965.II.14312, note Deghilage). In such a case, it may in fact concern a final sale with a clause reserving ownership. As the Court of Douai very correctly observed (Douai, Sept. 8, 1983, D. 1984.413, note Jestaz and Morand-Deviller): "Whereas if the effect of the sale, by the mere fact that its constituent elements are assembled, is to transfer ownership, it is up to the will of the parties to set this transfer at a date that is distinct if they consider this useful. Thus, the mere fact of a deferred transfer is insufficient to lead to the conclusion that it [the sale] had not been concluded: it is precisely because it preexisted that the stipulation relating to it could intervene."

     To the extent the promise of sale "constitutes a sale," it can also include a clause delaying the transfer of ownership it would normally effectuate, as illustrated by a recent decision of the Court of Appeal of Lyon (Lyon, 1st ch. A, May 29, 1983, calendar no. 3460.A/B, *Genillon v. Berger*, LEXIS): "Whereas pursuant to Civil Code art. 1589, a promise of sale constitutes a sale when there is mutual consent of both parties on the thing and the price; Whereas such consent having been noted by the document of August 11, 1980, a perfected sale occurred between Ms. Genillon and Ms. Berger; to the extent the subject of this sale was the shares of Ms. Boutier, it was ratified by her on Nov. 24, 1980; Whereas a sale being perfected as of August 11, 1980, the clause providing that one year after the transfer of Boutier's shares, Genillon would transfer her own shares to Berger must be interpreted as delaying the transfer of ownership until this date; Whereas this transfer, which was not subordinated to either the signature of a new document or notice, occurred by operation of the document of August 11, 1980, one year after the document ratifying the transfer of Boutier's shares, namely, Nov. 24, 1981; Whereas Genillon may thus rightfully obtain from Berger the sales price of the shares according to the payment methods provided in the contract." The courts determine the role of the formality provided in their discretion (Civ. 3d, June 9, 1971, *Bull. civ.* III, no. 364, p. 259; Oct. 11, 1978, D. 1979.I.R.60; June 11, 1980, D. 1981.I.R.12). The deadline given the purchaser to have the authentic deed drawn up may play the role of condition subsequent (Civ. 3rd, Jan. 31, 1978, D. 1978.348) or suspensive term (Civ. Dec. 3, 1934, S. 1935.1.68). In a hypothesis where one wondered if the authentic deed required by the law itself (Constr. and Housing Code, art. R. 443-20) was a condition for transferring ownership or forming the sale, the Court of Douai opted for the latter interpretation, observing that "the text cited above goes further by situating the cause of this transfer in the authentic deed itself" (Douai, Sept. 8, 1983, *supra*).

     Signing an authentic deed (or another formality) must therefore have been clearly considered by the parties as a "decisive cause" or an "essential element" of the final sale. Indeed, case law recognizes that the parties can subordinate the conclusion of the contract to agreement on an element they considered essential (e.g., Civ. 3rd, May 2, 1978, J.C.P. 1978.II.19465, note Fieschi-Vivet; D. 1979.317, note Schmidt-Szalewski; Civ. 1st, Feb. 21, 1979, J.C.P. 1980.II.19482, note Fieschi-Vivet).

     If in the instant case the parties had expressed such a desire, their agreement would have been a preliminary contract producing specific effects distinct from those of the definitive contract.

### B. – *Effects of a preliminary contract to a bilateral promise*

     The value of a bilateral promise distinct from the contract it prepares is the specificity of its effects. Thus, while the definitive contract transfers rights, the promise does not: the promise of sale "does not constitute a sale." The purchaser's right is considered its personal property, even if the sale concerns a real property right (Civ. 1st, Apr. 30, 1970, *Bull. civ*. I, no. 148, p. 119; J.C.P. 1971.II.16674,

note Mourgeon; this right therefore falls within the mass of the spouses' community property). The Court of Cassation holds that until signature of the notarized deed, the parties are bound only by an obligation to do, "which can give rise . . . only to a claim in the form of damages (Civ. 3rd, Apr. 2, 1979, *Bull. civ*. III, no. 81, p. 63; J.C.P. 1981.II.19697, note Dagot; *Journ. not. et av*. 1979.1129, art. 55059, note J.V.; *Rev. dr. immob*. 1980.71, obs. Groslière and Jestaz).

The promise of a conveyance contract does not create an obligation to transfer ownership. In the exceptional cases in which it exists, the obligation to give can arise only from a valid contract having the transfer of rights as its subject (Weill and Terré, *Droit civil*, t. 2, *Les biens*, 2d ed., 1980, nos. 512 et seq.). But, precisely, the promise is not yet the definitive contract, which alone can transfer the right or create an obligation to give. The seller cannot be ordered to perform the obligation to transfer ownership to the purchaser, because it is not the obligor of such an obligation. If the authentic deed and only the authentic deed constitutes a sale, this means that each of the parties can prevent contract formation by refusing to accomplish the formality provided for (cf. Jestaz and Morand-Deviller, note under Douai, Sept. 8, 1983, *supra*).

The subject of the contract of promise is to prepare the definitive contract, by bringing into being the obligation to proceed to the formality provided for in the contract. Can this obligation be subject to specific performance? Such an order seems possible because it does not involve physical constraint on the recalcitrant obligor, which is prohibited by Civil Code art. 1142. However, if the promise creates the obligation to express consent in contractual form, it can be considered that the refusal to proceed thereto when the deadline arrives makes performance impossible (Starck, *Droit civil*, *Obligations*, 2d ed., 1986, by Roland and Boyer, t. 2, no. 2264). Recurring fines would be useless.

The promisee's rights will however be compromised if the definitive contract considered was concluded with a third party in disregard of the promise. In the case of a promise of sale, for example, the right remains the property of the seller until definitive formation of the sale. If the sale is concluded with a third party, it cannot be canceled pursuant to Civil Code art 1599 because it does not concern the thing of another. Except in the case of collusion between the promissor and the third party to commit fraud, the contract concluded with the latter is valid and the promisee has only a right to damages (Civ. 3rd, Apr. 2, 1979, *supra*). This solution may seem shocking, but it is logical when one recognizes that the promise of sale is not the sale; there is a high probability, but not a certainty, that the sale will be concluded.

From this point of view, the promise delaying the formation of the sale until the authentic deed must be distinguished from the sale (and from the promise of sale constituting sale) reserving the transfer of ownership until this deed. In this case, the seller cannot valid convey the thing for sale to a third party.

A recent decision of the Court of Cassation illustrates this hypothesis. A private deed of sale provided that the effective transfers of ownership be delayed until the day the authentic deed was signed, which was to occur before a specified date and did not. Thereafter, the sellers concluded a second sale with a third party. The Court of Appeal declared this sale perfected on the grounds that the first sale had become void because the authentic deed had not been drawn up by the specified date. This decision was reversed on the grounds "that by so ruling, without mentioning other circumstances likely to establish that the parties had thus intended to delay until this date the creation of their obligation to sell and to purchase, the Court of Appeal did not base its decision in statute" (Civ. 3rd, March 18, 1987, decision no. 616, LEXIS. – See also Civ. 1st, jan. 24, 1984, *Bull. civ*. I, no. 31, p. 24).

On the whole, the regime of bilateral promises produced by prior case law seems imprecise due to the categorization problems it creates. The *Steinlen* case has the merit of clearly reiterating that the promise of a contract may be distinct from the definitive contract. It is up to practitioners to draw the conclusions.

Joanna Schmidt,
Professor at the University of Lyon III,
Emeritus Director of the Institute
of Business Law and Economy