# Exhibit 18

## 668 MAIN CONTRACTS 260

Regarding the fact that the substitution clause does not influence the qualification of the promise, see Civ. 3rd, June 28, 2006, D. 2006. 2439,  Mr. Behar-Touchais's note.

**SALE, FORMATION**
**AGREEMENT ON ESSENTIAL ELEMENTS**
(See s*upra,* No.145)

**SALE. ERROR ON CONTENT.**
**VENDOR'S ERROR**
(See *supra,* No. 147-148)

**SALE. ERROR ON GROUNDS**
(See s*upra,* No.149)

**SALE. FRAUDULENT CONCEALMENT**
(See *supra,* No. 150 and No. 151)

**260**
**SALE. PRICE. DETERMINATION**
**Req. 7 janvier 1925**
*(DH 1*925. 57)
*Maljournal* **ag. /** *Senèze* **et al.**

*If a sale price must be determined by the parties, it is not necessary in principle that the amount be set in an absolute manner. For the formation of a sale, it is sufficient if the price can be determined, per the contract clauses, through the connecting of elements which no longer depend on the will of either party.*

**Facts** – See the Order.

### 260 VENTE 669

### ORDER

The Supreme Court: - On the first plea, regarding the violation of articles 1583 and 1582 of the Civil Code and 7 of the April 20, 1810 law. – Whereas that the disputed order for having declared the sale authorized by Senèze to Maljournal as definite, when there existed no agreement whatsoever regarding any price on the business sold; - But whereas if a sale price is to be determined by the parties, it is not necessary in principle that the amount be set in an absolute manner; For the formation of a sale, it is sufficient if the price can be determined, per the contract clauses, with reference to with elements which no longer depend on the will of either party; - Whereas, in fact, it results from the disputed order that the transfer of its assets by Senèze et Cie to Maljournal had been done on the condition of payment of liabilities and based upon the ability by the assignee to satisfy the sponsor", by paying him the agreed upon amount of Fr.50,

000; - Whereas since the price thus established needed to be established notwithstanding any new agreement, the trial judges were able to rule that the sale was perfect without violating any of the provisions referred to in the ground; that it ensues that the plea is not founded; ... *On those grounds,* rejects ..

## OBSERVATIONS

**1** According to article 1591 of the Civil Code, "the price must be determined by the parties." Does this mean that the price must be set from the time of exchange of agreements? According to the above cited Order, the Supreme Court's answer is that a sale is valid only if the price can easily be determined (I.) While it was for a long time seen as a principle involving, unless exceptions, all contracts, the requirement for a determined or to be determined price, stipulated by article 1591 of the Civil Code, now only involves sales, since an important change in case law dated December 1, 1995 *(supra,* No. 152-155.)  This brings up the question of whether a change in perspective modified in an important way the understanding that judges have of this provision (II?)

## I. – The notion of ascertainable price

**2** If a price must be determined by the parties, it is nonetheless not a requirement that the amount be set from the time of exchange of agreements. It is sufficient that the price can be determined. How is that? Article 1592 provides a first example by establishing that the parties have the option of being able to entrust a third party with the setting of the price. The third party is neither a referee nor even an expert, but a common envoy, at times termed an "estimator" (Cornu, obs. *RTD civ.* 1966. 310 ;) in that case, none of the parties are at the mercy of one another. Extrapolating on the basis of such assumption, the above cited order rules that the price can also be determined the moment it needs to be set in the future, *"through the connecting of elements which no longer depend on the will of either party."* [1]
If one abides by this injunction, the setting of the price needs to be done from the onset by the contracting parties, and this setting of the price needs to be independent of their future will. As, either the price cannot be set without a new appraisal by the parties (sale made either for its value or its fair price) and the contract is not signed per se for lack of agreement on one of its essential elements *(supra ,* No. 145;) either that, or the setting of the price is equal to leave to the unilateral will of only one of the parties the setting of the price and the sale is void, for the "whimsical decisions" (Cornu, *RTD civ.* 1965. 821) of one or the other of the parties cannot overrule the contract. This solution is related, as pointed out by many authors, with the prohibition of the purely discretionary terms of article 1174 of the Civil Code (v. not. Ghestin, "Non determination of price and discretionary term", *D.* 1973 chr. 293 and 5.) From then on, the art is to come up with a method which is allows for price setting without putting any of the parties are at the mercy of one another.

**3** The issue is particularly important in the case of a *sale at market price on delivery.* In such case, the price depends upon the item rate on the day of delivery. While it is quite useful when the delivery of the item and the payment of the price are established with a maturity, and the financial instability renders forecasting of the benefit on merchandise difficult, such clause is void or invalid whether one or the other of the parties is at the mercy of the other. Thus, the sale

is valid when the rate is established by a public body (taxation system) or is the product of a deal which itself is an outcome of the law of supply and demand. However, a sale established upon the vendor's rates is, in principle, void, when the rate as of the day of delivery is involved (suggested price) and that the latter results from the exclusive authority of the vendor. Having ruled otherwise in the past, (1st Civ., May 20, 1981, *Bull. civ.*, No. 179 *JCP* 1982. II. 19840 [1st esp.], G. Raymond note; see already 1st Civ., March 13, 1973, *Bull. civ.* I, No. 96), top case law nonetheless ruled that in the case of the sale of a car by a dealer, reference to the builder's

## 260 SALE 671

ongoing rate on the day of delivery is valid, since the price is not set by the vending dealer, but by a third party, in that case the builder, and that such price takes into account market fluctuations (1st Civ. , Nov. 8, 1983, *Bull. civ.* I, No. 262, *JCP* 1985. II. 20373, note G. Raymond.) The first plea has been criticized due to the artificiality of the difference between dealer and builder. It is difficult to see in the builder an impartial and disinterested party, since he is meant to cash the sale price, minus the margin taken by his dealer. Thus, the commission for abusive clauses, in its recommendations regarding the purchase of leisure vehicles, wished to see such clause deemed never written (Recommendation No. 85-02, *JCP* 1985. III. 57654.)

**4** Another method used at times in common practice consists in a *price linked to the profitability of the matter.* All or part of a price will depend upon the profit margin the purchaser gains from the item which was sold to him. This option raises serious issues in that the price is set in function of elements which are not neither totally independent from the purchaser's will nor depending upon his free will. Indeed, in acting on a depressed price, the purchaser risks true financial suicide. Thus, if some decisions in this particular case void the sale for nondetermination of price on the grounds that the buyer is the one setting the price (Com. May 5, 1959, *Bull. civ. 111* , No. 193, *D.* 1959. 575; 1st Civ., Nov. 12, 1974, *Bull. civ.* I, No. 301,) others, in greater number, consider to the contrary that such a sale is valid as long as the price is subject to a commercial variable freely agreed upon, one which is not dependant upon the buyer's exclusive authority (Req. May 5, *1905, DP* 1906. I. 360; Com. Dec. 18, 1972, *Bull. civ.* IV, No. 355, p. 310, *D.* 1973. 662; 1st Civ., June 28, 1988, *D.* 1989. 120, Malaurie note).

## II. – The Incidence of the December 1, 1995 Orders

**5** What happened to these solutions pursuant to the « upheaval»  which the determination of price underwent due to the change in case law caused by the December 1, 1995 Orders remains to be seen *(supra,* Nos. 152-155.)
It is a well known fact indeed that case law based itself for a long time on articles 1591, then 1129 of the Civil Code in order to amend the requirement for a predetermined price in the case of contract validity, in particular concerning blanket contracts. But the stringency with which this condition was applied led to a dead-end, which top case law solved by reversing both the principle and the exception. From now on, the nondetermination of price no longer causes the voiding

## 672 MAIN CONTRACTS 260

of a contract, unless there exists a specific legal provision. In other words, article 1591 no longer appears, in pricing, as an expression of the principle, but rather as a variance to it.

**6** Since exceptions are subject to interpretation, such change in perspective could well have led case law to limit the span of this provision. Several authors wondered after the publication of the December 1, 1995 Orders, whether this new solution might not affect sales rather broadly: a clause entrusting to the unilateral will of one of the parties the setting of the price would suffice to fulfill article 1591 requirements, in such a way that in such case, assent of voiding would have given way to the judge controlling the abusive use of this right, which abuse would itself have yielded only either cancellation or compensation (see in this regard J. Ghestin, *JCP* 1996. II. 22565, Nos 22 and foll.; L. Aynès, *D.*1996. 20.) But decisions published later show that top case law means to firmly maintain all of the solutions it previously found. Thus, it reaffirmed that, should article 1591 of the Civil Code not impose that the order itself bear indication of price, such price much be ascertainable (3rd Civ., Sept. 26, 2007, *Defrénois* 2007. 1725, Savaux obs.,) that is, set a according to elements not solely depending upon the will of only one of the parties (1st Civ., Dec. 14, 2004, *CCC* 2005, No. 64, L. Leveneur note.)

**7** The result, which no one had foreseen, is that a sale is void in the case when the setting of the price necessitates a future agreement between parties. There then exists a structural lack of price. And the latter cannot be filled by elements which the parties would not have specifically addressed. Thus, the Chamber of Commerce ruled that, when the parties abstain, "the ascertainable or non ascertainable character of the sale price cannot result from a transaction previously concluded between the vendor and a third party" (Com. Nov. 12, 1997, *CCC* 1998 No. 22, Leveneur obs.) Likewise, a Court of Appeal which determines the price according to elements external to the agreements between the parties violates Article 1591 (1st Civ., Feb. 24, 1998, *RJDA* 1998, No. 575, p. 402, *RTD* civ. 1998. 900. Mestre obs.; Jan. 19, 1999, *CCC* 1999, No. 52, Leveneur obs.; Nov. 28, 2000, *CCC* 2001, No. 40, Leveneur note.) Indeed, the judge does not have authority to substitute itself for the parties in the setting of the price, nor can he modify the price the latter established (3rd Civ., Jan. 29, 2003 *Bull. civ.* III, No. 23 , p. 22, *Defrénois* 2003, p. 844, Savaux obs., *JCP* 2003. I. 186, No. I, Labarthe obs.)

**8** On the other hand, a case where a sale clause entrusts one of the parties with the setting of the price, when the latter depends upon

## 260 SALE 673

future elements which were yet unknown during the conclusion of the contract (market price, profitability, etc.) is more intricate still. Is one then able to live with such a clause, subject to the involvement of a judge in case of abuse, or is voiding incurred from the moment the price is determined, as mentioned in the above cite Order, through interaction with elements dependant upon the will of one or the other of the parties?

**9** One must make a difference between sales made under blanket contracts and others. In the case of the former, a liberal solution is preferred: the requirement for a set or ascertainable price is fulfilled when a clause stipulates that the price must be set taking the supplier's price into consideration. Should it be otherwise, it would be indeed the essence itself of the system put into place by the Supreme Court in its December 1, 1995 Orders which would be put into question. Still, it is necessary for the party with the power to unilaterally decide on a price not to abuse of its power *(supra,* No. 152-155.)

**10** Regarding the latter, i.e. the sales which are not directly addressed by the plenary sessions' Orders – sales of buildings, of businesses, of cars, of shares, etc., -- case law seems to want to hold in place the solutions in effect before the December 1995 changes. Of course, it did not have to be aware of the specific hypothesis considered previously. The recently published Orders feature indeed, instead of a clause directly entrusting  to the vendor the responsibility for price setting, a price established upon the profitability of the item at hand, a situation which was in the past the subject of a nuanced appreciation by case law (*supra* 1 § 4.) Displaying the same flexibility, top case law rejected the appeal filed against an Order which refused to void, in an agreement in which the transferee of shares guaranteed to acquire within eight years the title surplus of which the assignors remained owners, with an "earn out" clause stipulating that "the price will be depend upon the evolution of results and the true value of the business at the time of each transaction," with the trial judges pointing out the independence of price setting from the will of the parties (1st Civ., March 10, 1998, D. 1998 matters. 631, RTD civ., 1998. 899, Mestre obs.) On the other hand, it decided that a sale of shares was void when the price had to be set depending upon the earnings of the company such as assessed by a team of three experts chosen by the parties, and that, through its arbitrary practices, the assignors could well have falsified the reference data upon which the setting of the price is based (2nd Civ., April 8, 1999, CCC 2000, No. 60, Leveneur obs.) By penalizing such behavior with

### 674 MAIN CONTRACTS 261

voiding and not awarding of damages, the judges seemed to want to indicate that, when it comes to sales, the issue of price setting is not satisfied the moment the price is set through the means of elements which depend upon the will of one of the parties

**11** This concern for independence regarding either of the parties recurs when the latter have entrusted a third party the setting of the price. It is then important that "this co-contractors' common envoy is truly a third party, that is, that he not be under the dependence of either party." However such is not the case when this third party had previously had the title of consultant with a company from the group to which the transferee company (1st Civ., Dec. 2, 1997 *RTD*  civ., 1998. 396, Gautier obs. 900. Mestre obs.) On the other hand, a builder who, in the case of a a sale of vehicles between a transferee and an individual owner, is led to set a price due to of clause of the contract mentioning, "current price on day of delivery," is indeed a *bona fide* third party (1st Civ., Dec. 2, 1997, *Bull. civ.* 1, No. 340, p. 232. *JCP* 1998. L 129, No. 1, Jamin obs., *RTD civ.,* 1998. 898, Mestre obs.) There again, the Supreme Court persists in its previous case law and disregards the recommendations made by the abusive clause commission regarding the purchase of leisure vehicles.

For the time being, it would therefore seem as though the great upheaval of the December 1, 1995 Orders would have passed over the sales contract.