# Exhibit 26

Tarlton Law Library

Joanna Schmidt-Szalewski
Professor at the University Robert Schuman (CEIPI) Strasburg
In charge of the Institute of Political Studies of Paris

Jean-Luc Pierre
Attorney-partner Landwell & Associates
Associate professor at the Univ. Jean Moulin Lyon (III)

# LAW OF

# INDUSTRIAL PROPERTY

4th Edition

**Lexis Nexis**

**LITEC**

**Lexis Nexis S.A.
141, rue de Javel
75015 Paris**

THE PROTECTION OF UTILITY CREATIONS

…general legal principles of leasing, the lessor is not required to protect the lessee against the material disturbances of third parties.  It is different with regard to patent licenses, since such material disturbances consist of infringement by third parties and the patent holder is the only holder of the right to bring an action (see above, no. 194 to 196).  Therefore, the patent holder has the obligation to bring an action for infringement at the request of the non-exclusive licensee (611) (the exclusive licensee being able to bring an action himself under certain conditions, see above, no. 195).  The legal disturbance may also consist of an action for infringement brought by a third party against the licensee, who may then join the granting party to the proceedings.  Still, it must involve a serious risk of crowding out; the licensee cannot take advantage of the mere threats of a competitor to cease performing his obligations (612).

### b) Obligations of the licensee

291. – The licensee owes the payment for the concession of the patent; the jurisprudence also imposes on him the obligation to make use of the patent.

292. – **Payment.** As a form of leasing, the license is a contract against payment, which carries the obligation to pay a price for the authorization to make use of the patent; if not, it would be a loan of the patent at no charge.  This price does not necessarily have to be determined or determinable at the time of the concluding of the contract (613).  The amount and the terms and conditions of payment are established by agreement of the parties.
   The price generally combines a lump sum and remuneration proportional to the volume of sales or the number of products produced under license, with various variations.  The taxable basis of the royalty and the terms and conditions of control by the patent holder of the sums withheld for the calculation of its amount should be established with precision (for example, keeping special production and sales logs).  Sometimes the licensee agrees to pay a minimum royalty (614). This minimum may be calculated either on the basis of a set quantity of objects which are to be produced by the licensee, or may consist of a lump sum, independent of the volume of use.
   Like all contractual obligations, the obligation of payment takes effect, in principle, at the concluding of the contract; appropriate clauses can, however, provide it with a suspensive term, in order to delay its collectability (615). The payment is due in principle up to the end of the contract (616); it cannot, however, be required after the expiration of the patent granted in

---

(611)  Paris, Dec. 23, 1927; Ann. Propr. Ind. 1928, p. 118.
(612)  Aix-en-Provence, Nov. 27, 2005; RTD com. 2006, no. 2. p. 351, obs. GALLOUX.
(613)  Cass. Com., Nov. 9, 1987;  Bull. Civ. IV, no. 237; D 1989, p. 35, MALAURE note; JCP 1989, II, 21186, VIRASSAMY note; RTD com. 1988, p. 527, obs. MESTRE, RTD com.  1989, 674, obs. BOULOC and  established case law
(614)  Cass. com., Feb. 1st, 1994; Ann. Prop. Ind. 1995, p. 84 , MATHELY note; RTD com, 1995, p. 772, obs. AZEMA.
(615) Cass. com. July 15, 1969; Bull. Civ. IV, no. 253, royalty collectable starting with the 3rd year of use.
(616) Paris, Jan. 29, 1963; Ann. Propr. Ind. 1963, p. 221.

license (617); it would then be without cause and, moreover, contrary to French law and possibly, to European community law on competition.

293. – **Use.** Even though in the lessee does not have the obligation to make use of the thing leased with regard to general legal principles, such an obligation is considered as essential in the patent license and is required
of the licensee even in the contract's silence on this point (618).  The use must be effective and serious, in quantity as well as in quality, with regard to the means which the licensee has at his disposal (619). Only an absolute impossibility resulting from insurmountable difficulties (620) can excuse non-use.  The licensee must personally make use of the patent; due to *intuitus personae* which characterizes the contract, he may not grant sub-licensees, or assign his license without the consent of the patent holder (621).

In contracts which feature a close collaboration of the parties, a non-competition obligation applicable to the licensee has been allowed, requiring him to not produce objects likely to compete directly with those of the patent holder (622).

## § 2.  Non-voluntary authorization to use the patent

294. – **General interest.** The use of patents concerns the general interest in several regards. The State organized, initially, the expropriation of inventions important for the national defense (623); then, it brought to national law the provisions of the Convention of the Union of Paris (see below, nos. 1056 and s.) on statutory licenses (624). The law of 1968 diversified the interventions of public authorities and their regime; the law of December 18, 1996 introducing the provisions of the ADPIC Agreement modified this regime on several points.  Under the current system, whose enforcement in practice is weak, the public authority can make two types of decisions: some entail the transfer of the patent right, and others do not.

### A.- Decisions which entail the transfer of the right

295. – **National defense**.  The law specifies a single case of expropriation, in the interest of the national defense: the State may totally or partially expropriate the holder of a patent or of a patent application (CPI [Industrial Property Code]. Art. L.613-20).  The expropriation is performed by order made on the report of the minister in charge of industrial property and the minister in charge of national defense.  The State appears to have a discretionary power of assessment with regard to the advisability of this measure. Compensation is obviously due to the expropriated patent holder; in the absence of an amicable settlement, its amount is set by the district court.  A common law appeal may be brought by the patent holder before the administrative jurisdiction against the expropriation decision.

A special provision specified in the case where an action for infringement concerns a patent used for the needs of the……..[remainder of article is omitted] should be noted.

---

(617)  Paris, Jan. 4, 1950; JCP 1951, II, 6218. R. PLAISANT note; today, such clauses would also be invalid with regard to the law of competition; see above, no. 246. It would be otherwise with a patent-know-how "mixed license", if the royalty compensates the know-how after the expiration of the patents; Paris, 5th ch., May 22, 1990, prec.

(618) For example Cass. com., May 16, 1961; Bull. Civ. III, no. 212. – Nov. 4, 1974; Dossiers Brevets [Patent Cases] 1975, V. 3. – Lyon, Oct. 29, 1986; PIBD 1987, 405, III, 46.

(619) Paris, April 8, 1964; JCP 1964, II, 13876, R. PLAISANT note; RTD com. 1965, p. 396, obs. A. CHAVA[illeg.], Paris, April 7, 2004; PIBD 2004, 790, III, 405.

(620) TGI Paris, Dec. 18, 1985; D. 1987, somm. comm, p. 133, obs. MOUSSERON and SCHMIDT. - Paris, June 2, 1988, D. 1988, inf, rap. p. 202 –The burden of proof of difficulties lies with the licensee: Paris, Jan. 30, 1991; RD propr. intell, 1991, no. 38, p. 32 – Cass. com., October 1st, 1996; D. 1997, somm. comm., p. 336, obs. SCHMIDT. – Paris, April 7, 2004; PIBD 2004, 790, III, 404.

(621) Paris, May 31, 1906; D. 1908, 5, 1.

(622) Paris, April 8, 1964; JCP 1964, II, 13876, R. PLAISANT note.

(623) L. of April 12, 1916, abr., D. Dec. 13, 1919, then replaced, D. October 30, 1935.

(624) D. Oct. 30, 1953.