# Exhibit 27

## Court of Appeals of Lyon

**Contract for exclusive patent license – Contract validity – Fraud – Lack of consideration – Lack of subject matter– Price determination – Breach of contractual obligations – Obligation to pay royalties – Royalty calculation base**

**-- Liability – Denigration – Publicity given to the proceedings**

According to article 1129 Civil Code, an obligation must have as its subject a thing that is definite at least as to its type, whereas the contractual amount of the thing may be uncertain provided it can be determined. Such is the case in the present case, the license contract setting the exact amount of the royalties due the grantor in the case of the sale of a certain quantity of products and providing, in the case of fewer sales, that the parties shall meet to set this amount. In any case, the lack of a definite price does not itself make the contract void; abuse in setting it merely gives rise to an indemnity.

Incorporating an element of the invention, an interactive chip, into accessories not mentioned in the contract causes them to become an element of the patented invention and their commercial value increases because they are complementary to the product—an interactive doll—that is the subject of the contract. These accessories must therefore be included in the royalty calculation.

GROUPE BERCHET SA, Me PICARD (as administrator of Berchet Co.) and Me JEANNEROT (as legal representative of Berchet Co.) v. Janick SIMERAY

Court of Appeal of Lyon, 1st Civ. Ch. A, February 5, 2009 (CC 2007/03011; B20090042)

(Partial overruling of the judgment of the Tribunal de Grande Instance of Bourg-en-Bresse dated March 29, 2007, CC 2004/02418; B20070216)

**Facts and procedure:**

On January 8, 1999, the holding company Superjouet *cum* Berchet Co. concluded with Simeray a "professional inventor contract" by which the latter undertook to supply each year an indefinite number of inventions in the area of electronic or mechanical toys. These inventions were to be the subject of patents that the company and the inventor would co-own, the inventor granting the company exclusive use and priority rights. Simeray was paid in lots for the inventions and, in the event of use, he was paid royalties of 2% on the net sales price of the product concerned.

On June 21 and July 16, 2002, two amendments were signed. The first provided for replacing the 2% royalty with a fixed annual royalty of 76,000 euros, applicable retroactively from January 1, 2001, it being specified that these royalties would be due only if the quantities sold each year were at least equal to the quantities sold in 2001. The second amendment specified the quantity sold in 2001 and provided that if the 2001 threshold was not reached, the parties would meet to agree on the amount of the fixed annual royalty due.

On October 29, 2002, Berchet Co. terminated Simeray's contract as of January 31, 2003. Simeray continued to send it his invoices. By letter of September 10, 2003, the company asked him to delete from his invoices the entries relating to the toys' accessories, which Simeray refused, claiming that these accessories were concerned by the patents.

In addition, Simeray, who was an employee of Biotronics, was laid off on September 24, 2001 and learned that a letter sent by Berchet Co. to his employer played a role in his dismissal. Granted his rights to unemployment benefits by the Assedic, these benefits were cancelled in March 2002 on the grounds that he had performed services for Berchet Co. Moreover, he was subjected to a tax audit for

having omitted VAT from the invoices addressed to Berchet Co., which would not accept regularization [of the situation] until much later.

On May 24, 2004, Simeray sued Berchet Co., asking the court to void the amendments and order the defendant to pay him 2% royalties on the sales realized on the products concerned by the "intelligent and self-adjusting electronics for toys with accessories" and the "electromagnetic eye" patents, to designate an expert to determine the sales realized on the products concerned and calculate the amount of royalties due from 2002 onwards, to order Berchet Co. to pay him an account, and to hold that Berchet Co. committed torts in communicating incorrect information to his employer and the Assedic.

By judgment of March 29, 2007, the Tribunal de Grande Instance of Bourg-en-Bresse voided the amendments for lack of consideration, held that the doll accessories with an interactive tag must be included in the base for calculating the royalties due the inventor and that, therefore, the royalties are 2% of the net sales price of the interactive dolls sold with accessories, the interactive dolls sold alone, and the accessories with an interactive tag sold separately; ordered Berchet Co. to pay Simeray an account of 100,000 euros toward the royalties due for fiscal years 2001 through 2004, subject to interim enforcement; found that the defendant had committed torts in an unfair way with respect to Simeray by communicating false information to his various partners and consequently ordered Berchet Co. to pay Simeray 30,000 euros in damages and an indemnity of 7,500 euros on the basis of article 700 NCPC [New Code of Civil Procedure]; pronounced a publication measure; and, before ruling, ordered an expert analysis to verify the calculation base for the royalties due.

**Discussion:**

**-- On the admissibility of the appeal:**

"Whereas Groupe Berchet company appealed the judgment of May 4, 2007; though at this date it was subject to bankruptcy protection, it nonetheless has a right to appeal;

Whereas articles L. 622-1 and L. 622-3 Commercial Code, in their versions resulting from the Law of July 26, 2005, provide that during the observation period following a judgment of bankruptcy, the company is managed by its director, who continues to dispose of and manage its property;

Whereas the judgment of March 29, 2007 beginning bankruptcy proceedings gave the administrators the assignment of "supervising the debtor's management operations";

Whereas during the course of the appeal proceeding it was the subject of compulsory winding-up; however, the collective procedure bodies voluntarily participated and pursuant to article L. 641-9 II, when the debtor is a legal entity, the company directors in office when compulsory winding-up is ordered remain there;

Whereas therefore, the appeal by SA Groupe Berchet is admissible and the procedure lawful."

**-- On the amendments of June 21 and July 16, 2002:**

"Whereas the initial contract concluded January 8, 1999 between Superjouet *cum* Groupe Berchet and Mr. Simeray provided in article 2 that the latter would supply each year an undefined number of inventions, in the form of drafted and filed patents, of which he would grant the company exclusive use rights;

Whereas article 10 provides that the creation of the company rights pursuant to these inventions would be granted by lots paid in several installments evenly divided throughout the year, the lot for the year 1999 being sold for 180,000 francs, without taxes, in four installments of 45,000 francs;

And whereas article 11 provided that the granting of use rights and priority rights would give rise to payment of proportional royalties, applied to the net sales price ex-works of the products concerned, the rate of this royalty being a weighted 2% of the share of the inherent value of the innovation agreed upon contractually, product by product, between Simeray and the company;

Whereas the amendment of June 21, 2002 concerns only the provisions of article 11 relating to the royalties, of which it modifies the calculation method and the amount, which passes from a percentage of the products' sales price to a fixed amount of 76,000 euros (498,527 francs) in consideration for the granting of the use and priority rights of the French and international requests for "interactive toy" and "electromagnetic doll eye" patents; it was also provided that these royalties would not be due unless the sales of the products concerned by the patents were at least equal to the amount sold during the calendar year 2001;

Whereas the amendment of July 16, 2002 specifies only the number of sales for the calendar year 2001, which were at least 251,628 units, and the procedure to be followed to determine the royalties if the sales in 2002 were lower than this number;

Whereas respondent invokes the invalidity of both amendments for fraud;

Whereas, however, according to the last paragraph of article 1116 Civil Code, fraud cannot be presumed and must be proven;

Whereas Simeray mentions a "deal" offered by Groupe Berchet's directors, namely, limiting the royalties to 76,000 euros per year to be able to maintain his contract as inventor and see the launch of a new product consisting of a small car guided remotely by a light ray, and explains that having no other resources, he had to accede to appellant's demands;

Whereas respondent produces no evidence in support of his affirmations that make it possible to qualify appellant's actions as fraudulent;

Whereas appellant challenges the trial court's ruling because it voided the amendments for lack of consideration;

Whereas in a bilateral contract, consideration for the obligation of each party resides in the obligation of the other and there is no consideration when one of the co-contractors has no obligation;

Whereas the existence of an obligation's consideration must be analyzed as of the date it was undertaken, that is, at the time of contract formation;

Whereas in the present case, on the date of contract formation (January 8, 1999), the obligations of Simeray were to supply patents to appellant, on the one hand, and to grant use rights for these patents on the other hand, and in exchange for the first obligation, Superjouet was to pay 180,000 francs and in exchange for the second, to pay royalties of 2% on the sales price of the products concerned; the contract therefore did not lack consideration;

Whereas, however, respondent invokes a lack of consideration affecting only the amendments of June 21 and July 16, 2002, and contrary to appellant's argument, the amendment to a contract itself constitutes a bilateral agreement when it modifies an essential element of the contract;

Whereas in the present case, the consideration for Simeray's obligation to grant appellant his rights to use his inventions was originally the payment of 2% royalties on each product sold, but subsequent to the amendments, it was the payment of fixed royalties of 76,000 euros if there were at least as many sales as in 2001, and the payment of fixed royalties to be determined by the parties if there were not;

Whereas in any case, even if the new terms resulting from the adoption of these two amendments were less beneficial than in the initial contract, they nonetheless did not lack consideration when respondent continued to receive royalties in consideration for the use of his inventions; in addition, consideration for the grant of use rights was not limited to payment of royalties; in fact, Simeray did not have the technical or commercial means to manufacture and commercialize his inventions, operations which Berchet Co. accomplished in consideration for the grant of use rights;

Whereas appellant had also taken into account the uncertainty of the European patentability of respondent's inventions, which had already received several preliminary opinions of denial by the European Patent Office and were at risk of not being protected against other productions placed on the market by foreign companies;

Whereas the judgment shall be overruled to the extent it voids the amendments for lack of consideration;

Whereas respondent invokes the amendments' lack of subject to conclude that they are void;

Whereas, however, according to Civil Code article 1129, an obligation must have as its subject a thing that is definite at least as regards its type, the contractual amount of the thing may be uncertain provided it can be determined;

Whereas in the present case, the amendments provided the precise amount of the royalties due Simeray (76,000 euros) if at least 251,628 items were sold; in the event of fewer sales, it was provided that the parties would meet to set the amount of the royalties; thus, even if this amount was not certain, it would be determined by the parties and royalties were provided for;

Whereas, in addition, as appellant maintains, the lack of a definite price does not itself make the contract void; abuse in setting it merely gives rise to an indemnity;

Whereas the amendments being valid, the royalties due to Simeray must be calculated according to the method stipulated therein."

**-- On the base for calculating the royalties:**

"Whereas appellant argues for exclusion from the royalty calculation base the sales of toys from the doll category equipped with an inductive tag when such accessories existed prior to Simeray's invention, claiming this tag was simply added to them, an electronic component known in itself, without other technical modification, to increase the interest of the interactive dolls by making them react to its range of toys in the Berchet Co. dolls category;

Whereas in fact the catalogues introduced into evidence for the years 1997, 1998, 1999 and 2000 indicate that the accessories concerned by the suit existed already at these dates but had no relationship with the "intelligent doll";

Whereas this doll was first sold in 2000 because the first royalties were paid to Simeray during this year, in the amount of 71,745.45 euros, and the annual sales taken into account therefore did not include the accessories that were not equipped with an inductive tag and were sold with this tag beginning only in 2001;

Whereas the inventor's initial contract provided that "the grant of use rights and priority rights gives rise to the payment of proportional royalties, applied to the net sales price ex-works of the products concerned," and at the time, these products were only the intelligent doll and the accessories such as the baby bottle, spoon and bracelet constituting a set;

Whereas, however, Berchet Co. thereafter placed an inductive chip into several of its already existing products so the doll reacts when it is brought close to any of them;

Whereas, as the lower court found, the consequence of incorporating into these products an interactive chip that is part of Simeray's invention is to make them elements of the patented invention and to increase their market value because they are complementary to the interactive doll; and if, as appellant maintains, the existence of new accessories had favorable consequences on the sales of the doll, the same is unavoidably true for the sales of the accessories themselves, which were more attractive once equipped with the chip enabling the doll to respond to them;

Whereas the initial agreement, materialized by the contract of 1999, took into account as products sold those incorporating Simeray's invention, namely the doll and the small accessories; once other accessories were equipped with one of the elements of the invention, namely the interactive chip, which modified their operation, they must be included in the products sold;

Whereas the judgment shall be upheld to the extent it holds that the accessories to which Berchet Co. added an interactive chip must be counted;

Whereas by order of June 4, 2007, the judge responsible for verifying expert analyses at the Tribunal de Grande Instance of Bourg-en-Bresse observed that the expert analyses were void because Simeray had not paid the deposit set by the judgment under appeal;

Whereas there is no reason to order a new expert analysis; Berchet Co. must submit as evidence a statement for fiscal years 2002, 2003 and 2004, certified by its chartered accountant, of the number of products incorporating the respondent's invention, namely:

1 – the dolls sold alone;
2 – the sets of "dolls and small accessories";
3 – the accessories that include the interactive chip;

Whereas appellant has proven that it paid, as royalties for 2002, 2003 and 2004, the amounts of 38,000 euros, 34,892 euros, and 25,870 euros for a total of 98,762 euros, there is no need to order payment of an account to respondent."

**-- On Berchet Co.'s alleged torts:**

"Whereas appellant also criticizes the judgment under appeal with respect to its finding that appellant committed torts causing prejudice to Simeray;

Whereas the Tribunal found that while Berchet Co.'s actions were not the cause of Biotronics' dismissal of Simeray, they made it possible to defend his dismissal before the employment tribunal, and that respondent was an employee of Biotronics, which was to develop, in partnership with Arc International, an invention of an inductive surface with heating plates;

Whereas, as appellant maintains, the information it supplied cannot have caused the dismissal because respondent was laid off on September 24, 2001: the letter from the president of Biotronics' administration is dated November 30, 2001 and the reply by Mr. C, Berchet Co.'s Director of Forward Planning is dated December 3, 2001; in addition, Simeray did not produce either the employment tribunal's decision regarding his dismissal, nor the writings made during this proceeding by Biotronics, his former employer. It is therefore not established that the information given by Berchet Co. in answer to the request of Simeray's employer were used before the employment tribunal or considered by it in making its decision;

Whereas the Tribunal also found that the erroneous information given to Biotronics by Berchet Co. made it possible to discredit the inventor in the eyes of Arc International, thus ruining the plans between them and leading Biotronics to file for bankruptcy whereas Simeray had invested significant amounts of money;

Whereas the evidence produced, in particular the letter dated January 9, 2002 addressed to Berchet Co. by Mr. G., president of Biotronics' supervisory board after the departure of his predecessor, Mr. L., shows that the company's difficulties stem from the disagreement between the two main directors: respondent produced a photocopy of a "declaration" made by Mr. G. on October 15, 2005 indicating that in May 2001, the supervisory board was worried about the delay in developing Simeray's invention, as well as the disagreement between Simeray and Mr. L.; the information supplied by Berchet Co. regarding respondent was not transmitted to the supervisory board until December 2001, that is, after Simeray's dismissal; as of January 3, 2002, the supervisory board dismissed Mr. L. and named Mr. G. as president, giving him the task of conducting an audit of the company, "pulling in the sails" and, if necessary, selling it. At the end of his assignment, while he concluded that the company, after having drastically reduced its financial burden by dismissing two of the three remaining employees, could "rebound" by implementing the proposals made earlier by Simeray, he specified that it was necessary to invest, which the shareholders, who had lost all confidence, did not want to do, preferring to disengage themselves, the treasury being drained;

Whereas it cannot be taken seriously that the letter addressed by Berchet Co. after Simeray's dismissal, who since September 2001 was no longer with the company, was the cause of Biotronics' demise and the respondent's loss of his investments when the two documents written by Mr. G. indicate that Biotronics was in a difficult situation even before the respondent's dismissal;  that less than four months after his dismissal and one month after having received the information from Berchet Co., the supervisory board considered selling the company, the residual treasury being only 1,700,000 francs; and when after the audit, Mr. G. warned that it was "drained";

Whereas with regard to the information transmitted by Berchet Co. to the Assedic, the items produced by the parties indicate that on May 3, 2002, this agency asked Berchet Co. for a copy of Simeray's employment contract; that by letter of May 21, 2002, appellant's legal department indicated to the Assedic that Simeray was not an employee but a service provider pursuant to a professional inventor contract; that while the phrase "service provider" was incorrect, the contract of January 8, 1999 was nonetheless submitted to the Assedic, which was therefore able to analyze respondent's precise situation per this contract's terms;

Whereas after his lawyer received, on January 6, 2003, the Assedic's observations regarding suspension of his benefits, Simeray contacted Berchet Co., which, by a new letter to the Assedic dated

March 4, 2003, specified that he was not a service provider and that the amounts he received were not fees but royalties from the grant of use rights;

Whereas appellant cannot be blamed for having voluntarily committed a tort causing the suspension of Simeray's benefits;

Whereas with regard to the tax audit to which respondent was subjected for not mentioning VAT on the invoices addressed to Berchet Co., it was not Berchet Co. but Simeray himself who established the invoices without mentioning VAT, and he did not produce the tax authorities' decision; in fact, it cannot be considered a prejudice to have been required to pay a tax that was due and he does not establish—or even claim—that he had to pay penalties;

Whereas the judgment shall be reversed to the extent it found that Berchet Co. committed torts against its co-contractor and granted the latter damages for economic harm."


**-- On Berchet Co.'s prayer for relief:**

"Whereas appellant maintains that Simeray blackmailed it to participate with him in an action for counterfeiting filed against the Bao and Taldec companies, that he used the present proceeding to denigrate it in the eyes of toy professionals, and that he uses its products, trademark and commercials to promote his own activities;

Whereas on April 7, 2005, Simeray addressed to Jean-Louis Berchet a letter by which he informed him of the action he intended to file against Bao and Taldec for counterfeiting an interactive truck of which he co-owned the patent with Berchet Co.;

Whereas he indicated in this letter that he intended to join the principal toy distributors in France to the proceeding by exposing the contractual ties linking him to Berchet Co., for which he would speak with regard to the defense of their shared interest;

Whereas this letter cannot be considered to constitute a means to blackmail the CEO of Berchet Co.;

Whereas with regard to the articles that appeared on respondent's Internet site, as well as the letters reproducing the appealed judgment, when a judicial decision is rendered publicly, mentioning it and even reproducing it cannot be considered a tort, especially since Berchet Co.'s appeal is mentioned;

Whereas with respect to inserting Berchet Co. toys into his brochures and websites, www.simerlab.com and www.janicksimeray.com, and the use of its commercials; it is true that Simeray is co-owner of a patent concerning "intelligent and self-adjusting electronics for a toy with accessories" and he is not the creator of the dolls, cradles, strollers or other objects sold by Berchet Co.; however, on the one hand, the Berchet Co. trademark is always clearly mentioned and, on the other hand, it cannot be disputed that they function thanks to Simeray's invention; in addition, the very positive presentation of the products, of which the primary attraction is their interactive quality, has not harmed Berchet Co.; its requests shall be denied;

Whereas Simeray, who loses on most counts, shall be ordered to pay appellant the amount of 5,000 euros pursuant to Civil Procedure Code article 700, and shall pay costs.

On these grounds, the Court of Appeal reverses the judgment except to the extent it held that the accessories should be included in the number of products sold serving to calculate the royalties. Ruling *de novo*, it denies the request to void the amendments to the contract of January 8, 1999 and holds that the royalties shall be calculated according to the methods provided by these amendments; dismisses Simeray's claims for an account towards royalties, for damages, and for the publication measure, and dismisses Berchet's counterclaims; holds there is no need for an expert analysis and, before ruling on the amount of the royalties, holds that Berchet Co. must produce a statement, certified by its chartered accountant, of the sales for fiscal years 2002, 2003 and 2004, of the products specified in this decision.

(Ms. Martin, pres.; *Maîtres* Prothière and Delsart, atty.)