# Exhibit 34

1st *Case*: -- (Compagnie générale transatlantique v. Esbérard.)

On Feb. 7, 1891, the court of Algiers rendered the following decision:

Considering that it is the legal principle that contract stipulations can bind only the parties who freely agreed to them, either by themselves or by a duly authorized representative having, either by legal transfer or subject to an agreement, the capacity to bind; -- Considering that sued by Esbérard, the recipient, due to missing merchandise transported from Bordeaux to Bône per the terms of a bill of lading entered into between the loader and the captain, the company vainly invoked, to object to the jurisdiction of the common law reserved to the recipient by the Code of Civ. Pro. Art. 420, a clause in its bill of lading stating "that all disputes to which the execution of the bill of lading may give rise shall be brought before the commercial tribunal of the place where it was created, and to which, by express stipulation, jurisdiction is attributed";

Considering that, while this clause binds the loader and the company that signed it, being foreign to the recipient, it cannot be invoked against him, the loader having neither a legal nor contractual authorization to grant against him this derogation from the laws of jurisdiction; it should be noted that, while the effects of the bill of lading are necessarily limited, between transporter and recipient, to the obligation for the transporter to remit the merchandise to the recipient and, for the recipient, to pay the freight, it is only for the creation of this legal tie that the loader represents the recipient, and his authorization, thus defined and limited, cannot be extended to stipulations of which the recipient is ignorant; it fails to confirm; -- On these grounds, etc.

APPEAL to settle jurisdiction by the Compagnie générale transatlantique.

DECISION.

THE COURT; -- In light of the request to settle jurisdiction and its supporting documents; -- Whereas the lower court and the court of appeals dismissed the objection to jurisdiction the appellant company presented successively to them without reaching any substantive conclusions, and per the terms of art. 19 of the executive order of August 1737, to settle jurisdiction appellant is authorized to appeal the decision that denied its objection and does not yet have *res judicata* effect; -- Whereas no memorandum was filed by the defendant, who received a summons after writ of Apr. 15, 1891; -- Holds the request admissible, records a default against the defendant, and rules on the substance;

Whereas the bill of lading created in Bordeaux, on Oct. 30, 1888, between Zénon Uzac and the captain of the steamship *le Chatelier*, belonging to the Compagnie transatlantique, for the transport to Bône of rolls of trellis and posts to be delivered to Esbérard, contained in its art. 24: "All disputes to which the execution of the present bill of lading may give rise must be brought before the commercial tribunal of the place in which it was created, and to which, by express stipulation, jurisdiction is attributed"; -- Whereas the stipulations of the contract between the loader and the transporter benefit and bind the recipient who, acting pursuant to the bill of lading, is subject to the performance of the licit clauses therein; therefore, the Compagnie transatlantique, sued by Esbérard for missing merchandise, had grounds to object to the jurisdiction of the commercial tribunal of Bône, before which the summons had been served, and to claim referral of the case to the commercial tribunal of Bordeaux; -- Its objection was therefore wrongly denied;

Nullifies the procedure before the commercial tribunal of Bône and the court of appeals of Algiers, the decision rendered by this court on Feb. 7, 1891 and the consequences thereof; -- Sends Esbérard back to appeal as he shall notify to the commercial tribunal of Bordeaux, etc.

Oct. 19, 1891.-Ch. req.-Mssrs. Bédarrides, pr.-Lardenois, rap.-Chévrier, av. gén., c. conf.-Chauffard, atty.

2d *Case*: -- (Compagnie générale transatlantique v. Bénamour.) – DECISION.

THE COURT: In light of the request to settle jurisdiction and its supporting documents; -- Whereas by judgment of the commercial tribunal of Oran (dated March 1, 1889) denied the appellant Compagnie's objection to jurisdiction without reaching any substantive issues, appellant took appeal to this judgment without any ruling on his appeal, and therefore, pursuant to the terms of art. 19 of the executive order of August 1737, it is authorized to appeal, to settle jurisdiction, the judgment that denied its objection and does not yet have *res judicata* effect; -- Whereas no memorandum was filed by the defendant, who received a summons after write of May 19, 1891; -- Holds the request admissible; records a default against the defender, and rules on the substance;

Whereas the bill of lading created in Marseille on Nov. 10, 1888 between the Saint-Louis sugar refineries and the captain of the steamship *Kléber*, belonging to the Compagnie transatlantique, for the transport to Oran of a certain quantity of sugar loaves to be delivered to Bénamour, contained, in its art. 24: "All disputes to which the execution of the present bill of lading may give rise must be brought before the commercial tribunal of the place in which it was created, and to which, by express stipulation, jurisdiction is attributed"; the stipulations of the contract between the loader and the transporter benefit and bind the recipient who, acting pursuant to the bill of lading, is subject to the performance of the licit clauses therein; therefore, the Compagnie transatlantique, sued by Bénamour for damage to part of the transported merchandise, had grounds to object to the jurisdiction of the commercial tribunal of Oran, before which the summons had been served, and to claim referral of the case to the commercial tribunal of Marseille; -- Its objection was therefore wrongly denied;

Nullifies the procedure before the commercial tribunal of Oran and the judgment rendered by this tribunal; -- Sends Bénamour back to appeal as he shall notify to the commercial tribunal of Marseille, etc.

Nov. 30, 1891.-Ch. req.-Mssrs. Bédarrides, pr.-Lardenois, rap.-Chévrier, av. gén., c. conf.-Chauffard, atty.

SLAUGHTERHOUSES: 1°; 2° and 3° ANNEX, TRIPE SHOPS, RIGHTS, CHARACTER, RENTAL PRICE, SETTING OF, AGREEMENT, POWER OF THE COURTS; 4 and 5 DISPUTES, JURISDICTION, PROCEDURE

*The tripe shop annexed to the municipal slaughterhouses are establishments whose use is optional and cannot give rise to the receipt of rent to be discussed in the future between the parties; lacking an agreement between them, it is for the courts to set the price according to the circumstances* (1)[1,2,3];

---

[1,2,3] Slaughterhouses are community establishments authorized by the administration where various animals destined to become food are received, killed, skinned and cut up (*Jur. gén.*, v° *Boucher-boucherie*, no. 39). In cities where there are slaughterhouses, butchers can slaughter animals only in these establishments (*Jur. gén.*, *supra*, no. 51; *Supplément, cod.* v°, no. 26. Comp. Crim. Cass. Jan. 31, 1890, D. P. 90, 1, 493; Cons. d'Et. Mar. 7, 1890, D. P. 91. 3. 90; Crim. den. Jun 5, 1891, D. P. 91. 1. 394), and, for such slaughter, as, in fact, for the stay of animals and the drying or salting of hides, they must pay certain fees (Decree Aug. 1, 1864, D. P. 64, 4. 108). Such taxes, which are the subject of a price list established by the prefect, constitute, according to the Court of Cassation, indirect taxes collected by the communities (Civ. Cass. Jan. 15, 1889, D. P. 89. 1. 249. See *Jur. gén.*, *supra*, no. 49; *Supplément, cod.* v°, no. 24); and, consequently, for such fees, as for all taxes, it is prohibited to avoid paying them, to add nothing to the literal provisions of the price sheets concerning them (Cf.. Crim. den. Jul. 27, 1878, D. P. 79. 1. 389; *Jur. gén.*, v° *Taxes*, no. 46; *Supplément, cod.* v°, no. 8).

But it frequently happens that premises of a specific nature are annexed to the slaughterhouse of a town, in particular tripe shops, for the use of which individuals must also pay certain fees. Who sets these fees? According to what rules must they be determined? Can it be, in particular, that a community, in treating with a contract holder for the construction and operation of a tripe shop annexed to a slaughterhouse, stipulates that the fees the tripe butchers will have to pay will be set by the agreement of the parties and, in the absence of an agreement, if there is a dispute, by the courts? The decision reported above recognizes the validity of such a procedure; it thus likens the fees in tripe shops to a simple rental fee rather than to taxes in the slaughterhouse. Is this the correct solution? To answer this question, one must examine the nature of tripe shops. The tripe industry is completely free, and those who work in it are not required to exercise it in slaughterhouses; private tripe shops are completely legal (See Ministerial instruction of Dec. 22, 1825, *Jur. gén.*, v° *Boucher-boucherie*, nos. 9 and 152; *Supplément, cod.* v°, nos. 87 et seq. Cf. Block, *Dictionnaire d'administration*, v° *Abbatoir*). And no text allows communities to attribute themselves a monopoly for tripe shops as for slaughterhouses. Tripe shops constitute completely distinct establishments from slaughterhouses, even when they are

*Therefore, the clause of an agreement between a community and a company for the construction and operation of a slaughterhouse, which stipulates that "the contract holder shall make friendly arrangements in the future for renting the tripe shop, stores and other outbuildings of the slaughterhouse," is lawful and does not violate any legal principles* (2);

*Similarly, a court hearing the claim for payment of a certain amount, made by the contract holder of a public slaughterhouse against a butcher for the preparation of tripe in a tripe shop annexed to the slaughterhouse, lawfully bases itself, in the absence of a an agreement between the parties, to determine the amount due the contract holder, solely on the circumstances of the case* (3).

*Disputes regarding the setting of a rental price in a tripe shop are subject to common law procedures and not those designed for disputes in the area of registration taxes or indirect taxes* (4)[4,5].

*In particular, they must not be brought before the lower courts ruling without appeal, and in the forms prescribed by art. 65 of the Law of 22 Frim. Year 7* (5).

(Page v. Mr. and Mrs. Baudet.)

On June 3, 1889, the justice of the peace of Royan rendered the following judgment:

Whereas plaintiffs, contract holders of the public slaughterhouse of Royan, claim from Page the amount of 1 fr. 50 cent. for having prepared, at the tripe shop of this slaughterhouse, six veal bellies for 0 fr. 25 cents apiece; -- Whereas Page does not dispute that he prepared or had prepared, in said tripe shop last May, six veal bellies; -- Whereas the contract holders had claimed, at 0 fr. 25 cent. per veal belly, the sum of 1 fr. 50 cent. for the six he prepared there, Page refused to pay this amount, claiming he owed nothing because the agreement made between the contract holders and the city of Royan did not authorize them to receive a specific fee for use of the tripe shop; -- Whereas this interpretation is erroneous; -- Whereas, in fact, the agreement contains a clause, specific to the tripe shop, in which it is stated: "the contract holder shall make friendly arrangements in the future for renting the tripe shop, stores and other outbuildings of the slaughterhouse"; -- Whereas Page vainly argues that this clause, having not been followed by a price, does not lead to a specific fee and that the contract holders cannot demand any fee other than the one stipulated for the right to stay in the slaughterhouse, which is the subject of another clause; -- Whereas the proof that the fee for staying in the slaughterhouse is not confused, in the spirit of the agreement, with the fee for renting the tripe shop, is that it was deemed useful to establish two clauses, and the first would have neither meaning nor usefulness if the goal of the second was to make it disappear; -- Whereas, on the contrary, both clauses are easily explained, if one wanted to distinguish the slaughterhouse properly speaking from the tripe shop, which is, in fact, an outbuilding, but with a particular use, susceptible of justifying a particular fee; this explains the clause regarding the tripe shop; -- Whereas the lack of a price approved by the Administration does not negate the right granted the contract holders, but leaves those subject to it only the option of discussing the amount of the claim made of them;

---

annexed thereto: this is the result of the separation of these two types of establishments in the nomenclature given by the laws on unsanitary establishments (See Decree of May 3, 1886, D. P. 87. 4. 32 and 35). If this is true, one must necessarily admit that the fees collected by the community or its contract holder in the tripe shop that was established, cannot have the character of taxes. The tripe industry not being, as is slaughtering animals, an industry subject, in the public interest, to a monopoly for the benefit of communities, a community cannot impose a tax that no one can avoid; the community that creates a tripe shop annexed to its slaughterhouse is not acting as a public authority for the management of a public service, but as a simple individual; for the use of this establishment, it may therefore receive only the fees an ordinary landlord may demand from those who use its property, that is, a rental fee, the price of which is determined by agreement or, in the absence of one, in the event of dispute, by the courts.

[4,5] From the moment the problem concerning the fees to be received in the tripe shop is not a dispute as to the collection of an indirect or similar tax but a dispute regarding an ordinary rental fee, it is certain that the procedure that must be followed is the common law one. On the procedure specific to authorities regarding the receipt and collection of fees in the area of indirect and registration taxes, see *Jur. gén.* v[ix] *Impôts indirects*, nos. 471 et seq., and *Enregistrement*, nos. 5681 et seq., 5798 et seq.; *Supplément*, v° *Enregistrement*, nos.3326 et seq., 3333 et seq.; Civ. Cass. Jan. 15, 1889 (D. P. 89. 4. 249), and the note; Apr. 20, 1889 (D. P. 96. 1. 316).

-- Whereas Page did not criticize the amount of the fee set by the plaintiffs, and it is not exaggerated at all; -- On these grounds, etc.

On Jan. 7, 1890, on appeal taken by Page, the civil court of Maronnes confirmed the decision of the lower court by adopting its reasoning.

4