# Exhibit 38

# THE ASSOCIATION AND CONTRACT
# IN THE RECENT SUPREME COURT CASE LAW

by Yves Chartier
Law Schools Graduate [Agrégé]
Honorary Counsel to the Supreme Court

To speak of an association as a contract could seem redundant, since the definition such as outlined in Article 1 of the July 1, 1901 law uses the term of "convention" it its regard, and since it is ruled, regarding its validity, by the "general legal principles applicable to contracts and obligations." In keeping with approved case law, a June 25, 2002 decision[1] thus approved a Court of Appeal for having "correctly reminded that statutes rule among parties, and contractual freedom give the latter leisure to decide on statutes content." The contractual nature of associations is even more emphasized than that of companies, since, whereas there are one-person companies, such is not the case at present when it comes with associations, unless at times it becomes so *de facto*, which would explain a recent government response stating that the reduction of the members of a particular association down to one member would cause the latter to be immediately and fully legally dissolved.[2]

This issue seems all the more redundant, seeing that legal rules concerning associations are well defined by extensive legal writing, part of which are by the person to which these pages are dedicated. Litigation, which only deals with legally registered associations, although the lack of legal status[3] does not mean the lack of legal statutes binding the members,  is by nature restricted by the fact that, when it deals with a contract, most disputes do not fall under the jurisdiction of the Supreme Court. In most decisions, the latter often reminds one that the interpretation of statutes is sovereign, and their denaturation cannot be brought up in case of the ambiguity of a particular clause[4], which is a basic principle applying to quashing with regards to contracts.

This study, which aims at analyzing civil Supreme Court case law, that is basically the case law of the last ten years, actually only finds two justifications. The first one is that it makes sense, when it comes to the genre including the "Mélanges" to remain close to the preoccupations of the person for whom they are written. The second one is that if, in the Monthly Supreme Court Newsletter, the "association" item is skeletal – which is remarkable and actually quite satisfying given the success of such items – it has nonetheless been, even if quite succinctly, been expounded upon in the last several years, which would justify attempting at finding a common thread. And it could be of interest in that regard, to examine how case law solves the conflicts submitted to it.

---

[1] 1st Civ., July 25, 2002, *D.* p. 2359, Y. Chartier note; *Gdz. Pal.,* Dec. 2002, p. 8, concl.

[2] Min. Answer, No. 19256, *JCP* 2000, E., p. 392; Corporate Law 2000, No. 84.

[3] 1st Civ., Nov. 2, 1994, Newsl., I, No. 309; May 5, 1998, Newsl., I, No. 159; Corp. Law, 1998 No. 112, Th. Bonneau's note; see however, in the case of an association having a legal personality prior to the July 1, 1901 Law: 1st Civ., Jan. 15, 1991, Newsl., No. 14.

[4] See for instance S.C., 1st Civ., March 14, 1995, Civ. News., I., No. 121; Oct. 15, 1996, Civ. Newsl., I., No. 348: "But since the interpretation of an association's statutes by the trial judge is sovereign, unless denaturation…;" 1st Civ., July 1, 1997, Newsl., I, No. 216; March 2, 1999 Newsl., I, No. 69.

There is one main observation: in application of the principle mentioned above, Supreme Court refers to the association contract. This leaning on statutes to solve disputes is certainly much more frequent in this particular matter than it is in the related corporate law: the difference is easily understood if one considers that this law dates from the beginning of the preceding century, a time where things were simpler, and when legislators only touched on principles, when, no matter what the importance of a contract in the latter legal matter (and as very well emphasized by Prof. Guyon) regulations itself, most often of a public nature, plays a large part.

This is not to say though that all association disputes are centered around the implementation of the contract which binds its members. This legal structure can be seen nowadays used in connection with other contracts, especially in business law. When affiliation to a given association is linked to another contract, it is then best to combine the implementation of two contracts, the latter on one hand, and the association's statutes[5] on the other hand: we will see how, on that point, case law has been called, according to the case, to give precedence either to one or to the others. But above all, mainly in two areas, other considerations prevail, which deal less with the notion of contract than with that of freedom.

The first one, which led the Supreme Court to rule by plenary session on February 9, 2001[6], touches on the freedom not to join, from which one can infer that the convention requiring such is therefore null and void. In the present case, short of a contract imposing the buyers of a building in a subdivision to conjunctly join a sporting club – and some jurisdictions had seen such obligation as legally sound – the Supreme Court ruled, in view of Article 4 of the 1901 Law, that "safe for cases where the law decides otherwise, no one is required to join an association governed (by such law)." Still, one can interpret this decision as illustrative of contractual freedom[7], even though, beyond such obvious interpretation, what we are dealing with is the asserting of a "human right[8]," and of whether the freedom not to join, through the consequences that its opposite could bring in the case of a democratic crisis, seems like an essential tenet of freedom, as seen from a public law point of view. We will simply point out -- however that is technically not within the 1901 Law framework -- that the joining of a union bound to a real estate acquisition, as long as it is required by the project specifications[9], is another matter, due to its nature and subject.

The second item which does not belong in part to a contract is that of the analysis of the cause or of the object of an association, when it comes to the licitness, since freedom of associations finds its natural boundaries (1901 Law, Art. 3) when it goes against basic laws and good morals, with such notions, although expressed differently, underlying Article 11 of the European Convention on Human Rights. Of course, the subject and the cause are elements of the contract, the subject

---

[5] Regarding the assembly which subordinates in corporate law the quality of associate to a membership to an association, refer to Y. Guyon, <u>Contract Treaty, Corporations, Statutory Arrangements and Covenants between Associates,</u> 4th Ed., No. 93

[6] Newsl., Plen. Ass., No. 3; Inf. News. S.C., March 15, 2001, Guérin concl., Sempère's note; Corp. Rev., 2001, p. 357, Y. Guyon's note.

[7] In this sense, see obs. Y. Guyon, regarding S.C. 1st civ., May 15, 1985, Corp. Rev. 1986, p. 457, Order not published to the Newsletter.

[8] In this sense, E. Goté, note under 1st Civ., Feb. 23, 1960, D. 1961, p.55

[9] Civ. 3, Dec. 3, 1997, Newsl., III, No. 212; Of Corporations, 1998, No. 38, Th. Bonneau's note.

being itself defined within the statutes. And, through a recent Order,[10] the First Civil Division based itself specifically on the subject which resulted from the statutes in order to rule an association lawful, and quash the order from a Court of Appeal which, upon the Prosecutor General's request, had rule that the only goal in forming the association was for its creator to express personal opinions regarding historical and political facts, pointing out that "the association whose sole stated purpose is to file a law suit does have a legal subject to it." But, in this Order, which can indeed call for qualifications, the Supreme Court situated itself upstream, at the point of the existence itself of the subject, thus avoiding to rule on it true content. The subject, such as it stems from the statutes, can potentially suffice to prove a particular association's licitness. Such hypothesis is however quite out of the ordinary. However, a case law which in order to rule on such licitness drops the considering of the statutory subject so as to seek the true activity is a bit more common, albeit also not very frequently so. Thus, in an Order dated February 23, 1972[11], the First Civil Division stated that "it is of little importance that the association's statutes would have assigned to it other goals of an illegal nature, so long as its main goal is illegal in nature, and it also suffices for its voiding that during the course of the life of an association, it would have been diverted from its original goal, the moment its goal became illegal." The main item to note here is that it is no longer the social treaty which binds the members of an association, but how its leaders utilize such association. If, in the file entitled "Surrogate Mothers," in order to approve a Court of Appeal in its voiding of the association "Alma Mater," the First Civil Division[12] referred to the illegal subject of this association, which was to facilitate the conclusion and execution of void conventions, it also used the "activity of the association" as an argument. Another Order[13], regarding an osteopathic syndicate with association status, faulted a Court of Appeal for not having drawn the legal consequences it stated "regarding the role played by the syndicate." This taking into account of the situation of fact is easily explained the moment the question is less to assess members' relationships than to assess whether there is indeed injury to the law and order. More recently, regarding associations for the defense of certain types of hunting, the First Civil Division, by an October 16, 2001 Order, in order to reject an appeal against an Order which had pronounced its dissolution, approved the Court of Appeal for having "noted, in its legal assessing of the situation, that should the first apparent subject of the association can be seen as illegal, it appeared that in reality (the latter) had developed an illegal essential activity which therefore constituted its true object."

[14]This priority given to the activity performed, compared to the statutory object, is found again when one must determine whether it is economical or commercial in nature, and to draw the consequences[15]. Of course, the reference to the statutes usually suffices to settle the debate. Thus, in making reference to it, in order to note, regarding the implementation of Article L. 311-3 of the Consumption Code, that a particular association held a professional activity, it was "noted that the association's object was the teaching of the guitar, that statutes stipulated remuneration of the teaching[16]." But, inversely, in order to reject an appeal against an Order which had ruled

---

[10] 1st Civ., xxx 2001, Newsl., No. 91; Of Corporations, 2001, No. 107, Th. Bonneau's note.
[11] Newsl., I, No. 57.
[12] 1st Civ., Dec. 13, 1989, D. 1990, 273, J. Massip Report; JCP, ed. G. 1990, II, 21526, A. Sériaux' note.
[13] 1st Civ., June 29, 1994, Newsl., I, No. 231.
[14] Newsl., I, No. 255; JCP, 2002, ed. G, I, No. 10022, Y. Chartier's note.
[15] See for instance S.C.., March 4, 1992, Rev. Corp., 1992, p. 766, S. Castro's note.
[16] 1st Civ. March 23, 1999, Newsl., I, No. 106; Corp. Law, 1999, No. 109, Th. Bonneau.

that a particular association held an economical object according to Article 96 of the July 13, 1967 Law, the Chamber of Commerce[17] based itself on the findings of the Court of Appeal which had noted that this association, created in order to "create, supply and manage recreation centers" had in fact held activities linked to the organizing of trips, findings which led to the conclusion that "the association had given services comparable to that of a travel agency through the resources made available to them by the subscriptions of its members." On this matter of activity, the Supreme Court has in reality a very concrete approach, and its only using entirely rational reasoning that, in the case of discrepancy between text and reality, that it gives prevalence to the latter.

Bearing in mind the above qualifications, a contract is indeed at the essence of case law when it comes to associations. A contract means, first and foremost, its statutes, to which an internal set of by-laws can be attached, which can however only have lower status[18], and regarding which recent case law helps specify the consequences it draws on various points. But, regarding the fact that an association is a contract, the Supreme Court was called, in the absence of statutes, to apply a broader law, the obligations law, also termed groups law, which is progressively taking shape.

In terms of statutes application, the Supreme Court recently made outstanding progress in that it extended it upwards, to the level of the subscription of its members, thus widening the realm of a law which was already obvious during the life of the association, relevant to its members as well until they left it, voluntarily or involuntarily.

Whereas the February 9, 2001 plenary session had asserted the right not to belong to an association, the question was to know whether inversely there existed a right to belong. Of course, it was never contested that a given association could stipulate requirements and conditions for its applicants. But what was the situation for statutes not bearing restrictions? Through its April 7, 1987[19] Order, the First Civil Division had dealt with the case of a woman whose request to belong to a musketry club had been turned down. Basing herself on the contractual freedom principal to which an association contract is bound, she had noted, in order to approve of the Court of Appeal who refused to condemn the refusal, that "in the absence of such provisions binding in this regard, the members' free will needed to be applicable to the association. " This was tantamount to asserting an almost discretionary law. In a true reversal of case law, the same Division took a contrary position in its rushed Order of June 25, 2002[20]. In the present case, the statutes of a particular association stated that "are considered members of the association the persons who become members by a personal written registration and who pay their yearly membership." Someone had sent in the membership form along with a check. It was argued in the Supreme Court, in order to quash the Order of the Court of Appeal which had acknowledged the validity of the membership, that the trial judges had thus ignored "the principle of freedom of membership and its corollaries," the corollaries consisting here of the existence of an alleged freedom to refuse a membership, as indeed implied in the 1987 Order.

---

[17] Com., July 6, 1993, Newsl., IV, No. 290.
[18] Comm, see however Court of Appeal of Paris Order dated December 17, 1996, and Th. Bonneau's justly critical note. Corp. Law, 1996, No. 224.
[19] Newsl., I., No. 119.
[20] See supra, note 1.

Basing itself again, but leading to another result, on the fact that "statutes establish the law of parties and contractual freedom gives them the right to organize the contents itself of statutes as they wish," the First Civil Division, in its rejecting of the Appeal, approved of the Court of Appeal's decision, with only the case of fraud in reserve, which was not then claimed. Thus, the idea is brought forth that statutes, for lack of membership restrictions, include an offer to which a simple acceptance along with payment of dues suffices to amount to a positive answer. Parties then agreed, without the association, although the first one to be bound by the statutes, being able to issue a refusal in the future. The obligation to accept a given membership should only be limited by the lack of conforming of such membership to the social object, and, as mentioned above, by the existence of fraud, on which two options only trial judges can rule.

It cannot be hidden from these Mélanges how the reversal actually occurred. Mentioning, during a conference on the freedom of associations[21], the freedom of membership, I had noted Prof. Guyon's opinion who had written:
"Should statutes not have provided for acceptance of future members, membership refusals are allowed, but cannot be discretionary. They must base themselves upon the lack of a quality expressly required of the members, and on this ground only[22]."

Agreeing with this opinion which seemed reasonable to me, and which I had quoted, I had discreetly, due to the nature of the matter, suggested the idea that the question should "remain pending." When it was raised a few months later before the First Civil Division, could it be that the President of the Division, who attended the conference, and whose attention was then thus attracted, passed the message on to his Division? The predecision conference confidentiality protocol does not allow us to know the position of the talebearer, nor the opinions expressed during the hearing. Nonetheless, I firmly believe that the above doctrinal opinion thankfully weighed in the discussion.

During the normal course of business, perhaps the most important thing is to notice is the almost total lack of disputes regarding the principles themselves ruling the design of an association's legal structure, since great license is given in this regard to statutes writers, with the 1901 Law (Article 5) simply mentioning there being an "administration or leadership." The disputed items are focused on two points, which deal both with lawsuits in the name of the association, although the first one is of a greater scope: the power to act, and the interest to act.

According to the February 5, 1991 Order[23], the First Civil Division ruled that "the president of an association is a mandatary of that entity whose powers are determined according to the provisions of the association's convention." Such power is therefore not automatic, which would require verification on the part of the judge if contested[24]. Since this sends back to the statutes, the Supreme Court tends to hide behind trial judges' sovereign authority in their interpretation concerning the scope of such powers according to the case at hand. Thus, it ruled[25] regarding an Order through which a Court of Appeal had deducted from a clause which granted all powers to

---

[21] <u>The Freedom of Association and the Law</u>, Constitutional Counsel, June 29-30, 2001, p. 91, no. 24.
[22] Assocations, Dalloz Action, 2000, No. 1159, Rappr. E. Alfandari , RTD com, 1988, p. 87
[23] NewsI., No. 45; Rev. societies, 1991, p. 773, D. Randoux's note.
[24] 1st Civ., Jan. 11, 2000, Corp. Rev., 2001, p. 319, Y. Chartier's note.
[25] 1st Civ., March 2, 1999, Newsl., 1, No. 69, prec.; Corp. Law, 1999, No. 88, Th. Bonneau's note

the president to represent the association in all civilian life actions and before courts, stipulating that the president therefore the power to start a lawsuit in the name of the association, "for lack of a statutory provision to the contrary, or of a general assembly deliberation withdrawing such power from the president." Through yet another Order[26], where it might have made sense for the Supreme Court to again hide behind this sovereign assessment of matters, the First Civil Division, settling the matter by itself, ruled, in order to reject an appeal against an Order having accepted the suit started in the name of a particular association with no general assembly deliberation nor board of directors decision, that "the quality conferred upon the president to sue per Article 11 of the statutes, as a plaintiff as well as a defendant, implies[ed], apart from any statutory depositions or contrary decisions on the part of the deliberating sections of the association, the power to decide regarding the lawsuit opportunity. This is of course not saying that all Orders are in favor of action on the part of the president, since it all depends on the way the statutes themselves are phrased. Thus, the Social Division[27] ruled in an entirely logical manner, thus settling the question, that when statutes stipulate that the president insures the implementation of the board's decisions of which he is the legal representative, such provision does not grant him the authority to appeal (and hence to appeal to the Supreme Court,) as the subsequent transfer of a regular power after expiration of the deadline for appeal cannot hide the substantive irregularity thus caused. This is tantamount to establishing a difference between the president as a leader and decision maker, and the president as a simple implementer of the deliberating department decisions. Such power can always be delegated, as long as the latter complies with the statutes[28]. In this sense also, a November 19, 2002 Order[29] approved a Court of Appeal who had, in order to reject the appeal of the president of a particular association, noted that, after having noticed that per the statutes, "he had no particular power safe that of making sure of its good functioning by calling a board of directors or general assembly meeting, "that, "not vested with the legal representation power, he had received no special mandate to do so."

Depending upon the statutes, this is how associations' interest to act is determined. An October 27, 1993 Order put a logical limit by specifying that an association cannot legally claim a violation of its statutory provisions for which it is not itself responsible[30]." This being said, the principle is that, at least in civil matters, on top of their own damage, associations would have an interest in starting a lawsuit which would hurt the collective interest of their members whom it purports to protect[31], which necessarily renders void any suit seeking the defense of interests of a person who is not a member[32], or one which supports the interest of a particular member, separate from the interest of the association itself[33]. The assessment of this statutory issue according to which is determined the nature of the reparable injury[34] is also within the sovereign authority[35] of the trial judges, so that the Supreme Court's reasoning is in principle based upon

---

[26] 1st Civ., Nov. 7, 1995, Newsl., No. 389
[27] Corp., April 30, 1997, Newsl., V, No. 147.
[28] Corp., June 6, 2000, Newsl., No. 220, regarding the power to represent in court.
[29] NewsI., No. 242.
[30] 1st Civ., Oct. 27, 1993, Newsl., I, No. 297; Corp. Rev., 1993, p. 88.
[31] 1st Civ., May 15, 1990, Newsl., I, No. 102; Corp. Oct. 11, 1994, Newsl., V, No. 266.
[32] Com., Jan. 19, 1999, Newsl., IV, No. 16; Corp. Law, 1999, No. 47, Th. Bonneau's note.
[33] 1st Civ., July 1, 1997, Newsl., I, No. 216.
[34] 2nd Civ., Dec. 18, 1995, Newsl., II, No. 314.
[35] See for instance 1st Civ., July 1, 1997, Newsl., III, No. 216.

findings of the judge of fact concerning the statutory issue[36]. At times, such findings suffice to justify the ruling, as when they make it clear that the suit is different from the statutory issue[37]. Conjunctly, through a July 17, 1997 Order[38], the Third Civil Division limited itself to the trial judges' sovereign findings stating that an association, through its statutory mission, was establishing its common interest which was not entirely covering that of each member, from what it ruled that, by accepting the suit of this association, the Court of Appeal had not violated the principle according to which none plead by prosecutor. The Supreme Court nonetheless is able to exert some control when it comes to finding out whether, concerning the object determined with sovereign power, the association has an interest to act. In a November 14, 2000[39], the First Civil Division even personally based itself on its statutes analysis, without feeling the need to hide behind the trial judges interpretation (but then again perhaps they had not given any in order to rule that "the association (the appeal plaintiff) statutes seem to indicate that it had a legitimate interest in acting against a publication which, according to the association, would have harmed the religious feelings of its members whom it purported to protect." This problem is often found regarding suits emanating from government approved consumer defense associations[40], regarding which one is frequently reminded that they have the right to request compensation, namely damages before civil jurisdictions for any direct or indirect injury to common consumer interest[41].

The Supreme Court was also called to take interesting decisions during the last phase of interaction between an association and its members, whether the end of such interaction results into resignation or exclusion.

To tell the truth, the almost total lack of case law in the matter of resignation shows that the latter does not seem to pose many problems. One must nonetheless quote here two orders, unpublished in the *Newsletter*. The first, dated May 2, 2001[42], was issued in a matter of local Alsatian law which allows for the of the members of a given association where the resigning member, who was requesting refunding of his membership dues, was faulting a Court of Appeal to have based itself, for the refusal of such refund, upon an article of the statues which excluded refunds to the benefit of "excluded" members: the Court of Appeal was faulted for having mixed up exclusion and resignation in the refusal of the refund. The other one[43] is quite interesting because it shows how a merchant, former member of "a merchant association not related to the Carrefour commercial center," who had resigned from the association, but had not shut his store down, was sentenced to the payment of amounts corresponding to center promotion expenses, based on the statutes, thus admitting that, perhaps not all the statutes but at least one of the clauses was still applicable in professional relations between the parties.

---

[36] See, very characteristic in that regard, 3rd Civ., March 10, 1999, Newsl., I, No. 61.
[37] 1st Civ., July 1, 1997, prec.
[38] Newsl., III, No. 165.
[39] 1st Civ., Nov. 14, 2000, Newsl., No. 289.
[40] See for instance 1st Civ., March 13, 1996, Newsl., I, no. 134.
[41] 1st Civ., Oct. 5, 1999, Newsl., I, No. 260
[42] 1st Civ., May 2, 2001, Corp. Law, 2001, No. 123, Th. Bonneau's note, Order not published to the Newsletter.
[43] 1st Civ., March 20, 2001, Appeal No. X 98-10.578. On this particular Order, see Y. Chartier, The Freedom of Association in Supreme Court Case Law, in Report of the Supreme Court for 2001, French Documentation, p. 65 and fll., espec. p. 78.

The exclusion is by nature a situation of conflict, therefore it is more difficult. The issue is twofold, it deals with content and form. Regarding content, it is a well known fact that the Supreme Court requires of its judges to search whether the faulted facts are covered by the statutes, and that it has itself control over the importance of the charge[44]. Recent case law says little on the matter. We can bear in mind the case law reported above, where the membership to an association was linked to a larger contractual transaction. The Supreme Court thus dealt with a matter where the owner of a supermarket had joined an "Association of Leclerc distributing centers" and signed with it a contract authorizing usage of the Édouard Leclerc tab sign. Subsequently, the board of directors had cancelled the tab sign contract and excluded the merchant from the association. The latter was faulting the Court of Appeal for having rejecting his request to rule against the exclusion. The First Civil Division, by a December 3, 1996 Order[45], ruled as legally justified the Order through which the Court of Appeal had ruled that "the association's statutes and the tab sign contract form[ed] an indivisible whole": here, consequently, the indivisibility issue led to evaluate the application of the association's contract together with another contract in order to decide in favor of the exclusion of one of the members. Yves Guyon nonetheless, and for good reason, remarked that the contrary to this sort of set up, which caused several decisions[46], goes against the freedom to bow out of an association's, in that this bowing out causes the exclusion of the benefit of the contract to which the membership is linked[47]. As far as the form goes, that is regarding the exclusion procedure, the statutes are in theory applicable, as evidenced by an April 16, 1996 Order[48]. One must nonetheless notice that in that particular case, the implementation of statutes was aimed at the protection of members' interests. Endorsement of the Order refers to Article 1134 of the Civil Code as well, but also to the rights of the defendants. And here is displayed a typical example of the intention of the Supreme Court, beyond the law of statutes, a unique section of law, to widen the debate when there is the need.

\*
\*\*

Indeed, courts had to fill in the gaps in the cases of lack of answers contained in the statutes themselves, quite a lack since, as seen above, the 1901 Law does not feature any specific obligation[49] concerning the set up of the group, with only associations recognized as public utility associations being required to formulate statutes specifying administrative structures. The reference of the Supreme Court to Article 1134 of the Civil Code points out that an association is, by essence, subject to Title III of the Third Book of the Civil Code ("On Contracts or Conventional Obligations in General".) But, without expressly saying so, it has had a tendency to include associations in a legislature which, stemmed in large part, but in part only, from corporate law, thus leads to the constitution of an embryonic body of rules of groups.

---

[44] Our previous study, p. 74
[45] 1st Civ., Dec. 3, 1996, Newsl., I, No. 424; Corp. Rev., 1997, p. 550, Y. Guyon's note; Corp. Law, 1997, No. 37, Th. Bonneau's note.
[46] 1st Civ., Nov. 19, 2002, Newsl., I, No. 95; Corp. Law, 2002, No. 107, E.-X. Lucas' note, prec.
[47] See note under Plen. Ass., Feb. 9, 2001, prec., Corp. Rev. 2001, espec. p. 360.
[48] 1st Civ., April 16, 1996, Newsl., I, No. 179.
[49] See in particular Isabelle Urbain-Parleani, The Legal Remedies to Democratic Crises within Associations. Corp. Rev., 2001, p. 768 and fll.

Regarding general contract law, an idea seems to prevail, which won't surprise anyone: the requirement of good faith. If one must list here defendants' rights[50], it is because the latter are not included in the new Civil Procedure Code, or in the European Safeguard Convention[51]. When he appears before the governing body in charge of his case, the member in question does not indeed appear before a court. But the right for members to be made aware of the grievances they are charged with, to be summoned in time in order for them to be able to explain themselves, in short to insure their defense with the benefit of the contradiction clause, is actually relevant of the loyalty principle which must precede all contract enforcement. And that is why, in the above mentioned Order, reference to Article 1134 of the Civil Code must be considered as referring to paragraph 3 as well as 1. In general, the vaguer, or even faulty statutes are, the more it seems logical as well as necessary to compensate their lack, as the Supreme Court does, with a logic which, without it being automatically mentioned, is quite necessary. It is true that a more recent Order dated March 19, 2002[52] ruled alluding simply, beside the right of defense principle, to the July 1, 1901 law, with no other reference: but this should not be interpreted as a change in case law. When the First Civil Division rule, through the March 29, 1989 Order[53], "taking into consideration the rules which are applicable to associations disciplinary decisions, and mainly the contradiction clause," which rules are purely a matter of case law, it was the same balance of rights, that is the same contractual balance which was the underlying issue. It is only true that defense principles are an integral part of the general principles of our judicial system, thus going beyond the contractual setting in which they are mentioned.

Such good will requirement should however not be linked with the case law connected with the Order of the First Civil Division dated June 16, 1998[54] which rejected the appeal made against a Court of Appeal decision whereby it had been ruled that the member of an association which had organized a tourist trip for its members had been seriously dishonest in that it kept for itself the discount granted by the travel agent without alerting the other members of the association and simulating payment of the trips, of which it benefitted members of his family, which justified the exclusion of the culprit. Honesty, as well as honor are superior human values which go well beyond the scope of the Civil Code.

Thus, it is also endorsed by Article 1134 of the Civil Code that an Order of the Third Civil Division dated June 20, 2001[55] quashed a Court of Appeal decision which had validated an Assembly amend of a free urban land association's suit without realizing that one of its members who had originated the protest, "had accepted modification of the statutes when it actually meant a raise in his salary." Although many other legal analyses led to the same result, as shown by Prof. Alfandari[56], the solution, whose adaptation to the 1901 Law is doubtless, was mandatory when it comes to contract law. To further members' commitments without their approval would

---

[50] Besides the above mentioned Orders, see also 1st Civ., April 22, 1997, Newsl., I, No. 120; Corp. Rev., 1997, p. 550, Y. Guyon's note; Corp. Law, 1997, No. 98, Th. Bonneau's note.
[51] Contra, see however an unpublished Order 1st Civ., Jan. 22, 1991, Corp. Rev., 1991, p. 389.
[52] 1st Civ., March 19, 2002, Newsl., I, No. 95.
[53] Newsl., I, No. 141.
[54] Newsl., I, No. 207.
[55] Newsl., III, No. 79. Corp. Rev., 2002, p. 321, E. Alfandari's note.
[56] See the above mentioned note, and the other three possibilities considered by the author

indeed be going against their contractual obligations -- which, when it comes to associations are in fact quite limited.

If the rules which result from the contract constitute, in essence, a common ground to all groups of the same nature[57], it is in a more idiosyncratic way, through notions borrowed from the legislature specific to groups[58], that the Supreme Court filled the statutory lacks regarding the functioning of associations, when it applied. It developed this legislature in great part based on existing rules borrowed from corporate law. Great was indeed the temptation, because such law is nowadays quite regimented, and as a result, it gives each time if not the answer required, at least some kind of an answer to all the questions and challenges which can be encountered in the field. The need to fill in the gaps is due to the fact that associations' contracts potentially create a group which must be able to function while respecting its essence, which is based upon free interaction between members, basic equality among them, even if not absolute, and a will to achieve a common social goal, in other words, a sort of *affectio associationis.* To reiterate Prof. Paul Didier's image[59], it is actually the nature of the organizational contract of the association contract which implies that, in case of statutory lack, measures be taken to fill the void.

One is thus aware of the incident of the session, outlined in joint stock corporations writings at Article 160 of the July 24, 1966 Law 9 (Artistic. L. 225-105 C. com.,) paragraph 3, according to which the assembly who is technically not allowed to deliberate on a point not listed on the agenda, "nonetheless… can, under all circumstances, fire one or more administrators and have them replaced." The First Civil Division adapted this provision in a November 29, 1994 Order[60], when it ruled that a Court of Appeal had rightly ruled that an extraordinary general association assembly normally constituted "had all the powers to fire certain administrators the moment the judges of second degree noted that such action was justified by the incidents occurred during the assembly itself." As pointed out by the Order's commentators, that which is totally remarkable, is that the Supreme Court had judged the disputed decision legally justified "including the reference to corporate law," which is tantamount to saying that the Civil Code and the Commercial Code, in their provisions regarding corporations, might be applicable. But on this point, Michel Jeantin can only be commended for having excluded the technical provisions, and for only considering provisions which, by their nature, might be generalized, as can be "any rule which is sufficiently neutral regarding the definition of the group in question," which would imply by definition that it is not contrary to association principles. It is the case, for instance of the requirement for regular quorum, upon which the July 3, 2001 Law indirectly ruled[61].

Can also be linked to that law the December 14, 1999 Order[62], by which the First Civil Division rejected the appeal filed against an Order which had ordered to an association to hand to one of its members who was a candidate for the board of directors the voters' list, even though in this case, the Supreme Court had to rule by simply by discarding arguments based on different

---

[57] See for instance, with regards to GIE: Cass. com., July 7, 1993, Newsl., No. 265, with emphasis made on "abusive conditions."
[58] D. Randoux. Towards a Common Group Law, JCP, 1996, Ed. G. L. 3982.
[59] Short notes on organizational contract, Festschrift François Ferré, Dalloz, P. 635.
[60] Newsl., I, no. 344; Corp. Law, 1994, p. 318, Y. Guyon's note; Joly Newsl., 1995, para. 48, M. Jeantin's note.
[61] 1st Civ., July 3, 2001, Corp. Law, 2001, No. 155, Th. Bonneau's note. Quashing ruling for lack of response to conclusions.
[62] Newsl., I, No. 339; JCP, 2000, Ed. G., II, 10264, Y. Chartier's note.

articles excerpted from the January 6, 1978 Law known as "Information and Freedoms."[63] One must still exercise great caution, as this is no simple adaptation of Article L. 225-116 of the Commercial Code which states a principle according to which, prior to any general assembly meeting, all shareholders has the right to obtain the list of shareholders. And it is a well known fact that substantive jurisdictions are very reserved on the matter[64]. If the equality of election candidates seems to be an underlying principle, one can wonder whether the statutes couldn't conceive of other solutions in order to insure the shareholders' freedom of choice, as, for instance, the requirement made to leading governing bodies to broadcast the statement of belief of the candidates to all voters. But the evolution might not be over, if one considers the doctrinal opinion, held especially by Yves Guyon, according to which the adaptation of this article "is desirable, as it allows for more democratic operations on the part of associations[65]."

Legal writings also studied a November 19, 1991 Order of the First Civil Division[66] whereby it was ruled that "in the absence of a contrary legislative, regulatory or statutory provision, the voiding of a deliberation taken by the general assembly of an association governed by the July 1, 1901 Law cannot have a retroactive effect."

That which can seem astonishing at first sight is the fact that this Order was not published in the *Newsletter*. There is a good example of the discrepancy between the perception of a "live" decision by the group that made it along with its president, and how it can be interpreted subsequently. The lack of publication of a Supreme Court Order shouldn't hide its interest, even if it is true – this explaining perhaps that – that in this case, the decision is not one of the most enlightened ones. At any rate, the influence of corporate law can be again seen here, through a double degree adaptation, and more specifically here, the influence of Article 1844-15 of the Civil Code, according to which "when the declaration of invalidity of a corporation is announced, it ends the implementation of the contract with no retroactivity." Let us however make note of the reservation, put forth by the Order's writers, regarding one of the statutes provisions, which is all the more outstanding that it grants them an arguable power to determine the results of the declaration of invalidity.[67]

In the same spirit is also the case law which tends to deal with the responsibility of the leaders of an association similarly to that of corporations, and more broadly, of groups with a corporate veil: such responsibility[68] can only be engaged in the case of an error separate from the official functions[69].

Under group law, it is finally necessary to mention the possibility to have a temporary legal administrator appointed, although it goes beyond it, and is a part of common law in the broadest

---

[63] See our obs. under Order, JCP, 2000, II, 10264.
[64] TGI Paris, Dec. 12, 2001, Corp. Law 2002, p. 363, Y. Guyon's obs.; Paris, Oct. 30, 2001, Corp. Rev., 2002, p. 87, Y. Guyon's obs.
[65] Previous note. Also see keynote by same author at the conference entitled, On Democracy and Associations, on the topic, "Inadequacies during Normal Functioning Conditions of Associations," Corp. Rev., 2001, p. 735 and fll.
[66] Corp. Law, 1992, No. 6, Th. Bonneau's obs., RTD com 1992, p. 413, no. 18 E. Alfandari's obs.
[67] For a critic of that reservation, see Th. Bonneau's prev. obs.
[68] 2nd Civ., Feb. 19, 1997, Newsl., II, No. 53, Corp. Rev., 1997, p. 816.
[69] On the tortious or quasi tortious responsibility of associations' leaders towards third parties, see Y. Guyon's note under 1st Civ., Feb. 5, 1991, Corp. Law, 1993, p. 561.

sense, and extends in particular to indivisibility (Article 815-6 of the Civil Code), as a First Civil Division January 9, 1996 Order[70] mentions after many others. Such an order has in appearance but a limited interest, as it rules on a lack of answer to conclusions. What is worth remembering from it however is that is implicitly condemns the idea that, as the Court of Appeal had done, the temporary administration is limited to the case where the alleged facts would cause injury to the existence of the association itself: in fact, it implies that the system is not very different from the one to which corporations abide, and that appointment is linked to the poor functioning of the association, according to Article 873 of the New Code of Civil Procedure.

And, upon dissolution of the association, the principle of survival of the corporate veil for purposes of liquidation is found there also[71].

Nonetheless, it is only perhaps on a case by case basis that one can compare the functioning of corporations with that of associations. Regarding dissolution specifically, Yves Guyon observed well ahead of the ministerial decision mentioned above[72] that a one-member association could not escape dissolution[73]. In another realm, the June 27, 2000 Order[74] ruled, with regards to a general assembly, "that the voiding of the deliberation of an association general assembly is caused by the fact that this assembly did not respect the statutory rules relative to voting modalities." Such decision, which condemns here the useful vote theory, is particularly interesting because it goes against the law applicable to the voiding of corporations (Article 1844-10, par. 3, Civ. C.; L. 235-I, par. 2., Com. C.) It can be explained by the idea that "when an entity is ruled for the main part by a contract, it makes sense that its violation be sanctioned accordingly[75]." It was pointed out that such solution is close in spirit to that adopted by other Divisions of the Supreme Court pour social deliberations other than assemblies of corporations which are classified separately[76].

Thus, by and through the files brought to its attention, the Supreme Court is able to build law bit by bit. The result of such research cannot but have gaps, whereas, as previously noticed, Orders are few and far between, which is actually a sign of good health on the part of associations. Such analysis is all the more arduous than it is necessary to distinguish between matters pertaining to the Supreme Court, and those belonging to the trial judges' sovereign assessment, and the line there is at times blurry. But if one is willing to pay attention to the road signs that are indeed statutes, general contract law and embryonic group law, case law will appear in the end both flexible and consistent, it reaches a balance between the role of individual will and that of the judge with a goal to insure the former's efficient functioning.

---

[70] Newsl., I, No. 16, Corp. Law, p. 382
[71] See 3rd Civ., Oct. 4, 1995, Newsl., III, No. 214; Corp. Rev., 1996, p. 102, Y. Guyon's note. See also 1st Civ., April 4, 1991, Newsl., I, No. 111.
[72] Supra, note 2.
[73] Corp. Rev., 1996, p. 104.
[74] 1st Civ., June 27, 2000, Newsl., No. 195; Corp. Rev., 2001, p. 105, D. Randoux' note. Rappr. given regarding irregularity in association committee structure; 1st Civ., July 3, 2001, Corp. Law, 2001, No. 155, Th. Bonneau's note.
[75] D. Randoux, previous note.
[76] D. Randoux and Th. Bonneau, prev. notes. See, regarding a real estate association general assemble, Order regarding articles 1844 and 1844-10 of the Civil Code; 3rd Civ., Oct. 21, 1998, Newsl., No. 203.

November 2002