# Exhibit 39

JBS-1999-261

Bulletin Joly Sociétés, November 1, 1999, no. 11, P. 1115 - All rights reserved

Corporate law

**261. Note - Contractual value of cooperative bylaws: impact on the penalty clause nature of a bylaw clause**

Since a cooperation contract is a private law contract, the cooperative bylaws to which it refers have a contractual value between the cooperative and its members, even if said bylaws are a reiteration of standard bylaws.

Consequently, the sanction called for in the event of a member failing to meet his commitments, consisting of an indemnity to offset the loss incurred by the cooperative, constitutes a penalty clause subject to the judge's evaluation.

**Farming cooperative**

**Associate - Failure to perform one's obligations - Sanction - Penalty clause**

**Basis:** Civ. c., art. 1152, 1226

**Joly Sociétés**, Treatise, v° "Farming cooperatives," nos. 18 to 27, by G. Gourlay.

**Cass. 1st civ., Jul. 15, 1999, Union laitière Pyrénées, Aquitaine, Charentes (ULPAC) versus Marini (cons. rapp. Marc)**

**The Court**

Whereas Mrs. Marini joined the cooperative company "Union laitière des Pyrénées, Aquitaine, Charente" (ULPAC), the bylaws of which specify, in Article 7-6, that in the event of a cooperative member failing to meet the obligations to which he agreed, except in the event of force majeure, the board of directors may apply to said member one or more of the following sanctions and, in particular, the payment of a sum to offset the loss incurred, equal to the share, corresponding to the quantities not delivered during the fiscal year, of the general overhead for the fiscal year and depreciation and amortization; having ceased to deliver the milk production from her farm to the ULPAC prior to the expiration of her commitment period, the board of directors of the ULPAC, in application of the sanctions called for by the bylaws, decided to exclude her and charged her with payment of an indemnity to offset the loss in the amount of FF 340,773.68; summoned by Mrs. Marini to pay a sum of money in exchange for deliveries, the ULPAC, while still considering itself to be owed a certain amount for this item and reimbursement of the shares which she held, but claiming to be the creditor of the indemnity, asked her by counterclaim to pay the sum remaining due after reconciliation of the parties' respective credits;

**On the sole argument, taken in its first part:**

Whereas the ULPAC complains about the contested ruling for having reduced the amount of the indemnity for loss compensation to FF 50,000, so, according to the argument, the stipulations of the bylaws calling for this indemnity, being imposed by regulatory provisions, could not have the nature of a penalty clause; by nevertheless qualifying them as a penalty clause, the court of appeal violated articles 1226 and 1152 of the Civil Code due to wrongful application;

However, the cooperation contract being a private law contract, the bylaws of a cooperative to which it refers, even if they reiterate the imperative provisions of standard bylaws or if they adopt certain optional clauses, have a contractual value in the relations between the cooperative and each of its members, in exercising its powers the court of appeal, deeming that the sanction of loss compensation indemnity called for by the bylaws had been stipulated as the conventional lump-sum evaluation of the loss incurred by the cooperative due to the cooperating member's failure to perform, has qualified the stipulations of the bylaws concerning this indemnity as a penalty clause; the grievance is therefore unfounded;

**But on the second part of the argument:**

Considering Article 1152 of the Civil Code;

Whereas, in order to reduce the loss of compensation indemnity from FF 340,773.68 to FF 50,000, as per the application of Articles 6-7 of the bylaws, the Court of Appeal, after holding that these provisions were a penalty clause subject to assessment by the judge, found that the file did not contain sufficient evidence to set the amount of the indemnity at FF 50,000.

Whereas, by deciding thus, without examining how the amount of the monetary penalty resulting from the application of the penalty clause was manifestly excessive, the Court of Appeal's decision is without legal foundation;

ON THESE GROUNDS. – And without having to decide on the third part of the argument:

Renders null and void, but only with regard to the decision that Mrs. Marini owed the ULPAC an amount of FF 50,000 as an indemnity compensating for the [lack of] notice and with regard to setting, after compensation of the sums mutually owed to each other by the parties, the amount of the sum payable to the ULPAC by Mrs. Marini at FF 41,207.93, the decision given by the Court of Appeal between the parties on November 14, 1996; consequently placing the suit and the parties in the state where they resided before the said ruling, and, for a decision to be made, remands the parties to the Toulouse Court of Appeal, otherwise composed.

**Note - Contractual value of cooperative bylaws: impact on the penalty clause nature of a bylaw clause**

Behind a harmless facade, this decision refers to issues the importance of which is anything but insignificant. The facts are typical. A cooperative company's bylaws provide that, in the event of the total or partial failure by a cooperative member to deliver their milk, the board of directors may apply to said member one or more sanctions among which the payment of a sum to offset the loss incurred equal to the share, corresponding to the quantities not delivered during the fiscal year, of the general

overhead for the fiscal year and depreciation and amortization.  One of the cooperative members having thus breached her contractual obligations, the cooperative company assigns her for payment of the indemnity:  the cooperative member submits as a defense that the provisions relied on above is a penalty clause, which would consequently make a reduction of the indemnity by the judge possible.

The first civil chamber of the Court of Cassation approves this analysis on the grounds that the bylaws of a cooperative company have "a contractual value in the relations between the cooperative and each of its members."

This is not the first time that the courts rule on the penalty clause nature of provisions in bylaws providing for an indemnity in case of the breach by a cooperative member of his contractual obligations. The Paris Court of Appeal, in a decision dated May 15, 1997[1] had previously decided that the exclusion of a cooperative member in turn triggering the obligation to pay an indemnity due in cases of early departure from the cooperative company, such indemnity, the purpose of which was to compensate for damages caused to the cooperative company by a departure which could only decrease the volume of joint purchases, had the characteristics of a penalty clause which can be reduced by the application of Article 1152 of the Civil Code.

Equally, the Versailles Court of Appeal had analyzed as a penalty clause the obligation of a cooperative shareholder to give up his unpaid rebates in cases in which the cooperative shareholder had breached his 25 year membership duty.[2]

Legal scholars approved this solution[3] on the grounds that such penalties provided for in the bylaws did in fact constitute the contractual assessment of damages in cases of breach of an obligation by the debtor.

The Supreme Court confirms the validity of this analysis.  Its justification calls for certain observations. The cooperative company alleged that the provisions of the bylaws setting out the indemnity were in fact imposed by regulatory provisions, this is to say standard bylaws: however, it is normal to point out that penalty clauses cannot exist alongside regulatory provisions.[4]  The Court replies that the bylaws of a cooperative company have contractual value in the relationship between the cooperative company and each of its members "even if they reproduce the mandatory provisions of standard bylaws or if they adopt some of their optional provisions."

This reference to the contractual value of the bylaws is unquestionably of interest. If we disregard the "cooperative" dimension, it deserves to be nuanced. The word "contract" when applied to the bylaws of the company and more specifically the corporation, deserves some reservations. As we have keenly observed, "a bylaw right is the opposite of a contractual right. Without a doubt, bylaws must be approved, but they are by a majority" [5] . Consequently, in no way can the bylaws be assimilated to a contract, even if the Court of Justice of the European Union decided in a ruling dated March 10, 1992 [6] that the ties between the shareholders of a company are comparable to those existing between the parties to a contract and the bylaws of a company must therefore be considered a contract governing both relations between the shareholders and relations between the shareholders and the company they

create. It still remains that the contractual dimension may arise if adherence to the provisions of the bylaws was done unanimously and not with a simple majority.

If the cooperative dimension is reintroduced, the assertion by the first civil chamber is more solid, because the members of the cooperative are both associates and cooperators, that is, in the present case, suppliers required to meet precise commitments vis-à-vis the legal entity. Here arises the cooperation contract [7] to which the bylaws refer, and this contractual dimension fully justifies both application of article 1152 of the Civil Code and article 1184 authorizing judicial termination of the contract in the event of serious failure to perform [8].

**Alain Couret**

Professor, University Paris I (Panthéon-Sorbonne)

Attorney-at-law at the bar of Hauts-de-Seine

Francis Lefebvre Law Offices

1       CA Paris, May 15, 1997, Groupe Abihssira versus Galec: **Dict. permanent, Business law**, Bull. d'actualité no. 457, September 1st, 1997, no. 23.

2       CA Versailles, March 27, 1997: **Rev. corporations**, 1977 p. 796, note B. Saintourens; T. com. Paris, July 19, 1995: **Juris-Data**, no. 047375.

3       J. Mestre and C. Blanchard-Sébastien, **Lamy Commercial companies**, 1999, no. 4719; B. Saintourens, supra

4       Cass. soc., November 29, 1978: **Bull. civ.** V, no. 810; Cass. soc. March 23, 1983: **Bull. civ.** I, no. 112.

5       Ripert and Roblot, **Treatise on commercial law**, 17th ed. by M. Germain and L. Vogel, v. 1, p. 1094, no. 1474.

6       CJCE, March 10, 1992, Powell Duffryn PLC: Bull. Joly Companies, 1992, p. 767, § 247, note J.-B. Blaise; **JCP**, ed. E, 1994, l, p. 369, note Y. Reinhard.

7       On the legal nature of the cooperation contract, R. Saint-Alary and M. Lecène-Marenaud, **J.-Cl. Commercial companies**, fasc. 168-1, no. 108.

8       J. Mestre and C. Blanchard-Sébastien, **Lamy Commercial companies,** 1999, no. 4720.