# Exhibit 44

Date: 12/27/2011

**Court of Cassation**

**Civil chamber 2**

**Public hearing of September 9, 2010**

**Appeal number: 09-16538**

Published in the bulletin

**Cassation**

**Mr. Loriferne, president**

Ms. Bardy, reporting judge

Mr. Mazard, Solicitor-General

Mr. Bouthors, Esq. and Mr. Copper-Royer, Esq., attorneys

## FRENCH REPUBLIC

## ON BEHALF OF THE FRENCH PEOPLE

THE SECOND CIVIL CHAMBER OF THE COURT OF CASSATION has issued the following decision:

On the first branch of the sole grounds of appeal:

Having regard to Article L. 213-6 of the French Code of Judicial Organization;

Whereas, according to the contested decision, the Toulouse Saint-Cyprien credit union directed the bank accounts of Mr. X be attached on the basis of an official loan document; whereas Mr. X asked the enforcement judge to lift the attachment, contending that the claim was time-barred pursuant to Article 2277 of the French Civil Code;

Whereas, in rejecting the request, the decision held that the enforcement judge, who may not modify the writ of execution, lacks jurisdiction to rule on the time limit raised by the debtor;

Whereas, in so ruling, even though the enforcement judge has the exclusive jurisdiction to hear challenges raised upon enforcement even if they address the merits, the court of

appeal violated the text referred to above;

ON THESE GROUNDS, without being required to rule on the other branches of the cause of action:

OVERTURNS AND SETS ASIDE, in all its provisions, the June 16, 2009 decision, between the parties, by the court of appeal of Toulouse; consequently returns the matter and the parties to their status prior to said decision and, for this to be granted, refers them to the court of appeal of Montpellier;

Orders the credit union of Toulouse-Saint Cyprien to pay costs;

Having regard to Article 700 of the French Code of Civil Procedure, rejects the request of the credit union of Toulouse Saint-Cyprien; orders it to pay Mr. X the sum of 2,500 euros;

Orders the state prosecutor at the Court of Cassation to note this decision in the margin or at the end of the decision that has been set aside;

It is thus ordered and adjudged by the second civil chamber of the Court of Cassation and delivered by the president at its public session of September 9, 2010.

GROUND OF APPEAL APPENDED to this decision

Ground of appeal provided by Mr. Copper-Royer, Esq. attorney accredited to practice before the Court of Cassation, for Mr. X

Mr. X objects to the contested decision for dismissing his request to lift the credit union's attachment of his bank accounts and for ordering him to pay the credit union 1,000 euros in damages for unreasonable obstruction;

ON APPROPRIATE GROUNDS THAT: a) *Res judicata* as raised by Mr. X

Mr. X continues to raise *res judicata* in relation to the decisions of the enforcement judges who set aside the previous attachments.

In his July 16, 2002 decision, the enforcement judge held that the attachment report did not include a precise calculation, adversely affecting the plaintiff.

The lifting of the attachment was ordered immediately and the bank was ordered to pay 1,000 euros in damages and 1,000 euros pursuant to Article 700 of the French Code of

Civil Procedure.

The court confirmed this judgment by decision of February 10, 2004.

The credit union paid the amounts and the costs.

This payment was made on September 2002 to the SCP Ferrand, the bailiff that notified the decision at the request of Mr. X.

The June 30, 2006 decision held that the document did not include details regarding interest.

However, these decisions lacked *res judicata* effect.

As the judge of the courts of first instance noted, *res judicata* relates only to the dispute that the decisions resolve.

B) The validity of the attachment

The attachment report is valid and complies with the legal provisions in this area.

The sums demanded are due and fully justified.

1) Regarding the sums that are due and payable

The bank is seeking to recover the balance of its claim under a notarized loan deemed enforceable until forgery proceedings have been instituted.

As was previously noted, the previous decisions never challenged the bank's debt instrument.

It is important to note that the enforcement judge may not modify the order or suspend its enforcement.

The writ of execution is binding and the judge may not modify it.

- Regarding the amounts claimed and justified

The attachment report itemizes the sums due in capital, insurance, interest, instruments, disbursements and the like.

The attachment report of May 31, 2007 complies with the provisions of Articles 55 and 56 of the decree of July 31, 1992.

The document includes the statement of the writ of execution under which the attachment was conducted, as well as an itemization of the amounts claims in principal, costs and interest due.

The calculation of the interest is itemized in the attachment report.

The applicable rate is 14%, based on the contractual rate of 11% provided in the general terms of credit, plus a 3% late fee in the event of late interest payment (Article 3 of the general terms and conditions of the contract).

Last, said contract provides for the capitalization of interest as a matter of law and shall earn interest at the same rate as the principal amount of the debt for a full year and "no request or formal notice" shall be required.

"The amount of the interest is thus clearly established and justified under the terms of the attachment report.

The cost of insurance corresponds to the group policy mechanism.

Payments overdue under the contract are subject to an increase of 50% and may result in an event of default.

Starting on the default date, the contractual contribution shall be deleted and replaced by a contribution of 0.50% of the amounts due.

The sums claimed and attached under the terms of the document are thus entirely enforceable, established and justified.

The document thus complies with Articles 55 and 56 of the order of July 31, 1992 on civil enforcement procedures.

The court thus confirms the judgment on this point.

It is hereby specified, as needed, that the interest calculation shall take into account all payments made since the previous order.

In the event of late payment of interest, the rate shall be increased, as a matter of law and without any formality, by 3% for the period under consideration.

Interest unpaid by the due date, while still payable, shall be capitalized as a matter of law and shall earn interest at the same rate as the principal amount of the debt, due for a full year, and no request or formal notice shall be required.

If the debtor fails to comply with any of the terms established for the repayment of capital, he shall owe the creditor institution a six-monthly fine of 1% of the amount due and unpaid. This provision shall not authorize debtors to postpone payment under the terms and conditions agreed upon."

C/ Mr. X's requests regarding the time limit in respect of interest.  The enforcement judge lacks jurisdiction to rule on the "alleged limitation period raised by the debtor

As noted, the enforcement judge may not modify the judgment.

The writ of execution is binding and the judge may not modify it.

Only the trial court judge may rule on this request.

D) The request regarding an overpayment of €4,022

Mr. X continues to claim overpayment although "the prior judgments of successive enforcement judges held that this request exceeded the scope of their jurisdiction

On this point, Mr. X's request runs afoul of *res judicata*.

In any event, the amount he claims has not been established. He has not offered proof of error on the bank's part that would justify payment of €10,000 for damages that he has not proven.

His requests are thus dismissed and the court confirms the judgment of the court of first instance without conditions.

E) Regarding the ancillary claims

Mr. X's obstruction is unreasonable and has created concern and problems for his creditor, who has had to deal with this systematic bad faith.

This specific harm shall be compensated by payment of €1,000 in interest (contested decision p. 3, 4, last §, and pp.4 - 6, § 1 – 6).

AND BASED ON THE GROUNDS ADOPTED BY THE TRIAL JUDGE THAT: « -

Regarding *res judicata*:

(…) Pursuant to Article 480 of the French New Code of Civil Procedure, the court's decisions have *res judicata* effect in connection with the challenge that they alone resolve.

In this case, the various decisions issued both by the trial courts and the enforcement judges, if they resolved the challenges, did not challenge the principle of the credit union's claim.

The objection of *res judicata* is thus dismissed.

- Regarding the credit union's claim

Article 55 of the decree of July 31, 1992 on civil enforcement procedures provides that any creditor in possession of a writ of execution showing a debt due for immediate payment may, seize in the hands of any person bound, on the day of that attachment, by an obligation, concerning an amount of money, to his debtor.

In this case, the credit union had a writ of execution; that is, a notarized loan deemed enforceable. The enforcement judge may not modify the writ of execution.

While the impact of the default declared by the credit union on November 5, 1996 terminated the contractual relationship and rendered the full amounts sums due immediately, it did not affect the validity of the existing writ of execution.

The declaration of the default prohibited making any change in the interest rate set forth in the contract. Thus, the initial rate of 11% applies. The contract provides for a 3% increase in that rate in the event of payment delay. The credit union is thus justified, pursuant to the contract, to claim this increase.

The enforcement judge lacks jurisdiction to rule on the five-year limitation raised by Mr. X or on the request for repayment of the amount the credit union received for its mortgage claim on the sale price of his building.

Pursuant to Article 56 of the order referred to above, the creditor conducted the attachment by bailiff's writ. This writ specifically contained, under penalty of nullity, the declaration of the writ of execution under which the attachment was conducted, the detailed breakdown of the sums claimed in principal, costs and interest due, increased by a provision for interest to become due.

In this case, the writ of attachment (of the) satisfies the legal requirements and includes the statement of the writ of execution under which the attachment was conducted, as well as an itemization of the amounts claimed in principal, costs and interest du Detail is provided regarding the calculation of interest. The applicable interest rate is, indeed, 11%, increased by 3% in the event of late payment, as provided by Article 3 of the general terms and conditions of the contract, which also provides for the capitalization of interest by law.

In addition to the detailed information on interest, the interest rate applied and the point of departure, the various instruments and disbursements are noted and deducted from the partial payments made.

The attachment was conducted by the bailiff with local jurisdiction and was properly noticed to Mr. X by the bailiff with local jurisdiction.

Therefore, the attachment report complies with Articles 56 and 57 of the decree of July 31, 1992

We note that the credit union holds a claim that is certain, liquid and payable and that it was therefore correct in conducting the disputed attachment to obtain payment of the amount of €29,519.60 still owed by Mr. X.

Therefore, there is no reason to lift the attachment and all of Mr. X's requests are dismissed (decision p. 5, last §, p. 6 and 7, § 1 - 8).

WHEREAS, ON THE ONE HAND, the enforcement judge deals with the problems in respect of writs of execution and the challenges that arise upon enforcement even if they address the merits; the enforcement judge has the authority to settle a dispute in respect of the time limit on the creditor's action and raised at the time of enforcement; in dismissing Mr. X's request to lift the attachment of his bank accounts by the credit union on the ground that it lacked jurisdiction to rule on the time limit on interest raised by the debtor, the Court of Appeal violated the provisions of the former Article L. 311-12-1 as strengthened by those of Article L. 213-6, together with those of Article 8 of the order of July 31, 1992;

WHEREAS, ON THE OTHER HAND, the judgment of the enforcement judge has *res judicata* effect in relation to the challenge that he resolves; as Mr. X asserts in his summary conclusions on appeal, under the terms of the Order of July 16, 2002 (p. 7, § 1 et 3), as confirmed by decision of February 10, 2004, the Enforcement Judge had held that the attachment covered property subject to liens, which was clearly unavailable when: "the building is subject to several liens, requiring that the mortgages be cleared and that the price of buildings subject to mortgage in the absence of an ordinary contract without judicial intervention [*ordre consensuel*] be apportioned … that given the existence of a lien on behalf of the Treasury regarding the simple title search required by Mr. Garrigou, based on his own statement as garnishee, and the recognition by the credit union that the claim in respect of the interest remaining exceeded the portion guaranteed by its own lien in this regard, the funds held by the notary were unavailable because they had been set aside, on a priority basis, to be allocated to the registered creditors and could thus not be attached;" that consequently by denying *res judicata* effect to the judgments of the enforcement judges who set aside the previous attachments (contested decision, p. 3 and 4), the Court of Appeal violated the provisions of Article 1351 of the French Civil Code and Article 480 of the French Code of Civil Procedure;

WHEREAS LAST, pursuing a claim in court and defending against such a claim, constitute, in principle, a right; the number of proceedings initiated to defend against the multiple unfounded attachments to which Mr. X… was subject does not suffice to establish the fault of the plaintiff; in a decision setting aside this ground, ordering Mr. X to pay the credit union €1,000 in damages on the ground that "Mr. X's obstruction is unreasonable and has created concern and problems for his creditor, who has had to deal with this systematic bad faith" (contested decision p. 6, § 5), without seeking to determine whether he had not simply exercised his legitimate right to defend himself against the multiple attachments to which he had unlawfully been subjected, the Court of Appeal violated the provisions of Article 1382 et. seq. of the French Civil Code.
**Publication:** Bulletin 2010, II, n° 149

**Contested decision:** Court of Appeal of Toulouse of June 16, 2009

**Titles and summaries:** ENFORCEMENT JUDGE – Jurisdiction – Challenges arising from enforcement – Challenges on the merits

Under Article L. 213-6 of the French Code of Judicial Organization, the enforcement judge deals with challenges arising from enforcement, even if they address the merits.

Consequently, an enforcement judge who declares that he lacks jurisdiction to rule on the five-year limitation on interest related to the loan that is the subject of the enforcement writ violates this provision.

ENFORCEMENT JUDGE – Jurisdiction – Challenges to the five-year limitation on interest related to the loan that is the subject of the enforcement writ

**Legal precedents:** To compare: 2e Civ., 21 mars 2002, pourvoi n° 00-16.866, Bull. 2002, II, n° 50 (partial setting aside)

**Texts applied:**
- Article L. 213-6 of the Code of Judicial Organization