# Exhibit 46

Date: 12/27/2011

**Supreme Court of Appeal**

**Civil Chamber 1**

**October 26, 2011 Public Hearing**

**Appeal No.: 10-17708**

Published in the Newsletter

**Partial Quashing**

**M. Charruault (President), President**

Firm of Boré & Salve de Bruneton, Firm of Peignot & Garreau, Firm of Rocheteau & Uzan-Sarano, lawyer(s)

FRENCH REPUBLIC

IN THE NAME OF THE FRENCH PEOPLE

THE SUPREME COURT, FIRST CIVIL DIVISION, issued the following ruling:

Whereby the French company Constructions mécaniques de Normandie (CMN), who had been contracted to build two yachts, through a contract featuring an arbitration clause, subcontracted the painting of these ships to the Swedish company Fagerdala Marine Systems (FMS); FMS subcontracted these works to the German company Patroun Korrosionsschutz Und Consuult Und Consulting (PKC); the initial contract was broken by CMN on December 23, 2008; PKC assigned to CMN and FMS, before the President of the Court, payment of various amounts, while FMS was requesting from CMN, before the same President, payment of damages for abusive breach of contract; CMN and FMS raised the incompetence of the state judge to the benefit of an arbitral tribunal in application of the arbitration clause;

Regarding the first ground of CMN's main appeal, considered in its various sections:

Whereas CMN faults the Order for having confirmed the decree rendered by the President of the Court of the Cherbourg Market Court in that the latter declared having authority despite the arbitration clause, and for having sentenced it, conjunctly with FMS, to the payment of various amounts to PKC;

But whereas CMN, before filing a Supreme Court Appeal, assigned to PKC payment of a certain amount for damages before Cherbourg Market Court and, during an arbitration

request on the part of FMS, expressly contested the authority of the arbitral jurisdiction regarding PKC; CMN thus contradicted itself to the detriment of others by incompatible procedural behavior;

The ground is inadmissible;

But regarding the second ground of the main appeal, considered in its first two sections, which is admissible:

On the basis of article 12 of the December 31, 1975 law on subcontracting;

Whereas the subcontractors, no matter what their title, hold a direct suit only against the entity for which the construction is done, who keeps the title of project owner;

Whereas, in order to entertain the direct suit of PKC against CMN, the Order notes that the latter had always behaved as the project owner;

In thus ruling, when the project owners who had entrusted CMN with the building of the ships had been identified, in such a way that CMN had only the capacity of prime contractor, the Court of Appeal violated the afore mentioned enactment;

And regarding the third ground of the main appeal:

On the basis of article 873, clause 2, of the Civil Procedure Code, together article 1458 of the same Code;

Whereas, in order to entertain the request of a reserve submitted by FMS against CMN, the disputed Order states that the provisions of article 873, clause 2, du Civil Procedure Code stipulate that the President of the Court can, in such cases where the existence of the obligation is not seriously contestable, grant a reserve to the creditor, and that this provision is applicable beyond any notion of emergency;

In thus ruling, whereas the exceptional authority granted to the President of the Court, in the case of an arbitration convention, is subject to the condition of urgency, the Court of Appeal violated the afore mentioned enactments;

And regarding the one and only ground of the appeal brought by FMS, considered in its first four sections:

On the basis of article 1493 of the Civil Procedure Code, together, article 1134 of the Civil Code;

Whereas to say that, if the technical provisions binding FMS and PKC demonstrate that PKC had necessarily been aware of the clauses of the initial contract binding CMN and FMS, the jurisdiction clause in the FMS-PKC dealings should have, in order to be enforceable against PKC, required a special authorization by the latter, which could have been accomplished by its initialing of the original contract;

That in thus ruling, whereas the impact of the international arbitration clause included in the initial contract involves the subcontractor who was aware of it at the time of the signing of his contract and who is directly involved in the execution of the first contract, the Court of Appeal violated the afore mentioned enactments;

And regarding the one and only ground of the appeal brought by FMS, considered in its fifth section:

On the basis of article 873, clause 2, of the Civil Procedure Code, together article 1458 of the same Code;

Whereas, in order to accept the request for a reserve filed by PKC against FMS, the disputed Order states that the provisions of article 873, clause 2, of the Civil Procedure Code stipulate that the President of the Court can, in such cases where the existence of the obligation is not seriously contestable, grant a reserve to the creditor and that this provision is applicable beyond any notion of emergency;

That in thus ruling, whereas the exceptional authority granted to the President of the Court, in the case of an arbitration convention, is subject to the condition of urgency, the Court of Appeal violated the afore mentioned enactments;

ON THESE GROUNDS, and without the need to rule on the other grievances:

QUASHES AND ANNULS, except in that, on one hand, he confirmed the decree rendered on July 16, 2009 by the President of the Court of the Cherbourg Market Court in that declared having the authority to know of the request aimed against CMN despite the arbitration clause, and in that he rejected the request to cancel the subpoena and, on the other hand, that he stated there not being grounds for nullity of the decree, i.e. the Order rendered on March 18, 2010, between the parties, by the Caen Court of Appeal; therefore returns, for the other items, the cause and the parties to the state where they were before the said Order and for it to be granted, sends them back before the Rouen Court of Appeal;

Sentences Patroun Korrosionsschutz Und Consuutz Und Consulting GmbH to legal costs;

On the basis of article 700 of the Civil Procedure Code, rejects the requests;

States that on the Supreme Court Attorney General's diligences, the present Order shall be transmitted to be transcribed in margin or following the partially quashed Order

Thus executed and judged by the Supreme Court, first civil division, and pronounced by the President in his community session of October twenty-six, two thousand eleven.

GROUNDS ANNEXED to this Order

Grounds exhibited by the Rocheteau & Uzan-Sarano firm, lawyers to the Counsels, for the Constructions mécaniques de Normandie company, main Appeal Plaintiff

FIRST QUASHING GROUND

It is raised against the disputed Order to have confirmed the decree rendered on July 16, 2009 by the President of the Court of the Cherbourg Market Court that he declared being competent despite the arbitration clause and to have, as a consequence, sentenced Constructions Mécaniques de Normandie (CMN), conjunctly with Fagerdala Marine Systems (FMS), to pay to Patroun Korrosionsschutz und Consuutz und Consulting (PKC) 923,881.48 Euros as reserve;

ON THE GROUNDS THAT in its article 20, the contract concluded between CMN and FMS contains an arbitration clause benefitting the Association française d'arbitrage [French Arbitration Society] for all disputes which might arise between parties due to the interpretation or execution of the contract; the separate contract concluded between FMS and PKC only indicates that the latter "need to be bound by the same contractual provisions as those binding FMS and CMN;" if the technical provisions of this last contract, which still operates by reference channel, demonstrate that PKC must have been aware of the clauses of the initial contract between CMN and FMS, it still remains that a jurisdiction clause in the dealings between FMS and PKC should have, in order to be enforceable against PKC, been awarded a special attribution by the latter, which could have been done by it initialing the initial contract. However, such was not the case. In any event, the arbitral tribunal will become thoroughly familiar with the dispute and the President of the Court retains the authority to rule as per the provisions of article 873 of the Civil Procedure Code, for remediation, damage prevention, cessation of an obviously illegal trouble or attribution of a reserve;

AND ON THE GROUNDS that it results from article 873 of the Civil Procedure Code that the President of the Court is allowed, in the cases when the existence of the obligation is not seriously disputable, to grant a reserve to the creditor; and that this provision is applicable beyond any notion of emergency;

1) WHEREAS the arbitration clause by reference to a document where it is stipulated is valid when the party whom it is enforced against was aware of it at the time of the signing

of the contract, and that, even by remaining silent, accepted this reference; in the present case, the Court of Appeal noted that the contract concluded between CMN and FMS contained an arbitration clause and that the contract concluded between FMS and PKC featured a clause written in very obvious terms specifying that this contract was subjected to the contractual conditions ruling the contract concluded between CMN and FMS, and specified as well that the contract CMN/FMS to which it referred was included; in deciding that the arbitration clause by reference was not enforceable against PKC, for lack by the latter of having formulated a special approval of this clause, the appellate judges violated article 1493 of the Civil Procedure Code, together article 1134 of the Civil Code;

2) WHEREAS, alternatively, the result of the international arbitration clause extends to the parties directly implicated in the execution of the contract and the disputes that might arise; in the present case, the appellate judges noted that PKC, stepping in as a subcontractor of FMS and therefore directly implicated in the execution of the contract binding FMS to CMN, was aware of clauses of the contract concluded between CMN which featured an arbitration clause; that in affirming that this arbitration clause was not applicable to the dealings between CMN and PKC, the Court of Appeal violated articles 1458 and 1493 of the Civil Procedure Code, together, the negative effect of the principle of competence-competence ;

3) WHEREAS, alternatively, the arbitration clause featured in the contract binding the defendant to the intermediary debtor is enforceable against the creditor exerting a direct payment suit; in the present case, the Court of Appeal expressly noted that the contract concluded between CMN and FMS featured an arbitration clause; in deciding that this clause could not be enforced against PKC who pretended it exerted a direct payment suit against CMN, the appellate judges violated article 1458 of the Civil Procedure Code, together article 12 of the December 31, 1975 law;

4) WHEREAS, in any event, any obvious nullity or inapplicability of the arbitration clause alone can hinder arbitral authority; in the present case, the appellate judges noted that PKC, stepping in as subcontractor of FMS and therefore directly implicated in the execution of the contract binding FMS to CMN, was aware of clauses of the contract concluded between CMN which featured an arbitration clause; that in simply affirming that "a jurisdiction clause in the FMS-FMS dealings should have been awarded a special attribution by the latter in order to be enforceable against PKC," the Court of Appeal ruled on grounds unfit to establish that the disputed arbitration clause was not obviously enforceable against PKC, thus depriving its decision of a legal basis with regard to articles 1458 and 1493 of the Civil Procedure Code, together, the negative effect of the principle of competence-competence;

5) WHEREAS the exceptional authority granted to the President of the Court in an arbitration convention setting is subjected to the emergency condition; in the present case, the arbitration clause inserted in the contract concluded between CMN and FMS was not obviously enforceable against PKC ; in deciding the President of the Court was nonetheless at liberty to grant a reserve the moment the obligation was not seriously disputable, with no emergency condition, the Court of Appeal violated articles 873 clause 2 and 1458 of the Civil Procedure Code.

SECOND QUASHING GROUND (Subsidiary)

The disputed Order is faulted for having sentenced Constructions Mécaniques de Normandie (CMN), conjunctly with Fagerdala Marine Systems (FMS), to pay to Patroun Korrosionsschutz und Consuutz und Consulting (PKC) 923,881.48 Euros as reserve;

ON THE GROUNDS THAT PKC is allowed to request payment directly from CMN per article 12 of the December 31, 1975 law regarding subcontracting, which stipulates that a given subcontractor has a direct suit against the project owner were the prime contractor to fail to pay; indeed, on one hand, it follows from the translated exhibits produced that CMN always behaved as the project owner, on the other hand, the latter already paid directly, even though upon FMS' request, 50,000 Euros to PKC in November 2008, thus confirming its approval of this subcontracting company, finally, FMS did not pay the requested amounts during the month of the formal notice; (…) The complaints made against this provisional payment request can't be taken seriously the moment it is obvious from the documents produced by the parties that: - PKC is not requesting payment for work it did not do (top coat and show coat), - it took into account surfaces that was actually painted, e.g. 2,011 m2 vs. the entire 2,035 m2 –the items included in the proceedings mention indeed additional work; - PKC takes into account, as a deduction, payments already made; - the delivery of the boats results in the necessary receipt of work done by PKC, with no expert assessment putting its quality into question; - the reduced price rider remained at the project state; confirmation of the decree concerning the conjunct sentencing of CMN and FMS to the benefit PKC is therefore fit, to the exception of its amount, which is to be amended to 923,881.48 Euros, mention being made that CMN has not proved in an indisputable way that it owes nothing further to FMS;

1) WHEREAS the law on subcontracting does not create an obligation vis-à-vis the project owner, who remains the same no matter the various subcontractors, and vis-à-vis the prime contractor who is, vis-à-vis second rank subcontractors, the first rank subcontractor; in the present case, it was not disputed that CMN had been entrusted with the construction of two yachts by Mikaroo Pty Ltd, on one hand, and The Sweethouse Group Pty and Basslive Pty Ltd on the other; that in remembering that PKC, subcontractor to FMS itself subcontractor to CMN, had a direct suit against the latter which did not however have the title of project owner neither vis-à-vis FMS nor vis-à-vis PKC, the appellate judges violated article 12 of the December 31, 1975 law;

2) WHEREAS the law on subcontracting does not create an obligation vis-à-vis the project owner, who remains the same no matter the various subcontractors, and vis-à-vis the prime contractor who is, vis-à-vis second rank subcontractors, the first rank subcontractor; in conclusion, that in remembering that PKC, subcontractor to FMS itself subcontractor to CMN, had a direct suit against the latter, that CMN would have "behaved as the project owner" without specifying the elements justifying such assessment, the appellate judges violated article 455 of the Civil Procedure Code;

3) WHEREAS, in any event, the one requesting the execution of an obligation has the burden of proof; in its conclusions, CMN argued that it could not be liable for any amount to the benefit of PKC the moment it did not owe anything to FMS (conclusions, p. 12); in affirming, in order to deal with the PKC's direct suit, that CMN does not prove in an indisputable way that it owes nothing further to FMS, the Court of Appeal inverted the burden of proof in violation of article 1315 of the Civil Code.

THIRD QUASHING GROUND

The disputed Order is faulted for having confirmed the decree rendered on July 16, 2009 by the President of the Court of the Cherbourg Market Court in that the latter declared having due authority in spite of the arbitration clause and, as a consequence, having sentenced Constructions Mécaniques de Normandie (CMN) to pay Fagerdala Marine Systems (FMS) 375,000 Euros;

ON THE GROUNDS THAT in its article 20, the contract concluded between CMN and FMS contains an arbitration clause to the benefit of the Association française d'arbitrage [French Arbitration Society] for all disputes which might arise between parties due to the interpretation or execution of the contract; the separate contract concluded between FMS and PKC only indicates that the latter "need to be bound by the same contractual provisions as those binding FMS and CMN;" if the technical provisions of this last contract, which still operates by reference channel, demonstrate that PKC must have been aware of the clauses of the initial contract between CMN and FMS, it still remains that a jurisdiction clause in the dealings between FMS and PKC should have, in order to be enforceable against PKC, been awarded a special attribution by the latter, which could have been done by it initialing the initial contract. However, such was not the case. In any event, the arbitral tribunal will become thoroughly familiar with the dispute and the President of the Court retains the authority to rule as per the provisions of article 873 of the Civil Procedure Code, for remediation, damage prevention, cessation of an obviously illegal trouble or attribution of a reserve;

AND ON THE GROUNDS THAT it results from article 873 of the Civil Procedure Code that the President of the Court is allowed, in the cases when the existence of the obligation is not seriously disputable, grant a reserve to the creditor; and that this provision is applicable beyond any notion of emergency;

WHEREAS the exceptional authority granted to the President of the Court in an arbitration convention setting is subjected to the emergency condition; in the present case, the Court of Appeal expressly observed that the contract concluded between CMN and FMS featured an arbitration clause; in deciding that it was at liberty, without an emergency condition, to grant a reserve to FMS the moment the obligation was not seriously disputable, the Court of Appeal violated article 873 clause 2 of the Civil Procedure Code, together, article 1458 of the same Code.

FOURTH QUASHING GROUND (Subsidiary)

The disputed Order is faulted for having sentenced Constructions Mécaniques de Normandie (CMN) to pay to Fagerdala Marine Systems (FMS) 375,000 Euros and to have CMN [denied] its request for abusive breach of contract;

ON THE GROUNDS THAT CMN and FMS bounce back to each other the responsibility for the breach of their contractual relationship; that one must nonetheless observe that CMN excluded FMS, through its substitution letter dated August 27, 2008, per article 18-1 of the contract that binds them, but without respecting the period stipulated by said article which specifies that such substitution will be implement only "if the formal request remained without a satisfactory response during sixty days," such formal request being the result of article 19-3 of the same contract ; that this abrupt breach of the contract, contrary to contractual provisions, necessarily caused damage to FMS; that the President of the Court has the authority to allocate a reserve for damages when its cause is not seriously disputable, as in the present case; that it is therefore appropriate to grant FMS' request, that it evaluates at 375,000 Euros; that the decree drafted will be revised in those terms; that it ensues that CMN's own request must be denied on the basis of abusive breach of contract ;

WHEREAS trial judges cannot grant or reject requests without examining all the elements of evidence submitted to them by the parties each in support of their cases; CMN expressed in its appeal conclusions (served on February 2 2010, p. 15 and 16) that its substitution letter dated August 27, 2008 had been preceded with, and referred to expressly actually, a previous mail dated March 21, 2008 giving FMS a formal request to remedy the contractual lacks, and starting the sixty day period contractually stipulated for the implementation of the substitution clause; in affirming that CMN implemented the substitution clause without the contractually stipulated sixty day period starting with the formal request being respected in order to deduct that it abusively breached the contract binding it to FMS, without explaining the March 31, 2008 mail regularly included in the proceedings by CMN, the appellate judges violated article 455 of the Civil Procedure Code.

Ground produced by the Peignot and Garreau firm, lawyers to the Counsels, for Fagerdala, plaintiff to the appeal brought

The ground faults the disputed Order for having confirmed the decree rendered on July 16, 2009 by the President of the Court of the Cherbourg Market Court in that he declared having the authority despite the arbitration clause and to have therefore sentenced FMS and CMN conjunctly to pay PKC €923,881.48 as reserve,

if the technical provisions of this last contract, which still operates by reference channel, demonstrate that PKC must have been aware of the clauses of the initial contract between CMN and FMS, it still remains that a jurisdiction clause in the dealings between FMS and

PKC should have, in order to be enforceable against PKC, been awarded a special attribution by the latter, which could have been done by it initialing the initial contract. However such was not the case. In any event, the arbitral tribunal will become thoroughly familiar with the dispute and the President of the Court retains the authority to rule as per the provisions of article 873 of the Civil Procedure Code, for remediation, damage prevention, cessation of an obviously illegal trouble or attribution of a reserve;

ON THE GROUNDS THAT "in its article 20, the contract concluded between CMN and FMS contains an arbitration clause to the benefit of the Association française d'arbitrage [French Arbitration Society] for all disputes which might arise between parties due to the interpretation or execution of the contract; the separate contract concluded between FMS and PKC only indicates that the latter "need to be bound by the same contractual provisions as those binding FMS and CMN;" if the technical provisions of this last contract, which still operates by reference channel, demonstrate that PKC must have been aware of the clauses of the initial contract between CMN and FMS, it still remains that a jurisdiction clause in the dealings between FMS and PKC should have, in order to be enforceable against PKC, been awarded a special attribution by the latter, which could have been done by it initialing the initial contract. However such was not the case. In any event, the arbitral tribunal will become thoroughly familiar with the dispute and the President of the Court retains the authority to rule as per the provisions of article 873 of the Civil Procedure Code, for remediation, damage prevention, cessation of an obviously illegal trouble or attribution of a reserve" (Order p. 4 and 5);

AND ON THE GROUNDS THAT it results from article 873 of the Civil Procedure Code that the President of the Court is allowed, in the cases when the existence of the obligation is not seriously disputable, grant a reserve to the creditor; and that this provision is applicable beyond any notion of emergency (Order p. 6,)

WHEREAS, ON ONE HAND, the arbitration clause by reference to a document where it is stipulated is valid when the party to whom it is enforced was aware of it at the time of signing of the contract, and that, even by remaining silent, accepted this reference; in the present case, la Court of Appeal noted that the contract concluded between CMN and FMS contained an arbitration clause and that the contract concluded between FMS and PKC featured a clause written in very obvious terms specifying that this contract was subjected to the contractual conditions ruling the contract concluded between CMN and FMS, and specified as well that the contract CMN/FMS to which it referred was included so that in deciding that the arbitration clause by reference was not enforceable against PKC, for lack by the latter of having formulated a special approval of this clause, the appellate judges violated article 1493 of the Civil Procedure Code, together article 1134 of the Civil Code;

WHEREAS, ALTERNATIVELY, the result of the international arbitration clause extends to the parties directly implicated in the execution of the contract and the disputes that might arise; in the present case, the appellate judges noted that PKC, stepping in as a subcontractor of FMS and therefore directly implicated in the execution of the contract binding FMS to CMN, was aware of clauses of the contract concluded between CMN which featured an arbitration clause; so that in affirming that this arbitration clause was not

applicable to the dealings between CMN and PKC, the Court of Appeal violated articles 1458 and 1493 of the Civil Procedure Code, together, the negative effect of the principle of competence-competence ;

in deciding that this clause, the appellate judges violated article 1458 of the Civil Procedure Code, together article 12 of the December 31, 1975 law;

WHEREAS, ALTERNATIVELY ONCE AGAIN, the arbitration clause featured in the contract binding the defendant to the intermediary debtor is enforceable against the creditor exerting a direct payment suit; in the present case, the Court of Appeal expressly noted that the contract concluded between CMN and FMS featured an arbitration clause; it did not have the authority to decide that this clause could not be enforced against PKC who pretended it exerted a direct payment suit against CMN, so that in ruling as it did, it violated article 1458 of the Civil Procedure Code, together article 12 of the December 31, 1975 law.

WHEREAS, IN ANY EVENT, any obvious nullity or inapplicability of the arbitration clause alone can hinder arbitral authority; in the present case, the appellate judges noted that PKC, stepping in as subcontractor of FMS and therefore directly implicated in the execution of the contract binding FMS to CMN, was aware of clauses of the contract concluded between CMN which featured an arbitration clause, in simply affirming that a jurisdiction clause in the FMS-FMS dealings should have been awarded a special attribution by the latter in order to be enforceable against PKC," the Court of Appeal ruled on grounds unfit to establish that the disputed arbitration clause was not obviously enforceable against PKC, thus depriving its decision of a legal basis with regard to articles 1458 and 1493 of the Civil Procedure Code, together, the negative effect of the principle of competence-competence,

WHEREAS, FINALLY, the exceptional authority granted to the President of the Court in an arbitration convention setting is subjected to the emergency condition; in the present case, the arbitration clause inserted in the contract concluded between CMN and FMS was not obviously enforceable against PKC, so that in deciding the President of the Court was nonetheless at liberty to grant a reserve the moment the obligation was not seriously disputable, with no emergency condition, the Court of Appeal violated articles 873 clause 2 and 1458 of the Civil Procedure Code.

**Publication:**

**Disputed Decision:** Caen Court of Appeal, March 18, 2010