# Exhibit 49

**RTD Civ. 1995 p. 885**

**Where the breaking of regular commercial relations is punishable**

**Jacques Mestre, Professor in the School of Law, Economics and Sciences of Aix-Marseilles; Director of the Business Law Institute [*Institut de droit des affaires*]**

For seven years, each week the company Laiteries Bridel obtained its supplies from the company Debic Saint-Hubertus, based on periodic sales contracts. However, two months after being approached by another supplier, it abruptly ended those regular business relations. Debic, which had formed considerable stores that had become useless, then sued it for monetary damages. The judges on the merits rejected the claim, noting the lack of supply commitment subscribed for in its favor by Laiteries Bridel, but the commercial chamber (Jan. 7, 1992, this *Revue* 1992.394) censured this by reproaching them for not having responded to Debic's pleadings asserting that the break had been abrupt given that it had built up a store intended to meet these orders. The court of appeal to which the case was removed (*Angers, Feb. 5, 1993*) this time received the claim from the abandoned supplier, and the *commercial chamber*, addressed again (*Feb. 28, 1995, Bull. Civ.* IV, no. 63, p. 60), rejected the appeal: "the ruling notes that Bridal had had an ever-increasing stream of business for approximately 7 years with Debic; it adds that the latter was required, given the manufacturing and packaging times for the product, to build a store relative to the volume of the orders, which were generally placed only one or two weeks before delivery; the ruling also holds that in March 1984, Bridel, which has not proven the wrongful behavior imputed to Debic, abruptly terminated its purchases from the latter after having allowed it to believe that their relations would continue normally, although it had entered into an agreement with another supplier as of early January 1984; in light of these observations, the court of appeal was able to find that Bridel had allowed its right to terminate business relations with Debic to degenerate into an abuse."

Several interesting lessons can be drawn from this fully-stamped decision:

- the regular conclusion of periodic contracts between parties of course does not cause a successive performance framework agreement to be created between them, but is, however, of a nature to reduce each party's fundamental freedom to contract with the partner of its choice (on the affirmation of that freedom, see Com. July 5, 1994, this *Revue* 1995.96);

- this is particularly the case when—as in the case at hand—one of the parties is in a situation of economic dependence relative to the other and has been led to make investments with a view to maintaining the business relations between them;

- *a fortiori* the abrupt cessation of these relations must be wrongful when an appearance of lastingness had previously been maintained by the party now withdrawing.

That being said, the formula used by the commercial chamber ("the court of appeal was able to find that…") nonetheless appears to us to imply a certain degree of caution in the commentary inasmuch as, as we have seen recently (this *Revue* 1994.352 and 1994.603), the High Court is clearly hesitating to adopt a position of principle regarding the influence of the investments made by the distributor on the producer's ability to break in the neighboring field of concession contracts. In other words, everything here appears to relate to circumstance, behavior and duration: the party suffering the break and

claiming compensation is responsible for proving the age of the business relations and that its partner's attitude boded well for the future…

**Keywords:**
**CONTRACT AND OBLIGATIONS** * Termination * Open-ended contract * Unilateral termination * Business relations * Abrupt break

RTD Civ. © Editions Dalloz 2012