# Exhibit 52

IV.    **Associations**

**The invalidity of an irregular deliberation is independent of the lack of impact of the irregularity**

Note under Court of Cassation (1st civ.), June 27, 2000
*René Jardin v/ Association syndicale* [Labor Union] *(ASL) "Les demeures du Golf"*

Dominique RANDOUX

*Professor at the Université de Lille*

ASSOCIATIONS – GENERAL MEETING – DELIBERATION – INVALIDITY – NONCOMPLIANCE WITH STATUTORY RULES RELATIVE TO VOTING TERMS.

*The invalidity of the deliberations of an association's general meeting results solely from the fact that the meeting did not comply with the statutory rules relative to the voting terms.*

| **Rép. sociétés Dalloz**, *Associations* edition, by Ch. Debbasch, no. 215 and f. |
| --- |

THE COURT. – *In light of Article 1134 of the Civil Code;*

Whereas, to reject the claim by Mr. Jardin for invalidity of the deliberations undertaken by the "Les demeures du Golf" association of owners, on April 1, 1998, the contested ruling notes that although these deliberations, done by giving the representative for each collective Building a single vote contrary to the provisions of the complementary deed dated February [illegible], 1995, took place under irregular conditions, the petitioner has not demonstrated that the irregularities committed, given the number of votes that should have been granted to the representative of each collective building having participated in this meeting, were of a nature to have an impact on the adoption of any of the decisions made;

By ruling in this way, while the invalidity of the deliberations of an association's general meeting results solely from the fact that that meeting did not comply with the statutory rules relative to the voting terms, the court of appeal violated the aforementioned text;

On these grounds, and without there being cause to rule on the second branch of the ground:

Quashes and cancels

Messurs. LEMONTEY, *president*; RENARD-PAYEN, *rapporteur* ; Ms. PETIT, *public prosecutor* ; SCP COUTARD et MAYER ; SCP PUNICA et MOLINIÉ, *attorneys*.

NOTE

Although handed down in a limited form, pursuant to Article L. 131-6 of the Code of Legal Organization [*code d'organisation judiciaire*], the ruling handed down by the first Civil Chamber warrants further attention, less because it specifies the effects of the violation than because of its refusal to take into account the impact of the irregularities on the decisions made. Although on the surface, the first solution cannot prosper for companies due to specific legal provisions (I), the second appears, as very rightly observed (Bonneau, Dr. sociétés, nov. 2000, no. 148), to be part of the general legal principles applicable to groups (II).

I. Non-compliance with the statutory provisions is punishable by the invalidity of the deliberations made by the general meeting. The solution is required within contractual groups. Thus, the founders of an association have almost total freedom to organize the group. They determine the jurisdiction of the meeting and the conditions under which it rules. The rules for summons, agenda, information, quorum, and voting essentially depend on the contract, and pursuant to Article 1132 of the Civil Code, the violation of those measures incurs invalidity. This solution can of course not extend to civil or commercial partnerships, groups that are regulated much more precisely and within which the invalidity of the deliberations may only result, depending on the nature thereof, from the violation of an imperative provision of title nine (Art. 1844-10 of book II of the Commercial Code (Art. 235-1, subsection 2) or one of the grounds for invalidity of contracts in general (Art. 1844-10 – to be compared with Art. 235-1, subsection 2). One can then see that the third Civil Chamber was able to decide for a civil partnership that noncompliance with the provisions of the bylaws did not have such a consequence (Cass. 3rd civ. July 19, 2000, Dr. sociétés, Dec. 2000, no. 170; Bull. Joly 2000, § 21, obs. Grosclaude). For all that, there is no divergence between the various chambers of the Court of Cassation, but the implementation of two different "logics." When the legal entity is essentially organized by the contract, it is normal for the violation thereof to be punished effectively. However, when the public authorities specify the operating conditions of the structure, reserving nullity to cases of noncompliance with the law is not open to criticism.

The connection thus made between the origin of the standard and the grounds for invalidity has been very greatly distended for simplified joint-stock companies. The bylaws in particular set the conditions under which the company is run (Art. L. 227-5 commercial code), and determine the decisions that must be made collectively by the partners in accordance with the forms and conditions that they set out (Art. L. 227-9 commercial code). The agreement becomes a key source of organization of the legal entity. Yet Article L. 235-1 reserving the invalidity of the deliberations for the violation of a mandatory provision of the essential operating rules does not include an effective punishment (J.-J. Daigre, la SAS, éd. GLN Joly, no. 96; Germain et Perin, J.-Cl. Sociétés, Fasc. 155-2, no. 126). One might think that the recent reform of the simplified joint-stock company [*société aux actions simplifiée*] establishing the single-person nature of the company henceforth makes it possible to take the violation of the bylaws into account, at least for the provisions made with [express] reference […]

[…] to Article 227.9. The text in fact includes two additional subsections introduced by the law of July 13, 1999, the first in particular specifying the conditions under which the sole partner must approve the accounts, and the second setting out that decisions made in violation of the provisions of this article may be annulled upon request by any interested party. The reference to the entire text therefore includes the first subsection, and it is therefore tempting to conclude from this that henceforth, misrepresentation of the bylaws is punishable (Grosclaude, *op. cit.*).

However, the modification is far from having such reach. Introduced to take the single-person nature of the company form into account, it appears that its sole purpose (like many texts written in identical terms) is to specify the mandatory nature of the legal provisions relative to company decisions (comp. Hemard, Terré et Malibat, Sociétés commerciales, t. III, no. 730).

The solution provided by the ruling of June 27, 2001 therefore cannot be transposed and more imagination will be necessary in the case law to loosen, as many wish (Germain and Perin), the shackles of Article L. 235-1, subsection 2. However, the refusal to take the impact of the irregularity into account appears to concern all groups.

II. Whereas the Paris court of appeal had held that the claimant did not demonstrate that the noncompliance with the clause relative to the number of votes having to be given to the representative of each collective building was of a nature to have an impact on the adoption of the decisions made, the Court of Cassation affirms, under Article 1134 of the Civil Code, that the irregularity itself causes invalidity. Only the violation of the contract is taken into consideration, irrespective of the consequences. This solution warrants attention. In fact, judges on the merits have often been tempted by the examination of the causal or indifferent role of the irregularity, reserving punishment only for cases where the decision made would have been different. Thus in a ruling of March 2, 1999, the Paris court of appeal refused to pronounce the invalidity of a meeting despite the failure to summon certain members of the association; the decisions having been made unanimously or almost unanimously by the members present, the votes of the few absent members could not have influenced the outcome of the vote (Dr. sociétés 1989, no. 229). Likewise, the failure to send a power of attorney form, in violation of the bylaws, was not taken into consideration inasmuch as it was not proven that that omission could have had an impact on the votes cast (CA Paris, April 2, 1991, RTD civ. 1991, p. 413, obs. Alfandari and Jeantin). Better still, in a ruling of October 25, 1980 (Bull. Civ. I, no. 277), the first Civil Chamber had dismissed the pronouncement of invalidity, the irregularity committed not being of a nature to influence the decision made. For the High Court, the participation of two resigning members of the board of directors of a tourist information office was irrelevant inasmuch as by setting their votes aside, the required majority was reached.

It is, however, desirable for the punishment to be automatic. The theory of the "useful vote" subjecting the pronouncement of invalidity to proof that the deliberation would have been different if the rules had been followed is first delicate to implement. It is difficult, if not impossible, to determine the consequences of the irregularities committed with certainty. Asserting that the absence […]

[…] of summons of a member having only one vote is inconsequential on the grounds that the decision was made by all of the members present distorts the decision-making process. The vote is in effect preceded by a discussion. No one may prejudge the influence that the concerned party may have had on the participants. Likewise, it is delicate to determine the role of a person having wrongly participated in a deliberation. That individual's influence is not limited to the vote he irregularly cast. Evidently the purely mathematical approach is irrelevant. The *a posteriori* reconstruction of the deliberation can only be approximate. The psychological impact cannot be quantified.

It is above all inopportune. On the one hand, it contributes to making the individual rights of the member of a group unacceptably more fragile. The latter can participate in group decisions. To that end, he must be summoned, informed, before participating in the vote. Refusing to pronounce invalidity after the fact on the grounds that his participation would not have had an impact on the final decision indirectly amounts to depriving him of his prerogatives for the sole reason that he is a minority (in this sense, Grosclaude note under Cass. 3rd civ., Oct. 21, 1988, Bull. Joly 1999, § 24). Furthermore, it is incompatible with the principle of collegiality that underlies group law. The decision only has any real reach inasmuch as the body is regularly formed and the rules governing its development are followed (Jcantin note under Cass. com., Apr. 24, 1990, JCP ed. E 1991, II, no. 122).

One must therefore approve the decision of June 27, 2000. For associations, it marks the rejection of the so-called useful vote theory, and jurisprudential cohesion is strengthened as a result. In fact, having to know the disciplinary decisions made by an association, the Council of State has always ensured compliance with the rules of deliberations. Thus, the presence of people not belonging to the collegiate body is of a nature to cause irregularity, even allowing that they did not participate in the discussion and vote (CE, Oct. 5, 1984, D. 1985, Som. p. 142, obs. Morange). Furthermore, as it was possible to observe relevantly, the solution rejoins those used for the deliberations of the board of directors made in disregard for the rights of information of the directors (Cass. com., Apr. 24, 1990, Bull. Joly 1990, §139) and the decisions of the meetings of a real estate civil partnership in violation of the summons rules (Cass. 3rd civ., Oct. 21, 1998, JCP ed. E 1999, p. 85, note Guyon).

There is not, however, complete unity. Taking into account the excessive risks of legal insecurity, the jurisprudence refuses to take the participation of shareholders who could not deliberate into consideration. Thus, it is true under the law of July 24, 1867, the Court of Cassation avoids challenging the approval of contributions in kind despite the votes cast by the contributors inasmuch as deducting the latter, the legal conditions for quorum and majority were met (Cass. civ., Nov. 8, 1894, DP 1895, 1, p. 150; July 4, 1911, 1, p. 449, note Percerou). It is above all appropriate to reserve all scenarios where the lawmaker settles for enacting an optional invalidity (for example: Art. L. 223-27; Art. L. 225-104; Art. L. 225-121; Art. L. 227-9). It is then logical to give the judges on the merits broad powers of assessment (Guyon obs. under Cass. com., July 6, 1983, Rev. sociétés 1984, p. 76). Aside from the scenario of fraud, where punishment is required, they must rule on the opportuneness of canceling or maintaining the decision. No one doubts […]

[…] that they are then influenced by the consequences of the irregularity (comp. Cass. civ., Oct. 31, 1989, Bull. Joly 1990, § 19, obs. Le Cannu).

The useful vote theory is therefore not completely obsolete.