# Exhibit 53

VI. Associations

Increasing the obligations of members of an association cannot be decided without their agreement

Note under Court of cassation (3rd civ.), June 20, 2011
*Colombero v. Association foncière urbaine libre Neuve Douane*

Elie Alfandari

*Emeritus professor, University of Paris-Dauphine*

ASSOCIATION – CONTRACT – MEMBERS – INCREASE OF OBLIGATIONS – DECISION TAKEN IN ASSEMBLY – DELIBERATION – MAJORITY (NO) – AGREEMENT OF THE MEMBERS – NECESSITY

> *The court of appeal violated Civil Code art. 1134 by holding that an association's general assembly lawfully adopted, with a majority of votes, the change in the deed of association adopting a new distribution of burdens without determining whether this change had been accepted by the members concerned and even though it resulted in increasing their obligations.*

**Rép. Sociétés Dalloz**, v° *Association*, by Ch. Debbasch, no. 215 et seq.

But on the second ground:

In light of Civil Code article 1134;

      Whereas, according to the challenged decision (Bordeaux, May 18, 1999), the Association foncière urbaine libre Neuve Douane (AFUL) was constituted in 1989 between the owners of three buildings for the purpose of renovating the buildings, and article 22 of the bylaws stipulated that the AFUL's expenses would be distributed depending on the criterion of the each owner's interest in the performance of the work; a new table of the distribution of expenses based on the criterion of percentages of co-ownership was adopted after two general assembly meetings held November 9, 1990 and March 7, 1991; Mr. Colombero, owner of a commercial space in one of the buildings, sued the AFUL to void the new distribution of expenses;

      Whereas to deny the request, the court of appeal notes that articles 11 and 12 of the bylaws stipulate that deliberations are taken upon a majority vote and that the assembly has the power to deliberate on proposals to modify the deed of association and that the restoration costs owed by Colombero, which initially represented 7.58% of the amounts concerning his building in the initial distribution, equaled 9.79% in the new distribution, and holds that the general assembly of November 9, 1990 lawfully adopted, by majority vote, the change in the deed of association to adopt a new distribution of expenses;

      In so ruling, without determining whether Colombero had accepted the change in the bylaws, whereas this change resulted in increasing his obligations, the court of appeal violated the text cited above;

On these grounds:

Reverses and voids, but only with respect to its dismissing Colombero's claims, the decision rendered May 18, 1999, between the parties, by the court of appeal of Bordeaux; consequently restores the case and the parties to the state they were in before said decision, and remands them for trial before the court of appeal of Toulouse;

Orders the Association foncière urbaine libre (AFUL) Neuve Douane to pay expenses;

Ms. Fossereau, *president*; Ms. Masson-Daum, *rapporteur*, Mr. Guérin, *government commissioner*

NOTE

Mr. Colombero was a member of the Association foncière urbaine libre (AFUL) Neuve Douane, created in 1989.

The AFUL is an association of property owners, constituted for the purpose of having certain work performed (e.g., consolidation of the parcels, construction, maintenance and management of a collective work, restoration and highlighting of preserved sectors, land consolidation for the purpose of urban reorganization of rundown complexes and neighborhoods).

The AFUL is therefore an association performing a mission of general interest. But it is not subject to an administrative authorization, unlike the authorized urban land association. It is a legal entity governed by private law whose constitution requires the unanimous agreement of the partners (Civ. 3, June 19, 1996, JCP, ed. N. 1996, 1819, note Dessame), without it being necessary, however, for all the owners to belong to the AFUL (C.E., June 29, 1976, Rec. 906). Founded by a contract, the AFUL is therefore close to an association under the Law of July 1, 1901, which can be considered a common law association.

It must be noted, however, that the creation of the AFUL dates from a law of June 28, 1865, prior to this law (some land associations being even been constituted earlier). And the AFUL is subject to more stringent rules with respect to its operation: obligation to create a general assembly, to designate a co-ownership management committee and a president, with distribution of powers between these three bodies, or even, according to a decision of the Court of cassation (Civ. 3, May 29, 1968), membership exclusivity. Cf. H. Jacquot and F. Priest, *Droit de l'urbanisme*, 3rd ed., Dalloz, 1998, no. 527 et seq.

But beyond these specific rules, one may consider that the AFUL is subject to the general regime applicable to associations, and that the instant decision therefore concerns all associations.

- The bylaws of the AFUL Neuve Douane stipulated that the expenses of the association would be distributed "depending on the criterion of the each owner's interest in the performance of the work." This criterion is rather [illegible]. That is no doubt why the general assembly, by two deliberations of November 1990 and March 1991, rapidly changed the distribution criteria and established it on the basis of percentages of co-ownership.

But this new distribution turned out to be unfavorable to Colombero, who challenged the validity of the general assembly's deliberations in court. The measure certainly increased this member's obligations. But on what basis can it be voided?

In some groups, the law expressly provides that members' obligations cannot be increased without their consent. This is generally the case for companies (Civ. Code art. 1836).

This is also the case of a co-owners' association (art. 81 of the Law of July 10, 1965, according to which changes in costs must be decided unanimously).

But nothing of the sort is provided for AFULs (except for those that decide to adopt the status of the Law of 1965), nor for common law associations.

- *One solution*, which in fact constituted the association's argument in defense, may first be considered. Because no legal provision governs the issue, the bylaws, adopted by the members, must govern. A change in the bylaws made in accordance with them, by a majority vote, may not be challenged. This is the solution adopted by the court of appeal of Bordeaux in its decision of May 18, 1999, in the instant case.

This recalls a much more important decision, with respect to the stakes, rendered by the Court of cassation itself. In a decision of April 25, 1990 (RTD Com. 1991, 249), the Court held that the bylaws of an association adopted in lawful conditions could deprive certain categories of members of their right [illegible]. The issue was not an increase in obligations, but an elimination of rights. But is this not worse?

- A *second solution* is to transpose the rules applicable to companies onto associations. The courts have done this many times (see E. Alfandari, "Associations et sociétés: points de rencontre," *Petites affiches*, April 24, 1996), for example:

    - for taking over the obligations of an association being formed;
    - the non-retroactivity of the invalidity of an association;
    - the conditions for recalling administrators.

One might also go further than the simple transposition of technical operating rules and recognize that certain fundamental principles govern all groups of persons, companies, associations, economic interest groups, etc. (see E. Alfandari, *Droit des affaires*, 1993, no. 333). Civil Code article 1832 requiring a partner's consent would therefore not be a text specific to companies, but would express a fundamental rule related to the very nature of groupings (as the courts have decided with respect to the survival of the group for the needs of liquidation, or winding up due to disagreement).

It is in this spirit that legal scholars consider that increasing the costs of an association's members must be decided unanimously (cf. Dalloz Action Associations, 2000, no. 1291).

- A *third solution* borrows from the case law established with respect to modifying the bylaws of unions. Such a modification is impossible if it leads to a fundamental change in the objectives or the ideology of the group (Civ. 1, Jan. 19, 1971, JCP 1971, IV, 47; Jan. 26, 2982, JCP 1983, 19948, note Malafosse).

The Paris court (June 21, 1966, D.1967, 321, note Brethe de la Gressaye) thus rejected the modification of the bylaws of the CFTC because it deleted the reference to Christian morality ("significant alteration of the substance, which had to be adopted unanimously"). But the Court of cassation ruled to the contrary: despite the ideological change constituted by linking the union, previously affiliated with the CGT, to the CGT-FO, such a modification may be decided by a statutory majority when the fundamental goal, preserving the members' interests, is maintained (Soc. May 28, 1959, 5th esp., D. 1960, 145, note Brethe de la Gressaye).

This solution gives the court control over statutory modifications that fundamentally change the spirit in which the group was constituted, and concerns unions, associations, even mutual societies, much more than it does companies, which are more imbued with economic objectives than ideological ones. But will the courts always be comfortable determining what is "fundamental" in such objectives?

3

- Lastly, the Court of cassation has turned towards a *fourth solution*: the priority given to the contractual foundation of an association. Like associations governed by the law of 1901 (which insists heavily on this point in its article 1, see Dalloz Action Associations, no. 3), the AFUL is a contract: not only a contract between the association's members, but also a contract between each member and the association itself as a legal entity. The instant decision in fact expressly cites Civil Code article 1134 to support the overruling of the decision of the court of Bordeaux, in a very hasty manner.

An increase in the costs of a co-contractor is a modification of the contract, which an association cannot perform without the co-contractor's consent. The contract is the law between the parties—and only the parties. A court cannot modify the system set out in the bylaws for distributing members' costs (Civ. 3, May 4, 1988, Bull. Civ. 11, no. 84). But also of all the parties: an association cannot unilaterally modify the contract. This solution strengthens the rights of individuals against the collective functioning of an association: it favors the association-contract over the association-institution. I approve of it in its principle.

But to what extent should members' individual rights take precedence? By becoming a member of the association, did they not accept the bylaws governing its operation? Doesn't the contractual framework still apply?

In the case at bar, the increase in members' costs did not figure among the decisions that could be taken by a majority. Would the Court of cassation ruled the same way had this been the case?

In a decision of Jan. 26, 1982 (Civ. 1, JCP 1983, 19942, note Malafosse), the Court of cassation voided a decision of the board of directors of an accredited hunting association that had unilaterally changed a member's category, thereafter subjecting him to a less favorable regime. But the Court's reason was that this modification had been made by an unauthorized body (the board of directors rather than the general assembly), and that it violated the bylaws. Does this not implicitly mean that if an increase in costs complies with an *explicit* decision of the bylaws, the court must accept it, despite the member's refusal (said member having the option of withdrawing)?

I hope not. I do not support an "all or nothing" system: "all contract," as per the apparently radical formula of the instant decision, or "all bylaw." Clearly, increasing the costs of a member is an exceptional decision (like withdrawing the right to vote!). Necessary to the association's operation, or very survival, it must require the member's consent. But one must avoid seeing in this decision the granting of a veto right to every member of an association: to strengthen the contract in general, we cannot sign the death warrant of the association contract in particular. It is for the courts to strike a balance between individual and collective interests.