# Exhibit 60

# VI

## FINAL CONSIDERATIONS

This study has outlined the numerous uncertainties surrounding the patent license agreement system. In the end, everything is subject to discussion. The most fundamental aspects, such as a licensee's right to take action against an infringer[302], or the outcome of an agreement in the case of a cancellation[303] have been the subject of various assessments, even of diverging decisions. It is therefore startling that the companies who make use of this contractual technique would not have requested a specific regulation for it. This apparently content attitude can truly only be explained in the two following ways: either they are unaware of the uncertainties affecting the license system, as well as of the risks implied, or – and this is a more likely explanation – they believe they can settle all the questionable issues in a satisfactory manner through specific provisions, thanks to the contractual autonomy they enjoy.

Regarding the solutions which are advocated by the doctrine and have been adopted by case law, it is clearly the amalgamation of the license agreement with the lease system which calls for the strongest reservations. In the preceding pages, I used this amalgamation as a working assumption, and I simply strived to show that certain situations which are encountered in the field of licenses – voiding of the patent – for instance – were erroneously likened to those occurring in the field of leases – eviction, or its imperfection[304]. Often, those in favor of this amalgamation were not even consistent[305]. But such is not the most important matter at hand. The fact that there are some similar points between licenses and leases is unquestionable[306]. But such similarities should not lead to apply to licenses rules that are not convenient. In certain cases, one is compelled not to accept all of the consequences of the amalgamation, and the lease system is thus harmed: just refer to the license transfer and the granting of sublicenses issues[307], or also to the automatic renewal issue[308]. Moreover, the application mutatis mutandis of lease rules is most of the time useless. Apart from the licensor's warranty obligation duty, all of the parties' obligations can be deducted from the nature of the convention itself, and can be based upon the principle of execution in good faith[309]. Finally, the amalgamation leads to unfair results for the licensor, as in the case of warranty obligation. To begin with, to seek to include in an exceptional system – exceptional in that it's not based upon fault – designed for a specific contract a nameless contract such as a license is quite questionable. Such extrapolation becomes utterly questionable when the system at hand has been intended for corporeal goods, which have nothing in common, in terms of their complexity, with incorporeal goods such as inventions[310]. It

---

[302] See the French and Belgian decisions wrongly allowing the licensee to act in unfair competition against the counterfeiters: above, p. 182.

[303] See above, p. 214-221

[304] See above, p. 215

[305] See above, p. 207, some French authors who conclude to the invalidity of a license granted to a counterfeiter, instead of drawing on the solution agreed upon in the case of a lease concerning another's property.

[306] See above, p. 174

[307] See above, p. 197

[308] See above, p. 221

[309] The only exception is the resumption of license agreement obligations by the patent buyer, in the case when a license has a specific date (see above, p. 171 and note 7.) It apply only to Belgium anyway, since in France this solution is based upon a patent law express provision (see above, p. 171, and note 10.)

[310] See my own remarks above, p. 217.

ensues that overly heavy responsibilities are being placed upon the licensor, such as warranting the licensee against the existence of a previous personal ownership right which would be quite impossible for him to foresee, since ownership of the invention prior to filing is necessarily kept secret[311]. It would seem more reasonable to consider that the licensor's obligation to insure the licensee the peaceful enjoyment of an invention finds its assent in obligations common law, and that, should the promised result not be reached, the licensor would still be able to avoid any responsibility if he/she were able to demonstrate a discharging external cause.

---

[311] See above, note 236.