QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendant. | CASE NO. 11-cv-01846-LHK <br><br> **SAMSUNG'S STATEMENT IDENTIFYING CLAIMS IT WILL ASSERT AT TRIAL** |

Pursuant to the Court's instructions at the May 2, 2012 Case Management Conference and the minute order issued today, Samsung submits this statement identifying the claims it will assert at trial.

## I. SAMSUNG'S POSITION

Unable to compete in the marketplace, Apple is instead seeking to compete through litigation, requesting injunctions against the full lineup of Samsung's mobile phones and tablet products. Against Samsung's remarkably successful products and innovative, independently developed technologies, Apple has only been able to muster utility patents covering extremely minor user interface features, and design patents and trade dresses that offer far narrower protection than Apple urges. Apple has never connected the success of Samsung's products with the alleged infringement of its design or utility patent rights. Unable to succeed on any manageable subset of these claims, Apple's only choice is to assert far more intellectual properties than can be reasonably adjudicated in one trial, including by continuing to assert a patent (the '607 patent) which was declared invalid by the International Trade Commission.

Thus, Apple has still refused to adequately narrow the case pursuant to the Court's prior requests.   Despite the Court's explicit instructions that, if Apple wants an expedited trial, it must narrow the case significantly such that a jury can reasonably hear it in the 25 hours allotted per side, Apple intends to press forward with the vast majority of its extensive utility patent, design patent, and trade dress claims. Apple also still intends to assert antitrust claims for each of Samsung's standards-related patents.

 In essence, Apple has "narrowed" its case from five distinct trials—on utility patent infringement, design patent infringement, trademark, trade dress, and antitrust—to four. And Apple has never indicated it is willing to withdraw infringement claims against *any* of the 31 Samsung products it accuses. Apple has not crafted a case that any one jury could be expected to adjudicate properly.

**A.     Apple Has Not Meaningfully Reduced The Scope Of Its Case**

      1.     Apple Has Not Narrowed Its Extensive Design Case

Apple has not narrowed its design case in any material way for an expedited trial, and certainly not sufficiently that would allow it to be tried in fifty hours for both sides. Apple's case would not be triable even if no utility patents were at issue. Despite this Court's directive to narrow its case for expedited trial, Apple is still asserting many dozens of combinations of ten alleged soft IP assets (both hardware and user interface), spanning seven claimed commercial embodiments, against numerous Samsung products.  And because Apple accuses many of those Samsung products of infringing or diluting several assets, the Court, the parties and the jury will have to make over 125 product to claimed soft IP asset comparisons. Apple's "narrowed" design patent and trade dress case *alone* is unmanageable for an expedited trial where 25 hours has been allotted to each side.

More specifically, Apple's "narrowed" design patent case has dropped only two of its seven design patents and done so in a manner that does little or nothing to streamline the case for trial.   Apple still asserts that various combinations of at least fourteen Samsung products infringe five design patents (including two embodiments of the D'087 patent) that purport to cover both the external hardware and user interface of iPhone and iPad devices, as demonstrated in the following table.[1]

| Apple Design Patent | Number of Samsung Accused Products |
|---|---|
| D'677 | 13 |
| D'087 (embodiment 2) | 13 |
| D'087 (embodiment 3) | 13 |
| D'334 | 13 |
| D'305 | 13 |
| D'889 | 1 |
| Total Comparisons | 66 |

---

[1] *See* Apple's Second Amended Objections and Response to Samsung's Interrogatory No. 5, at pp. 2-3; Apple's Objections and Responses to Samsung's Frouth Set of Interrogatories, 99-110. Samsung does not agree that all of the devices asserted by Apple are appropriately or timely accused but for purposes of the present analysis uses Apple's own statements about the scope of its case.

Thus, the Court, the parties and the jury will be required to make at least 66 Samsung product to design patent comparisons just for the infringement analysis of the design patent claims under Apple's allegedly "narrowed" trial presentation. Furthermore, Samsung has obviousness, anticipation, functionality, indefiniteness and other invalidity defenses against each of these patents that must be the subject of documentary evidence, and percipient and expert witness testimony.

Apple then adds on top of this an ostensibly "narrowed" trade dress case that asserts dilution of five separate unregistered and registered phone and tablet trade dress combinations that include the entirety of Apple's external hardware and user interface. For phones, Apple has defined three trade dresses (the '983 registration and two unregistered combinations) as used in five commercial iPhone embodiments. According to Apple, these unregistered iPhone trade dress combinations consist of the "original" iPhone trade dress and the iPhone 3G trade dress. *See, e.g.*, Expert Report of Russell Winer, at pp. 3-4. Apple's expert, Robert Winer, has made clear that Apple's unregistered trade dress claims rely not just on the "overall look and feel" of the ostensible trade dress, but on Samsung's alleged "misappropriation" of the "constituent elements of the trade dress[es]," which Apple claims creates an "accretive effect" that "magnifies the diminution" of its alleged trade dresses. *Id.* at p. 71. Here, these "constituent elements" that Apple asserts include six sweeping elements of hardware and interface combinations for the unregistered "combination" iPhone trade dress, and another eight elements of hardware and interface combinations for the unregistered iPhone 3G trade dress. Apple then asserts that various combinations of 17 Samsung products infringe these registered and unregistered trade dress combinations.[2] All told, the Court, the parties and the jury will have to make 51 Samsung product to trade dress comparisons just for the phone trade dress dilution claims and just for the dilution analysis alone. Of course, comparing Samsung's to Apple's alleged trade dress on an element-by-

---

[2] Apple has accused 17 products of diluting each of its two unregistered trade dress combinations and 17 products of diluting its claimed registered trade dress. *See, e.g.*, Apple's Objections and Responses to Samsung's Fourth Set of Interrogatories, at pp. 68-70.

element basis, as Apple also claims for its dilution theory, would require hundreds of element to accused product comparisons.  Furthermore, Samsung has functionality and other invalidity and non-dilution defenses against each of these purported trade dress combinations.

      Finally, Apple adds on top of all of this further claims for both dilution and infringement of Apple's purported iPad and iPad 2 trade dress combinations.  According to Apple, each of the iPad and iPad 2 trade dress combinations has six elements, and Apple accuses four Samsung products of both infringing and diluting these trade dress combinations.  *See, e.g.*, Apple's Objections and Responses to Samsung's Fourth Set of Interrogatories, at pp. 71; Expert Report of Russell Winer, at p. 6.  As a result, the Court, the parties and the jury will be required to make yet another 8 product to trade dress comparisons, or 48 element-by-element comparisons, just for these iPad-related claims and just for infringement and dilution analysis purposes alone.  In addition, Samsung has functionality, non-distinctiveness and other invalidity and merits defenses against each of these purported trade dress combinations.

      All told, for its trade dress claims and even in addition to its design patent claims, Apple is seeking to try five trade dress combinations that will require the Court, the parties and the jury to make at least 59 allege trade dress to product comparisons (and almost 300 such comparisons if done element be element). To show the still substantial scope of all of this, Apple's "narrowed" trade dress claims are summarized in the following table:

| Apple Trade Dress | Number of "Constituent Elements" Claimed by Apple | Trade Dress to Samsung Product Comparisons | Trade Dress Element to Samsung Product Comparisons |
| --- | --- | --- | --- |
| '983 Registration | - | 17 | - |
| Combination iPhone Trade Dress | 6 | 17 | 102 |
| iPhone 3G Trade Dress | 8 | 17 | 136 |
| iPad Trade Dress | 6 | 4 | 24 |
| iPad2 Trade Dress | 6 | 4 | 24 |
| | Total Phone | 51 | 238 |
| | Total Tablet | 8 | 48 |
| | Grand Total | 59 | 286 |

1  Apple's decision to proceed on dilution, and not infringement, of the iPhone trade dress
2  combinations does nothing to narrow trial as a practical matter.  Apple is still asserting both
3  infringement and dilution of the alleged iPad trade dress combinations, so the jury must be
4  instructed on and deliberate about infringement, and the parties will have to present evidence on
5  infringement as a result.  Furthermore, much of the same evidence and all of the same witnesses
6  will still have to be presented at trial for Apple's phone trade dress dilution claim, even if it drops
7  infringement for trial.  This is because many of the factors for infringement overlap with dilution.
8  For example, evidence regarding the distinctiveness of trade dress (or lack thereof) is usually
9  relevant to the requirement dilution element of fame, and evidence regarding the similarity of the
10 trade dress to the accused product is relevant to the required dilution element that the accused
11 product be identical or virtually identical to the claimed trade dress.  *E.g.*, *Avery Dennison Corp. v.*
12 *Sumpton*, 189 F.3d 868, 876 (9th Cir. 1999) ("We note the overlap between the statutory
13 famousness considerations [for dilution] and the factors relevant to establishing acquired
14 distinctiveness").[3]  Indeed, Apple's expert's analysis expressly relies on many same claimed facts
15 for trade dress dilution as he does for infringement.  *E.g.*, Expert Report of Russell Winer, at pp.
16 12-37 (relying on same alleged evidence for famousness under dilution and for distinctiveness
17 under infringement), p. 68-69 (relying on same facts for similarity of phone trade dress and
18 association in dilution as for infringement), p. 69 (relying on same facts for exclusivity of use for
19 dilution of phone trade dress as for infringement), p. 69 (relying on same facts for intent of junior
20 user for dilution of phone trade dress as for infringement), pp. 69-71 (relying on same facts for
21 actual association for dilution of phone trade dress as for infringement), pp. 71-74 (relying on
22 same facts for dilution of iPad/iPad 2 trade dress as for infringement).  In short, Apple's professed
23 abandonment of its infringement claim for phones (but not computer tablets), while still
24 proceeding on dilution, will not narrow trial in any meaningful way.

---

[3]  While the standard for fame is higher than distinctiveness, evidence that a trade dress is not distinctive necessarily also tends to show that it is not famous.  *See id.*

### 2. Apple Has Not Sufficiently Narrowed Its Utility Case When Considered With Its Design Case

Apple has not sufficiently narrowed its utility patent case in a way that would allow it to be tried in the 50 hours allotted for both sides. Apple's claim that it reduced its utility case in half is based on a meaningless metric. Utility patents have always been a small subset compared to Apple's vast design case, of close to 30 different IP assets.

Apple has agreed to remove four of its eight patents and move forward at trial on its '381, '915, '607 and '163 patents. However, there are numerous non-infringement and invalidity issues that will be tried with respect to each of these patents regardless of the number of claims that Apple asserts for each patent. Apple accuses up to 31 products of infringing each patent, each product with its own body of source code.[4] The following chart illustrates the significant scope of Apple's proposed utility patent case.

| Apple Patent | Accused Feature | Accused Products Identified in Apple's Expert Reports |
|---|---|---|
| '381 | Gallery | Captivate; Continuum; Droid Charge; Epic 4G; Exhibit 4G; Fascinate; Galaxy Ace; Galaxy Prevail; Galaxy S (i9000); Galaxy S II (i9100, AT&T, and Epic 4G Touch variants); Galaxy S 4G; Galaxy S Showcase; Galaxy Tab 7.0; Galaxy Tab 10.1; Gravity Smart; Indulge; Infuse 4G; Mesmerize; Nexus S; Nexus S 4G; Replenish; Sidekick; and Vibrant. |
| '381 | Contacts | Captivate; Continuum; Droid Charge; Epic 4G; Exhibit 4G; Fascinate; Galaxy Ace; Galaxy S (i9000); Galaxy S II (i9100, AT&T, and Epic 4G Touch variants); Galaxy S 4G; Galaxy S Showcase (i500); Gem; Gravity Smart; Indulge; Infuse 4G; Mesmerize; Sidekick; and Vibrant. |
| '381 | Browser | Exhibit 4G; Galaxy Ace; Galaxy S II (i9100, AT&T, and Epic 4G Touch variants); Galaxy Tab 7.0; Galaxy Tab 10.1; and Gravity Smart. |
| '381 | ThinkFree Office | Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, |

---

[4] Apple's contention that there are only "four versions of Samsung's operating system software" the jury need evaluate is incorrect. There are many more versions of operating system software at issue with respect to Samsung's products, and Apple must independently prove infringement for each version.

| Apple Patent | Accused Feature | Accused Products Identified in Apple's Expert Reports |
|---|---|---|
| | | Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S Showcase, Galaxy Tab 7.0, Indulge, Intercept, Mesmerize, Replenish, and Sidekick. |
| '915 | All applications that involve scroll or gesture operations. | Acclaim, Galaxy S 4G, Galaxy Tab, Galaxy Tab 10.1, Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Gem, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Showcase Galaxy S, Sidekick, Transform, Vibrant |
| '163 | Browser | Acclaim, Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (including the i9100, T-Mobile, AT&T, Epic 4G Touch and Skyrocket variants), Galaxy S Showcase (i500), Galaxy Tab 7.0, Galaxy Tab 10.1, Gem, Gravity Smart, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Sidekick, Transform, and Vibrant. |
| '607 | Touchscreen circuitry[5] | Tab 7.0 and Tab 10.1 |

As demonstrated by the table above, trial on Apple's four patents alone will necessarily require the jury to compare the claims of four different Apple patents to scores of Samsung products and different software and hardware features within those products. For example, the '915 patent will require an in-depth understanding of object-oriented programming and source code, whereas the '607 patent will require an in-depth understanding of touchscreen hardware technology, including an understanding of capacitive touchscreens, virtual ground charge amplifier circuitry, and scanning electron microscopy technology.

Furthermore, significant disputes remain with respect to each of Apple's patents. The meaning of the term "invoke" as used in the claims of the '915 patent is central to a determination of non-infringement. The term "substantially centered" as used in the claims of the '163 patent will also require construction (if it is not deemed indefinite) as Apple's expert has taken the position that a document that is aligned with the left or right side of a display is somehow "substantially centered." With respect to the '607 patent, there are significant disputes with

---

[5] The touchscreen circuitry in the Tab 7.0 and Tab 10.1 is different and raises different claim construction and non-infringement issues for each product.

1   respect to the following terms: "conductive lines" (whether a conductive "line" needs to have a
2   substantially constant width or can include irregular patterns and shapes), "configured to detect
3   changes in charge coupling between the first conductive lines and the second conductive lines"
4   (whether this limitation requires the detection of charge coupling between all the first lines and all
5   the second lines or can include configurations where one transmit line is driven and all the receive
6   lines are sensed), and "virtual ground charge amplifier" (whether this is a term of art and the
7   precise circuitry that is encompassed by this term). With respect to the '381 patent, the parties
8   have significant disputes regarding the meaning of the term "electronic document" (whether a list
9   of items is an electronic document) and "beyond the edge" (whether a background layer
10  underneath a scrolled document is beyond the edge). And although the Court recently construed
11  the meaning of "edge of electronic document," Apple is attempting to circumvent this order by
12  reading out internal edges that purportedly do not surround "internal electronic documents."
13  There are also disputes relating to the application of the Court's construction of the '381 patent's
14  claims from its Preliminary Injunction Order.  Specifically, the parties dispute the application of
15  the requirement that an electronic document "always" bounce back to the accused Samsung
16  products and the prior art.

### 3. Apple's Alleged "Reduction" Does Not Materially Reduce the Number of Witnesses

A trial under Apple's current proposal will require testimony from only two fewer experts than its May 1 proposal. Only Apple's expert Alex Snoeren (for the '002 utility patent) and Samsung's expert Trevor Darrell (for the '002 and '891 utility patents) would not have to testify. Apple would present eleven utility, design, and damages experts only to meet its burden. To adequately respond to Apple's claims, Samsung will need to present fourteen utility, design, and damages experts. Apple would then have to re-call at least seven experts to rebut Samsung's defenses and present its antitrust claims. Plainly, the testimony of *thirty-two* experts, and a considerable number of fact witnesses, only to address Apple's affirmative case, will run far beyond the limits the Court has imposed.

### 4. Apple Is Not Fully Dropping the Claims as the Court Requires

In its submission, Apple proposed, for the first time, bifurcating the remaining claims and having them tried in a bench trial immediately following the jury trial. Apple's proposal does nothing to alleviate the burden on this Court of resolving the parties' dispute. To the contrary, Apple adds to the Court's burden, requesting the Court hear its extensive claims after almost a month of presiding over a jury trial. Apple already made this proposal at the last Case Management Conference, and the Court expressly stated that if Apple wanted multiple staged trials, it would need to find some other forum to bring its case.

If Apple wishes to move forward with the trial date as currently set by the Court, it should be required to dismiss its additional claims with prejudice. Samsung is willing to dismiss its claims with prejudice, but cannot agree to do so while Apple maintains that its dropped claims are "ripe for trial."

### B. Samsung Has Significantly Reduced The Scope Of Its Case

Unlike Apple, Samsung is willing to make significant and meaningful reductions in the number of claims it asserts. Samsung will proceed to trial on fifteen claims from seven patents. With these reductions, Samsung has narrowed its case from twelve patents to seven, dropping 42% of its affirmative counterclaims. From a total of 75 claims identified by Samsung's experts as infringed by Apple's products, Samsung will drop 60 and only proceed on 15—a reduction in total claims of 80%. Samsung's claims are identified below:

- U.S. Patent No. 7,675,941 (Claims 10, 11 and 15)
- U.S. Patent No. 6,928,604 (Claims 17 and 18)
- U.S. Patent No. 7,447,516 (Claims 15, 16 and 17)
- U.S. Patent No. 7,362,867 (Claims 25 and 26)
- U.S. Patent No. 7,698,711 (Claims 9 and 10)
- U.S. Patent No. 7,577,460 (Claim 1)
- U.S. Patent No. 7,546,893 (Claims 10 and 12)

Samsung agreed to reduce its offensive case by dismissing three of its offensive patents (U.S. Patent No. 7,200,792, U.S. Patent No. 7,386,001, and U.S. Patent No. 7,079,871) in the

1  parties Joint Case Management Statement dated April 30, 2012.  (Docket No. 893).  Samsung is
2  now willing to drop an additional two patents from its offensive case:
3  • U.S. Patent No. 7,050,410
4  • U.S. Patent No. 7,069,055
5  Samsung would have been willing to reduce it claims even further. However, in light of
6  Apple's refusal to narrow its case,[6] and insistence on proceeding with a full range of design patent,
7  trade dress, utility patent, and antitrust claims against over thirty Samsung products, any further
8  reductions in Samsung's case at this time would be highly prejudicial and unfair.

---

[6]  Apple's characterization of the parties' meet-and-confer efforts is misleading. It was Samsung who first contacted Apple's counsel right after the CMC on May 2nd to arrange for a meet and confer to discuss narrowing the case.  Apple suggested meeting at its offices in the afternoon of Thursday, May 3rd.  At that meeting, Apple's counsel stated it could not share any proposal to narrow the case until Saturday.  Samsung's counsel asked to have Apple's proposal sooner because it would take Samsung time to analyze and respond to Apple's proposal particularly given the time difference with Korea and the necessity to confer with different teams within Samsung.  Samsung received Apple's proposal on Saturday May 5th at 11am (which is 4am in Korea).  Samsung worked diligently to complete its second round analysis of reducing its case and notified Apple early afternoon Monday that its portion of the joint statement was forthcoming.  In response, Apple indicated that it intended to file its own statement with the Court.  Samsung's counsel responded by saying that it was preparing a response and was waiting for client approval to share it with Apple but that the morning had just begun in Korea.  Samsung's counsel also told Apple it was improper for Apple to file its own proposal without waiting for Samsung's.

| | |
|---|---|
| DATED: May 7, 2012 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By  */s/ Victoria Maroulis*<br>Charles K. Verhoeven<br>Kevin P.B. Johnson<br>Victoria F. Maroulis<br>Michael T. Zeller<br>Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC |