**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN JOSE DIVISION

12

| | |
|---|---|
| APPLE INC., a California corporation, | ) Case No.: 11-CV-01846 |
| | ) |
| Plaintiff, | ) |
| | ) ORDER GRANTING IN PART AND |
| v. | ) DENYING IN PART MOTION TO |
| | ) DISMISS AMENDED |
| SAMSUNG ELECTRONICS CO., LTD., A | ) COUNTERCLAIMS |
| Korean business entity; SAMSUNG | ) |
| ELECTRONICS AMERICA, INC., a New York | ) |
| corporation; SAMSUNG | ) |
| TELECOMMUNICATIONS AMERICA, LLC, | ) |
| a Delaware limited liability company, | ) |
| | ) |
| Defendants. | ) |
| | ) |

21

Before the Court is Defendants Samsung Electronics Co., Ltd., Samsung Electronics

22

America, Inc., and Samsung Telecommunications America, LLC's (collectively "Samsung")

23

Motion to Dismiss Plaintiff Apple, Inc.'s ("Apple") Counterclaims in Reply. *See* Samsung's

24

Motion to Dismiss Apple's Counterclaims ("Mot. to Dismiss"), ECF No. 405. Samsung seeks to

25

dismiss counts twenty-five (Breach of Contract – FRAND and Other Standard-Related

26

Misconduct), twenty-six (Promissory Estoppel), twenty-seven (Declaratory Judgment that Apple is

27

Licensed to Samsung's Declared-Essential Patents), twenty-eight (violation of Section 2 of the

28

Sherman Antitrust Act), and twenty-nine (California Unfair Competition Law) of Apple's Amended Answer, Defenses, and Counterclaims in Reply to Samsung's Counterclaims ("Amended Counterclaims in Reply" or "ACR"). *See generally*, Mot. to Dismiss. A hearing was held on April 12, 2012. After considering the briefing provided by the parties, as well as the declarations and exhibits filed in support thereof by the parties, the Court grants in part and denies in part Samsung's Motion to Dismiss.

## I.      RELEVANT BACKGROUND

### A.  Factual Background

Unless otherwise noted, the following allegations are taken from Apple's Amended Counterclaims in Reply and are presumed to be true for purposes of ruling upon Samsung's Motion to Dismiss. Apple and Samsung both sell telecommunications handsets that operate on wireless networks. ACR ¶ 23. To facilitate the interoperability necessary for various manufacturers' products to function on wireless networks, standards setting organizations ("SSOs") establish precise specifications for essential components of the technologies. *Id.* ¶ 24. Standards may have both pro-competitive and anti-competitive effects. For example, standards may reduce costs for both suppliers and purchasers by allowing wider distribution of a single product and thus increased manufacturing volumes and lower per unit costs and by increasing price competition among many suppliers all making standards-compliant products. *Id.* ¶¶ 25-26. Alternatively, standardization also creates a "lock-in" effect such that alternative technological approaches are practically unavailable as substitutes and thus owners of patents that are incorporated into a standard may demand excessive royalties for use in the adopted patented technology. *Id.* ¶¶ 27-28.

Apple and Samsung are both members of the European Telecommunications Standards Institute ("ETSI"), which is an SSO headquartered in France. *Id.* ¶ 39. ETSI is one of six SSOs which combine to form the Third Generation Platform Partnership ("3GPP"). *Id.* ¶ 42. 3GPP sets standards for mobile wireless carrier technology, including the Universal Mobile Telecommunications Standard ("UMTS"), the standard at issue in this case. *Id.* ¶ 42. During the development of the UMTS, Samsung participated in ETSI working groups and proposed and advocated for the standardization of certain technologies to perform functions included in the

United States District Court
For the Northern District of California

1    standard.  *Id.* ¶¶ 55, 57.  Samsung has represented to Apple that it owns several patents that are

2    essential to the UMTS (the "Declared-Essential Patents").  *Id.* ¶ 56.

3           ETSI has an intellectual property rights policy ("IPR policy") meant to "'reduce the risk' to

4    those implementing the standards or other technical specifications 'that investment in the

5    preparation, adoption and application of the standards could be wasted as a result of an essential

6    IPR for a standard or technical specification being unavailable.'"  *Id.* ¶ 54.  ETSI members

7    participating in 3GPP must comply with the ETSI IPR policy.  *Id.* ¶ 45.  The IPR policy requires

8    participants "to inform ETSI of essential IPRs in a timely fashion," *id.* ¶ 51, and requires

9    participants, upon request, to agree irrevocably that they will license essential IPR on fair,

10   reasonable, and non-discriminatory ("FRAND") terms.  *Id.* ¶¶ 52-53.  Apple has relied on

11   Samsung's commitments to license its Declared-Essential Patents under FRAND terms ("FRAND

12   commitments") in investing substantially in UMTS-compliant products.  *Id.* ¶ 70.  Apple alleges

13   that Samsung "deliberately and deceptively failed to disclose the existence of its claimed IPR

14   during the standard-setting process," and that Samsung committed to license its IPR on FRAND

15   terms despite never having any intention to do so.  *Id.* ¶¶ 57, 59-60.

16          Apple alleges that Samsung steered 3GPP to standardize Samsung's Declared-Essential

17   Patents.  *Id.* ¶ 57.  Had Samsung disclosed its ownership of the relevant IPR and that it did not

18   intend to license on FRAND terms despite agreeing to do so on various occasions, 3GPP would

19   have selected a competing technology or declined to make the relevant function essential to the

20   standard.  *Id.* ¶¶ 48, 58, 59, 63.  As a result, Samsung thus excluded alternative technologies that

21   were available to perform the same functions as those covered by Samsung's IPR, and acquired

22   monopoly power in the Input Technology Markets covered by Samsung's Declared-Essential

23   Patents.  *Id.* ¶¶ 58, 61, 67, 69.

24          Samsung has sought to exploit its alleged monopoly power to coerce Apple into tolerating

25   Samsung's imitation of Apple's products.  *Id.* ¶¶ 72-75.  Samsung did not sue Apple for infringing

26   its Declared-Essential Patents until Apple brought unrelated infringement claims against Samsung.

27   *Id.* ¶ 75.  Apple alleges that Samsung has only offered licensing terms that are not FRAND.  *Id.* ¶

28

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

49.  Apple also alleges that Samsung's deceitful actions have an anticompetitive effect on the Input

Technologies Markets, thus injuring Apple.  *Id.* ¶¶ 90-96.

### B.  Procedural Background

This is Samsung's second motion to dismiss Apple's counterclaims in reply.  Apple, in its

initial complaint, alleged that Samsung's Galaxy cell phones and computer tablets infringe Apple's

trade dress, trademarks, and utility and design patents.  Complaint, April 15, 2011, ECF No. 1.  In

response, Samsung brought counterclaims against Apple, alleging that Apple products infringe

upon 12 of Samsung's own patents, including, among others, patents related to the UMTS

Standard.  *See* Answer and Counterclaims, ECF No. 80.  In response to these counterclaims, Apple

filed its Answer, Defenses and Counterclaims in Reply to Samsung's Counterclaims

("Counterclaims in Reply") on July 21, 2011. *See* ECF No. 124.

In its Counterclaims in Reply, Apple alleged that Samsung violated both federal and state

antitrust laws, as well as the California Unfair Competition Law, by defrauding the standards

setting organization that set the UMTS standards, inducing the organization to adopt Samsung's

Declared-Essential Patents, and later refusing to license its Declared-Essential Patents on fair,

reasonable, and non-discriminatory terms ("FRAND" terms).  Samsung sought to dismiss counts

twenty-seven (violation of Section 2 of the Sherman Antitrust Act), twenty-eight (violation of

Section 1 of the Sherman Antitrust Act and California Business and Professions Code §§ 16720),

and twenty-nine (California Unfair Competition Law).  *See* Counterclaims in Reply at ¶¶ 176-206.

Samsung also sought to strike counts thirty (Declaratory Judgment that Apple is Licensed to

Samsung's Declared-Essential Patents), thirty-one (Declaratory Judgment of No Entitlement to

Injunctive Relief), and thirty-two (Declaratory Judgment of Unenforceability).  *See id.*  The Court

granted in part and denied in part Samsung's Motion to Dismiss, and allowed Apple leave to

amend to cure identified deficiencies.  *See* Order Granting in Part, and Denying in Part, Motion to

Dismiss and Strike, ECF No. 315.  Apple filed its Amended Counterclaims in Reply on October

28, 2011.  Samsung filed the instant motion to dismiss on November 22, 2011.  *See* ECF No. 405.

## II.    LEGAL STANDARDS AND ANALYSIS

United States District Court
For the Northern District of California

1    A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

2 sufficiency of a complaint.  To withstand a motion to dismiss, a plaintiff must plead "enough facts

3 to state a claim to relief that is plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570

4 (2007).  "On a motion to dismiss in an antitrust case, a court must determine whether an antitrust

5 claim is 'plausible' in light of basic economic principles."  *Coalition for ICANN Transparency,*

6 *Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).  All

7 allegations of material fact are taken as true and interpreted in a manner most favorable to the non-

8 moving party.  *Simon v. Hartford Life and Accident Ins. Co.*, 546 F.3d 661, 664 (9th Cir. 2008).

9 However, the court is not required to accept as true "allegations that are merely conclusory,

10 unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536

11 F.3d 1049, 1055 (9th Cir. 2008).  Leave to amend should be granted unless it is clear that the

12 complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248

13 (9th Cir. 1995).  If amendment would be futile, a dismissal may be ordered with prejudice.  *Dumas*

14 *v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

15    A complaint must "state with particularity the circumstances constituting fraud."  Fed. R.

16 Civ. P. 9(b).  Allegations of fraud must be stated with "specificity including an account of the

17 'time, place, and specific content of the false representations as well as the identities of the parties

18 to the misrepresentations.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting

19 *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  To survive a motion to

20 dismiss, "'allegations of fraud must be specific enough to give defendants notice of the particular

21 misconduct which is alleged to constitute the fraud charged so that they can defend against the

22 charge and not just deny that they have done anything wrong.'"  *Id.* (quoting *Bly-Magee v.*

23 *California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

24    **A.  Section 2 of the Sherman Act**

25    Apple's twenty-seventh counterclaim in reply alleges that Samsung's failure to disclose its

26 IPR in the patents essential to the UMTS standard, and its affirmative misrepresentations regarding

27 Samsung's intent to license its UMTS patents on FRAND terms, in conjunction with Samsung's

28

5

subsequent failure to license on FRAND terms, violates Section 2 of the Sherman Act.  ACR ¶¶ 198-201.

In order to state a claim under Section 2 of the Sherman Act, Apple must establish that: (1) Samsung possessed monopoly power in the relevant market, and (2) that Samsung achieved or is maintaining monopoly power through anticompetitive conduct.  *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  Samsung argues that Apple's Amended Counterclaims in Reply should be dismissed because: (1) Apple has failed to sufficiently allege a relevant market, (2) Apple has failed to sufficiently allege that Samsung possessed monopoly power in the relevant market, and (3) Apple has failed to sufficiently allege antitrust conduct.  Mot. to Dismiss 9-14.

### 1. Monopoly Power in the Relevant Market

#### a. Relevant Antitrust Market

Samsung first argues that Apple's antitrust counterclaim should be dismissed because Apple fails to plead a relevant antitrust market.  Samsung argues that under prevailing Ninth Circuit precedent, the relevant market must be a product market.  Mot. to Dismiss at 9.  Because Apple has alleged a technology market, Samsung claims that Apple's antitrust counterclaim must be dismissed.

"In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'"  *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008).  Because the validity of the "relevant market" is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6).  *Id.* at 1045 (citing *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993)).  Thus, an antitrust complaint survives a Rule 12(b)(6) motion that attacks the definition of the relevant market unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect.  *Id.*

The Ninth Circuit has acknowledged several principles for determining whether the "relevant market" is sufficiently pled.  First, consumers do not define the boundaries of the market; the products or producers do.  *Id.* (citing *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962)).

6

United States District Court
For the Northern District of California

1    Second, the market must encompass the product at issue as well as all economic substitutes for the

2    product.  *Id.*  As such, the relevant market must include "the group or groups of sellers or

3    producers who have actual or potential ability to deprive each other of significant levels of

4    business."  *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir.

5    1989).

6           Apple has sufficiently pled the "relevant market" for its antitrust claim.  *See, generally*,

7    ACR ¶¶ 58, 90-102.  Apple has pled that "[t]he relevant markets in which to assess the

8    anticompetitive effects of Samsung's conduct . . . are the various markets for technologies that –

9    before the standard was implemented – were competing to perform each of the various functions

10   covered by each of Samsung's purported essential patents for UMTS (collectively, the relevant

11   'Input Technologies Markets')."  *Id.* ¶ 99.  Apple further identifies each of Samsung's Declared-

12   Essential Patents in the UMTS standard that form the relevant technology markets for its Section 2

13   claim.  *See id.* ¶¶ 98-99.  These allegations define the bounds of the relevant markets.  *See, e.g.*

14   *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007) ("The Complaint defined the

15   relevant market as the market for Qualcomm's proprietary WCDMA technology, a technology

16   essential to the implementation of the UMTS standard.").  Moreover, for each of Samsung's

17   technologies adopted as part of the UMTS standard, Apple alleges that pre-standardization there

18   existed alternative substitutes for the technologies covered by Samsung's patents, and that after

19   ETSI adopted the proposed standard, viable alternative technologies were excluded.  *Id.* ¶¶ 58, 99.

20   Thus, Apple has sufficiently pled a relevant antitrust market.  *See Broadcom*, 501 F.3d at 315-16.

21          Samsung argues that prevailing Ninth Circuit law requires that a "relevant market" be a

22   market of physical products.  Mot. to Dismiss at 10-11 (citing *Newcal*, 513 F.3d at 1044).

23   However, Samsung's reading of *Newcal* is far too narrow.  In *Newcal*, the Ninth Circuit

24   differentiated between markets defined by a set of consumers and markets defined by products or

25   producers, but defined the relevant market as a services market.  *See* 513 F.3d at 1045; *see also*

26   *Coalition for ICANN Transparency, Inc.*, 611 F.3d at 507.

27          Apple's position is consistent with other courts that have confirmed that technology

28   markets may serve as "relevant markets" for Sherman Act claims in the context of essential patents

7

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1   adopted by standard setting organizations.  For example, the Third Circuit concluded that a relevant

2   market for an antitrust claim could be the market for proprietary technology, stating that "the

3   incorporation of a patent into a standard . . . makes the scope of the relevant market congruent with

4   that of the patent."  *Broadcom*, 501 F.3d at 315.

5          Another court in the Northern District of California has agreed.  "[T]echnology markets,

6   [for the purposes of an antitrust claim,] consist of intellectual property that is licensed."  *Hynix*

7   *Semiconductor Inc. v. Rambus Inc.*, No. CV-0020905 RMW, 2008 WL 73689, at *2 (N.D. Cal.

8   Jan. 5, 2008) (internal citations and quotation marks omitted).  Thus, "[d]efining a technology

9   market, as opposed to a product market, makes sense where 'rights to intellectual property are

10  marketed separately from the products in which they are used.'"  *Id.* at *2 (quoting U.S. Dept. of

11  Justice & Fed. Trade Comm'n, Antitrust Guidelines for the Licensing of Intellectual Property §

12  3.2.2 (1995)).  Apple's theory is supported by the relevant case law, and Apple's antitrust claim is

13  not dismissed for failure to allege a relevant market.

14              b.   Monopoly Power

15         Samsung also argues that Apple failed to allege that Samsung possessed any power in the

16  relevant market, and that Apple instead erroneously bases its allegation of Samsung's monopoly

17  power on ETSI's incorporation of Samsung technology into the WCDMA standard.  Mot. to

18  Dismiss at 11.

19         "Monopoly power . . . is the power to control prices or exclude competition," and may be

20  shown "by direct evidence or by circumstantial evidence."  *Forsyth v. Humana, Inc.*, 114 F.3d

21  1467, 1475 (9th Cir. 1997) (internal quotation marks omitted).  Apple alleges that Samsung has

22  obtained "the power to raise prices and exclude competition" in the relevant Input Technologies

23  Markets, and thus enjoys monopoly positions in the relevant markets.  ACR ¶¶ 101-02.  Moreover,

24  Apple further alleges that it has been locked-in to the technology standard adopted by ETSI, which

25  has conferred upon Samsung market power.  *Id.* ¶¶ 93-94.  Finally, Apple alleges that it could not

26  switch to alternative technology absent undue cost.  *Id.* ¶¶ 28; 70; 87; 16; 18.  These allegations,

27  taken together, sufficiently allege that Samsung has market power in the relevant Technology

28  Markets.  *See Broadcom*, 510 F.3d at 315 (concluding "quickly and easily" that plaintiff stated a

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

**United States District Court**
For the Northern District of California

1   Section 2 claim where plaintiff alleged that defendant "had the power to extract supracompetitive

2   prices" with respect to standards essential patents).

3          Samsung argues that the "mere incorporation of patented technology into a standard does

4   not justify an inference that the patentee has market power." Mot. to Dismiss at 11. Samsung

5   relies upon *Townshend v. Rockwell Int'l Corp.*, No. 99-CV-0400-SBA, 2000 WL 433505, at *12

6   (N.D. Cal. Mar. 28, 2000), a case from the Northern District of California, in which the court

7   observed that "'[t]he adoption of an industry standard incorporating such proprietary technology

8   does not confer any power to exclude that exceeds the exclusionary power to which a patent holder

9   is otherwise legally entitled.'" *Id.* The complaint in *Townshend*, however, is distinguishable from

10  the allegations in the Amended Counterclaims here. In *Townshend*, the claimant failed to allege

11  that the standardization of the patented technology prevented the development of other proprietary

12  technologies, in other words, alternative technologies were excluded through the standardization

13  process. *Id.* at *12-13. In comparison, Apple has identified the alternative technologies in each of

14  the relevant markets that could have been adopted had Samsung not made the allegedly false

15  FRAND commitments. ACR ¶¶ 57-58.

16          Moreover, a number of courts have recognized a legal distinction between a normal patent

17  – to which antitrust market power is generally not conferred on the patent owner, and a patent

18  incorporated into a standard – to which antitrust market power may be conferred on the patent

19  owner. In so doing, these courts have found similar allegations of market power conferred as a

20  result of a patent incorporated into a standard to be sufficient to state a claim upon which relief can

21  be granted. *See Broadcom*, 501 F.3d at 314 ("A standard, by definition, eliminates alternative

22  technologies. When a patented technology is incorporated in a standard, adoption of the standard

23  eliminates alternatives to the patented technology. . . . [The value of a patent] becomes

24  significantly enhanced . . . after the patent is incorporated in a standard."); *see also Research in

25  Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008) (explaining that

26  standards essential patents are different from normal patents in that standards essential patents

27  confer monopoly power on the patent owner because "[a] standard . . . by definition, eliminates

28  alternative technologies," and enhances the value of the patent).

9

1    At oral argument, Samsung also argued that Apple has not sufficiently alleged that

2    Samsung has monopoly power in a relevant market because Samsung does not sell chipsets to third

3    parties, the product that incorporates Samsung's Declared-Essential Patents.  Samsung's argument,

4    however, relies on a misreading of *Broadcom*.  The defendant in *Broadcom* had a monopoly

5    position – 90% market share – in the CDMA chipset market.  *See* 501 F.3d at 304.  However, in

6    *Broadcom*, plaintiff's allegations regarding the CDMA chipset market were independent of its

7    allegations of monopolization arising out of defendant's conduct in the standard setting

8    organization, which arose in a distinct market.  *Compare id.* at 315-17 *and* 317-19.  The Third

9    Circuit did not require, or even analyze, monopoly power in the market of the product that

10   incorporates the standard.  Thus, Apple is not required to allege more to plead monopoly power in

11   a relevant market than it has already done in its Amended Counterclaims.

12              2.  Anticompetitive Conduct

13   As with Samsung's first Motion to Dismiss and Strike Apple's Original Counterclaims,

14   Samsung again challenges the adequacy of Apple's pleadings with respect to Samsung's

15   anticompetitive conduct.  Samsung argues that Apple's Sherman Act counterclaim should be

16   dismissed because Apple's allegations are not "sufficient to create a plausible inference that ETSI

17   would have adopted an alternative technology in response to Samsung's alleged required

18   disclosure."  Mot. to Dismiss at 14.

19   *False FRAND Theory*.  An SSO can be used to obtain monopoly power and create

20   anticompetitive effects on the relevant markets when "(1) in a consensus-oriented private standard-

21   setting environment, (2) a patent holder's intentionally false promise to license essential

22   proprietary technology on FRAND terms, (3) coupled with [a standard setting organization's]

23   reliance on that promise when including the technology in a standard, and (4) the patent holder's

24   subsequent breach of that promise, is actionable anticompetitive conduct."  *Broadcom*, 501 F.3d at

25   314.

26   The October 18, 2011 Order made clear that Apple's theory of monopoly conduct arising

27   from Samsung's false FRAND declarations was legally sufficient, but that the allegations in the

28   original counterclaims in reply did not meet Rule 9(b)'s heightened pleading standard for fraud.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

**United States District Court**
For the Northern District of California

*See* October 18, 2011 Order at 7.  The Court based this finding on case law "recogniz[ing] that fraudulent FRAND declarations that are used to induce SSOs to adopt standards essential patents can be monopoly conduct for the purposes of establishing a Section 2 claim."  *Id.* at 6; *see also Broadcom*, 501 F.3d 297; *Research in Motion Ltd.*, 644 F. Supp. 2d at 796-97.  In its original counterclaims, Apple identified only two paragraphs that supported its claim that false FRAND declarations were made.  *See* Counterclaims in Reply ¶¶ 56-57.  Apple's Amended Counterclaims, however, allege specific facts about when the false FRAND declarations were made, by whom, and for which patents.  *See id.* at 59, 63.  Apple's allegations of Samsung's false FRAND declarations are thus sufficient to put Samsung on notice of the particular misconduct that creates the basis of the alleged fraud and are therefore sufficient to meet the heightened pleading standards of Rule 9(b).  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

　　　　*Failure to Disclose IPR Theory*.  Apple has similarly added factual detail, and further fleshed out its theory, that Samsung engaged in anticompetitive conduct in violation of Section 2 of the Sherman Act by failing to disclose its IPR.  *See* Counterclaims in Reply.  The October 18, 2011 Order found that Apple "met its burden of pleading anticompetitive conduct for Samsung's failure to disclose IPR in the standards essential patents," but that it did not "allege sufficient facts to support a plausible inference that had Samsung disclosed its intellectual property rights to the SSO, a viable alternative technology performing the same functionality would have been incorporated into the UMTS standard, or the relevant functionality would not have been incorporated into the standard at all."  October 18, 2011 Order at 8-9.

　　　　In its Amended Counterclaims in Reply, Apple presents alternatives that the working group could have adopted to perform the same functionality as that performed by each Declared-Essential Patent asserted.  ACR at ¶ 58.  Additionally, Apple alleges that, since the working group knew of alternatives to Samsung's technologies, had it known that Samsung did not intend to license on FRAND terms the adopted patents, ETSI would not have adopted the standard because of the negative lock-in effect.  *Id.* at ¶¶ 198-99.  Through the presentation of viable alternatives to each Declared-Essential Patent, Apple's allegations that ETSI would have adopted a different

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

United States District Court
For the Northern District of California

technology had Samsung's rights been known at the time of the standard setting are more than mere conclusory statements and withstand Samsung's motion to dismiss.

Apple has cured the deficiencies identified in the October 18, 2011 Order with respect to its theories of anticompetitive conduct, and has otherwise stated a claim for a violation of Section 2 of the Sherman Act. Therefore, the Court DENIES Samsung's motion to dismiss Apple's twenty-eighth counterclaim in reply.

### B. Unfair Competition Law

Samsung moves to dismiss Apple's twenty-ninth counterclaim for violation of California's Unfair Competition Law ("UCL"). Mot. to Dismiss at 22-23. Because Apple has adequately alleged a violation of Section 2 of the Sherman Act, Apple has also stated a claim that Samsung's conduct violates the California UCL. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

Samsung also argues that to the extent Apple's UCL claim is based on Samsung's initiation of counterclaims for patent infringement, Apple's UCL claim is barred by California Civil Code 47(b). Mot. to Dismiss at 23. Section 47 states that "[a] privileged publication or broadcast is one made . . . [i]n any . . . (2) judicial proceeding." Cal. Civ. Code § 47(b). The absolute immunity created by Section 47 is not a mere defense but is a substantive rule of immunity which extinguishes the cause of action as a matter of law. *See Berman v. RCA Auto Corp.*, 177 Cal. App. 3d 321, 323–25 (1986).

In the context of judicial proceedings, the Section 47(b) privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). The absolute immunity created by Section 47 applies to all tort causes of action, "where the gravamen of the injury is predicated on the privileged publication of an injurious falsehood." *Gootee v. Lightner*, 224 Cal. App. 3d 587, 594 (1990). Thus, the California Supreme Court has recognized a difference between communications, which are actionable, and conduct, which is not. *See Kimmel v. Goland*, 51 Cal. 3d 202, 205 (1990) (Section 47(b) privilege "precludes recovery for tortiously

1    inflicted injury resulting from publications or broadcasts made during the course of judicial and

2    quasi-judicial proceedings, but does not bar recovery for injuries from tortious conduct regardless

3    of the purpose for which such conduct is undertaken."); *see also Microsoft Corp. v. A-Tech Corp.*,

4    855 F. Supp. 308, 314 (C.D. Cal. 1994) (citing *Pacific Gas & Elec. v. Bear Stearns & Co.*, 50

5    Cal.3d 1118, 1126 n.12 (1990)).

6          For example, in *Microsoft Corp. v. A-Tech Corp.*, the district court found that Section 47(b)

7    immunity did not bar claims for abuse of process and UCL where the counterclaims arose from an

8    *ex parte* application for a temporary restraining order freezing Defendants' assets.  855 F. Supp. at

9    314.  Instead, the Court found that "[t]he publication in [that] case, which [was] the ex parte

10   application requesting the asset freeze, [was] only being used to prove the abuse of process claim,

11   and is not the claim itself."  *Id.*  Thus, the district court determined that "the threat or extortion [of

12   the asset freeze], which in this case is the alleged deprivation of assets to prevent Defendants from

13   defending against Plaintiff's claim . . . is the heart of" the claim.  Thus, the district court

14   determined that the basis of the claim was conduct, and not communication, and thus was not

15   subject to Section 47(b) immunity.

16         Here, Apple references Samsung filing counterclaims in response to Apple's lawsuit.  The

17   basis of Apple's claim is not the publication or communication of the pleadings in Samsung's

18   counterclaims.  Rather Apple's claim is based on Samsung's allegedly extortionist conduct in

19   attempting to file a patent infringement suit, despite the fact that Apple either owns a license or has

20   a right to license on FRAND terms, Samsung's Declared-Essential Patents.  *See* ACR ¶ 2-7.  Thus,

21   Apple's UCL claim is not entitled to Section 47(b) immunity.

22         Accordingly, the Court DENIES Samsung's motion to dismiss Apple's twenty-ninth

23   counterclaim for violation of the UCL.

24         **C.  Breach of Contract and Declaratory Judgment**

25         Samsung moves to dismiss Apple's twenty-fifth and twenty-seventh counterclaims.  Mot. to

26   Dismiss at 14-20.  Apple's twenty-fifth counterclaim for breach of contract alleges that Samsung

27   entered into a contract with ETSI and its members; that Apple is an intended third party beneficiary

28   of the contract; and that Samsung breached the contract by "claiming infringement and seeking to

13

1  enjoin Apple from practicing the UMTS standard." ACR ¶¶ 180-182.  Apple claims that

2  Samsung's actions are a breach of the agreement because either: (1) "Apple is licensed to any valid

3  patents" covered by the ETSI policy statements, or in the alternative, (2) Apple "has the right to a

4  FRAND license to the Declared-Essential Patents by virtue of Samsung's FRAND commitments."

5  ACR ¶ 182.  As an independent breach of its contractual agreement with ETSI, Apple alleges that

6  Samsung failed to timely disclose its allegedly essential patents in accordance with the

7  requirements of the ETSI IPR Policy.  ACR ¶ 183.  Similarly, in Apple's twenty-seventh

8  Counterclaim, Apple seeks a declaratory judgment that Apple either: "[1] is licensed to Samsung's

9  Declared-Essential Patents by virtue of Samsung's FRAND commitments or, in the alternative, [2]

10 Apple has the irrevocable right to be licensed on FRAND terms under those patents." *Id.* at ¶ 195.

11 Because the declaratory judgment and breach of contract claims are overlapping – specifically with

12 respect to whether Apple (1) already has a FRAND license to Samsung's Declared-Essential

13 Patents; or (2) has the right to a FRAND license to the Declared-Essential Patents by virtue of

14 Samsung's FRAND commitments – the Court will analyze these two claims together.

15      The first issue is the appropriate law to apply to these claims.[1]  Apple argues that French

16 law applies by virtue of a choice of law provision in the ETSI policy provision.   Opp'n at 16-17.

17 In contrast, Samsung urges the Court to apply California law to the contract-related counterclaims.

18 Mot. to Dismiss at 15-18.  To decide whether French or California law controls, the court applies

19 the choice-of-law rules of California, the state in which it sits.  *See Klaxon Co. v. Stentor Elec.*

20 *Mfg. Co.*, 313 U.S. 487, 496 (1941).  In determining whether a choice of law provision is

21 enforceable under California law, a court first must determine: "(1) whether the chosen state has a

22 substantial relationship to the parties or their transaction, or (2) whether there is any other

23 reasonable basis for the parties' choice of law."  *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459,

24 466 (1992).  "If . . . either test is met, the court must next determine whether the chosen state's law

25 is contrary to a fundamental policy of California.  If there is no such conflict, the court shall

26 enforce the parties' choice of law." *Id.*

27
28

---

[1]  Apple argued at the hearing that there was no dispute that French law applies to Apple's contract claims.  However, it appears from the briefing that Samsung argued for application of California law.  In light of this ambiguity, the Court will first address the choice of law issue.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

1   Applying this standard, the choice of law provision in ETSI's IPR policy is applicable.  The

2   ETSI IPR Policy, which forms the basis of Apple's breach of contract counterclaims, includes a

3   provision that specifies that it "shall be governed by the laws of France."  ACR ¶ 54 (citing ETSI

4   IPR Policy Clause 12).  France has a substantial relationship to the transaction because ETSI is a

5   non-profit organization headquartered in France.  *Id.* ¶ 39.  Moreover, French law is reasonable

6   because the ETSI IPR Policy and Samsung's patent disclosures to ETSI are central to Apple's

7   contract claims.  Finally, it does not appear that French contract law is contrary to any fundamental

8   California policy.  The applicable law is general commercial contract law as applied to

9   sophisticated entities engaging in arms-length negotiations.  The issues raised do not implicate a

10  fundamental policy of the state.   Accordingly, French law is applicable to Apple's contract

11  counterclaims.

12        Samsung argues that Apple has not provided sufficient notice of its intent to rely on French

13  law and therefore French law should not apply to Apple's counterclaims.  Mot. to Dismiss at 14.

14  In support of its argument, Samsung relies on Federal Rule of Civil Procedure 44.1, which requires

15  that "[a] party who intends to raise an issue about a foreign country's law must give notice by a

16  pleading or other writing."  Fed. R. Civ. P. 44.1.  To determine whether a party has given

17  reasonable notice of its intent to invoke foreign law, a court considers: (1) the stage which the case

18  has reached at the time of notice; (2) the reason proffered by the party for the failure to give earlier

19  notice; and (3) the importance to the case as a whole of the issue of foreign law.  *See APL Co. Pte.*

20  *Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 955-56 (9th Cir. 2009).  In this case, Apple has given

21  notice of the applicability of French law to its breach of contract claims because the ACR

22  specifically indicates that the ETSI IPR Policy "shall be governed by the laws of France."  ACR ¶

23  54.  Apple included the same allegation regarding the breach of contract claim, and thus gave

24  notice of its intent to apply French law, in its initial counterclaims in reply filed in July 2011.

25  Apple's Answer and Counterclaims in Reply ¶ 51, ECF No. 124.  Indeed, it appears as though

26  Samsung was given adequate notice of Apple's intent, given that Samsung utilized its own French

27  law expert in its Motion to Dismiss the Amended Counterclaims.  Therefore, the Court finds that

28

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

1    Apple has given adequate notice of its intent to raise an issue about a foreign country's laws

2    pursuant to Federal Rule 44.1.

3         A court determining foreign law "may consider any relevant material or source, including

4    testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

5    Fed. R. Civ. P. 44.1.  "Although, pursuant to Rule 44.1, courts may ascertain foreign law through

6    numerous means, expert testimony accompanied by extracts from foreign legal materials has been

7    and will likely continue to be the basic mode of proving foreign law."  *Universal Sales Co., Ltd. v.*

8    *Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999) (citation omitted).  Both Apple and

9    Samsung have provided declarations from competing experts on French law regarding the

10   requirements for valid patent licenses.  Unsurprisingly, Samsung's expert, Mr. Remy Libchaber,

11   opines that Apple's contract claim is invalid under French law, while, Apple's expert, Professor

12   Nicolas Molfessis, disagrees.

13        After reviewing the declarations of both experts, as well as the supporting exhibits, several

14   general principles of French contract law are apparent.  Under French law a contract "is an

15   agreement by which one or several persons undertake, towards one or more other persons, to give,

16   to do or not to do something."  Libchaber Decl. ¶ 22.  Under French law, a valid contract requires:

17   (1) the consent of the parties; (2) capacity of the parties to enter into the contract; (3) a definite

18   object that constitutes the subject matter of the contract; and (4) consideration.  Molfessis Decl. ¶ 8.

19   The consent of the parties is by far the most important.  *Id.* ¶ 10; *see also* Libchaber Decl. ¶¶ 13-16.

20   The Court now turns to each of Apple's theories.[2]

21        *Apple's Theory of Breach of Contract to License*.  Apple's first breach of contract and

22   declaratory judgment theory is that Samsung has breached its contractual agreement with ETSI and

23   its members to license its Declared-Essential Patents on FRAND terms.  Apple's theory is that

24   Samsung entered into a contract with ETSI when it submitted its FRAND declarations, seeking to

25   have ETSI adopt Samsung's standard essential patents.  ACR ¶¶ 63, 65.  In so doing, Samsung

26

27   [2]  It is clear from the briefing and from oral argument that the central dispute between the parties is
     with regard to Apple's theory that it currently holds a patent license for Samsung's Declared-
     Essential patents.  Because Samsung challenges Apple's other breach of contract claims in its
28   briefing, the Court addresses those arguments here.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

agreed to be bound by ETSI IPR Policy Clause 6.1, which requires patent-owners to submit, in writing, that they are "prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory terms." *Id.* ¶ 63, 65, 52.  Apple claims that the contract between ETSI and Samsung required Samsung to license its patents on FRAND terms and that Samsung breached this contractual commitment with ETSI, and its members, when Samsung filed suit against Apple instead of licensing the patents to Apple on FRAND terms as Samsung had agreed to do.  *Id.* ¶ 182.

Under French law, a contract may be created between the association and its members, and among members of the association: "[a]n association is an agreement in which two or more people permanently combine their knowledge or activities for a purpose other than sharing profits.  Its validity is governed by the general legal principles applying to contracts and obligations."  Molfessis Decl. ¶ 49 (citing Article 1 of the July 1st 1901 French Act on Association Agreements).  According to Professor Molfessis, Article 1121 of the French Civil code permits "a party to enter into a binding obligation for the benefit of third parties."  *Id.* ¶ 66.  Thus, a third party beneficiary may sue to enforce the execution of a contract.  *Id.* ¶ 68.  Apple's theory is that Samsung's FRAND declarations establish a contract between Samsung and ETSI (and therefore all its members).  Under this contract ETSI agreed to adopt Samsung's patents in setting a standard, and in exchange, Samsung agreed to grant licenses on FRAND terms.  The agreement between Samsung and ETSI can plausibly be interpreted as granting Apple "the right to a FRAND license to the Declared-Essential Patents by virtue of Samsung's FRAND commitments."  ACR ¶ 182; *see also* Selwyn Decl., Ex. H at 1659 (Professor Boucobza, an expert in French law retained by Samsung in another proceeding, testified that "according to article 6.1, the holder of essential patent[s] needs to grant licenses, is obliged to grant licenses to the ETSI members which request it.").

Samsung argues that Apple's breach of contract theory is faulty because Samsung's ETSI declarations cannot be construed as binding "agreements to agree" to a license.  Samsung argues that "agreements to agree" conflict with the freedom to contract principle in French law.  Reply at 8; Libchaber Decl. ¶¶ 9-21; 108; 111.  As Professor Libchaber explained "no contract can be formed without one and another party to have wanted it, moreover against the will of one of the party [sic].  Everyone has the right to refuse to sell the goods he owns or to employ someone he

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

does not want.  The refusal to contract is a manifestation of freedom."  Libchaber Decl. ¶ 111

(internal citations and quotations omitted).  Even adopting Professor Libchaber's declaration of the

governing French law, it is not clear that Apple is not entitled to FRAND licenses pursuant to ETSI

IPR Policy 6.1 and Samsung's FRAND declarations.  Samsung arguably consented to enter into

FRAND licenses by submitting its FRAND declaration in order to have its patents adopted by the

standard setting organization.  Samsung certainly had the right to refuse to license its patents, but

arguably relinquished that right when it submitted its FRAND declaration.  At least at this stage,

the Court is not willing to say that Apple's theory fails under French law.

*Apple's Theory of Breach of Good Faith Negotiations*.  Both experts agree that under

French law, the parties can enter into a valid contract to negotiate in *good faith*.  *See* Mot. to

Dismiss at 20; Opp'n at 22 n.20; *see also* Libchaber Decl. ¶ 82; Molfessis Decl. ¶ 88.  Moreover,

both parties agree that Samsung's contractual obligation arising from its FRAND declarations to

ETSI at the very least created a duty to negotiate in good faith with Apple regarding FRAND

terms.  *See id.*  Samsung argues that Apple has not sufficiently pled a claim for breach of a contract

to negotiate.  Reply at 13-14.  The Court disagrees.

For example, Apple alleges that Samsung refused to quote licensing terms, and when it

finally did, those terms were not fair, reasonable and non-discriminatory.  ACR ¶¶ 76-77.  Apple

also alleges that Samsung's negotiation tactics were discriminatory and that Samsung retaliated

against Apple by instigating litigation and refusing to grant FRAND licenses when Apple asserted

its own non-standards essential patents against Samsung in this litigation.  ACR ¶¶ 182; 73-77.

These factual allegations sufficiently support a claim that Samsung has breached its duty to

negotiate FRAND terms in good faith.

Finally, it is worth noting that the two contractual theories explained above dovetail under

the particular circumstances of this case.  A reasonable inference can be drawn from Apple's

allegations that had Samsung negotiated in good faith and been willing to offer FRAND terms,

Apple would have accepted the offer and been granted a license.  Thus, Apple's allegations

regarding whether Samsung acted in good faith in the negotiation process overlap significantly

with its allegations that Samsung breached its alleged agreement to grant FRAND licenses.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

1    *Apple's Theory of Breach of the Agreement to Disclose IPR.*  As an independent theory of

2    liability, Apple also argues that Samsung breached its agreement with ETSI to timely disclose its

3    IPR to the standard setting organization.  *See* Opp'n at 16; ACR ¶ 183.  ETSI IPR Policy Clause

4    4.1 requires members to timely disclose IPR "which might be essential if that proposal is adopted."

5    ACR ¶ 51.  Samsung argues that "Apple's allegations fail to create a plausible inference that

6    Samsung's purported breach of its obligation to timely disclose its essential patents caused any

7    damage to Apple or any other party."  Mot. to Dismiss at 20.  However, Apple has alleged but for

8    Samsung's non-disclosures "alternative viable technologies would not have been excluded from

9    the relevant Input Technology Market."  ACR ¶ 58.  Moreover, according to Apple, Samsung's

10   failure to disclose has resulted in "increased costs, lower quality or innovation of Input

11   Technologies."  ACR ¶ 184.  Thus, Apple has sufficiently pled that Samsung's breach of the

12   ETSI's IPR disclosure policy has resulted in harm to Apple.

13       *Apple's Theory of Existing License.*  Finally, Apple alleges that it is presently licensed to

14   Samsung's Declared-Essential Patents, and that Samsung's decision to pursue this litigation is a

15   breach of the license.  *See, e.g.,* ACR ¶¶ 180-182; Opp'n at 17-19.  Apple's theory is that

16   Samsung's FRAND declaration constituted an offer under French contract law, and Apple's use of

17   the patented technology constituted valid acceptance of Samsung's offer.  Thus, Apple argues,

18   because the license already exists, the Court need only supply the FRAND royalty rate.  Under this

19   theory, Samsung breached the terms of the license when it brought the instant lawsuit for patent

20   infringement.

21       Samsung argues that Apple's theory fails as a matter of French law for several reasons: (1)

22   the license between Apple and Samsung has not been reduced to writing as is required pursuant to

23   Article 613-8 of the French Intellectual Property Code, (2) price is an essential term of the

24   formation of a binding license and no price was provided in the FRAND declaration, (3) under

25   French law, a patent license is personal in nature and the identity of the contracting party is an

26   essential term, (4) the purported license requires a firm offer with specific terms, which were not

27   included here, and (5) French law requires an acceptance, which Apple has failed to plead.  *See*

28   Mot. to Dismiss at 18-19; Reply at 9-13.

**United States District Court**
For the Northern District of California

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS

United States District Court
For the Northern District of California

Several of Samsung's arguments have merit.  First, there is no existing license between Apple and Samsung because there was no firm offer and acceptance of the terms of the license that Apple claims already exists.  Both experts agree that an offer and acceptance are essential to contract formation under French law, but disagree regarding its application in this case.  *See* Libchaber Decl. ¶ 70; Libchaber Reply Decl. ¶¶ 10-11; *see also* Molfessis Decl. ¶¶ 11-13.

Under French contract theory, "an offer must be specific enough for the contract to be formed by a simple acceptance of the person to whom the offer is communicated."  Libchaber Decl. ¶ 70.  At the hearing, the parties disagreed primarily as to whether French law requires a price term in order to create an enforceable license.  *See also* Molfessis Decl. ¶ 30 ("Absence of the determination of the price does not void the contract.  However, if the parties abuse their right to determine the price, it will only give rise to indemnities or to allow revocation.").  Even assuming, without deciding, that Apple is correct that French law does not require a price term, taken as a whole, it is not plausible that Samsung's FRAND declarations constitute an offer to license.  The FRAND declarations fail to specify not only the royalty rate, but also the duration of the license, as well as the geographic scope of the license.  Reply at 10.  Apple now argues that these terms can be implied: the geographic scope could be the geography covered by the patent, the duration can be the patent term, and the royalty rate can be supplied at a later date.  However, there is no indication that the FRAND declarations in fact imply all of these terms.  Instead, Samsung's FRAND declarations, merely state that Samsung was "prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory terms."  ACR ¶ 63.

Apple has also failed to establish acceptance by performance.  Professor Molfessis opines that "the idea of acceptance by way of performance of the offered contract is acknowledged as a general principle" of French contract law.  Molfessis Decl. ¶ 93.  While offer and acceptance may proceed as described by Apple, this theory is inconsistent with the ETSI IPR Policy and the FRAND declarations, and the subsequent conduct of Apple itself.  Samsung, as well as other ETSI members submitting FRAND declarations, state only that they are "prepared to grant irrevocable licenses."  These statements neither implicitly, nor explicitly establish that the offeree takes a license merely by adopting the standard and practicing the patented technology.  Nor is it plausible

20

that anyone who uses the technology has a preexisting license merely because an ETSI member submitted a FRAND declaration.  If this were the case, manufacturers and producers could utilize patented technology in silence without ever expressing acceptance or paying royalties.  Finally, additional allegations in the Amended Counterclaims belie Apple's allegations that it already has a license to Samsung's Declared-Essential Patents.  Apple alleges that it entered into negotiations with Samsung over a FRAND license and that "Samsung finally offered Apple a license to its Declared-Essential Patents on July 25, 2011."  ACR ¶ 77.  If Apple believed that it already owned a license, it is unclear why Samsung would be obliged to offer Apple a license.  Ultimately, it is not plausible that the parties consented to the arrangement that Apple claims is now in place.  *See* Molfessis ¶ 10; *see also* Libchaber Decl. ¶¶ 13-16.

Additionally, there is no written license between Apple and Samsung.  Both experts agree that under French Intellectual Property Code Article L. 613-8 a patent assignment or license must be executed in writing.  *See* Libchaber Decl. ¶ 54; Molfessis Decl. ¶ 109.  Professor Molfessis opines that the writing requirement does not apply to ETSI.  However, he fails to cite any direct authority for this proposition.  *See generally* Molfessis ¶ 109.  Thus, the Court is unpersuaded by his expert opinion on this point.  In this case, Samsung did provide a "writing" in the form of its FRAND declaration where Samsung agreed to be bound by ETSI IPR Policy Clause 6.1, and that it was "prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory terms."  *Id.* ¶ 63, 65, 52.  There is no indication that Samsung's FRAND declaration contains the necessary written agreement by Apple to abide by the terms of the purported license.  *See* Libchaber Decl. ¶ 54 (citing Article L. 613-8, § 5 of the Intellectual Property Code, "acts bearing a transfer or a license . . . must be acknowledged in writing, under penalty of nullity.").

In sum, Samsung's motion to dismiss the twenty-fifth and twenty-seventh counterclaims is DENIED.  However, Apple's theory that it has an existing license of Samsung's Declared-Essential Patents is implausible, and Apple may not proceed under this theory.

**D.  Promissory Estoppel**

Samsung moves to dismiss Apple's twenty-sixth counterclaim for promissory estoppel. Apple's promissory estoppel claim is likewise governed by French law.  Because Samsung made

United States District Court
For the Northern District of California

21

United States District Court
For the Northern District of California

1    its alleged promises in connection with its FRAND commitments to ETSI pursuant to the ETSI

2    IPR Policy, that agreement's choice-of-law clause governs Apple's promissory estoppel claim.

3    *PAE Government Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) (citing *Nedlloyd*

4    *Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992)); *see also Olinick v. BMG Entm't*, 138

5    Cal. App. 4th 1286, 1300 (2006) (choice-of-law clause applies to claims that are "inextricably

6    intertwined with the construction and enforcement" of the contract).

7          Promissory estoppel is not traditionally recognized under French law.  *See* Libchaber Reply

8    Decl. ¶¶ 51-55; Molfessis Decl. ¶ 52.  Although Professor Molfessis declares that the *Cour de*

9    *cassation* "will likely apply the principle [of estoppel] not only for procedural matters, but also

10   with regard to substantive issues," his description of French law is too speculative to be credited.

11   Molfessis Decl. ¶ 53.  Instead, the Court is persuaded by Professor Libchaber's explication

12   regarding French law on the matter.  Professor Libchaber explains that estoppel is a very narrow

13   concept that has been applied to prevent parties from contradicting themselves in procedural

14   matters in the same case.  *See* Libchaber Reply Decl. ¶ 53.  This view is consistent with the Court's

15   own independent review of French law.  *See Universe Sales Co. v. Silver Castle, LTD.*, 182 F.3d

16   1036, 1038 (9th Cir. 1999) (explaining that Federal Rule of Civil Procedure 44.1 allows a court to

17   conduct its own research in determining the correct relevant foreign law); David V. Snyder,

18   Comparative Law in Action: Promissory Estoppel, The Civil Law, and the Mixed Jurisdiction, 15

19   Ariz. J. Int'l & Comp. Law 695, 705 & n.47 (1998) ("promissory estoppel would not serve any

20   useful end, and it is consequently unknown to French law").  Thus, French law does not recognize

21   a substantive claim for promissory estoppel.

22         Accordingly, the Court GRANTS Samsung's motion to dismiss Apple's twenty-sixth

23   counterclaim for promissory estoppel.  As this counterclaim cannot be cured by amendment, it is

24   dismissed with prejudice.

25   **III.    CONCLUSION**

26         For the foregoing reasons, Samsung's motion to dismiss Apple's amended counterclaims in

27   reply is GRANTED, in part, and DENIED, in part.  Samsung's motion to dismiss Apple's

28   counterclaim for promissory estoppel is granted.  Additionally, Samsung's motion to dismiss

                                                22

Apple's counterclaim for breach of contract and declaratory judgment is granted to the extent that Apple claims that it has an existing license to Samsung's Declared-Essential Patents.  In all other respects, Samsung's motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: May 14, 2012

_____
LUCY H. KOH
United States District Judge

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS AMENDED COUNTERCLAIMS