1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

15

16                    UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 | APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK
19 | Plaintiff, |
20 | vs. | **SAMSUNG'S MOTION FOR CLARIFICATION REGARDING THE COURT'S MAY 4, 2012 ORDER (DKT NO. 898)**
21 | SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG |
22 | ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG | Date:   June 19, 2012
                                                                Time:   10:00 a.m.
23 | TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Place:  Courtroom 5, 4th Floor
                                                                               Judge:  Hon. Paul S. Grewal
24 | Defendants. |
25

26

27                    **PUBLIC REDACTED VERSION**

28

02198.51855/4750272.6

Case No. 11-cv-01846-LHK
SAMSUNG'S MOTION FOR CLARIFICATION REGARDING THE COURT'S MAY 4, 2012 ORDER

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 19, 2012, at 10:00 a.m., or as soon as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court for an order clarifying its order of May 4, 2012 (Dkt No. 898) concerning introduction of evidence of source code at trial.

In particular, Samsung seeks an Order clarifying that the May 4, 2012 Order permits Samsung to introduce at trial:

1. Versions of source code produced on or before December 31, 2011 as evidence of Samsung's design-around efforts; and
2. Evidence of design-arounds and non-infringing alternatives to the '381 and '163 patents other than source code produced after December 31, 2011.

## I. INTRODUCTION

On May 4, 2012, the Court entered an Order granting Apple's motion for sanctions relating to Samsung's production of source code after December 31, 2011, the deadline set by the Court for the production of the source code for the Samsung accused products. (Dkt. No. 898.) The Court—understanding that Samsung had not produced any source code by December 31, 2011 relating to its design-around efforts—precluded Samsung from "offering any evidence of its design-around efforts" for the '381, '163 and '891 patents. (*Id.* at 9.) However, the Order permits Samsung to rely "on the versions of code that were produced on or before December 31, 2011." (*Id.*)

Samsung brings this motion to clarify two aspects of the Order. First, as Apple admitted during the hearing on its motion for sanctions, Samsung produced source code prior to the Court's deadline that included the "blue glow" design-around to the '381 patent. Following the hearing, Samsung discovered that its timely production of source code on December 30, 2011 included the blue glow source code. Apple's experts inspected and printed this blue glow design-around source code within days of the Court's deadline, and relied on it in their expert reports. Thus, Samsung had in fact produced evidence of its design-around efforts in compliance with the Court's Order. Such timely-produced evidence was never the subject of Apple's motion, and Apple has no argument of prejudice based on this evidence. Samsung therefore seeks clarification that the Order permits Samsung to use at trial evidence of the blue glow source produced prior to December 31, 2011.

Second, Samsung seeks clarification that the Order is limited to source code produced after the December 31 deadline, as opposed to any evidence of design-arounds or non-infringing alternatives generally. For instance, Samsung provided timely interrogatory responses and other non-source code discovery identifying additional design-arounds and non-infringing alternatives that were not implemented into commercially released products prior to December 31. Because Apple has no legitimate claim that this discovery violated the Court's Order, Samsung should be entitled to introduce non-source code evidence—including physical evidence, publicly available products, discovery responses, documentary evidence, expert testimony, and admissions of

1  Apple's technical experts that alternatives do not infringe Apple's patents—relating to these

2  alternative technologies.  Apple's Motion never sought sanctions on such non-source code

3  evidence, and as a result it was not the subject of the briefing and hearing.

4       Samsung will fully comply with the Court's preclusive sanctions order, but respectfully

5  seeks clarification of the Court's Order to confirm that Samsung may offer timely-produced

6  source code or non-source code evidence produced during the course of discovery as evidence of

7  actual or potential ways to design around the '381, '163 and '891 patents.[1]

8  **II.    BACKGROUND**

9       On March 9, 2012, Apple filed a Rule 37(b) motion seeking an order precluding Samsung

10  from presenting, using or relying on any source code that was not produced by the December 31,

11  2011 deadline set by the December 22 Order.   (Dkt. No. 795.)   Apple's motion was based on its

12  asserted inability to prove infringement in later versions of the accused products, due to

13  Samsung's implementation of design-arounds to the '381, '163 and '891 patents.   (*Id.* at 5-6; *see*

14  *also* Declaration of Mark Tung In Support of Samsung's Motion for Clarification ("Tung Decl.")

15  Ex. 1 at 3:10-21.)   The Court granted Apple's Motion on May 4, 2012, concluding that

16  preclusive sanctions were warranted because Samsung's late production of design-around-related

17  source code "left [Apple's experts] with no meaningful opportunity to comprehend" Samsung's

18  design-arounds for the '381, '163 and '891 patents.   (Dkt. 898 at 8.)   The Court specifically

19  relied on Samsung's mistaken statement that it "did not produce any 'blue glow' [design-around]

20  source code until January 23, 2012."   (*Id.* at 5.)

21       At the April 24, 2012 hearing, Apple revealed that Samsung's December 30, 2011

22  production of source code for the Galaxy S II did in fact include source code for the blue glow

23  function.   (Tung Decl., Ex. 1 at 9: 1-9.)   Following the hearing, Samsung conducted a detailed

---

[1] Apple has recently indicated that it is no longer asserting the '891 patent at trial currently scheduled to begin on July 30, 2012.   (*See* Dkt. No 902 at 3.)   Judge Koh has directed the parties to enter a stipulation dismissing this and other claims without prejudice.   (Dkt. No. 912 at 2.)   Should Apple later re-assert the '891 patent, Samsung reserves the right to clarify the effect of the Order on its March 10, 2012 production of source code for its '891 design-around.

1          of its December 30 production of source code, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  (*Id.* ¶ 3.)   Samsung confirmed that its December 30 source code production for at least four accused products, running four different versions of the Android operating system, contained the blue glow function—not just the Galaxy S II, as Apple claimed.[2]   (*Id.*)   According to Samsung's source code inspection logs, Apple's experts inspected the blue glow source code on January 6, 2012, and received printouts of the code on January 9, 2012.   (*Id.*, Ex. 2.)

### III.   ARGUMENT

#### A.   Samsung Seeks Clarification That the Court's Order Permits Samsung to Introduce at Trial Evidence of Blue Glow Source Code Produced on or Before December 31, 2011.

The Order states that Samsung is permitted to rely "on the versions of code that were produced on or before December 31, 2011."   (Dkt. No. 898 at 9.)   However, the Order also provides that Samsung is precluded from "offering any evidence of its design-around efforts" for the '381 patent.   (*Id.*)   Read literally, these provisions could result in an inconsistency.   Samsung's timely production of source code, made available for Apple's inspection on December 30, included source code for the blue glow function as implemented in multiple accused products—including at least the Galaxy S II, Exhibit 4G, Epic 4G and Galaxy Tab 10.1.   (*Id.* ¶ 3.)   Apple's experts inspected this code on January 6, 2012, and Bates-stamped printouts of this code were in Apple's actual possession as early as January 9, 2012—two months before the close of discovery.   (*Id.* ¶ 4, Ex. 2.)   Apple's experts have had ample time to review the blue glow source code, and Apple has had every opportunity to conduct follow-on discovery—which it did by questioning numerous witnesses about the blue glow function.   (*See, e.g.,* Tung Decl, Ex. 3 at 58:23 – 59:22; Ex. 4 at 119:16 – 120:21; Ex. 5 at 116:24 – 118:16; Ex. 6 at 104:13 – 105:18; Ex. 7

---

[2]   Samsung's statement that it did not produce blue glow source code prior to December 31, 2012 referred to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓   (Tung Decl. ¶ 5.)

1   at 54:9 – 60:22, 69:25 – 70:13, 132:20 – 134:9, 203:25 – 204:12, 252:5 – 22.)   One possible

2   reading of the Order, however, arguably would preclude Samsung from relying on this source

3   code despite the fact that Samsung produced it to Apple in compliance with the Court Order.

4       Indeed, Apple has indicated that it interprets the Order broadly.   In deposing Dr. Michael

5   Wagner, Samsung's damages expert, Apple apparently took the position that "Samsung would not

6   be allowed to produce evidence regarding any actual implementation of blue glow at trial," *even if*

7   that evidence was produced prior to the Court's December 31 deadline.   (Tung Decl., Ex. 8 at

8   293:3 – 295:18.)   Samsung therefore requests that the Court clarify its Order to make clear that

9   Samsung is permitted to introduce evidence of its blue glow source code that was produced before

10  December 31 as evidence of its efforts to design around the '381 patent.

11      **B.   Samsung Seeks Clarification That the Court's Order Permits Samsung to Introduce at Trial Evidence of Design-Arounds Other Than Source Code**

12      **Produced After December 31, 2011.**

13      The Court's Order should be construed as only precluding evidence of source code that

14  Samsung produced after December 31, 2011—the conduct at issue in Apple's Motion and deemed

15  prejudicial by the Order.   Source code is not the only means of showing actual or potential

16  alternatives to the technology claimed by the '381 and '163 patents.   Samsung's discovery

17  responses, expert analysis and testimony, as well as the physical devices themselves are all non-

18  source code evidence of such alternatives.   While Samsung believes that the Court meant to limit

19  its Order to the source code at issue in Apple's Motion, one potential reading of the Order

20  suggests that Samsung will not be permitted to introduce *any* evidence of technical alternatives—

21  even non-source code evidence that Samsung timely produced to Apple, discovery that was not

22  subject to any court order, and/or alternatives that were not implemented in released products prior

23  to December 31.   Construing the Order to prelude all evidence of alternatives would far exceed

24  the relief requested by Apple, any plausible claim of prejudice, as well as the scope of the

25  sanctionable conduct   *Cf. Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir.2001) ("[s]anctions

26  may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery

27  order as long as the established issue bears a reasonable relationship to the subject of discovery

28  that was frustrated by sanctionable conduct.").   Thus, clarification of the Order is necessary.

02198.51855/4750272.6

-4-   Case No. 11-cv-01846-LHK

**SAMSUNG'S MOTION FOR CLARIFICATION REGARDING THE COURT'S MAY 4. 2012 ORDER**

### i. The '381 Patent

With respect to the '381 patent, source code is not necessary to determine whether the accused products infringe. Indeed, Apple's expert, Dr. Ravin Balakrishnan, admitted that source code is not necessary to determine whether the accused products infringe the '381 patent.[3] (*See, e.g.*, Tung Decl., Ex. 9 at 60:23 – 63:6, 133:16 – 134:18; Ex. 10 at 41:18 – 42:2, 121:1-14; Ex. 11 at ¶¶ 191, 197, 198, 210, 218.) During the preliminary injunction phase, Dr. Balakrishnan analyzed the blue glow function as implemented on physical products—without the benefit of source code—and testified that it did not infringe the '381 patent. (*Id.*, Ex. 9 at 166:12 – 167:21.) Moreover, Apple recently revealed that it never intended to rely on "all versions" of the source code—a fact that Apple withheld from this Court in the briefing and hearing on its Motion for Sanctions. (*See* Dkt. No. 902 at 3.) (stating Apple's intention to show infringement of *all* of its utility patents—not just the '381 and '163 patents—with "just four versions of Samsung's operating system software.") Rather, Apple contends that infringement "is apparent by observing the accused products in operation." (Dkt. No. 910 at 2.) If Apple can show infringement by relying on the physical devices themselves, then Samsung should be permitted to use the physical devices as evidence of the blue glow function.

Apple has known since very early in this litigation that the blue glow function has been or can be implemented into each accused product. Apple's expert analyzed the blue glow function *as early as August 2011*. (*Id.*, Ex. 9 at 166:12 – 167:21.) Likewise, Apple's counsel has known since at least November 29, 2011 that Samsung incorporated the blue glow function in each accused product. (Tung Decl., Ex. 14.)[4] In addition to the blue glow source code produced on

---

[3] Although Apple's expert testified that he based his report on physical samples of the accused products, Apple has repeatedly refused to make these devices available to Samsung for inspection. (Tung Decl., Exs. 12 – 13.) Without the opportunity to inspect the actual devices, Samsung cannot know how many of the samples relied on by Dr. Balakrishnan include the blue glow function.

[4] After Samsung's December 30, 2011 production of blue glow source code, Apple expressly relied on this evidence of the blue glow in moving to compel documents relating to Samsung's other design-around efforts. (Dkt. No. 613 at 8-9) ("Following the initiation of this
(footnote continued)

1  December 30, Samsung has timely produced ample evidence—physical product samples, change
2  logs, deposition testimony, discovery responses—showing the date which Samsung incorporated
3  the blue glow function into the accused products.   Accordingly, the first version of the stipulation
4  *that Apple itself drafted*—which included an express carve-out for the '381 patent—reflects the
5  fact that Apple was perfectly capable of determining that each product incorporates the blue glow
6  function, and that the release version of source code is not representative with respect to the '381
7  patent.   (*Id.*, Ex. 15.)   Apple cannot claim surprise in response to non-source code evidence that
8  the blue glow has been or can be implemented into each accused product.   Apple therefore
9  suffered no prejudice whatsoever in connection with blue glow, and certainly no prejudice that
10 would justify construing the May 4 Order to preclude any and all evidence of it—including timely
11 produced non-source code evidence.

       *ii.*      *The '163 Patent*

13 Samsung has timely disclosed to Apple numerous non-infringing substitutes to the
14 invention claimed by the '163 patent.   For example, in response to Apple's Interrogatory 16,
15 Samsung identified numerous alternatives—either known to Samsung or implemented by
16 Samsung—that do not infringe the '163 patent.[5]   (*Id.*, Ex. 16.)   With the exception of the
17 design-around source code produced on March 12, 2012, none of these alternatives existed in the
18 accused products prior to December 31.   Apple's expert, Dr. Karan Singh, testified that

---

lawsuit, Samsung attempted to design around Apple's '381 patent by incorporating a "blue glow"
functionality into its products as a substitute for the '381 patent's "rubber-banding" feature.")

[5]   These alternatives include 

(Tung Decl., Ex 16.)

1  alternatives disclosed in Samsung's response to Interrogatory 16—including "not translating a
2  web page so as to substantially center a second box on the touch screen display while a first box is
3  enlarged"—would not infringe the '163 patent.   (*Id.*, Ex. 17 at 162:15 – 168:5.)   Additionally,
4  Dr. Singh relies on documents produced to Apple on December 29, 2012 that show ████████
5  ████████████████████████████████████████████████████████████ (*See id.*, Ex. 18
6  at ¶ 281.)   The Court should clarify that the Order does not preclude such timely disclosed
7  evidence of non-infringing alternatives to the '163 patent.
8      Technical alternatives that have not been implemented—although irrelevant to Apple's
9  asserted need to show "continuing infringement"—are relevant to a host of issues.   For example,
10 a patentee must prove the absence of non-infringing substitutes in order to recover lost profits.
11 *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).   The
12 Federal Circuit has recognized that a non-infringing substitute defeats a claim to lost profits even
13 if the defendant has not actually implemented it—and even if the substitute is not on the market.
14 *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999).
15 Courts have likewise held that the potential to avoid infringement by developing and
16 implementing non-infringing substitutes is relevant to the determination of a reasonable royalty.
17 *See, e.g., Panduit Corp.*, 575 F.2d at 1160-62; *Parker-Hannifin Corp. v. Champion Labs., Inc.*,
18 2008 WL 3166318, at *16 (N.D. Ohio, Aug. 4, 2008) ("Also probative is what defendant would
19 have spent to design around the patent and launch its own non-infringing product and how quickly
20 that design could be implemented.")   Finally, Samsung's later development of non-infringing
21 alternatives to the '163 patent may also be relevant in the context of proceedings to enforce any
22 permanent injunction that is ultimately entered in this case.   *Semitool, Inc. v. Dynamic Micro Sys.*
23 *Semiconductor Equip. GMBH*, 2005 WL 350954, at *1 (N.D. Cal. Feb. 14, 2005).   The Court
24 should clarify that the Order only precludes Samsung from relying on the design-around source
25 code produced on March 12, 2012, and that Samsung remains free to raise non-source code
26 evidence of other substitutes for purposes other than establishing liability for infringement.
27 **IV.   CONCLUSION**
28

For the foregoing reasons, Samsung respectfully requests the Court to clarify that pursuant to its May 4, 2012 order (Dkt No. 898), Samsung's is permitted introduce at trial:

1. Versions of source code produced on or before December 31, 2011 as evidence of Samsung's design-around efforts; and
2. Evidence of design-arounds and non-infringing alternatives to the '381 and '163 patents other than source code produced after December 31, 2011.

DATED: May 15, 2012                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Victoria F. Maroulis*
    Charles K. Verhoeven
    Kevin P.B. Johnson
    Victoria F. Maroulis
    Michael T. Zeller
    Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC