# EXHIBIT 32

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

APPLE INC., a California corporation,

Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Counterclaim-Plaintiffs,

v.

APPLE INC., a California corporation,

Counterclaim-Defendant.

Civil Action No. 11-CV-01846-LHK

# Expert Report of Richard L. Donaldson, Esq.

**March 22, 2012**

**CONTAINS APPLE AND SAMSUNG ATTORNEYS' EYES ONLY INFORMATION**

royalty—whether settled on by the parties during arms-length negotiations or determined by a court—will make it whole in the event of infringement and that it would be a breach the FRAND commitment to seek an injunction against a standard implementer. During my career at TI, I encountered no licensing negotiation counterparty that held a contrary view.

G. Intel's Sales of Chipsets to Apple Are Authorized Under Samsung's Declared Essential Patents

104. For purposes of this analysis, I have assumed the following facts, which were provided to me by Apple:

- Intel Mobile Communications GmbH ("IMC") is a wholly owned subsidiary of Intel Corporation.
- Intel Americas Inc. ("Intel Americas") is a wholly owned subsidiary of Intel Corporation.

- [redacted]
- [redacted]
- [redacted]

105. Based on my experience in drafting and negotiating patent license agreements, including in the telecommunications industry, [redacted] It is quite common in the telecommunications industry for chipset suppliers to sell their components through subsidiaries; [redacted] In addition, in my experience, any patent licensing professional would have expected [redacted]

106. Similarly, agreements authorizing the sale of chipsets or other components are extremely common in the telecommunications and computing [redacted] Moreover, a supplier of downstream products such as a mobile phone handset or tablet computer would not expect to pay royalties for a component that it understood to be licensed [redacted] due to well-understood principles of patent exhaustion.

[redacted] [redacted]

107. [redacted] Many large companies have distribution chains that involve using subsidiaries to sell their products. For example, a company may have subsidiaries operating in many different countries under the

control of the main company. If the licensee wants to avoid limiting its options for distributing products it is authorized to sell, it may seek a license that permits it to sell the licensed products through whatever channel it wishes. In my experience, the purpose of explicitly authorizing "indirect" sales is to permit sales where title changes hands more than once before reaching the ultimate customer, such as sales through wholly-owned sales or distribution subsidiaries.

108. [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

111. In my experience, licensing negotiators are well aware of the doctrine of patent exhaustion and consider its effects when negotiating licenses. [redacted] Provisions under which a licensor authorizes a supplier of components to sell to downstream product suppliers and thereby exhaust the licensor's patent rights are extremely common in the telecommunications and computing industries. Indeed component suppliers typically insist on such provisions so that they can sell components to downstream customers and assure those customers that they need not obtain their own license from the patent-holder that has licensed the component supplier. [redacted]

## V. Trial Exhibits

112. If called as a witness at trial, I may rely on visual aids and demonstrative exhibits that demonstrate the bases of my opinions. Examples of these visual aids and demonstrative exhibits may include, for example, interrogatory responses, deposition testimony and deposition exhibits, as well as charts, or diagrams.

113. Other than as referred to in this report, I have not yet prepared any exhibits for use at trial as a summary or support for the opinions expressed in this report, but I expect to do so in accordance with the Court's scheduling orders.

## VI. Previous Testimony and Compensation

114. My previous trial and deposition testimony is set forth in my resume, attached as Appendix A.

115. I am compensated for my time at the rate of $475 for each hour of service that I provide in connection with this case. That compensation is not contingent upon my performance, the outcome of the case, or any issues involved in or related to this case.

## VII. Supplementation of Opinions

116. I reserve the right to adjust or supplement my analysis in light of any critique of or comments on my report or alternative opinions advanced by or on behalf of Samsung.

Richard L. Donaldson (signature) — 3/22/12

Richard L. Donaldson, Esq. — March 22, 2012