1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California  94065-2139
8  Telephone:     (650) 801-5000
   Facsimile:     (650) 801-5100

9
   Michael T. Zeller (Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS CO.,
   LTD., SAMSUNG ELECTRONICS AMERICA,
14 INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

15

16                 UNITED STATES DISTRICT COURT

17        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18

19 APPLE INC., a California corporation,          CASE NO. 11-cv-01846-LHK

20              Plaintiff,                         **SAMSUNG'S NOTICE OF MOTION AND
                                                   MOTION TO STRIKE EXPERT
21        vs.                                      TESTIMONY BASED ON UNDISCLOSED
                                                   FACTS AND THEORIES;
22 SAMSUNG ELECTRONICS CO., LTD., a               MEMORANDUM OF POINTS AND
   Korean business entity; SAMSUNG                AUTHORITIES IN SUPPORT THEREOF**
23 ELECTRONICS AMERICA, INC., a New
   York corporation; SAMSUNG
24 TELECOMMUNICATIONS AMERICA,                     **Date**:   June 26, 2012
   LLC, a Delaware limited liability company,      **Time**:   10:00 a.m.
25                                                 **Place**:  Courtroom 5, 4th Floor
              Defendants.                          **Judge**:  Hon. Paul S. Grewal
26
                                                   **FILED UNDER SEAL**
27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF ...................... 1

I.     PRELIMINARY STATEMENT .............................................................. 1

II.    STATEMENT OF RELEVANT FACTS ...................................................... 2

       A.     Apple's Initial Disclosures and Infringement Contentions ..................... 2

       B.     Apple's Experts Rely on Facts That Were Withheld in Discovery ............ 4

              1.     Dr. Michel Maharbiz .......................................................... 4

              2.     Mr. Peter Bressler ............................................................ 4

              3.     Dr. Susan Kare ................................................................ 5

              4.     Dr. Sanjay Sood .............................................................. 6

              5.     Dr. Tony Givargis ............................................................ 6

              6.     Dr. Ravin Balakrishnan ...................................................... 6

              7.     Terry Musika .................................................................. 7

              8.     Russell Winer .................................................................. 8

       C.     Apple's Experts Assert Undisclosed Theories on Infringement ............... 10

              1.     Dr. Michel Maharbiz ......................................................... 10

              2.     Dr. Tony Givargis ............................................................ 10

III.   ARGUMENT AND CITATION OF AUTHORITY ......................................... 11

       A.     Apple's Nondisclosure of Critical Facts Violates the Federal Rules of Civil
              Procedure and the Case Management Order ................................... 11

       B.     Apple's Untimely Assertion of New Infringement Contentions Violates the
              Patent Local Rules, the Federal Rules of Civil Procedure, and the Court's
              Case Management Order ...................................................... 14

       C.     Apple's Failure to Comply with the Federal Rules of Civil Procedure, the
              Patent Local Rules, and the Court's Scheduling Order Is Neither Harmless,
              Nor Justified .................................................................. 15

              1.     Samsung Suffered Significant Prejudice from Apple's Conduct ............. 16

              2.     Samsung Is Unable to Cure the Prejudice Caused by Apple's
                     Conduct ....................................................................... 17

        3.    Likelihood of Disruption of the Trial ........................................................ 17

        4.    Apple's Failure to Disclose Was Willful ................................................... 17

IV.    CONCLUSION ............................................................................................................. 18

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Ash v. Ford Motor Co.*,
  2008 WL 1745545 (N.D. Miss. Apr. 11, 2008) ...................................................10

*Avago Techs. Gen. IP Ltd. v. Elan Microelectronics Corp.*,
  2007 WL 2433386 (N.D. Cal. Aug. 22, 2007) ......................................................7

*DCG Sys. v. Checkpoint Techs., LLC*,
  2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ......................................................7

*Dollar v. Long Mfg., N. C., Inc.*,
  561 F.2d 613 (5th Cir. 1977).................................................................................10

*Dominguez v. Excel Mfg., Inc.*,
  2010 WL 5300863 (N.D. Cal. Dec. 20, 2010) ...................................................5, 9

*Guifu Li v. A Perfect Day Franchise, Inc.*,
  2012 WL 929784 (N.D. Cal. Mar. 19, 2012) ......................................................4, 5

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*,
  2006 WL 463549 (N.D. Cal. Feb. 23, 2006)...........................................................8

*InterTrust Techs. Corp. v. Microsoft Corp.*,
  2003 WL 23120174 (N.D. Cal. Dec. 1, 2003) ........................................................7

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009).............................................................................9

*MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*,
  2004 WL 5363616 (N.D. Cal. Mar. 2, 2004) ........................................................7

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
  2009 WL 3353306 (N.D. Cal. Oct. 16, 2009) ........................................................8

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006).............................................................................8

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)...............................................................................9

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011).............................................................................9

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
  796 F. Supp. 2d 1025 (N.D. Cal. 2011) ................................................................8

*Von Brimer v. Whirlpool Corp.*,
  536 F.2d 838 (9th Cir. 1976).............................................................................4, 5

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001).................................................................................5, 9

**Statutes**

Fed. R. Civ. P. 26 .........................................................................................1, 3, 4, 6, 8

Fed. R. Civ. P. 37 ...............................................................................................3, 4, 5, 9

**Miscellaneous**

Patent Local Rule 3–1 ............................................................................................3, 22

Patent Local Rule 3–6 ..............................................................................................22

Patent Local Rule 3–7 ..............................................................................................22

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, June 26, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung")  will, and hereby does, move the Court for an order striking portions of Apple's expert reports that rely on previously undisclosed facts or that assert new theories of infringement or invalidity.

This Motion is made pursuant to Fed. R. Civ. P. 26 and 37, and Patent Local Rules 3-1 and 3-3, and is made on the grounds that Apple expert reports rely on facts and theories that Apple improperly failed to disclose during discovery, causing prejudice to Samsung in its ability to prepare for trial.

This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declarations of Diane C. Hutnyan, Christopher E. Price, Jeffrey Johnson, and James J. Ward dated May 17, 2012, together with all accompanying exhibits, all pleadings on file in this action, and such other evidence or argument as may be presented at or before the time this Motion is deemed submitted by the Court, and such matters of which this Court may take judicial notice.

1  DATED: May 17, 2012                QUINN EMANUEL URQUHART &
2                                      SULLIVAN, LLP

3

4                                      By /s/ Victoria F. Maroulis
                                          Charles K. Verhoeven
5                                         Kevin P.B. Johnson
                                          Victoria F. Maroulis
6                                         Michael T. Zeller

7                                      Attorneys for SAMSUNG ELECTRONICS CO.,
8                                      LTD., SAMSUNG ELECTRONICS AMERICA,
                                       INC. and SAMSUNG
9                                      TELECOMMUNICATIONS AMERICA, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

2 | **I.       PRELIMINARY STATEMENT**

3 |        Although the Federal Rules of Civil Procedure and the Patent Local Rules establish clear
4 | guidelines for the disclosure of contentions and facts supporting expert opinions, Apple has failed
5 | to comply with both in this case.  Apple's experts have widely relied on materials that were never
6 | produced to Samsung during fact discovery, and cited evidence that Samsung saw for the first
7 | time when it reviewed the expert reports.

8 |        Dr. Maharbiz, Apple's technical expert on its '607 patent, [REDACTED].   But Apple
9 | refused to disclose even the very existence of these tests until it was impossible for Samsung to
10 | investigate critical facts relating to them and the conclusions reached.  Likewise, Dr. Balakrishnan,
11 | another one of Apple's patent infringement experts, examined Samsung devices to reach his
12 | infringement opinion on Apple's '381 patent.  However, not only could he not name what version
13 | of the relevant software he examined, neither he nor Apple *ever* produced the devices he examined
14 | for review by Samsung.    In a similar way, Apple's failure to disclose licensing agreements that
15 | its damages expert, Mr. Musika, relied on in his report deprived Samsung of any ability to test
16 | Apple's conclusory representations about its licensing agreement payments, and has left Samsung
17 | with no ability to investigate or properly rebut his conclusions on reasonable royalties, a central
18 | plank in any reasonable royalty analysis.  Apple has kept this critical information from Samsung
19 | despite unambiguous obligations to produce it under the Federal Rules and the Court's Scheduling
20 | Order, all to Samsung's prejudice.

21 |        Apple has similarly deviated from the Patent Local Rules' requirement that infringement
22 | contentions be disclosed well in advance of the close of discovery.  For example, Dr. Maharbiz
23 | offers a theory of infringement that was not disclosed in Apple's infringement contentions.  Apple
24 | experts have also disclosed non-infringement and infringement theories that were not disclosed in
25 | response to Samsung interrogatories.  For example, Apple's expert on Samsung's '711 patent
26 | introduced an entirely new non-infringement theory that was not disclosed in response to a
27 | Samsung interrogatory seeking all such theories.  Rather than follow the rules, Apple chose to
28 | disclose new infringement theories after the close of fact discovery.  But if infringement

1   contentions can be changed at will after the close of fact discovery, then parties have every

2   incentive to invert the discovery process, and delay the assertion of true theories until after fact

3   discovery closes for strategic gain.  This is the exact path Apple chose to follow.

4          Apple's conduct is a clear violation of a host of discovery rules that set out unambiguous

5   obligations to make discovery an orderly matter.  Adherence to these rules is even more critical in

6   a highly expedited proceeding like this one.  Because Apple has violated its discovery obligations

7   under the applicable Federal Rules of Civil Procedure and the Patent Local Rules, and presented

8   novel facts from *eight* experts and two entirely new contentions that have never before been

9   disclosed to Samsung, all to Samsung's extreme prejudice, the Court should strike those portions

10  of Apple's expert reports that rely on the previously undisclosed facts and purport to assert new

11  theories regarding invalidity or infringement.

12  **II.     STATEMENT OF RELEVANT FACTS**

13         **A.     Apple's Initial Disclosures and Infringement Contentions**

14         Apple was obligated under the Federal Rules, the Patent Local Rules, and the Court's

15  Scheduling Order to disclose all relevant facts and contentions to Samsung pursuant to the

16  following schedule:

17       •     August 26, 2011:  Apple serves its infringement contentions

18       •     March 8, 2012:  Fact discovery closes

19       •     March 22, 2012 and April 16, 2012:  Experts serve their reports and rebuttals,

20             respectively, based on the disclosed facts.

21  Dkt. No. 187 (Aug. 25, 2011 Scheduling Order); *see* Fed. R. Civ. P. 26(a); Patent Local R. 3-1.

22         These rules exist to ensure that the parties will not be sandbagged with last-minute

23  disclosures or game-changing alterations in theories of the case.  *See* Fed. R. Civ. P. 37(c)(1) (any

24  party "fail[ing] to provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to

25  use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

26  Similarly, Patent Local Rule 3-1 explicitly requires that parties identify all infringement

27  contentions they intend to assert by no later than 14 days after the Case Management Conference.

28  The parties cannot change their contentions without seeking leave of Court and showing good

1  cause.  *See* Patent Local R. 3-1, 3-3, 3-6 ("Amendment of the Infringement Contentions [] may be

2  made only by order of the Court upon a timely showing of good cause.").

3      Apple served its infringement contentions in August 2011.  (*See* May 17, 2012 Ward

4  Declaration ("Ward Dec."), Ex. A (Apple's Disclosure of Asserted Claims & Infringement

5  Contentions, Aug. 26, 2011).)  These contentions purported to set forth how Samsung's devices

6  allegedly infringe Apple's patents.  (*See id.*, Ex. A, at 2 (listing which "Accused Instrumentalities"

7  infringe Apple's asserted patents).)  By August 26 of last year, Apple's disclosures should have

8  laid out the entirety of its arguments in this case.

9      In addition, Samsung served Apple with detailed requests for production ("RFP") and

10  interrogatories.  For example, Samsung's RFPs sought:

11  •   For each person You intend to rely on as an expert witness, all DOCUMENTS concerning
12      . . .  (d) each and every DOCUMENT the expert has reviewed or relied upon in
        formulating his or her opinion and each and every DOCUMENT the expert will assert
13      supports each of his or her opinions and each fact; and (e) all reports prepared by the
        expert.  (RFP No. 47.)

14
15  •   All DOCUMENTS concerning the infringement or non-infringement of any of the claims
        of any of the APPLE IP by any entity or person.  (RFP No. 122.)

16  •   All DOCUMENTS regarding any instrumentalities that APPLE contends or has contended
17      infringe any of the APPLE IP.  (RFP No. 123.)

18  •   All DOCUMENTS and things relating to APPLE'S analysis, consideration, or evaluation
        of whether any SAMSUNG product, device, apparatus, method, process, or system
19      infringes any of the APPLE IP, including, without limitation, all documents and things
        concerning any test, evaluation, or reverse engineering of any SAMSUNG product, device,
20      apparatus, method, process, or system.  (RFP No. 127.)

21
    (Ward Dec., Ex. B (Samsung's First Set of Requests for Production to Apple, Aug. 3, 2011).)
22
    Samsung's Interrogatories were similarly detailed, requiring that Apple:
23
24  •   IDENTIFY all facts RELATING TO studies, including formal or informal analysis,
        investigation, surveys, focus groups, consumer research, or other information or reports
25      that relate to, support, or refute YOUR claims in this action, including, for each such study,
        when it was commissioned, conducted, and completed, by whom it was conducted, and its
26      conclusions.  (Interrogatory No. 16.)

27  (Ward Dec., Ex. C (Samsung's First Set of Interrogatories to Apple, Aug. 3, 2011).)
        Apple's responses to these and Samsung's other discovery requests should have disclosed
28

1    all of the facts upon which Apple's experts base their opinions.  Expert opinions were submitted

2    *after* the close of fact discovery because they depend on facts disclosed *during* fact discovery.

3    **B.      Apple's Experts Rely on Facts That Were Withheld in Discovery[1]**

4         Apple's experts rely on a host of facts that were not disclosed during fact discovery,

5    despite being directly responsive to Samsung's discovery requests.  Many of these facts serve as

6    the foundation for their opinions.  The first time that Samsung saw these materials was when

7    Apple's experts used them in their reports or discussed them during their deposition.

8              **1.    Dr. Michel Maharbiz**

9         On March 22, 2012, Apple served Dr. Maharbiz's report, which contains his infringement

10   opinions on Apple's '607 patent.  [REDACTED]

11        Even though the SEM Reports are responsive to numerous discovery requests (*see, e.g.*,

12   Ward Dec., Ex. B (RFP Nos. 47(d), 97, 122, 123, 127)), nowhere in any of its disclosures or

13   discovery responses did Apple ever mention [REDACTED].  Apple also failed to disclose the

14   [REDACTED]in its Infringement Contentions.  Indeed, even as late as March 9, 2012 – one day

15   after the close of fact discovery and *the date that appears on the* [REDACTED] – Apple served

16   corrected amended interrogatory responses to Samsung's Interrogatory Nos. 16 and 18, which still

17   did not disclose the existence of the [REDACTED].  (Ward Dec., Ex. E (Apple's Corrected

18   Amended Objections and Responses to Samsung's Interrogatory Nos. 4, 6, 7, 16, 17, 18 (dated

19   March 9, 2012).)

20             **2.    Mr. Peter Bressler**

21        Mr. Bressler's March 22 report on infringement opines on the [REDACTED].  The devices

22   that Mr. Bressler and Apple consider to be commercial alternatives are the central thrust of his

_____

24        [1]   Samsung's motion is filed in reliance on the eventual formal stipulation of dismissal of
25   certain claims, pursuant to Apple's Statement Identifying Claims It Will Assert at Trial.  (Dkt. No.
     907 (filed May 7, 2012).)  Other Apple experts rely on undisclosed materials and assert novel
26   theories in their reports, but those experts' opinions are for claims that Apple states that it intends
     to "drop."  If, however, Apple does not "drop" those claims, as it has indicated, Samsung reserves
27   the right to revise this motion to seek preclusion of any additional report that improperly asserts an
     opinion.

28

1  report, and form the basis for any opinion that Apple's products [REDACTED].  Samsung's RFP

2  No. 127 sought "[a]ll DOCUMENTS and things relating to APPLE'S analysis, consideration, or

3  evaluation of whether any SAMSUNG product, device, apparatus, method, process, or system

4  infringes any of the APPLE IP, including, without limitation, all documents and things concerning

5  any test, evaluation, or reverse engineering of any SAMSUNG product, device, apparatus, method,

6  process, or system.  (Ward Dec., Ex. B.)  Yet Apple never disclosed numerous devices during

7  discovery that Mr. Bressler considered to be adequate for comparison, including:

8         •    [REDACTED]

9         Apple never disclosed any of these devices to Samsung, nor did it amend any of its

10  discovery responses in order to provide a proper basis for its expert's opinion.

11         In addition, Interrogatory No. 72 required Apple to state fully and in detail all facts

12  supporting its contention of design patent infringement.  (Ward Dec., Ex. G (Samsung's Fourth

13  Set of Interrogatories to Apple, Feb. 7, 2012).)  [REDACTED].

14              3.    Dr. Susan Kare

15         Apple retained Dr. Kare to opine on possible alternative designs to Apple's design patents.

16  [REDACTED]  Samsung's interrogatories clearly requested that Apple "fully and in detail [state]

17  all facts that support YOUR contention as to the non-functionality of any claimed feature, element,

18  or combination of features and elements."  (Ward Dec., Ex. G (Interrogatory No. 68).)  Yet Apple

19  never produced or disclosed any of the following devices that Dr. Kare relies upon:

20         •    [REDACTED]

21         (Ward Dec., Ex. I at ¶ 53, 54 and 62.)   Dr. Kare also discusses Samsung icons that Apple

22  has never before identified as being subject to a trademark or trade dress claim.  [REDACTED]

23  Samsung's Interrogatory Nos. 70-71 requested that Apple, for all Apple trade dress and Apple

24  trademarks "state fully and in detail all facts that support YOUR contention that SAMSUNG is

25  diluting or has diluted such trade dress," as well as "all facts that support YOUR contention that

26  the SAMSUNG product or product packaging is likely to cause confusion, cause mistake, or

27  deceive consumers as to the affiliation, connection, or association of SAMSUNG with APPLE, or

28  as to origin, sponsorship, or approval by APPLE of SAMSUNG'S goods, services or commercial

1   activities." (Ward Dec., Ex. G.)   Apple never identified any of these icons as being disputed, and

2   indeed never noted them at all until Dr. Kare's report.

3                           4.     Dr. Sanjay Sood

4         Dr. Sood's report expresses opinions [REDACTED].  To support his opinions, Dr. Sood

5   relies heavily on surveys he conducted concerning consumer purchases of basic household items,

6   such as tape dispensers and wall clocks.  [REDACTED]  Yet Apple has *never* produced either the

7   questions in the survey questionnaires or the questionnaires themselves.  [REDACTED].  Without

8   the survey questionnaires and responses, Samsung is greatly prejudiced in its ability to challenge

9   Dr. Sood's opinions regarding [REDACTED] and his application of those opinions to the products

10  at issue in this lawsuit.

11        Apple's disclosures and discovery responses do not identify these materials, nor did Apple

12  ever inform Samsung that its expert would rely on them.

13                          5.     Dr. Tony Givargis

14        Dr. Givargis's March 22 [REDACTED].  Yet, this document was never listed anywhere in

15  Apple's Invalidity Contentions on the '711 patent, despite the fact that the contentions list many

16  other materials [REDACTED].

17                          6.     Dr. Ravin Balakrishnan

18        The '381 patent covers the "bounceback" feature, where the screen appears to "bounce"

19  when a user attempts to scroll past the edge of the viewable area of an electronic document on the

20  display.  (Ward Dec., Ex. P (Balakrishnan Report, March 22, 2012, at ¶ 45).)  Dr. Balakrishnan

21  examined 27 Samsung products to determine whether they infringed the '381 patent.   Dr.

22  Balakrishnan's product examination was one of the primary bases for his conclusions as to

23  whether Samsung's products infringed the '381 patent, and the only physical inspection of devices

24  that took place.  (*Id.* at ¶¶ 14-19.)   Apple has refused to make these devices available for

25  inspection.  [REDACTED]  In response to Samsung's request for inspection of the examined

26  products, Apple has provided only version numbers of the Android OS [REDACTED] running on

27  the inspected devices, which is an insufficient basis by itself to determine how the accused

28  "bounceback" functionality behaves on the actual devices Dr. Balakrishnan relied upon.

1    [REDACTED]  However, the Samsung Galaxy S (i9000), running the same version of Android,

2    does not exhibit the same functionality.  (*See* May 17, 2012 Declaration of Jeffrey Johnson, at ¶¶

3    4-7.)

4              7.    <u>Terry Musika</u>

5                   (a)    <u>Licensing Information</u>

6          Apple's damages expert, Terry Musika, relies on Apple's production of licensing

7    information to opine on Apple's reasonable royalty damages.  Mr. Musika also relies on Apple

8    licensing information in his rebuttal report, to criticize the reasonably royalty rate conclusions of

9    Samsung's damages expert, Dr. Vincent O'Brien.  (Ward Dec., Ex. T (Musika Report, March 22,

10   2012, at ¶¶ 169-80); Ex. U (Musika Rebuttal Report, Apr. 16, 2012, at ¶ 29, 43-45, 69-69).)  Yet

11   Apple failed to timely produce the licensing information which underlies Mr. Musika's opinions;

12   obstructed Samsung's discovery efforts into Apple's licensing practices; and cherry picked the

13   licensing information that Mr. Musika relies on.

14         Samsung made extraordinary efforts to obtain all relevant licensing agreements from

15   Apple.  Samsung's RFPs required the production of, among other things:

16         •    "All DOCUMENTS relating to or evidencing any Licenses, or the negotiation
                thereof, relating to the APPLE ACCUSED PRODUCTS or the technology claimed
17              or disclosed by the SAMSUNG PATENTS-IN-SUIT."

18         •    "All licenses in which You have received or conveyed rights under a patent relating
                to the APPLE ACCUSED PRODUCTS."  (Ward Dec., Ex. B (RFP No. 9); *id.*
19              (RFP No. 11).)[2]

20         [REDACTED]  This was the version of the licensing chart available to Samsung when it

21   deposed Apple's Rule 30(b)(6) witness on certain licensing issues and royalty payments, Mark

22   Buckley, on February 23.  [REDACTED]

23

24   _____

25         [2]    Samsung also served Interrogatory No. 6, which requires identification of "any and all
     persons to whom YOU have ever licensed or offered to license, or persons who have requested to
26   license, or to whom YOU have granted or offered to grant any other rights under the patent, trade
     dress, or trademark, including the status of those requests and offers, whether continuing,
27   successful, or terminated, and identify (by Bates number) all DOCUMENTS RELATED to any
     such license, offer, request, or other grant of rights."  (Ward Dec., Ex. C (Interrogatory No. 6).)
28

1    Despite repeated requests, Apple refused to make its Rule 30(b)(6) licensing witness

2   available to address these late produced, inconsistent, and ambiguous charts.  (Price Dec., at ¶ 4,

3   Exs. B at 2, E at 3, F at 3.)

4    By its own admission, Apple has also refused to produce [REDACTED] even though Mr.

5   Musika relies on one such license in his reasonable royalty analysis.[3]

6    [REDACTED] it is also clear that Apple has failed to make a full production of patent

7   licenses related to the Accused Products.  [REDACTED]

8    Even with these grossly belated disclosures, however, Apple's production is still

9   incomplete.  According to media accounts, Apple entered into patent license agreements with Cliff

10  Island LLC and/or Digitude Innovations, transferring up to a dozen patents from Apple to

11  Digitude.  This includes at least two feature patents related to the Accused Products, U.S. Patent

12  No. 6,208,879 (Mobile Information Terminal Equipment and Portable Electronic Apparatus) and

13  U.S. Patent No. 6,456,841 (Mobile Communication Apparatus Notifying User Of Reproduction

14  Waiting Information Effectively).[4]  [REDACTED]

15                    (b)    Manufacturing Capacity

16    Mr. Musika also relies on [REDACTED] prepared by Mark Buckley, Apple's Rule

17  30(b)(6) witness on manufacturing capacity.  [REDACTED]  (Ward Dec., Ex. T, at Exhibit 3, at

18  45 (citing [REDACTED], listed as exhibits 15 and 16 to Mark Buckley Deposition).)

19  [REDACTED]  Apple has not produced these materials, nor has their underlying factual basis

20  been disclosed to Samsung.

21                    8.    Russell Winer

22    In Sections VII through X of his March 22, 2012 report, Dr. Winer offers numerous

23  opinions on Apple's trade dress, including fame and distinctiveness (Sections VII and VIII),

---

25    [3] [REDACTED]  These licenses are attached to the Price Declaration as Exs.  FF and GG.

26    [4] "Apple Made A Deal With The Devil (No, Worse: A Patent Troll)", accessed on May 10,

27  2012  at  http://techcrunch.com/2011/12/09/apple-made-a-deal-with-the-devil-no-worse-a-patent-troll/; "Apple partners with patent troll Digitude Innovations — and wow, what a deal", accessed

28  on May 10, 2012, at http://venturebeat.com/2011/12/10/apples-patents-digitude-innovations/.

likelihood of infringement (Section IX) and likelihood of dilution (Section X).  But the opinions he offers are based on facts and theories that were not disclosed in response to Samsung's contention interrogatories on these very same issues.

For example, Interrogatory No. 71 sought all "facts that support YOUR contention that the SAMSUNG product or product packaging is likely to cause confusion, cause mistake, or deceive consumers as to the affiliation, connection, or association of SAMSUNG with APPLE, or as to origin, sponsorship, or approval by APPLE of SAMSUNG'S goods, services or commercial activities."  (Ward Dec., Ex. G.)  Although Apple's responses never disclosed that it would do so, Dr. Winer advanced the following theories and alleged facts to support his opinions on trade dress infringement:

- Consumers' post-sale personal experiences with and public exposure to Apple products.  (Ward Dec., Ex. W (Winer Report at ¶¶ 101, 105, 107, 108, 141 and 143).)

- [REDACTED]

- Competition between Samsung and Apple products for the same market share, in connection with the second *Sleekcraft* factor.  (*Id.* at ¶¶ 96, 111, 112, 114-116, 147-151.)

- Alleged instances of consumer confusion, in connection with the third and fourth *Sleekcraft* factors (*Id.* at ¶¶ 154 and 157.)

- Marketing and sale of Samsung and Apple products in the same channels, including retail stores where both Samsung and Apple products are sold, and the relative placement of Apple and Samsung products in stores and on websites, in connection with the second and fifth *Sleekcraft* factors.  (*Id.* at ¶¶ 123, 124, 158 and 159.)

- Product price and the sophistication of and degree of care exercised by consumers, in connection with the sixth *Sleekcraft* factor.  (*Id.* at ¶¶ 127-130 and 160.)

- Details regarding the look of Samsung phones and tablets prior to the release of the Galaxy line of smartphones and tablets, and internal Samsung documents referencing the iPhone and iPad, in connection with the seventh *Sleekcraft* factor.  (*Id.* at ¶¶ 132 -138 and 163-165.)

Similarly, although Interrogatory No. 70 required Apple to identify all facts that supported its "contention that SAMSUNG is diluting or has diluted such trade dress," Dr. Winer puts forth facts and theories that were never disclosed to support his opinions on trade dress dilution:

- Consumers' post-sale interactions with Apple products, in connection with second and fourth likelihood of dilution factor.  (*Id.* at ¶¶ 171 and 181.)

- [REDACTED]

- Alleged instances of consumer confusion, in connection with the sixth likelihood of dilution factor.  (*Id.* at ¶ 185.)

Finally, Dr. Winer offers facts and theories to support his opinions regarding consumer recognition and fame of the trade dress, including [REDACTED].  (*Id.* at ¶ 92.)  Yet Apple never disclosed these facts or theories, despite the clear language of Samsung's Interrogatory No. 69, which requested "the date on which YOU contend such trade dress and trademark became famous and acquired secondary meaning and state fully and in detail all facts that support YOUR contention that such trade dress and trademark became famous and acquired secondary meaning as of that date."  (Ward Dec., Ex. G.)

## C.   Apple's Experts Assert Undisclosed Theories on Infringement

In addition to citing undisclosed facts as support for their opinions, Apple's experts have asserted entirely novel positions on the alleged patent infringement of Samsung's products and the supposed invalidity of Samsung's patents, presenting opinions that never appeared in its August 26, 2011 Infringement Contentions or its October 10, 2011 Invalidity Contentions.

### 1.   Dr. Michel Maharbiz

Apple is asserting claim 8 of the '607 patent against Samsung.  (*See* Dkt. No. 907 (Apple's Statement Identifying Claims It Will Assert at Trial, at 2).)  This claim requires a "virtual ground charge amplifier."  In its Infringement Contentions for claim 8, Apple merely asserted that "the specific circuit elements performing this [virtual ground charge amplifier] function will be identified in discovery."  (Ward Dec., Ex. A (Ex. 17).)  During the course of discovery and to this day, Apple has never sought leave to amend its Infringement Contentions to identify any circuitry that corresponds to the "virtual ground charge amplifier" limitation in claim 8.

[REDACTED]  The Atmel documentation and deposition testimony Dr. Maharbiz relies upon were not contained in Apple's contention disclosures and Apple never sought leave to amend its Infringement Contentions to identify the Atmel documentation or testimony.

### 2.   Dr. Tony Givargis

[REDACTED]

1    In short, Apple's experts have asserted opinions based on facts that were never disclosed in

2 seven months of discovery.

3 III.    **ARGUMENT AND CITATION OF AUTHORITY**

4    A.    **Apple's Nondisclosure of Critical Facts Violates the Federal Rules of Civil**

5        **Procedure and the Case Management Order**

6    Apple's failure to produce or disclose facts upon which its experts rely, and its failure to

7 adhere to its announced theories on infringement and invalidity, violate the Federal Rules of Civil

8 Procedure, the Patent Local Rules, and the Court's Scheduling Order.  *See, e.g.*, Fed. R. Civ. P.

9 26(a)(1)(A)(ii); Fed. R. Civ. P. 26(e).

10    It is axiomatic that any nondisclosure of facts is a violation of the Federal Rules of Civil

11 Procedure.  *See, e.g.*, Fed. R. Civ. P. 26(a)(1)(A)(ii); Fed. R. Civ. P. 26(e).  A party that "fails to

12 provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to use that information

13 or witness to supply evidence on a motion, at a hearing, or at a trial."  Fed. R. Civ. P. 37(c)(1).

14 Failure to obey a Case Management Order is also improperwhen the Order requires the parties to

15 complete fact discovery and disclosure of all infringement theories by a date certain (*i.e.*, the fact

16 discovery cutoff date) especially in a case like this one where Apple has insisted on an expedited

17 schedule.  *See Von Brimer v. Whirlpool Corp.,* 536 F.2d 838, 843 (9th Cir. 1976) (finding that

18 district court properly excluded evidence under Fed. R. Civ. P. 37(b)(2) for failure to comply with

19 pre-trial orders); *Guifu Li v. A Perfect Day Franchise, Inc.,* 2012 WL 929784, at *18-19 (N.D.

20 Cal. Mar. 19, 2012) (precluding parties from introducing at trial documents requested during the

21 course of discovery that were not produced by the discovery cut-off date).  Indeed, courts do not

22 hesitate to punish a party that sandbags their opponent with new and undisclosed facts by

23 precluding the offending party from using the challenged portions of a report, or even by striking

24 the an entire report, irrespective of its importance.  *See, e.g.*, *Yeti by Molly, Ltd. v. Deckers*

25 *Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001) (it was not an abuse of discretion to exclude

26 an improperly disclosed expert report, even where "the district court made it much more difficult,

27 perhaps impossible for [the sanctioned party] to rebut [the other party's] damages calculations").

28    Unsurprisingly, improper expert disclosures are prejudicial and harmful, turning discovery

1  into a game of "blind man's bluff."  Failure to disclose an expert witness or provide the required

2  information can result in exclusion of the expert witness "unless the failure was substantially

3  justified or is harmless."   Fed. R. Civ. P. 37(c)(1); *Dominguez v. Excel Mfg., Inc.,* 2010 WL

4  5300863, at *5 (N.D. Cal. Dec. 20, 2010).   Rules 37(b) and (d) apply these preclusive sanctions

5  equally where a party has failed to sufficiently answer interrogatories.   Fed. R. Civ. P.

6  37(b)(2)(A), 37(d)(1).   In addition, the Court's Case Management Order required Apple to submit

7  its Initial Disclosures and Infringement Contentions on August 26, 2011, and complete all fact

8  discovery by March 8, 2012.   Failure to comply with a Case Management Order may result in

9  Rule 37 sanctions.  *See Von Brimer,* 536 F.2d at 843; *Guifu Li*, 2012 WL 929784, at *18-19.

10      During the seven months of discovery in this case, Apple has failed to identify, produce, or

11  disclose many materials relied upon by its experts, including facts, witnesses, documents, or

12  things.  Instead, Apple waited until the deadline for its expert reports – well after the close of fact

13  discovery – to ambush Samsung with new evidence and studies that it has concealed for strategic

14  gain.   Because of Apple's gamesmanship, Samsung has had no meaningful opportunity to

15  investigate or respond to these improperly assertions of undisclosed facts, so any opinion that

16  relies on them should be stricken.

17      For example, the portions of Dr. Maharbiz's report that rely on [REDACTED] are entirely

18  improper and illustrate why opinions based on undisclosed facts should be stricken.  Not only did

19  Apple fail to disclose that its expert would rely on such reports, it failed to disclose the very

20  existence of these [REDACTED], the underlying facts, and the results.   These Reports were

21  generated by a third-party, [REDACTED].   Samsung and its expert, however, never had an

22  opportunity to inspect the site where the testing took place, the Samsung devices that were

23  allegedly tested, the equipment used during testing, whether such equipment was properly

24  calibrated, etc.   Nor did Samsung have an opportunity to depose the author(s) of the

25  [REDACTED] or the individuals that conducted the tests to determine if they were properly

26  qualified and performed the testing with proper equipment and under proper conditions.   The

27  nondisclosure of the [REDACTED] evidences a complete disregard for Rule 26 obligations, and

28  places Samsung at a substantial disadvantage by having no meaningful opportunity to test the

1  validity of those Reports.

2        The [REDACTED] and all of the underlying facts and analyses are clearly responsive to at

3  least Samsung RFP No. 127, which seeks  "[a]ll DOCUMENTS and things relating to APPLE'S

4  analysis, consideration, or evaluation of whether any SAMSUNG product, device, apparatus,

5  method, process, or system infringes any of the APPLE IP, including, without limitation, all

6  documents and things concerning any test, evaluation, or reverse engineering of any SAMSUNG

7  product, device, apparatus, method, process, or system." (Ward Dec., Ex. B.)  The [REDACTED]

8  and all of the underlying facts and analyses are also responsive to Samsung's Interrogatory No. 16,

9  which sought information concerning any infringement analysis conducted on Samsung's

10 products. (*See* Ward Dec., Ex. C.)  The Court's Case Management Order established March 8,

11 2012 as the deadline for the completion of fact discovery, and the fact that Apple's consultant

12 conveniently dated the Reports March 9 does not alter Apple's disclosure obligation.   Apple

13 should have disclosed the [REDACTED] as part of fact discovery in accordance with the Federal

14 Rules of Civil Procedure and the Court's Case Management Order.

15       A complete response to RFP No. 127 or compliance with Rule 26(e) would have mandated

16 disclosure of the undisclosed materials relied upon by Apple's other experts as well.  Mr. Bressler,

17 for example, relies on examples of "alternative devices" to substantiate his opinions.  (*See* Ward

18 Dec., Ex. F, at 16-47 (conducting comparative analysis).)  As such, these materials should have

19 been disclosed well before the close of discovery.   Apple's failure to do so was improper, and

20 those portions of the reports that rely on these alternatives should be stricken, as should those

21 similarly offending portions of the expert reports identified in Part II.B.  *See, e.g.*, *Avago Techs.*

22 *Gen. IP Ltd. v. Elan Microelectronics Corp.,* 2007 WL 2433386 (N.D. Cal. Aug. 22, 2007)

23 (striking portions of an expert report that "did not merely use [an] undisclosed reference to explain

24 other invalidating prior art, but also relied on the undisclosed reference itself").

25       Finally, Apple's refusal to timely and completely produce its licensing agreements is

26 frankly outrageous, and the haphazard, late, and inconsistent character of Apple's licensing

27 disclosures violate discovery rules.  Apple's flagrant discovery abuse has deprived Samsung of its

28 ability to properly formulate its position on damages and rebut Mr. Musika's opinions.

The rules governing discovery are clear: facts must be disclosed if they are to be relied upon by experts, and failure to disclose facts properly and timely warrants remedial action by the Court.  Here, any opinion based on undisclosed facts meets that standard, and the Court should excise the offending portions of Apple's expert reports or strike them entirely.

**B.** **Apple's Untimely Assertion of New Infringement Contentions Violates the Patent Local Rules, the Federal Rules of Civil Procedure, and the Court's Case Management Order**

The Patent Local Rules provide for a "streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in its absence.  These rules require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed.  They provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *DCG Sys. v. Checkpoint Techs., LLC,* 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) (Grewal, M.J.) (internal quotation omitted); *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.,* 2004 WL 5363616, at *4 (N.D. Cal. Mar. 2, 2004) (internal quotations omitted).  "The overriding principle of the Patent Local Rules is that they are designed to make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *InterTrust Techs. Corp. v. Microsoft Corp.,* 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003).  The Patent Local Rules "requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006).  Any deviation from the announced infringement and invalidity contentions without an appropriate amendment under Rule 3-7 "deprives [the opposing party] of the notice to which it [is] entitled." *Volterra Semiconductor Corp. v. Primarion, Inc.,* 796 F. Supp. 2d 1025, 1043 (N.D. Cal. 2011).

Here, Dr. Maharbiz sets forth an entirely new and undisclosed infringement theory for claim 8 of the '607 patent based on Atmel documentation and testimony that was not disclosed in

Apple's Infringement Contentions.   Apple never sought leave to amend its Infringement Contentions pursuant to Patent Local Rule 3-6 to include this theory.  Accordingly, all portions of Dr. Maharbiz's expert report relating to this new theory of infringement should be stricken pursuant to Patent Local Rule 3-1.  Likewise, Dr. Maharbiz relies on a new interpretation of a claim element and offers previously undisclosed support for this new interpretation.  Additionally, Dr. Givargis spends substantial time discussing "MP3 Modes" and "Springboard" and Dr. Winer provides an entirely new explanation for the secondary meaning of Apple's products – yet these theories were clearly responsive to Samsung's interrogatories.  *See supra* Part II.C.

This Court has consistently stricken infringement theories and claims asserted for the first time in expert reports.  *See, e.g., Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2009 WL 3353306, at *3 (N.D. Cal. Oct. 16, 2009) (striking newly asserted claims that were first raised outside the discovery period and without leave of the Court); *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 2006 WL 463549, at *14 (N.D. Cal. Feb. 23, 2006) (striking new infringement claims because the standard for amendment of contentions was not met).  It should do so here as well.

### C.   Apple's Failure to Comply with the Federal Rules of Civil Procedure, the Patent Local Rules, and the Court's Scheduling Order Is Neither Harmless, Nor Justified

Failure to provide the disclosures mandated by Fed. R. Civ. P. 26 can result in exclusion of the expert witness "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *Dominguez,* 2010 U.S. Dist. LEXIS 137582, at *5.  Rules 37(b) and (d) apply these preclusive sanctions equally where a party has failed to sufficiently answer interrogatories.  Fed. R. Civ. P. 37(b)(2)(A), 37(d)(1).  The burden of proving an excuse is on the party facing sanctions. *See Yeti,* 259 F.3d at 1107.  The four factors courts consider in evaluating harmlessness and justification are: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."  *Dominguez,* 2010 U.S. Dist. LEXIS 137582 at *5.  Because all of these factors support Samsung's motion, the portions of

1    Apple's experts' reports which rely upon and cite undisclosed facts or which assert novel

2    infringement or invalidity theories should be stricken.

3                    1.       Samsung Suffered Significant Prejudice from Apple's Conduct

4              Apple's patent licensing agreements are highly relevant to the *Georgia-Pacific* analysis.

5    *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326-32 (Fed. Cir. 2009).   The Federal

6    Circuit has increasingly emphasized the importance of a full and rigorous evaluation of a party's

7    licensing agreements and practices to determining a reasonable royalty.   In *Lucent Technologies,*

8    580 F.3d at 1329, the court rejected a damages award based on a reasonable royalty rate analysis

9    because the plaintiff failed to prove that the licenses underlying the analysis were "sufficiently

10   comparable."   In *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860 (Fed. Cir. 2010), the Federal

11   Circuit held that evidence of royalty rates from licenses that lacked a relationship to the claimed

12   invention could not form the basis of a reasonable royalty calculation.   The following year, the

13   Federal Circuit rejected the "25% rule," holding that "there must be a basis in fact to associate the

14   royalty rates used in prior licenses to the particular hypothetical negotiations at issue in the case."

15   *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).

16             Here, Apple's haphazard, inconsistent, untimely and incomplete production of licensing

17   information – producing eight different versions of its [REDACTED]; failing to produce, timely

18   or at all, all relevant licenses; and refusing to make its Rule 30(b)(6) licensing witness available

19   for further deposition – has impaired Samsung' ability to undertake a full analysis of Apple's

20   comparable licenses and licensing practices.   It has also allowed Apple to "cherry pick" the data

21   relied on by Mr. Musika, allowing him to rely on patent and non-patent licenses beneficial to

22   Apple, while shielding a fair and full inquiry into Apple's licensing agreements and strategies.

23             Regarding the other experts, had Apple properly amended its contention disclosures,

24   Samsung would not have been deprived of its right to conduct directed discovery and prepare for

25   trial with knowledge of Apple's theory of the case.   Instead, Apple has strategically used new

26   materials and shifted its contentions to gain a competitive edge.   "There is a necessary element of

27   gamesmanship which applies in discovery, but parties must act in the spirit of discovery.   The

28   parties' mutual knowledge of all the relevant facts is a prerequisite for proper litigation."   *Ash v.*

1    *Ford Motor Co.,* 2008 WL 1745545 (N.D. Miss. Apr. 11, 2008) (*citing Dollar v. Long Mfg., N. C.,*

2    *Inc.,* 561 F.2d 613, 616 (5th Cir. 1977)).

3                    2.      Samsung Is Unable to Cure the Prejudice Caused by Apple's Conduct

4            At this point in the case, Samsung can do nothing to cure the prejudice caused by Apple's

5    concealment of facts and changing positions on infringement and invalidity.  Samsung cannot now

6    commission new expert reports to rebut Apple's alleged findings.    Furthermore, as explained

7    above, Samsung cannot now take discovery to verify the accuracy, reliability, and validity of the

8    new facts and analyses contained within Apple's expert reports.  Nor can Samsung effectively

9    alter its strategy, at this late date, to correspond to Apple's entirely new infringement and

10   invalidity contentions.

11                   3.      Likelihood of Disruption of the Trial

12           At Apple's request, this case is proceeding under an accelerated schedule, with dispositive

13   motions due on May 17, and trial set to begin on July 30.  Discovery is complete and it is simply

14   too late for Samsung to take full discovery on undisclosed facts, conduct any of its own tests or

15   analyses based on these new materials, incorporate information learned into its experts' opinions

16   and trial strategy, and prepare supplemental expert reports.  Apple has known that the trial date

17   could not be disrupted, and failed to disclose its facts and contentions knowing Samsung would

18   not have the opportunity to respond.  That the trial date cannot be changed emphasizes why there

19   is no way for Samsung to cure the prejudice caused by Apple's late disclosures.

20                   4.      Apple's Failure to Disclose Was Willful

21           Apple's failure to substantively respond to Samsung's discovery requests can only be

22   construed as purposeful concealment of critical evidence in bad faith.  The undisclosed facts upon

23   which Apple relies are not new, and most have been available for some time.  For example, Apple

24   concealed the very existence of the SEM Reports – allegedly completed one day after the close of

25   fact discovery – that Dr. Maharbiz relies upon in his report, despite every opportunity and

26   obligation to disclose them even after the cutoff.   Indeed Apple has produced hundreds of

27   thousands of pages after the cutoff.  Mr. Musika relied on licensing agreements that Apple has

28   readily available in its licensing database, and on representations that Apple's production of patent

1  licensing information was complete, when in fact it was not.  Apple's failure to disclose much of

2  the basis for its experts' reports, as well as its decision to make last-minute changes regarding

3  infringement and invalidity theories were clearly "willful."

4  **IV.    <u>CONCLUSION</u>**

5          For the forgoing reasons, at least those portions of Apple's expert reports that rely on

6  undisclosed facts or assert novel theories, which are listed with particularity in Samsung's

7  accompanying Proposed Order, are improper, prejudicial, and should be stricken.

8

9

10  DATED: May 17, 2012                    Respectfully submitted,

11                                         QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
12

13

14                                         By /s/ Victoria F. Maroulis
                                           _____
15                                              Charles K. Verhoeven
                                                Kevin P.B. Johnson
16                                              Victoria F. Maroulis
                                                Michael T. Zeller
17
                                                Attorneys for SAMSUNG ELECTRONICS CO.,
18                                              LTD., SAMSUNG ELECTRONICS AMERICA,
                                                INC. and SAMSUNG
19                                              TELECOMMUNICATIONS AMERICA, LLC

20

21

22

23

24

25

26

27

28