# EXHIBIT F

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

APPLE INC., a California corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

Case No.    11-cv-01846-LHK

**EXPERT REPORT OF PETER W. BRESSLER, FIDSA**

13

14

15

16

17

18

19

20

21

**\*\*CONFIDENTIAL – CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT TO A PROTECTIVE ORDER\*\***

22

23

24

25

26

27

28

1   iPhone 4 Trade Dress, the iPhone Trade Dress, the iPad Trade Dress, and the iPad 2 Trade Dress.

2   In general, I understand that my task is to review materials and to provide teaching and opinions

3   regarding the non-functionality of the above trade dress.

4        16.    I expect to testify at trial regarding the D'889, D'087, D'677, and D'270 Patents

5   and whether Samsung's Galaxy Tab 10.1[1], Galaxy S i9000, Galaxy S 4G, Infuse S 4G, Vibrant,

6   Galaxy S II (Epic 4G Touch), Galaxy S II (T-Mobile), Galaxy S II (AT&T), Galaxy S II

7   (Skyrocket), Galaxy S II (i9100), the Mesmerize, Fascinate, and Galaxy S Showcase, Galaxy Ace

8   (collectively, the Accused Products) infringe the D'889, D'087, D'677, and/or D'270 Patents,

9   including the matters discussed in this Report and in any supplemental or rebuttal reports or

10   declarations that I may prepare.  I also expect to testify about the context of the D'889, D'087,

11   D'677, and D'270 Patents, the progression of the designs preceding and following the designs

12   disclosed in the D'889, D'087, D'677, and D'270 Patents, and the state of the art both before and

13   after filing each of the D'889, D'087, D'677, and D'270 Patents.  I also expect to testify at trial

14   regarding which Apple products embody the D'889, D'087, D'677, and D'270 Patents.  I also

15   expect to testify with respect to the non-functionality of industrial design aspects of the Original

16   iPhone Trade Dress, the iPhone 3G Trade Dress, the iPhone 4 Trade Dress, the iPhone Trade

17   Dress, the iPad Trade Dress, and the iPad 2 Trade Dress.  I also expect to testify with respect to

18   matters addressed by any expert(s) testifying on behalf of Samsung.  I may also testify on other

19   matters relevant to this litigation if asked by the Court or by the parties' counsel.

20        17.    My analysis is based on the current design of Samsung's Accused Products.  I

21   reserve the right to modify my analysis if Samsung modifies the design of its Accused Products.

22        18.    I further reserve the right to supplement my Report if and when Samsung produces

23   additional documents or other information that affect my analysis.

24        19.    I bill my time at a rate of $400.00 dollars per hour.  My compensation is in no way

25   contingent upon the outcome of the case.

26

27

28

---

[1] Hereinafter, the Galaxy Tab 10.1 refers to both the WiFi and LTE versions.

1  affects the cost and quality of the article." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d

2  837, 843 (9th Cir. 1987).

3        32.     I understand that in determining functionality, a product's trade dress must be

4  analyzed as a whole, and not by its individual elements. *Fuddruckers*, 826 F.2d at 842

5  ("functional elements that are separately unprotectable can be protected together as part of a trade

6  dress"). "The fact that individual elements of the trade dress may be functional does not

7  necessarily mean that the trade dress *as a whole* is functional." *Clicks Billiards, Inc. v.*

8  *Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (emphasis in original).

9        33.     I understand that courts generally consider four factors in assessing the

10  functionality of a trade dress:

11        (1) Whether the design yields a utilitarian advantage;

12        (2) Whether alternative designs are available;

13        (3) Whether advertising touts the utilitarian advantages of the design; and

14        (4) Whether the particular design results from a comparatively simple or inexpensive

15  method of manufacture.

16  *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).

17  **VII.    BACKGROUND OF THE PATENTS AND APPLE'S ICONIC DESIGNS**

18        34.     Apple's iPhone design is distinctive and universally recognized. Its elegant bezel,

19  unique edge-to-edge glass front surface, and refined facial features introduced a striking new icon

20  to the field of design. The iPhone's distinctive bezel and front face are embodied in the D'087

21  and D'677 Patents. The iPod touch builds on the iPhone design and is embodied in the D'270

22  Patent. Apple's iPad design is no less iconic with its elegant lines and distinctive edge-to-edge

23  glass front surface. The iPad 2 is embodied in the D'889 Patent. [2]

24

25

26        [2] I understand that Samsung knew of the asserted Apple design patents by no later than August 4, 2010. On
    that day, Bruce Sewell and Chip Lutton, counsel for Apple, met Samsung's K.J. Kim and Seung Ahn in Seoul and
27  made a presentation that accused Samsung of copying the design of Apple's products. *See* July 26, 2011 C. Lutton
    Dep. 38:20-40:3, 48:2-49:18; APLNDC00001103-1125 (presentation).

28

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
10

1   one million devices,[36] and it hit the two million and three million marks within 60 days[37] and in

2   80 days,[38] respectively.  During the first quarter of fiscal year 2012, Apple sold 15.43 million

3   iPads.[39]

4   **VIII.   APPLE'S ASSERTED DESIGNS**

5         **A.      The D'889 Patent**



23   [36] Apple Press Info, "Apple Sells One Million iPads," May 3, 2010,
24   http://www.apple.com/pr/library/2010/05/03Apple-Sells-One-Million-iPads.html.

25   [37] Apple Press Info, "Apple Sells Two Million iPads in Less Than 60 Days," May 31, 2010,
     http://www.apple.com/pr/library/2010/05/31Apple-Sells-Two-Million-iPads-in-Less-Than-60-Days.html.

26   [38] Apple Press Info, "Apple Sells Three Million iPads in 80 Days," June 22, 2010,
     http://www.apple.com/pr/library/2010/06/22Apple-Sells-Three-Million-iPads-in-80-Days.html.

27   [39] Apple Press Info, Apple Reports First Quarter Results," Jan. 24, 2012,
28   http://www.apple.com/pr/library/2012/01/24Apple-Reports-First-Quarter-Results.html.

46.     The D'889 Patent is directed toward the ornamental design of an electronic device as shown in Figures 1–9 (reproduced above).[40]

47.     The design disclosed in the D'889 Patent is embodied by Apple's iPad 2.  The iPad 2 derives its distinctive appearance among tablet designs from a combination of elements including the uninterrupted transparent surface that extends all the way to the perimeter, a uniform black mask surrounding the active area of the display, evenly curved corners, a substantially flat back, and the appearance of a metallic rim surrounding the front surface.  This group of elements is distinctive in terms of visual impression.

48.     Based on my review of CAD renderings cited in Apple's Response to Samsung's Interrogatory No. 1, I understand that the D'889 Patent was conceived of and reduced to practice at least as early as September 3, 2003.  The CAD renderings are found at APLNDC00014225-228.

**B.     No Element of the D'889 Patent Is Dictated by Function**

49.     It is my experience as a designer that practical considerations such as the physical properties of objects, manufacturing costs and processes, and the intended use of the product, do not eliminate the potential for innovative industrial design.  Although such practical considerations help to focus the work of the designer, they invariably leave significant space for creative and aesthetic design choices.  The industrial designer's job is to use practical considerations as a creative springboard to design beautiful and appealing products that perform the functions required of them.

50.     In this connection, it is my understanding that Apple considered alternative tablet designs that were different from the D'889 Patent.  CAD renderings and photographs of prototypes of some such alternative designs are depicted at APLNDC-Y0000149044-45 and APLNDC-Y0000149048-49, Exhibits 7-9 to the Reply Declaration of Christopher Stringer in

---

[40] In this report, I have scaled images of the D'889, D'087, D'677, and D'270 Patents, the prior art, alternative designs, Apple Products, and the accused products so that they correspond with one another.  Care has been taken not to change the proportional relationship (i.e., aspect ratio) of the images.

1   Support of Apple's Motion for a Preliminary Injunction, and Exhibits 8-12.[41]  Based on testimony

2   from Apple industrial designers and product designers, it is my understanding that it would have

3   been feasible for Apple to pursue alternative designs to the commercially released version of the

4   iPad or iPad 2, though Apple elected not to do so for aesthetic reasons. *See, e.g.*, Dec. 1, 2011 Ive

5   Dep. at 227:12-229:12, 240:11-20; Aug. 3, 2011 Stringer Dep. at 98:10-99:8, 162:11-24, 169:4-

6   10, 175:12-21; Mar. 2, 2012 Tan Dep. at 74:18-75:11.

7          51.      Furthermore, numerous alternative designs to the patented D'889 design were and

8   are commercially available.  Because these alternative designs were commercially released, they

9   show that the D'889 design is not required for a tablet, and that there are multiple designs for a

10  functioning tablet.  Some of these alternative designs are shown below: [42]



---

[41] Apple Tablet Protos 848, 874, 1051, 1202 & 1216 respectively.

[42] From top row, from left to right:  Sony Tablet S, Barnes & Noble Nook Tablet, Coby Kyros, Acer Iconia A500, Sony Tablet P, and Vinci Tablet.  *See* Ex. 13.  These tablets do not constitute an exhaustive list of alternative designs that may be relevant; they are merely representative of some alternatives that have been commercialized.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
18

52.     Moreover, the examples of alleged prior art cited by Samsung in its opposition to Apple's Motion for Preliminary Injunction against the D'889 design look very different from that patented design and also constitute alternative designs that could have been used by Samsung without infringing Apple's patented design.  For example, JP1142127, JP0887388, JP0921403, U.S. Patent No. D461,802, the TC 1000, and the 1994 Fidler Mock-up are all far afield from the D'889 design aesthetically.

53.     Indeed, Samsung's own commercially released tablet prior to the iPad – the Samsung Q1 – constituted an alternative design to the D'889 design.  Photos of the Samsung Q1 are shown below.

  

54.     Additionally, it is my understanding that Samsung considered alternative designs that were different from the final commercially released designs of its infringing tablets.  For example, one of the Samsung tablet models featured a wide, opaque frame on the front surface around the display screen.  *See* Ex. 14, Samsung model production no. Tab 30.

55.     The fact that Samsung and other manufacturers have commercially released tablets with alternative, different-looking designs shows that Samsung had access to a variety of design options that would have provided equivalent or similar functionality for the end user.  These alternative designs belie any suggestion that utilitarian or functional considerations dictated the design of the D'889 patent or of Samsung's Galaxy Tab 10.1.

56.     The alternative designs discussed in the foregoing are in no way comprehensive.  The tablet computer field is filled with alternative, commercially viable designs that illustrate the nonfunctionality of Apple's patented design.  Other available alternative designs to the D'889 design include, for instance, the Sony Reader, GriDPAD 2050, the Motion Computing LS800, the

1  Freescale smartbook concept, Panasonic Toughbook Tablet, and the Panasonic Toughpad.  *See*

2  Ex. 13.

3        57.     Accordingly, I conclude that there are no elements in the design of the D'889

4  Patent that are purely functional, so the proper infringement analysis of the D'889 Patent takes

5  into account the overall design depicted in the patent, without excluding any elements.

6      **C.**     **The D'087 Patent**



FIG. 9        FIG. 17

FIG. 11        FIG. 19        FIG. 7        FIG. 8        FIG. 5        FIG. 6

22        58.     The D'087 Patent is directed toward the ornamental design of the front face and

23  bezel of an electronic device as shown in selected embodiments as depicted in Figures 5-9, 11, 17

24  & 19 (reproduced above).

25        59.     The D'087 Patent states that "The broken lines showing the remainder of the

26  electronic device are directed to environment.  The broken lines, within the claimed design, in

27  embodiments 1, 2, and 4 that depict an elongated oval shape and the broken lines, within the

1    claimed design, in embodiments 2, 3, and 6 that depict a circle shape are superimposed on a

2    continuous surface and are for illustrative purposes only.  The broken lines, within the claimed

3    design, in embodiments 1, 3, and 5 that depict a large rectangular shape, indicate a non claimed

4    shape below the continuous front surface and are for illustrative purposes only.  None of the

5    broken lines form a part of the claimed design."  D'087 Patent at Description.

6          60.     Because of the iPhone's distinctiveness and popularity, the design disclosed in the

7    D'087 Patent has become instantly recognizable as the front face and bezel of the iPhone.  The

8    front face of the iPhone derives its distinctive appearance among smartphone designs from a

9    combination of elements including the flat surface that extends all the way to the perimeter,

10   narrow balanced borders on either side of the active area of the display, wider balanced borders

11   above and below the active area of the display, evenly curved corners, a lozenge-shaped speaker

12   slot[43] horizontally centered in the area above the screen, and a bezel encircling the front face.

13   This group of elements is distinctive in terms of visual impression.

14         61.     Based on my review of CAD renderings cited in Apple's Response to Samsung's

15   Interrogatory No. 1, I understand that the D'087 Patent was conceived of and reduced to practice

16   at least as early as April 20, 2006.  The CAD renderings are found at APLNDC00014230-231;

17   APLNDC00014237-244.

18         **D.     No Element of the D'087 Patent Is Dictated by Function**

19         62.     It is my understanding that Apple considered alternative designs that were

20   different from the final commercially released design of the iPhone, a design which is embodied

21   in the D'087 Patent.  CAD renderings and photographs of prototypes of some such alternative

22   designs are at APLNDC-Y0000149051-052, 059 & 062, in Exhibits 1-6 to the Reply Declaration

23   of Christopher Stringer in Support of Apple's Motion for a Preliminary Injunction, and Exhibits

24   15-20.[44]  Based on testimony from Apple industrial designers and product designers, it is my

25   understanding that it would have been feasible for Apple to pursue these alternatives, though

26

27         [43] The speaker slot is sometimes referred to as the "receiver hole."

28         [44] Apple Protos 355, 363, 383, 399, 834, 1105 respectively.

1   Apple elected not to do so for aesthetic reasons.  *See, e.g.,* Dec. 1, 2011 Ive Dep. at 38:23-41:8;

2   44:20-46:14; 63:21-66:4; 227:12-229:12; 240:21-20; Feb. 7, 2012 Ive Dep. at 292:8-25; 302:24-

3   303:24; Aug. 3, 2011 Stringer Dep. at 183:23-184:5; 207:25-208:19; 323:21-324:21; Nov. 4,

4   2011 Stringer Dep. at 18:14-23; 20:1-7; 78:15-22; Mar 2, 2012 Tan Dep. at 20:15-24:14; 28:4-30:

5   22; 56:10-61:18; 64:9-65:20; 74:18-75:1, Feb. 28, 2012 Hobson Dep. at 35:3-36:1.

6        63.    Furthermore, numerous alternative designs to the patented D'087 design were and

7   are commercially available.  Because these alternative designs were commercially released, they

8   show that the D'087 design is not required for a smartphone, and that multiple alternative designs

9   are available for a functioning smartphone.  Some of these alternative designs are shown below:[45]



17        64.    Indeed, many of Samsung's own commercially released phones are themselves

18   alternative designs to the patented D'087 design.  Samsung alternative designs include, for

19   instance, the following: [46]

---

[45] From left to right:  Sony Ericsson Xperia Arc S; Pantech Crossover; Nokia Lumia 800; Casio G'zOne Commando LG Optimus T.  *See* Ex. 21. These phones do not constitute an exhaustive list of alternative designs that may be relevant; they are merely representative of some alternatives that have been commercialized.

[46] From left to right:  Samsung i8910 Omnia HD (released May 2009); Samsung M7600 Beat DJ (released May 2009); Samsung Sunburst SGH-A697 (released March 2010); Samsung Gravity Touch SGH-T669 (released June 2010); Samsung Gem SCH-I100 (released February 2011).  *See* Ex. 21.  These phones do not constitute an exhaustive list of Samsung's alternative designs that may be relevant; they are merely representative of some alternatives that Samsung has commercialized.

65.    Additionally, it is my understanding that Samsung considered alternative designs that were different from the final commercially released designs of its infringing phones.  Such alternative designs are depicted in Exhibits 22-23.  These alternatives illustrate, for example:  a curved, clear material on the front surface of the phone (for example, Ex. 22, Samsung model production No. 38); a display screen that is not centered on the front surface of the phone (*Id.*); a drastically non-uniform and stylized bezel (*Id.*); and a front surface that is not entirely covered with a clear material (Ex. 23, Samsung model production No. 9.6.3).

66.    Samsung itself has applied for and received design patents on the ornamental design for its phones – many of which feature relatively large screens suitable for use as a touch screen.  Samsung's own design patents undercut any contention that smartphone design (or more specifically, touch-screen smartphone design) is restricted by function to the iPhone design.  For example, U.S. D555,131 to Samsung claims a phone design with a large display screen.  But the D'131 design, as shown below, also has curved top and bottom sides, angled corners, adornments on the front face, and numerous other differences from Apple's iconic iPhone design.

1

2

3

4

5

6

7



8      67.     Other Samsung design patents similarly illustrate the design alternatives available

9  to Samsung for every feature of a phone, including U.S. Patent Nos. D561,156, D616,857,

10  D561,155, D562,794, D624,046, D616,856, and D629,780.[47]

11      68.     The alternative designs discussed in the foregoing are in no way comprehensive.

12  The smartphone field is filled with alternative, commercially viable designs that illustrate the

13  nonfunctionality of Apple's patented design.  Other designs that illustrate alternative renderings

14  of individual design elements include HTC Touch Dual, T-Mobile My-Touch, Palm Treo 700p,

15  HTC 7 Trophy T8686, Sony Ericsson Xperia S, Pantech Hotshot CDM8992VW, Modu 1 and

16  associated jackets, Modu T and associated jackets, Modu W, and Nokia X5-01.  These designs

17  illustrate the vast array of design choices Samsung possessed with respect to every design

18  element of its phones and undercut any contention that utilitarian or functional considerations

19  dictated the iPhone design or Samsung's infringing designs.  *See* Ex. 21.

20      69.     The fact that Samsung and other manufacturers have commercially released

21  phones with different-looking, alternative designs shows that Samsung had numerous design

22  options for offering equivalent or similar functionality for the end user.  These alternative designs

23  belie any suggestion that functional considerations dictated the iPhone design or the design of

24  Samsung's accused phones.

25

26

27

28

------

[47] APLNDC-Y0000232341; -346; -351; -358; -365; -374; -389.

70.     Accordingly, I conclude that there are no elements in the design of the D'087

Patent that are purely functional, so the proper infringement analysis of the D'087 Patent takes

into account the overall design depicted in the patent, without excluding any elements.

**E.     The D'677 Patent**



71.     The D'677 Patent is directed toward the ornamental design of the front face of the

iPhone as shown in Figures 1, 3 & 5-8 (reproduced above).

72.     The D'677 Patent states that "The claimed surface of the electronic device is

illustrated with the color designation for the color black."  D'677 Patent at Description.

73.     Because of the iPhone's distinctiveness and popularity, the design disclosed in the

D'677 Patent has become instantly recognizable as the black front face of the iPhone.  The front

face of the iPhone derives its distinctive appearance among smartphone designs from a

combination of elements including the flat, translucent, black-colored surface that extends all the

way to the perimeter of the front surface, narrow balanced borders on either side of the active area

1    of the display, wider balanced borders above and below the active area of the display, evenly

2    curved corners, and a lozenge-shaped speaker slot horizontally centered in the area above the

3    screen.  This combination of visual elements creates a distinctive and memorable visual

4    impression.

5        74.    Based on my review of CAD renderings cited in Apple's Response to Samsung's

6    Interrogatory No. 1, I understand that the D'677 Patent was conceived of and reduced to practice

7    at least as early as April 20, 2006. The CAD renderings are found at APLNDC00014230-231;

8    APLNDC00014237-244.

9        **F.    No Element of the D'677 Patent Is Dictated by Function**

10       75.    As in the case of the D'087 Patent, it is my understanding that Apple considered

11   alternative designs that were different from the final commercially released design for the iPhone,

12   a design which is embodied in the D'677 Patent.  CAD renderings and photographs of prototypes

13   of some such alternative designs are at APLNDC-Y0000149051-052, -059 & -062, Exhibits 1-6

14   to the Reply Declaration of Christopher Stringer in Support of Apple's Motion for a Preliminary

15   Injunction, and in Exhibits 15-19.  Based on testimony from Apple industrial designers and

16   product designers, it is my understanding that it would have been feasible for Apple to pursue

17   these alternatives, though Apple elected not to do so for aesthetic reasons.  *See, e.g.* Dec. 1, 2011

18   Ive Dep. at 38:23-41:8; 44:20-46:14; 63:21-66:4; 227:12-229:12; 240:21-20; Feb. 7, 2012 Ive

19   Dep. at 292:8-25; 302:24-303:24; Aug. 3, 2011 Stringer Dep. at 183:23-184:5; 207:25-208:19;

20   323:21-324:21; Nov. 4, 2011 Stringer Dep. at 18:14-23; 20:1-7; 78:15-22; Mar 2, 2012 Tan Dep.

21   At 20:15-24:14; 28:4-30: 22; 56:10-61:18; 64:9-65:20; 74:18-75:1, Feb. 28, 2012 Hobson Dep. at

22   35:3-36:1.

23       76.    Further, numerous alternative designs to the patented D'677 design were and are

24   commercially available.  Because these alternative designs were commercially released, they

25

26

27

28

show that the D'677 design is not required for a smartphone, and that there multiple alternative

designs exist for a functioning smartphone. Some of these alternative designs are shown below:[48]



77.    Indeed, many of Samsung's own commercially released phones are themselves

alternative designs to the patented D'677 design.  Samsung alternative designs include, for

instance, the following: [49]



78.    Moreover, Samsung itself has produced a number of designs with white-colored

front surfaces, such as a white version of its Galaxy Ace, S II, and Galaxy Note.

[48] From left to right:  Sony Ericsson Xperia Arc S; Pantech Crossover; Nokia Lumia 800; Casio G'zOne Commando LG Optimus T.  *See* Ex. 21.  These phones do not constitute an exhaustive list of alternative designs that may be relevant; they are merely representative of some alternatives that have been commercialized.

[49] From left to right:  Samsung i8910 Omnia HD (released May 2009); Samsung M7600 Beat DJ (released May 2009); Samsung Sunburst SGH-A697 (released March 2010); Samsung Gravity Touch SGH-T669 (released June 2010); Samsung Gem SCH-I100 (released February 2011).  *See* Ex. 21.  These phones do not constitute an exhaustive list of Samsung's alternative designs that may be relevant; they are merely representative of some alternatives that Samsung has commercialized.

1    79.    Additionally, it is my understanding that Samsung considered alternative designs

2  that were different from the final commercially released designs of its infringing phones.  Such

3  alternative designs are depicted in Exhibits 22-23.  These alternatives illustrate, for example:  a

4  curved, clear material on the front surface of the phone (for example, Ex. 22, Samsung model

5  production No. 38); a display screen that is not centered on the front surface of the phone (*Id.*);

6  and a front surface that is not entirely covered with a clear material (Ex. 23, Samsung model

7  production No. 9.6.3).

8    80.    Moreover, as described above, Samsung itself has applied for and received design

9  patents on the ornamental design for its phones – many of which feature relatively large screens

10  suitable for use as a touch screen and are alternatives to the D'087 design.  *See* U.S. Patent Nos.

11  U.S. D555,131, D561,156, D616,857, D561,155, D562,794, D624,046, D616,856, and D629,780.

12    81.    The alternative designs discussed in the foregoing are in no way comprehensive.

13  The smartphone field is filled with alternative, commercially viable designs that illustrate the

14  nonfunctionality of Apple's patented design.  Other designs that illustrate alternative renderings

15  of individual design elements include HTC Touch Dual, T-Mobile My-Touch, Palm Treo 700p,

16  HTC 7 Trophy T8686, Sony Ericsson Xperia S, Pantech Hotshot CDM8992VW, Modu 1 and

17  associated jackets, Modu T and associated jackets, Modu W, and Nokia X5-01.  These designs

18  illustrate the vast array of design choices Samsung possessed with respect to every design

19  element of its phones and undercut any contention that utilitarian or functional considerations

20  dictated the iPhone design or Samsung's infringing designs.  *See* Ex. 21.

21    82.    The fact that Samsung and other manufacturers have commercially released

22  phones with different-looking, alternative designs shows that Samsung had numerous design

23  options for offering equivalent or similar functionality for the end user.  These alternative designs

24  belie any suggestion that functional considerations dictated the iPhone design or the design of

25  Samsung's accused phones.

26    83.    Accordingly, I conclude that there are no elements in the design of the D'677

27  Patent that are purely functional, so the proper infringement analysis of the D'677 Patent takes

28  into account the overall design depicted in the patent, without excluding any elements.

1

## G.    The D'270 Patent



FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 7

FIG. 8

FIG. 9

84.    The D'270 Patent is directed toward the ornamental design of the body and front face of an electronic device as shown in Figures 1-9 (reproduced above).

85.    The D'270 Patent states that "The broken lines show portions of the electronic device which form no part of the claimed design."  D'270 Patent at Description.

86.    Because of the iPod touch's distinctiveness and popularity, the design disclosed in the D'270 Patent has become instantly recognizable as the body of the iPod touch. The iPod touch derives its distinctive appearance among designs from a combination of elements including the clear surface that extends all the way to the perimeter, narrow balanced borders on the sides of the active area of the display, wider balanced borders above and below the active area of the display, evenly curved corners, an angled bezel surrounding the front surface, and a thin profile. This group of elements is distinctive in terms of visual impression.

87.    Based on my review of CAD renderings cited in Apple's Response to Interrogatory No. 1, I understand that the D'270 Patent was conceived of and reduced to practice at least as early as December 13, 2006. The CAD renderings are found at APLNDC-NCCX00000641-650.

### H.    No Element of the D'270 Patent Is Dictated by Function

88.    Numerous alternative designs to the patented D'270 design were and are commercially available. Because these alternative designs were commercially released, they show that the D'270 design is not required for a mobile electronic device, such as a mobile phone or mobile media player, and that there are multiple designs for a functioning mobile electronic device. Some of these alternative designs are shown below:[50]



---

[50] From left to right: Sony Ericsson Xperia Arc S; Pantech Crossover; Nokia Lumia 800; Casio G'zOne Commando, Ematic Touch Screen Mp3 Video Player. See Exs. 21 & 24. These mobile devices do not constitute an exhaustive list of alternative designs that may be relevant; they are merely representative of some alternatives that have been commercialized.

89.     Indeed, many of Samsung's own commercially released phones are themselves alternative designs to the patented D'270 design.  Samsung alternative designs include, for instance, the following: [51]



90.     Additionally, it is my understanding that Samsung considered alternative designs that were different from the final commercially released designs of its infringing phones.  Such alternative designs are depicted in Exhibits 22-23.  These alternatives illustrate, for example:  a curved, clear material on the front surface of the phone (for example, Ex. 22, Samsung model production No. 38); a display screen that is not centered on the front surface of the phone (*Id.*); a drastically non-uniform and stylized bezel (*Id.*); and a front surface that is not entirely covered with a clear material (Ex. 23, Samsung model production No. 9.6.3).

91.     Moreover, as described above, Samsung itself has applied for and received design patents on the ornamental design for its phones – many of which feature relatively large screens suitable for use as a touch screen and are alternatives to the D'270 design.  *See* U.S. Patent Nos. U.S. D555,131, D561,156, D616,857, D561,155, D562,794, D624,046, D616,856, and D629,780.

92.     The alternative designs discussed in the foregoing are in no way comprehensive. The smartphone and media player field is filled with alternative, commercially viable designs that

---

[51] From left to right:  Samsung i8910 Omnia HD (released May 2009); Samsung M7600 Beat DJ (released May 2009); Samsung Sunburst SGH-A697 (released March 2010); Samsung Gravity Touch SGH-T669 (released June 2010); Samsung Gem SCH-I100 (released February 2011).  See Ex. 22. These phones do not constitute an exhaustive list of Samsung's alternative designs that may be relevant; they are merely representative of some alternatives that Samsung has commercialized.

illustrate the nonfunctionality of Apple's patented design.  Other designs that illustrate alternative renderings of individual design elements include HTC Touch Dual, T-Mobile My-Touch, Palm Treo 700p, HTC 7 Trophy T8686, Sony Ericsson Xperia S, Pantech Hotshot CDM8992VW,  1 and associated jackets, Modu T and associated jackets, Modu W, Nokia X5-01, Coby MP826, Memorex TouchMP, and the LG FM 37.  These designs illustrate the vast array of design choices Samsung possessed with respect to every design element of its phones and undercut any contention that utilitarian or functional considerations dictated the iPod touch design or Samsung's infringing designs. *See* Exs. 21 & 24.

93.     The fact that Samsung and other manufacturers have commercially released mobile electronic devices with different-looking, alternative designs shows that Samsung had numerous design options for offering equivalent or similar functionality for the end user.  These alternative designs belie any suggestion that functional considerations dictated the iPod touch design or the design of Samsung's accused devices.

94.     Accordingly, I conclude that there are no elements in the design of the D'270 Patent that are purely functional, so the proper infringement analysis of the D'270 Patent takes into account the overall design depicted in the patent, without excluding any elements.

## IX.     MANY OF SAMSUNG'S DESIGNS HAVE BECOME SUBSTANTIALLY SIMILAR TO APPLE'S

95.     I created a timeline (Exhibit 25) of smartphones that Samsung released beginning before the announcement of the iPhone and extending through 2011.

96.     As can be seen from the timeline, before the release of the iPhone in 2007, Samsung typically manufactured and released phones that appeared very different from the iPhone.  Like many other phones at the time, these Samsung phones displayed a front face that was not smooth, due in part to the presence of multiple buttons that visually dominated at least the bottom portion of the phones.  Many of Samsung's phones, such as the BlackJack and BlackJack II, had full "QWERTY" keyboards on the front face.  Additionally, Samsung's phones tended to have angular corners, even when the devices were not rectangular because the top and bottom edges curved.

1          97.      After the announcement of the iPhone in January 2007, Samsung began to

2  introduce smartphones with a reduced number of buttons on the front face, a more rectangular

3  shape, and rounder corners.  While these phones appeared more similar to the iPhone than the

4  Samsung phones that came before the iPhone, these phones were not copies of the iPhone and the

5  designs of these phones were not substantially the same as the D'087, D'677 and/or D'270

6  Patents.  The designs of Samsung's phones were differentiated based on the overall shape of the

7  device; the proportion of the screen; the size, location, and shape of the buttons; the size, location,

8  and shape of the speaker slot; and/or the size and shape of the bezel, if one was present.

9  Moreover, the front surfaces of the devices were not flat and clear across the entire face to the

10  perimeter.

11          98.      Samsung's Galaxy S i9000, released in the second quarter of 2010, was the first

12  Samsung smartphone that looked substantially similar to the iPhone.  This phone contained all of

13  the patented features of the iPhone—with similar proportions—including the clear front surface

14  running from edge to edge of the front face of the device.  Additionally, the design features of the

15  Galaxy S i9000 have a similar proportion and layout to the iPhone.  The Galaxy S line has

16  included numerous smartphones released under product names including Vibrant, Mesmerize,

17  Fascinate, and others.

18          99.      Although Samsung has continued to manufacture and release products that are

19  clearly distinguishable from the iPhone, Samsung has also released numerous additional

20  smartphones, including the Accused Products, that, like the Galaxy S i9000, are substantially

21  similar to Apple's iPhone.[52]

22

23

24

25

26

27          [52] From left to right:  Samsung Galaxy S 4G; Samsung Fascinate; Apple iPhone (original), Samsung
Vibrant; Samsung Infuse 4G.

28

100.     I have also created timelines (Exhibits 26-27) of phones and tablets that Samsung and third parties released beginning before the announcement of the iPhone and iPad and extending through 2011.  As can be seen from the timelines, at least as of the time of the introduction of the iPhone and iPad, no other mobile phones and tablets, respectively, looked like the iPhone and the iPad.

101.     Moreover, as can be shown below, Samsung made and sold a very different looking touch screen tablet before the iPad 2 was released.  After the iPad 2 was released, Samsung's tablet, the Galaxy Tab 10.1, looked substantially similar to the iPad 2.  Samsung's Q1 tablet, Apple's iPad 2, and Samsung's Galaxy Tab 10.1 are shown below.



## X.     SAMSUNG INFRINGES THE D'889 PATENT

### A.     Identification of Infringing Products

102.     It is my opinion that the Galaxy Tab 10.1 infringes the D'889 Patent.

103.     In forming this opinion, I reviewed the prosecution history of the D'889 Patent and analyzed and familiarized myself with the prior art cited therein.  I have also analyzed and familiarized myself with the relevant portions of the prior art references Samsung cited in its

1   December 19, 2011 Response to Apple's Interrogatory No. 12 and the relevant portions of prior

2   art references cited in Samsung's August 22, 2011 Opposition to Apple's Motion for a

3   Preliminary Injunction and in Itay Sherman's August 22, 2011 Declaration in Support of

4   Samsung's Opposition to Apple's Motion for a Preliminary Injunction.[53]

5          104.    In addition, I have reviewed news articles and publications drawing attention to the

6   similarity between the iPad and Samsung's Galaxy Tab 10.1.  For example, *eWeek* noted that "if

7   mimicry is flattery, the Galaxy Tab has compliments galore for the iPad. … Looking like an

8   unlikely offspring between the iPad and the iPhone 4, the Tab has an iPad-like front fascia as well

9   as a camera-equipped back cover similar to the not-yet-released white iPhone. … Even the dock

10  connector very closely mimics Apple's standard pinout."[54]  A *PC Magazine* review of the Galaxy

11  Tab 10.1 stated that "most laymen could mistake [the Galaxy Tab 10.1] for an iPad."[55]  Likewise,

12  a *PCWorld* article stated that: "In my hands-on testing, the Tab 10.1 achieved perhaps the best

13  design compliment an Android tablet could hope for—often being mistaken by passers-by

14  (including Apple iPad users) for an iPad 2.  The confusion is understandable when you see and

15  hold the Tab 10.1 for the first time."[56]

16         105.    Moreover, Samsung's own documents indicate that it has received reports of

17  consumers confusing the Galaxy Tab 10.1 and iPad 2, and returning it to the retailer for that very

18  reason.  *See* SAMNDCA10154003-053 (*See* translation in Apple's Appendix of Certified

19  Translation in Support of Opening Expert Reports); *see also* Feb. 24, 2012 S.E. Lee Dep. at

20  12:25-13:10; 27:12-20; 35:13-24; 48:18-51:17.

---

[53] I reserve the right to address any other prior art references that Samsung identifies.

[54] Michelle Maisto, "Samsung Galaxy Tab Nods to Apple iPad But Goes Own Way iFixit," eWeek, Nov. 12, 2010, http://www.eweek.com/c/a/Desktops-and-Notebooks/Samsung-Galaxy-Tab-Nods-to-Apple-iPad-But-Goes-Own-Way-iFixit-314074/.

[55] Michael Muchmore, "Unboxing the Samsung Galaxy Tab 10.1; It Doesn't Run Android 3.1 Yet, But the New Samsung Tablet Gives the iPad 2 A Run for Its Money," PC Magazine, May 10, 2011, http://www.pcmag.com/article2/0,2817,2385154,00.asp.

[56] Melissa Perenson, "Samsung Galaxy Tab 10.1 Wi-Fi:  A Worthy Rival to the iPad 2," PCWorld, June 8, 2011, http://www.pcworld.com/article/229763/samsung_galaxy_tab_101_wifi_a_worthy_rival_to_the_ipad_2.html.

106.   To determine whether the Samsung Galaxy Tab 10.1 infringes the D'889 Patent, I compared Figures 1–8 of the D'889 Patent with analogous views of the corresponding portions of the Galaxy Tab 10.1.  As shown below, the Apple iPad 2 embodies the claim of the D'889 Patent.  Accordingly, I also compared views of the iPad 2 that correspond to Figures 1–8 of the D'889 Patent with analogous views of the corresponding portions of the Galaxy Tab 10.1.

**B.     Comparison of the Prior Art**

107.   As part of my infringement analysis, I considered the similarities and differences between the claimed design of the D'889 Patent, the Galaxy Tab 10.1, and certain purported prior art references cited by Samsung.

108.   This comparison benefited my analysis by highlighting that none of the cited prior art comes close to the design disclosed in the D'889 Patent.  The prior art drawn to my attention includes the following:

- **U.S. Patent Application Publication No. 2004/0041504** (Ozolins) (Exhibit 28).

- **1994 Fidler Mock-up** (Fidler) (Exhibit 29).

- **HP Compaq TC 1000** (the TC 1000) (Exhibit 30).

109.   The clear differences between the D'889 Patent and the prior art underscore my view that the Samsung Galaxy Tab 10.1 infringes the D'889 Patent.  To that end, I have conducted a three-way analysis of the prior art, the D'889 Patent, and the Samsung Galaxy Tab 10.1.  Both the D'889 Patent and the Samsung Galaxy Tab 10.1 depart conspicuously from the prior art designs with respect to the same relevant features.  Put another way, the Samsung Galaxy Tab 10.1 is substantially similar to the D'889 Patent's design, but is very different from the prior art.  Comparison charts depicting the three-way analysis are shown below.

110.   **Ozolins**. The visual impression of the Galaxy Tab 10.1 is much closer to the D'889 Patent than is the visual impression of Ozolins.

1



| Ozolins | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |

*FIG. 1*

*FIG. 2*

*FIG. 3*

*FIG. 5*

111.    The drawings in Ozolins are substantially different from the D'889 design. For example, Figure 1, shown below, is an exploded view and the left-most front component 200 is not shown to be a continuous clear surface. Instead, a frame 220 appears around the center portion 210. And element 110 cannot be seen behind center portion 210. It is also unclear whether element 100 of the schematic (shown in broken lines) will be visible at all when the device is assembled. Moreover, a large protruding rectangular feature 320 (shown in broken lines) is shown in the rear component 300. The profile and back design of the device is also unclear in this exploded view. Simply, it would be unclear to the ordinary observer what the assembled design shown in Figure 1 would actually look like, even if a number of differences with the D'889 patent are apparent from this figure.

1

2

3

4

5

6

7

8

9



Fig. 1

10   112.   Similarly, as shown in Figures 1-2 and 9, the sides of the Ozolins design creates a

11   pyramidal form that appears to taper from the front towards the rear, in stark contrast to the

12   rounded side profile of the D'889 Patent.  The overall impression of the side profiles of the

13   Ozolins design is one of sharp corners and angles, in contrast to the rounded profiles of the D'889

14   Patent.  Moreover, Ozolins has a much thicker form factor as shown in Figures 9-10.  Also, as

15   mentioned above, the rear surface of the design, as shown in Figures 1, 9 and 10, also has either a

16   protruding rectangular feature or a prominent hole.

17   113.   The front view of the Ozolins design as depicted in Figures 5 and 8 is a single

18   view and thus is not sufficient to form an impression of the overall design.  Moreover, the portion

19   of the design that is shown gives a very different impression than the front view of the D'889

20   patented design.  The rounded corners of Figures 5 and 8 have unmistakably larger radii than the

21   corners of the D'889 patented design and lack the visual near-concentricity of the D'889 Patent

22   and the Galaxy Tab 10.1.  The radii of the device corners in Figures 5 and 8 of Ozolins contrast

23   sharply with the corners of the rectangular display area, which creates a strong tension with the

24   outside radius.  In contrast, the device corners in both the D'889 Patent and the Galaxy Tab 10.1

25   are more nearly concentric with the corners of the rectangular display, avoiding the visual tension

26   and creating a more consistent border.

27

28

| Ozolins | D'889 Patent | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  |  |  |

114.    The Ozolins design can be further distinguished from the D'889 design in its scale. As shown in Fig. 9 of the D'889 patent, its claimed design is a hand-held tablet computer of a certain scale in the context of the illustrated human user.  In contrast, the Ozolins design is a computer monitor of a much larger scale.

115.    Moreover, it is important to note that the figures in Ozolins make it difficult to recognize the overall impression of a design because the drawings are contradictory alternative embodiments of a utility patent.  *See* Ozolins at Paras. 0017-0027 (describing figures as showing alternative embodiments).  Indeed, the figures in Ozolins are aimed at providing a basis for further interpretation of the technical features as defined in the description and claims and not for accurately depicting a claimed aesthetic design.  As such, the Ozolins drawings are mere schematics and would not be viewed by an ordinary user as a representation of an overall design.

116.    It is extremely difficult to make any assessment of the overall impression of the design shown in Ozolins.  For example, Figure 1 is an exploded view.  On the left, it shows a rectangular element which has an inner rectangular frame.  The same element appears to be in Figure 9, but the inner rectangular frame is lacking in Figure 2.  Accordingly, the two drawings do not show the same design.  Figures 5 and 8 each show a much more oval front view, with a larger rectangular display screen, which also contradicts with Figures 1 and 2.  Figure 7 repeats Figure 2, except that a "logo" is provided on the lower right corner of the rectangular body shown.  Figures 9 and 10 are exploded views, which reproduce technical figures and shown a potentially thick, drastically angled back design.

117.    An ordinary user would have difficulty forming a clear impression of an overall design as illustrated in these contradictory drawings.  But the drawings do illustrate a number of

differences between the Ozolins design and the D'889 patent that place the Ozolins design much

farther afield from the D'889 design than the design of the Galaxy Tab 10.1.

118.   **Fidler Mock-up**.  I have personally inspected the Fidler Mock-up at Roger

Fidler's offices in Columbia, Missouri.  The visual impression created by the Galaxy Tab 10.1 is

much closer to the D'889 Patent than is the visual impression of the Fidler Mock-up.

| Fidler Mock-up | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|---|
| | FIG. 1 | |
| | FIG. 2 | |
| | FIG. 3 | |
| | FIG. 4 | |
| | FIG. 5 FIG. 6 | |

| Fidler Mock-up | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  | \n\n**FIG. 7**\n\n**FIG. 8** |  |

119.    Unlike the D'889 Patent, the Fidler Mock-up does not have biaxial symmetry, a flat edge-to-edge clear front surface without additional adornments, a narrow rim surrounding the edge of the device, or a display screen bordered by a mask behind the clear front surface.  Instead, it has a raised, opaque, asymmetrical frame that extends onto the front surface and over the edges of a recessed display.  Indeed, the creator of the mock-up, Mr. Fidler, admitted that the frame covers the edges of the recessed display.  *See* Sep. 23, 2011 Fidler Dep. at 47:23-48:5.

| Fidler Mock-Up | D'889 Patent | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  |  |  |

120.    The Fidler front frame has an on/off button in the upper left-hand corner, and an apparently arbitrary design created of a series of lines or dots in the upper right-hand corner. There is also a notch on the right side of the frame that is conspicuous in the front views.  When placed side by side, the front surface of the D'889 Patent produces a "full glass" visual impression, which provides far fewer visual elements and is drastically different than the traditional "picture frame" appearance of the Fidler Mock-up.

121.    In addition, the front surface of the Fidler Mock-up is not surrounded by a thin rim formed by the rounding up of the back panel at its edges.  Unlike the D'889 Patent, the sides of the Fidler Mock-up do not meet the front surface such that they meet at an edge.  Instead, the sides of the Fidler Mock-up have a symmetrical curvature, transitioning to the front and back surfaces to create a continuous curve.  In the case of the back surface, a door overlays the frame and is secured with four screws.  In the case of the front surface, the frame extends over the

1   display screen, with the result being the appearance of an asymmetrical and comparatively

2   massive picture frame with prominent carve-outs.

3        122.    It is my understanding that Mr. Fidler will not allow the Fidler Mock-up to leave

4   his office in Columbia, Missouri.  Accordingly, to assist in my analysis of the Fidler Mock-up, I

5   retained Prototyping Solutions Group to create a three-dimensional replica of the Fidler Mock-up.

6   Based on my review of the original Fidler Mock-up, the photographs taken of the Fidler Mock-

7   up, and the replica produced by Prototyping Solutions Group, it is my opinion that this three-

8   dimensional replica is a true and accurate replica of the Fidler Mock-up.  Photos of the replica are

9   shown below:

| Fidler Mock-up Replica | Fidler Mock-up |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

| Fidler Mock-up Replica | Fidler Mock-up |
|---|---|
|  |  |
|  |  |

123.   **TC 1000**. The visual impression of the Galaxy Tab 10.1 is much closer to the D'889 Patent than is the visual impression of the TC 1000.

| TC 1000 | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  |  FIG. 1 |  |
|  |  FIG. 2 |  |
|  |  FIG. 3 |  |
|  |  FIG. 4 |  |

| TC 1000 | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---------|--------------------|-----------------------|
|  | \nFIG. 5\n\nFIG. 6 |  |
|  | FIG. 7\n\nFIG. 8 |  |

124.     Unlike the D'889 Patent, the TC 1000 design does not have biaxial symmetry because there are different ornamental features jutting out from each of the sides and the frame around the sides is not equal in width.

125.     Moreover, the front surface of the TC 1000 is not surrounded by a thin rim formed by the rounding up of the back panel at its sides, nor do the sides create an edge where they meet the front surface.  Rather, the front surface of the TC 1000 transitions with a continuous curvature to the sides.  The front-most silver material from the sides extends over and onto the front of the product to provide an ornamental framing to the front face.  The sides have a thick, three-layer silver and black side design.  The resulting outer frame on the TC1000 is much thicker than the thin rim featured in the D'889 Patent and the Galaxy Tab 10.1.

126.     There are also two prominent concentric mats (an inner black mat and an outer silver mat) surrounding the display on the front face of the TC 1000.

| TC1000 | D'889 Patent | Samsung Galaxy Tab 10.1 |
|--------|--------------|-----------------------|
|  |  |  |

127.     Moreover, the TC 1000 and the D'889 Patent have distinct appearances when viewed from the sides.  Rather than the uncluttered appearance of the D'889 Patent, the TC 1000

1   is interrupted by ornamental elements.  It has a black stripe down the middle of the side.  The side

2   is evenly rounded and transitions toward both the front and rear surfaces to form a curvature.

3        128.    Informed by my consideration of the prior art, and my conclusion that the prior art

4   does not come close to the D'889 Patent, I proceed to conduct an infringement analysis of the

5   D'889 Patent against the Galaxy Tab 10.1, as set out below.

| D'889 Patent Claim | Apple iPad 2 | Samsung Galaxy Tab 10.1 |
|---|---|---|
| <br>*FIG. 1* |  |  |
| <br>*FIG. 2* |  |  |
| <br>*FIG. 3* |  |  |
| <br>*FIG. 4* |  |  |
| <br>*FIG. 5*<br><br>*FIG. 6* |  |  |

| D'889 Patent Claim | Apple iPad 2 | Samsung Galaxy Tab 10.1 |
|---|---|---|
| FIG. 7<br>FIG. 8 | | |

129.    The elements depicted in the D'889 Patent are present in the corresponding portions of the design of Samsung's Galaxy Tab 10.1.  For instance, both the D'889 Patent and the Galaxy Tab 10.1 have a substantially similar overall shape that is symmetrical both vertically and horizontally with four evenly rounded corners.  Just like the D'889 Patent, Samsung's Galaxy Tab 10.1 has a flat, clear front surface surrounded by a thin rim.  In both the D'889 Patent and the Galaxy Tab 10.1, the uninterrupted clear surface extends to the perimeter of the front surface, which is substantially free of added adornment.  Moreover, both the patented D'889 design and the Galaxy Tab 10.1 have a rectangular display screen bordered by a mask of uniform width centered behind the clear front surface.  Both the patented D'889 design and the Galaxy Tab 10.1 have a substantially flat back that curves upwards at the side to meet the front plane at an edge.  Also, both the patented D'889 design and the Galaxy Tab 10.1 have a thin profile.

130.    The Apple iPad 2 and Samsung's Galaxy Tab 10.1 also share these design elements, creating a substantially similar overall impression.

131.    Some minor differences exist between the Galaxy Tab 10.1 and the patented D'889 design.  For instance, the Galaxy Tab 10.1, when held in vertical or portrait view, has a slightly higher height-to-width ratio; the side profile of the Galaxy Tab 10.1 is not quite as vertical as the side profile in the D'889 Patent; and the Galaxy Tab 10.1 is slightly thinner than the D'889 Patent.  The Galaxy Tab 10.1 also has accent area on the back for its camera housing and uses a differently colored material for its rim and back body.

132.    The minor differences between the design of the Galaxy Tab 10.1 and the design of the D'889 Patent are details that are insufficient to differentiate the overall impression given by the Galaxy Tab 10.1 from that given by the claimed design of the D'889 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer,

1    changes in details that are clearly subordinate to the primary visual elements are insufficient to

2    alter that overall impression.

3         133.    I understand that the Court in its December 2, 2011 Order Denying Motion for

4    Preliminary Injunction found that "Apple is likely to establish at trial that the Galaxy Tab 10.1 is

5    substantially similar to the D'889 patent in the eyes of an ordinary observer."  Order at 45.  I

6    agree.  In my opinion, the Galaxy Tab 10.1 design is substantially the same as the D'889 design

7    and embodies that patented design.  It is similarly my opinion that an ordinary observer would

8    also find the Galaxy Tab 10.1 design to be substantially the same as the patented D'889 design.

9    **XI.      SAMSUNG INFRINGES THE D'087 PATENT**

10          **A.      Identification of Infringing Products**

11         134.    It is my opinion that the Samsung Galaxy S i9000, Galaxy S 4G, Infuse 4G,

12   Vibrant, Galaxy S II (AT&T), Galaxy S II (Skyrocket), and Galaxy S II (i9100) (collectively, the

13   Samsung D'087 Accused Products) infringe the D'087 Patent.

14         135.    In forming this opinion, I reviewed the prosecution history of the D'087 Patent and

15   analyzed and familiarized myself with the prior art cited therein.  I have also analyzed and

16   familiarized myself with the relevant portions of the prior art references Samsung cited in its

17   December 19, 2011 Response to Interrogatory No. 12 and the relevant portions of prior art

18   references Samsung cited in its August 22, 2011 Opposition to Apple's Motion for a Preliminary

19   Injunction.  I have also analyzed and familiarized myself with the relevant portions of the prior art

20   references identified in Itay Sherman's August 22, 2011 Declaration in Support of Samsung's

21   Opposition to Apple's Motion for a Preliminary Injunction.[57]

22         136.    In addition, I have reviewed news articles and publications drawing attention to the

23   "shocking" similarity between the iPhone and smartphones in Samsung's Galaxy S line.[58]

24

25

26          ───────────────

          [57] I reserve the right to address any other prior art references that Samsung identifies.

27          [58] Priya Ganapati, "First Look:  Samsung Virant Rips Off iPhone 3G Design," Wired, July 15, 2010,
       http://www.wired.com/gadgetlab/2010/07/first-look-samsung-vibrant-rips-off-iphone-3g-design/.

28

1    Among other things, the articles note that the Galaxy S 4G is "very iPhone 3GS-like,"[59] and

2    accuse the Vibrant of "rip[ping] off the iPhone 3G design."[60]

3          137.    To determine whether each of the Samsung D'087 Accused Products infringes the

4    D'087 Patent, I compared Figures 5-9; 11, 17 & 19 of the D'087 Patent with analogous views of

5    the corresponding portions of the Samsung D'087 Accused Products.  As shown below, the Apple

6    iPhone (original) embodies the claim of the D'087 Patent.  Accordingly, I also compared views of

7    the Apple iPhone (original) that correspond to Figures 5-9; 11, 17 & 19 of the D'087 Patent with

8    analogous views of the corresponding portions of the Samsung D'087 Accused Products.[61]

9          **B.     Comparison of the Prior Art**

10         138.    As part of my infringement analysis, I considered the similarities and differences

11   between the claimed design of the D'087 Patent, the Samsung D'087 Accused Products, and

12   certain purported prior art references cited by Samsung.

13         139.    This comparison benefitted my analysis by highlighting that none of the cited prior

14   art comes close to the design disclosed in the D'087 Patent.  The prior art drawn to my attention

15   includes the following:

16   •   **JP 1241638** (the JP'638 Design) (Exhibit 31).

17   •   **JP 1241383** (the JP'383 Design) (Exhibit 32).

18   •   **JP 1009317** (the JP'317 Design) (Exhibit 33).

19         140.    The clear differences between the D'087 Patent and the prior art underscore my

20   view that the Samsung D'087 Accused Products infringe the D'087 Patent.  To that end, I have

21   conducted a three-way analysis of the prior art, the D'087 Patent, and the Samsung D'087

22   Accused Products.  Both the D'087 Patent and the Samsung D'087 Accused Products depart

23   ───────────────

24   [59] Ginny Mies, "Samsung Galaxy S:  How Does It Measure Up to the Competition?" PCWorld, June 29, 2010,
     http://www.pcworld.com/article/200142/samsung_galaxy_s_how_does_it_measure_up_to_the_competition.html.

25   [60] Ginny Mies, "Samsung Vibrant:  A Standout Multimedia Phone," Washington Post, July 21, 2010,
26   http://www.washingtonpost.com/wp-dyn/content/article/2010/07/15/AR2010071506963.html.

27   [61] To ensure accuracy, my comparisons involving the Accused Products and the Apple products were done
     using actual devices rather than pictures of the Accused Products or Apple products.  I reserve the right to rely on the
     actual devices for purposes of trial testimony.

28   EXPERT REPORT OF PETER W. BRESSLER, FIDSA
     Case No. 11 cv-01846-LHK
     48

1    conspicuously from the prior art designs with respect to the same relevant features.  Put another

2    way, the Samsung D'087 Accused Products are substantially similar to the D'087 Patent's design,

3    but are very different from the prior art.  Comparison charts depicting the three-way analysis are

4    shown below.

5        141.    **JP'638 Patent**.  Unlike the D'087 Patent and the Samsung D'087 Accused

6    Products, the JP'638 reference discloses a much thicker bezel that forms a part of the front

7    enclosure and that tapers to thinner portions at the top and bottom edges of the device.  The

8    D'087 patent, by contrast, claims a uniformly thin bezel. The JP'638 differs from the D'087

9    patent because the JP'638 has a cambered, not flat, front surface, and has a smaller speaker

10   opening at a higher location.  The visual impressions of the Samsung D'087 Accused Products

11   are much closer to the D'087 Patent than is the visual impression of the JP'638 Patent.

| JP'638 Patent | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
|  | \n\nFIG. 9\n\nFIG. 17 |  |
|  | \n\nFIG. 11        FIG. 19 |  |

| JP'638 Patent | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>FIG. 7     FIG. 8 |  |
|  | <br>FIG. 5<br><br>FIG. 6 |  |

142.   **JP'383 Design**.  The JP'383 Design is significantly different from both the design disclosed in the D'087 Patent and the Samsung D'087 Accused Products.  The JP'383 reference includes a number of confusing and inconsistent drawings purportedly disclosing an electronic device inside a translucent cover.  Due to the overlapping lines introduced by this design, and apparent contradictions within different figures, an ordinary observer would not be able to ascertain a single design from the JP'383 figures that is visually similar to the D'087 design.  For instance, the JP'383 Design does not appear to disclose a thin bezel surrounding the front surface of the phone.  In some views, one can ascertain a line around the front surface that may denote a bezel element.  In other views, however, this demarcation line disappears, leaving the ordinary observer unclear as to whether a bezel is part of the design or not.  There also does not appear to be thin borders on the lateral sides of the display screen.  From the perspective views of the JP'383 design, it is clear that the screen effectively cuts the front surface in two portions, and that no narrow border is left on the lateral edges of the display.  Furthermore, the JP'383 design is entirely missing the speaker slot shown in the D'087 design.  Accordingly, the visual impressions

1  of the Samsung D'087 Accused Products are much closer to the D'087 Patent than is the visual

2  impression of the JP'383 Design.

| JP'383 Design | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
|  |  FIG. 9 <br>  FIG. 17 |  |
|  |  FIG. 11    FIG. 19 |  |
|  |  FIG. 7    FIG. 8 |  |

| JP'383 Design | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>FIG. 5<br><br>FIG. 6 |  |

143.  **JP'317 Design**.  The JP'317 Design is significantly different from both the design disclosed in the D'087 Patent and the Samsung D'087 Accused Products.  For instance, the JP'317 Design does not have a centered display screen with balanced borders above and below the screen.  The JP'317 Design is also entirely lacking a bezel surrounding the front surface.  The visual impressions of the Samsung D'087 Accused Products are much closer to the D'087 Patent than is the visual impression of the JP'317 Design.

| JP'317 Design | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>FIG. 11        FIG. 19 |  |
|  | <br>FIG. 7        FIG. 8 |  |

187.     As mentioned above, I also have reviewed news articles and publications drawing attention to the similarity between the iPhone and smartphones in Samsung's Galaxy S line.

188.     To determine whether each of the Samsung D'677 Accused Products infringes the D'677 Patent, I compared Figures 1, 3 & 5-8 of the D'677 Patent with analogous views of the corresponding portions of the Samsung D'677 Accused Products.  As shown below, the Apple iPhone (original) embodies the claim of the D'677 Patent.  Accordingly, I also compared views of the Apple iPhone (original) that correspond to Figures 1, 3 & 5-8 of the D'677 Patent with analogous views of the corresponding portions of the Samsung D'677 Accused Products.[63]

**B.     Comparison of the Prior Art**

189.     As part of my infringement analysis, I considered the similarities and differences between the claimed design of the D'677 Patent, the Samsung D'677 Accused Products, and certain purported prior art references cited by Samsung.

190.     This comparison benefitted my analysis by highlighting that none of the cited prior art comes close to the design disclosed in the D'67 Patent.  The prior art drawn to my attention includes the following:

- **JP'638 Design** (JP'638) (Exhibit 31).
- **LG Chocolate** (the Chocolate) (Exhibit 34).

191.     **JP'638 Design**.  Unlike the D'677 Patent and the Samsung D'677 Accused Products, the front face of the design disclosed in the JP'638 Design is neither flat nor translucent and black-colored from edge to edge.  In fact, as shown in the pictures below, the front surface of the JP'638 Design is significantly cambered and the screen is surrounded by opaque borders.  Furthermore, the JP'638 Design shows a much smaller speaker slot that is shifted near to the very top of the front surface.  The visual impressions of the Samsung D'677 Accused Products are much closer to the D'677 Patent than the visual impression of the JP'638 Design.

---

[63] To ensure accuracy, my comparisons involving the Accused Products and the Apple products were done using actual devices rather than pictures of the Accused Products or Apple products.  I reserve the right to rely on the actual devices for purposes of trial testimony.

| JP'638 Design | D'677 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  |  FIG. 1 |  |
|  |  FIG. 3 |  |
|  |  FIG. 7    FIG. 8 |  |
|  |  FIG. 5 <br>  FIG. 6 |  |

192.    **Chocolate**.  The LG Chocolate does not have a centered display screen with

balanced borders above and below the screen, which is noticeably different from the D'677

1    design and the Samsung D'677 Accused Products.  Rather the display screen is aligned closer to

2    the top of the design, rather than the center.  The side borders to the right and left of the screen are

3    also wider.  Moreover, the top and bottom edges are not straight.  There is also substantial

4    ornamentation in the form of a large metal button with a metallic-appearing rim and red marking,

5    which is surrounded by a number of smaller red buttons on the front surface below the display

6    screen. The visual impressions of the Samsung D'677 Accused Products are much closer to the

7    D'677 Patent than is the visual impression of the Chocolate.

| Chocolate | D'677 Patent Claim | Samsung Galaxy S 4G |
|-----------|--------------------|---------------------|
|  | | |

193.    The clear differences between the D'677 Patent and the prior art underscore my

view that the Samsung D'677 Accused Products infringe the D'677 Patent.  To that end, I have

conducted a three-way analysis of the prior art, the D'677 Patent, and the Samsung D'677

Accused Products.  Both the D'677 Patent and the Samsung D'677 Accused Products depart

conspicuously from the prior art designs with respect to the same relevant features.  Put another

way, the Samsung D'677 Accused Products are substantially similar to the D'677 Patent's design,

1  but are very different from the prior art.  Comparison charts depicting the three-way analysis are

2  shown below.

3        194.    Informed by my consideration of the prior art, and my conclusion that the prior art

4  does not come close to the D'677 Patent, I proceed to conduct an infringement analysis of the

5  D'677 Patent against the Samsung D'677 Accused Products, as set out below.

6        **C.      Samsung's Mesmerize (SCH-I500), Galaxy S Showcase (SCH-I500) &**
        **Fascinate (SCH-I500) Infringe the D'677 Patent**

| D'677 Patent Claim | Apple iPhone (original) | Samsung SCH-I500 (Mesmerize, Galaxy S Showcase & Fascinate) |
|---|---|---|
| <br>FIG. 1 | |  |
| <br>FIG. 3 | |  |
| <br>FIG. 7   FIG. 8 |  |  |

1      254.    This comparison benefitted my analysis by highlighting that none of the cited prior

2  art comes close to the design disclosed in the D'270 Patent.  The prior art drawn to my attention

3  includes the following:

4      •      **JP 1241638** (the JP'638 Design) (Exhibit 31).

5      •      **JP 1241383** (the JP'383 Design) (Exhibit 32).

6      •      **JP 1009317** (the JP'317 Design) (Exhibit 33).

7      255.    The clear differences between the D'270 Patent and the prior art underscore my

8  view that the Samsung D'270 Accused Products infringe the D'270 Patent.  To that end, I have

9  conducted a three-way analysis of the prior art, the D'270 Patent, and the Samsung D'270

10 Accused Products.  Both the D'270 Patent and the Samsung D'270 Accused Products depart

11 conspicuously from the prior art designs with respect to the same relevant features.  Put another

12 way, the Samsung D'270 Accused Products are substantially similar to the D'270 Patent's design,

13 but are very different from the prior art.  Comparison charts depicting the three-way analysis are

14 shown below.

15     256.    **JP'638 Patent**.  Unlike the D'270 Patent and the Samsung D'270 Accused

16 Products, the front face of the design disclosed in the JP'638 Patent is neither flat nor fully clear.

17 In fact, as shown in the pictures below, the front surface of the JP'638 Patent is significantly

18 cambered and the screen is surrounded by opaque borders.  Unlike a thin, continuous,

19 substantially uniform, and angled bezel like the D'270, the JP'638 has a thick bezel that forms a

20 part of the front enclosure of the phone that tapers near the top and bottom of the device.  The

21 JP'638 device is also much thicker in profile and its sides appear flat, which gives the device a

22 boxy appearance unlike the design disclosed in the D'270 Patent.  The visual impressions of the

23 Samsung D'270 Accused Products are much closer to the D'270 Patent than is the visual

24 impression of the JP'638 Patent.

25

26

27

28

| JP'638 Patent | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  | \n\nFIG. 1 |  |
|  | \n\nFIG. 3 |  |
|  | \n\nFIG. 4 |  |
|  | \n\nFIG. 5    FIG. 6 |  |

| JP'638 Patent | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>**FIG. 7**<br><br><br>**FIG. 8** | <br><br> |
|  | <br>**FIG. 9** |  |

257.   **JP'383 Design**.  The JP'383 Design is significantly different from both the design disclosed in the D'270 Patent and the Samsung D'270 Accused Products.  The JP'383 reference includes a number of confusing and inconsistent drawings purportedly disclosing an electronic device inside a translucent cover.  Due to the overlapping lines introduced by this design, and apparent contradictions within different figures, an ordinary observer would not be able to ascertain a single design from the JP'383 figures that is visually similar to the D'270 design.  For instance, the JP'383 Design does not appear to disclose a thin bezel surrounding the front surface of the phone.  In some views, one can ascertain a line around the front surface that may denote a bezel element.  In other views, however, this demarcation line disappears, leaving the ordinary observer unclear as to whether a bezel is part of the design or not.  Regardless, the JP'383 figures do not disclose a thin, continuous and angled bezel like that of the D'270 design.

258.   There also does not appear to be thin borders on the lateral sides of the JP'383 display screen.  From the perspective views of the JP'383 design, it is clear that the screen effectively cuts the front surface in two portions, and that no narrow border is left on the lateral edges of the display. The JP'383 Design is also much thicker, which gives the device a boxy

appearance unlike the design disclosed in the D'270 Patent.  The visual impressions of the
Samsung D'270 Accused Products are much closer to the D'270 Patent than is the visual
impression of the JP'383 Design.

| JP'383 Design | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  |  FIG. 1 |  |
|  |  FIG. 3 |  |
|  |  FIG. 4 |  |



| JP'383 Design | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|

259.    **JP'317 Design**.  The JP'317 Design is significantly different from both the design disclosed in the D'270 Patent and the Samsung D'270 Accused Products.  For instance, the JP'317 Design does not have a centered display screen with balanced borders above and below the screen.  The JP'317 Design is also entirely lacking a bezel surrounding the front surface.  The JP'638 device is much thicker and its sides appear flat, which gives the device a boxy appearance unlike the design disclosed in the D'270 Patent.  The visual impressions of the Samsung D'270 Accused Products are much closer to the D'270 Patent than is the visual impression of the JP'317 Design.

| JP'317 Design | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  | 

FIG. 3 |  |
|  | 

FIG. 4 |  |
|  | 

FIG. 5   FIG. 6 |  |
|  | 

**FIG. 7**



**FIG. 8** |  |

| JP'317 Design | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  |   FIG. 9 |  |

260.    Informed by my consideration of the prior art, and my conclusion that the prior art does not come close to the D'270 Patent, I proceed to conduct an infringement analysis of the D'270 Patent against the Samsung D'270 Accused Products, as set out below.

**C.    Samsung's Galaxy S i9000 Infringes the D'270 Patent**

| D'270 Patent Claim | Apple iPod touch | Samsung Galaxy S i9000 |
|---|---|---|
|   FIG. 1 |  |  |
|   FIG. 2 |  |  |

 

337.    LG has manufactured the Optimus T phone, which does not have a flat clear surface covering the front of the product.  Instead, the phone has a large asymmetrical opaque frame on the front of the product surrounding the clear surface.  The bottom portion of the frame includes three buttons including a prominent gray button that protrudes into the clear surface. Reviewers have commented that the phone has a "stylish and comfortable design"[87] and "a nice comfortable feel in the hand."[88]

 

338.    Moreover, many of Samsung's own commercially released phones are themselves alternative designs to the iPhone Trade Dresses.  For instance, each of these Samsung phones[89] below differ from the industrial design aspects of the various iPhone Trade Dresses.

---

[87] Jamie Lendino, "LG Optimus T," PCMag, Nov. 23, 2010, http://www.pcmag.com/article2/0,2817,2373001,00.asp.

[88] CNET, "LG Optimus T," http://reviews.cnet.com/smartphones/lg-optimus-t-burgundy/4505-6452_7-34204892.html#reviewPage1.

[89] From left to right:  Samsung i8910 Omnia HD (released May 2009); Samsung M7600 Beat DJ (released May 2009); Samsung Sunburst SGH-A697 (released March 2010); Samsung Gravity Touch SGH-T669 (released June 2010); Samsung Gem SCH-I100 (released February 2011).  *See* Ex. 21.  These phones do not constitute an
(Footnote continues on next page.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Original iPhone            iPhone 3G            iPhone 4



339.    For example, Samsung's Sunburst, Beat DJ, Gravity Touch, and Gem phones

(bottom row below) do not have rounded corners; rather the entire top and bottom sides of these

phones are rounded at the top, unlike the design reflected in the iPhone Trade Dresses, which has

a flat side along the top.

(Footnote continued from previous page.)

exhaustive list of Samsung's alternative designs that may be relevant; they are merely representative of some
alternatives that Samsung has commercialized.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
142

1

2

3

4

5

6

  

7        340.    Moreover, Samsung's Sunburst, Omnia HD, Gravity Touch, and Gem phones do

8   not have a flat clear surface covering the front of the phone.  Instead, these phones have arrays of

9   opaque buttons on the bottom portion of the front of the phone.

10

11

   

12

13       341.    The fact that Samsung and other manufacturers have commercially released

14  phones with alternative designs suggests that Samsung could have successfully manufactured the

15  designs with equivalent functionality for the end user.  There are many alternative designs by

16  third-party competitors that serve equivalent functionality as the iPhone Trade Dresses.  The

17  alternative designs discussed in the foregoing are in no way comprehensive.  The smartphone

18  field is filled with alternative, commercially viable designs that illustrate the nonfunctionality of

19  the various iPhone Trade Dresses.  Other phone designs that illustrate alternative renderings of

20  individual design elements include HTC Touch Dual, T-Mobile My-Touch, Palm Treo 700p,

21  HTC 7 Trophy T8686, Sony Ericsson Xperia S, Pantech Hotshot CDM8992VW, Modu 1 and

22  associated jackets, Modu T and associated jackets, Modu W, and Nokia X5-01.  These designs

23  illustrate the vast array of design choices Samsung possessed with respect to every design

24  element of its phones and undercut any contention that utilitarian or functional considerations

25  dictated the iPhone Trade Dresses.  *See* Ex. 21.

26       342.    Furthermore, Samsung itself has applied for and received design patents on the

27  ornamental design for its smartphones – many of which feature relatively large screens suitable

28  for use as a touch screen.  Samsung's own design patents undercut any contention that

1  smartphone design (or more specifically, touch-screen smartphone design) is restricted by

2  function to the iPhone Trade Dresses.  For example, U.S. D555,131 to Samsung claims a phone

3  design with a large display screen.  But the D'131 design, as shown below, also has curved top

4  and bottom sides, angled corners, adornments on the front face, and numerous other differences

5  from the various iPhone Trade Dresses.



13  343.   Other Samsung design patents similarly illustrate the design alternatives available

14  to Samsung for every feature of a phone, including U.S. Patent Nos. D561,156, D616,857,

15  D561,155, D562,794, D624,046, D616,856, and D629,780.

16  344.   Additionally, it is my understanding that Samsung considered alternative designs

17  that were different from the final commercially released designs of its phones.  Such alternative

18  designs are depicted in Exhibits 22-23.  These alternatives illustrate, for example:  a curved, clear

19  material on the front surface of the phone (for example, Ex. 22, Samsung model production No.

20  38); a display screen that is not centered on the front surface of the phone (*Id.*); a drastically non-

21  uniform and stylized bezel (*Id.*); and a front surface that is not entirely covered with a clear

22  material (Ex. 23, Samsung model production No. 9.6.3).  Indeed, Samsung documents show that

23  Samsung considered many alternative phone designs that did not look anything like the iPhone.

24  *See, e.g.,* SAMNDCA10105070-124; SAMNDCA10131459-568; SAMNDCA10202827-874;

25  SAMNDCA10808682-912.

26  345.   Moreover, Samsung witnesses testified that there were many alternative designs

27  available to them.  *See, e.g.*, Feb 8. , 2012 H.G. Song Dep. at 79:22-80:4; Feb. 2, 2012 J.S. Kim

28  Dep. at 29:3-18; 39:2-11; Feb. 2. 2012 J.M. Yeo Dep. at 14:3-16:6; Feb. 16, 2012 G.Y. Lee Dep.

1

 

2

3

4

5

6

7

8

9      358.    Likewise, Coby has manufactured the Kyros that does not have a flat clear surface

10 covering the front of the product.  Rather, the front display of the Kyros is framed by an opaque

11 plastic housing which adds to how "sturdy it seems."[97]  The Kyros has been commended for

12 being a "strong performing, well built tablet."[98]

13

 

14

15

16

17

18

19

20      359.    Sony has manufactured the Tablet S which has an alternative "folded" design

21 distinct from the iPad Trade Dress.  Commentators praised the industrial design as "smart" and

22 that "[i]ts unique wedge shape gives it a futuristic look and provides improved balance in your

23 hand compared with the flat competition."[99]  Also, when "placed on a table, the screen's forward

24

25      [97] William Harrel, "Coby Kyros Internet 8" Touch Screen Tablet Review & Ratings," Computer Shopper,
http://computershopper.com/tablets/reviews/coby-kyros-internet-8-touchscreen-tablet-mid8024/%28page%29/.

26      [98] Id.

27      [99] CNET, "Sony Tablet S," http://reviews.cnet.com/tablets/sony-tablet-s-32gb/4505-3126_7-
35003724.html#reviewPage1.

28

1  slant minimizes glare and makes it more comfortable to type."[100]  Others have complimented that

2  "it's one of the best-looking Android tablets around" with its "[c]omfortable, ergonomic design,"

3  and that as compared to the iPad2, which "tires [the] wrist very quickly, . . . the Tablet S feels like

4  it weighs much less than its 21.2 ounces." [101]



10  360.    The alternative designs discussed in the foregoing are in no way comprehensive.

11  The tablet computer field is filled with alternative, commercially viable designs that illustrate the

12  nonfunctionality of the iPad Trade Dress.  Other available alternative designs include, for

13  instance, the Panasonic Toughbook tablet, the Sony Reader, or the Sony Tablet P, as shown

14  below, or the GriDPAD 2050, the Motion Computing LS800, and the Freescale smartbook

15  concept.[102]  *See* Ex. 13.



22  361.    Moreover, the alleged prior art cited by Samsung against the D'889 design in its

23  opposition to Apple's Motion for Preliminary Injunction constitute alternative designs to the iPad

25  [100] *Id.*

26  [101] Sascha Segan, "Sony Tablet S," PCMag, Dec. 5, 2011,
http://www.pcmag.com/article2/0,2817,2397089,00.asp

27  [102]  These tablets do not constitute an exhaustive list of alternative designs that may be relevant; they are
merely representative of some alternatives that have been commercialized.

28

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
150

## XXI.  SUPPLEMENTATION

370.    I reserve the right to supplement or amend this report if additional facts and information that affect my opinion become available.  In particular, I understand that Samsung may serve an expert report concerning one or more of the issues addressed by this report.  I may therefore supplement or amend my report or opinions in response to additional discovery or other events and may rebut the expert report submitted by Samsung.

## XXII. EXHIBITS TO BE USED

371.    I anticipate using as Exhibits during trial certain documents and things referenced or cited in this report or accompanying this report.  I also anticipate using other demonstrative Exhibits or things at trial.

Dated:  March 22, 2012

_____
PETER BRESSLER