HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF SAMSUNG'S EXPERTS**<br><br>Date: June 21, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.      INTRODUCTION ..................................................................................................... 1

II.     LEGAL STANDARD ............................................................................................... 1

III.    ARGUMENT ............................................................................................................ 2

     A.    Itay Sherman ................................................................................................ 2

          1.    Sherman Is Not Qualified to Offer Expert Opinions on Obviousness or Anticipation. ................................................... 3

               a.     Sherman is not a designer of ordinary skill in the art. ................. 4

               b.     Sherman is unqualified to opine on the thoughts of ordinary observers. .................................................................. 5

          2.    Sherman's Testimony is Irrelevant Because He Does Not Apply the Correct Legal Tests. ...................................................... 6

     B.    Sam Lucente ................................................................................................ 7

          1.    Lucente's Opinion that the D'305 and D'344 Design Patents Are Obvious Should Be Excluded Because He Failed To Identify Any Reference that Creates Basically the Same Overall Visual Impression ............................................ 7

          2.    Lucente's Opinions on Trade Dress Distinctiveness and Any Similarity Between Claimed Trade Dress and Accused Products Should Be Excluded Because He Fails to Apply the Correct Legal Standards ................................ 9

          3.    Lucente's Opinions that the Apple Design Patents and Apple Trade Dress Are Invalid As "Functional" Should Be Excluded Because He Failed to Apply the Correct Legal Standard ...................................... 10

          4.    Lucente's Design Patent Non-Infringement Opinion Should Be Excluded Because It Is Based on His Defective "Functionality" Opinion and He Lacks Specialized Expertise Concerning an "Ordinary Observer" .......................... 11

     C.    Mark Lehto ................................................................................................ 11

          1.    Lehto Does Not Apply the Correct Legal Test for Design Patent Functionality. ............................................................. 12

          2.    Lehto's Test for Trade Dress "Functionality" Is Wrong. ..................... 13

     D.    Nicholas Godici ......................................................................................... 13

          1.    Godici Is Not Qualified to Opine about Design Patents ........................ 14

          2.    Godici's Opinions about Design Patent "Scope" And Infringement Should Be Excluded. ...................................................... 15

          3.    Godici's Opinions about "Ambiguous" Use of Broken Lines in the D'087 and D'677 Design Patents Should Be Excluded. ..................... 16

     E.    George Mantis, Michael Mazis and Michael Kamins ............................. 17

1      1. Mantis's Phone Confusion Survey is Irrelevant to Dilution .................. 17

2      2. Both Mantis Surveys Are Flawed Reading Tests, Not Trade Dress
       Confusion Tests.............................................................................. 18

3      3. Mazis's Survey is Not Relevant or Reliable ........................................... 19

4      4. Kamins's Flawed Control Renders His Survey Unreliable.................... 20

   F. Michael Wagner ....................................................................................... 21

5      1. Wagner's Apportionment of Samsung's Profits Based on Apple's
       Design Patents Should be Excluded as Inconsistent with 35 U.S.C.

6       § 289........................................................................................... 21

7      2. Wagner's Opinion That Evidence of "Demand for the Patented
       Features" Is Required Under *Panduit* Is Wrong. .................................. 22

8      3. Wagner's Apportionment of Profit on Trade Dress Claims is
       Unreliable and Should Be Excluded. ...................................... 22

9 IV.  CONCLUSION .............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Med. Sys. v. Laser Peripherals, LLC*,
    712 F. Supp. 2d 885 (D. Minn. 2010) ...................................................................... 2

*American Greetings Corp. v. Dan-Dee Imports, Inc.*,
    619 F. Supp. 1204 (D.N.J. 1985) ........................................................................... 19

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979).................................................................................... 9

*Applied Hydrogel Tech., Inc. v. Raymedica, Inc.*,
    No. 06-CV-2254 DMS (POR),
    2008 WL 5500756 (S.D. Cal. Oct. 7, 2008) ......................................................... 23

*Bergstrom v. Sears, Roebuck & Co.*,
    496 F. Supp. 476 (D. Minn. 1980) ......................................................................... 21

*Best Lock Corp. v. Ilco Unican Corp.*,
    94 F.3d 1563 (Fed. Cir. 1996)......................................................................... 10, 13

*Black & Decker (U.S.) v. Pro-Tech Power, Inc.*,
    26 F. Supp. 2d 834 (E.D. Va. 1998)........................................................................ 5

*Cabrera v. Cordis Corp.*,
    134 F.3d 1418 (9th Cir. 1998)................................................................................ 23

*Certain Liquid Crystal Display Devices and Products Containing the Same*,
    Inv. No. 337-TA-631 (Aug. 7. 2008) .................................................................... 14

*Chef'n Corp. v. Trudeau Corp.*,
    No. C08-01135 MJP,
    2009 U.S. Dist. LEXIS 47013 (W.D. Wash. June 4, 2009)..................................... 6

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
    251 F.3d 1252 (9th Cir. 2001)................................................................................. 7

*Crocs, Inc. v. ITC*,
    598 F.3d 1294 (Fed. Cir. 2010).............................................................................. 15

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ....................................................................................... vii, 1

*Degelman Indus. v. Pro-Tech Welding & Fabrication, Inc.*,
    No. 06-cv-6346T,
    2011 U.S. Dist. LEXIS 147953 (W.D.N.Y. Dec. 23, 2011) .................................. 14

*DePuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009)................................................................................................ 22

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
   158 F.3d 1002 (9th Cir. 2008)................................................................................................ 13

*DSU Med. Corp. v. JMS Co.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) ................................................................................ 1

*Durling v. Spectrum Furniture Co.*,
   101 F.3d 100 (Fed. Cir. 1996)................................................................................................ 3

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008)................................................................................................ 15

*Fiji Water Co. v. Fiji Mineral Water USA*,
   741 F. Supp. 2d 1165 (C.D. Cal. 2010) ................................................................................ 7

*Franklin Res., Inc. v. Franklin Credit Mgmt. Corp.*,
   988 F. Supp. 322 (S.D.N.Y. 1997)........................................................................................ 19

*Franzia Winery L.P. v. Almaden Vineyards*,
   No. C-94-3186-VRW,
   1994 U.S. Dist. LEXIS 13963 (D. Nev. Sept. 30, 1994) ...................................................... 9

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987)........................................................................................ 11, 13

*Gable v. NBC*,
   727 F. Supp. 2d 815 (C.D. Cal. 2010) .................................................................................. 2

*Guidroz-Brault v. Missouri Pac. R.R. Co.*,
   254 F.3d 825 (9th Cir. 2001).................................................................................................. 1

*Herbert v. Lisle Corp.*,
   99 F.3d 1109 (Fed. Cir. 1996)................................................................................................ 2

*Hupp v. Siroflex of Am., Inc.*,
   122 F.3d 1456 (Fed. Cir. 1997).............................................................................................. 7

*In re Borden*,
   90 F.3d 1570 (Fed. Cir. 1996)................................................................................................ 3

*In re Live Concert Antitrust Litig.*,
   No. 06-ML-1745-SVW,
   2012 U.S. Dist. LEXIS 47768 (C.D. Cal. Mar. 23, 2012) ...................................................... 2

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009).............................................................................................. 3

*Jada Toys, Inc. v. Mattel, Inc.*,
    518 F.3d 628 (9th Cir. 2007)........................................................................... 18

*Junker v. HDC Corp.*,
    No. C-07-05094,
    2008 WL 3385819 (N.D. Cal. July 28, 2008) ....................................................... 21

*Keystone Retaining Wall Sys., Inc. v. Rockwood Retaining Wall, Inc.*,
    Civ. No. 00-496,
    2001 U.S. Dist. LEXIS 26272 (D. Minn. Oct. 9, 2001)........................................ 6

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ....................................................................................... 1

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993)................................................................... 6, 7

*Leverette v. Louisville Ladder Co.*,
    183 F.3d 339 (5th Cir. 1999).......................................................................... 2

*Lust By and Through Lust v. Merrell Dow Pharms., Inc.*,
    89 F.3d 594 (9th Cir. 1996).......................................................................... 23

*Marley Mouldings Ltd. v. Mikron Indus.*,
    417 F.3d 1356 (Fed. Cir. 2005)..................................................................... 16

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002)........................................................................ 18

*Nike Inc. v. Wal-Mart Stores*,
    138 F.3d 1437 (Fed. Cir. 1998)..................................................................... 21

*Paddington Corp. v. Attiki Imps. & Distribs., Inc.*,
    996 F.2d 577 (2d Cir. 1993).......................................................................... 9

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978)....................................................................... 22

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2006)........................................................ 2, 4, 5, 15

*THOIP v. Walt Disney Co.*,
    690 F. Supp. 2d 218 (S.D.N.Y. 2010)............................................................ 20

*Tone Bros., Inc. v. Sysco Corp.*,
    No. 90-cv-60011,
    1992 WL 200128 (S.D. Iowa Mar. 17, 1992) ................................................. 16

*U.S. ex rel. Bahrani v. ConAgra, Inc.*,
  624 F.3d 1275 (10th Cir. 2010).............................................................. 2

*Vision Sports, Inc. v. Melville Corp.*,
  888 F.2d 609 (9th Cir. 1989)................................................................ 19

**STATUTES**

35 U.S.C. § 289 ..................................................................................... 21

**OTHER AUTHORITIES**

Fed. R. Evid.
  401................................................................................................ vii, 1
  402................................................................................................ vii, 1
  403................................................................................................ vii, 1
  702................................................................................................ *passim*

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on June 21, 2012, at 1:30 p.m., or as soon as the matter

4

may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the

5

Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San

6

Jose, CA 95113, Apple Inc. shall and hereby does move the Court for an order, pursuant to

7

Federal Rules of Evidence 401, 402, 403, and 702, and *Daubert v. Merrell Dow Pharms., Inc.*,

8

509 U.S. 579 (1993) to exclude certain testimony of Samsung's proffered experts Itay Sherman,

9

Sam Lucente, Mark Lehto, Nicholas Godici, George Mantis, Michael Mazis, Michael Kamins,

10

and Michael Wagner.

11

This motion is based on this notice of motion and supporting memorandum of points and

12

authorities; the Declaration of Jason Bartlett In Support of Apple's Motion to Exclude Testimony

13

of Samsung's Experts; the Declaration of Russell S. Winer in Support of Apple's Motion to

14

Exclude Testimony of Samsung's Experts; and such other written or oral argument as may be

15

presented at or before the time this motion is taken under submission by the Court.

16

**STATEMENT OF ISSUES TO BE DECIDED**

17

1.  Whether Samsung's proffered expert testimony should be excluded under Federal

18

Rules of Evidence 401, 402, 403, or 702, or *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579

19

(1993).

20

21

Dated:  May 17, 2012                                MORRISON & FOERSTER LLP

22

23

By:    */s/ Harold J. McElhinny*

24

Harold J. McElhinny

25

Attorneys for Plaintiff
APPLE INC.

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Samsung's experts Itay Sherman, Sam Lucente, Mark Lehto, Nicholas Godici, George Mantis, Michael Mazis, Michael Kamins and Michael Wagner each purport to offer opinions that must be excluded under Federal Rules of Evidence 401, 402, 403, 702, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Sherman and Godici are unqualified, and should be excluded entirely on that basis. Sherman, Lucente and Lehto all rely on the wrong legal standard. Mantis, Mazis and Kamins offer surveys that are fatally flawed and no longer relevant to claims Apple will try. Wagner's analysis purporting to "apportion" design patent infringement damages is contrary to law, and absurd on it face. This testimony must be excluded.

## II.    LEGAL STANDARD

"[S]cientific, technical, or other specialized knowledge" may be admissible where it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. *Id.* The district court is a "gatekeeper," charged with the duty to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999); *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). Even if an expert's opinion is reliable, it will be inadmissible if it is unhelpful to the trier of fact. *Daubert* at 591-92.

Exclusion of testimony is the only remedy sufficient to protect against the inherent power of expert evidence, which can be "quite misleading because of the difficulty in evaluating it." *Id.* at 595. The party who proffers the expert testimony bears the burden of demonstrating its admissibility by a preponderance of the evidence. *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003).

If a witness is not "qualified as an expert by knowledge, skill, experience, training, or education" in the pertinent art, then that witness cannot "assist the trier of fact to understand the

1  evidence or determine a fact in issue" and "serves only to cause mischief and confuse the

2  factfinder." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2006)

3  (excluding expert testimony on infringement and invalidity from one who lacked skill in pertinent

4  art); *see also In re Live Concert Antitrust Litig.*, No. 06-ML-1745-SVW, 2012 U.S. Dist. LEXIS

5  47768 (C.D. Cal. Mar. 23, 2012) (excluding expert testimony from economist who lacked

6  expertise in analyzing relevant product market).  Additionally, an opinion "must be an expert

7  opinion (that is, an *opinion informed by the witness' expertise*) rather than simply an opinion

8  broached by a purported expert." *Gable v. NBC*, 727 F. Supp. 2d 815, 833 (C.D. Cal. 2010).

9       Expert testimony that fails to follow the proper legal standard is irrelevant and based on an

10  unreliable methodology, and therefore must be excluded.  *See Leverette v. Louisville Ladder Co.*,

11  183 F.3d 339, 341 (5th Cir. 1999); *U.S. ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275

12  (10th Cir. 2010).  Incorrect statements of law are no more admissible through "experts" than are

13  falsifiable scientific theories.  *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996); *Am.*

14  *Med. Sys. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 901 (D. Minn. 2010) (excluding expert

15  opinions based on incorrect legal standard).

16  **III.   ARGUMENT**

17      **A.   Itay Sherman**

18       Itay Sherman is a professional consultant based in Israel with degrees in electrical and

19  biomedical engineering.  (Declaration of Jason Bartlett In Support of Apple's Motion to Exclude

20  Testimony of Samsung's Experts ("Bartlett Decl.") Ex. 2 at 1.)  Sherman acknowledges he is

21  neither "an industrial designer" nor "an industrial design expert."  (Bartlett Decl. Ex. 3 at 161:16-

22  162:7 ("I'm not claiming to be myself an industrial design expert . . . I have not claimed in any of

23  my reports or discussions of being an industrial designer myself.").)  He has no training in

24  industrial design and has not worked on the industrial design of any products.

25       Notwithstanding his lack of qualifications in the area of industrial design, Sherman

26  purports to opine that the asserted design patents are obvious or anticipated by prior art designs.

27  (Bartlett Decl. Ex. 1 at 3.)  Sherman also opines that the asserted design patents and trade dress

28  are functional.  (*Id.*)  Sherman's opinions on obviousness and anticipation should be excluded as

unreliable because he lacks any qualifications for them, and his opinions on obviousness and functionality should be excluded as irrelevant because he does not apply the correct legal tests.

### 1. Sherman Is Not Qualified to Offer Expert Opinions on Obviousness or Anticipation.

Determining obviousness for design patents is a two-step process governed by well-settled law.  First, there must be "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'"  *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (quoting *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982)); *see Apple Inc. v. Samsung Elecs. Co.*, No. 2012-1105, 2012 U.S. App. LEXIS 9720, at *32 (Fed. Cir. May 14, 2012 (quoting *Durling* and *In re Rosen*).  Only after such a primary reference has been identified can other "secondary references" be used to modify it to create a design that has the same overall appearance as the claimed design and thus render the design at issue obvious.  *Id.* at *32-33.  For this, the visual appearance of the primary and secondary references must be "'so related that the appearance of certain ornamental features in one would suggest the application of those features to the other.'"  *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996) (quoting *In re Glavas*, 230 F.2d 447, 450 (C.C.P.A. 1956)); *see Apple*, 2012 U.S. App. LEXIS 9720, at *36-37 (prior art cannot be secondary reference where it "is so different in visual appearance from" primary reference that it would not suggest the application of design features found in one reference to the other).  The choice of whether to combine references is determined from the point of view of a designer of ordinary skill in the art.  *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009).  After the primary reference is modified using the secondary reference to create a hypothetical piece of prior art, obviousness results only if that hypothetical reference creates substantially the same visual impression as the claimed design in the eyes of an ordinary observer.  *Id.* at 1240-41.  This test ("substantially the same visual impression") is also used to determine whether a single piece of prior art anticipates a patented design.  *Id.*

1   Sherman is not qualified to offer opinions as a designer of ordinary skill in the art or as

2   one who understands whether ordinary observers would view two designs as substantially the

3   same.

4               a.      **Sherman is not a designer of ordinary skill in the art.**

5   Sherman's singular lack of qualification as a designer of ordinary skill in the art is

6   striking.  Sherman admits he is neither an industrial designer nor an expert in industrial design.

7   (Bartlett Decl. Ex. 3 at 161:16-162:7.)  He then purports to opine on the obviousness of industrial

8   designs, including what references would be combined by a designer of ordinary skill in the art.

9   (*See, e.g.*, Bartlett Decl. Ex. 1 at 30 ("[I]t would have been obvious to someone skilled in the art

10  to combine these references.").)  Sherman is unqualified to opine on what someone "skilled in the

11  art" would view as obvious, however, because he is not a designer skilled in the art.  *Sundance,*

12  *Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008) (abuse of discretion to

13  deny motion in limine where purported expert did not possess relevant expertise in pertinent art).

14  Sherman fails both Apple's and Samsung's tests for a "designer of skill in the art" of the

15  patents at issue.  Apple's expert Peter Bressler states that a designer of skill in the art is a person

16  with a Bachelor of Science or its equivalent in industrial or product design with at least two years

17  of work experience as an industrial designer, including experience in the design of electronic

18  devices.  (Bartlett Decl. Ex. 6 ¶ 91.)  Samsung's own design patent noninfringement expert,

19  Robert Anders, states that a designer of skill in the art would have a degree in mechanical

20  engineering or industrial design and about 1-2 years of experience in designing the external

21  design of electronic devices, or experience as a designer in academia who conducted research

22  interfaces and taught industrial design students.  (Bartlett Decl. Ex. 7 at 15; Bartlett Decl. Ex. 8 at

23  111:23-112:8.)  Sherman does not meet *either* of these definitions.  Sherman's education is in

24  electrical engineering, not mechanical engineering.  His involvement with cellular phone design

25  has focused on the management of internal circuit, component, and other functional

26  considerations.  (Bartlett Decl. Ex. 4 at 112:9-116:21.)  Sherman is a named inventor on 17 utility

27  patents, but no design patents.  (*Id.*)  As for industrial design, Sherman entrusted industrial design

28  decisions to industrial designers, and at best, managed them.  (*Id.* at 102:20-105:19.)  Thus,

Sherman by his own admission is not a designer of ordinary skill in the field of the asserted design patents.[1]

"Admitting testimony from a person . . . with no skill in the pertinent art, serves only to cause mischief and confuse the factfinder." *Sundance*, 550 F.3d at 1362.  For that reason, it "is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Id.* at 1363; *see also Black & Decker (U.S.) v. Pro-Tech Power, Inc.*, 26 F. Supp. 2d 834, 848 (E.D. Va. 1998).  In *Black & Decker*, the court discounted as "unqualified to provide credible testimony" the opinion of a purported expert who had a "limited background as an industrial designer." *Id.*  The grounds to exclude Sherman's testimony are even stronger because his background in industrial design is not just "limited"—it is entirely nonexistent.

### b.     Sherman is unqualified to opine on the thoughts of ordinary observers.

Bressler defines the "ordinary observer" as "a member of the general consuming public that buys and uses smartphones or tablets."  (Bartlett Decl. Ex. 5 ¶ 30.)  Anders's definition is similar: "a consumer or purchaser of electronic devices such as computers, monitors, portable digital assistants, and/or cell phones."  (Bartlett Decl. Ex. 7 at 15.)  Sherman has no qualifications that would enable him to testify as to what such an ordinary observer thinks.  He has never studied consumer purchasing decisions.  (Bartlett Decl. Ex. 4 at 51:19-52:1.)  He conducted no research on U.S. consumer behavior.  (*Id.* at 56:23-57:6.)  He has no special familiarity with the design principles or relevant art, as he is not an industrial designer.

Sherman fails to explain how he is qualified to opine on the thoughts of an ordinary observer, as he apparently has no experience beyond that of the ordinary observer him- or herself.  Purported "expert" testimony based on nothing more than personal experience with phones is of

---

[1]In contrast with the definitions set out by Bressler and Anders, Sherman sets out a definition so vague as to be meaningless.  He states that a person of ordinary skill "would have had experience designing electronic devices, including those with displays."  (Bartlett Decl. Ex. 1 at 6.)  Sherman does not specify education levels or types, or the quantity or type of design experience required.  The definition would be met by a first-year engineering student who worked on a single design project focusing solely on the internal electrical components of a device with a touch screen.

no help to the trier of fact and does not meet Rule 702 standards for expert testimony.  *See, e.g.*, *Chef'n Corp. v. Trudeau Corp.*, No. C08-01135 MJP, 2009 U.S. Dist. LEXIS 47013, at *4-5 (W.D. Wash. June 4, 2009) (declarations inadmissible that opined on ordinary observers' thoughts and were not based on consumer surveys or interviews); *Keystone Retaining Wall Sys., Inc. v. Rockwood Retaining Wall, Inc.*, Civ. No. 00-496 (RHK/SRN), 2001 U.S. Dist. LEXIS 26272, at *19 (D. Minn. Oct. 9, 2001) (purported expert who was "simply another ordinary observer" and "not one skilled in the relevant art" not permitted to opine regarding infringement).

### 2.    Sherman's Testimony is Irrelevant Because He Does Not Apply the Correct Legal Tests.

Sherman has not even attempted to recite, much less apply, the correct legal test for obviousness, discussed above at 3-4.  He does not identify any art as "basically the same" as the asserted design patent, much less identify a "primary reference."  In fact, Sherman does not use the phrase "primary reference" or "secondary reference" anywhere in his report.  Instead, he simply lists a number of references without analyzing whether they are "basically the same," and then states in a conclusory manner that other purported prior art could modify those references to create the asserted designs.  He does not analyze whether that other prior art is so related as to suggest a combination that would suffice to identify a secondary reference.  As the Federal Circuit has held, obviousness is not an issue "[i]n the absence of a qualifying primary reference." *See Apple Inc.*, 2012 U.S. App. LEXIS 9720, at *38.  Accordingly, Sherman's obviousness opinions are legally insufficient, irrelevant, and should be excluded.

Sherman also opines on functionality as to both design patents and trade dress, without applying the proper legal standards.  His opinion that "Apple's design patents and trade dress are functional" (Bartlett Decl. Ex. 1 at 88) should be excluded because Sherman misunderstands the doctrine of functionality as it applies to design patents and trade dress.

This Court has already found that a design patent is functional "when the appearance of the claimed design as a whole is 'dictated by' the use or purpose of the article."  (Dkt. No. 452 at 12; *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("If the *particular* design *is essential to the use of the article*, it can not be the subject of a design

1    patent.") (emphasis added).  "Just because various elements of [design patents] *enhance* the user

2    experience does not necessarily mean that the patented design is *dictated by* functionality.  (Dkt.

3    No. 452 at 13 (emphasis in original).)  The "ultimate question" is not the "functional or

4    decorative aspect of each separate feature, but the *overall appearance of the article*, in

5    determining whether the claimed design is dictated by the utilitarian purpose of the article."  *L.A.*

6    *Gear*, 988 F.2d at 1123 (emphasis added).  Merely performing a function is not the same as being

7    "dictated by function."  "[T]he fact that the article of manufacture serves a function is a

8    prerequisite of design patentability, not a defeat thereof.  The function of the article itself must

9    not be confused with the 'functionality' of the design of the article."  *Hupp v. Siroflex of Am.,*

10   *Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997).  Sherman does not analyze whether the overall design

11   claimed in the asserted Apple design patents is dictated by function.

12        Sherman's analysis of trade dress functionality is even more perfunctory and flawed.  In a

13   roughly half-page section that appears almost an afterthought, he asserts that each of the asserted

14   trade dress *elements* is functional.  (Bartlett Decl. Ex. 1 at 105-06.)  He does not assess the trade

15   dress "*as a whole*."  "The fact that individual elements of the trade dress may be functional does

16   not necessarily mean that the trade dress *as a whole* is functional."  *Clicks Billiards, Inc. v.*

17   *Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001); *see also Fiji Water Co. v. Fiji Mineral*

18   *Water USA*, 741 F. Supp. 2d 1165, 1172-73 (C.D. Cal. 2010) (even if the square shape of a water

19   bottle is "primarily functional," water bottle design as a whole may be non-functional).  Because

20   Sherman applies the wrong legal standard, his opinion is irrelevant.

### B.    Sam Lucente

22        Sam Lucente opines on infringement and validity of Apple's D'305 and D'344 patents,

23   and on aspects of Apple's trade dress.  His opinions should be excluded because he fails to apply

24   the correct law and has no basis to opine about what an "ordinary observer" would think.

### 1.    Lucente's Opinion that the D'305 and D'344 Design Patents Are Obvious Should Be Excluded Because He Failed To Identify Any Reference that Creates Basically the Same Overall Visual Impression

27        Lucente argues that the D'305 and D'344 design patents are obvious in view of a

28   combination of prior art references.  (Bartlett Decl. Ex. 9 at 33-78.)  Lucente's opinion should be

1  excluded because he fails to identify a primary reference that creates "basically the same overall

2  visual impression" as the patented designs, as required by controlling law.  *See Apple Inc.*, 2012

3  U.S. App. LEXIS 9720, at *36, *38.  Although Lucente refers to several references as "primary

4  obviousness references," he never opines that any reference creates "basically the same visual

5  impression" as the claimed designs.  (Bartlett Decl. Ex. 9 at 33-42.)  When asked this question at

6  his deposition, Lucente repeatedly refused to opine that alleged primary references were

7  "basically the same" as the patented designs.  (Bartlett Decl. Ex. 11 at 46:20-47:15; 56:12-58:9;

8  87:18-88:6.)

9       For example, when asked whether any of the LG Prada screens in his report is "basically

10  the same" as the D'305, Lucente replied "no."  (Bartlett Decl. Ex. 11 at 46:21-47:2.)  He then

11  recharacterized the question by asserting that the "combination of all these screens" would make

12  it "obvious" to create the D'305 design, because various "design elements existed within this [LG

13  Prada] phone."  (*Id*. at 47:2-15; *see* Bartlett Decl. Ex. 9 at 37-38.)  This is not the test for

14  obviousness.

15       With regard to another ostensibly "primary reference," Lucente asserted that *if* it were

16  altered to display squares instead of rectangles, the altered "grid pattern, icon size, and icon

17  spacing" would be "virtually identical" to those elements in the D'305 and D'334.  (Bartlett Decl.

18  Ex. 9 at 39.)  The test, however, is whether the *overall design* of the *original* reference creates

19  basically the same visual impression.  Lucente conceded that even if the rectangles were changed

20  into squares, the purported similarity would not extend to the entire design but would be limited

21  to specific elements, namely the "grid pattern, icon size, and icon spacing."  (Bartlett Decl. Ex. 11

22  at 81:15 to 82:18.)  This is not the correct test.

23       When asked to confirm that his report did not opine that "a design in its overall visual

24  impression is substantially the same" as Apple's patented designs, Lucente reiterated that "based

25  on the prior art that I've [been] shown, it would have been obvious to a designer" to create the

26  patented designs.  (*Id*. at 87:18-88:6.)  Lucent thus sought to jump directly from prior art to the

27  ultimate obviousness conclusion, *without* identifying a primary reference that looks "basically the

28  same."  Lucente's obviousness opinions are thus based on the wrong legal standard.

1

2

**2.**      **Lucente's Opinions on Trade Dress Distinctiveness and Any Similarity Between Claimed Trade Dress and Accused Products Should Be Excluded Because He Fails to Apply the Correct Legal Standards**

3        Lucente opines that Apple's asserted trade dress lacks distinctiveness (Bartlett Decl. Ex. 9

4    at 3.) and that consumers would not associate the Graphical User Interface (GUI) of the Accused

5    Products with any source, sponsorship, affiliation, or connection other than Samsung (Bartlett

6    Decl. Ex. 10 at 3).  These opinions are not based on the relevant legal tests and therefore are

7    likely to confuse the jury.

8        The test for distinctiveness of trade dress requires analysis of the trade dress as a whole.

9    *See Franzia Winery L.P. v. Almaden Vineyards*, No. C-94-3186-VRW, 1994 U.S. Dist. LEXIS

10   13963, at *8-9 (D. Nev. Sept. 30, 1994); *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*,

11   996 F.2d 577, 584 (2d Cir. 1993).  Lucente ignores this legal standard, analyzing just "three

12   elements" relating to Apple's GUI and concluding that none is distinctive in the marketplace.

13   (Bartlett Decl. Ex. 9 at 80-89.)  Lucente never considers the total impression of Apple's trade

14   dress and whether it is distinctive.  His opinions on distinctiveness are thus likely to confuse the

15   jury.

16       The legal test for likelihood of confusion as to source, sponsorship, or affiliation is the

17   *Sleekcraft* eight-factor analysis, which Lucente correctly notes.  (Bartlett Decl. Ex. 10 at 5 n.16,

18   46, citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979).)  However, Lucente

19   purports to reach the ultimate conclusion—whether consumers are likely to be confused and

20   mistakenly associate the source, sponsorship, or affiliation of the Accused Products' GUI with

21   something other than Samsung—after an analysis of only three cherry-picked factors:  strength,

22   similarity, and intent.  (*Id.* at 46.)  Lucente's failure even to consider any of the other Sleekcraft

23   factors, without explaining their exclusion, renders his opinion unreliable and irrelevant.  Further,

24   Lucente's analysis of the "similarity" factor with reference to what "consumers have come to

25   expect" and "functionality" at pages 47-48 of his rebuttal report is likely to confuse, rather than

26   assist, the jury because those issues are not relevant to determining whether the trade dress is

27   similar.  These opinions should be excluded.

28

### 3. Lucente's Opinions that the Apple Design Patents and Apple Trade Dress Are Invalid As "Functional" Should Be Excluded Because He Failed to Apply the Correct Legal Standard

Lucente opines that Apple's D'305 and D'344 design patents and Apple's trade dress are invalid because they are "functional." (Bartlett Decl. Ex. 9 at 3.) These opinions should be excluded because, like Sherman, Lucente failed to apply the correct standard.

As discussed above, a design is functional only when the appearance of the claimed design is "dictated by" the use or purpose of the article. That Apple's designs *enhance* the user experience does not necessarily mean that the patented design is *dictated* by functionality, as this Court noted. (Dkt. No. 452 at 13.) Lucente refers to the "dictated by function" test, but then attempts to dilute that test by omitting the key word "only" from the Federal Circuit's holding that a design is functional if it is "the result of functional considerations *only*." (*See* Bartlett Decl. Ex. 9 at 4, citing *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988) (emphasis added).) The Federal Circuit's inclusion of the word "only" makes clear that a design is *not* "functional" if it reflects *both* functional and aesthetic considerations.

Having watered down the "dictated by function" test, Lucente misapplies it. He opines that the "grid of rounded squares, separate lower grouping of rounded squares, and the size, shape and number of the 16 rounded squares are all *functional elements* in the D'305 patent." (Bartlett Decl. Ex. 10 at 20 (emphasis added).) Lucente does *not* assert that these "elements" are "dictated by function," which is a stringent test he cannot meet. Function does not "dictate" the use of rounded squares, for example. Lucente's own report discloses alternatives such as rectangles (Finnish design), squares with sharp corners (Sharp), or icons that are simply pictures with no surrounding squares or rectangles (Simon and LG Prada phones). (*See id.* at 35, 38-39.) The existence of viable alternative designs is evidence that the patented design is ornamental rather than functional. *Id.*; *see Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) ("A design is not dictated solely by its function when alternative designs . . . are available"). Lucente also opines that almost every other aspect of Apple's patented designs is "functional," without explaining why those designs are "dictated" by function. (*Id.* at 20-25.)

1    Lucente compounds this error by improperly evaluating functionality on an element-by-

2    element basis, instead of focusing on the appearance of the patented design as a whole.  Lucente

3    does not even attempt to analyze the design patents as a whole or explain how their overall

4    appearance is dictated by function.  His opinion that the design patents are invalid due to

5    functionality should be excluded because he has failed to apply the controlling legal standard.

6    Similarly, Lucente does not allege that Apple's trade dress is functional *as a whole*, much

7    less provide an analysis in support of that conclusion.  (*Id.* at 25.)  Trade dress is functional if, *as*

8    *a whole*, as opposed to on an element-by-element basis, it is essential to the product's use or

9    favorably affects the cost and quality of the product.  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,

10   826 F.2d 837, 842-43 (9th Cir. 1987).  Lucente's opinion that Apple's trade dress is functional

11   should be excluded because it ignores this controlling legal standard.

12
13              **4.    Lucente's Design Patent Non-Infringement Opinion Should Be**
                        **Excluded Because It Is Based on His Defective "Functionality"**
                        **Opinion and He Lacks Specialized Expertise Concerning an**
14                      **"Ordinary Observer"**

15   Lucente asserts that an "ordinary observer" would not find the graphical user interfaces of

16   Samsung's accused products to be substantially the same as the D'305 and D'334 Patents.

17   (Bartlett Decl. Ex. 10 at 3.)  Lucente's opinion should be excluded for two independent reasons.

18   First, Lucente has no specialized expertise in what an "ordinary observer" would think.  Indeed,

19   Lucente looks at designs from the perspective of an expert designer, and not that of an "ordinary

20   observer."  Thus, Lucente is not qualified to render an opinion on this subject.

21   Second, Lucente excludes from his infringement analysis all "functional" aspects of the

22   patented designs, which in his opinion includes virtually every feature of the patented designs.

23   (*Id.* at 16.)  As discussed above, Lucente's "functionality" analysis fails to apply the "dictated by

24   function" standard.  Therefore, Lucente's infringement analysis is also flawed.

25              **C.    Mark Lehto**

26   Mark Lehto also addresses the alleged functionality of Apple's asserted design patents and

27   trade dress, as an expert in "safety, human factors, ergonomics, and warnings."  (Bartlett Decl.

28   Ex. 12 at 1, 2.)  Purporting to apply "principles of applied anthropometry and ergonomics," Lehto

opines that "rounded corners" and a "thin rectangular shape," are functional because they "comfortably fit" the human hand and into pockets, among other reasons.  (*See id*. at 11-12, 25.) Apple's rounded square icons, he opines, are designed according to "Fitt's Law" to balance the "time and effort to touch a smaller target" compared to a larger one.  (*Id*. at 23.)  He also opines that Apple's colorful icons are a "textbook" "grouping of controls" which are "clearly functional" because they are "familiar and intuitive."  (*Id*. at 24.)  The "fundamental principal of interface design" called "Consistency," he explains, establishes that the rounded squares "imply" that the icons are "tappable."  Apple's choice of icons, can be explained by comparing the area formulas "(w*w)" for squares and "3.1416*w*w/4" for circles.  Circles, he concludes, would have less area than a rounded rectangle.  (*Id.* at 24.)

Lehto cites no studies or peer-reviewed publications sufficient to support these opinions. Countless alternatives in the market that differ from the iPhone in every design aspect that Lehto cites make these opinions suspect on their face.  Even taking them at face value, they are legally irrelevant.  As discussed above at 6-7, the test for "functionality" under design patent and trade dress law is not whether each individual element of the asserted design performs some function.

**1. Lehto Does Not Apply the Correct Legal Test for Design Patent Functionality.**

Lehto's report acknowledges that the test for whether a design is functional is whether the "appearance of the claimed design is 'dictated by' the use or purpose of the article" (Bartlett Decl. Ex. 12 at 3), but he does not apply that test.  Lehto's deposition confirmed that he only considered, on an element-by-element basis, whether individual design elements performed some function, not whether the overall design is dictated by function.  (*Id.* at 107:22-24.)

Lehto offered no fewer than eight (incorrect) definitions for functionality at his deposition. (*See* Ex. 13 at 116:19-117:22; 118:7-20; 127:25-128:18; 141:13-18; 192:5-13; 77:1-25; 251:2-7; 280:17-19.)  Many design variations have functional benefits under one or more of these definitions.  That a design "provides functionality" (*id*. at 251:2-7) does not mean it is "dictated by function."

1    Lehto also failed to consider alternative designs, although it is well settled that a "design

2    is not dictated solely by its function when alternative designs for the article of manufacture are

3    available." *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed Cir. 1996).  Lehto

4    was not even asked to consider design alternatives as part of his analysis.  (*See* Bartlett Decl.

5    Ex. 13 at 354:24-355:4 ("I was asked to analyze what was in the patents and the trade dress and

6    whatnot, so that's what I did. . . . [T]here wasn't a reason for me to go out and analyze other

7    phones.").)  According to Lehto, "looking at alternative designs has nothing to do with

8    determining whether the elements that were in the design patents or the elements in the trade

9    dress were functional."  (*Id.* at 359:6-10; *see also id.* at 63:24-64:12; 68:17-70:5; 355:7-357:15;

10   358:4-359:6.)  Lehto's failure to consider the alternative designs is unsupportable.

11              **2.    Lehto's Test for Trade Dress "Functionality" Is Wrong.**

12   Lehto's opinion that Apple's asserted trade dress is "functional" suffers from the same

13   fatal defects as his analysis of Apple's asserted design patents.  Even where "individual elements"

14   of a design are functional, they do not render the trade dress *as a whole* functional.  A protectable

15   trade dress can consist of a collection of entirely functional individual elements.  *See*

16   *Fuddruckers*, 826 F.2d at 842.  And Lehto is simply wrong that alternative designs are legally

17   irrelevant under trade dress law." (Bartlett Decl. Ex. 12 at 30; *see also* Bartlett Decl. Ex. 13 at

18   359:6-10.)  Whether alternative designs are available is one of four factors to be used in assessing

19   functionality of a trade dress.  *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006

20   (9th Cir. 2008).  Because Lehto applied the wrong legal test, testimony will mislead the jury and

21   should be excluded.

22          **D.    Nicholas Godici**

23   Nicholas Godici opines on the "scope" of the Apple design patents and the supposed

24   "ambiguity" of certain design patents.  All of Godici's opinions should be excluded because he

25   has no expertise regarding design patents or industrial design, and he addresses legal issues that

26   would not assist the jury in understanding any fact in issue.

27

28

## 1.        Godici Is Not Qualified to Opine about Design Patents

Godici has substantial experience with utility patents, but virtually no experience with design patents.  He admitted at his deposition that:

- While at the Patent & Trademark Office (PTO), he examined utility patents, not design patents (Bartlett Decl. Ex. 15 at 22:22-23:10);

- Design patent specialists examine design patent applications (*id.* at 23:11-15);

- The PTO hires design patent examiners who have a background in design, such as graphics, graphic design, or architecture (*id.* at 23:16-22);

- Godici lacks the training required of design patent examiners (*id.* at 23:23-24:6);

- Godici is not opining as a person of ordinary skill in industrial design, electronic devices, or graphical user interfaces (*id.* at 14:10-15:25; 23:18-24:6; 202:12-24);

- Godici is not an attorney and has never rendered an opinion or made a decision on claim construction, infringement, validity, or patentability of a design patent (*id.* at 30:9-34:11, 42:16-43:2; Bartlett Decl. Ex. 16 at 6:14-15); and

- Godici has lectured on general patent topics, but not on issues specific to design patents, such as the scope or validity of design patents (Bartlett Decl. Ex. 16 at 45:21-47:17).

Godici's only experience with design patents was as a high-level PTO manager.  As Deputy Assistant Commissioner of Patents, Godici was several steps removed from actual examinations: design patent examiners reported to supervisory patent examiners, who reported to the group director, who reported to Godici.  (*Id.* at 43:22-45:11.)  Godici did not participate in "decisions about the merits of patentability of a design patent application."  (*Id.* at 31:17-32:14.)  As Commissioner of Patents, Godici's exposure to design patents was even more remote: "managing dockets, looking at backlogs and other general management issues . . . ."  (*Id.* at 43:22-44:18.)  This remote exposure does not qualify Godici to opine about design patents, so all of his opinions should be excluded.[2]

---

[2] Other courts have excluded Godici's opinions due to lack of relevant expertise.  *See, e.g., Degelman Indus. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-cv-6346T, 2011 U.S. Dist. LEXIS 147953, at *16-20 (W.D.N.Y. Dec. 23, 2011) (excluding Godici's testimony on invalidity and inequitable conduct because no experience in relevant art and no specialized experience or knowledge of legal standard); *Certain Liquid Crystal Display Devices and Products Containing the Same*, Inv. No. 337-TA-631 (Aug. 7. 2008) (excluding Godici's report because no

1

### 2.     Godici's Opinions about Design Patent "Scope" And Infringement Should Be Excluded.

Godici opines that "design patent examiners issue design patents with the understanding that the scope of the design patent is very narrowly limited to the exact drawings in the patent." (Bartlett Decl. Ex. 14 ¶ 31; *see also* ¶ 26.)  He also opines that the Apple design patents "must have" a "narrow scope" in view of design patents that issued to Apple and Samsung *at later dates.* (*Id.* at ¶¶ 12-73.)  These opinions should be excluded not only due to Godici's lack of design patent expertise, but for four additional reasons.

First, Godici's opinion about design patent examiners' alleged understanding of design patent scope should be excluded because the scope of a design patent is a legal issue that is not a proper subject for expert testimony to a jury.  *Sundance*, 550 F.3d at 1364 n.6 ("Our court has held that allowing a witness to testify *before the jury* on claim construction would be improper") (citations omitted, emphasis in original).  At his deposition, Godici attempted to avoid this problem by limiting his opinion on "scope" to the perspective of design patent examiners. (Bartlett Decl. Ex. 15 at 7:3-10:24.)  Yet, Godici stated he was prepared to testify as to how design patent examiners interpret claims "[t]o the extent that the jury would find it helpful. . . ." (*Id.* at 68:8 to 69:20.)  But the subjective understanding of patent examiners is not relevant. Infringement depends on whether the overall visual impression to an ordinary observer familiar with the prior art is "substantially the same," not whether examiners understand design patents to be "very narrowly limited to the exact drawings."  *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (reh'g denied en banc) (internal quotations omitted) (citation omitted); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

Second, Godici did not discuss the Apple design patents or the later-issued patents with the responsible examiners and thus does not know what they thought.  (Bartlett Decl. Ex. 15 at 108:12-109:15, 143:8-146:21, 154:25-155:16, 166:18-168:8.)  Even if the subjective understanding of patent examiners were relevant, Godici has no basis to opine that the examiners thought Apple's design patents had "narrow scope."

independent factual knowledge or relevant technical expertise, and did not examine patents at issue).

1    Third, Godici relies on the legally incorrect premise that later patents are relevant to the

2    scope of earlier patents.  Godici admitted that he is "not aware of any authority that says that a

3    patent must be construed in view of subsequently issued patents."  (*Id.* at 103:14-22.)  The scope

4    of a patent depends on facts that exist when it issues, including the content of the patent, file

5    history, and prior art.  Later issuance of a different patent cannot retroactively change the scope of

6    a patent.  *Tone Bros., Inc. v. Sysco Corp.*, No. 90-cv-60011,  1992 WL 200128, at *5 (S.D. Iowa

7    Mar. 17, 1992) ("the scope of the patent is limited only by its terms and not by subsequent patents

8    obtained by Tone [the patentholder]"; thus, "[i]t is of no importance that Tone obtained patents on

9    designs similar to the one at issue"), *vacated on other grounds*, 28 F.3d 1192 (Fed. Cir. 1994).

10    Fourth, Godici himself has now disavowed the opinion.  In his report Godici asserted that

11    Samsung's products do not infringe the Apple design patents unless the patents are given unduly

12    broad scope.  (Bartlett Decl. Ex. 14 ¶ 32 and n.30.)  When asked about that opinion, however,

13    Godici stated that he is *not* offering any opinion concerning the "proper scope" of the Apple

14    design patents or whether the Samsung products infringe those patents under a broad or narrow

15    scope.  (Bartlett Decl. Ex. 15 at 89:6 to 97:10.)  Thus, Godici's scope and non-infringement

16    opinions should be excluded.

17           **3.    Godici's Opinions about "Ambiguous" Use of Broken Lines in the
                     D'087 and D'677 Design Patents Should Be Excluded.**

18    Godici opines that the use of broken lines in certain design patents is "ambiguous" and

19    "could likely cause confusion and render the design indefinite."  (Bartlett Decl. Ex. 14 ¶¶ 84, 92.)

20    This opinion should be excluded because Godici lacks the required expertise, and his opinion

21    would not assist the jury.

22           Godici is not qualified to opine on the use of broken lines in design patents because he is

23    not an expert in design patents.  He is also not qualified to opine on whether the use of broken

24    lines makes the Apple design patents indefinite, because this must be evaluated from the

25    perspective of a person of ordinary skill in the relevant art.  *Marley Mouldings Ltd. v. Mikron*

26    *Indus.*, 417 F.3d 1356, 1359 (Fed. Cir. 2005).  Godici admitted that he has no specific training in

27

28

1   design, and is not opining as a person of ordinary skill in industrial design, electronic devices, or

2   graphical user interfaces.  (Bartlett Decl. Ex. 15 at 14:10-15:25; 23:18-24:6; 202:12-24.)

3       Godici's opinion should also be excluded because, to the extent he simply recites the

4   MPEP guidelines, his opinion would not assist the jury; and to the extent he adds his own

5   explanation, he will merely confuse.  Godici provides inconsistent opinions, asserting that the

6   MPEP covers "only two uses of broken lines" (disclosing "the environment" and defining the

7   "bounds" of the claim), but admitting that "Broken lines are used for numerous purposes," such

8   as "to indicate the claimed design (*i.e.*, stitching or fold lines)."  (*Compare* Bartlett Decl. Ex. 14

9   ¶ 85) *with* Bartlett Decl. Ex. 15 at 189:12-23; 190:2-194:24.)  Godici further conceded that his

10  statement that "[t]here are no instructions on using broken lines within a design" is "probably a

11  non sequitur because there are instructions on not using broken lines within a design as well as

12  how to."  (*Id.* at 194:9-195:20.)  "Non sequiturs" will not assist the jury.

13      **E.      George Mantis, Michael Mazis and Michael Kamins**

14      Samsung has proffered the testimony of three consumer survey experts.  George Mantis's

15  report describes two surveys he conducted testing whether consumers confuse Samsung phones

16  and tablets for Apple products.  His phone survey should be excluded because it is not relevant to

17  Apple's dilution claims.  His phone and tablet surveys should both be excluded because his

18  methodologically flawed surveys ███████████████████████████████████████████

19  ████   Michael Mazis's report describes another survey, designed to test whether consumers

20  recognize individual Apple icons from having seen them on an iPhone or iPad.  His survey should

21  be excluded because it is not relevant to any claim that remains in the case.  Finally, Michael

22  Kamins's rebuttal report describes a survey designed to test the degree to which consumers

23  associate Samsung phones with Apple phones.  His survey and testimony should be excluded

24  because a flawed control condition makes the survey results unreliable.

        **1.      Mantis's Phone Confusion Survey is Irrelevant to Dilution**

26      To simplify the case, Apple has agreed to dismiss without prejudice its claim that

27  Samsung's phones infringe Apple's iPhone trade dress.  At trial, the jury will be asked only

28  whether consumers are likely to "associate" Samsung's phones with Apple, giving rise to trade

dress dilution, not whether consumers are likely to "confuse" Samsung phones with iPhones.  As a result, Mr. Mantis's phone "confusion" survey is not relevant.  Evidence of a lack of confusion is not probative of the likelihood of dilution, because a consumer may associate the trade dress with two different sources without being confused by them.  Indeed, "[i]njury from dilution usually occurs when consumers aren't confused about the source of a product."  *Mattel, Inc. v. MCA Records, Inc*., 296 F.3d 894, 903 (9th Cir. 2002).  While a showing that confusion is likely may evidence an association between products, the converse is not true.  The absence of confusion not probative of a dilution claim.  *See Jada Toys, Inc.  v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007).  Because Mantis's phone survey will not assist the jury in assessing trade dress dilution, it should be excluded.

### 2. Both Mantis Surveys Are Flawed Reading Tests, Not Trade Dress Confusion Tests

Both of Mantis's surveys are irrelevant because ███████████████████████

1    Mr. Mantis's surveys ████████████████████████████████████████████████

2    ████████████████     In *American Greetings Corp. v. Dan-Dee Imports, Inc*., 619 F. Supp. 1204

3    (D.N.J. 1985), *modified on other grounds*, 807 F.2d 1136 (3d Cir. 1986), the district court found

4    no probative value in two surveys offered to show an absence of confusion where Respondents

5    were shown stuffed toys with the product names on the packages and asked which product they

6    would buy if their daughters asked for a "Care Bear" toy or a "Goodtime Gang" toy.  The court

7    concluded that the "survey tested the participants' ability to read and little else," and that the

8    survey did not "adequately test the existence of confusion."  *Id*. at 1216.  "Surveys which do

9    nothing more than demonstrate the respondents' ability to read are not probative on the issue of

10   likelihood of consumer confusion."  *Franklin Res., Inc. v. Franklin Credit Mgmt. Corp.,* 988 F.

11   Supp. 322, 335 (S.D.N.Y. 1997).  *See also* Federal Judicial Center, Manual on Complex

12   Litigation, Fourth, § 1.493 (judges should take into account whether questions were "clear and

13   not leading.")  Because Dr. Mantis's surveys ████████████████████████████████████

14   ███████████████████████████████████████████████████, they will not help the

15   jury determine a fact in issue.  They should be excluded.

16               **3.     Mazis's Survey is Not Relevant or Reliable**

17        Apple has also agreed to dismiss without prejudice its claims for infringement of eight

18   icon trademarks.  Samsung's expert Michael Mazis conducted a survey testing whether those

19   marks have acquired secondary meaning, which is no longer at issue in the case.

20        Mazis's survey is not relevant to issues remaining in the case, such as Apple's iPhone

21   trade dress dilution claim.  Although a matrix of colorful icons does form part of Apple's asserted

22   iPhone trade dress, whether individual icons have secondary meaning is not relevant to this claim.

23   Evaluating trade dress claims "requires the court to focus on the plaintiff's entire selling image,"

24   not individual elements of the trade dress in isolation.  *Vision Sports, Inc. v. Melville Corp.*, 888

25   F.2d 609, 613 (9th Cir. 1989).

26        Moreover, even if the Mazis survey were relevant to an issue in the case, the survey is

27   unreliable because it ██████████████████████████████████████████████

28   █████████████████████████████████████████████████████████

1  ██████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ██████████████████████████████████████████████

4  ██████████████████████████████████████████████████

5  ████████████████████████████████ This resulted in a significant underestimate,

6  and renders the survey unreliable.

### 4.     Kamins's Flawed Control Renders His Survey Unreliable

Michael Kamins conducted a survey to test the degree to which consumers associate

Samsung phones with Apple.  In his survey, Mr. Kamins ██████████████████████████████

████████████████████████████████████████ (See Bartlett Decl. Ex. 20 at

20-21.)  A control is designed to estimate the degree of background "noise" or "error" in the

survey.  "[T]he expert should select a stimulus for the control group that shares as many

characteristics with the experimental stimulus as possible, with the key exception of the

characteristic whose influence is being assessed."  Shari Siedman Diamond, *Reference Guide on

Survey Research*, Reference Manual on Scientific Evidence at 229, 258 (Federal Judicial Center

2d ed. 2000).  Kamins endorsed this view of a proper control in his report.  (See Bartlett Decl.

Ex. 20 at 8.)  In this case, Mr. Kamins's survey was meant to assess the influence of Samsung's

infringing use of Apple's iPhone trade dress on consumer association, so a proper control would

not share characteristics of the iPhone trade dress.  But at his deposition, Kamins's admitted that

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

(*See* Bartlett Decl. Ex. 21 at 224:18-226:19.)  Because Mr. Kamins's survey used an improper

control condition, his survey is not a reliable indicator of consumer association and is

inadmissible.  *See THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 241 (S.D.N.Y. 2010) (finding

inadmissible a survey that failed to use an adequate control).

### F.     Michael Wagner

Michael Wagner, one of Samsung's damages experts, provides opinions regarding allocation and lost profits that are contrary to law. Further, his method for calculating an apportionment of profits is not rooted in any objective, peer-reviewed source and is unreliable. These opinions should be excluded.

#### 1.     Wagner's Apportionment of Samsung's Profits Based on Apple's Design Patents Should be Excluded as Inconsistent with 35 U.S.C. § 289.

The law entitles Apple to Samsung's total profits for infringement of Apple's design patents. 35 U.S.C. § 289. Samsung's damages expert, Michael Wagner, intends to reduce these profits based on an alleged "apportionment" between the value of design and the value of all other features in Samsung's smartphones. (Bartlett Decl. Ex. 22 ¶ 340.) Wagner admits that he has no legal basis to believe this apportionment is appropriate. (Bartlett Decl. Ex. 23 at 360:4-20; Bartlett Decl. Ex. 22 ¶ 340).

Wagner's apportionment is wrong legally, based on the statute and settled case law. First, the statute, states plainly that the infringer "shall be liable to the [patent] owner to the extent of his **total** profit." 35 U.S.C. § 289 (emphasis added). Second, the Federal Circuit has roundly rejected defendants' efforts to apportion profits under Section 289. *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1442 (Fed. Cir. 1998) (Congress removed "the need to apportion the infringer's profits between the patented design and the article bearing the design when it passed the Act of 1887, which was subsequently codified under 35 U.S.C. § 289."); *see also Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 495 (D. Minn. 1980) (rejecting an apportionment of defendants' profits under Section 289); *Junker v. HDC Corp.*, No. C-07-05094, 2008 WL 3385819, at *3 (N.D. Cal. July 28, 2008) ("patent holder is not required to demonstrate that the profits are attributable to the ornamental qualities of the item in the design patent" but is "entitled to the entire profit obtained by the infringer as a result of sales of the item with the infringing design"). Wagner's "apportionment" opinion with respect to Section 289 is contrary to law and must be excluded.

2.     **Wagner's Opinion That Evidence of "Demand for the Patented Features" Is Required Under *Panduit* Is Wrong.**

Wagner opines that Musika "has not satisfied the burden of providing evidence of demand related to the patented feature," which he claims is required for lost profits under *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).  (Bartlett Decl. Ex. 22 ¶¶ 121-22.)  Wagner admits that this position conflicts with *DePuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009), which holds that *Panduit* "does not require any allocation of consumer demand"; it is sufficient to show demand "for a product that is covered by the patent in suit.")  (Bartlett Decl. Ex. 22 ¶ 121; *see also* Bartlett Decl. Ex. 23 at 463:11-24.)  His opinion is based on his prediction of what the Federal Circuit *will do* in the future:  "I really think the next time the federal circuit gets a lost profits analysis, that they're going to change the law to do what I've done here."  (Bartlett Decl. Ex. 23 at 463:15-17.)  Current Federal Circuit law controls here.

3.     **Wagner's Apportionment of Profit on Trade Dress Claims is Unreliable and Should Be Excluded.**

Wagner purports to reduce Apple's trade dress damages award (calculated based on Samsung's profits) ████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
█████████████████

Wagner's approach can only be characterized as junk science. ████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████

3 █████████████████████████████████████████████████

4 ██████████████████████████████████████████████████

5 ██████████████████████████████████████████

6       Wagner admits that this approach is not rooted in any objective, peer-reviewed method.

7 Rule 702 requires that courts skeptically examine complex mathematical gymnastics that cannot

8 be traced to a peer-reviewed, scientifically tested methodology. *Applied Hydrogel Tech., Inc. v.*

9 *Raymedica, Inc.*, No. 06-CV-2254 DMS (POR), 2008 WL 5500756, at *2 (S.D. Cal. Oct. 7,

10 2008). To be admissible, Wagner's opinions must be "grounded in some objective source" and

11 he must show "that he followed a scientific method embraced by at least some other experts in the

12 field." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998); *see also Lust By and*

13 *Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 597 (9th Cir. 1996). His apportionment

14 methods must be "reliable method[s]." Fed. Rule Evid. 702; *Applied Hydrogel Tech., Inc.*, 2008

15 WL 5500756, at *2. Wagner's are not. His approach is not consistent with the standards applied

16 by other experts in the field.

17       Wagner offers no source for his methodology. (*See* Bartlett Decl. Ex. 23 at 371:1-5). He

18 can point to no publication that ever used it. (*Id*. at 368:22-369:1.) He does not believe "that

19 academia has ever studied this issue." (*Id*. at 368: 22-25.) No court has admitted it following a

20 Daubert motion. (*Id*. at 369: 17-20.) He made no effort to consult with anyone to verify its

21 accuracy, appropriateness or reliability. (*Id*. at 369:21-371:5.) Winer reviewed Wagner's method

22 and concluded not only that it is not accepted by the scientific community, but it could never be

23 an acceptable method in any context. (*See* Declaration of Russell S. Winer in Support of Apple's

24 Motion to Exclude Testimony of Samsung's Experts ("Winer Decl.") ¶¶ 14, 17-18, 40.)

25       Further, Wagner incorrectly assumed without confirming that his approach could account

26 for 100 percent of the value of the product. (Bartlett Decl. Ex. 23 at 398:22–400:12). That was a

27 mistake. Using the data available in the J.D. Power survey, Wagner's method ███████████

28

1   ██████████████████  (Winer Decl. ¶ 43, Ex. 1.)  Any allocation method that does not

2   consistently and reliably produce figures that collectively add to 100 percent is inherently flawed.

3        The remaining flaws inherent in Wagner's allocation methods are extensive, as described

4   in Winer's declaration:

- The surveys do not ask consumers to rank or compare features in any way, as Samsung's own in-house survey expert himself pointed out.  (Bartlett Decl. Ex. 24 at 61:24-62:4.)  As a result, they are not a proper source from which to calculate an allocation.  (Winer Decl. ¶ 21.)

- Wagner's initial step is inherently flawed because it depends mathematically on the number of questions asked and not on the nature of the consumer's responses.  (*Id.* . ¶¶ 22-24)  Therefore it derives a meaningless and arbitrary ratio.  (*Id.*)

- Wagner's second step is flawed because the indexes he uses from the J.D. Power survey are interval-scaled data that cannot be used to generate a reliable relative calculation.  (*Id.* ¶¶ 32-33.)  Further, the second step says nothing about any particular design, let alone how that design compares to other designs.  (*Id.* ¶ 34.)

- ████████████████████████████████████████

   (*Id.* ¶¶ 37-39.)

14       Finally, Wagner's use of a similar method to calculate an apportionment factor for

15  Apple's multi-touch technology in paragraphs 527 – 529 of his report repeats the numerous errors

16  inherent in Wagner's analysis of the value of design and should likewise be excluded.  (*Id.* ¶¶ 45-

17  47.)

18       Wagner's calculations lack an objective source, are arbitrary, and are unreliable.

19  Nonetheless, because of their complexity, it will be nearly impossible for a lay jury to unpack

20  Wagner's mistakes.  Samsung intends to use this junk science to reduce damages by more than

21  $900 million.  This is exactly the type of improper opinion testimony that Rule 702 excludes.

**IV.   CONCLUSION**

23       For the foregoing reasons, the Court should exclude the opinions proffered by Sam

24  Lucente, Itay Sherman, Mark Lehto, Nicholas Godici, George Mantis, Michael Mazis, Michael

25  Kamins, and Michael Wagner.

1    Dated:  May 17, 2012                MORRISON & FOERSTER LLP

2

3                                        By:    /s/ Harold J. McElhinny
                                                Harold J. McElhinny
4
                                                Attorneys for Plaintiff
5                                               APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28