Exhibit 7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE INC., a California corporation, | § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | Case No. 11-cv-01846-LHK |
| SAMSUNG ELECTRONICS CO. LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | | |
| Defendants. | | |

**EXPERT REPORT OF ROBERT JOHN ANDERS, IDSA**

**PREFACE**

This Expert Report is divided into twelve parts.

**Part A** contains:

    I.    Introduction

    II.    Background, Education and Qualifications

    III.    Working Knowledge of Applicable Laws

    IV.    Drawing Requirements for Design Patents and The Language of Lines Used in Design Patent Drawings

    V.    My Infringement Analysis Methodology

### V.     MY INFRINGEMENT ANALYSIS METHODOLOGY

1. As noted above, I understand that for a design patent, an infringement analysis consists of the "ordinary observer" test.

2. Additionally, I understand that one must examine all of the claimed Figures of the patent, and compared the accused product to each one.[12]

3. Furthermore, I understand that the decision of the U. S. Court of Appeals for the Federal Circuit in *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665 (Fed. Cir. 2008) (en banc) modified the hypothetical ordinary observer test found in Gorham to include one "who is conversant with the prior art." I further understand that infringement cannot be premised on similarities between functional aspects of the asserted design and the accused product.[13]

    3.1. Accordingly, I have reviewed all of the cited prior art in this matter, and have selected examples of the prior art to compare to the asserted patents.

4. As a result of my understanding of the requirements for an infringement analysis, my methodology in the instant case has four parts:

    4.1. first, to present each view of the asserted patent;

    4.2. second, to present comparable views of an appropriate prior art example;

    4.3. third, to photographically document and present the representative accused product(s) from the same viewpoints taught by the patented design; and

    4.4. fourth, to comment about the three images, to assist the trier of fact in this matter.

5. My photographs of these products were taken from the same views (perspective, front, top, left side, right side, bottom, and rear views) as contained in the patents. However, I am aware that a photograph of a three dimensional product built from technical two dimensional orthogonal drawings (such as those used both in manufacturing and in United States patent drawings) will not translate into an exact replication of a drawing produced by this methodology, since orthogonal drawings assume the viewer is at infinity and the lines of sight are parallel to each

---

[12] *Contessa Food Products, Inc. v. Conagra, Inc.* 282 F.3d 1370 (Fed. Cir. 2002)
[13] *Richardson,* 597 F.3d at 1293.

    other and perpendicular to the plane of projection, while a photographic image is obtained from a close proximity using one point perspective.

6. Additionally, I have the backgrounds of the photographs eliminated digitally, silhouetting the subjects so they appear comparable to the drawn images of the patent.

7. The foregoing limitations notwithstanding, I believe the photographs are a good indicator of the design elements found in the patent drawings.

8. While this Expert Report includes multiple thumbnail photographs, I have attached as Exhibits to this report, larger images of the photographs and drawings contained within the body of this report, to assist the fact finder in comparing the design patent drawings with the photographic images of the accused product(s).

## VI. DEFINITION OF A PERSON OR DESIGNER OF ORDINARY SKILL IN THE ART

1. In my opinion, a person of ordinary skill in the art or a designer of ordinary skill in the art is a designer of ordinary capabilities in the field of the design of consumer, commercial or industrial products.  It is my opinion that such a person would have at least an undergraduate degree in engineering or industrial design, and about 1-2 years of experience in designing electronic devices.  Alternatively, a designer in academia who conducted research of the interface of products to people and taught industrial design students the design of electronic devices would also be identified as a designer skilled in the art.

## VII. THE ORDINARY OBSERVER DEFINED

1. In my opinion, the ordinary observer relevant to the patents-in-suit is a consumer or purchaser of electronic devices such as computers, monitors, portable digital assistants, and/or cell phones.

## VIII. THE EXPERT REPORT OF PETER W. BRESSLER, FIDSA

1. I have read the Expert Report of Mr. Bressler, and disagree with its conclusions.
2. There are numerous flaws in the Bressler report.  For example:
   - 2.1. the report treated all of the differently designed iPhones as though they were of a single all-encompassing design, which they are not;
   - 2.2. the report failed to label any of the tables for adequate identification;

2.3. the report failed to account for significant relevant prior art;

2.4. the report repeatedly used at least three photographic images of the original iPhone that depicted a dark line adjacent to the product's edge on the images of the top, bottom and side views, that closely replicated the single solid line depicted in the D'087 and D'677 patents, but which in fact does not exist when viewing the actual product. I found this presentation to be misleading and deceptive.

2.5. I have reviewed Sections XIV. to XVI. of the Bressler report, which conclude that Apple practices the claims of the D'889, D'087, and D'677 patents, respectively. In my opinion, the report does not accurately report all of the differences between the Apple products and the claimed designs, nor does it acknowledge that the drawings in the patents are ambiguous and unclear. The Bressler report claims that Apple practices their patents, yet fails to point out significant discrepancies between the patented design and the Apple products. For example, on page 115, the Bressler report depicts Fig. 1 of the D'889 patent but fails to point out that the proportions of the dark frame area of the product are substantially different from the patent. Similarly, the Apple product does not conform to the drawing in Fig. 2. Fig. 3 has the same change of scale and proportion that Fig. 1 had. Most egregious are Figures 5, 6, 7, and 8 which represent a design totally distinct from that of the actual product, having a different thickness and edge detail. Moreover, I find the differences between the Apple products and the claimed designs to be significant, particularly in light of the prior art, such that an ordinary observer would not find any of the Apple products to be substantially the same design as either the D'889, D'087, or D'677 patent designs. Therefore, in my opinion, Apple does not practice the claims of the D'889, D'087, or D'677 patents.

## X.   REMARKS

1. I currently hold the opinions expressed in this Expert Report. As my study of the case continues, I may acquire additional information and/or attain supplemental insights that that result in added observations. I reserve the right to supplement

      this Expert Report and to rely on additional documents and testimony that come to my attention between now and the time of the trial. For example, I may supplement this Expert Report to take into account the fact that the parties may produce documents relevant to my analyses, and that additional testimony from the Plaintiff, Defendants and third parties may become available. Nevertheless, I believe that the information before me to date supports the opinions expressed in this document. I also reserve the right to rely on all other declarations and expert reports submitted in this litigation.

2. Furthermore, I may also be called upon to provide expert analysis and opinions in rebuttal to any proofs brought forward by the Plaintiff in this litigation. To the extent additional information is provided, I intend to address it and, if appropriate, submit a rebuttal report.

3. During my testimony at trial, hearing or deposition, I expect to rely upon exhibits prepared to depict and explain the information contained in this Expert Report or as rebuttal to testimony by the Plaintiff's witnesses. Any such exhibits will be prepared and identified at the appropriate time.

4. I HEREBY DECLARE under penalty of perjury that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine and imprisonment, or both, under 18 U.S.C. §1001.

Respectfully submitted,

Dated: April 16, 2012

Robert John Anders