1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15

16                UNITED STATES DISTRICT COURT

17         NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 APPLE INC., a California corporation,        CASE NO. 11-cv-01846-LHK

19         Plaintiff,

20    vs.                                       **SAMSUNG'S CONDITIONAL MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**

21 SAMSUNG ELECTRONICS CO., LTD., a
   Korean business entity; SAMSUNG
22 ELECTRONICS AMERICA, INC., a New
   York corporation; SAMSUNG
23 TELECOMMUNICATIONS AMERICA,
   LLC, a Delaware limited liability company,
24
           Defendants.
25

26

27

28

02198.51855/4757037.1

Case No. 11-cv-01846-LHK
**SAMSUNG'S CONDITIONAL MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**

Pursuant to Local Rule 72-2, Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A), Samsung submits this conditional motion for relief from the May 4, 2012 Order Granting Apple's Motion for 37(b)(2) Sanctions Re December 22 Discovery Order. On May 15, 2012, Samsung filed a Motion For Clarification Regarding the Court's May 4, 2012 Order (Dkt. 922). The hearing on Samsung's motion is set for June 19, 2012. Samsung submits this conditional motion solely as a precautionary measure to avoid waiver of Samsung's objections to the order. Samsung respectfully requests that the Court grant relief from the May 4, 2012 Order in the event Magistrate Judge Grewal decides the Motion for Clarification in whole or in part against Samsung.

## I. INTRODUCTION

On May 4, 2012, Magistrate Judge Grewal entered an Order precluding Samsung "from offering any evidence of its design-around efforts for the '381, '891, and '163 patents," based on Samsung's failure to produce every version of source code for the accused products by December 31, 2012, the deadline previously set by the Court. (Dkt. 898 at 9.) The Court found "no evidence that Samsung or its counsel intended to deceive Apple, and by implication this court." (*Id.* at 8.) The Court nevertheless concluded that sanctions were warranted because "Samsung's delay until after the close of discovery undoubtedly prevented Apple from conducting any follow-up discovery" on Samsung's design arounds, and left Apple's experts "with no meaningful opportunity to comprehend" the source code underlying those design arounds. (*Id.* at 7-8.)

Samsung seeks relief from two aspects of the Order. First, the Order is erroneous to the extent it is interpreted to preclude Samsung from relying on source code for the "blue glow," Samsung's design around to the '381 patent. As Apple admitted during the hearing on its motion, Samsung's production of source code on December 30, 2011 included blue glow source code. Apple's experts inspected and printed this code days later, and Apple conducted substantial discovery regarding blue glow. In addition, Samsung produced a generic version of blue glow source code on January 23, 2012—two months before expert reports were due. In light of these productions, Apple suffered no prejudice that justifies the harsh sanction of precluding Samsung from relying on evidence of the blue glow design-around.

02198.51855/4757037.1

-1-   Case No. 11-cv-01846-LHK
**SAMSUNG'S CONDITIONAL MOTION FOR RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER OF MAGISTRATE JUDGE**

Second, the Order is also erroneous to the extent the Order is interpreted to preclude Samsung from relying on non-source code evidence of design arounds or alternatives to the '381, '163 and '891 patents. Apple's motion complained of the late production of source code. Yet Apple interprets the Order to extend well beyond Apple's requested relief, potentially excluding physical evidence, publicly available products, discovery responses, documentary evidence, expert testimony, and admissions of Apple's technical experts—even if such evidence was timely produced. None of this additional non-source code evidence was subject to the December 22 order, much less produced in violation of it. Samsung believes that the Order does not preclude this evidence. As interpreted by Apple, the Order erroneously and unjustifiably exceeds the scope of sanctionable conduct.

## II.     ARGUMENT

### A.     The Order is Clearly Erroneous to the Extent It Precludes Samsung From Relying On Source Code For the Blue Glow Function.

The Order rests on two findings of prejudice that Apple allegedly suffered in connection with Samsung's production of source code. With respect to the blue glow function, however, both of these findings were in error.

First, the Court found that "Samsung's delay until after the close of fact discovery" prevented Apple from conducting discovery regarding Samsung's design-around source code. (*Id.* at 7.) The Order overlooks Apple's admission that Samsung produced blue glow source code on December 30—in compliance with the Court's deadline.[1] (Declaration of Mark Tung In Support of Samsung's Conditional Motion for Relief ("Tung Decl.") ¶ 2-5; Ex. 1 at 9:1-9; Ex. 2.) This production left Apple with every opportunity to pursue additional discovery on Samsung's design around to the '381 patent. Apple seized the opportunity, serving interrogatories directed at blue glow and other design arounds (*id.*, Ex. 4) and questioning witnesses at length about blue glow. (*Id.*, Ex. 5 at 58:23–59:22; Ex. 6 at 119:16–120:21; Ex. 7 at 116:24–118:16; Ex. 8 at

---

[1]   Although Apple stated that Samsung's December 30 production included blue glow source code for the Galaxy S II, Samsung's production in fact included blue glow source code for the Exhibit 4G, Epic 4G and Galaxy Tab 10.1 as well. (Tung Decl. ¶¶ 3-4.)

104:13–105:18; Ex. 9 at 54:9–60:22, 69:25–70:13, 132:20–134:9, 203:25 –204:12, 252:5–22.) The first version of the source code stipulation *that Apple itself drafted—*which included an express carve-out for the '381 patent—reflects the fact that Apple obtained sufficient discovery to determine that blue glow source code exists in each product.  (Tung Decl. Ex. 10.)  Samsung's production of blue glow source code in no way prevented Apple from obtaining discovery.

Second, the Court found that Apple's experts had "no meaningful opportunity to comprehend" Samsung's design-around source code.  However, Apple's experts inspected blue glow source code on January 6, 2012, and received Bates-stamped printouts of this code on January 9, 2012.  (*Id.* ¶¶ 4-5, Ex. 2.)  Samsung produced generic blue glow source code just two weeks later, on January 23, 2012.[2]  Indeed, Apple's expert, Dr. Ravin Balakrishnan, analyzed blue glow *as early as August 2011* and testified that it did not infringe the '381 patent.  (*Id.*, Ex. 11 at 166:12 – 167:21.)  Thus, Apple's experts had ample time to analyze source code made available to them *more than two months* before expert reports were due.

### B. The Order is Clearly Erroneous to the Extent the Order Precludes Evidence Other Than Source Code.

The only conduct complained of by Apple and deemed prejudicial by the Order is Samsung's production of source code.  Source code is not, however, the only means of showing design-arounds and alternatives to Apple's patents.  Discovery responses, expert analysis and testimony, as well as the physical devices themselves are all evidence of such alternatives.  To the extent the Order is read, as Apple argues, to preclude Samsung from introducing *any* evidence of technical alternatives—even timely produced non-source code discovery that was not subject to any court order, and alternatives that did not exist prior to the December 31 deadline—the Order far exceeds the relief requested by Apple and the scope of the sanctionable conduct  *Cf. Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (discovery sanctions must "bear[ ] a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct.").

---

[2]  The source code that Samsung produced on January 23 is substantially identical to the blue glow source code that Samsung produced on December 30 in compliance with the Court's Order.  (Tung Decl. ¶ 5.)

With respect to the '381 patent, Samsung timely produced copious non-code evidence—physical devices, change logs, deposition testimony, documentary evidence and discovery responses—Samsung's implementation of the blue glow function in order to avoid infringement. (Tung Decl. ¶¶ 7 – 12.)   Moreover, Apple recently admitted that it does not need source code to determine if the accused products infringe the '381 patent because infringement "is apparent by observing the accused products in operation."[3]   (Dkt. 910 at 2.)   Although Apple will use non-source code evidence to show infringement, the Order arguably precludes Samsung from using the same to show non-infringement—despite the fact that such evidence was not subject to the December 22 order Samsung was found to have violated.

With respect to the '163 patent, Samsung timely disclosed numerous non-infringing substitutes to the claimed invention.   In response to Apple's Interrogatory 16, for example, Samsung identified technical alternatives that do not infringe the '163 patent.   (*Id.*, Ex. 16.) With one exception, none of these alternatives were developed prior to December 31—yet the Order would penalize Samsung for failing to produce them.[4]   Dr. Karan Singh, Apple's infringement expert for the '163 patent, considered these alternatives and testified they would not infringe the '163 patent.   (*Id.*, Ex. 14 at 162:15 – 168:5.)[5]   Apple never complained about the timeliness of this evidence.   Samsung should not be precluded from relying on it.

Under Apple's interpretation, the Order would have a drastic impact on many important aspect of Samsung's case.   The existence of non-infringing substitutes—even if not

---

[3]   Apple's expert also admitted that source code is not necessary to determine infringement. During the preliminary injunction phase, Dr. Balakrishnan was able to determine—without the benefit of source code—that blue glow does not infringe the '381 patent.   (*Id.*, Ex. 11 at 166:12 – 167:21.)   Dr. Balakrishnan's report and testimony largely rest on his inspection of actual devices, rather than source code for each product.   (*See, e.g.*, Tung Decl., Ex. 12 at ¶¶ 191, 197, 198, 210, 218; Ex. 13 at 60:23 – 63:6, 133:16 – 134:18; *see also* Ex. 11 at 41:18 – 42:2, 121:1-14.)

[4]   The only design around to the '163 patent that Samsung developed prior to December 31 is the source code produced on March 12, 2012.   Samsung does not challenge the Court's decision to preclude Samsung from introducing evidence of this source code.

[5]   Additionally, Dr. Singh's report relies on documents—produced to Apple on December 29, 2012—which show alternative technologies that Samsung considered but did not implement. (*See id.*, Ex. 15 at ¶ 281.)

1  implemented—defeats a patentee's claim to lost profits.   *Grain Processing Corp. v. American*
2  *Maize-Prods. Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999).    Similarly, the potential to develop a
3  non-infringing substitute is relevant to determination of a reasonable royalty.   *See, e.g., Panduit*
4  *Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1160-62(6th Cir. 1978) ; *Parker-Hannifin*
5  *Corp. v. Champion Labs., Inc.*, 2008 WL 3166318, at *16 (N.D. Ohio, Aug. 4, 2008) ("Also
6  probative is what defendant would have spent to design around the patent and launch its own non-
7  infringing product and how quickly that design could be implemented.")   Finally, Samsung's
8  later development of non-infringing alternatives may be relevant to proceedings to enforce any
9  permanent injunction that is ultimately entered in this case.   *Semitool, Inc. v. Dynamic Micro Sys.*
10 *Semiconductor Equip. GMBH*, 2005 WL 350954, at *1 (N.D. Cal. Feb. 14, 2005).   To the extent
11 the Order precludes Samsung from introducing evidence of technical alternatives for any of these
12 purposes—as opposed to merely "for purposes of assessing infringement," as Apple requested—
13 the Order imposes harm to Samsung disproportionate to any prejudice suffered by Apple.

## III.    CONCLUSION

For the foregoing reasons, Samsung respectfully requests the Court grant relief from the May 4, 2012 Order and permit Samsung to introduce at trial:

1. Source code for the blue glow function as evidence of Samsung's efforts to design around the '381 patent; and
2. Evidence of design-arounds and non-infringing alternatives other than source code produced after December 31, 2011.

DATED: May 18, 2012                    QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP

                                       By   */s/ Victoria F. Maroulis*
                                           Victoria F. Maroulis
                                           Attorneys for SAMSUNG ELECTRONICS CO.,
                                           LTD., SAMSUNG ELECTRONICS AMERICA,
                                           INC., and SAMSUNG
                                           TELECOMMUNICATIONS AMERICA, LLC