Exhibit 3

# EXHIBIT 39

Highly Confidential - Attorneys' Eyes Only

Page 1

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4    APPLE INC., a California

     corporation,

5

            Plaintiff,                  Case No.

6

       vs.                              11 CV 01846 LHK

7

     SAMSUNG ELECTRONICS CO., LTD.,

8    a Korean business entity;

     SAMSUNG ELECTRONICS AMERICA,

9    INC., a New York corporation;

     SAMSUNG TELECOMMUNICATIONS

10   AMERICA, LLC, a Delaware

     limited liability company,

11

            Defendants.

12

13

14

15    HIGHLY CONFIDENTIAL   ATTORNEYS' EYES ONLY

16

17     VIDEOTAPED DEPOSITION OF RICHARD HOWARTH

18           San Francisco, California

19           Monday, October 31, 2011

20

21

22

23   REPORTED BY:

24   CYNTHIA MANNING, CSR No. 7645, CLR, CCRR

25   JOB NO. 43007

Highly Confidential - Attorneys' Eyes Only

Page 91



6          MR. MONACH:   Objection; vague and

7    compound.

8          THE WITNESS:   Yeah, I'm sorry.

9          Could you repeat the question?

23   BY MR. ZELLER:

24        Q.   But in general, you don't think that

25   those terms are precise enough or clear enough

Highly Confidential - Attorneys' Eyes Only

Page 92

1   that you could be -- you'd be able to say it's

2   really definite; right?

3          MR. MONACH:  Objection; vague and

4   ambiguous.

5          THE WITNESS:  I don't know what other

6   people think.

7   BY MR. ZELLER:

8      Q.  Well, I'm not asking about what other

9   people think.  I'm asking you.

10         Do you think that the word "border" or

11  "mask" is a clear term to you as to what it is

12  referring to in the context of tablet computer

13  designs that Apple has made?

14         MR. MONACH:  Objection; vague and

15  ambiguous, both a compound and incomplete

16  hypothetical.

17         THE WITNESS:  It could be.

18  BY MR. ZELLER:

19     Q.  I'm going to show you what was previously

20  marked as Exhibit 8, which for the record is

21  United States Design Patent 504,889.

22         And please let me know when you've had an

23  opportunity to review the '889 design patent.

24     A.  (Witness reviewing document.)

25         Okay.

Highly Confidential - Attorneys' Eyes Only

Page 93

1      Q.  You're named as an inventor of the '889

2   design?

3      A.  I was one of the industrial design team

4   that worked on this product.

5      Q.  Looking at the drawings, these figures

6   that are in the '889 design patent, do any of

7   those drawings show what you, in your view --

8   well, I'm sorry.  Let me rephrase it.

9          Directing your attention to the figures

10  and drawings in the '889 design patent.

11         Do any of those drawings show a mask

12  area?

13         MR. MONACH:  Objection; lack of

14  foundation.  Objection; compound.  Objection;

15  calls for a legal conclusion by a nonlawyer

16  witness.

17         THE WITNESS:  I'm not a patent lawyer.

18  BY MR. ZELLER:

19     Q.  I'm not asking you as a patent lawyer.

20  I'm asking you as an inventor of the '889 design

21  patent.

22         Do any of the drawings or figures in the

23  '889 design patent depict a mask area?

24         MR. MONACH:  Same objection; lack of

25  foundation --

Highly Confidential - Attorneys' Eyes Only

1           THE WITNESS:  As --

2           MR. MONACH:  Hang on a second.

3           Lack of foundation.  Objection, to the

4    extent it calls for a legal conclusion.

5           THE WITNESS:  As an industrial designer,

6    and not a patent lawyer, it isn't clear to me that

7    there is an area here that is definitely a mask or

8    border.

9    BY MR. ZELLER:

10       Q.  Directing your attention to Figure 1.

11       A.  Yes.

12       Q.  You'll see that on the interior of

13   Figure 1, that there is a rectangular line.

14          Do you see that?

15       A.  I see a dotted line.

16       Q.  Do you know, is that -- is that a broken

17   line?

18          MR. MONACH:  Objection; lack of

19   foundation.  Under the Best Evidence Rule the

20   document speaks for itself.  Vague.

21          THE WITNESS:  It looks like a dotted

22   line.  It looks like an inconsistent dotted line.

23   BY MR. ZELLER:

24       Q.  Do you know why it's in that form?  Do

25   you have an understanding?

Highly Confidential - Attorneys' Eyes Only

1          MR. MONACH:   Objection; lack of

2    foundation.

3          And let me just caution you.  I'm not

4    saying you did have any such communications, but I

5    don't want you, in answering any of these

6    questions, to reveal any attorney-client

7    communications.

8          THE WITNESS:   Okay.  I'm not exactly sure

9    what that rectangle is depicting.

10   BY MR. ZELLER:

11     Q.   Do you know if that dotted line that you

12   were talking about that's in that rectangular

13   shape on the interior of Figure 1 has some

14   relationship to separating the active area of the

15   display from the mask or nonactive areas of the

16   display?

17          MR. MONACH:   Objection; lack of

18   foundation, calls for speculation.  Object, to the

19   extent it's asking for a legal conclusion.

20          THE WITNESS:   I'm not sure what that line

21   represents.

22   BY MR. ZELLER:

23     Q.   And I take it you don't have an

24   understanding as to whether or not that particular

25   line, this rectangular line on the interior of

Highly Confidential - Attorneys' Eyes Only

Page 96

1  Figure 1 that's dotted, is part of the claimed

2  design here?

3         MR. MONACH:  Objection; lack of

4  foundation.  Objection, to the extent it calls for

5  a legal conclusion.

6         THE WITNESS:  I'm not sure what that line

7  represents.

8  BY MR. ZELLER:

9     Q.  Directing your attention to Figure 2 of

10 the '889 design patent.

11        You'll see that there are three sets of

12 diagonal lines on the interior of this.

13    A.  Yes.

14    Q.  And then directing your attention to

15 Figure 4.

16        You'll see that it doesn't have those

17 diagonal lines.

18    A.  Okay.

19    Q.  Do you see that?

20    A.  Yes, I see that.

21    Q.  Do you have any understanding or

22 explanation as to why those diagonal lines don't

23 appear in Figure 4 but they do appear in Figure 2?

24        MR. MONACH:  Objection; lack of

25 foundation.  Objection, to the extent it calls for

Highly Confidential - Attorneys' Eyes Only

Page 97

1    a legal conclusion.

2            THE WITNESS:  I'm not sure why those

3    lines are in one view and not in another.

4    BY MR. ZELLER:

5        Q.  Do you know if the design that's shown

6    here in the '889 design patent is showing a back

7    surface or bottom surface that is flat and clear?

8            MR. MONACH:  Same objection; lack of

9    foundation.  Object, to the extent it calls for a

10   legal conclusion.

11           THE WITNESS:  I'm not sure what that is

12   depicting.

13   BY MR. ZELLER:

14       Q.  Is the design that's shown here in the

15   '889 design patent, by your understanding, does

16   it -- well, I'm sorry.  Let me rephrase that.

17           Directing your attention to the '889

18   design patent.

19           In your view, as an inventor and a

20   designer, does this design show a clear front

21   surface of the device?

22           MR. MONACH:  Objection; lack of

23   foundation.  Objection, to the extent it calls for

24   a legal conclusion.

25           You can give your understanding, if you

Highly Confidential - Attorneys' Eyes Only

Page 99

1    the device that's shown there is    from the

2    orientation of the individual holding it    is

3    somewhat wedge shaped, or it tapers?

4          MR. MONACH:  Objection; mischaracterizes

5    the evidence, assumes facts not in evidence,

6    argumentative.

7    BY MR. ZELLER:

8          Q.  Do you see that?

9          MR. MONACH:  Object, to the extent it

10   calls for a legal conclusion.

11         THE WITNESS:  I see what you're referring

12   to.  I see it's an object that the guy is holding.

13   BY MR. ZELLER

14         Q.  Well, from the perspective of the guy

15   whose holding it

16         A.  Yes.

17         Q.    how would you describe the shape of

18   the top of the device?

19         A.  What

20         MR. MONACH:  Objection; vague and

21   ambiguous.  Object, to the extent it calls for a

22   legal conclusion.

23         THE WITNESS:  What are you referring to

24   as "the top"?

25   //

Page 100

1    BY MR. ZELLER:

2        Q.   The top, from the orientation of the

3    individual holding it, which would be your right.

4            MR. MONACH:  Objection.  Objection;

5    vague.

6    BY MR. ZELLER:

7        Q.   If you could hand me your copy.

8        A.   Okay.

9            MR. ZELLER:  Let's please mark as Exhibit

10   1132 a copy of the '889 design patent with a

11   marking that I'm about to give it.  It will be an

12   arrow consisting of an X on Figure 9, and then two

13   arrows with the Figure X, Label X, in Figure 2.

14           (Deposition Exhibit 1132 was marked for

15           identification)

16   BY MR. ZELLER:

17       Q.   So directing your attention to Figure 2.

18       A.   Okay.

19       Q.   You'll see that what I did there is, I

20   put two arrows with the Label X on there.

21       A.   Mm hmm.

22       Q.   And you'll see that those portions, those

23   sides, appear to taper, or narrow?

24           MR. MONACH:  Object to the form of the

25   question as mischaracterizing the evidence;

1    assumes facts not in evidence.

2         THE WITNESS:  To me, it looks like a

3    slightly perspective drawing of a rectangular

4    object.

5    BY MR. ZELLER:

6         Q.  Do you have an understanding as to

7    whether or not those lines taper because of

8    perspective or because the design that is being

9    communicated here has tapering sides?

10        A.  I couldn't say for certain.  To me

11   personally, as an industrial designer, it looks to

12   me like they're tapering because of perspective.

13        Q.  And in your view, is that an accurate

14   perspective?

15        MR. MONACH:  Objection; vague and

16   ambiguous.

17        THE WITNESS:  I don't know about an

18   accurate perspective.  It looks, perhaps, like

19   that's what was intended.

20   BY MR. ZELLER:

21        Q.  And if I asked you the same questions

22   about that edge that I labeled as X in Figure 9,

23   you'd give me the same answers?

24        MR. MONACH:  Objection, to the extent it

25   calls for a legal conclusion.  But you can give

Highly Confidential - Attorneys' Eyes Only

1   BY MR. ZELLER:

2       Q.  And from your perspective, is that    is

3   that an accurate depiction of perspective?

4           MR. MONACH:  Objection; lack of

5   foundation, incomplete hypothetical.  Objection;

6   vague.

7           THE WITNESS:  Yes, it could be.

8   BY MR. ZELLER:

9       Q.  Can you say with any certainty if it is?

10          MR. MONACH:  Same objection.

11          THE WITNESS:  I can't say with any

12  certainty without    whether that's an absolutely

13  accurate perspective view.  But it looks okay.  It

14  looks possible.

15  BY MR. ZELLER:

16      Q.  You'll see also in Figure 9 that there is

17  a portion of it that has a thicker, darker line

18  that runs around the perimeter of the front.

19          Do you see that?

20      A.  Yes, I see that.

21      Q.  What does that depict?

22          MR. MONACH:  Objection; lack of

23  foundation.  Object, to the extent it calls for a

24  legal conclusion.

25          THE WITNESS:  It's unclear to me exactly

Highly Confidential - Attorneys' Eyes Only

1   what that is trying to depict.

2   BY MR. ZELLER:

3       Q.  Does it depict a gap or a groove?

4           MR. MONACH:  Same objection; lack of

5   foundation.  Objection, to the extent it calls for

6   a legal conclusion.

7           THE WITNESS:  I'm not sure what that

8   precise detail is trying to depict.  But it looks

9   like the separation between two parts to me.  Not

10  the separation; it looks like the joint between

11  two parts.

12  BY MR. ZELLER:

13      Q.  And directing your attention to Figure 1,

14  you'll see that also at least on part of the

15  perimeter of this front surface there is a darker

16  line there as well, darker, thicker line?

17      A.  I see that.

18      Q.  And do you have an understanding as to

19  what that's depicting?

20          MR. MONACH:  Objection; lack of

21  foundation.  Object, to the extent it calls for a

22  legal conclusion.

23          THE WITNESS:  I couldn't tell you exactly

24  what that's trying to depict.

25  //

1   BY MR. ZELLER:

2       Q.  Is that darker, thicker line depicting a

3   gap or a groove?

4           MR. MONACH:  Same objection.  Lack of

5   foundation, calls for a legal conclusion.

6           THE WITNESS:  In my opinion as an

7   industrial designer, it doesn't look like that's

8   trying to depict a groove or a gap.  It looks like

9   it's perhaps trying to show a radius or an

10  intersection of the rear housing, perhaps.

11  BY MR. ZELLER:

12      Q.  But you're not certain?

13          MR. MONACH:  Same objection.  Asked and

14  answered.

15          THE WITNESS:  I'm not certain.

16  BY MR. ZELLER:

17      Q.  You'll see that the date of this design

18  patent for filing   and this is on the first

19  page

20      A.  Okay.

21      Q.    in the middle of the first column,

22  March 17th, 2004.

23          Do you see that date there?

24      A.  Yes, I do.

25      Q.  Prior to March 17th, 2004, which is the

Page 106

1   filing date of the '889 design patent, █████████



8   BY MR. ZELLER:

9       Q.  You just don't recall one way or another?

10      A.  I don't recall.

19  BY MR. ZELLER:

20      Q.  Do you recall generally that occurring at

21  some him point?

22          MR. MONACH:  Same objection.

23          THE WITNESS:  It might have been.

24  BY MR. ZELLER:

25      Q.  Let me try something a different way.

Highly Confidential - Attorneys' Eyes Only

Page 1

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4   APPLE INC., a California

    corporation,

5

            Plaintiff,              Case No.

6

      vs.                          11 CV 01846 LHK

7

    SAMSUNG ELECTRONICS CO., LTD.,

8   a Korean business entity;

    SAMSUNG ELECTRONICS AMERICA,

9   INC., a New York corporation;

    SAMSUNG TELECOMMUNICATIONS

10  AMERICA, LLC, a Delaware

    limited liability company,

11

            Defendants.

12

13

14

15    HIGHLY CONFIDENTIAL   ATTORNEYS' EYES ONLY

16

17     VIDEOTAPED DEPOSITION OF RICHARD HOWARTH

18          San Francisco, California

19          Monday, October 31, 2011

20

21

22

23  REPORTED BY:

24  CYNTHIA MANNING, CSR No. 7645, CLR, CCRR

25  JOB NO. 43007

Highly Confidential - Attorneys' Eyes Only

Page 91

1  tablet designs that you worked on there for Apple.

6          MR. MONACH:   Objection; vague and

7  compound.

8          THE WITNESS:   Yeah, I'm sorry.

9          Could you repeat the question?

10         MR. ZELLER:   Yes.   If you could read it

11 back, please.

12         (Whereupon the reporter read the record

13         as follows:

18         MR. MONACH:   And I objected; vague and

19 compound.

20         THE WITNESS:   Sometimes some people refer

21 to   or I refer to the area around the display as

22 a border.

23 BY MR. ZELLER:

24     Q.  But in general, you don't think that

25 those terms are precise enough or clear enough

Highly Confidential - Attorneys' Eyes Only

Page 92

1    that you could be    you'd be able to say it's

2    really definite; right?

3            MR. MONACH:  Objection; vague and

4    ambiguous.

5            THE WITNESS:  I don't know what other

6    people think.

7    BY MR. ZELLER:

8        Q.  Well, I'm not asking about what other

9    people think.  I'm asking you.

10           Do you think that the word "border" or

11   "mask" is a clear term to you as to what it is

12   referring to in the context of tablet computer

13   designs that Apple has made?

14           MR. MONACH:  Objection; vague and

15   ambiguous, both a compound and incomplete

16   hypothetical.

17           THE WITNESS:  It could be.

18   BY MR. ZELLER:

19       Q.  I'm going to show you what was previously

20   marked as Exhibit 8, which for the record is

21   United States Design Patent 504,889.

22           And please let me know when you've had an

23   opportunity to review the '889 design patent.

24       A.  (Witness reviewing document.)

25           Okay.

Highly Confidential - Attorneys' Eyes Only

1    Q.  You're named as an inventor of the '889

2  design?

3    A.  I was one of the industrial design team

4  that worked on this product.

5    Q.  Looking at the drawings, these figures

6  that are in the '889 design patent, do any of

7  those drawings show what you, in your view

8  well, I'm sorry.  Let me rephrase it.

9        Directing your attention to the figures

10  and drawings in the '889 design patent.

11        Do any of those drawings show a mask

12  area?

13        MR. MONACH:  Objection; lack of

14  foundation.  Objection; compound.  Objection;

15  calls for a legal conclusion by a nonlawyer

16  witness.

17        THE WITNESS:  I'm not a patent lawyer.

18  BY MR. ZELLER:

19    Q.  I'm not asking you as a patent lawyer.

20  I'm asking you as an inventor of the '889 design

21  patent.

22        Do any of the drawings or figures in the

23  '889 design patent depict a mask area?

24        MR. MONACH:  Same objection; lack of

25  foundation

Highly Confidential - Attorneys' Eyes Only

Page 94

1        THE WITNESS:  As

2        MR. MONACH:  Hang on a second.

3        Lack of foundation.  Objection, to the

4    extent it calls for a legal conclusion.

5        THE WITNESS:  As an industrial designer,

6    and not a patent lawyer, it isn't clear to me that

7    there is an area here that is definitely a mask or

8    border.

9    BY MR. ZELLER:

10       Q.  Directing your attention to Figure 1.

11       A.  Yes.

12       Q.  You'll see that on the interior of

13   Figure 1, that there is a rectangular line.

14       Do you see that?

15       A.  I see a dotted line.

16       Q.  Do you know, is that   is that a broken

17   line?

18       MR. MONACH:  Objection; lack of

19   foundation.  Under the Best Evidence Rule the

20   document speaks for itself.  Vague.

21       THE WITNESS:  It looks like a dotted

22   line.  It looks like an inconsistent dotted line.

23   BY MR. ZELLER:

24       Q.  Do you know why it's in that form?  Do

25   you have an understanding?

Highly Confidential - Attorneys' Eyes Only

1    MR. MONACH:  Objection; lack of

2  foundation.

3    And let me just caution you.  I'm not

4  saying you did have any such communications, but I

5  don't want you, in answering any of these

6  questions, to reveal any attorney client

7  communications.

8    THE WITNESS:  Okay.  I'm not exactly sure

9  what that rectangle is depicting.

10  BY MR. ZELLER:

11    Q.  Do you know if that dotted line that you

12  were talking about that's in that rectangular

13  shape on the interior of Figure 1 has some

14  relationship to separating the active area of the

15  display from the mask or nonactive areas of the

16  display?

17    MR. MONACH:  Objection; lack of

18  foundation, calls for speculation.  Object, to the

19  extent it's asking for a legal conclusion.

20    THE WITNESS:  I'm not sure what that line

21  represents.

22  BY MR. ZELLER:

23    Q.  And I take it you don't have an

24  understanding as to whether or not that particular

25  line, this rectangular line on the interior of

Highly Confidential - Attorneys' Eyes Only

1  Figure 1 that's dotted, is part of the claimed

2  design here?

3          MR. MONACH:  Objection; lack of

4  foundation.  Objection, to the extent it calls for

5  a legal conclusion.

6          THE WITNESS:  I'm not sure what that line

7  represents.

8  BY MR. ZELLER:

9      Q.  Directing your attention to Figure 2 of

10  the '889 design patent.

11          You'll see that there are three sets of

12  diagonal lines on the interior of this.

13      A.  Yes.

14      Q.  And then directing your attention to

15  Figure 4.

16          You'll see that it doesn't have those

17  diagonal lines.

18      A.  Okay.

19      Q.  Do you see that?

20      A.  Yes, I see that.

21      Q.  Do you have any understanding or

22  explanation as to why those diagonal lines don't

23  appear in Figure 4 but they do appear in Figure 2?

24          MR. MONACH:  Objection; lack of

25  foundation.  Objection, to the extent it calls for

Highly Confidential - Attorneys' Eyes Only

1    a legal conclusion.

2            THE WITNESS:  I'm not sure why those

3    lines are in one view and not in another.

4    BY MR. ZELLER:

5        Q.  Do you know if the design that's shown

6    here in the '889 design patent is showing a back

7    surface or bottom surface that is flat and clear?

8            MR. MONACH:  Same objection; lack of

9    foundation.  Object, to the extent it calls for a

10   legal conclusion.

11           THE WITNESS:  I'm not sure what that is

12   depicting.

13   BY MR. ZELLER:

14       Q.  Is the design that's shown here in the

15   '889 design patent, by your understanding, does

16   it  well, I'm sorry.  Let me rephrase that.

17           Directing your attention to the '889

18   design patent.

19           In your view, as an inventor and a

20   designer, does this design show a clear front

21   surface of the device?

22           MR. MONACH:  Objection; lack of

23   foundation.  Objection, to the extent it calls for

24   a legal conclusion.

25           You can give your understanding, if you

Highly Confidential - Attorneys' Eyes Only

Page 98

1    have one.

2           THE WITNESS:  I'm not exactly sure what

3    this document   what this figure is showing.  It

4    could be.

5    BY MR. ZELLER:

6       Q.  And you're not sure one way or another

7    whether what's shown here in the design shows a

8    clear, flat, continuous surface on the front?

9           MR. MONACH:  Objection, to the extent it

10   calls for a legal conclusion.

11          THE WITNESS:  I didn't create these

12   drawings, so I don't know if that's what that is

13   supposed to represent.

14   BY MR. ZELLER:

15      Q.  And even apart from the fact that you

16   didn't create the drawings, you still don't know;

17   is that true?

18          MR. MONACH:  Same objection.  Object, to

19   the extent it calls for a legal conclusion; asked

20   and answered.

21          THE WITNESS:  It isn't completely clear

22   to me that that's what that is representing.

23   BY MR. ZELLER:

24      Q.  Directing your attention to Figure 9.

25          You'll see in Figure 9 that the top of

Highly Confidential - Attorneys' Eyes Only

1   the device that's shown there is    from the

2   orientation of the individual holding it    is

3   somewhat wedge shaped, or it tapers?

4         MR. MONACH:  Objection; mischaracterizes

5   the evidence, assumes facts not in evidence,

6   argumentative.

7   BY MR. ZELLER:

8         Q.  Do you see that?

9         MR. MONACH:  Object, to the extent it

10   calls for a legal conclusion.

11         THE WITNESS:  I see what you're referring

12   to.  I see it's an object that the guy is holding.

13   BY MR. ZELLER

14         Q.  Well, from the perspective of the guy

15   whose holding it

16         A.  Yes.

17         Q.    how would you describe the shape of

18   the top of the device?

19         A.  What

20         MR. MONACH:  Objection; vague and

21   ambiguous.  Object, to the extent it calls for a

22   legal conclusion.

23         THE WITNESS:  What are you referring to

24   as "the top"?

25   //

Highly Confidential - Attorneys' Eyes Only

1  BY MR. ZELLER:

2      Q.  The top, from the orientation of the

3  individual holding it, which would be your right.

4          MR. MONACH:  Objection.  Objection;

5  vague.

6  BY MR. ZELLER:

7      Q.  If you could hand me your copy.

8      A.  Okay.

9          MR. ZELLER:  Let's please mark as Exhibit

10  1132 a copy of the '889 design patent with a

11  marking that I'm about to give it.  It will be an

12  arrow consisting of an X on Figure 9, and then two

13  arrows with the Figure X, Label X, in Figure 2.

14          (Deposition Exhibit 1132 was marked for

15          identification)

16  BY MR. ZELLER:

17      Q.  So directing your attention to Figure 2.

18      A.  Okay.

19      Q.  You'll see that what I did there is, I

20  put two arrows with the Label X on there.

21      A.  Mm hmm.

22      Q.  And you'll see that those portions, those

23  sides, appear to taper, or narrow?

24          MR. MONACH:  Object to the form of the

25  question as mischaracterizing the evidence;

Highly Confidential - Attorneys' Eyes Only

Page 101

1    assumes facts not in evidence.

2            THE WITNESS:  To me, it looks like a

3    slightly perspective drawing of a rectangular

4    object.

5    BY MR. ZELLER:

6        Q.  Do you have an understanding as to

7    whether or not those lines taper because of

8    perspective or because the design that is being

9    communicated here has tapering sides?

10       A.  I couldn't say for certain.  To me

11   personally, as an industrial designer, it looks to

12   me like they're tapering because of perspective.

13       Q.  And in your view, is that an accurate

14   perspective?

15           MR. MONACH:  Objection; vague and

16   ambiguous.

17           THE WITNESS:  I don't know about an

18   accurate perspective.  It looks, perhaps, like

19   that's what was intended.

20   BY MR. ZELLER:

21       Q.  And if I asked you the same questions

22   about that edge that I labeled as X in Figure 9,

23   you'd give me the same answers?

24           MR. MONACH:  Objection, to the extent it

25   calls for a legal conclusion.  But you can give

Highly Confidential - Attorneys' Eyes Only

1   your understanding.

2          THE WITNESS:  My understanding is that's

3   what that is trying to represent.

4   BY MR. ZELLER:

5       Q.  It is perspective, but you're not

6   certain?

7          MR. MONACH:  Object to the form of the

8   question.

9          THE WITNESS:  It's possible that that's

10  what that represents.

11  BY MR. ZELLER:

12      Q.  But, again, you can't say with certainty

13  whether or not that's    that tapering is because

14  of perspective, as opposed to whether or not the

15  design is actually showing that there is some kind

16  of tapering?

17         MR. MONACH:  Objection; lack of

18  foundation.  Objection, to the extent it calls for

19  a legal conclusion; asked and answered.

20         You can do it again.

21         THE WITNESS:  In my opinion, as an

22  industrial designer and not a patent lawyer, I

23  think that that looks like it is an object with

24  perspective and not a tapering geometry.

25  //

Highly Confidential - Attorneys' Eyes Only

Page 103

1    BY MR. ZELLER:

2        Q.   And from your perspective, is that    is

3    that an accurate depiction of perspective?

4            MR. MONACH:  Objection; lack of

5    foundation, incomplete hypothetical.  Objection;

6    vague.

7            THE WITNESS:  Yes, it could be.

8    BY MR. ZELLER:

9        Q.   Can you say with any certainty if it is?

10           MR. MONACH:  Same objection.

11           THE WITNESS:  I can't say with any

12   certainty without    whether that's an absolutely

13   accurate perspective view.  But it looks okay.  It

14   looks possible.

15   BY MR. ZELLER:

16       Q.   You'll see also in Figure 9 that there is

17   a portion of it that has a thicker, darker line

18   that runs around the perimeter of the front.

19           Do you see that?

20       A.   Yes, I see that.

21       Q.   What does that depict?

22           MR. MONACH:  Objection; lack of

23   foundation.  Object, to the extent it calls for a

24   legal conclusion.

25           THE WITNESS:  It's unclear to me exactly

Highly Confidential - Attorneys' Eyes Only

1   what that is trying to depict.

2   BY MR. ZELLER:

3       Q.  Does it depict a gap or a groove?

4       MR. MONACH:  Same objection; lack of

5   foundation.  Objection, to the extent it calls for

6   a legal conclusion.

7       THE WITNESS:  I'm not sure what that

8   precise detail is trying to depict.  But it looks

9   like the separation between two parts to me.  Not

10  the separation; it looks like the joint between

11  two parts.

12  BY MR. ZELLER:

13      Q.  And directing your attention to Figure 1,

14  you'll see that also at least on part of the

15  perimeter of this front surface there is a darker

16  line there as well, darker, thicker line?

17      A.  I see that.

18      Q.  And do you have an understanding as to

19  what that's depicting?

20      MR. MONACH:  Objection; lack of

21  foundation.  Object, to the extent it calls for a

22  legal conclusion.

23      THE WITNESS:  I couldn't tell you exactly

24  what that's trying to depict.

25  //

Highly Confidential - Attorneys' Eyes Only

Page 105

1  BY MR. ZELLER:

2      Q.  Is that darker, thicker line depicting a

3  gap or a groove?

4          MR. MONACH:  Same objection.  Lack of

5  foundation, calls for a legal conclusion.

6          THE WITNESS:  In my opinion as an

7  industrial designer, it doesn't look like that's

8  trying to depict a groove or a gap.  It looks like

9  it's perhaps trying to show a radius or an

10  intersection of the rear housing, perhaps.

11  BY MR. ZELLER:

12      Q.  But you're not certain?

13          MR. MONACH:  Same objection.  Asked and

14  answered.

15          THE WITNESS:  I'm not certain.

16  BY MR. ZELLER:

17      Q.  You'll see that the date of this design

18  patent for filing   and this is on the first

19  page

20      A.  Okay.

21      Q.    in the middle of the first column,

22  March 17th, 2004.

23          Do you see that date there?

24      A.  Yes, I do.

25      Q.  Prior to March 17th, 2004, which is the

Highly Confidential - Attorneys' Eyes Only

Page 106

1   filing date of the '889 design patent, ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

5          MR. MONACH:  Object to form.  Lack of

6   foundation.

7          THE WITNESS:  I don't recall.

8   BY MR. ZELLER:

9       Q.  You just don't recall one way or another?

10      A.  I don't recall.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

████████████████████████████████████████████████

████████████████████████

19   BY MR. ZELLER:

20      Q.  Do you recall generally that occurring at

21   some him point?

22          MR. MONACH:  Same objection.

23          THE WITNESS:  It might have been.

24   BY MR. ZELLER:

25      Q.  Let me try something a different way.

Highly Confidential - Attorneys' Eyes Only

Page 107



7    BY MR. ZELLER:

8         Q.  And for the record, the word I'm using is

9    vents, V E N T S.

10            MR. ZELLER:  Maybe we could see the

11   mockup.  That would be helpful.

12            MS. TIERNEY:  Absolutely.

13            MR. MONACH:  Sure.

14            When you're done with this, maybe we

15   should take a lunch break.

16            MR. ZELLER:  Sure.  We'll just wrap up

17   this line and show him the model and take a break.

18            (Pause in the proceedings)

19            MR. ZELLER:  Thank you.

Highly Confidential - Attorneys' Eyes Only

3    BY MR. ZELLER

4        Q.   And I'll hand that mockup to you.

5             And if you could do me a tremendous

6    favor, if you could hold that up for the camera,

7    too, so we'll have a depiction of it.

8        A.   (Witness complies.)

9        Q.   And could you also show the sides with

10   the ports.

11       A.   (Witness complies.)

12       Q.   Thank you.

13            And then there's some writing on the back

14   on the label.  And if you could, please just read

15   that for the record for us.

16       A.   "Apple proto 035."

17       Q.   And first let me ask you, with respect to

18   the model that you have in your hands, had you

19   seen that before?

20            MR. MONACH:  Instruct the witness not to

21   answer with respect to any communications you had

22   with counsel in connection with the deposition or

23   any other communications with counsel.

24            But if you have a recollection of seeing

25   it independently or a recollection that you don't,

Highly Confidential - Attorneys' Eyes Only

Page 109

1    you can answer.

2          THE WITNESS:  I think so, a long time ago

3    maybe.

4    BY MR. ZELLER:



25   //

Highly Confidential - Attorneys' Eyes Only

Page 110

1    BY MR. ZELLER:

2        Q.  You'll see that there's a gap, or a

3    groove, that runs the perimeter of the front

4    there.

5        A.  Mm hmm.

6            MR. MONACH:  Object to the form of the

7    question.

8            THE WITNESS:  I do see that there's

9    something here, a gap.  I see that.

10   BY MR. ZELLER:

11       Q.  And then if you look inside that opening,

12   you'll see something that appears to be the

13   depiction of vents or some kind of openings?

14           MR. MONACH:  Object to the form of the

15   question.

16           THE WITNESS:  I see some sort of

17   detailing of something down there.

18   BY MR. ZELLER:

19       Q.  Do you know what that detailing is?

20       A.  I don't.  I couldn't be sure.

Highly Confidential - Attorneys' Eyes Only

Page 111

1    BY MR. ZELLER:



21   BY MR. ZELLER:

22        Q.   And why do you think it's different?

23        A.   Well, I see a number of differences.

24             I don't see this detailing that you're

25   referring to around the outside perimeter.

Highly Confidential - Attorneys' Eyes Only



Page 112

8        Q.  And all that leads you to conclude that

9    it's a different design?

10        MR. MONACH:  Object to the form of the

11   question as vague and ambiguous.  Object, to the

12   extent it's calling for a legal conclusion about

13   the scope of the patented design.

14        THE WITNESS:  I'm not exactly sure.  I

15   don't believe that this is the product that is

16   being covered by this.  It could be.

17   BY MR. ZELLER:

25        Q.  But you're not certain one way or

Highly Confidential - Attorneys' Eyes Only

Page 113

1    another?

2            MR. MONACH:  Objection; asked and

3    answered, lack of foundation.  Object, to the

4    extent it calls for a legal conclusion.

5            THE WITNESS:  That's correct.  I'm not

6    certain.

7    BY MR. ZELLER:

8        Q.  I'm going to show you what was previously

9    marked as Exhibit 841.

10       A.  Mm hmm.

11       Q.  And please let me know when you've had an

12   opportunity to review those pages.

13       A.  (Witness reviewing document.)

14           Okay.

15       Q.  I take it generally speaking, at some

16   point, you became aware that there was a dispute

17   between Apple and Samsung, a legal dispute?

18           MR. MONACH:  Object to the form of the

19   question as vague.

20           In answering this question, I'll instruct

21   the witness not to reveal any attorney client

22   communications.

23           THE WITNESS:  I can't remember when I

24   was   when I first found out.

25   //

Highly Confidential - Attorneys' Eyes Only

1    BY MR. ZELLER:

2         Q.  Right.  I'm not quite at that question

3    yet.  I'm just trying to understand something

4    generally.  It's to help put some time periods on

5    the questions I'm going to ask.

6         A.  Okay.

7         Q.  So at some point, did you become aware

8    that there was a lawsuit between Apple and

9    Samsung, just generally speaking?

10         MR. MONACH:  You can answer that question

11    yes, no, or I don't recall.

12         THE WITNESS:  At some point, yes.

13    BY MR. ZELLER:

14         Q.  Now, prior to the time that you became

15    aware that there was a lawsuit between Samsung and

16    Apple, had you seen these pages that were marked

17    as Exhibit 841 before that time?

18         A.  I don't recall.

19         Q.  Do you recognize what's depicted here in

20    Exhibit 841?

21         MR. MONACH:  Objection; vague and

22    ambiguous.

23         THE WITNESS:  I'm not   I'm not clear on

24    what this   on what's depicted in these pages.

25    //

Highly Confidential - Attorneys' Eyes Only

Page 269

1    inventors here on the '889 design patent, that the

2    design that's shown here in the '889 design patent

3    is the design of the first iPad?

4           MR. MONACH:  Objection; vague and

5    ambiguous.  Objection; calls for a legal

6    conclusion about the scope of the '889.

7    Objection; lacking in foundation, in light of the

8    prior testimony; asked and answered.

9           THE WITNESS:  I'm not an expert in

10   reading patent drawings, so I couldn't tell you if

11   this represents the exact design of the iPad that

12   was launched.

13   BY MR. ZELLER:

14     Q.  My question is a very specific one.  I'd

15   appreciate if you'd answer it.

16           Do you need it read back?

17           MR. MONACH:  Is that a question to the

18   witness?

19           MR. ZELLER:  Yes.

20           MR. MONACH:  Objection; asked and

21   answered.  Object to the argumentative commentary.

22           The question was asked and answered.  It

23   calls for a legal conclusion about the scope of

24   the patent.  The witness gave his answer and now

25   you're just badgering him.

Highly Confidential - Attorneys' Eyes Only

Page 270

1          Object that it's vague.  Object that it's

2    lacking in foundation.  Object that it's asked and

3    answered.

4          Do you have anything else to add?

5          MR. ZELLER:  Are you instructing him not

6    to answer?

7          MR. MONACH:  No, I am not.  Did you hear

8    me instruct him not to answer?

9          MR. ZELLER:  Well, you're interrupting my

10   questioning.

11         MR. MONACH:  No, I'm objecting to your

12   badging of the witness and characterizing his

13   response because, apparently, you don't care for

14   it, so you keep asking him the same question over

15   and over.

16         MR. ZELLER:  Let the record reflect that

17   counsel directed a question to the witness.

18   BY MR. ZELLER:

19     Q.  Do you believe, as one of the named

20   inventors here on the '889 design patent    I'm

21   not asking you as an expert, but as a named

22   inventor    that the design that's shown here in

23   the '889 patent is the design of the first iPad?

24         MR. MONACH:  Objection; asked and

25   answered.  Objection; vague.  Objection; lacking

Highly Confidential - Attorneys' Eyes Only

1  in foundation.  And objection, to the extent it

2  calls for a legal conclusion.

3          THE WITNESS:  In my opinion, I cannot be

4  certain that this   that the design of   that

5  this document here represents the exact design of

6  the iPad 1.

7  BY MR. ZELLER:

8      Q.  Again, I didn't ask about the, quote,

9  exact same design.

10         You see that there's a design that's

11 reflected here in the '889 design patent that

12 you're identified as one of the people who

13 invented it; right?

14     A.  I am.

15     Q.  And so my question is:  In your view, as

16 a named inventor on the '889 design patent, do you

17 think that the iPad has this design that's shown

18 here in the '889 design patent, or do you think

19 it's a different design?

20         MR. MONACH:  Objection; vague and

21 ambiguous.  Objection, to the extent it calls for

22 a legal conclusion.  Objection; lacking in

23 foundation.  Objection; asked and answered.

24         THE WITNESS:  I see some similarities and

25 differences, but I couldn't tell you if this

Highly Confidential - Attorneys' Eyes Only

1   I'm not    I'm really not a patent reading expert.

2   BY MR. ZELLER:

3       Q.  Do you have anything else to add to your

4   answers to my questions on the comparison between

5   the iPad design and the '889 design patent?

6       A.  No.

7       Q.  Directing your attention to the design in

8   the '889 design patent, is this the design of the

9   iPad2?

10          MR. MONACH:  Objection; vague and

11  ambiguous.  Objection, to the extent it calls for

12  a legal conclusion from a nonlawyer witness.

13          THE WITNESS:  I'm not

14          MR. MONACH:  Lack of foundation.

15          Go ahead.  Sorry.

16          THE WITNESS:  I'm not a patent reading

17  expert, so it is makes it difficult to answer your

18  question.

19  BY MR. ZELLER:

20      Q.  Do you believe that, in order for someone

21  to understand the design that's shown here in the

22  '889 design patent, that one would have to be a

23  patent expert?

24          MR. MONACH:  Objection; vague.

25  Objection; calls for speculation, incomplete

Highly Confidential - Attorneys' Eyes Only

1    hypothetical.

2           THE WITNESS:  I don't know what it would

3    take.

4    BY MR. ZELLER:

5       Q.  Well, is the design that's shown here in

6    the '889 patent understandable to you?

7           MR. MONACH:  Objection; vague and

8    ambiguous.  Objection, to the extent it's calling

9    for a legal conclusion.

10          THE WITNESS:  Not completely.

11   BY MR. ZELLER:

12      Q.  And when you say "not completely," what

13   do you mean?

14      A.  I'm not a patent lawyer.  I'm not a

15   patent reading expert.  So to me, there are things

16   about this that I can say seem different to me

17   than the final design of the iPad.

18      Q.  And again, as I've been telling you, I'm

19   not asking you an expert.  I'm asking you as

20   someone who is named as an inventor on this

21   design.

22          Please tell me what parts of the design

23   that's shown in this '889 design patent is not

24   completely understandable to you.

25          MR. MONACH:  Object

1    BY MR. ZELLER:

2        Q.  I'm talking about your own individual

3    perspective.

4            MR. MONACH:  Object to the form of the

5    question as vague and ambiguous.  Object, to the

6    extent it calls for a legal conclusion.

7            THE WITNESS:  I find it hard to translate

8    these drawings, as an individual.

9    BY MR. ZELLER:

10       Q.  And what is it about the drawings that

11   make it not possible for you to translate them?

12           MR. MONACH:  Objection; mischaracterizes

13   the prior testimony.

14           THE WITNESS:  That I work with 3D objects

15   usually, and two dimensional drawings are a little

16   bit harder to understand for me.

17   BY MR. ZELLER:

18       Q.  Well, setting aside that this is what we

19   have to work with, in terms of a design patent,

20   are these two dimensional drawings, are there

21   let me ask it this way.

22           Again, I'm not asking you as an expert.

23   I'm not asking you as patent law or anything else.

24   I'm just asking you, as your own personal

25   understanding when you look at these drawings, do

Highly Confidential - Attorneys' Eyes Only

Page 275

1    you feel like you completely understand the design

2    that is being communicated through these drawings,

3    or does it seem uncertain to you in certain

4    respects?

5            MR. MONACH:  Objection; vague and

6    ambiguous.  Objection, to the extent it

7    incorporates or asks for a legal conclusion.

8            THE WITNESS:  Some parts seem clear.

9    BY MR. ZELLER:

10      Q.  Other parts don't seem clear to you?

11           MR. MONACH:  Same objection.

12           THE WITNESS:  Yes.

13   BY MR. ZELLER:

14      Q.  And what parts are you referring to that

15   don't seem clear to you?  Again, we're talk solely

16   about your own individual perspective.

17           MR. MONACH:  Same objection.

18           THE WITNESS:  Well, I'm not sure what

19   these lines represent (indicating).

20   BY MR. ZELLER:

21      Q.  And what figure are you pointing to?

22      A.  Figure 6.

23      Q.  And you're referring to the    those

24   lines that run horizontally from the perspective

25   of the viewer, or the reader?

Highly Confidential - Attorneys' Eyes Only

Page 276

1      A.  Just those that    couple of those ones

2   in particular.

3      Q.  Are there other portions of the design

4   shown in the '889 design patent that aren't clear

5   to you?

6          Again, we're talking totally about your

7   own individual perspective.

8          MR. MONACH:  Same objections.

9          THE WITNESS:  From my perspective, I

10  can    yes, it doesn't seem like this is exactly

11  the same as the iPad which is what your question

12  was, the iPad 1.

13  BY MR. ZELLER:

14     Q.  Well, I'm asking a slightly different

15  question at this point.

16          You had mentioned, with respect to Figure

17  6, some lines that you thought were unclear to

18  you.

19          Are there other aspects of the design

20  that's shown here, other than what we've talked

21  about, that you think is unclear?

22          MR. MONACH:  Objection; vague.

23  Objection, to the extent it calls for a legal

24  conclusion or incorporates legal terms.

25          THE WITNESS:  It seems    seems like what

Highly Confidential - Attorneys' Eyes Only

Page 277

1   I'm looking at in these drawings is a housing

2   coming around, one piece housing coming around to

3   a piece of glass.  That's what I interpret from

4   these drawings.

5   BY MR. ZELLER:

6       Q.  But you're not sure about that?

7           MR. MONACH:  Object to the form of the

8   question; asked and answered.

9           THE WITNESS:  That's what it looks like

10  to me.

11  BY MR. ZELLER:

12      Q.  But are you certain that's the design

13  that's being communicated here, or are you just

14  telling me that that's how it seems to you?

15          MR. MONACH:  Object to the form of the

16  question.  It's badgering the witness.

17          You've asked him to give his own opinion,

18  and now when he gives it, you seem to be objecting

19  to his own opinion.

20          MR. ZELLER:  I'm asking him how certain

21  he is that that's what the design is.

22          MR. MONACH:  Object to the form of the

23  question as vague, asked and answered.  Object, to

24  the extent you're incorporating a legal term or

25  legal conclusion.

Highly Confidential - Attorneys' Eyes Only

1    BY MR. ZELLER:

2         Q.  You can go ahead and answer.

3         A.  That's how it appears to me, judging from

4    these drawings.

5         Q.  And how certain are you that that's what

6    the drawings show?

7              MR. MONACH:  Objection; vague.

8              THE WITNESS:  I'm not absolutely certain,

9    but it appears that way to me.

10   BY MR. ZELLER:

11        Q.  To go back to the question I was asking,

12   other than what we've talked about, are there

13   other aspects of what's shown here in the '889

14   design that are unclear to you personally?

15             MR. MONACH:  Object to the form of the

16   question for the reasons previously stated.

17             THE WITNESS:  Not really.

18   BY MR. ZELLER:

19        Q.  Directing your attention to Figure 6,

20   you'll see that there is the circular form there

21   on the right hand side, from the perspective of

22   the person looking at it.

23             Do you see that?

24        A.  Yes.

25        Q.  What is that?

Highly Confidential - Attorneys' Eyes Only

Page 279

1       A.  It's

2           MR. MONACH:  Object to the form of the

3   question.

4           THE WITNESS:  It looks like a circle.

5   BY MR. ZELLER:

6       Q.  What's it depict?

7           MR. MONACH:  Object to the form of the

8   question as vague and ambiguous.  Object, to the

9   extent it calls for a legal conclusion.

10          THE WITNESS:  I'm not exactly sure what

11  it's trying to depict.

12  BY MR. ZELLER:

13      Q.  Do you have any idea what it is?

14          MR. MONACH:  Same objection.

15          THE WITNESS:  Not for certain.

16  BY MR. ZELLER:

17      Q.  I'm not asking for certain.  I'm asking:

18  Do you have any understanding as to what that

19  circle depicts?

20          MR. MONACH:  Same objections as before.

21          You can answer.

22          THE WITNESS:  I'm not sure what that

23  circular   what that circle is depicting.

24  BY MR. ZELLER:

25      Q.  Is that circle being presented with

Highly Confidential - Attorneys' Eyes Only

Page 280

1    broken lines?

2            MR. MONACH:  Objection; lack of

3    foundation.  And object, to the extent it calls

4    for a legal conclusion.  Objection under the Best

5    Evidence Rule.

6            THE WITNESS:  I don't know.  It looks

7    like there's    it looks like there's a line and

8    some dotted lines or dots around it.

9    BY MR. ZELLER:

10     Q.  Does the design that's showing here in

11   the '889 design patent    let me step back for a

12   moment.

13           Do you see here on the first page the

14   phrase    this is under "description"    where it

15   says, "The broken lines being shown for

16   illustrative purposes only and form no part of the

17   claimed design."

18           Do you see that?

19           MR. MONACH:  Object to the reading of

20   only a portion of the sentence which says,

21   "Figure 9 is an exemplary diagram of the use of

22   the electronic device thereof, the broken lines

23   being shown for illustrative purposes only and

24   form no part of the claimed design."

25   //

Highly Confidential - Attorneys' Eyes Only

1    BY MR. ZELLER:

2        Q.  Do you see that part?

3        A.  I do.  "Figure 9 is an exemplary diagram

4    of the use of the electronic device thereof, the

5    broken lines being shown for illustrative purposes

6    only form no part of the claimed design."  Okay.

7        Q.  Directing your attention to Figure 6.

8            Is that circle being shown as broken

9    lines?

10           MR. MONACH:  Objection under the Best

11   Evidence Rule, that the document is the best

12   evidence of whether the lines are broken or not.

13           THE WITNESS:  I can't say for certain.

14   BY MR. ZELLER:

15       Q.  Directing your attention to Figure 8.

16           You'll see in the center there, there is

17   a smaller rectangular shape.

18           Do you see that?

19       A.  Right.

20       Q.  Do you see that?

21       A.  Yes.

22       Q.  What's that depict?

23           MR. MONACH:  Object to the form of the

24   question.  Object, to the extent it calls for a

25   legal conclusion.

Highly Confidential - Attorneys' Eyes Only

1      THE WITNESS:  I'm not sure what it's

2  depicting.

3  BY MR. ZELLER:

4      Q.  Are those broken lines?

5      MR. MONACH:  Objection; Best Evidence

6  Rule.  Objection; vague.

7      THE WITNESS:  They look like dots to me.

8  BY MR. ZELLER:

9      Q.  Do you consider those to be broken lines?

10     MR. MONACH:  Object to the form of the

11  question.

12     THE WITNESS:  They look like dots to me.

13  BY MR. ZELLER:

14     Q.  Do you consider dots to be broken lines?

15     MR. MONACH:  Object to the form of the

16  question.  And object, to the extent it calls for

17  a legal conclusion; lacks foundation.

18     THE WITNESS:  I'm not sure what you mean

19  by "broken lines."

20  BY MR. ZELLER:

21     Q.  You see the words "broken lines" that are

22  used under the description heading that we talked

23  about on the first page?

24     A.  Yes.

25     Q.  Do you know what broken lines means in

Highly Confidential - Attorneys' Eyes Only

Page 283

1    this context, or have any understanding as to what

2    it means?

3        A.  Sometimes it can mean there's a dashed

4    line, dot dash, dot dash.  "Broken" can be

5    different things.

6        Q.  So then specifically, with respect to

7    that smaller rectangular shape there in Figure

8    8

9        A.  Right.

10       Q.     are those broken lines that are being

11   shown for illustrative purposes only and form no

12   part of the claimed design, as you understand

13   those terms, as you understand this drawing?

14           MR. MONACH:  Object to the form of the

15   question as vague, lacking in foundation, and,

16   plainly, just calling for a legal conclusion.

17           THE WITNESS:  I don't know what they're

18   trying to represent.  I'm not an expert at reading

19   patent drawings.

20   BY MR. ZELLER:

21       Q.  Do you have any understanding in that

22   regard as an inventor, a named inventor, of the

23   '889 design patent?

24           MR. MONACH:  Same objections; asked and

25   answered.

Highly Confidential - Attorneys' Eyes Only

Page 284

1          THE WITNESS:  I was an inventor of the

2    product, not the patent drawing.

3    BY MR. ZELLER:

4      Q.  Setting aside    because I'm not asking

5    you as an expert, again.  All my questions here

6    have been about how you understand these.

7          Do you have an understanding as to

8    whether that    what you call those dotted lines

9    for that rectangular area in Figure 8 is the same

10   as these broken lines that form no part of the

11   claim design or are they something different?

12         MR. MONACH:  Objection; asked and

13   answered, vague, lack of foundation, calls for a

14   legal conclusion.

15         THE WITNESS:  I'm not exactly sure what

16   those dotted lines mean.

17         MR. ZELLER:  Okay.  Let's take a few

18   minutes.

19         THE VIDEOGRAPHER:  We're off the record

20   at 6:51 p.m.

21         (Recess taken)

22         THE VIDEOGRAPHER:  We are back on the

23   record at 7:07    7:03 p.m.

24         You may proceed.

25   //

Highly Confidential - Attorneys' Eyes Only

Page 285

1   BY MR. ZELLER:

2       Q.  I'm going to show you what's previously

3   marked as Exhibit 6, which is a copy of United

4   States Design Patent 593,087.

5           Can you let us know when you've had a

6   chance to look at the '087 design patent.

7       A.  (Witness reviewing document.)

8           Okay.

9       Q.  Do you recognize the '087 design patent

10  as a patent that you're a named inventor on?

11      A.  Yeah, looks like it.

12      Q.  What, from your perspective as an

13  inventor of the design that's shown here on the

14  '087 design patent, was new or original about this

15  design?

16          MR. MONACH:  Object to the form of the

17  question as vague, lacking in foundation, and

18  incorporating or requesting a legal conclusion.

19          THE WITNESS:  What was new about the

20  iPhone?  What was new about this patent?

21  BY MR. ZELLER:

22      Q.  What was new and original about the

23  design that's shown here in these drawings that

24  make up the '087 design patent?

25          MR. MONACH:  Same objection.