Exhibit 10

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

| | |
|---|---|
| APPLE INC., a California corporation, | Case No.    11-cv-01846-LHK |
| Plaintiff, | **EXPERT REPORT OF PETER W. BRESSLER, FIDSA** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

13

14

15

16

17

18

19

20

**\*\*CONFIDENTIAL – CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT TO A PROTECTIVE ORDER\*\***

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | QUALIFICATIONS | 3 |
| III. | MATERIALS CONSIDERED | 7 |
| IV. | MY UNDERSTANDING OF THE LAW OF PATENT INFRINGEMENT | 7 |
| V. | MY UNDERSTANDING OF THE ORDINARY OBSERVER | 9 |
| VI. | MY UNDERSTANDING OF THE LAW ON TRADE DRESS FUNCTIONALITY | 9 |
| VII. | BACKGROUND OF THE PATENTS AND APPLE'S ICONIC DESIGNS | 10 |
| VIII. | APPLE'S ASSERTED DESIGNS | 16 |
| | A. The D'889 Patent | 16 |
| | B. No Element of the D'889 Patent Is Dictated by Function | 17 |
| | C. The D'087 Patent | 20 |
| | D. No Element of the D'087 Patent Is Dictated by Function | 21 |
| | E. The D'677 Patent | 25 |
| | F. No Element of the D'677 Patent Is Dictated by Function | 26 |
| | G. The D'270 Patent | 29 |
| | H. No Element of the D'270 Patent Is Dictated by Function | 30 |
| IX. | MANY OF SAMSUNG'S DESIGNS HAVE BECOME SUBSTANTIALLY SIMILAR TO APPLE'S | 32 |
| X. | SAMSUNG INFRINGES THE D'889 PATENT | 34 |
| | A. Identification of Infringing Products | 34 |
| | B. Comparison of the Prior Art | 36 |
| XI. | SAMSUNG INFRINGES THE D'087 PATENT | 47 |
| | A. Identification of Infringing Products | 47 |
| | B. Comparison of the Prior Art | 48 |
| | C. Samsung's Galaxy S i9000 Infringes the D'087 Patent | 53 |
| | D. Samsung's Galaxy S 4G Infringes the D'087 Patent | 55 |
| | E. Samsung's Infuse 4G Infringes the D'087 Patent | 58 |
| | F. Samsung's Vibrant Infringes the D'087 Patent | 60 |
| | G. Samsung's Galaxy S II (Epic 4G Touch) Infringes the D'087 Patent | 62 |
| | H. Samsung's Galaxy S II (AT&T) Infringes the D'087 Patent | 65 |
| | I. Samsung's Galaxy S II (Skyrocket) Infringes the D'087 Patent | 67 |
| | J. Samsung's Galaxy S II (i9100) Infringes the D'087 Patent | 70 |
| XII. | SAMSUNG INFRINGES THE D'677 PATENT | 72 |
| | A. Identification of Infringing Products | 72 |

| | | |
|---|---|---|
| B. | Comparison of the Prior Art | 73 |
| C. | Samsung's Mesmerize (SCH-I500), Galaxy S Showcase (SCH-I500) & Fascinate (SCH-I500) Infringe the D'677 Patent | 76 |
| D. | Samsung's Galaxy S i9000 Infringes the D'677 Patent | 78 |
| E. | Samsung's Galaxy Ace Infringes the D'677 Patent | 81 |
| F. | Samsung's Galaxy S 4G Infringes the D'677 Patent | 83 |
| G. | Samsung's Infuse 4G Infringes the D'677 Patent | 85 |
| H. | Samsung's Vibrant Infringes the D'677 Patent | 87 |
| I. | Samsung's Galaxy S II (Epic 4G Touch) Infringes the D'677 Patent | 89 |
| J. | Samsung's Galaxy S II (T-Mobile) Infringes the D'677 Patent | 91 |
| K. | Samsung's Galaxy S II (AT&T) Infringes the D'677 Patent | 93 |
| L. | Samsung's Galaxy S II (Skyrocket) Infringes the D'677 Patent | 95 |
| M. | Samsung's Galaxy S II (i9100) Infringes the D'677 Patent | 97 |
| XIII. | SAMSUNG INFRINGES THE D'270 PATENT | 99 |
| A. | Identification of Infringing Products | 99 |
| B. | Comparison of the Prior Art | 99 |
| C. | Samsung's Galaxy S i9000 Infringes the D'270 Patent | 106 |
| D. | Samsung's Galaxy S 4G Infringes the D'270 Patent | 109 |
| E. | Samsung's Vibrant Infringes the D'270 Patent | 112 |
| XIV. | APPLE PRACTICES THE CLAIM OF THE D'889 PATENT | 115 |
| XV. | APPLE PRACTICES THE CLAIM OF THE D'087 PATENT | 117 |
| A. | Apple's iPhone (Original) Practices the Claim of the D'087 Patent | 118 |
| B. | Apple's iPhone 3G Practices the Claim of the D'087 Patent | 120 |
| C. | Apple's iPhone 3GS Practices the Claim of the D'087 Patent | 122 |
| XVI. | APPLE PRACTICES THE CLAIM OF THE D'677 PATENT | 124 |
| B. | Apple's iPhone (Original) Practices the Claim of the D'677 Patent | 124 |
| C. | Apple's iPhone 3G Practices the Claim of the D'677 Patent | 126 |
| D. | Apple's iPhone 3GS Practices the Claim of the D'677 Patent | 128 |
| E. | Apple's iPhone 4 (and iPhone 4S) Practices the Claim of the D'677 Patent | 130 |
| XVII. | APPLE PRACTICES THE CLAIM OF THE D'270 PATENT | 132 |
| XVIII. | APPLE'S TRADE DRESS RELATED TO THE iPHONE IS NOT FUNCTIONAL | 135 |
| XIX. | APPLE'S TRADE DRESS RELATED TO THE iPAD IS NOT FUNCTIONAL | 145 |
| XX. | CONCLUSION | 152 |
| XXI. | SUPPLEMENTATION | 153 |
| XXII. | EXHIBITS TO BE USED | 153 |

## I.  INTRODUCTION

1.      I, Peter W. Bressler, FIDSA, submit this Expert Report in connection with certain patent claims and trade dress being asserted by Apple Inc. (Apple) in the above-captioned case. I understand that Apple has alleged that Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, Samsung) have infringed Apple's patents and trademarks.

## II.  QUALIFICATIONS

2.      I am currently a product design consultant and an Adjunct Associate Professor in the Integrated Product Design Program at the University of Pennsylvania.

3.      My *curriculum vitae*, which includes a listing of papers, patents, and other materials which I have authored within the last ten (10) years, is attached as Exhibit 1.  My CV also includes a listing of the cases in which I have testified as an expert at trial or by deposition within the last four (4) years.  It also includes a history of the positions that I have held at the national level of the Industrial Designers Society of America (IDSA).  Also, it lists my educational background, which includes a Bachelor of Fine Arts degree in Industrial Design from Rhode Island School of Design in 1968.

4.      In 2010, I received my profession's highest award, the IDSA Personal Recognition Award, which had been bestowed upon only 25 others in the history of the profession before my receipt of the award.

5.      I am the founder and formerly the Board Chair at Bresslergroup, Inc., a design research, strategic product planning, industrial design, product development, and engineering consulting firm.  As the founder of Bresslergroup, Inc., I have been involved with over 700 clients and over 3,000 product design and development projects.

6.      Several of my projects include industrial designs for telephone handsets for IMM, cell phones for Motorola, video phones for Worldgate, audio products for Polk Audio, tablet computers for Telepad, and digital tire gauges for MSI International.

1   7.   I have been awarded over 70 United States patents for physical products.  These

2   patents are divided roughly equally between utility and design patents, a listing of which is

3   provided in my CV.

4   8.   In order to create attractive and successful designs, an industrial designer must

5   have an understanding of what the consumer will see and appreciate in a particular design.  Such

6   an understanding of the ordinary consumer's visual impressions is built up over years of

7   experience in industrial design, and in the process of critiquing, testing, and reiterating one's and

8   other's designs.  From my over 40 years of industrial design work and design experience with

9   consumer electronics, I have developed extensive experience regarding how ordinary consumers

10   see, recognize, and understand the industrial design of consumer electronics.

11   9.   Over the course of my career, I have also spent considerable time participating in

12   consumer testing that involves determining consumers' visual understanding of various products,

13   including consumer electronics products.

14   10.   I have also been trained in Synectics, which is a process for facilitating group

15   interaction that encourages the exchange of information, creativity, and innovation.  This training

16   has allowed me to more effectively communicate with, and gather information from, consumers

17   in the course of my research.

18   11.   During my career, I have participated in well over one hundred and fifty consumer

19   or user research projects employing a wide range of techniques, including focus groups, consumer

20   preference studies, point of sale observations, ethnographic analyses, personal interviews, mall

21   intercept surveys, and product usability testing.  Examples of such projects include:

22   • Point of sale observation of mobile phone and tablet purchasers;

23   • Consumer preference interviews regarding audio speakers at the Consumer
24   Electronics Show;

25   • Consumer preference focus groups for selection of DVD camcorder concepts;

26   • Hidden and participatory consumer group creativity sessions and preference
27   testing for kitchen appliances; and

28

- Ethnographic in-home interviews and observations to provide generative concept development for home office products.

12.    There are a number of common elements in my research experience involving consumer electronics designs.  First, my work has involved the observation of ordinary consumers as they make visual assessments of consumer electronics designs, including at the point of purchase.  Second, it has involved interviewing ordinary consumers on the aesthetic features, visual effects, and visual impressions that they observe and experience in relation to consumer electronics designs.  Third, it has involved interviewing ordinary consumers on the aesthetic features, visual effects, and visual impressions that they use to identify, distinguish, and evaluate consumer electronics designs.

13.    Through all of these experiences, I have gained an understanding of the level of observation and visual acuity brought to bear by an ordinary consumer when purchasing consumer electronics.  I have also gained an understanding of how ordinary observers perceive consumer electronics designs:  for example, how strong a visual effect must be before attracting the notice of the ordinary consumer; and how much weight an ordinary consumer gives to strong visual effects or themes when identifying or comparing designs.

14.    I have been retained by Apple and have been asked to provide my opinion with respect to the infringement of United States Patent Nos. D504,889 (the D'889 Patent), D593,087 (the D'087 Patent), D618,677 (D'677 Patent), and the D622,270 (D'270 Patent).  A copy of these patents is attached to this Report as Exhibits 3-6.  In general, I understand that my task is to review materials and to provide teaching and opinions regarding the infringement of the D'889, D'087, D'677, and D'270 Patents by products of Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, Samsung).  I have been asked to provide my opinion regarding which Apple products embody the D'889, D'087, D'677, and D'270 Patents.

15.    I have been asked to provide my opinion with respect to the non-functionality of the industrial design aspects of the Original iPhone Trade Dress, the iPhone 3G Trade Dress, the

1    iPhone 4 Trade Dress, the iPhone Trade Dress, the iPad Trade Dress, and the iPad 2 Trade Dress.

2    In general, I understand that my task is to review materials and to provide teaching and opinions

3    regarding the non-functionality of the above trade dress.

4          16.      I expect to testify at trial regarding the D'889, D'087, D'677, and D'270 Patents

5    and whether Samsung's Galaxy Tab 10.1[1], Galaxy S i9000, Galaxy S 4G, Infuse S 4G, Vibrant,

6    Galaxy S II (Epic 4G Touch), Galaxy S II (T-Mobile), Galaxy S II (AT&T), Galaxy S II

7    (Skyrocket), Galaxy S II (i9100), the Mesmerize, Fascinate, and Galaxy S Showcase, Galaxy Ace

8    (collectively, the Accused Products) infringe the D'889, D'087, D'677, and/or D'270 Patents,

9    including the matters discussed in this Report and in any supplemental or rebuttal reports or

10   declarations that I may prepare.  I also expect to testify about the context of the D'889, D'087,

11   D'677, and D'270 Patents, the progression of the designs preceding and following the designs

12   disclosed in the D'889, D'087, D'677, and D'270 Patents, and the state of the art both before and

13   after filing each of the D'889, D'087, D'677, and D'270 Patents.  I also expect to testify at trial

14   regarding which Apple products embody the D'889, D'087, D'677, and D'270 Patents.  I also

15   expect to testify with respect to the non-functionality of industrial design aspects of the Original

16   iPhone Trade Dress, the iPhone 3G Trade Dress, the iPhone 4 Trade Dress, the iPhone Trade

17   Dress, the iPad Trade Dress, and the iPad 2 Trade Dress.  I also expect to testify with respect to

18   matters addressed by any expert(s) testifying on behalf of Samsung.  I may also testify on other

19   matters relevant to this litigation if asked by the Court or by the parties' counsel.

20         17.      My analysis is based on the current design of Samsung's Accused Products.  I

21   reserve the right to modify my analysis if Samsung modifies the design of its Accused Products.

22         18.      I further reserve the right to supplement my Report if and when Samsung produces

23   additional documents or other information that affect my analysis.

24         19.      I bill my time at a rate of $400.00 dollars per hour.  My compensation is in no way

25   contingent upon the outcome of the case.

26

27
_____

28        [1] Hereinafter, the Galaxy Tab 10.1 refers to both the WiFi and LTE versions.

**III.     MATERIALS CONSIDERED**

20.     In connection with this report, I have reviewed the D'889, D'087, D'677, and D'270 Patents, the prosecution histories for the D'889, D'087, D'677, and D'270 Patents, documents filed in this litigation, background information concerning the D'889, D'087, D'677, and D'270 Patents provided by Apple, deposition testimony of various Apple and Samsung employees, information taken from discovery responses from Samsung, information contained in documents and things produced by Apple and Samsung in this litigation, and certain publicly available materials relevant to the D'889, D'087, D'677, and D'270 Patents, Samsung's infringement, and Apple's trade dress.  A list of the documents I considered and relied upon is attached as Exhibit 2.

**IV.     MY UNDERSTANDING OF THE LAW OF PATENT INFRINGEMENT**

21.     I have not been asked to offer an opinion on the law; however, as an expert opining on infringement, I understand that I am obliged to follow existing law.  I have therefore been asked to apply the following principles to my analysis of infringement.

22.     I have been informed by counsel, and I understand, that infringement of a design patent turns on whether an "ordinary observer" who is "familiar with the prior art" would find the overall appearance of the patented design to be "substantially the same" as the overall appearance of the corresponding portion of the accused product, or would find that the accused product "embod[ies] the [claimed] design or any colorable imitation thereof."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc) (internal quotations omitted, citation omitted).  The infringement analysis focuses on "the design as a whole" rather than "particular features" of the design.  *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

23.     I further understand that minor variations do not prevent a finding of infringement and thus an infringing product need not be an exact copy of the patented design.  *See Egyptian Goddess*, 543 F.3d at 670.  "The mandated overall comparison is a comparison taking into account *significant differences* between the two designs, *not minor trivial differences* that necessarily exist between any two designs that are not exact copies of one another."  *Int'l Seaway*

1    *Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) (emphasis added).  The

2    critical issue is whether "the effect of the whole design [is] substantially the same" as the

3    corresponding portions of the accused design.  *Payless Shoesource, Inc. v. Reebok Int'l, Ltd*., 998

4    F.2d 985, 991 (Fed. Cir. 1993) (internal quotations omitted, citation omitted).

5         24.    I understand that when comparing two designs, the ordinary observer may be

6    drawn to the "overall effects" and "visual theme[s]" of a design in forming an overall impression.

7    *See Crocs*, 598 F.3d at 1306.

8         25.    Moreover, I understand that the hypothetical ordinary observer is deemed to be

9    "conversant with the prior art" that may be relevant to infringement.  *Egyptian Goddess*, 543 F.3d

10   at 678.  For example, "[w]hen the differences between the claimed and accused design are viewed

11   in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those

12   aspects of the claimed design that differ from the prior art."  *Id.* at 676.  "If the accused design has

13   copied a particular feature of the claimed design that departs conspicuously from the prior art, the

14   accused design is naturally more likely to be regarded as deceptively similar to the claimed

15   design, and thus infringing."  *Id.* at 677.  Thus, when the claimed design and the accused product

16   appear similar, a proper infringement analysis considers the prior art in comparing the claimed

17   design and the design of the accused product.  *Id*. at 677-78.

18        26.    I have further been informed by counsel that "[w]hen the patented design and the

19   design of the article sold by the patentee are substantially the same," a comparison of "the

20   patentee's and the accused articles directly" is permissible to assist in the analysis of whether the

21   accused products infringe the design at issue.  *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988

22   F.2d 1117, 1125-26 (Fed. Cir. 1993).

23        27.    I additionally understand that elements of a design that are purely functional are

24   not protected by a design patent.  Accordingly, purely functional elements of a design must be

25   excluded from the infringement analysis.  *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288,

26   1293-94 (Fed. Cir. 2010).

27        28.    I understand that the fact that an element of a design serves a functional purpose

28   does not mean that the specific design of the element is dictated by functional considerations.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
8

1   *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).  I understand that "[a]

2   design is not dictated solely by its function when alternative designs for the article of manufacture

3   are available."  *See Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996)

4   (citation omitted).  "When there are several ways to achieve the function of an article of

5   manufacture, the design of the article is more likely to serve a primarily ornamental purpose."

6   *L.A. Gear*, 988 F.2d at 1123.  And "if other designs could produce the same or similar functional

7   capabilities, the design of the article in question is likely ornamental, not functional."  *Rosco, Inc.*

8   *v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002).

9          29.     I also understand that that the use of labeling or logos cannot be used to escape

10  design patent infringement.  *L.A. Gear*, 988 F.2d at 1126.

11  **V.      MY UNDERSTANDING OF THE ORDINARY OBSERVER**

12         30.     I have been informed by counsel that the "ordinary observer" is a person

13  possessing "ordinary acuteness, bringing to the examination of the article upon which the design

14  has been placed that degree of observation which men of ordinary intelligence give."  *Gorham*

15  *Co. v. White*, 81 U.S. 511, 528 (1871).  Accordingly, it is my opinion that the ordinary observer

16  for the designs in question is a member of the general consuming public that buys and uses

17  smartphones or tablets.  In the context of smartphones and tablets, the ordinary observer may be

18  observing and purchasing the devices in a retail environment, such as a carrier store or electronics

19  store, or in an online environment, such as a carrier website or an electronics store website.  In

20  order to add to my understanding of how the ordinary observer would see and evaluate

21  smartphones and tablets, I have visited carrier stores and on-line retailers for purposes of this

22  Report.

23  **VI.     MY UNDERSTANDING OF THE LAW ON TRADE DRESS FUNCTIONALITY**

24         31.     I have not been asked to offer an opinion on the law; however, as an expert

25  opining on trade dress functionality, I understand that I am obliged to follow existing law.  I have

26  been informed by counsel that product design trade dress is entitled to protection only if it is

27  nonfunctional.  A trade dress is functional "if it is essential to the product's use or if it [favorably]

28

1    affects the cost and quality of the article." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d

2    837, 843 (9th Cir. 1987).

3       32. I understand that in determining functionality, a product's trade dress must be

4    analyzed as a whole, and not by its individual elements. *Fuddruckers*, 826 F.2d at 842

5    ("functional elements that are separately unprotectable can be protected together as part of a trade

6    dress"). "The fact that individual elements of the trade dress may be functional does not

7    necessarily mean that the trade dress *as a whole* is functional." *Clicks Billiards, Inc. v.*

8    *Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (emphasis in original).

9       33. I understand that courts generally consider four factors in assessing the

10   functionality of a trade dress:

11      (1) Whether the design yields a utilitarian advantage;

12      (2) Whether alternative designs are available;

13      (3) Whether advertising touts the utilitarian advantages of the design; and

14      (4) Whether the particular design results from a comparatively simple or inexpensive

15   method of manufacture.

16   *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).

17   **VII. BACKGROUND OF THE PATENTS AND APPLE'S ICONIC DESIGNS**

18      34. Apple's iPhone design is distinctive and universally recognized. Its elegant bezel,

19   unique edge-to-edge glass front surface, and refined facial features introduced a striking new icon

20   to the field of design. The iPhone's distinctive bezel and front face are embodied in the D'087

21   and D'677 Patents. The iPod touch builds on the iPhone design and is embodied in the D'270

22   Patent. Apple's iPad design is no less iconic with its elegant lines and distinctive edge-to-edge

23   glass front surface. The iPad 2 is embodied in the D'889 Patent.[2]

24

25   _____

26

27

28



36.     The iPhone's distinctive design has received widespread acclaim.  Among other forms of recognition, the iPhone received the 2008 International Design Excellence Award (IDEA) Best in Show,[3] a 2008 Design and Art Direction "Black Pencil" award,[4] and a 2008 International Forum (iF) Product Design Award.[5]  *Time* named the iPhone its "invention of the year" for 2007[6] and Engadget named it one of its "Ten Gadgets That Defined the Decade."[7]  *Time*'s top reason for recognizing the iPhone was that "[t]he iPhone is pretty."  Similarly, Engadget stated that the iPhone constituted a "sea change" and observed that "as we close out the decade . . . world-class industrial design is a given.  The game has changed."

---

[3] IDSA, IDEA 2008 Best, http://www.idsa.org/category/tags/idea-2008-best.

[4] D&AD, Professional Awards 2008, http://www.dandad.org/awards/professional/2008/categories/prod/productdesign/22709/iphone.

[5] iF International Forum Design, iF online exhibition, http://www.ifdesign.de/Exibition_index_e?pagemode=awards&kategorie_id=-1&pagemode=awards&sprache=1&award_id=142&ignore_cat=1&award_name=iF+product+design+award&award_jahr=&radio_searchmode=on&search=apple&btn_search.x=15&btn_search.y=19.

[6] Lev Grossman, "Invention of the Year:  The iPhone," Time, Nov. 1, 2007, http://www.time.com/time/specials/2007/article/0,28804,1677329_1678542_1677891,00.html.

[7] Engadget, "Ten Gadgets that Defined the Decade," Dec. 30, 2009, http://www.engadget.com/2009/12/30/ten-gadgets-that-defined-the-decade/.

37.     The iPhone's beauty and distinctive appearance have also been praised in many articles, including the following:

- A *New York Times* review of the iPhone dated January 11, 2007, entitled "Apple Waves Its Wand at the Phone."  The article notes that "[a]s you'd expect of Apple, the iPhone is gorgeous."  It likens Apple's creation of the iPhone to the work of "the fairy godmother in 'Cinderella'":  transformation of a "homely and utilitarian object, like a pumpkin or a mouse, into something glamorous and amazing . . ."[8]

- A *New York Times* article dated June 27, 2007, describes the iPhone as "a tiny, gorgeous hand-held computer," and notes that "[t]he phone is so sleek and thin, it makes Treos and Blackberrys look obese."[9]

- A *Korea JoonsAng Daily* Internet article dated February 18, 2008, entitled "Apple iPhone Tops List of Innovative inventions," reporting the results of a survey of 599 Korean CEOs by Samsung Economic Research Institute, in which the CEOs indicated that the "iPhone's sleek design caught their eye."[10]

- A *Wall Street Journal* article, dated June 27, 2007, entitled "Testing Out the iPhone," which states that smartphone "designers have struggled to balance screen size, keyboard usability and battery life . . . .  [T]he iPhone is, on balance, a beautiful and breakthrough handheld computer."[11]

38.     The iPhone is not merely an example of excellence in design.  The purity of design expression pushes the iPhone into the realm of art.  In recognition of the iPhone's aesthetic beauty, iPhones have been added to the permanent collections of museums including the Museum of Modern Art, the San Francisco Museum of Modern Art, and the Museum for Kunst und Gewerbe (Arts & Crafts) in Hamburg, Germany.  The iPhone has been displayed in exhibitions including:

- *Less and More:  The Design Ethos of Dieter Rams*, San Francisco Museum of Modern Art, August 27, 2011, through February 20, 2012 and

---

[8] David Pogue, "Apple Waves Its Wand at the Phone," NY Times, Jan. 11, 2007 http://www.nytimes.com/2007/01/11/technology/11pogue.html?sq=pogue.

[9] David Pogue, "The iPhone Matches Most of Its Hype," NY Times, June 27, 2007, http://www.nytimes.com/2007/06/27/technology/circuits/27pogue.html?pagewanted=1&_r=1&ref=iphone.

[10] Korea JoongAng Daily, "Apple's iPhone Tops List of Innovative Inventions," Feb. 18, 2008, http://joongangdaily.joins.com/article/view.asp?aid=2886322.

[11] Walter Mossberg & Katherine Boehret, "Testing Out the iPhone, The Wall Street Journal, June 27, 2007, http://online.wsj.com/articles/SB118289311361649057.html.

1
2
- *Stylectrical*, Museum for Kunst und Gewerbe (Arts & Crafts), August 26, 2011, through January 15, 2012.

3
4
Additionally, the United States Patent and Trademark office featured iPhone shaped displays in an exhibit showcasing Steve Jobs' numerous patents and trademarks.[12] *See* Ex. 7.

5
6
7
8
9
10
11
39.    In part because of its distinctive design, Apple's iPhone is among the most commercially successful products in the world.  After the first iPhone shipped in June 2007, Apple sold one million units in 74 days.[13]  Additionally, within three days of launching the iPhone 3G and iPhone 3GS respectively, Apple sold more than one million units of each.[14]  Apple sold more than 1.7 million iPhone 4 units in the three days following its launch.[15] In fiscal year 2011 alone, Apple recorded more than $47 billion in net sales revenue for the iPhone and related products and services.[16]

12
13
14
15
16
40.    The iPod touch's design, which builds on the iPhone design, has also received much acclaim.  The iPod touch received a gold design award at the iF Product Design Awards at the CeBit 2008 show in Hanover, Germany.[17]  The iPod touch also received a "Yellow Pencil" design award in a 2008 Design and Art Direction design competition.[18]  Similarly, in part due to its distinctive design, Apple's iPod touch was named "Gadget of the Year" by T3, in a British

17
18
19
20
[12] Brian Chen, "Patent Office Highlights Jobs's Innovations," New York Times, Nov. 23, 2011, http://bits.blogs.nytimes.com/2011/11/23/patent-office-highlights-jobss-innovations/.

21
[13] Apple Press Info, "Apple Sells One Millionth iPhone," Sep. 10, 2007, http://www.apple.com/pr/library/2007/09/10iphone.html.

22
23
[14] Apple Press Info, "Apple Sells One Million iPhone 3Gs in First Weekend," July 14, 2008, http://www.apple.com/pr/library/2008/07/14iphone.html; Apple Press Info, "Apple Sells Over One Million iPhone 3GS Models," June 22, 2009, http://www.apple.com/pr/library/2009/06/22iphone.html.

24
[15] Apple Press Info, "iPhone 4 Sales Top 1.7 Million," June 28, 2010, http://www.apple.com/pr/library/2010/06/28iPhone-4-Sales-Top-1-7-Million.html.

25
[16] Apple 2011 10-K, p. 30.  *See* APLNDC-Y0000135683-789 at APLNC-Y0000135714.

26
[17] MacNN, "Apple Wins Eight iF Design Awards at CeBIT," Mar. 8, 2008, http://www.macnn.com/articles/08/03/08/apple.wins.8.if.awards/.

27
28
[18] Palmer, Robert, "Apple Wins Two D&AD 'Black Pencil' Awards," TUAW, May 16, 2008, http://www.tuaw.com/2008/05/16/apple-wins-two-dandad-black-pencil-awards/.

1    awards competition.[19]  The iPod touch was also named one of the "Best Inventions of 2008" by

2    *Time* magazine.[20]

3         41.    The distinctive design of the iPod touch has also received widespread praise from

4    various media outlets.  For example,  a *PC Magazine* article dated September 12, 2007, entitled

5    "Apple iPod touch," calls the iPod touch a "thing of beauty" and explains that as an "elegant

6    design, the iPod touch is simply the best portable media player ever made."[21]  Likewise, a

7    *Guardian* (London) article dated September 6, 2007 notes "[w]ith its eye catching design, the

8    iPod [touch] has become a landmark of 21st century living in just a few years."[22]

9         42.    Apple's iPod touch is among the most commercially successful lines of products

10   in the world.  By March of 2011, Apple had sold over 60 million of iPod touch units.[23]

11        43.    The design of Apple's iPad line of products has also received widespread acclaim.

12   Among other forms of recognition, the iPad received the Red Dot award for Product Design and

13   Best of the Best in 2010,[24] a 2011 International Forum (iF) Product Design Award,[25] a 2011

14   Design and Art Direction "Black Pencil" award.[26] *Time* magazine named the iPad as one of the 50

15   best inventions of 2010,[27] and *Popular Science* chose it as a top gadget of 2010.[28]  *Time*

16   recognized Apple for "reinventing a product category that its competitors have given up on" and

---

[19] iPodNN, "iPod touch Voted Gadget of the Year," Oct. 10, 2008, http://www.ipodnn.com/articles/08/10/10/gadget.of.the.year.ipod/.

[20] Jeremy Caplan, "Gadget of the Year: iPod touch," Time, Oct. 29, 2008, http://www.time.com/time/specials/packages/article/0,28804,1852747_1852746_1852745,00.html.

[21] Tim Gideon, "Apple iPod touch," PC Mag, Sep. 12, 2007, http://www.pcmag.com/article2/0,2817,2179699,00.asp.

[22] Bobbie Johnson, "Farewell to a classic design as Jobs unveils the iPod touch: Apple ditches emblematic look with media player based on iPhone," Guardian, Sep. 6, 2007 at 13.

[23] Amended Complaint ¶ 18.

[24] Red Dot, iPad, http://en.red-dot.org/2783.html?cHash=005c9238f0aa9615b2c1026db05140fc&detail=7562.

[25] iF, Online Exhibition, http://exhibition.ifdesign.de/entry_search_de.html?search=ipad.

[26] D&AD, Professional Awards, http://www.dandad.org/awards/professional/2011/categories/prod/product-design/13339/ipad.

[27] Harry McCracken, "The 50 Best Inventions of 2010:  iPad, Time, Nov. 11, 2010, http://www.time.com/time/specials/packages/article/0,28804,2029497_2030652,00.html.

[28] Popular Science, "Best of What's New:  2010," http://www.popsci.com/bown/2010/category/gadgets.

declared that the iPad was "magical" and "revolutionary."  Similarly, *Popular Science* stated that with the iPad, "Apple made what everyone wanted: a sleek device with a gorgeous screen."  The iPad 2 won a 2012 International Forum (iF) Product Design Award.[29]

44.     The beauty and distinctive appearance of the iPad and iPad 2 have also been praised in many articles, including the following:

- A *Wall Street Journal* article dated April 1, 2010, entitled "Laptop Killer? Pretty Close" describes the iPad as a "sleek" and "beautiful new touch-screen device from Apple [that] has the potential to change portable computing."[30]

- A *USA Today* Internet article dated March 31, 2010, entitled "Verdict is in on Apple iPad: It's a winner," which describes Apple's tablet as "stunning to look at and blazingly fast," and notes that "[t]he half-inch thick, magazine-size iPad is thin and , at 1.5 pounds, light with a gorgeous, glossy, backlit 9.7-inch multitouch display."[31]

- A *PC Magazine* internet article dated March 31, 2010, entitled "Apple iPad" describes the iPad as having a "sleek design" and as a "gorgeous" device.[32]

- *USA Today* article dated March 10, 2011 reports the "iPad 2 is even better than the original" and notes the iPad is "a splendid slab" that is "second to none."[33]

- An *Engadget* internet article dated March 9, 2011, entitled "iPad 2 review." The article reports "[from an industrial design standpoint, the iPad 2 just seriously raised the bar on sleek, sexy computer hardware" and notes that "it looks and feels amazingly sleek when you hold it."[34]

45.     The iPad line of products has been enormously successful commercially.  On the first day of iPad sales alone, Apple sold over 300,000 units.[35]  Within a month, Apple had sold

---

[29] iF, Online Exhibition, http://exhibition.ifdesign.de/entry_search_de.html?search=ipad.

[30] Walter Mossberg, "Laptop Killer?  Pretty Close," The Wall Street Journal, Apr. 1, 2010, http://online.wsj.com/article/SB10001424052702304252704575155982711410678.html

[31] Edward Baig, "Verdict Is In On Apple iPad: It's a Winner," USA Today, April 2, 2010, http://www.usatoday.com/tech/columnist/edwardbaig/2010-03-31-apple-ipad-review_N.htm.

[32] Tim Gideon, "Apple iPad," PCMag, Mar. 31, 2010, http://www.pcmag.com/article2/0,2817,2362042,00.asp.

[33] Edward Baig, "iPad 2 is Even Better Than Original," USA Today, March 10, 2012, http://www.usatoday.com/tech/columnist/edwardbaig/2011-03-10-baig10_ST_N.htm.

[34] Joshua Topolsky, "iPad 2 Review," Engadget, Mar. 9, 2011, http://www.engadget.com/2011/03/09/ipad-2-review/.

[35] Apple Press Info, "Apple Sells over 300,000 iPads First Day," Apr. 5, 2010, http://www.apple.com/pr/library/2010/04/05Apple-Sells-Over-300-000-iPads-First-Day.html.

one million devices,[36] and it hit the two million and three million marks within 60 days[37] and in 80 days,[38] respectively.  During the first quarter of fiscal year 2012, Apple sold 15.43 million iPads.[39]

## VIII.   APPLE'S ASSERTED DESIGNS

### A.      The D'889 Patent



FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

FIG. 8

FIG. 9

---

[36] Apple Press Info, "Apple Sells One Million iPads," May 3, 2010, http://www.apple.com/pr/library/2010/05/03Apple-Sells-One-Million-iPads.html.

[37] Apple Press Info, "Apple Sells Two Million iPads in Less Than 60 Days," May 31, 2010, http://www.apple.com/pr/library/2010/05/31Apple-Sells-Two-Million-iPads-in-Less-Than-60-Days.html.

[38] Apple Press Info, "Apple Sells Three Million iPads in 80 Days," June 22, 2010, http://www.apple.com/pr/library/2010/06/22Apple-Sells-Three-Million-iPads-in-80-Days.html.

[39] Apple Press Info, Apple Reports First Quarter Results," Jan. 24, 2012, http://www.apple.com/pr/library/2012/01/24Apple-Reports-First-Quarter-Results.html.

46.     The D'889 Patent is directed toward the ornamental design of an electronic device as shown in Figures 1–9 (reproduced above).[40]

47.     The design disclosed in the D'889 Patent is embodied by Apple's iPad 2.  The iPad 2 derives its distinctive appearance among tablet designs from a combination of elements including the uninterrupted transparent surface that extends all the way to the perimeter, a uniform black mask surrounding the active area of the display, evenly curved corners, a substantially flat back, and the appearance of a metallic rim surrounding the front surface.  This group of elements is distinctive in terms of visual impression.



**B.      No Element of the D'889 Patent Is Dictated by Function**

49.     It is my experience as a designer that practical considerations such as the physical properties of objects, manufacturing costs and processes, and the intended use of the product, do not eliminate the potential for innovative industrial design.  Although such practical considerations help to focus the work of the designer, they invariably leave significant space for creative and aesthetic design choices.  The industrial designer's job is to use practical considerations as a creative springboard to design beautiful and appealing products that perform the functions required of them.



---

[40] In this report, I have scaled images of the D'889, D'087, D'677, and D'270 Patents, the prior art, alternative designs, Apple Products, and the accused products so that they correspond with one another.  Care has been taken not to change the proportional relationship (i.e., aspect ratio) of the images.



51.      Furthermore, numerous alternative designs to the patented D'889 design were and are commercially available.  Because these alternative designs were commercially released, they show that the D'889 design is not required for a tablet, and that there are multiple designs for a functioning tablet.  Some of these alternative designs are shown below:[42]



---

[42] From top row, from left to right:  Sony Tablet S, Barnes & Noble Nook Tablet, Coby Kyros, Acer Iconia A500, Sony Tablet P, and Vinci Tablet.  *See* Ex. 13.  These tablets do not constitute an exhaustive list of alternative designs that may be relevant; they are merely representative of some alternatives that have been commercialized.

52.    Moreover, the examples of alleged prior art cited by Samsung in its opposition to Apple's Motion for Preliminary Injunction against the D'889 design look very different from that patented design and also constitute alternative designs that could have been used by Samsung without infringing Apple's patented design.  For example, JP1142127, JP0887388, JP0921403, U.S. Patent No. D461,802, the TC 1000, and the 1994 Fidler Mock-up are all far afield from the D'889 design aesthetically.

53.    Indeed, Samsung's own commercially released tablet prior to the iPad – the Samsung Q1 – constituted an alternative design to the D'889 design.  Photos of the Samsung Q1 are shown below.

  

54.    Additionally, it is my understanding that Samsung considered alternative designs that were different from the final commercially released designs of its infringing tablets.  For example, one of the Samsung tablet models featured a wide, opaque frame on the front surface around the display screen.  *See* Ex. 14, Samsung model production no. Tab 30.

55.    The fact that Samsung and other manufacturers have commercially released tablets with alternative, different-looking designs shows that Samsung had access to a variety of design options that would have provided equivalent or similar functionality for the end user.  These alternative designs belie any suggestion that utilitarian or functional considerations dictated the design of the D'889 patent or of Samsung's Galaxy Tab 10.1.

56.    The alternative designs discussed in the foregoing are in no way comprehensive. The tablet computer field is filled with alternative, commercially viable designs that illustrate the nonfunctionality of Apple's patented design.  Other available alternative designs to the D'889 design include, for instance, the Sony Reader, GriDPAD 2050, the Motion Computing LS800, the

Freescale smartbook concept, Panasonic Toughbook Tablet, and the Panasonic Toughpad. *See* Ex. 13.

57.     Accordingly, I conclude that there are no elements in the design of the D'889 Patent that are purely functional, so the proper infringement analysis of the D'889 Patent takes into account the overall design depicted in the patent, without excluding any elements.

**C.     The D'087 Patent**



FIG. 9

FIG. 17

FIG. 11

FIG. 19

FIG. 7

FIG. 8

FIG. 5

FIG. 6

58.     The D'087 Patent is directed toward the ornamental design of the front face and bezel of an electronic device as shown in selected embodiments as depicted in Figures 5-9, 11, 17 & 19 (reproduced above).

59.     The D'087 Patent states that "The broken lines showing the remainder of the electronic device are directed to environment.  The broken lines, within the claimed design, in embodiments 1, 2, and 4 that depict an elongated oval shape and the broken lines, within the

claimed design, in embodiments 2, 3, and 6 that depict a circle shape are superimposed on a continuous surface and are for illustrative purposes only.  The broken lines, within the claimed design, in embodiments 1, 3, and 5 that depict a large rectangular shape, indicate a non claimed shape below the continuous front surface and are for illustrative purposes only.  None of the broken lines form a part of the claimed design."  D'087 Patent at Description.

60.    Because of the iPhone's distinctiveness and popularity, the design disclosed in the D'087 Patent has become instantly recognizable as the front face and bezel of the iPhone.  The front face of the iPhone derives its distinctive appearance among smartphone designs from a combination of elements including the flat surface that extends all the way to the perimeter, narrow balanced borders on either side of the active area of the display, wider balanced borders above and below the active area of the display, evenly curved corners, a lozenge-shaped speaker slot[43] horizontally centered in the area above the screen, and a bezel encircling the front face. This group of elements is distinctive in terms of visual impression.



**D.    No Element of the D'087 Patent Is Dictated by Function**



---

[43] The speaker slot is sometimes referred to as the "receiver hole."

[44] Apple Protos 355, 363, 383, 399, 834, 1105 respectively.

1
2
3
4
5

6        63.      Furthermore, numerous alternative designs to the patented D'087 design were and

7   are commercially available.  Because these alternative designs were commercially released, they

8   show that the D'087 design is not required for a smartphone, and that multiple alternative designs

9   are available for a functioning smartphone.  Some of these alternative designs are shown below:[45]

10
11
12
13
14
15
16



17       64.      Indeed, many of Samsung's own commercially released phones are themselves

18   alternative designs to the patented D'087 design.  Samsung alternative designs include, for

19   instance, the following:[46]

20
21
22
23

24       [45] From left to right:  Sony Ericsson Xperia Arc S; Pantech Crossover; Nokia Lumia 800; Casio G'zOne
     Commando LG Optimus T.  *See* Ex. 21. These phones do not constitute an exhaustive list of alternative designs that
25   may be relevant; they are merely representative of some alternatives that have been commercialized.

26       [46] From left to right:  Samsung i8910 Omnia HD (released May 2009); Samsung M7600 Beat DJ (released
     May 2009); Samsung Sunburst SGH-A697 (released March 2010); Samsung Gravity Touch SGH-T669 (released
27   June 2010); Samsung Gem SCH-I100 (released February 2011).  *See* Ex. 21.  These phones do not constitute an
     exhaustive list of Samsung's alternative designs that may be relevant; they are merely representative of some
28   alternatives that Samsung has commercialized.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
22

65.     Additionally, it is my understanding that Samsung considered alternative designs that were different from the final commercially released designs of its infringing phones.  Such alternative designs are depicted in Exhibits 22-23.  These alternatives illustrate, for example:  a curved, clear material on the front surface of the phone (for example, Ex. 22, Samsung model production No. 38); a display screen that is not centered on the front surface of the phone (*Id.*); a drastically non-uniform and stylized bezel (*Id.*); and a front surface that is not entirely covered with a clear material (Ex. 23, Samsung model production No. 9.6.3).

66.     Samsung itself has applied for and received design patents on the ornamental design for its phones – many of which feature relatively large screens suitable for use as a touch screen.  Samsung's own design patents undercut any contention that smartphone design (or more specifically, touch-screen smartphone design) is restricted by function to the iPhone design.  For example, U.S. D555,131 to Samsung claims a phone design with a large display screen.  But the D'131 design, as shown below, also has curved top and bottom sides, angled corners, adornments on the front face, and numerous other differences from Apple's iconic iPhone design.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
23

1

2

3

4

5

6

7



8
9
10

     67.     Other Samsung design patents similarly illustrate the design alternatives available to Samsung for every feature of a phone, including U.S. Patent Nos. D561,156, D616,857, D561,155, D562,794, D624,046, D616,856, and D629,780.[47]

11

     68.     The alternative designs discussed in the foregoing are in no way comprehensive.

12

The smartphone field is filled with alternative, commercially viable designs that illustrate the

13

nonfunctionality of Apple's patented design.  Other designs that illustrate alternative renderings

14

of individual design elements include HTC Touch Dual, T-Mobile My-Touch, Palm Treo 700p,

15

HTC 7 Trophy T8686, Sony Ericsson Xperia S, Pantech Hotshot CDM8992VW, Modu 1 and

16

associated jackets, Modu T and associated jackets, Modu W, and Nokia X5-01.  These designs

17

illustrate the vast array of design choices Samsung possessed with respect to every design

18

element of its phones and undercut any contention that utilitarian or functional considerations

19

dictated the iPhone design or Samsung's infringing designs.  *See* Ex. 21.

20

     69.     The fact that Samsung and other manufacturers have commercially released

21

phones with different-looking, alternative designs shows that Samsung had numerous design

22

options for offering equivalent or similar functionality for the end user.  These alternative designs

23

belie any suggestion that functional considerations dictated the iPhone design or the design of

24

Samsung's accused phones.

25

26

27

28

     [47] APLNDC-Y0000232341; -346; -351; -358; -365; -374; -389.

70.     Accordingly, I conclude that there are no elements in the design of the D'087 Patent that are purely functional, so the proper infringement analysis of the D'087 Patent takes into account the overall design depicted in the patent, without excluding any elements.

**E.     The D'677 Patent**



71.     The D'677 Patent is directed toward the ornamental design of the front face of the iPhone as shown in Figures 1, 3 & 5-8 (reproduced above).

72.     The D'677 Patent states that "The claimed surface of the electronic device is illustrated with the color designation for the color black."  D'677 Patent at Description.

73.     Because of the iPhone's distinctiveness and popularity, the design disclosed in the D'677 Patent has become instantly recognizable as the black front face of the iPhone.  The front face of the iPhone derives its distinctive appearance among smartphone designs from a combination of elements including the flat, translucent, black-colored surface that extends all the way to the perimeter of the front surface, narrow balanced borders on either side of the active area

1    of the display, wider balanced borders above and below the active area of the display, evenly

2    curved corners, and a lozenge-shaped speaker slot horizontally centered in the area above the

3    screen.  This combination of visual elements creates a distinctive and memorable visual

4    impression.

5

6

7

8

9        **F.      No Element of the D'677 Patent Is Dictated by Function**

10

11

12

13

14

15

16

17

18

19

20

21

22

23        76.     Further, numerous alternative designs to the patented D'677 design were and are

24    commercially available.  Because these alternative designs were commercially released, they

25

26

27

28

show that the D'677 design is not required for a smartphone, and that there multiple alternative designs exist for a functioning smartphone. Some of these alternative designs are shown below:[48]



77.     Indeed, many of Samsung's own commercially released phones are themselves alternative designs to the patented D'677 design.  Samsung alternative designs include, for instance, the following:[49]



78.     Moreover, Samsung itself has produced a number of designs with white-colored front surfaces, such as a white version of its Galaxy Ace, S II, and Galaxy Note.

[48] From left to right:  Sony Ericsson Xperia Arc S; Pantech Crossover; Nokia Lumia 800; Casio G'zOne Commando LG Optimus T.  *See* Ex. 21.  These phones do not constitute an exhaustive list of alternative designs that may be relevant; they are merely representative of some alternatives that have been commercialized.

[49] From left to right:  Samsung i8910 Omnia HD (released May 2009); Samsung M7600 Beat DJ (released May 2009); Samsung Sunburst SGH-A697 (released March 2010); Samsung Gravity Touch SGH-T669 (released June 2010); Samsung Gem SCH-I100 (released February 2011).  *See* Ex. 21.  These phones do not constitute an exhaustive list of Samsung's alternative designs that may be relevant; they are merely representative of some alternatives that Samsung has commercialized.

79.     Additionally, it is my understanding that Samsung considered alternative designs that were different from the final commercially released designs of its infringing phones.  Such alternative designs are depicted in Exhibits 22-23.  These alternatives illustrate, for example:  a curved, clear material on the front surface of the phone (for example, Ex. 22, Samsung model production No. 38); a display screen that is not centered on the front surface of the phone (*Id.*); and a front surface that is not entirely covered with a clear material (Ex. 23, Samsung model production No. 9.6.3).

80.     Moreover, as described above, Samsung itself has applied for and received design patents on the ornamental design for its phones – many of which feature relatively large screens suitable for use as a touch screen and are alternatives to the D'087 design.  *See* U.S. Patent Nos. U.S. D555,131, D561,156, D616,857, D561,155, D562,794, D624,046, D616,856, and D629,780.

81.     The alternative designs discussed in the foregoing are in no way comprehensive. The smartphone field is filled with alternative, commercially viable designs that illustrate the nonfunctionality of Apple's patented design.  Other designs that illustrate alternative renderings of individual design elements include HTC Touch Dual, T-Mobile My-Touch, Palm Treo 700p, HTC 7 Trophy T8686, Sony Ericsson Xperia S, Pantech Hotshot CDM8992VW, Modu 1 and associated jackets, Modu T and associated jackets, Modu W, and Nokia X5-01.  These designs illustrate the vast array of design choices Samsung possessed with respect to every design element of its phones and undercut any contention that utilitarian or functional considerations dictated the iPhone design or Samsung's infringing designs.  *See* Ex. 21.

82.     The fact that Samsung and other manufacturers have commercially released phones with different-looking, alternative designs shows that Samsung had numerous design options for offering equivalent or similar functionality for the end user.  These alternative designs belie any suggestion that functional considerations dictated the iPhone design or the design of Samsung's accused phones.

83.     Accordingly, I conclude that there are no elements in the design of the D'677 Patent that are purely functional, so the proper infringement analysis of the D'677 Patent takes into account the overall design depicted in the patent, without excluding any elements.

1

### G.    The D'270 Patent



84.    The D'270 Patent is directed toward the ornamental design of the body and front face of an electronic device as shown in Figures 1-9 (reproduced above).

85.    The D'270 Patent states that "The broken lines show portions of the electronic device which form no part of the claimed design."  D'270 Patent at Description.

86.     Because of the iPod touch's distinctiveness and popularity, the design disclosed in the D'270 Patent has become instantly recognizable as the body of the iPod touch.  The iPod touch derives its distinctive appearance among designs from a combination of elements including the clear surface that extends all the way to the perimeter, narrow balanced borders on the sides of the active area of the display, wider balanced borders above and below the active area of the display, evenly curved corners, an angled bezel surrounding the front surface, and a thin profile. This group of elements is distinctive in terms of visual impression.

## H.     No Element of the D'270 Patent Is Dictated by Function

88.     Numerous alternative designs to the patented D'270 design were and are commercially available.  Because these alternative designs were commercially released, they show that the D'270 design is not required for a mobile electronic device, such as a mobile phone or mobile media player, and that there are multiple designs for a functioning mobile electronic device.  Some of these alternative designs are shown below:[50]



---

[50] From left to right:  Sony Ericsson Xperia Arc S; Pantech Crossover; Nokia Lumia 800; Casio G'zOne Commando, Ematic Touch Screen Mp3 Video Player.  See Exs. 21 & 24. These mobile devices do not constitute an exhaustive list of alternative designs that may be relevant; they are merely representative of some alternatives that have been commercialized.

89.    Indeed, many of Samsung's own commercially released phones are themselves alternative designs to the patented D'270 design.  Samsung alternative designs include, for instance, the following: [51]



90.    Additionally, it is my understanding that Samsung considered alternative designs that were different from the final commercially released designs of its infringing phones.  Such alternative designs are depicted in Exhibits 22-23.  These alternatives illustrate, for example:  a curved, clear material on the front surface of the phone (for example, Ex. 22, Samsung model production No. 38); a display screen that is not centered on the front surface of the phone (*Id.*); a drastically non-uniform and stylized bezel (*Id.*); and a front surface that is not entirely covered with a clear material (Ex. 23, Samsung model production No. 9.6.3).

91.    Moreover, as described above, Samsung itself has applied for and received design patents on the ornamental design for its phones – many of which feature relatively large screens suitable for use as a touch screen and are alternatives to the D'270 design.  *See* U.S. Patent Nos. U.S. D555,131, D561,156, D616,857, D561,155, D562,794, D624,046, D616,856, and D629,780.

92.    The alternative designs discussed in the foregoing are in no way comprehensive. The smartphone and media player field is filled with alternative, commercially viable designs that

---

[51] From left to right:  Samsung i8910 Omnia HD (released May 2009); Samsung M7600 Beat DJ (released May 2009); Samsung Sunburst SGH-A697 (released March 2010); Samsung Gravity Touch SGH-T669 (released June 2010); Samsung Gem SCH-I100 (released February 2011).  See Ex. 22. These phones do not constitute an exhaustive list of Samsung's alternative designs that may be relevant; they are merely representative of some alternatives that Samsung has commercialized.

illustrate the nonfunctionality of Apple's patented design.  Other designs that illustrate alternative renderings of individual design elements include HTC Touch Dual, T-Mobile My-Touch, Palm Treo 700p, HTC 7 Trophy T8686, Sony Ericsson Xperia S, Pantech Hotshot CDM8992VW,  1 and associated jackets, Modu T and associated jackets, Modu W, Nokia X5-01, Coby MP826, Memorex TouchMP, and the LG FM 37.  These designs illustrate the vast array of design choices Samsung possessed with respect to every design element of its phones and undercut any contention that utilitarian or functional considerations dictated the iPod touch design or Samsung's infringing designs. *See* Exs. 21 & 24.

93.     The fact that Samsung and other manufacturers have commercially released mobile electronic devices with different-looking, alternative designs shows that Samsung had numerous design options for offering equivalent or similar functionality for the end user.  These alternative designs belie any suggestion that functional considerations dictated the iPod touch design or the design of Samsung's accused devices.

94.     Accordingly, I conclude that there are no elements in the design of the D'270 Patent that are purely functional, so the proper infringement analysis of the D'270 Patent takes into account the overall design depicted in the patent, without excluding any elements.

IX.     **MANY OF SAMSUNG'S DESIGNS HAVE BECOME SUBSTANTIALLY SIMILAR TO APPLE'S**

95.     I created a timeline (Exhibit 25) of smartphones that Samsung released beginning before the announcement of the iPhone and extending through 2011.

96.     As can be seen from the timeline, before the release of the iPhone in 2007, Samsung typically manufactured and released phones that appeared very different from the iPhone.  Like many other phones at the time, these Samsung phones displayed a front face that was not smooth, due in part to the presence of multiple buttons that visually dominated at least the bottom portion of the phones.  Many of Samsung's phones, such as the BlackJack and BlackJack II, had full "QWERTY" keyboards on the front face.  Additionally, Samsung's phones tended to have angular corners, even when the devices were not rectangular because the top and bottom edges curved.

97.     After the announcement of the iPhone in January 2007, Samsung began to introduce smartphones with a reduced number of buttons on the front face, a more rectangular shape, and rounder corners.  While these phones appeared more similar to the iPhone than the Samsung phones that came before the iPhone, these phones were not copies of the iPhone and the designs of these phones were not substantially the same as the D'087, D'677 and/or D'270 Patents.  The designs of Samsung's phones were differentiated based on the overall shape of the device; the proportion of the screen; the size, location, and shape of the buttons; the size, location, and shape of the speaker slot; and/or the size and shape of the bezel, if one was present.  Moreover, the front surfaces of the devices were not flat and clear across the entire face to the perimeter.

98.     Samsung's Galaxy S i9000, released in the second quarter of 2010, was the first Samsung smartphone that looked substantially similar to the iPhone.  This phone contained all of the patented features of the iPhone—with similar proportions—including the clear front surface running from edge to edge of the front face of the device.  Additionally, the design features of the Galaxy S i9000 have a similar proportion and layout to the iPhone.  The Galaxy S line has included numerous smartphones released under product names including Vibrant, Mesmerize, Fascinate, and others.

99.     Although Samsung has continued to manufacture and release products that are clearly distinguishable from the iPhone, Samsung has also released numerous additional smartphones, including the Accused Products, that, like the Galaxy S i9000, are substantially similar to Apple's iPhone.[52]

---

[52] From left to right:  Samsung Galaxy S 4G; Samsung Fascinate; Apple iPhone (original), Samsung Vibrant; Samsung Infuse 4G.



100.    I have also created timelines (Exhibits 26-27) of phones and tablets that Samsung and third parties released beginning before the announcement of the iPhone and iPad and extending through 2011.  As can be seen from the timelines, at least as of the time of the introduction of the iPhone and iPad, no other mobile phones and tablets, respectively, looked like the iPhone and the iPad.

101.    Moreover, as can be shown below, Samsung made and sold a very different looking touch screen tablet before the iPad 2 was released.  After the iPad 2 was released, Samsung's tablet, the Galaxy Tab 10.1, looked substantially similar to the iPad 2.  Samsung's Q1 tablet, Apple's iPad 2, and Samsung's Galaxy Tab 10.1 are shown below.

## X.    SAMSUNG INFRINGES THE D'889 PATENT

### A.    Identification of Infringing Products

102.    It is my opinion that the Galaxy Tab 10.1 infringes the D'889 Patent.

103.    In forming this opinion, I reviewed the prosecution history of the D'889 Patent and analyzed and familiarized myself with the prior art cited therein.  I have also analyzed and familiarized myself with the relevant portions of the prior art references Samsung cited in its

1  December 19, 2011 Response to Apple's Interrogatory No. 12 and the relevant portions of prior

2  art references cited in Samsung's August 22, 2011 Opposition to Apple's Motion for a

3  Preliminary Injunction and in Itay Sherman's August 22, 2011 Declaration in Support of

4  Samsung's Opposition to Apple's Motion for a Preliminary Injunction.[53]

5         104.    In addition, I have reviewed news articles and publications drawing attention to the

6  similarity between the iPad and Samsung's Galaxy Tab 10.1.  For example, *eWeek* noted that "if

7  mimicry is flattery, the Galaxy Tab has compliments galore for the iPad. … Looking like an

8  unlikely offspring between the iPad and the iPhone 4, the Tab has an iPad-like front fascia as well

9  as a camera-equipped back cover similar to the not-yet-released white iPhone. … Even the dock

10  connector very closely mimics Apple's standard pinout."[54]  A *PC Magazine* review of the Galaxy

11  Tab 10.1 stated that "most laymen could mistake [the Galaxy Tab 10.1] for an iPad."[55]  Likewise,

12  a *PCWorld* article stated that: "In my hands-on testing, the Tab 10.1 achieved perhaps the best

13  design compliment an Android tablet could hope for—often being mistaken by passers-by

14  (including Apple iPad users) for an iPad 2.  The confusion is understandable when you see and

15  hold the Tab 10.1 for the first time."[56]

16         105.    Moreover, Samsung's own documents indicate that it has received reports of

17  consumers confusing the Galaxy Tab 10.1 and iPad 2, and returning it to the retailer for that very

18  reason.  *See* SAMNDCA10154003-053 (*See* translation in Apple's Appendix of Certified

19  Translation in Support of Opening Expert Reports); *see also* Feb. 24, 2012 S.E. Lee Dep. at

20  12:25-13:10; 27:12-20; 35:13-24; 48:18-51:17.

21

22

---

23  [53] I reserve the right to address any other prior art references that Samsung identifies.

24  [54] Michelle Maisto, "Samsung Galaxy Tab Nods to Apple iPad But Goes Own Way iFixit," eWeek, Nov. 12, 2010, http://www.eweek.com/c/a/Desktops-and-Notebooks/Samsung-Galaxy-Tab-Nods-to-Apple-iPad-But-Goes-Own-Way-iFixit-314074/.

25  [55] Michael Muchmore, "Unboxing the Samsung Galaxy Tab 10.1; It Doesn't Run Android 3.1 Yet, But the New Samsung Tablet Gives the iPad 2 A Run for Its Money," PC Magazine, May 10, 2011, http://www.pcmag.com/article2/0,2817,2385154,00.asp.

26

27  [56] Melissa Perenson, "Samsung Galaxy Tab 10.1 Wi-Fi:  A Worthy Rival to the iPad 2," PCWorld, June 8, 2011, http://www.pcworld.com/article/229763/samsung_galaxy_tab_101_wifi_a_worthy_rival_to_the_ipad_2.html.

28

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
35

106.    To determine whether the Samsung Galaxy Tab 10.1 infringes the D'889 Patent, I compared Figures 1–8 of the D'889 Patent with analogous views of the corresponding portions of the Galaxy Tab 10.1.  As shown below, the Apple iPad 2 embodies the claim of the D'889 Patent. Accordingly, I also compared views of the iPad 2 that correspond to Figures 1–8 of the D'889 Patent with analogous views of the corresponding portions of the Galaxy Tab 10.1.

**B.      Comparison of the Prior Art**

107.    As part of my infringement analysis, I considered the similarities and differences between the claimed design of the D'889 Patent, the Galaxy Tab 10.1, and certain purported prior art references cited by Samsung.

108.    This comparison benefited my analysis by highlighting that none of the cited prior art comes close to the design disclosed in the D'889 Patent.  The prior art drawn to my attention includes the following:

- **U.S. Patent Application Publication No. 2004/0041504** (Ozolins) (Exhibit 28).

- **1994 Fidler Mock-up** (Fidler) (Exhibit 29).

- **HP Compaq TC 1000** (the TC 1000) (Exhibit 30).

109.    The clear differences between the D'889 Patent and the prior art underscore my view that the Samsung Galaxy Tab 10.1 infringes the D'889 Patent.  To that end, I have conducted a three-way analysis of the prior art, the D'889 Patent, and the Samsung Galaxy Tab 10.1.  Both the D'889 Patent and the Samsung Galaxy Tab 10.1 depart conspicuously from the prior art designs with respect to the same relevant features.  Put another way, the Samsung Galaxy Tab 10.1 is substantially similar to the D'889 Patent's design, but is very different from the prior art.  Comparison charts depicting the three-way analysis are shown below.

110.    **Ozolins**. The visual impression of the Galaxy Tab 10.1 is much closer to the D'889 Patent than is the visual impression of Ozolins.

| Ozolins | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  | <br>*FIG. 1* |  |
|  | <br>*FIG. 2* |  |
|  | <br>*FIG. 3* |  |
|  | <br>*FIG. 5* |  |

111.    The drawings in Ozolins are substantially different from the D'889 design.  For example, Figure 1, shown below, is an exploded view and the left-most front component 200 is not shown to be a continuous clear surface.  Instead, a frame 220 appears around the center portion 210.  And element 110 cannot be seen behind center portion 210.  It is also unclear whether element 100 of the schematic (shown in broken lines) will be visible at all when the device is assembled.  Moreover, a large protruding rectangular feature 320 (shown in broken lines) is shown in the rear component 300.  The profile and back design of the device is also unclear in this exploded view.  Simply, it would be unclear to the ordinary observer what the assembled design shown in Figure 1 would actually look like, even if a number of differences with the D'889 patent are apparent from this figure.

1
2
3
4
5
6
7
8
9



Fig. 1

10    112.    Similarly, as shown in Figures 1-2 and 9, the sides of the Ozolins design creates a

11  pyramidal form that appears to taper from the front towards the rear, in stark contrast to the

12  rounded side profile of the D'889 Patent.  The overall impression of the side profiles of the

13  Ozolins design is one of sharp corners and angles, in contrast to the rounded profiles of the D'889

14  Patent.  Moreover, Ozolins has a much thicker form factor as shown in Figures 9-10.  Also, as

15  mentioned above, the rear surface of the design, as shown in Figures 1, 9 and 10, also has either a

16  protruding rectangular feature or a prominent hole.

17    113.    The front view of the Ozolins design as depicted in Figures 5 and 8 is a single

18  view and thus is not sufficient to form an impression of the overall design.  Moreover, the portion

19  of the design that is shown gives a very different impression than the front view of the D'889

20  patented design.  The rounded corners of Figures 5 and 8 have unmistakably larger radii than the

21  corners of the D'889 patented design and lack the visual near-concentricity of the D'889 Patent

22  and the Galaxy Tab 10.1.  The radii of the device corners in Figures 5 and 8 of Ozolins contrast

23  sharply with the corners of the rectangular display area, which creates a strong tension with the

24  outside radius.  In contrast, the device corners in both the D'889 Patent and the Galaxy Tab 10.1

25  are more nearly concentric with the corners of the rectangular display, avoiding the visual tension

26  and creating a more consistent border.

27
28

| Ozolins | D'889 Patent | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  |  |  |

114.    The Ozolins design can be further distinguished from the D'889 design in its scale. As shown in Fig. 9 of the D'889 patent, its claimed design is a hand-held tablet computer of a certain scale in the context of the illustrated human user.  In contrast, the Ozolins design is a computer monitor of a much larger scale.

115.    Moreover, it is important to note that the figures in Ozolins make it difficult to recognize the overall impression of a design because the drawings are contradictory alternative embodiments of a utility patent.  *See* Ozolins at Paras. 0017-0027 (describing figures as showing alternative embodiments).  Indeed, the figures in Ozolins are aimed at providing a basis for further interpretation of the technical features as defined in the description and claims and not for accurately depicting a claimed aesthetic design.  As such, the Ozolins drawings are mere schematics and would not be viewed by an ordinary user as a representation of an overall design.

116.    It is extremely difficult to make any assessment of the overall impression of the design shown in Ozolins.  For example, Figure 1 is an exploded view.  On the left, it shows a rectangular element which has an inner rectangular frame.  The same element appears to be in Figure 9, but the inner rectangular frame is lacking in Figure 2.  Accordingly, the two drawings do not show the same design.  Figures 5 and 8 each show a much more oval front view, with a larger rectangular display screen, which also contradicts with Figures 1 and 2.  Figure 7 repeats Figure 2, except that a "logo" is provided on the lower right corner of the rectangular body shown.  Figures 9 and 10 are exploded views, which reproduce technical figures and shown a potentially thick, drastically angled back design.

117.    An ordinary user would have difficulty forming a clear impression of an overall design as illustrated in these contradictory drawings.  But the drawings do illustrate a number of

1   differences between the Ozolins design and the D'889 patent that place the Ozolins design much

2   farther afield from the D'889 design than the design of the Galaxy Tab 10.1.

3       118.   **Fidler Mock-up**.  I have personally inspected the Fidler Mock-up at Roger

4   Fidler's offices in Columbia, Missouri.  The visual impression created by the Galaxy Tab 10.1 is

5   much closer to the D'889 Patent than is the visual impression of the Fidler Mock-up.

| Fidler Mock-up | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  | <br>FIG. 1 |  |
|  | <br>FIG. 2 |  |
|  | <br>FIG. 3 |  |
|  | <br>FIG. 4 |  |
|  | <br>FIG. 5<br>FIG. 6 |  |

| Fidler Mock-up | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  | <br>FIG. 7<br>FIG. 8 |  |

119.    Unlike the D'889 Patent, the Fidler Mock-up does not have biaxial symmetry, a flat edge-to-edge clear front surface without additional adornments, a narrow rim surrounding the edge of the device, or a display screen bordered by a mask behind the clear front surface.  Instead, it has a raised, opaque, asymmetrical frame that extends onto the front surface and over the edges of a recessed display.  Indeed, the creator of the mock-up, Mr. Fidler, admitted that the frame covers the edges of the recessed display.  *See* Sep. 23, 2011 Fidler Dep. at 47:23-48:5.

| Fidler Mock-Up | D'889 Patent | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  |  |  |

120.    The Fidler front frame has an on/off button in the upper left-hand corner, and an apparently arbitrary design created of a series of lines or dots in the upper right-hand corner.  There is also a notch on the right side of the frame that is conspicuous in the front views.  When placed side by side, the front surface of the D'889 Patent produces a "full glass" visual impression, which provides far fewer visual elements and is drastically different than the traditional "picture frame" appearance of the Fidler Mock-up.

121.    In addition, the front surface of the Fidler Mock-up is not surrounded by a thin rim formed by the rounding up of the back panel at its edges.  Unlike the D'889 Patent, the sides of the Fidler Mock-up do not meet the front surface such that they meet at an edge.  Instead, the sides of the Fidler Mock-up have a symmetrical curvature, transitioning to the front and back surfaces to create a continuous curve.  In the case of the back surface, a door overlays the frame and is secured with four screws.  In the case of the front surface, the frame extends over the

1  display screen, with the result being the appearance of an asymmetrical and comparatively

2  massive picture frame with prominent carve-outs.

3      122.    It is my understanding that Mr. Fidler will not allow the Fidler Mock-up to leave

4  his office in Columbia, Missouri.  Accordingly, to assist in my analysis of the Fidler Mock-up, I

5  retained Prototyping Solutions Group to create a three-dimensional replica of the Fidler Mock-up.

6  Based on my review of the original Fidler Mock-up, the photographs taken of the Fidler Mock-

7  up, and the replica produced by Prototyping Solutions Group, it is my opinion that this three-

8  dimensional replica is a true and accurate replica of the Fidler Mock-up.  Photos of the replica are

9  shown below:

| Fidler Mock-up Replica | Fidler Mock-up |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

| Fidler Mock-up Replica | Fidler Mock-up |
|---|---|
|  |  |
|  |  |

123.    **TC 1000**. The visual impression of the Galaxy Tab 10.1 is much closer to the D'889 Patent than is the visual impression of the TC 1000.

| TC 1000 | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  | <br>FIG. 1 |  |
|  | <br>FIG. 2 |  |
|  | <br>FIG. 3 |  |
|  | <br>FIG. 4 |  |

| TC 1000 | D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  |  FIG. 5 <br> FIG. 6 |  |
|  | FIG. 7 <br> FIG. 8 |  |

124.    Unlike the D'889 Patent, the TC 1000 design does not have biaxial symmetry because there are different ornamental features jutting out from each of the sides and the frame around the sides is not equal in width.

125.    Moreover, the front surface of the TC 1000 is not surrounded by a thin rim formed by the rounding up of the back panel at its sides, nor do the sides create an edge where they meet the front surface.  Rather, the front surface of the TC 1000 transitions with a continuous curvature to the sides.  The front-most silver material from the sides extends over and onto the front of the product to provide an ornamental framing to the front face.  The sides have a thick, three-layer silver and black side design.  The resulting outer frame on the TC1000 is much thicker than the thin rim featured in the D'889 Patent and the Galaxy Tab 10.1.

126.    There are also two prominent concentric mats (an inner black mat and an outer silver mat) surrounding the display on the front face of the TC 1000.

| TC1000 | D'889 Patent | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  |  |  |

127.    Moreover, the TC 1000 and the D'889 Patent have distinct appearances when viewed from the sides.  Rather than the uncluttered appearance of the D'889 Patent, the TC 1000

1 is interrupted by ornamental elements. It has a black stripe down the middle of the side. The side

2 is evenly rounded and transitions toward both the front and rear surfaces to form a curvature.

3    128.    Informed by my consideration of the prior art, and my conclusion that the prior art

4 does not come close to the D'889 Patent, I proceed to conduct an infringement analysis of the

5 D'889 Patent against the Galaxy Tab 10.1, as set out below.

| D'889 Patent Claim | Apple iPad 2 | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  FIG. 1 |  |  |
|  FIG. 2 |  |  |
|  FIG. 3 |  |  |
|  FIG. 4 |  |  |
|  FIG. 5  FIG. 6 |  |  |

| D'889 Patent Claim | Apple iPad 2 | Samsung Galaxy Tab 10.1 |
|---|---|---|
|  FIG. 7 <br>  FIG. 8 |  |  |

129.    The elements depicted in the D'889 Patent are present in the corresponding portions of the design of Samsung's Galaxy Tab 10.1.  For instance, both the D'889 Patent and the Galaxy Tab 10.1 have a substantially similar overall shape that is symmetrical both vertically and horizontally with four evenly rounded corners.  Just like the D'889 Patent, Samsung's Galaxy Tab 10.1 has a flat, clear front surface surrounded by a thin rim.  In both the D'889 Patent and the Galaxy Tab 10.1, the uninterrupted clear surface extends to the perimeter of the front surface, which is substantially free of added adornment.  Moreover, both the patented D'889 design and the Galaxy Tab 10.1 have a rectangular display screen bordered by a mask of uniform width centered behind the clear front surface.  Both the patented D'889 design and the Galaxy Tab 10.1 have a substantially flat back that curves upwards at the side to meet the front plane at an edge.  Also, both the patented D'889 design and the Galaxy Tab 10.1 have a thin profile.

130.    The Apple iPad 2 and Samsung's Galaxy Tab 10.1 also share these design elements, creating a substantially similar overall impression.

131.    Some minor differences exist between the Galaxy Tab 10.1 and the patented D'889 design.  For instance, the Galaxy Tab 10.1, when held in vertical or portrait view, has a slightly higher height-to-width ratio; the side profile of the Galaxy Tab 10.1 is not quite as vertical as the side profile in the D'889 Patent; and the Galaxy Tab 10.1 is slightly thinner than the D'889 Patent.  The Galaxy Tab 10.1 also has accent area on the back for its camera housing and uses a differently colored material for its rim and back body.

132.    The minor differences between the design of the Galaxy Tab 10.1 and the design of the D'889 Patent are details that are insufficient to differentiate the overall impression given by the Galaxy Tab 10.1 from that given by the claimed design of the D'889 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer,

1  changes in details that are clearly subordinate to the primary visual elements are insufficient to

2  alter that overall impression.

3       133.    I understand that the Court in its December 2, 2011 Order Denying Motion for

4  Preliminary Injunction found that "Apple is likely to establish at trial that the Galaxy Tab 10.1 is

5  substantially similar to the D'889 patent in the eyes of an ordinary observer."  Order at 45.  I

6  agree.  In my opinion, the Galaxy Tab 10.1 design is substantially the same as the D'889 design

7  and embodies that patented design.  It is similarly my opinion that an ordinary observer would

8  also find the Galaxy Tab 10.1 design to be substantially the same as the patented D'889 design.

9  **XI.      SAMSUNG INFRINGES THE D'087 PATENT**

10     **A.      Identification of Infringing Products**

11      134.    It is my opinion that the Samsung Galaxy S i9000, Galaxy S 4G, Infuse 4G,

12  Vibrant, Galaxy S II (AT&T), Galaxy S II (Skyrocket), and Galaxy S II (i9100) (collectively, the

13  Samsung D'087 Accused Products) infringe the D'087 Patent.

14      135.    In forming this opinion, I reviewed the prosecution history of the D'087 Patent and

15  analyzed and familiarized myself with the prior art cited therein.  I have also analyzed and

16  familiarized myself with the relevant portions of the prior art references Samsung cited in its

17  December 19, 2011 Response to Interrogatory No. 12 and the relevant portions of prior art

18  references Samsung cited in its August 22, 2011 Opposition to Apple's Motion for a Preliminary

19  Injunction.  I have also analyzed and familiarized myself with the relevant portions of the prior art

20  references identified in Itay Sherman's August 22, 2011 Declaration in Support of Samsung's

21  Opposition to Apple's Motion for a Preliminary Injunction.[57]

22      136.    In addition, I have reviewed news articles and publications drawing attention to the

23  "shocking" similarity between the iPhone and smartphones in Samsung's Galaxy S line.[58]

24

25

26          [57] I reserve the right to address any other prior art references that Samsung identifies.

27          [58] Priya Ganapati, "First Look:  Samsung Virant Rips Off iPhone 3G Design," Wired, July 15, 2010,
    http://www.wired.com/gadgetlab/2010/07/first-look-samsung-vibrant-rips-off-iphone-3g-design/.

28

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
47

1    Among other things, the articles note that the Galaxy S 4G is "very iPhone 3GS-like,"[59] and

2    accuse the Vibrant of "rip[ping] off the iPhone 3G design."[60]

3          137.    To determine whether each of the Samsung D'087 Accused Products infringes the

4    D'087 Patent, I compared Figures 5-9; 11, 17 & 19 of the D'087 Patent with analogous views of

5    the corresponding portions of the Samsung D'087 Accused Products.  As shown below, the Apple

6    iPhone (original) embodies the claim of the D'087 Patent.  Accordingly, I also compared views of

7    the Apple iPhone (original) that correspond to Figures 5-9; 11, 17 & 19 of the D'087 Patent with

8    analogous views of the corresponding portions of the Samsung D'087 Accused Products.[61]

9          **B.    Comparison of the Prior Art**

10         138.    As part of my infringement analysis, I considered the similarities and differences

11   between the claimed design of the D'087 Patent, the Samsung D'087 Accused Products, and

12   certain purported prior art references cited by Samsung.

13         139.    This comparison benefitted my analysis by highlighting that none of the cited prior

14   art comes close to the design disclosed in the D'087 Patent.  The prior art drawn to my attention

15   includes the following:

16    •    **JP 1241638** (the JP'638 Design) (Exhibit 31).

17    •    **JP 1241383** (the JP'383 Design) (Exhibit 32).

18    •    **JP 1009317** (the JP'317 Design) (Exhibit 33).

19         140.    The clear differences between the D'087 Patent and the prior art underscore my

20   view that the Samsung D'087 Accused Products infringe the D'087 Patent.  To that end, I have

21   conducted a three-way analysis of the prior art, the D'087 Patent, and the Samsung D'087

22   Accused Products.  Both the D'087 Patent and the Samsung D'087 Accused Products depart

---

23    [59] Ginny Mies, "Samsung Galaxy S:  How Does It Measure Up to the Competition?" PCWorld, June 29,

24    2010,
      http://www.pcworld.com/article/200142/samsung_galaxy_s_how_does_it_measure_up_to_the_competition.html.

25    [60] Ginny Mies, "Samsung Vibrant:  A Standout Multimedia Phone," Washington Post, July 21, 2010,

26    http://www.washingtonpost.com/wp-dyn/content/article/2010/07/15/AR2010071506963.html.

27    [61] To ensure accuracy, my comparisons involving the Accused Products and the Apple products were done
      using actual devices rather than pictures of the Accused Products or Apple products.  I reserve the right to rely on the
      actual devices for purposes of trial testimony.

28

1   conspicuously from the prior art designs with respect to the same relevant features.  Put another

2   way, the Samsung D'087 Accused Products are substantially similar to the D'087 Patent's design,

3   but are very different from the prior art.  Comparison charts depicting the three-way analysis are

4   shown below.

5   141.   **JP'638 Patent**.  Unlike the D'087 Patent and the Samsung D'087 Accused

6   Products, the JP'638 reference discloses a much thicker bezel that forms a part of the front

7   enclosure and that tapers to thinner portions at the top and bottom edges of the device.  The

8   D'087 patent, by contrast, claims a uniformly thin bezel. The JP'638 differs from the D'087

9   patent because the JP'638 has a cambered, not flat, front surface, and has a smaller speaker

10  opening at a higher location.  The visual impressions of the Samsung D'087 Accused Products

11  are much closer to the D'087 Patent than is the visual impression of the JP'638 Patent.

| JP'638 Patent | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>FIG. 9<br><br><br>FIG. 17 |  |
|  | <br>FIG. 11    FIG. 19 |  |

| JP'638 Patent | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>FIG. 7   FIG. 8 |  |
|  | <br>FIG. 5<br><br>FIG. 6 |  |

142.   **JP'383 Design**.  The JP'383 Design is significantly different from both the design disclosed in the D'087 Patent and the Samsung D'087 Accused Products.  The JP'383 reference includes a number of confusing and inconsistent drawings purportedly disclosing an electronic device inside a translucent cover.  Due to the overlapping lines introduced by this design, and apparent contradictions within different figures, an ordinary observer would not be able to ascertain a single design from the JP'383 figures that is visually similar to the D'087 design.  For instance, the JP'383 Design does not appear to disclose a thin bezel surrounding the front surface of the phone.  In some views, one can ascertain a line around the front surface that may denote a bezel element.  In other views, however, this demarcation line disappears, leaving the ordinary observer unclear as to whether a bezel is part of the design or not.  There also does not appear to be thin borders on the lateral sides of the display screen.  From the perspective views of the JP'383 design, it is clear that the screen effectively cuts the front surface in two portions, and that no narrow border is left on the lateral edges of the display.  Furthermore, the JP'383 design is entirely missing the speaker slot shown in the D'087 design.  Accordingly, the visual impressions

1  of the Samsung D'087 Accused Products are much closer to the D'087 Patent than is the visual

2  impression of the JP'383 Design.

| JP'383 Design | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
|  | \nFIG. 9\n\n\nFIG. 17 |  |
|  | \nFIG. 11        FIG. 19 |  |
|  | \nFIG. 7        FIG. 8 |  |

| JP'383 Design | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
| | FIG. 5 | |
| | FIG. 6 | |

143. **JP'317 Design**.  The JP'317 Design is significantly different from both the design disclosed in the D'087 Patent and the Samsung D'087 Accused Products.  For instance, the JP'317 Design does not have a centered display screen with balanced borders above and below the screen.  The JP'317 Design is also entirely lacking a bezel surrounding the front surface.  The visual impressions of the Samsung D'087 Accused Products are much closer to the D'087 Patent than is the visual impression of the JP'317 Design.

| JP'317 Design | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
| | FIG. 11          FIG. 19 | |
| | FIG. 7          FIG. 8 | |

| JP'317 Design | D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|---|
|  | \nFIG. 5 |  |
|  | \nFIG. 6 |  |

144.    Informed by my consideration of the prior art, and my conclusion that the prior art does not come close to the D'087 Patent, I proceed to conduct an infringement analysis of the D'087 Patent against the Samsung D'087 Accused Products, as set out below.

**C.    Samsung's Galaxy S i9000 Infringes the D'087 Patent**

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S i9000 |
|---|---|---|
| \nFIG. 9\n\n\nFIG. 17 |  |  |
| \nFIG. 11    FIG. 19 |  |  |

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S i9000 |
|---|---|---|
|  FIG. 7    FIG. 8 |  |  |
|  FIG. 5  FIG. 6 |  |  |

145.    The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Samsung's Galaxy S i9000.  For instance, both the D'087 Patent and the Galaxy S i9000 have the same overall shape and proportion. Just like the D'087 Patent, Samsung's Galaxy S i9000 has a flat rectangular front surface with evenly curved corners. Moreover, both the patented D'087 design and the Galaxy S i9000 have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  Also, both the patented D'087 design and the Galaxy S i9000 also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.  Aside from these facial features, the Galaxy S i9000 design is also substantially free of added adornment on its front surface.  The patented D'087 design and the Galaxy S i9000 have a thin continuous bezel encircling the front surface and curving in a rounded fashion from the outer extent of the side surface to the front surface.

146. The Apple iPhone (original), iPhone 3G, iPhone 3GS and Samsung's Galaxy S i9000 also share each of these design elements.

147. Some minor differences exist between Samsung's Galaxy S i9000 and the patented D'087 design. For instance, there are slight variations in the thickness of the bezel on the Galaxy S i9000. Also, the area above and below the display screen is slightly narrower on the Galaxy S i9000. The Galaxy S i9000's lozenge-shaped speaker slot is slightly longer and thinner, and the Galaxy S i9000 has small graphical icons to denote touch sensitive areas under its display screen.

148. The minor differences between the design of the Galaxy S i9000 and the design of the D'087 Patent are details that are insufficient to differentiate the overall impression given by the Galaxy S i9000 from that given by the claimed design of the D'087 Patent. An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

149. In my opinion, the Galaxy S i9000 design is substantially the same as the D'087 design and embodies that patented design. It is similarly my opinion that an ordinary observer would find the Galaxy S i9000 design to be substantially the same as the patented D'087 design.

**D.     Samsung's Galaxy S 4G Infringes the D'087 Patent**

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S 4G |
|---|---|---|
|  FIG. 9 <br>  FIG. 17 |  |  |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S 4G |
|---|---|---|

150.     The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Samsung's Galaxy S 4G.  For instance, both the D'087 Patent and the Galaxy S 4G have the same overall shape and proportion. Just like the D'087 Patent, Samsung's Galaxy S 4G has a flat rectangular front surface with curved corners.  Moreover, both the patented D'087 design and the Galaxy S 4G have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  Also, both the patented D'087 design and the Galaxy S 4G

1    also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface

2    above the display screen.  Aside from these facial features, the Galaxy S 4G design is also

3    substantially free of added adornment on its front surface.  The patented D'087 design and the

4    Galaxy S 4G both have a thin continuous bezel encircling the front surface and curving in a

5    rounded fashion from the outer extent of the side surface to the front surface.

6          151.    The Apple iPhone (original), iPhone 3G, iPhone 3GS and Samsung's Galaxy S 4G

7    also share each of these design elements.

8          152.    Some minor differences exist between Samsung's Galaxy S 4G and the patented

9    D'087 design.  For instance, there are slight variations in the thickness of the bezel on the Galaxy

10   S 4G.  Moreover, the area above and below the display screen is slightly narrower on the Galaxy

11   S 4G.  The Galaxy S 4G's lozenge-shaped speaker slot is slightly longer and narrower; the

12   Galaxy S 4G has a small camera aperture in the upper right corner of the front surface; and the

13   Galaxy S 4G uses small graphical icons to denote touch sensitive areas under its display screen.

14         153.    The minor differences between the design of the Galaxy S 4G and the design of

15   the D'087 Patent are details that are insufficient to differentiate the overall impression given by

16   the Galaxy S 4G from that given by the claimed design of the D'087 Patent.  An ordinary

17   observer's overall impression is created by the design as a whole; for the ordinary observer,

18   changes in details that are clearly subordinate to the primary visual elements are insufficient to

19   alter that overall impression.

20         154.    In my opinion, the Galaxy S 4G design is substantially the same as the D'087

21   design and embodies that patented design.  It is similarly my opinion that an ordinary observer

22   would also find the Galaxy S 4G design to be substantially the same as the patented D'087

23   design.

24

25

26

27

28

### E.    Samsung's Infuse 4G Infringes the D'087 Patent

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Infuse 4G |
|---|---|---|
|  FIG. 9 <br> FIG. 17 |  |  |
|  FIG. 11   FIG. 19 |  |  |
|  FIG. 7   FIG. 8 |  |  |

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Infuse 4G |
|---|---|---|
|  FIG. 5<br><br> FIG. 6 | <br><br> | <br><br> |

155.    The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Samsung's Infuse 4G.  For instance, both the D'087 Patent and the Infuse 4G have the same overall shape and proportion.  Just like the D'087 Patent, Samsung's Infuse 4G has a flat rectangular front surface with evenly curved corners. Moreover, both the patented D'087 design and the Infuse 4G have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  Also, both the patented D'087 design and the Infuse 4G also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.  Aside from these facial features, the Infuse 4G design is also substantially free of added adornment on its front surface.  The patented D'087 design and the Infuse 4G both have the visual appearance of a thin continuous bezel encircling the front surface and curving from the outer extent of the side surface to the front surface.

156.    The Apple iPhone (original), iPhone 3G, iPhone 3GS and Samsung's Infuse 4G also share each of these design elements.

157.    Some minor differences exist between Samsung's Infuse 4G and the patented D'087 design.  For instance, the area above and below the display screen is slightly narrower on the Infuse 4G.  The curved corners on the Infuse 4G have a slightly smaller radius of curvature. The Infuse 4G's lozenge-shaped speaker slot is slightly longer and narrower, and the Infuse 4G uses small graphical icons to denote touch sensitive areas under its display screen.

1    158.    The minor differences between the design of the Infuse 4G and the design of the

2    D'087 Patent are details that are insufficient to differentiate the overall impression given by the

3    Infuse 4G from that given by the claimed design of the D'087 Patent.  An ordinary observer's

4    overall impression is created by the design as a whole; for the ordinary observer, changes in

5    details that are clearly subordinate to the primary visual elements are insufficient to alter that

6    overall impression.

7    159.    In my opinion, the Infuse 4G design is substantially the same as the D'087 design

8    and embodies that patented design.  It is similarly my opinion that an ordinary observer would

9    also find the Infuse 4G design to be substantially the same as the patented D'087 design.

10   **F.    Samsung's Vibrant Infringes the D'087 Patent**

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Vibrant |
|---|---|---|
|  FIG. 9 <br> FIG. 17 |  |  |
|  FIG. 11    FIG. 19 |  |  |

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Vibrant |
|---|---|---|
|  FIG. 7    FIG. 8 |  |  |
|  FIG. 5 <br>  FIG. 6 |  |  |

160.    The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Samsung's Vibrant.  For instance, both the D'087 Patent and the Vibrant have the same overall shape and proportion. Just like the D'087 Patent, Samsung's Vibrant has a flat rectangular front surface with evenly curved corners.  Moreover, both the patented D'087 design and the Vibrant have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  Also, both the patented D'087 design and the Vibrant also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen. Aside from these facial features, the Vibrant design is also substantially free of added adornment on its front surface.  The patented D'087 design and the Vibrant both have a thin continuous bezel encircling the front surface and curving in a rounded fashion from the outer extent of the side surface to the front surface.

161.    The Apple iPhone (original), iPhone 3G, iPhone 3GS and Samsung's Vibrant also share each of these design elements.

162.   Some minor differences exist between Samsung's Vibrant and the patented D'087 design.  For instance, there are slight variations in the thickness of the bezel on the Vibrant. Also, the area above and below the display screen is slightly narrower on the Vibrant. The Vibrant's lozenge-shaped speaker slot is slightly longer and thinner, and the Vibrant uses small graphical icons to denote touch sensitive areas under its display screen.

163.   The minor differences between the design of the Vibrant and the design of the D'087 Patent are details that are insufficient to differentiate the overall impression given by the Vibrant from that given by the claimed design of the D'087 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

164.   In my opinion, the Vibrant design is substantially the same as the D'087 design and embodies that patented design.  It is similarly my opinion that an ordinary observer would also find the Vibrant design to be substantially the same as the patented D'087 design.

**G.   Samsung's Galaxy S II (Epic 4G Touch) Infringes the D'087 Patent**

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S II (Epic 4G Touch) |
|---|---|---|
|  FIG. 9 <br>  FIG. 17 |  |  |



| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S II (Epic 4G Touch) |
|---|---|---|

165.    The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Samsung's Galaxy S II (Epic 4G Touch).  For instance, both the D'087 Patent and the Galaxy S II (Epic 4G Touch) have the same overall shape and proportion. Just like the D'087 Patent, Samsung's Galaxy S II (Epic 4G Touch) has a flat rectangular front surface with evenly curved corners.  Moreover, both the patented D'087 design and the Galaxy S II (Epic 4G Touch) have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.

1    Also, both the patented D'087 design and the Galaxy S II (Epic 4G Touch) also have a horizontal

2    lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.

3    Aside from these facial features, the Galaxy S II (Epic 4G Touch) design is also substantially free

4    of added adornment on its front surface.  The patented D'087 design and the Galaxy S II (Epic 4G

5    Touch) have a thin continuous bezel encircling the front surface and curving from the outer extent

6    of the side surface to the front surface.

7        166.    The Apple iPhone (original), iPhone 3G, iPhone 3GS and Samsung's Galaxy S II

8    (Epic 4G Touch) also share each of these design elements.

9        167.    Some minor differences exist between Samsung's Galaxy S II (Epic 4G Touch)

10   and the patented D'087 design.  Also, the area above and below the display screen is slightly

11   narrower on the Galaxy S II (Epic 4G Touch). The Galaxy S II (Epic 4G Touch)'s lozenge-

12   shaped speaker slot is slightly longer and thinner; the Galaxy S II (Epic 4G Touch) has a small

13   camera aperture in the upper left corner of the front surface; and the Galaxy S II (Epic 4G Touch)

14   uses small graphical icons to denote touch sensitive areas under its display screen.

15       168.    The minor differences between the design of the Galaxy S II (Epic 4G Touch) and

16   the design of the D'087 Patent are details that are insufficient to differentiate the overall

17   impression given by the Galaxy S II (Epic 4G Touch) from that given by the claimed design of

18   the D'087 Patent.  An ordinary observer's overall impression is created by the design as a whole;

19   for the ordinary observer, changes in details that are clearly subordinate to the primary visual

20   elements are insufficient to alter that overall impression.

21       169.    In my opinion, the Galaxy S II (Epic 4G Touch) design is substantially the same as

22   the D'087 design and embodies that patented design.  It is similarly my opinion that an ordinary

23   observer would also find the Galaxy S II (Epic 4G Touch) design to be substantially the same as

24   the patented D'087 design.

25

26

27

28

## H.     Samsung's Galaxy S II (AT&T) Infringes the D'087 Patent

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S II (AT&T) |
|---|---|---|
|  FIG. 9  FIG. 17 |  |  |
|  FIG. 11          FIG. 19 |  |  |
|  FIG. 7      FIG. 8 |  |  |

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S II (AT&T) |
|---|---|---|
| FIG. 5<br><br>FIG. 6 | | |

170.     The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Samsung's Galaxy S II (AT&T).  For instance, both the D'087 Patent and the Galaxy S II (AT&T) have the same overall shape and proportion. Just like the D'087 Patent, Samsung's Galaxy S II (AT&T) has a flat rectangular front surface with evenly curved corners.  Moreover, both the patented D'087 design and the Galaxy S II (AT&T) have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  Also, both the patented D'087 design and the Galaxy S II (AT&T) also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.  Aside from these facial features, the Galaxy S II (AT&T) design is also substantially free of added adornment on its front surface.  The patented D'087 design and the Galaxy S II (AT&T) have a thin continuous bezel encircling the front surface and curving from the outer extent of the side surface to the front surface.

171.     The Apple iPhone (original), iPhone 3G, iPhone 3GS and Samsung's Galaxy S II (AT&T) also share each of these design elements.

172.     Some minor differences exist between Samsung's Galaxy S II (AT&T) and the patented D'087 design.  For instance, the curved corners on the Galaxy S II (AT&T) have a slightly smaller radius of curvature. Also, the area above and below the display screen is slightly narrower on the Galaxy S II (AT&T). The Galaxy S II (AT&T)'s lozenge-shaped speaker slot is slightly longer and thinner; the Galaxy S II (AT&T) has a small camera aperture in the upper left

corner of the front surface; and the Galaxy S II (AT&T) uses small graphical icons to denote touch sensitive areas under its display screen.

173.     The minor differences between the design of the Galaxy S II (AT&T) and the design of the D'087 Patent are details that are insufficient to differentiate the overall impression given by the Galaxy S II (AT&T) from that given by the claimed design of the D'087 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

174.     In my opinion, the Galaxy S II (AT&T) design is substantially the same as the D'087 design and embodies that patented design.  It is similarly my opinion that an ordinary observer would also find the Galaxy S II (AT&T) design to be substantially the same as the patented D'087 design.

**I.       Samsung's Galaxy S II (Skyrocket) Infringes the D'087 Patent**

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S II (Skyrocket) |
|---|---|---|
|   FIG. 9    FIG. 17 |  |  |



| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S II (Skyrocket) |
|---|---|---|

175.    The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Samsung's Galaxy S II (Skyrocket).  For instance, both the D'087 Patent and the Galaxy S II (Skyrocket) have the same overall shape and proportion. Just like the D'087 Patent, Samsung's Galaxy S II (Skyrocket) has a flat rectangular front surface with evenly curved corners.  Moreover, both the patented D'087 design and the Galaxy S II (Skyrocket) have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  Also, both the

1   patented D'087 design and the Galaxy S II (Skyrocket) also have a horizontal lozenge-shaped

2   speaker slot horizontally centered on the front surface above the display screen.  Aside from these

3   facial features, the Galaxy S II (Skyrocket) design is also substantially free of added adornment

4   on its front surface.  The patented D'087 design and the Galaxy S II (Skyrocket) have a thin

5   continuous bezel encircling the front surface and curving from the outer extent of the side surface

6   to the front surface.

7          176.    The Apple iPhone (original), iPhone 3G, iPhone 3GS and Samsung's Galaxy S II

8   (Skyrocket) also share each of these design elements.

9          177.    Some minor differences exist between Samsung's Galaxy S II (Skyrocket) and the

10   patented D'087 design.  For instance, the curved corners on the Galaxy S II (Skyrocket) have a

11   slightly smaller radius of curvature, its bottom side is slightly curved, and its bezel is slightly

12   narrower. Also, the area above and below the display screen is slightly narrower on the Galaxy S

13   II (Skyrocket).  The Galaxy S II (Skyrocket)'s lozenge-shaped speaker slot is slightly longer and

14   thinner; the Galaxy S II (Skyrocket) has a small camera aperture in the upper left corner of the

15   front surface; and the Galaxy S II (Skyrocket) uses small graphical icons to denote touch sensitive

16   areas under its display screen.

17          178.    The minor differences between the design of the Galaxy S II (Skyrocket) and the

18   design of the D'087 Patent are details that are insufficient to differentiate the overall impression

19   given by the Galaxy S II (Skyrocket) from that given by the claimed design of the D'087 Patent.

20   An ordinary observer's overall impression is created by the design as a whole; for the ordinary

21   observer, changes in details that are clearly subordinate to the primary visual elements are

22   insufficient to alter that overall impression.

23          179.    In my opinion, the Galaxy S II (Skyrocket) design is substantially the same as the

24   D'087 design and embodies that patented design.  It is similarly my opinion that an ordinary

25   observer would also find the Galaxy S II (Skyrocket) design to be substantially the same as the

26   patented D'087 design.

27

28

### J.   Samsung's Galaxy S II (i9100) Infringes the D'087 Patent

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S II (i9100) |
|---|---|---|
| FIG. 9<br>FIG. 17 | | |
| FIG. 11   FIG. 19 | | |
| FIG. 7   FIG. 8 | | |

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) | Samsung Galaxy S II (i9100) |
|---|---|---|
| FIG. 5<br><br>FIG. 6 | | |

180.    The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Samsung's Galaxy S II (i9100).  For instance, both the D'087 Patent and the Galaxy S II (i9100) have the same overall shape and proportion. Just like the D'087 Patent, Samsung's Galaxy S II (i9100) has a flat rectangular front surface with evenly curved corners. Moreover, both the patented D'087 design and the Galaxy S II (i9100) have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  Also, both the patented D'087 design and the Galaxy S II (i9100) also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.  Aside from these facial features, the Galaxy S II (i9100) design is also substantially free of added adornment on its front surface.  The patented D'087 design and the Galaxy S II (i9100) have a thin continuous bezel encircling the front surface and curving from the outer extent of the side surface to the front surface.

181.    The Apple iPhone (original), iPhone 3G, iPhone 3GS and Samsung's Galaxy S II (i9100) also share each of these design elements.

182.    Some minor differences exist between Samsung's Galaxy S II (i9100) and the patented D'087 design.  For instance, the curved corners on the Galaxy S II (i9100) have a slightly smaller radius of curvature. Also, the area above and below the display screen is slightly narrower on the Galaxy S II (i9100). The Galaxy S II (i9100)'s lozenge-shaped speaker slot is

1   slightly longer and thinner; and the Galaxy S II (i9100) has a small camera aperture in the upper

2   left corner of the front surface.

3          183.    The minor differences between the design of the Galaxy S II (i9100) and the

4   design of the D'087 Patent are details that are insufficient to differentiate the overall impression

5   given by the Galaxy S II (i9100) from that given by the claimed design of the D'087 Patent.  An

6   ordinary observer's overall impression is created by the design as a whole; for the ordinary

7   observer, changes in details that are clearly subordinate to the primary visual elements are

8   insufficient to alter that overall impression.

9          184.    In my opinion, the Galaxy S II (i9100) design is substantially the same as the

10  D'087 design and embodies that patented design.  It is similarly my opinion that an ordinary

11  observer would also find the Galaxy S II (i9100) design to be substantially the same as the

12  patented D'087 design.

13  **XII.    SAMSUNG INFRINGES THE D'677 PATENT**

14        **A.    Identification of Infringing Products**

15         185.    It is my opinion that the Samsung Mesmerize, Fascinate, and Galaxy S Showcase,

16  Galaxy S i9000, Galaxy Ace, Galaxy S 4G, Infuse 4G, Vibrant, Galaxy S II (Epic 4G Touch),

17  Galaxy S II (T-Mobile), Galaxy S II (AT&T), Galaxy S II (Skyrocket), and Galaxy S II (i9100)

18  (collectively, the Samsung D'677 Accused Products) infringes the D'677 Patent.

19         186.    In forming this opinion, I reviewed the prosecution history of the D'677 Patent and

20  analyzed and familiarized myself with the prior art cited therein.  I have also analyzed and

21  familiarized myself with the relevant portions of the prior art references Samsung cited in its

22  December 19, 2011 Response to Apple's Interrogatory No. 12 and the relevant portions of prior

23  art references cited in Samsung's August 22, 2011 Opposition to Apple's Motion for a

24  Preliminary Injunction and in Itay Sherman's August 22, 2011 Declaration in Support of

25  Samsung's Opposition to Apple's Motion for a Preliminary Injunction.[62]

26

27  ─────────────────

28         [62] I reserve the right to address any other prior art references that Samsung identifies.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK

187.     As mentioned above, I also have reviewed news articles and publications drawing attention to the similarity between the iPhone and smartphones in Samsung's Galaxy S line.

188.     To determine whether each of the Samsung D'677 Accused Products infringes the D'677 Patent, I compared Figures 1, 3 & 5-8 of the D'677 Patent with analogous views of the corresponding portions of the Samsung D'677 Accused Products.  As shown below, the Apple iPhone (original) embodies the claim of the D'677 Patent.  Accordingly, I also compared views of the Apple iPhone (original) that correspond to Figures 1, 3 & 5-8 of the D'677 Patent with analogous views of the corresponding portions of the Samsung D'677 Accused Products.[63]

### B.     Comparison of the Prior Art

189.     As part of my infringement analysis, I considered the similarities and differences between the claimed design of the D'677 Patent, the Samsung D'677 Accused Products, and certain purported prior art references cited by Samsung.

190.     This comparison benefitted my analysis by highlighting that none of the cited prior art comes close to the design disclosed in the D'67 Patent.  The prior art drawn to my attention includes the following:

- **JP'638 Design** (JP'638) (Exhibit 31).

- **LG Chocolate** (the Chocolate) (Exhibit 34).

191.     **JP'638 Design**.  Unlike the D'677 Patent and the Samsung D'677 Accused Products, the front face of the design disclosed in the JP'638 Design is neither flat nor translucent and black-colored from edge to edge.  In fact, as shown in the pictures below, the front surface of the JP'638 Design is significantly cambered and the screen is surrounded by opaque borders.  Furthermore, the JP'638 Design shows a much smaller speaker slot that is shifted near to the very top of the front surface.  The visual impressions of the Samsung D'677 Accused Products are much closer to the D'677 Patent than the visual impression of the JP'638 Design.

---

[63] To ensure accuracy, my comparisons involving the Accused Products and the Apple products were done using actual devices rather than pictures of the Accused Products or Apple products.  I reserve the right to rely on the actual devices for purposes of trial testimony.

| JP'638 Design | D'677 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  |   FIG. 1 |  |
|  |   FIG. 3 |  |
|  |   FIG. 7   FIG. 8 |  |
|  |   FIG. 5   FIG. 6 |  |

192.   **Chocolate**.  The LG Chocolate does not have a centered display screen with balanced borders above and below the screen, which is noticeably different from the D'677

1   design and the Samsung D'677 Accused Products.  Rather the display screen is aligned closer to

2   the top of the design, rather than the center.  The side borders to the right and left of the screen are

3   also wider.  Moreover, the top and bottom edges are not straight.  There is also substantial

4   ornamentation in the form of a large metal button with a metallic-appearing rim and red marking,

5   which is surrounded by a number of smaller red buttons on the front surface below the display

6   screen. The visual impressions of the Samsung D'677 Accused Products are much closer to the

7   D'677 Patent than is the visual impression of the Chocolate.

| Chocolate | D'677 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  | 

FIG. 3 |  |
|  | 

FIG. 7          FIG. 8 |  |

22   193.    The clear differences between the D'677 Patent and the prior art underscore my

23   view that the Samsung D'677 Accused Products infringe the D'677 Patent.  To that end, I have

24   conducted a three-way analysis of the prior art, the D'677 Patent, and the Samsung D'677

25   Accused Products.  Both the D'677 Patent and the Samsung D'677 Accused Products depart

26   conspicuously from the prior art designs with respect to the same relevant features.  Put another

27   way, the Samsung D'677 Accused Products are substantially similar to the D'677 Patent's design,

1    but are very different from the prior art.  Comparison charts depicting the three-way analysis are

2    shown below.

3          194.    Informed by my consideration of the prior art, and my conclusion that the prior art

4    does not come close to the D'677 Patent, I proceed to conduct an infringement analysis of the

5    D'677 Patent against the Samsung D'677 Accused Products, as set out below.

6          **C.     Samsung's Mesmerize (SCH-I500), Galaxy S Showcase (SCH-I500) &
      Fascinate (SCH-I500) Infringe the D'677 Patent**

| D'677 Patent Claim | Apple iPhone (original) | Samsung SCH-I500 (Mesmerize, Galaxy S Showcase & Fascinate) |
|---|---|---|
|  FIG. 1 |  |  |
|  FIG. 3 |  |  |
|  FIG. 7     FIG. 8 |  |  |

| D'677 Patent Claim | Apple iPhone (original) | Samsung SCH-I500 (Mesmerize, Galaxy S Showcase & Fascinate) |
|---|---|---|
| FIG. 5 <br> FIG. 6 | | |

195.    The design elements depicted in the D'677 Patent are present in the corresponding portions of the design of Samsung's Fascinate, Mesmerize, and Galaxy S Showcase.  For instance, both the D'677 Patent and the Fascinate, Mesmerize, and Galaxy S Showcase all have the same overall shape and proportion.  Just like the D'677 Patent, Samsung's Fascinate, Mesmerize, and Galaxy S Showcase all have a flat, black-colored, translucent,[64] rectangular front surface with curved corners.  In the D'677 Patent and the Fascinate, Mesmerize, and Galaxy S Showcase, the translucent surface extends across the front surface to the perimeter, which is also substantially free of added adornment. Moreover, the patented D'677 design and the Fascinate, Mesmerize, and Galaxy S Showcase have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  The patented D'677 design and the Fascinate, Mesmerize, and Galaxy S Showcase also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.

196.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and Samsung's Fascinate, Mesmerize, and Galaxy S Showcase also share these design elements, creating substantially similar overall impressions.

197.    Some minor differences exist between the Fascinate, Mesmerize, and Galaxy S Showcase and the patented D'677 design.  For instance, the area above and below the display

---

[64] In the iPhone and Samsung accused products, the black color and translucency of the front surface is created by the black mask underneath the front surface.

1    screen is slightly narrower on the Fascinate, Mesmerize, and Galaxy S Showcase than the

2    corresponding area in the patented D'677 design, and these areas above and below the display

3    screen in the Fascinate, Mesmerize, and Galaxy S Showcase do not have the same width as in the

4    D'677 design; the Fascinate's, Mesmerize's, and Galaxy S Showcase's lozenge-shaped speaker

5    slots are slightly longer and thinner; and the Fascinate, Mesmerize, and Galaxy S Showcase use

6    small graphical icons to denote touch sensitive areas under the display screen.

7          198.    The minor differences between the design of the Fascinate, Mesmerize, and

8    Galaxy S Showcase and the design of the D'677 Patent are details that are insufficient to

9    differentiate the overall impression given by the Fascinate, Mesmerize, and Galaxy S Showcase

10   from that given by the claimed design of the D'677 Patent.  An ordinary observer's overall

11   impression is created by the design as a whole; for the ordinary observer, changes in details that

12   are clearly subordinate to the primary visual elements are insufficient to alter that overall

13   impression.

14         199.    In my opinion, the Fascinate, Mesmerize, and Galaxy S Showcase designs are

15   substantially the same as the D'677 design and embodies that patented design.  It is similarly my

16   opinion that an ordinary observer would also find the Fascinate, Mesmerize, and Galaxy S

17   Showcase designs to be substantially the same as the patented D'677 design.

18         **D.     Samsung's Galaxy S i9000 Infringes the D'677 Patent**

| D'677 Patent Claim | Apple iPhone (original) | Samsung Galaxy S i9000 |
|---|---|---|
|  | | |

| D'677 Patent Claim | Apple iPhone (original) | Samsung Galaxy S i9000 |
|---|---|---|
|  FIG. 3 |  |  |
|  FIG. 7   FIG. 8 |  |  |
|  FIG. 5  FIG. 6 |  |  |

200.    The design elements depicted in the D'677 Patent are present in the corresponding portions of the design of Samsung's S i9000.  For instance, both the D'677 Patent and the Galaxy S i9000 have the same overall shape and proportion.  Just like the D'677 Patent, Samsung's Galaxy S i9000 has a flat, translucent, black-colored, rectangular front surface with curved corners.  In both the D'677 Patent and the Galaxy S i9000, the translucent surface extends across the front surface to the perimeter, which is also substantially free of added adornment. Moreover, both the patented D'677 design and the Galaxy S i9000 have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen

1   and wide borders above and below the display screen.  Both the patented D'677 design and the

2   Galaxy S i9000 also have a horizontal lozenge-shaped speaker slot horizontally centered on the

3   front surface above the display screen.

4        201.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and

5   Samsung's Galaxy S i9000 also share these design elements, creating substantially similar overall

6   impressions.

7        202.    Some minor differences exist between the Galaxy S i9000 and the patented D'677

8   design.  For instance, the area above and below the display screen is slightly narrower on the

9   Galaxy S i9000; the Galaxy S i9000's lozenge-shaped speaker slot is slightly longer and thinner;

10  the Galaxy S i9000 has a small camera aperture in the upper right corner of the front surface; and

11  the Galaxy S i9000 uses small graphical icons to denote touch sensitive areas under its display

12  screen.

13       203.    The minor differences between the design of the Galaxy S i9000 and the design of

14  the D'677 Patent are details that are insufficient to differentiate the overall impression given by

15  the Galaxy S i9000 from that given by the claimed design of the D'677 Patent.  An ordinary

16  observer's overall impression is created by the design as a whole; for the ordinary observer,

17  changes in details that are clearly subordinate to the primary visual elements are insufficient to

18  alter that overall impression.

19       204.    In my opinion, the Galaxy S i9000 design is substantially the same as the D'677

20  design and embodies that patented design.  It is similarly my opinion that an ordinary observer

21  would also find the Galaxy S i9000 design to be substantially the same as the patented D'677

22  design.

23

24

25

26

27

28

E.     Samsung's Galaxy Ace Infringes the D'677 Patent

| D'677 Patent Claim | Apple iPhone (original) | Samsung Galaxy Ace |
|---|---|---|
| <br>FIG. 1 |  |  |
| <br>FIG. 3 |  |  |
| <br>FIG. 7   FIG. 8 |  |  |
| <br>FIG. 5<br><br>FIG. 6 |  |  |

205.    The elements depicted in the D'677 Patent are present in the corresponding

portions of the design of Samsung's Galaxy Ace.  For instance, both the D'677 Patent and the

Galaxy Ace have the same overall shape and proportion.  Just like the D'677 Patent, Samsung's

1  Galaxy Ace has a flat, translucent, black-colored, rectangular front surface with evenly curved

2  corners.  In both the D'677 Patent and the Galaxy Ace, the translucent surface extends across the

3  front surface to the perimeter, which is also substantially free of added adornment.  Moreover,

4  both the patented D'677 design and the Galaxy Ace have a rectangular display screen centered on

5  the front surface that leaves very narrow borders on either side of the display screen and wide

6  borders above and below the display screen.  Both the patented D'677 design and the Galaxy Ace

7  also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface

8  above the display screen.

9      206.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and

10  Samsung's Galaxy Ace also share these design elements, creating substantially similar overall

11  impressions.

12      207.    Some minor differences exist between the Galaxy Ace and the patented D'677

13  design.  For instance, the Galaxy Ace's lozenge-shaped speaker slot is slightly longer and

14  narrower; the Galaxy Ace has a small camera aperture in the upper right corner of the front

15  surface; the Galaxy Ace has a rectangular shaped button under its display screen and also small

16  graphical icons to denote touch sensitive areas under its display screen.

17      208.    The minor differences between the design of the Galaxy Ace and the design of the

18  D'677 Patent are details that are insufficient to differentiate the overall impression given by the

19  Galaxy Ace from that given by the claimed design of the D'677 Patent.  An ordinary observer's

20  overall impression is created by the design as a whole; for the ordinary observer, changes in

21  details that are clearly subordinate to the primary visual elements are insufficient to alter that

22  overall impression.

23      209.    In my opinion, the Galaxy Ace design is substantially the same as the D'677

24  design and embodies that patented design.  It is similarly my opinion that an ordinary observer

25  would also find the Galaxy Ace design to be substantially the same as the patented D'677 design.

26

27

28

F.      Samsung's Galaxy S 4G Infringes the D'677 Patent

| D'677 Patent Claim | Apple iPhone (original) | Samsung Galaxy S 4G |
|---|---|---|
|  FIG. 1 |  |  |
|  FIG. 3 |  |  |
|  FIG. 7   FIG. 8 |  |  |
|  FIG. 5<br>FIG. 6 |  |  |

210.    The elements depicted in the D'677 Patent are present in the corresponding portions of the design of Samsung's Galaxy S 4G.  For instance, both the D'677 Patent and the Galaxy S 4G have the same overall shape and proportion.  Just like the D'677 Patent, Samsung's

Galaxy S 4G has a flat, translucent, black-colored, rectangular front surface with curved corners. In both the D'677 Patent and the Galaxy S 4G, the translucent surface extends across the front surface to the perimeter, which is also substantially free of added adornment.  Moreover, both the patented D'677 design and the Galaxy S 4G have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  Both the patented D'677 design and the Galaxy S 4G also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.

211.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and Samsung's Galaxy S 4G also share these design elements, creating substantially similar overall impressions.

212.    Some minor differences exist between the Galaxy S 4G and the patented D'677 design.  For instance, the area above and below the display screen is slightly narrower on the Galaxy S 4G; the Galaxy S 4G's lozenge-shaped speaker slot is slightly longer and narrower; the Galaxy S 4G has a small camera aperture in the upper right corner of the front surface; and the Galaxy S 4G uses small graphical icons to denote touch sensitive areas under its display screen.

213.    The minor differences between the design of the Galaxy S 4G and the design of the D'677 Patent are details that are insufficient to differentiate the overall impression given by the Galaxy S 4G from that given by the claimed design of the D'677 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

214.    I understand that the Court in its December 2, 2011 Order Denying Motion for Preliminary Injunction found that "the Samsung Galaxy S 4G has an overall design that an ordinary observer would likely find substantially the same as the D'677 Patent."  Order at 26.  I agree.  In my opinion, the Galaxy S 4G design is substantially the same as the D'677 design and embodies that patented design.  It is similarly my opinion that an ordinary observer would also find the Galaxy S 4G design to be substantially the same as the patented D'677 design.

G.      Samsung's Infuse 4G Infringes the D'677 Patent

| D'677 Patent Claim | Apple iPhone (original) | Samsung Infuse 4G |
|---|---|---|
|  FIG. 1 |  |  |
|  FIG. 3 |  |  |
|  FIG. 7   FIG. 8 |  |  |
|  FIG. 5   FIG. 6 |  |  |

215.    The design elements depicted in the D'677 Patent are present in the corresponding portions of the design of Samsung's Infuse 4G.  For instance, both the D'677 Patent and the Infuse 4G have the same overall shape and proportion.  Just like the D'677 Patent, Samsung's

Infuse 4G has a flat, translucent, black-colored, rectangular front surface with evenly curved corners.  In both the D'677 Patent and the Infuse 4G, the translucent surface extends across the front surface to the perimeter, which is also substantially free of added adornment.  Moreover, both the patented D'677 design and the Infuse 4G have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide borders above and below the display screen.  Both the patented D'677 design and the Infuse 4G also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.

216.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and Samsung's Infuse 4G also share these design elements, creating substantially similar overall impressions.

217.    Some minor differences exist between the Infuse 4G and the patented D'6778 design.  For instance, the area above and below the display screen is slightly narrower on the Infuse 4G; the curved corners on the Infuse 4G have a slightly smaller radius of curvature; the Infuse 4G's lozenge-shaped speaker slot is slightly longer and thinner; and the Infuse 4G uses small graphical icons to denote touch sensitive areas under its display screen.

218.    The minor differences between the design of the Infuse 4G and the design of the D'677 Patent are details that are insufficient to differentiate the overall impression given by the Galaxy Infuse 4G from that given by the claimed design of the D'677 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

219.    I understand that the Court in its December 2, 2011 Order Denying Motion for Preliminary Injunction found that the Infuse 4G "would likely appear substantially the same as the D'677 patent to an ordinary observer."  Order at 27.  I agree.  In my opinion, the Infuse 4G design is substantially the same as the D'677 design and embodies that patented design.  It is similarly my opinion that an ordinary observer would also find the Infuse 4G design to be substantially the same as the patented D'677 design.

### H.     Samsung's Vibrant Infringes the D'677 Patent

| D'677 Patent Claim | Apple iPhone (original) | Samsung Vibrant |
|---|---|---|
| FIG. 1 | | |
| FIG. 3 | | |
| FIG. 7    FIG. 8 | | |
| FIG. 5 / FIG. 6 | | |

220.    The design elements depicted in the D'677 Patent are present in the corresponding

portions of the design of Samsung's Vibrant.  For instance, both the D'677 Patent and the Vibrant

have the same overall shape and proportion.  Just like the D'677 Patent, Samsung's Vibrant has a

1   flat, translucent, black-colored, rectangular front surface with curved corners.  In both the D'677

2   Patent and the Vibrant, the translucent surface extends across the front surface to the perimeter,

3   which is also substantially free of added adornment.  Moreover, both the patented D'677 design

4   and the Vibrant have a rectangular display screen centered on the front surface that leaves very

5   narrow borders on either side of the display screen and wide borders above and below the display

6   screen.  Both the patented D'677 design and the Vibrant also have a horizontal lozenge-shaped

7   speaker slot horizontally centered on the front surface above the display screen.

8          221.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and

9   Samsung's Vibrant also share these design elements, creating substantially similar overall

10   impressions.

11          222.    Some minor differences exist between the Vibrant and the patented D'677 design.

12   For instance, the area above and below the display screen is slightly narrower on the Vibrant; the

13   Vibrant's lozenge-shaped speaker slot is slightly longer and thinner; and the Vibrant uses small

14   graphical icons to denote touch sensitive areas under its display screen.

15          223.    The minor differences between the design of the Vibrant and the design of the

16   D'677 Patent are details that are insufficient to differentiate the overall impression given by the

17   Vibrant from that given by the claimed design of the D'677 Patent.  An ordinary observer's

18   overall impression is created by the design as a whole; for the ordinary observer, changes in

19   details that are clearly subordinate to the primary visual elements are insufficient to alter that

20   overall impression.

21          224.    In my opinion, the Vibrant design is substantially the same as the D'677 design

22   and embodies that patented design.  It is similarly my opinion that an ordinary observer would

23   also find the Vibrant design to be substantially the same as the patented D'677 design.

24

25

26

27

28

I.      Samsung's Galaxy S II (Epic 4G Touch) Infringes the D'677 Patent

| D'677 Patent Claim | Apple iPhone (original) | Samsung Galaxy S II (Epic 4G Touch) |
|---|---|---|
| FIG. 1 | | |
| FIG. 3 | | |
| FIG. 7    FIG. 8 | | |
| FIG. 5<br><br>FIG. 6 | | |

225.    The design elements depicted in the D'677 Patent are present in the corresponding portions of the design of Samsung's Galaxy S II (Epic 4G Touch).  For instance, both the D'678 Patent and the Galaxy S II (Epic 4G Touch) have the same overall shape and proportion.  Just like

1   the D'677 Patent, Samsung's Galaxy S II (Epic 4G Touch) has a flat, translucent, black-colored,

2   rectangular front surface with evenly curved corners.  In both the D'677 Patent and the Galaxy S

3   II (Epic 4G Touch), the translucent surface extends across the front surface to the perimeter,

4   which is also substantially free of added adornment.  Moreover, both the patented D'677 design

5   and the Galaxy S II (Epic 4G Touch) have a rectangular display screen centered on the front

6   surface that leaves very narrow borders on either side of the display screen and wide borders

7   above and below the display screen.  Both the patented D'677 design and the Galaxy S II (Epic

8   4G Touch) also have a horizontal lozenge-shaped speaker slot horizontally centered on the front

9   surface above the display screen.

10          226.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and

11  Samsung's Galaxy S II (Epic 4G Touch) also share these design elements, creating substantially

12  similar overall impressions.

13          227.    Some minor differences exist between the Galaxy S II (Epic 4G Touch) and the

14  patented D'677 design.  For instance, the area above and below the display screen is slightly

15  narrower on the Galaxy S II (Epic 4G Touch); the Galaxy S II (Epic 4G Touch)'s lozenge-shaped

16  speaker slot is slightly longer and thinner; the Galaxy S II (Epic 4G Touch) has a small camera

17  aperture in the upper left corner of the front surface; and the Galaxy S II (Epic 4G Touch) uses

18  small graphical icons to denote touch sensitive areas under its display screen.

19          228.    The minor differences between the design of the Galaxy S II (Epic 4G Touch) and

20  the design of the D'677 Patent are details that are insufficient to differentiate the overall

21  impression given by the Galaxy S II (Epic 4G Touch) from that given by the claimed design of

22  the D'677 Patent.  An ordinary observer's overall impression is created by the design as a whole;

23  for the ordinary observer, changes in details that are clearly subordinate to the primary visual

24  elements are insufficient to alter that overall impression.

25          229.    In my opinion, the Galaxy S II (Epic 4G Touch) design is substantially the same as

26  the D'677 design and embodies that patented design.  It is similarly my opinion that an ordinary

27  observer would also find the Galaxy S II (Epic 4G Touch) design to be substantially the same as

28  the patented D'677 design.

### J.     Samsung's Galaxy S II (T-Mobile) Infringes the D'677 Patent

| D'677 Patent Claim | Apple iPhone (original) | Samsung Galaxy S II (T-Mobile) |
|---|---|---|
|  FIG. 1 |  |  |
|  FIG. 3 |  |  |
|  FIG. 7   FIG. 8 |  |  |
|  FIG. 5 <br><br>  FIG. 6 |  |  |

230.     The design elements depicted in the D'677 Patent are present in the corresponding portions of the design of Samsung's Galaxy S II (T-Mobile).  For instance, both the D'677 Patent and the Galaxy S II (T-Mobile) have the same overall shape and proportion.  Just like the D'677

1    Patent, Samsung's Galaxy S II (T-Mobile) has a flat, translucent, black-colored, rectangular front

2    surface with curved corners.  In both the D'677 Patent and the Galaxy S II (T-Mobile), the

3    translucent surface extends across the front surface to the perimeter, which is also substantially

4    free of added adornment.  Moreover, both the patented D'677 design and the Galaxy S II (T-

5    Mobile) have a rectangular display screen centered on the front surface that leaves very narrow

6    borders on either side of the display screen and wide borders above and below the display screen.

7    Both the patented D'677 design and the Galaxy S II (T-Mobile) also have an elongated speaker

8    slot horizontally centered on the front surface above the display screen.

9         231.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and

10   Samsung's Galaxy S II (T-Mobile) also share these design elements, creating substantially similar

11   overall impressions.

12        232.    Some minor differences exist between the Galaxy S II (T-Mobile) and the patented

13   D'677 design.  For instance, the bottom of the Galaxy S II (T-Mobile) is slightly curved; the area

14   above and below the display screen is slightly narrower on the Galaxy S II (T-Mobile); the

15   speaker slot on the Galaxy S II (T-Mobile) is not perfectly lozenge-shaped because the top

16   portion is slightly flattened; the Galaxy S II (T-Mobile) has a small camera aperture in the upper

17   left corner of the front surface; and the Galaxy S II (T-Mobile) uses small graphical icons to

18   denote touch sensitive areas under its display screen.

19        233.    The minor differences between the design of the Galaxy S II (T-Mobile) and the

20   design of the D'677 Patent are details that are insufficient to differentiate the overall impression

21   given by the Galaxy S II (T-Mobile) from that given by the claimed design of the D'677 Patent.

22   An ordinary observer's overall impression is created by the design as a whole; for the ordinary

23   observer, changes in details that are clearly subordinate to the primary visual elements are

24   insufficient to alter that overall impression.

25        234.    In my opinion, the Galaxy S II (T-Mobile) design is substantially the same as the

26   D'677 design and embodies that patented design.  It is similarly my opinion that an ordinary

27   observer would also find the Galaxy S II (T-Mobile) design to be substantially the same as the

28   patented D'677 design.

**K.      Samsung's Galaxy S II (AT&T) Infringes the D'677 Patent**

| D'677 Patent Claim | Apple iPhone (original) | Samsung Galaxy S II (AT&T) |
| --- | --- | --- |
| <br>FIG. 1 |  |  |
| <br>FIG. 3 |  |  |
| <br>FIG. 7    FIG. 8 |  |  |
| <br>FIG. 5<br><br><br>FIG. 6 |  |  |

235.    The design elements depicted in the D'677 Patent are present in the corresponding portions of the design of Samsung's Galaxy S II (AT&T).  For instance, both the D'677 Patent and the Galaxy S II (AT&T) have the same overall shape and proportion.  Just like the D'677

1   Patent, Samsung's Galaxy S II (AT&T) has a flat, translucent, black-colored, rectangular front

2   surface with evenly curved corners.  In both the D'678 Patent and the Galaxy S II (AT&T), the

3   translucent surface extends across the front surface to the perimeter, which is also substantially

4   free of added adornment.  Moreover, both the patented D'677 design and the Galaxy S II (AT&T)

5   have a rectangular display screen centered on the front surface that leaves very narrow borders on

6   either side of the display screen and wide borders above and below the display screen.  Both the

7   patented D'677 design and the Galaxy S II (AT&T) also have a horizontal lozenge-shaped

8   speaker slot horizontally centered on the front surface above the display screen.

9        236.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and

10  Samsung's Galaxy S II (AT&T) also share these design elements, creating substantially similar

11  overall impressions.

12       237.    Some minor differences exist between the Galaxy S II (AT&T) and the patented

13  D'677 design.  For instance, the radius of curvature is slightly smaller on the corners of the

14  Galaxy S II (AT&T); the Galaxy S II (AT&T)'s lozenge-shaped speaker slot is slightly longer

15  and thinner; the Galaxy S II (AT&T) has a small camera aperture in the upper left corner of the

16  front surface; and the Galaxy S II (AT&T) uses small graphical icons to denote touch sensitive

17  areas under its display screen.

18       238.    The minor differences between the design of the Galaxy S II (AT&T) and the

19  design of the D'677 Patent are details that are insufficient to differentiate the overall impression

20  given by the Galaxy S II (AT&T) from that given by the claimed design of the D'677 Patent.  An

21  ordinary observer's overall impression is created by the design as a whole; for the ordinary

22  observer, changes in details that are clearly subordinate to the primary visual elements are

23  insufficient to alter that overall impression.

24       239.    In my opinion, the Galaxy S II (AT&T) design is substantially the same as the

25  D'677 design and embodies that patented design.  It is similarly my opinion that an ordinary

26  observer would also find the Galaxy S II (AT&T) design to be substantially the same as the

27  patented D'677 design.

28

1

### L.      Samsung's Galaxy S II (Skyrocket) Infringes the D'677 Patent

| D'677 Patent Claim | Apple iPhone (original) | Samsung Galaxy S II (Skyrocket) |
|---|---|---|
| FIG. 1 | | |
| FIG. 3 | | |
| FIG. 7   FIG. 8 | | |
| FIG. 5  FIG. 6 | | |

240.     The design elements depicted in the D'677 Patent are present in the corresponding

portions of the design of Samsung's Galaxy S II (Skyrocket).  For instance, both the D'677 Patent

and the Galaxy S II (Skyrocket) have the same overall shape and proportion.  Just like the D'677

1    Patent, Samsung's Galaxy S II (Skyrocket) has a flat, translucent, black-colored, rectangular front

2    surface with curved corners.  In both the D'677 Patent and the Galaxy S II (Skyrocket), the black

3    clear surface extends across the front surface to the perimeter, which is also substantially free of

4    added adornment.  Moreover, both the patented D'677 design and the Galaxy S II (Skyrocket)

5    have a rectangular display screen centered on the front surface that leaves very narrow borders on

6    either side of the display screen and wide borders above and below the display screen.  Both the

7    patented D'677 design and the Galaxy S II (Skyrocket) also have a horizontal lozenge-shaped

8    speaker slot horizontally centered on the front surface above the display screen.

9            241.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and

10   Samsung's Galaxy S II (Skyrocket) also share these design elements, creating substantially

11   similar overall impressions.

12           242.    Some minor differences exist between the Galaxy S II (Skyrocket) and the

13   patented D'677 design.  For instance, the bottom of the Galaxy S II (Skyrocket) is slightly

14   curved; the area above and below the display screen is slightly narrower on the Galaxy S II

15   (Skyrocket); the Galaxy S II (Skyrocket)'s lozenge-shaped speaker slot is slightly longer and

16   thinner; the Galaxy S II (Skyrocket) has a small camera aperture in the upper left corner of the

17   front surface; and the Galaxy S II (Skyrocket) uses small graphical icons to denote touch sensitive

18   areas under its display screen.

19           243.    The minor differences between the design of the Galaxy S II (Skyrocket) and the

20   design of the D'677 Patent are details that are insufficient to differentiate the overall impression

21   given by the Galaxy S II (Skyrocket) from that given by the claimed design of the D'677 Patent.

22   An ordinary observer's overall impression is created by the design as a whole; for the ordinary

23   observer, changes in details that are clearly subordinate to the primary visual elements are

24   insufficient to alter that overall impression.

25           244.    In my opinion, the Galaxy S II (Skyrocket) design is substantially the same as the

26   D'677 design and embodies that patented design.  It is similarly my opinion that an ordinary

27   observer would also find the Galaxy S II (Skyrocket) design to be substantially the same as the

28   patented D'677 design.

**M.     Samsung's Galaxy S II (i9100) Infringes the D'677 Patent**

| D'677 Patent Claim | Apple iPhone (original) | Samsung Galaxy S II (i9100) |
|---|---|---|
| <br>FIG. 1 |  |  |
| <br>FIG. 3 |  |  |
| <br>FIG. 7    FIG. 8 |  |  |
| <br>FIG. 5<br><br>FIG. 6 |  |  |

245.    The design elements depicted in the D'677 Patent are present in the corresponding

portions of the design of Samsung's Galaxy S II (i9100).  For instance, both the D'677 Patent and

1    the Galaxy S II (i9100) have the same overall shape and proportion.  Just like the D'677 Patent,

2    Samsung's Galaxy S II (i9100) has a flat, translucent, black-colored, rectangular front surface

3    with evenly curved corners.  In both the D'678 Patent and the Galaxy S II (i9100), the translucent

4    surface extends across the front surface to the perimeter, which is also substantially free of added

5    adornment.  Moreover, both the patented D'677 design and the Galaxy S II (i9100) have a

6    rectangular display screen centered on the front surface that leaves very narrow borders on either

7    side of the display screen and wide borders above and below the display screen.  Both the

8    patented D'677 design and the Galaxy S II (i9100) also have a horizontal lozenge-shaped speaker

9    slot horizontally centered on the front surface above the display screen.

10           246.    The Apple iPhone (original), iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S and

11    Samsung's Galaxy S II (i9100) also share these design elements, creating substantially similar

12    overall impressions.

13           247.    Some minor differences exist between the Galaxy S II (i9100) and the patented

14    D'677 design.  For instance, the radius of curvature is slightly smaller on the corners of the

15    Galaxy S II (i9100); the Galaxy S II (i9100)'s lozenge-shaped speaker slot is slightly longer and

16    thinner; and the Galaxy S II (i9100) has a small camera aperture in the upper left corner of the

17    front surface.

18           248.    The minor differences between the design of the Galaxy S II (i9100) and the

19    design of the D'677 Patent are details that are insufficient to differentiate the overall impression

20    given by the Galaxy S II (i9100) from that given by the claimed design of the D'677 Patent.  An

21    ordinary observer's overall impression is created by the design as a whole; for the ordinary

22    observer, changes in details that are clearly subordinate to the primary visual elements are

23    insufficient to alter that overall impression.

24           249.    In my opinion, the Galaxy S II (i9100) design is substantially the same as the

25    D'677 design and embodies that patented design.  It is similarly my opinion that an ordinary

26    observer would also find the Galaxy S II (i9100) design to be substantially the same as the

27    patented D'677 design.

28

XIII.  **SAMSUNG INFRINGES THE D'270 PATENT**

A.      **Identification of Infringing Products**

250.    It is my opinion that the Samsung Galaxy S i9000, Galaxy S 4G, and Vibrant, (collectively, the Samsung D'270 Accused Products) infringes the D'270 Patent.

251.    In forming this opinion, I reviewed the prosecution history of the D'270 Patent and analyzed and familiarized myself with the prior art cited therein.  I have also analyzed and familiarized myself with the relevant portions of the prior art references Samsung cited in its December 19, 2011 Response to Interrogatory No. 12 and the relevant portions of prior art references Samsung cited in its August 22, 2011 Opposition to Apple's Motion for a Preliminary Injunction.  I have also analyzed and familiarized myself with the relevant portions of the prior art references identified in Itay Sherman's August 22, 2011 Declaration in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction.[65]

252.    To determine whether each of the Samsung D'270 Accused Products infringes the D'270 Patent, I compared Figures 1-9 of the D'270 Patent with analogous views of the corresponding portions of the Samsung D'270 Accused Products.  As shown below, the Apple iPod touch embodies the claim of the D'270 Patent.  Accordingly, I also compared views of the Apple iPod touch that correspond to Figures 1-9 of the D'270 Patent with analogous views of the corresponding portions of the Samsung D'270 Accused Products.[66]

B.      **Comparison of the Prior Art**

253.    As part of my infringement analysis, I considered the similarities and differences between the claimed design of the D'270 Patent, the Samsung D'270 Accused Products, and certain purported prior art references cited by Samsung.

_____

[65] I reserve the right to address any other prior art references that Samsung identifies.

[66] To ensure accuracy, my comparisons involving the Accused Products and the Apple products were done using actual devices rather than pictures of the Accused Products or Apple products.  I reserve the right to rely on the actual devices for purposes of trial testimony.

1    254.    This comparison benefitted my analysis by highlighting that none of the cited prior

2    art comes close to the design disclosed in the D'270 Patent.  The prior art drawn to my attention

3    includes the following:

4    •    **JP 1241638** (the JP'638 Design) (Exhibit 31).

5    •    **JP 1241383** (the JP'383 Design) (Exhibit 32).

6    •    **JP 1009317** (the JP'317 Design) (Exhibit 33).

7    255.    The clear differences between the D'270 Patent and the prior art underscore my

8    view that the Samsung D'270 Accused Products infringe the D'270 Patent.  To that end, I have

9    conducted a three-way analysis of the prior art, the D'270 Patent, and the Samsung D'270

10   Accused Products.  Both the D'270 Patent and the Samsung D'270 Accused Products depart

11   conspicuously from the prior art designs with respect to the same relevant features.  Put another

12   way, the Samsung D'270 Accused Products are substantially similar to the D'270 Patent's design,

13   but are very different from the prior art.  Comparison charts depicting the three-way analysis are

14   shown below.

15   256.    **JP'638 Patent**.  Unlike the D'270 Patent and the Samsung D'270 Accused

16   Products, the front face of the design disclosed in the JP'638 Patent is neither flat nor fully clear.

17   In fact, as shown in the pictures below, the front surface of the JP'638 Patent is significantly

18   cambered and the screen is surrounded by opaque borders.  Unlike a thin, continuous,

19   substantially uniform, and angled bezel like the D'270, the JP'638 has a thick bezel that forms a

20   part of the front enclosure of the phone that tapers near the top and bottom of the device.  The

21   JP'638 device is also much thicker in profile and its sides appear flat, which gives the device a

22   boxy appearance unlike the design disclosed in the D'270 Patent.  The visual impressions of the

23   Samsung D'270 Accused Products are much closer to the D'270 Patent than is the visual

24   impression of the JP'638 Patent.

25

26

27

28

| JP'638 Patent | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>FIG. 1 |  |
|  | <br>FIG. 3 |  |
|  | <br>FIG. 4 |  |
|  | <br>FIG. 5     FIG. 6 |  |

| JP'638 Patent | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  |  FIG. 7 <br>  FIG. 8 |  <br>  |
|  |  FIG. 9 |  |

257. **JP'383 Design**. The JP'383 Design is significantly different from both the design disclosed in the D'270 Patent and the Samsung D'270 Accused Products. The JP'383 reference includes a number of confusing and inconsistent drawings purportedly disclosing an electronic device inside a translucent cover. Due to the overlapping lines introduced by this design, and apparent contradictions within different figures, an ordinary observer would not be able to ascertain a single design from the JP'383 figures that is visually similar to the D'270 design. For instance, the JP'383 Design does not appear to disclose a thin bezel surrounding the front surface of the phone. In some views, one can ascertain a line around the front surface that may denote a bezel element. In other views, however, this demarcation line disappears, leaving the ordinary observer unclear as to whether a bezel is part of the design or not. Regardless, the JP'383 figures do not disclose a thin, continuous and angled bezel like that of the D'270 design.

258. There also does not appear to be thin borders on the lateral sides of the JP'383 display screen. From the perspective views of the JP'383 design, it is clear that the screen effectively cuts the front surface in two portions, and that no narrow border is left on the lateral edges of the display. The JP'383 Design is also much thicker, which gives the device a boxy

appearance unlike the design disclosed in the D'270 Patent.  The visual impressions of the
Samsung D'270 Accused Products are much closer to the D'270 Patent than is the visual
impression of the JP'383 Design.

| JP'383 Design | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>FIG. 1 |  |
|  | <br>FIG. 3 |  |
|  | <br>FIG. 4 |  |

| JP'383 Design | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  |  FIG. 5    FIG. 6 |  |
|  |  FIG. 7 <br>  FIG. 8 |  |
|  |  FIG. 9 |  |

259.  **JP'317 Design**.  The JP'317 Design is significantly different from both the design disclosed in the D'270 Patent and the Samsung D'270 Accused Products.  For instance, the JP'317 Design does not have a centered display screen with balanced borders above and below the screen.  The JP'317 Design is also entirely lacking a bezel surrounding the front surface.  The JP'638 device is much thicker and its sides appear flat, which gives the device a boxy appearance unlike the design disclosed in the D'270 Patent.  The visual impressions of the Samsung D'270 Accused Products are much closer to the D'270 Patent than is the visual impression of the JP'317 Design.

| JP'317 Design | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>FIG. 3 |  |
|  | <br>FIG. 4 |  |
|  | <br>FIG. 5    FIG. 6 |  |
|  | <br>FIG. 7<br><br>FIG. 8 |  |

| JP'317 Design | D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|---|
|  | <br>**FIG. 9** |  |

260.    Informed by my consideration of the prior art, and my conclusion that the prior art does not come close to the D'270 Patent, I proceed to conduct an infringement analysis of the D'270 Patent against the Samsung D'270 Accused Products, as set out below.

**C.    Samsung's Galaxy S i9000 Infringes the D'270 Patent**

| D'270 Patent Claim | Apple iPod touch | Samsung Galaxy S i9000 |
|---|---|---|
| <br>**FIG. 1** |  |  |
| <br>**FIG. 2** |  |  |

| D'270 Patent Claim | Apple iPod touch | Samsung Galaxy S i9000 |
|---|---|---|
| <br>FIG. 3 |  |  |
| <br>FIG. 4 |  |  |
| <br>FIG. 5    FIG. 6 |  |  |
| <br>FIG. 7<br><br>FIG. 8 |  |  |

| D'270 Patent Claim | Apple iPod touch | Samsung Galaxy S i9000 |
|---|---|---|
| FIG. 9 |  |  |

261.    The design elements depicted in the D'270 Patent are present in the corresponding portions of the design of Samsung's Galaxy S i9000.  For instance, both the D'270 Patent and the Galaxy S i9000 have the same overall shape and proportion in the front, back, and profile views. Just like the D'270 Patent, Samsung's Galaxy S i9000 has a flat, clear, rectangular front surface with curved corners.  In both the D'270 Patent and the Galaxy S i9000, the clear surface extends across the front surface to the perimeter, which is also substantially free of added adornment. Both the patented D'270 design and the Galaxy S i9000 have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide, balanced borders above and below the display screen.  Moreover, both the D'270 design and the Galaxy S i9000 have an angled bezel surrounding the front surface that is continuous and substantially uniform in appearance from the front view.

262.    The Apple iPod touch and Galaxy S i9000 also share these design elements, creating substantially similar overall impressions.

263.    Some minor differences exist between the Galaxy S i9000 and the patented D'270 design.  For instance, the bottom of the Galaxy S i9000 has a slightly raised bump when viewed in profile.  The Galaxy S i9000 has a camera feature in the upper left corner of its back surface rather than the antenna window shown in the D'270 patent.  The Galaxy S i9000 does not have a slightly dipped flange portion at the bottom side of its bezel.  The Galaxy S i9000's bezel is slightly tapered at the top portion and slightly thicker at the bottom portion.  And the Galaxy S i9000 has four small graphical icons near the bottom of its front surface.

1

264.    The minor differences between the design of the Galaxy S i9000 and the design of

2  the D'270 Patent are details that are insufficient to differentiate the overall impression given by

3  the Galaxy S i9000 from that given by the claimed design of the D'270 Patent.  An ordinary

4  observer's overall impression is created by the design as a whole; for the ordinary observer,

5  changes in details that are clearly subordinate to the primary visual elements are insufficient to

6  alter that overall impression.

7      265.    In my opinion, the Galaxy S i9000 design is substantially the same as the D'270

8  design and embodies that patented design.  It is similarly my opinion that an ordinary observer

9  would also find the Galaxy S i9000 design to be substantially the same as the patented D'270

10  design.

11      **D.    Samsung's Galaxy S 4G Infringes the D'270 Patent**

| D'270 Patent Claim | Apple iPod touch | Samsung Galaxy S 4G |
|---|---|---|
| <br>FIG. 1 |  |  |
| <br>FIG. 2 |  |  |

| D'270 Patent Claim | Apple iPod touch | Samsung Galaxy S 4G |
|---|---|---|
| FIG. 3 | | |
| FIG. 4 | | |
| FIG. 5   FIG. 6 | | |
| FIG. 7 / FIG. 8 | | |

| D'270 Patent Claim | Apple iPod touch | Samsung Galaxy S 4G |
|---|---|---|
|   FIG. 9 |  |  |

266.    The design elements depicted in the D'270 Patent are present in the corresponding portions of the design of Samsung's Galaxy S 4G.  For instance, both the D'270 Patent and the Galaxy S 4G have the same overall shape and proportion in the front, back, and profile views.  Just like the D'270 Patent, Samsung's Galaxy S 4G has a flat, clear, rectangular front surface with curved corners.  In both the D'270 Patent and the Galaxy S 4G, the clear surface extends across the front surface to the perimeter, which is also substantially free of added adornment.  Both the patented D'270 design and the Galaxy S 4G have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide, balanced borders above and below the display screen.  Moreover, both the D'270 design and the Galaxy S 4G have an angled bezel surrounding the front surface that is continuous and substantially uniform in appearance.

267.    The Apple iPod touch and Galaxy S 4G also share these design elements, creating substantially similar overall impressions.

268.    Some minor differences exist between the Galaxy S 4G and the patented D'270 design.  For instance, the bottom of the Galaxy S 4G has a slightly raised bump when viewed in profile.  The Galaxy S 4G has a camera feature in the upper left corner of its back surface rather than the antenna window shown in the D'270 patent.  The Galaxy S 4G does not have a slightly dipped flange portion at the bottom side of its bezel.  The Galaxy S 4G's bezel is slightly tapered at the top portion and slightly thicker at the bottom portion.  And the Galaxy S 4G has four small graphical icons near the bottom of its front surface.

269.     The minor differences between the design of the Galaxy S 4G and the design of the D'270 Patent are details that are insufficient to differentiate the overall impression given by the Galaxy S 4G from that given by the claimed design of the D'270 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

270.     In my opinion, the Galaxy S 4G design is substantially the same as the D'270 design and embodies that patented design.  It is similarly my opinion that an ordinary observer would also find the Galaxy S 4G design to be substantially the same as the patented D'270 design.

**E.     Samsung's Vibrant Infringes the D'270 Patent**

| D'270 Patent Claim | Apple iPod touch | Samsung Vibrant |
|---|---|---|
|   FIG. 1 |  |  |
|   FIG. 2 |  |  |

| D'270 Patent Claim | Apple iPod touch | Samsung Vibrant |
|---|---|---|
| <br>FIG. 3 |  |  |
| <br>FIG. 4 |  |  |
| <br>FIG. 5     FIG. 6 |  |  |
| <br>FIG. 7<br><br>FIG. 8 |  |  |

| D'270 Patent Claim | Apple iPod touch | Samsung Vibrant |
|---|---|---|
|  FIG. 9 |  |  |

271.    The design elements depicted in the D'270 Patent are present in the corresponding portions of the design of Samsung's Vibrant.  For instance, both the D'270 Patent and the Vibrant have the same overall shape and proportion in the front, back, and profile views.  Just like the D'270 Patent, Samsung's Vibrant has a flat, clear, rectangular front surface with curved corners. In both the D'270 Patent and the Vibrant, the clear surface extends across the front surface to the perimeter, which is also substantially free of added adornment.  Both the patented D'270 design and the Vibrant have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide, balanced borders above and below the display screen.  Moreover, both the D'270 design and the Vibrant have an angled bezel surrounding the front surface that is continuous and substantially uniform in appearance.

272.    The Apple iPod touch and Vibrant also share these design elements, creating substantially similar overall impressions.

273.    Some minor differences exist between the Vibrant and the patented D'270 design. For instance, the bottom of the Vibrant has a slightly raised bump when viewed in profile.  The Vibrant has a camera feature in the upper left corner of its back surface rather than the antenna window shown in the D'270 patent.  The Vibrant does not have a slightly dipped flange portion at the bottom side of its bezel.  The Vibrant's bezel is slightly tapered at the top portion and slightly thicker at the bottom portion.  And the Vibrant has four small graphical icons near the bottom of its front surface.

1    274.    The minor differences between the design of the Vibrant and the design of the

2    D'270 Patent are details that are insufficient to differentiate the overall impression given by the

3    Vibrant from that given by the claimed design of the D'270 Patent.  An ordinary observer's

4    overall impression is created by the design as a whole; for the ordinary observer, changes in

5    details that are clearly subordinate to the primary visual elements are insufficient to alter that

6    overall impression.

7    275.    In my opinion, the Vibrant design is substantially the same as the D'270 design

8    and embodies that patented design.  It is similarly my opinion that an ordinary observer would

9    also find the Vibrant design to be substantially the same as the patented D'270 design.

10   **XIV.   APPLE PRACTICES THE CLAIM OF THE D'889 PATENT**

11   276.    It is my opinion that the iPad 2 practices the claim of the D'889 Patent.

12   277.    In forming this opinion, I reviewed the prosecution history of the D'889 Patent and

13   analyzed and familiarized myself with the prior art cited therein.

14   278.    To determine whether the iPad 2 practices the D'889 Patent, I compared Figures

15   1–8 of the D'889 Patent with corresponding views of the iPad 2.[67]

| D'889 Patent Claim | Apple iPad 2 |
|---|---|
|  FIG. 1 |  |
|  FIG. 2 |  |

[67] To ensure accuracy, my comparisons involving the Apple Products were done using actual devices rather than pictures of the Apple Products.  I reserve the right to rely on the actual phones for purposes of trial testimony.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
115

| D'889 Patent Claim | Apple iPad 2 |
|---|---|
|  FIG. 3 |  |
|  FIG. 4 |  |
|  FIG. 5 <br> FIG. 6 |  |
|  FIG. 7 <br> FIG. 8 |  |

279.    The elements depicted in the D'889 Patent are present in the corresponding portions of the design of Apple's iPad 2.  For instance, both the D'889 Patent and the iPad 2 have the same overall shape that is symmetrical both vertically and horizontally with four evenly rounded corners.  Just like the D'889 Patent, the iPad 2 has a flat, clear front surface surrounded by a thin rim.  In both the D'889 Patent and the iPad 2, the clear surface extends across to the perimeter of the front surface, which is substantially free of added adornment.  Moreover, both the patented D'889 design and the iPad 2 have a rectangular display screen bordered by a mask centered behind the clear front surface.  Both the patented D'889 design and the iPad 2 have a substantially flat back that curves upwards at the side to meet the front plane at an edge.  Also, both the patented D'889 design and the iPad 2 have a thin profile.

280.     Some minor differences exist between the iPad 2 and the patented D'889 design. For instance, the side profile of the iPad 2 is not quite as vertical as the side profile in the D'889 design; and the iPad 2 is slightly thinner than the D'889 design.

281.     These minor differences between the design of the iPad 2 and the design of the D'889 Patent are details that are insufficient to differentiate the overall impression given by the iPad 2 from that given by the claimed design of the D'889 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

282.     In my opinion, the iPad 2 design is substantially the same as the D'889 design and embodies that patented design.  It is similarly my opinion that an ordinary observer purchasing a smartphone would also find the iPad 2 design to be substantially the same as the patented D'889 design.

## XV.     APPLE PRACTICES THE CLAIM OF THE D'087 PATENT

283.     It is my opinion that the following Apple products practice the claim of the D'087 Patent: iPhone (original), iPhone 3G, and iPhone 3GS.

284.     In forming this opinion, I reviewed the prosecution history of the D'087 Patent and analyzed and familiarized myself with the prior art cited therein.

285.     To determine whether each of the Apple Products practices the D'087 Patent, I compared Figures 5-9, 11, 17 & 19 of the D'087 Patent with corresponding views of each of the Apple Products.

1

**A.**    **Apple's iPhone (Original) Practices the Claim of the D'087 Patent**

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) |
|---|---|
|   FIG. 9    FIG. 17 |  |
|   FIG. 11    FIG. 19 |  |
|   FIG. 7    FIG. 8 |  |

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone (original) |
|---|---|
|  FIG. 5 |  |
|  FIG. 6 |  |

286.    The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Apple's iPhone (original).  For instance, both the design depicted in the D'087 Patent and the corresponding portions of the design of Apple's iPhone (original) have the same overall shape and proportion.  Just like the D'087 Patent, the iPhone (original) includes a flat, clear, rectangular front surface with evenly curved corners.  This clear surface extends across the front surface to the perimeter of the iPhone (original) and the patented D'087 design.  The front surface is substantially free of added adornment.  Moreover, both the iPhone (original) and the patented D'087 design have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and substantial borders above and below the display screen.  The patented D'087 design and the iPhone (original) also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.  The iPhone (original) and the patented D'087 design have a thin continuous bezel encircling the rectangular front surface.

287.    I am unable to discern differences between the iPhone (original) design and the design depicted in the D'087 Patent.

288.    In my opinion, the iPhone (original) design is substantially the same as the D'087 design and embodies that patented design.  It is similarly my opinion that an ordinary observer purchasing a smartphone would also find the iPhone (original) design to be substantially the same as the patented D'087 design.

**B.    Apple's iPhone 3G Practices the Claim of the D'087 Patent**

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone 3G |
|---|---|
|   FIG. 9    FIG. 17 |  |
|   FIG. 11        FIG. 19 |  |
|   FIG. 7    FIG. 8 |  |

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone 3G |
|---|---|
|  FIG. 5 |  |
|  FIG. 6 |  |

289.    The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Apple's iPhone 3G.  For instance, both the design depicted in the D'087 Patent and the corresponding portions of the design of Apple's iPhone 3G have the same overall shape and proportion.  Just like the D'087 Patent, the iPhone 3G includes a flat, clear, rectangular front surface with evenly curved corners.  This clear surface extends across the front surface to the perimeter of the iPhone 3G and the patented D'087 design.  The front surface is substantially free of added adornment.  Moreover, both the iPhone 3G and the patented D'087 design have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and substantial borders above and below the display screen.  The patented D'087 design and the iPhone 3G also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.  The iPhone 3G and the patented D'087 design have a thin continuous bezel encircling the rectangular front surface.

290.    The only difference between the iPhone 3G and the patented design is that the area to the left and right of the display screen is slightly wider on the iPhone 3G.

291.    This minor difference between the design of the iPhone 3G and the design of the D'087 Patent is a detail that is insufficient to differentiate the overall impression given by the iPhone 3G from that given by the claimed design of the D'087 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

292.    In my opinion, the iPhone 3G design is substantially the same as the D'087 design and embodies that patented design.  It is similarly my opinion that an ordinary observer purchasing a smartphone would also find the iPhone 3G design to be substantially the same as the patented D'087 design.

**C.**     **Apple's iPhone 3GS Practices the Claim of the D'087 Patent**

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone 3GS |
|---|---|
| <br>FIG. 9<br><br><br>FIG. 17 |  |
| <br>FIG. 11            FIG. 19 |  |

| D'087 Patent Claim (Selected Embodiments) | Apple iPhone 3GS |
|---|---|
|  FIG. 7    FIG. 8 |  |
|  FIG. 5   FIG. 6 |   |

293.     The design elements depicted in the D'087 Patent are present in the corresponding portions of the design of Apple's iPhone 3GS.  For instance, both the design depicted in the D'087 Patent and the corresponding portions of the design of Apple's iPhone 3GS have the same overall shape and proportion.  Just like the D'087 Patent, the iPhone 3GS includes a flat, clear, rectangular front surface with evenly curved corners.  This clear surface extends across the front surface to the perimeter of the iPhone 3GS and the patented D'087 design.  The front surface is substantially free of added adornment.  Moreover, both the iPhone 3G and the patented D'087 design have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and substantial borders above and below the display screen.  The patented D'087 design and the iPhone 3GS also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.  The iPhone 3GS and the patented D'087 design have a thin continuous bezel encircling the rectangular front surface.

1    294.    The only difference between the iPhone 3G and the patented design is that the area

2    to the left and right of the display screen is slightly wider on the iPhone 3GS.

3    295.    This minor difference between the design of the iPhone 3GS and the design of the

4    D'087 Patent is a detail that is insufficient to differentiate the overall impression given by the

5    iPhone 3GS from that given by the claimed design of the D'087 Patent.  An ordinary observer's

6    overall impression is created by the design as a whole; for the ordinary observer, changes in

7    details that are clearly subordinate to the primary visual elements are insufficient to alter that

8    overall impression.

9    296.    In my opinion, the iPhone 3GS design is substantially the same as the D'087

10   design and embodies that patented design.  It is similarly my opinion that an ordinary observer

11   purchasing a smartphone would also find the iPhone 3GS design to be substantially the same as

12   the patented D'087 design.

13   **XVI.   APPLE PRACTICES THE CLAIM OF THE D'677 PATENT**

14   297.    It is my opinion that the following Apple products practice the claim of the D'677

15   Patent: iPhone (original), iPhone 3G, iPhone 3GS, and iPhone 4.

16   298.    In forming this opinion, I reviewed the prosecution history of the D'677 Patent and

17   analyzed and familiarized myself with the prior art cited therein.

18   299.    To determine whether each of the Apple Products practices the D'677 Patent, I

19   compared Figures 1, 3 & 5-8 of the D'677 Patent with corresponding views of each of the Apple

20   Products.

21   **B.     Apple's iPhone (Original) Practices the Claim of the D'677 Patent**



| D'677 Patent Claim | Apple iPhone (original) |
|---|---|



FIG. 1

| D'677 Patent Claim | Apple iPhone (original) |
|---|---|
|  *FIG. 3* |  |
|  *FIG. 7*     *FIG. 8* |  |
|  *FIG. 5* <br>  *FIG. 6* |  <br>  |

300.    The design elements depicted in the D'677 Patent are present in the corresponding

portions of the design of Apple's iPhone (original).  For instance, both the design depicted in the

D'677 Patent and the corresponding portions of the design of Apple's iPhone (original) have the

same overall shape and proportion.  Just like the D'677 Patent, the iPhone (original) includes a

flat, black, clear, rectangular front surface with evenly curved corners.  This clear black surface

extends across the front surface to the perimeter of the iPhone (original) and the patented D'677

design.  The front surface is substantially free of added adornment.  Moreover, both the iPhone

(original) and the patented D'677 design have a rectangular display screen centered on the front

1  surface that leaves very narrow borders on either side of the display screen and substantial

2  borders above and below the display screen.  The patented D'677 design and the iPhone (original)

3  also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface

4  above the display screen.

5      301.    I am unable to discern differences between the iPhone (original) design and the

6  design depicted in the D'677 Patent.

7      302.    In my opinion, the iPhone (original) design is substantially the same as the D'677

8  design and embodies that patented design.  It is similarly my opinion that an ordinary observer

9  purchasing a smartphone would also find the iPhone (original) design to be substantially the same

10  as the patented D'677 design.

11      **C.**      **Apple's iPhone 3G Practices the Claim of the D'677 Patent**

| D'677 Patent Claim | Apple iPhone 3G |
|---|---|
|  FIG. 1 |  |
|  FIG. 3 |  |

| **D'677 Patent Claim** | **Apple iPhone 3G** |
|---|---|
|  FIG. 7   FIG. 8 |  |
|  FIG. 5 <br>  FIG. 6 |  <br>  |

303.    The design elements depicted in the D'677 Patent are also present in the corresponding portions of the design of Apple's iPhone 3G.  For instance, both the design depicted in the D'677 Patent and the corresponding portions of the design of Apple's iPhone 3G have the same overall shape and proportion.  Just like the D'677 Patent, the iPhone 3G includes a flat, black, clear, rectangular front surface with evenly curved corners.  This clear black surface extends across the front surface to the perimeter of the iPhone 3G and the patented D'677 design. The front surface is substantially free of added adornment.  Moreover, both the iPhone 3G and the patented D'677 design have an inset rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and substantial borders above and below the display screen.  The patented D'677 design and the iPhone 3G also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.

304.    The only difference between the iPhone 3G and the patented design is that the area to the left and right of the display screen is slightly wider on the iPhone 3G.

305.    This minor difference between the design of the iPhone 3G and the design of the D'677 Patent is a detail that is insufficient to differentiate the overall impression given by the

1   iPhone 3G from that given by the claimed design of the D'677 Patent.  An ordinary observer's

2   overall impression is created by the design as a whole; for the ordinary observer, changes in

3   details that are clearly subordinate to the primary visual elements are insufficient to alter that

4   overall impression.

5          306.    In my opinion, the iPhone 3G design is substantially the same as the D'677 design

6   and embodies that patented design.  It is similarly my opinion that an ordinary observer

7   purchasing a smartphone would also find the iPhone 3G design to be substantially the same as the

8   patented D'677 design.

9          **D.     Apple's iPhone 3GS Practices the Claim of the D'677 Patent**

| D'677 Patent Claim | Apple iPhone 3GS |
|---|---|
| <br>FIG. 1 |  |
| <br>FIG. 3 |  |
| <br>FIG. 7      FIG. 8 |  |

| D'677 Patent Claim | Apple iPhone 3GS |
|---|---|
| <br>FIG. 5<br><br><br>FIG. 6 | <br><br> |

307.    The design elements depicted in the D'677 Patent are also present in the corresponding portions of the design of Apple's iPhone 3GS.  For instance, both the design depicted in the D'677 Patent and the corresponding portions of the design of Apple's iPhone 3GS have the same overall shape and proportion.  Just like the D'677 Patent, the iPhone 3GS includes a flat, black, clear, rectangular front surface with evenly curved corners.  This clear black surface extends across the front surface to the perimeter of the iPhone 3GS and the patented D'677 design.  The front surface is substantially free of added adornment.  Moreover, both the iPhone 3GS and the patented D'677 design have an inset rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and substantial borders above and below the display screen.  The patented D'677 design and the iPhone 3GS also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.

308.    The only difference between the iPhone 3GS and the patented design is that the area to the left and right of the display screen is slightly wider on the iPhone 3GS.

309.    This minor difference between the design of the iPhone 3GS and the design of the D'677 Patent is a detail that is insufficient to differentiate the overall impression given by the iPhone 3GS from that given by the claimed design of the D'677 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

310.     In my opinion, the iPhone 3GS design is substantially the same as the D'677 design and embodies that patented design.  It is similarly my opinion that an ordinary observer purchasing a smartphone would also find the iPhone 3GS design to be substantially the same as the patented D'677 design.

E.     **Apple's iPhone 4 (and iPhone 4S) Practices the Claim of the D'677 Patent**

| D'677 Patent Claim | Apple iPhone 4 |
|---|---|
|  FIG. 1 |  |
|  FIG. 3 |  |
|  FIG. 7     FIG. 8 |  |



| D'677 Patent Claim | Apple iPhone 4 |
|---|---|

311.    The design elements depicted in the D'677 Patent are also present in the corresponding portions of the design of Apple's iPhone 4.  For instance, both the design depicted in the D'677 Patent and the corresponding portions of the design of Apple's iPhone 4 have the same overall shape and proportion.  Just like the D'677 Patent, the iPhone 4 includes a flat, black, clear, rectangular front surface with evenly curved corners.  This clear black surface extends across the front surface to the perimeter of the iPhone 4 and the patented D'677 design.  The front surface is substantially free of added adornment.  Moreover, both the iPhone 4 and the patented D'677 design have an inset rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and substantial borders above and below the display screen.  The patented D'677 design and the iPhone 4 also have a horizontal lozenge-shaped speaker slot horizontally centered on the front surface above the display screen.

312.    Some minor differences exist between the iPhone 4 and the patented D'677 design. For instance, the area to the left and right of the display screen is slightly wider on the iPhone 4; the iPhone 4 has a slightly thinner speaker slot; and the iPhone 4 has a small camera aperture to the left of the speaker slot.

313.    The minor differences between the design of the iPhone 4 and the design of the D'677 Patent are details that are insufficient to differentiate the overall impression given by the iPhone 4 from that given by the claimed design of the D'677 Patent.  An ordinary observer's overall impression is created by the design as a whole; for the ordinary observer, changes in details that are clearly subordinate to the primary visual elements are insufficient to alter that overall impression.

314.    The industrial design of the iPhone 4S is substantially the same as the iPhone 4.

315.    In my opinion, the iPhone 4 and iPhone 4S designs are substantially the same as the D'677 design and embodies that patented design.  It is similarly my opinion that an ordinary observer purchasing a smartphone would also find the iPhone 4 and iPhone 4S design to be substantially the same as the patented D'677 design.

## XVII.  APPLE PRACTICES THE CLAIM OF THE D'270 PATENT

316.    It is my opinion that the iPod touch practices the claim of the D'270 Patent.

317.    In forming this opinion, I reviewed the prosecution history of the D'270 Patent and analyzed and familiarized myself with the prior art cited therein.

318.    To determine whether the iPod touch practices the D'270 Patent, I compared Figures 1–9 of the D'270 Patent with corresponding views of each of the iPod touch.

| D'270 Patent Claim | Apple iPod touch |
|---|---|
|  FIG. 1 |  |
|  FIG. 2 |  |

| D'270 Patent Claim | Apple iPod touch |
|---|---|
|  FIG. 3 |  |
|  FIG. 4 |  |
|  FIG. 5    FIG. 6 |  |
|  FIG. 7  FIG. 8 |   |

| D'270 Patent Claim | Apple iPod touch |
|---|---|
|  FIG. 9 |  |

319.    The design elements depicted in the D'270 Patent are present in the corresponding portions of the design of Apple's iPod touch.

320.    The design elements depicted in the D'270 Patent are present in the corresponding portions of the design of Apple's iPod touch.  For instance, both the D'270 Patent and the iPod touch have the same overall shape and proportion in the front, back, and profile views.  Just like the D'270 Patent, the iPod touch has a flat, clear, rectangular front surface with curved corners. In both the D'270 Patent and the iPod touch, the clear surface extends across the front surface to the perimeter, which is also substantially free of added adornment.  Both the patented D'270 design and the iPod touch have a rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and wide, balanced borders above and below the display screen.  Moreover, both the D'270 design and the iPod touch have an angled bezel surrounding the front surface that is continuous and substantially uniform in appearance.

321.    Other than the button below the display screen, I am unable to discern differences between the iPod touch design and the design depicted in the D'270 Patent.

322.    In my opinion, the iPod touch design is substantially the same as the D'270 design and embodies that patented design.  It is similarly my opinion that an ordinary observer purchasing a smartphone would also find the iPod touch design to be substantially the same as the patented D'270 design.

1    **XVIII. APPLE'S TRADE DRESS RELATED TO THE IPHONE IS NOT FUNCTIONAL**

2    323.    I understand that the trade dress at issue in this matter involves the distinctive

3    shape and appearance of certain Apple products.  In particular, the original iPhone trade dress

4    ("the Original iPhone Trade Dress") includes:

5    • a rectangular product with four evenly rounded corners;

6    • a flat clear surface covering the front of the product;

7    • the appearance of a metallic bezel around the flat clear surface;

8    • a display screen under the clear surface;

9    • under the clear surface, substantial black borders above and below the display

10   screen and narrower black borders on either side of the screen;

11   • when the device is on, a matrix of colorful square icons with evenly rounded

12   corners within the display screen; and

13   • when the device is on, a bottom dock of colorful square icons with evenly rounded

14   corners set off from the other icons on the display, which does not change as other pages of the

15   user interface are viewed.[68]

16   324.    The iPhone 3G trade dress includes all of the elements of the Original iPhone

17   Trade Dress, plus "when the device is on, a row of small dots on the display screen" (the "iPhone

18   3G Trade Dress").[69]  The iPhone 4 trade dress includes all of the elements of the Original iPhone

19   and the iPhone 3G trade dress except that it does not have a metallic bezel, but does have a thin

20   metallic band around the outside edge of the iPhone 4, which creates a thin rim adjacent to the

21   face of the phone (the "iPhone 4 Trade Dress").[70]  The iPhone 4's profile is also much flatter than

22   the previous versions of the iPhone.

23   325.    The iPhone trade dress (the "iPhone Trade Dress") includes the elements that are

24   common to all versions of the iPhone, namely:

25   

26   [68] Amended Complaint, ¶ 57.

27   [69] Amended Complaint, ¶¶ 35, 59–60.  The iPhone 3G trade dress also applies to iPhone 3GS.  *See*
     Amended Complaint, ¶ 35.

28   [70] Amended Complaint, ¶ 37, 61-62.

1 • a rectangular product with four evenly rounded corners;

2 • a flat clear surface covering the front of the product;

3 • a display screen under the clear surface;

4 • under the clear surface, substantial neutral (black and white) borders above and

5 below the display screen and narrower neutral borders on either side of the screen;

6 • when the device is on, a matrix of colorful square icons with evenly rounded

7 corners within the display screen; and

8 • when the device is on, a bottom dock of colorful square icons with evenly rounded

9 corners set off from the other icons on the display, which does not change as other pages of the

10 user interface are viewed.[71]

11 326. I have been asked to opine only on the functionality of the collection of trade dress

12 elements that are considered part of the industrial design, i.e., excluding the elements that

13 correspond to the matrix of icons and the bottom dock row of icons that appear when the phones

14 are turned on.



[71] Amended Complaint, ¶¶ 63–64.

331.    Further, numerous alternative designs to the industrial design embodied in the various iPhone Trade Dresses were and are commercially available.  These alternative designs depicted below are commercially available through multiple channels such as retail stores or online vendors such as Amazon.com and Bestbuy.com.  Because these alternative designs were

commercially released, they show that the design protected by each iPhone Trade Dress is not required for a smartphone and that multiple designs exist for a functioning smartphone.

332.    Indeed, the iPhone 4 is actually a very successful example of an alternative design to the iPhone 3G Trade Dress because the iPhone 4 lacks a bezel and includes a metallic band that forms the appearance of a thin rim around its edges.  Likewise, the iPhone 3G is an alternative design to the iPhone 4 Trade Dress.  The iPhone 4 demonstrates that the overall iPhone 3G Trade Dress is not essential to the function of a smartphone product and the iPhone 3G demonstrates that the overall iPhone 4 Trade Dress is not essential to the function of a smartphone product.

333.    There are numerous instances of third-party designs that work equally well for smartphones.  For instance, Sony Ericsson has released the Xperia Arc S smartphone, which is a much more square design alternative to the various iPhone Trade Dresses.  There is no appearance of a metallic bezel on the phone.  There is also no flat clear surface covering the front of the product.  The phone has three prominent metallic buttons arranged in an arc shape below the display screen.  Commentators have applauded the distinct Xperia Arc S alternative design:  it is "a stylish phone that's actually distinguishable from the mostly black oblongs we stare at each day."[75]  Others have praised that "it's still one of the slimmest, sexiest and all-round loveliest gadgets you can buy today."[76]

 

---

[75] Mat Smith, "Sony Ericsson Xperia Arc S Review," Engadget, Nov. 6, 2011, http://www.engadget.com/2011/11/06/sony-ericsson-xperia-arc-s-review/.

[76] TechRadar, "Sony Ericsson Xperia Arc S Review," Oct. 13, 2011, http://www.techradar.com/reviews/phones/mobile-phones/sony-ericsson-xperia-arc-s-1033402/review.

334.    Pantech has manufactured a smartphone called the Crossover that has "angled" rather than rounded corners.  Reviewers have praised that these "angled corners add visual interest"[77] to the phone's design and that the angled corners "actually make[] a huge difference, offering more places to easily grip the phone."[78]  Indeed, the Crossover "feel[s] like it naturally belongs nestled in the palm of [one's] hand."[79]  The Crossover has also been complimented for its "sporty and rugged look."[80]  There is also no flat clear surface covering the front of the product.  Also, the phone has distinctive trapezoidal arrangements above and below the display screen, distinguishing the phone from the industrial design elements of the various iPhone Trade Dresses.



335.    Nokia has manufactured the Nokia Lumia 800 phone, which is an alternative design to the industrial design aspects of each of the iPhone trade dress.  The Lumia 800 does not have a flat clear surface covering the front of the product; rather, the clear surface of the Lumia 800 is curved and does not cover the entire front of the product.[81]  Moreover, when viewed from the front, the Lumia 800 has squared corners rather than rounded corners and a blue frame surrounding the display screen.  The design of the Lumia 800 phone has been praised as "[i]t's

---

[77] CNET, "Pantech Crossover," http://reviews.cnet.com/smartphones/pantech-crossover-at-t/4505-6452_7-34813352.html#reviewPage1.

[78] Brad Molen, "Pantech Crossover Review," Engadget, June 7, 2011, http://mobile.engadget.com/2011/06/07/pantech-crossover-review/.

[79] Id.

[80] Id.

[81] Nokia, Nokia Lumia 800 Specifications, http://www.nokia.com/gb-en/products/phone/lumia800/specifications/.



natural and pleasant to the touch, with great ergonomics and weight balance — the diametric opposite of the cold and impersonal appearance of most modern technology."[82]  Others have commented that the Lumia 800 "is a dream to observe and handle, with its smooth curves fitting snugly to the hand."[83]



336.    Casio has manufactured the G'zOne Commando, which is an alternative design to the industrial design aspects of the various iPhone Trade Dresses.  Rather than a rectangular-shape with rounded corners, the Commando has a "diamond like shape" that includes a "hard rubber casing" that protects the phone.[84]  The rubber also provides a "better grip" on the phone.[85]  A reviewer has praised that "it's very comfortable to hold for long conversations."[86]  There is also no flat clear surface covering the front of the product.

---

[82] Vlad Savov, "Nokia Lumia 800 Review," The Verge, Nov. 3, 2011, http://www.theverge.com/2011/11/3/2534861/nokia-lumia-800-review

[83] TechRadar, "Nokia Lumia 800 Review," Mar. 8, 2012, http://www.techradar.com/reviews/phones/mobile-phones/nokia-lumia-800-1039101/review.

[84] CNET, "Casio G'zOne Commando," http://reviews.cnet.com/smartphones/casio-g-zone-commando/4505-6452_7-34660420.html#reviewPage1

[85] Armando Rodriguez, "Casio G'zOne Commando," PCWorld, May 2, 2011, http://www.pcworld.com/article/226883/casio_gzone_commando_review_a_super_durable_android_smartphone.html.

[86] Jamie Lendino, "Casio G'zOne Commando," PCMag, May 9, 2011, http://www.pcmag.com/article2/0,2817,2385020,00.asp.

1
2
3
4
5
6
7

 

8
9
10
11
12
13

337.    LG has manufactured the Optimus T phone, which does not have a flat clear surface covering the front of the product.  Instead, the phone has a large asymmetrical opaque frame on the front of the product surrounding the clear surface.  The bottom portion of the frame includes three buttons including a prominent gray button that protrudes into the clear surface. Reviewers have commented that the phone has a "stylish and comfortable design"[87] and "a nice comfortable feel in the hand."[88]

14
15
16
17
18
19

 

20
21
22
23

338.    Moreover, many of Samsung's own commercially released phones are themselves alternative designs to the iPhone Trade Dresses.  For instance, each of these Samsung phones[89] below differ from the industrial design aspects of the various iPhone Trade Dresses.

24
25
26
27
28

[87] Jamie Lendino, "LG Optimus T," PCMag, Nov. 23, 2010, http://www.pcmag.com/article2/0,2817,2373001,00.asp.

[88] CNET, "LG Optimus T," http://reviews.cnet.com/smartphones/lg-optimus-t-burgundy/4505-6452_7-34204892.html#reviewPage1.

[89] From left to right:  Samsung i8910 Omnia HD (released May 2009); Samsung M7600 Beat DJ (released May 2009); Samsung Sunburst SGH-A697 (released March 2010); Samsung Gravity Touch SGH-T669 (released June 2010); Samsung Gem SCH-I100 (released February 2011).  *See* Ex. 21.  These phones do not constitute an
(Footnote continues on next page.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Original iPhone          iPhone 3G          iPhone 4



339.    For example, Samsung's Sunburst, Beat DJ, Gravity Touch, and Gem phones

(bottom row below) do not have rounded corners; rather the entire top and bottom sides of these

phones are rounded at the top, unlike the design reflected in the iPhone Trade Dresses, which has

a flat side along the top.

(Footnote continued from previous page.)

exhaustive list of Samsung's alternative designs that may be relevant; they are merely representative of some
alternatives that Samsung has commercialized.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
142

1

2



3

4

  

5

6

7     340.    Moreover, Samsung's Sunburst, Omnia HD, Gravity Touch, and Gem phones do

8 not have a flat clear surface covering the front of the phone.  Instead, these phones have arrays of

9 opaque buttons on the bottom portion of the front of the phone.

10

   

11

12

13     341.    The fact that Samsung and other manufacturers have commercially released

14 phones with alternative designs suggests that Samsung could have successfully manufactured the

15 designs with equivalent functionality for the end user.  There are many alternative designs by

16 third-party competitors that serve equivalent functionality as the iPhone Trade Dresses.  The

17 alternative designs discussed in the foregoing are in no way comprehensive.  The smartphone

18 field is filled with alternative, commercially viable designs that illustrate the nonfunctionality of

19 the various iPhone Trade Dresses.  Other phone designs that illustrate alternative renderings of

20 individual design elements include HTC Touch Dual, T-Mobile My-Touch, Palm Treo 700p,

21 HTC 7 Trophy T8686, Sony Ericsson Xperia S, Pantech Hotshot CDM8992VW, Modu 1 and

22 associated jackets, Modu T and associated jackets, Modu W, and Nokia X5-01.  These designs

23 illustrate the vast array of design choices Samsung possessed with respect to every design

24 element of its phones and undercut any contention that utilitarian or functional considerations

25 dictated the iPhone Trade Dresses.  *See* Ex. 21.

26     342.    Furthermore, Samsung itself has applied for and received design patents on the

27 ornamental design for its smartphones – many of which feature relatively large screens suitable

28 for use as a touch screen.  Samsung's own design patents undercut any contention that

1  smartphone design (or more specifically, touch-screen smartphone design) is restricted by

2  function to the iPhone Trade Dresses.  For example, U.S. D555,131 to Samsung claims a phone

3  design with a large display screen.  But the D'131 design, as shown below, also has curved top

4  and bottom sides, angled corners, adornments on the front face, and numerous other differences

5  from the various iPhone Trade Dresses.

6

7

8

9

10

11

12

13  343.    Other Samsung design patents similarly illustrate the design alternatives available

14  to Samsung for every feature of a phone, including U.S. Patent Nos. D561,156, D616,857,

15  D561,155, D562,794, D624,046, D616,856, and D629,780.

16  344.    Additionally, it is my understanding that Samsung considered alternative designs

17  that were different from the final commercially released designs of its phones.  Such alternative

18  designs are depicted in Exhibits 22-23.  These alternatives illustrate, for example:  a curved, clear

19  material on the front surface of the phone (for example, Ex. 22, Samsung model production No.

20  38); a display screen that is not centered on the front surface of the phone (*Id.*); a drastically non-

21  uniform and stylized bezel (*Id.*); and a front surface that is not entirely covered with a clear

22  material (Ex. 23, Samsung model production No. 9.6.3).  Indeed, Samsung documents show that

23  Samsung considered many alternative phone designs that did not look anything like the iPhone.

24  *See, e.g.,* SAMNDCA10105070-124; SAMNDCA10131459-568; SAMNDCA10202827-874;

25  SAMNDCA10808682-912.

26  345.    Moreover, Samsung witnesses testified that there were many alternative designs

27  available to them.  *See, e.g.,* Feb 8. , 2012 H.G. Song Dep. at 79:22-80:4; Feb. 2, 2012 J.S. Kim

28  Dep. at 29:3-18; 39:2-11; Feb. 2. 2012 J.M. Yeo Dep. at 14:3-16:6; Feb. 16, 2012 G.Y. Lee Dep.

1   at 31:21-32:7; 48:2-7.  These internal Samsung alternative designs belie any suggestion that the

2   various iPhone Trade Dresses are functional.

3        346.    Furthermore, Samsung witnesses testified that the design of certain of its accused

4   phones was based on aesthetic reasons.  *See, e.g.*, Sep. 21, 2011 Denison Dep. at 135:18-136:10;

5   Jan. 11, 2012 B.R. Kim Dep. at 88:12-90:14.

6        347.    Based on the above, I conclude that there is no utilitarian advantage to the

7   industrial design aspects of the various iPhone Trade Dresses as opposed to alternative designs.

8   There are also many alternative designs with functionality equal to the iPhone Trade Dresses.

9   ████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████

11  ███████████████████████████████   I am also unaware of any advertising that touts the utilitarian

12  advantages of the industrial design aspects of the various iPhone Trade Dresses.

13       348.    In light of these factors, which I understand are the factors that courts consider in

14  determining whether trade dress is functional, I conclude that the industrial design aspects of the

15  various iPhone Trade Dresses are not functional.  Given that the industrial design elements of the

16  iPhone Trade Dresses are not functional as a whole, I have no reason to believe that adding a

17  matrix of colorful icons and a bottom dock of stationary icons would render the overall design

18  essential to the function of the products at issue.

19  **XIX.    APPLE'S TRADE DRESS RELATED TO THE IPAD IS NOT FUNCTIONAL**

20       349.    The iPad trade dress includes:

21      •    a rectangular product with four evenly rounded corners;

22      •    a flat clear surface covering the front of the product;

23      •    the appearance of a metallic rim around the flat clear surface;

24      •    a large display screen under the clear surface;

25      •    under the clear surface, substantial neutral (black or white) borders on all sides of

26  the display screen; and

27

28

1     •      when the device is on, a matrix of colorful square icons with evenly rounded

2   corners within the display screen.[90]

3        350.    The iPad 2 Trade Dress at issue includes all of the elements of the iPad Trade

4   Dress.[91]  For this reason, my analysis will focus solely on the iPad Trade Dress.

5        351.    As for the iPhone, I have been asked to opine only on the functionality of the

6   collection of iPad Trade Dress elements that are considered part of the industrial design, i.e.,

7   excluding the elements that correspond to the matrix of icons and the bottom dock row of icons

8   that appear when the phones are turned on.



26

27        [90] Amended Complaint, ¶¶ 65–66.

28        [91] Amended Complaint, ¶¶ 65–68.

354.    Further, numerous alternative designs to the iPad Trade Dress were and are commercially available.  These alternative designs depicted below are commercially available through multiple channels such as retail stores or online vendors such as Amazon.com and Bestbuy.com.  Because these alternative designs were commercially released, they show that the design protected by the iPad Trade Dress is not required for a tablet, and that there are multiple designs for a functioning tablet.

355.    For instance, Barnes & Noble has manufactured the Nook tablet, which is another design alternative to the iPad Trade Dress.  Unlike the iPad Trade Dress, the Nook tablet does not have a flat clear surface covering the front of the product with a neutral border under the clear surface; rather, the Nook tablet has a gray opaque frame surrounding the display of the device, which may increase comfort of the device in hand.  For instance, one commentator has noted that "[t]he Nook Tablet does feel a little better in your hand, largely because the border around the screen has a textured finish whereas the [other tablet] has a glossy, clear plastic border."[92]  The Nook Tablet also does not have the appearance of a metallic rim surrounding the front surface. Furthermore, the Nook tablet has a distinctive "loop" at one corner such as it does not have four evenly rounded corners. A reviewer observed that this "loop" design "serves as both a handle and a way to conceal the reader's MicroSD card slot."[93]  Another review explained that this "loop" was a design decision by Barnes & Noble to "set the device apart from other tablets."[94]

---

[92]CNET, "Barnes & Noble Nook Tablet," http://reviews.cnet.com/tablets/barnes-noble-nook-tablet/4505-3126_7-35059751.html#reviewPage1

[93] Sascha Segan, "Barnes & Noble Nook Tablet Review," Nov. 18, 2011, PCMag, http://www.pcmag.com/article2/0,2817,2396554,00.asp.

[94] Brian Heater, "Barnes & Noble Nook Tablet Review," Nov. 21, 2011, Engadget, http://www.engadget.com/2011/11/21/barnes-and-noble-nook-tablet-review/

 

356.    Vinci has manufactured an alternative design that has chamfered corners instead of rounded corners and a rubberized "protective ring" surrounding the tablet.  Reviewers have noted that the protective ring "serves as a bumper against drops or collisions" and that "one of the Vinci's greatest advantages is that it isn't nearly as easy to break as an iPad."[95]  The Vinci tablet also does not have the appearance of a metallic rim surrounding the front surface.

  

357.    Acer has manufactured the Iconia A500 tablet that is an alternative design to the iPad Trade Dress.  The Iconia A500 does not have a flat clear surface covering the front of the product.  Rather there is a distinctive opaque aluminum casing that wraps from the back to the front such that it borders only the longer sides of the display.  There also does not appear to be an appearance of a metallic rim around the flat clear surface. Reviewers have noted that this is a "good look" and that the Iconia A500 delivers "solid performance . . . and a sturdy metal design."[96]

---

[95] David Pierce, "Vinci Tab Review," PCMag, Sep. 22, 2011, http://www.pcmag.com/article2/0,2817,2392593,00.asp.

[96] Bradford, K.T., "Acer Iconia Tab A500 Review," Laptop, Apr. 20, 2011, http://www.laptopmag.com/review/tablets/acer-iconia-tab-a500.aspx.



358.    Likewise, Coby has manufactured the Kyros that does not have a flat clear surface covering the front of the product.  Rather, the front display of the Kyros is framed by an opaque plastic housing which adds to how "sturdy it seems."[97]  The Kyros has been commended for being a "strong performing, well built tablet."[98]

 

359.    Sony has manufactured the Tablet S which has an alternative "folded" design distinct from the iPad Trade Dress.  Commentators praised the industrial design as "smart" and that "[i]ts unique wedge shape gives it a futuristic look and provides improved balance in your hand compared with the flat competition."[99]  Also, when "placed on a table, the screen's forward

---

[97] William Harrel, "Coby Kyros Internet 8" Touch Screen Tablet Review & Ratings," Computer Shopper, http://computershopper.com/tablets/reviews/coby-kyros-internet-8-touchscreen-tablet-mid8024/%28page%29/.

[98] Id.

[99] CNET, "Sony Tablet S," http://reviews.cnet.com/tablets/sony-tablet-s-32gb/4505-3126_7-35003724.html#reviewPage1.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
149

1    slant minimizes glare and makes it more comfortable to type."[100]  Others have complimented that

2    "it's one of the best-looking Android tablets around" with its "[c]omfortable, ergonomic design,"

3    and that as compared to the iPad2, which "tires [the] wrist very quickly, . . . the Tablet S feels like

4    it weighs much less than its 21.2 ounces." [101]



10        360.    The alternative designs discussed in the foregoing are in no way comprehensive.

11    The tablet computer field is filled with alternative, commercially viable designs that illustrate the

12    nonfunctionality of the iPad Trade Dress.  Other available alternative designs include, for

13    instance, the Panasonic Toughbook tablet, the Sony Reader, or the Sony Tablet P, as shown

14    below, or the GriDPAD 2050, the Motion Computing LS800, and the Freescale smartbook

15    concept.[102]  *See* Ex. 13.

  

22        361.    Moreover, the alleged prior art cited by Samsung against the D'889 design in its

23    opposition to Apple's Motion for Preliminary Injunction constitute alternative designs to the iPad

25        [100] *Id.*

26        [101] Sascha Segan, "Sony Tablet S," PCMag, Dec. 5, 2011,
http://www.pcmag.com/article2/0,2817,2397089,00.asp

27        [102] These tablets do not constitute an exhaustive list of alternative designs that may be relevant; they are
merely representative of some alternatives that have been commercialized.

1    Trade Dress.  For example, JP1142127, JP0887388, JP0921403, U.S. Patent No. D461,802, the

2    TC 1000, and the Fidler Mock-up are all far afield from the Apple iPad Trade Dress aesthetically.

3          362.    Furthermore, Samsung's own commercially released tablet prior to the iPad – the

4    Samsung Q1 – constituted an alternative design to the iPad Trade Dress.  The Samsung Q1 has a

5    raised opaque black housing surrounding the recessed display on the front surface.  The housing

6    on the front surface had a variety of different physical buttons.  The Q1 was praised for its

7    "beautiful, featherweight design" with a "sleek case" and that the "[b]uttons around the screen

8    also help [the user] navigate." [103]

 

13         363.    The fact that Samsung and other manufacturers have commercially released tablets

14   with alternative designs suggests that Samsung could have successfully manufactured the designs

15   with equivalent functionality for the end user.  There are many alternative designs by Samsung

16   and third-party competitors that serve equivalent functionality as the iPad Trade Dress.

17         364.    Additionally, it is my understanding that Samsung considered alternative designs

18   that were different from the final commercially released designs of its tablets. For example, one

19   of the Samsung tablet models featured a wide, opaque frame on the front surface around the

20   display screen.  *See* Ex. 14, Samsung model production no. Tab 30.  These internal Samsung

21   alternative designs belie any suggestion that utilitarian or functional considerations dictated the

22   design of Samsung's Galaxy Tab 10.1.

23         365.    Indeed, Samsung witnesses confirmed that there are many different designs for

24   tablets.  *See, e.g.*, Mar. 7, 2012 D.H. Chang Dep. at 168:17-21; Feb. 2, 2012 J.S. Kim Dep. at

27         [103] CNET, "Samsung Q1 Ultramobile PC," http://reviews.cnet.com/laptops/samsung-q1-ultramobile-pc/4505-3121_7-31781057.html#reviewPage1.

1    93:11-20, 94:7-11, 96:24-97:5; Feb. 2, 2012 J.M. Yeo Dep. at 30:21-24, 34:13-21, 66:21-69:12.

2    These Samsung alternative designs belie any suggestion that the iPad Trade Dress is functional.

3         366.    Moreover, at least one Samsung witness testified that the rounded corners of a

4    device are disadvantageous as they take away interior space for components.  *See, e.g.*, Feb. 2,

5    2012 J.M. Yeo Dep. at 38:17-20. Furthermore, at least one Samsung witness testified that the

6    design of its tablet was based on aesthetic reasons.  *See, e.g.*, Feb. 2, 2012 J.M. Yeo Dep. at

7    141:11-25, 44:13-45:10, 49:5-9.

8         367.    Based on the above, I conclude that there is no utilitarian advantage to the

9    industrial design aspects of the iPad Trade Dress as opposed to alternative designs.  There are also

10   many alternative designs with functionality equal the iPad Trade Dress. ███████████████

11   ████████████████████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████████████████

13   ████████████    I am also unaware of any advertising that touts the utilitarian advantages of the

14   industrial design aspects of the iPad Trade Dress.

15        368.    In light of these factors, which I understand are the factors that courts consider in

16   determining whether trade dress is functional, I conclude that the industrial design aspects of the

17   iPad Trade Dress are not functional.  Given that the industrial design elements of the iPad Trade

18   Dress are not functional as a whole, I have no reason to believe that adding a matrix of colorful

19   icons when the product is on would render the overall design essential to the function of the

20   products at issue.

21   **XX.    CONCLUSION**

22        369.    For the reasons set forth above, it is my opinion that the Samsung products

23   discussed herein infringe the claims of the D'889 Patent, the D'087 Patent, the D'677 Patent,

24   and/or the D'270 Patent.  It is also my opinion that the industrial design aspects of the Original

25   iPhone Trade Dress, the iPhone 3G Trade Dress, the iPhone 4 Trade Dress, the iPhone Trade

26   Dress, the iPad Trade Dress, and the iPad 2 Trade Dress are not functional.

27

28

## XXI.   SUPPLEMENTATION

370.   I reserve the right to supplement or amend this report if additional facts and information that affect my opinion become available.  In particular, I understand that Samsung may serve an expert report concerning one or more of the issues addressed by this report.  I may therefore supplement or amend my report or opinions in response to additional discovery or other events and may rebut the expert report submitted by Samsung.

## XXII. EXHIBITS TO BE USED

371.   I anticipate using as Exhibits during trial certain documents and things referenced or cited in this report or accompanying this report.  I also anticipate using other demonstrative Exhibits or things at trial.

Dated:  March 22, 2012

_____
PETER BRESSLER