Exhibit 4

# EXHIBIT O
# FILED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3            NORTHERN DISTRICT OF CALIFORNIA
 4                  SAN JOSE DIVISION
 5
 6   APPLE INC., a California
     corporation,
 7
                 Plaintiffs,
 8
                 Vs.                    Civil Action No.
 9                                      11-CV-01846-LHK
     SAMSUNG ELECTRONICS CO.,
10   LTD., a Korean business
     entity, SAMSUNG ELECTRONICS
11   AMERICA, INC., a New York
     corporation and SAMSUNG
12   TELECOMMUNICATIONS AMERICA
     LLC, a Delaware limited
13
                 Defendants.
14   ~~~~~~~~~~~~~~~~~~~~~~~~~~
     AND RELATED CROSS ACTIONS.
15   _____
16
17       **Highly Confidential - Attorney's Eyes Only**
18             VIDEOTAPED DEPOSITION OF EXPERT
19                 TONY D. GIVARGIS, PH.D.
20                  Los Angeles, California
21                  Monday, April 23, 2012
22
23   Reported By:
24   Jeanese Johnson, CSR No. 11635, CLR
25   Job No. 48793
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

1
2
3
4       April 23, 2012
5       9:11 a.m.
6
7
8       Videotaped Deposition of Expert
9   TONY D. GIVARGIS, PH.D., held at the
10  offices of Quinn Emanuel, 865 So. Figueroa
11  Street, 10th Floor, Los Angeles, California,
12  before Jeanese Johnson, CSR No. 11635,
13  Certified LiveNote Reporter, of the State
14  of California.
15
16
17
18
19
20
21
22
23
24
25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

2  A P P E A R A N C E S:

5  WILMERHALE
6  Attorneys for Plaintiff
7      399 Park Avenue
8      New York, New York  10022
9  BY:   VICTOR F. SOUTO, ESQ.
10       ALI H. SHAH, PH.D.

12  QUINN EMANUEL URQUHART & SULLIVAN
13  Attorneys for Defendant
14      555 Twin Dolphin Drive
15      Redwood Shores, California  94065
16  BY:   VICTORIA F. MAROULIS, ESQ.
17       KENNETH K. SUH, ESQ.

20  ALSO PRESENT:

22    COURTNEY BATES, Legal Video Specialist

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 122

1  Exhibit 12, in front of you.
2       A.  Okay.
3       Q.  Do you recognize Exhibit 12 as the
4  article by Mahmoud that is referenced in your
5  report?
6       A.  Yes.
7       Q.  You cite this article for the
8  proposition paragraph 127 that something called
9  midlets is a form of Applet; is that correct?
10      A.  Yes.
11      Q.  And for a definition of midlet, you
12 are relying on a Java tutorial, also referenced
13 in your report; is that right?
14      A.  No.
15      Q.  What are you relying on in your
16 report, with respect to the definition of midlet?
17      A.  I also rely on my own knowledge and
18 understanding of -- of midlet is.
19      Q.  Isn't it correct, sir, that you never
20 brought up midlets in your first report in the
21 claim construction phase of this case?
22      A.  That is correct.  I did not discuss
23 midlets.
24      Q.  And the Court did not discuss midlets
25 as part of its Claim Construction Order?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 123

1    A.  I -- I don't know.
2    Q.  To the extent you reviewed the
3  Court's Claim Construction Order that we
4  previously marked as exhibit -- an exhibit today,
5  you did not see any reference to midlets;
6  correct?
7    A.  I do not recall seeing a reference to
8  midlet, but if you want me to...
9    Q.  I'll represent to you that it
10 doesn't.
11   A.  Okay.
12   Q.  And I'm just asking if you have a
13 different recollection.
14       Let's mark another exhibit as
15 Exhibit 13.
16       (Exhibit 13, an article entitled.
17        Introduction Tools Application
18         Development, is marked by the
19        Deposition Officer)
20       MR. SOUTO:  Thank you.
21   Q.  Dr. Givargis, do you recognize
22 Exhibit 13?
23   A.  No, I do not recognize it as being
24 something I have seen before.
25   Q.  I'll take it back from you, if you

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 124

1  don't recognize it.
2         MR. SOUTO:  Are you withdrawing it as
3  an exhibit?
4         MS. MAROULIS:  I am.  There might be
5  some confusion because I understood this to be
6  something he's relying on.  But if he's not, I'll
7  take it back.
8         MR. SOUTO:  Okay.  Well, okay.  I'm
9  going to give you back all of the exhibits.
10 Thank you.
11    Q.  Okay.  Let's get back to the Mahmoud
12 article.
13        Do you see, in this first statement
14 of the -- the first sentence of the abstract, it
15 says:  "The Mobile Media API is an optional
16 package that supports multimedia application on
17 J2ME enabled devices."
18    A.  Yes, that's what it said.
19    Q.  Does it suggest to you that this
20 feature is optional, it does not always appear in
21 the phone?
22    A.  The MMAPI is a framework that would
23 need to be -- to be incorporated into an
24 environment, yeah.
25    Q.  Do you have any evidence whether the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 137

1  edition of Java, will have those -- those code
2  repositories pre-installed.
3        Q.  I'm sorry.  You mentioned the
4  "repository."
5            What is the repository?
6        A.  The imports.
7        Q.  Um-hmm.
8        A.  Are importing a number of classes
9  that are part of the Micro Edition.  And the word
10 "Micro Edition" occurs in the full name of these
11 classes.  And any phone equipped with a Java
12 Micro Edition, JME or J2ME, would have these
13 libraries of, say, pre-installed.
14       Q.  When you import these items, does it
15 give you access to the module?
16       A.  What do you mean by "module"?
17       Q.  Module or a group of files.
18       A.  This particular statement give us
19 access to the classes that are part of the
20 framework.
21       Q.  Are these four lines of code part of
22 the MMA -- MMAPI?
23       A.  Yes.
24       Q.  You opined in your report that taking
25 the code from the Mahmoud Article 1 could convert

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 138

1  the code samples into an Applet; is that right?
2      A.  The code in Mahmoud is a midlet,
3  which we've -- which I defined to be consistent
4  with an Applet.
5      Q.  Are you opining that one can take the
6  code and design an Applet, using that code?
7      A.  This code listing is the entire code
8  listing for a player Applet.
9      Q.  What makes you think that the person
10 applying that code can take that code and design
11 an Applet and a phone -- a mobile phone?
12     A.  A person of ordinary skill will be
13 familiar with Applets, will be familiar with
14 Java, and will be able to use this code as-is to
15 play music on a mobile phone.
16     Q.  Would the person need to make any
17 modifications before a mobile phone could support
18 Java Applet?
19     A.  I believe -- I didn't understand the
20 question.
21     Q.  Would a person of ordinary skill need
22 to modify this code before putting in the phone
23 in order to use the Java Applets?
24     A.  The code is a complete player midlet
25 Applet.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 139

1      A phone equipped with the MMAPI will
2  support execution of this program.
3      Q.  And again, we don't see anywhere in
4  your report whether the prior art devices you
5  reviewed and analyzed for your report have or can
6  support an MMPI; correct?
7          MR. SOUTO:  Objection to form.
8          THE WITNESS:  That is incorrect.  I
9  -- I state in my report whether the devices do
10 support Java.  That is the Java Micro Edition, as
11 well as the mobile MMAPI.
12     Q.  Other than that one statement in your
13 report, that didn't have any citation.  You
14 didn't have any evidence in your report that
15 these phones could support such code.
16         MR. SOUTO:  Objection to form.
17         THE WITNESS:  The statement that I
18 have in my report, my understanding and knowledge
19 in how these phones operate and that they do
20 incorporate these technology.
21     Q.  But again, without any citation to
22 references, authorities, articles or patents;
23 correct?
24     A.  I have no citation next to the
25 statement in the record, but I -- as I said

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 140

1   earlier, would I need to review all of the
2   citations that were included as part of my report
3   to -- to answer that question, exactly.
4        Q.  The Mahmoud code, or what purports to
5   be code in this article, is for a midlet not an
6   Applet; is that correct?
7        A.  The Mahmoud code example -- and is
8   specifically about a midlet -- and in my report
9   clarify that MIDlets are Applets.  They are very
10  similar to Applet's, with the only restriction
11  being that of the amount of privileges or access
12  to resource.
13       Q.  And again, in your declaration in
14  support of claim construction proceedings, and
15  your deposition in connection with that
16  declaration, you never brought up a term midlet;
17  right?
18           MR. SOUTO:  Objection to form.
19           THE WITNESS:  No, I did not discuss
20  MIDlets, at that time, in that report.
21       Q.  You can set this document aside.
22           (Exhibit 14, United States Patent No.
23           6,526,041 is marked by the Deposition
24            Officer)
25           THE WITNESS:  Thank you.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 188

1    Q.   Yes.

▮
▮
▮
▮   ▮  ▮

6    Q.   Did you review, in preparation of
7  your report, Apple's responses to
8  non-Infringement Interrogatories?
9    A.   May I see the document to...
10         (Exhibit 24, Apple Inc.'s
11          Supplemental Objections and Responses
12          to Samsung's First Set of
13          Interrogatories, is marked by the
14          Deposition Officer)
15    Q.   I'm handing you what's been marked as
16  Exhibit 24 identification.
17         If you please turn to page 20 of this
18  document.
19         Are you there?
20    A.   Yes.
21    Q.   Do you recognize this document as
22  Apple's response to Samsung's Interrogatory
23  regarding its non-infringement contentions?
24    A.   Yes.
25    Q.   On -- have you seen it before?

Page 189

1   A.  Just one second.

2       I believe I may have seen this --
3   reviewed it before, yes.

13  Q.  In preparing your report on
14  non-infringement, did you examine Apple's user
15  guide?
16  A.  Which Apple user guides?
17  Q.  Any Apple user guides.
18  A.  I am -- I carefully reviewed the
19  audio session programming guide from Apple.  I
20  also reviewed the iPhone app programming guide
21  from Apple, and the AV foundation programming
22  information guide from Apple.
23         (Exhibit 25, iPhone User Guide, is
24          marked by the Deposition Officer)
25  Q.  I'm going to hand you what's been