Exhibit 6

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

**United States District Court
Northern District of California
San Jose Division**

| | |
|---|---|
| APPLE INC., a California corporation, | |
| Plaintiff, | |
| vs. | Civil Action No. 11-CV-01846-LHK |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| APPLE INC., a California corporation, | |
| Counterclaim-Defendant. | |

**REBUTTAL EXPERT REPORT OF TONY GIVARGIS, Ph.D.
REGARDING NON-INFRINGEMENT
OF THE ASSERTED CLAIMS OF U.S. PATENT NO. 7,698,711**

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................4

II.  QUALIFICATIONS ...............................................................................................4

III.  MATERIALS CONSIDERED ................................................................................5

IV.  UNDERSTANDING OF THE LAW RELATING TO PATENT
INFRINGEMENT ....................................................................................................5

   A.  Literal Infringement And Infringement Under The Doctrine Of
   Equivalents.......................................................................................................5

   B.  Direct Infringement.........................................................................................7

   C.  Indirect Infringement ......................................................................................7

V.  LEVEL OF ORDINARY SKILL IN THE ART ....................................................8

VI.  SUMMARY OF THE '711 PATENT .....................................................................9

VII.  BACKGROUND TECHNOLOGY .........................................................................9

VIII.  THE ACCUSED APPLE PRODUCTS ...................................................................9

   A.  iPhone 4 ...........................................................................................................9

   B.  iPhone 3G.........................................................................................................9

   C.  iPhone 3GS ....................................................................................................10

   D.  iPod Touch (4th generation) ..........................................................................10

IX.  ANALYSIS AND OPINIONS CONCERNING NON-Infringement of THE '711
PATENT ................................................................................................................10

   A.  The Accused Apple Products Do Not Perform a Method Comprising
   "Generating a Music Background Play Object, Wherein the Music
   Background Play Object Includes an Application Module Including at
   Least One Applet".........................................................................................11

      1.  Literal Infringement ...........................................................................11

         a.  mediaserverd .............................................................................14

         b.  MobileMusicPlayer...................................................................15

         c.  Springboard...............................................................................16

         d.  EmbeddedAVFoundation ..........................................................17

**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER**

           **e.**      Source Code Files Cited by Dr. Yang.............................................17

     2.     Doctrine of Equivalents .................................................................25

     3.     Conclusion ......................................................................................26

  B.    The Accused Devices Do Not Have the Claimed "MP3 Mode" ..........................27

     1.     Literal Infringement .......................................................................27

     2.     Doctrine of Equivalents .................................................................27

     3.     Conclusion ......................................................................................28

  C.    Dr. Yang's Responses to Apple's Non-Infringement Interrogatory
     Positions ......................................................................................................28

X.     DESIGN ALTERNATIVES ...............................................................................29

XI.    HEARING AND TRIAL EXHIBITS ................................................................31

XII.   SUPPLEMENTATION OF OPINIONS ............................................................31

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

**I.      INTRODUCTION**

1.      I have been retained as an expert in this case by Plaintiff Apple, Inc. ("Apple"). I expect to testify at trial regarding the matters set forth in this report, if asked about these matters by the court or by the parties' attorneys.

2.      I have been asked to review and comment on the "Expert Report of Woodward Yang Regarding the Infringement of U.S. Patent Nos. US 7,577,460, US 7,456,893, US 7,698,711 and US 7,079,871," dated March 22, 2012 ("Yang Report"), in which Dr. Yang asserts that Apple iPhone 3G, iPhone 3GS, iPhone 4, and iPod Touch 4th generation ("the accused Apple products")[1] infringe claims 1, 2, 7-10, and 15-18 of US Patent No. 7,698,711 ("the '711 patent").

3.

**II.     QUALIFICATIONS**

4.      A summary of my qualifications, relevant experience, and compensation in this case is provided in Section II of my Expert Report Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,698,711 ("Invalidity Report"), and in my *curriculum vitae*, which is attached as Exhibit 1 to my Invalidity Report, which are hereby incorporated by reference.

_____

[1] I note that Dr, Yang included the iPhone 4S as an accused infringing product. I understand that the Court denied Samsung's request to add the iPhone 4S to this case. Therefore, I will not address the iPhone 4S in this report.

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

**III.    MATERIALS CONSIDERED**

5.      In Exhibit 1, I list the materials I considered in reaching my opinions described in this report. ███████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

6.      My opinions in this report also rely on my academic qualifications and experience in the field of computer science as described in my *curriculum vitae*.

**IV.    UNDERSTANDING OF THE LAW RELATING TO PATENT INFRINGEMENT**

7.      I am not an attorney.  I have been informed about the legal standards for patent infringement by counsel for Apple.

8.      I have been informed and understand that an infringement analysis is a two-step process.  First, the patent claims are construed by the Court to ascertain their proper scope. Second, the construed claims are compared to the allegedly infringing product or process to determine whether those products or processes fall within the scope of the claims either literally or under the doctrine of equivalents.

**A.      Literal Infringement And Infringement Under The Doctrine Of Equivalents**

9.      I have been informed and understand that a patent claim is literally infringed when an accused product includes structures or steps in a process that are identical to each and every element of a patent claim.  If, however, the accused product does not have every requirement in the patent claim, then the accused product does not literally infringe that claim.  I have been informed and understand that the person asserting patent infringement has the burden of proving literal infringement, and thus the burden of establishing that each and every limitation in the asserted claim is met.

10.      I have been informed and understand that if a patent claim uses the term "consisting of," that patent claim is to be understood as a closed claim. To infringe a closed claim, the accused product must have every requirement in the claim and no other parts or steps.

- 5 -

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

11.     I have been informed and understand that a patent claim is infringed under the doctrine of equivalents when, for any element recited in the claim that is not contained literally in the accused product or process, there is a corresponding structure or step that is an equivalent of the structure or step recited in the claim, where the equivalent structure or step is only "insubstantially" different from the claimed structure or step.  If the accused product is missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the accused product cannot infringe the claim under the doctrine of equivalents.  Thus, in making a determination under the doctrine of equivalents, one must look at each individual requirement of the asserted patent claim and decide whether the accused product has either an identical or equivalent part or step to that individual claim requirement.

12.     I have been informed and understand that one test to determine whether the difference between a claim element and an accused structure or step is insubstantial is whether the structure or step in the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed structure or step.  I have been informed and understand that the person asserting patent infringement has the burden of proving that there is infringement under the doctrine of equivalents.  Moreover, I have been informed and understand that a patentee cannot use the doctrine of equivalents to vitiate a claim limitation, by raising an infringement theory that would effectively render the claim limitation meaningless.

13.     I have been informed and understand that the doctrine of equivalents may not be used to find infringement if the accused product is the same as what was in the prior art before the application for the patent in suit or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art.  In other words, a patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

14.     I have been informed and understand that arguments made during the prosecution of a patent can limit the range of equivalents available to a patentee, by preventing recapture of

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

subject matter that is effectively surrendered by the inventors during prosecution.  I have been

further informed and understand that the presumption of complete surrender of equivalents for a

claim limitation amended for reasons related to patentability may be rebutted by showing the

alleged equivalent would have been unforeseeable at the time the prosecution argument was

made, the rationale underlying the argument bore no more than a tangential relation to the

equivalent at issue, or that there was some other reason suggesting that the patentee could not

reasonably have been expected to have described the alleged equivalent.

### B.   Direct Infringement

15.   I have been informed and understand that a patent claim is directly infringed

when a person makes, uses, sells, or offers to sell in the United States, or imports into the United

States, a product or process that includes each element of the patent claim, either literally or

under the doctrine of equivalents.

16.   I have been informed and understand that a dependent claim includes all of the

requirements of a particular independent claim, plus additional requirements of its own. As a

result, if an independent claim is not infringed, any of its dependent claims are not infringed.  On

the other hand, if an independent claim is infringed, a separate finding must be made as to

whether the additional requirements of its dependent claims have also been infringed.

### C.   Indirect Infringement

17.   I have been informed and understand that an accused infringer may be liable for

contributing to or inducing the infringement of a patent claim.  I have been informed and

understand that both contributory infringement and inducement of infringement require proof of

direct infringement of a patent claim, and that the person asserting infringement bears the burden

of proving direct infringement.

18.   I have been informed and understand that contributory infringement occurs when

a person provides a material part or a component to another for use in a product, machine, or

process that infringes a patent, and that person (1) knew of the patent; (2) sold or provided a

component that is a material component of the claimed invention; (3) knew that the

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

part/component was especially made for use in a manner that infringes the patent claim; and that the component (4) does not have a substantial non-infringing use; and (5) is used in a manner that infringes the patent.  I have been informed and understand that the person asserting contributory infringement has the burden of proving that each of these elements is satisfied.

19.    I have been informed and understand that inducement of patent infringement occurs when a person (1) has intentionally taken action that actually induced direct infringement by another; (2) has been aware of the patent; (3) has known that the acts it was causing would be infringing; and (4) the other person infringed the patent.  I have been informed and understand that the person asserting inducement of infringement has the burden of proving that each of these elements is satisfied.

20.    I have been informed and understand that if the accused infringer did not know of the existence of the patent or that the acts it was inducing were infringing, it cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that the accused infringer was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that the accused infringer took a risk that was substantial and unjustified.

21.    I have been informed and understand that if the alleged infringer was aware of the patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, the alleged infringer cannot be liable for inducement.

## V.    LEVEL OF ORDINARY SKILL IN THE ART

22.    In the Markman Order dated April 4, 2012, the Court has adopted Samsung's proposed definition of a person of ordinary skill in the art as follows:  "a Bachelor's Degree in computer science/engineering and several years of experience in multi-tasking systems and computer programming, or a Master's Degree with less relevant experience, or a person with equivalent industry experience."  Using this definition of the person of ordinary skill in the art

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

does not change my prior opinion in my report on invalidity of the '711 patent.  My opinions in this report are consistent with this definition.

## VI.   SUMMARY OF THE '711 PATENT

23.   I have provided a summary of the '711 patent in Section VII of my Invalidity Report, which is incorporated here by reference.[2]

## VII.   BACKGROUND TECHNOLOGY

24.   I provided a description of the background technology in Section VI of my Invalidity Report, incorporated here by reference.

## VIII.   THE ACCUSED APPLE PRODUCTS

25. It is my understanding that Samsung accuses Apple's iPhone 4, iPhone 3GS, iPhone 3G, and iPod Touch (4th generation) products (collectively, "the accused Apple products") of infringing claims 1-3, 7-10 and 15-18 of the '711 patent.

### A.   iPhone 4

26.   The iPhone 4 is a fourth generation mobile smart-phone designed and sold by Apple Inc. that combines iPod music features with a mobile cell phone.  The iPhone 4 also contains both a front and rear-facing digital camera, GPS, WiFi and GSM/GPRS/EDGE/CDMA connectivity, a 3.5 inch touch sensitive display, and internal 8, 16, or 32 GB flash storage.  The iPhone 4 runs Apple's iOS operating system on an ARM CPU (with an Apple A4 GPU) with 512 MB of DRAM.  In addition to typical productivity application included with the device, the iPhone 4 supports App Store, iTunes Store, iBooks Store, and MobileMe Internet services.

### B.   iPhone 3G

1.   The iPhone 3G is a second generation mobile smart-phone designed and sold by Apple Inc. combining iPod music play function with phone and other features.  The iPhone 3G contains a 2 MP digital camera, GPS, WiFi and GSM/EDGE connectivity, a 3.5 inch touch sensitive display, and internal 8 or 16 GB flash storage.  The iPhone 3G runs Apple's iOS operating system on an ARM-based CPU with 128 MB of DRAM.  In addition to typical productivity application included with the device, the iPhone 3G supports App Store, iTunes Store, iBook Store, and MobileMe Internet services.

---

[2] Although I incorporate specific sections of my Invalidity Report by reference in this report, it is my intention to incorporate my Invalidity Report by reference in its entirety.  I do not mean to limit such incorporation to instances where it is specifically mentioned.

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

### C.    iPhone 3GS

27.    The iPhone 3GS is a third generation mobile smart-phone designed and sold by Apple Inc. which combines the music player functionality of the iPod device with a cell phone. The iPhone 3GS also contains a 3 MP digital camera,GPS, WiFi and GSM/GPRS/EDGE connectivity, a 3.5 inch touch sensitive display, and internal 8, 16, or 32 GB flash storage.  The iPhone 3GS runs Apple's iOS operating system on an ARM-based CPU with 256 MB of DRAM. In addition to typical productivity application included with the device, the iPhone 3G supports App Store, iTunes Store, iBooks Store, and MobileMe Internet services.

### D.    iPod Touch (4th generation)

28.    The iPod Touch is a portable music/media player and personal digital assistant designed and sold by Apple Inc.  The 4th generation iPod Touch offers WiFi and USB connectivity, a front-facing camera for FaceTime and a display similar to the iPhone 4.  The iPod Touch 4th generation runs Apples iOS operating system on an ARM-based CPU with 256 MB of DRAM.  In addition to typical productivity application included with the device, the iPod Touch 4th generation supports App Store, iTunes Store, iBooks Store, and MobileMe Internet services.

### IX.    ANALYSIS AND OPINIONS CONCERNING NON-INFRINGEMENT OF THE '711 PATENT

29.

**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

31.

32.

**A.** **The Accused Apple Products Do Not Perform a Method Comprising "Generating a Music Background Play Object, Wherein the Music Background Play Object Includes an Application Module Including at Least One Applet"**

**1.** **Literal Infringement**

**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER**

33.



CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER



**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER**



**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER**



CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER



CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER



CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER



CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER**

**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER**

**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER**

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER



CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER



54.

**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

55.     For all of the above reasons, it is my opinion that the accused devices do not meet the "generating a music background play object … includ[ing] an application module including at least one applet" limitation required by all of the asserted claims of the '711 patent, and for at least this reason Apple does not infringe.

### 2.     Doctrine of Equivalents

56.     █████████████████████████████████████████████ The accused Apple products do not literally meet the claim elements as described above, nor do they perform an "equivalent" as I understand the Doctrine of Equivalents requires.

57.     Samsung is also not entitled to the Doctrine of Equivalents due to "Prosecution History Estoppel" for the claim limitation "wherein the music background play object includes an application module including at least one applet" as required by all asserted claims.  As described in my report on invalidity, this limitation was added to distinguish the claims from the prior art during prosecution of the '711 patent.  It is my understanding, based on the legal standard provided to me by Apple counsel as described above, that Samsung is therefore not entitled to recapture equivalents to this limitation because they are presumed to have surrendered these equivalents.

58.     ████████████████████████████████

**CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER**



59.

3.     Conclusion

61.

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

**B.      The Accused Devices Do Not Have the Claimed "MP3 Mode"**

      **1.      Literal Infringement**

62.

63.

      **2.      Doctrine of Equivalents**

64.

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

### 3.    Conclusion

65.    In view of the analysis above, it is my conclusion that the Apple devices do not infringe any asserted claim of the '711 patent, whether literally or under the doctrine of equivalents, because none of the accused devices has an "MP3 mode" which can be selected or switched to a standby mode.

**C.    Dr. Yang's Responses to Apple's Non-Infringement Interrogatory Positions**

66.

67.

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER



## X.   DESIGN ALTERNATIVES

72.     The report above details why it is my opinion that the accused Apple products do
not infringe any asserted claim of the '711 patent, whether literally or under the doctrine of
equivalents, and I have previously offered my opinion why I believe the '711 patent is invalid.

- 29 -

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

73.     In the event that the '711 patent is found to be both valid and infringed, I note that a non-infringing alternative could be engineered very simply and without a loss of functionality in the accused devices.

74.     Each claim of the '711 patent requires "displaying an indication that the music file is being played in the standby mode."

75.     The small "►" icon on the home page status bar of the accused devices is alleged to meet this limitation.  See Yang Report at Exhibit 3A-2, step 5.  The figure from that exhibit showing the allegedly infringing ► icon on the iPhone home screen is reproduced below:



76.     This small icon could simply be removed while all music player multitasking functionality is kept the same.  The playing of the music file itself indicates to the user that the music is playing without additionally requiring a visual symbol on the home screen.

77.     This alternative could be implemented solely with a simple modification to the source code without requiring any hardware changes and could likely be completed within hours.  No additional costs would be associated with this simple modification.

78.     Removing the play icon could easily have been done at the time the Apple products allegedly first infringed the '711 patent, because it would have required nothing more than leaving out a barely-noticeable graphic feature.

79.     ████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████

CONTAINS INFORMATION DESIGNATED AS APPLE HIGHLY CONFIDENTIAL
INFORMATION SUBJECT TO PROTECTIVE ORDER

## XI.  HEARING AND TRIAL EXHIBITS

80.     If called as a witness at trial, I may rely upon visual aids and demonstrative exhibits that illustrate the bases of my opinions.  These visual aids and demonstrative exhibits may include, for example, claim charts, patent drawings, excerpts from patent specifications, file histories, interrogatory responses, deposition testimony, deposition exhibits, published articles, and dictionaries, as well as optical components, charts, diagrams, videos, and animated or computer-generated video.

81.     I have not yet prepared any exhibits for use at trial as a summary or support for the opinions expressed in this report, but I expect to do so in accordance with the Court's scheduling orders.

## XII.  SUPPLEMENTATION OF OPINIONS

82.     I reserve the right to adjust or supplement my analysis and opinions in light of any critique of my report or alternative opinions advanced by or on behalf of Samsung, including but not limited to supplemental reports submitted by Samsung.

Dated: April 16, 2012

Tony D. Givargis, Ph.D.

- 31 -