QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                  Plaintiff,<br><br>          vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company;<br><br>                  Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S MAY 21, 2012 ORDER**<br><br>Date:  N/A<br>Time: N/A<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh<br><br>**PUBLIC REDACTED VERSION** |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") will, and hereby do, conditionally move for leave, pursuant to Civ. L.R. 7-9, to file a motion for reconsideration of this Court's May 21, 2012 Order ("May 2012 Order") Granting Apple's Motion to Shorten Time for Briefing on Apple Inc.'s ("Apple") Motion Pursuant to Rule 62(c) for Entry of Preliminary Injunction Without Further Hearing.

This motion will be based on this Notice of Motion and Motion for Leave to File a Motion for Reconsideration of the Court's May 21, 2012 Order, the Memorandum of Points and Authorities attached hereto, the accompanying Declarations of Thomas Watson, Travis Merrill and Paul Chapple, the Proposed Order, the files and records in this matter and any oral argument that the Court may hear.

## RELIEF REQUESTED

Pursuant to Civ. L.R. 7-9(a), Samsung requests leave of Court to file a motion for reconsideration of the Court's May 21, 2012 Order.

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should grant leave to file a Motion for Reconsideration addressing the following issue:  whether the Court's May 21, 2012 Order denying Samsung the opportunity to present new evidence and legal developments that bear on Apple's request for an injunction, and to present arguments as to two of the four factors that apply to a request for a preliminary injunction, is manifestly unjust and should therefore be reconsidered because, since the time of the Court's initial ruling last year on Apple's motion for a preliminary injunction, the relevant facts have changed, new evidence has developed and been uncovered, and the legal precedents have altered, requiring rejection of Apple's request for a preliminary injunction.

1    DATED: May 25, 2012                    Respectfully submitted,

2                                           QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
3

4

5                                           By/s/ Victoria Maroulis
                                            _____
6                                               Charles K. Verhoeven
                                                Kevin P.B. Johnson
7                                               Victoria F. Maroulis
                                                Michael T. Zeller
8                                               Attorneys for SAMSUNG ELECTRONICS
                                                CO., LTD., SAMSUNG ELECTRONICS
9                                               AMERICA, INC. and SAMSUNG
                                                TELECOMMUNICATIONS AMERICA, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ...................................................................................................1

RELIEF REQUESTED ..................................................................................................1

STATEMENT OF ISSUE TO BE DECIDED ...............................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

I.      INTRODUCTION...............................................................................................1

II.     PROCEDURAL BACKGROUND .....................................................................2

        A.      Apple's 2011 Motion for a Preliminary Injunction............................2

        B.      The Court's Denial of Apple's Motion for Preliminary Injunction ..........2

        C.      The Federal Circuit's Opinion.............................................................3

        D.      Apple's New Rule 62(c) Motion for a Preliminary Injunction ...........4

        E.      The Court's May 21, 2012 Order .........................................................5

III.    LEGAL STANDARD ........................................................................................5

IV.     ARGUMENT .....................................................................................................6

        A.      The Court Should Consider All Relevant Factors And Evidence Before
                Deciding Whether To Grant An Injunction..........................................6

                1.      The Prospective, Preventive Nature of a Preliminary Injunction
                        Requires That It Be Based on Up-To-Date Evidence .................6

                2.      Courts Assessing Preliminary Injunctions On Remand Properly
                        Consider Up-To-Date Evidence ..................................................8

        B.      It Would Be Manifestly Unjust Not To Consider The Substantial
                Developments That Have Occurred Since 2011 ....................................10

                1.      New Facts Regarding Irreparable Harm Which Did Not Exist As Of
                        December 2011 ............................................................................10

                2.      Newly-Discovered Facts Regarding Invalidity, Infringement and
                        Irreparable Harm Which Were Not Timely Produced By Apple.............11

                3.      New Legal Developments That Post-Date the December 2011 Order ........15

        C.      The Court Should Reconsider The May 21 Order Because It Prevents The
                Court From Evaluating The Traditional Preliminary Injunction Factors In
                View Of The Current Facts And Law ....................................................16

1               1.     Apple Is Not Likely To Suffer Irreparable Harm..........................................17

2               2.     Apple Is Not Likely To Succeed On the Merits...........................................18

3                   (a)     The D'889 Is Likely Invalid In Light of Newly-Discovered
           Prior Art.............................................................................................18

                    (b)     The Galaxy Tab 10.1 Is Not Infringing Under A Proper Claim
           Construction ......................................................................................21

V.     CONCLUSION ...............................................................................................................25

02198.51855/4776904.8

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*A&M Records, Inc. v. Napster, Inc.*,
284 F.3d 1091 (9th Cir. 2002) ............................................................................................7

*Abbott Labs. v. Andrx Pharms., Inc.*,
452 F.3d 1331 (Fed. Cir. 2006) .........................................................................................16

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008) ...........................................................................................7

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) .........................................................................................16

*Amoco Oil Co. v. Rainbow Snow, Inc.*,
809 F.2d 656 (10th Cir. 1987) .............................................................................................9

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
No. 2012-1105 (Fed. Cir. May 14, 2012) ............................4, 9, 10, 14, 15, 17, 21

*Application of Thorington*,
418 F.2d 528 (Cust. & Pat. App. 1969) ............................................................................14

*Astra-Zeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010) .........................................................................................18

*Automated Merchandising Systems, Inc. v. Crane Co.*,
357 Fed. App'x 297, 301 (Fed. Cir. 2009) ........................................................................17

*Balboa Instr., Inc. v. Gecko Electronique, Inc.*,
31 F. App'x 658, 661 (Fed. Cir. 2002) ...............................................................................8

*Bonaparte v. Camden & A. R. Co.*,
3 F. Cas. 821 (C.C.D.N.J. 1830) (No. 1,617) (emphasis added) .........................................7

*Chemlawn Services Corp. v. GNC Pumps, Inc.*,
823 F.2d 515 (Fed. Cir. 1987) .............................................................................................9

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800, 817 (1988) ....................................................................................................6

*Church v. City of Huntsville*,
30 F.3d 1332 ........................................................................................................................7

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010) .........................................................................................20

*Door-Master Corp. v. Yorktowne, Inc.*,
256 F.3d 1308 (Fed. Cir. 2001) .........................................................................................16

*Durling v. Spectrum Furniture Co.,*
   101 F.3d 100 (Fed. Cir. 1996) .......................................................................................... 18

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
   543 F.3d 665 (Fed. Cir. 2008) (citation omitted) ..................................................... 16, 22, 25

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.,*
   137 F.3d 1475 (Fed. Cir. 1998) ........................................................................................... 9

*High Tech Med. Instr., Inc. v. New Image Indus., Inc.,*
   49 F.3d 1551 (Fed. Cir. 1995) ....................................................................................... 14, 17

*Int'l Seaway Trading Corp. v. Walgreens Corp.,*
   589 F.3d 1233 (Fed. Cir. 2009) .......................................................................................... 18

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.,*
   302 F.3d 1352 (Fed. Cir. 2002) .......................................................................................... 15

*KSR Intern. Co. v. Teleflex Inc.,*
   550 U.S. 398, 127 S. Ct. 1727 (2007) ................................................................................ 20

*L.A. Gear v. Thom McAn Shoe Co.,*
   988 F.2d 1117 (Fed. Cir. 1993) .......................................................................................... 14

*Laitram Corp. v. NEC Corp.,*
   115 F.3d 947 (Fed. Cir. 1997) ............................................................................................. 9

*Lankford v. Sherman,*
   451 F.3d 496 (8th Cir. 2006) ............................................................................................... 9

*In re Mann,*
   861 F.2d 1581 (Fed. Cir. 1988) .......................................................................................... 21

*Mercexchange, L.L.C. v. eBay, Inc.,*
   467 F. Supp. 2d 608 (E.D. Va. 2006) ............................................................................. 6, 8, 9

*Minka Lighting, Inc., v. Craftmade Int'l, Inc.,*
   93 Fed. App'x 214, 216-17 (Fed. Cir. 2004) ..................................................................... 21

*N.A.A.C.P. v. North Hudson Regional Fire & Rescue,*
   707 F. Supp. 2d 520 (D.N.J. 2010) ................................................................................. 6, 8, 9

*Nutrition 21 v. United States,*
   930 F.2d 867 (Fed. Cir. 1991) ............................................................................................ 17

*Quad/Tech, Inc. v. Q.I. Press Controls B.V.,*
   701 F. Supp. 2d 644 (E.D. Pa. 2010) .................................................................................. 14

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Agr.,*
   499 F.3d 1108 (9th Cir. 2007) ............................................................................................... 8

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
   659 F.3d 1142 (Fed. Cir. 2011) ............................................................................................ 3

*Salazar v. Buono,*
    130 S. Ct. 1803 (2010) ..................................................................................6, 7

*Schering Corp. v. Geneva Pharms., Inc.,*
    339 F.3d 1373 (Fed. Cir. 2003) ...........................................................16

*Sch Dist. No. 1 J, Multnomah Cnty., Or. v. ACandS, Inc.,*
    5 F.3d 1255 (9th Cir. 1993)..................................................................6

*Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.,*
    431 F.2d 539 (5th Cir. 1970)................................................................16

*Sys. Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright,*
    364 U.S. 642 (1961) ...............................................................................7

*Transonic Systems, Inc. v. Non-Invasive Medical Technologies Corp.,*
    75 Fed.Appx. 765, 2003 WL 22017533 (Fed. Cir. 2003) ....................15

*United States v. Quintanilla, No. CR 09-01188 SBA,*
    2011 WL 4502668 (N.D. Cal. Sept. 28, 2011).................................5, 6

*Winter v. Natural Res. Def. Council,*
    555 U.S. 7 (2008) ................................................................................2, 7

### Statutes

35 U.S.C. § 102 ..............................................................................................18

35 U.S.C. § 103(a) ..........................................................................................18

35 U.S.C. § 171 ..............................................................................................13

Local Civil Rule 7-9(b) ..................................................................................6

Local Civil Rule 62(c) ............................................................................2, 5, 11

### Miscellaneous

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32.189 ..................25

Wright & Miller, *Fed. Prac. & Pro.* § 2948.1  ...............................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Nearly a year after filing its first request for a preliminary injunction, Apple has filed a new request for an injunction, under a different procedural rule, while insisting the Court base its decision on the dated evidence and incomplete facts presented in connection with the motion Apple made last year.  The Court's May 21, 2012 Order suggests the Court contemplates adhering to these limitations by considering only the balance of hardships and public interest factors, and not considering new evidence as to any factors relevant to whether to grant an injunction.

This would be error, for the question before the Court now is not whether an injunction should have issued *six months ago* based on the evidence *then* before the Court, but whether an injunction should issue *now*.  There is no precedent for the limitations Apple seeks to impose on this equitable determination.  To the contrary, courts considering preliminary injunction requests, even on remand from an order addressing a prior ruling on such a request, properly consider *all* the traditional factors and *all* the evidence relevant to those factors in light of the prospective, equitable nature of such relief.  Adopting Apple's proposed limitations would be extraordinarily prejudicial because the applicable facts have changed since the Court first addressed the likelihood of success and irreparable harm factors six months ago—and the evidence shows that Apple's predictions last year of likely irreparable harm were misguided then and inapt now.  The Court should reject Apple's request that the Court simply ignore all this evidence and issue an injunction based on stale, inapplicable proof.  Indeed, from the moment of its issuance, such an injunction would be subject to dissolution based on the true facts as they exist today.

To avoid committing the plain errors that Apple invites, the Court should reconsider its May 21, 2012 Order and rule that it will consider all four factors and all relevant evidence—factors and evidence which demonstrate that no injunction should issue.  Pursuant to Local Rule 7-9, Samsung respectfully seeks leave to file a motion seeking such relief.[1]

---

[1]   Samsung makes this request conditionally in light of its position, which Samsung respectfully preserves, that the Court lacks jurisdiction to consider Apple's Rule 62(c) motion.

1    **II.**     **PROCEDURAL BACKGROUND**

2         **A.**     **Apple's 2011 Motion for a Preliminary Injunction**

3         Apple first moved for a preliminary injunction in this case on July 1, 2011, nearly 11 months

4    ago.  (Dkt. No. 86.)  Regarding infringement of the D'889 design patent, Apple argued that the

5    Galaxy Tab 10.1 shares the "major elements" of the D'889, including "an overall rectangular shape

6    with four evenly rounded corners," "a flat clear surface covering the front of the device that is

7    without any ornamentation," "a thin rim surrounding the front surface," "a substantially flat back

8    panel that rounds up near the edges to form the thin rim around the front surface," and "a thin form

9    factor."  (*Id.* at 14-15.)  Apple emphasized visual comparisons between its iPad2 and the Galaxy

10   Tab 10.1 to support its position that the Galaxy Tab 10.1 infringed the D'889 patent.   (*Id.* at 3; Dkt.

11   No. 282 at 8.)  This was based on Apple's claim, made for the first time on reply, that the iPad2

12   "embodies the D'889 patent."  (Dkt. No. 282 at 11.)

13        Regarding irreparable harm, Apple claimed that "Samsung's introduction of its copycat

14   Galaxy Tab tablet in the fall of 2010 directly harmed sales of the original iPad" because the "Galaxy

15   Tab captured more than 17% of tablet sales during the holiday season while Apple's market share

16   declined."  (Dkt. No. 86 at 27 (citations omitted).)  Apple predicted that the Galaxy Tab 10.1 will

17   have a "similar impact" (*Id.* at 27 (citations omitted)), emphasizing that "[m]any of the design

18   features that drove demand for the iPad are found in the iPad2."  (Dkt. No. 282 at 11.)

19        **B.**     **The Court's Denial of Apple's Motion for Preliminary Injunction**

20        Explaining that a "preliminary injunction is an extraordinary remedy, never granted as a

21   matter of right," the Court denied Apple's motion in its entirety.  (Dkt. No. 452 at 8 (citing

22   *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 9 (2008).)

23        As to the D'889 patent, the Court found the design obvious in light of the 1994

24   Fidler/Knight Ridder tablet—a finding that was based on Apple's broad characterization of the

25   scope of the D'889.  Consistent with Apple's contentions (*see* Dkt. No. 86 at 14-15), the Court

26   determined that the "D'889 patent is a broad, simple design that gives the overall visual impression

27   of a rectangular shape with four evenly rounded corners, a flat glass-like surface without any

28   ornamentation and a rim surrounding the front surface.  The back is a flat panel that rounds up near

the edges.  The overall design creates a thin form factor.  The screen takes up most of the space on the front of the design."  (Dkt. No. 452 at 40.)  In light of the "broad" nature of the D'889 as construed by the Court, there were serious questions as to invalidity because the Fidler tablet created "basically the same visual impression" as the D'889.  (*Id*. at 40.)

The Court also addressed infringement and irreparable harm.  As to infringement, the Court compared the Galaxy Tab 10.1 to the D'889 as the Court broadly construed it.  (*Id*. at 46.)  The Court also considered and gave weight to Apple's proposed comparisons of the Galaxy Tab 10.1 to the iPad2 (*id*. at 47-48) based on Apple's claim and the Court's "assum[ption]" that "the iPad 2 is the commercial embodiment of the D'889 patent."  (*Id*. at 47 n.27.)

Regarding irreparable harm, the Court first explained that "[t]he relationship between the parties frames the Court's analysis" (Dkt. No. 452 at 31), and then that:

> There appear to be two major competitors in the tablet market: Apple and Samsung.  As of the second quarter in 2011, Apple and Samsung together claimed over 75% of the tablet market.  Indeed, from the third to fourth quarter of 2010, the evidence shows that Apple's market share of the tablet market decreased 20 percentage points, while Samsung's newly introduced tablet gained approximately 17% of the market.

(*Id*. at 48-49 (citations omitted).)  Based on this alleged evidence "that Samsung has been taking market share from Apple overall" (*id*. at 49 n. 29), the Court found probable irreparable harm, citing the rule that the "existence of a two-player market may well serve as a substantial ground for *granting* an injunction" because "it creates an inference that an infringing sale amounts to a lost sale for the patentee".  (*Id*. at 48-49 (quoting *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011) (emphasis in original).)

## C.   The Federal Circuit's Opinion

The Federal Circuit affirmed the Court as to all patents other than the D'889.  As to that patent, the Court of Appeals could not "say that the court abused its discretion when it found that Apple demonstrated a likelihood of irreparable harm" based on the record before it, but remanded because it disagreed with the Court's obviousness analysis.  The Court's infringement analysis was not discussed.  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 2012-1105, slip op. at 25 (Fed. Cir. May 14, 2012).

-3-                                  Case No. 11-cv-01846-LHK (PSG)

SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S MAY 21, 2012 ORDER

1    Regarding obviousness, the Court of Appeals explained that several features "contribute[d]

2    to the distinct visual appearance" of the D'889 and the Fidler reference.  *Id.* at 29.  "Unlike the

3    D'889 patent, the Fidler reference contains no thin bezel surrounding the edge of the front side."

4    "Also in contrast to the D'889 patent, the sides of the Fidler reference are neither smooth nor

5    symmetrical; it has two card-like projections extending out from its top edge and an indentation in

6    one of its sides. And the back of the Fidler reference also conveys a visual impression different

7    from that of the D'889 design."  While the "D'889 design creates the visual impression of an

8    unbroken slab of glass extending from edge to edge on the front side of the tablet," the "Fidler

9    reference does not create such an impression."  *Id.*  These "noticeable differences" sufficed to

10   render the two designs distinct.  *Id.*  The Court's error, according to the Federal Circuit, was to

11   "view the various designs from too high a level of abstraction" – something the Court did based on

12   Apple's own "broad" construction of the D'889.  *Id.* at 30-31.

13   Regarding irreparable harm, the Court of Appeals explained that the evidence adduced in

14   connection with Apple's 2011 motion supported a finding of such harm, including specifically "the

15   relative market share of Apple and Samsung and the absence of other competitors in the relevant

16   market."  *Id.*  The dissent further highlighted this market share evidence and explained why this

17   "factor is significant" to the irreparable harm inquiry.  *Id.* at 7-8 (O'Malley, J., dissenting).

18   Over a dissent as to whether there should be a remand, the court "vacate[d] the order

19   denying an injunction with respect to the D'889 patent and remand[ed] the case to the district court

20   for further proceedings on that portion of Apple's motion for preliminary relief."  *Id.* at 33-34

21   (majority opinion); *see id.* ("Because we have found the district court's reasons for denying an

22   injunction on the D'889 patent to be erroneous, we remand the matter to the district court for further

23   proceedings.").  Without imposing any limitations whatsoever, the court ruled that these "further

24   proceedings" should include an analysis of the balance of hardships and public interest factors.  *Id.*

25   **D.**     **Apple's New Rule 62(c) Motion for a Preliminary Injunction**

26   Apple then filed a new motion for a preliminary injunction, this time pursuant to Rule

27   62(c) of the Federal Rules.  Apple argues in its motion that the "Court should now promptly enter a

28   preliminary injunction to protect Apple from the continuing irreparable harm that this Court found

*five months ago* was likely to occur in the absence of such relief." (Dkt. No. 951 at 1 (emphasis in original).)  Apple emphasizes that, in its prior order, "the Court noted that Apple and Samsung are the two major competitors in the tablet market" and "that in the fourth quarter of 2010, Apple's tablet market share decreased by 20%, while Samsung's newly-introduced tablet gained 17% of the market." (*Id.* at 6-7.)

As to the likelihood of success factor, Apple does little more than note the Court's prior finding that infringement was likely.  Apple recites that it previously "presented evidence that the Tab 10.1 is [] similar to the iPad 2," and that the "Court described the Tab 10.1 as 'virtually indistinguishable' from Apple's iPad and iPad 2 products." (*Id.* at 2, 5.)

Without addressing the Federal Circuit's generalized, unrestricted instruction to conduct "further proceedings," Apple claims that the Circuit "remanded solely for this Court to assess the balance of hardships and public interest factors". (Dkt. No. 952 at 2.)

**E.    The Court's May 21, 2012 Order**

The Court ruled on Apple's motion to shorten time on May 21, 2012.  That order specifies the issues that the parties "shall address," which include the balance of hardships and public interest factors but do not include the likelihood of success and irreparable harm factors. (Dkt. No. 962 at 2.)  The order also states that the "Court will not entertain new evidence with respect to the issuance of the preliminary injunction EXCEPT with respect to the amount of a bond." (*Id.*)

**III.    LEGAL STANDARD**

This Court has discretion to reconsider its prior orders. *See United States v. Quintanilla*, No. CR 09-01188 SBA, 2011 WL 4502668, at *5 (N.D. Cal. Sept. 28, 2011).  Local Civil Rule 7-9(a) provides that any party can request "leave to file a motion for reconsideration of any interlocutory order made by that Judge on any ground set forth in Civil L.R. 7-9 (b)."  Under Rule 7-9(b), reconsideration is appropriate if the district court (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. *See Quintanilla*, 2011 WL 4502668, at *5 (*citing Sch Dist. No. 1 J, Multnomah Cnty., Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993)).  Additionally,

1    the Court has inherent authority to reconsider interlocutory orders to prevent manifest injustice. *Id.*,

2    at *5 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

3    ## IV.    ARGUMENT

4    ### A.    The Court Should Consider All Relevant Factors And Evidence Before Deciding Whether To Grant An Injunction

5
6          Injunctions are inherently equitable and prospective.  For that reason, Apple has identified

7    no authority for imposing one based on outdated facts and without considering all relevant factors

8    and developments to date—a proposition rejected by courts confronted with remands to reconsider

9    preliminary injunctions.  *See N.A.A.C.P. v. North Hudson Regional Fire & Rescue*, 707 F. Supp.

10   2d 520, 532 (D.N.J. 2010) (considering new evidence and all relevant factors on remand from prior

11   preliminary injunction appeal); *Mercexchange, L.L.C. v. eBay, Inc.*, 467 F. Supp. 2d 608, 611 (E.D.

12   Va. 2006) (same, on remand from Supreme Court's canonical *eBay* decision).    The Court

13   recognized, in its 2011 order, that the "rule regarding whether a preliminary injunction should be

14   granted or denied is that the trial court should weigh and measure *each* of the four factors *against*

15   the other factors *and against* the magnitude of the relief requested" and that "[t]he relationship

16   between the parties frames the Court's analysis" – principles no less applicable to the question

17   whether to impose an injunction on remand.  (Dkt. No. 452 at 31, 37 (emphasis added).)  Apple's

18   position that the Court should disregard the true facts as they exist today, while deciding whether to

19   grant *prospective* injunctive relief, is simply wrong.

20   #### 1.    The Prospective, Preventive Nature of a Preliminary Injunction Requires That It Be Based on Up-To-Date Evidence

21         The very nature of a preliminary injunction makes clear that it cannot be based on outdated

22   facts when fresh evidence is available.  "An injunction is an exercise of a court's equitable authority,

23   to be ordered only after taking into account *all of the circumstances* that bear on the need for

24   *prospective* relief."  *Salazar v. Buono,* 130 S. Ct. 1803, 1816 (2010) (emphasis added).    The

25   "delicate" and "dangerous" remedy of an injunction can issue only upon proof of an "injury

26   *impending* or *threatened*, so as to be averted only by the protecting preventive process of

27   injunction."  *Bonaparte v. Camden & A. R. Co.*, 3 F. Cas. 821, 827 (C.C.D.N.J. 1830) (No. 1,617)

28   (emphasis added).  Apple must demonstrate that "irreparable injury is *likely* in the absence of an

-6-

1    injunction," not that at some point in the past it *was* likely.  *Winter,* 555 U.S. at 22; *see Church v.*

2    *City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir. 1994) ("Logically, 'a prospective remedy will

3    provide no relief for an injury that is, and likely will remain, entirely in the past.'") (citation

4    omitted); Wright & Miller, *Fed. Prac. & Pro.* § 2948.1 ("There must be a likelihood that irreparable

5    harm will occur. . . .  A *presently existing* actual threat must be shown.") (emphasis added).  Apple

6    cites no authority that, notwithstanding the prospective nature of an injunction, such relief properly

7    may issue based on evidence that no longer holds true.

8         Indeed, the inherently prospective nature of an injunction dictates that ***even once one has***

9    ***issued***—let alone ***before*** one ever issues—new evidence and changed circumstances should be

10   considered to determine whether it is equitable to maintain such relief in effect.  "'A continuing

11   decree of injunction directed to events to come is subject always to adaptation as events may shape

12   the need.' . . .  [A] sound judicial discretion may call for the modification of the terms of an

13   injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance

14   have changed, or new ones have since arisen."  *Sys. Federation No. 91, Ry. Emp. Dept., AFL-CIO v.*

15   *Wright,* 364 U.S. 642, 647 (1961) (reversing refusal to modify injunction).  "Because injunctive

16   relief 'is drafted in light of what the court believes will be the future course of events, . . . a court

17   must never ignore significant changes in the law or circumstances underlying an injunction lest the

18   decree be turned into an 'instrument of wrong.''"  *Salazar,* 130 S. Ct. at 1816 (reversing refusal to

19   modify injunction) (quotation omitted); *A&M Records, Inc. v. Napster, Inc.,* 284 F.3d 1091, 1098

20   (9th Cir. 2002) ("A district court has inherent authority to modify a preliminary injunction in

21   consideration of new facts."); *Amado v. Microsoft Corp.,* 517 F.3d 1353, 1360 (Fed. Cir. 2008)

22   (affirming dissolution of injunction based on "fundamental difference" between "the granting of

23   retrospective relief and the granting of prospective relief").  If new facts and developments must be

24   considered to decide whether to ***modify*** an injunction already in place, *a fortiori,* they also should

25   be considered when deciding whether to ***grant*** an injunction in the first instance.

26        These principles apply with special force to the case of an interlocutory, preliminary

27   injunction, as to which prior rulings generally are not law of the case.  *Ranchers Cattlemen Action*

28   *Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Agr.,* 499 F.3d 1108, 1114 (9th Cir. 2007);

-7-                                    Case No. 11-cv-01846-LHK (PSG)
SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S
MAY 21, 2012 ORDER

1   *see Balboa Instr., Inc. v. Gecko Electronique, Inc.*, 31 F. App'x 658, 661 (Fed. Cir. 2002);

2   *N.A.A.C.P.*, 707 F. Supp. 2d at 541 ("[T]he findings of fact and conclusions of law in a ruling on a

3   preliminary injunction are naturally preliminary in nature and thus do not foreclose any findings or

4   conclusions to the contrary in subsequent stages of the litigation.").  It is partly because preliminary

5   injunction rulings are made "on less than a full record" that traditional law of the case principles do

6   not apply.  *Ranchers Cattlemen*, 499 F.3d at 1114.  This Court recognized in December 2011 that it

7   did "not have access to the full fruits of discovery" and that its findings and conclusions therefore

8   were not binding.  (Dkt. No. 452 at 9-10.)  Apple's position that, nonetheless, those findings and

9   conclusions cannot be reassessed in light of interim factual and legal developments has no merit.

10   ### 2.   Courts Assessing Preliminary Injunctions On Remand Properly Consider Up-To-Date Evidence

11   In light of these principles, courts that have addressed whether to consider new evidence on

12   remand from a preliminary injunction appeal hold it is proper to do so.  *See N.A.A.C.P*, 707 F. Supp.

13   2d at 532; *Mercexchange.*, 467 F. Supp. 2d at 611.  This Court should hold the same.

14   In *N.A.A.C.P.*, the plaintiffs argued, like Apple here, "that on remand, the Court should only

15   reconsider the first factor—likelihood of success on the merits—of its decision to grant the

16   preliminary injunction, since the Court of Appeals's mandate 'said nothing about reconsidering the

17   other preliminary injunction factors.'"  707 F. Supp. 2d at 541.  Recognizing that the remand "for

18   consideration and analysis of *Ricci* and further proceedings consistent with this opinion" did not

19   "restrict the Court's analysis to any single factor in its determination to grant a preliminary

20   injunction," the court ruled it would "reexamine each of the four factors" and consider any relevant

21   new evidence in doing so.  *Id.*  Such consideration was required because "a preliminary injunction

22   is an extraordinary equitable remedy which the district court has discretion to grant or deny," and

23   because in "balancing and weighing the various factors against one another," the court should

24   consider "changed circumstance[s]" that affect the "weighing of the equities."  *Id.* at 541-42.

25   *Mercexchange* similarly concluded that current, real-world facts must be considered in

26   deciding whether to issue a preliminary injunction on remand.   467 F. Supp. 2d at 611 ("an

27   injunction . . . necessitates that the court consider the facts ***as they exist at the time of remand*** . . .

28

The *current* facts are so vital to the court's decision when such form of relief is sought as the court is not only charged with determining the equitable relief appropriate *on the date of the court's order*, but is also expected to fashion relief that appears appropriate for extension into the future") (emphasis added); *see also Lankford v. Sherman*, 451 F.3d 496, 513 (8th Cir. 2006) (remand of preliminary injunction request was required because "many facts have changed since the original hearing"); *Chemlawn Services Corp. v. GNC Pumps, Inc.*, 823 F.2d 515, 518 (Fed. Cir. 1987) (remanding preliminary injunction request where "the facts may now have changed in light of the present circumstances" and a party's "subsequent commercial activity, if any, may have altered the facts"); *Amoco Oil Co. v. Rainbow Snow, Inc.*, 809 F.2d 656, 664 (10th Cir. 1987) (assuming "there were no changes in the circumstances" during period between two preliminary injunction appeals because "following remand no new or additional evidence was presented to the district court").

Contrary to Apple's unsupported arguments, there is absolutely no basis for concluding that the Federal Circuit precluded consideration of all factors and evidence.  The court's opinion broadly remanded for "further proceedings" regarding the order "denying an injunction with respect to the D'889 patent," without expressing any limitations. *Apple v. Samsung*, slip op. at 33-34.  This broad remand for "further proceedings" plainly does not preclude the Court from fully considering all relevant factors and evidence in deciding whether to issue an injunction. *N.A.A.C.P.*, 707 F. Supp. 2d at 532.  Indeed, the Federal Circuit has held, even outside the equitable context of an injunction, that far more specific and less open-ended Circuit instructions do not require (or even permit) district courts to disregard relevant evidence and arguments on remand. *See, e.g., Exxon Chemical Patents, Inc. v. Lubrizol Corp.,* 137 F.3d 1475, 1478 (Fed. Cir. 1998) (where prior appeal "held that [defendant] was 'entitled to a judgment of noninfringement as a matter of law'" and also "stated that its reversal was 'without remand for a second trial,'" district court erred in failing to consider request for a second trial on other grounds); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (where prior appeal reversed and remanded "with instructions to reinstate the jury verdict," district court erred in failing to consider alternative arguments seeking to overturn jury verdict on remand).  All relevant facts and factors should be considered.

Case No. 11-cv-01846-LHK (PSG)
SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S
MAY 21, 2012 ORDER

**B.**     **It Would Be Manifestly Unjust Not To Consider The Substantial Developments That Have Occurred Since 2011**

There are a number of substantial recent factual and legal developments that merit the Court's consideration in assessing whether to issue an injunction.

**1.**     **New Facts Regarding Irreparable Harm Which Did Not Exist As Of December 2011**

First, there have been major changes in the marketplace that affect, and undermine, the Court's prior finding of likely irreparable harm.  When the Court considered these issues last year, it found that, *in 2010*, "Apple's market share of the tablet market decreased 20 percentage points, while Samsung's newly introduced tablet gained approximately 17% of the market," meaning "that Samsung has been taking market share from Apple overall."  (Dkt. No. 452 at 48-49 & n.29.)  This gain in market share by Samsung's Galaxy Tab 7.0—a product that is not even a subject of Apple's motion—was a prominent basis for the Court's finding of irreparable harm, which relied on the rule that the existence of "a two-player market" renders irreparable harm more likely.  (*Id.*)   Both the majority and dissent on appeal cited this same evidence.  *Apple v. Samsung*, slip. op. at 30-31; *id.* at 8-9 (O'Malley, J., dissenting).

The parties—though not yet the Court—have now seen the market share evidence for *2011*, including for the Galaxy Tab 10.1 (i.e., the actual accused product at issue), and it paints a different picture.  According to Apple's own expert, ████████████████████████████████

SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S
MAY 21, 2012 ORDER

02198.51855/4776904.8

It is because this evidence so starkly **contradicts** the Court's prior basis for finding irreparable harm that Apple insists, in its Rule 62(c) motion, that the Court enjoin Samsung to avoid the harm "that this Court found *five months ago* was likely to occur in the absence of such relief" (Dkt. No. 951 at 1) based on findings "that Apple and Samsung are the two major competitors in the tablet market" and "that in the fourth quarter of 2010, Apple's tablet market share decreased by 20%, while Samsung's newly-introduced tablet gained 17% of the market." (*Id.* at 6-7.)  It is not equitable to trumpet outdated and inaccurate information when seeking equitable relief.   The question before the Court is not whether, five months ago, Apple was likely to incur irreparable harm absent an injunction; it is whether it is likely to incur such harm today.   Up-to-date data, including proof of the actual sales of the Tab 10.1 (rather than the historical sales of the Tab 7.0 which the Court previously considered), should be considered in making this determination.

## 2.   Newly-Discovered Facts Regarding Invalidity, Infringement and Irreparable Harm Which Were Not Timely Produced By Apple

In addition to these recent marketplace developments, Samsung recently has uncovered evidence, previously withheld by Apple, that powerfully shows both the lack of irreparable harm and no likely success on the merits.   This evidence proves that, contrary to Apple's representations, the iPad2 is not and never was an embodiment of the D'889—meaning the D'889 was never practiced—and that the D'889 does not depict a flat, continuous front surface.

***The 035 Prototype***.   After the arguments on Apple's first preliminary injunction motion took place, Apple produced, pursuant to a Samsung motion to compel, a prototype tablet that it submitted photographs of to the PTO in connection with its D'889 patent application – a prototype called the "035". (Dkt. Nos. 346, 372.)

This is extraordinarily significant, for the 035 prototype looks far different from Apple's professed commercial embodiment of the D'889—the iPad2:

SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S MAY 21, 2012 ORDER

02198.51855/4776904.8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20    The stark ***dissimilarities*** between the 035 prototype and the iPad2 show that, since the 035

21  prototype concededly ***was*** the embodiment of the D'889, the iPad2 was no such thing.  And since

22  the D'889 figures were based directly on the 035 prototype, those figures cannot possibly depict the

23  dissimilar iPad2.

24    The 035 is critically relevant for another reason.

25

26
27
28



Apple inventors have admitted

***New iPad2 Design Patent Applications***.   Other new evidence also demonstrates that the iPad2 does not embody the D'889.  Apple recently produced, again after being compelled to do so, new applications it filed for design patents        Each of these applications claims                *see* 35 U.S.C. § 171 (limiting design patents to new and original designs)), meaning the iPad2 design was ***not*** patented before and that the iPad2 does ***not*** embody the preexisting D'889.

so these iPad2 design patents necessarily

---

[2]   Apple refused to produce these applications until the Court ordered it to do so on April 12, 2012.  (Dkt. No. 867 at 6-7.)

1    are for a design that **differs** from the D'889.  *See Application of Thorington*, 418 F.2d 528, 535

2    (Cust. & Pat. App. 1969) (only one patent per design).

3          This recently-discovered evidence should be considered in deciding whether to grant an

4    injunction.  In fact, this evidence has devastating consequences for Apple's motion:

5          (1)  The Court's irreparable harm analysis focused on potential lost iPad sales (Dkt. No. 452

6    at 48-49)—lost sales that are immaterial here if the allegedly infringed patent is not embodied in the

7    iPads on the market.  *High Tech Med. Instr., Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556

8    (Fed. Cir. 1995) ("lack of commercial activity by the patentee is a significant factor in the

9    [irreparable harm] calculus") (reversing preliminary injunction); *Quad/Tech, Inc. v. Q.I. Press

10   Controls B.V.*, 701 F. Supp. 2d 644, 656 (E.D. Pa. 2010) (plaintiffs' failure to implement patent in

11   any product it currently sells "is an important consideration against a finding of irreparable harm");

12   *see Apple v. Samsung*, slip op. at 16-17 ("[T]he district court was correct to require a showing of

13   some causal nexus between Samsung's infringement and the alleged harm to Apple as part of the

14   showing of irreparable harm.").

15         (2)  The Court's infringement analysis compared the Galaxy Tab 10.1 to the iPad2 based on

16   the assumption that the iPad2 embodied the D'889.  (Dkt. No 452 at 47 n.27.)  The Court cited law

17   that when "the patented design and the design of the article sold by the patentee are substantially the

18   same, it is not error to compare the patentee's and the accused articles directly."  (*Id.* at 47 n.28

19   (citing *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed. Cir. 1993)).  Such reasoning

20   does not hold true if the iPad2 is not substantially the same as the D'889.

21         (3)  Both the prior invalidity and infringement rulings were based on Apple's representations

22   that the D'889 depicts a flat, uninterrupted surface extending to the edge of the device.  Without the

23   benefit of this recently-produced evidence, the Federal Circuit provisionally accepted this false

24   representation, noting that "[t]he transparent glass-like front surface of the D'889" covers

25   "essentially the entire front face of the patented design without any breaks or interruptions, creating

26   "the visual impression of an unbroken slab of glass extending from edge to edge on the front side of

27

28

the tablet." *Apple v. Samsung*, slip op. at 29. The recently-produced evidence shows this provisional, non-binding construction is not factually accurate and should be reassessed.[3]  Of course, the proper construction of the D'889 is relevant to all aspects of the infringement and invalidity analysis.[4]

### 3.   New Legal Developments That Post-Date the December 2011 Order

Beyond the newly-existing and newly-discovered factual evidence, the Federal Circuit's opinion on appeal itself demonstrates that minor distinctions matter when it comes to design patents.  The Fidler reference had an overall "distinct visual appearance" from the D'889, for the Court of Appeals, based on differences in the sides and backs of the devices, the fact that "one corner of the frame in the Fidler reference contains multiple perforations" and other relatively minor variations.  *Id.* at 29-30.  This Court had considered such differences but found them immaterial, an error the Court of Appeals found resulted from an overly broad construction of the D'889 that viewed the design "from too high a level of abstraction." *Id.* at 30-31.  A more narrow construction was required:

> Fidler does not qualify as a primary reference simply by disclosing a rectangular tablet with four evenly rounded corners and a flat back. See Durling, 101 F.3d at 104 ("The error in the district court's approach is that it construed [the] claimed design too broadly."). Rather than looking to the "general concept" of a tablet, the district court should have focused on the distinctive "visual appearances" of the reference and the claimed design.

*Id.* at 30-31.

---

[3]   Given the provisional nature of a preliminary injunction, appellate claim construction rulings in such a context are not law of the case or binding on remand.  *Transonic Systems, Inc. v. Non-Invasive Medical Technologies Corp.*, 75 Fed.Appx. 765, 774, 2003 WL 22017533 (Fed. Cir. 2003) ("We have consistently followed the Supreme Court's precedent by holding that a claim construction reached during an appeal from a grant of a preliminary injunction is tentative and is not binding on the district court in subsequent proceedings. . . . A district court therefore is at liberty to change the construction of a claim term as the record in a case evolves after the preliminary injunction appeal."); *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) (similar); *Balboa Instruments, Inc.*, 31 F. App'x at 661 (similar).

[4]   Samsung requested that Apple bring the 035 prototype to the oral argument before the Federal Circuit in light of its obvious relevance.  Apple refused on grounds of confidentiality. (Watson Decl., Ex. 19.)

1   The Federal Circuit's narrow construction of design patents was shown elsewhere in its

2   opinion as well.  For example, it ruled that the JP'638 prior art reference did not anticipate Apple's

3   D'087 patent based on differences in the side views of the designs.  *Id.* at 21-23.  Anticipation is the

4   mirror image of infringement.  *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed.

5   Cir. 2003) ("[T]hat which would literally infringe if later in time anticipates if earlier."); *Door-*

6   *Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001) ("[T]he design patent

7   infringement test also applies to design patent anticipation.").  Thus, if such minor differences are

8   sufficient to defeat anticipation, they also suffice to defeat infringement, for "[a] patent may not,

9   like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement."

10  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (quoting

11  *Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*, 431 F.2d 539, 544 (5th Cir. 1970)).[5]

12  The Court of Appeals' narrowed claim construction, and its view that the scope of a design

13  patent is narrow, alter the construction and infringement analyses which the Court should conduct in

14  considering who is likely to succeed on the merits.  Certainly, the Circuit's guidance on claim

15  construction merits the Court's reconsideration before making enjoinment rulings on remand.[6]

16  **C.**   **The Court Should Reconsider The May 21 Order Because It Prevents The Court From Evaluating The Traditional Preliminary Injunction Factors In View Of The Current Facts And Law**

17

18  As the Court previously recognized, to "prevail on its motion for a preliminary injunction,

19  Apple must establish the following: (1) some likelihood of success on the merits of the underlying

20  litigation; (2) immediate irreparable harm will result if the relief is not granted; (3) the balance of

21  the hardships to the parties weighs in its favor; and (4) the public interest is best served by granting

22  the injunctive relief."  (Dkt. No. 452 at 9 (quoting *Abbott Labs. v. Andrx Pharms., Inc.*, 452

23

24  [5]  Images from the Federal Circuit's opinion illustrate how close designs in the crowded field of
    electronic device design can be without infringing.  *See, e.g.*, *Egyptian Goddess, Inc. v. Swisa, Inc.*,

25  543 F.3d 665, 676 (Fed. Cir. 2008) (*en banc*) (where "a field is crowded with many references

26  relating to the design of the same type of appliance, we must construe the range of equivalents very
    narrowly") (citation omitted).

27  [6]  Samsung intends to seek a rehearing and/or rehearing en banc before the Federal Circuit;
    nothing herein is intended to waive any arguments in that regard.

28

1  F.3d 1331, 1334 (Fed. Cir. 2006).)  As shown in Samsung's accompanying Opposition, the third

2  and fourth factors weigh strongly against an injunction.  In light of new evidence and developments,

3  the same is now true as to the first two factors as well.

### 1. Apple Is Not Likely To Suffer Irreparable Harm

5       The Court predicated its finding of irreparable harm on purported evidence showing that:

6  (1) Apple and Samsung were the "two major competitors in the tablet market"; (2) "Apple's market

7  share of the table market decreased 20 percentage points, while Samsung's newly introduced tablet

8  gained approximately 17% of the market"; and (3) "it does appear that Samsung has been taking

9  market share from Apple overall."   (Dkt. No. 452 at 49 & n.29.)  New evidence fundamentally

10  alters the equation with regard to irreparable harm.

11       First, as noted above, the tablet market is no longer the two-player market that was

12  significant to the Court's irreparable harm ruling last December.  Today, ███████████████████

13  ██████████████████████████████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████  This data reflects the

16  market share of the accused product, the Tab 10.1, unlike the data considered by the Court

17  previously which related to the unaccused Tab 7.0.  These real-world changes vitiate a central

18  underpinning of the Court's irreparable harm ruling, and prevent Apple from establishing

19  *prospective* irreparable harm.  *Automated Merchandising Systems, Inc. v. Crane Co.*, 357 Fed.

20  App'x 297, 301 (Fed. Cir. 2009) (reversing preliminary injunction where proof of claimed lost

21  market share was insufficient); *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991)

22  ("Neither the difficulty of calculating losses in market share, nor speculation that such losses might

23  occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction

24  prior to trial.") (citation omitted).  This is all the more true here, where the accused product is near

25  the end of its lifecycle.

26       Second, as also explained above, new evidence withheld by Apple irrefutably demonstrates

27  that, contrary to the Court's prior assumption, the iPad2 is not an embodiment of the D'889 patent.

28  Accordingly, Apple has offered no basis for relying on alleged lost sales of its *iPad2* to claim

1    irreparable harm from the alleged infringement of the distinct *D'889* patent.  The absence of such

2    evidence weighs heavily against a finding of irreparable harm.  *Apple v. Samsung*, slip op. at 16-17

3    (requiring a nexus between the infringement and harm); *High Tech Medical*, 49 F.3d at 1556.

### 2.    Apple Is Not Likely To Succeed On the Merits

5        The new developments also materially affect the likelihood of success prong of the analysis.

6    *See Astra-Zeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) ("A preliminary

7    injunction should not issue if an alleged infringer raises a substantial question regarding either

8    infringement or validity, i.e., the alleged infringer asserts an infringement or invalidity defense that

9    the patentee has not shown lacks substantial merit.").

### (a)    The D'889 Is Likely Invalid In Light of Newly-Discovered Prior Art

12       An asserted design patent is anticipated by prior art, and therefore invalid, if a single prior

art reference discloses the design.  35 U.S.C. § 102.  An asserted design patent is obvious in the

light of prior art, and therefore invalid, if a number of prior art references would have been

combined by a designer of ordinary skill in the art to disclose the design.  35 U.S.C. § 103(a);

*Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).  Whether a design is

disclosed by prior art, and thus invalid as obvious, is determined by the same "ordinary observer"

test as infringement.  *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41,

1243-44 (Fed. Cir. 2009).  Minor differences do not prevent a finding of obviousness because

"minor or trivial differences [will] necessarily exist between any two designs that are not exact

copies of one another."  *Id.* at 1243.

21       Samsung has discovered two critical prior art references that have never been considered by

*either* this Court or the Federal Circuit.  These establish that the D'889 likely is invalid as

anticipated or obvious.

24       First, U.S. patent D500,037 shows the design for a "bezel-less flat panel display" that was

filed a year before D'889's alleged conception:

D504,889      D500,037

(Declaration of Brett Arnold in Support of Samsung's Motion for Summary Judgment, Dkt. No. 943, Ex. 22.)  D'037 has nearly the same rectangular shape as the D'889 with a transparent and/or reflective surface running from edge to edge on the front of the device with no interruptions, giving the same "unframed" impression as D'889.  D'037 is also symmetrical and smooth in all views and has a relatively thin profile.  Because it creates the same basic visual appearance as D'889, it is a proper primary reference.[7]

In addition, the "Brain Box" display below,[8] from which the display portion can be removed from its base, is an Apple design made public at least as early as 1997:

_____

[7] The optional mask region on the front of D'889 is also shown in D'037.  Figure 3 of the D'037 shows the mask underneath the continuous, transparent cover piece, and the accompanying utility patent confirms a mask under the top transparent layer surrounding the active display area.  (*See* Dkt. No. 943, Ex. 24, U.S. Patent 6,919,678 at column 5, line 53 to column 6, line 31.)

[8] The image is from *AppleDesign* by Paul Kunkel (1997).  (Dkt. No. 943, Ex. 25 at 144.)

As Apple witnesses acknowledged, ███████████████████████████
██████████████████████████████████████████████████ A named inventor of D'889
testified ███████████████████████████████████████████████████████████
███████████████████████████████████████

The D'037 has design characteristics that are basically the same as the D'889, and either anticipates D'889 on its own or constitutes a proper primary reference for purposes of obviousness. The "Brain Box" display in combination with the D'037 creates the same overall visual appearance as D'889, with either serving as the primary or secondary reference to the other, such that the ordinary observer test would be satisfied.[9] "[T]he scope and content of the prior art" demonstrate that "the level of ordinary skill in the art" was sufficient, and likely, to result in the design of D'889 at the time of its alleged invention. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1308 (Fed. Cir. 2010); *see KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 417, 127 S.Ct. 1727, 1740 (2007).

---

[9] Both of these display devices are appropriate obviousness references because D'889 claims broadly that it is an "electronic device," and the file history shows that the design corresponded to both a tablet device and a display or screen that could be coupled to a computing device. (Dkt. No. 943, Ex. 26 at APLPROS0000010190.) Other prior art references also taught flat, uninterrupted front and back surfaces on a rectangular shape with rounded corners and a thin profile. (Dkt. No. 943, Ex. 27 (JP1178470), Ex. 28 (KR 30-0304213), and Ex. 24.) In addition, inventor Roger Fidler testified that in 1981 he created a tablet design that was rectangular with four evenly rounded corners, a flat clear surface running from edge to edge, no physical buttons, and a thin form factor. (Dkt. No. 943, Ex. 29 at 290:22-299:10.). These features were obvious prior to the alleged conception of D'889.

(b)    **The Galaxy Tab 10.1 Is Not Infringing Under A Proper Claim Construction**

*The Court's Prior Claim Construction Was Overbroad.*   As the Court has recognized, it is "necessary" to analyze "the scope of the claimed designs" before considering infringement.  (Dkt. No. 452 at 15.)   In its December 2011 ruling, this Court accepted Apple's broad proposed construction of the D'889 patent.  (Dkt. No. 452 at 40.)  That construction was overbroad.

"[D]esign patent scope is severely limited, essentially covering only the patent's figures and nothing more."  *Minka Lighting, Inc., v. Craftmade Int'l, Inc.*, 93 Fed. App'x 214, 216-17 (Fed. Cir. 2004) (affirming finding of non-infringement); *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope.").  The Federal Circuit's opinion adopts this principle, for this Court's error, according to the appellate court, was to view the D'889 from a "high a level of abstraction" and construe the "claimed design too broadly," which caused this Court to overlook the importance of differences between different works.  *Samsung v. Apple*, slip op. at 30-31.  The Court viewed the D'889 on the prior injunction motion from the level of abstraction requested by Apple, meaning that Apple's proposed construction is and was overbroad.  The Federal Circuit opinion requires narrowing of the claim construction.

The newly-produced 035 mockup requires narrowing of the construction as well, albeit in different ways.  The D'889 design has a clear gap between the frame and the glass surface screen, with vent holes inside the gap.  Apple inventors have admitted ██████████████ ████████████████████████████████████████████:



FIG. 1

FIG. 9

Thus, contrary to Apple's claims, the front face of the D'889 does **not** show an uninterrupted, continuous glass surface running from edge to edge. Moreover, far from having a "thin form factor" as the Court previously found, the 035 shows that the D'889 is bulky and thick.

Apple's admissions make equally clear that the D'889 design does not include a continuous flat front surface. In 2008 and 2009, long after the D'889 issued, Apple submitted applications for the D'677 and D'678 designs for an electronic device, each of which was claimed to be "new, original and ornamental." In each application, Apple identified the D'889 as prior art. The Patent Office initially rejected both designs as obvious in light of prior art. To overcome this objection, Apple asserted that the prior art cited by the Patent Office did not disclose "a substantially continuous transparent surface on an electronic device and the substantially smooth or flush transition between the display screen and the rest of the front face of the device[.]" (Watson Decl., Ex. 16 at APLPROS0000011937, Ex. 17 at APL-ITC7960000003884.) Because the D'889 preceded (and was cited as prior art to) the D'677 and D'678 designs, the D'889 necessarily must *exclude* the features Apple claimed had not previously been disclosed – viz., the "substantially continuous transparent surface" and a "substantially smooth or flush transition between the display screen and the rest of the front face of the device."[10]

**Properly Construed, There Is No Infringement.** The Court's prior infringement conclusion was heavily influenced by its comparison between the D'889 design and the iPad2. (Dkt. No. 452 at 47.) The relevant embodiment for comparison purposes is not the iPad2 but the 035 mockup, and the 035 plainly is not substantially similar to the Galaxy Tab 10.1, as shown below:

---

[10]    As the Court previously recognized, the construction of the D'889 also must exclude functional elements. "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Egyptian Goddess,* 543 F.3d at 680. This means, at a minimum, that the D'889 cannot be construed to include such items as "a size that allows portability" and a "screen [that] necessarily must encompass a large portion of the front face of the product," as the Court found previously. (Dkt. No. 452 at 39-40.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



-23-                Case No. 11-cv-01846-LHK (PSG)
SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S
MAY 21, 2012 ORDER

Comparisons of the Galaxy Tab 10.1 to the D'889 itself—when properly construed—likewise show noticeable differences that defeat infringement:



1   The Court recognized some differences between the Galaxy Tab 10.1 and the D'889

2   previously.  (Dkt. No. 452 at 45-46.)  This series of comparisons shows there are more.  The Tab

3   10.1 (1) is approximately half as thick as the D'889 design; (2) has a display screen with a 16:1

4   aspect ratio that is significantly different from the D'889 screen's 4:3 aspect ratio; (3) has an outer

5   casing made of three parts (not two); (4) has noticeably more softly rounded corners; (5) has

6   differently-shaped edges and bezel; (6) has a metallic lip and substantial ornamentation on the back;

7   and (7) has no gap between the flat front surface and the device's edge.  The 035 model shows, in a

8   way that could not previously be demonstrated, the dramatic extent and impact of these differences.

9   The Federal Circuit's opinion demonstrates that, contrary to this Court's infringement

10   analysis, distinctions such as these do make a difference in the design patent context given a design

11   patent's limited scope.  Such differences preclude a finding of infringement, as they would not

12   cause an "ordinary observer, giving such attention as a purchaser usually gives," to find the "two

13   designs are substantially the same . . . such as to deceive such an observer, inducing him to purchase

14   one supposing it to be the other."  *Egyptian Goddess*, 543 F.3d at 670.

15   **V.**   **CONCLUSION**

16   The evidence and law that have developed since the Court previously addressed Apple's

17   motion for an injunction defeat Apple's latest motion, and should be considered in adjudicating it.

18   Accordingly, the Court should grant leave to Samsung to file its motion to reconsider the Court's

19   May 21, 2012 Order.

20

21

22

23

24

25

26

27

28

SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S
MAY 21, 2012 ORDER

1  DATED: May 25, 2012                Respectfully submitted,

2                                     QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
3

4

5                                     By/s/ Victoria Maroulis _____
                                          Charles K. Verhoeven
6                                         Kevin P.B. Johnson
                                          Victoria F. Maroulis
7                                         Attorneys for SAMSUNG ELECTRONICS
                                          CO., LTD., SAMSUNG ELECTRONICS
8                                         AMERICA, INC. and SAMSUNG
                                          TELECOMMUNICATIONS AMERICA, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-                                Case No. 11-cv-01846-LHK (PSG)

SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S
MAY 21, 2012 ORDER