HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION FOR CLARIFICATION REGARDING THE COURT'S MAY 4, 2012 ORDER**<br><br>Date: June 19, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

1

**TABLE OF CONTENTS**

2
                **Page**

I.     INTRODUCTION ................................................................................................................. 1

II.    ARGUMENT ........................................................................................................................ 1

       A.     Samsung's Motion Is a Disguised Request For Reconsideration, .......................... 1

       B.     The Court Should Not Permit Samsung to Introduce Source Code Evidence of its Design-Around Efforts Based on Blue Glow ................................................. 3

            1.     Samsung Fails to Establish That it Produced Blue Glow Source Code For Any Accused Products By December 31, 2011 .......................... 3

            2.     The Court Should Not Allow Samsung To Use Any Blue Glow Code For Products or Versions of Products Where Samsung Did Not Produce Such Code By December 31 .................................................... 5

       C.     The Court Should Not Permit Samsung to Present Non-Source Code Evidence of Design-Arounds for the '381 or '163 Patents ..................................... 6

III.   CONCLUSION .................................................................................................................... 9

## I. INTRODUCTION

Samsung asks the Court to "clarify" its unambiguous May 4, 2012 Order. Samsung fails to show, however, why any clarification is needed. Samsung recycles arguments that the Court already rejected, speculates about what the Court's clear words really "meant," and rests on a factual predicate—its claim that it produced more source code on time than it previously accounted for—that is unsupported and belied by controverting evidence. Samsung's motion is a disguised motion for reconsideration, but Samsung fails to meet the standard for such a motion.

The Court should not change its May 4 Order. The Court should instead confirm that "Samsung shall be precluded from offering any evidence of its design-around efforts for the '381, '891, and '163 Patents." (Dkt. No. 898 at 9.)

## II. ARGUMENT

### A. Samsung's Motion Is a Disguised Request For Reconsideration,

Although styled as a motion for "clarification," that is not what Samsung's motion seeks. Samsung points to no ambiguity in the Court's May 4 Order that needs "clarification." Nor can it. The May 4 Order was crystal clear: "Samsung shall be precluded from offering any evidence of its design-around efforts for the '381, '891, and '163 Patents, and shall not argue that the design-arounds are in any way distinct from those versions of code produced in accordance with the court's [December 22, 2011] order." (Dkt. No. 898 at 9.)

Samsung's requested relief is directly contrary to that ruling. Samsung asks for permission to use source code at trial that it contends embodies its design around attempts and for permission to use non-source code evidence of its alleged design-arounds. What Samsung really seeks is reconsideration, not clarification. But Samsung has not presented a proper basis for reconsideration.

A motion for reconsideration may be filed only with leave of court. Civ. L.R. 7-9 (a). Samsung has not requested such leave. Had Samsung sought leave, it would have failed to meet the applicable standard. It can point to no change of material facts or law. Civ. L.R. 7-9 (b)(2). Nor can it show a "manifest failure by the Court" to consider Samsung's evidence or arguments. Civ. L.R. 7-9 (b)(3). Samsung's only possible rubric would be that a "material difference in fact

APPLE INC.'S OPP. TO MOT. FOR CLARIFICATION REGARDING MAY 4, 2012 ORDER
CASE NO. 11-CV-01846-LHK (PSG)
sf-3149967

1

1  or law exists from that which was presented to the Court before entry" of the Court's order, but
2  that would require Samsung to show that it exercised "reasonable diligence" and yet did not know
3  the true facts.  Civ. L.R. 7-9 (b)(1).  Samsung could not possibly make that showing.

4      Samsung's request to use source code allegedly produced before December 31 is based on
5  its claim that it did produce by then some source code containing its blue glow design-around.
6  But Samsung's opposition to Apple's motion said that it "produced the code relating to its
7  implementation of design-around technology on January 23 and March 10 and 12…."  (Dkt.
8  No. 834 at 3 n.2; *see also id*. at 7-8.)  And, at oral argument, when asked whether "the blue glow
9  code was produced by [December] 31st," Samsung's counsel stated that "I don't know the answer
10 to that."  (Pernick Decl. Ex. B at 32:15-33:9.)  Samsung offers no explanation for its late
11 discovery of its supposed error, and no argument that it exercised reasonable diligence.  In any
12 case, given the Court's explicit question on the subject at the hearing, Samsung could and should
13 have brought its supposed error to the Court's attention before the May 4 Order issued.  This was
14 *Samsung's* production of *Samsung's* source code.  These facts were within Samsung's control,
15 and Samsung cannot show the "reasonable diligence" required to support a motion for
16 reconsideration based on new facts.  *See* Civ. L.R. 7-9 (b)(1).

17     Samsung's request to use non-source code evidence to show its design-around efforts is
18 also improper.  For the '381 Patent, Samsung relies on arguments it already made and the Court
19 rejected.  (*Compare* Mot. at 5 (arguing that Apple does not need source code to analyze
20 infringement) *with* Pernick Decl. Ex. B at 16:2-7 (Apple's expert "said he doesn't need source
21 code to determine whether that's infringement or not"); Mot. at 5 (arguing that Apple knew about
22 existence of blue glow) *with* Dkt. No. 834 at 7-8 ("Apple has had anywhere from *many weeks to*
23 *three months* to analyze this source code") and Pernick Decl. Ex. B at 16:2-7 ("they've known
24 about the blue glow for a while").)  Civil Local Rule 7-9(c) expressly forbids such repetition of
25 failed arguments.

26     For the '163 Patent, Samsung raises new arguments regarding the use of non-source code
27 evidence "for purposes other than establishing liability for infringement."  (Mot. at 7.)  Samsung
28 does not explain why it did not present this argument in its original papers.  As noted, the Local

APPLE INC.'S OPP. TO MOT. FOR CLARIFICATION REGARDING MAY 4, 2012 ORDER
CASE NO. 11-CV-01846-LHK (PSG)
sf-3149967

2

1  Rules do not authorize reconsideration of an Order on the basis of arguments that a party could
2  have, but did not, timely raise with the Court. Civ. L.R. 7-9 (b). The Court should deny
3  Samsung's thinly-veiled motion for reconsideration on these grounds alone.

### B. The Court Should Not Permit Samsung to Introduce Source Code Evidence of its Design-Around Efforts Based on Blue Glow.

Samsung asserts that the source code it produced by December 31 included blue glow code for four accused products (the Galaxy S II, Exhibit 4G, Galaxy Tab 10.1, and Epic 4G), and asks the Court to reverse its decision precluding Samsung from using this code at trial. Samsung's contention is not only a failed motion for reconsideration; it also fails on the merits.

#### 1. Samsung Fails to Establish That it Produced Blue Glow Source Code For Any Accused Products By December 31, 2011.

The sole support for Samsung's new claim of timely source production is one vague and conclusory paragraph in a declaration by Samsung's attorney. (*See* Dkt. No. 922-3 ¶ 3 (sealed).) This uncorroborated statement by counsel does not identify which carrier versions of the products used blue glow code or which applications in the products supposedly used blue glow. Samsung's attorney is not an expert, and he lacks personal knowledge of the facts to which he attests. He does not state that he participated in the analysis which led to the "discovery" that Samsung produced blue glow code before December 31. Indeed, he concedes that Samsung—not he—performed that analysis. (*Id*.) The Court has *no basis* to credit Samsung's assertions.

There are several other reasons for doubting that Samsung's limited production of source code before December 31 included relevant blue glow code.

**Galaxy S II.** As Apple explained at the April 24 hearing (Pernick Decl. Ex. B at 5:2-6:21, 9:1-10:11), although Samsung did produce blue glow code for the Galaxy S II (T-Mobile) by December 31, Apple does not accuse that product of infringing the '381 Patent. This production is thus irrelevant. Samsung does not contend that it timely produced blue glow code—or any source code—for any other carrier versions of the Galaxy S II.

**Exhibit 4G/Galaxy Tab 10.1.** Apple's expert on the '381 Patent—Dr. Ravin Balakrishnan—studied the timely-produced source code for the Exhibit 4G and Galaxy Tab 10.1 products and opined that it implemented the bounce function claimed in the '381 Patent, not blue

glow. (Pernick Decl. Ex. A at ¶¶ 77-78, 85-86, 93-95, 190-92, 230-31.) Excerpts from Dr. Balakrishnan's March 22 report containing this analysis are attached to the declaration accompanying this brief. (*Id.*) Samsung did not question Dr. Balakrishnan on this topic at his deposition, and its motion does not challenge his conclusion or cite analysis from its own experts to the contrary.

**Epic 4G.** Samsung's account for the Epic 4G is riddled with inconsistencies. Samsung has several different stories regarding how it selected which code to produce in response to the Court's December 22 Order. Samsung first said that (a) for accused products that existed when Apple filed suit in April 2011, it produced the source code for the version that was on the market at that time, and (b) for accused products released after suit, it produced the code for the initially-released version. (Dkt. No. 796-1 at 2.) Samsung later changed its position, and represented that the source code it produced before December 31 for *every* accused product was the code for the version of the product when first released. (Dkt. No. 834 at 3 n.2, 5; Pernick Decl. Ex. B at 17:13-14.) But Samsung apparently applied some other undisclosed criteria in choosing what source code to produce for the Epic 4G.

Samsung's motion now reports that the Epic 4G source code it produced was from the Android Gingerbread 2.3.6 version of the product. (Dkt. No. 922-3 ¶ 3 (sealed).) This version was released on September 2, 2011. (Pernick Decl. ¶¶ 6-7, Ex. D at p. 13.) That is thirteen months after the Epic 4G's initial release in August 2010 (*see* Pernick Decl. ¶¶ 4-5, Ex. C at p. 1)—which is the date Samsung would have selected under option (b) above—and five months after Apple filed suit in April 2011 (which is the date Samsung would have selected under option (a) above). In other words, the version of the Epic 4G for which Samsung now claims it timely produced source code was *neither* the initial release of the product nor the version that existed when Apple filed suit. If Samsung's new claim about what Epic 4G code it produced by December 31 is correct, then each of Samsung's prior representations about how it decided which code to produce was false. Samsung never explains why its story keeps changing, but it raises the specter "that Samsung or its counsel intended to deceive Apple…." (*See* Dkt. No. 898 at 8.)

APPLE INC.'S OPP. TO MOT. FOR CLARIFICATION REGARDING MAY 4, 2012 ORDER
CASE NO. 11-CV-01846-LHK (PSG)
sf-3149967

4

Whatever the explanation, if Samsung's latest account is correct, then the Epic 4G source code Samsung produced was for a *post-release version* that implemented its attempted design-around. This would mean that Samsung excluded from its production pre-blue glow source code for the Epic 4G, and thus deprived Apple of other evidence that the Court ordered Samsung to produce and that would have helped Apple to prove infringement by the pre-design-around versions of the product.[1] The December 22 Order did not permit Samsung to "cherry pick" only the source code that it thought was most favorable for it. (Dkt. 898 at 5; Pernick Decl. Ex. B at 15:10-11.) Thus, even *if* Samsung timely produced blue glow code for the Epic 4G, its use of that code at trial would result in precisely the uneven playing field that the May 4 Order sought to prevent.

Samsung has shown no basis for altering the May 4 Order. The Court should confirm that Samsung cannot in any way use its blue glow code at trial, including to rebut infringement evidence relating to any or all versions of the Exhibit 4G, the Epic 4G, and the Galaxy Tab 10.1.

### 2. The Court Should Not Allow Samsung To Use Any Blue Glow Code For Products or Versions of Products Where Samsung Did Not Produce Such Code By December 31.

Samsung's request for permission to use blue glow code at trial also seeks more sweeping relief that the Court should deny. Samsung's brief and proposed order ask for permission to use any timely-produced design-around source code *without limitation*, *i.e.*, not just in the context of the four specific product versions where Samsung supposedly produced blue glow code. (Mot. at Notice & 4; Dkt. No. 923 at 2.) Samsung presumably wants to introduce evidence at trial regarding its alleged design-around efforts for versions of accused products even where Samsung admits that the sole version of source code it produced did not include blue glow code. This is a preposterous request.

Even if Samsung produced blue glow code by December 31 for one version of the Exhibit 4G, the Epic 4G, and the Galaxy Tab 10.1—which Samsung has not established—the Court

---

[1] There is no dispute that there were pre-design-around versions of the Epic 4G that featured the bounce function claimed by the '381 Patent, not blue glow. (Pernick Decl. Ex. A ¶¶ 37, 79, 87, 96.)

should not allow Samsung to extrapolate that blue glow code to (a) other products, or (b) other versions of these four products. By not timely producing source code for those other products and other versions, Samsung violated the December 22 Order, which required production of *all* versions of source code for *all* accused products. (Dkt. No. 898 at 4-5.) Samsung's incomplete production prevented Apple from engaging in discovery regarding these other products and versions, and from fully analyzing them. This was why the Court prohibited Samsung from all use of its design-around efforts—including blue glow—at trial. (Dkt. No. 898 at 7.)

If Samsung wanted to show that other accused products used a design-around, Samsung should have produced the source code for these products by December 31. *Samsung did not do that*. The Court should confirm that Samsung cannot use any blue glow code for purposes of establishing any design-around efforts.

### C. The Court Should Not Permit Samsung to Present Non-Source Code Evidence of Design-Arounds for the '381 or '163 Patents.

The May 4 Order unambiguously precluded Samsung from "offering *any* evidence of its design-around efforts"—not just source code—for three of Apple's patents. Samsung wants the Court to change its decision, for it "believes that the Court meant to limit its Order to the source code" that Samsung produced late. But nothing in the Court's ruling needs "clarification," and Samsung's speculation that the Court meant something other than what it said does not warrant the relief Samsung seeks. The Court should not allow Samsung to use non-source evidence of its efforts to design around the '381 and '163 Patents because any such evidence would be inadequate and incomplete.

Samsung's failure to abide by the Court's December 22 Order to produce the relevant source code for all of its accused products meant that Apple could not use that code to test Samsung's assertions about when Samsung implemented its alleged design-arounds and in which products they were implemented. Apple needed the source code for these purposes because Samsung never produced a full set of code for all versions of the accused products and because the change logs to which Samsung points speak only to when changes occurred—they do not actually show what the changes were. (Mot. at 6.) Because Samsung refused to produce all of its

source code—which would have provided conclusive proof on these issues—it would be unfair to allow Samsung to put on evidence about these implementation details through oral testimony or narrative documents as opposed to through source code.

This issue, moreover, was already addressed. As Apple explained in its original papers, "[u]nfairness could arise even if Samsung were merely precluded from affirmatively using th[e] [source code] evidence. Samsung could, in that event, still present a design-around defense based on testimony or other non-source code evidence. But Samsung still would have hamstrung Apple's ability to challenge that evidence with the code." (Dkt. No. 844 at 6.) Apple's prediction was correct, for that is what Samsung now seeks license to do. But none of Samsung's rehashed contentions—or its claim that the Court erred—justifies a different result the second time around.

**The '381 Patent.** With respect to the '381 Patent, Samsung further maintains that source code is not necessary to show infringement by the accused products, and that Apple knew that the blue glow design-around existed. (Mot. at 5-6.) Besides the fact that the Court already rejected these arguments, contentions of this nature are misplaced at this juncture. "[T]he time for arguments about [ ] considerations" like Apple's need for source code "was before the [December 22] order issued. Once the order compelling production issued, the focus of this court's appropriate inquiry necessarily shifts to compliance." (Dkt. No. 898 at 6 (quoting *In re Google Litig.*, 2011 WL 6951972, at *21 (N.D. Cal. July 8, 2011)).)

Samsung's other assertions likewise fall flat. Samsung points to the "carve-out for the '381 Patent" from Apple's draft stipulation regarding representative source code as evidence that Apple could "determin[e] that each product incorporates the blue glow function." (Mot. at 6.) This is disingenuous. Apple carved out the '381 Patent from the draft stipulation because Samsung insisted on it. During the negotiations that preceded the preparation of the stipulation, Samsung made clear that it would not stipulate, for purposes of analyzing infringement of the '381 Patent, that the produced versions of source code were representative of all versions. (Dkt. No. 796-3 at 2 (contending that modifications had been made to source code for "bounce" functionality); Dkt. No. 796-4 at Letter p. 1, and Stipulation p. 2 (stipulation would achieve only a "partial resolution" of the parties' dispute) & ¶ 2 (stipulation did not address all of parties'

disputes).) Apple's exclusion of the '381 Patent says nothing whatsoever about what Apple could or could not determine regarding whether particular product versions incorporated blue glow—let alone regarding when Samsung implemented blue glow into its various accused products.

Samsung also claims that Apple's counsel "has known since at least November 29, 2011 that Samsung incorporated the blue glow function in each accused product." (Mot. at 5.) But the only support Samsung cites on this point is an Apple letter stating that it had learned of the blue glow functionality and requesting documents relevant to the feature. (Dkt. No. 922-3 Ex. 14.) There is *no suggestion* in that letter that Apple thought blue glow was implemented in each accused product. Indeed, Apple is prejudiced by Samsung's failure to produce source code precisely because it leaves Apple without documentary evidence of when and where Samsung deployed blue glow.

Samsung's claim that Dr. Balakrishnan "admitted that source code is not necessary to determine whether the accused products infringe the '381 Patent" is similarly unavailing. (Mot. at 5.) None of the materials Samsung cites reflects such an admission. (Dkt. No. 922-3 Exs. 9-11.) Many of Samsung's citations are to materials from the preliminary injunction phase. At this later stage of the case—both in his expert report and at his deposition—Dr. Balakrishnan indeed cited Samsung source code. (Pernick Decl. Ex. A at ¶¶ 77-78, 85-86, 93-95, 190-92, 230-31; Dkt. No. 922-3 Ex. 9 at 133:16-134:11.)

**The '163 Patent.** As for the '163 Patent, Samsung argues that it should be allowed to use non-source code evidence of both implemented and unimplemented design-around efforts for purposes other than contesting infringement. The Court should reject this argument to the extent it applies to any implemented design-arounds. The May 4 Order explicitly precludes evidence of such design-arounds for *all purposes*, not just infringement. Samsung cannot do an end-run around this ruling by suggesting now that the evidence is relevant to damages or injunctive relief. The underlying questions in those contexts will be the same as for infringement: whether the '163 Patent reads on the accused products, which versions implemented any Samsung design-arounds, and when those design-arounds were implemented. Given Samsung's discovery violations, it would be just as unfair to allow Samsung to litigate these questions with source code

in the context of damages or injunctive relief as it would be in the context of infringement. In all of these scenarios, Samsung violated a Court order and deprived Apple of source code evidence that would assist Apple in contesting Samsung's defenses.

There is also no basis for granting Samsung permission to introduce evidence of design-arounds that it considered but never implemented. (Mot. at 6-7.) The Court has precluded Samsung from relying on its "design-around efforts," not just design-arounds that it implemented. (Dkt. No. 898 at 9.) There is again no ambiguity in this ruling that requires clarification.

The Court's decision, moreover, made perfect sense. As discussed above, when faced with a Court order directing it to produce the source code for all of its accused products, Samsung selectively produced only a small fraction of the required code. In doing so, Samsung withheld important evidence regarding its products, including evidence of when it implemented design-arounds and in which products it implemented them. Now that Samsung has hamstrung Apple in this way, it would be unfair to allow Samsung to use other evidence of design-arounds that it considered when it wants to bolster its case on lost profits or in opposing injunctive relief. Samsung cannot withhold the design-around evidence that Apple needed and then use the design-around evidence that helps its cause. The Court granted relief that would prevent this unfairness.

## III.  CONCLUSION

For the reasons discussed above, the Court should deny Samsung's Motion for Clarification Regarding the Court's May 4, 2012 Order.

Dated: May 29, 2012					MORRISON & FOERSTER LLP


							By:	*/s/ Michael A. Jacobs*
								Michael A. Jacobs

								Attorneys for Plaintiff
								APPLE INC.