# EXHIBIT B

1             IN THE UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

   APPLE, INC,                      )   CV-11-1846-LHK
5                                    )
                   PLAINTIFF,        )   SAN JOSE, CALIFORNIA
6                                    )
          VS.                        )
7                                    )   APRIL 24, 2012
   SAMSUNG ELECTRONICS, CO.          )
8    LTD., ET AL,                    )
                                     )   PAGES 1-51
9                   DEFENDANT.       )
      _____

10

11            TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE PAUL S. GREWAL
12           UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15

16   FOR THE PLAINTIFF:  MORRISON & FOERSTER, LLP
                         BY:  ALISON TUCHER
17                            RICHARD HUNG
                              MARC PERNICK
18                       425 MARKET STREET
                         SAN FRANCISCO, CA 94105
19

20   FOR THE DEFENDANT:  QUINN EMANUEL
                         BY:  KEVIN JOHNSON
21                            MELISSA CHAN
                         555 TWIN DOLPHIN DRIVE, STE 560
22                       REDWOOD SHORES, CA 94065

23

24

25   OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                              CERTIFICATE NUMBER 13185

                                                        1

```
 1    SAN JOSE, CALIFORNIA          APRIL 24, 2012
 2                    P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5              THE COURT:  MR. RIVERA, WOULD YOU CALL
 6    THE NEXT MATTER ON THIS MORNING'S CALENDAR.
 7              THE CLERK:  YES, YOUR HONOR.
 8              CALLING APPLE, INC. VERSUS SAMSUNG
 9    ELECTRONICS COMPANY, ET AL.
10              CASE CV-11-1846.  MATTER ON FOR
11    PLAINTIFF'S RULE 37 (B)(2) MOTION.
12              COUNSEL, PLEASE COME FORWARD AND STATE
13    YOUR APPEARANCES.
14              MR. JOHNSON:  GOOD MORNING, YOUR HONOR.
15              KEVIN JOHNSON.  AND WITH ME IS MELISSA
16    CHAN FROM QUINN EMANUEL ON BEHALF OF SAMSUNG.
17              THE COURT:  MR. JOHNSON, GOOD MORNING
18    SIR.
19              MS. TUCHER:  GOOD MORNING, YOUR HONOR.
20              ALLISON TUCHER FROM MORRISON & FOERSTER.
21    WITH ME TODAY ARE MY PARTNERS RICH HUNG AND
22    MARC PERNICK.
23              THE COURT:  MS. TUCHER, GOOD MORNING TO
24    YOU AS WELL.
25              ALL RIGHT.  THE LATEST IN THE SERIES OF
```

1    MOTIONS FOR SANCTIONS.

2              I TAKE IT YOU ALL SAW MY ORDER THAT I

3    ISSUED LAST EVENING.  I DON'T WANT TO RE PLOW OLD

4    GROUND, BUT I HOPE THAT GIVES YOU AT LEAST SOME

5    SENSE OF WHERE I'M AT GENERALLY IN THIS CASE

6    REGARDING COMPLIANCE WITH MY ORDERS.

7              THIS IS APPLE'S MOTION SO I WILL START

8    WITH YOU MS. TUCHER.

9              MS. TUCHER:  THANK YOU, YOUR HONOR.

10             APPLE HAS ALLEGED CONTINUING INFRINGEMENT

11   IN THIS CASE.  THAT MEANS WE HAVE TO PROVE NOT ONLY

12   THAT SAMSUNG INFRINGES OUR PATENTS ON THE DAY THAT

13   IT RELEASES A NEW PRODUCT, BUT ALSO THAT IT

14   CONTINUES TO INFRINGE OUR PATENTS AS IT UPDATES THE

15   SOFTWARE OVER THE WEEKS AND MONTHS THE PRODUCTS

16   REMAIN ON THE MARKET.

17             BECAUSE WE NEED THAT SOFTWARE WE ISSUED

18   REQUEST FOR PRODUCTION AND THEN WE GOT AN ORDER

19   FROM THIS COURT IN DECEMBER OF LAST YEAR REQUIRING

20   SAMSUNG TO PRODUCE ALL VERSIONS OF SOURCE CODE ON

21   ALL OF THE ACCUSED PRODUCTS, AT LEAST --

22             THE COURT:  DID I SAY ALL VERSIONS?

23             MS. TUCHER:  NO.

24             WHAT YOU SAID WAS THAT SAMSUNG WAS

25   REQUIRED TO PRODUCE THE SOURCE CODE THAT APPLE

3

1    HAD -- LET ME GIVE YOU THE EXACT LANGUAGE.

2         SAMSUNG SHALL PRODUCE THE SOURCE CODE

3    REQUESTED BY APPLE'S MOTION, WITH AN EXCEPTION, AND

4    THE EXCEPTION WENT TO -- SORRY, IT WAS SOURCE CODE

5    AND TECHNICAL DOCUMENTS.  THEN IT WAS AN EXCEPTION

6    THAT WENT TO TECHNICAL DOCUMENTS AS TO WHICH THERE

7    HAD BEEN NO MEET AND CONFER.

8         BY TECHNICAL DOCUMENTS, SOME OF THESE

9    HAVE RELATION TO SOURCE CODE.

10        SO FOR EXAMPLE, WE ASKED FOR VERSION LOGS

11   THAT WOULD ENABLE US TO TELL WHEN DIFFERENT

12   VERSIONS OF SOURCE CODE WERE IMPLEMENTED.

13        BUT YOUR HONOR'S ORDER WAS QUITE CLEAR

14   INCLUDING IN A FOOTNOTE BY REQUEST NUMBER, THE

15   REQUESTS THAT WERE EXEMPTED BECAUSE THEY DIDN'T

16   INVOLVE MEET AND CONFER, IT LOOKS TO US AS THOUGH

17   YOU TOOK THAT LIST STRAIGHT FROM A SAMSUNG

18   DECLARATION PROVIDED BY MR. CHAN.

19        AND IN THAT DECLARATION, PARAGRAPH 21 OF

20   THE DECLARATION WHERE MR. CHAN LISTS EXACTLY THAT

21   SAME LIST OF REQUESTS FOR PRODUCTION THAT APPEAR IN

22   THE FOOTNOTE OF YOUR ORDER, HE REFERS TO THESE

23   REQUESTS AS NON SOURCE CODE DOCUMENTS.

24        INDEED, THEY ARE, AND THAT'S WHY NOTHING

25   IN THE EXEMPTION WITH THE EXCEPTION OF YOUR

4

1    DECEMBER ORDER APPLIES TO THE SOURCE CODE.

2              HAVING SECURED THE ORDER, WE THEN GOT

3    FROM SAMSUNG A SINGLE VERSION OF SOFTWARE FOR

4    ALMOST EVERY ONE OF THE PHONES THAT HAD BEEN

5    RELEASED.  AND I SAY ALMOST EVERY ONE ONLY BECAUSE

6    THERE'S A COMPLICATION WITH REGARD TO THE S2.

7              YOU WILL REMEMBER --

8              THE COURT:  EXPLAIN THAT TO ME.

9              MS. TUCHER:  YOU WILL REMEMBER THAT WE

10   ACCUSED THE S2 OF INFRINGING OUR UTILITY PATENTS

11   AND THAT SAMSUNG RELEASED THE S2 IN MANY DIFFERENT

12   VARIANTS OR MANY DIFFERENT VERSIONS.

13             IT RELEASED IN SEPTEMBER OF 2011 A

14   VERSION TO -- SORRY, SEPTEMBER WAS THE S2 EPIC 4G

15   TOUCH, WHICH IS A SPRINT PHONE.  AND THEN IN

16   OCTOBER IT RELEASED THE AT&T VERSION OF THE GALAXY

17   S2.  AND THE T-MOBILE VERSION OF THE GALAXY S2.

18             THEN IT WENT ON LATER IN THE FALL TO

19   RELEASE FURTHER VERSIONS THROUGH OTHER CARRIERS AND

20   A SECOND AT&T VERSION.

21             SO THE REASON THIS IS IMPORTANT IS THAT

22   IF SAMSUNG HAD DONE WHAT IT SAID IT WAS DOING IN

23   PRODUCING ONE, IN PRODUCING THE FIRST VERSION OF

24   SOFTWARE FOR EACH OF THE PHONES, YOU WOULD EXPECT

25   THAT THEY EITHER HAD GIVEN US THE GALAXY S2 EPIC 4G

5

1     TOUCH AND EXPECTED US TO VIEW THAT AS SOFTWARE

2     REPRESENTATIVE OF ALL THE S2'S OR THAT THEY HAVE

3     GIVEN US SOFTWARE FOR EACH OF THE DIFFERENT

4     VARIANTS OF EACH OF THE DIFFERENT CARRIERS SO THAT

5     WE COULD ANALYZE EACH OF THOSE.

6                THE COURT:  I TAKE IT YOUR POINT IS THEY

7     DID NOT.

8                MS. TUCHER:  THEY DIDN'T.

9                INSTEAD, THEY THOSE THE T-MOBILE VERSION

10    OF THE S2 AND THEY GAVE US A SINGLE VERSION OF THAT

11    ONLY.

12                SO THE REASON THAT MATTERS IS THAT WHEN

13    WE GET TO THE APPROPRIATE SANCTION FOR THEIR

14    VIOLATION OF YOUR ORDER, THE QUESTION IS HOW DO WE

15    FILL IN THE GAPS?

16                AND FIRST, I WANT TO JUST ESTABLISH THE

17    IMPORTANCE OF FILLING IN THE GAPS.  IT'S NOT JUST

18    HYPOTHETICAL THAT SOMEHOW SAMSUNG IS GOING TO

19    ATTACK APPLE'S PROOF ON THE GROUNDS THAT WE CAN

20    ONLY PROVE INFRINGEMENT BASED ON A SINGLE PHONE, SO

21    HOW CAN APPLE MAINTAIN CONTINUING INFRINGEMENT.

22                ON THE RUBBER BANDING PATENT WE HAVE AN

23    EXPERT BY THE NAME OF ROBERT BALAKRISHNAN.  HE WAS

24    CROSS-EXAMINED, ONE OF THE EXPERT DEPOSITIONS THAT

25    TOOK PLACE JUST LAST FRIDAY.

1    I KNOW THAT'S THE ONE DR. BALAKRISHNAN FOCUSED ON

2    WHEN HE REGARDED HIS TESTIMONY ABOUT HOW THE

3    GINGERBREAD OPERATES WITH REGARD TO THE BALANCE

4    FUNCTIONALITY.

5              THE COURT:  ANYTHING ELSE ON YOUR LIST?

6              MS. TUCHER:  NOT UNLESS YOU HAVE

7    QUESTIONS, THANK YOU.

8              THE COURT:  ALL RIGHT.  THANK YOU.

9              MR. JOHNSON?

10             SO DID MY ORDER PERMIT SAMSUNG TO CHERRY

11   PICK CERTAIN VERSIONS OR WAS IT FAIRLY EXPLICIT?

12             MR. JOHNSON:  THERE WASN'T ANY CHERRY

13   PICKING OF VERSIONS.

14             WITH RESPECT TO THE S2, THIS IS THE FIRST

15   TIME HEARING OF THE ISSUE WITH RESPECT TO THE S2 IN

16   PARTICULAR.

17             SO THIS SORT OF GOES BACK TO

18   YOUR HONOR'S, I THINK, POINT AT THE LAST HEARING AS

19   WELL WHICH WAS THE MEET AND CONFER PROCESS ON THE

20   FUNCTIONALITY OF THE SOURCE CODE DIDN'T START IN

21   MARCH, DIDN'T START IN FEBRUARY.

22             THIS STARTED IN THE FALL.  AND THEY

23   SERVED DISCOVERY ON OCTOBER ON DESIGN AROUNDS THEN

24   THEY SERVED AN INTERROGATORY IN JANUARY ON DESIGN

25   AROUNDS.  AND WE RESPONDED FEBRUARY 3RD, AND WE

15

1    ARTICULATED WHAT THE DESIGN AROUNDS WERE.

2              WITH RESPECT TO THE BLUE GLOW

3    APPLICATION, THEY'VE KNOWN ABOUT THE BLUE GLOW FOR

4    A WHILE AND THEIR EXPERTS, INCLUDING

5    DR. BALAKRISHNAN, HAS SAID HE DOESN'T NEED SOURCE

6    CODE TO DETERMINE WHETHER THAT'S INFRINGEMENT OR

7    NOT.

8              SO THIS IS A LITTLE BIT OF, I AGREE THAT

9    WE WERE BOUND TO PRODUCE SOURCE CODE AND WE

10   PRODUCED SOURCE CODE.  BUT TO DETERMINE WHETHER

11   THERE'S INFRINGEMENT, YOU LOOK AT THE DEVICE AND

12   YOU SEE IF IT OPERATES ACCORDING TO THE CLAIMS IN

13   THE PATENT.

14             AND I DID DEPOSE DR. BALAKRISHNAN ON

15   FRIDAY AND I ASKED HIM ABOUT THE PRODUCTS BECAUSE I

16   COULDN'T TELL FROM HIS REPORT WHAT PHONE HE HAD.

17   HE DIDN'T BRING ANY OF THE PHONES TO HIS

18   DEPOSITION.

19             AND I ASKED HIM WHAT VERSION OF GALLERY

20   HE WAS LOOKING AT BECAUSE THERE ARE LOTS OF

21   DIFFERENT ITERATIONS WITHIN THE GALLERY APPLICATION

22   THAT THEY CLAIM ARE INFRINGING.

23             AND SOME OF THOSE WHEN YOU MOVE A PHOTO

24   FROM ONE PHOTO TO THE NEXT, THAT'S A DIFFERENT

25   INFRINGEMENT READING THAN WHEN YOU ZOOM IN ON A

1   PHOTOGRAPH AND YOU MOVE THE PHOTOGRAPH AROUND BY

2   ITSELF.  THERE ARE DIFFERENT THEORYS EVEN WITHIN

3   THE GALLERY.

4           SO WHEN I WAS ASKING HIM ABOUT WHAT ARE

5   THE DIFFERENT VERSIONS HE WAS LOOKING AT BECAUSE IT

6   WASN'T IN HIS REPORT AND I WAS TRYING TO UNDERSTAND

7   WHAT CAPTIVATE PHONE HE HAD LOOKED AT AND I DIDN'T

8   HAVE ANY PROOF OF THAT.

9           SO TO GO BACK, WE WERE ORDERED TO PRODUCE

10  SOURCE CODE, AND I DO THINK THERE'S AN IMPORTANT

11  EXCEPTION IN YOUR HONOR'S DECEMBER 22ND ORDER THAT

12  SAID PRODUCE THE SOURCE CODE BY DECEMBER 31ST.

13          WE PRODUCED THE AS RELEASED SOURCE CODE

14  FOR ALL OF THE PRODUCTS THAT WERE ACCUSED.

15  DR. BALAKRISHNAN, WHEN I DID DEPOSE HIM, I DON'T

16  HAVE THE BENEFIT OF HAVING THE OTHER PARTS OF THE

17  TRANSCRIPT HERE, BUT HE SAID THE AS RELEASED CODE

18  IS WHAT'S IMPORTANT, IT'S WHAT HE'S CONSIDERED.

19  THEY'VE HAD A PERSON, THEY HAD CODE REVIEWERS IN

20  OUR OFFICE SINCE DECEMBER EVERY DAY, SATURDAYS AND

21  SUNDAYS INCLUDING THIS PAST WEEKEND LOOKING AT THE

22  SOURCE CODE.

23          WE PRODUCED SOMETHING ON THE ORDER OF 50

24  MILLION PAGES OF CODE AS BACK IN DECEMBER 31ST.

25          THERE WAS A SUBSEQUENT ORDER, YOUR HONOR,

17

1    WHERE APPLE MOVED TO COMPEL DOCUMENTS RELATED TO

2    THE EVOLUTION, THE FEATURES AND THE UPDATES OF THE

3    SOFTWARE.  AND WE THEN COLLECTED THAT INFORMATION

4    AND PRODUCED THE INFORMATION THAT RELATES TO THE

5    VERSION CHANGES.

6            AND IN -- YOUR HONOR, FROM JANUARY 27TH

7    YOU ASKED, YOU PROVIDED BASICALLY AN ALTERNATIVE

8    AND YOU SAID IN ORDER TO AVOID SOME OF THE BURDEN

9    ASSOCIATED WITH IT, PARTIES CAN AGREE TO REACH SOME

10   SORT OF STIPULATION.

11           AND WE SAW THAT AS A REAL RESPONSIBILITY.

12   WE STARTED NEGOTIATING WITH THEM RIGHT AWAY.

13           THEY DID REQUIRE FROM THE VERY BEGINNING,

14   YOUR HONOR, THAT SAMSUNG STIPULATE TO THE FACT THAT

15   SOMEHOW SAMSUNG HAD VIOLATED THE COURT'S

16   DECEMBER 22ND ORDER IN THE INITIAL STIP THAT THEY

17   SENT TO US.

18           AND EVEN IN THE LETTER THAT'S ATTACHED TO

19   EXHIBIT -- IT'S EXHIBIT 2 TO THE BRIGGS DECLARATION

20   FROM MR. PERNICK, HE SAYS IN PARAGRAPH 2:

21   "SAMSUNG CANNOT MOOT THIS ASPECT OF APPLE'S MOTION

22   UNLESS IT FORMALLY AGREES TO THIS IN A STIPULATION.

23

24           WE UNDERSTAND THAT SAMSUNG DOES AGREE

25   THAT IT HAS VIOLATED THE ORDER AND THEREFORE

1    SUGGEST ADDING THIS TO THE STIPULATION UNDER THE

2    DISCUSSION WITHOUT SUCH A PROVISION, APPLE'S MOTION

3    COULD NEVER BE MOOT."

4             AND HE GOES ON TO SAY, "THAT AS A GENERAL

5    MATTER, APPLE'S PROPOSED STIPULATION WAS NEVER

6    INTENDED TO RESOLVE ALL OF THE DISPUTES.  "

7             THE COURT:  AND WHEN WAS THAT

8    COMMUNICATION SENT?

9             MR. JOHNSON:  MARCH 16TH.

10            THIS IS HARDLY NEGOTIATING IN GOOD FAITH

11   WITH RESPECT TO THE STIPULATION.  IT'S CERTAINLY

12   NOT BAD FAITH ON SAMSUNG'S PART.

13            THE COURT:  SO IF YOU HAD A PROBLEM

14   NEGOTIATING THE STIPULATION WHY DIDN'T YOU FOLLOW

15   MY GUIDANCE IN FOOTNOTE 25 TO SEEK RELIEF?

16            IN OTHER WORDS, I THOUGHT IN MY

17   JANUARY 27TH ORDER I WAS PRETTY EXPLICIT THAT THE

18   STIPULATION WAS PROVIDED AS AN ALTERNATIVE TO

19   MITIGATE THE BURDEN IN COMPLYING WITH MY ORDER AND

20   IF THERE WAS A PROBLEM WITH APPLE'S GOOD FAITH IN

21   REACHING THE STIPULATION, YOU SHOULD SEEK GUIDANCE

22   FROM THE COURT.

23            TO MY KNOWLEDGE, SAMSUNG DIDN'T DO THAT;

24   WHY NOT?

25            MR. JOHNSON:  YOUR HONOR, THEY HAD FILED

19

```
1    A MOTION FOR SANCTIONS ALREADY.  THEY FILED A
2    MOTION FOR SANCTIONS ON MARCH 9TH WITHOUT EVER
3    MEETING AND CONFERRING.
4            WE THOUGHT WE WERE STILL NEGOTIATING WITH
5    THEM.  THEY DON'T MEET AND CONFER.  THE NEXT THING
6    WE KNOW THEY FILE A MOTION FOR SANCTIONS.  WE
7    DISCUSS INTERNALLY, CONTINUE TO DISCUSS INTERNALLY
8    THE REPRESENTATIVE PRODUCTS OR FUNCTIONALITY
9    ISSUES.
10           WE CALL THEM BACK UP AND THIS IS THE
11   LETTER WE GET BACK SAYING THERE'S NO WAY WE ARE
12   GOING TO AGREE TO IT UNLESS YOU -- UNLESS YOU
13   STIPULATE TO THE FACT THAT WE'VE, THAT SAMSUNG HAS
14   VIOLATED THE DECEMBER 22ND ORDER.
15           AT THAT POINT WE WERE, FROM MY
16   STANDPOINT, WE WERE IN BETWEEN.  HOW WERE WE TO
17   THEN BRING THIS TO YOUR HONOR'S ATTENTION?
18           THE COURT:  I MEAN, YOU ALL HAVE SHOWN A
19   FAIRLY EXPANSIVE CREATIVITY IN COMING UP WITH
20   MOTIONS AND PLEADINGS TO GET MY ATTENTION AT ALL
21   DAYS AND HOURS OF THE WEEK.
22           HERE'S WHAT I'M STRUGGLING WITH
23   MR. JOHNSON, LET'S GO BACK TO DECEMBER 22ND.
24           I THOUGHT THIS WAS A PRETTY SPARTAN
25   COMMAND.  PRODUCE THE SOURCE CODE AND TECHNICAL
```

1    DOCUMENTS REQUESTED BY APPLE'S MOTION WITH ONE

2    EXCEPTION.  THE EXCEPTION DOESN'T APPLY TO

3    VERSIONS, SO HOW AM I TO READ SAMSUNG'S PRODUCTION

4    AS OF DECEMBER 31ST, 2011, AS ANYTHING OTHER THAN A

5    VIOLATION OF THAT SPECIFIC COMMAND?

6          MR. JOHNSON:  BECAUSE WE PRODUCED, WE

7    PRODUCED THE SOURCE CODE IN THE TECHNICAL DOCUMENTS

8    REQUESTED BY APPLE'S MOTION.

9          THE COURT:  SO EVERY VERSION WAS PRODUCED

10    BY THE 31ST.

11          MR. JOHNSON:  NOT -- LET'S BACK UP.

12          THE COURT:  BECAUSE THEIR MOTION WAS NOT

13    LIMITED TO PARTICULAR VERSIONS, WAS IT?

14          MR. JOHNSON:  NO, I THINK IT WAS.

15    THEIR MOTION, WHEN YOU GO BACK AND YOU LOOK AT WHAT

16    THEY WERE ASKING FOR -- AND BY THE WAY, IT'S ALSO

17    WHEN YOU LOOK AT WHAT THEY ARE ASKING FOR IN THEIR

18    JANUARY MOTION WHERE THEY SPECIFICALLY, AS

19    YOUR HONOR POINTS OUT IN YOUR JANUARY ORDER TO LOOK

20    AT THE 14 CATEGORIES OF DOCUMENTS IN THEIR PROPOSED

21    ORDER, THEY SPECIFICALLY ASK FOR THE PROPOSED ORDER

22    WHICH IS DOCKET NUMBER 616.  THEY ASK FOR THE

23    DESIGN AROUND DOCUMENTATION AND THEY ASK FOR THE

24    VERSIONS OF THE CODE.

25          WHEN YOU LOOK AT CATEGORIES, FOR EXAMPLE

1    A THROUGH R, THEY'RE SPECIFICALLY ASKING FOR THE

2    FEATURES, YOU KNOW, CHANGES MADE TO EACH VERSION OF

3    THE SOFTWARE FIRM WEAR PROGRAM OR OTHER SYSTEMS.

4            THE COURT:  WAS THIS A PROPOSED ORDER

5    SUBMITTED IN CONNECTION WITH THE --

6            MR. JOHNSON:  WITH THE JANUARY MOTION TO

7    COMPEL.

8            THE COURT:  OKAY.  SO LET'S GO BACK TO

9    DECEMBER.

10           APPLE FILES A MOTION IN ADVANCE OF

11   DECEMBER, I SHOULD SAY ORDER.  THEY INCLUDE A --

12   PRESUMABLY THEY INCLUDE A PROPOSED ORDER.  DID THAT

13   PROPOSED ORDER INDICATE THAT THE ASK WAS FOR LESS

14   THAN ALL VARIATIONS?

15           MR. JOHNSON:  THEY SENT A NARROW SCOPE,

16   THE MOTION POINTS OUT THE NARROWED SCOPE OF

17   REQUESTED CATEGORIES ON DECEMBER 6TH.  THEIR NARROW

18   SCOPE DOESN'T ASK FOR EACH AND EVERY VERSION OF THE

19   SOFTWARE.

20           IN FACT, YOU KNOW, SAMSUNG OPERATES

21   DIFFERENTLY THAN APPLE DOES IN THE SENSE THAT THERE

22   ARE LITERALLY HUNDREDS AND HUNDREDS OF VERSIONS OF

23   THE CODE THAT WITH RESPECT TO EACH CARRIER

24   SOMETIMES THEY UPDATE THE CODE, 2, 3 TIMES A DAY

25   AND IT'S DELIVERED OVER THE AIR.

1          SO WITH RESPECT TO THE FUNCTIONALITY OF

2    THE ACCUSED PRODUCTS OF THE ACCUSED FEATURES IN THE

3    PATENTS, WE PROVIDED THE CODE AS IT WAS CONTAINED

4    ON THE 27 PRODUCTS THAT WAS IN EXISTENCE.

5          WE PRODUCED IT ON DECEMBER 31ST.  AND WE

6    WERE WILLING TO STIPULATE THAT THE FUNCTIONALITY,

7    THE ACCUSED FEATURES WAS BASICALLY THE SAME FOR

8    EVERYTHING ELSE EXCEPT FOR THE THREE DESIGN AROUNDS

9    FOR THE '381 PATENT THE '891 AND THE '163 PATENT.

10          AND THOSE WERE PRODUCED.  THE '381 DESIGN

11    AROUND CODE WAS PRODUCED JANUARY 23RD.  AND THEY --

12    IT SOUNDS LIKE IT MAY HAVE EVEN BEEN PRODUCED WHEN

13    COUNSEL WAS REFERRING TO THE S2, T-MOBILE VERSION

14    HAVING BLUE GLOW, IT SOUNDS LIKE THEY HAD THAT BY

15    DECEMBER 31ST, SO MAYBE THEY EVEN HAD THE BLUE GLOW

16    DESIGN AROUND BY DECEMBER 31ST FOR THE SOURCE CODE.

17          THE OTHER TWO SOURCE CODE VERSIONS WERE

18    PRODUCED AT THE END OF DISCOVERY RIGHT AFTER, JUST

19    AS APPLE PRODUCED 250,000 PAGES OF DOCUMENTS AFTER

20    THE CLOSE OF DISCOVERY.

21          THERE WAS A BIG RUSH TO PRODUCE A LOT OF

22    DOCUMENTS AT THE END OF DISCOVERY.

23          AND WHAT THEY --

24          THE COURT:  SO JUST ON THOSE POINTS THEN,

25    IS IT ACCURATE FOR ME TO UNDERSTAND THAT AT LEAST

23

1    AS TO THOSE TWO VERSIONS, THOSE VERSIONS WERE NOT

2    PRODUCED BY THE 31ST?

3              MR. JOHNSON:  RIGHT.  THEY WERE NOT

4    PRODUCED BY THE 31ST.

5              AND YOUR HONOR -- THEY WERE IN A PRODUCT

6    THAT WASN'T RELEASED.  WE DIDN'T HAVE THE SOURCE

7    CODE FOR THOSE TWO VERSIONS, THE DESIGN AROUNDS FOR

8    THE '891 AND THE '163.  WE DIDN'T HAVE THEM BY

9    DECEMBER 31ST.

10             THE COURT:  AND WHY IS THAT?

11             MR. JOHNSON:  BECAUSE AS BEST AS WE WERE

12   ABLE TO TELL, IT WASN'T RELEASED UNTIL THE EARLIEST

13   WE CAN SEE IS DECEMBER 23RD.  WE DIDN'T KNOW ABOUT

14   IT UNTIL AFTER DECEMBER 31ST.

15             AND SO WE DIDN'T HAVE THAT THE UNTIL SOME

16   TIME AFTER DECEMBER 31ST.

17             THE COURT:  WHEN YOU SAY "WE" DO YOU MEAN

18   YOU AS OUTSIDE COUNSEL AS OPPOSED TO YOUR CLIENT?

19   YOUR CLIENT OBVIOUSLY HAD THE CODE WELL IN ADVANCE

20   OF THE 31ST.

21             MR. JOHNSON:  I DON'T THINK THEY HAD IT

22   WELL IN ADVANCE OF DECEMBER 31ST.  I DON'T KNOW

23   SPECIFICALLY.

24             ALL I KNOW IS THAT IT WAS RELEASED.

25   THERE WAS A PRODUCT THAT HAD A RELEASED VERSION OF

                                                    24

1    THE '891 AND '163 DESIGN AROUND CODE.  THAT PRODUCT

2    WAS RELEASED DECEMBER 23RD.

3            I DON'T KNOW WHICH ENTITY HAD IT.  A LOT

4    OF THIS IS DONE OUTSIDE OF THE UNITED STATES.  IT'S

5    DONE OUTSIDE OF KOREA AS WELL.

6            THE COURT:  OKAY.

7            SO -- I WANT TO MAKE SURE.  I'M

8    STRUGGLING, AS YOU CAN TELL, TO UNDERSTAND WHAT THE

9    FACTS ARE LET ALONE THE IMPLICATIONS OF THOSE

10   FACTS.

11           AM I ACCURATE IN UNDERSTANDING THAT AT

12   LEAST AS OF DECEMBER 31ST, 2011, WHICH IS MY

13   DEADLINE, THERE WERE TWO VERSIONS OF PRODUCTS AT

14   LEAST TWO VERSIONS OF PRODUCT IN THE MARKETPLACE

15   FOR WHICH NO SOURCE CODE WAS PRODUCED, WHETHER IT'S

16   JUSTIFIED, WHETHER IT'S PERFECTLY REASONABLE,

17   WHETHER YOU TRIED AS HARD AS YOU COULD, IS THAT AN

18   ACCURATE UNDERSTANDING?

19           MR. JOHNSON:  I THINK THAT'S ACCURATE.

20           THE COURT:  OKAY.

21           SO AS TO ANY OTHER VERSIONS IN COMMERCIAL

22   RELEASE AS OF THE 31ST WERE THERE ANY OTHER

23   VERSIONS OF CODE FOR WHICH NO SOURCE WAS PRODUCED

24   TO APPLE BY MY DEADLINE.

25           MR. JOHNSON:  I'M SORRY, COULD YOU REPEAT

1    THAT.

2              THE COURT:  SURE.

3              I WANT TO UNDERSTAND WHETHER THERE ARE

4    ANY OTHER VERSIONS OF THE CODE WHICH WERE IN

5    COMMERCIAL RELEASE AS OF THE 31ST FOR WHICH NO COPY

6    WAS PRODUCED TO APPLE.

7              MR. JOHNSON:  WELL, THEIR VERSIONS.

8        THAT'S WHAT I'M SAYING THERE ARE VERSIONS OF

9    CODE THAT WERE DELIVERED AFTER DECEMBER 31ST.  THEY

10   MAY CHANGE A COLOR OF A PARTICULAR WIDGET HERE, IT

11   HAS NOTHING TO DO WITH THE FUNCTIONALITY.  SO THERE

12   ARE HUNDREDS OF THESE VERSIONS.

13             THE COURT:  SO THERE ARE HUNDREDS OF

14   VERSIONS OF THE CODE THAT WERE IN COMMERCIAL

15   RELEASE AS OF THE 31ST FOR WHICH NO COPY WAS

16   PRODUCED TO APPLE.

17             MR. JOHNSON:  WE GAVE THEM A LOG

18   DESCRIBING ALL THE CHANGES THAT WERE MADE TO THE

19   CODE.

20             THE COURT:  RIGHT.  BUT WAS A COPY OF

21   THAT CODE PRODUCED BY THE 31ST?

22             MR. JOHNSON:  WELL, SOME OF THAT CODE

23   WASN'T IN EXISTENCE AT THE 31ST.

24             THE COURT:  LET'S TALK ABOUT THE CODE

25   THAT WAS IN EXISTENCE.

                                                      26

```
 1              YOU AGREED WITH ME THERE ARE AT LEAST TWO

 2    VERSIONS OF CODE WHICH WERE IN COMMERCIAL RELEASE

 3    AS OF THE 31ST FOR WHICH NO COPY WAS PRODUCED TO

 4    APPLE.

 5              WHAT I'M TRYING TO UNDERSTAND IS WHAT IS

 6    THE UNIVERSE OF ADDITIONAL VERSIONS OF CODE IN

 7    COMMERCIAL RELEASE OF THE 31ST FOR WHICH NO COPY

 8    WAS PRODUCED BY THAT DATE.  HUNDREDS?  DOZENS?

 9              MR. JOHNSON:  I DON'T KNOW THE ANSWER TO

10    THAT FOR SURE.

11              NOW, WITH RESPECT TO THE ACCUSED

12    FUNCTIONALITY OF THOSE FEATURES, FOR THE VERSIONS

13    OF THE CODE, THEY OPERATED THE SAME WAY.  AND

14    THAT'S WHAT WE TOLD APPLE AND THAT'S WHAT APPLE'S

15    EXPERT BELIEVES AND THAT'S WHAT SAMSUNG BELIEVES.

16              SO WITH RESPECT TO -- THE ONLY CHANGE

17    WITH RESPECT TO THE EIGHT PATENTS THE UTILITY

18    PATENTS THAT HAVE BEEN ACCUSED THE ONLY CHANGE THAT

19    IS HAVE OCCURRED WITH RESPECT TO THE DESIGN AROUND

20    FOR THE '381 WHICH THEY HAVE KNOWN ABOUT, THEIR

21    EXPERT HAS KNOWN ABOUT, IT'S IN THE EXPERT REPORT,

22    HE TESTIFIED ABOUT IT, THERE'S NO PREJUDICE WITH

23    RESPECT TO THAT.

24              THE COURT:  SO WE WILL GET TO PREJUDICE

25    IN A MOMENT.
```

```
1              AND THAT'S JUST SIMPLY NOT THE CASE AND

2      IT'S PARTICULARLY WITH RESPECT TO THE THREE DESIGN

3      AROUNDS.

4              THEY ESSENTIALLY WANT THE COURT TO FIND

5      THAT THE PRODUCT THAT IS HAVE THE DESIGN AROUNDS IN

6      THEM OPERATE THE SAME DAY THE PRODUCTS THAT DON'T

7      HAVE THE DESIGN AROUNDS IN THEM.  AND THAT'S

8      PREJUDICIAL AND SIMPLY NOT FAIR AT THIS POINT.

9              WE PRODUCED THE SOURCE CODE FOR THE

10     PHONES WITH RESPECT TO THE DESIGN AROUNDS IN

11     ADVANCE OF WHEN THEY HAD THEIR EXPERT REPORTS DUE.

12             AND BEFORE THE CLOSE OF DISCOVERY, WITH

13     RESPECT TO THE '381, AND RIGHT AT THE CLOSE OF

14     DISCOVERY WITH THE OTHER TWO PATENTS.

15             THE COURT:  WERE ANY OF THE THREE DESIGN

16     AROUNDS THAT YOU ARE REFERRING TO, WERE ANY OF THEM

17     IN COMMERCIAL RELEASE BEFORE DECEMBER 23RD?

18             MR. JOHNSON:  YES.  THE BLUE GLOW.

19             THE COURT:  OKAY.

20             AND WAS THE BLUE GLOW CODE PRODUCED BY

21     THE 31ST?

22             MR. JOHNSON:  I DON'T KNOW THE ANSWER TO

23     THAT.  I'M HEARING COUNSEL'S --

24             THE COURT:  WELL, ISN'T THAT KIND OF THE

25     OPERATIVE QUESTION HERE?
```

1           MR. JOHNSON:  HEARING COUNSEL'S

2    REPRESENTATION TODAY THAT WE PRODUCED CODE FOR THE

3    S2 T-MOBILE TELLS ME, THAT WAS DONE BY

4    DECEMBER 31ST TELLS ME IT WAS PRODUCED BY

5    DECEMBER 31ST.

6           NOW I DON'T KNOW THE ANSWER WITH RESPECT

7    TO THE SPECIFIC QUESTION.  I WAS COMING HERE TODAY

8    THINKING THAT THE FIRST SOURCE CODE PRODUCED FOR

9    THE BLUE GLOW WAS PRODUCED ON JANUARY 23RD.

10          THE COURT:  IF THAT'S THE CASE, WOULD YOU

11   AGREE THAT WOULD BE A VIOLATION OF MY ORDER?

12          MR. JOHNSON:  NO, YOUR HONOR, BECAUSE

13   WITH RESPECT TO THE ORDER, I GO BACK TO YOUR ORDER,

14   YOUR ORDER SAYS, PRODUCE SOURCE CODE AND TECHNICAL

15   DOCUMENTS REQUESTED BY APPLE'S MOTION.

16          THE DOCUMENTS REQUESTED BY APPLE'S MOTION

17   WERE NOT ALL VERSIONS OF THE SOURCE CODE.  AND IN

18   FACT THE -- WHAT HAPPENED AFTER THAT WITH RESPECT

19   TO THE MOTION TO COMPEL THAT APPLE BROUGHT IN

20   JANUARY AND THE SUBSEQUENT MEET AND CONFERS

21   ASSOCIATED WITH THAT THROUGH THE LEAD COUNSEL

22   ARRANGEMENTS, AND THE SUBSEQUENT DISCOVERY THAT

23   THEY SERVED WITH RESPECT TO DESIGN AROUNDS IN

24   JANUARY, ALL ESTABLISH THAT THEY KNEW ABOUT THE

25   BLUE GLOW, WE KNEW ABOUT THE BLUE GLOW BUT THAT

33

1    ITSELF, NOT TO MENTION THAT COUNSEL HAS NO

2    DOCUMENTARY EVIDENCE TO SUPPORT HIS ALLEGATION THAT

3    WE SOMEHOW GAVE UP A BIG PART OF WHAT WE HAD ASKED

4    FOR.

5              THANK YOU, YOUR HONOR

6              THE COURT:  THANK YOU VERY MUCH.

7              THE MATTER IS SUBMITTED.  YOU WILL HAVE

8    AN ORDER FROM ME SHORTLY.

9              HAVE A GOOD DAY.

10             (WHEREUPON, THE PROCEEDINGS IN THIS

11   MATTER WERE CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22            _____

                 SUMMER A. FISHER, CSR, CRR
23               CERTIFICATE NUMBER 13185

24

25

51