HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.      11-cv-01846-LHK (PSG)<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS**<br><br>Date:        June 21, 2012<br>Time:       1:30 p.m.<br>Place:      Courtroom 8, 4th Floor<br>Judge:     Hon. Lucy H. Koh |

**REDACTED PUBLIC VERSION**

1

## TABLE OF CONTENTS

2

Page

3   TABLE OF AUTHORITIES ...........................................................................................iii

4   I.    INTRODUCTION ............................................................................................. 1

    II.   ARGUMENT ..................................................................................................... 1

5         A.   Terry L. Musika's Opinions are Admissible.......................................... 1

6              1.   Musika's Lost Profits Calculations Are Reliable...................... 1

7                   a.   Musika Properly Considered Price Elasticity
                         and Operating Platform When Evaluating
8                        the Market ...................................................................... 1

9                   b.   Musika's Opinions Are Tied to the
                         Intellectual Property Rights at Issue ............................ 3

10             2.   Musika's Reasonable Royalty Analysis Is Reliable................... 5

11                  a.   Musika Accounts for Other Technology and
                         Contributions to Profit in His "Income
12                       Method" Analysis ........................................................... 5

13                  b.   Mr. Musika's "Cost Approach" Is An
                         Accepted Method ............................................................ 7

14                  c.   Musika's Assumptions are Appropriate......................... 8

15             3.   Musika's Opinions Regarding Samsung's Costs Are
                    Proper Expert Testimony ........................................................... 9

16             4.   A *Daubert* Motion Is Not a Proper Method to Seek
                    Summary Judgment Regarding Disputed Factual
                    Issues Relating to Notice.......................................................... 10

17             5.   Musika's Opinions Regarding Irreparable Harm
18                  Are Proper ............................................................................... 10

19        B.   John Hauser's Opinions Are Admissible .............................................. 11

20             1.   Dr. Hauser's Opinions Are Reliable ....................................... 11

21                  a.   Apple Produced All Documents Relating to
                         Dr. Hauser's Calculations ........................................... 11

22                  b.   Dr. Hauser Properly Pre-Tested His Surveys............... 12

23                  c.   Dr. Hauser's Actual Methods and Surveys
                         Were Appropriate......................................................... 13

24             2.   Dr. Hauser Surveyed the Proper Population ........................... 14

25             3.   Dr. Hauser's Surveys Accurately Described the
                    Patented Features .................................................................... 14

26        C.   Henry Urbach's Opinions Are Admissible ........................................... 15

27             1.   Urbach Is Qualified to Opine on Apple's Design
                    Achievements ........................................................................... 15

28             2.   Urbach's Expert Opinions Are Relevant and
                    Helpful to the Jury................................................................... 15

3.     Urbach's Expert Opinions Satisfy the Reliability
Requirement ................................................................. 16

D.     Susan Kare's Opinions Are Admissible ................................................ 18

E.     Russell Winer's Opinions Are Admissible ........................................... 19

F.     Sanjay Sood's Opinions Are Admissible .............................................. 21

G.     Michael Walker's Opinions Are Admissible ........................................ 22

H.     Richard L. Donaldson's Opinions Are Admissible ............................... 24

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-cv-01846-LHK (PSG)
sf-3150644

ii

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3  CASES

4  *Astra Aktiebolag v. Andrx Pharms., Inc.*,
5      222 F. Supp. 2d 423 (S.D.N.Y. 2002) ........................................................................ 20

6  *Banta Props. Inc. v. Arch Specialty Ins. Co.*,
       No. 10-61485-CIV-DIMINTROULEAS/SNOW,
7      2011 U.S. Dist. LEXIS 152928 (S.D. Fla. Dec. 23, 2011) .................................... 20

8  *Belk, Inc. v. Meyer Corp.*,
       No. 10-1664,
9      2012 U.S. App. LEXIS 9319 (4th Cir. May 8, 2012) ........................................... 20

10 *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
11      1 F.3d 1214 (Fed. Cir. 1993) .......................................................................... 2, 4

12 *Crocs, Inc. v. ITC*,
        598 F.3d 1294 (Fed. Cir. 2010) .......................................................................... 15

13
   *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*,
14      246 F.3d 1336 (Fed. Cir. 2001) ............................................................................ 1

15 *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
16      567 F.3d 1314 (Fed. Cir. 2009) ............................................................................ 4

17 *Dreyfus Fund, Inc. v. Royal Bank of Canada*,
        525 F. Supp. 1108 (S.D.N.Y. 1981) .................................................................... 14

18 *Edina Realty, Inc. v. TheMLSonline.com*,
19      No. 04-4371,
        2006 U.S. Dist. LEXIS 13775 (D. Minn. Mar. 20, 2006) .................................... 20
20
   *Egyptian Goddess, Inc. v. Swisa, Inc.*,
21      543 F.3d 665 (Fed. Cir. 2008) ............................................................................ 18

22 *Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*,
        No. 1:08-CV-2376-TWT,
23      2010 U.S. Dist. LEXIS 82638 (N.D. Ga. Aug. 4, 2010) ................................ 19, 21

24 *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
25      618 F.3d 1025 (9th Cir. 2010) ............................................................................ 22

26 *Fresenius Med. Care Holdings, Inc. v. Baxter Intern., Inc.*,
        No. C 03-1431 SBA,
27      2006 WL 1329999 (N.D. Cal. May 15, 2006) .................................................... 19

28
APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-cv-01846-LHK (PSG)
sf-3150644

iii

*Gap, Inc. v. G.A.P. Adventures, Inc.*,
No. 07 Civ. 9614 (AKH),
2011 U.S. Dist. LEXIS 71675 (S.D.N.Y. June 24, 2011) .................................................. 19

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................... 5, 7

*Graham v. John Deere Co.*,
383 U.S. 1 (1966) ........................................................................................... 15

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) .......................................................................... 18

*Hawley Prods. Co. v. U.S. Trunk Co.*,
259 F.2d 69 (1st Cir. 1958) ............................................................................ 14

*Icon Enters. Int'l, Inc. v. Am. Prods. Co.*,
No. CV 04-1240 SVW,
2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) ....................................................... 14

*Inline Connection Corp. v. AOL Time Warner Inc.*,
470 F. Supp. 2d 424 (D. Del. 2007) .................................................................. 5

*Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.*,
752 F.2d 1326 (9th Cir. 1984) ......................................................................... 9

*Kaufman Co. Inc. v. Lantech, Inc.*,
926 F.2d 1136 (Fed. Cir. 1991) ....................................................................... 1

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ...................................................................................... 16

*Landes Mfg. Co. v. Chromodern Chair Co.*,
No. CV 76-3540,
1978 U.S. Dist. LEXIS 15095 (C.D. Cal. Oct. 5, 1978) ......................................... 9

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
390 F.2d 117 (9th Cir. 1968) .......................................................................... 9

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008) ....................................................................... 7

*Metro Bus. Mgmt., Inc. v. Allstate Ins. Co.*,
No. CV 05-8306 CAS,
2009 WL 4119270 (C.D. Cal. Nov. 23, 2009) ..................................................... 25

*Micro Chem., Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003) ............................................................ 1, 3, 5, 10

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-cv-01846-LHK (PSG)
sf-3150644

iv

*Mirror Worlds, LLC v. Apple, Inc.*,
    784 F. Supp. 2d 703 (E.D. Tex. 2011) ................................................................. 6

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
    476 F. Supp. 2d 1143 (N.D. Cal. 2007) ............................................................... 2

*Monsanto Co. v. Ralph*,
    382 F.3d 1374 (Fed. Cir. 2004) ............................................................................ 8

*Mukhtar v. Cal. State Univ.*,
    No. 01-15565,
    2002 U.S. App. LEXIS 27934 (9th Cir. Aug. 7, 2002) ................................. 16, 17

*Oracle Am., Inc. v. Google Inc.*,
    798 F. Supp. 2d 1111 (N.D. Cal. 2011) ..................................................... 6, 7, 8, 13

*Oracle Am., Inc. v. Google Inc.*,
    No. C10-03561,
    2012 WL 850705 (N.D. Cal. Mar. 13, 2012) ...................................................... 13

*Oracle Am., Inc. v. Google Inc.*,
    No. C10-03561,
    2012 WL 44485 (N.D. Cal. Jan. 9, 2012) .............................................................. 8

*Qualcomm Inc. v. Broadcom Corp.*,
    548 F.3d 1004 (Fed. Cir. 2008) .......................................................................... 22

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.*,
    788 F.2d 1554 (Fed. Cir. 1986) ............................................................................. 7

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ............................................................................... 7

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995) ............................................................................... 8

*Rust Env't & Infrastructure, Inc. v. Teunissen*,
    131 F.3d 1210 (7th Cir. 1997) ............................................................................. 22

*Sigma Tool & Mach. v. Nagayama Elec. Indus. Co.*,
    No. 00-2936 (RWR),
    2002 U.S. Dist. LEXIS 28185 (D.D.C. Dec. 18, 2002) ...................................... 10

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ............................................................................. 24

*Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*,
    559 F. Supp. 1189 (E.D.N.Y. 1983) ............................................................... 12, 22

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-cv-01846-LHK (PSG)
sf-3150644

v

*Traumann v. Southland Corp.*,
   858 F. Supp. 979 (N.D. Cal. 1994) ............................................................... 16, 18

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ......................................................................... 6, 7

*United States v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000) .............................................................................. 16

*Universal City Studios, Inc. v. Nintendo Co.*,
   746 F.2d 112 (2d Cir. 1984) .................................................................................. 14

**STATUTES**

15 U.S.C.
   § 1117 .......................................................................................................................... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P.
   Rule 56 ...................................................................................................................... 10

Fed. R. Evid.
   Rule 402 ...................................................................................................................... 15
   Rule 702 ................................................................................................. 2, 5, 9, 15
   Rule 702(a) ............................................................................... 16, 17, 20, 21
   Rule 703 ...................................................................................................................... 20

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-cv-01846-LHK (PSG)
sf-3150644

vi

1   I.      INTRODUCTION

2          Samsung's motion to exclude expert testimony should be denied.  The opinions of Terry

3   L. Musika, John Hauser, Henry Urbach, Susan Kare, Russell Winer, Sanjay Sood, Michael

4   Walker, and Richard L. Donaldson are based on reliable methods and will assist the trier of fact.

5   Samsung's motion is defective for numerous reasons—most notably Samsung's

6   mischaracterization of the methodology employed by these experts and Samsung's presentation

7   of factual disputes that are not properly the subject of a *Daubert* motion.

8   II.     ARGUMENT

9          A.      **Terry L. Musika's Opinions are Admissible**

10                1.      **Musika's Lost Profits Calculations Are Reliable**

11         Musika's lost profits analysis uses previously endorsed methods and reliable data to

12  evaluate to what degree Apple would have sold more products "but for" Samsung's infringement.

13  *See Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1355 (Fed.

14  Cir. 2001) (discussing "but for" standard).[1]  Samsung improperly attempts to transform disputes

15  over the weight of the evidence into an argument that Musika's opinion is unreliable.  "When, as

16  here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to

17  evaluate the correctness of facts underlying one expert's testimony."  *Micro Chem., Inc. v.*

18  *Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003).

19                a.      **Musika Properly Considered Price Elasticity and Operating**
                          **Platform When Evaluating the Market**

20

21         Samsung claims that Musika's lost profits analysis ignores price elasticity and operating

22  platform preferences when reconstructing the market.  (Mot. at 1-2.)  Samsung's arguments

23  misstate the case law, the underlying facts about price and competition, and Musika's analysis.

24

25  ───────────────

26         [1] *Crystal* recognizes that a "wide variety of reconstruction theories" may be used to
    support a lost profits claim, 246 F.3d at 135, and the patentee need only prove losses to a
    "reasonable probability."  *Kaufman Co. Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir.
27  1991).  "Any doubts regarding the calculatory precision of the damage amount must be resolved
    against the infringer." *Id.*

28

1    Samsung argues that the lack of a separate price elasticity study justifies exclusion of

2 Musika's analysis based on *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1217-

3 18 (Fed. Cir. 1993), and *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143,

4 1155-56 (N.D. Cal. 2007).  Samsung misstates the holdings of both cases.  *BIC Leisure* evaluated

5 price as one criterion to determine whether the patentee and infringer compete for the same

6 customers.  1 F.3d at 1218-19.  The court concluded that "[the infringer] and [the patentee] sold

7 different types of sailboards at different prices to different customers" because the patentee

8 operated in the high priced, "upper end of the sailboard" market whereas the infringer sold

9 exclusively in "the sailboard's market's entry level" at much lower prices.  *Id.* at 1219.[2]

10 Similarly, the expert in *Monolithic Power* proposed to triple the selling price of the alleged

11 infringer's product but made no adjustment to quantity or demand in light of this change.  476 F.

12 Supp. 2d at 1155-56.  Neither requires a price elasticity study.  Both ask whether the patentee and

13 infringer will compete for sales from the same customers given differences in price.

14    Apple and Samsung compete for the same sales.  The Court has concluded that the

15 "evidence shows that both Apple and Samsung compete in the same smartphone market,

16 particularly in the market for first-time smartphones buyers . . . ."  (Dkt. No. 452 at 31-32.)

17 Samsung says it is Apple's "avowed" competitor (Dkt. No. 80 at 1) and Samsung's internal

18 documents indicate that it is ████████████████████████████████ (Musika

19 Decl. Ex. F at SAMNDCA11547408; *see also id.* Ex. G at SAMNDCA10375644 ███████

20 ████████████████████████████ ; *id.* Ex. H at SAMNDCA11513961

21 ████████████████████████████ Even Samsung's damages expert agrees that

22 ███████████████████████████████████████████████

23 (Mazza Decl. Ex. B at 283:25-285:23, 484:7-485:2.)

24    Moreover, Samsung misstates the facts regarding consumer price differences.  Both

25 Apple's and Samsung's damages experts testified that ████████████████████

26

27    [2] Samsung is wrong when it claims that *BIC Leisure* involved the exclusion of expert

28 testimony.  (Mot. at 2.)  Rule 702 was not at issue there.

1     █████████████████████████████████████ (*Id.* Ex. B at 482:25-483:3; *id.* Ex. A at

2   43:22-44:18.)  Samsung's U.S. Chief Marketing Officer testified that ████████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   (Musika Decl. Ex. D at 116:9-19, 115:18-117:1; *id.* Ex. J at SAMNDCA11547522.)  The ████

6   price differential to which Samsung refers reflects *wholesale* prices that consumers never see.

7   (Mazza Decl. Ex. A at 44:12-13.)  In the relevant area, Samsung and Apple have equivalent

8   pricing.

9        Finally, Samsung misstates Musika's analysis, which did account for both price elasticity

10   and consumer operating platform preferences.  (Musika Decl. ¶ 11.)  As explained in detail in

11   Musika's report, deposition, and declaration, Musika's analysis used real world information about

12   the smartphone and tablet market share on a carrier-specific basis to reallocate sales "but for"

13   Samsung's infringement.  (Musika Decl. ¶¶ 17-30; Mazza Decl. Ex. A at 17:1-18:19.)  By doing

14   so, he uses the best data available regarding demand in light of both price and operating system,

15   which reflects real choices by consumers, to reduce lost profits.[3] ██████████████████

16   ████████████████████████████████████████████████████████████████████

17   ██████████████████████████████ (Musika Decl. ¶¶ 29-30.)  At best, Samsung's

18   motion presents disputed factual issues that are the subject of cross examination, not a *Daubert*

19   motion.  *Micro Chem., Inc.*, 317 F.3d at 1392 (disputed facts cannot be resolved on *Daubert*

20   motion).

21        **b.**    **Musika's Opinions Are Tied to the Intellectual Property Rights**

22                **at Issue**

23        Samsung's next argument, that Musika fails to provide evidence of demand for the

24   individual technology asserted in this lawsuit, suffers from the same defect.  It wrongly asks the

25   _____

26        [3] Musika did not decide to forgo a price elasticity study due to lack of time.  (*See* Mot. at 5.)  A separate price elasticity study was unnecessary, given the similar retail prices for the products, the detailed market information incorporated into his analysis. ██████████████

27   ████████████████████████████████████████████████████ (*See* Musika

28   Decl. ¶¶ 23-27; Mazza Decl. Ex. A at 17:11-21, 18:8-19, 39:9.)

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-cv-01846-LHK (PSG)
sf-3150644

3

1   Court to resolve disputed factual claims and exclude otherwise proper expert opinions.

2   First, Samsung overstates its legal case.  "[T]he *Panduit* test is an acceptable, though not

3   an exclusive, test for determining 'but for' causation."  *BIC Leisure Prods.*, 1 F.3d at 1218.  For

4   this purpose, the Federal Circuit affirmed that the first factor of *Panduit* focuses on demand *for*

5   *the patented product,* not the specific technology claimed.  *Depuy Spine, Inc. v. Medtronic*

6   *Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) ("All that the first [*Panduit*] factor

7   states, and thus requires, is demand for the patented product.").

8   Nonetheless, Musika's report identifies specific evidence that ties smartphone and tablet

9   demand to the intellectual property asserted by Apple as part of the analysis of whether

10  infringement is the "but for" cause for the lost sales.  As examples, Musika's report refers to the

11  following evidence of demand for the utility patents and design rights asserted by Apple:

12  • Dr. Hauser's conjoint study demonstrating that consumers are willing to pay a price
13    premium for smartphone and tablet products containing the patented features of the
      '381, '607, '915, and '163 patents.  (Musika Decl. ¶ 33.)



14  •
15                                        (*Id.* ¶ 35, Exs. N, O.)

16  •
17                                                                    (*Id.* Ex. P.)

18  •
                                          (*Id.* Exs. N, O.)

19  •
20                     (*Id.* ¶ 36, Exs. V, W, X.)

21  •
22                                                      (*Id.* ¶ 35, Ex. O.)

23  •                                                                 (*Id.* ¶ 35,
      Ex. R.)
24

25  • Apple print and television advertisements prominently displaying the beautiful
      industrial designs of the iPhone and iPad and their elegant graphical user interfaces.
26    (*Id.* Exs. S, T, U.)

27  Musika provided two multi-page tables referring to evidence that addresses consumer demand for

28  the asserted technology.  (*Id.* Exs. L, M.)  In an effort to be highly conservative, Musika also

1    limits his lost profits calculations to the specific periods of time that it would take Samsung to

2    redesign their products, which itself carefully tailors his lost profits analysis to the specific

3    technology at issue.[4]  (Musika Decl. ¶¶ 14, 32.)  Samsung disagrees with Apple's evidence, but

4    that disagreement justifies a trial, not the exclusion of evidence.  Rule 702 does not "authorize a

5    trial court to exclude an expert's testimony on the ground that the court believes one version of

6    the facts and not the other."  *Micro Chem., Inc.*, 317 F.3d at 1392.

7                    **2.        Musika's Reasonable Royalty Analysis Is Reliable**

8            Musika's reasonable royalty analysis uses three well-recognized methods to identify

9    "reference" points for a reasonable royalty:  the income, cost, and market approaches.  (Musika

10   Decl. ¶ 39); *see Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 424, 432 (D.

11   Del. 2007) (acknowledging these approaches consist of "generally accepted methods and

12   principles").  Musika then applied the well-known factors identified in *Georgia-Pacific Corp. v.*

13   *United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), to identify a per unit royalty

14   within these reference points.  This approach is widely-accepted.

15                   **a.        Musika Accounts for Other Technology and Contributions to**
                             **Profit in His "Income Method" Analysis**
16

17           Samsung's attack on the "income approach" relies entirely on the inaccurate factual claim

18   that Musika's calculation "fails to apportion any of the premium for Apple's iPhone and iPad

19   products to any other utility patents or to any other non-patented proprietary technology unique to

20   the iPhone and iPad" and "attributes the entire premium value of Apple's iPhone and iPad

21   products to the IP asserted here with no apportionment to other assets."  (Mot. at 4.)  These

22   statements are "incorrect."  (*See* Mazza Decl. Ex. A at 96:16-22, 101:1-5 & 96:1-101:15.)

23           Musika's income method apportions more than three-quarters of Apple's profit margins

24   for the relevant products to technology and assets other than the utility IP and design IP asserted

25   _____

26           [4] Contrary to Samsung's claims, the assumption that Samsung would return to the market
     with essentially the same level of sales does not "admit" that there is no demand for Apple's
27   intellectual property.  Musika made this conservative assumption, despite the evidence to the
     contrary, to ensure his calculations include only lost profits that could be proved to a reasonable
     probability to be associated with the technology.  (Mazza Decl. Ex. A at 22:2-23:1, ¶ 125.)
28

1  is this lawsuit.  For Apple, ██████████████████████████████████████

2  ████████████████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████

5  ██████████████████████████████████████████ (*Id.*) █████████████

6  ███████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████ (*Id.*

8  ¶ 46.)  And Musika's final per unit royalty rates ████████████████████████████

9  ████████████████████████ (*Id.* ¶ 43.)  Without Musika's apportionment, the relevant royalties

10  would far exceed the existing calculations.  (*Id.* ¶ 45, Ex. AA.)

11      Nor do Samsung's authorities justify exclusion of Musika's methods.  *Uniloc USA, Inc. v.*

12  *Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011), and *Mirror Worlds, LLC v. Apple, Inc.*,

13  784 F. Supp. 2d 703, 726-27 (E.D. Tex. 2011), address the calculation of royalties as a percent of

14  the total *revenues* of the accused products under the "entire market value rule."  Musika uses per

15  unit royalties not royalties calculated as a percent of revenues.  (Musika Decl. ¶ 43, Ex. A ¶ 159.)

16  Moreover, consistent with *Uniloc,* he "apportioned the defendant's profits and the patentee's

17  damages between the patented feature[s] and unpatented features" as described above.  *Uniloc*,

18  632 F.3d at 1318.

19      Samsung's last argument regarding Musika's treatment of design rights is equally

20  misguided and unrelated to the issue raised in *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d

21  1111, 1115 (N.D. Cal. 2011).  Musika's analysis considers both the result of a license to the

22  collection of design rights *asserted in the case* and a floor below which Apple would not license

23  even one design patent or trade dress.  (Musika Decl. ¶¶ 61-62; Mazza Decl. Ex. A at 85-86.)

24  Musika's rates rely on the rational economic principle that Apple, as the owner of the most

25  valuable brand in the world, "would not agree to allow [its] brand to be partially eroded."

26  (Musika Decl. ¶ 48, Ex. A ¶ 188.)  Samsung offers no evidence to the contrary and no argument

27  why this is not economically justified.  This analysis differs from *Oracle*, where the court rejected

28  a royalty rate opinion that it found explicitly combined asserted *and unasserted* software utility

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3150644

6

1   patents.  798 F. Supp. 2d at 1115.  There, the court found an expert assumed that the proper

2   royalty should reflect a license to a "Java portfolio license," *i.e.* all of Java.  *Id.*  Musika's analysis

3   is limited to the design IP asserted here and is not based on any "portfolio" license that combines

4   asserted and unasserted technology.

5                           **b.      Mr. Musika's "Cost Approach" Is An Accepted Method**

6            Samsung first criticizes Musika's "cost approach" on the ground that Musika cannot

7   legally include a calculation of the profits Samsung would lose during the period required to

8   design around Apple's patents.  (Mot. at 6.)  But Samsung's own expert agrees that infringer's

9   profits is a relevant consideration when calculating a reasonable royalty.  (Mazza Decl. Ex. B at

10  289:24-290:24).  Moreover, at least three *Georgia-Pacific* factors identify an infringer's profits as

11  a relevant consideration to a reasonable royalty.[5]  *Georgia-Pac.,* 318 F. Supp. at 1120.  And

12  courts have repeatedly considered design-around costs as a factor when evaluating reasonable

13  royalties.  *See, e.g.*, *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008)

14  (incorporating cost of noninfringing alternative into reasonable royalty analysis).  Samsung's

15  cases are not to the contrary.  *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557

16  (Fed. Cir. 1986), authorized a reasonable royalty that *exceeded* the infringer's profits.

17  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), considered when licenses

18  are comparable, not a calculation of costs.  Finally, *Oracle* and *Uniloc* deal with the entire market

19  value rule, which is addressed above.  *Uniloc*, 632 F.3d at 1317; *Oracle*, 798 F. Supp. 2d at 1115-

20  16.  None prevent an expert from considering to what degree an infringer would lose sales and

21  profits if it had to design around the asserted patents.

22

23

24            [5] Factor 8—"the established profitability of the product made under the patent; its
     commercial success; and its current popularity"; Factor 11—"the extent to which the infringer has
25   made use of the invention; and any evidence probative of the value of that use"; Factor 12—"the
     portion of the profit or of the selling price that may be customary in the particular business or in
26   comparable businesses to allow for the use of the invention or analogous inventions"; and Factor
     13—"the portion of the realizable profit that should be credited to the invention as distinguished
27   from non-patented elements, the manufacturing process, business risks, or significant features or
     improvements added by the infringer."  *Georgia-Pac.*, 318 F. Supp. at 1120.
28

1    Samsung's second argument improperly asks the Court to make disputed factual findings

2    in its favor.  Musika, in reliance on experts and the evidence cited in his report, evaluates

3    Samsung's costs based on evidence that Samsung would need ███████████████████

4    ████████████████████████ (Musika Decl. Ex. A ¶¶ 162-65; *id.* Ex. 4 at Ex. 39.4-S; *id.*

5    ¶ 53.)  Samsung claims, without any evidentiary support, that Samsung would suffer no losses

6    and could have "quickly designed out the accused features."  (Mot. at 5.)  A *Daubert* motion is

7    not the forum to resolve factual disputes regarding design-around times, especially without a full

8    evidentiary submission.

9                    **c.      Musika's Assumptions are Appropriate**

10    Samsung argues that Musika cannot consider Apple's policy of not licensing the IP

11    asserted in this suit to anyone.  (Mot. at 6-7.)  Rubbish.  The Federal Circuit has repeatedly

12    affirmed the relevance of a licensor's unwillingness to license for even a reasonable royalty.  *See,*

13    *e.g.*, *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004) (noting the upward effect of

14    licensor's unwillingness on hypothetical negotiation process), *Rite-Hite Corp. v. Kelley Co.*, 56

15    F.3d 1538, 1554-55 (Fed. Cir. 1995) (affirming consideration of patentee's policy of not licensing

16    its technology in calculating a reasonable royalty).

17    Nor has Musika done anything wrong in his limited analysis of the ██████████████

18    ████████████████████████████████████████ (Mazza Decl. Ex. A

19    at 108:4-8, 104:19-22.) ████████████████████████████████████

20    ████████████████████████████████ (Musika Decl. ¶ 63.) The licenses are

21    not comparable to the complete set of IP being asserted, but provide some insight into the value

22    Apple places on its trademarks and trade dress.  Musika's limited use of this one example of an

23    Apple trademark license does not run afoul of *Oracle*, where the court found that an expert report

24    failed to describe any details about the license agreements he used and then got one factually

25    wrong when he did.  *Oracle Am., Inc. v. Google Inc.*, No. C10-03561, 2012 WL 44485, at *8

26    (N.D. Cal. Jan. 9, 2012).

27

28

### 3.     Musika's Opinions Regarding Samsung's Costs Are Proper Expert Testimony

Samsung seeks an extraordinarily broad remedy—an order preventing "Musika from disputing any of Samsung's costs"—based on the slimmest premise:  that a CPA's testimony about financial costs is "improper attorney argument."  (Mot. at 7-8.)  To the contrary, Musika applies standards used in the accounting profession to address a relevant, disputed factual question: What expenses has Samsung adequately proven that were "of actual assistance in the production, distribution or sale of the infringing product?"  *Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984).[6]

Musika's opinions derive directly from his external expertise in the "standards applied by financial accountants" (Musika Decl. ¶¶ 63-64, Ex. B ¶ 28), and from facts regarding errors and anomalies in Samsung's productions of financial data and the inability to verify this data using internal and external sources.[7]  (*Id*. ¶ 65.)  Musika also provides analysis regarding how accountants treat "fixed costs" and "variable costs" when calculating profits.  (*Id*. ¶ 64.)  These opinions reflect typical expert testimony from an accountant.

Further, Musika's opinions are not a violation of any order.  Musika's Supplemental Report draws directly from financial data produced for the first time on April 30 in response to this Court's April 23 sanctions order.  (Dkt. No. 880; Musika Decl. ¶ 65.)  That same Order stated, "Apple may supplement its expert report(s) on damages, limited to explaining any changes to the initial report(s) that are the result of the additional production."  (Dkt. No. 880 at 16.)  This is exactly what Apple did.

---

[6] Under 15 U.S.C. § 1117, Apple is entitled to recover Samsung's unjust profits for violation of Apple's trade dress.  Apple bears the burden of proving the relevant revenues, and Samsung bears the burden of establishing all costs and deductions claimed.  *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968); *Landes Mfg. Co. v. Chromodern Chair Co.*, No. CV 76-3540, 1978 U.S. Dist. LEXIS 15095, at *11 (C.D. Cal. Oct. 5, 1978). Given this legal framework, the suggestion that Samsung is entitled to prevent the jury from learning Samsung's revenues and preclude Apple from contesting Samsung's costs is meritless.

[7] The opinions at issue focus on Samsung's, not Apple's, financial production and the ▮▮ ▮▮ discussed in footnote 5 of Samsung' opening brief do not affect *any damages* calculation. The issue is suited for cross examination, but it provides no reason to exclude under Rule 702.

**4.     A *Daubert* Motion Is Not a Proper Method to Seek Summary Judgment Regarding Disputed Factual Issues Relating to Notice**

Samsung asks the Court to force Musika (and therefore the jury) to adopt Samsung's view on the disputed issue of when Samsung had notice of its infringement.[8]  (Mot. at 9:13-16.) Samsung did not raise this issue under Rule 56, making this issue unresolvable on a *Daubert* motion.  *Micro Chem.*, 317 F.3d at 1392; *Sigma Tool & Mach. v. Nagayama Elec. Indus. Co.*, No. 00-2936 (RWR), 2002 U.S. Dist. LEXIS 28185, at *5-6 (D.D.C. Dec. 18, 2002) (denying motion to exclude pre-notice damages because factual disputes over notice "cannot be resolved 'without the appropriate procedures provided by Fed. R. Civ. P. 56'").

Musika has received the evidence supporting Apple's position.  (Musika Decl. ¶ 66.) Nonetheless, he is not rendering an opinion on when notice occurred, can adjust his calculation to respond to evidence on this issue, and has provided Samsung the means to make the same adjustments.  (*See id.* ¶¶ 66-67.)  Thus, his opinions can and do account for damages based on either party's view of this disputed issue.  Samsung cannot use a *Daubert* motion to deprive Apple of a jury trial over a factual dispute.

**5.     Musika's Opinions Regarding Irreparable Harm Are Proper**

Samsung grossly mischaracterizes Musika's opinions on irreparable harm as unsupported speculation.  As discussed in Section I.A.2 above, Musika relies on substantial evidence showing the nexus between the harm to Apple and Samsung's infringement.  His opinions were updated and changed based on discovery.  The Court will have ample time to hear this evidence, evaluate Samsung's objections, and determine if irreparable harm has occurred in connection with its evaluation of a permanent injunction after trial.  There is no *Daubert* issue.

---

[8]  For example, *compare* Mazza Decl. Ex. C *with* Dkt. No. 927-11 (sealed).  Apple anticipates that both sides will produce evidence regarding the disputed issue of notice at trial.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3150644

10

B.     John Hauser's Opinions Are Admissible

1.     Dr. Hauser's Opinions Are Reliable

Samsung purposely confuses Dr. Hauser's actual surveys—double-blind, internet-administered surveys—with the background work to design and pre-test them.  Samsung then uses this mischaracterization to try to exclude Dr. Hauser's opinions "because the basis of those opinions—purported Samsung customer interviews—is undocumented and unverifiable." (Mot. at 11.)  Samsung knows this is wrong; it has all the data it needs to replicate Dr. Hauser's results.  It also asserts that Dr. Hauser surveyed the wrong population.  But Dr. Hauser properly calculated what Samsung customers are willing to pay for the patented features by surveying the relevant population—Samsung customers.  Samsung also uses selective and misleading citations to argue, incorrectly, that Dr. Hauser's surveys do not reflect the patented technology.  Dr. Hauser's surveys accurately track the patents and the technical expert reports that address them.

a.     Apple Produced All Documents Relating to Dr. Hauser's Calculations

What Samsung calls the "purported customer interviews" are *not* what Dr. Hauser used to prepare the willingness-to-pay calculations in his report.  (Hauser Decl. ¶ 4.)  Everything used to prepare those calculations was recorded and produced.  (*Id.* ¶ 5.)  Apple produced the surveys, the graphics and animated videos shown with the survey, the responses of all respondents, and a CD-ROM with files showing the support for every calculation Dr. Hauser made.  (*Id.*)  About this, there is no dispute.

Samsung instead seeks to exclude Dr. Hauser's opinion because there are no notes from 20 interviews the market research firm, Applied Marketing Science ("AMS"), conducted for purposes of "explor[ing] the words and phrases consumers use [and] explor[ing] how consumers talk about these smartphones and tablets." (Mazza Decl. Ex. K at 12:5-7.)[9]  Dr. Hauser's

---

[9] Dr. Hauser is very familiar with the work of AMS, where he is a co-founder and senior consultant.  (Hauser Decl. Ex. A ¶ 9.)  AMS "has been doing this for 24 years" and Dr. Hauser has used it "many times."  (Mazza Decl. Ex. K at 16:9, 20:22.)  Samsung's scurrilous assertion that Dr. Hauser knew "nothing" about those 20 interviewees, "including whether they actually owned Samsung devices," is plainly false.  (Mot. at 10 n.6.)  Dr. Hauser's report states the IDI

(Footnote continues on next page.)

approach has a sound methodological basis; he wanted interviewers to "really concentrate on the interviewee and probe back and forth" and told them not to take notes to help achieve this goal. (*Id.* at 72:18-19.)  The interviews are "background that's part of the design of the study" but they are "not the study itself."  (*Id.* at 12:8-9.)  They are not "the basis" of Dr. Hauser's opinions. Dr. Hauser's "study is 100% reproducible," (*id.* at 80:13) and can be replicated "completely independently of the [interviews] and pre-tests."  (Hauser Decl. ¶¶ 4-6.)

In light of the foregoing, Samsung's citation to *Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F. Supp. 1189 (E.D.N.Y. 1983), is grossly misleading.  In *Toys "R" Us*, the expert's opinions were excluded because "he had no personal knowledge of whether [the interviewers], in fact, followed the instructions" he gave for the *actual surveys* that were the subject of his report.  *Id.* at 1203.  Neither *Toys "R" Us* nor any other case Samsung cites excludes expert opinions for not taking notes of background work done in preparation for the surveys themselves.

### b.      Dr. Hauser Properly Pre-Tested His Surveys

Similarly, Samsung criticizes Dr. Hauser for having only a one-page summary of pre-testing of his surveys.  (Mot. at 11-12.)  This criticism is equally misguided and Samsung has no authority to support it.  The pre-test of the surveys are not the surveys; they are not the "basis" of Dr. Hauser's opinions.  (Hauser Decl. ¶ 4.)  The pre-tests were done "to assess the potential for, and remove or minimize, demand artifacts and to ensure that all survey questions were understood as intended."  (Hauser Decl. Ex. A ¶ 42; *see also* Mazza Decl. Ex. K 163:23-165:7; 190:12-19.)  Through pre-testing, Hauser identified and recorded a few wording changes to make the questions and instructions more understandable.  (Mazza Decl. Ex. K at 189:23-190:7; Hauser Decl. Ex. A ¶ 46, Ex. H.)

---

(Footnote continued from previous page.)

were conducted "with current Samsung smartphone and tablet owners."  (Hauser Decl. Ex. A ¶ 35.)  Further, he was briefed orally on "how people describe smartphones" and "the type of features that people mentioned as being important." (Hauser Decl. Ex. A ¶ 38; Mazza Decl. Ex. K at 56:5-6, 73:21-23.)

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3150644

12

c.      **Dr. Hauser's Actual Methods and Surveys Were Appropriate**

Samsung says that the lack of notes reflects Dr. Hauser's effort to hide a failure to "test all the features identified in the interviews." (Mot. at 11.)  But Samsung offers no evidence of this, or how Dr. Hauser's selection of features for his surveys compromises his work.  Samsung's argument is particularly disingenuous since Samsung's expert, Dr. Sukumar, tested *only* the patented features at issue in this case in his conjoint analysis and thus made no effort to address demand arising from any other feature.[10]  (Mazza Decl. Ex. L at 118:19-119:2.)  In contrast, Dr. Hauser's approach is consistent with his academic work as well as commercial applications of conjoint analysis.  (Hauser Decl. ¶¶ 10-11.)

The objective of Dr. Hauser's surveys, the specifics of his methodology, and the way his results are used differ fundamentally from what was presented in *Oracle*.  First, Dr. Hauser conducted a "willingness to pay" analysis and did not offer a "predictor of market share."  *See Oracle Am., Inc. v. Google Inc.*, No. C10-03561, 2012 WL 850705, at *10 (N.D. Cal. Mar. 13, 2012).  These two approaches, while having similar roots, have different controls and reach different outcomes.  (Hauser Decl. ¶ 7.)  In *Oracle*, Oracle's damages expert cited the results of the conjoint analysis to estimate "Android's increase in market share due to infringement." *Oracle*, 2012 WL 850705, at *9.  In contrast, Dr. Hauser's results are only used by Apple's damages expert, Terry Musika, to confirm "there is demand for the specific patented features in suit and that their presence (or absence) will affect consumer decision making," not to calculate a specific market share or a precise value for the patented feature in suit.  (Musika Decl. ¶ 33, Ex. A ¶ 122.)

---

[10]

## 2.      Dr. Hauser Surveyed the Proper Population

Apple retained Dr. Hauser "to determine the price premium, if any, that Samsung consumers are willing to pay for the features associated with the patents at issue." (Hauser Decl. Ex. A ¶¶ 7, 12.)  He did just that by surveying a "target population" of owners of Samsung smartphones and tablets.  (Hauser Decl. Ex. A ¶ 56; Mazza Decl. Ex. K at 31:17-32:2.)  For this purpose, recent Samsung purchasers are the most relevant population.  The more amorphous (perhaps indefinable) category of "all potential Samsung purchasers" would not be as properly targeted.  In any event, Samsung's argument "affects only the weight of the resulting survey data, not its admissibility."  *See, e.g.*, *Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, No. CV 04-1240 SVW (PLAx), 2004 WL 5644805, at *26 (C.D. Cal. Oct. 7, 2004) ("courts within the Ninth Circuit are reluctant to exclude survey evidence on the basis of an overinclusive or underinclusive target population").

Samsung wrongly relies on two trademark cases addressing surveys on likelihood-of-confusion, *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984) and *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108, 1116 (S.D.N.Y. 1981).  (Mot. at 12.)  Potential purchasers are the proper target population to evaluate likelihood of confusion, where one test is "whether the goods would be confused by a prospective purchaser at the time he considered making the purchase." *Hawley Prods. Co. v. U.S. Trunk Co.*, 259 F.2d 69, 77 (1st Cir. 1958).  The goal, and the relevant population, here are different.

## 3.      Dr. Hauser's Surveys Accurately Described the Patented Features

Finally, Samsung claims Dr. Hauser's survey tested features that "do not even comport with Apple's experts' descriptions of the patented features." (Mot. at 12-13.)  This is demonstrably false.  Samsung uses incomplete quotes from Apple's experts' reports to show purported—and barely intelligible—"disparities" between them and Dr. Hauser.  (Dkt. No. 927-20 (sealed).)  Exhibit R to the Mazza Declaration shows how Dr. Hauser's descriptions in the surveys are consistent with Apple's experts' reports and the patents.  (Mazza Decl. Ex. R (summary table citing relevant expert reports and patents); *see also id.* Exs. M-Q, S-V.)

1   For example, Samsung argues there is "no connection between the touchscreen 'reliably'

2   doing what 'you intend' and the '607 patent.  (Dkt. No. 927-20.)  Samsung tries to confuse the

3   issue by quoting from only the technical description in the report of Apple's technical expert,

4   Prof. Maharbiz.  Elsewhere, Prof. Maharbiz explains what this means, in language entirely

5   consistent with Dr. Hauser's surveys:  the '607 patent "can detect and locate multiple touches

6   even when the touches are along a single-sense line, and can smoothly track the motion of

7   multiple fingers."  (Mazza Decl. Ex. P ¶ 32.)  He opines that the '607 technology is more reliable

8   than other touch screen technology, stating "it is not at all clear that resistive type touch screens

9   or prior capacitive touch screens could have accurately reflected contacts with the touch screen to

10  enable natural, reliable multi-touch gestures."  (*Id.* ¶ 272.)  Similarly, the '607 patent itself says

11  the technology results in a "more accurate output."  (Mazza Decl. Ex. T at 17: 46-47.)  There is

12  no disparity.

### C.   Henry Urbach's Opinions Are Admissible

#### 1.   Urbach Is Qualified to Opine on Apple's Design Achievements

15  Urbach is qualified to opine on the public's widespread appreciation of Apple's designs.

16  His educational and professional experience spans more than twenty-five years and has focused

17  on the cultural significance of designed objects.  (Dkt. No. 927-22 ¶¶ 3-10 (sealed); Mazza Decl.

18  Ex. D at 7:21-17:14, 19:20-40:12, 44:7-45:22.)  Urbach owned and directed his own gallery, has

19  published in the field, and served as the curator of architecture and design for the San Francisco

20  Museum of Modern Art ("SFMOMA").  (Dkt. No. 927-22 ¶¶ 3-10 (sealed).)  Given this

21  background and experience, Urbach has ample specialized knowledge on which to base his

22  opinions regarding Apple's design accomplishments.  Samsung's argument—that he lacks

23  product design experience—is irrelevant.

#### 2.   Urbach's Expert Opinions Are Relevant and Helpful to the Jury

25  Samsung ignores the fact that praise or industry acclaim are "secondary considerations"

26  relevant to the obviousness analysis.  *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966);

27  *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1310-11 (Fed. Cir. 2010) (citation omitted) ("Secondary

28  considerations 'can be the most probative evidence of non-obviousness in the record . . . .'").

1    Accordingly, Urbach's opinions are highly relevant.  As explained in his report, Apple's designs

2    have become widely adored as aesthetic objects, and that fact supports non-obviousness of the

3    asserted design patents.  (Dkt. No. 927-22 ¶¶ 22-34, 39-51 (sealed).)

4           Samsung's only support for its irrelevance argument is that Urbach does not opine about

5    any legal doctrine such as the "ordinary observer" test.  (Mot. at 15.)  That criticism is invalid.

6    Rules 402 and 702 of the Federal Rules of Evidence do not require experts to opine as to legal

7    questions at issue in the case for their opinions to be relevant.  In fact, Samsung has the law

8    backwards:  the purpose of expert testimony is to "help the trier of fact to understand evidence or

9    to determine a fact in issue," Fed. R. Evid. 702(a), not to set forth legal conclusions or usurp the

10   court's role of instructing the jury as to applicable law.  *See, e.g.*, *Mukhtar v. Cal. State Univ.*, No.

11   01-15565, 2002 U.S. App. LEXIS 27934, at *30 n.10 (9th Cir. Aug. 7, 2002) ("expert witness

12   cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law");

13   *Traumann v. Southland Corp.*, 858 F. Supp. 979, 985 (N.D. Cal. 1994) ("Expert testimony must

14   embrace factual issues and may not include legal opinions or conclusions.").  Urbach's focus on

15   the widespread public and professional acknowledgment of Apple's design achievements, rather

16   than on questions to be decided by the jury under the Court's instruction, is proper and supports

17   admissibility of his opinions.

18                    **3.      Urbach's Expert Opinions Satisfy the Reliability Requirement**

19          Samsung's argument that Urbach's opinion is unreliable because it is "unscientific"

20   ignores the fact that Urbach does not offer a scientific or quantitative opinion.  While the Court

21   still has the "gate keeping" function with respect to Urbach's opinion, the Court has "broad

22   latitude in deciding *how* to determine the testimony's reliability."  *Mukhtar*, 2002 U.S. App.

23   LEXIS 27934, at *25.  Where, as here, the testimony is non-scientific, reliability "depends

24   heavily on the knowledge and experience of the expert, *rather than the methodology or theory*

25   *behind it*."  *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (emphasis added); *see*

26   *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) ("[T]he factors identified in *Daubert*

27   may or may not be pertinent in assessing reliability, depending on the nature of the issue, the

28   expert's particular expertise, and the subject of his testimony.") (internal quotation marks

1  omitted).  Urbach has the background, knowledge, and experience to render reliable his opinions

2  about Apple's design achievements and the public's appreciation of them.

3         Rather than addressing Urbach's actual analysis, Samsung distorts Urbach's opinions in

4  an effort to manufacture arguments.[11]  Samsung complains that Urbach "opines that Apple's

5  products 'allow, and even demand, aesthetic consideration,' but admits there is no standard . . . to

6  make such a determination."  (Mot. at 15.)  But the quoted language concerns Urbach's opinions,

7  informed by his experience and studies of the perception of designed objects, about "[w]ell-

8  designed objects," not about Apple products in particular.  (Dkt. No. 927-22 ¶ 18 (sealed).)

9  Urbach's opinion about Apple products is that they are, in fact, appreciated as aesthetic objects

10  because of their meticulous designs, a conclusion that he provides ample support for in his report

11  and to which Samsung raises no challenge.[12]  Samsung again attacks a straw man when it cites

12  deposition testimony by Urbach about the difficulty of defining "public appreciation."  (Mot. at

13  15.)  Urbach admitted that it was not easily defined, but he made clear that his opinion was that

14  "there is tremendous consensus among design experts, curators, [and] leaders in the design field

15  about the design excellence of Apple."  (Dkt. No. 927-23 at 102:8-11 (sealed).)  To the extent

16  Samsung wishes to call Urbach's opinions into question, it can do so on cross examination.

17

18

19  _____

20         [11]  Samsung also criticizes opinions that Urbach does not even offer.  Samsung incorrectly
   claims that Urbach "offers an opinion on museum worthiness of Apple products in comparison to

21  others."  (Mot. at 16.)  Nowhere in his report does he make any representation about the "museum
   worthiness" of other products.  (See Dkt. No. 927-22 ¶¶ 44-51 (sealed).)  Similarly, Samsung's

22  argument that Urbach "fails to consider whether any factors other than design . . . account for or
   contributed to that market success" (Mot. at 16) is a red herring.  Urbach does not opine on

23  whether design is the only reason that Apple enjoys commercial success.  While he points to
   factors related to commercial success (e.g., sales, long lines at stores) to support his opinion that

24  the public holds Apple designs in high esteem, it would not contradict that opinion if other factors
   also affected that success.

25         [12]  Urbach, for example, cites commentary from media and academia that illustrate
   reactions to Apple designs and the public's intense interest in those designs.  (Dkt. No. 927-22

26  ¶¶ 21, 24-31, 39 (sealed).)  He also relies on his specialized knowledge to draw comparisons
   between Apple and other companies who developed famous designs in the past.  (Id. ¶¶ 40-43.)

27  Finally, Urbach points to the fact that multiple museums have included Apple products, such as
   the iPad and iPhone, in exhibitions and permanent collections.  (Id. ¶¶ 48-51.)

28

### D.    Susan Kare's Opinions Are Admissible

Samsung raises objections to two aspects of Dr. Kare's expert report.  First, Samsung argues that Dr. Kare's opinions about "substantial similarity" and "likelihood of confusion" did not apply legal principles.  (Mot. at 18-19.)  Again, that is not a valid criticism.  As explained above, the Federal Rules of Evidence allow expert testimony to "help the trier to understand evidence or to determine a fact in issue", Fed. R. Evid. 702(a), not to offer legal conclusions or instruct the jury on how to apply the law to the facts.  *See Mukhtar*, 2002 U.S. App. LEXIS 27934, at *30 n.10; *Traumann*, 858 F. Supp. at 985; *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (expert "did not improperly usurp the court's role by instructing the jury as to the applicable law").  Dr. Kare's opinions meet this standard.

With respect to "substantial similarity," Dr. Kare offers careful analysis of the similarities between the appearances of the graphical interfaces on Apple and Samsung devices and the asserted design patents.  Furthermore, while she does not purport to step into the shoes of an ordinary observer, she has an understanding, based on "30 years of designing icons and user interface elements," of how consumers perceive user interface graphics.  (Mazza Decl. Ex. E at 28:16-24.)  Her expert opinion regarding the similarities between the asserted design patents and the accused Samsung devices will be helpful to the jury's infringement determination.[13]

With respect to "likelihood of confusion," it is unclear what opinion Samsung is challenging.  There are no trademark infringement issues remaining in this case, and Dr. Kare limits her analysis of trade dress issues.  She opines about the similarities between the appearances of the Samsung and Apple devices and explains that they could cause users to "see the designs as coming from the same company or source, or representing the same brand."  (Dkt. No. 927-25 ¶ 44.)  That analysis is exactly on par with what Samsung says is appropriate with respect to the "*Sleekcraft*" factors:  "'[S]imilarity in appearance' is but one of eight factors that

---

[13] Samsung also misstates the law by suggesting that infringement only considers "the novel features of Apple's design patents."  (Mot. at 18.)  The Federal Circuit rejected that "point of novelty" test in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).  Instead, infringement is determined according to the ordinary observer's view of the differences between the patented design and the accused product "in the context of the prior art."  *Id.* at 676.

1    must be considered in evaluating likelihood of confusion in the . . . trade dress context."  (Mot.

2    at 19.)

3           Samsung's second objection is that Dr. Kare's opinion that the factual evidence suggests

4    that Samsung based its designs on Apple's designs is "not a proper subject of expert testimony."[14]

5    (Mot. at 19.)  Samsung's only support for that argument is the proposition that expert testimony

6    cannot just be "recitations of facts of the case."  (*Id*.)  Far from offering "recitations of facts,"

7    however, Dr. Kare explains the process of designing interface graphics and provides a detailed

8    description of the interface graphics of Apple and Samsung devices and their strikingly parallel

9    designs.  (Dkt. No. 927-25 ¶¶ 6-71].)  Based on her expertise in interface graphics, she concludes

10   that "[t]he pattern of similarities supports the possibility that the iPhone Devices' screen graphics

11   influenced and served as a guide for the design of the application screens of Samsung Phones."[15]

12   (*Id*. ¶ 76.)  Only a design expert can provide such in-depth analysis and relate it to the actual

13   process of designing interface graphics.  Dr. Kare's analysis of the evidence, including evidence

14   suggesting that ███████████████████████████████████████ (*id*. ¶¶ 72-90), is

15   thus helpful to the jury in deciding whether Samsung copied Apple's designs, which in turn is

16   relevant as a secondary consideration of non-obviousness.

17          **E.**     **Russell Winer's Opinions Are Admissible**

18          Dr. Russell Winer, a Professor and the Chair of the Marketing Department at NYU, has

19   focused his research on consumer choice, marketing research methodology, marketing planning,

20   advertising, and pricing.  (Dkt. No. 927-28 ¶¶ 1, 5.)  Dr. Winer has opined on the value of brands

21   generally, the strength of Apple's brand, the importance of design to the strength of Apple's

22          [14] Samsung also points out that Dr. Kare "is not a psychologist" so she cannot offer

23   "speculative testimony about Samsung's state of mind and what steps it actually took."  (Mot. at 19.)  But Dr. Kare offers no such testimony.  Rather, she properly relies on her expertise as a

24   designer to explain the evidence about Apple and Samsung designs.  That is an appropriate function for an expert.

25          [15] Samsung suggests that Dr. Kare's opinion is improper because she does not conclude

26   that Samsung in fact copied Apple.  Such an objection is improper, as her testimony will educate the jury on the factual issues.  *See generally Fresenius Med. Care Holdings, Inc. v. Baxter Intern.,*

27   *Inc.*, No. C 03-1431 SBA, 2006 WL 1329999, at *5 (N.D. Cal. May 15, 2006) ("[T]he practice of allowing an expert to educate the jury without necessarily expressing an opinion on the specific

28   facts of the case, or even reaching an opinion at all, is regularly upheld.").

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3150644

19

1   brand, and the harm to Apple's brand resulting from Samsung's misappropriation of Apple's

2   distinctive designs.  Courts routinely admit such expert testimony.[16]

3         Samsung argues that Dr. Winer is a "summary" witness because of his citation to surveys

4   by two other experts, press articles, and Apple documents.  This oversimplifies and

5   mischaracterizes Dr. Winer's report.  In any event, "[a]n expert may base an opinion on facts or

6   data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid.

7   703.  An expert may rely on the "presentation of data to the expert outside of court and other than

8   by his own perception," including the "reports and opinions" of other expert witnesses.  *Id.*

9   (advisory committee's Notes, 1972 Proposed Rules).  Likewise, courts interpret Rule 703 to

10  permit an expert in one field to rely on the expertise of one in another field.  *See, e.g.*, *Banta*

11  *Props. Inc. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV-DIMINTROULEAS/SNOW, 2011 U.S.

12  Dist. LEXIS 152928 (S.D. Fla. Dec. 23, 2011) ("Experts routinely rely on the work of others, a

13  practice permitted by Fed. R. Evid. 703, so long as the facts or data on which they rely is of the

14  type reasonably relied on by experts in the relevant field."); *Astra Aktiebolag v. Andrx Pharms.,*

15  *Inc.*, 222 F. Supp. 2d 423, 490 (S.D.N.Y. 2002).

16        Rule 703 also contemplates that an expert may rely on facts or data "of a type reasonably

17  relied upon by experts in the particular field."  Fed. R. Evid. 703 (Advisory Committee's Notes,

18  1972 Proposed Rules).  Here, that includes press articles and internal Apple documents, such as

19  iPhone and iPad buyer surveys and advertising expenditures.  *See Edina Realty, Inc. v.*

20  *TheMLSonline.com*, No. 04-4371 (JRT/FLN), 2006 U.S. Dist. LEXIS 13775 (D. Minn.

21  Mar. 20, 2006) (denying motion to exclude expert who did not perform survey but relied on

22  materials such as focus groups, marketing budgets, and empirical studies on Internet usage).

23        According to Samsung, Dr. Winer offers generic opinions about brands.  Dr. Winer's

24  opinions, however, will "help the trier of fact to understand evidence or to determine a fact in

25  ───────────────

26  [16] *See, e.g.*, *Gap, Inc. v. G.A.P. Adventures, Inc.*, No. 07 Civ. 9614 (AKH), 2011 U.S.
    Dist. LEXIS 71675, at *15-16 (S.D.N.Y. June 24, 2011) (allowing testimony from marketing
    expert on surveys addressing likelihood of dilution); *Flowers Bakeries Brands, Inc. v. Interstate*
27  *Bakeries Corp.*, No. 1:08-CV-2376-TWT, 2010 U.S. Dist. LEXIS 82638, at *11-14 (N.D. Ga.
    Aug. 4, 2010) (allowing expert testimony regarding branding and marketing).

28

1   issue."[17]  Fed. R. Evid. 702(a).  Indeed, Dr. Winer provided some broad branding principles,

2   which will likely be new to most jurors, but he also applied them to the facts, explaining for

3   example that Samsung's smartphones and tablets closely resemble Apple's trade dresses, and thus

4   dilute the distinctiveness of Apple's trade dresses (Dkt. No. 927-28 ¶¶ 170-188) and harm

5   Apple's brand (*id.* at ¶¶ 189-96).  *See Flowers Bakeries Brands*, 2010 U.S. Dist. LEXIS 82638, at

6   *11-14 (permitting testimony applying general marketing principles to facts).

7        Samsung also argues that Dr. Winer's opinions are duplicative of Dr. Sood's opinions.

8   However, their reports diverge on a number of points.  Dr. Winer's opinions address Apple's

9   trade dress, Samsung's infringement of Apple's trade dress, and harm to Apple's brand.

10  Dr. Sood's report focuses on impact of design on consumer choice.  Apple does not intend to

11  present duplicative testimony, and in any event such issues can be dealt with at trial—they are not

12  an appropriate basis to exclude under *Daubert*.

13       **F.    Sanjay Sood's Opinions Are Admissible**

14       Dr. Sanjay Sood opines on the impact of product design on consumer purchasing

15  decisions, the impact of design on decisions to purchase iPhone and iPad products, and dilution of

16  the strength of Apple's designs and brand as a result of Samsung's infringement.  (Dkt. No. 927-

17  29.)  Dr. Sood is a professor at the Anderson Graduate School of Management at UCLA and he

18  has done research in the area of product design on consumer purchasing decisions.  (*Id.* ¶ 2.)

19  Nonetheless, Samsung contends that Dr. Sood's opinions are not tied to the patents, trade dress,

20  or accused products at issue.  However, the report discusses both his research (*id.* ¶¶ 16-30) and

21  its applicability to the products in this case (*id.* ¶¶ 31-72).  For example, he explains that even

22

23       [17] Samsung argues that Dr. Winer lacks specialized expertise on the *Sleekcraft* factors.
     That it is the first time Dr. Winer has specifically addressed the *Sleekcraft* factors as an expert is
24   irrelevant.  He understands trade dress and infringement issues.  *See Belk, Inc. v. Meyer Corp.*,
     No. 10-1664, 2012 U.S. App. LEXIS 9319 (4th Cir. May 8, 2012) (holding district court did not
25   abuse its discretion in finding expert was qualified even though it was his first trade dress
     infringement case because he had some understanding of trade dress and infringement issues.).
26   Because he is not offering a legal opinion, Dr. Winer relies on his extensive expertise to apply
     marketing principles he has used in, for example, classroom exercises, to the facts in this action
27   when evaluating trade dress misappropriation and effects on consumer purchasing.  (Mazza Decl.,
     Ex. F at 244:3-249:3; Dkt. No. 927-28 ¶ 99.)
28

1   though surveys confirm that design has contributed to the success of Apple's products, his

2   research shows consumers may understate the importance of design as a reason for purchasing

3   Apple products.  (*Id.* ¶¶ 63-64.)  This is proper expert testimony.

4          Samsung also complains that Dr. Sood's research used "simple, inexpensive devices" and

5   he only surveyed university students rather than potential buyers of the smartphones.  Samsung

6   relies on two inapposite trademark cases involving surveys that failed to focus on potential

7   purchasers.  (Mot. at 22.)  Dr. Sood's surveys addressed a different and broader question—the

8   impact of design on consumer choice.  Accordingly, Dr. Sood properly defined and selected a

9   representative sample of the universe and products for his surveys.  To the extent Samsung's

10  argument has any merit, it goes to weight not admissibility, as this type of survey research is

11  commonplace in the marketing field.  *See Fortune Dynamic, Inc. v. Victoria's Secret Stores*

12  *Brand Mgmt.*, 618 F.3d 1025, 1036-38 (9th Cir. 2010).

13         Finally, Samsung contends that Dr. Sood's survey-related opinions should be excluded

14  because the underlying survey questionnaires were not produced, though the articles were

15  produced and Samsung extensively questioned Dr. Sood on his research.[18]  However, the

16  questionnaires were not responsive to any discovery requests and were cumulative of the articles

17  discussed in Dr. Sood's report and produced to Samsung.  (*See* Apple's Opp. to Samsung's Mot.

18  to Strike Expert Testimony, filed herewith.)

19         **G.     Michael Walker's Opinions Are Admissible**

20         There is no basis to exclude Dr. Walker from testifying.  His well-founded testimony will

21  offer precisely the sort of evidence that the Federal Circuit deemed crucial in *Qualcomm Inc. v.*

22

23         [18] Samsung cites two irrelevant cases in support of its argument.  (Mot. at 22 n.26.)
    Neither case involves exclusion of evidence based on survey results merely because the
24  underlying survey questionnaires were not produced.  *See Rust Env't & Infrastructure, Inc. v.*
    *Teunissen*, 131 F.3d 1210, 1218 (7th Cir. 1997) (discounting survey because it suffered from a
25  host of issues including that it was not a random probability survey, was not a double blind
    survey, did not give adequate instructions to interviewers, did not require recording of verbatim
26  responses, did not incorporate random rotation of corporate names, and did not comport with
    accepted practice for independent validation of the results); *Toys "R" Us*, 559 F. Supp. at 1205
27  (E.D.N.Y. 1983) (excluding survey and expert opinion based on the survey for lack of indicia of
    trustworthiness).

28

1    *Broadcom Corp.*, 548 F.3d 1004, 1016-17 (Fed. Cir. 2008), in which two patents were held

2    unenforceable because they were not timely disclosed to the standard-setting organization.[19]

3         First, Samsung argues that Dr. Walker's analysis of the timeliness of Samsung's ETSI

4    disclosures is deficient because Dr. Walker reviewed the Declared Essential Patents but not

5    Samsung's related priority patent applications ("Priority Applications").  (Mot. at 22-23.)  While

6    Samsung seems to suggest that Dr. Walker himself needed to draw a technical connection

7    between the four Declared Essential Patents and the Priority Applications, Samsung long ago

8    made and relied on this very same connection (notably, Samsung does not deny the existence of

9    this connection).  For example, the Declared Essential Patents on their face claim priority to

10   precisely the same Priority Applications at issue.  Samsung does not even argue that the Korean

11   applications and the Declared Essential Patents are separate and independent or contain different

12   disclosures, implicitly conceding the substantive overlap among them.  Similarly, in opposing

13   Apple's Motion for Summary Judgment, Samsung argued that "disclosure of one patent in a

14   patent family is sufficient notice of all current and future members of the entire patent family."

15   (Dkt. No. 847-2.)  This argument concedes that the Priority Applications are related to the

16   Declared Essential Patents.  In short, Samsung itself has already established the connection

17   between the Declared Essential Patents and the Priority Applications; there is nothing more for

18   Dr. Walker to analyze.

19        Second, Samsung claims that Dr. Walker failed to consider whether the Priority

20   Applications were confidential under Korean law, and thus not subject to the ETSI disclosure

21   requirements.  This argument misreads the relevant IPR policy, which provides that information

22   is deemed "confidential" only if the "information is first submitted to, and accepted by, the

23   chairman of the COMMITTEE as confidential."  (Mazza Decl. Ex. G at S-ITC-003356263.)

24   Samsung does not contend—much less show—that it submitted the Priority Applications to the

25

26       [19] Dr. Walker will testify as to Samsung's untimely disclosures of four of its asserted

27   patents:  U.S. Patent Nos. 7,675,941; 6,928,604; 7,447,516; and 7,362,867 (together, "Declared Essential Patents").

28

1   chairperson of any technical committee who then deemed them confidential.[20]

2          Third, Samsung argues—without support—that it is Apple's burden to show that

3   Samsung's senior management "must have been aware that [its Priority Applications] were likely

4   to cover Essential IPRs" (Mot. at 23), a test that would permit an SSO participant to escape

5   liability for knowingly failing to disclose its IPR through the willful blindness of senior

6   management.  That cannot be and is not the rule.  Rather, Clause 4.1 of the IPR Policy imposes a

7   requirement on each "member" to disclose IPRs which "*might be essential*" to any technical

8   proposal—regardless of whether the proposing party's management was ignorant of the proposal.

9   (Mazza Decl. Ex. G at S-ITC-003356259.)

10         Moreover, even under Samsung's (incorrect) legal standard, Samsung would be liable.

11  ████████████████████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████[21]

16  **H.     Richard L. Donaldson's Opinions Are Admissible**

17         Samsung contends that Donaldson improperly offers an opinion as to the legal

18  interpretation of the license between Samsung and Intel Corp.  This is not the case.  Donaldson's

19  opinions are confined to his experience drafting and reviewing provisions such as those in the

20  Samsung/Intel license—inherently factual considerations—and reflect "what a licensing

21  professional would expect from similar terms, based on [Donaldson's] experience in the licensing

22  field."  (Dkt. No. 927-34 ¶ 109.)[22]  As such, Donaldson's opinions constitute proper and

23  ───────────────
    [20] Samsung's view of "confidential information" would obviate almost any disclosure

24  rule; for example, patent applications in the United States are considered confidential until
    publication.

25  [21] ████████████████████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████████████████████████

27  [22] ████████████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████
                                                    (Footnote continues on next page.)

1  admissible evidence.  *See, e.g.*, *Metro Bus. Mgmt., Inc. v. Allstate Ins. Co.*, No. CV 05-8306 CAS

2  (CWx), 2009 WL 4119270 (C.D. Cal. Nov. 23, 2009) (admitting testimony where "expert

3  testified on factual, not legal issues, and limited his testimony to his expert opinion on the factual

4  issues submitted to the jury's decision").[23]

5  ████████████████████████████████████████

6  ████████████████████████████████████████

7  ████████████████████████████████████████

8  ████████████████████████████████████████

9  ████████████████████████████████████████

10

11  Dated: May 31, 2012                    MORRISON & FOERSTER LLP

12

13                                         By:    /s/ Michael A. Jacobs
                                                  Michael A. Jacobs

14
                                           Attorneys for Plaintiff
15                                         APPLE INC.

16

17

18

19

20

21

22  _____

23  (Footnote continued from previous page.)

    ████████████████████████████████████████
24  ████████████████████████████████████████

25  ████████████████████████████████

26      [23] Apple contends that the terms of the Samsung/Intel license agreement are unambiguous;
    however, if the Court determines that extrinsic evidence is necessary to resolve any latent
27  ambiguity, Mr. Donaldson's testimony as to the intent of similarly situated license partners would
    be admissible extrinsic evidence to help resolve that ambiguity.  *See, e.g.*, *Skilstaf, Inc. v. CVS*
    *Caremark Corp.*, 669 F.3d 1005, 1014-15 (9th Cir. 2012).

28