Exhibit F

Page 1

1   UNITED STATES DISTRICT COURT NORTHERN
    DISTRICT OF CALIFORNIA SAN JOSE DIVISION
2   ---------------------------------------X
    APPLE INC., a California corporation
3
4                          PLAINTIFF,
5        -against-
6   SAMSUNG ELECTRONIC CP., LTD., a Korean
    business entity; SAMSUNG ELECTRONICS
7   AMERICAN, INC., A New York Corporation;
    SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
8   a Delaware limited liability company,
9
                            DEFENDANTS.
10  ---------------------------------------X
11
12        ***CONFIDENTIAL***
13
14
15    VIDEOTAPED DEPOSITION OF RUSSELL WINER
16          New York, New York
17          Friday, April 27, 2012
18
19
20
21
22
23  Reported by:
24  Rebecca Schaumloffel, RPR, CLR
25  JOB NO. 48805

Confidential

Page 4

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER: This is the | 09:13AM |
| 2 | start of tape label one in the | 09:14AM |
| 3 | videotaped deposition of Russell S. | 09:14AM |
| 4 | Winer in the matter Apple, Inc., | 09:14AM |
| 5 | versus Samsung Electronics Company, | 09:14AM |
| 6 | Limited. Today is April 27, 2012. | 09:14AM |
| 7 | The time is approximately 9:16 a.m. | 09:14AM |
| 8 | Appearances have already been noted by | 09:14AM |
| 9 | the Court Reporter. | 09:14AM |
| 10 | Will the Court Reporter please | 09:14AM |
| 11 | swear in the witness. | 09:14AM |
| 12 | | |
| 13 | R U S S E L L   S.   W I N E R, called as a | |
| 14 | witness, having been first duly sworn by a | |
| 15 | Notary Public of the State of New York, was | |
| 16 | examined and testified as follows: | |
| 17 | EXAMINATION BY | |
| 18 | MR. ZELLER: | |
| 19 | Q.   Please tell us your full name for | 09:14AM |
| 20 | the record. | 09:14AM |
| 21 | A.   Russell S. Winer. | 09:14AM |
| 22 | Q.   What does the S. stand for? | 09:14AM |
| 23 | A.   Stuart. | 09:14AM |
| 24 | Q.   Have you ever gone by any other | 09:14AM |
| 25 | name? | 09:14AM |

Confidential

Page 244

| | | |
|---|---|---|
| 1 | things I would look at but not referred to as | 02:48PM |
| 2 | Sleekcraft factors. | 02:48PM |
| 3 | Q.   Are you offering a legal opinion | 02:49PM |
| 4 | about likely to confusion? | 02:49PM |
| 5 | MS. HAGBERG:  Objection; outside | 02:49PM |
| 6 | the scope. | 02:49PM |
| 7 | A.   I am not offering a legal | 02:49PM |
| 8 | opinion.  I am offering some evidence of | 02:49PM |
| 9 | actual confusion, how it contributes to the | 02:49PM |
| 10 | infringement of Apple's trade dress. | 02:49PM |
| 11 | Q.   Is infringement of Apple's trade | 02:49PM |
| 12 | dress something that is a recognized field | 02:49PM |
| 13 | within your expertise? | 02:49PM |
| 14 | MS. HAGBERG:  Objection; vague. | 02:49PM |
| 15 | Were you finished? | 02:49PM |
| 16 | MR. ZELLER:  Yes. | 02:49PM |
| 17 | MS. HAGBERG:  Objection; vague. | 02:49PM |
| 18 | A.   If I was asked to determine | 02:49PM |
| 19 | whether or not consumers would be confused | 02:49PM |
| 20 | between two products, the elements of the | 02:50PM |
| 21 | Sleekcraft factors many of them would be ones | 02:50PM |
| 22 | I would use just by my marketing expertise. | 02:50PM |
| 23 | I would not refer to them as Sleekcraft | 02:50PM |
| 24 | factors.  I have never done that. | 02:50PM |
| 25 | Q.   Why do you call them Sleekcraft | 02:50PM |

Confidential

Page 245

| | | |
|---|---|---|
| 1 | in this report? | 02:50PM |
| 2 | A.   The attorneys suggested the | 02:50PM |
| 3 | Sleekcraft factors as a framework that could | 02:50PM |
| 4 | be used to understand the likelihood of | 02:50PM |
| 5 | confusion that can exist in the marketplace | 02:50PM |
| 6 | as a framework to tie together a number of | 02:50PM |
| 7 | different elements. | 02:50PM |
| 8 | Q.   Regardless of what they are | 02:50PM |
| 9 | called, is there anything that you can point | 02:50PM |
| 10 | to in the peer-reviewed literature in your | 02:50PM |
| 11 | field where the methodology of these factors | 02:50PM |
| 12 | are applied? | 02:51PM |
| 13 | A.   Not in the peer-reviewed | 02:51PM |
| 14 | literature. | 02:51PM |
| 15 | Q.   Have you, yourself, ever written | 02:51PM |
| 16 | any kind of scholarly article or published | 02:51PM |
| 17 | materials where you applied the methodology | 02:51PM |
| 18 | of these factors? | 02:51PM |
| 19 | MS. HAGBERG:   Objection; vague. | 02:51PM |
| 20 | A.   No. | 02:51PM |
| 21 | Q.   Had you ever engaged in such an | 02:51PM |
| 22 | analysis prior to the time that you were | 02:51PM |
| 23 | engaged as an expert in this report? | 02:51PM |
| 24 | MS. HAGBERG:   Objection; form | 02:51PM |
| 25 | and vague. | 02:51PM |

Confidential

Page 246

| | | |
|---|---|---|
| 1 | A. No. | 02:51PM |
| 2 | Q. Is there anything you can point | 02:51PM |
| 3 | to in your field to show that these factors, | 02:51PM |
| 4 | called Sleekcraft or something else, are in | 02:51PM |
| 5 | fact accepted and recognized methodology | 02:51PM |
| 6 | applied by people in your field? | 02:52PM |
| 7 | MS. HAGBERG: Objection; vague. | 02:52PM |
| 8 | Object to the form. | 02:52PM |
| 9 | A. I have in the classroom asked | 02:52PM |
| 10 | students to evaluate the similarity and | 02:52PM |
| 11 | possible confusion between different brands. | 02:52PM |
| 12 | And brands is a classroom exercise and given | 02:52PM |
| 13 | them a set of characteristics that they | 02:52PM |
| 14 | should use to judge that similarity or | 02:52PM |
| 15 | potential confusion. I never called them | 02:52PM |
| 16 | Sleekcraft factors and most of the items on | 02:52PM |
| 17 | this list were in that set of items that I | 02:52PM |
| 18 | asked the students to consider. | 02:52PM |
| 19 | Q. Anything else you can point to in | 02:52PM |
| 20 | your field? | 02:52PM |
| 21 | A. No. | 02:52PM |
| 22 | Q. If I understood in the context of | 02:52PM |
| 23 | these classroom exercises you're talking | 02:52PM |
| 24 | about, all of the factors that are referenced | 02:52PM |
| 25 | here in the Sleekcraft factors were not | 02:52PM |

Confidential

Page 247

| | | |
|---|---|---|
| 1 | something that you instructed your students | 02:52PM |
| 2 | on; is that correct? | 02:52PM |
| 3 |     MS. HAGBERG:  Objection; | 02:52PM |
| 4 | misstates testimony, vague. | 02:52PM |
| 5 | A.   I think what I said is that many | 02:53PM |
| 6 | of these were the criteria that I asked them | 02:53PM |
| 7 | to use.  Not all of them. | 02:53PM |
| 8 | Q.   Which ones did you not ask your | 02:53PM |
| 9 | students in the context of these exercises to | 02:53PM |
| 10 | consider? | 02:53PM |
| 11 |     MS. HAGBERG:  Objection; vague. | 02:53PM |
| 12 | A.   Particularly, when it listed in | 02:53PM |
| 13 | paragraph 100 as particularly G and H. | 02:53PM |
| 14 | Q.   You are referring to "Defendants | 02:53PM |
| 15 | intended selecting the mark" and "Likely to | 02:53PM |
| 16 | have expansion of the product lines"? | 02:53PM |
| 17 | A.   Yes. | 02:53PM |
| 18 | Q.   Focusing on the Sleekcraft | 02:53PM |
| 19 | factors that you apply here in your analysis, | 02:53PM |
| 20 | and specifically focusing on A, strength of | 02:53PM |
| 21 | the mark.  Do you see that? | 02:54PM |
| 22 | A.   Yes, I do. | 02:54PM |
| 23 | Q.   Are there objective definable | 02:54PM |
| 24 | criteria in your field that define the | 02:54PM |
| 25 | strength of a mark? | 02:54PM |

Page 248

| | | |
|---|---|---|
| 1 | A.    I think if you take a look at | 02:54PM |
| 2 | some of the measures I talk about in the | 02:54PM |
| 3 | case -- in the statement, such as brand | 02:54PM |
| 4 | equity surveys that are conducted by various | 02:54PM |
| 5 | independent branding consultings, consulting | 02:54PM |
| 6 | firms, they provide indications of the | 02:54PM |
| 7 | strength of the mark.  There are other kinds | 02:54PM |
| 8 | of survey work that I have seen conducted by | 02:54PM |
| 9 | companies that talk about, again, how | 02:54PM |
| 10 | distinctive certain marks are relative to | 02:54PM |
| 11 | others.  And, of course, we look at money | 02:54PM |
| 12 | that is spent on advertising and other | 02:54PM |
| 13 | marketing support that would help to | 02:55PM |
| 14 | contribute to the strength of the mark. | 02:55PM |
| 15 |     Q.    Anything else? | 02:55PM |
| 16 |     A.    I think, also, just the sales of | 02:55PM |
| 17 | the products, also, have some indication of | 02:55PM |
| 18 | how strong the mark is. | 02:55PM |
| 19 |     Q.    Anything else? | 02:55PM |
| 20 |     A.    Well, I think there is some | 02:55PM |
| 21 | non-quantitative measures as well in terms of | 02:55PM |
| 22 | just my expertise in terms of being able to | 02:55PM |
| 23 | compare the distinctiveness, brand | 02:55PM |
| 24 | identities, the strength of what we call the | 02:55PM |
| 25 | brand associations that people have with | 02:55PM |

Confidential

Page 249

| | | |
|---|---|---|
| 1 | brands.  So there are many different measures | 02:56PM |
| 2 | that can be used to determine the strength of | 02:56PM |
| 3 | the mark. | 02:56PM |
| 4 |     Q.   Anything else? | 02:56PM |
| 5 |     A.   No, that's all I can think of | 02:56PM |
| 6 | right now. | 02:56PM |
| 7 |     Q.   In your field, is one factor in | 02:56PM |
| 8 | evaluating the strength of the mark the | 02:56PM |
| 9 | exclusivity by which the plaintiff has used | 02:56PM |
| 10 | it and the length of time? | 02:56PM |
| 11 |     A.   I don't think length of time is | 02:56PM |
| 12 | necessarily correlated with strength of the | 02:56PM |
| 13 | mark. | 02:56PM |
| 14 |     Q.   I didn't ask if it was | 02:56PM |
| 15 | necessarily correlated.  I am asking about in | 02:56PM |
| 16 | your field, please tell us, in your field, is | 02:56PM |
| 17 | one factor in evaluating the strength of the | 02:56PM |
| 18 | mark the exclusivity or lack of exclusivity | 02:56PM |
| 19 | by which the plaintiff has used it? | 02:56PM |
| 20 |     A.   I don't know the definition of | 02:56PM |
| 21 | exclusivity.  I wasn't asked to opine on | 02:56PM |
| 22 | that. | 02:56PM |
| 23 |     Q.   Is the extent of exclusivity of | 02:56PM |
| 24 | the use of a mark a criteria, criterion that | 02:57PM |
| 25 | your field recognizes? | 02:57PM |

Confidential

Page 348

1     THE VIDEOGRAPHER:  The time is          05:15PM
2  5:17.  That's the end of today's           05:15PM
3  deposition.                                05:15PM
4     We are going off the record.            05:15PM
5     (Whereupon, at 5:17 p.m., the
6  Examination of this Witness was
7  concluded.)
8
9
10        _____
          RUSSELL WINER
11
   Subscribed and sworn to before me
12 this _____ day of _____, 2012.
13 _____
          NOTARY PUBLIC
14
15
16
17
18
19
20
21
22
23
24
25