1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER GRANTING PRELIMINARY INJUNCTION** |

PUBLIC REDACTED VERSION

Before the Court is Plaintiff Apple Inc.'s Motion Pursuant to Rule 62(c) for Entry of Preliminary Injunction Without Further Hearing ("Rule 62(c) Motion"). The Court, having considered the moving, opposition and reply papers, the papers supporting and opposing Apple's original motion for a preliminary injunction (Dkt. No. 86), the Federal Circuit's opinion in this matter, and the pleadings and materials on file in this matter, makes the following findings of fact and conclusions of law:

1. Apple Inc. ("Apple") is the owner of U.S. Design Patent No. 504889 (the "D'889 patent"). Apple designs, manufactures, and markets mobile communication and media devices, personal computers, and portable digital music players, and sells a variety of related software, services, peripherals, and third-party digital content and applications. The products sold by Apple include the popular iPad computing device.

2. On April 15, 2011, Apple filed the instant lawsuit against Samsung Electronics Co., Ltd., a Korean Corporation, Samsung Electronics America, Inc., a New York Corporation, and Samsung Telecommunications America LLC, a Delaware limited liability company (collectively, "Samsung"). Samsung designs, manufactures and markets mobile phones and tablet computers that compete with Apple's products. Apple's lawsuit alleges that several of Samsung's devices infringe Apple's design and utility patents and trade dress rights. Among other things, Apple has claimed that Samsung's Galaxy Tab 10.1[1] infringes the D'889 patent.

3. On July 1, 2011, Apple filed a motion seeking to enjoin the sale and importation of four Samsung devices, including the Galaxy Tab 10.1. (Dkt. No. 86.) On December 2, 2011, after extensive briefing and oral argument on Apple's preliminary injunction motion, this Court issued its Order denying Apple's motion. (Dkt. No. 452 ("Order").) The Court found likely infringement as to the D'889 patent (*id.* at 45) and likely irreparable harm to Apple in the absence of a preliminary injunction (*id*. at 32). However, the Court concluded that there was a "substantial question" as to whether Apple's iPad design was obvious over a combination of two references, using as a "primary reference" the 1994 "Fidler/Knight Ridder" tablet and as a

---

[1] As used in this Order, the term "Galaxy Tab 10.1" refers to all versions of that product, including the WiFi and LTE versions.

1  secondary reference the HP Compaq TC1000.  (*Id*. at 40-46.)  The Court did not discuss the
2  balance of hardships or public interest as to the D'889 patent, but did discuss those factors as to
3  two smartphone patents and a utility patent.  (*Id*. at 37-38, 65.)

4      4.  Apple appealed from the December 12, 2011 Order; the Federal Circuit issued its
5  opinion on May 14, 2012.  *Apple v. Samsung*, No. 2012-1105, slip op. at 25-31 (Fed. Cir. May 14,
6  2012).  As to the D'889 patent, the Federal Circuit "sustain[ed]" this Court's "finding of a
7  likelihood of irreparable harm."  *Id*. at 25.  The Federal Circuit held that this Court had
8  "considered the relevant factors, properly weighed them, and concluded that Apple had shown
9  that it was likely to suffer irreparable harm from the sales of Samsung's infringing tablets."  *Id*.
10 The court specifically noted "that design mattered more to customers in making tablet purchases."
11 *Id*.

12     5.  The Federal Circuit disagreed with this Court's "conclusion that Apple had failed to
13 show that it was likely to succeed on the merits."  *Id*.  The court concluded that the Fidler tablet
14 did not "create[] the same visual impression as the D'889 patent" (*id*. at 28) and could not serve
15 "as the primary reference against the D'889 patent (*id*. at 30).  The court further held:  "Even
16 assuming that Fidler qualified as a primary reference, the TC1000 secondary reference could not
17 bridge the gap between Fidler and the D'889 design."  *Id*. at 30.

18     6.  The Federal Circuit majority concluded that the case should be remanded for this
19 Court to make findings on remand as to balance of hardships and the public interest.  *Id*. at 32-34.
20 Judge O'Malley dissented from that aspect of the opinion, and would have ordered entry of an
21 injunction without any further proceedings, out of concern that remand would cause "unnecessary
22 delay, which is inconsistent with the very purpose of preliminary injunctive relief," particularly
23 where both the trial and appellate courts "agree that Apple will suffer irreparable harm absent
24 injunctive relief."  *Id*. at 2 (O'Malley, J., concurring-in-part and dissenting-in-part).

25     7.  In response to the dissent's concerns regarding delay, the majority stated:  "We see no
26 reason to believe that there will necessarily be delay, or if there is delay that it will be
27 unjustifiable."  *Id*. at 33.  The majority explained that, if this Court's findings "made in the
28 smartphone part of this case regarding the balance of hardships and the public interest are readily

transferable to the tablet part of the case, the district court should be able to make that determination in short order, thus minimizing the amount of delay." *Id*.

8. The court vacated the portion of the Order denying an injunction with respect to the D'889 patent and remanded with the following instructions:

> On remand, the court should conduct a similar assessment of the balance of hardships with respect to the D'889 patent. To the extent that the court finds that the public interest factor cuts in favor of either side, it should weigh that factor as well in determining whether to issue a preliminary injunction against Samsung's Galaxy Tab 10.1 tablet computer.

*Id*. at 33-34.

9. On May 18, 2012, Apple moved this Court pursuant to Federal Rule of Civil Procedure 62(c) for a preliminary injunction prohibiting Samsung from infringing Apple's D'889 including by making, using, offering to sell, or selling within the United States, or importing into the United States, the Galaxy Tab 10.1 tablet computer. (*See* Dkt. No. 951.) Apple claims that the balance of hardships and public interest factors weigh in its favor, and that it is entitled to immediate entry of a preliminary injunction. Samsung disputes each of these claims.

10. Contrary to Samsung's arguments, Rule 62(c) expressly authorizes this Court to "grant an injunction" while "an appeal is pending from an interlocutory order . . . that . . . denies an injunction." Fed. R. Civ. P. 62(c); *see U.S. v. El-O-Pathic Pharm.*, 192 F.2d 62, 79-80 (9th Cir. 1951). The prelimary injunction sought by Apple, like the injunction in *El-O-Pathic*, does not "alter[] the status of the case on appeal" (*Natural Res. Def. Council v. Sw. Marine*, 242 F.3d 1163, 1167 (9th Cir. 2001)), but rather supports the efficacy of the court of appeals' decision by preventing irreparable harm consistent with that decision. It is therefore consistent with preserving the status quo within the meaning of the Rule 62(c) precedent.

11. Apple is entitled to a preliminary injunction if it can establish that "'[it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest.'" *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1049 (Fed. Cir. 2010), quoting *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008) (alterations in original). As noted

1  above, the Federal Circuit has instructed this Court to consider the last two preliminary injunction
2  factors.  However, for the sake of completeness of this order, this Court will repeat its findings
3  concerning likelihood of success and irreparable harm.  Based on this Court's previous Order and
4  the Federal Circuit's Opinion, this Court finds that Apple is likely to succeed on the merits of its
5  claim that the D'889 patent is valid and infringed by the Galaxy Tab 10.1.  As this Court has
6  previously found, Apple is likely to establish at trial that the Galaxy Tab 10.1 is substantially
7  similar to the D'889 patent in the eyes of an ordinary observer.  (Order at 45-47.)  The substantial
8  similarities in the overall designs of the Galaxy Tab 10.1 and the D'889, coupled with the fact
9  that the Galaxy Tab 10.1 is virtually indistinguishable from Apple's iPad and iPad 2, demonstrate
10 that Apple will likely be able to establish infringement of the D'889 patent at trial.  (*See id.*)
11 Based on the guidance provided by the Federal Circuit's opinion in this case, this Court also finds
12 that Apple has established that the D'889 patent is likely valid.  *Apple v. Samsung*, No. 2012-
13 1105, slip op. at 25-31.
14       12. This Court also reaffirms its finding that Apple is likely irreparably harmed by
15 Samsung's infringing conduct, and specifically by the sales of the Galaxy Tab 10.1.  (Order at 48-
16 49.)  In particular, the evidence supports Apple's argument that some consumers are likely to be
17 induced to purchase the Galaxy Tab 10.1, instead of the Apple iPad, because the overall designs
18 of the products are substantially the same.  (Order at 49.)  In addition, because Apple claimed all
19 views of the D'889 design patent, evidence regarding the importance of design in consumer
20 choice is particularly probative of the nexus between Samsung's infringement and the irreparable
21 harm Apple has suffered.
22       13. . This Court finds that the last two preliminary injunction factors—the balance of
23 hardships and the public interest—also weigh in Apple's favor.  As noted above, Apple is
24 threatened with serious and irreparable injury as a result of Samsung's continued sale of an
25 infringing product in competition with Apple's iPad.  Apple and Samsung are direct competitors
26 in selling tablets, so that Samsung's infringing sales are causing Apple to lose market share and
27 customers, as well as sales of apps, iTunes music, and other compatible products.  (*See*, *e.g.*, Dkt.
28 No. 430-4 at 60-64, 126, 149, 180-83 (sealed); *see also* Dkt. No. 430-2 at 287-90 (same).)

1  Moreover, the high degree of brand loyalty to Apple makes the initial decision regarding which
2  product to purchase even more important because the potential customers that Apple loses to
3  Samsung may have long-term consequences that are difficult to calculate and may not be
4  recaptured.  (*See* Order at 32; Dkt. No. 430-4 at 60-64, 153-56, 170-71 (sealed).)  This long-term
5  harm includes lost sales of "tag-along products like apps, other Apple devices such as desktops,
6  laptops, and iPods, and future models of Apple smartphones."  (*Id*.)  Apple's "loss of customers
7  and future downstream purchases would be difficult to recover." (*Id.* (citing *MicroAire Surgical*
8  *Instruments, LLC v. Arthex, Inc.*, 726 F. Supp. 2d 604, 638-39 (W.D. Va. 2010).)

9      14. In opposition to Apple's Rule 62(c) motion, Samsung attempts to minimize the harm
10  Apple will suffer if Samsung is permitted to continue selling the Tab 10.1.  Samsung claims that
11  its copying of Apple's iconic design does not harm Apple because "Apple offers no proof that
12  consumers purchase the parties' respective tablet devices because of design to any material
13  degree" (Opp. at 7) and because Apple has not shown that "consumers would purchase an iPad 2
14  if they cannot purchase a Galaxy Tab 10.1" (Opp. at 8).

15      15. Although Samsung claims that these arguments are relevant to the balance of
16  hardships analysis, they are really nothing more than repackaged versions of Samsung's
17  irreparable harm arguments.  Reconsideration of these arguments is precluded by the Federal
18  Circuit's instructions in this case.  Even if the Court were to reconsider its prior ruling on the
19  irreparable harm factor, it would reject Samsung's contentions for the same reasons as before.
20  Contrary to Samsung's claims, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25  ▮▮▮▮

26      16. Samsung contends that Apple does not "directly compete with the Galaxy Tab 10.1
27  4G LTE sold through Verizon or U.S. Cellular, undoubtedly because Apple has not made a 4G
28  LTE version of the iPad 2" (Opp. at 7).  Samsung failed to make this argument in its original

1  opposition to Apple's preliminary injunction motion, and Samsung cites no evidence that its "4G
2  LTE" model is addressed to an entirely different market.  Moreover, as Samsung knows, Apple
3  began selling the third generation iPad, which includes 4G LTE, in March 2012.  (*See*
4  http://www.apple.com/pr/library/2012/03/07Apple-Launches-New-iPad.html.)  Hence, even if
5  this Court were to consider Samsung's new argument, that argument is unavailing.  Apple is
6  significantly harmed by Samsung's continued sales of its infringing product.

7        17. Samsung by contrast has failed to show that it will suffer significantly if enjoined from
8  selling the Tab 10.1.  Indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  (Dkt. No. 977-3 at 9.)  With the trial in this case set to start on July 30, the hardship caused by a
10 temporary injunction (assuming Samsung does not attempt to design around Apple's patent) is at
11 most equivalent to three month's worth of non-holiday season sales.  According to Samsung's
12 own representations, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Samsung, a multi-
13 billion dollar company with multiple product lines, will not suffer substantial irreparable harm if
14 temporarily enjoined from selling the Galaxy Tab 10.1 during that period of time.

15       18. As this Court previously recognized, "'one who elects to build a business on a product
16 found to infringe cannot be heard to complain if an injunction against a continuing infringement
17 destroys the business so elected.'"  (Order at 37 (quoting *Telebrands Direct Response Corp. v.*
18 *Ovation Commc'ns, Inc.*, 802 F. Supp. 1169, 1179 (D. N.J. 1992) (quoting *Windsurfing Int'l,*
19 *Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)).)  Here, not only is the Tab 10.1
20 strikingly similar to the iPad, but Samsung redesigned the Galaxy Tab 10.1 after the iPad 2's
21 release to mirror the iPad 2's profile.  (Order at 69 (noting media reports that "Samsung
22 'overhaul[ed]' its forthcoming Galaxy Tab 10.1 in response to Apple's recently unveiled
23 iPad 2")); Dkt. No. 11 ¶¶ 5-6, 4-5.)  As Judge O'Malley reasoned, "the district court's conclusion
24 that the Galaxy Tab 10.1 clearly infringes the D'889 Patent, coupled with some evidence that
25 Samsung altered its design to make it look like Apple's, further tips the balance of hardships
26 against Samsung." *Apple v. Samsung*, No. 2012-1105, slip op. at 10 (citing *Sunburst Prods., Inc.*
27 *v. Derrick Law Co.*, 922 F.2d 845, 1991 U.S. App. LEXIS 352, *16-17 (9th Cir. Jan. 9, 1991).)
28 For these reasons, this Court finds that the balance of hardship weighs in Apple's favor.

1    19. The public interest also favors issuing an injunction here because there is a stronger public interest in protecting Apple's D'889 patent, which is likely valid and infringed, than in increasing the number of competitors in the marketplace by one. *Telebrands Direct Response Corp.*, 802 F. Supp. at 1179.  As Judge O'Malley concluded, this Court's rulings regarding the public interest factors regarding the '381 patent (favored Apple) and smartphone design patents (did not weigh strongly for either party) readily transfer to the D'889: "[W]here the infringement question is not close and likely validity has been shown, the public interest weighs in favor of the patent holder." *Apple v. Samsung*, No. 2012-1105, slip op. at 11.  Samsung has not shown that any "critical public interest that would injured by the grant of preliminary relief." *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed Cir. 1988).  The Court finds that the public interest also weighs in favor of an injunction.

20. Rule 65(c) requires a party that obtains a preliminary injunction to give security "in an amount that the court considers proper." Fed. R. Civ. P. 65(c).  The Court finds that a bond of $2.6 million is sufficient security to pay the costs and damages likely sustained by Samsung should this Court subsequently find that Samsung has been wrongfully enjoined.  ███████████████████████████████████████████████████████ (Dkt. No. 977-3 at 13 (sealed).)

21. Apple's need for prompt injunctive relief is compelling.  Preliminary injunctions are designed to "give speedy relief from irreparable injury." *Ross-Whitney Corp. v. Smith Kline & French Labs.*, 207 F.2d 190, 198 (9th Cir. 1953.)  The Court's original decision was rendered on a full record, and since then Apple has endured many months of irreparable harm as a result of Samsung's infringing conduct.  Now that the Federal Circuit has issued its opinion holding that this Court erred in concluding that Samsung had raised substantial questions as to the validity of the D'889 patent, Apple should not have to wait any longer for injunctive relief.

ACCORDINGLY, for the reasons stated above, IT IS HEREBY ORDERED that Apple's motion for preliminary injunction is GRANTED.

IT IS FURTHER ORDERED that Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, Inc., its officers, directors, partners,

1 | agents, servants, employees, attorneys, subsidiaries, and those acting in concert with any of them,
2 | are enjoined, pending entry of final judgment in this action or further order of this Court, from
3 | making, using, offering to sell, selling or inducing others to sell within the United States, or
4 | importing into the United States, Samsung's Galaxy Tab 10.1, or any product that is no more than
5 | colorably different from Samsung's Galaxy Tab 10.1 and embodies any design contained in U.S.
6 | Design Patent No. D504,889.

  IT IS FURTHER ORDERED that Apple shall post a bond in support of this injunction in the amount stated in paragraph 20 above; this Order shall become effective upon posting of the bond.

  **IT IS SO ORDERED.**


Dated: _____, 2012

_____
HONORABLE LUCY H. KOH
United States District Judge