HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000


MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100


Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendants. | Case No.    11-cv-01846-LHK (PSG)<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED FACTS AND THEORIES**<br><br>Date:        June 26, 2012<br>Time:       10:00 a.m.<br>Place:      Courtroom 5, 4th Floor<br>Judge:     Hon. Paul S. Grewal |

PUBLIC REDACTED VERSION

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. II

I.      INTRODUCTION .............................................................................................................. 1

II.     LEGAL STANDARD ........................................................................................................ 2

III.    ARGUMENT ..................................................................................................................... 3

        A.      No Portion of Dr. Maharbiz's Report Should Be Struck. ....................................... 3

                1.      Dr. Maharbiz's SEM Analyses Were Properly Disclosed During
                        Expert Discovery ......................................................................................... 4

                2.      Apple Presented No "New" Infringement Theory. ...................................... 5

        B.      No Portion of Mr. Bressler's Report Should Be Struck. ........................................ 7

                1.      Mr. Bressler's Reliance on Alternative Designs Was Timely
                        Disclosed. ..................................................................................................... 8

                2.      Other Portions of Mr. Bressler's Infringement Opinions Were
                        Adequately Disclosed. .................................................................................. 9

        C.      No Portion of Dr. Kare's Report Should Be Struck. ............................................ 11

        D.      No Portion of Dr. Sood's Report Should Be Struck. ............................................ 11

        E.      No Portion of Dr. Winer's Report Should Be Struck. .......................................... 12

        F.      No Portion of Dr. Givargis's Reports Should Be Struck. ..................................... 14

                1.      Dr. Givargis Cites the J2ME Tutorial Only to Corroborate His
                        Understanding of "Midlet." ........................................................................ 14

                2.      Dr. Givargis Properly Rebuts Infringement Theories in Dr. Yang's
                        Report. ........................................................................................................ 16

        G.      No Portion of Dr. Balakrishnan's Report Should Be Struck. ............................... 18

        H.      No Portion of Mr. Musika's Reports Should Be Struck. ...................................... 20

                1.      Mr. Musika's Opening Report Was Based Solely on Documents
                        Produced Prior to the End of Discovery. ................................................... 20

                2.      Apple Did Not Violate Discovery Rules Through Its Production of
                        Licenses. ..................................................................................................... 21

                3.      Samsung Has Not Suffered Any Prejudice. ............................................... 22

                4.      Apple Did Not Commit Any Discovery Violation Relating to
                        Manufacturing Information. ........................................................................ 24

IV.     CONCLUSION ................................................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Am. Med. Sys., Inc. v. Laser Peripherals, LLC,*
712 F. Supp. 2d 885 (D. Minn. 2010) ....................................................................................... 4

*Avago Techs. Gen. IP Ltd. v. Elan Microelectronics Corp.*,
No. C 04-05385 JW,
2007 WL 2433386 (N.D. Cal. Aug. 22, 2007) ..................................................................... 9, 16

*Bashkin v. San Diego County*,
No. 08-CV-1450-WQH (WVG),
2011 WL 109229 (S.D. Cal. Jan. 13, 2011) .................................................................. 8, 10, 13

*Brilliant Instruments, Inc. v. GuideTech, Inc.*,
No. C 09-5517 CW,
2011 WL 900369 (N.D. Cal. Mar. 15, 2011) ......................................................................... 16

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
227 F.R.D. 313 (C.D. Cal. 2004) ............................................................................................. 2

*Genentech, Inc. v. Trs. of the Univ. of Pa.*,
No. C 10-2037 LHK (PSG),
2012 U.S. Dist. LEXIS 16959 (N.D. Cal. Feb. 9, 2012) ........................................................ 16

*Halaco Engineering Co. v. Costle*,
843 F.2d 376 (9th Cir. 1988) .................................................................................................... 3

*Heraeus Inc. v. Solar Applied Material Tech. Corp.*,
No. C 06-01191 RMW (RS),
2006 WL 2168851 (N.D. Cal. Jul. 31, 2006) ........................................................................... 5

*In re The 1031 Tax Group, LLC v. 1-15 Hartsdale Ave Corp.*,
No. 07-11448 (MG),
2010 WL 2851300 (S.D.N.Y. July 16, 2010) ........................................................................... 2

*Kenneth v. Nationwide Mut. Fire Ins. Co*.,
No. 03-CV-521F,
2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007) ......................................................................... 2

*Laser Design Int'l, LLC v. BJ Crystal, Inc.*,
No. C 03-1179 JSW,
2007 U.S. Dist. LEXIS 21329 (N.D. Cal. Mar. 7, 2007) ....................................................... 18

*Li v. A Perfect Day Franchise, Inc*.,
No. 5:10-CV-01189-LHK,
2012 WL 929784 (N.D. Cal. Mar. 19, 2012) ........................................................................... 3

*Linde v. Arab Bank, PLC*,
  No. CV-04-2799 (NG)(VVP),
  2012 WL 957970 (E.D.N.Y. Mar. 21, 2012) .......................................................................... 8

*Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.*,
  476 F. Supp. 2d 1143 (N.D. Cal. 2007) ............................................................................... 24

*Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*,
  362 F. Supp. 2d 526 (D.N.J. 2005) ..................................................................................... 18

*PixArt Imaging, Inc., v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
  No. C 10-00544 JW,
  2011 U.S. Dist. LEXIS 133502 (N.D. Cal. Oct. 27, 2011) .................................................. 17

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ............................................................................................. 22

*SEC v. Research Automation Corp.*,
  521 F.2d 585 (2d Cir. 1975) ................................................................................................... 3

*Signature Combs, Inc. v. United States*,
  222 F.R.D. 343 (W.D. Tenn. 2004) ........................................................................................ 3

*Smithkline Beecham Corp. v. Pentech Pharms., Inc.*,
  No. 00 C 2855,
  2001 U.S. Dist. LEXIS 18281 (N.D. Ill. Nov. 5, 2001) .......................................................... 4

*Stephenson v. Honeywell Int'l Inc.*,
  703 F. Supp. 2d 1250 (D. Kan. 2010) ..................................................................................... 4

*Unette Corp. v. Unit Pack Co.*,
  785 F.2d 1026 (Fed. Cir. 1986) ............................................................................................... 9

*Vardon Golf Co. v. BBMG Golf Ltd.*,
  156 F.R.D. 641 (N.D. Ill. 1994) .............................................................................................. 4

*Von Brimer v. Whirlpool Corp.*,
  536 F.2d 838 (9th Cir. 1976) ................................................................................................... 3

*Whipstock Servs., Inc., v. Schlumberger Oilfield Servs.*,
  No. 6:09-CV-113,
  2010 U.S. Dist. LEXIS 1395 (E.D. TX. Jan. 8, 2010) ............................................................ 6

**OTHER AUTHORITIES**

Fed. R. Civ. P.
  26 ................................................................................................................... *passim*
  30(b)(6) ................................................................................................................ 3, 21
  33(d) ................................................................................................................ 3, 9, 10
  37(a) ....................................................................................................................... 2
  37(b) ....................................................................................................................... 2
  37(b)(2) ................................................................................................................ 2, 3
  37(c) ...................................................................................................................... 24
  37(c)(1) ........................................................................................................... *passim*
  37(d) .................................................................................................................... 2, 3

# I.    INTRODUCTION

Samsung's motion articulates the principle that a party may not ambush its adversary with theories and evidence that it refused to disclose in response to discovery requests.  Apple embraces that principle and seeks to enforce it in its own motion to strike.  (*See* Dkt. No. 939-1.)  Unlike Samsung, however, Apple has fully complied with its disclosure obligations under the Patent Local Rules and the Federal Rules of Civil Procedure.  Samsung's assertions to the contrary are meritless.

For example, Samsung argues that the results of certain laboratory tests conducted at the direction of Dr. Michael Maharbiz, Apple's expert on the '607 Patent, should have been disclosed during fact discovery, and that Apple's failure to do so deprived Samsung of a "meaningful opportunity to test" those results.  (Samsung's Motion to Strike Expert Testimony Based on Undisclosed Facts & Theories ("Mot.") at 19.)  But, as Samsung acknowledges, the report containing those laboratory results was not issued until March 9, 2012, the day after fact discovery closed.  (*Id*. at 4.)  Apple had no obligation to disclose, during the fact discovery period, expert report evidence that did not yet exist.

Samsung's remaining efforts to exclude portions of Apple's expert reports fail as well.  Samsung's other attack on Dr. Maharbiz's report fails because his infringement theory was adequately disclosed in Apple's Patent Local Rules disclosure.  As to the reports of Mr. Bressler, Dr. Kare, and Dr. Winer, Apple fully disclosed the theories and arguments in those reports and had no obligation to disclose the supporting details that are now challenged by Samsung.  Moreover, since Samsung did not propound discovery relating to the subjects of those reports until February 7, 2012, Apple's disclosures were not due until the last day of discovery, far too late to have allowed Samsung to "conduct directed discovery" on those issues.  With respect to the reports by Dr. Sood and Dr. Balakrishnan, Samsung never propounded discovery seeking the material that it now claims was withheld.  And Samsung overreaches with respect to Dr. Givargis's report.  His report includes a single reference to a tutorial document as background material illustrating an ordinary artisan's understanding of a claim term.  But nothing in the

1  Patent Local Rules required disclosure of that background document, which Dr. Givargis does not

2  argue anticipates or renders obvious any of Samsung's asserted patents.

3     Samsung's challenge to Mr. Musika's opening report on Apple's damages and Musika's

4  rebuttal report regarding Samsung's feature patents is equally misguided.  Samsung seeks to

5  strike all of Mr. Musika's reasonable royalty analysis, cripple his rebuttal opinions, and eliminate

6  all claims to lost profits on the basis of certain licensing information that Samsung claims was

7  improperly produced after the end of discovery.  Musika's opening report on Apple's damages

8  relies solely on documents that were produced before discovery closed.  Apple believes it has

9  responded appropriately to Samsung's Requests for Production but, in any event, the documents

10 about which Samsung complains have no effect on Mr. Musika's opinions.  The timing of their

11 production thus provides no basis for striking any portion of Mr. Musika's reports.

12    For these reasons and those discussed below, the Court should deny Samsung's motion.

13 **II.    LEGAL STANDARD**

14    Samsung moves to strike under Patent Local Rule 3-1 and Rules 37(b)(2), 37(c)(1), and

15 37(d) of the Federal Rules of Civil Procedure.  The Court can disregard two of those provisions

16 from the outset.

17    "Sanctions are available pursuant to Rule 37(b) only if a court has first entered a specific

18 order compelling the discovery in question, and a party has disobeyed that order."  *In re The 1031*

19 *Tax Group, LLC v. 1-15 Hartsdale Ave Corp.*, No. 07-11448 (MG), 2010 WL 2851300, at *4

20 (S.D.N.Y. July 16, 2010); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 324 n.34

21 (C.D. Cal. 2004) (Rule 37(b)(2) "contemplate[s] a threshold determination by the court that the

22 offending party has failed to comply with a court order issued under Rule 37(a)").  Samsung does

23 not and cannot point to any Court order directing Apple to produce or disclose the material it now

24 seeks to strike.  Samsung points to Judge Koh's August 25, 2011 Case Management Order, but

25 that order merely established the deadlines by which discovery must be completed and did not

26 require Apple to provide any specific discovery.  Courts have repeatedly held that such

27 "scheduling orders . . . are not the type of 'discovery orders' that provide grounds within the

28 scope of Rule 37(b) sanctions."  *Kenneth v. Nationwide Mut. Fire Ins. Co.*, No. 03-CV-521F,

2007 WL 3533887, at *12 (W.D.N.Y. Nov. 13, 2007); *see also Signature Combs, Inc. v. United States*, 222 F.R.D. 343, 345 n.1 (W.D. Tenn. 2004) (same).  Samsung's cases do not prove otherwise, as each involves violation of an order to provide specific discovery.  *See Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 929784, at *8, *14 (N.D. Cal. Mar. 19, 2012) (order to produce Rule 30(b)(6) designee); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 843 (9th Cir. 1976) (order to produce documents).  Thus, Rule 37(b)(2) does not apply here.

Rule 37(d) is likewise inapplicable.  Relief under this provision is available only if a party fails to answer an interrogatory or fails to appear for a scheduled deposition.  *See, e.g., Halaco Engineering Co. v. Costle*, 843 F.2d 376, 380 n.1 (9th Cir. 1988) (Rule 33(d) inapplicable where party did not fail to serve interrogatory response); *SEC v. Research Automation Corp.*, 521 F.2d 585, 588-89 (2d Cir. 1975) (Rule 37(d) is "limit[ed] to the case where a defendant literally fails to show up for a deposition session").  Samsung does not contend that Apple failed to respond to the interrogatories identified in Samsung's motion, or that it failed to appear for a noticed deposition.

That leaves Patent Local Rule 3-1 and Rule 37(c)(1) as the grounds for Samsung's motion.  Apple agrees that the former provision requires early disclosure of a party's infringement theories, and that the latter forbids a party from using at trial evidence that it improperly refused to disclose during discovery.  Apple complied with all of its obligations under these standards.

### III.  ARGUMENT

#### A.  No Portion of Dr. Maharbiz's Report Should Be Struck.

Samsung argues that portions of Dr. Maharbiz's infringement report should be struck because:  (a) Apple did not disclose during fact discovery laboratory reports that Dr. Maharbiz finished after fact discovery closed; and (b) Apple's Infringement Contentions did not identify all of the factual support that it would later uncover during discovery.  The Court should reject both of Samsung's arguments.

1. **Dr. Maharbiz's SEM Analyses Were Properly Disclosed During Expert Discovery.**

In conjunction with the preparation of his March 22, 2012 expert report, Dr. Maharbiz personally oversaw and controlled a series of Scanning Electron Microscopy ("SEM") tests on certain Samsung accused products. (Pernick Decl. Ex. 3 at 50:14-51:2; 53:21-54:11; 65:5-66:23.) SEM tests use an electron microscope to obtain information regarding texture, chemical composition, crystalline structure, and orientation of physical objects or devices. Also called "teardowns," SEM tests reveal details that go far beyond those that are viewable by the human eye. The test reports, along with other documents, show that Samsung's Galaxy Tab 7.0 and Galaxy Tab 10.1 infringe Claim 8 of the '607 Patent. Samsung asks the Court to strike the parts of Dr. Maharbiz's report that refer to these tests results on the theory that Apple was obligated to disclose them before serving his report. Samsung is wrong for three reasons.

First, the SEM tests that Dr. Maharbiz directed were work product. When a technical consultant retained by counsel in a patent case performs tests on an accused product, courts hold that the expert's test results constitute work product. The reason is that "the kinds of tests performed, the materials used in the tests, and the specific compounds tested may reveal the attorney's strategy in [litigating] the infringement claim." *Smithkline Beecham Corp. v. Pentech Pharms., Inc.*, No. 00 C 2855, 2001 U.S. Dist. LEXIS 18281 (N.D. Ill. Nov. 5, 2001); *see also Vardon Golf Co. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 648 (N.D. Ill. 1994) ("test data falls within the textbook definition of work product").

Samsung points out that a third party conducted the SEM tests for Dr. Maharbiz. But that does not matter. Dr. Maharbiz personally oversaw and controlled the teardown process (Pernick Decl. Ex. 3 at 50:14-51:2; 53:21-54:11; 65:5-66:23), and a testifying expert is free to rely on testing performed by another who operates under his control. *See Stephenson v. Honeywell Int'l Inc.*, 703 F. Supp. 2d 1250, 1255-56 (D. Kan. 2010) (expert reports can be based on tests run by expert under testifying expert's control); *Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 897 (D. Minn. 2010) (SEM tests can be run by lab technicians). The test results retain their protected status.

The SEM test data and reports conducted at Dr. Maharbiz's direction were protected work product until his report was due. At that point, the materials became discoverable—and Apple did attach them to Dr. Maharbiz's report. But they did not need to be disclosed during fact discovery. *See Heraeus Inc. v. Solar Applied Material Tech. Corp.*, No. C 06-01191 RMW (RS), 2006 WL 2168851, at *2 (N.D. Cal. Jul. 31, 2006) ("Although Solar may have a right to the details of Dr. Laughlin's testing procedures if and when he is offered as a trial witness, no such designation has been made nor is Heraeus required to have done so at this juncture").

Samsung's claim that Apple should have disclosed the SEM tests earlier fails for a second, independent reason. Dr. Maharbiz's testing was not complete until a few days before his report was due, *i.e.*, after fact discovery had closed. Samsung cites no authority for the proposition that Apple had to produce every snapshot of its expert's ongoing tests in real-time. The SEM tests were timely disclosed when they were attached to Maharbiz's opening report

Finally, Samsung was not harmed by Apple's inclusion of Dr. Maharbiz's test data in his expert report instead of in a supplemental production a few days earlier. Samsung had a full and fair opportunity to address the teardowns in its own expert reports and in depositions. Indeed, Samsung spent approximately 2.5 hours exploring this topic with Dr. Maharbiz. (Pernick Decl. Ex. 3 at 41:19-131:19.) Samsung could also have done a lot more. It could have conducted its own teardowns of its own devices *at any time*, or had Samsung or Atmel engineers—or an independent expert—verify Dr. Maharbiz's teardown results. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Samsung also could have deposed those who worked at Dr. Maharbiz's direction, or requested documents or inspections. Samsung chose to do none of that. Dr. Maharbiz engaged in standard expert analysis, and Samsung had the chance to pursue the discovery it needed. The Court should not strike Dr. Maharbiz's SEM analyses.

## 2. Apple Presented No "New" Infringement Theory.

Apple's Infringement Contentions asserted that Samsung's devices had a particular type of circuit element: a "virtual ground charge amplifier." (Ward Decl. Ex. A at 11.) Apple did not have discovery yet from Samsung or its suppliers on the details of the components in the accused

1  products, but Apple's Infringement Contentions noted that "the specific circuit elements" making
2  up this circuit "will be identified" after Apple obtained discovery.  (*Id.*)

3      Dr. Maharbiz's report now cites documentation and deposition testimony that Apple
4  eventually obtained from Samsung and its supplier Atmel confirming the identity of the "virtual
5  ground charge amplifier" in the accused devices.  (Ward Decl. Ex. D ¶¶ 64-71.)  Samsung argues
6  that the Court should strike the references to these documents and testimony because they were
7  not disclosed in Apple's Infringement Contentions.  Samsung is incorrect.

8      First, Samsung misapprehends the role of Infringement Contentions.  Infringement
9  Contentions—which are due before discovery begins—notify the accused infringer of the
10  patentee's theories.  They need not identify all the evidence that discovery will yield and that will
11  support the patentee's infringement theories.  *See Whipstock Servs., Inc.*, *v. Schlumberger Oilfield*
12  *Servs.,* No. 6:09-CV-113, 2010 U.S. Dist. LEXIS 1395, at * 4 (E.D. TX. Jan. 8, 2010) ("The
13  Rules do not require the disclosure of specific evidence nor do they require a plaintiff to prove its
14  infringement case").  That support can come out later, through mechanisms like expert reports.
15  That is what occurred here.  Dr. Maharbiz is now providing specific proof to back up Apple's
16  contention that Samsung's devices include a "virtual ground charge amplifier."  This is not a
17  "new theory" that needed to be in Apple's Infringement Contentions.  It is just proof.

18      Second, Samsung has no right to complain about the timing of Dr. Maharbiz's disclosure.
19  Samsung and Atmel withheld the information cited by Dr. Maharbiz until shortly before the close
20  of fact discovery.  Even though Samsung should have produced it on October 7, 2011—when it
21  needed to produce "specifications, schematics," and "other documentation sufficient to show the
22  operation" of its accused products (*see* Patent Local Rule 3-4(a))—the key document to which
23  Maharbiz points was not produced by Samsung until February 19, 2012.  (*See* Pernick Decl. ¶ 3;
24  Maharbiz Decl. Ex. C.)  Atmel produced it on February 22, 2012.  (Pernick Decl. ¶ 3; Maharbiz
25  Decl. Ex. D.)  Samsung's claim that Apple should have disclosed this information earlier—when
26  Samsung was in fact withholding it from Apple—is unavailing.

27      Samsung's complaints of prejudice from any alleged delay in learning that *its own devices*
28  included a virtual ground charge amplifier are baseless too.  Apple's infringement theory for

Claim 8 is, and has always been, that Samsung's products contain a virtual ground charge amplifier connected to the touch panel to detect touches on the touch sensor. One of ordinary skill in the art would have known after reviewing the '607 Patent what constitutes a virtual ground charge amplifier (Maharbiz Decl. ¶¶ 18-23; Pernick Decl. Ex. 4 at 105:7-12), and one of skill in the art with access to Samsung's and Atmel's documents would know that the accused devices contain the claimed virtual ground charge amplifier.

Shown below (left) is an example of ███████████████████████████████ ██████████████████████████████ and (right) the virtual ground charge amplifier circuit from the '607 Patent.

███████████████████████████████████████

IN

OUT

FIG. 13

████████████████████████████████████████, Samsung cannot now claim that it was unaware either of Apple's infringement theory, or that its own products contained the identical circuit depicted in Figure 13 of the '607 Patent.

The obvious reason that Samsung seeks to exclude these documents is that they show what Samsung has known all along—and what Apple has always asserted—namely, that the accused devices have a "virtual ground charge amplifier." That is not a legitimate basis upon which to strike the paragraphs at issue from Dr. Maharbiz's report.

**B. No Portion of Mr. Bressler's Report Should Be Struck.**

Samsung maintains that Apple failed to disclose some of the alternative designs, instances of consumer confusion, comparisons with prior art, and descriptions of asserted patents presented by Mr. Bressler in his report. Those arguments all fail. Apple fully and fairly put Samsung on notice of all of the information at issue.

## 1. Mr. Bressler's Reliance on Alternative Designs Was Timely Disclosed.

Samsung complains that Mr. Bressler cites alternative designs in his expert report that "Apple never disclosed … during discovery." (Mot. at 5.) But Samsung does not point to any discovery request that called for Apple to identify its alternative design theories. Samsung's Document Request No. 127—which is the only request Samsung cites for this argument—seeks documents and things relating to Apple's analysis of whether Samsung products infringe Apple intellectual property. (*Id.*) Samsung does not explain how this request for *documents* in any way encompasses Apple's alternative design arguments.

In any event, Apple's discovery responses did put Samsung on notice of the alternative design arguments presented by Mr. Bressler. Apple's response to Samsung's Interrogatory No. 68—which asked for the facts supporting Apple's contention that its design patents and trade dress are non-functional—disclosed its contention that "there are a plethora of alternative designs available for smartphones and tablet computers." (Ward Decl. Ex. H at 61-65.) Apple's response identified 10 alternative tablets and 20 alternative phones—including most of the designs discussed in Mr. Bressler's report—and specifically noted that this list was "without limitation." (*Id.*) Apple's preliminary injunction papers also disclosed numerous alternative designs, including two of the designs that Samsung seeks to strike from Mr. Bressler's report. (*See* Dkt. No. 423 ¶¶ 39-40, Exs. 25, 36 (disclosing alternative design arguments based on Freescale smartbook concept and T-Mobile My-Touch).)

That response satisfied Apple's obligations. The cases hold that a party does not need to respond to a contention interrogatory by supplying "each and every detail that could possibly exist in the universe of facts." *See, e.g., Bashkin v. San Diego County*, No. 08-CV-1450-WQH (WVG), 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011); *Linde v. Arab Bank, PLC*, No. CV-04-2799 (NG)(VVP), 2012 WL 957970, at *1 (E.D.N.Y. Mar. 21, 2012). Here, the universe of alternative designs essentially includes all tablets and smartphones with designs that are distinct from Apple's asserted design patents. It would have been immensely burdensome, if not impossible, for Apple to have provided an exhaustive list. Samsung certainly has no evidence

that Apple sandbagged Samsung by withholding from its response specific information that supported its contention.

Samsung points to no authority suggesting that Apple was obligated to disclose during discovery *every* alternative design that would later be discussed by Mr. Bressler in his report. The only case it cites is *Avago Techs. Gen. IP Ltd. v. Elan Microelectronics Corp.*, No. C 04-05385 JW, 2007 WL 2433386 (N.D. Cal. Aug. 22, 2007). (*See* Mot. at 20.) That case is inapposite. The court there held that a defendant had violated the Patent Local Rules by omitting certain prior art references from its Invalidity Contentions. *Avago Techs.*, 2007 WL 2433386, at *1. The court did not address Rule 26(e) or alternative designs at all.

### 2. Other Portions of Mr. Bressler's Infringement Opinions Were Adequately Disclosed.

Samsung's argument that the Court should strike Mr. Bressler's opinions concerning customer confusion and other aspects of his infringement analysis is similarly flawed.

Samsung protests that Bressler's customer confusion analysis was "never disclosed in response to Interrogatory No. 72." (Mot. at 6.) But that interrogatory sought facts supporting Apple's contentions regarding design patent infringement—which has nothing to do with consumer confusion. *See Unette Corp. v. Unit Pack Co.*, 785 F.2d 1026, 1029 (Fed. Cir. 1986) ("Likelihood of confusion as to the source of the goods is not a necessary or appropriate factor for determining infringement of a design patent"). The challenged material from Mr. Bressler's report was not responsive to Interrogatory No. 72.

In a different legal context, Apple did disclose its consumer confusion theories. Apple's Amended Complaint states several times that "Samsung's adoption of a trade dress that slavishly copies [Apple's trade dress] . . . is likely to cause confusion or mistake, or to deceive consumers[.]" (Dkt. No. 75 ¶¶ 106, 115, 129, 132, 136-37, 141, 144, 148-49, 159, 164, 167, 171, 175, 178.) Plus, in response to Samsung's Interrogatory No. 17, which asked Apple to "[d]escribe all instances known to [it] of confusion, including mistake, or deception relating to any of the Apple Trade Dress or Apple Trademarks," Apple invoked Rule 33(d) and identified

thousands of Samsung documents that evidence customer confusion.[1]  (Ward Decl. Ex. E at 11-12.)  Samsung was therefore on notice of Apple's consumer confusion arguments.  It is irrelevant that Apple did not disclose in its interrogatory responses the individual product reviews discussed by Mr. Bressler.  Rule 26(e) does not require a party to identify "each and every detail" supporting a theory that has been otherwise disclosed during discovery.  *Bashkin*, 2011 WL 109229, at *2.

Similarly, Samsung suffered no harm from the inclusion in Mr. Bressler's report of a "detailed description" of the asserted design patents.  Mr. Bressler did nothing more than point to and describe various elements of the designs that Samsung has been aware of since the filing of the Complaint.  Samsung cannot plausibly claim that it was caught by surprise that Apple would, in arguing infringement of its design patents, discuss in detail the claimed designs.

Finally, Samsung was not harmed by the omission in discovery responses of *any* information contained in Mr. Bressler's report.  Apple's allegedly deficient responses were to Samsung Interrogatory Nos. 68 and 72.  Samsung served these interrogatories on February 7, 2012, and by agreement of the parties Apple's response was due March 10, 2012.  That is, Apple's response was due two days after the close of fact discovery and just 12 days before Mr. Bressler's report was served.  Even if Apple had a duty to include more information in its interrogatory responses—which it did not—Samsung does not identify any benefit it would have derived from obtaining the allegedly withheld material twelve days earlier.  No disclosure on March 10 would have allowed Samsung "an opportunity to conduct directed discovery" regarding Mr. Bressler's opinions (Mot. at 19), as discovery had by then closed.

---

[1] Apple's reliance on Rule 33(d) in this context was entirely appropriate.  Rule 33(d) allows a party to specify documents containing information that is responsive to an interrogatory where the burden of extracting that information is the same for both sides.  (Ward Decl. Ex. H at 12.)  Given that Interrogatory No. 17 requested only *factual* information (*i.e.*, instances of confusion)—and given that Apple cited to Samsung documents—it was just as easy, if not easier, for Samsung to cull out responsive information from these documents as it was for Apple to do so.  (*Cf.* Dkt. No. 939-1 at 18-19 (Rule 33(d) response improper where interrogatory seeks disclosure of *theories* that asserted design patents are invalid).)

### C.    No Portion of Dr. Kare's Report Should Be Struck.

Like Mr. Bressler, Dr. Kare—Apple's expert with respect to user interface graphics—addresses alternative designs to Apple's design patents. Samsung argues that some of those designs were not disclosed during discovery, and on that ground seeks to exclude Dr. Kare's discussion of them. (Mot. at 6-7.) As discussed above, however, Apple's response to Interrogatory No. 68 put Samsung on notice that Apple would present arguments and evidence regarding alternative designs. That disclosure identified numerous examples of such designs, including some featured in Dr. Kare's report. This satisfied Apple's disclosure obligations under Rule 26(e), and Samsung cites no authority suggesting otherwise.

Samsung also seeks to exclude Dr. Kare's comparisons of certain icons appearing on the accused devices with icons appearing in the asserted design patents and trade dress. (Mot. at 7.) Samsung asserts that "Apple never identified any of these icons as being disputed." (*Id.*) That is nonsense. Each of the icons analyzed by Dr. Kare appears in the asserted trade dress and design patents or in the accused Samsung devices. Samsung has been on notice of the asserted trade dress and design patents at least since the filing of the Amended Complaint. (Dkt. No. 75.) Indeed, Samsung's own expert on graphic user interface issues, Sam Lucente, also opined on the icons featured in the asserted design patents. (Dkt. No. 939-4 Ex. 26 at 63-78.) Samsung cannot plausibly claim to have been surprised that Apple's expert did the same.

In any event, Samsung's only basis for striking any part of Dr. Kare's report is its inclusion of material not specifically mentioned in Apple's response to Interrogatory No. 72. As discussed above, any omission of information in response to that Interrogatory was harmless, in light of the fact that discovery had closed by the date that response was due, and Dr. Kare's report issued less than two weeks later.

### D.    No Portion of Dr. Sood's Report Should Be Struck.

In his report, Dr. Sanjay Sood cites two academic articles he co-authored that discuss studies he conducted to assess the impact of product design on consumer choice. Samsung argues that Apple failed timely to produce the questionnaires used in the surveys in Dr. Sood's report.

Samsung's position is meritless.  First, Samsung fails to identify any discovery request requiring disclosure of the survey questionnaires and responses.  Rule 26(e) does not require a party to produce documents in the absence of a request for production.  *See* Fed. R. Civ. P. 26(e)(1).  Samsung had the opportunity to seek such discovery because, in September 2011, Apple filed a declaration from Dr. Sood which covered the same subject matter.[2]  Second, even if Samsung had requested the documents, it is not entitled to every document underlying every study cited in an expert report, especially where, as here, the studies were not conducted in connection with the lawsuit for which the expert was retained.  Third, the questionnaires are cumulative of information contained in the articles.  (*See* Pernick Decl. Ex. 7 at 86:11-89:18.)  Samsung would have therefore received no further benefit from disclosure of the questionnaires and could not have been harmed by their omission from Apple's discovery responses.

**E.      No Portion of Dr. Winer's Report Should Be Struck.**

Samsung alleges that facts and theories in Dr. Winer's report relating to trademark and trade dress likelihood of confusion, dilution, fame, and secondary meaning were not disclosed in Apple's interrogatory responses.  (Mot. at 14-16.)  Samsung is wrong.

Contrary to Samsung's assertions, Apple's responses to Interrogatory Nos. 70 and 71 put Samsung on notice regarding Dr. Winer's opinions with respect to likelihood of confusion and dilution.  (*See* Ward Decl. Ex. H at 68-93.)  For example, Apple's responses to both interrogatories repeatedly asserted that Samsung intentionally designed its products to look like Apple products.  (*See* Ward Decl. Ex. H at 68-93.)  Dr. Winer similarly opines that ██████ ████████████████████████████████████████████████████ ██████      (*See* Ward Decl. Ex. W ¶¶ 110, 132-138.)  Also, the responses point to Apple's extensive advertising, unsolicited third-party press, the appearance of the products in popular media, and widespread use by well-known public figures.  (*See* Ward Decl. Ex. H at 72, 92-93.)  Dr. Winer relies on these categories of evidence to support his opinion regarding consumers' post-sale

---

[2] (*Compare* Dkt. No. 421 ¶¶ 13-15 *with* Ward Decl. Ex. J ¶¶ 16-20; *compare* Dkt. No. 421 ¶ 16 *with* Ward Decl. Ex. J ¶ 21; *compare* Dkt. No. 421 ¶¶ 17-20 *with* Ward Decl. Ex. J ¶¶ 22-25.)

experiences and public exposure to Apple products. (*See*, *e.g.*, Ward Decl. Ex. W ¶¶ 105, 108, 141.) Since a party is not required to respond to a contention interrogatory with "each and every detail that could possibly exist in the universe of facts," *Bashkin,* 2011 WL 109229, at *2, this disclosure suffices.

The theories in Dr. Winer's report were *also* disclosed to Samsung in other ways. Through its pleadings and other filings, Apple disclosed: (1) its theory that the look and feel of the accused Samsung products is far from accidental (Dkt. No. 75 ¶¶ 106, 108, 115, 118, 129, 141, 143-44, 149, 156, 164, 167, 175, 178; Dkt. No. 86 at 1); (2) its documentary evidence that ███████████████████████████████████████████ (Dkt. No. 715); (3) its reliance on facts and theories regarding post-sale experiences and public exposures to Apple products (Dkt. No. 715; Dkt. No. 75 ¶¶ 85, 106-08, 141; Ward Decl. Ex. G ¶¶ 65-68); (4) competition between Samsung and Apple for the same market share in connection with the second *Sleekcraft* factor (*see, e.g.,* Dkt. No. 75 ¶¶ 84, 88, 107-08; Pernick Decl. Ex. 18 at 7-8; Dkt. No. 86 at 1, 24-27); (5) marketing and sale of Samsung and Apple products in the same channels in connection with the second and fifth *Sleekcraft* factors (*see, e.g.,* Dkt. No. 75 ¶¶ 84, 136, 159; Pernick Decl. Ex 18 at 7-8; Dkt. No. 86 at 1, 24-27); and (6) details regarding the look of Samsung phones and tablets prior to the release of the Galaxy line of smartphones and tablets (*see, e.g.,* Dkt. No. 75 ¶ 89). Apple's responses to Interrogatory Nos. 7 and 17 on copying, consumer confusion, and dilution also identified documents substantiating Apple's theories on these subjects. (Ward Decl. Ex. E at 6-10, 11-12.)

Samsung also contends that Dr. Winer improperly relied on information regarding "consumer recognition and fame of the trade dress" not disclosed in response to Interrogatory No. 69, particularly internal Apple and Samsung documents. (Mot. at 16.) However, that Interrogatory sought only facts supporting *the date* the trade dress became famous and acquired secondary meaning, which Apple's response addresses in detail. (Ward Decl. Ex. G ¶¶ 65-68.) Furthermore, in response to Interrogatory No. 18, Apple disclosed its intent to rely on marketing and consumer studies produced by Apple and Samsung and listed numerous, illustrative documents. (Ward Decl. Ex. E at 14-15.) Further evidencing its intent to rely on Apple's market

APPLE'S OPPOSITION TO SAMSUNG'S MOT. TO STRIKE EXP. TESTIMONY BASED ON UNDISCLOSED FACTS & THEORIES
CASE NO. 11-CV-01846-LHK (PSG)
sf-3150789

13

research studies to support consumer recognition and fame, Apple discussed in its preliminary injunction briefing examples of the same iPhone Buyer Surveys that are cited in Winer's report. (*See, e.g.* Dkt. Nos. 420, 421 ¶¶ 10, 24-33.)

Finally, there is no basis for excluding any portion of Dr. Winer's report because Samsung was not harmed by any omission of information from Apple's discovery responses. The three Interrogatories to which, in Samsung's view, Apple provided insufficient responses are Interrogatories 69-71. All of these Interrogatories were served on February 7, 2012, and Apple timely responded to them on March 10, 2012. As discussed above, discovery closed on that date, and Apple served its experts' reports just 12 days later. Even if Apple had done what Samsung claims, Samsung would not have enjoyed any "meaningful opportunity to investigate or respond to" Dr. Winer's opinions beyond what it otherwise had as a result of the disclosure of those opinions on March 22.

**F.      No Portion of Dr. Givargis's Reports Should Be Struck.**

Samsung seeks to strike broad swaths of Dr. Givargis's invalidity report because he cites a single background tutorial that was not previously disclosed, and to strike arguments from Dr. Givargis's non-infringement report that rebut Samsung's newly expanded infringement theories. Samsung's motion fails as to both reports.

**1.      Dr. Givargis Cites the J2ME Tutorial Only to Corroborate His Understanding of "Midlet."**

There is no merit to Samsung's argument that 24 paragraphs should be struck from Dr. Givargis's invalidity report because of the mere citation of a background document not listed in Apple's disclosures under the Patent Local Rules. Samsung itself acknowledges that the document that serves as the basis of its motion is merely a "tutorial." (Dkt. No. 934 at 8-9 (citing "J2ME Tutorial," APLNDC-WH-A0000025002).) Dr. Givargis cited the J2ME Tutorial only once in his invalidity report to confirm that an ordinary artisan would understand the term "midlet" to mean a type of "applet" designed for mobile devices. (Pernick Decl. Ex.10 ¶ 127.) Indeed, Dr. Givargis's deposition testimony confirms that he is not relying on the J2ME Tutorial to understand the meaning of "midlet," but rather on his own knowledge and understanding:

APPLE'S OPPOSITION TO SAMSUNG'S MOT. TO STRIKE EXP. TESTIMONY BASED ON UNDISCLOSED FACTS & THEORIES
CASE NO. 11-CV-01846-LHK (PSG)
sf-3150789

14

| | |
|---|---|
| Q: | And for a definition of midlet, you are relying on a Java tutorial, also referenced in your report; is that right? |
| A: | No. |
| Q: | What are you relying on in your report, with respect to the definition of midlet? |
| A: | I also rely on my own knowledge and understanding of -- of midlet is.  [sic] |

(*See Id*. Ex.12 at 122:11-122:18 (referencing the J2ME Tutorial).)

To the extent the J2ME Tutorial is used to characterize an obviousness reference ***at all***, it is used ***only*** to provide context for the Mahmoud Article, one reference used in Apple's obviousness combinations.  (*Id*. Ex. 10 ¶ 127.)  From this slender reed, Samsung attempts to hang an argument to strike 24 paragraphs from the Givargis report, including:  (a) one paragraph that does not mention either the J2ME Tutorial or the Mahmoud Article at all; (b) twenty paragraphs that reference the Mahmoud Article, but not the J2ME Tutorial, along with other secondary references that provide similar teaching (*see, e.g., id*. ¶ 148, "Each of the Mahmoud article, Shaffer patent, and Wong patent disclose use of applets…"); (c) two paragraphs that reference the Mahmoud Article alone; and, (d) just ***one*** single paragraph that mentions both the J2ME Tutorial and the Mahmoud Article.[3]

Even if Samsung were correct that the J2ME Tutorial was an improper late disclosure (which it was not), there is no basis for striking Dr. Givargis's discussion of the Mahmoud, Shaffer and Wong references.  All of these references were properly disclosed in Apple's Invalidity Contentions, and specifically described there as teaching "applets."  (*See, e.g., id.* Ex. 11 at 146 ("The secondary references include, but are not limited to, the Mahmoud article, the Shaffer patent, or the Wong patent, which describe the use of 'applets' for media applications including MP3 play."); *id.* at Exs. L-1 through L-5.)  Thus, the paragraphs of Dr. Givargis's report that Samsung seeks to strike are fully supported by Apple's Invalidity Contentions, and

---

[3] The paragraphs in Dr. Givargis's report corresponding to each of these categories are: (a) ¶ 97; (b) ¶¶ 136, 148, 164, 167-171, 174, 183, 184, 188, 191, 222, 231, 253, 260, 288, 295, 324; (c) ¶¶ 150 and 185; and (d) ¶ 127.  (*See* Dkt. No. 934-4; Pernick Decl. Ex. 10.)

Samsung has suffered no prejudice based on the alleged late disclosure of the background J2ME Tutorial.

Moreover, this Court has held that an expert's citation of mere background material which is ***not*** used as a reference to anticipate or render obvious a patent claim may not be the basis of striking an expert report due to late disclosure of that background material. *See Genentech, Inc. v. Trs. of the Univ. of Pa.*, No. C 10-2037 LHK (PSG), 2012 U.S. Dist. LEXIS 16959, at *12-13 (N.D. Cal. Feb. 9, 2012) ("The fact that a reference to a particular clinical trial was not disclosed in the invalidity contentions does not render it unusable for laying an historical foundation to research that was disclosed"); *Brilliant Instruments, Inc. v. GuideTech, Inc.*, No. C 09-5517 CW, 2011 WL 900369, at *2 (N.D. Cal. Mar. 15, 2011) (documents produced after the close of fact discovery could not be used as prior art for anticipation or obviousness, but could be relied on for other purposes). Even in the case on which Samsung relies, the court would not strike portions of an expert report if the expert merely used an "undisclosed reference to explain other invalidating prior art," rather than relying "on the undisclosed reference itself." *Avago Techs.,* 2007 WL 2433386, at *1. Nowhere in Dr. Givargis's report or deposition testimony does he suggest the ordinary artisan would have *needed* the J2ME Tutorial to understand the word "midlet" as used in the Mahmoud reference; rather, the tutorial was cited merely to corroborate Dr. Givargis's background knowledge. (*See, e.g.*, Pernick Decl. Ex. 12 at 121:21-122:18; Ex 10 ¶ 127.)

## 2. Dr. Givargis Properly Rebuts Infringement Theories in Dr. Yang's Report.

Samsung's assertion that certain arguments should be struck from Dr. Givargis's non-infringement report lacks merit because these arguments are proper rebuttal to infringement theories first raised by Samsung's expert, Dr. Yang. Claim 9 of Samsung's U.S. Patent No. 7,698,711 ("'711 patent") requires "a controller … for selecting an MP3 mode in the pocket-sized mobile communication device using the interface…" (the "'selecting' claim element"). But with respect to the "selecting" claim element, the Yang infringement report differs from Samsung's Infringement Contentions:

| Samsung's Patent L.R. 3-1 Disclosures | March 22, 2012 Yang Report |
|---|---|
| [T]he accused devices allow the user to select the MP3 mode by tapping on the iPod or Music application icon. Once this application is selected, the user is taken to the iPod application home page, as shown below.<br><br>(Pernick Decl. Ex. 8 at 4 (claim element 1[c], accompanied by a single image); *id.* at 12-14 (for claim 9, stating "See Claim 1 (a)-(h).").) | ████████████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████████ ²⁶<br><br>(Pernick Decl. Ex. 9 ¶ 85; *id.* at Ex. 3 (claim element 9[a]) (emphasis added).)[4] |

Further, whereas Samsung's Patent L.R. 3-1 contentions included a single image to demonstrate the alleged infringing step, ███████████████████████ ████████████████████████████████████ (Pernick Decl. Ex. 9 ¶ 85; *id.* at Yang Exhibit 3, claim element 9[a], fns. 25, 26; *id.* at Yang Exhibit 3A-2, steps 1-4.) Given the expanded infringement argument presented by Samsung for the first time in Dr. Yang's opening report, Dr. Givargis was entitled to provide an expanded response regarding non-infringement in his rebuttal report.[5]

Samsung has not pointed to a single case where a court has struck a timely served non-infringement expert report offered in response to an infringement expert report. Dr. Givargis's report is timely under Fed. R. Civ. P. 26(a)(2)(D)(ii), which provides that expert rebuttal must be provided within 30 days of the opening report "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)." *See PixArt Imaging, Inc., v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.,* No. C 10-00544 JW,

---

[4] The exhibits to Dr. Yang's report are not page numbered. ██████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ (Pernick Decl. Ex. 9 ¶ 85; *id.* at Ex. 3, claim element 1[c].)

[5] The term ████████████████████████████████████ as used by Dr. Yang in his March 22, 2012 infringement report, was not disclosed in Samsung's Infringement Contentions and implicates an additional theory. Because it is Dr. Givargis's opinion that a mode can be "selected" but not "launched" in the manner of an application, it was necessary for his expert report to rebut Dr. Yang's new theory that a mode could be "launched" in the manner of an application. (Dkt. No. 935-24 ¶¶ 62-65.)

1  2011 U.S. Dist. LEXIS 133502, at *15-16 (N.D. Cal. Oct. 27, 2011) (denying motion to strike

2  expert report offered in rebuttal to opening expert disclosure).  That is precisely what occurred

3  here—Dr. Yang's analysis of the "selecting" claim element expanded and changed Samsung's

4  Patent L.R. 3-1 disclosures, and Dr. Givargis's report is properly offered to rebut that new

5  analysis by Samsung's expert.

6        In any event, the disclosure of Dr. Givargis's opinions are substantially justified because

7  Apple could not have reasonably anticipated that Samsung (which long ago served its

8  Infringement Contentions) would offer a newly clarified and expanded theory of infringement of

9  the "selecting" claim element in its opening expert report.  *See Mosaid Techs. Inc. v. Samsung*

10 *Elecs. Co., Ltd.,* 362 F. Supp. 2d 526, 559 (D.N.J. 2005) (denying Mosaid's motion to strike a

11 non-infringement expert report where Mosaid claimed that defendants had included non-

12 infringement arguments not disclosed in a contention interrogatory response, noting that

13 "MOSAID as the patentee bears the burden of proof on infringement"); *cf. Laser Design Int'l,*

14 *LLC v. BJ Crystal, Inc.*, No. C 03-1179 JSW, 2007 U.S. Dist. LEXIS 21329, at *13 (N.D. Cal.

15 Mar. 7, 2007) ("A failure to disclose testimony is not substantially justified, where, as here, the

16 need for such testimony could reasonably have been anticipated") citing *Wong v. Regents of the*

17 *Univ. of Calif.*, 410 F.3d 1052, 1061-62 (9th Cir. 2005).  Samsung's motion to strike

18 Dr. Givargis's arguments regarding the "selecting" claim element should be denied.[6]

19     **G.     No Portion of Dr. Balakrishnan's Report Should Be Struck.**

20        Samsung moves to strike portions of Dr. Balakrishnan's report regarding Samsung's

21 infringement of the '381 Patent on the ground that it had no opportunity to examine the *Samsung*

22 *products* on which Dr. Balakrishan opines.  (Mot. at 10.)  This argument fails for several reasons.

23        As a threshold matter, the Court should deny the relief Samsung requests because

24 Samsung never propounded a request for production—or served a subpoena—seeking an

25 inspection of the accused Samsung products.  Rule 37(c)(1) sanctions are by definition only

26

_____

27     [6] Furthermore, there can be no harm because Samsung's expert has already set out his
understanding of the meaning of apps, modes, and sub-modes for two other Apple patents.
(Pernick Decl. Ex. 9 ¶¶ 52, 70.)

28

1 available when "a party fails to provide information or identify a witness as required by

2 Rule 26(a) or (e)…." Fed. R. Civ. P. 37(c)(1). But Samsung's motion points to no underlying

3 document request or other discovery device pursuant to which Apple was obligated to make

4 available the products that Dr. Balakrishnan analyzed. There is accordingly no applicable

5 document request that Apple has failed to supplement under Rule 26(e). *See* Fed. R. Civ.

6 P. 26(e)(1). Without a predicate violation of Rule 26(a) or Rule 26(e), the Rule 37(c)(1) relief

7 Samsung seeks is simply unavailable.

8 The Court should also reject Samsung's argument regarding the Samsung products on

9 which Dr. Balakrishnan opines because it smacks of hypocrisy. When Apple asked Samsung to

10 produce samples of its accused products, Samsung refused on the ground that "th[ey] are publicly

11 available." (Pernick Decl. Ex. 13.) The Court should not allow Samsung to change its position

12 now that the shoe is on the other foot.

13 Specifically, on August 3, 2011, Apple served Request for Production No. 18, which

14 sought production of the accused Samsung devices. (*See id.*) Samsung refused unless Apple

15 demonstrated an "inability to independently acquire such products." (*Id.*) Half a year later,

16 Samsung agreed to produce product samples (*Id.* Ex. 14), but—despite repeated requests by

17 Apple (*see, e.g.,* Pernick Decl. Ex. 15)—ultimately reneged on its promise. Without Samsung's

18 assistance, Apple had to obtain its own samples of the Samsung accused products. Samsung can

19 now also analyze accused products that it procures on its own, especially given that these are

20 *Samsung's own products.*

21 Perhaps most importantly, Sasmung's complaint is moot. Dr. Balakrishnan made clear in

22 his March 22nd report that he examined 27 Samsung products to determine infringement.

23 (Mot. at 9.) Samsung waited for over a month—until after it had served its rebuttal report and

24 taken Dr. Balakrishnan's deposition—before requesting an inspection of those products.

25 Samsung claimed that it needed this inspection to verify the "version of the Android code" and

26 the versions of the software applications on the products. (*See* Pernick Decl. Ex. 16.)

27 To obviate the need for an in-person inspection, and to avoid the possibility of inadvertent

28 modifications to the products (which constantly check for software updates), Apple sent Samsung

the code and software application version information for each device that Dr. Balakrishnan inspected. (*See* Ward Decl. Ex. S.) This was precisely the information that Samsung claimed to need. Samsung nevertheless renewed its request for an inspection in its motion to strike. Given Samsung's position, Apple offered to make the products at issue available for inspection. (*See* Pernick Decl. Ex. 17.) Samsung conducted one inspection on May 29, and will return for a second day on June 1. Samsung has e*xactly what it requested*. Its motion to strike portions of Dr. Balakrishan's report is moot.

### H. No Portion of Mr. Musika's Reports Should Be Struck.

Samsung's motion to strike portions of the expert reports of Terry Musika seeks unwarranted and draconian sanctions—effectively striking his entire reasonable royalty opinion, crippling his rebuttal to Samsung's damages claim with respect to certain Samsung patents, and striking his discussion of Apple's manufacturing capacity (and thus his lost profits opinions). But Samsung has not established that Apple's production of licenses and royalty information violates Rule 26, let alone in a manner that would call for sanctions under Rule 37(c)(1). Mr. Musika's opinions were based on documents produced before the end of discovery, and the allegedly withheld documents have no effect on his opinions.

### 1. Mr. Musika's Opening Report Was Based Solely on Documents Produced Prior to the End of Discovery.

Prior to the March 8 fact discovery deadline, Apple produced tens of thousands of pages of damages-related documents including financial statements; information on sales, costs, and profits, including information by carrier; market-share information; marketing and advertising reports and surveys; line-of-business reports; royalty reports, manufacturing-capacity information and all licenses that cover any of the patents being asserted by either side. These productions include *all the information* used by Mr. Musika for the purposes of his March 22, 2012 Opening Report, including all the information about manufacturing capacity, all the information used for his reasonable royalty analysis, and all the information to which he refers concerning the "Made for iPod" program. (Musika Decl. ¶¶ 7-13.) Samsung's suggestion to the contrary is unsupported (Mot. at 11:6) and its motion provides no basis to strike any of his opinions under Rule 37(c)(1).

## 2. Apple Did Not Violate Discovery Rules Through Its Production of Licenses.

Samsung previously requested "LICENSES . . . relating to the APPLE ACCUSED PRODUCTS," but Apple objected to that request due, *inter alia*, to its breadth. (Pernick Decl. Ex. 5 at 12-13.) Apple never agreed to produce all of its licenses relating to iPhones, iPads, and iPods. Prior to the close of fact discovery, Apple did produce over ██ licenses, including all licenses covering the patents in suit, licenses related to standards essential patents, and patent licenses that had some relationship to the accused devices. (*See* Pernick Decl. ¶ 23; Ex. 24-28.)

By March 8, Apple also produced royalty reports showing license payments for all three products. Apple produced the first royalty reports on February 5, 2012. In addition to patent royalties, these reports include copyright, software, and other non-patent royalties. (Musika Decl. Ex. C at 209:10-22.) On February 23, 2012, Mark Buckley (Apple's Rule 30(b)(6) designee on certain damages topics) indicated that the royalty report was being updated. (*Id*. at 210:4-14.) Apple produced an updated version on March 8, 2012, which included additional information through fiscal Q1 2012.

On March 13, Apple determined that the royalty reports contained privileged and work product information. Pursuant to paragraph 16 of the Protective Order, Apple immediately clawed back the documents and substituted non-privileged versions *two days later*. When Samsung objected to the format of the replacement reports, Apple produced new versions. When Samsung objected to those versions, Apple produced a set of the original royalty reports redacted for privileged information. Apple fully explained the reasons for clawing back these reports in its correspondence with Samsung and in its Privilege Log. (*See* Pernick Decl. Exs. 19-21.) Samsung does not challenge any of these reasons in its Motion to Strike, and Apple's production and timely replacement of these documents does not constitute a discovery violation. To the contrary, Apple's conduct was authorized by the Protective Order and justified by a privilege.

On March 7 and March 12, Samsung requested production of any unproduced agreements for any entity listed in the royalty reports. (*See* Dkt. No. 936 Exs. C-D.) Apple does not agree that these agreements are relevant, but Apple has collected the additional licenses. Apple's

search also identified several recently-executed patent licenses not present on the royalty report. Apple began producing these licenses as soon as it satisfied applicable third-party notice provisions in the agreements. Since March 8, 2012, Apple has produced ███████ and it anticipates producing ███ more before the hearing on this motion. None of these agreements contains a license for the patents that Apple has asserted and none are comparable to the licenses called for by the hypothetical negotiations used to calculate a reasonable royalty in this case. (Musika Decl. ¶¶ 7, 10-11.) Apple does not believe that any are relevant and is not relying on any of them for any purpose; and they have no effect on Mr. Musika's opinions. (*Id.*)

Apple's supplemental production of licenses does not constitute a violation of any discovery order or discovery rule. Apple properly objected to Samsung's overbroad requests, and the non-patent licenses and licenses to other unrelated technology are not useful for determining a reasonable royalty for any of the patents in suit. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-870 (Fed. Cir. 2010) (rejecting reasonable royalty analysis where the cited licenses were software and source code licenses, "none [of which] even mentioned the patents in suit or showed any other discernible link to the claimed technology").

### 3.   Samsung Has Not Suffered Any Prejudice.

Samsung's motion identifies no prejudice to it and there is none. Apple's royalty reports and licenses play no role in the opinions of Apple's or Samsung's experts as to a reasonable royalty for Apple's intellectual property. Mr. Musika makes no use of the previously unproduced licenses or royalty report in his March 22 opening report and has already concluded that more relevant licenses, ███████████████, were not comparable. (Musika Decl. ¶ 7.)[7] ████████████████████████████████████████
████████████████████████████████████████
███████ Wagner produced an improper supplemental report on May 12, well after the events

---

[7] Samsung points to Mr. Musika's evaluation of Apple's "Made for iPod" program, but this information is unrelated to the royalty reports about which Samsung complains and all information on which he relies was produced before the end of discovery. (Musika Decl. ¶¶ 12-13; *see also* Pernick Decl. Ex 23.)

in question, but even there ██████████████████████ When Samsung deposed Mr. Musika

on May 14 it asked *no* questions about patent licenses, let alone about licenses produced after

March 8, 2012.

Apple's licenses also play no material role with respect to damages opinions for

Samsung's three patents. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████

Similarly Mr. Musika does not, in his April 16 Rebuttal Report, discuss licenses except to

point out that ███████████████████████████████████ (Musika Decl.

Ex. A ¶¶ 44-45.)  Nearly all the licenses to which Mr. Musika referred in making this point ████

███ were produced before March 8, and his criticism of Samsung for proposing a running royalty

rather than a lump sum applies regardless of any licenses produced thereafter.  (*See* Musika

Decl. ¶ 7, 10.)

Apple's production provides no basis to strike any of Mr. Musika's damages opinions,

and certainly does not justify striking the large portions of these reports that are included in

Samsung's order but are unrelated to royalty reports or Apple's licenses.  (*See* Dkt. No. 934-4

(seeking to strike over 37 pages of the March 22 Report and ¶¶ 29, 68, and 69 of the Rebuttal

Report, which address different topics).)  Further, the post-March 8 documents have no effect on

any of his opinions.  (Musika Decl. ¶¶ 10-11.)

---

[8] Samsung attempts to make much of the fact that Apple's counsel examined Dr. O'Brien on the assertion in his report that his '██████████████████████████████ The point of the examination was to determine whether Dr. O'Brien could identify any patent licenses that had not been produced and was taking the position that withheld non-patent licenses were comparable and relevant to a reasonable royalty damages calculation.

### 4. Apple Did Not Commit Any Discovery Violation Relating to Manufacturing Information.

Samsung seeks to throw out Mr. Musika's lost profits opinions even though he used documents regarding manufacturing capacity that were produced *before* discovery ended. Samsung admits that it received all the documents that Mr. Musika considered on this topic by February 23 and then questioned Mark Buckley about them—for more than 23 pages of transcript. (Mot. at 14:19-22; Dkt. No. 934-5 ¶ 2; Musika Decl. Ex. C at 183:10-206:14.) After the close of fact discovery, Samsung then questioned Tony Blevins extensively about manufacturing capacity. (Pernick Decl. Ex. 29.) Samsung's expert devotes 10 pages to manufacturing capacity but never complains about the scope of information received. (*See* Pernick Decl. Ex. 31 ¶¶ 169-193.) There has been no violation of Rule 26 or Rule 37(c). Samsung's claim that it should have received more information, including information never considered by Mr. Musika, does not justify striking a whole category of damages from the case. *See Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1155 (N.D. Cal. 2007) (holding that if plaintiff needed additional information beyond that relied upon by expert, it should have moved to compel the production of that information.)

## IV. CONCLUSION

For the reasons set forth above, the Court should deny Samsung's motion.

Dated: May 31, 2012                    MORRISON & FOERSTER LLP


                                       By:    */s/ Michael A. Jacobs*
                                              Michael A. Jacobs

                                       Attorneys for Plaintiff
                                       APPLE INC.