Exhibit 12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
                UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
                     SAN JOSE DIVISION


  APPLE INC., a California
  corporation,

              Plaintiffs,

              Vs.                    Civil Action No.
                                     11-CV-01846-LHK
  SAMSUNG ELECTRONICS CO.,
  LTD., a Korean business
  entity, SAMSUNG ELECTRONICS
  AMERICA, INC., a New York
  corporation and SAMSUNG
  TELECOMMUNICATIONS AMERICA
  LLC, a Delaware limited

              Defendants.
  ~~~~~~~~~~~~~~~~~~~~~~~~~~
  AND RELATED CROSS ACTIONS.
  _____


       **Highly Confidential - Attorney's Eyes Only**
              VIDEOTAPED DEPOSITION OF EXPERT
                  TONY D. GIVARGIS, PH.D.
                   Los Angeles, California
                   Monday, April 23, 2012


  Reported By:
  Jeanese Johnson, CSR No. 11635, CLR
  Job No. 48793
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

```
 4      April 23, 2012
 5      9:11 a.m.


 8      Videotaped Deposition of Expert
 9   TONY D. GIVARGIS, PH.D., held at the
10   offices of Quinn Emanuel, 865 So. Figueroa
11   Street, 10th Floor, Los Angeles, California,
12   before Jeanese Johnson, CSR No. 11635,
13   Certified LiveNote Reporter, of the State
14   of California.
```

Page 3

```
 2   A P P E A R A N C E S:

 5      WILMERHALE
 6      Attorneys for Plaintiff
 7         399 Park Avenue
 8         New York, New York  10022
 9      BY:   VICTOR F. SOUTO, ESQ.
10            ALI H. SHAH, PH.D.

12      QUINN EMANUEL URQUHART & SULLIVAN
13      Attorneys for Defendant
14         555 Twin Dolphin Drive
15         Redwood Shores, California  94065
16      BY:   VICTORIA F. MAROULIS, ESQ.
17            KENNETH K. SUH, ESQ.


20   ALSO PRESENT:

22      COURTNEY BATES, Legal Video Specialist
```

Page 4

```
 2              - o0o -


 5         THE VIDEOGRAPHER:  Good morning.
 6      The time on the record is 9:11 a.m.
 7   Today's date is April the 23rd of 2012.
 8   This marks the beginning of Disc No. 1 of the
 9   videotaped deposition of Tony D. Givargis in the
10   matter of Apple, Inc. Versus Samsung Electronics
11   Company Limited; Case No. 11-CV-01846-LHK.
12         This deposition is being held today at
13   865 South Figueroa Street on the 10th floor in Los
14   Angeles, California.  My name is Courtney Bates, and
15   I'm here from TSG Reporting, Inc., and I'm the legal
16   video specialist.  I'm here with our court reporter,
17   Jeanese Johnson, also with TSG.
18         At this time, will counsel please give
19   your appearances for the record.
20         MS. MAROULIS:  Victoria Maroulis with
21   Quinn Emanuel, counsel for Samsung.  And with me
22   is Mr. Ken Suh also of Quinn Emanuel, counsel for
23   Samsung.
24         MR. SOUTO:  Vick Souto of Wilmer
25   Hale, counsel for Apple.  And with me -- and the
```

Page 5

```
 1   witness is -- and with me is Ali Shah, also of
 2   Wilmer Hale.
 3         THE VIDEOGRAPHER:  Thank you.
 4         And the reporter may now swear or
 5   affirm the witness.
 6         THE COURT REPORTER:  Please raise
 7   your right hand.
 8         Do you solemnly state the testimony
 9   you will give during this deposition proceeding
10   will be the truth, the whole truth, and nothing
11   but the truth?
12         THE WITNESS:  Yes.
13         THE COURT REPORTER:  Thank you.

15   EXAMINATION
16   MS. MAROULIS:
17      Q.  Good morning, Mr. Givargis.  How are
18   you today?
19      A.  Good.  Thanks.  Good morning.
20      Q.  Can you please state your full name
21   for the record.
22      A.  Yes.  My full name is Tony Degaolous
23   Givargis, G-I-V-A-R-G-I-S.
24      Q.  Can you please state your home
25   address.
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 118

1  Q. But you don't have any evidence that
2  this refers to mobile devices as such?
3  A. But the Wong reference specifically
4  talks about mobile devices as being such
5  computers.
6     And so my understanding of reading
7  that is that a mobile device is included in that
8  term "computer."
9  Q. Does term "server," in the next
10 sentence, suggest to you that this is in the
11 context of a computer and not a mobile phone?
12 A. As I said, the server, a desktop, a
13 laptop, a mobile phone, they are all computers of
14 sort. They are all computing devices and perform
15 Java instructions, and they can accommodate the
16 Java virtual machine.
17 Q. Again, in that sentence, though,
18 there's no specific reference to the mobile
19 phone; is that right?
20     MR. SOUTO: Objection to form.
21     THE WITNESS: The patent is very
22 specific in -- in -- in summarizing in its
23 summary and motivation, it does specifically talk
24 about mobile devices. It -- it -- this patent
25 is, indeed, very much applicable to mobile

Page 119

1  devices. It's part of the premise of the work is
2  mobile devices.
3  Q. Can you please turn to Column 8 and
4  look at lines 12 through 18.
5     It states: "In some
6     embodiment from the present
7     portions of the mobile Java
8     multi-media framework module, such as
9     the KODAK 306, can bypass the JVM
10    208 and interface, directly, the
11    native operating system."
12    Do you see that?
13 A. Correct.
14 Q. Does that suggest to you that that
15 Java application can run directly on that
16 operating system?
17 A. No, they cannot.
18 Q. Why not?
19 A. The Java applications, at all times,
20 would require an interpreter.
21    When the Java application makes a
22 META call, or when it calls some of the source
23 code of this particular framework, that -- the
24 implementation of that source code can bypass the
25 JVM for the purpose of resource efficiency or

Page 120

1  for -- for being able to be more efficient, can
2  bypass the JVM and go directly to the operating
3  system?
4     MS. MAROULIS: Why don't we take a
5  lunch break. I might have one or two more
6  questions on Wong, but I don't want to starve the
7  witness.
8     MR. SOUTO: Thank you.
9     THE VIDEOGRAPHER: The time is
10 12:41 p.m., and we are off the record.
11    * * *
12    (Luncheon Recess)
13    * * *
14    THE VIDEOGRAPHER: The time is
15 1:30 p.m. and we are back on the record.
16 MS. MAROULIS:
17 Q. Dr. Givargis, before the break, we
18 were discussing the Wong reference.
19    Do you remember that?
20 A. Yes.
21 Q. I have a last question for you.
22    Do you agree that whoever drafted the
23 patent understood the difference between Java
24 Applets and Java application?
25    MR. SOUTO: Objection to form.

Page 121

1     THE WITNESS: I don't know what --
2  what the person drafting this knew, specifically,
3  about those two exam -- those two technologies.
4  Q. And they use the two words
5  differently in the patent.
6     In other words, some portions of the
7  patent refer to "entities" and other portions to
8  the "application;" correct?
9  A. My understanding is that the term
10 "application," as used in this patent, is
11 consistent with it being an Applet or a Java
12 application.
13 Q. Nonetheless, there were portions of
14 this patent that only refer to applications and
15 not Applets, and there are other portions where
16 they refer to them?
17 A. In all those cases, the reference to
18 an application for an Applet was, to me, an
19 either/or. Both of them, equally, would serve
20 the purpose.
21 Q. You can set the one reference aside.
22    (Exhibit 12, an article entitled
23    The J2ME Mobile Media API, is marked
24    by the Deposition Officer)
25    Please turn your attention to

Page 122

1  Exhibit 12, in front of you.
2       A. Okay.
3       Q. Do you recognize Exhibit 12 as the
4  article by Mahmoud that is referenced in your
5  report?
6       A. Yes.
7       Q. You cite this article for the
8  proposition paragraph 127 that something called
9  midlets is a form of Applet; is that correct?
10      A. Yes.
11      Q. And for a definition of midlet, you
12 are relying on a Java tutorial, also referenced
13 in your report; is that right?
14      A. No.
15      Q. What are you relying on in your
16 report, with respect to the definition of midlet?
17      A. I also rely on my own knowledge and
18 understanding of -- of midlet is.
19      Q. Isn't it correct, sir, that you never
20 brought up midlets in your first report in the
21 claim construction phase of this case?
22      A. That is correct. I did not discuss
23 midlets.
24      Q. And the Court did not discuss midlets
25 as part of its Claim Construction Order?

Page 123

1       A. I -- I don't know.
2       Q. To the extent you reviewed the
3  Court's Claim Construction Order that we
4  previously marked as exhibit -- an exhibit today,
5  you did not see any reference to midlets;
6  correct?
7       A. I do not recall seeing a reference to
8  midlet, but if you want me to...
9       Q. I'll represent to you that it
10 doesn't.
11      A. Okay.
12      Q. And I'm just asking if you have a
13 different recollection.
14         Let's mark another exhibit as
15 Exhibit 13.
16         (Exhibit 13, an article entitled.
17          Introduction Tools Application
18          Development, is marked by the
19          Deposition Officer)
20         MR. SOUTO: Thank you.
21      Q. Dr. Givargis, do you recognize
22 Exhibit 13?
23      A. No, I do not recognize it as being
24 something I have seen before.
25      Q. I'll take it back from you, if you

Page 124

1  don't recognize it.
2          MR. SOUTO: Are you withdrawing it as
3  an exhibit?
4          MS. MAROULIS: I am. There might be
5  some confusion because I understood this to be
6  something he's relying on. But if he's not, I'll
7  take it back.
8          MR. SOUTO: Okay. Well, okay. I'm
9  going to give you back all of the exhibits.
10 Thank you.
11      Q. Okay. Let's get back to the Mahmoud
12 article.
13         Do you see, in this first statement
14 of the -- the first sentence of the abstract, it
15 says: "The Mobile Media API is an optional
16 package that supports multimedia application on
17 J2ME enabled devices."
18      A. Yes, that's what it said.
19      Q. Does it suggest to you that this
20 feature is optional, it does not always appear in
21 the phone?
22      A. The MMAPI is a framework that would
23 need to be -- to be incorporated into an
24 environment, yeah.
25      Q. Do you have any evidence whether the

Page 125

1  prior art phones, on which you are relying for
2  your analysis, have this optional feature?
3       A. Based on the record, my analysis and
4  review of the phones, they do have the Mobile
5  Media API.
6       Q. Do you indicate that anywhere in your
7  report?
8       A. Which one of the phones are you
9  specifically...
10      Q. Any of the phones that you analyzed.
11      A. Yes.
12      Q. Can you point me to where you cite to
13 evidence that these phones have the particular
14 features referenced in the Mahmoud article?
15      A. In paragraph 97 of my report, I do
16 write: "The K700i incorporates the Java ME
17 environment, including the Mobile Media API."
18      Q. How do you know that this phone
19 incorporates the Mobile Media API?
20      A. Based on my review and analysis of
21 the phone.
22      Q. Is that review and analysis reflected
23 anywhere in the report or in the attachments?
24      A. In the form that I just referenced.
25      Q. This is the only reference in your

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 126

1  report to the Mobile Media API?
2      A. I don't know. There may be other
3  ones. I can search for this.
4      Q. You're not presenting your report,
5  the evidence of this API, actually being in the
6  phone somewhere where I can point to in the
7  report; correct?
8      MR. SOUTO: Objection to form.
9      THE WITNESS: Based on my -- my
10 knowledge and understanding of the K700i, it does
11 support the Mobile Media API.
12     Q. Other than your inference from
13 reviewing the phone, we don't have any place in
14 your report to confirm or disprove that
15 statement; is that right?
16     MR. SOUTO: Objection to form.
17     THE WITNESS: This -- this analysis
18 -- this conclusion is based on my understanding
19 and knowledge about the K700i phone.
20     Q. But we don't have any documentary
21 evidence in the form of snapshots, source code or
22 specifications to confirm that; correct?
23     A. I do not know. I -- I would need to
24 look at the K700i manual.
25     Q. Okay. I'm going to hand you back the

Page 127

1  exhibit that I confiscated because I found where
2  it appears in your report.
3      A. I see.
4      Q. Please take a look at paragraph 127
5  of your report and let me know if you recognize
6  Exhibit 13.
7      MR. SOUTO: Just note for the record
8  it looks like there may be Bates numbers on here
9  that may be cut off on the copy.
10     MS. MAROULIS: Yes. My copy has the
11 Bates number, it's APLNDCWHA00002500 through
12 25006, which matches the citation in the
13 witness's report. I'll provide a replacement
14 copy after the deposition.
15     MR. SOUTO: Okay.
16     THE WITNESS: Yes, that's right.
17 Yes.
18     Q. Okay. So you rely on this document,
19 which is entitled J2ME Tutorial in paragraph 127
20 of your report; correct?
21     A. Yes.
22     Q. To your knowledge, this tutorial was
23 not disclosed in the invalidity contention that
24 we looked at earlier today?
25     A. To my knowledge, it was not.

Page 128

1      Q. When did you locate this document?
2      A. "When" as in what time?
3      Q. Yes.
4      A. I do not know the exact date.
5      Q. What is the source of this document?
6      A. The document is -- there is a link to
7  it, at the very bottom, uberthings.com/mobile.
8      Q. What is uberthings.com/mobile?
9      A. It's a website.
10     Q. Is it a credible source of obtaining
11 information?
12     A. Yes. In my understanding, it's a
13 credible source for this information.
14     Q. Who maintains this website?
15     A. I don't know.
16     Q. Did you use this website as part of
17 your regular professional activities?
18     A. I have referred to it to look up
19 things about Java, yes.
20     Q. How frequently is this website
21 updated, to your knowledge?
22     A. I do not know.
23     Q. On the top of the document, it
24 states: "Sends any comments/suggestions to
25 Michael at uberthings.com;" do you see that?

Page 129

1      A. Yes.
2      Q. Do you know who Michael is?
3      A. I do not know him, personally, no.
4      Q. Do you know whether Michael has any
5  background or experience in programming?
6      A. I believe he does.
7      Q. What is the basis of your belief?
8      A. He has produced this document, which
9  is consistent with my knowledge of Java midlets
10 and Applets.
11     Q. Do you know Michael's last name?
12     A. I do not know Michael.
13     Q. Do you believe this is a website or
14 publication that is peer-reviewed, in any way?
15     A. I do not know if it -- if this site
16 is peer-reviewed.
17     Q. Okay. Please turn to the third page
18 of the document, which has production range
19 A000025002.
20     Do you see --
21     MR. SOUTO: That is page 3 of 7
22 because we don't have the production.
23     MS. MAROULIS: It's page 3 of 7;
24 correct.
25     MR. SOUTO: Okay.