1   HAROLD J. MCELHINNY (CA SBN 66781)   WILLIAM F. LEE
    hmcelhinny@mofo.com                  william.lee@wilmerhale.com
2   MICHAEL A. JACOBS (CA SBN 111664)    WILMER CUTLER PICKERING
    mjacobs@mofo.com                     HALE AND DORR LLP
3   JENNIFER LEE TAYLOR (CA SBN 161368)  60 State Street
    jtaylor@mofo.com                     Boston, MA 02109
4   ALISON M. TUCHER (CA SBN 171363)     Telephone: (617) 526-6000
    atucher@mofo.com                     Facsimile: (617) 526-5000
5   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
6   JASON R. BARTLETT (CA SBN 214530)    MARK D. SELWYN (SBN 244180)
    jasonbartlett@mofo.com               mark.selwyn@wilmerhale.com
7   MORRISON & FOERSTER LLP              WILMER CUTLER PICKERING
    425 Market Street                    HALE AND DORR LLP
8   San Francisco, California  94105-2482  950 Page Mill Road
    Telephone:  (415) 268-7000           Palo Alto, California 94304
9   Facsimile:  (415) 268-7522           Telephone: (650) 858-6000
                                         Facsimile: (650) 858-6100
10

11  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.
12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                    SAN JOSE DIVISION

16

17  APPLE INC., a California corporation,      Case No.      11-cv-01846-LHK (PSG)

18                      Plaintiff,             **APPLE'S OPPOSITION TO
                                               SAMSUNG'S MOTION FOR
19           v.                                SUMMARY JUDGMENT**

20  SAMSUNG ELECTRONICS CO., LTD., a           Date:      June 21, 2012
    Korean business entity; SAMSUNG            Time:      1:30 p.m.
21  ELECTRONICS AMERICA, INC., a New York      Place:     Courtroom 8, 4th Floor
    corporation; SAMSUNG                       Judge:     Hon. Lucy H. Koh
22  TELECOMMUNICATIONS AMERICA, LLC, a
    Delaware limited liability company,
23
                        Defendants.
24

25                    **PUBLIC REDACTED VERSION**

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................................iii

I. INTRODUCTION ................................................................................................1

II. APPLE'S TRADE DRESSES ARE NOT FUNCTIONAL.................................1

    A. Apple's Trade Dresses Are Not Functional as a Whole .......................1

        1. Samsung applies an incorrect legal standard ...............................1

        2. Correctly analyzed, Apple's trade dresses are not functional ....2

    B. Apple's Trade Dresses Are Not Aesthetically Functional ....................3

III. THE FAME OF APPLE'S TRADE DRESSES IS AN ISSUE FOR TRIAL .................4

IV. APPLE'S DESIGN PATENTS ARE NOT INVALID...........................................6

    A. Apple's D'677 and D'087 iPhone and D'889 iPad Designs Are Not Obvious ..............................................................................................6

        1. The law of design patent obviousness........................................6

        2. The D'677 and D'087 iPhone designs are not obvious ...........7

            a. Samsung fails to show invalidity of the D'677 patent .................7

            b. Samsung fails to show invalidity of the D'087 patent .................8

            c. Secondary considerations support the D'677 and D'087 patents' validity................................................................9

        3. The D'889 iPad design is not obvious. ....................................10

    B. The D'305 and D'334 Patents Are Not Invalid .................................11

V. SAMSUNG FAILS TO SHOW NON-INFRINGEMENT OF THE '915 PATENT .....12

    A. The Accused Products Literally Meet the "Invoke" Limitation, so Samsung Belatedly Seeks an Improper Narrowing Construction. .................12

    B. The Accused Products Alternatively Meet the "Invoke" Limitation Under the Doctrine of Equivalents...................................................14

VI. THE '163, '381, AND '607 PATENTS ARE NOT INVALID...................................15

    A. LaunchTile Does Not Anticipate Claim 50 of the '163 Patent ...........15

        1. Samsung has failed to prove that the LaunchTile "zoomspace" is a "structured electronic document" as contemplated by Claim 50 ...........16

        2. Samsung has failed to prove that LaunchTile "enlarges and translates the structured electronic document" to substantially center a selected box of content on the screen ........................17

        3. Samsung has failed to prove that LaunchTile substantially centers a "second box other than the first box" by "translating" the "structured electronic document" in which the two boxes were displayed ...........18

    B. Tablecloth Does Not Anticipate Claim 19 of the '381 Patent ...........18

    C. Claim 8 of the '607 Patent Is Not Invalid .........................................20

**TABLE OF CONTENTS**
(continued)

Page

VII.   SAMSUNG FAILS TO ESTABLISH AS A MATTER OF LAW THAT APPLE'S
ANTITRUST CLAIMS FAIL FOR LACK OF DAMAGES ..........................................22

VIII.   CONCLUSION ..........................................................................................................24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*3M Co. v. Chemque, Inc.*,
   303 F.3d 1294 (Fed. Cir. 2002)..................................................................................... 19

*800-JR Cigar, Inc. v. GoTo.com, Inc.*,
   437 F. Supp. 2d 273 (D.N.J. 2006) ................................................................................ 6

*Adidas-Am., Inc. v. Payless Shoesource, Inc.*,
   546 F. Supp. 2d 1029 (D. Or. 2008) .............................................................................. 4

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 2012-1105,
   2012 U.S. App. LEXIS 9720 (Fed. Cir. May 14, 2012) ........................................ 6, 7, 8, 10

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
   457 F.3d 1062 (9th Cir. 2006)........................................................................................ 4

*Autodesk, Inc. v. Daussault Sys. Solidworks Corp.*,
   685 F. Supp. 2d 1001 (N.D. Cal. 2009) ......................................................................... 5

*Burberry Ltd. v. Euro Moda, Inc.*,
   No. 08 Civ. 5781,
   2009 WL 1675080 (S.D.N.Y Aug. 10, 2011) ................................................................ 4

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
   No. 05-3465 (PJH),
   2006 WL 13058 (N.D. Cal. Jan. 3, 2006) ...................................................................... 23

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001)..................................................................................... 1, 2

*Crocs, Inc. v. ITC*,
   598 F.3d 1294 (Fed. Cir. 2010)...................................................................................... 9

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
   158 F.3d 1002 (9th Cir. 1998)........................................................................................ 2

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008)........................................................................................ 6

*Fabrica, Inc. v. El Dorado Corp.*,
   697 F.2d 890 (9th Cir. 1983).......................................................................................... 3

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
   741 F. Supp. 2d 1165 (C.D. Cal. 2010) ........................................................................ 1

*First Brands Corp. v. Fred Meyer, Inc.*,
   809 F.2d 1378 (9th Cir. 1987)..............................................................................5

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
   636 F.3d 1115 (9th Cir. 2011)..............................................................................4

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987)...........................................................................1, 2

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*,
   No. CV 10-0148,
   2011 WL 3348056 (E.D. Cal. Aug. 2, 2011) .......................................................4

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   527 F. Supp. 2d. 1084 (N.D. Cal 2007) .............................................................22

*In re Borden*,
   90 F.3d 1570 (Fed. Cir. 1996)..............................................................................6

*In re Katz*,
   687 F.2d 450 (C.C.P.A. 1982) ...........................................................................12

*In re SRAM Antitrust Litig.*,
   No. 07-01819,
   2010 WL 5141861 (N.D. Cal. Dec. 13, 2010) ...................................................23

*Innogenetics, N.V. v. Abbott Labs*,
   512 F.3d 1363 (Fed. Cir. 2008)..........................................................................21

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009)............................................................................6

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. --, 131 S.Ct. 2238 (2011) ....................................................................15

*Mintz v. Dietz & Watson, Inc.*,
   No. 2010-1341,
   2012 U.S. App. LEXIS 10884 (Fed. Cir. May 30, 2012) ......................................9

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*,
   139 F.3d 877 (Fed. Cir. 1998)..............................................................................6

*Plumley v. Mockett*,
   --- F. Supp. 2d ---,
   2010 WL 8160423 (C.D. Cal. May 26, 2010) ....................................................21

*Powertech Tech. Inc.* v. *Tessera, Inc.*,
   660 F.3d 1301 (Fed. Cir. 2011)..........................................................................21

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
   324 F.3d 1346 (Fed. Cir. 2003)............................................................................................. 11

*Shred-It USA, Inc. v. Mobile Data Shred, Inc.*,
   238 F. Supp. 2d 604 (S.D.N.Y. 2002)................................................................................... 24

*Sun-Mate Corp. v. Koolatron Corp*,
   No. CV-10-4735,
   2011 U.S. Dist. LEXIS 84726 (C.D. Cal. Aug. 1, 2011) ....................................................... 6

*Titan Tire Corp. v. Case New Holland, Inc.*,
   566 F.3d 1372 (Fed. Cir. 2009)............................................................................................... 6

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001) ............................................................................................................ 2, 3

*Vision Sports, Inc. v. Melville Corp.*,
   888 F.2d 609 (9th Cir. 1989)................................................................................................... 2

*Voda v. Cordis Corp.*,
   536 F.3d 1311 (Fed. Cir. 2008)............................................................................................. 15

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
   796 F. Supp. 2d 1025 (N.D. Cal. 2011) ................................................................................ 21

*Woodland Trust v. Flowertree Nursery, Inc.*,
   148 F.3d 1368 (Fed. Cir. 1998)............................................................................................. 19

**STATUTES**

15 U.S.C.
   § 1125(c) ................................................................................................................................. 4

35 U.S.C.
   § 102(a) ..................................................................................................................... 11, 19, 20
   § 102(b) ........................................................................................................................... 12, 19
   § 102(g)(2) ............................................................................................................................. 19

**OTHER AUTHORITIES**

Oxford English Dictionary .......................................................................................................... 14

## I.       INTRODUCTION

Samsung does not even come close to establishing its claimed "entitlement to judgment as a matter of law on Apple's remaining claims." (Mot. at 2.) Samsung fails to acknowledge, much less carry, its burden to establish by clear and convincing evidence that any of Apple's challenged patents are invalid. As to all other issues, Apple has ample evidence to defeat summary judgment.

## II.      APPLE'S TRADE DRESSES ARE NOT FUNCTIONAL

Samsung bases its trade dress functionality motion on incorrect legal standards. Functionality must be shown as to the trade dress as a whole, not the individual elements as Samsung asserts, and Apple's trade dresses are not functional as a whole. The Ninth Circuit has rejected application of aesthetic functionality in trade dress cases, but Apple's trade dresses are not aesthetically functional in any event.

### A.       Apple's Trade Dresses Are Not Functional as a Whole

#### 1.       Samsung applies an incorrect legal standard

Samsung addresses the individual elements of the iPhone and iPad trade dress, asserting without support that "the individual functional elements . . . cannot give rise to protectable trade dress." (Mot. at 6.) Functionality, however, is determined by the trade dress as a whole, not individual elements. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987) ("functional elements that are separately unprotectable can be protected together as part of a trade dress"). That individual elements "may be functional does not necessarily mean that the trade dress *as a whole* is functional." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (emphasis added) (evaluating "overall visual impression that the combination and arrangement of those elements create"); *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1172-73 (C.D. Cal. 2010) (proof that bottle shape was "primarily functional . . . does not defeat [plaintiff's] showing of non-functionality because it focuses on a single element, rather than 'the overall visual impression' of the trade dress as a whole"). Samsung's claim that because the iPhone and iPad "defer" to their displays, "the overall product configurations indisputably affect the quality of the articles" fails to address the specific

1   trade dress of the Apple products.  (Mot. at 6-7.)  Samsung's improper legal standard defeats its

2   motion.

3                    **2.        Correctly analyzed, Apple's trade dresses are not functional**

4           A trade dress is functional "if it is essential to the product's use or if it affects the cost and

5   quality of the article."  *Fuddruckers*, 826 F.2d at 842; *see also TrafFix Devices, Inc. v. Mktg.*

6   *Displays, Inc.*, 532 U.S. 23, 32 (2001).  Trade dress functionality is a question of fact.  *Vision*

7   *Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 614 (9th Cir. 1989).  The Ninth Circuit weighs four

8   factors to evaluate whether trade dress is functional:  (1) whether it yields a utilitarian advantage,

9   (2) whether alternative designs are available, (3) whether advertising touts the utilitarian

10  advantages of the design, and (4) whether the design results from a comparatively simple or

11  inexpensive method of manufacture.  *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d

12  1002, 1006 (9th Cir. 1998).  Applying these factors, Apple's trade dresses are not functional as a

13  whole.

14          ***No utilitarian advantage.***  ████████████████████████████████

15  ███████████████████████████████████████████████████████

16  ███████████████████████████████  *See Clicks Billiards*, 251 F.3d at 1262 (that "design

17  decisions were made for aesthetic reasons" is "evidence of nonfunctionality").  ██████████

18  ███████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████

20  ██████   In view of this record, Samsung's deposition snippets do not establish that Apple's trade

21  dress indisputably affects the "cost or quality" of the products.

22          ***Alternative designs***.  Samsung ignores the many alternative designs for smartphones and

23  tablets.  (Bressler Decl. ¶¶ 136-146, 152-153, 159-165, 167-168, 172; Hedge Decl. Ex. A ¶¶ 78-

24  87, 126-140 & Exs. 6-14; Kare Decl. Ex. 1 ¶¶ 32, 45-56, 74 & Exs. 6-14; Kare Decl. Ex. 2 ¶¶ 17-

25  54 & Exs. 2-3.)  Samsung offers no evidence that each alternative is "less useful to consumers

26  and/or more difficult or costly to manufacture than the iPhone and/or iPad."  (Mot. at 3 n.5.)

27          *TrafFix* does not support Samsung's position that "the existence of alternatives . . . is

28  legally irrelevant."  (Mot. at 3 n.5.)  *TrafFix* held that a specific design was functional because it

1   was the subject of a utility patent.  532 U.S. 23 at 31-32.  Based on that clear evidence of

2   functionality, the Court found no need to examine alternative designs.  *Id.* at 33-34.  Samsung has

3   pointed to no utility patents claiming Apple's trade dress.

4          ***Apple's advertising***.  Apple's advertisements underscore the aesthetic beauty of Apple's

5   product design and do not tout utilitarian aspects of the design.  (Bartlett Decl. Ex. 6 at 33:24-

6   35:4; Winer Decl. Ex. 1 ¶ 47 & Exs. 4-5.)

7          ***Difficulties and cost of manufacture***.  Samsung asserts that "[f]lat glass is less costly and

8   less difficult to manufacture . . . than plastic," ████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████████████

10  ████████████████████

11         Samsung not only fails to satisfy the correct standard of focusing on the trade dress as a

12  whole, it also fails to support its claim that the individual elements are "functional."  For example,

13  smartphones with differently rounded corners, angular corners, square corners, and no corners

14  demonstrate that a variety of designs can address concerns about sharp corners.  (Hedge Decl.

15  Ex. A ¶¶ 90-91, 94, 100.)  Samsung is also wrong about a "flat front surface."  Numerous

16  alternatives with physical elements, such as buttons and contrasting surfaces, are commercially

17  available.  (Hedge Decl. Ex. A ¶¶ 62, 78-87, 126-140 & Exs. 22-44; Bressler Decl. ¶¶ 136-146,

18  152-153, 159-165, 167-168, 172.)  A recessed display may help differentiate the active area of the

19  display.  (Hedge Decl. Ex. A ¶ 103.)  Samsung misapprehends the "metallic bezel around flat

20  clear surface."  (Mot. at 5.)  Contrary to Samsung's argument, there are numerous smartphones

21  that do not have a "metallic bezel" at all, or if they do, have bezels with a completely different

22  design.  (Hedge Decl. Ex. A ¶¶ 62, 78-87, 126-140 & Exs. 22-44; Bressler Decl. ¶¶ 136-146, 152-

23  153, 159-165, 167-168, 172.)  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████  There are disputed issues of fact

25  regarding the alleged functionality of even the individual elements of the claimed designs.

26         **B.     Apple's Trade Dresses Are Not Aesthetically Functional**

27         One Ninth Circuit case notes that the court "has refused to apply the [aesthetic

28  functionality] test" in the trade dress context.  *Fabrica, Inc. v. El Dorado Corp.*, 697 F.2d 890,

895 (9th Cir. 1983).  "Several" other cases "involving trade dress claims have criticized the doctrine."  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1070 & n.5 (9th Cir. 2006).  To the extent the aesthetic functionality doctrine survives in this circuit in any context, it is inapplicable here.[1]

Even assuming the doctrine applies, Samsung's motion still would fail.  Samsung merely points to Apple's assertions that design attributes "contribute" to Apple's products' "market success."  (Mot. at 7.)  But the Ninth Circuit has "squarely rejected the notion that 'any feature of a product which contributes to the consumer appeal and salability of the product is, as a matter of law, a functional element of that product.'"  *Au-Tomotive Gold*, 457 F.3d at 1072 (citation omitted).  In any event, Samsung denies that Apple's trade dresses have any meaningful impact on demand, giving rise to a fact dispute that defeats summary judgment.  (Bartlett Decl. Ex. 7 ¶ 10.)

**III.    THE FAME OF APPLE'S TRADE DRESSES IS AN ISSUE FOR TRIAL**

Samsung attacks Apple's dilution claim on the ground that the iPhone and iPad trade dresses are not famous.  Samsung's arguments overemphasize survey evidence, invent a new test for advertising evidence, and ignore other statutory fame factors, such as extent of sales of the products and of advertising and publicity.  *See* 15 U.S.C. § 1125(c) (identifying fame and distinctiveness factors).

*Surveys*.  Samsung cites one case and one treatise to argue that Apple's survey results are too low to establish fame.  But Samsung cannot point to a clear delineation in the case law between satisfactory and unsatisfactory survey results.  Surveys are not even required to show fame.  *See id.*; *Adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1063 n.12 (D. Or. 2008) (finding fame without surveys); *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, No. CV 10-0148, 2011 WL 3348056, at *26-27 (E.D. Cal. Aug. 2, 2011) (same); *Burberry Ltd. v.*

---

[1] The most recent Ninth Circuit opinion to address aesthetic functionality was withdrawn and replaced by a second opinion that made no mention of the doctrine.  *Compare Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 636 F.3d 1115 (9th Cir. 2011), *with* 654 F.3d 958 (9th Cir. 2011).

1    *Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 WL 1675080, at *12 (S.D.N.Y Aug. 10, 2011) (finding

2    fame without surveys in light of "prominent advertising").

3          ***Advertising.***  Samsung does not dispute that iPhone and iPad advertising has been

4    extensive— ██████████████████████████████████████████████████████

5    (Bartlett Decl. Exs. 14 & 15.)  Instead, it argues the advertising is irrelevant because it does not

6    "promote the as-claimed trade dresses" as purportedly required by case law.  (Mot. at 9.)

7    Samsung's cited cases contain no such requirement; they found only that a particular advertising

8    style did not sufficiently feature the packaging trade dress at issue.  *See First Brands Corp. v.*

9    *Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (bottle color and shape was not stressed in

10   an advertisement for antifreeze jugs); *Autodesk, Inc. v. Daussault Sys. Solidworks Corp.*, 685 F.

11   Supp. 2d 1001, 1015 (N.D. Cal. 2009) (plaintiff's advertising did not stress orange frame on

12   software DVD packaging).  Apple's advertising, however, prominently features the product

13   designs.  (Bartlett Decl. Ex. 8 (iPhone 3G trade dress); Ex. 9 (iPhone 4 trade dress); Exs.10 & 11

14   (iPad trade dress).)  Apple's advertisements ████████████████████████████████

15   ████████████████████████████ and celebrate ████████████████████████████

16   ██████████  (Bartlett Decl. Ex. 12 at 164:22-24; Ex. 13 at 286:1-2.)

17          Samsung's assertion that Apple's advertising targets "a narrow subset of consumers" (Mot.

18   at 9) is belied by advertisements in magazines with "general readership" such as *Sports*

19   *Illustrated*, *Time*, *Newsweek*, and *ESPN Magazine*; during prime time drama shows, sports

20   broadcasts and "American Idol"; and at "bus stops," "newspaper racks," and "in the subway."

21   (Bartlett Decl. Ex. 12 at 25:3-8, 38:24-39:7, 42:11-17.)  Billboards are placed in high traffic areas.

22   (*Id.* at 39:18-40:23.)  The iPhone was featured on *Time* magazine's cover as the "Invention of the

23   Year" in 2007, and general-readership newspapers such as *The New York Times, The Washington*

24   *Post*, *San Jose Mercury News*, and *San Francisco Chronicle* often include photographs

25   prominently featuring the iPhone and iPad trade dresses after product announcements.  (Winer

26   Decl. Ex. 1 at nn. 115, 119 & 137.)

27          ***Strong product sales.***  Samsung ignores Apple's strong product sales.  iPhone and iPad

28   sales have generated more than ████████ in revenues in just the last two years.  (Musika Decl.

1   Exs. C & E.)  This is ample evidence of fame.  *See 800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F.

2   Supp. 2d 273, 287 (D.N.J. 2006) (finding marks famous, without survey evidence, in part because

3   plaintiff had earned "more than a billion dollars in revenues" over five years).

4        In sum, no single factor determines "fame" for dilution purposes.  Considering all the

5   factors, Samsung has not shown that Apple's trade dress is not famous as a matter of law.

6   **IV.    APPLE'S DESIGN PATENTS ARE NOT INVALID**

7        **A.    Apple's D'677 and D'087 iPhone and D'889 iPad Designs Are Not Obvious**

8        Samsung cobbles together design elements from different prior art without demonstrating

9   that any specific reference could qualify as a primary reference or that it is appropriate to

10  combine references—an approach that the Federal Circuit has already rejected.  Samsung fails to

11  meet its burden of showing invalidity by clear and convincing evidence.  *See Titan Tire Corp. v.*

12  *Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).

13              **1.    The law of design patent obviousness**

14       Determining obviousness for design patents is a two-step process.  First, there must be "a

15  single reference, 'a something in existence, the design characteristics of which are basically the

16  same as the claimed design.'"  *Apple Inc. v. Samsung Elecs. Co.*, No. 2012-1105, 2012 U.S. App.

17  LEXIS 9720, at *32 (Fed. Cir. May 14, 2012).  "Secondary references" may then be used to

18  modify the primary reference only if their visual appearances are "so related that the appearance

19  of certain ornamental features in one would suggest the application of those features to the other."

20  *Id.* at *36-37.  Whether to combine references is determined from the point of view of a skilled

21  designer.  *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009).

22  Obviousness results only if a hypothetical combined reference creates substantially the same

23  visual impression as the claimed design in the eyes of an ordinary observer.  *Id.* at 1240-41;

24  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677-78 (Fed. Cir. 2008).

25       Determining whether a patent is obvious presents numerous issues of fact, including

26  secondary considerations of non-obviousness, *see, e.g., Monarch Knitting Mach. Corp. v. Sulzer*

27  *Morat GmbH*, 139 F.3d 877, 886 (Fed. Cir. 1998), "what the prior art teaches," *see, e.g., In re*

28  *Borden*, 90 F.3d 1570, 1576 (Fed. Cir. 1996), and the "ordinary observer" test, *see, e.g., Sun-*

1   *Mate Corp. v. Koolatron Corp*, No. CV-10-4735, 2011 U.S. Dist. LEXIS 84726, at *25 (C.D.

2   Cal. Aug. 1, 2011).

3           **2.        The D'677 and D'087 iPhone designs are not obvious**

4          Aside from the JP'638 patent and the LG Chocolate, the references Samsung asserts

5   against the D'677 and D'087 patents (the JP'221, iRiver U10, Nokia Fingerprint, D'889 patent

6   and photos from the prosecution history, and Bluebird Pidion) were not properly disclosed to

7   Apple during discovery and are a subject of Apple's pending motion to strike.  (Dkt. 939-1 at 15-

8   17.)  Apple objects to this evidence.

9          Samsung cites no evidence that the iRiver U10 and LG Chocolate are actually prior art to

10   the Apple patents.  (*See* Mot. at 11.)  The recently-taken photographs of an Apple model (Dkt.

11   No. 943 Ex. 15) are improper because the model was never public (Bartlett Decl. ¶ 81) and the

12   photographs are not prior art.  Even if the improper references are considered, none renders

13   Apple's designs obvious.

14              **a.        Samsung fails to show invalidity of the D'677 patent**

15          Samsung is vague about what references it considers to be primary and secondary against

16   which Apple patents.  Regardless, none of Samsung's references qualifies as a primary reference

17   against the D'677 because none creates basically the same visual impression as the D'677.

18   (Bressler Decl. ¶¶ 23-33.)  The JP'638 fails because it has a convex, cambered front face rather

19   than the D'677 patent's flat continuous and edge-to-edge transparent black front surface.[2]

20   (Bressler Decl. ¶ 24.)  *See Apple*, 2012 U.S. App. LEXIS 9720, at *34 (prior art reference with

21   "substantial differences in the overall visual appearance" is not primary reference).  The JP'221

22   design also fails to disclose a continuous transparent black front surface.  Rather, its borders are

23   opaque black.  (Bartlett Decl. Ex. 17 at 288:23-289:11; Bressler Decl. ¶¶ 33.)  Similarly, the

24   incomplete and ambiguous disclosure relating to the Nokia Fingerprint design does not fairly

25   teach a continuous transparent black front surface extending from to edge to edge.  (*See* Mot. at

26   _____

27        [2] Samsung's reliance on deposition testimony about isolated front views of the JP'638 patent repeats a trick that the Federal Circuit already rejected in this case.  *Apple,* 2012 U.S. App. LEXIS 9720, at *27-28.

28

11.)  The Fingerprint design also has a rounder overall shape, narrower width, and an off-center display.  (Bressler Decl. ¶¶ 28-29, 31-32.)  The iRiver U10 design has a distinctly different form factor and facial features when compared with the D'677 patent.  (Bressler Decl. ¶¶ 25-26.)  The lack of a qualifying primary reference is fatal to Samsung's obviousness challenge.  *See*, *e.g.*, *Apple*, 2012 U.S. App. LEXIS 9720, at *38.

Even assuming an appropriate primary reference, Samsung's proffered combinations do not render the D'677 patent obvious.  Samsung does not even attempt to make the required showing that the secondary references are "so related" in visual appearance as to suggest the application of design features found in one reference to the other.  *Id.* at *36-37.  Instead, it merely points to supposed prior references that contain elements missing from the JP'638 patent.  (Mot. at 11-12.)  But these references are so distinct in visual impression from each other that a skilled designer would not combine them.  (Bressler Decl. ¶¶ 34-57.)  *See Apple*, 2012 U.S. App. LEXIS 9720, at *37 (rejecting "comparison reference" because it was "so different in visual appearance" to asserted primary reference).

Moreover, specific combinations fail to disclose key elements of the D'677 design.  For example, neither the JP'638 nor the JP'221 discloses an edge-to-edge transparent black front surface, so combining them would not create a reference with this distinctive design element of the D'677 patent.  (Bressler Decl. ¶¶ 37-38.)

### b.    Samsung fails to show invalidity of the D'087 patent

Samsung's argument that the D'087 patent is obvious ignores that the JP'638 design is not a proper primary reference "because the differences between the arched, convex front of the '638 reference distinguish it from the perfectly flat front face of the D'087 patent."  *Apple*, 2012 U.S. App. LEXIS 9720, at *28.  Further, the JP'638 bezel element is not uniform and is much thicker than the D'087 bezel.  (Bressler Decl. ¶¶ 58-60.)

Samsung suggests combining the Bluebird Pidion design (also embodied in the KR'307 reference) with the JP'638, but the Pidion and the JP'638 are not so related in visual appearance that one skilled in the art would combine them, and no other combination with JP'638 renders obvious the D'087 patent.  (Bressler Decl. ¶¶ 66-73.)  Moreover, because neither JP'638 nor the

1  Pidion has a flat front surface, a combination of these references would not create a piece of art

2  that is substantially the same as the D'087 patent.  (Bressler Decl. ¶ 74.)  Samsung also suggests

3  combining the Pidion with the JP'221 and the U10, but never asserts that any of these three

4  references is a primary reference to the D'087, which is fatal to these proposed combinations.

5  Regardless, none of these references qualifies as a primary reference and none of the proposed

6  combinations renders obvious the D'087 patent.  (Bressler Decl. ¶¶ 61-65, 75-76.)

7          **c.      Secondary considerations support the D'677 and D'087 patents'
                      validity**

8

9          Secondary considerations of non-obviousness "'can be the most probative evidence of

10  non-obviousness in the record, and enable[] the . . . court to avert the trap of hindsight.'"  *Crocs,*

11  *Inc. v. ITC*, 598 F.3d 1294, 1310-11 (Fed. Cir. 2010) (citation omitted); *see Mintz v. Dietz &*

12  *Watson, Inc.*, No. 2010-1341, 2012 U.S. App. LEXIS 10884, at *12-20 (Fed. Cir. May 30, 2012)

13  (emphasizing importance of "objective indicia of non-obviousness").  Notwithstanding the

14  Court's earlier finding on secondary considerations, Samsung never mentions them.  (Dkt. 452 at

15  24.)

16          The iPhone products that embody the D'677 and D'087 patents have received praise and

17  recognition for their design, including specific praise for the appearance of iPhone's front face

18  and bezel, which are claimed in these patents.  (Bressler Decl. ¶¶ 79-84; Winer Decl. Ex. 1 ¶¶ 57-

19  64; Dkt. 452 at 24; Bartlett Decl. Ex. 26 ("[T]he iPhone is gorgeous.  Its face is shiny black,

20  rimmed by mirror-finish stainless steel.").)  The iPhone is literally a museum piece.  (Bressler

21  Decl. ¶ 83.) ███████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ███████████████████████████████████ (Musika Decl. ¶ 6; Winer Decl. Ex. 1 ¶¶ 65,

24  82-85; Bartlett Decl. Ex. 27 at APLNDC-Y0000028771; Ex. 29 at APLNDC-Y25060, Y25064.)

25  The iPhone's success came despite initial skepticism by major industry players, ████████

26  ████████████████ (Bressler Decl. ¶¶ 85-87.) ███████████████████████████

27  ████████████████████████████████████████████████████

28  ████████ (Bressler Decl. ¶¶ 91-104.)  Thus, secondary considerations support non-obviousness.

### 3. The D'889 iPad design is not obvious.

Neither of Samsung's prior art references against the D'889 should be considered because neither was timely disclosed.  (*See* Dkt. No. 939-1 at 15-17.)  Apple objects to this evidence. Even if considered, neither is a proper primary reference.  The D'037 patent does not disclose an edge-to-edge transparent front surface.  (Bressler Decl. ¶ 106.)  While its surface shading indicates that its front face is flat, it does not use oblique lines to indicate a transparent front or reflective surface.  (Mot. at 14; Dkt. No. 944-8.)  *See* MPEP 1503.02 ("Oblique line shading *must be used* to show transparent, translucent and highly polished or reflective surfaces, such as a mirror.") (emphasis added).  The D'037 design also lacks the uniform border underneath the transparent front surface of the D'889 design,[3] a flat back, and the rounded edges of the D'889 body.  Given the importance of these elements to the visual impression of the D'889 design, the D'037 patent cannot be a primary reference.  (Bressler Decl. ¶¶ 106-108.)  *See Apple*, 2012 U.S. App. LEXIS 9720, at *35 (rejecting primary reference against the D'889 that did not "create[] the visual impression of an unbroken slab of glass extending from edge to edge on the front side of the tablet").

The "Brain Box" fails as a primary reference because the disclosure consists of only a single picture in a perspective view, which does not disclose the complete design.  (Dkt. No. 943-10; Bressler Decl. ¶¶ 109-110.)  The device's back and profile views are missing, requiring speculation as to similarities and differences with the D'889 design.  (Bressler Decl. ¶ 109-110.) Samsung offers no basis for considering the apparent display portion of the Brain Box separately from its base portion, when the photograph shows the design as a whole.  (*Id*.)  And the lone photo does not support Samsung's claim that the Brain Box had a "front flat, reflective continuous surface running from edge to edge."  (Mot. at 14.)  Robert Brunner—head of Apple

---

[3] Samsung erroneously asserts that the even border visible beneath the D'889 patent's transparent front surface is disclosed in Figure 3 of the D'037 patent.  (Dkt. No. 930-1 at 14 n.17.) The D'037 patent does not disclose a transparent front surface, much less a visible border beneath a transparent front surface.  (Dkt. No. 944-8; Bressler Decl. ¶ 106.)  Nor does combining the D'037 patent with utility patent 6,198,678 help Samsung; that patent does not illustrate a hand-held tablet design but rather a display monitor with "an opening 320 at the rear of the enclosure 300 [that] may be provided so as to allow access to the rear" of the display device "where, for example, input and output connectors may be located."  (Dkt. No. 943 Ex. 24 at Col. 7, 7-10.)

1    industrial design from 1989 to 1997—testified that it did not have a fully flat front surface, but

2    rather had a raised frame.  (Bartlett Decl. Ex. 20 at 40:5-41:20.)

3        Not only would the skilled designer not combine the designs, even a combination of Brain

4    Box and the D'037 patent would not disclose a flat and edge-to-edge transparent front surface (or

5    rounded edges or a uniform mask) like the D'889 patent.[4]  (Bressler Decl. ¶¶ 110-112.)

6        Secondary considerations also support non-obviousness.  The D'889 patent is embodied in

7    the iPad 2, whose design has been widely praised.  (Bressler Decl. ¶ 115; Winer Decl. Ex. 1

8    ¶¶ 67-69.)  The iPad 2's design is a component of its commercial success.  (Musika Decl. ¶ 7;

9    Winer Decl. Ex. 1 ¶ 70.)  This success came despite initial skepticism.  (Bressler Decl. ¶¶ 118-

10   121.) ███████████████████████████████████████████████████████

11   ███████████████████████████████████████████████████████████

12   ██████████████████████████████████  (Bartlett Decl. Ex. 21 at 74:2-75:7; Ex. 22 at

13   SAMNDCA515906; *see also* Bressler Decl. ¶¶ 122-124.)

14       **B.    The D'305 and D'334 Patents Are Not Invalid**

15       The Court should reject Samsung's argument that the D'305 and D'334 patents are invalid

16   under 35 U.S.C. § 102(a), because Samsung failed timely to disclose the January 9, 2007

17   Macworld 2007 images as prior art.  (*See* Dkt. No. 939-1 at 15-17.)  Apple objects to this

18   evidence.

19       Even if considered, Samsung's argument against the D'305 patent fails because the

20   Macworld disclosure was also the work of the D'305 patent's inventors, and does not predate the

21   D'305 patent's filing by more than a year.  *See Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324

22   F.3d 1346, 1355-56 (Fed. Cir. 2003) ("One's own work may not be considered prior art in the

23

24       [4] Samsung mentions three more references against the D'889 patent in a footnote, without
     any explanation of how they fit into the obviousness analysis.  (Mot. at 15 n.20.)  There is no

25   viable explanation.  The KR'213 reference—which was not timely disclosed and is a subject of
     Apple's motion to strike (Dkt. No. 939-1 at 15-17), does not show a transparent front surface.

26   (Dkt. No. 944-13.)  The JP'470 design is plainly different from the D'889 patent, as it is nothing
     more than a rectangular box in the side views and has a much thicker rim than the D'889 patent.

27   (*Id*. Ex. 27.)  Roger Fidler's 1981 design is only a two-dimensional drawing that lacks any
     disclosure of an edge to edge transparent front surface or an actual three-dimensional tablet

28   design.  (*Id*. Ex. 29.)

1   absence of a statutory basis."); *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982) ("[d]isclosure to

2   the public of one's own work constitutes a bar to the grant of a patent . . . only when the

3   disclosure occurred more than one year prior to the date of the application").  The design

4   presented at Macworld 2007 is identical to the D'305 except that it does not contain the YouTube

5   icon added to the D'305.  (*Compare* Bartlett Decl. Ex. 23, *with* Dkt No. 943 Ex. 31.)  The same

6   two Apple inventors—Freddy Anzures and Imran Chaudhri—created both.  (*See* Bartlett Decl.

7   Ex. 3 at 10:11-22, 47:13-19, 172:17-173:3, 178:21-21; *id.* Ex. 24 at 108:3-18,190:19-192:7.).

8   Samsung's motion does not contend, much less prove, otherwise.

9       Samsung's motion also asserts for the first time that the D'334 patent is invalid under the

10  on-sale bar of 35 U.S.C. § 102(b).  As Samsung never disclosed this theory during discovery,

11  Apple objects to it.  (Bartlett Decl. Ex. 25 at 9-10.)  In any event, Samsung provides no evidence

12  of the appearance of the iPhone home screen at the time of its first sale.  Thus, Samsung fails to

13  present clear and convincing *evidence* of invalidity.  (Mot. at 16.)

14  **V.      SAMSUNG FAILS TO SHOW NON-INFRINGEMENT OF THE '915 PATENT**

15      Samsung asserts that its Accused Products do not perform the operation "determining

16  whether the event object invokes a scroll or gesture operation" as claimed in claim 8 of the '915

17  patent.  Samsung's defense to literal infringement rests on a tardy and erroneous construction of

18  "invokes."  Months after the Markman hearing and after the close of discovery, Samsung seeks to

19  add an improper narrowing limitation to require that the event object that initially holds touch

20  data must itself "call" a scroll or gesture operation.  (*See* Mot. at 17-18.)  In essence, Samsung

21  argues that this event object must itself call the operation with no intervening steps.  Under a

22  proper claim construction consistent with the specification, there is no dispute that Samsung

23  literally infringes.  Were the Court to adopt Samsung's newly proposed construction, disputed

24  facts under the doctrine of equivalents would preclude summary judgment.

25      **A.      The Accused Products Literally Meet the "Invoke" Limitation, so Samsung
            Belatedly Seeks an Improper Narrowing Construction.**

26

27      The Accused Products literally perform the operation "determining whether the event

28  object invokes a scroll or gesture operation by distinguishing between a single input point . . .

1   interpreted as the scroll operation and two or more input points . . . interpreted as the gesture

2   operation." (Singh Decl. ¶¶ 41-66.)  The accompanying Singh Declaration and claim charts spell

3   out Samsung's infringement in detail.  (*Id.* ¶¶ 28-87; Dkt. No. 931-14.)  Samsung's expert, Mr.

4   Gray, does not dispute Dr. Singh's code analysis or his conclusion that ████████████████

5   ██████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████   (Bartlett Decl. Ex. 30 at 38:4-

7   50:6.)  That is sufficient to prove infringement.

8          Because it cannot contest Dr. Singh's code analysis, Samsung now attempts a new claim

9   construction argument—that "invoke" means the event object that initially receives the touch data

10  must *itself "call"* a scrolling or scaling function, without any intervening software steps.

11  Samsung's proposed limiting construction and non-infringement defense are untimely and wrong.

12         Although Samsung proposed over 200 terms for construction in discussions leading to the

13  10-term Markman hearing, it never suggested that the Court construe "invokes."  (Kramer Decl.

14  ¶¶ 18-27.)  Its Interrogatory Responses did not disclose the non-infringement defense asserted in

15  its Motion.  Samsung refused to disclose the basis for any non-infringement defenses as of the

16  close of fact discovery.  (*Id.* ¶ 22.)  Only after fact discovery closed did Samsung assert that

17  Apple had failed to prove "determining whether the event object invokes a scroll or gesture

18  operation" because "event objects" are "incapable of invoking operations."  (*Id.* ¶ 23.)  Even then,

19  Samsung asserted only that the limitation should be interpreted as a nonsensical impossibility—a

20  notion that should raise a red flag on claim construction—without hinting why.

21         Later, in his Report, Mr. Gray repeated the "impossibility" theme, stating:  "In my 35

22  years of systems experience I have never observed a system where an event object invoked a

23  method."  (*Id.* Ex. 9 ¶ 266.)[5]  Samsung's motion now takes a different position.

24         Apple was entitled to disclosure of Samsung's proposed constructions and defenses

25  months ago.  The Court should disregard Samsung's new defense as untimely.

26

27         _____

       [5] He therefore opined that a person of ordinary skill would find the term "invokes"
28  indefinite.  (Kramer Decl. Ex. 9 ¶ 266.)

1   Samsung's proposed construction is also incorrect.  Applying basic principles of claim

2   construction, "invoke" means "causes" or "causes a procedure to be carried out," and includes no

3   requirement of calling the function itself.  This definition is consistent with the claim language,

4   the specification, and dictionary definitions.  Samsung's proposal to create a nonsensically-

5   limiting or impossible definition contradicts the '915 specification.  The specification says

6   multiple times that "user input invokes a scroll," which means the user input causes a scroll

7   operation to occur.  (Singh Decl. ¶ 51.)  One skilled in the art would understand that user input

8   cannot itself call a scroll function without intervening software steps.  (*Id*.)  The specification

9   expressly discloses that multiple steps occur between the user input event and the call to a scroll

10  method because the touch events are routed to the window they occur over, and then to the

11  appropriate scroll or gesture control.  (*Id*. ¶ 54.)  Moreover, dictionaries support Apple's

12  construction of "invoke" and include no requirement of directness.  (*Id*. ¶ 55 & Exs. 9-10, *e.g.*,

13  Oxford English Dictionary – "*Computing:*  cause (a procedure) to be carried out.")

14  Samsung cites several deposition excerpts out of context.  Samsung alleges that the

15  "named inventors agree with its construction," but neither agreed that "invoke" was limited to

16  directly calling a function.  Co-inventor Herz testified:  "*[A]n example* of invoking something

17  would be . . . *causing that code to run*."  (Bartlett Decl. Ex. 53 at 95:15-19 (emphasis added).)

18  Samsung mischaracterizes the deposition of Dr. Singh, who testified at length that the meaning of

19  "invokes" depends on context, and stated he could well have used a definition of "invoke"

20  analogous to the definition he uses here prior to this case.  Dr. Singh never agreed that "invokes"

21  in the '915 patent means "calling" a function.  (Dkt. No. 931-7 at 313:14-319:15.)  For these

22  reasons, the Court should reject Samsung's construction of "invokes."

23  **B.      The Accused Products Alternatively Meet the "Invoke" Limitation Under the
        Doctrine of Equivalents.**

24

25  Even under Samsung's new, incorrect claim construction, the Accused Products meet the

26  claim limitation under the doctrine of equivalents,[6] which requires that they "perform[]

27

28  _____

    [6] Samsung argues in a footnote that Apple should be precluded from arguing the doctrine
    of equivalents.  (Mot. at 18:19-20.)  Apple properly disclosed its doctrine of equivalents theory in

1  substantially the same function in substantially the same way to obtain substantially the same

2  result" as the limitation.  *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008).  ███

3  ████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████

10 ███████████████████   The Accused Products therefore meet this element of claim 8 under the

11 doctrine of equivalents.  At a minimum, fact issues preclude summary judgment under the

12 doctrine of equivalents.

13 **VI.    THE '163, '381, AND '607 PATENTS ARE NOT INVALID**

14         Samsung again fails to meet its burden of showing invalidity by clear and convincing

15 evidence.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. --, 131 S.Ct. 2238, 2242 (2011).

16         **A.    LaunchTile Does Not Anticipate Claim 50 of the '163 Patent**

17         Samsung fails to establish that claim 50 is invalid in view of LaunchTile.  In particular,

18 Samsung has not established that the "World view" of LaunchTile is a "structured electronic

19 document," or that the four-tile "Zone view" and single-tile "Application view" are "substantially

20 centered" on the screen by "enlarging and translating" the same "structured electronic document"

21 in which the "first box" and "second box" of content were displayed, as claim 50 requires.

22         LaunchTile and the '163 patent address different problems:  LaunchTile addresses a fixed

23 set of applications in a predefined layout, whereas the '163 patent deals with reading and

24 navigating arbitrarily-sized structured electronic documents on a small screen.  (Singh Decl.

25 ¶ 92.)  An essential requirement of asserted claim 50 is that a single "structured electronic

26

27 ──────────────────────────────────────────────────────────────
   its infringement contentions and in Dr. Singh's expert report.  (*See* Bartlett Decl. Ex. 80 at 4:4-7;
   Singh Decl. Ex. 1 ¶¶ 333 & 338.)

28

document" is enlarged and translated—*i.e.* panned or scrolled—to center different portions of content displayed on that same "structured electronic document."  (*Id.* ¶ 88.)  LaunchTile, in contrast, purposely uses different levels of abstraction to provide <u>three different layers</u> of information about a fixed number of application programs.  At each layer (World, Zoom, and Application) the system displays <u>different content</u> distinct from the content in other layers, and it launches distinct application programs when an individual tile is touched.  LaunchTile does not "enlarge and translate" a single structured electronic document to center boxes of content, and hence does not anticipate claim 50.  (*Id.* ¶¶ 91, 103, 116.)

### 1. Samsung has failed to prove that the LaunchTile "zoomspace" is a "structured electronic document" as contemplated by Claim 50

Tellingly, Mr. Bederson, a creator of LaunchTile, never states that LaunchTile or its "World view" consisting of 36 application tiles displays a "structured electronic document."  Nor does he state that any of the different World, Zone, or Application views in LaunchTile substantially centers a box of content by "enlarging and translating the structured electronic document" as claim 50 requires.  Instead, he testifies that LaunchTile had instructions for displaying "an interactive information space called the "zoomspace" consisting of 36 Application tiles" in its "World" view.  (Dkt. No. 932 ¶ 10.)  He concedes that the LaunchTile views contain "further detail" at each layer of zooming, but asserts that "it is still fundamentally the same hierarchical data structure that is visually displayed to the user."  (*Id.* ¶¶ 13, 17).  However, the patent requires a structured document, not "hierarchical data structures" or "zoom spaces."  LaunchTile displays largely or entirely different content, and even launches application programs, in its three different "views."  LaunchTile plainly is not providing better views of boxes of content displayed in a structured electronic document by "enlarging and translating" that same underlying document.  (Singh Decl. ¶¶ 94-100, 103, 116.)

Mr. Gray ignores the requirement of a "document" when he attempts to match LaunchTile with the claim language.  He asserts that because the "zoomspace" is a "two dimensional information space" that is the "visual manifestation" of a "hierarchical object oriented data structure," it somehow meets the requirement of a structured electronic document.  But he never

1  identifies what the "document" is; nor does he demonstrate that the same document is" enlarged

2  and translated" when boxes of content are selected. (Dkt. No. 931 ¶ 77.)

3      **2.  Samsung has failed to prove that LaunchTile "enlarges and translates the structured electronic document" to substantially center a selected box of content on the screen**

4

5      Mr. Gray opines that even though the information displayed when each purported "box"

6  of content is centered differs from what was displayed before the box was selected, "it is still

7  fundamentally the same hierarchical object oriented data structure that is visually displayed to the

8  user." (Dkt. No. 931 ¶ 87.)  That is not what claim 50 requires:  it requires substantially centering

9  a selected "first box" displayed in the structured electronic document by "enlarging and

10 translating the structured electronic document," and then while the first box is enlarged, centering

11 a "second box other than the first box" by "translating the structured electronic document."

12 (Singh Decl. ¶ 88.)  Mr. Gray ultimately admits that his opinion is entirely divorced from claim

13 50's requirement of "enlarging and translating" a single structured electronic document, declaring

14 that even if the "tiles" were "entirely replaced" during enlarging and translating (as they are), his

15 opinion would not change.[7]  (Dkt. No. 931 ¶ 89.)

16     At his deposition, Mr. Gray admitted that the "Zone view"—which he contends

17 constitutes a four-tile "first box" of content substantially centered on the screen—does <u>not</u> result

18 from enlarging and translating the underlying "structured electronic document" from which the

19 box of content was selected, as claim 50 requires.  Gray admitted that it is not the same

20 underlying document and then he reconfirmed "it is not a magnification."  (Bartlett Decl. Ex. 30

21 at 205:21-206:3.)  Because Samsung's own expert admits that the Zone view does not result from

22 enlarging and translating "the structured electronic document" from which the "first box" was

23

24

25     [7] This opinion is at odds with Mr. Gray own Report, where he opined that the '163
specification equated "translating" with "scrolling" and that "I therefore interpret "translating" the
26 structured document to involve an animated "scrolling" or "panning" operation."  (Bartlett Decl.
Ex. 31 ¶ 304.)  But "panning" or "scrolling" an electronic document to center a selected portion
27 of that document is not met by replacing the content and displaying something else.  (Singh Decl
¶ 97, 103, 116.)

28

1   selected, Samsung has failed to prove that LaunchTile anticipates claim 50.  (Singh Decl. ¶¶ 103-

2   106.)

3           **3.     Samsung has failed to prove that LaunchTile substantially centers a
                    "second box other than the first box" by "translating" the "structured
4                   electronic document" in which the two boxes were displayed**

5           Samsung also fails to prove that LaunchTile anticipates this limitation.  Mr. Gray

6   identifies as a "second box <u>other than the first box</u>" a single application tile that is one of the four

7   tiles contained within the four-tile Zone view "first box."  (Bartlett Decl. Ex. 30 at 211:8-212:17;

8   Dkt. No. 931-3 at 8.)  Detecting a gesture "on a second box <u>other than the first box</u>" is *not* met by

9   a detecting gesture inside the "first box" itself.  (Singh Decl. ¶ 114.)  Moreover, touching an

10  individual tile in LaunchTile launches the underlying application program, which takes over the

11  entire screen, as Mr. Gray acknowledged in his Invalidity Report.  (Bartlett Decl. Ex. 31 ¶ 322.)

12  The launched Application is not a "translation" of either the World View or the Zone View, as

13  even a cursory examination of the different views demonstrates.  (Singh Decl. ¶¶ 118-119.)

14          Moreover, as Mr. Gray conceded at his deposition, once a single-tile Application view has

15  been selected, there is no way to pan or scroll to see any other box of content, which further

16  confirms that the Application view is not obtained by merely "translating" or "scrolling" a

17  structured electronic document from which the Application tile was selected.  (Bartlett Decl.

18  Ex. 30 at 214:16-215:6.)  When the user taps on an individual LaunchTile, it is not "substantially

19  centered" by "translating the structured electronic document" as claim 50 requires—any more

20  than a Microsoft Word icon on a Windows desktop is "substantially centered" by "translating"

21  the desktop's array of application icons when the user clicks on the icon to launch the Word

22  application.  (Singh Decl. ¶ 116.)

23          In sum, on many different grounds, Samsung has failed to meet its burden of proof that

24  LaunchTile anticipates claim 50.

25      **B.     Tablecloth Does Not Anticipate Claim 19 of the '381 Patent**

26          Samsung has not demonstrated by uncontroverted clear and convincing evidence that the

27  "Tablecloth" software constitutes prior art, much less that it discloses each limitation of claim 19

28  of the '381 patent.  Samsung fails to establish that Tablecloth was (a) known, used by others, or

1   made before the invention of the '381 patent, which was February 2005 (Balakrishnan Decl.

2   ¶ 38); or (b) in public use or on sale before January 7, 2006, which is more than one year prior to

3   January 7, 2007, the patent's priority date (*id*. ¶¶ 36-37, 57-58).  *See* 35 U.S.C. §§ 102(a), (b), and

4   (g)(2).

5          Samsung's declarant Adam Bogue claims that Tablecloth was written in January 2005 and

6   accessible on a device in an office lobby around that time, yet an article attached to his

7   declaration dated *December* 2005 "introduce[s the] new authoring environment called DTFlash,"

8   with which Tablecloth was written.  (Dkt. No. 933-2 at SAMNDCA00035995; Dkt. No. 938 ¶ 5.)

9   Even if Tablecloth somehow existed a year before the introduction of the software library with

10  which it was written, Bogue's unsupported assertion is insufficient to establish Tablecloth as

11  invalidating prior art under §§ 102(a) or (g)(2).  *See, e.g.*, *Woodland Trust v. Flowertree Nursery,*

12  *Inc.*, 148 F.3d 1368, 1373 (Fed. Cir. 1998) ("oral evidence, standing alone, did not provide the

13  clear and convincing evidence necessary to invalidate a patent" under § 102(a)).  And placing the

14  *device* with Tablecloth in a lobby that had key card access, and in at least some cases, non-

15  disclosure agreements (Balakrishnan Decl. ¶¶ 53, 57-58; Bartlett Decl. Ex. 33 at 160:23-161:25),

16  did not make *Tablecloth* accessible to the public.  *See, e.g.*, *3M Co. v. Chemque, Inc.*, 303 F.3d

17  1294, 1306-08 (Fed. Cir. 2002) (no § 102(a) prior knowledge without evidence of enabling

18  disclosure even where sample was distributed, and no § 102(a) or (b) public use because no

19  evidence that anyone used the sample).  Given that Dr. Van Dam had to rely on Clifton Forlines'

20  analysis of Tablecloth source code to explain how Tablecloth works, simply viewing Tablecloth

21  would not have been an enabling disclosure.  (*See* Dkt. No. 937 ¶ 57.)  Because Bogue's only

22  specific recollection of public use or offer for sale was in March 2006 (Dkt. No. 933 ¶ 12), two

23  months after the critical date, Samsung has not established that Tablecloth qualifies as 102(b)

24  prior art.  *3M Co.*, 303 F.3d at 1307-08 (no § 102(b) on-sale bar without evidence of an offer for

25  sale one year before critical date).

26         Samsung's argument also fails because Tablecloth does not disclose each limitation of

27  claim 19.  Tablecloth and the '381 patent address different problems:  Tablecloth constantly re-

28  centers an image, while the '381 patent permits scrolling until an edge of an electronic document

1    is reached, at which point an area beyond the edge is displayed.  (Dkt. No. 945-6 at Abstract.)

2    The document is then translated only until the area beyond the edge is no longer displayed—it is

3    not re-centered.  *Id.*

4         Beyond the difference in purpose, Tablecloth does not disclose claim 19's requirements of

5    (a) "a touch screen display"; (b) "instructions for displaying an area beyond the edge of the

6    electronic document . . . in response to the edge of the electronic document being reached"; and

7    (c) "instructions for translating the electronic document in a second direction until the area

8    beyond the edge of the electronic document is no longer displayed."  (*Id.* at claim 19.)  As

9    discussed in greater detail in Dr. Balakrishnan's declaration, Tablecloth fails to disclose these

10   limitations because:  (a) its touch-sensitive pad is not a touch screen display (Balakrishnan Decl.

11   ¶¶ 76-77; Bartlett Decl. Ex. 33 at 211:4-11); (b) depending on Samsung's inconsistent and

12   contradictory positions on what qualifies as the "electronic document" in a given example,

13   Tablecloth does not display an area beyond the edge of the electronic document in response to the

14   edge of the electronic document being reached (Balakrishnan Decl. ¶¶ 60-75, 78); and (c) it does

15   not translate the electronic document in a second direction "until the area beyond the edge is no

16   longer displayed," or "in response to the edge being reached" (*id.* at ¶¶ 79-93).  Accordingly,

17   Tablecloth does not anticipate claim 19.

18        **C.    Claim 8 of the '607 Patent Is Not Invalid**

19        The '607 Patent discloses the first transparent capacitive touch sensor capable of

20   providing true multitouch sensing capability.  The inventive system not only determines that there

21   are multiple fingers present on a transparent touch screen, but also reports distinct signals

22   representative of each finger's location so that each finger can be tracked.  Claim 8 recites a

23   special circuit configuration of two layers of transparent conductors arranged in a "mutual

24   capacitance" sensing system that uses a "virtual ground charge amplifier" for sensing charge

25   coupling caused by multiple touches on the transparent touch sensor.  (Maharbiz Decl. ¶ 30.)

26        Samsung's attempt to prove invalidity by cobbling together an inapplicable ITC decision

27   with previously undisclosed prior art references fails on multiple grounds.  First, the ITC decision

28   has no bearing on claim 8, which was not before the ITC.  Moreover, an ITC decision, even one

1    addressing the same issues as subsequent litigation, has no preclusive effect. *Powertech Tech.*

2    *Inc.* v. *Tessera, Inc.*, 660 F.3d 1301, 1308 (Fed. Cir. 2011).  That is especially true here since the

3    ITC decision does not address Dr. Maharbiz's proof that (1) technical obstacles would have

4    prevented one of ordinary skill from converting the Smartskin paper's wood and copper design to

5    the transparent sensor of claim 8 (Dkt. No. 942-6 at 7-14; Maharbiz Decl. ¶¶ 114-122); (2) the

6    Perski design was not actually capable of reliably detecting multiple fingers *and* generating

7    distinct signals representative of each of multiple touches on a transparent touch sensor as

8    conceded by the Perski authors in subsequent patent filings (Dkt. No. 942-2 at 143-146; Maharbiz

9    Decl. ¶¶ 73-88); and (3) the Perski and Smartskin paper systems were AC-based schemes that

10   would not have worked with the virtual ground charge amplifier design of claim 8.  (Maharbiz

11   Decl. ¶¶ 101 & 126-127.)

12       Second, *all* of the art Samsung cites to attack the additional limitations of claim 8 should

13   be ignored as a matter of law because none was disclosed timely in Samsung's invalidity

14   contentions or in Dr. Von Herzen's Report regarding claim 8.[8]  (Kramer Decl. ¶¶ 1-10; *see* Dkt.

15   939-1 at 7-8.)  Moreover, although the Perski and Smartskin references are properly before the

16   Court, Samsung and Dr. Von Herzen have provided completely new invalidity arguments and

17   "claim charts" for those references as well.  (Kramer Decl. ¶¶ 11-12.)  Apple thus objects to this

18   evidence and argument.  Third, even in view of these undisclosed references and arguments,

19   Claim 8 is not anticipated or obvious.  In discussing the Perski reference, for example, Samsung

20   ignores the requirement that a touch panel be able both to detect *and* "to produce distinct signals

21   representative of a location of the touches."  (Mot. at 22:19-23; Dkt. No. 942 ¶¶ 61-65.)  As Dr.

22   Maharbiz shows, the Perski system did not enable that claimed function, and the Perski authors

23   conceded that in subsequent patent filings.  (Maharbiz Decl. ¶¶ 83-86.)

24       Samsung similarly dodges its burden to show that it would have been obvious to convert

25   Smartskin's opaque touch sensor made from wood and copper wire to the transparent medium

26

27       [8] *See Innogenetics, N.V. v. Abbott Labs*, 512 F.3d 1363, 1375-1376 (Fed. Cir. 2008);
     *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025 (N.D. Cal. 2011);
28   *Plumley v. Mockett*, --- F. Supp. 2d ---, 2010 WL 8160423, at *1-3 (C.D. Cal. May 26, 2010).

1    used, for example in the iPhone or iPad.  (Maharbiz Decl. ¶¶ 115-122.)  Dr. Von Herzen's other

2    opinions regarding Perski, Smartskin, and the limitations of claims 1 and 7 are incorrect for many

3    other reasons.  (Maharbiz Decl. ¶¶ 110-112 & 131-133.)  Finally, there are at least fact disputes as

4    to whether use of a virtual ground charge amplifier with a transparent mutual capacitive

5    multitouch sensor was anticipated or obvious.  Samsung offers only the conclusory opinions of

6    Dr. Von Herzen that anyone would have easily thought of this combination.  This unsupported

7    assertion is contradicted by Dr. Maharbiz (Maharbiz Decl. ¶¶ 49-71, 89-109 & 123-130), and the

8    historical facts:  despite the tremendous commercial value of a transparent multitouch sensor

9    system, *nobody* conceived of or built one as described in claim 8 before Apple did.  (Maharbiz

10   Decl. ¶¶ 145 & 158; Musika Decl. ¶ 11.)  Apple's multitouch sensor has been a tremendous

11   commercial success and it is not a coincidence that Samsung chose to copy it rather than the

12   sensors described in Perski and Smartskin.  (*Id.*; Maharbiz Decl. ¶¶ 146-157.)

## VII.   SAMSUNG FAILS TO ESTABLISH AS A MATTER OF LAW THAT APPLE'S ANTITRUST CLAIMS FAIL FOR LACK OF DAMAGES

15        Samsung seeks summary judgment on Apple's "antitrust *damages* claims," *i.e.*, Apple's

16   prayer for treble damages under its Sherman Act claim.  (Mot. at 23-25.)[9]  The motion should be

17   denied because there is no question that Apple suffered monetary damages:  litigation costs to

18   defend against Samsung's improper assertion of claims for infringement of standards-essential

19   patents ("SEPs").  As Judge Whyte recently held on nearly identical facts, when infringement

20   actions are part of an *overall monopolistic scheme*, costs incurred to defend those claims

21   constitute antitrust damages.  *See Hynix Semiconductor Inc. v. Rambus Inc.*, 527 F. Supp. 2d.

22   1084, 1088 (N.D. Cal 2007) ("[P]atent litigation attorneys' fees are cognizable damages where

23   the patent litigation itself [is] part of an unlawful scheme.").  Like Apple, the *Hynix* plaintiffs

24   alleged that defendant deceived a standards body into standardizing technologies that defendant

25   claims were covered by its patents, and then attempted to use litigation tactics to secure excessive

---

[9] Samsung's motion could not dispose of Apple's Sherman Act claim (Counterclaim 28) in its entirety because it does not address, much less challenge, Apple's entitlement to injunctive relief based on that claim.  (*See* Counterclaim at 84-85 (Prayers d and f).)

1   royalties for those patents.  *Id.* at 1089, 1098.  The court held that plaintiffs could recover

2   litigation costs as damages because the defendant's monopolistic scheme of non-disclosure

3   followed by royalty demands was effectuated by the threat of litigation. *Id.* at 1095-98.[10]

4           The *fact* that Apple incurred litigation expenses defending against Samsung's SEP claims

5   is not reasonably in dispute.  (*See, e.g.,* Selwyn Decl. Ex. A ¶ 12:6-25 ████████████████

6   ████████████████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████████████████████████████  When

8   an antitrust claimant establishes the *fact* of injury, its prayer for treble damages survives summary

9   judgment because, at a minimum, nominal damages are available.  Remarkably, Samsung failed

10  to bring to the Court's attention Judge Wilken's recent decision applying this principle to deny

11  another summary judgment motion filed *by Samsung.  See In re SRAM Antitrust Litig.*, Civ. A.

12  No. 07-01819, 2010 WL 5141861, at *4 (N.D. Cal. Dec. 13, 2010) ("proof of an antitrust

13  violation and the *fact of damage* is a sufficient basis for an award of nominal damages")

14  (emphasis added) (quoting *Sciambra v. Graham News*, 892 F.2d 411, 415 (5th Cir. 1990)).

15  Samsung's argument that Apple has not yet produced evidence detailing the amount of its

16  antitrust damages improperly conflates *fact of injury* with *amount of injury* (the latter necessary

17  only to sustain a damages award in a specific amount). [11]

18          Finally, even if evidence establishing a specific amount of damages were required, Apple

19  has such evidence.  Samsung's focus on the absence of such evidence in Professor Ordover's

20  expert economic report (Mot. at 24-25), proceeds from the erroneous premise that such evidence

---

21      [10] *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. 05-3465 PJH, 2006 WL 13058, at *6
22  (N.D. Cal. Jan. 3, 2006), held only that Sherwin-Williams had failed to allege *any exclusion* of
    *competition* in the relevant market, *not* that legal costs fall short of antitrust injury *per se*.  Here,
23  Samsung does not contest that there is a disputed issue of material fact as to whether Samsung
    injured competition by excluding rival technologies from the relevant technology markets in
24  which Apple is a purchaser.  (*See* Ordover Decl. Ex. A ¶ 156 ("The choice of a particular
    technology can . . . affect innovation investment decisions upstream from the technology markets
25  directly impacted by the foreclosure of competition.").)

26      [11] Professor Ordover never testified that litigation costs would not qualify as antitrust
    injury, as Samsung asserts.  When asked if "Apple has sustained antitrust injury," he testified:  "It
27  certainly sustained certain harm due to the need[] to defend itself across a broad range of
    jurisdictions . . . .  So that's a harm to Apple."  (Ordover Decl. Ex. B at 251:19-252:2.)

1    requires expert testimony.  To the contrary, the amount of Apple's costs in defending against

2    Samsung's improper assertion of declared essential patents can be presented through a fact

3    witness with knowledge.  *See Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 238 F. Supp. 2d 604,

4    607 (S.D.N.Y. 2002) ("[T]here is no obligation that a claimant support claims of damages only

5    through expert witnesses."). [12]

6    **VIII.   CONCLUSION**

7           Samsung's motion for summary judgment should be denied, including to the extent that

8    the Court construes the motion as seeking partial summary judgment on any claim or defense.

9

10   Dated: May 31, 2012                          MORRISON & FOERSTER LLP

11

12                                         By:     */s/ Michael A. Jacobs*
                                                  Michael A. Jacobs
13
                                                  Attorneys for Plaintiff
14                                                APPLE INC.

15

16

17

18

19

20

21

22

23

24   —————————————
        [12] None of Samsung's interrogatories properly sought information on the amount of
25   Apple's defensive litigation costs.  Samsung's Interrogatory No. 78, which sought "all facts
     supporting" Apple's Sherman Act claim, was hopelessly overbroad.  Apple responded reasonably
26   by objecting to the breadth and then summarizing the bases for Apple's claim that Samsung
     violated the Sherman Act.  Further, Samsung admits that Apple identified litigation fees in
27   response to a request that it "describe" and provide the "basis" for its damages, but Samsung did
     not request any detailed accounting.
28