QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:      (650) 801-5000
Facsimile:      (650) 801-5100

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>            vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S OPPOSITION TO APPLE INC.'S MOTION TO STRIKE PORTIONS OF SAMSUNG'S EXPERT REPORTS**<br><br>**FILED UNDER SEAL** |

# TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION** ................................................................................................ 1

II.   **ARGUMENT** ...................................................................................................... 1

    A.   There Is No Basis To Exclude The Challenged Portions Of Samsung's
        Utility Expert's Reports ........................................................................... 1

        1.   The Patent Local Rules Do Not Provide A Basis To Exclude The
              Challenged Prior Art ...................................................................... 1

              (a)   Patent Local Rule Disclosures Do Not Require The Same
                        Level Of Detail As Expert Reports ...................................... 1

              (b)   Stephen Gray's Invalidity Opinion Concerning Apple's '915
                        Patent .................................................................................. 2

              (c)   Dr. van Dam's Invalidity Report Concerning Apple's '381
                        Patent .................................................................................. 5

               (d)   Dr. Von Herzen's Invalidity Report Concerning Apple's '607
                        Patent .................................................................................. 5

                    (i)   Reliance on the Blonder Patent Was Appropriate ................. 5

                  (ii)   Samsung's "Derivation" Defense Is Based on a
                        Reference Included in Samsung's Invalidity
                        Contentions and Was Not Fully Substantiated Until
                        After the Close of Fact Discovery ........................................ 7

        2.   Samsung Properly Disclosed The Infringement Theories Upon
              Which Its Utility Experts Based Their Reports ........................... 8

               (a)   Samsung's Non-Infringement Experts Expressed Opinions
                        on Previously-Disclosed Contentions. ................................. 8

                    (i)   Dr. Jeffrey Johnson's Non-Infringement Report re
                        Apple's '381 Patent .............................................................. 8

                    (ii)   Dr. Von Herzern's Non-Infringement Report Re
                        Apple's '607 Patent ........................................................... 10

              (b)   Mr. Gray's Non-Infringement Report Concerning Apple's
                        '915 Patent ......................................................................... 10

         3.   Samsung's Infringement Experts Expressed Opinions on Properly
              Disclosed Theories ...................................................................... 11

               (a)   Samsung Disclosed the Theories in Dr. Woodward Yang's
                        Report Regarding Samsung's '460 Patent ....................... 11

(i)      Samsung Disclosed the Sequencing Theory
Contained in Dr. Yang's Expert Report. ............................ 11

(ii)     Samsung's Invalidity Contentions Disclosed Dr.
Yang's Opinion Regarding Navigation of Images
Using Either Scroll Keys or Swiping . ................................ 13

(iii)    Samsung's Infringement Contentions Disclose that
the Accused Apple Devices have a Portable Phone
Mode................................................................................. 14

(b)      All of Dr. Williams' Theories Were Timely Disclosed. ................. 14

B.      There Is No Basis To Exclude Portions Of The Opinions Of Samsung's
Design And Trade Dress Experts ....................................................................... 15

1.      Samsung Satisfied Any Rule 26(e) Obligations by Timely
Supplementing Its Interrogatory Responses On March 19, 2012 ............. 15

2.      Samsung Did Not Violate Rule 26(e) Because Its Invalidity and
Non-Infringement Theories Had Otherwise Been Made Known to
Apple. ........................................................................................................ 17

(a)      Samsung's Anticipation and Obviousness Theories. ...................... 18

(b)      Samsung's Arguments Regarding Lack of Distinctiveness ............ 20

(c)      Samsung's Indefiniteness Theories ................................................. 20

(d)      Samsung's Non-Infringement Theories........................................... 20

(e)      Samsung's Argument That Apple's Design Patents Should
Be Construed Narrowly................................................................... 21

3.      Any Failure To Supplement's Samsung's Interrogatory Responses
Was Harmless............................................................................................. 22

C.      Samsung's expert opinion on damages should not be struck................................. 23

1.      Apple's Attempt to Strike Mr. Wagner's Supplemental Report
Should Be Rejected .................................................................................... 23

2.      Apple's Attempt To Strike One of Mr. Wagner's Damages Models
Should Be Rejected .................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

### Cases

*ATD Corp. v. Lydall, Inc.*,
 159 F.3d 534 (Fed. Cir. 1998) ..................................................................................16

*Abbott Labs. v. Lupin Ltd.*,
 2011 WL 1897322 (D. Del. May 19, 2011) ...........................................................17, 22

*Abbott Labs. v. Sandoz, Inc.*,
 F. Supp. 2d 762 (N.D. Ill. 2010) ...............................................................................17

*Accenture Global Services GmbH v. Guidewire Software Inc.*,
 691 F. Supp. 2d 577 (D. Del. 2010) .......................................................................16, 17

*Brilliant Instruments, Inc. v. Guidetech, Inc.*,
 2011 WL 900369 (N.D. Cal. Mar. 15, 2011) .............................................................5

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
 2009 WL 806753 (E.D. Tex. Mar. 19, 2009).............................................................8

*DCG Sys. v. Checkpoint Tech., LLC*,
 2012 WL 1309161 (N.D. Cal. 2012)..........................................................................1

*DataQuill Ltd. v. Handspring, Inc.*,
 2003 WL 25696445 (N.D. Ill. Dec. 19, 2003) ..........................................................17

*DataTreasury Corp. v. Well Fargo & Co.*,
 2010 WL 3912486 (E.D. Tex., Sept. 13, 2010) ......................................................2, 21

*Dominguez v. Excel Mfg., Inc.*,
 2010 WL 5300863 (N.D. Cal. Dec. 20, 2010) ........................................................24, 25

*Edizone, L.C. v. Cloud Nine*,
 2008 WL 584991 (D. Utah Feb. 29, 2008) ................................................................16

*Fenner Invs. v. Hewlett-Packard Co.*,
 2010 WL 786606 (E.D. Tex., Feb. 26, 2010) .......................................................1, 2, 4

*Figueroa v. Smith*,
 2007 WL 1342485 (N.D. Cal. May 7, 2007) ..............................................................22

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
 110 F.3d 1573 (Fed. Cir. 1997) ..................................................................................7

*Genentech, Inc. v. Trustees of Univ. of Penn.*,
 2012 WL 359724 (N.D. Cal. Feb. 2, 2012)................................................................21

*Genentech, Inc. v. Trustees of Univ. of Penn.*,
 2012 WL 424985 (N.D. Cal. February 09, 2012) ............................................2, 5, 7, 12

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*,
  1996 U.S. Dist. LEXIS 17362 (N.D. Ill., Nov. 21, 1996) ..................................16

*High Point SARL v. Sprint Nextel Corp.*,
  2011 WL 4526770 (D. Kan. Sept. 28, 2011) ............................................2

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) ........................................................12

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
  2012 WL 664498 (D. Md. Feb. 27, 2012) ..........................................8, 11, 17

*Monsanto Co. v. E.I. Du Pont De Nemours & Co.*,
  2012 WL 27936 .........................................................................16

*O2 Micro Int'l Ltd v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) .........................................................2

*Oracle USA, Inc. v. SAP AG*,
  264 F.R.D. 541 (N.D. Cal. 2009) ......................................................16

*Orion IP, LLC, v. Staples, Inc.*,
  407 F. Supp. 2d 815 (E.D. Tex. 2006) .........................................2, 3, 9, 12

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  763 F. Supp. 2d 671 (D. Del. 2010) ................................................16, 23

*Primos, Inc. v. Hunter's Specialties, Inc.*,
  451 F.3d 841 (Fed. Cir. 2006) .........................................................16

*STMicroelecs., Inc. v. Motorola, Inc.*,
  308 F. Supp. 2d 754 (E.D. Tex. 2004) ..................................................1

*Se-Kure Controls, Inc. v. Vanguard Prods. Group, Inc.*,
  2007 WL 781250 (N.D. Ill. 2007) .....................................................19

*Shared Memory Graphics LLC v. Apple, Inc.*,
  812 F. Supp. 2d 1022 (N.D. Cal. 2010) .................................................1

*Shurtape Techs. LLC v. 3M Co.*,
  2011 WL 4750586 (W.D.N.C., Oct. 7, 2011) ............................................1

*Transclean Corp. v. Bridgewood Services, Inc.*,
  77 F. Supp. 2d 1045 ................................................................16, 17

*Wendt v. Host Int'l, Inc.*,
  125 F.3d 806 (9th Cir. 1997) ..........................................................25

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .........................................................16

## Statutes

Fed. R. Civ. P. 26 ...................................................................19

Fed. R. Civ. P. 26(a)(2)(E) ..............................................................................................23

Fed. R. Civ. P. 26(e) ...........................................................................................9, 16, 23

Fed. R. Civ. P. 26(e)(1) ...............................................................................8, 17, 18, 21

Fed. R. Civ. P. 33(d) ......................................................................................................18

Fed. R. Civ. P. 37 ..........................................................................................................18

Fed. R. Civ. P. 37(c) ......................................................................................................19

Fed. R. Civ. P. 37(c)(1) .................................................................................................18

# I.   <u>INTRODUCTION</u>

Samsung has developed a number of powerful invalidity and non-infringement theories that will defeat Apple's claims at trial.  Rather than address these theories on the merits, Apple now seeks to exclude them, claiming that they were not properly disclosed.  But Apple's motion misconstrues the purposes and scope of infringement and invalidity contentions, which are designed to provide notice, and necessarily do not contain the level of evidentiary detail that support an expert's report.  The opinions and evidence Apple seeks to exclude are fully consistent with Samsung's infringement and invalidity contentions.  To the extent Apple's arguments are premised on interrogatory responses, they are equally flawed.  Samsung's responses were timely served provided reasonable notice of the theories and arguments Samsung presents in its expert reports.  Apple's motion should be denied.

# II.   <u>ARGUMENT</u>

### A.   <u>There Is No Basis To Exclude The Challenged Portions Of Samsung's Utility Expert's Reports</u>

#### 1.   <u>The Patent Local Rules Do Not Provide A Basis To Exclude The Challenged Prior Art</u>

##### (a)   <u>Patent Local Rule Disclosures Do Not Require The Same Level Of Detail As Expert Reports</u>

The purpose of infringement contentions is to provide defendants with reasonable notice of infringement beyond the claim language itself.  *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010).  As this Court has recognized, the local rules for disclosure of infringement contentions "do not, as is sometimes misunderstood, 'require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case.'"  *DCG Sys. v. Checkpoint Tech., LLC*, 2012 WL 1309161, at *2 (N.D. Cal. 2012).  *Fenner Invs. v. Hewlett-Packard Co.*, 2010 WL 786606 at *2 (E.D. Tex., Feb. 26, 2010); *see also Shurtape Techs. LLC v. 3M Co.*, 2011 WL 4750586 (W.D.N.C., Oct. 7, 2011) ("the scope of infringement contentions and export reports are not co-extensive.") Patent L.R. 3-1 is not intended to force parties to "pre-try the case ... by conducting a highly detailed and rigorous analysis of the preliminary claim infringement contentions."  *STMicroelecs., Inc. v. Motorola, Inc.*, 308 F. Supp.

2d 754, 756 (E.D. Tex. 2004); *Orion IP, LLC, v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006) (patent rules "strike a balance of providing fair notice to defendants without requiring unrealistic, overly factual contentions from plaintiffs…").  "The scope of infringement contentions and expert reports are not . . . coextensive."  *Fenner,* 2012 WL 786606 at *2.  Only expert reports that "substantially deviate" from infringement contentions are subject to a motion to strike. *DataTreasury Corp. v. Well Fargo & Co*., 2010 WL 3912486 (E.D. Tex., Sept. 13, 2010).

This Court has applied these same principles to invalidity contentions, noting that the question on a motion to strike is whether the expert report "merely provides an evidentiary example or complementary proof in support thereof, or itself advances a new or alternate means by which the jury could find the claim at issue invalid."  *Genentech, Inc. v. Trustees of Univ. of Penn.,* 2012 WL 424985 at *2 (N.D. Cal. February 09, 2012).   Invalidity contentions are intended to provide a plaintiff with reasonable notice of the defendant's invalidity theories.  *High Point SARL v. Sprint Nextel Corp.*, 2011 WL 4526770 at *9 (D. Kan. Sept. 28, 2011) (invalidity contentions, by local rule or interrogatory response, are "not required to provide the same level of detail that may ultimately be needed for it to support its invalidity defense.  This makes sense here where experts may be necessary to provide the specificity needed to identify the specific combinations of prior art that . . . show obviousness.");

Finally, the obligations in the Patent Local Rules are a two way-street, and neither party is entitled to delay providing meaningful responses and then sandbag their opponent.  *O2 Micro Int'l Ltd v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006).  The Patent Local Rules are intended to be a shield, not a sword.  *Orion IP*, 407 F. Supp. 2d at 818.  Parties cannot "lay behind the log until late in the case" and then claim they lack notice as to the scope of the case or the opponent's contentions.  *Id.*

### (b) Stephen Gray's Invalidity Opinion Concerning Apple's '915 Patent

Samsung's Invalidity Contentions identified the DiamondTouch System as prior art to the '915 patent.  (Ward Dec., Ex. A at 26.)  The DiamondTouch System includes touch screen

1   hardware and software, including the Mandelbrot, DTLens, and DTMouse applications.[1]  Mr.

2   Gray's report details how the DiamondTouch System – including the Mandelbrot, DTLens, and

3   DTMouse source code – anticipate the asserted claims of Apple's '915 patent.  (Ward Dec. Ex. B,

4   Gray Report at ¶¶ 161-165 and 172-182.)

5        Apple claims that any reference to Mandelbrot, DTLens, and DTMouse should be stricken

6   from Mr. Gray's report because disclosure of the "DiamondTouch system is not tantamount to a

7   disclosure of each application program within the system."  (Motion at 6.)  However, Samsung's

8   Invalidity Contentions expressly state that the DiamondTouch System includes "documents and

9   source code describing the same."  (Ward Dec. Ex. A at 12.)  There can be no dispute that the

10  Mandelbrot, DTLens, and DTMouse source code falls squarely within this definition.[2]

11  Furthermore, Samsung's Invalidity Contentions disclose in detail how the DiamondTouch System

12  meets the limitations of the asserted claims.  (Ward Dec., Ex. A at Ex. J1, 11 – 14.)  For example,

13  Samsung's contentions describe how the DiamondTouch System distinguishes between scroll and

14  gesture operations.  Dr. Gray's expert report also describes how the DiamondTouch System

15  distinguishes between scroll and gesture operations and simply identifies Mandelbrot as an

16  application in the DiamondTouch System that does this.  Finally, the DTLens and DTMouse

17  applications are demonstrated in videos referenced in Samsung's Invalidity Contentions.  (*Id.*)

18  Thus, Apple had fair notice of Samsung's invalidity theories and arguments with respect to the

19  entire DiamondTouch System.  *See, e.g., Orion IP*, 407 F. Supp. 2d at 817 (for systems with

20  multiple methods of use, "plaintiffs should provide specific theories of infringement and

21  representative examples of the alleged infringement so as to give defendants fair notice of

22

23

---

24       [1]  The claims of the '915 patent are directed to a technique for distinguishing between a single
     input point, which are interpreted as scroll operations, and multiple input points, which are

25  interpreted as gesture operations.  The DiamondTouch System, specifically in the Mandelbrot
     application, performs precisely the same operations and therefore anticipates.

26       [2]  Adam Bogue, a developer of the DiamondTouch system, testified that the DiamondTouch
     System's demonstration applications included Mandelbrot, DTLens, and DTMouse.  (Ward Dec.,

27  Ex. C, Bogue Tr. at 21:24-21:24; 94:1-96:22; Ex. D, Forlines Tr. at 113:22-114:7.)  Another early
     DiamondTouch developer, Clifton Forlines, testified that a publicly accessible DiamondTouch

28  System located in MERL's lobby included these applications.  (*Id.* at 119:17-120:3.)

1  infringement beyond that which is provided by the mere language of the patent claims

2  themselves.")

3        Furthermore, Apple was fully aware of and conducted discovery on Mandlebrot, DTLens,

4  and DTMouse.  On October 7, 2011, the day Samsung served its invalidity contentions, Samsung

5  made available for inspection a DiamondTouch Table System with Mandlebrot, DTLens, and

6  DTMouse.   (Ward Dec., Ex. A at Ex. J1, fn. 2.)  Less than two weeks later, on October 20, 2011,

7  Samsung provided Apple with the source code for Mandlebrot, DTLens, and DTMouse.[3]   (Ward

8  Dec., Ex. E.)  On December 2, 2011 Apple's counsel inspected the DiamondTouch System and

9  took videos of its operation.  (*See* Dkt. 447.)  Although Apple withheld these videos from

10  Samsung, they likely demonstrate the operation of  Mandlebrot, DTLens, and DTMouse.  Finally,

11  Apple took depositions of developers of the DiamondTouch System, Adam Bogue and Clifton

12  Forlines, and asked these prior art witnesses specific questions regarding Mandlebrot, DTLens,

13  and DTMouse (Ward Dec. Ex. C at 18:18-22:22; Ex. D at 63:21-64:25, 68:2-21, 72:4-13, 72:15-

14  73:15.).  In light of these facts, there can be no question that Apple knew Mandlebrot, DTLens,

15  and DTMouse were being asserted as prior art against the '915 patent.  Consequently, there is no

16  basis for exclusion.  *Fenner*, 2012 WL 786606 at *3 (no exclusion where "discovery made it

17  explicitly clear Plaintiff did not intend the contentions to only encompass servers operating

18  Windows Server 2003").

19        Finally, Samsung would be extremely prejudiced if it could not rely on Mandlebrot,

20  DTLens, or DTMouse.  These applications and their source code demonstrate how the

21  DiamondTouch System invalidates the asserted claims of the '915 patent.  Exclusion of these

22  applications would be tantamount to an exclusion of the entire DiamondTouch System as prior art

23  to the '915 patent, notwithstanding Samsung's timely disclosure of the DiamondTouch System.

24

25

26

27       [3]  Samsung obtained copies of these source code pursuant to a third-party subpoena to MERL,
the company that developed the DiamondTouch System.

28

**(c)     Dr. van Dam's Invalidity Report Concerning Apple's '381 Patent**

Apple complains that six prior art references mentioned in Dr. van Dam's expert report were not disclosed in Samsung's invalidity contentions. (Motion at 6-7.) However, Dr. van Dam does not allege that the '381 patent is invalid based any of these references. Rather, he uses these references to provide background on the technology relating to the '381 patent. (Ward Dec. Ex. F, van Dam Report at 12-20. The Patent Local Rules do not require the disclosure of such material in a party's invalidity contentons. *See Genentech,* 2012 WL 424985 at \*2. ("the fact that a reference . . . was not disclosed in the invalidity contentions does not render it unusable for laying an historical foundation to research that was disclosed."); *Brilliant Instruments, Inc. v. Guidetech, Inc.*, 2011 WL 900369, at \*2  (N.D. Cal. Mar. 15, 2011).  Consequently, Apple's motion to strike with respect to Dr. van Dam's report should be denied.

**(d)     Dr. Von Herzen's Invalidity Report Concerning Apple's '607 Patent**

Apple seeks to strike Dr. Von Herzen's invalidity opinions that refer to the Blonder '041 patent ("Blonder")[4] as prior art or to a theory of "derivation" under § 102(f) because neither was disclosed in Samsung's Invalidity Contentions. But Dr. Von Herzen's reliance on the Blonder patent and his discussion of derivation are an appropriate response to Apple's untimely shift in its interpretation of the asserted claim and to Apple's belated production of highly relevant documents from a related ITC investigation.

**(i)     Reliance on the Blonder Patent Was Appropriate**

In its Infringement Contentions, Apple alleged that "upon information and belief" the Samsung's accused products included the "virtual ground charge amplifier" circuitry recited in claim 8 of the '607 Patent.  Apple, which has the burden of setting out its theory of infringement, did not explain what was meant by "virtual ground charge amplifier," which is not a common

---

[4] Apple also requests the Court to strike portions of Dr. Von Herzon's opening report that rely on the Gillepsie '411 patent.  (Motion at 7.)  The Gillepsie '411 patent was incorporated by reference in U.S. Patent 7,030,860 to Hsu, which was the subject of Samsung's unsuccessful Motion to Supplement Invalidity Contentions.  Samsung therefore agrees to withdraw ¶¶ 51, 377, 381, and 439 of Dr. Von Herzen's opening report.

1   industry term. ████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ████████████████████   Consequently, Apple's infringement contentions did not put Samsung

4   on notice as to the type of circuit corresponded to a "virtual ground charge amplifier."

5        Throughout discovery, Apple never supplemented its Infringement Contentions to indicate

6   what type of circuit corresponds to the virtual ground charge amplifier recited in claim 8 of the

7   '607 Patent.  Indeed, Samsung was not made aware of Apple's interpretation of claim 8 of the

8   '607 patent until Apple served its expert infringement report on March 22, 2012.  Through Dr.

9   Maharbiz's infringement report, ███████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████   This interpretation is surprising because, ████████████

12  ████████████, the '607 Patent only describes the circuit of Figure 13 as a "filter" or "inverting

13  amplifier" and not a "virtual ground charge amplifier."  (*Id.*)

14       Upon learning of the circuit Apple contends corresponds to the "virtual ground charge

15  amplifier" of claim 8, Dr. Von Herzon identified the exact same circuit in the Blonder reference.

16  In view of Apple's late disclosure of its infringement theory for claim 8,[5] the references to Blonder

17  in Dr. Von Herzen's invalidity report is entirely proper rebuttal evidence to Apple's newly

18  disclosed interpretation of this claim term.  The Court should not permit Apple to surprise

19  Samsung with a new interpretation of the claim without providing Samsung an opportunity to

20  present rebuttal evidence relating to this new interpretation.[6]

21  _____

22      [5]   Samsung has filed a motion to strike this portion of Dr. Marharbiz's report and this
    infringement theory because Apple failed to disclose it pursuant to the Patent Local Rules.  *See*

23  (Dkt. No. 934-3 at 10.)
        [6]   Apple can claim no prejudice from the timing of Samsung's disclosure regarding the virtual

24  ground charge amplifier, because it was made in response to Apple's belated change to its own
    interpretation of claim 8.  In addition, Apple nevertheless had ample notice that Samsung would

25  ultimately offer opinions on "virtual ground charge amplifiers."  In its Invalidity Contentions,
    Samsung identified several "amplifier" circuits in the prior art and alleged that these amplifiers

26  disclosed the claimed "virtual ground charge amplifier" as best as Samsung understood this
    undefined term.  (Ward Dec., Ex. A at Ex. P, pp. 7-8, 64-65, 75-76, 87-88.)  In addition, Samsung

27  alleged that the incorporation of a "virtual ground charge amplifier," as best as Samsung
    understood this term, into many of the prior art references, was obvious.  (*See id.* at 22-23, 36, 50,

28  106-107.)  Apple therefore had reasonable notice that Samsung would allege the claimed charge
        (footnote continued)

1

               (ii)      <u>Samsung's "Derivation" Defense Is Based on a Reference</u>
<u>Included in Samsung's Invalidity Contentions and Was Not</u>

2

<u>Fully Substantiated Until After the Close of Fact Discovery.</u>

3

      Dr. Von Herzen's derivation opinion is based on the Sony Smartskin reference.  A

4

derivation defense requires a showing of "both prior conception of the invention by another and

5

communication of that conception to the patentee."  *Gambro Lundia AB v. Baxter Healthcare*

6

*Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997).  As Apple admits, Samsung provided a claim chart

7

for the Smartskin device as an anticipatory § 102 reference in Samsung's invalidity contentions,

8

thereby establishing prior conception.  (Motion at 8.)

9

      Apple complains, however, that Samsung did not explain how the prior conception was

10

communicated to the patentee and by whom.  Yet Samsung could not possibly make these

11

disclosures until after reviewing ███████████████████████████████████

12

████████████████████████████████████████████████ and

13

Samsung had an opportunity to depose all the named inventors of the '607 Patent.  Moreover,

14

Samsung did not fully substantiate its fact-intensive derivation defense until after █████████

15

████████████████████████████ which was not produced until December 8,

16

2011, and ████████████████████████ which did not issue until January 13,

17

2012.  *See Genentech*, 2012 WL 424985, at *2 ("a key consideration for the court is the timing of

18

the disclosure in relation to when the disclosing party had the information . . .").

19

      Samsung first learned the complete basis of Motorola's derivation defense from

20

████████████████████████████████████████████████████████

21

████  In addition, Mr. Hotelling, one of the inventors of the '607 Patent, █████████████

22

████████████████████████████████████████████████████████████

23

████████████████████████████████████████████████████████

24

████████████████████████████████████████████████████ of the

25

████████████████████████████████████████████████—one of the

26

27

_____

amplifier circuitry was well known in the art after Apple provided a indication of the precise

28

circuitry that constituted the claimed "virtual ground charge amplifier."

1    critical elements of a derivation defense.  Samsung's disclosure of this defense in Dr. Von

2    Herzen's invalidity report is therefore timely.

3         Moreover, Apple cannot possibly claim prejudice from the timing of Samsung's derivation

4    defense disclosure the same defense based on the same prior conception and communication was

5    already litigated in the 337-TA-750 investigation.  In addition, by including the Smartskin

6    reference in its invalidity contentions, Samsung put Apple on notice of this potential defense.

7    Because the underlying evidentiary details were not available until Apple belatedly provided them

8    in discovery, the Court should deny Apple's request to strike Dr. Von Herzen's derivation

9    opinions from his invalidity report.[7]

10            **2.    Samsung Properly Disclosed The Infringement Theories Upon Which
              Its Utility Experts Based Their Reports**

11

12                **(a)    Samsung's Non-Infringement Experts Expressed Opinions on
                    Previously-Disclosed Contentions.**

13                    (i)    Dr. Jeffrey Johnson's Non-Infringement Report re Apple's
                        '381 Patent

14

15         Apple asks the Court to strike portions of Dr. Johnson's non-infringement rebuttal report

16    on the '381 patent regarding "hold still" behavior[8] claiming Samsung failed to disclose this non-

17    infringement theory during fact discovery.  (Ward Dec., Ex. M, Johnson Non-Infringement Report

18    ¶ 65.)  As explained below, Samsung fully disclosed this theory.

19         A party is not required in its interrogatory responses to " divulge [it's] crystallized non-

20    infringement arguments upon which [it] will rely at trial.  The deadline for . . . rebuttal expert

21    reports on non-infringement serves this purpose."  *Cummins-Allison Corp. v. SBM Co., Ltd.*, 2009

22    WL 806753 (E.D. Tex. Mar. 19, 2009).  Moreover, a party is not required under Rule 26(e)(1) to

23       [7]   Contrary to Apple's assertions (Motion at 22-23.), Dr. Von Herzen offers no formal
      inequitable conduct opinion in his report.  Rather, Dr. Von Herzen merely opines that the failure to
24    inform the PTO about Apple's derivation of the claimed invention from Sony would have been
      material to patentability.  (Ward Decl. Ex. L, Von Herzen Report at ¶¶ 459-460.)  In Dr. Von
25    Herzen's opinion, the PTO would have never allowed the '607 Patent had it known that all three
      named inventors read the Smartskin paper and watched the Smartskin videos prior to their alleged
26    "invention."  (*Id.*)  These opinions, which are integrally linked to Dr. Von Herzen's derivation
      opinion, should be permitted for the same reason as his derivation opinion.
27       [8]   Dr. Johnson explained that in the Gallery application, a user can move "an image beyond
      the edge of the document, show an area beyond the edge, and upon lifting her finger, the image
28    will hold still and does not snap back."  (Ward Dec., Ex. L at ¶ 65).

1   supplement its responses to interrogatories (including contention interrogatories) unless the

2   original responses are incorrect or incomplete, **and** the new information "has not otherwise been

3   made known to the other parties during the discovery process or in writing."). *Mike's Train*

4   *House, Inc. v. Broadway Ltd. Imports, LLC*, 2012 WL 664498, at *13 (D. Md. Feb. 27, 2012).

5          Here, Samsung provided the required facts (*i.e.* devices, source code, and sufficient

6   interrogatory responses) during fact discovery and Samsung's expert described this non-

7   infringement theory in more detail in his expert report.  Far from Apple's assertion that Samsung

8   hid non-infringement theories regarding the "hold still" behavior, Samsung disclosed its non-

9   infringement arguments *well before* serving its rebuttal reports on April 16, 2012.  Samsung made

10  available for inspection source code and physical devices that exhibit the "hold still" behavior on

11  December 30, 2011 and February 3, 2012, respectively.  (Ward Dec. Exs. N-O.)  Apple's own

12  expert, Dr. Balakrishnan, had in his possession the source code and devices that exhibit the "hold

13  still" behavior.  And Samsung disclosed the "hold still" behavior in Samsung's second

14  supplemental response to Apple's Interrogatory No. 2 on March 12, 2012—responses which

15  Apple does not challenge.  (Ward Dec. Ex. P at 9.)  Put simply, Samsung disclosed the non-

16  infringement argument that Dr. Johnson later named "hold still" and explained in more detail in

17  his report.  If Apple was unclear as to the scope of Samsung's contentions, it should have worked

18  with Samsung to clarify any issues.  *See Orion IP*  407 F.Supp. 2d at 818 ("A defendant cannot lay

19  behind the log until late in the case and then claim it lacks notice as to the scope of the case or the

20  infringement contentions").

21          Apple also had ample opportunity to ask Dr. Johnson about "hold still" at his deposition,

22  vitiating any claim of prejudice by Apple.  Nevertheless, Apple did not ask any questions

23  regarding "hold still" during the deposition.  Instead, Dr. Johnson brought up the "hold still"

24  behavior at least three times on his own (Ward Dec. Ex. Q, Johnson Tr. 64:10, 70:16, 149:16).

25  Only then did Apple ask what Johnson meant by "hold still."  (*Id.* at 70:17.)  And after that, Apple

26  asked *no* further questions about "hold still" behavior.  There was no violation of Rule 26(e), and

27  no basis for exclusion.

28

(ii)      Dr. Von Herzern's Non-Infringement Report Re Apple's '607 Patent

Apple asks the Court to strike portions of Dr. Von Herzen's Non-Infringement Report on Apple's '607 patent that address "near touches" and "transverse lines." (Motion at 9.) Once again, Apple is attempting to profit from its failure to comply with the specificity and charting requirements in Patent Local Rule 3-1.

In its Infringement Contentions, Apple only provided a '607 Patent infringement chart for the Galaxy Tab 10.1; the Tab 7.0 was not charted at all. (Ward Dec., Ex. R at Ex. 17.) Because Apple failed to chart both products, and because the Tab 10.1 and Tab 7.0 contain completely different conductive line patterns, Samsung had no way of knowing how Apple would apply the claimed "first conductive lines" and the claimed "second conductive lines" to the Tab 7.0. As a consequence, Samsung could not possibly have alleged that the Tab 7.0 did not include second conductive lines that are "transverse" to the first conductive lines until Apple provided its expert infringement report on March 22, 2012. (Ward Dec., Ex. H.)

Moreover, Apple's infringement contentions merely parroted the asserted claim language and completely failed to explain how or why the Samsung products are able to detect "near touches," as required by the preamble of claim 1. Apple's first analysis of this claim limitation was contained in its expert's infringement report. (*Id.* at 25-26.) Samsung's responsive non-infringement theories are therefore proper as rebuttal evidence to Apple's expert infringement report and should not be stricken.

### (b)      Mr. Gray's Non-Infringement Report Concerning Apple's '915 Patent

Unlike Apple's other arguments in this motion, Apple's attempt to strike Mr. Gray's report on the non-infringement of the '915 patent is *not* based on an alleged inconsistency between his report and earlier disclosures. Rather, this argument is a procedurally improper *Daubert* challenge which Apple chose not to make in its *Daubert* motion. In explaining how certain Samsung products cannot infringe the '915 patent, Mr. Gray reviewed Samsung products and reached the conclusion that, because some Samsung products are capable of scrolling with more than one input point, these products do not infringe the '915 patent. (Ward Dec., Ex. S, Gray Rebuttal

Report at ¶ 34.)  Apple contends that Mr. Gray's report should be stricken because he failed to

disclose which devices perform multi-input point scrolling.  (Motion at 10-11.)

The thrust of Apple's argument is that Mr. Gray did not use "sound" or "reproducible"

testing techniques.  (*Id.* at 11.).  Apple then selectively quotes from his deposition, implying that

his failure to remember the names of the products casts doubt on the entire theory.  (*Id.*)  Putting

aside the fact that Apple's arguments would not even give rise to exclusion under *Daubert* had

they been properly raised in such a motion, the mere fact that Mr. Gray could not recite, from

memory, which devices demonstrated multi-touch scrolling does not justify excluding his report in

any way.  Mr. Gray properly discussed multi-touch scrolling at the appropriate time set out for

expert reports, irrespective of Apple's attempt to establish its own schedule for this trial.

The weakness of Apple's argument is underscored by the fact that its own expert, Dr.

Karan Singh, only addressed 2 of 31 accused products in his claim-by-claim infringement chart.

(Ward Dec., Ex. T, Singh Report at ¶ 305.)  Mr. Gray noted this shortcoming, and even stated that

he was rebutting at the level of specificity provided by Dr. Singh.  (Ward Dec., Ex. S at  ¶¶ 51,

231.)  Apple has made no allegation that the "theory" of multi-point scrolling was not timely

disclosed, nor that there was a failure to respond to an interrogatory, which would be the only

basis for seeking relief under the Federal Rules of Civil Procedure.  *Mike's Train House,* 2012 WL

664498, at *13.  In any event, Mr. Gray supplemented his report to include the very specific

information Apple seeks, mooting Apple's argument altogether.  (Ward Dec., Ex. U, Gray

Supplemental Report.)

### 3.   Samsung's Infringement Experts Expressed Opinions on Properly Disclosed Theories

#### (a)   Samsung Disclosed the Theories in Dr. Woodward Yang's Report Regarding Samsung's '460 Patent

##### (i)   Samsung Disclosed the Sequencing Theory Contained in Dr. Yang's Expert Report.

Apple claims that Dr. Yang's infringement report discloses an infringement theory that is

different than the theory set forth in Samsung's Infringement Contentions .  Specifically, Apple

contends that Samsung's Infringement Contentions require the steps of the claim 1 of the '460

patent to be performed in sequential order and that Dr. Yang's infringement report is based on the steps being performed in a non-sequential order.   Apple's argument is based on an improper interpretation of Samsung's infringement contentions and is contrary to well-settled law. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001) ("Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one." ).

Claim 1 of the '460 patent includes five steps and is directed to three core functions:  (i) transmitting an email displaying a message only (i.e., without any image); (ii) transmitting an email displaying an image and a message; and (iii) displaying images stored on the device in sequence.  (Ward Dec., Ex. V at Ex. J; Ex. W, Yang Report at Ex. 1A-1, pg. 2.)  As explained by Dr. Yang, the steps corresponding to these three functions do not have to be performed in sequential order.

Apple mischaracterizes Samsung's Infringement Contentions by selectively quoting portions of Samsung's claim charts and omitting portions that undermine its argument.  For example, Apple highlights words such as "returns" and "again," but fails to mention that Samsung expressly indicated these were examples.  Samsung's Infringement Contentions provided both (1) an identification of the accused feature by each claim limitation, and (2) an exemplary ("e.g.") sequence demonstrating infringement by Apple's Accused Devices.  (Ward Dec., Ex. V at Ex. J.) Apple's Motion to Strike only addresses the latter.  Portions of Samsung's Infringement Contentions not cited by Apple are sufficient to meet Samsung's obligation under Local Patent Rule 3-1—to specifically identify where each limitation of each asserted claim is found. *Genentech,* 2012 WL 424985 at *2 (mere evidentiary example does not limit an infringement contention).  Samsung went beyond its Rule 3-1 requirement by providing Apple additional information – an exemplary sequence of steps and screenshots evidencing infringement.  (*Id.*)  In any event, plaintiffs are not required to provide every conceivable example of infringement in their contentions.  *See, e.g., Orion IP*, 407 F. Supp. 2d at 817 (for systems with multiple methods of use, "plaintiffs should provide specific theories of infringement and representative examples of the alleged infringement so as to give defendants fair notice of infringement beyond that which is provided by the mere language of the patent claims themselves.")

1   Even Apple's expert, Dr. Srivastava, ███████████████████████████

2   ███████████████████   On the same day that Samsung served Dr. Yang's alleged "new" theory

3   of infringement, Dr. Srivastava served his report in which he opines that ████████████████

4   ██████████████████████████████████████████████████████████████████████

5   ██████████████████████   Further, in his deposition, Dr. Srivastava ████████████████

6   ██████████████████████████████████████████████████████████████████████

7   ███████

8               (ii)    <u>Samsung's Invalidity Contentions Disclosed Dr. Yang's
                        Opinion Regarding Navigation of Images Using Either Scroll</u>

9                       <u>Keys or Swiping .</u>

10          Contrary to Apple's assertions, Samsung's Infringement Contentions put Apple on notice

11   of its intention to argue that "swiping" is no different than the use of "scroll keys" for navigating

12   between stored images.[1]  In its Patent Local Rule 3-1 disclosures, Samsung contended that a

13   user views the next or previous image on the Accused Apple Devices by "navigat[ing] between

14   image files" in the Mail or Photos app, and provided an example of doing so through the use of

15   buttons at the bottom of the screen.  (Ward Decl. Ex. V at Ex. J, pg. 9.)  Apple's attempt now to

16   limit Samsung to the single example it provided showing the use of buttons to navigate, instead of

17   the broader "navigat[ing] between image files" language in its Infringement Contentions is

18   improper.

19          As Dr. Yang explained, swiping and touching scroll keys to navigate between image files

20   results in executing the exact same software.  (Ward Decl. Ex. Z, Yang Tr. at 282:17-288:8

21   (identifying the specific source code executed by both swiping and scrolling.)  Thus, Apple knew

22   that Samsung claimed that the use of scroll keys is insubstantially different from swiping. (Ward

23   Dec., Ex. W at Ex. 1A-1, pg. 2.)

24          Further, it is disingenuous for Apple to assert that it did not understand Samsung's

25   Infringement Contentions as including swiping.  Dr. Singh, ███████████████████████

26

27

28

1 ██████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4         (iii)    <u>Samsung's Infringement Contentions Disclose that the</u>

5                 <u>Accused Apple Devices have a Portable Phone Mode</u>

Finally, Apple's assertion that Samsung failed to disclose that the Accused Apple Devices

are in "a portable phone mode" when they "can continue to receive a call or FaceTime request," is

wrong.  Samsung's Infringement Contentions do, in fact, disclose a "portable phone mode," as

described by the '460 patent.  (Ward Dec., Ex. V at Ex. J.)  The '460 patent discloses that a

device's portable phone controller "enters portable phone mode," when it is powered on and it can

"perform[] a function related to a typical portable phone."  (*See, e.g.,* Ward Dec., Ex. AA at Fig. 6

and 9:19-29.)  Samsung's Infringement Contentions include a screenshot of the springboard/home

screen.  (Ward Dec., Ex. V at Ex. J.)  Numerous Apple witnesses, including Dr. Srivastava,

testified that ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

While Apple complains that Samsung did not define the term "portable phone mode" in its

Infringement Contentions, Apple never previously suggested that "portable phone mode" needed

construction, thereby reducing its argument to nothing more than a belated attempt to seek further

claim construction.  (Motion at 13.)  It is not a basis to strike the opinion.

        **(b)**      **All of Dr. Williams' Theories Were Timely Disclosed.**

Apple improperly asserts that Dr. Tim Williams' opinions on the '516 patent discuss new

theories about hybrid automatic repeat request, or HARQ, a key component of the '516 patent.

(*See* Ward Dec. Ex. BB, Williams Report at 58, 65, 105, 110, 119, 173, 198.)  Specifically, Apple

contends that "although Samsung previously alleged [in its infringement contentions] that the

'DPDCH channels' are the claimed first channel not supporting HARQ, Dr. Williams now asserts

that the first channel is all non-HARQ channels."  (Motion at 14.)  Contrary to Apple's

---

[9]  By Apple's own standards, Apple expert Mr. Singh's opinions should be struck ████████ (War

Dec. Ex. R at Ex. 15.)

1  allegations, Dr. Williams' Infringement Report on the '516 Patent does not advance any

2  infringement theories that were not disclosed in Samsung's Infringement Contentions.

3       Samsung clearly alleged in its Infringement Contentions that the Accused Apple Products

4  transmitted both "a first channel not supporting HARQ" and "a second channel supporting

5  HARQ" as required by the claims of the '516 Patent.  (Ward Dec., Ex. V at Ex. H, p. 2.)  Samsung

6  also included a figure from the 3GPP Standard that clearly showed *all* the uplink channels (*i.e.*, the

7  DPCCH, DPDCH, HS-DPCCH, E-DPDCH, and E-DPCCH channels).  (*Id.*)  Samsung then gave

8  an *example* of one illustrative channel that supported HARQ and another illustrative channel that

9  did not support HARQ.  Samsung never alleged that these enumerated channels were a

10 comprehensive listing of all the channels comprising the "first channel" and the "second channel."

11 Rather, as the preamble to claim 1 makes clear, the first channel includes all the uplink channels

12 not supporting HARQ and the second channel includes all the uplink channels supporting HARQ.

13 Dr. Williams' opinions are therefore completely consistent with Samsung's contentions.

14      **B.     There Is No Basis To Exclude Portions Of The Opinions Of Samsung's Design And Trade Dress Experts**

15           **1.     Samsung Satisfied Any Rule 26(e) Obligations by Timely Supplementing Its Interrogatory Responses On March 19, 2012**

16

17      Samsung supplemented its contention interrogatory responses on March 19, 2012 because

18 *Apple agreed not to file a motion to strike if Samsung supplemented by that date*.  Apple's

19 assertion that the Court should ignore these supplemental responses is pure gamesmanship.  The

20 parties discussed supplemental interrogatory responses at a meet and confer on March 14, 2012—

21 three days after Apple first raised the issue.  (Declaration of Diane C. Hutnyan ("Hutnyan Decl.")

22 ¶¶ 2-4.)  At that meeting, Apple threatened motion practice unless Samsung committed to

23 supplementing its interrogatory responses immediately.  (*Id.*)  In a good faith effort to resolve the

24 issue without court intervention, Samsung committed to supplement by March 19, 2012.  (*Id.* at ¶

25 5.)  Apple did not request an earlier date.  (*Id.* at ¶6.)  Instead, the only issue was whether

26 Samsung's supplemental responses would be sufficiently detailed.  (*Id.*)  Apple's motion,

27 however, does not complain about the level of detail in Samsung's supplemental responses—nor

28 could it, as Samsung's supplemental responses contain nuanced articulations of Samsung's

defenses.  Rather, Apple asks the Court to reward its about-face and punish Samsung for supplementing its responses by the date agreed upon by the parties.  The Court should refuse this request.

Aside from the parties' agreement, however, Samsung's March 19 supplemental responses—served just nine days after fact discovery closed, more than a month before expert discovery closed, two months before the dispositive motion deadline, and over four months before trial—were still "in a timely manner."  Fed. R. Civ. P. 26(e).  Apple cites no authority in support of its contention that supplemental responses served little more than a week after the close of discovery—and well before the close of expert discovery—are *per se* untimely.[10]  To the contrary, courts have recognized that contention interrogatories need not be answered until discovery is complete or nearly complete.  *Monsanto Co. v. E.I. Du Pont De Nemours & Co.*, 2012 WL 27936 at *2 (E.D. Mo. Jan. 5, 2012) ("courts have ordered responses to contention interrogatories as little as two weeks before dispositive motion deadlines.  In light of this law, it would have been premature for Defendants to fully answer these interrogatories before the close of fact discovery.") (citations omitted).  Rule 26(e) does not require or even suggest that supplementing shortly after the close of fact discovery, and before the close of expert discovery, is not "in a timely manner."  *Id.* at *2-3 (disclosure of new invalidity theories and references in expert report was not untimely

---

[10]   None of the cases Apple cites address similar circumstances or procedural postures.  In *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-1107 (9th Cir. 2001), the court excluded an expert report disclosed more than two years after discovery closed, and just 28 days before trial.  In *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 550 (Fed. Cir. 1998), the court upheld the exclusion of a prior art reference that defendant first disclosed more than three months after the close of discovery and less than a month before the final pretrial conference.  Similarly, in *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 850-51 (Fed. Cir. 2006), the court upheld the exclusion of a prior art device that was identified as invalidating prior art "shortly before trial commenced."  *See also Edizone, L.C. v. Cloud Nine*, 2008 WL 584991 at *3-4 (D. Utah Feb. 29, 2008) (excluding prior art references disclosed at a time when "discovery has long since passed," dispositive motions had already been decided, and where allowing the references would require reopening expert discovery and likely continuance)  *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F. Supp. 2d 1045, 1060-64 (excluding supplemental report disclosed more than one month after expert depositions, and more than three months after expert report deadline); *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 547-49 (N.D. Cal. 2009) (excluding lost profits theory that plaintiff had specifically disavowed in discovery responses and representations to the court.); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, 1996 U.S. Dist. LEXIS 17362 at *19-26 (N.D. Ill., Nov. 21, 1996) (excluding best mode defense where defendant's pleadings and interrogatory responses never specified which Section 112 defense defendant was asserting).

1   because defendant complied with expert report deadline); *Power Integrations, Inc. v. Fairchild*

2   *Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 691-92 (D. Del. 2010) (denying motion to strike

3   doctrine of equivalents theory first articulated in expert rebuttal report because defendant

4   "obtained full disclosure . . . prior to the conclusion of expert discovery[.]")

5        In fact, courts frequently refuse to strike theories and references disclosed in a much more

6   belated manner than Samsung's supplemental interrogatory responses.  In *Accenture Global*

7   *Services GmbH v. Guidewire Software Inc.*, 691 F. Supp. 2d 577, 586-88 (D. Del. 2010), for

8   instance, the court permitted the defendant to raise an on-sale bar defense first raised in a

9   supplemental interrogatory response six weeks after the close of fact discovery.  Similarly, in

10  *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 25696445 at *1 (N.D. Ill. Dec. 19, 2003), the court

11  refused to strike prior art references first disclosed in an expert report served five months after the

12  close of fact discovery.  *See also Abbott Labs. v. Lupin Ltd.*, 2011 WL 1897322 at *4-5 (D. Del.

13  May 19, 2011) (refusing to strike invalidity contentions disclosed for the first time more than

14  sixteen weeks after the close of fact discovery.).  Samsung's supplemental responses—which it

15  served on the date agreed on by the parties, just nine days after the close of fact discovery, and

16  more than a month before the close of expert discovery—were timely by any reasonable measure.

17                **2.   Samsung Did Not Violate Rule 26(e) Because Its Invalidity and Non-
                  Infringement Theories Had Otherwise Been Made Known to Apple.**

18

19       Even if Samsung's March 19, 2012 supplemental interrogatory responses were untimely—

20  and they were not—Apple must show that the theories and references at issue had "not otherwise

21  been made known to [Apple] during the discovery process or in writing."  Fed. R. Civ. Proc.

22  26(e)(1).[11]  Apple cannot meet that burden.  As discussed below, Samsung disclosed its invalidity

---

23  [11]   *Mike's Train House,* 2012 WL 664498, *13-14 (supplemental expert report, served after
24  close of fact discovery, made known to plaintiff in writing non-infringement theory that defendant
    had not disclosed in contention interrogatories or opening expert reports).  *Accenture Global
25  Services,* 691 F. Supp. 2d at 588 (denying motion to strike reliance on documents which were
    made known to the opposing party through depositions and email correspondence, and were the
26  subject of discovery disputes.);  *Abbott Labs. v. Sandoz, Inc.*, F. Supp. 2d 762, 770-71 (N.D. Ill.
    2010) (refusing to strike defenses and prior art made known through expert reports and
27  depositions, but not interrogatory responses); *Transclean,* 77 F. Supp. 2d at 1062 (defendant's
    disclosuree of a non-infringement theory and two Section 102 references in expert reports "met its
28  obligations under R. 26(e)")

and non-infringement theories, as well as the documents underlying those theories, in the parallel ITC action, through motion practice, deposition testimony, correspondence, third-party subpoenas, and in opposing Apple's motion for preliminary injunction.  (Declaration of Joby Martin In Support of Samsung's Opposition to Apple's Motion to Strike ("Martin Decl.") ¶¶ 3-15, Exs. 2-17.)

### (a)        Samsung's Anticipation and Obviousness Theories.

Apple concedes that Samsung's December 19, 2011 interrogatory response specifically identified much of the prior art references that Apple now seeks to strike.  (Motion at 18.)  Rather than confront Rule 26(e)(1), Apple raises Rule 33(d) as a red herring.  Each of the Rule 33(d) cases cited by Apple, however, addresses a motion to compel further responses—not a motion to strike for failure to supplement under Rule 26(e)(1).  None of these cases are relevant to whether documents cited in an interrogatory response that invoke Rule 33(d) otherwise makes known the cited documents to the opposing party.  Samsung's December 19 response, by citing specific documents and identifying them as invalidating prior art, disclosed these references to Apple and Samsung's intent to rely on them as the basis for its anticipation and obviousness defenses.

Samsung's anticipation and obviousness defenses—as well as nearly all of the references that Apple seeks to strike—were also made known to Apple in Samsung's Corrected Notice of Prior Art and interrogatory responses served in the parallel ITC 796 Investigation, where Apple asserts iPhone design patents virtually identical to the patents in suit.  (Martin Decl. ¶¶ 3-4, Exs. 2-3.)  While Judge Pender has decided to exclude some of these references from trial in the ITC, that decision has no bearing on the fact that Apple was aware of these theories and references no later than February 15, 2012, at a time when it had every opportunity to pursue additional discovery in this action.[12]

Apple's Motion falsely accuses Samsung of "burying" references such as the Nokia Fingerprint design, misleadingly focusing on Samsung's production over a "six-day period."

---

[12]   In any event, Judge Pender's decision was based on a "good cause" standard which is stricter than Rule 37(c)(1).  (Martin Decl. Exs. 18-19.)  Rule 37 does not require good cause—it only requires a lack of prejudice.  Fed. R. Civ. Proc. 37(c)(1).  Judge Pender did not find that Apple was prejudiced by Samsung's disclosure of new prior art.  To the contrary, he cited the fact that Apple was aware of the references, and excluded them only because "lack of prejudice does not establish good cause."

1   (Motion at 16.)  Samsung buried nothing.  In reality, Samsung produced the Nokia Fingerprint

2   design and the declaration of its inventor on February 13, 2012 as part of a modest production of

3   just 68 documents —less than 250 pages.  (Martin Decl. ¶ 5.)  This production consisted *solely of*

4   *documents relating to prior art references*, as is apparent from even a cursory review of the

5   production.  (*Id.*)  Apple's claim that it had no indication of the significance of Mr. Vilas-Boas—

6   who Apple had the opportunity to depose—is absurd.  Not only does Mr. Vilas-Boas' declaration

7   itself explain his significance, Samsung identified Mr. Vilas-Boas as a third-party prior art witness

8   in its amended initial disclosures on January 29, 2012, in full compliance with Rule 26.  (Martin

9   Decl., Ex. 4 at 6.)[13]  Apple's arbitrary focus on Samsung's production over a "six-day period" in

10  February, at the height of the parties' deposition-related productions, is nothing more than an

11  attempt to manufacture bad faith where none exists.

12          Apple also seeks to strike Samsung's experts' reliance on *Apple's own evidence*, such as

13  the D'889 patent, the Apple "Brain Box" design, the 035 prototype, and the Apple design contest

14  Tablet.  (*See* Motion-12 at 6-9.)  As courts have recognized, however, "claims of sandbagging lose

15  their persuasiveness when it's your sand and your bag."  *Se-Kure Controls, Inc. v. Vanguard*

16  *Prods. Group, Inc.*, 2007 WL 781250, *6–*7 (N.D. Ill. 2007) (denying Rule 37(c) sanctions

17  because "what [plaintiff] is really complaining about is that the defendants did not explain to the

18  plaintiff what they perceived to be the significance of [plaintiff's] own document.")  Furthermore,

19  a number of these references were identified as prior art in correspondence dating back to

20  November (Martin Decl. Exs. 7-8.), and were the subject of repeated motion practice (Dkt. 346;

21  Dkt. 487 at 9-13, 18-20.)  Apple has long been aware of these references and their significance to

22  the patents in suit.

23

24

25

26  [13] The same is true for the Samsung F700 device and Mobile UX presentation.  Both of these
    documents were produced on February 3, 2012 from the files of Hyoung Shin Park.  (Martin Decl.
27  ¶ 8.)  Samsung identified Ms. Park as the creator of prior art designs in initial disclosures served as
    early as September 7, 2011.  (Martin Decl. Ex. 5 at 5.)  Apple deposed Ms. Park twice,
28  questioning her extensively about F700.  (Martin Decl. Ex. 6, Park Tr. at 7 – 63.)

**(b)    Samsung's Arguments Regarding Lack of Distinctiveness**

As Apple admits, Samsung disclosed in September 2011 that its arguments regarding lack of distinctiveness were based on other smartphone and tablet computer products available on the market. (Motion at 19.) Apple apparently faults Samsung for not identifying which specific smartphones and tablets have a rectangular shape, rounded corners and a transparent surface among the continuous new waves of products that characterize the smartphone and tablet market. Apple's own pre-Complaint presentation to Samsung, however, shows that it has long been aware of numerous phones that embody Apple's conception of the iPhone and iPad trade dress, and that it views most Android devices as essentially interchangeable in this regard. (Martin Decl. Ex. 9 at 21.) Moreover, almost all of the products identified by Mr. Sherman and Mr. Lucente as undermining Apple's claim of distinctiveness were explicitly called out in numerous third-party subpoenas. (Martin Decl. ¶ 14, Ex. 10.)

**(c)    Samsung's Indefiniteness Theories**

Throughout the discovery period, Apple was well aware of Samsung's claims of indefiniteness for the D'889, D'677, and D'087 patents, as shown by the numerous questions asked at the depositions of Apple's own witnesses. For example, Samsung extensively questioned Apple's witnesses about the figures in the Apple design patents patent, establishing its basis for claiming these patents are ambiguous. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ Throughout discovery, Apple has been on notice of the bases for Samsung's invalidity defense. Apple cannot now—after defending its witnesses on this topic—suddenly argue that it was unaware of Samsung's indefiniteness defense, or that it was surprised by the opinions offered by Messrs. Sherman, Godici and Anders.

**(d)    Samsung's Non-Infringement Theories**

Apple complains that Samsung's December 19, 2011 response to Interrogatory No. 11 relied on "boilerplate" non-infringement language. Apple has no basis to complain about the

1  sufficiency of this response.  Apple used nearly identical "boilerplate" language ████████

2  ████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████████

5  The *only difference* is that Apple ████████████████████████████████████████

6  ████████████████████████████    Samsung therefore made known its non-infringement theories with

7  the same level of specificity as Apple's infringement contentions.

8         Moreover, as Apple acknowledges, Samsung disclosed the majority of its non-

9  infringement contentions in connection with its Opposition to Apple's Motion for Preliminary

10  Injunction.  Apple therefore has long been aware of these theories.  Apple apparently objects to

11  Samsung's experts taking *the same or substantially the same* non-infringement theories and simply

12  applying them to products that were not at issue in the preliminary injunction phase.  Apple is

13  clearly overreaching in its request.  To the extent that Samsung's expert deviate from the theories

14  asserted in opposing Apple's preliminary injunction motion, those deviations are insubstantial.

15  *DataTreasury*, 2010 WL 3912486 at *4 (denying motion to strike expert opinion that did not

16  "substantially deviate" from infringement contentions.)[14]

17         **(e)    Samsung's Argument That Apple's Design Patents Should Be Construed Narrowly**

18

19         Apple's asserted design patents must be narrowly construed in light of other Apple design

20  patents embodied by the iPhone and iPad.  Samsung articulated this theory no later than January

21  31, in its Motion to Compel Apple to Respond to Samsung's Requests For Admission 101-190.

22  (Dkt. No. 700.)  That motion made clear Samsung's intent to rely on other Apple design patents in

23  arguments about the scope of Apple's design patents—indeed, that was the whole purpose of the

24  motion, as Apple well knows.  Samsung's motion even identified specific design patents which

25  Samsung contends are relevant to the proper construction of Apple's asserted patents.  In case

26  _____

27  [14] Apple further objects to Samsung's experts comparing the Apple patents to prior art in their
non-infringement analysis.  Yet Samsung advanced this theory in opposing Apple's preliminary
injunction motion and, as described above, made known the prior art references through discovery
and in writing, in compliance with Rule 26(e)(1).

28

there was any doubt, Samsung *again* moved to compel documents relating to other Apple design patents—this time applications for the iPad 2—on the basis that they were relevant to the construction of Apple's asserted patents.  (Dkt. 781.)  Apple's claim of surprise in response to Samsung's theory that Apple's patents must be narrowly construed is simply not credible.

### 3.    Any Failure To Supplement's Samsung's Interrogatory Responses Was Harmless

Apple's claims of prejudice rest on a delay of just *nine days.*  Apple asserts it was prejudiced because Samsung supplemented its interrogatory responses on March 19 instead of March 10, when Apple served its contention interrogatory responses.  This is absurd.[15]  *Cf. Genentech, Inc. v. Trustees of Univ. of Penn.*, 2012 WL 359724 (N.D. Cal. Feb. 2, 2012) ("delay of one week is hardly sufficient to warrant striking the reports and the references from the [plaintiff's expert] report."); *Figueroa v. Smith*, 2007 WL 1342485, *1 (N.D. Cal. May 7, 2007) (one-week delay in serving expert reports was harmless where opposing party still had two weeks to prepare for expert's deposition).

First, Apple claims it was prejudiced in its ability to prepare for and conduct certain third-party depositions.  (Motion at 16.)  Apple would have suffered this alleged "prejudice" even if Samsung had supplemented its responses on March 10.  Every one of the third-party depositions identified in Apple's motion—and all third-party depositions relating to Apple's design patents— occurred *before* March 10.  (Martin Decl. ¶ 25.)  Accordingly, the fact that Samsung supplemented its interrogatory responses on March 19, as opposed to March 10, had no effect whatsoever on Apple's preparation for third-party depositions.

Apple also asserts that it was prejudiced in that its experts did not know the precise details of Samsung's invalidity and non-infringement defenses sufficiently in advance of the deadline for

---

[15] The lack of prejudice to Apple is particularly apparent with respect to Samsung's arguments regarding non-infringement, indefiniteness, and the effect of Apple's other design patents on the scope of the patents in suit.  Each of these issues turns almost entirely on how Judge Koh construes Apple's design patents.  Judge Koh has ordered the parties to submit claim construction briefs on June 12, 2012, and will hold a claim construction hearing on July 18, 2012.  (*See* Dkt. 901 at 1-2.)  Samsung's articulation of its position on these issues in its March 19 supplemental responses left Apple with ample time to formulate its claim construction position and depose Samsung's experts on their opinions.  Apple therefore suffered no prejudice in these regards.

expert reports.[16]  Yet even this "prejudice" is insubstantial.  Samsung supplemented its interrogatory responses nearly three weeks before the deadline for rebuttal expert reports, leaving Apple with every opportunity to prepare rebuttal expert reports if it believed it necessary.[17]  Apple could have sought Samsung's agreement or the Court's leave to allow Apple to submit supplemental reports, but did not do so.

### C.   Samsung's expert opinion on damages should not be struck

#### 1.   Apple's Attempt to Strike Mr. Wagner's Supplemental Report Should Be Rejected

Apple's attempt to exclude Mr. Wagner's supplemental report should fail.  Apple first argues that the Court's April 23, 2012 Order precluded Mr. Wagner's supplemental report.  Not so.  When Apple moved for sanctions regarding Samsung's financial production, it sought to preclude Samsung from relying on any Samsung financial document produced after February 3, 2012.  (Dkt. No. 759-3, ¶¶ 2,4.)  The Court, however, rejected Apple's argument that Samsung acted in "bad faith or willful disobedience," and rejected the requested "full range of sanctions." (Dkt. No. 880, at 15.)  Instead, the Court concluded that only "narrowly tailored evidentiary sanctions are appropriate," compelling the production of additional financial documents and limiting the time Samsung could depose Mr. Musika.  (*Id.*)  The Court did *not* preclude Samsung or its experts from relying on the additional financial information or from responding to Mr. Musika's 147-page supplemental report.

Mr. Wagner's supplemental report is also consistent with – indeed *required by* – the Federal Rules.  The Federal Rules of Civil Procedure require the service of a supplemental expert

---

[16]   Apple's claimed need for detailed information regarding non-infringement, anticipation and obviousness is inconsistent with representations it has made to Judge Koh.  Apple has stated that "it does not take an ordinary observer . . . more than two minutes to make the comparison and distinguish or fail to distinguish an accused device."  (*See* Dkt. 910-1 at 1.)  Apple now claims, however, that its own experts needed nearly two weeks to evaluate Samsung's comparisons of Apple's patents with accused products and/or the prior art.  Apple can't have it both ways.

[17]   *Lupin*, 2011 WL 1897322 at *4-5 (finding lack of prejudice from defendant's disclosure of new invalidity contentions in expert reports where plaintiff still had the opportunity to address the arguments in rebuttal reports.)  Apple had more than a month to prepare for expert depositions, and in fact deposed Samsung's experts about the very opinions and references it now seeks to strike.  *Power Integrations*, 763 F. Supp. 2d 671, 691-92 (D. Del. 2010) (defendant was not prejudiced by infringement theory articulated for the first time in expert's rebuttal report because there was "sufficient time remaining to permit [the expert] to be deposed on all of his opinions.")

report if the original report becomes "in some material respect . . . incomplete."  Fed. R. Civ. P.

26(a)(2)(E) and (e).  Mr. Wagner served a supplemental rebuttal report because the following new

data became available: (1) Samsung's April 30 financial production; (2) Apple's May 8, 2012

production of updated financial information; and (3) Mr. Musika's extensive supplement to his

opening report.  This new data rendered Mr. Wagner's original report "incomplete."

Apple's motion to strike Mr. Wagner's supplemental report is a sharp departure from its

position at the April 9, 2012 hearing on its sanctions motion.  There, Apple's counsel argued that

the Court should *compel* Samsung's experts to serve supplemental reports, stating, "any kind of

expert on the Samsung side that does damage analysis *should be required to file a supplemental

report*."  (Ward Dec., Ex. CC, April 9, 2012 Hrg. Tr. at 103:10-14 (emphasis added).)  Indeed,

Apple itself has served *two* supplemental expert damages reports *after* the applicable deadlines, on

April 26, 2012.  (Ward Dec., ¶ 31.)

The Court should also reject Apple's attempt to preclude Mr. Wagner's supplemental

report because its service was harmless.  Among the factors to consider in evaluating harmlessness

are:  "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of

that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or

willfulness involved in not timely disclosing the evidence."  *Dominguez v. Excel Mfg., Inc.*,

2010 WL 5300863, at *2 (N.D. Cal. Dec. 20, 2010).  None of these factors favor preclusion here.

There was no prejudice or surprise.  Mr. Wagner's supplemental report was served *before*

Apple deposed Mr. Wagner and *before* Samsung deposed Mr. Musika.  (Ward Dec., ¶ 32.)

Indeed, Apple's counsel specifically questioned Mr. Wagner about the supplemental report.

(Ward Decl. Ex. DD, Wagner Tr., at 261:18-265:24; 458:10-14).  *Dominguez*, 2010 WL 5300863,

at *2 (no prejudice where undisclosed expert was deposed on relevant issues).  In contrast to Mr.

Musika's 147-page supplement, Mr. Wagner's modest 24-page supplement is limited and focused,

based on the same April 30 financial information underlying Mr. Musika's supplement.  The trial

schedule was not disrupted, Samsung served Mr. Wagner's supplement just three days after

receiving Mr. Musika's supplemental report, and Mr. Wagner's supplement occasioned no

discovery delays.  There was no bad faith or willfulness involved.  Finally, the public policy

favoring disposition of cases on their merits strongly favor allowing the admission of

Mr. Wagner's supplemental report.  *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir.

1997) (reversing trial court's decision to preclude expert testimony).

### 2. Apple's Attempt To Strike One of Mr. Wagner's Damages Models Should Be Rejected

The Court should reject Apple's attempt to exclude Tab 6 to Mr. Wagner's April 16th

rebuttal report for similar reasons.  The data on which Tab 6 is based ("the Tab 6 data") was

produced two weeks *before* the Court's deadline for producing additional financial documents ,

three weeks *before* Mr. Musika's supplemental report, and one month *before* both Mr. Wagner's

and Mr. Musika's depositions.  Apple thus had more than enough time to incorporate this

information into Mr. Musika's supplemental report and to prepare to question Mr. Wagner about

it, ████████████████████████████████████████ ██ ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████          Thus, there is no prejudice occasioned by Samsung's April 16 production, and

even if there was, Apple had ample opportunity to cure it.  *Dominguez*, 2010 WL 5300863, at *2

(no prejudice where undisclosed expert was deposed on relevant issues).[18]

---

[18]   Apple half-heartedly complains that it did not have the opportunity to depose unspecified witnesses about the Tab 6 data.  This falls far short of demonstrating prejudice.  Apple identifies no errors or ambiguities in the data that necessitated the deposition of a Samsung witness.  Apple never requested the opportunity to conduct additional discovery regarding the data, nor does it explain why its deposition of Mr. Wagner was insufficient to alleviate any purported prejudice. Finally, Apple's request for an additional deposition concerning any Samsung financial information produced as a result of Apple's sanction motion was denied by the Court.  (Dkt. No. 880, at 15-16.)

1   DATED: May 31, 2012          Respectfully submitted,

2                                QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP
3

4                                  By /s/ Victoria F. Maroulis
5                                     Charles K. Verhoeven
                                      Kevin P.B. Johnson
6                                     Victoria F. Maroulis
                                      Michael T. Zeller
7                                     Attorneys for SAMSUNG ELECTRONICS CO.,
                                      LTD., SAMSUNG ELECTRONICS AMERICA,
8                                     INC. and SAMSUNG
                                      TELECOMMUNICATIONS AMERICA, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28