# EXHIBIT 3

**CONTAINS INFORMATION DESIGNATED AS SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Counterclaim-Plaintiffs,<br><br>    v.<br><br>APPLE INC., a California corporation,<br><br>    Counterclaim-Defendant. | Civil Action No. 11-CV-01846-LHK |

**Expert Report of Mani Srivastava, Ph.D.**
**Regarding Invalidity of the Asserted Claim of U.S. Patent No. 7,577,460**

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

46. According to claim 20 and the relevant sections of the In-House Invention Notification Form, when the user requests transmission of an E-mail while in the "Cellphone Use Mode" (APLNDC-WH-A 0000019741), or in the "Playback Mode" (APLNDC-WH-A 0000019743), the device enters an "E-Mail Transmission Mode". In either case, the device enters the same E-Mail Transmission Mode (APLNDC-WH-A 0000019744) where the user first enters the other party's address, followed by a message. An image can be attached, if desired, before the email is transmitted. Claim 20 describes the method for a user to send an E-mail, with a user following one sequence of steps to send the E-mail, if the E-mail has an image attached, and a different sequence of steps, if the E-mail does not have an image attached.

B.   **Specification of the Patent**

47. The '460 patent is entitled "Portable Composite Communication Terminal For Transmitting/Receiving And Images, And Operation Method And Communication System Thereof." ==The '460 patent is directed to a particular method for transmitting E-mails from a portable device combining both phone and camera functions, where an E-mail may include a user entered message and optionally an image selected by the user.== ('460, Col. 14, ll. 24-44.)

48. The patent purports to teach a particular method for a user to send an e-mail on a portable device that integrates phone and camera functions. The user follows a different sequence of steps depending on whether or not the E-Mail has an image attached to it. If the camera is on, the user can send an E-Mail with an attached image. The attached image can either be the most recent image taken by the camera or an image selected via a scrolling function from among those previously taken. If the camera is off, the user can send an E-Mail without an attached image.

49. Figure 6 of the '460 patent illustrates how the device enters a Portable Phone Mode 602, upon power up. ('460, Col. 9, ll. 19-21.) While in the Portable Phone Mode 602, the user can request E-mail transmission and turn the camera on or off. ('460, Col. 9, ll. 45-47.) If the user requests E-mail transmission, the device transitions to the E-Mail Transmission Sub-mode 610. ('460, Col. 9, ll. 42-44.) If the user turns the camera on, the device enters the

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

1  Camera Mode 614.  ('460, Col. 9, ll. 45-49.)  Within the Camera Mode 614, the user can enter
2  either a Photography Sub-mode 624 or a Play Sub-mode 626, depending on whether the
3  Photography/Play key was pressed once or twice.  ('460, Col. 9, ll. 55-63.)

4         50.     Figure 8 of the '460 patent shows the Play Sub-mode 626.  The Play Sub-mode
5  can be reached from the Camera Mode 614.  ('460, Col. 9, ll. 59-61.)  Within this sub-mode, the
6  device displays the latest still image on the color LCD.  ('460, Col. 10, ll. 45-47.)  The user can
7  take multiple actions.  First, the user can change the image being displayed by pressing the
8  up/down volume key, thereby scrolling in sequence through the set of previously filmed images.
9  ('460, Col. 10, ll. 51-58.)  While doing so, the user can also switch to the Photography Sub-mode
10 624 by pressing the Photography/Play key.  ('460, Col. 10, ll. 59-64.)  Secondly, the user can
11 request the transmission of the displayed image by E-Mail, upon which the device transitions to
12 the E-Mail Transmission Sub-mode 610.  ('460, Col. 11, ll. 7-9.)  Third, the user can turn the
13 camera switch off, upon which the device goes back to the Portable Phone Mode 602. ('460, Fig.
14 8.)  Lastly, the user can power off the device from within the Play Sub-mode 626.  ('460, Col.
15 11, ll. 11-16; Fig. 8.)

16        51.     Figure 9 of the '460 patent shows the E-Mail Transmission Sub-mode.  In this
17 sub-mode, the device first requests entry of the other party's address. ('460, Col. 12, ll. 4-7; Fig.
18 9.)  Once the address is entered, the device then requests that the user enter the message to be
19 sent. ('460, Col. 12, ll. 7-14.)  Then, the device displays a question asking whether an image is
20 to be enclosed. ('460, Col. 12, ll. 15-17.)  If the user presses an image enclosure key, the device
21 performs a control operation to attach an image file to the E-mail.  ('460, Col. 12, ll. 17-19.)
22 However, if the user presses the send key in lieu of the image enclosure key, the device first
23 determines whether there is an image to be attached based on whether the E-Mail Transmission
24 Sub-mode was entered from the Play Sub-mode or the Portable Phone Mode.  ('460, Col. 12, ll.
25 15-51; Fig. 9.)  The device next transmits the E-Mail, displays a message upon completion, turns
26 off the power to the camera unit, and transitions to the Portable Phone Mode 602.  ('460, Col. 12,
27 ll. 52-57.)
28

1  Invention Notification Form.  I have not seen any evidence indicating that Samsung inventors
2  conceived or reduced to practice the alleged invention of the '460 patent prior to that date.

**X.     Prior Art Anticipates the Asserted Claims of the '460 Patent**

61.     Nothing stated here or in the attached claim charts should be construed as an admission or suggestion that I agree with Samsung regarding either the scope of the asserted claim or the claim constructions Samsung advances in its Infringement Contentions or anywhere else.  To the extent that my invalidity analysis reflects constructions of claim limitations consistent with or suggested by Samsung's Infringement Contentions, no inference is intended nor should any be drawn that I agree with Samsung's claim constructions.  Likewise, it is my opinion that the claims of the '460 patent are indefinite, for the reasons articulated below.  Nothing stated here or in the attached claims charts should be construed as an admission or suggestion that I believe the claims of the '460 patent are not indefinite.  I offer these opinions as alternative grounds for invalidating the '460 patent, if the fact finder were to disagree with my opinion that the claims are indefinite.

62.     I understand that Samsung has provided no construction for any term for this patent other than "plain meaning."  I, likewise, have concluded that the elements of the claims of the '460 patent should receive their "ordinary meaning."  From Samsung's infringement contentions, however, it is apparent that my understanding of the plain meaning of certain claim elements differs from Samsung's.  In those instances where I understand there to be a difference, I have endeavored to set forth my understanding and what I believe to be Samsung's in this report.  To the extent that Samsung's expert's infringement report uses a "plain meaning" different from the meaning employed in Samsung's infringement contentions as I have described it below, I reserve the right to supplement this report to respond to Samsung's most current construction.

63.     Under the plain meaning of the asserted claims of the '460 patent, it is my opinion that Apple's accused products do not infringe those claims.  In this report I specifically point out the claim terms where I believe Samsung's apparent claim constructions based on Samsung's

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

Infringement Contentions deviate from plain meaning. Specifically, I believe Samsung's apparent construction of "mode" and "sub-mode" deviates from the plain meaning to include applications (also known as "apps") within the meaning of "mode" and "sub-mode." Samsung's apparent construction of "mode" and "sub-mode" does not distinguish those claim terms. ==My understanding of the plain meaning of the term "mode" is a distinct state of operation or setting of a device or of an application. My understanding of the plain meaning of the term "sub-mode" is a mode that is subordinate to a higher level mode, and has a restricted or specialized set of functionality.== Except as expressly specified in this report, all invalidity arguments are applicable under both my understanding and Samsung's understanding of the terms "mode" and "sub-mode." The indefiniteness analysis presented below applies regardless of whether my understanding or Samsung's understanding of the terms "mode" and "sub-mode" is assumed. These statements apply equally to the analysis contained in the body of my report and the attached claim charts even if not expressly stated in the charts (Exhibits 3A-3B, 4A-4F, 5A-5G, 6A-6C, 7A-7C, 8A-8C, and 9). I have provided claim charts as Exhibits 3A-3B, 4A-4F, 5A-5G, 6A-6C, 7A-7C, 8A-8C, and 9 that identify where the elements of the asserted claims are found in various prior art references. I have attached the claims charts as exhibits to this report for ease of reference, but it should be understood that they are part of this Report, and are expressly incorporated into the Report.

64.     Although I have cited particular portions of the references discussed, these citations are intended to assist the reader in understanding the various bases and prior art teachings used in my conclusions. They are not intended to be an exhaustive recitation of every portion of these references in which these teachings may be found. A person of ordinary skill in the art would understand that the citations are merely exemplary, and that similar teachings may be found at other pages or places in the references discussed, as well as in other prior art references.

    A.     Claim 1 of the '460 Patent is Anticipated by U.S. Patent No. 6,069,648 to Suso *et al.*

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

       **1.**      **Description of U.S. Patent No. 6,069,648 to Suso** *et al.*

65.    U.S. Patent No. 6,069,648 to Suso et al. was filed on August 14, 1998, and issued on May 30, 2000 ("the '648 patent"). The '648 patent is entitled "Information communication terminal device." It was assigned to Hitachi, Ltd.

66.    The '648 patent describes a communication device integrating a portable telephone with a camera. Of relevance to the '460 patent, the device described in the '648 patent allowed the user to make voice phone calls; capture, store and transmit images to another device; and select one of the various previously filmed and stored images by sequentially scrolling through them via cursor keys ('648 patent, Figure 7).

67.    The '648 patent relates "to an information communication terminal device having a video camera and, more particularly, an information communication terminal device which is convenient to carry and has a plurality of functions." ('648 patent, col. 1, 5-9.)

68.    The '648 patent further discloses "there is also provided a mode selection button which can select a recording mode, a transmission/reception mode, and an information acquisition mode. When the recording mode is selected, a video image obtained by the video camera is displayed in the first display/operation part and an image stored in an image storing means is displayed in the second display/operation part. When the transmission/reception mode is selected, if the other side of transmission is a telephone of only voices, character information such as name, telephone number, and the like of the other side is displayed in the first display/operation part and operating means such as dials having the function of the touch panel is displayed in the second display/operation part. When the other side of transmission is a television telephone, an image obtained by the video camera and an image of the other side are displayed in the first display/operation part and the second display/operation part is used as an input section of character and figure data. When the information acquisition mode is selected, the menu of the information service is displayed in the second display/operation part and the information contents of the service selected from the menu are displayed in the first display/operation unit." ('648 patent, col. 1 l. 47 – col. 2 l. 12.)

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

69. In particular the '648 states: "[i]n FIG. 8b, by touching the handwriting memo button 26b, a part of the display/operation part 5 becomes a picture plane of a memo and notes can be taken in the part. In this case as well, by touching the transmission button 24a, the memo can be transmitted to the other side." ('648 patent, col. 7, 51-55.)

70. The '648 patent further provides that: "[b]y touching the attachment button 26a, the data is read out and a child picture plane is displayed (sum nail [*sic*—thumbnail] display) in a proper place in the display/operation part 5. By touching cursor/scroll buttons 26c, the data displayed in the child picture plane can be scrolled. By adjusting the cursor on desired data and touching the transmission button 24b, the data can be transmitted to the other side." ('648 patent, col. 7, 42-49.)

### 2. Opinions Regarding the '648 patent

71. I was informed and understand that the '648 patent qualifies as prior art because it was filed on August 14, 1998 ('648 patent, cover page), which is prior to the date of the In-House Invention Notification Form (February 11, 1999) and the filing date of the Korean priority patent application (March 31, 1999).

72. It is my opinion that the '648 patent anticipates claim 1 of the '460 patent. The claim chart attached as Exhibit 3A sets forth in detail how the '648 patent anticipates claim 1. The claim chart shows that the '648 patent discloses a device that functions as described by the asserted claim in Samsung's '460 patent.

73. The '648 patent discloses a device operable to perform a data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera. (*See, e.g.*, '648 patent, col. 1 ll. 5 – 9, col. 1 l. 47 – col. 2 l. 12, and FIGS. 1a and 6–8b.)

74. The '648 patent discloses entering a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone function. (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

75. The '648 patent discloses entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode. (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

76. The '648 patent discloses sequentially displaying other images stored in a memory through the use of scroll keys. (*See, e.g.*, '648 patent, col. 6 ll. 8–10, col. 7 ll. 37–49, and FIGS. 7 and 8a–8b.)

77. The '648 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode. (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

78. The '648 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode. (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

**B.   Claim 1 of the '460 Patent is Anticipated by the Nokia 9110 Communicator[1]**

**1.   Description of the Nokia 9110 Communicator**

79. The Nokia 9110 Communicator is a device that integrated voice, fax, E-mail, texting, calendar, notebook, address book, calculator functionalities, and internet service access. It also provided viewing and sharing with others via E-mail images captured through digital cameras connected via an infrared wireless link. A digital camera connectivity application enables the transfer of images between the communicator and a digital camera module. (*See, e.g.*, Nokia 9110 Communicator User's Manual (1998), APLNDC-WH0000005243; Digital Camera Connectivity with Nokia 9110 Communicator (January 26, 1999), APLNDC-WH0000005318 to 5321.)

---

[1] Nokia 9110 Communicator mobile phone, together with the Nokia 9110 Communicator User's Manual (1998), APLNDC-WH0000005113 to 5302 ("Nokia 9110 Communicator User's Manual") and the Digital Camera Connectivity with Nokia 9110 Communicator (January 26, 1999), APLNDC-WH0000005318 to 5321 ("Nokia 9110 Communicator Digital Camera Connectivity"), collectively ("Nokia 9110 Communicator").

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

80. Specifically relevant to the '460 patent, the Nokia 9110 Communicator provided the user with a "Telephone" application for making and managing voice calls, and a "Mail" application for sending and receiving electronic emails using the Internet. The Mail application allowed the user to optionally include file attachments, and in particular permitted the user to scroll through a list of image files downloaded from the camera module and select one for inclusion as an attachment to an email.

81. The Nokia 9110 Communicator was "a complete communications tool," and consisted of two parts: the phone and the communicator interface.



Congratulations on purchasing the Nokia 9110 Communicator. The Nokia 9110 Communicator is a complete communications tool: it is a wireless phone, messaging device, access terminal and a palmtop organiser in one pocketable package.

Figure 1

(Nokia 9110 Communicator User's Manual pp. 11–12.)

The Nokia 9110 Communicator consists of two parts: the phone and the communicator interface. The phone is on the device cover (figure 1) and the communicator interface is under the cover (figure 2).



Figure 2

(Nokia 9110 Communicator User's Manual pp. 11–12.)

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

82.  The Nokia 9110 further offered digital camera connectivity:



(Nokia 9110 Digital Camera Connectivity p. 1.)

83.  The Nokia 9110 further offered Internet applications, including transmitting emails:

(Nokia 9110 Communicator User's Manua, p. 85.)

- 27 -

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

84.     The Nokia 9110 also enabled users to review selected images and send images as email attachments:

> Sending image as an email attachment:
>
> First write the email and choose *Recipient* (or enter address). Then press *Attachment* from the right side of the display, then press *Add* and choose the downloaded files folder. Select the image from the list. After you have selected the image(s) you can see them in the list of attachments. Then press *Close* and now you can send the mail by pressing *Send* from the right side of the display

(Nokia 9110 Communicator Digital Camera Connectivity, pp. 2–3.)

### 2.     Opinions Regarding the Nokia 9110 Communicator

85.     I was informed and understand that the Nokia 9110 Communicator qualifies as prior art because the product and its camera connectivity were described in printed publications no later than April 5, 1998. (Nokia introduces its second generation communicator, Dow Jones Factiva Press Release Service (March 18, 1998) (APLNDC-WH-A0000026939-941); Nokia introduces its second generation communicator (March 18, 1998), available at http://press.nokia.com/1998/03/18/nokia-introduces-its-second-generation-communicator-the-pocket-sized-nokia-9110-communicator-combines-an-ultimate-mobile-office-with-a-superb-phone/ (APLNDC-WH-A-0000005309-310, APL794-A0000021463-464); Nokia introduces its second generation communicator, M2 Presswire (March 20, 1998) (APLNDC-WH-A0000026942-943); Latest version of Nokia 9110 GSM phone can Tx images/store 4MB data, Observer Station - The World Communications News Report (April 5, 1998) (APLNDC-WH-A0000026944).)   Furthermore, the Nokia 9110 Communicator also qualifies as prior art because it was offered for sale and provided connectivity to a camera no later than January 26, 1999 (APLNDC-WH0000005113-302, APLNDC-WH0000005318-321, APL794-A0000021463-464, APL794-A0000005309-310, APL794-A0000005305-308), which is prior to the date of the In-House Invention Notification Form (February 11, 1999) and the filing date of the Korean priority patent application (March 31, 1999).

86.     It is my opinion that, under Samsung's interpretation of "mode" and "submode" to include apps, the Nokia 9110 Communicator anticipates claim 1 of the '460 patent. For my

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

analysis of the Nokia 9110 Communicator, I apply Samsung's apparent claim construction for the terms "mode" and "sub-mode" based on Samsung's Infringement Contentions, and apply plain meaning to the rest of the claim terms. The claim chart attached as Exhibit 3B sets forth in detail how the Nokia 9110 Communicator anticipates claim 1. The claim chart shows that the Nokia 9110 Communicator is a device that functions as described by the asserted claim in the '460 patent.

87. The Nokia 9110 Communicator mobile phone performs a data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera. (*See, e.g.*, Nokia 9110 Communicator User's Manual pp. 11–12; Nokia 9110 Digital Camera Connectivity p. 1.)

88. The Nokia 9110 Communicator mobile phone enters a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone function. (*See, e.g.*, Nokia 9110 Communicator User's Manual pp. 85 and 89.)

89. The Nokia 9110 Communicator mobile phone enters a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode. (*See, e.g.*, Nokia 9110 Communicator Digital Camera Connectivity pp. 1-3.)

90. The Nokia 9110 Communicator mobile phone sequentially displays other images stored in a memory through the use of scroll keys. (*See, e.g.*, Nokia 9110 Communicator User's Manual pp. 24-25; Nokia 9110 Communicator Digital Camera Connectivity pp. 2–3.)

91. The Nokia 9110 Communicator mobile phone transmits the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode. (*See, e.g.*, Nokia 9110 Communicator User's Manual pp. 89 and 92-93.)

92. The Nokia 9110 Communicator mobile phone transmits the address of the other party and the message received through the user interface and the image displayed on the display

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.*, Nokia 9110 Communicator User's Manual pp. 89 and 92-93; Nokia 9110 Communicator Digital Camera Connectivity p. 2.)

## XI. The Prior Art Rendered Obvious the Asserted Claims of the '460 Patent

93. As I explained above, it is my opinion that the '648 patent and the Nokia 9110 Communicator anticipate claim 1 of the '460 patent.  To the extent that any of the prior art references discussed above is found not to disclose one or more limitations of claim 1 of the '460 patent, claim 1 would have been obvious over the teachings of each of the Nokia 9110 Communicator and the '648 patent, in combination with the knowledge of one of ordinary skill in the art as explained below.

94. As I explain in detail below, multiple combinations of prior art references render obvious claim 1 of the '460 patent.

95. In the Background section (Section VI), I provided a general background description of the state of the art in the 1998-1999 timeframe and before.  That description provides exemplary disclosure of what one of ordinary skill in the art would have known at the time of the alleged conception date of the '460 patent and the filing date of the Korean priority patent application.

### A. The Concepts of the Claimed Invention Were Well Known and Obvious at the Time of Conception

96. As described in detail in the Background section (Section VI), the integration of phone, camera, data communication functions such as E-mail, and various computing functions were well underway before "between early 1998 and February 11, 1999," which is the date that Samsung alleges as the conception date of the '460 patent. (Complainant Samsung's Second Supplement Response and Objections to Respondent Apple Inc.'s Third Set of Interrogatories (No. 8), at page 7, line 27 - page 8, line 3.)

#### 1. Reasons to Combine These Concepts To Achieve Expected Results

97. The convergence of these functions was well underway before the conception of the '460 patent, and devices that realized different combinations of these functions had emerged.

one email message, not two email messages, to the E-mail server 510, depending on the presence or absence of a still image.

### B. Conclusion

341. Thus, it is my opinion that the claim 1 of the '460 patent is invalid for lack of written description.

## XIV. Trial Exhibits

342. If called as a witness at trial, I may rely on visual aids and demonstrative exhibits that demonstrate the bases of my opinions. Examples of these visual aids and demonstrative exhibits may include, for example, claim charts, patent drawings, excerpts from patent specifications, file histories, interrogatory responses, deposition testimony and deposition exhibits, as well as charts, diagrams, videos and animated or computer-generated video.

343. Other than as referred to in this report, I have not yet prepared any exhibits for use at trial as a summary or support for the opinions expressed in this report, but I expect to do so in accordance with the Court's scheduling orders.

## XV. Compensation

344. I am compensated for my time at the rate of $425 for each hour of service that I provide in connection with this case. That compensation is not contingent upon my performance, the outcome of the case, or any issues involved in or related to this case.

## XVI. Previous Testimony

345. I have not provided testimony as an expert witness before.

## XVII. Supplementation of Opinions

346. I reserve the right to adjust or supplement my analysis in light of any critique of or comments on my report or alternative opinions advanced by or on behalf of Samsung.

Dated: March 22, 2012

_Mani B. Srivastava_
Mani Srivastava, Ph.D.