# EXHIBIT CC

1

2                 IN THE UNITED STATES DISTRICT COURT

3             FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

     APPLE, INC.,                    )  CV-11-1846-LHK
6                                    )
                      PLAINTIFF,     )  SAN JOSE, CALIFORNIA
7                                    )
               VS.                   )
8                                    )  APRIL 9, 2012
     SAMSUNG ELECTRONICS CO.         )
9    LTD., ET AL,                    )
                                     )  PAGES 1-189
10                    DEFENDANT.     )
     _____

11

12                  TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE PAUL S. GREWAL
13               UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:  MORRISON & FOERSTER, LLP
                         BY:  ALLISON TUCHER
17                            NATHAN SABRI
                             JOBY MARTIN
18                       425 MARKET STREET
                         SAN FRANCISCO, CA  94105
19

20   FOR THE DEFENDANT:  QUINN EMANUEL
                         BY:  VICTORIA MAROULIS
21                            SARA JENKINS
                         555 TWIN DOLPHIN DRIVE, 5TH FL
22                       REDWOOD SHORES, CA  94065

23        (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25   OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                              CERTIFICATE NUMBER 13185

1

```
1      FOR THE PLAINTIFF:  MORRISON & FOERSTER, LLP
                           BY:  ERIK OLSON
2                          755 PAGE MILL ROAD
                           PALO ALTO, CA 94304
3

4      FOR THE DEFENDANT:  QUINN EMANUEL
                           BY:  DIANE HUTNYAN
5                               ANTHONY ALDEN
                                CURRAN WALKER
6                          865 S. FIGUEROA ST., 10TH FLOOR
                           LOS ANGELES, CALIFORNIA 90017
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    SAN JOSE, CALIFORNIA          APRIL 9, 2012

2                   P R O C E E D I N G S

3              (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5              THE COURT:  MR. RIVERA, WOULD YOU CALL

6    MATTER ON THIS MORNING'S CALENDAR.

7              THE CLERK:  YES, YOUR HONOR.

8              CALLING APPLE INC. VERSUS SAMSUNG

9    ELECTRONICS.  CASE NUMBER CV-11-1846.

10             MATTER ON FOR APPLE'S RULE FOR 37 (B)(2)

11   MOTION AND SAMSUNG'S MOTIONS TO COMPEL.

12             COUNSEL, PLEASE STATE YOUR APPEARANCES.

13             MS. TUCHER:  GOOD MORNING, YOUR HONOR.

14             ALLISON TUCHER FROM MORRISON & FOERSTER

15   ON BEHALF OF APPLE, INC.

16             AND WITH ME TODAY IS MY PARTNER

17   ERIK OLSON AND NATE SABRI.

18             THE COURT:  GOOD MORNING, COUNSEL.

19             MS. MAROULIS:  GOOD MORNING, YOUR HONOR.

20             VICTORIA MAROULIS, COUNSEL FOR SAMSUNG.

21             WITH ME ARE MY PARTNERS DIANE HUTNYAN AND

22   ANTHONY ALDEN, AND OUR ASSOCIATE TEAM MEMBERS SARA

23   JENKINS WHO WILL BE ARGUING TODAY AND JOBY MARTIN

24   AND CURRAN WALKER.

25             THE COURT:  GOOD MORNING TO YOU AND YOUR

3

1    TEAM AS WELL, MS. MAROULIS.

2              ALL RIGHT, COUNSEL.  I HAVE ON MY

3    CALENDAR THREE MOTIONS.  A MOTION FROM APPLE FOR

4    SANCTIONS AND TWO MOTIONS TO COMPEL FILED BY

5    SAMSUNG.

6              BEFORE WE TURN TO THE SUBSTANCE OF THE

7    THREE MOTIONS I WANTED TO JUST BETTER UNDERSTAND A

8    COUPLE OF LATE SUBMISSIONS THAT I RECEIVED ON

9    FRIDAY AND OVER THE WEEKEND.

10             MS. MAROULIS, I WILL START WITH YOU, WITH

11   YOUR INDULGENCE.

12             COULD YOU EXPLAIN TO ME WHY MY STAFF WAS

13   ASKED TO CONSIDER PAPERS FILED ON A SATURDAY BEFORE

14   A MONDAY HEARING?

15             MS. MAROULIS:  YOUR HONOR, WE APOLOGIZE

16   FOR LATE SUBMISSION.  THERE ARE TWO SEPARATE

17   THINGS.

18             ONE WAS OUR IN CAMERA SUBMISSION OF

19   TRANSCRIPTS.  AND WHAT WE ARE HOPING TO DO IS TO

20   NEGOTIATE WITH APPLE SUBMISSION OF THE TRANSCRIPTS

21   ON THE RECORD SO THEY ARE PART OF THE RECORD.  AND

22   WE WEREN'T ABLE TO DO SO, SO APPLE IS REFUSING TO

23   PROVIDE THEM BUT WAS WILLING TO PROVIDE THEM IN

24   CAMERA.

25             SO WE THOUGHT FOR THE COURT TO FULLY

1      CONSIDER THE MOTION AFTER THE HEARING AND THE

2      PLEADINGS THE COURT WOULD NEED TO ACTUALLY CONSULT

3      THE DEPOSITIONS.

4              WITH RESPECT TO THE SANCTIONS MOTION, WE

5      HAD SEVERAL LATE DEPOSITIONS ON THE 30TH AND 31ST

6      THAT WERE PART OF YOUR HONOR'S PRIOR ORDERS OF --

7              THE COURT:  SO OVER, I DON'T KNOW 9,

8      10 DAYS AGO.

9              MS. MAROULIS:  YOUR HONOR, ABOUT A WEEK.

10     AND WE DID NOT GET THE TRANSCRIPTS UNTIL THE 2ND OR

11     3RD OF APRIL.  SO WE PUT TOGETHER THE SUBMISSIONS

12     AS QUICKLY AS WE COULD AND WE THOUGHT IT WOULD BE

13     MORE APPROPRIATE TO GIVE NOTICE TO APPLE BY FILING

14     THEM RATHER THAN BRING THIS MATTER UP AT THE

15     HEARING.

16             THE COURT:  COULDN'T THAT HAVE BEEN DONE

17     BEFORE THE SATURDAY BEFORE THE HEARING?

18             MY ONLY POINT IS MY OPPORTUNITY TO

19     PROPERLY CONSIDER THE PAPERS, TO SAY NOTHING OF THE

20     OPPOSING PARTIES, IS PRETTY LIMITED.

21             AND I WOULD JUST THINK SOMETHING FILED ON

22     A SATURDAY BEFORE A MONDAY MORNING HEARING ISN'T

23     REALLY GIVING ME A FULL AND FAIR OPPORTUNITY TO

24     CONSIDER EVIDENCE THAT'S NOW ON THE RECORD AND I

25     WILL JUST HAVE TO INFORM MY DECISION.

1          SO I'M MERELY MAKING THE OBSERVATION.

2          WITH RESPECT TO THE REQUEST FOR IN CAMERA

3     HEARING, I UNDERSTAND THAT WAS IN CAMERA BECAUSE

4     APPLE HAS REFUSED TO PERMIT YOU TO FILE IT UNDER

5     SEAL; IS THAT CORRECT?

6          MS. MAROULIS:  THAT'S CORRECT,

7     YOUR HONOR.

8          AND AS WE ARE GOING TO ARGUE YOU WILL

9     HEAR FROM MS. HUTNYAN LATER, WE DON'T BELIEVE IT'S

10    APPROPRIATE BUT WE NEEDED TO PROVIDE IT TO THE

11    COURT.

12         THE COURT:  WHY IS APPLE OBJECTING TO

13    SUBMITTING MATERIALS UNDER SEAL?

14         MS. TUCHER:  YOUR HONOR, BECAUSE SAMSUNG

15    HAS TOLD US THAT IF THEY SUBMIT THESE MATTERS UNDER

16    SEAL IN THIS CASE, THEY THEN FEEL THEY ARE FREE TO

17    SHARE THEM WITH THEIR EXPERTS IN THIS CASE, AND

18    PRESUMABLY HAVING INFORMED OF THE OPINIONS THE

19    EXPERTS WOULD RENDER IN THE CASE, AND THAT'S IN

20    VIOLATION OF THE AGREEMENT BETWEEN THE PARTIES THE

21    DEPOSITIONS TAKEN IN THE ITC WOULD NOT BE

22    ADMISSIBLE AND USED IN THIS CASE IN ANY WAY.

23         THE COURT:  HOW WOULD A MOTION TO SUBMIT

24    UNDER SEAL JUSTIFY -- I HAVEN'T SEEN YOUR ITC

25    PROTECTIVE ORDER -- HOW COULD THAT POSSIBLY JUSTIFY

```
1    SHARING MATERIALS WITH INDIVIDUALS WHO AREN'T

2    OTHERWISE COVERED BY AN ORDER?

3             MS. TUCHER:  YOUR HONOR, WE DON'T THINK

4    THAT IT DOES AND MR. SABRI IS PREPARED IN ARGUING

5    THE MOTION TODAY TO ADDRESS THAT POINT WITH YOU

6    BECAUSE SAMSUNG HAS TOLD US THEY THINK IT DOES, WE

7    WANT TO MAKE CLEAR IN THE NEGOTIATIONS LEADING UP

8    TO THIS THAT WE WEREN'T AGREEING TO THAT.

9             WE DID OFFER, SO IF THEY FELT YOU NEEDED

10   TO SEE THE TRANSCRIPTS TO HAVE THE TRANSCRIPTS

11   MS. MAROULIS OBSERVES, THAT THEY COULD BE IN CAMERA

12   WITH YOU.

13            BUT ACTUALLY WE DIDN'T AGREE TO WHAT

14   HAPPENED OVER THE WEEKEND BECAUSE WHEN WE MADE THAT

15   OFFER THEY GAVE US A LIST.  WE ASKED FOR 24 HOURS

16   NOTICE OF WHATEVER IT WAS THEY WANTED TO SUBMIT IN

17   CAMERA AND THEY WROTE TO US BACK A BETTER SAYING

18   HERE'S THE LIST BUT WE REJECT YOUR OFFER.

19            WHAT THEY LODGED OVER THE WEEKEND IS

20   ACTUALLY A SET OF TRANSCRIPTS THAT'S MUCH LARGER OR

21   AT LEAST DIFFERENT INCLUDING SOME THAT WEREN'T ON

22   THEIR LIST AND OBVIOUSLY WE DIDN'T HAVE THE 24-HOUR

23   NOTICE.

24            THE COURT:  WELL, NORMALLY IN CAMERA

25   SUBMISSIONS ARE LIMITED TO SUBMISSIONS WHICH ONE
```

1    SIDE WISHES TO PRECLUDE THE OTHER SIDE FROM SEEING,

2    I THINK WE ALL UNDERSTAND THAT.

3            SO WHEN I RECEIVE WORD THAT I AM BEING

4    ASKED TO HANDLE DOCUMENTS IN CAMERA THAT NOT ONLY

5    YOU HAVE SEEN, YOU WERE THERE, WHY WOULDN'T YOUR

6    POSITION SIMPLY BE SUBMIT THEM UNDER SEAL BUT DON'T

7    SHARE THEM WITH YOUR EXPERTS?

8            MS. TUCHER:  YOUR HONOR, WE DID MAKE

9    CLEAR THAT THE MOST IMPORTANT THING TO US IS THEY

10   NOT BE SHARED WITH THE EXPERTS.

11           THE COURT:  SO YOU DON'T HAVE ANY

12   OBJECTION OR DIDN'T HAVE ANY OBJECTION OF THEM

13   SIMPLY FILING THEM UNDER SEAL?

14           MS. TUCHER:  AS LONG AS THEY ARE NOT

15   SHARED WITH THE EXPERTS.

16           MS. HUTNYAN:  YOUR HONOR, WE AGREED TO

17   THAT.  THIS IS THE FIRST TIME HEARING THAT IT WAS

18   NO PROBLEM.

19           THE COURT:  WELL, WHATEVER AGREEMENT WAS

20   REACHED OR NOT REACHED, I HAVE A BUNCH OF DOCUMENTS

21   SITTING IN CHAMBERS THAT AREN'T ON THE DOCKET THAT

22   AREN'T PROPERLY TRACKED.

23           I THINK YOU ALL ARE WELL AWARE THAT THE

24   SECRECY OF PROCEEDINGS IN THIS CASE HAS BEEN A

25   TOPIC OF SOME INTEREST TO SOME OUTSIDE OF THIS

8

```
 1    MATTER, AND I CAN'T IMAGINE A MORE DIFFICULT
 2    CHALLENGE FOR ANYONE OUTSIDE THIS COURT THAN
 3    GETTING ACCESS TO INFORMATION THAT'S SITTING IN MY
 4    CHAMBERS THAT ISN'T EVEN ON THE DOCKET.
 5              I ONLY MAKE ALL THESE POINTS TO EMPHASIZE
 6    THAT THIS CASE IS CHALLENGING ENOUGH AS IT IS
 7    WITHOUT HAVING TO HANDLE DOCUMENTS SUBMITTED ON THE
 8    WEEKEND IN CHAMBERS FORCING THIS COURT'S STAFF TO
 9    MANAGE THAT IS, I THINK, PUTTING THEM TO A TASK
10    THAT ISN'T NECESSARY TO THE RESOLUTION OF THESE
11    MATTERS.
12              MS. HUTNYAN:  YOUR HONOR, I COMPLETELY
13    AGREE, THAT'S WHY WE HAD A PROBLEM WITH THE IN
14    CAMERA SUBMISSION, WE THOUGHT IT WAS INAPPROPRIATE.
15              THE COURT:  WELL, WHY NOT SUBMIT ON
16    FRIDAY?  WERE THESE MATERIALS -- WERE YOU ONLY
17    AWARE OF THEIR SIGNIFICANCE ON A FRIDAY?
18              MS. HUTNYAN:  WE GAVE THE 24-HOUR NOTICE
19    AND WE SUBMITTED THEM AS SOON AS WE COULD.
20              WE WERE A LITTLE BIT HESITANT TO DO IT
21    BECAUSE IT REALLY ISN'T PROPER.  I MEAN, AS YOU
22    STATED IT NORMALLY IS RESERVED FOR SOMETHING THAT
23    THE OTHER PARTY CAN'T SEE.  AND NORMALLY YOU WOULD
24    MOVE TO LEAVE, MOVE FOR LEAVE TO SUBMIT THOSE
25    ITEMS.
```

1          THE COURT:  SO WHY DIDN'T YOU REQUEST

2     RELIEF FROM THIS POSITION APPLE IS TAKING, IF YOU

3     BELIEVE TO BE OBJECTIONABLE, WEDNESDAY, TUESDAY,

4     MONDAY RATHER THAN SUBMITTING THEM SIMPLY ON AN IN

5     CAMERA BASIS ON FRIDAY?

6          MS. HUTNYAN:  WE WERE NOT PERMITTED TO

7     MOVE TO COMPEL THEM, TO MOVE TO COMPEL THEM.

8          THE COURT:  YOU HAD DOCUMENTS YOU WANTED

9     ME TO SEE.

10         MS. HUTNYAN:  YES.

11         THE COURT:  YOU BELIEVE THEY WERE

12    IMPORTANT FOR MY UNDERSTANDING OF THE ISSUES.

13         WHAT I DON'T UNDERSTAND IS WHY WERE THEY

14    ONLY SUBMITTED TO THE COURT ON FRIDAY, THE LAST

15    BUSINESS DAY BEFORE THIS HEARING?  WHY NOT SUBMIT

16    THEM EARLIER IN THE WEEK, FOR EXAMPLE, SO THAT I

17    COULD CONSIDER THEM IN A MORE TIMELY MANNER?

18         MS. HUTNYAN:  I THINK THEY ARE KIND OF

19    ICING ON THE CAKE.

20         THE COURT:  RIGHT.  BUT OUR LOCAL RULES

21    DON'T PROVIDE FOR SUBMISSION OF ICING ON THE CAKE

22    THE DAY BEFORE A HEARING.

23         MS. HUTNYAN:  IF YOU COULD JUST PERMIT ME

24    A MOMENT.

25         WE WANT THEM IN THE RECORD.  WE BELIEVE

                                                        10

1    THAT ONE OF THE REASONS WHY THE IN CAMERA

2    SUBMISSION IS OBJECTIONABLE AND PROBLEMATIC IN A

3    CASE WHERE APPLE AGREED TO A PROTECTIVE ORDER HERE

4    AND AGREED THAT THE PROTECTIVE ORDER WOULD PROTECT

5    ITS TRADE SECRETS.

6              IN THIS CASE WE BELIEVE IN CAMERA

7    SUBMISSION IS PROPER FOR THE REASON THAT IT DOES

8    NOT PUT THE DOCUMENTS IN THE RECORD.

9              THE COURT:  SO WHY NOT SIMPLY FILE THEM

10   TOGETHER WITH YOUR REPLY BRIEF?

11             MS. HUTNYAN:  WE COULDN'T FILE THEM

12   BECAUSE WE WERE TOLD WE WERE NOT ABLE TO FILE THEM.

13             THE COURT:  SO WHY NOT ASK FOR RELIEF THE

14   NEXT DAY?  WHY WAIT UNTIL THE FRIDAY THE DAY BEFORE

15   THE HEARING ESSENTIALLY TO SUBMIT THEM IN CAMERA?

16   WHAT ACCOUNTS FOR THAT DELAY?  YOUR REPLY WASN'T

17   FILED FRIDAY, RIGHT?

18             MS. HUTNYAN:  NO.  I GUESS I DIDN'T -- I

19   WAS HESITANT TO DO IT BECAUSE IT WAS AN UNUSUAL

20   PROCEDURE.

21             I'VE NEVER IN MY CAREER SEEN AN IN CAMERA

22   SUBMISSION BEFORE AND I WANTED TO MAKE SURE WE WERE

23   NOT VIOLATING THE RULE.  I HAD PEOPLE LOOKING AT

24   THE ISSUE OF WHETHER WE COULD DO THIS WITH CONSENT

25   AND WE WENT AHEAD AND SUBMITTED THEM WITH THE IDEA

11

1    THAT YOUR HONOR COULD PUT THEM IN THE RECORD, BUT

2    WE STATED IN OUR REPLY BRIEF WHY, WE DESCRIBED AT A

3    GENERAL LEVEL WITHOUT GETTING INTO THE SUBSTANCE OF

4    THE TRANSCRIPTS THE THINGS WE THOUGHT ESTABLISHED

5    THE TECHNOLOGICAL NEXUS.

6         SO WE THOUGHT THIS WOULD BE -- IF YOU

7    FLIP THROUGH THEM YOU CAN SEE IPHONE, IPHONE,

8    IPHONE --

9         THE COURT:  I'M NOT QUIBBLING WITH THE

10   MERIT OF YOUR SUBMISSION, I'M SIMPLY POINTING OUT

11   THAT IN ORDER FOR ME TO CONSIDER THAT AND WEIGH

12   THAT AGAINST THE OTHER SIDE, RECEIVING THEM

13   SOMETIME THE DAY BEFORE, ARGUABLY IN VIOLATION OF

14   OUR LOCAL RULES, WOULD BE HELPFUL.

15        MS. HUTNYAN:  I TOTALLY UNDERSTAND.

16      AND MY PLAN WAS TO FLAG A FEW FOR YOU SO THAT

17   I COULD ACTUALLY POINT YOU TO A FEW THINGS TO SHOW

18   TECHNOLOGICAL NEXUS AND WOULD GIVE YOU

19   SUFFICIENT --

20        THE COURT:  AND IF I HAD HAD THAT WHEN

21   YOU SUBMITTED YOUR REPLY OR PERHAPS A DAY LATER IT

22   WOULD BE MORE EFFECTIVE IS MY ONLY POINT.

23        ALL RIGHT.  NOW I WANT TO UNDERSTAND WHAT

24   THE OBJECTION IS FROM APPLE UNDER THE TERMS OF THE

25   ITC.  IS IT SIMPLY THAT THEIR EXPERTS HAD ACCESS TO

1    THIS?

2              MS. TUCHER:  YOUR HONOR, I'M GOING TO LET

3    MR. SABRI, HE'S PREPARED TO ARGUE THE MOTION

4    ADDRESSING THAT POINT.

5              THE COURT:  I WOULD LIKE TO GET TO THE

6    MOTIONS THEMSELVES.

7              MR. OLSON:  YES, YOUR HONOR.  I WOULD

8    QUICKLY MAKE ONE EXTRA POINT.

9              AFTER THE IN CAMERA DISCUSSION FAILED,

10   WHAT APPLE ALSO OFFERED IS, YOUR WHOLE PURPOSE

11   SAMSUNG, IS TO SHOW THESE TRANSCRIPTS TO THIS COURT

12   AND ARGUE THEY HAVE A TECHNOLOGICAL NEXUS.

13             SO WE SAID WE ARE NOT COMFORTABLE IF THEY

14   FILED THEM UNDER SEAL THAT WOULD ENABLE ANYBODY WHO

15   SIGNED ONTO THE ND CAL PROTECTIVE ORDER TO VIEW

16   THEM AND USE THEM.

17             SO HOW ABOUT THIS, FILE THE COVER PAGES,

18   YOU CAN SHOW THE COURT ALL THESE TRANSCRIPTS EXIST.

19   WE WILL STIPULATE THERE'S A TECHNOLOGICAL NEXUS SO

20   THEN YOU CAN FILE UNDER SEAL THE COVER PAGES, THE

21   FIRST PAGES OF EACH TRANSCRIPT.  WE JUST DON'T WANT

22   A HUGE STACK OF ITC TRANSCRIPTS BEING FILED AND

23   BEING ABLE TO BE USED IN THIS PROCEEDING.

24             SAMSUNG ALSO REJECTED THAT.  THEN WAITED

25   UNTIL FRIDAY AND OVER THE WEEKEND TO FILE --

                                                      13

1            THE COURT:  RIGHT.

2            BUT IF YOUR BEEF IS HOW THEY ARE USING

3    THE MATERIALS WITH THEIR EXPERT, IT SEEMS TO ME

4    THAT'S THE OBJECTION TO MAKE.  IT'S NOT AN

5    OBJECTION THAT ESSENTIALLY FORCES A SUBMISSION IN

6    CAMERA TO A POINT WHERE AGAIN WE NOW HAVE DOCUMENTS

7    FLOATING AROUND.

8            YOU ALL DO THIS WAY MORE THAN I DO.  YOU

9    UNDERSTAND THE CHALLENGE OF A COURT MANAGING

10   DOCUMENTS IN CAMERA, PARTICULARLY THE VOLUME YOU

11   ALL GENERATE.

12           SO WHAT I DON'T UNDERSTAND IS WHY NOT

13   OBJECT TO THEIR PROPOSED USE OF THE DOCUMENTS WITH

14   THEIR EXPERTS BUT PERMIT, AS I BELIEVE YOU WOULD

15   OTHERWISE BE REQUIRED TO FILING THESE DOCUMENTS

16   UNDER SEAL.

17           MR. OLSON:  YOUR HONOR, WE FELT THAT WHAT

18   SAMSUNG REPORTED TO US ON ITC DISCOVERY CALLS IS

19   THE MOMENT THESE ARE FILED UNDER SEAL IN THIS CASE

20   WE ARE FREE TOO SHOW THEM ANYBODY SIGNED UNDER THE

21   ND CAL EXCLUDEING EXPERTS.

22           THE COURT:  IS THE ATTORNEY WHO MADE THAT

23   CALL ON YOUR SIDE IN THE ITC PROCEEDING ALSO

24   ATTORNEY OF RECORD IN THIS CASE?

25           MR. OLSON:  YES, SIR.

                                                    14

```
1                    THE COURT:  ALL RIGHT.

2                    MS. HUTNYAN:  YOUR HONOR, IF I MAY JUST

3         ADD ONE POINT?

4                    THE COURT:  SURE.

5                    MS. HUTNYAN:  THESE ARE TRANSCRIPTS THAT

6         WERE ORDERED PRODUCED BY THE COURT, YOU, IN

7         DECEMBER.  THERE'S NO REASON WHY THESE DOCUMENTS

8         WHICH SHOULD HAVE BEEN PRODUCED LONG AGO SHOULD NOT

9         BE SIMPLY FILED UNDER SEAL.

10                   IT BLOWS MY MIND THAT WE ARE HAVING A

11        DISCUSSION ABOUT IN CAMERA REVIEW OR ABOUT WHAT

12        EXPERTS CAN SEE THESE TRANSCRIPTS BECAUSE THEY WERE

13        ORDERED BY YOU TO BE PRODUCED FOR ALL PURPOSES IN

14        THIS ACTION IN DECEMBER.

15                   THE COURT:  ALL RIGHT.

16                   WELL, I SUSPECT WE HAVE A DIFFERENCE OF

17        OPINION IN THE ROOM ABOUT THAT SUBJECT.

18                   SO LET'S TURN TO THOSE ISSUES.

19                   I WANT TO START WITH THE MOTION FOR

20        SANCTIONS BY APPLE.

21                   WHO IS GOING TO ARGUE THAT ONE FOR YOU,

22        COUNSEL?

23                   MS. TUCHER:  THANK YOU, YOUR HONOR.

24                   ALLISON TUCHER.

25                   MY PARTNER HAROLD MCELHINNY WAS BEFORE
```

1   YOU TWO WEEKS AGO SEEKING SANCTIONS BECAUSE SAMSUNG

2   HAD TOLD US THINGS THAT WEREN'T TRUE AND THEN KEPT

3   FROM US THE DOCUMENTS THAT ENABLED US TO FIND THE

4   TRUTH.  BECAUSE SAMSUNG HAD VIOLATED YOUR ORDERS,

5   AND THEN COME IN HERE AND SOUGHT TO JUSTIFY THEIR

6   BEHAVIOR BY WILLFULLY MISREADING YOUR ORDERS.

7            I'M HERE FOR EXACTLY THE SAME REASON BUT

8   IN THIS CASE IT'S NOT ABOUT PI DISCOVERY BUT ABOUT

9   DAMAGES.

10           YOUR ORDER WAS SHORT BUT CLEAR, SAMSUNG

11  HAD TOLD YOU THAT OUR DISCOVERY MOTION WAS MOOT AND

12  THAT THEY WOULD GIVE US ALL THE FINANCIAL

13  INFORMATION THAT APPLE SOUGHT.  YOU ORDERED THEM TO

14  DO JUST THAT AND THEY DIDN'T.

15           AND BECAUSE WE ARE GOING TO BE TALKING

16  ABOUT AEO INFORMATION I WOULD LIKE TO HAND UP A

17  BINDER OF MATERIAL THAT HAS NOT JUST THE TEXT OF

18  THE ORDER BUT THE MATERIALS I WANT TO USE TO

19  SUMMARIZE FOR YOU HOW IT IS THAT SAMSUNG HAS FAILED

20  TO COMPLY WITH YOUR ORDER AND HOW IT IS THAT

21  PREJUDICES APPLE IN PREPARATION OF OUR DAMAGES IN

22  THIS CASE.

23           THE COURT:  YOU MAY HAND UP --

24           MS. MAROULIS:  COUNSEL, DOES THIS CONTAIN

25  INFORMATION NOT IN THE RECORD?

16

1              MS. TUCHER:  YES.  THIS IS A BINDER THAT

2    HAS IN IT SOME DEMONSTRATIVES, SOME INFORMATION

3    THAT IS IN THE RECORD AND SOME INFORMATION THAT IS

4    NOT IN THE RECORD.  BUT THE INFORMATION THAT'S NOT

5    IN THE RECORD ALL POSTDATES THE REPLY IN THIS CASE.

6              AND I WILL BE ASKING EITHER THAT THE

7    BINDER BE ADMITTED INTO EVIDENCE OR THAT WE BE

8    GIVEN LEAVE AT THE CLOSE OF THE HEARING TO FILE ON

9    THE RECORD UNDER SEAL THOSE PORTIONS OF THE BINDER

10   THAT POSTDATE THE REPLY AND THAT ARE NOT IN THE

11   RECORD.

12             MS. MAROULIS:  YOUR HONOR, I HAVE AN

13   OBJECTION TO USE OF DEMONSTRATIVES THAT WEREN'T

14   PREVIOUSLY DISCLOSED IN ANY KIND OF NEW INFORMATION

15   WHETHER IT'S ATTORNEY ARGUMENT OR EXHIBITS.  WE

16   WILL DO OUR BEST TO RESPOND TO THEM IN THE

17   ARGUMENTS BUT THEY WEREN'T PROVIDED TO US.

18             THE COURT:  ALL RIGHT.

19             WELL, I WANT TO GET TO THE SUBSTANCE OF

20   THESE DISPUTES, I REALLY DO.  I DON'T WANT TO GET

21   INTO ANCILLARY DISPUTES ABOUT WHAT'S PUBLIC AND

22   WHAT'S NOT.

23             I WILL CONSIDER WHAT'S IN THIS BINDER BUT

24   I'M GOING TO TELL YOU RIGHT NOW THAT I'M NOT GOING

25   TO CLEAR THE COURTROOM, AND IF I NEED TO ASK A

1      QUESTION ABOUT WHAT'S IN THIS BINDER I'M GOING TO

2      DO IT WITHOUT CLEARING THE COURTROOM.  WE ARE GOING

3      TO PROCEED ON THAT BASIS.

4              SO LET'S TURN TO THE MERITS.

5              MS. TUCHER:  THANK YOU, YOUR HONOR    I

6      WOULD LIKE TO START BY TURNING TO TAB 1 WHICH IS A

7      SHORT EXPERT FROM YOUR JANUARY 27TH ORDER, AND IN

8      PARTICULAR HIGHLIGHTS THE LANGUAGE THAT WE THINK

9      CONTROLS THIS CASE.

10             THAT SAMSUNG HAD AGREED TO SUPPLEMENT ITS

11     PRODUCTION AND PROVIDE RESPONSIVE DOCUMENTS TO ALL

12     OF THE CATEGORIES LISTED BY APPLE.

13             THE CATEGORIES THAT APPLE HAD LISTED WERE

14     TWO PAGES OF SPECIFIC DOCUMENTS.  THEY ARE ACTUALLY

15     JUST AT THE LAST FEW PAGES OF THE BINDER.  BUT YOU

16     MAY VERY WELL RECALL IN OUR PROPOSED ORDER WHEN WE

17     ORIGINALLY FILED THIS MOTION, WE WERE VERY SPECIFIC

18     ABOUT WHAT IT WAS THAT WE WANTED AND WE UNDERSTOOD

19     YOUR ORDER TO BE ORDERING SAMSUNG TO DO WHAT THEY

20     HAD TOLD THIS COURT THEY WERE PREPARED TO DO WHICH

21     IS TO PRODUCE ALL OF THOSE DOCUMENTS.

22             NOW SAMSUNG HAS ARGUED IN ITS PAPERS THAT

23     "ALL" IN FACT DOES NOT MEAN ALL BUT MEANS ONLY WHAT

24     SAMSUNG HAD OFFERED IN A LETTER TO PRODUCE.  AND IN

25     SOME BULLET POINTS IN THEIR OPPOSITION TO COMPEL.

```
1              SO I HAVE HIGHLIGHTED THE LANGUAGE THERE
2    ON PAGE 14 OF THEIR OPPOSITION THAT WE UNDERSTAND
3    YOUR ORDER TO BE CITING TO.  THE HEADING THAT
4    SAMSUNG HAS ALREADY PRODUCED OR AGREED TO PRODUCE
5    ALL OF THE FINANCIAL INFORMATION THAT APPLE
6    REQUESTS, A STATEMENT THAT THEY MAKE ESSENTIALLY
7    TWICE THAT THEY WILL DO THAT BY FEBRUARY 3RD.
8              I ALSO, BEHIND TAB 2 HAVE A TIMELINE THAT
9    SUMMARIZES WHAT THE RECORD SHOWS ACTUALLY HAPPENED
10   AFTER YOUR ORDER.
11             ON FEBRUARY 3RD WE GOT A SPREADSHEET WITH
12   FINANCIAL INFORMATION AND A HANDFUL OF OTHER
13   DOCUMENTS.  WE UNDERSTOOD THIS TO BE WOEFULLY
14   INADEQUATE AND FIRED OFF A LETTER TO WHICH SAMSUNG
15   RESPONDED TELLING US THAT THEY THOUGHT THAT THEY
16   WERE DONE AND HAD PRODUCED EVERYTHING THEY NEEDED
17   TO PRODUCE BY THE 13TH OF FEBRUARY.
18             SO DEPOSITIONS ENSUED.  BUT BEFORE THAT
19   WE THEN GOT ON FEBRUARY 28TH A NEW VERSION OF THE
20   SPREADSHEET.  ON MARCH 8TH ANOTHER NEW VERSION OF
21   THE SPREADSHEET.  A FEW DAYS AFTER THAT AN
22   OPPOSITION TELLING THIS COURT THAT THE DATA WAS ALL
23   ACCURATE AND COMES DIRECTLY FROM THE DATABASE.
24             BUT ON MARCH 21ST YET ANOTHER CORRECTED
25   SPREADSHEET, AND ON MARCH 29TH ANOTHER CORRECTED
```

19

1   SPREADSHEET.

2            I SUBMIT THE FACT WE HAD TO HAVE FIVE

3   VERSIONS OF THE SPREADSHEET IS EVIDENCE THAT WHAT

4   WE GOT FEBRUARY 3RD WAS NOT ACCURATE AND COMPLETE.

5            BUT THERE'S ACTUALLY A LOT MORE WE CAN

6   TALK ABOUT ABOUT THE PROBLEMS WITH PRODUCTION.  IF

7   YOU LOOK BEHIND TAB 3 THEY SUMMARIZED THE PROBLEMS

8   WITH WHAT WE GOT ON FEBRUARY 3RD.

9            FOCUSSING PARTICULARLY ON THE SPREADSHEET

10  DATA.  THE FIRST PROBLEM WAS THAT THEY GAVE US A

11  TOTAL PAGE UP FRONT THAT DIDN'T ADD TO THE PAGES

12  BEHIND IT WHAT WERE PRODUCT SPECIFIC.  SO WE KNEW

13  THERE WAS SOME KIND OF MATH ERROR AT A MINIMUM.

14           SECOND PROBLEM IS THAT THERE WERE SEVEN

15  ACCUSED PRODUCTS THAT THEY GAVE US NO DATA FOR.

16  AND I'VE LISTED THEM HERE.  THE FIRST FOUR OF THESE

17  THEY HAVE SUBSEQUENTLY IN REVISIONS OF THE

18  SPREADSHEET GIVEN US DATA, ALTHOUGH IN SOME CASES

19  NOT IN VERY USEABLE FORMS.

20           BUT THE LAST THREE OF THE PRODUCTS LISTED

21  HERE, THE S2, THE AT&T CELLS WITH THE NAME S2

22  SKYROCKET, THE S2 THAT SPRINT SELLS WITH THE NAME

23  S2 EPIC 4G TOUCH, AND THE GALAXY TAB 10.1 IN THE

24  LTE VERSION AS ITS PROVIDED THROUGH ALL DIFFERENT

25  SALES CHANNELS.  THEY HAVE STILL TO THIS DAY NOT

20

1    PROVIDED US ANY SALES DATA ON THESE ACCUSED

2    PRODUCTS.

3              THEIR ARGUMENT IS THEY THINK THEY AREN'T

4    ACCUSED PRODUCTS.  BUT IF YOU LOOK NOT JUST AT OUR

5    COMPLAINT BUT IN OUR -- IN THE COURT ORDERED

6    INFRINGEMENT CONTENTIONS YOU WILL SEE WE LISTED THE

7    S2 AS AN INFRINGED PRODUCT.

8              NOW IT'S TRUE WE DIDN'T BREAK OUT THE

9    DIFFERENT CARRIER NAMES.  WE SAID S2 IN OUR

10   COMPLAINT AND INFRINGEMENT CONTENTIONS BECAUSE AT

11   THAT TIME THE S2 HADN'T BEEN INTRODUCED INTO THE

12   UNITED STATES AT ANY CARRIER.  BUT AFTER IT CAME

13   OUT AT VARIOUS CARRIERS OVER THE COURSE OF THE

14   FALL, WE UPDATED OUR INTERROGATORY RESPONSE AND

15   LISTED ALL THE DIFFERENT VARIANTS OF THE S2.

16             AND THEY GAVE US SOME S2 DATA SO THEY

17   SEEMED TO ACKNOWLEDGED SOME S2'S ARE IN THE CASE,

18   BUT THEY PROVIDED NO EXPLANATION AT ALL FOR WHY

19   SOME ARE IN THE CASE AND SOME ARE NOT IN THE CASE

20   EXCEPT SOME OF THE S2'S ARE MORE EXPENSIVE THAN

21   OTHERS WHICH DOESN'T SEEM TO ME ADEQUATE GROUNDS

22   FOR DECIDING THAT WHY WE SHOULDN'T HAVE A CLAIM FOR

23   DAMAGES.

24             THE COURT:  SO IF I UNDERSTAND WHAT YOU

25   ARE SAYING CORRECTLY, SITTING HERE TODAY YOU STILL

                                                    21

```
1    HAVEN'T RECEIVED ANY TOP LINE REVENUE DATA FOR

2    SALES OF THE GALAXY S2 TO SPRINT, FOR EXAMPLE?

3            MS. TUCHER:  THAT'S RIGHT.

4            THE COURT:  SAME IS TRUE FOR AT&T?

5            MS. TUCHER:  YES.  EXCEPT THAT THERE ARE

6    TWO VERSIONS OF THE S2.  ONE IS CALLED S2 AND ONE

7    IS S2 SKYROCKET.  THEY GAVE US DATA THE ONE FOR THE

8    S2 BUT NOT FOR THE ONE CALLED S2 SKYROCKET.

9            THE COURT:  AND THEIR EXPLANATION FOR

10   THIS TO YOU HAS BEEN WHAT?

11           MS. TUCHER:  THAT IT'S NOT AN ACCUSED

12   PRODUCT IN THE CASE.

13           THE COURT:  EVEN THOUGH YOU IDENTIFY THE

14   S2 IN YOUR COMPLAINT?

15           MS. TUCHER:  YES, YOUR HONOR.

16           THE COURT:  AND IN INTERROGATORY

17   RESPONSES.

18           MS. TUCHER:  AND IN -- I WOULD SAY YES,

19   BUT THE INTERROGATORY RESPONSE SPECIFICALLY LISTING

20   THE VARIOUS VERSIONS DIDN'T COME UNTIL LATER, IT

21   WAS THE COURT ORDERED INFRINGEMENT CONTENTIONS THAT

22   LISTED THE S2.

23           THE COURT:  OKAY.

24           MS. TUCHER:  AND SIMILARLY YOUR HONOR, ON

25   THE TAB 10.1, THE TAB 10.1 IS SOLD IN A WIFI
```

1    VERSION.  IT'S SOLD IN AN LTE VERSION, AND IN OUR

2    INFRINGEMENT CONTENTIONS WE ACCUSE THE TAB 10.1.

3    WE DIDN'T SPECIFY WHETHER IT WOULD BE WIFI OR --

4              THE COURT:  I TAKE IT THE DESIGN OF THE

5    PRODUCT ISN'T IMPLICATED BY ITS WIFI OR 4G

6    FUNCTIONALITY.

7              MS. TUCHER:  NO, THAT'S CORRECT.

8              I HAVE NO IDEA WHY THEY DECIDED WE ARE

9    ENTITLED TO DAMAGES ONLY ON THE WIFI VERSION.

10             ALSO STILL TO THIS DAY WE HAVE A PROBLEM

11   WITH THE SPREADSHEET THEY HAVE GIVEN US IN ITS

12   LATEST VERSION DOES NOT ADD DOWN.

13             THIS IS AN ISSUE BECAUSE IT'S -- THE

14   SPREADSHEET SAYS IT'S A CONSOLIDATED SPREADSHEET.

15   IT ISN'T.  IT'S A COMBINED SPREADSHEET THAT ADDS

16   DATA FOR ALL THE PRODUCTS FOR ALL THREE ENTITIES

17   BUT IT DOESN'T TRACE THE SAME PRODUCT OVER TIME THE

18   WAY ONE WOULD DO IF ONE WAS ACTUALLY MAKING A

19   CONSOLIDATED SPREADSHEET.

20             THE WAY THEY DO THEIR OWN INTERNAL

21   REPORTING FOR CONSOLIDATED NUMBERS.

22             SO THAT'S A PROBLEM THAT OUR DAMAGES

23   EXPERT FACES WHEN HE ANALYZES THE DATA.

24             THEY ALSO DON'T LIST DATA BY CARRIER.

25   WHY IS THAT A PROBLEM?  WELL, FOR OUR DAMAGES

23

1    ANALYSIS BECAUSE APPLE HAS A DIFFERENT -- WE HAVE A

2    DIFFERENT DAMAGES ANALYSIS BY CARRIER BECAUSE WE

3    HAVE A DIFFERENT MARKET SHARE WITH EACH OF THE

4    DIFFERENT CARRIERS.  SO IN ORDER TO DO LOST PROFITS

5    WE HAVE TO KNOW WHICH CARRIER THEY SOLD TO.

6         THE COURT:  ARE YOU CLAIMING LOST PROFITS

7    FOR EACH OF THE CARRIERS IN DISPUTE IN THE U.S.?

8         MS. TUCHER:  YOUR HONOR, WE ARE CLAIMING

9    LOST PROFITS AS TO AT LEAST SOME OF THEM.  I CAN'T

10   TELL YOU OFF THE TOP OF MY HEAD WHETHER IT'S AS TO

11   ALL OF THEM.

12        MR. SABRI:  YOUR HONOR, IT'S AS TO ALL OF

13   THEM, ALTHOUGH IN DIFFERENT PROPORTIONS AS TO

14   DIFFERENT CARRIERS.

15        THE COURT:  AND DIFFERENT MARKET SHARES.

16        MR. SABRI:  MARKET SHARES, EXACTLY.

17        MS. TUCHER:  THE OTHER REASON IT'S A

18   PROBLEM AS YOU ASKED ABOUT CARRIERS IN THE U.S.,

19   WHEN THEY GAVE US THIS DATA WE HAD ASKED FOR U.S.

20   AND GLOBAL DATA BECAUSE WE THINK WE NEED BOTH ON

21   ANALYZE THIS PROPERLY.  WE DIDN'T INTEND FOR THEM

22   TO PUT IT ALL IN ONE LINE ITEM.

23        ON THE S2 HERCULES, THE T-MOBILE VERSION,

24   WHEN WE TRIED TO DO THE ANALYSIS ON THAT WE FIND

25   THE LINE ITEM FOR S2 THAT INCLUDES THE HERCULES

1     INCLUDES SEVERAL OTHER S2 VARIANTS SOLD IN CANADA

2     OR SOMETHING LIKE THAT.

3            AND, YOU KNOW, IF THEY WANT TO GIVE US

4     DAMAGES FOR SALES IN CANADA, THAT'S GREAT.

5            THE COURT:  YOU WON'T OBJECT TO THAT.

6            MS. TUCHER:  WE WOULDN'T.

7            BUT IF THEY WANT TO CROSS-EXAMINATION OUR

8     EXPERT ON THE INADEQUACY OF HIS ANALYSIS BECAUSE

9     HE'S CONFLATED U.S. AND CANADIAN SALES, I DO OBJECT

10    TO THAT.

11           SO THAT'S WHY SALES BY CARRIER MATTERS.

12           AND THEN OF COURSE BECAUSE ALTHOUGH THEY

13    TELL YOU THAT THE DATA COMES DIRECT FROM THEIR

14    ACCOUNTING SYSTEM, IT COMES DIRECT FROM THEIR

15    ACCOUNTING SYSTEM THEN GETS ADDED, SUBTRACTED AND

16    MOVED AROUND.

17           SO BECAUSE OF THAT WE CAN'T COMPARE IT TO

18    ANY PUBLISHED DATA INCLUDING ANY DATA IN THEIR

19    FINANCIAL RECORDS THEY'VE PROVIDED US.  SO WE CAN'T

20    CROSS CHECK IT.  AND WE HAVE SOME TRUST ISSUES,

21    SHALL WE SAY, SOME NEED TO CROSS VERIFY.

22    UNEXPLAINED RESULTS FOR COSTS OF GOODS SOLD AND

23    LACK OF DETAIL AS TO COST OF GOODS SOLD AND

24    EXPENSES.

25           AS YOU KNOW FOR OUR DAMAGES CLAIM WE HAVE

                                                    25

1        A RIGHT TO SAMSUNG A PROFITS.  THEIR ENTIRE PROFITS

2        ON ACCUSED PRODUCTS.  AND SO COST OF GOODS SOLD

3        MATTERS.

4               IF THEY CAN MAKE THEIR COSTS OF GOOD SOLD

5        LARGER, THEIR PROFITS ARE SMALLER AND OUR DAMAGES

6        CLAIM IS SMALLER ACCORDINGLY.  AND WE WILL TALK

7        ABOUT ONE PARTICULAR PLACE WHERE THEY DID THAT TO

8        APPLE'S GREAT DETRIMENT IN A MOMENT.  BUT RIGHT

9        HERE I'M TRYING TO MAKE THE BROADER POINT THAT THE

10       LACK OF DETAIL AND LACK OF TRANSPARENCY IS A

11       PROBLEM FOR US IN UNDERSTANDING THE COST OF GOODS

12       SOLD LINE ITEM.

13              ON THE NEXT PAGE I'M NOT GOING TO USE ANY

14       NUMBERS, THEY ARE IN RED BECAUSE THEY ARE HIGHLY

15       CONFIDENTIAL.  BUT YOU CAN SEE THAT WHAT THEY, AND

16       I JUST WANT TO SAY THE TAB 4 PRESENTATION, THE

17       FIRST BULLET POINT HERE, THIS IS ABOUT WHAT THEY

18       REFER TO AS A MINOR MODIFICATION BECAUSE OF A

19       FOREIGN SUBSIDIARY OF SAMSUNG KOREA.  AND THEY

20       THOUGHT THAT IT WOULD BE PROPER TO MOVE WHAT WE

21       CONSIDER PROFITS THAT WE HAVE A RIGHT TO INTO THIS

22       CHINESE SUBSIDIARY.

23              THE COURT:  IS IT CHINESE OR KOREAN?

24              MS. TUCHER:  I BELIEVE IT'S CHINESE.

25              IN ANY EVENT, NOT ONLY DO WE DISAGREE

                                                              26

1    WITH THEM ON THE LAW, AND I CAN GIVE YOU A CASE FOR

2    WHY WE THINK WE'RE RIGHT ON THE LAW, BUT WE ARE

3    ABSOLUTELY CERTAIN THAT THIS LEGAL DISPUTE BETWEEN

4    THE PARTIES IS NOT SOMETHING THAT SHOULD BE DECIDED

5    UNILATERALLY BY SAMSUNG BY SIMPLY DENYING US THE

6    DATA.

7              SO THE SIZE OF WHAT SAMSUNG HAS DONE WITH

8    THEIR SHIFT ON COST OF GOODS SOLD IS A SIGNIFICANT

9    PORTION, LET'S JUST SAY, OF SAMSUNG'S PROFITS IN

10   2011.  AND A SIGNIFICANT PORTION OF WHAT APPLE IS

11   SEEKING IS DAMAGES IN THIS CASE.

12             THE COURT:  IF THEY HAVEN'T GIVEN YOU --

13   I'M SORRY FOR INTERRUPTING YOU, COUNSEL.  BUT IF

14   THEY HAVEN'T GIVEN YOU THE DATA, HOW ARE YOU ABLE

15   TO QUANTIFY THE MAGNITUDE OF WHAT YOU LABEL AS THE

16   OBFUSCATION.

17             MS. TUCHER:  I WANT TO ANSWER THAT

18   QUESTION BY ASKING YOU TO TURN TO TAB 5 WHICH IS A

19   PAGE FROM OUR EXPERT FROM OUR EXPERT'S REPORT.

20             AND I SHOULD ANSWER YOUR QUESTION FIRST

21   BY SAYING THAT AS TO THIS PARTICULAR ADJUSTMENT WE

22   FEEL WE HAVE ADEQUATELY QUANTIFIED IT, AND IF NEED

23   BE WE WILL ARGUE FROM DATA WE HAVE BASED ON THE

24   REPORT THAT'S BEFORE YOU.

25             BUT THE PROBLEM IS THIS IS JUST THE ONE

1    THAT WE KNOW ABOUT ALREADY.  AND WE DON'T KNOW WHAT

2    ELSE WE HAVEN'T FOUND THAT COULD BE OF SIMILAR

3    MAGNITUDE OR OTHERWISE.

4            SO ON THIS PARTICULAR EXHIBIT OF

5    TERRY MUSIKA EXPERT REPORT, THAT'S APPLE'S DAMAGES

6    EXPERT, YOU SEE A SUMMARY FIRST OF ALL OF THE

7    FEBRUARY 29TH VERSION, SO VERSION TWO OF THEIR

8    SPREADSHEET AS TO SALES AND COSTS OF GOOD SOLD.

9    THEN BELOW THAT YOU SEE A SUMMARY OF THE MARCH 8TH

10   VERSION.  SO VERSION THREE OF THEIR SPREADSHEET.

11           AND MANY THINGS CHANGED BETWEEN VERSION

12   TWO AND VERSION THREE.  ONE OF THE THINGS THAT

13   CHANGED IS THEY SAID OOPS, IT'S TRUE WE NEVER GAVE

14   YOU HERCULES THE T-MOBILE VERSION OF THE S2, THAT

15   PART WAS ACTUALLY UNINTENTIONAL, WE WILL ADD THAT

16   IN NOW.  WE ADDED THAT TO THE MIDDLE PART OF THE

17   PAGE.

18           BUT THE OTHER THING THEY DID WAS TO DO

19   THIS SIGNIFICANT MOVING OF PROFITS OUT OF THE

20   AMERICAN ENTITY AND INTO THE CHINESE SUB WHERE THEY

21   THINK WE WON'T HAVE A RIGHT TO COLLECT THEM.

22           AND TO SHOW YOU HOW THAT WORKS IF YOU

23   LOOK AT THE -- AND TO ALSO SUBSTANTIATE THIS IS

24   INDEED ALL DATA THAT COMES STRAIGHT FROM THE

25   RECORD.

1          IF YOU LOOK AT THE COST OF GOODS SOLD

2     HIGHLIGHTED IN YELLOW YOU WILL FIND THEY CORRESPOND

3     FROM THE FEBRUARY 29TH SPREADSHEET TO DATA THAT'S

4     HIGHLIGHTED BEHIND TAB B FOR THE MARCH 8TH

5     SPREADSHEET TO DATA THAT'S HIGHLIGHTED BEHIND TAB D

6     AND THEN TAB C.

7          AND BASED ON -- AND THE SPREADSHEETS DO

8     IT 2010 AND 2011.  SO ON THE RIGHT-HAND COLUMN WE

9     SUM UP FOR THOSE TWO YEARS.  AND IF YOU LOOK AT

10    COST OF GOODS SOLD BASED ON THE SPREADSHEET OF

11    FEBRUARY 29TH, AND COMPARE IT TO THE COST OF GOODS

12    SOLD THAT'S HIGHLIGHTED IN PURPLE FROM THE

13    MARCH 8TH VERSION THAT'S AFTER WE BACKED OUT THE

14    DIFFERENCE FROM HERCULES, YOU WILL SEE HOW MUCH

15    MONEY IS MISSING.

16          SO THAT'S WHERE WE GET OUR NUMBER FROM

17    AND THAT'S THE ANALYSIS THAT OUR EXPERT HAS TO DO

18    TO FIND THIS ONE CHANGE IN THEIR SPREADSHEET OVER

19    THE COURSE OF THE WEEKS AFTER THE FEBRUARY 3RD

20    PRODUCTION THAT YOUR HONOR ORDERED.

21          I WOULD ALSO LIKE TO ASK THE COURT TO,

22    AND WE WILL GO NOW AT A QUICKER PACE THROUGH THE

23    OTHER TABS HERE.  IF YOU LOOK AT TAB 6, THIS IS A

24    DEPOSITION EXPERT FROM THE TESTIMONY OF A SAMSUNG

25    CAREER WITNESS WHO WAS TESTIFYING ABOUT THE

1    SPREADSHEET ON THE 10TH OF MARCH AND WHO WAS

2    INSTRUCTED NOT TO ANSWER ABOUT THE VERSION OF THE

3    SPREADSHEET THAT SAMSUNG PRODUCED ON FEBRUARY 3RD

4    COMPLIANCE IN RESPONSE TO THE COURT'S ORDER, NOR

5    WAS HE ALLOWED TO TESTIFY ABOUT, AND SPECIFICALLY

6    THIS IS ABOUT COST OF GOODS SOLD IN THAT

7    SPREADSHEET --

8             THE COURT:  YOU ARE REFERRING TO PAGE 92

9    AND 93 OF TAB 6?

10            MS. TUCHER:  YES.

11            THE COURT:  SO THE OBJECTION I'M READING

12   ON THOSE PAGES INDICATES THAT HE WAS INSTRUCTED NOT

13   TO ANSWER IF THE ANSWER WOULD REVEAL PRIVILEGED

14   COMMUNICATIONS.  HE THEN PROCEEDS TO GIVE AN

15   ANSWER.  SO WHAT'S THE CONCERN YOU ARE RAISING?

16            MS. TUCHER:  LET ME GO THROUGH THIS A

17   LITTLE MORE SLOWLY THEN, I'M SORRY.

18            ON PAGE 92, I SHOULD TELL YOU ONE OF THE

19   DIFFERENCES ON FEBRUARY 3RD THEY GAVE US A MINIMAL

20   AMOUNT OF DETAIL ABOUT COST OF GOODS SOLD.  THEY

21   BROKE OUT MANUFACTURING AND MATERIAL COSTS.  AND IN

22   SUBSEQUENT VERSIONS OF THE SPREADSHEET, INCLUDING

23   THE ONE WE HAVE TODAY, THEY'VE COLLAPSED THAT.  AND

24   THEY'VE COLLAPSED THAT BECAUSE THEY DON'T WANT US

25   TO KNOW EACH THAT MUCH ABOUT WE SPLIT UP OUR COST

```
1    OF GOODS SOLD BECAUSE WE THINK IT'S TOO

2    CONFIDENTIAL.

3              SO ON THE FIRST PAGE OF 92 --

4              THE COURT:  SO YOU ASKED FOR THAT

5    ALLOCATION IN SUBSEQUENT VERSIONS AND YOU WERE

6    DENIED IT?

7              MS. TUCHER:  IT'S A LITTLE DIFFERENT FROM

8    THAT.

9              WE ASKED FOR A FULL BREAK OUT AND WE GOT

10   AN INITIAL BREAK OUT ON FEBRUARY 3RD THAT HAD JUST

11   THOSE TWO CATEGORIES, THEN AFTER THAT THEY

12   COLLAPSED THAT AND THEY DIDN'T GIVE US ANYTHING.

13             WE STILL ASKED FOR IT IN FULL AND THEY

14   DIDN'T GIVE US ANYTHING.

15             THE COURT:  SO AS TO THE SUBSEQUENT

16   VERSIONS OF THE SPREADSHEET WHEN YOU REQUESTED AT A

17   MINIMUM THAT THE MATERIAL COSTS AND MANUFACTURING

18   EXPENSES BE ALLOCATED APPROPRIATELY, WAS SAMSUNG'S

19   RESPONSE NO, WE ARE NOT GIVING YOU THAT AND THE

20   REASON FOR THAT IS IT'S TOO CONFIDENTIAL?  IS THAT

21   YOUR POSITION?

22             MS. TUCHER:  YES, YOUR HONOR.  AND I'M

23   SEEKING CONFIRMATION FROM MR. OLSON.

24             THE COURT:  MR. OLSON, IS THAT WHAT YOU

25   ARE TOLD BY SAMSUNG?
```

31

1          MR. OLSON:  SO AGAIN, LET ME BE CLEAR.

2    WE ASKED FOR ALL THE REMAINING DETAILS ABOUT TEN

3    LINES FROM THE GENERAL LEDGER ON COST OF GOODS

4    SOLD.  IN RESPONSE TO THAT THEY SAID NO, YOU GET

5    WHAT YOU GET, ONE LINE.

6          AND AT THE DEPOSITION OF THE MR. SIMMS --

7          THE COURT:  WELL, INITIALLY THEY GAVE YOU

8    TWO LINES.

9          MR. OLSON:  THEY GAVE US TWO LINES THEN

10   COLLAPSED IT DOWN TO ONE IN EVERY VERSION

11   THEREAFTER.  WE HAVE, SINCE THAT TIME, REPEATEDLY

12   ASKED FOR WE WANT ALL TEN LINES.

13          I DO NOT BELIEVE WE WILL HAVE A LETTER

14   THAT SPECIFICALLY SAYS GIVE US BACK JUST THE TWO

15   LINES.  WE'VE ALWAYS ASKED FOR TEN LINES.

16          AT THE DEPOSITION WE ASKED REPEATEDLY,

17   WHAT'S MORE BEHIND THAT, WHAT MORE CAN WE GET?  AND

18   HE SAID INFORMATION IS TOO CONFIDENTIAL.

19          THE COURT:  THE WITNESS TOLD YOU THIS?

20          MR. OLSON:  CORRECT.

21          THE COURT:  SO DID YOU EVER PUT IT TO

22   COUNSEL THAT, LOOK, THIS CONFIDENTIALITY OBJECTION

23   IS BOGUS.  GIVE US THE ALLOCATIONS AS WE ORIGINALLY

24   REQUESTED.  DO YOU EVER ASK THEM THAT?

25          MR. OLSON:  YES.

                                                    32

1          ON MARCH 10TH AT THE DEPOSITION AFTER THE

2     92 AND 93, WE THEN -- I WENT ON TO TRY TO ASK THE

3     QUESTION IN OTHER WAYS TO GET THE INFORMATION.  HE

4     AGAIN SAID, NO I WON'T ANSWER THAT.

5          AND THEN ON PAGE 99 OF THAT TRANSCRIPT

6     WHICH IS ALSO IN YOUR MATERIALS, WE I SPECIFICALLY

7     HAD ASKED THAT MR. STEIGER WHO WAS THE COUNSEL FOR

8     QUINN EMANUEL, TALK TO THE WITNESS AND PROVIDE US

9     ANSWERS.

10         HE CONFIRMS ON 99 AND 100 THAT IN FACT

11    HE'S INSTRUCTING HIM NOT TO ANSWER.  THEY MADE A

12    POINT OF THAT LATER IN THE DEPOSITION.  HE CAME

13    BACK AND MADE A REQUEST AND SAID WELL, MAYBE WE

14    WILL ASK IT, ALLOW HIM TO ASK OTHER QUESTIONS ON

15    THAT SUBJECT.  THIS IS APPROXIMATELY 116, I CAN

16    FIND THE EXACT CITE FOR YOU.

17         I THEN WENT BACK AGAIN AT 120, I'LL GET

18    YOU THE SPECIFIC CITATION BEFORE IT'S OVER, AND

19    AGAIN ASKS THE QUESTION AND AGAIN GOT AN

20    INSTRUCTION NOT TO ANSWER.

21         SO IT HAPPENED TWICE MARCH 10TH.

22         ON MARCH 31ST WE DEPOSED HIM AGAIN, ASKED

23    THE QUESTION AGAIN, CAN I ASK HIM MORE QUESTIONS

24    ABOUT THE COST OF GOODS SOLD CALCULATION, MATERIAL

25    COST, HOW IT'S CALCULATED, ET CETERA.  THEY AGAIN

1    INSTRUCTED HIM NOT TO ANSWER.  THEY AGAIN SAID WE

2    WILL BE INSTRUCTING HIM TO NOT ANSWER ON

3    MARCH 31ST.

4              IF YOU WILL GIVE ME A MOMENT, I WILL HAND

5    UP THE CITATIONS TO ALL OF THAT IF YOU WISH.

6              THE COURT:  THANK YOU.

7              YOU MAY PROCEED.

8              MS. TUCHER:  THANK YOU, YOUR HONOR.

9              MR. OLSON SHARED WITH YOU THE ONLY OTHER

10   INFORMATION I WANTED TO SHARE ON THAT TAB.

11             SO IF WE CHANGE TO TAB 7, THIS IS AGAIN

12   THE TESTIMONY OF MR. SIMMS FROM STC AND HE'S

13   ACKNOWLEDGING ERRORS IN VERSION THREE OF SAMSUNG'S

14   SPREADSHEET.

15             SO THIS IS THE VERSION OF THE SPREADSHEET

16   THAT SAMSUNG TOLD THIS COURT IN THEIR OPPOSITION

17   PAPERS WAS ACCURATE AND YET HERE IN DEPOSITION

18   TESTIMONY WHEN CROSS-EXAMINED THEY HAD TO

19   ACKNOWLEDGE ACTUALLY IT'S NOT.

20             SIMILARLY, TAB 8 IS MR. SHEPPARD.  HE IS

21   CONTROLLER AT ONE OF THE AMERICAN ENTITIES, AND

22   WHEN HE WAS DEPOSED HE ALSO HAD TO ACKNOWLEDGE THAT

23   IN THE STATEMENT THAT, IN THE DECLARATION HE

24   PROVIDED TO THIS COURT WITH THE OPPOSITION PAPERS

25   IN RESPONSE TO OUR SANCTIONS MOTION THAT HE MADE

34

1    MISTAKES.

2              IN THAT PARTICULAR CASE ONE OF THE

3    MISTAKES HE MADE WAS THAT THE THERE WAS ONLY ONE

4    VERSION OF THE S2 IN THE DATA HE GAVE US AND THAT

5    SAMSUNG ARGUED WELL, WE GAVE THEM TWO VERSIONS OF

6    THE S2 IN THE DATA.

7              TAB 9 IS THE TESTIMONY OF MR. SIMMS, AND

8    THIS IS ABOUT THE GALAXY S2 AGAIN.

9              THE COURT:  MS. TUCHER, I APOLOGIZE AGAIN

10   FOR INTERRUPTING.

11             CAN YOU REMIND ME AGAIN WHAT POSITION

12   MR. SIMMS HOLDS?

13             MS. TUCHER:  MR. SIMMS IS A LOW LEVEL

14   MANAGER WHO REPORTS TO, WHAT IS THE TITLE OF THE --

15   WOULD YOU ANSWER THAT, I THINK I GAVE THE WRONG

16   ANSWER.

17             MR. OLSON:  HE'S THE VICE PRESIDENT WHO

18   IS IN CHARGE OF SOMETHING CALLED A MANAGEMENT

19   SUPPORT GROUP.  HE REPORTS TO A MR. PARK.  MR. PARK

20   REPORTS TO JK SHIN, I BELIEVE IT IS, BUT HE WAS ONE

21   OF THE INDIVIDUALS IN THE APEX MOTION.

22             THE COURT:  THE HEARING WE HAD.

23             MR. OLSON:  CORRECT.

24             SO HE'S APPROXIMATELY THREE DOWN FROM

25   THAT AND IN CHARGE OF ABOUT 20 EMPLOYEES IN A

1    FINANCE AND MANAGEMENT SUPPORT FUNCTION.

2              THE COURT:  AND MR. SIMMS, WAS HE

3    APPEARING IN HIS 30(B)(6) CAPACITY AT THESE

4    DEPOSITIONS?

5              MR. OLSON:  CORRECT.

6              SOLELY, INCLUDING SPECIFICALLY IN HIS

7    30(B)(6) CAPACITY SPECIFICALLY ON A NOTICE DIRECTED

8    SOLELY TO THESE SPREADSHEETS.

9              THE COURT:  PRESUMABLY HE WAS IDENTIFIED

10   AS THE GUY WHO ACTUALLY KNOWS WHAT THESE

11   SPREADSHEETS SAY.

12             MS. TUCHER:  YES, YOUR HONOR.

13             THIS WAS AFTER MR. SHEPPARD WAS

14   QUESTIONED IN HIS 30(B)(6) CAPACITY ABOUT THE

15   SPREADSHEETS AT AN EARLIER TIME AND TESTIFIED HE

16   DIDN'T ACTUALLY KNOW ANYTHING ABOUT THEM BESIDES

17   WHAT HE HAD LEARNED IN A FEW MINUTES OF PREPARING

18   FOR HIS DEPOSITION.

19             AND SO MOVING THROUGH TO TAB 9 ON THE

20   GALAXY S2, IT MAY BE THAT WHEN SAMSUNG GETS UP HERE

21   THEY ARGUE THAT THERE IS A DIFFERENCE OF SOME SORT

22   BETWEEN THE GALAXY S2'S THAT THEY HAVE ACKNOWLEDGED

23   THAT ARE IN THE CASE AND THE GALAXY S2'S THAT THEY

24   REFUSE TO ACKNOWLEDGE ARE IN THE CASE.  BUT I

25   THOUGHT IT WAS IMPORTANT FOR YOU TO SEE HOW THE

1        SAMSUNG WITNESS ASKED ABOUT THIS RESPONDED.

2                WHEN ASKED WHY WASN'T THE GALAXY S2

3        SKYROCKET INCLUDED HE SAID, I WAS REQUESTED BY

4        COUNSEL NOT TO INCLUDE IT.  HE DIDN'T SAY, I DIDN'T

5        THINK OF THAT AS AN S2, NEVERMIND THE WAY WE --

6                MS. MAROULIS:  YOUR HONOR, WE ARE READING

7        FROM THE HIGHLY CONFIDENTIAL TRANSCRIPTS.  I WOULD

8        APPRECIATE IF COUNSEL REFERS THE COURT TO THE TABS

9        AS OPPOSED TO --

10               MS. TUCHER:  I APOLOGIZE, YOUR HONOR.

11               I WOULD SAY ONLY THAT WITH REGARD TO THE

12       EPIC, WHEN SAMSUNG'S WITNESS WAS ASKED ABOUT THE

13       EPIC YOU WILL SEE HOW HE RESPONDED IF YOU LOOK AT

14       PAGE 281, LINE 19 THROUGH 21.

15               AND I SUBMIT THAT THAT IS NOT THE

16       TESTIMONY OF A MAN WHO DOESN'T THINK THE GALAXY S2

17       EPIC IS AN S2.

18               THE COURT:  SO AGAIN, SO I'M CLEAR AS THE

19       TO STATE OF AFFAIRS TODAY, ARE YOU SAYING THAT

20       SITTING HERE TODAY YOU DO NOT HAVE REVENUE DATA FOR

21       THE GALAXY S2 SKYROCKET OR THE GALAXY S2 EPIC?

22               MS. TUCHER:  THAT'S RIGHT, YOUR HONOR.

23       NOR COST DATA, NOR PROFIT DATA.

24               THE COURT:  AND WHEN YOU RAISE THESE

25       ISSUES IN MEET AND CONFER WITH OPPOSING COUNSEL

```
1      THEY'VE TOLD YOU THAT WHAT?

2              MS. TUCHER:  THEY AREN'T ACCUSED

3      PRODUCTS.

4              THE COURT:  AND THEIR BASIS FOR THAT?  I

5      WILL HEAR FROM THEM DIRECTLY, OF COURSE.

6              MS. TUCHER:  THEY SAY THE INTERROGATORY

7      RESPONSE I MENTIONED TO YOU WHERE WE INCLUDED ALL

8      THE DIFFERENT VERSIONS OF THE S2 BY NAME AND SAID

9      EXACTLY HOW IT WORKED OUT.

10              THEY SAID THAT WASN'T FILED BEFORE OUR

11      DAMAGES MOTION WAS FILED, WHICH IS TRUE, WE THOUGHT

12      WE HAD ENOUGH WITH THE FACT THAT THEY WERE IN OUR

13      INFRINGEMENT CONTENTIONS AND WE WERE WAITING TO SEE

14      UNTIL ALL THE VERSIONS WERE OUT.

15              AND I SHOULD SAY THERE'S ONE VERSION OF

16      THE S2 THAT WE HAVEN'T SOUGHT DAMAGES DATA FROM

17      THEM ON AND IT'S THE VERSION THAT CAME OUT AROUND

18      THE TIME WE FILED OUR MOTION.

19              WE DON'T FAULT THEM FOR NOT GIVING THE

20      DATA ON PRODUCTS THEY ARE NOT RELEASING.  BUT THE

21      PRODUCTS THEY HAVEN'T GIVEN US DATA ON THAT ARE

22      SUBJECT TO OUR MOTION WERE RELEASED LAST FALL.

23              THE COURT:  I WAS GOING ASK YOU, YOU MAY

24      HAVE JUST ANSWERED MY QUESTION.  THE SKYROCKET, THE

25      EPIC, WHEN WERE THE PRODUCTS RELEASED INTO THE U.S.
```

1    MARKET?

2              MS. TUCHER:  YOUR HONOR, WE HAVE THE

3    ANSWER TO THAT IN OUR REPLY PAPERS.  AND I CAN TELL

4    YOU THE ORDER.

5              I CAN TELL YOU THAT OF THE FOUR S2'S

6    THERE ARE TWO THEY HAVE GIVEN US DATA ON AND TWO

7    THEY HAVEN'T.  ONE THEY GAVE US DATA ON, TWO THEY

8    DIDN'T, AND ONE THEY GAVE US DATA ON.

9              SO IT'S NOT ABOUT LATENESS.  ONE OF THE

10   DATA IS THE FOURTH TO BE RELEASED.

11             THE COURT:  EACH OF THE FOUR PRODUCTS WAS

12   RELEASED AT LEAST AS OF DECEMBER OF LAST YEAR.

13             MS. TUCHER:  OH, YES.

14             YOUR HONOR, I BELIEVE THE DATES WERE

15   AROUND OCTOBER, BUT I JUST DON'T WANT TO GET IT

16   WRONG.  MAYBE IT WAS SEPTEMBER AND OCTOBER

17   RESPECTIVELY.

18             AND THEN THE OTHER THING THAT THEY HAVE

19   SAID TO US IN MEET AND CONFER.  THEY'VE SHOWN US AN

20   UNSIGNED STIPULATION THAT THE PARTIES WERE

21   NEGOTIATING ABOUT WHETHER CERTAIN ADDITIONAL

22   PRODUCTS WOULD BE ADDED INTO IN CASE.

23             FOR EXAMPLE, WOULD THE NEW NEXUS PRODUCT

24   THAT SAMSUNG RELEASED BE ADDED INTO THE CASE.  AND

25   IN THE END IT WASN'T, AND IN THE END WE BROUGHT A

1    NEW CASE.

2              BUT IN THAT STIPULATION THERE'S LANGUAGE

3    ABOUT, YOU KNOW, WE WANT TO ADD NEW PRODUCTS TO THE

4    CASE AND PERHAPS NEW CLAIMS.

5              AND TWO OF THE VERSIONS OF THE S2 ARE

6    MENTIONED IN THIS UNSIGNED STIPULATION.  AND

7    WHETHER THAT'S BECAUSE WE WANTED TO ADD ADDITIONAL

8    CLAIMS AGAINST THOSE TWO PRODUCTS, I'M NOT SURE,

9    BUT I DO KNOW THAT IT WAS A NEGOTIATION BETWEEN

10   PARTIES THAT NEVER WENT ANYWHERE, IT WAS NEVER

11   RESOLVED.  SO I FAIL TO SEE HOW AN UNSIGNED

12   NEGOTIATION DOCUMENT OF THAT KIND COULD IN ANY WAY

13   DETRACT FROM THE FACT THAT THE S2 WAS ALREADY IN

14   OUR INFRINGEMENT CONTENTIONS AND AMENDED COMPLAINT.

15             THE COURT:  WERE THEY IN YOUR CONTENTIONS

16   IN THE AMENDED COMPLAINT AT THE TIME THE

17   STIPULATION WAS NEGOTIATED?

18             MS. TUCHER:  OH YES, BECAUSE THE AMENDED

19   COMPLAINT DATES BACK TO LAST SPRING AND THE

20   STIPULATIONS, CERTIFICATE INFRINGEMENT CONTENTIONS

21   WERE MONTHS AGO.

22             TAB 10 IS HERE BECAUSE SAMSUNG MADE A

23   POINT IN THEIR OPPOSITION ABOUT THE FACT THAT THE

24   DATA WAS EXTRACTED FROM ITS DATABASE AS IF THE FACT

25   THE DATA CAME FROM ITS DATABASE SOMEHOW MEANT IT

1    WAS NOT MANIPULATED OR MASSAGED.

2             I DON'T CARE WHETHER WE USE THE VERB

3    MANIPULATED OR MASSAGED OR IF WE SAY THEY DID MATH.

4    THEY ADMIT THEY DID MATH IN THE DATA THEY PULLED

5    OUT OF THEIR DATABASE.

6             WE GOT NUMBERS IN OUR SPREADSHEET IN THE

7    SPREADSHEET THEY PRODUCED TO US THAT WEREN'T IN

8    THEIR DATABASE.  THEY ARE COMBINATIONS OF NUMBERS

9    THAT ARE IN THE DATABASE, ADDITION, SUBTRACTION,

10   THAT SORT OF THING.  FORMULAS.

11            SO IF YOU LOOK AT THE DEPOSITION

12   TRANSCRIPT BEHIND TAB 10, WE HAVE SOUGHT TO MAKE

13   CLEAR THAT THERE ARE FORMULAS INVOLVED.

14            THE COURT:  IS THERE SOMETHING INHERENTLY

15   IMPROPER IN USING FORMULAS TO REPRESENT THE DATA

16   PRODUCED?

17            MS. TUCHER:  THERE IS IN IT'S DONE TO

18   OBSCURE WHAT THE DATA IS THAT'S ACTUALLY IN THEIR

19   DATABASE.  AND IF WE NEED THE DATA AT THE LEVEL

20   THAT'S IN THEIR DATABASE.

21            SO THE NEXT TAB ACTUALLY GIVES US A GOOD

22   EXAMPLE OF THAT.  I MENTIONED TO YOU THAT SOME OF

23   THE DATA STREAMS WE GOT ON A PER PRODUCT BASIS IN

24   FACT INTERMIXED MULTIPLE PRODUCTS IN A WAY WE THINK

25   THE DATA IS USEFUL.

1          THE COURT:  AS YOU TURN TO THE NEXT

2     QUESTION ON MY MIND, WHICH IS YOUR COMPLAINT HERE

3     ON THE TOPIC THAT THEY HAVE CONSOLIDATED MULTIPLE

4     PRODUCTS INTO A TOP LEVEL NUMBER WITHOUT PROVIDING

5     YOU ACCESS AS TO THE ALLOCATION AMONG THE DIFFERENT

6     PRODUCTS, IS THAT BASICALLY IT?

7          MS. TUCHER:  THAT IS ONE OF OUR

8     COMPLAINTS, YES.

9          THE COURT:  I UNDERSTAND.  YOU HAVE

10    OTHERS, BUT ON THIS PARTICULAR POINT.

11         MS. TUCHER:  ON THE POINT OF

12    PRODUCT-BY-PRODUCT DATA, YES.  BUT AS TO COST OF

13    GOODS SOLD THEY HAVE ALSO MADE A LOT OF LINE ITEMS

14    IN COST OF GOODS SOLD AND GIVEN US THE TOP LINE

15    COST OF GOODS SOLD NUMBER.

16         THE COURT:  I DON'T PRETEND TO HAVE THE

17    EXPERTISE THAT OTHERS IN THIS ROOM DO BUT ARE COST

18    OF GOODS SOLD GENERALLY ALLOCATED ON A

19    PRODUCT-BY-PRODUCT BASIS?

20         MS. TUCHER:  WE KNOW THAT THEY HAVE THE

21    DATA ON A PRODUCT-BY-PRODUCT BASIS FROM WHICH WE

22    COULD CALCULATE COST OF GOODS SOLD.

23          FOR EXAMPLE, YOU START WITH THE COST OF

24    BILL OF MATERIALS, TO TALK ABOUT ANOTHER DOCUMENT

25    WE'VE ASKED FOR.  HOW MUCH DOES IT COST TO BUY EACH

                                                        42

1    OF THE THINGS THAT GOES INTO MAKING ONE OF THESE.

2            THEN YOU ADD OTHER KINDS OF COSTS THAT

3    ARE SPECIFIC TO THE MANUFACTURE OF THAT PRODUCT.

4    AND WHEN YOU ADD ALL THAT, THAT'S THE COST OF GOODS

5    SOLD.  THEN THE OTHER THING YOU HAVE TO DO WE CALL

6    THEM UNALLOCATED EXPENSES.

7            THE COURT:  G AND A, THAT TYPE OF THING.

8            MS. TUCHER:  YEAH.

9            SO THEY ARE BOTH COSTS AND EXPENSES WHERE

10   WE WANT DETAIL AND WE DIDN'T GET IT.  AND BEHIND

11   TAB 11 ARE SOME OF THE SPREADSHEETS THAT SHOW

12   COMBINATIONS OF PRODUCTS BEING REPORTED TO THE

13   OTHER.

14           SO FOR EXAMPLE, THE FIRST ONE IS AN S2

15   WHERE THEY COMBINED 1, 2, 3, 6 DIFFERENT SKU

16   NUMBERS.  ONE OF THESE SKU NUMBERS IS THE -- IS A

17   VERSION OF THE S2 THAT WE THINK WE'RE ENTITLED TO

18   DAMAGES ON.

19           WE SUSPECT THAT WHEN CROSS-EXAMINING

20   TERRY MUSIKA, THEY WILL WANT TO KNOW WHY HE THINKS

21   WE DESERVE DAMAGES AS TO THE OTHERS.  AND IT WOULD

22   CERTAINLY BE HELPFUL TO US IF WE HAD IT SO THAT WE

23   COULD PREPARE A ROBUST DEFENSE TO THAT SORT OF

24   ANALYSIS.

25           THE COURT:  SO IS YOUR QUESTION TO

                                                          43

1       SAMSUNG THEN SIMPLY, TELL US HOW THESE LINE ITEMS

2       BREAK DOWN BY STOCK KEEPING, OR WHAT MORE

3       SPECIFICALLY ARE YOU ASKING?

4              MS. TUCHER:  GIVE US BY SKU THE ACCUSED

5       PRODUCTS.  WE WANT ONE LINE ITEM BY SKU FOR EVERY

6       ACCUSED PRODUCT.

7              THE COURT:  I DON'T PRETEND TO UNDERSTAND

8       SAMSUNG'S BUSINESS IN ANY KIND OF LEVEL OF DETAIL

9       LIKE THEY DO OR PERHAPS YOU DO, BUT IT HAS BEEN MY

10      EXPERIENCE THAT MULTIPLE SKU'S ROLL UP IN THESE

11      LEDGERS IN INDIVIDUAL PRODUCT LINES, IS THAT

12      CORRECT IN THIS CASE?  IS THAT ACCURATE IN THIS

13      CASE?  SO THERE'S NOT A SINGLE SKU FOR A GIVEN

14      PRODUCT BUT PERHAPS MULTIPLE SKU'S DEPENDING HOW

15      THE PRODUCTS ARE MARKETED.

16             MS. TUCHER:  THAT MAY BE FOR EXAMPLE THE

17      TAB 10.1.

18             THE COURT:  YOU DON'T KNOW BECAUSE YOU

19      DON'T HAVE THE DATA.

20             MS. TUCHER:  I DON'T KNOW.  THEY MAY ROLL

21      IT UP ANY NUMBER OF DIFFERENT WAYS.

22             BUT WE KNOW THEY DO HAVE AND THAT THEY

23      CAN GET THE DATA THAT WE NEED.

24             SO LET ME AT THIS POINT FLIP TO TAB 14

25      THEN WE WILL COME BACK BECAUSE I WANT TO TELL YOU

1        WHAT EXACTLY IT IS THAT WE WANT, GIVEN THAT WE HAVE

2        THE TWO-PAGE LIST OF THINGS THAT WE ASKED FOR LAST

3        TIME AROUND AND THAT WE UNDERSTAND YOU HAVE ORDERED

4        THEM TO PRODUCE AND WE DIDN'T GET MANY OF.

5                SO WE TRY TO BOIL IT DOWN TO BE SPECIFIC.

6        THE REMEDY WE ARE SEEKING HERE IS NUMBER ONE,

7        COMPLETE PRODUCTION OF DOCUMENTS SO WE CAN DO A

8        PROPER DAMAGES ANALYSIS.

9                AND WE ARE NOT UNHAPPY WITH GETTING

10       SPREADSHEETS WE JUST WANT SPREADSHEETS, WE WANT

11       THEM TO REPORT UNITS REVENUES COST OF GOODS SOLD,

12       OPERATING EXPENSES AND OPERATING PROFITS.

13               AND THOSE WERE ALL THINGS THAT WE ASKED

14       FOR BEFORE AND THAT WE UNDERSTOOD YOU ORDERED BY

15       FEBRUARY 3RD.  AND WE WANT THEM TO BE ON A

16       CONSOLIDATED BASIS FOR ALL THE U.S. PRODUCTS.

17               THE COURT:  SO YOU WANT ALL THE U.S.

18       PRODUCTS CONSOLIDATED INTO A SINGLE LINE ITEM?

19               MS. TUCHER:  CONSOLIDATED AS TO THE THREE

20       SAMSUNG ENTITIES.  AND WE WANT THEM NOT TO COMBINE

21       BUT TO DO WHAT ACCOUNTANTS CALL CONSOLIDATING AS TO

22       DIFFERENT ENTITIES WHEN THEY GIVE US THE DATA FOR

23       ANY SINGLE PRODUCT.  WE WANT IT FOR ALL PRODUCTS IN

24       THE CASE, WE'VE TALKED ABOUT THAT.  WE WANT IT

25       INDIVIDUALLY BY SKU NUMBER, THAT'S IN ORDER TO BE

                                                            45

1    ABLE TO BE ABLE TO TELL ARE WE TALKING ABOUT THE S2

2    HERCULES SOLD THROUGH T-MOBILE OR A DIFFERENT S2.

3                THE COURT:  BUT RECOGNIZING THOUGH THAT

4    AGAIN, TO MY KNOWLEDGE THERE'S NO SUCH THING AS A

5    COST OF GOODS SOLD AVAILABLE ON A PER SKU BASIS, IS

6    THERE?

7                MS. TUCHER:  I THINK THEY DO HAVE THAT.

8                THE COURT:  MR. OLSON IS STANDING UP.  DO

9    YOU WISH TO SUPPLEMENT?

10               MR. OLSON:  YEAH.  I CAN ON BOTH POINTS.

11               SO ABSOLUTELY THERE'S A COST OF GOODS

12   SOLD BY SKU.  BOTH THERE'S A PORTION OF ANY COST OF

13   GOODS SOLD THAT IS NONMATERIAL COSTS BUT IT'S A

14   VERY SMALL PORTION AS MR. SIMMS ACKNOWLEDGED

15               MS. MAROULIS:  MR. OLSON, AGAIN, I WOULD

16   APPRECIATE IF YOU DON'T DIVULGE CONFIDENTIAL

17   PROTECTIVE ORDER INFORMATION.

18               MR. OLSON:  THERE IS DATA ON COST OF

19   GOODS SOLD BY SKU AVAILABLE.  IT'S ALSO POSSIBLE TO

20   DO IT ON A CONSOLIDATED BASIS AS LONG AS YOU HAVE A

21   SINGLE PRODUCT SOLD IN ONE COUNTRY.

22               THE COURT:  ALL RIGHT.

23               BEFORE I GOT DISTRACTED I ACTUALLY HAD A

24   QUESTION ABOUT YOUR USE IN YOUR PAPERS, APPLE'S USE

25   OF THE TERM CONSOLIDATED.

                                                      46

1          COULD YOU JUST EXPLAIN OR ELABORATE WHAT

2     YOU MEAN WHEN YOU SAY "CONSOLIDATED" BECAUSE I'M

3     NOT SURE I'M NECESSARILY APPRECIATING THE

4     IMPORTANCE OF THE TERM.

5          MS. TUCHER:  IT'S AN ACCOUNTING TERM AND

6     I'M NOT AN ACCOUNTANT.

7          THE COURT:  NEITHER AM I, SO LET'S SEE IF

8     WE CAN FIGURE THIS OUT.

9          MS. TUCHER:  THE WAY THIS WORKS IS THAT

10    SAMSUNG HAS A SUBSIDIARY MANUFACTURE A PRODUCT THAT

11    SAMSUNG KOREA OR THAT SUBSIDIARY, WE WON'T BE

12    SPECIFIC ABOUT EXACTLY HOW, SELLS TO STA OR ITS

13    COUNTERPART TO THE AMERICAN SUBSIDIARY.

14         THEN THE AMERICAN SUBSIDIARY AFTER MAYBE

15    A COUPLE OF MONTHS SELLS THAT PRODUCT TO AT&T,

16    LET'S SAY WHO THEN SELLS IT TO THE CONSUMER AND SO

17    ON.

18         SO WE NEED TO FIGURE OUT WHAT THE COST OF

19    GOODS SOLD FOR THE PRODUCT THAT GETS SOLD TO AT&T

20    IS.  AND IN ORDER TO DO THAT WE HAVE TO KNOW HOW

21    MUCH DID IT COST SAMSUNG KOREA OR ITS SUBSIDIARY TO

22    MAKE THAT PRODUCT.

23         AND THEN SORT OF BE ABLE TO FOLLOW THAT

24    PRODUCT AND THE COST ASSOCIATED WITH IT AS IT GOES

25    ON THE JOURNEY WITH THE DIFFERENT CORPORATE

47

1    ENTITIES.

2           AND ONE OF THE THINGS THAT MAKES IT

3    COMPLICATED IS AS IT GOES ON ITS JOURNEY THROUGH

4    THE CORPORATE ENTITIES SAMSUNG KEEPS A SET OF BOOKS

5    THAT IN SAMSUNG'S VIEW ACCURATELY RECORDS THE COSTS

6    AND THEREFORE THE PROFITS THAT EACH OF THESE

7    ENTITIES EARNS.

8           THOSE NUMBERS ARE NOT NECESSARILY THE

9    NUMBERS THAT GET REPORTED TO THE UNITED STATES

10   GOVERNMENT FOR PURPOSES OF PAYING TAXES.  THEY CAN

11   DO IT DIFFERENTLY.  THEY WORK THAT OUT WITH THE

12   IRS, WE AREN'T COMMENTING ON THAT.  BUT AS A RESULT

13   OF THAT THEY CAN, THROUGH TRANSFER PRICING, THEY

14   CAN MOVE AROUND WHERE THE PROFITS ACTUALLY OCCUR.

15   AND UNDER THE LAW WE ARE ENTITLED TO THE PROFITS

16   THEY EARN NOT THE PROFITS THEY REPORT TO THE IRS.

17           SO WE WANT TO BE ABLE TO FOLLOW THE COSTS

18   OF THAT VERY SPECIFIC PRODUCT AS IT GOES THROUGH

19   THE CHANNEL THROUGH THE ENTITIES TO BE ABLE TO

20   FIGURE OUT WHAT THE PROFIT ON THAT PRODUCT IS.

21           IT SOUNDS VERY COMPLICATED BUT IT'S

22   ACTUALLY THE WAY THEY KEEP THEIR BOOKS.

23           THE COURT:  I SUSPECT IT'S SIMILAR TO HOW

24   YOUR CLIENT KEEPS ITS BOOKS.

25           MS. TUCHER:  THAT I CAN'T COMMENT ON

1       RIGHT NOW, BUT I CAN TELL YOU THAT ON TAB 12 WE

2       HAVE AN EXAMPLE OF HOW IN SAMSUNG'S BOOKS HOW THEY

3       KEEP THIS DATA.

4               EXHIBIT 1926 IS A DOCUMENT YOU DON'T

5       ACTUALLY HAVE TO READ AND GET TO THE BOTTOM OF.

6       BUT BEHIND IT IS TESTIMONY FROM MR. SHEPPARD, THE

7       STA CONTROLLER.  AND HE TALKS ABOUT, HE SAYS

8       EXHIBIT 1926 IS A DOCUMENT THAT HE HAD PULLED SO HE

9       COULD CHECK THE ACCURACY OF THE DATA THEY PROVIDED

10      US IN THE SPREADSHEET.

11              WE SAID WE NEED MORE OF THOSE, MORE DATA

12      AT THE LEVEL OF EXHIBIT 1926 SO THAT WE CAN CHECK

13      THE ACCURACY OF THE DATA SAMSUNG PROVIDED IN THE

14      SPREADSHEET.  SO THAT'S THE PURPOSE OF TAB 12.

15              AND IN TAB 13 WE ASKED IN ORDER TO FIND

16      OUT WHETHER THERE WAS A DOABLE TASK WE ASKED, WHAT

17      WILL IT TAKE TO DO THIS.  AND THEY TOLD US IF YOU

18      GO TO PAGE 156, LINE 6 AND 7 HOW LONG IT WOULD TAKE

19      FOR THEM TO PULL THE DATA THAT WE THINK WE NEED AND

20      THAT WE ARE ENTITLED TO TO CHECK THE ACCURACY OF

21      THE SPREADSHEET THEY ARE GIVING US.

22              THE COURT:  IF I COULD GO BACK TO THE

23      EARLIER DISCUSSION WE HAD AROUND CONSOLIDATION, I'M

24      NOT SURE I GOT THE ANSWER I WAS LOOKING FOR OR

25      EXPECTED.

1          WHEN YOU ARE SAYING THEN THAT YOU WANT

2    CONSOLIDATED, YOU WANT THIS DATA ON A CONSOLIDATED

3    BASIS, YOU ARE ACTUALLY SAYING CONSOLIDATED AS

4    ACROSS THREE SEPARATE SAMSUNG ENTITIES?

5          MS. TUCHER:  IT ACTUALLY ENDS UP BEING

6    ACROSS TWO ENTITIES BECAUSE SAMSUNG KOREA SELLS

7    EITHER THROUGH STA OR THROUGH THE OTHER AMERICAN

8    SUBSIDIARY DEPENDING WHETHER IT'S PHONES OR TABS.

9          SO WE WANT CONSOLIDATED ACROSS BOTH OF

10   THOSE ENTITIES, THE DATA.

11         THE COURT:  BOTH OF THESE MEANING THE TWO

12   SAMSUNG ENTITIES AUTHORIZED TO SELL THE PRODUCT

13   HERE IN THE UNITED STATES.

14         MS. TUCHER:  WE WANT IT CONSOLIDATED FROM

15   SAMSUNG KOREA THROUGH ITS SUBSIDIARIES EITHER STA

16   OR THE OTHER ONE.

17         WHAT WE ARE CONSOLIDATING IS SAMSUNG

18   KOREA AND ONE SUBSIDIARY IN EACH CASE.

19         THE COURT:  IN EACH CASE, AND THERE ARE

20   TWO CASES?

21         MS. TUCHER:  EXACTLY.

22         THE COURT:  ALL RIGHT.

23         MS. TUCHER:  SO GOING BACK TO TAB 14 IN

24   SPECIFYING EXACTLY WHAT WE THINK WE'RE ENTITLED TO

25   IN THIS SPREADSHEET, WE THINK NOW THAT WE HAVE

50

1    EXHIBIT 1926 AND NOW THAT SAMSUNG HAS TOLD US THAT

2    IT DOESN'T TAKE THAT LONG TO PRODUCE THE DATA IN

3    THE FORM AT THE LEVEL OF EXHIBIT 1926, THAT WE

4    SHOULD JUST SPECIFY, AND 1926 IS A DOCUMENT THAT

5    COMES FROM STA FROM THE AMERICAN SUB.

6              SO I DON'T KNOW EXACTLY WHAT THE KOREAN

7    COMPANY'S COUNTERPART DOCUMENT LOOKS LIKE, BUT IF

8    YOU SAY YOU WANT THE DOCUMENT AT THE EQUIVALENT

9    LEVEL, AND THE MANUFACTURING SUB OF STC IN ORDER TO

10   BE ABLE --

11             THE COURT:  WHAT'S A PRUNI REPORT?

12             MS. TUCHER:  THAT GOES BACK TO THE COST

13   DATA, AND I'M NOT SURE HOW MUCH I'M ALLOWED TO SAY

14   IN RESPONSE WITHOUT GETTING IN TROUBLE WITH MY

15   FRIENDS AT SAMSUNG OVER THE CONFIDENTIALITY.

16             BUT I CAN SAY IT HAS DATA ABOUT SALES

17   THAT HAVE ALREADY OCCURRED THAT WOULD BE HELPFUL TO

18   US IN -- AND I SHOULD ALSO SAY IT'S A REPORT THAT

19   EXISTS.

20             WE ARE NOT ASKING FOR ANYTHING TO BE

21   CREATED.  AND THAT GOES THROUGH, YOU KNOW, 20

22   LEVELS OF REVIEW AND BACK IN KOREA AND HAS LOTS OF

23   SIGNATURES, PEOPLE HAVE VERIFIED IT'S ACCURATE

24   DATA.

25             THE COURT:  WHY ARE THE BUSINESS PLANS

```
 1    NECESSARY?

 2              MS. TUCHER:  YOUR HONOR, THE BUSINESS

 3    PLANS HELP US TO SEE WHAT 2012 IS SUPPOSED TO LOOK

 4    LIKE IN SAMSUNG'S EYES.

 5              IT WAS PART OF WHAT YOU ORDERED PRODUCED

 6    ON FEBRUARY 3RD AND THEY'VE GIVEN THEM TO US IN

 7    REDACTED FORM, THEY JUST TOOK OUT A LOT OF THE

 8    INFORMATION.

 9              THE COURT:  CAN YOU TELL WHAT'S BEEN

10    REDACTED EVEN IF YOU DON'T KNOW EXACTLY?

11              MS. TUCHER:  WE CAN TELL MUCH OF THE

12    SUBSTANCE OF THE REPORTS.

13              THE COURT:  ALL RIGHT.

14              MS. TUCHER:  SO THOSE ARE THE DOCUMENTS

15    AND DATA THAT WE BELIEVE SHOULD HAVE BEEN PRODUCED

16    FEBRUARY 3RD AND THAT WE WOULD LIKE TO HAVE

17    PRODUCED AS THE FIRST ITEM IN OUR ASK HERE AS A

18    RESULT OF THE VIOLATION OF YOUR FEBRUARY 3RD ORDER.

19              WE THINK WE WILL NEED A LITTLE BIT OF

20    TIME WITH A WITNESS TO MAKE SURE WE UNDERSTAND THE

21    DATA CORRECTLY.  WE UNDERSTAND DISCOVERY IS CLOSED,

22    SO RATHER THAN ASKING FOR A NEW 30(B)(6) DEPONENT

23    YOU'VE ALREADY ORDERED THAT JOSEPH CHUNG BE MADE

24    AVAILABLE.  HE'S -- BECAUSE OF HIS POSITION AS CFO

25    AT STA, WE THINK IN A POSITION TO ANSWER QUESTIONS
```

1      IF WE COULD HAVE A COUPLE OF EXTRA HOURS WITH HIM.

2              WE'VE ASKED THAT WE BE ALLOWED TO USE THE

3      NEW DATA THAT WE GET FROM SAMSUNG WITHOUT FILING

4      SUPPLEMENTAL EXPERT REPORT.  THE REASON FOR THAT IS

5      THAT OUR ORIGINAL EXPERT REPORT IS IN.  WE ARE

6      GOING TO SOON GET THEIR RESPONSE TO THAT.

7              OUR DAMAGES EXPERT IS DUE TO BE DEPOSED

8      SOME TIME THIS MONTH, THE LAST DATE FOR EXPERT

9      DEPOSITIONS IS THE 27TH OF APRIL.

10             WE DON'T THINK IT'S FAIR TO ALLOW SAMSUNG

11     TWO BITES AT THE APPLE, TWO OPPORTUNITIES TO

12     CROSS-EXAMINE OUR DAMAGES EXPERT AS A BENEFIT OF

13     THEIR OWN VIOLATION OF YOU'RE ORDER.

14             THE COURT:  SO WOULDN'T A BETTER WAY TO

15     SOLVE THAT PROBLEM BE TO SIMPLY DELAY HIS

16     DEPOSITION AND HAVE HIM DEPOSED ONCE AFTER A

17     SUPPLEMENTAL REPORT IS TENDERED?

18             MS. TUCHER:  YOUR HONOR, I UNDERSTAND

19     THAT THAT IS AN ALTERNATIVE.

20             WE HAVE BEEN DOING EVERYTHING WE CAN TO

21     STICK WITH THE SCHEDULE THAT JUDGE KOH SET IN THIS

22     CASE BECAUSE IT'S NOT IN APPLE'S INTEREST TO SEE

23     ANYTHING DELAYED.  BUT I JUST WANT TO MAKE SURE YOU

24     KNEW THAT APRIL 27TH IS THE --

25             THE COURT:  I'M JUST THINKING OF

53

1       JUDGE KOH'S INTEREST IN MANAGING A TRIAL WITH

2       TESTIMONY THAT WASN'T DISCLOSED IN A REPORT, THAT

3       GETS AWFULLY DIFFICULT.

4               MS. TUCHER:  I UNDERSTAND YOUR POINT, BUT

5       I THINK THAT SAMSUNG IS THE PARTY THAT HAS PUT US

6       IN THAT POSITION AND AT SOME LEVEL IT'S SAMSUNG'S

7       RESPONSIBILITY TO COPE WITH THE CONSEQUENCES.

8               WE'VE ALSO ASKED THAT SAMSUNG BE REQUIRED

9       TO LIVE WITH THE RESULTS OF ITS FEBRUARY 3RD

10      PRODUCTION.  AND THE REASON THAT THAT MATTERS IS

11      BECAUSE OF THE BIG NUMBER THAT I SHOWED YOU THAT

12      THEY HAVE MOVED FROM, THEY PULLED OUT PROFITS AND

13      MOVED INTO COSTS.  AND THEY DID THAT AFTER

14      FEBRUARY 3RD.  AND WE THINK IT WAS ILLEGITIMATE BUT

15      WE THINK THEY SHOULD BE REQUIRED TO LIVE WITH WHAT

16      THEY GAVE US AS THE DATE YOU HAD ORDERED IT.

17              THE COURT:  I APOLOGIZE FOR JUMPING

18      AROUND A BIT ON THIS, BUT IS IT FAIR FOR ME TO

19      UNDERSTAND THAT ALL OF THIS INFORMATION YOU BELIEVE

20      SHOULD HAVE BEEN PRODUCED AND EITHER WASN'T OR WAS

21      PRODUCED FAR TOO LATE, ALL RELATES TO YOUR CLAIM

22      FOR PROFITS ALONE, OR DOES THIS IMPLICATE ANY OF

23      YOUR OTHER BUCKET LIST OF DAMAGES, FOR LACK OF A

24      BETTER TERM?

25              MS. TUCHER:  I THINK IT IS MOST DIRECTLY

1    IS RESPONSIVE TO OUR ASK FOR INFRINGEMENT DAMAGES,

2    BUT I DON'T KNOW HOW THEY INTEND TO PUT THEIR CASE

3    TOGETHER AND WHAT LINES OF ATTACK THEY INTEND TO

4    LAUNCH ON OUR DAMAGES EXPERT, SO I DON'T THINK

5    THAT'S THE ONLY REASON WE NEED THE INFORMATION.

6    BUT THAT'S CERTAINLY A GOOD UNDERSTANDING OF WHY

7    IT'S ABSOLUTELY CRUCIAL.

8              AND FINALLY, WE WOULD ASK AS WE DID TWO

9    WEEKS AGO FOR A FINDING FROM YOUR HONOR THAT

10   SAMSUNG MATERIALLY VIOLATED YOUR ORDER BY NOT

11   GIVING US ANY OF THIS DATA.

12             THE COURT:  ALL RIGHT.

13             MS. TUCHER:  UNLESS YOU HAVE QUESTIONS.

14             THE COURT:  SO I THINK YOU ANSWERED THE

15   QUESTIONS I HAVE AT THIS TIME.

16             THANK YOU VERY MUCH.

17             MS. TUCHER:  THANK YOU VERY MUCH.

18             THE COURT:  MS. MAROULIS.

19             MS. MAROULIS:  GOOD MORNING AGAIN,

20   YOUR HONOR.

21             THE COURT:  GOOD MORNING.

22             MS. MAROULIS:  BEFORE I PROCEED WITH MY

23   ARGUMENT ABOUT WHY SANCTIONS ARE NOT WARRANTED AND

24   WHY THE ORDER WAS NOT VIOLATED, I WANTED TO ADDRESS

25   THE QUESTION THAT SEEMS TO TROUBLE YOUR HONOR WHICH

                                                    55

1    IS WHAT HAPPENED TO THE THREE MODELS THAT APPLE

2    SAYS WERE NEVER PROVIDED THEM INFORMATION ON?

3              THE THREE MODELS AT ISSUE ARE NOT PART OF

4    THIS CASE.  AND HERE'S HOW THIS TRANSPIRED.  IF

5    YOUR HONOR INDULGES ME TO GIVE YOU PROCEDURAL

6    HISTORY HERE --

7              THE COURT:  GO AHEAD.

8              MS. MAROULIS:  APPLE SERVED ITS

9    INFRINGEMENT CONTENTIONS IN SEPTEMBER.  THEREAFTER

10   BOTH COMPANIES ISSUED THROUGH PRODUCTS, YOU CAN

11   CALL THEM NEW PRODUCTS, NEW MODELS APPLE CAME OUT

12   WITH, IPHONE 4S AND SAMSUNG CAME OUT WITH

13   ADDITIONAL PRODUCTS.

14             STARTING ABOUT LATE NOVEMBER THE PARTIES

15   STARTED NEGOTIATING ADDING THOSE NEW PRODUCTS TO

16   THE CASE.  SAMSUNG WANTED TO ADD FOUR AND APPLE

17   WANTED TO ADD ANYWHERE BETWEEN 36 MODELS THAT I

18   STARTED WITH TO WHAT LATER BECAME FIVE OR SIX

19   MODELS.

20             WE NEGOTIATED FOR TWO MONTHS AND

21   ULTIMATELY THE STIPULATION WE PUT ON THE RECORD

22   BEFORE YOUR HONOR REFLECTS THE ALMOST FINAL

23   AGREEMENT BETWEEN THE PARTIES WHERE 4S WOULD BE

24   ADDED TO SAMSUNG TO ASSERT INFRINGEMENT, AND FIVE

25   OR SIX PRODUCTS WOULD BE ADDED FOR APPLE.

1          AND THE THREE MODELS AT ISSUE HERE AT

2     LEAST TWO OF THEM WERE IN THAT STIPULATION.

3     ULTIMATELY THE NEGOTIATIONS BROKE DOWN.  WE FELT

4     THAT APPLE MISLEAD US ULTIMATELY AND FORCED US TO

5     MOVE BEFORE JUDGE KOH TO ADD 4S.

6          AND AS YOUR HONOR MAY KNOW JUDGE KOH

7     RECENTLY ISSUED AN ORDER SAYING 4S IS NOT IN THE

8     CASE AND IT'S TOO LATE TO ADD PRODUCTS THAT WOULD

9     IMPACT THE TRIAL.

10          ON OUR END, SAMSUNG, WE UNDERSTOOD THE

11     PRODUCTS APPLE SOUGHT TO ADD WERE THE NOT IN THE

12     CASE OTHERWISE WHY WOULD THEY BE ADDING THEM IN THE

13     STIPULATION, WHY WOULD WE HAVE TWO MONTHS OF

14     NEGOTIATIONS.

15          I WAS PERSONALLY INVOLVED IN THAT,

16     MR. JACOBS AND MR. HUNG WERE INVOLVED ON THE OTHER

17     SIDE.  THAT WAS A PIECE OF INFORMATION THAT LEAD US

18     TO BELIEVE THEY ARE NOT PART OF THE CASE.

19          THE SECOND PIECE OF INFORMATION IS THAT

20     ON MARCH 4, APPLE SERVED AMENDED INTERROGATORIES

21     FOR THE FIRST TIME ADDING THESE MODELS INTO THE

22     CASE AS ACCUSED PRODUCTS.

23          WHY IS THAT IMPORTANT?  THAT'S IMPORTANT

24     BECAUSE WE ARE TALKING HERE ABOUT COMPLIANCE WITH

25     JANUARY 27TH ORDER, COMPLIANCE ON FEBRUARY 3RD.

1    OBVIOUSLY, IF THEY ARE ADDING THINGS AS ACCUSED

2    PRODUCTS LATER ON, NOT ONLY IS IT NOT LEGITIMATE

3    BECAUSE THEY DIDN'T SEEK LEAVE OF COURT LIKE WE

4    DID, IT DEMONSTRATES THEY THEMSELVES DID NOT THINK

5    THE PRODUCTS WERE IN.

6              I WANTED TO START WITH THIS BECAUSE

7    YOUR HONOR ASKED POINTED QUESTIONS ABOUT US NOT

8    PROVIDING THE DATA.  THAT'S THE BASIS OF WHY

9    SAMSUNG DID NOT PROVIDE THE DATA.

10             THE COURT:  I BELIEVE YOU INDICATED THAT

11   THOSE FACTS PERTAIN TO TWO OF THE THREE PRODUCTS

12   THAT WE WERE TALKING ABOUT.  SO WHAT ABOUT THE

13   THIRD?  WAS THAT ALSO THE SUBJECT OF THIS FAILED

14   EFFORT STIPULATION?

15             MS. MAROULIS:  YOUR HONOR, I DON'T

16   BELIEVE THE THIRD ONE WAS SUBJECT TO THE

17   STIPULATION BUT THE THIRD WAS ADDED INTO THE

18   INTERROGATORY ON MARCH 4TH.

19             THE COURT:  ALL RIGHT.

20             MS. MAROULIS:  SO IT WAS BASICALLY --

21   WHAT I DID HERE IS I EXPLAINED TO YOUR HONOR THE

22   PROCEDURE AND WHY WE BELIEVE THIS IS NOT PART OF

23   THE CASE AND WHY WE PROPERLY SOUGHT THE LEAVE OF

24   COURT TO ADD PRODUCTS AND WERE DENIED IT AND APPLE

25   ENGAGED IN SELF HELP AND ADDED PRODUCTS WITHOUT

```
1    SEEKING LEAVE OF COURT.  WE WILL ADDRESS THOSE

2    ISSUES LATER AS NEEDED BEFORE JUDGE KOH.

3              BUT THE REASONS PERTINENT TODAY IS WE

4    DIDN'T WANT YOUR HONOR TO THINK WE ARE DISREGARDING

5    THE ORDER IN ANY RESPECT.  AND THIS IS ONE OF THE

6    ASPECTS THAT CAME UP IN THE ARGUMENT.

7              SO GOING BACK TO THE OVERALL MOTION THAT

8    APPLE PRESENTED --

9              THE COURT:  I WANT TO GO BACK AND ALLOW

10   YOU TO MAKE THOSE REMARKS, MS. MAROULIS.  I JUST

11   WANT TO UNDERSTAND WHAT YOU WOULD SUGGEST I DO.

12             SO IN ORDER TO RESOLVE THIS ISSUE IT

13   SEEMS TO ME I HAVE TO WEIGH IN ON WHETHER OR NOT

14   THESE PRODUCTS ARE IN FACT PART OF THIS CASE; IS

15   THAT FAIR?

16             MS. MAROULIS:  YES, YOUR HONOR.

17             BUT TO THE EXTENT THAT THE COURT DEEMS

18   THAT THEY ARE PART OF THE CASE AND ORDERS US TO

19   SUPPLEMENT, IT SHOULD NOT BE A SANCTIONS MOTION IN

20   A SENSE BECAUSE IF THE PRODUCT IS NOT IN THE CASE

21   AND ARE LATER ADDED BY THE CASE.

22             IN OTHER WORDS, IF YOUR HONOR DEEMS THEM

23   ADDED TO THE CASE AND DECIDES THAT IT'S NOT PART OF

24   THE CASE, WE SHOULD BE ABLE TO SUPPLEMENT.  IT

25   CANNOT BE A VIOLATION OF THE ORDER TO GIVE DATA ON
```

1    THE PRODUCTS THAT WERE NOT PART OF THE CASE

2    PREVIOUSLY TO THE ORDER.

3              THE COURT:  AND WERE ANY FILINGS

4    SUBMITTED BY APPLE BEFORE MY ORDER THAT INDICATED

5    THAT ANY VERSION OF THE S2 FOR EXAMPLE IS AN

6    ACCUSED PRODUCT IN THIS CASE?

7              MS. MAROULIS:  THEY DID NOT IDENTIFY THE

8    SPECIFIC MODELS THAT THEY ARE SEEKING HERE.  S2

9    ITSELF WAS IN THE DRAFT ADDENDUM OR IN THE ADDENDUM

10   THEY SUBMITTED WITH THE WITH THE INFRINGEMENT

11   CONTENTIONS IN SEPTEMBER.  AND IT WAS IN A DRAFT

12   FORM BECAUSE IT WAS NOT YET ON THE MARKET.  THEN IT

13   CAME ON THE MARKET.

14             BUT ANOTHER THING YOUR HONOR THAT'S

15   IMPORTANT TO UNDERSTAND BECAUSE THIS IS A CASE THAT

16   HAS BOTH PATENT CLAIMS AND A SOFT IP, THESE MODELS

17   ARE DIFFERENT FROM EACH OTHER.  PARTIES CAN ARGUE

18   WHETHER THEY ARE DIFFERENT IN MATERIAL RESPECTS OR

19   NOT, BUT BECAUSE SOME OF THE ACCUSATIONS GIVEN TO

20   THE SHAPE OF THE HARDWARE, DEPTH OF THE BEZEL,

21   VARIOUS THINGS THAT COULD BE PERCEPTIBLE, THEY ARE

22   DIFFERENT FROM EACH OTHER.

23             SO ADDING PRODUCTS AT LATE DATE DOES

24   PREJUDICE SAMSUNG IN A VARIETY OF WAYS IN ADDITION

25   TO THE FACT THAT THEY WERE NOT SUBJECT TO THE COURT

1    ORDER ON JANUARY 27TH.

2              THE COURT:  SO BEFORE THE 27TH ORDER, IF

3    I UNDERSTAND WHAT YOU ARE TELLING ME, THERE WASN'T

4    ANYTHING FROM APPLE WHICH INDICATED THAT, FOR

5    EXAMPLE, THE T-MOBILE VERSION OF THE S2 THE

6    HERCULES WAS A PRODUCT THAT WAS ACCUSED OF

7    INFRINGING ONE OR MORE OF THE ASSERTED PATENTS IN

8    THIS CASE.

9              MS. MAROULIS:  YOUR HONOR, HERCULES IS

10   NOT ONE OF THE MODELS WE ARE OBJECTING TO.

11             THE COURT:  I'M SORRY, SKYROCKET.

12             MS. MAROULIS:  THAT'S CORRECT,

13   YOUR HONOR.

14             WE DID NOT HAVE NOTICE PRIOR TO

15   SKYROCKET.  THE ONLY NOTICE WE HAD WAS IN THOSE

16   DISCUSSIONS AND STIPULATIONS AND THAT'S WHY WE

17   ATTACHED THE STIPULATION.

18             I KNOW COUNSEL SAYS IT SHOULD BE

19   DISREGARDED BECAUSE IT DIDN'T AMOUNT TO ANYTHING,

20   IT IS AN INDICATION OF PARTIES' POSITION AND NOTICE

21   THEREOF.

22             THE COURT:  SO AS TO THESE PRODUCTS WHICH

23   YOU BELIEVE HAS BEEN IMPROPERLY IDENTIFIED AS BEING

24   PART OF THIS CASE, ARE THOSE PRODUCTS AT ISSUE IN

25   THE FOLLOWING CASE?  HAVE THEY BEEN IDENTIFIED

61

```
1     SPECIFICALLY?
2               MS. MAROULIS:  I DON'T KNOW OFF HAND YOUR
3     HONOR.
4               SO GALAXY NEXUS IS WHICH IS ONE OF THE
5     ITEMS IN THE NEGOTIATION STIPULATION.  BUT I CANNOT
6     TELL YOU STANDING HERE RIGHT NOW ACCURATELY WHETHER
7     SKYROCKET, EPIC 4G TOUCH AND THE LTE VERSION ARE.
8               I'M GOING TO ASK MY COLLEAGUES TO SEARCH
9     THE RECORD SO WE CAN GIVE YOU AN ACCURATE ANSWER.
10              THE COURT:  WHILE THEY ARE DOING THAT,
11    AND I APPRECIATE THEIR EFFORTS, THE REASON I'M
12    ASKING IS AT SOME POINT IF THE PRODUCTS ARE ACCUSED
13    IN THE FOLLOWING CASE WHICH IS A CASE ASSIGNED TO
14    JUDGE KOH, WE ARE GOING TO BE BACK HERE ARGUING
15    OVER THE SAME DATA.
16              SO IF IT'S GOING TO BE PRODUCED SIX
17    MONTHS FROM NOW OR TODAY, WHY NOT JUST PRODUCE IT
18    TODAY?
19              MS. MAROULIS:  YOUR HONOR, I WANT TO BE
20    CLEAR IF THE COURT ORDERS US TO PRODUCE IT WE WILL
21    PRODUCE IT.
22              THE COURT:  YOU ARE HERE DEFENDING
23    YOURSELF AGAINST A CHARGE YOU VIOLATED MY ORDER.
24              MS. MAROULIS:  THAT'S RIGHT.
25              SO WE ARE FOCUSED ON THE SCOPE OF THE
```

1        ORDER AND WHAT THE ORDER REQUIRED US TO DO.  IF

2        THERE'S A SEPARATE MOTION TO COMPEL RECORDS,

3        OBVIOUSLY WE ARE SUBJECT TO THE COURT'S ORDER AND

4        PROCEDURE ACCORDINGLY.

5                    THAT'S A GOOD PLACE TO SEGWAY BACK TO THE

6        SANCTIONS INQUIRY, WHICH IS WHAT IS THE SCOPE OF

7        THIS ORDER AND HAS THE PARTY COMPLIED WITH THE

8        ORDER?

9                    WHEN WE WERE BEFORE YOUR HONOR ON THE

10       JANUARY 19TH HEARING WE EXPLAINED TO YOUR HONOR

11       THAT SHORTLY BEFORE APPLE MOVED TO COMPEL THE

12       FINANCIAL DOCUMENTS, THE PARTIES ATTEMPTED TO

13       ENGAGE IN A MEET AND CONFER DISCUSSION.

14                   JANUARY 10TH LETTER WHICH IS REFERENCED

15       IN YOUR HONOR'S ORDER REPEATEDLY WAS SAMSUNG'S

16       ATTEMPT TO COMPROMISE TO AVERT MOTION PRACTICE.

17                   IN THAT JANUARY 10TH LETTER THIS WAS A

18       VARIETY OF DOCUMENT CATEGORIES WE ADDRESSED.  ONE

19       OF THEM WAS FINANCIAL RECORDS.

20                   WITH RESPECT TO FINANCIAL RECORDS, WE

21       BROKE OUT SIX DIFFERENT CATEGORIES WHICH WE WERE

22       WILLING TO PRODUCE INFORMATION ON AND WHICH WE

23       THOUGHT IT WAS FAIR FOR APPLE TO ASK.

24                   WHEN APPLE LATER MOVED TO COMPEL A DAY

25       LATER AFTER, REJECTING OUR OFFER, IN TO THE MOTION

1    WE STATED THE SAME SIX CATEGORIES.  THOSE

2    CATEGORIES ARE LISTED AT SAMSUNG'S OPPOSITION TO

3    MOTION TO COMPEL ON PAGE 14.

4         AND FINALLY, WHEN WE APPEARED BEFORE YOU

5    AT THE HEARING, COUNSEL REITERATED THAT THAT WAS

6    OUR OFFER AND THAT IS WHAT WE WERE PLANNING TO

7    PRODUCE.  SIX DISCREET CATEGORIES THAT WERE BROAD,

8    NOT EXHAUSTIVELY WHAT APPLE WAS SEEKING IN THAT

9    PROPOSED ORDER.

10        WHEN YOUR HONOR ISSUED THE ORDER WE READ

11   IT AND STARTED COMPLYING WITH IT.  AND THE ORDER

12   SPECIFICALLY AT FOOTNOTE 34 REFERENCED THE PROFFER

13   THAT WE MADE THE IN THE JANUARY 10TH LATER AND WHAT

14   WE TOLD THE COURT IN OUR OPPOSITION.

15        SPECIFICALLY, PAGE 15 OF THE ORDER AND

16   FOOTNOTE 34 SAYS SEE DOCKET 642 AT 14 WHICH IS

17   OPPOSITION TO THE MOTION TO COMPEL.  AND DOCKET

18   NUMBER 642-1 EXHIBIT 1 WHICH IS OUR JANUARY 10TH

19   LETTER.

20        SO IN ALL THESE THREE DIFFERENT

21   PRESENTATIONS, THE JANUARY 10TH LETTER, OPPOSITION

22   TO MOTION TO COMPEL AND THE HEARING ITSELF, SAMSUNG

23   WAS VERY CONSISTENT IN WHAT SAMSUNG WAS WILLING TO

24   PRODUCE.  AND THAT WAS SIX DIFFERENT CATEGORIES OF

25   DAMAGES RELATED DATA.

64

1           ONE OF THEM IT ENDED UP WE DID NOT HAVE

2      ANY NON PRIVILEGED DOCUMENTS.  SO WHEN WE DID

3      PRODUCE DOCUMENTS ON FEBRUARY 3RD AND BEFORE, WE

4      ACTUALLY PRODUCED THEM IN FIVE CATEGORIES.  BUT WE

5      EXPLAINED TO APPLE, I DON'T THINK THAT PART HAS

6      BEEN CHALLENGED HERE, THAT WE DID NOT HAVE ANY NON

7      PRIVILEGED EVALUATIONS OF THE PATENTS IN SUIT.

8           APPLE DISAGREED WITH OUR INTERPRETATION

9      OF THE ORDER.  BUT THEY DID NOT SEEK ANY KIND OF

10     CLARIFICATION FROM THE COURTS.  INSTEAD THEY FILED

11     THIS MOTION FOR SANCTIONS.

12          THERE'S NO QUESTION, YOUR HONOR, THAT AS

13     TO THOSE SIX CATEGORIES SAMSUNG COMPLIED AND

14     SAMSUNG PRODUCED THE DATA IN VARIOUS FORMS THAT IT

15     TOLD THE COURT IT WOULD PRODUCE.

16          THE COURT:  SO MS. MAROULIS, IS IT FAIR

17     THEN FOR ME TO UNDERSTAND THAT AS TO ANY

18     INFORMATION WHICH EXTENDS BEYOND THOSE SIX

19     CATEGORIES AND YET FALLS WITHIN THE SCOPE OF THAT

20     APPLE IS NOW SEEKING FROM SAMSUNG IS NOT COMPLIANT;

21     IS THAT FAIR?

22          MS. MAROULIS:  YOUR HONOR, IF IT'S

23     OUTSIDE THOSE SIX CATEGORIES WE UNDERSTAND IT TO BE

24     OUTSIDE THE ORDER.

25          SO A LOT OF WHAT WE HEARD TODAY SEEMS

1    LIKE A MOTION TO COMPEL A NEW SET OF DOCUMENTS.

2            THE COURT:  FAIR ENOUGH.  WE WILL ADDRESS

3    THAT ISSUE IN DUE COURSE.

4            BUT I WANT TO MAKE SURE I UNDERSTAND.  IS

5    IS IT CORRECT FOR ME TO UNDERSTAND THAT TO THE

6    EXTENT APPLE IS ASKING FOR ANYTHING MORE THAN THOSE

7    SIX CATEGORIES, IT HAS NOT RECEIVED THAT

8    INFORMATION FROM SAMSUNG.

9            MS. MAROULIS:  GENERALLY YES, YOUR HONOR,

10   THERE MIGHT BE DOCUMENTS.

11           THE COURT:  SURE SOME THINGS MAY OVERLAP.

12           MS. MAROULIS:  YES, ABSOLUTELY.

13           WE PRODUCED 12,000 PAGES OF FINANCIAL

14   DATA FROM THE ITC PROCEEDINGS WHERE WE HAVE CROSS

15   USE AGREEMENT.

16           I CANNOT SPEAK FOR EVERY PAGE OF IT BUT

17   GENERALLY SPEAKING BECAUSE OUR UNDERSTANDING OF THE

18   ORDER IS LIMITED TO THOSE SIX CATEGORIES, BUT IF

19   THERE'S SPECIFIC DOCUMENT THAT IS APPLE IS SEEKING

20   TODAY AND WE BELIEVE ARE NOT PART OF THE ARE ORDER,

21   WE LIKELY DID NOT PRODUCE THEM UNLESS IT WAS ALSO

22   RESPONSIVE TO OTHER CATEGORIES.

23           AND HERE YOUR HONOR, IT'S IMPORTANT TO

24   NOTE THAT AFTER THE MOTION PRACTICE OR CERTAINLY

25   AFTER THE JANUARY 27TH ORDER, APPLE SERVED ANOTHER

1    SET OF DOCUMENT REQUESTS.  AND THOSE DOCUMENT

2    REQUESTS APPLE WAS VERY SPECIFIC THEY WANTED

3    PRELIMINARY REPORTS, THEY WANTED FLUX REPORTS, THEY

4    WANTED CONSOLIDATED PROFITS.

5              THE COURT:  ARE YOU IN A POSITION TO TELL

6    ME WHAT A PRUNI REPORT IS?

7              MS. MAROULIS:  YOUR HONOR, I DON'T WANT

8    TO GO INTO A CONFIDENTIAL MATTER, BUT IT'S MY

9    UNDERSTANDING IT'S AN AD HOC REPORT PREPARED FOR

10   MANAGEMENT'S CONSIDERATION.  AND I THINK IT'S

11   FUTURE FORECASTING NOT ACTUALS AS OPPOSED TO WHAT

12   WE HAVE PRODUCED, AND WE HAVE PRODUCED ACTUALS.

13             AND I'M TRYING TO BE VERY CAREFUL HERE

14   BECAUSE IT'S CONFIDENTIAL.

15             THE COURT:  I UNDERSTAND.

16             MS. MAROULIS:  MY COLLEAGUE CORRECTED ME,

17   IT'S NOT AD HOC, IT'S MORE REGULAR, BUT IT'S NOT

18   PART OF THE AUDITED STATEMENTS.

19             THE COURT:  IT'S NOT SOMETHING THAT WOULD

20   BE SUBMITTED -- IT'S A MANAGEMENT REPORT.

21             MS. MAROULIS:  THAT'S CORRECT,

22   YOUR HONOR.

23             SO THE FACT THAT APPLE LATER SERVED

24   SPECIFIC DOCUMENT REQUESTS ASKING FOR ALL THE

25   DIFFERENT DOCUMENTS DEMONSTRATES THAT THEY WERE NOT

67

```
 1        PART OF THE ORIGINAL MOTION PRACTICE.

 2                 AND I APOLOGIZE YOUR HONOR AGAIN, BUT

 3        SINCE YOUR HONOR DID ASK THE QUESTION, MY

 4        COLLEAGUES INFORM ME THAT SKYROCKET AND EPIC ARE

 5        ACCUSED IN CASE TWO THAT YOUR HONOR WILL BE --

 6                 THE COURT:  SO WE ARE GOING DEALING WITH

 7        THIS AT SOME POINT OR ANOTHER.

 8                 MS. MAROULIS:  THAT APPEARS TO BE

 9        CORRECT, FOR THE RECORD.

10                 SO GOING BACK TO WHAT WAS AND WAS NOT

11        WITHIN THE SCOPE OF THE ORDER OF.

12                 SO HOW DID SAMSUNG COMPLY WITH THE ORDER

13        IN THE SIX CATEGORIES OF DOCUMENTS IT PRODUCED?

14                 FIRST OF ALL, WHILE THE SPREADSHEET WAS

15        THE FOCUS OF COUNSEL'S ARGUMENT, THAT IS NOT THE

16        ONLY FINANCIAL DOCUMENT WE HAVE PRODUCED.  AND I

17        RECALL MR. MCELHINNY TWO WEEKS AGO THEY SAY THEY

18        PRODUCED ONE PAGE.  THAT'S NOT PROPER.  IT'S NOT A

19        ONE PAGE, IT'S MULTIPLE PAGES DOCUMENT WITH ALL THE

20        ATTACHMENTS AND ALL THE WORKSHEETS.

21                 BUT MORE IMPORTANTLY, THAT IS NOT THE

22        ONLY DOCUMENT WE HAVE PRODUCED.  WE PRODUCED

23        ADDITIONAL SALES REPORTS, CLOSING REPORTS, VARIOUS

24        CARRIER DOCUMENTS THAT SHOW WHO IS SELLING WHAT.

25                 WE HAVE ATTACHED OUR MOTION PAPERS THE
```

1    DECLARATION OF JOBY MARTIN, THE LIST OF SOME OF THE

2    FINANCIAL DOCUMENTS AND IN OUR BRIEFS WE EXPLAIN

3    WHAT OTHER DOCUMENTS WE HAVE.  SO IT'S ABSOLUTELY

4    CLEAR THE SPREADSHEET SENT IS THE ONLY DOCUMENT

5    APPLE RECEIVED.

6         THE COURT:  IS IT ALSO CLEAR THAT NONE OF

7    THE INFORMATION IN ANY OF THOSE DOCUMENTS PROVIDES

8    APPLE WITH THE INFORMATION THEY ARE SEEKING BY THIS

9    MOTION AND WHICH EXTENDS OUTSIDE OF THE SCOPE OF

10   THOSE SIX CATEGORIES?

11        MS. MAROULIS:  YES AND NO. FOR SOME OF IT

12   YES, FOR SOME OF IT NO.

13        FOR EXAMPLE COST AND BILL OF MATERIALS

14   ARE NOT PART OF IT, FLUX REPORTS ARE PROBABLY NOT,

15   BUT VARIOUS OTHER DATA THAT THEY ARE CLAIMING THEY

16   DON'T HAVE CAN BE CALCULATED BY TAKING EXISTING

17   DOCUMENTS WITH THE SUPPORT OF THE DEPOSITION

18   TESTIMONY, AND YOUR HONOR SHOULDN'T UNDERSTAND THAT

19   NOW MR. SIMMS WHO IS A VERY HIGH LEVEL EXECUTIVE

20   WHICH MR. OLSON CONCEDED WAS DEPOSED TWICE AND

21   MR. SHEPPARD WAS DEPOSED THREE TIMES IN THIS CASE

22   ALONE, NOT COUNTING ITC.

23        SO NOT ONLY HAVE WE PRODUCED ENORMOUS

24   AMOUNTS OF DOCUMENTS AND FINANCIAL TOPICS, APPLE

25   FOLKS HAVE NOW HAD BETWEEN 5 AND 7 OPPORTUNITIES TO

1    SPEAK WITH OUR VARIOUS FINANCE PEOPLE WHO ARE VERY

2    HIGH LEVEL INDIVIDUALS.

3            THEY WILL ALSO HAVE AN OPPORTUNITY SPEAK

4    WITH THE CFO OF STA, MR. CHUNG, PURSUANT TO THE

5    APEX ORDER.

6            SO THERE'S BEEN NO SHORTAGE OF

7    OPPORTUNITY --

8            THE COURT:  I'M GLAD SAMSUNG VIEWS IT AS

9    AN OPPORTUNITY, I APPRECIATE THAT CHARACTERIZATION.

10           I DIDN'T MEAN TO INTERRUPT YOU THOUGH, GO

11   ON.

12           MS. MAROULIS:  YOUR HONOR, THE POINT

13   BEING HERE IS THAT A LOT OF ARGUMENTS YOU HEARD

14   TODAY WAS HOW THEY ARE GOING TO ARGUE THEIR DAMAGES

15   CASE.  AND I SUBMIT THAT'S NOT A PROPER FORM HERE

16   NOW.  A LOT OF IT IS SUBSTANTIVE.

17           HOW DO YOU COUNT PROFITS?  DO YOU GO WITH

18   CONSOLIDATED OR OTHERS?  THERE'S GOING TO BE

19   DISPUTES BETWEEN THE PARTIES AS TO HOW TO CALCULATE

20   DAMAGES, AND THEY ARE GOING TAKE FORMS OF VARIOUS

21   MOTION PRACTICE OR CROSS-EXAMINATION OF EXPERTS AT

22   TRIAL.

23           IT DOESN'T PROBABLY SURPRISE YOUR HONOR

24   THAT THE PARTIES DON'T SEE EYE TO EYE ABOUT HOW TO

25   COUNT PROFITS, DAMAGES AND ALLOCATIONS.

1           BUT THE IMPORTANT POINT HERE IS THAT WE

2    ARE HERE ON A MOTION FOR SANCTIONS.  THEY ARE

3    SAYING WE VIOLATED THE COURT'S ORDER AND WE HAVE

4    NOT.  WE HAVE PRODUCED DATA AND WE HAVE PRODUCED

5    EVIDENCE.

6           AND GETTING BACK NOW FROM --

7           THE COURT:  MS. MAROULIS, I'M SORRY AGAIN

8    FOR INTERRUPTING, I KEEP DOING THAT.  BUT YOU RAISE

9    A LOT OF IMPORTANT POINTS I NEED TO FLUSH OUT.

10          IS THE FUNDAMENTAL PROBLEM HERE, JUST TO

11   UP LEVEL ALL OF THIS, THAT I WAS WOEFULLY DEFICIENT

12   IN ARTICULATING EXACTLY WHAT IT WAS YOU WERE TO

13   PRODUCE?

14          MS. MAROULIS:  YOUR HONOR, WE DON'T

15   BELIEVE YOU WERE DEFICIENT BECAUSE IN CITING TO OUR

16   FEBRUARY, JANUARY 10TH LETTER IN OUR OPPOSITION YOU

17   REFERENCED THE PROFFER THAT SAMSUNG MADE TO THE

18   COURT.  WE ACTUALLY THINK IT'S VERY CLEAR.

19          THE COURT:  AND IF MY UNDERSTANDING WAS

20   THAT WAS SAMSUNG'S PROFFER MAPPED OR WAS

21   COEXTENSIVE WITH WHAT APPLE WAS SEEKING BY THAT

22   MOTION, YOU ARE TELLING ME TODAY MY UNDERSTANDING

23   OF WAS INCORRECT?

24          MS. MAROULIS:  YOUR HONOR, I DON'T THINK

25   THAT'S CORRECT BECAUSE THEY SUBMITTED A 3 OR 4 PAGE

                                                      71

1    PROPOSED ORDER WITH THEIR MOTION TO COMPEL ON MANY

2    DIFFERENT CATEGORIES BESIDES FINANCIAL.  AND IN THE

3    COURSE OF THE HEARING THERE WAS GIVE AND TAKE BY

4    COUNSEL AND THE COURT'S UNDERSTANDING, AND WE

5    UNDERSTOOD THE COURT TO ADOPT OUR PROFFER AS TO THE

6    FINANCIAL DOCUMENTS IN THE JANUARY 10TH LETTER.

7    BECAUSE THAT IS QUITE A BIT OF INFORMATION.

8            AGAIN, WHEN WE ARE TALKING ABOUT

9    SPREADSHEET, I DON'T WANT US TO BE HUNG UP ON THE

10   FACT IT'S ONE SPREADSHEET EVEN THOUGH IT'S A

11   HUNDRED PAGES.  IT'S A SPREADSHEET THAT ASSIMILATES

12   INFORMATION FROM A DATABASE, A DATABASE KEPT IN THE

13   ORDINARY COURSE OF BUSINESS.  AND IT'S A

14   SPREADSHEET THAT THEY THEMSELVES ASKED US FOR.

15           IN HIS DEPOSITION IN SUPPORT OF APPLE'S

16   MOTION TO COMPEL, MR. OLSON SWORE UNDER PENALTY OF

17   PERJURY THAT IN HIS EXPERIENCE COMPANIES HAVE THESE

18   DATABASES YOU CAN QUERY THEM AND PRODUCE THE

19   REPORTS BY THE PUSH OF THE BUTTON.

20           SAMSUNG PREPARED SUCH --

21           THE COURT:  IT'S TRUE, THESE REPORTS ARE

22   PRODUCED ALL THE TIME IN AN ELECTRONIC FORMAT.

23           MS. MAROULIS:  RIGHT.

24           THE COURT:  IT MAY NOT BE ONE BUTTON YOU

25   HAVE PUSH, OR HOWEVER MANY.

                                                      72

1              MS. MAROULIS:  IT'S MORE THAN ONE BUTTON.

2              YOUR HONOR ASKED THE QUESTION OF OPPOSING

3    COUNSEL WHETHER IF THERE'S ANYTHING WRONG WITH THE

4    FORMULA, AND NO THERE'S NOT.  PEOPLE CAN ASK HOW

5    THE FORMULA WAS DERIVED OR WHAT FORMULA WAS

6    APPLIED --

7              THE COURT:  DID YOU HAVE ANY OBJECTION TO

8    TENDERING OF THAT INFORMATION TO APPLE WHEN THEY

9    PUT IT TO YOU?

10             MS. MAROULIS:  I DON'T BELIEVE WE

11   OBJECTED TO THOSE QUESTIONS IN DEPOSITION.

12             I WAS NOT PRESENT IN MR. SHEPPARD OR

13   MR. SIMMS' DEPOSITIONS.

14             SO, MR. ALDEN?

15             MR. ALDEN:  I DON'T BELIEVE SO,

16   YOUR HONOR.

17             THE COURT:  MR. SIMMS SURE SEEMS TO HAVE

18   BEEN INSTRUCTED NOT TO ANSWER AS TO HOW TO ALLOCATE

19   THE BREAKDOWN IN MATERIAL OF MANUFACTURING COSTS;

20   WHY WAS THAT SO?  HOW IS THAT AN OBJECTIONABLE

21   QUESTION IN A DEPOSITION?  IT MAY NOT BE SOMETHING

22   YOU AGREE WITH, HOW IS IT OBJECTIONABLE?

23             MS. MAROULIS:  YOUR HONOR, MR. SIMMS

24   ANSWERED THE OTHER QUESTIONS AND HE TESTIFIED THAT

25   HE DIDN'T BELIEVE THAT AFFECTED ANY OF THE TOTALS

73

1    AND ANY OF THE ITEMS IN THE SPREADSHEET.

2              THE COURT:  SO ISN'T IT THE RIGHT ANSWER

3    THEN, I DON'T KNOW, OR YES OR NO?

4              WHAT'S THE BASIS FOR TELLING A WITNESS

5    NOT TO ANSWER A QUESTION ON THAT POINT?  IS THERE

6    ONE?

7              MS. MAROULIS:  YOUR HONOR, THIS IS VERY

8    SENSITIVE, CONFIDENTIAL INFORMATION, AND I CONCEDE

9    IT'S PRIVILEGED.

10             THE COURT:  YOU CAN SEE THAT THE

11   CONFIDENTIALITY OF THE RESPONSE IS NOT AN

12   APPROPRIATE BASIS TO INSTRUCT A WITNESS NOT TO

13   ANSWER, RIGHT?

14             MS. MAROULIS:  YOUR HONOR, IT'S NOT WHAT

15   WE USUALLY DO AND I THINK THAT'S THE ONLY --

16             THE COURT:  SO WOULD YOU AGREE IT WAS AN

17   IMPROPER INSTRUCTION?

18             MS. MAROULIS:  IT WAS AN INSTRUCTION

19   INTENDED TO PRESERVE THE CONFIDENTIALITY OF

20   INFORMATION THAT THE WITNESS TESTIFIED DID NOT

21   AFFECT THE INFORMATION IN THE SPREADSHEET.

22             THE COURT:  SO WAS IT IMPROPER?

23             MS. MAROULIS:  YOUR HONOR, WE'VE HAD SOME

24   DEPOSITION TESTIMONY HERE IN THIS CASE WHERE

25   PARTIES AGREED WHERE AN INSTRUCTION OF

1    CONFIDENTIALITY GROUNDS WAS APPROPRIATE.  AND THE

2    SPECIFIC CATEGORY I'M THINKING ABOUT IS FUTURE

3    PRODUCTS.

4              THE COURT:  BUT THIS QUESTION ISN'T

5    DIRECTED TO FUTURE PRODUCTS.

6              MS. MAROULIS:  THAT'S CORRECT,

7    YOUR HONOR.

8              I'M TRYING TO THINK WHETHER IT'S ALWAYS

9    INAPPROPRIATE.  AND IN THIS CASE WE'VE HAD

10   SITUATIONS WHERE PARTIES AGREE, IN THIS CASE

11   THERE'S NO AGREEMENT, WHERE CONFIDENTIALITY

12   INSTRUCTION IS OKAY.

13             THE COURT:  SO IT MAY HAVE BEEN OKAY IN

14   OTHER CONTEXTS, BUT I'M ASKING IN THIS CONTEXT.

15             WAS IT PROPER FOR YOUR COLLEAGUE TO TELL

16   THIS WITNESS TO NOT ANSWER A QUESTION ABOUT COST

17   ALLOCATION?

18             MS. MAROULIS:  YOUR HONOR, IT WOULD HAVE

19   BEEN EASIER TO STAND HERE IF THERE WAS NO

20   SANCTIONS, BUT THE INSTRUCTION WAS GIVEN BASED ON

21   THE WITNESS'S SENSE OF HOW CONFIDENTIAL THIS

22   INFORMATION IS AND WHETHER IT'S NECESSARY OR NOT.

23             THE COURT:  SO CAN YOU TELL ME WHETHER IT

24   WAS PROPER OR NOT IN YOUR VIEW?

25             MS. MAROULIS:  I THINK IT WAS APPROPRIATE

1      UNDER THE CIRCUMSTANCES.

2                  THE COURT:  ON WHAT BASIS IS IT

3      APPROPRIATE TO INSTRUCT A WITNESS NOT TO ANSWER A

4      QUESTION ON HOW ON TO ALLOCATE LINES ON THE

5      FINANCIAL SPREADSHEET; WHERE IS THAT ANYWHERE IN

6      THE FEDERAL RULES?

7                  MS. MAROULIS:  YOUR HONOR, APPLE REFUSED

8      TO ANSWER QUESTIONS --

9                  THE COURT:  THEY MAY HAVE MADE THEIR OWN

10     MISTAKES BUT I'M ASKING ABOUT THIS PARTICULAR

11     CIRCUMSTANCE.

12                 WAS IT A MISTAKE, WAS IT IMPROPER FOR AN

13     ATTORNEY TO INSTRUCT A WITNESS IN A DEPOSITION NOT

14     TO ANSWER A QUESTION ON COST ALLOCATION?

15                 MS. MAROULIS:  I DON'T THINK IT WAS

16     IMPROPER, BUT I WISH WE HAD THE ANSWER ON THE

17     RECORD.

18                 THE COURT:  SO YOU THINK IT WAS PROPER?

19                 MS. MAROULIS:  AGAIN, YOUR HONOR,

20     SOMETIMES THE INSTRUCTIONS ARE DONE ON A

21     CONFIDENTIALITY BASIS.

22                 THE COURT:  ALL RIGHT.  LET'S MOVE ON.

23                 MS. MAROULIS:  AND THIS WAS ONE OF THEM.

24                 GOING BACK TO FEBRUARY, THE SPREADSHEETS,

25     ONE OF THE IMPORTANT POINTS TO MAKE HERE IS THAT

1    AFTER WE PRODUCED THE INITIAL SPREADSHEET, APPLE

2    COMPLAINED ABOUT LACK OF DETAIL.

3            WE BELIEVE THAT SAMSUNG COMPLIED WITH THE

4    COURT ORDER ON THE LEVEL OF DETAIL IT PROVIDED.

5    HOWEVER, IN ORDER TO AMELIORATE ANY FUTURE

6    DISPUTES, WE HAVE AGREED TO PROVIDE ADDITIONAL

7    DETAIL.

8            SO YOU HEARD ABOUT SEVERAL SUPPLEMENTAL

9    SPREADSHEETS, AND IT'S TRUE THAT AT LEAST ONE OF

10   THEM WAS TO CORRECT ERROR BECAUSE WE LEFT OFF ONE

11   ACCUSED PRODUCT.  IT WAS INADVERTENT.  WE DON'T

12   THINK IT RAISES TO THE LEVEL OF A VIOLATION.  AS

13   SOON AS WE SPOTTED THAT WE PUT THAT PART BACK IN.

14           YOUR HONOR ASKED ABOUT BEFORE, OTHER

15   SUPPLEMENTATION OF THE SPREADSHEETS HAD TO DO WITH

16   BREAKING OUT MORE DATA.  THEY COMPLAINED ABOUT

17   EXPENSES NOT BEING BROKEN OUT.  WE PRODUCED

18   SPREADSHEETS THAT HAD BROKEN OUT INSURANCE, LABOR,

19   ET CETERA, VARIOUS OTHER EXPENSES.  THEY COMPLAINED

20   THAT A COUPLE OF MODELS WERE ROLLED INTO ONE AND WE

21   ESSENTIALLY BROKE THEM OUT.

22           I COULD GO, IF YOUR HONOR WANTED, THROUGH

23   ALL THE DIFFERENT VERSIONS OF THE SPREADSHEETS BUT

24   I THINK MORE IMPORTANTLY WHAT IT IS, IS THAT WE

25   SHOULD NOT BE PENALIZED FOR TRYING TO GIVE APPLE

1    THE DETAIL THEY WANTED EVEN THOUGH WE DID NOT

2    BELIEVE THE DETAIL WAS APPROPRIATE OR --

3              THE COURT:  SO MS. MAROULIS, IS IT YOUR

4    POSITION THEN THAT THE INFORMATION TENDERED AS OF

5    THE DEADLINE OF FEBRUARY 23RD DEADLINE WAS FULLY

6    COMPLIANT WITH MY ORDER?

7              MS. MAROULIS:  YOUR HONOR, IT WAS FULLY

8    COMPLIANT WITH YOUR ORDER WITH ONE VERY SMALL

9    EXCEPTION.  IT LEFT OFF ONE MODEL WHICH I THINK WE

10   ADDED FEBRUARY 10TH.

11             THE COURT:  ALL RIGHT.

12             MS. MAROULIS:  I DON'T THINK APPLE ARGUED

13   THAT PARTICULAR --

14             THE COURT:  LET'S PUT THAT ADDITIONAL

15   MODEL OR OMITTED MODEL TO THE SIDE.  IT SHOULD HAVE

16   BEEN INCLUDED, IT WASN'T.  YOU'VE ACKNOWLEDGED THAT

17   I ACCEPT THAT ACKNOWLEDGEMENT.

18             OTHER THAN THAT WERE THERE ANY OTHER

19   ERRORS OR SHORTCOMINGS IN THE PRODUCTION AS OF

20   FEBRUARY 3RD?

21             MS. MAROULIS:  YOUR HONOR, THERE WERE NO

22   SHORTCOMINGS.

23             THERE'S AN ISSUE OF THE FOREIGN

24   SUBSIDIARY PROFITS THAT WAS RAISED AND THAT'S AN

25   ISSUE WHERE THEY'RE FRAMING US AS SOMEHOW HIDING

1    IT.

2              BASICALLY THE ORIGINAL SPREADSHEET

3    INCLUDED THAT.  IT SHOULDN'T HAVE INCLUDED THAT

4    BECAUSE IT'S SOMEBODY ELSE'S PROFITS.  BUT ONCE

5    THAT WAS DISCOVERED, THAT WAS REMOVED.  HOWEVER

6    THEY HAVE IT, THEY HAVE THE FEBRUARY 3RD

7    SPREADSHEET SO THEY KNOW ABOUT THIS, NO ONE IS

8    HIDING THE EXISTENCE OF THAT NUMBER OR THOSE

9    PROFITS AND THEY ARE FREE TO ARGUE AND THEY'LL

10   ARGUE LATER ON AT TRIAL THAT THIS SHOULD BE COUNTED

11   FOR THEM NOT FOR US.

12             THE COURT:  BUT THAT INFORMATION WAS NOT

13   PRODUCED IN ANY OF THE SUBSEQUENT VERSIONS,

14   CORRECT?

15             MS. MAROULIS:  IT WAS TAKEN OUT OF THE

16   SPREADSHEET, CORRECT.

17             THE COURT:  WHEN THEY TOLD YOU WE WOULD

18   LIKE IT BACK IN, WHAT'S YOUR OBJECTION?

19             MS. MAROULIS:  OUR OBJECTION IS THAT IT'S

20   NOT PROPER BECAUSE IT'S NOT PROFITS OF AN ENTITY

21   THAT'S AN ACCUSED DEFENDANT IN THIS CASE.

22             THE COURT:  RIGHT.

23             SO YOU HAVE A DISPUTE ON THE MERITS AS TO

24   WHETHER THOSE PROFITS ARE PROPERLY COUNTED IN A

25   U.S. FOCUSED DAMAGES MODEL.  BUT FOR PURPOSES OF

1    DISCOVERY ONCE THEY EXPLAIN TO YOU, WE WOULD LIKE

2    TO TAKE A DIFFERENT POSITION IN OUR EXPERT REPORTS

3    AND AT TRIAL, WHAT'S YOUR OBJECTION TO PRODUCING

4    IT?

5           MS. MAROULIS:  IN THE SENSE OF WHAT THEY

6    PRODUCED ON FEBRUARY 3RD, IT WAS IN THE SPREADSHEET

7    IT WAS JUST TAKEN OUT OF IT.

8           SO MY UNDERSTANDING IS THAT MR. MUSIKA

9    ACTUALLY ARE RELIES ON IT AND USES THAT NUMBER.

10          THE COURT:  SURE.

11          HE DIDN'T GET ANY INFORMATION AFTER

12   FEBRUARY 3RD, SO WHAT WAS YOUR OBJECTION TO SIMPLY

13   PUTTING IT BACK IN WHEN THEY ASKED YOU FOR IT?

14   THEY DID ASK YOU FOR IT, RIGHT?

15          MS. MAROULIS:  THEY ARGUED THEY ARE

16   ENTITLED THOSE PROFITS AND WE ARGUE THEY ARE NOT.

17          THE COURT:  RIGHT.

18          SO HOW CAN YOU HAVE A SUBSTANTIVE DEBATE

19   ABOUT THAT ISSUE WITHOUT GIVING THEM THE

20   INFORMATION AND ALLOW THAT DEBATE TO TAKE PLACE?

21          MS. MAROULIS:  I'M SORRY, YOUR HONOR, I'M

22   HAVING TROUBLE FIGURING OUT THE QUESTION.  IS THE

23   ISSUE --

24          THE COURT:  YEAH.  LET ME REFRAME THE

25   QUESTION BECAUSE PERHAPS I'M BEING UTTERLY UNCLEAR.

                                                      80

1           PRIOR TO FEBRUARY 3RD YOU GAVE A VERSION

2      OF THE SPREADSHEET WHICH INCLUDED INFORMATION ABOUT

3      A PARTICULAR SAMSUNG ENTITY.

4           AFTER FEBRUARY 3RD MULTIPLE VERSIONS OF

5      THAT SAME SPREADSHEET WAS PRODUCED BY SAMSUNG.  AND

6      YET IN NONE OF THOSE SUBSEQUENT VERSIONS WAS THAT

7      FOREIGN ENTITY'S DATA INCLUDED, EVEN THOUGH APPLE

8      SPECIFICALLY ASKED YOU FOR IT AND EXPLAINED YOU

9      THEY WERE ASKING FOR IT BECAUSE THEY WISHED TO MAKE

10     A CLAIM AS TO THOSE PROFITS ASSOCIATED WITH THAT

11     ENTITY, SO WHY WOULDN'T YOU SIMPLY PRODUCE IT?

12          MS. MAROULIS:  OKAY.

13          YOUR HONOR, I'M ACTUALLY CORRECTED BY MY

14     PARTNER MR. ALDEN WHO SAYS APPLE DID NOT ASK US TO

15     RE INCLUDE THAT NUMBER.

16          THE COURT:  SO THE FIRST YOU HEARD OF

17     THIS WAS IN THE MOTION THAT WAS FILED IN THIS

18     COURT?

19          MR. ALDEN:  YOUR HONOR, IF I MAY.

20          THE COURT:  GO AHEAD.

21          MR. ALDEN:  SAMSUNG PRODUCED A VERSION OF

22     THE SPREADSHEET ON FEBRUARY 3RD THAT INCLUDED THE

23     DATA FROM THE CHINESE MANUFACTURING SUBSIDIARIES.

24          IT THEN PRODUCED A REVISED VERSION ON

25     FEBRUARY 28TH THAT ALSO INCLUDED THAT DATA.

81

 1          IT WAS SUBSEQUENTLY DISCOVERED THAT THE

 2     DATA THAT WAS PROVIDED FOR DEFENDANT STC DID NOT

 3     JUST INCLUDE STC'S DATA BUT THE DATA OF TWO CHINESE

 4     MANUFACTURING SUBSIDIARIES.

 5          SO IN THE SUBSEQUENT VERSION WE ZEROED

 6     OUT THE PROFITS OF THOSE SUBSIDIARIES BECAUSE IT'S

 7     APPLE'S POSITION, AS YOUR HONOR NOTED, THAT APPLE

 8     IS NOT ENTITLED TO THOSE PROFITS.

 9          HOWEVER, APPLE HAS THE SAME DATA AND IN

10     FACT HAS NEVER REQUESTED THAT WE ADD THAT DATA BACK

11     IN.

12          I BELIEVE APPLE'S POINT IS, WHICH

13     OBVIOUSLY WE DISAGREE WITH, APPLE'S POINT IS WE

14     CAN'T RELY ON THE SPREADSHEETS BECAUSE THEY'VE

15     REMOVED DATA FROM IT AND WE DO NOT KNOW WHAT ELSE

16     THEY'VE REMOVED.

17          I DON'T THINK THAT --

18          THE COURT:  SO IF THE DATA THAT'S IN

19     DISPUTE ON THIS POINT HASN'T CHANGED, IF I

20     UNDERSTAND YOU, WHAT'S THE OBJECTION TO JUST GIVING

21     THEM WHAT THEY ASK FOR IN THE SUBSEQUENT VERSIONS?

22          MR. ALDEN:  YOUR HONOR, I DON'T THINK WE

23     WOULD HAVE, I WOULD NEED TO CONSULT WITH THE

24     CLIENT, BUT I DON'T THINK WE WOULD HAVE A PROBLEM,

25     FOR EXAMPLE, ADDING A LINE TO THE SPREADSHEET THAT

1     WE'VE PRODUCED THAT PUTS BACK IN OR SHOWS

2     SEPARATELY THE CHINESE MANUFACTURING SUBSIDIARY'S

3     PROFIT BECAUSE IT'S DATA THEY ALREADY HAVE.  IT

4     WOULD JUST BE SHOWN ON THE LATEST VERSION OF THE

5     SPREADSHEET.

6               THE COURT:  RIGHT.  PRODUCED SUBJECT TO

7     CERTIFICATION OR VERIFICATION THAT THE INFORMATION

8     IS ACCURATE.

9               MR. ALDEN:  YES, YOUR HONOR.

10              THE COURT:  OKAY.  SO THERE IS NO

11    OBJECTION HERE.  YOU ARE HAPPY TO PRODUCE THAT

12    INFORMATION TO THEM?

13              MR. ALDEN:  YES.

14              MS. MAROULIS:  THEY ALREADY HAVE THE

15    INFORMATION.

16              THE COURT:  I UNDERSTAND.

17              THEY ARE APPARENTLY UNSATISFIED AND WOULD

18    LIKE TO HAVE THE INFORMATION IN A SINGLE

19    SPREADSHEET OR A SINGLE VERSION OF THE SPREADSHEET.

20              WHAT'S THE OBJECTION TO SIMPLY GIVING IT

21    TO THEM?

22              MS. MAROULIS:  WE CAN GIVE THAT,

23    YOUR HONOR.

24              THIS STILL GOES BACK TO WHAT I WAS GOING

25    TO TOUCH ON AT THE VERY END OF THE ARGUMENT ABOUT

1    REMEDIES THEY SEEK.  BUT ONE OF THE REMEDIES I

2    UNDERSTAND THEM TO SEEK IS THAT YOUR HONOR ORDERED

3    A WHOLE BUNCH OF NEW DOCUMENTS PRODUCED AND THEY

4    GET TO USE THEM BUT WE DO NOT.

5             THE COURT:  WE WILL GET TO THAT IN A

6    MOMENT.

7             BUT ON THIS POINT, IF I UNDERSTAND YOUR

8    POSITION, YOU DON'T HAVE ANY OBJECTION TO PRODUCING

9    THE INFORMATION RELATED TO THE CHINESE ENTITIES

10   THAT WAS PRODUCED IN THE FIRST VERSION OR TWO OF

11   THIS DOCUMENT?

12            MS. MAROULIS:  YES, YOUR HONOR.  WITH ONE

13   IMPORTANT CLARIFICATION WHICH IS WE COULD PRODUCE

14   IT BUT THAT CANNOT BE A VIOLATION -- IT BEING IN OR

15   OUT CANNOT BE A VIOLATION OF THE COURT'S ORDER OF

16   JANUARY 27TH BECAUSE THE ORDER APPLIED TO THE

17   DEFENDANTS IN THIS CASE NOT FOREIGN SUBSIDIARIES.

18            SO THEM HAVING IT OR NOT HAVING IT OR

19   ADDING IT BACK SHOULD NOT BE SOMETHING THAT AFFECTS

20   YOUR HONOR'S ANALYSIS OF WHETHER THE COURT ORDER

21   HAS BEEN VIOLATED.

22            AND IN SOME WAYS --

23            THE COURT:  SO IT'S YOUR --

24            MS. MAROULIS:  SO IN SOME --

25            THE COURT:  NO, GO AHEAD.  I INTERRUPTED

84

1    YOU.

2              MS. MAROULIS:  IN SOME WAYS A LOT OF WHAT

3    YOUR HONOR HEARD TODAY FROM COUNSEL FOR APPLE AND

4    BY NECESSITY FROM ME HAS TO GO TO THE MERITS OF THE

5    DAMAGES CASE WHICH IS WHAT SHOULD BE COUNTED BY

6    WHOM AND WHEN AND AT WHAT STAGE, WHAT'S PROPER AND

7    WHAT'S NOT.

8              AND I SUBMIT, YOUR HONOR, THAT'S NOT A

9    PROPER INQUIRY ON A MOTION WHERE SAMSUNG IS ACCUSED

10   OF VIOLATING A COURT ORDER WHEN THE SOLE ISSUE

11   SHOULD BE WHAT'S THE SCOPE OF THE ORDER COMPLIED

12   WITH.  WHICH I SUBMIT WE DID.

13             THE COURT:  ALL RIGHT.

14             SO ON THIS ISSUE OF THE PROFITS

15   ASSOCIATED, OR THE DATA I WILL SAY ASSOCIATED WITH

16   THE CHINESE ENTITY, YOUR POSITION HAS BEEN YOUR

17   EARLY PRODUCTION IS NOTWITHSTANDING, THIS DATA IS

18   NOT RELEVANT BECAUSE IT RELATES TO AN ENTITY OTHER

19   THAN THOSE ACCUSED OF INFRINGEMENT IN THIS CASE.

20             MS. MAROULIS:  THAT'S CORRECT,

21   YOUR HONOR.

22             THE COURT:  THEY HAVE EXPLAINED I THINK

23   MULTIPLE TIMES THAT THEY UNDERSTAND PERFECTLY WELL

24   WHO IS THE DEFENDANT AND WHO IS NOT IN THIS CASE,

25   AND YET UNDER THEIR ECONOMIC THEORY, THE PROFITS

85

1    ASSOCIATED WITH THE CHINESE ENTITY ARE FAIR GAME,

2    RIGHT?

3              SO HAVING RECEIVED THAT EXPLANATION, AND

4    YOU ARE RIGHT, WE ARE HERE IN A DISCOVERY POSTURE

5    WE ARE NOT HERE ON THE MERITS, WHY WOULDN'T THE

6    RESPONSE TO THAT BE, OF COURSE YES, HERE'S THE

7    INFORMATION, IN FACT WE GAVE IT TO YOU ONCE OR

8    MAYBE TWICE, BUT WE HAVE NO PROBLEM GIVING IT TO

9    YOU A THIRD OR FOURTH TIME, SURE.

10             MS. MAROULIS:  YOUR HONOR, POSSIBLY IT'S

11   BECAUSE WE DO NOT WANT TO CONCEDE IN ANY WAY THE

12   PROPRIETY OF DAMAGES ANALYSIS ON THAT NUMBER.

13             THE COURT:  RIGHT.

14             BUT ONE MAKES AN ARGUMENT ON THE

15   PROPRIETY OF THAT CLAIM IN RESPONSE OR IN PURSUIT

16   OF A DAUBERT MOTION OR CROSS-EXAMINATION OF THE

17   WITNESS, BUT YOU DON'T DO THAT IN DISCOVERY, RIGHT?

18             MS. MAROULIS:  THAT'S CORRECT,

19   YOUR HONOR.

20             AND THAT'S ACTUALLY OUR POINT AS WELL

21   WHICH IS A LOT OF COMPLAINTS WE HEARD TODAY ARE

22   COMPLAINTS THAT APPLE CAN AND WILL AND I'M SURE

23   ADDRESS IN THE CROSS-EXAMINATION AT TRIAL.

24             THE COMPLAINTS WERE HEARD ABOUT VARIOUS

25   VERSIONS OF SPREADSHEETS, WHAT WAS IN OR WHAT WAS

86

1    OUT AND ALLEGED ERRORS.  THAT'S SOMETHING WE WILL

2    CONFRONT OUR WITNESSES WITH.

3              THEY NOW HAVE 5 TO 7 DEPOSITION

4    TRANSCRIPTS AND I'M SURE THEY WILL EAGERLY

5    CROSS-EXAMINE THE WITNESSES AT TRIAL USING THE

6    TRANSCRIPTS AND USING THE SPREADSHEETS.

7              THIS DOES NOT GO TO WHETHER SAMSUNG

8    COMPLIED WITH THE ORDER.  THIS GOES TO APPLE'S

9    DISAGREEMENT OF THE LEVEL OF DATA OR WHAT'S IN THE

10   DATA OR HOW THE DATA CAN BE USED.  AS MOST LIKELY

11   EVIDENCED BY THIS ISSUE OF THE ALLOCATION OF THE

12   FOREIGN SUBSIDIARY.

13             THE COURT:  MS. MAROULIS, WHAT IS YOUR

14   OBJECTION TO PRODUCING DOCUMENTS ALONG THE LINES OF

15   SHEPPARD EXHIBIT 1926?  THIS IS THE CONSOLIDATED

16   PACKAGE DOCUMENT WHICH IS TAB 12 OF THE MATERIALS

17   APPLE GAVE ME.

18             MS. MAROULIS:  YOUR HONOR, I'M INFORMED

19   WE ACTUALLY PRODUCED THESE DOCUMENTS PREVIOUSLY.

20             THE COURT:  WELL, I UNDERSTAND THAT THIS

21   DOCUMENT WAS PRODUCED.

22             MS. MAROULIS:  NOT JUST THIS ONE BUT

23   OTHERS LIKE IT.

24             THE COURT:  SO YOU HAVE NO OBJECTION?

25             MS. MAROULIS:  WE DON'T HAVE OBJECTION TO

1    -- I BELIEVE WE DON'T HAVE OBJECTION TO PRODUCING

2    IT.

3           I HAVEN'T HAD A CHANCE TO CONSULT WITH MY

4    CLIENT, BUT AGAIN, I WANT TO MAKE CLEAR TO THE

5    EXTENT THERE'S NOW REQUESTS FOR DOCUMENTS IN THIS

6    MOTION THAT READS LIKE A MOTION TO COMPEL.  THAT

7    SHOULD BE DETERMINED BY A DIFFERENT STANDARD THAN A

8    MOTION FOR SANCTIONS.

9           THE COURT:  WELL, HERE'S MY POINT:

10   LOOKING AT SHEPPARD 1926, IS THERE REALLY ANY

11   SERIOUS QUESTION THAT SHOULD HAVE BEEN PRODUCED IN

12   RESPONSE TO THE ORIGINAL RFP TO SAY NOTHING OF MY

13   ORIGINAL DISCOVERY ORDER?

14          MS. MAROULIS:  YOUR HONOR, I CANNOT, NOT

15   BEING AN ACCOUNTING EXPERT AND HAVING THIS HOISTED

16   ON ME BEFORE ARGUMENT WITHOUT AN ABILITY TO CHECK

17   ON WHAT THIS DOCUMENT IS, I CANNOT ANSWER YOUR

18   QUESTION AS TO WHETHER IT WAS PRODUCED IN RFP OR

19   NOT.

20          I DON'T BELIEVE IT FALLS INTO THE

21   CATEGORIES WE AGREED TO PRODUCE, BUT I'M VERY

22   UNCOMFORTABLE MAKING THE DECISION WITHOUT HAVING AN

23   OPPORTUNITY TO READ THE DOCUMENT.

24          AND I'M ALSO INFORMED WE PRODUCED THOSE

25   AND I SEE THEY HAVE AN ITC NUMBER ON THEM.  I KNOW

1    OUR PRODUCTION IS FAIRLY WIDE RANGED IN THE ITC AND

2    I DON'T KNOW WHEN WE PRODUCED IT, HOW MANY, AND

3    WHETHER IT WAS BEFORE OR AFTER FEBRUARY 3RD.

4            THE COURT:  RIGHT.

5            I'M TRYING TO UNDERSTAND SAMSUNG'S

6    INTERPRETATION OF MY ORDER.  AND I ASK ABOUT THIS

7    PARTICULAR DOCUMENT BECAUSE IT WOULD SEEM TO ME

8    READING MY ORDER AND LOOKING AT THIS DOCUMENT, THAT

9    THIS DOCUMENT FALLS KIND OF SQUARELY WITHIN THE

10   SCOPE OF THE ORDER.

11           SO IF IT TURNS OUT THAT DOCUMENTS OF THIS

12   TYPE WERE NOT PRODUCED BY FEBRUARY 3RD, IT WOULD

13   SEEM TO ME SAMSUNG DID NOT COMPLY AND I WANT TO

14   MAKE SURE I UNDERSTAND WHETHER YOU AGREE WITH THAT

15   ASSESSMENT OR NOT.

16           MS. MAROULIS:  YOUR HONOR, WHEN WE

17   PREPARED THE PRODUCTION IN RESPONSE TO THE ORDER BY

18   FEBRUARY 3RD, IT WAS OUR UNDERSTANDING THAT WE

19   OBLIGATED OURSELVES AND THE COURT OBLIGATED US BY

20   THE ORDER TO PRODUCE CATEGORIES OF DOCUMENTS THAT

21   WE DISCUSSED.

22           THERE PROBABLY ARE SOME DOCUMENTS

23   THROUGHOUT THE COMPANY, SOME AD HOC REPORTS OR

24   SPREADSHEETS ATTACHED TO E-MAILS THAT WOULD BE OF

25   THE TYPE OF DOCUMENTS HERE.  BUT WHAT WE

1      UNDERSTOOD, WE WERE BASICALLY PRODUCING DOCUMENTS

2      WITHIN THOSE CATEGORIES SUFFICIENT FOR APPLE TO

3      CALCULATE ITS DAMAGES CLAIM.

4              AGAIN, I APOLOGIZE YOUR HONOR FOR NOT

5      BEING ABLE TO QUICKLY GIVE YOU THIS REPORT NOR CAN

6      I TELL YOU WHETHER IT WAS PRODUCED BEFORE OR AFTER

7      FEBRUARY 3RD.

8              THE COURT:  SO WHEN MR. SHEPPARD

9      TESTIFIES AT SOME LENGTH ABOUT WHAT HE AND HIS TEAM

10     CAN OR CANNOT DO WITHIN A CERTAIN PERIOD OF TIME,

11     WOULD YOU AGREE THAT THE BURDEN OF PRODUCING THE

12     MATERIAL IS NOT ALL THAT SIGNIFICANT GIVEN THE

13     CENTRALITY OF THE CLAIM?

14             MS. MAROULIS:  YOUR HONOR, I BELIEVE THE

15     TESTIMONY WAS THAT IT WOULD TAKE THREE OF HIS TEAM

16     MEMBERS TWO WEEKS.  AND APPLE REPEATEDLY ARGUED

17     THAT SOMETHING A LOT LESS BURDENSOME IS BURDENSOME.

18             BUT MORE TO THE POINT HERE, YOUR HONOR'S

19     ORDER CAME OUT ON JANUARY 27TH AND THE DEADLINE WAS

20     FEBRUARY 3RD.

21             SO CERTAINLY IF THIS DOCUMENT WERE WITHIN

22     THE ORDER, THAT COULD NOT HAVE HAPPENED BECAUSE TO

23     ASSEMBLE THE INFORMATION WHICH SHEPPARD SUGGESTED

24     IT WOULD TAKE SEVERAL PEOPLE SEVERAL WEEKS.  AND

25     YES IT'S POSSIBLE, DOABLE, OBVIOUSLY.

90

```
 1              AND YOUR HONOR, AGAIN, I WANT TO GO BACK
 2     TO THE SPREADSHEET SITUATION WHICH IS THAT
 3     SPREADSHEET CONTAINED AMOUNTS OF DATA.  IT'S DATA
 4     THAT COMES FROM AN AUDITED DATABASE, IT'S DATA THAT
 5     --
 6              THE COURT:  THIS IS -- I DON'T NEED TO
 7     KNOW, BUT IF YOU HAPPEN TO KNOW, DOES THIS HAPPEN
 8     TO BE AN SAP OR ORACLE DATABASE?
 9              MS. MAROULIS:  I'M NOT SURE.
10              THE COURT:  IS IT A FINANCIAL PACKAGE
11     LICENSED BY A LARGE SCALE ENTERPRISE RESOURCE?
12              MS. MAROULIS:  YES.
13              THE COURT:  I GET IT.  OKAY.
14              SO WE ARE TALKING ABOUT SOME TYPE OF ERP
15     SYSTEM.
16              MS. MAROULIS:  RIGHT.
17              YOUR HONOR, IT'S AN ACCEPTED SYSTEM
18     BECAUSE APPLE IS RELYING ON VARIOUS CASES IN THEIR
19     MOTION AND THERE WAS A CASE WHERE SOMEBODY DID A
20     ONE PAGE SPREADSHEET AND JOTTED DOWN THREE BULLETS
21     AND THE COURT SAID THAT'S NOT SUFFICIENT.
22              WHAT WE ARE TALKING ABOUT HERE IS WE ARE
23     TALKING ABOUT A DATABASE THAT IS EXTENSIVE THAT'S
24     APPROVED THAT MANY OTHER LARGE COMPANIES USE FOR
25     THEIR BUSINESS.  AND THAT'S WHERE THEY STORE
```

1    HUNDREDS AND THOUSANDS OF PIECES OF DATA AND

2    FINANCES.  AND THIS IS THE DATABASE THAT THEY USE

3    BOTH FOR BUSINESS PURPOSES AND IF NEEDED FOR

4    PURPOSES LIKE THIS.

5         RATHER THAN BEING WHAT APPLE CALLS

6    LITIGATION INSPIRED DOCUMENTS, IT'S AN OUTTAKE FROM

7    THE DATABASE.  AND IT'S A METHOD APPROVED NOT JUST

8    IN PATENT CASES BUT ANY OTHER JUDICIAL CASES, AND

9    THAT'S WHAT PEOPLE DO BECAUSE MOST COMPANIES DON'T

10   KEEP FINANCIALS ON A PRODUCT-BY-PRODUCT BASIS.

11   WHICH IS WHAT LITIGATION TYPICALLY RESOLVES AROUND.

12        MOST COMPANIES HAVE THESE THINGS ROLLED

13   UP TO DIVISIONS OR UNITS OR SOMETHING MORE MACRO,

14   AND WHEN YOU NEED MICRO, SOMETIMES YOU NEED TO GO

15   TO DATABASE.

16        SO IN PRODUCING THIS INFORMATION WE

17   PRODUCED TO THEM DATA ON REVENUES, PROFITS, SALES.

18   AND IF IT'S THE INFORMATION THAT THEY ASK FOR, IT'S

19   THE INFORMATION WE AGREED DO PRODUCE.

20        AND IT'S VERY EXTENSIVE INFORMATION, IT'S

21   A LOT OF DATA GOES INTO THIS SPREADSHEET BECAUSE A

22   LOT OF DATA RESIDES IN THAT DATABASE.

23        IN OUR SUPPLEMENTAL PLEADING WE PUT

24   TOGETHER A DECLARATION THAT DESCRIBED THE EFFORT

25   INVOLVED IN THAT.  YOUR HONOR, I DON'T KNOW IF IT'S

92

1    EVEN STRICTLY NECESSARY BECAUSE IT'S A BUSINESS

2    RECORD THAT COMES FROM THE DATABASE OF BUSINESS

3    RECORDS.

4              BUT TO THE EXTENT THERE'S ANY QUESTION OF

5    THE CARE IN WHICH IT WAS ASSEMBLED AND WHAT WENT

6    INTO IT, WE HAVE THE DECLARATION OF MR. KIM

7    ADDRESSING THAT.

8              SO YOUR HONOR, I KNOW THAT WE HAVE

9    SEVERAL OTHER MOTIONS SO I WOULD LIKE TO PROCEED

10   NOW TO THE FINAL PIECE OF APPLE'S MOTION WHICH IS

11   THE REMEDIES THEY SEEK.

12             AND NONE OF THE CASES THAT THEY RELY ON

13   ARE REMOTELY SIMILAR TO THIS CASE.  IN ALL THE

14   CASES THAT APPLE RELIES ON, THERE WAS SOME REALLY

15   GROSS, WOEFUL MISCONDUCT INVOLVED.

16             THERE WERE INDIVIDUALS WHO DIDN'T SHOW UP

17   TO COURT HEARING, THERE WERE INDIVIDUALS WHO DIDN'T

18   PAY SANCTIONS MOTIONS.  THERE WERE PEOPLE WHO SENT

19   THREATENING E-MAIL TO ADVERSARY, MADE DEFAMATORY

20   STATEMENTS, AND THERE WERE PEOPLE WHOSE COMPLAINTS

21   WERE DISMISSED PRIOR TO THAT SANCTIONS MOTION

22   BECAUSE OF THEIR CONDUCT.

23             SO WE ARE ON A COMPLETELY DIFFERENT

24   PLANE.  SAMSUNG'S GOOD FAITH PRODUCTIONS AND

25   DEALINGS WITH THIS ORDER AND WITH APPLE AND SHOWING

93

1    THAT AFTER WE PRODUCED WHAT WE NEEDED TO PRODUCE WE

2    CONTINUED TO SUPPLEMENT CANNOT POSSIBLY BE ON PAR

3    WITH THESE CONDUCTS.

4            THE COURT:  SO MS. MAROULIS, WHAT WOULD

5    YOU SUGGEST IS THE APPROPRIATE SANCTION TO COUNSEL

6    WHO REPEATEDLY INSTRUCTED A WITNESS NOT TO ANSWER

7    ON THE BASIS OTHER THAN PRIVILEGE OR HARASSMENT?

8            WHAT SHOULD THIS COURT DO IN ORDER TO

9    MOTIVATE AND INCENT THE RIGHT BEHAVIOR IN

10   DEPOSITIONS LIKE THE TYPE THAT WE SEE IN THIS

11   DISTRICT ALL THE TIME?

12           MS. MAROULIS:  YOUR HONOR, IF YOUR HONOR

13   FINDS THAT SOME QUESTIONS WERE NOT ANSWERED WHEN

14   THEY SHOULD HAVE BEEN, YOUR HONOR CAN COMPEL THE

15   ANSWER TO THE QUESTIONS.

16           THE COURT:  IT WOULD SEEM TO ME WE ARE

17   PAST THAT STAGE, RIGHT?

18           COMPELLING COMPLIANCE WITH THE RULE IS

19   ONE THING.  SANCTIONING A PARTY FOR VIOLATING A

20   PRETTY WELL ESTABLISHED NORM OF DEPOSITION PRACTICE

21   IS ANOTHER.

22           I'M CURIOUS, WHAT WOULD YOU SUGGEST THIS

23   COURT CONSIDER AS AN APPROPRIATE SANCTION FOR THAT

24   VERY NARROW ACT?

25           MS. MAROULIS:  YOUR HONOR, WHILE I DON'T

                                                    94

1    AGREE THAT WE VIOLATED THE ORDER, BUT TO THE EXTENT

2    THERE IS A QUESTION OF WHAT HAS TO BE DONE ABOUT

3    THAT, I SAY THAT RE DEPOSITION OF THE WITNESS IN

4    ORDER TO ANSWER THE QUESTIONS IS WHAT I WOULD

5    SUGGEST.

6             GETTING BACK TO APPLE'S SANCTIONS

7    REQUEST, NONE OF THE CASES THEY CITE IN THEIR

8    PAPERS HAVE SUPPORT FOR WHAT THEY ASKED FOR HERE.

9    WHICH IS THEY WANT NO LESS THAN TO STRIP SAMSUNG OF

10   CONSTITUTIONAL RIGHTS TO CROSS-EXAMINATION.

11            WHAT THEY WANT IS THEY WANT TO ADD

12   ADDITIONAL DOCUMENTS THAT WERE NEVER ORDERED

13   PRODUCED IN THE FIRST PLACE AND IF THEY ARE ORDERED

14   TO PRODUCE, THE EXPERT CAN USE THEM, CAN RELY ON

15   THEM WITHOUT SUBMITTING EXPERT REPORTS AND CAN

16   TESTIFY AT TRIAL WITHOUT SAMSUNG'S ABILITY TO

17   CROSS-EXAMINE THEM.

18            THE COURT:  LET'S ASSUME I SHARE YOUR

19   CONCERN ABOUT, IF NOT THE CONSTITUTIONALITY, AT

20   LEAST THE FAIR NECESSARY OF THAT TYPE OF REMEDY.

21            WHAT IS THE APPROPRIATE REMEDY IN A

22   SITUATION WHERE A PARTY FAILS TO PRODUCE DOCUMENTS

23   ORDERED BY A COURT, EXPERT REPORTS ARE TENDERED,

24   DEPOSITIONS ARE HAPPENING, WHAT SHOULD BE THE RIGHT

25   SOLUTION TO THAT PROBLEM?  ASSUMING THERE IS A

1     PROBLEM, I UNDERSTAND YOU DON'T BELIEVE THERE IS

2     ANY PROBLEM.

3            MS. MAROULIS:  YOUR HONOR, ASSUMING IF

4     YOUR HONOR FINDS THERE WAS A PROBLEM THEN WE WOULD

5     NEED TO PRODUCE ADDITIONAL DATA.  THEIR EXPERT CAN

6     SUBMIT SUPPLEMENTAL REPORT AND WE WOULD NEED TO

7     DEPOSE HIM ON THE SUPPLEMENTAL REPORT.

8            THIS IS A VERY TIGHT SCHEDULE.  WE ARE

9     FACING FAR MORE PREJUDICE THAN THEY HAVE.  WE

10    SUBMITTED UNDER MOTION, TO SEAL THE REPORT OF THEIR

11    DAMAGES EXPERT.  IT'S A VERY EXTENSIVE REPORT, I

12    DID NOT TALK ABOUT IT HERE BUT HE CLEARLY DID NOT

13    SEEM VERY HAMSTRUNG BY ANYTHING WE'VE DONE.  HE HAS

14    NUMBERS, EXHIBITS, ANALYSIS, HE'S ANALYZED ALL

15    KINDS WAS DATA.

16           SO I SUBMIT TO YOUR HONOR THAT THE

17    IMPORTANT POINT OF INQUIRY SANCTIONS MOTION

18    PREJUDICE, AND THERE'S NO PREJUDICE THERE, BUT TO

19    YOUR QUESTION OF WHAT SHOULD THE APPROPRIATE

20    SANCTION BE IF WE ARE ORDERED TO PRODUCE MORE AND

21    IF THERE'S A DETERMINATION WE SHOULD HAVE PRODUCED

22    MORE, HE CAN DO A SUPPLEMENTAL REPORT AND WE ARE

23    GOING TO HAVE TO DEPOSE HIM WHILE WE ARE DOING

24    EVERYTHING ELSE AT THE SAME TIME WHICH IS VERY

25    BURDENSOME RIGHT NOW IN THIS CASE WHEN WE HAVE 50

1    TO 60 EXPERT DEPOSITIONS COMING UP.

2            SO THAT WOULD BE MY RESPONSE TO

3    YOUR HONOR'S SPECIFIC QUESTION.

4            THE COURT:  ALL RIGHT.

5            WELL, WE DO HAVE OTHER MOTIONS TO TEND

6    TO.  UNLESS THERE'S ANYTHING FURTHER, I WILL TAKE

7    ONE LAST POINT THEN I REALLY NEED TO MOVE ON.

8            MS. MAROULIS:  YOUR HONOR, DO YOU HAVE

9    ANY SPECIFIC QUESTIONS FROM ME?  I COVERED MOST OF

10   WHAT I PLAN TO --

11           THE COURT:  I HAVE ONE LAST QUESTION.

12           YOU'VE BEEN VERY PATIENT IN ANSWERING MY

13   MANY QUESTIONS THUS FAR.  BUT ONE LAST QUESTION I

14   HAVE FOR YOU ON THIS TOPIC, WHY DID YOU REDACT THE

15   BUSINESS PLANS AND WHAT OBJECTION WOULD YOU HAVE TO

16   PRODUCING UN REDACTED VERSIONS?

17           MS. MAROULIS:  I NEED TO CONSULT

18   MR. ALDEN BECAUSE WE'VE REDACTED SOME DOCUMENTS FOR

19   FUTURE PRODUCTS.

20           OKAY.  IT IS MY UNDERSTANDING,

21   YOUR HONOR, THAT WHAT WAS REDACTED WAS FORECAST FOR

22   FUTURE, NOT THE ACTUAL NUMBERS.  AND WE HAVE

23   PRODUCED THE ACTUAL NUMBERS AND THAT'S WHAT THEY

24   NEED FOR THE DAMAGES.

25           THE COURT:  WHAT'S THE BASIS FOR

```
 1    OBJECTING OR FOR REFUSING TO PRODUCE FORECASTED
 2    REVENUE?
 3              IN MANY WAYS ISN'T THAT THE MOST
 4    IMPORTANT RELEVANT INFORMATION IN THE DAMAGES, THE
 5    FORECAST OF WHAT YOUR EXPECTATIONS WERE AT A
 6    PARTICULAR GIVEN POINT IN TIME?
 7              MS. MAROULIS:  YOUR HONOR, THE PARTIES
 8    WERE PRETTY CAREFUL IN THIS CASE TO NOT GO INTO THE
 9    FUTURE.
10              FOR EXAMPLE, WE WERE DENIED AN
11    OPPORTUNITY TO QUESTION ANYONE ABOUT FUTURE
12    FORECAST IN PRICING, I BELIEVE.  AT LEAST IN ONE
13    DEPOSITION I PERSONALLY TOOK I WASN'T ALLOWED TO GO
14    INTO THE PRICING OF THE FUTURE.
15              THE COURT:  OKAY.
16              SO AGAIN, LET'S ASSUME FOR THE MOMENT
17    APPLE COMMITTED A GRIEVOUS SIN AS WELL; WHAT'S THE
18    EXPLANATION OR JUSTIFICATION FOR YOURS?
19              MS. MAROULIS:  IT'S -- YOUR HONOR,
20    BECAUSE THERE ARE TWO COMPETITORS AND WE ARE
21    CONCERNED ABOUT CONFIDENTIALITY.  THE FUTURE
22    CONDUCT OF THE PARTIES IN THE FUTURE AND PRODUCTS
23    FORECASTS WE ARE JUST MORE CAREFUL ABOUT.
24              THE COURT:  ALL RIGHT.
25              MS. MAROULIS:  THAT WAS THE INFORMATION
```

1    WE REDACTED.  I APPRECIATE YOUR HONOR LISTENING.

2             THE COURT:  THANK YOU, MS. MAROULIS.  I

3    APPRECIATE IT.

4             BRIEF REBUTTAL, THEN WE NEED TO TURN TO

5    THE OTHER MOTIONS.

6             MS. TUCHER:  THANK YOU, YOUR HONOR.

7             I WAS FLOORED TO HEAR THE PHRASE THAT THE

8    S2 WAS LATER ADDED TO THE CASE WITH AN

9    INTERROGATORY RESPONSE AMENDED ON MARCH 4TH.  AND

10   THE COMPARISON TO THE IPHONE 4S I THINK IS INAPT.

11            WHAT JUDGE KOH DID IN RULING THAT THE

12   IPHONE 4S WAS NOT PART OF THIS CASE WAS TO RULE IT

13   WAS TOO LATE FOR SAMSUNG TO AMEND IT'S INFRINGEMENT

14   CONTENTIONS.

15            WE ARE ARGUING HERE PRECISELY THAT IT'S

16   THE INFRINGEMENT CONTENTIONS THAT APPLE FILED THAT

17   MAKE CLEAR THAT THE S2 WAS IN THE CASE.

18            MS. MAROULIS SAYS, WELL, NOT ALL S2 ARE

19   THE SAME BUT SHE DIDN'T GIVE YOU A BASIS FOR

20   DISTINGUISHING AMONG S2'S EXCEPT TWO OF THEM

21   HAPPENED TO BE MENTIONED IN THE NEGOTIATION HISTORY

22   ABOUT SOMETHING THAT WAS NEVER FINALLY RESOLVED.

23            THE COURT:  ARE EITHER OF THESE VERSIONS

24   OF THE S2 ACCUSED IN THE FOLLOW-ON CASE?

25            MS. TUCHER:  I DO KNOW THAT NONE OF

99

1    THE -- THE FOLLOW-ON CASE, NONE OF THE SAME

2    INTELLECTUAL PROPERTY THAT'S IN THIS CASE.

3              THE COURT:  DIFFERENT PATENTS, I GET

4    THAT.  BUT WHAT ABOUT PRODUCT?

5              MS. TUCHER:  I DON'T THINK INFRINGEMENT

6    CONTENTIONS HAVE BEEN FILED IN THE NEW CASE YET.

7    SO I DON'T THINK WE CAN GIVE YOU A DEFINITIVE

8    ANSWER ON THAT.

9              THE COURT:  DID YOU IDENTIFY THEM IN THE

10   COMPLAINT?

11             MS. TUCHER:  I DON'T KNOW THE ANSWER TO

12   THAT.

13             THE OTHER THING IS MS. MAROULIS DID NOT

14   EVEN MENTION THE TAB 10.1 OR PROVIDE AN EXPLANATION

15   FOR WHY WE WERE ENTITLED TO DAMAGES ONLY AS TO THE

16   WIFI VERSION AND NOT THE LTE VERSION OF THE TAB

17   10.1.

18             I ALSO WANTED TO REMOVE FROM YOUR

19   SHOULDERS ANY RESPONSIBILITY FOR SAMSUNG'S

20   MISUNDERSTANDING WITH YOUR ORDER.

21             I READ VERY CLEARLY THERE THAT IT'S THE

22   CATEGORIES APPLE LISTED THAT SAMSUNG WAS ORDERED TO

23   PRODUCE DATA ON.  AND THE PLACE THAT APPLE LISTED

24   CATEGORIES IS IN OUR PROPOSED ORDER FOR THE DAMAGES

25   MOTION YOU WERE RULING ON THERE.

1          SO I DON'T SEE HOW THEY COULD INTERPRET A

2     FOOTNOTE THAT HAD ONLY CITATIONS TO REFERENCES AS

3     IN ANY WAY COUNTERMANDING THE CLEAR LANGUAGE OF THE

4     ORDER.

5          BUT MOREOVER, IF YOU LOOK AT THE

6     OPPOSITION THAT THEY FILED WHICH IS ONE OF THE TWO

7     DOCUMENTS YOU REFERENCED, THERE'S UNEQUIVOCAL

8     LANGUAGE IN THAT OPPOSITION, IN FACT IN BOLD AND IN

9     HEADLINES, ABOUT HOW THEY WILL GIVE ALL OF THE

10    DOCUMENTS APPLE HAS ASKED FOR.

11         SO I DON'T THINK MS. MAROULIS'S ATTEMPTS

12    TO SAY THAT MY REQUEST HERE FOR ADDITIONAL

13    DOCUMENTS ARE A NEW MOTION TO COMPEL ARE AT ALL

14    WELL FOUNDED.

15         SHE ALSO REFERENCED THE ORAL ARGUMENT

16    BETWEEN THE PARTIES.  AND WHILE I WASN'T HERE, I

17    HAVE READ THE TRANSCRIPT AND I DID SEE DISCUSSION

18    OF BILLS AND MATERIALS IN THE CONTEXT OF FINANCIAL

19    DOCUMENTS AND DID SEE THAT ON HER SIDE COUNSEL SAID

20    WELL, WE THINK IT'S OVER KILL.  BUT HE FOLLOWED IT

21    IMMEDIATELY WITH THE LINE, WE WILL LOOK FOR THEM.

22         SO I DON'T SEE HOW BASED ON THE ORAL

23    ARGUMENT, BASED ON THE FILES OR BASED ON YOUR ORDER

24    THEY COULD SAY IN GOOD FAITH THAT THEY THOUGHT IN A

25    MEET AND CONFER LETTER THEY WROTE SOMEHOW MET THE

```
1    METES AND BOUNDS OF WHAT THEY WERE OBLIGATED TO

2    PRODUCE IN RESPONSE TO YOUR ORDER.

3            JUST A NARROW POINT NOW, YOU KNOW THE

4    INCLUDED FORECAST, I WANT TO MAKE SURE YOU KNOW

5    THEY INCLUDE ACTUALS NOT JUST FORECASTS.

6            WHILE THEY MAY NOT BE PUBLICLY REPORTED,

7    THEY DO GO ALL THE WAY UP THE CHAIN IN SAMSUNG

8    KOREA SO THEIR NUMBERS ARE RELIED UPON --

9            THE COURT:  THEY ARE NUMBERS THAT MATTER.

10           MS. TUCHER:  THEY ARE NUMBERS THAT

11   MATTER, THEY ARE NUMBERS THAT HAVE BEEN GIVEN A

12   WHOLE LOT MORE REVIEW AND THOUGHT THAN THE NUMBERS

13   PROVIDED IN THE SPREADSHEET.

14           AND WHILE WE HAVE NO OBJECTION TO A

15   SPREADSHEET, OR I WOULDN'T HAVE SPOKEN SO MUCH

16   ABOUT THIS MORNING, WE DON'T THINK THAT'S A

17   SUBSTITUTE FOR PROVIDING A REPORT THAT ALREADY

18   EXISTS.

19           AND FINALLY ON THE QUESTION OF REMEDY, I

20   WANT TO POINT OUT WE DIDN'T ASK FOR PRECLUSIVE

21   SANCTIONS HERE.  I WOULDN'T BE OPPOSED IF

22   YOUR HONOR WANTED TO SAY AN APPROPRIATE SANCTION

23   FOR THEIR BEHAVIOR, AND THEY MAY NOT CONTEST

24   MR. MUSIKA'S DAMAGES ANALYSIS, BUT I'M NOT ASKING

25   FOR THAT AND IT'S BECAUSE OF THAT THAT I DON'T
```

1    THINK WE HAVE TO PROVE ANYTHING BEYOND WHAT WE'VE

2    ALREADY PROVEN IN TERMS OF THEIR MISCONDUCT IN THIS

3    CASE.

4             AND ALSO IF YOUR HONOR DECIDES THAT YOU

5    WANT TO ORDER SUPPLEMENTAL REPORT FOR MR. MUSIKA, I

6    WOULD ASK YOU TO ALSO ORDER THAT SUPPLEMENTAL

7    REPORTS FROM THE DAMAGES EXPERTS ON THEIR SIDE,

8    INCLUDING AT A MINIMUM AN EXPERT BY THE NAME OF

9    O'BRIEN AND AN EXPERT BY THE NAME TIES.

10            AND WE HAVEN'T RECEIVED THEIR REBUTTAL

11   REPORTS, SO I DON'T KNOW IF THERE ARE OTHERS.  BUT

12   ANY KIND OF EXPERT ON THE SAMSUNG SIDE THAT DOES

13   DAMAGES ANALYSIS SHOULD BE REQUIRED TO FILE A

14   SUPPLEMENTAL REPORT.

15            THE COURT:  I DON'T WANT TO PUT WORDS IN

16   YOUR MOUTH, BUT WOULDN'T YOU PREFER THERE NOT BE A

17   REPORT AND SIMPLY WE WOULD BE ABLE TO EXCLUDE ANY

18   TESTIMONY ON THAT SUBJECT AT TRIAL ON THE BASIS

19   THAT THEY DIDN'T CLOSE THEY WEREN'T AUTHORIZED TO

20   DISCLOSE?

21            MS. TUCHER:  YOUR HONOR, I WOULD

22   CERTAINLY GO BACK TO MY ORIGINAL THAT THEY BE

23   REQUIRED TO KEEP THEIR TESTIMONY LIMITED, AND THAT

24   WOULD BE FACT AND EXPERT TESTIMONY LIMITED TO WHAT

25   THEY PRODUCED BY FEBRUARY 3RD.

1               I DON'T WANT TO DETRACT FROM THAT.  I HAD

2     IN SOME SENSE YOU WEREN'T GOING GIVE ME EVERYTHING

3     I ASKED FOR, BUT I WANT TO MAKE CLEAR THAT IF YOU

4     DECIDE WHETHER YOU THINK IT'S APPROPRIATE, THEY

5     HAVE EXPERTS ON THEIR SIDE THAT SUBMITTED REPORTS

6     THAT MAY NEED SUPPLEMENTING.

7               TO THE EXTENT YOU WERE PRESSING ON THE

8     QUESTION OF THE FOREIGN SUBSIDIARY DATA THAT WAS

9     GIVEN TO US AND THEN TAKEN OUT, IT'S NOT JUST THAT

10    WE SAW IT ONCE, AND THAT WE KNOW EVERYTHING WE NEED

11    TO KNOW, WE NEVER GOT DATA WITH REGARD TO THE

12    HERCULES PRODUCT BECAUSE THAT CORRECTION CAME

13    LATER.  AND WE, OF COURSE, DIDN'T GET AN

14    OPPORTUNITY TO EXAMINE THE WITNESS ON IT BECAUSE

15    THAT WAS THE INSTRUCTION NOT TO ANSWER.

16               THE COURT:  ALL RIGHT.

17               THANK YOU VERY MUCH.

18               ALL RIGHT.  WELL, WE HAVE TWO OTHER

19    MOTIONS TO ADDRESS.  I DO NEED TO GIVE THE COURT

20    REPORTER A BREAK, SO WHY DON'T WE STAND IN RECESS

21    FOR TEN MINUTES.

22               WE WILL TAKE THIS UP AT 12:00 AND KEEP

23    GOING.

24               (WHEREUPON A RECESS WAS TAKEN.)

25               THE COURT:  I WANT TO TURN NEXT TO

1    SAMSUNG'S MOTION TO, AND IN PARTICULAR THE MOTION

2    TO COMPEL REGARDING COMPLIANCE WITH MY DECEMBER

3    22ND ORDER, TRANSCRIPTS OF MATERIALS, ET CETERA.

4              SO WHO WILL BE ARGUING ON BEHALF OF THE

5    MATTER PARTIES THIS MOTION?

6              MS. HUTNYAN:  I WILL, YOUR HONOR.

7              MS. TUCHER:  BEFORE WE TURN TO THAT CAN I

8    JUST RAISE ONE THING LEFT OVER BEFORE THE BREAK?

9              I MENTIONED BUT FORGOT TO COME BACK TO

10   THE MATERIALS THAT WERE IN THE BINDER THAT I HANDED

11   UP THAT WERE NOT IN THE RECORD BECAUSE THEY

12   POSTDATED REPLY.  I MAY SEEK ORALLY HERE NOW THE

13   COURT'S LEAVE TO FILE UNDER SEAL JUST THOSE

14   SEGMENTS WITHOUT COMMENT?

15             THE COURT:  YOU MAY SEEK LEAVE.  I'M

16   GOING TO DENY THAT REQUEST.

17             I'M NOT TAKING ANY OF THESE LATE

18   SUBMISSIONS.  YOU GUYS ALL KNOW HOW TO FILE THE

19   STUFF ON TIME.  IF YOU WANT TO MAKE THAT REQUEST,

20   YOU NEED TO FILE IT AS SOON AS IT BECOMES AVAILABLE

21   OR CLEAR THAT YOU NEED TO DO IT.  AND YOU NEED TO

22   DO IT ON THE RECORD.  I CAN'T JUST HANDLE THESE

23   THINGS ON THE FLY.

24             MS. TUCHER:  THANK YOU, YOUR HONOR.

25             THE COURT:  GOOD AFTERNOON.

105

1          MS. HUTNYAN:  GOOD AFTERNOON.

2          I WOULD LIKE TO FIRST START WITH THE

3     MOTION TO ENFORCE.  AND THIS IS WITH RESPECT TO THE

4     COURT'S DECEMBER 22ND ORDER.  THAT ORDER ON PAGE 5

5     SAYS THAT THE COURT FINDS APPLE'S PROPOSED

6     DEFINITION OF TECHNOLOGICAL NEXUS TO BE AN

7     APPROPRIATE MEASURE UNDER THE BALANCING PROVISIONS

8     OF THE FEDERAL RULE OF CIVIL PROCEDURE 26

9     (B)(2)(C)(3) FOR THE PRODUCTION OF RELEVANT

10    EMPLOYEE TESTIMONY FROM OTHER ACTIONS.

11         AND THE COURT INDICATED THAT APPLE SHOULD

12    APPLY IN THIS STANDARD AND COMPLETE ITS PRODUCTION

13    OF ALL RESPONSIVE TRANSCRIPTS AND NO LATER THAN

14    JANUARY 15TH, 2012.

15         THE FOOTNOTE THAT WAS DROPPED FROM THE

16    QUOTED TECHNOLOGICAL NEXUS TO BE APPLIED TO THESE

17    CASES IS QUOTED FROM APPLE'S OPPOSITION AND IT

18    SAYS, "APPLE INTERPRETS TECHNOLOGICAL NEXUS TO

19    INCLUDE PRIOR CASES INVOLVING THE PATENTS IN SUIT

20    OR PATENTS COVERING THE SAME OR SIMILAR

21    TECHNOLOGIES, FEATURES OR DESIGNS AS THE PATENTS IN

22    SUIT."

23

24         THE COURT:  SEEMS TO BE A COMMON THEME

25    TODAY.  WHEN I CITE FOOTNOTES TO REPRESENTATIONS

```
1    FROM THE PARTIES, I GET MYSELF INTO ALL KINDS OF

2    TROUBLE; WOULDN'T YOU AGREE?

3              MS. HUTNYAN:  I DON'T THINK YOU'RE THE

4    ONE IN TROUBLE, YOUR HONOR.

5              THE COURT:  IT SURE FEELS THAT WAY, BUT

6    GO ON.

7              MS. HUTNYAN:  NOT AT ALL.

8              AND I THINK THIS IS THE CLEAR STANDARD.

9    AS A MATTER OF FACT, APPLE ARGUED WHEN IT SUGGESTED

10   THIS STANDARD TO YOU THAT IT WAS A CLEAR STANDARD

11   FOR THE PARTIES TO FOLLOW.  AND YET THE COMPLIANCE

12   WITH THAT CLEAR STANDARD HAS BEEN PROBLEMATIC.

13             I KNOW OF NINE IDENTIFYING CASES THESE

14   ARE ONES WE IDENTIFIED BY NAME TO APPLE AS ONES

15   THAT WE BELIEVE HAD A TECHNOLOGICAL NEXUS.  WE KNOW

16   THERE ARE OTHERS AND WE THINK THAT ALL RESPONSIVE

17   TRANSCRIPTS SHOULD BE COMPELLED FROM CASES FROM

18   CASES WITH THE TECHNOLOGICAL NEXUS, THAT'S THE COPY

19   OF THE ORDER.

20             BUT LOOKING AT THE NINE WE IDENTIFIED AND

21   EXHAUSTIVELY MET AND CONFERRED OVER.  THE NOKIA

22   CASE, DELAWARE 791, ONE OF THE PATENTS IN SUIT IN

23   THIS ACTION IS THE SAME AS ONE OF THE PATENTS IN

24   SUIT IN THIS ACTION.  CLEARLY TECHNOLOGICAL NEXUS.

25             WE GOT ONE DEPOSITION TRANSCRIPT, AND A
```

1    COUPLE OF OTHER THINGS, ONE OF THE OPPOSITION BRIEF

2    REGARDING BIFURCATION.  BUT WE ARE MISSING CLAIM

3    CONSTRUCTION, BRIEFING, INVALIDITY CONTENTIONS, ALL

4    KINDS OF DOCUMENTS.

5           THE COURT:  LET ME INTERRUPT YOU THERE

6    COUNSEL, SO I CAN FOLLOW YOUR POINT.

7           IN THE DELAWARE ACTION AT LEAST ONE OF

8    THE PATENTS IN SUIT IS A PATENT IN SUIT IN THIS

9    CASE, CORRECT?

10          MS. HUTNYAN:  CORRECT.

11          THE COURT:  OKAY.

12          AND IN THAT DELAWARE ACTION, CLAIMS

13   CONSTRUCTION BRIEFING WAS SUBMITTED BY APPLE; IS

14   THAT RIGHT?

15          MS. HUTNYAN:  I DO NOT KNOW BECAUSE THESE

16   AREN'T SAMSUNG'S CASES THESE ARE APPLE'S CASES

17   AGAINST OTHER ENTITIES.

18          SO I'VE SORT OF INADVERTENTLY CONFUSED

19   ISSUES BY JUMPING OFF THE DEPOSITION TRANSCRIPTS.

20   SO IF YOU WOULD ALLOW ME TO CORRECT THAT.

21          LET ME TALK ABOUT DEPOSITION TRANSCRIPTS

22   FIRST, THAT'S WHAT IT IS AS TO THE SCOPE OF THE

23   ORDER, EMPLOYEE DEPOSITION TRANSCRIPTS.  OKAY.  WE

24   GOT ONE.  AND MOTOROLA APPLE VERSUS MOTOROLA,

25   WISCONSIN 662 ACTION WE GOT THREE DEPOSITIONS.

1           A REVIEW OF PACER SHOWS THE FOLLOWING

2     INDIVIDUALS PERTINENT TO THIS ACTION.  BY THE WAY,

3     THAT ALSO SHARES PATENTS IN SUIT WITH THIS ONE,

4     SHI, BOULE, ORDING, BLUMENBERG, CHAUDRI, GANATRA,

5     LUTTON, HERZ WERE ALSO DEPOSED BUT WE DID NOT

6     RECEIVE THOSE TRANSCRIPTS.

7                 AND APPLE V. HTC, WE RECEIVED ZERO

8     TRANSCRIPTS, THAT WAS THE 167 CASE.  IN THE --

9                 THE COURT:  IN THE APPLE HTC LITIGATION

10    WAS A PATENT AT ISSUE THAT IS AT ISSUE IN THIS

11    CASE?

12                MS. HUTNYAN:  YES.

13                THE COURT:  YOU'VE RECEIVED ZERO

14    TRANSCRIPTS.

15                MS. HUTNYAN:  YES.

16                AND IN APPLE V. HTC, THE 797

17    INVESTIGATION, THE TWO CASES SHARE THREE PATENTS IN

18    SUIT.  AND ONE DEPOSITION WAS PRODUCED.

19                IN SAMSUNG ITC '796, THIS IS THE CASE

20    THAT WE MADE THE IN CAMERA SUBMISSION ON,

21    YOUR HONOR.  AND WE WOULD DIRECT THE COURT TO MAKE

22    IT SIMPLER, EXHIBIT F OF MY DECLARATION WHICH WAS

23    SUBMITTED, IT WAS A SUPPLEMENTAL DECLARATION TO THE

24    REPLY.

25                AND THERE WE TOOK INFORMATION FROM THE

1    FACE PAGES OF THE PATENTS IN SUIT OF BOTH CASES AND

2    SHOWED HOW THEY ARE THE SAME INVENTORS, THEY ARE

3    THE SAME PRIOR ART IDENTIFIED, THE SAME COMMERCIAL

4    EMBODIMENTS, THE SAME EVERYTHING.  AND WE GOT

5    EXACTLY NOTHING FROM THE 796 CASE.

6              IN ELAN V. APPLE, 1531, THAT ONE HAD

7    SIMILAR PATENTS, SIMILAR TECHNOLOGIES WHICH WAS

8    PART OF THE DEFINITION HERE.  AND WE DID NOT

9    RECEIVE --

10             THE COURT:  THIS IS THE ND CAL CASE?

11             MS. HUTNYAN:  THIS IS THE IN ELAN V.

12   APPLE, ND CAL.

13             THE COURT:  IT'S A CASE I HAVE SOME PART

14   WHICH IS WHY I ASK.

15             IF WE COULD CUT TO THE CHASE HERE BECAUSE

16   OUR TIME IS LIMITED.

17             THERE ARE A BUNCH OF CASES OUT THERE THAT

18   YOU THINK ARE STRONG AND BEAR IRREFUTABLE

19   TECHNOLOGICAL NEXUS TO THIS CASE.  THEY PRODUCED A

20   SMATTERING OF DEPOSITION TRANSCRIPTS FROM THOSE

21   CASES, MY ORDER NOTWITHSTANDING, IS THEIR ONLY

22   JUSTIFICATION WAS SOMEHOW MY ORDER WAS LIMITED TO

23   TECHNICAL DEFINITIONS THIS THOSE CASES; IS THAT

24   BASICALLY IT?

25             MS. HUTNYAN:  THERE ARE A NUMBER OF

1    EXCUSES.

2            ONE IS THAT THE ORDER WAS LIMITED TO ONLY

3    THE TRANSCRIPTS OF PEOPLE WHO WERE WITNESSES IN

4    THIS CASE MEANING THE ND CAL CASE.  AND THERE WAS

5    NO SUCH LIMITATION.

6            OF COURSE IF STEVE JOBS TESTIFIED IN ONE

7    OF THOSE OTHER CASES ABOUT THE DESIGN OF THE

8    IPHONE, THE FACT HE'S TESTIFIED HERE MEANS THAT

9    DEPOSITION IS STILL PERTINENT.  IT'S STILL APPLE'S

10   STATEMENTS, SO THAT WAS DEFINITELY APPLIED, THAT'S

11   THE DECLARATION, AND HE SPECIFICALLY DESCRIBES HOW

12   HE LIMITED IT TO THE INDIVIDUALS THAT WERE

13   CURRENTLY WITNESSES IN THIS CASE.

14           AND IN ADDITION, THERE WAS ALSO A LETTER

15   THAT WAS NOTIFIED TO THAT AS TO THE PERSONS HAVING

16   AN INDIVIDUAL TECHNOLOGICAL NEXUS AND THAT WAS AN

17   ADDITIONAL LIMITATION THAT WAS APPLIED.

18           SO I THINK THAT WOULD COUNT FOR THE

19   SITUATION WHERE WE ACTUALLY DID GET SOME

20   TRANSCRIPTS FROM SOME OF THESE ACTIONS.

21           THE COURT:  BUT IT WOULD ALSO EXPLAIN

22   WHY, FOR EXAMPLE, YOU RECEIVED NO DEPOSITION

23   TRANSCRIPTS FROM PEOPLE IN THE FINANCE DEPARTMENT,

24   FOR EXAMPLE.

25           MS. HUTNYAN:  RIGHT.

                                                            111

1           AND THERE SEEMS TO BE -- YES, WE WERE

2     NOTIFIED THAT BUCKLEY, BECAUSE HE WAS A FINANCIAL

3     GUY, HIS DEPOSITION WAS NOT PRODUCED BECAUSE IT WAS

4     DEEMED TO BE, SOMEHOW HE DIDN'T PERSONALLY HAVE A

5     TECHNOLOGICAL NEXUS.

6           I DON'T THINK THAT'S THE TEST.  HE'S

7     TALKING ABOUT NUMBERS ASSOCIATED WITH THE IPHONE,

8     THEN OBVIOUSLY THAT'S PERTINENT HERE.  AND THE

9     WHOLE POINT OF HAVING THE TECHNOLOGICAL NEXUS

10    STANDARD THAT APPLE ARGUED FOR AND THE COURT

11    ACCEPTED IS BECAUSE THAT WOULD DICTATE WHAT THE

12    REALM OF RELEVANT DISCOVERY WOULD BE, THAT YOU

13    COULD IDENTIFY WHICH CASES HAD THIS NEXUS THEN YOU

14    WOULD LOOK AND SEE WITHIN THAT CASE WHICH THINGS

15    ARE RELEVANT HERE.

16          I MEAN REALLY, IT'S RELEVANCE, BUT THAT

17    WAS A WAY OF SPECIFYING WHAT WE ALL UNDERSTOOD THAT

18    TO BE.

19          AND WE THINK APPLE HAS FALLEN SHORT AND

20    THEY NEED TO BRING THEMSELVES INTO IMMEDIATE

21    COMPLIANCE.

22          WE'VE BEEN REALLY PREJUDICED,

23    PARTICULARLY BY THE 796 TRANSCRIPTS WHICH I THINK

24    THIS IS REALLY PROBLEMATIC IN THAT WE WERE NOT ABLE

25    TO USE THE '796 INFORMATION IN OUR EXPERT REPORTS

1    AND CROSS USE FROM THAT CASE TO THIS ONE HAS BEEN

2    ACCEPTED BY APPLE.

3             INDEED, MR. SABRI TOLD YOU EARLIER THEY

4    HAVE ALL BUT STIPULATED, THEY OFFERED TO STIPULATE

5    THAT CASE HAS A TECHNOLOGICAL NEXUS TO THIS ONE.

6    THEY AGREED TO THE USE OF DOCUMENTS THAT WERE

7    PRODUCED IN THE '796 TO BE USED IN THE ND CAL.

8    THEY AGREED TO DOCUMENTS THAT WERE PRODUCED HERE TO

9    BE USED IN '796.  THEY AGREED TO USE OF THE DEPO'S

10   IN ND CAL TO BE USED IN '796.

11            AND -- BUT THE ONE CROSS USE, THE ONE

12   AREA THAT THEY DON'T WANT TO SHARE THESE

13   TRANSCRIPTS IS FROM '796 INTO ND CAL.  AND YET IN

14   THE MUSIKA REPORT THAT WE HEARD SO MUCH ABOUT HE

15   INCLUDED TWO SAMSUNG TRANSCRIPT REFERENCES FROM THE

16   '796 CASE.

17            IT SHOWS YOU THERE'S CLEARLY A

18   TECHNOLOGICAL NEXUS.  THEY AGREED THERE'S A

19   TECHNOLOGICAL NEXUS, AND YET WE DON'T HAVE A SINGLE

20   TRANSCRIPT.  SO WE REALLY NEED THOSE TO BE ORDERED

21   AGAIN AS SOON AS POSSIBLE.

22            THE COURT:  PERHAPS YOU COULD REFRESH MY

23   RECOLLECTION ON AN ISSUE.

24            AS I RECALL FROM THE ORAL ARGUMENT WE

25   HAD, I GUESS IT WAS BACK IN DECEMBER IF I'M

                                                        113

1    THINKING BACK CORRECTLY ON THIS ISSUE, THE

2    JUSTIFICATION OR YOUR EXPLANATION, YOUR BEING

3    SAMSUNG'S EXPLANATION, FOR WHY YOU NEEDED THIS

4    STUFF WAS THAT IN THESE OTHER CASES THAT BORE SOME

5    TECHNICAL RELEVANCE TO THIS CASE, APPLE WAS PERHAPS

6    IN A POSITION TO TAKE POSITIONS ON THE APPROPRIATE

7    SCOPE OF THE PATENTS THAT BORE SOME RESEMBLANCE TO

8    THE PATENTS IN SUIT HERE; IS THAT BASICALLY RIGHT?

9         MS. HUTNYAN:  YES, YOUR HONOR.

10        THE COURT:  OKAY.

11        SO IN THE EARLIER CASE THEN, FOR EXAMPLE,

12   APPLE MIGHT HAVE SAID THAT THE 949 MEANT THIS AND

13   IN THIS CASE THEY ARE SAYING IT MEANS SOMETHING

14   LIKE THIS -- FOR THE RECORD I'M GESTURING NARROW

15   AND WIDE.

16        IS THAT BASICALLY THE RATIONAL BEHIND

17   THIS REQUEST?

18        MS. HUTNYAN:  YES, INDEED, THAT'S EXACTLY

19   WHAT'S HAPPENED.

20        THE COURT:  HAVEN'T I -- IN FACT, I'M

21   PRETTY SURE I KNOW THE ANSWER TO THIS.  I'VE

22   ADDRESSED THIS GENERAL NOTION IN EARLIER ORDERS

23   WITH RESPECT TO THE INTERROGATORY, OR I GUESS IT

24   WAS AN RFA ORDER I ISSUED FAIRLY RECENTLY.

25        DIDN'T I ADDRESS THIS ISSUE OF THE

1   RELEVANCE OR MATERIALITY OF POSITIONS TAKEN IN

2   OTHER CASES AND HOW THOSE POSITIONS MIGHT BEAR ON

3   THE APPROPRIATE SCOPE OF THESE?

4          MS. HUTNYAN:  I BELIEVE YOU DID ADDRESS

5   THAT; YES, YOUR HONOR.

6          THESE GO TO THE SCOPE OF THE PATENTS.

7   THEY DISCUSS THE PRIOR ART.  THEY GO TO NOVELTY,

8   VALIDITY, ALL OF THESE ISSUES ARE BASICALLY A

9   MIRROR IMAGE TO THE OTHER CASES.

10         THE COURT:  ALL RIGHT.

11         GO ON.  I INTERRUPTED YOU.  I APOLOGIZE.

12         MS. HUTNYAN:  OKAY.

13         SO I GUESS I WOULD LIKE TO HEAR FROM

14   APPLE AS TO WHETHER THEY THINK THERE'S NOT A

15   TECHNOLOGICAL NEXUS.

16         THAT WAS ABSENT FROM THEIR BRIEF, AND YET

17   THERE WERE DISCUSSIONS THAT THE PROTECTIVE ORDER

18   SOMEHOW IN BOTH THE ITC AND IN THIS CASE BARRED

19   APPLE'S OWN USE OF THESE TRANSCRIPTS HERE IN ND

20   CAL.  AND THAT'S JUST NOT THE CASE.

21         ITC PROTECTIVE ORDER DOESN'T ADDRESS IT

22   AT ALL.  AND THE ND CAL PROTECTIVE ORDER SAYS WE

23   AGREED TO CROSS USE OF DOCUMENTS AND WE ARE -- BUT

24   THE FOLLOWING SENTENCE SAYS, "THE PARTIES CAN

25   ALWAYS SEEK OTHER TYPES OF DISCOVERY TO BE CROSS

1    USED IN THE ACTIONS BY THE USE OF DOCUMENT

2    REQUESTS."

3              SO WE GOT THE DOCUMENT REQUEST, WE GOT AN

4    ORDER FROM YOUR HONOR IN DECEMBER AND YET THEY ARE

5    NOT PRODUCED.

6              SO I WOULD LIKE TO RESERVE TIME TO FIGURE

7    OUT WHAT MY RESPONSE IS TO HOW THESE THINGS

8    COULDN'T HAVE BEEN PRODUCED BECAUSE THEY JUST DON'T

9    SEE HOW, USING YOUR HONOR'S WORDS, THERE'S A

10   LEGITIMATE DIFFERENCE OF OPINION HERE AS FAR AS THE

11   STANDARD.

12             THESE ARE VERY CLEAR.  AND THERE MAY BE

13   OTHER CASES THAT ARE IN THE GREY AREA SOMEWHERE,

14   BUT I SUBMIT THAT THE NINE THAT WE HAVE SUBMITTED,

15   SEVEN OF WHICH HAVE THE EXACT SAME PATENTS IN SUIT

16   SHARED BETWEEN THE TWO, AND '796 WHICH HAS AN

17   EXTREMELY CLEAR NEXUS TO WHICH THEY STIPULATED --

18             THE COURT:  BEFORE I ALLOW YOU TO REST,

19   AND I WILL GIVE YOU AN OPPORTUNITY FOR REBUTTAL, I

20   AM INTERESTED IN YOUR VIEW OF THE APPROPRIATE

21   REMEDY HERE.

22             ARE YOU SEEKING TO COMPEL, OBVIOUSLY,

23   PRODUCTION OF THESE TRANSCRIPTS AND OTHER

24   MATERIALS?

25             YOU IDENTIFIED ONE TYPE OF PREJUDICE YOU

1    BELIEVE YOU SUFFERED, YOUR EXPERTS DIDN'T HAVE THIS

2    STUFF WHEN THEY RENDERED THEIR OPINIONS, ARE YOU

3    SEEKING ANY REMEDY AT THIS TIME OTHER THAN

4    PRODUCTION OF THE MATERIALS AND TRANSCRIPTS?

5              MS. HUTNYAN:  YES.  AT THIS TIME,

6    YOUR HONOR, WE ARE SEEKING AN OPPORTUNITY TO DO

7    ANOTHER SUPPLEMENTAL REPORT THAT WOULD INCLUDE THIS

8    INFORMATION SO THAT WE CAN USE IT.

9              AND THEN, YOU KNOW, SOME LEEWAY TO DEAL

10   WITH THAT WHETHER IT'S DEPOSITIONS OR ADDITIONAL

11   RESPONSES.  I MEAN, WE JUST NEED THIS STUFF, WE

12   NEEDED IT BEFORE.

13             AND SO I THINK THE PROPER INITIAL REMEDY

14   AT LEAST IS TO ALLOW -- ORDER IT, THEN ALLOW US TO

15   USE IT SO WE ARE NOT SUFFERING FROM THE FACT THAT

16   THE DEADLINES HAVE PASSED.

17             THE COURT:  WHEN YOU SAY THAT I SHOULD

18   ALLOW YOU TO USE IT, ARE YOU SUGGESTING THAT MY

19   ORDER INCLUDE A SPECIFIC PROVISION AUTHORIZING

20   SAMSUNG TO SERVE SUPPLEMENTAL REPORTS, AND SHOULD I

21   FURTHER CONSIDER THE IMPACT OF THAT ON DEPOSITION

22   SCHEDULES AND SO FORTH?

23             MS. HUTNYAN:  YES.

24             WHAT WE'RE ASKING MORE SPECIFICALLY WOULD

25   BE TO ALLOW US TO DO SUPPLEMENTAL EXPERT REPORTS

```
 1    AND ALSO TO ALLOW US TO RE DEPOSE PEOPLE IF THERE

 2    ARE ISSUES THAT SHOULD BE ADDRESSED --

 3              THE COURT:  I'M GLAD YOU BROUGHT UP THE

 4    DEPOSITION ISSUE BECAUSE -- MAYBE I BROUGHT IT UP,

 5    I'M GLAD YOU TURNED TO IT BECAUSE THAT'S WHAT I'M

 6    STRUGGLING WITH.

 7              LET'S ASSUME FOR THE MOMENT I AGREE WITH

 8    YOU SOME MATERIALS SHOULD HAVE BEEN PRODUCED AND

 9    WEREN'T.  I'M HAVING THE SAME STRUGGLE THAT I HAD

10    IN THE EARLIER MOTION WHICH IS, HOW DO I FIX ALL OF

11    THIS WITHOUT PUTTING AT RISK THE VERY PRECISE

12    SCHEDULE THAT JUDGE KOH HAS MADE ABUNDANTLY CLEAR

13    SHE DOESN'T WANT TO MESS WITH, AND FOR GOOD REASON;

14    HOW DO I DO THAT?

15              MS. HUTNYAN:  WELL, I THINK THERE ARE --

16    I THINK IF THERE IS AN ORDER TO BASICALLY PRODUCE

17    THE THINGS IMMEDIATELY, I MEAN, WE'VE HAD MONTHS

18    AND MONTHS FOR COMPLIANCE I DON'T SEE WHY THESE

19    THINGS CAN'T BE PRODUCED IMMEDIATELY.

20              THEN MAKE A SHORT DEADLINE ALLOWING THE

21    USE OF THE SUPPLEMENTAL REPORT AND, YOU KNOW, A

22    FAIRLY BRIEF DEADLINE FOR A RESPONSE.  AND WE HAVE,

23    I THINK IT'S 60 OR 70 EXPERT DEPOSITIONS GOING

24    FORWARD IN A SHORT PERIOD.

25              I MEAN, IMMEDIATE COMPLIANCE WOULD GET US
```

1     PRETTY CLOSE TO THE MARK.

2              THE COURT:  HAVE EXPERT DEPOSITIONS

3     COMMENCED?

4              MS. MAROULIS:  NOT YET, YOUR HONOR.

5         THE REBUTTAL REPORTS ARE DUE THE 17TH, 16TH

6     AND --

7              THE COURT:  AND EXPERT DEPOSITIONS ARE

8     REQUIRED TO BE COMPLETED BY THE 30TH OR

9     THEREABOUTS?

10             MS. MAROULIS:  BY APRIL 27TH.

11             THE COURT:  SO EVEN LESS TIME.

12             MS. MAROULIS:  AN AMBITIOUS SCHEDULE.

13             THE COURT:  SO WITHIN TEN DAYS YOU ARE TO

14    COMPLETE 50 TO 60 DEPOSITIONS OF EXPERTS; IS THAT

15    RIGHT?

16             MS. MAROULIS:  THAT'S CORRECT, ACCORDING

17    TO THE CURRENT SCHEDULE.

18             THE COURT:  SO WITHIN THOSE TEN DAYS, I

19    AM TO ORDER FURTHER SUPPLEMENTAL REPORTS, PERHAPS

20    ADDITIONAL FACT DEPOSITIONS TO TAKE PLACE, AND THEN

21    CONSIDER WHEN EXPERT DEPOSITIONS OUGHT TO BE

22    COMPLETED ALL WITHOUT MESSING WITH JUDGE KOH'S

23    SCHEDULE?

24             MS. HUTNYAN:  WELL, YOUR HONOR, I THINK

25    WE SHOULD BE GIVEN LEAVE TO DO THE THINGS WE THINK

1    ARE APPROPRIATE TO REMEDY THIS.

2            THE COURT:  THAT'S WHAT I'M TRYING TO

3    EXPLORE HERE.  WHAT SPECIFICALLY ARE YOU ASKING ME

4    TO ORDER?

5            MS. HUTNYAN:  WELL, I GUESS IT WOULD

6    DEPEND ON WHAT YOU ORDER.  IF IT'S ALL OF THE

7    CASES, YOU KNOW, THAT WOULD GIVE ME A DIFFERENT

8    IDEA OF WHAT THE SCOPE MIGHT BE IN TERMS OF WHAT WE

9    NOW HAVE AND HAVE TO DEAL WITH.

10           BUT WE ARE ALREADY DEALING WITH AN

11   EXCRUCIATINGLY TIGHT SCHEDULE.  SO I DON'T THINK

12   THE REMEDY IS TO NOT ORDER IT, AND YOU KNOW,

13   BECAUSE IT'S TOO TIGHT.  IT'S ALREADY VERY TIGHT

14   AND I THINK WE JUST NEED TO NOT HAVE THIS DELAY

15   ANYMORE AND WE SHOULDN'T BE PREJUDICED ANYMORE.

16           WE HAVE SUFFERED THE FACT THAT THEY DID

17   NOT PRODUCE THESE THINGS THAT WERE CLEARLY SET OUT

18   IN AN ORDER THAT YOU GAVE THEM.

19           SO SAMSUNG SHOULDN'T BE PUNISHED FOR

20   THAT.

21           THE COURT:  ARE THERE ANY CASES OR

22   WITNESSES WHO ARE PARTICULARLY IMPORTANT TO YOU

23   THAT MATTER MORE THAN OTHERS?

24           MS. HUTNYAN:  '796 IS INCREDIBLY

25   IMPORTANT.

1          AND I APOLOGIZE AGAIN FOR THE IN CAMERA

2     SUBMISSION, I WAS A BIT AT A LOSS IN TERMS OF DOING

3     THAT, AND ESPECIALLY WHEN THEY WENT AHEAD AND USED

4     OUR CONFIDENTIAL DEPOSITION TRANSCRIPTS, VIOLATED

5     THE ITC PROTECTIVE ORDER USING THEM WITH THEIR

6     EXPERT REPORTS.  TO HEAR NOW THAT THE ONLY

7     IMPEDIMENT WAS WHO WAS GOING TO SHOW OUR EXPERTS,

8     WHICH I TOLD THEM BEFORE WE WEREN'T GOING TO DO, WE

9     REALLY SHOULD HAVE HAD THOSE FILED UNDER SEAL.

10         THE PROPER WAY TO DO THAT WOULD BE TO

11    FILE THEM UNDER SEAL ON THE REPLY BRIEF.  THAT'S

12    WHAT WE ASKED THEM TO DO AND THEY REFUSED, SO WE

13    DID THE WHOLE IN CAMERA SUBMISSION DETOUR AND NOW

14    WE'VE LANDED IN A PLACE WHERE YOUR HONOR DOESN'T

15    WANT TO PUT THEM IN THE RECORD.

16         THESE '796 TRANSCRIPTS ARE SO PROBATIVE.

17    WE HAVE CROSS-USE GOING EVERY WHICH WAY BETWEEN THE

18    TWO CASES BECAUSE CLEARLY THERE'S A TECHNOLOGICAL

19    NEXUS.

20         THE ONE WAY IS THE WAY THAT APPLE DOESN'T

21    WANT TO THEM TO COME IN, FROM THE '796,

22    PARTICULARLY THE DESIGN SIDE INTO THIS CASE BECAUSE

23    THE --

24         THE COURT:  I APOLOGIZE, I INTERRUPTED

25    YOU ONCE AGAIN.

                                                    121

```
1              IF I UNDERSTAND WHAT YOU'RE SAYING

2     CORRECTLY IN THE ITC ACTION, THERE'S NO PROBLEM

3     WITH USING THE DEPOSITION TRANSCRIPTS FROM THIS

4     CASE; IS THAT WHAT YOU ARE SAYING?

5              MS. HUTNYAN:  IN THE ITC PROTECTIVE ORDER

6     APPLE DOES NOT HAVE ANY LIMITATION AS TO WHAT IT

7     CAN DO WITH ITS OWN CONFIDENTIAL INFORMATION.

8     THAT'S HOW, FOR EXAMPLE, IT CAN AGREE TO THE USE OF

9     DOCUMENTS THAT WERE PRODUCED THERE, AND THEN ARE

10    PUT UNDER THAT PROTECTIVE ORDER.  THEY CAN SAY

11    YEAH, YOU CAN USE THEM IN ND CAL, WHICH IS INDEED

12    WHAT THEY DID.

13             SO THEY DON'T HAVE A LIMITATION.  WE HAVE

14    A LIMITATION BECAUSE IT'S NOT OUR CONFIDENTIAL

15    INFORMATION.  IT SAYS YOU ARE NOT SUPPOSED TO USE

16    IT OUTSIDE OF THE ITC PURPOSES.

17             THE COURT:  I UNDERSTAND THAT.

18             BUT IN THE ITC ACTION, ARE THERE ANY

19    LIMITATIONS ON THE COMMISSION OR THE ADMINISTRATIVE

20    LAW JUDGE IN THE FIRST INSTANCE CONSIDERING A

21    DEPOSITION TRANSCRIPT TAKEN FROM THIS CASE?

22             MS. HUTNYAN:  NO.

23             THE COURT:  OKAY.

24             SO --

25             MS. HUTNYAN:  THE DEPOSITIONS ARE BEING
```

1    CROSS USED, YOUR HONOR, YES.

2              THE COURT:  THAT WAY?

3              MS. HUTNYAN:  YES, THAT WAY.

4              THE COURT:  BUT WHAT YOU ARE SAYING IS

5    THEY CAN'T BE USED THIS WAY.

6              MS. HUTNYAN:  APPLE WILL NOT AGREE TO IT.

7              THE COURT:  WELL, YOU WANTED TO RESERVE

8    TIME FOR REBUTTAL.  I'M HAPPY TO ALLOW YOU TO DO

9    THAT.

10             ARE THERE OTHER POINTS YOU WISH TO MAKE?

11             MS. HUTNYAN:  YES.

12             I WOULD LIKE TO TURN BACK TO THE OTHER

13   DOCUMENTS, THE MOTION TO COMPEL PORTION.  AND WHAT

14   WE ASKED FOR IN THE MOTION TO COMPEL, YOUR HONOR,

15   IS TO TAKE THE SAME TECHNOLOGICAL NEXUS STANDARD,

16   WE BELIEVE IT'S THE RIGHT ONE, IF IT'S APPLIED

17   CORRECTLY AND APPLY THAT TO THE OTHER THINGS IN

18   THOSE CASES, WHETHER IT'S NON-EMPLOYEE DEPOSITION

19   TRANSCRIPTS, WITNESS STATEMENTS, AFFIDAVITS, EXPERT

20   REPORTS, DECS, CLAIM CONSTRUCTION BRIEFS, COURT

21   RULINGS, INVALIDITY CONTENTIONS AND INFRINGEMENT

22   CONTENTIONS, MATERIALS PRESENTED IN TUTORIALS,

23   ASSERTED PRIOR ART, WRITTEN DISCOVERY,

24   INTERROGATORY RESPONSES, ET CETERA, RESPONSES

25   THERETO, BRIEFING FOR DISPOSITIVE MOTIONS; ALL OF

1    THOSE THINGS ARE CERTAINLY DOCUMENTS IN WHICH APPLE

2    HAS TAKEN POSITIONS ON THE SAME PATENTS IN SUIT.

3              SO THERE'S ABSOLUTELY NO REASON WHY, IF

4    YOU ASSUME OR UNDERSTAND THAT THE CASES HAVE A

5    TECHNOLOGICAL NEXUS, WHY THOSE THINGS WOULD NOT BE

6    RELEVANT.

7              INDEED THEY ARE VERY RELEVANT TO NARROW

8    THE ISSUES IN THIS SUIT BECAUSE YOU ARE NARROWING

9    THE POSITIONS TO DEAL WITH THEM.  IT'S ANOTHER

10   THING WE THINK SHOULD HAVE BEEN PRODUCED A LONG

11   TIME AGO.

12             THE COURT:  AND IS NOKIA THE ONLY THIRD

13   PARTY THAT'S OBJECTING?  AM I WRONG IN THAT

14   UNDERSTANDING?

15             MS. HUTNYAN:  LET ME GET THIS RIGHT.

16             SO NOKIA HAS AGREED, IT HAS CONSENTED TO

17   A SPECIFIC LIST OF MATERIALS THAT IT SAID WAS

18   BASICALLY EVERYTHING IN THAT CASE THAT IT THOUGHT

19   WAS PERTINENT, AND I TOOK THAT REPRESENTATION.

20             SO WE HAVE CONSENT FROM NOKIA, WE HAVE

21   CONSENT FROM ATMEL, GOOGLE, AND MOTOROLA IS THE

22   ONLY ONE THAT DID NOT GIVE CONSENT THEY SAID THEY

23   HAVEN'T HAVE ENOUGH INFORMATION TO MAKE THAT

24   DETERMINATION.

25             BUT MANY OF THOSE MATERIALS WERE REDACTED

1    ALREADY BY APPLE.  IT WAS ACTUALLY PRODUCED IN

2    ANTICIPATION OF YOUR ORIGINAL DECEMBER 22ND ORDER.

3    AND THOSE MATERIALS, AS YOU MAY RECALL THAT'S HOW

4    THE CONFIDENTIALITY ISSUE POPPED UP INITIALLY, WERE

5    THESE REDACTIONS.

6              SO WE DON'T THAT.  BUT ALL OF THE OTHERS

7    GAVE CONSENT AND YET THERE'S STILL ATMEL, CBI THAT

8    HAS BEEN REDACTED FROM THE MATERIALS PRODUCED.

9    THERE'S GOOGLE INFORMATION THAT'S STILL REDACTED.

10             AND THE ANSWER THAT WE GOT FROM APPLE IN

11   ITS BRIEF WAS THAT THEY NEVER AGREED TO REDACT

12   THINGS FROM THE BRIEFS.  THAT IT WAS OUR MISSION TO

13   GET THE CONSENTS FROM THE THIRD PARTIES, AND WHEN

14   WE QUOTE "FAILED" IN OUR MISSION, THEY NEVER AGREED

15   TO REDACT ANYTHING.

16             THE COURT:  THEY ARE SAYING IT'S ALL OR

17   NONE.

18             MS. HUTNYAN:  WELL, THE THING IS THE

19   STUFF THEY ALREADY REDACTED -- SO THEY OBVIOUSLY

20   AGREED TO REDACT IT, AND THE OTHER STUFF DOESN'T

21   NEED TO BE REDACTED BECAUSE WE GOT FULL CONSENT.

22   WE DIDN'T FAIL AT ALL, WE GOT IT.

23             FEBRUARY 10TH I RECEIVED A LETTER FROM

24   APPLE SAYING AS SOON AS YOU GET THE CONSENTS WE

25   WILL PROMPTLY PRODUCE THOSE DOCUMENTS.

```
1            AND YET WHEN I GOT THE CONSENTS NINE DAYS
2    LATER, I GOT SOME OF THEM NINE DAYS LATER, AND SOME
3    TRAILED OUT A LITTLE BIT, BUT WHEN I GOT THEM THEY
4    STILL WOULDN'T PRODUCE THEM.
5            THE COURT:  ALL RIGHT.
6            LET'S HEAR FROM APPLE ON THIS.
7            MS. HUTNYAN:  THANK YOU, YOUR HONOR.
8            MR. SABRI:  THANK YOU, YOUR HONOR.
9            NATHAN SABRI FOR APPLE.
10           THE COURT:  MR. SABRI, GOOD AFTERNOON.
11           MR. SABRI:  GOOD AFTERNOON.
12           I'LL START WITH THE MOTION TO ENFORCE
13    UNLESS YOUR HONOR WISHES ME TO START ELSEWHERE.
14           THE COURT:  YOU MAY START WHEREVER YOU
15    WISH.
16           MR. SABRI:  I WILL READ FROM THE SAME
17    ORDER THAT MS. HUTNYAN READ FROM, BUT I WILL START
18    A LITTLE BIT EARLIER ON THE HEADING WHICH SHE
19    EXCLUDED.
20           "TRANSCRIPTS OF PRIOR DEPOSITION
21    TESTIMONY OF APPLE WITNESSES TESTIFYING IN THEIR
22    CAPACITY."
23           WHAT SAMSUNG IS NOW TRYING TO DO IS
24    EXPAND ITS DECEMBER MOTION AND THUS EXPAND THE
25    COURT'S ORDER IN SEVERAL DIFFERENT DIRECTIONS AT
```

```
 1    THE SAME TIME.

 2              FIRST, I WILL BACK UP.  AS YOUR HONOR MAY

 3    HAVE REMEMBERED FROM THIS BRIEFING AND THE

 4    ARGUMENT, SAMSUNG MOVED AFTER MEETING AND

 5    CONFERRING ON PRIOR TESTIMONY FROM APPLE'S INVENTOR

 6    WITNESSES AND IN THE DECLARATION THAT MS. HUTNYAN

 7    FILED IN SUPPORT OF THAT MOTION, THAT'S THE MEET

 8    AND CONFER HISTORY THAT IS SET OUT.  THAT THE

 9    DECLARATION -- THIS IS AT DOCKET -- THIS MIGHT HAVE

10    BEEN FILED UNDER SEAL, THE DEC IN SUPPORT OF

11    DECEMBER MOTION SAYS SAMSUNG'S COUNSEL REQUESTED

12    PRIOR DEPOSITION TRANSCRIPTS FOR INVENTOR

13    WITNESSES, RELEVANCE OF PRIOR TESTIMONY OF

14    INVENTORS, AND APPLE REFUSED TO PRODUCE THOSE.

15              THE COURT:  SO IS IT YOUR POSITION,

16    COUNSEL, MY ORDER WAS LIMITED TO INTENTIONS?

17              MR. SABRI:  NO NOT ALL.  I'M TRYING TO

18    GIVE THIS FOR THE BACKGROUND.

19              APPLE THEN BROADENED IT'S MOTION, BUT THE

20    KEY HERE IS APPLE WITNESSES.  IN SAMSUNG'S MOTION

21    IT JUSTIFIED THIS PRODUCTION BY POINTING TO, AS

22    YOUR HONOR NOTED, THE DISCUSSIONS OF SCOPE OF

23    PATENTS.

24              SAMSUNG POINTED TO IMPEACHMENT PURPOSES,

25    IN FACT THE MAIN CASE SAMSUNG CITED IN SUPPORT OF
```

```
1     ITS MOTION WAS A CASE THAT WOULD NOT ALLOW

2     PRODUCTION OF PRIOR DEPOSITION TESTIMONY WHERE THE

3     DEPONENTS WERE NOT WITNESSES IN THE CASE AT ISSUE.

4            THE WHOLE THRUST OF THAT MOTION AND ORDER

5     WAS PRIOR TESTIMONY OF APPLE WITNESSES, NOT ALL

6     EMPLOYEES.

7            SO THAT'S THE ONE DIRECTION SAMSUNG IS

8     NOW ATTEMPTING TO EXPAND

9            THE COURT:  I WANT TO UNDERSTAND APPLE'S

10    VIEW.

11           ARE YOU TELLING ME MY ORDER LIMITS

12    APPLE'S OBLIGATION TO THOSE INDIVIDUALS WHO WILL

13    TESTIFY AT TRIAL?

14           MR. SABRI:  OR WHO WERE DEPOSED IN THIS

15    CASE.

16           THE COURT:  IS THERE ANY LANGUAGE IN MY

17    ORDER THAT YOU CAN POINT ME TO THAT SUPPORTS THAT

18    POSITION?

19           MR. SABRI:  WITNESSES, WE BELIEVE IS

20    CLEAR, YOUR HONOR.

21           APPLE'S -- PRIOR DEPOSITION OF APPLE

22    WITNESSES TESTIFYING IN AN EMPLOYEE CAPACITY.

23           THE COURT:  SO YOUR POSITION IS WHEN I

24    SAID WITNESSES I MEANT WITNESSES IN THIS CASE, I.E.

25    DEPOSITION WITNESSES OR TRIAL WITNESSES, I WASN'T
```

128

1    REFERRING FOR EXAMPLE TO DEPOSITION WITNESSES IN

2    THE PRIOR CASE?

3              MR. SABRI:  YES, YOUR HONOR.

4              WE DO BELIEVE THAT IS WHAT THE ORDER

5    REFERRED TO.  AND WE BELIEVE THE ORDER READ IN THE

6    CONTEXT OF THE MOTION WOULD ONLY HAVE GONE THAT

7    FAR.

8              THE COURT:  DON'T YOU AGREE, COUNSEL,

9    THAT THERE'S NO BURDEN OBJECTION HERE, NO SERIOUS

10   BURDEN OBJECTION ON APPLE'S PART.  YOU CAN PRODUCE

11   THE MATERIALS FAIRLY QUICKLY IF YOU HAD TO.

12             MR. SABRI:  PRODUCTION OF ALL EMPLOYEES

13   WOULD BE SIGNIFICANTLY MORE BURDENSOME.      ONE

14   ITEM --

15             THE COURT:  YOU DON'T HAVE A DATABASE AT

16   MORRISON & FOERSTER THAT HAS ALL OF THESE

17   DEPOSITION TRANSCRIPTS AVAILABLE TO YOU?

18             MR. SABRI:  WE DO FOR WITNESSES.

19   APPLE'S DATABASE -- SO AS WE EXPLAINED IN THE

20   BRIEFING, APPLE STORES THESE TRANSCRIPTS ON A

21   WITNESS-BY-WITNESS BASIS.

22             SO WHEN WE SEARCH FOR TRANSCRIPTS WE

23   DON'T GO NOKIA DELAWARE, LET'S PULL ALL

24   TRANSCRIPTS, WE SAY WITH WHO ARE THE PEOPLE WE

25   NEED.

1           THE COURT:  RIGHT.  SO YOU GO GET THE

2    LIST OF PEOPLE WHO TESTIFIED IN NOKIA, DELAWARE AND

3    PULL EACH ONE MANUALLY, RIGHT?

4           MR. SABRI:  WE COULD DO THAT EXTRA STEP.

5           HOWEVER, WHAT WAS DISCUSSED IN THE

6    EARLIER ARGUMENT, WHAT WE ARE HERE ON IS A MOTION

7    TO ENFORCE THE PRIOR ORDER, NOT A MOTION TO COMPEL.

8           THE PARTIES HAVE NOT MET AND CONFERRED ON

9    THE POINT THAT YOUR HONOR IS DISCUSSING NOW.  THE

10   ISSUE HAS NEVER BEEN BRIEFED OVER WHETHER SUCH A

11   BROAD PRODUCTION --

12          THE COURT:  SO LET'S TALK ABOUT THE

13   ANALYSIS.  OUR TIME IS LIMITED.

14          WHAT OBJECTION HAS APPLE HAD IN PRODUCING

15   TRANSCRIPTS FROM INDIVIDUALS OTHER THAN THOSE THAT

16   THEY HAVE ALREADY PRODUCED?

17          WHAT'S THE PROBLEM?  THERE'S A DEPOSITION

18   TRANSCRIPT SITTING IN AN APPLE DATABASE AS I SPEAK

19   THAT YOU CAN PRODUCE IN ABOUT 10 MINUTES, I

20   SUSPECT, MAYBE 20.  SO THERE'S NO BURDEN OBJECTION.

21          WHAT IS THE OBJECTION TO PRODUCING,

22   SUBJECT TO THE PROTECTIVE ORDER IN THIS LITIGATION

23   OF ALL THE BELLS AND WHISTLES, WHAT'S YOUR

24   OBJECTION?

25          MR. SABRI:  THE ONLY OBJECTIONS, YOUR

1    HONOR, WOULD BE WITHOUT SEEING WHO THE EMPLOYEES

2    AND THE PRIOR WITNESSES ARE, I DON'T THE WHAT THE

3    RELEVANCE WOULD BE.

4             THE COURT:  SO YOU DIDN'T EVALUATE THAT

5    ISSUE BEFORE YOU TOOK THE POSITION OR IN FILING

6    YOUR OPPOSITION TO THIS MOTION?

7             MR. SABRI:  WE BELIEVE IT WOULD BE

8    BURDENSOME.

9             WELL, LET ME TAKE A QUICK SIDE STEP --

10            THE COURT:  WHAT'S THE BURDEN OF

11   PRODUCING A DEPOSITION TRANSCRIPT OR EVEN A

12   THOUSAND OF THEM FROM A DATABASE?

13            MR. SABRI:  I HAVE TO SAY, WHAT I DON'T

14   KNOW YOUR HONOR IS WHETHER THERE EVEN WOULD BE ANY

15   OTHER TRANSCRIPTS THAT WOULD NEED TO BE PRODUCED,

16   IF THERE ARE OTHER RELEVANT TRANSCRIPTS.      LET

17   ME TELL YOU WHY.  THIS IS GOING TO SOUND LIKE A

18   DETOUR, BUT I THINK IF YOU WILL INDULGE ME YOU WILL

19   SEE WHY.

20            THE COURT:  PROCEED AT YOUR PERIL.

21            GO AHEAD.

22            MR. SABRI:  MS. HUTNYAN LISTED A FEW

23   PROCEEDINGS, AND I BELIEVE THE IMPRESSION THAT HAS

24   BEEN GIVEN IS APPLE HAS SIMPLY NOT PRODUCED ANY

25   TRANSCRIPTS OR HAS PRODUCED HARDLY ANY TRANSCRIPTS

1    FROM THESE RELATED PROCEEDINGS, AND THAT'S

2    FACTUALLY WRONG.

3             THE COURT:  WELL, WHAT ABOUT THE '796?

4             MR. SABRI:  '796, I WILL TURN TO THAT IN

5    A MOMENT, IF I MAY.

6             WE BELIEVE THE '796 IS A WHOLE SEPARATE

7    ISSUE.  IT IS NOT A PREDICTION, AN OF ISSUE OF

8    PRODUCTION OF THE '796 CASE, IT'S SOLELY AN ISSUE

9    OF USE.

10            BUT BEFORE I TURN TO THAT --

11            THE COURT:  WHAT'S THE DIFFERENCE BETWEEN

12   PRODUCTION AND USE?

13            MR. SABRI:  BOTH PARTIES AGREED -- IT'S

14   NOT JUST APPLE, BOTH PARTIES AGREED AT THE OUTSET

15   OF THESE CASES THAT THEY WOULD NOT USE DEPOSITION

16   TRANSCRIPTS FROM THE ITC '796 CASE IN THIS CASE.

17            AND THERE'S A CRITICAL REASON FOR THAT

18   DISTINCTION, AND THAT IS JUDGE KOH IMPLEMENTED A

19   250-HOUR DEPOSITION IN THIS CASE.  THERE ARE NO

20   LIMITS IN THE ITC.

21            SO APPLE ABIDED BY THAT LIMIT, MADE TOUGH

22   CALLS, WHO SHOULD WE DEPOSE, WHAT SHOULD WE ASK

23   THEM, LET'S KEEP OURSELVES WITHIN THE 250-HOUR

24   LIMIT.  SAMSUNG APPARENTLY DID NOT.

25            WHAT WE ENDED UP SEEING IS IN MANY DESIGN

1     DEPOSITIONS IN THE ITC, SAMSUNG ASKING QUESTIONS

2     THAT WERE SOLELY RELATED TO THE NORTHERN DISTRICT

3     OF CALIFORNIA.

4              APPLE'S COUNSEL HAD TO OBJECT ON THE

5     RECORD, AND IT SEEMS NOW THAT THE PLAN ALL ALONG

6     WAS IN CONTRAVENTION OF THE PARTY'S AGREEMENT FOR

7     SAMSUNG AT THE LAST MINUTE TO SAY, LET'S TRY TO USE

8     ALL OF THAT DEPOSITION FROM THE ITC, THE UNLIMITED

9     AMOUNT IN THIS CASE.

10             SO NUMBER ONE, IT'S JUST A VIOLATION OF

11    THE PARTY'S AGREEMENT.

12             NUMBER TWO, WE KNOW SAMSUNG HAS THESE --

13             THE COURT:  I APOLOGIZE FOR INTERRUPTING

14    YOU.

15             IF I GO BACK AND READ THROUGH THE MYRIAD

16    OF MEET AND CONFER LETTERS AND EXCHANGES YOU ALL

17    HAVE GIVEN ME TO CONSIDER, YOU ARE TELLING ME

18    SOMEWHERE IN THAT PILE, THIS ONE, MAYBE THIS ONE,

19    THERE'S A DOCUMENT WHERE YOU ALL AGREE WITHOUT

20    CATEGORY, WITHOUT EXCEPTION THAT THE DEPOSITIONS

21    THAT WERE TAKEN IN THE ITC MAY NOT BE USED IN THIS

22    CASE?

23             MR. SABRI:  I DON'T KNOW IF IT'S REDUCED

24    TO A LETTER.  WHAT I DO KNOW IS --

25             THE COURT:  SO IF IT'S NOT IN WRITING --

1    MR. SABRI:  SO IT WAS REDUCED -- WE DO

2    HAVE A MEMORIALIZATION OF IT WHICH IS WHAT YOU ARE

3    LOOKING FOR, THE PROTECTIVE ORDERS THAT WERE

4    PROPOSED IN THIS CASE BY BOTH SIDES.

5        SO MS. HUTNYAN BEGAN WITH THE ND CAL

6    PROTECTIVE ORDER.  SHE SAID WE AGREED TO CROSS USE

7    OF DOCUMENTS AND WE CAN SEEK MORE.

8        WHAT SHE LEFT OUT, IT'S THE SENTENCE

9    RIGHT AFTER, "WE AGREE TO CROSS USE OF DOCUMENTS"

10   AND THIS PROVISION DOES NOT APPLY TO TRANSCRIPTS.

11   THAT WAS IN WHAT BOTH PARTIES PROPOSED IN JANUARY.

12       THE REASON BEHIND THAT LANGUAGE WAS THIS

13   AGREEMENT THAT I'VE JUST BEEN DISCUSSING.  I DON'T

14   KNOW TO WHAT EXTENT THAT AGREEMENT WAS, OVER THE

15   PHONE OR VIA E-MAIL AND LETTERS.  I DO KNOW IT WAS

16   VERY CLEAR THERE'S A LIMIT IN THIS CASE, THERE'S NO

17   LIMIT IN THAT CASE.  WE JUST CAN'T AGREE TO HAVE

18   ALL DEPOSITION TESTIMONY FROM AN UNLIMITED SOURCE

19   APPLY IN A CASE WHERE THERE IS A LIMIT.

20       SO APPLE ABIDED BY THE LIMIT, MADE TOUGH

21   CALLS, AND NOW SAMSUNG WANTS TO AVOID THE

22   CONSEQUENCES OF THOSE TOUGH CALLS AND THAT

23   AGREEMENT.

24       THE COURT:  SO I WANT TO MAKE SURE I

25   UNDERSTAND APPLE'S POSITION.

1          REALLY, YOUR ONLY OBJECTION TO PRODUCING

2     THE TRANSCRIPTS THAT ARE ESSENTIALLY BURDENLESS IS

3     THAT IT WOULD BREAK THE DEAL YOU CUT WITH SAMSUNG?

4          MR. SABRI:  IT WOULD BREAK THE DEAL.  IT

5     WOULD ALLOW SAMSUNG TO GET THIS BENEFIT OF AN

6     IMMENSE SOURCE OF DEPOSITION AT THE END OF THE

7     GAME.  IT'S CHANGING THE RULES AFTER THE CLOSE OF

8     DISCOVERY THAT BOTH PARTIES OPERATED UNDER.  AND IT

9     ALLOWS SAMSUNG TO REAP THE BENEFITS OF IMPROPER USE

10    OF THAT PROCEEDING FOR THAT CASE.

11          SO WHAT WE'VE SEEN IS QUESTIONS ASKED IN

12    ITC DEPOSITIONS THAT RELATES SOLELY TO ND CAL.

13          WHAT WE SAW AFTER JUDGE KOH DENIED THE

14    REQUEST FOR ADMINISTRATIVE RELIEF, AS YOUR HONOR

15    MAY KNOW, DISCOVERY MUST END RELEVANCE COULD BE A

16    LIMITLESS -- A BOTTOMLESS PIT, THAT'S NOT HER

17    LANGUAGE, THAT'S MY PARAPHRASE.

18          THEN WE SAW WAS A WHOLESALE DUMPING OF

19    THE LETTERS FROM THIS CASE TO THE ITC CASE WHERE IN

20    A SPAN OF THREE DAYS, EIGHT LETTERS, 40 CATEGORIES

21    OF DOCUMENTS ALL FROM THE NORTHERN DISTRICT OF

22    CALIFORNIA --

23          THE COURT:  IS IT REALLY TRUE THAT THE

24    ITC DOESN'T IMPOSE ANY LIMITS, DO THEY AGREE WITH

25    THAT CHARACTERIZATION?

1              MR. SABRI:  I BELIEVE THEY WOULD.  THERE

2      ARE NO LIMITS ON THE DEPOSITION HOURS IN THAT CASE.

3              THE COURT:  WELL, THERE MAY NOT BE ANY

4      LIMITS ON THE NUMBER OF HOURS SO LONG AS THE

5      DEPOSITIONS ARE OTHERWISE APPROPRIATE IN THIS CASE.

6              THE ITC DOESN'T ALLOW YOU TO JUST START

7      TAKING DEPOSITIONS WILLY NILLY.

8              MR. SABRI:  SURE.  A LIMIT OF REASON,

9      THIS IS TRUE.

10             HOWEVER WHEN YOU HAVE, AS WE DO, HUNDREDS

11     OF DEPOSITIONS GOING ON, MANY, MANY DIFFERENT

12     PATENTS, IT IS THE LIMIT OF REASON -- IT'S NOT EVEN

13     A LIMIT OF REASON, IT'S A LIMIT OF HOW MANY HOURS

14     ARE IN EACH DAY AND HOW MANY DAYS DO WE HAVE BEFORE

15     THE CLOSE OF DISCOVERY.

16             AND WHAT YOU SAW IS BECAUSE THERE'S NO

17     HOURS COUNT, THE 250-HOUR LIMIT SEEMS PRETTY HIGH.

18             THE COURT:  IT IS HIGH, WOULDN'T YOU

19     AGREE?

20             MR. SABRI:  I WOULD AGREE.

21             THE COURT:  YOU WOULD AGREE JUDGE KOH WAS

22     EXTREMELY GENEROUS IN PERMITTING THE PARTIES

23     DISCOVERY IN THIS CASE?

24             MR. SABRI:  I WOULD ABSOLUTELY AGREE.

25             AND YET BOTH PARTIES STILL USED A GREAT

136

1    NUMBER OF HOURS WITHIN THAT LIMIT.  THOSE MANY

2    HOURS, GIVEN HOW MANY DEPONENTS WE HAVE, REQUIRED

3    TOUGH CALLS.

4             NO SUCH TOUGH CALLS NEEDED TO BE MADE IN

5    THE ITC.  EVERY DEPONENT WHO HAD A RELEVANT

6    RELATIONSHIP COULD BE QUESTIONED.

7             THE COURT:  SO IF JUDGE KOH AND HER JURY

8    ARE ULTIMATELY TASKED AT GETTING AT THE TRUTH,

9    FIGURING OUT WHETHER OR NOT THE ACCUSED PRODUCTS

10   FOLLOWED THE SCOPE OF YOUR CLAIMS AND THERE'S

11   TESTIMONY ON THAT VERY SUBJECT, THE SCOPE OF THOSE

12   CLAIMS SITTING THERE IN AN APPLE DATABASE TODAY,

13   YOU ARE SAYING WE HAD A DEAL, IT SHOULDN'T SEE THE

14   LIGHT OF DAY, THE JURY SHOULDN'T GET TO CONSIDER

15   THAT.

16            MR. SABRI:  IF SAMSUNG WISHES TO MAKE A

17   USE ARGUMENT FOR PURE IMPEACHMENT USE, THAT'S A

18   SEPARATE QUESTION.

19            THE COURT:  WHY DON'T YOU ANSWER THE

20   QUESTION THEN; COULD THEY DO THAT?

21            MR. SABRI:  COULD THEY --

22            THE COURT:  SHOULD THEY BE ABLE TO.

23            MR. SABRI:  I BELIEVE IT WOULD DEPEND ON

24   WHETHER IT'S A TRUE IMPEACHMENT POINT.

25            THE COURT:  SO IN ORDER TO REACH THAT

1    QUESTION THEY WOULD HAVE TO HAVE THE TRANSCRIPT IN

2    HAND.

3              MR. SABRI:  AND OF COURSE THEY DO,

4    YOUR HONOR.  THIS IS WHAT WE SEE FROM THE IN CAMERA

5    SUBMISSION.

6              WHAT SAMSUNG IS DOING IS SAYING THESE

7    DOCUMENTS --

8              THE COURT:  YOU ARE TALKING ABOUT THE

9    '796.

10             I HAVE BEEN TOLD THERE ARE OTHER CASES IN

11   WHICH THE PATENTS AT ISSUE IN THIS CASE WERE AT

12   ISSUE IN THE OTHER CASES.

13             DOES SAMSUNG HAVE ACCESS TO THAT?

14             MR. SABRI:  I BELIEVE SAMSUNG DOES HAVE

15   ACCESS.

16             BEFORE WE TURN TO THE '796, WHAT I WANT

17   TO POINT OUT ON THE OTHER PROCEEDINGS, FOR EXAMPLE,

18   I WILL CHOOSE MOTOROLA WISCONSIN BECAUSE THAT'S ONE

19   MS. HUTNYAN LISTED.

20             SHE SAYS WE ONLY HAVE THREE TRANSCRIPTS

21   AND THEN SHE LISTED OFF A SERIES OF NAMES.

22             WELL, I'VE SEEN THE LIST.  WE'VE PRODUCED

23   11 TRANSCRIPTS, AND I DIDN'T CATCH THE FIRST ONE

24   SHE LISTED, BUT WE PRODUCED THE TRANSCRIPTS FOR

25   EVERY SINGLE OTHER PERSON SHE LISTED.

```
 1                SO AS TO --

 2                THE COURT:  BECAUSE THEY WERE A WITNESS

 3     IN THIS CASE, UNDER YOUR DEFINITION?

 4                MR. SABRI:  AND THERE WAS -- IN SOME

 5     CASES THERE WAS BROADER PRODUCTION THAN THAT.

 6        WE BELIEVE THE ORDER ONLY GOES TO WITNESSES

 7     BECAUSE THAT'S ALL SAMSUNG MOVED FOR, THAT'S ALL

 8     THE PARTIES HAD MET AND CONFERRED UPON.  BUT APPLE

 9     HAS ALSO PRODUCED, EVEN BEFORE THIS ORDER AND AFTER

10     THIS ORDER, OTHER RELEVANT TRANSCRIPTS IT HAD

11     IDENTIFIED.

12                IF IT IDENTIFIED A TRANSCRIPT WHERE THE

13     PATENTS WERE DISCUSSED BY ANYBODY, IT ABSOLUTELY

14     WOULD HAVE PRODUCED THE TRANSCRIPT IF RELEVANT,

15     AGAIN FROM NON '796.  THERE'S NO RISK OF ABUSE, OF

16     COURSE, IN OTHER PROCEEDINGS WHERE SAMSUNG WAS NOT

17     INVOLVED, THEREFORE THE PARTIES HAVE BOTH GENERALLY

18     PRODUCED THOSE SORTS OF TRANSCRIPTS.

19                '796 IS DIFFERENT, HAS THE SAME PARTY,

20     THE SAME COUNSEL, HAS THEM.  IN FACT, SAMSUNG

21     RECEIVES THE TRANSCRIPTS AT THE EXACT SAME TIME AS

22     APPLE.  IT'S ALMOST LIKE IF A THIRD PARTY WERE TO

23     PRODUCE DOCUMENTS TO BOTH SIDES AT THE SAME TIME

24     UNDER THE THIRD PARTY'S BATES LABEL, THEN ONE SIDE

25     SAYS WE WANT YOU TO PRODUCE THOSE TO US NOW UNDER A
```

1    DIFFERENT BATES LABEL.

2              IT'S ODD, SO WE WOULD ASK WHY.

3              AND HERE THE "WHY" IS SAMSUNG KNOWS IF WE

4    REPRODUCE THESE DOCUMENTS, THESE TRANSCRIPTS

5    RATHER, SAMSUNG ALREADY HAS -- SAMSUNG CAN THEN USE

6    ALL OF THAT DEPOSITION TESTIMONY, CIRCUMVENT THE

7    250-HOUR DEPOSITION LIMIT, CIRCUMVENT THE PARTIES'

8    AGREEMENT NOT TO USE THE TRANSCRIPT.

9              AND THAT'S NOT A FAIR APPROACH.  THAT'S

10   NOT SOMETHING THAT SHOULD BE DONE AT THE VERY, VERY

11   END OF DISCOVERY.

12             THE COURT:  ALL RIGHT.

13             LET'S FOCUS ON THE '796 FOR A MOMENT

14   SINCE YOU REDIRECTED MY ATTENTION THERE.

15             HYPOTHETICALLY, LET'S SAY SAMSUNG HAS A

16   TRANSCRIPT TODAY THAT SPEAKS TO THE VERY ISSUE THE

17   JURY IS GOING TO CONSIDER WHICH IS HOW TO APPLY THE

18   SCOPE OF THESE CLAIMS TO THE ACCUSED PRODUCTS,

19   OKAY.

20             YOUR VIEW IS BECAUSE YOU HAD A DEAL, THEY

21   SHOULDN'T BE ALLOWED TO USE IT TO PRESENT THAT

22   INFORMATION TO THE JURY?

23             MR. SABRI:  I DO NOT THINK SAMSUNG SHOULD

24   BE ALLOWED TO USE THAT.

25             THE TRANSCRIPT SAMSUNG POINTED TO, AS FAR

1    AS I'M AWARE, THE RELEVANT WITNESSES WERE ALSO

2    DEPOSED IN THE NORTHERN DISTRICT OF CALIFORNIA, AND

3    SAMSUNG HAD PLENTY OF OPPORTUNITY TO EXPLORE ANY

4    ISSUES IT WISHED WITHIN THE HOURS LIMIT.

5              SO FOR IT TO INSTEAD SHIFT THOSE ISSUES

6    INTO ANOTHER CASE WHERE IT KNEW THE PARTIES HAVE

7    AGREED NOT TO USE THOSE TRANSCRIPTS AND THEN SAY

8    NOW WE SHOULD BE ABLE TO USE IT BECAUSE WE THINK

9    IT'S RELEVANT, THE QUESTIONS COULD HAVE BEEN ASKED

10   HERE.  IF IT DOES COME UP LATER, IT WILL BE

11   ADDRESSED AT THAT TIME.

12             BUT IN ANY EVENT, WE DON'T BELIEVE THAT'S

13   AN ISSUE OF COURT'S ORDER IN DECEMBER.  WE DON'T

14   BELIEVE IT'S AN ISSUE OF PRODUCTION, AND THAT'S

15   WHAT SAMSUNG IS ASKING FOR.

16             THE COURT:  AND FORGIVE ME IF YOU'VE

17   ALREADY ANSWERED THIS QUESTION, WHY WAS MY ORDER

18   LIMITED ONLY TO WITNESSES THAT BORE A TECHNOLOGICAL

19   NEXUS, THE ISSUE IN DISPUTE IN THIS CASE?

20             FOR EXAMPLE, THE INDIVIDUAL MANAGER IN

21   THE FINANCE DEPARTMENT AT APPLE TESTIFIED IN ONE OF

22   THESE OTHER CASES, WHY SHOULDN'T THAT TRANSCRIPT BE

23   PRODUCED IN THIS CASE?

24             MR. SABRI:  WELL, REALLY, IT'S THAT THE

25   DEFINITION OF TECHNOLOGICAL NEXUS IS INEXTRICABLY

1    RELATED TO THE IDENTITY OF THE WITNESS.  SO --

2              THE COURT:  WAS THAT DEFINITION OFFERED

3    TO ME BACK IN DECEMBER WITH RESPECT TO WITNESSES OR

4    TO CASES?

5              MR. SABRI:  SO IT IS WITH RESPECT TO

6    CASES, YOUR HONOR.

7              HOWEVER, IN ORDER TO IDENTIFY WHETHER THE

8    CASE IS RELATED, WE DO THINK THE COURT'S DEFINITION

9    CLEARLY LOOKS TO THE WITNESS AT ISSUE.

10             THE COURT:  SO IF I APPLIED, AND I THINK

11   I DID, YOUR DEFINITION TO A GIVEN CASE AND THE CASE

12   SATISFIED THE TECHNOLOGICAL NEXUS REQUIREMENT,

13   OKAY, LET'S ASSUME THERE'S NO DISPUTE ABOUT THAT.

14   AND SOMEBODY IN THE FINANCE DEPARTMENT IN THAT CASE

15   TESTIFIED, IS THERE ANY LEGITIMATE REASON NOT TO

16   PRODUCE THAT TRANSCRIPT IN THIS CASE?

17             MR. SABRI:  YOUR HONOR, I DON'T THINK THE

18   PERSON THAT IS IN THE FINANCE DEPARTMENT WOULD MEET

19   THE DEFINITION.

20             THE COURT:  NO, NO, NO, YOU ARE RIGHT.

21             THEY MAY NOT MEET THE DEFINITION OF THE

22   TECHNOLOGICAL NEXUS IF THAT DEFINITION WERE

23   PROPERLY APPLIED ON WITNESS-BY-WITNESS.

24             WE ARE GOING DOWN FROM THE PRODUCT LINE

25   LEVEL TO THE SKU LEVEL.  IF WE ARE DOWN TO THE

142

1    LEVEL OF THE WITNESSES, OKAY, AND WE'VE ALREADY

2    ESTABLISHED THAT THE CASE BARES A TECHNOLOGICAL

3    NEXUS TO THIS CASE, WHAT'S APPLE'S BASIS OR

4    ARGUMENT THAT MY ORDER ALLOWED APPLE NOT TO PRODUCE

5    THAT TRANSCRIPT?

6              MR. SABRI:  YOUR HONOR, BECAUSE THE

7    QUESTION IS, DOES THE CASE HAVE A TECHNOLOGICAL

8    NEXUS WITH RESPECT TO THE INDIVIDUAL AT ISSUE?

9              THE COURT:  IS THAT THE QUESTION?  IS

10   THAT THE QUESTION I ANSWERED IN MY ORDER?  SKU

11   NUMBERS?

12             MR. SABRI:  WE BELIEVE IT IS, YOUR HONOR.

13             SO THE DEFINITION -- I'M GOING TO TURN TO

14   A FOOTNOTE, I KNOW YOU MADE THE COMMENT --

15             THE COURT:  I'M THE ONE WHO PUTS THE

16   FOOTNOTES IN, SO YOU ALL SHOULD FEEL FREE TO CITE

17   TO THEM.

18             MR. SABRI:  THE DEFINITION EXPLAINS WITH

19   RESPECT TO THE DESIGN PATENT INVENTORS, THEN THE

20   DEFINITION IS LISTED, WITH RESPECT TO THE UTILITY

21   PATENT INVENTORS, AND THEN THE DEFINITION IS

22   LISTED.

23             AND THE FOCUS HERE, AS YOUR HONOR NOTED,

24   WAS SCOPE OF PATENTS.  SO WHEN ONE LOOKS AT THE

25   CASE, ONE CAN'T ASK DOES THIS HAVE A NEXUS IN THE

1    ABSTRACT.  ONE MUST ASK, DOES THIS HAVE A NEXUS

2    WITH RESPECT TO THE WITNESSES AT ISSUE?

3            NOW APPLE DID GO WELL BEYOND INVENTORS.

4    APPLE PRODUCED PRODUCT DESIGN TRANSCRIPTS, PRODUCT

5    MARKETING TRANSCRIPTS.  APPLE -- THE OTHER POINT I

6    NOTED IS PRIOR TESTIMONY.  APPLE PRODUCED MORE THAN

7    JUST PRIOR TESTIMONY, APPLE PRODUCED SUBSEQUENT

8    TESTIMONY.

9            AND AS YOUR HONOR MAY HAVE NOTED IN THE

10   OPPOSITION, AFTER SAMSUNG ASKED APPLE TO REVISIT

11   ITS PRODUCTION OF TRANSCRIPTS, APPLE PRODUCED

12   TRANSCRIPTS THAT HAD COME ABOUT FROM DEPOSITIONS

13   AFTER JANUARY 15TH.

14           SO CLEARLY SUBSEQUENT TESTIMONY WELL

15   AFTER THE ORDER HAD ISSUED.

16           SO APPLE DID GO WELL BEYOND THIS.  BUT

17   THE ORDER ITSELF DOES, WE BELIEVE, CLEARLY REQUIRE

18   A DEFINITION OF NEXUS TO BE APPLIED IN TERMS OF THE

19   WITNESS AT ISSUE.

20           THE COURT:  SO LET'S ASSUME YOU GOT ME ON

21   THAT ONE AND MY ORDER WAS AT NARROWLY DRAFTED AS

22   YOU SUGGEST IT WAS.

23           PRACTICALLY, WHAT IS THE PROBLEM WITH

24   PRODUCING SOME CONTROLLER'S DEPOSITION TRANSCRIPT

25   FOR A DELAWARE LITIGATION IN THIS CASE SUBJECT TO A

```
 1      PROTECTIVE ORDER AND EVERYTHING ELSE?

 2              MR. SABRI:  SO FINANCIAL TESTIMONY,

 3      YOUR HONOR, NOT AN IMMENSE PRACTICAL PROBLEM,

 4      CORRECT.

 5              WE DON'T THINK THERE'S RELEVANCE, WE

 6      DON'T THINK THAT WOULD FALL WITHIN SAMSUNG'S MOTION

 7      WHICH WAS FOR SCOPE OF THE PATENTS.

 8              THE COURT:  NO, BUT YOU ALL BROUGHT A

 9      DISPUTE TO ME AND ASKED ME TO DRAW A LINE.

10              WHEN YOU DRAW A LINE, SOMETIMES THINGS

11      FALL ON ONE SIDE OR THE OTHER THAT COULD BE ARGUED

12      THE OTHER WAY.

13              THE PROBLEM I SEEM TO BE HAVING HERE IS

14      THAT WHENEVER I DRAW THE LINE YOU THEN ARGUE ABOUT

15      WHAT THE LINE MEANS, WHERE THE LINE IS, HOW WIDE OR

16      NARROW THE LINE IS -- AND I APOLOGIZE, I AM GOING

17      OFF A LITTLE QUICKLY.

18              IN THIS PARTICULAR INSTANCE I JUST DON'T

19      UNDERSTAND WHY IT ISN'T APPLE'S INTEREST TO ARGUE

20      AND FIGHT AND SPEND THE MONEY AND INDULGE THE TIME

21      AND EFFORT OF BOTH OF YOUR CLIENT AND THE COURT

22      OVER CERTAIN TRANSCRIPTS THAT REALLY DON'T SEEM TO

23      MAKE ALL THAT MUCH OF A DIFFERENCE TO YOUR

24      POSITION, DO THEY?  IF THEY ARE IRRELEVANT, WHAT DO

25      YOU CARE?
```

```
1            MR. SABRI:  YOUR HONOR, THE MEET AND

2     CONFER HISTORY, AND THE REAL FIGHT HERE WASN'T

3     CERTAINLY FINANCIALS, THAT EXPLAINS WHY APPLE

4     DIDN'T PRODUCE CERTAIN FINANCIAL TRANSCRIPTS.  IT'S

5     NOT THAT OUR WHOLE OPPOSITION IS ON THAT, IN FACT

6     THAT'S DEFINITELY A SIDE POINT.

7            THE COURT:  SO MR. BUCKLEY, FOR EXAMPLE,

8     THERE WAS NO REAL SERIOUS BEEF HERE WITH PRODUCING

9     HIS DEPO TRANSCRIPT, WAS THERE?

10           MR. SABRI:  THAT'S NOT A HUGE BEEF,

11    YOUR HONOR.

12           THE EXPLANATION IS WHY WE DON'T BELIEVE

13    IT FELL WITHIN THE CONFINES OF THIS ORDER, AND WE

14    EXPLAINED TO SAMSUNG WHY THEY HADN'T BEEN PRODUCED.

15           THE REAL FIGHT IS THE '796 LITIGATION

16    WHICH WE SAY IS NOT AN ISSUE OF PRODUCTION AND

17    SAMSUNG SHOULDN'T BE ALLOWED TO CIRCUMVENT WHAT

18    I'VE OUTLINED TO YOUR HONOR.

19           AND THEN OF COURSE APPLE WITNESSES, APPLE

20    DOESN'T BELIEVE IT SHOULD BE REQUIRED TO DIG UP

21    THROUGH ALL OF ITS EMPLOYEES, LOOK THROUGH ALL OF

22    THOSE POSSIBLY RELATED PROCEEDINGS AND PRODUCE ALL

23    OF THOSE TRANSCRIPTS.

24           THE COURT:  IF I WERE TO REQUEST COPIES

25    OF THE TRANSCRIPTS IN THE '796 AND TRANSCRIPTS OF
```

```
 1    DEPOSITIONS APPLE TOOK AND I WERE TO DIG THROUGH

 2    THOSE PAGES LINE BY LINE, ARE YOU TELLING ME I

 3    WOULDN'T FIND ANY INSTANCES IN WHICH APPLE

 4    QUESTIONED WHICH ARGUABLY FELL OUTSIDE OF THE SCOPE

 5    OF THE '796 WERE RELEVANT TO THIS CASE?

 6              MR. SABRI:  I DON'T KNOW, YOUR HONOR.

 7              WHAT I DO KNOW IS YOU WOULD SEE SAMSUNG

 8    QUESTIONING, RELATED TO THIS CASE AND ON NEARLY

 9    EVERY DESIGN TRANSCRIPT, AN OBJECTION ON THE RECORD

10    BY APPLE'S COUNSEL SAYING THIS IS IMPROPER.

11              THE COURT:  ALL RIGHT.

12              ANYTHING FURTHER, COUNSEL?

13              MR. SABRI:  IF I COULD BRIEFLY ADDRESS

14    THE DOCUMENT ISSUE, YOUR HONOR.

15              THIS IS THE MOTION TO COMPEL PORTION.

16    THE REAL PROBLEM HERE IS TIMING AND THE FACT THAT

17    SAMSUNG, AS NOTED IN THE BRIEFING, HAS NOT RECEIVED

18    FULL CONSENT FOR ANY OF THE PROCEEDINGS AT ISSUE.

19              SO THE FULL CHAIN HERE, AND I WILL BE

20    QUICK ABOUT THIS, SAMSUNG IN DECEMBER THE COURT

21    NOTED SAMSUNG WILL SEEK CONSENT FROM THIRD PARTIES.

22    THERE WAS NO MOTION TO COMPEL ON THE OTHER

23    PROCEEDINGS AT THE TIME FOR DOCUMENTS.

24              SAMSUNG THEN WAITED UNTIL FEBRUARY TO

25    BEGIN SEEKING CONSENT.  AND WHAT WE SAW IS
```

1    COMPLICATED REDACTION INSTRUCTIONS BEGINNING, NOT

2    ENDING, BEGINNING THREE WEEKS BEFORE THE CLOSE OF

3    DISCOVERY.

4           HTC PRESENTS AN EXAMPLE OF THE KIND OF

5    AWKWARD POSITION SAMSUNG SEEKS TO PUT APPLE INTO.

6           FIRST, THREE WEEKS BEFORE THE CLOSE OF

7    DISCOVERY SAMSUNG SAYS, HTC, WE DON'T KNOW THE

8    ANSWER YET.  SAMSUNG'S COUNSEL, MIND YOU, IS ALSO

9    COUNSEL FOR HTC AND GOOGLE AND MOTOROLA.

10          TWO WEEKS BEFORE THE CLOSE OF DISCOVERY

11   SAMSUNG SENDS A LETTER THAT SAYS, HTC WILL NOT

12   CONSENT, SO GO THROUGH AND MAKE SURE YOU'VE

13   REDACTED HTC INFORMATION AND PRODUCE THE DOCUMENTS.

14          THEN A WEEK LATER, A WEEK BEFORE THE

15   CLOSE OF DISCOVERY, SAMSUNG SAYS NEVERMIND, HTC

16   DOES CONSENT.

17          SO NOW ONE WEEK BEFORE THE CLOSE OF

18   DISCOVERY, GO THROUGH ALL THOSE MATERIALS, UN

19   REDACT ALL HTC INFORMATION, BUT YOU CAN'T JUST DO

20   THAT BECAUSE GOOGLE HAS LIMITED CONSENT.  GOOGLE

21   SAYS THIS CBI YOU CAN PRODUCE, THESE OTHER TYPES OF

22   CBI YOU CAN'T.

23          NOKIA SAYS THESE THREE SPECIFIC DOCUMENTS

24   YOU CAN PRODUCE, REDACT EVERYTHING ELSE.

25          SO WHAT SAMSUNG SEEKS TO FORCE APPLE TO

1    DO AT THE VERY END OF DISCOVERY IS GO THROUGH AND

2    ENSURE THAT FOR PARTIES THAT HAVE NO CLIENT

3    RELATIONSHIP TO APPLE'S COUNSEL, THAT HAVEN'T EVEN

4    GIVEN THESE COMPLICATED, IN SOME CASES OR LIMITED

5    IN OTHER CASES, REDACTION INSTRUCTIONS DIRECTLY TO

6    APPLE'S COUNSEL, APPLE MAKE SURE THAT YOU APPLY

7    THOSE ACCURATELY, BECAUSE IF YOU DON'T, WHAT

8    SAMSUNG DOESN'T OF COURSE EXPLORE BUT IS THE

9    LOGICAL NEXT STEP, APPLE IS GOING TO BE EXPOSED TO

10   A CLAIM FROM THOSE OTHER PARTIES.

11        THAT'S WHAT APPLE WOULD NOT AGREE TO.

12   APPLE SAID IF YOU GET CONSENTS, OF COURSE WE CAN

13   JUST GIVE YOU THE UN REDACTED DOCUMENTS, WE HAVE

14   NOTHING TO WORRY ABOUT.  THAT WAS IN FEBRUARY.

15        WHAT WE FIND IS IN MARCH WE ARE BEING

16   ASKED TO GO THROUGH VOLUMINOUS DOCUMENTS AND

17   DETERMINE WHAT WE CAN AND CAN'T PRODUCE.  THAT'S

18   TOO MUCH RISK, TOO MUCH BURDEN.  THE TIMING IS

19   UNFAIR.  WE WOULD URGE THE MOTION BE DENIED AS WELL

20   AS THE MOTION TO DISMISS.

21        THE COURT:  ALL RIGHT.

22        THANK YOU VERY MUCH.

23        MR. SABRI:  THANK YOU, YOUR HONOR.

24        MS. TUCHER:  IF I COULD ADD ONE QUICK

25   NOTE TO MR. SABRI'S VERY GOOD ARGUMENT HERE.

1            IF YOU ARE INCLINED TO ORDER APPLE TO

2     PRODUCE FOR EXAMPLE A SINGLE DEPOSITION OF

3     MR. BUCKLEY IN A PREVIOUS CASE, DEPOSITION

4     TRANSCRIPT, I WOULD URGE YOU NOT TO ADD THE

5     SUPPLEMENTAL RELIEF THAT MS. HUTNYAN ASKED FOR

6     INVOLVING DEPOSITIONS IN THIS CASE.

7            AND I WILL GIVE YOU, FOR EXAMPLE, ANOTHER

8     EXAMPLE FROM THE '796.  THEY WERE GRANTED IN THE

9     '796 AN OPPORTUNITY TO TAKE A DEPOSITION AFTER THE

10    CLOSE OF FACT DISCOVERY BECAUSE OF SOMETHING THAT

11    HAPPENED THERE.

12            AND IT WAS SUPPOSED TO BE ON ONE VERY

13    SPECIFIC TOPIC.  IT WAS AN INVENTOR OF THE TOUCH

14    HEURISTICS PATENT, AND THEY SAID THEY NEEDED IT TO

15    UNDERSTAND THE INVENTOR'S TESTIMONY ON THE TOUCH

16    HEURISTIC'S PATENT.  THEN THEY USED THE ENTIRE

17    DEPOSITION TIME THEY WERE GRANTED TO ASK QUESTIONS

18    ABOUT COMPLETELY UNRELATED ISSUES.

19            AND THERE'S NOTHING TO PREVENT THAT FROM

20    HAPPENING HERE BECAUSE WE'RE NOT GOING TO BE

21    INSTRUCTING WITNESSES TO ANSWER QUESTIONS POSED BY

22    SAMSUNG.

23            SO PLEASE DON'T AT THIS LATE STAGE GRANT

24    ADDITIONAL DEPOSITION TIME REGARDLESS IF YOU GRANT

25    TRANSCRIPTS.

```
 1                 THE COURT:  THANK YOU.

 2                 MS. HUTNYAN, ANY REBUTTAL?

 3                 MS. HUTNYAN:  THANK YOU, YOUR HONOR.

 4                 TO RESPOND TO ONE OF YOUR HONOR'S

 5      QUESTIONS, YES, APPLE DEFINITELY ASKED QUESTIONS

 6      THAT WOULD BE APPROPRIATE IN ND CAL AND ITC

 7      DEPOSITIONS AND VICE VERSA.  THEY HAVE AGREED TO

 8      CROSS USE EVERY WHICH WAY.

 9                 AND THE REASON WHY THEY'RE FIGHTING SO

10      HARD, TO REFERENCE ONE OF YOUR OTHER QUESTIONS AND

11      BECAUSE THIS STUFF IS REALLY, REALLY PROBATIVE, IT

12      CHANGES THE SCOPE OF THIS CASE.  AND THAT'S WHY WE

13      WENT AHEAD AND DID THIS IN CAMERA THING, AND I KNOW

14      YOU ARE NOT HAPPY WITH ME ABOUT THAT BUT IT'S

15      IMPORTANT TO THE RECORD --

16                 THE COURT:  I HAVE NO OTHER BEEF WITH

17      YOU, COUNSEL, I'M THINKING ABOUT THE BURDEN THAT IS

18      POSED TO MY STAFF AND THIS COURT.

19                 I'M HAPPY TO READ YOUR MATERIALS, I ENJOY

20      IT, BUT MY STAFF HAS LIMITS, AND THAT'S WHY THERE

21      WAS THIS ISSUE.

22                 MS. HUTNYAN:  I APPRECIATE THAT, YOUR

23      HONOR.

24                 AND IF I CAN CORRECT IT, IF YOU WILL

25      ALLOW ME TO FILE IT UNDER SEAL LIKE I SHOULD HAVE
```

1    BEEN ABLE TO, THEN I WILL FIX IT --

2              THE COURT:  I THINK WE CROSSED THAT.

3              MS. HUTNYAN:  COUNSEL ARGUED IT WAS NOT

4    FAIR TO ALLOWS US TO USE THE THINGS YOU REQUIRED TO

5    BE PRODUCED BACK IN DECEMBER BECAUSE IT'S NOW THE

6    END OF DISCOVERY.

7              IT'S ALL THE MORE FAIR THAT WE SHOULD

8    HAVE BEEN USING IT ALL ALONG.  WE SHOULD HAVE BEEN

9    USING IT ALL ALONG.

10             WHAT THEY ARE TRYING DO HERE IS TO

11   OBSCURE THE TRUTH.  APPLE LIKES TO FILE SUITS ALL

12   OVER THE WORLD AND SAY DIFFERENT THINGS IN

13   DIFFERENT PLACES AND THEN USE THE PROTECTIVE ORDERS

14   IN AN ABUSIVE WAY TO HIDE THEIR OWN CONFIDENTIAL

15   INFORMATION.

16             AND THAT'S WHAT THIGH ARE DOING HERE.

17   IT'S THE SAME DOCUMENTS, RIGHT?  THEY ARE ALLOWED

18   TO -- WE ALL AGREE THAT DOCUMENTS PRODUCED IN ONE

19   ACTION COULD BE USED IN THE OTHER ONE BOTH

20   DIRECTIONS.

21             SO HOW CAN WE -- HOW CAN WE IMAGINE THAT

22   THE TESTIMONY ISN'T OBVIOUSLY GOING TO BE RELEVANT

23   IN BOTH ACTIONS AS WELL?

24             THERE ARE PICTURES IN OUR BRIEF OF THE

25   DESIGNS THAT ARE AT ISSUE IN THE TWO CASES.  YOU

1    SEE THINGS THAT LOOK LIKE IPHONES.  THEY ARE

2    CLAIMING RECTANGULAR, ROUND-EDGED DESIGNS.

3           THOSE ARE -- THAT ISSUE IS IN BOTH CASES.

4    THE PRIOR ART, THE D889.

5           THE COURT:  SO WHY DID YOU AGREE TO THIS

6    LIMITATION IN THE PROTECTIVE ORDER?

7           MS. HUTNYAN:  WE DIDN'T AGREE TO THE A

8    LIMITATION, THAT'S ABSOLUTELY FALSE.

9           ALL WE SAID IS WE WERE NEGOTIATING THE

10   PROTECTIVE ORDER AND WE WERE TRYING TO FIND AREAS

11   WHERE WE COULD AGREE TO A PROVISION.

12          WE AGREE THAT DOCUMENTS COULD COME ACROSS

13   BOTH WAYS.  WITH DEPOSITIONS IT WAS US THAT WAS

14   CONCERNED ABOUT THE 250-HOUR LIMIT BEING ABUSED.

15          SO WE SAID IT'S THE BEGINNING OF THE

16   CASE, YOU KNOW WHAT, WE WILL JUST DO THAT ON AN

17   ISSUE-BY-ISSUE BASIS.  AND WE ARE GOING TO -- WE

18   NEED TO HAVE THE PROVISION IN THERE WHICH FOLLOWS

19   THE STATEMENT THAT TRANSCRIPTS DON'T GET

20   AUTOMATICALLY PRODUCED PURSUANT TO THE PROTECTIVE

21   ORDER, IT SAYS, BUT THE PARTIES CAN CERTAINLY SEEK

22   THOSE OTHER FORMS OF DISCOVERY THROUGH DOCUMENT

23   REQUESTS.

24          WE PUT THAT IN BECAUSE WE KNEW SOME WOULD

25   BE PERTINENT, BUT WE DIDN'T WANT PEOPLE GOING

```
1    AROUND THE RESTRICTIONS.

2              NOW THE DISCOVERY IS CLOSED IN BOTH THE

3    ACTIONS.  THIS WHOLE DISCUSSION ABOUT THE

4    250 HOURS, IT'S JUST HIDING EVIDENCE, YOUR HONOR.

5              OF COURSE, IF THERE'S RELEVANT EVIDENCE

6    AND TESTIMONY FROM INVENTORS ON THEIR DESIGNS AND

7    WHY THEY CAME UP WITH DIFFERENT THINGS, IF THEY

8    TOLD THAT STORY AND IT WAS DIFFERENT IN ITC, IT

9    SHOULD BE PRODUCED HERE.  AND IT'S NOT CHANGING

10   ANYTHING WITH RESPECT TO THE 250-HOUR LIMIT.

11             THE LIMIT, OF COURSE, WAS MEANT TO

12   BENEFIT WITNESSES SO THAT WITNESSES WOULD NOT HAVE

13   TO SPEND A WHOLE BUNCH MORE TIME, AND IT HAS

14   NOTHING TO DO WITH TIME TRYING TO PREVENT EVIDENCE

15   FROM COMING IN.

16             INDEED, MR. TESSLER WHO WE WERE TOLD WE

17   COULDN'T GET HIS DEPOSITION IN ND CAL BECAUSE WE

18   HAD ENOUGH LICENSING TESTIMONY IN '796.

19             ALSO IN TERMS OF THE TIMING AND HOW IT'S

20   NOT FAIR TO ALLOW US TO USE THESE THINGS THAT YOU

21   SAID LONG AGO WE SHOULD BE ABLE TO HAVE USED,

22   APPLE FILED A MOTION TO COMPEL AFTER THIS MOTION

23   AND IT DEALT WITH ITEMS FROM RELATED PROCEEDINGS.

24             AND YOU KNOW WHAT, WE AGREED TO THAT.  WE

25   ARE GOING TO BE PROBABLY STIPULATING TO ALL OF IT.
```

```
1              THE COURT:  I NOTICED YOU HAVEN'T FILED
2     THAT STIPULATION YET.
3              MS. MAROULIS:  WE HAVEN'T, BUT IT'S IN
4     THE WORKS, YOUR HONOR.
5              MS. HUTNYAN:  IT'S EMINENT.
6              THE COURT:  I LOOK FORWARD TO RECEIVING
7     IT.
8              GO ON.
9              MS. HUTNYAN:  BECAUSE IT'S RELEVANT,
10    OKAY.  AND IT WAS MUCH LATER.  AND THAT MOTION
11    COULD HAVE BEEN BROUGHT EARLIER, BUT IT WASN'T.
12             IN TERMS OF THE SCOPE OF THE ORDER WITH
13    RESPECT TO WITNESSES, AND I'M READING FROM APPLE'S
14    OPPOSITION BRIEF -- THIS IS ON PAGE 20 OF ITS
15    ORIGINAL OPPOSITION BRIEF FILED DECEMBER 15TH,
16    2011.
17             "MOREOVER APPLE'S REQUESTED RELIEF, WHICH
18    DEMANDS APPLE PRODUCE ALL PRIOR TESTIMONY OF APPLE
19    WITNESSES, IS BROADER THAN SAMSUNG'S DOCUMENT
20    REQUEST."
21             AT THE TIME, THE DISCUSSION WASN'T ABOUT
22    WITNESSES IN THIS CASE, THEY WERE COMPLAINING THAT
23    WE WERE ASKING FOR ALL WITNESSES.
24             AND SO --
25             THE COURT:  TO WHICH YOUR RESPONSE IS
```

155

1    YES.

2              MS. HUTNYAN:  WE ARE ASKING FOR ALL

3    RELEVANT WITNESSES, YOUR HONOR.

4              IF IT'S SOMETHING THAT -- YOU KNOW, IF

5    IT'S A TECHNOLOGICAL NEXUS, LET'S SAY IT HAS THREE

6    PATENTS IN IT AND TWO OF THEM ESTABLISH THE BASIS

7    FOR THE TECHNOLOGICAL NEXUS AND ONE HAS NOTHING TO

8    DO WITH THE ISSUES IN THIS CASE, WE'RE NOT SAYING

9    THAT NEEDS TO BE PRODUCED.  WE NEVER SAID THAT

10   NEEDED TO BE PRODUCED, BUT CERTAINLY ALL

11   RELEVANT TRANSCRIPTS SHOULD BE PRODUCED.  AND IF

12   THEY HAVE TECHNOLOGICAL NEXUS, OR YOU KNOW, OR IF

13   IT'S THE FINANCE GUY AND HE'S TALKING ABOUT IPHONE

14   REVENUES, THAT HAS MET THE STANDARD.

15             THIS WHOLE ARGUMENT ABOUT HOW THIS -- THE

16   BRIEFING WAS REALLY MUCH NARROWER, IT'S SIMPLY NOT

17   TRUE.  I'VE LOOKED BACK AT THE BRIEFING.

18             THE COURT:  I MUST TURN TO THE THIRD

19   MOTION BECAUSE OUR TIME REALLY IS RUNNING SHORT.

20             I JUST HAVE ONE LAST QUESTION FOR YOU,

21   WHICH IS THE THIRD PARTY CONSENT MECHANISM.

22             DID I MAKE YET ANOTHER MISTAKE IN

23   ASSUMING THAT PROCESS WILL GO RELATIVELY SMOOTHLY?

24   AS I SIT HERE AND LISTEN TO YOU ALL ARGUE THIS, I

25   THINK WHY ON EARTH WOULD ANY PARTY CONSENT TO

```
1    ANYTHING?
2              HOW COULD IT POSSIBLY BE IN THEIR
3    INTEREST TO ALLOW THEIR INFORMATION TO BE PRODUCED
4    INT HIS CASE?
5              SO WAS THAT JUST ANOTHER MISTAKE ON MY
6    PART?
7              MS. HUTNYAN:  WELL, IT WASN'T --
8              THE COURT:  I CAN TAKE IT, GO AHEAD.
9              MS. HUTNYAN:  IT HAS CREATED SOME ISSUES.
10   AND I CAN EXPLAIN THAT.
11             THERE'S NOTHING WRONG WITH THINKING THAT
12   THE THIRD PARTIES WILL GIVE CONSENT.  THEY IN FACT
13   DO ALL THE TIME.  AND WE GET THOSE REQUESTS FROM
14   OTHER LITIGANTS ALL THE TIME AND WE DEAL WITH IT
15   BECAUSE, YOU KNOW, WE ALL AVAIL OURSELVES OF THE
16   COURTS AND SO YOU DEAL WITH THESE AND YOU LOOK AT
17   IT.  AND IF IT'S SOMETHING THAT IS IN ANOTHER ONE
18   OF OUR ACTIONS OR WHATEVER, YOU MAKE THAT CALCULUS
19   AND YOU DETERMINE WHAT THOSE MATERIALS ARE AND IF
20   YOU NEED CONSENT OR NOT, AND IF NOT THERE'S MOTION
21   PRACTICE, SO IT WORKS ITSELF OUT.
22             BUT HERE WHAT APPLE HAS DONE IS THEY HAVE
23   TRIED TO TAKE ADVANTAGE OF THE FACT THAT WE
24   REPRESENT A NUMBER OF THESE OTHER ENTITIES.  AND
25   THAT CREATES A LEVEL OF COMPLEXITY BECAUSE AS
```

1    COUNSEL FOR SAMSUNG AND FOR SOME OF THE OTHER

2    ENTITIES, MY FIRM IS THEN PUT IN THE POSITION OF

3    TRYING TO NEGOTIATE --

4            THE COURT:  AGAINST YOURSELF.

5            MS. HUTNYAN:  -- AGAINST YOURSELF.

6            AND SO THAT'S WHY IT TAKES TIME TO DO.

7            NOW AS FAR AS WE WAITED, WE DIDN'T WAIT.

8    IN FACT, WE DIDN'T EVEN FIND OUT UNTIL FEBRUARY 6TH

9    THAT SOME OF THESE THIRD PARTY ENTITIES WERE AT

10   ISSUE, BECAUSE APPLE DIDN'T TELL US.  WE FIND OUT,

11   JUMPED ALL OVER IT AND GOT THE CONSENTS.

12           SO, YOU KNOW, THIS OTHER SORT OF

13   PROCEDURE THAT HAS BEEN SUGGESTED OF NOW

14   MR. VERHOEVEN CAN TAKE THE PILE ON HIS DESK ON ONE

15   SIDE AND FLIP IT OVER TO THE OTHER SIDE, YOU WOULD

16   BE VIOLATING THE PROTECTIVE ORDER IN DOING THAT

17   THEN WE WOULD BE IN THE POSITION OF A CONFLICT

18   SITUATION.

19           AND IT'S JUST ANOTHER OBSTACLE TO

20   SOMETHING THAT JUST NEEDS TO BE PRODUCED.  AND THE

21   IDEA THAT '796 IS NOT AN ISSUE OF PRODUCTION, IT

22   WAS WHEN YOU WROTE THE ORDER.  YOU SAID IT NEEDED

23   TO BE PRODUCED AND IT NEEDS TO BE PRODUCED.  IT

24   ABSOLUTELY IS PRODUCTION.  IT'S NOT ABOUT CROSS USE

25   OR ANYBODY SQUARING OFF OF CERTAIN KINDS OF

1    EVIDENCE, THAT DIDN'T HAPPEN.

2              THE COURT:  ALL RIGHT.

3              THANK YOU VERY MUCH.

4              LET'S TURN TO THE FINAL MOTION.  WHO WILL

5    BE ARGUING ON BEHALF OF SAMSUNG?

6              MS. JENKINS:  YOUR HONOR, I'M SARA

7    JENKINS.

8              THE COURT:  MS. JENKINS, GOOD AFTERNOON.

9              MS. JENKINS:  SO THE MOTION THAT I'M

10   PRESENTING TODAY IS ACTUALLY A VERY TARGETED

11   MOTION.  IT SET A VERY DISCREET SET OF DOCUMENTS.

12   AND THE DOCUMENTS WE'RE LOOKING FOR ARE DESIGN

13   PATENT APPLICATIONS THAT RELATE TO THE PRODUCTS

14   THAT APPLE HAS PUT AT ISSUE IN THIS CASE BY

15   CLAIMING THAT THOSE PRODUCTS ARE EMBODIMENTS OF THE

16   PATENTS AT ISSUE IN THIS CASE.

17             THE DOCUMENTS ARE HIGHLY RELEVANT TO

18   SAMSUNG'S DEFENSES AND THEY SHOULD BE PRODUCED

19   IMMEDIATELY.

20             APPLE HAS TOLD YOU US THEY HAVE SOME

21   CONFIDENTIALITY CONCERNS REGARDING THESE DOCUMENTS

22   BUT THOSE CAN BE COVERED BY THE PROTECTIVE ORDER.

23             AND APPLE HASN'T MADE ANY COLORABLE CLAIM

24   THAT THERE'S A BURDEN TO PRODUCE THESE DOCUMENTS SO

25   THEY SHOULD BE PRODUCED RIGHT AWAY.

                                                      159

1          I WOULD FIRST GO TO TALK ABOUT THE

2     RELEVANCE OF THESE DOCUMENTS IN THIS CASE.  AND

3     THEY ARE RELEVANT IN MANY DIFFERENT WAYS.

4          THE FIRST IS I WOULD TALK ABOUT THE SCOPE

5     OF THE PATENTS AT ISSUE IN THIS CASE.

6          SO --

7          THE COURT:  THIS IS THE SAME ISSUE WE

8     HAVE BEEN TALKING ABOUT ALL MORNING, RIGHT?

9          MS. JENKINS:  IT IS.  SO IF YOU WANT TO

10    CUT ME OFF, PLEASE GO AHEAD.

11         THE COURT:  NO, NO, I DON'T WANT TO CUT

12    YOU OFF, I WANT TO MAKE SURE I'M ON THE SAME PAGE

13    AS YOU.

14         MS. JENKINS:  FOR INSTANCE THE, '889

15    PATENT WHICH IS AT ISSUE IN THIS CASE, IT'S A

16    DESIGN PATENT FOR AN ELECTRONIC DEVICE.

17         APPLE CLAIMS THAT THIS PATENT IS EMBODIED

18    BY THE IPAD 2.  THIS PATENT WAS FILED BACK IN 2004.

19         IF YOUR HONOR WOULD LIKE I CAN PASS UP A

20    COPY OF IT SO YOU CAN TAKE A LOOK AT IT OR I CAN

21    JUST TELL YOU, BUT BASICALLY IS HAS IMAGES OF A

22    RECTANGLE ON THE SCREEN -- THIS IS THE DESIGN

23    PATENT.

24         SO OUR POINT IS IF APPLE HAS SUBSEQUENTLY

25    FILED DESIGN PATENT APPLICATIONS THAT WOULD BE

160

1    EMBODIED BY THE IPAD 2, THAT WOULD NECESSARILY

2    NARROW THE SCOPE OF THE D889 PATENT.  AND THAT IS

3    BECAUSE WHATEVER THEY CLAIM IN THE NEW PATENT --

4           THE COURT:  SO AS TO AVOID AN INVALIDITY

5    ISSUE OR OBVIOUSNESS TYPE ISSUE.

6           MS. JENKINS:  YES.

7           AND SO IF FOR INSTANCE THEY HAVE A NEW

8    PATENT APPLICATION THAT CLAIMS THAT THE BEZEL IS

9    SLIGHTLY WIDER, THEY WILL BE CLAIMING THIS IS A NEW

10   DESIGN WORTHY OF NEW PATENT PROTECTION THAT THE

11   BEZEL IS LARGER.

12          IF THAT'S TRUE, THEY SHOULDN'T BE ALLOWED

13   TO COME BACK INTO THIS COURT AND ARGUE, OH SAMSUNG

14   INFRINGES EVEN THOUGH THEIR BEZEL ISN'T THE SAME AS

15   WHAT'S HERE IN THE PATENT APPLICATION.

16          SO ANY FUTURE PATENT APPLICATIONS WOULD

17   DEFINITELY GO TO SCOPE.

18          IT'S ALSO VERY LIKELY THAT THE D889

19   PATENT WOULD BE LISTED AS PRIOR ART IN ANY

20   SUBSEQUENT PATENT APPLICATIONS THAT WERE SUBMITTED

21   TO THE PATENT OFFICE THAT ALSO EMBODIED THE IPAD 2.

22          AND IF SO WE WOULD EXPECT TO SEE THAT

23   THERE COULD BE REJECTIONS FROM THE PATENT OFFICE

24   BASED ON THAT REFERENCE AND THEN APPLE WOULD NEED

25   TO MAKE STATEMENTS REGARDING WHAT EXACTLY IS

1    COVERED BY THE '889 TO TRY TO OVER COME THAT

2    REFERENCE.

3              THE COURT:  OR NOT.  YOU DON'T KNOW THAT.

4              MS. JENKINS:  NO, WE DON'T KNOW BECAUSE

5    WE HAVEN'T SEEN THEM.

6              THE COURT:  LET ME ASK YOU THIS, COUNSEL.

7         IF I AGREE WITH YOU AND ORDER THIS

8    PRODUCTION AND IT TURNS OUT THAT APPLE'S POSITIONS

9    BEFORE THE PATENT AND TRADEMARK OFFICE ARE ENTIRELY

10   CONSISTENT WITH THE POSITIONS THEY ARE TAKING HERE

11   TODAY, WOULD SAMSUNG OBJECT TO THEIR INTRODUCTION

12   OR PRESENTATION TO THE JURY?

13             MS. JENKINS:  IF IT'S PROBATIVE IN SOME

14   OTHER WAY, I DON'T IMAGINE THAT WE WOULD.  I DON'T

15   KNOW HOW THAT WOULD BE PROBATIVE, BUT YES, I THINK

16   THAT WOULD BE FINE.

17             ANY NEW DESIGN PATENT APPLICATIONS ARE

18   ALSO HIGHLY RELEVANT TO THE ISSUES OF EMBODIMENT IN

19   THIS CASE WHICH IS GOING TO BE HOTLY CONTESTED FOR

20   THE D889 AND POSSIBLY OTHERS.

21             APPLE CLAIMS THE D889 IS EMBODIED BY THE

22   IPAD 2, SAMSUNG DOESN'T AGREE WITH THAT.

23             AND SO TO BE ABLE TO LOOK AT ANY

24   SUBSEQUENTLY FILED APPLICATIONS THAT THEY ALSO

25   CLAIM ARE EMBODIED BY THE '889 WOULD BE VERY USEFUL

1    FOR SAMSUNG TO TRY AND SHOW LISTEN THAT THIS ONE IS

2    NOT THE SAME, THIS NEW ONE LOOKS LIKE THE IPAD 2,

3    YOU CAN TELL IT'S THE IPAD 2, THE OLD ONE IT'S NOT

4    THE SAME THING, IT COMPLETELY DIFFERENT, IT DOESN'T

5    MEET THE TEST FOR EMBODIMENT.

6         THE COURT:  SO IF WE WERE TALKING ABOUT

7    ANY OLD KIND OF DOCUMENT, THE RELEVANCE HERE WOULD

8    NOT BE A SERIOUS QUESTION.  BUT WE ARE TALKING

9    ABOUT MATERIALS WHICH THE USPTO HAS DETERMINED ARE

10   BEST KEPT CONFIDENTIAL AT LEAST FOR A CERTAIN

11   PERIOD OF TIME.

12        HOW DO I SQUARE YOUR REQUEST WITH THE

13   ADMINISTRATIVE AGENCY'S DETERMINATION OF THE

14   CONFIDENTIALITY IN THE PROSECUTION PROCESS IS AN

15   IMPORTANT AND WORTHY CONSIDERATION?

16        MS. JENKINS:  WELL, THE RULES BY THE PTO

17   WERE NEVER MEANT TO GOVERN THE COURTS.  COURTS CAN

18   ORDER THESE ARE PRODUCED, THAT'S MADE CLEAR IN ALL

19   THE CASES WE CITED AS WELL AS THE CASES THAT APPLE

20   CITED ON THIS MOTION.

21        AND WHAT THE COURTS SAY IS YOU DO A

22   BALANCING TEST, THE PROBATIVENESS AND THE NECESSITY

23   OF THE ONE SIDE WHO WANTS THE DOCUMENTS IN GETTING

24   THEM VERSUS ANY CONFIDENTIALITY CONCERNS ON THE

25   OTHER SIDE, AND YOU MUST TAKE INTO ACCOUNT ANYTHING

```
1     THAT COULD BE DONE TO ALLEVIATE THOSE

2     CONFIDENTIALITY CONCERNS.

3              THE COURT:  BUT I DO HAVE TO GIVE SOME

4     CONSIDERATION, DON'T I, TO THE FACT THAT, AS

5     YOURSELF YOU DESCRIBED IT, THERE IS A BALANCE.

6              SO THE ADMINISTRATIVE AGENCY'S INTEREST

7     HERE IS WORTHY OF CONSIDERATION, IS IT NOT?  I HAVE

8     TO AT LEAST CONSIDER THAT, DON'T I?

9              MS. JENKINS:  I THINK IN THE BALANCING

10    TEST YOU NEED TO CONSIDER WHETHER OR NOT THERE'S A

11    TRUE CONFIDENTIALITY CONCERN.

12             AND HERE I WOULD SAY THAT IT'S VERY

13    SMALL, IT'S A NEGLIGIBLE --

14             THE COURT:  BECAUSE THE IPAD 2 IS ALREADY

15    A PRODUCT OUT ON THE MARKET, INDEED A RAPIDLY AGING

16    PRODUCT.

17             MS JENKINS:  YES.

18             AND THAT'S ONE REASON IS THAT FOR ALL OF

19    THE PATENT APPLICATIONS WE WOULD BE ASKING FOR --

20    WE ARE ASKING FOR SUBSEQUENT APPLICATIONS OF

21    SOMETHING THAT HAS ALREADY BEEN RELEASED TO MARKET.

22             THE COURT:  AND ON THAT TOPIC YOU

23    HIGHLIGHTED THE IPAD 2.

24             APPLE SEEMS TO THINK YOUR REQUESTS ARE

25    LIMITED TO THE IPAD 2; IS THAT CORRECT?
```

1           MS. JENKINS:  NO, THAT'S NOT CORRECT.

2           AND I THINK THEY TALK ABOUT ALL THE

3    OTHERS IN THEIR OPPOSITION AS WELL.  SO I THINK

4    THEY ACKNOWLEDGE WE ARE ASKING FOR THE OTHER

5    PRODUCTS WHICH WOULD BE -- IT'S THE PRODUCTS THEY

6    CLAIM ARE EMBODIED BY THE PATENTS AT ISSUE HERE.

7           SO IT'S DIFFERENT ITERATIONS OF THE

8    IPHONE, THE IPOD TOUCH AND THE IPAD.

9           AND JUST TO GO BACK TO THE ISSUE OF

10   CONFIDENTIALITY, ONE POINT IS YES, THESE HAVE

11   ALREADY BEEN RELEASED TO THE MARKET.  WITH THE

12   DESIGN PATENT, THE ONLY ISSUE IS THE EXTERNAL

13   APPEARANCE AND ORNAMENTATION OF THE PRODUCT.

14          AND SO WE'RE NOT LOOKING UNDER THE HOOD.

15   WE ARE NOT TRYING TO LOOK AT ANY TRADE SECRETS.  IF

16   THE IPAD 2 HAS ALREADY BEEN RELEASED, PRESUMABLY

17   I'LL GO BUY IT, LOOK AT IT AND SEE ANYTHING THAT

18   WOULD BE CONTAINED IN THE APPLICATION FOR THE

19   DESIGN PATENT.

20          THE COURT:  EXCEPT THAT YOU ALL ARE

21   SAYING THE IPAD 2 IS NOT AN EMBODIMENT OF THE '889,

22   RIGHT?

23          MS. JENKINS:  THAT'S TRUE.  BUT WE

24   ALREADY HAVE THE '889.

25          THE ADDITIONAL PATENT APPLICATIONS WE

1    WOULD BE ASKING FOR WOULD BE EMBODIMENTS OF THE

2    IPAD 2 THAT THEY ARE CLAIMING.

3              THE COURT:  AND I APPRECIATE THAT

4    CLARIFICATION.

5              SO THE DETERMINATION OF WHETHER APPLE IS

6    CLAIMING THE IPAD 2 EMBODIES THESE OTHER PENDING

7    APPLICATIONS, WHERE WOULD ONE GO OR HOW WOULD I

8    CRAFT AN ORDER TO ESTABLISH A CLEAR LINE ABOUT

9    THAT?

10             MS. JENKINS:  I THINK --

11             THE COURT:  IS IT SOMEWHERE IN THE

12   PROSECUTION HISTORY ITSELF WHERE ONE WOULD SEE A

13   REPRESENTATION FROM APPLE, FOR EXAMPLE, THAT THIS

14   PATENT APPLICATION IS EMBODIED IN THIS PRODUCT?

15             MS. JENKINS:  YOU MAY SEE THAT IN SOME.

16   I DON'T THINK YOU WOULD NECESSARILY SEE THAT IN

17   ALL.

18             I DON'T KNOW THAT THERE'S A CLEAR CUT

19   DEFINITION THAT YOU CAN PUT IN AN ORDER, BUT THESE

20   ARE THE KINDS OF DETERMINATIONS --

21             THE COURT:  PARTICULARLY, IF I PUT IT IN

22   A FOOTNOTE, RIGHT?

23             MS. JENKINS:  THESE ARE THE KINDS OF

24   DETERMINATIONS WE ARE MAKING AS WE REVIEW DOCUMENTS

25   OF WHETHER IT SHOULD BE PRODUCED OR NOT.

166

1          SOMEONE COULD LOOK AT IT, DOES IT LOOK

2     LIKE A TABLET COMPUTER, DOES IT LOOK LIKE THE IPAD

3     2, IF SO PRODUCE IT.

4          IF IT LOOKS LIKE SOME OTHER DESIGN THAT

5     APPLE IS WORKING ON THAT DOESN'T HAVE AN ISSUE IN

6     THIS CASE, NO NEED TO PRODUCE.

7          SO THE OTHER CONFIDENTIALITY CONCERNS

8     THAT APPLE HAS EXPRESSED CAN ALL BE COVERED BY THE

9     PROTECTIVE ORDER.

10          ALL OF THE RELEVANT PROVISIONS IN THE

11     PROTECTIVE ORDER THAT WOULD BE RELEVANT TO THIS

12     ISSUE, APPLE AGREED TO.  THE PARTIES CAME TO AN

13     AGREEMENT ON ALMOST ALL PROTECTIVE ORDER ISSUES.

14          THE COURT:  SO NONE OF YOUR PATENT

15     SECURITIES, NONE OF YOUR COMPETITIVE DECISION

16     MAKERS WOULD SEE THIS STUFF, IT WOULD BE PEOPLE ON

17     THE OUTSIDE.

18          MS. JENKINS:  MY FIRM DOESN'T DO ANY

19     PATENT PROSECUTION, BUT UNDER THE PROTECTIVE ORDER

20     NO, WE ARE BOUND NOT TO BE INVOLVED IN PATENT

21     PROSECUTION OR IN THE COMPETITIVE DECISION MAKING.

22          THE COURT:  ALL RIGHT.

23          THANK YOU VERY MUCH, COUNSEL.

24          MS. JENKINS:  THANK YOU.

25          MS. TUCHER:  GOOD AFTERNOON, YOUR HONOR.

167

1      THE COURT:  GOOD AFTERNOON.

2      MS. TUCHER:  I THINK THERE'S A BROAD

3  VERSION AND A NARROW VERSION OF SAMSUNG'S MOTION

4  AND I WANT TO START WITH THE BROAD VERSION.

5      THE NARROW VERSION IS THE IPAD 2 ISSUE AND I

6  THINK THAT MERITS SPECIAL DISCUSSION.

7      BUT AS WE UNDERSTAND THEIR MOTION, THEY

8  HAVE SOUGHT, THEY'VE NARROWED IT TO DESIGN PATENTS

9  IN THEIR BRIEFING, IF NOT IN THE ORIGINAL REQUEST.

10  AND THEY'VE NARROWED IT TO PRODUCTS THAT ARE

11  ALREADY RELEASED IN THEIR SUBSEQUENT BRIEFING IF

12  NOT IN THEIR ORIGINAL REQUEST.  AND THAT'S ACTUALLY

13  A VERY IMPORTANT RESTRICTION TO APPLE BECAUSE OF

14  THE SENSITIVITY ON PART OF BOTH SIDES ABOUT

15  PRODUCTS THAT ARE NOT RELEASED.

16      SO IF THERE'S ANY ORDER THAT COMES OUT OF

17  IT, IT'S IMPORTANT WE CAPTURE BOTH DESIGNS THAT ARE

18  PRODUCTS THAT ARE NOT RELEASED.

19      ALSO, APPLE HAS ALREADY PRODUCED ALL OF

20  ITS PATENTS AND PROSECUTION HISTORIES FOR ALL OF

21  ITS DESIGN PATENTS WHERE THE PATENT HAS ISSUED, SO

22  IT IS JUST ON --

23      THE COURT:  WE ARE TALKING ABOUT STUFF

24  THAT ISN'T PUBLICLY AVAILABLE.

25      MS. TUCHER:  THAT'S RIGHT.

1           AND AS YOUR HONOR NOTES AND APPRECIATES,

2    THAT'S NOT JUST THE STANDARD, RELEVANCY STANDARD OF

3    DISCOVERY, BUT RATHER A HEIGHTENED RELEVANCE

4    STANDARD.

5           THEY HAVE TO SHOW A CONVINCING NECESSITY

6    FOR THE MATERIALS AND BALANCE IT AGAINST THE HARM.

7           SO I WANT TO TALK ABOUT BOTH WHAT THEY

8    HAVE BEEN ABLE TO SHOW AND WHAT THE HARM IS.

9           AS FOR WHAT THEY HAVE BEEN ABLE TO SHOW,

10   I THINK THEY HAVE ARGUMENTS ON THE IPAD 2 WHICH WE

11   ARE GOING GET TO IN A FEW MINUTES.  BUT ON THE

12   OTHER PRODUCTS, WE HAVEN'T HEARD ANY REAL

13   EXPLANATION FOR WHAT THEY THINK THEY ARE GOING FIND

14   JUST BY SEEING WHAT IT IS APPLE IS SEEKING TO

15   PATENT.  EITHER BECAUSE THE PATENTS RELATE TO THE

16   PATENTS IN SUIT OR BECAUSE THE PATENTS RELATE TO

17   PRODUCTS THAT EMBODY THE PATENTS IN SUIT.

18           AND I ACTUALLY HAVE A BIG PROBLEM WITH

19   THIS SECOND PIECE ABOUT PATENTS THAT RELATE TO

20   PRODUCTS THAT EMBODY THE PATENTS IN SUIT.

21           IT'S NOT HARD TO FIND OUT WHICH PRODUCTS

22   EMBODY THE PATENTS IN SUIT AS APPLE HAS ENTERED

23   INTERROGATORIES ON THAT QUESTION.  BUT IT IS HARD

24   TO SAY WHICH RELEVANT, UNPUBLISHED PATENT

25   APPLICATIONS DOES THAT SOMEHOW LEAD US TO.

1          BECAUSE TO TAKE A CONCRETE EXAMPLE,

2     COUNSEL FOR SAMSUNG HELD UP THE PATENT FOR THE BODY

3     OF THE TABLET AND SAID, WE WANT THINGS THAT ARE

4     RELATED TO THIS.

5          WELL, WHAT IF -- THIS IS STRICTLY

6     HYPOTHETICAL, WHAT IF APPLE IS PURSUING A PATENT ON

7     SOMETHING RELATING TO THE GRAPHICALLY USER

8     INTERFACE ON THE IPAD 2?

9          YOU COULD SAY CERTAINLY THAT THAT IS A

10    PATENT RELATED TO THE PRODUCT THAT THE IPAD 2 THAT

11    WE SAID EMBODIES THE TABLET PATENT IN SUIT.

12          BUT CLEARLY THERE'S NO NEED FOR APPLE TO

13    PRODUCE THAT HYPOTHETICAL, UNPUBLISHED APPLICATION

14    IN ORDER FOR SAMSUNG TO -- IT HAS NO RELEVANCE TO

15    THE CASE.

16          SO THERE'S NO REASON FOR SAMSUNG TO --

17          THE COURT:  WHY WOULDN'T IT HAVE

18    RELEVANCE?  I DON'T FOLLOW IT.

19          IF THERE'S A PENDING APPLICATION WHICH

20    CLAIMS A DESIGN ON A PRODUCT WHICH APPLE HAS

21    CLEARLY INDICATED EMBODIES A PATENT IN SUIT IN THIS

22    CASE, HOW WOULD IT NOT BE RELEVANT TO THE ISSUES IN

23    DISPUTE?

24          MS. TUCHER:  BECAUSE THE DESIGN PATENT IS

25    NOT ON THE PRODUCT IN TOTAL, IT'S ON A SPECIFIC

                                                    170

1    ASPECT OF THE PRODUCT.

2             IT MIGHT BE THE WAY THE MAIN BODY OF THE

3    PRODUCT IS SHAPED.  IT MIGHT BE THE SHAPE OF THE

4    CONNECTION CORDS.  IT MIGHT BE THE --

5             THE COURT:  IT MIGHT BE THE GRAPHICAL

6    INTERFACE.

7             MS. TUCHER:  IT MIGHT BE THE PICTURE OF

8    THE GRAPHICAL USER INTERFACE.

9             SO MY POINT IS THE GRAPHICAL USER

10   INTERFACE ON THE IPAD 2 IS NOT RELATED TO THE

11   TABLET DESIGN.  THAT EXPLAINS WHY -- THAT SAMSUNG

12   HAS ARGUED IS THE REASON WHY THEY SHOULD BE ABLE TO

13   GET ALL UNPUBLISHED PATENT APPLICATIONS RELATING TO

14   THE IPAD 2.

15            THE COURT:  SO LET'S SAY YOU HAVE AN

16   UNPUBLISHED DESIGN PATENT APPLICATION ON THE SHAPE

17   AND COLOR OF THE CHARGING CORD, OKAY.

18            MS. TUCHER:  GOOD EXAMPLE.

19            THE COURT:  ALL RIGHT.

20            I GET YOUR POINT THAT THAT HAS VERY

21   LITTLE TO DO WITH ANY OF THE DESIGNS THAT ARE AT

22   ISSUE IN THIS CASE.

23            BUT LET'S TALK ABOUT THE DESIGNS THAT ARE

24   AT ISSUE IN THIS CASE.

25            MS. TUCHER:  OKAY.

                                                    171

1          THE COURT:  TO THE EXTENT THERE ARE

2    PENDING APPLICATIONS WHICH ADDRESS THE VERY SAME

3    DESIGN FEATURES THAT ARE BEING ASSERTED HERE, WHY

4    ISN'T THAT AT LEAST DISCOVERABLE?

5          MS. TUCHER:  IT HELPS WE ARE NARROWING IT

6    TO THE VERY SAME DESIGN FEATURES.

7          SO LET'S TAKE, AGAIN, A STRICTLY

8    HYPOTHETICAL PATENT APPLICATION THAT RELATES TO THE

9    TABLET DESIGNS IN SUIT HERE, IN THAT IT ALSO CLAIMS

10   SOME ASPECTS OF THE BODY OF THE IPAD 2.

11         HOW MANY ASPECTS OF THE BODY OF THE IPAD

12   2 DOES IT HAVE TO CLAIM IN ORDER FOR IT TO BE

13   RELATED?  DOES IT HAVE TO BE THE FACE, THE SIDES,

14   THE EDGES?  DOES IT HAVE BE TO ALL OF THEM?

15         THE COURT:  YOU MAKE AN EXCELLENT POINT.

16   SO WHY NOT ERR ON THE SIDE OF DISCLOSURE AND

17   TRANSPARENCY?

18         MS. TUCHER:  AND THE ANSWER TO THAT IS

19   THE HEIGHTENED RELEVANCE STANDARD THAT PERTAINS IN

20   THIS CASE BECAUSE OF THE FACT THAT THESE ARE

21   UNPUBLISHED PATENT APPLICATIONS.  THERE'S A

22   CONGRESSIONALLY MANDATED INTEREST IN ALL UN

23   PUBLISHED PATENT APPLICATIONS REMAINING

24   CONFIDENTIAL.  AND IT'S ACTUALLY PARTICULARLY

25   STRONG IN THE CONTEXT OF DESIGN PATENTS.

1              SO FOR EXAMPLE YOU MENTIONED THAT PATENT

2    APPLICATIONS REMAIN, AT LEAST FOR A TIME,

3    CONFIDENTIAL.  FOR DESIGN PATENTS, THAT TIME

4    DOESN'T END UNLESS AND UNTIL THE PATENT ISSUES.

5              SO ALL OF THE PATENTS WE ARE DISCUSSING

6    ARE PATENTS THAT, ACCORDING TO THE CONGRESSIONAL

7    MANDATE, ARE TO REMAIN CONFIDENTIAL.

8              THE COURT:  WHAT IS THE -- I MEAN THIS

9    SINCERELY, AND I'M EAGER TO HEAR SAMSUNG'S VIEW,

10    WHAT IS THE UNDERLYING PURPOSE OF THAT?  I'VE NEVER

11    UNDERSTOOD.

12              WHY DID CONGRESS, AS YOU PUT IT, I'M NOT

13    SURE IT WAS CONGRESS OR IF IT WAS THE

14    ADMINISTRATIVE AGENCY, BUT WHY DID WASHINGTON THINK

15    IT WAS SO IMPORTANT WE KEEP THE APPLICATIONS SECRET

16    FOR A PERIOD OF TIME?

17              MS. TUCHER:  SO IT'S IMPORTANT FOR PATENT

18    APPLICATIONS TO BE SECRET FOR A PERIOD OF TIME

19    BECAUSE ONLY WHEN THE APPLICATION PROCESS HAS

20    CONCLUDED AND THE PARTY SAYS YES, PLEASE ISSUE THAT

21    PATENT OR NO I'VE DECIDED NOT TO HAVE YOU ISSUE THE

22    PATENT, IF THAT'S THE PATENT YOU ARE GOING TO GIVE

23    ME, ONLY AT THAT TIME DOES A PARTY MAKE THE CHOICE

24    WHETHER TO DISCLOSE WHAT ARE ITS MOST CONFIDENTIAL

25    TRADE SECRETS TO THE WORLD BY TAKING A PATENT OR

```
 1    NOT TO BY DECIDING TO ABANDON A PATENT APPLICATION.
 2             THE COURT:  SO EX-ANTE I CAN UNDERSTAND
 3    THAT INTEREST IN PROTECTING THE TRADE SECRETS OF A
 4    COMPANY AS IT MAKES COMMERCIAL DECISIONS ABOUT WHAT
 5    OR WHAT NOT TO PURSUE IN THE MARKET.  BUT ONCE THE
 6    PRODUCT IS OUT THERE, WHAT INTEREST IS THERE IN
 7    PROTECTING THAT INFORMATION IN THE CONTEXT OF A
 8    HOTLY CONTESTED PATENT DISPUTE?
 9             MS. TUCHER:  IT'S CERTAINLY TRUE THAT THE
10    INTEREST IS STRONGER WHEN THE PRODUCT IS NOT OUT
11    THERE.  BUT EVEN WHEN THE PRODUCT HAS BEEN RELEASED
12    THERE'S AN INTEREST AND THERE'S A FAIRNESS ISSUE.
13             SO TO TAKE THE EXAMPLE OF THE IPAD 2
14    WHICH SAMSUNG RAISED, THEY SURMISE THAT APPLE HAS
15    ONE OR MORE PATENTS ON SOME ASPECTS OF THE IPAD 2.
16    BUT THEY DON'T KNOW WHAT ASPECTS.  THEY DON'T KNOW
17    WHETHER CERTAIN PIECES OF THE BODY STYLE, CERTAIN
18    OTHER THINGS, CERTAIN COLORS, CERTAIN SHAPES --
19             THE COURT:  THE CHARGING CORD, THEY DON'T
20    KNOW.
21             MS. TUCHER:  EXACTLY.
22             THEY DON'T KNOW AND THEY DON'T HAVE A
23    RIGHT TO KNOW BECAUSE WE DON'T KNOW THAT ABOUT
24    THEIR PRODUCTS AND BECAUSE COMPANIES THAT ARE NOT
25    BEFORE YOU IN THIS LITIGATION DON'T KNOW.
```

1          THE COURT:  WHAT ABOUT THE PROTECTIVE

2     ORDER, DOESN'T THAT SOLVE YOUR PROBLEM?

3          MS. TUCHER:  IT DOESN'T.

4          AND THE REASON THAT IT DOESN'T IS BECAUSE

5     SAMSUNG'S COUNSEL HAS BEEN CLEAR WITH US THAT THEY

6     ARE ADVISING SAMSUNG ON DESIGN-AROUNDS FOR THE

7     PATENTS IN SUIT.

8          THE COURT:  THEY ARE TRYING TO AVOID

9     STEPPING ON YOUR PROPERTY, ISN'T THAT WHAT YOU

10    WANT?

11         MS. TUCHER:  WE DO WISH --

12         THE COURT:  WHAT BETTER WAY TO ACCOMPLISH

13    THAT OBJECTIVE THAN TO PRODUCE THIS UNDER THE TERMS

14    OF THE PROTECTIVE ORDER.

15         MS. TUCHER:  THE REASON IT'S NOT

16    APPROPRIATE TO DO THAT HERE IS BECAUSE WE ARE

17    TALKING ABOUT THINGS THAT AREN'T YET APPLE'S

18    PROPERTY.  WE ARE TALKING ABOUT PATENTS THAT

19    HAVEN'T ISSUED.

20         AS FOR PATENTS THAT HAVE ISSUED, WE WANT

21    THEM TO KNOW ABOUT THEM, WE WANT THEM TO --

22         THE COURT:  IF WE ARE TALKING ABOUT

23    PRODUCTS IN THE MARKET, PENDING DESIGN APPLICATIONS

24    FOR PRODUCTS IN THE MARKET, WHAT POSSIBLE -- AND WE

25    ARE TALKING ABOUT FEATURES WHICH ARE AT ISSUE IN

1    THIS CASE, DON'T YOU WANT THEM TO AVOID YOUR

2    PROPERTY, OR ARE YOU REALLY TRYING TO GET THEM TO

3    STEP ON THE PROPERTY THEN HIT THEM?

4              MS. TUCHER:  NO, WE DON'T HAVE TO DO

5    THAT.  WE HAVE A TRADE SECRET CASE.  THEY KNOW WHAT

6    OUR PROPERTY IS, THEY KNOW THEY HAVE TO STAY AWAY

7    FROM IT.

8              THIS IS A SEPARATE QUESTION.  THIS IS

9    WHETHER THEY DESERVE TO KNOW AS TO THE DESIGN

10   RIGHT, WHAT APPLE IN THE FUTURE HOPES AND INTENDS

11   TO GET AS PROPERTY.

12             AND I CAN'T THINK OF ANY REASON WHY

13   SAMSUNG GETS TO KNOW THAT ABOUT APPLE'S

14   INTELLECTUAL PROPERTY TO BE WHEN APPLE DOESN'T GET

15   TO KNOW THAT ABOUT SAMSUNG.

16             THE COURT:  BECAUSE YOU ARE SUING THEM ON

17   THE PATENTS AND THE JURY IS GOING TO HAVE TO

18   STRUGGLE WITH THE VERY COMPLICATED QUESTION OF HOW

19   APPROPRIATELY TO UNDERSTAND THE SCOPE OF THE

20   CLAIMS.

21             SO WHY NOT -- AND BY THE WAY, THIS

22   PROTECTIVE ORDER IS GOING TO BE FASCINATING TO SEE

23   HOW YOU ALL MANAGE THIS AT TRIAL, BUT THAT'S A

24   SEPARATE ISSUE FOR ANOTHER DAY.

25             SO WHY NOT SAY THE RIGHT BALANCE TO

176

```
 1    STRIKE HERE IS, FINE, LET'S TALK ABOUT PRODUCTS IN

 2    THE MARKET.  FINE, LET'S TALK ABOUT FEATURES THAT

 3    ARE ACCUSED IN THIS CASE.  BUT AS TO THOSE PRODUCTS

 4    AND THOSE FEATURES, WHY SHOULDN'T SAMSUNG OUTSIDE

 5    COUNSEL BE ABLE TO UNDERSTAND HOW ITS CLIENT CAN

 6    AVOID YOUR PROPERTY LINE?

 7              MS. TUCHER:  SO IT HELPS US THAT YOU ARE

 8    NARROWING IT, BUT IT'S STILL IMPROPER BECAUSE IT'S

 9    NOT RECIPROCAL AS TO THESE TWO PARTIES OR AS TO ANY

10    OTHER PARTIES.

11              THE COURT:  I WOULDN'T HAVE A PARTICULAR

12    BEEF IF YOU HAD SERVED A REQUEST AND THEY WERE

13    OBJECTING AND YOU MOVED IN ALL OF THAT.

14              BUT I HAVE A NARROW DISPUTE HERE AND I'M

15    TRYING TO UNDERSTAND WHAT THE PROBLEM IS IN

16    ALLOWING THEM ON AN OUTSIDE COUNSEL ONLY BASIS TO

17    UNDERSTAND WHAT POSITIONS YOU'VE TAKEN WHEN THE

18    ONLY JUSTIFICATION I'VE HEARD IS WELL, THAT MIGHT

19    ALLOW THEM TO AVOID INFRINGEMENT.

20              MS. TUCHER:  WELL, THE PROBLEM IS THIS IS

21    A CASE WHERE THE PRODUCTS HAVE, WHERE SAMSUNG

22    COUNSEL SAYS THE PRODUCTS HAVE A THE LIFE TIME OF

23    CABBAGE.

24              THIS IS A CASE WHERE TIME REALLY MATTERS.

25    SO YOU ARE TALKING ABOUT GIVING THEM NOTICE NOW OF
```

1    PATENTS THAT AREN'T GOING TO ISSUE UNTIL LATER.  SO

2    WHY SHOULD SAMSUNG HAVE THAT NOTICE WHEN THE MAKERS

3    OF THE --

4            THE COURT:  BECAUSE YOU HAVEN'T SUED

5    THEM, AT LEAST TO MY KNOWLEDGE.

6            MS. TUCHER:  WHY IS IT THAT HAVING

7    INFRINGED OUR EXISTING INTELLECTUAL PROPERTY GIVES

8    SAMSUNG AN ADVANTAGE IN UNDERSTANDING THE SCOPE OF

9    OUR FUTURE INTELLECTUAL PROPERTY?

10           THE COURT:  BECAUSE THEY HAVE TO DEFEND

11   THEMSELVES IN THE CASE AND THE JURY HAS TO WRESTLE

12   WITH THAT.

13           MR. SABRI:  WELL THEN LET'S TURN TO

14   WHETHER THERE'S ANY ADVANTAGE IN THEIR ATTEMPT TO

15   DEFEND THEMSELVES IN THE CASE FROM THE EVIDENCE

16   THAT THEY CLAIM TO SEEK.

17           COUNSEL SAID THAT IT'S IMPORTANT TO KNOW

18   WHAT PATENTS APPLE HAS SOUGHT BECAUSE THAT WOULD

19   NARROW THE SCOPE OF THE OLDER PATENTS.

20           DESIGN PATENTS DON'T WORK THAT WAY.  YOU

21   CAN'T NARROW THE SCOPE OF A 2004 PATENT BY APPLYING

22   FOR A PATENT FIVE YEARS LATER -- I GUESS IT'S EIGHT

23   YEARS LATER.

24           SO BECAUSE WE SUED ON AN OLDER PATENT AND

25   THEY ARE SEEKING DISCOVERY OF THE NEWER PATENTS,

178

1    THERE'S NOTHING USEFUL IN WHAT THEY HAVEN'T SEEN

2    YET BECAUSE WE CAN'T MODIFY THE SCOPE OF THE PATENT

3    IN SUIT, BY WHAT WE SAY LATER.

4            THE COURT:  I UNDERSTAND YOU MIGHT NOT BE

5    ABLE TO DISCLAIM, IN THE CLASSIC SENSE OF PATENT

6    PROSECUTION THE SCOPE OF THE SUBSEQUENT

7    APPLICATION, BUT SURELY THE POSITIONS YOU TAKE ON

8    WHAT THAT ISSUE CLAIM MEANS ARE MATERIAL TO A COURT

9    CONSTRUCTION OR PAST CONSTRUCTION, I GET THAT, OF

10   THAT CLAIM, BUT ALSO TO A JURY'S RESPONSIBILITY TO

11   UNDERSTAND WHETHER THIS CLAIM MAPS ON THIS ACCUSED

12   PRODUCT.

13           ISN'T THAT AT LEAST MATERIAL?

14           MS. TUCHER:  WELL, ONE ACCUSED PRODUCT,

15   LET'S TAKE FOR EXAMPLE THE IPAD 2, CAN BOTH EMBODY

16   THE 2004 DESIGN AND EMBODY A HYPOTHETICAL FUTURE,

17   LET'S CALL IT IPAD 2 BODY SHAPE PATENT WHICH SEEMS

18   TO BE THE PROTOTYPE OF WHAT THEY HOPE TO FIND.

19           THE COURT:  SURE.  I AGREE WITH YOU THAT

20   THOSE TWO EMBODIMENTS ARE NOT NECESSARILY

21   CONSISTENT WITH ONE ANOTHER.  INDEED, THAT'S

22   PERHAPS WHY APPLE CONTINUES TO SEEK DESIGN

23   PROTECTION ON PRODUCTS THAT HAVE ALREADY BEEN

24   RELEASED IN THE MARKET.

25           BUT I DON'T QUITE UNDERSTAND HOW IT COULD

1   NOT BE DISCOVERABLE TO UNDERSTAND WHAT POSITIONS

2   APPLE IS TAKING ON THE SAME FEATURES IN RELEASED

3   PRODUCTS.

4          MS. TUCHER:  WELL, THE ONLY POSITION WE

5   TAKE IS THAT WE FILE FOR AN APPLICATION.

6          THE COURT:  RIGHT.

7          MS. TUCHER:  WE DON'T IN THAT APPLICATION

8   COMMENT ON THE PRIOR ART.

9          THERE'S A STATEMENT IN SAMSUNG'S BRIEFING

10  SUGGESTING OTHERWISE.  BUT YOU'RE NOT --

11         THE COURT:  BUT YOU ARE REPRESENTING AND

12  QUITE STRICTLY THAT THERE'S NOVELTY IN THIS

13  APPLICATION, RIGHT?

14         MS. TUCHER:  THAT THERE'S A GOOD FAITH

15  BASIS FOR BELIEVING THERE'S NOVELTY.

16         BUT AGAIN, TO TAKE OUR IPAD 2 EXAMPLE,

17  JUST BECAUSE THERE'S A GOOD FAITH BASIS FOR

18  BELIEVING THAT THERE'S NOVELTY IN A HYPOTHETICAL

19  PATENT THAT LOOKS JUST LIKE THE IPAD 2 BODY STYLE,

20  THAT DOESN'T MEAN ANYTHING ABOUT WHETHER THE 2004

21  DESIGN IS VALID OR INVALID.  BECAUSE THE SCOPE OF

22  THE PROTECTION OF THE 2004 DESIGN IS DETERMINED

23  BASED ON WHAT WAS THE STATE OF THE ART IN 2004.

24         AND NOTHING THAT HAPPENS IN 2011 AND 2012

25  CAN CHANGE WHAT WAS THE STATE OF THE ART IN 2004.

1          AND EVEN IF APPLE DECIDES IN --

2          THE COURT:  I UNDERSTAND THAT.  WHAT WE

3     ARE TALKING ABOUT THOUGH IS A PRODUCT RELEASED IN

4     2011 OR 2012, WHY WOULDN'T APPLE'S POSITIONS IN

5     SUBSEQUENT PROSECUTIONS ILLUMINATE ITS BELIEF OR

6     ITS POSITION AS TO THE PROPER SCOPE OF THAT CLAIM

7     NECESSARILY BY FILING THAT LATER APPLICATION YOU'RE

8     TELLING THE PATENT OFFICE, AREN'T YOU, THAT THIS

9     APPLICATION IS PATENTABLY DISTINCT OVER THE EARLIER

10    PATENT.

11         SO WHY WOULDN'T THAT INFORM OR

12    ILLUMINATE, PARTICULARLY THE DISCOVERY STAGE,

13    FORGET ABOUT TRIAL, WE ARE AT DISCOVERY AT THIS

14    POINT.

15         WHY WOULDN'T THAT ILLUMINATE THE QUESTION

16    OF HOW BROADLY TO UNDERSTAND THIS CLAIM WHEN YOU

17    ARE APPLYING TO SAMSUNG'S PRODUCT?

18         MS. TUCHER:  WITH DESIGN PATENTS IT CAN

19    BE LIKE A VENN DIAGRAM WHERE THE 2004 PATENT HAS A

20    SCOPE THAT IS BROAD ENOUGH TO INCLUDE SOMETHING

21    THAT IS LATER APPLIED FOR IN A NARROWER PATENT.

22         THAT'S WHY I'M TALKING ABOUT A VENN

23    DIAGRAM JUST IN THE SENSE THAT IT'S A SUBSET OF

24    WHAT IT COULD BE THEORETICALLY OF WHAT APPLE

25    APPLIES FOR TO IN 2011 OR 2012 IS A SUBSET OF

1     WHAT'S COVERED AND CLAIMED BY THE OLDER PATENT.

2               THE COURT:  AND I WILL PROFESS MY

3     IGNORANCE ON DESIGN PATENT PROSECUTION, IT'S NOT

4     SOMETHING I HAD ANY EXPERIENCE WITH.

5               IN PROSECUTING A DESIGN PATENT

6     APPLICATION, ARE THERE NOT OFFICE ACTIONS AND

7     POSITIONS TAKEN DURING THE PROSECUTION ABOUT THE

8     SCOPE OF THE CLAIM?

9               MS. TUCHER:  THERE ARE -- THERE IS SOME

10    GIVE AND TAKE SOMETIMES WITH THE APPLICANT AND THE

11    OFFICE.

12              THE COURT:  ISN'T THAT GIVE AND TAKE WHAT

13    WE ARE TALKING ABOUT HERE?

14              MS. TUCHER:  WELL, WHAT I WANT TO SAY IS

15    THAT IT IS QUITE DIFFERENT FROM UTILITY PATENTS,

16    AND THERE'S NO REQUIREMENT FOR EXPLAINING HOW YOU

17    DIFFER FROM A PARTICULAR PIECE OF PRIOR ART.

18              THE COURT:  SO ONE RIGHT NOW COULD ARGUE

19    IN RESPONSE TO IN INITIAL OFFICE ACTION OR

20    REJECTING THE CLAIM AS NOT BEING PATENTABLY

21    DISTINCT OVER PRIOR ART?

22              MS. TUCHER:  I THINK THE ANSWER IS

23    PROBABLY ONE COULD.

24              THE COURT:  SO IF ONE COULD, WHY NOT

25    PRODUCE THE MATERIAL AND SEE WHERE THE CHIPS FALL?

1            MS. TUCHER:  WELL, I GUESS THE ANSWER TO

2      THAT IS THE HEIGHTENED RELEVANCE STANDARD.

3            IF YOU WERE TO SAY THAT THE REASON THAT

4      THIS IS RELEVANT IS NOT BECAUSE OF THE APPLICATION

5      ITSELF, WHICH IS WHAT I UNDERSTOOD SAMSUNG TO BE

6      ARGUING, BUT BECAUSE OF SOME STATEMENT IN THE

7      PROSECUTION HISTORY SPECIFICALLY DISTINGUISHING THE

8      UNPUBLISHED APPLICATION FROM ONE OF THE PATENTS IN

9      SUIT.

10           THAT IS A MUCH, MUCH NARROWER ORDER AND

11     THAT WOULD REQUIRE APPLE TO REVIEW ITS PROSECUTION

12     HISTORIES OF PENDING PATENTS FOR PRODUCTS THAT HAVE

13     ALREADY BEEN RELEASED IN THE MARKET AND BLAH, BLAH,

14     BLAH, AND TO SEE IF THERE'S ANY SUCH DISTINCTIONS

15     DRAWN.

16           BUT THAT'S A VERY DIFFERENT ORDER FROM

17     WHAT WE ARE IN HERE FOR.

18           THE COURT:  WELL, IT SEEMS TO ME THAT AT

19     LEAST AS TO THAT NARROW PIECE, HOWEVER YOU

20     CHARACTERIZE THE HEIGHTENED RELEVANCY STANDARD,

21     APPLE'S POSITION ON WHAT ITS EARLIER PATENTS COVER

22     ON A GIVEN FEATURE ARE AT LEAST MATERIAL TO THE

23     QUESTION OF WHETHER THAT SAME PATENT READS ON OR

24     APPLIES TO THE PRODUCTS AT ISSUE IN THIS CASE,

25     RIGHT?

1          MS. TUCHER:  I'LL GRANT YOU THAT AS TO

2     THE PRODUCTS -- AS TO ANY EXPLICIT COMMENTS ABOUT

3     THE PATENTS THAT ARE AT ISSUE IN THIS CASE.

4          ALL THE ARGUMENT SO FAR HAS BEEN THE MERE FACT

5     THAT WE APPLIED FOR A PATENT THAT EMBODIES A

6     PRODUCT THAT'S AT ISSUE -- THAT ALSO EMBODIES A

7     PATENT AT ISSUE IN THIS CASE SOMEHOW MAKES THE

8     ENTIRE PATENT APPLICATION AND PROSECUTION HISTORY

9     DISCOVERABLE, AND THAT SEEMS TO ME HUGELY

10    OVERBROAD.

11          THE COURT:  THANK YOU VERY MUCH COUNSEL.

12          ANY REBUTTAL?

13          MS. JENKINS:  YES, YOUR HONOR.

14          I WILL MAKE THIS SHORT.  BUT JUST TO

15    TOUCH ON A FEW POINTS THAT SHE MADE, WE WERE MAKING

16    AN EXAMPLE OUT OF THE IPAD 2 AND THE D889.  THOSE

17    SAME ARGUMENTS WOULD APPLY IF APPLE HAD SUBSEQUENT

18    PATENT APPLICATIONS FOR THE DESIGN OF THE IPHONE 4

19    OR ANY OF THE OTHER IPHONES, AND THAT IT WOULD THEN

20    NECESSARILY NARROW THE SCOPE OF THE PREVIOUS

21    APPLIED FOR PATENT.

22          THE COURT:  A SUBSEQUENT DESIGN PATENT ON

23    THE CHARGING COURT, RIGHT?

24          MS. JENKINS:  NO, THAT'S NOT AT ISSUE

25    HERE.

                                                      184

```
 1            SOME OF THE OTHER ISSUES YOU BRING UP AS

 2     HYPOTHETICALS COULD BE ISSUES IN THIS CASE, SO IT'S

 3     POSSIBLE SOMETHING LIKE THAT COULD BE.

 4            ALSO, THE D'889 PATENT THEY ARE SAYING

 5     JUST THE BODY FORM OF IT.  IF YOU LOOK AT IT IT

 6     ACTUALLY SHOWS ALL DIFFERENT VIEWS, THE FRONT,

 7     BACK, ALL FOUR SIDES, THE SCREEN ARE ALL CLAIMED ON

 8     THE D889.

 9            SO IT WOULD BE HARD TO IMAGINE THAT A

10     SUBSEQUENT PATENT APPLICATION THAT ACTUALLY

11     EMBODIED THE IPAD 2 AND NOT JUST THE CHARGING CORD

12     WOULD NOT BE RELEVANT TO THE D889 PATENT.

13            AND I THINK IT'S -- THERE'S A SIMILAR

14     THEME WITH THIS MOTION THAN THE LAST ONE YOU HEARD

15     FROM US IS THAT APPLE IS BASICALLY SAYING THEY CAN

16     SAY ONE THING TO ONE PARTY BUT IT SHOULD NEVER COME

17     BACK THAT THEY HAVE TO ANSWER TO IT IN ANOTHER

18     ACTION.

19            HERE THEY WANT TO BE ABLE TO HEAR

20     SOMETHING FROM THE PATENT OFFICE IN ORDER TO GET

21     BROAD PATENTS IN A VERY LARGE PATENT PORTFOLIO.

22     THEY DON'T WANT HAVE TO DEFEND THAT IN THIS ACTION

23     AND TELL THE JURY OH, EVEN THOUGH WE SAID THIS IS A

24     NEW, NOVEL, ORIGINAL, NONOBVIOUS, NEW SUBSEQUENT

25     PATENT APPLICATION, YOU SHOULDN'T BE ABLE TO USE
```

1    THAT IN COURT TO TRY TO CONSTRUE THE CLAIM OF THE

2    OLDER PATENT.

3              THE COURT:  IS IT FAIR FOR ME TO

4    UNDERSTAND, COUNSEL, THAT WHAT YOU ARE REALLY

5    FOCUSED ON -- I KNOW I UNDERSTAND YOU WANT A BUNCH

6    OF STUFF, THEY ARE SAYING YOU GO GET NONE OF IT,

7    YOU ALL ARE ASKING ME TO DRAW ANOTHER LINE.

8              IS IT FAIR FOR ME TO UNDERSTAND YOU ARE

9    PARTICULARLY FOCUSED ON THE REPRESENTATIONS APPLE

10   HAS MADE DURING THE PROSECUTION OF THESE SUBSEQUENT

11   PATENTS?  THAT IS THE MOST PROBATIVE, THE MOST

12   MATERIAL VEIN OF INFORMATION YOU SEEK?

13             MS. JENKINS:  YES.

14             IF YOU'RE REFERRING TO THE PATENT

15   APPLICATION THEN THE PROSECUTION HISTORY, YES,

16   THAT'S WHAT WE ARE SEEKING.

17             THE COURT:  ALL RIGHT.

18             THANK YOU VERY MUCH.

19             ALL RIGHT, THE MOTIONS ARE SUBMITTED.  I

20   APPRECIATE THE ARGUMENTS TODAY.  YOU WILL HAVE AN

21   ORDER FROM ME AS SOON AS I CAN GET ONE OUT.

22             WHILE WE ARE ON THE RECORD, I JUST WANT

23   TO THANK COUNSEL IN PARTICULAR FOR ACCEPTING MY

24   CONDITION FOR SPECIALLY SETTING THIS HEARING.  I DO

25   FEEL IT'S VALUABLE.

1              THANK YOU.

2              (WHEREUPON, THE PROCEEDINGS IN THIS

3    MATTER WERE CONCLUDED.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                   **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22            _____
              SUMMER A. FISHER, CSR, CRR
23            CERTIFICATE NUMBER 13185

24

25

188

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25