# Exhibit 30
# (Submitted Under Seal)

Highly Confidential - Attorneys' Eyes Only

Page 1

1               UNITED STATES DISTRICT COURT

2      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4    APPLE INC., a California    )

     corporation,                )

5              Plaintiff,        )

                                 )

6    vs.                         ) Case No. 11-cv-01846-LHK

                                 )

7    SAMSUNG ELECTRONICS CO.,    )

     LTD., a Korean business     )

8    entity; SAMSUNG ELECTRONICS )

     AMERICA, INC., a New York   )

9    corporation; SAMSUNG        )

     TELECOMMUNICATIONS AMERICA, )

10   LLC, a Delaware limited     )

     liability company,          )

11             Defendants.       )

     _____)

12

13

14          H I G H L Y   C O N F I D E N T I A L

15          A T T O R N E Y S'   E Y E S   O N L Y

16

17       VIDEOTAPED DEPOSITION OF STEPHEN GRAY

18              Palo Alto, California

19              Friday, May, 4, 2012

20

21

22   BY:  HEIDI BELTON, CSR, RPR, CRR, CCRR

23   CSR LICENSE NO. 12885

24   JOB NO. 49273

25

Highly Confidential - Attorneys' Eyes Only

| | Page 2 | | Page 3 |
|---|---|---|---|
| 1 | May, 5, 2012 | 1 | A P P E A R A N C E S : |
| 2 | 8:57 a.m. | 2 | |
| 3 | | 3 | FOR THE PLAINTIFF APPLE INC.: |
| 4 | Videotaped deposition of STEPHEN GRAY, held | 4 | MORRISON & FOERSTER |
| 5 | at the offices of Morrison & Foerster, LLP, | 5 | 425 Market Street |
| 6 | 755 Page Mill Road, Palo Alto, California, | 6 | San Francisco, California 94105 |
| 7 | before Heidi Belton, CSR, RPR, CRR, CCRR. | 7 | By: Andrew E. Monach, Esq. |
| 8 | CSR License No. 12885 | 8 | Mark E. Melahn, Esq. |
| 9 | | 9 | |
| 10 | | 10 | |
| 11 | | 11 | |
| 12 | | 12 | |
| 13 | | 13 | FOR DEFENDANT: SAMSUNG ELECTRONICS CO., LTD. |
| 14 | | 14 | QUINN EMANUEL URQUHART & SULLIVAN |
| 15 | | 15 | 555 Twin Dolphin Drive |
| 16 | | 16 | Redwood Shores, California 94065 |
| 17 | | 17 | By: Victoria F. Maroulis, Esq. |
| 18 | | 18 | |
| 19 | | 19 | |
| 20 | | 20 | and |
| 21 | | 21 | QUINN EMANUEL URQUHART & SULLIVAN |
| 22 | | 22 | 51 Madison Avenue |
| 23 | | 23 | New York, New York 10010 |
| 24 | | 24 | By: Guy Eddon, Esq. |
| 25 | | 25 | |

| | Page 4 | | Page 5 |
|---|---|---|---|
| 1 | A P P E A R A N C E S   C O N T ' D : | 1 | PALO ALTO, CALIFORNIA |
| 2 | and | 2 | FRIDAY, MAY 4, 2012 |
| 3 | QUINN EMANUEL URQUHART & SULLIVAN | 3 | 8:57 a.m. |
| 4 | 865 S. Figueroa Street | 4 | (Whereupon Exhibit 1 marked |
| 5 | Los Angeles, California 90017 | 5 | for identification.) |
| 6 | By: Patrick Schmidt, Esq. | 6 | THE VIDEOGRAPHER: This is the start of tape |
| 7 | | 7 | labeled number 1 of the videotaped deposition of Steven |
| 8 | | 8 | Gray. In the matter Apple, Incorporated versus Samsung |
| 9 | | 9 | Electronics Company, Limited, et al., in the |
| 10 | Also Present: Shawn Phillips, videographer | 10 | United States District Court, Northern District of      08:56:57 |
| 11 | | 11 | California, San Jose Division. Number 12-CV-00630-LHK |
| 12 | | 12 | [sic]. |
| 13 | | 13 | This deposition is being held at 755 Page Mill |
| 14 | | 14 | Road, Palo Alto, California on May 4, 2012 at |
| 15 | | 15 | approximately 8:57 a.m.                  08:57:19 |
| 16 | | 16 | My name is Sean Phillips. I'm the legal video |
| 17 | | 17 | specialist from TSG Reporting, Incorporated, |
| 18 | | 18 | headquartered at 747 Third Avenue, New York, New York. |
| 19 | | 19 | The court reporter is Heidi Belton, in association with |
| 20 | | 20 | TSG Reporting.                  08:57:38 |
| 21 | | 21 | Will counsel please introduce yourself. |
| 22 | | 22 | MR. MONACH: Andrew Monach, representing |
| 23 | | 23 | Apple. |
| 24 | | 24 | MR. MELAHN: Mark Melahn, representing Apple. |
| 25 | | 25 | MS. MAROULIS: Victoria Maroulis, counsel for     08:57:51 |



Page 38

1 asking me the general question regarding anything that I   09:56:52
2 might disagree with in the writeup generally?
3 BY MR. MONACH:
4   Q.  I'm asking you, first of all, is the writeup
5 in regular type, not bold type, that starts, "On the   09:57:01
6 Galaxy S II user input is processed" -- do you see that?
7 And then there's a description of Samsung code.  Do you
8 see that?
9   A.  That's on page 3?
10   Q.  Yes, sir.                        09:57:17
11   A.  Okay.
12   Q.  Is there anything factually incorrect with
13 that paragraph in this exhibit of Dr. Singh's?
14   A.  Thanks for the clarification.
15     MS. MAROULIS:  Objection; vague.      09:57:29
16     THE WITNESS:  Thank you for the clarification.
17 I'll just focus on that.  Thank you.
18

Page 39

17 BY MR. MONACH:
18   Q.  Did you look at Android 2.2 and 2.1 code in
19 preparing your non-infringement rebuttal report?
20   A.  My best recollection is that in some cases I   10:00:17
21 looked at Android 2.2 and 2.1 code in some cases.  I'm
22 not sure that I looked at it in each and every case.
23 But I remember looking -- I do recall looking at it in
24 some.
25   Q.  As you sit here today for your deposition, do   10:00:32

Page 40

1 you have any opinion that there are errors or that it's   10:00:38
2 incorrect to describe the code cited in Android 2.1 and
3 2.2 as analogous to this Galaxy S II code?
4     MS. MAROULIS:  Objection; vague.  Assumes
5 facts.                                10:00:55
6     THE WITNESS:  Just as a sort of a low-level
7 matter, I've always been curious about what is meant by
8 "analogous code."  But what I -- so I'm not really sure
9 what that term means.  If I -- if I looked at the code,
10 I probably could come to a pretty quick understanding of   10:01:15
11 whether or not the -- the functions or the methods that
12 have been identified in -- in the identified code are
13 the same in Android 2.1 and 2.2.  So I don't -- I don't
14 know how to answer that question directly.  But I
15 don't -- I think I could tell pretty quickly.      10:01:39
16 BY MR. MONACH:
17   Q.  Okay.  You don't recall whether you, in fact,
18 looked at the code to see whether you thought it was
19 analogous or performed the same function?
20   A.  Are you suggesting that analogous means   10:01:51
21 performed the same function?
22   Q.  I don't --
23   A.  Okay.
24   Q.  Did you look at it for any purpose, that
25 vibrant and captivate code, to determine how similar it   10:01:59

Page 41

1 was or wasn't to the specific citations about the   10:02:02
2 Galaxy S II Android 2.3 code?
3     MS. MAROULIS:  Objection; vague.
4     THE WITNESS:  So I'm -- sitting here today
5 don't remember specifically if I did this.  But,   10:02:17
6 however, having said that, this would be something that
7 I probably would have looked at.  But I don't remember
8 looking specifically at those two.  So I just would have
9 to look at them again.
10
15 BY MR. MONACH:                        10:02:39
16   Q.  Is it fair to say that if you felt they were
17 different in Android 2.2 and 2.1, you would have made
18 mention of that in your rebuttal report?
19     MS. MAROULIS:  Objection; incomplete
20 hypothetical.  Assumes facts.              10:02:49
21     THE WITNESS:  I'm uncertain that I would have
22 identified every difference between them in my -- in my
23 expert report.  I'm uncertain that I would have done
24 that.  Again, if there had been -- I think the answer is
25 that if there had been something -- sort of      10:03:14

Highly Confidential - Attorneys' Eyes Only



Page 42

1  course-grained error of some kind, I probably would have    10:03:20
2  identified it.  But I couldn't sit here today telling
3  you that I have analyzed it in sufficient detail to
4  ensure that there is no deviations that wouldn't give me
5  pause or make me reconsider the differences.  So I just    10:03:34
6  can't make that claim.
7  BY MR. MONACH:

24     Q.  Is that a factually accurate description of
25  the Android Samsung Galaxy S II code?                     10:04:32

Page 43

Page 44

Page 45

Highly Confidential - Attorneys' Eyes Only



Page 46

Highly Confidential - Attorneys' Eyes Only

## Page 50

████████████████████  ████
████████████████████████
███████████████████
█████████████████████  █████
██  ██

7          MS. MAROULIS:  Counsel, we've been going on
8   for about an hour and 15 minutes.  Do you want to take a
9   five-minute break?
10          MR. MONACH:  Sure.                    10:16:00
11          THE VIDEOGRAPHER:  The time is 10:16 a.m.  And
12   we are off the record.  I'm going to mark this as the
13   end of disk 1 in the deposition of Stephen Gray.
14      (Recess taken from 10:16 a.m. to 10:26 a.m.)
15          THE VIDEOGRAPHER:  This marks the beginning of   10:27:04
16   disk 2 in the deposition of Stephen Gray.  The time is
17   10:27 a.m.  And we are back on the record.
18   BY MR. MONACH:
19      Q.  Mr. Gray, does Exhibit 1, your invalidity
20   report, reflect all of the opinions you intend to offer   10:27:19
21   or may offer in this case on the validity of the -- or
22   invalidity of the '915 and '163 patents?
23      A.  My invalidity report was -- my invalidity
24   report reflects -- reflected opinions that I held at the
25   time that I wrote the invalidity report.  There may be   10:27:52

## Page 51

1   other things that I'm asked to consider or other        10:27:58
2   opinions may emerge as facts emerge or deposition
3   testimony occurs, which could alter those opinions.  So
4   I don't know if I'll have any other opinions or not.
5      Q.  Are there -- as you sit here today, given the   10:28:17
6   facts you're aware of, any deposition testimony that
7   you're aware of, does Exhibit 1, your invalidity report,
8   reflect all the opinions that you're aware of at this
9   time that you may offer on invalidity of the '915 and
10   '163?                                       10:28:37
11      A.  I believe, sitting here today, I'm unaware of
12   any other opinions that I have that aren't reflected in
13   the -- in my rebuttal report.  I might mention that --
14      Q.  I'm sorry.  I asked you about your opening
15   report.                                     10:28:58
16      A.  I'm sorry.  My opening report, my invalidity
17   report.
18      Q.  Okay.
19      A.  One thing I would mention, though, and I
20   should have mentioned this when you first introduced the   10:29:04
21   exhibit, in reading through my report over the last
22   couple of days, I've identified an error or two that I
23   need to clean up when you get a chance.  Doesn't have to
24   be now.
25      Q.  Why don't we do that now.                10:29:19

## Page 52

1      A.  Okay.                                10:29:20
2      Q.  What errors have you identified in reviewing
3   your invalidity report?
4      A.  There is one error having to do with the --
5   with the date of a prior art reference.  I can't        10:29:35
6   remember -- I'm not recollecting the date, but it was --
7   it was incorrectly identified as January 20 -- let me
8   see if I can find it.
9          So on paragraph 305, page 86 of my invalidity
10   report, Exhibit 1, the date -- a date -- it says, "On   10:30:54
11   January 20, 2011, the examiner issued a notice of
12   allowability."  That date's incorrect.  I have to go
13   back to the file.  Oh, this is with regard to -- oh,
14   this is with regard to the '163.  And the date's wrong.
15   I'm not sure what that date is.  I'd have to go back to   10:31:31
16   the -- excuse me.  I'd have to go back to the file
17   history to determine what that date should have been.
18   But the first date, the January 20th, 2011 date, is
19   incorrect.
20      Q.  Are you aware, as you sit here today, of any   10:31:46
21   other errors in your invalidity report?
22      A.  Yes.  There's another error in the
23   indefiniteness section pertaining to the '915 patent,
24   paragraph 266 on page 75.  There's a sentence -- the
25   paragraph 266 doesn't make sense.  Something --        10:32:29

## Page 53

1   something happened in the drafting or something.  But it   10:32:37
2   doesn't -- it doesn't make sense.
3          The first sentence reads -- well, let's start
4   with the second sentence.  The second sentence says,
5   "Each of the independent claims recites 'the event       10:32:48
6   object invokes a...operation.'  In my 35 years of
7   systems experience, I have never observed a system where
8   an event object invoked a method."
9          That's not true.  That's the inaccuracy.  It
10   goes on to say that -- it goes on to make some claim     10:33:10
11   about it.
12          Then there is a reference to a Platzer
13   deposition that -- the sentence leading into that says,
14   "Additionally, one of the inventors of the '915 patent,
15   Mr. Platzer, agreed with me at his deposition."  And     10:33:30
16   there's a quote.  And it doesn't follow the rest of the
17   paragraph in 266.  I saw this over the last couple of
18   days when I was rereading my report.  And it -- it is
19   inaccurate.
20      Q.  What should it say?                    10:33:49
21      A.  Well, I don't -- I'm not sure -- I don't
22   have -- I'm not sure exactly what it -- but what I think
23   it should have said is that -- something to the effect
24   that "In my 35 years of experience, I've never observed
25   a system where an event object invoked a method that     10:34:05

Highly Confidential - Attorneys' Eyes Only

Page 202

1  separate structured electronic documents distinct from a   16:28:19
2  structured electronic document in which they're
3  contained?
4        MS. MAROULIS:  Objection; vague.  Please feel
5  free to refer to Exhibit 15.                16:28:30
6        THE WITNESS:  Let me take a look.
7        So what I'm -- two things.  I looked for -- in
8  the specification -- any evidence to suggest that the
9  boxes of content could not be a structured electronic
10  document.  And I find nothing in here that suggests that   16:32:31
11  the boxes of content couldn't be structured electronic
12  documents on their own.  But further, on column 19 --
13  yeah.  On column 19, line -- starting at line 17, it's a
14  discussion about a render tree, and about the nodes on
15  the render tree, and about the various kinds of nodes   16:33:05
16  that -- that the render tree could contain in it.  The
17  render tree in the specification is used as a mechanism
18  for identifying the boxes of content and being able to
19  traverse to get to the boxes of content.
20        So let me put this into the record.  "In some   16:33:26
21  embodiments, the structured electronic document has an
22  associated render tree with the plurality of nodes and
23  determining the first box at the location of the first
24  gesture comprises:  Traversing down the render tree to
25  determine a first node in the plurality of nodes that   16:33:43

Page 203

1  corresponds to the detected location of the first   16:33:46
2  gesture, traversing up the render tree from the first
3  node to the closest parent node that contains a logical
4  grouping of content and identifying content
5  corresponding to the closest parent node as the first   16:34:00
6  box.  In some embodiments, the logical grouping of
7  content comprises a paragraph, an image, a plug-in
8  object, or a table.  In some embodiments the closest
9  parent node is replaced inline, a block, an inline block
10  or an inline table."                16:34:19
11        In those embodiments that we're talking about,
12  this logical grouping containing a paragraph, an image,
13  a plug-in, or a table, at least all of those could be --
14  can be -- could clearly be structured electronic
15  documents.  There's no preclusion about that.   16:34:35
16        Paragraphs have structure.  Images can be
17  configured.  A JPEG image, for example, has structure.
18  A plug-in object -- I'm not sure what they mean by a
19  "plug-in object," but certainly tables have structure.
20  So all -- in all of those instances, the render tree   16:34:55
21  nodes enable structured electronic documents to be part
22  of the -- the -- the system.
23        So to answer your question, there is support
24  for it and nothing to preclude it.
25  BY MR. MONACH:                16:35:09

Page 204

1     Q.  In your Appendix 7, depo Exhibit 17, on page 4   16:35:10
2  you show the -- a transition from the world view of 36
3  tiles to what's called a "zone view" of four tiles,
4  right?
5     A.  That's correct.                16:35:35
6     Q.  Are you asserting that that change in the
7  display is -- meets the enlarging, translating, and
8  substantially centering a first-box limitation as
9  recited in Claim 50 of the '163 patent?
10     A.  The -- with respect to claim 2B, there is a --   16:36:04
11  a first box which is selected from the world view that
12  then is -- is enlarged and substantially centered.  The
13  world view is a collection of four boxes surrounding
14  what they call the "blue dot."
15     Q.  Do you mean -- I'm sorry.  Did you mean zone   16:36:28
16  view?
17     A.  Sorry.  Did I say --
18     Q.  You said "world view."
19     A.  Did I say "world view" too many times?  The
20  world view is the 6-by-6 matrix.  The selection of one   16:36:37
21  of the -- one of the boxes within a four-box matrix
22  surrounding the blue dot in the world view creates a
23  zone view.  The zone view is -- what gets enlarged and
24  substantially centered.  So the -- this is a -- this is
25  a box within the world view which becomes centered and   16:37:01

Page 205

1  enlarged in the zone view.                16:37:05
2     Q.  Does -- would you agree that Claim 50
3  requires -- I'm looking at the -- sort of the middle of
4  the claim near line 32 -- that what is required is
5  enlarging and translating the structured electronic   16:37:22
6  document so that the first box is substantially
7  centered?
8        MS. MAROULIS:  Objection; vague.  Calls for
9  legal conclusion.
10        THE WITNESS:  I think you have -- with the   16:37:37
11  proviso there maybe alterations in the language.  But I
12  think you've -- you've correctly read the limitation
13  starting at line 31.
14        MS. MAROULIS:  We've been going for over an
15  hour.                16:37:53
16        THE WITNESS:  Would you like to take a break
17  soon?
18        MR. MONACH:  Let me just finish up with this.
19        MS. MAROULIS:  Okay.
20  BY MR. MONACH:                16:37:57
21     Q.  Is it your opinion that in the transition from
22  the world view to the zone view shown on page 4 of your
23  Appendix 7, that what has been enlarged and translated
24  is the same structured electronic document that is shown
25  in the world view?                16:38:30

Highly Confidential - Attorneys' Eyes Only

Page 206

1    A.  No.  The document which is being shown in the    16:38:32
2  zone view on page 4 is a box of content from the
3  structured electronic document shown in the world view.
4    Q.  Which is -- so the thing shown on the right is
5  a different structured electronic document than the    16:39:00
6  structured electronic document shown in the world view,
7  right?
8       MS. MAROULIS:  Objection; vague.
9       THE WITNESS:  I thought I said something
10  different, so let me try again.    16:39:16
11       The selection of -- of the box shown in --
12  okay.  In the world view on the left, there is
13  identified in red a first box.  Selection of that box by
14  a first gesture enlarges and centers that box of content
15  in the zone view shown on the right.    16:39:38
16  BY MR. MONACH:
17    Q.  But there is no enlarging and translating of
18  the structured electronic document shown on the left;
19  rather, the distinct -- in your view -- structured
20  electronic documents in those four tiles are enlarged    16:39:57
21  and centered?
22       MS. MAROULIS:  Objection; vague.  Assumes
23  facts.
24  BY MR. MONACH:
25    Q.  Is that right?    16:40:06

Page 207

1    A.  I believe that the enlarged and centered zone    16:40:11
2  view is a box of content found on the world view.  It is
3  comprised of individual tiles or structured electronic
4  documents on their own.  But it is from -- it is derived
5  or created from an enlargement of the world view    16:40:29
6  structured electronic document into the zone view.
7  BY MR. MONACH:
8    Q.  So the world view electronic document, the
9  36-tile document is not enlarged as an entity and then
10  translated to center those four boxes, right?    16:40:48
11       MS. MAROULIS:  Objection; vague.
12       THE WITNESS:  I don't have any reason to
13  believe that -- well, let me say it slightly
14  differently.  I'm not sure, sitting here today, exactly
15  what the -- the software performed with respect to    16:41:15
16  enlarging and centering.  But given what the functions
17  are that are intended for LaunchTile, there is no reason
18  for me, sitting here today, to believe that the
19  structured electronic document that is -- that is the
20  world view is not enlarged and the portion of it that    16:41:34
21  was selected in that box of content simply enlarged and
22  translated into the zone view.
23  BY MR. MONACH:
24    Q.  Let's look at the content from these four
25  boxes that are shown in the center of the world view and    16:41:46

Page 208

1  then are shown in -- on the right in the zone view.    16:41:53
2       On one -- for example, the upper right-hand
3  tile inside the red line you've drawn looks like an
4  e-mail icon.  Do you see that?
5    A.  In the -- yes.  In -- in the first -- if    16:42:10
6  you're referring to the -- well, go ahead.  Which one
7  are we pointing at?
8    Q.  Right.  So in the box that you've drawn in the
9  world view and labeled the first box, in the upper
10  right-hand corner, there is a tile that looks like it    16:42:26
11  has an e-mail icon.  Do you see that?
12    A.  I do.
13    Q.  Right.  And that is the -- that's a tile for
14  the e-mail application in LaunchTile, right?
15    A.  I believe that -- yes, I believe that -- well,    16:42:44
16  it is a -- it is an icon derived from the e-mail
17  structured electronic document that underlies it.  But
18  yes, it is a --
19    Q.  And then if you look on the right in the zone
20  view, you don't see a blowup or an enlargement of that    16:42:55
21  e-mail.  What you see is a different level of detail.
22  You see a listing of individual e-mails within the
23  e-mail file.  There's different content, correct?
24       MS. MAROULIS:  Objection; misstates the
25  document.    16:43:15

Page 209

1       THE WITNESS:  I don't -- I would not say that    16:43:20
2  it is different.  Well, I'd say that both the upper
3  right -- upper right-hand corner of the zone view and
4  the upper right-hand corner of the first box are derived
5  from the same document.  They're different    16:43:33
6  manifestations of the same document, but they are
7  derived from the same structured electronic document
8  which is the rendering of the e-mail system.  It's
9  just -- based upon the screen real estate, it's a
10  different manifestation.    16:43:48
11  BY MR. MONACH:
12    Q.  It's different content.  It's not simply an
13  enlarging of the images that are shown in the tile in
14  the world view; it is a -- looking at different data and
15  displaying different data rather than displaying the    16:44:04
16  same thing in a larger font size or a larger image,
17  right?
18       MS. MAROULIS:  Objection; argumentative.
19  Misstates the document.
20       THE WITNESS:  Let me agree that it is not a    16:44:14
21  magnification of what's in the -- in the upper
22  right-hand corner of the first box of the world view.
23  It is not a magnification -- the upper right-hand corner
24  of the zone view is not a magnification of the original.
25  That's accurate.    16:44:28

## Page 214

1    within the bounds of the -- of the 2-by-2 box.  It is    17:04:34
2    enlarging and centering that in the -- in the LaunchTile
3    application view.  It is an expansion of that box.
4    BY MR. MONACH:
5       Q.  Okay.  But -- and it is not an enlargement and    17:04:48
6    translation of a structured electronic document
7    consisting of these four squares of content, correct?
8       A.  That is -- what it is doing -- yes.  What it
9    is doing is enlarging and expanding the -- it happens to
10   be enlarging, but it's scrolling into position the upper    17:05:13
11   right-hand quadrant of the original first box, which is
12   the 2-by-2 matrix.  It's not expanding the entire --
13   entirety of the first box.  This is --
14      Q.  Right.
15      A.  -- the second box.                     17:05:30
16      Q.  And you cannot scroll or pan when you're in
17   the LaunchTile application view to see any of the
18   adjacent LaunchTile zone view boxes, right?
19      MS. MAROULIS:  Objection; compound.
20      THE WITNESS:  My best recollection of the way    17:05:54
21   that this operates is that -- is that -- let me think.
22   I don't -- sitting here right now, I don't remember
23   certainly whether or not there is the ability to slide
24   back to the other view.  But I think not.  I think -- so
25   let me -- sorry.                           17:06:32

## Page 215

1       I believe that from the selected second box,    17:06:34
2    which has been expanded and centered on page 5, is
3    labeled the "LaunchTile application view," that it is --
4    from there, I don't know of a navigation path back to
5    the first box other than to go back up to the world view    17:06:51
6    and then select the zone again.
7    BY MR. MONACH:
8       Q.  If you're working on a computer running
9    Windows and it has Microsoft Word and you double click
10   on the Microsoft Word icon so that the application is    17:07:17
11   launched and replaces whatever has been on the screen
12   previously, covers it up, would you consider that to be
13   enlarging and translating a structured electronic
14   document?
15      MS. MAROULIS:  Objection; incomplete    17:07:34
16   hypothetical.
17      THE WITNESS:  Would I consider it to be
18   enlarging and translating a structured electronic
19   document?
20      MR. MONACH:  Mm-hmm.                     17:07:46
21      THE WITNESS:  I would not consider that --
22   hadn't considered it before, but I would not, sitting
23   here right now, consider it enlarging and translating a
24   structured electronic document.  What I think that is is
25   analogous to selecting one of these pieces of mail from    17:08:00

## Page 216

1    the LaunchTile application view and opening that up.    17:08:05
2    The LaunchTile application view -- or the box labeled
3    "LaunchTile application view" is the second box that was
4    in the zone view and is derived from the same data and
5    was in the world view as well.  So the expansion of the    17:08:20
6    world view -- of the 4-by-4 matrix to bring up -- so it
7    gets expanded and centered on the screen.  And the
8    selection -- that's the first box.  The gesture
9    selecting the second box then yields the expansion and
10   essentially centering to create the LaunchTile    17:08:41
11   application view.
12       If I were to now select one of those e-mail --
13   one of those e-mails that's on that page and then go
14   into the e-mail reader, that then would be analogous to
15   selecting Microsoft Word which then is an application,    17:08:56
16   which now you're off on the races.
17   BY MR. MONACH:
18      Q.  Does tapping on what you call the "second box"
19   launch the e-mail application in LaunchTile or not?
20      A.  I think that the system, the way it's set up,    17:09:09
21   is that the e-mail application was opened at world view,
22   it's opened at zone view, and it's opened further at
23   LaunchTile application view.
24      MR. MONACH:  Let's mark as the next exhibit --
25   I believe it's Exhibit 18.                 17:09:31

## Page 217

1       THE VIDEOGRAPHER:  Correct.             17:09:33
2       MR. MONACH:  Appendix 8 from your invalidity
3    report.
4          (Whereupon Exhibit 18 marked
5          for identification.)        17:09:38
6    BY MR. MONACH:
7       Q.  Mr. Gray, is the Robbins '349 patent one of
8    the pieces of prior art you've relied on in opining that
9    the -- at least some of the claims of the '163 patent
10   are invalid?                             17:10:20
11      A.  Yes.  Robbins '349 is one of the pieces of
12   prior art that I believe invalidates some of the
13   asserted claims of the '163.
14      Q.  Could you describe briefly how the Robbins
15   invention works.                         17:10:46
16      MS. MAROULIS:  Objection; vague.  Calls for a
17   narrative.
18      THE WITNESS:  The Robbins invention takes
19   large -- creates a -- allows for the display of a large
20   data set on a relatively small display surface and uses    17:11:01
21   a variety of techniques to segment that large
22   information space to allow for access to the -- to
23   details or to finer levels of detail regarding that
24   large information space.
25   BY MR. MONACH:                            17:11:28

Highly Confidential - Attorneys' Eyes Only

Page 230

1  the answer's yes.  I think the description in 2B and 2C   17:34:53
2  in my -- in Exhibit 18 -- Deposition Exhibit 18 show a
3  selection of the first segment.  And while that first
4  box is enlarged, selection of a second segment to -- I
5  mean, a second box which then will enlarge and center   17:35:24
6  that -- or, rather, center -- I shouldn't say -- or
7  zoom.  Tap to zoom.  So the first one is a tap to zoom.
8  The second gesture is a tap to scroll.
9  BY MR. MONACH:
10     Q.  Please identify for me in your chart the first   17:35:41
11  box that's enlarged and substantially centered.  Where
12  is that?
13        MS. MAROULIS:  Objection; asked and answered.
14        THE WITNESS:  In the description for 2B,
15  detecting a first gesture and determining the first box,   17:36:01
16  there's a -- an illustration there which the
17  illustration is labeled "340."  And the text supports
18  the fact that the segment 6 has been enlarged and it's
19  substantially centered.
20  BY MR. MONACH:                          17:36:18
21     Q.  Where is the second box if you look at page
22  340 -- or Figure 340?
23     A.  So in 2B, there isn't a second box shown.
24  When we go to 2C, which is a description of the ability
25  to enlarge and then show second boxes which are   17:36:32

Page 231

1  available as a second gesture, the illustration at 1420   17:36:39
2  shows an equal overlapping segmentation of adjoining
3  areas prior to the first gesture.
4     Q.  Do you have anyplace where after a first
5  gesture that enlarges the first box, you can still see   17:36:57
6  the second box and then tap on the second box to
7  substantially center it?
8        MS. MAROULIS:  Objection; asked and answered.
9        THE WITNESS:  Well, I don't have an
10  illustration -- I don't have an illustration in the       17:37:12
11  claim chart that shows a first box with second boxes
12  which would -- which are available for a second gesture.
13  But I believe that the second describes -- describes the
14  method by which that second box with a second gesture
15  could be selected or preselected.              17:37:31
16  BY MR. MONACH:
17     Q.  By pressing on a number key?
18     A.  Well, one of the methods that -- that can be
19  used -- well, the input component, 230, can be any one
20  of a touch pad, key pad, pointing device, stylus,   17:37:47
21  joystick or D pad.
22        MS. MAROULIS:  Okay.  We're at seven hours, so
23  I think we're done with the deposition.
24        MR. MONACH:  Okay.  All right.  Thank you.
25        MS. MAROULIS:  I don't have any questions for   17:38:02

Page 232

1  the witness.                               17:38:03
2        We'll reserve the right to review and sign.  I
3  believe there was some discussion of code, so we'll put
4  it under protective order for now and we'll dedesignate
5  it as needed.                              17:38:12
6        Thank you, everyone.
7        THE VIDEOGRAPHER:  This marks the end of disk
8  4 of 4 and concludes today's deposition of Stephen Gray.
9  The time is 5:38 p.m.  And we're off the record.
10        (The proceeding adjourned at 5:38 p.m.)
11
12
13              _____
14              STEPHEN GRAY
15
16
17  Subscribed and sworn to before me
18  this     day of      2012.
19
20     _____
21
22
23
24
25

Page 233

1              CERTIFICATE
2  STATE OF CALIFORNIA    )
3                        ) ss.:
3  COUNTY OF CONTRA COSTA )
4
5     I, Heidi Belton, a Certified Shorthand
6  Reporter, a Registered Professional Reporter,
7  a Certified Realtime Reporter, and a
8  Certified Realtime Professional within and
9  for the State of California, do hereby
10  certify:
11     That STEPHEN GRAY, the witness whose
12  deposition is herein before set forth, was
13  duly sworn by me and that such deposition is
14  a true record of the testimony given by such
15  witness.
16     I further certify that I am not related to
17  any of the parties to this action by blood or
18  marriage and that I am in no way interested
19  in the outcome of this matter.
20     In witness whereof, I have hereunto set my
21  hand this 5th day of May, 20112.
22                 _____
23                 HEIDI BELTON, CSR, RPR, CRR, CCRR
24                 Certified Shorthand Reporter No. 12885
25

TSG Reporting - Worldwide     877-702-9580