# Exhibit 31
# (Submitted Under Seal)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants. | CASE NO. 11-cv-01846-LHK |

**EXPERT REPORT OF STEPHEN GRAY
REGARDING INVALIDITY OF U.S. PATENT NOS. 7,844,915 AND 7,864,163**

operation results in a scroll operation, and nowhere limits the scroll operation to a single input point, the claims are indefinite. In other words, the meaning of the claims language is unclear in light of the Specification. Specifically, a person of ordinary skill in the art would understand that according to the Specification a gesture operation could, in at least one embodiment, initiate a scroll operation. The same person of ordinary skill could not reconcile this understanding with the language of the claims, which call for distinguishing between gesture operations and scroll operations. The Specification describes that a scroll operation is a type of gesture operation.

266.    All of the asserted Claims of the '915 Patent are also indefinite for another reason. Each of the independent claims recites "the event object invokes a . . . operation." In my 35 years of systems experience, I have never observed a system where an event object invoked a method. Therefore, in my opinion, a person of ordinary skill would not understand that an event object invokes a method in Claims 1, 8 and 15, rendering these claims (and all dependent claims) invalid as indefinite. Additionally, one of the inventors of the '915 Patent, Mr. Platzer, agreed with me at his deposition:

> Q. Okay. Turning back to the claim, the claim states, Determining whether the event object invokes a scroll or gesture operation. And my question is what does it mean to invoke a scroll or gesture operation?
>
> A. I'm not a lawyer, so I'm not comfortable in defining "invoke" as far as the patent is concerned. I don't recall. ███████████████████████████████████████████████████
>
> Q. And at the time you filed this patent application in 2007, did you have an understanding of what "invoke" meant as you used it here in the claims?
>
> A. I'm not -- a lawyer, so I'm not comfortable defining "invoke" in the patent. But as an example, in Objective-C or in many other languages, "invoke" is often used as a synonym for calling a function.

(October 18, 2011 Platzer Tr. Pgs. 80-81.)

267. In my opinion, dependent Claims 3, 10, and 17 are also indefinite. These claims recite "attaching scroll indicators to a content edge of the window." While the Specification describes attaching "a scroll indicator to a . . . ***window edge***" or "attaching scroll indicators a ***content edge*** of a **display**" (Col. 11, ll. 16-20 and 63-64) (emphasis added), the Specification distinguishes a "content edge" from a "window edge" on two separate occasions (Col. 6, ll. 64-67; Col. 6 l. 67 – Col. 7 l. 3). In other words, while the Specification describes attaching scroll indicators to a "window edge" or a "content edge", the meaning of "content edge of the window" is unclear in light of the Specification. I also note that Claims 4, 11, and 18 are directed to "attaching scroll indicators to the window edge." It is unclear to me what the terms mean. Thus, in my opinion, a person of ordinary skill in the art would not understand the difference between a "content edge of the window" and "a window edge"—and the Specification does not anywhere define "content edge of the window." Therefore, the same person of ordinary skill could not reconcile the differentiation of the terms "content edge" and "window edge" with the phrase "content edge of the window" in Claims 3, 10, and 17, rendering these claims invalid as indefinite.

268. Additionally, claims 15-18 and 20 are indefinite for failing to disclose the corresponding structure for several means-plus-function limitations.

269. It is my opinion that one of ordinary skill in the art would not understand this proposed construction to disclose a structure. Apple has not identified the particular structure or algorithm used to perform the claimed functions, and I believe one of ordinary skill in the art would not understand the necessary structure or algorithm from reading the Patent specification. It is my opinion that claims 15-18 and 20 are therefore invalid for indefiniteness.

287.    The '163 Patent, entitled "Portable Electronic Device, Method And Graphical User Interface For Displaying Structured Electronic Documents," issued on January 4, 2011 from an application filed on September 4, 2007, and purports to claim priority to a provisional application filed as early as September 6, 2006. The named inventors of the '163 Patent are Bas Ording, Scott Forstall, Greg Christie, Stephen O. Lemay, Imran Chaudhri, Richard Williamson, Chris Blumenberg, and Marcel Van Os. The patent is assigned to Apple Inc. A review of the file history shows that Apple filed a request for a certificate of correction on January 14, 2011 to remove Bas Ording as an inventor and add Andre M.J. Boule as an inventor.

288.    The '163 Patent relates to the field of graphical user interfaces that facilities navigation through an information space. The '163 Patent claims a method of segmenting an information space into regions, or "boxes" of content, and permitting a user to "enlarge" (*i.e.*, zoom or scale) and "translate" (*i.e.*, scroll or pan) the information space in order to provide an enlarged or enhanced view of a particular region.

289.    Claim 2 (which is reproduced below as modified by a March 15, 2011 Certificate of Correction) is the primary independent claim of the '163 Patent. Claim 2 is a "computer-implemented method" claim, and generally tracks the language of independent claims 49, 50, 51, and 52. Claims 49 and 51 claim a "graphical user interface" and a "non-transitory computer readable storage medium," respectively. Claims 50 and 52 are in means-plus-function form and also generally recite the same limitations as independent claim 2. All remaining asserted claims are dependent to claim 2.

> 2. A computer-implemented method, comprising:
>
> **[a]** at a portable electronic device with a touch screen display; displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content;
>
> **[b]** detecting a first gesture at a location on the displayed portion of the structured electronic document; determining a first box in the plurality of boxes at the location of the first gesture; enlarging and translating the structured electronic document so that the first box is substantially centered on the touch screen display;
>
> **[c]** while the first box is enlarged detecting a second gesture on a second box other than the first box; and in response to detecting the second gesture, translated

[sic] the structured electronic document so that the second box is substantially centered on the touch screen display.

290. Also of note, dependent claims 4 and 5 relate to specific types of structured electronic documents, namely "webpages," and HTML or XML documents. Dependent claims 10-13, 30-38, and 41-42 relate to specific types of gestures. Claims 17 and 18 relate to the degree of "enlarging" specified in claim 2. And, claims 27, 28, and 29 purport to disclose a "third gesture" that "reduces in size" the structured electronic document from its "enlarged" state.

291. The '163 Patent also appears to disclose various other features relating to the display of structured electronic documents, including a method of "scaling the document width to fit within the display width independent of the document length," (claim 6); "rotating the displayed portion of the structured electronic document" in response to "a change in orientation of the device" (claims 7 and 47); and "translating the displayed portion of the structured electronic document" in response to a "swipe gesture" (claims 39-42).

292. The foregoing description of the asserted claims is not meant to be exhaustive. My full element-by-element analysis of the claims and the prior is provided in subsequent sections of this report and in Appendices 7-10.

### 2.  Priority Date for the '163 Patent

293. I am aware that Apple has alleged that its inventors conceived of the subject matter claimed in the '163 Patent "in or before March 2006," with a reduction to practice date in "March/April 2006." I have reviewed all the documents cited by Apple in support of the interrogatory responses alleging these dates, and it is my opinion that the cited documents do not adequately support conception of the subject-matter underlying the '163 Patent "in or before" March 2006.

[redacted]

-83-

and

enlarging and substantially centering the first box on the touch screen display.

300. In a June 11, 2010 action Office Action Summary, the patent examiner found this claim unpatentable over Gillespie et al. (WO 02/093542) and Funkakami (WO 2005/106684) and initially rejected claims 1-26; 34-39; and 50-53.

301. On July 26, 2010, Apple's representatives conducted an in-person interview with the Examiner. They discussed these references amongst others. An Interview Summary issued on July 30, 2010 indicated that agreement with respect to the claims was reached.

302. In a September 13, 2010 response, the applicant amended independent claim 2 as follows (amendments shown in bold and underline, deletions are shown crossed out):

> 2. A computer-implemented method, comprising: at a portable electronic device with a touch screen display,
>
> displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content;
>
> detecting a first gesture at a location on the displayed portion of the structured electronic document;
>
> determining a first box in the plurality of boxes at the location of the first gesture; and
>
> enlarging and **translating the structured electronic document so that** ~~substantially centering~~ the first box **is substantially centered** on the touch screen display.

303. The specification of the '163 Patent does not explicitly describe what "translating" the structured electronic document involves. However, in describing the functions of independent claim 2, the specification states that "in response to a single tap gesture on block 3914-2, block 3914-2 may be enlarged with a zooming animation and two-dimensionally scrolled to the center of the display . . . ." '163 Patent at 17:32-35.

304. The specification therefore appears to equate translating and scrolling. The specification also makes clear that "animated" operations for navigating a structured electronic document are a key element to the features claimed in the '163 Patent. I can conclude, from this amendment that "translating" a box to the center must mean something different from just

-85-

"substantially centering" the box.  I therefore interpret "translating" the structured electronic document to involve an animated "scrolling" or "panning" operation.

305.  On January 20, 2011, the Examiner issued a notice of allowability.  The Notice of Allowability indicated that the Examiner conducted a telephone interview with Apple's representative on October 12, 2010, who authorized this amendment.

306.  The amendment was as follows (Examiner's amendment is in bold, underline and italics):

> 2.  A computer-implemented method, comprising: at a portable electronic device with a touch screen display,
>
> displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content;
>
> detecting a first gesture at a location on the displayed portion of the structured electronic document;
>
> determining a first box in the plurality of boxes at the location of the first gesture; and
>
> enlarging and **translating the structured electronic document so that** ~~substantially centering~~ the first box **is substantially centered** on the touch screen display**_;_**
> **_while the first box is enlarged, detecting a second gesture on a second box other than the first box; and_**
> **_in response to detecting the second gesture, translating the structured electronic document so that the second box is substantially centered on the touch screen display_**.

307.  Claims 50-52 were similarly amended.  The Examiner also indicated that the claims were allowable because the prior art did not teach "while the first box is enlarged, translating the webpage/ structure [sic] document such that the second box is substantially centered."

C.   **Claim Construction of the '163 Patent**

308.  I understand that certain terms from the asserted claims of the '163 Patents will likely require the Court's construction.  I have reviewed Apple's and Samsung's proposed constructions for these terms.  Generally, I disagree with Apple's proposed constructions.

309.  For terms and claim limitations where no construction has been provided, I analyze those elements using the plain and ordinary meaning of the terms as would have been understood by a person of ordinary skill in the art as of September 2006.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

1    321.    The zoomspace included a blue button ("Blue") in the center of each 4-tile "Zone" that could be selected by the user to enlarge and translate the four tiles that were adjacent to the selection button. When enlarged, the four tiles and the selection button are referred to as the "Zone View":



Zone View

322.    From the Zone View, LaunchTile permits the user to select any one of the 4 application tiles to launch the corresponding application. Additionally, from Zone View, a user can pan to neighboring 4-tile clusters by "dragging" the thumb either vertically or horizontally on the "rails" separating each application tile. As the user initiates the pan process, the "zoomspace moves with the thumb during dragging." LaunchTile at p. 205.

**2.    "The Robbins Patent": US 7,327,349 B2 ('349 Patent)**

323.    U.S. Patent No. 7,327,349 was filed March 2, 2004. The patent was published September 8, 2005, and it issued February 5, 2008. The first named inventor on the Patent is Daniel C. Robbins. The patent was assigned to Microsoft Corporation.

324.    Robbins describes a system and methods to allow a user to more effectively view information within the constraint space offered by the display on a small portable electronic device like a PDA or a cell phone with "a touch screen or some other type of display screen or touch pad that is sensitive to and/or receptive to a pointing device." Robbins at 2:15-18:

> The present invention relates to a system and/or methodology that facilitate navigating and/or browsing large information spaces on relatively small portable devices such as portable phones, PDAs and the like, for example. In particular,

421. Just as the term "substantially centered" fails to reasonably apprise a person of ordinary skill as to the scope of claim 2, so too does the term "substantially the same" fail to reasonably apprise a person of ordinary skill as to the scope of claim 18.

(c) **Means-plus-function Claim (Claim 50 and 52)**

422. It is my opinion that the specification of the '163 Patent lacks corresponding structure to adequately identify the scope of claims 50 and 52 with the requisite specificity.

423. I have reviewed Apple's P.L.R 4-2 disclosures in this case, and I am aware that Apple's position on the means-plus-function elements is that they are limited to "one or more special or general purpose processors programmed with special-purpose software to execute an algorithm."

424. It is my opinion that one of ordinary skill in the art would not understand this proposed construction to disclose a structure. Apple has not identified the particular algorithm used to perform the claimed functions, one of ordinary skill in the art could identify the corresponding algorithms from reading the Patent specification. It is my opinion that claims 50 and 52 are therefore invalid for indefiniteness.

## V. CONCLUSION

For the foregoing reasons, it is my opinion that every asserted claim in both the '915 Patent and the '163 Patent are invalid.

Dated: March 22, 2012

By _____Stephen Gray_____
Stephen Gray