# Exhibit 53
# (Submitted Under Seal)

Confidential Attorneys' Eyes Only

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4
 5   APPLE INC., a California
     corporation,
 6
                   Plaintiff,
 7
     vs.                         CASE NO. 11-CV-01846-LHK
 8
     SAMSUNG ELECTRONICS CO., LTD.,
 9   A Korean business entity;
     SAMSUNG ELECTRONICS AMERICA,
10   INC., a New York corporation;
     SAMSUNG TELECOMMUNICATIONS
11   AMERICA, LLC, a Delaware
     limited liability company,
12
                   Defendants.
13   _____/
14
15           C O N F I D E N T I A L
16        A T T O R N E Y S'  E Y E S  O N L Y
17
18        VIDEOTAPED DEPOSITION OF SCOTT HERZ
19             REDWOOD SHORES, CALIFORNIA
20              FRIDAY, OCTOBER 14, 2011
21
22
23   BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR
24   CSR LICENSE NO. 9830
25   JOB NO. 42678
```

Confidential Attorneys' Eyes Only

Page 2

1  FRIDAY, OCTOBER 14, 2011
2      9:11 a.m.
3
4
5
6  VIDEOTAPED DEPOSITION OF SCOTT HERZ,
7  taken at QUINN EMANUEL URQUHART &
8  SULLIVAN, LLP, 555 Twin Dolphin Drive,
9  Suite 560, Redwood Shores, California,
10 pursuant to Notice, before me,
11 ANDREA M. IGNACIO HOWARD, CLR, CCRR, RPR,
12 CSR License No. 9830.
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1  APPEARANCES:
2
3    FOR APPLE INC.:
4       MORRISON & FOERSTER
5       By: ERIK J. OLSON, Esq.
6       755 Page Mill Road
7       Palo Alto, California 94304
8
9
10
11
12   FOR SAMSUNG ELECTRONICS CO. LTD:
13      QUINN EMANUEL URQUHART & SULLIVAN
14      By: TODD M. BRIGGS, Esq.
15         AARON KAUFMAN, Esq. (New York Office)
16      555 Twin Dolphin Drive
17      Redwood Shores, California 94065
18
19
20
21   ALSO PRESENT: Jayna Whitt, Apple, Inc.
22         Erica Tierney, Apple, Inc.
23         Pete Sais, Videographer
24
25         ---oOo---

Page 4

1       REDWOOD SHORES, CALIFORNIA
2         FRIDAY, OCTOBER 14, 2011
3            9:11 a.m.
4
5
6
7     THE VIDEOGRAPHER: Good morning. This is the
8  start of tape labeled No. 1 in the videotaped
9  deposition of Scott Herz.
10    In the matter of Apple, Inc., versus Samsung
11 Electronics Company, Ltd.
12    In the United States District Court, Northern
13 District of California, San Jose Division. Case
14 No. 11-cv-01846-LHK.
15    This deposition is being held at 555 Twin
16 Dolphin Drive in Redwood Shores, California on
17 October 14, 2011, at approximately 9:11 a.m.
18    My name is Pete Sais from TSG Reporting,
19 Inc., and I'm the legal video specialist.
20    The court reporter is Andrea Ignacio in
21 association with TSG Reporting.
22    Will counsel please introduce yourselves, and
23 the court reporter can swear in the witness.
24    MR. BRIGGS: Todd Briggs from Quinn Emanuel
25 for Samsung.

Page 5

1     MR. OLSON: Erik Olson from Morrison &
2  Foerster on behalf of Apple and Mr. Herz.
3     MR. KAUFMAN: Aaron Kaufman, also Quinn
4  Emanuel, for Samsung.
5
6            SCOTT HERZ,
7      having been sworn as a witness,
8      by the Certified Shorthand Reporter,
9          testified as follows:
10
11
12       EXAMINATION BY MR. BRIGGS
13    MR. BRIGGS: Q. Can you state your name for
14 the record.
15   A  Scott Herz.
16   Q  Can you spell it for the record.
17   A  H-E-R-Z.
18   Q  Where do you live?
19   A  I live in San Jose.
20   Q  What's your address?
21   A  1229 Clark Way.
22   Q  Okay. And who are you currently employed by?
23   A  Apple.
24   Q  How long have you been working for Apple?
25   A  Since September of '99.

TSG Reporting - Worldwide    (877)-702-9580

2

Confidential Attorneys' Eyes Only

Page 74

```
 1  paper.
 2       MR. BRIGGS:  All right.
 3       MR. KAUFMAN:  This is actually better.
 4       MR. BRIGGS:  That's okay.
 5    Q  So what would you -- what would you correct
 6  to -- to describe the process that you just described
 7  to me a few moments ago, how would you describe the
 8  first step if you were to do it in a flowchart?
 9    A  So I would describe it how I -- how I
10  described it to you.
11    Q  And what would the first step be?
12    A  So the -- the first step, you know, an
13  example of it would be to -- to take data from -- in
14  one particular case, like a -- a touch device, and --
15  and package it up.
16    Q  Okay.  And that would create an event?
17    A  I would -- that would -- could create an
18  event, yeah.
19    Q  Okay.  And then that event would be passed to
20  an application; correct?
21    A  So the system would try and figure out where
22  that event needed to go.
23    Q  So it would determine which application to
24  send the event to?
25    A  Right.
```

Page 75

```
 1    Q  Okay.  And then it would send the event to
 2  the application?
 3    A  Right.
 4    Q  Okay.  And then the application would
 5  determine which view the event was associated with;
 6  correct?
 7    A  I'm talking to you, not necessarily to this.
 8    Q  No, I understand.
 9    A  Yeah.
10    Q  I'm just going through the process that
11  you --
12       MR. OLSON:  I'll just put this aside.
13       MR. BRIGGS:  -- created a while ago.
14       Actually, he can have it out.
15       MR. OLSON:  Well, I -- it should be clear
16  whether --
17       MR. BRIGGS:  Well, I mean, I may have
18  questions about it.
19       MR. OLSON:  -- it should be clear -- well,
20  it -- so it should be clear whether you're asking
21  about it or not.  You said you weren't, so I just put
22  it aside.
23       MR. BRIGGS:  Okay.
24       MR. OLSON:  That's all.
25       MR. BRIGGS:  Okay.  Okay.
```

Page 76

```
 1    Q  So again, once the application receives the
 2  event, the application would determine which view was
 3  associated with the event; is that correct?
 4    A  So in the case that I described earlier, it
 5  would figure out -- the application would try to
 6  determine which view should receive the event.
 7    Q  And then the view would process the event;
 8  correct?
 9    A  It -- that could be one outcome, yeah.
10    Q  And let's assume the event included a scroll.
11    A  So --
12       MR. OLSON:  Objection; incomplete
13  hypothetical.
14       THE WITNESS:  -- so it doesn't -- an event
15  doesn't -- that's not quite how it works.  Events
16  don't include a scroll.
17       MR. BRIGGS:  Q.  How does it work?
18    A  In which case?
19    Q  Well, when the view processes the event --
20  let's just -- let's say the view receives the event.
21       Is there a way the view can determine whether
22  the event is associated with a scroll or a gesture
23  operation?
24       MR. OLSON:  Objection; misstates the prior
25  testimony; and incomplete hypothetical as to view
```

Page 77

```
 1  receiving an event.
 2       THE WITNESS:  So there -- there is code that
 3  looks at a stream of events and determines whether or
 4  not it should scroll or do other things.
 5       MR. BRIGGS:  Q.  And that code is invoked
 6  once the -- or after the event is passed to the view?
 7    A  As a -- that code is called as a result of
 8  the events going to the -- to the view.
```



```
24    Q  Turning back to Figure 1 of the patent, is --
25  is -- is that process that's described in Figure 1 in
```

Confidential Attorneys' Eyes Only

Page 94

1  using the word "call" to mean, you know, some kind of
2  function or method, it's code having to do with a
3  gesture.
4       MR. BRIGGS:  Q.  And is it -- is it code that
5  causes the gesture operation to occur?
6       MR. OLSON:  Objection; incomplete
7  hypothetical; calls for a legal opinion.
8       THE WITNESS:  So I don't know what it -- it
9  could do a lot of things.
10      MR. BRIGGS:  Q.  So as you sit here, you
11 don't have a real precise definition of gesture call?
12      MR. OLSON:  Objection; calls for a legal
13 opinion.
14      THE WITNESS:  So certainly not with respect
15 to specific text; but then also, a gesture could be
16 any number of things.  So I'm not thinking of a
17 specific one.
18      MR. BRIGGS:  Q.  I mean, are there any -- is
19 there any kind of definition you can give for a
20 gesture call?
21      MR. OLSON:  Same objections.
22      THE WITNESS:  I would just repeat, I think,
23 what I said before, which is it's, you know, again,
24 not related to -- to any particular language, but a --
25 some code that does something, some gesture, as a

Page 95

1  result of calling it.
2       MR. BRIGGS:  This claim limitation also
3  states:
4       "Based on invoking the scroll or gesture
5  operation."
6    Q  My question is:  What is -- what is invoking
7  a scroll operation?
8       MR. OLSON:  Objection; calls for a legal --
9  legal opinion; lack of foundation.
10      THE WITNESS:  So I don't -- I don't know with
11 respect to that particular limitation that -- that
12 you're mentioning.  But if it's -- if it -- you're
13 asking sort of, like, what does the word "invoke" --
14      MR. BRIGGS:  That's right.
15      THE WITNESS:  I mean -- so again, not having
16 to do with this particular language, an example of
17 invoking something would be, you know, making a method
18 call, making a function call, causing that code to
19 run.
20      MR. BRIGGS:  Q.  So invoking has a notion of
21 causing something to happen?
22      MR. OLSON:  Objection; misstates the
23 testimony.
24      THE WITNESS:  So in the example I gave,
25 invoking could mean, yeah, causing something to

Page 96

1  happen.
2       MR. BRIGGS:  Q.  Could it mean causing an
3  event handler to run?
4       MR. OLSON:  Objection; vague; incomplete
5  hypothetical.
6       THE WITNESS:  So I think it depends on, you
7  know, what is meant by an "event handler."  I mean,
8  invoking, it's just -- it's like I mentioned earlier;
9  right?  If it's a function, it's -- a function can be
10 invoked.  A method could be invoked.
11      MR. BRIGGS:  Q.  So an event handler could be
12 invoked?
13      MR. OLSON:  Objection; misstates the
14 testimony.
15      THE WITNESS:  So if -- if a -- if an event
16 handler was a -- considered to be a method, and I
17 don't know that it is or isn't, it could be invoked.
18      MR. BRIGGS:  Q.  And what does invoking a
19 gesture operation mean --
20      MR. OLSON:  Objection --
21      MR. BRIGGS:  Q.  -- to you?
22      MR. OLSON:  -- objection; calls for a legal
23 conclusion; lack of foundation.
24      THE WITNESS:  So I don't know with respect to
25 this particular text what it means.  And sort of as I

Page 97

1  mentioned before, if it's -- if there's some code that
2  has to do with a gesture and you're invoking it, it
3  means, you know, you're causing that code to run.
4       MR. BRIGGS:  Okay.
5    Q  So I'm going to move on to the next
6  limitation in Claim 1, and it states:
7       "Responding to at least one scroll call, if
8  issued, by scrolling a window having a view associated
9  with event object based on an amount of a scroll with
10 the scroll stopped at a predetermined position in
11 relation to the user input."
12      Do you see that?
13   A  Uh-huh.
14   Q  Do you understand that?
15      MR. OLSON:  Objection; calls for a legal
16 conclusion.
17      THE WITNESS:  So, I mean, I wouldn't want to
18 speculate as to what it means since I'm not a -- not a
19 lawyer.
20      MR. BRIGGS:  Q.  Do you have a nonlegal view
21 of what that might mean?
22      MR. OLSON:  Same objections.
23      THE WITNESS:  I could -- I mean, I could
24 think of an example or something -- of something that
25 might do something like that.

Confidential Attorneys' Eyes Only

Page 146

1    THE WITNESS:  So I'm not exactly sure what it
2  means in a -- how it pertains to this particular
3  patent.  I could imagine an example being a finger
4  going down, translating some distance and then coming
5  up.
6    MR. BRIGGS:  Q.  How would that -- I'm not
7  familiar with that movement.  You said a finger going
8  down for some distance and then going back up?
9    A  Sorry --
10   MR. OLSON:  Objection; misstates the
11 testimony.
12   THE WITNESS:  So in this example, you could
13 consider a -- a finger coming vertically, you know,
14 down, touching the device, right, and then translating
15 along the device some distance and then leaving the
16 device over some period of time.
17   MR. BRIGGS:  Q.  How is that different from
18 a -- a scroll?
19   MR. OLSON:  Objection; vague.
20   THE WITNESS:  So --
21   MR. OLSON:  Calls for an opinion.  Sorry.
22   THE WITNESS:  -- so yeah.  Again, I'm not --
23 I don't have an opinion with respect to the text that
24 we're talking about here.
25   I would think that that could -- that -- that

Page 147

1  motion, you know, along with perhaps other parameters,
2  could result in a scroll.  It could result in other
3  things.
4  [REDACTED]
...
21   Q  Claim 6 states:
22   "The method as in claim 1, further
23 comprising:  responding to at least one gesture call,
24 if issued, by rotating a view associated with the
25 event object based on receiving a plurality of input

Page 148

1  points in the form of the user input."
2    Do you see that?
3    A  Actually, where is it?
4    Q  Claim 6.
5    A  Oh, Claim 6.  Okay.  I see it.
6    Q  And what does that mean?
7    MR. OLSON:  Objection; calls for a legal
8  conclusion; lack of foundation.
9    THE WITNESS:  So I wouldn't be able to
10 comment or speculate on the -- the text of the claim.
11   If -- you know, if I was to come up with an
12 example of something that that could mean, it would be
13 something -- you know, again, being able to look at
14 the event stream of -- the stream of events that are
15 coming in, and deciding that the user wants to rotate
16 a view or something based on those events.
17   MR. BRIGGS:  Q.  Did -- did the code you
18 [REDACTED]
21   Q  Okay.  Let's -- let's go back up to Claim 1.
22 We spent a lot of time going through Claims 1 through
23 7, and I just wanted to ask you:  When did you
24 conceive of Claim 1?
25   MR. OLSON:  Objection; calls for a legal

Page 149

1  conclusion.
2    THE WITNESS:  So all I can answer to is when
3  I started working on scrolling and things related to
4  scrolling.
5    MR. BRIGGS:  Okay.
6    Q  But you have no idea whether your work
7  relates to this claim --
8    MR. OLSON:  Objection; misstates --
9    MR. BRIGGS:  Q.  -- is that right?
10   MR. OLSON:  -- the testimony.
11   THE WITNESS:  So all I can do is -- you know,
12 is talk to the kinds of things that I've done, you
13 know, in code, the kinds of things that I've
14 implemented.
15   MR. BRIGGS:  Q.  So you --
16   A  But --
17   MR. OLSON:  Wait.
18   THE WITNESS:  -- but I'm not able to talk
19 about how that then translates to, you know, those
20 particular claims or language.
21   MR. BRIGGS:  Q.  So if I ask you for each of
22 these claims when you conceived of them, you won't be
23 able to give me an answer --
24   MR. OLSON:  Object --
25   MR. BRIGGS:  Q.  -- is that right?



Confidential Attorneys' Eyes Only

Page 174

1 questions I had. I do want to leave the deposition
2 open, pending the production or inspection of the
3 source code, and some of the other materials we talked
4 about, but that's all I have for now.
5     MR. OLSON: All right. I have no questions.
6     I -- as I said before, I believe all the
7 source code is -- has been produced, and so I disagree
8 with the issue of not closing the deposition, but
9 we're obviously not going to resolve that here today.
10     We would like to designate the record Apple
11 Attorney's Eyes Only Confidential, until we can review
12 it, and then make the appropriate designations per the
13 protective order, and otherwise I have no questions of
14 Mr. Herz.
15     MR. BRIGGS: Okay. Thank you, Mr. Herz.
16     THE VIDEOGRAPHER: This marks the end of
17 Volume I, Disc 3 and concludes today's deposition of
18 Scott Herz.
19     The time is 2:59 p.m., and we are off the
20 record.
21     (WHEREUPON, deposition ended at 2:59 p.m.)
22         ---oOo---
23
24
25

Page 175

1         J U R A T
2
3     I, SCOTT HERZ, do hereby certify under
4 penalty of perjury that I have read the foregoing
5 transcript of my deposition taken on October 14, 2011;
6 that I have made such corrections as appear noted
7 herein in ink, initialed by me; that my testimony as
8 contained herein, as corrected, is true and correct.
9
10     DATED this ____ day of _____, 2011,
11 at _____, California.
12
13
14
15
16
17     _____
18         SIGNATURE OF WITNESS
19
20
21
22
23
24
25

Page 176

1     CERTIFICATE OF REPORTER
2
3
4     I, ANDREA M. IGNACIO HOWARD, hereby certify
5 that the witness in the foregoing deposition was by me
6 duly sworn to tell the truth, the whole truth, and
7 nothing but the truth in the within-entitled cause;
8
9     That said deposition was taken in shorthand
10 by me, a Certified Shorthand Reporter of the State of
11 California, and was thereafter transcribed into
12 typewriting, and that the foregoing transcript
13 constitutes a full, true and correct report of said
14 deposition and of the proceedings which took place;
15
16     That I am a disinterested person to the said
17 action.
18
19     IN WITNESS WHEREOF, I have hereunto set my
20 hand this 14th day of October, 2011.
21
22     _____
23 ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830
24
25

Page 177

1         I N D E X
2
3 DEPOSITION OF SCOTT HERZ
4
5 EXAMINATION                           PAGE
6     BY MR. BRIGGS                      5
7
8 EXHIBIT                               PAGE
9 Exhibit 630 Platzer, et al., US Patent No.   14
10     7,844,915 BS; 52 pgs.
11 Exhibit 631 Flow Chart; 1 pg.          70
12
13         ---oOo---
14
15
16
17
18
19
20
21
22
23
24
25