# Exhibit 62

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

APPLE INC., A CALIFORNIA CORPORATION, PLAINTIFF,

VS.

CASE NO. 11-CV-01846-LHK

SAMSUNG ELECTRONICS, CO., LTD., A KOREAN BUSINESS ENTITY; SAMSUNG ELECTRONICS AMERICA, INC., A NEW YORK CORPORATION; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, A DELAWARE LIMITED LIABILITY COMPANY,

DEFENDANTS

DEPOSITION OF ANDRIES VAN DAM, an Expert Witness in the above-entitled cause, taken on behalf of the Plaintiff, before Barbara Warner, RPR, Notary Public in and for the State of Rhode Island, at the offices of Allied Court Reporters, 115 Phenix Avenue, Cranston, RI, on September 14, 2011 at 9:30 A.M.

Job Number: 41901

APPEARANCES:

FOR THE PLAINTIFF APPLE INC.:
MORRISON & FOERSTER
BY: RICHARD S.J. HUNG, ESQ.
BY: DEOK KEUN MATTHEW AHN, ESQ.
425 MARKET STREET
SAN FRANCISCO, CALIFORNIA 94105

FOR THE DEFENDANTS SAMSUNG:
QUINN EMANUEL URQUHART OLIVER & HEDGES
BY: TODD M. BRIGGS, ESQ.
BY: AARON KAUFMAN, ESQ.
555 TWIN DOLPHIN DRIVE
REDWOOD SHORES, CALIFORNIA 94065

ALSO PRESENT:
MIKE HENRIQUES, VIDEOGRAPHER

INDEX

WITNESS PAGE

ANDRIES VAN DAM

EXAMINATION BY MR. HUNG............ 6

EXHIBITS

DESCRIPTION PAGE

EXHIBIT 129 NOTICE OF DEPOSITION 6
EXHIBIT 130 DECLARATION OF ANDRIES VAN DAM 6
EXHIBIT 131 LONG VERSION OF VAN DAM CV 6
EXHIBIT 132 iPAQ 58
EXHIBIT 133 CHECKERBOARD DOCUMENT 122
EXHIBIT 134 EXHIBIT A TO THE BEDERSON DECLARATION 145
EXHIBIT 135 SONY DEVICE 159
EXHIBIT 136 EXHIBIT 4 TO THE VAN DAM DECLARATION 164
EXHIBIT 137 BATES NUMBERS 1156

EXHIBITS

DESCRIPTION PAGE
EXHIBIT 138 EXHIBIT 5 TO THE VAN DAM DECLARATION 176
EXHIBIT 139 VAN DEN HOVEN REFERENCE 177
EXHIBIT 140 READING AND WRITING THE ELECTRONIC BOOK 184
EXHIBIT 141 SOURCE CODE MODULE 199

*EXHIBITS 132 AND 135 RETAINED BY THE ATTORNEYS.

(DEPOSITION COMMENCED AT 9:54 A.M.)

ANDRES VAN DAM

THE VIDEOGRAPHER: This is the start of the tape labeled number 1 of the videotaped deposition of Andries van Dam in the matter of Apple Inc., versus Samsung Electronics Company, Limited, in the United States District Court, Northern District of California, San Jose Division. The deposition is being held at Allied Court Reporters, 115 Phenix Avenue, Cranston, Rhode Island on September 14, 2011 at approximately 9:54 a.m.

My name is Mike Henriques. I am the legal video specialist from TSG Reporting, Inc., headquartered at 747 Third Avenue, New York, New York. The court reporter is Barbara Warner in association with TSG Reporting. And if counsel could please introduce themselves.

MR. HUNG: Richard Hung of Morrison & Foerster for Apple Inc. With me today is Matthew Ahn, also of Morrison & Foerster.

MR. BRIGGS: Todd Briggs from

Quinn Emanuel for Samsung and the witness.
THE VIDEOGRAPHER: If the court reporter could please swear in the witness.
ANDRIES VAN DAM
Being duly sworn, deposes and testifies as follows:
THE REPORTER: Would you state your name and spell your last name for the record.
THE WITNESS: Andries van Dam, in this country Andy van Dam, V-A-N D-A-M, as in Mary.
(EXHIBITS 129, 130 AND 131 MARKED FOR IDENTIFICATION)
EXAMINATION BY MR. HUNG
Q. Good morning.
A. Good morning.
Q. You have before you, Dr. van Dam, the notice of deposition in this case. Have you seen that notice before?
A. I believe I have.
Q. It has been marked as Exhibit 129. You understand that you are here today appearing pursuant to this notice, correct?
A. I do.

Q. I believe you have been deposed previously, right?
A. I have been.
Q. How many times?
A. Certainly twice, possibly three times, but I don't remember.
Q. Do you recall the circumstances of those prior depositions?
A. They were part of litigation. One was a patent case, and the other was a trade secret case. Those are the ones I remember. There probably was a third patent case, as well.
Q. I want to start by just understanding what you did to prepare for your deposition today?
A. Sure.
Q. I understand you are here on behalf of Samsung Electronics, correct?
A. Sorry.
Q. You are here on behalf of Samsung Electronics?
A. Correct.
Q. What did you do to prepare for your deposition today?
A. I was given and read a number of references, including patents. I remembered

from my own work various references that I thought might have bearing on the case. And there were a number of work products, drafts of work products, that I also went over. And of course the usual number of conversations both in person, face to face, and via telephone with counsel.
Q. Let me go back a second. I know you have been deposed before, but I will quickly establish a couple of rules that will help both of us.
A. Certainly.
Q. One is I will try hard not to talk over you, and if you could do the same for me. That would really help out the court reporter.
A. Absolutely.
Q. The second thing I will ask is that I will try to ask you clear questions. If you don't ask me to clarify, I'll assume you understood and that will be great.
A. Absolutely.
Q. You mentioned you took a look at some patents, do you recall what patents those were?
A. Obviously I reviewed in great detail the

Bas Ording patent at issue, 381. I also looked at the several patents that I cite in my declaration, in particular Lira and Van Den Hoven.
Q. Do you recall looking at any other patents to prepare for today's deposition?
A. Probably I looked at but did not study in great detail other materials.
Q. What about references, you referred to various references?
A. Some of the literature references I remembered, some of them were found. I did not take the time to reread them in detail because for the most relevant ones, I knew what they were about.
Q. You also referred to conversations with counsel?
A. Um-hum.
Q. And I don't want to invade any work product between you and your counsel, or certainly your counsel's work product. I did want to get a better sense of when those conversations occurred and how long they were?
A. I believe they started early July when the

detect, and I'm going to scroll in the vertical direction upwards, and here I have a different portion, which is the second portion.

And now I'm going to scroll a little more and there's even less of the mail file showing. In fact, there is area below Catherine Thompson, which is white and which is differentiated from Catherine Thompson by a very thin, single pixel lines of demarcation.

Q. Could you hold that up? Thank you.

A. Now, when I let go, it snaps back. The movement is subtle and I don't know whether you caught it. Do you want me to repeat it?

Q. Please.

A. Okay. So I'm near the edge for my starting position, the bottom edge of the mail file. I'm not going to scroll up like so until I am just at Sarah Carlson, like so. And now when I let go, it bounces back and I see yet a different view of the mail file where there is nothing showing beyond the edge that I saw previously.

I have the bottom of the mail file

in its entirety and it is different from first, second and third portions.

Q. What if we exceed the threshold?

A. If we exceed the threshold, then we don't get the bounce-back effect. There is no reversing of the direction or different direction, which is all the claim calls for, but bounce-back typically has this notion of the opposite direction. You are simply going to scroll the file so that most of it and eventually all of it becomes this gray no man's land.

Q. In which case there is no snap-back, correct?

A. There is no snap-back in any of the prior art, or I believe the patent itself and its specification if you go beyond a certain threshold.

Q. Looking at the blue button with the blue bar --

A. That's the chrome I was referring to earlier.

Q. That chrome is adjustable on the 1950, correct?

A. It is. Some of it is. In particular, in the E-mail application, I can move it up and

down by moving the blue chrome button and having it overlay a different header to indicate selection. But it's not material to the demonstration because it isn't part of the electronic document.

Q. If you return to the E-mail list, and you drag the chrome all the way to the top of the E-mail list --

A. I haven't done that, but let's see if we can do that. Like so?

Q. Yes. And if you pull the E-mail list down?

A. If I pull the E-mail list down, like so.

Q. And now -- that's perfect.

A. Like so. Now, we have this border region beyond the electronic document at the top.

Q. Could you actually help me by lowering the chrome slightly, maybe to a quarter of the screen?

A. Um-hum. On top of Ben Bederson, is that where you would like it?

Q. That would be perfect. Can you scroll the list up by, perhaps, so it fills the entire screen? Now, if you take the list and you move the list by less than the threshold amount, it will only snap to a given object

in the list, correct?

A. I believe that to be the case. Let's just move it a little, and it snapped back.

Q. And that is true -- let me start again. When you were at the very bottom of the list, when it reached what you referred to as the edge, the threshold amount was based on the size of the object, correct, it's related to the size of the object?

MR. BRIGGS: Objection. Foundation.

A. I believe it's certainly application-dependent, but size of object, what do you mean by object in this case?

Q. For example, when you looked at the source code, do you recall a function known as snap-to-object?

A. That sounds familiar, but I can't recall the specifics.

Q. Could you rehighlight the screen, or turn it back on?

A. Yes.

Q. When you are moving the list on the 1950 with LaunchTile, isn't it true that when you remove the stylist what, in fact, occurs is

about it, including the bounce-back and the whole attraction and repulsion grid alignment system that they used in it. But on such an early stage product as the iPAQ, or, for that matter, the Sony device, it's not that successful because the processor is too slow. There is too little memory. The touchscreen does not have adequate resolution. The screen does not have adequate resolution. So the user experience on those devices with software from five years ago can't be directly compared to a modern device with its resolution and its image quality. It had a far greater amount of time that was spent in engineering it.

Q. Have you owned prior versions of the iPhone?

A. I owned the first iPhone, too, whatever that model number is, maybe a 3. Is that what the first release was, an iPhone 3?

Q. Did you own an iPhone in 2007?

A. No. I'm not an early adopter.

Q. Do you believe that Apple innovated a number of user interface technologies in its iPhones that you used?

MR. BRIGGS: Objection. Vague.

Lacks foundation.

A. We are now so far afield. What do you mean by innovate and so on? Apple knows goods industrial design. It knows how to make a product that is aesthetically pleasing and attractive and nice to use. But as I said, there are many features of the iPhone I don't like. By the way, I carry a very vanilla cell phone because I prefer its interface to the iPhone's interface, so that's one example where I think improvement could be made. So overall, it's a successful product because it deserves to be.

If you say that is the hallmark of innovation I would say, okay, they innovated. Certainly in terms of the UI, the quality of the image, the ease-of-use features, for the most part, it's very successful.

MR. HUNG: Mr. Briggs, I understand that you and I have had a dispute today, and also Dr. van Dam, as to the scope of his opinions or not with respect to the hypothetical device that we were going to show Dr. van Dam. I understand that we agree to disagree at this point. If there is

follow-up, there is follow-up. But I appreciate your time, Dr. van Dam. And we are happy to close the deposition now.

MR. BRIGGS: Great. Thanks.

THE WITNESS: Very good. Thank you.

THE VIDEOGRAPHER: It is 6 p.m., we are off the record. This concludes the videotaped deposition of Andries van Dam on September 14, 2011.

(DEPOSITION CONCLUDED AT 6:00 P.M.)

C E R T I F I C A T E

I, Barbara Warner, a Notary Public in and for the State of Rhode Island, duly commissioned and qualified to administer oaths, do hereby certify that the foregoing Deposition of Andries van Dam, a Witness in the above-entitled cause, was taken before me on behalf of the Plaintiff, at the offices of Allied Court Reporters, 115 Phenix Avenue, Cranston, Rhode Island on September 14, 2011 at 9:30 A.M.; that previous to examination of said witness, who was of lawful age, he was first sworn by me and duly cautioned to testify to the truth, the whole truth, and nothing but the truth, and that he thereupon testified in the foregoing manner as set out in the aforesaid transcript.

I further testify that the foregoing Deposition was taken down by me in machine shorthand and was later transcribed by computer, and that the foregoing Deposition is a true and accurate record of the testimony of said witness.

Pursuant to Rules 5(b) and 30(f) of the Federal Rules of Civil Procedure, original transcripts shall not be filed in Court; therefore, the original is delivered to and retained by Plaintiff's attorney, Richard S.J. Hung, Esquire.

Correction and signature pages were sent to Plaintiff's Counsel, Todd M. Briggs.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 15th day of September, 2011.

________________________________________

BARBARA WARNER, NOTARY PUBLIC/CERTIFIED COURT REPORTER