HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION TO ENFORCE APRIL 12, 2012 ORDER**<br><br>Date: June 21, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

**PUBLIC REDACTED VERSION**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii
I.   INTRODUCTION .................................................................................................................. 1
II.  BACKGROUND .................................................................................................................... 1
    A.   Samsung's March Motion to Compel and Enforce ................................................... 1
    B.   Apple's Compliance with the Court's April 12 Order ............................................... 2
III. ARGUMENT .......................................................................................................................... 4
    A.   Samsung's Request for Five Depositions After the Deadline Should be
         Denied ........................................................................................................................ 5
         1.   Samsung unreasonably delayed requesting depositions under the
              April 12 Order such that depositions could not be completed by
              May 10. ........................................................................................................... 5
         2.   The requested depositions are not "tied to the production" of
              deposition transcripts. .................................................................................... 6
              a.   Andrew Bright ................................................................................... 6
              b.   Priya Balasubramaniam .................................................................... 7
              c.   Saku Hieta ......................................................................................... 8
              d.   Richard Howarth ............................................................................. 10
              e.   Emilie Kim ...................................................................................... 10
    B.   Apple Has Already Produced Materials Covered by the April 12 Order in
         Redacted Form to the Extent Possible and Sought Consent from Third
         Parties to Produce Documents. ................................................................................ 12
IV.  CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Certain Personal Data and Mobile Commuc'n Devices and Related Software*,
  Inv. No. 337-TA-710, 2011 ITC LEXIS 1668 (July 15, 2011) .................................................. 2

*Nissei America, Inc. v. Cincinnati Milacron, Inc.*,
  95 F.R.D. 471, 475 (N.D. Ill. 1982) ...................................................................................... 12

*Ultratech, Inc. v. Tamarack Scientific Co.*,
  2005 WL 696979 (N.D. Cal. 2005) ........................................................................................ 5

*U.S. v. Int'l Union of Petrol. & Indus. Workers*,
  870 F.2d 1450, 1452 (9th Cir. 1989) .................................................................................... 12

## I.     INTRODUCTION

Honoring both the letter and the spirit of the April 12 Order, Apple produced transcripts, and produced them six days early to give Samsung extra time to identify potential deponents. Apple also produced all of the court documents to which it had access under the governing protective orders — more than 3,800 of them. Apple even moved the International Trade Commission — unprompted by either this Court or Samsung — to allow its counsel to provide access to the remaining documents without consent of the producing parties. Apple *continues* to go beyond the requirements of the Order. Its counsel are preparing redacted versions of the unproduced court documents, as Samsung requests in its Motion, even though the Order did not so require. Apple also kept the Court apprised of its efforts to comply in an April 26 Motion for Clarification (Dkt. No. 885-0) and subsequent Status Update Re Compliance with April 12 Order (Dkt. No. 903).

Samsung, failed to take reasonable steps to avail itself of the relief granted under the Order by waiting until May 9 to request five depositions that the Court ordered to be finished by May 10. Samsung demanded that Apple either present witnesses the next day (which it could not) or agree to ignore the Court's deadline. Samsung continues to violate the spirit of the Order by seeking to compel depositions which have *nothing* to do with mitigating prejudice to Samsung. The deposition transcript excerpts Samsung relies on to support this motion show plainly that Samsung has suffered no prejudice. Apple therefore requests that Samsung's motion be denied and that the discovery phase of this dispute be finally drawn to a close.

## II.    BACKGROUND

### A.     Samsung's March Motion to Compel and Enforce

In March, Samsung filed a motion challenging Apple's understanding of the scope of Apple's obligation to produce deposition transcripts under the December 22 Order, and seeking to compel Apple to produce "other documents" from a list of proceedings identified by Samsung as having a "technological nexus" with the present case. (Samsung's Motion to Compel Production of Materials from Related Proceedings and to Enforce December 22, 2011 Court Order, filed under seal March 7). The Court granted Samsung's motion in part and ordered that "to mitigate

1  prejudice to Samsung" from late-produced deposition transcripts, Samsung could take up to five
2  additional depositions.  (Dkt. No. 867)  The Court continued, "Samsung must complete any
3  deposition to be taken as a result of this order by May 10, 2012." (*Id.*)  With respect to court
4  documents, the Court noted Apple's argument that redacting third-party confidential information
5  from all materials to be produced would be burdensome.  It therefore ordered Apple to produce
6  *unredacted* court documents from the eight cases Samsung had identified.  (*Id.* at 12.)

### B. Apple's Compliance with the Court's April 12 Order

Apple produced all deposition transcripts required by the Court's order by April 21, 2012 — six days before the deadline.  (Sabri Declaration in Support of Apple's Oppositions to Samsung's Motion for Sanctions and Motion to Enforce ("Sabri Decl.") ¶ 20.)  Samsung claims that Apple produced 283 transcripts.  Absurdly, Samsung reaches that number by counting transcripts from depositions in the 796 Investigation that Samsung itself took, copies of which it of course already had.  Apple agreed to Samsung's proposal to immediately "deem" the transcripts produced in this litigation.  (*Id.* Ex. 14).  In addition, Apple produced transcripts overbroadly in an attempt to avoid any possible further dispute —which Samsung now uses against Apple in both this motion to enforce and its motion for sanctions.  Apple produced:

- Forty-three transcripts from the Nokia 701 investigation (*Id.* Ex. 16) — a case that Samsung initially included on its list of cases considered to have a technological nexus but later *dropped* (*Id*. Exs. 9-12);
- Sixty-six transcripts from the HTC ITC 710 investigation (*Id.* Ex. 16) — a case which was not included on Samsung's list of cases alleged to have a technological nexus, but which Samsung's counsel, Quinn Emanuel, who also represents HTC, clearly knew about. (*Id.* Ex. 12).  The suit involves data analysis and operating system-related technologies not at issue in this case.  *See Certain Personal Data and Mobile Communications Devices and Related Software*, Inv. No. 337-TA-710, 2011 ITC LEXIS 1668, at *12-16 (July 15, 2011);
- Seven transcripts from the QRG district court litigation (Sabri Decl. Ex. 16.).  The QRG case was also omitted from Samsung's list of technological nexus cases, and

with good reason. The asserted QRG patent referred to controlling a water supply valve in a basin or fountain; Apple only included transcripts from this case in its production because QRG alleged certain capacitive touch products infringed its patent (*Id.* Ex. 21.);

- Twenty-two transcripts from the Elan district court litigation (*Id.*). Apple previously produced all the Elan transcripts with a technological nexus for witnesses who testified in this case. Apple's production after April 12 was limited to testimony with no technological nexus or from individuals not appearing as witnesses in this case;

- Twelve transcripts from the HTC 797 investigation (*Id.*). All of these transcripts post-dated the January 15 deadline for production of transcripts. None is "prior" testimony of a witness testifying in this case. Indeed, seven of the 12 transcripts were created *after the discovery cut-off*;

- Twenty-eight transcripts from Motorola litigation (*Id.*), none of which is prior testimony with a technological nexus from a witness testifying in this case; and

- Nineteen transcripts from the Nokia Delaware litigation — again, none of which is prior testimony with a technological nexus from a witness testifying in this case. (*Id.* Ex. 16).

After completing its production of transcripts, Apple moved for clarification of the April 12 Order on April 26. Apple sought to clarify that (1) Apple need not produce court documents containing confidential third-party information where the relevant protective order or rule does not permit production, even pursuant to court order, and (2) the five depositions to which Samsung is entitled must be connected to Apple's production of transcripts pursuant to the April 12 Order and the alleged prejudice to Samsung. Apple noted that Samsung had failed to inform Apple of the depositions it intended to seek under the Order. (Apple's Motion for Clarification [Dkt. No. 885] at 5.)

Three times—on April 24; April 30; and May 4, 2012 (Sabri Decl. Exs. 25, 26, and 27, respectively)—Apple wrote Samsung to ask that it identify deponents, warning Samsung that

1  Apple would not ignore the Court's May 10 deadline.  Despite Apple's three reminders *and*

2  motion for clarification, Samsung still waited eighteen days after Apple completed production of

3  transcripts to identify five deponents for the first time.  Samsung sent its list to Apple at 12:21AM

4  on the morning of May 9. (Sabri Decl. Ex. 17.)  Samsung demanded that Apple stipulate to

5  continue depositions through May 18 or else produce all five deponents the next day, May 10.

6  (*Id.*)

7        Apple detailed the steps it took to produce Court documents in compliance with the

8  April 12 Order in its April 26 Motion for Clarification (Dkt. Nos. 885, 887) and subsequent

9  Status Update Re Compliance with April 12 Order (Dkt. No. 903).  Apple has continued its

10  efforts since its status update, producing unredacted court documents when available.  Its counsel

11  has also redacted remaining unproduced court documents—even though the April 12 Order does

12  not call for that.  (Mazza Declaration in Support of Apple's Opposition to Samsung's Motion to

13  Enforce ("Mazza Decl.") ¶¶ 12-14.)

14        Several nonparties have objected to or failed to respond to Apple's requests to produce

15  unredacted court documents.  As noted in Apple's previous filings, Apple filed a motion with the

16  ITC seeking permission to produce documents subject to ITC protective orders, as the ITC does

17  not permit production absent consent, even pursuant to the orders of other courts.  (Dkt. No. 887-

18  0, Mazza Decl. ¶ 15.)  On May 7, the Office of Unfair Import Investigations opposed Apple's

19  motion, acknowledging that "Apple is 'between a rock and a hard place'" and asserting that ITC

20  protective orders without exception prohibit counsel from providing confidential documents to

21  Apple without consent of the producing parties.  (Apple's Status Update 0Dkt. No. 903].)  The

22  ITC has not yet ruled on the motion.

23  **III.   ARGUMENT**

24        Samsung's motion to compel five depositions should be denied because (1) Samsung

25  waited far too long to request the depositions and (2) the depositions Samsung belatedly

26  requested will not mitigate any prejudice arising from Apple's production of transcripts in

27  compliance with the April 12 Order.  Samsung's motion to compel production of redacted Court

28

1  documents also should be denied because it would impose an unreasonable burden on Apple not
2  required by the April 12 Order.

3        **A.**      **Samsung's Request for Five Depositions After the Deadline Should be Denied**

4        Samsung unreasonably delayed requesting depositions, and depositions it has requested do
5  not "mitigate the prejudice to Samsung" as contemplated by the order (Order at 10).

6        **1.**      **Samsung unreasonably delayed requesting depositions under the April 12 Order such that depositions could not be completed by May 10.**

8        The April 12 Order allowed a limited but reasonable window for Samsung to take
9  additional depositions.  Apple was ordered to produce deposition transcripts on a rolling basis
10 finishing by April 27 and Samsung was ordered to complete any such depositions 13 days later on
11 May 10.  Apple finished its production a week early to give Samsung even more time to review
12 the transcripts produced.  Apple asked Samsung repeatedly to identify deponents and warned that
13 it would not stipulate to allow any depositions to slip even later into the post-discovery period.
14 Samsung ignored the warnings and failed to identify *any* deponents until after midnight on
15 May 9.  At that point, there was no reasonable way that Apple could present five witnesses for
16 deposition by May 10.  *Ultratech, Inc. v. Tamarack Scientific Co.*, No. C 03-3235 CRB (JL),
17 2005 WL 696979, at *1 (N.D. Cal. 2005) (six-days' notice of deposition not reasonable).  Nor
18 was it reasonable for Samsung to ignore deadlines imposed to prevent discovery from spilling too
19 far into the post-discovery period, thus jeopardizing the orderly preparation of the case for trial.

20       Samsung claims that it was unable to provide names of deponents earlier because of
21 Apple's alleged delay in "narrowing" its claims for trial, and because the number of transcripts
22 produced was large.  There is no presumption, let alone a requirement, under the April 12 Order,
23 that Apple would narrow its claims before depositions were conducted.  Indeed, Judge Koh's
24 order directing the parties to consider narrowing their respective cases issued *after* the April 12
25 Order.  Moreover, Apple filed its final statement narrowing its claims at 6:00 pm on May 7.  If
26 Samsung were merely waiting for that filing, it still could have provided its list of deponents
27 before May 9.

28

1  The volume of transcripts produced after April 12 is a red herring.  First, the depositions that Samsung requested do not genuinely arise from late production of transcripts.  As discussed below, Samsung was already aware of each of the requested witnesses and the scope of their knowledge well before Apple's production pursuant to the April 12 Order.  The transcript excerpts Samsung relies on are devoid of any information that would give rise to the need for depositions.  Second, the great majority of deposition transcripts Apple produced were not new to Samsung's counsel.  The more than eighty transcripts from the 796 investigation were not new because Samsung is party to that investigation.  The 106 transcripts Apple produced from the HTC and Motorola cases were not new to Samsung's counsel because the same firm that represents Samsung here represents — under the direction of the same lead lawyer — the defendants in those actions.

### 2. The requested depositions are not "tied to the production" of deposition transcripts.

Samsung claims that the depositions it requests "are reasonably tied to the production of deposition transcripts." (Samsung's Motion to Enforce ("Motion") at 7.)  That claim cannot withstand scrutiny.

#### a. Andrew Bright

Samsung claims that it needs to depose Andrew Bright because Apple's transcript production revealed that he "oversaw earpiece issues with the iPhone 3GS and the overall audio performance of the iPhone 4."  (Motion at 7.)  Samsung asserts that he testified that the "size and shape of the speaker box affects performance at high and low frequencies."  This, according to Samsung, makes him "relevant to Samsung's functionality defense" because any "design choices made based on acoustics are not properly within the scope of a design patent or Apple's alleged trade dress."  Samsung's argument fails for several reasons.

First, the transcripts that are alleged to contain the revealing Andrew Bright testimony are from the Nokia 701 investigation.  As discussed in more detail in Apple's concurrently filed opposition to Samsung's motion for sanctions, Samsung initially included the 701 investigation on its proposed list of cases alleged to have a technological nexus but dropped it after negotiation.

1  (Sabri Decl. Exs. 9-12.) It therefore was not a violation of the December 22 Order — which
2  specifically encouraged the parties to come to "agreement" on the cases considered to have a
3  technological nexus — for Apple not to have produced the Nokia 701 transcripts earlier.

4  Second, Samsung knew of Mr. Bright's role working on iPhone acoustics months before
5  Apple's April transcript production. An Apple witness identified Mr. Bright and his role in a
6  deposition taken in this case on February 16. (Sabri Decl. Ex. 22 at 25:13-17 (Mr. Bright was a
7  "principal contact" within the "Acoustics" group "as it pertained to the iPhone 4".) Thus,
8  Samsung's alleged failure to "discover" Mr. Bright's alleged relevance to the case was not a
9  result of non-production of transcripts.

10  Third, Mr. Bright testified that he joined Apple in 2009, too late to have been involved in
11  creating the asserted designs. (Hutnyan Decl. [965-2] Ex. 12 at 57:6-58:7). Apple's asserted
12  design patents all arose out of the *original* iPhone project. The asserted designs were created (and
13  design patents filed) well before Mr. Bright joined Apple. Similarly, Apple's asserted trade
14  dresses arise from both the original iPhone and the iPhone 3G, which first shipped in 2008.
15  Mr. Bright could not have been involved in any "design choices" affecting these asserted trade
16  dresses.[1]

17  **b.   Priya Balasubramaniam**

18  Priya Balasubramaniam was identified as the "manager of the display and touch panel
19  procurement team" in a deposition taken *in this case* on March 1, 2012, not in any of the
20  deposition transcripts produced by Apple. (Sabri Decl. Ex. 23 at 32:24-33:6.) The transcript
21  snippets that Samsung attached to its brief disclose nothing of relevance.

22  To justify this deposition, Samsung relies on the testimony of Dan Roskes in the HTC 710
23  investigation, which was taken by a Quinn Emanuel attorney. Mr. Roskes said exactly *two words*
24  about Ms. Balasubramaniam, testifying that she is responsible for "LCD procurement." (Hutnyan
25  Ex. 13, Roskes at 58:10-12). If Samsung had wanted to investigate LCD procurement, it had

26

---

27
28  [1] Apple's May 7 filing stated that Apple was no longer asserting the iPhone 4 trade dress.

1  many opportunities to do so during the discovery period. Samsung did not, however, because
2  LCD procurement has nothing to do with any of Apple's asserted claims.
3        Samsung argues that Ms. Balasubramaniam's knowledge "of the choice to use certain
4  LCD displays" is relevant because "the rationale for choosing a certain display may concern a
5  functional rather than ornamental purpose." (Motion at 8.) This rationale fails because Apple has
6  not asserted particular LCD displays as an element of its asserted designs. Even if it had, the
7  witnesses knowledgeable of the effect of those choices on design would be the designers whom
8  Samsung has already deposed. It makes no sense to depose a "procurement" employee to probe
9  the rationale of the designers in selecting a particular industrial design.
10        The remaining transcript excerpts Samsung relies on are no more relevant. One witness
11  testified that he consulted with Ms. Balasubramaniam about "master supply agreements."
12  (Hutnyan Ex. 14 at 15:19-24.). Master supply agreements have nothing to do with the alleged
13  "functionality" of Apple's design patents and trade dress. Samsung has never asked *any* Apple
14  witness in this case about master supply agreements. Another deponent consulted with
15  Ms. Balasubramaniam about components in the iPod nano media player. (*Id.* Ex. 15 at 11:18-
16  12:18.) The iPod nano is not at issue in this case at all.

                    **c.    Saku Hieta**

18        Samsung struggles but fails to manufacture some meaningful nexus between Mr. Hieta
19  and the transcripts produced by Apple. There is nothing new in those transcripts that warrants a
20  deposition of Mr. Hieta. Rather, this particular request appears to be driven by Samsung's
21  apparent regret that it did not prioritize Mr. Hieta as a witness during fact discovery, even though
22  his identity and responsibilities were plainly evident to Samsung at the time. Samsung should not
23  be permitted to use the opportunity for limited, remedial depositions afforded by the Court's April
24  12 Order to correct its own perceived litigation error.
25        Samsung does not suggest that Mr. Hieta's name appears in the transcripts recently
26  produced by Apple; there is no testimony from him, or about him. Samsung therefore strains to
27  create a subject-matter nexus: it argues that testimony in the transcripts reveals information about
28  Apple's "sourcing of baseband chipsets," specifically Apple's supplier for certain chipsets. (*See*

APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION TO ENFORCE APRIL 12, 2012 ORDER
CASE NO. 11-CV-01846-LHK (PSG)
sf-3154341

8

Hutnyan Decl. Ex. 16, Sanguinetti Dep. 48:4-14.)  In response to this, Samsung claims that it needs to depose Mr. Hieta, Apple's senior manager of procurement.  Yet the identity and supplier of the baseband chipsets incorporated into Apple's iPhone 3G, iPhone 3GS, and iPad products has long been in the factual record in this case and disclosed to Samsung.  As Samsung acknowledges, Mr. Hieta himself provided this very information in a January 21, 2012 declaration.  (Dkt. No. 660-04.)  Apple also disclosed this information as early as *October 2011* in response to interrogatories, four months before the close of fact discovery.  (Mazza Decl. Ex. 1.)  Accordingly, Samsung's requested deposition of Mr. Hieta would in no way serve the remedial purpose of the Court's April 12, 2012 Order.

Moreover, Samsung cannot possibly argue that the Sanguinetti transcript—the only transcript Samsung identified in its attempt to justify its request to depose Mr. Hieta—was untimely produced.  Mr. Sanguinetti's deposition took place on March 16, 2012, two months *after* the January 15, 2012 deadline to comply with the Court's initial order to produce transcripts and eight days after the close of fact discovery in this case.  (Hutnyan Decl. Ex. 16 at 1.)

Finally, although it is a frank admission of its motives for including Mr. Hieta on its deposition list, Samsung is wrong that it "push[ed]" to depose Mr. Hieta or "timely noticed" his deposition during discovery.  Instead, it served an eleventh-hour deposition notice on February 27, 2012, just before the close of fact discovery, thereby failing to provide Apple with reasonable notice.  (Mazza Decl. ¶ 3).  At the time, Samsung was also requesting additional deposition time with Tony Blevins, a Vice President at Apple who had already been deposed on supply chain issues, including sourcing for Apple's products.  (*Id.*; *id.* Ex. 2 at 21:9-21; 37:5-38:13; 39:21-40:7; 41:23-42:4; 45:3-45:11; 50:3-51:24; 52:16-54:15.)  Given the tardiness of Samsung's requests, the limited fact discovery window remaining, and the substantial overlap in relevant job responsibilities between Mr. Blevins and Mr. Hieta, Apple offered to designate Mr. Blevins' prior testimony as 30(b)(6) testimony and to present him for an additional half day of 30(b)(6) testimony, in exchange for Samsung's agreement to withdraw its Hieta notice.  (*Id.* Ex. 3.)  Apple's position then and now is that a deposition of Mr. Hieta would be unreasonably duplicative.  (*Id.*)  Even though the parties were pressed against the discovery deadline, Samsung

1  failed to even respond to the offer for more than a week. (*Id.* ¶ 6.) Apple nevertheless made
2  Mr. Blevins available for additional testimony on April 3, 2012. (Mazza Decl. ¶ 7.) Any claim
3  that Apple somehow prevented Samsung from bringing the issue to the Court's attention before
4  the close of discovery is therefore unfounded. Accordingly, to the extent that Samsung suffered
5  any prejudice from its inability to depose Mr. Hieta (a dubious claim given the depositions of
6  Mr. Blevins), Samsung has only its own lack of diligence to blame, not Apple's production of
7  transcripts.

              **d.**       **Richard Howarth**

9  Samsung has spent 13 hours on the record deposing Richard Howarth about his role
10 designing the iPhone, in this case and in the 796 ITC investigation. Samsung fails to identify a
11 *single fact* about him or his work in any of the transcripts produced. Samsung vaguely alleges
12 that "the deposition transcripts Apple belatedly produced provide new information within the
13 scope of Mr. Howarth's knowledge." (Motion at 10.) In support of this, Samsung cites
14 transcripts from the depositions of Stephen Lemay and Achim Pantfoerder in the Nokia 701
15 investigation — the investigation that Samsung dropped from its list of cases alleged to have a
16 technological nexus. Neither of the transcripts even mentions the industrial design department in
17 which Mr. Howarth works, let alone Mr. Howarth himself. (Hutnyan Exs. 17 & 18.) All of the
18 testimony of Mr. Lemay that Samsung cites relates to software, not hardware, and, more
19 specifically, to the user interface elements associated with the "magnification loupe" of the virtual
20 keyboard at issue in that case. (*Id.* Ex. 17.) As for the Pantfoerder deposition, the most that can
21 be said is that it relates to the iPhone — nothing in the transcript discusses industrial design or
22 Mr. Howarth.

              **e.**       **Emilie Kim**

24 As an initial matter, Samsung's argument with respect to Ms. Kim stems from an
25 erroneous factual premise: while Samsung suggests that it did not depose Ms. Kim in her
26 personal capacity (Mot. at 10), this simply is not the case. Apple designated Ms. Kim as a
27 30(b)(6) witness on February 23, and the deposition was scheduled for March 7. (Mazza Decl.
28 Ex. 5.) The day before this deposition, Samsung noticed Ms. Kim's individual deposition to take

1  place on that same March 7 date. (*Id.* Ex. 6.)  Indeed, at Ms. Kim's deposition, Samsung marked

2  as deposition exhibits both its 30(b)(6) notice and Ms. Kim's personal deposition notice.  (*Id.*

3  Ex. 7 at 6:25-7:23)  Accordingly, Ms. Kim was deposed both as a 30(b)(6) designee and in her

4  individual capacity on March 7, but Samsung's counsel nonetheless concluded this deposition

5  after approximately two hours, confirming that he had no more questions.  (*Id.* at 65:20-21.)

6  Now, three months later, Samsung seeks additional deposition time with Ms. Kim,

7  purportedly because Ms. Kim has "knowledge reasonably related to subjects revealed in the

8  transcripts" produced by Apple pursuant to the Court's April 12 Order.  However, the transcripts

9  produced by Apple revealed nothing about Ms. Kim or her knowledge; indeed, Samsung's motion

10  does not even suggest that Ms. Kim's name appears in any of the produced transcripts.  While

11  Samsung claims that the transcripts discuss features of the Camera and Photos apps about which

12  Ms. Kim is knowledgeable, including swiping gestures purportedly relevant to the '460 patent

13  (*see* Mot. at 10), Samsung does not identify a single question relating to swiping and/or gestures

14  that it could not equally well have asked Ms. Kim three months ago.

15  In reality, Samsung's request for a second deposition with Ms. Kim is no more than a

16  belated attempt to seek discovery to support a late-developed and untimely infringement theory,

17  wholly unrelated to the recently produced transcripts.  As set forth in Apple's pending Motion to

18  Strike Certain Portions of Samsung's Expert Reports (Dkt. 939-1 at 12-13), on March 22 (two

19  weeks after Ms. Kim's deposition), Samsung disclosed in the opening report of its expert,

20  Dr. Yang, a new infringement theory ███████████████████████████████

21  ████████████████████████████.  This theory is nowhere in Samsung's Infringement

22  Contentions, and for this reason Apple has moved to strike it.  Samsung did not ask Ms. Kim *any*

23  questions about swiping or gestures when it had the opportunity, and its attempt to use the

24  Court's April 12 Order to remedy this failure should be rejected, as any further deposition time

25  with Ms. Kim would serve only to award Samsung discovery it could have sought during the

26  discovery period.

27

28

**B.    Apple Has Already Produced Materials Covered by the April 12 Order in Redacted Form to the Extent Possible and Sought Consent from Third Parties to Produce Documents.**

Samsung seeks an order directing Apple (a) to produce in redacted form documents implicated by the April 12 Order, (b) to confer with Samsung regarding which documents need to be produced in unredacted or partially unredacted form, and (c) to seek consent to remove specific redactions immediately. (Motion at 12.)   Samsung's motion should be denied because Apple has already complied with the April 12 Order and Samsung's proposal would place an undue burden on Apple.

Appropriately, Samsung does not request that Apple be compelled to produce all documents covered by the April 12 Order in "unredacted" form in violation of protective orders issued in other matters.  As discussed in Apple's Motion for Clarification and supporting declaration [Dkt. Nos. 885 and 887] such a request would have been unreasonable because Apple does not control documents which its counsel is legally bound not to provide to Apple. *Nissei America, Inc. v. Cincinnati Milacron, Inc.*, 95 F.R.D. 471, 475 (N.D. Ill. 1982) (plaintiffs "need not produce [material] that is subject to [the ITC] protective order since it is not available to plaintiffs or within their possession, custody, or control within the contemplation of Rule 33(a) or Rule 34(a) of the Federal Rules."); *see also* Fed. R. Civ. P. 34(a)(1); *U.S. v. Int'l Union of Petrol. & Indus. Workers,* 870 F.2d 1450, 1452 (9th Cir. 1989) ("control" within meaning of Rule 34 defined as "legal right to obtain documents upon demand").  Apple has already sought consent to produce unredacted documents — including filing a motion with the ITC to allow such production.  Unless Apple obtains consent, however, Apple's outside counsel cannot even provide copies of the relevant documents to Apple where certain protective orders or court rules prohibit.  Therefore:

- Apple has already produced all court documents from the Nokia Delaware case, the Motorola Wisconsin (10-cv-00661) case, and the HTC ITC (337-TA-797) investigation unredacted.  (Mazza Decl. ¶ 11.)

- Apple has produced all court documents from the HTC Delaware case (10-cv-00167) unredacted, except for four documents that contain Google CBI for which Google has refused to provide consent.
- Apple has produced all court documents from the Elan (N.D. Cal. Case No. 09-cv-01531 and ITC Inv. No. 337-TA-714) cases unredacted, except for certain docket entries containing Elan CBI for which Elan has refused to provide consent. (*Id.* ¶ 13.)
- Apple has produced all court documents from the Motorola Wisconsin/Illinois (Case No. 11-cv-8540, formerly W.D. Wis. 10-cv-00662) and ITC 750 (Inv. No. 337-TA-750) matters unredacted, except for certain documents that contain the CBI of nonparties who have not provided consent upon request. (*Id.* ¶ 14.)

Samsung requests that the Court order Apple to produce immediately in redacted form all documents that Apple has not yet produced. The April 12 Order requires only production of *unredacted* documents, and now is not the time to require Apple to produce more. Several of the nine cases on Samsung's list are ongoing. It is not reasonable to request that Apple constantly monitor ongoing litigation for new filings, continuously send out letters to numerous third-parties, and be always preparing redacted copies just in case the third-parties object. As for existing court documents, although it has not been and should not be ordered to do so, Apple has already prepared redacted versions.

- Apple produced redacted versions of the four documents HTC Delaware case (10-cv-00167) documents for which Google refused consent. (*Id.* ¶ 12.)
- Counsel for Apple in the *Elan* matters has prepared and provided to Elan redacted versions of all remaining documents in the Elan matters to allow Elan's counsel to confirm that the redactions are acceptable, and has given Elan's counsel until June 11 to review them. Apple will make any modifications to the redactions that Elan requests and then produce the remainder. (*Id.* ¶ 13.)
- Likewise, counsel for Apple in the *Motorola* matters has prepared proposed redacted versions of all remaining documents. Counsel has written again to each

1         of the third parties who have ignored Apple's previous request for consent.

2         Unless otherwise instructed, counsel will provide the redacted versions to

3         Samsung.  (*Id.* ¶ 14.)

4     Samsung requests that the Court order Apple to "confer" with Samsung regarding which

5 documents need to be produced in unredacted form.  This request is ironic because Apple already

6 attempted to engage Samsung in such a negotiation shortly after the April 12 Order issued, but

7 Samsung refused.  As explained in Apple's motion for clarification, Apple informed Samsung

8 that other protective orders and rules prohibited Apple from producing all unredacted court

9 documents without consent.  Apple asked to confer with Samsung regarding which nonpublic

10 items Samsung truly needed so that Apple could narrow its requests of third parties.  (Mazza

11 Declaration in Support of Motion for Clarification [Dkt. No. 887-0] ¶ 18.)  Samsung flatly

12 rejected this request.  (*Id.* ¶ Ex. 3 [Dkt. No. 887-10] at 3 (rejecting Apple's request that Samsung

13 identify nonpublic items it wanted to receive).)  Now, there is little additional effort to be saved

14 through such a conference.  Apple has already done all it can by producing *all* unredacted court

15 documents it is able to produce, has pressed *all* other parties for consent where such consent is

16 required, and has even filed a motion before the ITC.  (Mazza Decl. ¶¶ 11-15.)

17     In sum, the document production remedy that Samsung seeks is both unwarranted and

18 unnecessary.

19 **IV.  CONCLUSION**

20     Samsung's motion should be denied.

| | |
|---|---|
| Dated:  June 5, 2012 | HAROLD J. MCELHINNY<br>MICHAEL A. JACOBS<br>JENNIFER LEE TAYLOR<br>ALISON M. TUCHER<br>RICHARD S.J. HUNG<br>JASON R. BARTLETT<br>MORRISON & FOERSTER LLP |
| | By:  */s/ Michael A. Jacobs*<br>        MICHAEL A. JACOBS |
| | Attorneys for Plaintiff<br>APPLE INC. |