HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　Counterclaim-Plaintiffs,<br>　　v.<br><br>APPLE INC., a California corporation,<br><br>　　　　　Counterclaim-Defendant. | Case No. 11-CV-01846-LHK<br><br>**APPLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NUMBER 7,362,867 AND INVALIDITY OF U.S. PATENT NUMBERS 7,456,893 AND 7,577,460**<br><br>Date:  June 21, 2012<br>Time:  1:30 p.m.<br>Place:  Courtroom 4, 5th Floor<br>Judge:  Hon. Lucy H. Koh<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**PUBLIC REDACTED COPY** |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1
II. NON-INFRINGEMENT OF THE '867 PATENT .................................................1
III. INVALIDITY OF THE '893 PATENT...................................................................4
IV. INVALIDITY OF THE '460 PATENT...................................................................8
    A. Samsung Does Not Dispute that the Plain Language of the Claim Is Ambiguous....................................................................................................8
    B. None of the Three Possible Interpretations of Claim 1 Finds Support in the Specification .................................................................................................8
    C. The Prosecution History also Fails to Clarify the Meaning of Claim 1.................11
    D. Samsung Does Not Dispute the Inventors' Inability to Understand Claim 1 ........12
    E. Samsung and Its Experts Cannot Agree on the Interpretation of Claim 1.............13
V. CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITIES

Federal Cases

*Amgen, Inc. v. Chugai Pharm. Co.*,
  927 F.2d 1200 (Fed. Cir. 1991) ........................................................................................ 9, 11, 12

*Cat Tech LLC v. TubeMaster, Inc.*,
  528 F.3d 871 (Fed. Cir. 2008) ................................................................................................ 2, 3

*Cleveland v. Policy Mgmt. Sys. Corp.*,
  526 U.S. 795 (U.S. 1999) ............................................................................................................ 5

*Collaboration Props. v. Tandberg ASA*,
  No. C 05-01940 MHP, 2006 U.S. Dist. LEXIS 42465 (N.D. Cal. June 22, 2006) ................. 5, 6

*Collegenet, Inc. v. Xap Corp.*,
  442 F. Supp. 2d 1036 (D. Or. 2006) ........................................................................................... 5

*CSB-Sys. Int'l, Inc. v. SAP Am., Inc., C.A. No.*
  C.A. No. 10-2156, 2012 U.S. Dist. LEXIS 45847 (E.D. Pa. Mar. 30, 2012) ............................. 5

*Davis v. Brouse McDowell, L.P.A.*,
  596 F.3d 1355 (Fed. Cir. 2010) .................................................................................................. 5

*Freedom Wireless, Inc. v. Alltel Corp.*,
  No. 2:06cv504 (TJW-CE), 2008 U.S. Dist. LEXIS 82785 (E.D. Tex. Oct. 17, 2008) ............... 5

*In re Katz Interactive Call Processing Patent Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011) .......................................................................................... 4, 6, 7

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005) .................................................................................................. 4

*Leader Techs., Inc. v. Facebook, Inc.*,
  770 F. Supp. 2d 686 (D. Del. 2011) ........................................................................................... 5

*Ricoh Co. v. Katun Corp.*,
  486 F. Supp. 2d 395 (D.N.J. 2007) ............................................................................................. 5

*S3 Inc. v. NVIDIA Corp.*,
  259 F.3d 1364 (Fed. Cir. 2001) .................................................................................................. 7

*Sienna, LLC v. CVS Corp.*,
  No. 06 Civ. 3364 (DLC), 2007 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 3, 2007) ............................ 5

*Solomon v. Kimberly-Clark Corp.*,
  216 F.3d 1372 (Fed. Cir. 2000) ................................................................................................ 12

*SynQor, Inc. v. Artesyn Techs., Inc.*, C.A. NO.
  2:07-CV-497-TJW-CE, 2010 U.S. Dist. LEXIS 74808 (E.D. Tex. July 26, 2010) .................... 5

*Toshiba Corp. v. Juniper Networks, Inc.*, C.A. No.
  03-1035-SLR, 2006 U.S. Dist. LEXIS 44348 (D. Del. June 28, 2006) ................................. 5, 6

*Wago Verwaltungsgesellschaft Mbh v. Rockwell Automation*,
  2012 U.S. Dist. LEXIS 30703 (N.D. Ohio Mar. 7, 2012) ...................................................... 5, 6

*Vistan Corp. v. Fadei USA, Inc.*,
  No. C 10-4862 JCS, 2012 U.S. Dist. LEXIS 59348 (N.D. Cal. Apr. 27, 2012) ........................ 5

*Yodlee, Inc. v. Cashedge, Inc.*,
  No. C 05-01550 SI, 2006 U.S. Dist. LEXIS 86699 (N.D. Cal. Nov. 29, 2006) ........................ 5

Federal Statutes

35 U.S.C. § 11 .................................................................................................................................. 7

Federal Rules

F.R.C.P. 8(d)(2)-(3) ........................................................................................................................ 9

## I. INTRODUCTION

Apple Inc. ("Apple") respectfully submits this reply brief in support of its motion for summary judgment of non-infringement of claims 25 and 26 of U.S. Patent No. 7,362,867 ("the '867 patent") and for summary judgment of invalidity of claims 10 and 12 of U.S. Patent No. 7,456,893 ("the '893 patent") and claim 1 of U.S. Patent No. 7,577,460 ("the '460 patent").[1]

## II. NON-INFRINGEMENT OF THE '867 PATENT

The parties did not ask the Court to interpret any limitations of the '867 patent. However, faced with the prospect of summary judgment, Samsung belatedly seeks a proposed construction for "scrambling code" and offers both intrinsic and extrinsic evidence in an attempt to support its new construction, including a further declaration from its expert (Dr. Wesel) – who now offers almost 16 pages of analysis in support of Samsung's proposed construction. Putting aside the untimeliness of these arguments, the greater problem for Samsung is that its arguments ignore the plain meaning of the asserted claims. In light of the plain meaning and the undisputed facts, Apple is entitled to summary judgment of non-infringement of the '867 patent.

Samsung's newly proposed construction of "scrambling code" is not only inconsistent with the plain meaning, but would in fact eviscerate the meaning of the claim term "scrambling." Samsung's expert agrees that a code is not a "scrambling code" unless it can be used for "spreading" – put simply, to be a "scrambling" code, the code must actually be used to scramble, or spread, the data. (*See* 4/23/12 Wesel Dep. at 164:15-17 (Selwyn Decl., Ex. 5, Dkt. 925-10).) However, if one replaces the "scrambling code" limitation of claim 25 with Samsung's proposed construction ("a code generated by adding a first m-sequence and a second m-sequence" (Opp. at 3)), this fundamental concept of a code used to "scramble" or "spread" data disappears entirely:

---

[1] Plaintiff and Counterclaim Defendant Apple Inc.'s Notice of Motion and Motion for Summary Judgment of Non-Infringement of U.S. Patent Number 7,362,867 and Invalidity of U.S. Patent Numbers 7,456,893 and 7,577,460, Dkt. 925-4 will be hereinafter referred to as "Mot." Samsung's Opposition to Apple's Motion for Summary Judgment, Dkt. 1005, will be hereinafter referred to as "Opp."

| '867 Patent, Claim 25 ("Scrambling Code" Limitation) | "Scrambling code" limitation replaced with Samsung's proposed construction |
|---|---|
| at least one adder for generating a … Gold code as a … primary scrambling code by adding a … shifted first m-sequence and the second m-sequence | at least one adder for generating a … Gold code as a … primary [code generated by adding a first m-sequence and a second m-sequence] by adding a … shifted first m-sequence and the second m-sequence |

As a matter of law, because Samsung's proposed construction would therefore eliminate the "scrambling" limitation of claim 25, it cannot be correct.  *See, e.g.*, *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to adopt a claim construction which would render a claim limitation meaningless).

Claim 25 of the '867 patent requires "generating a … Gold code as a … primary scrambling code."  That portion of the claim imposes two separate requirements:  (1) a Gold code must be generated and (2) the primary scrambling code must *be* a Gold code.  Samsung's attempt to conflate these two separate requirements of claim 25 is improper.  A product cannot infringe simply by generating a Gold code.  Similarly, a product cannot infringe simply by generating a scrambling code.  The plain language of claim 25 requires generating a Gold code that *is* a scrambling code.

Samsung's opposition fails to make this showing.  Samsung's infringement argument hinges on the contention that ████████████████████████████████████████ but that is insufficient under the plain meaning of claim 25.  Samsung can go no further because the undisputed facts demonstrate that ████████████████████████████████████████

████████████████████████████████████████

(*See id* at 5.)  As detailed in Apple's opening brief, under the standard, "scrambling codes" and "Gold codes" are distinct entities, ████████████████████████████████

████████████████████████████████████████ (*See* Mot.

1  at 5-7.[2])  ▮

2  ▮

3  ▮ [3]

4  Samsung's opposition also misapprehends Apple's view of the "plain meaning" of claim

5  25. It is not Apple's position that a "scrambling code" must be a complex code sequence or

6  cannot be a sum of two m-sequences. (*See* Opp. at 3.) Rather, a code is not a "scrambling code"

7  within the meaning of claim 25 unless the code is used for scrambling (or spreading) the data.

8  (*See* Mot. at 6.) As explained in Apple's opening brief, ▮

9  ▮

10 ▮

11 ▮

12 ▮

13 ▮

14 Finally, there is no merit to Samsung's claim that Apple "essentially admitted

15 infringement" of the '867 patent (Opp. at 7) by arguing in its earlier motion for partial summary

16 judgment that it is licensed to practice the patent under FRAND terms. The suggestion that

17 Apple somehow "admitted that this patent is essential to the 3GPP standards" (*id.*) ignores the

18 express language of Apple's partial summary judgment motion – which Samsung omits from its

19 Opposition to the present motion. As is evident on its face, Apple's partial summary judgment

20 motion was based upon Samsung's FRAND declarations and Samsung's own assertions that its

---

[2]  As set forth in Apple's opening brief, Samsung's expert admitted at his deposition that ▮ (*See* Mot. at 6 (quoting Dr. Wesel's deposition testimony).) Notably, while Dr. Wesel submitted a 45-page declaration in opposition to Apple's motion for summary judgment on the '867 patent, Dkt. 1003, there is nothing in that new declaration that addresses this key admission.

[3]  Samsung asserts only literal infringement of claim 25 of the '867 patent. As noted in Apple's opening brief (Mot. at 11-12), Samsung's Infringement Contentions did not articulate a theory of infringement under the doctrine of equivalents, and Samsung's expert offered no opinion in his opening report under the doctrine of equivalents. Samsung's opposition is similarly devoid of any argument for infringement under the doctrine of equivalents.

1  patents are standards-essential, which Apple assumed to be true "solely for purposes of [its]

2  motion."  (Apple's Motion for Partial Summary Judgment at 3, 20-24 (Dkt. 660-3).)  However,

3  that motion also included an express statement that "Apple disputes that any of the declared-

4  essential patents that Samsung has asserted against Apple is actually essential to the UMTS

5  standard and actually embodied in the [] chipsets incorporated into Apple products."  (*Id.* at 3.)

6  Plainly, there was no admission of infringement or that the '867 patent is *in fact* essential to the

7  standard.

## III.    INVALIDITY OF THE '893 PATENT

Samsung's opposition fails to address or even mention the issue central to Apple's

motion: Apple's and Samsung's experts agree that claim 10 of the '893 patent requires user

action.  (*See* Mot. at 15.)  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ; *see also  IPXL*

*Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005); *In re Katz*

*Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) ("Katz's claims .

. . create confusion as to when direct infringement occurs because they are directed both to

systems and to actions performed by 'individual callers.'").  On the point, Apple's expert, Dr.

Dourish opined that

> the language [of claim 10] indicates that user action is required by the claim. Thus it is unclear to me whether the language of claim 10 is met when one creates an apparatus that allows the user to switch from the stored-image display mode to the photographing mode and back to the stored image display mode, or when the user actually switches from the stored-image display mode to the photographing mode and back to the stored-image display mode.

(Dourish '893 Invalidity Report ¶ 204 (Selwyn Decl., Ex. 10, Dkt. 925-15); Mot. at 15.)

Similarly, Samsung's expert, Dr. Yang, testified:

[REDACTED]

(5/9/12 Yang Rough Dep. at 80:25-81:12 (Selwyn Decl., Ex. 12, Dkt. 925-17); Mot. at 15.)  The parties' experts therefore agree that user action is required to practice claim 10.[4]

While Samsung cited a litany of cases in support of its Opposition, those cases are readily distinguishable, as in none of those cases did the parties' experts agree (as they do here) that user

---

[4] Although Dr. Yang testified under oath as quoted above, Samsung submitted a further declaration from Dr. Yang with its Opposition, in which he seemingly recants or contradicts his sworn testimony.  (Yang Decl. at 3-6 (Dkt. 1001).)  Apparently realizing that it would be improper (or at least unconvincing) to rely on a declaration that contradicts sworn testimony, in its Opposition, with respect to the '893 patent, Samsung *only* cites the Yang Declaration for a description of the '893 patent.  (Opp. at 7.)  However, to the extent Samsung seeks to rely on the Yang Declaration more broadly, Apple respectfully requests that ¶¶ 20-23 of the Yang Declaration be struck or otherwise disregarded by the Court.  Paragraphs 20 and 23 contain new opinion that could have been and should have been stated in Dr. Yang's rebuttal report, but were not.  (*Compare* Yang Decl., Dkt. 1001, ¶¶ 20-23 *with* Yang Validity Report, Declaration of Peter Kolovos in Support of Apple's Motion for Summary Judgment ("Kolovos Decl.") Ex. 1, at ¶ 142.) Further, paragraphs 20-22 of Dr. Yang's new declaration contradict his prior deposition testimony and are therefore improper. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (requiring an explanation when affidavits submitted with summary judgment oppositions contradict earlier sworn deposition testimony); *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1362 (Fed. Cir. 2010) cert. denied, 131 S. Ct. 118, 178 (2010) ("In view of [plaintiff's expert's] inconsistent deposition testimony and his failure to include the patentability opinion of paragraph 5 in his expert report, the court did not abuse its discretion in striking paragraph 5.").

action was required to practice the claim.[5]  Moreover, unlike the cases on which Samsung relies, claim 10 of the '893 patent clearly implicates user action.[6]  Therefore, on this record, granting summary judgment of indefiniteness in favor of Apple would not disturb precedent that the holding of *IPXL* is limited and narrow.

Samsung's attempt to distinguish *In re Katz*, 639 F.3d at 1318, is similarly unavailing, as a side-by-side comparison of the claim at issue in that case and claim 10 of the '893 patent demonstrates:

---

[5]  *See Vistan Corp. v. Fadei USA, Inc.*, No. C 10-4862 JCS, 2012 U.S. Dist. LEXIS 59348, at *25 (N.D. Cal. Apr. 27, 2012) (no agreement between experts that claim required user action to be practiced); *Yodlee, Inc. v. Cashedge, Inc.*, No. C 05-01550 SI, 2006 U.S. Dist. LEXIS 86699, at *6-19 (N.D. Cal. Nov. 29, 2006) (same); *Collaboration Props. v. Tandberg ASA*, No. C 05-01940 MHP, 2006 U.S. Dist. LEXIS 42465, at *19-20 (N.D. Cal. June 22, 2006) (same); *Collegenet, Inc. v. Xap Corp.*, 442 F. Supp. 2d 1036, 1062 (D. Or. 2006) (same); *Toshiba Corp. v. Juniper Networks, Inc.*, C.A. No. 03-1035-SLR, 2006 U.S. Dist. LEXIS 44348, at *13-14 (D. Del. June 28, 2006) (same); *SynQor, Inc. v. Artesyn Techs., Inc.*, C.A. NO. 2:07-CV-497-TJW-CE, 2010 U.S. Dist. LEXIS 74808, at *96 (E.D. Tex. July 26, 2010) (same); *CSB-Sys. Int'l, Inc. v. SAP Am., Inc.*, C.A. No. 10-2156, 2012 U.S. Dist. LEXIS 45847, at *40 (E.D. Pa. Mar. 30, 2012) (same); *Wago Verwaltungsgesellschaft Mbh v. Rockwell Automation*, 2012 U.S. Dist. LEXIS 30703, at *19 (N.D. Ohio Mar. 7, 2012) (same); *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 710 (D. Del. 2011) (same); *Freedom Wireless, Inc. v. Alltel Corp.*, No. 2:06cv504 (TJW-CE), 2008 U.S. Dist. LEXIS 82785, at *40-41 (E.D. Tex. Oct. 17, 2008) (same); *Ricoh Co. v. Katun Corp.*, 486 F. Supp. 2d 395, 403 (D.N.J. 2007) (same); *Sienna, LLC v. CVS Corp.*, No. 06 Civ. 3364 (DLC), 2007 U.S. Dist. LEXIS 2, at *22 (S.D.N.Y. Jan. 3, 2007) (same).

[6]  Compare the language in claim 10 of the '893 patent requiring extensive user involvement ("A digital image processing apparatus comprising: … wherein upon a ***user performing*** a mode-switching operation defined ***by switching from*** the stored-image display mode ***to*** the photographing mode ***and back to*** the stored image display mode…") with the claims at issue in cases cited by Samsung where summary judgment has been denied.  *See, e.g.*, *Collaboration Properties*, 2006 U.S. Dist LEXIS 42465 at *1 ("A teleconferencing system for conducting a teleconference among a plurality of participants, comprising: … wherein, the system is ***configured*** to reproduce images, based on data signals shared along the data path…") (emphasis added); *Toshiba*, 2006 U.S. Dist. LEXIS 44348 at *11 n.1 ("A network interconnection ***apparatus*** for transferring packets at a boundary of a plurality of networks, the apparatus comprising: a control message processing ***unit configured to communicate with*** a previous hop node…") (emphasis in original); *Wago Verwaltungsgesellschaft*, 2012 U.S. Dist. LEXIS 30703 at *2, *15-16 ("An input/output ***device*** for a data bus, said device being located on a support rail and being adapted to be positioned adjacent other such devices, said device comprising: … ***configuring*** the device with other such devices as series terminals …) (emphasis added).

| In re Katz Interactive Call Processing Claim | '893 Patent, Claim 10 |
|---|---|
| 1. An interface control system for use with, (1) a communication facility including remote terminals for individual callers to make calls, wherein said remote terminals comprise a telephone capability including voice communication means and some of said remote terminals comprise digital input means for providing data, (2) a multiple port, multiple format processor for concurrently processing data from a substantial number of callers in anyone of a plurality of formats, said communication facility automatically providing call data signals, as to indicate called data (DNIS), to select a specific format from said plurality of formats, and (3) a plurality of live operator attended terminals, for a plurality of formats, said interface control system comprising:<br>…<br>   interface means for providing automated voice messages relating to said specific format to certain of said individual callers, *wherein said certain of said individual callers digitally enter data, including at least caller information data, through said digital input means*;<br>… | 10. A digital image processing apparatus comprising:<br>   an optical system for receiving a light reflected from a subject;<br>…<br>*wherein upon a user performing a mode-switching operation defined by switching from the stored-image display mode to the photographing mode and back to the stored image display mode* the controller causes the display screen to first display a single image file that was most recently displayed before the mode-switching operation, the single image file being different from a most recently stored image file, and the single image file being first displayed irrespective of a duration that the camera was used in the photographing mode during the mode switching operation. |
| (Kolovos Decl. Ex. 2, U.S. Patent No. 5,917,893, claim 1, cited in *In re Katz*, 639 F.3d at 1308, 1318.[7]) | (Samsung's '893 Patent (Selwyn Decl., Ex. 2, 925-7).) |

The Federal Circuit found that the claims in *Katz* fell under the rationale of *IPXL* because "Katz's claims … create confusion as to when direct infringement occurs because they are directed both to systems and to actions performed by 'individual callers.'" *In re Katz*, 639 F.3d at 1318.  In both the claim at issue in *Katz* and the asserted Samsung claim, the user is the subject performing the action.  (Compare the *In re Katz* claim language "wherein said certain of said *individual callers … enter* data…" to Samsung's '893 Patent's requirement of a "user performing a mode-switching operation defined by switching from the stored-image display mode to the

---

[7]   Coincidentally and confusingly, the patent in issue in *In re Katz* and Samsung's patent both end in "'893."

1  photographing mode and back to the stored image display mode".)  Both claims require the user
2  to perform an action.  For the reasons stated herein and in Apple's opening brief, Dkt. 925-4 at
3  12-16, independent claim 10 and dependent claim 12 are invalid under 35 U.S.C. § 112, ¶ 2,
4  because the claims do not apprise a person of ordinary skill in the art of their scope.

## IV.     INVALIDITY OF THE '460 PATENT

### A.     Samsung Does Not Dispute that the Plain Language of the Claim Is Ambiguous

Samsung does not dispute that the plain language of claim 1 of the '460 patent has no clear meaning.  Unlike the *S3* case cited by Samsung – where the court found that the specification and figures "explain[] and illustrate[]" the contested interaction between claim terms (*see S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1368–369 (Fed. Cir. 2001)) – here Samsung attempts to manufacture "support" in the specification and file history for its current interpretation of claim 1 where none exists.  Rather, as described below, the specification and file history provide no support for Samsung's (or any other) interpretation of claim 1.  Because claim 1 is insolubly ambiguous to a person of ordinary skill in the art, the Court should find it invalid as indefinite.

### B.     None of the Three Possible Interpretations of Claim 1 Finds Support in the Specification

Even when read in light of the specification, claim 1 does not reasonably apprise those skilled in the art of the scope of the invention.  Contrary to Samsung's assertions, the first interpretation of claim 1 identified by Apple and adopted by Samsung as its interpretation (sending two separate email messages from two separate email transmission sub-modes) finds no support in the specification or file history.[8]

As set forth in Apple's opening brief, the specification only describes *one* "E-mail transmission sub-mode."  (Mot. at 16-17.)  Apparently acknowledging this, Samsung does not even assert that the '460 patent discloses two ████████████████████████████

---

[8] ████████████████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ████████████████  Samsung also attempts to concoct "support" for the first interpretation through its submission of the Yang Declaration.  (*See* Yang Decl. ¶¶ 27–28 (Dkt. 1001).[9])  However, the new arguments raised in the Yang Declaration ignore the fact that the specification only ever refers to a single E-mail transmission sub-mode, denoted consistently by the single reference number 610 in Figs. 6, 8, and 9 (and throughout the specification) of the patent.



FIG. 6 (excerpt)                FIG. 8 (excerpt)                FIG. 9 (excerpt)

In paragraph 27 of his Declaration, Dkt. 1001, Dr. Yang unsuccessfully attempts to find support for Samsung's interpretation in FIG. 9 and the related detailed description, i.e., "[u]pon selection of *the* E-mail transmission sub-mode, the portable phone controller 32 controls the OSD 40 to display a message requesting entry of the address of the other party on the color LCD 48 in step 900 of FIG. 9."  ('460 patent at 12:4–7 (Selwyn Decl. Ex. 3, Dkt. 925-8) (emphasis added); Srivastava Invalidity Report ¶ 338 (Selwyn Decl. Ex. 22, Dkt. 925-27).)  Tellingly, Dr. Yang chooses to omit the entirety of FIG. 9 in his declaration, deleting the depiction of "E-mail transmission sub-mode 610," the single and only E-mail transmission sub-mode disclosed in the specification, at the top of FIG. 9.

Put simply, there is no support in the specification for a "first" and a "second" E-mail transmission sub-mode, let alone for how to practice the claimed method.

---

[9]    Apple objects to Paragraphs 27-34 of the Yang Declaration as untimely expert opinions under Fed. R. Civ. P. 26(a)(2).  These paragraphs contain new opinions that could have been and should have been stated in Dr. Yang's rebuttal report, but were not.  (*Compare* Yang Decl. ¶¶ 27–34, Dkt. 1001, *with* Yang Validity Report, Declaration of Peter Kolovos in Support of Apple's Motion for Summary Judgment ("Kolovos Decl.") Ex. 1, at ¶¶ 103–111.)  *See also supra* n.4.

1    Samsung also incorrectly asserts that because Apple's expert argued that certain prior art
2 references anticipate claim 1, the claim cannot be indefinite.  This argument is contrary to
3 common sense, legal precedent, and the Federal Rules of Civil Procedure, which expressly allow
4 parties to argue in the alternative.  F.R.C.P. 8(d)(2)-(3).  *See also Amgen*, *Inc. v. Chugai Pharm.*
5 *Co.*, 927 F.2d 1200, 1204 (Fed. Cir. 1991) (affirming finding of indefiniteness where defendant
6 argued non-infringement in the alternative).  Indeed, Samsung ignores Dr. Srivastava's explicit
7 statement in his expert report that his primary opinion is that claim 1 is indefinite.  (Srivastava
8 Invalidity Report ¶ 61 (Stake Decl., Ex. 3, Dkt. 1002-3) ("Likewise, it is my opinion that the
9 claims of the '460 patent are indefinite, for the reasons articulated below.  Nothing stated here or
10 in the attached claims charts should be construed as an admission or suggestion that I believe the
11 claims of the '460 patent are not indefinite.  I offer these opinions as alternative grounds for
12 invalidating the '460 patent, if the fact finder were to disagree with my opinion that the claims
13 are indefinite.").)  The deposition testimony of Dr. Srivastava cited by Samsung underscores this
14 point:

> Q: Can we agree that at the very least this claim requires the three core functions that Dr. Yang opined on? . . .
>
> A: ***I do find the claim overall confusing as to what method it is citing.  Whether there are two E-mail sub-modes or not, the claim language does use the first E-mail and the second E-mail sub-mode. As I alluded to in my report, the specification is at variance with that.*** But in terms of does [claim 1] talk about sending an E-mail text alone, an E-mail with text and image and sequentially scrolling through the images, yes, the claim does talk about these three things.

21 (Srivastava Dep. at 76:4-24 (Stake Decl. Ex. 2, Dkt. 1002-2) (emphasis added).[10])
22    Finally, Samsung asserts – in another newly offered argument by Dr. Yang – that the
23 second and third possible interpretations identified by Apple (resulting in sending a single E-mail
24 message) do not require performance of all claimed functions.  (Yang Decl. ¶ 34 (Dkt. 1001).)
25 This is a red herring.  Samsung seems to be arguing that because the first interpretation is correct

---

[10] Further, whether or not claim 1 refers to certain "core functions" does not clarify what those functions mean, how those functions must be performed, and even whether all of them must be performed in order to infringe claim 1.

1  (which it is not), the second and third interpretations are necessarily incorrect because they do

2  not require all the functions required by the first interpretation.   In addition, although a person of

3  ordinary skill in the art would not be able to determine whether claim 1 requires sending one or

4  two E-mail messages, each of the three possible interpretations identified by Apple includes the

5  recited "first" and "second" E-mail transmission sub-mode and sequentially displaying "other"

6  images through the use of scroll keys.  Claim 1's insoluble ambiguity lies in *how* the "first" and

7  "second" E-mail transmission sub-modes are used to carry out the claimed data transmission

8  method.  For example, even accepting for the sake of argument that claim 1 recites Samsung's

9  three "core functions," it is impossible to determine whether the claimed method requires that

10 emailing text, and emailing text and an image, are performed together, separately, or as

11 alternatives, and whether the result is one or two E-mail messages.  The specification simply

12 provides no description that helps to clarify this insoluble ambiguity.

13        **C.**       **The Prosecution History also Fails to Clarify the Meaning of Claim 1**

14        Samsung places undue weight on the prosecution history.  Contrary to Samsung's

15 assertions, the Examiner's mere repetition of the claim limitations in rejecting the claims

16 provides no information about whether the Patent Office "readily understood" or "readily

17 recognized" any aspect of claim 1.  (Opp. at 17; Yang Decl. ¶ 30 (Dkt. 1001).)  The prosecution

18 history similarly does not provide any guidance as to which of the three possible interpretations

19 should be attributed to the claimed method as a whole.  The Examiner's identification of certain

20 individual claim limitations in the prior art does not favor any one of the three interpretations or

21 shed light on how to practice the claim.

22        Apple does not dispute that the prior art teaches a "first" and "second" E-mail

23 transmission sub-mode.  However, the prosecution history (like the specification) is silent on

24 *how* the first and second E-mail transmission sub-modes are related to one another and/or to the

25 claimed sequential display of "other" images, and on what exactly is required to practice the

26 claimed method.  As set forth in Apple's opening brief, a person of ordinary skill in the art would

27 not understand whether claim 1 is infringed by: (1) transmission of an E-mail message from the

28

1  first E-mail transmission sub-mode *and* transmission of another E-mail from the second E-mail
2  transmission sub-mode; (2) transmission of a text E-mail from the first E-mail transmission sub-
3  mode *or* transmission of an E-mail with an image from the second E-mail transmission sub-
4  mode; or (3) transmission of information from the first E-mail transmission sub-mode to the
5  second E-mail transmission sub-mode, followed by transmission of an E-mail with an image
6  from the second E-mail transmission sub-mode.  Therefore, claim 1 is invalid as indefinite.

**D.  Samsung Does Not Dispute the Inventors' Inability to Understand Claim 1**

Despite downplaying the importance of inventor testimony, Samsung attempts to use it to salvage claim 1.  (*See* Opp. at 18.)  According to Samsung, the inventor testimony ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  As an initial matter, whether or not claim 1 discloses three functions is irrelevant to whether a person of ordinary skill in the art would understand whether and how the claim requires performance of all or some subset of those functions.  Further, Mr. Oh's testimony, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬ *see* Oh Dep. 35:9-36:16 (Stake Decl., Ex. 10, Dkt. 1002-10), ▬▬▬▬▬ ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*See* Mot. at 19.)

Moreover, as Samsung recognizes, inventor testimony can support an indefiniteness finding when the specification and prosecution history shed no light on the claim language.  *See, e.g.*, *Amgen v. Chugai Pharm. Co.*, 927 F.2d 1200, 1218 (Fed. Cir. 1991).[12]  As discussed above

---

[11]  Incredibly, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Oh Dep. at 47:7-13 (Stake Decl., Ex. 10, Dkt. 1002-10).)  This testimony sheds no light on the proper interpretation of claim 1.

[12]  Samsung's reliance on *Solomon v. Kimberly-Clark Corp.* is inapposite.  In *Solomon*, the inventor testified about her subjective understanding of her invention which defendants interpreted to be different from what was claimed.  216 F.3d 1372, 1376 (Fed. Cir. 2000).  In contrast, the inventors here cannot even understand what was claimed.

1  and in Apple's opening brief, that is the case here. With one exception, Samsung does not
2  dispute that its inventors could not explain or define what claim 1 means, including whether
3  claim 1 requires sending two E-mail messages. (Mot. at 18-19.)
4  
5  ████████████████████████ This testimony speaks for itself, despite Samsung's attempts to
6  devalue it by denigrating the question. At bottom, the inventors' inability to understand their
7  own patent claim underscores the insoluble ambiguity of claim 1 to those skilled in the art.

### E. Samsung and Its Experts Cannot Agree on the Interpretation of Claim 1

9  Samsung does not dispute that its infringement contentions describe performing the
10 claimed steps in order by first opening the Mail application, returning to the Home screen to
11 open the Photos application, navigating between image files, opening the Mail application again,
12 and opening the Photos application again. (Mot. at 19-20.)
13 
14 Neither of these two interpretations bears any relation to Samsung counsel's description to Dr.
15 Sukumar of the patented feature as the transmission of a *single* email message with an image in
16 the body and not as an attachment. Samsung suggests that Dr. Sukumar had focused on only the
17 final limitation of claim 1 because that was the "inventive aspect[] of the '460 patent." (Opp. at
18 20.) But as Samsung itself has admitted, the final limitation already existed in the prior art, and
19 it was not until the applicants added two *other* limitations during prosecution that claim 1 was
20 allowed. (Opp. at 16-18.) Curiously, Dr. Sukumar does not even address those limitations in his
21 expert report. Ultimately, Samsung and its experts have advanced interpretations of claim 1 that
22 are inconsistent with one another, let alone with any "clear meaning" of the claim, which only
23 further underscores the indefiniteness of claim 1. (Mot. at 19-21.)

---

[13] Apple has moved to strike the new infringement theory, among others, from Dr. Yang's expert report as untimely disclosed pursuant to Patent Local Rule 3-1. (*See* Apple's Motion to Strike Portions of Samsung's Expert Reports (Dkt. 939-1).)

## V. CONCLUSION

For the foregoing reasons, as well as the reasons stated in its Opening Brief, Dkt. 925-4, Apple respectfully requests that the Court grant its motion for summary judgment of non-infringement of the '867 patent, and for summary judgment of invalidity of claims 10 and 12 of the '893 patent and claim 1 of the '460 patent.

Dated:  June 7, 2012

/s/ Mark D. Selwyn
Mark D. Selwyn (SBN 244180)
(mark.selwyn@wilmerhale.com)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

William F. Lee (admitted *pro hac vice*)
(william.lee@wilmerhale.com)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 7, 2012, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ Mark D. Selwyn
Mark D. Selwyn