1  HAROLD J. MCELHINNY (CA SBN 66781)
   hmcelhinny@mofo.com
2  MICHAEL A. JACOBS (CA SBN 111664)
   mjacobs@mofo.com
3  JENNIFER LEE TAYLOR (CA SBN 161368)
   jtaylor@mofo.com
4  ALISON M. TUCHER (CA SBN 171363)
   atucher@mofo.com
5  RICHARD S.J. HUNG (CA SBN 197425)
   rhung@mofo.com
6  JASON R. BARTLETT (CA SBN 214530)
   jasonbartlett@mofo.com
7  MORRISON & FOERSTER LLP
   425 Market Street
8  San Francisco, California  94105-2482
   Telephone:  (415) 268-7000
9  Facsimile:  (415) 268-7522

10 Attorneys for Plaintiff and
   Counterclaim-Defendant APPLE INC.

   WILLIAM F. LEE
   william.lee@wilmerhale.com
   WILMER CUTLER PICKERING
   HALE AND DORR LLP
   60 State Street
   Boston, MA 02109
   Telephone: (617)  526-6000
   Facsimile: (617)  526-5000


   MARK D. SELWYN (SBN 244180)
   mark.selwyn@wilmerhale.com
   WILMER CUTLER PICKERING
   HALE AND DORR LLP
   950 Page Mill Road
   Palo Alto, California 94304
   Telephone:  (650) 858-6000
   Facsimile:  (650) 858-6100

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                  SAN JOSE DIVISION

15

16  APPLE INC., a California corporation,          Case No. 11-cv-01846-LHK

17                  Plaintiff,          **REPLY IN SUPPORT OF APPLE'S
                                         MOTION TO STRIKE PORTIONS OF
18        v.                             SAMSUNG'S EXPERT REPORTS**

19  SAMSUNG ELECTRONICS CO., LTD., a     Date:     June 21, 2012
    Korean business entity; SAMSUNG      Time:     10:00 a.m.
20  ELECTRONICS AMERICA, INC., a New York Place:    Courtroom 5, 4th Floor
    corporation; SAMSUNG                 Judge:    Hon. Paul S. Grewal
21  TELECOMMUNICATIONS AMERICA, LLC, a
    Delaware limited liability company,

22
                   Defendants.
23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. SAMSUNG'S UTILITY PATENT EXPERT REPORTS ASSERT THEORIES THAT WERE NOT DISCLOSED DURING FACT DISCOVERY ............. 1

    A. Samsung's Invalidity Experts Opine On Undisclosed Prior Art........................... 1

        1. Mr. Gray's New Prior Art References ('915 Patent) ..................................... 1

        2. Dr. Van Dam's New Prior Art References ('381 Patent)............................ 3

        3. Dr. Von Herzen's New Reference and Defense ('607 Patent)...................... 4

    B. Samsung's Non-Infringement Experts Opine on Undisclosed Arguments........... 4

        1. Dr. Johnson's New Non-Infringement Theory ('381 Patent) ...................... 4

        2. Dr. Von Herzen's New Non-Infringement Theories ('607 Patent)............... 5

        3. Mr. Gray's Improper Non-Infringement Contention ('915 Patent) ............. 6

    C. Samsung's Infringement Experts Assert Undisclosed Theories ........................... 7

        1. Dr. Yang's Undisclosed Theories ('460 Patent) ........................................ 7

        2. Dr. Williams' Undisclosed Theory ('516 Patent) ........................................ 8

II. THE COURT SHOULD STRIKE SAMSUNG'S LATE DISCLOSED DEFENSES ON DESIGN AND TRADE DRESS ISSUES................................................ 9

    A. Apple Did Not Abandon its Rights To Challenge Untimely Disclosures.............. 9

    B. Samsung Improperly Withheld Information During Fact Discovery ................... 9

    C. Samsung's Theories Were Not "Otherwise Made Known" to Apple.................. 11

    D. Samsung Fails to Show That Its Violation of Rule 26(e) Was Harmless ........... 13

III. THE COURT SHOULD STRIKE SAMSUNG'S LATE SUPPLEMENTAL DAMAGES REPORT AND ALTERNATIVE CALCULATIONS PRODUCED ON APRIL 16, 2012 ...................................................................................... 14

    A. Mr. Wagner's Supplemental Report Was Untimely and Prejudicial .................. 14

    B. The Court Should Not Allow Mr. Wagner to Rely on "Tab 6" of the April 16 Report.................................................................................................................... 14

CONCLUSION ...................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abbott Labs. v. Lupin Ltd.*,
    2011 WL 1897322 (D. Del. May 19, 2011) ............................................................ 10

*Abbott Labs. v. Syntron Bio-Research, Inc.*,
    2001 U.S. Dist. LEXIS 26339 (S.D. Cal. Aug. 24, 2001) ........................................ 12

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*,
    691 F. Supp. 2d 577 (D. Del. 2010) ....................................................................... 10

*Anascape, Ltd. v. Microsoft Corp.*,
    2008 WL 7180756 (E.D. Tex. May 1, 2008) ............................................................ 7

*Bowling v. Hasbro, Inc.*,
    2007 WL 3274328 (D. R.I. Nov. 5, 2007) .............................................................. 10

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*,
    2007 WL 521894 (Feb. 15, 2007) ......................................................................... 12

*CBS Interactive, Inc. v. Etilize, Inc.*,
    257 F.R.D. 195 (N.D. Cal. 2009) ............................................................................ 7

*Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*,
    534 F. Supp. 2d 616 (D. Md. 2008) ...................................................................... 13

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
    2009 U.S. Dist. LEXIS 22100 (E.D. Tex. Mar. 19, 2009) ........................................ 5

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
    2009 WL 763926 (E.D. Tex. March 19, 2009) ........................................................ 3

*DataQuill Ltd. v. Handspring, Inc.*,
    2003 WL 25696445 (N.D. Ill. Dec. 19, 2003) ....................................................... 10

*Dominguez v. Excel Mfg. Co., Inc.*,
    2010 U.S. Dist. LEXIS 137582 (N.D. Cal. Dec. 20, 2010) ..................................... 15

*Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*,
    2007 WL 2156665 (N.D. Ill. Jul. 26, 2007) .......................................................... 11

*Fleming v. Escort, Inc.*,
    2011 U.S. Dist. LEXIS 58917 (D. Idaho June 2, 2011)........................................ 2, 3

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*,
    1996 U.S. Dist. LEXIS 17362 (N.D. Ill. Nov. 21, 1996) ........................................ 10

*In re Convergent Techs. Sec. Litig.*,
   108 F.R.D. 328 (N.D. Cal. 1985) ............................................................................. 9

*Insight Tech., Inc. v. Surefire, LLC*,
   2009 WL 3242557 (D.N.H. Oct. 8, 2009) ............................................................... 10

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
   2010 U.S. Dist. LEXIS 47504 (D. N.H. Apr. 8, 2010) .......................................... 12

*Microstrategy Inc. v. Business Objects, S.A.*,
   429 F.3d 1344 (Fed. Cir. 2005) ............................................................................. 10

*Monsanto Co. v. E.I. Du Pont De Nemours & Co.*,
   2012 WL 27936 (E.D. Mo. Jan. 5, 2012) .............................................................. 11

*O'Connor v. Boeing N. Am., Inc.*,
   2005 U.S. Dist. LEXIS 46233 (C.D. Cal. Sept. 12, 2005) .................................. 6, 14

*Oracle Am., Inc. v. Google Inc.*,
   2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ........................................................ 8

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
   2006 U.S. Dist. LEXIS 74611 (D.N.J. Oct. 13, 2006) ....................................... 11, 12

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   763 F. Supp. 2d 671 (D. Del. 2010) ....................................................................... 10

*Primos, Inc. v. Hunter's Specialties, Inc.*,
   451 F.3d 841 (Fed. Cir. 2006) ............................................................................... 13

*San Francisco Bay Area Rapid Transit Dist. v. Spencer*,
   2007 WL 421336 (N.D. Cal. Feb. 5, 2007) ............................................................ 11

*SanDisk Corp. v. Memorex Prods., Inc.*,
   415 F.3d 1278 (Fed. Cir. 2005) ............................................................................... 9

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
   2005 WL 2092920 (S.D.N.Y. Aug. 31, 2005) ....................................................... 10

*Transclean Corp. v. Bridgewood Servs., Inc.*,
   77 F. Supp. 2d 1045 (D. Minn. 1999) .................................................................... 12

*Tritek Techs., Inc. v. United States*,
   63 Fed. Cl. 740 (Fed. Cl. 2005) ............................................................................. 10

*Warner-Lambert Co. v. Teva Pharma. USA, Inc.*,
   2006 WL 267328 (D.N.J. Jan. 31, 2006) ............................................................. 5, 10

*Zoltek Corp. v. United States*,
   71 Fed. Cl. 160 (Fed. Cl. 2006) ............................................................................. 11

**STATUTES AND OTHER AUTHORITIES**

Fed.R.Civ.P.
    26 ........................................................................................................................... 6
    26(a)(2)(B)(i) ......................................................................................................... 6
    26(e) .............................................................................................................. *passim*
    33(d) .................................................................................................................... 11
    37(c)(1) ............................................................................................................ 5, 11

Patent Local Rule
    3-1 ........................................................................................................................ 7
    3-3(a) .................................................................................................................... 2
    3-3(c) .................................................................................................................... 2

Samsung's opposition to Apple's motion to strike utility patent expert reports rests on a straw-man argument. Apple does not contend that Samsung's Invalidity and Infringement Contentions—or its interrogatory responses—needed to "contain the [same] level of evidentiary detail" that courts require in expert reports. (Opp. at 1.) Apple moves to strike portions of the Samsung utility expert reports only where Samsung's Contentions or interrogatory responses completely failed to set out a theory now asserted by a Samsung expert. As Samsung's opposition confirms, this occurred as to several theories.

Samsung's arguments concerning the opinions of its design experts that it divulged only after the close of fact discovery fare no better. Samsung admits that its interrogatory responses did not disclose the expert opinions at issue, and its claim that it made Apple aware of these defenses through other means benefits Apple's motion: all Samsung does is underscore the length of time in which its defenses had crystallized, but were withheld. The Federal Rules do not allow a party accused of infringement to conceal its invalidity and non-infringement defenses throughout discovery, and then launch them in expert reports when the patentee can no longer take steps it needs to attack the defenses.

## I. SAMSUNG'S UTILITY PATENT EXPERT REPORTS ASSERT THEORIES THAT WERE NOT DISCLOSED DURING FACT DISCOVERY.

### A. Samsung's Invalidity Experts Opine On Undisclosed Prior Art.

#### 1. Mr. Gray's New Prior Art References ('915 Patent).

Samsung concedes that Mr. Gray relies on ten references that its Invalidity Contentions did not disclose, but addresses only three—the Mandelbrot, DTLens, and DTMouse applications. (Opp. at 2-4.) The Court should grant Apple's uncontested motion as to the other seven. The Court should grant the motion as to the Mandelbrot, DTLens, and DTMouse because Samsung admits that it knew of these applications and their source code when it served its Contentions, but unjustifiably concealed these defenses until it served Mr. Gray's report six months later.

Samsung cites introductory text in its Invalidity Contentions stating that Samsung was not just relying on "prior art systems" like Diamond Touch, but also "documents and source code describing the same." (Dkt. No. 1014-1 at 26.) But Mandelbrot, DTLens, and DTMouse are not

documents or source code that *describe* Diamond Touch. They are applications that—*if* loaded onto the system—can *run on* Diamond Touch. (Pernick Decl. Ex. 1 at 2.)

Samsung offers no authority for the proposition that disclosing the Diamond Touch system would also implicitly identify applications that *might*—or might not—be installed on the system. Mandelbrot and DTLens are optional applications that are not necessarily present on the Diamond System at all. Because Samsung's Invalidity Contentions did not identify Mandelbrot, DTLens, or DTMouse as required by Patent Local Rule 3-3(a), the Court should strike Mr. Gray's analysis that relies on them. (*See* Mot. at 5 (citing cases).)

Samsung's reference to "documents and source code describing" the prior art systems that it did identify would not have been enough to disclose properly Mandelbrot, DTLens, or DTMouse in any event. In addition to identifying prior art in its Invalidity Contentions, an accused infringer must also provide "[a] chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found…." Patent Local Rule 3-3(c). Samsung's claim chart (Attachment J1) *never once* cites to Mandelbrot, DTLens, or DTMouse (Pernick Reply Decl. Ex.2), let alone maps these applications to the claim limitations. *See Fleming v. Escort, Inc*., 2011 U.S. Dist. LEXIS 58917, at *3-9 (D. Idaho June 2, 2011) (striking from expert report Invalidity Contentions based on 17 prior art computer files; even if files were implicitly "embedded" in programs listed in Contentions, "[t]he chart Escort prepared for its Invalidity Contentions did not contain any mention of the 17 files").

Samsung also points to a video in its Invalidity Contentions claim chart that it cited for the one '915 claim that remains at issue. (Pernick Reply Decl. Ex. 2 at 12, 14 (citing 0:17-0:29 of Tse video).) Apple did not object to Mr. Gray's use of that video, or his citation to an application that is depicted in the video and charted in Samsung's Contentions. (*See* Dkt. No. 939-4 Ex. 2 ¶ 168.) But the 12 seconds of video that Samsung cited do not depict the Mandelbrot, DTLens, or DTMouse applications, so Samsung's Invalidity Contentions never gave notice that it was relying on them.

Nor did Samsung's production for inspection of a computer loaded with Mandelbrot, DTLens, and DTMouse put Apple on notice of Samsung's intent to rely on these applications.

That computer contained over 158 gigabytes of data. (Pernick Reply Decl. ¶ 4) It would have been virtually impossible for Apple to go through this magnitude of data and—without knowing that Samsung considered Mandelbrot, DTLens, or DTMouse so critical—speculate about how Samsung or its expert might later try to piece together an invalidity argument based on undisclosed software and source code on the computer. Production of source code and a computer for inspection do not obviate the need to disclose prior art in Invalidity Contentions. *See Fleming*, 2011 U.S. Dist. LEXIS 58917, at *8-9.

Mere notice is not the question. (Opp. at 3-4.) Samsung had to disclose its Mandelbrot, DTLens, and DTMouse contentions in compliance with the Patent Local Rules or ask the Court for leave to add them. *See Cummins-Allison Corp. v. SBM Co., Ltd.*, 2009 WL 763926, *4 (E.D. Tex. March 19, 2009) (disclosure of prior art in reexamination proceedings does not satisfy obligation to disclose art in Invalidity Contentions). Indeed, Samsung *knew* its disclosure was inadequate. (*See* Pernick Reply Decl. Ex. 1at 2 (stating that Samsung would "clarify [its] invalidity contentions for the DiamondTouch system to identify numerous prior art applications" such as Mandelbrot, DTLens, and DTMouse).) But instead of moving to amend its Invalidity Contentions, as it unsuccessfully did with other undisclosed prior art, Samsung opted to hide these invalidity theories.

Finally, the Court should not be misled by Samsung's reference to the depositions of Adam Bogue and Clifton Forlines. These were depositions in a different case against a different adversary (HTC), in which Apple is represented by a different law firm. (*See* Dkt. No. 1014-0 Ex. D at 2:3-9.) In that case, the accused infringer's law firm (Quinn Emanuel) served Invalidity Contentions with specific claim charts for each of the Mandelbrot, DTLens, and DTMouse applications. (*See* Zolotorev Decl. ¶¶ 3-4.) Samsung never did that here.

### 2. Dr. Van Dam's New Prior Art References ('381 Patent).

The parties agree that Dr. Van Dam relies on six prior art references that were not in Samsung's Invalidity Contentions. As Apple predicted, Samsung contends that Van Dam was only using these references "to provide background on the technology relating to the '381 Patent." (Opp. at 5.) That is the sum total of Samsung's analysis on this issue. And it is wrong.

Dr. Van Dam uses these references in a section of his report where he tries to show that the "'381 includes dependent claims that include limitations … [that] were [ ] well-known and described in the art prior to 2006." (Dkt. No. 939-4 Ex. 11 ¶ 46.) He uses these references as examples of "prior art teaching the use of animation techniques in graphic user interface software." (*Id*. ¶ 47.) Van Dam uses the references for invalidity purposes, not as "background."

### 3. Dr. Von Herzen's New Reference and Defense ('607 Patent)

**Blonder '041 Patent:** Samsung concedes that its Invalidity Contentions did not disclose the Blonder '041 patent upon which Dr. Von Herzen relies. (Dkt. No. 939-4 Ex. 12 ¶¶ 116, 195, 269, 345, 411.) Samsung's proffered excuse is that Dr. Von Herzen only identified Blonder after "Apple served [Dr. Maharbiz's] expert infringement report on March 22, 2012." (Opp. at 6.) Samsung complains that only then could "Dr. Von Herzen identif[y] the exact same circuit in [ ] Blonder" that he thinks satisfies the claim in suit. (*Id*.) In fact, Samsung served the Von Herzen report *nine minutes before* Apple served the Maharbiz report. (Pernick Reply Decl. Exs. 3,4.) Samsung thus did not generate its Blonder analysis in response to Apple's March 22 expert report—the analysis was already done, but not disclosed.

**Derivation Defense:** Samsung could have raised its derivation defense based on the Smartskin paper long before the close of fact discovery because: (a) the inventors disclosed Smartskin to the PTO during prosecution; (b) on August 3, 2011, Samsung deposed '607 inventor Joshua Strickon and asked him questions about the inventors' knowledge of Smartskin (Dkt. No. 939-4 Ex. 18 ¶¶ 452, 456-57; Pernick Reply Decl. Ex 5); and (c) the supposedly critical email on this issue was produced in this case in October 2011 (Dkt. No. 1014-10 Ex. I). Samsung even admits that it possessed the information it needed to "fully substantiate" and disclose this defense by December 2011 or January 2012. (Opp. at 7.) And still Samsung did not seek leave to amend its Invalidity Contentions.

### B. Samsung's Non-Infringement Experts Opine on Undisclosed Arguments.

### 1. Dr. Johnson's New Non-Infringement Theory ('381 Patent).

The only claim at issue in the '381 Patent is Claim 19, which requires "instructions for translating the electronic document in a second direction until the area beyond the edge of the

electronic document is no longer displayed." (Pernick Reply Decl. Ex.7 at Claim 19.)
Dr. Johnson opines that several accused products lack this limitation because they exhibit a "hold still" behavior (Dkt. No. 939-4 Ex. 17 ¶ 65), but Samsung did not disclose that defense.

Samsung maintains that it disclosed its "hold still" defense in response to Apple's Interrogatory No. 2. (Opp. at 9.) But that response said that Samsung products do not "translat[e] the document in the second direction *i[n] a damped motion*," (Dkt. No. 1014-9 at 9 (emphasis added)), *not* that they do not translate documents in a second direction *at all*, as needed to avoid the subject limitation in Claim 19. The "damped motion" limitation is from dependent Claim 15, which is no longer at issue. It narrows the broader claim limitation on which Johnson now opines. Samsung never disclosed a non-infringement argument based on the broader limitation.

Like Samsung, the accused infringer in *Warner-Lambert Co. v. Teva Pharma. USA, Inc.*, 2006 WL 267328, at *7-8 (D.N.J. Jan. 31, 2006), served an interrogatory response that rested its non-infringement defense on particular claim limitations, but served an expert report after discovery closed that raised a new non-infringement defense based on another claim limitation. The court held that, "[i]n these circumstances, the appropriate course is to strike the [new] . . . infringement defense, *cf*., Fed.R.Civ.P. 37(c)(1)." *Id*. at *6.

Samsung's other arguments fail. *Cummins-Allison Corp. v. SBM Co., Ltd.*, 2009 U.S. Dist. LEXIS 22100 (E.D. Tex. Mar. 19, 2009), is inapposite because the patentee in that case had "engaged in a game of 'hide the ball'" about what claims were really at issue. *Id*. at *4-5. Apple has not done that here. And Samsung's production of code and devices that exhibit "hold still" behavior is irrelevant, because this production did not convey Samsung's non-infringement contention. The law does not require Apple to read Samsung's mind.

### 2. Dr. Von Herzen's New Non-Infringement Theories ('607 Patent).

Samsung concedes that Dr. Von Herzen asserts new theories that raise for the first time constructions of the terms "transverse," "lines," and "or near touches." (Opp. at 10.) If Samsung thought these terms needed construction or thought Apple's applications of these terms in its Infringement Contentions were unclear, Samsung should have asked the Court to construe them during claim construction. Unless Samsung thought that its products met these claim limitations,

it should have disclosed its non-infringement defenses based upon these constructions in its discovery responses. (Dkt. No. 394; Pernick Reply Decl. Ex.8.)

### 3. Mr. Gray's Improper Non-Infringement Contention ('915 Patent).

Samsung acknowledges that Mr. Gray did not apply a sound technique or "a detailed elaborate scientific approach" in concluding that "certain" or "some" Samsung accused products (Dkt. No. 939-4 Ex. 20 at 124:13-22) do not infringe because they supposedly allow for multi-touch point scrolling (Opp. at 10). Samsung fails to rebut the other deficiencies in his report.

Samsung never explains why Mr. Gray's non-infringement report did not identify which of *Samsung's own products* purportedly do not infringe on this basis. (*Id.* Ex. 19 ¶¶ 33-34, 52, 75, 187.) His report fails Rule 26(a)(2)(B)(i)'s requirement that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." This failure is critical and was compounded by his failure to identify the products at his deposition. Apple was not testing Mr. Gray's memory at that deposition, but seeking for the first time the identity of the products Gray thinks do not infringe on this basis. His failure to identify them left Apple with no meaningful way to test his contentions or attack them at trial.

In addition to striking paragraphs 33-34, 52, 75, and 187 of Mr. Gray's April 16 report, the Court should reject Samsung's attempt to back-fill the report and deposition with the late report it served on May 31. (Dkt. No. 1014-12.) Samsung offers no justification for serving this supplemental report six weeks after Mr. Gray's rebuttal report was due. Samsung and Mr. Gray have always been in possession of the information necessary for Gray to identify *Samsung's own products*. A supplemental expert report is only allowed "in response to new information that was unavailable at the time of [an] expert['s] initial Rule 26 disclosures" when there is a showing that the other side "withheld any information that could form the basis of the new opinions." *O'Connor v. Boeing N. Am., Inc.*, 2005 U.S. Dist. LEXIS 46233, at *41-42 (C.D. Cal. Sept. 12, 2005). That is not the case here.

## C. Samsung's Infringement Experts Assert Undisclosed Theories

### 1. Dr. Yang's Undisclosed Theories ('460 Patent).

*First*, Dr. Yang's theory of the sequence of claimed method steps is decidedly *inconsistent* with Samsung's Infringement Contentions, which Samsung barely disputes. (Opp. at 11-13.) In its Contentions, Samsung disclosed one (and only one) specific sequence of steps corresponding to claim 1. (Mot. at 12.) This "exemplary sequence" is its *only* disclosed infringement theory— as is underscored by Samsung's inability to identify anything in its Contentions supporting Dr. Yang's broader, inconsistent assertions.[1] Under the Patent Local Rules, Dr. Yang is bound by Samsung's choice. *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009).

*Second*, because it did not mention "swiping" in its Contentions, Samsung can only argue that its disclosure of "navigat[ing] between image files" with arrow buttons was sufficient notice that Dr. Yang would equate "swiping" to the claimed "scroll keys." (Opp. at 13.) Samsung cites no law suggesting that such a broad conceptual disclosure—which opens the door for it to assert that any method of navigating between image files infringes a claim that explicitly requires "scroll keys"—provides adequate notice of a specific infringement theory under the doctrine of equivalents. *Cf. Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7180756, at *4 (E.D. Tex. May 1, 2008) ("The local patent rules do not allow a defendant to throw a generic term into its invalidity contentions and use it to encompass several prior art references.").[2]

*Third*, Samsung's new "portable phone mode" theory fails because, as Samsung concedes, it merely provided a screenshot of the SpringBoard/Home screen in its Contentions (Opp. at 14). That screenshot, which is overlaid by a large red arrow pointing to the Mail app, corresponds to the first step in Samsung's disclosed sequence: "A user opens the 'Mail' application and starts to write an email." (*See* Dkt. 939-4 Ex. 21 at 3-4.) That screenshot does not disclose the "portable

---

[1] Samsung claims that "[p]ortions" of its Contentions "not cited by Apple are sufficient to meet Samsung's obligation under Local Patent Rule 3-1" (Opp. at 12), but it fails to identify any such "[p]ortions." Nor did the use of "e.g." provide Apple notice of Samsung's new theory.

[2] Apple was not put on notice of this new theory by Dr. Yang's deposition, which occurred after service of his report and Samsung's Contentions. (Opp. at 13-14) Nor could *Apple's* expert, source code, or user guides disclose or define *Samsung's* theory of infringement.

phone mode," let alone Dr. Yang's new theory that the accused devices are in the claimed "portable phone mode" when they "can continue to receive a call or FaceTime request." (Mot. at 13.) *See Oracle Am., Inc. v. Google Inc.*, 2011 WL 4479305, at *3-5 (N.D. Cal. Sept. 26, 2011) (striking portions of expert report asserting a theory not disclosed in infringement contentions).

### 2. Dr. Williams' Undisclosed Theory ('516 Patent).

That Samsung's Infringement Contentions alleged that the Accused Apple Products transmit both a first channel not supporting HARQ and a second channel supporting HARQ (Opp. at 15) is not the issue. The issue is that Dr. Williams' report changed the identity of the "first channel not supporting HARQ" from the DPDCH channel (as identified in the Contentions) to *all* of the channels that do not support HARQ. In other words, Williams added the DPCCH, HS-DPCCH and E-DPCCH channels to the class of channels comprising the "first channel."

In response, Samsung points to a figure in its Infringement Contentions from the 3GPP standard showing five uplink channels. (Opp. at 15.) But the Contentions *only identified one of these five uplink channels as the "first channel"* (namely, the DPDCH). Indeed, Samsung's use of this figure further supports Apple's motion: Samsung showed a figure with four non-HARQ channels but specifically identified only one as the "first channel," which clearly implies that the other three channels were *not* included in the "first channel."[3]

Last, Samsung offers a tortured interpretation of this sentence in its Contentions: "The E-DPDCH channels support HARQ (*See* 3GPP[3] § 6.1; 7.3.6; 8) while the DPDCH channels do not." Samsung claims this sentence was intended merely as "an example of one illustrative channel that supported HARQ and another illustrative channel that did not support HARQ." (Opp. at 15.) Nothing in that sentence leads a reasonable reader to believe that it was merely "illustrative" or an "example." Instead, it plainly states that the DPDCH channel, and that

_____

[3] Samsung evidently realized after service of its Contentions that the "total transmit power" called for in the 3GPP standard requires a sum of the transmit power factors for all uplink channels and, as such, Samsung's definition of the first channel in its Contentions was not consistent with the 3GPP standard. This requires Samsung to deviate from the infringement theory set forth in its Contentions, but Samsung did not supplement those Contentions.

channel alone, is the "first channel not supporting HARQ." The Court should reject Samsung's attempt to amend that theory through Dr. Williams' expert report. *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (no abuse of discretion in excluding evidence pertaining to infringement theories not disclosed in compliance with local patent rules).

## II. THE COURT SHOULD STRIKE SAMSUNG'S LATE DISCLOSED DEFENSES ON DESIGN AND TRADE DRESS ISSUES.

### A. Apple Did Not Abandon its Rights To Challenge Untimely Disclosures.

Samsung is mistaken that Apple represented it would not file a motion to strike if Samsung supplemented its interrogatory responses shortly after the close of fact discovery. (Opp. at 15-16.) Apple said that it would not *move to compel further responses* to its interrogatories until Samsung had a few more days to supplement, but also expressly reserved its right to file a motion to preclude regardless of what Samsung put into any such late interrogatory responses. (Pernick Reply Decl. ¶¶ _-_.) When Apple saw the extent to which Samsung's expert reports exceeded Samsung's discovery period disclosures, it had no choice but to file this motion.

### B. Samsung Improperly Withheld Information During Fact Discovery.

Samsung argues that it did not need to respond substantively to Apple's contention interrogatories "until discovery [was] complete or nearly complete." (Opp. at 16.) This is wrong because Apple served its interrogatories early in the case. Samsung cites one case allowing a party to defer responses to contention interrogatories, but such deferral is warranted only where the party needs discovery to provide a meaningful response or would be unfairly burdened by the effort required to provide an early response. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 337-38 (N.D. Cal. 1985). Those factors do not apply here. Samsung crystallized many of its theories months before the close of discovery, as evidenced by its own assertion that it revealed those theories in submissions in this action, the ITC investigation, and its document productions. (*See* Opp. at 18-19, 21-22.) Samsung made a strategic decision to disclose *none* of those theories in its interrogatory responses until after fact discovery closed.

The Federal Rules condemn such "hide the ball" tactics. Rule 26(e) required Samsung to supplement its responses to Apple's contention interrogatories "as soon as possible after [it]

1 learn[ed] that its [original] response[s] w[ere] inaccurate or incomplete." *Insight Tech., Inc. v.*

*Surefire, LLC*, 2009 WL 3242557, at *2 (D.N.H. Oct. 8, 2009); *see also Tritek Techs., Inc. v.*

*United States*, 63 Fed. Cl. 740, 746 (Fed. Cl. 2005). As the Federal Circuit held in *Microstrategy*

*Inc. v. Business Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005), a party may not develop

responsive information, then conceal it until it is too late for the other side to pursue relevant

discovery. In that case, the court affirmed exclusion of material that MicroStrategy possessed but

did not disclose in response to interrogatories, reasoning that "MicroStrategy alone is to blame for

creating this situation." *Id.* at 1357. "[I]f a party is allowed to withhold the supplementation of

its discovery responses until after fact discovery is closed, the purpose of [Rule 26(e)] is

effectively frustrated." *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, 1996 U.S. Dist.

LEXIS 17362, at *25 (N.D. Ill. Nov. 21, 1996).

Courts routinely apply these rules in patent cases to exclude non-infringement and

invalidity theories that were not disclosed in time to allow meaningful discovery. *See Takeda*

*Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 2005 WL 2092920, at *1, *6 (S.D.N.Y. Aug. 31, 2005);

*Bowling v. Hasbro, Inc.*, 2007 WL 3274328, at *1-2 (D. R.I. Nov. 5, 2007); *Warner-Lambert*,

2006 WL 267328, at *8; *Heidelberg*, 1996 U.S. Dist. LEXIS 17362, at *25-30. Consistent with

these authorities, Judge Koh's March 17, 2012 Order denied Samsung's motion to add new

theories based on utility patent prior art. Judge Koh reasoned that "fact discovery is over,"

leaving "little opportunity for Apple to explore and respond to Samsung's new contentions."

(Dkt. No. 836 at 10.) The same reasoning applies here.

The cases Samsung cites (Opp. at 16-17) do not support its position. In two of them, the

courts held that the disputed material was not timely disclosed, but did not exclude it because the

material was otherwise known to the movant or the untimely disclosure was harmless. *See Power*

*Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 692 (D. Del. 2010);

*Abbott Labs. v. Lupin Ltd.*, 2011 WL 1897322, at *5 (D. Del. May 19, 2011). As discussed

below, neither exception applies here. Two other cases rested on those same inapplicable

exceptions. *See Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 691 F. Supp. 2d 577,

588 (D. Del. 2010); *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 25696445, at *1 (N.D. Ill.

Dec. 19, 2003).  In *Monsanto Co. v. E.I. Du Pont De Nemours & Co.*, 2012 WL 27936 (E.D. Mo. Jan. 5, 2012), the disputed disclosures were made almost two months *before* the close of fact discovery.  *Compare id.* at *1-2 (disclosures made on September 27, 2011) *with* Pernick Reply Decl. Ex. 9 (setting November 15, 2011 deadline for fact discovery).)  Accordingly, the court was contemplating conduct very different from Samsung's when it observed that contention interrogatories need not be answered "until discovery is near completion."

### C.     Samsung's Theories Were Not "Otherwise Made Known" to Apple.

"For information to be considered 'otherwise made known'" under Rule 26(e), "the alleged disclosure must be clear and unambiguous.  *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 2006 U.S. Dist. LEXIS 74611, at *8 (D.N.J. Oct. 13, 2006) (*rev'd* in part on other grounds); *see also Zoltek Corp. v. United States*, 71 Fed. Cl. 160, 167 (Fed. Cl. 2006).  The invalidity and non-infringement theories in Samsung's preliminary injunction submissions met that standard, so Apple did not move to exclude them.  (Mot. at 15 n.6.)  The other alleged disclosures identified by Samsung do not meet this standard.

**Anticipation and Obviousness Theories**:  Samsung's December 2011 response to Apple's Interrogatory No. 12 was insufficient.  That response listed by Bates number some of the prior art relied on by Samsung's experts:  nine of the 78 disputed references in Mr. Lucente's opening report, and 11 of the 36 disputed references in Mr. Sherman's opening report.  Even as to this art, just listing Bates numbers did not "make known" Samsung's anticipation and obviousness theories, as the interrogatory requested.  A proper answer required a narrative (*see* Mot. at 18 (citing cases)), but Samsung improperly relied on Rule 33(d).  In these circumstances, when a party later offers material that was called for in the response, courts exclude it under Rule 37(c)(1).  *See San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 2007 WL 421336, at *4 n.3 (N.D. Cal. Feb. 5, 2007); *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 WL 2156665, at * 9 (N.D. Ill. Jul. 26, 2007).

Nor did Samsung's submissions in the parties' pending ITC matter "clearly or unambiguously" disclose the theories asserted by Samsung here.  The design patents in the two proceedings are not the same.  There was no reason for Apple to presume that Samsung would

assert parallel invalidity arguments against the patents at issue here.  *See Abbott Labs. v. Syntron Bio-Research, Inc.*, 2001 U.S. Dist. LEXIS 26339, at *5 (S.D. Cal. Aug. 24, 2001) (rejecting argument that party knew of prior art defenses based on previous litigation).

Samsung's argument that some of its theories were known to Apple by virtue of the fact that they are based on Apple documents also fails.  (Opp. at 19.)  The existence of a prior art reference does not put a party on notice that its adversary will rely on the reference as the basis for an invalidity defense.  *See Marine Polymer Techs., Inc. v. HemCon, Inc.*, 2010 U.S. Dist. LEXIS 47504, at *3-*7 (D. N.H. Apr. 8, 2010) (*rev'd* on other grounds); *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 WL 521894, at *5 (Feb. 15, 2007).

Lastly, Samsung argues that it made known its Nokia Fingerprint theory by including the reference and a declaration from its inventor in its document production, and by listing the inventor's name in its amended initial disclosures.  (Opp. at 19.)  There is nothing "clear and unambiguous" about a reference buried in thousands of pages of documents, or an identification of a potential witness whose relevance is described cryptically as "prior art."  Samsung cannot put the burden on Apple to "ferret through" Samsung's production to piece together Samsung's theories.  *Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1062 (D. Minn. 1999).  Indeed, even where a theory "would have been easy to infer" from other sources, "courts have found disclosures that require such inferences to be insufficiently clear for Rule 26(e) purposes."  *Pfizer Inc.*, 2006 U.S. Dist. LEXIS 74611, at *8-9.

**Distinctiveness and Indefiniteness Theories:**  Samsung contends that, because Apple "has long been aware of numerous phones that embody Apple's conception of the iPhone and iPad trade dress," Apple was aware of its theories that the asserted trade dress lacks distinctiveness.  (Opp. at 20.)  The existence of other phones and tablets in the market does not disclose that Samsung's experts would rely on any of them for a lack of distinctiveness argument.  Nor did Samsung's recitation of products in two of its third-party subpoenas amount to a "clear and unambiguous" disclosure of Samsung's theories.

Samsung argues that Apple was aware of Samsung's indefiniteness theories because Samsung asked deposition questions aimed at establishing the "basis" for such a theory.  The

Federal Circuit rejected that argument in *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841 (Fed. Cir. 2006), and affirmed exclusion of an invalidity theory that had never been asserted during discovery, even though the underlying art had been the subject of deposition questioning. *Id.* at 850-51. Here too, Apple was "not required to plan a [strategy] based on all possible documents or information presented during depositions." *Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 625 (D. Md. 2008).

**Non-Infringement Theories:** Samsung asserts that any differences between the non-infringement theories presented in its expert reports and those in its preliminary injunction papers are "insubstantial." (Opp. at 21.) That is demonstrably incorrect. First, Samsung's preliminary injunction papers only advanced non-infringement arguments for the asserted *body style* design patents. (Dkt. No. 172 ¶¶ 24-33, 83-105, 171-72.) None of those arguments bears any similarity to the non-infringement arguments presented by Mr. Lucente regarding the asserted *GUI* design patents. Second, the non-infringement theories presented by Samsung's experts go far beyond those presented in the preliminary injunction proceedings. (*Compare, e.g.*, Dkt. No. 172 ¶ 182, *with* Dkt. No. 939-4 Ex. 30 Pt. B, Table B V.)

**Theories Regarding the Scope of the Asserted Patents:** Samsung argues that its January 31, 2012 motion to compel disclosed Mr. Godici's argument that the scope of the design patents must be narrow. (Opp. at 21.) Samsung's motion claimed that evidence showing the similarity of the asserted Apple patents to other Apple patents was relevant to whether the patents are "substantially the same." (Dkt. No. 700 at 5.) Samsung also argued that the requested evidence was relevant to "Apple's claims regarding commercial embodiments of its products." (*Id.* at 6.) Neither of those arguments provided "clear and unambiguous" disclosure of the scope theories advanced in Mr. Godici's report.

**D.    Samsung Fails to Show That Its Violation of Rule 26(e) Was Harmless.**

Samsung argues that its late interrogatory responses were harmless because it disclosed its experts' theories on March 19, 2012, just nine days after Apple served responses to Samsung's interrogatories. (Opp. at 22.) But Apple propounded the contention interrogatories that are the basis of this motion to strike in November 2011. Samsung was obligated to disclose its invalidity

1   and non-infringement contentions in December 2011, not this March.  Samsung refused to

2   disclose in its original responses *any* of the theories its experts now rely on—even though, as

3   shown, Samsung had by then developed many of them.  Apple was harmed by Samsung's delay

4   of *three months*, for the duration of fact discovery.

5   **III.    THE COURT SHOULD STRIKE SAMSUNG'S LATE SUPPLEMENTAL**
6   **DAMAGES REPORT AND ALTERNATIVE CALCULATIONS PRODUCED ON**
    **APRIL 16, 2012.**

7        **A.    Mr. Wagner's Supplemental Report Was Untimely and Prejudicial.**

8        Samsung—not Apple—violated a Court order regarding damages discovery.  The

9   April 23 Order allowed Mr. Musika to supplement his report as a remedy *for Samsung's*

10  *violations*.  It did not authorize Samsung to file a corresponding supplement.  (*See* Dkt. No. 880

11  at 16.)  In fact, on April 22, Samsung repeated the suggestion that "*both side's experts* should

12  submit supplemental reports."  (Dkt. No. 878 at 1:22.)  The Court did not adopt that suggestion.

13       Further, Samsung *always* had access to the information from its financial records that

14  Mr. Wagner used in his unauthorized May 11 report.  If Samsung wanted to rely on that

15  information, Samsung should have produced it during discovery and included it with

16  Mr. Wagner's April 16 report.  Samsung did neither.  Under these circumstances, Rule 26(e)

17  cannot justify Wagner's May 11 report.  *See O'Connor*, 2005 U.S. Dist. LEXIS 46233, at *41

18  (Rule 26(e) supplement must be based on "new information that *was unavailable* at the time of

19  the initial disclosure because it was *withheld by the* [*other side*]" (emphasis added)).  Moreover,

20  the May 11 report is not an update based on new data; it reflects new and different analysis about

21  subject matters not addressed in Samsung's original damages report.  (Dkt. No. 939-34.)

22       Finally, Samsung's delays were not harmless.  Samsung served the report at 7:00 p.m. the

23  night before Mr. Wagner's May 12 deposition.  Apple did not question Wagner about it at his

24  deposition.  (Dkt. No. 1014, Ward Decl. Ex. DD at 261:18-265:24, 458:10-14.)

25       **B.    The Court Should Not Allow Mr. Wagner to Rely on "Tab 6" of the April 16**
26       **Report.**

27       All the data used in "Tab 6" of Mr. Wagner's April 16 report was withheld until the same

28  day his report was served.  Samsung offers no justification for its delay.  Samsung possessed the

"Tab 6" data in January 2012. If relevant, it should have been produced by February 3, 2012. (Dkt. No. 673 at 2:5-7, 15:14-23.) Samsung withheld it until well after fact discovery closed and after Musika served his opening report. Samsung should not be allowed to dole out only the information that it wants to give, on a schedule of its own choosing, to Apple's prejudice.[4]

Despite this, Samsung argues that the April 23 Order authorized Samsung's conduct. That position is inconsistent with the Order. Samsung's belated production of Tab 6 data occurred a week before the Order issued—the Order did not apply to this data. The Order sought "to mitigate [the] harm to Apple" caused by Samsung's untimely and inconsistent productions, which had impaired "Apple's ability to validate its damages analysis with reliable, underlying data...." (Dkt. No. 880 at 15:18-20.) Use of the Tab 6 data would perpetuate this harm because Apple would not be able to use any deposition testimony, or even Mr. Wagner's report (which *does not include a single calculation* drawn from Tab 6), to cross-examine him at trial about his calculations.

Finally, the Court should exclude "Tab 6" to avoid juror confusion. Mr. Wagner provided a complete damages analysis in "Tab 2" of his report based on data that was produced before the end of discovery. Samsung intends that, due to its belated production, Apple's expert and Samsung's expert will now present damages analyses using *competing and inconsistent* datasets, only one of which (Tab 2) was produced during discovery. (Pernick Reply Decl. ¶ 28.) The competing presentations would confuse the jury, waste time, and force an unnecessary detour into evidence regarding the differences in scope, timing, and production of Samsung's two datasets.

## CONCLUSION

For the reasons discussed above and in Apple's moving papers, the Court should grant Apple's motion and strike the portions of Samsung's expert reports (and exhibits thereto) that are identified in Apple's proposed order. (Dkt. No. 939-12.)

---

[4] *Dominguez v. Excel Mfg. Co., Inc.*, 2010 U.S. Dist. LEXIS 137582 (N.D. Cal. Dec. 20, 2010), is inapposite. The "expert" there was a party employee who gave five hours of relevant fact deposition testimony. *Id.* at *4, 6-7. Wagner is not a Samsung employee; he cannot provide fact testimony about where the April 16 financial data came from, how it was prepared, whether or how it was validated, and whether it is accurate.

Dated: June 7, 2012               MORRISON & FOERSTER LLP


                             By:    */s/ Michael A. Jacobs*
                                    Michael A. Jacobs

                                    Attorneys for Plaintiff
                                    APPLE INC.