# Exhibit G

# EXHIBIT 15
# FILED UNDER SEAL

Confidential Attorneys' Eyes Only

Page 1

1              UNITED STATES DISTRICT COURT
2            NORTHERN DISTRICT OF CALIFORNIA
3                  SAN JOSE DIVISION
4    APPLE INC., a California
     corporation,
5
6            Plaintiff,
7    vs.                    Case No. 11-CV-01846-LHK
8    SAMSUNG ELECTRONICS CO., LTD.,
     a Korean business entity;
9    SAMSUNG ELECTRONICS AMERICA,
     INC., a New York corporation;
10   SAMSUNG TELECOMMUNICATIONS
     AMERICA, LLC, a Delaware
11   limited liability company,
12           Defendants.
     --------------------------------/
13
14
15
16                 CONFIDENTIAL
17             ATTORNEYS' EYES ONLY
18
19      VIDEOTAPED DEPOSITION OF DUNCAN KERR
              Redwood Shores, California
20            Wednesday, October 26, 2011
21
22   Reported by:
     LORRIE L. MARCHANT, CSR No. 10523
23   RPR, CRR, CCRR, CLR
24   JOB NO. 42863
25

Confidential Attorneys' Eyes Only

1    THE VIDEOGRAPHER:  Thank you.  Will the
2  court reporter please swear in the witness.
3    THE REPORTER:  Do you solemnly swear or
4  affirm under the penalties of perjury that the
5  testimony you are about to offer will be the truth,
6  the whole truth and nothing but the truth?
7    THE WITNESS:  I do.
8    EXAMINATION BY MS. CARUSO
9    BY MS. CARUSO:
10    Q.   Good morning.  I'd like to start just by
11  going over your educational background.
12    Did you obtain a degree in mechanical
13  engineering at Imperial College in London in 1985?
14    A.   Yes.
15    Q.   Did you obtain a degree in industrial
16  design engineering at Royal College of Art in 1987?
17    A.   Yes.
18    Q.   After your obtaining your degree in
19  industrial design engineering, where was the first
20  place you worked after that?
21    A.   I worked in a design consultancy in London.
22    Q.   What was the name of the firm it was
23  associated with?
24    A.   ISIS UK Limited.
25    Q.   How long were you there?

Confidential Attorneys' Eyes Only

Page 22

1      A.    Not by myself.

2      Q.    Were you asked to -- whether you had any

3  documents relating to the development of the iPad?

4      A.    I don't recall that specific question.

5      Q.    Were you asked whether you had any

6  documents relating to the development of the iPhone?

7      A.    I don't recall that specific question.

8      Q.    It doesn't need to be that specific

9  question.  It could be any general question about

10  the iPad.

11          MR. MONACH:  Here again, I'll instruct the

12  witness not to answer about any communications --

13  the substance of any communications you may have had

14  with counsel about the iPad.  If you remember

15  questions about document collection, you can

16  respond.

17          THE WITNESS:  So what's the question?

18          BY MS. CARUSO:

19      Q.    What types of documents were you asked to

20  identify?

21          MR. MONACH:  Objection.  Assumes facts not

22  in evidence.

23          THE WITNESS:  I don't remember.

24          BY MS. CARUSO:

25      Q.    Are you taking any medication this morning?

Confidential Attorneys' Eyes Only

Page 23

1    A.   I took some herbal throat and cough

2    medication.

3    Q.   Are you under the influence of any other

4    medication, anything that might affect your memory?

5    A.   No.

6    Q.   Looking at the drawings in the D'889

7    patent, do you recall at some point at Apple

8    creating a design of a handheld tablet?

9         MR. MONACH:  Object to the form of the

10   question.

11        THE WITNESS:  So which document are you

12   referring to?

13        BY MS. CARUSO:

14   Q.   Yes.  That one (indicating).

15   A.   This one (indicating).

16        MR. MONACH:  Object to the form of the

17   question as vague.  Object to the extent the

18   question intends to include a legal conclusion about

19   the drawings.  I'm not sure that it does.

20        THE WITNESS:  The question again, please.

21        BY MS. CARUSO:

22   Q.   Do you recall at Apple, at some point in

23   time, creating a handheld tablet design?

24   A.   Yes, I do.

25   Q.   Do you understand the drawings of the D'889

Confidential Attorneys' Eyes Only

Page 24

1    patent that's in front of you to reflect any design

2    that you created while you were at Apple?

3              MR. MONACH:  I'll instruct you not to

4    reveal any communications with counsel, but

5    otherwise you can answer the question.

6              THE WITNESS:  I'm a designer.  I'm not a

7    patent attorney.  I don't understand patent drawings

8    in the way a patent attorney would.

9              They do, to my design eyes, reflect designs

10   that we -- we worked on.

11             BY MS. CARUSO:

12        Q.   Looking at Figure 2, do you have any

13   understanding of what the parallel lines inside this

14   rectangular shape represent?

15             MR. MONACH:  Object to the form of the

16   question to the extent it calls for a legal

17   conclusion from a nonlawyer witness.  Lacking in

18   foundation in light of the prior testimony.

19             I'll instruct you not to reveal any

20   attorney-client communications.

21             THE WITNESS:  So I see a lot of lines.  I'm

22   not sure if you're specifically referring to

23   particular ones.

24             BY MS. CARUSO:

25        Q.   Referring to these three sets of lines

Confidential Attorneys' Eyes Only

Page 25

1    (indicating) which have three parallel lines.

2         MR. MONACH:  Same objection.

3         THE WITNESS:  So, again, I'm a designer.

4    I'm not a patent attorney.  My assumption is that

5    those lines were put there to represent some legal

6    aspect of this document which I'm not aware of.

7         As a designer, my interpretation of that

8    would be that it's a reflective surface.

9         BY MS. CARUSO:

10   Q.   Okay.  Do you have any understanding of

11   whether, in Figure 2, the lines that we're referring

12   to as a -- you identified as perhaps being

13   reflective surface are on the front or the back of

14   the device?

15        MR. MONACH:  Objection.  Lack of

16   foundation.  Calls for a legal conclusion.

17        THE WITNESS:  From my design interpretation

18   of these drawings, Figure 2 represents the rear

19   surface.

20        BY MS. CARUSO:

21   Q.   Do you understand Figure 1 to represent the

22   front surface?

23        MR. MONACH:  Same objection.

24        THE WITNESS:  Yes.

25

Confidential Attorneys' Eyes Only

Page 26

1          BY MS. CARUSO:

2      Q.    Do you have any understanding of what the

3  sort of interior line that goes within the outline

4  of the front surface represents?

5          MR. MONACH:  Same objection.  Vague.

6          THE WITNESS:  So this dot -- this dotted

7  line (indicating)?

8          BY MS. CARUSO:

9      Q.    Yes.

10          MR. MONACH:  Same objection.  Lack of

11  foundation.  And calls for a legal conclusion.

12          THE WITNESS:  Again, as a designer, I would

13  be interpreting this patent drawing, which I would

14  understand that drawing to mean something for a

15  patent attorney.  I would be making an

16  interpretation of it as a designer.

17          BY MS. CARUSO:

18      Q.    Do you have any understanding of what it

19  represents?

20          MR. MONACH:  Objection.  Lack of

21  foundation.  Calls for a legal conclusion.

22          Continuing instruction not to reveal any

23  attorney-client communications, if you had them.

24          THE WITNESS:  It could be a number of

25  things.

Confidential Attorneys' Eyes Only

Page 27

1          BY MS. CARUSO:

2     Q.    Which are?

3          MR. MONACH:   Same objection.

4          THE WITNESS:   Making the assumption that

5     this -- has a display visible from the front

6     surface, it could be the edge of the active area of

7     the display.

8          If this were a -- a display which had touch

9     sensing on it, it could be a demarcation of what's

10    active and what's inactive from a touch perspective.

11    It could be -- it could be some -- a design detail

12    on the front surface.

13          It could be -- presuming, again, that this

14    is a reflective material which is transparent, there

15    could be some detail on the back side of that

16    surface.   It could be some component inside the

17    assembly, behind the transparent surface.

18          BY MS. CARUSO:

19    Q.    In Figure 2, on the right-hand side of the

20    drawing, what looks to be the side edge of the

21    device tapers towards the rear of the drawing.

22          Do you see that?

23    A.    You mean --

24          MR. MONACH:   Objection.

25

Confidential Attorneys' Eyes Only

Page 28

1          BY MS. CARUSO:

2      Q.   Yes.

3          MR. MONACH:   Assumes facts not in evidence.

4  Objection to the extent it calls for a legal

5  conclusion.

6          THE WITNESS:   I see that tapering, yes.

7          BY MS. CARUSO:

8      Q.   Do you have an understanding of what that

9  tapering represents?

10         MR. MONACH:   Objection.  Vague.  Object to

11  the extent it calls for a legal conclusion.

12         THE WITNESS:   Again, I'm a designer, not a

13  patent attorney.  I don't understand the -- the

14  constraints or the -- what the goals of a patent

15  attorney drawing -- patent drawing are.

16         My design interpretation of that could be a

17  number of things.

18         BY MS. CARUSO:

19     Q.   Which are?

20         MR. MONACH:   Same objection.

21         THE WITNESS:   It could be an attempt at a

22  perspective representation of this object.  It could

23  be that the shape of the -- the object, actually the

24  thickness of it, changes from one corner to the

25  other corner.  It could be a combination of those.

Confidential Attorneys' Eyes Only

1        BY MS. CARUSO:

2      Q.   Do you recall creating a product at Apple

3   in which the thickness of a handheld tablet device

4   changed from one corner to the next?

5      A.   I don't recall.

6      Q.   Focusing on the upper right corner of

7   Figure 2, that tapering portion that we were

8   referring to earlier doesn't appear to go all the

9   way to the top edge of the product.

10        Do you see that?

11        MR. MONACH:  Objection.  Assumes facts not

12   in evidence.  Object to the extent it asks for a

13   legal conclusion from the witness.

14        THE WITNESS:  Again, it's difficult for me

15   to interpret this patent drawing.  I'm not an expert

16   on what lines on the patent drawing are supposed to

17   represent.

18        BY MS. CARUSO:

19      Q.   I'm not -- as a designer, how would you

20   interpret this drawing if someone presented it to

21   you?

22        MR. MONACH:  Objection.  Vague.  Incomplete

23   hypothetical.  Object to the extent it calls for a

24   legal conclusion since it's a patent drawing.

25        THE WITNESS:  I find it ambiguous from a

Confidential Attorneys' Eyes Only

Page 56

1        BY MS. CARUSO:

2     Q.    You're not aware of whether the design of

3  the D'270 was an iPod touch that made it to

4  production?

5        MR. MONACH:   Objection.   Lack of

6  foundation.   Objection to the extent it calls for a

7  legal conclusion.

8        THE WITNESS:   Again, as a designer, I'm

9  looking at patent drawings.   These are not drawings

10  that we would use in the development of a design.

11  So I -- I can't interpret them as design drawings to

12  be able to reference them to objects that we've

13  produced.

14        BY MS. CARUSO:

15     Q.   I'm going to hand you what's been marked

16  previously as Lutton Exhibit 7.   For the record,

17  this is a copy of U.S. Design Patent 618,677.

18        Mr. Kerr, have you seen the '677 patent

19  before?

20     A.   I don't recall.

21     Q.   You're identified on the front page of the

22  '677 as one of the inventors of this design.

23        Do you see that?

24     A.   I do.

25     Q.   Looking at the drawings of the '677, do you

Page 57

1  understand them to reflect something that you

2  designed?

3       MR. MONACH:  Objection to the extent it

4  calls for a legal conclusion about the drawings in

5  the patent.

6       THE WITNESS:  I see a patent drawing

7  representation of what my design interpretation --

8  my design interpretation of this is of an iPhone

9  design that we worked on as a team.

10      BY MS. CARUSO:

11      Q.

23      Q.   Looking at Figure 1 of the D'677, there's a

24  grid area on that drawing.  It looks almost like a

25  screen.

Confidential Attorneys' Eyes Only

Page 58

1          Do you see that?

2          MR. MONACH:  Object to the form of the

3     question.

4          THE WITNESS:  I see a portion of the

5     drawing which has, if I'm following you, a -- a

6     region which has a crosshatch, yes, like a grid-type

7     fill.

8          BY MS. CARUSO:

9     Q.   Do you have any understanding of what that

10    shows?

11         MR. MONACH:  Object to the form of the

12    question as vague.  Object to the extent it calls

13    for a legal conclusion.

14         THE WITNESS:  As a designer, it's -- I

15    don't know how to interpret this patent drawing.

16    It's not a design drawing.

17         I see in the patent document a reference

18    to --

19         (Reporter clarification.)

20         THE WITNESS:  Sorry.

21         I see, in reference to Figure 1, claimed

22    surface of the electronic devices illustrated with

23    the color designation for the color black.

24         BY MS. CARUSO:

25    Q.   The slanted lines that are parallel to each

Confidential Attorneys' Eyes Only

Page 59

1   other, across what appears to be the surface of

2   Figure 1, do you see those?

3       A.   (Indicating?)

4       Q.   Yes.

5       A.   Yes, I do.

6       Q.   Do you have any understanding what those

7   show?

8           MR. MONACH:   Objection.   Lack of

9   foundation.   Calls for a legal conclusion.

10          THE WITNESS:   Again, as a designer, I'm not

11  familiar with the conventions of patent drawings.

12  My assumption is that they represent something very

13  specific as -- for the patent application.

14          My interpretation of those as a designer is

15  that they represent a reflective surface.

16          BY MS. CARUSO:

17      Q.   Is there anything about the design of the

18  iPhone that you believe was new?

19          MR. MONACH:   Object to the form of the

20  question.   Vague and ambiguous.   Compound.   Lacking

21  in foundation.   Incomplete hypothetical.   Object to

22  the extent it calls for a legal conclusion.

23          You can answer.

24          THE WITNESS:   Yes.

25  ///

Confidential Attorneys' Eyes Only

Page 60

1          BY MS. CARUSO:

2      Q.    What is that?

3          MR. MONACH:   Same objection.

4          THE WITNESS:   It's my understanding that it

5    was the iPhone, first iPhone, was the first

6    multi-touch telephone device.   So it was new in that

7    respect.

8          BY MS. CARUSO:

9      Q.    Is there anything about the design, the

10   industrial design, of the iPhone that you understood

11   to be new?

12          MR. MONACH:   Same objection.   Vague and

13   ambiguous.   No antecedent for what he's to compare

14   with.   Object to the extent it calls for a legal

15   conclusion.

16          But you can give your understanding.

17          THE WITNESS:   Everything that we design at

18   Apple is new to us, so -- so, yes.

19          BY MS. CARUSO:

20     Q.    There aren't any particular features of the

21   design that you can identify as being new?

22          MR. MONACH:   Object to the form of the

23   question as vague and ambiguous.

24          THE WITNESS:   "New" in what sense?

25   ///

Confidential Attorneys' Eyes Only

Page 69

1   had worked on a phone, but you had seen other mobile

2   phones at the time you were creating the iPhone 1

3   design; correct?

4        A.   Sure.

5        Q.   Did you use a cell phone at that time?

6        A.   Yes.

7        Q.   Which one was it?

8        A.   If I remember, I had a number of phones

9   over the years.  If I remember correctly it was a

10  Motorola flip phone.

11       Q.   Was it a RAZR?

12       A.   A RAZR.

13       Q.   Do you recall other phones that you've had

14  over the years?

15       A.   I had -- I don't remember the names of

16  them.  I had a different Motorola flip phone at one

17  point.  I had a Nokia -- I believe they're kind of

18  called candy bar style, solid block phone.  I had a

19  Sony phone.  My first one was a Sony, from '98.

20  Something like that.

21       Q.   All right.  I apologize.  I can't remember

22  if I've asked you this already.

23            But for the design of the iPhone, is it

24  correct that you can't distinguish your -- any

25  unique contribution you made in the design of the

Confidential Attorneys' Eyes Only

Page 70

1  iPhone from that of the other Apple designers?

11        Q.   I'm handing you what's been previously

12  marked as Lutton Exhibit 6, which is a copy of the

13  U.S. Design Patent 593,087.

14        Do you see that?

15  A.   Yes.

16        Q.   Do you have an understanding of what the

17  design of the D'087 patent is?

18        MR. MONACH:   Objection.   Vague and

19  ambiguous.   Object to the extent it calls for a

20  legal conclusion about the scope of the patent.

21        THE WITNESS:   I'm a designer.   I'm looking

22  at a patent drawing.   I'm not an expert in patent

23  drawings.

24        But my interpretation of what I see as a

25  designer is of the iPhone.   Based on one detail

Confidential Attorneys' Eyes Only

Page 71

1    which I see, I believe it's the iPhone 1.

2              BY MS. CARUSO:

3         Q.    Which detail are you looking at to identify

4    it as the iPhone 1?

5         A.    If we start on Figure 2, there's this

6    dashed line which runs across what I'm interpreting

7    as the body of the product.

8              If that is trying to represent the antenna,

9    the separation between the body -- metal body and

10   the plastic antenna cover, then that would lead me

11   to believe this is attempting to represent the

12   iPhone 1.

13        Q.    All right.  I'm going to hand you a copy of

14   what was previously marked as Exhibit 842 to

15   Zorkendorfer.  It doesn't have an exhibit stamp on

16   it, but it has been previously marked.

17             The document, Exhibit 842, is

18   Bates-numbered APLNDCX2049, and then there's a

19   second page attached, which is APLNDCX2056.

20             That was on your exhibit as well?

21        A.    Yes.

22        Q.    Do you recognize what's shown in

23   Exhibit 842?

24        A.    I don't remember specifically what this is.

25        Q.    Do you have an understanding of what this

Confidential Attorneys' Eyes Only

1   is?

2          MR. MONACH:  Objection.  Vague and

3   ambiguous.  Asked and answered.

4          THE WITNESS:  I'm presuming it's a

5   photograph of a industrial design model from Apple.

6          BY MS. CARUSO:

7      Q.   Is there any part of the photograph, 2049

8   or 2056, that you believe has what you would

9   describe as a vent detail?

10         MR. MONACH:  Objection.  Lack of

11  foundation.  Calls for speculation.

12         THE WITNESS:  I can only describe what I

13  see.  I don't know the function of different

14  elements of what I'm looking at.

15         BY MS. CARUSO:

16     Q.   How would you describe this (indicating)

17  detail that runs along the edge of the -- what

18  appears to be electronic -- excuse me, the edge of

19  the surface display?

20         MR. MONACH:  Object under the best evidence

21  rule that the photograph is the best evidence of

22  what the photograph is.  Objection.  The question is

23  vague and asking for some further verbal

24  description.

25         THE WITNESS:  You just described these as