# Exhibit H

# EXHIBIT 16
# FILED UNDER SEAL

Highly Confidential - Attorneys' Eyes Only

Page 1

1            UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF CALIFORNIA
3                SAN JOSE DIVISION
4   APPLE INC., a California
    corporation,
5
            Plaintiff,              Case No.
6
      vs.                          11-CV-01846-LHK
7
    SAMSUNG ELECTRONICS CO., LTD.,
8   a Korean business entity;
    SAMSUNG ELECTRONICS AMERICA,
9   INC., a New York corporation;
    SAMSUNG TELECOMMUNICATIONS
10  AMERICA, LLC, a Delaware
    limited liability company,
11
            Defendants.
12
13
14
15    HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16
17     VIDEOTAPED DEPOSITION OF RICHARD HOWARTH
18            San Francisco, California
19            Monday, October 31, 2011
20
21
22
23  REPORTED BY:
24  CYNTHIA MANNING, CSR No. 7645, CLR, CCRR
25  JOB NO. 43007

Highly Confidential - Attorneys' Eyes Only

1   reporter please swear in the witness.

2

3                    RICHARD HOWARTH,

4          having first been duly sworn, testified

5          as follows:

6          THE VIDEOGRAPHER:  You may proceed.

7

8                    EXAMINATION

9   BY MR. ZELLER:

10      Q.  Good morning.

11      A.  Morning.

12      Q.  If you could please state and spell your

13  full name for the record for us.

14      A.  Richard Howarth.  R-I-C-H-A-R-D; Paul,

15  P-A-U-L; H-O-W-A-R-T-H.

16          MR. MONACH:  Before we get too far, I

17  just want -- so I don't forget -- I'm sure we're

18  going to do a lot of examination on documents that

19  have been marked "Highly Confidential, Attorneys'

20  Eyes Only."  So rather than try to parse it out

21  now we'd like to have the entire transcript

22  designated as attorneys' eyes only.

23          And the witness reserves the right to

24  review and sign the deposition transcript.

25          Thank you.

Highly Confidential - Attorneys' Eyes Only

Page 91

1    tablet designs that you worked on there for Apple.

2            Is there -- is there an area that, on the

3    front face of the tablet computer devices that you

4    worked on, that you understood to include a border

5    or mask area?

6            MR. MONACH:  Objection; vague and

7    compound.

8            THE WITNESS:  Yeah, I'm sorry.

9            Could you repeat the question?

10           MR. ZELLER:  Yes.  If you could read it

11   back, please.

12           (Whereupon the reporter read the record

13           as follows:

14           "Question:  Is there an area that, on the

15           front face of the tablet computer devices

16           that you worked on, that you understood

17           to include a border or mask area?")

18           MR. MONACH:  And I objected; vague and

19   compound.

20           THE WITNESS:  Sometimes some people refer

21   to -- or I refer to the area around the display as

22   a border.

23   BY MR. ZELLER:

24       Q.  But in general, you don't think that

25   those terms are precise enough or clear enough

Highly Confidential - Attorneys' Eyes Only

Page 92

1    that you could be -- you'd be able to say it's

2    really definite; right?

3           MR. MONACH:  Objection; vague and

4    ambiguous.

5           THE WITNESS:  I don't know what other

6    people think.

7    BY MR. ZELLER:

8      Q.  Well, I'm not asking about what other

9    people think.  I'm asking you.

10          Do you think that the word "border" or

11   "mask" is a clear term to you as to what it is

12   referring to in the context of tablet computer

13   designs that Apple has made?

14          MR. MONACH:  Objection; vague and

15   ambiguous, both a compound and incomplete

16   hypothetical.

17          THE WITNESS:  It could be.

18   BY MR. ZELLER:

19     Q.  I'm going to show you what was previously

20   marked as Exhibit 8, which for the record is

21   United States Design Patent 504,889.

22          And please let me know when you've had an

23   opportunity to review the '889 design patent.

24     A.  (Witness reviewing document.)

25          Okay.

Highly Confidential - Attorneys' Eyes Only

Page 93

1      Q.   You're named as an inventor of the '889

2   design?

3      A.   I was one of the industrial design team

4   that worked on this product.

5      Q.   Looking at the drawings, these figures

6   that are in the '889 design patent, do any of

7   those drawings show what you, in your view --

8   well, I'm sorry.  Let me rephrase it.

9           Directing your attention to the figures

10  and drawings in the '889 design patent.

11          Do any of those drawings show a mask

12  area?

13          MR. MONACH:  Objection; lack of

14  foundation.  Objection; compound.  Objection;

15  calls for a legal conclusion by a nonlawyer

16  witness.

17          THE WITNESS:  I'm not a patent lawyer.

18  BY MR. ZELLER:

19      Q.   I'm not asking you as a patent lawyer.

20  I'm asking you as an inventor of the '889 design

21  patent.

22          Do any of the drawings or figures in the

23  '889 design patent depict a mask area?

24          MR. MONACH:  Same objection; lack of

25  foundation --

Highly Confidential - Attorneys' Eyes Only

Page 94

1            THE WITNESS:  As --

2            MR. MONACH:  Hang on a second.

3            Lack of foundation.  Objection, to the

4     extent it calls for a legal conclusion.

5            THE WITNESS:  As an industrial designer,

6     and not a patent lawyer, it isn't clear to me that

7     there is an area here that is definitely a mask or

8     border.

9     BY MR. ZELLER:

10         Q.  Directing your attention to Figure 1.

11         A.  Yes.

12         Q.  You'll see that on the interior of

13    Figure 1, that there is a rectangular line.

14            Do you see that?

15         A.  I see a dotted line.

16         Q.  Do you know, is that -- is that a broken

17    line?

18            MR. MONACH:  Objection; lack of

19    foundation.  Under the Best Evidence Rule the

20    document speaks for itself.  Vague.

21            THE WITNESS:  It looks like a dotted

22    line.  It looks like an inconsistent dotted line.

23    BY MR. ZELLER:

24         Q.  Do you know why it's in that form?  Do

25    you have an understanding?

Highly Confidential - Attorneys' Eyes Only

1          MR. MONACH:  Objection; lack of

2  foundation.

3          And let me just caution you.  I'm not

4  saying you did have any such communications, but I

5  don't want you, in answering any of these

6  questions, to reveal any attorney-client

7  communications.

8          THE WITNESS:  Okay.  I'm not exactly sure

9  what that rectangle is depicting.

10  BY MR. ZELLER:

11     Q.  Do you know if that dotted line that you

12  were talking about that's in that rectangular

13  shape on the interior of Figure 1 has some

14  relationship to separating the active area of the

15  display from the mask or nonactive areas of the

16  display?

17          MR. MONACH:  Objection; lack of

18  foundation, calls for speculation.  Object, to the

19  extent it's asking for a legal conclusion.

20          THE WITNESS:  I'm not sure what that line

21  represents.

22  BY MR. ZELLER:

23     Q.  And I take it you don't have an

24  understanding as to whether or not that particular

25  line, this rectangular line on the interior of

Highly Confidential - Attorneys' Eyes Only

Page 96

1   Figure 1 that's dotted, is part of the claimed

2   design here?

3          MR. MONACH:  Objection; lack of

4   foundation.  Objection, to the extent it calls for

5   a legal conclusion.

6          THE WITNESS:  I'm not sure what that line

7   represents.

8   BY MR. ZELLER:

9      Q.  Directing your attention to Figure 2 of

10  the '889 design patent.

11         You'll see that there are three sets of

12  diagonal lines on the interior of this.

13     A.  Yes.

14     Q.  And then directing your attention to

15  Figure 4.

16         You'll see that it doesn't have those

17  diagonal lines.

18     A.  Okay.

19     Q.  Do you see that?

20     A.  Yes, I see that.

21     Q.  Do you have any understanding or

22  explanation as to why those diagonal lines don't

23  appear in Figure 4 but they do appear in Figure 2?

24         MR. MONACH:  Objection; lack of

25  foundation.  Objection, to the extent it calls for

Page 97

1   a legal conclusion.

2          THE WITNESS:  I'm not sure why those

3   lines are in one view and not in another.

4   BY MR. ZELLER:

5      Q.  Do you know if the design that's shown

6   here in the '889 design patent is showing a back

7   surface or bottom surface that is flat and clear?

8          MR. MONACH:  Same objection; lack of

9   foundation.  Object, to the extent it calls for a

10  legal conclusion.

11         THE WITNESS:  I'm not sure what that is

12  depicting.

13  BY MR. ZELLER:

14     Q.  Is the design that's shown here in the

15  '889 design patent, by your understanding, does

16  it -- well, I'm sorry.  Let me rephrase that.

17         Directing your attention to the '889

18  design patent.

19         In your view, as an inventor and a

20  designer, does this design show a clear front

21  surface of the device?

22         MR. MONACH:  Objection; lack of

23  foundation.  Objection, to the extent it calls for

24  a legal conclusion.

25         You can give your understanding, if you

Highly Confidential - Attorneys' Eyes Only

Page 98

1    have one.

2          THE WITNESS:  I'm not exactly sure what

3    this document -- what this figure is showing.  It

4    could be.

5    BY MR. ZELLER:

6       Q.  And you're not sure one way or another

7    whether what's shown here in the design shows a

8    clear, flat, continuous surface on the front?

9          MR. MONACH:  Objection, to the extent it

10   calls for a legal conclusion.

11         THE WITNESS:  I didn't create these

12   drawings, so I don't know if that's what that is

13   supposed to represent.

14   BY MR. ZELLER:

15      Q.  And even apart from the fact that you

16   didn't create the drawings, you still don't know;

17   is that true?

18         MR. MONACH:  Same objection.  Object, to

19   the extent it calls for a legal conclusion; asked

20   and answered.

21         THE WITNESS:  It isn't completely clear

22   to me that that's what that is representing.

23   BY MR. ZELLER:

24      Q.  Directing your attention to Figure 9.

25         You'll see in Figure 9 that the top of

Highly Confidential - Attorneys' Eyes Only

1   the device that's shown there is -- from the

2   orientation of the individual holding it -- is

3   somewhat wedge-shaped, or it tapers?

4        MR. MONACH:  Objection; mischaracterizes

5   the evidence, assumes facts not in evidence,

6   argumentative.

7   BY MR. ZELLER:

8        Q.  Do you see that?

9        MR. MONACH:  Object, to the extent it

10  calls for a legal conclusion.

11       THE WITNESS:  I see what you're referring

12  to.  I see it's an object that the guy is holding.

13  BY MR. ZELLER

14       Q.  Well, from the perspective of the guy

15  whose holding it --

16       A.  Yes.

17       Q.  -- how would you describe the shape of

18  the top of the device?

19       A.  What --

20       MR. MONACH:  Objection; vague and

21  ambiguous.  Object, to the extent it calls for a

22  legal conclusion.

23       THE WITNESS:  What are you referring to

24  as "the top"?

25  //

Highly Confidential - Attorneys' Eyes Only

Page 100

1    BY MR. ZELLER:

2        Q.  The top, from the orientation of the

3    individual holding it, which would be your right.

4            MR. MONACH:  Objection.  Objection;

5    vague.

6    BY MR. ZELLER:

7        Q.  If you could hand me your copy.

8        A.  Okay.

9            MR. ZELLER:  Let's please mark as Exhibit

10   1132 a copy of the '889 design patent with a

11   marking that I'm about to give it.  It will be an

12   arrow consisting of an X on Figure 9, and then two

13   arrows with the Figure X, Label X, in Figure 2.

14           (Deposition Exhibit 1132 was marked for

15           identification)

16   BY MR. ZELLER:

17       Q.  So directing your attention to Figure 2.

18       A.  Okay.

19       Q.  You'll see that what I did there is, I

20   put two arrows with the Label X on there.

21       A.  Mm-hmm.

22       Q.  And you'll see that those portions, those

23   sides, appear to taper, or narrow?

24           MR. MONACH:  Object to the form of the

25   question as mischaracterizing the evidence;

Highly Confidential - Attorneys' Eyes Only

1    assumes facts not in evidence.

2            THE WITNESS:  To me, it looks like a

3    slightly perspective drawing of a rectangular

4    object.

5    BY MR. ZELLER:

6        Q.  Do you have an understanding as to

7    whether or not those lines taper because of

8    perspective or because the design that is being

9    communicated here has tapering sides?

10       A.  I couldn't say for certain.  To me

11   personally, as an industrial designer, it looks to

12   me like they're tapering because of perspective.

13       Q.  And in your view, is that an accurate

14   perspective?

15           MR. MONACH:  Objection; vague and

16   ambiguous.

17           THE WITNESS:  I don't know about an

18   accurate perspective.  It looks, perhaps, like

19   that's what was intended.

20   BY MR. ZELLER:

21       Q.  And if I asked you the same questions

22   about that edge that I labeled as X in Figure 9,

23   you'd give me the same answers?

24           MR. MONACH:  Objection, to the extent it

25   calls for a legal conclusion.  But you can give

Highly Confidential - Attorneys' Eyes Only

1   your understanding.

2          THE WITNESS:  My understanding is that's

3   what that is trying to represent.

4   BY MR. ZELLER:

5      Q.  It is perspective, but you're not

6   certain?

7          MR. MONACH:  Object to the form of the

8   question.

9          THE WITNESS:  It's possible that that's

10  what that represents.

11  BY MR. ZELLER:

12     Q.  But, again, you can't say with certainty

13  whether or not that's -- that tapering is because

14  of perspective, as opposed to whether or not the

15  design is actually showing that there is some kind

16  of tapering?

17         MR. MONACH:  Objection; lack of

18  foundation.  Objection, to the extent it calls for

19  a legal conclusion; asked and answered.

20         You can do it again.

21         THE WITNESS:  In my opinion, as an

22  industrial designer and not a patent lawyer, I

23  think that that looks like it is an object with

24  perspective and not a tapering geometry.

25  //

Highly Confidential - Attorneys' Eyes Only

Page 103

1    BY MR. ZELLER:

2        Q.  And from your perspective, is that -- is

3    that an accurate depiction of perspective?

4            MR. MONACH:  Objection; lack of

5    foundation, incomplete hypothetical.  Objection;

6    vague.

7            THE WITNESS:  Yes, it could be.

8    BY MR. ZELLER:

9        Q.  Can you say with any certainty if it is?

10           MR. MONACH:  Same objection.

11           THE WITNESS:  I can't say with any

12   certainty without -- whether that's an absolutely

13   accurate perspective view.  But it looks okay.  It

14   looks possible.

15   BY MR. ZELLER:

16       Q.  You'll see also in Figure 9 that there is

17   a portion of it that has a thicker, darker line

18   that runs around the perimeter of the front.

19           Do you see that?

20       A.  Yes, I see that.

21       Q.  What does that depict?

22           MR. MONACH:  Objection; lack of

23   foundation.  Object, to the extent it calls for a

24   legal conclusion.

25           THE WITNESS:  It's unclear to me exactly

Highly Confidential - Attorneys' Eyes Only

Page 104

1    what that is trying to depict.

2    BY MR. ZELLER:

3        Q.  Does it depict a gap or a groove?

4        MR. MONACH:  Same objection; lack of

5    foundation.  Objection, to the extent it calls for

6    a legal conclusion.

7        THE WITNESS:  I'm not sure what that

8    precise detail is trying to depict.  But it looks

9    like the separation between two parts to me.  Not

10   the separation; it looks like the joint between

11   two parts.

12   BY MR. ZELLER:

13       Q.  And directing your attention to Figure 1,

14   you'll see that also at least on part of the

15   perimeter of this front surface there is a darker

16   line there as well, darker, thicker line?

17       A.  I see that.

18       Q.  And do you have an understanding as to

19   what that's depicting?

20       MR. MONACH:  Objection; lack of

21   foundation.  Object, to the extent it calls for a

22   legal conclusion.

23       THE WITNESS:  I couldn't tell you exactly

24   what that's trying to depict.

25   //

Highly Confidential - Attorneys' Eyes Only

Page 105

1   BY MR. ZELLER:

2        Q.   Is that darker, thicker line depicting a

3   gap or a groove?

4            MR. MONACH:  Same objection.  Lack of

5   foundation, calls for a legal conclusion.

6            THE WITNESS:  In my opinion as an

7   industrial designer, it doesn't look like that's

8   trying to depict a groove or a gap.  It looks like

9   it's perhaps trying to show a radius or an

10  intersection of the rear housing, perhaps.

11  BY MR. ZELLER:

12       Q.   But you're not certain?

13           MR. MONACH:  Same objection.  Asked and

14  answered.

15           THE WITNESS:  I'm not certain.

16  BY MR. ZELLER:

17       Q.   You'll see that the date of this design

18  patent for filing -- and this is on the first

19  page --

20       A.   Okay.

21       Q.   -- in the middle of the first column,

22  March 17th, 2004.

23           Do you see that date there?

24       A.   Yes, I do.

25       Q.   Prior to March 17th, 2004, which is the

Highly Confidential - Attorneys' Eyes Only

Page 106

1  filing date of the '889 design patent, the Apple

2  design team was working on tablet computer devices

3  that had a gap or groove that ran on the perimeter

4  of the front of the device?

5          MR. MONACH:  Object to form.  Lack of

6  foundation.

7          THE WITNESS:  I don't recall.

8  BY MR. ZELLER:

9      Q.  You just don't recall one way or another?

10     A.  I don't recall.

11



Highly Confidential - Attorneys' Eyes Only

Page 108





Page 110



Highly Confidential - Attorneys' Eyes Only



Page 112



Highly Confidential - Attorneys' Eyes Only

Page 113

7    BY MR. ZELLER:

8        Q.   I'm going to show you what was previously

9    marked as Exhibit 841.

10       A.   Mm-hmm.

11       Q.   And please let me know when you've had an

12   opportunity to review those pages.

13       A.   (Witness reviewing document.)

14            Okay.

15       Q.   I take it generally speaking, at some

16   point, you became aware that there was a dispute

17   between Apple and Samsung, a legal dispute?

18            MR. MONACH:   Object to the form of the

19   question as vague.

20            In answering this question, I'll instruct

21   the witness not to reveal any attorney-client

22   communications.

23            THE WITNESS:   I can't remember when I

24   was -- when I first found out.

25   //

1   BY MR. ZELLER:

2       Q.  Right.  I'm not quite at that question

3   yet.  I'm just trying to understand something

4   generally.  It's to help put some time periods on

5   the questions I'm going to ask.

6       A.  Okay.

7       Q.  So at some point, did you become aware

8   that there was a lawsuit between Apple and

9   Samsung, just generally speaking?

10          MR. MONACH:  You can answer that question

11  yes, no, or I don't recall.

12          THE WITNESS:  At some point, yes.

13  BY MR. ZELLER:

14      Q.  Now, prior to the time that you became

15  aware that there was a lawsuit between Samsung and

16  Apple, had you seen these pages that were marked

17  as Exhibit 841 before that time?

18      A.  I don't recall.

19      Q.  Do you recognize what's depicted here in

20  Exhibit 841?

21          MR. MONACH:  Objection; vague and

22  ambiguous.

23          THE WITNESS:  I'm not -- I'm not clear on

24  what this -- on what's depicted in these pages.

25  //