HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF SAMSUNG'S EXPERTS**<br><br>Date:      June 21, 2012<br>Time:     1:30 p.m.<br>Place:    Courtroom 8, 4th Floor<br>Judge:    Hon. Lucy H. Koh |

**REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ii

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ........................................................................................................ 1

       A.     Sherman Is Not an Expert In Design and Did Not Apply the Law Correctly ...... 1

              1.     Sherman Is Not Qualified to Opine on Obviousness or Anticipation. ...... 1

              2.     Sherman Failed to Apply the Correct Legal Tests. ................................... 3

       B.     Lucente Applies Incorrect Legal Standards and Lacks Specialized
              Expertise Concerning an "Ordinary Observer." .................................................... 4

       C.     Lehto Applies Incorrect Legal Standards for Functionality ................................. 7

       D.     Godici Lacks Relevant Expertise and Opines on Legal Issues ............................ 8

       E.     The Mantis, Mazis, and Kamins Surveys Are Irrelevant and Unreliable. .......... 10

              1.     George Mantis's Confusion Surveys are Irrelevant. ............................... 10

              2.     Michael Mazis's Icon Survey is Irrelevant and Unreliable .................... 11

              3.     Michael Kamins's Survey Is Unreliable ................................................. 11

       F.     Wagner Applies Incorrect Legal Standards and His Apportionment
              Analysis Is Unreliable. ....................................................................................... 12

              1.     35 U.S.C. § 289 Precludes Wagner's Opinion. ...................................... 12

              2.     Wagner's *Panduit* Analysis Is Wrong. ................................................. 13

              3.     Wagner's Apportionment of Profit is Unreliable. .................................. 13

III.   CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Med. Sys. v. Laser Peripherals, LLC*,
712 F. Supp. 2d 885 (D. Minn. 2010) ..................................................................... 12

*Apple, Inc. v. Samsung Elecs. Co.*,
2012 U.S. App. LEXIS 9720 (Fed. Cir. May 14, 2012) ....................................... 3, 5

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
457 F.3d 1062, 1072 n.8 (9th Cir. 2006)................................................................. 6

*Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.*,
79 F. Supp. 2d 252 (W.D.N.Y. 2000) ..................................................................... 10

*Best Lock Corp. v. Ilco Unican Corp.*,
94 F.3d 1563 (Fed. Cir. 1996)................................................................................. 7

*Bogosian v. Mercedes-Benz of N. Am.*,
104 F.3d 472 (1st Cir. 1996) .................................................................................. 1

*Celebrity Cruises Inc. v. Essef Corp.*,
434 F. Supp. 2d 169 (S.D.N.Y 2006)...................................................................... 13

*City of Owensboro v. Ky. Utils. Co.*,
No. 4:04CV-87-M, 2008 U.S. Dist. LEXIS 79292 (W.D. Ky. Oct. 8, 2008)........................ 13

*Corning Inc. v. SRU Biosystems*,
No. Civ. A 03-0633, 2005 WL 2465900 (D. Del. Oct. 5, 2005.) ........................... 3

*Degelman Industries Ltd. v. Pro-Tech Welding and Fabrication*,
2011 WL 6752565 (W.D.N.Y. Dec. 23, 2011) ....................................................... 10

*DePuy Spine Inc. v. Medtronic Sofamore Danek, Inc.*,
567 F. 3d 1314 (Fed. Cir. 2009)............................................................................. 13

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
158 F.3d 1002 (9th Cir. 1998)................................................................................. 8

*Five Star Manufacturing, Inc. v. Ramp-Lit Manufacturing, Inc.*,
4 Fed. Appx. 922, 2001 WL 120070 (Fed. Cir. Feb. 12, 2001)............................. 8

*Flowers Bakeries, Inc. v. Interstate Bakeries Corp.*,
2010 WL 3075318 (N.D. Ga. 2010) ........................................................................ 10

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management*,
618 F.3d 1025 (9th Cir. 2010).................................................................................. 10

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004)............................................................................................... 2

*Herbert v. Lisle Corp.*,
   99 F.3d 1109 (Fed. Cir. 1996)................................................................................... 3, 4, 12

*Hilderman v. Enea Teksci, Inc.*,
   No. 05-cv-1049, 2010 WL 546140 (S.D. Cal. Feb. 10, 2010)............................................ 14

*Hupp v. Siroflex of Am., Inc.*,
   122 F.3d 1456 (Fed. Cir. 1997)........................................................................................... 7

*In re Live Concert Antitrust Litigation*,
   No. 06-ML-1745), 2012 WL 1021081 (C.D. Cal. Mar. 23, 2012) ...................................... 14

*Jada Toys, Inc. v. Mattel, Inc.*,
   518 F.3d 628 (9th Cir. 2007)............................................................................................. 10

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
   150 F.3d 1042 (9th Cir. 1998.).......................................................................................... 11

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
   988 F.2d at 1117 (Fed. Cir.1993)....................................................................................... 7

*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*,
   199 F.3d 1009 (9th Cir. 1999)........................................................................................ 4, 7

*Lemelson v. General Mills, Inc.*,
   No. 77-4558, 1987 WL 26134 (N.D. Ill. Dec. 1, 1987)...................................................... 10

*Leverette v. Louisville Ladder Co.*,
   183 F.3d 339 (5th Cir. 1999)........................................................................................... 3, 4

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir. 2006.)......................................................................................... 5

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y 2007)................................................................................ 11

*Nike Inc. v. Wal-Mart Stores*,
   138 F.3d 1437 (Fed. Cir. 1998)........................................................................................ 12

*Philip M. Adams & Associates, LLC v. Winbound Electronics Corp.*,
   2010 WL 3791970 (D. Utah Sep. 21. 2010) ...................................................................... 10

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010)......................................................................................... 14

*Reiffen v. Microsoft Corp.*,
   270 F. Supp. 2d 1132 (N.D. Cal. 2003) ............................................................................ 10

*Rosco v. Miller Lite*,
    304 F.3d at 1373 (2d Cir. 2002)..................................................................... 7

*Slip Track Sys., Inc. v. Metal-Lite, Inc.*,
    304 F.3d 1256, 1266-67 (Fed. Cir. 2002.) ........................................... 2, 7

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d (Fed. Cir. 2008)................................................................ 9, 10

*Tone Bros., Inc. v. Sysco Corp.*,
    No. 4:90-cv-60011, 1992 WL 200128 (S.D. Iowa Mar. 17, 1992),
    *vacated on other grounds*, 28 F.3d 1192 (Fed. Cir. 1994)......................... 9

*TrafFix Devices v. Mktg. Displays*,
    532 U.S. 23 (2001) ............................................................................. 6

*Trilogy Comms., Inc. v. Times Fiber Comms., Inc.*,
    109 F.3d 739 (Fed. Cir. 1997)........................................................... 13

*Trivitis, Inc. v. Ocean Spray Cranberries, Inc.*,
    Case No. 10-cv-0316, 2012 U.S. Dist. LEXIS 74803 (S.D. Cal. May 29, 2012).................... 2

*Truckstop.net LLC v. Sprint Comms. Co.*,
    537 F. Supp. 2d 1126 (D. Idaho 2008)............................................... 13

*Wagner v. County of Maricopa*,
    673 F.3d 977 (9th Cir. 2012)............................................................. 14

STATUTES

35 U.S.C. § 289 ........................................................................................ 12

OTHER AUTHORITIES

37 C.F.R. § 1.152 .................................................................................... 9

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
    § 24:72 (2012)................................................................................ 10

Fed. R. Civ. P.
    Rule 26 ............................................................................................ 13
    Rule 32.1 ........................................................................................... 8
    Rule 702 ............................................................................... 1, 14, 15

Jacob Jacoby, *Experimental Design and the Selection of Controls in Trademark and
Deceptive Advertising Surveys*, 92 Trademark Rep. 890, 932 (2002) ..................... 12

## I.     INTRODUCTION

Apple established in its motion that Samsung's experts are unqualified, applied the wrong law, or both.  Samsung's opposition fails to rebut critical facts underpinning Apple's motion, including:  (a) Itay Sherman is not an expert in design *by his own admission* and therefore fails any test for expertise in the asserted design patents; (b) Sam Lucente failed to identify prior art designs that fit the Federal Circuit's test for a primary reference, and thus misapplied the test for obviousness; (c) Mark Lehto categorically failed to consider alternative designs; (d) Nicholas Godici—Samsung's alleged expert on design patents—never examined a design patent or participated in substantive decisions about design patents and wants to opine on the law; (e) Samsung's surveys tested facts that are no longer at issue in the case, or are based on flawed controls; and (f) Michael Wagner's opinion purporting to "apportion" damages for design patent infringement is contrary to law and his methods completely unreliable.  These opinions should be excluded.

## II.    ARGUMENT

### A.     Sherman Is Not an Expert In Design and Did Not Apply the Law Correctly.

Samsung fails to rebut Apple's showing that Sherman is unqualified as a design expert or to overcome the fatal analytical defects in his opinion.  His testimony must therefore be excluded.

#### 1.     Sherman Is Not Qualified to Opine on Obviousness or Anticipation.

Samsung argues that Sherman qualifies as a designer of ordinary skill in the art but ignores Sherman's admission:  he *is not a designer at all*, much less a designer of ordinary skill in the art.  Sherman testified that he was "not claiming to be [him]self an industrial design expert" and had "not claimed in any of [his] reports or discussions of being an industrial designer [him]self."  (Mot. at 2, quoting April 20, 2012 Deposition of Itay Sherman at 161:16-162:7.)

In its opposition, Samsung relies on Sherman's experience as a Chief Technology Officer and Chief Executive Officer; but supervising qualified individuals or working in or near the relevant industry does not suffice to qualify as an expert.  Under Rule 702 the witness must be an expert in the specific field.  *See*, *e.g.*, *Bogosian v. Mercedes-Benz of N. Am.*, 104 F.3d 472, 477 (1st Cir. 1996) (affirming exclusion of purported expert with "extensive experience" in

automotive repair who lacked expertise in automotive design or manufacture); *Trivitis, Inc. v. Ocean Spray Cranberries, Inc.*, Case No. 10-cv-0316, 2012 U.S. Dist. LEXIS 74803, at *10-12 (S.D. Cal. May 29, 2012) (excluding purported expert who had insufficient qualifications in relevant area).[1]  If working for years in a given industry, regardless of one's responsibilities and experience, sufficed, a designer could qualify as an expert electrical engineer, and an electrical engineer could qualify as an expert designer, and a CEO would qualify as both.  That would be absurd.   Sherman's experience does not include significant work on industrial design of relevant products.  No amount of attorney argument can overcome Sherman's own deadly admission that he is not a designer or an industrial design expert.

Because he is not a designer, Sherman fails the test for "ordinary skill" in the art of the asserted patents as outlined by Samsung's own non-infringement expert, Robert Anders.  Samsung admits that Anders defined a person of ordinary skill in the art in relevant part as "a *designer* of ordinary capabilities in the field of the design of consumer, commercial, or industrial products" who has "at least an undergraduate degree in engineering or industrial design, and about 1-2 years of experience in designing electronic devices."  (Opp. at 2 n.3 (emphasis added).)  Sherman admitted he is not a designer.  Samsung contends Sherman meets Anders' test because he has "an undergraduate degree in engineering" (Opp. at 2), but Anders testified that he meant *mechanical* engineering.  (Dkt. No. 940 (Bartlett Decl. Ex. 8, filed under seal) at 111:23-112:5.)  Sherman's degrees are in "electrical" and "biomedical" engineering.  (Opp. at 1.)  This is not a case of experience substituting for education, as in *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, cited by Samsung, 304 F.3d 1256, 1266-67 (Fed. Cir. 2002.)  Sherman lacks both relevant education and relevant experience.  He said so himself.

Samsung points out that Apple challenged Sherman's access to confidential documents under the protective order, and that Apple did not challenge Sherman's qualifications in its

---

[1] The case Samsung cites, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) does not support its assertion that Sherman is qualified as a design expert. There, a witness qualified as an expert on insurance company practice based on 25 years' experience working for insurance companies and training on how insurance companies adjust claims.

1  Federal Circuit appeal.  (Opp. at 2-3.)  Neither fact is relevant.  Apple objected because

2  Sherman's business activities put him in a position to disclose information to Apple competitors,

3  and chose to challenge Sherman's findings on the merits, on which Apple prevailed.  *Apple,*

4  *Inc. v. Samsung Elecs. Co.*, 2012 U.S. App. LEXIS 9720, at *30-38 (Fed. Cir. May 14, 2012)

5  (vacating denial of injunction with respect to D'889 patent in light of obviousness analysis).

6        Apple established that simply being an ordinary observer does not qualify one to opine on

7  the impressions of an ordinary observer.  (Mot. at 5-6.)  Samsung argues that Sherman "became

8  familiar with factors that drive consumer choice based on his studies of competing mobile

9  devices" (Opp. at 4), but cites no evidence that Sherman studied consumer purchasing decisions.

10  (Mot. at 5.)  He testified that he studied competitor's devices, which is not the same thing.[2]

11        **2.        Sherman Failed to Apply the Correct Legal Tests.**

12        Samsung argues that Sherman's failure to apply correct legal tests goes to his opinion's

13  weight, not its admissibility.  Samsung relies on a district court case that declined to exclude

14  testimony about a utility patent based on the (disputed) allegation that the expert compared the

15  accused product to the preferred embodiment.  *Corning Inc. v. SRU Biosystems*, No. Civ. A 03-

16  0633, 2005 WL 2465900, at *1 (D. Del. Oct. 5, 2005.)  That case is inapposite and does not

17  purport to articulate a general rule.  The Federal Circuit has encouraged trial courts to exercise

18  their "gatekeeper" function to exclude expert opinions based on incorrect law since "[i]ncorrect

19  statements of law are no more admissible through 'experts' than are falsifiable scientific

20  theories." *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996); *see Leverette v. Louisville*

21  *Ladder Co.*, 183 F.3d 339, 341 (5th Cir. 1999) (excluding opinions based on wrong legal test).

22        Samsung does not dispute that the first step in proving obviousness is to identify a

23  primary reference that is "basically the same" as the design patent in suit, nor does Samsung

24  dispute that Sherman did not make that determination.  Samsung makes light of Sherman's failure

25  to apply the correct legal standard for obviousness by claiming that he simply omitted "legal

26  jargon."  (Opp. at 6.)  A legal standard is not "jargon"—it is the law that governs these

27

28        [2] Cooper Woodring, by contrast, *did* study and conduct research into ordinary observers
and their purchasing decisions.  (Dkt. No. 90 at 2.)

1    proceedings.  And even if the Court were to overlook Sherman's mistake on the first step, he still

2    failed the second part of the test, regarding secondary references.  Sherman failed to analyze

3    whether other prior art was sufficiently related to the primary reference to suggest a combination,

4    as is necessary to identify a secondary reference.  Instead, he suggests arbitrary combinations

5    without any analysis of whether the references are related.  That is not the legal standard for

6    obviousness and will only serve to mislead the jury.  On this, Samsung offers no rebuttal.

7        Samsung also fails to overcome the fact that Sherman confuses "having a function" with

8    functionality.  Sherman argues, for example, that rounded corners are functional because they

9    ensure comfortable, safe, and easy use (Dkt. No. 940-3 at 89) and a rim around the front surface

10   is functional because it helps protect the display (*id.* at 91-92.)  Just because elements serve a

11   function does not make them functional as a matter of design patent and trade dress law. Nor is it

12   sufficient to look at just design "elements."  Samsung's reliance here on *Leatherman Tool Group,*

13   *Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1013 (9th Cir. 1999), is misplaced.  That case supports

14   the obvious conclusion that if an overall design is nothing more than functional parts placed

15   together in a manner designed to result in superior performance, it is functional.  That is precisely

16   the type of analysis that Sherman did *not* undertake, as he does not opine on whether the overall

17   design was dictated by function.  Allowing Sherman to testify as to obviousness without using the

18   correct legal test will only serve to mislead the jury.

## B.    Lucente Applies Incorrect Legal Standards and Lacks Specialized Expertise Concerning an "Ordinary Observer."

20       Lucente's opinions should be excluded because he applies the wrong legal standards and

21   lacks specialized knowledge on what an "ordinary observer" would think.  (*See* Mot. at 7-11.)

22   Samsung argues that Apple is "nit-picking" Lucente's "inability in his deposition to express his

23   opinions using the language of the case law," which goes to his opinions' weight, not their

24   admissibility.  (Opp. at 7.)  Using the wrong legal standard, however, is a fatal defect that makes

25   Lucente's testimony inadmissible.  *Herbert*, 99 F.3d at 1117; *Leverette*, 183 F.3d at 341.

26   Samsung's cited authority did not involve use of the wrong legal standard; rather, it allowed

27   expert testimony only if it was "generally reliable" and "based on good grounds."  *Liquid*

1  *Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1221 (Fed. Cir. 2006.)

2  Lucente's "inability" to use the correct standard was not limited to his deposition.  He also

3  failed to use the right standard in his report, which reflects counsel's advice on "legal principles

4  relevant to [his] analysis."  (Dkt. No. 940-8 at 3.)  Lucente's report misstated the legal test for

5  design patent obviousness, suggesting it is sufficient if a combination of prior art references

6  makes the patented design obvious to one of ordinary skill.  (*Id.* at 5.)  In fact, design patent

7  obviousness requires identifying a primary reference having a design that is "basically the same"

8  as the patented design. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2012 U.S. App. LEXIS 9720, at

9  *32.  Lucente's report ignored this critical requirement and did *not* assert that any of the alleged

10  "primary obviousness references" is "basically the same" as Apple's patented designs.  (*Id.* at

11  33-42.)

12  When Apple asked Lucente if references were "basically the same" as the Apple designs,

13  Lucente repeatedly refused to say "yes."  (Mot. at 8; Dkt. No. 940 (Bartlett Decl. Ex. 11,

14  corrected version lodged under seal at Dkt. No. 1050) at 46:20-47:15; 55:24-58:9; 87:18-88:6.)

15  Lucente's failure to identify any reference that is "basically the same" renders his obviousness

16  opinion inadmissible.

17  Samsung suggests that Lucente opined that a "combination of Prada screens" is "basically

18  the same" as the patented designs.  (Opp. at 9.)  Lucente said no such thing.  What he said was

19  that "the combination of these screens shows that it would be obvious to a designer of ordinary

20  skill in the art—based on the fact that all of these design elements existed within the phone . . .

21  [to] create what is shown" in the patented design.  (Dkt. No. 940 (Bartlett Decl. Ex. 11, corrected

22  version lodged under seal at Dkt. No. 1050) at 47:2-11.)  But the test is whether a *single* primary

23  reference is "basically the same" as the patented design, not whether "design elements" make that

24  design "obvious."  Lucente's failure to identify any "basically the same" reference was not a mere

25  oversight.  None of the Prada screens looks similar to the Apple designs, separately or combined.

26  Lucente had to ignore visual impressions and resort to abstract "design elements."  (*See* Bartlett

27  Reply Decl. Ex. 1.)

28

1    Similarly, Lucente applied the wrong test for trade dress distinctiveness.  Samsung admits

2    that Lucente "discusses only certain aspects of Apple's claimed trade dress in his Report" and

3    chose "only to discuss three of the [*Sleekcraft*] factors" for likely confusion, but argues that "he

4    set forth the proper legal standards in his Report."  (Opp. at 9-10.)  Merely stating the correct

5    standards does not suffice; those standards must also be applied.  Lucente failed to do this: he did

6    not analyze the trade dress as a whole or apply all eight *Sleekcraft* factors.  (Mot. at 11.)

7    Lucente's "functionality" opinion should likewise be excluded due to his failure to apply

8    the correct test.  (*See* Mot. at 10.)  As this Court held:  "The standard employed to invalidate a

9    design patent based upon functionality requires that the design itself be *dictated by* the

10   functionality of the item."  (Dkt. No. 452 at 13 (emphasis in original).)  While Lucente referred to

11   this test, he confusingly diluted it with weaker tests, and then failed to apply the correct "dictated

12   by function" test.  He stated that "the size, shape, and number of 16 rounded squares are all

13   *functional elements*" but, not surprisingly, never opined that function "dictates" these elements.

14   (*Id.*; Dkt. No. 940-8, Ex. 9 at 20) (emphasis added).)  He opined that almost every aspect of

15   Apple's patented designs is "functional," without explaining why function "dictates" those

16   designs.  (*Id.* at 20-25.)  It does not.  Lucente's own report discloses multiple alternative designs.

17   (*See* Mot. at 10.)  "A design is not dictated solely by its function when alternative designs . . . are

18   available" (Motion at 10, citing *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed.

19   Cir. 1996).)  Samsung's trademark cases do not say otherwise. [3]

20   Finally, Lucente's non-infringement opinion should be excluded because (1) he has no

21   specialized knowledge of what "an ordinary observer" would think, so his opinion would not

22   assist the jury; and (2) he improperly excluded as "functional" virtually every feature of the

23   patented designs.  (Mot. at 11.)  Samsung has failed to rebut Apple's showing that Lucente's

24   opinions should be excluded because he applies the wrong legal standards and lacks specialized

25   ───────────────

26   [3]  *TrafFix* held merely that a trade dress design was functional because it was the subject
     of *a utility patent*, so there was no need to consider alternatives.  *TrafFix Devices v. Mktg.
     Displays*, 532 U.S. 23, 31-32 (2001).  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,

27   supports Apple: it *confirmed* that the existence of alternatives "may indicate whether the
     trademark itself embodies functional or merely ornamental aspects of the product."  457 F.3d

28   1062, 1072 n.8 (9th Cir. 2006) (citation omitted).

1  knowledge on what an "ordinary observer" would think.  (*See* Mot. at 7-11.)

2  **C.   Lehto Applies Incorrect Legal Standards for Functionality.**

3  Mark Lehto's testimony should be excluded because he does not apply the correct legal

4  test for design patent and trade dress functionality.  Samsung does not dispute that Lehto

5  articulated this test in "eight different ways," but contends this is irrelevant because his report

6  refers to the correct "dictated by function" test for design patents.  (Opp. at 12; *see* Mot. at 12.)

7  Stating the correct test without applying it does not suffice.  Lehto applies *different, incorrect*

8  *tests.*  For example, he opines that certain elements "offer functional advantages," are "common,"

9  or "are consistent with standard recommendations of the scientific literature and therefore are

10 functional."  (Dkt. No. 940-9 at 8, 17.)  These statements do not show that these elements are

11 "*dictated*" by function.  His testimony will confuse, not assist, the jury.

12 Samsung claims Lehto analyzed alternatives, but Lehto revealed in deposition that he

13 thinks "looking at alternative designs has nothing to do with determining whether the elements

14 that were in the design patents or the elements in the trade dress were functional."  (Dkt. No. 940

15 (Bartlett Decl. Ex. 13, filed under seal) at 359:6-10.)  This admission puts him directly at odds

16 with controlling law.  *See Rosco*, 304 F.3d at 1378; *Best Lock Corp.*, 94 F.3d at 1566; *L.A. Gear*,

17 988 F.2d at 1123.  Lehto's brief statement in his report that he considered alternatives is not

18 followed by any *actual analysis* (except for "one example") of why the many alternative

19 smartphone and tablet designs on the market are ergonomically unacceptable.  (Dkt. No. 940-9, at

20 30-31.)  Thus, Lehto has no comparative basis to determine whether the claimed design is

21 "dictated by" the use or purpose of a smartphone.  Merely asserting that certain elements have a

22 function does not show that those elements are dictated by" function.  *Hupp v. Siroflex of Am.,*

23 *Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997) ("[T]he fact that the article of manufacture serves a

24 function is a prerequisite of design patentability, not a defeat thereof.  The function of the article

25 itself must not be confused with 'functionality' of the design of the article.").  As discussed above

26 (at 4) *Leatherman Tool* does not support Samsung.  Nor does *Richardson v. Stanley Works, Inc.*,

27 which relates to claim construction, not at issue here.  597 F.3d 1288 (Fed. Cir. 2010).

28 Samsung incorrectly suggests that the functionality test depends on each individual

1  element rather than the entire design, citing an unpublished decision issued before the 2007

2  amendment that allowed citation of unpublished cases.  (Opp. at 12, citing *Five Star*

3  *Manufacturing, Inc. v. Ramp-Lit Manufacturing, Inc.*, 4 Fed. Appx. 922, 2001 WL 120070, at *1

4  (Fed. Cir. Feb. 12, 2001); *see* Fed. Cir. Rule 32.1.)  That case noted that while functionality of

5  elements "may" be relevant, "the ultimate question is whether claimed design, viewed in its

6  entirety, is dictated by the utilitarian purpose of the article."  Lehto failed to address this "ultimate

7  question."  The portions of Lehto's report that Samsung cites merely state the test, without

8  providing even a conclusory analysis of the overall design.  (*See* Opp. at 12, citing Dkt. No. 940-

9  9, at 6, 24, 29, 30.)

10  Lehto also applied the wrong legal standard for trade dress functionality.  Contrary to

11  Samsung's assertion, the availability of alternative designs *is* a relevant factor in assessing

12  functionality of a trade dress.  *Disc Golf Ass'n, Inc. v. Champion Discs, Inc*., 158 F.3d 1002, 1006

13  (9th Cir. 1998).  Lehto's dismissal of alternative designs renders his analysis defective.

14  Moreover, his training as an ergonomist has no bearing on the other factors of advertising and

15  manufacturing costs, so he is not qualified to opine on those factors.

16  **D.    Godici Lacks Relevant Expertise and Opines on Legal Issues**

17  Nicholas Godici's opinions should be excluded because (1) he lacks expertise in design

18  patents and industrial design; and (2) his opinions go to legal issues that would not assist the jury.

19  (Mot. at 13-17.)  Samsung does not dispute that Godici has never examined a design patent or

20  rendered an opinion on design patent claim construction, infringement, validity, or patentability.

21  (*See id.* at 14.)  Samsung contends that Godici's opinions do not require "extensive experience as

22  a design patent examiner," because he is "simply explaining the PTO's procedural rules," which

23  are mostly "identical for both design and utility patents."  (Opp. at 16.)

24  Samsung is wrong because all of Godici's opinions are specific to design patents.  His

25  first opinion is that "Design Patents Are Understood By Patent Examiners To Have a Narrow

26  Scope" (Dkt. No. 940-10, at 10), an opinion Samsung does not even attempt to defend.

27  His second opinion is that "The Scope Of The Asserted Design Patents Is Plainly Narrow

28  Because Apple Has Obtained Subsequent Design Patents On Very Similar Designs" (*id.* at 12).

Godici is not qualified to opine on scope because he is not a design patent expert or one of ordinary skill in the art, and patent scope is a legal issue for which expert testimony is improper. *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d at 1356. 1364 n.6 (Fed. Cir. 2008).  His opinion should be excluded also because it incorrectly assumes that a *later* patent can retroactively narrow an *earlier* patent.  *See Tone Bros., Inc. v. Sysco Corp.*, No. 4:90-cv-60011, 1992 WL 200128, at *5 (S.D. Iowa Mar. 17, 1992), *vacated on other grounds*, 28 F.3d 1192 (Fed. Cir. 1994); Dkt. No. 940 (Bartlett Decl. Ex. 15, filed under seal) at 103:14-22 (Godici not aware of any authority for this premise).  Samsung contends Godici can competently opine that the PTO will not issue a later patent that claims nothing novel compared to a prior patent (Opp. at 13-14) but Godici, goes further.  He opines that Apple's design patents "Must Have A Narrow Scope" in view of later patents.  (Dkt. No. 940-10, at 14, 15, 19, 21, 23, 25.)

As to Godici's third opinion, that "The Drawings Of Certain Of The Asserted Design Patents Are Ambiguous Or Unclear" (*id.* at 36), Samsung admits that "processing design patent applications containing broken lines" requires "specialized knowledge." (Opp. at 16.)  Yet, Samsung fails to prove that Godici has such "specialized knowledge."  Godici's utility patent experience is irrelevant because "broken line" rules are specific to design patents.  *See* 37 C.F.R. § 1.152 (rule on design patent drawings, including broken lines).  Godici also contradicted his opinion on broken lines.  (Mot. at 16-17.)  Samsung does not attempt to rebut this.

Unable to show relevant expertise, Samsung resorts to generalities.  Samsung asserts that Godici worked at the PTO for "almost 33 years" and has been allowed to testify about "PTO procedures" in other cases.  (Opp. at 14-15.)  This is irrelevant because Godici's opinions go far beyond "PTO" procedures"; he purports to opine that Apple's design patents have "narrow scope" and are "ambiguous."  Samsung cites no case allowing Godici (or anyone else who lacks design patent expertise) to testify on design patent issues such as scope or broken lines.  Indeed, Samsung's only Federal Circuit case *excluded* substantive testimony about the patents-in-suit.[4]

---

[4] *Sundance*, 550 F.3d at 1361 n.2 (patent attorney not qualified to testify about validity and infringement.)  Samsung's old district court cases allowing substantive testimony from patent law experts not skilled in the relevant art are obsolete in view of *Sundance*.  *See e.g.*, *Lemelson v. General Mills, Inc.*, No. 77-4558, 1987 WL 26134, at *2 (N.D. Ill. Dec. 1, 1987).

1  Samsung's cases show that testimony about PTO procedures generally involves special

2  circumstances or is narrow in scope.[5]  This case does not involve special issues that would make

3  the design patent application process relevant, and Godici is not qualified to testify about design

4  patent procedures in any event.

5          **E.**        **The Mantis, Mazis, and Kamins Surveys Are Irrelevant and Unreliable.**

6               **1.**        **George Mantis's Confusion Surveys are Irrelevant.**

7          Apple dismissed its claims for infringement of the iPhone trade dress, rendering Mantis's

8  iPhone-related testimony irrelevant.  The purpose of narrowing claims was to reduce the number

9  of witnesses at trial, and Mantis is a perfect example of a witness who can now be eliminated.

10  Samsung's belated insistence that Mantis's testimony is still relevant to iPhone trade dress

11  "dilution" should be rejected.  While it is true, as Samsung correctly states (at 18), that evidence

12  of consumer confusion is probative of consumer association in a dilution context, the opposite is

13  not true.  "The dilution theory grants protection to strong, well-recognized marks even in the

14  absence of a likelihood of confusion."  *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks and*

15  *Unfair Competition* § 24:72 (2012); *see also Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634

16  (9th Cir. 2007).  Consumers who know a given product is not made by Apple—consumers who

17  are not confused—can still "associate" the look of a product with Apple, which is the relevant test

18  for dilution.  Samsung's opposition fails to address this point at all.  Because Mantis's phone

19  confusion survey will not assist the jury in determining any facts in issue, it should be excluded.

20  *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management*, 618 F.3d 1025, 1036

21  (9th Cir. 2010) (survey evidence must be relevant to be admitted).

22          Mantis's tablet confusion survey is irrelevant to Apple's iPad trade dress claims because it

23

24       [5] *See Reiffen v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1145-45 (N.D. Cal. 2003) (special issue of unreasonable delay in prosecution); *Philip M. Adams & Associates, LLC v. Winbound*

25  *Electronics Corp.*, 2010 WL 3791970 at *3 (D. Utah Sep. 21. 2010) (special issue of inequitable conduct); *Degelman Industries Ltd. v. Pro-Tech Welding and Fabrication*, 2011 WL 6752565 at

26  *5-6 (W.D.N.Y. Dec. 23, 2011) (PTO procedures, but not validity and inequitable conduct); *Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.*, 79 F. Supp. 2d 252, 255 (W.D.N.Y. 2000)

27  (patent application process, but not possible defects in process); *Flowers Bakeries, Inc. v. Interstate Bakeries Corp.*, 2010 WL 3075318, at *2-3 (N.D. Ga. 2010) (trademark application

28  procedures, but not whether examiners followed correct procedures).

1    is a simple reading test.  Respondents identified Samsung as the maker of its tablets not because

2    they considered the appearance of the tablet, but because the phrasing of the question directed

3    respondents to search for the "prominent on-product position of the Samsung trademark."  (*See*

4    Opp. at 17.)  Courts have rejected such "reading tests" not only in surveys that employ group

5    displays or a sequence of products (*see* Opp. at 18) but also in surveys like Mantis's in which

6    each respondent is shown a single product but may be distracted by a brand name.  *See*

7    *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 628-29 (S.D.N.Y 2007) (excluding a

8    confusion survey to test a trademarked logo).

9                    **2.      Michael Mazis's Icon Survey is Irrelevant and Unreliable.**

10           Samsung also persists in offering the expert opinions of Michael Mazis, despite the fact

11   the individual trademarked icons Mazis surveyed have been dropped from the case.  Mazis's

12   report says the survey was designed to determine whether eight of Apple's icon trademarks have

13   acquired distinctiveness (*see* Dkt. No. 940 (Bartlett Decl. Ex. 19, filed under seal) at 2), but

14   Samsung now states that it is offering Mazis's opinions to show lack of fame of Apple's trade

15   dress.  (*See* Opp. at 19.)  Mazis's survey is entirely unrelated to Apple's trade dress.  Although

16   one element of Apple's asserted trade dress is a "matrix" of colorful icons, Mazis did not survey

17   whether a matrix of icons had acquired distinctiveness.  Instead, he surveyed only whether

18   consumers associated *individual* icons shown on index cards with Apple.  (*See* Dkt. No. 940

19   (Bartlett Decl. Ex. 19, filed under seal) at 8.)  But the jury must decide whether "the whole

20   collection of features" that makes up Apple's trade dress is famous, not whether isolated

21   components of a single feature are famous.  *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo*

22   *Winery*, 150 F.3d 1042, 1050 (9th Cir. 1998.)  Because Mazis's survey will not aid the jury in

23   determining any element of Apple's trade dress claims, it should be excluded.

24                    **3.      Michael Kamins's Survey Is Unreliable**

25           Samsung misquotes the standard for a proper control stimulus.  A proper control should

26   share "as many characteristics with the experimental stimulus as possible, with the *key exception*

27   of the characteristic whose influence is being assessed."  (*See* Mot. at 20 (emphasis added,

28   citation omitted).)  In this case, the characteristic being assessed is Apple's trade dress.  A proper

control would have as many iPhone characteristics as possible, without the Apple trade dress. Kamins's control phone, the LG 2x did the opposite. He chose a "control" that had *all* the features of the asserted trade dress. As a result, it could not serve to estimate the degree of background "noise" in the survey. The results show that the control was itself causing consumer confusion. The LG 2x yielded ███████████████████████████████████████████ ████████████████████████████████. (*See* Dkt. No. 940 (Bartlett Decl. Ex. 20, filed under seal) at 27.) As one of Samsung's experts in this case, Jacob Jacoby, has written, if a control yields confusion estimates exceeding 10 percent, "its utility as a control [is] thereby compromised," because it is just as confusing as the test stimuli. Jacob Jacoby, *Experimental Design and the Selection of Controls in Trademark and Deceptive Advertising Surveys*, 92 Trademark Rep. 890, 932 (2002).

### F. Wagner Applies Incorrect Legal Standards and His Apportionment Analysis Is Unreliable.

#### 1. 35 U.S.C. § 289 Precludes Wagner's Opinion.

Apple's motion cited the statute, a federal circuit opinion, and decisions from this and another district court, all establishing that a defendant *cannot* apportion an award of profits under 35 U.S.C. § 289. (Mot. at 21.) Samsung cites no contrary authority, it merely complains that the law is unjust. The House Report Samsung cites is even used by the Federal Circuit to rule that apportionment is not proper. *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1441 (Fed. Cir. 1998). The law controls, regardless of Samsung's view.

Samsung separately argues that Wagner can provide the jury with legally irrelevant information because Apple did not file a summary judgment motion. But this is a pure legal issue, not a factual dispute, and Daubert motions are properly used to stop experts from introducing evidence that is based on incorrect legal standard. *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996); *Am. Med. Sys. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 901 (D. Minn. 2010). Jury instructions will come too late to undo the confusion created in the minds of the jurors on this issue of black-letter law.

2. **Wagner's *Panduit* Analysis Is Wrong.**

Samsung cites no authority to support Wagner's hunch that the ███████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████" as *DePuy Spine Inc. v. Medtronic Sofamore Danek, Inc.*, 567 F. 3d 1314, 1330 (Fed. Cir. 2009) holds.  Wagner admits that his approach is inconsistent with *DePuy Spine*.  (Dkt. No. 940 (Bartlett Decl. Ex. 22, filed under seal) ¶ 121.)  His opinions in paragraphs 121 to 161 that apply this incorrect standard should be excluded.

3. **Wagner's Apportionment of Profit is Unreliable.**

Samsung recognizes that Wagner's apportionment analysis cannot survive Dr. Winer's analysis, and thus asks the Court to ignore Dr. Winer's declaration.  Samsung incorrectly claims the declaration is "an unauthorized and untimely sur-rebuttal to Wagner's report" to argue that. (Opp. at 22.)  The cases Samsung cites are inapposite, however, as both involved undisclosed expert opinions used to support a summary judgment motion and thus required evidence admissible at trial.  *Truckstop.net LLC v. Sprint Comms. Co.*, 537 F. Supp. 2d 1126, 1132-34 (D. Idaho 2008); *Trilogy Comms., Inc. v. Times Fiber Comms., Inc.*, 109 F.3d 739 (Fed. Cir. 1997).

In contrast, Dr. Winer's declaration addresses solely the admissibility of Wagner's opinions, which is proper in support of a *Daubert* motion.  *See Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 190 (S.D.N.Y 2006).  Courts have explicitly rejected Samsung's argument that expert declarations cannot be used in support of a *Daubert* motion.  *City of Owensboro v. Ky. Utils. Co.*, No. 4:04CV-87-M, 2008 U.S. Dist. LEXIS 79292, at *2-4 (W.D. Ky. Oct. 8, 2008) ("Expert testimony that does not comply with [Rule 26] is therefore only excluded at trial and may be properly considered on a *Daubert* determination.")

Samsung does not counter Dr. Winer's testimony that Wagner's methods are unprecedented and improper.  (Dkt. No. 940 (Winer Decl. filed under seal) ¶¶ 14, 17.)  Samsung provides nothing to show that Wagner's analysis is based on an accepted, peer-reviewed method, or that it has ever been used anywhere before.  Wagner himself could point to no academic study or other source to support it.  (*See* Dkt. No. 940 (Bartlett Decl. Ex. 23, filed under seal) at 368:22-

1   369:1; 369:17-20; 371:1-5.)  Instead, Samsung submits three random articles—about Norwegian

2   farmers and Likert scales—but provides no evidence that the articles apply in any way to what

3   Wagner did.  (Opp. at 23 n.17; 24 n.18.)  They do not.  Not one of these articles discusses

4   consumer demand, consumer products, or Wagner's methods nor resolves the deficiencies in his

5   analysis.

6        The law is clear.  Experts must use a methodology accepted by other experts in the

7   relevant field.  They cannot do what Wagner has done—make up a new method from whole-

8   cloth, label it "reasonable" or "logical" and seek its admission under Rule 702.  *See Wagner v.*

9   *County of Maricopa*, 673 F.3d 977, 989-990 (9th Cir. 2012) (affirming exclusion of expert

10  testimony that was based on a "common sense idea" rather than a "scientific theory or method.")

11       Equally significant, Samsung asks the Court to *assume* without proof the heart of

12  Wagner's analysis— ███████████████████████████

13  ████████████████████████████████████████

14  ████████████████████████████████████████

15  ███████████████  (Opp. at 25.)  Wagner did not show this; he admits he *assumed* it.  (Dkt.

16  No. 940 (Bartlett Decl. Ex. 23, filed under seal) at 398:22-400:12.)  Without that critical

17  assumption, Wagner's analysis disintegrates because he cannot ████████████████████

18  ██████████████  Samsung bears the burden to show its method yields reliable results,

19  and Rule 702 does not permit experts to "assume" an answer—particularly where that answer

20  purports to ████████████████████████.  *In re Live*

21  *Concert Antitrust Litigation*, No. 06-ML-1745), 2012 WL 1021081 (C.D. Cal. Mar. 23, 2012)

22  (excluding opinion where expert made baseless assumptions); *Hilderman v. Enea Teksci, Inc.*,

23  No. 05-cv-1049, 2010 WL 546140 (S.D. Cal. Feb. 10, 2010) (expert's opinion "unreliable

24  because it rests on a number of unfounded assumptions.")

25       Wagner's apportionment opinions require proof to support each of three steps, but

26  Samsung's opposition fails to support any of them.  Samsung now suggests without support that

27  the ████████████████████████ are unchallenged and will separately

28  support step one.  (Opp. at 22-23.)  That is wrong.  First, step one was the product of Wagner's

1   improper. ████████████████████████████

2   ████████████████████████████████████████

3   ████████████████████████████████. (Dkt. No. 940

4   (Winer Decl., filed under seal) ¶ 28.)  Third, contrary to Samsung's claims, ████████

5   ████████████████████████████████████████

6   (Mot. at 22-24.)

7        Moreover, neither Samsung nor Wagner attempts to justify the next steps of his

8   methodology—████████████████████████████████

9   ████████████████████████████████████████

10  ████████████████████████████ No declaration, article, report

11  or other source explains or justifies it.

12       Next, Samsung admits, ████████████████████

13  ████████████████████████████████████

14  ████████████████████████████████

15  ████████████████████████████████

16  ████████████████████████████████████

17  ████████████████████████████████████

18  ████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████

21  ████████████████████████████████████

22       Wagner's apportionment analysis represents what Rule 702 precludes.  It cannot be

23  validated externally.  It assumes a final answer.  It uses a series of mathematical "hoops" that a

24  jury cannot hope to follow.  It yields arbitrary answers.  It should be excluded.

25  **III.   CONCLUSION**

26       For the foregoing reasons, the Court should exclude the opinions proffered by Sam

27  Lucente, Itay Sherman, Mark Lehto, Nicholas Godici, George Mantis, Michael Mazis, Michael

28  Kamins, and Michael Wagner.

1    Dated:  June 7, 2012                    MORRISON & FOERSTER LLP

2

3                                            By:    /s/ Michael A. Jacobs

4                                                   Michael A. Jacobs

5                                            Attorneys for Plaintiff
                                             APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28