1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California  94065-2139
8  Telephone:  (650) 801-5000
   Facsimile:  (650) 801-5100
9

10 Michael T. Zeller (Bar No. 196417)
   michaelzeller@quinnemanuel.com
11 865 S. Figueroa St., 10th Floor
   Los Angeles, California 90017
12 Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
13

14 Attorneys for SAMSUNG ELECTRONICS CO.,
   LTD., SAMSUNG ELECTRONICS AMERICA,
15 INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
16

17               UNITED STATES DISTRICT COURT

18      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19

20 APPLE INC., a California corporation,          CASE NO. 11-cv-01846-LHK (PSG)

21               Plaintiff,                       **SAMSUNG'S REPLY IN SUPPORT OF**
                                                  **MOTION TO STRIKE EXPERT**
22        vs.                                     **TESTIMONY BASED ON UNDISCLOSED**
                                                  **FACTS AND THEORIES**
23 SAMSUNG ELECTRONICS CO., LTD., a
   Korean business entity; SAMSUNG              Date:  June 21, 2012
24 ELECTRONICS AMERICA, INC., a New            Time: 10:00 a.m.
   York corporation; SAMSUNG                    Place: Courtroom 5, 4th Floor
25 TELECOMMUNICATIONS AMERICA,                  Judge: Hon. Paul S. Grewal
   LLC, a Delaware limited liability company,
26
                                                **PUBLIC REDACTED VERSION**
27               Defendant.

28

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ........................................................................................ 1

II.    THE CHALLENGED EXPERT OPINIONS SHOULD BE STRICKEN ........................... 1

    A.     Musika ............................................................................................................... 1

        1.     Apple's Concealment of ███████████████
        Constitutes Abuse of the Discovery Process and Severely Prejudiced
        Samsung ................................................................................................. 1

        2.     Apple's Belated Production of Contradictory ████████ Also
        Substantially Prejudiced Samsung ....................................................... 4

        3.     The Court Should Strike Mr. Musika's
        Opinion in Light of Apple's Discovery Abuse ..................................... 6

    B.     Givargis ............................................................................................................. 6

    C.     Maharbiz ............................................................................................................ 9

    D.     Balakrishnan .................................................................................................... 10

    E.     Sood ................................................................................................................. 11

    F.     Bressler ............................................................................................................ 12

    G.     Kare ................................................................................................................. 13

    H.     Winer ............................................................................................................... 14

III.   CONCLUSION ............................................................................................................ 15

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

### **Cases**

4
*AVX Corp. v. Cabot Corp.*,
    251 F.R.D. 70 (D. Mass. 2008) ............................................................................6

5

6
*Automated Merchandising Sys., Inc. v. Crane Co.*,
    2011 WL 5025907 (N.D. W.Va. Oct. 21, 2011) ....................................................2

7
*Avago Techs. General IP Ltd. v. Elan Microelecs. Corp.*,
    2007 WL 2433386 (N.D. Cal. Aug. 22, 2007) ......................................................8

8

9
*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) .............................................................................13

10
*Genentech Inc v. Trs. of the Univ. of Pa.*,
    2012 WL 424985 (N.D. Cal. Feb. 9, 2012) ..........................................................8

11

12
*Gorham v. White*,
    14 Wall. 511 (1871) .............................................................................................13

13
*High Point Sarl v. Sprint Nextel Corp.*,
    2012 WL 1533213 (D. Kan. April 30, 2012) ........................................................2

14

15
*L.A. Gear, Inc. v, Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) ...........................................................................13

16
*Lexington Ins.  Co. v. Comm'w. Ins. Co.*,
    1999 WL 33292943 (N.D. Cal. Sept. 17, 1999) .................................................14

17

18
*Lucent Techns., Inc. v. Microsoft Corp.*,
    2011 WL 5513225 (S.D. Cal. Nov. 10, 2011) .......................................................3

19
*In re MSTG, Inc.*,
    675 F.3d 1337 (Fed. Cir. 2012) .............................................................................4

20

21
*Magnivision, Inc. v. Bonneau Co.*,
    2003 U.S. Dist. LEXIS 27890 (C.D. Cal. Dec. 18, 2003) ...................................10

22
*Monolithic Power Sys., Inc. v. 02 Micro Int'l, Ltd.*,
    476 F. Supp. 2d 1143 (N.D. Cal. 2007) ................................................................6

23

24
*Nguyen v. IBP, Inc.*,
    162 F.R.D. 675 (D. Kan. 1995) ...........................................................................12

25
*Oracle USC, Inc. v. SAP AG*,
    264 F.R.D. 541 (N.D. Cal. 2009) ..........................................................................6

26

27
*Resqnet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ...............................................................................4

28

*Uniloc, USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ...................................................................................................4

**Statutes**

37 C.F.R. §1.56 .................................................................................................................................2

Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) ..........................................................................................11, 12

Fed. R. Civ. P. 26(b)(1) ...................................................................................................................2

Fed. R. Civ. P. 30(b)(6) ...............................................................................................................2, 5

I.     **PRELIMINARY STATEMENT**

The record belies Apple's assertion that it has "fully complied with its disclosure obligations under the Patent Local Rules and the Federal Rules of Civil Procedure."  In the instances Samsung has identified, Apple's experts have relied on undisclosed arguments and critical evidence to support extravagant damages claims, and in fact Apple has continued to produce new evidence even since the filing of this motion.  Samsung agrees with Apple that parties are not obliged to disclose every conceivable fact in response to a contention interrogatory, or provide all possible supporting evidence in Local Rule contentions.  But the same disclosure rules apply to both sides, and Apple cannot simultaneously defend its conduct here as fulfilling its obligations, while applying a far more rigorous standard in its own motion to strike portions of Samsung's experts.

II.    **THE CHALLENGED EXPERT OPINIONS SHOULD BE STRICKEN**

    A.    **Musika**

        1.    **Apple's Concealment of ███████████ Constitutes Abuse of the Discovery Process and Severely Prejudiced Samsung**

The following facts are undisputed:  Apple has produced ████████████████ since the close of discovery; Apple produced all but one of the concealed ██████ on or after April 16 – the day Samsung served its rebuttal damages report; Apple has produced ███████ ██████ since Samsung filed its motion to strike; and Apple has "promised" to produce ████ ██████████████████ before the hearing.[1]  (Dkt. No. 934-3, at 22.)  Apple's concealment of up to ████████████████ while demanding an extravagant reasonable royalty sum, is a clear abuse of discovery and has severely prejudiced Samsung.  (Dkt. No. 935, Ex. T, at 8.)

None of Apple's purported justifications can excuse this violation.  First, Apple never informed Samsung that it was ███████████████ based on its boilerplate "breadth" objection to Samsung's document requests.  Instead, Apple *feigned* compliance by serving what it claimed was a comprehensive list of ████████████ and making a Rule 30(b)(6) witness

---

[1]    On June 6, 2012, Apple produced ███████████████████.  *See* Declaration of Christopher E. Price in Support of Reply ("Price Reply Dec."), Exs. 1, 2, 3, 4, and 5.

1    available, and by repeatedly assuring Samsung that it had produced ██████████████████

2    and was conducting further reviews to ensure compliance.  (Dkt. No. 936, Exs. H, at 2 and X, at 2;

3    Dkt No. 935, Ex. U, at 12.)  Yet, all this time, Apple was secretly withholding ████████████

4    ████████████████   that it does not dispute could have been produced months ago.

5          Nor can Apple justify its misconduct by declaring the ██████████████   are not

6    '█████████'  Even if that were true – and it is not – it is black-letter law that "even something

7    that is ultimately determined to be inadmissible is still discoverable under Federal Rule of Civil

8    Procedure 26(b)(1)."  *Automated Merchandising Sys., Inc. v. Crane Co.*, 2011 WL 5025907, at *6-

9    7 (N.D. W.Va. Oct. 21, 2011) (compelling production of settlement agreements); *see also High*

10   *Point Sarl v. Sprint Nextel Corp.*, 2012 WL 1533213, at *7 (D. Kan. April 30, 2012) (Relevancy

11   "does not require that the Court determine that [the licenses] would be sufficiently comparable to

12   … be admissible.").  Apple is not the gatekeeper.  Samsung had the right to evaluate *all* of Apple's

13   ████████████████   that relate to the accused products before the close of discovery to

14   determine for itself whether the ██████████████████

15          In any event, Samsung has now discovered that numerous ████████  Apple has been

16   withholding for months *are* in fact ██████████

17   • ████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████

Mr. Musika's conclusory and self-serving declaration asserting that the ▮▮▮▮▮

▮▮▮▮▮▮▮ o the "hypothetical negotiation" is meritless.  (Musika Dec., ¶ 11.) ▮▮▮▮▮ need not

cover the patents in suit – as Musika claims – for a reasonable royalty analysis.  *Uniloc, USA, Inc.*

1    *v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).  At least ██████████

2    █████████████████, which Mr. Musika identifies as the most relevant period.  (Dkt No.

3    935, Ex. S, at 72-73.)  Finally, the Federal Circuit recently reiterated "that settlement agreements

4    can be pertinent to the issue of reasonable royalties."  *See In re MSTG, Inc.*, 675 F.3d 1337, 1348

5    (Fed. Cir. 2012) (affirming order to compel production of settlement negotiation documents); *see*

6    *also Resqnet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (finding that "the most

7    reliable license in [the] record arose out of litigation").

8        Apple's grave misconduct has severely compromised Samsung's ability to get a fair trial

9    on damages.  Apple is claiming extravagant royalty damages, yet it hid (and is still withholding)

10   ████████████████████ from Samsung's technical and damage experts while they prepared

11   their reports.[2]  Apple prevented Samsung from deposing Apple witnesses (including Mr. Musika

12   himself) about ███████████, seeking related documents, and pursuing important third-party

13   discovery from Apple's ████████████████████████████████.

14            **2.    Apple's Belated Production of Contradictory ███████████ Also**

15            **Substantially Prejudiced Samsung**

16       Apple's repeated production and clawing back of contradictory ███████████ has also

17   severely prejudiced Samsung.  Apple's claim that it only updated the ████ to accommodate

18   Samsung's request is contrary to evidence.  (Dkt. 996-4, at 21:18-20.)  Samsung merely requested

19   redacted versions of the ████████████ Apple had already clawed back, as the protective order

20   requires.  (Dkt. No. 936, Ex. F.)  Apple is solely responsible for producing ████████████████

21   that contradicted and superseded the ██████ Apple made available at the deposition of its Rule

22   30(b)(6) witness.  Apple insists there is no prejudice because the parties' damages experts do not

23   rely on the ██████  In fact, this just underscores the prejudice.  Apple's ██████ were so

24   contradictory, transitory, and undependable that not even its own expert would rely on them.

25

26   _____

27   [2]  Whether or not Mr. Musika relied on the ███████████ is irrelevant.  Samsung was denied the
     opportunity to use them in its own affirmative damages case and in rebutting Mr. Musika's flawed

28   opinions.  And the fact that Samsung had the opportunity to depose Mr. Musika about a few of the
     concealed ███████████ at his May 14, 2012 deposition is irrelevant.  Mr. Musika is a damages
     expert.  He has no factual knowledge about any of the concealed ███████████.

1    Apple claims that there is no prejudice because the ████ it produced on March 8 and

2  thereafter were mere updates, providing "████████████████████████████████" (*Id.* at

3  21:8-14.)  Nonsense.  The ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████████████

5  ██████████████ (Dkt. No. 936, ¶ 5; *compare* Exs. K and M thereto.)  The ██████████

6  ████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████████████

11 ██████████████████████████████ (*Id.*)  These changes are not trivial, reflecting more

12 than ████████████████████████████████████████████████.  Yet, Apple denied

13 Samsung's repeated requests for an additional deposition with Apple's Rule 30(b)(6) witness on

14 these issues.[3]

15    The bottom line is that Apple's egregious discovery abuse has prevented Samsung from (a)

16 obtaining any information on Apple's ██████████████, a critical component in a damages

17 analysis; and (b) obtaining a meaningful picture of Apple's██████████████.  Apple concealed

18 comparable licenses that would have favored Samsung's damages analysis and prevented

19 Samsung from obtaining additional, highly material discovery.  (*See* Decl. of Michael J. Wagner,

20 ¶¶ 32-34.)  Under these circumstances, Samsung cannot properly respond to Apple's damages

21 claim.  Given that this motion likely will not be resolved until a month before trial, Apple cannot

22 unring the bell.  Striking the reasonable royalty-related testimony of Apple's damages expert is the

23 only effective remedy for the extreme prejudice Apple's misconduct has caused.  *See Oracle USC,*

24 *Inc. v. SAP AG,* 264 F.R.D. 541, 557 (N.D. Cal. 2009) (striking expert testimony where late

25

26  ───────────────
    [3]    Mr. Musika offers further previously undisclosed opinions about the ████████████████████

27 ██████████ (Musika Dec., ¶¶ 13-14.)  He does not, however, dispute the salient facts.  Specifically,
    Apple refused Samsung's requests to produce ██████████████ on the basis that they were
    irrelevant.  Yet, Apple cherry picked ██████████████ and fed it to its damages expert, waiting

28 until the last day of discovery to produce it.  (Price Dec., ¶ 26; Dkt. No. 936, Exs. FF and GG.)
    On that basis, the Court should strike Mr. Musika's related analysis.

1    production of damages theories prejudiced defendant by precluding sufficient time for expert

2    analysis); *AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 77 (D. Mass. 2008) (striking damages-related

3    information produced after discovery closed because moving party was denied discovery).

4            **3.    The Court Should Strike Mr. Musika's** ███████████
               **Opinion in Light of Apple's Discovery Abuse**

5

6            Apple does not dispute that Samsung is entitled to the information underlying Apple's two

7    conclusory, one-page ██████████████████████████████. (Price Reply

8    Dec., Exs. 20 and 21.)  Instead, Apple claims that Samsung has not made a sufficient effort to

9    obtain the information, citing *Monolithic Power Sys., Inc. v. 02 Micro Int'l, Ltd.*, 476 F. Supp. 2d

10   1143, 1155 (N.D. Cal. 2007).  Not so.  Samsung has made extensive efforts to obtain the requested

11   information, to no avail.[4]  In addition, unlike the plaintiff in *Monolithic*, which claimed it

12   "needed" information on an issue (damages) as to which it bore the burden of proof, 476 F. Supp.

13   2d at 1155, it is Apple, not Samsung, that has the burden of proving that it possessed ███████

14   ██████   As Mr. Musika admits, a necessary condition for his damages analysis is "████████

15   ████████████████████████████████████████████████████."  (Dkt. No.

16   935, Ex. T, at 40:19-20.)  Yet, despite having the burden to prove ███████ Apple has flouted its

17   discovery obligations and refused to produce foundational documents regarding this issue.

18        **B.    Givargis**

19           The document Dr. Givargis now dubs a "mere tutorial," and upon which he relies to argue

20   that Samsung's '711 patent is invalid (Dkt. No. 996, Ex. 4, at 14-16), is in fact a desperate attempt

21   to bridge a gap in Apple's invalidity analysis.  Apple's invalidity arguments rely on phones that

22   were capable of supporting Java Midlets – not applets – and documents about Java Midlets.  There

23   was *no* evidence that any of the prior art devices were capable of supporting Java Applets.  Dr.

24   Givargis now attempts to rely on the "mere tutorial" to contend for the first time that Java Midlets

25

26   ─────────────────────
       [4]   Samsung served numerous requests for production seeking this information (Price Dec., Ex.
27   15, Request Nos. 376, 415-420, 424-425, and 428 (requesting "All DOCUMENTS RELATING
     TO the capacity to manufacture the APPLE ACCUSED PRODUCTS at any point in time.").
28   Samsung also immediately demanded the information following Mr. Buckley's deposition, placed
     the issue on the agenda for the parties' meet and confer, and demanded at the meet and confer that
     Apple produce the information underlying the ██████ but Apple refused.  (Dkt. No. 934, Ex. 5.)

*are* Java Applets.  This belatedly disclosed document is the only document which even mentions both Java Applets and Java Midlets.  (Dkt. No. 939, Ex. 1, at 14.)  As Java Midlets and Java Applets are two different technologies, this belatedly disclosed reference underlies what is in fact a new theory of invalidity.

Apple provides no explanation, let alone justification, for its untimely disclosure of this entirely new theory.  During claim construction proceedings, Dr. Givargis submitted a declaration and was first deposed in December of 2011, regarding his opinion on the very same claim term ("applet") he now seeks to support with the late disclosed document.  (Dkt. No. 540-1, Ex. E, at 2, 4.; *id.* Ex. M.)  Yet, nowhere does Apple cite any timely disclosed materials or testimony to support Dr. Givargis' new opinion that "Java Midlets" are "Java Applets."  (Dkt. No. 996, Ex. 4, at 14-16.)  Indeed, while Dr. Givargis ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████  (Dkt. No. 996, Ex. 4, at 14-16; Dkt. No. 935, Ex. M, at 122:11-122:18).)  Thus, Apple's argument that this evidence is simply duplicative is patently false.  *Genentech Inc v. Trs. of the Univ. of Pa.,* 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012) ("the court . . . looks to the nature and scope of the theory of invalidity disclosed and whether the challenged report section merely provides an evidentiary example or complementary proof in support thereof, or itself *advances a new or alternate means* by which the jury could find the claim at issue invalid.") (emphasis added).)  Samsung could not have anticipated Dr. Givargis' opinion based on the documents Apple disclosed.

Lastly, Apple complains that Samsung seeks to strike significant portions of Dr. Givargis' report.  Yet Apple does not deny that in each of those paragraphs, Dr. Givargis adopted an invalidity position that was not disclosed in Apple's Invalidity Contentions, nor does Apple deny that Dr. Givargis mischaracterizes, and ultimately changes, the invalidity theories behind timely disclosed references.  *Avago Techs. General IP Ltd. v. Elan Microelecs. Corp.*, 2007 WL 2433386, at *1 (N.D. Cal. Aug. 22, 2007) (continued reference to a previously undisclosed prior art reference raises the "inference" that a party relied on the reference).)

1    Had Apple timely disclosed this document, Samsung would have had sufficient time to

2  present documentary evidence rebutting Dr. Givargis' new opinion that Java Midlets are Java

3  Applets.  Therefore, the Court should strike all portions of Dr. Givargis' report in which he

4  contends Java Midlets are Java Applets.

5    The Court should also strike all of Dr. Givargis' new non-infringement theories regarding

6  "MP3 mode" and "standby mode" because Apple failed to disclose them in response to Samsung's

7  non-infringement interrogatory.  (Dkt. 996-4, at 17-18.)  Apple devotes two pages to fabricating

8  an argument that its new theories were necessitated by Dr. Yang's report which itself purportedly

9  disclosed new theories of infringement.  Tellingly, however, Apple did not move to strike Dr.

10  Yang's opinion on this basis, and Dr. Givargis did not describe his opinion as a response to any

11  "new opinions" of Dr. Yang.  (Dkt. No. 939, Ex. 1, at 11-13.)

12    Nonetheless, Apple strains to contend that Dr. Yang's report improperly expanded on the

13  claim term "selecting" within the context of selecting and playing an MP3 file.  (Dkt. No. 996, Ex.

14  4, at 17.)  Not so. ***Nowhere*** in either Dr. Givargis' report or his deposition does Dr. Givargis even

15  attempt to tie his new non-infringement theories to Dr. Yang's supposed expansion of the term

16  "selecting."  Instead, Dr. Givargis testified that ███████████████████████████████████

17  ██████████████████████████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████"  (*See, e.g.*, Dkt. No. 935, Ex. M,

20  at 165:22-166:8, 174:21-175:4.)  Thus Dr. Givargis had no problem understanding Samsung's

21  Infringement Contentions in order to apply his invalidity analysis.

22    Even if Apple's argument were credible, and it is not, Apple fails to connect what it

23  perceives as a "newly clarified and expanded theory of infringement" with Dr. Givargis' new non-

24  infringement theories regarding an MP3 mode and standby mode.  Thus, while Apple complains

25  that Dr. Yang's infringement report "for the first time alleges that three separate steps are involved

26  in practicing the 'selecting' claim element," it does not explain why those steps differ from

27  Samsung's infringement contentions (aside from using different words to describe the same claim

28  element) or how Dr. Givargis' new non-infringement theories (that Apple devices do not have a

1   MP3 mode or standby mode) relate to the supposed "new infringement theories" contained in Dr.

2   Yang's report.  (Dkt. No. 996, Ex. 4, at 17.)  As such, it should be stricken.

3         **C.    Maharbiz**

4         Apple's purported justifications for failing to disclose the SEM Analyses are baseless.

5   First, the SEM Analyses are not entitled to work product protection because they were conducted

6   for the purpose of inclusion in Dr. Maharbiz's expert report and only contain factual information

7   relating to the accused products under a microscope.[5]  Second, Apple should not be rewarded for

8   its tactical decision to withhold this testing from Samsung during fact discovery, depriving

9   Samsung of any opportunity to investigate the methodology underlying the SEM Analyses,[6] the

10  reliability of those tests, and the qualifications of Ian Ward.  Apple's decision to shield this

11  information from Samsung is extremely prejudicial and further supports exclusion of the reports.

12        Apple's defense of its new "virtual ground charge" infringement theory fares no better.

13  Apple provided no infringement theory for claim 8 in its infringement contentions; it merely

14  parroted the claim language and noted that its theory "will be identified in discovery."  (Dkt. No.

15  935, Ex. E.)  Apple never bothered to supplement its infringement contentions or identify that

16  theory in discovery.  Thus, any infringement theory for claim 8 is by definition a "new" theory and

17  should be struck from Dr. Maharbiz's report.

18        Apple's attempt to blame Samsung for its untimely disclosure is unavailing.  Apple knew

19  Atmel controllers were used in the Accused Products as early as August 26, 2011 when Apple

20  served its infringement contentions[7] and was informed again on October 7, 2011,[8] but Apple failed

21

22

---

23        [5]   The sole authority Apple relies on for its mistaken belief that the SEM Analyses were not

24  discoverable until expert reports were due is inapposite.  In *Heraeus*, there was no indication that
    the expert conducting the tests would be identified as a testifying witness or submitting an expert

25  report.  *Heraeus Inc. v. Solar Applied Material Tech. Corp.*, 2006 WL 2168851, at *2 (N.D. Cal.
    Jul. 31, 2006).  Here, Dr. Maharbiz has been identified as a testifying witness and commissioned

26  the testing in order to "██████████████████████████" for his report.  (Price Decl., Ex.
    30, at 44:19 – 45:5.)  *See also Magnivision, Inc. v. Bonneau Co.*, 2003 U.S. Dist. LEXIS 27890

27  (C.D. Cal. Dec. 18, 2003) (work product protection waived by an expert designated as a testifying
    witness).

28        [6]   *See, e.g.* Dkt. No. 939, Dec. Ex. 12 at ¶¶ 31-33, fn 5.
          [7]   *See, e.g., Id.*, Ex. 16.

1   to depose an Atmel representative until March 7, 2012—just one day before the close of fact

2   discovery.  Samsung also produced all documents promptly after receiving them from Atmel.

3   Apple itself is to blame for not satisfying its disclosure obligations in a timely manner.

4          Apple's delayed disclosure of its infringement theory made it impossible for Samsung to

5   pursue non-infringement arguments during discovery, or address Apple's theory in its opening

6   expert report on the invalidity of the '607 patent.

7          **D.      Balakrishnan**

8          Far from "mooting" Samsung's motion, Apple's belated production of devices purportedly

9   reviewed by Dr. Balakrishnan raises more questions than it answers.  During two days of

10  inspection, Apple provided a set of devices it alleges Dr. Balakrishnan inspected.  Yet none of

11  these devices included the blue glow design-around that Dr. Balakrishnan allegedly saw.  On the

12  third day of inspection, Samsung noted this obvious deficiency.  (*See* Price Decl., Ex. 31.)  In

13  response, Apple offered inspection of a single device, the Galaxy S2 TMobile, a device that is not

14  even accused of infringement.  Apple's production of devices and Dr. Balakrishnan's testimony

15  are simply inconsistent and suggest continued bad faith by Apple.

16         Samsung specifically propounded an RFP for all materials relied upon by Apple's experts.

17  (Dkt. No. 935, Ex. B, at RFP No. 127.)  Samsung then made specific requests to inspect the

18  devices used by Dr. Balakrishnan.  Yet for over two months, Apple withheld these crucial devices

19  – devices that Dr. Balakrishnan admitted were his *sole* basis for assessing infringement for most of

20  the accused devices.  (*See id.* at 10.)  It still has failed to comply.  With trial beginning on July 30,

21  this misconduct justifies striking Dr. Balakrishnan's testimony.[9]  Moreover, this is merely the

22  latest example of Apple's pattern of improperly withholding discovery and, after Samsung moves

23  for relief, turning some of the requested discovery over to avoid sanctions.  (*See, e.g.*, Dkt. No.

24  670, at 8, 16-17 (Mac OS X prior art).)

_____

25      [8]    Many Atmel documents, including a protocol guide for the mXT224 controller and a

26  summary document for the mXT1386 controller, were produced as part of Samsung's P.L.R. 3-
    4(a) disclosures on October 7, 2011.  (*See* Dkt. No. 1014, Ex. A.)

27      [9]    At the very least, Samsung requests that the devices offered by Apple for inspection be
    deemed the only devices Apple may rely on to prove infringement.  In addition, Samsung requests

28  a renewed deposition of Dr. Balakrishnan to probe the inconsistencies between Apple's production
    and Dr. Balakrishnan's expert report and deposition testimony.

**E.**     **Sood**

Apple's failure to produce the survey questionnaires underlying his opinions, or the actual responses, is a blatant violation of Rule 26(a)(2)(B)(ii), which requires production of "facts and data" considered by an expert in reaching an opinion. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii); *see also* Advisory Committee Note (The "intention is that 'facts or data' [in Rule 26(a)(2)(B)(ii) should] be interpreted broadly to require disclosure of *any material considered* by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert.").

Whether or not Apple is required to produce "every document underlying every study cited in an expert report," (Dkt. No. 996, Ex. 4, at 12), it certainly is required to produce the questionnaires that form the basis for Dr. Sood's opinions.  (*See, e.g.*, Dkt. No. 934-3, at 8 (explaining that the questionnaires Dr. Sood cites are actually the basis for his opinions on consumer choice as related to design); *see also* Dkt. No. 935, Ex. K.)  Nor are the questionnaires or the actual responses cumulative of the articles, which do not set forth the questions asked and the responses received.  Instead, they simply summarize the results of Dr. Sood's research.  (*See, e.g.*, *id.*, Ex. J (Sood Report., Ex. C (listing results and tables of consumer choices); *id.*, Ex. D (same).)   A summary of the responses does not allow Samsung to challenge the conclusions reached based on the formulation of the questions in the surveys or the precise response given. Even Dr. Sood admits that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ (Price Reply Dec., Ex. 29, at 144:14-15 ('▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ .").)

Apple's admitted failure to produce the questionnaires, or the questions and responses, was not substantially justified, and prejudiced Samsung in its ability to challenge some of the conclusions reached by Dr. Sood.  *See Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 681-82 (D. Kan. 1995) (failure to make proper Rule 26(a)(2)(B) disclosures harmed opposing party by hampering ability to "prepare for cross-examination at deposition or trial").  Thus, exclusion is warranted.

### F.  **Bressler**

Apple's justifications for failing to produce the alleged alternate designs relied upon by Peter Bressler are baseless.  First, RFP 127 sought not only documents but "things" relating to Apple's design patent infringement claims.  (Dkt. No. 935, Ex. B.)  The issue is not whether Apple failed to produce its "arguments" in response to a document request, but rather its failure to produce the alternative designs on which its expert is now relying.  Nor is it sufficient for Apple to rely on its general response to Interrogatory No. 68, or its preliminary injunction papers, which Apple admits did not include all of the alternative designs on which its expert now relies.  This is not a situation where Samsung asks Apple to provide "each and every detail that could possibly exist in the universe of facts."  (Dkt. 996-4, at 8.)  Rather, the discovery rules required Apple to provide all documents and things supporting its infringement claims, including those "things" reflecting alternative designs on which it and its expert intend to rely.  Given the limited number of alternative designs identified in Mr. Bressler's report, Apple's burden arguments are baseless.

Apple's attempt to justify Mr. Bressler's new patent infringement theories is equally without merit.  As an initial matter, the Court should strike Mr. Bressler's identification of differences between the asserted design patents and prior art cited by Samsung, which Apple's Opposition does not even attempt to address.  (Dkt. No. 934-3, at 6.)

With regard to consumer confusion, Apple is wrong that this topic is completely irrelevant to design patent infringement and therefore did not have to be disclosed in response to Interrogatory No. 72.  Deception is the standard by which the "substantially similar" element of the *Gorham* test for infringement of design patents is assessed.  *See, e.g., Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (citing *Gorham v. White*, 14 Wall. 511 (1871) ("[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.")[10]  Thus, Apple cannot plausibly maintain—under its own reasoning—that the lack of

---

[10]  Apple has repeatedly relied on comparisons between the accused Samsung products and Apple's products, invoking *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, for the proposition that "[w]hen the patented design and the design of the article sold by the patentee are substantially the (footnote continued)

1  confusion between the products is not relevant to the question of design patent infringement.

2  Apple was obligated to disclose "all facts" relating to deception, and it failed to do so.  Nor is this

3  violation cured even assuming Apple properly disclosed its confusion theories with regard to the

4  entirely separate trade dress and trademark claims, given the differences in the IP rights at issue.

5      **G.      <u>Kare</u>**

6          Apple's attempt to rely on vague discovery responses regarding alternative designs to

7  justify its untimely disclosure of such evidence in Susan Kare's report is no more persuasive than

8  it was with respect to Mr. Bressler.  With respect to the particular icons, it is not enough for Apple

9  to assert that the icons appear in the patents or devices.  The violation arises from Apple's failure

10  to ever assert that these particular icons give rise to its dilution claims or confusion allegations, as

11  requested in Interrogatories 70 and 71.

12          Like Mr. Bressler, Dr. Kare examined devices to determine if there were alternative

13  designs for user interface graphics, although Apple never disclosed all of these devices to

14  Samsung, a point Apple concedes.  (Dkt. No. 996, Ex. 4, at 11 ("[Apple's] disclosure identified

15  numerous examples of [alternative] designs, including *some* featured in Dr. Kare's report.")

16  (emphasis added).)  Apple's arguments concerning its failure to disclose all of the alternative

17  devices evaluated and relied upon by Dr. Kare are identical to those it asserted for Mr. Bressler,

18  and fail for the same reasons.

19          In its Motion, Samsung argued that although Dr. Kare identified a Camera icon that is the

20  subject of a trademark that was not asserted in Apple's Amended Complaint, as well as other icons

21  that Apple never disclosed were the subject of a trademark or trade dress claim, Apple did not

22  identify these icons in its responses to Interrogatory Nos. 70 and 71.  Samsung should not be

23  required to guess as to what icons Apple contends are purportedly infringing.  *See Lexington Ins.*

24  *Co. v. Comm'w. Ins. Co.*, 1999 WL 33292943, at *7 (N.D. Cal. Sept. 17, 1999) (contention

25

26  same, it is not error to compare the patentee's and the accused articles directly."  988 F.2d 1117,
   1125-26 (Fed. Cir. 1993) (*e.g.*, Apple's Prelim. Inj. Mot. (Dkt No. 86 at 2-3, 9, 12);  Apple's
27  Reply ISO Prelim. Inj. Motion (Dkt. No. 282 at 9).)  Apple typically omits the next lines of that
   passage, which state: "indeed, such comparison may facilitate application of the *Gorham* criterion
28  of whether an ordinary purchaser would be deceived into thinking that one were the other."  *L.A.*
   *Gear, Inc.*, 988 F.2d at 1126.

1   interrogatories are intended "to narrow the issues that will be addressed at trial and to enable the

2   propounding party to determine the proof required to rebut the respondent's position.").

3   Moreover, Apple *never* disclosed as disputed the icons for the Gmail (or Google Mail), Email, []

4   "Talk" and "Clock" applications in any pleading, initial disclosure, Patent Local Rule disclosure,

5   or response to an Interrogatory.  (Dkt. No. 934-3, at 7.)  Apple's argument that Samsung must

6   have known that it was disputing these icons because Samsung's expert discussed them in his

7   report is disingenuous.  Samsung's expert, Sam Lucente, evaluated certain icons in supporting his

8   claim that Apple's patents were invalid due to obviousness.  That in no way demonstrates that

9   Samsung was on notice that Apple would contend that these icons are subject to trademark or

10  trade dress claims. (Dkt. No. 935, Ex. I (Kare Report at ¶¶ 63 and 64.)

11          **H.      Winer**

12          Apple asserts that its boilerplate responses to Samsung's Interrogatory Nos. 70-71 properly

13  disclosed the facts and theories Dr. Winer cites and relies upon in his report.  (Dkt. No. 996, Ex. 4,

14  at 12.)  Not so.  Apple's responses to Interrogatory Nos. 70-71 were nothing more than vague,

15  generalized statements that ████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ███████████████████."  (Dkt. No. 935, Ex. E.)  This is not enough.  Samsung is entitled to

18  know the facts and the evidence supporting Apple's contentions and on which its expert relied.

19          To justify this failure, Apple claims that "theories in Dr. Winer's report were also

20  disclosed to Samsung in other ways," and cites various pleadings as proof.  (Dkt. No. 996, Ex. 4,

21  at 13 (citing, among others, Apple's Amended Complaint and Apple's Responses to Samsung's

22  Preliminary Injunction Interrogatory No. 6).)  But these pleadings did not disclose the theories and

23  supporting evidence that Dr. Winer has included in his report.  For example, none of Apple's other

24  sources discuss product price and the sophistication of and degree of care exercised by consumers,

25  in connection with the sixth *Sleekcraft* factor – a point Apple does not dispute.  (Dkt. No. 996, Ex.

26  4, at 13); *see also, e.g.*, Dkt. No. 935, Ex. W. at ¶ 127-30, 160 (discussing the care with which

27  consumer choose smartphones and citing a survey on the decline of non-smartphones in the

28  market).)  In any event, the broad discussions of general principles – some of which are no more

1  than Apple's basic allegations of its case – were insufficient to place Samsung on notice that Dr.

2  Winer would rely on the theories and facts that he did.  (Dkt. No. 935, Ex. W, at ¶¶ 96, 114-16.)

3       In addition, Dr. Winer relies on a host of sources that were never disclosed in response to

4  Interrogatory No. 69.  (*See* Dkt. No. 935, Ex. D.)  Apple's response to Interrogatory No. 69 was a

5  vague, generalized statement that '███████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████████

8  ████   "  (*See* Dkt. No. 934-3, at 15-16); *see also id.* (citing secondary sources that appear in Dr.

9  Winer's report).)  This is not enough to justify the inclusion of an array of previously undisclosed

10  facts that accompany the undisclosed theories in Dr. Winer's report.  (*See, e.g.*, Dkt. No. 935, Ex.

11  W, at ¶ 142 (citing previously undisclosed sources, including print and e-media to support theory

12  of the strength of Apple's trade dress); Dkt No. 934, Ex. 3, at 15-16 (listing all undisclosed fact

13  citations in Dr. Winer's report).)[11]  Apple cannot sandbag Samsung by allowing its expert to rely

14  on sources that were never disclosed, and then assert that unrelated, generalized pleadings and

15  filings somehow immunize its conduct.  At the very least, if the Court believes that Apple has

16  satisfied its disclosure obligations, it should deny Apple's mirror arguments with respect to

17  Samsung's design experts, because Samsung's discovery responses were at least as revealing, if

18  not more so.

19  **III.   CONCLUSION**

20       For each of the foregoing reasons, Samsung respectfully request that the Court grant this

21  motion, and strike the challenged portions of Apple's expert reports and related testimony.

22

23

24

25

26

27       [11]  Contrary to Apple's argument (Dkt. No. 996, Ex. 4, at 13), Interrogatory No. 69 sought not

28  only the date the trade dress became famous and acquired secondary meaning, but also "all facts
that support YOUR contention that such trade dress and trademark became famous and acquired
secondary meaning as of that date."  (Dkt. No. 935, Ex. G.)

1

2    DATED: June 7, 2012                    QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
3

4

5                                         By /s/ Victoria F. Maroulis
                                            Charles K. Verhoeven
6                                           Kevin P.B. Johnson
                                            Victoria F. Maroulis
7                                           Michael T. Zeller

8
                                            Attorneys for SAMSUNG ELECTRONICS CO.,
9                                           LTD., SAMSUNG ELECTRONICS AMERICA,
                                            INC. and SAMSUNG
10                                          TELECOMMUNICATIONS AMERICA, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28