QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

CASE NO. 11-cv-01846-LHK

**SAMSUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OPINIONS OF CERTAIN OF APPLE'S EXPERTS**

**Date: June 21, 2012**
**Time: 1:30 pm**
**Place: Courtroom 8, 4th Floor**
**Judge: Hon. Lucy H. Koh**

**PUBLIC REDACTED VERSION**

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. ALL OF THE CHALLENGED OPINIONS SHOULD BE EXCLUDED ........ 1

A. Musika ........ 1

1. Mr. Musika's Lost Profits Analysis Should Be Excluded ........ 1

(a) Mr. Musika fails to account for the law of supply and demand ........ 1

(b) Mr. Musika fails to identify evidence of a causal relation between the alleged infringement and lost profits ........ 3

2. Mr. Musika's Reasonable Royalty Analysis Should Also Be Excluded ........ 3

(a) Mr. Musika's "Income Approach" does not apportion between asserted and unasserted IP that is unique to the iPhone and iPad ........ 3

(b) Mr. Musika's "Cost Approach" improperly assumes [REDACTED] ........ 4

(c) [REDACTED] ........ 5

(d) Only comparable licenses are probative ........ 5

3. Mr. Musika's Critique of [REDACTED] Is Unsupported, Unanchored and Highly Prejudicial ........ 5

4. Mr. Musika Failed to Disclose the Basis for His Opinions Calculating Pre-Suit Damages ........ 7

B. Hauser ........ 7

1. Dr. Hauser's Survey Results Are Unreliable ........ 7

2. Dr. Hauser Surveyed the Wrong Population ........ 9

3. Dr. Hauser Did Not Test the Patented Features ........ 9

C. Urbach ........ 10

D. Kare ........ 11

E. Winer ..... 12

F. Sood ..... 13

G. Walker ..... 14

H. Donaldson ..... 15

## TABLE OF AUTHORITIES

**Page**

### Cases

*Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443 (9th Cir. 1992) ........ 6

*Apple, Inc. v. Motorola, Inc.*, Case No. 1:11-cv-08540 (N.D. Ill.) ........ 1

*BIC Leisure Prods., Inc. v. Windsurfing Int'l., Inc.*, 1 F.3d 1214 (Fed. Cir. 1993) ........ 2

*Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001) ........ 2

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025 (9th Cir. 2010) ........ 13

*Hawley Prods. Co. v. U.S. Trunk Co.*, 259 F.2d 69 (1st Cir. 1958) ........ 9

*Icon Enters. Int'l, Inc. v. Am Prods. Co.*, 2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) ........ 9

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ........ 5

*M2 Software, Inc. v. Madacy Entmt.*, 421 F.3d 1073 (9th Cir. 2005) ........ 9

*Metro Bus. Mgmt., Inc. v. Allstate Ins. Co.*, 2009 WL 4119270 (C.D. Cal. Nov. 23, 2009) ........ 15

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143 (N.D. Cal. 2007) ........ 2

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051 (9th Cir. 2008) ........ 6

*Oracle Am. Inc. v. Google, Inc.*, 798 F. Supp. 2d 1111 (N.D. Cal. 2012) ........ 4, 5, 8

*Oracle America, Inc. v. Google Inc.*, 2012 WL 850705 (N.D. Cal. March 13, 2012) ........ 8

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) ........ 5

*Schwab v. Philip Morris USA, Inc.*, No. 1:04-01945 (E.D.N.Y) ........ 8

*Sparton Corp. v. U.S.*, 77 Fed. Cl. 1 (2007) ....15

*Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F. Supp. 1189 (E.D.N.Y. 1983) ....9

*Trilogy Comms., Inc. v. Times Fiber Comms., Inc.*, 109 F.3d 739 (Fed. Cir. 1997) ....2

*Truckstop.net LLC v. Sprint Comms. Co.*, 537 F. Supp. 2d 1126 (D. Idaho 2008) ....2

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ....4

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997) ....10

**Statutes**

Fed. R. Civ. P. 26(a)(2)(B) ....7

Fed. R. Civ. P. 26(a)(2)(B)(ii) ....14

**Miscellaneous**

Ofek *et al.*, "How Much Does the Market Value an Improvement in a Product Attribute?," *Marketing Science*, 2002, Vol. 21, No. 4, 398-411 ....9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Apple's Opposition does not tie the "expert" opinions Samsung has challenged to any of the issues before the jury in this case: (1) what specific IP rights do the parties have?, (2) did the other side infringe those rights?, and (3) what damages, if any, is each party entitled to because of any infringement of whatever specific IP rights it has? Most of Apple's experts obscure these issues and, instead, attempt to turn the trial into a popularity contest between Apple and Samsung conducted in Apple's home town. *Cf. Apple, Inc. v. Motorola, Inc.*, Case No. 1:11-cv-08540, Order of May 25, 2012 (N.D. Ill.) at 3 (Posner, J.) ("More broadly, I forbid Apple to insinuate to the jury that this case is a popularity contest and that jurors should be predisposed to render a verdict for Apple if they like Apple products or the Apple company or admire Steve Jobs, or if they dislike Motorola or Google. The overall quality of the products involved in the litigation is irrelevant to the legal issues.") These opinions of Apple's experts should be excluded.[1]

## II. ALL OF THE CHALLENGED OPINIONS SHOULD BE EXCLUDED

### A. Musika

#### 1. Mr. Musika's Lost Profits Analysis Should Be Excluded

##### (a) Mr. Musika fails to account for the law of supply and demand

Mr. Musika's lost profits analysis is inadmissible because he fails to properly account for the differences between product prices and platforms.[2] It is black letter law that a lost profits

---

[1] Samsung disagrees with each (and does not concede any) of the arguments set forth in Apple's opposition, but for space reasons has limited its discussion to Apple's primary arguments.

[2] Apple relies on a 19-page declaration by Mr. Musika and a 5-page declaration by Dr. Hauser that can only be characterized as unauthorized and untimely expert reports. The Court's Scheduling Order allowed only two rounds of expert reports. (Dkt. 187 at 2.) Both experts now express new opinions and explanations in their declarations (*e.g.,* Musika Decl. at ¶¶ 12-29, 41, 45, 62, 66; Hauser Decl. at ¶¶ 7-8, 10-12); Samsung had no opportunity to depose them about these new opinions, or to offer any response; and Apple did not seek the Court's leave to file the declarations. What is more, the declarations constitute a transparent attempt to circumvent the Court's Order limiting each side to one 25-page opposition (Dkt. 901 at 1:23-24), and a violation of Local Civ. R. 7-5(b) ("[D]eclarations may contain only facts . . . and must avoid conclusions and argument. . . . [A] declaration not in compliance with this rule may be stricken . . ."). These declarations and Apple's arguments based on them should be stricken, or at very least disregarded. *See, e.g., Truckstop.net LLC v. Sprint Comms. Co.*, 537 F. Supp. 2d 1126 (D. Idaho 2008) (excluding expert declaration where opinions were not in the expert's report and was untimely);
(footnote continued)

opinion that does not account for the law of supply and demand is inadmissible. *See BIC Leisure Prods., Inc. v. Windsurfing Int'l., Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) (clear error to award lost profits where numerous competitors vied for sales in the windsurfer market with different average selling prices ("ASP") and different hull forms); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1360 (Fed. Cir. 2001); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1155-56 (N.D. Cal. 2007).

Apple fails to identify any evidence of [REDACTED] *See BIC Leisure*, 1 F.3d at 1219 ("*[D]uring the damages period* the sailboard market was not a unitary market in which every competitor sold substantially the same product") (emphasis added). Mr. Musika cannot justify his failure to account for price elasticity [REDACTED] Apple does not deny that Mr. Musika relies on [REDACTED][4] Apple's claim that [REDACTED] (Opp. at 3), lacks credibility and is unsupported by any evidence. The testimony Apple cites merely states [REDACTED] Mr. Musika does not say tha[REDACTED]

As to his [REDACTED] Apple's response is that Mr. Musika used a market share analysis. But this has been rejected by the Federal Circuit in these circumstances. *See BIC Leisure*, 1 F.3d at 1218 (reversing a lost profits award that was based on defendant's market share). Moreover, an analysis of demand by carrier is obviously not the same thing as an analysis of demand by platform because most carriers

---

*Trilogy Comms., Inc. v. Times Fiber Comms., Inc.*, 109 F.3d 739, 744-45 (Fed. Cir. 1997) (*accord*). Should the Court decide to consider the declarations, Samsung requests to depose the experts about their new opinions and submit a response by its own experts.

[3] The documents cited in the Opposition are [REDACTED]

offer different platforms. If anything, Mr. Musika's carrier preference analysis underscores the unreliability of his opinion for failure to do the same analysis for platform preference.

**(b) Mr. Musika fails to identify evidence of a causal relation between the alleged infringement and lost profits**

Mr. Musika acknowledges that Apple must prove the profits it lost because of Samsung's alleged infringement of the particular IP at issue. *Id.* But Mr. Musika still cites *no evidence* of [redacted] Evidence of general praise for the look and function of Apple's products is insufficient to meet its burden to "prove a causal relation between the infringement and its loss of profits." *Id.; see also Apple v. Motorola, supra,* at 3 ("Apple will not be permitted to present media articles or equivalent publicity praising features of the iPhone or iPad . . . unless they mention (or can be shown to be referring to) claim elements that Apple alleges Motorola infringes or that Motorola argues were anticipated or obvious and that are actually in dispute.")

**2. Mr. Musika's Reasonable Royalty Analysis Should Also Be Excluded**

**(a) Mr. Musika's "Income Approach" does not apportion between asserted and unasserted IP that is unique to the iPhone and iPad**

Mr. Musika's "Income Approach" is inadmissible because he does no [redacted] Contrary to Apple's Opposition, the issue is not whether Mr. Musika deducted values attributed to *other* company assets, [redacted] (*See* Opp. at 6.) Mr. Musika's fundamental error is a failure to apportion [redacted] Tellingly, Apple does not identify [redacted]

Apple argues that Mr. Musika's failure to apportion doesn't matter because [redacted] But an

arbitrary and unsupported fudge factor is no substitute for sound economic analysis. Apple offers no justification for choosing [redacted] Even if Apple could do so, it is absurd to assume that in a hypothetical negotiation Apple could simply command the highest reference-value it could calculate as a royalty. *See Oracle Am. Inc. v. Google, Inc.*, 798 F. Supp. 2d 1111, 1118 (N.D. Cal. 2012) (rejecting "a Soviet-style negotiation").

Apple's attempt to limit the apportionment requirement to "the entire market value rule" is a red-herring.[5] A patentee "*must in every case* give evidence tending to separate or apportion" damages between the allegedly infringed features and other sources of value. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (emphasis added). Mr. Musika's failure to do so requires the exclusion of his Income Approach. *See Oracle*, 798 F. Supp. 2d at 1115.[6]

**(b)** [redacted]

Samsung's objection to Mr. Musika's "Cost Approach" is that he assumes – without a shred of evidence – that, in every instance, Samsung [redacted] Apple's response that a cost approach can be admissible if properly applied misses the point. An expert is not entitled to testify based on an assumption without any factual foundation. In effect, Mr. Musika again fails to recognize that the IP asserted by Apple in this case is, if anything, only a minuscule portion of Samsung's complex products, and to "separate or apportion" the value of the specific IP in this case from the total profit Samsung earns on the accused products. *Uniloc USA,* 632 F.3d at 1318.

---

[redacted] The Entire Market Value Rule, as understood by the Federal Circuit, is not an issue o [redacted] *See Uniloc*, 632 F.3d at 1318.

[6] That *Oracle* involved software patents (Opp. at 6-7) is a distinction without a difference.

**(c)** [redacted]

In *Oracle*, the Court noted that the plaintiff's expert improperly "fought the hypothetical" by refusing to calculate the value of a license "tailored to the amount and type of alleged infringement that actually occurred." *Oracle Am.*, 798 F. Supp. 2d at 1117. The same law [redacted] *Georgia-Pacific* analysis it is proper to "consider" [redacted] (Opp. at 8.) Had Mr. Musika properly apportioned the value of the asserted IP in this case, he could then have considered [redacted] along with the other *Georgia-Pacific* factors. Instead, Mr. Musika uses [redacted] as an excuse to "fight the hypothetical" and ignore "the amount and type of alleged infringement" that actually occurred, by improperly attributing [redacted] *Oracle Am.*, 798 F. Supp. 2d at 1117.

**(d) <u>Only comparable licenses are probative</u>**

Apple does not dispute that Mr. Musika opines that the [redacted] is not a comparable license to any of the Apple Intellectual Property In Suit." (Martin Decl. Ex. 3, Musika Rpt. at 60.) Accordingly, the license has no probative value in determining the amount of a reasonable royalty, and the license and Mr. Musika's opinion in reliance on it should be excluded. *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (vacating a damage award based on non-comparable licenses); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009) ("[Patentee] had the burden to prove that the licenses were sufficiently comparable").

**3. <u>Mr. Musika's Critique o</u> [redacted] <u>Is Unsupported, Unanchored and Highly Prejudicial</u>**

Apple apparently believes that because Mr. Musika is an accountant, he should be allowed to tell the jury: [redacted]



[redacted]

As an initial matter, Mr. Musika should not be permitted to offer legal opinion directed to the applicable legal standards or whether Samsung has met them – both with respect to [redacted] *See, e.g.*, *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1058-59 (9th Cir. 2008) (upholding exclusion of expert testimony that discussed applicable laws, applied them to the facts in the case, and arrived at conclusions); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (*accord*).

Apple argues that Mr. Musika [redacted] Nonsense. What Mr. Musika actually does is opine that [redacted] But it is for the Court and/or the jury to decide [redacted], *not* Mr. Musika.

Even worse, Mr. Musika makes this determination by imposing standards on Samsung not found in the law. Mr. Musika opines that [redacted] But this is not an audit; it is a lawsuit. Apple has not cited a single case which require [redacted] Even if these standards were relevant, Mr. Musika fails to identify: [redacted]

In the hopes of obtaining , Apple simply wants Mr. Musika to – even though Apple admits Samsung has now produced every document asked of it – on the basis of He should not be permitted to do so.

**4. Mr. Musika Failed to Disclose the Basis for His Opinions Calculating Pre-Suit Damages**

Mr. Musika's report fails to identify any evidence indicating when Samsung was on notice of Apple's patents or trade dress before this case. (Martin Decl. Ex. 3 at 26.) In the absence of such evidence, pre-complaint damages are not allowed.[7] Apple now cryptically states that (Opp. at 10.) But Apple does not say And Mr. Musika has still not disclosed to Samsung in violation of Fed. R. Civ. P. 26(a)(2)(B). Apple and Mr. Musika have improperly prejudiced Samsung by depriving it of the opportunity to evaluate, test or challenge Mr. Musika's opinions on damages periods. Accordingly if Mr. Musika is allowed to testify, the Court should limit his opinion to the amount of post-notice damages calculated in his report.[8]

**B. Hauser**

**1. Dr. Hauser's Survey Results Are Unreliable**

The following facts are now undisputed: (a) Dr. Hauser used to design his surveys (Martin Decl. Ex. 11, Hauser Rpt. at ¶ 35); (b) Dr. Hauser instructed the interviewers (Reply Declaration of Joby Martin In Support of

---

[7] . The only evidence of pre-filing notice , and Apple does not challenge that date. (Opp. at 10.) Apple's attempted technical argument that this issue is more properly addressed by summary judgment is irrelevant. Mr. Musika has to have a basis for his opinions and he fails to provide one here.

[8] With respect to Mr. Musika's opinions on irreparable harm, Apple agrees they should be heard only "in connection with [the Court's] evaluation of a permanent injunction *after trial*." (Opp. at 10 (emphasis added).) Accordingly, the Court should preclude Mr. Musika from opining on irreparable harm *at* trial.

Samsung's Motion to Exclude Opinions of Certain of Apple's Experts ("Reply Martin Decl.") Ex. 1, Hauser Tr. at 74:17-21); (c) Dr. Hauser did not [REDACTED] (Martin Decl. Ex. 11 at ¶ 36); (d) Dr. Hauser did not [REDACTED] Reply Martin Decl. Ex. 1 at 56:15-19, 67:21-68:7); (e) Dr. Hauser has no idea whether the interviewers actually followed his instructions (*id.* at 18:3-9, 20:3-24); (f) Dr. Hauser has no idea what [REDACTED] (*id.* at 41:17-19); and (g) Dr. Hauser has no idea whether his surveys [REDACTED] (*Id.* at 109:8-25.)

Nonetheless, Apple cries "no foul" because it provided Samsung with all the data necessary to replicate Dr. Hauser's surveys. (Opp. at 11.) Apple misses the point. Dr. Hauser claims he identified [REDACTED] and that these [REDACTED] Yet, Dr. Hauser admits he does not have a shred of evidence to support these claims because he has no records of the IDIs.[9] (Martin Decl. Ex. 11 at ¶ 35; Reply Martin Decl. Ex. 1 at 44:17-45:18). Thus, as Judge Alsup held in *Oracle America, Inc. v. Google Inc.*, 2012 WL 850705 at *10-11 (N.D. Cal. March 13, 2012), Dr. Hauser's opinions should be excluded because there is no proof he tested even [REDACTED][10]

For the same reasons, Dr. Hauser's deliberate failure to maintain and produce pre-test records warrants excluding his opinions. Without any record of the pre-test interviews, there is

---

[9] In other litigation, Dr. Hauser properly instructed interviewers to make detailed records of consumer responses during IDIs. *See* Reply Martin Decl. Ex. 2, *Schwab v. Philip Morris USA, Inc.*, No. 1:04-01945 (E.D.N.Y), Dkt. 980-10 at 24-25 (Summary of Expert Opinions of Dr. Wayne S. Desarbo Concerning the July 14, 2006 Response of John R. Hauser) (Because Dr. Hauser excluded attributes consumers identified as important to their purchase decision, Dr. Hauser's survey was "a nonsensical academic exercise that bears little resemblance to how [consumers] [make] purchase [decisions] in the real world.")

[10] Apple attempts to distinguish *Oracle* on the basis that it had "different controls and reach[es] different outcomes," but fails to explain what these "controls" and "outcomes" are or their significance. (Opp. at 13:14-15; *accord* Hauser Decl. at 2:21-22.)

no proof that Dr. Hauser properly addressed the concerns raised by respondents therein, nor can Samsung test Dr. Hauser's claim that respondents understood the surveys.[11]

**2. Dr. Hauser Surveyed the Wrong Population**

By limiting his surveys to individuals who had previously purchased Samsung smartphones and tablets, Dr. Hauser's population necessarily had disproportionately high purchase probabilities. *See* Reply Martin Decl. Ex. 3, Ofek *et al.*, "How Much Does the Market Value an Improvement in a Product Attribute?," *Marketing Science*, 2002, Vol. 21, No. 4, 398-411 at 398 ("customers should be differentially weighted based on their probability of purchasing the [ ] product"). This inevitably caused Dr. Hauser's estimates of willingness to pay for attribute improvements to be skewed and overstated.[12]

**3. Dr. Hauser Did Not Test the Patented Features**

Apple fails to address the inconsistencies between the patented features and Dr. Hauser's surveys' descriptions of those features. (Reply Martin Decl. Ex. 4.) As just one example, Apple's expert [REDACTED] et the survey description plainly states just that. *Id.* Additionally, [REDACTED] the non-infringing alternative presented to respondents was a touchscreen that is definitively less reliable. *Id.* These and other inconsistencies cause Dr. Hauser's results to be irrelevant to any damages analysis.

---

[11] Apple attempts to distinguish *Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F. Supp. 1189, 1205 (E.D.N.Y. 1983) on the basis that it dealt with the expert's knowledge of the actual survey responses, as opposed to the responses to in-depth or pre-test interviews. Given that Dr. Hauser relied on the interviews to "help [ ] write the survey[s]," this is a distinction without a difference. (Reply Martin Decl. Ex. 1 at 85:18 -86:19.)

[12] Apple's citation to *Icon Enters. Int'l, Inc. v. Am Prods. Co.* is inapplicable because Dr. Hauser's surveys were not conducted according to accepted principles. 2004 WL 5644805, at *21 (C.D. Cal. Oct. 7, 2004). Similarly, *Hawley Prods. Co. v. U.S. Trunk Co.*, 259 F.2d 69, 77 (1st Cir. 1958) does not justify surveying the wrong population. Because it is Apple's burden to demonstrate that the surveys were conducted in accordance with accepted principles and it has not done so, the survey results should be excluded. *M2 Software, Inc. v. Madacy Entmt.*, 421 F.3d 1073, 1087 (9th Cir. 2005).

**C. Urbach**

Apple identifies no legally sound reasoning to admit the testimony of Mr. Urbach, a museum curator who happens to be a huge Apple fan, but who has never designed any product, let alone an electronic. Apple does not dispute that Mr. Urbach's opinions have no relevance to trade dress or dilution. Nor does Apple explain the relevance of Mr. Urbach's opinion that Apple has achieved "design excellence." The only issue to which Mr. Urbach's opinion on public appreciation could be relevant is secondary considerations of non-obviousness. (Opp. at 15-16.) But this after-the-fact-rationalization has nothing to do with Mr. Urbach's opinion. Nowhere in his report does he ever mention secondary considerations of non-obviousness, or the legal principles that govern.[13] And although this is a design patent invalidity issue, Mr. Urbach testified that he was not "retained to provide an expert opinion about any topic relating to an Apple patent of any kind," and did not review any of Apple's patents in forming his opinions. (Reply Martin Decl. Ex. 5, Urbach Tr. at 78-79.) Either Mr. Urbach was correct that he did not offer an opinion about patent invalidity, in which case his opinions are irrelevant, or he rendered his opinions without examining the patents, in which case his opinion should excluded because secondary considerations must be tied to the patented features of the device. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1565 (Fed. Cir. 1997). Having failed to review the asserted patents, Mr. Urbach did not tie his commentary to their features. Rather, he offered irrelevant opinions considering the products as a whole, including features not covered by the patented designs, such as the materials and finishing, the home button, and their different back designs.

Complete lack of relevance aside, Apple cannot dispute any of Mr. Urbach's deposition admissions that his public appreciation opinion is nothing more than *ipse dixit* and ignores all of the technological factors beyond design that account for Apple's success.[14] Even an expert who

---

[13] The case Apple cites points to "commercial success" as a secondary consideration, not public appreciation, so the opinion is not relevant even to this topic.

[14] The best Apple can come up with is Mr. Urbach's reference to the "tremendous consensus" regarding the supposed excellence of Apple's design. (Opp. at 17.) But even that assertion proved to be hyperbole, as he admitted the statement was based on a single conversation "years ago" with the chief design curator at MOMA in New York, who said she wanted to collect

(footnote continued)

relies entirely on his "background and experience" cannot simply make unsupported assertions and ask the jury to accept them because he is "an expert in the field." (Reply Martin Decl. Ex. 5 at 126:4-8.) Under the authorities cited in the moving papers (Mot. at 15-16), which Apple does not distinguish, Apple should not be permitted to present this type of unreliable testimony.

**D. Kare**

Apple does not dispute that Susan Kare purports to opine on substantial similarity and likelihood of confusion without being given or otherwise applying the legal standards that govern these inquiries. Instead, Apple argues that she should be able to offer opinions that use operative legal terms of art, but are not based on the proper legal standard. (Opp. at 18.) This would leave the jury hard-pressed to reject the expert's use of the legal language, even if instructed otherwise, and is exactly the type of confusing and unreliable opinion *Daubert* intended for courts to exclude, as Apple itself has argued. *See* Dkt. 940-1 at 2 (citing cases for the proposition that "[i]ncorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories".) To be clear, Samsung is not arguing that Dr. Kare should offer legal conclusions. But if she opines on the legal factors of Apple's claims, she must do so using the proper legal tests, as Apple has argued against Samsung. *Id.* ("Expert testimony that fails to follow the proper legal standard is irrelevant and based on an unreliable methodology, and therefore must be excluded.")

There is no dispute that Dr. Kare seeks to opine on substantial similarity, even though she did not follow the law—*i.e.*, assess the ordinary observer perception in view of the prior art and excluding functional elements—and lacks the qualifications to opine about the ordinary observer. (Mot. at 18.) Apple cannot now claim that this is harmless, because it has sought to exclude Samsung's expert Sam Lucente on this very basis. *See* Dkt. 940-1 at 11 (seeking exclusion because Mr. Lucente "has no specialized expertise in what an 'ordinary observer' would think".)

---

Apple products, and the fact that a handful of museums may own Apple products. (Reply Martin Decl. Ex. 5 at 102-108.)

As for likelihood of confusion, here too there is no dispute that Dr. Kare did not consider or apply the governing legal principles. While an expert may offer relevant testimony on those *Sleekcraft* factors within their area of expertise, it is improper to opine on the ultimate conclusion that likelihood of confusion exists, based solely on an incomplete assessment of a single factor, which is precisely what Dr. Kare has done. An opinion that is so far removed from the relevant legal standards will only confuse the jury and unduly prejudice Samsung.

Finally, the Court should exclude [REDACTED] To the extent Dr. Kare is doing no more than simply repeating other evidence in the case about which she has no personal knowledge, [REDACTED] the jury can assess that evidence equally well. Dr. Kare has no expertise that would justify admitting her speculation [REDACTED]

**E. Winer**

Apple cannot address, and therefore ignores, Samsung's principal objection to Dr. Winer's proffered opinions – that he is giving what amounts to a closing argument to the jury on the likelihood of confusion and dilution factors. Nowhere does Apple address or attempt to distinguish the cases Samsung cites that prohibit precisely this kind of testimony. (Mot. at 19-20.) Nor does Apple dispute that Dr. Winer simply summarizes and repeats the opinions of other experts in fields where he has no expertise. While Apple contends that this criticism "oversimplifies and mischaracterizes Dr. Winer's report" (Opp. at 20), it never explains how. Instead, Apple argues points Samsung does not make. For example, Samsung does not contend that an expert offering an otherwise relevant and reliable opinion cannot rely on other expert opinion, press materials, or client documents. (*Id.*) But the expert cannot do so where, as here, he is simply summarizing opinions of others in areas in which he himself would not be qualified to testify, and is presenting legal arguments that should be made by counsel.

Apple argues that Dr. Winer's discussion of "broad branding principles" will be helpful to the jury. But as Samsung explained, Dr. Winer acknowledges [REDACTED]

[redacted]

[redacted] Even if marketing expert testimony [redacted] could be admissible in an appropriate case, this is not such a case, because the testimony has no relationship to the particular trade dress that is the subject of Apple's claims. Admitting the testimony would only confuse the jury. Moreover, any possible relevance is outweighed by the considerations of Rule 403 of the Federal Rules of Evidence—a point Apple does not even attempt to dispute.[15]

**F. Sood**

Apple does not dispute that Dr. Sanjay Sood's opinions that (1) "design" is important in consumer choice, and (2) consumers who are asked why they bought a particular product might not identify "design" as the reason, are based solely on surveys of students at one university questioned about photographs of tape dispensers, blenders, CD alarm clocks, desk lamps, and wall clocks. Neither Apple nor Dr. Sood offer *any* explanation how the results of those surveys could be scientifically extrapolated to all consumers of all goods, let alone potential purchasers of smart phones and tablet computers. Indeed, Dr. Sood admitted that he made no attempt to study smart phones, tablet computers, or their purchasers. (Reply Martin Decl. Ex. 6, Sood Tr. at 39:2-14; 83:6-9; 103:6-12.) Unlike *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1036-38 (9th Cir. 2010), where the survey was conducted specifically for the litigation and targeted purchasers or future purchasers of one of the *types of products at issue* and showed them *the products at issue*, Apple has conceded that Dr. Sood's "studies were not conducted in connection with the lawsuit for which the expert was retained." (Opp. to Samsung's Mot. to Strike, Dkt. 996-4 at 12.) Dr. Sood's "broad" opinions based on surveys of an improper sample about products that are not even in the same category as the products at issue, and which were not conducted for the purpose of this case, should be excluded because they are not tied to the specific intellectual property rights at issue. (*See* Mot. at 14 n.14.)

Apple also concedes that it has refused to produce the written questionnaires from these surveys, arguing they were not the subject of any discovery request. But Fed. R. Civ. P.

[15] Indeed, Apple does not explain for any of its "experts" why their opinions should not be excluded under Rule 403 as unduly prejudicial, confusing, or cumulative.

26(a)(2)(B)(ii) requires that an expert report must contain "the facts or data considered by" the expert in forming his opinion. There is no question that Dr. Sood considered these questionnaires and the results in forming his opinions. Indeed, Dr. Sood agreed in deposition to provide them (Reply Martin Decl. Ex. 6 at 89:11-90:4), but Apple thereafter intervened. (Martin Decl., Ex. 29.) Because Dr. Sood's opinions are not based upon any data concerning smartphones or computer tablets, and Apple has withheld the data they are based upon, his opinions should be excluded.

**G. Walker**

Apple does not contest that Dr. Walker never established that the patent applications that Samsung was prosecuting contained a single claim essential to an ETSI standard.[16] (Opp. at 23.) Instead, Apple contends that this analysis was unnecessary because Samsung's declared essential patents claim priority to the declared applications. But this is *Apple's* contention, not Dr. Walker's. Dr. Walker never asserted that the mere fact that a declared essential patent claims priority to an earlier application establishes that the earlier application should have been declared to ETSI. Instead, he agreed that you would "have to look at the claim[s] of that IPR to see what the claims cover." (Reply Martin Decl. Ex. 7, Walker Tr. at 73:4-19.) Dr. Walker's failure to determine what claims were in Samsung's patent applications renders his analysis unreliable.

Similarly, while Apple may contend that Samsung was required to declare confidential IPR to ETSI, Dr. Walker has a different opinion. Dr. Walker opined that ETSI members are not required to declare confidential IPR to ETSI. (*Id.* at 71:16-72:3;135:10-20.) Given Dr. Walker's own premise, Dr. Walker could not conclude that Samsung violated a duty to disclose without assessing whether the priority applications were confidential. As such, his opinions are inadmissible.

---

16 Apple's argument regarding whether senior management or others at Samsung only needed to be aware that IPR "might be essential" is a red herring. (*See* Opp. at 24.) Without reviewing the patent applications, Dr. Walker could not make any assessment of whether anybody at Samsung could have determined that those applications "might be essential," were likely essential, or were actually essential to an ETSI standard.

**H. Donaldson**

Mr. Donaldson's testimony simply advocates Apple's interpretation of the Intel License Agreement to the jury. For example, Mr. Donaldson asserts [redacted] These legal conclusions cannot be converted into admissible expert testimony simply by couching them as the conclusions that would be reached by a "patent license negotiator."[17] Mr. Donaldson's legal opinions should be excluded.[18]

DATED: June 7, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Victoria F. Maroulis*
Victoria F. Maroulis
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

---

[17] The only conceivably appropriate subject matter in the context of a license agreement would be testimony establishing "extrinsic evidence of trade practice and custom." *Sparton Corp. v. U.S.*, 77 Fed. Cl. 1, 8 (2007). But that is not the subject of Mr. Donaldson's testimony and, "[i]n the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible." *Id.* Apple cites *Metro Bus. Mgmt., Inc. v. Allstate Ins. Co.*, 2009 WL 4119270, at *10 (C.D. Cal. Nov. 23, 2009), where the court admitted testimony regarding factual issues pertaining to insurance policy forms. Mr. Donaldson does not offer testimony regarding any facts pertaining to the Intel License Agreement.

[18] Apple complains that Eric Stasik offers similar opinions. The section of Mr. Stasik's report regarding the Intel License Agreement was submitted in rebuttal to Mr. Donaldson's inappropriate and erroneous proposed testimony. Samsung will not offer Mr. Stasik's testimony on the Intel License Agreement if Mr. Donaldson's opinions are excluded.