QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

  Kevin P.B. Johnson (Bar No. 177129
  kevinjohnson@quinnemanuel.com
  Victoria F. Maroulis (Bar No. 202603)
  victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>              Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  June 21, 2012<br>Time:  1:30 p.m.<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh<br><br>**FILED UNDER SEAL** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. APPLE'S ASSERTED TRADE DRESSES FOR THE IPHONE AND IPAD ARE INVALID BECAUSE THEY ARE FUNCTIONAL ..............................................................1

    A. Apple's Claimed Trade Dresses Are Invalid Due To Utilitarian Functionality ......................................................................................................1

    B. Apple's Claimed Trade Dresses Are Invalid Due Aesthetic Functionality ................2

III. APPLE'S DILUTION CLAIM SHOULD BE DENIED BECAUSE IT CANNOT PROVE THAT THE ASSERTED TRADE DRESSES ARE FAMOUS .............................3

IV. APPLE'S DESIGN PATENTS ARE INVALID ..................................................................5

    A. The D618,677 and D593,087 Patents Are Obvious ....................................................5

    B. The D504,889 Patent Is Obvious ................................................................................7

    C. The D'305 and D'334 Patents Are Anticipated by the Macworld Disclosure ...........8

    D. The D'334 Is Invalid Due to the On-Sale Bar ............................................................9

V. APPLE'S UTILITY PATENTS ARE INVALID OR NOT INFRINGED ............................9

    A. Claim 8 Of The '915 Patent Is Not Infringed ............................................................9

    B. Claim 50 Of The '163 Patent Is Invalid ...................................................................10

    C. Claim 19 Of The '381 Patent Is Invalid ...................................................................12

    D. Claim 8 Of The '607 Patent Is Invalid ....................................................................13

VI. APPLE'S ANTITRUST CLAIMS FAIL FOR LACK OF DAMAGES ............................14

VII. CONCLUSION ...................................................................................................................15

## I.      INTRODUCTION

Apple's Opposition fails to identify any facts in the record that would create a genuine, material dispute on any of the issues Samsung moves for summary judgment on.  Nor does Apple identify any viable legal theories that justify denying Samsung's motion.  Accordingly, Samsung's motion should be granted in full and judgment entered in its favor on all of Apple's claims.

## II.     APPLE'S ASSERTED TRADE DRESSES FOR THE IPHONE AND IPAD ARE INVALID BECAUSE THEY ARE FUNCTIONAL

### A.      Apple's Claimed Trade Dresses Are Invalid Due To Utilitarian Functionality.

When assessing the protectability of a trade dress claim for the *design of a product*, the courts must "err on the side of caution" because "product design almost invariably serves purposes other than source identification." *Walmart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 206 (2000).  Here, those other purposes unquestionably include functionality.

Apple's Opposition does not dispute that all of the asserted iPhone and iPad trade dress elements "affect the cost or quality of" those devices for the reasons identified in Samsung's opening brief. *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 33 (2001).  Nor does Apple offer any evidence that the overall configuration of the elements does not maximizes the utility of its devices.  Apple's complete failure to rebut the extensive evidence of utilitarian functionality is fatal to its claims. *E.g., id.* at 29.  Apple's argument that functional features should not be deemed legally functional falls flat.  Once a feature is found functional under the *TrafFix* standard of affecting the cost or quality of the article, "the inquiry is over—the feature is functional and not protected." *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006) (citations omitted); *see also Secalt S.A. v. Wuxi Shenxi Construction Mach. Co. Ltd.*, 688 F.3d 677, 683 (9th Cir. 2012) ("A determination of functionality under *Inwood* [or *TrafFix*] may be seen as short circuiting some of the *Disc Golf* factors.").[1]

To try to escape the undisputed factual record, Apple argues that Samsung applied "an

---

[1]  Accordingly, the *Disc Golf* factors Apple relies on (Opp. at 2-3) cannot support a finding of non-functionality.  Even if they theoretically could, they do not here for the reasons set forth in Samsung's Opening Brief at p. 3 n.5.

incorrect legal standard." (Opp. at 1). But it is Apple, relying on cases about restaurant décor and product *packaging*, which ignores Ninth Circuit precedent applicable to *product configuration* trade dress, which is what Apple is asserting.[2] The applicable binding precedent instructs that where, as here, all of the claimed product features are individually functional and arranged in a functional configuration, the trade dress as a whole is functional and invalid. *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F. 3d 1009, 1013 (9th Cir. 1999).

### B.  Apple's Claimed Trade Dresses Are Invalid Due Aesthetic Functionality.

Apple's contention that the Ninth Circuit "has refused to apply the aesthetic functionality test in the trade dress context" (Opp. at 3) is highly misleading. Apple cites no precedent refusing to apply the aesthetic functionality doctrine in the trade dress context here--product configuration. Contrary to the impression Apple creates, *Fabrica Inc., v. El Dorado Corp.*, *condones* use of the aesthetic functionality for trade dress claims regarding "product features"; what it questions are applications in "cases involving trade dress ***and packaging***." 679 F.2d 890, 895 (9th Cir. 1983) (emphasis added) (holding that packaging materials were not functional). The difference between packaging and product configuration is critical:

> The difference in the protection against imitation which will be accorded to an article of commerce on the one hand, and to a package in which the article is marketed on the other, was long ago noted… . [T]he law which permits one to market an identical copy of his competitor's product does not give him freedom to imitate the appearance of the package in which the article is sold.

679 F.2d at 895 (9th Cir. 1983). Both before and after *Fabrica,* this Circuit's courts have affirmed the applicability of the doctrine to prohibit monopolization of product features that "improve the

---

[2] While *Fiji Water Co. v. Fiji Mineral Water* (Opp. at 1) has an element of product configuration, the claimed trade dress was "primarily based upon aesthetic elements" of the product *packaging*, such as "the three-dimensional effect of the transparent label, the placement of tropical foliage on the inside back label, the placement of the pink accent in the lower right corner of the front label, the use of a stylized raindrop and the white block letters and placement of the word FIJI and the phrases 'from the islands of FIJI/NATURAL ARTESIAN WATER' in the upper third of the label," none of which "affect the actual benefit that the consumer wishes to purchase." 741 F. Supp. 2d 1165, 1174 (C.D. Cal. 2010). *Cf. Talking Rain Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601, 605 (9th Cir. 2003) (affirming trade dress for unadorned water bottle was functional).

usefulness or appeal of the object [they] adorn[]." *Au-Tomotive Gold,* 457 F.3d at 1073; *see also, Pagliero v. Wallace China Co,* 198 F.2d 339 (9th Cir. 1952); *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1007-8 (C.D. Cal. 2011); *Aurora World Inc. v, Ty, Inc.*, 719 F. Supp.2d 1115, 1149 (C.D. Ca. 2009); *The Jumpitz Corp. v. Viacom Intern., Inc.*, No. 09-CV1063, 2010 WL 3238953, * 7 (Aug. 13, 2010, S.D. Cal. 2010). Thus, Apple's legal argument is without merit.

Apple's factual "argument" also fails. It has argued strenuously throughout this litigation that the design-related attributes of the iPhone and iPad drive their market success. (*E.g.,* F.A.C. ¶¶ 1, 3, 4; May 17, 2012 Declaration of Brett Arnold ("Arnold Decl.") Exs. 48-49 (Urbach Report ¶¶ 21, 28, 33; 44,45; Winer Report ¶¶ 82-86)). Apple does not disavow that position now. Because Apple may not claim trade dress rights in product features which enhance consumer appeal, its trade dress claims must be dismissed because the trade dresses it seeks to assert are functional and invalid.

### III. APPLE'S DILUTION CLAIM SHOULD BE DENIED BECAUSE IT CANNOT PROVE THAT THE ASSERTED TRADE DRESSES ARE FAMOUS

Apple's defense of its dilution claims is based on a fundamental misreading of the law, particularly as applied to product configuration trade dress. Although Apple faults Samsung for not "point[ing] to a clear delineation in the case law between satisfactory and unsatisfactory [survey] results," (Opp. at 4), it fails to identify a single authority that would support Apple's implicit position that the level of recognition yielded by its own surveys is sufficient to create a material issue of disputed fact regarding fame. Nor does Apple cite any authority that, given its own survey *disproving* that the asserted product configuration trade dresses are famous, it can overcome that direct evidence using circumstantial evidence, such as advertising and sales. Having elected to conduct and rely on these surveys to show secondary meaning, they are part of the undisputed record and reveal the fatal factual flaw in Apple's dilution claims: the partial product configuration trade dress rights it asserts are not famous under the statute.

Even if Apple could theoretically overcome its own direct evidence disproving fame, however, advertising and sales of its products in their entirety, are not sufficiently tied to the asserted trade dress to justify a finding of fame.

> Sales success by itself will typically not be as probative of secondary meaning in a product configuration case as in a trademark case, since the product's market success may well be attributable to the desirability of the product configuration rather than the source-designating capacity of the supposedly distinguishing feature or combination of features.  And unlike with a trademark, where repeated purchases of a product support an inference that consumers have associated the mark with the producer or source, one can much less confidently presume that a consumer's repeated purchase of a product has created an association between a particular product configuration and the source.

*Continental Laboratory Products, Inc. v. Medax Intern., Inc.*, 114 F.Supp.2d 992, 1002-03 (S.D.Cal. 2000) (quoting *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.,* 40 F.3d 1431, 1452-53 (3d Cir. 1994); *see also* 4 MCCARTHY ON TRADEMARK § 15:47 at 15-67 (2012 ed.) ("Popularity of a product is not synonymous with secondary meaning.  Large sales of the product may be due to dozens of factors, only one of which may be the drawing power of the trademark.").  Thus, unlike a trademark plaintiff, whose every sale usually reinforces the connection between product and source, Apple's advertising and sales of iPhone and iPads, involve not only unclaimed features of the exterior of the products, including the home button, but also the Apple trademark and logo.  Thus, there is no nexus between Apple's sales and advertising and the trade dress rights it claims were diluted.  Accordingly, the sole case Apple relies on, *JR-Cigar, Inc. v. GoTo.com, Inc*. (Opp. at 6), does not support its argument, because it is a trademark case, not a product configuration case.  437 F. Supp. 2d 273 (D.N.J. 2006) (also  "niche fame" standard confined to the cigar market, which is no longer the correct standard under 15 U.S.C. § 1125(c)(2)).

Finally, Apple does not even attempt to argue that its advertising addressed the Ninth Circuit's concern in *First Brands Corporation v. Fred Meyer, Inc.*, that the plaintiff "did not attempt to engender consumer identification with the yellow, F-style jug.  It did not, for example, urge consumers to look for the 'familiar yellow jug.'"  809 F.2d 1378, 1383 (9th Cir. 1987).  Nor could it; Apple has no evidence that, for example, it ever urged consumers to "look for the familiar 'substantial black borders above and below the display screen and narrower black borders on either side of the screen under the clear surface'" or to "look for the 'row of small dots on the display screen when the device is turned on.'"  (Am. Comp. ¶ 35.)

Because Apple failed to raise a genuine dispute of material fact concerning the lack of fame, Samsung is entitled to summary judgment on Apple's dilution claims.

## IV. APPLE'S DESIGN PATENTS ARE INVALID

### A. The D618,677 and D593,087 Patents Are Obvious

Contrary to Apple's argument (Opp. at 7-9), Samsung's Motion identifies both primary references for each of Apple's asserted design patents that have "basically the same" design characteristics as the claimed design and secondary references to modify the primary references "to create a design that has the same overall visual appearance as the claimed design." *Durling v. Spectrum Furniture Co.,* 101 F.3d 100, 103 (Fed. Cir. 1996). Accordingly, the D'677 and D'087 patents are invalid as obvious in light of the prior art.

***The D'677 patent is obvious.*** Samsung's Motion identifies several primary references for the D'677 patent, including Japanese design registration 1241638 ("JP'638) and Japanese design registration 1204221 ("JP'221"), and discusses those references in combination with specific secondary references in establishing that the D'677 patent is obvious. (Mot. at 11-13.) [3] Although JP'638 does not have a completely flat front face, in combination with any one of several other prior art designs, including JP'221 or the iRiver U10, these references render the D'677 patent obvious because the result is a combined reference that creates the same overall impression as the D'677 as construed by Apple. *See Durling,* 101 F.3d at 103; *Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1381 (Fed. Cir. 2009). Apple's attempt to argue that JP'221 is not a proper primary reference for the D'677 because JP'221 has an "opaque black" front surface around the display while the D'677 has "clear glass" on the front (Opp. at 7) is unavailing. Whether the opaque material is on top of, or behind, the glass surface, the visual impression of the JP'221 is basically the same as the D'677 patent. (*See* Ex. 8 (J. Ive 12/1/11 Tr. at 188:22-189:5

---

[3] All cites to "Ex." are cites to the Declaration of Bill Trac, submitted herewith, and the paragraphs of that declaration that contain the references to the exhibit. Apple's assertion that certain prior art references, including JP'221, the iRiver U10, the Nokia Fingerprint, the Bluebird Pidion and U.S. D504,889 ("D'889"), were not timely disclosed (Opp. at 7) is incorrect. These documents were produced before the close of discovery and identified in Samsung's interrogatory responses. (*See* Ex. 1; Ex. 2.) In addition, Apple's rebuttal expert report on invalidity was not due until April 16 – several weeks after Samsung's last supplemental interrogatory response identifying specific prior art references. Moreover, these references were all originally produced well in advance of the discovery deadline. Exs. 3-7.

1  ███████████████████████████████████████████████████████████████████

2  ████.)  Moreover, the oblique lines on the D'677 can mean a reflective, not necessarily

3  transparent, surface.  In light of the specific combinations of secondary references with the

4  primary references of JP'638, JP'221, as well as the other combinations detailed in Samsung's

5  Motion, the D'677 patent is invalid as obvious in light of the prior art.  (*See* Mot. 10-12.)

6  ***The D'087 patent is obvious.***  The principal differences between the D'677 and D'087

7  patents are the D'087 patent's bezel, lack of black surface coloring, and lack of oblique lines

8  showing a reflective or transparent surface.  Therefore, the primary references for the D'677 also

9  serve as appropriate references for the D'087.  In addition, either JP'221 or JP'638 renders the

10 D'087 patent obvious when combined with the Bluebird Pidion or its underlying patent, KR-30-

11 0398307, which both show a bezel surrounding the front face of a mobile electronic device and

12 lack of black surface color.  *See Durling,* 101 F.3d at 103 (noting that where obviousness

13 references are similar, they suggest application of features one to another).

14 ***Secondary considerations of non-obviousness cannot revive Apple's patents.***  Apple's

15 discussion of industry praise for the iPhone fails to combat the obviousness of the D'677 and

16 D'087 patents.  Although commercial success of a product may be evidence that the patent used in

17 the product is nonobvious, the patentee must tie the commercial success to the patent at issue.

18 *E.g., Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008) (citation omitted)

19 (noting that no evidence showed that the commercial success of the "overall system" was

20 attributable to the patented invention).  Although Apple cites to articles, studies, and surveys

21 purporting to show that the appearance of the iPhone is something people find attractive or even

22 important, Apple presents no actual evidence that suggests that purchasers buy the iPhone *because*

23 *of* the patented features of its appearance as opposed to the iPhone's functionality– such as

24 responsive touch screen technology, the ability to browse the internet, watch videos, play games,

read and compose emails, download applications, or numerous other functions.[4] (See Ex. 9 (A. Hedge 4/30/12 Tr. at 194:17-20 ("▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒").) Further, the D'677 and D'087 patents cannot be tied to the iPhone's commercial success because they do not even claim the overall exterior of the iPhone, but, rather, only the front surface and bezel. They claim no curved sides or rear surface, nor even Apple's "home screen" button, which it claims is a "distinctive" and "prominent" feature of every version of the iPhone since Apple announced the original iPhone in 2007. (Ex. 13.)

### B.  The D504,889 Patent Is Obvious

The D'889 is obvious in view of references produced to Apple during the discovery period and identified in interrogatory responses before the close of expert discovery and exchange of expert reports.[5] Samsung identified the Brain Box display as prior art in correspondence dating back to November 2011, and it was the subject of motion practice. (See Dkt. 487 at 18-19; Trac Decl., ¶¶ 15-20.) Apple has long been aware of this reference because, among other reasons, it is one of Apple's own designs. *See Se-Kure Controls, Inc. v. Vanguard Prods. Group, Inc.*, 2007 WL 781250, *6-*7 (N.D. Ill. 2007) ("[C]laims of sandbagging lose their persuasiveness when it's your sand and your bag.").

The primary reference of the D'037 patent shows basically the same overall shape, dimensions, form, and flat surface as the D'889 patent. In its Opposition, Apple points to nothing more than the lack of oblique line shading, absence of a border underneath the display and certain detail on the back to distinguish the D'037 patent from the D'889 patent. But the D'037, in combination with the thinner form factor of the Brain Box display and transparent surface of the

---

[4] Apple's consumer survey data does not accurately attribute any percentage of sales to the iPhone's industrial design, and Apple's own expert testified ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ *See, e.g.,* (Ex. 10 (R. Winer 4/27/12 Tr. at 271:10-16.))

[5] U.S. D500,037 was first produced to Apple on September 11, 2011 (Ex. 11) and identified as prior art in Samsung's March 19, 2012 interrogatory response. (Ex. 2.) D'037 is also the same design disclosed in several patent references identified by Samsung during the preliminary injunction phase, including the appeal. (Dkt. 306 at 1; Ex. 12 at 55-56.)

1 Fidler Tablet creates substantially the same design as the D'889 patent.  *Durling*, 101 F.3d at 103.

2          Apple's argument that the Brain Box does not constitute a primary reference also fails.
3 First, Apple cites no law requiring that all views of a primary reference be disclosed, and the
4 overall form of the Brain Box display can be properly ascertained from the photograph.  Second,
5 despite repeated discovery requests and motions, Apple failed to produce any further photographs
6 or models of the Brain Box, and it should not be permitted to profit from this lack of production.
7 (Trac Decl., ¶¶ 15-20.)  In any event, the testimony of Robert Brunner regarding the Brain Box is
8 irrelevant since Mr. Brunner has no more foundation to opine about what that image shows than
9 anyone else because he admits to having never seen the Brain Box in person.  (Ex. 18 (R. Brunner
10 3/4/12 Tr. at 75:12-24.))  And other Apple witnesses testified that they believe that the Brain Box
11 display *does* disclose a flat front surface.  (Mot. at 14 n.19.)

12          As with the D'677 and D'089, Apple has likewise failed to tie the commercial success of
13 the iPad 2 to the D'889 patent, which also shows no "home screen" button, any type of user
14 interface, or the thin profile of the iPad2.  Indeed, Apple has applied for design patents on the iPad
15 2, citing D'889 as prior art over which the designs are patentably distinct.  (Exs. 19-21.)  Even if
16 the external industrial design of iPad 2 were claimed by the D'889, Apple can still not link the
17 D'889's design to the press it cites, which focuses on the overall functionality and performance of
18 the product.  (Winer Decl. Ex. 1 at ¶ 70.)

19          **C.     The D'305 and D'334 Patents Are Anticipated by the Macworld Disclosure**

20          The D'304 and D'334 patents are invalid as anticipated because their claimed conception
21 dates are after the printed publication of images from the January 2007 Macworld conference
22 showing an iPhone home screen that is nearly identical to the home screen disclosed in the D'334
23 and D'305 patents.  35 U.S.C. § 102(a); (Mot. at 15-16).  Apple argues that the Court should reject
24 this argument because Samsung failed to timely disclose the Macworld images.  (Opp. at 11.)  But
25 Apple changed its conception dates for the D'305 patent as late as the day before the close of
26 discovery, and Samsung supplemented its interrogatory responses to disclose this theory, within a
27 few weeks thereafter.  (*See* Arnold Decl. Ex. 23 at 9; Ex. 22 at 288.)  Moreover, Apple is not
28 prejudiced by this argument because Apple was obviously aware of these images throughout the

1  discovery period and before.  Apple's expert also had opportunity to address the prior art, but
2  chose not to do so at the instruction of Apple's counsel.  (Ex. 23 (Report of S. Kare at 29 n.31).)
3        Apple also seeks to avoid invalidity of the D'305 and D'334 patents by arguing that
4  publication of an inventor's own work cannot be considered prior art.  (Opp. at 11-12.)  That is not
5  true except where the inventor's publication discloses an invention after the conception date, but
6  within a year before the filing date, as in all of the cases Apple relies on.  Otherwise, an inventor's
7  own designs can be anticipating prior art, especially where the alleged publication occurs *before*
8  the conception date of the claimed invention.  *See, e.g.*, 69 C.J.S. Patents § 114.  Apple cannot in
9  good faith claim that the Macworld images of the iPhone home screen disclosed in January 2007
10 are the same invention as the D'305 because, according to Apple, the D'305 was not even
11 conceived of until three months later.  (*See* Arnold Decl. Ex. 23 at 9.)  Apple never patented the
12 Macworld images it put into the public domain and it cites no authority preventing those images
13 from being considered invalidating prior art under Section 102(a).

14     **D.**    **The D'334 Is Invalid Due to the On-Sale Bar**

15       The D'334 is also invalid because the application for the D'334 was not filed until July
16 2008--over a year after the iPhone was first sold.  35 U.S.C. § 102(b); *Pfaff v. Wells Elecs,* 525
17 U.S. 55, 67 (1998).  (*See* Arnold Decl. Ex. 23 at 9.)  Apple concedes this point, but argues that
18 Samsung has provided no evidence of the appearance of the iPhone home screen at the time of its
19 first sale.  (Opp. at 12.)  This is incorrect.  Samsung's Motion cited to Apple's own discovery
20 responses claiming that the D'305 patent was embodied in the iPhone 3G, which Apple claimed it
21 started selling in June 2007--more than a year before the filing date of the D'334 on July 15, 2008.
22 (*See* Arnold Decl. Ex. 37 at 2.)  Apple also does not dispute—and therefore concedes—that D'334
23 is substantially the same as D'305.  By Apple's own admission, therefore, the D'334 is invalid.

24 **V.**    **APPLE'S UTILITY PATENTS ARE INVALID OR NOT INFRINGED**

25     **A.**    **Claim 8 Of The '915 Patent Is Not Infringed**

26       Apple's infringement argument rests on a flawed construction of the phrase "the event

1 object invokes." As properly construed, "invokes" requires the event object *itself* (and not some other object) to call a method or function.[6] Apple, however, ignores the plain and ordinary meaning and argues that "the event object invokes" means "the event object causes." The only supporting evidence Apple cites for this ill-conceived construction are specification references to a different term – "*user input* invokes" – and a dictionary definition. But this evidence unequivocally supports Samsung's construction, not Apple's. For example, the specification provides: "The method 1000 . . . includes transferring a scroll hysteresis **call** to determine whether a user input **invokes** a scroll at block 1002." There the meaning of "call" and "invokes" mirror one another. The dictionary definition Apple cites further supports Samsung's construction. None of this is a surprise; the only way that a computer can "cause (a procedure) to be carried out" is by calling the procedure.[7] As a result, Samsung does not infringe.[8]

But even if the Court adopts Apple's construction for "invoke," there is no infringement. The accused MotionEvent object does not cause a scroll or gesture operation to occur. It is simply a container that holds touch information. It is undisputed that another object, the non-accused WebView object, contains the computer code that causes the scroll or gesture operation to be carried out. Singh Decl. ¶¶ 45-46; Gray Decl. ¶34.

### B.  Claim 50 Of The '163 Patent Is Invalid

The validity of the '163 patent turns on the meaning of "structured electronic document." Apple argues that LaunchTile's zoomspace is not a "structured electronic document" because different content may be displayed at each of the zoomspace's three levels. Apple's argument, however, is based on an unduly limiting construction that lacks evidentiary support.

---

[6] Apple did not clearly articulate its infringement theory until it served its expert report on infringement. At that time, Apple first advanced its unsupported construction for "the event object invokes." Thus, this claim construction dispute is timely and should be addressed by the Court. *O2 Micro Intl. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351 (Fed. Cir. 2008).

[7] Apple states that Samsung's construction is nonsensically-limiting or impossible." This is unsupported attorney argument. As confirmed by Mr. Gray, an event object could call a method or function. Gray Reply Decl. ¶ 3. Apple's expert never disputes this. Singh Decl., *passim*

[8] Apple does not dispute that it failed to raise a doctrine of equivalents argument in its infringement contentions and is therefore precluded from doing so now. Mot. at 18 n.26.

First, Apple claims that the zoomspace is not a "structured electronic document" because it "displays largely or entirely different content" in its three different levels.[9] Opp. at 16. However, Apple cites nothing in the claim language or the specification that requires (or even suggests) that a structured electronic document must display the same or largely the same content when enlarged. The change in appearance of embedded tiles within the zoomspace is no different than the change in appearance that sometimes occurs to embedded objects within a web page. Gray Decl. ¶ 89.

Second, Apple claims that LaunchTile does not "enlarge and translate the structured electronic document" to center a first box. Opp. at 17. But nothing in the claim or specification precludes a further rendering of content during an enlargement or translation of the document. Furthermore, such rendering in LaunchTile does *not* involve the replacement of the selected "box" with another object. Bederson Decl. ¶¶ 17, 18.[10] Contrary to Apple's selective reliance on testimony, Mr. Gray did not admit the structured electronic document is different in the World and Zone views. *See* Ex. 24 at 206:4-10 (Mr. Gray: "I thought I said something different, so let me try again.").

Finally, Apple argues that Samsung has failed to meet the "second box" limitation. Opp. at 18. Apple argues that the second box cannot be within the first box, but nothing in the claims or specification preclude this. Apple also contends that a user must be able to scroll to see other content after a second box has been selected. Once again, this purported limitation appears nowhere in the claims or specification. Insofar as Apple analogizes the selection of an Application

---

[9] Apple faults Dr. Bederson for not stating that LaunchTile displays a structured electronic document. However, Dr. Bederson is a fact witness who has not analyzed or offered any opinions regarding the '163 patent. As such, Dr. Bederson it is not in a position to say whether LaunchTile includes a "structured electronic document" as claimed in the '163 patent.

[10] In an attempt to establish that the additional content rendered in LaunchTile derives from a different data structure, Dr. Singh opines that "there must be some conceptual relationship or commonality in the information in a 'document' that is sufficient to justify treating that information as a single discrete entity." Singh Decl. ¶¶ 95, 97. But this opinion appears nowhere in Dr. Singh's expert reports, and it is inconsistent with his deposition testimony that an "electronic document" could be an "cohesive piece of information." Gray Decl. ¶ 88 (quoting testimony of Dr. Singh).

1  tile from the Zone view to the selection of a Microsoft Word icon on a Windows desktop, it is
2  incorrect.  As Dr. Bederson explains, regardless of the level of zoom, the Application tiles were
3  more than symbolic images and were designed to support at least some amount of "live" content.
4  Bederson Decl. ¶ 15.

### C. Claim 19 Of The '381 Patent Is Invalid

Apple's claim that Tablecloth does not qualify as prior art ignores the undisputed facts. Tablecloth qualifies as prior art under Section 102(g).  It was invented no later than January 12, 2005 in the United States – before the '381 patent's alleged February 2005 conception date – as corroborated by the date stamp on the Tablecloth program itself.  (Trac Decl., ¶28).  It was disclosed to MERL visitors and during trade conventions and therefore was not "abandoned, suppressed or concealed."  (Bogue Decl. ¶13.)  Tablecloth also qualifies as prior art under Sections 102(a).  It was publicly demonstrated in the MERL lobby and during trade conventions more than one year before the December 2008 filing date of the '381 patent.[11]  (Bogue Decl. ¶13; Bogue Supp. Decl. ¶10 .)

There is also no dispute that TableCloth meets all limitations of claim 19.  First, Apple argues that the DiamondTouch system does not have a "touch screen display."  This argument is not credible.  The DiamondTouch system ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Bogue Supp. Decl. ¶6.)  Second, Apple argues that the '381 patent requires the snapback to immediately stop once the area beyond the edge is no longer displayed.  Yet claim 19 has no such limitation; Apple is simply inventing a limitation to avoid invalidation.[12]  Third, Apple uses an incorrect setup of the DiamondTouch system to create the alleged "hold-still" behavior.  Apple's incorrect setup causes the Internet Explorer window to lose focus and creates the erroneous "hold still" behavior in

---

[11] Apple offers no evidence supporting an earlier priority date, and therefore is not entitled to the January 7, 2007 date. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 22 F. 3d 1299, 1305-06 (Fed. Cir. 2008) (plaintiff has burden of proving earlier date).

[12] This argument was not disclosed in Dr. Balakrishnan's expert report and should be stricken.

1  Tablecloth.  (Bogue Supp. Decl. 9.)  No such error occurs when Tablecloth operates on its own.
2  Finally, Apple creates false ambiguity regarding the definition of electronic document.  Samsung's
3  position is simple – both the single image (analogous to a photo in a gallery) or the composite of
4  the two images (analogous to pages of an article) may constitute an electronic document
5  (Trac Decl. ¶9).  Either or both of these electronic documents invalidate claim
6  19 of the '381 patent.

   **D.     Claim 8 Of The '607 Patent Is Invalid**

   Rather than address the substance of Samsung's arguments, Apple engages in sleight of
   hand in an effort to obfuscate the fact that claim 8 is invalid as a matter of law.  Apple's arguments
   utterly lack merit.  First, Apple argues that the ITC decision has "no bearing" on claim 8.  Apple is
   wrong.  This Court "can attribute whatever persuasive value to the prior ITC decision that it
   considers justified." (*Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569
   (Fed. Cir. 1996)).  Here, the prior ITC decision should be accorded substantial persuasive value
   because Apple advanced the *same* losing arguments before the ITC that it is advancing here.[13]
   Although claim 8 was not before the ITC, that claim depends from claims 1 and 7—both of which
   were found to be invalid in view of Perski and Smartskin.  Claim 8 merely adds an amplifier
   circuit used in capacitive touchscreens for over a decade before the '607 patent was filed.  (Von
   Herzen Dec. at ¶¶ 28-57.)

   To avoid the compelling prior art relied upon by Samsung, Apple now argues that
   Samsung should have disclosed the amplifier prior art sooner.  (Opp. at 21).  Apple's argument
   lacks candor; Samsung's disclosure was promptly made once Apple – *for the first time* – disclosed
   its interpretation of claim 8 in Dr. Maharbiz's infringement report.  Thus, the Court should

---

[13]  Like Dr. Maharbiz, Apple's ITC expert Dr. Subramanian, testified about the alleged technical obstacles of converting the opaque versions of the Smartskin sensor into transparent form (Ex. 27, Hearing Tr. 1466:6-1509:20) and the Perski design not being able to detect multiple fingers and generate distinct signals of those multiple fingers (*Id.* at 1544:12-1568:2).

consider these new references, which confirm claim 8 is not inventive.[14]

Apple's remaining arguments are equally flawed.  In response to Perski's unequivocal disclosure, Apple weakly points to subsequent patent filings by the same assignee that imply the design of Perski could be improved upon.  (Opp. at 21.)  These filings establish, however, that the charge amplifier of claim 8 was well-known in the art and do nothing to alter the express disclosure of Perski.  Concerning Smartskin, Apple's only argument is that Smartskin would not enable one skilled in the art to convert opaque versions of a touchscreen into a transparent form. (*Id.* at 21-22.)  This argument ignores the fact that Smartskin *expressly describes* a transparent embodiment using the exact same transparent conductors (*i.e.*, ITO) that are described in the '607 patent.[15]  Accordingly, summary judgment of invalidity should be granted.

## VI. APPLE'S ANTITRUST CLAIMS FAIL FOR LACK OF DAMAGES

Apple's opposition attacks a straw man argument.  Samsung does not "improperly conflate[] fact of injury with amount of injury (the latter necessary only to sustain a damages award in a specific amount)."  (Opp. at 23-24.)  Samsung's motion for summary judgment is based solely on the latter element:  Apple's failure to prove the amount of injury.  Apple does not dispute that it is required to provide some estimate of its damages.  *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1452-53 (9th Cir. 1983).  However, Apple has failed to submit any evidence of such harm in its opposition.

---

[14] Dr. Maharbiz asserts that none of the numerous secondary references containing the identical amplifier depicted in FIG. 13 of the '607 patent also disclose a transparent, multi-touch sensor and for that reason any combination would be based on "hindsight" reconstruction. (Maharbiz Dec. ¶¶ 45, 47, 61, 64, 65, 68.)  Of course, the primary references (*i.e.*, Perski and Smartskin) do show the transparent, multi-touch sensor and each of the secondary references provides ample motivation to incorporate the virtual ground charge amplifier for use as a filtering element—the same use described in the '607 patent.  ('607 patent, 17:36-61.)  Hindsight reconstruction cannot save Dr. Maharbiz from "recourse to common sense" regarding the motivation to use this commonplace filter in the sensors of Smartskin or Perski.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (U.S. 2007).

[15] Moreover, even if Smartskin does not anticipate claim 8, it certainly renders it obvious under § 103 either alone or in view of Rekimoto by the same author.  Prior art relied upon for obviousness under § 103 need not be enabling.  *See Symbol Techs. Inc. v. Opticon Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991).

1   Apple concedes that Samsung's alleged "anticompetitive" conduct "has yet to harm
2   competition." Ordover Dep. Tr. at 252:2-3. Apple does not provide any evidence that it has paid
3   any higher prices, has suffered from any lower quality in the alleged Input Technology Markets, or
4   has been forced to cut back on investments or sales.

5   Apple has left itself only with the claim that its attorneys' fees are its antitrust injury. Yet
6   Apple has *still* not pointed to any documents, witness testimony, or declarations that show it can
7   provide evidence by which "a jury could fairly estimate damages." *Rickards*, 704 F.2d at 1452-
8   53. Apple concedes that Dr. Ordover has not quantified such damages. (Opp. at 23-24.) Further,
9   if Apple contends that it can raise an issue of fact with respect to damages by relying on fact
10  witness testimony, it was obliged to submit declarations or deposition testimony setting forth
11  specific facts showing its damages. *Celotex Corp. v. Catrett*, 417 U.S. 317, 324 (1986). Apple
12  has not done so.

13  As Apple concedes, proof of the amount of injury is "necessary . . . to sustain a damages
14  award in a specific amount." (Opp. at 23.) Without such proof, Apple cannot obtain a damages
15  award on its counterclaims.[16]

## VII.  CONCLUSION

Samsung's motion for summary judgment should be granted in its entirety.

DATED:  June 7, 2011                      Respectfully submitted,

                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP

                                          By /s/ Victoria Maroulis
                                             Victoria F. Maroulis
                                          Attorneys for SAMSUNG ELECTRONICS CO.,
                                          LTD., SAMSUNG ELECTRONICS AMERICA,
                                          INC. and SAMSUNG TELECOMMUNICATIONS
                                          AMERICA, LLC

---

[16] *In re SRAM Antitrust Litig.*, Civ. A. No. 07-01819, 2010 WL 5141861 (N.D. Cal. Dec. 13, 2010) is not to the contrary. There, the plaintiff demonstrated "a high probability that [plaintiff] suffered injury through overcharges," and provided "qualitative and empirical analysis of the SRAM market in which [plaintiff] was a direct purchaser." *Id.* at *2, *3.