QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and Samsung
Telecommunications America, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION PURSUANT TO RULE 62(C) FOR ENTRY OF PRELIMINARY INJUNCTION WITHOUT FURTHER HEARING**<br><br>Date: June 7, 2012<br>Time: 1:30 pm<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh<br><br>**PUBLIC REDACTED VERSION** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................ 1

PROCEDURAL HISTORY ........................................................................................................... 3

ARGUMENT ................................................................................................................................. 3

I. Because Apple's Motion Seeks to Overturn the Status Quo Rather than Preserve It, Rule 62(c) Does Not Authorize the Court to Grant Injunctive Relief. ................................ 3

    A. Rule 62(c) Is Limited to Orders Necessary to Preserve the Status Quo. .................. 3

    B. Apple's Sole Authority Is Not to the Contrary. ........................................................ 5

II. Apple's Motion Fails to Establish That It Is Entitled To A Preliminary Injunction. ............. 6

    A. The Balance of Hardships Favors Denial of a Preliminary Injunction. .................... 6

    B. The Public Interest Does Not Favor Issuing a Preliminary Injunction. .................. 10

III. Calculation of an Appropriate Bond Under Rule 65(c). ....................................................... 12

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Apple, Inc. v. Samsung Electrics Co., Ltd.*,
  No. 2012-1105 (Fed. Cir. May 14, 2012) ............................................................................ 3

*Bard v. Pripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*,
  670 F.3d 1171 (Fed. Cir. 2012) ........................................................................................ 11

*Barringer v. Griffes*,
  810 F. Supp. 119 (D. Vt. 1992) ......................................................................................... 4

*Cf. eBay Inc. v. MercExchange LLC*,
  126 S. Ct. 1837 (2006) .................................................................................................... 10

*Coastal Corp. v. Texas Eastern Corp.*,
  869 F.2d 817 (5th Cir. 1989) ............................................................................................. 4

*Dillard v. City of Foley*,
  926 F. Supp. 1053 (M.D. Ala. 1995) ................................................................................. 4

*Illinois Tool Works, Inc. v. Grip-Pak, Inc.*,
  906 F.2d at 683 ................................................................................................................ 11

*Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Eastern Air Lines, Inc.*,
  847 F.2d 1014 (2d Cir. 1988) ............................................................................................ 4

*Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*,
  925 F.2d 556 (2d Cir. 1991) .............................................................................................. 4

*McClatchy Newspapers v. Central Valley Typographical Union No. 46*,
  686 F.2d 731 (9th Cir. 1982) ............................................................................................. 3

*Nat'l Kidney Patients Ass'n v. Sullivan*,
  958 F.2d 1127 (D.C. Cir. 1991) ....................................................................................... 12

*Novozymes A/S v. Danisco A/S*,
  No. 10-cv-251, 2010 WL 3783682 (W.D. Wis. Sept. 24, 2010) ...................................... 9

*Pentair Water Pool and Spa, Inc. v. Hayward Industrial, Inc.*,
  2012 WL 194403 (E.D.N.C., 2012) ................................................................................ 11

*In re Qwest Commc'ns International, Inc. Sec. Litigation*,
  231 F. Supp. 2d 1066 (D. Colo. 2002) ............................................................................ 10

*United States v. El-O-Pathic Pharm.*,
  192 F.2d 62 (9th Cir. 1951) ............................................................................................... 5

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) .............................................................................................................. 6

**Statutes**

Fed. R. Civ. P. 62(c) ............................................................................................................. 1, 2, 3, 12

**Miscellaneous**

7 J. MOORE, MOORE'S FEDERAL PRACTICE ¶62.05 (2D ED. 1979) ....................................................... 3

11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2904
    (1973 .............................................................................................................................................. 4

**INTRODUCTION**

Pursuant to the May 21, 2012 Order, (Dkt. No. 962), Samsung responds to Apple's Motion Pursuant to Rule 62(c) for Entry of Preliminary Injunction Without Further Hearing ("Motion").

As an initial matter, because the Federal Circuit has not issued the mandate, the Court lacks jurisdiction to rule on Apple's motion.  Apple invokes Fed. R. Civ. P. 62(c) as the basis for its Motion, but that Rule only authorizes orders necessary to preserve the status quo.  Because Apple's Motion seeks to overturn the status quo, not preserve it, Rule 62(c) does not apply.

Further, even once jurisdiction is returned to this Court, and even assuming the Court were to consider only the balance of hardships and public interest factors in light of evidence that was submitted on Apple's original preliminary injunction motion last year, the Court should deny Apple's Motion, as Apple is not entitled to a preliminary injunction.[1]  First, the balance of hardships weighs heavily in Samsung's favor.  Enjoining the sale of Samsung's carrier versions of the Galaxy Tab 10.1 until the end of trial would impose great harm on Samsung.  As explained in connection with the calculation of the bond, and as Apple is aware, Samsung no longer sells new units of the accused WiFi-only version of the Galaxy Tab 10.1, since it has been replaced by a new (and not accused) model.  For the only remaining Galaxy Tab 10.1 models at issue, Samsung's customers are wireless carriers, which sell those devices to their customers along with cellular service plans.  Those carriers have long-term relationships with their individual and corporate clients.  It is essential to Samsung's business that it remains a stable source of products to its carrier customers, and it would suffer great harm from a disruption of its sales.

In contrast, Apple has not shown that it will suffer any significant harm absent an injunction or that an injunction would remedy any irreparable harm.  The only basis for Apple's motion against the Galaxy Tab 10.1 is alleged infringement of the D'889 patent, which Apple

---

[1] In accordance with the Court's May 21, 2012 Order, Samsung is limiting its presentation here to these two factors and the issue of the bond.  For the reasons explained in Samsung's Motion for Leave to Seek Reconsideration of the Court's May 21, 2012 Order, however, Samsung respectfully submits that the Court should consider all four factors, including likelihood of success on the merits and irreparable harm, in light of a full and up-to-date record.

claims is embodied in the design of its iPad 2 devices. But the products at issue are highly complex technological devices with numerous components and thousands of functional features that are wholly unrelated to, and have significant value independent of, ornamental design. The evidence of record also shows that consumers make their purchasing decisions based overwhelmingly on the technology, not design. Indeed, Apple has no proof that it has sold iPad 2 products which compete directly with the Galaxy Tab 10.1 4G LTE sold at Verizon and U.S. Cellular – undoubtedly because Apple has not made a 4G LTE version of the iPad 2. Consumers looking for 4G LTE technology will not – and cannot – get it by purchasing Apple iPad 2 devices, which was the sole basis for Apple's claim of irreparable harm though alleged market share loss. Just as this Court found with respect to smartphones, it is disproportionate and inequitable to enjoin the entirety of these complex technological devices that consumers value for reasons that are not even arguably infringing on D'889. That is particularly true where, as here, such an overbroad injunction would not and could not benefit Apple. Similarly, the great disparity in the volume of Apple's and Samsung's tablet sales unequivocally confirms that Samsung has much more to lose than Apple.

The public interest also supports denial of a preliminary injunction. Because the only Samsung tablet at issue that is still being sold goes to wireless carriers, there is a strong public interest in avoiding disruption, uncertainty or delay in the long-term commercial relationships between carriers and their customers. And because there is no proof that Apple has sold iPad 2 devices with 4G LTE technology, an injunction would further harm the public interest by reducing consumer options for superior technological features that are not even arguably infringing and that Apple's claimed iPad 2 embodiment lacks.

Pursuant to the Court's Order, Samsung also submits evidence of the appropriate amount for a bond under Fed. R. Civ. P. 65(c). ██████████████████████████████████████████████████████████████████████████████████████████████████ The 4G LTE and other carrier network connected versions of the Galaxy Tab 10.1 are still available for sale to wireless carriers.

Samsung provides its sales forecasts and estimates of foreseeable monetary damages if an erroneous injunction were to prevent Samsung from selling the Tab 10.1 4G LTE through trial.

## PROCEDURAL HISTORY

On July 1, 2011, Apple moved for a preliminary injunction, seeking to enjoin Samsung from selling three smartphones and the Galaxy Tab 10.1 tablet. (Dkt. No. 86.) Samsung opposed. (Dkt. No. 428.) After limited and expedited discovery, this Court held a hearing on October 13, 2011. (Dkt. No. 305.) On December 2, 2011, this Court denied Apple's original motion in its entirety. (Dkt. No. 449 ("Order Denying PI").)

Apple appealed to the Federal Circuit, which issued a decision on May 14, 2012. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2012-1105 slip op. (Fed. Cir. May 14, 2012). The Court of Appeals affirmed the denial of Apple's motion with respect to the D'087, D'677, and '381 patents – the patents asserted against Samsung's smartphones – and vacated and remanded for further proceedings on the D'889 patent asserted against Samsung's Galaxy Tab 10.1. *Id.* at 34. No mandate has issued from the Federal Circuit.

On May 18, 2012, Apple filed its present Motion, seeking a preliminary injunction pursuant to Fed. R. Civ. P. 62(c). (Dkt. No. 951.) On May 21, 2012, the Court issued an order establishing a briefing schedule and setting a hearing for June 7, 2012. (Dkt. No. 962.) That Order specified limited topics for briefing, including the question of "whether this Court has jurisdiction to amend the order on the preliminary injunction prior to the issuance of the mandate from the Federal Circuit." (*Id.* at 1-2.)

## ARGUMENT

**I.   Because Apple's Motion Seeks to Overturn the Status Quo Rather than Preserve It, Rule 62(c) Does Not Authorize the Court to Grant Injunctive Relief.**

A.   Rule 62(c) Is Limited to Orders Necessary to Preserve the Status Quo.

"Rule 62(c) is 'merely expressive of a power inherent in the court to ***preserve the status quo*** where, in its sound discretion, the court deems the circumstances so justify.'" *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982) (quoting 7 J. MOORE, MOORE'S FEDERAL PRACTICE ¶62.05 (2d ed. 1979) (emphasis added); *see*

*also Dillard v. City of Foley*, 926 F. Supp. 1053, 1075 (M.D. Ala. 1995) ("The purpose of Rule 62(c) is to allow district courts to retain jurisdiction over a case to maintain the status quo where equity requires it while the case is on appeal.") (citing *Turner v. HMH Publ'g Co.*, 328 F.2d 136 (5th Cir. 1964)).  Where a motion for an injunction under Rule 62(c) threatens to overturn the status quo rather than preserve it, the motion must be denied.  *Barringer v. Griffes*, 810 F. Supp. 119, 120 (D. Vt. 1992) ("Because the relief plaintiffs seek in this motion would change the status quo, this Court is not empowered to grant it under Rule 62(c).") (citing *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991) and 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2904 (1973)); *see also Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817, 820 (5th Cir. 1989) ("[h]aving reviewed the existing case law throughout the circuits and paying proper respect to Rule 62(c), we are persuaded that the powers of the district court over an injunction pending appeal should be limited to maintaining the status quo"); *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Eastern Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988) (Rule 62(c) "has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal where the consent of the court of appeals has not been obtained").[2]

Apple's Motion does not argue that its preliminary injunction will preserve the status quo. (*See* Dkt. No. 951 at 9-10.)  Nor is there any basis for Apple to make such an argument.  At the time of either the Court's ruling on Apple's original motion or the Federal Circuit's ruling, there was free competition between tablet providers including Apple and Samsung.  Any injunction blocking Samsung from competing in this market will necessarily upend, rather than preserve, the status quo.  Accordingly, Fed. R. Civ. P. 62(c) does not apply, and this Court lacks jurisdiction. In the absence of this necessary condition for an injunction under Rule 62(c), Apple's Motion should be denied.

---

[2] Separately, the defendant consented to the Court of Appeal's consideration of the merits of the injunction on alternative grounds, which avoided its finding that Rule 62(c) did not confer jurisdiction in the district court.  *See id.* at 1018.

B.  Apple's Sole Authority Is Not to the Contrary.

The only authority offered by Apple is not to the contrary.  In *United States v. El-O-Pathic Pharm.*, 192 F.2d 62 (9th Cir. 1951), the Ninth Circuit made two decisions.  First, on appeal from an order of the district court denying permanent injunctions, the court of appeals reversed and remanded with directions to issue permanent injunctions.  *Id.* at 64, 78.  That decision had nothing to do with Rule 62(c).  Second, the Ninth Circuit denied a "motion that the mandate be issued forthwith." *Id.* at 80.  In explaining its denial of that motion, the court of appeals stated in dicta that the appellant appeared to have recourse to a motion under Rule 62(c) in the district court, noting "subdivision (c) of Rule 62 is an exception to that general rule and a recognition of the long established right of the trial court, after an appeal, to make orders appropriate *to preserve the status quo* while the case is pending in the appellate court." *Id.* (emphasis added).  The Court of Appeals noted that "[t]he status quo which the action was brought to preserve, was the protection of the public against the sale of certain misbranded drugs." *Id.* at 80 n.12.  *El-O-Pathic* is thus consistent with all other authority that Rule 62(c) is strictly limited to orders necessary to preserve the status quo.

*El-O-Pathic* is distinguishable for another key reason, and it is only by mischaracterizing the Federal Circuit's ruling in this case that Apple strains to make *El-O-Pathic* relevant at all.  In *El-O-Pathic*, the Ninth Circuit had *reversed* the district court's denial of permanent injunctive relief and affirmatively ordered that it grant such relief.  Apple claims *El-O-Pathic* involves the same "circumstances presented here, in which the court of appeals has *reversed* the denial of an injunction but the mandate has not yet issued." (Dkt. No 960 at 2 (emphasis added).) *See also id.* at 1 ("In *El-O-Pathic*, *as here*, the district court had denied a motion for an injunction, the court of appeals *reversed*, and the mandate had not yet issued." (Dkt. No 960 at 1 (emphasis added).)  But contrary to Apple's inaccurate description, the Federal Circuit *did not* reverse this Court's denial of a preliminary injunction, but instead vacated and remanded for further proceedings.  Nor did the Federal Circuit direct that any injunction be issued on remand, as the Ninth Circuit did in *El-O-Pathic*.  Whatever weight the sixty year old *El-O-Pathic* dicta regarding Rule 62(c) might have in the case of a reversal by a court of appeals of a motion for permanent

injunctive relief and an express directive to the lower court to enter such relief, it has no application here where the Federal Circuit vacated the denial of a preliminary injunction and remanded for further proceedings. As the cases cited above make clear, Rule 62(c) simply does not authorize a court to enter a preliminary injunction pending remand that would upset the status quo, which is precisely what Apple asks the Court to do.

## II.  Apple's Motion Fails to Establish That It Is Entitled To A Preliminary Injunction.

Apple's Motion also is without substantive merit. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* (citation omitted). Apple has failed to prove that the balance of hardships weighs in its favor or that the public interest is best served by granting injunctive relief. Instead of providing particularized evidence, Apple offers generic pronouncements and unproven assumptions that are inapposite to this case.

### A.  The Balance of Hardships Favors Denial of a Preliminary Injunction.

With respect to smartphones, this Court found that "the balance of hardships weighs in favor of Samsung." Order Denying PI at 37. The Federal Circuit asked whether these findings on the balance of hardships as to smartphones were applicable to tablets. *Apple*, slip op. at 33. The answer is yes, and Apple's motion to enjoin the Galaxy Tab 10.1 should be denied for those same reasons as well as for additional ones.

First, in the context of smartphones, the Court already recognized the importance to customers of the many features of these devices apart from ornamental design. *See* Order Denying PI at 38 ("the D'677 patent … is but one of many features of the Samsung accused devices."). Accordingly, as the Court observed, "[i]ssuing an injunction on both of these products

based on one aspect of the overall product does not advance equitable principles." As the Court further recognized, both technology and consumer preferences change rapidly.[3]

The same is true with the tablets here. The only ground for Apple's Motion that is before the Court is the D'889 patent, which Apple claims the iPad 2 design embodies. But the tablet computer products at issue are highly complex technological devices with numerous components and thousands of functional features that are wholly unrelated to, and have significant value independent of, any ornamental design. Apple offers no proof that consumers purchase the parties' respective tablet devices because of design to any material degree. To the contrary, the only empirical evidence of record – and common sense and experience – shows that consumers make their purchasing decisions for Apple electronic devices based overwhelmingly on reasons of technology and other considerations, not design. (Dkt. Nos. 179-38 at 23, 25; 179-39 at 31.) This alone warrants denial of Apple's motion because it is disproportionate and inequitable to enjoin the entirety of a complex technological device like Samsung's that consumers value for reasons that are not even arguably infringing on Apple's claimed rights here.

That is especially true where, as here, such an overbroad injunction forbidding the sale of an entire device "based on one aspect of the overall product" (Order Denying PI at 30) would not and could not benefit Apple. Apple has no evidence that it has ever sold iPad 2 devices that directly compete with the Galaxy Tab 10.1 4G LTE sold through Verizon or U.S. Cellular, undoubtedly because Apple has not made a 4G LTE version of the iPad 2. As a result, consumers looking for the more advanced 4G LTE tablet technology will not – and cannot – obtain it from Apple by buying an iPad 2. As for the only other Galaxy Tab 10.1 model that Samsung is selling, which is the carrier version at T-Mobile, Apple has shown and cannot prove that it has sold any iPad 2 devices there or that its iPad 2 devices are even compatible with T-Mobile's network.

---

[3] (Declaration of Carl Anderson in Support of Samsung's Opposition to Apple's Rule 26(c) Motion for Preliminary Injunction ("Anderson Decl."), Ex. 3 at 86-87 ("But doesn't that sort of undermine your irreparable harm argument? I think the cabbage thing actually undermines it because consumers are fickle, especially in electronics. This may be big today. Who knows, in a year, what's going to be the next big thing." October 13, 2012 Hearing Tr.).)

1  That, again, demonstrates that enjoining such sales will do nothing or little to benefit Apple, but
2  will harm Samsung, its customers and consumers.
3  Apple's argument that it is losing market share for the iPad2 to the Galaxy Tab 10.1 under
4  its "two-player market" analysis does nothing to cure these fatal defects.  (Dkt. No. 951 at 6.)   It
5  does not follow from Apple's premise, and Apple has never proven, that consumers would
6  purchase an iPad 2 if they cannot purchase a Galaxy Tab 10.1, as opposed to simply choose to
7  purchase no device at all.  In fact, while Apple relies exclusively on a "two-player market"
8  theory, it has no evidence that the relevant 4G LTE tablet technology market for Verizon and U.S.
9  Cellular is a "two-player market" or a market that Apple's iPad 2 is even part of it.   Absent such
10 evidence, Apple's argument is inapposite and cannot satisfy its burden to prove that an injunction
11 would benefit Apple or obviate its purported irreparable harm.[4]  Order Denying PI at 9 ("Apple
12 must establish . . . the balance of the hardships to the parties weighs in its favor"); *Winter*, 555
13 U.S. at 20.
14 Second, Samsung's customers for its remaining Galaxy Tab 10.1 models are wireless
15 carriers.  The carriers provide the Tab 10.1 to their customers along with cellular service plans.
16 Importantly, carriers have long-term relationships with their individual and corporate clients.
17 Because of the nature of those relationships, they cannot as a practical matter be temporarily
18 suspended, and breaking them imposes significant burdens.   Therefore, it is critical to Samsung's
19 business that it remain a stable source of products to its carrier customers.   Samsung would suffer
20 great harm if its ability to provide its Tab 10.1 to its customers was disrupted.  (Dkt. Nos. 257

---

[4] In this regard, Apple's Motion (Dkt. No. 951 at 6) repeats claims about the general tablet market (not 4G LTE) and Samsung's alleged 17% market share that Apple knows are no longer true and that it has since admitted are no longer true.  It is one thing to rely on the record from last year; it is quite another to suggest to the Court, as Apple attempts to do, in the new context of the balance of hardship prong that such factual information is still accurate when it is not.  On the preliminary injunction motion, Apple relied on its expert, Mr. Musika, for its claim that Apple and Samsung were the only two major competitors in the tablet market.  (Dkt. No. 449 at 48-49 (citing Musika Decl. ¶16 & Ex. 3).)   Mr. Musika has since acknowledged that this is no longer the situation, since many new Android players have successfully entered the market, and that even by late 2011 Samsung had only ▓▓▓ market share and Apple's other third-party competitors collectively had ▓▓▓ (*See* Anderson Decl., Ex. 1 *and* Ex. 2.)

1  (Verizon Wireless); 264 (T-Mobile); *see also* Dkt. No. 548, Ex. X-8 at 232-34 (preliminary
2  injunction hearing slides).)  In contrast, Apple cannot show that it would substantially benefit
3  from a preliminary injunction or that an injunction would offer it relief on this score.  Apple
4  submitted no proof on its preliminary injunction motion that consumers would buy – or that Apple
5  even sells – iPad 2 devices that compete or offer the same advanced technology as the Galaxy Tab
6  10.1 4G LTE sold to Verizon or U.S. Cellular or the technology necessary to connect to T-
7  Mobile's network as the Galaxy Tab 10.1 sold to T-Mobile.

8     Any possible harm to Apple is further minimized by the fact that ▓▓▓▓▓▓
9  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  (Declaration of Travis Merrill in Support of Samsung's
12 Opposition and Motion for Leave to File Motion for Reconsideration ("Merrill Decl.") ¶¶ 3-4.)
13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  (Declaration of Paul Chapple in Support of
17 Samsung's Opposition and Motion for Leave to File Motion for Reconsideration ("Chapple
18 Decl.") ¶ 6.)  By way of comparison, the iPad sells millions of units per quarter.  Apple's
19 dominance of the tablet market and its failure to identify specific carriers or other customers it will
20 lose to Samsung shows that the balance of harms weighs against it.  Samsung's position in the
21 fickle tablet market is more vulnerable than Apple's and therefore Samsung has more to lose.  *See*
22 *Novozymes A/S v. Danisco A/S*, No. 10-cv-251, 2010 WL 3783682, at *10 (W.D. Wis. Sept. 24,
23 2010) (finding balance of harms favors the smaller market participant when the larger patentee
24 cannot show loss of customers to the smaller alleged infringer).

25    For these reasons, any alleged injuries Apple might suffer can be fully compensated by
26 monetary damages and thus the balance of hardships favors Samsung, not Apple.  Here, an
27 injunction would interfere with Samsung's business relationships and with the carriers'
28 relationship with their customers.  But there is no proof that any of those customers would buy an

1  Apple iPad 2 device (which is the sole product Apple in its preliminary injunction motion would
2  lose market share and which does not even offer the same 4G LTE technology as the carrier
3  version of the Galaxy 10.1 sold to Verizon and U.S. Celular) instead if an injunction issued.  Even
4  assuming Apple did gain a few sales over a few months – which it has not shown it would – the
5  comparative benefit in light of Apple's already enormous market share would be small.  Samsung
6  would suffer greatly while Apple would not substantially benefit.

       B.      <u>The Public Interest Does Not Favor Issuing a Preliminary Injunction.</u>

The public interest also favors denial of a preliminary injunction.  The alleged novelty claimed in the D'899 patent is undeniably at most a very small part of the value of a tablet computer.  *Cf. eBay Inc. v. MercExchange LLC*, 126 S.Ct. 1837, 1842 (2006) (Kennedy J., concurring) ("When the patented invention is but a small component of the product the companies seek to produce … an injunction may not serve the public interest.").

Because the only product that would be effectively subject to an injunction are carrier models of the Galaxy 10.1 Tab sold through wireless carriers, there is additional public interest in avoiding disruption in Samsung's sales.  Individuals and companies have established relationships with particular carriers, including service contracts that span multiple devices and that last for years.  Disrupting Samsung's sales to carriers would potentially disrupt those relationships between carriers and customers, or at least cause undue uncertainty or delay for customers.  The public has a strong interest in seeing stability in established long-term commercial relationships.  An injunction would harm that interest.  *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 231 F. Supp. 2d 1066, 1071 (D. Colo. 2002) (recognizing public interest in stability of telecommunications business and finding "a significant threat of an adverse effect on the public interest" by a proposed TRO against "the operation of a large telecommunications provider" in a securities case).

The public interest favors continued sales of the Galaxy Tab 10.1 4G LTE in particular. Apple has not (and cannot) prove that it has ever sold iPad 2 devices with 4G LTE technology. An injunction thus would harm the public interest by reducing the availability of superior technological features – features that are not even arguably infringing.  The public benefits by not

only having access to more advanced technology than what Apple has offered with the iPad 2, but also to the choice of the open-source platform of Android, which too is unavailable from Apple. *See Pentair Water Pool and Spa, Inc. v. Hayward Indus., Inc.* 2012 WL 194403, at *8-9 (E.D.N.C., 2012) (holding that the public has a substantial interest in assuring free competition in the marketplace because it benefits from lower prices resulting from competition); *Bard v. Pripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 670 F.3d 1171, 1192 (Fed. Cir. 2012) (affirming denial of permanent injunction after jury found that patent was valid and willfully infringed because of the public interest in favor of competition in medical devices). In short, the pro-competitive rationale of *Illinois Tool Works* applies strongly here. *See* Order Denying PI at 37-38 (citing *Illinois Tool Works,* 906 F.2d at 683).

Like its original briefing, Apple's Motion simply repeats a generic public interest in enforcing patents, without any specific application to the facts of this case. (Dkt. No. 951 at 9 and Dkt. No. 86 at 30.) Merely arguing generally that the public interest is served by patent enforcement is not enough to justify a preliminary injunction. As one district court has put it, "[t]he only public interest cited by plaintiffs in support of issuing a preliminary injunction is the public interest in protecting patents. If this were a sufficient public interest, it would render superfluous the public interest element of the four part test, as it would always favor the plaintiff." *See 3M Unitek Corp. v. Ormco Co.*, 96 F. Supp. 2d 1042, 1052 (C.D. Cal. 2000). Nor does Apple's argument touting the advantages of patent enforcement answer either this Court's or Justice Kennedy's observation that the public interest is not advanced where, as is unquestionably true here, the challenged feature is only one part of a much larger and complex product or the effect of an injunction would be to deny non-infringing benefits such as 4G LTE technology to the public because Apple does not offer it with the iPad 2 that formed the basis of Apple's lost market share claims.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation omitted). Here, that public interest favors denial of Apple's Motion.

### III. Calculation of an Appropriate Bond Under Rule 65(c).

As requested by the Court's May 21, 2012 Order, Samsung offers its calculation of an appropriate bond based on expected sales through the end of trial. A bond under Fed. R. Civ. P. 65(c) is intended to provide a fund from which to compensate a defendant harmed by the erroneous issuance of an injunction. *See, e.g., Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1134 (D.C. Cir. 1991) ("[T]he Rule imposes a requirement of security … for the precise purpose of assuring compensation of the defendant for the resulting losses if the injunction proves to have been wrongfully granted.")



1 ███████████████  ███████████████████████████
2 ██████
3            ████████████████████████████████
4 ████████████████████████████████████
5 ██████████████████████████████████
6 ████████████████████████████████████
7 ██████████████████████████████████
8 █████████████████████████
9       ███████████████████████████████
10 ████████████████████████████████
11       ███████████████████████████████
12 █████████████████████████

### IV.   CONCLUSION

For the foregoing reasons, Apple's Motion should be denied.

DATED: May 25, 2012                QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                              By */s/ Victoria F. Maroulis*
                                 Charles K. Verhoeven
                                 Kevin P.B. Johnson
                                 Victoria F. Maroulis
                                 Michael T. Zeller
                                 Attorneys for SAMSUNG ELECTRONICS CO.,
                                 LTD., SAMSUNG ELECTRONICS AMERICA,
                                 INC., and SAMSUNG
                                 TELECOMMUNICATIONS AMERICA, LLC

---

[5] ███████████████████████████████████████████████████████████ (Anderson Decl., Ex. 4 at 783-85.)
[6] *Id.* at 703.