# EXHIBIT A

Apple v. Samsung
Confidential – Attorneys' Eyes Only

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.   11-cv-01846-LHK<br><br>**EXPERT REPORT OF KARAN SINGH, PH.D. REGARDING INFRINGEMENT OF U.S. PATENTS NOS. 7,864,163, 7,844,915 AND 7,853,891** |

**\*\*CONFIDENTIAL – CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT TO A PROTECTIVE ORDER\*\***

## I. INTRODUCTION

1. I, Dr. Karan Singh, have been asked by counsel for Apple Inc. ("Apple") to provide an opinion in the above-captioned case. I understand that Apple has alleged that Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") have infringed various patents assigned to Apple. I have been asked to provide opinions as to whether Samsung has infringed United States Patents Nos. 7,864,163 (the "'163 patent), 7,844,915 (the "'915 patent) and 7,853,891 (the "'891 patent"). My opinions are set forth below in this Report and in the accompanying exhibits.

2. I submit this expert Report in compliance with Federal Rule of Civil Procedure 26(a)(2). I reserve the right to supplement or amend this Report pursuant to Rule 26(e) and as otherwise provided if additional data or other information that affects my opinions becomes available. I expect to testify at trial regarding the matters expressed in this Report and any supplemental Reports that I may prepare for this litigation. I also may prepare and rely on audiovisual aids to demonstrate various aspects of my testimony at trial. I also expect to testify with respect to any matters addressed by any expert testifying on behalf of Samsung, if asked to do so.

3. I am being compensated for my work in connection with this matter at my current standard consulting rate of $450 per hour. I am separately being reimbursed for any out-of-pocket expenses. My compensation is not based in any way on the outcome of the litigation or the nature of the opinions that I express.

## II. QUALIFICATIONS

4. Here, I provide a brief summary of my qualifications. I received my Bachelor of Technology degree in Computer Science from the Indian Institute of Technology in 1991. I was awarded a Master of Science degree in 1992, and a Ph.D. in 1995, both in Computer and Information Science, from Ohio State University. I can read and program fluently in object-oriented programming languages, such as C++ and Java. My qualifications and experience are stated more fully in my curriculum vitae, which includes a list of all my honours, patents,

1    presentations, grants, and publications from the last five years, and is attached to this Report as
2    Exhibit 1.

3        5.    In 1994, I was invited to conduct research at the Advanced Telecommunications
4    Research laboratory in Kyoto, Japan.  During this time I researched virtual reality technology,
5    specifically designing graphical environments in which human characters could interact with
6    computing systems.

7        6.    My Ph.D. dissertation, which I presented in 1995, was on creating representations
8    of humans which could interact in graphical environments.

9        7.    In 1995, I joined Alias Wavefront in Toronto, Canada. While there I designed
10   character animation and facial modeling tools for the first release of Maya, which is a software
11   system for computer graphical modeling, animation, and rendering which won a technical Oscar
12   in 2003, one of only 38 such awards since 1930.  This software, which I worked on for more than
13   two years, is still the premiere software package today for these functions.  I worked at Alias
14   Wavefront until 1999.

15       8.    I have worked with Chris Landreth, a director of animated films, since I started
16   with Alias Wavefront in 1995.  Chris and I worked together on the design of Maya, and have
17   subsequently worked on a number of film projects. Notable among these projects is the short film
18   "Ryan," which won an Oscar for Best Animated Short in 2005.

19       9.    Later in 1999, I joined a start-up company in California called Paraform Inc.
20   While there I worked to develop a system which transformed data from real objects which had
21   been scanned using lasers into useable digital models for downstream applications.

22       10.    For several months in 1999 I was a Visiting Professor of Computer Science at the
23   University of Otago in New Zealand. During that time I taught and conducted research in
24   computer graphics.

25       11.    Since 2002, I have been an Associate Professor of Computer Science at the
26   University of Toronto where I co-direct a graphics and human computer interaction laboratory
27   dgp (dynamic graphics project).   I have conducted research and taught classes in graphics and in
28   human computer interaction.  During this period, I have also undertaken consulting projects with

EXPERT REPORT OF DR. KARAN SINGH REGARDING INFRINGEMENT OF THE '163, '915 AND '891 PATENTS
Case No. 11-cv-01846-LHK
sf-3123376

2

various companies in the computer graphics and design industries. Since 2002, I have also been the Chief Scientist at Geometry Systems, which is a company which designs software for the reverse engineering of physical objects into usable digital models. I also co-founded Arcestra, Inc. in 2006, which is a software service for conceptualizing and visualizing architectural interiors.

12.     My current research focus is on interaction techniques for pen and touch based devices inspired by a sketching metaphor.

13.     I have previously testified by deposition as an expert in proceedings before the International Trade Commission in the ITC Investigation In re Certain Electronic Digital Media Devices and Components Thereof, Inv. No. 337-TA-796 on behalf of complainant Apple.

**III.    MATERIALS CONSIDERED**

14.     In forming my opinions and views expressed in this Report, I reviewed the '163 patent and its file history, the '915 patent and its file history, and the '891 patent and its file history.

15.     I have also examined all of the following Samsung products, which are sometimes referred to in this Report as the "Samsung Accused Products":  Acclaim, Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (including the i9100, T-Mobile, AT&T, Epic 4G Touch and Skyrocket variants), Galaxy S Showcase (i500), Galaxy Tab 7.0, Galaxy Tab 10.1,[1] Gem, Gravity Smart, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Sidekick, Transform, and Vibrant.

16.     In addition, I have reviewed portions of Samsung's website regarding most of these products.  I have also reviewed portions of the user manuals for these products.  Attached as Exhibit 2 is a chart that lists the Bates numbers where true and correct copies of printouts from www.samsung.com of user guides and technical specifications for various Samsung Accused Products have been produced.

---

[1] Galaxy Tab 10.1 refers to both the WiFi and LTE versions.

17. I have also reviewed portions of the publicly available Android source code and related documentation available at the Android developers website located at the following URL: http://developer.android.com/index.html, as well as portions of the Samsung proprietary source code that were produced by Samsung in this litigation prior to the close of fact discovery on March 8, 2012. I have been informed that although Apple requested a production of all of the Samsung source code for all of the Samsung Accused Products and that Samsung was ordered by the Court to produce it by December 31, 2011, that Samsung produced source code only for a subset of those products. Moreover, I understand that for those Accused Products for which Samsung has produced source code, it produced only one version per Accused Product, even if that product ran different versions of Samsung's code over time. It is my further understanding that Samsung has produced representative examples of the different versions of its source code that were based upon Android releases 2.1, 2.2, 2.3 and 3.1, and that Samsung has represented, subject to certain conditions, that the source code for any other version of each Accused Product that was not produced does not differ in any material way for purposes of this litigation with respect to the three patents I am addressing, from the source code that it has produced.[2]

---

[2] For all three patents discussed in this Report, I understand that Samsung has represented that the source code it produced on December 31, 2011 (on which my Report is based) is representative of all versions, through February 14, 2012, of software on the following Accused Products: Captivate, Continuum, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace Showcase, Galaxy S 4G, Gravity Smart, Indulge, Intercept, Mesmerize, Nexus, Nexus S, Nexus S 4G, Replenish, Showcase Galaxy S, Sidekick, Transform, Vibrant, and the Galaxy Tab.

I understand that Samsung has further represented that, as to source code accused of infringing the '915 patent, the code it produced on December 31, 2011 (on which my Report is based) is representative of all versions of software on all of the Accused Products.

As to source code accused of infringing the '163 and '891 patents, I understand that Samsung has recently represented that the code it produced on December 31, 2011 (on which my Report is based) is representative of all versions of software on Accused Products released before December 23, 2011. I understand that, in an email dated March 10, 2012, counsel for Samsung provided notice that Samsung would be disclosing new versions of source code. I also understand that counsel for Samsung described the code as "design-arounds" for the '891 and '163 patents. I have not reviewed this late-produced code, which I understand was produced on or around March 12, 2012, as of the date of this Report and therefore cannot offer any opinion at this time on whether it in fact reflects a "design-around" that avoids infringement of either the '891 or the '163 patent.

EXPERT REPORT OF DR. KARAN SINGH REGARDING INFRINGEMENT OF THE '163, '915 AND '891 PATENTS
Case No. 11-cv-01846-LHK
sf-3123376

4

18. In forming the opinions in this Report, I have reviewed all of the material cited in this Report, as well as the documents, things and materials listed in Exhibit 3. I also had discussions with Bas Ording and Scott Herz, Apple employees listed as inventors on the '891 and '915 patents, respectively.

19. If called to testify or to give additional opinions regarding this matter, I reserve the right to rely upon additional materials that may be provided to me or that are relied upon by any of Samsung's experts or witnesses.

**IV.   LEGAL PRINCIPLES**

20. I have not been asked to offer an opinion on the law; however, as an expert assisting the Court in determining infringement, I understand that I am obliged to follow existing law. I have therefore been asked to apply the following legal principles to my analysis of infringement:

21. I understand that to determine whether there is infringement of a patent: (1) the claims of the patent must be construed; and (2) the properly construed claims must then be compared with the accused products.

22. I understand that the parties have proposed differing constructions of certain terms in the '915 and '891 patents, and that the parties may have differing constructions of terms that were not part of the claim construction hearing, but that no claim construction Order has been issued. Because no claim construction has been issued by the Court, I have interpreted the claims as one of ordinary skill in the art would have at the time the relevant patent was filed in light of its claim language, specification, and prosecution history.

23. I further understand that the claims should be construed from the standpoint of a hypothetical person of ordinary skill in the art as of the invention date of the asserted patent. I understand that claim construction is a matter of law and will be determined by the Court. I reserve the right to modify my opinions if needed following the Court's issuance of a claim construction Order.

24. As the second step in the infringement analysis, I understand that the properly construed claim must be compared to the accused products. I understand that an accused product

EXPERT REPORT OF DR. KARAN SINGH REGARDING INFRINGEMENT OF THE '163, '915 AND '891 PATENTS
Case No. 11-cv-01846-LHK
sf-3123376

5

1  implementing user interfaces.  I have interpreted the '163 patent claims according to how I

2  believe such a person of ordinary skill would have understood the claims in 2006.

3        **B.**    **Apple's Practice Of The '163 Patent**

4        33.    I have examined a number of Apple products, including the iPhone 4S, iPhone 4,

5  iPhone 3GS, iPhone 3G, iPhone, iPad 2, and iPad.  It is my opinion that each of these products

6  practices the claims of the '163 patent.  For example, with Apple's iPhone 4, a user can open the

7  Safari application and load a web page, such as the *New York Times* home page

8  (www.nytimes.com).  The iPhone 4 displays the *New York Times* home page   which is a

9  structured electronic document that includes several boxes of content   on its touch screen display.

10 The iPhone 4 detects a user's double tap gesture (two taps on the touch screen in quick

11 succession) on a box of content, and it responds to that gesture by determining which box was

12 tapped and then enlarging and substantially centering that box on the screen.  If the user proceeds

13 to double tap on a second box of content on the web page, the iPhone 4 responds by substantially

14 centering that second box on the screen.  If the user then double taps again on the second box

15 which is already enlarged and centered from the user's previous actions   the iPhone 4 responds

16 by zooming out, reducing the size of the web page to its pre-enlargement scale.

17       34.    Based on my examination of the aforementioned Apple products, I conclude that

18 they practice the asserted apparatus and system claims of the '163 patent, and their ordinary and

19 intended use practices the asserted method claims of the '163 patent.  I have confirmed the

20 behavior I saw on the iPhone 4 and other Apple products by examining portions of the source

21 code for Apple's iOS operating ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

22 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬  as well as the Event Handling Guide for iOS

23 (*available at* http://developer.apple.com/library/ios/#documentation/EventHandling/

24 Conceptual/EventHandlingiPhoneOS/Introduction/Introduction.html#//apple_ref/doc/uid/TP4000

25 9541).

26       35.    My examination was further confirmed by my review of the testimony of Scott

27 Forstall, one of the inventors of the '163 patent.  Mr. Forstall testified that at least the iPhone,

28 iPad, and iPod Touch practice the '163 patent (Forstall Dep. Tr. at 24:8   24:16).  He then walked

EXPERT REPORT OF DR. KARAN SINGH REGARDING INFRINGEMENT OF THE '163, '915 AND '891 PATENTS   8
Case No. 11-cv-01846-LHK
sf-3123376

through a demonstration of some double-tap zooming elements of claim 2 of the '163 patent, confirming that the iPhone demonstrated in his deposition exhibited behavior meeting certain elements of that claim (Forstall Dep. Tr. at 24:17    27:10).

### C. Priority Date of the '163 Patent

36. I intend to rely upon the documentary evidence and testimony of one or more of the named co-inventors of the '163 patent or other witnesses to testify regarding facts relevant to the conception and reduction to practice of the claimed invention prior to the filing date of the patent.

37. I have reviewed the documentary evidence regarding the design and implementation work done on the inventions claimed in the '163 patent, including the deposition transcripts of Scott Forstall, Chris Blumenberg, and Richard Williamson, emails regarding technology demonstrations and planned and completed development tasks, as well as code check-in logs. From that evidence, it appears that the claims of the '163 patent that I analyze below were conceived of by Andre Boule, Scott Forstall, Greg Christie, Stephen O. Lemay, Imran Chaudhri, Richard Williamson, Chris Blumenberg, and Marcel van Os in or before March 2006, and reduced to practice in March/April 2006. [REDACTED]

EXPERT REPORT OF DR. KARAN SINGH REGARDING INFRINGEMENT OF THE '163, '915 AND '891 PATENTS
Case No. 11-cv-01846-LHK
sf-3123376

9