QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

  Kevin P.B. Johnson (Bar No. 177129
  kevinjohnson@quinnemanuel.com
  Victoria F. Maroulis (Bar No. 202603)
  victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR RULE 37 SANCTIONS FOR APPLE'S VIOLATION OF DECEMBER 22, 2011 COURT ORDER**<br><br>**Date:**     June 21, 2012<br>**Time:**     10:00 a.m.<br>**Place:**    Courtroom 5, 4th Floor<br>**Judge:**    Hon. Paul S. Grewal |

**PUBLIC REDACTED VERSION**

02198.51855/4808253.1

Case No. 11-cv-01846-LHK
SAMSUNG'S REPLY ISO MOTION FOR RULE 37 SANCTIONS FOR APPLE'S VIOLATION OF DECEMBER 22, 2011 COURT ORDER

## I. INTRODUCTION

In withholding throughout discovery tens of thousands of pages of relevant employee testimony from cases involving the same or similar patents as those at issue here – despite a Court order compelling their production by January – Apple's conduct was without substantial justification and prejudicial to Samsung. Moreover, undisputed facts compel the conclusion that Apple's misconduct was the result of a calculated decision to disregard this Court's December 22 Order to obtain an unfair litigation advantage. For example, Apple has never disputed the relevance of transcripts from the ITC 796 Investigation (or their responsiveness to the Court's December 22 Order), yet it refused to produce them until the Court enforced the order compelling their production. And even then, Apple waited for several days until the evening before Samsung's rebuttal expert reports to simply "deem" them produced. Apple withheld the rest of the other transcripts it produced in response to the April 12 Order until April 17, the day after Samsung's rebuttal expert reports were due. To remedy the substantial prejudice Samsung has suffered as a result of Apple's misconduct, and to prevent Apple from further exploiting the unfair advantage it has already gained, the Court should issue sanctions.

## II. APPLE'S FAILURE TO COMPLY WITH THE DECEMBER 22 ORDER WAS NOT SUBSTANTIALLY JUSTIFIED

"Substantially justified means justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988); *see also Sexton v. Astrue,* 2012 WL 592057, at *1 (9th Cir. Feb. 23, 2012). Apple's conduct here was anything but reasonable.

### A. Withholding Tens of Thousands Of Pages of Sworn Employee Testimony From Actions With A Technological Nexus Throughout Discovery Is Objectively Unreasonable

Apple has withheld more than 280 employee transcripts from twelve cases with a technological nexus, including 34 inventor transcripts, throughout the entire discovery period.[1] Most of the cases share one or more patents in suit with this case, and the others involve

---

[1] Reply Declaration of Diane C. Hutnyan ("Hutnyan Decl.") at ¶ 2.

technologies related to those in the patents in suit. As this Court recognized in its December 22 order, these materials needed to be produced as soon as possible and no later than January 15, 2012 so that they could be used by Samsung to develop its case.[2]

Few items could be more relevant than party employee testimony concerning the patents and products at issue. Facts about the development of Apple's claimed designs and inventions, and of the products it claims are commercial embodiments, are hugely important to the scope and validity of the patents in suit. Having these transcripts in January was important so that Samsung could use them to identify witnesses, to seek documents, to depose witnesses effectively, and to avoid wasting time on depositions. But Samsung had none of those opportunities as a result of Apple's non-compliance.

The withholding of transcripts from the 796 Investigation by itself shows Apple's conduct was not objectively reasonable. As is indisputable, the 796 Investigation involves patents on the same products, with the same inventors, with the same prior art, allegedly infringed by the same Samsung products as the patents in this case. Although Apple had agreed to cross-use of documents between the two cases, and use of transcripts from this case in the 796 Investigation, Apple refused to produce deposition transcripts taken in the 796 Investigation in this case until it was compelled yet again to do so and weeks after the close of discovery (with only approximately 30 hours before Samsung's rebuttal expert reports were due).[3]

**B.  The Excuses Apple Gave For Its Non-Production In March, Already Rejected By This Court, Were Objectively Unreasonable**

Apple concedes that it "was ordered [in the December 22 Order] to produce transcripts of 'prior' deposition testimony of Apple witnesses testifying in their employee capacity" from cases with a technological nexus.  (Opp. at 3:22-23.)  Yet in March, in opposing Samsung's motion to enforce, Apple revealed for the first time that it had excluded (1) deposition transcripts of Apple witnesses that were not appearing in the present case and (2) deposition transcripts of  witnesses

---

[2]  See Dkt. 536 (ordering Apple to complete its production of all responsive transcripts "on a rolling basis and no later than January 15, 2012."
[3]  Hutnyan Decl. at ¶¶ 7-8.

whose role is purportedly not technical. This Court rejected each of those limitations as unsupported and implausible ("Is there any language in my order that you can point me to that supports that position?")[4] and enforced its order requiring Apple to produce *all* the transcripts.

Apple's current contention that the Court's April 12 Order expanded the scope of the December 22 Order[5] was previously rejected as well. As the April 12 Order sets forth in detail, the December 22 Order did not include any of the exceptions Apple claimed it did. The December Order required the production of "all" transcripts and was "enforced" by this Court.[6] And if Apple really thought the April 12 Order was expanding the scope of the December 22 Order, it would have sought reconsideration on that basis.

In addition, Apple said it had withheld the deposition transcripts taken in the 796 Investigation because this Court's protective order and the 796 protective order prohibited it.[7] This was not correct. Apple also argued to this Court that it withheld them because Samsung already had access to them in the 796 case[8] and, then contradicting itself, because Samsung was only seeking their use and not really their "production."[9] Misstating the terms and impact of protective orders in order to construe them to obstruct compliance with this Court's order was not reasonable conduct.

### C. Apple's Newly Revealed Limitations on the Court's Order Are Not Reasonable, Either Individually Or Collectively

Now it appears that Apple's explanations to the Court last time were not even accurate. Now, *in addition* to those earlier excuses, Apple claims it withheld these nearly 300 transcripts throughout almost the entire pendency of this case for the following new reasons:

---

[4] Ex. 1 to Hutnyan Decl., April 9, 2012 Hearing Tr. at 128:11-129:2.
[5] Opp. at 1:8-9 ("When this Court ordered, on April 12, a broader production of transcripts, Apple promptly complied.").
[6] Order, Dkt. 867, at 10:6-8 (". . . the court GRANTS Samsung's motion to enforce the December 22 Order as to all deposition transcripts of Apple employees, testifying in their employee testimony, from actions bearing a technological nexus to this case.").
[7] Apple's Opposition to Motion To Enforce, Dkt. No. 825, at 7:8-10.
[8] Apple's Opposition to Motion To Enforce, Dkt. No. 825, at 6:22-25. Apple made this argument though it was well aware that Samsung's access in the 796 Investigation did not permit use of the transcripts in this case, having refused to allow their "cross-use" in this case for months.
[9] Apple's Opposition to Motion To Enforce, Dkt. No. 825, at 6:26-7:12 (arguing that Samsung wanted "redesignat[ion]" and "cross-use" and not production).

- Because its "understanding [was] that it was not required to produce more than a hundred [or more than a "few"] transcripts."[10] Apple bases this alleged understanding on statements made by Samsung when it brought its initial motion to compel about the production request being narrow.[11] Obviously, Samsung's statements (which were made at a time when Samsung could not know how many transcripts Apple was withholding apart from the parties' ITC proceedings) could not narrow the scope of the Court's order requiring *all* transcripts to be produced. Indeed, nothing in the Court's order provided any support at all for Apple's claimed understanding.

- Because Samsung was only seeking testimony from "inventors." Apple argues that examples about inventor transcripts offered by Samsung in early meet and confer correspondence, and the examples the Court put in footnote 6 of its order, led it to believe that the Order was limited to "inventors" only.[12] The Court's order requiring production of transcripts of "Apple Witnesses Testifying in their Employee Capacity" plainly contradicts this interpretation.

- Because some of the depositions were taken after January 15, 2012, the Court's deadline for production, or after March 8, 2012, the close of discovery.[13] Apple's rationale for this exclusion was that Samsung and the Court had referred to "prior" deposition testimony.[14] Obviously, the word "prior" was not intended to make some distinction between transcripts based on their timing; Apple was to produce any and all existing deposition testimony and follow the supplementation rules to produce any new responsive testimony after it had been

---

[10] Opp. at 1:4-5; *see also* Opp. at 8:15-17 ("An order directing Apple to produce *every* transcript from a host of proceedings, without consideration of a deponent's role or relevance, would necessarily implicate far more than a "few" "highly relevant" transcripts.").
[11] Opp. at 2:13-15 (meet and confer correspondence); 3:6-7 (motion); 4:1-3 (resultant production scope).
[12] Opp. at 2:13-18; 3:3-5; 8:18-22; 8:25-28; 9:4-6.
[13] Opp. at 5:9-11.
[14] Opp. at 3:13-15 ("Samsung supported its motion to compel with a declaration discussing 'prior' deposition testimony"); 3:22-23 ("Apple was ordered to produce transcripts of 'prior' deposition testimony of Apple witnesses testifying in their employee capacity."); 8:17-18 ("Only 'prior' testimony was ordered to be produced.").

1   transcribed.  Apple does not explain how it plausibly thought the Court was authorizing Apple

2   to suddenly withhold directly relevant employee depositions taken after January 15, 2012,

3   even though discovery was continuing, Samsung's experts were preparing their reports, and

4   Samsung was preparing for dispositive motion practice and trial.

5   • <u>Because Samsung waived its rights to transcripts from cases where its counsel

6   represents the other party in the underlying case</u> – by not complaining enough when Apple

7   failed to produce relevant transcripts from those cases.[15]  First, Samsung's counsel cannot and

8   did not share information between cases as Apple premises, as this would not have been

9   consistent with Samsung's counsel's obligations under the relevant protective orders.[16]

10  Second, there was no need to also "complain" on a case-by-case basis, when Samsung was

11  moving to compel all employee transcripts from cases with a technological nexus.  Third,

12  Apple's claims about Samsung's statements or omissions do not alter the scope of the Court's

13  order in any event.

14  • <u>Because Samsung did not accurately identify all Apple's cases with a technological

15  nexus.</u>[17]  It was never Samsung's responsibility to identify for Apple which of Apple's cases

16  had a "technological nexus."[18]  The Order recognized that Apple had the best knowledge of its

17  own cases and had itself proposed the technological nexus standard.  Accordingly, it ordered

18  Apple to "apply this standard and complete its production of all responsive transcripts"

19  without participation from Samsung.[19]

---

[15] Opp. at 9:6-16.
[16] Notably, Apple's position is also inconsistent with the position it has taken with respect to the other litigation materials the April 12 order required it to produce by April 27.  With respect to those materials, Apple's counsel has refused to gather from Apple's other counsel even the basic information needed to comply with the Court's production order, whereas it expects Samsung's counsel to share information across clients.
[17] Opp. at 5:5-9 (discussing how Apple finally produced depositions it had been withholding from the 701 and 710 Investigations and the QRG case, which were not identified by Samsung).
[18] Samsung's Motion to Enforce Dec. 22, 2011 Court Order, Dkt. 782 at 3-5 (listing cases and noting that "[t]here may be more cases, but Apple has refused to identify them.").
[19] Further, in attempting to determine whether Apple had complied with the December 22 order, Samsung had repeatedly requested that Apple identify all cases it believed had a technological nexus, but Apple refused to do so, choosing only to criticize some of Samsung's suggestions.  (Hutnyan Decl. ¶ 5-6.)  Apple could not have "reasonably relied on the results of those negotiations" in figuring out what to produce because there were no negotiations.

Collectively, these excuses are even less plausible. It is simply not reasonable to interpret an order to produce all employee transcripts from cases with a technological nexus as an order to produce just a "few" deposition transcripts of inventors only, with technical testimony, who are appearing in the present case, whose depositions were taken before January 16, 2012, in cases that Samsung specifically identified, and where Samsung's trial counsel does not represent the opposing party.[20] These serial restrictions on the Court's Order, imposed without prior disclosure by Apple, were not substantially justified.

### D. Apple's Interpretation Is Not Reasonable Because It Bears No Resemblance To Apple's Production

Apple's actions were not even consistent with its claims about its production. For example, Apple claims it believed the order only required production of testimony from inventors. But Apple *withheld* dozens of inventor transcripts from production and nevertheless represented to this Court that it had "complied" with the original Order compelling production. It also produced several non-inventor transcripts.[21] Apple also claims it believed the order only required production of testimony from witnesses in the present case. But many of the transcripts it

---

[20] *See Hanni v. American Airlines, Inc.*, 2009 WL 1505286, *4 (N.D. Cal. May 27, 2009) (no "substantial justification" for party's failure to produce documents based on its mistaken reading of the protective order, resulting in sanctions); *Alden v. Mid-Mesabi Associates Ltd. Partnership*, 2008 WL 2828892, *23 (D. Minn. Jun. 21, 2008) (no "substantial justification" for party's withholding discovery and failing to serve a privilege log in violation of a court order due to party's misinterpretation of the court order, resulting in sanctions); *Adelman v. Hobbie*, 2006 WL 2639359, *7 (N.D.N.Y. Sep. 13, 2006) (dismissing action under Rule 37(b)(2)(C) where "[p]laintiff had the opportunity to show substantial justification," but failed to do so, and "no reasonable person could interpret the Court's Order to mean that compliance was optional or unnecessary"); *Mescal v. U.S.*, 161 F.R.D. 450, 454-455 (D.N.M. 1995) (no "substantial justification" for party's failure to file a motion as required by a court order, resulting in sanctions); *Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29, 31-32 (D. Me. 1994) (no "substantial justification" for party's disclosure of confidential information to a third party based on a misunderstanding of the import of the protective order, resulting in sanctions); *Fisher v. Samuels*, 1986 WL 12330, *4 (N.D. Ill. Oct. 24, 1986) (party's "unreasonable" interpretation of discovery request was not "substantial justification" for its inadequate response thereto in violation of court order compelling discovery, resulting in sanctions).

[21] *See, e.g.*, Apple's Opposition to Samsung's Motion to Enforce Dec. 22, 2011 Court Order, Dkt. 825, at 3:15-3:18 ("Apple had inadvertently not previously identified or produced a transcript from the November 10, 2010 deposition of Eric Jue in ITC Investigation No. 337-TA-714, which it promptly produced after receiving Samsung's final list of "related proceedings" sent on March 3."). Mr. Jue works in marketing, is the product line manager for the iPod, and was never an inventor.

02198.51855/4808253.1

-6-   Case No. 11-cv-01846-LHK
SAMSUNG'S REPLY ISO MOTION FOR RULE 37 SANCTIONS FOR APPLE'S VIOLATION OF DECEMBER 22, 2011 COURT ORDER

1  withheld – such as those from Mark Buckley, Eric Jue, Arthur Rangel, Richard Lutton, Michael
2  Tchao, Jason Skinder, Jason Shi, David Singer and Achim Pantfoerder[22] – were taken of witnesses
3  also testifying in this case.  Next, Apple claims it believed the order only required production of
4  transcripts that were taken on January 15, 2012 or earlier.  But Apple failed to produce over 150
5  deposition transcripts pre-dating January 15, 2012,[23] and it admitted in its March 21 brief that it
6  had produced some post-January 15 transcripts in compliance with the order.[24]  And Apple now
7  claims that it withheld transcripts from cases in which Samsung's counsel represents the opposing
8  party, but it admitted in November that it had produced more than 45,000 pages of materials from
9  the Motorola cases in which Quinn Emanuel is counsel of record.[25]

The disconnect between what Apple did, and what it claims to have done, is fundamental.  That, coupled with the sheer number of excuses Apple has now offered, shows the lack of merit to its positions.[26]

**E.  Because Apple's Actions Were Designed To Damage Samsung's Defense, It Cannot Be Considered Reasonable**

---

[22] *See* June 5, 2012 Declaration of Nathan Sabri ("Sabri Decl.") at ¶ 21, Exh. 16.
[23] Sabri Decl., Exh. 16.
[24] Opp. at 4:12-13 ("[before Samsung filed its motion to enforce,] Apple revisited its production, produced several additional transcripts – most of which were from after January 15. . .").
[25] *See* Apple's Opposition to Samsung's Motion to Compel, Dkt. 502, at 5:27-6:3 ("For example, Samsung seeks the production of pleadings, briefs, discovery, and transcripts from *Apple v. Motorola* actions in the ITC and the Western District of Wisconsin. . . . Apple already produced those materials, however—totaling more than 45,000 pages—on November 23, 2011, and December 1, 2011.").
[26] Moreover, Apple now contends, for the first time, that it produced *49* transcripts before the April 12 Order.  But this includes many transcripts it produced not in the Northern District case, where it was ordered to produce them, but in the 794 and 796 Investigations. (Hutnyan Decl. ¶ 2.)  Notably, Apple never before pointed to this 796/794 production as part of its production pursuant to the December 22 order; in opposing Samsung's motion to enforce as late as last March, Apple did not ever mention these transcripts in describing what it had produced.  Apple's Opposition to Motion to Enforce Dec. 22 Court Order, Dkt. 825, at 1-4.  Also, Apple's story about these additional transcripts is at odds with its claims that it thought it was to produce only transcripts from witnesses appearing in the instant matter.  Several of the transcripts were of witnesses who have never appeared in this case.  *See, e.g.*, Sabri Decl. ¶ 17 (noting that Apple had produced deposition transcripts of Paul Marcos, Martin Grunthaner, Chris Krah, Ken Kocienda, Nima Parivar, and David Heller, none of whom testified in this case).  And in the end, even if all of these transcripts can be considered part of Apple's earlier "production," that does not change the fact that nearly 300 more transcripts previously compelled by Court Order in December 2011 were produced for the first time after April 12, 2012.

Apple's approach to the production of these transcripts, before and after the December 22 Order, refutes any claim of honest mistake in its failure to comply. First, Samsung was forced to move to compel these transcripts because Apple would not embrace a definition of "technological nexus" that would ensure Samsung received all relevant employee transcripts.[27] Samsung requested a factually driven standard to avoid this problem,[28] but after Apple finally presented a plausible definition of "technological nexus" in its opposition brief, this standard was adopted by the Court.[29]

Once the December 22 order issued, however, Apple did not produce a single transcript in response to it.[30] In January, after analyzing all the transcripts Apple had produced, Samsung sought Apple's cooperation in identifying the cases with a technological nexus but, ignoring the Court's directive to negotiate on this point, and taking advantage of its unique knowledge of many of these cases, Apple refused to identify even a single case.[31] As to the many inventor and other deposition transcripts taken in the 796 Investigation, Apple refused to deem them produced even though it had accepted cross-use of documents and deposition transcripts every other way between the two cases, which it admitted shared a technological nexus.[32] Then, at the April 9 hearing, Apple misstated both this Court's December 22 Order and the protective orders by construing them to obstruct the court-ordered production.[33]

Both the December 22 and April 12 Orders required production on a "rolling basis." Upon questioning by the Court, Apple admitted that it would be easy to complete the production.[34] But Apple waited until April 17 to produce any of the missing transcripts, and until Sunday, April 15,

---

[27] Samsung's Motion to Compel Apple to Produce Documents and Things, Dkt. 487, at 20-22.
[28] *Id.*
[29] Dkt. No. 536 at 5.
[30] Hutnyan Decl. ¶ 4
[31] *Id.*, ¶ 5-6.
[32] *Id.*, ¶ 7.
[33] *Id.*, Exh. 1, April 9 Hearing Tr. at 132:6-135:10 ("THE COURT: Really, your only objection to producing the transcripts that are essentially burdenless is that it would break the deal you cut with Samsung?"); 140:13-141:15.
[34] *Id.* at 130:17-131:12 ("THE COURT: What's the problem? There's a deposition transcript sitting in an Apple database as I speak that you can produce in about 10 minutes, I suspect, maybe 20. So there's no burden objection. . . . MR. SABRI: The only objections, your honor, would be without seeing who the employees and the prior witness are, I don't the [sic] what the relevance would be." )

at 6 p.m. to even "deem produced" the 796 Investigation transcripts. This timing ensured that none of the transcripts that had been withheld throughout discovery could be analyzed in time for use in Samsung's rebuttal expert reports.[35] And Apple did not "complete" its production on April 21, or even by the Court's April 27 deadline, as it contends.[36] One new transcript trickled in on April 24, another on April 26, three more on May 31, and two on June 7.[37]

### III. APPLE'S REFUSAL TO PRODUCE TRANSCRIPTS PREJUDICED SAMSUNG'S ABILITY TO PREPARE ITS CASE

#### A. Samsung Has Suffered Prejudice

Under Ninth Circuit law, prejudice to the party seeking sanctions is one of five factors that should be considered when deciding whether to issue sanctions under Rule 37(b)(2)(A). *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002). Apple's withholding of almost 300 transcripts until April 17, 2012 deprived Samsung of its ability to use the transcripts in several important ways in preparing its case. It deprived Samsung of any ability to develop lines of deposition questioning based on admissions or facts contained in the transcripts, to avoid wasteful foundational questioning, and to question Apple witnesses who offered testimony inconsistent with their prior testimony about that testimony. Similarly, Apple's withholding prevented Samsung from identifying and noticing relevant individuals for deposition and prevented Samsung's experts from using them to analyze the case and develop their opinions. Samsung was also prevented from discovering Apple's explanations or arguments in response to hundreds of admissions in the transcripts or to obtain related materials that Samsung's experts could have used to overcome those explanations and arguments. In short, Apple's misconduct ate up Samsung's deposition allotment and forced it to prepare its case without the prior sworn statements of Apple's own employees about the products and intellectual property rights it has asserted in this case.

---

[35] Though some analysis could take place with respect to the 796 transcripts before April 16, Apple's refusal to permit cross-use meant that Samsung experts could not plan to rely on any of those materials in preparing their opinions in the weeks leading up to the submission of their reports.
[36] Opp. at 5:2-5.
[37] Hutnyan Decl. ¶ 10.

02198.51855/4808253.1

-9-    Case No. 11-cv-01846-LHK
SAMSUNG'S REPLY ISO MOTION FOR RULE 37 SANCTIONS FOR APPLE'S VIOLATION OF DECEMBER 22, 2011 COURT ORDER

### 1.  Apple Withheld Voluminous, Critically Relevant Materials In Violation of the Order

A few examples illustrate the highly prejudicial nature of Apple's misconduct. Among the 80 or more[38] transcripts from the 796 Investigation that Apple withheld until after the April 12 Order are 44 transcripts for depositions of Apple employees who are testifying witnesses in this case. Among these, Apple withheld from use in this case 25 utility and design patent inventor transcripts, including transcripts for named patent inventors Boule (2 transcripts), Westerman, Herz, Anzures, Williamson, Christie, Blumenberg, Lemay, Coster, Ive, Platzer, Chaudhri, Howarth, Forstall (2 transcripts), Zorkendorfer, Stringer, Whang, De Iuliis (2 transcripts), Kerr, Rohrbach, Andre and Hotelling. *See* May 22 Hutnyan Decl., ¶ 2.

Apple's index of the transcripts it produced in response to the April 12 Order – which does not include the 796 transcripts – confirms that it withheld large volumes of critical material from the other cases as well. (Sabri Decl, Exh. 16.) Even under Apple's version of what matters in this production, Apple withheld 71 transcripts constituting thousands of pages of relevant testimony from six proceedings. Apple argues that these transcripts are "wholly irrelevant to this matter" (Opp. at 5:12-13) but this is simply not credible. Five of these cases involve the same patents asserted by Apple here, and the sixth, the *Elan v. Apple* matter, involves patents directed to multi-touch technology similar to the '828, '915, '891 and '163 patents Apple has asserted here.

The particular transcripts that Apple withheld from these cases until after the April 12 order unquestionably prejudiced Samsung's ability to prepare its defenses. For example, even though the *Elan v. Apple* matter involves patents related to the patents-in-suit, a fact which the Court has recognized,[39] Apple withheld all the transcripts from that case, including all transcripts for depositions of the named inventors of the patents asserted there that are related to asserted patents here.[40] Similarly, with respect to the ITC 797 investigation, which involves the '381 patent

---

[38] *See* Dkt. No. 1041 at 6:7 (Apple's Opposition to Samsung's Motion to Enforce April 12, 2012 Order).
[39] April 12 Order, Dkt. No. 867 at 9:20-22 (referring to group of eight cases including *Elan v. Apple* as having "an undisputed technological nexus to this action").
[40] Sabri Decl., Exh. 16 at 2. Steve Bollinger, Mark Della Bona, Jonathan Dorfman, Jay Hamlin and Greg Marriot are all named inventors of the patents-in-suit in the *Elan v. Apple* matter.

at issue here, Apple withheld the deposition of the sole inventor of the '381 patent, Bas Ording. (Sabri Decl., Exh. 16 at 3.) Apple withheld many other transcripts for named inventors of patents asserted in this case, including Brian Land ('129 patent), Andrew Platzer ('915 patent), Joshua Strickon ('607 patent), Wayne Westerman ('828 patent), Freddy Anzures (D'305), Stephen Lemay ('163 patent) and John Elias ('828 patent). (Sabri Decl., Exh. 16 at 3, 5.)

Beyond the named inventor transcripts, Apple withheld numerous transcripts of other Apple witnesses testifying in this case. For example, Apple's index of its productions in response to the April 12 Order lists 15 transcripts for non-inventor witnesses who are witnesses in this case.[41] (Sabri Decl., Exh. 16.) Almost all of these were transcripts of depositions taken before the December 22 Order issued.

### 2. Samsung Need Not Show that the Withheld Materials Are "Compelling" or "Impeaching"

Apple's argument that Samsung did not "identify any compelling example of probative information" or "impeaching statement[s]" in the materials Apple withheld (Opp. at 9:27-10:2, 10:8-10) is unavailing. First, the implication that withholding of voluminous materials that are not "impeaching" or "compelling" (however Apple may define those terms) is not grounds for sanctions is fundamentally at odds with the position that Apple took previously and that the Court accepted. (Dkt. Nos. 880, 898.) And, as discussed previously, Apple's withholding also prejudiced Samsung by depriving it of facts that could have led to the discovery of admissible evidence, including through lines of deposition questioning and other discovery efforts.

Moreover, the information contained in the transcripts Apple withheld is indeed compelling and impeaching. For example, the PTO initially rejected applications for both the D'677 and D'087 patents which Apple has asserted here on the ground that their designs were anticipated and obvious in light of prior art. Apple persuaded the PTO to issue the patents by asserting that what was new was their clear continuous surface.[42] Yet, as Apple Senior Director

---

[41] The witnesses listed are Mark Buckley (6 transcripts), Eric Jue, Arthur Rangel, Richard Lutton (2 transcripts), Michael Tchao, Jason Skinder, Jason Shi, David Singer and Achim Pantfoerder.
[42] Hutnyan Decl., Exh. 6.

1 Chris Stringer admitted in his ITC 796 deposition, ▮
2 ▮
3 ▮⁴³  Mr. Stringer also admitted in that
4 deposition ▮
5 ▮ ⁴⁴  This is critical testimony, yet Apple withheld it until April 15, and Samsung's experts
6 were thus unable to use it in their reports.
7     Other transcripts that Apple withheld are similarly critical to Samsung's defenses in this
8 case.  For example, Douglas Satzger, a member of Apple's design group from 1996 through 2008,
9 testified in his 796 deposition about the functionality of iPhone design elements Apple claims in
10 this case, including "a flat clear surface covering the front of the product," "a metallic bezel around
11 the flat clear surface," and "under the clear surface, substantial black borders above and below the
12 display screen and narrower black borders on either side of the screen."  (Dkt. No. 75, at ¶ 57.)  As
13 another example, testifying about the circle shown in Figure 1 of the '678 sister patent, which is
14 identical to the drawings in the '677 patent except for its color, '677 named inventor Daniel Coster
15 testified ▮ ⁴⁵ while Director of Industrial Design Evans Hankey, testified ▮
16 ▮⁴⁶ and '677 named inventors Daniele De Iuliis and Matthew Rohrbach testified ▮
17 ▮ ⁴⁷  Similarly, testifying about the drawings of the '678 more generally, '677
18 inventor Bart Andre testified he thought ▮ ⁴⁸ and '677
19 inventors De Iuliis and Rico Zorkendorfer testified ▮
20 ▮⁴⁹  Nor are these isolated examples.  Virtually every page of these depositions relates
21 to iPhone design and, thus, to issues also present in this case.  Yet Apple withheld these transcripts
22 for months, entirely depriving Samsung's experts of an opportunity to use the testimony in forming
23 their opinions and authoring their reports.

---

43 *Id.*, Exh.7 at 79:11-15.
44 *Id.*, Exh. 7 at 370:19-373:23.
45 *Id.*, Exh. 8 at 271:18-272:1.
46 *Id.*, Exh. 9 at 93:2-94:16.
47 *Id.*, Exh. 10 at 214:11-18; Exh. 11 at 138:1-139:5.
48 *Id.*, Exh. 12 at 276:11-277:14.
49 *Id.*, Exh. 10 at 217:9-19; Exh. 13 at 214:17-215:3.

### B. Samsung Did Not Get the Five Depositions The Court Intended to Mitigate The Prejudice It Suffered Due to Apple's Misconduct

Apple has not provided a single one of the depositions that the Court permitted Samsung to take and Apple's argument that Samsung "fail[ed] to take advantage of" them is incorrect. (Opp. at 9:27-10:2.) Samsung sought to take the five additional depositions within the deadline provided by the Court but Apple refused. Apple claims that Samsung's identification of the witnesses was too late, but has provided no evidence that it was unable present the witnesses by the Court's May 10 deadline. The record shows it never even attempted to schedule the depositions, and it refused to enter into a simple stipulation that would have eased any scheduling burden.

Samsung identified the deponents as soon as it could reasonably do so given the massive volume of transcripts that Apple had failed to produce as ordered and only produced well after it was ordered the second time to do so. Since the enforcement Order intended the depositions to mitigate the prejudice Apple caused Samsung by withholding the deposition transcripts, Samsung had to review and analyze over 34,000 pages in just a few days in order to factor this new information into its selections. It is indeed ironic that Apple simultaneously criticizes Samsung for not identifying deponents Apple contends are related to the prejudice resulting from the withholding of transcripts, while at the same time asserting that Samsung should have made its selections before Apple even produced the transcripts. Apple cannot have it both ways.

Samsung's selections were also delayed by Apple's failure to narrow its case when Judge Koh ordered it. If Samsung had identified the deponents prior to this further case narrowing, it could have chosen deponents who would no longer be relevant to this litigation, which would do nothing to relieve the prejudice the Court intended to remedy (and, according to Apple, would thus automatically violate the Court's order).[50] Even now, Apple offers no legitimate reason why, weeks after the Court's enforcement Order and weeks after Samsung identified the witnesses, Apple still could not produce them for deposition.

---

[50] Samsung provided its list of deponents almost immediately after Apple filed its narrowing statement.

## IV. APPLE'S CONDUCT AND THE ENSUING PREJUDICE TO SAMSUNG WARRANTS PRECLUSIVE SANCTIONS

The relief Samsung seeks to remedy the prejudice stemming from Apple's misconduct is simple and easy to administer. Based on the fundamental principle that Apple should not be permitted to rely on evidence it wrongfully withheld in violation of Court order, Samsung asks that the Court (1) preclude Apple's experts from affirmatively relying on the transcripts or their contents, and (2) strike any references to the transcripts or their contents that Apple's experts have made or may make.[51] Additionally, based on the principle that it would be unfair to permit Apple to leverage its misconduct to surprise Samsung at trial with new explanations for admissions Samsung had no opportunity to explore during discovery, Samsung requests that the Court preclude Apple's experts from responding to, denying, explaining, commenting on, or otherwise testifying contrary to the admissions contained in the withheld transcripts.

The timing of Apple's productions is also probative. Though the 796 Investigation transcripts could have been deemed produced upon issuance of the Court's order on April 12, Apple waited until the night before Samsung's experts' rebuttal reports were due. Apple also delayed until April 17, the *day after* Samsung's rebuttal reports were due, to produce the vast bulk of the withheld transcripts. Apple thus ensured that Samsung had no opportunity to make use of the withheld transcripts in connection with its expert reports, as well as the dispositive motion briefing and trial preparation relying on expert testimony.

Back in November, Apple engaged in a cost-benefit analysis and concluded that it would fight production of these transcripts all the way – Court orders notwithstanding – because the unfair litigation advantage it would obtain and be able to exploit throughout trial from withholding them outweighed the monetary cost of this battle, as well as any risk of preclusion. Apple does not argue here, and has never argued, that the transcripts are not relevant or that those transcripts do not meet the technological nexus requirement of the December 22 Order. Nor do the

---

[51] Apple argues that Samsung's requested relief is not warranted because Samsung has not pointed to particular statements by Apple experts referring to the withheld transcripts. This misses the point, as Samsung's motion requests that the Court strike references that Apple's experts "have made *or may make*." (Mot. at 19) (emphasis added).

1  transcripts fall outside the bounds of Apple's claimed "understanding" of the December 22 Order. 2 They contain extensive "prior" testimony of "witnesses testifying in this case," including 3 thousands of pages of inventor testimony on the same or similar patents at issue here. Yet Apple 4 withheld every one of them, including refusing to permit Samsung to submit them to this Court in 5 connection with Samsung's motion to enforce the December 22 Order, on the frivolous and now-6 rejected grounds that (1) Samsung already "had" the transcripts so Apple need not produce them 7 (despite Apple's full knowledge that Samsung could not use the transcripts absent production 8 without violating the ITC protective order), and (2) that this Court's protective order and the ITC 9 protective order somehow prohibited Apple from producing its own confidential information in 10 this case.

11  Declining to issue the sanctions requested – and allowing Apple to further exploit the 12 advantage it has unfairly seized – would cause Samsung even more prejudice as it defends itself 13 against Apple's claims. To revoke Apple's ill-gotten advantage, the Court should grant Samsung's 14 motion.

16  DATED: June 12, 2012    Respectfully submitted,

17        QUINN EMANUEL URQUHART & SULLIVAN, LLP

19        By */s/ Victoria F. Maroulis*
            Charles K. Verhoeven
20          Kevin P.B. Johnson
            Victoria F. Maroulis
            Michael T. Zeller
21          Attorneys for SAMSUNG ELECTRONICS CO.,
            LTD., SAMSUNG ELECTRONICS AMERICA,
22          INC. and SAMSUNG TELECOMMUNICATIONS
            AMERICA, LLC