1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| Plaintiff, | **SAMSUNG'S OPENING MEMORANDUM REGARDING CLAIM CONSTRUCTION** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Date:    July 18, 2012<br>Time:    2:00 pm<br>Place:   Courtroom 8, 4th Floor<br>Judge:   Hon. Lucy H. Koh |
| Defendants. | **PUBLIC REDACTED VERSION** |

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................................. 1

I.  THE D'889 PATENT ........................................................................................................... 2

    A.  The D'889 Design Is Limited .................................................................................. 2

        1.  The D'889 May Not Claim Concepts Or Ideas ............................................. 2

        2.  Prior Art References Limit D'889 ................................................................ 3

        3.  D'889 Does Not Protect Functional Aspects ................................................ 5

    B.  D'889 Does Not Depict An Uninterrupted Flat Front Face ..................................... 5

    C.  Apple Has Admitted That Its D'889 Patent Should be Narrowly Construed ........... 6

    D.  The Scope of The D'889 ......................................................................................... 8

II. THE D'087 AND D'677 PATENTS .................................................................................... 8

    A.  D'087 and D'677 Are Limited ................................................................................. 8

        1.  The D'087 and D'677 May Not Claim General Concepts ............................ 8

        2.  Prior Art References Limit D'087 and D'677 ............................................... 9

        3.  Apple's Other Admissions Limit D'087 and D'677 ................................... 10

        4.  The D'087 and D'677 Do Not Protect Functional Aspects ........................ 11

        5.  The Scope of The D'087 and D'677 ........................................................... 12

III. THE D'305 AND D'334 PATENTS .................................................................................. 13

    A.  The D'305 and D'334 Designs Must be Narrowly Construed ............................... 13

        1.  The D'305 and D'334 Do Not Cover General Concepts or Ideas .............. 13

        2.  The D'305 and D'334 Patents Must Be Construed in Light of Prior Art ................................................................................................................... 13

        3.  The D'305 and D'334 Do Not Protect Functional Components ................ 14

        4.  The Scope of the D'305 and D'334 ........................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) ................................................................................................3

*Amini Innovation Corp. v. Anthony California, Inc.*,
   439 F.3d 1365 (Fed. Cir. 2006) ................................................................................................5

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ..................................................................................................13

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
   No. 2012-1105, 2012 WL. 1662048 (Fed. Cir. May 14, 2012) ....................................2, 3, 5, 9

*Bilski v. Kappos*,
   130 S. Ct. 3218 (2010) .............................................................................................................1

*Durling v. Spectrum Furniture Co., Inc.*,
   101 F.3d 100 (Fed. Cir. 1996) ..............................................................................................1, 2

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) ...............................................................................................1, 2

*International Seaway Trading Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009) ................................................................................................3

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
   988 F.2d 1117 (Fed. Cir. 1993) ................................................................................................2

*In re Mann*,
   861 F.2d 1581 (Fed. Cir. 1988) .......................................................................................1, 3, 8

*Miller v. Eagle Mfg. Co.*,
   151 U.S. 186 (1894) .................................................................................................................7

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997) .........................................................................................1, 13

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010) ................................................................................................2

**Statutes**

35 U.S.C. § 171 ..............................................................................................................1, 2, 7, 10

37 C.F.R. 1.63(a)(4) ...............................................................................................................7, 10

# ARGUMENT

Apple argues that it has exclusive rights to basic design ideas and would have the jury compare the figures of its design patents to Samsung's accused products without the guidance of a judicial claim construction. Any protection afforded to Apple's design patents, however, is more limited than Apple asserts and than an unguided view of the figures might suggest. That is especially true because the relevant field has long been crowded with rectangular shaped electronic devices with rounded corners, and even Apple now concedes that key features are essential to the use of smartphones and therefore must be excluded as functional from the construction. Claim construction by the Court will be essential to avoid jury confusion and error.

First, contrary to Apple's constructions, design patents do not protect "general design concepts" depicted in their figures, but only their "overall ornamental visual impression." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("We agree with the district court's claim construction, which properly limits the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept of a rocket-like tossing ball."); *see also Durling v. Spectrum Furniture Co., Inc*., 101 F.3d 100, 104 (Fed. Cir. 1996); *In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988) ("Design patents have almost no scope"). Apple's designs are, by its own account, "minimalist" and devoid of ornamentation. *See* Am. Compl. ¶ 1. Overbroad protection of any design philosophy and concepts inherent in Apple's claimed designs is not only legally impermissible under design patent law, but it would improperly grant monopoly protection to an unpatentable abstract idea. *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010).

Second, because design patent law protects only "new" and "original" ornamental designs, 35 U.S.C. § 171, the scope of a design claim must be viewed "in the context of the prior art." *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 676 (Fed. Cir. 2008) (en banc). "[W]hen the claimed design is close to the prior art designs, *small differences* between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.* (italics added). Further, differences "that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Id.* at 678. Thus, when "a field is crowded with many references" relating to the design of the same type of

article, a design patent's "scope of protection" is limited to a more "narrow range". *Id.* at 676 (quoting *Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed. Cir. 1984)).

Third, because design patent law protects only "ornamental" designs, 35 U.S.C. § 171, any functional aspects must be "factored out" when a design patent is construed and infringement analysis is conducted. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010); Dkt. 449 at 14-15 (Court following *Richardson*). Apple has now conceded that key features are essential to the use of the devices depicted in the patents, and these features must be excluded from any protection afforded the patents when they are compared to Samsung's accused devices.

## I. THE D'889 PATENT

### A. The D'889 Design Is Limited

The D'889 patent claims the design of an entire electronic device. Declaration of Adam Cashman ("Cashman Decl."), Ex. 1. All views of the device as shown must be included in its construction. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed. Cir. 1993) ("the patented design is viewed in its entirety, as it is claimed"). Further, because "[s]urface shading is also necessary to distinguish between any open and solid areas of the article," MPEP 1503.02, ¶15.48, the circular and rectangular shapes on Figures 6 and 8 respectively (even if claimed) are not openings or holes in the surface, but instead are two-dimensional features.

#### 1. The D'889 May Not Claim Concepts Or Ideas

Based on Apple's requested construction, this Court previously described the D'889 as "a broad, simple design that gives the overall visual impression of a rectangular shape with four evenly rounded corners, a flat glass-like surface without any ornamentation and a rim surrounding the front surface. The back is a flat panel that rounds up near the edges. The overall design creates a thin form factor. The screen takes up most of the space on the front of the design." Dkt. No. 452 at 40. The Federal Circuit ruled this was error in the invalidity context because it "viewed the various designs from too high a level of abstraction" and "construed [the] claimed design too broadly". *Apple, Inc. v. Samsung Electronics Co., Ltd.,* No. 2012-1105, 2012 WL 1662048, at *13 (Fed. Cir. May 14, 2012) (quoting *Durling,* 101 F.3d at 104). Because the test for infringement mirrors the test for invalidity, the Federal Circuit's construction equally applies

to the infringement analysis.  *See International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) ("That which infringes, if later, would anticipate, if earlier.") (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement.") (internal citation omitted).  The D'889 accordingly should not be construed in the manner Apple has advocated and the Federal Circuit has considered overbroad, but instead should make clear that the patent does not and cannot protect general concepts like "a rectangular tablet with four evenly rounded corners and a flat back" or "thin form factor."  *Apple v. Samsung*, 2012 WL 1662048, at *13 ("Rather than looking to the 'general concept' of a tablet, the district court should have focused on the distinctive 'visual appearances' of the reference and the claimed design.").

### 2. Prior Art References Limit D'889

The D'889 must be construed in light of the prior art.  For example, U.S. D500,037 ("D'037"), filed September 3, 2002 and issued to Bloomberg LP on December 21, 2004, is a pre-D'889 design for a flat panel display. Cashman Decl., Ex. 2. The D'037 has nearly the same rectangular shape as the D'889, nearly the same rounded corners as the D'889, a flat, transparent or reflective front surface running from edge to edge on the front of the device without ornamentation, a rim surrounding the front surface that is formed by the back of the device curving upward to create a single-piece housing, a symmetrical and smooth form, a flat back, and a similar profile.

The D'037 design is a proper reference for D'889, which claims a design for an "Electronic Device," without limitation.   The D'889 file history confirms that the design was not just for a tablet device, but also a display or screen that could be coupled to a computing device. *See* Cashman Decl. Ex. 3 at APLPROS0000010190.   Indeed, ███████████████████████████████████████████████████████████████  The D'037 is entitled "Bezel-less Flat Panel Display" and shows a display screen that has a transparent front surface.   The related utility patent, US 6,919,678, filed on the same day by the same inventors, shows that the front face of the display is a sheet of clear glass or plastic that has a transparent portion over the active

display area and a mask behind the glass that borders the display area.   *See id.* Ex. 5, at column 5, line 53 to column 6, line 31.   Further, Figure 3 of D'037 and Figure 9 of the '678 show parallel exploded views depicting the transparent or reflective top surface and uniform mask border around the edges of the display area.   *See id.*   The following comparisons illustrate the point:

| D'889 patent | D'037 | U.S. 6,919,678 | Galaxy Tab 10.1 |
|---|---|---|---|
|  |  |  |  |
| N/A |  |  | N/A |
|  |  | N/A |  |
|  |  | N/A |  |
|  |  |  |  |

Many other prior art designs share the visual traits of the D'889 as claimed by Apple.   *See* Cashman Decl. Exs. 6-13.   Indeed, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬; *see also Apple, Inc.,* 2012 WL 1662048, at *12.   Because those differences must

1  equally apply to any infringement analysis, the D'889 construction must focus the jury on these
2  differences from the prior art when it makes its infringement comparisons as well.   Apple also
3  has ████████████████████████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████████████████████████; *see also*
5  *Apple, Inc.*, 2012 WL 1662048, at *12.   In addition, the figures show that the D'889 design is
6  comprised of a one-piece housing that make up the back and relatively thick sides of the device
7  and that receives the separate flat front face that is shown as transparent or reflective.   Cashman
8  Decl. Ex. 1.

### 3. D'889 Does Not Protect Functional Aspects

After first denying it, Apple's expert Peter Bressler now concedes that ████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
Obviously, the same is true of tablet computers.   This Court has noted that "several aspects of the
D'889 patent" are functional, including that (i) the tablet's size must allow portability, and (ii) it
must have a "relatively large screen" that encompasses a "large portion of the front face of the
product." Dkt. 449 at 39-40.[1]   The D'889 construction must direct the jury to factor out those
characteristics in deciding infringement.

### B. D'889 Does Not Depict An Uninterrupted Flat Front Face

Apple argues that the front face of the D'889 design extends from edge-to-edge without
interruption. Discovery has now shown this to be wrong. After Samsung moved to compel it,
Apple produced a prototype or mockup, known as the "035." Cashman Decl. Ex. 16.   As Apple
has now admitted, ████████████████████████████████████████████████████████████

---

[1] As the Court is aware, Samsung has argued that functionality for design patents is not limited to features that are "essential" to the use or purpose of an article, but also extends to features that "affect" the article's "cost or quality." *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006). To avoid burdening the Court, and without waiving its position on that score, however, Samsung limits its functionality discussion for current claim construction purposes in this brief only to those features that are "essential" in light of the Court's previous ruling regarding design patent functionality. *See* Docket No. 449, at 13-15.

The 035 shows a prominent, intentional gap between the outer edge of the glass surface on the front and the frame – a "gap" that Apple inventors ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

 

*See id*, Ex. 17, at 192:23-193:6.[2]

### C. Apple Has Admitted That Its D'889 Patent Should be Narrowly Construed

Other Apple admissions demonstrate that the D'889 does not include a continuous flat front surface. In 2008 and 2009, years after the D'889 issued, Apple submitted applications for the D'677 and D'678. The PTO initially rejected both as obvious in light of prior art. To overcome this objection, Apple asserted that its D'677 and D'678 designs were distinctive over the prior art because they did not disclose "a substantially continuous transparent surface on an electronic device and the substantially smooth or flush transition between the display screen and the rest of the front face of the device[.]" Cashman Decl. Ex. 21 at APLPROS0000011937; Ex. 22 at APL-ITC7960000003884. Because the D'889 was cited as prior art to the D'677 and D'678 designs, the D'889 necessarily must *exclude* the features Apple represented to the PTO had not previously been disclosed, namely, the "substantially continuous transparent surface" and a

---

[2] Apple's insistence that photographs of the 035 were cancelled by the PTO (Dkt. 1033-2, at 8) misses the point. The 035's visual appearance matters because it embodies the D'889, which was drawn based on it, not because the 035 was or was not separately patentable from D'889.

"substantially smooth or flush transition between the display screen and the rest of the front face of the device."

Moreover, years after the D'889 issued, Apple filed several design patent applications 



*See* Cashman Decl., Exs. 23-25.  Apple swore under oath in each of these applications that the claimed designs were "new" and "original" over the prior art, including the D'889.  *Id.*; *see* 35 U.S.C. § 171; 37 CFR 1.63(a)(4).  Thus, by its own statements to the PTO, Apple recognized that the D'889 does *not* extend to such designs. See 35 U.S.C. § 171; *Miller v. Eagle Mfg. Co.,* 151 U.S. 186, 198 (1894) ("no patent can issue for an invention actually covered by a former patent, especially to the same patentee.");

In short, contrary to Apple's contentions, the front face of the D'889 does not show an uninterrupted, continuous glass surface running from edge to edge, but instead depicts a gap between the glass surface and surrounding frame. Nor do Apple's iPad devices embody the D'889. Those devices instead are the subject of separate design patents and applications which Apple swore to the PTO were new and original designs over the D'889.

### D. The Scope of The D'889

The Court accordingly should construe the D'889 as follows:

> The D'889 is for an ornamental electronic device design that (i) has the shape that is shown in all views of the figures, with the corner radii, proportions and relative thick sides that are shown in those figures, (ii) has a uniform gap around the entire front face between the front face surface and the frame, (iii) has no ornamentation, protrusions or holes on any surface and (iv) has a single frame that forms the back and sides of the device in the manner and proportions shown in the figures. In addition, the D'889 does not give Apple rights to a large display screen that encompasses a large portion of the front face of the product, to the use of a transparent cover over the display or to the size and proportions that allow for the portability of tablet computer devices.

## II. THE D'087 AND D'677 PATENTS

### A. D'087 and D'677 Are Limited

#### 1. The D'087 and D'677 May Not Claim General Concepts

Based on Apple's arguments, this Court had construed these design patents as disclosing:

> a flat front surface with four evenly rounded corners with an inset rectangular display screen centered on the front surface that leaves very narrow borders on either side of the display screen and substantial borders above and below the display screen. The D'087 patent has a horizontal speaker slot centered on the front surface. The front surface is also substantially free of additional ornamentation outside of an optional button centrally located below the display . . . The D'677 patent is substantially the same as the D'087 patent, and discloses an additional element of a black transparent and glass-like front surface.

Dkt. 449 at 20-21. The Federal Circuit employed a more particularized approach in evaluating anticipation of the D'087, however, finding that the D'087's "perfectly flat" front face sufficed to distinguish it from the prior art's "arched, convex" face at the top and bottom (as seen in side view). *Apple, Inc.*, 2012 WL 1662048, at *9. That construction must apply equally to the infringement analysis, and Apple's claim of rights to minimalist electronic device designs using rectangles with rounded corners and similarly broad design concepts is untenable.

The D'087 shows no oblique line shading. It thus claims an opaque, rather than a transparent or reflective, front surface. MPEP 1503.02 ("Oblique line shading *must* be used to show transparent, translucent and highly polished or reflective surfaces, such as a mirror.") (emphasis added); Dkt. 997-02, at 10 (Apple citing and relying on this MPEP provision for this same point); ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The D'087 also depicts a completely flush, flat front surface, such that the front surface and the top bezel surface are level and co-planar. Cashman Decl. Ex. 14, at ¶ 198. According to Apple, such a completely flat front face is ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Further, as noted, "[s]urface shading is also necessary to distinguish between any open and solid areas of the article," MPEP 1503.02, ¶15.48, and thus the lozenge-shaped feature near the top and the circular feature near the bottom of the front face are not openings or holes in the surface, but instead represent two-dimensional features on the front surface.

The D'677 claims only the front face. Dkt. 449 at 16-17. It shows a transparent, reflective front surface that is black and uniform in color across the entire front surface. There is no surface shading on the lozenge shape, which therefore does not depict an open hole. MPEP 1503.02, ¶15.48. The circular feature is depicted with broken lines and not claimed.

### 2. Prior Art References Limit D'087 and D'677

Under the law, the D'087 and D'677 are limited by the numerous prior art references in the crowded field of electronic device design. These references show that designs with generally rectangular shapes, rounded corners, mask areas and other elements depicted in Apple's design patents were common:



U.S. D593,087, JP 638, KR30-0398307, Bluebird Pidion, JP 221, LG KE850 Prada

*See* Cashman Decl., Exs. 26, 30-34.   In the invalidity context, Apple has sought to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As shown by the authorities cited previously, such differences must therefore be applied equally to the scope of Apple's design patents in construing them for infringement purposes as well.

### 3. Apple's Other Admissions Limit D'087 and D'677

Apple has obtained dozens of design patents designs that purportedly embody its various iPhone products.   In doing so, Apple swore that these designs were "new" and "original" over the prior art, including D'087 and D'677.   *See* 35 U.S.C. § 171; 37 CFR 1.63(a)(4).   These included each of the following:[3]

---

[3]   Cashman Decl. Exs. 35-61.



Moreover, the D'677 cites as prior art Apple's separate application that led to the D'678. Cashman Dec. Ex. 21. That patent is *identical* to D'677, apart from D'677's black front surface:

The only thing that could make the D'677 distinct from the D'678 to justify a separate patent is its black surface, showing that such a surface is an integral part of the claimed design.

### 4. The D'087 and D'677 Do Not Protect Functional Aspects

The Court previously found, with respect to the D'087 and D'677 designs, that "[i] a size that can be handheld, [ii] a screen that encompasses a large portion of the front face of the smartphone, and [iii] a speaker on the upper portion of the front face of the product" are each

1  "dictated by" the devices' function. Dkt. 449, at 15. Apple's expert now admits that ▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### 5. The Scope of The D'087 and D'677

Thus, the Court should construe the D'087 as follows:

The D'087 is for an ornamental electronic device design that has (i) the shape that is shown in all views of the figures, with the four equally rounded corner radii and proportions that are shown in those figures, (ii) an opaque, non-reflective front surface that is without any hole or opening, (iii) a prominent, uniform bezel that has equally rounded corner radii and is completely flush with the remainder of the front surface, and (vi) no ornamentation except for one or two of the following: (a) interior borders that are narrow on the side and otherwise are in the proportions shown in the figures, (b) a circular shaped, two-dimensional surface decoration centered near the bottom of the front face or (c) a two-dimensional lozenge shaped surface decoration that is of the shape and proportions shown in the figures and is in the center location on the front face as shown in the figures.[4] In addition, the D'087 does not give Apple rights to a size that can be handheld, a large screen on the front face of a smartphone, a transparent cover over the display or a speaker on the upper portion of the front face.

The Court should instruct on the D'677 as follows:

The D'677 is for an ornamental electronic device design that has (i) the shape that is shown in all views of the figures, with the four equally rounded corner radii and proportions that are shown in those figures, (ii) a reflective front surface that is entirely flat, is without any hole or opening and is the same uniform black color across the entire front surface and (iv) no ornamentation except for (a) interior borders that are narrow on the side and otherwise are in the proportions shown in the figures, and (b) a two-dimensional lozenge shaped surface decoration that is of the shape and proportions shown in the figures and is in the center location on the front face as shown in the figures. In addition, the D'677 does not give Apple rights to a size that can be handheld, a large screen on the front face of a smartphone, a transparent cover over the display or a speaker on the upper portion of the front face.[5]

---

[4] The sources for each element of this construction, in addition to the discussion above, include: (i) Figures 1, 3; (ii) Figures 5,6; (iii) Figures 7,8; (iv) Figures 9, 11; (v) Figures 13, 14; (vi) Figures 15, 16; (vii) Figures 17, 19; (viii) Figures 21, 22; (ix) Figures 23, 24; (x) Figures 25, 27; (xi) Figures 29, 30; (xii) Figures 31, 33; (xiii) Figures 35, 36; (xiv) Figures 37, 38; (xv) Figures 39, 40; (xvi) Figures 41, 43; (xvii) Figures 45, 46; (xviii) Figures 47, 48.

[5] The sources for each element of this construction, in addition to the discussion above, include: (i) Figures 1, 3; (ii) Figures 5, 6; (iii) Figures 7, 8.

### III. THE D'305 AND D'334 PATENTS

#### A. The D'305 and D'334 Designs Must be Narrowly Construed

##### 1. The D'305 and D'334 Do Not Cover General Concepts or Ideas

These Apple design patents cannot cover the general concept of a GUI – a monopoly Apple sought years ago under copyright law and that the courts rejected. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). Just as no one can claim a monopoly over the abstract idea of "iconic representation of familiar objects from the office environment," *id.* at 1443-34, the use of colorful square icons arranged in a grid to enable user interaction is not protectable. *OddzOn,* 122 F.3d at 1405 (no protection for "the broader general design concept").

##### 2. The D'305 and D'334 Patents Must Be Construed in Light of Prior Art

D'305 and D'334 must be limited in light of the many GUI prior art references, including:



Cashman Decl. Ex. 63.

That Apple obtained separate design patents for its D'305 and D'334 designs also shows the importance of even minor differences. These separate design patents differ in that the D'334 shows a partial fifth row of icons and two small dots above the bottom row, while the D'305 does not. Apple's claim that such variations entitle it to separate patents without double patenting highlights the importance of even minor variations. Indeed, in response to the PTO's rejection of its D627,790 patent as obvious in light of the prior art because icons have long been laid out in a

1 grid pattern, Apple claimed that the matrix of sixteen rounded squares giving the appearance of a
2 "missing row" of icons between the third and fourth rows of its design distinguished it from the
3 prior art. *See* Cashman Decl. Ex. 62, at APLPROS0000012230.   The D'305 patent also discloses
4 sixteen rounded squares giving the appearance of a missing row, so the D'305 patent must be
5 construed narrowly to avoid reading on the D'790 patent or the prior art.

### 3. The D'305 and D'334 Do Not Protect Functional Components

7 The visual impression created by the D'305 and D'334 patents must exclude functional
8 elements essential for a smartphone GUI.   Any smartphone GUI must necessarily be designed for
9 devices that are small enough to be handheld.   Dkt. 449, at 15.   The use of icons as metaphors to
10 represent applications and commands is therefore necessary given the spatial restrictions for a
11 hand-held phone GUI.   As Apple's designers admit ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.   It is essential that these icons be arranged within the confines of
13 the active display area in an fashion comprehensible to the user.   Imran Chaudhri, the named
14 inventor on Apple's D'305, D'334, and D'790 patents, conceded that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

18 In addition, a GUI designed for a smartphone also must take into account the fact that users
19 often operate the device with only one hand.   The most popular and important features of the
20 phone must therefore be accessible during one-handed use.   As Apple's named inventor, Mr.
21 Chaudhri, explained ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮   Finally, as a device that is battery powered and designed for the purpose of
23 connecting to cellular or other wireless networks, the user must be able to obtain updated
24 information regarding battery life, signal strength and network information. The status bar located
25 at the top of the screen is not only known in the prior art, but also delivers this essential
26 information. Ex. 63, at 20.

27 Thus, Apple's GUI patents should not be construed to include the elements that were
28 known in the prior art and functional: (i) the use of icons as metaphors for applications, features,

and commands; (ii) the layout of those icons in a grid pattern (*i.e.*, columns and rows); (iii) a "dock" of icons at the bottom of the screen; and (iv) a status bar.

### 4. The Scope of the D'305 and D'334

Accordingly, the Court should construe the GUI design patents as follows:

> The D'305 is for an ornamental graphical user interface design that (i) has the uniform icon shape and order shown in all views of the figures, with the corner radii and proportions shown in those figures, (ii) in which at least some icons that are lighter in color near the top than near the bottom as shown in the figures, (iii) has a black background except for a divided black/gray background for the dock row, and (iv) has four rows of four icons each, with an empty row between the third row and the dock row as shown in the figures. In addition, the D'305 patent does not give Apple rights to the use of icons, pictures or text associated with icons, a grid pattern for the arrangement of icons, use of equidistant rows and columns, a dock row on the bottom or a status bar.
>
> The D'334 is for an ornamental graphical user interface design that (i) has the uniform icon shape and order shown in all views of the figures, with the corner radii and proportions shown in those figures, (ii) in which at least some icons that are lighter in shading near the top than near the bottom as shown in the figures, (iii) has a black background except for a divided black/gray background for the dock row, (iv) has four rows of four icons each, with a row of two or three icons between the third row and the dock row as shown in the figures and (v) has two plain dots between the fourth row and the dock row in the location shown in the figures. In addition, the D'305 patent does not give Apple rights to the use of icons, pictures or text associated with icons, a grid pattern for the arrangement of icons, use of equidistant rows and columns, a dock row on the bottom, dots for page indicators or a status bar at the top.

*See* Cashman Decl. Ex. 66, at ¶¶34-35.

DATED: June 12, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Victoria Maroulis
   Charles K. Verhoeven
   Kevin P.B. Johnson
   Victoria F. Maroulis
   Michael T. Zeller

   Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC