1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
2                      SAN JOSE DIVISION

3                        ---oOo---

4    APPLE INC., A CALIFORNIA  )  C-11-01846 LHK
     CORPORATION               )
5                              )  SAN JOSE, CALIFORNIA
                    PLAINTIFF, )
6         VS.                  )  MARCH 27, 2012
                               )
7    SAMSUNG ELECTRONICS CO.,  )  PAGES 1 – 58
     LTD., A KOREAN BUSINESS   )
8    ENTITY; SAMSUNG           )  MORNING SESSION
     ELECTRONICS AMERICA,      )
9    INC., A NEW YORK          )
     CORPORATION; SAMSUNG      )
10   TELECOMMUNICATIONS        )
     AMERICA, LLC, A DELAWARE  )
11   LIMITED LIABILITY         )
     COMPANY,                  )
12                             )
                    DEFENDANTS.)
13   - - - - - - - - - - - - - -

14

15               TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE PAUL S. GREWAL
16             UNITED STATES MAGISTRATE JUDGE

17                       ---oOo---

18

19               APPEARANCES ON NEXT PAGE

20

21

22

23

24   PRO TEM COURT REPORTER:  CHRISTINE BEDARD, CSR
                              CERTIFICATE NUMBER 10709
25

1

2    A P P E A R A N C E S:

3    FOR THE PLAINTIFF:     MORRISON & FOERSTER
     APPLE                  BY:  HAROLD J. MCELHINNY
4                           RICHARD S.J. HUNG
                            ALISON M. TUCHER
5                           ERIK OLSON
                            425 MARKET STREET
6                           SAN FRANCISCO, CA 94105

7

8    FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                            OLIVER & HEDGES
9                           BY:  KEVIN P.B. JOHNSON
                                 JOHN QUINN
10                               VICTORIA F. MAROULIS
                                 RACHEL H. KASSABIAN
11                               JOBY MARTIN
                                 KEN KOREA
12                          555 TWIN DOLPHIN DRIVE
                            SUITE 560
13                          REDWOOD SHORES, CALIFORNIA 94065

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   SAN JOSE, CALIFORNIA                      MARCH 27, 2012

 2                        MORNING SESSION

 3

 4        THE CLERK:  CALLING APPLE, INC. VS. SAMSUNG ELECTRONICS,

 5   CASE CV-11-01846.  MATTER ON FOR PLAINTIFF'S MOTION FOR

 6   SANCTIONS, PLAINTIFF'S MOTION TO COMPEL, PLAINTIFF'S MOTION FOR

 7   ATTORNEYS' FEES AND DEFENDANT'S MOTION FOR PROTECTIVE ORDER.

 8        THE COURT:  COUNSEL, STATE YOUR APPEARANCE.  GOOD

 9   MORNING.

10        MR. MCELHINNY:  GOOD MORNING, YOUR HONOR.  HAROLD

11   MCELHINNY, AND WITH ME IS MY PARTNER ALISON TUCHER, RICH HUNG,

12   AND ERIK OLSON, AND WE'RE HERE REPRESENTING APPLE.

13        THE COURT:  GOOD MORNING.  GOOD MORNING EACH OF YOU.

14        MR. JOHNSON:  GOOD MORNING, YOUR HONOR.  KEVIN JOHNSON

15   FOR QUINN EMANUEL ON BEHALF OF SAMSUNG.  WITH ME IS JOHN QUINN,

16   PARTNER RACHEL KASSABIAN, VICKI MAROULIS, JOBY MARTIN, AND WE

17   HAVE WITH US FROM SAMSUNG, MR. KEN KOREA, WHO IS THE CHIEF I.P.

18   COUNSEL IN THE UNITED STATES.

19        THE COURT:  MR. JOHNSON, GOOD MORNING TO YOU AND YOUR

20   TEAM.  HAVE A SEAT.  YOU ALL HAVE GIVEN ME PLENTY TO STUDY IN

21   ADVANCE OF THIS MORNING'S HEARING.  I'VE DONE MY BEST TO MAKE MY

22   WAY THROUGH THE PAPERS.

23           WHAT I WOULD LIKE TO DO IS CONSIDER THE ISSUE OF THE

24   APEX DEPOSITIONS FIRST AND THEN TURN TO THE MOTION FOR

25   SANCTIONS.  I, PERHAPS AT MY PERIL, CONSIDERED THE MOTION TO
```

1    COMPEL, THE MOTION FOR FEES AND MOTION FOR PROTECTIVE ORDER

2    ESSENTIALLY ONE UNIFIED PACKAGE OF ISSUES.

3           SO LET'S BEGIN THERE.  I WOULD LIKE TO HEAR FROM APPLE

4    FIRST ON THIS SUBJECT SINCE YOU FILED THE INITIAL MOTION.

5           MR. MCELHINNY:  THANK YOU, YOUR HONOR.  YOUR HONOR, IN

6    ORDER TO ARGUE THIS ACCURATELY, I AM AFRAID I AM GOING TO HAVE

7    TO POINT OUT TO THE COURT, AND PERHAPS ACTUALLY QUOTE FROM

8    DOCUMENTS THAT HAVE BEEN MARKED ATTORNEYS' EYES ONLY IN

9    CONFIDENTIAL --

10          THE COURT:  ALL RIGHT.  WELL, THE ISSUE OF SEALING AND

11   TRANSPARENCY IN THIS CASE I THINK HAS BEEN PRETTY WELL COVERED

12   IN EARLIER HEARINGS.

13          I AM NOT ABOUT TO SEAL THIS COURTROOM.  YOU CAN POINT

14   ME TO PAPERS.  YOU CAN DO YOUR BEST TO AVOID DISCLOSING THE

15   CONTENTS AND SUBSTANCE OF THE PAPERS, BUT I'M NOT GOING TO SEAL

16   THE COURTROOM.  WE WILL HAVE TO DO THE BEST WE CAN.

17          MR. MCELHINNY:  THANK YOU, YOUR HONOR.  THE PARTIES DO

18   NOT DISAGREE OVER WHAT THE LEGAL STANDARD IS.  THEY APPLY IT

19   SLIGHTLY DIFFERENTLY, BUT IT'S THE IN RE: GOOGLE CASE FROM THIS

20   COURT, WHICH IS A DETERMINATION OF WHETHER OR NOT IF YOU ARE

21   DEALING WITH THAT CLASS OF WITNESSES THAT WOULD BE CONSIDERED

22   APEX WITNESSES, WHICH ISN'T AN ISSUE IN THIS CASE, BUT IF YOU

23   ARE, WHETHER OR NOT THAT INDIVIDUAL HAS SUFFICIENT, UNIQUE

24   INFORMATION THAT THEY SHOULD BE DEPOSED IN A CASE BECAUSE THE

25   COURT IS LOOKING TO AVOID HARASSMENT.

1          THE TACTIC OF SIMPLY BRINGING IN SOME HIGH-LEVEL

2    EXECUTIVE IN ORDER TO IMPOSE TIME WHEN THEY DON'T REALLY HAVE

3    SOMETHING TO CONTRIBUTE --

4          THE COURT:  CAN I JUST INTERRUPT, AND YOU MAKE SURE WE'RE

5    ON THE SAME PAGE ON A COUPLE PRELIMINARY MATTERS.  AM I CORRECT

6    IN UNDERSTANDING THAT WE'RE NOW DOWN TO SIX WITNESSES?

7          MR. MCELHINNY:  YOU ARE.  YOU ARE ABSOLUTELY CORRECT,

8    YOUR HONOR.

9          THE COURT:  AM I ALSO CORRECT IN UNDERSTANDING THAT, AS

10   TO THOSE SIX WITNESSES, THERE'S NO REAL DISPUTE THAT THEY ARE,

11   IN FACT, APEX WITNESSES?  THE ONLY ISSUE IS WHETHER OR NOT THEY

12   SHOULD BE SUBJECT TO DEPOSITION?

13         MR. MCELHINNY:  THAT IS NOT CORRECT.

14         THE COURT:  WHY DON'T YOU CORRECT ME.

15         MR. MCELHINNY:  THAT IS NOT OUR POSITION.  OF THE SIX

16   THAT WE'RE TALKING ABOUT, OUR POSITION IS, I THINK ACTUALLY EACH

17   ONE OF THEM HAS A UNIQUE SORT OF SITUATION.  MR. CHOI IS

18   CURRENTLY CLEARLY AN APEX WITNESS.  WE'RE NOT GOING TO DISPUTE,

19   IN HIS CURRENT POSITION, HE'S AN APEX WITNESS.  HE WOULD HAVE

20   THE BENEFIT OF THE SPECIAL CONSIDERATION.

21         WHAT IS INTERESTING ABOUT MR. CHOI, OF COURSE, IS THAT,

22   IN 2007, WHEN HE TOOK KEY ACTIONS HERE, WE DO NOT CONSIDER THAT

23   HE WAS AN APEX WITNESS AT THAT TIME, IN TERMS OF WHEN THE PHONES

24   CAME OUT AND WHAT HIS POSITION WAS IN THE COMPANY AT THAT TIME.

25   SO IN THE PASSAGE OF TIME, HE'S BEEN PROMOTED.

1          THE COURT:  YEAH.  YOU ACTUALLY RAISE AN INTERESTING

2   POINT, RIGHT, WHICH IS, WHEN ONE SHOULD EVALUATE OR AT WHAT

3   POINT IN TIME SHOULD YOU QUESTION ONE'S APEX STATUS, AND IS IT

4   APPROPRIATE FOR ME TO LOOK AT THAT QUESTION AS WE ALL SIT HERE

5   TODAY.

6          IN OTHER WORDS, IF SOMEONE WAS WORKING ON THE LOADING

7   DOCK AND YEARS LATER BECOMES THE C.E.O., I TAKE IT THAT, AS

8   C.E.O. TODAY, I NEED TO CONSIDER WHETHER OR NOT THEY SHOULD BE

9   SUBJECT TO THE BURDEN.

10         MR. MCELHINNY:  I THINK I'M GOING TO MAKE IT EASIER.  I'M

11  GOING TO CONCEDE THAT POINT.

12         THE COURT:  I WELCOME THAT CONCESSION.

13         MR. MCELHINNY:  I THINK THE TEST OF WHETHER OR NOT THIS

14  PERSON SHOULD BE REQUIRED TO UNDERGO A DEPOSITION SHOULD BE

15  MEASURED BY HIS CURRENT, OR HER -- NOT WITH THIS COMPANY, BUT

16  WITH HIS OR HER CURRENT POSITION.

17         THE FACT THAT WHEN THE FACTS ALLEGED OCCURRED, THEY

18  WERE NOT -- THAT THEY HAD A MORE HANDS-ON AND DIRECT ROLE THEN

19  GOES TO THE QUESTION, OBVIOUSLY, OF WHETHER OR NOT IT'S

20  APPROPRIATE TO DO THAT.  SO I'M NOT GOING TO FIGHT OVER WHETHER

21  OR NOT MR. CHOI IS AN APEX PERSON TODAY.

22         WE DON'T AGREE THAT MR. SHIN, WHO IS CURRENTLY THE HEAD

23  OF MOBILE COMMUNICATIONS -- SAMSUNG IS A HUGE COMPANY.  IT HAS

24  DIVISIONS.  I MEAN, AS YOUR HONOR KNOWS, WE STARTED OFF WITH

25  SAMSUNG CLAIMING 23-SOME PEOPLE WERE SUBJECT TO THIS APEX RULE,

1  AND I'M NOT SURE I CAN SEE THAT ANYBODY OTHER THAN MR. CHOI --

2  I -- I DON'T CONCEDE, ALTHOUGH WE'RE HERE.

3         AND, FRANKLY, THAT'S PART OF OUR ATTORNEYS' FEES

4  MOTION.  WE DON'T CONCEDE THAT WE SHOULD HAVE BEEN REQUIRED TO

5  COME BEFORE YOUR HONOR AND MAKE A SHOWING AND SUBMIT, AS

6  YOUR HONOR JUST HELD UP, TWO-AND-A-HALF POUNDS OF PAPER FOR YOU.

7         AND AS YOU HAVE MADE CLEAR ON YOUR REGULAR SCHEDULE,

8  THAT IT WAS APPROPRIATE TO REQUIRE A UNITED STATES MAGISTRATE

9  JUDGE TO DETERMINE, IN EACH ONE OF THESE CASES, WHETHER OR NOT A

10  DEPOSITION SHOULD TAKE PLACE.  SO I DON'T THINK WE SHOULD HAVE

11  BEEN HERE WITH MR. SHIN.

12         THE COURT:  AS TO MR. SHIN, MR. HONG, MR. CHO AND THE

13  REST, IT'S APPLE'S POSITION THAT THEY ARE NOT APEX WITNESSES?

14         MR. MCELHINNY:  THAT'S CORRECT, THAT THESE ARE PEOPLE WHO

15  HAVE REGULAR LINE RESPONSIBILITIES IN THE SPECIFIC POSITIONS AND

16  THE SPECIFIC DIVISIONS THAT WERE RESPONSIBLE FOR THE DECISIONS

17  THAT ARE GOING TO BE TRIED IN THIS CASE.

18         AGAIN, YOUR HONOR MAY HAVE WANTED THIS, MAYBE NOT.

19  IT'S INCONCEIVABLE TO ME -- THIS IS GOING TO BE AN INTERESTING

20  TRIAL.  IT'S SIMPLY INCONCEIVABLE TO ME THAT SAMSUNG WILL PUT ON

21  A DEFENSE WITHOUT CALLING ANY OF THESE PEOPLE.

22         THE COURT:  IT SEEMS TO ME, IF THEY DON'T TENDER THEM FOR

23  DEPOSITION, THEY'RE NOT APPEARING FOR TRIAL.  I DON'T WANT TO

24  PREJUDGE THAT, BUT --

25         MR. MCELHINNY:  SO YOU ASK YOURSELF THE QUESTION, IF THE

1    HEAD OF THE DIVISION WHO MAKES PHONES IS SOMEBODY THAT SHOULDN'T

2    HAVE TO BE DEPOSED IN A CASE ABOUT WHETHER OR NOT THE ENTIRE

3    STRATEGY WAS TO COPY THE PHONE, EVERYBODY COMES IN HERE AND SAYS

4    THEY DON'T UNDERSTAND THE OTHER SIDE'S POSITION.

5         AND I DON'T WANT TO BE AN EXCEPTION.  I DON'T

6    UNDERSTAND THE OTHER SIDE'S CASE.  THE TWO PEOPLE THAT ARE IN

7    THE UNITED STATES OF COURSE REQUIRE AN UNDERSTANDING, THAT I

8    KNOW YOUR HONOR HAS, ABOUT THE WAY THAT THESE LARGE FOREIGN

9    CORPORATIONS SET UP U.S. ENTERPRISES.

10        THEY ARE DELEGATED AND COME OUT FROM THEIR MOTHER

11   COUNTRY, AND THEY RUN -- AND THEY MAY HAVE A TITLE, BUT THE FACT

12   THAT THEY HAVE A TITLE, THE FACT THAT THEIR JOB IS SIMPLY TO RUN

13   A SMALL -- RELATIVELY SMALL U.S. SUBSIDIARY OF A LARGE

14   INTERNATIONAL COMPANY, AND THEY REPORT BACK UP THE LINES TO

15   THESE OTHER PEOPLE, I DON'T -- AGAIN, I DON'T THINK THE FACT

16   THAT THEY HAD THE TITLE MEANS THAT THEY WERE ENTITLED TO SPECIAL

17   CIRCUMSTANCES.

18        THE COURT:  IS IT REALLY ACCURATE TO DESCRIBE -- TO

19   DESCRIBE THE AMERICAN SUBSIDIARY AS A SMALL DIVISION?  I MEAN, I

20   CAN'T IMAGINE THE SIZE OF THEIR REVENUE.

21        MR. MCELHINNY:  WELL, WE HAVE TO, BECAUSE YOU HAVE

22   ANOTHER MOTION TO COMPEL.

23        THE COURT:  SURE.

24        MR. MCELHINNY:  WE'RE TRYING TO FIGURE OUT WHAT THE SIZE

25   OF IT IS.  SMALL MAY BE THE WRONG WORD, BUT IN TERMS OF HOW

1    SAMSUNG IS RUN, IN TERMS OF WHERE THE DECISIONS ARE MADE, IN

2    TERMS OF THE AMOUNT OF AUTHORITY, THE IDEA THAT THE -- THAT

3    THE -- THAT THE MAN WHO HAS BEEN SENT OUT FROM KOREA TO BE THE

4    C.F.O. OF THE AMERICAN SUBSIDIARY, IN ORDER TO CERTIFY THE

5    FINANCIAL REPORTING BACK TO THE MOTHER SHIP, IS AN APEX WITNESS,

6    WHO, IN A LITIGATION OF WHICH DAMAGES ARE SUCH AN IMPORTANT

7    ELEMENT OF IT, SHOULDN'T, YOU KNOW -- EITHER, A, SHOULDN'T BE

8    DEPOSED AT ALL OR B, SHOULD GET A SPECIAL CONSIDERATION THAT

9    THEY'RE GETTING HERE, WE THINK IS A MISUSE.  WE THINK IT'S AN

10   ABUSE OF THE APEX RULE, AND WE DO DISAGREE.

11        THE COURT:  I APOLOGIZE FOR BELABORING THIS, BUT THESE

12   ARE IMPORTANT, AS ARE SAMSUNG'S.  WHAT STANDARD WOULD YOU URGE

13   THIS COURT TO ADOPT FOR DRAWING THE LINE OF A APEX AND NON-APEX

14   WITNESS WHEN YOU'RE DEALING WITH LARGE, MULTI-NATIONAL APEX

15   COMPANIES?

16        IT SEEMS IT'S A RELATIVELY NOVEL ISSUE AND ONE THAT

17   HASN'T BEEN ADDRESSED IN THE PUBLISHED OPINIONS I'VE BEEN ABLE

18   TO FIND, SO I'D LIKE YOUR THOUGHTS ON THAT.

19        MR. MCELHINNY:  THE STANDARDS, AS I UNDERSTAND IT FROM

20   READING THE CASES, IS THAT THE STANDARD TAKES -- I MEAN, IT WAS

21   BUILT, OF COURSE, HISTORICALLY ON A U.S. CORPORATE MODEL WHERE

22   YOU HAVE, YOU KNOW, A SENIOR EXECUTIVE WHO IS, IN THEORY,

23   RESPONSIBLE FOR EVERYTHING THE CORPORATION DOES, AND, THEREFORE,

24   HAS ACCESS TO ALL OF THAT INFORMATION, BUT IN THE REAL WORLD,

25   MAY OR MAY NOT HAVE, AND, IN MOST CASES, HAS NOT PLAYED AN

1    INDIVIDUAL ROLE IN THE FACTS THAT MAKE UP THE LITIGATION.

2          AND SO IT WAS, YOU KNOW -- AS I READ THE CASES, IT WAS

3    INCORPORATED TO PROTECT THE PRESIDENTS OF CORPORATIONS, IN TERMS

4    OF THE REAL PRESIDENT, C.E.O.S AND MAYBE ONE OR TWO OTHER PEOPLE

5    AT THAT LEVEL BASED ON THE DECISION-MAKING AUTHORITY THAT THEY

6    ACTUALLY HAVE AND THE OTHER DEMANDS ON THEIR TIME IN RUNNING AN

7    ORGANIZATION LIKE THAT.

8          I MEAN, OBVIOUSLY, YOU KNOW, APPLE HAS C.E.O.S AND

9    PRESIDENTS.  WE THINK THEY SHOULD NOT BE DEPOSED IN EVERY CASE.

10   YOU HAVE CASES IN FRONT OF YOU WHERE APPLE HAS CITED THIS THING,

11   ITS TOP EXECUTIVES, BUT I DON'T THINK THE APPROPRIATE TEST IS

12   SIMPLY TO GO BY THE TITLE OF THE PERSON.

13         THE COURT:  I THINK THE CASE LAW IS VERY CLEAR ON THAT.

14   WHAT I'M STRUGGLING WITH IS A SET OF CASES WHICH YOU SUGGEST

15   ADDRESS COMPANIES OF ALL SHAPES AND SIZES, AND IT STRIKES ME AS

16   FUNNY, I'LL USE THAT WORD, TO GRANT APEX STATUS TO A START-UP IN

17   SUNNYVALE OF 10 PEOPLE WITH A C.E.O. ON TOP, FOR EXAMPLE, BUT

18   NOT TO GRANT APEX STATUS TO SOMEONE RESPONSIBLE FOR BILLIONS OF

19   DOLLARS OF REVENUE, HUNDREDS AND PERHAPS THOUSAND OF EMPLOYEES.

20   THAT SEEMS A BIT OF AN INCONGRUITY TO ME.

21         MR. MCELHINNY:  THERE'S CERTAINLY A CHICKEN-AND-EGG

22   CONSTRUCT HERE.  I MEAN, IN LOOKING AT THE FACTS OF A PARTICULAR

23   CASE, YOU KNOW, THE COURT MAY CONCLUDE, AS WE THINK I'M ARGUING

24   HERE, THAT WHEN YOU LOOK AT THE FACTS HERE, THE PERSON MAY HAVE

25   THE TITLE IN THIS PARTICULAR ORGANIZATION THEY WERE NOT THE KIND

1    OF PERSON -- IT'S RIGHT HAND, LEFT HAND.

2        EITHER THEY WERE NOT THE KIND OF PERSON FOR WHOM APEX

3    PROTECTION SHOULD HAVE BEEN ASSERTED, OR, GIVEN THE PARTICULAR

4    FACTS IN THIS CASE, EVEN IF ARGUABLY YOU COULD HAVE MADE THE

5    APEX MOTION, IT SHOULD NOT HAVE BEEN MADE IN GOOD FAITH IN THIS

6    PARTICULAR CASE.

7        THE COURT:  YEAH, I TEND TO AGREE THAT THERE IS A BIT OF

8    A TOTALITY-OF-THE-CIRCUMSTANCES MODEL.  IT SEEMS TO APPLY IN

9    MOST OF THESE CASES.  THE MORE SIGNIFICANT ONE'S ROLE IN A

10   PARTICULAR FACET, THE LESS LIKELY THE COURTS SEEM TO BE GRANTING

11   APEX STATUS.

12       BUT I HAVE, AT LEAST, NOT SEEN A CASE THAT LOOKS AT

13   THIS QUESTION IN A CASE LIKE THIS WHERE YOU'RE DEALING WITH, AS

14   I SAID, A MULTI-NATIONAL TECHNOLOGY CORPORATION, BY VIRTUE OF

15   THE BUSINESS MODELS AND MARKETS THERE THAT HAVE SUBSTANTIAL

16   PRESENCE OUTSIDE OF THE HOME CORPORATE OFFICE.  I LOOK TO YOU

17   FOR GUIDANCE, AS I WILL FROM SAMSUNG, AS WELL.

18       MR. MCELHINNY:  I HAD ANOTHER GREAT POINT, AND I JUST

19   LOST IT.

20       THE COURT:  I'M SURE IT WILL COME BACK TO YOU.  TURN TO

21   THE SPECIFICS OF EACH INDIVIDUAL --

22       MR. MCELHINNY:  I WANT TO MAKE ONE OTHER POINT THAT'S

23   IMPORTANT, AND IT'S NOT DEFENSIVE.  IT MAY SOUND DEFENSIVE, BUT

24   IT'S NOT INTENDED TO BE DEFENSIVE.  IT'S INTENDED TO BE

25   OFFENSIVE.  YOUR -- OFFENSIVE IN THE SENSE OF BEING ON THE

1   OFFENSE.

2          THE COURT:  LOOKING TO SCORE AS OPPOSED TO BEING --

3          MR. MCELHINNY:  PERSONALLY OFFENSIVE.  YOUR HONOR HAS

4   ENOUGH FAMILIARITY WITH THE DISCOVERY ISSUES IN THIS CASE,

5   PROBABLY MORE THAN ENOUGH NOW, TO UNDERSTAND THIS CRITICAL

6   POINT, WHICH IS, FOR EACH OF THESE SIX PEOPLE, BECAUSE THEY HAVE

7   NEVER BEEN DESIGNATED FOR DEPOSITION OR DESIGNATED A CUSTODIAN,

8   THEIR FILES HAVE NOT BEEN PRODUCED.  SO WE DON'T HAVE ANY

9   DOCUMENTS THAT ARE SOURCED TO ANY OF THESE PEOPLE.

10          HERE'S MY CRITICAL POINT THAT I LOST BEFORE.  THE

11   REASON THE APEX THING, WHETHER OR NOT IT'S IMPORTANT, IS THE

12   MANY LEGAL ISSUES IT CARRIES AND THE BURDEN OF PROOF WITH IT.

13          SO TO THE EXTENT THE PERSON IS AN APEX PERSON, THEN I

14   HAVE MET THE BURDEN OF DEMONSTRATING THAT.  IF THEY ARE NOT AN

15   APEX PERSON, THEN THEY SIMPLY SHOULD HAVE BEEN PRODUCED.

16          THE COURT:  ASSUMING THEY HAVE OTHERWISE DISCOVERABLE

17   INFORMATION.

18          MR. MCELHINNY:  EXACTLY, BUT IT IS AN IMPORTANT FACT THAT

19   TO THE EXTENT THAT WE HAVE -- THERE'S A COUPLE THINGS GOING ON

20   HERE.  ONE, WE HAVE BEEN ABLE TO PIECE TOGETHER FROM DOCUMENTS

21   FROM OTHER CUSTODIANS, BUT WE DON'T HAVE THE DOCUMENTS THAT OF

22   COURSE WE FEEL THAT WE SHOULD HAVE.

23          AND THAT'S THE SUBJECT OF A BUNCH OF OTHER MOTIONS,

24   WHICH YOUR HONOR HAS, WHICH ARE DOCUMENTS THAT ARE SOURCED FROM

25   THESE PEOPLE WHO ARE THE LEADERS, WHO ARE THE PEOPLE THAT SET

1    POLICY IN THIS ORGANIZATION, AND IF YOUR HONOR DOESN'T GIVE US

2    THE DEPOSITIONS, WE WON'T GET THOSE DOCUMENTS, BASED ON THE WAY

3    THAT SAMSUNG HAS DONE ITS PRODUCTION.

4         I'M GOING TO START WITH MR. CHOI.  AND I MADE THE POINT

5    ALREADY THAT, IN 2007, WHEN MR. CHOI -- WHEN THE IPHONE WAS

6    INTRODUCED, MR. CHOI WAS THE PRESIDENT OF THE TELECOMMUNICATIONS

7    DIVISION, AND MORE IMPORTANTLY, HE HAD A ROLE AS THE HEAD OF THE

8    SAMSUNG CORPORATE-WIDE DESIGN CENTER.

9         THE COURT:  FORGIVE ME FOR INTERRUPTING.  THAT CENTER WAS

10   ALSO RESPONSIBLE IN '07, OR THEREABOUTS, FOR LAUNCHING THE

11   GALAXY PRODUCTS?

12        MR. MCELHINNY:  IT WAS, YOUR HONOR.  THAT'S THE DOCUMENT

13   THAT NOW I'M GOING TO TRY TO FIGURE OUT HOW TO TALK TO YOU ABOUT

14   WITHOUT ACTUALLY QUOTING FROM IT.  BUT IN MAZZA EXHIBIT 10,

15   THERE IS A DOCUMENT THAT BEARS THE DATE OCTOBER 8TH, 2007, AND

16   IT COMES FROM THE DESIGN MANAGEMENT CENTER.

17        WHAT'S CRITICAL ABOUT THIS DOCUMENT IS THAT AT THE TIME

18   THE IPHONE IS RELEASED, THIS DOCUMENT -- AGAIN, JUMP ON ME IF --

19   I'M GOING TO TRY TO DO IT AT A HIGH LEVEL, BUT I KNOW YOU'LL

20   POLICE ME.  IT'S A CORPORATE-WIDE CHANGE IN THE DESIGN

21   PHILOSOPHY THAT'S BEING ADOPTED.

22        THEY GO FROM THEIR HISTORICAL DESIGN PHILOSOPHY, WHICH

23   IS A DESIGN PHILOSOPHY SET OUT IN THE DOCUMENT, AND

24   CHRONOLOGICALLY, IT IS IMMEDIATELY AFTER THE IPHONE IS RELEASED.

25   I DON'T KNOW IF YOUR HONOR HAS THE DOCUMENT IN FRONT OF YOU.

1              THE COURT:  I CAN --

2              MR. MCELHINNY:  I'D BE GLAD TO SHOW YOU.

3              THE COURT:  -- PROCEED WITH THAT UNDERSTANDING.

4              MR. MCELHINNY:  I'LL SHOW YOU THE PAGE I'M RELYING ON,

5    BUT IT HAS A PAGE THAT HAS THE APPROVAL PROCESS, WHICH HAS THE

6    BATES NUMBER 202341.  AND THE FIRST DATE LISTED IN THE APPROVAL

7    PROCESS IS APRIL 13TH, 2007, INTERIM REPORT, AND IT SHOWS

8    EXPRESSLY -- CAN I JUST SHOW YOU THIS PAGE?

9              THE COURT:  SURE.  WANT TO APPROACH THE SIDE.

10             MR. MCELHINNY:  IT SHOWS THAT THE INITIAL APPROVAL HERE

11   WAS DONE BY THE HEAD OF THE DESIGN CENTER EXECUTIVE TEAM.  THAT

12   IS MR. CHOI.  IT WAS MR. CHOI AT THE TIME.  THEN IT SHOWS THAT

13   IT WENT UP THROUGH, LITERALLY, TO BE FINALLY APPROVED BY THE

14   CHAIRMAN, THE NUMBER ONE EXECUTIVE AT SAMSUNG.  THE TOP OF THE

15   COMPANY.

16             WE HAVE NOT SOUGHT TO DEPOSE THE CHAIRMAN OF SAMSUNG,

17   BUT THE PERSON LISTED ON THIS DOCUMENT AS ITS AUTHOR IS THE

18   PERSON THAT WE'RE SEEKING TO GET THE DEPOSITION OF.  AND THAT'S

19   IMPORTANT, BECAUSE IF YOU LOOK AT PAGE 202363, THE GOAL IS TO

20   ADOPT WHAT THEY CALL "A TOTAL EXPERIENCE."

21             AND, AGAIN, THE EXAMPLES THAT THEY USE ARE COMPLETE

22   PICTURES OF NOT ONLY STEVE JOBS, BUT THE APPLE PRODUCTS THAT

23   HAVE BEEN RELEASED, AND THE WAY THEY ARE MARKETED AND THE

24   OVERALL TOTAL EXPERIENCE AND THE LOOK AND FEEL OF APPLE.  THAT

25   WAS THE CHANGE THEY MADE.

1           MR. CHOI WE NEED TO DEPOSE -- REMEMBER THE ISSUES THAT

2    WE'RE DEALING WITH.  WE'RE DEALING WITH INTENT ISSUES.  WE'RE

3    DEALING WITH COPYING ISSUES.  WE'RE DEALING WITH WILLFULNESS

4    ISSUES.  WE'RE DEALING WITH ALL OF THESE IN WHICH WE HAVE TO

5    SHOW CORPORATE-LEVEL POLICY, AND THIS DOCUMENT DEMONSTRATES IT.

6    AND IT IS SOURCED BY SAMSUNG.  ALTHOUGH WE DON'T HAVE MR. CHOI'S

7    FILE, IT'S SOURCED DIRECTLY TO HIM.

8           THE COURT:  DO ANY OF THE DOCUMENTS, INCLUDING THE

9    DOCUMENTS YOU'RE POINTING ME TO RIGHT NOW, IDENTIFY MR. CHOI AS

10   HAVING BEEN INVOLVED IN CREATING OR IMPLEMENTING THIS STRATEGY?

11          MR. MCELHINNY:  THIS DOCUMENT DOES, YOUR HONOR.  I MEAN,

12   THIS STRATEGY --

13          THE COURT:  I UNDERSTAND YOUR CONTENTION IS HE APPROVED

14   IT.

15          MR. MCELHINNY:  NO, NO, NO.  THERE WAS A GROUP CALLED THE

16   DESIGN CENTER.  SO THAT'S A GROUP OF INDIVIDUALS, AND MR. CHOI

17   WAS THE HEAD OF THAT GROUP OF INDIVIDUALS.

18           SO THIS CAME OUT OF THIS.  THIS IS NOT FROM THE

19   MOBILE -- THIS IS NOT FROM THE MOBILE COMMUNICATIONS.  THIS IS A

20   VERY PARTICULAR GROUP OF PEOPLE.  IT'S A GROUP OF VERY SPECIFIC

21   PEOPLE WHO WERE -- WHOSE JOB WAS TO SET THE OVERALL DIRECTION

22   FOR THE DESIGN OF SAMSUNG PRODUCTS.

23          THE COURT:  AND I BELIEVE THAT FACT WAS CONFIRMED IN A

24   DEPOSITION OF A MR. CHANG?

25          MR. MCELHINNY:  IT WAS, YOUR HONOR.  THE OTHER DOCUMENT

1  IS -- OR ANOTHER DOCUMENT IS, IT'S GOT A BATES NUMBER.  I'M

2  AFRAID I DON'T HAVE THE ACTUAL EXHIBIT NUMBER, BUT IT HAS A

3  BATES NUMBER ON IT, WHICH IS 10249770.  AND HERE IT SHOWS

4  SPECIFIC DIRECTION FROM MR. CHOI TO THE DESIGNERS OF A VERY

5  SPECIFIC SAMSUNG PRODUCT.

6          MR. QUINN:  YOUR HONOR --

7          THE COURT:  YOU HAVE AN OBJECTION?

8          MR. QUINN:  NO, I DON'T.  I'M SORRY.  I WASN'T PAYING

9  ATTENTION AND I DIDN'T GET THE CITATION.

10          MR. MCELHINNY:  OH, I'M SORRY.  IT IS 10249770.

11          MS. MAROULIS:  EXHIBIT NUMBER?  I GOT AN I.D. HERE.

12          MR. MCELHINNY:  I DON'T HAVE AN EXHIBIT NUMBER.

13          MR. QUINN:  GOT IT.

14          MR. MCELHINNY:  THERE IS NO QUESTION, AND IN THIS, IT IS

15  A DIRECTION -- A DIRECTION TO THE DESIGNERS DIRECTLY FROM

16  MR. CHOI THAT SAYS, "IMPROVE THE USER INTERFACE, AND IN DOING

17  THAT, REFER TO THE IPHONE 3GS."  DIRECT COMMUNICATION FROM

18  MR. CHOI.  SAMSUNG'S RESPONSE TO THIS -- I CAN SHOW THIS TO YOU,

19  YOUR HONOR.

20          THE COURT:  IF YOU COULD JUST TELL ME THE DATE OF THE

21  DOCUMENT, IF IT'S DATED AT ALL.

22          MR. MCELHINNY:  I'M SORRY, YOUR HONOR.  I'LL TRY TO GET

23  IT FOR YOU.

24          THE COURT:  IF IT'S NOT DATED, IT'S NOT DATED, BUT I JUST

25  WANTED TO ASK THE QUESTION.  GO ON.

1    MR. MCELHINNY:  SAMSUNG'S RESPONSE TO THIS IS, THE

2   PARTICULAR PRODUCT THAT'S DISCUSSED HERE IS NOT ONE OF THE

3   ACCUSED PRODUCTS IN THE LITIGATION.  BUT OF COURSE, THAT'S NOT

4   OUR BURDEN.  THAT'S NOT WHY WE WANT TO TAKE THE DEPOSITION,

5   BECAUSE WE'RE LOOKING FOR CORPORATE-WIDE POLICIES THAT WERE

6   ESTABLISHED FROM THE TOP ABOUT USING APPLE AS THE MODEL FOR THE

7   DESIGN OF THE PRODUCTS.

8           SO WE DON'T AGREE THAT IN ORDER TO BE ABLE TO GET

9   MR. CHOI'S DEPOSITION ABOUT WHAT SAMSUNG'S POLICY WAS, WHAT ITS

10  STRATEGY WAS, THAT WE HAD TO BE LUCKY ENOUGH TO FIND THE

11  DOCUMENT THAT ACTUALLY POINTED TO AN ACCUSED DEVICE.

12      THE COURT:  PARTICULARLY WHERE THIS INDIVIDUAL IS NOT A

13  CUSTODIAN.

14      MR. MCELHINNY:  DESIGNER.  EXACTLY.  WHEN WE HAVEN'T SEEN

15  HIS FILES.  NOW, WHAT WE DO KNOW -- AND THIS IS MAZZA EXHIBIT

16  12.  WHAT WE DO KNOW IS THAT WHEN THE IPAD 2 CAME OUT, WE KNOW

17  THAT SAMSUNG WAS ABOUT TO MARKET ITS OWN TABLET DEVICE, AND WE

18  KNOW THAT THEY MADE THE DECISION NOT TO MARKET IT AND TO

19  WITHDRAW IT AND CHANGE THE DESIGN IN ORDER TO MAKE IT LOOK LIKE

20  THE IPAD 2.

21      THE COURT:  THIS IS IN MARCH OF 2011?

22      MR. MCELHINNY:  MARCH 6, 2011.

23      MR. QUINN:  IF I MIGHT INQUIRE.  IS THIS MAZZA EXHIBIT 12

24  FROM THE MOVING PAPERS OR REPLY EXHIBIT 12?

25      MR. MCELHINNY:  THIS IS 12 FROM THE MOVING PAPERS, AND

CHRISTINE BEDARD, C.S.R.                    17

1    I'M LOOKING AT THE DOCUMENT THAT STARTS BATES 513783.  AND THE

2    DOCUMENT IS ENTITLED "C.E.O.," THAT IS MR. CHOI, "C.E.O. REVIEW

3    MEETING MINUTES."

4            SO THEY HAVE A MEETING.  MR. CHOI RAN THE MEETING, AND

5    THEY HAVE MINUTES OF THE MEETING, AND WE HAVE CITED TO

6    YOUR HONOR THE SPECIFIC DIRECTIONS ON THE NEXT PAGE.

7            THE CODE NUMBERS P3 AND P5 WERE REFERENCES TO

8    SPECIFIC -- THOSE ARE CODE NAMES FOR SPECIFIC SAMSUNG -- AND YOU

9    GOT THE DIRECTION HERE, DIRECTLY FROM MR. CHOI AS THE ACTOR.

10   AND AS YOUR HONOR MAY HAVE SEEN IN THE PAPERS, THERE WERE PUBLIC

11   STATEMENTS ABOUT THIS.  THEY PULLED IT BACK AND TRIED TO MAKE IT

12   LOOK DIRECTLY -- THIS IS THE DOCUMENT THAT DID IT.  MR. CHOI

13   PERSONALLY, PERSONALLY GAVE THE DIRECTION FOR IT.

14           I DON'T NEED TO GO OVER ALL OF THIS, BUT THE OTHER ONE

15   IS IN REPLY EXHIBIT 10 FROM THE MAZZA, AND IT'S IN THE REPLY,

16   BECAUSE IT WASN'T PRODUCED TO US UNTIL THE MOTION WAS ALREADY

17   BRIEFED.  THEY HAVE ANOTHER DIRECTION FROM MR. CHOI STATING

18   THAT, "GOING FORWARD, THE COMPARISON STANDARD FOR SAMSUNG

19   PRODUCTS IS GOING TO BE THE IPHONE."

20           THIS IS EXACTLY WHAT WE NEED TO SHOW THE JURY IN THIS

21   CASE.  THESE ARE EXACTLY THE KIND OF STATEMENTS COMPANY-WIDE,

22   POLICY-WIDE ISSUES THAT IT'S OUR BURDEN OF PROOF TO SHOW.  WHEN

23   WE COME TO THE SANCTIONS MOTION, WE'LL BE ARGUING IF WE HAD THIS

24   MATERIAL, THAT'S WHY THESE MOTIONS ARE INTERRELATED, BUT THAT

25   IS, IN SUMMARY, OUR CASE ABOUT MR. CHOI.

1        THE COURT:  ALL RIGHT.

2        MR. MCELHINNY:  TO BE ABSOLUTELY -- THERE CANNOT BE AN

3    ARGUMENT THAT WE ARE TAKING THIS DEPOSITION TO HARASS THIS

4    PERSON OR TO -- THEY MAKE THE ARGUMENT HE KNOWS SO LITTLE,

5    THERE'S NOTHING HE COULD CONTRIBUTE.

6        I DO WANT TO DEAL WITH ONE ISSUE, WHICH IS, HAVE WE

7    EXHAUSTED THE ALTERNATE PART OF THE TEST, HAVE WE EXHAUSTED

8    ALTERNATIVE METHODS, AND, AGAIN, AN IRONIC ARGUMENT, OUR

9    DEPOSITION TIME IN THIS CASE WAS LIMITED.  WE HAVE A TOTAL

10   NUMBER OF HOURS THAT WE CAN USE FOR DEPOSITIONS.

11       THEY HAVE COMPLAINED ABOUT HOW MANY DEPOSITIONS WE HAVE

12   TAKEN, HOW MANY PEOPLE WE'VE SPOKEN TO, HOW MANY TIMES WE CAME

13   IN AND ASKED FOR MORE DOCUMENTS.  EVERYBODY, INCLUDING

14   JUDGE KOH, HAS NOTICED THERE'S BEEN A TON OF DISCOVERY IN THIS

15   CASE.

16       WE HAVE RESERVED -- I WANT TO MAKE THIS POINT.  I MADE

17   IT BEFORE WHEN WE WERE TALKING ABOUT IT.  IN ORDER TO BE ABLE TO

18   TAKE THESE DEPOSITIONS, WE HAVE HAD TO RESERVE SOME OF OUR

19   HOURS.  IF YOUR HONOR DOESN'T GRANT US THESE DEPOSITIONS, WE

20   LOSE THEM.  IT'S, YOU KNOW -- THAT'S NOT YOUR PROBLEM, IT'S MY

21   PROBLEM.

22       THE COURT:  THAT'S A CALCULATED RISK YOU TOOK.

23       MR. MCELHINNY:  IT'S A CALCULATED RISK WE TOOK, BUT THE

24   TOTAL NUMBER OF HOURS WE RESERVED IS APPROXIMATELY 30.  BUT IN

25   THE CONTEXT OF THIS CASE, TO BE ABLE TO GENERATE THIS AMOUNT OF

1    INFORMATION POINTING TO THIS INDIVIDUAL WITHOUT EVER HAVING HAD

2    THE BENEFIT OF PRODUCTION FROM HIM IS, AT LEAST IN MY, AS WE

3    SAY, HUMBLE OPINION, A PRETTY STRONG SHOWING FOR MR. CHOI.

4         THE COURT:  ALL RIGHT.  BEFORE WE TURN TO ANY OF THE

5    OTHER INDIVIDUALS, I THINK IT'S APPROPRIATE TO HEAR FROM

6    SAMSUNG.  MR. JOHNSON, WHO IS GOING TO SPEAK ON YOUR BEHALF?

7         MR. JOHNSON:  MR. QUINN IS GOING TO HANDLE THIS MOTION.

8         THE COURT:  OKAY.  I'D LIKE TO HEAR ANY OVERARCHING

9    COMMENTS ABOUT THE SUBSTANTIVE MATTER, AND SPECIFICALLY ABOUT

10   MR. CHOI, AND THEN WE'LL PING PONG BACK AND FORTH AS TIME

11   PERMITS.

12        MR. QUINN:  THANK YOU, YOUR HONOR.  GOOD MORNING.

13        THE COURT:  GOOD MORNING.

14        MR. QUINN:  SO I WOULD LIKE TO START WITH THE ISSUE ABOUT

15   THE APEX DEPOSITION AND WHO AN APEX WITNESS IS.  IN TERMS OF

16   DRAWING A LINE, I THINK IT'S AN INTERESTING QUESTION WHEN ONE

17   LOOKS AT THE CASES, AND AS I RECALL ALL OF THE CASES CITED BY

18   THE PARTIES, THERE REALLY WASN'T A DISPUTE, AS I RECALL, ABOUT

19   WHETHER A WITNESS WAS APEX OR NOT.

20        REALLY THE QUESTION WAS, AGAIN, THAT THE POSITION THAT

21   THE PROPOSED OPPONENT HOLDS IS, IT'S A SITUATION WHERE THE

22   DEPOSITION SHOULD GO FORWARD.  ACTUALLY, IF YOU LOOK AT THESE

23   INDIVIDUALS, I REALLY THINK THERE CAN'T BE A WHOLE LOT OF

24   QUESTION THAT EACH OF THESE INDIVIDUALS MEETS THE STANDARD.

25        I MEAN, I TAKE IT THERE REALLY ISN'T ANY DISPUTE

1    CONCERNING MR. CHOI, WHO PRESIDES OVER AN ORGANIZATION WITH SOME

2    190,000 EMPLOYEES.  MR. J.K. SHIN IS PRESIDENT OF MOBILE

3    COMMUNICATIONS, A MAJOR DIVISION, THAT OVERSEES SOME 68,000

4    EMPLOYEES THAT HE'S RESPONSIBLE FOR.  THIS IS A VERY BIG

5    DIVISION.  IT'S A VERY BIG JOB.  I THINK THAT MUCH IS OBVIOUS.

6    THE MAN IS NOT A DESIGNER OR AN ENGINEER, JUST AS MR. CHOI ISN'T

7    EITHER.

8         SO YOU WOULDN'T EXPECT THAT THESE PEOPLE WOULD BE

9    GETTING INTO THE NITTY-GRITTY OF HOW WE IMPLEMENT THESE PLANS,

10   DESIGNS WE ADOPT AND THINGS OF THAT NATURE.  THIS IS A VERY

11   SENIOR BUSINESS EXECUTIVE.

12        WHEN WE GET TO MR. H.P. WONG, HE'S EXECUTIVE

13   VICE PRESIDENT OF PRODUCT STRATEGY OF MOBILE COMMUNICATION.  AS

14   WE HAVE INDICATED IN OUR PAPERS, HE OVERSEES AN ORGANIZATION

15   THAT'S 800 EMPLOYEES.

16        NOW, IT'S NOT THAT THE HEAD COUNT IS DETERMINATIVE,

17   YOUR HONOR.  I WOULDN'T ARGUE THAT TO THE COURT, BUT I WOULD

18   CITE THE COURT TO THE GROUPON CASE IN THIS DISTRICT WHERE THE

19   COURT FOUND IN AN ORGANIZATION OF 200 EMPLOYEES, THAT THE

20   CHAIRMAN, C.E.O. AND FOUR SENIOR VICE PRESIDENTS WERE APEX.  SO

21   I MEAN, THAT IS THE STANDARD THAT WE'RE TALKING ABOUT HERE

22   THAT'S BEEN APPLIED IN THIS DISTRICT.

23        I WOULD ALSO CITE THE COURT TO THE HARDIN DECISION,

24   HARDIN VERSUS WAL-MART, WHERE THE COURT -- THAT'S FROM THE

25   EASTERN DISTRICT OF CALIFORNIA, WHERE THE COURT SAID THAT

1   THERE'S NO QUESTION THAT AN EXECUTIVE VICE PRESIDENT IS A BUSY

2   HIGH-RANKING EXECUTIVE THAT'S SUBJECT TO THE APEX DOCTRINE.

3        I REALIZE THESE TITLES CAN MEAN DIFFERENT THINGS IN

4   DIFFERENT ORGANIZATIONS.  AND, AGAIN, WE'RE NOT RELYING ON THE

5   TITLE ITSELF.

6        FINALLY, THE MEHMET DECISION WE CITED THE COURT TO, THE

7   COURT FOUND THAT A C.F.O. WAS A APEX-PROPOSED DEPONENT.  THE

8   BAINE DECISION, VICE PRESIDENT WAS A PROPOSED APEX DEPONENT.

9        SO, AGAIN, THE TITLES ITSELF AREN'T NECESSARILY

10  DETERMINATIVE, BUT IT'S CLEAR THAT THE STANDARD HERE IS

11  SOMETHING THAT REALLY CALLS ON THE COURT TO MAKE SOME -- DRAW

12  SOME LINES, AND LOOKING AT WHAT ARE THE RESPONSIBILITIES OF THE

13  PERSON AND WHAT OTHER ALTERNATIVE METHODS ARE THERE AVAILABLE TO

14  GET THE REQUESTED INFORMATION.

15       MR. HONG, AS I SAID, OVERSEES -- THIS IS A VERY BIG

16  JOB.  EXECUTIVE VICE PRESIDENT OF PRODUCT STRATEGY, OVERSEEING

17  SOME 800 EMPLOYEES.  MR. SEUGHWAN CHO -- AND I APOLOGIZE IF I

18  BUTCHER SOME OF THESE NAMES -- IS EXECUTIVE VICE PRESIDENT OF

19  ADVANCED SOFTWARE R&D FOR MOBILE COMMUNICATIONS.  AS WE INDICATE

20  IN OUR PAPERS, HE OVERSEES SOME 800 EMPLOYEES.  DALE SOHN IS

21  C.E.O. OF SAMSUNG TELECOMMUNICATIONS AMERICA.

22       SEPARATE ENTITY IS, YOU KNOW, UNDER THE LAW, ENTITLED

23  TO TREAT THE SAMSUNG'S U.S. ENTITY AS A SEPARATE ENTITY.  THIS

24  IS A MAN WHO IS A C.E.O. IN CHARGE OF SAMSUNG'S OPERATIONS IN

25  THE LARGEST MARKET IN THE WORLD.  HE IS RESPONSIBLE, HE OVERSEES

1   SOME 1,000 EMPLOYEES.

2           THE OTHER WITNESS JOSEPH CHEONG, C.F.O. OF SAMSUNG

3   AMERICA, HE HAS RESPONSIBILITY FOR OVER SOME 300 EMPLOYEES.

4           SO THESE ARE ALL BIG JOBS.  THESE ARE ALL INDIVIDUALS

5   WHO HOLD VERY SENIOR POSITIONS AND POSITIONS THAT COURTS IN

6   OTHER CASES HAVE RECOGNIZED ARE APPROPRIATELY TREATED AS APEX

7   WITNESSES.

8           I WOULD POINT OUT THAT MR. SHIN, WHO OVERSEES SOME

9   68,000 EMPLOYEES, I THINK THAT REPRESENTS A MULTIPLE OF THE

10  NUMBER OF EMPLOYEES THAT APPLE HAS, AND APPLE TOOK THE POSITION

11  THAT, FOR EXAMPLE, THEIR -- I DON'T KNOW HOW MANY LAWYERS THEY

12  HAVE, BUT THEY TOOK THE POSITION THAT THEIR GENERAL COUNSEL,

13  MR. SEWELL, WAS AN APEX EMPLOYEE.  I DON'T THINK THEY HAVE

14  ANYWHERE NEAR 300 EMPLOYEES WORKING IN HOUSE AT APPLE.

15          SO I WOULD SUGGEST THAT UNDER THE APPROPRIATE STAND --

16  UNDER THE APPLICABLE STANDARDS, THERE REALLY ISN'T ANY QUESTION.

17  WE NARROWED THIS DOWN TO JUST SIX EXECUTIVES, AND AS WE GO

18  THROUGH THIS, I THINK THE COURT WILL BE ABLE TO SEE THAT THESE

19  ARE SENIOR PEOPLE; VERY FAR REMOVED FROM THE DESIGN DECISIONS

20  THAT ARE AT ISSUE IN THIS CASE.

21          AND THAT APPLE HAS DEPOSED WITNESSES WHO REALLY HAVE

22  THEIR HANDS ON THESE DESIGN DECISIONS AND ARE RESPONSIBLE FOR

23  FORMULATING THEM AND EXECUTING ON THEM.  THEY HAVE HAD A CHANCE

24  TO DEPOSE THEM AND HAVE HAD 30(B)(6) WITNESSES ON ALL THESE

25  TOPICS.  I THINK IT WILL BECOME APPARENT DURING THIS ARGUMENT --

1          THE COURT:  I'M INTERESTED IN THE SUBJECT, BECAUSE I,

2     FRANKLY, AM STRUGGLING TO UNDERSTAND HOW THE APEX DOCTRINE, AS

3     IT'S BEEN ARTICULATED, SQUARES WITH RULE 26.  I MEAN, IT WOULD

4     SEEM TO ME THE COURTS -- AND I HAVE BEEN GUILTY OF THIS, SO I

5     DON'T MEAN TO CAST ASPERSIONS ON OTHER COURTS -- BUT COURTS HAVE

6     BEEN MORE THAN WILLING TO APPLY A STANDARD TO SENIOR EXECUTIVES

7     THAT I CAN'T FIND ANY SUPPORT FOR IN THE RULES.

8          AND SO PARTICULARLY IN THIS CONTEXT WHERE THESE LABELS,

9     AS YOU SAY, GET TOSSED ABOUT, IT SEEMS TO ME THAT ULTIMATELY

10    THESE ARE ARBITRARY DISTINCTIONS THAT THE COURT IS BEING ASKED

11    TO MAKE, AND I, AGAIN, AM NOT ENTIRELY CLEAR AS TO WHAT THE

12    STANDARD IS.

13         ONE ISSUE I WANT TO ASK YOU ABOUT IS, IT SEEMS TO BE

14    INHERENT IN THE STANDARD IS THE NOTION THAT ANY DEPOSITION OF A

15    WITNESS WOULD BE UNDULY HARASSING, RIGHT?  THERE'S A HARASSMENT

16    ELEMENT.  COULD YOU SPEAK TO HOW I MIGHT APPLY THAT HERE AND

17    DISTINGUISH THESE WITNESSES, FOR EXAMPLE, FROM SOME OF THE

18    OTHERS THAT HAVE APPEARED FOR DEPOSITION.

19         MR. QUINN:  WELL, I THINK THERE IS A HARASSMENT ISSUE,

20    OBVIOUSLY, LURKING IN THE BACKGROUND, AND WE'RE TALKING ABOUT

21    JUDICIALLY-CREATIVE LAW, BUT IT'S GOOD LAW, TOO.  AND I THINK

22    WE'LL SEE AS WE GO THROUGH THIS, I CAN CITE THE COURT TO

23    EXAMPLES OF VERY SENIOR PEOPLE, BOTH VERY SENIOR PEOPLE AND LINE

24    PEOPLE, WHO HAVE BEEN DEPOSED ON THESE VERY ISSUES FOR WHICH

25    THEY SAY THEY NEED THIS TESTIMONY.

1          I THINK WE HAVE TO -- WE DON'T APPROACH THIS IN A

2    VACUUM.  WE APPROACH THIS AFTER THE END OF DISCOVERY, AND I

3    THINK IT'S WORTH DOING JUST KIND OF A CHECK NOW IN OUR OWN MINDS

4    AS WE ASSESS WHETHER THEY SHOULD BE ABLE TO TAKE MORE

5    DEPOSITIONS.  IT'S WORTH JUST ASKING OURSELF FOR A MOMENT, WAIT

6    A SECOND.  WHERE WE ARE?  WHERE ARE WE?  WHAT DISCOVERY HAS BEEN

7    HAD UP TO THIS POINT?  AND I DON'T THINK THAT'S AN IRRELEVANT

8    QUESTION.

9          AS WE'VE INDICATED IN OUR PAPERS, SAMSUNG HAS PRODUCED

10   OVER 1.8,700,000 DOCUMENTS IN THIS NORTHERN DISTRICT CASE ALONE.

11   THE COURT KNOWS THERE'S OTHER PROCEEDINGS IN WASHINGTON.  99

12   SAMSUNG WITNESSES HAVE BEEN DEPOSED.  THESE ARE 90 -- 90 OF

13   THESE ARE UNIQUE WITNESSES.  NINE OF THEM WERE BROUGHT BACK.

14   MANY OF THESE WERE ON 30(B)(6) TOPICS.

15          THERE WERE 165 TOPICS ON WHICH WE PRODUCED WITNESSES TO

16   TESTIFY.  SO WE DON'T APPROACH THIS IN A VACUUM, AND WE'RE

17   TALKING ABOUT SOME OF THE MOST SENIOR PEOPLE IN THE COMPANY.

18   AND WE DON'T CASUALLY COME TO COURT AND ASK THE COURT TO PROTECT

19   THESE PEOPLE FROM BEING DEPOSED.  IT'S ONLY AFTER ALL THIS WATER

20   THAT'S GONE UNDER THE BRIDGE.

21          THE NUMBER OF PEOPLE WHO HAVE BEEN DEPOSED, BOTH LINE

22   AND VERY SENIOR, THAT WE THINK, FRANKLY, THIS IS AN APPROPRIATE

23   EXERCISE OF THE COURT'S DISCRETION.  AND I DO RECOGNIZE THAT

24   IT'S THE COURT'S DISCRETION.

25          THE COURT:  DO YOU WANT TO SPEAK TO MR. CHOI SPECIFICALLY

1    NOW?

2         MR. QUINN:  YES, I WOULD LIKE TO SPEAK TO MR. CHOI.

3    BEFORE I PLUNGE INTO THAT, IF I COULD JUST ORIENT OURSELVES

4    AGAIN, AND I DON'T THINK -- AS MR. MCELHINNY SAID, I DON'T THINK

5    THERE'S ANY DISAGREEMENT ABOUT THIS, ABOUT WHAT THE STANDARD IS.

6    AS THIS COURT RECOGNIZED IN THE IN RE: GOOGLE CASE, IT'S IS

7    THERE UNIQUE KNOWLEDGE?  DOES THE PERSON HAVE SOME UNIQUE

8    FIRST-HAND KNOWLEDGE THAT'S NON-REPETITIVE THAT'S NOT AVAILABLE

9    ELSEWHERE?  THAT'S THE STANDARD.

10        AND NOTWITHSTANDING THE VERY -- I WANT TO WALK

11   THROUGH -- SADLY I KNOW OF NO OTHER WAY TO ADDRESS THIS THAN TO

12   WALK THROUGH THE VARIOUS DOCUMENTS THAT APPLE RELIES ON TO MAKE

13   THEIR CASE THAT THEY NEED THIS TOMORROW, SO I HAVE TO ASK THE

14   COURT TO BEAR WITH ME.

15        BUT I THINK I HAVE ASKED THE COURT TO BEAR IN MIND,

16   NOTWITHSTANDING ALL OF THIS DISCOVERY THAT THEY HAVE RECEIVED,

17   THIS IS THE BEST THAT THEY HAVE BEEN ABLE TO DO TO JUSTIFY THESE

18   DEPOSITIONS.

19        AND IF WE TURN TO MR. CHOI TO BEGIN WITH, AND I WOULD

20   LIKE TO -- I'M PREPARED TO DISCUSS EVERY EXHIBIT THAT THEY CITED

21   IN THEIR PAPERS AS JUSTIFYING MR. CHOI'S DEPOSITION.  I'LL BEGIN

22   BY TALKING ABOUT THE ONES THAT MR. MCELHINNY HAS ALREADY

23   DISCUSSED AND RESPOND TO THOSE.

24        FIRST IS EXHIBIT 10, WHICH IS THIS DE -- OCTOBER 8,

25   2007 DOCUMENT FROM THE DESIGN MANAGEMENT CENTER, WHICH IS, THEY

1    REFER TO AS, THE PHONE 2 DESIGN STRATEGY, AND THEY CALL THE

2    COURT'S ATTENTION TO THE PAGE, OH, BATES NUMBER 2341 INTERNALLY

3    SHOWING THE APPROVAL PROCESS FOR THIS ONE HEAD OF CENTER OF THE

4    DESIGN EXECUTIVE TEAM AT THE TOP.

5         YOUR HONOR, WHAT DOES THIS TELL US?  THEY SAY TO THE

6    COURT, HE WAS HEAD OF THE DESIGN CENTER.  THEY HAD TO APPROVE

7    IT, THEREFORE, WE GET TO TAKE HIS DEPOSITION.  THAT'S NOT THE

8    LAW.

9         THE FACT THAT SOMEBODY JUST HAPPENS TO BE AT A MEETING,

10   THE FACT THAT SOMEBODY HAPPENS TO HOLD A TITLE WHERE THEY ARE IN

11   CHARGE OF A FUNCTION DOESN'T MAKE THEM -- IN AND OF ITSELF MAKE

12   THEM AN APPROPRIATE DEPONENT ON THE DETAILS OF THAT DOCUMENT.

13        THE COURT:  NO, MR. QUINN.  MR. CHOI WAS HARDLY SITTING

14   IN THE CORNER EATING A DONUT WHEN THESE DISCUSSIONS WERE TAKING

15   PLACE.  HE WAS RESPONSIBLE FOR THE DECISION.

16        MR. QUINN:  ULTIMATELY HE IS, BUT BY THE LOGIC OF THAT

17   EVERY APEX WITNESS, YOU KNOW, THE BUCK STOPS WITH THE C.E.O.,

18   FINANCIAL MATTERS, MAYBE IT STOPS WITH THE --

19        THE COURT:  MR. CHOI HASN'T MADE EVERY DECISION.  HE HAS

20   MADE A SUBSET OF DECISIONS, INCLUDING THIS ONE, SO WHY WOULDN'T

21   THAT BE ENOUGH TO TRIGGER A DEPOSITION ON THAT VERY SPECIFIC

22   TOPIC?

23        MR. QUINN:  YOUR HONOR, FOR SEVERAL REASONS.  THERE IS NO

24   EVIDENCE THAT HE WAS INVOLVED IN CREATING OR IMPLEMENTING THIS

25   DOCUMENT.  THIS OR THE POLICY REFERENCED IN THE DOCUMENT.  THIS

1    DESIGN CENTER IS A CENTER OF HUNDREDS, MAYBE THOUSANDS, I DON'T

2    KNOW, I'M LOOKING AROUND, AT LEAST HUNDREDS OF EMPLOYEES.

3             HE WAS IN CHARGE AT THAT TIME.  DOES THIS MEAN HE

4    HAS -- LET'S GO BACK TO THE STANDARD.  UNIQUE FIRST-HAND

5    KNOWLEDGE THAT ISN'T AVAILABLE ELSEWHERE?  MIND YOU, YOUR HONOR,

6    THEY GOT A 30(B)(6) WITNESS ON THIS DOCUMENT.  THEY ASKED FOR

7    IT.

8             THE COURT:  THAT'S MR. LEE?

9             MR. QUINN:  YES, SEUNG YUN LEE.  AND HE TESTIFIED -- THEY

10   ASKED HIM QUESTIONS ABOUT IT, AND THEY GOT TO EXAMINE A WITNESS

11   ABOUT IT.  SO THE QUESTION IS, NOW YOU ASKED FOR A 30(B)(6)

12   WITNESS ON A DOCUMENT, SHOULD YOU ALSO BE ABLE TO TAKE A

13   DEPOSITION OF SOMEBODY WHO IS, UNCONTROVERTED NOW, IS AN APEX

14   WITNESS JUST BECAUSE HE WAS IN CHARGE OF THE DEPARTMENT WHEN THE

15   DOCUMENT WAS APPROVED?

16            I SUBMIT THE ANSWER TO THAT IS NO.  AND BY THE WAY,

17   THIS DOCUMENT, AS I SAID, THERE'S NO EVIDENCE -- THEY HAVE

18   SUBMITTED NO EVIDENCE TO THE COURT THAT MR. CHOI WAS INVOLVED IN

19   CREATING THIS.

20            SUM TOTAL OF THE EVIDENCE, THE COURT -- HIS INVOLVEMENT

21   IS THAT HE WAS AT THE TOP OF THE DEPARTMENT AT THE TIME THIS WAS

22   CREATED; THAT -- THAT HE HAD INPUT OR IMPLEMENTED IT OR ANYTHING

23   ELSE --

24            THE COURT:  WELL, THE EVIDENCE SHOWS HE APPROVED IT.

25            MR. QUINN:  IN THE SENSE IT DOESN'T GO OUT WITHOUT --

1   THAT'S WHAT THEY GOT.

2        THE COURT:  SO WHY WOULDN'T HE HAVE FIRST-HAND AND UNIQUE

3   FIRST-HAND KNOWLEDGE ABOUT WHY HE APPROVED IT?  WHAT FACTORS

4   INFLUENCED HIS DECISION TO APPROVE IT AND SO ON AND SO FORTH?

5        MR. QUINN:  I SUBMIT THEY GOT A 30(B)(6) WITNESS ON THAT.

6        THE COURT:  HOW CAN MR. LEE SPEAK TO WHAT WAS IN

7   MR. CHOI'S MIND WHEN HE APPROVED THIS CLAIM?  HE COULDN'T.

8        MR. QUINN:  WELL, I THINK, YOUR HONOR, WHEN WE PRODUCE A

9   30(B)(6) WITNESS, WE'RE OBLIGATED TO EDUCATE THAT WITNESS ON THE

10  TOPIC, AND IN MY EXPERIENCE, THAT USUALLY MEANS GOING AROUND AND

11  ASKING PEOPLE AND LOADING UP THAT WITNESS WITH INFORMATION SO

12  THEY WILL BE RESPONSIVE.

13       THE COURT:  UNDER THAT STANDARD, ONE COULD AVOID ANY APEX

14  DEPOSITION BY SIMPLY DOWNLOADING THAT INFORMATION INTO THE

15  MIND -- INTO THE PERSON WHO'S BEEN DESIGNATED AS A WITNESS,

16  RIGHT?

17       MR. QUINN:  I WOULDN'T WANT TO EMBRACE THAT AS A RULE,

18  YOUR HONOR.  I'M JUST SAYING AT THIS TIME, CLOSE OF DISCOVERY,

19  GIVEN THE HISTORY, GIVEN THE FACT THAT WITH ALL THE DISCOVERY

20  THEY HAVE TAKEN, THEY HAVEN'T BEEN ABLE TO SHOW, AS TO THIS

21  DOCUMENT, ANYTHING OTHER THAN THE FACT THAT MR. CHOI WAS ON TOP.

22        THEN IF I COULD JUST SEGUE TO ANOTHER ISSUE ABOUT THIS

23  DOCUMENT.  WHAT IS THE BIG DEAL ABOUT THIS DOCUMENT?  THEY SHOW

24  YOU 2360.  THEY CALL THE COURT'S ATTENTION TO PAGE 23 --

25       THE COURT:  63.

1          MR. QUINN:  63, YOU KNOW, PUBLIC PICTURES, THE FIGURE

2   WITH THE IPHONE, MR. JOBS OUT THERE, AND THEY SAY, "WE WANT TO

3   HAVE A TOTAL EXPERIENCE."  I'M NOT -- SURELY APPLE IS NOT

4   CLAIMING THAT THEY OWN THE IDEA OF HAVING A TOTAL EXPERIENCE.

5          THERE'S NOTHING TECHNICAL HERE.  THERE'S NOTHING EXCEPT

6   THE MOST BROADEST, GENERAL KINDS OF STATEMENTS ABOUT HOW WE NEED

7   TO REORIENT OUR STRATEGY.  WE NEED TO THINK ABOUT THIS IN A

8   DIFFERENT WAY.

9          APPLE'S A COMPETITOR.  THERE SEEMS TO BE THIS IDEA OF

10  APPROACHING THE TOTAL EXPERIENCE TO THE PRODUCT IS A COMPELLING

11  ONE.  WE NEED TO LOOK AT THAT AND CONSIDER WHAT WE NEED TO THINK

12  IN TERMS OF THE USER'S EXPERIENCE.  THEY WAVE THIS ABOUT, BUT

13  WHEN WE THINK ABOUT IT, THIS IS A PATENT CASE, AND THERE'S

14  NOTHING IN THERE ABOUT THAT.

15         SO YOUR HONOR, AS TO THIS DOCUMENT, THAT'S MY -- YOU

16  KNOW, NOBODY TESTIFIED THAT MR. CHOI WAS THE AUTHOR OF THIS OR

17  HAD ANY INPUT INTO IT.  SO I DON'T THINK THIS DOCUMENT

18  JUSTIFIES, YOU KNOW, EXHIBIT 10 JUSTIFIES TAKING MR. CHOI'S

19  DEPOSITION OR EVEN COMES CLOSE.

20         THE COURT:  WHAT ABOUT THE DOCUMENT THAT SUGGESTS THAT

21  MR. CHOI GAVE SPECIFIC DIRECTION REGARDING THE GALAXY TAB 10.1?

22         MR. QUINN:  I WANT TO TALK ABOUT EVERY ONE OF THOSE.

23         THE COURT:  WHY ISN'T THAT SUFFICIENT?  LET'S TALK ABOUT

24  IT.

25         MR. QUINN:  CAN I GO IN THE ORDER, JUST BECAUSE I HAVE

CHRISTINE BEDARD, C.S.R.                    30

1   THEM IN THAT ORDER?

2        THE COURT:  SURE.

3        MR. QUINN:  HE REFERRED THE COURT TO REPLY EXHIBIT 8,

4   WHICH CONCERNS -- THE DOCUMENT -- AGAIN, THIS IS UNFORTUNATELY

5   UNDATED.  THERE ISN'T AN AUTHOR.  IT SAYS, "ALCON INSTRUCTIONS

6   FROM THE C.E.O."  BELOW THAT IT SAYS, "IMPROVE UEX," WHICH WE

7   UNDERSTAND TO MEAN USER EXPERIENCE.  LETTER SIZE IS WEIRD.  GOES

8   ON.  IT'S ON THE FIRST PAGE OF THE DOCUMENT.

9        THE COURT:  I HAVE IT.

10       MR. QUINN:  YOUR HONOR, IT IS A FACT THAT ALCON, IT'S

11  UNDISPUTED, IS NOT AT ISSUE IN THIS CASE.  IT'S A PHONE THAT WAS

12  ONLY RELEASED IN EUROPE.

13       WE GOT ENOUGH IN THIS CASE TO DEAL WITH WITHOUT --

14  APPLE MAKES ONE PHONE AT A TIME.  SAMSUNG MAKES LIKE 300,

15  CUSTOMIZES THEM FOR CUSTOMERS AND REGIONS AND ALL THE REST OF

16  IT.  WE GOT ENOUGH ON OUR HANDS DEALING WITH THE PRODUCTS THAT

17  ARE REALLY AT ISSUE.

18       ALCON, THE PRODUCT HERE JUST SIMPLY IS NOT AT ISSUE.

19  IT'S A RED HERRING.  BUT, AGAIN, BY THE WAY, TAKEN ON ITS OWN

20  TERMS LOOKING AT THE SUBSTANCE, IMPROVE USER EXPERIENCE,

21  REFERRING TO THE IPHONE 3G.  THIS IS A SENIOR EXECUTIVE SAYING,

22  "YOU OUGHT TO LOOK AT THIS."

23       THIS IS A FAR CRY FROM SOME DESIGNER, SOME TECHNICAL

24  PERSON THAT'S ACTUALLY GOING TO HAVE TO EXECUTE AND FIGURE OUT

25  HOW ARE WE GOING TO IMPROVE THE USER EXPERIENCE?  HOW DID WE

1    IMPROVE THE USER EXPERIENCE?  DID WE COPY SOMETHING FROM APPLE?

2    DID WE USE IT?

3          THIS IS THE KIND OF GENERALIZED STATEMENT WHICH I

4    SUBMIT DOESN'T -- CAN'T JUSTIFY TAKING A DEPOSITION OF SUCH A

5    SENIOR OFFICIAL.  THEN MR. MCELHINNY CALLED THE COURT'S

6    ATTENTION TO EXHIBIT 12, WHERE IT SAYS, "ATTACHED ARE THE

7    MINUTES OF A MEETING PRESIDED BY THE C.E.O. AND VICE CHAIRMAN

8    LAST SATURDAY."

9          AGAIN, YOUR HONOR, IF MR.-- IF MR. CHOI IS IN A ROOM OF

10   50 PEOPLE HE'S PRESIDING, YOU KNOW, HE'S -- IT'S NOT LIKE

11   HE'S -- THAT DOESN'T MEAN THAT HE'S CONDUCTING IT, DOING QS AND

12   AS.  THESE ARE MINUTES OF WHAT COMES OUT OF THE MEETING.

13         THEY HAVE AN OPPORTUNITY TO DEPOSE EVERYBODY WHO WAS IN

14   THAT MEETING AND HAD DEPOSED SOME OF THE PEOPLE WHO WERE IN THAT

15   MEETING.  THIS IS NOT -- TO SAY THAT HE WAS THERE, C.E.O.

16   PRESIDES.  I'VE SEEN ENOUGH OF THESE DOCUMENTS IN TRANSLATION

17   FROM KOREA AND HAVE SOME UNDERSTANDING ABOUT THE CULTURAL THING

18   ABOUT HIERARCHY.  THE SENIOR PERSON IN THE ROOM PRESIDES.  THAT

19   DOESN'T TELL US ANYTHING ELSE.

20         SHOULD A SITUATION WHERE THERE'S UNIQUE KNOWLEDGE ABOUT

21   WHAT WAS SAID THAT'S NOT AVAILABLE SOMEWHERE ELSE WHEN THEY HAD

22   ALL THE OTHER PEOPLE IN THE ROOM AND COULD QUESTION OTHER PEOPLE

23   AND DID QUESTION OTHER PEOPLE, I SUBMIT THAT DOESN'T MEET THE

24   STANDARD.

25         IN THEIR MOVING PAPERS -- AND I'M NOW MOVING BEYOND --

1    I THINK THOSE WERE THE THREE THAT MR. MCELHINNY ADDRESSED IN

2    THEIR MOVING PAPERS.  THEY ALSO REFER TO EXHIBIT 6, WHICH IS

3    FROM MR. SEUNG YUN LEE, AND HE SAYS -- HE'S REPORTING ON

4    SOMETHING ON THE LISMORE CONFERENCE YESTERDAY.

5         THE LISMORE IS A BETA OPERATING SYSTEM.  IT'S NOT AN

6    ANDROID POWER HAND-SET AT ALL; HAS NOTHING WHATSOEVER TO DO WITH

7    THIS CASE.  MR. LEE IS WRITING ABOUT THINGS THAT HE SAID AND

8    THINGS HE SAYS HE INTERPRETED THAT MR. CHOI SAID AT THIS MEETING

9    HAVING NOTHING TO DO WITH ANDROID POWER PHONES.  HE SAID THAT

10   MR. CHOI STRONGLY CRITICIZED SAMSUNG USER INTERPHASE'S MIND SET

11   AS CLINGING TO THE PAST GENERATION.

12        THIS IS A, YOU KNOW, VERY GENERAL COMMENT.  IT GOES ON

13   TO SAY THIS IS BEING INTERPRETED, I.E. MR. LEE INTERPRETS THIS,

14   AND IT GOES ON TO SAY HOW HE INTERPRETS IT AND HE SAYS, YOU

15   KNOW, "WE HAVE TO THINK -- WE HAVE TO MAKE ALL DECISIONS WITH

16   CONSIDERATION OF THE CONSUMER, NOT SUPPLIERS OR PROVIDERS.

17   THINK OF IT FROM THE STANDPOINT OF THE CONSUMER.  THE MOST

18   REPRESENTATIVE EXAMPLE IS, OBVIOUSLY, THE IPHONE."

19        THEN IT GOES ON TO SAY, "ALTHOUGH, OF COURSE, THIS MUST

20   BE A DISTINCTION FROM SAYING SIMPLY THAT WE SHOULD DO SOMETHING

21   BECAUSE IT HAS BEEN DONE THIS WAY FOR THE IPHONE."  DON'T DO IT

22   JUST BECAUSE APPLE'S DOING IT.  HE ALSO TOLD US TO MAKE

23   JUDGEMENTS BASED ON USER CONVENIENCE, RATHER THAN THROUGH LOGIC.

24        IT'S NOT ENOUGH, YOU KNOW, WE MUST LEARN FROM THE

25   IPHONE.  IT'S INSUFFICIENT TO PROVIDE GOOD FEATURES.  HIS

1    PROPOSAL IS LEARN THE WISDOM OF THE IPHONE, AND ACKNOWLEDGE THE

2    STANDARDS OF THE BUSINESS FIELDS ITS DEVELOPERS HAVE ALREADY

3    CREATED.  AND THIS IS WHAT THEY DON'T QUOTE TO THE COURT, "NOT

4    TO CREATE A UEX SIMILAR TO THE IPHONE. THINK ABOUT IT FROM THE

5    STANDPOINT OF THE USER."

6            I MEAN, ASSUMING THAT MR. LEE HAS CORRECTLY INTERPRETED

7    MR. CHOI'S COMMENTS, ON THE FACE OF IT, THESE ARE VERY BROAD

8    STATEMENTS ABOUT LOOK AT IT FROM THE OTHER END.  YOU GOT TO

9    RECAST YOUR THINKING.  LOOK HOW APPLE DOES IT, AND WE NEED TO

10   LOOK AT IT THAT WAY, BUT WE DON'T WANT TO HAVE A USER EXPERIENCE

11   LIKE THE IPHONE.

12           MR. CHOI IS NOT COPIED ON THIS.  HE'S NOT A RECIPIENT.

13   ON THE FACE OF IT BY ITS TERMS, IT'S SOMEBODY'S INTERPRETATION

14   OF WHAT HE SAID, AND SOME VERY GENERALIZED COMMENTS AT THAT.

15   AGAIN, IT CONCERNS A PHONE WITH -- DOESN'T HAVE AN ANDROID

16   OPERATING SYSTEM.

17           HE REFERRED THE COURT ALSO TO REPLY EXHIBIT 10 AND --

18   OH.  THE AUTHOR OF THIS WHO INTERPRETS IT, MR. SUNGSIK LEE, THEY

19   DID DEPOSE.  EXHIBIT 10, IN THE SECOND PAGE, BATES NUMBER 7801,

20   THEY CALL ATTENTION TO AN E-MAIL FROM A MR. WONCHEOL CHAE,

21   C-H-E-O-L, CHAE, C-H-A-E, AND HE SAYS, "I'M REPORTING ON THE

22   PRESIDENT'S INSTRUCTION DURING LUNCH," AND HE SAYS, "GOING

23   FORWARD, THIS IS WHAT THE AUTHORIZATION, GOING FORWARD, OUR

24   COMPARISON STANDARD IS THE APPLE IPHONE.

25           IN CASES OF HIGH-END PRODUCTS, WE MUST VALUATE THEM

1   BASED ON THE IPHONE STANDARDS AND DEVELOP PRODUCTS THAT ARE MORE

2   COMPETITIVE THAN THE IPHONE."  I'LL BET SOMEBODY HAS WRITTEN

3   MEMOS LIKE THAT IN NOKIA, MOTOROLA, EVERY HAND-SET MANUFACTURE

4   IN THE WORLD AND SAID, "WE GOT TO GET SOMETHING MORE COMPETITIVE

5   THAN THE IPHONE."

6           THIS IS A GENERALIZED KIND OF STATEMENT.  THIS IS NOT,

7   YOU KNOW -- THIS DOESN'T GET INTO PATENT INFRINGEMENT AND ISN'T

8   PROBATIVE OF PATENT INFRINGEMENT, AND IT'S A REPORT MADE BY

9   SOMEBODY ELSE ABOUT WHAT HE UNDERSTOOD MR. CHOI TO SAY.  IT'S

10  NOT MR. CHOI'S DOCUMENT.  THEY COULD HAVE DEPOSED THIS PERSON

11  WHO IS RELATING WHAT HE SAYS MR. CHOI SAID.  THEY CHOSE NOT TO

12  DO THAT.

13          DOES THAT MEAN THAT WE SHOULD, YOU KNOW, PRODUCE -- AT

14  THE END OF DISCOVERY, WE SHOULD PRODUCE A WITNESS RESPONSIBLE

15  FOR 190,000 EMPLOYEES?  I SUBMIT IT DOESN'T.

16          IN THE MOVING PAPERS, THEY CITE THE COURT TO EXHIBIT 9.

17  ACTUALLY, THIS IS IN THE REPLY.  THEY CITE EXHIBIT 9 FOR THE

18  PROPOSITION THAT, YOU KNOW, MR. CHOI GETS INTO SELECTING COLORS

19  FOR PHONES.  AND IF YOU LOOK AT IT, IF YOU TURN TO BATES NUMBER

20  PAGE 5548, THERE IS SOMEBODY WHO HAS WRITTEN, THE AUTHOR OF AN

21  E-MAIL, WHO I CAN -- IT LOOKS LIKE IT'S -- OKAY.

22          THE COURT:  HE'S TALKING ABOUT THE SAMSUNG SWAY?

23          MR. QUINN:  HE IS.

24          THE COURT:  LET ME ASK YOU THIS, MR. QUINN.  IF THOSE

25  DOCUMENTS WERE ADDRESSING PRODUCTS AT ISSUE, WOULD YOU AGREE

1    THAT THAT WOULD BE SUFFICIENT TO TRIGGER AN OBLIGATION UNDER

2    RULE 30?

3          MR. QUINN:  I DON'T THINK SO, YOUR HONOR.  IF HE WAS

4    SAYING I LIKE CHARCOAL GRAY, I DON'T -- I DON'T KNOW THAT

5    THERE'S ANY ALLEGATION IN THIS COMPLAINT THAT, YOU KNOW, GRAY

6    COLORS LIKE THAT WERE COPIED.

7          THE COURT:  SO YOUR POINT ISN'T REALLY SO MUCH THAT THE

8    EVIDENCE TENDERED BY APPLE TO DATE ADDRESSES PRODUCTS NOT AT

9    ISSUE, IT'S THAT THE LEVEL OF DETAIL IN THE DISCUSSION IS SO

10   GENERAL, SO GENERIC THERE'S NO INDICIA THAT HE HAS ANY SPECIFIC

11   RESPONSIBILITIES ABOUT WHICH HE HAS UNIQUE KNOWLEDGE; IS THAT

12   FAIR?

13         MR. QUINN:  WITH RESPECT TO THAT, I WOULD LIKE TO EMBRACE

14   BOTH POINTS.

15         THE COURT:  ALL RIGHT.

16         MR. QUINN:  I THINK BOTH ARE TRUE.  WE'RE GOING TO LOOK

17   AT EACH ONE OF THESE THINGS THEY CITE, WITH THE COURT'S

18   PERMISSION, AND I THINK YOU'LL SEE THEY ARE VERY, VERY GENERAL.

19   AND IN MANY CASES, EVEN IF THERE WAS SOME DISPUTE ABOUT THE

20   LEVEL OF GENERALITY, THEY CONCERN OTHER OF THE OTHER 300-PLUS

21   PHONES.

22         THE COURT:  YOU MAY BE GETTING TO THIS, BUT I AM STILL

23   INTERESTED IN YOUR EXPLANATION FOR MR. CHOI'S DIRECTION

24   REGARDING THE HOW SLIM OR HOW NOT SLIM THE TAB 10.1 IS, WHY THAT

25   DOESN'T INDICATE THAT HE HAS A LEVEL OF INVOLVEMENT THAT IS

1      SUFFICIENT TO TRIGGER AN OBLIGATION.

2           MR. QUINN:  YOUR HONOR, IF I DON'T ADDRESS THAT, I'M --

3      I'M PRETTY CONFIDENT THAT'S GOING TO BE IN MY STACK HERE.

4           THE COURT:  I'M JUST TELLING YOU THAT'S THE ONE I'M

5      FOCUSED ON.

6           MR. QUINN:  OKAY.  IS THE COURT -- IS IT HELPFUL TO THE

7      COURT FOR ME TO GO THROUGH THE OTHER DOCUMENTS?

8           THE COURT:  SURE.  THE TIME IS YOURS.  I'LL GIVE

9      MR. MCELHINNY A CHANCE TO RESPOND.

10          MR. QUINN:  ALL RIGHT.  THEY CITE ALSO TO EXHIBIT 13,

11     WHICH IS -- AND THIS REFERS TO SLIM DESIGN.  IT SAYS, "MEETING

12     WITH G.S. CHOI ON GALAXY TAB SLIM DESIGN," AND WE'RE GETTING TO

13     WHAT I TAKE IT THE COURT IS INTERESTED IN.

14          AND THERE IS A COMMENT HERE YOU'LL SEE UNDER THAT ABOUT

15     VARIOUS FEATURES, CHANGE THE CAMERA, THE NUMBER OF MEGAPIXELS

16     NOT AT ISSUE IN THIS CASE.  SOMETHING ABOUT THE TOUCH QWERTY,

17     AND THERE'S A COMMENT FROM G.S. CHOI, "DROP THIS MODEL."

18          EACH ONE OF THESE THINGS, THERE IS -- CERTAIN FEATURES

19     THAT ARE NOT AT ISSUE IN THIS CASE.  THE PEOPLE LISTED HERE SAYS

20     ATTENDEES, G.S. CHOI, J.K. SHIN, D.J. LEE -- D.J. LEE IS AN

21     EXECUTIVE VICE PRESIDENT.  SENIOR PERSON IN THIS MEETING.  THEY

22     DEPOSED HIM.  OKAY?  W.P. HONG, HE'S ONE OF THE ONES WE'RE GOING

23     TO GET TO.  HE'S ONE OF THE SIX, AND THEN IT SAYS, Y.S. LEE PLUS

24     R&D, EVP AND VPS.  BUNCH OF PEOPLE.

25          SO UNIQUE KNOWLEDGE?  THIS IS SOMEBODY REPORTING ABOUT

1    A DISCUSSION THAT TOOK PLACE IN A MEETING.  INFORMATION THAT'S

2    NOT AVAILABLE ELSEWHERE?  I SUBMIT NOT ONLY IS IT AVAILABLE

3    ELSEWHERE, THEY HAD THE CHANCE TO ASK WITNESSES ABOUT THIS.  HE

4    HAS NO UNIQUE KNOWLEDGE.

5           THEY CITE TO, IN THE REPLY, TO EXHIBIT 5, WHICH IS A

6    SET OF SLIDES, WHICH THIS IS A NEW PARTNERSHIP BETWEEN VERIZON

7    WIRELESS AND SAMSUNG, AND THESE ARE A SET OF SLIDES FOR A

8    PRESENTATION THAT WAS MADE BY A CARRIER TO SAMSUNG.

9           AND IT REFERS TO THE FACT MERCHANDISE, THE SLIDES, IT

10   SAYS, AND APPLE REFERS TO THIS, IT'S PAGE 2861, THE CHALLENGE --

11   "THE IPHONE CHALLENGE POTENTIAL TO PICK UP SHARES IN THE

12   HIGH-END MARKET AND USER INTERFACE MAY DRIVE A NEW EXPECTATION

13   FROM CONSUMERS."  THAT'S IT.

14          THESE -- THESE ARE VERY GENERAL COMMENTS.  MR. CHOI IS

15   NOT TIED TO THESE SLIDES AT ALL.  NAME ISN'T ON IT.  NO WITNESS

16   HAS TIED HIM TO IT.  THEIR ARGUMENT, QUITE LITERALLY IN THE

17   REPLY BRIEF BECAUSE OF THIS POSITION, HE MUST HAVE KNOWN ABOUT

18   THIS PRESENTATION TO VERIZON.

19          I SUBMIT THAT'S NOT ENOUGH.  IF IT WERE, YOU KNOW,

20   THESE ARE HIGHLY-GENERAL COMMENTS THAT REALLY DON'T JUSTIFY

21   REQUIRING THE MAN TO APPEAR FOR DEPOSITION.  THEY RELY ON

22   EXHIBIT 11.  THIS IS ONE THAT ADDRESSES THE ISSUE ABOUT THE

23   THINNESS OF THE IPAD.  MR. CHOI'S NAME NOWHERE APPEARS ON THE

24   DOCUMENT.

25          WHAT IT SAYS IS THAT HE, AGAIN -- AND YOU SEE THIS WORD

1    TIME AND AGAIN IN THE TRANSLATIONS, HE PRESIDED AT A MEETING

2    ATTENDED BY A HOST OF OTHER PEOPLE.  THERE'S NOTHING TO SUGGEST,

3    NOTHING AT ALL TO SUGGEST, NO TESTIMONY AFTER EVERYTHING WE'VE

4    DONE, ALL THE DISCOVERY WATER UNDER THE BRIDGE, THERE'S NOTHING

5    TO SUGGEST THAT HE ORIGINATED THE IDEA OR IMPLEMENTED THE IDEA.

6          AGAIN, IT COMES DOWN TO HE'S AT THE TOP.  THAT'S THE

7    BEST ARGUMENT THEY CAN MAKE, AND I SUBMIT UNDER THE CASES, THE

8    DOBLE CASE, THE AFFINITY CASE, THE WEBSIDE STORY CASE, THAT'S

9    NOT ENOUGH.  THE FACT THAT SOMEBODY IS AT THE TOP AND IS THE

10   ULTIMATE DECISION MAKER IS NOT ENOUGH TO REQUIRE AN APEX WITNESS

11   BE DEPOSED.

12         THERE ARE LOTS OF NAMES HERE.  THEY COULD DEPOSE

13   PEOPLE, ANY ONE OF THESE OTHER NAMES, AND HAVE QUESTIONED

14   WITNESSES AD NAUSEAM ABOUT THE CHANGE TO THE THINNESS OF THE

15   TABLET.  THIS IS NOT -- THIS DOCUMENT IS NOT JUSTIFICATION FOR

16   REQUIRING MR. CHOI TO APPEAR.

17         FINALLY, THE LAST DOCUMENT THEY REFER TO IS REPLY

18   EXHIBIT 12, WHICH IS REFERRED TO AS THE SEGMENTATION 2.0.  IT'S

19   DATED MARCH 2010, RESULTS OF GLOBAL SEGMENTATION 2.0 STORY.  IN

20   THIS DOCUMENT, THEY CITE TO THE LANGUAGE APPEARING ON 6651.

21         IT SAYS, "MAIN COMMENTS FROM TOP MANAGEMENT.  FEEDBACK

22   FROM HEAD OF DIVISION.  IT IS IMPORTANT TO EXTRACT A GLOBAL

23   COMMON DENOMINATOR THAT CAN BE APPLIED IN ALL REGIONS.

24   SAMSUNG'S STRATEGY, IF WE FIND COMMON DENOMINATORS, WE CAN SELL

25   THEM AROUND THE WORLD.  ONLY THEN WE TOO CAN PLAN AND LAUNCH A

1    PRODUCT LIKE THE IPHONE."

2           A VERY GENERAL, I SUBMIT, INNOCUOUS STATEMENT THAT

3    ISN'T -- DOESN'T CALL FOR DEPOSING MR. CHOI BECAUSE SOMEBODY

4    SAID THAT HE MADE -- THAT HE MADE THESE COMMENTS.  IT'S AN

5    EXTREMELY HIGH-LEVEL, GENERALIZED COMMENT.  THIS WAS -- THE

6    TESTIMONY IS THEY DEPOSED DONG HOON CHANG, WHO IS A SENIOR

7    VICE PRESIDENT, AND QUESTIONED HIM ABOUT THIS VERY DOCUMENT.

8           SO THEY CAN'T MEET THE STANDARD.  IF THEY WANT TO KNOW

9    WHAT THE GLOBAL DENOMINATOR WAS AND WHAT WE PEOPLE UNDERSTAND IT

10   TO BE, THERE WAS AN OPPORTUNITY TO DO.

11          SO I THINK I HAVE GONE THROUGH ALL THE DOCUMENTS, ALL

12   THE BASES, IN TERMS OF THE EXHIBITS THAT THEY HAVE CITED IN

13   THEIR MOVING PAPERS AND REPLY BRIEF, FOR REQUIRING MR. CHOI TO

14   APPEAR FOR DEPOSITION.  HAPPY TO RESPOND TO ANYTHING ELSE ON

15   THAT ISSUE.

16          THE COURT:  I THINK I UNDERSTAND YOUR POSITION.

17   THANK YOU, MR. QUINN.  MR. MCELHINNY, WE'LL RETURN TO MR. SHIN.

18          MR. MCELHINNY:  JUST BRIEFLY, AS THEY SAY.

19          THE COURT:  THAT'S WHAT THEY SAY, ISN'T IT?

20          MR. MCELHINNY:  YES, IT IS.  FIRST, I DON'T WANT TO LOSE

21   THIS BECAUSE IT'S GOING TO COME UP AGAIN.  MY GOOD FRIEND

22   MR. QUINN SAID SOMETHING THAT SHOULD RESONATE IN THIS COURTROOM,

23   WHICH HE SAYS WE ARE OBLIGATED TO PRODUCE A 30(B)(6) WITNESS AND

24   TO EDUCATE HIM SO THAT THAT WITNESS CAN TESTIFY ON THE ISSUES.

25   WE ARE GOING TO COME BACK TO THAT ISSUE SPECIFICALLY ON THE

1    SANCTIONS MOTION.

2              TWO, I WANT TO POINT OUT THAT THIS IS NOT JUST A PATENT

3    CASE.  IT'S A TRADE DRESS CASE.  TOTAL EXPERIENCE SPEAKS EXACTLY

4    TO TRADE DRESS.  IT SPEAKS EXACTLY TO THOSE ISSUES, SO IT'S NOT

5    JUST A PATENT CASE.

6              AND THIRD, I WANT TO POINT OUT THE INTENTIONS IN

7    SAMSUNG'S ARGUMENT.  THEY ARGUE WE HAD TO DEPOSE EVERYBODY IN

8    THE COMPANY BEFORE WE COULD GET TO THESE PEOPLE, BUT THEN THEY

9    ARGUE WE DIDN'T GET TO THEM UNTIL THE END OF DISCOVERY.

10   FORTUNATELY WE HAVEN'T HAD TO ARGUE.  THE PAPERS CONTAIN THE

11   MEET AND CONFER AND --

12             THE COURT:  I'M AWARE OF IT.

13             MR. MCELHINNY:  -- HERE WE ARE AT THE END OF DISCOVERY

14   TRYING TO GET THE DEPOSITIONS.  THE OVERALL -- UNLESS I MISSED

15   IT, UNLESS I MISSED IT, MR. QUINN WENT THROUGH EVERY DOCUMENT

16   THAT WAS CITED EXCEPT FOR THE ONE THAT YOUR HONOR ASKED HIM TO

17   TALK ABOUT SPECIFICALLY, WHICH IS EXHIBIT 12, WHICH IS THE

18   MEETING THAT IS CALLED THE C.E.O. REVIEW MINUTES MEETING WHERE

19   THE SPECIFIC DIRECTIONS WERE MADE.  THAT'S THE MARCH 6, 2011

20   E-MAIL.  SPECIFIC DIRECTIONS TO MAKE THE IPAD.

21             MR. QUINN:  I DISCUSSED THAT.

22             THE COURT:  I RECALL YOUR COMMENTS.

23             MR. MCELHINNY:  I'M GOING TO MAKE A GENERALIZED STATEMENT

24   LIKE THIS, WHICH IS, WHAT YOU'VE HEARD IS WHAT YOU'RE GOING TO

25   BE LEFT WITH IF WE DON'T GET TO TALK TO A WITNESS.  WHAT YOU

1    HEARD ARE CLOSING ARGUMENTS.

2            DOCUMENTS THAT SAY, "MAKE SOMETHING THAT HAVE THE TOTAL

3    EXPERIENCE.  MAKE IT THINNER.  MAKE IT LOOK LIKE THE IPHONE 3GS.

4    IMPROVE USER EXPERIENCE BY REFERRING TO THE IPHONE 3GS."  IF WE

5    DON'T GET TO ASK WHAT HE MEANT, WHAT HE WAS SAYING, WHY HE SAID

6    THAT, THEN AT TRIAL WE'RE GOING TO HAVE MR. QUINN'S ARGUMENTS

7    ABOUT, "THIS IS GENERIC AND GENERAL AND WASN'T IN THE CONTEXT OF

8    THIS" AND WHATEVER, AND THAT'S NOT FAIR.

9            I MEAN, JUST THE FACT THAT WE HAD TO GO THROUGH SO MANY

10    DOCUMENTS THAT TALK ABOUT MR. CHOI AND THE ROLE THAT HE PLAYED

11    IN THIS, AGAIN, WITHOUT HAVING HIS TESTIMONY IS AN EVIDENCE OF

12    THE FACT, THE WAY I INTERPRET IT, IF YOUR HONOR'S PLAYING A

13    GATE-KEEPING ROLE HERE, TO DETERMINE IF IT'S FAIR TO IMPOSE SOME

14    NUMBER OF HOURS OF DEPOSITION ON MR. CHOI'S IN ORDER FOR US TO

15    BE ABLE TO GET THE TRUTH, OR AT LEAST TESTIMONY UNDER OATH, I

16    THINK THE ANSWER IS THAT IT CLEARLY IS, BECAUSE THERE ARE SO

17    MANY OF THESE SPECIFIC DOCUMENTS THAT REQUIRE SOMEONE TO

18    TESTIFY.

19            AND THE LAST THING, THEY KEEP SAYING THAT WE GOT

20    MR. LEE.  I'M GOING TO REFER YOUR HONOR TO PAGE 9 -- OH, PAGE 9

21    WHERE WE QUOTE WHAT MR. LEE SAID AND SAID IT WAS ABOVE HIS PAY

22    GRADE TO MAKE THESE DECISIONS AND HE DIDN'T UNDERSTAND THEM.  HE

23    ATTENDED THE MEETINGS BUT COULDN'T REMEMBER THEM.

24            WE HAVE LITIGATED THIS ISSUE ABOUT WHETHER OR NOT THE

25    DEPONENTS THAT WE GOT MAKE IT UNNECESSARY TO TAKE MR. CHOI'S

1    DEPOSITION.

2              THE COURT:  WHY DON'T WE TURN TO MR. SHIN.

3              MR. MCELHINNY:  MR. SHIN IS THE HEAD OF MOBILE

4    COMMUNICATIONS.  IN 2007, HE WAS THE HEAD OF THE R&D GROUP FOR

5    MOBILE PHONES.  THERE ARE TWO -- THERE'S ONE KEY DOCUMENT AND A

6    NUMBER OF THINGS THAT WE WERE TOLD IN DEPOSITIONS THAT ARE

7    IMPORTANT.

8              OH, I'M SORRY.  THE ALCON DOCUMENT THAT MR.-- THAT I

9    MENTIONED AND THAT MR. QUINN -- IS IN THE MAZZA REPLY EXHIBIT 8,

10   THE KEY DOCUMENT FROM MR. SHIN THAT WE'VE BEEN ABLE -- THAT WAS

11   PRODUCED TO US IS, AGAIN, A MEETING WITH ALL OF THE HEAD

12   DESIGNERS IN 2010.

13             THE COURT:  THIS IS THE SHARP-CORNERS DOCUMENT?

14             MR. MCELHINNY:  NO, THIS IS THE CRISIS-OF-DESIGN

15   DOCUMENT, AND IT IS EXHIBIT 9 TO THE MAZA DECLARATION.  AND IN

16   THIS, THIS WAS A DIRECTIONAL MEETING TO ALL OF THE HEAD

17   DESIGNERS OF ALL OF THE PRODUCTS IN 2010 TALKING ABOUT THE

18   PROBLEMS THE IPHONE -- THAT SAMSUNG WAS HAVING.

19             HE EXPRESSLY COMPARES, HE SAYS -- AN IMPORTANT QUOTE IN

20   AND OF ITSELF, HE HAS -- THE VENDORS ARE SAYING TO HIM, "MAKE

21   SOMETHING LIKE THE IPHONE."  THAT'S THE FEEDBACK THAT HE'S

22   GETTING FROM THE MARKET.

23             HE COMPARES A PRODUCT CALLED THE OMNIA AND THE USER

24   EXPERIENCE, COMPARES IT DIRECTLY WITH THE IPHONE, AND HE SAYS

25   THE DIFFERENCE IS, IT'S THE DIFFERENCE BETWEEN HEAVEN AND EARTH

1    IN TERMS OF THESE DIRECTORS.

2            AND THEN HE SAYS -- WELL, I'M QUOTING.  I DON'T KNOW

3    HOW TO DO THIS, BUT HE MENTIONS IT'S A CRISIS OF DESIGN, AND HE

4    SAYS, "THE IPHONE EMERGENCE MEANS THE TIME WE HAVE TO CHANGE OUR

5    METHOD HAS ARRIVED."  A DIRECT INSTRUCTION TO DESIGNERS ABOUT

6    THE IMPORTANCE OF THE IPHONE AND THE NEED AT SAMSUNG TO CHANGE

7    THEIR DESIGN METHOD IN ORDER TO MATCH IT.  THIS IS THE -- THIS

8    IS SORT OF THE KEY DOCUMENT.

9            IN ADDITION, HOWEVER, HERE'S VERY SPECIFIC, WE CITED IN

10   PAGE 11 OF OUR REPLY BRIEF, MR. SHIN DIRECTLY ORDERED SAMSUNG'S

11   PACKAGING PEOPLE TO CHANGE SAMSUNG'S PACKAGING TO "THE IPHONE

12   STYLE."

13           THE COURT:  THIS IS WITH RESPECT TO GALAXY X --

14           MR. MCELHINNY:  YES.

15           THE COURT:  -- WHICH IS AN ISSUE IN THIS CASE?

16           MR. QUINN:  IS THERE AN EXHIBIT?

17           MR. MCELHINNY:  IT'S A QUOTE FROM PAGE 11 OF OUR REPLY.

18   THIS IS A QUOTE FROM EXHIBIT 11.

19           MR. QUINN:  EXHIBIT 11.  THANK YOU.

20           MR. MCELHINNY:  REPLY EXHIBIT 11.  YOUR HONOR OBVIOUSLY

21   HAS READ THE PAPERS.  AND WE HAVE A DIRECTION TO CHANGE THE

22   SHAPE OF THE CORNER.  THE SHAPE OF THE CORNER IS AN ISSUE ABOUT

23   WHETHER OR NOT THE CORNERS ARE EXACTLY SHAPED.  WE HAVE

24   DEPOSITION TESTIMONY POINTING OUT THAT MR. SHIN IS WHO

25   ULTIMATELY WAS MAKING DECISIONS.

1          I MEAN, I TAKE IT THAT HE SUPERVISES 68,000.  I TAKE IT

2     THAT THAT'S TRUE.  BUT HE'S DESIGNING THE CORNERS OF THEIR

3     DEVICES, AND HE'S DOING IT IN RESPONSE TO MARKET PRESSURE WHICH

4     IS TELLING HIM TO MAKE THEIR PRODUCTS LIKE THE IPHONE.

5          THE COURT:  ALL RIGHT.  THANK YOU, MR. MCELHINNY.

6     MR. QUINN.

7          MR. QUINN:  MOVING ON TO MR. SHIN.  SO MR. MCELHINNY TOLD

8     US THAT EXHIBIT 9 IS THE KEY DOCUMENT AND IT'S REALLY WORTH

9     TAKING A LOOK AT THAT AND COMMENTS THERE THAT MR. SHIN IS

10    REPORTED TO HAVE MADE.

11          MR. SHIN USES SOME COLORFUL LANGUAGE ABOUT, YOU KNOW,

12    IT'S THE DIFFERENCE BETWEEN, THE OMNIA PHONE AND THE IPHONE, IS

13    HEAVEN AND EARTH.  THAT IT'S A CRISIS OF DESIGN.  THESE ARE KIND

14    OF VERY GENERAL REMARKS, YOUR HONOR.

15          I WOULD REFER THE COURT ON THIS POINT TO THE DOBLE

16    CASE, WHICH INVOLVED A C.E.O. AND IT INVOLVED THE SETTLEMENT OF

17    A CLAIM, AND THE C.E.O. IN THAT ACTUALLY TOLD HIS PEOPLE, "LOOK,

18    YOU GOT TO GET THIS CASE SETTLED.  ENOUGH IS ENOUGH.  YOU GOT TO

19    GET IT DONE;" YOU KNOW, "WORK HARDER."

20          AND THEN HE SIGNED A SETTLEMENT DOCUMENT OR SOMETHING,

21    AS I RECALL, AND THE COURT SAID THAT'S NOT ENOUGH.  THESE KIND

22    OF GENERALIZED HORTATORY COMMENTS ARE NOT ENOUGH TO SHOW UNIQUE

23    KNOWLEDGE, FIRST-HAND KNOWLEDGE THAT WOULD JUSTIFY REQUIRING AN

24    APEX WITNESS TO APPEAR FOR DEPOSITION.

25          LOOK AT THE DOCUMENT THAT MR. MCELHINNY TELLS US IS THE

1    KEY DOCUMENT.  THERE'S NOTHING THERE, OTHER THAN THE MOST

2    GENERAL KIND OF HORTATORY LANGUAGE.  "GUYS, THERE'S A CRISIS.

3    YOU'RE GOING TO GET YOUR LUNCH EATEN.  IT'S THE DIFFERENCE

4    BETWEEN HEAVEN AND EARTH."  HE DOESN'T GET INTO ANYTHING BEYOND

5    THAT.  NEVER DISTENDS BEYOND THAT LEVEL.

6         I DO APPRECIATE THAT MR. MCELHINNY CORRECTED WHAT THEY

7    SAY IN THEIR BRIEF, THEY ASSERT THAT MR. SHIN SAID WE NEED TO

8    MAKE SOMETHING LIKE THE IPHONE, WHEN, IN FACT, IT'S ACTUALLY

9    CLEAR THAT MR. SHIN IS RELATING A CONVERSATION THAT HE HAD WITH

10   A CARRIER IN QUOTING THE CARRIER TO THE EFFECT THAT, "WE NEED TO

11   MAKE SOMETHING LIKE THE IPHONE."

12        THERE'S NO -- THAT STATEMENT IS NOT MADE BY MR. SHIN.

13   I THINK THAT LINES UP, IF ANYTHING WITH THE DOBLE CASE, THE

14   EVIDENCE THERE ABOUT THE C.E.O.S INVOLVEMENT, WHICH THE COURT

15   FOUND INSUFFICIENT, WAS MUCH MORE EXTENSIVE THAN WHAT YOU SEE

16   THERE.

17        THE COURT:  BUT IN THAT CASE, THE EXECUTIVE WAS NOT

18   GIVING DIRECTION TO THE DESIGN SHAPE OF CORNERS ON A PRODUCT.

19   SO HOW DO YOU SQUARE THAT WITH WHAT APPEARS TO BE A SPECIFIC

20   DESIGN DIRECTIVE IN THIS CASE?

21        MR. QUINN:  WELL, YOUR HONOR, WE'LL TALK ABOUT THAT.  I

22   GOT THOSE IN MY STACK, BUT WHAT I THINK YOU HAVE ARE GENERALIZED

23   REMARKS BASICALLY ABOUT PRODUCTS THAT ARE NOT AT ISSUE IN THIS

24   CASE.

25        THE COURT:  THE GALAXY S IS AT ISSUE.

1          MR. QUINN:  YES, THE GALAXY S IS AT ISSUE, BUT YOU HAVE A

2     VERY GENERALIZED COMMENT.  HE'S NOT A DESIGNER.  SOMEBODY HAS

3     QUOTED HIM AS SAYING YOU OUGHT TO MAKE THE CORNERS LESS SHARP OR

4     SOMETHING LIKE THAT.  STILL VERY HIGH-LEVEL KIND OF REMARK, I

5     WOULD SUBMIT.

6          THEY RELY ON PAPERS IN EXHIBIT 14, WHERE A MR. JUNHO

7     PARK FORWARDS A SPEECH WHICH MR. SHIN MADE ABOUT MARKET

8     CONDITIONS AND SAYING THAT, YOU KNOW, "THIS IS AN OPPORTUNITY

9     THAT WE CAN'T MISS.  WE CAN'T MISS THIS OPPORTUNITY FOR SMART

10    PHONES."  VERY, VERY GENERAL KINDS OF COMMENTS.

11         THEY RELY ON EXHIBIT 17, WHERE, AGAIN, MR. SHIN HAS

12    SAID TO HAVE MADE SOME REMARKS, INCLUDING MODIFYING THE SHAPE OF

13    A CORNER.  THIS IS, ABOUT THE CETUS PRODUCT, C-E-T-U-S,

14    UNDISPUTED.  THAT'S NOT AT ISSUE IN THIS CASE.  THE CETUS DESIGN

15    IS NOT AT ISSUE.

16         THEY RELY ON EXHIBIT 14, WHICH ARE -- ATTACHES DESIGN

17    MEETING MINUTES REPORTED TO THE HEAD OF DIVISION.  THIS IS A

18    REPORT TO MR. SHIN.  AND INTERESTINGLY, THE PEOPLE COPIED ON

19    THAT INCLUDE MR. SEOGGUEN KIM AND VICE PRESIDENT MINHYOUK LEE,

20    BOTH OF WHICH HAVE BEEN DEPOSED.  SO, AGAIN, ALTERNATIVE SOURCES

21    OF INFORMATION.

22         THE PRODUCTS DISCUSSED THERE, STEALTH TWO, THE COOPER

23    SUCCESSOR.  THE OTHERS, NOT AT ISSUE IN THIS CASE.  THEY RELY ON

24    EXHIBIT 17 CONCERNING THE LOGO AND THEY CITE FOR THE PROPOSITION

25    THAT HE -- THAT MR. SHIN INSTRUCTED THAT THE LOCATIONS OF THE

1    LOGO ON THE PRODUCT BE CHANGED.

2            THERE'S NOTHING THAT SAYS THAT THIS WAS MR. SHIN'S

3    IDEA.  THEY COULD QUESTION THE RECIPIENT OF THE E-MAIL.  I MEAN,

4    THE AFFINITY CASE RELATED TO VERY EXTENSIVE REMARKS THAT

5    MR. JOBS HAD MADE PUBLICLY, NOT JUST CASUAL ISOLATED, BUT IN THE

6    OPINION, THE COURT ACTUALLY QUOTES VERY EXTENSIVE REMARKS.  THE

7    COURT SAID THAT'S NOT ENOUGH TO DEPOSE MR. JOBS.  THERE'S OTHER

8    PEOPLE YOU CAN DEPOSE IN THE COMPANY TO UNDERSTAND WHAT WAS

9    MEANT BY THAT.  AND I THINK THAT APPLIES EQUALLY WELL HERE.

10           REPLY, ON 16, COMMENTS ON COLOR, IT SAYS REALLY THE

11   STATEMENT IS ITSELF, AND I QUOTE FROM BATES NUMBER 1078, "YOU'RE

12   ALWAYS INTERESTED IN THE DESIGN AND ALWAYS INSTRUCT YOU TO

13   CREATE THE MOST COMPETITIVE COLOR AND DESIGN."

14           GENERALIZED COMMENT THAT I THINK FOLLOWS UNDER THE

15   DOBLE STANDARD.  THAT ISN'T SUFFICIENT.  EXHIBIT 18 RELATING TO

16   PACKAGING, IT SAYS, YOU KNOW, HERE'S A REPORT CONCERNING THE

17   OKAY TO PACKAGE TO J.K. SHIN.  MR. SHIN REQUESTED TO CHANGE THE

18   GALAXY S PACKAGE DESIGN TO IPHONE STYLE AND CHANGE THE MATERIAL

19   AS A NORMAL BLACK PAPER.

20           HIS -- HIS -- MR. SHIN'S NAME IS NOT ON THIS DOCUMENT.

21   HE'S NOT COPIED ON IT.  IT'S SOMEBODY ELSE'S ACCOUNT, AND, YOU

22   KNOW, THERE ISN'T A CLAIM IN THIS CASE, AS I UNDERSTAND IT, FOR

23   INFRINGEMENT WITH REGARD TO PACKAGING ITSELF.  I MEAN, THERE

24   ISN'T A CLAIM REGARDING TRADE DRESS AS TO PACKAGING, IN MY

25   UNDERSTANDING.

1          I COULD GO THROUGH THE REST OF THESE.  THEY CITE

2    EXHIBIT 13.  AGAIN, THAT CONCERNS PRODUCTS THAT ARE NOT AT

3    ISSUE.  THE VITAL 2 IS NOT AT ISSUE IN THIS CASE.  YOU KNOW,

4    THEY CITED EXHIBIT 19 FOR THE PROPOSITION THAT IT GAVE

5    INSTRUCTION ABOUT CHANGING THE CORNER.

6          AND I -- FOR THE LIFE OF ME, IT'S THE SPREADSHEET THAT

7    LOOKS LIKE A SCHEDULE.  I COULDN'T FIND IT IN THERE, ANY

8    REFERENCE TO CHANGE -- THERE'S COMMENTS ABOUT PACKAGING AND

9    VISUALS, BUT I COULDN'T SEE ANYTHING -- AND ABOUT THE BOX SIZE.

10   CHANGE THE BOX SIZE.  THERE'S NOTHING IN THIS CASE ABOUT BOX

11   SIZE, AS I UNDERSTAND IT.  I CAN'T SEE ANYTHING IN EXHIBIT 19

12   THAT DEALS WITH ROUNDED CORNERS OR SHARP CORNERS.

13         SO I THINK IF YOU ACTUALLY GO THROUGH SPECIFICALLY WHAT

14   THE EVIDENCE SAYS THAT HAS BEEN CITED, YOUR HONOR, THIS ISN'T A

15   SITUATION -- THEY HAVEN'T CITED ANYTHING WHERE IT SAYS THIS

16   GENTLEMAN HAS UNIQUE KNOWLEDGE THAT WOULDN'T BE AVAILABLE

17   ELSEWHERE.

18         THE COURT:  MR. QUINN, I HAVE ONE QUESTION, AND I

19   RECOGNIZE APPLE'S PAPERS, TO MY KNOWLEDGE, DON'T SPEAK TO THIS

20   ISSUE, BUT CERTAINLY MR. SHIN IS A GOOD EXAMPLE OF A WITNESS WHO

21   MIGHT HAVE VERY IMPORTANT AND UNIQUE INFORMATION RELEVANT TO ANY

22   INJUNCTION THAT JUDGE KOH MIGHT ENTER AT THE CONCLUSION OF THIS

23   CASE.

24         HOW COULD THAT CIRCUMSTANCE ALONE NOT JUSTIFY AT LEAST

25   A LIMITED DEPOSITION IN TERMS OF THE IMPACT OF AN INJUNCTION AS

1    PROPOSED BY APPLE?  HE'S THE MAN IN CHARGE OF THE BUSINESS, SO

2    WHY WOULDN'T THAT BE ENOUGH TO TRIGGER A DEPOSITION?

3         MR. QUINN:  I THINK THERE ARE A LOT OF PEOPLE THAT

4    COULD -- I MEAN, IT'S AN INTERESTING QUESTION, YOUR HONOR.  I

5    MEAN, I WOULD ASSUME THAT IF THE COURT WERE GOING TO CONSIDER

6    ISSUING AN INJUNCTION, THERE WOULD BE AN OPPORTUNITY TO

7    INDUCE --

8         THE COURT:  FURTHER DISCOVERY.

9         MR. QUINN:  POTENTIALLY, POTENTIALLY.  THEY -- THEY HAVE

10   DEPOSED LOTS AND LOTS -- AND WE'LL GET TO THE C.F.O. OF SAMSUNG

11   AMERICA AND THE C.E.O. OF SAMSUNG AMERICA.  THERE HAVE BEEN

12   30(B)(6) WITNESSES ON MARKET AND NUMBERS AND VOLUMES OF SALES

13   AND THINGS THAT BEAR ON THAT.

14         IT'S HARD FOR ME TO SEE IF THE COURT IS THINKING IN

15   TERMS OF THE RELATIVE HARDSHIP WHAT AN INJUNCTION WOULD MEAN,

16   IT'S HARD FOR ME TO SEE WHAT MR. SHIN WOULD ADD.

17         I MEAN, THE NUMBERS ARE WHAT THEY ARE IN TERMS OF WHAT

18   THE SALES ARE AND THAT INFORMATION IS OUT THERE.  I DON'T THINK

19   APPLE CLAIMS OTHERWISE.

20         THE COURT:  ALL RIGHT.  I THINK I UNDERSTAND YOUR

21   POSITION.  THANK YOU.  ANY REBUTTAL BEFORE WE TURN TO THE THIRD

22   WITNESS?

23         MR. MCELHINNY:  TWO BRIEF POINTS.  THESE MOTIONS OVERLAP,

24   I REALIZE.  ONE OF THE ISSUES IN THIS CASE THAT HAS BEEN

25   IMPORTANT TO JUDGE KOH, WE DON'T SEE EYE TO EYE WITH HER ON THIS

1   ISSUE, BUT SHE GETS TO BE RIGHT ABOUT IT, IS THE QUESTION OF

2   WHETHER OR NOT IT IS IMPORTANT THAT DESIGN DRIVES MARKET.

3          WHETHER THE PATENT'S AT ISSUE, WHETHER THE DESIGN'S AT

4   ISSUE ACTUALLY DROVE COMMERCIAL SUCCESS, WHETHER THERE'S A

5   DIRECT NEXUS BETWEEN THAT.  IN THE SHIN DOCUMENT THAT YOU HAVE

6   IN FRONT OF YOU, WE HAVE EVIDENCE, AS MR. QUINN CONCEDES, OF

7   CARRIERS EXPRESSLY TELLING MR. SHIN THAT THEY CAN'T SELL THIS

8   CURRENT PRODUCT, AND HE NEEDS TO DESIGN PRODUCTS THAT LOOK LIKE

9   THE IPHONE.

10          IF WE CAN'T TAKE HIS DEPOSITION ON THAT ISSUE ALONE, AT

11   TRIAL WE'RE GOING TO BE FACING QUESTIONS OF HEARSAY, AND, YOU

12   KNOW, WHETHER THIS IS -- IT'S JUST NOT FAIR TO US AND IT CLEARLY

13   CANNOT BE HARASSING TO MR. SHIN TO ASK HIM ABOUT THOSE SUBJECTS.

14          FINALLY, JUST ON THE HORTATORY COMMENTS, WE HAVE TO

15   STEP BACK ABOUT WHAT THIS CASE IS ABOUT.  WHAT THE CASE IS ABOUT

16   WAS, YOU KNOW, SAMSUNG IS OUT IN THE WORLD WITH A BUNCH OF

17   PHONES THAT LOOK LIKE GET-SMART DEVICES IN 1950, AND ALL OF A

18   SUDDEN THE IPHONE COMES OUT AND THEY REVOLUTIONIZE THEIR WAY OF

19   DESIGN.

20          AND I THINK, FROM WHAT I CAN TELL, THEY ARE GOING TO

21   TELL THE JURY THAT THAT HAPPENED AS A RESULT OF A NATURAL

22   EVOLUTION OF SAMSUNG'S DESIGN PROCESS COMPLETELY INDEPENDENT OF

23   APPLE AND THE IPHONE, AND THESE DOCUMENTS SAY, IF THEY PUT ON

24   THAT DEFENSE, THAT'S A LIE.

25          AND IT SAYS THAT CHANGE CAME ABOUT UPON FROM WHAT

1    MR. QUINN CALLED HORTATORY COMMENTS ABOUT THE FACT THAT WE ARE

2    IN A DESIGN CRISIS AND HORTATORY COMMENTS ABOUT THE FACT THAT

3    THE DIFFERENCE BETWEEN THE APPLE AND SAMSUNG PRODUCT IS THE

4    DIFFERENCE BETWEEN HEAVEN AND EARTH.

5            AND THAT'S PROOF.  THAT IS EVIDENCE THAT THIS JURY IS

6    ENTITLED TO HEAR, AND IN ORDER TO GET IT INTO EVIDENCE, WE HAVE

7    TO ASK THE PEOPLE WHO SAID IT AND GET THEIR CONFIRMATION UNDER

8    OATH THAT THEY SAID IT, AND THAT CAN'T BE HARASSING.

9            THE COURT:  LET'S TURN TO THE THIRD WITNESS.

10           MR. MCELHINNY:  THIRD WITNESS IS MR. WON-PYO HONG.  HE IS

11   THE HEAD OF PRODUCT STRATEGY TEAM.  LOOK HOW FAR WE'RE GETTING

12   DOWN ON THE APEX STUFF.  WE'RE NOT AT THE HEAD OF

13   TELECOMMUNICATIONS OR MOBILE PHONES.  WE'RE AT THE GUY WHO IS

14   THE HEAD OF PRODUCT STRATEGY TEAM.

15           THE COURT:  WITH ALL DUE RESPECT, THE HEAD OF PRODUCT

16   STRATEGY FOR SAMSUNG MOBILE IS NOT SOME GUY.  THAT'S A PRETTY

17   IMPORTANT POSITION.

18           MR. MCELHINNY:  IT CLEARLY IS AN IMPORTANT POSITION, BUT

19   IN TERMS OF A CORPORATE LADDER, HOW FAR DOWN WE'RE GOING --

20           THE COURT:  FAIR ENOUGH.

21           MR. MCELHINNY:  -- THE PROPONENT SAYS HE OVERSEES THE

22   DESIGN OF CELLPHONES AND TALENTS.  THAT'S HIS JOB.  ONE OF THE

23   DEPONENTS, JINSOO KIM, TOLD US THAT MR. HONG IS THE PERSON WHO

24   MAKES THE FINAL DECISION WITH RESPECT TO PRODUCT PLANNING

25   REQUESTS INVOLVING NEW PRODUCTS.  SO HE IS RIGHT AT THE CENTER

1   OF THE DECISIONS HERE.

2         THE COURT:  INCLUDING PLANNING FOR THE TAB AND OTHER

3   PRODUCTS?

4         MR. MCELHINNY:  EVERY PRODUCT IN THE MOBILE

5   COMMUNICATIONS.  BUT WE WERE ALSO FORTUNATE ENOUGH THAT WE GOT A

6   DOCUMENT FROM HIM, AND THAT DOCUMENT IS EXHIBIT 22 OF THE

7   ORIGINAL MOTION, IN WHICH HE SENDS AN E-MAIL BACK, AND HE SAYS,

8   "I'M IN GERMANY."  HE'S CLEARLY BEEN TOURING APPLE STORES.  THIS

9   IS 507493, AND HE TALKS ABOUT HOW APPLE DISPLAYS THEIR PRODUCTS

10  IN STORES.

11        AND ON THE SECOND PAGE OF THIS, HE ISSUES AN EDICT.

12  AND HE SAYS, "GOING FORWARD, FOR EVERY DESIGN, WHEN THE DESIGN

13  IS PRESENTED TO THE BUSINESS PERSON WITHIN SAMSUNG," SO YOU GOT

14  THE DESIGNERS PRESENTING IT, "IT WILL BE PRESENTED SIDE BY SIDE

15  WITH AN APPLE PRODUCT, A SIMILAR CORRESPONDING PRODUCT, SO THEY

16  CAN ENGAGE IN A COMPARE AND CONTRAST FOR EVERY ONE OF THEIR

17  PRODUCTS."  ALL RIGHT?

18        I'M GOING TO JUMP OVER, BECAUSE I'LL TALK ABOUT THIS IN

19  THE SANCTIONS MOTIONS.  BEFORE THE PRELIMINARY INJUNCTION

20  FOLLOWING MR. QUINN'S INSTRUCTIONS, SAMSUNG DID PRESENT US WITH

21  A 30(B)(6) WITNESS, MR. DENISON, AND HE WAS ASKED THESE

22  QUESTIONS ABOUT COPYING.

23        AND WHAT HE SAID WAS, "WITH RESPECT TO THE PRODUCTS AT

24  ISSUE, I ASKED EACH HARDWARE DESIGNER WHETHER THEY HAD STUDIED

25  OR CONSIDERED THE IPHONE OR ITS VARIANCE AS A NORMAL COURSE OR

1    AS A COURSE OF THEIR ACTUAL DESIGN, AND EACH DESIGNER TOLD ME

2    THEY HAD NOT."  THAT WAS THE TESTIMONY THAT SAMSUNG PRODUCED TO

3    US IN ADVANCE OF THE PRELIMINARY INJUNCTION MOTION.  IT'S A LIE.

4    THIS DOCUMENT SAYS --

5         THE COURT:  WELL, UNLESS THEY WERE IGNORING THE ORDERS OF

6    MR. HONG.  THAT'S ONE WAY TO WORK THIS OUT IN THE TESTIMONY.

7         MR. MCELHINNY:  YES, UNLESS THIS NEVER HAPPENED.  BUT

8    WHAT THIS DOCUMENT SAYS IS, CONTRARY TO THE SWORN TESTIMONY OF

9    THEIR CORPORATE DESIGNEE --

10        THE COURT:  TO THIS.

11        MR. MCELHINNY:  -- THAT MR. HONG ISSUED THE ORDER THAT

12   THAT'S THE WAY THEY SHOULD BE PRESENTED.  AND I SUBMIT IT IS NOT

13   UNFAIR OR HARASSING FOR US AT TRIAL TO BE ABLE TO HAVE MR. HONG

14   ADMIT THE ORDER THAT HE ISSUED.

15        THE COURT:  WAS MR. DENISON TENDERED AS A 30(B)(6) ON THE

16   SUBJECT?

17        MR. MCELHINNY:  HE WAS.  ON THE ISSUE OF COPYING.  WE'LL

18   TALK ABOUT THAT ON THE SANCTIONS MOTION.

19        THE COURT:  MR. QUINN.

20        MR. QUINN:  THANK YOU, YOUR HONOR.  AS THE COURT'S

21   QUESTION I THINK SUGGESTED, THIS MAN ALSO HAS A VERY BIG, VERY

22   IMPORTANT JOB AND HE'S A BUSINESSMAN.  HE HIMSELF IS NOT A

23   DESIGNER, DOESN'T DESIGN ANYTHING.

24         WHAT HE DOES DO, HE'S AT THE TOP AND DESIGNS HAVE TO GO

25   THROUGH HIM.  THAT, AGAIN, IS ALL THE EVIDENCE WE HAVE HAD.  THE

1    CASE LAW SAYS THE FACT THAT SOMEONE IS AT THE TOP, A C.E.O.

2    SENIOR VICE PRESIDENT IN CHARGE OF A DEPARTMENT, AND HE HAS TO

3    SIGN OFF ON DECISIONS COMING OUT OF THAT DEPARTMENT IS NOT

4    SUFFICIENT.

5         THIS E-MAIL THAT MR. MCELHINNY CALLED THE COURT'S

6    ATTENTION TO MERELY SAYS, "ADOPT A NEW PRESENTATION METHOD OF

7    PLACING OUR PRODUCT ADJACENT TO THAT OF APPLE, A SIMILAR

8    CORRESPONDING PROJECT ENGAGING IN A COMPARE AND CONTRAST."

9    NOTHING NEFARIOUS ABOUT THAT.  YOU WANT -- ANYBODY WOULD WANT TO

10   HAVE YOUR PRODUCT CONTRASTED WITH YOUR COMPETITORS OUT THERE.

11        THIS IS DIRECTED TO, AMONG OTHER PEOPLE, DIRECTOR

12   LEE MINHYOUK.  HE WAS DEPOSED, AND THEY ALSO DEPOSED MR. SUNGSIK

13   KIM, WHO IS ALSO ON THAT E-MAIL.  SO THEY GOT TWO WITNESSES ON

14   THIS.  TWO WITNESSES WITH AN OPPORTUNITY TO QUESTION ABOUT THIS.

15        SO THE QUESTION, AGAIN, FOR THE COURT, WE'RE FACED WITH

16   HERE, IS THIS ENOUGH TO REQUIRE THIS IMPORTANT MAN -- FOR THEM

17   TO GET CONDITIONAL, MORE TESTIMONY?  I SUBMIT IT ISN'T.

18   YOUR HONOR, IF I COULD BRIEFLY GO BACK TO -- THE COURT KIND OF

19   SURPRISED ME WITH THE QUESTION ABOUT THE INJUNCTION.

20        THE COURT:  I DID.  I'LL GIVE MR. MCELHINNY A CHANCE TO

21   RESPOND.

22        MR. QUINN:  BUT THE LOGIC OF, YOU KNOW, THAT A SENIOR

23   PERSON WOULD BE VERY KNOWLEDGEABLE ABOUT WHAT THE POTENTIAL

24   CONSEQUENCES OF AN INJUNCTIVE RELIEF WOULD BE IN ANY WAY WHERE

25   AN INJUNCTION WERE SOUGHT, THAT WOULDN'T JUSTIFY THE TAKING OF

1    DEPOSITION OF ANY APEX WITNESS.

2         THE COURT:  EXCEPT THE SCOPE OF THE INJUNCTION IN PLAY IS

3    MUCH DIFFERENT THAN, SAY, A PATENT CASE DIRECTED TOWARDS A

4    PARTICULAR UTILITY FEATURE.

5          AS I UNDERSTAND WHAT'S BEING SUGGESTED AT THIS POINT BY

6    APPLE, WE'RE TALKING ABOUT AN INJUNCTION THAT WOULD MATERIALLY

7    AFFECT WHAT SMART PHONES GET SOLD IN THE UNITED STATES.  I WOULD

8    THINK THIS WOULD BE SOMETHING THIS GENTLEMAN WOULD HAVE

9    SOMETHING TO SAY ON THAT.

10        MR. QUINN:  I'M SURE THERE'S A THOUSAND PEOPLE THAT WOULD

11   HAVE SOMETHING TO SAY ON THAT, AND THEY HAVEN'T DEPOSED A

12   THOUSAND PEOPLE BUT THEY HAVE DEPOSED, WHAT'S THE NUMBER?  OVER

13   100.

14         AND, YOU KNOW, THAT'S A SUBJECT THAT'S, PERHAPS, FAIR

15   GAME FOR EXAMINATION AND A LOT OF PEOPLE COULD CONTRIBUTE TO

16   THAT ABOUT WHAT THE CONSEQUENCES WOULD BE.  I DON'T THINK THAT

17   IN ITSELF IS ENOUGH TO JUSTIFY THE DEPOSITION.

18        THE COURT:  ALL RIGHT.

19        MR. MCELHINNY:  JUST ON THAT ISSUE, AGAIN, IT'S A

20   CONSISTENT.  SAMSUNG GLORIES IN THE FACT THAT IT DID NOT

21   DISCLOSE ANY OF ITS SENIOR EXECUTIVES ON THE WRITTEN

22   DISCLOSURES, THE DISCLOSURES OF WITNESSES THAT ARE REQUIRED

23   UNDER FEDERAL LAW FOR A TRIAL AS PEOPLE WHO ARE KNOWLEDGEABLE

24   ABOUT THE FACT.  THAT'S PART OF THEIR DEFENSE HERE.

25         SO YOUR HONOR IS CERTAINLY NOT INVITING ANOTHER

1    SANCTIONS MOTION ABOUT WHETHER THAT WAS AN APPROPRIATE

2    DISCLOSURE, BUT IF WE GET TO A POINT IN TRIAL WHERE SAMSUNG

3    WISHED THEY HAD DISCLOSED AND PUT ON A LIST OF PEOPLE WHO WANT

4    TO SPEAK OF THOSE ISSUES, IF YOU DON'T DISCLOSE THEM, YOU DON'T

5    CALL THEM.

6           WE DON'T OPEN A NEW PROCEEDING AND GO ON.  OUR POSITION

7    IS THEY SHOULD HAVE BEEN DISCLOSED.  WE'RE SEEKING DEPOSITIONS

8    OF PEOPLE THEY INTENTIONALLY DIDN'T DISCLOSE.

9           BUT AS YOUR HONOR'S QUESTIONS POINT OUT, UNDER ANY

10   REASONABLE STANDARD, THESE PEOPLE SHOULD HAVE BEEN DISCLOSED AS

11   PEOPLE WHO HAD KNOWLEDGE OF KEY ISSUES IN THIS CASE.

12         THE COURT:  LET'S TURN TO MR. CHO.

13         MR. MCELHINNY:  YOU FINALLY GOT TO MY --

14         THE COURT:  AT THE RISK OF DISAPPOINTING, AT LEAST

15   TEMPORARILY, THE REPORTER DOES NEED A BREAK.

16         MR. MCELHINNY:  I'M JUST BOUNCING IN MY CHAIR.

17         THE COURT:  IF I MIGHT SUGGEST, WE HAVE MUCH MORE GROUND

18   TO PLOW HERE.  WHY DON'T WE TAKE THE LUNCH BREAK AT THIS TIME.

19   I HAVE A POTENTIAL CRIMINAL MATTER AT 1:30, THEN A CIVIL MATTER

20   AT 2:00.  LET'S RECONVENE AT 1:00 SHARP AND GET STARTED THEN.

21         MR. MCELHINNY:  THANK YOU, YOUR HONOR.

22         THE COURT:  WE'RE IN RECESS.

23              (CHANGE IN COURT REPORTER.)

24              (LUNCH RECESS TAKEN.)

25                   ---O0O---

CHRISTINE BEDARD, C.S.R.                    57

1

2

3

4

5                          REPORTER'S CERTIFICATE

6

7            I, THE UNDERSIGNED COURT REPORTER FOR THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, DO HEREBY CERTIFY THAT THE FOREGOING IS A

10   FULL, TRUE AND CORRECT TRANSCRIPT OF PROCEEDINGS HAD IN

11   THE WITHIN-ENTITLED AND NUMBERED CAUSE ON THE DATE

12   HEREINBEFORE SET FORTH; AND I DO FURTHER CERTIFY THAT THE

13   FOREGOING TRANSCRIPT HAS BEEN PREPARED BY ME.

14

15

16                          _____
                            CHRISTINE BEDARD, C.S.R.
17                          CERTIFICATE NUMBER 10709

18

19

20

21

22

23

24

25

CHRISTINE BEDARD, C.S.R.                    58