# EXHIBIT B

# EXHIBIT 15
# FILED UNDER SEAL

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL: (650) 801-5000  FAX: (650) 801-5100

WRITER'S INTERNET ADDRESS
rachelkassabian@quinnemanuel.com

December 3, 2011

Mia Mazza                                       S. Calvin Walden
Morrison & Foerster                             WilmerHale
425 Market Street                               399 Park Ave
San Francisco, CA 94105-2482                    New York, NY 10022

Re:     Apple, Inc. v. Samsung Elecs. Co., Case No. 11-CV-1846 LHK

Dear Mia and Calvin:

This letter is intended to summarize and address the issues discussed on Wednesday, November 30, 2011, during the parties' weekly meet and confer call.

SAMSUNG'S ISSUES

**I.      Deficiencies in Apple's searches and production**

*Documents relating to Apple v. Motorola*

Samsung requested that Apple produce the Motorola documents that it had identified with ITC bates numbers on November 23, 2011 with APLNDC Bates numbers, and Apple agreed to do so by December 1.  Samsung also asked Apple whether this production addressed the improper redactions Samsung had previously identified in certain of these documents, and Apple agreed to search for unredacted versions.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo  100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000  FAX +49(0) 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow  125009, Russia | TEL +7 495 797 3666  FAX +7 495 797 3667

Mia Mazza
S. Calvin Walden
December 3, 2011

*Date restrictions*

Samsung again asked Apple to explain why it applied the lower date cutoff of June 2003 to design inventors, and Apple again refused to articulate a reason for choosing this date. Rather, Apple pointed to its response to Samsung's Interrogatory No. 1, which states, with regard to the D'889 patent, that "the asserted claim . . . were [sic] conceived . . . and reduced to practice *no later than September 3, 2003*." (emphasis added). This is a non-response. Samsung is interested in the *earliest* date of conception. Apple agreed to investigate the conception date of the D'889 design, and to inform Samsung of the date it discovers before running any further searches.

With regard to upper date cutoffs, Samsung has not changed its position that the proper cutoff is the date of patent issuance. Apple agreed to re-run its searches of all utility patent inventors using the issuance date as the appropriate upper date limit. Apple represented, however, that it would not need to re-run searches for design patent inventors because its searches for members of the Industrial Design team will capture all relevant documents up to the release date of the products embodying those patented inventions. That is improper. If the product release dates are earlier than the patent issuance date, then the date range is insufficient. If the product release dates are later than the patent issuance date, then Apple should have no problem agreeing to re-run searches of the design patent inventors' inventor documents to capture all documents up to the patent issuance date. Please confirm that you will re-run these searches with the patent issuance date as the upper cutoff date. Please also set forth in writing your basis for distinguishing between utility inventors and design patent inventors with respect to the date ranges to apply.

*Search term deficiencies*

In Marissa Ducca's November 29, 2011 letter, Samsung noted many deficiencies in the terms Apple used to locate and produce inventor documents. During the call, Apple agreed to re-run its searches with Samsung's proposed terms, and also to apply the enhanced lists to Steve Jobs' files. Apple stated that it would then discuss the results of its search with Samsung, and indicated that it would be generally willing to produce any new documents that it discovers as long as they are relevant and not overly burdensome to produce.

Mia Mazza
S. Calvin Walden
December 3, 2011

### Judge Grewal's Order

Samsung again requested more information regarding the process by which Apple searched for photographs responsive to Judge Grewal's orders. Samsung also noted that Apple failed to search many potential sources and failed to use proper search terms. Apple agreed to address the issues regarding its search process raised in Diane Hutnyan's November 29, 2011 letter, and to provide additional information to Samsung regarding its search process.

Finally, Apple represented that it does not possess color versions of the photographs it sent to the U.S. Patent and Trademark Office during the prosecution of D'889. Rather, Apple clarified that it had scanned, using a color scanner, the black-and-white photographs it received. Apple represented that, consistent with its stipulation, the photographs provided in Exhibit 8 to Erik Olson's November 1, 2011 declaration are the best quality that it has. As we requested on the call, please confirm these representations in writing.

### Other discovery related to D'889 and the Apple Tablet 035 Mockup

Apple stated that it would respond to Samsung's request to de-designate photos of the Apple Tablet 035 Mockup within a week, although its deadline to meet and confer on the issue is December 6.

With regard to model shop records and CAD files, Apple stated that this was part of a "cluster" of information it was currently working on producing. Samsung explained that such "clustering" was inappropriate, and urged Apple to produce these items as soon as possible, on a rolling basis if necessary.

Finally, with regard to Doug Satzger's emails, Apple claimed that it has conducted an exhaustive search but found nothing. Please detail in writing what Apple has done to search for Mr. Satzger's emails, model shop records, CAD files, and anything else that is being "clustered" by Apple.

### Prior deposition testimony

Samsung again requested Apple to provide a list of cases in which an employee who would likely appear as a witness in this case testified in his or her capacity as an Apple employee. Samsung explained that it was willing to provide the same to Apple, and that this process was necessary so that each party could determine for itself which transcripts were relevant to its case. Apple refused to provide any such list on the grounds that creating such a list was "make work." Rather, Apple insisted on adhering to its new and very limited definition of "technological nexus," and further insisted that it alone would determine which transcripts were relevant for

Mia Mazza
S. Calvin Walden
December 3, 2011

production to Samsung.  Apple stated that it would only provide the requested list if Samsung issued an Interrogatory requesting it.

Apple's position is unacceptable to Samsung and violates the spirit of Judge Grewal's transparency order.  We hope that Apple will reconsider its position and provide a full list of cases to Samsung, including those cases that it believes are irrelevant and the reasons why it believes those cases are irrelevant.  Samsung is willing to provide the same list to Apple.  If Apple is unwilling to change its stance, please be prepared to discuss this issue at the lead counsel meet and confer.

*Mac OS 10.0, SuperClock, Brain Box,* ███████████ *, Apple Cinema Display,* ████
█████████████

Even though Samsung requested many of these items nearly a month ago, Apple stated that it was still searching for these items.  When pressed for a date certain, or even an estimated date, by which it would provide these items, Apple could not provide any date for any item.  Instead, it proposed that both parties agree they will "substantially complete" their production of several unidentified categories of items (apparently including these requested items) by December 15, 2011, and at that point state what they have done and what still needs to be done.

This response does not seem to follow.  Either Apple can produce the requested items by December 15, 2011, or it can't.  There is no reason why Apple's ability to produce these items should be related to or contingent on Samsung's production of items.  Samsung instead proposes that rather than setting artificial deadlines and withholding items for exchange, both parties continue to make a good faith effort to produce the items requested by the other side.  Samsung has always made, and continues to make, good faith efforts to satisfy Apple's production requests.

Apple's counsel revealed on the call that when it searches for items requested by Samsung, rather than conducting supplementary searches at Apple, it only searches the documents and things it had already previously collected from Apple.  This type of search is improper and insufficient.  Samsung requested on the call that Apple provide a detailed, written explanation of the specific efforts that have been made to date in order to search for each of the requested items, and of the current status of each search.

## II.     Apple's written responses to Samsung's Requests for Production

Samsung is working diligently on the counterproposals to Exhibits A and B, and will try to provide them to Apple next week.  Samsung will consider providing its counterproposal to Exhibit A before it provides its counterproposal to Exhibit B if it makes sense to do so.

4

Mia Mazza
S. Calvin Walden
December 3, 2011

### III.    Apple's selective waiver of attorney-client privilege

Apple refused to provide any facts or authority (or even a colorable rationale) in support of its claim of privilege with respect to the communications between Apple's counsel and Apple's employees that Mr. Jacobs described in open court at the protective order hearing.  Parties wishing to assert privilege over attorney-client communications must provide information sufficient to support their claim of privilege, and Apple's continual failure to do so merely confirms the unprivileged nature of the communications at issue.  Samsung encourages Apple to reconsider its position and to provide its rationale, including whatever facts and authority it has, in support of its claim, in writing.

### IV.    Protective order for Itay Sherman

Apple stated that Harold McElhinny was available for a lead counsel meet and confer on December 5-7.  Samsung said it would determine Mr. Verhoeven's availability on these dates.

<u>APPLE'S ISSUES</u>

### I.    Scheduling lead counsel meet and confer

Apple stated that Mr. Harold McElhinny will be available for an in-person meet and confer on December 5-7, although its preference would be December 6.  Samsung stated that it would need to check with Mr. Verhoeven to see if he would also be available on those dates.  Apple was unable to definitively state what issues it would propose for this meeting, despite Samsung's emphasis on the need to identify all the issues on which lead counsel would need to be briefed.  Samsung identified prior deposition transcripts and Itay Sherman's access to Apple confidential information (as well as all the issues previously identified in Rachel Herrick Kassabian's November 20 letter as being ready for a lead counsel meet and confer), as issues that should be discussed at the meeting.

### II.    Protective Order

Apple represented that as of the morning of November 30, the parties had reached an agreement in the ITC matter as to the source code and prosecution bar provisions.  Apple has made recent revisions to the provisions relating to cross-use of documents, however, and Samsung has yet to approve these provisions in the N.D. Cal. case.  In furtherance of its desire for an expedited resolution of this issue, Apple represented that it would provide Samsung's N.D. Cal. team with a new, redlined draft that reflects all of the edits Apple has made since last week, as well as the joint motion to be filed in the ITC matter.

Mia Mazza
S. Calvin Walden
December 3, 2011

### III.      Production of documents that include the term "Apple"

Apple has requested that Samsung re-run its searches of the following categories of custodians for all documents using the term "Apple" and Korean equivalents:  designers and engineers who worked on the products at issue, employees responsible for marketing those products, and employees responsible for developing the infringing features.  Apple demanded that this search be "substantially complete" by December 15, 2011.  When asked to explain why Apple needed all documents matching this description by December 15, Apple was unable to do so.[1]

Samsung will proceed with its searches on the basis of the language used in Mr. Wes Overson's letter of November 15, 2011, which Apple represented during the previous meet and confer call represented its final position on this issue.  We will consult with Samsung to identify custodians who fall within the categories described by Mr. Overson.

Samsung will use its best efforts to complete substantial production of these documents before December 15, 2011.  Apple confirmed that it would perform reciprocal searches of its custodians for the term "Samsung," code names used to refer to Samsung, as well as the names of the Samsung accused products.  However, Apple further requested that the parties not perform any review for relevance, instead producing all documents that include the opposing party's name that are not excluded by delimiters.  At this time, Samsung will not agree to produce documents that are not relevant to the claims and defenses asserted in this action, and asks that Apple likewise not produce irrelevant documents.

### IV.      Production of survey-related documents

Apple has requested production of survey documents in excess of the production required by Judge Grewal's September 28th order.  Samsung has agreed in principle to perform these searches on a reciprocal basis, given the numerous Samsung requests for production directed at consumer surveys, focus groups, and other marketing-related documents.  *See, e.g.,* Samsung RFPs 177, 178, 190, 191, and 249.

Apple refused to commit to reciprocal production, instead demanding that Samsung "substantially complete" its production of this entire category of documents by December 15, 2011.  Apple was unable to advance any legitimate justification for expedited treatment of this category of documents.  Rather, Apple only stated that these documents would be relevant to

---

[1]   Apple generally proposed during the meet and confer call, and then by letter dated December 2, 2011, that the parties identify certain categories of documents deserving of expedited treatment, and agree to complete substantial production of these documents before December 15, 2011.  Samsung is considering the terms of this proposal as set forth in Ms. Mazza's letter.

Mia Mazza
S. Calvin Walden
December 3, 2011

upcoming depositions noticed last week.  The fact that Apple has noticed (but not calendared) depositions for eight individuals does not support its contention that it needs immediate production of all the documents it seeks.  Moreover, none of the individuals noticed are marketing employees, and thus consumer survey documents will have little, if any, relevance to those depositions.  Nevertheless, as stated in my letter dated December 2, 2011, Samsung will use its best efforts to complete substantial production of these documents before December 15, 2011.  If we are unable to substantially complete production by that date, we will so advise.

**V.      Production of source code and other technical documents**

Samsung has already produced source code relating to conception and reduction to practice, and is preparing to make a production of source code relating to the accused products.  Apple again demanded the "substantial completion" of dozens of categories of source code before December 15, 2011, stating that source code relating to the accused functionalities is relevant to the upcoming claim construction briefing.

As Samsung pointed out, however, this justification runs counter to bedrock principles of claim construction because "claims may not be construed with reference to the accused device."  *See, e.g., NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002); *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999) ("[T]he construction of the claim is independent of the device charged with infringement . . . ."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc).  Apple refused to provide any additional basis why source code is relevant to claim construction, or why it needed to receive all of the documents referenced in Mr. Overson's letter before December 15, 2011.  Despite Apple's failure to explain the basis for its demand, Samsung will work diligently to produce the source code Apple requests as expeditiously as possible, and hopes to complete substantial production before December 15, 2011.

**VI.      Apple's Second Set of Preliminary Injunction Interrogatories**

Apple's previous correspondence complaining about the sufficiency of Samsung's interrogatory responses was ambiguous.  That is, Apple was unclear whether it was simply referring to Interrogatory Nos. 10-14 as a set or whether it was requesting that Samsung supplement its response to each of these interrogatories.  Moreover, Apple has consistently articulated specific issues with respect to Interrogatories 10 and 11.  Thus, Samsung reasonably believed that it had fully satisfied Apple's request by supplementing Interrogatories 10 and 11.

Samsung is willing to supplement its response to other interrogatories, including 12-14, provided that Apple identifies deficiencies in specific responses or provides some sort of additional

7

Mia Mazza
S. Calvin Walden
December 3, 2011

guidance as to what information it believes is missing.  It will also amend its interrogatories as appropriate, as discovery continues.  Apple stated that it understood Samsung's position.

**VII.    Production of documents relating to inventors and participation in standard-setting organizations**

Samsung is making ongoing inventor-related productions on a rolling basis.  Apple's correspondence has identified instances where it believes documents should have been produced but were not.  Samsung has responded to many of the issues raised in these letters, and will respond to all outstanding correspondence on this subject.  Samsung will also be responding to Calvin Walden's November 15, 2011 letter regarding production of documents related to participation in standard-setting organizations.

Apple also stated that it is preparing a letter outlining broader concerns with Samsung methodology in searching for inventor-related documents.  Samsung will respond to Apple's concerns after it receives this letter.

Very truly yours,

/s/

Rachel Herrick Kassabian

8