# KANG DECLARATION EXHIBIT 11

| | |
|---|---|
| HAROLD J. MCELHINNY (CA SBN 66781) <br> hmcelhinny@mofo.com <br> MICHAEL A. JACOBS (CA SBN 111664) <br> mjacobs@mofo.com <br> JENNIFER LEE TAYLOR (CA SBN 161368) <br> jtaylor@mofo.com <br> ALISON M. TUCHER (CA SBN 171363) <br> atucher@mofo.com <br> RICHARD S.J. HUNG (CA SBN 197425) <br> rhung@mofo.com <br> JASON R. BARTLETT (CA SBN 214530) <br> jasonbartlett@mofo.com <br> MORRISON & FOERSTER LLP <br> 425 Market Street <br> San Francisco, California 94105-2482 <br> Telephone: (415) 268-7000 <br> Facsimile: (415) 268-7522 | WILLIAM F. LEE <br> william.lee@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 60 State Street <br> Boston, MA 02109 <br> Telephone: (617) 526-6000 <br> Facsimile: (617) 526-5000 <br> <br> MARK D. SELWYN (SBN 244180) <br> mark.selwyn@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 950 Page Mill Road <br> Palo Alto, California 94304 <br> Telephone: (650) 858-6000 <br> Facsimile: (650) 858-6100 |

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br>             Plaintiff, <br>     v. <br> SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company., <br>             Defendants. | Case No.   11-cv-01846-LHK (PSG) <br> **REPLY DECLARATION OF ERIC R. ROBERTS IN SUPPORT OF APPLE'S MOTION TO ENFORCE JANUARY 27, 2012 ORDER AS TO FINANCIAL DOCUMENTS** <br> Date:     April 3, 2012 <br> Time:    10:00 a.m. <br> Place:   Courtroom 5, 4th Floor <br> Judge:   Hon. Paul S. Grewal |

**SUBMITTED UNDER SEAL**

I, Eric R. Roberts, declare as follows:

1. I am the Director of Forensic Accounting Services at Morrison & Foerster LLP. As explained in more detail in my declaration in support of Motion to Enforce January 27, 2012 Order as to Financial Documents, I have over 40 years of financial and accounting experience, including 19 years as a partner at Deloitte, one of the largest international accounting firms, and I have been recognized as an expert in accounting and damages by federal and state courts.

2. In the above referenced declaration I discussed numerous issues regarding the single spreadsheet document that Samsung produced on February 3, 2012 ("the February 3rd Spreadsheet"), which Samsung argues provides all of the information that Apple and its damages experts need to calculate Samsung's consolidated profits derived from infringing sales of the accused products. Samsung states that it has since amended this spreadsheet three times, once on February 10th, again on February 28th, and yet again on March 8th. I discuss these revisions below[1].

3. I have reviewed the declaration of Timothy Sheppard in support of Samsung's opposition to Apple's motion for rule 37(b)(2) sanctions for Samsung's alleged violations of the January 27, 2012 damages discovery order ("Sheppard declaration"). I have also reviewed spreadsheets produced by Samsung on February 28, 2012 and March 8, 2012 (the "February 28th Spreadsheet" and the "March 8th Spreadsheet") as well various other Samsung produced-documents. In addition I have reviewed the transcripts of Mr. Sheppard's 30(b)(6) deposition taken on February 29, 2012 and Mr. Jaehwang Sim's 30(b)(6) deposition taken on March 9, 2012 (Pacific time).

4. For ease of reference, I have divided this declaration into five major sections: (I) confirmation by Mr. Sheppard of the errors and problems that I previously identified; (II) background information on consolidated profits and intercompany transactions; (III)

---

[1] As discussed in my prior declaration (Dkt. No. 759-5 at ¶4 n.1), the February 10 Spreadsheet simply provided data on two more products but did not change the amounts reflected on the total page of February 3 Spreadsheet. I do not discuss the February 10 Spreadsheet specifically in this declaration.

responses to Mr. Sheppard's declaration; (IV) documents required by Apple that Samsung has not produced, and; (V) why the documents produced to date are not sufficient.

### I. Confirmation of the Errors Identified in the February 3rd Spreadsheet

5.   To begin, Mr. Sheppard acknowledges that I was correct regarding many of the criticisms that I raised about the February 3rd Spreadsheet. Notably, Mr. Sheppard attempts to rebut those criticisms by relying on documents and materials produced between twenty-five and thirty-four days after the Court's deadline for Samsung to complete its rolling production of financial documents. As discussed in more detail below, not even those belated materials solve many of the most important concerns that I raised.

6.   Mr. Sheppard admits that the February 3rd Spreadsheet did not "add across," *i.e.*, that the Total spreadsheet page does not match the underlying data. (*See* Declaration of Timothy Sheppard in Support of Samsung's Opposition ¶ 19 (Dkt. No. 801-22).) Mr. Sheppard never explains why this basic and fundamental accounting error occurred. This, by itself, casts significant doubt on Samsung's work.

7.   Mr. Sheppard admits that it is not possible to determine which sales are made to which carriers from the documents produced on February 3. (Dkt. No. 801-22 ¶ 16.)

8.   Mr. Sheppard admits that the data included on the February 3rd Spreadsheet concerning the Galaxy Tab 7.0 was incomplete. (Dkt. No. 801-22 ¶ 28.)

9.   Mr. Sheppard admits that three products—the Galaxy S II Skyrocket, Galaxy S II Epic 4G, and Galaxy Tab 10.1 LTE—have never been included. (Dkt. No. 801-22 ¶ 14.)

10.   Mr. Sheppard admits that the February 3rd Spreadsheet indicates only one product SKU in connection with the Galaxy S II page within the spreadsheet. He now claims that, unlike every other product page contained in the February 3rd Spreadsheet, the Galaxy S II page contained data relating to multiple SKUs. (Dkt. No. 801-22 ¶ 14.) He offers no explanation as to why this was done or how counsel or I would know that this page of the spreadsheet differs from every other page provided on the February 3rd Spreadsheet. In addition, Mr. Sheppard's statements in his declaration on this point are incorrect. The March 8th Spreadsheet now has two

pages for the Galaxy S II. One page, which contains the GT-I9100, GT-I918, SGH-I777, SGH-N033, SHW-M250K, and SHW-M2505 models, has totals equal to the amounts in the February 3rd Spreadsheet. Yet the new page (for model SGH-T989), which is the T-Mobile version of the Galaxy S II phone, shows additional units, sales and costs. Thus, either the original reported February 3 amounts were in error or information concerning Galaxy S II SGH-T989 (the T-Mobile edition) was omitted.

11. Mr. Sheppard admits that the February 3rd Spreadsheet does not "add down" or "foot," but explains it "merely as a timing difference." For the reasons discussed in Paragraphs 15-20 and 23 below, this difference is significant and prevents the calculation of an accurate consolidated gross profit or consolidated operating profit for the accused products. (Dkt. No. 801-22 ¶¶ 17-18.)

12. Mr. Sheppard admits that the February 3rd Spreadsheet includes numerous examples of negative sales and positive cost of goods sold. He fails to explain the reasons for the amounts included in the examples that I identified. His response that it "likely represents" returns or DOA devices, and that certain events may "possibly" be the result of the sale of repaired units, is entirely unsatisfactory from an accounting standpoint. Mr. Sheppard has access to the actual data and apparently has done nothing to research the answer to this issue. Apple is entitled to evaluate what the data truly represents not just what it "likely" represents. (Dkt. No. 801-22 ¶ 27.)

13. Mr. Sheppard admits that it is not possible to tie the amounts in the February 3rd Spreadsheets to published or audited financial data. (Dkt. No. 801-22 ¶ 21.) He claims that spreadsheets produced on February 28 allow Apple to reduce the gap, but the accounting concept of "tying" data is to actually match the numbers to within a small variance to verify their accuracy. This still cannot be done, and Mr. Sheppard does not say that it can be done.

14. Mr. Sheppard suggests that it is possible to calculate the gross margin for Samsung from the spreadsheet, but he refers only to STA and SEA and not the SEC consolidated gross margin. (Dkt. No. 801-22 ¶ 12.) For the reasons described below, and as also explained by Mr.

Sim at his 30(b)(6) deposition (*see* Olson Reply Decl. Ex. D at 148:12-151:24), it is not correct that consolidated gross margin can be calculated from the spreadsheets.

## II. Background Information on Consolidated Profits and Intercompany Transactions

15. I turn now to the issue of the calculation of consolidated profits for companies that operate in multiple countries.

16. It is important to give some background information on intercompany sales and transactions at multinational companies like Samsung. This will help put in context why none of the financial documents Samsung has produced to date—including the spreadsheets discussed in my prior declaration and below—allow Apple to calculate Samsung's consolidated profits on an accused-product level.

17. At Samsung, as at many multinational companies, product is made in one part of the world but sold all over the world. Generally, the manufacturing function in one country is separately incorporated, as is the sales company in another country. In the instant matter, Samsung manufactures in China and Korea and provides product to be sold in the U.S. (Olson Reply Decl. Ex. D at 44:11-18.) Typically, as in this case, the product is sold by a non U.S. company directly to the U.S. company.[2] A sale price – called a transfer price – is "charged" by the manufacturing company but is not the full wholesale (or market) price. Rather, it is a negotiated price that has the effect of allocating profits to the various countries and tax authorities involved. It does not reflect a company's actual consolidated profits, but rather an artificial amount created solely for tax purposes.

18. As a simple and quick example, assume the following: (1) it costs $100 to make a product in China; (2) the Chinese company sells the product to the U.S. company for $150, (3) the U.S. company sells the product to its customers for $160; (4) there are no other expenses incurred. Using this example, there will be a total of $60 of consolidated profit,[3] but $50 of this

---

[2] In some instances, the sale is first made to the parent company who in turn sells it to the U.S. company.

[3] Sale to customer at $160 less cost of product of $100, or $160 - $100 = $60.

1    profit will remain at the Chinese company,[4] while $10 will recorded at the U.S company.[5] The
2    transfer price of $150 is based on a combination of legal, political, financial, and tax reasons,
3    although tax is often the primary driver.

4         19.    If all of the above transactions, referred to as intercompany transactions, took
5    place within the same month, documents such as the February 3, February 28, or March 8
6    Spreadsheets could possibly provide the necessary information to calculate the consolidated
7    profit. This is because one could safely assume that the product was manufactured for $100 and
8    sold to a customer for $160, generating $60 of consolidated profit. However, this is not what is
9    reflected in the spreadsheets. First, as Mr. Sheppard points out (Dkt. No. 801-22 ¶ 17), there is a
10   multi-month lag between the time a smartphone is manufactured and sold to STA and the time
11   when STA sells that product to a customer. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
12   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
13   ▬▬▬▬▬▬▬▬. This all contributes to the fact, as Mr. Sim observed, that there is not enough
14   information on the spreadsheet to determine the actual cost (cost of goods sold) of the product
15   sold by STA, and thus not enough information to determine the overall consolidated profit.
16   (Olson Reply Decl. Ex. D at 152:20-153:11.) This means that none of the versions of the
17   spreadsheet contains information relating to cost of goods sold (and other SEC expenses) for the
18   products sold by STA in any given time period. Without this information, it is not possible to
19   calculate the gross profit for the sale of the product on a consolidated basis (i.e. including all
20   subsidiaries and eliminating intercompany transactions).

21        20.    Typically, consolidated profits are prepared after eliminating intercompany
22   transactions and balances. By doing this, companies show the equivalent of the $100 cost and the
23   $160 sales price in their audited consolidated financial statements. Samsung is no exception. For
24   example, it discloses the following when reporting its gross and operating profit in its audited

---

[4] Sales price to U.S. from China of $150 less cost of product of $100, or $150 – 100 = $50.

[5] Sale price to customer $160 less the cost the U.S. paid of $150, or $160 - $150 = $10.

consolidated financial statements for 2010: "All inter-company transactions and balances are eliminated as part of the consolidation process."
(http://www.samsung.com/us/aboutsamsung/ir/financialinformation/auditedfinancialstatements/downloads/consolidated/2010_con_quarter04_note.pdf and http://www.samsung.com/us/aboutsamsung/ir/financialinformation/auditedfinancialstatements/IR_AuditedConsolidated.html)

### III.    Responses to Mr. Sheppard's declaration

21.    Mr. Sheppard's response to my declaration fails to address all the following issues regarding my criticism of Samsung's production and the new information provided by Samsung that: (1) the spreadsheets were not created in ordinary course of business, (2) the spreadsheets cannot be used to calculate Samsung's consolidated profits, (3) the spreadsheets lack detail needed to analyze expenses, (4) the "corrected" March 8th spreadsheet improperly and artificially removed ▓▓▓▓ in profits, and (5) there can be no assurance that all smartphone sales are included in the various spreadsheets.  I discuss each of these issues below.

22.    <u>The spreadsheets were not created in ordinary course of business</u>

- None of the specific spreadsheets to which Mr. Sheppard and I have referred are business documents. (Olson Reply Decl. Ex. I at 39:15-40:3.)  They were produced solely for this litigation under the direction of Samsung's attorneys. (Olson Reply Decl. Ex. I at 39:4-9, 44:15-17); *id*. Ex. D at 18:19-21.)  Notably, Mr. Sheppard played no role in their creation, and at his deposition he could not even say who had prepared them. (Olson Reply Decl. Ex. I at 52:22-23, 40:19-20, 40:25-41:1; *id*. Ex. D at 21:16-22, 24:2-24:24.)

- In fact, the spreadsheets were prepared by one lower level employee at SEC and reviewed for less than an hour by only one person before being delivered to attorneys. (Olson Reply Decl. Ex. D at 53:6-54:7.)  This contrasts with the normal time and effort put into business documents prepared for Samsung management.  For instance, internal Samsung PUMI Reports, prepared quarterly as a review of the financial performance of Samsung's U.S. operations, are subject to either review or evaluation by over 20 people.  An example

of a PUMI Report produced by Samsung in this litigation is Exhibit 2443 (SAMNDCA10198194), introduced at the deposition of Mr. Sim. A true and correct copy of a certified translation of excerpts from SAMNDCA10198194 is attached hereto as Exhibit A.

- Mr. Sheppard reviewed STA information in the spreadsheet (based on a sample of only one product), but he did not verify any of the information relating to SEA or SEC. (Olson Reply Decl. Ex. I at 78:19-23, 53:1-14.) For SEA, he relied on a conversation with and an email from Mr. Ro at SEC. (*Id.* Ex. I at 49:5-7, 49:19-50:2.) However, Mr. Ro did not participate in the preparation of the various spreadsheets (*id.* Ex. D at 15:9-11) nor did Mr. Ro review or even have the expertise to review the spreadsheets (*id.* at 26:12-18).

- Mr. Sheppard has no knowledge and said he could provide no testimony regarding numbers included in the Manufacturing section of the spreadsheets. (*Id.* Ex. I at 134:7-18).). ███████████████ a very significant influence on any calculation of profitability. Based on my review of the spreadsheets Samsung produced on February 3, February 28, and March 8, ███████████████

23. <u>The spreadsheets cannot be used to calculate consolidated profits</u>

- It is not possible to calculate Samsung consolidated profits for the accused products from any of the spreadsheets, and specifically from the latest version, the March 8th Spreadsheet. (*Id.* D at 152:20-153:11).)

- In my original declaration (Dkt. No. 759-5 at ¶¶ 5,12), I stated that that the February 3rd Spreadsheet did not add down, meaning that the totals on the top, or "Consolidate" section, did not agree with the totals in the bottom, or "Manufacturing" section. Mr.

Sheppard responds that this can be explained. The issue is that "Consolidate" portion of the spreadsheet shows sales made to customers. So, for example, it represents sales made to carriers by STA. On the other hand, the sales "Manufacturing" portion of the spreadsheet represents sales made by SEC to its various sales subsidiaries around the world, and there will typically be a two-to-three month period between the time sales are made from SEC to the subsidiaries and the time the subsidiaries sell the product to third parties. (Dkt. No. 801-22 ¶ 17).

- Mr. Sheppard's answer corresponds to what Apple had surmised. However, this means that data does not exist on the spreadsheet to determine consolidated profits because sales (to third parties) on the Consolidate section of the spreadsheet cannot be tied directly to the cost of goods sold in the Manufacturing section. Without synching the cost of the products sold to customers with the revenue from those sales, product profitability cannot be determined. As such, it is clear that the spreadsheets do not provide the necessary information required for Apple and its experts to calculate consolidated profits. What Apple needs are the documents that were discussed in relation to the January 27 order.

- It should be noted that Mr. Sheppard's attempt to explain away the differences between the Consolidate section and the Manufacturing sections of the spreadsheets as "merely a timing difference" (Dkt. No. 801-22 ¶ 18) runs contrary to generally accepted accounting principles. For instance, consider the consequences of a public corporation reporting sales for a particular fiscal year as $100 million, but later disclosing that $25 million of those sales had actually been made in January of the next fiscal year. This violation of well-settled accounting practices could not be explained "to the public and the Securities and Exchange Commission" as "merely a timing difference." These differences matter in accounting and financial reporting.

24. <u>The spreadsheets lack detail to needed to analyze expenses</u>.

- The already insufficient cost of goods sold detail contained in the February 3rd Spreadsheet was eliminated entirely in the February 28 and March 8 spreadsheets (Olson Reply Decl. Ex. D at 60:6-62:4, 92:23-93:13), making impossible a determination of, among other things, fixed and variable expenses within cost of goods sold;

- Even with the minimal additional detail in the March 8th Spreadsheet relating to expenses (Dkt. No. 801-22 ¶ 30), there is insufficient detail for Apple or its experts to evaluate whether those expenses are fixed or variable. This is particularly true for the "Others" category within each of the expense classifications;

- Counsel for Samsung stated that Mr. Sim would not answer questions regarding the cost of goods sold details provided in the February 3rd Spreadsheet. (Olson Reply Decl. Ex. D at 94:5-96:15, 99:15-100:11, 131:9-132:14.)

- Mr. Sheppard maintains that Apple has all the detail it needs to determine cost of goods sold, because it is simple to calculate for STA and SEA (Dkt. No. 801-22 ¶ 12) and because the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, Mr. Sheppard misses the mark for two important reasons. First, as Apple and I have explained many times, Apple and its experts need information on consolidated profits, not on the arbitrary profits (based on artificial cost of goods sold and gross margin) of STA and SEA created by the transfer price. Second, even if STA's and SEA's cost of goods sold could be traced back to the actual costs at SEC (which, as explained in other parts of this declaration, cannot be done), there is no SEC detail for cost of goods sold, and the "Others" category within all of the SEC, STA and SEA cost classifications[6] represents a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In fact, in many months or quarters the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As a result, Apple and its experts have no information or insight into this expense item and are

---

[6] ▮▮▮▮▮▮▮▮▮▮▮▮

unable to determine the composition of those expenses or whether they are fixed or variable.

25. <u>The "corrected" March 8th Spreadsheet removed ▓▓▓▓ in profits</u>

- The March 8th Spreadsheet eliminates over ▓▓▓▓ of profits by reclassifying profits to cost of goods sold.[7] (Olson Reply Decl. Ex. D at 36:2-24.) This makes it clear that the spreadsheets are not simply a download from SAP.

- This reclassification was done simply by adding the profits ▓▓▓▓ to cost of good sold. (Olson Reply Decl. Ex. D at 36:2-24.) ▓▓▓▓ have nothing to do with cost of goods sold, and there is no basis in accounting for including these profits in cost of goods sold. In ¶ 19 above, I gave an example of a product costing $100 to produce. The product was sold from China to the U.S for $150, creating $50 profit in China, and then sold and by the U.S. company for $160 creating $10 profit in the U.S. The reclassification of ▓▓▓▓ of profit generated in the Manufacturing section of the spreadsheets to cost of goods is the equivalent in my example of claiming that the $50 profit in China should be included within cost of goods sold, even though the actual cost to produce the product is undeniably $100.

26. <u>There can be no assurance that all smartphone sales are included in the spreadsheets</u>.

- The production of spreadsheets for practicing products (Dkt. No. 801-22 Ex. B) does not provide enough information for Apple to reconcile phone sales to STA total sales and thus

---

[7] The combined ▓▓▓▓ shown in the Manufacturing section of the February 28th Spreadsheet for 2010 and 2011 total ▓▓▓▓ (Dkt. No. 801-22 Ex. A at SAMNDCA00354293, Column R, Line 32, plus SAMNDCA00354295, Column AI, Line 32), while on the March 8th Spreadsheet those same operating profits total ▓▓▓▓ (*id*. Ex. E at SAMNDCA00372952, Column R, Line 63, plus SAMNDCA00372953, Column AI, Line 63). The reduction of profits between the two spreadsheets equals ▓▓▓▓.

verify that all sales have been included in the combined totals of the practicing products and the accused products. For example, per the February 28 versions of the spreadsheets, STA practicing product sales for 2010 were ■■■■ (*id.* Ex. B at SAMNDCA00354392, Column BV, Line 10), and accused product sales for STA for 2010 were ■■■■ (*id.* Ex. A at SAMNDCA00354293, Column R, Line 10). These total to ■■■■, which is ■■■■ less than the ■■■■ of product revenue reported in STA's 2010 audited financial statement (SAMNDCA00322209-38, at 14). A true and correct copy of SAMNDCA00322209-38 is attached hereto as Exhibit B.

### IV.  Documents Required by Apple That Samsung Has Not Produced

27.  There are documents created in the ordinary course of business at Samsung that would allow Apple to calculate Samsung's consolidated profits. I describe a number of those documents below.

28.  The first category of documents is costed bills of materials (costed "BOMs"). These documents, which I understand that Samsung has refused to produce, are the "recipes" for building individual products. This type of document was specifically requested by Apple (*see* Apple's Opening Brief, Appendix A at 8 (Dkt. No. 759-2)) and discussed in the hearing on January 19, 2012 (*see* Olson Reply Decl. Ex. I at 155:25-156:9, 167:16-18, 168:22-169:3). BOMs typically include material costs as well as other direct and indirect costs that go into making the product. These documents, which exist only at the SEC level (or at Samsung's Chinese manufacturing facilities), are critical for determining cost of goods sold for each accused product, as they set out the actual or planned cost of the product.[8] An example of a costed BOM

---

[8] BOMs are often expressed in terms of "standard costs." Standard cost is an accounting concept often used in manufacturing. This concept or method allows companies to plan and record transactions at the cost they expect to incur. Differences between actual costs and standard costs are called variances. These variances are captured in the books of a company and are often included in cost of goods sold. In this case, Apple cannot determine whether Samsung uses standard costs, and if it does, how variances are handled, as Mr. Sim was instructed not to answer questions about standard costs at his 30(b)(6) deposition. (*See* Olson Reply Decl. Ex. D at 99:15-100:25, 131:9-132:14.)

produced by Samsung in this litigation is Exhibit 2442 (S-ITC-7385394-455), introduced at the 30(b)(6) deposition of Mr. Sim. A true and correct copy of a certified translation of S-ITC-7385394-455 is attached hereto as Exhibit C.

29. The second category is Pumi reports, which are multi-part or multi-document reports produced in the normal course of business by Samsung on a quarterly basis. I understand that Samsung has produced some of these reports, but the production is incomplete. Not all of the relevant quarters have been produced, and for the produced quarters, there are missing parts and/or documents. Among other things, these documents set out forecasts of material costs and total profitability of individual phones. These documents also report actual results for specific phones based on recent financial periods. They are circulated within Samsung and are approved or provide notification to over 20 individuals at the company, which indicates how well-vetted they are and the care that goes into their preparation. Unlike the February 3, February 28, and March 8 spreadsheets, the profitability results and forecasts appear to be prepared on a consolidated basis. These reports would provide Apple and its experts a carefully vetted view of Samsung's estimates of material costs and consolidated profit by phone. (*See supra* ¶ 22 & Ex. A.)

30. A third category of documents is reports setting out expenses on a chart of account basis. By chart of account basis, I mean that it would list account names (which are often descriptive) and amounts recorded in those accounts. I understand that Samsung has produced a few such documents for STA but no comparable documents for SEC. For instance, Samsung has produced a few months of STA reports called the Global Consolidation Package System ("GCPS"). (*See* Dkt. No. 801-9 Ex. 9.) The GCPS reports are prepared on a chart of account basis. A complete set of these reports for STA and SEA and the same or similar reports for SEC would allow Apple and its experts to verify expense composition and totals claimed, evaluate whether the expenses are fixed or variable, and potentially test allocations of expenses.

31. The GCPS itself appears to be prepared as an Excel spreadsheet. Mr. Sheppard stated that he had the data on the individual phones pulled at this level with respect to the Fascinate i500 in order to validate the STA data. (*See* Olson Reply Decl. Ex. I at 48:5-12, 142:8-

10, 145:11-22.) There is no reason to believe that Samsung could not provide the data at this level of detail for the accused products, and Mr. Sheppard confirmed this at his deposition. (*See id.*)

### V.     Why the Documents Produced to Date Are Not Sufficient

32.     None of the other financial documents Samsung has produced to date would allow Apple to calculate Samsung's consolidated profits. The Declaration of Joby Martin attached to Samsung's Opposition lists documents produced that Samsung claims provide information sufficient to calculate numerous financial figures, including cost of goods sold and consolidated profits. (*See* Dkt. No. 801-9.) I do not believe that the listed documents provide the necessary data to do these calculations.

33.     First, the financial documents produced by Samsung and discussed by Mr. Martin are almost exclusively limited to information from STA. (*See* Olson Reply Decl. ¶ 5.) For example, Mr. Martin references an excerpt of a produced document that he claims includes sales and revenue, monthly and weekly sales reports, and unit prices and quantities sold to carriers and distributors. (Dkt. No. 801-9 ¶ 7 & Ex. 2.) In fact, the document only provides the transfer price paid by STA and the profits STA recognized based on that transferred price. Using my earlier example, the STA profit only reflects $10 of the total $60 profit, because the transfer price used in calculating STA's profit is an artificial, intercompany transaction price. As such, the document masks the consolidated profits for SEC on each unit it sells to STA. As I have discussed above, it is impossible for Apple to determine Samsung's consolidated profits from sales of the accused devices based on these documents. Yet the consolidated profit is precisely what Apple needs to calculate damages.

34.     As another example, Mr. Martin references a document produced by Samsung called a global consolidation report, which he broadly claims shows statements of comprehensive income, changes in equity, and cash flows. (Dkt. No. 801-9 ¶ 14, Ex. 9.) Again, while this document may show financial results for STA, for the reasons previously discussed, it contains no information from which Apple can derive Samsung's consolidated profits recognized from the

sale of accused devices. The other financial documents attached to Mr. Martin's declaration are similarly limited to STA. (*See* Dkt. No. 801-9 Ex. 2 (STA Sales Report); Ex. 3 (STA 2011 Business Plan); Ex. 4 (STA Financial Statements); Ex. 5 (STA Weekly Sales Report); and Ex. 9 (Global Consolidation Package Report prepared by STA).)

35. The only financial document referenced by Mr. Martin that *might* not be limited to STA is Exhibit 8. However, Exhibit 8 contains an incomplete chart of accounts, where most relevant expense accounts are excluded and it is impossible to discern whether any or all of the data comes from STA, SEA, or SEC. (*See* Dkt. No. 801-9 Ex. 8.)

36. As I discussed earlier, Samsung has also failed to provide documents that include information sufficient to calculate SEC's cost of goods sold. Without SEC's cost of goods sold, Apple will be unable to calculate Samsung's consolidated profit. According to Mr. Martin, STA's 2011 Business Plan contains "detailed information" on *STA's* cost of goods sold. (*See* Dkt. No. 801-9 ¶ 8, Ex. 3.) However, the 2011 STA Business Plan includes only single line item entries – without underlying support – for STA's (*not SEC's*) cost of goods sold during 2010. (*Id.* Ex. 3.) Consequently, Apple is left without the data needed to calculate Samsung's consolidated profits and to quantify damages it has suffered.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of March, 2012 at San Francisco, California.

*/s/ Eric R. Roberts*
Eric R. Roberts

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that Eric R. Roberts has concurred in this filing.

Dated: March 20, 2012     */s/ Michael A. Jacobs*
                                                  Michael A. Jacobs