QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

  Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
  Victoria F. Maroulis (Bar No. 202603)
  victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>              Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S JUNE 25, 2012 ORDER TO THE EXTENT IT PRECLUDES CONSIDERATION OF A PRELIMINARY INJUNCTION ON THE '889 PATENT BASED ON CURRENT EVIDENCE**<br><br>Date:  N/A<br>Time: N/A<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh<br><br>**PUBLIC REDACTED VERSION** |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") will, and hereby do, move for leave, pursuant to Civ. L.R. 7-9, to file a motion for reconsideration of this Court's June 25, 2012 Order Regarding June 29, 2012 Hearing ("June 25 Order").

This motion will be based on this Notice of Motion and Motion for Leave to File a Motion for Reconsideration of the Court's June 25 Order, the Memorandum of Points and Authorities attached hereto, the accompanying Declarations of Thomas Watson, Travis Merrill and Paul Chapple, the Proposed Order, the files and records in this matter and any oral argument that the Court may hear.

## RELIEF REQUESTED

Pursuant to Civ. L.R. 7-9(a), Samsung requests leave of Court to file a motion for reconsideration of the Court's June 25 Order.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should grant leave to file a Motion for Reconsideration of the Court's June 25 Order barring introduction of new evidence bearing on Apple's request for a preliminary injunction on the '889 patent, because a grant of a preliminary injunction on a record that is now more than seven months old would be manifestly unjust.

1   DATED: June 26, 2012                Respectfully submitted,

2                                        QUINN EMANUEL URQUHART &
3                                        SULLIVAN, LLP

4                                          By /s/ Victoria Maroulis
                                              Charles K. Verhoeven
5                                             Kevin P.B. Johnson
                                              Victoria F. Maroulis
6                                             Michael T. Zeller
                                              Attorneys for SAMSUNG ELECTRONICS
7                                             CO., LTD., SAMSUNG ELECTRONICS
                                              AMERICA, INC. and SAMSUNG
8                                             TELECOMMUNICATIONS AMERICA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ............................................................................................................1

RELIEF REQUESTED ..........................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION ......................................................................................................1

II.     PROCEDURAL BACKGROUND ...........................................................................1

        A.      Apple's 2011 Motion For A Preliminary Injunction ..................................1

        B.      The Court's Denial Of Apple's 2011 Motion For A Preliminary Injunction............2

        C.      The Federal Circuit's Decision .....................................................................3

        D.      The Court's Orders Since The Federal Circuit Decision ...........................4

III.    LEGAL STANDARD .................................................................................................5

IV.     ARGUMENT ..............................................................................................................5

        A.      The Court May Not Grant Apple A Preliminary Injunction On The D'889 Patent Based On Stale Evidence Of Likely Infringement, Validity And Irreparable Harm ......................................................................................5

        B.      Current Evidence Precludes Any Grant Of A Preliminary Injunction On The D'889 Patent........................................................................................8

                1.      New Evidence Shows That Apple Is Not Likely To Prove Infringement Of The D'889 Patent ....................................................8

                        (a)     Newly Discovered Evidence Contradicts Apple's Claim Construction ...........................................................8

                        (b)     The Federal Circuit's Decision Contradicts Apple's Broad Construction ................................................12

                        (c)     The Galaxy Tab 10.1 Is Not Likely Infringing Under A Proper Claim Construction ...................................13

                2.      Newly Discovered Prior Art Shows That The D'889 Patent Is Likely Invalid....................................................................16

                3.      New Evidence Shows Changes In The Market For Tablets That Negate Any Likelihood of Irreparable Harm ..............................19

(a)      New Evidence Shows That The Tablet Market Has Become
         Dramatically More Competitive........................................................20

(b)      New Evidence Shows that Apple Does Not Practice the Patent ......21

V.      CONCLUSION ................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*A&M Records, Inc. v. Napster, Inc.*,
   284 F.3d 1091 (9th Cir. 2002)..................................................................................................6

*Abbott Labs. v. Andrx Pharms., Inc.*,
   452 F.3d 1331 (Fed. Cir. 2006)..............................................................................................22

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008)................................................................................................6

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001)..............................................................................................13

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   678 F.3d 1314 (Fed. Cir. 2012).................................................................................3, 7, 20, 22

*Application of Thorington*,
   418 F.2d 528 (Cust. & Pat. App. 1969)..................................................................................11

*Automated Merchandising Systems, Inc. v. Crane Co.*,
   357 Fed. App'x 297, 301 (Fed. Cir. 2009).............................................................................21

*Chemlawn Services Corp. v. GNC Pumps, Inc.*,
   823 F.2d 515 (Fed. Cir. 1987)..................................................................................................6

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*,
   908 F.2d 951 (Fed. Cir. 1990) .................................................................................................7

*Church v. City of Huntsville*,
   30 F.3d 1332 (11th Cir. 1994)..................................................................................................6

*Crocs, Inc. v. Int'l Trade Comm'n*,
   598 F.3d 1294 (Fed. Cir. 2010)..............................................................................................20

*DePaoli v. Daisy Mfg. Co., Inc.*,
   No. 07-cv-11778, 2009 WL 2145721 (D. Mass. July 14, 2009) ............................................10

*Display Techs., LLC v. Display Indus., LLC*,
   No. 11 Civ. 6390, 2011 WL 6188742 (S.D.N.Y. Dec. 5, 2011) ............................................21

*Durling v. Spectrum Furniture Co.*,
   101 F.3d 100 (Fed. Cir. 1996)................................................................................................17

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008)................................................................................................17

*Gentex Corp. v. Donnelly Corp.*,
   69 F.3d 527 (Fed. Cir. 1995)..................................................................................................11

*High Tech Med. Instr., Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995) ..................................................................................22

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009) ................................................................................17

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*,
    302 F.3d 1352 (Fed. Cir. 2002) ..................................................................................7

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398, 127 S. Ct. 1727 (2007) .....................................................................20

*L.A. Gear v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) ................................................................................13

*Lankford v. Sherman*,
    451 F.3d 496 (8th Cir. 2006) ......................................................................................6

*In re Mann*,
    861 F.2d 1581 (Fed. Cir. 1988) ...........................................................................12, 17

*Mercexchange, L.L.C. v. eBay, Inc.*,
    467 F. Supp. 2d 608 (E.D. Va. 2006) .....................................................................5, 6

*N.A.A.C.P. v. North Hudson Regional Fire & Rescue*,
    707 F. Supp. 2d 520 (D.N.J. 2010) .......................................................................5-6, 7

*Nutrition 21 v. United States*,
    930 F.2d 867 (Fed. Cir. 1991) ..................................................................................21

*Oatey Corp. v. IPS Corp.*
    514 F.3d 1271 (Fed. Cir. 2008) ................................................................................10

*Phillips v. AWH Corp.*,
    415 F.3d 1305 (Fed. Cir. 2005) ................................................................................10

*Quad/Tech, Inc. v. Q.I. Press Controls B.V.*,
    701 F. Supp. 2d 644 (E.D. Pa. 2010) ......................................................................22

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010) ................................................................................12

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) ..................................................................................3

*Salazar v. Buono*,
    130 S. Ct. 1803 (2010) ............................................................................................5, 6

*Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*,
    431 F.2d 539 (5th Cir. 1970) ....................................................................................13

*Sys. Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*,
    364 U.S. 642 (1961) ...................................................................................................6

*Tone Brothers, Inc. v. Sysco Corp.*,

No. 09-cv-60011, 1992 WL 200128, (S.D. Iowa Mar. 17, 1992), *vacated* 28 F.3d 1192
(Fed. Cir. 1994) ..............................................................................................................11

*Toshiba Corp. v. Juniper Networks, Inc.*,
248 Fed. Appx. 170 (Fed. Cir. 2007) ...........................................................................11

*United States v. Quintanilla, No. CR 09-01188 SBA*,
2011 WL 4502668 (N.D. Cal. Sept. 28, 2011)...............................................................5

*Winter v. Natural Res. Def. Council*,
555 U.S. 7 (2008) ........................................................................................................2, 6

**Statutes, Regulations & Rules**

35 U.S.C. § 102 ...................................................................................................................17

35 U.S.C. § 103(a) ...............................................................................................................17

35 U.S.C. § 171 ...................................................................................................................11

37 C.F.R. § 1.153 ................................................................................................................10

Local Civil Rule 7-9(b) .........................................................................................................5

Local Civil Rule 62(c) ...........................................................................................................4

**Miscellaneous**

Wright & Miller, *Fed. Prac. & Pro.* § 2948.1 ....................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Apple's motion for preliminary injunctive relief on the D'889 patent is now back before the Court on remand from the Federal Circuit.  The record on which the Court denied such relief in its Order of December 2, 2011, however, has now been rendered entirely stale by changed facts and circumstances.   These changed facts and circumstances warrant the Court's reconsideration of its June 25, 2012 Order ("June 25 Order"), in which the Court ruled that "[n]o further briefing or evidence will be permitted" on Apple's motion for preliminary injunctive relief.  (Dkt. No. 1131 at 1.)  To issue a preliminary injunction based on the evidence as it existed seven months ago—or a year ago when Apple first filed its motion—would be reversible error.  A preliminary injunction is an extraordinary remedy that, because strictly prospective, may be based only upon accurate and up-to-date evidence.

Samsung therefore respectfully seeks leave, pursuant to Local Rule 7-9, to file a motion seeking reconsideration of the Court's June 25 Order, and permission to introduce current evidence that demonstrates the absence of any likely infringement, validity, or irreparable harm to Apple on its D'889 patent warranting grant of a preliminary injunction.

## II.   PROCEDURAL BACKGROUND

### A.   Apple's 2011 Motion For A Preliminary Injunction

Apple first moved for a preliminary injunction on July 1, 2011.  (Dkt. No. 86.)  Apple argued that the Galaxy Tab 10.1 shares the "major elements" of the D'889 patent, including "an overall rectangular shape with four evenly rounded corners," "a flat clear surface covering the front of the device that is without any ornamentation," "a thin rim surrounding the front surface," "a substantially flat back panel that rounds up near the edges to form the thin rim around the front surface," and "a thin form factor."  (*Id.* at 14-15.)  Apple emphasized visual comparisons between its iPad2 and the Galaxy Tab 10.1 to support its position that the Galaxy Tab 10.1 infringed the D'889 patent (*Id.* at 3; Dkt. No. 282 at 8), even though it did not argue until its reply that the iPad2 "embodies the D'889 patent."  (Dkt. No. 282 at 11.)

Apple also claimed that Samsung's introduction of the "Galaxy Tab tablet in the fall of 2010 directly harmed sales of the original iPad" because the "Galaxy Tab captured more than 17% of tablet sales during the holiday season while Apple's market share declined."  (Dkt. No. 86 at 27 (citations omitted).)  Apple predicted that the Galaxy Tab 10.1 would have a "similar impact" (*Id.* at 27 (citations omitted)), emphasizing that "[m]any of the design features that drove demand for the iPad are found in the iPad2."  (Dkt. No. 282 at 11.)

## B.     The Court's Denial Of Apple's 2011 Motion For A Preliminary Injunction

Explaining that a "preliminary injunction is an extraordinary remedy, never granted as a matter of right," the Court denied Apple's motion in its entirety on December 2, 2011.  (Dkt. No. 452 at 8 (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 9 (2008).)  The Court found the D'889 patent likely invalid as obvious in light of the 1994 Fidler/Knight Ridder tablet—a finding based on Apple's own broad characterization of the patent's scope (*see* Dkt. No. 86 at 14-15).  The Court determined that the "D'889 patent is a broad, simple design that gives the overall visual impression of a rectangular shape with four evenly rounded corners, a flat glass-like surface without any ornamentation and a rim surrounding the front surface.  The back is a flat panel that rounds up near the edges.  The overall design creates a thin form factor.  The screen takes up most of the space on the front of the design."  (Dkt. No. 452 at 40.)  In light of the "broad" nature of the D'889 patent, the Court found serious questions as to invalidity because the Fidler tablet created "basically the same visual impression."  (*Id.* at 40.)

With respect to infringement, the Court compared the Galaxy Tab 10.1 to both the D'889 patent and the iPad2 (*id.* at 46-48) based on Apple's claim and the Court's "assum[ption]" that "the iPad 2 is the commercial embodiment of the D'889 patent."  (*Id.* at 47 n.27.)

Regarding irreparable harm, the Court first explained that "[t]he relationship between the parties frames the Court's analysis" (Dkt. No. 452 at 31), and then that:

> There appear to be two major competitors in the tablet market: Apple and Samsung.
> As of the second quarter in 2011, Apple and Samsung together claimed over 75% of
> the tablet market.  Indeed, from the third to fourth quarter of 2010, the evidence
> shows that Apple's market share of the tablet market decreased 20 percentage points,
> while Samsung's newly introduced tablet gained approximately 17% of the market.

1    (*Id.* at 48-49 (citations omitted).)  Based on alleged evidence "that Samsung has been taking market

2    share from Apple overall" (*id.* at 49 n.29), the Court found probable irreparable harm, citing the rule

3    that the "existence of a two-player market may well serve as a substantial ground for *granting* an

4    injunction" because "it creates an inference that an infringing sale amounts to a lost sale for the

5    patentee."  (*Id.* at 48-49 (quoting *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed.

6    Cir. 2011) (emphasis in original).)  Apple then appealed.

7        **C.        The Federal Circuit's Decision**

8        On May 14, 2012, the Federal Circuit affirmed this Court on all but the D'889 patent.  As to

9    that patent, the Court of Appeals remanded because it disagreed with this Court's obviousness

10   analysis.  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1328-32 (Fed. Cir. 2012). The

11   Court of Appeals explained that, "[u]nlike the D'889 patent, the Fidler reference contains no thin

12   bezel surrounding the edge of the front side," the sides of the Fidler reference are neither smooth

13   nor symmetrical; it has two card-like projections extending out from its top edge and an indentation

14   in one of its sides.  And the back of the Fidler reference also conveys a visual impression different

15   from that of the D'889 design." *Id.* at 1331.  While the "D'889 design creates the visual impression

16   of an unbroken slab of glass extending from edge to edge on the front side of the tablet," the "Fidler

17   reference does not create such an impression."  *Id.*   These "noticeable differences" sufficed to

18   render the two designs distinct.  *Id.*  According to the Federal Circuit, this Court had "view[ed] the

19   various designs from too high a level of abstraction."  *Id.* at 1332.

20       The Court of Appeals also found no abuse of discretion in the Court's finding of a likelihood

21   of irreparable harm based on "the relative market share of Apple and Samsung and the absence of

22   other competitors in the relevant market."  *Id* at 1328.

23       Over a dissent as to whether there should be a remand, the court "vacate[d] the order

24   denying an injunction with respect to the D'889 patent and remand[ed] the case to the district court

25   for further proceedings on that portion of Apple's motion for preliminary relief."  *Id.* at 1333.  The

26   Court of Appeals directed that these "further proceedings" should include an analysis of the balance

27   of hardships and public interest factors, but did not limit the scope of the "further proceedings" to

28   those two factors.  *Id.*

**D.    The Court's Orders Since The Federal Circuit Decision**

On May 18, 2012, prior to the Federal Circuit's issuance of the mandate, Apple filed a motion to shorten time and for injunctive relief pursuant to Rule 62(c) emphasizing that, in its prior order, "the Court noted that Apple and Samsung are the two major competitors in the tablet market" and "that in the fourth quarter of 2010, Apple's tablet market share decreased by 20%, while Samsung's newly-introduced tablet gained 17% of the market." (Dkt. No. 951 at 6-7.)

On May 21, 2012, this Court granted Apple's motion to shorten time, stating that the parties "shall address" the balance of hardships and public interest factors, and that the "Court will not entertain new evidence with respect to the issuance of the preliminary injunction EXCEPT with respect to the amount of a bond." (Dkt. No. 962 at 2.)

On May 25, 2012, Samsung moved for leave to seek reconsideration of this Court's May 21 Order to the extent that it precludes Samsung from introducing new evidence except with respect to the amount of the bond.  Samsung argued that the Court should consider all the current, relevant evidence, and not merely the stale record prepared over half a year ago, including evidence related to changes in competition and market shares in the tablet computer industry, newly discovered prior art, and the Federal Circuit's revised construction of the D'889 patent. (Dkt. No. 978 & 1081.)

On June 4, 2012, this Court denied without prejudice Apple's motion under Rule 62(c), finding that it lacked jurisdiction because the Federal Circuit had not issued the mandate. (Dkt. No. 1032.)  The Court likewise denied without prejudice Samsung's motion for reconsideration. (Dkt. No. 1032 at 2. n.1.)

On June 19, 2012, the Federal Circuit issued the mandate.  On June 21, 2012, the Court stated its intent to hold a hearing on Apple's renewed motion for a preliminary injunction on the D'889 patent, explaining that it regarded such a hearing as required by "due process," but also stating its intent to deny Samsung's renewed motion for leave to seek reconsideration of the Court's May 21 Order.

On June 25, 2012, having received the Federal Circuit's mandate, the Court issued an order reiterating that the preliminary injunction hearing would be limited to consideration of "(1) whether the balance of the hardships favors issuing a preliminary injunction, and (2) whether the public

interest favors issuing a preliminary injunction" and that "[n]o further briefing or evidence will be permitted." (Dkt. No. 1131, at 1.) Samsung nonetheless respectfully requests the Court's reconsideration of its June 25 Order.

## III.   **LEGAL STANDARD**

This Court has discretion to reconsider its prior orders. *See United States v. Quintanilla*, No. CR 09-01188 SBA, 2011 WL 4502668, at *5 (N.D. Cal. Sept. 28, 2011). Local Civil Rule 7-9(a) provides that any party can request "leave to file a motion for reconsideration of any interlocutory order made by that Judge on any ground set forth in Civil L.R. 7-9 (b)." Under Rule 7-9(b), reconsideration is appropriate if the district court (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. *See Quintanilla*, 2011 WL 4502668, at *5. Additionally, the Court has inherent authority to reconsider interlocutory orders to prevent manifest injustice. *Id*. at *5.

## IV.   **ARGUMENT**

### A.   **The Court May Not Grant Apple A Preliminary Injunction On The D'889 Patent Based On Stale Evidence Of Likely Infringement, Validity And Irreparable Harm**

Because injunctions are equitable and prospective in nature, when deciding a motion to grant or modify injunctive relief, courts must consider the facts as they presently exist, not as they existed at some point in the past. *See, e.g.*, *Salazar v. Buono*, 130 S. Ct. 1803, 1816 (2010) ("An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account *all of the circumstances* that bear on the need for *prospective* relief.") (emphasis added); *MercExchange, L.L.C. v. eBay, Inc.*, 467 F. Supp. 2d 608, 611 (E.D. Va. 2006) (ruling, on remand from the Supreme Court's decision holding that injunctive relief does not follow automatically from a finding of patent infringement, that court must "consider the facts as they exist at the time of remand and not as they existed several years in the past."); *N.A.A.C.P. v. North Hudson Regional*

1  *Fire & Rescue*, 707 F. Supp. 2d 520, 532 (D.N.J. 2010) (considering new evidence and all relevant

2  factors on remand after appeal from previously granted preliminary injunction).[1]

3      Apple's burden is thus to demonstrate that "irreparable injury is *likely* in the absence of an

4  injunction," not that irreparable harm was likely seven months ago.  *Winter*, 555 U.S. at 22; *see*

5  *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Logically, 'a prospective

6  remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.'")

7  (citation omitted); Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2948.1 ("There must be a

8  likelihood that irreparable harm will occur. . . .  A *presently existing* actual threat must be shown.")

9  (emphasis added).  In light of these principles, this Court should consider new evidence bearing on

10  the D'889 patent claim on remand of the preliminary injunction question from the Federal Circuit.

11      As the district court stated in the *eBay* remand, "an injunction . . . necessitates that the court

12  consider the facts ***as they exist at the time of remand*** . . . .  The ***current*** facts are so vital to the

13  court's decision when such form of relief is sought as the court is not only charged with determining

14  the equitable relief appropriate ***on the date of the court's order***, but is also expected to fashion

15  relief that appears appropriate for extension into the future."  467 F. Supp. 2d at 611 (emphasis

16  added); *see also Lankford v. Sherman*, 451 F.3d 496, 513 (8th Cir. 2006) (remand of preliminary

17  injunction request was required because "many facts have changed since the original hearing");

18  *Chemlawn Services Corp. v. GNC Pumps, Inc.*, 823 F.2d 515, 518 (Fed. Cir. 1987) (remanding

---

19
20      [1]  In *Salazar*, for example, the Supreme Court recently reversed a district court's refusal to
21  modify an injunction, holding that "[b]ecause injunctive relief 'is drafted in light of what the court
   believes will be the future course of events, . . . ***a court must never ignore significant changes in***
22  ***the law or circumstances underlying an injunction lest the decree be turned into an 'instrument***
   ***of wrong.***'"  *Salazar*, 130 S. Ct. at 1816 (quotation omitted) (emphasis added); *see also Sys.*
23  *Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) (reversing
   refusal to modify injunction). The Supreme Court, for example, has explained "sound judicial
24  discretion may call for the modification of the terms of an injunctive decree if the circumstances,
   whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since
25  arisen.");  *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) ("A district
   court has inherent authority to modify a preliminary injunction in consideration of new facts.");
26  *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) (affirming dissolution of
   injunction based on "fundamental difference" between "the granting of retrospective relief and the
27  granting of prospective relief").  As discussed in text, these principles are equally applicable to a
   request for an injunction following remand.
28

---

1  preliminary injunction request where "the facts may now have changed in light of the present

2  circumstances" and a party's "subsequent commercial activity, if any, may have altered the facts").

3        Nor does the Federal Circuit's decision limit this Court's ability to consider new evidence.

4  The decision broadly remanded for "further proceedings" regarding the order "denying an

5  injunction with respect to the D'889 patent," without expressing any limitations. *Apple*, 678 F.3d at

6  1333.  This broad remand for "further proceedings" plainly does not preclude the Court from fully

7  considering updated evidence in deciding whether to issue a preliminary injunction. *See*

8  *N.A.A.C.P.*, 707 F. Supp. 2d at 532.

9        Moreover, new evidence should be considered as it affects all four preliminary injunction

10  factors, not only the "public interest" and "balance of hardship" factors as this Court's June 25

11  Order suggests.   The Court of Appeals' decision states that the question of whether to issue a

12  preliminary injunction requires "balancing of the four factors" against one another, not considering

13  a subset of them in isolation. *Apple*, 678 F.3d at 1332-33 (citing *Jack Guttman, Inc. v. Kopykake*

14  *Enters., Inc.*, 302 F.3d 1352, 1362-63 (Fed. Cir. 2002)); *see also Chrysler Motors Corp. v. Auto*

15  *Body Panels of Ohio, Inc.*, 908 F.2d 951 (Fed. Cir. 1990) ("Our rule regarding whether a

16  preliminary injunction should be granted or denied is that the trial court should weigh and measure

17  each of the four factors against the other factors and against the magnitude of the relief requested.").

18  Indeed, as the Federal Circuit acknowledged, the decision whether to issue a preliminary injunction

19  requires a "balancing" of the movant's showing on all four factors against one another and against

20  the relief requested. *Apple*, 678 F.3d at 1332-33.  This balancing can only occur if all four

21  preliminary injunction factors are considered in relation to one another.    *See N.A.A.C.P.*,

22  707 F. Supp. 2d at 541-42 (rejecting argument "that on remand, the Court should only reconsider

23  the first factor—likelihood of success on the merits—of its decision to grant the preliminary

24  injunction, since the Court of Appeals' mandate 'said nothing about reconsidering the other

25  preliminary injunction factors'" and ruling that the court would "reexamine each of the four factors"

26  and consider "new evidence based on any other circumstances which may have changed since the

27  Court granted the injunction").

28

**B.** **Current Evidence Precludes Any Grant Of A Preliminary Injunction On The D'889 Patent**

    **1.** **New Evidence Shows That Apple Is Not Likely To Prove Infringement Of The D'889 Patent**

In the course of discovery, Samsung has uncovered evidence previously withheld by Apple that shows that the D'889 patent does not depict a flat, continuous front surface and that the iPad2 does not embody the D'889 patent. This new evidence also demonstrates that the D'889 patent is substantially different from the Galaxy Tab 10.1.

    **(a)** **Newly Discovered Evidence Contradicts Apple's Claim Construction**

***The 035 Prototype.*** After the arguments on Apple's first preliminary injunction motion took place, Apple produced, pursuant to a Samsung motion to compel, a prototype tablet called the "035" whose photographs Apple submitted to the PTO in connection with its application for the D'889 patent. (Dkt. Nos. 346, 372.) This prototype, according to one of the named inventors of the D'889 patent, embodies the D'889 patent.   (Watson Decl., Ex. 3 (Stringer Dep. Tr.) at 95:5-21, 98:7-104:3; Ex. 4 (Stringer Dep. Ex. 841).)  The figures in the D'889 patent were drawn based on the prototype.  (Watson Decl., Ex. 5 (Hoellwarth Dep. Tr.) at 102:5-10, 103:15-104:4, 117:25-119:9, 121:21-122:16.)

The 035, however, looks far different from the iPad2—Apple's professed commercial embodiment of the D'889 patent:



-8-



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    APLNDC-X000005858

The stark **dissimilarities** between the 035 and the iPad2 show that, since the 035 concededly **was** the embodiment of the D'889 patent, the iPad2 was no such thing.  And since the D'889 patent figures were based directly on the 035, those figures cannot possibly depict the dissimilar iPad2.[2]

   The 035 prototype is relevant for another reason; it has a prominent "gap" separating the outer edge of the glass surface and the frame of the device:

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    APLNDC-X000005885

   Apple inventors have admitted ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████

_____

   [2]   Samsung requested that Apple bring the 035 prototype to the oral argument before the Federal Circuit in light of its obvious relevance.  Apple refused on grounds of confidentiality. (Watson Decl., Ex. 19.)



FIG. 1



FIG. 9

██████████████████████████████████████████████████████████

████████████████████████████████████████████████ *see also Oatey Corp. v. IPS*

*Corp.*, 514 F.3d 1271, 1276-77 (Fed. Cir. 2008) (vacating claim construction that "improperly

excluded" embodiment from the scope of claim construction, and holding that "where claims can

reasonably to interpreted to include a specific embodiment, it is incorrect to construe the claims to

exclude that embodiment, absent probative evidence on the contrary."). Thus, contrary to Apple's

claims, the front face of the D'889 patent does ***not*** show an uninterrupted, continuous glass surface

running from edge to edge. Moreover, far from having a "thin form factor" as the Court previously

found, the 035 shows that the D'889 patent is bulky and thick.[3]

   ***Apple's Admissions to the PTO.*** Apple's admissions to the PTO make equally clear that the

D'889 patent does not include a continuous flat front surface and that the iPad2 does not embody it.

_____

   [3]   Apple has argued that the photographs of the 035 model submitted to the PTO during
prosecution of the D'889 patent are irrelevant because "the Examiner expressly excluded the
photos" from the patent. (Dkt. No. 1033 at 9.) Although the Examiner struck reference to the
photographs of the 035 model from the D'889 patent, those pictures and Apple's statement that they
represent an embodiment of the patent remain part of the prosecution history and are therefore
relevant to the scope of the patent. *See DePaoli v. Daisy Mfg. Co., Inc.*, No. 07-cv-11778, 2009 WL
2145721, at *8 (D. Mass. July 14, 2009) (scope of design patent limited by prosecution history); *see
also Phillips v. AWH Corp.*, 415 F.3d 1305, 1317 (Fed. Cir. 2005) (en banc) (prosecution history
relevant because it demonstrates "how the inventor understood his invention"). The Examiner did
not strike reference to the 035 model because it did not embody the D'889 patent. Rather, the
Examiner struck the reference pursuant to 37 C.F.R. § 1.153, which pertains to the proper method of
describing and claiming a design.

*First*, newly produced Apple patent applications demonstrate that the iPad2 is not an embodiment of the D'889 patent.  Apple recently produced, again after being compelled to do so, new applications it filed for design patents ███████████████████████████████████

███████████████████████ Each of these applications claims

███████████████████████████████████ *see* 35 U.S.C. § 171 (limiting design patents to new and original designs)), meaning the iPad2 design was *not* patented before and that the iPad2 does *not* embody the preexisting D'889 patent. ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████ Apple's witnesses admit the same design cannot be patented multiple times (Watson Decl., Ex. 5 (Hoellwarth Dep. Tr.) at 237:11-16), so these iPad2 design patents necessarily are for a design that *differs* from the D'889 patent.  *See Application of Thorington*, 418 F.2d 528, 535 (Cust. & Pat. App. 1969) (only one patent per design).[5]

*Second*, in 2008 and 2009, long after the D'889 patent issued, Apple submitted applications for the D'677 and D'678 patents for an electronic device, each of which was claimed to be "new, original and ornamental."  In each application, Apple identified the D'889 patent as prior art.  The Patent Office initially rejected both designs as obvious in light of prior art.  To overcome this

---

[4]  Apple refused to produce these applications until the Court ordered it to do so on April 12, 2012.  (Dkt. No. 867 at 6-7.)

[5]  Relying on a vacated and unpublished district court decision, *Tone Brothers, Inc. v. Sysco Corp.*, No. 09-cv-60011, 1992 WL 200128, at *5 (S.D. Iowa Mar. 17, 1992), *vacated* 28 F.3d 1192 (Fed. Cir. 1994), Apple argues that its statements before the PTO are irrelevant to the construction of the D'889 patent.  (Dkt. No. 1033 at 9-10.)  Apple, however, ignores the fact that both the D'889 patent and its later patent applications name the same inventors.  Statements by inventors that are adverse to the patentee's case may be considered in interpreting a patent.  *See, e.g., Toshiba Corp. v. Juniper Networks, Inc.*, 248 Fed. Appx. 170 (Fed. Cir. 2007) (unpublished) (relying in part on inventor's statements to narrowly construe claim); *Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed. Cir. 1995) (same).  The inventors all declared under oath that they reviewed the specifications of the subsequent applications, each of which states that they claim a "new" design.  *See, e.g.,* Watson Decl. Ex. 12 at APLNDC-Y00003085 – 3091 & APLNDC-Y0000309319.

objection, Apple asserted that the prior art cited by the Patent Office did not disclose "a substantially continuous transparent surface on an electronic device and the substantially smooth or flush transition between the display screen and the rest of the front face of the device[.]" (Watson Decl., Ex. 17 at APLPROS0000011937, Ex. 18 at APL-ITC7960000003884.) Because the D'889 patent preceded (and was cited as prior art to) the D'677 and D'678 patents, the D'889 patent necessarily must *exclude* the features Apple claimed had not previously been disclosed – viz., the "substantially continuous transparent surface" and a "substantially smooth or flush transition between the display screen and the rest of the front face of the device." The relevance of this evidence became apparent only after the initial preliminary injunction hearing once Apple produced the 035 mock up and Apple inventors provided testimony demonstrating that the D'889 patent has a discernible gap between the screen edge and rim.

**(b)**     **The Federal Circuit's Decision Contradicts Apple's Broad Construction**

As the Court has recognized, it is "necessary" to analyze "the scope of the claimed designs" before considering infringement. (Dkt. No. 452 at 15.) In its December 2011 ruling, this Court accepted Apple's broad proposed construction of the D'889 patent and found the patent likely invalid. (Dkt. No. 452 at 40.) In assessing the novelty of the D'889 patent, however, the Federal Circuit held that this Court erred by viewing the D'889 patent from "too high a level of abstraction" and construing the "claimed design too broadly." *Apple*, 678 F.3d at 1332. Indeed, as the Federal Circuit has previously recognized, "[d]esign patents have almost no scope." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988); *see also Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) ("A claim to a design containing numerous functional elements … necessarily mandates a narrow construction.").

This Court's prior finding of a likelihood of infringement should be reassessed in light of the Federal Circuit's narrow construction. Otherwise, the D'889 patent would be construed narrowly for purposes of obviousness analysis (under the Federal Circuit's recent decision), but broadly for purposes of noninfringement (under this Court's December 2011 ruling)—a result contrary to the well-established principle that "[a] patent may not, like a 'nose of wax,' be twisted one way to avoid

[invalidity] and another to find infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (quoting *Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*, 431 F.2d 539, 544 (5th Cir. 1970)).  The Court of Appeals' narrowed claim construction thus alters the infringement analysis this Court should conduct in considering which party has a likelihood of success on the merits.

**(c)** **The Galaxy Tab 10.1 Is Not Likely Infringing Under A Proper Claim Construction**

Under a proper construction, considering both the 035 model and the Federal Circuit's narrowed construction of the '889 for validity purposes, Apple cannot demonstrate a substantial likelihood that the Galaxy Tab 10.1 infringes.  The Court's prior infringement conclusion was influenced by its comparison between the D'889 patent and the iPad2.  (Dkt. No. 452 at 47.)  The Court stated that when "the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly." (*Id.* at 47 n.28 (citing *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed. Cir. 1993)).  Such reasoning no longer holds true, however, since the 035 model proves that the iPad2 is not substantially the same as the D'889 patent.

The relevant embodiment for comparison purposes is not the iPad2 but the 035 mockup, and the 035 plainly is not substantially similar to the Galaxy Tab 10.1, as shown below:



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                APLNDC-X000005880

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25    Comparisons of the Galaxy Tab 10.1 to the D'889 patent itself likewise show noticeable

26  differences that raise substantial questions of noninfringement and thus defeat any likelihood of

27  success on the merits:

28

| 'D889 patent | '035 Mockup | Galaxy Tab 10.1 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

This Court recognized some differences between the Galaxy Tab 10.1 and the D'889 patent previously.  (Dkt. No. 452 at 45-46.)  This series of comparisons shows there are more.  The Tab

10.1 (1) is approximately half as thick as the D'889 patent; (2) has a display screen with a 5:3 aspect ratio that is significantly different from the D'889 patent's screen's 4:3 aspect ratio; (3) has an outer casing made of three parts (not two); (4) has noticeably more softly rounded corners; (5) has differently-shaped edges and bezel; (6) has a metallic lip and substantial ornamentation on the back; and (7) has no gap between the flat front surface and the device's edge.  The 035 model shows, in a way that could not previously be demonstrated, the dramatic extent and impact of these differences.

Such distinctions matter, given a design patent's inherently limited scope.  *See In re Mann*, 861 F.2d at 1582 ("Design patents have almost no scope.").  Such differences preclude a finding of infringement, as they would not cause an "ordinary observer, giving such attention as a purchaser usually gives," to find the "two designs are substantially the same . . . such as to deceive such an observer, inducing him to purchase one supposing it to be the other."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008).

### 2.    <u>Newly Discovered Prior Art Shows That The D'889 Patent Is Likely Invalid</u>

An asserted design patent is anticipated by prior art, and therefore invalid, if a single prior art reference discloses the design.  35 U.S.C. § 102.  An asserted design patent is obvious in the light of prior art, and therefore invalid, if a number of prior art references would have been combined by a designer of ordinary skill in the art to disclose the design.  35 U.S.C. § 103(a); *Durling v. Spectrum Furniture Co*., 101 F.3d 100, 103 (Fed. Cir. 1996).  Whether a design is disclosed by prior art, and thus invalid as obvious, is determined by the same "ordinary observer" test as infringement.  *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41, 1243-44 (Fed. Cir. 2009).  Minor differences do not prevent a finding of obviousness because "minor or trivial differences [will] necessarily exist between any two designs that are not exact copies of one another."  *Id.* at 1243.

Samsung has discovered two critical prior art references that have never been considered by *either* this Court or the Federal Circuit.  These establish that the D'889 patent likely is invalid.

SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S
JUNE 25, 2012 ORDER

*First*, U.S. patent D500,037 shows a design for a "bezel-less flat panel display" that was filed a year before D'889 patent's alleged conception:



D504,889                 D500,037

(Declaration of Brett Arnold in Support of Samsung's Motion for Summary Judgment, Dkt. No. 943, Ex. 22.)  The D'037 patent has nearly the same rectangular shape as the D'889 patent, with a transparent and/or reflective surface running from edge to edge on the front of the device with no interruptions, giving the same "unframed" impression as D'889 patent.  The D'037 patent is also symmetrical and smooth in all views and has a relatively thin profile.  Because it creates the same basic visual appearance as the D'889 patent, it is a proper primary reference.[6]

---

[6] The optional mask region on the front of the D'889 patent is also shown in the D'037 patent. Figure 3 of the D'037 patent shows the mask underneath the continuous, transparent cover piece, and the accompanying utility patent confirms a mask under the top transparent layer surrounding the active display area.  (*See* Dkt. No. 943, Ex. 24, U.S. Patent 6,919,678 at 5:53 to 6:31.)

*Second*, the "Brain Box" display below,[7] whose display portion can be removed from its base, is an Apple design made public at least as early as 1997:



As Apple witnesses acknowledged, ████████████████████████████████████████

████████████████████████████████  A named inventor of the D'889 patent testified ███████████

████████████████████████████████████████████████████████████████████████

████████████████

The D'037 patent has design characteristics that are basically the same as the D'889 patent, and either anticipates the D'889 patent on its own or constitutes a proper primary reference for purposes of obviousness.  The "Brain Box" display in combination with the D'037 patent creates the same overall visual appearance as the D'889 patent, with either serving as the primary or secondary reference to the other, such that the ordinary observer test would be satisfied.[8]  "[T]he

---

[7]  The image is from *AppleDesign* by Paul Kunkel (1997).  (Dkt. No. 943, Ex. 25 at 144.)

[8]  Both of these display devices are appropriate obviousness references because the D'889 patent claims broadly that it is an "electronic device," and the file history shows that the design corresponded to both a tablet device and a display or screen that could be coupled to a computing device.  (Dkt. No. 943, Ex. 26 at APLPROS0000010190.)  Other prior art references also taught flat, uninterrupted front and back surfaces on a rectangular shape with rounded corners and a thin profile.  (Dkt. No. 943, Ex. 27 (JP1178470), Ex. 28 (KR 30-0304213), and Ex. 24.)  In addition, inventor Roger Fidler testified that in 1981 he created a tablet design that was rectangular with four evenly rounded corners, a flat clear surface running from edge to edge, no physical buttons, and a
(footnote continued)

Case No. 11-cv-01846-LHK (PSG)
SAMSUNG'S MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S
JUNE 25. 2012 ORDER

1   scope and content of the prior art" demonstrate that "the level of ordinary skill in the art" was

2   sufficient, and likely, to result in the design of the D'889 patent at the time of its alleged invention.

3   *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1308 (Fed. Cir. 2010); *see also KSR Int'l Co. v.*

4   *Teleflex Inc.*, 550 U.S. 398, 417 (2007).

5           **3.    New Evidence Shows Changes In The Market For Tablets That Negate**
            **Any Likelihood of Irreparable Harm**

6

7           This Court predicated its prior finding of likely irreparable harm principally upon the view

8   that Apple and Samsung were the "two major competitors in the tablet market" and that a two-

9   player market renders irreparable harm more likely.  (Dkt. No. 452 at 49.)  The Federal Circuit, in

10  finding this conclusion within this Court's discretion, similarly relied upon "the relative market

11  share of Apple and Samsung and the absence of other competitors in the relevant market." 678 F.3d

12  at 1328.   But the tablet market is no longer a two-player market, and thus this crucial basis for the

13  prior irreparable harm finding no longer holds.  New entrants to the tablet market emerge with

14  increasing frequency, with Microsoft just the latest entrant to the tablet competition.  *See, e.g.,*

15  http://www.microsoft.com/en-us/news/press/2012/jun12/06-18announce.aspx  (last accessed June

16  25, 2012).  Nor does Samsung enjoy the relative market share the Court suggested in finding that,

17  after the introduction of Samsung's Galaxy Tab 7.0 (a product not accused here), "Apple's market

18  share of the table market decreased 20 percentage points, while Samsung's newly introduced tablet

19  gained approximately 17% of the market," (Dkt. No. 452 at 49 & n.29.)   Finally, there is no longer

20  any basis for the Court's prior assumption that Apple is likely to be harmed by loss of iPad2 sales

21  (Dkt. No. 452 at 48-49), since new evidence discussed above shows that the iPad2 is not an

22  embodiment of the D'889 patent.

23

24

25

26  _____

27  thin form factor.  (Dkt. No. 943, Ex. 29 at 290:22-299:10.).  These features were obvious prior to
    the alleged conception of the D'889 patent.

28

(a)   **New Evidence Shows That The Tablet Market Has Become Dramatically More Competitive**

Other major changes in tablet market undermine the Court's prior finding of likely irreparable harm.  The parties have now seen the market share evidence for ***2011***, including for the Galaxy Tab 10.1.  According to Apple's own expert, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

These major changes in the economics of the tablet market render the Court's previous irreparable harm ruling, and the record on which it was based, entirely obsolete.  Apple cannot establish *prospective* irreparable harm based on the premise that it is Apple's sole major competitor in a two-player market when that assumption bears no relation to economic reality.   Where the evidence shows that Apple has successfully competed against the accused Galaxy Tab 10.1 and ***gained*** market share, no preliminary relief can possibly be appropriate.  *See Display Techs., LLC v. Display Indus., LLC*, No. 11 Civ. 6390, 2011 WL 6188742, at *3 (S.D.N.Y. Dec. 5, 2011) (denying preliminary injunction where patentee had successfully competed against accused product); *see also Automated Merch. Sys., Inc. v. Crane Co.*, 357 Fed. Appx. 297, 301 (Fed. Cir. 2009) (unpublished) (reversing preliminary injunction where proof of claimed lost market share was insufficient); *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) ("Neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of

1  special circumstances justifying the extraordinary relief of an injunction prior to trial.") (citation

2  omitted).  This is all the more true here, where the accused product is near the end of its lifecycle.[9]

3       **(b)    New Evidence Shows that Apple Does Not Practice the Patent**

4       As described above, new evidence withheld by Apple shows that, contrary to the Court's

5  prior assumption, the iPad2 is not an embodiment of the D'889 patent.  The Court's irreparable

6  harm analysis focused on potential lost sales of the iPad products (Dkt. No. 452 at 48-49)—lost

7  sales that are immaterial here if the D'889 patent is not embodied in the iPads now on the market—

8  namely the iPad2.  *High Tech Med. Instr., Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed.

9  Cir. 1995) ("lack of commercial activity by the patentee is a significant factor in the [irreparable

10  harm] calculus") (reversing preliminary injunction); *Quad/Tech, Inc. v. Q.I. Press Controls B.V.*,

11  701 F. Supp. 2d 644, 656 (E.D. Pa. 2010) (plaintiffs' failure to implement patent in any product it

12  currently sells "is an important consideration against a finding of irreparable harm"); *see Apple*, 678

13  F.3d at 1324 ("[T]he district court was correct to require a showing of some causal nexus between

14  Samsung's infringement and the alleged harm to Apple as part of the showing of irreparable

15  harm.").  The absence of such evidence weighs heavily against a finding of irreparable harm.

16  *Apple*, 678 F.3d at 1324 (requiring a nexus between the infringement and harm); *High Tech*

17  *Medical*, 49 F.3d at 1556.

18  **V.    CONCLUSION**

19       New evidence  developed since the Court previously addressed Apple's motion makes clear

20  that Apple cannot show likelihood of success on infringement or validity or any prospective

21  likelihood of irreparable harm warranting a preliminary injunction on the D'889 patent.

22  Accordingly, the Court should grant leave to Samsung to file its motion to reconsider the Court's

23  June 25 Order.

24

25  _____

26      [9]  Apple argues that, as the dominant seller of tablets, it may still lose **sales** to the Galaxy Tab

27  10.1.  There is no presumption, however, that lost **sales**—as opposed to lost **market share**—is irreparable.  *Automated Merch.*, 357 Fed. Appx. at 300-01; *Abbott Labs. v. Andrx Pharms., Inc.*,

28  452 F.3d 1331, 1347-48 (Fed. Cir. 2006).

1    DATED: June 26, 2012                    Respectfully submitted,

2                                            QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
3

4                                              By /s/ Victoria Maroulis
5                                                  Charles K. Verhoeven
                                                   Kevin P.B. Johnson
6                                                  Victoria F. Maroulis
                                                   Attorneys for SAMSUNG ELECTRONICS
7                                                  CO., LTD., SAMSUNG ELECTRONICS
                                                   AMERICA, INC. and SAMSUNG
8                                                  TELECOMMUNICATIONS AMERICA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28