# EXHIBIT 5

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN JOSE DIVISION
 4   APPLE INC., a California        )
     corporation,                    )
 5                                   )
                   Plaintiff,        )
 6                                   )
          vs.                        )  No: 11-CV-01846-LHK
 7                                   )
     SAMSUNG ELECTRONICS CO., LTD,   )
 8   a Korean business entity;       )
     SAMSUNG ELECTRONICS AMERICA,    )
 9   INC., a New York corporation;   )
     SAMSUNG TELECOMMUNICATIONS      )
10   AMERICA, LLC, a Delaware        )
     limited liability company       )
11                                   )
                   Defendants.       )
12   _____)
13
14      **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**
15
16            DEPOSITION OF QUIN HOELLWARTH
17              Redwood Shores, California
18              Tuesday, October 25, 2011
19
20
21
22
23   Reported By:
24   LINDA VACCAREZZA, RPR, CLR, CRP, CSR. NO. 10201
25   JOB NO. 42859
```

TSG Reporting 877-702-9580

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 101

1  whether a design is new and original as compared
2  to the prior art prior to the time that a design
3  application is made?
4         MR. OLSON:  Objection.  Asked and
5     answered, but you can answer this "yes,"
6     "no," "I don't know," I don't remember,"
7     or to the extent that the only
8     information is privileged, you should so
9     state.
10        THE WITNESS:  I don't know.
11   Q.    Has it ever had such guidelines,
12  to your knowledge?
13   A.    I don't know.
14   Q.    Show you what's previously marked
15  as Exhibit 8, which is a copy of United States
16  design patent 504889.  Please let me know when
17  you've had a chance to review the 889 design
18  patent.
19        MR. OLSON:  Do you have a darker
20     copy?
21        MR. ZELLER:  We can get one.  Why
22     don't we go off the record for a moment.
23        THE VIDEOGRAPHER:  The time is
24     12:11 p.m. and we are off the record.
25        (Recess taken from 12:11 p.m. to

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 102

1        12:13 p.m.)
2            THE VIDEOGRAPHER:  The time is
3     12:13 p.m.  We are on the record.
4  BY MR. ZELLER:
5        Q.   You've an opportunity to review
6  the 889 design patent?
7        A.   I have.
8        Q.   Do you recognize this as an issued
9  patent that you worked on the application for?
10       A.   Yes.
11       Q.   And you did this back when you
12  were with Beyer Weaver & Thomas?
13       A.   Yes.
14       Q.   Was your involvement complete
15  prior to the time that you went and began working
16  as an Apple employee or did your work on this
17  design patent application continue on?
18            MR. OLSON:  Did he work on, you
19        mean the prosecution?
20            MR. ZELLER:  Yes.
21            THE WITNESS:  I started at Apple
22        in 2007.  This issued in 2005.
23       Q.   So the answer is that it was
24  completed before you left?
25       A.   Yes.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 103

1  Q. Before you left Beyer Weaver &
2  Thomas?
3  A. Yes.
4  Q. And generally speaking, what did
5  you do in connection with the application that
6  resulted in the 889 design patent?
7  A. What do you mean, generally do?
8  Can you be more specific?
9  Q. Well, please tell me what the
10 nature of your tasks and responsibilities were in
11 connection with the 889 design patent in the
12 prosecution?
13 A. I prepared the patent application
14 and filed it. Is that what you mean?
15 Q. When you say that you prepared the
16 application, were you responsible for the
17 generation of the figures that are shown here in
18 the 889 design patent?
19 A. Yes.
20 Q. I take it you didn't draw them
21 yourself?
22 A. Are you asking me if I did or --
23 Q. Right.
24 A. I did.
25 Q. You drew these?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 104

1  A. I did.
2  Q. Did you draw all nine of the
3  figures?
4  A. I believe so.
5  Q. Generally speaking, in connection
6  with those design patent applications that you
7  worked on when you were with Beyer Weaver &
8  Thomas, did you actually draw the figures?
9  A. I did.
10 Q. Since you've been working as an
11 employee for Apple, with respect to those design
12 patent applications that you've worked on, do you
13 typically actually draw the figures?
14 A. No.
15 Q. So that practice changed at some
16 point?
17 A. Yes, when I started at Apple.
18 Q. Since the time period you began
19 working for Apple, who has prepared the figures
20 for the design patent applications? And I'm
21 talking about actually physically drew them.
22 A. In some circumstances, the outside
23 counsel. Actually, an outside counsel prepares
24 the final drawings. It's probably a better
25 answer.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 105

1    Q.   My question is, is more pedestrian
2 and mundane.  I'm trying to find out in those
3 instances where you were involved with design
4 patent applications after starting with Apple,
5 who was the person who actually physically does
6 the drawing?
7    A.   Well, in what time frame, because
8 it's an organic process.
9    Q.   Well, I've been focusing on the
10 time period since you began working for Apple.
11 But if the person who actually does the drawings
12 changed over time, please tell me that.
13    A.   Well, let's just say it varies or
14 it depends.
15    Q.   In general, are the figures of the
16 Apple design patent applications prepared by
17 Apple employees?
18    A.   The drawings for the patent
19 applications?
20    Q.   Right.
21    A.   No.
22    Q.   Typically, in those instances
23 where you've been involved with the applications,
24 are they done by outside vendors?
25    A.   Since being at Apple?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 116

1  as compared to the prior art?
2          MR. OLSON:  I'll instruct him not
3      to answer on the basis of privilege and
4      attorney work product.
5         (Testimony marked as requested.)
6      Q.   Did Apple or its counsel do
7  anything to determine that the design that's
8  shown here in the 889 design patent was new and
9  original as compared to the prior art?
10         MR. OLSON:  So if I may make a
11     suggestion as to how you may reframe that
12     in which I would allow the question.
13         MR. ZELLER:  Okay.
14         MR. OLSON:  Is he obviously was
15     personally involved in the participation
16     of the filing of this application in
17     2004.  So I would permit you to ask the
18     question whether he recalls doing
19     anything at that time.
20         MR. ZELLER:  Yeah.  That was the
21     context in which I was asking is back in
22     the prosecution of this application.  So
23     let me be more definitive, then, on the
24     time period of what I'm talking about.
25     Q.   Prior to the time that this design

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 117

1  patent issued on May 10, 2005, did Apple or its
2  counsel do anything to determine that the design
3  shown in the 889 design patent was new and
4  original as compared to the prior art?
5           MR. OLSON:  Objection.  Vague on
6       "Apple or its counsel."  Obviously, I'll
7       allow him to answer as to what he did.
8           THE WITNESS:  I don't recall.
9       Q.   Do you have any knowledge or
10 information in that regard?
11      A.   Not that I can remember.
12      Q.   You'll see that there are a number
13 of named inventors listed in the first column on
14 the first page of the 889 design patent.  Do you
15 see that?
16      A.   Yes.
17      Q.   Was anything done prior to the
18 time that this patent issued to determine that
19 these individuals were, in fact, the appropriate
20 inventors?
21      A.   I don't recall.
22      Q.   Do you have any knowledge or
23 information in that regard?
24      A.   Not that I can remember.
25      Q.   Now, you mentioned that you

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 118

1  prepared the figures that are shown in the 889
2  design patent?
3       A.   Yeah.
4       Q.   Did you base those drawings on
5  some information that you received from Apple?
6       A.   Yes.
7       Q.   And one of the sources of
8  information that you used to prepare the figures
9  were photographs?
10      A.   Yes.
11      Q.   I'm going to show you what was
12 previously marked as Exhibit 841, which is a
13 multi-page document bearing Bates numbers APLPROS
14 00000 18778 through 18798.  And please let me
15 know when you've had an opportunity to review
16 Exhibit 841.
17      A.   (Document review.)
18      Q.   Do you recognize what's been
19 marked as Exhibit 841?
20      A.   I do.
21      Q.   What are these?
22      A.   These are copies of a product,
23 copies of a picture of some product.
24      Q.   And what is the product that is
25 represented in these copies, these materials?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 119

1    A.    It's an electronic device of some
2    sort.
3    Q.    Is this electronic device that's
4    shown here in Exhibit 841 the same electronic
5    device that was used as the basis for the
6    drawings in the 889 design patent?
7    A.    Just to clarify where these -- I
8    know that you presented this as evidence, but
9    where are they from?
10   Q.    Well, I'm going to get to that in
11   a minute.  But I'm just trying to first figure
12   out something is, do these photographs and other
13   images in Exhibit 841 have some relationship to
14   the drawing and drawings that are depicted here
15   in the 889 design patent
16         MR. OLSON:  And Mr. Zeller, I
17   think what we're saying is if he knew the source
18   of them, it would help him to answer that
19   question.  I may be --
20         THE WITNESS:  Yeah, I mean, as far
21         as I don't know -- I mean, until I know
22         where this is from, I don't -- I can't
23         answer your question, right.  I mean...
24   Q.    Well, I mean, I'm just an outside
25   lawyer; I don't know facts.  I'm trying to find

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 120

1  out the facts from you.  What I can say is is
2  that, that these -- and I'm talking about exactly
3  in this form is how it was produced by an Apple
4  prosecuting firm, the Stern firm, as I understand
5  it.  That's my best understanding.
6          A.   This is from the file wrapper.
7          Q.   I believe that there are photos
8  that are in the file wrapper that I'm going to
9  ask you about next that I believe correspond to
10 these.  But again, I'm just an outside lawyer.
11 I'm trying to see how these things are related.
12 And that's my -- that's the point of my
13 questioning.  So it's a little hard for me to
14 make representations to you about any of this
15 because that's part of what I'm trying to find
16 out.
17              MR. OLSON:  Did we provide source
18          information for these?
19              MR. ZELLER:  I don't think so.  My
20          last understanding -- we have asked for
21          the native files of these, these images.
22              MR. OLSON:  And I'm happy to
23          address that as well, but go ahead.
24              MR. ZELLER:  And any original
25          photographs so that we would have clear

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 121

1           images of it and the like.  But, you
2           know, the information we have is pretty
3           limited.  It was, as I understand it,
4           produced by Stern, which I believe took
5           over the prosecution, but -- and that's
6           probably why it's in possession of them.
7           But it doesn't -- we don't know what the
8           ultimate source of this was.
9                    It was presumably transferred
10          from Beyer Weaver & Thomas at some point
11          would be my assumption, but again, that's
12          part of what I'm trying to find out.  So
13          maybe if we step back for a minute and
14          try some kind of foundational things and
15          see if this helps --
16          A.    Okay.
17          Q.    -- jog your memory on any of
18   this.  And let's first focus on the '889 design
19   patent for a moment.
20          A.    Yes.
21          Q.    At some point, did you actually
22   have a three-dimensional model that you were
23   shown or had access to that helped you form the
24   basis of the drawings that you made on the '889
25   design patent?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 122

1      A.    Yes.
2      Q.    And if you could direct your
3  attention to the page of Exhibit 841 that bears
4  Bates number APLPROS 0000018789.
5      A.    18789?
6      Q.    Yes. And you'll see this is a
7  photograph of an individual. Is this you?
8      A.    Yes.
9      Q.    And this photograph shows you
10 holding a three-dimensional tablet mock-up?
11     A.    Yes.
12     Q.    And does this depict the three-
13 dimensional mock-up that you had available to you
14 as a resource to create the '889 design patent
15 figures?
16     A.    Yes.
17     Q.    And in the course of that, was
18 there one model that you had to do that?
19         MR. OLSON: As opposed to?
20         MR. ZELLER: As opposed to more
21     than one.
22         THE WITNESS: I don't recall.
23     Q.    Directing your attention to the
24 last page of Exhibit 841.
25     A.    (Witness complies.)

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 123

1   Q. You'll see that this is a
2   cornucopia of you?
3   A. Yes.
4   Q. Do you know who created these?
5   A. I mean, I don't know but I think
6   it was me.
7   Q. And then directing your attention
8   to the other photographs that are part of Exhibit
9   841 which show various perspectives of the mock-
10  up, did you take these photos?
11  A. It's likely.
12  Q. Do you recall where you did this?
13  In other words, were you at the Beyer law firm's
14  offices? Did you go to Apple to do this? Do you
15  remember?
16  A. Yes, I remember.
17  Q. And where was it?
18  A. Apple.
19  Q. And I take it that's the occasion
20  in which you were provided the mock-up that's
21  depicted in these photographs and other images
22  that we have marked as Exhibit 841?
23  A. I believe so.
24  Q. Do you know where the photographs
25  are?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 236

1  the inventors?
2        MR. OLSON:  You can testify as to
3     any steps you may have taken, meetings
4     you may have had, et cetera, without
5     disclosing the content of such
6     communication, to the extent that you
7     have a recollection.
8        THE WITNESS:  I can't speak to
9     Apple.  For myself, I don't recall.
10    Q.    Was anything done to determine
11 whether any of the named inventors on the '889
12 design patent application, in fact, made a
13 contribution to the claimed invention?
14        MR. OLSON:  You can identify any
15 steps you took or meetings you had or things that
16 you did with respect to that question.
17        THE WITNESS:  Just generally?
18        MR. OLSON:  Without -- I think the
19     question is specific to the '889 patent.
20     But you can give steps you took or
21     actions you took or things you can
22     remember yourself doing without
23     disclosing the content of any
24     communication that you may have received
25     from someone.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 237

1          THE WITNESS:  I don't recall.
2     Q.   Generally speaking, you're aware
3  that a design patent can only have a single
4  claim, right?
5     A.   Yes.
6     Q.   And what's your understanding of
7  what defines a claim in a design patent, just
8  generally speaking?
9          MR. OLSON:  I'll let that answer.
10          THE WITNESS:  The drawings.
11     Q.   You're generally aware that you
12  can't get more than one design patent for what is
13  substantially or essentially the same design,
14  right?
15          MR. OLSON:  Objection. Vague.
16          THE WITNESS:  Generally, yes.
17     Q.   And generally speaking, you
18  understand that when Apple seeks and obtains a
19  design patent, that Apple is necessarily
20  representing or stating to the patent office that
21  the overall appearance of the patent design is
22  not substantially the same as another patented
23  design, right?
24          MR. OLSON: Wait a second.  Calls
25      for a legal opinion and instruct him not

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 238

```
 1            to answer on the ground of attorney-
 2            client privilege and work product.
 3               (Testimony marked as requested.)
 4                  THE WITNESS:  Can we take a
 5            break?  Is it possible?
 6                  MR. ZELLER:  Okay.
 7                  THE VIDEOGRAPHER:  The time is
 8            5:06 p.m.  We are off the record.
 9          (Recess taken from 5:06 p.m. to 5:19 p.m.)
10                  THE VIDEOGRAPHER:  The time is
11            5:19 p.m.  We are on the record.
12   BY MR. ZELLER:
13         Q.    Does Apple --
14               MR. OLSON:  Do you mind, while we
15            are doing stuff, can we just clean up the
16            figures?
17               MR. ZELLER:  Sure.
18         Q.    Does Apple have any processes or
19   procedures in place to ensure that it is not
20   double patenting?
21         A.    At this time?  Is that what your
22   question, is at this time?
23         Q.    Yes.  I'm talking about currently.
24         A.    I don't know.
25         Q.    Has it ever?
```