HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br>Defendants. | Case No.     11-cv-01846-LHK (PSG)<br><br>**APPLE'S RESPONSE TO SAMSUNG'S OPENING MEMORANDUM REGARDING DESIGN PATENT CLAIM CONSTRUCTION** |

# TABLE OF CONTENTS

Page

I.  SAMSUNG URGES ERROR WITH ITS VERBAL DESCRIPTIONS OF THE DRAWINGS ................................................................................................ 1

    A.  The Court Should Reject Samsung's Constructions Because They Are Contrary to Law ................................................................................ 1

    B.  The D'889 Patent Is Best Understood from Its Figures ......................... 4

    C.  The D'677 and D'087 Patents Are Best Understood From Their Figures ............. 6

        1.  D'087 patent .................................................................................. 6

        2.  D'677 patent .................................................................................. 7

    D.  The D'305 Patent .................................................................................... 8

II. SAMSUNG'S ARGUMENTS CONFIRM THE WISDOM OF MAKING THE FUNCTIONALITY DETERMINATION AT THE CONCLUSION OF EVIDENCE .................................................................................................. 9

    A.  The D'889 Patent ................................................................................. 10

        1.  A relatively large screen .............................................................. 10

        2.  Size and proportion that allows portability. ............................... 11

        3.  Transparent cover over the display. ............................................ 11

    B.  The D'677 and D'087 Patents ............................................................. 12

        1.  Size that can be handheld. .......................................................... 12

        2.  A large screen on the front face of a smartphone ....................... 12

        3.  Speaker on the upper portion of the front face ........................... 13

        4.  Transparent cover over the display. ............................................ 13

    C.  The D'305 Patent ................................................................................. 13

CONCLUSION .................................................................................................. 15

APPLE'S RESPONSE TO SAMSUNG'S OPENING MEMORANDUM RE DESIGN PATENT CLAIM CONSTRUCTION
CASE NO. 11-cv-01846-LHK (PSG)
sf- 3160905

i

1

2

## <u>TABLE OF AUTHORITIES</u>

3
**Page(s)**

CASES

4

5
*Amini Innovation Corp. v. Anthony California, Inc.*,
439 F.3d 1365 (Fed. Cir. 2006)................................................................................................ 9

6
*Apple Inc. v. Samsung Elecs. Co.*,
2012 U.S. App. LEXIS 9720 (Fed. Cir. May 14, 2012) ..................................................... 2, 4

7

8
*Berry Sterling Corp. v. Prescor Plastics, Inc.*,
122 F.3d 1452 (Fed. Cir. 1997)........................................................................................... 9, 10

9
*Best Lock Corp. v. Ilco Unican Corp.*,
94 F.3d 1563 (Fed. Cir. 1996)............................................................................................. 9, 10

10

11
*Crocs, Inc. v. ITC*,
598 F.3d 1294 (Fed. Cir. 2010)......................................................................................... 2, 3, 4

12

13
*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (*en banc*)................................................................................ 2

14
*Gorham Co. v. White*,
81 U.S. 511 (1871)..................................................................................................................... 6

15

16
*Inwood Labs., Inc. v. Ives Labs., Inc.*,
456 U.S. 844 (1982)................................................................................................................... 9

17

18
*L.A. Gear, Inc., v. Shoe Co.*,
88 F.2d 1117 (Fed. Cir. 1993)................................................................................................... 9

19
*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)................................................................................................. 3

20

21
*Sun Hill Indus. v. Easter Unlimited*,
48 F.3d 1193 (Fed. Cir. 1995)................................................................................................ 12

22

23
*Tone Bros. v. Sysco Corp.*,
No. 4:90-cv-60011,
1992 WL 200128 (S.D. Iowa Mar. 17, 1992) ......................................................................... 3

24

25

26

27

28

ii

1    Samsung's proposed constructions turn design patent claim construction principles on

2    their head.  The Federal Circuit explicitly cautions against detailed verbal descriptions because

3    the patent drawings are the best description of the claimed design.  Yet Samsung proposes

4    precisely the type of voluminous verbal descriptions that the Federal Circuit condemns.  Even if

5    the Court looks beyond the legal flaws in Samsung's analysis, the specific constructions that

6    Samsung proposes fail on their merits and should be rejected.  Instead, as addressed in Apple's

7    claim construction brief, the Court should instruct the jury initially only regarding limited points

8    of technical guidance.

9    Samsung also seeks findings on functional elements that are, at best, premature.  As

10   shown in Apple's claim construction brief, the Court should make functionality determinations at

11   the conclusion of evidence based on a full record.  When all the evidence is heard, few, if any,

12   instructions as to functionality will be needed.

13   **I.    SAMSUNG URGES ERROR WITH ITS VERBAL DESCRIPTIONS OF THE
14         DRAWINGS**

15         **A.    The Court Should Reject Samsung's Constructions Because They Are
                   Contrary to Law**

16   Samsung's lengthy verbal "constructions" of Apple's design patents invite error.  The

17   Federal Circuit has been very clear on this point:

18         This court has cautioned, and continues to caution, trial courts
           about excessive reliance on a detailed verbal description in a design
19         infringement case.  *See, e.g., Egyptian Goddess, Inc. v. Swisa, Inc.*,
           543 F.3d 665, 679 (Fed. Cir. 2008) (*en banc*).  In *Egyptian*
20         *Goddess*, this court warned that misplaced reliance on a detailed
           verbal description of the claimed design risks undue emphasis on
21         particular features of the design rather than examination of the
           design as a whole.  *Id*. at 679-80.  In many cases, the considerable
22         effort in fashioning a detailed verbal description does not contribute
           enough to the infringement analysis to justify the endeavor.  *See id*.
23         at 680.  Depictions of the claimed design in words can easily
           distract from the proper infringement analysis of the ornamental
24         patterns and drawings.

25         Design patents are typically claimed as shown in drawings, and
           claim construction must be adapted to a pictorial setting.  *See, e.g.,*
26         *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377
           (Fed. Cir. 2002) (construing a design patent claim as meaning "a
27         tray of a certain design as shown in Figures 1-3").  Thus an
           illustration depicts a design better "than it could be by any
28         description and a description would probably not be intelligible

1
2
3

without the illustration." *Dobson v. Dornan*, 118 U.S. 10, 14, 6 S. Ct. 946, 30 L. Ed. 63 (1886).  "[A]s a rule, the illustration in the drawing views is its own best description."  Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006).

4

*Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010) (reversing Commission's summary

5

determination of non-infringement based on long and inaccurate verbal claim construction).

6

Samsung offers no valid reason for the Court to break with this well-settled law.

7

Although Apple, this Court, and the Federal Circuit have used words to describe Apple's

8

designs, none of them accepted the propriety of detailed verbal constructions for Apple's design

9

patents, as Samsung erroneously contends.  (Samsung Br. at 2, 8.)  The Federal Circuit requires

10

that, "in determining obviousness, a district court must attempt to 'translate [the] visual

11

descriptions into words,'" but recognizes that such an explanation "is quite different from

12

requiring an elaborate verbal claim construction to guide the finder of fact in conducting the

13

infringement inquiry."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 n.1 (Fed. Cir.

14

2008).  Consistent with those directions, this Court's preliminary injunction order described

15

Apple's patents' visual impression, but recognized that "the infringement analysis must be made

16

based upon the overall *visual* impression of the claimed designs" and that "a detailed written

17

claim construction" was to be "avoid[ed]."  (Dkt. No. 452 at 11 (emphasis added).)  Nor did the

18

Federal Circuit condone, much less adopt, a detailed verbal construction.  *See, e.g.*, *Apple Inc. v.

19

Samsung Elecs. Co.*, 2012 U.S. App. LEXIS 9720, at *37 (Fed. Cir. May 14, 2012).  Similarly,

20

while Apple has generally described its designs using words, as it must, it has never advocated for

21

detailed verbal constructions or asserted that its general descriptions, and not the figures, form the

22

scope of its patent protection.  (*See*, *e.g.*, Dkt. No. 86 at 8.)

23

Samsung also improperly interjects prior art in arguing for a narrow verbal description of

24

the designs.  (Samsung Br. at 3-4, 9-10, 13.)  This is unsupported by law.  Under *Egyptian*

25

*Goddess*, the proper role of prior art is as a frame of reference for the comparison step of the

26

infringement test.  543 F.3d at 678 (resolving "whether the ordinary observer would consider the

27

two designs to be substantially the same will benefit from a comparison of the claimed and

28

accused designs with the prior art").  There is no justification for narrowly construing design

APPLE'S RESPONSE TO SAMSUNG'S OPENING MEMORANDUM RE DESIGN PATENT CLAIM CONSTRUCTION
CASE NO. 11-cv-01846-LHK (PSG)
sf- 3160905

2

1  patents at the claim construction stage based on prior art.  Moreover, Samsung's treatment of

2  prior art is notable for its continued use of misleading front views that hide key differences, such

3  as the arched convex front surface of the JP'638 reference, the sunken display screen of the

4  KR'307 and Bluebird Pidion designs, and the lack of a bezel surrounding the front surface on the

5  LG Prada (which is not prior art in light of Apple's invention date).  (Samsung Br. at 10.)

6          Samsung's use of subsequent patents to determine the scope of Apple's patents also is

7  contrary to law.  (Samsung Br. at 6-8, 10-11, 13-14.)  The claim construction inquiry ascertains

8  the meaning of the claim "at the time of the invention."  *Phillips v. AWH Corp.*, 415 F.3d 1303,

9  1313 (Fed. Cir. 2005).  Samsung offers no authority reaching a contrary conclusion and fails to

10  address authority rejecting its position.  *See Tone Bros. v. Sysco Corp.*, No. 4:90-cv-60011,

11  1992 WL 200128, at *5 (S.D. Iowa Mar. 17, 1992) ("It is of no importance that [patentee] Tone

12  obtained patents on designs similar to the one at issue . . . the scope of the patent is limited only

13  by its terms and not by subsequent patents obtained by Tone."), *vacated on other grounds*,

14  28 F.3d 1192 (Fed. Cir. 1994).  Accepting Samsung's argument would lead to an ever-shifting

15  claim scope as new patents were issued, which is inconsistent with the public notice function of

16  patents.  *Cf. Phillips*, 415 F.3d at 1319 ("undue reliance on extrinsic evidence poses the risk that it

17  will be used to change the meaning of claims in derogation of the 'indisputable public records

18  consisting of the claims, the specification and the prosecution history,' thereby undermining the

19  public notice function of patents").

20          Furthermore, Samsung's argument as to subsequently-issued patents ignores regulations

21  that allow, or even require, multiple design patents on the same product.  *See* MPEP § 1504.06(II)

22  (allowing separate patents to be issued on "patentably indistinct" subject matter if applicant files

23  terminal disclaimer); *id*. § 1504.05(II)(B)(8) ("the only way to protect [] segregable parts [of a

24  complete design] is to apply for separate patents") (citing *Blumcraft v. Ladd*, 238 F. Supp. 648

25  (D.D.C. 1965), in which claim to single railing post was found patentably distinct from assembled

26  railing unit design that included railing post design).

27          In sum, Samsung fails to justify its lengthy verbal descriptions.  The Court should reject

28  Samsung's proposed constructions in their entirety.  Instead, as in *Crocs*, the appropriate

1   construction for Apple's design patents is "the design shown in the [figures]."  598 F.3d at 1302.

2   Limited technical guidance as to the use of broken or oblique lines should also be given, as set

3   forth in Apple's opening brief.  (Dkt. No. 1089-3.)

4   **B.    The D'889 Patent Is Best Understood from Its Figures**

5          Samsung's proposed construction of the D'889 illustrates the rationale behind the Federal

6   Circuit's rejection of detailed verbal constructions.  (Samsung Br. at 8.)  Samsung's verbal

7   summary, which places undue emphasis on individual design elements, will not help; the jury can

8   very well see for itself the "shape," "corner radii," "proportions," "back and sides," and lack of

9   "ornamentation" of the design.  Nor can Samsung find support in the Federal Circuit's holding in

10  this case that the designs could not be viewed "from too high a level of abstraction" and were

11  construed "too broadly."  *Apple Inc. v. Samsung Elecs. Co.,* No. 2012-1105, 2012 U.S. App.

12  LEXIS 9720, at *37 (cited in Samsung's Br. at 2).  There is nothing in the Federal Circuit's

13  statements suggesting that the cure is detailed verbal descriptions.

14         Some aspects of Samsung's verbal description *must be* rejected for the additional reason

15  that they contradict the patent figures.  *Crocs*, 598 F.3d at 1303.  First, Samsung omits that the

16  D'889 patent has an edge-to-edge transparent surface, as depicted in the figures with oblique

17  lines.  Samsung attempts to justify that omission based on statements in the subsequent

18  application for the D'677.  (Samsung Br. at 6.)  No law supports importing a statement made in

19  an unrelated patent application into the construction of the patent in question.  Moreover,

20  Samsung mischaracterizes the statement itself, as Apple distinguished only two specific

21  references—neither of which was the D'889 patent.  (Dkt. No. 1089-13 at APLNDC00030781.)

22         Second, Samsung improperly characterizes the D'889 design as having "relative thick

23  sides."  Samsung fails to justify this obviously partisan and unhelpful addition, as Samsung's

24  highlighted prior art is clearly thicker than the D'889 design.  (*See* Samsung Br. at 4; Dkt.

25  No. 1091-2 Cashman Decl. Ex. 2.)

26         Third, Samsung seeks to add "a uniform gap around the entire front face between the front

27  face surface and the frame" to the D'889 design based on the assertion that an internal Apple

28  model—the 035 model—had such a feature.  (Samsung Br. at 5-6.)  But the D'889 patent figures

APPLE'S RESPONSE TO SAMSUNG'S OPENING MEMORANDUM RE DESIGN PATENT CLAIM CONSTRUCTION
CASE NO. 11-cv-01846-LHK (PSG)
sf- 3160905

4

1  do not show this "gap."  As illustrated below, in Figure 3, the transparent front surface is plainly

2  flush with the thin rim of material that surrounds it.  In Figure 4, the outer line of the rim appears

3  somewhat darker than the inner line, but Samsung cannot explain why that would indicate the

4  existence of a gap, rather than a minor drawing aberration, particularly where Apple's designers

5  testified that no gap was shown in this figure.  (Declaration of Jason Bartlett in Support of

6  Apple's Response to Samsung's Opening Memorandum Regarding Design Patent Claim

7  Construction (filed concurrently herewith) ("Bartlett Decl."), Ex. 1 at 165:18-166:2, 167:13-23;

8  Ex. 6 at 104:17-105:20.)

9



| Enlargement of D'889 patent, Fig. 3 | Enlargement of D'889 patent, Fig. 1 |

16

17        There is no justification for adding features that do not appear in the patent figures, even if

18  they are found in the internal 035 model.[1]  Although an appendix of photos of the 035 model was

19  submitted with the application, it represented but "one embodiment" of the D'889 patent, not a

20  replacement for the drawings.  (Dkt. No. 1089-14 at APLNDC00032359.)  In fact, the appendix

21  of photos was "cancelled" from the application because it was not proper for the specification of a

22  design patent application.  (Dkt. No. 1089-15 at APLNDC00032436.)  Accordingly, the appendix

23  of photos is entirely irrelevant and cannot be the source of limitations for the D'889 patent.

24  Moreover, the 035 model also includes other features not claimed in the D'889 patent figures,

25

26  ———————————————

27        [1] In fact, contrary to the suggestion in Samsung's verbal description, when the 035 model
      is viewed from the front, no gap can be seen between the front surface and the rim.  (Dkt.
      No. 1091-3.)

28

1   such as black color on the front surface and white color on the back.  Samsung can no more ask

2   for these features to be added to the D'889 patent claim than the "gap" it is proposing.

3       Fourth, Samsung quibbles about the two-dimensional versus three-dimensional nature of

4   minor elements like the speaker jack and connector port, and proposes to add language describing

5   the D'889 design as having no "protrusions or holes on any surface."  (Samsung Br. at 2.)

6   Samsung's quibbling misses the mark.  A design patent's scope is the overall visual impression of

7   the ornamental design, not the minute details of manufacturing construction.  *Gorham Co. v.*

8   *White*, 81 U.S. 511, 527 (1871) ("sameness of effect upon the eye, is the main test of substantial

9   identity of design").  And Samsung's additions on this point are clearly intended to draw

10  unwarranted attention to these minor elements.  If the jury considers these features, it can readily

11  do so based on the visual impression they present in the patent figures.  No additional gloss is

12  needed or helpful.

13      Finally, Samsung's efforts to narrow the scope of the D'889 based on prior art and later-

14  filed patents and applications fail as a matter of law for the reasons discussed in Section I.A,

15  above.  Furthermore, Samsung's argument is based on the false premise that inventors swear an

16  oath that the subject matter of their patent applications is "new" and "original" over the prior art.

17  Apple's inventors were not required to, and did not, make that representation.  *See* 37 C.F.R.

18  § 1.63(a)(4) ("State that the person making the oath or declaration believes the named inventor or

19  inventors to be the original and first inventor or inventors of the subject matter which is claimed

20  and for which a patent is sought.").  (Bartlett Decl. Exs. 16-17.)

21      Accordingly, Samsung's written descriptions of the design should be rejected.  And as

22  discussed below, Samsung's proposed findings of functional elements are also unnecessary.

23      **C.    The D'677 and D'087 Patents Are Best Understood From Their Figures.**

24          **1.    D'087 patent.**

25      As with the D'889, Samsung's proposed construction of the D'087 should be rejected

26  because it seeks unnecessarily to characterize the figures.  (Samsung Br. at 12.)  The jury can see

27  for itself the "shape," "corner radii," "proportions," "bezel," "front surface," "borders," *et cetera*

28  that Samsung seeks to characterize in words.  And there is no need for adjectives like

APPLE'S RESPONSE TO SAMSUNG'S OPENING MEMORANDUM RE DESIGN PATENT CLAIM CONSTRUCTION
CASE NO. 11-cv-01846-LHK (PSG)
sf- 3160905

6

"prominent" to usurp the jury's fact-finding.  Likewise, as with the D'889, the prior art and subsequent patents and applications have no relevance to construction of the D'087.  (*Id.* at 9-11.)

Three issues highlighted by Samsung require further response.

First, Samsung claims that because the D'087 patent has no oblique lines, it "thus claims an opaque, rather than a transparent or reflective, front surface."  (Samsung Br. at 9.)  This argument is illogical.  The lack of oblique lines in a design patent means that a transparent or reflective surface is not specifically disclosed.  But it does not follow that, if a transparent or reflective surface is *not* disclosed, an opaque surface must be claimed instead.  Without a specific indication of transparency, the D'087 patent claim remains as drawn:  a design formed of particular geometric shapes.

Second, Samsung argues that Apple identified a flat front surface that is flush with the bezel as a distinction over the prior art.  (Samsung Br. at 9.)  Yet Samsung's proposed construction includes no mention of a "flat" front surface, and only mentions a bezel that is "flush" with the front surface.  This kind of selective description should be rejected.  All of the design features are readily discerned from the figures, and the jury does not need to be confused and misled by one party's selective verbal description.

Samsung also argues that the lozenge-shaped feature on the front face of the D'087 patent should be called out as a "two-dimensional" "surface decoration" because shading is not used to indicate whether it is an opening.  Again, Samsung focuses on manufacturing construction rather than ornamental appearance.  Whether open or closed, the lozenge-shaped element would appear as it does in the figures.  It disserves the goal of focusing the jury on the overall visual impression of the design to call out this minor detail of construction for particular attention.

## 2. D'677 patent.

A written description is no more necessary for the D'677 patent.  (Samsung Br. at 12.)  Its black front surface color is plain from the figures themselves.  Samsung's overly-selective description again illustrates the dangers of a detailed verbal construction—it limits the front surface of the D'677 patent to a "reflective" surface but the MPEP states that oblique lines can

APPLE'S RESPONSE TO SAMSUNG'S OPENING MEMORANDUM RE DESIGN PATENT CLAIM CONSTRUCTION
CASE NO. 11-cv-01846-LHK (PSG)
sf- 3160905

7

1   also be used to indicate transparent or translucent surfaces.  MPEP § 1503.02.  Samsung provides

2   no reason to limit it to a reflective surface.

3         Samsung's reliance on prior art and subsequent patents again fails as a matter of law.

4   Further, Samsung's spotlight on similarities between the D'677 and D'678 iPhone designs

5   ignores the facts.  (Samsung Br. at 11.)  These two patents both claim the same January 5, 2007

6   priority date and are not prior art to each other.  (Dkt. No. 1089-8; Bartlett Decl. Ex. 18.)

7   Therefore, the separate existence of these two patents says nothing about the importance of the

8   black surface in the D'677 patent, as Samsung claims.

9         **D.    The D'305 Patent**[2]

10        The jury needs no verbal rehashing of the D'305 graphical user interface design,

11   particularly the virtually unintelligible description offered by Samsung:  "The D'305 is for an

12   ornamental graphical user interface design that . . . (ii) in which at least some icons that are lighter

13   in color near the top than near the bottom as shown in the figures."  (Samsung Br. at 15.)  As

14   drafted, it appears to mean that some of the icons near the top of the design are lighter than the

15   icons near the bottom of the design, but this is not clear from the proposed language and

16   Samsung's brief provides no explanation.  Using this language to instruct the jury will only lead

17   to confusion.  Further, the alleged prior art and other Apple design patents trotted out by Samsung

18   once again have no bearing on claim construction.  Moreover, the prosecution history of the

19   D'790 patent is of no import here.  Even a cursory glance at the D'305 design and the reference

20   cited in the D'790 file makes it clear that there is no need to narrow the D'305 patent to prevent

21   its claim from reading on that reference, as Samsung claims.  (*Compare* Dkt. No.1089-5 *with* Dkt.

22   No. 1091-54 at APLPROS12212, 12230.)

23        Finally, Apple does not claim that the D'305 patent provides a monopoly over "the use of

24   colorful square icons arranged in a grid"; instead, the D'305 patent protects the graphical user

25   interface design depicted in the patent figures.

26

27   ─────────────────────

28         [2]  The D'334 patent is no longer at issue in this case.

## II.    SAMSUNG'S ARGUMENTS CONFIRM THE WISDOM OF MAKING THE FUNCTIONALITY DETERMINATION AT THE CONCLUSION OF EVIDENCE

Where, as here, there is a dispute over the functionality of specific design elements, functionality should be determined only upon a complete record.  (Dkt. No. 1089-3 at 3-4.)  Samsung does not even attempt to provide the Court a complete record; instead, it relies largely on findings the Court made in its preliminary injunction order early in the case and selected deposition snippets.  If the Court were inclined to make determinations of functionality at this time, it should consider at least the evidence that Apple submits with this opposition, and not merely reiterate findings made upon a preliminary injunction record.

As the Court noted previously, the standard is clear:  a design is functional only if it is "*dictated* by the functionality of the item."  (Dkt. No. 452 at 13.)  *L.A. Gear, Inc., v. Shoe Co.,* 88 F.2d 1117 at 1123 (Fed. Cir. 1993) ("If the particular design is essential to the use of the article, it cannot be the subject of a design patent.").[3]  "A design is not dictated solely by its function when alternative designs for the article of manufacture are available."  *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996).  Samsung does not mention, let alone address, the numerous alternative designs that Apple has identified in discovery and in expert reports.

The Federal Circuit has held that functionality is to be determined for "the article in the claimed design," that is, "the article and its configuration as shown in the drawings," rather than "the commercial embodiment of the underlying article of manufacture."  *Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997).  Yet Samsung's functionality claims are not tied to an "electronic device" (the article of manufacture claimed in each design patent);

---

[3]  While Samsung cites to *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) for an "affects the cost or quality of the article" standard of functionality, the *Amini* court merely borrowed a quote from the standard for trade dress functionality, *see Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 (1982), and does not apply that standard in its analysis.  Samsung has not identified cases that actually apply this "cost or quality" standard in the design patent context, or shown how that standard would be less stringent than the "dictated by function" standard consistently used for design patents.  For example, it appears unreasonable to assume that *any* effect on cost or quality would render a design functional as a matter of law.

APPLE'S RESPONSE TO SAMSUNG'S OPENING MEMORANDUM RE DESIGN PATENT CLAIM CONSTRUCTION
CASE NO. 11-CV-01846-LHK (PSG)
sf- 3160905

9

1   instead, Samsung claims only that the design elements are functional for a "smartphone" or for

2   "tablet computer devices" (Samsung Br. at 8, 12), which is not relevant.[4]  Thus Samsung's

3   arguments must fail.  *Berry Sterling*, 122 F.3d at 1455.

4       **A.     The D'889 Patent**

5       Even if the design is constrained to the field of tablet computers, which is not proper,

6   alternative designs show that the elements depicted in the D'889 patent are not dictated by

7   function.

8       **1.     A relatively large screen.**

9       As discussed in Apple's opening brief, "a large display screen that encompasses a large

10  portion of the front face" is a concept that does not correspond to a visual element drawn in the

11  D'889 figures because it does not capture all aspects of the centered rectangular display element

12  shown in the patent.  The Court's prior finding on this issue extracted a single functional concept

13  from the rectangular display element shown in the D'889 patent.  But in fact, when the claimed

14  rectangular display element is considered as a whole, the design alternatives available for each of

15  its aspects (*e.g.*, rectangular shape, size, and centered placement producing a single uniform

16  border) prove that this visual element is primarily ornamental.  (Declaration of Peter W. Bressler

17  in Support of Apple's Response to Samsung's Opening Memorandum Regarding Design Patent

18  Claim Construction (filed concurrently herewith) ("Bressler Decl.") ¶¶ 20-27.)  If it were

19  otherwise, and function dictated a single design, those various alternatives would not be available.

20  *Best Lock*, 94 F.3d at 1566.

21      Moreover, an instruction for the jury to ignore "a large display screen that encompasses a

22  large portion of the front face" will likely lead to confusion.  The jury may not understand what

23  exactly it should ignore.  Or it may entirely ignore the display element depicted in the figures.  If

24  the Court finds that a narrowing construction is nonetheless needed, Apple requests a further

25  instruction to clarify the scope of functional aspect:  "the centered placement, screen size relative

26  _____

27      [4] Samsung's constructions are also internally inconsistent, referring to "electronic device"
    in the description of the designs and "smartphone" or "tablet computer" in the proposed
    functionality findings.

28

1   to the front face, and the even border surrounding the screen are not functional and should be

2   considered part of the patent claim for purposes of your infringement analysis."

3   **2.      Size and proportion that allows portability.**

4   Samsung stretches the Court's prior finding regarding "a size that allows portability" (Dkt.

5   No. 452 at 39) into "size and proportions that allow for the portability of tablet computer devices"

6   without proffering any explanation as to what "proportions" means in this context or why it is a

7   functional element.  (Samsung Br. at 5.)  This unexplained addition should be rejected.  As can be

8   readily seen in other commercially released devices, different proportions are used in portable

9   electronic devices, rendering no particular proportion functional.  (Bressler Decl. ¶¶ 22-24.)

10  Apple also disagrees that "a size that allows portability" should be added to the claim

11  construction.  Samsung's own line of tablet devices—from the 5.3-inch Note, to the Tab 7.0, Tab

12  7.7, Tab 8.9, Tab 10.1, and the 11.6-inch Series 7 Slate—demonstrate that the range of "portable

13  sizes," for even just tablet computers is so wide as to render the term meaningless.  (Bartlett Decl.

14  Exs. 19-24.)  The function of tablet computers does not dictate a specific size.

15  **3.      Transparent cover over the display.**

16  Samsung also urges that "the use of a transparent cover over the display" is a functional

17  element, but the D'889 patent does not merely claim "a transparent cover over the display."  It

18  claims an edge-to-edge clear surface, which as Mr. Bressler testified previously, "is certainly not

19  a functional requirement."  (Dkt. No. 1091-0 Ex. 15 at 783:1-4 (sealed).)  There is no functional

20  need for the border surrounding the display to be clear.  (Bressler Decl. ¶¶ 37-40.)  Yet a

21  transparent border is part of the edge-to-edge transparent front surface depicted in the D'889

22  patent.  That visual element should be considered as a whole, and should not be sliced and diced

23  to find a functional piece.  Samsung's approach produces a slew of tiny, allegedly functional

24  aspects and will hamstring the jury in focusing on the overall visual impression of the design.

25  Moreover, while any material laid over the display element should be clear, Samsung has

26  adduced no evidence that the display element must be covered by any additional material at all.

27  In fact, Mr. Roarty of Bloomberg LP testified that the clear material placed over the display

28  portion of a Bloomberg terminal design added undesirable glare and was removed for that

1  functional reason.  (Bartlett Decl. Ex. 25 at 151:23-152:14.)  Thus, an additional clear material is

2  not required over the display element and can in fact reduce utilitarian function.

3      **B.      The D'677 and D'087 Patents**

4          Again, Samsung fails to allege that the function of an "electronic device," as the D'677

5  and D'087 designs are described in Apple's patent claim and Samsung's construction, dictates the

6  features that Samsung claims.  (Samsung Br. at 12.)  But even if constrained to the field of

7  smartphones, no depicted element of Apple's design is dictated by function.

8                **1.      Size that can be handheld.**

9          Size is not a claimed element of the Apple designs.  (Dkt. No.1089-5 at 1 ("The electronic

10  device is not limited to the scale shown herein.").)  Therefore, size should not be read into the

11  patent claims.  *See Sun Hill Indus. v. Easter Unlimited*, 48 F.3d 1193, 1196-97 (Fed. Cir. 1995)

12  (finding error where trial court considered size of accused product in infringement analysis when

13  "the patent never mentions color or size or material").  Federal Circuit law permits *reading out* of

14  functional elements, but does not authorize *reading in* unclaimed elements for functional reasons.

15  *See Richardson*, 597 F.3d at 1294.

16                **2.      A large screen on the front face of a smartphone.**

17          "A large screen on the front face of a smartphone" is but one aspect of the display element

18  that is actually depicted, the design of which is not dictated by function.  (*See* Dkt. No. 452 at 26

19  (crediting "the placement and relative size of the screen" in infringement analysis).)  In fact,

20  Samsung's own design patents and products show that many functional alternatives are available

21  to the rectangular display element depicted in Apple's patents.  (Bressler Decl. ¶¶ 78-82.)  Even

22  when limited to smartphones, alternative designs are readily available to prove that no one design

23  is mandatory.  (*Id*.)  But broadened to electronic devices, even more options can be had.

24  Accordingly, the rectangular display element of the Apple designs is not dictated by function.

25          Moreover, an instruction to ignore "a large screen on the front face" is ambiguous.  It will

26  confuse the jury and may cause it to ignore entirely the rectangular display element actually

27  depicted in Apple's patents.  Thus, if the Court believes that a narrowing instruction is

28  nonetheless needed, Apple requests that a clarification be added: "the rectangular shape, centered

1  placement, and size of the display area relative to the entire front face is not functional and should

2  be considered part of the patent claim for purposes of your infringement analysis."

3          **3.      Speaker on the upper portion of the front face.**

4          "Speaker on the upper portion of the front face" is but one disembodied aspect of the

5  lozenge-shaped speaker element centered above the display depicted in Apple's patents.  Yet an

6  instruction to ignore the "speaker on the upper portion" may confuse the jury into ignoring the

7  entire lozenge-shaped element.  That result would be erroneous, because when the aesthetic

8  freedom in all aspects of the lozenge-shaped element is considered (*e.g.*, placement, size, and

9  shape), this visual element is not dictated by function.  (*See* Dkt. No. 452 at 26-27 (crediting the

10  "precise placement of the speaker" and "slot-shaped speaker" in the infringement analysis);

11  Bressler Decl. ¶¶ 83-89.)

12         If the Court finds that a narrowing instruction is nonetheless necessary, Apple requests an

13  additional clarification: "the shape of the speaker element, and its depicted location in the upper

14  portion of phone is not functional and should be considered part of the patent claim for purposes

15  of your infringement analysis."

16         **4.      Transparent cover over the display.**

17         For the same reasons stated above with respect to the D'889 patent, an instruction

18  regarding a transparent cover over the display is inappropriate for the D'677 patent.[5]  (*See also*

19  Bressler Decl. ¶¶ 61-70.)

20  **C.      The D'305 Patent**

21         With the D'305 patent, Samsung searches for utilitarian reasons why its graphical user

22  interfaces *had to be* designed just like the iPhone's.  It proposes a confusing litany of allegedly

23  functional elements, aiming to distract the jury from its self-evident copying, or to erroneously

24  ignore major parts of Apple's iconic design.

25

26

27         [5]Apple assumes that the existence of such a proposed finding in Samsung's construction
    for the D'087 patent is a typographical error.
28



(Bartlett Decl. Ex. 26.)

Icons come in endless different shapes—not just rounded-corner squares.  (Declaration of Susan Kare in Support of Apple's Response to Samsung's Opening Memorandum Regarding Design Patent Claim Construction (filed concurrently herewith) ("Kare Decl.") Ex. 1 ¶ 54; Ex. 2 ¶¶ 34-38.)  A functional graphical interface need not use a grid of icons arranged in equidistant rows and columns, which is far from the only known approach for organizing visual objects.  (*Id.* Ex. 1 ¶¶ 45-52; Ex. 2 ¶¶ 26-30.)  Many graphical interfaces do not use a bottom dock row of icons.  (*Id. at* Figures 10-12.)  While a status bar is useful, its particular aesthetic design is not dictated by that use.  (*Id.* Ex. 2 ¶¶ 44, 124.)  As for "pictures or text associated with icons," it is unclear what Samsung means to cover with that term.  Certainly there is no functional mandate that particular pictures be used in graphical interface icons.  (*Id.* Ex. 1 at ¶ 54.)  Text could very well be incorporated into the icon, rather than appearing below it.  *See supra* Galaxy S 4G "DriveSmart" icon.  As seen in Samsung's own prior designs, no functional consideration forced Samsung to mimic Apple's design.  (Bartlett Decl. Ex. 27.)  Thus, no visual element of Apple design should be ignored.

APPLE'S RESPONSE TO SAMSUNG'S OPENING MEMORANDUM RE DESIGN PATENT CLAIM CONSTRUCTION
CASE NO. 11-cv-01846-LHK (PSG)
sf- 3160905

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

The Court should not make detailed verbal claim constructions and should instruct the jury initially only regarding limited points of technical guidance.  The Court should make functionality determinations at the conclusion of evidence based on a full record and instruct the jury accordingly at that time.

Dated:  June 26, 2012                                    MORRISON & FOERSTER LLP


                                                         By:    _/s/ Michael A. Jacobs_____
                                                                 Michael A. Jacobs

                                                                 Attorneys for Plaintiff
                                                                 APPLE INC.

APPLE'S RESPONSE TO SAMSUNG'S OPENING MEMORANDUM RE DESIGN PATENT CLAIM CONSTRUCTION
CASE NO. 11-cv-01846-LHK (PSG)
sf- 3160905

15