1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Date:   July 18, 2012<br>Time:   2:00 pm<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh<br><br>**PUBLIC REDACTED VERSION** |

02198.51855/4830880.1

Case No. 11-cv-01846-LHK
SAMSUNG'S OPPOSITION TO APPLE'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page**

I. THE COURT SHOULD CONSTRUE THE DESIGN PATENTS BEFORE TRIAL ......... 1

    A. The Court Should Construe the Design Patents Prior to Trial .................................. 1

    B. Apple's Design Patents Warrant And Require Construction .................................... 3

    C. The Functional Elements Of Apple's Patents Need To Be Factored Out.................. 5

II. ANY INSTRUCTION REGARDING DESIGN PATENT DRAFTING CONVENTIONS SHOULD APPLY CONSISTENTLY TO APPLE'S PATENTS ........... 8

# TABLE OF AUTHORITIES

**Page**

### Cases

*180s Inc. v. Gordini Inc.*,
   699 F. Supp. 2d 714 (D. Md. 2010) ....................................................................................... 1

*ADC Telecommunications, Inc. v. Panduit Corp.*,
   200 F. Supp. 2d 1022 (D. Minn. 2002) .............................................................................. 6, 7

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) .......................................................................................... 3, 4

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
   No. 2012-1105, 2012 WL 1662048 (Fed. Cir. May 14, 2012) ............................................. 3

*Berry Sterling Corp. v. Pescor Plastics, Inc.*,
   122 F.3d 1452 (Fed Cir. 1997) .............................................................................................. 8

*Depaoli v. Daisy Mfg. Co., Inc.*,
   No. 07-cv-11778, 2009 WL 2145721 (D. Mass. July 14, 2009) .......................................... 6

*Dexas Int., Ltd. v. Tung Yung Int., Inc.*,
   2008 WL 4831348 (E.D. Tex. June 24, 2008) ...................................................................... 7

*Durling v. Spectrum Furniture Co., Inc.*
   101 F.3d 100 (Fed. Cir. 1996) ............................................................................................... 3

*Egyptian Goddess Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) ............................................................................. 1, 4, 5, 6, 7

*Elmer v. ICC Fabricating, Inc.*,
   67 F.3d 1571 (Fed. Cir. 1995) ............................................................................................... 4

*International Seaway Trading Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009) ............................................................................................. 3

*Litton Systems, Inc. v. Whirlpool Corp.*,
   728 F.2d 1423 (Fed. Cir. 1984) ............................................................................................. 4

*Mag Instrument, Inc. v. JS Products, Inc.*,
   595 F. Supp. 2d 1102 (C.D. Cal. 2008) ................................................................................. 6

*In re Mann*,
   861 F.2d 1581 (Fed. Cir. 1988) ............................................................................................. 4

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ................................................................................................. 1

*Moose Mountain Toymakers Inc. v. Majik, Ltd.*,
   2011 WL 3626067 (D.N.J. Aug 12, 2011) ............................................................................ 1

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997)..................................................................................................3, 6

*PHG Tech., Inc. v. St. John Co., Inc.*,
   469 F.3d 1361 (Fed Cir. 2006).........................................................................................................7

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010).........................................................................................................6

*Sofpool, LLC v. Intex Recreation Corp.*,
   2007 WL 4522331 (E.D. Tex. Dec. 19, 2007) ...............................................................................7

*Sun-Mate Corp. v. Koolatron Corp.*,
   2011 WL 3322597 (C.D. Cal. Aug. 1, 2011) ................................................................................1

**Statutes**

35 U.S.C. § 103(a).................................................................................................................................5

35 U.S.C. § 171 .....................................................................................................................................5

# INTRODUCTION

Apple argues that the Court should refrain from construing the patents until after trial, except to the limited extent required to provide the jury with technical guidance regarding design patent drawing conventions. But patent construction is an issue of law, and these patents are far more limited than Apple hopes to insinuate to a jury. In addition, a clear construction of the patents is required to streamline the evidence, avoid irrelevant and prejudicial arguments, and prevent jury confusion. Delaying claim construction until after trial serves no purpose other than to invite legal and factual error.

Apple also seeks a ruling that no element of its designs is functional. Apple's argument contradicts not only common sense and the law of claim construction (as reflected in the Court's previous rulings that elements of Apple's designs are dictated by function). It also contradicts the admissions of Apple's own expert witness, who has conceded that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

# ARGUMENT

## I. THE COURT SHOULD CONSTRUE THE DESIGN PATENTS BEFORE TRIAL

### A. The Court Should Construe the Design Patents Prior to Trial

As a legal matter, there is no reason to further delay construing the asserted design patents. Claim construction is a matter of law for the Court. *Egyptian Goddess Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc); *Sun-Mate Corp. v. Koolatron Corp.*, 2011 WL 3322597 at *3 (C.D. Cal. Aug. 1, 2011) ("claim construction is a question of law for the court"); *180s Inc. v. Gordini Inc.*, 699 F. Supp. 2d 714, 717 n. 2 (D. Md. 2010) (same); *Moose Mountain Toymakers Inc. v. Majik, Ltd.*, 2011 WL 3626067, at *2 (D.N.J. Aug 12, 2011) ("First, the design patent must be properly construed, as a matter of law.").

This case in particular warrants construction prior to trial. The Court has ordered the parties to streamline their disputes and limited both the time each party has to put on its evidence and the number of exhibits it may introduce. Dedicating valuable trial time and exhibits to claim construction creates a risk that the jury will be asked to decide the case based on a

1  misunderstanding of the patents and an incomplete record and will cause undue prejudice to
2  Samsung. That is because Samsung's non-infringement positions must necessarily be tied to the
3  scope of the asserted design patents. Deferring claim construction until after trial would
4  therefore force Samsung not only to use its scarce trial time and limited exhibits to support its
5  claim construction, but also to prove its invalidity and non-infringement defenses as to any
6  number of potential constructions that could ultimately be adopted. Forcing Samsung to do so
7  would not only mean that the jury will be presented with evidence and argument that will likely be
8  irrelevant ultimately, but, given the constraints on the parties' trial presentations, would also
9  deprive Samsung of its ability to present a full and fair defense to Apple's claims.

10  Efficiency also strongly militates in favor of construing the patents prior to trial. As the
11  Court has noted, the jury in this case will be asked to absorb a substantial amount of information
12  and make infringement determinations about a number of accused products in a relatively short
13  period of time. *See, e.g.,* June 26, 2012 Declaration of Adam Cashman ("June 26 Cashman
14  Decl."), Ex. 1 (May 2, 2012 Tr. at 3:22-4:3, 5:3-12). Absent further narrowing, Apple's current
15  design-related case alone involves four different design patents, alleged dilution of an iPhone trade
16  dress and alleged dilution and infringement of an iPad trade dress against numerous products.
17  The parties have designated a combined ten expert witnesses to testify regarding such issues as
18  validity, infringement, indefiniteness and scope of the design patents at issue. If Apple is sincere
19  in its representation that it "will do whatever [it] need[s]" to ensure that its case can properly be
20  tried within the parameters set by the Court, *see id.* Ex. 1 (May 2, 2012 Tr. at 8:25), then Apple
21  should be in favor of obtaining a definitive construction of the design patents prior to trial.

22  Rather than using the claim construction process as a means to comply with the Court's
23  directive to further streamline the case, however, Apple paradoxically takes the opposite tack. It
24  urges that claim construction should not be done until after the close of evidence, if at all.
25  Although Apple apparently plans to offer all manner of evidence to support its arguments
26  regarding the purportedly sweeping scope of its design rights, such evidence and argument would
27  be largely unnecessary once the Court establishes the proper scope of the design patents in suit.
28  *See* Dkt. 1090-1.

Further, as discussed below, the design patents should be construed prior to trial so that the parties may focus their presentations on the elements of Apple's design rights that are actually protected under design patent law and that may properly be the subject of an infringement claim. Allowing Apple unbridled reign on the scope and construction of the asserted design patents will only serve to confuse the jury and prejudice Samsung.

### B. Apple's Design Patents Warrant And Require Construction

After unsuccessfully opposing Samsung's request to file a claim construction brief, and having failed in its earlier attempts to suppress discussion of claim construction entirely, Apple now has filed an opening claim construction brief that merely seeks the same result by advocating a "construction" that is nothing more than the images of the patent figures and generic descriptions of patent drawing conventions.  Dkt. 1089-3, at 1-2; *see also* Dkt. 893, at 2; June 26 Cashman Decl. Ex. 1 (May 2, 2012 Tr. at 21:16-24).  That is no construction at all, and would leave the jury with the erroneous impression that Apple's patents protect such "generalized design concepts" as rectangles with rounded corners or, as discussed further below, such concededly functional aspects as a display screen covered by a transparent material.  *See OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("We agree with the district court's claim construction, which properly limits the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept of a rocket-like tossing ball."); Dkt. 449, at 15.  The Federal Circuit already has rejected such a broad construction in the invalidity context, finding that it was error to "view[] the various designs from too high a level of abstraction."  *Apple, Inc. v. Samsung Electronics Co., Ltd.,* No. 2012-1105, 2012 WL 1662048, at *13 (Fed. Cir. May 14, 2012) (quoting *Durling v. Spectrum Furniture Co., Inc.,* 101 F.3d 100, 104 (Fed. Cir. 1996)).  Because the infringement analysis of design patents is the same as the invalidity analysis,[1] Apple's proposed approach invites the same error.  The jury therefore

---

[1] *See International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) ("That which infringes, if later, would anticipate, if earlier.") (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d
    (footnote continued)

1 should be properly instructed regarding the claimed designs to avoid erroneously construing the
2 patents "from too high a level of abstraction." *Id.*

3       Apple's mistaken suggestion that the design patents protect all visual elements shown in
4 the claimed designs fails to account for the fact that when "a field is crowded with many
5 references" relating to the design of the same type of article, a design patent's "scope of
6 protection" is limited to a more "narrow range." *Egyptian Goddess Inc. v. Swisa, Inc*., 543 F.3d
7 665, 676 (Fed. Cir. 2008) (quoting *Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444
8 (Fed. Cir. 1984)).   As set forth in Samsung's opening claim construction brief, and as depicted in
9 the graphic below, the "field" of prior art at issue for mobile electronic devices is extremely
10 "crowded," which necessitates a claim construction that is sufficiently narrow to avoid reading on
11 the prior art.   *See* Dkt. 1090-01, at 10, 13; *see also In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988)
12 ("Design patents have almost no scope"); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577
13 (Fed. Cir. 1995) (quoting *In re Mann*).



Top: D'037; D'889; Compaq TC1000; Fidler Knight Rider; JPD0887388
Bottom: Fujitsu Stylistic ST4120; JPD0921403; D'802; JPD1142127

25 *See* June 26 Cashman Decl. Exs. 2-4; Dkt. 1091, Exs. 1, 2, 7-9, 12.

27 1343, 1351 (Fed. Cir. 2001) ("A patent may not, like a "nose of wax," be twisted one way to avoid anticipation and another to find infringement.") (internal citation omitted).

Additionally, Apple's erroneous suggestion that the design patents protect all visual elements shown in the claimed designs is contrary to the numerous representations it has made to the USPTO in the course of obtaining dozens of design patents for its iPhone and iPad products. As the Federal Circuit has made clear, one of the "useful[]" purposes of design patent claim construction is to "guide the finder of fact by addressing . . . issues that bear on the scope of the claim[,] . . . includ[ing] . . . assessing and describing the effect of any representations that may have been made in the course of the prosecution history." *Egyptian Goddess Inc.*, 543 F.3d at 680. Apple has made several such representations that bear on the scope of its asserted design patents. For example, in seeking to avoid an obviousness rejection under 35 U.S.C. § 103(a), Apple swore that the D'677 was patentably distinct from the prior art cited by the examiner because it claimed "a substantially continuous transparent surface on an electronic device and the substantially smooth or flush transition between the display screen and the rest of the front face of the device[.]" Dkt. 1091, Ex. 21 at APLPROS0000011936. Yet, Apple has elsewhere argued that the D'889 design, which was also cited as prior art during prosecution of D'677, already disclosed that very same characteristic of a continuous flat front surface that runs from edge to edge. *See, e.g.,* Dkt. 997-02, at 10-11 (distinguishing the D'037 prior art reference because it purportedly "does not disclose an edge-to-edge transparent front surface" or a "uniform mask" underneath the front surface, and distinguishing the "Brain box" reference as purportedly lacking a flat front surface.). By its own admissions, Apple's patents must be construed in a limited fashion to be patentable as "new" and "original" ornamental designs, without reading on the prior art. *See* 35 U.S.C. § 171. Here, that requires a construction of D'677 that does not include a continuous, flat, transparent front surface. Construction of the design patents is therefore necessary to determine the effect of Apple's prior representations on the scope of its designs.

### C. The Functional Elements Of Apple's Patents Need To Be Factored Out

Apple's argument that the Court should defer its determination of whether the patents contain any functional elements is unsupported. Dkt. 1089-3, at 3-4. Although courts retain significant discretion in the way they conduct design patent claim construction, the Federal Circuit has made clear that one of the "useful" purposes of claim construction is to "distinguish[] between

those features of the claimed design that are ornamental and those that are purely functional." *Egyptian Goddess,* 543 F.3d at 680.  "Where a design contains both functional and non-functional elements, the scope of the claim *must* be construed in order to identify the non-functional aspects of the design shown in the patent."  *OddzOn,* 122 F.3d at 1405 (emphasis added); *see also Richardson v. Stanley Works, Inc.*, 597 F. 3d 1288, 1294 (Fed. Cir. 2010).   That is particularly warranted where, as here, the Court has specifically granted Samsung's request to construe the design patents and trial is set to begin in approximately one month.  *See OddzOn,* 122 F.3d at 1405 (affirming, on *de novo* review, District Court's construction of patent to factor out functional elements).

The factual circumstances also weigh in favor of factoring out certain functional elements of the design patents now as part of claim construction, as opposed to waiting until after trial. Apple concedes that this functionality determination is a question for the Court, not the jury, yet urges the Court to defer it until it has a "full factual record."  Dkt. 1089-3, at 4.  But discovery is complete and the factual record is indisputably "full."  And, as Apple is aware, the Court previously identified elements of the D'889, D'087 and D'677 patents that it found were "dictated by" function and that, accordingly, could not be considered part of the claimed ornamental design for infringement comparison purposes.  *See* Dkt. 449, at 15, 39-40.  There is no reason to delay the determination of which elements of the claimed designs are functional.

The authorities Apple relies on do not compel the result Apple seeks here.  To the contrary, as the court noted in *Depaoli v. Daisy Mfg. Co., Inc.* (Dkt. 1089-03, at 4), courts have "considerable discretion" in determining how to address and factor out functional elements in connection with construing the scope of design patents.  No. 07-cv-11778, 2009 WL 2145721 at *3 (D. Mass. July 14, 2009) (citing *Egyptian Goddess*, 543 F.3d at 680); *see also Mag Instrument, Inc. v. JS Products, Inc.*, 595 F. Supp. 2d 1102, 1108 (C.D. Cal. 2008) (deferring functionality determination from motion to strike to claim construction hearing).  Further, in *ADC Telecommunications, Inc. v. Panduit Corp.*, 200 F. Supp. 2d 1022 (D. Minn. 2002), the Court denied summary judgment as to the defendant's invalidity defense based on overall functionality of the designs, and did not consider whether any aspect of the claimed design must be "factored

1  out" as part of claim construction.   200 F. Supp at 1035 ("[Defendant] has not met its burden of
2  proving that ADC's design patents are invalid because they are primarily functional."); *see also*
3  *Egyptian Goddess,* 543 F.3d at 680.[2]   The Court should construe, as part of the claim
4  construction process, Apple's design patents to factor out functional aspects of Apple's designs
5  because doing so will promote efficiency, streamline the parties' presentations at trial, and reduce
6  the probability of jury confusion.

7      As set forth in Samsung's opening brief, the Court's functionality determination should not
8  be a difficult one.   Dkt. 1090-1 at 5, 11-12, 14-15.   Apple's expert witness has conceded, as he
9  must, that ███████████████████████████████████████████████████████
10 ███████████████████████████████████████████████████████████████████
11 ██████████████████████████████████████████████████████████. *Id.* The
12 Court previously held that these elements and others were "dictated by" the use or purpose of the
13 article claimed.   Dkt. 449, at 15, 39-40.   The Court should do so again here.

14     Apple nevertheless argues, implausibly, that *none* of the features of its design patents are
15 functional, including the elements its expert admitted ████████████████████████
16 ███████   Dkt. 1089-3, at 5.   Because there are examples of other devices that have "a variety of
17 screen sizes," speaker locations, and front border size and proportions, Apple claims that these
18 elements of its designs reflect ornamental design choices that were determined by "aesthetic
19 considerations," not practical ones.   *Id.* at 5.   But the mere existence of alternatives does not
20 render a design ornamental and non-functional.   *See PHG Tech., Inc. v. St. John Co., Inc.,* 469
21 F.3d 1361, 1366 (Fed Cir. 2006) (listing several factors courts consider in determining whether a

---

[2]   The two additional authorities cited by Apple are inapposite.   In *Dexas Int., Ltd. v. Tung Yung Int., Inc.*, the court deferred claim construction until trial because the defendant's representation that functionality was undisputed was not accurate, leaving the court without an adequate record on which to determine which elements of the claimed designs were functional. 2008 WL 4831348 at *12 (E.D. Tex. June 24, 2008).   In *Sofpool, LLC v. Intex Recreation Corp.,* although the court noted in *dicta* that other courts have deferred the functionality analysis until trial, *Sofpool* did not appear to involve any argument that any aspect of the claimed designs were functional, and the court proceeded to construe the design patents in that case at the claim construction stage.   2007 WL 4522331 at *4 (E.D. Tex. Dec. 19, 2007).

design is functional, including whether (1) the protected design represents the best design; (2) alternative designs would adversely affect the utility of the specified article; (3) there are any concomitant utility patents; (4) advertising touts particular features of the design as having specific utility; (5) there are any elements in the design or an overall appearance clearly not dictated by function.); *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed Cir. 1997) ("The presence of alternative designs may or may not assist in determining whether the challenged design can overcome a functionality challenge."). The existence of alternative designs that do not affect the utility of the article is therefore merely one of several factors that may be relevant to determining the functionality of a design. *See id.*

The Court therefore should hold that at least the elements previously found to be functional and those that Apple's expert ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ form no part of the claimed ornamental designs for purposes of an infringement comparison. Dkt. 1090-01, at 5, 11-12, 14-15.

## II. ANY INSTRUCTION REGARDING DESIGN PATENT DRAFTING CONVENTIONS SHOULD APPLY CONSISTENTLY TO APPLE'S PATENTS

Apple argues that the Court should instruct the jury, consistent with the patents and the MPEP, that the broken lines in the D'677, D'087, and D'305 patents form no part of the claimed designs, even though D'677 makes no broken line disclaimer whatsoever. Dkt. 1089-3, at 2; MPEP § 1503.02. Such definitive and out of context instructions would only serve to further confuse the jury because the patents at issue and Apple's proposed constructions of them are inconsistent and self-contradictory.

With respect to the D'889 design, Apple argues that the Court should instruct the jury that the broken lines of the human figure in figure 9 form no part of the claimed design, but that the same broken lines forming a rectangular shape on the front of the device in Figures 1, 3 and 9 *are* part of the claimed design. Dkt. 1089-3, at 3. To justify its inconsistent construction, Apple asserts that the broken lines were never disclaimed, except with respect to the human figure visible in Figure 9. *Id.* Apple's argument ignores the plain language of the disclaimer: "Fig. 9 is an exemplary diagram of the use of the electronic device thereof the broken lines being shown for illustrative purposes only and form no part of the claimed design." *See* Dkt. 1091, Ex. 1 at 2.

1  Thus, the D'889 patent is ambiguous on its face by claiming the interior rectangle in Figures 1 and
2  3 while expressly disclaiming it in Figure 9.
3       Moreover, Apple's argument that the broken line rectangle on the front surface of the
4  device in Figures 1, 3 and 9 "marks an area visible beneath the transparent surface and is claimed
5  subject matter" (Dkt 1089-3, at 3) is in direct contravention of the PTO's requirement that
6  "elements visible behind transparent surfaces should be shown in light, full lines, not broken
7  lines."   United States Patent and Trademark Office, A Guide to Filing a Design Patent
8  Application, at 14 (available at http://www.uspto.gov/web/offices/com/iip/pdf/brochure_05.pdf).
9  This argument cannot clarify or explain away the use of broken lines in Figure 9.



24 Dkt. 1091, Ex. 1 at 6.
25       For the same reason, the rectangular element shown on the face of D'677 cannot be
26 construed as claiming a feature behind a transparent front surface, because that element is not
27 rendered in "light, full lines" as required by the PTO.  In addition, although the D'677 design
28 uses broken line structure, the patent does not disclaim broken lines as forming no part of the

1  claimed design or of a specified embodiment thereof, as required by the MPEP.  *See* MPEP §
2  1503.02 (III) ("Unclaimed subject matter may be shown in broken lines for the purpose of
3  illustrating the environment in which the article embodying the design is used.  Unclaimed
4  subject matter ***must*** be described as forming no part of the claimed design or of a specified
5  embodiment thereof.") (emphasis added).  Apple's claims regarding the scope of the D'677 are
6  therefore contradicted by the rules governing design patent drawing.

7  Apple also argues that the jury should be instructed that the "oblique lines appearing in the
8  D'677 patent indicate a transparent, translucent, or highly polished or reflective surface."  Dkt.
9  1089-3, at 3.  In support, Apple relies on MPEP section 1530.02, which provides that "oblique
10 line shading ***must*** be used to show transparent, translucent and highly polished or reflective
11 surfaces, such as a mirror."  (Emphasis added).  Although Apple misleadingly alters the
12 MPEP's ***mandatory*** language "must be" by bracketing it and changing it to the permissive "is,"
13 there can be no dispute that the use of oblique line shading is required to indicate a transparent,
14 translucent, or reflective surface.  *See* Dkt. 1091, Ex. 15 at 751:15-22; *id.,* Ex. 14, at ¶ 124
15 (Apple's expert opining that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮); *see also* June 26 Cashman Decl. Ex. 5 at 798:11-24, 811:6-812:7.

17 This same rule must be applied to D'087, which does not include any oblique line shading
18 and therefore does not claim, and cannot claim, a transparent, reflective or highly polished front
19 surface.  Indeed, the lack of oblique shading means that the front surface of D'087 must be
20 construed as opaque and non-transparent.  *See* MPEP § 1530.02; Dkt. 1091, Ex. 15 at 751:15-22;
21 *id.,* Ex. 14, at ¶ 124; June 26 Cashman Decl. Ex. 5 at 798:11-24, 811:6-812:7.  The jury should
22 be so instructed at the beginning of trial to clarify the applicable rules of design patents and to
23 avoid confusion.  And, to state the obvious, if the jury is instructed on patent drawing
24 conventions generally, the actual, correct language from the MPEP should be used, rather than
25 Apple's altered version of it.

26 For these same reasons, the jury should be instructed that the back of D'889 depicts "a
27 transparent, translucent, or highly polished or reflective surface" when shown in an angled
28 perspective, but not when in a plan or direct view.  This instruction is needed because Figure 2 of

1  the D'889 design patent shows oblique line shading on the back of the design in perspective view,
2  while Figure 4 of the back in plan view does not.   *See* Dkt. 1091, Ex. 1 at 3, 4.

3  The indefiniteness and the various drawing inconsistencies in the asserted patents, as well
4  as Apple's inconsistent and incompatible positions regarding their construction, further illustrate
5  precisely why these patents must be construed prior to trial.  The parties need clear guidance
6  regarding the elements that are claimed and the scope of those designs in order to focus their
7  presentations, and the jury will require instruction to avoid significant and prejudicial confusion.
8  *See also* Dkt. 930-01, at 15 n. 5.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Samsung's Opening Memorandum Regarding Claim Construction, Apple's proposed construction should be rejected.

DATED: June 26, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Victoria Maroulis*
    Charles K. Verhoeven
    Kevin P.B. Johnson
    Victoria F. Maroulis
    Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC