# Exhibit 15

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

### EXPERT REPORT OF ITAY SHERMAN

I.      INTRODUCTION

I was retained by Quinn Emanuel Urquhart & Sullivan, LLP, attorneys for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC (hereinafter "Samsung") to provide opinions and testimony pursuant to Federal Rule of Civil Procedure 26(a)(2) about certain design patents and alleged trade dress asserted by Apple Inc. ("Apple") in this action.

II.     BACKGROUND/QUALIFICATIONS

I earned a bachelor degree with honors (B.S.) in Electrical engineering from TelAviv University in 1991, and a master degree with honors (M.S.) in Biomedical engineering from Tel Aviv University in 1995.  I have worked in the telecommunication industry for the last 20 years, and for the last 10 years I have worked on mobile handset technology and products.

Between 2004 and 2007, I was the Chief Technology Officer for Texas Instruments Mobile Connectivity group that developed key components for mobile handsets. While there, I worked closely with the Nokia, Motorola, and Sony Ericsson to define technology solutions based on their handset design constraints.

Between 2007-2010, I served as the Chief Technology Officer for modu LTD, a handset and accessories manufacture that pioneered the concept of modular handsets. The modu concept revolved around the idea of a modular phone that has a base unit that can operate as a very small form factor handset, but could also be plugged to consumer electronic devices we termed "jackets" that enhance the capabilities and external design of the handset and enable it highlight other functions, such as a wrist watch or music player.

The development of the modu concept required investigation and experimentation with the possible boundaries of handset design electrical circuitry, mechanical design, and industrial design. I led the effort for design of multiple handsets as well as additional consumer devices that

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

**Earpiece with horizontally-oriented lozenge shape centered over the display screen**

The use of an earpiece is necessary on a smartphone to allow the user to listen to a conversation privately without the use of a separate headphone or ear bud connection. Ever since handsets were invented, the most natural place to put the earpiece of the phone was on the upper portion of the handheld part of the phone, near the ear—on the opposite end from the microphone, which is customarily placed on the end closest to the user's mouth. Centering the earpiece on the vertical axis is required allows user to conveniently align the phone to their ears, and hold the phone in the same alignment relative to the head irrespective of whether it is held in the right or left hand. Placing the earpiece anywhere other than on the upper portion of the phone, such as on the back or side of the phone, would be a highly inefficient choice that would force users to hold the smartphone in an unnatural position when using the phone feature.

Horizontal earpiece slots (as opposed to vertical slots) maximize the area that can be devoted to a receiver without impinging on the display screen size. They also have a larger "sweet spot," when compared to a circle or square shape, that make it easier for the user to place the device in a position where the sound can be heard. The slot shape, with its narrow height, also serves to protect the mesh covering the receiver below it by not having a more expansive area, such as a circle or square, which might allow the mesh to be more easily punctured, torn, or obstructed by dirt or dust. The slot shape also increases the durability of the smartphone surface by not weakening it with a relatively large expanse of less rigid material. In addition, having rounded edges increases the ease of manufacturing by allowing the slot to be created by a drill (the slots created by which are naturally rounded on the edges due to the spinning of the drill).

This is not to say that the precise vertical placement of the earpiece slot on the vertical axis within the upper portion of the phone is purely functional. Likewise, some options exist for styling the horizontal earpiece slot and selecting its length and width. The range of options is not limitless, however, and the overall horizontally symmetrical placement on the upper portion of the front surface as well as the horizontally-oriented lozenge shape of the D'677 patent are functional elements of the device and the earpiece in particular.

In summary, it is my opinion that the D'677 patent design is functional.

**The D'087 Is Functional**

'087 is similar to the D'677 in terms of functionality.  The only difference between the two being that the D'087 does not claim the black color for the front face, but does claim the bezel structure.  The D'087 also shows combinations of the 3 front face elements (earpiece hole, inset display and rounded control button).  The analysis presented for the D'677 as relating to front surface flatness and transparency, rounded corners, centered rectangular screen, inset display and borders around it and earpiece hole shape and location is directly applicable to this design patent.  In addition, the added bezel feature functionality is analyzed.

**Bezel**

A bezel in a mobile phone handset is a frame that surrounds the front face of the device to provide structural support and to join and hold together the front and back pieces of the device.  Apple's US Patent 7,688,574 utility patent covering the bezel for the iPhone, which was filed on the same day as the application for D'757, claims that the bezel "forms a uniform peripheral structure" and "provides structural support."  US Patent 7,688,574 at 8:60-63.  The '574 patent also states that the housing of the portable electronic device can take any suitable shape, but notes that the device shown in the drawings, which resembles an iPhone housing, has rounded corners where the sides meet "to provide a housing having a comfortable feel (e.g., no hard angles)."  Thus, Apple also recognized the function of creating a portable electronic device that is ergonomically correct.

The existence of the bezel in the type of design disclosed in the D'087 patent is a functional necessity, but its exact details could be an ornamental choice.  Another approach for a handset's mechanical design would be to use a bottom piece that wraps around to the front surface structure.  In these types of designs, a bezel is not required

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

An analysis of the functionality of each of the named elements comprising the trade dress of the iPhone, iPhone 3G, iPhone 3GS, iPod Touch, iPhone 4 and iPad devices is set forth above in connection with my analysis of Apple's design patents.

It is my conclusion that the trade dress asserted by Apple in the Amended Complaint is functional.

Signature executed on March 23, 2012

*[signature]*