QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

  Kevin P.B. Johnson (Bar No. 177129
  kevinjohnson@quinnemanuel.com
  Victoria F. Maroulis (Bar No. 202603)
  victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY AND SUSPEND THE JUNE 26, 2012 PRELIMINARY INJUNCTION PENDING APPEAL OR, ALTERNATIVELY, PENDING DECISION BY FEDERAL CIRCUIT ON STAY PENDING APPEAL**<br><br>Date:  August 2, 2012<br>Time: 1:30 pm<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh<br><br>**PUBLIC REDACTED VERSION** |

02198.51855/4831238.7

Case No. 11-cv-01846-LHK (PSG)
SAMSUNG'S MEMORANDUM  OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY JUNE 26, 2012 ORDER PENDING APPEAL

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 2

FACTUAL STATEMENT ............................................................................................. 4

    A.    Apple's 2011 Motion For A Preliminary Injunction ................................ 4

    B.    The Denial Of Apple's 2011 Motion For A Preliminary Injunction ............................ 4

    C.    The Federal Circuit's Decision ............................................................... 5

    D.    The Proceedings Following The Federal Circuit's Decision ..................... 5

ARGUMENT .................................................................................................................. 7

I.    SAMSUNG HAS A STRONG LIKELIHOOD OF SUCCESS ON APPEAL
BECAUSE THIS COURT ENTERED A PRELIMINARY INJUNCTION
WITHOUT CONSIDERING CURRENT FACTS AND CIRCUMSTANCES ................ 8

    A.    This Court Erred By Issuing A Preliminary Injunction Based On A Stale And
Incomplete Record ............................................................................... 8

    B.    A Preliminary Injunction Is Improper Based On The Current Evidence ................ 10

        1.    The Current Evidence Shows Substantial Changes In The Market For
Tablets That Negate Any Likelihood Of Irreparable Harm To Apple .......... 10

        2.    The Current Evidence Shows That Apple Is Not Likely To Prove
Infringement Of The D'889 Patent ......................................................... 12

        3.    The Current Evidence Shows That The D'889 Patent Is Likely Invalid ....... 14

II.    SAMSUNG FACES SUBSTANTIAL HARM IN THE ABSENCE OF A STAY,
WHEREAS APPLE WILL SUFFER NO INJURY SHOULD A STAY ISSUE ................ 17

    A.    Samsung Will Be Irreparably Harmed By The Preliminary Injunction .................... 17

    B.    The Harm To Samsung Outweighs Any Harm To Apple .......................... 17

        1.    The Court's Finding Of Harm To Apple Is Based On Erroneous And
Outdated Evidence .............................................................................. 18

        2.    The Court's Lost-Market-Share Theory Of Harm Is Based On The
Erroneous Assumption That The iPad2 Embodies The D'889 Patent .......... 19

CONCLUSION ............................................................................................................. 19

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure, to stay and suspend its June 26, 2012 Order Granting Preliminary Injunction pending appeal, or, in the alternative, pending a decision by the United States Court of Appeals for the Federal Circuit on a motion for stay pending appeal.  This motion is based on this notice of motion and supporting memorandum, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

# RELIEF REQUESTED

Samsung seeks an order staying and suspending the Court's June 26, 2012 Order Granting Preliminary Injunction pending appeal, or, in the alternative, pending a decision by the United States Court of Appeals for the Federal Circuit on a motion for stay pending appeal.  Samsung concurrently files a Motion to Shorten Briefing Schedule.

June 27, 2012                             QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP


                                          By  /s/ Victoria F. Maroulis
                                             Charles K. Verhoeven
                                             Kevin P.B. Johnson
                                             Victoria F. Maroulis
                                             Michael T. Zeller

                                          Attorneys for SAMSUNG ELECTRONICS CO.,
                                          LTD., SAMSUNG ELECTRONICS AMERICA,
                                          INC., and SAMSUNG
                                          TELECOMMUNICATIONS AMERICA, LLC

## INTRODUCTION

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") respectfully submit this memorandum in support of their motion, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure, to stay and suspend, pending appeal, the Court's June 26, 2012 order that preliminarily enjoined Samsung from "making, using, offering to sell, or selling within the United States, or importing into the United States, Samsung's Galaxy Tab 10.1 tablet computer, and any product that is no more than colorably different from this specified product and embodies any design contained in U.S. Design Patent No. D504,889." (Dkt. No. 1135, at 7.) Alternatively, Samsung respectfully requests a stay and suspension of the injunction pending the Federal Circuit's decision on whether to grant such relief pending appeal. *See, e.g., County of Sonoma v. Fed. Housing Fin. Agency*, No. C 10-3270, 2011 WL 4536894, at *2 (N.D. Cal. Sept. 30, 2011) (granting stay of preliminary injunction until Ninth Circuit resolved motion for stay pending appeal).

The preliminary injunction order is improper. A preliminary injunction is an extraordinary equitable remedy aimed solely at preventing prospective harm. But the Court issued the preliminary injunction based on evidence that is seven months old or older, repeatedly refusing to update the record to consider new evidence that raises substantial questions of the D'889 patent's invalidity and Samsung's lack of infringement and that shows that Apple is not likely to suffer any irreparable harm to Apple from infringement of the D'889 patent. Because of the purely prospective nature of a preliminary injunction, issuance of such an injunction based on facts and circumstances that no longer hold true is reversible error. Samsung's sales of the Galaxy Tab 10.1 should not be enjoined pending appeal.

The record is obsolete for three key reasons. *First*, the "two-player" tablet market that the Court relied on to presume irreparable harm to Apple from Samsung sales no longer exists. In recent months, the tablet market has seen no fewer than ***ten new entrants***, including Amazon, Barnes & Noble, Microsoft, Motorola, Sony, and Toshiba, rendering the Court's observations about the market share impacts of the unaccused Galaxy Tab 7.0 back in 2010 wholly obsolete. The most

SAMSUNG'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY JUNE 26, 2012 ORDER PENDING APPEAL

1    recent data demonstrate that Samsung's market share is ▮▮▮ showing that Apple, by far the

2    dominant tablet market player, is not losing market share to the Galaxy Tab 10.1.  Indeed, the

3    Court's premise that Samsung is supposedly "flooding the market with infringing products" (Dkt.

4    No. 1135, at 6), is belied by the fact that the Court itself required Apple to post only a meager $2.6

5    million bond (*id.* at 7).

6        *Second*, new evidence based on Apple's own submissions to the PTO shows that, contrary to

7    the Court's assumption, the iPad2 does not embody the D'889 patent; the D'889 patent is embodied

8    by the so-called "035" mock up, a bulky device that does not look basically the same as an iPad2 at

9    all.  Therefore, even if the Court were correct that a Galaxy Tab 10.1 looked basically the same as

10   an iPad2 (it does not), sales of the Galaxy Tab 10.1 likely do not infringe the D'889 patent because

11   a consumer would not likely confuse a Galaxy Tab 10.1 for the 035 mockup.

12       *Third*, new prior art evidence shows that the D'889 patent is likely invalid apart from the

13   Fidler/Knight Ridder reference that the Federal Circuit found insufficiently similar to the D'889

14   patent.   The refusal to consider the new prior art before issuing a preliminary injunction on the eve

15   of trial, without any hearing, cannot be squared with the Court's obligation to consider the evidence

16   at the time of issuance.

17       It is no answer to suggest (*see* Dkt. No. 1135, at 3 n.1) that the Federal Circuit somehow

18   compelled the Court to issue this improper injunction.  The Circuit did ***not*** limit the Court to

19   considering only two factors on remand (balance of the hardships and the public interest) but rather

20   "vacate[d] the order denying an injunction with respect to the D'889 patent and remand[ed] the case

21   to the district court ***for further proceedings on that portion of Apple's motion for preliminary***

22   ***relief***"—without limitation.  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1333 (Fed. Cir.

23   2012) (emphasis added).  Indeed, it would have been error for the Federal Circuit to place any such

24   straitjacket on the remand proceedings, as preliminary injunctive relief ***always*** requires balancing all

25   four of the relevant factors (including likelihood of success and irreparable harm) as they then exist.

26   To uphold the June 26 Order, the Federal Circuit would have to overturn settled law holding that

27   "[a]n injunction is an exercise of a court's equitable authority, to be ordered only after taking into

28

account **all of the circumstances** that bear on the need for **prospective** relief." *Salazar v. Buono*, 130 S. Ct. 1803, 1816 (2010).  Nor did the Federal Circuit require the Court to deny Samsung even the minimal "due process" of a hearing on the preliminary injunction on the current record, as it remanded for "proceedings" without limitation.  Samsung is unaware of any preliminary injunction ever issuing in a case of this magnitude without an opportunity for the enjoined party even to be heard on a current record.  Grant of a stay pending appeal is called for both because Samsung is strongly likely to succeed on appeal and because its right to compete in a multi-player tablet market heavily dominated by Apple will be irreparably harmed should this erroneous preliminary injunction be allowed to go into effect.

## FACTUAL STATEMENT

### A.     Apple's 2011 Motion For A Preliminary Injunction

Apple first moved for a preliminary injunction on July 1, 2011, based on four patents, including the D'889 patent.  (Dkt. No. 86.)  Apple argued that the Galaxy Tab 10.1 shares the "major elements" of the D'889 patent (*id.* at 14-15), and it emphasized visual comparisons between its iPad2 and the Galaxy Tab 10.1 to support its position that the Galaxy Tab 10.1 infringed the D'889 patent (*id.* at 3; Dkt. No. 282 at 8), even though it did not argue until its reply that the iPad2 "embodies the D'889 patent."  (Dkt. No. 282 at 11.)

Apple also claimed that Samsung's introduction of the "Galaxy Tab tablet in the fall of 2010 directly harmed sales of the original iPad" because the "Galaxy Tab captured more than 17% of tablet sales during the holiday season while Apple's market share declined."  (Dkt. No. 86 at 27 (citations omitted).)  Apple predicted that the Galaxy Tab 10.1 would have a "similar impact" (*Id.* at 27 (citations omitted)), emphasizing that "[m]any of the design features that drove demand for the iPad are found in the iPad2."  (Dkt. No. 282 at 11.)

### B.     The Denial Of Apple's 2011 Motion For A Preliminary Injunction

Explaining that a "preliminary injunction is an extraordinary remedy, never granted as a matter of right," the Court denied Apple's motion in its entirety on December 2, 2011.  (Dkt. No. 452 at 8 (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 9 (2008).)  The Court found the

1    D'889 patent likely invalid as obvious in light of the 1994 Fidler/Knight Ridder tablet—a finding

2    based on Apple's own broad characterization of the patent's scope (*see* Dkt. No. 86 at 14-15, 40).

3    With respect to infringement, the Court compared the Galaxy Tab 10.1 to both the D'889 patent and

4    the iPad2 (*id.* at 46-48) based on Apple's claim and the Court's "assum[ption]" that "the iPad 2 is

5    the commercial embodiment of the D'889 patent." (*Id.* at 47 n.27.) The Court also found probable

6    irreparable harm based on its view that Apple and Samsung were the "two major competitors in the

7    tablet market" and "that Samsung has been taking market share from Apple overall." (Dkt. No.

8    452, at 48 & 49 n.29). Apple then appealed.

9           **C.      The Federal Circuit's Decision**

10          On May 14, 2012, the Federal Circuit affirmed the Court's denial of a preliminary injunction

11   on all but the D'889 patent. As to that patent, the Federal Circuit remanded because it disagreed

12   with the Court's obviousness analysis. *Apple*, 678 F.3d at 1328-32. The Federal Circuit also found

13   no abuse of discretion in the Court's finding of a likelihood of irreparable harm based on "the

14   relative market share of Apple and Samsung and the absence of other competitors in the relevant

15   market" and evidence "that design mattered more to customers in making tablet purchases." *Id* at

16   1328.

17          Over a dissent as to whether there should be a remand, the Federal Circuit "vacate[d] the

18   order denying an injunction with respect to the D'889 patent and remand[ed] the case to the district

19   court for further proceedings on that portion of Apple's motion for preliminary relief." *Id.* at 1333.

20   The Federal Circuit directed that these "further proceedings" should include an analysis of the

21   balance of hardships and public interest factors, but did not limit the scope of the "further

22   proceedings" to those two factors. *Id.*

23          **D.      The Proceedings Following The Federal Circuit's Decision**

24          On May 18, 2012, prior to the Federal Circuit's issuance of the mandate, Apple filed a

25   motion for injunctive relief pursuant to Rule 62(c). On May 21, 2012, this Court ordered that the

26   parties "shall address" the balance of hardships and public interest factors in connection with

27   Apple's motion, and that the "Court will not entertain new evidence with respect to the issuance of

28

the preliminary injunction EXCEPT with respect to the amount of a bond." (Dkt. No. 962 at 2.)  On May 25, 2012, Samsung moved for leave to seek reconsideration of this Court's May 21 Order to the extent that it precluded Samsung from introducing new evidence except with respect to the amount of the bond.

On June 4, 2012, the Court denied without prejudice Apple's motion under Rule 62(c) and Samsung's motion for leave to seek reconsideration, finding that it lacked jurisdiction because the Federal Circuit had not issued the mandate.  (Dkt. No. 1032.)

On June 25, 2012, having received the Federal Circuit's mandate, this Court issued an order reiterating that the preliminary injunction hearing, now scheduled for June 29, 2012, would be limited to consideration of "(1) whether the balance of the hardships favors issuing a preliminary injunction, and (2) whether the public interest favors issuing a preliminary injunction" and that "[n]o further briefing or evidence will be permitted." (Dkt. No. 1131, at 1.)  On June 26, 2012, Samsung sought leave to file a motion for reconsideration of the June 25 order, again arguing that the Court court should consider the current record before ruling on Apple's year-old request for injunctive relief.

On June 26, the Court canceled the preliminary injunction hearing, denied Samsung's motion for leave to seek reconsideration, and entered an order enjoining Samsung from "making, using, offering to sell, or selling within the United States, or importing into the United States, Samsung's Galaxy Tab 10.1 tablet computer, and any product that is no more than colorably different from this specified product and embodies any design contained in U.S. Design Patent No. D504,889." (Dkt. No. 1135, at 7).  Although the Court acknowledged that it was required to balance all four preliminary injunction factors (*see id.* at 6), the Court declined to consider any new evidence with respect to those factors because, in its view, the Federal Circuit's "remand was explicitly limited to the issues of balancing of hardships and public interest and did not invite a reopening of the D'889 infringement, validity, and irreparable harm findings" (*id.* at 3 n.1).

Turning to the merits, the Court found that the balance of hardships and the public interest factors weighed in Apple's favor for several reasons.  *First*, relying on its original preliminary

injunction ruling, the Court stated that "Apple's interest in enforcing its patent rights is particularly strong because it has presented a strong case on the merits." *Id.* at 4.  *Second*, again without considering the substantial new evidence in the record, the Court stated that "there was some evidence that Samsung altered its design to make its product look more like Apple's." *Id.*  *Third*, the court noted that "Apple will be required to post a bond" of $2.6 million.  *Id.*  And *fourth*, with respect to the public interest, the district court favored Apple's interest in enforcing its patent rights over the public's interest in competition, stating that Samsung did not have a right to "flood[] the market with infringing products." *Id.* at 6.

On June 26, filed a notice of appeal to the Federal Circuit, and now seeks to stay and suspend the preliminary injunction pending that appeal, or at least until the Federal Circuit can rule on a motion for stay pending appeal.

## ARGUMENT

It is well settled that "[t]o obtain a stay, pending appeal, a movant must establish a strong likelihood of success on the merits, or, failing that, nonetheless demonstrate a substantial case on the merits provided that the harm factors militate in its favor." *Merial Ltd. v. Cipla Ltd.*, 426 Fed. App'x 915, 915 (Fed. Cir. 2011) (unpublished) (citing *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)); *see also Standard Havens Prods, Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512-13 (Fed. Cir. 1990) (stating that each of the traditional four stay factors—likelihood of success, irreparable harm, balance of hardships, public interest—"need not be given equal weight"); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987) ("In considering whether to grant a stay pending appeal, this court assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public."); *accord County of Sonoma*, 2011 WL 4536894, *1.  Here, Samsung not only has a strong likelihood of success on appeal given the Court's issuance of a preliminary injunction based on a stale record, but, absent a stay, the injunction will cause Samsung significant harm due to impaired relationships with customers and carriers, while causing no demonstrable injury to Apple.  A stay pending appeal is therefore warranted.

1   **I.      SAMSUNG HAS A STRONG LIKELIHOOD OF SUCCESS ON APPEAL BECAUSE**
         **THIS COURT ENTERED A PRELIMINARY INJUNCTION WITHOUT**
2        **CONSIDERING CURRENT FACTS AND CIRCUMSTANCES**

3        A preliminary injunction is an extraordinary remedy that, because strictly prospective, must

4   be based upon accurate and up-to-date evidence.  This Court's June 26, 2012 Order conflicts with

5   this fundamental tenet because it imposes a preliminary injunction based on an evidentiary record

6   that closed over seven months ago and that has been rendered stale by changed facts and

7   circumstances.  Samsung therefore has a strong likelihood of success on appeal.

8        **A.      This Court Erred By Issuing A Preliminary Injunction Based On A Stale And**
              **Incomplete Record**
9

10       As the Supreme Court recently reiterated, "[a]n injunction is an exercise of a court's

11  equitable authority, to be ordered only after taking into account ***all of the circumstances*** that bear

12  on the need for ***prospective*** relief."  *Salazar v. Buono,* 130 S. Ct. 1803, 1816 (2010) (emphasis

13  added).  It is thus well established that because injunctions are equitable and prospective in nature,

14  when deciding a motion to grant or modify injunctive relief, courts must consider the facts as they

15  presently exist, not as they existed at some point in the past.  *See, e.g., id.* (reversing a district

16  court's refusal to modify an injunction and holding that "[b]ecause injunctive relief 'is drafted in

17  light of what the court believes will be the future course of events, … ***a court must never ignore***

18  ***significant changes in the law or circumstances underlying an injunction lest the decree be***

19  ***turned into an 'instrument of wrong.***'") (emphasis added); *N.A.A.C.P. v. North Hudson Regional*

20  *Fire & Rescue,* 707 F. Supp. 2d 520, 532 (D.N.J. 2010) (considering new evidence and all relevant

21  factors on remand after appeal from previously granted preliminary injunction); *MercExchange,*

22  *L.L.C. v. eBay, Inc.,* 467 F. Supp. 2d 608, 611 (E.D. Va. 2006) (ruling, on remand from the

23  Supreme Court's decision holding that injunctive relief does not follow automatically from a

24  finding of patent infringement, that ***court must "consider the facts as they exist at the time of***

25  ***remand*** and not as they existed several years in the past") (emphasis added).

26       Indeed, as stated in *eBay,* "The ***current*** facts are so vital to the court's decision when such

27  form of relief is sought as the court is not only charged with determining the equitable relief

28  appropriate ***on the date of the court's order***, but is also expected to fashion relief that appears

1   appropriate for extension into the future."   467 F. Supp. 2d at 611 (emphasis added); *see also*

2   *Lankford v. Sherman*, 451 F.3d 496, 513 (8th Cir. 2006) (remand of preliminary injunction request

3   was required because "many facts have changed since the original hearing"); *Chemlawn Services*

4   *Corp. v. GNC Pumps, Inc.*, 823 F.2d 515, 518 (Fed. Cir. 1987) (remanding preliminary injunction

5   request where "the facts may now have changed in light of the present circumstances" and a party's

6   "subsequent commercial activity, if any, may have altered the facts").  Apple's burden therefore

7   was to demonstrate that "irreparable injury is *likely* in the absence of an injunction," not that

8   irreparable harm was likely *seven months ago* when the preliminary injunction record closed.

9   *Winter,* 555 U.S. at 22; *see also Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir. 1994)

10  ("Logically, 'a prospective remedy will provide no relief for an injury that is, and likely will remain,

11  entirely in the past.'") (citation omitted); Wright & Miller, FEDERAL PRACTICE & PROCEDURE

12  § 2948.1 ("There must be a likelihood that irreparable harm will occur. . . .  A *presently existing*

13  actual threat must be shown.") (emphasis added).

14       In issuing the preliminary injunction, this Court defied these principles, declining to

15  consider any new evidence obtained during the seven months between the issuance of its order

16  denying Apple's motion for a preliminary injunction and the Federal Circuit's remand for further

17  proceedings.  The Court's injunction thus "turned into an instrument of wrong," the moment it was

18  entered, as it ignored the "significant change in … circumstances" since the Court issued its original

19  preliminary injunction decision in December 2011.  *Salazar,* 130 S. Ct. at 1816.

20       Nor, contrary to the Court's suggestion (Dkt. No. 1135, at 3 n.1), did the Federal Circuit's

21  May 14, 2012 decision limit the Court's ability to consider new evidence.  The decision broadly

22  remanded for "further proceedings" regarding the order "denying an injunction with respect to the

23  D'889 patent," without expressing any limitations,  *Apple*, 678 F.3d at 1333, and expressly noted

24  that its invalidity ruling was based solely on the evidence in the appellate record, *see id.* at 1332 n.6,

25  clearly leaving the path open to the district court to update the record to take into account the

26  parties' intervening discovery.  This broad remand for "further proceedings" did not preclude this

27  Court—consistent with the authorities discussed above—from fully considering updated evidence

28

in deciding whether to issue a preliminary injunction.  *See, e.g., N.A.A.C.P.*, 707 F. Supp. 2d  at 541-42 (rejecting argument "that on remand, the Court should only reconsider the first factor— likelihood of success on the merits—of its decision to grant the preliminary injunction, since the Court of Appeals' mandate 'said nothing about reconsidering the other preliminary injunction factors'" and ruling that the court would "reexamine each of the four factors" and consider "new evidence based on any other circumstances which may have changed since the Court granted the injunction").

### B.    A Preliminary Injunction Is Improper Based On The Current Evidence

The Court's preliminary injunction order does not reflect substantial new evidence that has emerged since the preliminary injunction record closed seven months ago (much of it produced by Apple in response to a Samsung motion to compel) and that bears directly on irreparable harm, infringement and validity with respect to the D'889 patent.  Had the Court considered additional evidence, it likely would not have entered the preliminary injunction, as substantial new evidence has emerged since the preliminary injunction record closed last year that raises substantial questions as to non-infringement and invalidity, and negates any likelihood of irreparable harm.

#### 1.    The Current Evidence Shows Substantial Changes In The Market For Tablets That Negate Any Likelihood Of Irreparable Harm To Apple and Shifts the Balance of Harms Against an Injunction

In issuing the preliminary injunction, the Court relied on its December 2011 finding of likely irreparable harm, which was based in large part on the view that Apple and Samsung were "two major competitors in the tablet market" and that a two-player market renders irreparable harm more likely.  (Dkt. No. 452 at 49.)  The tablet market, however, is no longer a two-player market, and the Court therefore erred by ordering *prospective* injunctive relief based on the premise that Samsung is Apple's sole major competitor in a two-player market when that assumption bears no relation to economic reality.  This too presents a strong ground for appeal.

The Court's irreparable harm and balancing of harm findings that underlie the preliminary injunction are based on the assumption that Samsung and Apple compete in a "two-player market" for tablet computers and market share data from ***2010*** that the Court found suggested that Apple

1  was losing market share to Samsung. (Dkt. No. 452 at 49.) Specifically, had the Court considered

2  the current record, and the current state of the market based on notorious facts of which it may take

3  judicial notice, it would have found that new entrants to the tablet market are emerging with

4  increasing frequency, with Microsoft just the latest entrant to the tablet competition. *See, e.g.,*

5  http://www.microsoft.com/en-us/news/press/2012/jun12/06-18announce.aspx (last accessed June

6  27, 2012). In addition, Amazon and Barnes & Noble both have introduced successful media tablets.

7  http://news.cnet.com/8301-17938_105-20037960-1/cnet-looks-at-current-and-upcoming-tablets/

8  (last accessed June 25, 2012); http://www.microsoft.com/en-us/news/press/2012/jun12/06-

9  18announce.aspx (same). As of mid-January 2012, the Kindle Fire's market share has reportedly

10  grown to 14%. *See* http://www.pewinternet.org/Press-Releases/2012/The-rise-of-ereading.aspx

11  (last accessed June 25, 2012). This is, therefore, indisputably no longer the "two-player" market

12  upon which the Court based its finding of irreparable harm.

13       Nor does Samsung presently enjoy anywhere close to the 17% share of the market that the

14  Court suggested existed in fall 2010 (the figures used for the initial preliminary injunction ruling).

15  *Compare* Dkt. No. 452 at 49 & n.29 *with* Dkt. No. 987 (Decl. of Thomas R. Watson ("Watson

16  Decl."), Ex. 1 (Exhibit 30 to the Expert Report of Terry Musika).) The Court's conclusion is

17  apparently based on market share data from 2010, but the parties have now seen the market share

18  evidence for *2011*. According to Apple's own expert, ████████████████████████████

19  ████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ████████████████████████████████ Even when the entire family of Galaxy Tab

26  tablets is considered collectively, Samsung only has a 15.4% share of *Android* tablets.

27  http://www.comscore.com/Press_Events/Press_Releases/2012/4/Kindle_Fire_Captures_more_than_

28

SAMSUNG'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY JUNE
26, 2012 ORDER PENDING APPEAL

1   Half_of_Android_Tablet_Market (last visited June 27, 2012).  This new evidence demonstrates that

2   Samsung is not only not "flooding the market;" it is actually losing market share to Apple and other

3   manufacturers.[1]

4          Finally, there is no longer any basis for the Court's prior assumption that Apple is likely to

5   be harmed by loss of iPad2 sales (Dkt. No. 452 at 48-49), since new evidence discussed below

6   shows that the iPad2 is not an embodiment of the D'889 patent.  Thus, there is a strong likelihood

7   that the Federal Circuit will vacate the preliminary injunction based on the fundamental absence of

8   current or ongoing irreparable harm.

9                    **2.       The Current Evidence Shows That Apple Is Not Likely To Prove
                              Infringement Of The D'889 Patent**

10         Nor does the Court's order reflect the Federal Circuit's construction of the D'889 patent,

11  which was narrower than this Court used in its December 2011 ruling.  Under a proper construction,

12  considering both the 035 model and the Federal Circuit's narrowed construction of the D'889 for

13  validity purposes, Apple did not demonstrate a substantial likelihood that the Galaxy Tab 10.1

14  infringes.  Samsung thus has a strong likelihood of success on appeal.

15         *First*, new evidence demonstrates that the relevant embodiment for comparison purposes is

16  not the iPad2 (as the Court found in its December 2011 ruling, and relied upon again in the June 26

17  Order) but the "035" prototype—photographs of which Apple submitted to the PTO in connection

18  with its application for the D'889 patent (Dkt. Nos. 346, 372) but purposefully withheld from

19  Samsung until after the 2011 preliminary injunction hearing.  Indeed, in response to a Samsung

20  motion to compel, Apple also recently produced █████████████████████████

21

22  _____

23         [1]   The Court's conclusion that the public interest supports enjoining sales of the Galaxy Tab
    10.1 is likewise incorrect, as Samsung is not seeking "to compete unfairly, by flooding the market
24  with infringing products."  (Dkt. No. 1135, at 6.)  Rather, the public interest favors a stay and
    continued competition in the marketplace since, among other things, the challenged feature is only
25  one part of a much larger and complex product and the effect of an injunction would be to deny
    non-infringing benefits (such as 4G LTE technology) to the public.  *See, e.g., eBay Inc. v.*
26  *MercExchange LLC*, 126 S.Ct. 1837, 1842 (2006) (Kennedy J., concurring) ("When the patented
    invention is but a small component of the product the companies seek to produce … an injunction
27  may not serve the public interest.").

28

1  (*See* Dkt. No. 987 (Watson Decl., Exs. 12-14.))  The 035 plainly is not substantially similar to the

2  Galaxy Tab 10.1, as shown below:





25  These noticeable differences in thickness, aspect ratio of the display screen, roundness of the

26  corners, shape of edges and bezel, among others, preclude a finding of infringement, as they would

27  not cause an "ordinary observer, giving such attention as a purchaser usually gives," to find the

28  "two designs are substantially the same . . . such as to deceive such an observer, inducing him to

-13-                                Case No. 11-cv-01846-LHK (PSG)

SAMSUNG'S MEMORANDUM  OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY JUNE
26, 2012 ORDER PENDING APPEAL

1  purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665,

2  670 (Fed. Cir. 2008) (en banc).[2]

3  **3.   The Current Evidence Shows That The D'889 Patent Is Likely Invalid**

4  The Court's preliminary injunction order also did not reflect two critical prior art references

5  that have never been considered by *either* this Court or the Federal Circuit and that establish that the

6  D'889 patent is likely invalid.  *First*, U.S. patent D500,037 shows a design for a "bezel-less flat

7  panel display" that was filed a year before D'889 patent's alleged conception:

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22  [2]   This Court also should have reassessed its prior finding of a likelihood of infringement in
23  light of the Federal Circuit's narrow construction of the D'889 patent for invalidity purposes.  In
24  assessing the novelty of the D'889 patent, the Federal Circuit held that this Court erred by viewing
the D'889 patent from "too high a level of abstraction" and construing the "claimed design too
25  broadly."  *Apple*, 678 F.3d at 1332.  By continuing to rely on its broad construction of the D'889
patent for infringement purposes, however, the Court ran afoul of the well-established principle that
26  "[a] patent may not, like a 'nose of wax,' be twisted one way to avoid [invalidity] and another to
27  find infringement."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir.
2001) (quoting *Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*, 431 F.2d 539, 544 (5th Cir.
1970)).  This presents an additional strong ground for appeal.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



**D504,889**          **D500,037**

18  (Declaration of Brett Arnold in Support of Samsung's Motion for Summary Judgment, Dkt. No.

19  943, Ex. 22.)  The D'037 patent has nearly the same rectangular shape as the D'889 patent, with a

20  transparent and/or reflective surface running from edge to edge on the front of the device with no

21  interruptions, giving the same "unframed" impression as D'889 patent.  The D'037 patent is also

22  symmetrical and smooth in all views and has a relatively thin profile.  Since the D'037 patent has

23  design characteristics that are basically the same as the D'889 patent, it either anticipates the D'889

24  patent on its own or constitutes a proper primary reference for purposes of obviousness.[3]

25

26

27  [3] The optional mask region on the front of the D'889 patent is also shown in the D'037 patent.
    Figure 3 of the D'037 patent shows the mask underneath the continuous, transparent cover piece,

28        (footnote continued)

-15-          Case No. 11-cv-01846-LHK (PSG)
SAMSUNG'S MEMORANDUM  OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY JUNE
26, 2012 ORDER PENDING APPEAL

1    *Second*, the "Brain Box" display below,[4] whose display portion can be removed from its

2    base, is an Apple design made public at least as early as 1997.  It has a flat, reflective, continuous

3    surface on the front running from edge to edge:



13   This display in combination with the D'037 patent creates the same overall visual appearance as the

14   D'889 patent, with either serving as the primary or secondary reference to the other, such that the

15   ordinary observer test would be satisfied.[5]

_____

and the accompanying utility patent confirms a mask under the top transparent layer surrounding
the active display area.  (*See* Dkt. No. 943, Ex. 24, U.S. Patent 6,919,678 at 5:53 to 6:31.)

[4]  The image is from *AppleDesign* by Paul Kunkel (1997).  (Dkt. No. 943, Ex. 25 at 144.)

[5]   Both of these display devices are appropriate obviousness references because the D'889
patent claims broadly that it is an "electronic device," and the file history shows that the design
corresponded to both a tablet device and a display or screen that could be coupled to a computing
device.  (Dkt. No. 943, Ex. 26 at APLPROS0000010190.)  Other prior art references also taught
flat, uninterrupted front and back surfaces on a rectangular shape with rounded corners and a thin
profile.  (Dkt. No. 943, Ex. 27 (JP1178470), Ex. 28 (KR 30-0304213), and Ex. 24.)  In addition,
inventor Roger Fidler testified that in 1981 he created a tablet design that was rectangular with four
evenly rounded corners, a flat clear surface running from edge to edge, no physical buttons, and a
thin form factor.  (Dkt. No. 943, Ex. 29 at 290:22-299:10.).  These features were obvious prior to
the alleged conception of the D'889 patent.

II.   **SAMSUNG FACES SUBSTANTIAL HARM IN THE ABSENCE OF A STAY, WHEREAS APPLE WILL SUFFER NO INJURY SHOULD A STAY ISSUE**

   A.   **Samsung and the Public Will Be Irreparably Harmed By The Preliminary Injunction**

While it is not necessary for Samsung to demonstrate irreparable harm given the strength of its arguments on appeal, *see supra*, Part I, the preliminary injunction, once effective, will in fact irreparably harm Samsung's business relationships with carriers and customers.   Samsung's customers for its remaining Galaxy Tab 10.1 models are wireless carriers.   The carriers provide the Tab 10.1 to their customers along with cellular service plans that cost thousands of dollars over the life of the contract.   Importantly, carriers have long-term relationships with their individual and corporate clients that depend on continuity and predictability.   Because of the nature of those relationships, they cannot as a practical matter be temporarily suspended, and breaking them imposes significant burdens on both carriers and their downstream customers.   Therefore, it is critical to Samsung's business that it remain a stable source of products to its carrier customers. Samsung would suffer great harm if its ability to provide the Galaxy Tab 10.1 to its customers is disrupted.   (Dkt. Nos. 257 (Verizon Wireless); 264 (T-Mobile); *see also* Dkt. No. 548, Ex. X-8 at 232-34 (preliminary injunction hearing slides).)

Samsung will further suffer irreparable harm to its goodwill from the Court's statement that Samsung is "flooding the market with infringing products." (Dkt. No. 1135 at 6.)   As explained, *supra*, new market share data, prior art, and the 035 model show that this statement is demonstrably false.   Numerous news outlets have already begun reporting this erroneous statement, further damaging Samsung's reputation.

   B.   **The Harm To Samsung and the Public Outweighs Any Harm To Apple**

These harms to Samsung outweigh any possible harm to Apple from sales of the Galaxy Tab 10.1 for at least two reasons.   *First*, as mentioned, the Court based its finding of irreparable harm to Apple on stale, outdated evidence of the parties' relative market shares in 2010 and refused to consider updated evidence from 2011.   During that intervening period, major new competitors entered the market, undermining the Court's assumption that the parties' compete in a "two-player

market."  *Second*, the Court's decision is based on the erroneous assumption that Apple is practicing the D'889 patent, which it is not.  A stay of the preliminary injunction is therefore unlikely to harm Apple.

### 1.    The Court's Finding Of Harm To Apple Is Based On Erroneous And Outdated Evidence

As described, *supra*, in Part I.B.1, the "two-player market" assumption underlying the Court's finding of likely harm to Apple has been dramatically undermined by the entrance of new competitors and loss of Samsung market share.  These major changes in the economics of the tablet market demonstrate that the harm to Samsung from a preliminary injunction outweighs any benefit to Apple or harm Apple will suffer if that injunction is stayed pending appeal.  In light of new entrants into the market, it is unlikely that any minimal market share that Galaxy Tab 10.1 enjoys will be recovered by Apple, as opposed to any pre-existing or new competitors.  Further, the new market share data demonstrates that Apple has successfully competed against the accused Galaxy Tab 10.1 and *gained* market share.  *See Display Techs., LLC v. Display Indus., LLC*, No. 11 Civ. 6390, 2011 WL 6188742, at *3 (S.D.N.Y. Dec. 5, 2011) (denying preliminary injunction where patentee had successfully competed against accused product); *see also Automated Merch. Sys., Inc. v. Crane Co.*, 357 Fed. Appx. 297, 301 (Fed. Cir. 2009) (unpublished) (reversing preliminary injunction where proof of claimed lost market share was insufficient); *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) ("Neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial.") (citation omitted).[6] This is all the more true here, where ████████████████████████████████████████████████

████████████████████████████████████████

---

[6]  Although Apple, as the dominant seller of tablets, may lose *sales* to the Galaxy Tab 10.1, lost sales can be compensated by monetary relief and are therefore not irreparable.  *Automated Merch.*, 357 Fed. Appx. at 300-01; *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1347-48 (Fed. Cir. 2006).

**2.    The Court's Lost-Market-Share Theory Of Harm Is Based On The Erroneous Assumption That The iPad2 Embodies The D'889 Patent**

As described above, new evidence shows that, contrary to the Court's assumption based on Apple's misrepresentations, the iPad2 is not an embodiment of the D'889 patent and Apple does not practice the patent.  The Court's irreparable harm analysis focused on potential lost iPad2 sales (Dkt. No. 452 at 48-49)—lost sales that are immaterial here if the D'889 patent is not embodied by the iPad2.  *High Tech Med. Instr., Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995) ("lack of commercial activity by the patentee is a significant factor in the [irreparable harm] calculus") (reversing preliminary injunction); *Quad/Tech, Inc. v. Q.I. Press Controls B.V.*, 701 F. Supp. 2d 644, 656 (E.D. Pa. 2010) (plaintiffs' failure to implement patent in any product it currently sells "is an important consideration against a finding of irreparable harm"); *see Apple*, 678 F.3d at 1324 ("[T]he district court was correct to require a showing of some causal nexus between Samsung's infringement and the alleged harm to Apple as part of the showing of irreparable harm.").  The absence of such evidence weighs heavily against a finding that Apple will be irreparably harmed absent an injunction.  *Apple*, 678 F.3d at 1324 (requiring a nexus between the infringement and harm); *High Tech Med.*, 49 F.3d at 1556.

## CONCLUSION

The Court should stay the June 26, 2012 Order Granting Preliminary Injunction pending appeal or, alternatively, pending the Federal Circuit's ruling on a motion for a stay pending appeal.

DATED: June 27, 2012                    Respectfully submitted,

                                        QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By /s/ Victoria Maroulis
                                           Charles K. Verhoeven
                                           Kevin P.B. Johnson
                                           Victoria F. Maroulis
                                           Attorneys for SAMSUNG ELECTRONICS
                                           CO., LTD., SAMSUNG ELECTRONICS
                                           AMERICA, INC. and SAMSUNG
                                           TELECOMMUNICATIONS AMERICA, LLC