# KANG DECLARATION EXHIBIT 1

# EXHIBIT 10
# PUBLIC REDACTED VERSION

**CONTAINS INFORMATION DESIGNATED AS APPLE AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

APPLE INC., a California corporation,

      Plaintiff,

      vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

      Defendants.

Civil Action No. 11-CV-01846-LHK

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

      Counterclaim-Plaintiffs,

      v.

APPLE INC., a California corporation,

      Counterclaim-Defendant.

**Expert Report of J. Paul Dourish, Ph.D.**
**Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,456,893**

**CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

## Table of Contents

I. Introduction and Summary Of Report ......................................................................1

II. Qualifications and Professional Experience ...........................................................1

III. Understanding Of The Law ....................................................................................3

    A. Invalidity in General ......................................................................................3

    B. Anticipation.....................................................................................................3

    C. Obviousness ...................................................................................................4

    D. Indefiniteness .................................................................................................6

    E. Lack of Written Description ...........................................................................6

    F. Conception ......................................................................................................6

    G. Priority Date and Reduction to Practice.........................................................7

IV. Materials Reviewed ................................................................................................7

V. Applicable Level of Ordinary Skill in the Art .......................................................7

VI. Background Technology ..........................................................................................8

    A. Traditional Cameras.......................................................................................9

    B. Digital Cameras .............................................................................................9

VII. Summary of the '893 Patent .................................................................................12

    A. Development Work Leading to the Alleged Invention of the '893 Patent ........12

    B. Specification of the Patent ...........................................................................12

    C. Prosecution History......................................................................................15

    D. Samsung's Asserted Claims.........................................................................19

VIII. Claim Constructions Used In This Expert Report ...............................................21

IX. Samsung's Claimed Priority Date.........................................................................21

X. Prior Art Anticipates the Asserted Claims of the '893 Patent ..............................22

    A. Claims 1-4, 6-8 and 10-16 of the '893 Patent Are Anticipated by the Apple iBook................................................................................................................24

        1. Description of the Apple iBook ........................................................24

        2. Opinions Regarding the iBook.........................................................25

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

B.     Claims 1-4, 6-7 and 10-16 of the '893 Patent Are Anticipated by Japanese Unexamined Patent Application Publication Number 2005-64927 to Fuji Film ........................................................................................28

1.   Description of Japanese Unexamined Patent Application Publication Number 2005-64927 to Fuji Film ................................28

2.   Opinions Regarding JP '927 publication ..................................30

C.     Claims 1-4, 6-8 and 10-16 of the '893 Patent Are Anticipated by Korean Published Patent No. 10-2004-0013792 to LG Electronics ..............................33

1.   Description of Korean Published Patent No. 10-2004-0013792 ...............33

2.   Opinions Regarding KR '792 patent .........................................34

D.     Claims 1-4, 6-8 and 10-16 of the '893 Patent Are Anticipated by U.S. Patent No. 6,618,082 to Hayashi et al. ...................................................37

1.   Description of U.S. Patent No. 6,618,082 ................................37

2.   Opinions Regarding the '082 Patent ........................................39

XI.   The Prior Art Renders Obvious the Asserted Claims of the '893 Patent ......................43

A.     The Concepts of the Claimed Invention Were Well Known and Obvious ........45

1.   Reasons to Combine These Concepts To Achieve Expected Results ........47

B.     Discussion of Illustrative References, Including Exemplary Combinations of Such References With Each Other And/Or Other References .....................48

1.   U.S. Patent No. 6,867,807 to Malloy Desormeaux in Combination with any one of JP '927 Publication, KR 792 Patent, or '082 Patent Renders Obvious Claims 1-4, 6-8 and 10-16 of the '893 Patent ..............48

2.   U.S. Patent No. 6,512,548 to Anderson in Combination with any one of JP '927 Publication, KR 792 Patent, or '082 Patent Renders Obvious Claims 1-4, 6-8 and 10-16 of the '893 Patent ...........................52

3.   U.S. Patent No. 6,118,480 to Anderson et al. in Combination with any one of JP '927 Publication, KR '792 Patent, or '082 Patent Renders Obvious Claims 1-4, 6-8 and 10-16 of the '893 Patent ..........................53

4.   Japanese Unexamined Patent Application Publication Number 2005-64927 to Fuji Film in Combination with any one of '807 Patent or '082 Patent Renders Obvious Claim 8 of the '893 Patent ........................55

C.     Secondary Considerations ...............................................................56

XII.   The Asserted Claims 10-16 of the '893 Patent are Indefinite ........................................57

XIII.  The Asserted Claims of the '893 Patent Lack Support in the Written Description .......57

**CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

XIV.   Trial Exhibits ...................................................................................................59

XV.    Compensation ...................................................................................................60

XVI.   Previous Testimony .........................................................................................60

XVII.  Supplementation of Opinions .........................................................................60

**CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

**I.      Introduction and Summary Of Report**

1.      I have been retained as an expert in this case by Plaintiff and Counterclaim-Defendant Apple Inc. ("Apple").  I expect to testify at trial regarding the matters set forth in this report, if asked about these matters by the Court or by the parties' attorneys.

2.      I understand that the Defendants and Counterclaim-Plaintiffs in this case, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung"), have asserted U.S. Patent No. 7,456,893 to Son et al. ("the '893 patent"), entitled "Method Of Controlling Digital Image Processing Apparatus For Efficient Reproduction And Digital Image Processing Apparatus Using The Method," against Apple.  I have been informed that Samsung is asserting claims 1-4, 6-8, and 10-16 of the '893 patent against several Apple products, namely the iPhone 3GS, the iPhone 4, the iPod Touch (4th generation), and the iPad 2.

3.      I have been asked for my expert opinion as to whether the asserted claims of the '893 patent are valid or invalid.  It is my opinion is that the asserted claims of the '893 patent are invalid.  As explained in greater detail below, the asserted claims of the '893 patent are anticipated and/or would have been obvious in light of the prior art, including commercial products, patents, and publications.  The articulated goal of the '893 patent is to provide a digital image processing apparatus, e.g., a camera, that allows a user to view an image in a reproduction mode, switch to photographing mode to capture new images, switch back to reproduction mode to see the previously viewed image (which is different from the most recently captured image), regardless of how long the digital image processing apparatus was in the photographing mode. But at the time of the alleged conception of the '893 patent claims, there was nothing novel about this alleged advance.

**II.      Qualifications and Professional Experience**

4.      I earned a B.Sc. (Honours) degree in Artificial Intelligence and Computer Science from the University of Edinburgh in 1989.  I received a Ph.D. in Computer Science from University College London in 1996.

- 1 -

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

5.        After graduating with my Ph.D. in 1996, I worked for one year in advanced research at Apple where I focused on user interface architecture.  Beginning in 1997, I spent three years in the Computer Science Lab at Xerox's Palo Alto Research Center (PARC), where I worked on advanced document management systems.  In particular, I developed technology that provided flexible support for organizing and retrieving documents, which included images, text documents, and web pages.  We used a tagging technique to allow the identification and retrieval of documents.  The system included a flexible user interface that allowed users to organize and retrieve their documents in multiple different ways according to user preferences, e.g., according to the history of interactions with the documents.

6.        Since 2000, I have been a faculty member in the Department (now School) of Information and Computer Sciences at the University of California, Irvine.  Between 2000 and 2002, I was an assistant professor; between 2002 and 2006, I was a tenured associate professor; and since 2006, I have been a full professor.  Between 2004 and 2006, I was associate director for the California Institute for Telecommunications and Information Technology.  My research interests focus primarily on human-computer interaction, including social and cultural considerations in digital media, and user interface design and analysis.  I have particular expertise in the areas of mobile and ubiquitous computing including the development of technology that allows users to capture, manipulate and share images on mobile phones.

7.        I serve on the advisory boards of the Center for Mobile Life in Stockholm, Sweden and start-up companies Open Presence, Inc. and frestyl, S.A.

8.        I am a member of and have been actively involved with a number of industry organizations, including the IEEE, the ACM, and the ACM's special-interest group in Computer-Human Interaction, SIGCHI.  In 2008, I was elected to the SIGCHI Academy in recognition of my contributions to the discipline of human-computer interaction.  I have received the National Science Foundation's CAREER award, an IBM Faculty award, and the American Medical Informatics Association's Diane Forsythe award.  I have been awarded over $9 million in

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

research funding by the National Science Foundation, and my research has also been supported by Intel and IBM.

9.      I have authored over 100 academic publications, including two books, over 25 papers in academic journals and over 70 papers in peer-reviewed conferences, in areas such as mobile applications, user interface architecture, multimedia communications, and ubiquitous computing.  Microsoft's Academic Search system, which tracks the productivity of academic researchers, lists me as the fourth most influential author in the area of human-computer interaction.

10.     I am a named inventor on 19 U.S. patents, primarily in the fields of workflow systems, document management architectures, and user interfaces for organizing and retrieving information according to user preferences.

11.     A copy of my curriculum vitae is attached as Exhibit 1.  I have not testified in any case in the last four years.

## III.   Understanding Of The Law

12.     I am not an attorney.  For the purposes of this report I have been informed about certain aspects of the law that are relevant to my analysis and opinions.  My understanding of the law is as follows:

### A.      Invalidity in General

13.     I have been informed and understand that a patent is presumed valid, and a challenger to the validity of a patent must show invalidity of the patent by clear and convincing evidence.  Clear and convincing evidence is evidence that makes a fact highly probable.  In deciding the issue of invalidity, prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make the burden of showing that it is highly probable that a patent claim is invalid easier to sustain..

### B.      Anticipation

14.     I have been informed and understand that a patent claim is invalid if it is "anticipated" by prior art.  For the claim to be invalid because it is anticipated, all of its

**CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single publication or patent that predates the claimed invention.

15.     I have been informed and understand that the description in a written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the art, looking at that one reference would be able to make and use the claimed invention.

16.     I have been informed and understand that a patent claim is also anticipated if there is clear and convincing proof that, more than one year before the filing date of the patent, the claimed invention was:  in public use or on sale in the United States; patented anywhere in the world; or described in a printed publication anywhere in the world.  This is called a statutory bar.

**C.     Obviousness**

17.     I have been informed and understand that a patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the art at the time the application was filed.  This means that even if all of the requirements of a claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, the claim is invalid if it would have been obvious to a person of ordinary skill who knew about the prior art.

18.     I have been informed and understand that the ultimate conclusion of whether a claim is obvious should be based upon several factors, including: (1) the level of ordinary skill in the art that someone would have had at the time the claimed invention was made; (2) the scope and content of the prior art; and (3) what difference, if any, existed between the claimed invention and the prior art.

19.     I have been informed and understand that in considering the question of obviousness, it is also appropriate to consider any secondary considerations of obviousness or non-obviousness that may be shown.  These include: (1) commercial success of a product due to the merits of the claimed invention; (2) a long felt need for the solution provided by the claimed invention; (3) unsuccessful attempts by others to find the solution provided by the claimed

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

invention; (4) copying of the claimed invention by others; (5) unexpected and superior results from the claimed invention; (6) acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention; and (8) independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

20.     I have been informed and understand that a patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, it is relevant to consider if there would have been a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  It is also appropriate to consider: (1) whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness; (2) whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent; (3) whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way; or (4) whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

21.     I have been informed and understand that in considering obviousness, it is important to be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.

22.     I have been informed and understand that a single reference can alone render a patent claim obvious, if any differences between that reference and the claims would have been obvious to a person of ordinary skill in the art at the time of the alleged invention – that is, if the

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

person of ordinary skill could readily adapt the reference to meet the claims of the patent, by applying known concepts to achieve expected results in the adaptation of the reference.

### D. Indefiniteness

23.    I have been informed and understand that a patent claim must particularly point out and distinctly claim the subject matter that is regarded as the invention.  Further, I have been informed and understand that this definiteness requirement is met only if one skilled in the art would understand what is claimed in light of the specification.  I further understand that a patent claim is invalid if the claim does not satisfy the definiteness requirement.

24.    I have further been informed and understand that a claim whose meaning cannot be ascertained may be invalid as indefinite under 35 U.S.C. § 112, second paragraph.  Claims are not indefinite if the meaning of the claim is discernable, even though the conclusion over claim meaning may be one in which reasonable persons disagree.  I understand that claims may only be found indefinite if they are not amenable to construction, or are insolubly ambiguous.  If the claim is subject to construction and can be given any reasonable meaning, it is not indefinite.

### E. Lack of Written Description

25.    I have been informed and understand that a patent specification must contain a written description of the invention.  I further understand that the test for determining if the written description requirement is satisfied is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.  Further, the specification must describe an invention understandable to the skilled artisan and show that the inventor actually invented the invention claimed.  I further understand that a patent claim is invalid if the patent specification does not satisfy the written description requirement for the invention claimed in that claim.

### F. Conception

26.    I have been informed and understand that conception is defined as formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.  Conception is complete when the idea is so

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.

27.    I have been informed that conception can be shown in a number of different ways. For example, I have been informed that conception can be shown by contemporaneous documentation describing the invention.  I have also been informed that conception can be shown by the oral testimony of the inventors along with corroborating evidence—which can include documentation describing the invention and/or the testimony of a non-inventor witness. I have further been informed that a "rule of reason" analysis is applied that weighs the corroborated evidence to determine the credibility of an inventor's testimony.

### G.    Priority Date and Reduction to Practice

28.    I have been informed and understand that inventors are not allowed to claim priority for the invention to the date of alleged conception unless the inventor (or, in certain situations, other associated persons) diligently reduced the invention to practice after conception.

29.    I have been informed and understand that the filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application.

## IV.    Materials Reviewed

30.    Among the materials I have considered in forming my opinions are the '893 patent, its prosecution file history, the prior art cited during the prosecution of the '893 patent, internal Samsung documents, the deposition transcript of named inventor Sung-Ho Eun, prior art devices, prior art patents and publications, Samsung interrogatory responses and any document or device cited or discussed in this expert report.  A full list of materials that I have reviewed relating to this case is attached as Exhibit 2.

## V.    Applicable Level of Ordinary Skill in the Art

31.    In my opinion, based on the materials and information I have reviewed, and on my experience in the technical areas relevant to the '893 patent at about the time of the alleged invention described and claimed in the '893 patent, the person of ordinary skill in the art would

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

have had a Bachelor's degree in Electrical Engineering, Computer Science or a similar degree, with at least two to three years of experience in designing user interface technology for computer based embedded systems.

## VI.   Background Technology

32.    I understand the '893 patent relates generally to a digital image processing apparatus and a method for operating the apparatus.  In particular, the '893 patent describes a method for controlling a digital image processing apparatus and a digital image processing apparatus that allows a user to reproduce, i.e., display, stored images.  ('893 Patent, Col. 1:54-57.)

33.    The alleged invention claimed in the '893 patent is a digital image processing apparatus that provides a user with the ability to return to the same image she was viewing in a reproduction (display) mode, when she switches from reproduction mode to a photographing mode, where new images are stored, and then back to the reproduction mode to view the previously viewed image, which is different from the most recently stored image.  The user is able to view the previously viewed image when returning to reproduction mode "irrespective of the duration" that the apparatus was in photographing mode.

34.    In addition, the '893 patent further claims certain additional features that specify how to identify and return to a specific image.  For example, the alleged invention identifies the specific image to be displayed by using (1) an index or (2) a flag and a bookmark.  The alleged invention also includes maintaining the index value to the most recently displayed image file and displaying the most recently stored image file if it is determined that the index value has been reset.

35.    As explained below, in my opinion the alleged invention is nothing more than a recitation of existing digital camera technology, which was already recognized and understood by those skilled in the art by the claimed conception date of October 2004 and the filing date of the Korean priority application (March 2005).

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

recognize that there are a finite number of choices for determining which image to display to a user when returning to viewing images after capturing and storing images.  One example is the displaying the most recently captured image.  Another example is displaying the image previously viewed before capturing and storing images.  These are merely design choices that are well within the skill set of a person or ordinary skill in the art.

### 2.   U.S. Patent No. 6,512,548 to Anderson in Combination with any one of JP '927 Publication, KR 792 Patent, or '082 Patent Renders Obvious Claims 1-4, 6-8 and 10-16 of the '893 Patent

188.   U.S. Patent No. 6.512,548 to Anderson was filed on May 30, 2000, and issued on January 28, 2003 ("the '548 patent").  I also understand that the '548 patent is a continuation of application No. 08/890,896, filed on July 10, 1997, now U.S. Patent No. 6,137,534.  The '548 patent is titled "Method and Apparatus for Providing Live View and Instant Review in an Image Capture Device."  It is assigned to FlashPoint Technology, Inc.

189.   The '548 patent discloses a method and system for providing instant review of a last image in an image capture device. "The image capture device includes a viewfinder for displaying a live image and each image of a plurality of previously captured images. The method and system include selecting instant review of the last image captured by the image capture device, determining the status and location of the last image, and providing the last image to the viewfinder for display. The image capture device is capable of displaying the last image substantially immediately after the last image has been captured." ('548 patent, Abstract.)

190.   I have been informed and understand that the '548 patent qualifies as prior art because it issued as a U.S. patent on January 28, 2003, which is prior to the alleged conception date of the '893 patent (October 2004) and the filing date of the Korean priority patent application (March 15, 2005).  ('548 patent, cover page.)

191.   As detailed in the claim chart attached as Exhibit 3F, it is my opinion that the '548 patent in combination with any one of JP '927 publication, KR '792 patent, or the '082 patent, render obvious asserted claims 1-4, 6-7 and 10-16 of the '893 patent.  It is further my opinion that the '548 patent in combination with any one of the '082 patent or the '807 patent

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

render obvious asserted claim 8. See Section XI, B, 4 below for reasons to combine the '480 patent with any one of the '082 or '807 patent. For my analysis of the '548 patent, I apply Samsung's apparent claim construction for the term "irrespective of the duration" based on Samsung's Infringement Contentions (see Section X above), and apply plain meaning to the rest of the claim terms.

192. To the extent a determination is made that the '548 patent fails to disclose performing the claimed method steps in sequential order or displaying a most-recently displayed image file (which is being displayed in a reproduction mode) that is different from a most-recently captured stored image file when switching between the reproduction mode and the photographing mode irrespective of a time or duration that the apparatus is used in the photographing mode, these limitations would have been obvious to one of ordinary skill in the art as taught by the combination of prior art discussed in my previous paragraph as explained above in section XI, B, 1.

193. A person skilled in the art would have reasons to combine the teachings of the '548 patent with the JP '927 publication, KR '792 patent, or the '082 patent. Each is directed to digital cameras and, in particular, allowing users of the cameras to easily view images on a display of the digital cameras. Each supports viewing images as well as capturing images. As I have previously explained, a person skilled in the art would recognize that there are a finite number of choices for determining which image to display to a user when returning to viewing images after capturing and storing images. One example is the displaying the most recently captured image. Another example is displaying the image previously viewed before capturing and storing images. These are merely design choices that are well within the skill set of a person of ordinary skill in the art.

**3.     U.S. Patent No. 6,118,480 to Anderson et al. in Combination with any one of JP '927 Publication, KR '792 Patent, or '082 Patent Renders Obvious Claims 1-4, 6-8 and 10-16 of the '893 Patent**

194. U.S. Patent No. 6.118,480 to Anderson et al. was filed on May 6, 1997, and issued on September 12, 2000 ("the '480 patent"). The '480 patent is titled "Method and

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

Apparatus for Integrating a Digital Camera User Interface Across Multiple Operating Modes."  It
is assigned to FlashPoint Technology, Inc.

195.    The '480 patent discloses a digital camera is provided with more than two modes
wherein the user can navigate, manipulate, and view camera contents using a consistent and
intuitive spatial navigation technique. The user interface also automatically displays context
sensitive information regarding the active item, which reduces the input required from the user
and thereby increases the ease of use and operation of the digital camera.  ('480 patent, Col.
2:52-64.)

196.    I have been informed and understand that the '480 patent qualifies as prior art
because it issued as a patent on September 12, 2000, which is prior to the alleged conception date
of the '893 patent (October 2004) and the filing date of the Korean priority patent application
(March 15, 2005).  ('480 patent, cover page.)

197.    As detailed in the claim chart attached as Exhibit 3G, it is my opinion that the
'480 patent in the combination with any one of JP '927 publication, KR '792 patent, or the '082
patent, renders obvious asserted claims 1-4, 6-7 and 10-16 of the '893 patent.  It is further my
opinion that the '480 patent in combination with any one of the '082 patent or '807 patent render
obvious asserted claim 8.  See Section XI, B, 4 below for reasons to combine the '480 patent
with any one of the '082 or '807 patent.  For my analysis of the '480 patent, I apply Samsung's
apparent claim construction for the term "irrespective of the duration" based on Samsung's
Infringement Contentions (see Section X above), and apply plain meaning to the rest of the claim
terms.

198.    To the extent a determination is made that the '480 patent fails to disclose
performing the claimed method steps in sequential order or displaying a most-recently displayed
image file (which is being displayed in a reproduction mode) that is different from a most-
recently captured stored image file when switching between the reproduction mode and the
photographing mode irrespective of a time or duration that the apparatus is used in the
photographing mode, these limitations would have been obvious to one of ordinary skill in the

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

art as taught by the combination of prior art discussed in my previous paragraph as explained above in section XI, B, 1.

199.    A person skilled in the art would have reasons to combine the teachings of the '480 patent with the JP '927 publication, KR '792 patent, or the '082 patent.  Each is directed to digital cameras and, in particular, allowing users of the cameras to easily view images on a display of the digital cameras.  Each supports viewing images as well as capturing images.  As I have previously explained, a person skilled in the art would recognize that there are a finite number of choices for determining which image to display to a user when returning to viewing images after capturing and storing images.  One example is displaying the most recently captured image.  Another example is displaying the image previously viewed before capturing and storing images.  These are merely design choices that are well within the skill set of a person or ordinary skill in the art.

### 4.    Japanese Unexamined Patent Application Publication Number 2005-64927 to Fuji Film in Combination with any one of '807 Patent or '082 Patent Renders Obvious Claim 8 of the '893 Patent

200.    As I discussed above in Section X, B, it is my opinion that JP '927 publication anticipates all of the asserted claims with the exception of claim 8.  However, it is my opinion that JP '927 in combination with either the '807 patent or the '082 patent renders obvious claim 8.  (*See* Exhibit 3B.)  Claim 8 adds that the reading step of claim 4 further "comprises the step of determining if the index value is in a reset state."  As set forth in the claim chart attached as Exhibit 3B, it is my opinion that the JP '927 publication discloses claim 4.  (*See* Exhibit 3B at pp. 10-11.)  It would have been obvious to a person of ordinary skill in the art to include the step of determining if the index value is in a reset state in JP '927 in view of either the '807 patent or the '082 patent.  Both disclose this feature, and including it with the apparatus described in JP '927 is nothing more than applying basic engineering principles to solve a known problem—i.e., determining the status of a memory pointer before using it to retrieve a file from memory—to a known problem to achieve predictable results with a reasonable expectation of success.

**CONTAINS INFORMATION DESIGNATED AS APPLE AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

C.     **Secondary Considerations**

201.     I understand that Samsung may seek to rely on so-called "secondary considerations" of non-obviousness to argue that the asserted claims of the '893 patent would not have been obvious to a person of ordinary skill in the art in 2005.  I understand that just two days ago Samsung served supplemental interrogatory responses purporting to set forth secondary considerations supporting their nonobviousness position.  Due to the tardy service of these responses, I have not had sufficient opportunity to review them in detail, and therefore I reserve my right to supplement my opinion after being afforded an appropriate period of time for analysis.  Having said that, I note that

202.     For at least these reasons, Samsung's alleged secondary considerations do not affect my conclusion that the claims of this patent are obvious in light of the prior art I have discussed in detail above.

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

**XII.    The Asserted Claims 10-16 of the '893 Patent are Indefinite**

**XIII.    The Asserted Claims of the '893 Patent Lack Support in the Written Description**

205.    In my opinion, all of the '893 patent asserted claims are also invalid for failing to comply with the written description requirement of 35 U.S.C. § 112, ¶ 1, because the '893 patent fails to disclose "***irrespective of the duration***, first displaying again only the single image file from step (c)" as recited in claim 1 (and claims that depend directly or indirectly on claim 1) and

- 57 -

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

"the single image file being first displayed *irrespective of a duration* that the camera was used in the photographing mode during the mode-switching operation" as recited in claim 10 (and claims that depend directly or indirectly on claim 10).

206.    I understand that Samsung added this language to the claims by amendment in an attempt to overcome a rejection of the claims by the PTO.  I note that Samsung did not, however, identify support for this limitation when adding it by amendment.  Indeed, the specification of the '893 patent does not utilize the term "duration" or the phrase "irrespective of the duration" at all.  The only place this term and phrase appears is in the claims as amended.

207.    Further, I have reviewed the '893 patent and I did not find any disclosure of any mechanism that would support the "irrespective of the duration" claim language.  For example, I would expect to find some statement or suggestion of a way to preserve an index or bookmark to the most recently displayed image in stable storage, e.g, non-volatile memory, so it would be available "irrespective of the duration."  However, I found nothing in the specification to this effect.

208.    The only disclosure that comes remotely close to suggesting a "duration" suggests if anything that the duration is only temporary and not potentially indefinite as the claim language suggests:

> When the continuous mode as the second mode is selected, if the user *temporarily* switches to another operating mode while sequentially displaying the files stored in the recording medium and then returns to the stored-image display mode, the user can continue to perform a previous displaying operation. That is, in the continuous mode, the user can continue reviewing stored images at the point where he or she left off before switching to another operating mode.  ('893 patent, col. 6:9-16; (emphasis added));
> "When the continuous mode as the second mode is selected, if the user *temporarily* switches to another operating mode while sequentially displaying the files stored in the recording medium and then returns to the stored-image display mode, the user can continue to perform a previous displaying operation." (Col. 7:62-67 (emphasis added).)

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

209.     One skilled in the art reading the specification would see that the inventors did not have possession of the claimed invention when they filed the application, because the specification does not teach how to go back to the last-viewed image "irrespective of the duration."  In fact, I note that it describes situations where the image displayed after a duration in the photographing mode will not be the previously viewed image.  For example, column 8, lines 28-51 explains that if the camera is turned off or the memory card is changed, the first photo shown in reproduction mode will be the last image captured and not the last image viewed, even in "continuous" mode.  Presumably if after viewing images, one uses the camera in photographing mode long enough, either the battery will run out or the memory card will fill up and a user will have to power off and/or change the memory card.  Indeed, many cameras have the feature of powering off after a period of inactivity.  The "irrespective of the duration" claim language is broad enough that it has to take into account these eventualities, which would result in situations where the claim language was not met.  Unasserted claim 5 (reproduced below) alludes to the possibility that the last viewed image is not available in certain situations, which would be directly inconsistent with the "irrespective of the duration" claim language.

> 5. The method of claim 1 wherein step (e) comprises the steps of: determining if the single image file from step (c) exists in the recording medium; and if the single image file from step (c) is determined to not exist in the recording medium, displaying another single image file preceding or following the single image file from step (c), the another single image file being different from the most-recently stored image file.

210.     Thus, it is my opinion that the asserted claims of the '893 patent are invalid for lack of written description.

## XIV.   Trial Exhibits

211.     If called as a witness at trial, I may rely on visual aids and demonstrative exhibits that demonstrate the bases of my opinions.  Examples of these visual aids and demonstrative exhibits may include, for example, claim charts, patent drawings, excerpts from patent specifications, file histories, interrogatory responses, deposition testimony and deposition exhibits, as well as charts, diagrams, videos and animated or computer-generated video.

**CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

212.    Other than as referred to in this report, I have not yet prepared any exhibits for use at trial as a summary or support for the opinions expressed in this report, but I expect to do so in accordance with the Court's scheduling orders.

**XV.    Compensation**

213.    I am compensated for my time at the rate of $400 for each hour of service that I provide in connection with this case.  That compensation is not contingent upon my performance, the outcome of the case, or any issues involved in or related to this case.

**XVI.   Previous Testimony**

214.    I have not provided testimony as an expert witness during the last four years.

**XVII.  Supplementation of Opinions**

215.    I reserve the right to adjust or supplement my analysis in light of any critique of or comments on my report or alternative opinions advanced by or on behalf of Samsung.

Dated: March 22, 2012

_____
J. Paul Dourish, Ph.D.