# KANG DECLARATION EXHIBIT 11

# Exhibit 30
# (Submitted Under Seal)

Highly Confidential - Attorneys' Eyes Only

1               UNITED STATES DISTRICT COURT
2      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
3
4   APPLE INC., a California    )
    corporation,                )
5             Plaintiff,        )
                                )
6   vs.                         ) Case No. 11-cv-01846-LHK
                                )
7   SAMSUNG ELECTRONICS CO.,    )
    LTD., a Korean business     )
8   entity; SAMSUNG ELECTRONICS )
    AMERICA, INC., a New York   )
9   corporation; SAMSUNG        )
    TELECOMMUNICATIONS AMERICA, )
10  LLC, a Delaware limited     )
    liability company,          )
11            Defendants.       )
    _____)
12
13
14         H I G H L Y   C O N F I D E N T I A L
15         A T T O R N E Y S'   E Y E S   O N L Y
16
17         VIDEOTAPED DEPOSITION OF STEPHEN GRAY
18                  Palo Alto, California
19                  Friday, May, 4, 2012
20
21
22  BY:  HEIDI BELTON, CSR, RPR, CRR, CCRR
23  CSR LICENSE NO. 12885
24  JOB NO. 49273
25

Highly Confidential - Attorneys' Eyes Only

Page 2

```
 1              May, 5, 2012
 2               8:57 a.m.
 3
 4      Videotaped deposition of STEPHEN GRAY, held
 5      at the offices of Morrison & Foerster, LLP,
 6      755 Page Mill Road, Palo Alto, California,
 7      before Heidi Belton, CSR, RPR, CRR, CCRR.
 8      CSR License No. 12885
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1  APPEARANCES:
 2
 3     FOR THE PLAINTIFF APPLE INC.:
 4     MORRISON & FOERSTER
 5     425 Market Street
 6     San Francisco, California 94105
 7     By:  Andrew E. Monach, Esq.
 8          Mark E. Melahn, Esq.
 9
10
11
12
13     FOR DEFENDANT:  SAMSUNG ELECTRONICS CO., LTD.
14     QUINN EMANUEL URQUHART & SULLIVAN
15     555 Twin Dolphin Drive
16     Redwood Shores, California 94065
17     By:  Victoria F. Maroulis, Esq.
18
19
20  and
21     QUINN EMANUEL URQUHART & SULLIVAN
22     51 Madison Avenue
23     New York, New York 10010
24     By:  Guy Eddon, Esq.
25
```

Page 4

```
 1   APPEARANCES CONT'D:
 2   and
 3      QUINN EMANUEL URQUHART & SULLIVAN
 4      865 S. Figueroa Street
 5      Los Angeles, California 90017
 6      By:  Patrick Schmidt, Esq.
 7
 8
 9
10      Also Present:  Shawn Phillips, videographer
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
 1            PALO ALTO, CALIFORNIA
 2            FRIDAY, MAY 4, 2012
 3               8:57 a.m.
 4          (Whereupon Exhibit 1 marked
 5           for identification.)
 6      THE VIDEOGRAPHER:  This is the start of tape
 7  labeled number 1 of the videotaped deposition of Steven
 8  Gray.  In the matter Apple, Incorporated versus Samsung
 9  Electronics Company, Limited, et al., in the
10  United States District Court, Northern District of      08:56:57
11  California, San Jose Division.  Number 12-CV-00630-LHK
12  [sic].
13      This deposition is being held at 755 Page Mill
14  Road, Palo Alto, California on May 4, 2012 at
15  approximately 8:57 a.m.                                 08:57:19
16      My name is Sean Phillips.  I'm the legal video
17  specialist from TSG Reporting, Incorporated,
18  headquartered at 747 Third Avenue, New York, New York.
19  The court reporter is Heidi Belton, in association with
20  TSG Reporting.                                          08:57:38
21      Will counsel please introduce yourself.
22      MR. MONACH:  Andrew Monach, representing
23  Apple.
24      MR. MELAHN:  Mark Melahn, representing Apple.
25      MS. MAROULIS:  Victoria Maroulis, counsel for      08:57:51
```

TSG Reporting - Worldwide    877-702-9580

2









Highly Confidential - Attorneys' Eyes Only

Page 202

1 separate structured electronic documents distinct from a  16:28:19
2 structured electronic document in which they're
3 contained?
4     MS. MAROULIS: Objection; vague. Please feel
5 free to refer to Exhibit 15.  16:28:30
6     THE WITNESS: Let me take a look.
7     So what I'm -- two things. I looked for -- in
8 the specification -- any evidence to suggest that the
9 boxes of content could not be a structured electronic
10 document. And I find nothing in here that suggests that  16:32:31
11 the boxes of content couldn't be structured electronic
12 documents on their own. But further, on column 19 --
13 yeah. On column 19, line -- starting at line 17, it's a
14 discussion about a render tree, and about the nodes on
15 the render tree, and about the various kinds of nodes  16:33:05
16 that -- that the render tree could contain in it. The
17 render tree in the specification is used as a mechanism
18 for identifying the boxes of content and being able to
19 traverse to get to the boxes of content.
20     So let me put this into the record. "In some  16:33:26
21 embodiments, the structured electronic document has an
22 associated render tree with the plurality of nodes and
23 determining the first box at the location of the first
24 gesture comprises: Traversing down the render tree to
25 determine a first node in the plurality of nodes that  16:33:43

Page 203

1 corresponds to the detected location of the first  16:33:46
2 gesture, traversing up the render tree from the first
3 node to the closest parent node that contains a logical
4 grouping of content and identifying content
5 corresponding to the closest parent node as the first  16:34:00
6 box. In some embodiments, the logical grouping of
7 content comprises a paragraph, an image, a plug-in
8 object, or a table. In some embodiments the closest
9 parent node is replaced inline, a block, an inline block
10 or an inline table."  16:34:19
11     In those embodiments that we're talking about,
12 this logical grouping containing a paragraph, an image,
13 a plug-in, or a table, at least all of those could be --
14 can be -- could clearly be structured electronic
15 documents. There's no preclusion about that.  16:34:35
16     Paragraphs have structure. Images can be
17 configured. A JPEG image, for example, has structure.
18 A plug-in object -- I'm not sure what they mean by a
19 "plug-in object," but certainly tables have structure.
20 So all -- in all of those instances, the render tree  16:34:55
21 nodes enable structured electronic documents to be part
22 of the -- the -- the system.
23     So to answer your question, there is support
24 for it and nothing to preclude it.
25 BY MR. MONACH:  16:35:09

Page 204

1  Q. In your Appendix 7, depo Exhibit 17, on page 4  16:35:10
2 you show the -- a transition from the world view of 36
3 tiles to what's called a "zone view" of four tiles,
4 right?
5  A. That's correct.  16:35:35
6  Q. Are you asserting that that change in the
7 display is -- meets the enlarging, translating, and
8 substantially centering a first-box limitation as
9 recited in Claim 50 of the '163 patent?
10  A. The -- with respect to claim 2B, there is a --  16:36:04
11 a first box which is selected from the world view that
12 then is -- is enlarged and substantially centered. The
13 world view is a collection of four boxes surrounding
14 what they call the "blue dot."
15  Q. Do you mean -- I'm sorry. Did you mean zone  16:36:28
16 view?
17  A. Sorry. Did I say --
18  Q. You said "world view."
19  A. Did I say "world view" too many times? The
20 world view is the 6-by-6 matrix. The selection of one  16:36:37
21 of the -- one of the boxes within a four-box matrix
22 surrounding the blue dot in the world view creates a
23 zone view. The zone view is -- what gets enlarged and
24 substantially centered. So the -- this is a -- this is
25 a box within the world view which becomes centered and  16:37:01

Page 205

1 enlarged in the zone view.  16:37:05
2  Q. Does -- would you agree that Claim 50
3 requires -- I'm looking at the -- sort of the middle of
4 the claim near line 32 -- that what is required is
5 enlarging and translating the structured electronic  16:37:22
6 document so that the first box is substantially
7 centered?
8     MS. MAROULIS: Objection; vague. Calls for
9 legal conclusion.
10     THE WITNESS: I think you have -- with the  16:37:37
11 proviso there maybe alterations in the language. But I
12 think you've -- you've correctly read the limitation
13 starting at line 31.
14     MS. MAROULIS: We've been going for over an
15 hour.  16:37:53
16     THE WITNESS: Would you like to take a break
17 soon?
18     MR. MONACH: Let me just finish up with this.
19     MS. MAROULIS: Okay.
20 BY MR. MONACH:  16:37:57
21  Q. Is it your opinion that in the transition from
22 the world view to the zone view shown on page 4 of your
23 Appendix 7, that what has been enlarged and translated
24 is the same structured electronic document that is shown
25 in the world view?  16:38:30

Page 206

1  A.  No.  The document which is being shown in the    16:38:32
2  zone view on page 4 is a box of content from the
3  structured electronic document shown in the world view.
4      Q.  Which is -- so the thing shown on the right is
5  a different structured electronic document than the    16:39:00
6  structured electronic document shown in the world view,
7  right?
8          MS. MAROULIS:  Objection; vague.
9          THE WITNESS:  I thought I said something
10 different, so let me try again.    16:39:16
11         The selection of -- of the box shown in --
12 okay.  In the world view on the left, there is
13 identified in red a first box.  Selection of that box by
14 a first gesture enlarges and centers that box of content
15 in the zone view shown on the right.    16:39:38
16 BY MR. MONACH:
17     Q.  But there is no enlarging and translating of
18 the structured electronic document shown on the left;
19 rather, the distinct -- in your view -- structured
20 electronic documents in those four tiles are enlarged    16:39:57
21 and centered?
22         MS. MAROULIS:  Objection; vague.  Assumes
23 facts.
24 BY MR. MONACH:
25     Q.  Is that right?    16:40:06

Page 207

1      A.  I believe that the enlarged and centered zone    16:40:11
2  view is a box of content found on the world view.  It is
3  comprised of individual tiles or structured electronic
4  documents on their own.  But it is from -- it is derived
5  or created from an enlargement of the world view    16:40:29
6  structured electronic document into the zone view.
7  BY MR. MONACH:
8      Q.  So the world view electronic document, the
9  36-tile document is not enlarged as an entity and then
10 translated to center those four boxes, right?    16:40:48
11         MS. MAROULIS:  Objection; vague.
12         THE WITNESS:  I don't have any reason to
13 believe that -- well, let me say it slightly
14 differently.  I'm not sure, sitting here today, exactly
15 what the -- the software performed with respect to    16:41:15
16 enlarging and centering.  But given what the functions
17 are that are intended for LaunchTile, there is no reason
18 for me, sitting here today, to believe that the
19 structured electronic document that is -- that is the
20 world view is not enlarged and the portion of it that    16:41:34
21 was selected in that box of content simply enlarged and
22 translated into the zone view.
23 BY MR. MONACH:
24     Q.  Let's look at the content from these four
25 boxes that are shown in the center of the world view and    16:41:46

Page 208

1  then are shown in -- on the right in the zone view.    16:41:53
2          On one -- for example, the upper right-hand
3  tile inside the red line you've drawn looks like an
4  e-mail icon.  Do you see that?
5      A.  In the -- yes.  In -- in the first -- if    16:42:10
6  you're referring to the -- well, go ahead.  Which one
7  are we pointing at?
8      Q.  Right.  So in the box that you've drawn in the
9  world view and labeled the first box, in the upper
10 right-hand corner, there is a tile that looks like it    16:42:26
11 has an e-mail icon.  Do you see that?
12     A.  I do.
13     Q.  Right.  And that is the -- that's a tile for
14 the e-mail application in LaunchTile, right?
15     A.  I believe that -- yes, I believe that -- well,    16:42:44
16 it is a -- it is an icon derived from the e-mail
17 structured electronic document that underlies it.  But
18 yes, it is a --
19     Q.  And then if you look on the right in the zone
20 view, you don't see a blowup or an enlargement of that    16:42:55
21 e-mail.  What you see is a different level of detail.
22 You see a listing of individual e-mails within the
23 e-mail file.  There's different content, correct?
24         MS. MAROULIS:  Objection; misstates the
25 document.    16:43:15

Page 209

1          THE WITNESS:  I don't -- I would not say that    16:43:20
2  it is different.  Well, I'd say that both the upper
3  right -- upper right-hand corner of the zone view and
4  the upper right-hand corner of the first box are derived
5  from the same document.  They're different    16:43:33
6  manifestations of the same document, but they are
7  derived from the same structured electronic document
8  which is the rendering of the e-mail system.  It's
9  just -- based upon the screen real estate, it's a
10 different manifestation.    16:43:48
11 BY MR. MONACH:
12     Q.  It's different content.  It's not simply an
13 enlarging of the images that are shown in the tile in
14 the world view; it is a -- looking at different data and
15 displaying different data rather than displaying the    16:44:04
16 same thing in a larger font size or a larger image,
17 right?
18         MS. MAROULIS:  Objection; argumentative.
19 Misstates the document.
20         THE WITNESS:  Let me agree that it is not a    16:44:14
21 magnification of what's in the -- in the upper
22 right-hand corner of the first box of the world view.
23 It is not a magnification -- the upper right-hand corner
24 of the zone view is not a magnification of the original.
25 That's accurate.    16:44:28

Case 5:11-cv-01846-LHK   Document 1150-15   Filed 06/28/12   Page 11 of 12

Highly Confidential - Attorneys' Eyes Only

## Page 214

1  within the bounds of the -- of the 2-by-2 box. It is        17:04:34
2  enlarging and centering that in the -- in the LaunchTile
3  application view.  It is an expansion of that box.
4  BY MR. MONACH:
5       Q.  Okay.  But -- and it is not an enlargement and     17:04:48
6  translation of a structured electronic document
7  consisting of these four squares of content, correct?
8       A.  That is -- what it is doing -- yes.  What it
9  is doing is enlarging and expanding the -- it happens to
10 be enlarging, but it's scrolling into position the upper    17:05:13
11 right-hand quadrant of the original first box, which is
12 the 2-by-2 matrix.  It's not expanding the entire --
13 entirety of the first box.  This is --
14      Q.  Right.
15      A.  -- the second box.                                  17:05:30
16      Q.  And you cannot scroll or pan when you're in
17 the LaunchTile application view to see any of the
18 adjacent LaunchTile zone view boxes, right?
19           MS. MAROULIS:  Objection; compound.
20           THE WITNESS:  My best recollection of the way      17:05:54
21 that this operates is that -- is that -- let me think.
22 I don't -- sitting here right now, I don't remember
23 certainly whether or not there is the ability to slide
24 back to the other view.  But I think not.  I think -- so
25 let me -- sorry.                                             17:06:32

## Page 215

1            I believe that from the selected second box,      17:06:34
2  which has been expanded and centered on page 5, is
3  labeled the "LaunchTile application view," that it is --
4  from there, I don't know of a navigation path back to
5  the first box other than to go back up to the world view   17:06:51
6  and then select the zone again.
7  BY MR. MONACH:
8       Q.  If you're working on a computer running
9  Windows and it has Microsoft Word and you double click
10 on the Microsoft Word icon so that the application is       17:07:17
11 launched and replaces whatever has been on the screen
12 previously, covers it up, would you consider that to be
13 enlarging and translating a structured electronic
14 document?
15           MS. MAROULIS:  Objection; incomplete               17:07:34
16 hypothetical.
17           THE WITNESS:  Would I consider it to be
18 enlarging and translating a structured electronic
19 document?
20           MR. MONACH:  Mm-hmm.                               17:07:46
21           THE WITNESS:  I would not consider that --
22 hadn't considered it before, but I would not, sitting
23 here right now, consider it enlarging and translating a
24 structured electronic document.  What I think that is is
25 analogous to selecting one of these pieces of mail from     17:08:00

## Page 216

1  the LaunchTile application view and opening that up.        17:08:05
2  The LaunchTile application view -- or the box labeled
3  "LaunchTile application view" is the second box that was
4  in the zone view and is derived from the same data and
5  was in the world view as well.  So the expansion of the    17:08:20
6  world view -- of the 4-by-4 matrix to bring up -- so it
7  gets expanded and centered on the screen.  And the
8  selection -- that's the first box.  The gesture
9  selecting the second box then yields the expansion and
10 essentially centering to create the LaunchTile             17:08:41
11 application view.
12           If I were to now select one of those e-mail --
13 one of those e-mails that's on that page and then go
14 into the e-mail reader, that then would be analogous to
15 selecting Microsoft Word which then is an application,     17:08:56
16 which now you're off on the races.
17 BY MR. MONACH:
18      Q.  Does tapping on what you call the "second box"
19 launch the e-mail application in LaunchTile or not?
20      A.  I think that the system, the way it's set up,      17:09:09
21 is that the e-mail application was opened at world view,
22 it's opened at zone view, and it's opened further at
23 LaunchTile application view.
24           MR. MONACH:  Let's mark as the next exhibit --
25 I believe it's Exhibit 18.                                  17:09:31

## Page 217

1            THE VIDEOGRAPHER:  Correct.                       17:09:33
2            MR. MONACH:  Appendix 8 from your invalidity
3  report.
4            (Whereupon Exhibit 18 marked
5             for identification.)                             17:09:38
6  BY MR. MONACH:
7       Q.  Mr. Gray, is the Robbins '349 patent one of
8  the pieces of prior art you've relied on in opining that
9  the -- at least some of the claims of the '163 patent
10      are invalid?                                            17:10:20
11      A.  Yes.  Robbins '349 is one of the pieces of
12 prior art that I believe invalidates some of the
13 asserted claims of the '163.
14      Q.  Could you describe briefly how the Robbins
15 invention works.                                             17:10:46
16           MS. MAROULIS:  Objection; vague.  Calls for a
17 narrative.
18           THE WITNESS:  The Robbins invention takes
19 large -- creates a -- allows for the display of a large
20 data set on a relatively small display surface and uses    17:11:01
21 a variety of techniques to segment that large
22 information space to allow for access to the -- to
23 details or to finer levels of detail regarding that
24 large information space.
25 BY MR. MONACH:                                               17:11:28

TSG Reporting - Worldwide    877-702-9580

55

## Page 230

1  the answer's yes. I think the description in 2B and 2C        17:34:53
2  in my -- in Exhibit 18 -- Deposition Exhibit 18 show a
3  selection of the first segment. And while that first
4  box is enlarged, selection of a second segment to -- I
5  mean, a second box which then will enlarge and center        17:35:24
6  that -- or, rather, center -- I shouldn't say -- or
7  zoom. Tap to zoom. So the first one is a tap to zoom.
8  The second gesture is a tap to scroll.
9  BY MR. MONACH:
10    Q.  Please identify for me in your chart the first        17:35:41
11  box that's enlarged and substantially centered. Where
12  is that?
13       MS. MAROULIS: Objection; asked and answered.
14       THE WITNESS: In the description for 2B,
15  detecting a first gesture and determining the first box,        17:36:01
16  there's a -- an illustration there which the
17  illustration is labeled "340." And the text supports
18  the fact that the segment 6 has been enlarged and it's
19  substantially centered.
20  BY MR. MONACH:        17:36:18
21    Q.  Where is the second box if you look at page
22  340 -- or Figure 340?
23    A.  So in 2B, there isn't a second box shown.
24  When we go to 2C, which is a description of the ability
25  to enlarge and then show second boxes which are        17:36:32

## Page 231

1  available as a second gesture, the illustration at 1420        17:36:39
2  shows an equal overlapping segmentation of adjoining
3  areas prior to the first gesture.
4    Q.  Do you have anyplace where after a first
5  gesture that enlarges the first box, you can still see        17:36:57
6  the second box and then tap on the second box to
7  substantially center it?
8       MS. MAROULIS: Objection; asked and answered.
9       THE WITNESS: Well, I don't have an
10  illustration -- I don't have an illustration in the        17:37:12
11  claim chart that shows a first box with second boxes
12  which would -- which are available for a second gesture.
13  But I believe that the second describes -- describes the
14  method by which that second box with a second gesture
15  could be selected or preselected.        17:37:31
16  BY MR. MONACH:
17    Q.  By pressing on a number key?
18    A.  Well, one of the methods that -- that can be
19  used -- well, the input component, 230, can be any one
20  of a touch pad, key pad, pointing device, stylus,        17:37:47
21  joystick or D pad.
22       MS. MAROULIS: Okay. We're at seven hours, so
23  I think we're done with the deposition.
24       MR. MONACH: Okay. All right. Thank you.
25       MS. MAROULIS: I don't have any questions for        17:38:02

## Page 232

1  the witness.        17:38:03
2       We'll reserve the right to review and sign. I
3  believe there was some discussion of code, so we'll put
4  it under protective order for now and we'll dedesignate
5  it as needed.        17:38:12
6       Thank you, everyone.
7       THE VIDEOGRAPHER: This marks the end of disk
8  4 of 4 and concludes today's deposition of Stephen Gray.
9  The time is 5:38 p.m. And we're off the record.
10       (The proceeding adjourned at 5:38 p.m.)
11
12
13       _____
14            STEPHEN GRAY
15
16
17  Subscribed and sworn to before me
18  this     day of      2012.
19
20  _____
21
22
23
24
25

## Page 233

1              CERTIFICATE
2  STATE OF CALIFORNIA  )
                        ) ss.:
3  COUNTY OF CONTRA COSTA )
4
5     I, Heidi Belton, a Certified Shorthand
6  Reporter, a Registered Professional Reporter,
7  a Certified Realtime Reporter, and a
8  Certified Realtime Professional within and
9  for the State of California, do hereby
10  certify:
11     That STEPHEN GRAY, the witness whose
12  deposition is herein before set forth, was
13  duly sworn by me and that such deposition is
14  a true record of the testimony given by such
15  witness.
16     I further certify that I am not related to
17  any of the parties to this action by blood or
18  marriage and that I am in no way interested
19  in the outcome of this matter.
20     In witness whereof, I have hereunto set my
21  hand this 5th day of May, 20112.
22                      _____
23                      HEIDI BELTON, CSR, RPR, CRR, CCRR
24                      Certified Shorthand Reporter No. 12885
25