United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE, INC., a California corporation, | ) | Case No.: 11-CV-01846-LHK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING-IN-PART AND |
| v. | ) | DENYING-IN-PART MOTIONS TO |
| | ) | EXCLUDE EXPERT TESTIMONY |
| SAMSUNG ELECTRONICS CO., LTD., A | ) | |
| Korean corporation; SAMSUNG | ) | |
| ELECTRONICS AMERICA, INC., a New York | ) | |
| corporation; SAMSUNG | ) | |
| TELECOMMUNICATIONS AMERICA, LLC, | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Apple moves to exclude testimony of the following eight Samsung experts: (1) Itay Sherman; (2) Sam Lucente; (3) Mark Lehto; (4) Nicholas Godici; (5) George Mantis; (6) Michael Mazis; (7) Michael Kamins; and (8) Michael Wagner.  Samsung, in turn, moves to exclude testimony of the following eight Apple experts: (1) Terry Musika; (2) John Hauser; (3) Henry Urbach; (4) Susan Kare; (5) Russell Winer; (6) Sanjay Sood; (7) Michael Walker; and (8) Richard Donaldson.  The Court GRANTS-IN-PART and DENIES-IN-PART Apple's motion to exclude, and GRANTS-IN-PART and DENIES-IN-PART Samsung's motion to exclude.

I.      LEGAL STANDARD

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the

1

United States District Court
For the Northern District of California

1   evidence or to determine a fact in issue." Expert testimony is admissible pursuant to Rule 702 if it

2   is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). A

3   district court's decision to admit expert testimony under *Daubert* in a patent case follows the law of

4   the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

5   When considering expert testimony offered pursuant to Federal Rule of Evidence 702, the trial

6   court acts as a "gatekeeper" by "making a preliminary determination that the expert's testimony is

7   reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002); *see*

8   *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S.

9   136, 142 (1997); *Daubert*, 509 U.S. at 589-90. An expert witness may provide opinion testimony

10  if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of

11  reliable principles and methods; and (3) the expert has reliably applied the principles and methods

12  to the facts of the case. Fed. R. Evid. 702; *see Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550

13  F.3d 1356, 1360 (Fed. Cir. 2008). Under *Daubert*, "a court should consider (1) whether a theory or

14  technique 'can be (and has been) tested;' (2) 'whether the theory or technique has been subjected to

15  peer review and publication;' (3) 'the known or potential rate of error;' and (4) whether it is

16  generally accepted in the scientific community. *Wagner v. Cnty. of Maricopa*, 673 F.3d 977, 989

17  (9th Cir. 2012) (quoting *Daubert*, 509 U.S. at 593-94).

18      The inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but

19  admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the

20  burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing

21  *Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact

22  finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the

23  expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting

24  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

25  **II.      ANALYSIS**

26      **A.  APPLE'S MOTION TO EXCLUDE**

27          **1.  Itay Sherman**

28

Case No.: 11-cv-01846-LHK
ORDER RE: MOTIONS TO EXCLUDE

United States District Court
For the Northern District of California

1   Apple moves to exclude Mr. Sherman's design patent expert testimony on the grounds that:

2   (1) Mr. Sherman is unqualified on the perspective of persons having ordinary skill in the art; (2)

3   Mr. Sherman is unqualified on the perspective of ordinary observers; and (3) the testimony is

4   irrelevant because Mr. Sherman applies incorrect legal standards for design patent obviousness,

5   design patent functionality, and trade dress functionality.

6   The Court finds Mr. Sherman qualified to opine on the perspective of a person having

7   ordinary skill in the art of design of electronic displays under FRE 702 and *Daubert*, based on his

8   experience as a manager overseeing product development in the mobile device industry.  Mr.

9   Sherman's testimony will help the jury reach findings on obviousness.  The Court finds Mr.

10   Sherman's testimony relevant under FRE 401 and not based upon a flawed methodology under

11   FRE 702 and *Daubert*, because Mr. Sherman's testimony on combinations of allegedly anticipatory

12   references with design elements from additional references is relevant to jury findings on

13   obviousness and is not based upon an incorrect statement of law.

14   The Court further finds Mr. Sherman qualified to opine on the perspective of an ordinary

15   observer under FRE 702 and *Daubert*, based on Mr. Sherman's experience with consumer reaction

16   to mobile devices.  Sherman's testimony will help the jury reach findings on anticipation and

17   infringement.  The Court also finds Mr. Sherman's testimony relevant under FRE 401, not based

18   upon an incorrect statement of law, and not based upon a flawed methodology under FRE 702 and

19   *Daubert*.  Mr. Sherman's testimony on design elements that are actually functional is relevant to

20   the jury's analysis of whether the patented designs are "dictated by function."  *Datamize, LLC v.*

21   *Plumtree Software, Inc.*, 417 F.3d 1342, 1354 (Fed. Cir. 2005) (internal quotation marks and

22   citation omitted).  This testimony is also relevant to whether the "trade dress . . . is nothing other

23   than an assemblage of functional parts."  *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199

24   F.3d 1009, 1013 (9th Cir. 1999).  Accordingly, Apple's motion to exclude Itay Sherman's

25   testimony is DENIED.

26   **2.  Sam Lucente**

27   Apple moves to exclude Mr. Lucente's design patent expert testimony on the grounds that

28   he: (1) applied the wrong legal standards for design patent obviousness, trade dress distinctiveness,

3

United States District Court
For the Northern District of California

1    design patent functionality, and trade dress functionality; and (2) is unqualified to opine on the

2    perspective of ordinary observers.

3         The Court finds Mr. Lucente's opinions relevant under FRE 401 and not based upon an

4    incorrect legal standard.  Mr. Lucente's testimony on combinations of primary references and

5    design elements from additional references is relevant to obviousness and is not based upon an

6    incorrect statement of law.  Mr. Lucente's testimony on *Sleekcraft*[1] factors is relevant to trade dress

7    distinctiveness and is not based upon an incorrect statement of law.  Mr. Lucente's testimony on

8    design elements that are actually functional is relevant to whether the patented designs are

9    "dictated by function."  *Datamize*, 417 F.3d at 1354 (internal quotation marks and citation

10   omitted).  This testimony is also relevant to whether the "trade dress . . . is nothing other than an

11   assemblage of functional parts."  *Leatherman Tool Grp.*, 199 F.3d at 1013.  Accordingly, Mr.

12   Lucente's testimony on design patent obviousness, trade dress distinctiveness, design patent

13   functionality, and trade dress functionality is relevant under FRE 401, will be helpful to the jury

14   under FRE 702, and is unlikely to "mislead the jury" under FRE 403 balancing.  Moreover, the

15   Court finds that Mr. Lucente's experience designing products targeted at ordinary observers

16   adequately qualifies him to testify about the perspective of an ordinary observer under FRE 702

17   and *Daubert*.  Accordingly, Apple's motion to exclude Sam Lucente's testimony is DENIED.

### 3.  Mark Lehto

19        Apple moves to exclude Mr. Lehto's testimony on design and trade dress functionality on

20   the grounds that he: (1) did not apply the "dictated by function" standard for design patent

21   functionality; (2) did not consider the overall trade dress when analyzing trade dress functionality;

22   and (3) failed to consider alternatives for both design and trade dress.

23        The Court finds that Mr. Lehto's testimony on design elements that are actually functional

24   is relevant to whether the patented designs are "dictated by" function, and whether the "trade dress

25   . . . is nothing other than an assemblage of functional parts."  Accordingly, Mr. Lehto's testimony

26   is relevant under FRE 401, will be helpful to the jury under FRE 702, and is unlikely to "mislead

---

[1] *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

the jury" under FRE 403.  The Court also finds that Mr. Lehto's testimony is relevant under 401

and is based on valid methodology under FRE 702 and *Daubert* because Mr. Lehto's limited

analysis of alternative designs is not legal error.  *See Talking Rain Beverage Co., Inc. v. South*

*Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003).  Accordingly, Apple's motion to exclude

Mark Lehto's testimony is DENIED.

### 4.  Nicholas Godici

Apple moves to exclude Mr. Godici's testimony on the grounds that: (1) he is not qualified

to testify about design patents; (2) he should not be able to testify about patent scope because he:

(a) inappropriately opines on the *legal issue* of patent scope; (b) opines about the irrelevant

understanding of design patent examiners as to patent scope; and (c) commits legal error by

drawing inferences about patent scope based upon *subsequently* issued patents; and (3) Godici's

testimony about indefiniteness is not based on expertise and would not assist the jury.

The Court excludes the Godici Report.  Much of the Godici Report goes to issues of patent

scope.  To the extent the jury needs additional expert guidance about issues of patent scope, it is an

issue for claim construction, appropriately addressed by the Court.  *See Egyptian Goddess, Inc. v.*

*Swisa, Inc*., 543 F.3d 665, 679-80 (Fed. Cir. 2008) (discussing the role of the court in construing

design patents for juries).  Furthermore, where Mr. Godici considers a patent examiner's

understanding of patent scope, his testimony has no relevance under FRE 401 to the perspective of

an ordinary observer.  Where Mr. Godici considers patent scope in light of *subsequently issued*

patents, he commits legal error, rendering his testimony irrelevant under FRE 401 and inadmissible

under FRE 702 and *Daubert*.  Mr. Godici's testimony on indefiniteness and the meaning of dotted

lines is similarly a claim construction issue.  *See id.*  Mr. Godici's testimony as to whether a

reasonable examiner would find an omission material goes only to inequitable conduct, which is an

equitable issue for the Court and not the jury.

Allowing Mr. Godici, a former PTO Commissioner, to testify on the scope of patents and

the understanding and intent of design patent examiners might also be highly prejudicial and

confusing to a jury inclined to trust the opinions of a former high ranking patent official.

Accordingly, because Mr. Godici's testimony would have limited probative value with regard to

5

1   issues before the jury, and because Mr. Godici's testimony raises substantial danger of prejudice

2   and jury confusion, the Court finds Mr. Godici's opinions inadmissible under FRE 403.

3   Accordingly, Apple's motion to exclude Nicolas Godici's testimony is GRANTED.

### 5.   George Mantis

5          Apple moves to exclude Mr. Mantis's phone confusion survey on the ground that it is

6   irrelevant to Apple's iPhone trade dress dilution claim.  Apple moves to exclude both Mr. Mantis's

7   phone confusion survey and his tablet confusion survey on the ground that the surveys are "simply

8   reading tests, not tests of trade dress 'confusion' or 'dilution.'"  Apple Mot. at 18.

9          In light of Apple's dismissal of its claim that Samsung's phones infringe Apple's iPhone

10  trade dress, the Court agrees with Apple that Mr. Mantis's phone confusion survey is no longer

11  legally relevant to any issues in this case and is therefore excludable under FRE 402.  To establish

12  a trade dress infringement claim, a plaintiff must show likelihood of consumer confusion, whereas

13  a trade dilution claim requires only that "the defendant's use of the mark is likely to cause dilution

14  by blurring or dilution by tarnishment."  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir.

15  2008) (citing 15 U.S.C. § 1125(c)(1)).  The latter can be established by showing that "the

16  'association arising from the similarity between a mark or trade name and a famous mark . . .

17  impairs the distinctiveness of the famous mark.'"  *Id.* at 635 (quoting 15 U.S.C. § 1125(c)(2)(B)).

18  While a showing that confusion is likely may evidence an association between products, the

19  absence of confusion is not probative of lack of dilution.  *See id.* at 634; *see also Mattel, Inc. v.*

20  *MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) ("Injury from dilution usually occurs when

21  consumers *aren't* confused about the source of a product.") (emphasis in original).  Because

22  Samsung presumably seeks to introduce phone confusion survey evidence in order to show the

23  absence of confusion, such evidence would not be relevant to Apple's iPhone trade dress dilution

24  claim and would be unduly prejudicial and confusing to the jury.

25          Because Apple is asserting an iPad trade dress infringement claim, Mr. Mantis's tablet

26  confusion survey is relevant under FRE 401 and sufficiently reliable under FRE 702 and *Daubert*.

27  The cases Apple cites excluding confusion surveys for being mere "reading tests" are

28  distinguishable.  In one example, respondents were shown four toys in their packaging and asked to

6

1   pick out a named product.  *Am. Greetings Corp. v. Dan-Dee Imports, Inc.*, 619 F. Supp. 1204, 1216

2   (D.N.J. 1985), *modified on other grounds*, 807 F.2d 1136 (3d Cir. 1986).  In another, respondents

3   were shown a list of names and asked to identify whether given names were in the list.  *Franklin*

4   *Res., Inc. v. Franklin Credit Mgmt. Corp.*, 988 F. Supp. 322, 335 (S.D.N.Y. 1997).  By contrast,

5   Mr. Mantis's survey here did not ask respondents to pick out the Samsung product from a lineup,

6   but rather asked them to identify the brand name or company of the phone they were shown.  *Cf.*

7   *Fortune Dynamic*, 618 F.3d at 1037, 1038 (consumer survey should try to "replicate real world

8   conditions").  Under Ninth Circuit law, "survey evidence should be admitted 'as long as it is

9   conducted according to accepted principles and is relevant.'"  *Id.* at 1036 (quoting *Wendt v. Host*

10  *Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)) (alterations omitted).  "[T]echnical inadequacies in a

11  survey, including the format of the questions or the manner in which it was taken, bear on the

12  weight of the evidence, not its admissibility."  *Id.* (internal quotation marks and citations omitted).

13  Apple has not raised any valid ground for excluding Mr. Mantis's tablet confusion survey.

14       Accordingly, Apple's motion to exclude Mr. Mantis's testimony is GRANTED as to the

15  phone confusion survey, and DENIED as to the tablet confusion survey.

16                  **6.  Michael Mazis**

17       Apple moves to exclude Michael Mazis's survey, which tests consumers' recognition of

18  Apple's icons and the extent to which they associate the icons with Apple.  Apple argues that

19  Mazis's survey (1) is no longer relevant because Apple has dismissed its claims for infringement of

20  the eight icon trademarks, and (2) is unreliable because it only asked consumers whether they had

21  seen the icon "on a smartphone or tablet computer," and thus improperly discounted respondents

22  who may associate the icon with Apple having seen the icon on desktop computers, iPod touches,

23  or Apple advertisements.

24       The Court finds that Dr. Mazis's study is relevant to the claimed fame of the asserted trade

25  dress at issue, which is an element of Apple's trade dilution claim.  *See* 15 U.S.C. §

26  1125(c)(2)(A)(iii) (extent of actual recognition among consumers is a factor in assessing fame).

27  Apple's remaining criticisms of the survey go to weight, not admissibility.  *See Fortune Dynamic*,

28

7

618 F.3d at 1036.  Thus, Dr. Mazis's survey evidence is admissible under FRE 402 and 702, and under *Daubert*.  Apple's motion to exclude Michael Mazis's testimony is therefore DENIED.

### 7.  Michael Kamins

Apple moves to exclude Dr. Kamins's phone consumer association survey on the ground that it uses an improper control group.  Apple asserts that Mr. Kamins's use of the LG G2x as an additional control phone (in addition to the Blackberry Storm phone, which was used by both parties' experts) renders his survey unreliable because the LG G2x shares all the features of Apple's asserted iPhone trade dress, and is therefore incapable of controlling for background "noise" in the survey.[2]  Apple Reply at 12.

Apple's argument goes to weight, not admissibility.  While relying on a wholly inappropriate control group may render a survey so flawed as to be inadmissible, *see THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 241 (S.D.N.Y. 2010), this is not such a case.  Both parties agree that a control group should "share[] as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed."  Apple Mot. at 20; *see* Samsung Opp'n at 20.  While Apple complains that the LG G2x cannot serve as an effective control because it shares some trade dress characteristics with the iPhone, trade dress concerns the look and feel of a product as a whole, not a list of individualized features considered in a vacuum.  In evaluating the effect of trade dress, picking an adequate control group effectively requires choosing an average, non-infringing smartphone.  Samsung's expert has endeavored to do this in his selection of the LG G2x as a control.  His choice is not so unreasonable as to render the survey excludable under FRE 702 and *Daubert*.  Accordingly, Apple's motion to exclude Michael Kamins's testimony is DENIED.

### 8.  Michael Wagner

Apple moves to exclude Mr. Wagner's opinions regarding (1) apportionment of damages with respect to Apple's design patents, and (2) apportionment of damages with respect to Apple's

---

[2] The shared design features between the LG G2x and the iPhone include a rectangular body with curved corners, a flat clear surface with a black border where the left and right borders are narrower than the top and bottom borders, and colorful icons arranged in a two by four matrix on the phone's screen when it is on.  Apple Mot. at 20 (citing Bartlett Decl. Ex. 21 at 224:18-226:19).

8

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

trade dress claims. Apple also moves to exclude (3) Mr. Wagner's opinion that evidence of "demand for the patented features" is required under *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

Apple argues that Mr. Wagner's apportionment of Samsung's profits based on Apple's design patents should be excluded as inconsistent with 35 U.S.C. § 289, which provides that a design patent holder is entitled to an infringer's total profits. *See* 35 U.S.C. § 289 (the infringer "shall be liable to the [patent] owner to the extent of his total profit"); *Nike Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1442-43 (Fed. Cir. 1998) (noting that Congress removed "the need to apportion the infringer's profits between the patented design and the article bearing the design" when it passed the Act of 1887, which was subsequently codified under 35 U.S.C. § 289). Samsung's opposition cites no legal basis for Mr. Wagner's apportionment of damages, in clear contravention of 35 U.S.C. § 289, instead appealing only to procedural and policy arguments for allowing apportionment in this case. Because Mr. Wagner's apportionment of damages with respect to Apple's design patent infringement claims is contrary to law, it is unreliable under FRE 702 and *Daubert* and unduly prejudicial under FRE 403. Apple's motion to exclude Mr. Wagner's testimony apportioning damages with respect to Apple's design patent claims is therefore GRANTED.

Apple argues that Mr. Wagner's apportionment analysis based on Apple's trade dress claims is based on unsound methodology and should be excluded as unreliable under FRE 702 and *Daubert*. In support of its assertion that Mr. Wagner's apportionment approach lacks foundation in any objective, peer-reviewed method, Apple submits a declaration of Russell S. Winer critiquing Mr. Wagner's methods, and points to Mr. Wagner's deposition, in which he cites no source for his methodology. The Court finds that the underlying consumer survey data on which Mr. Wagner relies for his calculations are the kind of data on which "experts in the particular field would reasonably rely." Fed. R. Evid. 703. Nonetheless, neither Mr. Wagner nor Samsung has cited any evidence supporting their assertion that Mr. Wagner's calculations are based on a generally accepted, peer-reviewed method. Apple has raised serious doubts about the reliability of Mr. Wagner's arithmetic, the flaws of which are apparent even on the face of some of his calculations.

9

1    Ultimately, the Court finds that Mr. Wagner's trade dress apportionment calculations would be

2    misleading to the jury and unduly prejudicial, and are thus excludable under FRE 403 and 702 and

3    under *Daubert*.  Apple's motion to exclude Mr. Wagner's apportionment analysis with respect to

4    Apple's trade dress claims is therefore GRANTED.

5            Finally, Apple seeks to exclude Mr. Wagner's opinion that evidence of "demand for the

6    patented features" is required under *Panduit*'s first prong – an opinion that he proffers primarily to

7    critique Apple's expert Terry Musika's damages calculation.  A patentee seeking damages under a

8    lost profits theory must satisfy the four-factor *Panduit* test, which requires a showing of: "(1)

9    demand for the patented product[;] (2) absence of acceptable noninfringing substitutes[;] (3) his

10   manufacturing and marketing capability to exploit the demand[;] and (4) the amount of the profit

11   he would have made."  *Panduit*, 575 F.2d at 1156; *accord DePuy Spine, Inc. v. Medtronic Sofamor

12   Danek, Inc.*, 567 F.3d 1314, 1329 (Fed. Cir. 2009).  *DuPuy* made it very clear that, while evidence

13   of demand for the patented feature "goes to the availability of acceptable noninfringing substitutes

14   under the second *Panduit* factor," under the first *Panduit* factor, the patentee need not show

15   demand for a particular feature to establish demand for a patented product.  567 F.3d at 1330-31.

16   Rather, "the first *Panduit* factor simply asks whether demand existed for the 'patented product,'

17   i.e., a product that is 'covered by the patent in suit' or that 'directly competes with the infringing

18   device.'"  *Id.* (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995) (en

19   banc)).  Mr. Wagner's opinion that demand for the patented feature must be addressed under the

20   first *Panduit* factor is contrary to law, and therefore will not assist the trier of fact.  Accordingly,

21   Apple's motion to exclude this part of Mr. Wagner's testimony is GRANTED.

22                        **B.  SAMSUNG'S MOTION TO EXCLUDE**

23                              **1.  Terry L. Musika**

24           First, Samsung moves to exclude Mr. Musika's <u>lost profits analysis</u>, on the grounds that: (a)

25   he fails to account for market factors, such as Apple's higher prices and consumers' platform

26   loyalty; and (b) his lost profits analysis is not tied to the specific intellectual property rights at

27   issue, i.e., he does not identify but-for sales lost due to customer demand for the asserted IP,

28   contrary to *BIC Leisure  Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993).

Case No.: 11-cv-01846-LHK
ORDER RE: MOTIONS TO EXCLUDE

Samsung argues that Mr. Musika's analysis fails to show demand specifically for the particular features claimed in the utility patents. "To recover lost profits as opposed to royalties, a patent owner must prove a causal relation between the infringement and its loss of profits." *BIC Leisure Prods.*, 1 F.3d at 1218. *BIC Leisure*, however, does not require a separate price elasticity study where the parties are clearly direct competitors, as is the case here. Furthermore, Mr. Musika does opine as to demand for the specific intellectual property rights asserted, and in any event, evidence of demand for the patented product as a whole is also relevant to the first *Panduit* factor under a lost profits analysis. *DePuy Spine*, 567 F.3d at 1330-31. Thus, Samsung's motion to exclude Mr. Musika's lost profits analysis is DENIED.

Second, Samsung moves to exclude Mr. Musika's reasonable royalty analysis, on the grounds that: (a) his "income approach" improperly attributes the entire premium value of Apple's iPhone and iPad products to the asserted intellectual property with no apportionment to other assets, contrary to *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); (b) his "cost approach" improperly assumes that Samsung would have abandoned the market while designing new products, and improperly uses Samsung's total gross profit for the entire time; (c) he improperly relies on his conclusion that Apple is an unwilling licensee, even though the hypothetical negotiation requires assuming "a prudent patentee who was willing to grant a license," *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); and (d) he improperly relies on a noncomparable license, the "Apple's Made for iPhone, iPad, and iPod program," to establish a "floor" for a reasonable royalty.

As an alternative to lost profits, infringement damages under 35 U.S.C. § 284 can be based on a "reasonable royalty." Courts accept a variety of methods for determining a reasonable royalty. *See Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). For example, the "analytical method [] focuses on the infringer's projections of profit for the infringing product." *Id.* (citing *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986) (describing the analytical method as "subtract[ing] the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of infringing devices")); *TWM Mfg.*, 789 F.2d at 898 ("The methodology of assessing and computing damages under 35 U.S.C. § 284 is within the

Case No.: 11-cv-01846-LHK
ORDER RE: MOTIONS TO EXCLUDE

United States District Court
For the Northern District of California

sound discretion of the district court.").  A second, more common approach, is "the 'willing

2 licensor-willing licensee' approach."  *Lucent Techs.*, 580 F.3d at 1324 (quoting *Georgia-Pacific*,

3 318 F. Supp. at 1120).  The willing licensor-willing licensee approach, or hypothetical negotiation,

4 determines a reasonable royalty "on the basis of a hypothetical negotiation, occurring between the

5 parties at the time that infringement began."  *Uniloc*, 632 F.3d at 1312.  A reasonable royalty

6 calculation is reviewed within the *Georgia-Pacific* framework.  *See Lucent Techs.*, 580 F.3d at

7 1325; *Georgia-Pacific*, 318 F. Supp. at 1120.

8          Samsung's criticisms of Mr. Musika's "income approach" and "cost approach" analyses

9 largely go to weight, not admissibility.  First, while Samsung may disagree with Mr. Musika's

10 apportionment of any premium for Apple's iPhone and iPad products, his basic income approach

11 methodology is sound and is not subject to exclusion under FRE 702 and *Daubert*.  Second,

12 Samsung's critique of Mr. Musika's "cost approach" turns on a factual dispute as to whether

13 Samsung would have abandoned the market while designing a new product.  While determination

14 of a reasonable royalty is not *based on* an infringer's profits, an infringer's profits is a relevant

15 consideration under at least three *Georgia-Pacific* factors that inform a reasonable royalty

16 calculation.  *See Georgia-Pacific*, 318 F. Supp. at 1120.  Third, while the hypothetical negotiation

17 requires assumption of a willing licensor and willing licensee, evidence of a patentee's actual

18 unwillingness to license is a factor that may be considered in calculating a reasonable royalty under

19 the hypothetical negotiation framework.  *See Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed.

20 Cir. 2004); *Rite-Hite Corp.*, 56 F.3d at 1554-55; *Georgia-Pacific*, 318 F. Supp. 1116 at 1120

21 (fourth factor is "[t]he licensor's established policy and marketing program to maintain his patent

22 monopoly by not licensing others to use the invention").  Samsung's final objection to Mr.

23 Musika's reasonable royalty analysis, however, has merit.  Mr. Musika improperly relies on a

24 license (the "Made for" program) that he himself admits is "not a comparable license to any of the

25 Apple Intellectual Property In Suit" to establish a floor for a reasonable royalty.  This is improper

26 under *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), and should therefore

27 be excluded under FRE 702 and *Daubert*.  Accordingly, Samsung's motion to exclude Mr.

28

Case No.: 11-cv-01846-LHK
ORDER RE: MOTIONS TO EXCLUDE

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Musika's reasonable royalty analysis is GRANTED as to Mr. Musika's opinion that the "Made

2    for" program establishes a floor for reasonable royalties, but is in all other respects DENIED.

3            Third, Samsung moves to exclude Mr. Musika's <u>critique of Samsung's evidence of costs</u>,

4    on the grounds that the opinion (a) was untimely produced, and (b) is improper attorney argument

5    that would confuse the jury by suggesting disgorgement of all revenues, not just profits.  To the

6    extent Mr. Musika opines that Samsung's evidence of costs "does not meet the relevant standards

7    applied by financial accounts," such testimony is relevant and admissible under FRE 401, 402, and

8    702.  However, to the extent Mr. Musika seeks to instruct the jury as to Samsung's burden of proof

9    for establishing deductible costs, such testimony oversteps the bounds of proper expert testimony

10   and usurps the role of the Court, and would mislead the jury and cause jury confusion under FRE

11   403.  Accordingly, Samsung's motion to exclude is DENIED as to Mr. Musika's opinions on the

12   accounting accuracy and reliability of Samsung's evidence of costs, but GRANTED as to his

13   opinions on Samsung's burden of proof.

14           Fourth, Samsung moves to exclude any damages testimony by Mr. Musika that <u>fails to</u>

15   <u>subtract pre-notice damages</u>, on the ground that Apple's claims for damages are limited to the

16   period after Samsung received *actual* notice, because Apple does not mark its products.

17   Samsung's objection turns on a factual dispute as to when Samsung received actual notice, and is

18   not a proper ground for excluding Mr. Musika's expert damages testimony.  Accordingly,

19   Samsung's motion to require Mr. Musika to subtract pre-notice damages from his calculations is

20   DENIED.

21           Finally, Samsung moves to exclude Mr. Musika's <u>opinions on irreparable harm</u>, on the

22   ground that he fails to address the required nexus showing.  Apple has not explained how Mr.

23   Musika's opinions on irreparable harm are relevant to any issues that will be before the jury.

24   Accordingly, Samsung's motion to exclude Mr. Musika's opinions on irreparable harm is

25   GRANTED.

26                           **2.  John Hauser**

27           Samsung moves to exclude the willingness-to-pay opinions of John Hauser, who was hired

28   by Apple to design and conduct two surveys (one for smartphones, one for tablets) to determine

13

United States District Court
For the Northern District of California

1    what price premium, if any, Samsung consumers are willing to pay for the features associated with

2    the patents at issue.  Samsung seeks to exclude Dr. Hauser's opinion on grounds that: (1) he failed

3    to retain and produce raw data on which he relied in designing the surveys; and (2) his survey

4    design methodology is unreliable because (a) he surveyed recent Samsung purchasers, rather than

5    the proper universe of potential Samsung purchasers, and (b) his descriptions of features in the

6    survey do not match Apple's expert's descriptions of the patented features.

7           Dr. Hauser's failure to disclose written records of the underlying interviews used to select

8    appropriate "distraction features" in the surveys ultimately administered does not render his survey

9    testimony unreliable.  *Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F. Supp. 1189

10   (E.D.N.Y. 1983), is readily distinguishable, as the survey evidence excluded in that case suffered

11   multiple deficiencies, including issues of unreliability with the actual survey results themselves.

12   *See id.* at 1203-04.  *Oracle America, Inc. v. Google, Inc.*, No. C 10-03561 WHA, 2012 WL 850705

13   (N.D. Cal. Mar. 13, 2012) is also distinguishable, as Dr. Hauser's conjoint analysis is used for a

14   willingness to pay analysis, not to predict market share, and Samsung has not separately attacked

15   "the conjoint study's own irrational results," as was the case in *Oracle*.  *Id.* at *11.

16          Samsung offers no explanation for why recent Samsung purchasers are not the proper

17   universe for Dr. Hauser's survey.  The Court finds that recent Samsung purchasers are at least

18   members of the relevant universe of survey participants, and thus even if the survey was

19   underinclusive, it is still probative.  *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615

20   (9th Cir. 1989); *A & M Records, Inc. v. Napster, Inc.*, No. C9905183MHP, 2000 WL 1170106, at

21   *3 (N.D. Cal. Aug. 10, 2000).  Generally, underinclusiveness of a survey goes to weight, not

22   admissibility.  *See Icon Enterp. Int'l, Inc. v. Am. Prods. Co.*, No. CV 04-1240 SVW, 2004 WL

23   5644805, at *25 (C.D. Cal. Oct. 7, 2004).  Samsung's dissatisfaction with the description of the

24   patented features in the survey likewise goes to weight, not admissibility.  Accordingly, Samsung's

25   motion to exclude Dr. Hauser's opinions based on his willingness-to-pay survey is DENIED.

26                           **3.  Henry Urbach**

27          Samsung moves to exclude Mr. Urbach's expert testimony on grounds that: (1) the

28   testimony is irrelevant, because it is unrelated to any pertinent legal issue or asserted intellectual

14

1    property; (2) the testimony is unreliable, because it does not rely on objective data or investigation;

2    and (3) Mr. Urbach is unqualified to opine on design.

3         The Court finds that Mr. Urbach's testimony is not relevant to any legal issues and is

4    therefore inadmissible under FRE 401.  Mr. Urbach's testimony about the appeal and "museum

5    worthiness" of Apple products generally is not tied to any specific asserted intellectual property in

6    this case.  Although Apple contends that the testimony is relevant to "commercial success" as a

7    secondary consideration for obviousness, "[e]vidence of commercial success, or other secondary

8    considerations, is only significant if there is a nexus between the claimed invention and the

9    commercial success."  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006).

10   In any event, any potential relevance is outweighed by the risk of confusing the issues.  *See* FRE

11   403.  Accordingly, Samsung's motion to exclude is GRANTED.

### 4.  Susan Kare

13        Samsung moves to exclude Ms. Kare's expert opinions on substantial similarity, likelihood

14   of confusion, and "possible" copying of Apple's icon design and layout, on the ground that her

15   testimony does not conform to the governing legal standards and is thus unreliable under FRE 702.

16   Samsung argues that Ms. Kare: (1) describes no legal principle; (2) misinterprets the trade dress

17   analyses for substantial similarity and likelihood of confusion; and (3) opines that Samsung's

18   design engineers may have used Apple's design as a guide, but is not a psychologist who can

19   analyze subjective intent of the design engineers.

20        The Court finds Ms. Kare's testimony admissible because it is relevant under FRE 401 and

21   based upon appropriate expertise and methodology under FRE 702 and *Daubert*.  Ms. Kare

22   describes similarities between Apple and Samsung designs, drawing upon her own design

23   experience.  Furthermore, Ms. Kare's design experience also qualifies her to opine as to Samsung's

24   possible design processes based upon her review of Samsung's internal design documents.  Thus,

25   Samsung's motion to exclude Susan Kare's testimony is DENIED.

### 5.  Russell Winer

27        Samsung moves to exclude Prof. Winer's testimony under FRE 702 and 403 on grounds

28   that it is: (1) irrelevant; (2) cumulative of other expert testimony; and (3) impermissible "'closing

15

argument' masquerading as an expert opinion." Samsung Mot. at 19. The Court has reviewed Prof. Winer's Report and agrees that some of his opinions regarding Apple's "brand" generally are either not legally relevant or only marginally relevant to the issues of trade dress infringement and trade dilution. Nonetheless, Samsung has not submitted a more narrowly tailored request to exclude, instead moving to exclude Prof. Winer's opinions in their entirety. The Court finds no basis to do so, as several of Prof. Winer's opinions are relevant to issues of fame, distinctiveness, blurring, and likelihood of confusion, and the documents on which he relies are "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703. While some of his testimony may be needlessly cumulative, this is an issue better resolved at trial. Accordingly, Samsung's motion to exclude is DENIED.

### 6. Sanjay Sood

Samsung moves to exclude Dr. Sood's survey-based opinions as unreliable on the grounds that: (1) his testimony is not properly tied to the patents, trade dress, or accused products at issue in this case; (2) the surveys involved inexpensive devices not comparable to the consumer products at issue here and surveyed the wrong population; and (3) neither he nor Apple produced the underlying written questionnaires.

Apple's criticisms of Mr. Sood's survey "go to 'issues of methodology, survey design, reliability, . . . [and] critique of conclusions,' and therefore 'go to the weight of the survey rather than its admissibility.'" *Fortune Dynamic*, 618 F.3d at 1038 (quoting *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001)) (alterations in *Fortune Dynamic*). "[T]echnical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Id.* (internal quotation marks omitted). Dr. Sood's surveys sought to solicit data on the impact of design on consumer choice more generally, and he applies his research more specifically to the asserted intellectual property rights and accused products at issue in this case. Thus, his opinions are admissible as relevant under FRE 401 and 402, and are sufficiently reliable under FRE 702 and *Daubert*. Accordingly, Samsung's motion to exclude Sanjay Sood's testimony is DENIED.

### 7. Michael Walker

16

Case No.: 11-cv-01846-LHK
ORDER RE: MOTIONS TO EXCLUDE

United States District Court
For the Northern District of California

1    Samsung moves to exclude the Walker testimony that Samsung failed to disclose essential

2    patent applications to ETSI, on the grounds that Walker's opinions are speculative and without

3    factual support.

4    The Court finds that Walker's testimony is adequately grounded in fact under FRE 702 and

5    *Daubert*.  Walker's opinion that Samsung was required to disclose patent applications to the

6    European Telecommunication Standards Institute (ETSI) is grounded in the ETSI intellectual

7    property rights policy, which provides for disclosure of potentially essential intellectual property

8    and sets forth specialized procedures for handling confidential information.  Accordingly,

9    Samsung's motion to exclude Michael Walker's testimony is DENIED.

10    ### 8.  Richard L. Donaldson

11    Samsung moves to exclude part of the opinion of Richard L. Donaldson on the grounds that

12    it offers a legal, rather than a factual, conclusion: that the terms of Samsung's patent license with

13    Intel allows Intel to sell the accused chipsets to Apple.

14    The Court finds that Mr. Donaldson may testify as to his opinion on how particular terms

15    are commonly understood in the industry, *e.g.*, Martin Decl. Ex. 32 ¶ 107, because such testimony

16    is relevant under FRE 401 and an appropriate exercise of Donaldson's expertise under FRE 702

17    and *Daubert*.   However, to the extent Mr. Donaldson draws any conclusions about the parties'

18    rights under the contract, *e.g. id.* at ¶ 110, such testimony is excluded because it is not directed to

19    any issue before the jury and is thus irrelevant under FRE 401.  Accordingly, Samsung's motion to

20    exclude Richard Donaldson's testimony is GRANTED-IN-PART and DENIED-IN-PART.

21    ### III.    CONCLUSION

22    For the foregoing reasons, the Court rules as follows:

23    1.  Apple's motion to exclude Itay Sherman's testimony is DENIED.

24    2.  Apple's motion to exclude Sam Lucente's testimony is DENIED.

25    3.  Apple's motion to exclude Mark Lehto's testimony is DENIED.

26    4.  Apple's motion to exclude Nicholas Godici's testimony is GRANTED.

27    5.  Apple's motion to exclude George Mantis's testimony is GRANTED-IN-PART and

28    DENIED-IN-PART.

Case No.: 11-cv-01846-LHK
ORDER RE: MOTIONS TO EXCLUDE

6. Apple's motion to exclude Michael Mazis's testimony is DENIED.

7. Apple's motion to exclude Michael Kamins's testimony is DENIED.

8. Apple's motion to exclude Richard Wagner's testimony is GRANTED.

9. Samsung's motion to exclude Terry Musika's testimony is GRANTED-IN-PART and DENIED-IN-PART.

10. Samsung's motion to exclude John Hauser's testimony is DENIED.

11. Samsung's motion to exclude Henry Urbach's testimony is GRANTED.

12. Samsung's motion to exclude Susan Kare's testimony is DENIED.

13. Samsung's motion to exclude Russell Winer's testimony is DENIED.

14. Samsung's motion to exclude Sanjay Sood's testimony is DENIED.

15. Samsung's motion to exclude Michael Walker's testimony is DENIED.

16. Samsung's motion to exclude Richard Donaldson's testimony is DENIED.

**IT IS SO ORDERED.**


Dated: June 29, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

Case No.: 11-cv-01846-LHK
ORDER RE: MOTIONS TO EXCLUDE

18