UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation, | Case No.: 11-CV-01846-LHK |
| Plaintiff and Counterdefendant, | |
| v. | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants and Counterclaimants. | |

Defendants and Counterclaimants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") filed a motion for summary judgment against Plaintiff and Counterdefendant Apple, Inc. ("Apple") on May 17, 2012 ("MSJ"). Apple filed its opposition on May 31, 2012 ("Opp'n"). Samsung filed its reply on June 7, 2012 ("Reply"). The Court held a hearing on June 21, 2012. The pretrial conference in this matter is set for July 18, 2012; the trial will begin on July 30, 2012. Because the parties require a ruling on this motion on an expedited basis, the Court will keep its analysis brief.

The parties are familiar with the factual and procedural background of this case, and the Court will not repeat it in detail here. In sum, at the center of the parties' dispute in this lawsuit are Samsung's cellular telephones and tablet computers. Apple alleges that Samsung's products infringe on Apple's utility and design patents as well as Apple's trade dress. In addition, Samsung filed counterclaims against Apple alleging that Apple products infringe Samsung patents. Because several of Samsung's asserted patents are incorporated into the UMTS standards ("standards essential patents"), Apple also alleges, in its counterclaims in reply, that Samsung's refusal to license its standards essential patents on fair, reasonable, and non-discriminatory ("FRAND")

United States District Court
For the Northern District of California

1    terms, constitutes antitrust violations.  Additional facts are discussed below, as necessary, in the

2    Court's analysis.

3        In order to prepare this case for trial on July 30, 2012, the parties stipulated to dismiss many

4    of the claims originally asserted in the complaint, counterclaims, and counterclaims in reply.

5    Samsung moves for summary judgment on all of Apple's affirmative claims.  At issue in this

6    motion for summary judgment are the following claims: (1) trade dress infringement; (2) trade

7    dress dilution; (3) utility patent infringement; (4) design patent infringement; and (5) antitrust

8    claims.  After hearing oral argument on the matter, and reviewing the briefing by the parties, the

9    evidence offered in support of the briefing, and the relevant case law, the Court DENIES

10   Samsung's motion for summary judgment.  Each of Samsung's arguments challenging Apple's

11   claims is addressed in turn below.

## I.    LEGAL STANDARD

13       Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if

14   the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

15   to judgment as a matter of law."  Material facts are those that may affect the outcome of the case.

16   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

17   "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving

18   party."  *See id.*  "[I]n ruling on a motion for summary judgment, the judge must view the evidence

19   presented through the prism of the substantive evidentiary burden."  *Id.* at 254.  The question is

20   "whether a jury could reasonably find either that the [moving party] proved his case by the quality

21   and quantity of evidence required by the governing law *or* that he did not."  *Id.*  "[A]ll justifiable

22   inferences must be drawn in [the nonmovant's] favor."  *See United Steelworkers of Am. v. Phelps

23   Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing *Liberty Lobby*, 477 U.S. at

24   255).

25       The moving party bears the initial responsibility for informing the district court of the basis

26   for its motion and identifying those portions of the pleadings, depositions, interrogatory answers,

27   admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of

28   material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party opposing a properly

2

1   supported motion for summary judgment "may not rest upon the mere allegations or denials of

2   [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for

3   trial." *See* Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 250. The opposing party need

4   not show the issue will be resolved conclusively in its favor. *See Liberty Lobby*, 477 U.S. at 248–

5   49. All that is necessary is submission of sufficient evidence to create a material factual dispute,

6   thereby requiring a jury or judge to resolve the parties' differing versions at trial. *See id.*

7   ## II.      TRADE DRESS

8         "It is well established that trade dress can be protected under federal law. The design or

9   packaging of a product may acquire a distinctiveness which serves to identify the product with its

10  manufacturer or source." *TrafFix Devices, Inc. v. Marketing Displays*, Inc., 532 U.S. 23, 28

11  (2001). To succeed on its trade dress claims, Apple must satisfy three elements: nonfunctionality,

12  distinctiveness, and likelihood of confusion. *See Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,

13  158 F.3d 1002, 1005 (9th Cir. 1998). On its motion for summary judgment, Samsung only argues

14  that Apple's product designs are unprotectable because they are functional. Functionality is a

15  factual question. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001)

16  (citation omitted).

17        The burden of proof of functionality on trade dress claims depends upon whether the trade

18  dress is registered or not. A party asserting protection for unregistered marks "has the burden of

19  proving that the matter sought to be protected is not functional." 15 U.S.C. §1125(a)(3) (2006). In

20  contrast, a registered mark enjoys the presumption of validity. However, this presumption can be

21  rebutted through "law, undisputed facts, or a combination thereof that the mark is invalid" such

22  that registration alone does not protect the trademark holder against summary judgment. *Tie Tech,*

23  *Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002). Apple continues to assert "[t]he iPhone

24  trade dress (based on the trade dress Registration No. 3,470,983, the unregistered combination

25  iPhone trade dress, and the unregistered iPhone 3G trade dress)[1]" as well as "[t]he iPad trade dress

26  (based on unregistered iPad/iPad 2 trade dress)." *See* ECF No. 902. Apple clarified at the hearing

---

[1] Although it is unclear whether Apple continues to assert the iPhone 3G as an independent trade dress claim, because Samsung offers arguments challenging the iPhone 3G trade dress, the Court will address this issue. MSJ at 6.

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

1   on the Daubert motions that the only iPhone trade dress claim asserted was trade dress dilution.

2   Apple continues to assert both trade dress infringement and trade dress dilution as to the iPad.

3        Trade dress protection "must subsist with the recognition that in many instances there is no

4   prohibition against copying goods and products." *TrafFix Devices, Inc.*, 532 U.S. at 29.

5   Therefore, "[t]he functionality doctrine prevents trademark law, which seeks to promote

6   competition by protecting a firm's reputation, from instead inhibiting legitimate competition by

7   allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prod. Co.*, 514

8   U.S. 159, 164 (1995).

9        The Supreme Court has recognized two types of functionality: a "traditional rule" and a

10  second rule addressing "aesthetic functionality." *TrafFix*, 532 U.S. at 32-33.  First, if a product

11  feature is "essential to the use or purpose of the article or if it affects the cost or quality of the

12  article," it is functional and cannot be protected by trade dress. *Id.* at 32.  Second, in cases where

13  the first test is not satisfied, the question becomes whether trademark protection would place

14  competitors at a "significant non-reputation-related disadvantage." *Id.*  (internal quotation marks

15  omitted); *see also Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th

16  Cir. 2006).   The Court will address each of the types of functionality recognized by the Supreme

17  Court in turn.

18       **A.  Utilitarian Functionality**

19       As explained above, under the traditional, utilitarian functionality test, a trade dress is

20  functional "when it is essential to the use or purpose of the device or when it affects the cost or

21  quality of the device." *TrafFix*, 532 U.S. at 33.  In applying this test, the Ninth Circuit assesses

22  four factors: "(1) whether advertising touts the utilitarian advantages of the design, (2) whether the

23  particular design results from a comparatively simple or inexpensive method of manufacture, (3)

24  whether the design yields a utilitarian advantage and (4) whether alternative designs are available."

25  *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing

26  *Disc Golf*, 158 F.3d at 1006); *see also Au-Tomotive Gold, Inc.*, 457 F.3d at 1072 n.8

27  (acknowledging the four factor test applied by the Ninth Circuit).  While the existence of

28  alternative designs does not alone prevent a finding of functionality, alternative designs may

**United States District Court**
For the Northern District of California

4

provide evidence as to whether the trademark "embodies functional or merely ornamental aspects of the product." *Id.* (citations and quotation marks omitted).

Samsung first argues that each feature of the trade dress Apple seeks to claim serves utilitarian functions, and that the combination of utilitarian features is functional. MSJ at 3-5. Samsung's argument, however, is in tension with Ninth Circuit precedent, which requires that in evaluating functionality, the trade dress should be considered as a whole rather than as a collection of individual elements. *Clicks Billiards*, 251 F.3d at 1259. "The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, functional elements that are separately unprotectable can be protected together as part of a trade dress." *Adidas-Solomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1195 (D. Or. 2002) (citing *Clicks Billiards*, 251 F.3d at 1259).

Samsung finds some support for its position in *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1013 (9th Cir. 1999). In *Leatherman Tool*, the Ninth Circuit concluded that "where the whole is nothing other than assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance," there is no basis to conclude the trade dress as a whole is non-functional. *Id.* Although Samsung offers evidence regarding the functional and useful qualities of many of the design features of Apple's trade dresses, Samsung does not offer any support for its assertion that the arrangement of features in the overall trade dress is strictly functional, as was the case in *Leatherman*.

Apple, on the other hand, applying the four *Disc Golf* factors, has raised a triable issue of fact as to the functionality of the Apple trade dresses. Specifically, each of the factors is addressed below:

### 1. Advertising

Advertising that touts the utility of the product design provides evidence of functionality. *See Talking Rain*, 349 F.3d at 603-604 (noting that advertising focused on the ease of holding the beverage bottle at issue demonstrates functionality). Apple points to evidence of its advertising, which focuses on the aesthetic beauty rather than utilitarian features. Opp'n at 3. The print advertisements identified by Apple highlight the product, without necessarily indicating anything

5

utilitarian about the trade dress. *See* Winer Decl. Exs. 4-5. The ███████████ used by

Apple experts to describe Apple's approach to its advertising campaigns does not definitively

establish that the design is not utilitarian. *See id.* ¶47. However, the advertising does suggest that

utilitarian attributes are not the focus of Apple's advertising.

### 2. Method of Manufacture

Design choices that reflect cost-cutting or simplified manufacturing processes or otherwise

improved methods of manufacture imply functionality. *See Talking Rain*, 349 F.3d at 604 (noting

that trademark law does not protect investments in manufacturing technology such as those that

improve the structural support of a product). Apple has provided testimony that its design choices

██████████████████████████████████████████. *See e.g.* Bartlett Decl. Ex. 2

at 41; 238-239; Bartlett Decl. Ex. 2 at 175-76; Bressler Decl. ¶¶ 133-135, 158. Although Samsung

disputes this evidence, and argues that manufacturing choices reflect cost and utility concerns in

attempting to achieve the desired product design, this is a factual question not appropriate for

summary judgment.

### 3. Utilitarian Advantage

To the extent that the product design makes the product more useful to the consumer, this

factor may suggest functionality. *See Talking Rain*, 349 F.3d at 604. Apple contends that its

design choices ████████████████████████████████████████.

Opp'n at 2. Apple points to testimony from ████████████████████████████

███████████████████████. *See, e.g.* Bartlett Decl. Ex. 1 at 323-324; Ex. 2 at 63-64, 240-

241; Bressler Decl. ¶ 157. While Samsung disputes these arguments, there is at least a material

issue of fact as to whether the designs produced a utilitarian advantage. *See e.g.* Arnold Decl. Exs.

51, 11, 52; *Clicks Billiards*, 251 F.3d at 1262.

### 4. Alternative Designs

In the absence of other evidence of functionality, the existence of alternative designs

suggests the design choices are aesthetic rather than serving a functional purpose. *TrafFix*, 532

U.S. at 34. Apple presents expert testimony discussing the variety of configurations of design

elements for cell phone and tablet products. *See* Bressler Decl. ¶¶ 136-146, 152-53, 159-65, 167-

68.  Samsung also presents evidence on the existence of alternative designs but offers no support for the contention that each of these designs would be more expensive or difficult to manufacture or would otherwise be less useful to consumers.  *See* MSJ at 3 n.5; Arnold Decl. Exs. 66-67.  Thus, Apple has a raised a material issue of fact regarding the availability and existence of alternative designs.

In short, Apple has pointed to sufficient evidence in the record from which a reasonable juror could find that Apple's asserted trade dress is not functional under the Ninth Circuit's definition of utilitarian functionality.

### B.  Aesthetic Functionality

Samsung also argues that Apple's product designs are not protectable under the doctrine of aesthetic functionality.  In some cases, the appearance of the product contributes to the overall usefulness of the product.  *Qualitex*, 514 U.S. at 169 (citing *Inwood Lab., Inc. v. Ives Lab., Inc.*, 465 U.S. 844, 853 (1982) (noting the functionality of the color of a medical pill which serves to distinguish the type of medicine)).  Trademark does not protect designs if protection would place competitors at a "significant non-reputation-related disadvantage."  *TrafFix*, 532 U.S. at 33 (quotation marks omitted).

Some have suggested the Ninth Circuit has rejected the aesthetic functionality doctrine.  *See Clicks Billiards*, 251 F.3d at 1260 ("Nor has this circuit adopted the 'aesthetic functionality' theory, that is, the notion that a purely aesthetic feature can be functional."); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1382 n.3 (9th Cir. 1987) ("In this circuit, the 'aesthetic' functionality test has been limited, if not rejected, in favor of the 'utilitarian' functionality test.") (internal citations and quotation marks omitted).  However, recent case law suggests the "doctrine, albeit restricted over the years, retains some limited vitality."  *Au-Tomotive Gold*, 457 F.3d at 1070.

The fact that a feature "contributes to the consumer appeal and salability of the product" does not alone make that feature functional as a matter of law.  *Id*. at 1072 (quotation marks and citation omitted).  Instead, aesthetic functionality is a limited doctrine that applies "[w]hen goods are bought largely for their aesthetic value."  *Id*. at 1068 (citing Restatement of Torts § 742).  In that case a product's features "may be functional because they definitely contribute to that value

7

and thus aid the performance of an object for which the goods are intended." *Id.* Where the feature or design "is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality" and "unrelated to basic consumer demands in connection with the product" aesthetic functionality is not shown. *Id.* A few examples of products that meet the "aesthetic functionality" doctrine have been given over the years: a heart-shaped candy box, a distinctive printing typeface, or a distinctive blossom pattern on a set of china are all considered "aesthetically functional." *Id.*

Samsung argues that Apple's product design contributes to its market success rendering the design aesthetically functional. MSJ at 7. Apple argues that a product's design that contributes to sales does not alone determine aesthetic functionality. Opp'n at 4 (citing *Au-Tomotive Gold*, 457 F.3d at 1072). In any event, the parties' contradiction illustrates that a factual dispute regarding whether the trade dresses are aesthetically functional precludes summary judgment. *See* Bartlett Decl. Ex. 16 ¶ 8; Ex. 7. Especially in light of the Ninth Circuit's admonition that the aesthetic functionality concept is a limited doctrine, the Court finds that summary judgment on the factual issue of functionality is not appropriate given the factual record. Accordingly, Samsung's motion for summary judgment on Apple's trade dress claims based on functionality is DENIED.

### III.  TRADE DRESS DILUTION

Trademark dilution is caused by the use in commerce of a mark that "impairs the distinctiveness" or "harms the reputation" of a famous mark. 15 U.S.C. §1125(c). "Dilution refers to the whittling away of the value of a trademark when it's used to identify different products." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (citation and quotation marks omitted). While many dilution claims refer to trade names, the current statute explicitly applies dilution protection to trade dress. 15 U.S.C. §1125(c)(4). To establish a claim of trade dress dilution, a plaintiff must show that (1) the trade dress is "famous and distinctive," (2) the defendant is "making use of the [trade dress] in commerce," (3) the defendant's "use began after the [trade dress] became famous," and (4) the defendant's use of the trade dress is "likely to cause dilution by blurring" or by "tarnishment." *See Jade Toys, Inc. v. Mattel, Inc*., 518 F.3d 628, 634 (9th Cir.

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

1    2008).  Samsung only disputes, for the purposes of its motion for summary judgment, that Apple is

2    able to establish that its asserted trade dress is "famous."

3            A trademark dilution claim is limited to "famous marks," which are marks that are "widely

4    recognized by the general consuming public of the United States as a designation of source of the

5    goods or services of the mark's owner."  15 U.S.C. §1125(c)(2)(A).  The party asserting protection

6    bears the burden of showing the "claimed trade dress, taken as a whole, is not functional and is

7    famous."  15 U.S.C. §1125(c)(4)(A).  Moreover, if a product design includes registered marks, the

8    party must prove that the "unregistered matter, taken as a whole, is famous separate and apart

9    from" the registered marks.  15 U.S.C. §1125(c)(4)(B).

10           It is important to note that fame must already be established at the time the junior user

11   begins to use the mark; dilution can only occur "at any time after the owner's mark has become

12   famous."  15 U.S.C. §1125(c)(1).  Furthermore, the initial use of the mark by the junior user

13   demarcates the time at which both fame and consumer use must be established.  *Nissan Motor Co.*

14   *v. Nissan Computer Corp.*, 378 F.3d 1002, 1013 (9th Cir. 2004).  Thus, the relevant dates for each

15   of the asserted trade dresses are as follows.  In order to establish dilution of the iPhone trade dress,

16   which was announced in January 2007 and released in June 2007, Apple must show that its product

17   was "famous" as of November 2007, when Samsung released the Samsung F700, the accused

18   product.  FAC ¶ 80.  In order to establish dilution of the iPad trade dress, which was announced in

19   January 2010 and released in April 2010, Apple must show that its product was "famous" as of

20   November 2010, when Samsung released the Galaxy Tab, the accused product.  FAC ¶¶ 22, 82.

21   Finally, in order to establish dilution of the iPhone 3G trade dress, which was released in July

22   2008, Apple must show that its product was "famous" as of March 2010, when Samsung released

23   the Samsung Galaxy i9000, the accused product.  FAC ¶¶ 60, 81.

24           The Ninth Circuit has recognized that fame requires a high standard of consumer awareness

25   beyond the trademark owner's specific market—the mark should be a "household name" or "part

26   of the collective national consciousness."  *Thane Int., Inc., v. Trek Bicycle Corp.*, 305 F.3d 894,

27   911-12 (9th Cir. 2002) (overturned by statute on other grounds).  The Federal Trademark Dilution

28   Act provides four non-exclusive factors courts may consider to determine whether the mark has

United States District Court
For the Northern District of California

9

United States District Court
For the Northern District of California

1    achieved the relevant level of recognition: (1) duration, extent, and geographic reach of advertising

2    of the mark; (2) amount, volume, and geographic reach of sales under the mark; (3) extent of actual

3    recognition of the mark; and (4) whether the mark was registered on the federal register.  15 U.S.C.

4    §1125(c)(2)(A)(i)-(iv).  In other words, evidence of fame may be established by "surveys showing

5    that a large percentage of the general public recognizes the brand, press accounts about the

6    popularity of the brand, or pop-culture references involving the brand would provide evidence of

7    fame." *Thane*, 305 F.3d at 912.  Thus, whether a mark is "famous" is a factual matter.  *See e.g.*

8    *Jada Toy*s, 518 F.3d at 635 (a reasonable jury could find that "HOT WHEELS" was a famous mark

9    after thirty-three years of use, 350 million dollars spent on advertising, and sales of 3 billion units);

10   *cf. Nissan Motor Co.*, 378 F.3d at 1014 (material disputed issue of fact regarding whether "fame"

11   existed where Nissan Motor introduced evidence of 898 million dollars in sales over a five year

12   period and 65% consumer recognition at the point when another company introduced a Nissan

13   mark); *but see* McCarthy on Trademark §24:106 (Commentators urge a high standard for fame,

14   such as at least 75% consumer recognition in a survey response).

15          Apple has pointed to several facts in the record from which a reasonable juror could

16   conclude that the trade dresses are "famous."  Apple points to evidence in the record that it has

17   advertised the iPhone and iPad extensively: ███████ for the iPhone and ███████ for the

18   iPad through the end of 2011.  Bartlett Decl. Exs. 14 &15.  Moreover, its advertisements were

19   available in outlets with a general audience—such as *Sports Illustrated*, *Time*, *Newsweek*, prime

20   time television programming, at bus stops, in the subway, and on billboards.  *See* Bartlett Decl.

21   Exs. 12 at 25, 38, 42.  Moreover, Apple argues that its advertisements emphasize the product

22   designs, putting "'the product as hero, with the design elements in the center'" and demonstrating

23   "'how beautiful the product is.'"  Bartlett Exs. 12 at 164; 13 at 286.  Additionally, Apple points to

24   strong market sales: iPhone and iPad sales have generated more than ███████ in revenues the

25   last two years.  Musika Decl. Exs. C & E.  This evidence regarding Apple's general advertising

26   efforts could create an inference to a reasonable juror that the iPhone, iPad, and iPhone 3G are

27   famous.

28

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Although some of the evidence cited by Apple does not relate specifically to evidence of fame at the time of the release of the junior user's demarcation, Apple has pointed to other evidence in the record suggesting "fame" in the relevant time period. Specifically, Apple points to several news stories in mainstream news outlets touting the iPhone, iPhone 3G, and iPad products. For example, *Time* named the iPhone invention of the year in a November 1, 2007 publication, before the release of the Samsung F700. Winer Decl. Ex. 1 at nn.115. Other unsolicited media reports with photographs of the iPhone 3G and the iPad appeared in newspapers such as *The New York Times*, *The Washington Post*, *San Jose Mercury News*, and *San Francisco Chronicle*. Winer Decl. Ex. 1 at nn.119, 137. Finally, Apple has provided some evidence suggesting that it has consistently spent significant sums on the advertising of the iPhone and the iPad, even before the release of the accused Samsung devices. *See* Bartlett Decl. Exs. 14-15.

Although Samsung argues that Apple's survey precludes a finding of fame as a matter of law – because it shows that less than 60% of respondents were aware of the trade dress in the iPhone and iPad product designs claimed – such a conclusion is not necessarily warranted. The factors to be established for fame are non-exhaustive, so survey results are not required.

It is a close question as to whether a reasonable juror could find on the record before the Court that the designs of Apple's products (exclusive of the Apple name, logo, or home button) were famous at the time Samsung released its products. Nonetheless, viewing the evidence in the light most favorable to Apple, there appears to be enough evidence from which a reasonable jury could conclude that the iPhone, iPhone 3G, and iPad trade dresses were "famous" for establishing the dilution claim. Accordingly, Samsung's motion for summary judgment is DENIED.

**IV.     UTILITY PATENTS**

Apple asserts that Samsung's accused devices infringe on the asserted claims of the following patents-in-suit: (1) claim 19 of U.S. Patent No. 7,469,381 ("'381 Patent"); (2) claim 8 of U.S. Patent No. 7,844,915 ("'915 Patent"); (3) claim 8 of U.S. Patent No. 7,663,607 ("'607 Patent"); (4) claim 50 of U.S. Patent No. 7,864,163 ("'163 Patent").

**A.     The '381 Patent**

The '381 Patent, entitled "List Scrolling And Document Translation, Scaling, And Rotation On A Touch-Screen Display," discloses a method for displaying when a user has gone beyond the edge of an electronic document. '381 Patent Abstract. The application for the '381 Patent was filed on December 14, 2007, and the patent issued on December 23, 2008. The '381 Patent has been discussed at length in the Court's December 2, 2011 preliminary injunction order and in the Court's April 4, 2012 claim construction order. Therefore, the claimed invention of the snap-back feature will not be discussed at length here.

Apple has narrowed its trial claims and currently only asserts that the accused devices infringe claim 19 of the '381 Patent. Claim 19 of the '381 patent recites:

> 19. A device, comprising:
> a touch screen display;
> one or more processors;
> memory; and
> one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the programs including:
>
> > instructions for displaying a first portion of an electronic document;
> >
> > instructions for detecting a movement of an object on or near the touch screen display;
> >
> > instructions for translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion, in response to detecting the movement;
> >
> > instructions for displaying an area beyond an edge of the electronic document and displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion, in response to the edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display; and
> >
> > instructions for translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion, in response to detecting that the object is no longer on or near the touch screen display.

12

'381 Patent 36:58-37:22.  Samsung argues in its motion for summary judgment that claim 19 of the '381 Patent is invalid because it is anticipated by a program called Tablecloth.  Samsung argues that Tablecloth discloses each limitation in claim 19 of the '381 Patent.  MSJ at 20-21.  Tablecloth ran on a device called DiamondTouch.  The DiamondTouch table is "a touch-sensitive display that was originally developed at the Mitsubishi Electric Research Laboratories ("MERL") in 2001.  The Tablecloth application was created in January 2005, and left on display in the MERL lobby around the same time.  Bogue Decl. ¶¶ 8-9.  The Tablecloth demo was available and accessible to visitors of the MERL lobby.  *Id*.  Additionally, the Tablecloth application was demonstrated to customers in 2006.  *Id*. ¶ 12.

### 1.  Prior Art

First, Apple disputes whether Tablecloth may serve as a prior art reference.  Whether a reference may be considered prior art under § 102 is a question of law, based upon underlying factual determinations.  *See Shatterproof Glass Corp. v. Libbey-Owens Ford Co*., 758 F.2d 613, 622 (Fed. Cir. 1985); *Allied Colloids Inc. v. American Cyanamid Co*., 64 F.3d 1570, 1574 (Fed. Cir. 1995).  Samsung contends that Tablecloth is prior art under 102(a), (b), and (g)(2).

Samsung asserts that Tablecloth was invented and reduced to practice by January 2005 at Mitsubishi Electronic Research Laboratory (MERL) in Cambridge, MA, by Adam Bogue, a former MERL employee.  Bogue Decl. ¶¶6-8.  Apple claims a priority date of February 2005.  Mr. Bogue has declared that a device (DiamondTouch) on which Tablecloth was installed was available and demonstrated in the MERL office lobby in the U.S. in January 2005.  Bogue Decl. ¶ 9.  Furthermore, Mr. Bogue has declared that he demonstrated a Tablecloth program at trade shows in the U.S. since at least March 2006.  Bogue Decl. ¶ 12.

If Mr. Bogue's testimony on his public demonstrations of Tablecloth is credited, it might show that Tablecloth was known or used in a publicly accessible manner in the United States, prior to invention of the '381, qualifying as prior art under § 102(a).  *See* MPEP § 2132 (citing *Carella v. Starlight Archery*, 804 F.2d 135 (Fed. Cir. 1986) (stating that 102(a) knowledge or use must be in a manner accessible to the public).  Additionally, Mr. Bogue's testimony on his public demonstrations of Tablecloth suggests that Tablecloth may have been in public use or on sale more

13

United States District Court
For the Northern District of California

1   than one year prior to the filing of the '381 Patent's parent provisional application, qualifying as

2   prior art under § 102(b).  *See* 35 U.S.C. § 102(b) (stating that an invention is prior art if it was "in

3   public use or on sale in this country, more than one year prior to the date of application for

4   patent").  Finally, Mr. Bogue's testimony as to the date of Tablecloth's invention suggests that

5   Tablecloth was invented prior to the '381 Patent, and Mr. Bogue's testimony as to his public

6   demonstrations of Tablecloth suggests that Tablecloth was "not abandoned, suppressed, or

7   concealed," qualifying Tablecloth as prior art under 35 U.S.C. § 102(g)(2).

8           Other than Mr. Bogue's declaration, Samsung cites no evidence that Tablecloth was known

9   or used in a publicly accessible manner, or that Tablecloth was in public use or on sale.  Absent

10  corroboration, Mr. Bogue's declaration cannot serve to invalidate the '381 Patent.  *See Woodland*

11  *Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1373 (Fed. Cir. 1998) (holding that the

12  uncorroborated oral testimony of interested Flowertree witnesses as to 102(a) prior art was

13  insufficient evidence to invalidate the patent); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d

14  1354, 1368 (Fed. Cir. 1999) (holding that "corroboration is required of any witness whose

15  testimony alone is asserted to invalidate a patent, regardless of his or her level of interest."); *see*

16  *also Norian Corp. v. Stryker Corp.*, 252 F. Supp. 2d 945, 956-57 (N.D. Cal. 2002) aff'd in part,

17  rev'd in part on other grounds by 363 F.3d 1321 (Fed. Cir. 2004). ("*Finnigan* and the foregoing

18  precedents . . . mean that corroboration is required for prior inventorship, derivation and public use.

19  Whether corroboration over and above clear and convincing evidence should also be required for

20  other § 102 challenges depends upon a considered evaluation of each type of challenge."); 

21  *Netscape Communications Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 554 (E.D. Va. 2010)

22  (raising doubt about the applicability of *Finnegan*, but noting that "[u]ntil the Federal Circuit

23  further clarifies this issue, the safest course, in the circumstances, is to apply the *Finnigan*

24  corroboration requirement broadly").  With respect to the alleged public demonstrations of

25  Tablecloth in the MERL lobby and at trade shows, Mr. Bogue is a single, uncorroborated witness,

26  precisely the class of witnesses that may not establish priority under Federal Circuit precedent.

27  Because Mr. Bogue's testimony is the only evidence that Tablecloth was publicly accessible or in

28

14

1   public use and qualifies as prior art under § 102(a) or § 102(b), Samsung has not established

2   priority under § 102(a) or § 102(b).

3        However, Samsung has provided additional evidence regarding the invention date of

4   Tablecloth in order to establish priority under § 102(g)(2).  To establish priority under § 102(g)(2)

5   "[t]he challenger of the validity of a patent must establish prior invention by clear and convincing

6   evidence.  If the challenger does so, the burden of production shifts to the patentee to produce

7   evidence sufficient to create a genuine issue of material fact as to whether the prior inventor

8   abandoned, suppressed, or concealed the invention.  If the patentee carries this burden of

9   production, the challenger may rebut the evidence of abandonment, suppression, or concealment,

10  with clear and convincing evidence to the contrary."  *Dow Chemical Co. v. Astro-Valcour, Inc.*,

11  267 F.3d 1334, 1339 (Fed. Cir. 2001) (citing *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031,

12  1037-39 (Fed. Cir. 2001).

13       The two dates relevant to the Court's analysis under § 102(g)(2) are the date of the

14  invention of the '381 Patent and the date of the invention of Tablecloth.  The asserted invention

15  date of the '381 Patent is February 2005.  Corroboration for an invention date is required "where a

16  party seeks to show conception through the oral testimony of an inventor."  *Mahurkar v. C.R.*

17  *Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996) (citing *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed.

18  Cir. 1993)).  "This requirement arose out of a concern that inventors testifying in patent

19  infringement cases would be tempted to remember facts favorable to their case by the lure of

20  protecting their patent or defeating another's patent."  *Mahurkar*, 79 F.3d at 1577 (citing *Eibel*

21  *Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 60 (1923)).  Here, Apple relies

22  mainly on the deposition testimony of Bas Ording, the inventor of the '381 Patent.  Opp'n at 19;

23  Bartlett Decl. Ex. 56 at 129-130.  However, it appears from the deposition testimony that Mr.

24  Ording has produced an exhibit which shows the file date for the program is February 11, 2005.

25  *See id.*  Therefore, Mr. Ording's testimony is not uncorroborated, and Apple has at least established

26  a dispute of material fact regarding the invention date of the '381 Patent.

27       There appears to be a dispute of material fact regarding the invention date of Tablecloth.

28  Mr. Bogue declares that Tablecloth was created in January 2005 – prior to the '381 Patent's alleged

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    February 2005 conception date.  Moreover, this priority date is corroborated by the date stamp on

2    the program used to launch the Tablecloth application.  Trac Decl. ¶ 28; Ex. 25 (showing the date

3    stamp as to when Tablecloth_27.htm was last updated as January 2005).

4          At the hearing on June 21, 2012, Apple introduced a new expert declaration which noted

5    that the Tablecloth_27.swf application was last updated in June 2005.  *See* Balakrishnan Suppl.

6    Decl.  Apple objects to Samsung's date stamp evidence corroborating the January 2005 invention

7    date as "inaccurate and extremely misleading."  *See* Apple's Objection to Reply Evidence.

8    Although the Court does not weigh the evidence in reaching its ultimate decision on summary

9    judgment, for purposes of Apple's Objection, the Court notes that evidence as to when

10   Tablecloth_27.swf reached its final form does not necessarily reveal when Tablecloth was

11   conceived.  The fact that application launcher Tablecloth.htm existed in January 2005 is still

12   probative as to whether Tablecloth may have been conceived by that date.[2]  At the very least, a

13   genuine issue of material fact exists regarding when Tablecloth was invented and thus, whether it

14   meets the priority requirements of § 102(g)(2).

### 2.  Anticipation

16         Even if Tablecloth is a prior art reference, Apple also argues that the program does not

17   disclose every limitation in claim 19 of the '381 Patent.  A patent claim is invalid by reason of

18   anticipation under 35 U.S.C. § 102, "if each and every limitation is found either expressly or

19   inherently in a single prior art reference."  *Bristol-Myers Squibb Co. v Ben Venue Labs., Inc.*, 246

20   F.3d 1368, 1374 (Fed. Cir. 2001).   Whether a patent is anticipated is a question of fact.  *Green*

21   *Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1297 (Fed. Cir. 2010).  In

22   assessing whether a patent claim is anticipated at summary judgment, the evidence is viewed

23   "through the prism of the evidentiary standard of proof that would pertain at a trial on the merits."

24   *SRAM Corp. v. AD-II Eng'g, Inc*., 465 F.3d 1351, 1357 (Fed. Cir. 2006).  Because patents are

25   presumed valid, "a moving party seeking to invalidate a patent at summary judgment must submit

26

27   ─────────────────────
     [2] The Court does not agree that the date stamp is "inaccurate and extremely misleading" in light of
28   the discussion above.  Apple may raise these issues in cross-examination.  Therefore, the Court
     DENIES Apple's Objection to Reply Evidence.

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find

2   otherwise." *Id.*

3       Samsung provides the expert declaration from Dr. van Dam, as well as an accompanying

4   claim chart and videos, to establish that Tablecloth discloses each limitation of claim 19 of the '381

5   Patent. *See* van Dam Decl. ¶¶ 71-107. Apple argues that three limitations are not met by the

6   Tablecloth: (1) Tablecloth did not disclose a touch screen display; (2) Tablecloth did not disclose

7   instructions for displaying an area beyond the edge of the electronic document . . . in response to

8   the edge of the electronic document being reached;" and (3) instructions for translating the

9   electronic document in a second direction until the area beyond the edge of the electronic

10  document is no longer displayed." *See* Opp'n at 20.

11      Based on the testimony of Apple's expert, it does appear that a triable issue of fact remains

12  regarding whether Tablecloth discloses all elements of claim 19. Tablecloth utilized a "touch

13  sensitive table" with an image projected on to it. Balakrishnan Decl. ¶ 76. It is a question for the

14  jury as to whether the DiamondTouch's touch sensitive table, which included an apparatus for

15  projecting an image onto a touch sensor, reads on to the limitation of a "touch screen display." *Id.*

16  Thus, whether Tablecloth anticipates every limitation of claim 19 is a fact question inappropriate

17  for summary judgment.[3]

18      Apple has identified several issues of material fact regarding whether Tablecloth anticipates

19  claim 19 of the '381 Patent. Therefore, Samsung's motion for summary judgment of invalidity as

20  to claim 19 of the '381 Patent is DENIED.

21      **B.   The '915 Patent**

22      The '915 Patent, entitled "Application Programming Interfaces For Scrolling Operations,"

23  discloses a method for operating through an application programming interface (API) that provides

24  scrolling operations. '915 Patent, Abstract. Apple claims that Samsung's accused products

25  infringe independent claim 8 of the '915 Patent. Samsung claims that it is entitled to summary

26  judgment of non-infringement because one of the limitations does not read on to the accused

---

[3] Apple raises two other arguments that also plausibly mean this claim should be sent to a jury.
Because the Court has found material issues of disputed fact exist with respect to this claim, the
Court need not reach these additional issues raised by Apple.

27

28

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

devices.  MSJ at 17-18.  At issue in this summary judgment motion is the following claim

limitation in independent claim 8:

> determining whether the *event object invokes* a scroll or gesture operation
> by distinguishing between a single input point applied to the touch-
> sensitive display that is interpreted as the scroll operation and two or more
> input points applied to the touch-sensitive display that are interpreted as
> the gesture operation;

'915 Patent at 24:5-11 (emphasis added).  Specifically, Samsung argues that Android's "event

object" in the accused devices does not "invoke a scroll or gesture operation," as is required by the

claim limitation identified above.  Because Samsung argues that the accused devices do not

practice the above referenced limitation, it is entitled to summary judgment of non-infringement.

Summary judgment of non-infringement is a two-step analysis.  "First, the claims of the

patent must be construed to determine their scope.  Second, a determination must be made as to

whether the properly construed claims read on the accused device."  *Pitney Bowes, Inc. v. Hewlett-

Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (internal citation omitted).  "[S]ummary

judgment of non-infringement can only be granted if, after viewing the alleged facts in the light

most favorable to the non-movant, there is no genuine issue whether the accused device is

encompassed by the claims."  *Id*. at 1304.

### 1.  Claim Construction

Samsung argues that the disputed term "the event object invokes a scroll or gesture

operation" requires that "the object calls a method or function."  In other words, under Samsung's

construction, the "event object" must directly call a function without intervening steps.  *See* MSJ at

17.  In contrast, Apple argues that "invoke" merely means that the event object "causes" or "causes

a procedure to be carried out" and includes no requirement that the event object calls the function

without intervening steps.

In construing disputed terms, the Court looks first to the claims themselves, read in context,

for "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to

which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

381 F.3d 1111, 1115 (Fed. Cir. 2004)). Generally, the words of a claim should be given their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal quotation marks and citations omitted). In order to construe the meaning of a disputed term, courts generally begin by examining intrinsic evidence (including the claims, the specification, and, if in evidence, the prosecution history) before turning to extrinsic evidence (*e.g.*, expert testimony, dictionaries, and treatises). *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996); *see also Phillips*, 415 F.3d at 1324.

The claim language itself does not define the term "invoke," nor does the claim language explicitly require that the event object call a function without intervening steps. Indeed, if anything, the claim language supports Apple's construction that the event object need not call a function. The next claim limitation requires "issuing at least one scroll call or gesture call based on invoking the scroll or gesture operation." '915 Patent at 24:12-13. This claim limitation would arguably be redundant if the Court were to adopt Samsung's construction. If the term "invokes" means "call a function," then the next claim limitation would read: "issuing at least one scroll or gesture call based on calling the scroll or gesture operation."

The specification further supports Apple's construction. The claims must be read "in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996). The specification is "'always highly relevant'" and "'[u]sually [] dispositive; it is the single best guide to the meaning of a disputed term,'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). Apple points to several parts of the specification that undermine Samsung's construction. For example, the specification refers to "user input invokes a scroll" which means that the user input causes a scroll function to be carried out. *See* '915 Patent at 10:66-11:2; 22:62-64. Based on the use of "invoke" in the specification, the Court is persuaded by Apple's expert's opinion that "One skilled in the art would understand that 'user input' cannot itself 'call' scroll or gesture operation code, but instead causes the scroll or gesture operation to occur via intervening hardware detection and software steps." Singh Decl. ¶ 51.

19

United States District Court
For the Northern District of California

1    Additionally, the specification also describes how the event object may cause a scroll or

2  gesture operation to execute after multiple intervening steps.  For example, the specification

3  discloses "[a] window server receives the event object and determines whether the event object is a

4  gesture object.  If the window server determines that a gesture event object has been received, then

5  user interface software issues or transfers the handle gesture call at block 1302 to a software

6  application associated with a view." '915 Patent at 12:32-37.  Thus, the specification supports

7  Apple's construction that the term "invoke" means "causes" and that the event object is not

8  required to call a function without intervening steps.

9    In support of its construction, Samsung points to several sources: inventor deposition

10  testimony, dictionary definitions, and expert declarations.  MSJ at 17-18.  The Court is

11  unpersuaded by these sources for two reasons.  First, as a legal matter, these types of extrinsic

12  evidence are "less significant than the intrinsic record" and "less reliable than the patent and its

13  prosecution history in determining how to read claim terms."  *Phillips*, 415 F.3d at 1318.  *Id.* at

14  1317-18 (internal quotation marks and citation omitted).

15    Second, at best, the inventor and expert testimony and dictionary definitions of "invoke"

16  are ambiguous and do not strongly support Samsung's construction.  One of the named inventors

17  testified that invoke "*is often used* as a synonym for calling a function."  Gray Ex. 9 at 79-80.  The

18  other named inventor testified that "an example of invoking something would be . . . causing that

19  code to run."  Gray Ex. 8 at 95-96.  Thus, the inventors merely confirm that Samsung's

20  construction is possible; they do not clearly define "event object invokes" in the way that Samsung

21  proposes.  Similarly, it does not appear that Dr. Singh, Apple's expert, testified that "invoke" here

22  must mean that the event object calls a function.  Instead, Dr. Singh testified that the meaning of

23  "invokes" depends on the context.  *See* Gray Decl. Ex. 7 at 313-319.  Finally, both parties have

24  offered dictionary definitions that could plausibly support their proposed constructions.  *See* Gray

25  Decl. Ex. 16; Singh Decl. Exs. 9-10.  As these extrinsic sources are not persuasive in construing the

26  disputed term, the Court relies on the intrinsic evidence in construing the disputed claim term.

27    Accordingly, the Court construes the term **"invokes" as "causes" or "causes a procedure

28  to be carried out."**  In other words, the event object is not required to directly call a function.

20

## 2.   Non-Infringement

After the court has defined the disputed claim term, "the task of determining whether the construed claim reads on the accused product is for the finder of fact." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998).  The Federal Circuit has explained that the infringement question collapses into one of claim construction only where the parties agree that the accused product infringes under one claim construction and that the accused product does not infringe under an alternative claim construction.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1302 (Fed. Cir. 2011).  Samsung argues that even if the Court adopts Apple's construction for "invoke" there is no infringement because the event object does not cause a scroll or gesture operation to occur.  According to Samsung, the event object identified by Apple is "simply a container that holds touch information."  Reply at 10.

Apple has identified sufficient evidence in the record from which a jury could conclude that literal infringement has occurred.  Apple's expert has pointed to evidence that the "event object invokes a scroll or gesture operation," and thus that the accused devices infringe.  *See* Singh Decl. ¶¶ 45-47.  Apple has identified a material factual dispute regarding whether the event object causes a scroll or gesture operation, and thus whether the accused devices infringe the asserted claim. *Compare* Singh Decl. ¶¶ 56-59, *with* Reply at 10 (citing Gray Decl. ¶ 34).

Moreover, even if Apple is not able to establish literal infringement, Apple has pointed to evidence from which a jury could conclude that Samsung's accused devices infringe under the doctrine of equivalents.  To prove infringement under the doctrine of equivalents, a plaintiff must show that the allegedly infringing device and claimed limitation perform "substantially the same function in substantially the same way to obtain substantially the same result."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 38 (1997); *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1317 (Fed. Cir. 2003).  Courts apply the function-way-result analysis to each limitation of a claim, and there can be no infringement "if even one limitation of a claim or its equivalent is not present in the accused device."  *Lockheed Martin*, 324 F.3d at 1321.

Apple disclosed to Samsung in its original infringement contentions in August 2011 that it intended to proceed based on a doctrine of equivalents theory.  *See* Bartlett Decl. Ex. 80 at 4.

21

1   Additionally, Apple cites to the record to support infringement under the doctrine of equivalents

2   for the '915 Patent.  Apple's expert identified the function, way, and result to prove there is no

3   substantial difference between the accused devices and the asserted claims.  Opp'n at 15.  The

4   expert report analyzes the claim language and the code of the accused devices in support of his

5   conclusion regarding the doctrine of equivalents.  Singh Decl. ¶¶ 67-73.  Thus, Apple has identified

6   evidence in the record from which a reasonable jury could find infringement under the doctrine of

7   equivalents.  Accordingly, Samsung's motion for summary judgment is DENIED as to non-

8   infringement of claim 8 of the '915 Patent.

9   **C.   The '607 Patent**

10       The '607 Patent, entitled "Multipoint Touchscreen," discloses a "touch panel having a

11   transparent capacitive sensing medium configured to detect multiple touches or near touches that

12   occur at the same time and at distinct locations in the plane of the touch panel."  '607 Patent,

13   Abstract.  The application for the '607 Patent was filed on May 6, 2004, and the patent issued on

14   February 16, 2010.  The '607 Patent is directed toward a planar touchscreen with the ability to

15   detect multiple touches that occur simultaneously at different locations and to generate distinct

16   signals corresponding to each of the multiple touches.  '607 Patent, Abstract.  The system disclosed

17   in the '607 Patent relies on a two-layer, "transparent capacitive sensing medium."  '607 Patent,

18   21:35-36.  In other words, the '607 Patent discloses a clear screen embedded with two layers of

19   conducting lines.  When a user touches the screen, the capacitance between the two layers of

20   conducting lines changes.  By measuring changes in charge coupling between the conducting lines

21   in the two layers, the system disclosed in the '607 Patent can detect the presence and location of

22   multiple touches simultaneously.

23       Apple accuses Samsung's mobile touchscreen devices of infringing claim 8 of the '607

24   Patent.  Claim 8 is a dependent claim, depending from claim 7, which itself is a dependent claim,

25   depending from claim 1.  Claim 1 of the '607 Patent recites:

26           A touch panel comprising a transparent capacitive sensing medium configured to
27           detect multiple touches or near touches that occur at a same time and at distinct
             locations in a plane of the touch panel and to produce distinct signals representative
28

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

of a location of the touches on the plane of the touch panel for each of the multiple touches, wherein the transparent capacitive sensing medium comprises:

> a first layer having a plurality of transparent first conductive lines that are electrically isolated from one another; and

> a second layer spatially separated from the first layer and having a plurality of transparent second conductive lines that are electrically isolated from one another, the second conductive lines being positions transverse to the first conductive lines, the intersection of transverse lines being positioned at different locations in the plane of the touch panel, each of the second conductive lines being operatively coupled to capacitive monitoring circuitry;

> wherein the capacitive monitoring circuitry is configured to detect changes in charge coupling between the first conductive lines and the second conductive lines.

'607 Patent, 21:35-55. Claim 7 of the '607 Patent recites:

> The touch panel as recited in claim 1, wherein the capacitive sensing medium is a mutual capacitance sensing medium.

'607 Patent, 22:14-16. Claim 8 of the '607 Patent recites:

> The touch panel as recited in claim 7, further comprising a virtual ground charge amplifier coupled to the touch panel for detecting the touches on the touch panel.

'607 Patent, 22:17-19. Claims 1 and 7 of the '607 Patent have previously been the subject of litigation, and were found to be invalid as obvious by both an International Trade Commission ("ITC") Administrative Law Judge ("ALJ") and the ITC. Declaration of Brian Von Herzen ("Von Herzen Decl.") ¶¶ 22-27. Claim 8, however, was not asserted in that litigation. *Id.*

A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). "Obviousness is a question of law based on underlying findings of fact." *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009). The underlying factual inquiries are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others.

United States District Court
For the Northern District of California

1    *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) (citing *Graham v. John Deere Co.*, 383

2    U.S. 1, 17-18 (1966)); *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1332 (Fed. Cir. 2012).

3    Under this framework, "a patent composed of several elements is not proved obvious

4    merely by demonstrating that each of its elements was, independently, known in the prior art."

5    *KSR*, 550 U.S. at 418.  Because it is possible that the claimed invention combines known building

6    blocks in some novel way "it can be important [to a showing of obviousness] to identify a reason

7    that would have prompted a person of ordinary skill in the relevant field to combine the elements in

8    the way the claimed new invention does."  *Id.*  Nevertheless, "when a patent 'simply arranges old

9    elements with each performing the same function it has been known to perform' and yields no

10   more than one would expect from such an arrangement, the combination is obvious."  *Id.* at 417

11   (quoting *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282 (1976)).

12   Samsung argues that, as a matter of law, claim 8 of the '607 Patent is obvious in light of the

13   prior art.  MSJ at 22.  In Samsung's view, claim 8 is nothing more than a combination of two

14   elements, the device disclosed in claim 7 and a virtual ground charge amplifier, each of which was

15   independently obvious or well-known.  *See id.*  Claim 7, Samsung points out, has already been

16   found to be obvious by ITC.  *Id.*  Indeed, both the ALJ and the ITC agreed on the obviousness of

17   claim 7.  Von Herzen Decl. ¶¶ 22-27.  Samsung cites two prior art references considered by the

18   ITC, U.S. Patent No. 7,372,455 ("Perski") and the Smartskin paper ("Smartskin"), to demonstrate

19   the obviousness of claim 7.

20   Samsung also identifies several prior art references that it claims lead to the inevitable

21   conclusion that the additional limitation in claim 8 of a virtual ground charge amplifier circuit

22   would have been obvious to one of ordinary skill in the art at the time of the invention of the '607

23   Patent.  Specifically, Samsung relies on three patents (Blonder, Gerpheide '658, and Gerpheide

24   '017), all in existence over a decade before the filing of the '607 Patent, that disclose the use of a

25   charge amplifier in the field of capacitive touch sensing as a "capacitive measuring element."  Van

26   Herzen Decl. ¶¶ 34-49; MSJ at 23.

27   Judge Grewal recently granted Apple's motion to strike the Blonder reference because it

28   was not timely disclosed.  Order Granting in part, Denying in part Motions to Strike at 5, ECF No.

United States District Court
For the Northern District of California

24

United States District Court
For the Northern District of California

1    1144.  Therefore, the Blonder reference will not be admissible at trial, and the Court will not

2    consider it on this motion for summary judgment.[4]  Fed. R. Civ. P. 56(e).  Apple also argues that

3    all of the other prior art Samsung cites to attack the additional limitations of claim 8 (except

4    Smartskin and Perski) should be stricken because none was timely disclosed in Von Herzen's

5    report or in Samsung's invalidity contentions.  *See* Opp'n at 21; Kramer Decl. ¶¶ 1-10.  The Court

6    notes that the Gerpheide '658 and Gerpheide '017 references were both disclosed and charted in

7    Samsung's invalidity contentions with respect to their obviousness arguments in claim 8.  Von

8    Herzen Decl. ¶ 52; Ex. 15 at 10-11.

9         While Samsung lays out a persuasive argument in favor of finding claim 8 of the '607

10   Patent to be invalid, underlying factual disputes preclude resolving this dispute as a matter of law.

11   The parties' briefings have made clear that there remains a genuine dispute between Apple's and

12   Samsung's experts as to what is taught by the prior art, and in particular whether or not the prior art

13   teaches toward or away from the use of a virtual ground charge amplifier in combination with the

14   device described in claim 7.  Samsung's expert, for instance, claims that the Perski reference

15   "provides the motivation for one of ordinary skill in the art to use the [virtual ground charge]

16   amplifier configuration" in combination with the apparatus of claim 7.  Von Herzen Decl. ¶ 77.

17   Apple's expert argues, however, that all of "the prior art either teaches away from the virtual

18   ground charge amplifier . . . or uses a similar circuit in a completely different way that does not

19   teach towards the innovation described and claimed in the '607 Patent."  Declaration of Michael

20   Maharbiz ("Maharbiz Decl.") ¶ 44.  Because what is taught by a prior art, *Ashland Oil Inc. v. Delta*

21   *Resins & Refracs. Inc.*, 776 F.2d 281 (Fed. Cir. 1985), and whether a prior art teaches away from a

22   claimed invention, *In re Harris*, 409 F.3d 1339 (Fed. Cir. 2005), are both questions of fact, the

23   disagreement between the two experts constitutes a factual dispute, inappropriate for resolution at

24   summary judgment.  Accordingly, since Apple has demonstrated the existence of a genuine issue

25   of material fact, Samsung's motion for summary judgment is DENIED.

26   _____

27   [4]  Even if Blonder were to be considered, the Court would still find a genuine issue of material fact.
Samsung's expert claims that Blonder teaches using a virtual ground charge amplifier, identical to
the one described in the '607 Patent, in touch sensors.  Von Herzen Decl. ¶¶ 45-48.  Apple's expert

28   argues that "the instrumentation in the Blonder '041 Patent system simply teaches away from doing
this."  Maharbiz Decl. ¶ 44.

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

**D.     The '163 Patent**

The '163 Patent, entitled "Portable Electronic Device, Method, and Graphical User Interface For Displaying Structured Electronic Documents," discloses a method for displaying a structured electronic document on a touch screen display, detecting a gesture at a location on the display of the document, and enlarging and centering the selected portion of the structured electronic document.  *See* '163 Patent, Abstract.  The application for the '163 Patent was filed on September 4, 2007, and the patent issued on January 4, 2011.  Apple asserts that Samsung's accused devices infringe independent claim 50 of the '163 Patent.  Samsung moves for summary judgment on invalidity of claim 50 arguing that it is anticipated by the "Launch Tile System."  MSJ at 18-20.  Independent claim 50 recites:

> 50. A portable electronic device, comprising:
> a touch screen display;
> one or more processors;
> memory; and
>
> one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including:
>
> instructions for displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content;
>
> instructions for detecting a first gesture at a location on the displayed portion of the structured electronic document;
>
> instructions for determining a first box in the plurality of boxes at the location of the first gesture;
>
> instructions for enlarging and translating the structured electronic document so that the first box is substantially centered on the touch screen display;
>
> instruction for, while the first box is enlarged, a second gesture is detected on a second box other than the first box; and
>
> instructions for, in response to detecting the second gesture, the structured electronic document is translated so that the second box is substantially centered on the touch screen display.

'163 Patent at 29:14-40.

A patent claim is invalid by reason of anticipation under 35 U.S.C. § 102, "if each and every limitation is found either expressly or inherently in a single prior art reference."  *Bristol-*

*Myers Squibb Co.*, 246 F.3d at 1373.   Whether a patent is anticipated is a question of fact.  *Green Edge Enterprises, LLC*, 620 F.3d at 1297.  In assessing whether a patent claim is anticipated at summary judgment, the evidence is viewed "through the prism of the evidentiary standard of proof that would pertain at a trial on the merits."  *SRAM Corp.*, 465 F.3d at 1357.  Because patents are presumed valid, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise."  *Id*.

The Court previously discussed LaunchTile, the allegedly anticipatory reference,[5] in the December 2, 2011 preliminary injunction order.  In sum, LaunchTile is a program that provides a one-handed solution for interaction on a stylus-free touch screen mobile device.  The LaunchTile Program displayed an interactive information space called "the zoomspace."  Bederson Decl. ¶10.  The zoomspace consisted of 36 "tiles," each representing an application.  At the outermost level of zoom – "the World View" – the zoomspace is divided into 9 areas of 4 tiles each.  *Id*.  A user has the option to zoom in on one of the 9 4-tile Zones ("Zone View").  *Id*. ¶¶ 11.  From the Zone View, the user can further zoom in to an "Application View."  *Id.*

Apple argues that Samsung has not established that LaunchTile discloses several limitations in claim 50.  First, there exists a dispute as to whether the zoomspace disclosed in LaunchTile is in fact a "structured electronic document."  Although Samsung attempts to frame the issue as one of claim construction, the issue appears to be a factual dispute regarding what exactly the "zoomspace" is.  *See* Reply at 10.  For example, even adopting Samsung's expert's proposed definition of a "structured electronic document" as a "two dimensional information space containing embedded coding that provides some meaning or 'structure' to the document," Apple has identified a dispute as to whether LaunchTile meets the definition.  *See* Gray Decl. ¶ 60.  For example, Apple's expert opines that LaunchTile arranges a set of conceptually independent application tiles onto a grid for display and that the tiles lack a "conceptual relationship or

---

[5]   Dr. Bederson developed LaunchTile no later than mid-2004 and presented a paper on the project at the April 2005 ACM Conference on Human Factors in Computing Systems.  Bederson Decl. ¶ 6.  Apple does not appear to contest that LaunchTile may be considered prior art pursuant to 35 U.S.C. § 102.

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

commonality in the information." Singh Decl. ¶¶ 94-95. There is a factual dispute as to whether LaunchTile's zoomspace contains sufficient "structure" to meet the limitation of a "structured electronic document."[6]

Apple has identified a material issue of fact regarding whether LaunchTile discloses every element of claim 50 of the '163 Patent. Therefore, Samsung's motion for summary judgment of invalidity as to claim 50 of the '163 Patent is DENIED.

## V.      DESIGN PATENTS

Samsung moves for summary judgment on all of the design patent claims asserted by Apple. Samsung argues that each of the asserted patents is invalid because each patent is obvious or anticipated in light of prior art. Additionally, Samsung argues that the D'334 Patent is invalid based on the on-sale bar.

Design patents are presumed valid, absent clear and convincing evidence presented by Samsung to the contrary. *See Aero Products Int'l., Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1015 (Fed. Cir. 2006). In its recent opinion, the Federal Circuit reiterated the proper analysis for obviousness of design patents. "To determine whether 'one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design, the finder of fact must employ a two step process." *Apple, Inc. v. Samsung Electronics Co. Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012). First, "one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design." *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (internal quotations and citations omitted). Second, after a primary reference is found, other secondary references "may be used to modify it," but only if "they are so related to the primary reference that the

---

[6] Apple raises two other arguments that also plausibly mean this claim should be sent to a jury: (1) LaunchTile does not meet the limitation of "enlarging and translating the structured electronic document so that the first box is substantially centered on the touch screen display" because the content of the "first box" changes; and (2) LaunchTile does not meet the limitation of "while the first box is enlarged, a second gesture is detected on a second box other than the first box." Apple argues that the "second box" in LaunchTile is not "other than the first box" because the second box is "within the first box." Because the Court has found a material issue of disputed fact exists as to another claim limitation, the Court need not reach these additional issues raised by Apple.

28

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

appearance of certain ornamental features in one would suggest the application of those features to the other." *Id.* (internal quotation marks, citations, and alterations omitted).

"Once that piece of prior art has been constructed" by one skilled in the art, whether by "combin[ing] earlier references . . . or [by] modify[ing] a single prior art reference," only then does "obviousness, like anticipation, require[] application of the ordinary observer test," asking whether an ordinary observer would find the patented design substantially the same as the hypothetical prior art reference. *International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41 (Fed. Cir. 2009). Additionally, in order to avoid the trap of hindsight bias, one must also take into account "secondary considerations" such as "commercial success, long felt but unsolved needs, [and] failure of others" in order to determine whether the subject matter sought to be patented would have been obvious to one of ordinary skill in the art at the time of invention." *KSR*, 550 U.S. at 406 (citing *Graham*, 383 U.S. at 17-18); *see also Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1288 (Fed. Cir. 2002) (secondary considerations apply to design patents).

### A.     The D'087 Patent

| Apple's D'087 Patent | Sharp JPN No. 1241638 |
|---|---|
|  | |

Several material factual disputes preclude summary judgment in favor of Samsung on the issue of whether the D'087 is obvious in light of prior art.

First, *the finder of fact* is tasked with identifying a primary reference, "the design characteristics of which are basically the same as the claimed design." *Apple*, 678 F.3d at 1329 (internal citations omitted). Samsung argues that Japanese Patent 1241638 (the "'638 Patent") may serve as a primary reference for purposes of determining obviousness. *See* MSJ at 11. As the

Federal Circuit found, the '638 Patent is not properly an anticipatory reference because the D'087

Patent claims an entirely flat front face with a bezel that wraps around the sides.  In contrast, the

'638 Patent contains an arched, convex front, which distinguishes it from the D'087 Patent.  *See*

*Apple*, 678 F.3d at 1326.  While the '638 Patent is not an anticipatory reference, the '638 Patent

might serve as a primary reference for the obviousness analysis.  However, the '638 is only a

primary reference if it embodies the same "overall appearance and aesthetic appeal" as the D'087

Patent.  *See In re Rosen*, 673 F.2d 388, 391 (Fed. Cir. 1982).  Based on the designs, it is a factual

question for the jury to determine whether the convex front face so alters the visual appearance of

the design that the '638 Patent has a different overall appearance and aesthetic appeal.  If a jury

finds the visual appearance of the '638 Patent is not basically the same as the D'087 Patent, the

inquiry stops, and the patented design is not obvious.  *See Durling*, 101 F.3d at 103-105.

Additionally, Samsung argues that a designer of ordinary skill in the art would have

combined other prior art references, including the Bluebird Pidion, the JP'221, and the iRiver U10,

which would have rendered the D'087 Patent obvious.  MSJ at 12-13.  As an initial matter, the

Court notes that Judge Grewal recently ordered that these references be excluded because Samsung

failed to timely disclose the prior art or invalidity theory.  *See* Order Granting in part and Denying

in part at 4-5, ECF No. 1144.  On this basis alone, summary judgment in favor of Samsung is not

proper because the evidence in support of Samsung's obviousness argument will not be admissible

at trial.  *See* Fed. R. Civ. P. 56(e); *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 385 (9th Cir.

2010) ("A district court's ruling on a motion for summary judgment may only be based on

admissible evidence.").

In any event, even if the references were admissible at trial, a material factual dispute

would still preclude summary judgment.  Although the Pidion reference discloses a bezel around

the front face of the design, Apple has provided evidence that the Pidion and the '638 Patent are

not so related in visual appearance that one of ordinary skill in the art would have looked to

combine them.  *See* Bressler Decl. ¶¶ 66-73.  Similarly, Apple has provided evidence that the

JP'221, the U10, and the '638 Patent are not so related in visual appearance that one of ordinary

skill in the art would have looked to combine them.  *See* Bressler Decl. ¶¶ 61-65, 75-76.  Thus,

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

Apple has raised a triable issue of fact as to whether the proposed secondary prior art references taught the design elements such that a designer of ordinary skill would have altered the '638 Patent into the claimed design.  *See In re Borden*, 90 F.3d 1570, 1576 (Fed. Cir. 1996) ("The question of what the prior art teaches is a question of fact.").

Finally, Apple has pointed to evidence in the record of secondary considerations that are probative evidence of non-obviousness of a design patent.  *See Crocs, Inc. v. International Trade Comm'n*, 598 F.3d 1294, 1310-11 (Fed. Cir. 2010).  Apple has provided evidence of praise for the Apple iPhone, the commercial embodiment of the D'087 and D'677 Patents.  *See* Bartlett Decl. Ex. 26 ("As you'd expect of Apple, the iPhone is gorgeous.  Its face is shiny black, rimmed by mirror-finish stainless steel.").  Apple has also provided evidence of the commercial success of the iPhone, as well as evidence that Samsung took steps to copy the iPhone design.  Musika Decl. ¶ 6; Winer Decl. Ex. 1 ¶¶ 65, 82-85; Bressler Decl. ¶¶ 91-104.  While Samsung contests whether the commercial success is tied to the D'087 and D'677 Patents, Reply at 6, Apple has identified evidence from which a reasonable juror could find the necessary nexus between the asserted patents and the secondary considerations.  Therefore, Apple has raised a genuine issue of material fact which precludes resolution on summary judgment of the question of the existence of these secondary considerations.  *See Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 886 (Fed. Cir. 1998).

### B.     The D'677 Patent

| Apple's D'677 Patent | Sharp JPN No. 1241638 |
|---|---|
|  |  |

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

1      For many of the same reasons identified above with respect to the D'087 Patent, several

2    material factual disputes preclude summary judgment in favor of Samsung on the issue of whether

3    the D'677 is obvious in light of prior art.  As this Court already found, the D'677 Patent is

4    substantially the same as the D'087 Patent, and discloses an additional element of a black

5    transparent and glass-like front surface.

6      First, whether Samsung has properly identified a primary reference will be a question for

7    the finder of fact.  Samsung has identified several prior art references that it believes could serve as

8    a "primary reference" including the '638 Patent, the iRiver U10 MP3 player, and the Nokia

9    Fingerprint.  *See* MSJ at 11-12.  It is far from clear, however, that any of these references may

10   properly serve as a "primary reference."  As previously explained, the '638 Patent discloses an

11   arched, convex front, while the D'677 Patent claims a smooth, black, flat surface.   It will be for the

12   jury to determine whether the '638 Patent embodies the same "overall appearance and aesthetic

13   appeal" as the D'677 Patent.  *See In re Rosen*, 673 F.2d at 391.  Based on the designs, a reasonable

14   jury could find that the convex front face so alters the overall visual appearance of the design that

15   the '638 Patent does not have "basically the same visual impression."

16   Moreover, the Court notes that Judge Grewal recently ordered that the iRiver U10 and the

17   Nokia Fingerprint be excluded from trial because Samsung failed to timely disclose the prior art or

18   invalidity theory.  *See* Order Granting in part and Denying in part at 4-5, ECF No. 1144.  On this

19   basis alone, summary judgment in favor of Samsung is not proper because the evidence in support

20   of Samsung's obviousness argument will not be admissible at trial.  *See* Fed. R. Civ. P. 56(e); *In re*

21   *Oracle Corp. Securities Litig*., 627 F.3d at 385.

22   In any event, even if the iRiver U10 and the Nokia Fingerprint were admissible, a material

23   factual dispute would still preclude summary judgment.  The Nokia Fingerprint design has a

24   relatively long, narrow front display, with more deeply rounded corners, and an off center display.

25   Additionally, it is not clear from the reproduced image that the Fingerprint discloses a transparent

26   black front face.  *See* Arnold Decl. Ex. 10.  In comparison, the D'677 Patent claims a wider front

27   face with sharper edges and a transparent black front face.  Based on the designs, a reasonable jury

28

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

could find that the Nokia Fingerprint does not have "basically the same visual impression" as the D'677 Patent.

Additionally, the iRiver U10 discloses a flat black front face. However, the design also discloses a wide, almost square, front face. Moreover, it is not clear from the reproduced image that the reference discloses a *transparent* black front face. *See* Arnold Decl. ¶ 12. In contrast, the D'677 Patent claims a narrower front face with a transparent black front face. Based on the designs, a reasonable jury could find that the iRiver U10 does not have "basically the same visual impression" as the D'677 Patent.

Secondly, Samsung argues that several secondary references may be combined with the asserted primary references to create a hypothetical piece of prior art such that an ordinary observer would find the patented design substantially the same as the hypothetical prior art reference. *International Seaway Trading Corp.*, 589 F.3d at 1240-41. As an initial matter, Judge Grewal has precluded these references from trial. Additionally, even if these references were admissible, Samsung has not established as a matter of law that the secondary references upon which it relies are "so related that the appearance of certain ornamental features in one . . . would have suggested application of those features to another." *See In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 1993) (quotation marks and citation omitted). Indeed, Apple's design expert contends that the references are so distinct in visual impression that a skilled designer would not combine the references in the way proposed by Samsung. Bressler Decl. ¶¶ 34-57. Thus, summary judgment as to whether the D'677 Patent would have been obvious to a designer of ordinary skill in the art is not appropriate. *See In re Borden*, 90 F.3d at 1576 ("The question of what the prior art teaches is a question of fact.").

Finally, as discussed above, factual disputes regarding secondary considerations likewise preclude a conclusion that the D'677 Patent was obvious as a matter of law. *See Crocs*, 598 F.3d at 1310-11; *Monarch Knitting Machinery Corp.*, 139 F.3d 877, 886 (Fed. Cir. 1998).

## C.     The D'889 Patent

United States District Court
For the Northern District of California

Samsung also moves for summary judgment on the D'889 Patent arguing that the patent would have been obvious to one of ordinary skill in the art.  However, as discussed above, there are several factual issues that preclude summary judgment on the validity of the D'889 Patent.

| D'889 Patent | D'037 Patent |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT



United States District Court
For the Northern District of California

**The Brain Box**



First, whether Samsung has properly identified a primary reference will be a question for the finder of fact.  Samsung has identified two prior art references that it believes could serve as a "primary reference" including the D'037 Patent, and the Apple Brain Box.  *See* MSJ at 14 (citing Exs. 22, 25).  These two primary art references were not part of the record in Apple's motion for preliminary injunction.[7]

As an initial matter, the Court notes that Judge Grewal recently ordered these references be excluded from trial because Samsung failed to timely disclose the prior art or invalidity theory.  *See* Order Granting in part and Denying in part at 4-5, ECF No. 1144.  On this basis alone, summary judgment in favor of Samsung is not proper because the evidence in support of Samsung's obviousness argument will not be admissible at trial.  *See* Fed. R. Civ. P. 56(e); *In re Oracle Corp. Securities Litig.*, 627 F.3d at 385 (9th Cir. 2010).

---

[7]   Apple objects to Samsung's prior art references because Apple argues they were not timely disclosed in discovery.  Apple's motion to strike is before Magistrate Judge Grewal.  Resolution of the motion for summary judgment does not depend on resolution of Apple's motion.  Even if Samsung may rely on these prior art references, factual disputes prohibit granting summary judgment in Samsung's favor.

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Even if the D'037 and the Brain Box were admissible, Apple has raised a triable issue of

2    fact as to whether "the design characteristics of [the D'037] are basically the same as the claimed

3    design." *Durling,* 101 F.3d at 103.  As explained by the Federal Circuit, the overall visual

4    impression of the D'889 Patent is as follows: "[t]he transparent glass-like front surface of the

5    D'889 Patent . . . covers essentially the entire front face of the patented design without any breaks

6    or interruptions.  As a result, the D'889 design creates the visual impression of an unbroken slab of

7    glass extending from edge to edge on the front side of the tablet." *Apple*, 678 F.3d at 1331.  In

8    contrast, as admitted by Samsung, the D'037 Patent does not disclose oblique line shading (which

9    is required to claim a translucent or transparent surface) or a border underneath the display.

10   Instead, the D'037 Patent discloses "certain detail on the back."  Reply at 7.  Moreover, the D'037

11   discloses a thicker form with steeper, more angled sides.  Thus, a jury could find that the overall

12   visual impression of "an unbroken slab of glass extending from edge to edge on the front side of

13   the tablet" is not met by the D'037.

14        Similarly, Samsung points to the "Brain Box," an Apple design of a display made public as

15   early as 1997.  MSJ at 14 (citing Ex. 25).  The one photograph of the Brain Box submitted by

16   Samsung does not disclose all views of the reference, and so it will be difficult for the jury to

17   evaluate whether the reference creates "basically the same visual impression" as the D'889 Patent.

18   *See Durling*, 101 F.3d at 103 (internal quotations omitted).   For example, it is difficult to discern

19   whether the Brain Box has a flat front piece, and whether the back view of the reference is flat,

20   rounded, or otherwise has the same overall visual impression as the D'889.  *See* Bartlett Decl. Ex.

21   20 at 40-41; *cf. Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002);

22   *Int'l Seaway Trading*, 589 F.3d at 1241 (the obviousness inquiry on invalidity focuses on the

23   overall design).  Accordingly, a reasonable jury could not conclude that the Brain Box is a primary

24   reference because it could not determine whether the reference discloses the same overall visual

25   impression.

26        Moreover, even if the jury were to find that the D'037 is properly a primary reference, the

27   jury would need to determine whether the Brain Box is a proper "secondary reference" that is, if

28   the Brain Box is so related to the D'037 "that the appearance of certain ornamental features in one

36

1  would suggest the application of those features to the other." *Durling*, 101 F.3d at 103 (internal

2  quotation marks omitted) (citing *In re Harvey*, 12 F.3d at 1063.  Finally, even if the Brain Box was

3  used to modify the D'037 Patent, it is not clear that the combination of references would render the

4  D'889 obvious.  Apple's expert has identified differences between the hypothetical combination of

5  references and the D'889 Patent including even borders that appear beneath the transparent front

6  surface of the D'889 Patent, and the D'889 Patent's rounded edge profile.  Bressler ¶ 112.  The

7  jury must apply the ordinary observer test to determine if one would find the patented design

8  substantially the same as the hypothetical prior art reference.  *International Seaway Trading Corp.*,

9  589 F.3d at 1240-41.  Here, there exists an issue of material fact regarding whether the ordinary

10  observer would find the patented design substantially the same as the hypothetical prior art.  *Cf.*

11  *Sun-Mate Corp. v. Koolatron Corp.*, No. 10-4735, 2011 WL 3322597, at * 9 (C.D. Cal. Aug. 1,

12  2011).

13          Finally, Apple has also pointed to evidence in the record of secondary considerations that

14  are probative evidence of non-obviousness of a design patent.  *See Crocs*, 598 F.3d at 1310-11.

15  Apple has provided evidence of industry praise for the design of the iPad and iPad2, as well as

16  evidence of copying of the iPad design.  Bressler Decl. ¶¶ 116-117, 122-123.  Therefore, Apple has

17  raised a genuine issue of material fact which precludes resolution on summary judgment of the

18  question of the existence of these secondary considerations.  *See Monarch Knitting Machinery*

19  *Corp.*, 139 F.3d at 886.  Accordingly, Samsung's motion for summary judgment on invalidity of

20  the D'889 Patent is DENIED.

21          **D.      The D'305 Patent[8]**

22          Samsung also argues that the D'305 is anticipated and obvious in light of images of the

23  iPhone that were shown to the public on January 9, 2007.  MSJ at 15-16.  The D'305 Patent was

24  filed on June 23, 2007.  Apple conceived of the D'305 no earlier than April 26, 2007.  Ex 23 at 9.

25  Whether a reference may be considered prior art under section 102 is a question of law, based upon

26  underlying factual determinations.  *Shatterproof Glass Corp.*, 758 F.2d at 622; *Allied Colloids Inc.*,

27  64 F.3d at 1574.

28  _____

[8]  Apple has withdrawn its claim that Samsung's accused devices infringe the D'334 Patent.

37

As an initial matter, the Court notes that Judge Grewal recently ordered the January 2007 iPhone image publication ("January 2007 image") excluded from trial because Samsung failed to timely disclose the prior art. *See* Order Granting in part and Denying in part at 4, ECF No. 1144. On this basis alone, summary judgment in favor of Samsung is not proper because the evidence in support of Samsung's obviousness argument will not be admissible at trial. *See* Fed. R. Civ. P. 56(e); *In re Oracle Corp. Securities Litig.*, 627 F.3d at 385.

In the alternative, Apple argues that the January 2007 image cannot serve as a prior art reference for the D'305 Patent because the January 2007 image publication has the same inventors as the '305 Patent. Therefore, Apple argues, the January 2007 image publication can only qualify as anticipatory prior art under 35 U.S.C. §102(b), and not under §102(a). The Court agrees. Section 102(a) bars patenting an invention when "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, *before the invention thereof by the applicant for a patent*." (emphasis added). Section 102(b), on the other hand, bars patenting an invention that "was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, *more than one year prior to the date of the application for patent in the United States*." *Id.* (emphasis added). Thus, the relevant date for priority under 102(a) is the date of invention, while the relevant date for priority under 102(b) is one year before the application date.

On its face, section 102(a) might include printed publications as prior art, even if a prior publication is the inventor's own work. However, including an inventor's own publications as 102(a) prior art would negate the one-year grace period explicitly provided to inventors under 102(b). *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982). Therefore, the requirement that prior art be created "by others" applies to "all types of references eligible as prior art under 35 U.S.C. 102(a) including publications as well as public knowledge and use." MPEP § 2132 (citing *In re Katz*, 687 F.2d at 454) (emphasis added). Samsung argues that publication "by others" is only required when the publication occurs after the inventor's date of conception, but cites no supporting statutory authority or case law.

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    In this case, the relevant priority date for the D'305 inventors' own work is one year prior

2    to the date of application of the D'305 Patent: June 23, 2006.  The January 2007 image publication

3    was not before the priority date, and therefore is not a prior art reference for the D'305.  Therefore,

4    Samsung's motion for summary judgment of invalidity as to the D'305 Patent is DENIED.

5    **VI.    ANTITRUST CLAIM**

6    Samsung argues that it is entitled to summary judgment on Apple's counterclaims for

7    violations of the Sherman Act § 2.  Samsung argues that Apple has failed to offer any evidence of

8    damages.  MSJ at 23.

9    Although the factual allegations underlying this claim are more fully set forth in the Court's

10   October 18 and May 14 Orders, a brief summary is provided below.  In the course of this lawsuit

11   Samsung counterclaimed that Apple has infringed Samsung patents, which are essential to the

12   Universal Mobile Telecommunications Standard ("UMTS").  In response, Apple counterclaimed

13   (in reply) that Samsung has engaged in anticompetitive behavior with respect to the UMTS-

14   essential patents.  Specifically, when Samsung participated in setting the UMTS standard, it

15   committed itself to abide by the intellectual property rights ("IPR") policy of the European

16   Telecommunication Standards Institute ("ETSI"), a standard-setting organization ("SSO") which

17   coordinated UMTS development.  The ETSI IPR policy allegedly obligated Samsung to disclose

18   any UMTS-essential patents during UMTS development and to license the UMTS-essential patents

19   on fair, reasonable and non-discriminatory ("FRAND") terms.  Samsung's IPR violations allegedly

20   caused inclusion of Samsung's patented technology in UMTS with anticompetitive effects.

21   Samsung moves for summary judgment on the antitrust claim arguing that Apple has not

22   provided sufficient evidence of § 2 damages.  MSJ at 23.  Apple does not dispute that it has

23   presented only one potential basis for awarding antitrust damages: that Apple has incurred legal

24   expenses fighting Samsung's infringement allegations in this suit.  In its briefing, Samsung

25   presented two arguments in support of its motion: (1) that legal expenses alone cannot support an

26   award of antitrust damages as a matter of law; and (2) that as a matter of proof at summary

27   judgment, Apple has failed to introduce any evidence as to the actual amount of damages.  MSJ at

28   23-25, n.35.  At the hearing, Samsung essentially conceded that litigation fees and costs may form

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

the basis for antitrust damages in this context and clarified that the main basis of its challenge to Apple's antitrust claims is that Apple has failed to meet its burden on summary judgment of pointing to evidence in the record to support its claim for damages.

As an initial matter, to the extent this issue remains contested by the parties, litigation expenses may establish damages for an antitrust claim. Litigation costs have been recognized as appropriate antitrust damages in the context of anticompetitive sham litigation. *See Handgards v. Ethicon*, 601 F.2d 986, 997 (9th Cir. 1979) (noting that "[i]n a suit alleging antitrust injury based upon a bad faith prosecution theory it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which 'flows' from the antitrust wrong"). Similarly, where the alleged anticompetitive conduct arises out of abusive patent litigation, it is possible that litigation costs may suffice to establish antitrust damages. For example, in *Hynix Semiconductor Inc. v. Rambus Inc.*, the district court held that where patent litigation is "causally connected to anticompetitive harms" stemming from an anticompetitive "scheme," the patent litigation is not immune from antitrust. 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007). *Hynix* explained that "where the patent litigation is used to further the harm caused under a 'more traditional antitrust theory,' a plaintiff should be allowed a full recovery, . . .[even where] proposed damages calculations are too speculative to award [damages other than litigation costs]." *Id.* In *Hynix*, the "more traditional antitrust theory" was anticompetitive conduct in violation of Sherman Act § 2, specifically, that Rambus failed to disclose Rambus patents to an SSO setting the SDRAM computer memory standard, enabling Rambus to "hold up" the computer memory industry after the industry became "locked in" to Rambus's patented technology. *Id.* at 1098. Patent hold up has anticompetitive effects, but is ineffective absent the threat of litigation. *Id.* In *Hynix*, the cost of litigation was causally connected to the anticompetitive harms and flowed from the alleged violations of the statute. Thus, because Apple has alleged patent holdup stemming from Samsung's failure to disclose essential patents to ETSI and Samsung's failure to license on FRAND terms, and because Apple's litigation costs stem directly from Samsung's alleged anticompetitive behavior, these litigation costs are a sufficient basis for a potential award of antitrust damages.

40

Samsung argues that Apple has pointed to no evidence in the record as to the *amount* of damages that it may be owed.  MSJ at 24 (citing testimony of Apple's expert witness on antitrust).  Apple argues that expert witness testimony is not required for a showing of damages; instead, fact witness testimony can suffice.  Opp'n at 23-24.  While not comprehensive, Apple has provided some evidence of specific litigation expenses that it has incurred in defending itself as a result of Samsung's allegedly anticompetitive conduct.  Apple points to fees paid to certain experts in the course of litigation.  Opp'n at 23 (citing Selwyn Decl., Ex. A (deposition testimony of expert as to the amount of his fees); Selwyn Decl., Ex. B (same)).  At this point, the evidence provided is sufficient for Apple to meet its burden to avoid summary judgment.

Moreover, where the amount of damages is uncertain, nominal damages may still be awarded.  *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-01819 CW, 2010 WL 5141861, at *4 (N.D. Cal. Dec. 13, 2010) ("if plaintiff has insufficient proof of amount of damages, the proof of violation and fact of damage is a sufficient basis for an award of nominal damages"); *see also Knutson v. Daily Review, Inc.*, 468 F. Supp. 226, 228 (N.D. Cal. 1979) (awarding nominal damages for Sherman Action violation) *aff'd,* 664 F.2d 1120 (9th Cir. 1981).  Samsung argues that sufficient evidence as to the amount of damages was provided in *In re SRAM Antitrust Litig.* (Reply at 15 n. 16); however, the *SRAM* court cited availability of nominal damages as an independent basis for denying summary judgment.  *In re SRAM Antitrust Litig.*, 2010 WL 5141861, at *4.  Other circuits commonly award nominal damages in antitrust cases.  *See, e.g., Sciambra v. Graham News*, 892 F.2d 411, 415 (5th Cir. 1990) ("[e]ven if there is insufficient proof of the amount of damages, however, proof of an antitrust violation and the fact of damage is a sufficient basis for an award of nominal damages"); *Rosebrough Monument Co. v. Mem'l Park Cemetery Ass'n*, 666 F.2d 1130, 1147 (8th Cir. 1981) ("[because] appellant's evidence was insufficient only as to the measurement of damages . . . an award of nominal damages is justified").  Thus, even if Apple did not point to evidence of amount of damages, such a failure would not be fatal to Apple's antitrust counterclaim.

In sum, Apple's litigation expenses provide sufficient basis for an award of antitrust damages.  In any event, nominal damages may be awarded where the fact of damages is proven but

Case No.: 11-CV-01846-LHK
ORDER REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

the amount of damages is uncertain.  Therefore, Samsung's motion for summary judgment is DENIED.

**VII.    CONCLUSION**

For the reasons stated above, Samsung's motion is DENIED.  Specifically, the Court denies Samsung's motion for summary judgment on the following claims: (1) trade dress; (2) utility patent infringement; (3) design patent infringement; and (4) antitrust.

**IT IS SO ORDERED.**

Dated: June 29, 2012

_____
LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

42