1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4

5

      APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6     CORPORATION,                )
                                  )  SAN JOSE, CALIFORNIA
7                   PLAINTIFF,    )
                                  )  JUNE 19, 2012
8             VS.                 )
                                  )  PAGES 1-43
9     SAMSUNG ELECTRONICS CO.,    )
      LTD., A KOREAN BUSINESS     )
10    ENTITY; SAMSUNG             )
      ELECTRONICS AMERICA,        )
11    INC., A NEW YORK            )
      CORPORATION; SAMSUNG        )
12    TELECOMMUNICATIONS          )
      AMERICA, LLC, A DELAWARE    )
13    LIMITED LIABILITY           )
      COMPANY,                    )
14                                )
                    DEFENDANTS.   )
15    _____

16             TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE PAUL S. GREWAL
17           UNITED STATES MAGISTRATE JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23

24    OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
25

                                                            1

```
1

2    A P P E A R A N C E S:

3    FOR PLAINTIFF          MORRISON & FOERSTER
     APPLE:                 BY:  ALISON M. TUCHER
4                                 MATTHEW AHN
                            425 MARKET STREET
5                           SAN FRANCISCO, CALIFORNIA  94105

6                           BY:  MARC J. PERNICK
                            755 PAGE MILL ROAD
7                           PALO ALTO, CALIFORNIA  94304

8    ALSO PRESENT:          SERITA VERKAT

9

10   FOR THE DEFENDANT:  QUINN, EMANUEL, URQUHART,
                         OLIVER & HEDGES
11                       BY:  VICTORIA F. MAROULIS
                              MARK TUNG
12                       555 TWIN DOLPHIN DRIVE
                         SUITE 560
13                       REDWOOD SHORES, CALIFORNIA  94065

14                       BY:  JOBY MARTIN
                         50 CALIFORNIA STREET
15                       22ND FLOOR
                         SAN FRANCISCO, CALIFORNIA  94111
16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                 JUNE 19, 2012
 2                 P R O C E E D I N G S
 3               (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5               THE COURT:  MR. RIVERA, WOULD YOU CALL
 6    THE NEXT MATTER ON THIS MORNING'S CALENDAR?
 7               THE CLERK:  YES, YOUR HONOR.
 8               CALLING APPLE V. SAMSUNG ELECTRONICS,
 9    LIMITED, ET AL, CASE NUMBER CV-11-1846, ON FOR
10    SAMSUNG'S MOTION FOR CLARIFICATION.
11               COUNSEL, PLEASE STATE YOUR APPEARANCES.
12               MS. MAROULIS:  GOOD MORNING, YOUR HONOR.
13    VICTORIA MAROULIS OF QUINN, EMANUEL, COUNSEL FOR
14    SAMSUNG.
15               AND WITH ME ARE DR. MARK TUNG AND
16    JOBY MARTIN.
17               THE COURT:  GOOD MORNING, MS. MAROULIS.
18    WELCOME BACK TO YOU AND YOUR TEAM.
19               MS. TUCHER:  GOOD MORNING, YOUR HONOR.
20    ALISON TUCHER FROM MORRISON & FOERSTER ON BEHALF OF
21    APPLE.
22               AND WITH ME ARE MY PARTNER MARC PERNICK,
23    COLLEAGUE MATT AHN, AND FROM APPLE'S IN-HOUSE LEGAL
24    DEPARTMENT, SERITA VERKAT.
25               THE COURT:  MS. TUCHER, GOOD MORNING TO
```

3

1      YOU AND YOUR TEAM AS WELL.

2              MS. TUCHER:  THANK YOU.

3              THE COURT:  AND WELCOME BACK TO

4      CALIFORNIA FOR THOSE WHO WERE AT THE ITC.  I'M SURE

5      YOU GAVE THE COMMISSION MY REGARDS.

6              I UNDERSTAND WE'RE GOING TO BE HERE ON

7      THURSDAY, AT LEAST SOME OF US WILL BE HERE ON

8      THURSDAY ON A WHOLE SET OF ADDITIONAL PAPERS.

9              I APOLOGIZE TO THE EXTENT IT HAS CAUSED

10     AN INCONVENIENCE TO COME DOWN HERE FOR JUST THIS

11     ONE MATTER, BUT THIS ONE MATTER IS OF SOME

12     IMPORTANCE TO ME AND I KNOW IT'S OF SOME IMPORTANCE

13     TO THE PARTIES.

14             AND SO WITH THE RELATIVELY EMPTY CALENDAR

15     THIS MORNING, I THOUGHT WE MIGHT TAKE ADVANTAGE OF

16     THE OPPORTUNITY TO ADDRESS THIS ONE BEFORE WE TURN

17     TO THE OTHERS ON THURSDAY.

18             THIS IS SAMSUNG'S MOTION FOR

19     CLARIFICATION, SO MS. MAROULIS, I'LL START WITH

20     YOU.

21             MS. MAROULIS:  YES, YOUR HONOR, AND WE

22     THANK YOU FOR SCHEDULING IT TODAY AS OPPOSED TO

23     THURSDAY BECAUSE WE'RE GOING TO HAVE A FULL DAY ON

24     THURSDAY ALREADY --

25             THE COURT:  YES, YOU ARE.

                                                        4

1          MS. MAROULIS:  -- SO WE CAN ADDRESS THIS

2     AT THIS POINT.

3          YOUR HONOR, THIS IS OUR MOTION TO

4     CLARIFY, AND WHILE APPLE ARGUES THAT IT IS A MOTION

5     TO RECONSIDER, IT IS ANYTHING BUT.

6          AN UNCLARITY AND AMBIGUITY IN THE ORDER

7     AROSE SHORTLY AFTER YOUR HONOR ENTERED THAT, AND

8     THE WAY IT HAPPENED IS THAT THE ORDER WAS ENTERED

9     ON MAY 4, AND ABOUT A WEEK LATER, WE HAD

10    DEPOSITIONS OF THE PARTIES' DAMAGES EXPERTS ON

11    MAY 12 AND MAY 14.

12         AND DURING THOSE DEPOSITIONS APPLE MADE

13    IT CLEAR THAT THEIR POSITION WAS THAT WE COULD NOT

14    PRESENT ANY DAMAGES THEORIES BASED ON THE

15    DESIGN-AROUNDS, NOR COULD WE QUESTION THEIR DAMAGES

16    EXPERT ABOUT DESIGN-AROUNDS BECAUSE THEY VIEWED

17    YOUR HONOR'S ORDER AS BARRING NOT JUST

18    DESIGN-AROUND RELIANCE ON SOURCE CODE, BUT ANY

19    EVIDENCE OF DESIGN-AROUND AT ALL.

20         AND SO THIS MOTION SEEKS TO COVER THREE

21    SEPARATE ISSUES:

22         ONE, THE ORDER EXPRESSLY PERMITS SAMSUNG

23    TO RELY ON SOURCE CODE PRODUCED BEFORE DECEMBER 31,

24    TIMELY PRODUCED SOURCE CODE, AND WE JUST WANT TO

25    CLARIFY AND CONFIRM THAT WE CAN, INDEED, DO THAT.

1           SECOND, WE UNDERSTAND THE ORDER TO BAR

2     SAMSUNG ONLY FROM RELYING ON POST-DECEMBER 31

3     PRODUCTION OF SOURCE CODE, BUT NOT NECESSARILY FROM

4     RELIANCE ON OTHER EVIDENCE OF DESIGN-AROUND,

5     INCLUDING DOCUMENTS, PARTY ADMISSIONS, EXPERT

6     ADMISSIONS AND OTHER EVIDENCE.

7           AND FINALLY, THE MOTION WAS REGARDING

8     APPLE'S USE OF SOURCE CODE FOR THE PURPOSES OF

9     INFRINGEMENT, AND THAT'S CLEAR BOTH FROM THEIR

10    MOTION AND FROM THE WAY THE COURT DESCRIBES THE

11    RELIEF REQUESTED IN THE MOTION.

12          AND SO THE THIRD POINT WE WANT TO CLARIFY

13    IS THAT SAMSUNG CAN CONTINUE TO USE EVIDENCE OF

14    DESIGN-AROUNDS FOR ISSUES OTHER THAN INFRINGEMENT,

15    AND THAT IS DAMAGES ASSESSMENT OR LOST PROFITS OR

16    REASONABLE ROYALTY AND, IF IT EVER COMES TO THAT,

17    ANY INJUNCTION PROCEEDINGS AND CONTEMPT

18    PROCEEDINGS.

19          SO STARTING WITH THE FIRST POINT

20    REGARDING THE SOURCE CODE, ON DECEMBER 30TH, A DAY

21    BEFORE THE DEADLINE, SAMSUNG PRODUCED A VERY LARGE

22    QUANTITY OF SOURCE CODE.  IT WAS A LARGE HARD DRIVE

23    WITH ABOUT 2 TERABYTES OF SOURCE CODE.

24          I PERSONALLY DO NOT READ SOURCE CODE SO I

25    DID NOT REVIEW THAT, BUT I UNDERSTAND AND WE PUT

1     DECLARATIONS IN THE RECORD FROM DR. TUNG, ONE OF

2     OUR ATTORNEYS ON THE TEAM, AS WELL AS MR. JOHNSON,

3     ONE OF OUR EXPERTS, THAT THAT PRODUCTION CONTAINED

4     CERTAIN VERSIONS OF BLUE GLOW SOURCE CODE.

5               AND AS YOUR HONOR RECALLS, THAT GOES TO

6     THE '381 PATENT, AND THE BLUE GLOW FUNCTIONALITY IS

7     A DESIGN-AROUND THE INFRINGEMENT THEORY THAT APPLE

8     HAS FOR THE '381 CODE.

9               SO WHEN WE --

10              THE COURT:  MS. MAROULIS -- I'M SORRY TO

11    INTERRUPT -- BUT WHEN YOUR PARTNER, MR. JOHNSON,

12    WAS HERE ARGUING THIS POINT SOME WEEKS AGO, I DON'T

13    BELIEVE HE EVER PRESENTED ANY EVIDENCE OR ARGUMENT

14    THAT ANY OF THIS CODE WAS PRODUCED, SO WHY SHOULD I

15    CONSIDER IT NOW?

16              MS. MAROULIS:  YOUR HONOR, WE WENT BACK

17    AFTER THE ARGUMENT TO VERIFY WHAT EXACTLY WAS

18    PRODUCED AND THE AMBIGUITY WAS THIS, AND WE

19    UNDERSTAND THAT YOUR HONOR HAD THE FACTS BEFORE HIM

20    AS HE -- AS IT WAS PRESENTED TO HIM.

21              BUT WHAT WAS PRODUCED IN JANUARY AND WHAT

22    MR. JOHNSON WAS REFERRING TO WAS THE BASE SOURCE

23    CODE FOR VARIOUS VERSIONS, INCLUDING THE BLUE GLOW

24    AND SOME OTHERS.

25              WHAT WAS PRODUCED BEFORE DECEMBER 31ST

1    WAS THE PRODUCTS AS THEY EXISTED AT THAT POINT IN

2    TIME.

3              SO AT THE HEARING LAST TIME, WE DID NOT

4    HAVE THAT EVIDENCE AT OUR FINGERTIPS AND WE WEREN'T

5    ABLE TO STAND HERE AND ANSWER YOUR HONOR'S

6    QUESTIONS DIRECTLY AS TO WHETHER ANYTHING AT ALL

7    WAS PRODUCED PRIOR TO THAT DATE.

8              TODAY WE HAVE A RECORD WITH A DECLARATION

9    OF DR. TUNG AND WE HAVE A SEPARATE DECLARATION OF

10   MR. JOHNSON.

11             AND, IN FACT, APPLE IN THEIR PAPERS DOES

12   NOT DISPUTE THAT THAT'S WHAT HAPPENED.  THEY ARE

13   CONCEDING BY NOT ADDRESSING IT, AND MY

14   UNDERSTANDING FROM READING THE TRANSCRIPT IS THAT

15   MS. TUCHER ACTUALLY SAID IN THE HEARING BEFORE YOUR

16   HONOR LAST TIME THAT SOME BLUE GLOW CODE WAS

17   PRODUCED.

18             SO ON THAT POINT, IT'S REALLY AN ISSUE OF

19   FACTS.

20             THE COURT:  ISN'T IT ALSO AN ISSUE

21   PERHAPS OF MANAGEMENT OF THIS CASE?

22             I MEAN, I APPRECIATE THAT THESE ARE VERY

23   COMPLICATED FACTS AND THE RECORD IS DIFFICULT, BUT

24   IT BECOMES EVEN HARDER TO MANAGE DISCOVERY IN THIS

25   CASE WHEN I'M PRESENTED WITH VERY SERIOUS CHARGES

1    AND REQUESTS FOR VERY SERIOUS RELIEF AND THE RECORD

2    THAT'S PRESENTED TO ME IS APPARENTLY INCOMPLETE OR

3    INCORRECT.

4              SO IS IT APPROPRIATE FOR ME TO CONSIDER

5    THE IMPLICATIONS FOR HOW I MANAGE THIS CASE, AND

6    OTHER CASES LIKE IT, AS WELL AS THE ACTUAL RECORD

7    AS IT APPLIES TO THE RELIEF REQUESTED?

8              MS. MAROULIS:  YOUR HONOR, THE

9    RESPONSIBILITY FOR PRESENTING THE RECORD TO THE

10   COURT IS WITH THE PARTIES.  WE DON'T DISPUTE THAT.

11             HOWEVER, THE POINT IN TIME AT WHICH WE'RE

12   LOOKING AT WAS THE SEVEN OR EIGHT DAYS THAT SAMSUNG

13   HAD TO COMPLY WITH THE COURT'S DECEMBER 22 ORDER.

14   SAMSUNG PULLED EVERYTHING IT COULD TO GET IT VERY

15   QUICKLY AND PRODUCED IT.

16             THE EVIDENCE SHOWS THAT APPLE'S EXPERTS

17   EXAMINED THE SOURCE CODE ON JANUARY 6 AND THE

18   PRINTOUTS ARE DATED JANUARY 9.

19             IT IS CORRECT THAT THERE WAS ADDITIONAL

20   OTHER PRODUCTION ON JANUARY 23, AND WE SHOULD HAVE

21   AND COULD HAVE MADE CLEAR IN OUR PAPERS THAT THAT

22   WAS A SEPARATE PRODUCTION OF ADDITIONAL SOURCE CODE

23   AND SOME VERSIONS WERE ALREADY PRODUCED BACK IN

24   DECEMBER.

25             BUT THE FACTS REMAIN THE SAME, WHICH IS

1    THE CODE WAS PRODUCED AND APPLE HAD THE CODE.

2              AND APPLE DOES NOT DISPUTE IT, BUT

3    CHOOSES TO KIND OF SIT BACK AND SAY, "WELL, YOU

4    DIDN'T MAKE THAT ARGUMENT, SO YOU CANNOT MAKE THAT

5    ARGUMENT NOW."

6              HOWEVER, WE'RE OUT FOR CLARITY HERE, AND

7    THE REASON WE'RE HERE IS WE HAVE A TRIAL COMING UP

8    AND WE NEED TO KNOW WHAT WE CAN RELY ON AND WHAT WE

9    CANNOT.

10             THE COURT:  AS FOR WHICH PRODUCTS THIS

11   CODE WAS PRODUCED IN ADVANCE OF THE 31ST, DO THE

12   PRODUCTS INCLUDE ANY PRODUCTS OTHER THAN THE S II,

13   THE EXHIBIT 4G, THE TAB 10.1 AND THE EPIC 4G?

14             MS. MAROULIS:  YOUR HONOR, THOSE ARE THE

15   FOUR PRODUCTS FOR WHICH WE PRODUCED CODES, ONLY

16   THOSE FOUR.

17             THE COURT:  ONLY THOSE FOUR.

18             SO IT'S CLEAR THAT NO SOURCE -- NO SOURCE

19   CODE WAS PRODUCED WITH RESPECT TO ANY OTHER PRODUCT

20   AS TO THE BLUE GLOW FUNCTIONALITY?

21             MS. MAROULIS:  CORRECT, YOUR HONOR.

22             SO THAT GOES TO THE FIRST POINT, WHICH IS

23   BECAUSE WE PRODUCED IT BEFORE THE 31ST OF DECEMBER

24   AND BECAUSE THE COURT'S ORDER EXPLICITLY SAID THAT

25   SAMSUNG CAN RELY ON VERSIONS THAT WERE PRODUCED ON

1    OR BEFORE DECEMBER 31, SAMSUNG SHOULD BE PERMITTED

2    TO RELY ON THOSE AT TRIAL.

3            AND AGAIN, THE REASON WE'RE HERE IS

4    BECAUSE APPLE IS DISPUTING THAT.

5            AND IN THE PAST YOUR HONOR HAS SUGGESTED

6    TO US THAT IF WE REQUIRE CLARITY, IF THE PARTIES

7    HAVE SOME DISAGREEMENT, WE SHOULD NOT ENGAGE IN

8    SELF-HELP AND WE SHOULD CLARIFY WITH THE COURT, SO

9    THAT'S EXACTLY WHAT WE'RE DOING.

10           THE SECOND POINT RELATES TO NON-SOURCE

11   CODE EVIDENCE OF DESIGN-AROUNDS, AND THERE ARE MANY

12   DIFFERENT CATEGORIES OF EVIDENCE THAT FIT THAT

13   DEFINITION.

14           THERE WERE DOCUMENTS PRODUCED RELATING TO

15   NON-SOURCE CODE DESIGN-AROUND ALTERNATIVES; THERE

16   WERE ALSO MULTIPLE DEPOSITIONS, SOME OF WHICH WE

17   CITE IN OUR MOTION; AND THERE WERE SOME ADMISSIONS

18   BY APPLE'S EXPERTS.

19           AND SO WE UNDERSTAND THAT THE MOTION AND

20   THE RELIEF THAT APPLE RECEIVED RELATED SOLELY TO

21   SOURCE CODE.

22           EVERYTHING ABOUT --

23           THE COURT:  HOW DO YOU SQUARE THAT WITH

24   MY LANGUAGE THAT SAYS YOU'RE PRECLUDED FROM

25   OFFERING ANY EVIDENCE?  I DIDN'T SAY SOURCE CODE,

```
 1        DID I?

 2                 MS. MAROULIS:  WELL, YOUR HONOR, THAT IS

 3        WHY WE'RE HERE, BECAUSE WE UNDERSTAND YOUR ORDER TO

 4        RELATE TO ONLY SOURCE CODE.

 5                 WE SAW THAT IT SAYS ANY EVIDENCE AND WE

 6        WANTED TO RECONCILE IT, AND THAT'S WHY WE FILED A

 7        MOTION TO CLARIFY.

 8                 AND FURTHER, APPLE, IN THE DEPOSITIONS OF

 9        DAMAGES EXPERTS, TOOK THE POSITION THAT EVEN IF

10        IT'S ADMISSIONS OF THEIR OWN EXPERTS THAT HAVE

11        NOTHING TO DO WITH THE SOURCE CODE, WE'RE BARRED

12        FROM CROSS-EXAMINING THEIR EXPERTS WITH THEIR OWN

13        ADMISSIONS.

14                 THE COURT:  SO DID THEY SHUT DOWN THAT

15        QUESTION DURING THE DEPOSITION?

16                 MS. MAROULIS:  THERE WERE TWO DIFFERENT

17        INSTANCES -- THE DEPOSITION OF MR. WAGNER, OUR

18        EXPERT, WAS WHERE HE PRESENTED HIS THEORIES RELYING

19        ON THEIR DESIGN-AROUNDS AND THEY MADE A STATEMENT

20        ON THE RECORD THAT THAT'S NOT APPROPRIATE BECAUSE

21        THEY, THEY RECEIVED THIS ORDER; AND THEN IN

22        MR. MUSIKA'S DEPOSITION, IT WAS SHUT DOWN AT THE

23        END, I BELIEVE, YOUR HONOR.  I TOOK IT, SO I SHOULD

24        KNOW BETTER, BUT I CANNOT CITE THE EXACT POINT.

25                 BUT MR. OLSON, WHO DEFENDED THE
```

1    DEPOSITION, ON THE RECORD STATED THAT IT WAS NOT AN

2    APPROPRIATE AREA OF INQUIRY BECAUSE OF THE ORDER,

3    AND WE WERE RUNNING LOW ON TIME AT THAT POINT IN

4    TIME.

5           SO WE UNDERSTOOD THE ORDER TO BE THE

6    SOURCE CODE.  WE DID NOT UNDERSTAND IT TO BE SO

7    BROAD AS TO ENCOMPASS BOTH TIMELY PRODUCED

8    INTERROGATORY RESPONSES, DOCUMENT PRODUCTIONS,

9    PARTY DEPOSITIONS, AND EXPERT DEPOSITIONS.

10          IF THIS IS INDEED WHAT THE COURT MEANT,

11   WE OBVIOUSLY NEED TO KNOW THAT, BUT WE DID NOT

12   UNDERSTAND IT TO BE THAT WAY BECAUSE APPLE SOUGHT

13   TO BAR SAMSUNG FROM RELYING ON COPIES OF SOURCE

14   CODE THAT WERE PRODUCED AFTER THE DEADLINE.  THEY

15   DID NOT SEEK TO REQUEST SUCH BROAD RELIEF.

16          THE COURT:  OKAY.  SO IF I FOLLOW YOUR

17   PROPOSED INTERPRETATION OF MY ORDER, YOU'RE SAYING

18   THAT APPLE'S REQUESTED RELIEF ONLY EXTENDED TO

19   SOURCE CODE AND SOURCE CODE ALONE.  THERE WAS

20   NOTHING IN THEIR REQUEST WHICH PROMPTED MY ORDER TO

21   SUGGEST THEY WANTED ANY FURTHER RELIEF?  IS THAT

22   BASICALLY RIGHT?

23          MS. MAROULIS:  YES, YOUR HONOR.

24          AND I'M REFERRING SPECIFICALLY TO PAGE 4

25   OF YOUR ORDER WHERE YOUR HONOR SUMMARIZES WHAT

13

1    APPLE SEEKS.  AND IF YOU LOOK AT THAT PASSAGE, EACH

2    ONE OF THE CLAUSES DISCUSSED REFERENCES SOURCE

3    CODE.

4              "(I), A FINDING THAT SAMSUNG VIOLATED THE

5    COURT'S DECEMBER 22 ORDER BY FAILING TO ADEQUATELY

6    PRODUCE SOURCE CODE; (II), AN ORDER PRECLUDING

7    SAMSUNG OR ANY OF ITS EXPERTS FROM PRESENTING,

8    USING, OR RELYING ON ANY SOURCE CODE THAT WAS NOT

9    TIMELY PRODUCED UNDER THE DECEMBER 22 ORDER; AND

10   (III) AN ORDER DEEMING THAT, FOR PURPOSES OF

11   ASSESSING INFRINGEMENT BY ANY VERSION OF A SAMSUNG

12   ACCUSED PRODUCT, THE PRODUCT VERSION FOR WHICH

13   SAMSUNG TIMELY PRODUCED SOURCE CODE IS

14   REPRESENTATIVE OF ALL VERSIONS OF THAT PRODUCT."

15             THE COURT:  SO AT LEAST THE REFERENCE

16   BEFORE THE LAST ONE SEEMS TO INDICATE THAT APPLE

17   WAS SEEKING RELIEF AS TO EXPERT TESTIMONY IN

18   ADDITION TO UNDERLYING SOURCE CODE; RIGHT?

19             MS. MAROULIS:  YES, YOUR HONOR.  IT DOES

20   REFERENCE EXPERTS.

21             BUT IT DOES CONCERN SOURCE CODE.  SO,

22   AGAIN, OUR INTERPRETATION WAS THAT THIS MOTION,

23   THIS ORDER, AND THIS SANCTION THAT ATTACHED

24   FOLLOWING YOUR ORDER ADDRESSED THE SOURCE CODE AND

25   NOT ANYTHING ELSE.

14

1          YOUR HONOR, BEFORE JUDGE KOH, THE PARTIES

2    HAD TO SUBMIT SOMETHING CALLED NARROWING

3    SUBMISSIONS.  THE NARROWING SUBMISSIONS WAS

4    EXPLANATIONS OF WHY PARTIES ARE DROPPING CERTAIN

5    CLAIMS AND HOW MANY REMAIN.

6          AND IN THAT SUBMISSION APPLE EXPLAINED

7    THAT ONE OF THE REASONS THEY DON'T NEED TO DROP ANY

8    MORE PATENTS, FOR EXAMPLE, IS THAT THEY CAN PROVE

9    EASILY THEIR CLAIM BY JUST SHOWING THE JURY HOW THE

10   PRODUCT OPERATES.

11         IF THEY ARE ALLOWED TO SIMPLY SHOW THE

12   JURY HOW THE PRODUCT OPERATES BY SHOWING THEM

13   PHONES, SAMSUNG SHOULD BE ALLOWED TO SHOW, IN THE

14   SAME WAY, BY SHOWING BASED ON THE PHYSICAL PRODUCT

15   HOW IT HAS A DESIGN-AROUND, AND THAT IS THE BASIS

16   OF OUR CLARIFICATION OF POINT NUMBER TWO.

17         FINALLY, WITH RESPECT TO THE THIRD POINT,

18   AGAIN, WE'RE RELYING ON YOUR HONOR'S DESCRIPTION OF

19   APPLE'S REQUEST FOR RELIEF AND REQUEST THAT FOR THE

20   PURPOSES OF ASSESSING INFRINGEMENT, SAMSUNG SHOULD

21   NOT BE RELYING ON THE SOURCE CODE.

22         THERE ARE OTHER PURPOSES, OBVIOUSLY, TO

23   WHICH DESIGN-AROUNDS ARE RELEVANT.  SPECIFICALLY,

24   IN OUR PAPERS WE REFERENCE DAMAGES BECAUSE --

25         THE COURT:  THAT'S PRETTY EXPLICITLY

                                                      15

1      CALLED OUT IN GEORGIA PACIFIC.

2           MS. MAROULIS:  RIGHT.  THE GEORGIA

3      PACIFIC REASONABLE ROYALTY AND PROCESSING FOR

4      ACCEPTABLE NON-INFRINGING SUBSTITUTES, AND THE FACT

5      THAT THE CUSTOMERS ARE BUYING BLUE GLOW, THAT MEANS

6      IT'S PERFECTLY ACCEPTABLE AND COMMERCIALLY USED BY

7      OTHERS.

8           SO THOSE AND SOME OTHER INSTANCES WHICH,

9      YOU KNOW, WHILE WE DON'T NEED TO TELL YOU TO PLAN

10     FOR THE INJUNCTION STAGE NOW, BOTH PARTIES ARE

11     SEEKING INJUNCTIONS AGAINST EACH OTHER AND IF

12     EITHER OR BOTH ARE SUCCESSFUL, THERE WILL BE

13     ADDITIONAL PROCEEDINGS FOR WHICH THIS EVIDENCE WILL

14     BE RELEVANT.

15          THE COURT:  WOULD YOU AGREE,

16     MS. MAROULIS, THAT IF YOU ADD UP THE THREE

17     CLARIFICATIONS YOU'RE LOOKING FOR, THERE'S NOT MUCH

18     LEFT TO MY ORDER?

19          I MEAN, YOU'RE PRECLUDED ESSENTIALLY FROM

20     OFFERING A HANDFUL OF SOURCE CODE FILES TO THE

21     JURY, BUT PERMITTED TO ARGUE OR PRESENT ALL SORTS

22     OF OTHER EVIDENCE, ARGUE DAMAGES THEORIES, PRESENT

23     EXPERT TESTIMONY.

24          MS. MAROULIS:  YOUR HONOR, WE WILL BE

25     PRECLUDED FROM ALL SOURCE CODE INTRODUCTION ON THE

                                              16

1    '381 AND '163.  THE THIRD PATENT IS NO LONGER IN

2    THE CASE.

3              IT IS A SANCTION AND IT'S NOT A LIGHT

4    ONE.

5              IT IS CORRECT THAT WE WILL BE ALLOWED TO

6    USE OTHER EVIDENCE OF THE DESIGN-AROUND, BUT WE

7    RESPECTFULLY SUBMIT THAT BARRING US FROM USING

8    THOSE IS A SANCTION THAT EXCEEDS THE OFFENSE.

9              BUT I WANT TO STICK WITH THE

10   CLARIFICATION AND NOT REARGUE ANYTHING.

11             THE COURT:  I APPRECIATE THAT.

12             ALL RIGHT.  THANK YOU MS. MAROULIS.

13             MS. TUCHER, WHO'S GOING TO ARGUE FOR YOUR

14   SIDE?

15             MS. TUCHER:  I AM, YOUR HONOR.

16             THE COURT:  ALL RIGHT.

17             MS. TUCHER:  GOOD MORNING.

18             THE COURT:  GOOD MORNING.

19             MS. TUCHER:  I HAVE THREE PRIMARY

20   RESPONSES TO MS. MAROULIS'S ARGUMENTS.

21             THE FIRST IS PROCEDURAL AND IT'S HINTED

22   AT BY YOUR QUESTIONS.

23             I DON'T BELIEVE THAT HER MOTION IS A

24   MOTION FOR CLARIFICATION BECAUSE I DON'T THINK

25   THERE'S ANYTHING UNCLEAR AT ALL ABOUT YOUR HONOR'S

1    ORDER.

2              AND I THINK I LEFT MY LANGUAGE RIGHT

3    HERE.

4              TOWARDS THE END OF THE ORDER WHERE YOU

5    CONCLUDE THAT "SAMSUNG SHALL BE PRECLUDED FROM

6    OFFERING ANY EVIDENCE OF ITS DESIGN-AROUND EFFORTS

7    FOR THE RELEVANT PATENT," WE DON'T SEE THAT AS

8    UNCLEAR AND WE SEE THAT AS AN APPROPRIATE RESPONSE

9    TO WHAT APPLE WAS MOVING FOR.

10             MS. MAROULIS SUGGESTED THAT APPLE'S

11   MOVING PAPERS IN THE MOTION THAT LED TO THE MAY 4TH

12   ORDER DIDN'T ASK FOR ANY SANCTION BEYOND SOURCE

13   CODE.

14             THAT'S SIMPLY NOT TRUE.

15             WE RECOGNIZED, BECAUSE IT'S REALLY A BEST

16   EVIDENCE PROBLEM, THAT IF WE DON'T HAVE THE BEST

17   EVIDENCE OF WHAT SAMSUNG'S SOURCE CODE DOES, IT'S

18   NOT FAIR FOR SAMSUNG TO BE ALLOWED TO BRING IN

19   SECONDARY EVIDENCE, HEARSAY, ANECDOTES, ONE PHONE

20   THAT IMPLEMENTS BLUE GLOW AND SAY, "SEE, THE

21   EVIDENCE YOU'VE BEEN PRESENTED BY APPLE ISN'T THE

22   REAL STORY BECAUSE WE CAN FIND ONE PHONE THAT

23   DOESN'T INFRINGE."

24             THE COURT:  NOT TO GET OFF ON A TANGENT

25   HERE, BUT HOW OFTEN -- HOW OFTEN DO EXPERTS AND

1    OTHERS DELVE INTO THE WEEDS OF PARTICULAR LINES OF

2    A C++ FILE OR A JAVA FILE IN EXPLAINING TO A JURY

3    HOW SOMETHING WORKS?  RIGHT?

4            THEY'RE GOING TO RELY UPON A MUCH MORE

5    GENERAL OVERVIEW OF THE FUNCTIONALITY AND DOCUMENTS

6    PERHAPS THAT SPEAK AT THAT LEVEL, BUT IT'S JUST NOT

7    MY EXPERIENCE THAT MANY JURIES ARE ALL THAT MOVED

8    BY THE INTRODUCTION OF CODE FILES, AND SO I'M NOT

9    AT ALL CLEAR AS TO THE EFFECT OF A SANCTION THAT

10   WOULD SIMPLY BAR THAT WHICH WOULD NOT LIKELY BE

11   INTRODUCED ANYWAY.

12           MS. TUCHER:  WELL, LET ME BE CLEAR THAT

13   WHILE WE'RE NOT GOING TO BE WALKING THE JURY

14   THROUGH THE SOURCE CODE, OUR EXPERT DID RELY ON THE

15   SOURCE CODE.

16           THE COURT:  IN HIS REPORT?

17           MS. TUCHER:  IN HIS REPORT.

18           AND THE CLAIM AT ISSUE IS FOR A COMPUTER

19   READABLE MEDIUM THAT DOES X, Y, AND Z.  SO IT IS

20   FOR SOURCE CODE.

21           THE COURT:  OKAY.

22           MS. TUCHER:  AND THAT'S WHY WE THINK THE

23   SOURCE CODE IS THE BEST EVIDENCE.

24           BUT THE OTHER REASON WHY IS BECAUSE IN

25   THIS CASE THERE ARE A LOT OF ACCUSED PRODUCTS, AND

1    THE ACCUSED PRODUCTS, AFTER BEING RELEASED,

2    CHANGED, SO WE'VE ALLEGED CONTINUING INFRINGEMENT.

3            AND SAMSUNG SAYS, "WELL, YOU HAVEN'T

4    LOOKED AT EVERY SINGLE PHONE THAT WE PRODUCED AND

5    SO HOW DO YOU KNOW THAT ALL OF THEM INFRINGE?"

6            AND THE ANSWER IS "BECAUSE WE KNOW WHAT

7    SOURCE CODE IS IN EVERY SINGLE ONE OF THE PHONES

8    THAT YOU PRODUCED.  YOU GAVE US THAT INFORMATION."

9            BUT TO USE AN OLD TECHNOLOGY ANALOGY,

10   THEY GAVE US THE CARD CATALOG, THE CHANGE LOG THAT

11   SHOWS WHAT THE SOURCE CODE IS, BUT THEY DIDN'T GIVE

12   US THE SOURCE CODE, THE BOOKS IN THE LIBRARY, SO WE

13   COULD MATCH IT UP.

14           SO BECAUSE WE DON'T HAVE THE SOURCE CODE,

15   WE CAN'T SAY FOR EVERY SINGLE PHONE WITHOUT DRAWING

16   INFERENCES, AND THAT'S THE BEST -- THAT'S WHY IT'S

17   A BEST EVIDENCE ISSUE.

18           THE COURT:  AND IN PARTICULAR YOUR

19   EXPERTS ARE VULNERABLE, IN YOUR VIEW, TO A

20   CROSS-EXAMINATION THAT THEY HAVEN'T LOOKED AT THE

21   BEST EVIDENCE IN ORDER TO ESTABLISH THE POINTS THAT

22   THEY'RE MAKING?

23           MS. TUCHER:  YOU MAY RECALL -- THAT'S

24   RIGHT.

25           AND YOU MAY RECALL WHEN I WAS HERE BEFORE

1    I ACTUALLY HANDED UP CROSS-EXAMINATION FROM

2    MR. BALAKRISHNAN'S DEPOSITION IN WHICH MR. JOHNSON

3    ASKED HIM, "WELL, WE'VE SOLD MILLIONS OF PHONES AND

4    YOU ONLY LOOKED AT ONE PHONE; RIGHT?"  AND SO IT'S

5    NOT JUST A THEORETICAL CONCERN.

6            THAT'S WHY THE SOURCE CODE IS IMPORTANT

7    TO US TO BE ABLE TO TRACK WHAT SAMSUNG PRODUCED IN

8    EACH OF THE PHONES.

9            BUT I ACTUALLY DON'T WANT TO SKIP PAST

10   THE PROCEDURAL ISSUE.  WE DON'T THINK THERE'S

11   ANYTHING UNCLEAR IN YOUR ORDER.

12           WE RECOGNIZE THAT SAMSUNG WANTS TO

13   REVISIT IT.  THEY WANT IT RECONSIDERED.

14           BUT THE LOCAL RULES HAVE REQUIREMENTS.

15   THEY'RE REQUIRED TO FILE A MOTION SEEKING LEAVE.

16   THEY DIDN'T DO THAT.

17           THEY'RE REQUIRED TO SHOW THAT WITH

18   REASONABLE DILIGENCE THEY COULDN'T HAVE KNOWN THE

19   NEW FACTS HERE.

20           THERE'S ABSOLUTELY NO POSSIBILITY OF THEM

21   MAKING THAT SHOWING HERE BECAUSE THEY'VE HAD THEIR

22   OWN SOURCE CODE FROM THE BEGINNING OF TIME, AND

23   CERTAINLY THEY HAD IT FROM BEFORE THE TIME THEY

24   PRODUCED IT TO US IN DECEMBER.

25           SO WHY THEY COULDN'T HAVE PUT WHATEVER

21

1       EVIDENCE THEY NEEDED TO PUT INTO THE ORIGINAL

2       OPPOSITION BRIEF AT THE BEGINNING OF SPRING IS

3       COMPLETELY UNCLEAR.  I THINK IT'S JUST THAT THEY

4       DIDN'T GET AROUND TO IT, AND THERE'S NO REASON THAT

5       EITHER THIS COURT OR APPLE SHOULD BEAR THE PRICE OF

6       SAMSUNG NOT GETTING AROUND TO FIGURING OUT WHAT

7       THEIR SOURCE CODE PRODUCTION WAS.

8               IN THE REPLY BRIEF THAT SAMSUNG FILED IN

9       THIS MOTION, IN FACT, THEY PROMISED THAT THEY WOULD

10      GIVE YOU MORE INFORMATION AT THE HEARING TODAY

11      ABOUT THE EPIC 4G.

12              SO I WANT TO TALK ABOUT ACTUALLY THE FOUR

13      SPECIFIC PRODUCTS THAT IN THEIR MOTION THEY SAY

14      HAVE BLUE GLOW.

15              AS YOU KNOW, THE S II, WHICH IS THE ONLY

16      ONE WHERE APPLE CONCEDES BLUE GLOW WAS INVOLVED FOR

17      ONE SPECIFIC S II THAT THEY PRODUCED SOURCE CODE

18      FOR, WE DIDN'T ACCUSE THAT MODEL, THE T-MOBILE

19      MODEL, OF INFRINGING THIS PATENT.

20              SO IT'S REALLY JUST A QUESTION OF THREE

21      PRODUCTS.

22              AS TO THE TAB 10.1 AND THE EXHIBIT 4G, IN

23      THEIR MOTION THEY SAY THAT BLUE GLOW IS IN THOSE

24      PRODUCTS, AND WHEN WE CHALLENGED THAT BY POINTING

25      OUT THAT THE ONLY EXPERT TESTIMONY IN THE CASE IS

1    THAT THOSE PRODUCTS DON'T HAVE BLUE GLOW, BUT

2    RATHER HAVE THE BOUNCE FUNCTIONALITY, THE ACCUSED

3    FUNCTIONALITY -- AND THAT WAS THE TESTIMONY OF

4    DR. BALAKRISHNAN, APPLE'S EXPERT WHO LOOKED AT THE

5    SOURCE CODE -- THEIR RESPONSE TO THAT WAS, ON

6    REPLY, TO BRING IN THIS DECLARATION OF DR. JOHNSON

7    SAYING SOMETHING ABOUT BLUE GLOW.

8         BUT THERE ARE A COUPLE OF REASONS WHY

9    THAT'S INADEQUATE.  FIRST, OBVIOUSLY, TIMELINESS.

10   ON A REPLY FOR A MOTION FOR RECONSIDERATION IS A

11   LITTLE LATE TO SAY WHAT IT IS.

12        BUT SECONDLY, IF YOU LOOK CAREFULLY AT

13   THAT DECLARATION, HE DOESN'T SAY THAT ANY PRODUCT

14   IMPLEMENTS BLUE GLOW OR THAT ANY PRODUCT CALLS BLUE

15   GLOW'S SOURCE CODE OR ANY PRODUCT USES OR THAT ANY

16   OF THESE SOURCE CODE FILES USE BLUE GLOW SOURCE

17   CODE.

18        ALL HE SAYS IS THAT HE'S LOOKED AT THE

19   CODE AND HE SEES THAT IT CONTAINS BLUE GLOW SOURCE

20   CODE OR THAT IT'S PRESENT.

21        AND THOSE WORDS ARE ACTUALLY REALLY

22   IMPORTANT BECAUSE, AS YOU KNOW, WE'RE DEALING HERE

23   WITH SOURCE CODE THAT MAY OR MAY NOT BE PRESENT,

24   BUT THAT DOESN'T MEAN THAT IT'S USED.

25        AND SO A FOR EXAMPLE -- AND I'M SPEAKING

1    STRICTLY THEORETICALLY -- IF GOOGLE AND ANDROID PUT

2    INTO THEIR STOCK SOURCE CODE SOME BLUE GLOW

3    FUNCTIONALITY, AND IF SAMSUNG, WHEN THEY CUSTOMIZE

4    ANDROID FOR USE IN THEIR OWN PRODUCTS, DECIDES NOT

5    TO CALL THAT CODE, BUT INSTEAD TO CALL SOME

6    DIFFERENT CODE THAT IMPLEMENTS THE BOUNCE

7    FUNCTIONALITY BECAUSE THEY LIKE IT, THEN WE SHOULD

8    AND CAN AND DO PROVE INFRINGEMENT, AND THAT'S

9    BALAKRISHNAN'S TESTIMONY.

10             DR. BALAKRISHNAN LOOKED AT THE SOURCE

11   CODE FOR THE TAB 10.1 AND LOOKED AT THE SOURCE CODE

12   FOR THE EXHIBIT 4G AND HE SAID, "I SEE THE SOURCE

13   CODE THAT DOES THE BOUNCE FUNCTIONALITY BEING

14   IMPLEMENTED IN THESE PRODUCTS."

15             THE COURT:  INCLUDING THE 4G?

16             MS. TUCHER:  THE EXHIBIT 4G.  DID I SAY

17   THE WRONG THING?  SORRY.

18             SO AS TO THOSE TWO PRODUCTS, WE HAVE

19   EXPERT TESTIMONY THAT'S UNREBUTTED IN THE CASE THAT

20   THOSE TWO PRODUCTS USE THE ACCUSED BOUNCE

21   FUNCTIONALITY IF YOU LOOK AT WHAT THE SOURCE CODE

22   ACTUALLY DOES.

23             THE COURT:  WHETHER OR NOT IT HAS SOURCE

24   CODE FOR BLUE GLOW OR ANY OTHER FUNCTIONALITY?

25             MS. TUCHER:  PRESENT ALSO SOMEWHERE IN

24

1      THE FILES THAT EXIST FOR THOSE PHONES.

2              AND WE DON'T HAVE ANY TESTIMONY IN THE

3      RECORD FOR THE TRIAL AS TO WHETHER ANY BLUE GLOW

4      SOURCE CODE IS PRESENT.

5              ON THAT SUBJECT, I WANT TO TALK ABOUT

6      DR. JOHNSON'S -- ANOTHER PROBLEM WITH DR. JOHNSON'S

7      DECLARATION.

8              DR. JOHNSON'S DECLARATION IS NOT GOING TO

9      BE EVIDENCE AT TRIAL.  UNLESS WE DECIDE TO THROW

10     OUT ALL THE RULES, DR. JOHNSON'S TRIAL TESTIMONY IS

11     GOING TO BE LIMITED TO WHAT DR. JOHNSON IN HIS

12     REPORT OPINED ON AND WHAT HE TESTIFIED TO IN HIS

13     DEPOSITION CONSISTENT WITH THAT REPORT.

14             AND WE KNOW WHAT THAT IS ON THE SUBJECT

15     OF BLUE GLOW BECAUSE SAMSUNG PROVIDED IT IN THE

16     RECORD FOR THIS MOTION.

17             IF YOU LOOK AT THE TUNG DECLARATION,

18     EXHIBIT 7, WHICH IS THE JOHNSON TESTIMONY THAT THEY

19     HAVE INTRODUCED IN ORDER TO SHOW YOU THAT APPLE

20     ASKED QUESTIONS ABOUT BLUE GLOW, THERE'S LOTS OF

21     TALK ABOUT WITNESSES AT SAMSUNG THAT DR. JOHNSON

22     HAD PRIVATE ACCESS TO AND TALKED TO BLUE GLOW --

23     TALKED ABOUT BLUE GLOW WITH.

24             BUT WE CAN'T USE THAT AND WE CAN'T TEST

25     THAT.  THAT'S JUST HEARSAY.

1          AND THEN HE WAS ASKED -- AND THIS IS PAGE

2     58, LINE 16 -- "HAVE YOU EVER SEEN ANY SOURCE CODE

3     FOR THE BLUE GLOW FUNCTIONALITY?

4          "ANSWER:  NO."

5          GIVEN THAT TESTIMONY IN HIS DEPOSITION,

6     WE HOPE AND ASSUME THAT DR. JOHNSON IS NOT GOING TO

7     COME TO COURT IN TRIAL AND TESTIFY A WORD ABOUT

8     BLUE GLOW.

9          AND GIVEN THAT HE'S NOT GOING TO AND THAT

10    NO OTHER EXPERT FOR SAMSUNG TESTIFIES ABOUT BLUE

11    GLOW SOURCE CODE, WE ASSUME THAT THE ONLY TESTIMONY

12    ABOUT THE SOURCE CODE WILL COME FROM

13    DR. BALAKRISHNAN, AND DR. BALAKRISHNAN'S TESTIMONY

14    ABOUT THE TAB 10.1 AND THE EXHIBIT 4G IS THAT THEY

15    IMPLEMENT SOURCE CODE FOR THE BOUNCE FUNCTIONALITY

16    RATHER THAN BLUE GLOW.

17         THE COURT:  AND DOES DR. BALAKRISHNAN, IN

18    HIS TESTIMONY OR IN HIS REPORT, ADDRESS WHETHER

19    OTHER FUNCTIONALITIES ARE PRESENT, OR IS HE SILENT

20    ON THAT SUBJECT?

21         MS. TUCHER:  AS FAR AS I KNOW, HE'S

22    SILENT ON THE SUBJECT OF WHETHER OTHER SOURCE CODE

23    IS PRESENT.

24         AS YOU KNOW, WE DIDN'T HAVE DR. JOHNSON'S

25    DECLARATION UNTIL TOO LATE FOR US TO TALK TO

1    BALAKRISHNAN AND SUBMIT EVIDENCE ON THAT, WHICH WE

2    WOULD HAVE BEEN ABLE TO DO HAD THEY TIMELY

3    INTRODUCED THAT EVIDENCE IN OPPOSITION TO OUR

4    ORIGINAL SANCTIONS MOTION BACK IN MARCH.

5            ON THE SUBJECT OF OTHER EVIDENCE BESIDES

6    SOURCE CODE, WE'VE TALKED ALREADY ABOUT THE FACT

7    THAT WE'VE -- THAT APPLE BELIEVES IT'S ENTITLED TO

8    THE BEST EVIDENCE, WHICH IS THE SOURCE CODE, AND

9    THAT YOUR HONOR IN YOUR ORDER, PROPERLY RESPONDING

10   TO APPLE'S REQUEST, HAS ALREADY BARRED SAMSUNG FROM

11   INTRODUCING THIS HEARSAY AND OTHER EVIDENCE.

12           MS. MAROULIS IN HER ARGUMENT SAID THERE

13   IS OTHER EVIDENCE THAT THEY'D LIKE TO BE ABLE TO

14   RELY ON ON BLUE GLOW.

15           SHE MENTIONED DOCUMENTS, BUT NO SPECIFIC

16   DOCUMENTS.

17           SHE MENTIONED ADMISSIONS, BUT NO SPECIFIC

18   ADMISSIONS.

19           SHE MENTIONED DEPOSITION TESTIMONY.

20           WE DO HAVE THE SPECIFIC DEPOSITION

21   TESTIMONY, AND I'VE LOOKED AT IT.  IT DOESN'T GET

22   THEM ANYWHERE.  IT'S JUST DIFFERENT -- IT'S US

23   ASKING QUESTIONS ABOUT BLUE GLOW AND THEIR

24   ENGINEERS FOR THE MOST PART SAYING, "UM, NOT ME.  I

25   DON'T KNOW ANYTHING ABOUT THAT," OR "YOU'VE GOT TO

1    ASK SOMEBODY ELSE."

2              WE DON'T HAVE ANYTHING, ANY DOCUMENT, ANY

3    TESTIMONY, ANY OTHER EVIDENCE THAT ACCURATELY AND

4    COMPLETELY EXPLAINS WHERE BLUE GLOW IS DEPLOYED IN

5    PRODUCTS THAT WERE RELEASED WITH THE SOFTWARE THAT

6    THEY GAVE US THAT DIDN'T IMPLEMENT BLUE GLOW, AND

7    THAT'S THE ENTIRE REASON FOR OUR ORIGINAL SANCTIONS

8    MOTION AND WHY WE THINK YOUR ORDER GRANTING OUR

9    MOTION IN SUBSTANTIAL PART WAS PROPER.

10             THE COURT:  SO IF YOU WOULD, MS. TUCHER,

11   BRING ME BACK TO THE PRODUCTS THAT WE'RE TALKING

12   ABOUT HERE, AND I WANT TO MAKE SURE I JUST

13   UNDERSTAND AND ADOPT THE PROPER FRAMEWORK FOR

14   RESOLVING THIS DISPUTE.

15             IN THE DECLARATION THERE ARE FOUR

16   PRODUCTS THAT ARE IDENTIFIED; RIGHT?

17             MS. TUCHER:  YES.

18             THE COURT:  THE S II, THE EXHIBIT 4G, THE

19   GALAXY TAB 10.1, AND THE EPIC 4G.

20             OKAY.  AND AS I UNDERSTAND IT, THAT

21   DECLARATION MAKES CLEAR THAT BEFORE DECEMBER 31,

22   BLUE GLOW SOURCE CODE WAS PRODUCED RELATING TO EACH

23   OF THOSE FOUR PRODUCTS.  CORRECT?  AM I RIGHT SO

24   FAR?

25             MS. TUCHER:  THAT'S WHAT DR. JOHNSON

1    SAYS.

2              THE COURT:  THAT'S WHAT HE SAYS.

3              YOU'RE NOT, IF I UNDERSTAND YOU THIS

4    MORNING, CONCEDING THAT THAT'S TRUE; RIGHT?

5              MS. TUCHER:  EXCEPT AS TO THE S II

6    T-MOBILE VERSION WHICH WE ARE NOT ACCUSING, THAT'S

7    RIGHT.

8              THE COURT:  OKAY.  SO -- OKAY.  THAT

9    CLARIFIES ONE THING IN MY MIND.

10             SO YOU ARE ACCEPTING THAT THAT CODE WAS

11   PRODUCED WITH RESPECT TO THE T-MOBILE VERSION OF

12   THE S II, BUT SINCE OUR LAST DISCUSSION, YOU HAVE

13   DROPPED THAT PRODUCT?  IT IS NO LONGER AT ISSUE IN

14   THIS CASE?

15             MS. TUCHER:  YOUR HONOR, WHEN I WAS HERE

16   BEFORE, I TOLD YOU THAT WE DID NOT ACCUSE --

17             THE COURT:  YOU DID.

18             MS. TUCHER:  -- THE S II --

19             THE COURT:  MY MISTAKE.

20             MS. TUCHER:  -- AND TO BE SPECIFIC, THE

21   T-MOBILE VERSION.

22             THE COURT:  THAT VERSION OF IT.

23             MS. TUCHER:  WE HAVE ACCUSED OTHER S II'S

24   AS TO WHICH WE DON'T HAVE SOURCE CODE INFORMATION

25   AND WE'RE MAKING DO THE BEST WE CAN BECAUSE WE CAN

                                                    29

```
1     MAP BACK WHAT THE VERSIONS ARE.

2              THE COURT:  ALL RIGHT.  I APOLOGIZE FOR

3     THAT STATEMENT ON MY PART, AND I DO RECALL

4     SPECIFICALLY OUR DISCUSSION OF THE T-MOBILE

5     VERSION.

6              SO THE RECORD IS SOMEWHAT MIXED THEN,

7     FROM YOUR PERSPECTIVE, AS TO WHETHER OR NOT, AS TO

8     THESE THREE PRODUCTS THAT ARE AT ISSUE IN THIS

9     CASE, BLUE GLOW SOURCE CODE WAS PRODUCED.  THEY

10    HAVE A DECLARATION SAYING IT WAS.  YOU'RE NOT

11    CONCEDING THAT.

12             DO YOU HAVE ANYTHING TO SUGGEST THAT, IN

13    FACT, THAT DECLARATION IS FALSE AS TO THOSE THREE

14    PRODUCTS?

15             MS. TUCHER:  WHAT I HAVE IS EVIDENCE THAT

16    THAT DECLARATION IS INADEQUATE BECAUSE IT DOESN'T

17    ADDRESS WHETHER THE SOURCE CODE IS ACTUALLY

18    IMPLEMENTED, JUST THAT IT'S PRESENT.

19             AND --

20             THE COURT:  WHICH ONE CAN READ ON THE

21    FACE OF THE DECLARATION; RIGHT?

22             MS. TUCHER:  THAT'S RIGHT.

23             AND BEYOND THAT, I DO HAVE EVIDENCE, AND

24    WE PUT IT IN OUR OPPOSITION TO THEIR MOTION, THAT

25    DR. BALAKRISHNAN, IN HIS SWORN TESTIMONY, HAS
```

30

1    ALREADY SAID THAT WHAT'S IMPLEMENTED IS NOT BLUE

2    GLOW.

3            SO, YOU KNOW, WE CAN'T PROVE IT ISN'T

4    SOMEWHERE IN THERE, BUT WE CAN SAY WE DO HAVE

5    EVIDENCE IT'S NOT IMPLEMENTED --

6            THE COURT:  OKAY.

7            MS. TUCHER:  -- AS TO TWO OF THE

8    PRODUCTS.

9            THE COURT:  AS TO TWO OF THE PRODUCTS,

10   BUT NOT TO THE THIRD?

11           MS. TUCHER:  THAT'S RIGHT.

12           SO AS TO THE EPIC 4G, WE DON'T HAVE

13   EVIDENCE FROM DR. BALAKRISHNAN THAT BLUE GLOW IS

14   NOT PRESENT OR IMPLEMENTED.

15           BUT WHAT WE DO HAVE IS SAMSUNG'S EARLIER

16   STATEMENTS TO US AND TO THE COURT THAT THE SOURCE

17   CODE THAT IT PRODUCED ON DECEMBER 31ST WAS THE

18   ORIGINAL SOURCE CODE FOR THE PRODUCT, THEY'VE TOLD

19   US THAT SEVERAL TIMES; OR THEY'VE ALSO TOLD US FOR

20   PRODUCTS THAT PREEXIST APRIL WHEN THE COMPLAINT WAS

21   FILED, AS THE EPIC 4G DOES --

22           THE COURT:  OKAY.  SO EVEN AS TO --

23           MS. TUCHER:  -- THAT THEY GAVE US --

24           THE COURT:  I'M SORRY.  I CUT YOU OFF.

25           MS. TUCHER:  I WAS JUST GOING TO SAY THAT

1        THEY GAVE US THE VERSION AS OF APRIL 20, 2011.

2                SO SAMSUNG HAS TOLD US TWO DIFFERENT

3        VERSIONS OF "WE GAVE YOU SOURCE CODE FROM SPRING OF

4        2011," YET WE KNOW THAT THEIR BLUE GLOW SOURCE CODE

5        DIDN'T EXIST AT THAT TIME, AT LEAST WHAT THEY'VE

6        SINCE GIVEN US WASN'T IMPLEMENTED AT THAT TIME.

7                AND THE SPECIFIC VERSION THAT THEY SAY IS

8        IN THE EPIC 4G, WHICH I THINK -- I'D HAVE TO CHECK

9        OUR PAPERS, I THINK IT WAS FROM SEPTEMBER -- IN ANY

10       EVENT, IT WAS FROM FALL OF 2011.

11               SO WE KNOW THERE'S SOMETHING FISHY ABOUT

12       WHAT THEY TOLD US.  WE DON'T KNOW WHICH OF THEIR

13       VERSIONS OF THE TRUTH IS WRONG, BUT WE KNOW THEY

14       CAN'T ALL BE RIGHT.

15               THE COURT:  OKAY.  AND JUST SO I CAN

16       FOLLOW YOUR POINT -- I WANT TO MAKE SURE I'VE GOT

17       THIS RIGHT -- THE EPIC 4G IS THE ONLY PRODUCT OF

18       THE THREE WHICH ARE AT ISSUE IN THIS CASE AND FOR

19       WHICH SAMSUNG CLAIMS IT HAS PRODUCED BLUE GLOW

20       SOURCE CODE THAT DR. BALAKRISHNAN IS UNABLE TO

21       CONFIRM IS NOT IMPLEMENTED.  CORRECT?

22               MS. TUCHER:  I WOULD REVISE THAT ONLY BY

23       SAYING THAT DR. BALAKRISHNAN HAS NOT ALREADY

24       CONFIRMED.

25               THE COURT:  OKAY.  SO HE MAY HAVE -- HE

                                                              32

1    PREVIOUSLY CONFIRMED THIS, BUT HE'S NOT --

2              MS. TUCHER:  HE PREVIOUSLY CONFIRMED AS

3    TO THE TAB 10.1 AND THE EXHIBIT 4G.

4              WE DIDN'T GO GET MORE EVIDENCE FROM

5    DR. BALAKRISHNAN IN RESPONSE TO THIS MOTION.  WE

6    SIMPLY PULLED OUT WHAT HE HAD ALREADY DONE BECAUSE

7    THAT'S WHAT'S RELEVANT FOR TRIAL.

8              THE COURT:  FAIR ENOUGH.

9              SO AS TO THE EPIC 4G, YOUR POINT IS THAT

10   WHILE DR. BALAKRISHNAN HAS NOT RECONFIRMED HIS

11   EARLIER ASSESSMENT OF THE IMPLEMENTATION OF THE

12   BLUE GLOW FUNCTIONALITY THAT MAY BE PRESENT OR MAY

13   NOT BE PRESENT, DR. BALAKRISHNAN AND OTHER -- HIS

14   TESTIMONY AND OTHER EVIDENCE IN THE RECORD CONFIRMS

15   THAT A VERSION OF THE EPIC 4G WHICH WAS PRODUCED

16   WAS PRODUCED AT A TIME PRIOR TO THE IMPLEMENTATION

17   OF THE BLUE GLOW?  HAVE I GOT IT?

18             CORRECT ME IF I HAVE IT WRONG.

19             MS. TUCHER:  I THINK I HAVE TO CORRECT

20   YOU ON WHAT BALAKRISHNAN HAS SAID AS TO THE --

21             THE COURT:  GO AHEAD.

22             MS. TUCHER:  -- SOFTWARE THAT GOES TO THE

23   EPIC 4G.

24             AS TO THE EPIC 4G, HE -- AND I MAY HAVE

25   TO CHECK WITH A COLLEAGUE AS TO WHAT HE SAID

1     SPECIFICALLY ON THAT PHONE'S SOFTWARE.

2              BUT WHAT HE DID SAY, AND WHAT SAMSUNG

3     DOES NOT REBUT, IS THAT HE EXAMINED AN EPIC 4G THAT

4     DID NOT HAVE BLUE GLOW IF YOU LOOKED AT HOW IT

5     OPERATED, AND THAT HAD SOURCE CODE THAT WAS OF THE

6     SAME VERSION THAT HE HAD EXAMINED AND THAT DID NOT

7     HAVE BLUE GLOW.

8              SO WHILE I DON'T THINK WE HAVE ANY

9     TESTIMONY ABOUT HIS EXAMINATION OF THE SPECIFIC

10    SOURCE CODE --

11             THE COURT:  SOURCE CODE FOR THE EPIC 4G?

12             MS. TUCHER:  FOR THE 4G THAT THEY

13    PRODUCED.

14             WE DO HAVE HIS TESTIMONY ABOUT OTHER

15    SOFTWARE OF THE SAME VERSION AND OF THE BEHAVIOR OF

16    THE PRODUCT THAT WAS NOT BLUE GLOW.

17             SO IF WHAT THEY PRODUCED IS BLUE GLOW,

18    THEN WHY DIDN'T THEY GIVE US THE PRE-BLUE GLOW

19    VERSION OF THE EPIC 4G?  BECAUSE WE KNOW THERE WAS

20    ONE AND THEY DIDN'T GIVES IT US TO.

21             SO YOUR SANCTION IS APPROPRIATE AS TO THE

22    EPIC 4G, REGARDLESS OF WHICH VERSION THEY GAVE US.

23             THE COURT:  ALL RIGHT.  I THINK I FOLLOW

24    THAT POINT.  YOU WANT TO TURN TO YOUR NEXT

25    ARGUMENT?

                                                      34

```
 1              MS. TUCHER:  YES.  I JUST WANTED TO
 2    ADDRESS THE ARGUMENT THAT MS. MAROULIS MADE THAT
 3    OUR MOTION WAS AS TO INFRINGEMENT AND THEY SHOULD
 4    STILL BE ALLOWED TO USE EVIDENCE OF DESIGN-AROUND
 5    FOR OTHER PURPOSES.
 6              HER PRIMARY EXAMPLE WAS DAMAGES, AND
 7    CERTAINLY FOR DAMAGES IT IS RELEVANT IF THERE ARE
 8    NON-INFRINGING ALTERNATIVES AVAILABLE IN THE
 9    MARKET, BUT THE WAY YOU PROVE THAT IS TO SHOW
10    THAT THERE ARE NON-INFRINGING ALTERNATIVES
11    AVAILABLE IN THE MARKET, WHICH THEY ARE, AND WHERE
12    THEY'RE BOUGHT AND ALL OF THAT SORT OF BUSINESS.
13              AND THAT IS, AGAIN, THE INFRINGEMENT
14    QUESTION THAT WE DON'T HAVE THE EVIDENCE WE NEED TO
15    PROPERLY REBUT WHATEVER SHOWING IT IS THAT THEY
16    INTEND TO MAKE.
17              IT IS A QUESTION OF INFRINGEMENT.  IT
18    COMES IN UNDER THE RUBRIC OF DAMAGES, BUT IT IS
19    STILL ABOUT INFRINGEMENT.
20              NOW, IT IS TRUE THAT THE HYPOTHETICAL
21    AVAILABILITY OF A DESIGN-AROUND IS RELEVANT, AND
22    WE'RE NOT CLAIMING -- WE DON'T READ YOUR ORDER AS
23    REACHING THE HYPOTHETICAL AVAILABILITY OF
24    DESIGN-AROUNDS.
25              SO TO THE EXTENT THAT THEY BELIEVE THAT
```

1    THEY ALREADY HAVE EVIDENCE IN THEIR EXPERT REPORTS

2    THAT THEY CAN INTRODUCE, OR THAT THEY OTHERWISE

3    THINK THAT THEY CAN INTRODUCE ABOUT THE

4    HYPOTHETICAL AVAILABILITY OF DESIGN-AROUNDS, WE

5    DON'T -- WE'RE NOT SAYING YOUR ORDER BLOCKS THAT.

6          WE'RE JUST SAYING ANYTHING AS TO

7    SAMSUNG'S EFFORTS TO DESIGN-AROUND AND TO FIELD

8    DESIGN-AROUND PHONES --

9          THE COURT:  WHICH IS PRETTY MUCH WHAT MY

10   ORDER SAYS; RIGHT?

11         MS. TUCHER:  THAT'S HOW WE READ IT, YOUR

12   HONOR, YES, EXACTLY.

13         THE COURT:  ALL RIGHT.

14         MS. TUCHER:  AND THEN AS TO INJUNCTIONS,

15   I THINK IT'S PREMATURE FOR US TO BE DECIDING HERE

16   WHAT THE EVIDENCE IN A CONTEMPT PROCEEDING ON AN

17   INJUNCTION THAT HASN'T ISSUED SHOULD BE, AND I'M

18   PUZZLED AS TO WHY MS. MAROULIS MAKES THAT ARGUMENT

19   GIVEN THAT THE RELIEF THEY SEEK IS REALLY, AND

20   EXPRESSLY, ABOUT WHAT EVIDENCE SHOULD BE ALLOWED AT

21   TRIAL.

22         SO WE'RE HERE ABOUT WHAT EVIDENCE SHOULD

23   BE ALLOWED AT TRIAL.  WE READ YOUR ORDER AS SAYING

24   THAT AT TRIAL THERE SHOULD BE NO EVIDENCE OF

25   DESIGN-AROUND, WHETHER FOR PURPOSES OF

1    NON-INFRINGING ALTERNATIVES IN THE DAMAGES CONTEXT

2    OR FOR THE MERITS OF WHAT WE'RE --

3              THE COURT:  SO YOU WOULD AGREE THAT MY

4    ORDER DOES NOT PURPORT TO EXTEND BEYOND THE TRIAL

5    AND ADDRESS ANY PROCEEDINGS FOR ANY PERMANENT

6    INJUNCTION OR ANYTHING LIKE THAT?

7              MS. TUCHER:  WE THINK THAT THEIR MOTION

8    DOES NOT REACH BEYOND TRIAL.  THEIR MOTION IS ABOUT

9    WHAT SHOULD HAPPEN AT TRIAL.

10             AS TO WHAT THE IMPLICATIONS OF YOUR ORDER

11   ARE FOR PROCEEDINGS ON PERMANENT INJUNCTIONS OR FOR

12   PROCEEDINGS OF CONTEMPT ON PERMANENT INJUNCTIONS, I

13   THINK A LOT OF THAT WOULD DEPEND ON WHAT JUDGE KOH

14   DOES WHEN SHE DECIDES WHAT EVIDENCE SHE WANTS TO

15   ADMIT FOR THOSE PROCEEDINGS, SO I'D BE RELUCTANT TO

16   TAKE A POSITION NOW AS TO WHAT THE MEANING OF YOUR

17   ORDER IS FOR THOSE PROCEEDINGS.

18             I'M JUST SAYING THAT THEIR MOTION, IF YOU

19   READ WHAT RELIEF THEY'RE SEEKING, IS ABOUT WHAT

20   SHOULD BE ALLOWED AT TRIAL AND, THEREFORE, ANY

21   ARGUMENT ABOUT INJUNCTIONS IS OUT OF PLACE.

22             THE COURT:  AND PRESUMABLY ANY

23   CLARIFICATION I MIGHT BE INCLINED TO ISSUE SHOULD

24   ADDRESS TRIAL AND TRIAL ALONE.

25             MS. TUCHER:  THAT'S RIGHT.

1            THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

2            MS. TUCHER:  NO.

3            THE COURT:  ALL RIGHT.

4            MS. TUCHER:  THANK YOU, YOUR HONOR.

5            THE COURT:  I APPRECIATE YOUR COMMENTS.

6            MS. MAROULIS, ANY REBUTTAL?

7            MS. MAROULIS:  YES, YOUR HONOR, VERY

8    BRIEFLY, AND IF YOUR HONOR HAS QUESTIONS BASED ON

9    COUNSEL'S ARGUMENT, I'D BE HAPPY TO ADDRESS THEM.

10            FIRST OF ALL, COUNSEL MADE A

11   REPRESENTATION THAT THEIR MOTION THAT LED TO THE

12   ORDER REQUESTED RELIEF BROADER THAN FOR

13   INFRINGEMENT, AND AS YOU RECALL, YOUR HONOR, I READ

14   INTO THE RECORD WHAT THE ORDER SAID APPLE

15   REQUESTED.

16            I WENT BACK AND LOOKED AT APPLE'S --

17            THE COURT:  DID I GET IT WRONG?  PERHAPS

18   I WAS THE ONE WHO MISCHARACTERIZED IT.

19            MS. MAROULIS:  NO, YOUR HONOR.

20            I LOOKED AT APPLE'S INITIAL PAPERS, WHICH

21   IS APPLE'S RULE 37(B) MOTION BASED ON ALLEGED

22   VIOLATION, AND THE RELIEF REQUESTED EXACTLY MIRRORS

23   WHAT YOUR HONOR PUT IN THE ORDER AND WHAT I READ

24   EARLIER.

25            SO CONTRARY TO COUNSEL'S REPRESENTATION,

1    THAT WAS THE RELIEF THAT WE'RE SEEKING IN THE

2    MOTION.

3         A NUMBER OF ARGUMENTS WERE MADE ABOUT

4    WHETHER SOURCE CODE IS THE BEST EVIDENCE OR NOT AND

5    WHETHER SAMSUNG CAN MAKE AN EVIDENTIARY SHOWING

6    BASED ON NON-SOURCE CODE EVIDENCE, WHICH IS

7    ADMISSIONS OF APPLE'S EXPERTS, TESTIMONY OF SAMSUNG

8    EMPLOYEES, OR DOCUMENTS.

9         YOUR HONOR, RESPECTFULLY, THAT GOES TO

10   THE WEIGHT OF THE EVIDENCE AS OPPOSED TO EITHER ITS

11   ADMISSIBILITY OR WHETHER SAMSUNG SHOULD BE ALLOWED

12   TO INTRODUCE IT OR IF IT'S PRECLUDED.  IT'S A

13   DIFFERENT ISSUE.

14        THE COURT:  AND OF COURSE WHAT YOU'RE

15   SAYING HERE IS YOU JUST WANT ME TO TELL WHAT YOU I

16   MEANT WHEN I SAID WHAT I SAID.  RIGHT?  YOU'RE NOT

17   HERE TO REARGUE THE MOTION?

18        MS. MAROULIS:  THAT'S CORRECT, YOUR

19   HONOR.

20        AND THE POINT IS WE NEED TO KNOW WHAT WE

21   CAN PRESENT IN TRIAL.

22        BUT I DON'T THINK APPLE CAN SAY THAT

23   WHAT'S OUT THERE ELSE IS NONSUFFICIENT BECAUSE THAT

24   REALLY IS AN ISSUE OF PROOF AND WEIGHT OF EVIDENCE.

25        AND THEN FINALLY, I DIDN'T HEAR ANY

39

1    DISPUTE THAT WE ACTUALLY PRODUCED THE SOURCE CODE

2    PRIOR TO THE DEADLINE.

3            THE ARGUMENTS RAISED WERE ABOUT WHETHER

4    THE DECLARATION WAS ADEQUATE, WHETHER SOMETHING WAS

5    ADEQUATELY COVERED OR NOT IN DECLARATIONS, BUT I

6    DON'T THINK APPLE CAN STAND UP HERE AND SAY THAT

7    THEY DISPUTE THE ACTUAL PRODUCTION OF THE FOUR

8    PRODUCTS' SOURCE CODE THAT WERE PRODUCED PRIOR TO

9    DECEMBER 31.

10           WE'VE HEARD A LOT ABOUT HOW THIS IS LATE

11   RIGHT NOW AND WE SHOULD HAVE INTRODUCED IT IN THE

12   ORIGINAL MOTION, OR HOW DR. JOHNSON'S DECLARATION

13   SHOULD HAVE BEEN STRUCTURED DIFFERENTLY.

14           BUT THEY'RE NOT ATTACKING THE CORE FACTS,

15   WHICH IS WHAT WAS ACTUALLY PRODUCED.

16           THE COURT:  SO HOW DO YOU SQUARE A

17   PRESENTATION ON THE CORE FACTS WITH YOUR, YOUR

18   REPRESENTATION THAT ALL THAT YOU'RE SEEKING THIS

19   MORNING IS A CLARIFICATION?

20           IN OTHER WORDS, IT SEEMS TO ME THAT IF

21   YOU TRULY ARE SEEKING A CLARIFICATION FROM THE

22   COURT OF WHAT I SAID BACK IN MAY, I CAN JUST TELL

23   YOU ALL WHAT I MEANT IF IT'S NOT CLEAR ON ITS FACE,

24   AND IN MANY WAYS IT WOULD BE IMPROPER FOR ME TO

25   CONSIDER ANY EVIDENCE THAT WAS NOT PRESENTED TO ME

1       IN ADVANCE OF THAT.

2                MS. MAROULIS:  YOUR HONOR, WITH RESPECT

3       TO THAT FIRST POINT THAT I STARTED OUT WITH, ALL

4       WE'RE SEEKING IS A CONFIRMATION OF THE LINE IN THE

5       ORDER THAT SAYS WE CAN RELY ON SOURCE CODE THAT WAS

6       PRODUCED PRIOR TO DECEMBER 31.

7                AND AGAIN, THE REASON WE'RE HERE IS THAT

8       THE DISPUTE AROSE BETWEEN THE PARTIES'

9       UNDERSTANDINGS.

10               FOR EXAMPLE, WE ALREADY GOT CLARIFICATION

11      FROM APPLE THAT THEY CONCEDE THAT WE, SAMSUNG, IS

12      NOT BARRED FROM INTRODUCING HYPOTHETICAL

13      DESIGN-AROUNDS FOR DAMAGES, WHICH IS GOOD BECAUSE I

14      BELIEVE OTHER TEAM MEMBERS ON THAT TEAM TOOK

15      DIFFERENT POSITIONS.

16               SO THE CLARIFICATION TO SOME EXTENT HAS

17      ALREADY HAPPENED, AND WE HOPE AT THE END OF THE

18      HEARING WE WILL HAVE AN ORDER THAT'S -- THAT AGREES

19      WITH SAMSUNG'S MOTION FOR CLARIFICATION.

20               THE COURT:  YOU JUST WANT TO KNOW WHERE

21      THE LINE IS DRAWN.

22               MS. MAROULIS:  YES.

23               THE COURT:  I HEAR YOU.

24               ONE LAST QUESTION.  MY UNDERSTANDING IS

25      THAT SAMSUNG HAS SOUGHT RELIEF FROM JUDGE KOH FROM

1    THE ORDER, BUT HAS CONDITIONED IT ON THE

2    CLARIFICATION.  IS THAT CORRECT?

3         MS. MAROULIS:  THAT'S CORRECT, YOUR

4    HONOR, BECAUSE THE DEADLINE FOR FILING THE APPEALS

5    ARE --

6         THE COURT:  I'M NOT CRITICIZING THAT

7    DECISION.  I JUST WANT TO UNDERSTAND THE RECORD.

8         MS. MAROULIS:  YES, WE DID FILE IT.  I

9    DON'T HAVE THAT SPECIFIC PAPER IN FRONT OF ME FROM

10   FEBRUARY WHEN THAT TOOK PLACE, BUT IT WAS A

11   CONDITIONAL --

12        THE COURT:  SURE.  YOU DON'T WANT TO

13   BOTHER JUDGE KOH IF YOU DON'T NEED TO IN LIGHT OF

14   MY CLARIFICATION?

15        MS. MAROULIS:  THAT'S CORRECT, YOUR

16   HONOR.

17        THE COURT:  ALL RIGHT.  ANYTHING FURTHER,

18   MS. MAROULIS?

19        MS. MAROULIS:  IF YOUR HONOR HAS ANY

20   OTHER QUESTIONS ABOUT ANY SPECIFIC ARGUMENTS, I'D

21   BE HAPPY TO RESPOND.

22        THE COURT:  NO.  I THINK I HAVE WHAT I

23   NEED.

24        I APPRECIATE YOUR PRESENTATIONS THIS

25   MORNING.

1          ALL RIGHT.  THE MATTER IS SUBMITTED.

2    YOU'LL GET AN ORDER FROM ME SHORTLY.  I GUESS I

3    WILL SEE SOME OF YOU AT LEAST ON THURSDAY.

4              HAVE A GOOD MORNING.

5              MS. TUCHER:  THANK YOU, YOUR HONOR.

6              MS. MAROULIS:  THANK YOU, YOUR HONOR.

7              THE CLERK:  COURT'S IN RECESS.

8              (WHEREUPON, THE PROCEEDINGS IN THIS

9    MATTER WERE CONCLUDED.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                          CERTIFICATE OF REPORTER

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23            /S/
              _____
24            LEE-ANNE SHORTRIDGE, CSR, CRR
              CERTIFICATE NUMBER 9595
25

                                                      44