1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

    APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6   CORPORATION,                )
                                )  SAN JOSE, CALIFORNIA
7                PLAINTIFF,      )
                                )  JUNE 21, 2012
8           VS.                 )
                                )  PAGES 1-225
9   SAMSUNG ELECTRONICS CO.,    )
    LTD., A KOREAN BUSINESS      )
10  ENTITY; SAMSUNG             )
    ELECTRONICS AMERICA,         )
11  INC., A NEW YORK            )
    CORPORATION; SAMSUNG         )
12  TELECOMMUNICATIONS          )
    AMERICA, LLC, A DELAWARE     )
13  LIMITED LIABILITY           )
    COMPANY,                    )
14                              )
                 DEFENDANTS.    )
15  _____

16            TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE PAUL S. GREWAL
17           UNITED STATES MAGISTRATE JUDGE

18

19

20         APPEARANCES ON NEXT PAGE

21

22

23

24  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                   CERTIFICATE NUMBER 9595
25

                                                          1

1

2    A P P E A R A N C E S:

3    FOR THE PLAINTIFF:   MORRISON & FOERSTER
                          BY:  MICHAEL A. JACOBS
4                              ALISON M. TUCHER
                              RICHARD S.J. HUNG
5                         425 MARKET STREET
                          SAN FRANCISCO, CALIFORNIA  94105
6
                          WILMER, CUTLER, PICKERING,
7                         HALE AND DORR
                          BY:  WILLIAM F. LEE
8                              PETER J. KOLOVOS
                          60 STATE STREET
9                         BOSTON, MASSACHUSETTS  02109

10                        BY:  MARK D. SELWYN
                          950 PAGE MILL ROAD
11                        PALO ALTO, CALIFORNIA  94304

12

13   FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
                          OLIVER & HEDGES
14                        BY:  VICTORIA F. MAROULIS
                          555 TWIN DOLPHIN DRIVE
15                        SUITE 560
                          REDWOOD SHORES, CALIFORNIA  94065
16
                          BY:  KATHLEEN M. SULLIVAN
17                        51 MADISON AVENUE
                          22ND FLOOR
18                        NEW YORK, NEW YORK  10010

19                        BY:  DIANE C. HUTNYAN
                          865 SOUTH FIGUEROA STREET
20                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017

21

22

23

24

25

                                                      2

```
 1    SAN JOSE, CALIFORNIA              JUNE 21, 2012
 2                    P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5              THE COURT:  MR. RIVERA WOULD YOU PLEASE
 6    CALL THE MATTER ON THIS MORNING'S CALENDAR?
 7              THE CLERK:  YES, YOUR HONOR.
 8              CALLING APPLE, INC., VERSUS SAMSUNG
 9    ELECTRONICS COMPANY, ET AL., CASE NUMBER
10    CV-11-1846.
11              COUNSEL, PLEASE STATE YOUR APPEARANCES.
12              MR. JACOBS:  GOOD MORNING, YOUR HONOR.
13    MICHAEL JACOBS FROM MORRISON & FOERSTER FOR APPLE.
14    WITH ME IS ALISON TUCHER AND RICHARD HUNG.
15              THE COURT:  GOOD MORNING, MR. JACOBS.
16              MR. LEE:  GOOD MORNING, YOUR HONOR.
17    BILL LEE FROM WILMER HALE, AND WITH ME IS
18    MARK SELWYN AND PETER KOLOVOS.
19              THE COURT:  MR. LEE, WELCOME.  GOOD
20    MORNING, SIR.
21              MS. MAROULIS:  GOOD MORNING, YOUR HONOR.
22    VICTORIA MAROULIS FROM QUINN, EMANUEL, AND WITH ME
23    ARE MY PARTNERS, KATHLEEN SULLIVAN --
24              MS. SULLIVAN:  GOOD MORNING, YOUR HONOR.
25              MS. MAROULIS:  -- DIANE HUTNYAN, AND WE
```

1    HAVE A WHOLE TEAM OF PEOPLE HERE.  THEY'LL BE

2    INTRODUCING THEMSELVES AS NEEDED.

3              THE COURT:  AS NEEDED.  GOOD MORNING,

4    MS. MAROULIS, TO YOU AS WELL.  GOOD MORNING TO EACH

5    OF YOU.

6              COUNSEL, I HAVE ON MY DOCKET THIS MORNING

7    SIX SEPARATE MOTIONS.  I JUST WANT TO BEGIN BY

8    GIVING YOU ALL A BIT OF A ROADMAP AS TO HOW I'D

9    LIKE TO USE OUR TIME.

10             I UNDERSTAND THAT AT LEAST -- I SUSPECT A

11   SUBSTANTIAL PORTION OF YOU HAVE OTHER COMMITMENTS

12   THIS AFTERNOON DOWN THE HALL, AND I WANT TO BE

13   RESPECTFUL OF JUDGE KOH'S CALENDAR, AND I ALSO NEED

14   TO BE RESPECTFUL OF MY STAFF, SO I AM PREPARED TO

15   GO AS LONG AS NOON OR PERHAPS 12:30, BUT I'M AFRAID

16   WE'RE GOING TO HAVE TO CUT THINGS OFF AT THAT POINT

17   AND TAKE UP WHATEVER ISSUES REMAIN OUTSTANDING ON

18   THE PAPERS.

19             AND SO WITH THAT OBJECTIVE IN MIND, I

20   WOULD LIKE TO PRIORITIZE THIS MORNING'S HEARING AS

21   FOLLOWS:

22             BEFORE WE TURN TO THE SIX MOTIONS THAT

23   ARE CALENDARED, I DID SEE ON MY DOCKET LAST NIGHT

24   THAT AN EMERGENCY MOTION TO STAY AN ORDER ON

25   SEALING HAD BEEN FILED BY SAMSUNG.

1          TO THE EXTENT ANYONE FROM SAMSUNG CAN

2     ADDRESS A FEW QUESTIONS I HAVE ABOUT THAT, I'D LIKE

3     TO DEAL WITH THAT.

4          I'M DON'T -- I'M HAPPY TO HEAR FROM

5     APPLE, BUT MY UNDERSTANDING IS APPLE REALLY DOESN'T

6     HAVE ANY DOG IN THIS FIGHT.

7          SO, MS. MAROULIS, IS ANYONE PREPARED TO

8     ADDRESS THAT?  I KNOW I'VE SPRUNG THIS ON YOU.

9          MS. MAROULIS:  YES, YOUR HONOR.

10          THE REQUEST TO SEAL IS TO GIVE US AN

11     OPPORTUNITY TO FILE, AND IN FACT WE ALREADY HAVE

12     FILED A DECLARATION OF HANKIL KANG ATTESTING TO THE

13     CONFIDENTIALITY OF THE DOCUMENTS SUBMITTED UNDER

14     SEAL.

15          SAMSUNG HAS BEEN FILING DECLARATIONS WITH

16     EACH OF ITS SUBMISSIONS AND WITH THE MAJORITY OF

17     APPLE'S SUBMISSIONS.

18          AS YOUR HONOR KNOWS, WHEN APPLE FILES ITS

19     REQUEST TO SEAL, SOMETIMES THEY COVER SAMSUNG

20     INFORMATION, SOMETIMES THEY COVER APPLE

21     INFORMATION.

22          SO IN SEVERAL OF THE FILINGS POINTED OUT

23     BY YOUR HONOR, SAMSUNG'S DECLARATION DID NOT GET

24     INTO THE RECORD.

25          SO ONCE THE ORDER ISSUED, WE IMMEDIATELY

5

1    FILED AN EMERGENCY MOTION TO STAY THE ORDER AND

2    PREPARED AND SUBMITTED AND FILED A DECLARATION

3    ADDRESSING WHY THESE DOCUMENTS SHOULD BE UNDER

4    SEAL.

5              THE COURT:  SO I HAVE JUST A COUPLE

6    QUESTIONS.

7              MS. MAROULIS:  YES, YOUR HONOR.

8              THE COURT:  I THINK I WOULD AGREE WITH

9    YOU THAT THE SUPPORTING DECLARATIONS DID NOT GET

10   INTO THE RECORD, BUT I THINK IT'S A LITTLE BIT MORE

11   SUBSTANTIAL THAN THAT, ISN'T IT?

12             THERE WAS A SEVEN DAY DEADLINE TO FILE

13   THESE DECLARATIONS SET FORTH BY OUR RULES AND IN

14   MANY, MANY CASES, IN SOME CASES WEEKS PASSED BEYOND

15   THAT DEADLINE.

16             WHY SHOULDN'T I SIMPLY LOOK TO THE RULE

17   AND ENFORCE IT?

18             MS. MAROULIS:  YOUR HONOR, THE DOCUMENTS

19   AT ISSUE ARE HIGHLY CONFIDENTIAL.

20             WE HAVE MADE IN THIS CASE EVERY EFFORT TO

21   PROTECT CONFIDENTIALITY OF BOTH SAMSUNG'S DATA AND

22   APPLE'S DATA.  AND THERE'S BEEN HUNDREDS -- MAYBE

23   NOT HUNDREDS -- BUT DOZENS OF MOTIONS FILED WITH

24   RESPECT TO SEVERAL DOCKET ENTRIES AT ISSUE.  THERE

25   WAS AN OVERSIGHT.

```
 1              AND WE NEED TO CONTINUE TO PROTECT THE
 2    CONFIDENTIALITY OF THESE RECORDS BECAUSE WE'VE MADE
 3    EVERY EFFORT THROUGHOUT THE WHOLE CASE TO PRESERVE
 4    THEM, AND THESE DOCUMENTS CERTAINLY FALL UNDER THAT
 5    CATEGORY.
 6              WE HAVE GONE OVER THEM AGAIN AND
 7    DEDESIGNATED SEVERAL DOCUMENTS TO MAKE SURE THAT
 8    THE SEALING REQUEST IS NARROW AND APPROPRIATE.
 9              THE COURT:  ALL RIGHT.  FAIR TO SAY
10    SOMEONE SCREWED UP HERE?
11              MS. MAROULIS:  THAT'S CORRECT, YOUR
12    HONOR.
13              THE COURT:  WELL, AS TO THE DOCUMENTS
14    THEMSELVES THAT ARE NOW THE SUBJECT OF THE
15    DECLARATION, AGAIN, WITH THE THOUSANDS OF PAGES I
16    HAD TO GO OVER TO PREPARE FOR TODAY ANYWAY, I
17    WASN'T ABLE TO READ EACH AND EVERY ONE OF THEM, BUT
18    I DID HAVE A CHANCE TO LOOK AT A FEW, AND, AGAIN,
19    OUR LOCAL RULE SEEMS PRETTY CLEAR THAT THE
20    SUPPORTING DECLARATION SHOULD IDENTIFY THE PORTIONS
21    OF THE DOCUMENTS WHICH ARE APPROPRIATELY SEALED,
22    AND THAT THE REQUEST SHOULD BE NARROWLY TAILORED SO
23    THAT THE PUBLIC HAS ACCESS TO ALL OF THE OTHER
24    PORTIONS OF THE DOCUMENTS THAT ARE CLEARLY NOT
25    ENTITLED TO THE DESIGNATION.
```

1          AND, YOU KNOW, I CAN GO THROUGH THIS WITH

2     YOU ALL, BUT AS I LOOK AT PORTIONS OF EXHIBIT 5,

3     EXHIBIT 9, EXHIBIT 29 TO THE MAZZA DECLARATION -- I

4     CAN GO ON AND GIVE OTHER EXAMPLES -- THERE ARE

5     ENTIRE SECTIONS OF THOSE DOCUMENTS WHICH ARE

6     CLEARLY NOT A CONFIDENTIAL DOCUMENT.

7          SO I THOUGHT THE LAST TIME THAT I

8     ADDRESSED THIS ISSUE WITH YOUR COLLEAGUE WITH

9     RESPECT TO THE TRANSCRIPTS, I MADE IT CLEAR THAT I

10    THOUGHT THAT THE RULE HERE IS, WITHOUT EXCEPTION,

11    THERE'S SUPPOSED TO BE A NARROW TAILORING.

12          ARE YOU GOING TO --

13          MS. MAROULIS:  IF YOUR HONOR --

14          THE COURT:  ARE YOU GOING TO STAND HERE

15    AND TELL ME THAT ALL OF THESE DOCUMENTS IN THEIR

16    ENTIRETY ARE ENTITLED TO SEALING?

17          MS. MAROULIS:  YOUR HONOR, WE'LL SUBMIT A

18    DECLARATION EXPLAINING WHY, BUT IF YOUR HONOR NEEDS

19    US TO REVISIT THIS, WE WILL DO IT IMMEDIATELY

20    TODAY.

21          BUT IN THE PAST, YOUR HONOR HAS GRANTED

22    BOTH SIDES' REQUESTS TO SEAL DOCUMENTS OF THIS

23    TYPE.

24          THE COURT:  I HAVE, AND I'M REGRETTING MY

25    TRUST THAT WHEN YOU ALL ARE SUBMITTING THESE

1    HUNDREDS OF DOCUMENTS TO ME, THAT WHEN YOU TELL ME

2    SOMETHING IS CONFIDENTIAL, IT TRULY IS

3    CONFIDENTIAL, AND TO PUT MY STAFF THROUGH THE

4    PROCESS AND RIGOR OF HAVING TO REVIEW EACH AND

5    EVERY PAGE AND CONFIRM AND POLICE WHETHER OR NOT

6    THE DOCUMENT IS CONFIDENTIAL IS, I THINK, A BIT

7    UNFAIR, PARTICULARLY WHERE WE'RE DOING OUR VERY

8    BEST TO PREPARE FOR OTHER, MORE SUBSTANTIAL MATTERS

9    THAT ARE TO COME.

10           AGAIN, I'M HAPPY TO GO THROUGH THESE AND

11   SPEND OUR TIME THIS MORNING ADDRESSING THEM, BUT I

12   THINK IT'S CLEAR, ANYONE LOOKING AT THOSE EXHIBITS

13   WOULD SEE ENTIRE SECTIONS OF MULTIPLE DOCUMENTS

14   THAT HAVE NO BUSINESS BEING PROTECTED FROM THE

15   PUBLIC.

16           ALL RIGHT.  SO LET'S MOVE ON TO THE OTHER

17   MOTIONS.  I'LL CONSIDER THE REQUEST BASED ON WHAT I

18   HAVE.  I'M NOT TAKING FURTHER BRIEFING ON THIS.

19           BUT I'LL JUST UNDERSCORE, AGAIN, THE MORE

20   YOU PUT ON MY PLATE THAT CLEARLY DOESN'T MEET THE

21   STANDARDS OF OUR LOCAL RULES, THE LESS RESOURCES

22   THIS COURT AS A WHOLE HAS TO DEDICATE TO MORE

23   SUBSTANTIAL MATTERS.  ALL RIGHT?

24           MS. MAROULIS:  THANK YOU, YOUR HONOR.

25           THE COURT:  LET'S TURN TO THE MOTIONS

```
 1    THAT WERE CALENDARED FOR TODAY.

 2              HERE'S THE ORDER THAT I'D LIKE TO TAKE

 3    THEM UP IN:  I'D LIKE TO FIRST ADDRESS APPLE'S

 4    MOTION FOR ADVERSE INFERENCE; I WILL THEN TURN TO

 5    SAMSUNG'S MOTION FOR RULE 37 SANCTIONS; NEXT I

 6    WOULD LIKE TO TAKE UP WHAT I BELIEVE ARE TWO

 7    RELATED MOTIONS, APPLE'S MOTION -- I'M SORRY --

 8    SAMSUNG'S MOTION TO ENFORCE THE APRIL 12 ORDER AND

 9    APPLE'S MOTION FOR CLARIFICATION OF THAT SAME

10    ORDER; I WILL THEN -- LET ME SEE IF I'VE GOT THIS

11    RIGHT -- I WOULD THEN LIKE TO TAKE UP THE TWO

12    MOTIONS TO STRIKE STARTING WITH APPLE'S AND THEN

13    TURNING TO SAMSUNG'S.

14              SO DOES EVERYBODY HAVE THAT ORDER IN

15    MIND?

16              ALL RIGHT.  LET'S START WITH THE MOTION

17    FOR ADVERSE JURY INSTRUCTION.

18              MS. TUCHER, YOU'RE STANDING.  ARE YOU

19    GOING TO BE PRESENTING THIS ARGUMENT?

20              MS. TUCHER:  I AM, AND I'M JUST LOOKING

21    FOR THE RIGHT OUTLINE NOW THAT WE KNOW WHERE WE'RE

22    STARTING.

23              YOUR HONOR, YOU HAVE THE BIG PICTURE IN

24    THIS CASE.  YOU HAVE THREE TIMES SANCTIONED SAMSUNG

25    FOR THEIR LITIGATION MISCONDUCT JUST IN THIS CASE.
```

1           TODAY WE ARE HERE ASKING YOU TO ENFORCE

2     ESSENTIALLY THE ORDERS OF OTHER FEDERAL JUDGES.

3           IN MOSAID, A DISTRICT OF NEW JERSEY CASE

4     FROM 2004, THE COURT ISSUED A SPOLIATION INFERENCE

5     INSTRUCTION BECAUSE, AFTER THE LITIGATION HAD BEEN

6     FILED, SAMSUNG DIDN'T PLACE A LITIGATION HOLD OR AN

7     OFF SWITCH ON ITS DOCUMENT RETENTION POLICY

8     CONCERNING E-MAIL, WHICH RESULTED IN THE AUTOMATIC

9     DELETION, WHOLESALE DELETION, OF ALL RELEVANT

10    E-MAILS AT SAMSUNG.

11          THE COURT:  IN THE MOSAID CASE, THERE WAS

12    NO INSTRUCTION PROVIDED TO EMPLOYEES TOGETHER WITH

13    THAT FAILURE; CORRECT?

14          MS. TUCHER:  THAT'S RIGHT, YOUR HONOR.

15          BUT IT WAS THE AUTOMATIC -- IT WAS THE

16    AUTOMATIC DELETION OF THE E-MAILS THAT WAS THE

17    RESULT OF -- THAT WAS THE REASON THAT THE COURT

18    ORDERED THE SPOLIATION INSTRUCTION.

19          THE COURT:  RIGHT.  SO I ACCEPT THAT

20    PREMISE.

21          BUT WOULD YOU AGREE THAT IN THAT

22    PARTICULAR CASE, WE HAD A VERY DIFFERENT FACT

23    PATTERN?  WE HAD A SYSTEM WHICH WAS DELETING

24    E-MAILS ON A REGULAR SCHEDULE, BUT THERE WAS NO

25    ADDITIONAL SET OF INSTRUCTIONS TENDERED TO

11

1   EMPLOYEES TO MANAGE THE RISK CREATED BY THAT

2   PROCESS.  CAN WE AT LEAST AGREE ON THAT DISTINCTION

3   HERE?

4           MS. TUCHER:  I WOULD AGREE THERE'S A

5   DIFFERENCE, BUT I WOULD SAY IT'S A DIFFERENCE THAT

6   IS NOT DISPOSITIVE BECAUSE OF THE INADEQUACY OF THE

7   PROCESS THAT WAS PUT IN PLACE HERE.

8           I REALIZE THAT SAMSUNG HAS GIVEN YOU A

9   LOT OF INFORMATION ABOUT THE EFFORTS THAT IT DID

10  MAKE.

11          WHAT I'D LIKE TO FOCUS ON IS WHERE THE

12  EFFORTS WERE INADEQUATE, BECAUSE I THINK THERE WERE

13  TWO VERY CLEAR AND VERY STRONG AND IMPORTANT

14  EXAMPLES.

15          I WOULD CITE TO YOU THE EXAMPLE OF

16  MR. MINHYOUK LEE.  HE IS THE PRINCIPAL DESIGNER OF

17  THE GALAXY S PHONES THAT WE HAVE ACCUSED IN THIS

18  CASE.  HE PRODUCED ABSOLUTELY ZERO E-MAILS IN THIS

19  CASE.

20          I WOULD ALSO CITE TO YOU THE EXAMPLE OF

21  MR. WON PYO HONG WHO YOU ARE FAMILIAR WITH FROM THE

22  APEX MOTION.  HE PRODUCED ABSOLUTELY ZERO E-MAILS

23  IN THIS CASE.

24          SO WHATEVER EFFORTS SAMSUNG DID MAKE TO

25  INSTRUCT CERTAIN EMPLOYEES THAT THEY HAD

1    OBLIGATIONS TO DO SOMETHING, NOTHING WAS DONE IN

2    THE CASE OF THESE TWO VERY IMPORTANT EMPLOYEES AND

3    NO E-MAILS WERE PRODUCED.

4              THE COURT:  MS. TUCHER, MY UNDERSTANDING

5    IS YOU DEPOSED BOTH OF THESE EMPLOYEES.  CORRECT?

6              MS. TUCHER:  YES, THAT'S CORRECT.

7              THE COURT:  WHAT DID THEY TELL YOU WHEN

8    YOU ASKED THEM, AS I SUSPECT YOU DID, "SO DID YOU

9    UTILIZE OR FOLLOW ANY OF THE INSTRUCTIONS PROVIDED

10   TO YOU BY COUNSEL IN TRANSFERRING E-MAILS FROM THIS

11   DELETION SYSTEM ONTO A LOCAL HARD DRIVE OR SOME

12   LOCAL DEPOSITORY?"  WHAT DID THEY TELL YOU?

13             MS. TUCHER:  YOUR HONOR, I DON'T REMEMBER

14   THEIR DEPOSITION TESTIMONY.  I KNOW JUST THE

15   RESULTS OF WHAT THEY DID, WHICH WERE THAT THERE

16   WERE NO E-MAILS.

17             THE COURT:  DO YOU KNOW IF YOU GUYS ASKED

18   THEM THAT QUESTION?

19             MS. TUCHER:  I DON'T RECALL RIGHT NOW.  I

20   CAN CHECK THE RECORD.

21             THE OTHER THING I KNOW IS THAT SAMSUNG'S

22   RESPONSE TO THIS COMPLETE ABSENCE OF E-MAIL FOR

23   IMPORTANT CUSTODIANS -- AND I JUST MENTIONED TWO,

24   BUT WE HAD I THINK 14 OF THEM IN OUR MOVING

25   PAPERS -- IS TO SAY, "WELL, THERE'S NO HARM TO

13

1    APPLE BECAUSE OTHER PARTICIPANTS IN THIS SAME

2    CORRESPONDENCE DID PRODUCE COPIES OF SOME OF THE

3    E-MAILS."

4         AND WE HAVE THE BINDER DECLARATION FROM

5    SAMSUNG.

6         THE COURT:  I'M SORRY, BUT ON THAT POINT,

7    DID YOU -- DO YOU KNOW, DID YOU ASK ANY OF THOSE

8    PEOPLE WHETHER THEY FOLLOWED THE INSTRUCTION AND

9    WHETHER THAT INSTRUCTION WAS MATERIAL TO THEIR

10   HAVING THE E-MAIL?

11        WHAT I'M TRYING TO GET AT HERE IS, IT

12   SEEMS TO ME, IN CASE YOU CAN'T TELL, THAT THE

13   INSTRUCTIONS THAT WERE PROVIDED ARE A KEY ISSUE IN

14   DISTINGUISHING, OR NOT, THE CASE LAW THAT I BELIEVE

15   IS CORRECTLY APPLIED.

16        AND WHAT I'M TRYING TO FIGURE OUT IS,

17   WHAT ARE THE FACTS HERE?  WHAT ARE THESE PEOPLE

18   TELLING YOU ABOUT WHAT THEY DID AS OPPOSED TO WHAT

19   THEIR COUNSEL WAS TELLING THEM TO DO?

20        MS. TUCHER:  DIFFERENT -- OF DIFFERENT

21   WITNESSES WE ASKED DIFFERENT AMOUNTS OF QUESTIONS

22   ON THIS.  AND YOU'LL REMEMBER ALSO WE HAD, I THINK,

23   ONLY SOMETHING LIKE TWO HOURS WITH MR. HONG.

24        THE COURT:  SURE.  THIS WAS A PRETTY KEY

25   ISSUE; RIGHT?

1          MS. TUCHER:  WELL, SO WERE THE

2     SUBSTANTIVE ISSUES THAT WE HAD TO GET TO, SO WE HAD

3     TO MAKE SOME TOUGH CHOICES ABOUT HOW TO DEVOTE OUR

4     DEPOSITION TIME.

5          THE COURT:  RIGHT.  BUT YOU ALL ARE

6     ASKING ME TO PROVIDE NOT JUST A RECOMMENDATION, BUT

7     AN ORDER WHICH WOULD COMPEL THE DISTRICT JUDGE IN

8     THIS CASE TO MESS WITH HER TRIAL.

9          THAT'S A PRETTY SERIOUS REQUEST, SO I

10    WOULD THINK THIS WOULD BE AT LEAST AT THE TOP OF

11    THE LIST, IF NOT AT THE VERY TOP OF THE LIST.

12          SO IN ANY EVENT, WHAT ARE -- WHAT ARE

13    THESE WITNESSES TELLING YOU ABOUT WHAT THEY DID IN

14    RESPONSE TO THE INSTRUCTIONS THAT WERE PROVIDED?

15    ANYTHING?  DO WE HAVE ANY INFORMATION ABOUT THAT?

16          MS. TUCHER:  LET ME GIVE YOU ONE PIECE OF

17    INFORMATION ABOUT WHAT WE KNOW ABOUT EACH OF THESE

18    TWO WITNESSES.

19          WE KNEW GOING INTO THEIR DEPOSITIONS WHAT

20    WE HAD BEEN TOLD IN THE TRANSPARENCY DISCLOSURE,

21    WHICH WAS THAT BACK IN AUGUST OF 2010, THEY HAD

22    RECEIVED INSTRUCTIONS FROM SAMSUNG TO RETAIN

23    E-MAILS AND OTHER RELEVANT DOCUMENTS.

24          THAT'S -- THAT'S WHAT WE WENT INTO THE

25    DEPOSITIONS UNDERSTANDING AND BELIEVING.

1          ONLY AFTER WE FILED THIS MOTION DID

2    SAMSUNG TELL US, "ACTUALLY, THAT'S NOT TRUE.  WE

3    DIDN'T GIVE THEM THOSE INSTRUCTIONS UNTIL MUCH

4    LATER."

5          SO WE'RE ACTUALLY AS FRUSTRATED AS YOU

6    ARE ABOUT THE INABILITY TO DETERMINE SOME OF THESE

7    FACTS BECAUSE SAMSUNG HAS GIVEN US DIFFERENT

8    VERSIONS OF THE FACTS.

9          THE COURT:  SO --

10          MS. TUCHER:  THEY TOLD US FOUR TIMES THAT

11   THE INSTRUCTIONS THAT ARE CRUCIAL HERE TO PRESERVE

12   DOCUMENTS WERE GIVEN IN AUGUST TO THESE CRUCIAL

13   WITNESSES; AND THEN IN DEFENDING THIS MOTION, THEY

14   SAID, "NO, ACTUALLY, THEY WEREN'T," WITHOUT GIVING

15   US ANY EVIDENCE THAT WE COULD JUDGE WHICH STORY WAS

16   TRUE.

17          THE COURT:  SO DO YOU HAVE AT LEAST A

18   CLEAR PICTURE, BECAUSE I SURE DON'T, OF WHO WAS

19   TOLD WHAT WHEN ABOUT HOW TO PRESERVE DOCUMENTS?

20          MS. TUCHER:  I DON'T KNOW WHICH VERSION

21   OF SAMSUNG'S STORY TO BELIEVE.  THEY TOLD US FOUR

22   TIMES THAT THE INSTRUCTIONS WERE GIVEN TO THESE

23   CRUCIAL WITNESSES IN AUGUST AND WE RELIED ON WHAT

24   THEY TOLD US FOUR TIMES.

25          AND THEN THEY TOLD US, IN DEFENDING THIS

1    MOTION, "NO, WE DIDN'T GIVE THAT WHOLE SET OF

2    EMPLOYEES THAT INSTRUCTION IN AUGUST.  WE DIDN'T

3    GIVE THEM THE INSTRUCTION UNTIL THE SPRING."

4         THEY DIDN'T -- BECAUSE THEY DIDN'T GIVE

5    US ANY EVIDENCE SO THAT WE COULD JUDGE WHICH OF

6    THOSE STORIES IS TRUE, I CAN'T TELL WHICH IS TRUE,

7    BUT IT SEEMS FAIR TO HOLD THEM TO THE STORY THEY

8    TOLD FOUR TIMES RATHER THAN LET THEM CHANGE THE

9    STORY NOW WITHOUT ANY EVIDENCE.

10        THE COURT:  ALL RIGHT.

11        MS. TUCHER:  I THINK IT'S ALSO IMPORTANT

12   TO UNDERSTAND THAT WE ARE DEALING WITH A PARTY THAT

13   WILLFULLY DESTROYS DOCUMENTS.

14        WE DO HAVE EVIDENCE ON THAT.  IT COMES

15   FROM A PRESS RELEASE FROM THE KOREAN FTC WHO ISSUED

16   THEIR LARGEST FINDING IN HISTORY AGAINST SAMSUNG IN

17   MARCH OF THIS YEAR FOR CONDUCT THAT INCLUDED

18   DESTROYING DATA AND SWAPPING OUT COMPUTERS WHILE

19   SECURITY GUARDS WERE BLOCKING GOVERNMENT

20   INVESTIGATORS AT THE GATES OF THE FACILITY.

21        THE DEPARTMENT HEAD RESPONSIBLE WAS

22   EVADING THE INVESTIGATION, NOT JUST BECAUSE HE FELT

23   LIKE IT THAT DAY, BUT ACCORDING TO A CONTINGENCY

24   PLAN.  THIS IS SOMEONE WHO'S VERY RELEVANT TO OUR

25   CASE.  HE REPORTS DIRECTLY TO MR. W.P. HONG.  THIS

1    IS IN THE MOBILE COMMUNICATIONS DIVISION AT

2    SAMSUNG.

3         AND SAMSUNG NOT ONLY COMMITTED THIS

4    WHOLESALE DESTRUCTION OF DOCUMENTS AND INFORMATION,

5    BUT THEY SUBMITTED FALSIFIED ACCESS RECORDS TO THE

6    KOREAN FTC DELETING EVIDENCE OF THE ENTRY OF THE

7    EMPLOYEE WHO SWAPPED OUT THE COMPUTERS WHILE THE

8    FTC WAS DENIED ACCESS TO THE FACILITY.

9         THE COURT:  SO DO I HAVE TO SIMPLY TAKE

10   JUDICIAL NOTICE OF THAT ENTIRE INVESTIGATION, OR AM

11   I REQUIRED TO ESSENTIALLY RELITIGATE THE WHOLE

12   ISSUE OF WHAT SAMSUNG'S RESPONSE WAS TO THE

13   INDEPENDENT INVESTIGATION OF A COMPLETELY SEPARATE

14   SOVEREIGN AND ITS AGENCIES?

15        MS. MAROULIS:  I DON'T THINK YOU'RE

16   REQUIRED TO REINVESTIGATE IT.  I THINK YOU CAN TAKE

17   JUDICIAL NOTICE OF IT.

18        I THINK YOU CAN ALSO NOTICE THE ADOPTIVE

19   ADMISSIONS ON SAMSUNG'S PART OF THE KOREAN FTC

20   PRESS RELEASE.

21        I ACTUALLY WANT TO MAKE SURE THAT YOU

22   HAVE THE PRESS RELEASE BEFORE YOU, SO IF I CAN HAND

23   UP SOME MATERIALS?

24        THE COURT:  WERE ALL OF THESE MATERIALS

25   FILED WITH YOUR PAPERS?

18

1          MS. TUCHER:  YES, YOUR HONOR.

2          THE COURT:  THANK YOU.

3          MS. TUCHER:  SO I DIDN'T KNOW THE ORDER

4    YOU'D CALL THE MOTIONS IN, BUT IF YOU --

5          THE COURT:  THAT'S ALL RIGHT.  NEITHER

6    DID I UNTIL ABOUT TEN MINUTES AGO.

7          MS. TUCHER:  -- LOOK TOWARDS THE END --

8          MS. MAROULIS:  YOUR HONOR, WE WANT TO

9    OBJECT TO THE EXTENT THAT THIS BINDER CONTAINS

10   ANYTHING THAT'S NOT IN THE RECORD BECAUSE WE HAVE

11   NOT HAD A CHANCE TO EXAMINE IT.

12         THE COURT:  I WILL NOTE THAT OBJECTION.

13         MS. TUCHER:  OKAY.  SO THE SPOLIATION TAB

14   IS I THINK THE THIRD ONE THERE AND THE PRESS

15   RELEASE FROM THE KOREAN FTC IS THE FIRST DOCUMENT.

16         SO YOU CAN SEE BRIEFLY -- AND THIS IS AN

17   ENGLISH TRANSLATION -- BRIEFLY RECOUNTED THE FACTS

18   THAT I JUST EXPLAINED TO YOU.  YOU CAN SEE PICTURES

19   OF THE DESTRUCTION OF THE DOCUMENTS AND THE MOVING

20   OF THE DOCUMENTS AT THE --

21         MS. SULLIVAN:  YOUR HONOR, I'M SORRY.

22   I'M THE OTHER SAMSUNG COUNSEL, KATHLEEN SULLIVAN,

23   YOUR HONOR.

24         WE JUST WANT TO LODGE AN OBJECTION TO THE

25   PRESENTATION OF THIS.  IT'S UNAUTHENTICATED.  IT'S

1    A DOCUMENT FROM A FOREIGN GOVERNMENT.  THERE'S NO

2    CASE UNDER 803 ABOUT FOREIGN GOVERNMENT DOCUMENTS

3    CREATING A HEARSAY EXCEPTION.  IT'S GOT BLANKS IN

4    IT AS YOUR HONOR CAN SEE.

5            WE HAVE NO FOUNDATION, NO BASIS FOR

6    KNOWING WHAT THIS DOCUMENT IS.

7            SO I WAS PREPARED TO ADDRESS IT LATER,

8    BUT SINCE MS. TUCHER IS GOING INTO IT IN DETAIL, I

9    SIMPLY HAVE TO OBJECT TO IT NOW AS INADMISSIBLE.

10           THE COURT:  ALL RIGHT.  I WILL NOTE THAT

11   OBJECTION AS WELL.

12           MS. SULLIVAN:  THANK YOU.

13           THE COURT:  WHY DON'T YOU GO ON,

14   MS. TUCHER?

15           MS. TUCHER:  I WANT TO NOTE THAT THERE

16   WAS NO OBJECTION TO SOME OF THOSE, ON SOME OF THOSE

17   BASES IN THE PAPERS THAT SAMSUNG FILED.

18           BUT ALSO, WHAT SAMSUNG FILED WAS TWO

19   DECLARATIONS FROM WITNESSES IN A POSITION TO KNOW

20   WHO, RATHER THAN IN ANY WAY DISAGREEING WITH ANY OF

21   THE FACTS HERE, STATED INSTEAD THAT THEY DON'T

22   MATTER FOR THIS CASE BECAUSE THIS IS ABOUT THE

23   KOREAN TELECOM MARKET RATHER THAN THE U.S. MARKET.

24           AND SO THAT'S AN ADOPTIVE ADMISSION, AND

25   ON THE BASIS OF AN ADOPTIVE ADMISSION, YOU CAN --

1    AS WELL AS ON THE BASIS THAT WE EXPLAINED IN OUR

2    BRIEF, YOU CAN ACCEPT THIS EVIDENCE.

3              THE COURT:  ALL RIGHT.  SO LET'S ASSUME

4    FOR THE MOMENT THAT I'M INCLINED TO ACCEPT THAT

5    SAMSUNG ENGAGED IN CERTAIN BEHAVIOR VIS-A-VIS

6    THEIR -- VIS-A-VIS THE FTC AND THE KOREAN

7    GOVERNMENT.

8              HOW DOES THIS MATTER TO THIS CASE?

9              MS. TUCHER:  THE REASON IT MATTERS TO

10   THIS CASE IS, NUMBER ONE, IT SHOWS SAMSUNG, AND

11   PARTICULARLY THE MOBILE PRODUCTS DIVISION PART OF

12   SAMSUNG, WILLING TO FALSIFY INFORMATION, WILLING TO

13   DESTROY INFORMATION IN ORDER TO IMPEDE GOVERNMENT

14   INVESTIGATORS IN THEIR OWN COUNTRY, LET ALONE

15   JUDGES IN A FOREIGN COUNTRY FROM UNDERSTANDING THE

16   TRUTH.

17             IT MATTERS FOR THIS INVESTIGATION BECAUSE

18   WE HAVE FOUND, IN LOOKING AT SAMSUNG'S

19   COMMUNICATIONS WITH U.S. CARRIERS, THAT THERE'S

20   SOME VERY TELLING ADMISSIONS ABOUT THE IMPORTANCE

21   OF THE IPHONE IN SAMSUNG'S DECISIONS ABOUT WHAT --

22   HOW TO MAKE ITS PRODUCTS LOOK AND WORK FOR THE U.S.

23   CONSUMERS.

24             AND WE HAVE EVERY REASON TO BELIEVE THAT

25   THERE WOULD HAVE BEEN SIMILARLY INTERESTING

21

1    DISCLOSURES IN COMMUNICATIONS BETWEEN KOREAN

2    TELECOM AND SAMSUNG.

3              THE COURT:  ALL RIGHT.  SO LET'S JUST PIN

4    THAT POINT DOWN.

5              YOU'RE SAYING THAT THERE'S EVIDENCE IN

6    THE RECORD, AND THAT YOU OBVIOUSLY HAVE PROVIDED TO

7    THE RECORD, REGARDING THE SAMSUNG COMMUNICATIONS

8    WITH CARRIERS HERE IN THE UNITED STATES, AND IT IS

9    YOUR SUPPOSITION, PERHAPS EVEN YOUR BELIEF, THAT

10   THERE ARE SIMILAR COMMUNICATIONS BETWEEN SAMSUNG

11   AND KOREAN CARRIERS WHICH WOULD HAVE SHED SIMILAR

12   LIGHT ON THE SIGNIFICANCE OR IMPORTANCE OF THE

13   DESIGNED FEATURES TO THE DECISION TO CARRY THE

14   PHONE?

15             MS. TUCHER:  YES, YOUR HONOR.  AND THAT'S

16   BECAUSE THE GALAXY S AS IT'S SOLD IN KOREA IS NOT

17   TERRIBLY DIFFERENT FROM THE GALAXY S THAT'S SOLD IN

18   THE UNITED STATES.

19             THE COURT:  IS IT ONLY AS TO THE

20   GALAXY S?

21             MS. TUCHER:  NO.  I USE THAT AS AN

22   EXAMPLE.

23             SO TO RETURN TO YOUR POINT ABOUT THE

24   DIFFERENCES BETWEEN THIS CASE AND MOSAID BEING THAT

25   THERE WERE SOME INSTRUCTIONS GIVEN TO INDIVIDUAL --

1    TO INDIVIDUALS HERE, I WANTED TO MAKE SURE THAT WE

2    FOCUS ON THE LEGAL STANDARD BEING THAT THE LAW

3    REQUIRES SUSPENSION OF THIS SORT OF ROUTINE

4    DOCUMENT DESTRUCTION POLICY THAT SAMSUNG HAS AND

5    THAT THAT'S AN INDEPENDENT OBLIGATION SEPARATE AND

6    APART FROM THE OBLIGATION TO PUT A LITIGATION HOLD

7    ON THE INDIVIDUAL ACTIONS OF EMPLOYEES.

8             AND FOR LEGAL AUTHORITY, I WOULD CITE YOU

9    TO THE ZUBULAKE CASE, ZUBULAKE IV.

10            THE COURT:  BUT IN ZUBULAKE IV, ONCE

11   AGAIN, I DON'T BELIEVE HER HONOR WAS CONSIDERING A

12   SITUATION WHERE THERE WERE SPECIFIC INSTRUCTIONS

13   AND TRAINING PROVIDED IN ADDITION TO THE PROGRAM

14   ITSELF; CORRECT?  ZUBULAKE IS DIFFERENT, TOO; ISN'T

15   IT?

16            MS. TUCHER:  ZUBULAKE EMPHASIZED THE

17   IMPORTANCE OF BOTH PIECES, BUT THEY DON'T HAVE,

18   OBVIOUSLY, EXACTLY THE SAME FACTS AS WE HAVE HERE.

19            THE COURT:  AND WHAT I'M GETTING AT IS IT

20   SEEMED TO ME IN ZUBULAKE IV, WHAT WAS PARTICULARLY

21   TROUBLING WAS THE MAINTENANCE OF THE DOCUMENT

22   DESTRUCTION POLICY WITHOUT ANY GUIDANCE PROVIDED TO

23   ANY EMPLOYEES THAT THEIR DOCUMENTS MATTERED AND, AS

24   A RESULT, THEY NEEDED TO TAKE AFFIRMATIVE STEPS TO

25   PRESERVE THEM.

```
 1              AM I RIGHT ABOUT THAT?  AM I RIGHT IN

 2     READING THE CASE IN THAT WAY?

 3              MS. TUCHER:  I THINK THAT IT IS DIFFERENT

 4     ON THE FACTS IN THAT WAY.

 5              BUT IT -- BUT BOTH OF THESE CASES ARE

 6     DIFFERENT FROM THE CASE THAT SAMSUNG RELIES ON, THE

 7     LIGHTS OF AMERICA CASE, WHERE THERE'S ACTUAL

 8     EVIDENCE THAT NO DOCUMENTS THAT WERE RELEVANT HAD

 9     BEEN DESTROYED, BECAUSE IN LIGHTS OF AMERICA THAT

10     SAMSUNG RELIES ON, THE EFFORTS THAT WERE MADE,

11     SEPARATE AND APART FROM DISABLING AN AUTOMATIC

12     DESTRUCTION REGIME, WERE SUFFICIENT THAT EVERYTHING

13     THAT WAS NECESSARY WAS PRESERVED.

14              THE COURT:  THAT'S MY NEXT QUESTION.

15              MS. TUCHER:  AND THAT WAS SO CLEARLY

16     NOT --

17              THE COURT:  I'M SORRY FOR INTERRUPTING

18     YOU, BUT IT WOULD SEEM TO JUMP AHEAD TO THE

19     ULTIMATE OUTCOME OF THE COMBINATION OF THESE TWO

20     PRACTICES RATHER THAN LOOKING AT, EX ANTE, WAS IT

21     REASONABLE FOR THEM TO RELY UPON THESE INSTRUCTIONS

22     TO MITIGATE WHATEVER RISK WAS CREATED FROM THE

23     ONGOING DOCUMENT DESTRUCTION PROGRAM?

24              MS. TUCHER:  WELL, I GUESS WE CAN JUMP

25     AHEAD THEN AND LOOK AT EXACTLY WHETHER THEIR --
```

1    TALK SOME MORE ABOUT WHETHER THEIR PROGRAM, ASIDE

2    FROM THE DOCUMENT DESTRUCTION, WAS ADEQUATE.

3             AND IN THAT REGARD I WOULD POINT YOU TO

4    THE TESTIMONY OF THE MAN WE DEPOSED TWICE AS

5    SAMSUNG'S PERSON MOST KNOWLEDGEABLE ABOUT THE

6    DOCUMENT RETENTION PROGRAM.

7             YOU MAY HAVE SEEN HIS DECLARATION

8    SUBMITTED IN OPPOSITION TO OUR MOTION, AND I'VE

9    INCLUDED IT HERE AS EXHIBIT 5.

10            HE -- IN OPPOSING OUR MOTION, HE TELLS US

11   THAT HE WAS WRONG IN THE TESTIMONY THAT HE PROVIDED

12   IN DEPOSITION, AND I CAN'T, IN OPEN COURT, GET INTO

13   THE SPECIFICS, BUT I TRIED TO HIGHLIGHT THE

14   RELEVANT LANGUAGE FOR YOU AT TAB 5.

15            SUFFICE IT TO SAY THAT SOME OF THE

16   TESTIMONY HE PROVIDED ABOUT HOW OUTLOOK FUNCTIONS

17   AND IS AVAILABLE WAS -- IS DIFFERENT ON PAPER FROM

18   WHAT IT WAS IN PERSON.

19            AND THAT HIS AWARENESS OF A CERTAIN

20   SAVING MECHANISM ON SAMSUNG'S COMPUTERS IS

21   SOMETHING THAT HE DIDN'T LEARN, EVEN AS A 30(B)(6)

22   DEPONENT, HE DIDN'T LEARN UNTIL IT WAS TIME TO

23   OPPOSE THIS MOTION.

24            SO IF THE 30(B)(6) DEPONENT DIDN'T KNOW

25   THINGS, IT'S HARD TO IMAGINE THAT THEY WERE

1    ADEQUATELY EXPLAINED TO THE CUSTODIANS WHO

2    MATTERED.

3              SO ALTHOUGH WE CERTAINLY GOT COPIOUS

4    INFORMATION FROM SAMSUNG ABOUT EFFORTS THEY MADE,

5    THE FACT THAT THEY HAD TO CHANGE THE FACTS AND, IF

6    YOU WILL, CREATE NEW FACTS IN ORDER TO ACCURATELY

7    OPPOSE THE MOTION IS AN ADMISSION OF THE INADEQUACY

8    OF THE EFFORTS THAT THEY DID MAKE.

9              THE COURT:  LET ME ASK YOU THIS,

10   MS. TUCHER.  IF -- WELL, LET ME ASK THE QUESTION

11   THIS WAY:  DO YOU BELIEVE THAT THERE IS ANY

12   CIRCUMSTANCE IN WHICH A COMPANY EMBROILED IN A

13   LITIGATION OF THIS SIZE AND SCOPE CAN MAINTAIN A

14   TWO MAIL -- I'M SORRY -- TWO WEEK E-MAIL

15   DESTRUCTION PROGRAM?  ARE THERE ANY CIRCUMSTANCES

16   AT ALL WHERE IT WOULD BE APPROPRIATE FOR THEM TO DO

17   THAT?

18             OR ARE YOU ADVOCATING FOR ESSENTIALLY A

19   PER SE RULE THAT WHEN THE LITIGATION HITS AT LEAST,

20   IF NOT BEFORE, WHATEVER YOU TELL YOUR EMPLOYEES,

21   WHATEVER STEPS YOU TAKE TO INSTRUCT THEM TO

22   PRESERVE AND MAINTAIN THEIR DOCUMENTS, YOU'VE GOT

23   TO SHUT DOWN THE -- YOU HAVE GOT TO SHUT DOWN THE

24   DESTRUCTION PROGRAM?

25             MS. TUCHER:  I DON'T THINK I NEED TO GO

26

1    AS FAR AS TO ADOPT A PER SE RULE.

2            I THINK THE FACTS IN THIS CASE ARE SUCH

3    THAT WE'RE WELL SHY OF A PER SE RULE, BECAUSE

4    ALTHOUGH THEY GAVE YOU MOUNTAINS OF DECLARATIONS,

5    THERE IS ENOUGH EVIDENCE THAT THE ACTUAL STEPS THEY

6    TOOK WERE WOEFULLY INADEQUATE AS TO KEY CUSTODIANS.

7            THE COURT:  SO YOU WOULD SUGGEST PERHAPS

8    THAT IN ANY OPINION I WERE TO WRITE, IT WOULD BE

9    APPROPRIATE TO KEEP OPEN THE DOOR, KEEP OPEN THE

10   POSSIBILITY THAT IN THE FUTURE, OTHER PARTIES

11   LOOKING FOR GUIDANCE MIGHT IMPLEMENT SOME TYPE OF

12   INSTRUCTIONAL PROGRAM, OR TRAINING PROGRAM, AND IN

13   THAT WAY SUFFICIENTLY MITIGATE THE RISK?

14           YOU'RE NOT -- YOU WOULD URGE ME NOT TO

15   FORECLOSE THAT POSSIBILITY?

16           MS. TUCHER:  THAT'S RIGHT, YOUR HONOR.

17           THE COURT:  OKAY.  WELL, THEN, LET'S TURN

18   TO THE INSTRUCTIONS OR PROGRAM, OR TRAINING I

19   SHOULD SAY, THAT WAS PROVIDED.

20           I TAKE IT FROM YOUR PAPERS AND FROM YOUR

21   COMMENTS THIS MORNING THAT YOU'RE NOT SATISFIED

22   WITH WHAT SAMSUNG WAS TELLING ITS EMPLOYEES.

23           TELL ME WHY.

24           MS. TUCHER:  PARTLY I'M NOT SATISFIED

25   BECAUSE OF THE RESULTS IT PRODUCED, WHICH ARE

1    WOEFULLY INADEQUATE.

2              PARTLY I'M NOT SATISFIED BECAUSE IT'S NOT

3    CLEAR BECAUSE SAMSUNG'S BEEN INCONSISTENT ABOUT WHO

4    THEY TOLD WHEN THE IMPORTANCE OF TAKING THESE

5    STEPS.

6              IF WE BELIEVE WHAT THEY'RE SAYING NOW,

7    THEY UNDERSTOOD, IN AUGUST OF 2010, THAT LITIGATION

8    WAS LIKELY AND THEY TOLD SOMEBODY, IN AUGUST OF

9    2010, THAT IT WAS IMPORTANT TO BEGIN PRESERVING

10   DOCUMENTS.

11             BUT THEY DIDN'T TELL -- THEY SAY NOW THEY

12   DIDN'T TELL THESE KEY, KEY CUSTODIANS WHO, FRANKLY,

13   UP UNTIL NOW THEY'VE BEEN TELLING US THEY HAD TOLD

14   BACK IN AUGUST OF 2010.

15             SO I DON'T KNOW WHAT THE TRUTH IS.  BUT

16   IF THEY DIDN'T GET -- IF THEY WEREN'T TOLD IN

17   AUGUST OF 2010 WHEN SOME OTHER EMPLOYEES WERE TOLD,

18   THAT'S A PROBLEM.

19             AND IF THEY WERE TOLD AND NEVERTHELESS

20   COMPLETELY DISREGARDED IT AND FOR SOME REASON WE'RE

21   NOW BEING TOLD THEY WEREN'T TOLD, THAT'S ALSO A

22   PROBLEM.

23             THE COURT:  SO I TAKE IT THEN YOU WOULD

24   SUGGEST THAT ONE ELEMENT OF ANY TRAINING PROGRAM OR

25   INSTRUCTION WOULD BE TO DELIVER THE TRAINING OR THE

                                                      28

1    INSTRUCTIONS IN A TIMELY MANNER?

2              MS. TUCHER:  IN A TIMELY MANNER TO THE

3    RIGHT PEOPLE WITH FOLLOW-UP AND, AS A RESULT OF

4    THOSE MEASURES, WITH A SUBSTANTIAL MEASURE OF

5    SUCCESS, AND ON ALL FOUR OF THOSE COUNTS, SAMSUNG

6    WAS LACKING.

7              THE COURT:  WHAT KIND OF FOLLOW-UP WOULD

8    YOU SUGGEST, PARTICULARLY IN A CASE OF THIS SCOPE?

9    DO YOU HAVE TO TELL THEM ONCE A MONTH?  ONCE A

10   QUARTER?  ONCE A YEAR?  ONCE?

11             MS. TUCHER:  I DON'T THINK ONCE IS

12   ENOUGH.  I DON'T THINK THE MOST IMPORTANT -- I

13   DON'T THINK THERE SHOULD BE A BRIGHT LINE RULE

14   ABOUT HOW OFTEN.

15             BUT I THINK IF YOU NEVER -- IF YOU, AS A

16   CORPORATION, NEVER CHECK BACK WITH EVEN YOUR KEY

17   CUSTODIANS AS TO WHETHER THEY ARE, IN FACT,

18   FOLLOWING SOME PROCEDURE FOR SAVING E-MAILS AND YOU

19   HAVE A SYSTEM THAT AUTOMATICALLY DELETES THEIR

20   E-MAILS, THEN YOU HAVEN'T DONE ENOUGH.

21             I COULD WALK THROUGH THE LEGAL STANDARD,

22   BUT IT SEEMS YOUR HONOR IS VERY FAMILIAR WITH THE

23   CASES AND YOU MAY NOT HAVE A DESIRE TO DO THAT, SO

24   GIVEN HOW SHORT OUR TIME IS, UNLESS THERE ARE

25   FURTHER QUESTIONS --

```
 1              THE COURT:  THIS TIME IS FOR THE PARTIES,

 2     SO IF YOU WISH TO CEDE THE REST OF YOUR ARGUMENT,

 3     I'M HAPPY TO GIVE YOU SOME TIME FOR REBUTTAL.

 4              MS. TUCHER:  I'LL WAIT FOR REBUTTAL.

 5              THANK YOU, YOUR HONOR.

 6              THE COURT:  THANK YOU.

 7              MS. SULLIVAN, ARE YOU GOING TO ARGUE THIS

 8     ONE?

 9              MS. SULLIVAN:  YES, YOUR HONOR.

10              THE COURT:  GOOD MORNING.

11              MS. SULLIVAN:  GOOD MORNING, YOUR HONOR.

12     IT'S A PLEASURE TO BE IN YOUR COURTROOM.  THANK

13     YOU.

14              YOUR HONOR, I'D LIKE TO BEGIN WITH YOUR

15     CORRECT POINT THAT IT IS A GRAVE MATTER TO

16     INTERFERE WITH A SCHEDULED TRIAL BY ISSUING THE

17     STRONG MEDICINE OF AN ADVERSE INFERENCE

18     INSTRUCTION, AND APPLE HAS COME NOWHERE CLOSE TO

19     MEETING ITS BURDEN.

20              AND I THINK THAT THE ELEMENTS OF THE

21     REQUIREMENTS HERE ARE IMPORTANT.  MS. TUCHER

22     DECLINED TO GO INTO THEM, BUT I THINK IT WOULD BE

23     HELPFUL FOR US TO TAKE THEM IN ORDER IF WE COULD.

24              AND I'D LIKE TO BEGIN ALSO, YOUR HONOR,

25     BY AGREEING WITH YOUR OBSERVATION OF WHAT APPLE IS
```

1    REALLY ASKING FOR HERE IS A PER SE RULE THAT

2    THERE'S BEEN SPOLIATION IF THERE'S ANY KIND OF AUTO

3    DELETE POLICY WHICH IS NECESSARY TO RUNNING LARGE

4    BUSINESSES AND IT ISN'T COMPLETELY DISABLED.

5           THAT'S AN UNACCEPTABLE RULE.

6    JUDGE SCHEINDLIN IN ZUBULAKE REJECTED IT.  SHE SAID

7    CORPORATE AMERICA WOULD COME TO A HALT IF EVERYBODY

8    HAD TO PRESERVE EVERYTHING.

9           YOUR HONOR'S ADAPTATION OF THE MODEL RULE

10   ALSO RECOGNIZES THE BURDENS THAT ELECTRONIC

11   DISCOVERY IMPOSES, AND YOU SHOULD FIRMLY REJECT

12   THEIR REQUEST FOR A KIND OF PER SE RULE HERE.

13          THE COURT:  I THINK SHE JUST AGREED WITH

14   YOU, THOUGH; RIGHT?

15          MS. SULLIVAN:  SHE DID.

16          THE COURT:  SHE'S NOT ADVOCATING FOR A

17   PER SE RULE.

18          MS. SULLIVAN:  SHE BACKED OFF A LITTLE

19   BIT.

20          BUT LET'S GO INTO THE ELEMENTS HERE AND

21   SHOW WHY THE STANDARD IS NOT MET, AND LET'S START

22   WITH THE DUTY TO PRESERVE.

23          NOW, ASTONISHINGLY, APPLE HAS SUGGESTED

24   THAT THERE WAS A DUTY TO PRESERVE HERE AS EARLY AS

25   AUGUST OF 2010 BASED ON THE FACT THAT THERE WERE

1    LICENSING NEGOTIATIONS, WHICH ARE DESCRIBED IN THE

2    LUTTON DECLARATION IN AUGUST OF 2010, WHICH LEFT

3    OPEN ENTIRELY THE POSSIBILITY OF A NON-LITIGATED

4    RESOLUTION.

5              NOW, IT'S TRUE THAT IN AN ABUNDANCE OF

6    CAUTION, SAMSUNG DID ISSUE HOLD NOTICES TO A VERY

7    SMALL GROUP OF EMPLOYEES THAT WERE DRAFTED IN

8    AUGUST OF 2010 AND ISSUED IN SEPTEMBER OF 2010, AND

9    APPLE WOULD NOW PENALIZE SAMSUNG FOR THE ABUNDANTLY

10   CAUTIOUS BEHAVIOR OF ISSUING A HOLD NOTICE THEN AND

11   SAY THE DUTY TO PRESERVE AROSE AS TO SAMSUNG AS OF

12   AUGUST 2010.

13             WELL, REMARKABLY, WHAT APPLE DOESN'T

14   MENTION IS THAT APPLE DIDN'T ISSUE A HOLD NOTICE,

15   APPLE, THE PLAINTIFF, KNOWING OF ITS CLAIMS THAT IT

16   WAS ABOUT TO BRING SUPPOSEDLY IN AUGUST OF 2010,

17   APPLE DID NOT ISSUE A HOLD NOTICE UNTIL AFTER IT

18   FILED ITS COMPLAINT.

19             INDEED, APPLE DID NOT ISSUE A HOLD

20   NOTICE -- THE DATES ARE ALL REDACTED, BUT YOUR

21   HONOR, I CAN DESCRIBE TO YOU AND YOU CAN SEE IT IN

22   THE RECORD UNDISPUTED -- APPLE DID NOT ISSUE A HOLD

23   NOTICE UNTIL LONG AFTER SAMSUNG ISSUED HOLD NOTICES

24   AFTER APPLE FILED ITS OWN COMPLAINT.

25             THE COURT:  SO MAYBE YOU'VE GOT A

1      TERRIFIC MOTION OF YOUR OWN TO FILE.

2             BUT AS TO WHEN THE DUTY AROSE, WOULD YOU

3      AT LEAST AGREE WITH ME THAT JUDGE SCHEINDLIN AND

4      OTHERS HAVE MADE CLEAR THAT IT'S NOT SIMPLY THE

5      DATE THE COMPLAINT IS FILED?

6             MS. SULLIVAN:  WE'RE NOT SAYING THERE'S A

7      PER SE RULE HERE, YOUR HONOR.

8             BUT IN THIS CASE THERE'S NO EVIDENCE THAT

9      A DUTY AROSE PRIOR TO THE FILING OF THE COMPLAINT.

10            AND, IN FACT, IT WOULD BE A TERRIBLE

11     POLICY TO SUGGEST.  IT WOULD DISCOURAGE GOOD FAITH

12     LICENSING NEGOTIATIONS IF ONE WERE TO SAY, "OH, A

13     HOLD ARISES THE MINUTE YOU GO INTO NEGOTIATIONS,"

14     AND IT WOULD ALSO DISCOURAGE THE PRUDENT ISSUING OF

15     HOLDS IN AN ABUNDANCE OF CAUTION IF YOU WERE TO

16     PENALIZE SAMSUNG FOR ISSUING THE EARLY HOLDS.

17            SO WE'RE NOT SAYING A PER SE RULE THAT

18     THE COMPLAINT IS THE FIRST TIME THERE'S EVER A

19     HOLD, JUST THERE'S NO EVIDENCE HERE THAT THERE WAS

20     A PROBABILITY OF LITIGATION PRIOR TO THE FILING OF

21     THE COMPLAINT.

22            AND I THINK IN THIS CASE IF APPLE DOESN'T

23     KNOW ITS OWN CLAIMS WELL ENOUGH TO ISSUE A HOLD

24     WHEN IT'S GOING INTO THESE NEGOTIATIONS THAT ARE

25     DESCRIBED IN THE LUTTON DECLARATION, YOU CERTAINLY

1    CAN'T HOLD SAMSUNG, AS DEFENDANT, LIABLE FOR

2    KNOWING ITS CLAIMS.

3            IF YOU COMPARE THE NOTICES, IF YOU LOOK

4    AT THE AUGUST AND SEPTEMBER NOTICE, IT'S VERY

5    GENERAL.  SAMSUNG -- IT'S VERY GENERAL BECAUSE WE

6    DON'T KNOW WHAT APPLE'S CLAIMS ARE GOING TO BE.

7            IF YOU LOOK AT THE VERY CAREFULLY DRAFTED

8    NOTICES THAT WE DILIGENTLY PREPARED STARTING IN

9    APRIL OF 2011, THEN YOU'LL SEE THEY'RE PATENT

10   SPECIFIC AND THEY ARE RESPONSIVE TO THE COMPLAINT.

11           SO I'M NOT SUGGESTING A PER SE RULE, YOUR

12   HONOR, BUT WHAT I AM SUGGESTING IS THERE HAS TO BE

13   SOMETHING OTHER THAN GOOD FAITH LICENSING

14   NEGOTIATIONS TOWARD RESOLUTION WITHOUT LITIGATION

15   BEFORE YOU FIND IT.  THERE HAS TO BE A PROBABILITY

16   OF LITIGATION.

17           THE COURT:  SO YOU WOULD ARGUE 51 PERCENT

18   ASSESSMENT, SUBJECTIVELY OR OBJECTIVELY DETERMINED?

19           MS. SULLIVAN:  WELL, YOUR HONOR, I

20   CERTAINLY -- IF THERE WAS SUBJECTIVE EVIDENCE, IF

21   SOMEBODY SAID, "I THINK LITIGATION IS MORE LIKELY

22   THAN NOT," YOU'D HAVE SUBJECTIVE EVIDENCE.

23           I THINK THERE COULD ALSO BE

24   CIRCUMSTANTIAL EVIDENCE.

25           HERE, THOUGH, THERE WAS NO EVIDENCE OF

                                                    34

 1    THE PROBABILITY OF LITIGATION AS TO THIS SET OF

 2    CLAIMS PRIOR TO THE COMPLAINT.

 3         AND, YOUR HONOR, I'D LIKE TO REFER YOU TO

 4    A COUPLE OF CASES THAT I THINK MAKE THIS POINT IF I

 5    COULD.  THEY'RE ALL CITED IN OUR BRIEF.

 6         WE CERTAINLY REFER TO THE FTC VERSUS

 7    LIGHTS OF AMERICA CASE.  THAT'S A VERY, VERY

 8    IMPORTANT CASE FOR THIS PRINCIPLE.  THAT'S THE CASE

 9    THAT SAID THE FTC DOES NOT HAVE TO HOLD DOCUMENTS,

10    ISSUE A LITIGATION HOLD AND QUARANTINE ALL THE

11    COMPUTERS JUST BECAUSE IT ISSUES A CIVIL

12    INVESTIGATION DEMAND.  THAT'S THE IDEA.

13         NOW, YOU MIGHT SAY, WELL, THAT'S -- THE

14    GOVERNMENT'S DIFFERENT.

15         BUT WE'VE CITED TO YOU TWO OTHER CASES

16    THAT I THINK ARE VERY HELPFUL HERE ON THE DATE.

17    ONE IS CACHE LA POUDRE AGAINST LAND O'LAKES,

18    C-A-C-H-E L-A P-O-U-D-R-E VERSUS LAND O'LAKES.

19         THAT'S A CASE THAT DESCRIBES IN QUITE A

20    BIT OF DETAIL HOW THERE WAS A CALL ABOUT POSSIBLE

21    TRADEMARK INFRINGEMENT OF THE LAND O'LAKES MARK AND

22    IT POTENTIALLY COULD HAVE AROUSED A THREAT OF

23    POTENTIAL LITIGATION.

24         THE LITIGATION DOESN'T HAPPEN UNTIL TWO

25    YEARS LATER AND THE COURT DECLINES TO SAY, "OH,

1    WELL, JUST BECAUSE YOU GOT A PHONE CALL THAT SAYS

2    'DON'T USE OUR MARK,' I'M NOT GOING TO SAY YOU HAD

3    TO HOLD THEM.  LITIGATION WASN'T PROBABLE THEN."

4          THE COURT:  BUT LAND O'LAKES, LIGHTS OF

5    AMERICA, WITH ALL DUE RESPECT, COUNSEL, IN NONE OF

6    THOSE CASES WAS THERE A SYSTEMATIC PROGRAM TO PURGE

7    E-MAILS 14 DAYS AFTER THEY WERE INITIATED.  RIGHT?

8    THOSE ARE DIFFERENT FACTS.

9          MS. SULLIVAN:  WELL, THEY ARE, YOUR

10   HONOR.

11         BUT HERE A LITIGATION HOLD WAS ISSUED

12   PROPERLY.

13         AND LET ME, IF I COULD, TURN TO YOUR

14   POINT ABOUT MOSAID.

15         THE COURT:  I WANT TO MAKE SURE THAT I

16   UNDERSTAND YOUR POSITION.  WOULD YOU AGREE WITH ME

17   THAT IN NONE OF THESE CASES THAT YOU ALL ARE CITING

18   WAS THERE A SYSTEMATIC PROGRAM FOR DESTROYING

19   INFORMATION IN PLACE, WELL BEFORE THE NEGOTIATIONS,

20   WELL BEFORE THE LITIGATION CERTAINLY, AND DOESN'T

21   THAT FACT PERHAPS CREATE A DIFFERENT OBLIGATION OR

22   SUGGEST A DIFFERENT STANDARD FOR DETERMINING THE

23   PRUDENCE OF TAKING AFFIRMATIVE STEPS TO PRESERVE

24   DATA?

25         MS. SULLIVAN:  WELL, YOUR HONOR, WE

1    ABSOLUTELY CONCEDE THAT PRUDENT STEPS TO PRESERVE

2    DATA ARE REQUIRED ONCE WE'RE IN THE RIGHT DATE

3    PERIOD.

4             ALL I'M ARGUING NOW IS THAT THE DATE

5    HERE, THE RELEVANT DATE IS APRIL AND THE SUPPOSED

6    ICEBERG OF INFORMATION THAT APPLE TALKS ABOUT

7    FINDING THE TIP OF, THAT ICEBERG DOESN'T EXIST

8    BETWEEN AUGUST AND APRIL.

9             WE THINK WHEN THE DATE ATTACHES, YES, WE

10   DO HAVE PRUDENT -- WE HAVE AN OBLIGATION TO TAKE

11   PRUDENT STEPS TO PRESERVE.

12            BUT WE'RE NOT OBLIGATED TO SYSTEMICALLY

13   DISABLE THE AUTO DELETE PROGRAM.

14            WHAT WE'RE OBLIGATED DO IS TO TAKE

15   PRUDENT STEPS TO MAKE SURE THAT THOSE EMPLOYEES WHO

16   HAVE ACTUAL KNOWLEDGE OF RELEVANT DOCUMENTS, ACTUAL

17   KNOWLEDGE OF RELEVANT DOCUMENTS, ARE PROPERLY

18   INSTRUCTED TO HOLD THOSE DOCUMENTS AND MAINTAIN

19   THEM FOR LITIGATION.

20            NOW, IT'S HARD TO SEE A RECORD IN WHICH

21   ANYONE COULD HAVE TAKEN MORE STEPS TO INSTRUCT

22   RELEVANT EMPLOYEES TO PRESERVE RELEVANT DOCUMENTS

23   THAN THIS RECORD.

24            THE COURT:  WELL, YOU CERTAINLY COULD

25   HAVE AT LEAST TURNED OFF THE AUTO DELETE FEATURE AS

37

```
 1    TO THOSE EMPLOYEES; RIGHT?

 2              MS. SULLIVAN:  ACTUALLY, WE COULD NOT,

 3    YOUR HONOR.  I REFER YOU TO THE DALEY DECLARATION.

 4    THERE IS AN EXPERT DECLARATION ON OUR SIDE,

 5    UNCONTESTED BY AN EXPERT DECLARATION ON THE OTHER

 6    SIDE, IN WHICH A PERSON WITH SUBSTANTIAL EXPERIENCE

 7    AS AN EXPERT -- HE'S NOT TESTIFYING AS A LAWYER

 8    ABOUT A LEGAL CONCLUSION, HE'S TESTIFYING AS AN

 9    EXPERT ABOUT INDUSTRY STANDARDS -- HE WAS PART OF

10    THE SEDONA PRINCIPLES INTERNATIONAL WORKING GROUP,

11    HE'S TESTIFYING AS AN EXPERT ABOUT INDUSTRY

12    PRACTICE, AND HE TESTIFIES THAT OUR SYSTEM, WHICH

13    IS A SYSTEMWIDE AUTO DELETE POLICY THAT DOESN'T

14    HAVE A CAPACITY AT ANY KIND OF ATTAINABLE COST FOR

15    INDIVIDUALIZED EXACTIONS AND THAT WE'VE GOT --

16    THERE'S NO TESTIMONY IN THE RECORD TO CONTEST OUR

17    CLAIM THAT IT WOULD BE PROHIBITIVELY EXPENSIVE AND

18    ALSO PROBLEMATIC GIVEN OUR KOREAN LEGAL

19    OBLIGATIONS, THERE'S AN EXPERT DECLARATION FROM A

20    PROFESSOR OF LAW WHO REMINDS US THAT NOT EVERY

21    COUNTRY IS AS FREEWHEELING WITH PERSONAL DATA AS

22    THE UNITED STATES AND KOREA HAS STRONG PRIVACY

23    OBLIGATIONS.

24              SO WITHOUT HARMING OUR LEGAL OBLIGATIONS

25    AND ACTING AT PROHIBITIVE COST -- THERE'S
```

1    UNDISPUTED EVIDENCE IN THE RECORD THAT IT WOULD

2    COST $37 MILLION A YEAR FOR US TO EXTEND THE HOLD

3    PERIOD COMPANY-WIDE, YOU KNOW, $37 MILLION --

4           THE COURT:  SO WHY NOT MOVE THESE

5    INDIVIDUAL EMPLOYEES WHO ARE MOST OBVIOUSLY

6    IMPLICATED BY THE DEVELOPING SITUATION TO AN

7    INDIVIDUAL SERVER?  WHY NOT HAVE THEM SEPARATELY ON

8    AN OUTLOOK OR EXCHANGE SYSTEM, FOR EXAMPLE?

9           MS. SULLIVAN:  WELL, YOUR HONOR, THE

10    EVIDENCE -- I HAVE TO BE CAREFUL ABOUT WHAT I SAY

11    IN OPEN COURT, AND OBVIOUSLY WE SUPPORT THE NOTION

12    OF PUBLIC KNOWLEDGE.

13           WHAT WE DID -- LET ME BACK UP A STEP.

14           IT IS UNDISPUTED IN THE RECORD THAT THERE

15    ARE TWO WAYS THAT EMPLOYEES CAN SAVE E-MAILS TO

16    THEIR HARD DRIVES OF THEIR INDIVIDUAL COMPUTERS.

17    IT'S UNDISPUTED.  THEY CAN DO SO WITHIN THE

18    PROPRIETARY SERVER-BASED SYSTEM IN A WAY THAT'S

19    DESCRIBED, AND THERE'S NO DISPUTE THAT THAT

20    CAPACITY EXISTS; AND THE SECOND WAY THAT'S BEEN

21    REFERRED TO IS THEY CAN HAVE OUTLOOK ON THEIR

22    COMPUTER.

23           AND I'D LIKE TO BE QUITE CLEAR, EMPLOYEES

24    DO NOT NEED PERMISSION TO HAVE OUTLOOK INSTALLED ON

25    THEIR COMPUTER.  THAT'S CLARIFIED IN OUR BRIEF THAT

1    THE ONLY PERMISSION THAT'S NEEDED IS TO USE OUTLOOK

2    TO SEND MATERIAL OUTSIDE THE COMPANY.

3              SO THERE WERE TWO PREEXISTING,

4    WELL-ESTABLISHED MECHANISMS FOR INDIVIDUAL

5    EMPLOYEES TO SAVE E-MAILS TO THE HARD DRIVE OF

6    THEIR PERSONAL COMPUTERS.  THAT'S UNDISPUTED.

7              THE COURT:  RIGHT.  IT'S ALSO UNDISPUTED,

8    THOUGH, THAT IN EACH OF THOSE TWO SYSTEMS, OR USING

9    THOSE TWO SYSTEMS, THE BURDEN IS ON THE INDIVIDUAL

10   EMPLOYEE TO TAKE AFFIRMATIVE STEPS TO MITIGATE THE

11   RISK THAT THE SYSTEM OTHERWISE APPLIES, WHICH

12   DELETES E-MAIL AFTER 14 DAYS.

13             ALL I'M ASKING IS ONCE YOU ALL HAVE

14   BECOME AWARE IN AUGUST OF 2010 THAT, FOR AT LEAST

15   SOME PEOPLE, THERE MAY BE A SUBSTANTIAL RISK HERE,

16   YOUR HOLD NOTICE CERTAINLY SUGGESTS THAT WAS YOUR

17   SUBJECTIVE STATE OF MIND, WHY NOT TAKE SOME MODEST

18   STEPS TO MIGRATE THEM TO A SYSTEM WHERE THE BURDEN

19   ISN'T ON THE MARKETING PEOPLE AND THE ENGINEERING

20   PEOPLE TO SAVE?

21             MS. SULLIVAN:  WELL, YOUR HONOR, LET'S

22   BACK UP ONE STEP AND TALK ABOUT BURDENS HERE,

23   BECAUSE TO GO BACK TO YOUR POINT, THIS IS AN

24   EXTREMELY STRONG SANCTION.

25             THE BURDEN IS ON APPLE TO SHOW THAT WE

40

1    DESTROYED RELEVANT EVIDENCE.

2              THE BURDEN IS NOT ON SAMSUNG TO SHOW THAT

3    WE TOOK EVERY AFFIRMATIVE STEP IMAGINABLE TO

4    OVER-PRESERVE UNNECESSARY EVIDENCE.

5              SO THE BURDEN IS NOT ON US TO SHOW WE

6    TOOK EVERY STEP TO PRESERVE.  THE BURDEN IS ON

7    APPLE TO SHOW THAT WE DELETED.

8              NOW, WHAT WE'VE PRESENTED TO YOUR HONOR,

9    AND IN THE -- APPLE CONSPICUOUSLY FAILS TO MENTION

10   THAT IT JUST LITIGATED ALL THESE SAME POINTS IN THE

11   ITC, AND JUDGE PENDER, IN AN OPINION THAT I KNOW

12   YOUR HONOR HAS REVIEWED -- IT'S OBVIOUSLY NOT

13   BINDING ON YOUR HONOR, BUT WE THINK IT'S HIGHLY

14   PERSUASIVE HERE WHERE IT'S BASED ON THE SAME

15   PARTIES AND SAME FACTS -- HE SAID THERE'S NO

16   EVIDENCE OF SPOLIATION HERE.  NO EVIDENCE OF

17   DESTRUCTION OF DOCUMENTS.

18             SO WHAT WE DID -- AND THE REASON FOR

19   THAT, YOUR HONOR, IS THAT --

20             THE COURT:  WELL, HE SAID THERE WAS NO

21   EVIDENCE OF DESTRUCTION OF DOCUMENTS ESTABLISHED TO

22   BE RELEVANT.

23             THERE CLEARLY WERE DOCUMENTS DESTROYED

24   HERE.

25             MS. SULLIVAN:  WELL, OF COURSE, YOUR

                                                          41

1    HONOR.  I MEANT WITHIN THE STANDARD.  FAIR POINT,

2    YOUR HONOR.  ABSOLUTELY.

3              BUT APPLE TRIES TO SAY, "PAY NO ATTENTION

4    TO THE ITC DECISION.  THAT'S A BAD FAITH

5    JURISDICTION."

6              BUT THAT'S NOT WHAT JUDGE PENDER SAID.

7    HE REITERATED IT ON THE FIRST DAY OF THE BENCH

8    TRIAL.  HE SAID, "I FOUND NO SPOLIATION.  THERE WAS

9    NO EVIDENCE OF SPOLIATION."

10             AND THE REASON FOR THAT IS WE DID TAKE

11   STEPS AT THE RELEVANT TIMEFRAME -- AND YOUR HONOR,

12   I WOULD RESPECTFULLY SUBMIT THAT THE RELEVANT

13   TIMEFRAME IS APRIL 2011, IT'S NOT AUGUST 2010 --

14   YOU DON'T WANT TO PENALIZE US FOR MAKING A FALSE

15   START, RIGHT, FOR, IN AN ABUNDANCE OF CAUTION,

16   GETTING A LITTLE BIT AHEAD OF THE LINE OF SCRIMMAGE

17   WHEN WE WEREN'T OBLIGATED TO AND TELLING A VERY

18   SMALL GROUP OF PEOPLE, LESS THAN 1 PERCENT OF THE

19   ULTIMATE POPULATION THAT GETS THE HOLD NOTICES IN

20   APRIL OF 2011, YOU DON'T WANT TO PENALIZE US FOR

21   DOING THAT.  THE RELEVANT TIME PERIOD IS APRIL OF

22   2011.

23             AND WHAT DO WE DO THEN?  NOT ONLY DO WE

24   ISSUE HOLD NOTICES MUCH MORE PROMPTLY THAN APPLE,

25   THE PLAINTIFF, DOES TO APPLE EMPLOYEES, WE DO SO IN

1    A VERY RIGOROUS WAY, TO ULTIMATELY 2300 EMPLOYEES

2    IN A VERY SHORT TIMEFRAME, VERY PROMPTLY AFTER THE

3    FILING OF APPLE'S COMPLAINT.

4            BUT WE DO MORE THAN THAT, YOUR HONOR.  IF

5    YOU LOOK AT THE JENKINS DECLARATION, THE

6    HANKIL KANG DECLARATION, YOU'LL SEE THAT WE SENT

7    OVER NUMEROUS, NUMEROUS LAWYERS AND OTHER EMPLOYEES

8    TO HAVE MEETINGS WITH MULTIPLE DIRECTORS, HEADS OF

9    DIVISIONS, MANY, MANY MEETINGS OVER THE COURSE OF

10   APRIL AND MAY IN WHICH THERE WAS A REITERATION OF

11   WHAT AMERICAN DISCOVERY OBLIGATIONS ARE, HOW

12   IMPORTANT IT IS TO RETAIN YOUR DOCUMENTS, THE

13   IMPORTANCE OF MAKING SURE THAT THE PROGRAM IS NOT

14   DELETING DOCUMENTS THAT YOU HAVE A DUTY TO

15   PRESERVE, AN EXPLANATION OF PRINCIPLES OF

16   RELEVANCE.

17           THOSE MEETINGS GO FAR BEYOND THE MERE

18   ISSUANCE OF HOLD NOTICES.  IT'S AN EFFORT TO TELL

19   RELEVANT OFFICERS IN THE COMPANY WHO HAVE POWER TO

20   INFLUENCE THEIR EMPLOYEES WHAT THE IMPORTANCE OF

21   HOLDING DOCUMENTS IS.

22           SO, YOUR HONOR, IT'S THAT SET OF EVIDENCE

23   THAT WE WENT FAR BEYOND, WE EXERCISED OUR DUTY TO

24   PRESERVE RELEVANT DOCUMENTS IN A LOT OF PROACTIVE

25   AND AFFIRMATIVE WAYS.

1           AND I DARE SAY IF THAT'S NOT ENOUGH, IF

2     YOU SAY THAT'S NOT ENOUGH, IT REALLY WILL BE AS IF

3     YOU'RE ADOPTING A PER SE RULE THAT AUTO DELETE

4     SYSTEMS HAVE TO BE DISABLED.

5           BUT WE'VE PUT IN UNCONTESTED EVIDENCE

6     THAT THAT'S NOT SOMETHING WE COULD DO AT A

7     NON-PROHIBITIVE COST IN A SELECTIVE WAY.

8           THE COURT:  I'M SORRY FOR INTERRUPTING.

9     LET ME ASK YOU THIS QUESTION:  IF YOU TOOK ALL

10    THESE AFFIRMATIVE STEPS TO, AT LEAST AS OF

11    APRIL 2011, TO INFORM AND TEACH YOUR EMPLOYEES WHAT

12    THEIR DUTIES WERE TO PRESERVE E-MAILS, THIS

13    AUTOMATIC DELETION PROGRAM NOTWITHSTANDING, DID YOU

14    TAKE ANY STEPS BEYOND THAT TO VALIDATE WHETHER YOUR

15    TRAINING WAS EFFECTIVE?  I MEAN, HOW DO YOU KNOW?

16          MS. SULLIVAN:  WELL, YOUR HONOR, THERE'S

17    NOTHING IN THE RECORD TO SUGGEST THAT THERE WASN'T

18    ONGOING MONITORING.

19          IT'S APPLE'S BURDEN TO SHOW -- LET'S --

20    CAN WE PUT TO THE SIDE WHAT SPOLIATION SHOULD WORRY

21    ABOUT?

22          HUMMER REMBLAT TELLS EMPLOYEES "DELETE

23    E-MAILS."

24          I/O GROUP IS ABOUT DELIBERATE DESTRUCTION

25    OF DOCUMENTS.

44

```
1              WE'RE NOT IN THAT CASE.  WE'RE TALKING

2     ABOUT, HAS A DUTY TO INSTRUCT EMPLOYEES BEEN

3     SATISFIED?

4              AND, AGAIN, IT'S NOT OUR DUTY TO SHOW,

5     IT'S NOT OUR BURDEN TO SHOW THAT WE MET WITH

6     EVERYBODY ON A DAILY BASIS.  HOW MUCH WOULD BE

7     ENOUGH?

8              I THINK WE, IN THE RELEVANT TIME PERIOD,

9     WE ISSUED HOLD NOTICES, WE HAD MEETINGS, AND THE

10    MEETINGS ARE AMPLY DESCRIBED IN THE RECORD, TO

11    INSTRUCT PEOPLE ON THEIR OBLIGATIONS, AND THOSE

12    MEETINGS WERE WITH CORPORATE OFFICERS WHO HAVE

13    ONGOING JURISDICTION OVER THE EMPLOYEES IN THEIR

14    DEPARTMENTS.

15             SO WE MADE A RECORD THAT WE DISSEMINATED

16    THE INFORMATION IN A VERY, VERY RESPONSIBLE WAY.

17             THE COURT:  WELL, BUT ON THAT PARTICULAR

18    POINT, IS THERE ANYTHING IN THE RECORD TO SUGGEST

19    THAT THESE PEOPLE WITH JURISDICTION OVER VARIOUS

20    PARTS OF A LARGE, MULTINATIONAL CORPORATION TOOK

21    ANY FURTHER AFFIRMATIVE STEPS TO MAKE SURE THAT THE

22    PEOPLE BELOW THEM HAD THE SAME UNDERSTANDING THAT

23    THEY DID BASED ON THIS TRAINING?

24             MS. SULLIVAN:  YOUR HONOR, I'M -- I WOULD

25    LOVE TO POINT YOU TO SPECIFIC POINTS IN THE
```

1    DECLARATIONS.  I WANT --

2              THE COURT:  I DIDN'T FIND ANYTHING IN

3    THERE.

4              MS. SULLIVAN:  RIGHT.  YOU -- BUT,

5    REMEMBER, THE QUESTION HERE IS, DID ANYONE DESTROY?

6    DID ANYONE DESTROY?

7              THE COURT:  WE KNOW THEY DESTROYED.

8              MS. SULLIVAN:  RELEVANT DOCUMENTS.

9              THE COURT:  OKAY.  I KEEP HARPING ON THIS

10   POINT BECAUSE I THINK IT'S AN IMPORTANT

11   DISTINCTION.

12             YOU ALL MADE THE AFFIRMATIVE DECISION

13   HERE TO KEEP THAT PROGRAM IN PLACE EVEN AFTER YOU

14   WERE SUED, AND I'M NOT BEGRUDGING THAT.  I THINK

15   ZUBULAKE AT LEAST SUGGESTS YOU HAVE THAT OPTION SO

16   LONG AS YOU HAVE TAKEN APPROPRIATE AFFIRMATIVE

17   STEPS TO MITIGATE AGAINST THE RISK CREATED BY THAT

18   DECISION.

19             BUT THAT WAS A VERY SPECIFIC DECISION

20   THAT YOU ALL MADE; RIGHT?

21             MS. SULLIVAN:  WELL, YOUR HONOR, I'VE

22   TRIED TO EXPLAIN THAT WE CAN'T DISABLE OUR ENTIRE

23   AUTO DELETE SYSTEM AT ANYTHING THAT WOULD BE

24   ACCEPTABLE UNDER ZUBULAKE.

25             THE COURT:  WELL, BUT THAT SUGGESTS THEN

46

1    THAT BECAUSE SAMSUNG MADE A CERTAIN HARDWARE

2    ARCHITECTURE DECISION BACK IN 2001, FOR THE

3    REMAINDER OF ITS PARTICIPATION IN THE U.S. MARKET

4    AND ITS EXPOSURE TO U.S. COMMERCIAL LITIGATION,

5    IT'S OFF THE HOOK.

6             MS. MAROULIS:  NOT AT ALL, YOUR HONOR.

7    NOT AT ALL.  NOT AT ALL.  NOT AT ALL.

8             WHAT WE'RE SAYING IS THAT ONCE THERE'S

9    LITIGATION, WE'RE OBLIGATED TO TAKE AFFIRMATIVE

10   STEPS, AND WHAT YOU AND I ARE HAVING AN ARGUMENT

11   ABOUT IS, HOW MUCH IS ENOUGH?  HOW MUCH IS ENOUGH

12   FOR THESE AFFIRMATIVE STEPS?

13            WE'VE GOT WELL-ESTABLISHED LONG-RUNNING

14   WAYS FOR EMPLOYEES TO SAVE MATERIALS TO THEIR HARD

15   DRIVES, BOTH THE OUTLOOK METHOD AND THE ABILITY TO

16   SAVE FROM THE PROPRIETARY SYSTEM.

17            THE COURT:  BUT NO EVIDENCE THAT ANY OF

18   THESE EMPLOYEES FOLLOWED ANY OF THOSE INSTRUCTIONS;

19   CORRECT?

20            MS. SULLIVAN:  NOT, NOT -- I RESPECTFULLY

21   DISAGREE, YOUR HONOR.  THERE'S EVIDENCE THROUGHOUT

22   THE DECLARATIONS OF OUR EMPLOYEES THAT EMPLOYEES

23   FOLLOWED THESE INSTRUCTIONS.

24            THE COURT:  SO YOU'RE TELLING ME IF I GO

25   BACK AND READ THESE DECLARATIONS, I WILL SEE

1    EVIDENCE CONFIRMING THAT EVEN ONE EMPLOYEE ACTUALLY

2    DID WHAT YOU TOLD THEM TO DO?

3            MS. SULLIVAN:  YOUR HONOR, I WOULD REFER

4    YOU TO THE DECLARATION OF YOUNG-JO LIM, L-I-M,

5    PARAGRAPH 7, WHICH DESCRIBES THE INSTRUCTIONS GIVEN

6    BY THE LEGALLY ADVISED SENIOR OFFICERS TO JUNIOR

7    EMPLOYEES AND THE WAY THAT THERE WAS AN EXPECTATION

8    OF ONGOING COMPLIANCE --

9            THE COURT:  AN EXPECTATION.  BUT IS THERE

10   ANY EVIDENCE?

11           MS. SULLIVAN:  THE EVIDENCE IS THAT THE

12   EMPLOYEES WERE INSTRUCTED TO COMPLY WITH THEIR HOLD

13   OBLIGATIONS, THAT THEY WERE INSTRUCTED

14   AFFIRMATIVELY IF THEY HAD QUESTIONS TO CONTACT

15   IDENTIFIED PERSONS WHO COULD ANSWER THEIR

16   QUESTIONS.

17           THE COURT:  DO WE HAVE ANY EVIDENCE

18   ANYBODY POSED A QUESTION?

19           MS. SULLIVAN:  WELL, APPLE HAS THE BURDEN

20   AND APPLE'S COME FORWARD WITH NO DEPOSITION

21   TESTIMONY.

22           THE COURT:  YEAH, BUT I'VE GOT THE BURDEN

23   OF WRITING THE OPINION.  THIS IS MY CHALLENGE.  I

24   WANT TO MAKE SURE I UNDERSTAND THE FACTS.  I WILL

25   APPLY THE APPROPRIATE BURDEN.  ABSOLUTELY.  THAT'S

1      MY DUTY.

2              BUT WHAT I'M TRYING TO UNDERSTAND IS WHAT

3      HAPPENED HERE.  DID ANY OF THESE PEOPLE DO WHAT YOU

4      TOLD THEM TO DO OR DID THEY ASK QUESTIONS ABOUT

5      WHAT THEY WERE SUPPOSED TO DO?

6              MS. SULLIVAN:  IN FACT, YOUR HONOR, I

7      THINK IF YOU LOOK AT THE DECLARATIONS, YOU'LL SEE

8      THAT MANY OF THE EMPLOYEES DID WHAT WE TOLD THEM TO

9      DO.  I'D REFER YOU TO JOO HYUK KANG, K-A-N-G,

10     PARAGRAPHS 4 -- PARAGRAPH 4 IN PARTICULAR; THE

11     DECLARATION OF MINCHEOL SCHIN, S-C-H-I-N, AGAIN,

12     PARAGRAPH 4.

13             THESE ARE PLACES IN WHICH EMPLOYEES SAY

14     "I WAS GIVEN THE INSTRUCTIONS AND I COMPLIED WITH

15     THEM."

16             NOW, YOU'LL SEE, YOUR HONOR -- IF WE

17     WANTED TO CLOSE THE COURTROOM, I'D BE HAPPY TO GO

18     THROUGH ALL 30 OF THE CUSTODIANS, 30 CUSTODIANS --

19     AND BY THE WAY, WHEN WE GET TO RELEVANCE, OF

20     COURSE, MANY DOCUMENTS CAME IN THROUGH

21     NON-CUSTODIAL SOURCES.  WE SAY THAT DEFEATS ANY

22     ZUBULAKE POSSIBILITY THAT UNIQUE RELEVANT DOCUMENTS

23     WERE SUPPRESSED.

24             BUT PUTTING THAT TO ONE SIDE, YOUR HONOR,

25     I'M JUST GIVING YOU EXAMPLES HERE, MINCHEOL SCHIN,

1    JOO HYUK KANG ARE EMPLOYEES WHO STATED IN PARAGRAPH

2    4 THAT THEY COMPLIED WITH THEIR INSTRUCTIONS.

3            NOW, THE WAY THAT EMPLOYEES COMPLIED WITH

4    THEIR INSTRUCTIONS IS WE'VE GOT NUMEROUS DECLARANTS

5    WHO SAY "I HAVE OUTLOOK.  I SAVED ALL MY E-MAIL."

6    AND CONSPICUOUSLY, APPLE STOPS TALKING ABOUT THEM

7    IN ITS BRIEFS BECAUSE THEY COMPLIED.

8            THERE ARE ALSO A NUMBER OF EMPLOYEES WHO

9    COMPLIED BY SAVING THEIR E-MAILS IN THE PROPRIETARY

10   SYSTEM.  LET ME GIVE YOU ONE MORE.  THE DECLARATION

11   OF WOOUP KWON, K-W-O-N -- THAT'S W-O-O-U-P

12   K-W-O-N -- PARAGRAPH 5 AGAIN DESCRIBES A REQUEST

13   AND IT DESCRIBES COMPLIANCE WITH THE REQUEST.

14           ONE MORE.  KANG HYUN LEE, THE DECLARATION

15   OF KANG HYUN LEE, PARAGRAPH 4, RECEIVED A DOCUMENT

16   INSTRUCTION AND COMPLIED WITH IT.

17           I DON'T WANT TO TAX YOUR HONOR'S PATIENCE

18   BY GIVING YOU MORE EXAMPLES, BUT THOSE ARE

19   ILLUSTRATIVE OF THE PRINCIPLE THAT THE EMPLOYEES

20   WHO GOT THE INSTRUCTIONS COMPLIED.  THEY COMPLIED

21   EITHER BECAUSE THEY ALWAYS SAVED THEIR E-MAIL ON

22   OUTLOOK, WHICH SAVED EVERYTHING -- AND THE AMERICAN

23   SUBS, OF COURSE, YOU HAVE THE DECLARATION OF

24   MR. FINNEGAN THAT THE AMERICAN EMPLOYEES SAVED

25   EVERYTHING ON OUTLOOK IN THE AMERICAN SUBS, SO

1    WE'RE TALKING REALLY ONLY ABOUT THE KOREAN PARENT,

2    AND WE'VE GOT THE DECLARATIONS OF NUMEROUS OF THESE

3    DECLARANTS SAYING THEY COMPLIED WITH THE

4    INSTRUCTIONS.

5         SO WE THINK WE'VE MADE A VERY STRONG

6    RECORD THAT THE HOLDS WERE ISSUED IN A TIMELY WAY,

7    THE INSTRUCTIONS WERE NOT JUST MADE IN A

8    BOILERPLATE WAY.

9         WE, AT ENORMOUS EXPENSE, BROUGHT IN MANY

10   LAWYERS -- THIS IS DESCRIBED IN THE JENKINS

11   DECLARATION -- TO HAVE NUMEROUS IN-PERSON MEETINGS

12   WITH GROUPS OF EMPLOYEES TO MAKE SURE THAT THESE

13   INSTRUCTIONS WERE UNDERSTOOD, THAT IT WASN'T SOME

14   PIECE OF PAPER THAT COULD BE IGNORED, THAT THEY

15   WERE EXPLAINED, THAT THE UNITED STATES LAW WAS

16   EXPLAINED, THAT PRINCIPLES OF RELEVANCE WERE

17   EXPLAINED, THAT THE RELEVANT I.P. WAS EXPLAINED.

18        SO, YOUR HONOR, IF YOU WERE TO PENALIZE

19   SAMSUNG FOR UNDERTAKING ALL OF THESE STEPS, IT

20   WOULD SEND A VERY GRAVE MESSAGE TO OTHER COMPANIES

21   THAT TO UNDERTAKE ALL THESE CAREFUL EFFORTS IS NOT

22   TO BE REWARDED.

23        NOW, I WAS ASTONISHED TO HEAR MS. TUCHER

24   REFER TO MOSAID FOR THE EXACT REASON THAT YOUR

25   HONOR POINTED OUT.

51

1            MOSAID WAS A CASE IN WHICH THERE WAS NO

2      LITIGATION HOLD, SO THE OPERATION OF THE AUTO

3      DELETE PROGRAM WITHOUT THE INSTRUCTIONS TO HOLD

4      YOUR DOCUMENTS, THAT WAS WHAT THE NEW JERSEY

5      DISTRICT COURT FOUND WARRANTED SANCTIONS IN MOSAID.

6            WHAT MESSAGE WOULD IT SEND TO SAMSUNG IF

7      YOU SAID, "WELL, IN MOSAID, YOU DIDN'T ISSUE A

8      LITIGATION HOLD," AND WE COME TO YOU TODAY AND WE

9      SAY, "NOT ONLY DID WE ISSUE A LITIGATION HOLD, WE

10     SENT OVER BOAT LOADS OF LAWYERS TO EXPLAIN THE DUTY

11     TO PRESERVE AND THE PRINCIPLES OF RELEVANCE"?

12            WE HAD FOUR MEETINGS WITH A KEY CORE

13     CONTROL GROUP OF PEOPLE AT THE TOP OF THE PYRAMID

14     SO THAT THEY WOULD SPREAD THEIR INSTRUCTIONS.

15            WE'VE GOT DECLARANTS SAYING TO A PERSON

16     THEY NEVER INTENTIONALLY DELETED RELEVANT

17     DOCUMENTS.

18            AND WE'VE GOT NUMEROUS DECLARANTS, LIKE

19     THE ONES I JUST MENTIONED TO YOU, WHO SAY THEY TOOK

20     THEIR INSTRUCTIONS SERIOUSLY AND HERE'S HOW THEY

21     FOLLOWED THEM.

22            SO WE'VE MADE THE RECORD THAT SHOULD

23     SATISFY YOUR HONOR THAT AN AUTO DELETE PROGRAM CAN

24     BE SUBJECT TO INDIVIDUALIZED STEPS.

25            YOUR HONOR, IF I COULD SPEAK TO THE OTHER

1    TWO ELEMENTS?

2              THE COURT:  GO AHEAD.

3              MS. SULLIVAN:  WE WENT OFF ON A DATE.

4              AND YOUR HONOR, I JUST WANTED TO CORRECT

5    ONE -- MAKE ONE ANSWER I DIDN'T HAVE TIME TO MAKE

6    TO YOUR HONOR EARLIER.

7              I MENTIONED SOME CASES THAT I THOUGHT

8    WERE HELPFUL ON THE DATE ISSUE.  REMEMBER WE WERE

9    DISCUSSING YOU SHOULDN'T TREAT NEGOTIATIONS AS THE

10   PERIOD THAT CREATES THE DUTY TO PRESERVE AND I

11   MENTIONED THE FTC VERSUS LIGHTS OF AMERICA CASE AND

12   I MENTIONED CACHE LA POUDRE.

13             I WANTED TO MENTION ONE MORE CASE FOR

14   YOUR HONOR'S CONSIDERATION ON THE DATE, AND THAT'S

15   JUDGE PATEL'S DECISION IN REEL NETWORKS CITED IN

16   OUR BRIEF, WHICH ALSO SUGGESTS THAT YOU DON'T WANT

17   TO LIGHTLY TREAT NEGOTIATIONS AND TELEPHONE

18   CONVERSATIONS AS THE SAME AS A PROBABILITY OF

19   LITIGATION.

20             BUT, YOUR HONOR, YOU THEN ASKED, WELL,

21   WEREN'T THOSE CASES DIFFERENT BECAUSE THEY WEREN'T

22   ABOUT AUTO DELETE PROGRAMS?

23             BUT WITH RESPECT, YOUR HONOR,

24   CACHE LA POUDRE WAS ABOUT AN AUTO DELETE PROGRAM.

25   IT WAS A CASE IN WHICH THE DEFENDANTS WERE ASKED --

1    YOU KNOW, THE ADVERSE INFERENCE WAS SOUGHT BASED ON

2    DEFENDANT'S FAILURE TO DISCONTINUE ROUTINE

3    ELIMINATION OF E-MAIL AND OVERRIDING THE BACKUP

4    DATA.

5           SO CACHE LA POUDRE -- AND CACHE LA POUDRE

6    REJECTS THE ADVERSE INFERENCE, EVEN UNDER THOSE

7    CIRCUMSTANCES.

8           SO THERE IS PRECEDENT, YOUR HONOR, FOR

9    TREATING AFFIRMATIVE STEPS TAKEN AS SUFFICIENT EVEN

10   IN THE ABSENCE OF DISABLING THE AUTO DELETE.

11          BUT, YOUR HONOR, WHILE WE'RE ON MOSAID, I

12   JUST WANTED TO TALK ABOUT THE SECOND ELEMENT.  WE

13   GOT A LITTLE OFF -- AND I'M GLAD WE DID, WE GOT

14   INTO THE POLICY QUESTIONS HERE -- BUT WE GOT INTO

15   IT ON THE FIRST ELEMENT OF WHEN DOES THE DUTY TO

16   PRESERVE ARISE.

17          AND ON THE ELEMENT OF CULPABILITY, THERE

18   HAS TO BE A CULPABLE STATE OF MIND.  THE -- LET'S

19   BE CLEAR ON WHAT THE NINTH CIRCUIT STANDARD IS HERE

20   BECAUSE THERE'S BEEN A LITTLE BACK AND FORTH.

21          THE NINTH CIRCUIT STANDARD IS CLEARLY

22   THAT THERE HAS TO BE ACTUAL KNOWLEDGE OF RELEVANT

23   EVIDENCE.  THAT'S WELL SETTLED.

24          IT'S TRUE THAT GLOVER SAYS THERE DOESN'T

25   HAVE TO BE BAD FAITH.  WE'RE NOT A BAD FAITH

1    JURISDICTION.

2                    WE DON'T THINK THERE'S ANY EVIDENCE OF

3    ANY CULPABLE STATE OF MIND, WHETHER NEGLIGENCE,

4    KNOWLEDGE, OR BAD FAITH.

5                    BUT WE THINK APPLE'S BURDEN IS TO AT

6    LEAST SHOW ACTUAL KNOWLEDGE OF RELEVANT DOCUMENTS

7    THAT YOU DESTROYED, AND WE THINK THAT'S CLEAR FROM

8    THE CASES WE CITED ON PAGE 19 OF OUR BRIEF.

9                    THE COURT:  OKAY.

10                   MS. SULLIVAN:  SO IF YOU ACCEPT THAT THE

11   STANDARD IS ACTUAL KNOWLEDGE, THEY'VE COME NOWHERE

12   CLOSE TO MEETING THEIR BURDEN.

13                   AND IT'S KIND OF TELLING THAT YOU -- AND

14   THE RELEVANT CASES, YOUR HONOR, AT PAGE 19 ARE

15   AKIONA, 938 F.2D AT 161.  THAT'S THE GRENADE IN THE

16   PARKING LOT IN HAWAII CASE THAT USES THE TERM

17   "ACTUAL NOTICE;" AND MEDICAL LABS MANAGEMENT,

18   306 F.3D AT 829 -- I'M SORRY -- AT 824.

19                   AND IT'S STUNNING THAT, YOU KNOW, APPLE

20   IS TALKING ABOUT A NEGLIGENCE STANDARD BASED ON

21   DICTA FROM A COUPLE OF DISTRICT COURT CASES.

22                   THERE'S NO NEGLIGENCE STANDARD IN THE

23   NINTH CIRCUIT AND THEY CAN'T CITE A SINGLE CASE IN

24   WHICH THE NINTH CIRCUIT HAS EVER APPROVED ADVERSE

25   INFERENCE INSTRUCTIONS BASED ON NEGLIGENCE, CAN'T

1      CITE A SINGLE CASE.

2                SO WE'RE IN THE REALM OF ACTUAL KNOWLEDGE

3      BEING REQUIRED.

4                AND HERE, YOUR HONOR, WHERE WE'VE

5      DEMONSTRATED ALL OF THESE CAREFUL STEPS TO

6      PRESERVE, THE ONES I'VE JUST DESCRIBED TO YOU --

7      AND THANK YOU, YOUR HONOR, FOR INVITING ME TO TELL

8      YOU A LITTLE BIT ABOUT HOW THOSE INSTRUCTIONS WERE

9      CARRIED OUT, BECAUSE IT'S IN THE RECORD -- IF WE'VE

10     COMPLIED SO CAREFULLY, THEY'VE FALLEN FAR SHORT OF

11     ANY SHOWING THAT RELEVANT DOCUMENTS WERE DESTROYED

12     WITH ACTUAL KNOWLEDGE.

13               NOW, THE SIGN OF THE DESPERATION HERE IS

14     THAT THEY LOOK TO THESE COMPLETELY IRRELEVANT OTHER

15     EXAMPLES.

16               WE'VE TALKED ABOUT MOSAID.  THAT'S

17     IRRELEVANT BECAUSE THERE WAS NO LITIGATION HOLD.

18     COULDN'T BE MORE DIFFERENT.

19               IN FACT, YOU COULD SEE THIS CASE, IN A

20     WAY, AS LEARNING FROM MOSAID.  HERE'S A COMPANY

21     THAT GETS SMACKED IN NEW JERSEY.  IT COMES BACK AND

22     WORKS DILIGENTLY, ROBUSTLY, TO TRY TO MAKE SURE IT

23     DOESN'T REPEAT THAT ERROR, TO COMPLY WITH ALL OF

24     ITS U.S. OBLIGATIONS.

25               THE LAST THING YOU WANT TO DO IS USE

                                                              56

1    MOSAID AGAINST US.

2              THEY CITE FRACTUS, AND IT'S ABSOLUTELY

3    CLEAR THAT THERE WAS NO ADVERSE INFERENCE GRANTED

4    IN FRACTUS.

5              AND THEN IN THE MOST DESPERATE EFFORT OF

6    ALL TO PAINT US AS BAD ACTORS, THEY BRING IN THE

7    KOREA FAIR TRADE COMMISSION RELEASE.

8              NOW, I ALREADY APOLOGIZED FOR DOING IT

9    SPONTANEOUSLY, YOUR HONOR, BUT I DIDN'T REALIZE

10   THAT MS. TUCHER WAS GOING TO GO INTO IT IN DETAIL

11   IN OPEN COURT AND OUR DECLARATION -- OUR

12   DECLARATION IS UNDER SEAL.

13             BUT IN A NUTSHELL, WHY THE KFTC

14   INVESTIGATION IS IRRELEVANT TO THIS CASE -- AND I

15   CAN SAY THIS BECAUSE IT'S PUBLIC RECORD -- IS THAT

16   IT HAD NOTHING TO DO WITH INTELLECTUAL PROPERTY.

17   IT WAS ABOUT CELL PHONE PRICING.  IT'S AN ANTITRUST

18   INVESTIGATION.

19             AND SECOND, IT HAD NOTHING TO DO WITH

20   E-MAILS.  IT WASN'T ABOUT THE AUTO DELETE SYSTEM

21   THAT'S AT ISSUE IN THIS CASE.

22             SO EVEN IF YOUR HONOR WERE TO TAKE

23   JUDICIAL NOTICE OF IT OR NOT AGREE WITH ME THAT

24   IT'S RANK HEARSAY THAT'S BEEN UNAUTHENTICATED AND

25   DOES NOT COMFORTABLY FIT THE GOVERNMENT RECORDS

                                                   57

1    EXCEPTION, IT'S CERTAINLY NOT A MILITARY RECORD

2    LIKE THE CASES THEY CITE, EVEN IF YOU TAKE IT INTO

3    ACCOUNT, YOUR HONOR, IT'S IRRELEVANT.

4         IT'S IRRELEVANT BECAUSE IT HAS NOTHING TO

5    DO WITH THIS CASE.  IT'S NOT ABOUT E-MAIL, IT'S NOT

6    ABOUT AUTO DELETE OF E-MAIL, AND IT'S NOT ABOUT

7    INTELLECTUAL PROPERTY.  IT'S ABOUT ANTITRUST.

8         SO IF THEY HAVE TO GO THAT FAR AFIELD TO

9    TRY TO SHOW -- IT'S PRACTICALLY -- IT'S JUST TRYING

10   TO PAINT US AS A BAD ACTOR AND CAST KIND OF

11   CORPORATE ASPERSIONS ON IT.

12        IT HAS NOTHING -- THOSE THREE EXAMPLES

13   CANNOT SHOW ANY KIND OF BAD FAITH HERE.

14        NOW, YOUR HONOR, I'VE SAID THAT THE NINTH

15   CIRCUIT STANDARD IS ACTUAL KNOWLEDGE.  THEY HAVEN'T

16   COME CLOSE TO ACTUAL KNOWLEDGE.

17        WE ACTUALLY THINK THAT THEIR BURDEN IS

18   HIGHER IN THIS CASE THAN EVEN ACTUAL KNOWLEDGE.

19        WHY?  BECAUSE IN THEIR FORM OF PROPOSED

20   ORDER, THEY WANT YOU TO TELL JUDGE KOH TO TELL THE

21   JURY THAT THEY HAVE TO INFER THAT SAMSUNG ACTED IN

22   BAD FAITH.

23        NOW, YOU CAN'T ISSUE THAT INSTRUCTION TO

24   THE JURY UNLESS YOU PROVE THAT WE DID ACT IN BAD

25   FAITH.

```
1              AND IF THE CAREFUL PROGRAM OF

2    PRESERVATION THAT I'VE DESCRIBED TO YOUR HONOR THIS

3    MORNING THAT'S SUBSTANTIATED IN THE RECORD, IF THAT

4    IS BAD FAITH, THEN I'M -- I THINK CORPORATIONS

5    GREETING ANY DECISION WOULD NOT KNOW WHAT COULD

6    POSSIBLY BE IN GOOD FAITH.

7              THE COURT:  COULDN'T I SOLVE THAT PROBLEM

8    BY TWEAKING THE PROPOSED INSTRUCTION?  IF YOU'RE

9    RIGHT THAT BAD FAITH IS AN INAPPROPRIATE

10   INSTRUCTION TO THE JURY GIVEN THAT WE'RE NOT IN A

11   BAD FAITH JURISDICTION OURSELVES, COULDN'T I SIMPLY

12   CHANGE THE INSTRUCTION TO SOLVE THAT PROBLEM?

13             MS. SULLIVAN:  WELL, YOUR HONOR, YOU

14   DEFINITELY COULD CONSIDER AN ALTERNATIVE

15   INSTRUCTION THAT SIMPLY SAYS TO THE JURY, "YOU CAN

16   CONSIDER WHETHER THERE'S BEEN CULPABILITY.  YOU CAN

17   CONSIDER WHETHER THERE WERE DILIGENT EFFORTS TO

18   PRESERVE," AND SOME COURTS HAVE OBVIOUSLY DONE SO.

19             WE DON'T THINK THAT WOULD BE WARRANTED

20   BECAUSE WE DON'T THINK THERE'S BEEN ANY SPOLIATION.

21             WE THINK FOR YOU TO DISAGREE WITH THE

22   ITC -- I MEAN, IT WAS A STRONGLY WORDED OPINION.

23   IT DOESN'T JUST SAY THERE WAS NO BAD FAITH.  HE

24   SAID THERE WAS NO SPOLIATION.

25             SO WE DON'T THINK ANY INSTRUCTION WOULD
```

1    BE WARRANTED.  WE THINK ANY INTERFERENCE WITH THE

2    BURDENS AT TRIAL IS UNWARRANTED ABSENT APPLE

3    MEETING ITS BURDEN.

4            AND, YOUR HONOR, THERE'S ONE MORE REASON

5    WHY IT WOULD BE PARTICULARLY INAPPROPRIATE TO ISSUE

6    ANY KIND OF INSTRUCTION HERE, AND THAT WOULD BE

7    RELEVANCE.

8            THIS IS A CASE IN WHICH -- WHAT DOES

9    APPLE DO HERE TO SAY THAT THEY THINK THAT THEY

10   DIDN'T GET RELEVANT DOCUMENTS?  THEY SAY, "OH,

11   WELL, CERTAIN CUSTODIANS DIDN'T PRODUCE E-MAILS AND

12   WE GOT SOME OF THEIR E-MAILS FROM OTHER CUSTODIANS.

13   WE GOT SOME OF THEIR CUSTODIANS FROM A

14   NON-CUSTODIAL -- SOME OF THEIR E-MAILS FROM A

15   NON-CUSTODIAL SOURCE."

16           WELL, THAT'S JUST AN AMAZING ARGUMENT,

17   YOUR HONOR.  WHAT THEY'RE SAYING IS, "WE HAVE THE

18   EVIDENCE."

19           THEY HAVEN'T SHOWN ONE PIECE OF RELEVANT

20   EVIDENCE TO THEIR THEORIES OR CLAIMS THAT THEY WERE

21   UNABLE TO GET FROM THE RECORD.  THEY SAY "WE GOT IT

22   FROM SOMEWHERE ELSE," AND THEY HAVEN'T GIVEN YOU

23   ONE REASON WHY THEY NEED TO GET IT FROM THESE

24   PARTICULAR CUSTODIANS.

25           THE COURT:  I'LL GRANT YOU, THE PREJUDICE

1      FROM THEIR NOT GETTING THAT DOCUMENT FROM ONE

2      CUSTODIAN VERSUS ANOTHER MAY NOT BE TERRIBLY

3      MOVING, BUT DOESN'T IT AT LEAST SUGGEST THAT THESE

4      INDIVIDUALS, AT LEAST THESE INDIVIDUALS, WERE NOT

5      FOLLOWING THESE CAREFUL INSTRUCTIONS THAT YOU

6      PROVIDED IN THESE HOURS AND WEEKS OF TRAINING?

7              MS. SULLIVAN:  WELL, NOT SO, YOUR HONOR.

8              THE COURT:  SHOULDN'T THAT GIVE ME SOME

9      PAUSE ABOUT THE EFFICACY OF THE PROGRAM AS MUCH AS

10     THE SUFFICIENCY OF THE PROGRAM?

11             MS. SULLIVAN:  ACTUALLY NOT, YOUR HONOR,

12     AND THE KEY REASON IS YOUR POINT THAT WHAT THE

13     OBLIGATION IS, IS TO PRESERVE RELEVANT EVIDENCE.

14             AND LET ME JUST TAKE THE TWO CUSTODIANS

15     THAT MS. TUCHER SINGLED OUT.  THAT'S

16     DR. WON PYO HONG AND MINHYOUK LEE.

17             IF YOU LOOK AT THE WATSON DECLARATION,

18     EXHIBIT 4 -- AND I REFER YOU TO THAT JUST BECAUSE

19     IT'S THE MOST COMPACT CASE WHERE YOU CAN GET ALL

20     THE RECORD CITES YOU NEED TO SEE MY ARGUMENT, THE

21     WATSON DECLARATION, IT'S EXHIBIT 4 -- AND YOU LOOK

22     AT WHAT YOU CAN LEARN THERE ABOUT DR. WON PYO HONG

23     AND ABOUT MR. MINHYOUK LEE AND YOU'LL SEE THAT THE

24     KEY POINT IS THEIR JOB DESCRIPTION, AS RECOUNTED

25     THERE, WAS NOT RELEVANT TO THE CLAIMS.

1           SO THAT EVEN IF YOU'RE RIGHT THAT THEY

2    WEREN'T PRESERVING IT, IT DOESN'T MEAN THEY WERE

3    DEFYING THE POLICY.  THEY WERE COMPLYING WITH THE

4    POLICY BECAUSE THEY SAID, "AH, MY JOB IS TO DO X.

5    IT'S NOT TO DO Y.  THE PRESERVATION ORDER GOES TO Y

6    AND I'M NOT A PERSON WHO HAS CONTROL OVER THAT

7    RELEVANT EVIDENCE."

8           SO -- SO MY FIRST POINT, YOUR HONOR, IS

9    THAT THE NUMBER OF PRODUCTIONS FROM THE CUSTODIAN

10   RELATIVE TO THE NON-CUSTODIAL SOURCES IS NOT

11   PROBATIVE OF DEFIANCE OF THE POLICY UNLESS YOU KNOW

12   WHAT THE RELEVANCE CLAIM IS.

13             AND BOTH OF THOSE --

14           THE COURT:  WELL, IT MAY NOT DEFY THE

15   POLICY, BUT IT MAY CAUSE QUESTIONS ABOUT WHETHER

16   THE POLICY ITSELF WAS ADEQUATE TO THE TASK; RIGHT?

17           MS. SULLIVAN:  I THINK IT DOES NOT, YOUR

18   HONOR.  IT'S APPLE'S BURDEN TO SHOW THAT YOU HAD

19   SOMEBODY WHO WAS ACTUALLY DESIGNING THE ACCUSED

20   PRODUCT AT THE RELEVANT TIME PERIOD, NOT A PRODUCT

21   THAT HAD BEEN RELEASED IN 2010, NOT A PERSON WHO'S

22   NOT IN THE DESIGN DEPARTMENT AT ALL, NOT A PERSON

23   WHO WAS ON A CERTAIN DESIGN, BUT ONLY IN 2010.

24           YOU'D HAVE -- WHAT APPLE HAS TO SHOW IS

25   THAT THEY LOST RELEVANT EVIDENCE, AND IF WE CAN

1    DEFEAT RELEVANCE, AND WE AMPLY HAVE HERE -- BY THE

2    WAY, BOTH OF THOSE DECLARANTS SWORE IN THEIR

3    DECLARATIONS, IN PARAGRAPH 5 AS IT HAPPENS OF EACH

4    DECLARATION, YOU KNOW, THEY DISAVOWED ANY PERSONAL

5    MENS REA, AND I'D REFER YOU TO THOSE PARAGRAPHS FOR

6    THAT.

7            SO, YOUR HONOR, RELEVANCE REMINDS US THAT

8    NOT EVERY FAILURE TO PRODUCE IS A SHOWING THAT THE

9    POLICY ISN'T WORKING, BECAUSE THE POLICY, AS YOUR

10   HONOR POINTED OUT, IS TO PRESERVE RELEVANT

11   EVIDENCE.

12           BUT, YOUR HONOR, THERE'S MORE, AND THAT

13   IS PLEASE LOOK AT THE TRANSPARENCY DISCLOSURES FROM

14   APPLE AND LOOK AT HOW MANY NON-CUSTODIAL E-MAILS

15   COME IN FROM APPLE'S KEY DESIGNERS.  JUST LOOK AT

16   KEY DESIGNERS.  LOOK AT MR. IVE, LOOK AT

17   MR. STRINGER.  LOOK AT HOW MANY PRODUCTIONS THEY

18   MADE COMPARED TO NON-CUSTODIAN PRODUCTIONS.

19           IN FACT, YOU MIGHT TAKE NOTE THAT THE

20   LATE AND ICONIC MR. JOBS WAS NOT ISSUED A HOLD

21   NOTICE.  HE'S A REGISTERED PATENT HOLDER ON EIGHT

22   OF THE RELEVANT PATENTS.  NO HOLD NOTICE TO

23   MR. JOBS WHEN HE WAS ALIVE.

24           SO THE NOTION THAT APPLE'S GOING TO COME

25   IN AND SAY, "OH, WELL, YOU HAD THESE CUSTODIANS AND

1    WE THINK THEIR NUMBERS ARE A LITTLE LOWER COMPARED

2    TO THE NON-CUSTODIAL E-MAILS," IT WOULD REQUIRE YOU

3    TO SANCTION APPLE AS WELL.

4         THE COURT:  WELL, I'VE ALREADY SUGGESTED

5    MAYBE YOU HAVE A TERRIFIC MOTION IN MIND.

6         MS. SULLIVAN:  WELL, YOUR HONOR, WE'LL

7    CERTAINLY BE HAPPY TO CONSIDER THAT LATER.

8         BUT THE POINT IS WE DON'T THINK WE SHOULD

9    BE BURDENING THE COURT WITH SPOLIATION MOTIONS IN

10   AN AREA WHERE YOU HAVE ENOUGH TO DO, WHERE YOU'RE

11   TRYING TO MANAGE A MOUNTAIN OF PAPER.

12        TO BRING A SPOLIATION MOTION ON SUCH A

13   WEAK RECORD AS THIS WITHOUT MAKING OUT ANY OF THE

14   ELEMENTS AND, IN EFFECT, TO SAY THAT THERE HAS TO

15   BE A PER SE RULE AGAINST AUTO DELETE POLICIES,

16   THAT'S A VERY GRAVE AND WE THINK A VERY UNDESIRABLE

17   SORT OF ARGUMENT AND ONE THAT YOU SHOULD REJECT.

18        SORRY.  THE DATA IN APPLE'S PRODUCTIONS,

19   SO I CAN REFER YOU TO IT, IT'S IN THE DECLARATION

20   OF ALEX BINDER.  THE DECLARATION OF ALEX BINDER

21   GIVES YOU THE COMPARISON BETWEEN THE CUSTODIAL

22   PRODUCTIONS AND THE NON-CUSTODIAL PRODUCTIONS AND

23   YOU'LL SEE THAT IF IT'S A NUMBERS GAME -- AND WE

24   DON'T THINK YOU SHOULD PLAY A NUMBERS GAME HERE --

25   APPLE IS EQUALLY OR MORE GUILTY.

1        WE DON'T THINK WE'RE GUILTY AT ALL

2   BECAUSE WE THINK WE DID PRESERVE RELEVANT

3   DOCUMENTS.  WE HAVE AN EXPLANATION.  WE COULD CLOSE

4   THE COURTROOM AND SPEND ALL DAY AND GO THROUGH THE

5   30 PEOPLE.

6        BUT I THINK THE WATSON DECLARATION,

7   EXHIBIT 4, WILL GIVE YOU ALL THAT DATA IN A VERY

8   CONCISE FORM.

9        THE COURT:  ALL RIGHT.  WELL,

10  MS. SULLIVAN, YOU HAVE A NUMBER OF COLLEAGUES I

11  SUSPECT WANT TO SPEAK TO THE MOTIONS.

12        MS. SULLIVAN:  THANK YOU, YOUR HONOR.  I

13  DON'T MEAN TO HOLD THEM UP.

14        THANK YOU VERY MUCH FOR YOUR GENEROSITY

15  AND YOUR TIME.

16        WE THINK YOU SHOULD REJECT ANY ADVERSE

17  INFERENCE INSTRUCTION OF ANY KIND, CERTAINLY NOT

18  HARSH, CERTAINLY NOT MODERATE.

19        THIS DOESN'T COME CLOSE.  THE ITC JUDGE

20  WAS CORRECT IN REJECTING ANY FINDING OF SPOLIATION.

21        WE RESPECTFULLY URGE YOUR HONOR TO DENY

22  THE MOTION.

23        THANK YOU.

24        THE COURT:  THANK YOU.

25        MS. TUCHER, ANY REBUTTAL?

65

1           MS. TUCHER:  YES, YOUR HONOR, JUST

2     QUICKLY.

3           EVEN IF YOU WERE TO ACCEPT THAT APRIL WAS

4     THE RELEVANT DATE, AND IT'S NOT, SOME OF THE

5     DOCUMENTS THAT WE'VE PROVEN ARE RELEVANT HERE WERE

6     DESTROYED AFTER APRIL.

7           SO, FOR EXAMPLE, THIS LEAD DESIGNER,

8     MR. MINHYOUK LEE, LEAD DESIGNER OF THE GALAXY S, HE

9     HAS DOCUMENTS FROM AFTER APRIL WHEN -- THAT WERE

10    DESTROYED.

11          I WANT TO ALSO ASK YOU TO LOOK AT TAB 6

12    OF THE BINDER TO SEE THE MAGNITUDE OF THE PROBLEM.

13    THE CHART THAT'S HIGHLIGHTED IN BLUE SUMMARIZES THE

14    NON-CUSTODIAL E-MAILS THAT WERE PRODUCED BECAUSE,

15    APPARENTLY, SAMSUNG FOUND THEM RELEVANT AND

16    RESPONSIVE, BUT THAT DIDN'T COME FROM THE FILES OF

17    THE PEOPLE WHO WERE IN OUR MOTION.

18          SO I HIGHLIGHTED MINHYOUK LEE AND

19    W.P. HONG, AND YOU CAN SEE HOW MANY SCORES OF

20    E-MAILS EACH OF THOSE TWO GENTLEMEN APPARENTLY

21    PARTICIPATED IN THAT WERE RESPONSIVE, BUT THEY

22    PRODUCED ABSOLUTELY NOTHING.

23          BUT IN SOME OF THESE OTHERS, YOU SEE

24    THERE ARE LITERALLY THOUSANDS OF E-MAILS THAT WERE

25    NOT PRODUCED -- THAT WERE PRODUCED BY OTHER PEOPLE

                                                            66

1   WHERE THESE FOLKS PRODUCED A HANDFUL OR, IN SOME

2   CASES, ABSOLUTELY NONE.

3          THE COURT:  MS. TUCHER, DO YOU HAVE ANY

4   DEPOSITION TESTIMONY OR ANYTHING AT ALL THAT WOULD

5   ESTABLISH THAT ONE OR MORE SAMSUNG EMPLOYEES DIDN'T

6   COMPLY WITH THE INSTRUCTION OR DOESN'T KNOW WHETHER

7   THEY COMPLIED, ANYTHING WHICH WOULD SHED SOME LIGHT

8   ON HOW EFFECTIVE THIS PROGRAM WAS OTHER THAN THE

9   RESULT?

10          MS. TUCHER:  YES.  AND I DIDN'T BRING

11  DEPOSITION TESTIMONY BECAUSE I DIDN'T THINK THAT

12  WAS THE MOST EFFICIENT WAY OF PROVING THE POINT.

13          BUT THE DECLARATION --

14          THE COURT:  I'M LOOKING FOR ANYTHING AT

15  ALL THAT MIGHT GIVE ME SOME INFORMATION ON THAT

16  TOPIC.

17          MS. TUCHER:  SO THE DECLARATION AT TAB 5

18  OF THE 30(B)(6) WITNESS WHO SAID EVEN HE DIDN'T

19  KNOW THAT HE COULD USE EITHER OF THE TWO WONDERFUL

20  WAYS OF PRESERVING --

21          THE COURT:  I'M CURIOUS, WHEN WAS HE

22  DEPOSED, ROUGHLY?  DO YOU KNOW?

23          MS. TUCHER:  YES.  HE ACTUALLY SAYS HE

24  WAS DEPOSED ON MARCH 8TH AND ON FEBRUARY 10TH OF

25  THIS YEAR.  SO IN MARCH AND FEBRUARY HE DIDN'T KNOW

 1      THESE THINGS, OR HE GAVE FALSE INFORMATION ON THESE

 2      THINGS, AND THEN IN MAY WHEN HE ISSUED THIS NEW

 3      DECLARATION, THERE WAS A NEW DATE OF FACTS.

 4              SO IF HE DIDN'T KNOW THOSE THINGS AT THE

 5      END OF THE DISCOVERY PERIOD, IT'S REASONABLE TO

 6      BELIEVE THE PEOPLE WHO WERE NOT THE PERSON MOST

 7      KNOWLEDGEABLE, BUT WHO WERE NONETHELESS VERY

 8      IMPORTANT, DIDN'T KNOW THOSE SAME THINGS.

 9              SO THAT'S, I THINK, THE BEST EVIDENCE.

10              BUT ALSO IF YOU LOOK AT SOME OF THE

11      DECLARATIONS, MS. SULLIVAN RATTLED OFF FIVE NAMES

12      OF PEOPLE WHO, YOU KNOW, SHE SAID WERE AVAILABLE,

13      OR WERE AWARE OF THEIR OBLIGATIONS AND DID OBEY

14      THEM.

15              BUT THE PROBLEM HERE, THE WRONGDOING IS

16      CORPORATE.  IT'S THAT SAMSUNG, CORPORATE-WIDE,

17      DESTROYED E-MAILS AFTER ONLY 14 DAYS.

18              BUT THE CROSS-EXAMINATION THAT WE'RE

19      GOING TO BE CONDUCTING AT TRIAL IS WITNESS BY

20      WITNESS.

21              SO, FOR EXAMPLE, MR. MINHYOUK LEE, HE

22      CAME AS A WITNESS TO THE ITC PROCEEDING.  HE'S

23      LIKELY TO BE A WITNESS HERE AND WE'RE GOING TO HAVE

24      TO EXAMINE HIM WITHOUT ANY OF HIS E-MAILS.

25              SO IT DOESN'T REALLY MATTER THAT SOMEBODY

                                                          68

1   NAMED MIN SCHIN, WHO'S NOT EVEN IN OUR MOTION, DID

2   FOLLOW THE RULES.  I DON'T KNOW WHO MIN SCHIN IS.

3           THE COURT:  DO YOU AGREE THAT THE

4   STANDARD IN THE NINTH CIRCUIT IS AN ACTUAL

5   KNOWLEDGE STANDARD RATHER THAN A BAD FAITH

6   STANDARD?

7           MS. TUCHER:  I THINK IT'S ACTUAL

8   KNOWLEDGE OF RELEVANT INFORMATION.

9           BUT THERE'S NO QUESTION THAT RELEVANT

10  INFORMATION EXISTED AND WAS DESTROYED.

11          THE COURT:  AND IS THERE ANY QUESTION

12  THAT ANY INDIVIDUAL AT SAMSUNG DESTROYED RELEVANT

13  INFORMATION KNOWING THAT HE OR SHE WAS DOING THE

14  SAME?

15          MS. TUCHER:  THERE'S NO QUESTION THAT

16  SAMSUNG DESTROYED THE INFORMATION KNOWING THAT IT

17  WAS RELEVANT BECAUSE IT'S SAMSUNG THAT AUTO DELETES

18  THE E-MAILS.

19          THE COURT:  RIGHT.

20          MS. TUCHER:  IT'S NOT THE INDIVIDUAL THAT

21  SAID "NOW I'M GOING TO ERASE MY E-MAIL BECAUSE 14

22  DAYS HAVE PASSED."

23          THE COURT:  SO YOU WOULD SUGGEST, I TAKE

24  IT, THAT THE STANDARD IS REALLY A STANDARD TO BE

25  APPLIED TO THE PARTY, OR TO THE ENTITY AS A WHOLE,

1    RATHER THAN ANY INDIVIDUAL ENGINEER OR MANAGER?

2              MS. TUCHER:  EXACTLY, YOUR HONOR.

3              SO WHEN ONE OF THE WITNESSES SAID "I

4    NEVER INTENTIONALLY DESTROYED INFORMATION THAT'S

5    RELEVANT TO THIS LAWSUIT," THAT'S NEITHER HERE NOR

6    THERE, ALTHOUGH I WOULD POINT OUT THAT THE KFTC

7    PRESS RELEASE IS EVIDENCE THAT THERE WAS INDEED

8    DELIBERATE DESTRUCTION IN THE SENSE OF DELIBERATE

9    DESTRUCTION OF SPECIFIC DOCUMENTS, IN ADDITION TO

10   THE DELIBERATE DECISION TO ENGAGE A HARDWARE SYSTEM

11   THAT DESTROYS DOCUMENTS COMPANY-WIDE.

12             THE COURT:  ANY FURTHER POINTS,

13   MS. TUCHER?

14             MS. TUCHER:  I THINK THAT BETTER DO IT.

15   THANK YOU.

16             THE COURT:  ALL RIGHT.  THANK YOU.

17             ALL RIGHT.  THE MATTER IS SUBMITTED.

18             LET'S TURN TO THE NEXT MOTION, WHICH IS

19   SAMSUNG'S MOTION FOR RULE 37 SANCTIONS.

20             WHO'S GOING TO ARGUE THAT ONE?

21   MS. MAROULIS?

22             MS. MAROULIS:  ME, YOUR HONOR.

23             YOUR HONOR, BEFORE YOU ARE THE PARTIES'

24   CROSS-MOTIONS TO STRIKE EACH OTHER'S EXPERTS FOR

25   FAILURE TO DISCLOSE FACTS IN DISCOVERY.

70

 1                TO HELP THE COURT, I'M GOING TO DIVIDE

 2      THE SAMSUNG MOTION INTO THE THREE BUCKETS, THE

 3      DAMAGES EXPERTS, THE UTILITY EXPERTS, AND DESIGN

 4      EXPERTS, AND WE'LL FOLLOW THE SAME PROCEDURE WITH

 5      THE APPLE MOTION WHEN THAT ARISES.

 6                IN OUR MOTION, WE SEEK TO EXCLUDE CERTAIN

 7      PORTIONS OF APPLE'S EXPERT TESTIMONY FOR FAILURE --

 8                THE COURT:  I'M SORRY.  PERHAPS I WASN'T

 9      CLEAR.  I THOUGHT WE WERE GOING TO DEAL WITH DOCKET

10      968, THE VIOLATION, THE ALLEGED VIOLATION OF THE

11      DECEMBER 22ND ORDER AND YOUR MOTION FOR SANCTIONS

12      ON THAT BASIS.

13                MS. MAROULIS:  IF THAT'S WHAT YOUR HONOR

14      WANTED --

15                THE COURT:  I APOLOGIZE.

16                MS. MAROULIS:  -- MY PARTNER, MS. HUTNYAN

17      IS GOING TO ARGUE THAT.

18                THE COURT:  PERHAPS WE MIGHT BEGIN WITH

19      THAT, AND THEN WE'LL GET TO THE MOTION TO STRIKE.

20                MS. MAROULIS:  UNDERSTOOD.

21                MS. HUTNYAN:  DIANE HUTNYAN,

22      H-U-T-N-Y-A-N.

23                THE COURT:  MS. HUTNYAN, GOOD MORNING.

24                MS. HUTNYAN:  GOOD MORNING.

25                MOTION FOR SANCTIONS FIRST, I BELIEVE?

                                                          71

1          THE COURT:  YES.

2          MS. HUTNYAN:  IT'S UNDISPUTED THAT APPLE

3     DID NOT COMPLY WITH THE DECEMBER 22ND ORDER, THAT

4     IT DIDN'T PRODUCE, FROM 11 CASES WITH A

5     TECHNOLOGICAL NEXUS, HUNDREDS OF TRANSCRIPTS.

6          THIS IS ADMITTED IN THE SABRI DECLARATION

7     IN SUPPORT OF APPLE'S OPPOSITION ON THE MOTION TO

8     ENFORCE, EXHIBIT 16.  IN THAT EXHIBIT, HE LISTS 197

9     TRANSCRIPTS, WHICH DON'T INCLUDE THE ONES FROM '796

10    THAT WERE ALSO WITHHELD.  SO AT LEAST WE CAN AGREE

11    THAT 257 TRANSCRIPTS WERE WRONGFULLY WITHHELD.

12          I'D LIKE TO SPEAK BRIEFLY ABOUT THE

13    PREJUDICE TO SAMSUNG.  I THINK WE'VE DONE A PRETTY

14    GOOD JOB IN THE BRIEFING OF LAYING OUT SOME OF THE

15    ISSUES, BUT I'D LIKE TO TRY TO FOCUS IN ON A COUPLE

16    OF REALLY IMPORTANT METRICS.

17          THE QUANTITY OF THE TRANSCRIPTS THAT WERE

18    PRODUCED PURSUANT TO THE APRIL 12TH ORDER INCLUDED

19    62 TRANSCRIPTS FROM CASES WHERE AT LEAST ONE OR

20    MORE OF THE PATENTS-IN-SUIT WERE ALSO AT ISSUE.

21    CLEARLY HAD THE TECHNOLOGICAL NEXUS.  NO REASON WHY

22    THEY SHOULD NOT HAVE BEEN PRODUCED.

23          34 TRANSCRIPTS OF THE NAMED INVENTORS --

24    WE HAD 38, IT'S ACTUALLY 34, BUT WE ALL AGREE THAT

25    34 TRANSCRIPTS OF NAMED INVENTORS OF THE PATENTS

1    ASSERTED IN THIS CASE WERE NOT PRODUCED.

2            67 TRANSCRIPTS WERE WITHHELD OF WITNESSES

3    THAT WERE TESTIFYING IN THIS CASE.

4            AS YOU MAY REMEMBER FROM THE PAPERS,

5    APPLE SAID ONE OF ITS RATIONALS IN NOT PRODUCING A

6    NUMBER OF TRANSCRIPTS WAS BECAUSE IT UNDERSTOOD THE

7    ORDER TO BE SAYING IT COULD ONLY BE WITNESSES THAT

8    WERE GOING TO APPEAR IN THIS CASE.  SO THAT'S

9    DIRECTLY CONTRARY.  67 OF THOSE TRANSCRIPTS WERE

10   WITHHELD REGARDLESS OF TO WHAT THEY APPLIED.

11           AND 14 OF THOSE 67 WERE DEPOSITIONS THAT

12   WERE TAKEN BEFORE DECEMBER 22ND, SO THEY WERE THERE

13   READY FOR APPLE TO, AS THEY CONCEDED LAST TIME,

14   PUSH THE BUTTON AND PRODUCE THESE TRANSCRIPTS.

15   THEY SAID THEY HELD THEM BY WITNESS AND THEY WERE

16   EASY TO PRODUCE.  AND YET, THEY DIDN'T.

17           I'D LIKE TO ALSO SPEAK TO THE QUALITY OF

18   THE ITEMS THAT WERE WITHHELD, AND I HAVE SOME

19   EXAMPLES HERE.

20           AT LEAST THREE OF THE DEPOSITION

21   TRANSCRIPTS THAT WERE WITHHELD, THESE WERE

22   PRODUCED -- TWO OF THEM WERE PRODUCED ON

23   APRIL 17TH, BEFORE THE COMPLIANCE DATE FOR THE

24   APRIL 12TH ORDER, AND ONE WAS JUST PRODUCED ON

25   MAY 31ST.

1           THREE OF THESE CONTAIN TESTIMONY ABOUT

2     PATENTS-IN-SUIT, LITERALLY FROM START TO FINISH.

3     THE ENTIRE DEPOSITION IS ABOUT PATENTS IN THIS

4     CASE.  AND THEY'RE THE DEPOSITIONS OF NAMED

5     INVENTORS ON PATENTS IN THIS CASE.

6           SO ONE OF THESE IS THE DEPOSITION OF

7     JOSHUA STRICKON, THIS IS FROM THE HTC CASE.  CITES

8     THROUGHOUT THE DEPOSITION TRANSCRIPT DISCUSS THE

9     '607 PATENT, PATENT APPLICATION, AND MULTI-TOUCH

10    TECHNOLOGY AT ISSUE IN THIS CASE.  HE'S A NAMED

11    INVENTOR ON THE '607 PATENT.  THE DATE OF THAT

12    DEPOSITION WAS MARCH 13TH.

13          SO EVEN IF IT WASN'T PRODUCED BY

14    JANUARY 15TH, IT WAS DEFINITELY WITHHELD UNTIL WE

15    GOT OUR ORDER ENFORCING THE DECEMBER 22ND ORDER AND

16    REQUIRING THAT DEPOSITION TO BE PRODUCED BY THE

17    27TH OF APRIL.

18          DEPOSITION OF GREG NOVICK.  IN THIS ONE

19    THE ENTIRE TRANSCRIPT PERTAINS TO THE '002 PATENT.

20    NOVICK WAS APPLE'S 30(B)(6) DESIGNEE ON THE '002

21    PATENT AS IT RELATES TO THE NOTIFICATION CENTER IN

22    IOS5.

23          THE COURT:  WAS THAT GENTLEMAN DEPOSED IN

24    THIS MATTER?  I ASSUME HE WAS .

25          MS. HUTNYAN:  I WILL CHECK ON THAT RIGHT

1    NOW.

2            THE COURT:  YOU'RE SAYING HE'S A NAMED

3    INVENTOR ON AN ASSERTED PATENT; RIGHT?

4            MS. MAROULIS:  YES, YOUR HONOR, HE WAS.

5            MS. HUTNYAN:  THERE ARE A LOT OF THEM.

6            THE COURT:  I UNDERSTAND THAT.

7            SO I TAKE IT THAT THIS PARTICULAR

8    TRANSCRIPT WAS NOT PRODUCED UNTIL AFTER HIS

9    DEPOSITION?

10           MS. HUTNYAN:  RIGHT.  IT WAS --

11           THE COURT:  IN OTHER WORDS, THE

12   TRANSCRIPT FROM THE EARLIER DEPOSITION WAS NOT

13   PRODUCED TO YOUR VIEW AND YOUR FIRM UNTIL AFTER HE

14   WAS DEPOSED IN THIS CASE?

15           MS. HUTNYAN:  I'M SURE THAT'S THE CASE

16   BECAUSE IT WAS JUST PRODUCED MAY 31ST.

17           THE COURT:  I WOULD SUSPECT THAT'S TRUE

18   GIVEN THE TIMING OF IT.

19           MS. HUTNYAN:  YES.

20           THE COURT:  OKAY.  SO LET'S JUST PUT SOME

21   MEAT ON THIS BONE FOR A MOMENT.  LET'S TAKE THIS

22   ONE EXAMPLE BECAUSE I THINK IT'S ONE OF YOUR MORE

23   IMPORTANT ONES.

24           I ISSUED NOT ONE, BUT TWO ORDERS

25   REQUIRING APPLE TO PRODUCE THIS GENTLEMAN'S

1    DEPOSITION TRANSCRIPT FROM AN EARLIER LITIGATION.

2    HE WAS DEPOSED SOMETIME IN MARCH I'M GUESSING, IF

3    I'VE GOT THE DATES RIGHT, MAYBE APRIL.  IN ANY

4    EVENT, AT SOME POINT BEFORE MAY 31.  AM I RIGHT SO

5    FAR?

6             MS. HUTNYAN:  AS FAR AS I KNOW, YES.

7             THE COURT:  OKAY.  SO HE GETS DEPOSED IN

8    THIS CASE, I'VE ALREADY ORDERED HIM -- I'VE ALREADY

9    ORDERED APPLE TO PRODUCE HIS TRANSCRIPTS FROM

10   EARLIER LITIGATIONS, AND THE TRANSCRIPT IS NOT

11   PRODUCED UNTIL MAY 31ST?

12            MS. HUTNYAN:  RIGHT.

13            THE COURT:  AND THIS IS A NAMED INVENTOR

14   WHOSE PRIOR TRANSCRIPT ADDRESSES EXCLUSIVELY,

15   PERHAPS MERELY EXTENSIVELY, THE VERY PATENT THAT'S

16   AT ISSUE IN THIS CASE?

17            MS. HUTNYAN:  YES.

18            THE COURT:  ALL RIGHT.

19            MS. HUTNYAN:  I'VE GOT ANOTHER GREAT

20   EXAMPLE I WANT TO SHARE WITH YOU, THE BAS ORDING

21   TRANSCRIPT.  THIS IS FROM THE HTC CASE.

22            IN THIS ONE THE ENTIRE DEPOSITION

23   DISCUSSES THE '381 PATENT.  THIS IS THE BOUNCEBACK

24   AND RUBBER BANDING.

25            THE COURT:  I'M FAMILIAR WITH THAT ONE.

76

1          MS. HUTNYAN:  ORDING IS THE SOLE NAMED

2     INVENTOR ON THE '381.  THAT DEPOSITION WAS TAKEN

3     JANUARY 13TH.  THAT'S TWO DAYS BEFORE THE DEADLINE

4     FOR COMPLIANCE THAT APPLE HAD TO PRODUCE ALL OF THE

5     DEPOSITION TRANSCRIPTS.

6          SO TWO DAYS BEFORE THEY'RE TAKING THIS --

7     THEY'RE DEFENDING THIS VERY IMPORTANT DEPOSITION

8     FROM ONE OF THE NAMED INVENTORS ON ONE OF THE

9     PATENTS IN THIS CASE AND SOMEHOW THEY DON'T PRODUCE

10    IT ON JANUARY 15TH.  IT'S NOT PRODUCED UNTIL APRIL.

11          THE REAL KICKER IS THAT --

12          THE COURT:  BEFORE YOU TURN TO THE REAL

13    KICKER, AGAIN, WAS THIS PERSON DEPOSED IN THIS CASE

14    PRIOR TO APRIL SUCH THAT WHEN YOU TOOK THE

15    DEPOSITION IN THIS CASE, YOU DIDN'T HAVE THE

16    TRANSCRIPT FROM THE ITC LITIGATION?

17          MS. HUTNYAN:  YES.  YES.

18          THE COURT:  LET'S TURN TO THE KICKER.

19          MS. HUTNYAN:  IN RESPONSE TO OUR MOTION

20    TO ENFORCE ON THE LAST ROUND, APPLE PUT IN A

21    DECLARATION THAT SAID THEY HAD CHECKED AFTER

22    MARCH 3RD, THEY WENT BACK AND CHECKED TO SEE -- AND

23    THEY PUT THIS IN THEIR BRIEFING, TOO -- TO SEE IF

24    THEY HAD PRODUCED ALL OF THE DEPOSITION TRANSCRIPTS

25    THAT THEY BELIEVED THEY NEEDED TO PRODUCE.

1          AND THEY CHECKED AND THEY FOUND IT TO BE

2    COMPLETE WITH A COUPLE OF EXCEPTIONS THAT THEY

3    QUICKLY REMEDIED.

4          SO IF THEY CHECKED, WHY DID THEY NOT PICK

5    UP THE ORDING TRANSCRIPT?  CLEARLY RELEVANT.  THEY

6    JUST DIDN'T.  OKAY?

7          THERE ARE A NUMBER OF OTHER TRANSCRIPTS

8    HERE, I WON'T WALK THE COURT THROUGH, BUT I HAVE

9    TRANSCRIPTS THAT DO REFER TO THE VERY TECHNOLOGIES

10   THAT ARE AT ISSUE IN THIS CASE PERTAINING TO THE

11   '828 PATENT, A LOOSE FITTING, MORE ON THE '607

12   PATENT MULTI-TOUCH, MORE ON THE '381, WHICH IS THE

13   BOUNCEBACK, AND THEN THE '002 CONTROL STRIP,

14   MULTIPLE DEPOSITIONS THAT REFER TO THESE THINGS AND

15   THAT WERE PRODUCED VERY LATE IN THE GAME.

16         ALL OF THESE WERE PRODUCED IN RESPONSE TO

17   THE COURT'S ORDER ON THE MOTION TO ENFORCE, SO ALL

18   OF THEM WERE PRODUCED EITHER APRIL 17TH OR LATER,

19   LONG AFTER THE CLOSE OF DISCOVERY.

20         IN ADDITION, IN OUR REPLY BRIEF, WE SET

21   FORTH SOME OF THE TESTIMONY FROM THE DESIGN PATENT

22   INVENTORS IN THE '796 CASE THAT WE WERE NOT ALLOWED

23   TO USE SHOWING THAT, YOU KNOW, IN THE '796, A CASE

24   THAT UNQUESTIONABLY HAS A TECHNOLOGICAL NEXUS,

25   CROSS-USE GOING EVERY WHICH WAY, EXCEPT FOR

1    DEPOSITION TRANSCRIPTS COMING INTO THIS CASE, THERE

2    ARE SOME OF THE KEY THINGS IN THERE THAT THE DESIGN

3    INVENTORS HAD TESTIFIED TO AND THEY'RE PROBABLY THE

4    MOTIVATION FOR NOT ALLOWING THE '796 TRANSCRIPTS TO

5    COME IN DURING DISCOVERY IN THIS CASE.

6            TURNING NOW TO SUBSTANTIAL JUSTIFICATION,

7    I DON'T SEE THAT THERE'S ANY JUSTIFICATION FOR WHAT

8    APPLE DID HERE.

9            I MEAN, PUTTING ASIDE THE QUALITY AND THE

10   QUANTITY ISSUES THAT I JUST RAISED, WE SET FORTH IN

11   OUR REPLY BRIEF, AND THIS IS SECTION 2, POINT BY

12   POINT A NUMBER OF REASONS WHY IT'S JUST NOT

13   PLAUSIBLE TO SAY THAT THERE'S A REASONABLE APPROACH

14   TO THIS BY APPLE.

15           AND --

16           THE COURT:  YOU WOULD AGREE THAT THE

17   SUBSTANTIAL JUSTIFICATION STANDARD IS THE CORRECT

18   ONE?  THAT'S THE LAW.  I HAVE TO APPLY THAT

19   STANDARD HERE.  YOU'D AGREE WITH THAT; RIGHT?

20           MS. HUTNYAN:  YEAH.  I DON'T THINK WE

21   HAVE A PROBLEM WITH THAT.

22           I MEAN, IT'S IN THE STATUTE AS FAR AS THE

23   MONETARY SANCTIONS PART OF IT, BUT I THINK IT'S AN

24   IMPORTANT CONSIDERATION FOR THE COURT IN DEALING

25   WITH THE PRECLUSIVE SANCTIONS THAT WE'RE ASKING

1    ABOUT HERE.

2              I MEAN, WE'RE ASKING FOR BOTH, AND I DO

3    THINK IT APPLIES TO BOTH.

4              AND HERE JUST A FEW POINTS AT A HIGH

5    LEVEL THAT ARE, THAT ARE SET FORTH IN MORE DETAIL

6    IN THE REPLY BRIEF.

7              BUT, YOU KNOW, THE SHEER QUANTITY.  I

8    MEAN, WE'RE TALKING MOST OF THE DEPOSITION

9    TRANSCRIPTS, 34,000 PAGES OF DEPOSITION

10   TRANSCRIPTS.

11             AND THESE ARE -- THESE ARE NOT JUST

12   34,000 RANDOM PAGES, RIGHT?  THESE ARE 34,000 PAGES

13   OF SWORN APPLE EMPLOYEE TESTIMONY FROM CASES WITH A

14   TECHNOLOGICAL NEXUS.  SO VERY PROBATIVE EVIDENCE.

15             AND THEN THE VARIOUS EXCUSES THAT APPLE

16   GAVE LAST TIME FOR NOT HAVING PRODUCED THESE

17   THINGS, "WE THOUGHT IT WAS WITNESSES IN THIS CASE.

18   WE THOUGHT THAT WITNESS HAD TO HAVE A TECHNOLOGICAL

19   NEXUS.  THE PROTECTIVE ORDER PREVENTS US FROM

20   PRODUCING THESE THINGS," ALL THOSE WERE REJECTED.

21             THE COURT:  WE'VE LONG SINCE CROSSED THAT

22   BRIDGE.

23             MS. HUTNYAN:  RIGHT.  THAT'S WHAT I'M

24   SAYING.  THERE'S NO JUSTIFICATION FOR THOSE.

25             THEN IN THE LATEST OPPOSITION, WE HAVE A

1    NEW ROUND OF EXCUSES, AND NOT ONLY DO THESE MAKE AS

2    LITTLE SENSE AS THE EARLIER ONES, BUT WE SHOW IN A

3    PORTION OF THE REPLY, THERE'S A VERY SHORT SECTION

4    WHERE WE DO SHOW THEY LITERALLY DIDN'T APPLY THESE.

5              EVEN IF THEY MADE SENSE, WE CAN SHOW,

6    BASED ON THE PRODUCTION, THAT THEY DIDN'T FOLLOW

7    THOSE.  THEY'RE JUST SAYING THAT THEY DID.  IT'S A

8    POST-HOC JUSTIFICATION FOR THIS HUGE GAP IN THEIR

9    PRODUCTION.

10             I THINK THE DECISION WAS, "WE'RE JUST NOT

11   PRODUCING THOSE.  WE'LL JUST DO A COST/BENEFIT

12   ANALYSIS.  WE CAN EITHER COMPLY WITH THE COURT'S

13   ORDER AND PRODUCE THESE AND THEN SAMSUNG WILL HAVE

14   THE BENEFIT OF ALL OF THIS DATA GOING ALL THE WAY

15   THROUGH DISCOVERY; OR WE CAN JUST AVOID THIS AND

16   MAYBE DOWN THE ROAD WE'LL PAY FOR IT WITH SOME KIND

17   OF PRECLUSIVE OR MONETARY SANCTION, BUT WE'RE GOING

18   TO TAKE THAT CHANCE."

19             THAT'S WHAT COMES OUT OF THESE --

20             THE COURT:  THAT'S AN INFERENCE YOU'RE

21   ASKING ME TO DRAW; RIGHT?  THERE'S NO AFFIRMATIVE

22   EVIDENCE DEMONSTRATING A CALCULATED DECISION ON

23   APPLE'S PART TO DISOBEY MY ORDER.

24             MS. HUTNYAN:  OH, I THINK I DO.  THE '796

25   TRANSCRIPTS, HOW CAN YOU POSSIBLY JUSTIFY THAT?

1    HOW CAN YOU JUSTIFY NOT PRODUCING THE ORDING

2    TRANSCRIPT?

3            THE COURT:  SO YOU'RE SAYING THAT,

4    LOOKING AT THIS RECORD, I CAN ONLY CONCLUDE THAT

5    THEY MADE A SPECIFIC DECISION NOT TO PRODUCE THAT

6    TRANSCRIPT IN COMPLIANCE WITH MY ORDER?

7            MS. HUTNYAN:  I THINK THERE WAS A

8    SPECIFIC DECISION NOT TO PRODUCE ANY OF THESE

9    TRANSCRIPTS.  I MEAN --

10           THE COURT:  DO I HAVE TO GO THAT FAR?  DO

11   I HAVE TO REACH THAT CONCLUSION IN ORDER TO ISSUE

12   THE SANCTIONS THAT YOU WISH TO SEE ISSUED HERE?

13           MS. HUTNYAN:  NO, I DON'T THINK YOU DO.

14           I MEAN, I THINK -- I MEAN, I SUPPOSE IN

15   SOME KIND OF ALTERNATE UNIVERSE, THIS COULD BE A

16   COINCIDENCE, SOME KIND OF MISTAKE.

17           BUT YOU HAVE TO UNDERSTAND --

18           THE COURT:  AN ADMINISTRATIVE OVERSIGHT

19   TO USE A CERTAIN PHRASE FROM A CERTAIN SAMSUNG

20   PLEADING.  MISTAKES HAPPEN, RIGHT?

21           SO WHAT I'M TRYING TO TEASE OUT HERE IS

22   WHETHER THIS WAS A MISTAKE AND WHETHER IT WAS

23   SOMETHING MORE SERIOUS, AND WHAT I'M STRUGGLING TO

24   UNDERSTAND IS THE SPECIFIC EVIDENCE THAT I MAY RELY

25   UPON TO REACH THE CONCLUSION THAT YOU HAVE

                                                            82

1    OBVIOUSLY REACHED, WHICH IS THEY WERE MESSING WITH

2    YOU, THEY WERE MESSING WITH THE COURT.

3            MS. HUTNYAN:  WELL, FIRST OF ALL, WE HAVE

4    MONTHS OF CORRESPONDENCE AND BRIEFING GOING ALL

5    AROUND THIS ISSUE.  I MEAN, THEY STOOD UP BEFORE

6    YOU LAST TIME AND THEY TOLD YOU THEY WERE JUSTIFIED

7    IN DOING WHAT THEY DID, AND YOU FOUND THEY WEREN'T.

8    YOU FOUND THEY PREJUDICED SAMSUNG.

9            I MEAN, THIS SHOULDN'T BE A STRETCH TO

10   FIND, EVEN AFTER THE FACT, THEY STILL DIDN'T COMPLY

11   WITH YOUR ORDER.  SOME OF THESE THINGS CAME IN IN

12   MAY.

13           THE COURT:  SO YOUR POINT IS THAT THESE

14   WENT TO MY ORDER --

15           MS. HUTNYAN:  AT SOME POINT, YOU HAVE TO

16   APPLY YOUR GOOD SENSE, AND SO TO JUST -- I THINK

17   THAT'S EVIDENCE RIGHT THERE THAT THERE WAS A

18   DELIBERATE DECISION NOT TO ALLOW US TO USE THIS.

19           I MEAN, FOR ONE THING, THE TIMING, RIGHT,

20   OF WHEN THIS STUFF ACTUALLY WAS PRODUCED.  SO THE

21   ORDER CAME OUT ON THE 12TH.  THEY HAD UNTIL THE

22   27TH TO PRODUCE ALL THESE TRANSCRIPTS.

23           BUT YOUR HONOR MADE IT CLEAR, THAT WAS

24   SUPPOSED TO BE ON A ROLLING BASIS.  YOUR HONOR MADE

25   IT CLEAR SAMSUNG HAD ALREADY BEEN PREJUDICED.

1          SO WE SAID, AFTER THE ORDER ISSUED,

2     "OKAY, WELL, '796 TRANSCRIPTS, WE WANT -- CLEARLY

3     THOSE ARE COMING OVER, SO WILL YOU AGREE TO HAVE

4     THOSE DEEMED PRODUCED IN THIS CASE?"

5          ALL THEY HAD TO DO WAS SAY THE WORD

6     "YES."  OKAY?  NOTHING NEEDS TO BE PRODUCED, NO

7     BUTTONS NEED TO BE PUSHED.  IT'S JUST HANDLED.

8          THEY NEVER EVEN SAID THAT THOSE

9     TRANSCRIPTS DIDN'T HAVE RELEVANCE OR DIDN'T HAVE

10    TECHNOLOGICAL NEXUS.  THAT WAS UNDISPUTED FROM THE

11    GET-GO.

12          THEY WAITED UNTIL SUNDAY NIGHT, THE DAY

13    BEFORE OUR REBUTTAL EXPERT REPORTS WERE DUE, TO

14    SAY, "OKAY, WE AGREE."

15          THAT'S DELIBERATE.  THERE'S NO REASON WHY

16    THE MOMENT THAT THAT APRIL 12TH ORDER CAME OUT

17    APPLE COULDN'T HAVE SAID, IF THEY WERE IN GOOD

18    FAITH, "SURE, THAT SEEMS REASONABLE.  LET'S DEEM

19    THOSE PRODUCED AND THAT WAY AT LEAST YOU HAVE THE

20    BACKGROUND" --

21          THE COURT:  ALL THE TRANSCRIPTS ARE

22    SITTING IN YOUR OFFICE; RIGHT?  THERE WAS NO

23    TRANSPORT.  YOU DIDN'T HAVE TO SEND ANY BITS OVER

24    THE WIRE.  ALL THEY NEEDED WAS AUTHORITY.

25          MS. HUTNYAN:  JUST AGREEMENT.  JUST

1    AGREEMENT.

2              AND THEN EVERY SINGLE ONE OF THE OTHER

3    TRANSCRIPTS THAT CAME IN IN RESPONSE TO THE COURT'S

4    APRIL 12TH ORDER, THEY CAME IN ON THE 17TH.  THAT

5    WAS THE DAY AFTER OUR REBUTTAL EXPERT REPORTS WERE

6    DUE.

7              SO EVEN DESPITE THE SECOND ORDER, THEY

8    WERE ELIMINATED FROM BEING FACTORED INTO OUR EXPERT

9    REPORTS.

10              HOW YOU CAN CONCLUDE THAT'S NOT

11   DELIBERATE -- I MEAN, I SUPPOSE IT COULD BE A CRAZY

12   COINCIDENCE, BUT I DON'T THINK SO.

13              I MEAN, I THINK THAT IS -- IT'S TRYING TO

14   PREVENT US FROM USING THIS EVIDENCE AT ALL COSTS

15   AND SO I DON'T -- I REALLY DON'T THINK THAT WE

16   SHOULD BE TOO CONCERNED ABOUT APPLYING APPROPRIATE

17   SANCTIONS TO A PARTY THAT HAS MADE THAT DECISION

18   AND DECIDED, "HEY, YOU KNOW, I'M WILLING TO RISK

19   IT."

20              THE COURT:  CAN YOU POINT ME -- ON THAT

21   LAST POINT, CAN YOU POINT ME TO ANY SPECIFIC

22   EXCERPT FROM ANY DEPOSITION TRANSCRIPT THAT YOU

23   THINK HIGHLIGHTS OR BEST DEMONSTRATES OR

24   ILLUSTRATES TERRIFIC EVIDENCE FOR YOUR SIDE THAT

25   YOU WERE DENIED IN A TIMELY MANNER?

1           I UNDERSTAND WHAT THE SUBJECT MATTER WAS

2     AND I UNDERSTAND THE RELEVANCE TO THIS, BUT ARE

3     THERE ANY DAMNING ADMISSIONS OR PARTICULARLY

4     SMOKING GUNS IN THERE THAT WOULD SUGGEST TO ME,

5     YEAH, THEY WERE ACTING DELIBERATELY HERE?

6           MS. HUTNYAN:  WELL, THE '796 TRANSCRIPTS,

7     THE ONES THAT WE DESCRIBED IN OUR REPLY BRIEF,

8     THERE ARE REASONS IN HERE THAT INVALIDATE THE

9     PATENTS-IN-SUIT HERE.

10          THEY DISTINGUISHED THEIR APPLICATION ON

11    THE '677 AND THE '678 ON A BASIS THAT THEY CONCEDED

12    IN THE '796 PROCEEDING, ON A BASIS THAT HAD ALREADY

13    BEEN IN OTHER PATENTS.

14          THE COURT:  AND WHEN YOU SAY THEY

15    CONCEDED, YOU'RE SAYING IN THAT DEPO TRANSCRIPT,

16    THE INVENTOR GAVE IT UP?

17          MS. HUTNYAN:  YES.  I CAN READ IT FOR YOU

18    IF YOU WANT.

19          THE COURT:  I HAVE IT.

20          MS. HUTNYAN:  OKAY, YEAH.  I THINK THAT

21    WOULD BE KIND OF MY POSTER CHILD FOR THAT

22    PARTICULAR ISSUE.

23          BUT, YOU KNOW, THE PREJUDICE RUNS MUCH

24    MORE BROADLY ACROSS ALL THIS COURSE.  WHEN WE HAVE

25    A 250 HOUR DEPOSITION LIMIT AND YOU DON'T HAVE THE

1    USE OF THE PRIOR SWORN STATEMENT OF THE EMPLOYEE OR

2    OF THE SUBSTANTIVE EVIDENCE IN THAT TO MAYBE

3    PRESENT TO ANOTHER EMPLOYEE, YOU HAVE TO START

4    AGAIN.  YOU HAVE TO GO THROUGH AND ESTABLISH THE

5    FOUNDATION.  "OKAY.  WHAT DO YOU KNOW ABOUT THIS?"

6              THEY CAN SAY, "OH, I DON'T REMEMBER."

7              THAT'S A WHOLE LOT DIFFERENT IF YOU CAN

8    SAY, "OH, WELL, DO YOU REMEMBER THIS?  THIS PERSON

9    TESTIFIED ABOUT SUCH AND SUCH," OR WHATEVER.

10             YOU HAVE ACCESS TO IDEAS AND FACTS THAT

11   WE DIDN'T HAVE.  WE DIDN'T HAVE THAT ACCESS.

12             THE COURT:  I GET ALL THAT.  THAT'S WHY I

13   ORDERED ALL THESE THINGS PRODUCED.

14             MS. HUTNYAN:  YEAH.  SO WE -- WE MISSED

15   OUT A LOT.

16             OKAY.  SO TURNING NOW, IF YOU THINK IT'S

17   APPROPRIATE, TO THE REMEDY.

18             THE COURT:  UM-HUM.

19             MS. HUTNYAN:  THE REMEDY IS BASED ON THE

20   FUNDAMENTAL PRINCIPLE THAT A PARTY SHOULD NOT BE

21   ALLOWED TO RELY ON EVIDENCE THAT IT WITHHELD, AND

22   PARTICULARLY WHERE IT IS VIOLATING OF A COURT

23   ORDER.

24             AND IT IS FUNDAMENTAL THAT WITHHOLDING,

25   UNTIL AFTER DISCOVERY, THESE TRANSCRIPTS DEPRIVED

87

1    US OF THE OPPORTUNITY TO EXPLORE THEM AND USE THEM,

2    OF COURSE.

3            THE COURT:  AND IT'S MORE FUNDAMENTAL

4    THAT, WHEN A COURT ORDERS YOU TO PRODUCE IT, YOU

5    PRODUCE IT, RIGHT?

6            MS. HUTNYAN:  WELL, ESPECIALLY

7    REPEATEDLY.  I MEAN, WHY THEY DIDN'T EVEN -- YES.

8            I MEAN, I -- THIS IS NOT A SITUATION

9    WHERE THERE WAS AN HONEST MISTAKE OR SOME

10   CONFUSION.  I MEAN, WE ALREADY LITIGATED THE ISSUE

11   OF THE SCOPE OF THIS ORDER.  THERE SHOULD BE --

12           THE COURT:  NOT ONCE, BUT TWICE.

13           MS. HUTNYAN:  OFTEN, YES, VERY

14   FREQUENTLY.

15           AND SO HERE IN THIS PARTICULAR INSTANCE,

16   I JUST DON'T THINK THERE ARE ANY MITIGATING

17   CIRCUMSTANCES.  THIS WAS CLEARLY A DECISION.

18           AND SO WE'VE ASKED THAT APPLE'S EXPERTS

19   BE PRECLUDED FROM DENYING OR TESTIFYING CONTRARY TO

20   THE EVIDENCE IN THE WITHHELD TRANSCRIPTS.

21           WE DIDN'T GET TO QUESTION THEM ABOUT

22   THESE THINGS.  NOT ONLY DID WE NOT GET TO

23   AFFIRMATIVELY USE THEM WITH OUR EXPERTS, BUT WE

24   DIDN'T GET THE CHANCE TO FIND OUT WHAT THEY WERE

25   GOING TO SAY TO EXPLAIN AWAY THIS TESTIMONY.  WE

1    DIDN'T GET THAT WITH THE FACT WITNESSES INVOLVED.

2         THE COURT:  SO HOW DOES THAT REMEDY WORK

3    IN PRACTICE?  I'M GENERALLY LOOKING TO YOU FOR

4    GUIDANCE AND EDUCATION ON THIS SUBJECT.

5         YOU'VE GOT AN APPLE WITNESS ON THE STAND.

6    YOU WANT TO ASK HIM WHETHER THE '796 IS VALID OR

7    NOT, OKAY?  AND IF I APPLY THE REMEDY OR IMPOSE THE

8    REMEDY THAT YOU'RE SEEKING, OR AWARD THE REMEDY I

9    GUESS IS THE RIGHT WORD, WHEN YOU PUT THAT QUESTION

10   TO WITNESS, HE WOULD BE PRECLUDED FROM SAYING, "NO,

11   THE PATENT'S VALID" BECAUSE, IN FACT, IN THE

12   TRANSCRIPT THAT YOU WERE DENIED, HE TOOK A CONTRARY

13   POSITION.  IS THAT ESSENTIALLY WHAT YOU'RE ASKING

14   ME TO ORDER?

15        MS. HUTNYAN:  NOT EXACTLY.

16        THE COURT:  TELL ME WHAT YOU'RE ASKING.

17        MS. HUTNYAN:  I THINK YOU'RE TALKING

18   ABOUT A FACT WITNESS, RIGHT?

19        THE COURT:  YES.

20        MS. HUTNYAN:  YEAH.  WE'RE ASKING FOR

21   EXPERT WITNESSES.

22        THE COURT:  FAIR ENOUGH.  BUT YOU WOULD

23   DENY THE EXPERT THE ABILITY TO TAKE A CONTRARY

24   POSITION BASED ON APPLE'S BEHAVIOR WITH RESPECT TO

25   THE FACT WITNESS AND THE TRANSCRIPT THAT WAS NOT

1    PRODUCED IN A TIMELY MANNER?

2              MS. HUTNYAN:  RIGHT.  WE DON'T WANT SOME

3    STORY COMING OUT THAT WE WEREN'T ALLOWED TO EXPLORE

4    IN THE DEPOSITIONS WHEN THEY GET UP AND SAY "OH,

5    WELL, YEAH, I LOOKED AT THOSE FACTS AND MY EXPERT

6    OPINION IS BLAH, BLAH, BLAH."

7              THEY SHOULDN'T GET TO DO THAT.  THEY MADE

8    SURE WE DIDN'T HAVE IT ALL THROUGHOUT DISCOVERY SO

9    THAT WE COULDN'T LEARN THAT.

10             AND SO IT REALLY SHOULDN'T BE A PROBLEM

11   TO SAY, "OKAY, WELL, IF THEY COULDN'T LEARN IT, YOU

12   CAN'T DO THAT, EITHER.  YOU CAN'T SURPRISE SAMSUNG

13   WITH THIS."

14             SO THAT'S REALLY THE FUNDAMENTAL ISSUE

15   HERE.  IT'S JUST, YOU KNOW, BASICALLY CUTTING OFF

16   THAT OPPORTUNITY IN WHATEVER WAY IT SHOULD COME

17   OUT.

18             IF IT'S INSERTED INTO A REPORT AND THEN

19   THEY TRY TO INTRODUCE IT OR WHATEVER, THEY SHOULD

20   NOT BE IN A POSITION WHERE THEY CAN EXPLAIN AWAY OR

21   DENY OR COMMENT AFFIRMATIVELY ON THAT EVIDENCE

22   WHERE THEY CAN, YOU KNOW, NOW TRY TO COLOR THE

23   STORY OR WHATEVER.

24             I MEAN, THEY JUST CAN'T TALK ABOUT THAT

25   IN A WAY THAT IS GOING TO SURPRISE US.

1           WE CAN STILL USE IT, OF COURSE, BECAUSE

2    WE CAN SAY, "WELL, ISN'T THERE THIS ADMISSION?"

3           "YES, THERE IS," OR WHATEVER.

4           THAT'S APPROPRIATE.

5           THE COURT:  HOW CAN HE ANSWER YOUR

6    QUESTION IF THEY'RE NOT ALLOWED TO ADDRESS THE VERY

7    TRANSCRIPT THAT WE'RE TALKING ABOUT?

8           I'M JUST TRYING TO THINK THROUGH THE

9    PRACTICALITIES OF ALL THIS.  I DON'T HAVE THE

10   EXPERIENCE THAT YOU ALL HAVE IN THIS ROOM WORKING

11   THROUGH THESE MECHANICS, BUT WHEN I THINK BACK ON

12   THE LIMITED EXPERIENCE I DID HAVE, I CAN IMAGINE IT

13   BEING VERY CLUMSY AND AWKWARD NOT ONLY FOR THE

14   WITNESS AND FOR THE EXAMINING ATTORNEY BUT, OF

15   GREATER CONCERN TO ME, FOR THE PRESIDING JUDGE TO

16   POLICE THIS IN AN EFFECTIVE MANNER.

17          SO I'M LOOKING TO YOU FOR GUIDANCE ON

18   THAT.  YOU THINK IT CAN BE DONE?

19          MS. HUTNYAN:  ABSOLUTELY.  I MEAN, NOT

20   ALLOWING A PARTY TO AFFIRMATIVELY USE EVIDENCE THAT

21   THEY WITHHELD IS, IS A PRETTY BASIC SANCTION.

22          AND, YOU KNOW, WE SHOULD NOT BE WITHHELD

23   FROM USING THAT IF WE LEARN A FACT IN A DEPOSITION

24   TRANSCRIPT, LET'S SAY, AND WE WANT TO TALK TO

25   SOMEBODY ABOUT THAT AND SAY "ISN'T IT TRUE" -- THEY

1    MAY OBVIOUSLY BE LOCKED TO THE TESTIMONY BECAUSE

2    THAT'S WHAT WE HAVE, THAT'S THE PIECE OF EVIDENCE

3    THAT WE HAVE, AND A PERSON SHOULD BE ABLE TO

4    TESTIFY ABOUT THAT.

5            IF THEY WANT TO THEN GO INTO A LONG

6    EXPLANATION OF IT, THAT WE GO INTO IN THE

7    DEPOSITION.

8            SO IT'S -- I HEAR WHAT YOU'RE SAYING.  IT

9    SOUNDS LIKE IT CAN'T BE APPLIED, BUT IT CAN.

10           IT'S JUST -- IT'S A PARTY ADMISSION,

11   RIGHT?  SO IT COMES IN AS A PARTY ADMISSION ON OUR

12   SIDE OF, "HEY, THEY ADMITTED THIS, RIGHT?"

13           AND THE EXPERT, "I DIDN'T LOOK AT THAT,"

14   OKAY, DRAW YOUR OWN CONCLUSION; OR, "YES, I LOOKED

15   AT THAT," YOU KNOW, AND HE STILL CAME OUT WITH HIS

16   CRAZY OPINION OR WHATEVER.

17           YOU KNOW, THAT SHOULD BE SOMETHING THAT

18   CAN HAPPEN ON OUR SIDE.

19           BUT THE FOLLOW-ON, THE REDIRECT OF, "YOU

20   DIDN'T LOOK AT THAT?  WHY DIDN'T YOU LOOK AT THIS?"

21   "OH, I LOOKED AT IT BECAUSE BLAH, BLAH, BLAH, BLAH,

22   BLAH, BLAH," WITH THIS WHOLE EXPLANATION, THAT'S

23   WHAT WE SHOULD HAVE GOTTEN IN DEPOSITION.  THAT'S

24   WHY YOU ORDERED THEM TO BE PRODUCED.

25           SO IT NEEDS TO BE AVAILABLE.

1            THE COURT:  ALL RIGHT.  ANY FURTHER

2     POINTS?

3            MS. HUTNYAN:  YES.  ALSO BECAUSE OF WHAT

4     I BELIEVE WAS A CALCULATED DECISION NOT TO PRODUCE

5     THESE -- I MEAN, I REALLY DON'T SEE ANY OTHER

6     CONCLUSION.  ONE OF THE REASONS WHY SANCTIONS NEEDS

7     TO BE ISSUED HERE IS TO DETER PARTIES FROM DOING

8     THIS, PARTIES WITH A WHOLE LOT OF MONEY THAT REALLY

9     DON'T CARE ABOUT WHAT THE COURT THINKS THAT JUST

10    FLAUNT THEIR NON-COMPLIANCE WITH THE ORDERS THAT

11    THE COURT ISSUES, I THINK THAT'S WRONG.

12            AND THIS IS -- THIS IS NOT WHERE THERE'S

13    SOME INCIDENTAL MISTAKE OR, OH, PEOPLE DIDN'T

14    RECOGNIZE WHAT WAS GOING ON OR THERE'S, I MEAN,

15    THERE'S SOME SORT OF CONFUSION.

16            THERE'S NO CONFUSION HERE.  THE ORDER WAS

17    REALLY CLEAR.  THE SECOND ORDER WAS REALLY CLEAR.

18            THEY STILL DIDN'T EVEN COMPLY WITH THE

19    SECOND ONE.  THIS IS A SITUATION WHERE A PARTY THAT

20    MADE A CALCULATED DECISION TO NOT PRODUCE A WHOLE

21    CATEGORY OF RELEVANT EVIDENCE THAT THE COURT --

22    THAT THE COURT ALREADY GAVE ITS STAMP OF APPROVAL

23    TO AS RELEVANT EVIDENCE IN THIS CASE.

24            WHEN THE PARTY GOES AHEAD AND REFUSES TO

25    PRODUCE THOSE THINGS AND SAYS, "I'M GOING TO RISK

1    IT, BECAUSE WHAT'S GOING TO HAPPEN TO ME?"  WHEN

2    THAT HAPPENS, I THINK THE COURT SHOULD REACH OUT

3    AND SAY, "OKAY, THEN YOU DON'T GET TO USE IT.  YOU

4    DON'T GET TO EXPLAIN IT AWAY LATER."

5              THAT'S FAIR.  THAT'S REALLY THE ONLY WAY

6    TO TRY TO MITIGATE THE PREJUDICE THAT WE SUFFERED.

7              WE'D LIKE THE DEPOSITIONS, TOO, WHICH

8    I'LL GET TO IN A SECOND, BUT REALLY THAT'S WHAT

9    WE'RE TALKING ABOUT IS NOT ALLOWING THEM TO BENEFIT

10   FROM THIS PRACTICE.

11             THE COURT:  I TAKE IT YOUR OVERARCHING

12   POINT IS THAT THERE ARE INSTITUTIONAL VALUES THAT

13   ISSUE HERE, APART FROM THE VALUES BETWEEN THE

14   PARTIES?

15             MS. HUTNYAN:  YES.  AND I THINK ALSO, YOU

16   KNOW, ONE OF OUR FAVORITE SUBJECTS HERE FROM PAST

17   HEARINGS IS THE USE OF JUDICIAL RESOURCES.

18             WE'VE HAD 17 BRIEFS ON THESE RELATED

19   PROCEEDINGS MATERIALS.  HOW RELEVANT, HOW MORE

20   RELEVANT COULD THESE THINGS BE, RIGHT?

21             AND YET, WE'RE LITIGATING THEM TO DEATH

22   BECAUSE THESE SIMPLE THINGS THAT SHOULD HAVE BEEN

23   PRODUCED A LONG TIME AGO, UNQUESTIONABLY RELEVANT

24   MATERIALS, NOT MAYBE COULD HAVE BEEN, SHOULD HAVE

25   RELEVANT, KIND OF SIMILAR, NO, THESE ARE SWORN

1    TESTIMONY, YOU KNOW, AND THE MATERIALS FROM RELATED

2    PROCEEDINGS WHERE THEY TOOK POSITIONS ON THE SAME

3    PATENTS THEY ASSERTED IN THIS CASE.

4           HOW DO YOU EVEN HAVE -- THAT SHOULD HAVE

5    BEEN RESOLVED IN A MEET AND CONFER THE FIRST DAY.

6    WE ASKED FOR THIS, OH, CLEARLY THAT'S RELEVANT.

7           AND YET, WE HAVE EXHAUSTED JUDICIAL

8    RESOURCES AND MOTIONS FOR CLARIFICATION, LIKE SEVEN

9    PLEADINGS --

10          THE COURT:  I'M A LITTLE TIRED.  I'M NOT

11   QUITE EXHAUSTED YET.  I'M A LITTLE CONCERNED.

12          (LAUGHTER.)

13          THE COURT:  ALL RIGHT.  IS THERE ANYTHING

14   FURTHER YOU'D LIKE TO SAY?

15          MS. HUTNYAN:  NO.

16          THE COURT:  OTHERWISE I'M GOING TO HEAR

17   FROM APPLE.

18          MS. HUTNYAN:  OKAY.  THANK YOU.

19          THE COURT:  THANK YOU.

20          MR. JACOBS?

21          MR. JACOBS:  THANK YOU, YOUR HONOR.

22          I'M GOING TO START BY ASKING YOU TO LOOK

23   AT SOME VERY SPECIFIC DOCUMENTS BECAUSE I THINK --

24   I GET THE TENOR OF YOUR COMMENTS WITH MS. HUTNYAN,

25   AND I THINK THE REAL POINT OF OUR OPPOSITION IS WE

1    NEED TO GET SPECIFIC BECAUSE YOU ARE BEING GIVEN AN

2    INACCURATE UNDERSTANDING OF THE FACTS.

3              SO IF YOU LOOK IN YOUR BINDER TO THE TAB

4    ON THE SAMSUNG MOTION FOR SANCTIONS AND YOU TURN TO

5    TAB 2 --

6              THE COURT:  I'M THERE.

7              MR. JACOBS:  -- THIS IS A LETTER ON

8    FEBRUARY 28TH, 2012, AND IN THIS LETTER, COUNSEL

9    FOR SAMSUNG REQUESTS THAT THE PARTIES ENTER INTO A

10   CROSS-USE AGREEMENT FOR DEPOSITION TRANSCRIPTS.

11             SO THERE'S NO QUESTION HERE ABOUT

12   PRODUCTION BECAUSE, OF COURSE, COUNSEL FOR SAMSUNG

13   HAS THE TRANSCRIPTS.

14             THE QUESTION IS, ARE WE GOING TO AGREE TO

15   CROSS-USE?

16             AND THE COURT WILL RECALL FROM THE APRIL

17   HEARING, IN A FOOTNOTE IN THE APRIL -- IN THE APRIL

18   ORDER THAT WE HAD AN ACUTE AND ABIDING CONCERN

19   ABOUT CROSS-USE, AND THAT ACUTE AND ABIDING CONCERN

20   WAS ITSELF SELF-JUSTIFYING.

21             THERE WAS NO DEPO LIMIT IN THE ITC, AND

22   OUR -- WE FELT THAT THE ABSENCE OF A DEPOSITION

23   LIMIT IN THE ITC WAS GOING TO PREJUDICE OUR ABILITY

24   TO LIMIT DEPOSITIONS IN THIS CASE.

25             AND IN THE FOOTNOTE IN THE APRIL ORDER,

1   THE COURT SAID WHATEVER POSITION APPLE IS TAKING

2   NOW, IT MIGHT HAVE HAD MORE JUSTIFICATION IF IT WAS

3   TAKING IT EARLIER BECAUSE -- AND I'M INFERRING A

4   LITTLE BIT FROM THE FOOTNOTE -- BY THE TIME OF THE

5   APRIL ORDER, THE ITC DISCOVERY CUT OFF HAD COME.

6        SO THERE WAS NO MORE POTENTIAL FOR ABUSE

7   IN THE ITC DISCOVERY THAT YOUR HONOR THOUGHT WAS A

8   GOOD JUSTIFICATION FOR THE PRODUCTION ORDER YOUR

9   HONOR MADE.

10        NOW, THE POINT -- THE -- I DWELL ON THIS

11   BECAUSE I REALLY THINK THE '796 ISSUE IS KIND OF

12   THE -- IT'S OBVIOUSLY THE SAME INVENTORS.

13        WE DID MAKE A DELIBERATE DECISION TO RELY

14   ON THE CROSS-USE ISSUE IN THE JANUARY TO APRIL

15   PERIOD IN NOT, QUOTE, "PRODUCING" TO COUNSEL FOR

16   SAMSUNG THE DEPOSITION TRANSCRIPTS THEY ALREADY HAD

17   POSSESSION OF.

18        AND YOUR HONOR EVALUATED THAT IN APRIL

19   AND ISSUED THE ORDER YOU ISSUED AND WE GOT AN

20   E-MAIL ON FRIDAY SAYING "WILL YOU DEEM THEM

21   CROSS-USE?" AND ON SUNDAY WE SAID YES, TWO DAYS

22   LATER.

23        SO THERE'S NO DELIBERATE FLOUTING OF

24   COURT ORDERS.

25        LET ME -- SO THAT'S ONE SPECIFIC.

97

1          IN FEBRUARY WE HAVE SAMSUNG AGREEING THE

2     ISSUE IS CROSS-USE.

3          THEN THEY FIGURED OUT THAT THEY HAD A

4     HOOK IN PRODUCTION AND THEY FILED THEIR MOTION AND

5     YOU RULED THE WAY YOU DID.

6          BUT THERE'S NO WAY TO SEE, IN LIGHT OF

7     THAT LETTER AND THAT RECORD, HOW ANY POSITION WE

8     TOOK IN THE INTERIM PERIOD ON '796 TRANSCRIPTS

9     COULD BE WITHOUT SUBSTANTIAL JUSTIFICATION, BECAUSE

10    THE ISSUE WAS CROSS-USE.

11         THE COURT:  WELL, THE CONCERN I HAVE -- I

12    APOLOGIZE.

13         THE SPECIFIC CONCERN I HAVE IS THE

14    SUGGESTION -- AND ALL I CAN DO IS RELY ON THE

15    RECORD YOU ALL ARE DESCRIBING TO ME -- THE

16    SUGGESTION THAT, MY ORDER NOTWITHSTANDING, A NAMED

17    INVENTOR DEPOSITION TRANSCRIPT WAS NOT PRODUCED

18    UNTIL MAY 31ST.

19         IS THAT CORRECT?

20         MR. JACOBS:  I DON'T BELIEVE -- WELL,

21    WHICH ORDER ARE WE TALKING ABOUT?  BECAUSE THE

22    SANCTIONS MOTION IS DIRECTED TO VIOLATIONS OF THE

23    DECEMBER ORDER, AND THE DECEMBER ORDER, WE

24    LITIGATED IT IN APRIL, AND I DON'T WANT TO -- I'M

25    IN THE AWKWARD POSITION OF -- YOU RULED AGAINST US

1    ON SOME THINGS IN APRIL, BUT I HAVE TO ARGUE THAT

2    WHAT WE DID BETWEEN DECEMBER AND APRIL WAS

3    SUBSTANTIALLY JUSTIFIED.

4            I HAVE NO PROBLEM JUSTIFYING OUR

5    COMPLIANCE WITH THE APRIL ORDER.  THE TEAM MOVED ON

6    A DIME TO GET EVERYTHING OUT AND BEAT THE DEADLINE

7    BY FIVE DAYS.

8            NOW, WHAT IS -- LET ME TURN TO SOME OTHER

9    MISSTATEMENTS, OR MISLEADING STATEMENTS.

10           THE COURT:  AND I WANT TO ALLOW YOU TO DO

11   THAT, MR. JACOBS, BUT AGAIN, IT'S IMPORTANT I

12   UNDERSTAND WHAT I'M BEING TOLD HERE.

13           I THOUGHT I HEARD, IN THE REMARKS OF YOUR

14   OPPOSING COUNSEL, A STATEMENT THAT A NAMED INVENTOR

15   DEPOSITION TRANSCRIPT WAS NOT PRODUCED UNTIL

16   MAY 31.  DID I SIMPLY MISHEAR THAT OR MISKNOW THAT?

17           MR. JACOBS:  I HAVE SOME NOTES, YOUR

18   HONOR.  EXCUSE ME.

19           YOUR HONOR, LET ME JUST TAKE A MINUTE AND

20   I'LL GET THE ANSWER TO THAT QUESTION.

21           THE COURT:  OKAY.  THAT'S FAIR.  I JUST

22   WANT TO UNDERSTAND THE FACTS.

23           MR. JACOBS:  LET ME GO TO SOME FACTS I DO

24   UNDERSTAND.

25           THE COURT:  OKAY.

99

1           MR. JACOBS:  THE INVENTOR DEPOSITIONS IN

2      THIS CASE WERE TAKEN IN THE FALL, AND THAT WAS BY

3      JUDGE KOH'S ORDER.

4           AND THE THRUST OF -- AND SO THE ARGUMENT

5      TO YOU THAT DEPOSITIONS TAKEN IN THE WINTER WOULD

6      HAVE HELPED TAKE DEPOSITIONS IN THE FALL MISSES,

7      OBVIOUSLY, THE BASIC CHRONOLOGY HERE.

8           AND IN FACT, IN OUR OPPOSITION WE LAID

9      OUT THE TIMING OF THE DEPOSITIONS THAT WERE TAKEN

10     AND HOW THEY RELATE TO THE TIMING -- IN THE OTHER

11     CASES AND HOW THEY RELATE TO THE TIMING OF THE

12     DEPOSITIONS HERE.

13          SO THIS WOULD BE, FOR EXAMPLE, ON PAGE 7

14     WHERE WE WENT THROUGH DEPOSITION BY DEPOSITION THAT

15     WE COULD THAT THEY MOVED ON AND LAID OUT FOR YOU IN

16     DETAIL THE CHRONOLOGY.

17          AGAIN, BETWEEN DECEMBER AND APRIL, WE

18     TOOK SOME POSITIONS ABOUT WHAT COMPLIANCE WITH YOUR

19     DECEMBER 15TH ORDER MEANT, AND WE COMPLIED

20     RIGOROUSLY WITH OUR UNDERSTANDING OF THE ORDER.

21          AND I -- AND WE -- AND AS THE CROSS-USE

22     EXAMPLE POINTS TO, I CAN JUSTIFY WHY WHAT WE

23     THOUGHT WERE THE GROUND RULES BETWEEN THE PARTIES

24     WERE THOSE GROUND RULES.

25          ANOTHER EXAMPLE IS THE QUESTION OF

1    INVENTORS.  WE THOUGHT -- ALTHOUGH THE ORDER HAS A

2    HEADING, "APPLE WITNESSES," BASED ON THE BACK AND

3    FORTH BETWEEN THE PARTIES AND THE SPECIFIC REQUESTS

4    THAT WERE MADE OF US IN THE DOCUMENT -- IN DOCUMENT

5    REQUESTS, WE THOUGHT THEY WERE INVENTOR WITNESSES.

6               SO IF YOU LOOK AT --

7               THE COURT:  BUT THERE WAS REALLY NOTHING

8    AT ALL IN MY ORDER, OR THE LANGUAGE OF THE ORDER,

9    WHICH SUGGESTS IT WAS SO LIMITING; RIGHT?  WAS I

10   AMBIGUOUS?

11              MR. JACOBS:  YES, HONESTLY, YOUR HONOR.

12   I'M SORRY TO --

13              THE COURT:  I ACCEPT A CRITICISM, BUT

14   TELL ME WHY YOU THINK I WAS AMBIGUOUS.

15              MR. JACOBS:  BECAUSE -- BECAUSE THE WAY

16   THE MOTION WAS TEED UP WAS ABOUT A DIFFERENT ISSUE.

17              THE MOTION WAS NOT TEED UP FOR ALL

18   WITNESSES.  THE MOTION WAS TEED UP, WHAT'S THE

19   PROPER TECHNOLOGICAL NEXUS?

20              AND IN THE FOOTNOTE IT'S SPECIFIC TO

21   INVENTOR WITNESSES IN YOUR DECEMBER 15TH ORDER.  IT

22   SAYS, "FOR UTILITY PATENT INVENTORS, HERE'S THE

23   TECHNOLOGICAL NEXUS, AND FOR DESIGN PATENT

24   INVENTORS, HERE'S THE TECHNOLOGICAL NEXUS."

25              IN TAB 1 OF YOUR BINDER, WE HAVE AN

1    EXTRACT FROM MS. HUTNYAN'S DECLARATION, PARAGRAPH

2    43, "SAMSUNG'S COUNSEL REQUESTED THAT APPLE PRODUCE

3    PRIOR DEPOSITION TRANSCRIPTS," PRIOR DEPOSITION

4    TRANSCRIPTS, EMPHASIS ON PRIOR, "FOR INVENTOR

5    WITNESSES," EMPHASIS ON INVENTOR.

6            AND THEN AT TAB 3 WE HAVE THE REQUESTS

7    THAT WE UNDERSTOOD WERE THE FOCUS OF THE MOTION

8    BACK IN DECEMBER.

9            SO AT PAGE 6, "ALL DOCUMENTS AND

10   COMMUNICATIONS CONCERNING PRIOR TESTIMONY OF ANY

11   INVENTOR OF THE APPLE I.P.," EMPHASIS ON PRIOR,

12   EMPHASIS ON INVENTOR.

13           AND SO, AGAIN, I DON'T WANT TO -- I'M

14   REALLY NOT REARGUING THE APRIL MOTION.

15           THE COURT:  COULD HAVE FOOLED ME,

16   MR. JACOBS, BUT --

17           MR. JACOBS:  I'M SORRY?

18           THE COURT:  YOU COULD HAVE FOOLED ME,

19   BECAUSE IT SOUNDS LIKE WE ARE RELITIGATING THAT

20   ISSUE.

21           MR. JACOBS:  I'M ONLY EXPLAINING --

22   YOU'RE ASKING US -- IN THIS CONTEXT, YOU'RE

23   SAYING -- YOU'RE ASKING THE QUESTION -- ACTUALLY,

24   LET ME BACK UP ONE STEP BEFORE.

25           ALL THE PRINCIPLES YOU'RE APPLYING HERE

1    ARE PRINCIPLES WE'VE ADVOCATED BECAUSE WE HAVE

2    FILED MOTION AFTER MOTION AGAINST SAMSUNG.  WE TAKE

3    THE INSTITUTIONAL VALUES VERY SERIOUSLY.

4         WE'VE TOLD YOU FROM THE BEGINNING WE'RE

5    GOING TO BE DEPENDENT ON YOU TO ENFORCE THOSE

6    INSTITUTIONAL VALUES AND OUR RIGHTS AS A LITIGANT

7    AGAINST SAMSUNG.

8         SO OUR STATE OF MIND, IF YOU WILL, IS WE

9    ARE GOING TO BE RELYING ON JUDGE GREWAL TO GET US

10   WHAT WE NEED IN THIS CASE BECAUSE WE KNOW WHAT KIND

11   OF -- THAT WE'RE UP AGAINST A TOUGH ADVERSARY, SO

12   WE BETTER BE PUNCTILIOUS.

13        AND SO WHAT I HAVE TO DO NOW, WITHOUT

14   REARGUING THE APRIL ORDER, IS EXPLAIN TO YOU WHY WE

15   THOUGHT WHAT WE THOUGHT AND THAT WHAT WE THOUGHT

16   WAS JUSTIFIED.

17        I'M NOT ARGUING THAT WE WERE RIGHT.  I'M

18   JUST ARGUING THAT WHAT WE THOUGHT WAS JUSTIFIED.

19        THE COURT:  AND YOU'RE NOT ARGUING THAT,

20   IN LIGHT OF MY ORDER IN APRIL, YOUR POSITIONS PRIOR

21   TO APRIL WERE WRONG, THAT DID YOU NOT COMPLY WITH

22   MY DECEMBER 22ND ORDER BASED ON WHAT I RULED ON IN

23   APRIL; RIGHT?

24        MR. JACOBS:  I AM NOT ARGUING THAT THE

25   DECISION -- I'M NOT REARGUING THE DECISION YOU MADE

1      IN APRIL, WHICH HAD A RETROSPECTIVE QUALITY,

2      ALTHOUGH READING THE TRANSCRIPT AND THE BACK AND

3      FORTH, I'LL JUST TELL YOU THAT THE TENOR I TOOK

4      AWAY FROM IT WAS, "LOOK, WE'RE HERE IN APRIL.  THIS

5      CASE HAS GOT TO MOVE ALONG.  THERE'S STUFF THEY

6      WANT.  IT LOOKS RELEVANT TO ME.  WHY AREN'T YOU

7      PRODUCING IT?"

8              AND IT WAS NOT A TEXTUAL EXEGESIS OF THE

9      DECEMBER ORDER.  THAT'S WHAT I TOOK AWAY FROM THE

10     TRANSCRIPT.

11             SO I'M HOPEFUL THAT I CAN PERSUADE YOU

12     THAT WHAT WE DID FROM DECEMBER TO APRIL WAS, IN

13     FACT, SUBSTANTIALLY JUSTIFIED, NOTWITHSTANDING YOUR

14     APRIL ORDER, BECAUSE THAT'S THE GRAVAMEN OF THEIR

15     MOTION.

16             THE COURT:  AND AGAIN, JUST SO THAT I'M

17     CLEAR IN YOUR POSITION, AS TO APPLE'S

18     POST-APRIL 22ND CONDUCT, THERE IS NO QUESTION,

19     YOU'RE TELLING ME, THAT YOU PRODUCED ALL OF THE

20     TRANSCRIPTS THAT I ORDERED PRODUCED IN THAT APRIL

21     ORDER?

22             I'M SORRY.  IF I SAID APRIL 22ND, I MEANT

23     APRIL 12TH.

24             THERE'S NO QUESTION THAT THOSE

25     TRANSCRIPTS WERE PRODUCED CONSISTENT WITH THAT

1    ORDER BY THE DEADLINE SET IN THAT ORDER TO THE FULL

2    EXTENT REQUIRED BY THAT ORDER?

3           MR. JACOBS:  THAT'S MY UNDERSTANDING,

4    YOUR HONOR.  I -- IF THERE'S AN ISOLATED ONE OUT

5    THERE THAT SOMEHOW, THROUGH OVERSIGHT OR

6    INADVERTENCE CAME IN, I'M SURE IT CAME IN WITH A

7    COVER LETTER AND IT WOULD HAVE SAID "HERE'S ONE

8    WE'RE PRODUCING TO YOU," AND I HAVEN'T SEEN THAT IN

9    THIS RECORD.

10          AND I KNOW WHAT WE DID AND I KNOW WE

11   SUPPORTED WHAT WE DID IN THE VARIOUS SETS OF MOVING

12   PAPERS YOU HAVE ABOUT HOW WE COMPLIED WITH THE

13   ORDER.

14          AND WHERE WE HAD TROUBLE COMPLYING WITH

15   THE ORDER, WE GOT A MOTION ON FILE RIGHT AWAY.

16          WHERE WE WERE IN TENSION WITH THE ITC

17   PROTECTIVE ORDER AND YOUR ORDER BECAUSE OF THE WAY

18   THE GROUND RULES THERE WORK AS AGAINST THE GROUND

19   RULES HERE, WE GOT A MOTION ON FILE RIGHT AWAY.

20          SO WE WEREN'T -- WE WERE ALL ABOUT, IN

21   APRIL, MOVING HEAVEN AND EARTH TO COMPLY AS QUICKLY

22   AS POSSIBLE.  THAT'S WHY WE GOT IT DONE A WEEK

23   EARLY, FIVE DAYS EARLY.

24          YOU KNOW, IF YOU LOOK AT THE, AT THE

25   SPECIFICS, YOU HAVE TO GET -- YOU HAVE TO GET VERY

1    GRANULAR HERE BECAUSE SAMSUNG IS PRETTY GOOD ABOUT

2    SPINNING THIS INTO A TALE.

3              THE COURT:  YOU'RE NOT SO BAD YOURSELF,

4    SO YOU'RE RIGHT, YOU HAVE TO GET DOWN TO THE

5    DETAILS HERE.

6              MR. JACOBS:  ORDING, THE ORDING

7    DEPOSITION THAT WAS MENTIONED TO YOU EARLIER,

8    THAT'S FROM THE '701 CASE.  THAT WAS A CASE THAT

9    WAS ON SAMSUNG'S LIST AND THEN GOT DROPPED.

10             IN APRIL, WE SAID, "YOU KNOW WHAT?  LET'S

11   JUST CLEAR ALL OF THIS OUT.  LET'S JUST GET IT OUT

12   OF HERE."

13             BUT I DON'T SEE HOW WE CAN BE ACCUSED OF

14   BEING OUT OF COMPLIANCE FROM DECEMBER TO APRIL WHEN

15   THEY DROPPED THAT CASE FROM THE, FROM THE --

16             THE COURT:  FROM THE ROSTER?

17             MR. JACOBS:  -- FROM THE ROSTER, YES.

18             AND STRICKON, YOU HEARD ABOUT STRICKEN

19   FROM SAMSUNG'S COUNSEL.  HE WAS DEPOSED IN

20   OCTOBER 2011 IN THIS CASE.

21             HIS '797 DEPO IN THE HTC CASE HAPPENED IN

22   MARCH, SO IT'S NOT A PRIOR DEPOSITION WITHIN THE

23   MEANING OF THE DECEMBER ORDER.

24             I'M NOT QUARRELLING WITH THE RELEVANCE OF

25   IT OR THAT --

1           THE COURT:  NOT NOW ANYWAY.

2           MR. JACOBS:  NO, OF COURSE NOT.

3           AND WE PRODUCED IT.

4           AND HAD WE, I THINK, REALIZED THAT THERE

5     WERE OTHER DEPOSITIONS GOING ON IN THIS -- YOU

6     KNOW, THERE'S QUITE A DEPOSITION -- THERE'S QUITE A

7     LITIGATION LANDSCAPE GOING ON HERE -- HAD IT BEEN

8     THE FOCUS OF ATTENTION, I DON'T UNDERSTAND -- I

9     DON'T SEE ANY REASON WHY IT WOULDN'T HAVE BEEN

10    PRODUCED.

11          BUT THERE WAS NOT ANY DELIBERATE DECISION

12    TO NOT COMPLY WITH THE DECEMBER ORDER WHICH HAD TO

13    DO WITH PRIOR TRANSCRIPTS.

14          SIMILARLY, NOVICK, HE WAS DEPOSED ONLY IN

15    THE '794 AND '796 CASES -- THOSE ARE THE

16    APPLE/SAMSUNG ITC CASES -- IN FEBRUARY 2012, SO

17    IT'S AFTER THE DECEMBER ORDER AND SUBJECT TO THE

18    WHOLE CROSS-USE ISSUE.

19          IT'S NOT A PRODUCTION ISSUE.  THERE'S

20    NO -- THERE'S NO -- THERE'S NOTHING THAT CAN BE NOT

21    PRODUCED TO A PARTY THAT ALREADY HAS IT.

22          SO I WOULD ASK, YOUR HONOR, THAT YOU LOOK

23    CAREFULLY AT OUR OPPOSITION AND THE DETAILED

24    DECLARATIONS THAT WERE SUBMITTED AND THAT BEFORE

25    JUMPING TO A CONCLUSION THAT WHAT WE DID WAS NOT

1    SUBSTANTIALLY JUSTIFIED, LOOK VERY CAREFULLY AT THE

2    CHRONOLOGY AND WHAT SAMSUNG WAS ASKING FOR WHEN AND

3    WHAT WE DID WHEN, BECAUSE I JUST -- I DON'T SEE --

4    IT'S CERTAINLY NEVER BEEN OUR INTENT TO NOT BE IN

5    COMPLETE COMPLIANCE.

6            YES, THERE'S A LOT OF LITIGATION STUFF

7    GOING ON.  YES, THERE'S A LOT OF MEETING AND

8    CONFERRING, A LOT OF GOOD FAITH DISCOVERY DISPUTES.

9    YOU'VE CALLED THOSE, THANK YOU, FOR BOTH SIDES.

10           BUT THERE'S NOTHING HERE THAT WAS IN ANY

11   WAY SANCTIONABLE.

12           THE COURT:  ALL RIGHT.  THANK YOU,

13   MR. JACOBS.

14           MR. JACOBS:  ONE FURTHER POINT.

15           THE COURT:  IF YOU HAVE ONE FURTHER

16   POINT, I'LL TAKE IT.

17           MR. JACOBS:  THE REMEDY DOESN'T MAKE ANY

18   SENSE.  THE REMEDY IS COMPLETELY UNADMINISTERABLE.

19   IF -- AND SO I THINK YOU WERE ON TO THAT WITH THE

20   QUESTIONING OF MS. HUTNYAN.

21           BUT --

22           THE COURT:  WELL, LET ME ASK YOU THIS:

23   LET'S ASSUME FOR THE MOMENT THAT THE RECORD IS FAR

24   MORE EGREGIOUS THAN YOU DESCRIBED IT, AND LET'S

25   ASSUME FOR THE MOMENT THAT APPLE HAS WITHHELD MANY

1    TRANSCRIPTS IN VIOLATION OF MULTIPLE COURT ORDERS.

2    I APPRECIATE THAT YOU DISAGREE STRONGLY WITH THAT

3    CHARACTERIZATION, BUT LET'S ASSUME THAT FOR THE

4    MOMENT.

5              IF THAT WERE TRUE, WHAT WOULD BE THE

6    APPROPRIATE REMEDY IN THAT SITUATION?

7              MR. JACOBS:  THE DEPOSITIONS HAVE BEEN

8    PRODUCED.

9              THERE'S STILL, ON THE '796 CASE, A

10   CROSS-USE QUESTION.  I THINK THE PARTIES ARE GOING

11   TO ARGUE ABOUT WHAT THE STATE OF THE RECORD IS ON

12   CROSS-USE AS OPPOSED TO THIS DEEMED PRODUCTION

13   ISSUE.

14             BUT THAT WAS SOMETHING THAT HAD A HISTORY

15   THAT LONG PRE-DATED THESE MOTIONS.

16             SO WE HAVE TO SEGREGATE OUT, I THINK, THE

17   '796 ISSUE BECAUSE THERE'S STILL THE CROSS-USE

18   ISSUE.

19             I'M -- AS TO OTHER DEPOSITION

20   TRANSCRIPTS, IF THEY HAD TO FILE AN ADDITIONAL

21   MOTION TO GET WHAT THEY WANTED AND YOU WERE REALLY

22   TO FIND THAT IT WAS WITHOUT SUBSTANTIAL

23   JUSTIFICATION, WHAT YOU HAVE DONE IN THE PAST IS

24   AWARD FEES FOR THE MOTION.

25             BUT ABSENT SOME VERY PARTICULARIZED

1        SHOWING IN THE CASE OF OTHER DEPOSITION TRANSCRIPTS

2        OF VERY SPECIFIC PREJUDICE, I DON'T SEE -- I THINK

3        THAT IT'S VERY HARD TO FASHION A BROADER TRIAL

4        REMEDY THAN THAT, A BROAD TRIAL REMEDY.  I DON'T

5        SEE HOW --

6                THE COURT:  OF ANY KIND?

7                MR. JACOBS:  I THINK SO.  I THINK A BROAD

8        TRIAL REMEDY IS VERY HARD BECAUSE IT'S A VERY

9        GRANULAR -- IT'S A VERY GRANULAR ISSUE.

10               IT'S BASICALLY A QUESTION OF THEM GETTING

11       SOME DISCOVERY AFTER THE DISCOVERY CUT OFF.  WHAT

12       ARE WE GOING TO DO ABOUT THEM GETTING SOME

13       DISCOVERY AFTER THE DISCOVERY CUT OFF?

14               WELL, THAT'S GOING TO DEPEND ON THE

15       SPECIFICS OF ANY DISCOVERY THAT THEY GOT AFTER THE

16       DISCOVERY CUT OFF.

17               YOU CAN TELL FROM OUR PAPERS THAT WE

18       FILED -- I'M SORRY -- THAT WE GAVE THEM DEPOSITION

19       TRANSCRIPTS THAT WERE NOT EVEN CALLED FOR BY THEIR

20       OWN LIST, SO WE OVERPRODUCED.

21               IF WE OVERPRODUCED, DOES THAT LEAD TO

22       SOME KIND OF SANCTIONABLE INFERENCE OR CONDUCT?  I

23       DON'T THINK SO.

24               THE COURT:  ANY FURTHER POINTS?

25               MR. JACOBS:  I'M WORRIED I HAVEN'T BEEN

1    PERSUASIVE AND I FEEL LIKE WE DIDN'T ENGAGE IN

2    SANCTIONABLE CONDUCT HERE.

3              THE COURT:  ALL RIGHT.  THANK YOU,

4    MR. JACOBS.

5              ANY REBUTTAL?

6              MS. HUTNYAN:  PLEASE.  I JUST HAVE A FEW

7    POINTS TO TRY AND CLEAR UP THE MESS.

8              ON THIS ISSUE ABOUT THEIR CONCERN ABOUT

9    CROSS-USE AND WHETHER WE WOULD BE CHEATING ON OUR

10   250 HOURS, THAT REALLY WASN'T OUR CONCERN.

11             THE COURT ALREADY DECIDED THAT FOR THEM.

12   THE COURT SAID ALL TRANSCRIPTS, SHOULD HAVE BEEN

13   ALL TRANSCRIPTS.

14             AND THIS GOES TO DELIBERATENESS AGAIN

15   BECAUSE LOOKING AT THE COURT ORDER, SEEING WHAT IT

16   SAYS, THEY'RE NOW CLAIMING "WE DIDN'T PRODUCE THE

17   '796 TRANSCRIPTS, WE DIDN'T BRING THOSE BECAUSE WE

18   WERE CONCERNED ABOUT HOW YOU MIGHT MISUSE THEM.  WE

19   THOUGHT BETTER THAN WHAT JUDGE GREWAL THOUGHT IN

20   HAVING THOSE BE PRODUCED NOW," AND THEY MADE THE

21   DECISION TO WITHHOLD THEM.  THERE'S YOUR

22   DELIBERATENESS RIGHT THERE.

23             ALSO, HE SAID IN FEBRUARY THE ISSUE --

24   THERE'S SOME ISSUE REGARDING CROSS-USE.  MUDDY,

25   MUDDY THE WATERS.

1         WE HAD AN ORDER.  THE ORDER SAID "THESE

2    NEED TO BE PRODUCED BY JANUARY 15TH," SO BY

3    FEBRUARY THERE'S AN ORDER OUTSTANDING TO PRODUCE

4    THESE TRANSCRIPTS.

5         WHO CARES WHETHER THERE'S A DISCUSSION, A

6    SIDE DISCUSSION ABOUT CROSS-USE OF OTHER THINGS?

7    THAT WAS ALREADY LOCKED DOWN.  THERE WAS AN ORDER

8    FROM THIS COURT.

9         AS FAR AS BEATING THE DEADLINE, THERE WAS

10   NO BEATING THE DEADLINE.  HE CAN'T GIVE YOU

11   SPECIFICS BECAUSE IT'S NOT TRUE.

12        ON THE 7TH OF JUNE, THE BAUMBERGER

13   DEPOSITION FROM '704 WAS PRODUCED.

14        FROM MOTOROLA ITC '750, THE MARK FEEMAN

15   DEPOSITION WAS PRODUCED ON JUNE 7TH.

16        THE COURT:  FOR EITHER BAUMBERGER OR THAT

17   LAST TRANSCRIPT, CAN YOU SHED SOME LIGHT -- I

18   APOLOGIZE, I SUPPOSE I SHOULD KNOW THIS RECORD AS

19   WELL AS YOU ALL DO, BUT I DON'T -- WHO ARE THESE

20   PEOPLE?  WHY DO THEY MATTER?  HOW WERE YOU HURT BY

21   THAT DELAY?

22        MS. HUTNYAN:  THEY MATTER BECAUSE THEY

23   ARE APPLE WITNESSES TESTIFYING IN CASES WITH A

24   TECHNOLOGICAL NEXUS.

25        YOUR HONOR ALREADY DECIDED THIS.  YOU

112

1    DON'T NEED TO DO SOME GRANULAR DETERMINATION OF

2    WHETHER THERE WAS SPECIFIC PREJUDICE, YOU KNOW,

3    LIKE THIS WHOLE ARGUMENT ABOUT, "WELL, WAS THE

4    INVENTOR DEPOSED BEFORE OR AFTER?  AND OH, YOU

5    COULDN'T HAVE USED IT."

6          WE COULD HAVE USED IT IN DISCOVERY.

7    THAT'S WHAT DISCOVERY IS ABOUT.

8          THESE ARE FACTS, NOT JUST THE STATEMENTS

9    OF APPLE WITNESSES THAT MAYBE WE CAN CORNER THAT

10   PARTICULAR WITNESS ON.  THESE ARE JUST FACTS WE

11   SHOULD HAVE KNOWN.

12         SO ALL OF THAT IS KIND OF A RED HERRING,

13   AND I DON'T THINK YOU NEED TO ENGAGE IN THAT

14   ANALYSIS.

15         I'VE GOT ANOTHER EXAMPLE FOR YOU,

16   ALTHOUGH THERE ARE OTHERS.  THE 19TH OF JUNE, WE

17   GOT THE HAHEE DEPOSITION FROM ELAN.

18         THE COURT:  WHEN YOU SAY YOU GOT THEM --

19         MS. HUTNYAN:  THEY WERE PRODUCED.

20         THE COURT:  OKAY.  AND THEY WERE PRODUCED

21   RATHER THAN SIMPLY AUTHORIZED FOR USE IN THIS CASE

22   BECAUSE YOU DIDN'T HAVE COPIES OF THESE TRANSCRIPTS

23   IN YOUR OWN FILES?

24         MS. HUTNYAN:  NO.

25         THE COURT:  YOU'RE NOT --

1              MS. HUTNYAN:  NO.  THIS IS ELAN, NORTHERN

2      DISTRICT OF CALIFORNIA.

3              THE COURT:  OKAY.  THANK YOU FOR

4      CLARIFYING THAT.

5              MS. HUTNYAN:  AND THE OTHER TWO -- OKAY.

6      SO IN MOTOROLA, MY FIRM IS COUNSEL OF RECORD, BUT

7      OBVIOUSLY WE CAN'T USE THEM.  I CAN'T LOOK AT

8      THOSE.  IT WOULD BE A VIOLATION OF THE PROTECTIVE

9      ORDER IN THOSE CASES FOR ME TO DO THAT.

10             SO THIS CONCERN ABOUT, "OH, WELL, YOU HAD

11     SOME OF THESE UNDER YOUR ROOF," WE ALL KNOW THAT

12     THAT IS NOT SOMETHING THAT I CAN USE IN THIS CASE

13     AND/OR EVEN ACCESS TO DETERMINE -- YOU KNOW, THIS

14     WHOLE IDEA OF I'M SUPPOSED TO PREPARE A LIST, THE

15     COURT SAID "ALL DEPOSITION TRANSCRIPTS," BUT YET IT

16     FALLS UPON SAMSUNG TO IDENTIFY FOR APPLE THE CASES

17     IT WAS IN AGAINST THESE OTHER ENTITIES FOR IT TO

18     DETERMINE WHAT HAD A TECHNOLOGICAL NEXUS?

19             NO.  THE COURT ALREADY SAID, "CASES WITH

20     A TECHNOLOGICAL NEXUS.  YOU TOLD ME THE STANDARD, I

21     THINK IT'S APPLICABLE HERE AND I'M GOING TO TAKE

22     APPLE'S STANDARD AND FORCE THEM TO APPLY IT."

23             AND THEY'RE NOW POINTING BACK AT US AND

24     SAYING "YOU DIDN'T GUESS RIGHT.  YOU TOOK THE '701

25     OFF THE LIST.  HA, HA.  WE COULD HAVE NOT

1    COMPLIED."

2                I DON'T DICTATE WHAT THIS COURT SAYS IS

3    SUPPOSED TO BE PRODUCED.  THAT'S NOT AN ADMISSION

4    BY ME THAT I DON'T THINK IT HAS A TECHNOLOGICAL

5    NEXUS.

6                THEY HAVE THE BURDEN OF SHOWING THAT IT

7    DIDN'T HAVE A TECHNOLOGICAL NEXUS, AND NO ONE HAS

8    STOOD UP HERE AND TOLD YOU THAT IT DIDN'T BECAUSE

9    OF COURSE IT DOES.

10                AND THIS DISCUSSION ABOUT, "WELL, WE

11    THOUGHT IT WAS INVENTORS ONLY," OKAY, FIRST OF ALL,

12    IN THE -- THIS IS BEAUTIFUL.

13                MR. JACOBS:  YOUR HONOR, I JUST HAVE TO

14    NOTE, THERE'S SOME BASIC FACTUAL MISREPRESENTATIONS

15    GOING ON HERE, SO I HOPE I'LL HAVE A BRIEF --

16                THE COURT:  I WILL GIVE YOU A VERY BRIEF

17    CHANCE TO RESPOND.

18                GO AHEAD, MS. HUTNYAN.

19                MS. HUTNYAN:  THANK YOU.  PAGES 19 AND

20    20, THIS IS OF APPLE'S OPPOSITION TO SAMSUNG'S

21    MOTION TO COMPEL, THIS WAS FILED ON DECEMBER 15TH.

22                SO THIS IS GOING TO THE QUESTION OF WHAT

23    THEY THOUGHT OUR MOTION MEANT AND, THEREFORE, WHAT

24    THE ORDER MEANT.

25                DID WE LIMIT IT TO INVENTORS?  YOU

                                                    115

1    REMEMBER YOU TALKED ABOUT THAT WITH APPLE.

2            THIS IS LITERALLY FROM THEIR BRIEF.

3    "APPLE HAS NOT REFUSED TO PRODUCE DEPOSITION

4    TRANSCRIPTS THAT ARE RELEVANT TO THIS CASE.  FOR

5    INVENTORS OF THE PATENTS-IN-SUIT, IT HAS ALREADY

6    PRODUCED PRIOR TESTIMONY THAT BEARS A TECHNOLOGICAL

7    NEXUS TO THE PATENTS AT ISSUE IN THIS CASE.  IT IS

8    WILLING TO PRODUCE SIMILAR TRANSCRIPTS FOR OTHER

9    DEPONENTS.  THIS TECHNOLOGICAL NEXUS STANDARD IS

10   BASED ON THE VERY CASES SAMSUNG CITES IN SUPPORT OF

11   ITS MOTION."

12           THIS IS HOW THEY CHARACTERIZE WHAT WE

13   WERE ASKING FOR HERE ON THIS INITIAL MOTION TO

14   COMPEL.

15           "SAMSUNG, HOWEVER, WANTS A MUCH BROADER

16   RANGE OF DEPOSITION TRANSCRIPTS, ALL TRANSCRIPTS OF

17   ALL DEPOSITIONS OF ALL APPLE WITNESSES IN ALL CASES

18   WHERE THE WITNESS WAS TESTIFYING IN HIS OR HER

19   CAPACITY AS AN APPLE EMPLOYEE."

20           THEY KNEW IT WASN'T JUST INVENTORS.  THAT

21   JUST IS FRIVOLOUS THAT THEY TELL YOU HERE TODAY.

22   IT'S NOT TRUE.  IT'S ADMITTED RIGHT HERE IN THEIR

23   BRIEF, AND THIS IS DOCKET 502.

24           FURTHERMORE --

25           THE COURT:  I'M NOT SURE IT'S FRIVOLOUS.

1    IT MAY BE PREPOSTEROUS, BUT --

2              MS. HUTNYAN:  CORRECT, YOUR HONOR.

3              AND EVEN SO, THEY DON'T DENY THAT THEY

4    WITHHELD 34 INVENTOR TRANSCRIPTS.  IF THEY THOUGHT

5    IT WAS ALL ABOUT INVENTORS, HOW CAN THEY WITHHOLD

6    34 INVENTOR TRANSCRIPTS?

7              AND AGAIN, ANY ISSUES ABOUT, "OH, WELL,

8    YOU DEPOSED THIS PERSON BEFORE," MAYBE WE WOULD

9    HAVE DEPOSED THEM AGAIN.  MAYBE WE WOULD HAVE USED

10   THEM IN DISCOVERY, AND THAT JUST IS RIGHT HERE.

11             AND FINALLY, THE ARGUMENT ABOUT NEEDING

12   TO SHOW VERY SPECIFIC PREJUDICE, THAT'S ALL PART OF

13   THE COST/BENEFIT ANALYSIS.  THEY KNEW IT WOULD BE

14   DIFFICULT TO ACTUALLY SHOW, "OKAY, YOU ROBBED US OF

15   THIS TIME DURING OUR DEPOSITION WITH THIS MAN

16   BECAUSE WE DIDN'T HAVE TO SPEND THE 20 MINUTES

17   GOING THROUGH WHATEVER BASIC FACTS WERE SITTING IN

18   SWORN TESTIMONY ALREADY."

19             YOU KNOW, NOBODY NEEDS TO GO THROUGH THAT

20   ANALYSIS.  THE PREJUDICE IS THERE.  WE HAD LIMITED

21   TIME.  WE TRIED TO USE IT AS EFFECTIVELY AS WE

22   COULD.

23             WE DIDN'T GET TO USE IT WITH OUR EXPERTS.

24   RIGHT THERE THERE'S PREJUDICE.  YOU DON'T NEED TO

25   ENGAGE IN A GRANULAR DETERMINATION TRANSCRIPT BY

1    TRANSCRIPT.

2                THE COURT:  ALL RIGHT.  THANK YOU VERY

3    MUCH.

4                VERY BRIEFLY, MR. JACOBS.

5                MR. JACOBS:  WE PRODUCED THREE

6    TRANSCRIPTS ON MAY 31, YOUR HONOR.  THEY WERE

7    PARAVAR, NOVICK, AND STUART.  THOSE WERE ALL FROM

8    THE APPLE VERSUS MOTOROLA CASE IN ILLINOIS.  THEY

9    WERE ALL TAKEN IN THE SPRING OF THIS YEAR.

10               I THINK THE EARLIEST ONE, THE TRANSCRIPT

11   DID NOT COME IN UNTIL -- I'VE GOT AN E-MAIL CHAIN

12   HERE -- THE TRANSCRIPT DID NOT COME IN UNTIL AFTER

13   WE MADE OUR BULK PRODUCTION IN APRIL OF TRANSCRIPTS

14   TO COMPLY WITH THE APRIL ORDER.

15               THE COURT:  IS IT CORRECT YOU WERE

16   PRODUCING TRANSCRIPTS THROUGH JUNE?

17               MR. JACOBS:  I DON'T KNOW ABOUT JUNE.

18   THIS ONE JUST CAME UP.

19               SEE, AGAIN, WE HAVE TO GET SPECIFIC.

20   DEPOSITIONS ARE BEING TAKEN AS WE SPEAK.  COURT

21   FILES FROM OTHER CASES ARE BEING CREATED AS WE

22   SPEAK, AND WE'RE PRODUCING FROM COURT FILES OF

23   OTHER CASES, AND WE'RE PRODUCING TRANSCRIPTS FROM

24   OTHER CASES THAT MAY BE BEING TAKEN NOW OR WHERE

25   WE'RE GETTING PERMISSION FROM THE LITIGANTS.

1      YOU CAN SEE FROM THE OTHER MOTION ALL OF
2  THE EFFORTS THAT ARE UNDERWAY TO GET THIRD PARTY
3  PERMISSION.
4      SO THAT'S WHY I THINK IT'S REALLY
5  IMPORTANT TO BE SPECIFIC.  THEY FILED A MOTION, WE
6  FILED AN OPPOSITION WITH A VERY DETAILED SHOWING OF
7  EXACTLY WHAT HAPPENED WHEN.
8      AND TO NOW POP UP WITH MORE MATERIAL AND
9  NOT LET US GET SPECIFIC WHEN WE'VE SHOWN, WHEN WE
10  GET SPECIFIC, THAT THEY'RE WRONG IS UNFAIR.
11      THE COURT:  ALL RIGHT.  I DO NEED TO TURN
12  TO THE OTHER MOTIONS.
13      LET'S TURN NEXT TO, IF I'VE GOT THIS
14  RIGHT, APPLE'S MOTION TO STRIKE SAMSUNG'S EXPERT
15  REPORT; AND THEN WE'LL, IMMEDIATELY FOLLOWING THAT,
16  TAKE UP SAMSUNG'S MOTION TO STRIKE AS WELL.
17      YOU ALL ARE LOOKING EQUALLY PUZZLED.  AM
18  I NOT BEING CLEAR?
19      MS. HUTNYAN:  I THOUGHT YOU WERE DOING
20  THE MOTION TO ENFORCE -- DID I MISUNDERSTAND? -- ON
21  THE RELATED PROCEEDINGS AND DEPOSITIONS.
22      THE COURT:  YOU ARE CORRECT.  I
23  APOLOGIZE.  I'M MISREADING MY OWN NOTES.
24      SO LET'S TAKE UP THE MOTION TO ENFORCE
25  AND MOTION FOR CLARIFICATION.

1          I'LL HEAR FROM SAMSUNG FIRST AND THEN

2     GIVE APPLE AN OPPORTUNITY AS WELL.

3          AND SO THAT THERE'S NO CONFUSION HERE, I

4     WILL GIVE US AN OPPORTUNITY FOR SURREBUTTAL SINCE

5     BOTH PARTIES HAVE MOTIONS PENDING BEFORE ME.

6          MS. HUTNYAN:  I'M GOING TO TRY TO DO THIS

7     AS QUICKLY AS I CAN TO PRESERVE TIME FOR MY

8     COLLEAGUES.

9          ON THE MOTION TO ENFORCE, I'LL START WITH

10    THE DEPOSITIONS.  THE ORDER THAT THE COURT ISSUED,

11    THE APRIL 12TH ORDER, SAID "IN ORDER TO MITIGATE

12    THE PREJUDICE TO SAMSUNG CAUSED BY APPLE'S FAILURE

13    TO PRODUCE ALL RESPONSIVE DEPOSITION TRANSCRIPTS IN

14    A TIMELY MANNER, SAMSUNG MAY TAKE UP TO FIVE

15    ADDITIONAL DEPOSITIONS FOR A TOTAL TIME NOT TO

16    EXCEED TEN HOURS."  THAT'S FROM PAGE 10.

17         SO FINDING OF PREJUDICE, YOU GET

18    TRANSCRIPTS -- OR YOU GET DEPOSITIONS.

19         APPLE SAYS -- IN ITS OPPOSITION BRIEF ON

20    THE MOTION TO ENFORCE, PAGE 3, IT DESCRIBES ITS

21    MOTION FOR CLARIFICATION.

22         MY PLAN HERE IS TO, IN THE COURSE OF THE

23    MOTION TO ENFORCE, BASICALLY SHOW WHY YOU DON'T

24    NEED TO WORRY ABOUT THE MOTION FOR CLARIFICATION.

25    WE'LL RESOLVE IT.

                                                      120

1          SO THE, THE PLANNED CLARIFICATION THAT

2     APPLE REFERS TO IN ITS OPPOSITION -- WHOOPS, WRONG

3     BINDER.  ONE MOMENT.

4          IT'S PAGE 3.  THEY SAY THEY SOUGHT

5     CLARIFICATION -- ONE MOMENT.

6          THE COURT:  SURE.

7          (PAUSE IN PROCEEDINGS.)

8          MS. HUTNYAN:  WHENEVER I GET IN A RUSH,

9     THIS HAPPENS.

10         YES, PAGE 3, LINES 22 THROUGH 24, BUT

11    STARTING ON 19.  "AFTER COMPLETING ITS

12    PRODUCTION" -- OKAY.  "APPLE SOUGHT TO CLARIFY

13    THAT," AND THEN IF YOU SKIP OVER THE PART TALKING

14    ABOUT THE CORE DOCUMENTS, THEY "SOUGHT TO CLARIFY

15    THAT THE FIVE DEPOSITIONS TO WHICH SAMSUNG IS

16    ENTITLED MUST BE CONNECTED TO APPLE'S PRODUCTION OF

17    TRANSCRIPTS PURSUANT TO THE APRIL 12TH ORDER AND

18    THE ALLEGED PREJUDICE TO SAMSUNG."

19         SO WE THINK IT'S WIDE OPEN.  YOU FOUND

20    PREJUDICE.  WE GET TO PICK SOME DEPONENTS TO TRY TO

21    MITIGATE THE PREJUDICE.

22         THEY SAY THEY HAVE TO BE CONNECTED.  SO

23    IF WE TAKE THAT AND WE CLARIFY ALONG THOSE LINES,

24    NOT GOING INTO THE SEVEN BRIEFS THAT SAY ALL KINDS

25    OF DIFFERENT FORMULATIONS, IT'S REASONABLY

1    NECESSARY OR ALL THESE DIFFERENT THINGS, IF THAT'S

2    WHAT THEY THINK THEY'RE CLARIFYING, WE CAN LIVE

3    WITH THAT BECAUSE ALL OF THEM WE SHOWED WERE

4    CONNECTED TO THE DEPOSITION TRANSCRIPTS, AND THAT'S

5    SET FORTH IN OUR BRIEF.  I WON'T BELABOR THE POINT

6    HERE.  WE CAN TALK ABOUT IT IF THEY WANT TO SAY

7    THAT THEY WEREN'T.

8         THE COURT:  WOULD YOU AGREE THAT, WHETHER

9    I WAS CLEAR OR NOT, IT WOULD BE REASONABLE TO AT

10   LEAST NOW APPLY SOME STANDARD REQUIRING SOME

11   RELATIONSHIP BETWEEN THE ADDITIONAL DEPOSITION

12   TESTIMONY AND THE TRANSCRIPTS THAT YOU WERE

13   GETTING?  IS THAT A REASONABLE POSITION TO TAKE?

14        MS. HUTNYAN:  I THOUGHT IT WAS REASONABLE

15   IN THE COURT'S FORMULATION ORIGINALLY.  "I'M

16   FINDING PREJUDICE.  I'D LIKE TO MITIGATE THAT."

17        OBVIOUSLY THIS IS A -- I DON'T THINK YOU

18   PROBABLY REALIZED THAT THEY HAD WITHHELD SO MANY,

19   BUT THE EFFORT HERE WAS TO MITIGATE THE PREJUDICE.

20        THAT'S WHY WE HAD TO TAKE TIME TO LOOK AT

21   THOSE TRANSCRIPTS AND FIGURE OUT WHO ARE THE BEST

22   DEPONENTS THAT WE CAN ASK FOR TO TRY TO MITIGATE

23   PREJUDICE.

24        WE UNDERSTAND THE COURT'S INTENT, AND SO

25   THAT'S WHY WE DIDN'T LIMIT THEM TO DEPOSITION

1    TRANSCRIPTS.

2              ANDREW BRIGHT, HE'S ONE OF THE GUYS WHOSE

3    DEPOSITION WAS BELATEDLY PRODUCED.  HOW MUCH MORE

4    CLOSE TO THE TRANSCRIPT CAN YOU GET?

5              THE COURT:  DID THEY DENY YOU THE

6    OPPORTUNITY TO TAKE AT LEAST TWO HOURS OF

7    DEPOSITION TIME WITH MR. BRIGHT?

8              MS. HUTNYAN:  YES.  WE'VE HAD ZERO

9    DEPOSITION TIME FROM ANY WITNESS.

10             THE COURT:  SO YOU MADE A REQUEST TO THEM

11   THAT, "HEY, I GOT THE TRANSCRIPT THAT WAS LATE.

12   IT'S FROM A MR. BRIGHT.  I'D LIKE TWO MORE HOURS OF

13   DEPOSITION FROM HIM" AND THEY SAID NO?

14             MS. HUTNYAN:  YES.  AND THE SAME WITH THE

15   OTHERS.

16             AND WITH RESPECT TO THE OTHERS, IT WAS

17   ALSO, "YOU DEPOSED THIS PERSON TOO LITTLE, YOU

18   DEPOSED THIS PERSON NOT ENOUGH, YOU DECLINED TO

19   DEPOSE THIS PERSON."

20             IT WAS ALL MANNER OF EXCUSES WHY THESE

21   PEOPLE COULDN'T JUST BE DEPOSED FOR TWO HOURS.

22             NOW, THEY WILL SAY, "OH, YOU CHOSE THEM

23   LATE.  OKAY?  YOU TOLD US ON THE 9TH THAT YOU

24   WANTED THESE FIVE PEOPLE."

25             THEY STATE IN THEIR BRIEF THAT THEY COULD

1    NOT PRODUCE THOSE DEPONENTS.

2              THERE'S NO EVIDENCE THAT THEY COULD NOT.

3    I'VE CALLED THEM OUT ON THIS FOR WEEKS.  THERE'S NO

4    EVIDENCE TO SUGGEST THEY EVER TRIED TO SCHEDULE

5    THOSE DEPOSITIONS.

6              AND WE FORESAW THAT.  WE SAID, "YOU TOOK

7    A LONG TIME TO NARROW YOUR CASE.  THERE ARE ALL

8    THESE TRANSCRIPTS THAT YOU'VE NOW PRODUCED THAT

9    DEAL WITH PATENTS THAT ARE PROBABLY GOING AWAY."

10             SO IF THE COURT'S INTENT IS TO MITIGATE

11   THE PREJUDICE THAT WE SUFFERED, OBVIOUSLY WE

12   SHOULDN'T BE TAKING DEPONENTS THAT AREN'T GOING TO

13   HAVE ANY RELEVANCE TO THIS CASE, SO YOU NEED TO

14   NARROW, WE SENT THEM LETTERS SAYING "PLEASE

15   NARROW."  IT'S A PLEA.

16             AND WE LOOKED THROUGH THE TRANSCRIPTS AND

17   WE TRIED TO MAKE SENSE OF ALL THIS INFORMATION AND

18   COME AND ANALYZE THE STUFF AND COME OUT WITH OUR

19   FIVE PEOPLE.

20             WE TOLD THEM THE DAY BEFORE, IT WAS 12:20

21   ON MARCH 9TH, THE VERY BEGINNING OF THE DAY ON

22   MARCH 9TH, AND WE SAID, "WE WILL EXPECT THAT YOU

23   WILL COMPLETE THEM BY THE 10TH AS THE COURT HAS

24   REQUIRED YOU.  BUT IF THAT'S GOING TO BE A PROBLEM,

25   WE'RE WILLING TO STIPULATE TO A TEN DAY EXTENSION."

124

1          WE'RE LOOKING AT A COURT DEADLINE, BUT WE

2     RECOGNIZED THAT MIGHT BE TOUGH FOR A WITNESS.

3          THEY NEVER CAME BACK AND SAID "WE CALLED

4     MR. BRIGHT AND HE WAS UNAVAILABLE.  HE HAS A

5     DENTIST APPOINTMENT HE JUST CAN'T MOVE."  THERE WAS

6     NO SUCH DISCUSSION.

7          LITERALLY THE ANSWER THAT CAME BACK WAS

8     AN E-MAIL SAYING "YOU NEED TO ESTABLISH YOUR

9     ENTITLEMENT TO THESE DEPOSITIONS.  YOU NEED, WITH

10    CITATIONS TO THE TRANSCRIPT YOU RECEIVED, YOU NEED

11    TO ESTABLISH WHY YOU DESERVE THEM."

12         THE COURT SAID WE DIDN'T HAVE TO DO THAT.

13    THE COURT SAID "YOU GET FIVE PEOPLE."  WE SHOULD

14    HAVE GOTTEN THE FIVE PEOPLE.

15         THE COURT:  CAN YOU JUST FILL IN THE

16    TIMELINE FOR ME AGAIN?  I APPRECIATE IT.  I SHOULD

17    PROBABLY HAVE THIS COLD, BUT I DON'T.

18         THE ORDER THAT I ISSUED REQUIRED THOSE

19    DEPOSITIONS TO BE COMPLETED NO LATER THAN MAY 10TH?

20    AM I RIGHT ABOUT THAT?

21         MS. HUTNYAN:  CORRECT.

22         THE COURT:  OKAY.  AND SO YOU MADE AN

23    INITIAL REQUEST OF HOW MANY DEPONENTS?  HOW MANY

24    PEOPLE DID YOU WANT DEPOSED?

25         MS. HUTNYAN:  FIVE.

```
1              THE COURT:  OKAY.  SO YOU WANTED TO TAKE
2     FIVE PEOPLE FOR TWO HOURS EACH?
3              MS. HUTNYAN:  YES.
4              THE COURT:  YOU MADE THAT REQUEST WELL IN
5     ADVANCE OF THE 10TH, I TAKE IT.
6              MS. HUTNYAN:  WELL, IT WAS ON THE 9TH.
7     IT WAS EARLY, EARLY ON THE 9TH.
8              THE COURT:  ALL RIGHT.  SO IF YOU ASKED
9     FOR THE DEPOSITIONS 24 HOURS BEFORE THE DEADLINE,
10    IT SHOULDN'T SURPRISE YOU THAT THOSE PEOPLE AREN'T
11    AVAILABLE.
12             MS. HUTNYAN:  RIGHT.  EXCEPT THAT WASN'T
13    THE ANSWER, AND I'VE SAID THAT.
14             THE COURT:  NEVERTHELESS, I TAKE IT THAT
15    YOU ACKNOWLEDGED THAT BECAUSE YOU GAVE THEM AN
16    EXTRA WEEK OR TWO; RIGHT?
17             MS. HUTNYAN:  WE WERE WILLING TO DO THAT,
18    YES.  OF COURSE, THEY HAD TO ABIDE BY THAT DATE
19    WHICH WAS SET TO MAKE SURE THEY ACTUALLY PRODUCED
20    THOSE PEOPLE, BUT WE SAID, "WE'RE WILLING TO WORK
21    WITH YOU TO GET A BREAK FOR THOSE PEOPLE IF
22    SCHEDULING IS GOING TO BE DIFFICULT."
23             THE COURT:  AND THE RESPONSE TO THAT WAS?
24             MS. HUTNYAN:  AND THE RESPONSE WAS,
25    "WE'RE NOT STIPULATING.  WE MADE CLEAR, BACK BEFORE
```

1    WE EVEN PRODUCED THESE TRANSCRIPTS, WE TOLD YOU WE

2    WERE GOING TO HOLD YOU TO THAT DATE, AND WE

3    PRODUCED THESE IN ADVANCE.  WE FINISHED OUR

4    PRODUCTION BACK ON THE 21ST."

5               NONE OF IT IS TRUE.  THEY DIDN'T EVEN

6    FINISH UNTIL JUNE.

7               THE COURT:  AND YOU EXPLAIN YOUR DELAY IN

8    IDENTIFYING THESE FIVE PEOPLE UP UNTIL MAY 9TH AS

9    REFLECTING THE FACT THAT THE PATENTS THAT ARE AT

10   ISSUE IN THIS CASE, THE SET OF ISSUES AND THE WHOLE

11   DISPUTE IN THIS CASE, THAT'S A MOVING TARGET?

12              YOU ALL ARE, AT THE SUGGESTION OF

13   JUDGE KOH, WHITTLING DOWN YOUR CASE, AND SO YOU

14   WANTED TO UNDERSTAND BETTER WHAT PATENTS WERE GOING

15   TO BE AT ISSUE BEFORE YOU MADE YOUR SELECTION?

16   HAVE I GOT THAT RIGHT.

17              MS. HUTNYAN:  THAT'S HALF OF IT, YES.

18              THE COURT:  TELL ME THE OTHER HALF.

19              MS. HUTNYAN:  THAT'S EXACTLY RIGHT.

20              ALSO, WE WERE LOOKING THROUGH THE

21   DEPOSITION TRANSCRIPTS THAT HAD COME IN TO SEE WHAT

22   NEW EVIDENCE WE WANTED TO QUESTION THE PEOPLE ON.

23              THE COURT'S INTENT WAS TO MITIGATE THE

24   PREJUDICE FROM THE NON-PRODUCTION OF THE

25   TRANSCRIPTS.

1            APPLE WAS SAYING "YOU NEED TO DRAW A

2     CONNECTION BETWEEN THE TRANSCRIPTS AND THESE

3     WITNESSES."

4            SO THEY CAN'T HAVE IT BOTH WAYS.  EITHER

5     WE'RE SUPPOSED TO DRAW THE CONNECTION AND WE GET TO

6     LOOK AT THE TRANSCRIPTS, OR THERE IS NO CONNECTION

7     AND WE SHOULD JUST BE ABLE TO PICK WHOEVER WE WANT.

8            THIS WAS THEIR POSITION.  THEY INSISTED

9     THAT WE JUMP THROUGH A BUNCH OF HOOPS TO DO IT, WE

10    AGREED, OKAY, IT SEEM REASONABLE, AND WE DO WANT TO

11    TRY AND MITIGATE SOME OF THE PREJUDICE THAT COMES

12    DIRECTLY FROM THE NON-PRODUCTION OF THESE

13    TRANSCRIPTS, SO LET US LOOK AT THEM.

14            THE COURT:  SO WHAT DO YOU WANT ME TO DO

15    NOW?

16            MS. HUTNYAN:  YES, THAT'S EXACTLY WHAT I

17    WAS GOING TO TOUCH UPON.

18            SIMPLE WAY TO RESOLVE THIS ISSUE, ORDER

19    THE DEPOSITIONS TO GO FORWARD BETWEEN JUNE 23RD AND

20    JUNE 27TH, AND IF THEY ARE NOT PRODUCED BY

21    JUNE 27TH, APPLE SHOULD PAY WHATEVER YOU THINK THEY

22    SHOULD PAY FOR EVERY DAY THEY DON'T PRODUCE THOSE

23    PEOPLE PAST THAT DATE.

24            WE WILL MAKE IT HAPPEN.  THESE ARE TWO

25    HOUR DEPOSITIONS.  THE DOCUMENTS PERTINENT TO THESE

1    WITNESSES SHOULD HAVE BEEN PRODUCED ALREADY.

2              THESE ARE NOT 30(B)(6)S.  THEY DON'T NEED

3    TO BE EDUCATED ON A PARTICULAR SET OF FACTS.

4              THE COURT:  IF THESE PEOPLE ARE LOCATED

5    HERE IN THE UNITED STATES, YOU'RE WILLING TO TRAVEL

6    TO THEIR LOCATION?

7              MS. HUTNYAN:  WE WILL DO WHATEVER WE HAVE

8    TO DO TO GET IT DONE AND THEN WE CAN DESIGNATE

9    THEIR DEPOSITIONS BY THE 29TH AND WE'RE ON

10   SCHEDULE.

11             THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

12             MS. HUTNYAN:  YES.  SO THAT WAS THE

13   DEPOSITION PART OF THE MOTION TO ENFORCE.

14             AND THEN WE HAVE THE OTHER HALF OF THE

15   MOTION TO ENFORCE REGARDING THE RELATED PROCEEDING

16   TERMS.

17             SO AS THE COURT WILL RECALL, THESE ARE

18   THE OTHER, THE COURT DOCUMENTS THAT APPLE WAS

19   REQUIRED TO PRODUCE FROM THE CASES WITH THE

20   TECHNOLOGICAL NEXUS.

21             AND SO THE MOTION TO ENFORCE AND THE

22   MOTION FOR CLARIFICATION, WHICH OF COURSE IS BOUND

23   UP IN THIS, IT ALL CENTERS AROUND A NUMBER OF NEW

24   ISSUES THAT WERE RAISED AFTER WE ALREADY BRIEFED

25   THE MOTION TO COMPEL AND THE MOTION TO ENFORCE.

1           APPLE THEN CAME FORWARD AND SAID, "OH,

2     NO, THERE ARE 15 OTHER THIRD PARTIES OUT THERE,

3     WE'LL BE VIOLATED PROTECTIVE ORDERS, AND SO THIS

4     ORDER THAT WE NEED TO PRODUCE ALL THESE MATERIALS

5     UNREDACTED, WE CAN'T COMPLY."  THAT'S THE ARGUMENT.

6           TIME HAS ELAPSED.  THE THING -- YOU KNOW,

7     IN THEIR MOTION FOR CLARIFICATION THAT THEY FILED

8     BACK ON THE 26TH OF APRIL, THEY SAID "WE ARE UNABLE

9     TO GET THESE CONSENTS, SO WE WOULD LIKE THE COURT

10    TO PLEASE EXCUSE US FROM THE REQUIREMENT TO PRODUCE

11    ANY THIRD PARTY CBI."

12          IN LARGE PART THAT'S GONE AWAY BECAUSE

13    THEY WERE ABLE TO GET THE CONSENTS THAT THEY NEEDED

14    FROM SOME OF THE ENTITIES.  FOR EXAMPLE, FOR

15    MOTOROLA, THIS IS ONE OF THE FIVE WE HAD TRIED,

16    MOTOROLA SAID THEY NEEDED MORE INFORMATION, APPLE

17    WOULDN'T PROVIDE IT.

18          WITHIN A FEW DAYS, APPLE PROVIDED IT,

19    MOTOROLA AGREED, TAKEN CARE OF.

20          WITH RESPECT TO THE FOLLOWING SIX

21    ENTITIES, ELAN, CRONIN/TALIGENT, T-A-L-I-G-E-N-T,

22    AND CRONIN IS C-R-O-N-I-N, SYNAPTICS,

23    S-Y-N-A-P-T-I-C-S, MICROSOFT, NEW YORK UNIVERSITY,

24    AND TEXAS INSTRUMENTS, THIS COURT CAN JUST ENFORCE

25    ITS ORDER FLAT OUT.

                                                    130

1          APPLE AGREES.  IN FACT, THEY ARGUE THAT

2     THEY WENT TO THE ENDS OF THE EARTH TO TRY AND GET

3     CONSENT FROM THESE ENTITIES.

4          AT THE VERY LATEST, THEIR LETTERS SHOW

5     THAT THEY GAVE NOTICE TO THESE SIX ENTITIES AS

6     EARLY AS APRIL 30TH, IT MAY HAVE BEEN EARLIER

7     ACTUALLY, BUT WE KNOW THAT IT HAPPENED BECAUSE

8     THAT'S WHEN WE RECEIVED A COPY OF THE LETTERS FOR

9     THE FIRST TIME.

10          THERE HAVE BEEN RESPONSES.  THERE'S BEEN

11     RESPONSES FROM MANY OF THESE, AND WITH ELAN --

12     THEY'VE APPARENTLY HAD AN EXTENDED DISCUSSION WITH

13     ELAN WHEREBY THEY REDACTED SOME OF ELAN'S MATERIALS

14     AND THEY WENT BACK TO ELAN TO SAY, "LOOK AT THE

15     REDACTIONS, ARE THEY OKAY?" BEFORE THEY GAVE THEM

16     TO US.

17          THEY'VE BEEN TALKING TO THESE PARTIES FOR

18     A LONG TIME AND THESE PARTIES HAVE HAD AN

19     OPPORTUNITY TO INTERVENE IF THEY REALLY CARED ABOUT

20     THE MATERIALS.

21          BUT WHAT YOU'RE DEALING WITH HERE, OF

22     COURSE, IS ONE PARTY WHO'S UNMOTIVATED TO PRODUCE

23     THE MATERIALS, AND ANOTHER PARTY, A THIRD PARTY

24     THAT ISN'T PARTICULARLY MOTIVATED TO RESOLVE THE

25     ISSUE, SO IT'S JUST NOT HAPPENING.  IF THEY WANTED

                                        131

1     TO INTERVENE, THEY COULD HAVE.

2              AND SO I RESPECTFULLY SUBMIT THAT THE

3     COURT SHOULD JUST ENFORCE ITS ORDER WITH RESPECT TO

4     THOSE ENTITIES.

5              THE COURT:  AND UNDER THAT REGIME, THOSE

6     ENTITIES' DOCUMENTS WOULD BE PRODUCED UNREDACTED,

7     BUT SUBJECT TO THE HIGHEST LEVEL OF CONFIDENTIALITY

8     IN THIS CASE'S PROTECTIVE ORDER?

9              MS. HUTNYAN:  EXACTLY.

10             THE COURT:  OKAY.

11             MS. HUTNYAN:  AND TO GIVE YOU A LITTLE

12    MORE REASSURANCE -- WELL, FIRST OF ALL, IN THE

13    EXHIBIT 10 TO THE HUTNYAN DECLARATION IN SUPPORT OF

14    THE MOTION TO ENFORCE, I ATTACH THOSE NOTICE

15    LETTERS THAT I GOT FROM APPLE, SO THAT SHOWS WHEN

16    THE NOTICE OCCURRED AND WHO IT WAS SENT TO IF

17    THERE'S ANY QUESTION ABOUT THAT.

18             AND ALSO, IT TURNS OUT THAT MUCH OF THE

19    THIRD PARTY CBI IN THOSE MATERIALS IS ACTUALLY NOT

20    THIRD PARTY AND NOT CBI.

21             YET, TWO DAYS AGO WE RECEIVED A

22    PRODUCTION FROM THE ELAN LITIGATION WHICH HAD BEEN

23    WITHHELD BECAUSE OF THIS THIRD PARTY CBI, AND WE

24    DISCOVERED THAT SOME OF THE THINGS THAT HAD BEEN

25    WITHHELD WERE APPLE DOCUMENTS, APPLE PUBLIC

1    DOCUMENTS.

2              LIKE THERE WAS AN AD IN THERE AND IT WAS

3    FOR THE IPOD TOUCH.  THERE WERE IPHONE 3G DOCUMENTS

4    AND A DOCUMENT ON MACBOOK PRO THAT ARE USED BY

5    THEIR SALESPEOPLE TO LEARN ABOUT PRODUCTS.

6              THIS IS NOT THIRD PARTY CBI AT ALL.  AND

7    SO --

8              THE COURT:  SO SHORT OF MY DOING A

9    DOCUMENT REVIEW AND REEVALUATING THOSE DESIGNATIONS

10   PAGE BY PAGE, WHAT WOULD YOU SUGGEST AS AN

11   APPROPRIATE COURSE TO ADDRESS THAT CONCERN?

12             MS. HUTNYAN:  WELL, I THINK THE COURT

13   SHOULD JUST STICK BY ITS APRIL 12TH ORDER AND

14   ENFORCE IT WITH RESPECT TO THOSE ENTITIES.

15             I HAVE ANOTHER CATEGORY OF ENTITIES I'M

16   GOING TO SUGGEST A DIFFERENT RESOLUTION FOR, BUT

17   THESE, THEY'RE ON NOTICE.  THEY JUST DON'T CARE I

18   THINK IS PROBABLY THE ANSWER.

19             APPLE, BY ITS OWN ADMISSION, HAS TRIED

20   REALLY HARD TO GET THOSE CONSENTS FOR -- WHAT IS

21   IT? -- ALMOST TWO MONTHS.  SO IT'S NOT HAPPENING.

22   THEY'VE HAD THEIR OPPORTUNITY.

23             THE COURT:  AND WOULDN'T YOU PERHAPS WANT

24   TO POINT TO THIS COURT'S PRIOR PRACTICE WITH

25   RESPECT TO INTEL AS AN EXAMPLE OF HOW THAT WOULD

```
1     EFFECT A THIRD PARTY'S CONCERNS?

2              MS. HUTNYAN:  RIGHT.  THAT'S WHAT YOU

3     ACTUALLY POINTED TO IN YOUR APRIL 12TH ORDER.

4              AND I HAVE A LITTLE BIT OF CONCERN ABOUT

5     THE APPLICATION OF THAT TO SO MANY THIRD PARTIES

6     WHERE THERE MIGHT BE VARYING INTERESTS THERE AND

7     THEY MIGHT NOT HAVE GOTTEN NOTICE YET.  APPLE

8     RAISED THOSE ISSUES.

9              BUT WITH RESPECT TO THESE, THERE'S NO

10    QUESTION THAT THEY HAVE NOTICE NOW.  I THINK WE CAN

11    PUT THAT TO REST.  YOU WERE RIGHT.  WE SHOULD JUST

12    ENFORCE THOSE.

13             WITH RESPECT TO A HANDFUL OF OTHER

14    ENTITIES, WE REALLY WANT TO ENGAGE IN AN ACTUAL

15    MEANINGFUL DISCUSSION ABOUT WHAT WE'RE DEALING WITH

16    WITH RESPECT TO THOSE ENTITIES.

17             SOME OF THEM -- YOU KNOW, ONE OF THEM

18    APPLE SAID "WE DIDN'T GIVE THEM NOTICE BECAUSE WE

19    COULDN'T FIND THEM."  A COUPLE OF OTHERS WE

20    REPRESENT.

21             BUT I HAVE REPEATEDLY ASKED FOR THE

22    DETAILS OF THIS.  I'M GREETED WITH DECLARATIONS,

23    FOR EXAMPLE, THE DECLARATION OF MIA MAZZA THAT SAYS

24    "COUNSEL FOR APPLE HAS REQUESTED FROM COUNSEL FOR

25    ELAN," YOU KNOW, IT'S THIS OPAQUE, NON-TRANSPARENT
```

1      MUDDLE OF INFORMATION.

2               FOR ALL I KNOW, THEY ASKED ELAN SOMETHING

3      LIKE, YOU KNOW, "PLEASE LET US PRODUCE ALL OF YOUR

4      MOST IMPORTANT TRADE SECRETS THAT WERE IN THIS

5      CASE" WITH NO INDICATION OF HOW MANY DOCUMENTS

6      THEY'RE TALKING ABOUT.  OF COURSE ELAN IS NOT GOING

7      TO BE INTERESTED IN RESOLVING THAT.

8               IF I CAN LEARN THE FACTS OF THAT -- I

9      WOULD LIKE THE CONTACT INFORMATION FOR WHO THEY'VE

10     BEEN TALKING WITH, I'D LIKE TO KNOW WHICH APPLE

11     COUNSEL THEY'VE BEEN -- ALL THE DECLARATIONS TALK

12     ABOUT APPLE COUNSEL IN THE OTHER CASE, APPLE

13     COUNSEL IN THIS CASE.  WHO ARE THESE PEOPLE?

14              WE RESOLVED IT EVEN WHEN WE HAD CONFLICT

15     ISSUES TO DEAL WITH.  WE RESOLVED IT IN A COUPLE

16     MONTHS.

17              THEY SAY THEY'RE STUCK.  I'D LIKE TO

18     UNSTICK THEM BECAUSE I THINK -- YOU KNOW, WE'VE GOT

19     A MOTION TO TRANSFER.  WE GOT THE REDACTIONS

20     FINALLY, AFTER I'VE BEEN ASKING FOR THEM FOR WEEKS.

21     THE REDACTIONS WERE ON A MOTION TO TRANSFER.

22     THEY'RE FIGHTING OVER A MOTION TO TRANSFER.  WHO

23     CARES ABOUT A MOTION TO TRANSFER?

24              THE COURT:  I DON'T.

25              MS. HUTNYAN:  RIGHT?

                                                    135

1          THE COURT:  SO LET'S TALK ABOUT WHAT I DO

2     CARE ABOUT --

3          MS. HUTNYAN:  LET'S CUT TO THE CHASE.

4          THE COURT:  -- AT SUCH A LATE DATE.

5          OKAY.  WE'RE WELL PAST SOME REGIME WHERE

6     YOU ALL WILL REENGAGE OR ENGAGE FOR THE FIRST TIME

7     WITH THESE THIRD PARTIES.  WE DON'T HAVE TIME FOR

8     THAT.

9          SO WHAT SHOULD WE DO ABOUT THIS.

10         MS. HUTNYAN:  I'M READY.  BY JUNE 21ST AT

11    6:00 P.M., I THINK YOU SHOULD ORDER APPLE TO GIVE

12    ME ALL CORRESPONDENCE WITH REMAINING THIRD PARTIES;

13    GIVE ME THEIR NAMES AND CONTACT INFORMATION,

14    INCLUDING FOR APPLE'S OTHER COUNSEL THAT IS DEALING

15    WITH THESE ISSUES; GIVE ME A LIST OF THE REMAINING

16    DOCUMENTS, SUPPOSEDLY IT'S UNDER 150 DOCUMENTS,

17    THIS IS NOT DIFFICULT; AND GIVE ME A GENERAL

18    DESCRIPTION OF THE NATURE OF THE REACTIONS.

19         THEY SAY THEY'VE NOW PRODUCED TO ME THE

20    REDACTED VERSIONS.

21         THE COURT:  I THINK I CAN GUESS WHAT

22    THEIR REACTION WAS, RIGHT?  THEY'RE SAYING, "HECK

23    NO.  WE DON'T WANT TO SEE OUR INFORMATION PRODUCED

24    TO A PARTY IN ANOTHER CASE WE'RE NOT EVEN A PART

25    OF."

1          WHAT ARE YOU GOING TO DO ON JUNE 22ND

2     WITH ALL THAT INFORMATION?  I'M CURIOUS.  LET'S

3     ASSUME I ORDER EXACTLY WHAT YOU'RE ASKING FOR.

4     WHAT ARE YOU GOING TO DO WITH THAT?

5          MS. HUTNYAN:  I'M GOING TO FIRST LOOK AT

6     THE REDACTED DOCUMENTS AND SEE, IS THIS ON THE KIND

7     OF -- IS THIS WITHIN A DOCUMENT THAT SEEMS TO HAVE

8     PERTINENCE TO MY CASE, OR IS IT NOT?

9          THE COURT:  AND YOU DON'T YET HAVE ACCESS

10    TO REDACTED VERSIONS OF THOSE DOCUMENTS?

11         MS. HUTNYAN:  WE JUST GOT A WHOLE BUNCH

12    THE NIGHT BEFORE LAST.  I WAS TRAVELING.  WE HAD

13    SOME OF THE INFORMATION, THE ADS AND THINGS THAT I

14    DESCRIBED FOR YOU.  WE HAVE BEEN THROUGH ALL OF

15    THOSE.

16         I DON'T KNOW WHETHER THAT IS THE WHOLE,

17    THE WHOLE PRODUCTION, IF THAT'S NOW EVERYTHING.

18         BUT IF IT ISN'T, I WOULD LIKE ALL OF

19    THOSE REDACTED MATERIALS RIGHT AWAY.

20         AS SOON AS WE SAW THE ONES THAT THEY'VE

21    BEEN WITHHOLDING ON THIS MOTION TO TRANSFER, WE

22    SENT THEM AN E-MAIL AND SAID "WE'VE NOW REVIEWED

23    THOSE AND WE DON'T NEED TO WORRY ABOUT THAT.  WE

24    EXCLUDE THAT."

25         I MEAN, THIS IS A COMMON SENSE KIND OF

1    APPROACH.  SO IF I GET THIS STUFF BY FRIDAY, I CAN

2    PROBABLY FIGURE OUT FAIRLY QUICKLY -- I MEAN,

3    ASSUMING THAT THEY'RE NOT REALLY MORE THAN THEY SAY

4    THEY ARE, AND I HAVE NO REASON TO SAY THAT THEY

5    ARE -- BUT ASSUMING THAT'S THE UNIVERSE OF

6    MATERIALS, I CAN GO THROUGH THIS AND I CAN MAKE A

7    JUDGMENT CALL AS FAR AS WHETHER I EVEN CARE ABOUT

8    HALF THESE THINGS, AND THEN HALF THE THIRD PARTIES

9    GO AWAY.

10            AND THEN WITH RESPECT TO THE REST, I CAN

11   SAY, "THIS IS THREE DOCUMENTS.  DO I EVEN WANT TO

12   PURSUE THEM?"

13            BUT I'VE BEEN EXCLUDED FROM THAT

14   DISCUSSION AND I THINK IT'S A SIMPLE THING FOR THE

15   COURT TO ORDER.  WE ASK THAT YOU ORDER US TO MEET

16   AND CONFER.

17            THEY DON'T EVEN HAVE TO TALK TO ME.  THEY

18   CAN JUST PROVIDE ME THE INFORMATION AND THEN AT

19   LEAST I CAN MAKE AN EDUCATED DECISION ABOUT WHETHER

20   WE SHOULD STILL BE LITIGATING THIS ISSUE.

21            BUT TO WITHHOLD THAT IS UNCONSCIONABLE.

22   WHY ARE THEY WITHHOLDING REDACTED MATERIALS FROM

23   ME?  THEY SENT IT BACK TO ELAN FOR A COUPLE OF

24   WEEKS SO ELAN COULD PONDER THE REDACTION.  THEY'RE

25   REDACTED.  IT JUST DOESN'T MAKE ANY SENSE.

1           THE COURT:  ONE EXPLANATION MIGHT BE THAT

2     THEY ARE CONCERNED THAT THEIR REDACTIONS WERE

3     INSUFFICIENT TO PROTECT ELAN'S PROPRIETARY

4     INTERESTS AND, OUT OF AN ABUNDANCE OF CAUTION,

5     BEFORE SHARING THAT INFORMATION WITH YOU, THEY

6     WANTED TO CONFIRM WITH ELAN THAT THEY GOT THE

7     REDACTIONS RIGHT.  ISN'T THAT ONE POSSIBLE

8     EXPLANATION?

9           MS. HUTNYAN:  WELL, YEAH, BUT IT'S NOT A

10    VERY GOOD ONE BECAUSE THERE ARE COURT ORDERS TO

11    PRODUCE THOSE THINGS, FIRST OF ALL.

12           AND SECOND OF ALL, THEY HAD AN EXTENDED

13    DISCUSSION WITH ELAN THAT WAS WEEKS INTO IT AND,

14    YOU KNOW, ELAN, IN THE END, THEY ASKED FOR AN

15    EXTENSION SO THEY CAN PONDER THE REDACTIONS AND

16    THEN THEY DIDN'T EVEN RESPOND.

17           THE COURT:  CAN I ASK YOU A QUESTION?

18    HAS JUDGE KOH TOLD YOU HOW MANY EXHIBITS YOU GET ON

19    YOUR EXHIBIT LIST AT TRIAL?  DO YOU HAVE A CLUE AS

20    TO WHAT THE SCALE IS GOING TO BE AT TRIAL?

21    HUNDREDS?  THOUSANDS?

22           MS. MAROULIS:  WE DON'T REALLY HAVE A

23    LIMITATION, BUT OUR EXHIBIT LIST IS DUE NEXT

24    FRIDAY, WHICH IS WHY MS. HUTNYAN IS PROVIDING THOSE

25    DEADLINES.

1           THE COURT:  THE REASON I RAISE IT --

2     THERE ARE A NUMBER OF REASONS, RIGHT -- FIRST OF

3     ALL, I SUGGEST TO YOU -- IT'S A SUGGESTION, YOU CAN

4     IGNORE IT IF YOU WISH -- THAT YOU STUDY CAREFULLY

5     HER PRECEDENT ON THAT SUBJECT, BECAUSE I'M NOT

6     GOING TO SPEAK FOR THE PRESIDING JUDGE, BUT I CAN

7     SHARE WITH YOU THAT IN EARLIER -- OR IN VERY RECENT

8     PATENT CASES, SHE HAS BEEN QUITE SKEPTICAL OF

9     THOUSANDS AND THOUSANDS OF EXHIBITS BEING PRESENTED

10    TO HER FOR AN EVALUATION.

11          THE REASON WHY I BRING UP THAT SUBJECT

12    IS, ARE YOU REALLY TELLING ME THAT EVEN IF SHE LETS

13    YOU BRING IN A COUPLE THOUSAND DOCUMENTS EACH INTO

14    THE RECORD, THESE MATERIALS HAVE A DECENT CHANCE OF

15    GETTING ON THAT LIST, AT THIS STAGE IN THE CASE,

16    WITH TRIAL COMING UP IN A COUPLE OF WEEKS?

17          MS. HUTNYAN:  WELL, RESPECTFULLY, I DON'T

18    THINK THAT'S THE ISSUE.

19          THE COURT:  WELL, IT'S THE ISSUE FOR THIS

20    COURT, BECAUSE I AM TRYING TO PRIORITIZE WHAT

21    MATTERS.  I KNOW ALL OF THIS MATTERS TO YOU ALL,

22    BUT I HAVE TO FIGURE OUT WHAT MATTERS TO HER.

23          AND I DO THINK IT IS A MATERIAL QUESTION

24    FOR THIS DISPUTE TO ASK -- YOU KNOW, TO FIGURE OUT,

25    DOES THIS STUFF REALLY MATTER?

                                                    140

1           MS. HUTNYAN:  I UNDERSTAND.

2           BUT OF COURSE THAT'S EXACTLY WHAT I'M

3     ASKING FOR.  I'VE BEEN EXCLUDED FROM THE

4     CONVERSATION AS FAR AS WHAT DOCUMENTS WE'RE TALKING

5     ABOUT UNTIL I RECEIVED THEM THE NIGHT BEFORE I LEFT

6     FOR THIS HEARING, SO I DON'T KNOW WHETHER THEY

7     MATTER.

8           MY GUESS IS THAT THESE REMAINING

9     DOCUMENTS, THIS HANDFUL THAT'S LEFT, MAY NOT

10    MATTER.  THE ONE THAT I GOT I SAW INSTANTLY DIDN'T

11    MATTER TO ME AND I SAID SO.  I DIDN'T KEEP

12    LITIGATING IT.  I STOPPED.

13          IF THERE'S NOTHING THAT MATTERS, I SHOULD

14    HAVE IT.  THERE'S NO REASON WHY THIS STUFF

15    SHOULDN'T HAVE BEEN PRODUCED.

16          AND, YOU KNOW, I'D LIKE TO HEAR APPLE'S

17    COUNSEL GET UP AND SAY HOW THEY CAN JUSTIFY NOT

18    IDENTIFYING ALL THOSE THIRD PARTIES THAT THEY

19    SUDDENLY MENTIONED TO US IN LATE APRIL JUST BEFORE

20    THEY WERE SUPPOSED TO COMPLY WITH YOUR ORDER TO

21    PRODUCE ALL THESE MATERIALS.

22          I MEAN, YOU KNOW, SINCE NOVEMBER AND

23    SINCE THE DECEMBER 22ND ORDER WHEN YOUR HONOR SAID,

24    "SAMSUNG, YOU WILL GET THESE CONSENTS AS AN INITIAL

25    MATTER," FROM THAT POINT ON, I'VE BEEN SAYING,

1   "PLEASE TELL ME WHO THESE THIRD PARTIES ARE SO THAT

2   I CAN GET THE CONSENTS SO WE CAN FACILITATE THIS

3   PRODUCTION," AND NOBODY MENTIONED THESE OTHER 15.

4            THEN AT THE MOMENT THAT IT FALLS ON THEM

5   TO ACTUALLY PRODUCE THE MATERIALS BECAUSE THE COURT

6   SAID, "YES, I MEANT WHAT I SAID," THEN THEY SAID,

7   "OH, THERE ARE 15 MORE, WE'RE ALL WORRIED ABOUT

8   IT."

9            THIS IS SOMETHING THAT THEY CREATED

10  BECAUSE THEY COULDN'T BE BOTHERED TO MEET AND

11  CONFER WITH ME IN GOOD FAITH AND PROVIDE ME WITH

12  THE INFORMATION SO THAT I COULD GET A HANDLE ON IT

13  A LONG TIME AGO.

14            AND NOW I'M BEING ASKED, "WELL, DO YOU

15  REALLY NEED IT?"

16            YEAH.  I NEEDED IT A LONG TIME AGO.

17  THAT'S WHY I MOVED ON IT.  THAT'S WHY I WON,

18  BECAUSE WE DESERVED IT.

19            AND SO TO NOW SAY THAT THEY SHOULD BE

20  EXCUSED FROM TALKING TO ME AND PROVIDING ME THE

21  BASIC INFORMATION I NEED TO GET IT HANDLED JUST

22  BECAUSE IT'S LATE IN THE CALENDAR, THAT'S WHAT

23  THEY'RE HOPING FOR, YOUR HONOR.

24            THE COURT:  ALL RIGHT.  LET'S SEE IF WE

25  CAN GET YOU AN ANSWER TO YOUR QUESTION.

142

1          MS. TUCHER, ARE YOU GOING TO ARGUE THIS

2     ONE?

3          MS. TUCHER:  I AM.

4          THE COURT:  SO WHY DID YOU GIVE HER THE

5     LIST SO LATE?

6          MS. TUCHER:  IF YOU'RE ASKING ABOUT THE

7     LIST OF THE THIRD PARTY WITH POTENTIAL CBI, AS YOU

8     KNOW, WHEN YOU'RE DEALING WITH THOUSANDS OF

9     DOCUMENTS, YOU WILL SOMETIMES FIND THAT THERE'S A

10    PARTY WHO IS IMPLICATED BY A FEW DOCUMENTS, SO

11    ADDITIONAL NAMES SHOWED UP AS FOR A FEW.

12          BUT FOR THE PRIMARY HOLDERS OF THE

13    CONFIDENTIAL BUSINESS INFORMATION, SAMSUNG HAD THAT

14    FOR MONTHS.

15          SAMSUNG HAD, UNDER YOUR HONOR'S ORIGINAL

16    ORDER, THE OBLIGATION TO GET THOSE CONSENTS.  THEY

17    REPRESENTED TO THIS COURT THAT THEY HAD THOSE

18    CONSENTS.

19          THEN WHEN WE ASKED THEM FOR THOSE

20    CONSENTS SO THAT WE COULD PRODUCE THE DOCUMENTS, WE

21    WEREN'T ABLE TO GET ANY CONSENTS FROM THEM, SO WE

22    HAD TO START AGAIN AND WE DID.

23          BUT I WANT TO, I HOPE HAVING ANSWERED

24    THAT QUESTION, START WITH OUR BOTTOM LINE POSITION,

25    WHICH IS THAT SAMSUNG'S MOTION TO ENFORCE THE APRIL

1    12TH ORDER SHOULD BE DENIED BECAUSE WE HAVE FULLY

2    COMPLIED WITH YOUR ORDER.

3            YOUR ORDER WAS THAT BY APRIL 27TH, WE

4    SHOULD PRODUCE ALL OF THE TRANSCRIPTS THAT YOU

5    FOUND THAT WE NEEDED TO PRODUCE AND WE HADN'T.

6            WE DID THAT.  WE PRODUCED THEM FIVE DAYS

7    BEFORE YOUR APRIL 27TH ORDER.

8            YOUR ORDER WAS THAT SAMSUNG HAD A RIGHT

9    TO TAKE FIVE ADDITIONAL DEPOSITIONS, BUT THAT

10   SAMSUNG WAS TO FINISH THOSE DEPOSITIONS BY

11   MAY 10TH.

12           SO IF YOU LOOK AT YOUR BINDER AT THE VERY

13   LAST TAB, YOU ASKED ABOUT THE TIMELINE, YOU'LL SEE

14   THE RELEVANT TIMELINE.

15           WE WROTE THEM THREE TIMES ON APRIL 24TH,

16   ON APRIL 30TH, AND ON MAY 4TH SAYING "WE FINISHED

17   OUR PRODUCTION OF TRANSCRIPTS ON APRIL 22ND.  IF

18   YOU WANT WITNESSES, TELL US IMMEDIATELY WHO YOU

19   WANT SO WE CAN ARRANGE IT."

20           WE WROTE THEM THREE TIMES AND THEY DIDN'T

21   GIVE US A SINGLE NAME.  THAT'S WHY THEY DIDN'T GET

22   THEIR DEPOSITIONS BY MAY 10TH.

23           YOU ORDERED THEM TO COMPLETE THEM BY

24   MAY 10TH.  THEY DIDN'T ASK FOR ANYTHING, NOT FOR A

25   SINGLE NAME, UNTIL MAY 9TH.

1            AND FINALLY, YOU ORDERED THAT APPLE

2      SHOULD PRODUCE UNREDACTED COURT DOCUMENTS --

3            THE COURT:  I'M SORRY.  BEFORE YOU TURN

4      TO YOUR NEXT POINT, LET'S EXPLORE THIS ONE A LITTLE

5      BIT AND ALL STEP BACK FOR A MOMENT.

6            MS. TUCHER:  OKAY.

7            THE COURT:  IT WOULD APPEAR, LOOKING AT

8      THIS CASE FROM THE 10,000 FOOT OVERVIEW, THAT EVEN

9      AT THIS LATE STAGE AND AFTER ALL OF THESE MULTIPLE

10     ROUNDS OF DISCOVERY FIGHTS THAT WE'VE HAD, THAT WE,

11     ALL OF US, HAVE FAILED IN THAT NOT EVEN FIVE SIMPLE

12     DEPOSITIONS OF TWO HOURS EACH CAN BE SCHEDULED

13     WITHOUT COURT INTERVENTION.  RIGHT?

14            YOU'RE SAYING THEY SHOULD HAVE TOLD YOU

15     THE NAMES WELL BEFORE THE 10TH.

16            THEY'RE SAYING THEY DIDN'T HAVE THE

17     INFORMATION THAT THEY NEEDED IN ORDER TO MAKE THAT

18     DETERMINATION.

19            HOWEVER THAT SHAKES OUT, ON THE 9TH YOU

20     HAD SOME NAMES.  I HEARD, I THOUGHT, JUST A MOMENT

21     AGO AN OFFER THAT WAS EXTENDED TO PUT THE DEADLINE

22     OFF BY A FEW WEEKS TO GIVE YOUR PEOPLE SOME TIME TO

23     ARRANGE THEIR CALENDARS.

24            HOW IS IT POSSIBLE THAT WE COULDN'T EVEN

25     GET TWO HOUR DEPOSITIONS SCHEDULED WITH A COURT

1    ORDER IN PLACE?

2              MS. TUCHER:  YOUR HONOR, THE COURT ORDER

3    SAID THAT THEY HAD TO BE COMPLETED BY THE 10TH

4    BECAUSE --

5              THE COURT:  I KNOW WHAT THE COURT ORDER

6    SAID.  BUT RESPECTFULLY, YOU WERE GIVEN NAMES IN

7    ADVANCE OF THAT DATE, MAYBE ONLY A FEW HOURS IN

8    ADVANCE OF THAT DATE, BUT THEY SAID, "FINE.  LET'S

9    PUT THE DEADLINE OFF FOR A FEW WEEKS.  MAYBE WE CAN

10   FILE A STIPULATION WITH THE COURT TO NIP THAT ISSUE

11   IN THE BUD."

12             I JUST AM ASTOUNDED THAT WE CAN'T EVEN

13   GET, EVEN WITH A COURT SAYING DEPOSE FIVE PEOPLE

14   FOR TWO HOURS EACH, WE CAN'T EVEN GET THAT TAKEN

15   CARE OF.

16             MS. TUCHER:  WELL, PART OF THE PROBLEM IS

17   THAT THE FIVE PEOPLE THAT THEY, THAT THEY GAVE US

18   NAMES FOR REALLY WERE UNRELATED TO THE PRODUCTION

19   OF TRANSCRIPTS AND WE --

20             THE COURT:  SO ARE YOU SAYING THAT NONE

21   OF THOSE PEOPLE WERE THE SUBJECT OF ANY OF THOSE

22   EARLIER TRANSCRIPTS?

23             I WAS JUST TOLD THAT ONE PERSON AT LEAST

24   THAT THEY ASKED FOR WAS A PERSON FOR WHOM A

25   DEPOSITION TRANSCRIPT WAS PRODUCED PURSUANT TO MY

1    ORDER.

2            SO AM I MISUNDERSTANDING WHAT THE FACTS

3    ARE?

4            MS. TUCHER:  ANDREW BRIGHT, THE NAME SHE

5    MENTIONED, WAS SOMEONE WHO HAD BEEN IDENTIFIED AS

6    EARLY AS FEBRUARY 16TH IN THIS CASE.  THEY DIDN'T

7    NEED OUR PRODUCTION OF TRANSCRIPTS IN APRIL TO TELL

8    THEM WHO ANDREW BRIGHT WAS.

9            THEY DECIDED, AFTER THE CLOSE OF

10   DISCOVERY, THEY WANTED TO DEPOSE ANDREW BRIGHT, BUT

11   THEY KNEW ABOUT HIM EARLIER.

12           THE COURT:  RIGHT.  BUT THEY ALSO HAD AN

13   ORDER AT THAT POINT IN TIME SAYING THEY GET FIVE

14   DEPOSITIONS OF TWO HOURS.  IT'S 120 MINUTES.  YOU

15   COULD HAVE DONE IT BY PHONE.  THEY COME TO

16   CUPERTINO OR WHEREVER MR. BRIGHT IS LOCATED.

17           WHAT HAVE WE DONE HERE THAT I CAN'T EVEN

18   GET FIVE DEPOSITIONS OF TWO HOURS EACH SCHEDULED

19   WITHOUT HAVING TO CONVENE A COURTROOM FULL OF 100

20   PEOPLE?  THAT'S ASTOUNDING TO ME.

21           MS. TUCHER:  YOUR HONOR, I'M SORRY THAT

22   WE'RE HERE DISCUSSING FIVE INDIVIDUALS BECAUSE I

23   KNOW WE HAVE A LOT OF OTHER THINGS WE HAVE TO GET

24   TO TODAY.

25           BUT ON THEIR LIST OF FIVE ARE TWO PEOPLE

```
 1     WHOM THEY ALREADY DEPOSED IN THIS CASE, SO THEY
 2     WANT TO DEPOSITIONS OF --
 3              THE COURT:  GREAT.  THE ORDER SAID THEY
 4     GET FIVE PEOPLE.  I DON'T CARE IF THEY'VE BEEN
 5     DEPOSED A HUNDRED TIMES.
 6              YOU STIFFED THEM ON TRANSCRIPTS.  I
 7     ISSUED AN ORDER TO THAT EFFECT.  I SAID, "AS A
 8     MODEST ATTEMPT TO MITIGATE THE PREJUDICE, I'LL GIVE
 9     THEM FIVE DEPOSITIONS OF TWO HOURS EACH," AND EVEN
10     THAT DOESN'T GO RIGHT.
11              SO PERHAPS YOU CAN SENSE MY EXASPERATION,
12     BUT I REALLY AM AT A LOSS AS TO WHAT MORE WE CAN DO
13     TO STREAMLINE THE DYNAMICS HERE.
14              MS. TUCHER:  YOUR HONOR, WE THINK THAT
15     THE WAY TO STREAMLINE THE DYNAMICS IS TO FOLLOW THE
16     ORDERS THAT YOU HANDED DOWN, AND THAT'S WHY WE
17     ASKED FOR THE NAMES AND WE WERE PREPARED TO GIVE
18     THE DEPOSITIONS CONSISTENT WITH YOUR ORDER, AND
19     THEN THEY CAME UP WITH NAMES WHEN IT WAS TOO LATE
20     FOR US TO DO ANYTHING ABOUT IT, AND WHEN WE --
21              THE COURT:  IF YOU WANT TO APPLY THE
22     LANGUAGE OF MY ORDER, THOUGH, COUNSEL, MY ORDER DID
23     NOT SAY THEY HAD TO PROVIDE NAMES SEVEN DAYS BEFORE
24     THE DEADLINE OR EVEN FOUR DAYS OR TWO DAYS.  MY
25     ORDER SAID NOTHING ABOUT IT.
```

1          SO STRICTLY SPEAKING, ONE COULD READ THAT

2     ORDER AS PERMITTING THEM TO DO EXACTLY WHAT THEY

3     DID.

4          NOW, THAT'S A RIDICULOUS REALITY, AND I

5     THINK THEY RECOGNIZED THAT BY OFFERING TO PUSH THE

6     DEADLINE OUT A WEEK OR TWO TO NOT UNDULY BURDEN

7     YOUR PEOPLE.

8          BUT TO TAKE THIS EXTREME POSITION THAT

9     EVEN AS TO PEOPLE WHO ARE IDENTIFIED PURSUANT TO A

10    COURT ORDER, EVEN PEOPLE WHOSE DEPOSITION

11    TRANSCRIPTS WERE PRODUCED AFTER I ORDERED THEM TO

12    BE PRODUCED, THEY DON'T GET THE DEPOSITION, THAT'S

13    A BIT OF AN EXTREME POSITION, WOULDN'T YOU AGREE?

14         MS. TUCHER:  WELL, I WOULD AGREE THAT

15    THAT'S SAMSUNG'S BEST CASE OF THE FIVE, BECAUSE

16    THEY ALSO HAVE ONES WHERE THEY, COMPLETELY BEFORE

17    YOUR ORDER WAS ISSUED, HAD BEEN TRYING TO GET

18    DEPOSITIONS POST-DISCOVERY.

19         THEY ALSO -- ALTHOUGH MS. HUTNYAN STOOD

20    HERE AND SAID THAT THEY COULDN'T IDENTIFY THE DATES

21    EARLIER BECAUSE THEY DIDN'T KNOW WHAT PATENTS APPLE

22    WAS GOING TO DROP, TWO OF THE FIVE NAMES ON THEIR

23    LIST HAVE TO DO WITH SAMSUNG'S ASSETS THAT ARE

24    BEING ASSERTED AGAINST APPLE.  THEY HAVE NOTHING TO

25    DO WITH APPLE'S PATENTS AT ALL.

1           SO I --

2           THE COURT:  SO YOU --

3           MS. TUCHER:  -- DO SENSE YOUR

4    FRUSTRATION.

5           THE COURT:  BUT YOU'RE TELLING ME THAT

6    THE REAL PREJUDICE HERE IS TO APPLE IN THIS WHOLE

7    EXCHANGE, AS I UNDERSTAND YOUR COMMENTS, THAT YOU

8    WERE TOLD TOO LATE TO ARRANGE FOR THESE PEOPLE TO

9    APPEAR FOR A DEPOSITION BY MY DEADLINE.

10          MS. TUCHER:  YES.

11          THE COURT:  OKAY.  I WILL GRANT YOU THAT

12   MAY 9TH IS NOT EXACTLY A STELLAR RECORD ON

13   SAMSUNG'S PART FOR GIVING YOU SOME HEADS-UP AS TO

14   WHEN THESE PEOPLE HAD TO APPEAR.

15          BUT WHEN THEY SAY TO YOU, "WE KNOW WE

16   FELL DOWN A LITTLE BIT HERE, SO WE'LL GIVE YOU AN

17   EXTRA WEEK OR TWO.  IF MR. BRIGHT CAN'T APPEAR ON

18   THE 9TH OR 10TH, HE CAN APPEAR NEXT WEEK OR IN TWO

19   WEEKS," ISN'T THAT A REASONABLE WAY TO TAKE AN

20   ISSUE OFF OF THIS COURT'S PLATE AND KEEP IT ON THE

21   PARTIES WHERE IT BELONGS?  ISN'T THAT REASONABLE?

22          MS. TUCHER:  YOUR HONOR, I'M SORRY IT

23   ENDED UP ON YOUR PLATE.

24          MAYBE I CAN MOVE TO ANOTHER ONE OF THE

25   ISSUES THAT IS STILL ON YOUR PLATE.

1          THE COURT:  WHY DON'T WE DO THAT?

2          MS. TUCHER:  AND THAT IS THE UNREDACTED

3     COURT DOCUMENTS, BECAUSE WE -- APPLE PRODUCED ALL

4     OF THE UNREDACTED COURT DOCUMENTS FROM RELATED

5     CASES, BY THE DEADLINE YOU GAVE US, THAT APPLE HAD

6     IN ITS POSSESSION, IN ITS CUSTODY, OR ITS CONTROL.

7          THE REASON THAT YOU ARE STILL FACING

8     MOTION PRACTICE ABOUT THIS IS THAT THERE ARE

9     DOCUMENTS THAT APPLE DID NOT HAVE POSSESSION,

10    CUSTODY, OR CONTROL OF, BUT THAT ITS OUTSIDE

11    COUNSEL IN ITC CASES HAD.

12         NOW, WE'RE ALL FAMILIAR WITH THE DISTRICT

13    COURT WORLD WHERE A PROTECTIVE ORDER CAN BE

14    SUPERCEDED BY A COURT ORDER SAYING "JUST PRODUCE

15    THE STUFF THAT'S PROTECTED UNDER THE PROTECTIVE

16    ORDER."

17         THEY LIVE IN A DIFFERENT WORLD IN ITC

18    LAND.  IF YOU PRACTICE BEFORE THE ITC AND YOU'RE A

19    PARTY TO THE STANDARD PROTECTIVE ORDER BEFORE THE

20    ITC AND A COURT ORDER OBLIGATES YOU TO PRODUCE

21    DOCUMENTS THAT YOU HAVE ONLY UNDER THE PROTECTION

22    OF THAT COURT ORDER, YOU MAY NOT PRODUCE THEM.

23         AND APPLE'S LAWYERS IN THE ITC MATTERS

24    SAID, "UNDER THREAT OF DISBARMENT FROM OUR PRACTICE

25    BEFORE THE ITC, WE WILL NOT GIVE YOU THOSE

1    DOCUMENTS."

2              THE COURT:  SO YOU'RE SUGGESTING THAT AN

3    ARTICLE I TRIBUNAL HAS THE AUTHORITY TO TRUMP THE

4    DIRECT ORDER OF AN ARTICLE III COURT?

5              MS. TUCHER:  YOUR HONOR, I CAN TELL YOU

6    THAT AN ARTICLE III COURT, IN THE NISSEI AMERICA

7    CASE, FOUND THAT TO BE TRUE.

8              I CAN TELL YOU THAT THE STAFF AT THE ITC,

9    IN DESCRIBING APPLE AS BEING BETWEEN A ROCK AND A

10   HARD PLACE, SAID EXPLICITLY THAT THE DISCLOSURE OF

11   THE DOCUMENTS BY APPLE IS NOT PERMITTED.

12             SO IT'S NOT JUST ME SAYING THAT.

13             WE CITED THE NISSEI AMERICA CASE IN OUR

14   BRIEFING.

15             THE COURT:  DOES THE ITC GET TO ORDER

16   DOCUMENTS PRODUCED IN AN ARTICLE III LITIGATION TO

17   BE USED IN AN ARTICLE I PROCEEDING?

18             MS. TUCHER:  I DON'T KNOW THAT BECAUSE I

19   DON'T PRACTICE BEFORE THE ITC.

20             BUT I DO KNOW THAT WE TRIED HARD TO GET

21   THE DOCUMENTS ON APPLE'S BEHALF FROM APPLE'S ITC

22   LAWYERS AND THEY'RE THE ONES WHO TOLD US "WE CANNOT

23   GIVE THEM TO YOU AND WE CANNOT GIVE THEM TO APPLE,"

24   AND BECAUSE APPLE DOESN'T HAVE THEM AND CANNOT GET

25   ACCESS TO THEM, EVEN IN LIGHT OF YOUR ORDER, WE

1        WEREN'T ABLE TO PRODUCE THEM.

2                SO THAT'S WHY WE BELIEVE WE HAVE FULLY

3        COMPLIED WITH YOUR ORDER.

4                BUT WE ALSO KNEW THAT YOU MIGHT HAVE

5        TROUBLE WITH THAT ANSWER AND WE KNEW THAT SAMSUNG

6        WAS PRESSING HARD, SO WE DID WHAT WE THOUGHT WAS AN

7        EXTRA STEP.  WE WENT THROUGH ALL OF THOSE DOCUMENTS

8        AND WE REDACTED THE CONFIDENTIAL BUSINESS

9        INFORMATION OF EVERYBODY WHO WOULDN'T GIVE US

10       CONSENT AND WE'VE PRODUCED THAT.

11               SOME OF THAT WE PRODUCED WEEKS AGO

12       BECAUSE EITHER WE GOT CONSENT OR WE REDACTED AND

13       PRODUCED.

14               AND SOME OF THAT -- AND NOTABLY, ELAN IS

15       THE EXAMPLE -- IT TOOK UNTIL JUST THIS WEEK TO

16       PRODUCE BECAUSE NOT ONLY DID ELAN INSIST THAT THEIR

17       CONFIDENTIAL BUSINESS INFORMATION NOT BE DISCLOSED,

18       BUT THEY INSISTED THAT THEY BE GIVEN A PERIOD OF

19       TIME TO REVIEW THE REDACTIONS BEFORE WE COULD

20       PRODUCE THEIR DOCUMENTS.

21               THE COURT:  SO DID YOU PRODUCE REDACTED

22       VERSIONS OF ELAN DOCUMENTS BEFORE LAST WEEK?

23       FORGET ABOUT THE UNREDACTED VERSIONS.  I'M TALKING

24       ABOUT THE REDACTED VERSIONS.

25               MS. TUCHER:  NO, BECAUSE WHEN WE GOT

                                                      153

1     THOSE FROM APPLE'S LAWYERS AND TOLD ELAN WE WERE

2     GOING TO PRODUCE THEM, ELAN SAID, "DON'T YOU DARE.

3     DON'T YOU DARE PRODUCE THEM UNTIL WE HAVE A CHANCE

4     TO LOOK AT YOUR REDACTIONS."

5          SO APPLE'S LAWYERS IN THE ITC CASE

6     WEREN'T WILLING TO RELEASE THOSE DOCUMENTS TO US

7     UNTIL THE PERIOD OF TIME HAD LAPSED.

8          THE COURT:  AND DID YOU WITHHOLD FROM

9     MS. HUTNYAN, WHO YOU WERE SPEAKING WITH, THE

10    CONTACT PEOPLE, THE EFFORTS THAT YOU HAD UNDERTAKEN

11    IN ORDER TO SECURE THAT CONSENT?

12         MS. TUCHER:  WE TOLD MS. HUTNYAN THAT WE

13    WERE UNDERTAKING THESE EFFORTS.  I DON'T RECALL

14    WHETHER SHE ASKED FOR SPECIFIC CONTACT INFORMATION.

15         THE COURT:  WOULD YOU AGREE THAT IF SHE

16    HAD, THAT WOULD NOT HAVE BEEN AN UNREASONABLE --

17         MS. TUCHER:  IT WOULD NOT BE UNREASONABLE

18    TO GIVE HER CONTACT INFORMATION.

19         ON THE OTHER HAND, I DON'T THINK IT'S

20    HARD TO FIND OUT WHO COUNSEL OF RECORD IN THE ITC

21    FOR ANY OF THESE PARTIES IS.

22         THE COURT:  I WOULD ARGUABLY SUGGEST THAT

23    THAT WOULD MAKE IT THAT MUCH EASIER TO RESPOND.

24         MS. TUCHER:  I HAVE NO BEEF WITH

25    PROVIDING CONTACT INFORMATION TO MS. HUTNYAN.

154

1    THAT'S CERTAINLY NOT A PROBLEM.

2              WHAT MS. HUTNYAN WANTED WAS UNREDACTED

3    DOCUMENT THAT WE COULDN'T GIVE HER.  WE GAVE HER

4    REDACTED DOCUMENTS AS QUICKLY AS WE COULD GET THEM

5    REDACTED.

6              WE WENT TO THE ITC AND MOVED FOR AN

7    EXCEPTION TO THAT ORDER.  THE STAFF SAID OUR MOTION

8    SHOULD NOT BE GRANTED.  THE ITC HASN'T GRANTED IT

9    YET.  WE'VE DONE EVERYTHING WE COULD THERE.

10             WE ASKED ALL OF THE PARTIES FOR CONSENT

11   AND THEN WE ASKED THEM AGAIN.

12             WE'VE DONE EVERYTHING WE COULD TO GET ALL

13   OF THE INFORMATION IN THEIR HANDS THAT WE COULD.

14             AND THE ONLY DOCUMENTS THAT THEY DON'T

15   HAVE, EITHER IN REDACTED FORM OR IN UNREDACTED

16   FORM, ARE DOCUMENTS THAT MORRISON & FOERSTER HAS

17   NEVER SEEN AND THAT APPLE HAS NEVER SEEN AND THAT

18   APPLE'S ITC LAWYERS TELL US ARE SO COMPLETELY THE

19   CBI OF THIRD PARTIES THAT THEY CAN'T BE PRODUCED AT

20   ALL, AND WE'VE LISTED THOSE ON A LOG.

21             SO IN A CASE WHERE WE HAVE YET TO RECEIVE

22   A PRIVILEGE LOG FROM SAMSUNG, THEY'VE ALREADY GOT A

23   LOG OF ALL THE DOCUMENTS THAT WE HAVEN'T PRODUCED

24   HERE.

25             THE COURT:  IF I WERE TO ORDER THOSE

1    DOCUMENTS PRODUCED TODAY, HYPOTHETICALLY SPEAKING,

2    IF I UNDERSTAND YOUR COMMENT, APPLE'S NOT GOING TO

3    COMPLY WITH MY ORDER BECAUSE THEY FEAR

4    REPERCUSSIONS IN THE INTERNATIONAL TRADE

5    COMMISSION.  IS THAT CORRECT?

6          MS. TUCHER:  I BELIEVE APPLE HAS ALREADY

7    COMPLIED WITH YOUR ORDER TO THE EXTENT THEY HAVE

8    ANY OF THESE DOCUMENTS.

9          THE COURT:  SO ARE YOU --

10          MS. TUCHER:  APPLE DOESN'T HAVE THEM.

11          APPLE'S ITC COUNSEL, OUTSIDE COUNSEL, HAS

12    THEM, AND I THINK THE ORDER WOULD HAVE TO GO TO THE

13    ITC COUNSEL.

14          THE COURT:  WELL, PRESUMABLY OUTSIDE

15    COUNSEL FALLS WITHIN THE RUBRIC OF POSSESSION,

16    CUSTODY, AND CONTROL FOR PURPOSES OF AN ORDER TO

17    APPLE.  AM I WRONG IN THAT?

18          MS. TUCHER:  I BELIEVE, WITH ALL DUE

19    RESPECT, THAT YOU ARE WRONG IN THE CONTEXT OF THE

20    ITC PROTECTIVE ORDER, BECAUSE APPLE DOES -- AND I

21    WOULD CITE TO YOU THE NISSEI AMERICA CASE WHICH

22    SAYS, USING DIFFERENT PARTIES, THAT APPLE DOES NOT

23    HAVE CUSTODY OR CONTROL OF THE DOCUMENTS WHERE AN

24    ITC PROTECTIVE ORDER PROTECTS THOSE DOCUMENTS

25    BECAUSE A COURT ORDER, EVEN FROM AN ARTICLE III

156

1    JUDGE, CAN'T GET AROUND THAT.

2            THE COURT:  ALL RIGHT.  SO WHETHER IT'S

3    JUSTIFIED BY YOUR INTERPRETATION OF THE POSSESSION,

4    CUSTODY, OR CONTROL REQUIREMENT UNDER NISSEI OR ANY

5    OF THESE OTHER CASES, IF I ISSUE AN ORDER TO APPLE

6    TO GET THOSE DOCUMENTS FROM ITS LAWYERS AND PRODUCE

7    THEM, YOU'RE TELLING ME RIGHT NOW APPLE WILL NOT DO

8    THAT?

9            MS. TUCHER:  I'M TELLING YOU APPLE HAS

10   DONE EVERYTHING IT CAN DO.

11           THE COURT:  I UNDERSTAND THAT.  I'M NOT

12   SUGGESTING THAT PERHAPS APPLE WOULD NOT BE

13   JUSTIFIED.  I JUST WANT TO KNOW WHAT'S GOING TO

14   HAPPEN HERE.  I'M TRYING TO THINK A COUPLE MOVES

15   AHEAD.

16           MS. TUCHER:  I'M GUESSING YOU WILL SEE

17   PLEADINGS FROM APPLE'S ITC LAWYERS IN YOUR

18   COURTROOM IN ORDER TO EXPLAIN IN THEIR OWN WORDS

19   WHAT I'VE ATTEMPTED TO EXPLAIN.

20           THE COURT:  AND PERHAPS MOTIONS FOR

21   CONTEMPT FROM THE OTHER SIDE.

22           ALL RIGHT.  ANYTHING FURTHER?

23           MR. JACOBS:  YOUR HONOR, IF I MAY

24   BRIEFLY?

25           APPLE CAN'T COMPLY.  THE ITC PROTECTIVE

1    ORDER IS AN OUTSIDE COUNSEL ONLY PROTECTIVE ORDER

2    AND THE ITC COUNSEL OF APPLE -- THERE IS NO

3    DIRECTION APPLE COULD GIVE TO ITS COUNSEL.  IT'S

4    NOT A QUESTION OF WILL OR INTENT HERE.

5         IT'S -- IT'S IMPOSSIBLE FOR APPLE TO --

6    IT WOULD BE IMPOSSIBLE FOR APPLE TO COMPLY WITH

7    SUCH AN ORDER BECAUSE ITS COUNSEL WOULD, ON FEAR OF

8    DISBARMENT, DISOBEY THE DIRECTION.

9         THE COURT:  ALL RIGHT.  THANK YOU VERY

10   MUCH.

11        MS. TUCHER:  THANK YOU, YOUR HONOR.

12        THE COURT:  BRIEF REBUTTAL.

13        MS. HUTNYAN:  VERY, VERY BRIEF.

14        A LOT OF THIS IS OLD NEWS.  I WANT TO

15   TALK ABOUT ALL THE STUFF THAT THEY DID PRODUCE, AND

16   FOR A LOT OF THESE CONSENTS, THEY DID GET -- THEY

17   WAITED UNTIL TWO DAYS BEFORE THE DEADLINE TO

18   PRODUCE THE MATERIALS TO EVEN START GETTING THE

19   CONSENTS, AND I REFER THE COURT BACK TO THAT ONE

20   EXHIBIT WHERE I ATTACHED ALL THE NOTICE LETTERS.

21   THEY WAITED UNTIL THE VERY LAST SECOND AND THEY GOT

22   A BUNCH OF THE CONSENTS.

23        AND THIS IS A VERY SIMPLE, COMMON SENSE

24   PROCESS TO TRY TO RESOLVE THEM.

25        IF WE WANT TO TAKE THE PEOPLE, THE

1    ENTITIES THAT I PUT IN THE FIRST CATEGORY AND

2    INVOLVE ME IN THE DISCUSSION AND PUT THEM IN THE

3    SECOND CATEGORY, OR SET UP A VERY LIMITED

4    OPPORTUNITY, FORMAL OPPORTUNITY TO INTERVENE WHERE

5    APPLE NEEDS TO GIVE THEM FORMAL NOTICE AND THEN

6    THERE'S A PERIOD THAT THEY CAN DECIDE WHETHER TO

7    INTERVENE, IF THAT'S HOW YOU'D LIKE TO HANDLE IT,

8    THAT'S FINE, TOO.

9              BUT WE'RE NOT TALKING ABOUT THAT MANY

10   DOCUMENTS.

11             THE COURT:  LET'S FOCUS -- OUR TIME IS

12   RUNNING SHORT, SO I WANT TO MAKE SURE I'M FOCUSSING

13   ON THE MOST PERTINENT ISSUES.

14             LET'S FOCUS ON THE SUBJECT OF ITC

15   DOCUMENTS AND APPLE'S POSITION THAT ITS OUTSIDE

16   COUNSEL AT THE ITC IS IN NO WAY ABLE TO TURN OVER

17   DOCUMENTS TO APPLE TO ALLOW THEM TO PRODUCE THEM TO

18   YOU PURSUANT TO MY COURT ORDER.

19             DO YOU ACCEPT, OR DO YOU AGREE THAT,

20   UNDER THE ITC PROTECTIVE ORDER, APPLE WOULD BE IN

21   VIOLATION OF THAT ITC PROTECTIVE ORDER FOR ITS

22   COUNSEL TO DO THAT?  DO YOU AGREE WITH THAT?

23             MS. HUTNYAN:  NO.  I BELIEVE THAT'S AN

24   OVERSTATEMENT.

25             I THINK IF THEY DID THAT WITHOUT THE

1       CONSENT OR REASONABLE NOTICE TO THE THIRD PARTIES

2       IMPLICATED, YOU KNOW, AND THEN THIRD PARTIES

3       DECLINE TO RESPOND OR WHATEVER, SOME TYPE OF OTHER

4       WAY OF DEALING WITH THE CONSENT ISSUE, THEN THEY

5       MIGHT HAVE A PROBLEM.

6              BUT FOR THE ONES WHERE THEY CAN JUST

7       SOLVE IT BY GETTING THE CONSENT, THEY SHOULD HAVE

8       DONE THAT A LONG TIME AGO.

9              AND FOR THE ONES THAT THEY DID GET

10      CONSENT, YOU KNOW, IT SHOWS.  THEY WEREN'T WORRIED

11      ABOUT VIOLATING THE ITC PROTECTIVE ORDER ONCE THEY

12      GOT CONSENT BECAUSE THEY WENT AHEAD AND PRODUCED

13      THOSE THINGS.  THEY HAD CONSENT.

14             SO THIS WHOLE ITC THING IS ONLY A PROBLEM

15      IF THEY DON'T GET CONSENT, AND THAT'S WHY I'M

16      SAYING INVOLVE ME BACK IN THE PROCESS.  I'M A

17      CAN-DO KIND OF PERSON.  I GOT THE OTHER ONES.  I'VE

18      BEEN EXCLUDED FROM THIS PROCESS.

19             I THINK, GIVEN THEIR NOTICE AND THEIR

20      REPRESENTATIONS TO THIS COURT THAT THEY REALLY

21      APPLIED THEIR BEST EFFORTS TO GET CONSENT, OUT OF

22      THE SIX ENTITIES THAT I GAVE YOU, I THINK WE'RE

23      PROBABLY DONE WITH THAT.

24             BUT IF, IN AN ABUNDANCE OF CAUTION, THE

25      COURT NEEDS TO PUT IN A FORMAL PROCESS OF

                                                  160

1    INTERVENTION JUST TO EXHAUST THAT ISSUE, I REALLY

2    DON'T SEE HOW ANYBODY CAN BE COMPLAINING ABOUT IT

3    AT THAT POINT.

4            THE COURT:  WELL, LET ME ASK YOU IF

5    YOU'RE GOING TO COMPLAIN IF, EITHER WITH YOUR

6    PARTICIPATION OR, WITH FURTHER EFFORTS, APPLE

7    REALLY DOES TRY ITS HARDEST AND YOU TRY YOUR

8    HARDEST AND THE THIRD PARTY JUST SAYS "NO, NO, NO,"

9    IN THAT SITUATION, COULD APPLE'S OUTSIDE ITC -- I'M

10   SORRY -- OUTSIDE ITC LAWYERS MAKE AVAILABLE TO

11   APPLE THOSE DOCUMENTS TO PRODUCE THEM TO YOU?  ARE

12   THEY IN A POSITION TO DO THAT IF THOSE WERE THE

13   FACTS?

14           MS. HUTNYAN:  IF THEY ABSOLUTELY SAY NO

15   AFTER WE'VE ACTUALLY HAD A MEANINGFUL DISCUSSION

16   ABOUT THE SCOPE AND NATURE OF WHAT WE'RE ASKING

17   HERE, BECAUSE I REALLY THINK IT'S DE MINIMIS --

18   THAT'S MY GUESS BASED ON WHAT THEY'VE SAID, I DON'T

19   KNOW -- BUT IF THAT'S TRUE, THEN IT MAY BE THAT WE

20   CAN JUST CALL IT A DAY.

21           THE COURT:  ALL RIGHT.

22           MS. HUTNYAN:  BUT WITHOUT THE

23   OPPORTUNITY, I CAN'T MAKE THAT HAPPEN.  I THINK WE

24   SHOULD JUST RESOLVE IT.

25           THE COURT:  ALL RIGHT.  THANK YOU.

1          BEFORE WE TURN TO THE LAST TWO MOTIONS,

2     THE MOTIONS TO STRIKE, I DO NEED TO GIVE MY COURT

3     REPORTER A BRIEF RECESS, SO LET'S TAKE FIVE MINUTES

4     AND WE'LL RESUME.

5               (WHEREUPON, A RECESS WAS TAKEN.)

6          THE COURT:  I BELIEVE WE WERE ABOUT TO

7     TURN TO THE TWO MOTIONS TO STRIKE.  I'D LIKE TO

8     BEGIN WITH THE APPLE MOTION AND THEN TURN TO

9     SAMSUNG.

10          I CAN GO AS LATE AS 12:30, BUT I'M AFRAID

11    WE'RE GOING TO QUICKLY RUN UP AGAINST MY TIME

12    LIMITS, SO I'LL -- LET'S PROCEED AND DO THE BEST WE

13    CAN.

14          MS. TUCHER:  I'LL MARCH THROUGH THIS AS

15    FAST AS I CAN, YOUR HONOR.

16          THERE ARE LOTS OF PIECES TO APPLE'S

17    MOTION, BUT THERE ARE THREE LODESTARS:  THE PATENT

18    LOCAL RULES THAT REQUIRE EARLY DISCLOSURE OF

19    INFRINGEMENT AND INVALIDITY CONTENTIONS, AND THEY

20    CANNOT BE AMENDED WITHOUT ORDER OF THE COURT AND

21    GOOD CAUSE SHOWN; EARLY CONTENTION INTERROGATORIES

22    WHICH APPLE SERVED IN THIS CASE BECAUSE WE NEEDED

23    SIMILAR INFORMATION AS TO OUR DESIGN PATENTS WHICH

24    ARE NOT COVERED BY THE PATENT LOCAL RULES

25    DISCLOSURES AND, OF COURSE, ABOUT SAMSUNG

1    NON-INFRINGEMENT ARGUMENTS; AND FINALLY JUDGE KOH'S

2    ORDER IN THIS CASE BECAUSE SAMSUNG DID MOVE FOR

3    LEAVE TO AMEND THEIR INFRINGEMENT AND INVALIDITY

4    CONTENTIONS IN THIS CASE, AND IN AN EARLY MARCH

5    ORDER, JUDGE KOH DENIED THAT BECAUSE SHE SAID THEY

6    HAD NOT SHOWN DILIGENCE AND BECAUSE OF THE

7    PREJUDICE TO APPLE OF ALLOWING AMENDMENT EVEN AT

8    THAT DATE.

9           SO WHAT SAMSUNG HAS DONE NOW IS TO AMEND

10   THEIR INFRINGEMENT AND INVALIDITY CONTENTIONS, NOT

11   INFRINGEMENT AND INVALIDITY CONTENTIONS SUB

12   SILENTIO, BY SIMPLY INCLUDING INFORMATION IN THE

13   EXPERT REPORTS THAT THEY WANTED TO INCLUDE, BUT

14   DIDN'T INCLUDE IN THEIR DISCLOSURES.

15          THE COURT:  BY THE WAY, I NOTICED THAT --

16   ARE MOTIONS FOR LEAVE TO AMEND CONTENTIONS PROPERLY

17   PRESENTED TO THE PRESIDING JUDGE OR TO THE

18   MAGISTRATE JUDGE?

19          MS. TUCHER:  I'LL LET SAMSUNG ANSWER

20   THAT.

21          THE COURT:  ALL RIGHT.  GO AHEAD.

22          MS. TUCHER:  STARTING WITH DR. GRAY, HE'S

23   SAMSUNG'S EXPERT ON THE INVALIDITY OF THE '905

24   PATENT, HE CITED TEN REFERENCES THAT ARE NOT

25   IDENTIFIED IN THEIR PATENT LOCAL RULE DISCLOSURES

163

1    OR CHARTED IN THEIR INVALIDITY CONTENTIONS.

2            AS TO SEVEN OF THOSE TEN, AS WE POINTED

3    OUT IN OUR MOTION TO STRIKE, SAMSUNG HAS MADE NO

4    DEFENSE, SO I GUESS THAT PART IS UNREBUTTED.

5            AS TO THREE OF THE TEN, THEY SAID, "WELL,

6    THOSE ARE APPLICATIONS THAT RUN ON THE DIAMONDTOUCH

7    SYSTEM AND WE DISCLOSED THE DIAMONDTOUCH SYSTEM AND

8    THAT SHOULD BE SUFFICIENT."

9            IT'S NOT SUFFICIENT BECAUSE, AS YOU CAN

10   SEE FROM THE MATERIAL BEHIND TAB 1, WHEN SAMSUNG

11   WANTED TO DISCLOSE AN APPLICATION THAT RUNS ON THE

12   DIAMONDTOUCH SYSTEM, THEY DID SO EXPLICITLY; FOR

13   EXAMPLE, ON PAGE 4 WHERE THEY DISCLOSE GOOGLE EARTH

14   THAT RUNS ON THE DIAMONDTOUCH SYSTEM, OR ON PAGE 8

15   WHERE THEY DISCLOSE THE GESTURE ENGINE WHICH RUNS

16   ON THE DIAMONDTOUCH SYSTEM.

17           THERE IS NO SIMILAR DISCLOSURE FOR

18   MANDELBROT, DTLENS OR DTMOUSE.

19           THE REAL KICKER IS ACTUALLY BEHIND THE

20   BLUE SHEET HERE.  YOU HAVE THE DECLARATION OF

21   APPLE'S LAWYER IN A DIFFERENT MATTER, THE HTC

22   MATTER, AND THE REASON THAT THIS DECLARATION WAS

23   SUBMITTED ON REPLY IS THAT IN OPPOSING OUR MOTION,

24   SAMSUNG SAID, "OH, THERE'S NO PREJUDICE TO APPLE

25   BECAUSE APPLE HAS ALREADY DEPOSED THE INVENTORS OF

1    THESE THREE APPLICATIONS AND SO THEY KNOW ALL ABOUT

2    HOW THESE THREE APPLICATIONS WORK."

3             WHAT THEY DIDN'T TELL YOU IS THOSE

4    DEPOSITIONS WERE TAKEN IN THE HTC MATTER.  THEY

5    WERE TAKEN BY APPLE'S LAWYERS IN THE HTC MATTER.

6             THE COURT:  DIDN'T YOU JUST CONVINCE ME A

7    COUPLE DAYS AGO THAT REPLIES OUGHT NOT INCLUDE NEW

8    EVIDENCE?

9             MS. TUCHER:  THEY OUGHT NOT TO EXCEPT

10   WHERE IT'S DIRECTLY RESPONSIVE TO WHAT IS

11   INTRODUCED IN, IN THE OPPOSITION.

12            AND IF YOU'RE INCLINED NOT TO LOOK AT

13   THIS DECLARATION SPECIFICALLY, WHAT YOU CAN DO IS

14   LOOK AT THE EVIDENCE THAT SAMSUNG GAVE AND SEE THAT

15   IT'S THE HTC DEPONENTS.

16            BUT YOU MAY WANT TO KNOW THAT IN THE HTC

17   CASE IN DECEMBER, SAMSUNG ASSERTED 114 PAGES OF

18   CHARTS ON THESE THREE APPLICATIONS THAT WE

19   DIDN'T -- THAT WE CAN'T SEE, THAT APPLE CAN'T SEE.

20            THE COURT:  SO AS I UNDERSTAND THE

21   CIRCUMSTANCE HERE, THERE ARE THREE PARTICULAR

22   APPLICATIONS WHICH USE DIAMONDTOUCH WHICH WERE

23   NEVER DISCLOSED IN THE INVALIDITY CONTENTIONS.

24   CORRECT?

25            MS. TUCHER:  THAT'S RIGHT.

 1              THE COURT:  IT'S ALSO TRUE THAT THE

 2    DIAMONDTOUCH SYSTEM ITSELF WAS DISCLOSED, AND OTHER

 3    APPLICATIONS WHICH RELY UPON IT WERE INCLUDED IN

 4    YOUR CONTENTIONS.

 5              MS. TUCHER:  THAT'S RIGHT.

 6              THE COURT:  AND EXACTLY WHAT'S THE

 7    PROBLEM, OR WHAT'S YOUR CONCERN ABOUT THESE

 8    ADDITIONAL APPLICATIONS RELYING UPON THE SAME

 9    SYSTEM?  IS THERE ANYTHING MATERIAL ABOUT THE

10    APPLICATION'S PARTICULAR IMPLEMENTATION OF A SYSTEM

11    THAT'S RELEVANT TO ANY OF THE INVALIDITY ISSUES IN

12    DISPUTE?

13              MS. TUCHER:  YES.  THEY WANT TO USE THE

14    THREE APPLICATIONS AS INVALIDATING REFERENCES IN

15    DR. GRAY'S REPORT.

16              THE COURT:  OH, I GET THAT.  BUT IS --

17    MAYBE MY QUESTION IS A LITTLE MORE PEDESTRIAN.

18              ARE THERE ANY -- IS THERE ANYTHING IN

19    PARTICULAR ABOUT THOSE THREE NEW APPLICATIONS THAT

20    IS MATERIALLY DIFFERENT?  ARE ANY OF THE EXPERTS

21    GOING TO SPEAK TO IMPLEMENTATION DETAILS OR

22    FEATURES THAT ARE NOT DISCLOSED BY THAT EARLIER

23    REFERENCE TO THE UNDERLYING SYSTEM?

24              MS. TUCHER:  YES.  IT'S LIKE SAYING

25    HAVING DISCLOSED WORD, YOU SOMEHOW DISCLOSED EXCEL.

1    I MEAN, THEY RUN ON THE SAME COMPUTER, BUT THEY'RE

2    NOT THE SAME PRODUCT AND THEY DON'T OPERATE IN THE

3    SAME FASHION, AND HAVING DISCLOSED AND CHARTED ONE

4    ISN'T THE SAME AS HAVING DISCLOSED AND CHARTED THE

5    OTHER.

6         THE VERY FACT THAT IT TOOK 114 PAGES TO

7    CHART THE INFRINGEMENT CONTENTIONS WHEN THEY --

8    WHEN QUINN, EMANUEL, OPERATING ON BEHALF OF HTC,

9    DID WANT TO DISCLOSE USING THOSE THREE APPLICATIONS

10   AS INVALIDATING REFERENCES SHOWS WHAT WE SHOULD

11   HAVE GOTTEN HERE SO THAT WE COULD HAVE TAKEN

12   DEPOSITIONS HERE AND WE COULD HAVE EVALUATED HERE

13   AND PREPARED HERE AND HAD A RESPONSE HERE TO THAT

14   EVIDENCE.

15        BUT WE DON'T HAVE THOSE THINGS BECAUSE

16   THEY AREN'T IN THE CASE.

17        ALSO, I MENTIONED JUDGE KOH'S ORDER.

18   JUDGE KOH -- SAMSUNG DID MOVE TO AMEND THEIR

19   INVALIDITY CONTENTIONS TO INCLUDE SOMETHING CALLED

20   GLIMPSE, WHICH IS ANOTHER APPLICATION THAT RUNS ON

21   DIAMONDTOUCH, AND THAT'S PART OF THE ORDER THAT

22   JUDGE KOH DENIED THEM PERMISSION TO AMEND.

23        SO BY ANALOGY, THEY SHOULDN'T BE ALLOWED,

24   WITHOUT PERMISSION OF THE COURT, TO MAKE THAT

25   AMENDMENT NOW.

1            THE COURT:  ALL RIGHT.  SO AS TO EITHER

2     MR. OR DR. GRAY, YOU'RE SUGGESTING THAT I SIMPLY

3     STRIKE THE OFFENDING PARAGRAPHS AND ALLOW HIM TO

4     TESTIFY AS TO ALL THE OTHER THINGS IN HIS REPORT?

5            MS. TUCHER:  YES, YOUR HONOR.  AND WHAT

6     WE DID WAS TO HIGHLIGHT IN YELLOW HIS REPORT SO YOU

7     WOULD SEE EXACTLY WHAT WE MEANT.

8            MOVING ON TO DR. VAN DAM, HE IS SAMSUNG'S

9     INVALIDITY EXPERT ON THE '381 PATENT, THE RUBBER

10    BAND OR BOUNCE.

11           THIS IS A CASE WHERE THERE WERE HALF A

12    DOZEN REFERENCES WHICH WERE NOT IDENTIFIED OR

13    CHARTED WHICH SAMSUNG SAYS THEY CAN DO WITHOUT

14    BECAUSE THEY'RE JUST BACKGROUND REFERENCES.

15           IN TAB 2 I SHOW YOU WHY I DON'T THINK

16    THOSE ARE ADEQUATELY AND ACCURATELY DESCRIBED AS

17    BACKGROUND REFERENCES.

18           THE COURT:  WOULD IT BE OKAY TO INCLUDE

19    NEW REFERENCES AS BACKGROUND IF THAT WERE THE

20    FACTS?

21           MS. TUCHER:  YES.  IF THEY WERE INDEED

22    BACKGROUND REFERENCES, THAT WOULD BE FINE.

23           BUT YOU'LL SEE FROM THE LANGUAGE THAT'S

24    BLUE ON PAGE 18 BEHIND TAB 2 THAT THESE ARE

25    DESCRIBED AS PRIOR ART REFERENCES AND PRIOR ART

                                                      168

1    TEACHING, AND IT'S THOSE --

2              THE COURT:  ALL BACKGROUND MATERIALS ARE

3    PRIOR ART, RIGHT?  THE QUESTION IS, IS IT

4    INVALIDATING PRIOR ART?  RIGHT?

5              MS. TUCHER:  WELL, THE WAY -- YES, I

6    SUPPOSE IT'S POSSIBLE THAT BACKGROUND IS PRIOR ART,

7    ALTHOUGH IT NEEDN'T BE.

8              BUT THE WAY THESE ARE BEING DESCRIBED, WE

9    THINK IT'S BEING DESCRIBED AS INVALIDATING PRIOR

10   ART.

11             THE NEXT EXPERT FOR WHOM WE'VE MOVED TO

12   STRIKE PORTIONS OF HIS REPORT IS MR. VAN HERZEN.

13   HE'S THE INVALIDITY EXPERT ON THE '617 TOUCH SCREEN

14   HARDWARE PATENT.

15             THIS IS A CASE WHERE THE FIRST REFERENCE

16   IS TO A PATENT BY A MAN NAMED BLONDER THAT SAMSUNG

17   ACKNOWLEDGES IS NOT IN THEIR INVALIDITY

18   CONTENTIONS, AND SAMSUNG'S EXCUSE IS, "WELL, THAT'S

19   LEGITIMATE REBUTTAL BECAUSE WE DIDN'T KNOW WHAT A

20   VIRTUAL GROUND CHARGE AMPLIFIER WAS."

21             IT'S A PARTICULAR CIRCUIT THAT'S CLAIMED,

22   AND THERE'S A FIGURE OF IT IN THE PATENT, SO WE

23   FOUND THAT SORT OF INCREDIBLE.

24             BUT THEY SAY, "WE DIDN'T KNOW WHAT A

25   VIRTUAL GROUND CHARGE AMPLIFIER WAS UNTIL WE GOT

1    YOUR EXPERT REPORT, SO ONLY WHEN WE GOT YOUR EXPERT

2    REPORT DID WE KNOW WE NEEDED BLONDER AND SO IT'S

3    LEGITIMATE REBUTTAL AND THAT'S OUR EXCUSE."

4            THE PROBLEM WITH THAT, IF YOU LOOK AT TAB

5    3, IS THAT THE VAN HERZEN INVALIDITY REPORT WITH

6    THE BLONDER REFERENCE WAS SERVED ON MARCH 23RD AT

7    SEVEN SECONDS PAST MIDNIGHT, THAT'S THE DATE AND

8    TIME THAT'S HIGHLIGHTED IN BLUE, AND THE REPORT

9    THAT SUPPOSEDLY GAVE THEM THE NOTICE THAT TOLD THEM

10   THEY NEEDED THE BLONDER REFERENCE WAS SERVED NINE

11   MINUTES LATER AT 12:09:07.  THE MAHARBIZ REPORT WAS

12   ONE OF THE ONES INCLUDED IN THE TRANSMISSION OF THE

13   SECOND E-MAIL.

14           SO THAT SHOWS THAT SAMSUNG'S MAKING UP

15   EXCUSES THERE.

16           ALSO ON VAN HERZEN'S REPORT, VAN HERZEN

17   OPINES THAT THERE'S A DERIVATION DEFENSE.  THIS IS

18   AN ATTEMPT ON SAMSUNG'S PART TO BRING COPYING INTO

19   THE CASE.

20           THE PROBLEM IS THAT THE PATENT LOCAL

21   RULES ARE VERY EXPLICIT.  IF YOU WANT TO RAISE A

22   DERIVATION DEFENSE, YOU HAVE TO SAY THE NAME OF THE

23   PERSON AND THE CIRCUMSTANCES UNDER WHICH THE

24   DERIVATION OCCURRED.

25           THE COURT:  AND THAT DIDN'T HAPPEN HERE?

1          MS. TUCHER:  DIDN'T HAPPEN HERE.  NO

2    MENTION OF DERIVATION DEFENSE, NO NAMES, NO

3    CIRCUMSTANCES.

4          AND THE SAME EXPERT ALSO MAKES AN

5    INEQUITABLE CONDUCT ARGUMENT.  WE POINTED THAT OUT

6    AND ASKED TO STRIKE IT IN OUR MOTION AND THEY DID

7    NOT OPPOSE THAT, SO PERHAPS THEY HAVE CONCEDED

8    THAT, HAVING FAILED TO PLEAD INEQUITABLE CONDUCT,

9    THEY CANNOT RAISE THAT NOW IN THEIR EXPERT REPORTS

10   AT TRIAL.

11         THAT BRINGS US TO MR. JOHNSON.  HE IS THE

12   NON-INFRINGEMENT EXPERT ON THE '381 BOUNCE OR

13   RUBBER BAND PATENT.

14         APPLE HEARD FOR THE FIRST TIME A

15   NON-INFRINGEMENT POSITION ARTICULATED ON THIS

16   PATENT.  IT'S SOMETHING THEY CALL THE HOLD STILL

17   POSITION, THE HOLD STILL BEHAVIOR.

18         THE ATTEMPT ON SAMSUNG'S PART TO EXPLAIN

19   THAT THAT IS PROPERLY DISCLOSED IN THEIR

20   INTERROGATORY RESPONSES IS BEHIND TAB 4.

21         BEHIND TAB 4 THEY SAY THAT THE LIMITATION

22   THAT IS NOT PRACTICED BY THE HOLD STILL MATERIAL

23   HIGHLIGHTED IN BLUE IS TRANSLATING THE DOCUMENT IN

24   THE SECOND DIRECTION IN A DAMPED MOTION.

25         DAMPED MOTION IS PART OF THE DEPENDENT

1    CLAIM THAT WE'RE NO LONGER ASSERTING, SO THE

2    LANGUAGE IN BLUE IS COMPLETELY IRRELEVANT.

3          WHAT THE HOLD STILL BEHAVIOR IS ABOUT IS

4    NOT ABOUT DAMPED MOTION, IT'S ABOUT THE FACT THAT

5    WHEN YOU LIFT YOUR FINGER, INSTEAD OF SNAPPING

6    BACK, DUE TO SOME SOFTWARE GLITCH IN SOME

7    CIRCUMSTANCE, APPARENTLY SAMSUNG CONTENDS THE

8    PICTURE STICKS, IT DOESN'T MOVE.

9          IF THAT'S TRUE, THAT'S THE KIND OF THING

10   WE'D WANT OUR EXPERTS TO LOOK AT, THAT WE'D WANT

11   OUR EXPERTS TO OPINE ON, AND BY THE TIME WE FIRST

12   HEARD ABOUT THIS BEHAVIOR, OUR EXPERTS HAD ALREADY

13   FILED THEIR REPORTS AND EXPERT DISCOVERY -- IT WAS

14   WELL INTO EXPERT DISCOVERY.

15         WE DIDN'T HEAR IT ABOUT IT AT ALL ON FACT

16   DISCOVERY.

17         THE COURT:  DID YOUR EXPERTS OFFER, OR

18   EVEN ATTEMPT TO OFFER, A RESPONSE OR REBUTTAL IN

19   ANY KIND OF SUPPLEMENTAL REPORT?

20         MS. TUCHER:  NO, YOUR HONOR, BECAUSE

21   THEY'D ALREADY -- BECAUSE -- THIS WAS AN UNTIMELY

22   DISCLOSURE BECAUSE IT WASN'T SUPPORTED IN ANYTHING,

23   IN ANYTHING THAT WAS TIMELY DISCLOSED.

24         AND THEY HAD ALREADY -- THEY COULDN'T ADD

25   IT TO THEIR MAIN REPORTS BECAUSE THEIR MAIN REPORTS

1    HAD ALREADY BEEN SERVED.

2         VAN HERTZ ON THE '607 PATENT AGAIN, BUT

3    THIS TIME FOR A NON-INFRINGEMENT POSITION, SAMSUNG

4    OFFERS A COLLECTION OF NON-INFRINGEMENT POSITIONS

5    IN THEIR REBUTTAL REPORT THAT WE HEARD FOR THE

6    FIRST TIME.

7         FOR EXAMPLE, THEY SAY THAT WHERE THE

8    CLAIM LANGUAGE TALKS ABOUT TOUCH, DETECTING TOUCHES

9    OR NEAR TOUCHES, IT REALLY MEANS TOUCHES AND NEAR

10   TOUCHES, YOU HAVE TO BE ABLE TO FEEL BOTH, AND THEY

11   SAY "WE DON'T DO THAT AND SO WE DON'T INFRINGE."

12        THEY SAY THAT ONE OF THEIR PRODUCTS

13   DOESN'T HAVE CONDUCTIVE LINES THAT ARE TRANSVERSE

14   BECAUSE TRANSVERSE MEANS PERPENDICULAR.

15        I MEAN, ON THE MERITS WE DISAGREE WITH

16   THEM ON THESE THINGS, AND IF WE HAVE TO, WE'LL MEET

17   THEM ON THE MERITS, BUT WE SHOULDN'T HAVE TO

18   BECAUSE WE HEARD BOTH OF THESE ARGUMENTS FOR THE

19   FIRST TIME IN REBUTTAL EXPERT REPORTS.

20        THEY WERE NEVER DISCLOSED IN RESPONSE TO

21   OUR VERY EARLY CONTENTION INTERROGATORIES AND THEY

22   SHOULD HAVE BEEN SO THAT WE HAD A CHANCE TO DECIDE,

23   FOR EXAMPLE, TO DEPOSE PERSONS OF ORDINARY SKILL IN

24   THE ART AS TO HOW THEY UNDERSTOOD THESE TERMS, TO

25   RAISE THESE ISSUES IN CLAIM CONSTRUCTION IF WE

1    THOUGHT THEY NEEDED RAISING IN CLAIM CONSTRUCTION,

2    AND TO ADDRESS THEM IN OUR OWN EXPERT REPORTS WHICH

3    WE WEREN'T ABLE TO BECAUSE THEY'D ALREADY BEEN

4    SERVED.

5              THE COURT:  IN RESPONSE TO EITHER THAT

6    PARTICULAR SHORTCOMING OR OTHERS THAT YOU SEE OR

7    FEEL TOOK PLACE HERE, DID YOU PRESENT ANY PROPOSAL

8    TO SAMSUNG TO SAY, "LOOK, TO MITIGATE THE PREJUDICE

9    FROM WHAT YOU'VE DONE, I AT LEAST WANT TO BE ABLE

10   TO HAVE MY EXPERTS SPEAK TO THESE SUBJECTS"?  DID

11   YOU HAVE ANY DISCUSSION ON THAT?

12             MS. TUCHER:  WE DIDN'T PROPOSE THAT, YOUR

13   HONOR, BECAUSE WE BELIEVE THAT RULE 37(C) IS THE

14   APPROPRIATE SANCTION.

15             IF YOU LOOK -- BECAUSE THAT'S THE RULE

16   THAT SAYS IF YOU DON'T DISCLOSE DURING DISCOVERY,

17   YOU'VE GOT TO LIVE WITH WHAT YOU DON'T DISCLOSE.

18   YOU HAVE TO GO FORWARD ONLY ON WHAT YOU DO

19   DISCLOSE.

20             AND BECAUSE, IN PART ALSO, WE THINK IT'S

21   TOO LATE TO FULLY REMEDY AND THAT IT'S NOT -- IT

22   SHOULDN'T FALL ON APPLE TO PARTIALLY REMEDY THE

23   CIRCUMSTANCE WE FIND OURSELVES IN DUE TO SAMSUNG'S

24   SHORTCOMINGS.

25             SAMSUNG HAS PLENTY OF DEFENSES THAT WILL

1   SURVIVE.  WE'RE TALKING ABOUT THE ONES THAT THEY

2   BROUGHT IN TOO LATE THAT SHOULDN'T SURVIVE.

3           NON-INFRINGEMENT DEFENSE ON THE '915

4   PATENT, THIS IS GRAY.  IN HIS EXPERT REPORT, GRAY

5   SAID HE HAS A NON-INFRINGEMENT THEORY THAT APPLIES

6   TO SOME OF APPLE'S PRODUCTS.  HE DIDN'T SAY IN THE

7   REPORT WHICH ONES, SO WE ASKED HIM AT DEPOSITION,

8   ATTEMPTING TO REMEDY.  AT DEPOSITION, HE COULDN'T

9   TELL US WHICH ONES.

10          AFTER THE FACT, SEVERAL WEEKS AFTER THE

11  FACT, THEY GAVE US A LIST, BUT BY THAT TIME IT WAS

12  TOO LATE FOR OUR EXPERTS TO CONSIDER THE

13  INFORMATION AND TOO LATE FOR US TO BE CONFRONTING

14  GRAY ABOUT IT AND, FRANKLY, AS WE'RE SUBMITTING

15  EXHIBIT LISTS AND HAVING HAD TO MAKE CHOICES ABOUT

16  NARROWING OUR CLAIMS AND -- WE'RE VERY MUCH RUNNING

17  UP TO TRIAL, SO IT'S TOO LATE TO BE ADDRESSING

18  THOSE THINGS NOW.

19          THE COURT:  SO WHEN YOU DEPOSED MR. GRAY,

20  DID YOU ASK HIM ANYTHING ABOUT THOSE SUBJECTS?

21          MS. TUCHER:  OH, ABSOLUTELY.  WHEN WE

22  DEPOSED MR. GRAY, WE SAID, "IN YOUR EXPERT REPORT,

23  YOU SAY SOME OF APPLE'S PRODUCTS BEHAVE IN A

24  CERTAIN WAY.  WHICH APPLE PRODUCTS ARE YOU TALKING

25  ABOUT?"

1           HE SAID, "I CAN'T TELL YOU.  I DON'T

2     HAPPEN TO KNOW."

3           AND SAMSUNG'S EXCUSE IS, "YOU'RE TRYING

4     TO CONDUCT A MEMORY TEST."

5           IT WASN'T A MEMORY TEST.  IF IT HAD BEEN

6     IN HIS REPORT WE WOULD HAVE BEEN HAPPY TO SAY,

7     "LOOK AT YOUR REPORT.  LET'S TALK ABOUT THEM."

8           WE COULD HAVE BROUGHT THE PRODUCTS WITH

9     US AND SAID, "LET'S LOOK AT THE PRODUCTS AND HOW

10    THEY FUNCTION AND WHY YOU SAY WHAT YOU SAY ABOUT

11    THEM."

12          BUT WE DIDN'T KNOW WHAT PRODUCTS TO BRING

13    BECAUSE WE DIDN'T KNOW WHAT PRODUCTS HE WAS TALKING

14    ABOUT, AND EVEN WHEN WE SHOWED UP, HE COULDN'T TELL

15    US.

16          BEFORE I MOVE TO DESIGN PATENTS, I WANT

17    TO CEDE THE PODIUM TO MY COLLEAGUE, MR. SELWYN,

18    FROM WILMER, HALE WHO ALSO HAS SOME ISSUES TO TALK

19    ABOUT.

20          THE COURT:  ALL RIGHT.  THANK YOU.

21          MR. SELWYN, WELCOME, SIR.

22          MR. SELWYN:  THANK YOU.

23          GOOD AFTERNOON, YOUR HONOR.

24          THE COURT:  GOOD AFTERNOON.

25          MR. SELWYN:  YOUR HONOR, OUR MOTION TO

1    STRIKE IS DIRECTED TO THE INFRINGEMENT REPORTS OF

2    TWO OF SAMSUNG'S EXPERTS, AND OUR ISSUE IS NOT WITH

3    THE LEVEL OF DETAIL FOR THE PORTIONS THAT WE'RE

4    SEEKING TO STRIKE, BUT TO THE COMPLETE LACK OF

5    DISCLOSURE OF THE NEW THEORIES THAT ARE IN THESE

6    REPORTS.

7            AND WHAT I'M GOING TO TRY TO DO OVER THE

8    NEXT FEW MINUTES IS COMPARE FOR YOU THE DISCLOSURE

9    MADE IN THE INFRINGEMENT CONTENTIONS WITH THE

10    PARAGRAPHS THAT WE'RE ASKING YOUR HONOR TO STRIKE

11    FROM THESE TWO REPORTS.

12            BEGINNING FIRST WITH DR. YANG'S OPENING

13    EXPERT REPORT FOR THE '460 PATENT, SAMSUNG'S

14    INFRINGEMENT CONTENTIONS FOR THIS PATENT WERE BRIEF

15    AND THEY WERE SPECIFIC.

16            IN FACT, IF YOU TOTAL UP THE NARRATIVE IN

17    THE INFRINGEMENT CONTENTIONS, THEY ARE TEN LINES,

18    TEN SENTENCES THAT EXPLAIN, IN THEIR VIEW, WHY THE

19    ACCUSED DEVICES SATISFY THE ASSERTED CLAIM.

20            IF YOU COMPARE THOSE CONTENTIONS WITH

21    WHAT'S IN DR. YANG'S REPORT, YOU'LL SEE THAT WHAT'S

22    HAPPENING IS SAMSUNG IS TRYING TO ABANDON WHAT'S IN

23    ITS INFRINGEMENT CONTENTIONS AND SWAP IN NEW

24    THEORIES, AND THERE ARE THREE NEW THEORIES THAT I'D

25    LIKE TO FOCUS ON.

1        FIRST IS THAT IN THE INFRINGEMENT

2    CONTENTIONS, SAMSUNG DISCLOSED ONE THEORY OF

3    INFRINGEMENT THAT REQUIRED A SPECIFIC SERIES OF

4    STEPS TO EXECUTE THE CLAIMS.

5        DR. YANG ABANDONS THAT SPECIFIC SEQUENCE

6    IN HIS REPORT.  HE OFFERS NO INFRINGEMENT ARGUMENT

7    UNDER THAT SPECIFIC SEQUENCE AND INSTEAD ARGUES

8    THAT WHAT THE CLAIMS ARE REALLY ABOUT ARE THREE

9    CORE FUNCTIONS THAT CAN BE PERFORMED IN ANY ORDER.

10       THAT WAS A CONTENTION THAT CAN BE FOUND

11   NOWHERE IN THE INFRINGEMENT CONTENTIONS.

12       NOW, SAMSUNG SAYS THAT WHAT'S IN THE

13   INFRINGEMENT CONTENTIONS IS MERELY AN EXAMPLE.  THE

14   CLAIM CAN BE PERFORMED IN OTHER WAYS.

15       WELL, INFRINGEMENT CONTENTIONS ARE FOR

16   THE PURPOSE OF CRYSTALIZING -- THAT'S THE WORD --

17   YOUR INFRINGEMENT THEORY, AND IN ADDITION, THE

18   LOCAL RULE REQUIRES YOU TO SPECIFICALLY IDENTIFY

19   WHERE EACH LIMITATION IS FOUND.

20       SO THE INFRINGEMENT REPORT IS NOT THE

21   TIME TO SWAP IN ANY NEW THEORY.  IF SAMSUNG

22   BELIEVED THAT YOU DIDN'T HAVE TO FOLLOW A SPECIFIC

23   SEQUENCE, IT SHOULD HAVE APPLIED TO THE COURT TO

24   AMEND ITS INFRINGEMENT CONTENTIONS.

25       SECOND NEW THEORY.  THE '460 PATENT

1    REQUIRES BOTH SEQUENTIALLY DISPLAYING OTHER IMAGES

2    STORED IN A MEMORY THROUGH THE USE OF SCROLL KEYS.

3    IF YOU LOOK AT THE INFRINGEMENT CONTENTIONS, WHAT

4    SAMSUNG IDENTIFIED AS SCROLL KEYS ARE ARROW

5    BUTTONS, OKAY, SO THAT THOSE ARROW BUTTONS ARE WHAT

6    CORRESPOND TO SCROLL KEYS.

7              DR. YANG IN HIS REPORT NOW ARGUES THAT

8    WHAT CORRESPONDS TO THE SCROLL KEYS ARE SWIPING,

9    WHEN YOU SWIPE BETWEEN SCREENS.

10             THERE'S NOTHING IN THE INFRINGEMENT

11   CONTENTIONS THAT DISCLOSES SWIPING OR THAT EQUATES

12   SWIPING TO SCROLL KEYS.  IT'S JUST ABSENT.

13             AND APPLE WOULD HAVE NO WAY TO GUESS THAT

14   SAMSUNG WOULD TRY TO CONSIDER A SWIPE TO BE A

15   SCROLL KEY.

16             THIRD POINT WITH RESPECT TO THE '460

17   PATENT.  DR. YANG ASSERTS FOR THE FIRST TIME IN HIS

18   REPORT THAT THE ACCUSED DEVICES MEET THE CLAIM

19   LIMITATION OF PORTABLE PHONE MODE WHENEVER THEY

20   CAN, QUOTE, "CONTINUE TO RECEIVE A CALL OR FACETIME

21   REQUEST."

22             WHAT SAMSUNG CITES AS SUPPORT IN ITS

23   INFRINGEMENT CONTENTIONS FOR THAT IS A SCREEN SHOT

24   OF THE HOME SCREEN OF THE DEVICE.

25             WHAT IT -- IF YOU LOOK AT THE

1    INFRINGEMENT CONTENTIONS, IT INCLUDES THAT HOME

2    SCREEN FOR A DIFFERENT ELEMENT, FOR THE FIRST

3    ELEMENT.

4            THERE'S NO DISCLOSURE IN THE INFRINGEMENT

5    CONTENTIONS THAT THE HOME SCREEN IS WHAT

6    CORRESPONDS IN SAMSUNG'S VIEW TO THE PORTABLE PHONE

7    MODE LIMITATION.

8            SO THAT'S DR. YANG'S REPORT.

9            THE COURT:  MR. SELWYN, WHEN YOU ASKED,

10   AS I SUSPECT YOU DID, DR. YANG HOW TO RECONCILE

11   THIS NEW THEORY THAT YOU'RE DESCRIBING IN THE

12   CONTENTIONS, DID HE SAY?

13           MR. SELWYN:  HE SAYS THAT THE CLAIMS

14   DON'T REQUIRE THE LIMITATIONS TO BE PERFORMED IN A

15   CERTAIN ORDER, THAT UNDER RULES OF CLAIM

16   CONSTRUCTION, YOU CAN PERFORM THE LIMITATIONS IN

17   ANY ORDER.

18           THE COURT:  ABSENT A SPECIFIC DIRECTION

19   TO THE CONTRARY?

20           MR. SELWYN:  RIGHT.  AND THAT MAY BE TRUE

21   FOR PURPOSES OF CLAIM CONSTRUCTION, AND THAT'S

22   FINE.

23           BUT THIS IS NOT AN ISSUE OF CLAIM

24   CONSTRUCTION.  IT'S AN ISSUE OF WHAT HAS BEEN

25   DISCLOSED, AND WHAT WAS DISCLOSED WAS A SPECIFIC

1    SEQUENCE AND ONLY ONE SPECIFIC SEQUENCE.

2              UNLESS YOU MOVE TO AMEND, THAT IS THE

3    THEORY THAT YOU SHOULD BE STUCK WITH.

4              MOVING ON TO APPLE'S MOTION TO STRIKE

5    PORTIONS OF DR. WILLIAMS' INFRINGEMENT EXPERT

6    REPORT RELATING TO THE '516 PATENT.

7              SO BY WAY OF VERY SHORT BACKGROUND, THE

8    CLAIMS OF THIS PATENT REQUIRE, QUOTE, "A FIRST

9    CHANNEL NOT SUPPORTING HARQ AND A SECOND CHANNEL

10   SUPPORTING HARQ."

11             SO THE ISSUE IS, WHAT HAS BEEN DISCLOSED

12   IN THE INFRINGEMENT CONTENTIONS AS THE FIRST

13   CHANNEL NOT SUPPORTING HARQ?

14             AND WHAT DR. WILLIAMS TRIES TO DO IN HIS

15   INFRINGEMENT REPORT IS TO CHANGE SAMSUNG'S

16   IDENTIFICATION OF THE STRUCTURE CORRESPONDING TO

17   THAT FIRST CHANNEL.

18             SO IF YOU LOOK AT THE INFRINGEMENT

19   CONTENTIONS, AND IT'S EXHIBIT 22 OF THE PERNICK

20   DECLARATION THAT'S IN YOUR HONOR'S BINDER, YOU'LL

21   SEE THAT AFTER RECITING THE CLAIM LANGUAGE OF A

22   FIRST CHANNEL NOT SUPPORTING HARQ AND A SECOND

23   CHANNEL SUPPORTING HARQ, SAMSUNG INCLUDES A SINGLE

24   SENTENCE WHERE THEY IDENTIFY WHAT THEY SAY IS THE

25   CORRESPONDING STRUCTURE, AND THEY SAY THAT E-DPDCH

1     CHANNELS OF THE ACCUSED DEVICES SUPPORT HARQ, WHILE

2     THE DPDCH CHANNELS DO NOT.

3              THAT'S ALL SAMSUNG IDENTIFIED AS THE

4     STRUCTURE IN THE ACCUSED DEVICES THAT ALLEGEDLY

5     MEET THESE CLAIM ELEMENTS.

6              AND IN FACT, THAT'S ALL SAMSUNG

7     IDENTIFIED AT ANY POINT IN THE CASE UNTIL SAMSUNG

8     SERVED ITS EXPERT REPORT ON MARCH 22ND AS

9     CORRESPONDING TO THOSE CLAIM LIMITATIONS.

10             SO THERE'S NO DISPUTE THAT THROUGHOUT THE

11    LITIGATION, UNTIL WE RECEIVED THE EXPERT REPORT,

12    SAMSUNG'S POSITION WAS THAT THE FIRST CHANNEL NOT

13    SUPPORTING HARQ IS THE DPDCH CHANNEL, FULL STOP.

14             THE COURT:  CAN I ASK YOU, MR. SELWYN,

15    LET'S ASSUME FOR THE MOMENT I CREDIT SAMSUNG'S

16    EXPLANATION AND THESE RECITATIONS IN THE

17    CONTENTIONS, RECITATIONS IN DR. YANG'S -- I'M

18    SORRY -- RECITATIONS RELATING TO DR. YANG'S REPORT,

19    THESE WERE ALL EXEMPLARY.  LET'S ASSUME I CREDIT

20    THAT.

21             WOULD YOU CONCEDE OR WOULD YOU AGREE THAT

22    UNDER OUR LOCAL RULES, ONE IS PERMITTED TO OFFER

23    EXEMPLARY SUPPORTING STRUCTURES, FOR EXAMPLE?

24             OR DOES THE RULE IMPOSE A MORE EXACTING

25    STANDARD?

1          MR. SELWYN:  IF A -- FOR EXAMPLE, IF ONE

2     WERE TO DISCLOSE A GENUS AND INDICATE THAT THERE

3     COULD BE A VARIETY OF SPECIES UNDER THAT THAT

4     SATISFIED THE LIMITATION, THAT MAY BE ONE WAY OF

5     OFFERING AN EXEMPLARY.

6          BUT HERE IT'S QUITE DIFFERENT BECAUSE

7     WHAT HAS BEEN IDENTIFIED IS A SPECIFIC STRUCTURE IN

8     THE INFRINGEMENT CONTENTIONS WITH NO SUGGESTION

9     THAT IT IS EXEMPLARY.  YOU WON'T FIND THE WORDS

10    "ILLUSTRATIVE," "E.G.," "THIS IS AN EXAMPLE,"

11    ANYTHING LIKE THAT IN THE INFRINGEMENT CONTENTIONS.

12         THEY IDENTIFIED A SPECIFIC STRUCTURE, AND

13    WE SAY, "WELL, YOU KNOW, THE LOCAL RULES REQUIRE

14    YOU TO CRYSTALIZE YOUR THEORIES.  THAT'S YOUR

15    THEORY.  IF YOU HAD AN ISSUE WITH IT BEFORE YOUR

16    INFRINGEMENT REPORT, GO TO YOUR HONOR AND EXPLAIN

17    WHY YOU SHOULD BE ENTITLED TO AMEND THAT

18    CONTENTION."

19         JUST VERY BRIEFLY TO ADDRESS WHAT

20    DR. WILLIAMS SAYS IS THE CORRESPONDING STRUCTURE,

21    SO HE HAS CHANGED THE IDENTITY OF THE FIRST CHANNEL

22    NOT SUPPORTING HARQ FROM THE DPDCH CHANNEL TO THREE

23    OTHER ADDITIONAL CONTROL CHANNELS, AND I'LL SPARE

24    MENTIONING THE ABBREVIATIONS FOR THOSE, BUT NOW

25    HE'S GOT FOUR STRUCTURES THAT CAN SATISFY THIS.

1           SO FOR THE FIRST TIME IN DR. WILLIAMS'

2    REPORT, WE SEE THESE NEW STRUCTURES IDENTIFIED.

3           SAMSUNG SAYS, AS YOUR HONOR NOTED, THAT

4    THIS IS JUST AN EXAMPLE.

5           I'D ASK THE COURT TO LOOK AT THE

6    DISCLOSURE IN THE INFRINGEMENT CONTENTIONS AND SEE

7    IF THERE'S ANY INDICATION BY THE PLAIN WORDS OF

8    WHAT SAMSUNG DISCLOSED THAT THEY INTENDED IT TO BE

9    JUST AN EXAMPLE.

10          THEY ALSO SAY THAT THEY DISCLOSED A

11   FIGURE FROM THE STANDARD WHERE YOU CAN SEE THE

12   OTHER CHANNELS IDENTIFIED, AND THAT MUCH IS TRUE.

13   THEY DO HAVE A FIGURE FROM THE STANDARD.

14          THE PROBLEM WITH THAT, OF COURSE, IS THAT

15   BY IDENTIFYING THE FIGURE WITH MULTIPLE CHANNELS

16   AND THEN, IN THEIR NARRATIVE, IDENTIFYING THE

17   SPECIFIC CHANNEL THAT THEY SAY MEETS THIS

18   LIMITATION, ONE MAKES THE OPPOSITE CONCLUSION, THAT

19   THEY WERE LIMITING THEMSELVES TO THE ONE SPECIFIC

20   CHANNEL THAT THEY IDENTIFIED IN THEIR CONTENTIONS.

21          (DISCUSSION OFF THE RECORD BETWEEN

22   MR. SELWYN AND MR. LEE.)

23          MR. SELWYN:  JUST TO CLARIFY SO I'M NOT

24   CONFUSING, IN DR. WILLIAMS' REPORT, HE DID NOT USE

25   THE WORD -- I'M SORRY -- IN THE INFRINGEMENT

1    CONTENTIONS CORRESPONDING TO THE '516, THERE'S NO

2    SUGGESTION THAT'S AN EXAMPLE OR THE WORDS "E.G."

3    ARE USED.

4             IN THE INFRINGEMENT CONTENTIONS FOR THE

5    '460, THE WORD "E.G." IS USED.

6             BUT I WOULD SUGGEST THAT YOU CAN'T JUST

7    USE "E.G." TO OPEN UP AN ENTIRELY NEW THEORY.

8             THE COURT:  RIGHT.

9             MR. SELWYN:  AND THAT'S WHAT'S BEEN DONE

10   HERE.

11            THE COURT:  AND THAT REALLY RELATES TO MY

12   EARLIER QUESTION, WHICH IS I DON'T BELIEVE THAT

13   YOU'RE CONCEDING THAT EXEMPLARY LANGUAGE IS

14   SUFFICIENT UNDER OUR LOCAL RULE.

15            MR. SELWYN:  NO, ABSOLUTELY NOT, BECAUSE

16   IF YOU WERE TO DO THAT, THEN --

17            THE COURT:  WHAT WOULD BE THE POINT?

18            MR. SELWYN:  -- THAT DEFEATS THE POINT OF

19   HAVING INFRINGEMENT CONTENTIONS IN THE FIRST PLACE.

20   YOU COULD JUST SAY E.G. AND THEN BRING IN AN

21   ENTIRELY NEW THEORY.

22            AND IF YOUR HONOR HAS NO FURTHER

23   QUESTIONS, I WILL GIVE BACK THE FLOOR TO MY

24   COLLEAGUE.

25            THE COURT:  ALL RIGHT.  THANK YOU,

1    MR. SELWYN.

2              MS. TUCHER, ANY FURTHER REMARKS?

3              I'M JUST GOING TO NOTE HERE, BY THE WAY,

4    WE ARE LIMITED IN TIME HERE.

5              I DON'T WANT TO PREJUDICE SAMSUNG'S RIGHT

6    TO BE HEARD ON ITS PAPERS.

7              WITH FULL APOLOGIES, WE'LL GO AS LATE AS

8    12:45, BUT I DO NEED TO GIVE MY REPORTER A BREAK IF

9    YOU ALL WANT TO BE DULY NOTED IN THE AFTERNOON.

10             SO I'LL HEAR ONE FURTHER POINT FROM YOU,

11   MS. TUCHER, ON BEHALF OF APPLE, AND THEN I REALLY

12   DO, SINCE THIS WAS RAISED IN YOUR OPPOSITION, NEED

13   TO TURN TO THE SAMSUNG MOTIONS.

14             MS. TUCHER:  OKAY.  THEN I'D LIKE TO TALK

15   ABOUT THE LUCENTE AND SHERMAN REPORTS AND THE PRIOR

16   ART THAT THEY DISCUSSED, BOTH AGAINST OUR DESIGN

17   PATENTS AND AGAINST OUR TRADE DRESS CASE.

18             AS AGAINST THE TRADE DRESS CASE, THE

19   ISSUE IS DISTINCTIVENESS OF APPLE'S PRODUCTS.  WE

20   SERVED AN EARLY CONTENTION INTERROGATORY IN AUGUST

21   OF 2011 SEEKING THEIR CONTENTIONS.

22             THE ONLY RESPONSE WE GOT WAS CITING TO

23   THE ANSWER AND UNNAMED SMARTPHONES AND TABLETS.

24   THEY NEVER SUPPLEMENTED THAT RESPONSE.  THAT'S ALL

25   WE GOT UNTIL EXPERT REPORTS.

1        CLEARLY SAMSUNG'S VIEW IS IF YOU HEAR IT

2   IN EXPERT REPORTS, THAT'S SOON ENOUGH, BUT THAT

3   COMPLETELY DEPRIVES APPLE OF THE RIGHT TO USE FACT

4   DISCOVERY AS A PERIOD TO DEVELOP OUR CASE.

5        ON DESIGN, THE RECORD IS ALMOST AS BAD,

6   BUT NOT QUITE.  IN THE DESIGN CONTEXT, OF COURSE,

7   WE HAD THE P.I., SO IN THE DESIGN CONTEXT, WE HAVE

8   A DECLARATION FROM MR. SHERMAN THAT HAS SOME

9   INVALIDITY THEORIES IN IT, AND WE CREDITED EVERY

10  SINGLE ONE OF THEM.

11       WE DIDN'T SAY, "WELL, IF IT'S NOT IN AN

12  INTERROGATORY RESPONSE, IT DOESN'T COUNT."

13       BUT WHERE WE DIDN'T GET IT IN AN

14  INTERROGATORY RESPONSE AND WE DIDN'T GET IT IN THE

15  SHERMAN REPORT, THEN IT DOESN'T COUNT BECAUSE WE

16  DIDN'T SEE IT.

17       SO ALL OF THOSE SHOULD BE STRUCK.

18       NOW, SAMSUNG HAS ONE RESPONSE TO THAT

19  THAT IS WHOLLY INADEQUATE, AND THAT IS TO SAY,

20  "WELL, WE DID GIVE YOU A RULE 33(D) DISCLOSURE OF

21  6,000 DOCUMENTS, SO THAT SHOULD BE ENOUGH."

22       BESIDES THE FACT THAT 6,000 DOCUMENTS IS,

23  YOU KNOW, A MOUNTAIN OF THINGS TO SIFT THROUGH,

24  THAT DOESN'T TELL US WHAT'S IN THEIR HEAD AND WHAT

25  THEY ACTUALLY CONTEND, WHAT THEY INTEND TO

1    DESIGNATE AS A PRIMARY REFERENCE, WHICH AS YOU KNOW

2    FROM EGYPTIAN GODDESS IS THE FIRST THING YOU DO,

3    LET ALONE WHAT YOU'RE GOING TO COMBINE IT WITH.

4              IT DOESN'T TELL US WHAT TO FOCUS ON, AND

5    IT'S ONLY A SMALL PORTION OF THE DISPUTED

6    REFERENCES.

7              SO, FOR EXAMPLE, IN LUCENTE'S REPORT,

8    THERE WERE 78 PRIOR ART REFERENCES.  NINE OF THEM

9    WERE BURIED IN THOSE 6,000 PAGES, BUT THE OTHERS

10   WERE NOT.

11             IN SHERMAN'S REPORT, THERE ARE 36 PRIOR

12   ART REFERENCES, OR ALLEGEDLY PRIOR ART REFERENCES.

13   11 OF THOSE WERE BURIED IN THE 33(D) DISCLOSURES,

14   BUT THE REST WERE NOT.

15             AND TO GIVE YOU ONE EXAMPLE OF A

16   REFERENCE THAT WAS NOT, THE NOKIA FINGERPRINT,

17   WHICH APPARENTLY IS ASSOCIATED WITH A MAN CALLED

18   VILAS-BOAS, WAS NOT IN THE 33(D) DISCLOSURE, WAS

19   NEVER IN AN INTERROGATORY RESPONSE.

20             THEY DID AT SOME POINT GIVE US A

21   DECLARATION BY HIM WHICH THEY -- THEY MUST HAVE

22   KNOWN ABOUT HIM IN DECEMBER BECAUSE BY THE 6TH OF

23   JANUARY THEY'VE GOT HIM EXECUTING A DECLARATION.

24             IN FEBRUARY THEY FINALLY GIVE US THAT

25   DECLARATION ALONG WITH THE REFERENCE BURIED IN THE

1    THOUSANDS OF PAGES, BUT WE DON'T KNOW TO LOOK FOR

2    IT.

3            SO THEY NOTICE HIS DEPOSITION IN LONDON.

4    WE DON'T KNOW WHO HE IS.  WE SENT SOME -- WE GOT

5    THREE DAYS' NOTICE AND WE DON'T KNOW THE

6    SIGNIFICANCE OF IT.  WE DON'T KNOW IT'S GOING TO BE

7    A MAJOR PRIOR ART REFERENCE.  THEY DON'T DISCLOSE

8    THAT UNTIL AFTER DISCOVERY HAS CLOSED ON THE 19TH

9    AS WE WERE PUTTING THE FINISHING TOUCHES ON OUR

10   EXPERT REPORTS.

11           SO THAT'S AN EXAMPLE OF JUST ONE OF THE

12   SCORES OF EXAMPLES OF PRIOR ART THAT THEY RELIED ON

13   FOR ANTICIPATION AND OBVIOUSNESS THEORIES THAT WE

14   DON'T THINK ARE PROPERLY IN THE CASE.

15           THE COURT:  ALL RIGHT.  THANK YOU VERY

16   MUCH.

17           MS. MAROULIS, ANY OPPOSITION?  I SUSPECT

18   I KNOW THE ANSWER, BUT WHY DON'T YOU COME UP?

19           MS. MAROULIS:  YES, YOUR HONOR.

20           AND IN THE INTEREST OF TIME, I'M GOING TO

21   REFER YOU SOMETIMES TO THE PAPERS THEMSELVES --

22           THE COURT:  PERFECT.

23           MS. MAROULIS:  -- BUT THERE WERE A NUMBER

24   OF STATEMENTS MADE THAT I NEED TO CORRECT.

25           TO START WITH, WE HAVE TO HAVE A PROPER

1    FRAMEWORK, AND THAT IS, WAS THERE NOTICE TO APPLE

2    OF SAMSUNG'S THEORIES; AND SECONDLY, WAS APPLE

3    PREJUDICED?

4            AND THE ANSWER TO BOTH OF THEM IS, YES,

5    THERE WAS NOTICE FROM OUR CONTENTIONS,

6    INTERROGATORIES AND OTHER LITIGATION MOTION

7    PRACTICE AND CORRESPONDENCE; AND NO --

8            THE COURT:  AND YOU ARE URGING THOSE

9    EXACT SAME STANDARDS BE APPLIED WITH RESPECT TO

10   YOUR MOTION; CORRECT?

11           MS. MAROULIS:  WELL, YOUR HONOR, THAT

12   THOUGHT STRUCK ME AS I WAS PREPARING FOR THESE

13   MOTIONS.

14           THE COURT:  I HOPE SO.  SO WHAT'S YOUR

15   ANSWER?

16           MS. MAROULIS:  AND THE STANDARD SHOULD BE

17   THE SAME FOR BOTH PARTIES.

18           FOR EXAMPLE, WHEN APPLE SAYS IN THEIR

19   OPPOSITION TO OUR MOTION THAT EACH AND EVERY DETAIL

20   THAT COULD POSSIBLY EXIST IN THE UNIVERSE OF FACTS

21   DOES NOT NEED TO BE DISCLOSED IN A CONTENTION

22   INTERROGATORY, THAT APPLIES EQUALLY TO US, TO

23   SAMSUNG.

24           SO USING THAT OVERARCHING PERSPECTIVE,

25   AND ALSO THE FACT THAT THE COURTS HAVE INTERESTS IN

                                          190

1    RESOLVING CASES ON THE MERITS AS OPPOSED TO

2    BLOCKING DISCOVERY AND EXPERT TESTIMONY FROM COMING

3    IN, WE TURN TO THE SPECIFIC POINTS MADE BY APPLE.

4            FIRST THEY ADDRESS THE DIAMONDTOUCH.

5    DIAMONDTOUCH IS A SYSTEM THAT WAS THOROUGHLY

6    CHARTED BY US IN THE INVALIDITY CONTENTIONS.

7            IN ADDITION TO THAT, WE PRODUCED SOURCE

8    CODE.  APPLE HAD A CHANCE TO EXAMINE THE SYSTEM

9    ITSELF AND APPLE HAD A CHANCE AND DID DEPOSE

10   SEVERAL OF THE INVENTORS OF THE DIAMONDTOUCH,

11   EMPLOYEES OF THE COMPANY MERL.

12           THERE WAS A SUGGESTION THAT IT WAS IN A

13   DIFFERENT CASE AND NOT THIS CASE, BUT WE HAVE

14   CORRESPONDENCE WITH MORRISON & FOERSTER, APPLE'S

15   COUNSEL HERE, PROVING THAT THERE WAS A DECISION

16   BETWEEN PARTIES TO MAKE THESE DEPOSITIONS

17   ADMISSIBLE IN THIS CASE.

18           SO IT NOT ONLY WAS TOTALLY DISCLOSED IN

19   THE INVALIDITY CONTENTIONS, THEY HAD AN OPPORTUNITY

20   TO QUESTION WITNESSES AT DEPOSITION AND THEY DID.

21           SPECIFICALLY WITH RESPECT TO MANDELBROT

22   AND OTHER APPLICATIONS DISCUSSED IN OUR PAPERS,

23   WHEN YOU LOOK AT THIS SYSTEM, THE DIAMONDTOUCH,

24   WHICH THEY DID INSPECT -- AND YOUR HONOR MAY

25   REMEMBER THAT BECAUSE THERE WAS A DISCOVERY DISPUTE

1    AS TO WHETHER WE COULD GET THEIR WORK PRODUCT,

2    THEIR VIDEOTAPE OF THIS.

3              THE COURT:  I RECALL.

4              MS. MAROULIS:  SO THEY EXPLORED IT IN

5    GREAT DETAIL.  THEY TOOK SOME INFORMATION FROM IT.

6              IF YOU LOOK AT THIS SYSTEM AND YOU OPEN

7    IT UP, IT GIVES YOU A HIERARCHICAL DIRECTORY, AND

8    BECAUSE IT'S THIRD PARTY CONFIDENTIAL INFORMATION I

9    CAN'T GO INTO DETAIL, BUT YOU WILL SEE THAT THOSE

10   APPLICATIONS THAT THEY SAY WERE NEVER DISCLOSED

11   APPEAR RIGHT IN THE DIRECTORY, RIGHT IN THE

12   DIRECTORY WHEN YOU OPEN IT UP.

13             YOUR HONOR HAD ANOTHER QUESTION, WHICH

14   IS, IS THE GOOGLE EARTH APPLICATION THERE DIFFERENT

15   FROM MANDELBROT, AND THE ANSWER IS NOT

16   FUNCTIONALLY, NOT FOR PURPOSES OF THIS PATENT.

17             SO WE DID DISCLOSE DIAMONDTOUCH AND THEY

18   HAD AN OPPORTUNITY TO DEPOSE AND AN OPPORTUNITY TO

19   EXPLORE IT IN GREAT DETAIL.

20             WITH RESPECT TO THE VAN DAM REFERENCES,

21   THOSE ARE INDEED CITED IN THE BACKGROUND.  THEY'RE

22   NOT CITED AS INVALIDATING REFERENCES, AND THE

23   REASON APPLE COUNSEL TOOK A POSITION THAT IT

24   DOESN'T HAVE TO BE DISCLOSED EARLY IS BECAUSE, OF

25   COURSE, THEY'RE FACING THE SAME ISSUE ON THE

1    GIVARGIS EXPERT REPORT ON OUR MOTION.

2         SO --

3         THE COURT:  I NOTICED THAT, TOO.  SO YOU

4    WOULD AGREE THAT AS TO THAT REFERENCE -- WELL, CAN

5    YOU JUST GO AHEAD AND REPRESENT RIGHT NOW THAT

6    YOU'RE NOT GOING TO RELY UPON THAT REFERENCE AS 102

7    OR 103 ART?

8         MS. MAROULIS:  WE'RE NOT RELYING ON THE

9    REFERENCES IN VAN DAM THAT ARE CHALLENGED HERE AS

10   102 OR 103 ART AND THERE IS NO ISSUE.

11        WITH RESPECT TO VAN HERZEN REPORTS, YOU

12   WILL RECALL ALSO, YOUR HONOR, THAT WE HAVE A MOTION

13   TO EXCLUDE THE REPORT ON MAHARBIZ WHO ALSO OPINED

14   ON THE '607 PATENT BECAUSE HE FAILED TO ADEQUATELY

15   DISCLOSE THE VIRTUAL GROUND AMPLIFIER, CHARGE

16   AMPLIFIER, AND THEIR MOTION RELATES TO THE SAME

17   VERY ISSUE.

18        BECAUSE THEIR CONTENTIONS WERE SO

19   VAGUE -- WHAT THEIR CONTENTIONS SAID IN EFFECT WAS,

20   "THERE'S SOME CIRCUITRY THERE, BUT WE DON'T KNOW

21   WHAT IT IS.  IT'S GOING TO BE REVEALED LATER BY

22   DISCOVERY," BUT THEY NEVER WENT AHEAD AND

23   SUPPLEMENTED THAT OR LET US KNOW IN ANY WAY WHAT IT

24   IS THEY MEAN BY THE AMPLIFIER.

25        SO WHEN WE GOT DR. MAHARBIZ'S REPORT, FOR

1    THE VERY FIRST TIME WE SAW THAT HE WAS REFERRING TO

2    FIGURE 13 OF THE PATENT AND WE SAID, "AH-HAH,

3    THAT'S WHAT YOU MEANT."

4         THEY'RE POINTING TO THE FACT THAT WE

5    SERVED THE REPORTS SIMULTANEOUSLY, AND

6    DR. VAN HERZEN INDEED WAS SITTING THERE PUZZLING

7    OVER WHAT IT IS THAT THEY MEANT, SO HE CITED

8    BLONDER ON A HUNCH, WHICH PROVED CORRECT, AND

9    THEREAFTER HE FOUND SOME OTHER REFERENCES THAT WERE

10   SUBMITTED IN THE SUPPLEMENTAL REPORT.

11        BUT THE REASON FOR VAN HERZEN'S BLONDER

12   DISCLOSURE GOES DIRECTLY TO APPLE'S REPRESENTATION

13   OF THEIR INFRINGEMENT CONTENTION, OUR INABILITY TO

14   DERIVE WHAT EXACTLY THEY MEANT BY THAT.

15        WITH RESPECT TO DERIVATION DEFENSE, YOUR

16   HONOR, A DERIVATION DEFENSE IS SOMETHING THAT THEY

17   CANNOT PROVE WITHOUT THIRD PARTY DISCOVERY BECAUSE

18   YOU HAVE TO SHOW THAT THE INVENTORS KNEW THAT

19   SOMEONE ELSE HAD PRIOR ART AND TOOK IT FROM THEM,

20   ESSENTIALLY MISAPPROPRIATED, SO NOT UNTIL WE WERE

21   ABLE TO COMPLETE THE THIRD PARTY DISCOVERY WITH

22   RESPECT TO SMARTSKIN, THE PRIOR ART PRODUCT --

23        THE COURT:  HOW DO YOU SQUARE THAT WITH

24   OUR LOCAL RULES WHICH ARE CONTEMPLATING MUCH

25   EARLIER DISCLOSURE?

 1          MS. MAROULIS:  YOUR HONOR, THE LOCAL

 2     RULES REQUIRE EARLY DISCLOSURE, BUT IF YOU DON'T

 3     KNOW THAT INFORMATION AT THE TIME, YOU CAN'T HAVE

 4     IT, AND IN THIS CASE, YOUR HONOR, WE DID NOT HAVE

 5     THAT INFORMATION UNTIL THE VERY END OF THE

 6     DISCOVERY PERIOD.

 7          THE COURT:  SO DON'T THE LOCAL RULES ALSO

 8     PROVIDE THAT IN THAT EXACT SCENARIO, THE

 9     APPROPRIATE REMEDY IS TO SEEK RELIEF TO AMEND?

10          MS. MAROULIS:  YES, YOUR HONOR.  WE'RE SO

11     CLOSE TO TRIAL THAT IT WAS LIKELY IMPRACTICAL.  WE

12     DID SEEK LEAVE TO AMEND ON SEVERAL OTHER ISSUES

13     WHICH, BY THE WAY, HAVE NOTHING TO DO WITH THIS

14     MOTION AND COUNSEL IMPROPERLY BROUGHT IT IN, BUT

15     THAT TOOK THE COURT A COUPLE OF MONTHS TO DECIDE

16     BECAUSE THE COURT IS VERY BUSY.

17          SO THE SITUATION HERE IS THAT THE

18     DERIVATION DEFENSE WAS EXPRESSED IN OUR PLEADINGS

19     AS SOON AS WE HAD THE INFORMATION.

20          WITH RESPECT TO -- AND YOUR HONOR, IF YOU

21     HAVE ANY QUESTIONS, PLEASE INTERRUPT ME BECAUSE I'M

22     GOING VERY FAST.

23          THE COURT:  YOU CAN GO ON.

24          MS. MAROULIS:  WITH RESPECT TO

25     MR. JOHNSON'S NON-INFRINGEMENT THEORY, THERE'S NO

1     REQUIREMENT THAT THE SCIENTIST OR THE EXPERT'S

2     LANGUAGE IN HIS REPORT MIRROR EXACTLY THE

3     INTERROGATORY RESPONSES.  IT HAS TO BE THE SAME

4     CONTENT, BUT IT DOES NOT HAVE TO BE THE EXACT SAME

5     RESPONSES.

6             THE HOLD STILL BEHAVIOR IS NOTHING MORE

7     THAN SOMETHING THAT WAS EXPRESSED IN INTERROGATORY

8     2 RESPONSE, WHICH IS WHEN YOU SLIDE THE DOCUMENT TO

9     THE EDGE AND THEN IT BOUNCES BACK, THE PATENT

10    REQUIRES FIRST DIRECTION, SECOND DIRECTION.

11            IN OUR RESPONSE TO INTERROGATORY, WE SAID

12    OUR DEVICES, SOME OF THEM WERE MISSING THAT SECOND

13    DIRECTION.

14            SO HOLD STILL IS WHEN THAT SECOND

15    DIRECTION GETS STUCK, AS MS. TUCHER POINTED OUT, SO

16    IT DOESN'T GO FURTHER.  SO THAT'S JUST ANOTHER WAY

17    TO EXPRESS HOLD STILL IS TO SAY IT DOESN'T GO BACK

18    IN THE SECOND DIRECTION.

19            SO JUST BECAUSE THOSE TWO WORDS DON'T

20    APPEAR IN HIS -- IN OUR PRIOR RESPONSE DOES NOT

21    MEAN THE THEORY WAS NOT EXPRESSED.

22            AND OF COURSE IT'S COMPLETELY HARMLESS

23    BECAUSE APPLE HAD AN OPPORTUNITY TO DEPOSE HIM, DID

24    DEPOSE HIM, AND CHOSE STRATEGICALLY NOT TO QUESTION

25    HIM.

1          HE ACTUALLY VOLUNTEERED A COUPLE OF TIMES

2     BECAUSE IT CAME UP WITH SOME OTHER ISSUE AND THEY

3     COULD HAVE CLEARLY FOLLOWED UP ON THAT.  IT WAS NOT

4     A TWO HOUR DEPOSITION.  IT WAS A FULL EXPERT

5     DEPOSITION AND THEY DID NOT HAVE ANY ISSUES

6     PREVENTING THEM FROM GOING INTO IT.

7          TURNING TO THE SECOND VAN HERZEN REPORT

8     WITH RESPECT TO NON-INFRINGEMENT, THEY FAULT

9     DR. VAN HERZEN FOR DISCUSSING A CERTAIN THEORY WITH

10    RESPECT TO TAB 7.0.

11         IT SHOULD BEAR MENTION THAT THEIR OWN

12    INFRINGEMENT CONTENTIONS DO NOT DISCUSS SAMSUNG

13    7.0.  THEY ONLY CHART AS TO 10.1.  SO THAT TAB IS

14    NOT IN THEIR INFRINGEMENT CONTENTIONS AND WE DID

15    NOT HAVE A CHANCE TO ADDRESS IT.

16         WITH RESPECT AGAIN TO DR. GRAY -- SOME OF

17    THESE EXPERTS ARE CHALLENGED TWICE -- SO

18    DR. GRAY --

19         THE COURT:  JUST ON THAT POINT,

20    MS. MAROULIS --

21         MS. MAROULIS:  YES.

22         THE COURT:  -- I WANT TO MAKE SURE I

23    FOLLOW IT.

24         IS THE TAB 7.0 AN ACCUSED PRODUCT IN THIS

25    CASE, OR NOT?

1          MS. MAROULIS:  IT IS.  I DON'T KNOW WHICH

2     PATENTS, SO IF IT'S IMPORTANT FOR YOUR HONOR, I

3     NEED TO CONSULT.

4          YES, YOUR HONOR, IT IS AS TO '607.

5          AND IF YOUR QUESTION IS, WELL, WHY DIDN'T

6     WE MOVE TO STRIKE THEIR CONTENTIONS, WE HAD TO BE

7     JUDICIOUS --

8          THE COURT:  THAT'S ONE QUESTION I HAVE.

9          MS. MAROULIS:  -- AND GO FOR SOME OF

10    THEM, BECAUSE AS YOU'LL SEE, THERE'S A NUMBER OF

11    INSTANCES WHERE APPLE'S CONTENTIONS WERE REALLY

12    SUPERFICIAL, BUT WE HAD TO REALLY CHOOSE WHAT TO

13    BURDEN THE COURT WITH AND AFTER SOME DISCUSSION --

14         THE COURT:  I KNOW THIS MAY BE VERY HARD

15    FOR YOU ALL TO BELIEVE, BUT I ACTUALLY ACCEPT THAT

16    YOU ALL HAVE TRIED TO PICK YOUR SPOTS HERE.

17         MS. MAROULIS:  THANK YOU, YOUR HONOR.  WE

18    APPRECIATE THAT.

19         AGAIN GOING BACK TO DR. GRAY'S REPORT

20    WHERE HE EXAMINES CERTAIN OF SAMSUNG'S PHONES, I

21    PERSONALLY DEFENDED DR. GRAY, AND WHEN HE WAS ASKED

22    ABOUT WHICH PHONES HE TESTED, HE SIMPLY DID NOT

23    REMEMBER, AND BECAUSE HE COULDN'T REMEMBER, WE

24    DECIDED, WELL, TO MITIGATE ANY PREJUDICE OR ANY

25    ISSUE, WE'RE GOING TO SUBMIT THE LIST LATER.

1          WE DID NOT THINK IT WAS NECESSARY, BUT

2     BECAUSE HE WAS ASKED AND HE COULDN'T COME UP WITH

3     AN EXPLANATION, WE WANTED TO SUBMIT IT.

4          THAT'S NOT A REASON TO STRIKE HIS

5     INFRINGEMENT REPORT.  THAT IS SOMETHING WHERE WE

6     WERE TRYING TO BE HELPFUL AND SUPPLEMENT HIS REPORT

7     FOR APPLE.

8          VERY BRIEFLY WITH RESPECT TO TWO OF

9     SAMSUNG'S INFRINGEMENT EXPERTS, I THINK YOUR HONOR

10    ALREADY FOCUSSED ON THE FACT THAT SAMSUNG'S

11    ARGUMENT IS THAT THE CONFIGURATIONS IN THE

12    CONTENTIONS ARE EXEMPLARY.

13         I HAVE IN MY HAND THE CONTENTIONS WITH

14    RESPECT TO DR. YANG, THE '460 PATENT, AND IT

15    EXPRESSLY STATES "SEE E.G.," WHICH MEANS THAT IT'S

16    EXEMPLARY SEQUENCE AND NOT SOMETHING THAT HE

17    BELIEVES IS THE ONLY WAY TO PRACTICE THE PATENT.

18         WE TRIED TO, IN OUR BRIEF, STATE THAT FOR

19    METHOD PATENTS, YOU DON'T HAVE TO LOCK IT IN.  YOU

20    DON'T HAVE TO SHOW HOW STEPS ARE PERFORMED.

21         AND, OF COURSE --

22         THE COURT:  I THINK THAT'S A CORRECT

23    RECITATION OF THE LAW, BUT IS IT CORRECT TO

24    UNDERSTAND THAT OUR LOCAL RULES, IN THE CONTEXT OF

25    INFRINGEMENT CONTENTIONS, PERMIT EXEMPLARY

1    STRUCTURES OR SEQUENCES TO BE IDENTIFIED?

2         MS. MAROULIS:  YOUR HONOR, THERE'S -- I

3    HAVEN'T SEEN A CASE ON POINT THAT EITHER SAYS IT'S

4    OKAY OR NOT OKAY.

5         WE THOUGHT THAT OUR CONTENTIONS WERE

6    CLEAR, AND IF THEY WEREN'T, APPLE WOULD ASK AND

7    SAY, "HEY, WE DON'T UNDERSTAND WHAT IT MEANS.

8    PLEASE TELL US."

9         THEY DIDN'T DO SO AT THE TIME, AS FAR AS

10   I KNOW, AND THEY HAD PLENTY OF OPPORTUNITY TO

11   QUESTION DR. YANG ABOUT WHAT HE MEANT AND TO

12   PREPARE THEIR OWN REBUTTAL REPORT OF INVALIDITY TO

13   ADDRESS THOSE POINTS.

14        AND SIMILAR POINTS ARE MADE WITH RESPECT

15   TO MR. WILLIAMS AS WELL.

16        SO THESE WERE ALL OF THE INVALIDITY --

17   I'M SORRY -- UTILITY PATENT EXPERTS AND THEY'RE IN

18   THE PATENT LOCAL RULES REGIME FOR THE CONTENTIONS.

19        NOW WE'RE SWITCHING GEARS AND GOING TO

20   THE DESIGN EXPERTS, AND THE OVERARCHING POINT HERE

21   IS THAT EVERYTHING IS IN OUR PAPERS IN FAIR DETAIL,

22   AND I DIDN'T HEAR COUNSEL QUESTIONING THAT.

23        SHORTLY BEFORE THE END OF DISCOVERY, WE

24   HAD A LEAD COUNSEL MEET AND CONFER ON VARIOUS

25   DISCOVERY ISSUES TO TEE UP ANY REMAINING MOTIONS,

1    AND DURING THAT POINT WE HEARD FROM APPLE THAT THEY

2    THOUGHT THAT SOME OF OUR INTERROGATORY RESPONSES ON

3    THE DESIGN SIDE WERE SUPERFICIAL AND THEY WANTED

4    MORE DETAIL.

5             WHILE WE DISAGREED, WE SAID, "OKAY, WE'RE

6    GOING TO STAVE OFF THE MOTION PRACTICE," AGAIN,

7    TRYING TO CONSERVE THE JUDICIAL RESOURCES AND OUR

8    OWN RESOURCES, AND WE BASICALLY REACHED AN

9    AGREEMENT WITH THEM -- THAT'S EXPLAINED IN THE

10   DECLARATION OF MS. HUTNYAN IN THE RECORD -- THAT IF

11   WE SUPPLEMENT THE INTERROGATORIES ON THE DESIGN

12   SIDE BY THE 19TH OF MARCH, THEY WILL NOT MOVE TO

13   STRIKE OR OTHERWISE COMPEL ANY ADDITIONAL

14   INFORMATION.

15            IT WAS A SACRIFICE.  WE KEPT EVERYONE UP

16   ALL NIGHT, DID IT, SUBMITTED IT.  THEY HAD IT.

17            IT WAS SHORTLY BEFORE THE REPORTS, BUT --

18   FIRST OF ALL, MOST OF THEIR REPORTS ON THAT SUBJECT

19   WERE NOT DUE UNTIL THE LATER, THE REBUTTAL SIDE.

20            BUT ALSO IN THIS CASE OF SUCH QUICK

21   SCHEDULE, SEVERAL DAYS, SEVERAL WEEKS IS A LOT

22   BECAUSE WE'RE WORKING UNDER A VERY, VERY

23   CONSTRAINED TIMEFRAME AND WE'RE ALL TRYING TO MEET

24   THAT TIMEFRAME.

25            SO THE VERY FIRST POINT IS THAT THIS

1    MOTION SHOULD BE MOOT BECAUSE YOU HAVE TO HOLD

2    PARTIES TO THEIR MEET AND CONFER AGREEMENTS.

3    OTHERWISE THE MEET AND CONFER PROCESS IS WORTHLESS.

4    WE WILL BE HERE MORE, NOT LESS.

5            SO STEPPING AWAY FROM THAT, AND WE

6    BELIEVE THAT'S COMPLETELY DISPOSITIVE, WE'VE

7    REVEALED ALL OF OUR THEORIES IN A VARIETY OF

8    CONTEXTS.

9            AND THE TIME IS SHORT, SO I CANNOT GO

10   INTO GREAT DETAIL HERE, BUT IN ADDITION TO

11   REFERRING YOUR HONOR TO OUR PAPERS, WE'VE SERVED

12   INTERROGATORY RESPONSES IN DECEMBER, DECEMBER 19;

13   WE'VE SHOWN THEM OUR THEORIES IN GREAT DETAIL IN

14   PRELIMINARY INJUNCTION BRIEFING THAT WAS EXTENSIVE

15   AND FOCUSSED LARGELY, THROUGH NOT EXCLUSIVELY, ON

16   DESIGN PATENT ISSUES; WE'VE HAD MOTION PRACTICE ON

17   MOTIONS TO COMPEL.  FOR EXAMPLE, THEY'RE SAYING

18   "YOU DIDN'T TELL US YOU THINK BRAIN BOX IS AN

19   INVALIDATING REFERENCE."

20           WELL, YOU'LL REMEMBER, YOUR HONOR, ME

21   STANDING IN FRONT OF YOU AND ASKING YOUR HONOR FOR

22   AN ORDER COMPELLING THEM TO PRODUCE CERTAIN PRIOR

23   ART, WHICH YOU DID AND THEY PRODUCED IT.

24           SIMILARLY, TO TAKE ANOTHER EXAMPLE, OUR

25   EXPERT, MR. GODICI, OPINES THAT IF YOU HAVE 20, 30,

1    OR 100 PATENTS WITH VERY TINY DIFFERENCES IN THE

2    DESIGN AREA, YOU NEED -- EACH ONE OF THEM IS IMBUED

3    WITH MEANING AND THE SCOPE IS NECESSARILY MORE

4    NARROW.

5         WE HAVE WHOLE MOTION PRACTICE ON THAT AS

6    WELL.  ON THAT ONE, YOU ORDERED SOME, BUT NOT

7    OTHERS.  WE RESPONDED.

8         SO APPLE WAS COMPLETELY AND UTTERLY ON

9    NOTICE OF ALL THESE DIFFERENT ISSUES.

10        AND FINALLY, EVERY SINGLE REFERENCE THAT

11   THEY COMPLAIN ABOUT IN THEIR PAPERS HAS BEEN

12   REBUTTED BY THEIR EXPERTS IN THEIR REBUTTAL REPORTS

13   ON APRIL 16TH.

14        SO THE CASE LAW THAT GOVERNS THIS AREA,

15   AND THE NINTH CIRCUIT GRADY CASE IS PROBABLY THE

16   MOST IMPORTANT, BUT THERE ARE MANY OTHERS THE

17   PARTIES CITE IN THEIR BRIEFS.

18        THE KEYSTONE IS PREJUDICE.  WAS APPLE

19   PREJUDICED AND WHAT WOULD THEY HAVE DONE IF THEY

20   HAD THIS INFORMATION?

21        THEY WERE NOT PREJUDICED.  THEY HAD FULL

22   DISCLOSURE AND THEY WERE ABLE TO REBUT OUR EXPERTS

23   WITH THEIR EXPERTS AND TO TAKE FULL PANOPLY OF

24   DEPOSITIONS.

25        WE HAVEN'T TOUCHED ON THAT BECAUSE

1    OPPOSING COUNSEL DID NOT ADDRESS OUR DAMAGES AREA,

2    BUT I WANT TO VERY BRIEFLY ADDRESS THAT.

3              THE COURT:  YOU'RE SPEAKING OF MR. WAGNER

4    IN PARTICULAR?

5              MS. MAROULIS:  YES, YOUR HONOR.

6              MR. WAGNER DID SUBMIT A SUPPLEMENTAL

7    REPORT.  HE SUBMITTED A SUPPLEMENTAL REPORT BECAUSE

8    NEW INFORMATION WAS ORDERED TO BE PRODUCED BY THE

9    COURT.

10             AND IF YOU RECALL, YOUR HONOR, APPLE

11   ASKED YOU A WHILE BACK FOR ADDITIONAL SANCTIONS AND

12   THE SANCTIONS WERE THAT OUR EXPERTS WERE NOT TO BE

13   ABLE TO RESPOND TO THEIR EXPERTS, AND THAT WAS NOT

14   ONE OF THE SANCTIONS GRANTED.  THERE WERE SOME

15   OTHER SANCTIONS ENTERED, BUT NOT THAT ONE.

16             SO MR. WAGNER DID WHAT A RESPONSIBLE

17   EXPERT SHOULD.  WHEN THE NEW FINANCIAL INFORMATION

18   BECOMES AVAILABLE, THAT EXPERT NEEDS TO SUPPLEMENT

19   HIS OPINION.

20             SO THE REASON THAT HE SUPPLEMENTED HIS

21   OPINION AT THAT POINT IN TIME, WHICH WAS, I

22   BELIEVE, MAY 11, WAS BECAUSE THE NEW INFORMATION

23   BECAME AVAILABLE AND BECAUSE ON MAY 7TH, MR. MUSIKA

24   SUBMITTED HIS OWN REPORT BASED ON THAT NEW

25   INFORMATION AND SO MR. WAGNER HAD TO RESPOND TO

1    BOTH MR. MUSIKA AND THE NEW INFORMATION.

2          THE COURT:  AND HE RESPONDED IN ADVANCE

3    OF HIS DEPOSITION, NOT AFTER?

4          MS. MAROULIS:  HE DID, YOUR HONOR.  IT

5    WAS VERY BRIEFLY IN ADVANCE.  IT WAS ONLY THE 11TH

6    AND HIS DEPOSITION WAS ON SATURDAY, THE 12TH.  AND,

7    AGAIN, THE REASON WE HAD --

8          THE COURT:  HOURS, HOURS THEY HAD TO

9    DIGEST IT.

10          MS. MAROULIS:  WELL, YOUR HONOR,

11    UNFORTUNATELY IN THIS CASE WE HAD TO DO A LOT OF

12    DEPOSITIONS OVER THE WEEKEND AND REPORTS OVER THE

13    WEEKENDS AND INTERROGATORY RESPONSES.  THAT IS THE

14    NATURE OF THIS BEAST.

15          AND SO THEY HAD AN OPPORTUNITY, THEY

16    CHOSE NOT TO QUESTION HIM ON IT, OR --

17          WAS HE QUESTIONED ON IT?

18          THEY CHOSE NOT TO QUESTION HIM ON IT, BUT

19    THEY COULD HAVE.

20          AND SO THE POINT IS THAT MR. WAGNER

21    SHOULD NOT BE EXCLUDED.  IT'S KIND OF A SEPARATE

22    CATEGORY FROM EVERYTHING ELSE YOU HEARD SO FAR

23    BECAUSE MR. WAGNER SUBMITTED HIS SUPPLEMENTAL

24    REPORT THAT IS PART OF THE RECORD AND IT WOULD BE

25    UNFAIR TO HAVE MR. MUSIKA'S REPORT STAND, BUT NOT

1    MR. WAGNER'S.

2              THE COURT:  WOULD YOU HAVE ANY OBJECTION

3    TO PERMITTING AN HOUR OF ADDITIONAL DEPOSITION OF

4    MR. WAGNER TO MITIGATE ANY PREJUDICE FROM THE

5    TIMING OF THE REPORT?

6              MS. MAROULIS:  YOUR HONOR, I'M SURE

7    MR. WAGNER WOULD OBJECT, BUT I WON'T IF THAT'S WHAT

8    IT TAKES BECAUSE IT WOULD BE A -- IF THAT'S A

9    USEFUL EXERCISE IN THE COURT'S OPINION.

10             THE COURT:  I'M NOT SO SURE MR. WAGNER

11    WOULD OBJECT.

12             ALL RIGHT.  ANYTHING FURTHER ON

13    THIS BEFORE WE -- WE DO NEED TO GIVE YOU SOME

14    OPPORTUNITY TO ADDRESS YOUR PAPERS AS WELL.

15             MS. MAROULIS:  YES, YOUR HONOR.

16             SHOULD I SWITCH TO SAMSUNG'S PAPERS?

17             THE COURT:  BEFORE YOU DO THAT,

18    MS. TUCHER, I'LL GIVE YOU JUST ONE MINUTE OF

19    REBUTTAL.  I'M SORRY I HAVE TO IMPOSE THESE KINDS

20    OF RESTRICTIONS, BUT THAT'S THE BEST I CAN DO, AND

21    THEN WE'LL TURN TO THE SAMSUNG MOTION.

22             MS. TUCHER:  I HAVE TO REBUT AS A FACTUAL

23    MATTER MY COLLEAGUE'S STATEMENT THAT THERE WAS AN

24    AGREEMENT THAT THERE WOULD BE NO MOTION TO STRIKE

25    OR COMPEL.  THAT'S JUST ABSOLUTELY FALSE.

1          AND I WOULD ALSO POINT YOUR HONOR TO THE

2     FACT THAT RULE 37(C)(1) IS SELF-EXECUTING.  IT

3     DOESN'T REQUIRE A MOTION TO COMPEL BEFORE A MOTION

4     TO STRIKE IS BROUGHT.  THAT'S CLEAR IN THE ADVISORY

5     NOTES TO THE RULE.

6          ON DAMAGES, MR. WAGNER'S REPORT WAS

7     SERVED AFTER HOURS.  WE DIDN'T HAVE AN OPPORTUNITY

8     TO PREPARE TO QUESTION HIM ON IT, AND IT GOES WELL

9     BEYOND THE DATA THAT SAMSUNG WITHHELD.

10          BUT ALSO I WOULD DRAW YOUR ATTENTION TO

11    THE TAB 6 ISSUE THAT'S IN SOME WAYS VERY -- EVEN

12    MORE IMPORTANT BECAUSE THAT'S ANOTHER EXAMPLE OF

13    SAMSUNG JUST WITHHOLDING DATA AND THEN TRYING TO,

14    WHEN IT SUITED SAMSUNG'S PURPOSES, USE IT IN THE

15    CASE.

16          AND FINALLY, I WOULD AGREE THAT NOTICE

17    AND PREJUDICE ARE BOTH IMPORTANT, BUT THE PRIOR ART

18    THAT WE'VE INCLUDED IN OUR MOTION, WE DID NOT HAVE

19    NOTICE OF IT DURING THE ENTIRETY OF FACT DISCOVERY,

20    WHICH IS PRECISELY WHY THERE WAS PREJUDICE IN THIS

21    CASE, BECAUSE WE DID NOT HAVE AN OPPORTUNITY DURING

22    THE ENTIRETY OF FACT DISCOVERY TO WORK ON ANY OF

23    THE THEORIES THAT WE DIDN'T KNOW WERE GOING TO BE

24    RAISED AGAINST US.

25          SO I AGREE THE CASES SHOULD BE DECIDED ON

1   THEIR MERITS, BUT THEY CAN'T BE DECIDED ON THEIR

2   MERITS FAIRLY WHEN ONLY ONE SIDE KNOWS WHAT

3   THEORIES ARE COMING IN AND THE OTHER SIDE DOES NOT

4   EVEN HAVE AN OPPORTUNITY TO TEST AND CHALLENGE

5   THEM.

6           THANK YOU.

7           THE COURT:  ALL RIGHT.  THANK YOU.

8           LET'S TURN TO THE SAMSUNG MOTIONS.  YOU

9   WANT TO PICK A SPOT OR TWO?

10          MS. MAROULIS:  YES, YOUR HONOR.  THERE'S

11  GOING TO BE SOME SPEED TALKING HERE.

12          IF I HAVE TO PICK JUST --

13          THE COURT:  WHY DON'T YOU JUST PICK A

14  SPOT THAT YOU THINK IS IMPORTANT AND WE CAN HAVE A

15  CONVERSATION?

16          MS. MAROULIS:  YES, YOUR HONOR, AND IF WE

17  HAVE TO PICK ONE SPOT, I WOULD HAVE TO START WITH

18  MR. MUSIKA.

19          MR. MUSIKA IS APPLE'S DAMAGES EXPERT AND

20  HE SUBMITTED A CONFIDENTIAL DAMAGES REPORT WITH

21  VERY, VERY LARGE NUMBERS.  REASONABLE ROYALTY IS

22  ONE OF THE THEORIES THAT HE PURSUES.

23          AS YOUR HONOR KNOWS, COMPARABLE LICENSES

24  IS ONE OF THE VERY, VERY IMPORTANT FACTORS IN THE

25  DAMAGES ANALYSIS.  COURTS RECENTLY, INCLUDING

1    JUDGE RADER AT THE FEDERAL CIRCUIT, AND MANY COURTS

2    AROUND THE COUNTRY HAVE FOCUSSED ON WHY IT'S

3    IMPORTANT TO HAVE COMPARABLE LICENSES, AND THE

4    REASON IT'S IMPORTANT IS BECAUSE THAT'S HOW THE

5    MARKET VALUES A PARTICULAR TECHNOLOGY.

6              YOU DON'T HAVE TO TAKE THE PARTIES' WORD

7    FOR IT.  YOU HAVE TO LOOK AT HOW MARKET VALUE --

8              THE COURT:  I HEAR THE CHIEF JUDGE'S

9    INSTRUCTIONS LOUD AND CLEAR, SO LET'S TALK ABOUT

10   WHAT THEY PRODUCED.

11             MS. MAROULIS:  ALL RIGHT.  SO WHAT DID

12   THEY DO?

13             SO MR. MUSIKA -- BEFORE MR. MUSIKA'S

14   REPORT, THEY SUBMITTED SEVERAL DOZEN LICENSES AND

15   WE KEPT PRESSING THEM FOR LICENSES BECAUSE WE KNEW

16   THAT WAS NOT ALL.  WE KNEW THAT THERE WERE OTHER

17   SOURCES OF ADDITIONAL DISCOVERY.

18             THEY KEPT PROMISING THAT THEY WOULD

19   PRODUCE THOSE LICENSES AND THEY KEPT NOT PRODUCING

20   THEM.

21             ONE OF THE REASONS WE WERE NOT BEFORE

22   YOUR HONOR SOONER IS BECAUSE THEY KEPT SAYING,

23   "YES, WE WILL PRODUCE THEM" AND THEY DIDN'T.

24             AFTER MR. MUSIKA SUBMITTED HIS REPORT AND

25   AFTER MR. WAGNER'S REPORT, WE'VE NOW HAD PRODUCTION

1    OF 33 LICENSE AGREEMENTS THAT ARE RELATED TO

2    ACCUSED PRODUCTS AND ARE RELATED TO TECHNOLOGY IN

3    SUIT.  THERE'S ABSOLUTELY NO QUESTION THAT THESE

4    ARE COMPARABLE LICENSES.

5            THEY'RE ALL CONFIDENTIAL, THEY'RE THIRD

6    PARTY CONFIDENTIAL, AS WELL AS APPLE'S, SO I CANNOT

7    DESCRIBE THEM TO YOUR HONOR IN ANY WAY.

8            BUT YOUR HONOR SHOULD LOOK AT BOTH OUR

9    BRIEF AND THE DECLARATION OF DR. VAN HERZEN

10   EXPLAINING WHY THEY'RE TECHNOLOGICALLY THE SAME.

11           AND ALSO, SOME OF THESE LICENSES DESCRIBE

12   THE VERY SAME TECHNOLOGY AS THE PATENTS-IN-SUIT,

13   AND IN THE ONE PARTICULAR INSTANCE, THE '607

14   PATENT, IN ITS FILE HISTORY, CITES ONE OF THE

15   PATENTS THAT HAS TO DO WITH THAT LICENSE.

16           SO THERE COULD BE NO QUESTION THAT NOT

17   ONLY THEY'RE COMPARABLE, BUT EVEN IF THEY HAD A

18   LOWER THRESHOLD OF COMPARABILITY, IT IS NOT UP TO

19   APPLE TO DECIDE WHAT IS AND WHAT IS NOT.  IF THEIR

20   LICENSE IS RELATED TO THE TECHNOLOGY, IF THEIR

21   LICENSE IS RELATED TO THE PRODUCTS THAT APPLE PUT

22   IN THIS CASE, THEY HAD TO BE PRODUCED.  THEY WERE

23   NOT PRODUCED.

24           THE COURT:  WELL, I TRUST YOUR POINT

25   REALLY IS THAT REGARDLESS OF WHETHER A GIVEN

1    LICENSE MEETS THE STANDARDS OF EYE FOR EYE OR

2    RESQNET, WE'RE TALKING ABOUT DISCOVERY HERE AND

3    YOUR ABILITY TO PURSUE THEORIES AND CHALLENGE

4    THEORIES IN DISCOVERY; RIGHT?

5            MS. MAROULIS:  YOUR HONOR, THAT'S

6    ABSOLUTELY OUR POINT.

7            BUT THEY DO MEET THE THRESHOLD OF

8    RESQNET.  THERE'S NO QUESTION ABOUT IT IF YOU LOOK

9    AT THE LICENCES FOR THIS RELEVANT TECHNOLOGY.

10           SO WHERE ARE WE NOW?  WE'RE THROUGH WITH

11   THE EXPERT DISCOVERY, THROUGH WITH THE ADDITIONAL

12   DEPOSITIONS OF EXPERTS, AND WE'RE PAST THE DAUBERT

13   STAGE.  WE'RE GOING TO BE ARGUING DAUBERT MOTIONS

14   NEXT WEEK.

15           SO THE ONLY REMEDY THAT WE CAN GET AT

16   THIS POINT IS TO PREVENT MR. MUSIKA FROM OPINING ON

17   REASONABLE ROYALTY.

18           IS THAT A HARSH REMEDY?  YES, IT IS.

19           HOWEVER, WE HAD ABSOLUTELY NO OPPORTUNITY

20   TO QUESTION HIM PROPERLY ABOUT HIS REASONABLE

21   ROYALTY THEORY BECAUSE APPLE WITHHELD SO MUCH

22   INFORMATION FROM US.

23           THIS ISN'T THE ONLY FINANCIAL INFORMATION

24   THAT WAS WITHHELD, AND I'LL ADDRESS THAT IN A

25   SECOND.

```
 1              BUT IN THE INTERESTS OF TIME, IF THERE'S

 2    ONE THING THAT YOUR HONOR SHOULD FOCUS ON IN OUR

 3    MOTION TO STRIKE APPLE'S EXPERTS, THIS IS IT.  THIS

 4    IS EGREGIOUS AND IT DEPRIVED US OF AN OPPORTUNITY

 5    TO CHALLENGE A VERY HIGH DAMAGES NUMBER THAT IS

 6    PREJUDICIAL ON ITS OWN JUST TO SHOW THE JURY, AND

 7    WE DID NOT HAVE THE OPPORTUNITY AND THE RIGHT TOOLS

 8    TO QUESTION HIM.

 9              TWO OTHER INSTANCES OF FINANCIAL DATA

10    THAT WAS ALSO NOT PRODUCED.  WE GO IN SOME DETAIL

11    IN THE BRIEF ABOUT THE CONFLICTING, IMPROPER, AND

12    CONSTANTLY CHANGING SPREADSHEETS ABOUT LICENSING

13    THAT APPLE PRODUCED, AND YOUR HONOR IS FAMILIAR

14    WITH THE ISSUE OF CHANGING SPREADSHEETS BECAUSE YOU

15    DIDN'T HAVE VERY GOOD WORDS FOR SAMSUNG WHEN THAT

16    HAPPENED TO US, BUT THE SAME THING IS HAPPENING

17    HERE, AND ARGUABLY WORSE BECAUSE WE'RE NOT GETTING

18    ANY INFORMATION THAT IS RELIABLE.

19              AND THEN FINALLY, THE MANUFACTURING

20    CAPACITY IS A POINT THAT APPLIES TO THE LOST

21    PROFITS, NOT REASONABLE ROYALTY PORTION, AND ALL WE

22    GOT WAS A VERY SUMMARY DOCUMENT, SELF-SERVING

23    DOCUMENT, AND WE NEVER RECEIVED THE BACKUP DATA FOR

24    IT DESPITE ALL THE REQUESTS WE DID, AND SO WE'RE

25    SEEKING A REMEDY AS TO THAT.
```

```
1              THE REST OF THE --
2              THE COURT:  WHAT SPECIFIC REMEDY ON
3    MANUFACTURING CAPACITY ARE YOU LOOKING FOR?  I TAKE
4    IT IT'S WAY TOO LATE NOW IN THE GAME TO ORDER THEM
5    TO PRODUCE THE UNDERLYING DATA, SO ARE YOU
6    SUGGESTING I STRIKE THEIR ABILITY TO ADDRESS
7    PANDUIT?
8              MS. MAROULIS:  YOUR HONOR, I THINK WE'RE
9    GOING TO GO MORE MODESTLY THERE.  WE'RE JUST GOING
10   TO GO WITH HIS ABILITY TO EXPRESS THAT APPLE HAS
11   MANUFACTURING CAPACITY.
12             THE COURT:  BUT THAT'S A PRETTY
13   SIGNIFICANT PART OF THE PANDUIT ANALYSIS; RIGHT?
14             MS. MAROULIS:  I'M DISTINGUISHING THAT
15   FROM OUR REASONABLE ROYALTY REQUEST, WHICH IS --
16             THE COURT:  RIGHT.  SO WHAT YOU'RE -- I
17   JUST WANT TO MAKE SURE -- I MAY AGREE WITH YOU, I
18   MAY BE ABOUT TO DO IT, BUT WHAT YOU'RE ASKING ME TO
19   DO IS ESSENTIALLY TO BAR APPLE FROM OFFERING EXPERT
20   TESTIMONY ON A REQUIREMENT FOR THEIR LOST PROFITS
21   CLAIM?
22             MS. MAROULIS:  THAT'S CORRECT, YOUR
23   HONOR.
24             THE COURT:  ALL RIGHT.
25             MS. MAROULIS:  THE REST OF THE EXPERTS IN
```

1    OUR MOTION, YOUR HONOR, YOU CAN REVIEW OUR PAPERS

2    AND IF YOU HAVE ANY SPECIFIC QUESTIONS FOR ME, I'M

3    MINDFUL BOTH OF THE COURT REPORTER'S ABILITY TO

4    TYPE AND MY NEED TO BE IN JUDGE KOH'S COURTROOM

5    VERY SHORTLY.

6              SO WHAT WE PERHAPS WANT, IF I CAN HIT IT

7    VERY BRIEFLY, IS DR. BALAKRISHNAN BECAUSE APPLE IS

8    SUGGESTING IN THEIR MOTION THAT THEY MOOTED THE

9    WHOLE MOTION BY LETTING US FINALLY EXAMINE THE

10   DEVICES.

11             THE REASON WE NEEDED TO EXAMINE THE

12   DEVICES IS WHEN WE DEPOSED DR. BALAKRISHNAN, HE

13   MADE A COUPLE OF STATEMENTS LIKE, "WELL, SOME

14   DEVICES DO AND SOME DEVICES DON'T, SO MY OPINION IS

15   LIMITED TO THE ONES THAT I ACTUALLY REVIEWED."

16             AT THAT POINT IT BECAME VERY IMPORTANT

17   FOR US TO UNDERSTAND WHICH DEVICES HE REVIEWED AND

18   WHY THEY EXHIBITED A CERTAIN BEHAVIOR.

19             THERE WAS A LOT OF BACK AND FORTH, WE GOT

20   ACCESS TO SOME OF THE DEVICES, BUT WE DON'T BELIEVE

21   WE GOT AN ACCURATE PICTURE AT ALL.

22             ONE OF THE EXAMPLES IS THAT IN HIS

23   REPORT, HE'S DISCUSSING A PARTICULAR PHONE AND THE

24   PHONE IS UNMISTAKABLY PURPLE AND THE PHONE THAT WE

25   WERE GIVEN WITH THE SAME TYPE OF SOFTWARE,

1    SUPPOSEDLY, IS BLACK.

2              SO I'M NOT GOING DEEPLY INTO SOURCE CODE

3    OR FUNCTIONALITY.  I'M JUST SAYING WE ARE NOT ABLE

4    TO MATCH UP WHAT HE LOOKED AT AND WHATNOT.

5              AND IN THIS CASE IT'S IMPORTANT BECAUSE

6    SINCE HIS OPINION IS LIMITED TO WHAT HE ACTUALLY

7    SAW AND REVIEWED, IT'S GOING TO BE CRUCIAL FOR US

8    TO BE ABLE TO DO A THOROUGH CROSS OF HIM, SO WE'RE

9    SEEKING REMEDY ON THAT.

10             THE COURT:  AND THE REMEDY AGAIN THAT YOU

11   WOULD SUGGEST IS?

12             MS. MAROULIS:  THE REMEDY WE SUGGESTED IN

13   THE BRIEF WAS TO STRIKE CERTAIN PORTIONS OF HIS

14   EXPERT REPORT, AND WE SUBMITTED A PROPOSED ORDER

15   WITH A DETAILED ACCOUNTING OF PARAGRAPHS FOR EACH

16   EXPERT BECAUSE IT IS QUITE A FEW DIFFERENT EXPERTS.

17             AND THEN IF I FINALLY MAY, WITH RESPECT

18   TO THE DESIGN EXPERTS, AGAIN, WE DON'T BELIEVE

19   THAT -- WE BELIEVE THAT APPLE DID NOT DISCLOSE A

20   NUMBER OF THEORIES TO US, AND WE EXPLAINED IN OUR

21   PAPERS, BUT IN THAT SENSE IF YOUR HONOR IS GOING TO

22   VIEW ALL OF THE DESIGN EXPERTS IN THE SAME WAY

23   BECAUSE THEY'RE ALL SUBJECT TO LOCAL RULES

24   DISCLOSURES, I JUST SUGGEST THE COURT SHOULD APPLY

25   THE SAME TEST TO BOTH PARTIES.

```
 1                 THE COURT:  ALL RIGHT.  THANK YOU,

 2    MS. MAROULIS.

 3                 MR. SELWYN, ARE YOU GOING TO OFFER A

 4    BRIEF RESPONSE?

 5                 MR. SELWYN:  I'M GOING TO TRY, YOUR

 6    HONOR.  THAT'S A LOT TO UNPACK ON THE DAMAGES

 7    ISSUES IN THREE MINUTES, BUT I'M GOING TO TRY.

 8                 THE COURT:  I THINK YOU'RE UP TO IT.

 9    LET'S SEE.

10                 MR. SELWYN:  FIRST, WITH RESPECT TO THE

11    LICENSE INFORMATION, TO BE CLEAR, BEFORE THE

12    DISCOVERY CUT OFF, APPLE PRODUCED A VERY LARGE

13    NUMBER OF LICENSE AGREEMENTS, MORE THAN DOUBLE THE

14    NUMBER THAT SAMSUNG HAD PRODUCED.

15                 THE DAY BEFORE THE CLOSE OF DISCOVERY --

16                 THE COURT:  WELL, PRESUMABLY YOU DID THAT

17    BECAUSE YOU HAD MORE THAN TWICE AS MANY RELEVANT

18    AGREEMENTS; RIGHT?

19                 MR. SELWYN:  ACTUALLY, I DON'T AGREE WITH

20    THAT.  I THINK THAT WE HAVE EVIDENCE OF SAMSUNG

21    HAVING ADDITIONAL AGREEMENTS THAT WEREN'T PRODUCED.

22    WE DIDN'T MOVE ON THAT, BUT I WOULDN'T ACCEPT THAT

23    STATEMENT.

24                 AT ANY RATE, ON MARCH 7TH, THE DAY BEFORE

25    THE CLOSE OF FACT DISCOVERY, SAMSUNG SAID, "BASED
```

1    ON INFORMATION IN SOME OF THESE ROYALTY REPORTS, WE

2    WANT THESE AGREEMENTS, TOO."

3            WE SAID, "WELL, THEY'RE NOT RELEVANT, WE

4    DON'T THINK THEY'RE RELEVANT, BUT FINE, WE WILL

5    PRODUCE THEM TO YOU.  WE WILL PRODUCE THEM ALL TO

6    YOU," AND THAT'S WHAT WE HAVE DONE.

7            NOW, LET'S LOOK AT THE SPECIFIC

8    AGREEMENTS THAT SAMSUNG SAYS ARE COMPARABLE.  I

9    HEARD MS. MAROULIS SAY THAT ALL OF THEM ARE

10   COMPARABLE.

11           THAT'S NOT WHAT ITS EXPERT SAID.

12   MR. WAGNER SUBMITTED A DECLARATION WITH THE REPLY

13   BRIEF WHERE HE IDENTIFIED THREE AGREEMENTS AS

14   COMPARABLE.

15           I'M NOT GOING TO QUIBBLE WITH WHETHER

16   THEY ARE COMPARABLE OR NOT, BUT LET'S JUST FOCUS ON

17   THE THREE THAT HE IDENTIFIED, FROM ALL THESE

18   AGREEMENTS THAT WE HAVE PRODUCED, AS COMPARABLE,

19   AND I WON'T IDENTIFY THEM BY NAME BECAUSE OF

20   CONFIDENTIALITY ISSUES.

21           BUT AT PARAGRAPH 23 OF HIS DECLARATION,

22   HE REFERS TO AN AGREEMENT, HE SAYS IT'S COMPARABLE.

23           THAT AGREEMENT WAS PRODUCED BEFORE HIS

24   REBUTTAL REPORT.  HE CITED IT IN HIS REBUTTAL

25   REPORT.  HE CONCLUDED THAT IT WAS NOT COMPARABLE.

1            AND WHEN WE ASKED HIM AT HIS DEPOSITION

2      ON MAY 12TH, HE SAID IT WASN'T COMPARABLE.

3            THE COURT:  SO FIRST HE SAYS IT'S NOT

4      COMPARABLE AND NOW HE'S SAYING IT IS?  IS THAT

5      RIGHT?

6            MR. SELWYN:  YES.  AND WHAT HE SAYS IS

7      SINCE THE TIME THAT WE PRODUCED AND SINCE THE TIME

8      OF HIS DEPOSITION, HE'S HAD AN OPPORTUNITY TO TALK

9      TO SAMSUNG'S TECHNICAL EXPERT, AND BECAUSE WE

10     PRODUCED IT AFTER THE CLOSE OF FACT DISCOVERY OR

11     BEFORE HIS DEPOSITION, HE DIDN'T HAVE AMPLE TIME.

12           SO FINE, LET'S ACCEPT THAT, BUT I'LL NOTE

13     THOSE FACTS.

14           SECOND LICENSE, AND THIS IS REFERRED TO

15     AT PARAGRAPH 29 OF THE WAGNER REPORT, SAMSUNG SAYS

16     IS COMPARABLE TO THE '002 AND THE '981 PATENTS.

17           THOSE TWO PATENTS AREN'T IN THE CASE

18     ANYMORE, SO I DON'T THINK THERE SHOULD BE AN ISSUE

19     THERE.

20           THE THIRD LICENSE THAT SAMSUNG -- THAT

21     MR. WAGNER SAYS IS COMPARABLE INVOLVES PATENTS THAT

22     WERE FILED NEARLY 20 YEARS AGO.

23           WE SAY THE TECHNOLOGY HAS NO RELEVANCE TO

24     THIS, BUT FINE, LET'S ACCEPT WHAT HE SAYS.

25           SO WE'RE TALKING ABOUT, AT MOST, TWO

1     AGREEMENTS.  I THINK WE CAN EXCLUDE THE AGREEMENTS

2     THAT THEY SAY ARE COMPARABLE BUT THAT ARE PATENTS

3     THAT HAVE BEEN DROPPED.

4              WE NOW HAVE A DECLARATION FROM MR. WAGNER

5     EXPLAINING WHY THEY'RE COMPARABLE.  WE'RE FINE WITH

6     THAT.  WE ACCEPT THAT AS A SUPPLEMENTAL OPINION IF

7     THAT'S WHAT THEY WANT TO OFFER.

8              IF THEY WANT TO GET ANOTHER REPORT FROM

9     HIM OPINING ON THOSE TWO LICENSES, THAT'S FINE AS

10    WELL.

11             BUT THE IDEA THAT WE HAVE WITHHELD THIS

12    GREAT NUMBER OF COMPARABLE LICENCES JUST DOESN'T

13    BEAR OUT IN THE FACTS, AND IT DOESN'T BEAR OUT IN

14    THE WAGNER DECLARATIONS, EITHER.

15             WITH RESPECT TO MANUFACTURING CAPACITY,

16    MR. MUSIKA'S OPINIONS ARE BASED ONLY ON THE

17    DOCUMENTS THAT APPLE PRODUCED.

18             THOSE DOCUMENTS WERE PRODUCED.  WE'VE

19    MADE AVAILABLE A 30(B)(6) WITNESS TO TESTIFY ABOUT

20    THOSE DOCUMENTS AND ABOUT THEIR SOURCE AND ABOUT

21    WHAT INFORMATION IS CONTAINED IN THEM AND ANY

22    INTERPRETIVE QUESTIONS.

23             WE THEN PRODUCED --

24             THE COURT:  AND DID THEY TAKE THAT

25    DEPOSITION?

219

1           MR. SELWYN:  YES.  THERE ARE 30 PAGES OF

2    TESTIMONY ABOUT THOSE DOCUMENTS.

3           WE THEN PRODUCED TONY BLEVINS, WHO'S

4    APPLE'S VICE-PRESIDENT OF PROCUREMENT.  I THINK

5    IT'S FAIR TO SAY THE BULK OF THAT DEPOSITION WAS ON

6    CAPACITY ISSUES.

7           THESE MANUFACTURING DOCUMENTS ARE ONE OF

8    THOSE CATEGORIES, AND BOTH SIDES HAD MANY, WHERE WE

9    SAID WE WOULD PRODUCE DOCUMENTS SUFFICIENT TO SHOW.

10          THAT WAS WHAT WE HAD AGREED TO PRODUCE.

11   THAT WAS, IN FACT, WHAT WE PRODUCED.  AND THESE

12   DOCUMENTS ARE COMPREHENSIVE IN SHOWING CAPACITY TO

13   BUILD, SHOWING ENDING INVENTORIES, SHOWING WHAT

14   COULD HAPPEN WITH AND WITHOUT ADDITIONAL CAPACITY.

15          SO WE PRODUCED EVERYTHING THAT WE AGREED

16   TO PRODUCE.  WE SUGGEST THERE'S NO BASIS FOR

17   SAMSUNG TO COMPLAIN NOW, MUCH LESS FOR THEM TO ASK

18   FOR RELIEF, WHICH WOULD BE TANTAMOUNT TO EXCLUDING

19   OUR LOST PROFITS CLAIM BECAUSE WE WOULDN'T HAVE THE

20   CAPACITY PRONG UNDER PANDUIT, AS YOUR HONOR NOTES.

21          JUST A LAST POINT WITH RESPECT TO THE

22   ROYALTY REPORTS.

23          A VARIETY OF DIFFERENT VERSIONS OF THE

24   ROYALTY REPORTS WERE PRODUCED.  THERE WERE REPORTS

25   PRODUCED IN FEBRUARY WHEN OUR 30(B)(6) WITNESS --

1          THE COURT:  EIGHT OF THEM, IF I'M NOT

2     MISTAKEN; CORRECT?

3          MR. SELWYN:  IT WAS A LOT.  OUR COUNT IS

4     A LITTLE DIFFERENT, BUT IT WAS A LOT.

5          WHEN OUR WITNESS WAS DEPOSED AT THE END

6     OF FEBRUARY, HE SAID THAT THE TWO REPORTS THAT HAD

7     BEEN PRODUCED WERE NOT UP-TO-DATE.  THEY HAD --

8     THEY LACKED A YEAR'S WORTH OF INFORMATION.  WE

9     TRIED TO BE TRANSPARENT ABOUT THAT.

10         WE PRODUCED ADDITIONAL REPORTS, AS IT

11    TURNED OUT, THAT HAD INFORMATION IN THEM THAT WAS

12    PRIVILEGED.  WE CALLED THAT BACK.  THERE'S BEEN NO

13    CHALLENGE TO OUR CLAW BACK OF THOSE DOCUMENTS.

14         I THINK IT'S FAIR TO SAY THAT ON BOTH

15    SIDES THERE HAVE BEEN A LOT OF DOCUMENTS THAT HAVE

16    BEEN CLAWED BACK AND WE HAVEN'T POKED SAMSUNG IN

17    THE EYE FOR MAKING LOTS OF CLAW BACKS.

18         AT ANY RATE, THE GOAL HERE WAS TO PRODUCE

19    A REPORT THAT WAS COMPREHENSIVE AS TO THE ROYALTY

20    INFORMATION, AND THAT'S WHAT WE THINK THAT WE DID.

21         IN TERMS OF HOW THE DOCUMENTS HAVE

22    ACTUALLY BEEN USED IN THE CASE, THEY HAVEN'T BEEN.

23    NEITHER SIDES' EXPERTS HAVE RELIED ON THE ROYALTY

24    REPORTS.

25         MR. WAGNER, IN HIS DECLARATION SUPPORTING

1    THE MOTION TO STRIKE, MAKES NO SUGGESTION THAT

2    THERE'S ANY INFORMATION IN THERE THAT HE WOULD HAVE

3    USED, THAT HE WOULD HAVE WANTED, THAT HE WOULD HAVE

4    WANTED TO HAVE EARLIER.

5           SAMSUNG'S OTHER DAMAGES EXPERT,

6    VINCENT O'BRIEN, DOESN'T SUGGEST THAT THOSE ROYALTY

7    REPORTS HAVE ANY ROLE IN HIS ANALYSIS OR THAT HE

8    WOULD HAVE DONE ANYTHING DIFFERENTLY, EITHER.

9           SO HERE WE ARE IN JUNE ASKING OURSELVES,

10   WHY DOES IT MATTER?  I SUGGEST IT DOESN'T MATTER.

11   NEITHER SIDE HAS USED THESE REPORTS SUBSTANTIVELY,

12   EXCEPT AS SOURCE INFORMATION FOR THE EXISTENCE OF

13   LICENSES WHICH WE'VE NOW PRODUCED.

14           THE COURT:  ALL RIGHT.  THANK YOU,

15   MR. SELWYN.

16           MS. TUCHER, ARE YOU LOOKING TO ADD A

17   POINT OR TWO?

18           MS. TUCHER:  I WOULD LIKE TO HAVE ONE

19   MINUTE TO RESPOND ON UTILITY AND DESIGN PATENTS.

20           THE COURT:  ALL RIGHT.  AND I WILL GIVE

21   SAMSUNG THEIR FAIR DUE AS WELL.

22           GO AHEAD.

23           MS. TUCHER:  THANK YOU.

24           SAMSUNG IS SEEKING TO THROW OUT

25   DR. BALAKRISHNAN'S INFRINGEMENT ANALYSIS ALMOST IN

1    ITS ENTIRETY ON THE BASIS OF THEIR CHALLENGE THAT

2    THEY DIDN'T HAVE A PHYSICAL INSPECTION OF THE

3    PHONES HE EXAMINED.

4            WHAT YOU NEED TO KNOW IS THEY DIDN'T ASK

5    FOR THAT INSPECTION UNTIL AFTER THE DEPOSITION.

6    AFTER THEY ASKED FOR IT, WE GAVE IT TO THEM.

7    THEY'VE BEEN TO SEE THE PHONE THREE TIMES.

8            SO IF THE DISPUTE BETWEEN THE PARTIES

9    ISN'T MOOT, I DON'T KNOW WHAT IT TAKES TO MOOT IT.

10   THEY CAN CROSS-EXAMINE HIM AT TRIAL ABOUT WHATEVER

11   ISSUE --

12           THE COURT:  ONE THING THAT MIGHT DRIVE A

13   STAKE IN THIS THING WOULD BE TO OFFER HIM UP FOR

14   ANOTHER HOUR.  PRESUMABLY THEY WANTED THOSE PHONES

15   BEFORE THEY DEPOSED BALAKRISHNAN.

16           MS. TUCHER:  THEY DIDN'T ASK FOR THE

17   PHONES BEFORE THEY DEPOSED HIM.

18           THE COURT:  AREN'T THEY SAYING THAT YOU

19   SHOULD HAVE PRODUCED THEM WITHOUT THEIR HAVING TO

20   ASK?  I JUST SUPPOSE --

21           MS. TUCHER:  I DON'T THINK THEY POINTED

22   TO ANY DISCOVERY REQUEST ASKING FOR THEM, NO.  AND

23   THEY ARE, AFTER ALL, SAMSUNG'S PHONES, SAMSUNG'S

24   PRODUCTS.

25           AND THEN ON FUNCTIONALITY, MS. MAROULIS'

1    STATEMENT WAS MAKE SURE YOU APPLY THE SAME STANDARD

2    TO APPLE AND TO SAMSUNG.

3         I FULLY ENDORSE THAT, BUT I WOULD ASK YOU

4    TO LOOK AT TAB 1 IN OUR MATERIALS AND LOOK AT THE

5    THOROUGHNESS OF THE INTERROGATORY RESPONSE THERE

6    AND I DON'T THINK YOU'LL SEE THAT THAT'S IN ANY WAY

7    COMPARABLE TO WHAT SAMSUNG DID.

8         THE COURT:  ALL RIGHT.  THANK YOU.

9         MS. MAROULIS, ANY REBUTTAL?

10        MS. MAROULIS:  YES, YOUR HONOR, JUST

11   BRIEFLY.

12        MS. TUCHER IS NOT CORRECT.  THERE WERE

13   SPECIFIC RFP'S SEEKING MR. BALAKRISHNAN'S PHONES

14   AND MANY OTHER PHONES AND DEVICES DISCUSSED IN OUR

15   PAPERS.

16        THERE WAS A REQUEST, 47 I BELIEVE, THAT

17   ASKED FOR ALL THINGS AND DOCUMENTS THAT EXPERTS

18   RELIED ON, AND REQUEST 127 THAT ALSO REQUESTED ALL

19   DOCUMENTS AND THINGS RELATING TO ANALYSIS OF

20   INFRINGEMENT.

21        WITH RESPECT TO MR. MUSIKA AND THE

22   DOCUMENTS, IT IS NOW TOO LATE TO SAY THAT WE DIDN'T

23   DISCUSS THEM THOROUGHLY BECAUSE WE DID NOT HAVE

24   THOSE 33 LICENSES OR THOSE MANUFACTURING CAPACITY

25   DOCUMENTS FOR THE LAST SEVERAL MONTHS.

1          YOU CANNOT FAULT MR. WAGNER FOR NOT

2     ADDRESSING SOME LICENSE WHICH HE DOESN'T HAVE AND

3     WHICH HE WOULD HAVE LIKED TO HAVE, AND IN HIS

4     DEPOSITION HE DID SAY HE WOULD HAVE LIKED TO HAVE

5     THE LICENSES.

6          WITH RESPECT TO THE DEPOSITION OF THE

7     MANUFACTURING CAPACITY REP, SOME OF THE 30 PAGES OF

8     TRANSCRIPT WAS SPENT FIGURING OUT WHAT DOCUMENTS WE

9     DIDN'T HAVE, AND AFTER THAT WE ASKED FOR ADDITIONAL

10    DOCUMENTS.  WE DID NOT GET THEM.

11          THE COURT:  ALL RIGHT.  THANK YOU VERY

12    MUCH.

13          ALL RIGHT.  THANK YOU ALL FOR YOUR

14    PRESENTATIONS THIS MORNING.  I ENJOYED IT.  YOU'LL

15    HAVE ORDERS FROM ME AS SOON AS I CAN GET THEM OUT.

16          GOOD LUCK THIS AFTERNOON DOWN THE HALL.

17          WE'LL STAND IN RECESS.

18          MS. TUCHER:  THANK YOU, YOUR HONOR.

19          MS. MAROULIS:  THANK YOU, YOUR HONOR.

20          (WHEREUPON, THE PROCEEDINGS IN THIS

21    MATTER WERE CONCLUDED.)

22

23

24

25

1

2

3

4                    <u>CERTIFICATE OF REPORTER</u>

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23            /S/
               _____
24            LEE-ANNE SHORTRIDGE, CSR, CRR
               CERTIFICATE NUMBER 9595
25