1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3             SAN JOSE DIVISION

4

5

6   APPLE INC., A CALIFORNIA   )  C-11-01846 LHK
    CORPORATION,               )
                           )  SAN JOSE, CALIFORNIA
7             PLAINTIFF,   )
                           )  JUNE 21, 2012
8         VS.               )
                           )  PAGES 1-108
9   SAMSUNG ELECTRONICS CO.,   )
    LTD., A KOREAN BUSINESS    )
10  ENTITY; SAMSUNG           )
    ELECTRONICS AMERICA,      )
11  INC., A NEW YORK         )
    CORPORATION; SAMSUNG      )
12  TELECOMMUNICATIONS       )
    AMERICA, LLC, A DELAWARE   )
13  LIMITED LIABILITY        )
    COMPANY,               )
14                        )
              DEFENDANTS.  )
15  —————————————————————————

16          TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23

24  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
              CERTIFICATE NUMBER 9595
25

                                    1

1

2    A P P E A R A N C E S:

3    FOR THE PLAINTIFF:  MORRISON & FOERSTER
                         BY:  HAROLD J. MCELHINNY,
4                             MICHAEL A. JACOBS
                         425 MARKET STREET
5                        SAN FRANCISCO, CALIFORNIA  94105

6                        WILMER, CUTLER, PICKERING,
                         HALE AND DORR
7                        BY:  WILLIAM F. LEE
                         60 STATE STREET
8                        BOSTON, MASSACHUSETTS  02109

9                        BY:  MARK D. SELWYN
                         950 PAGE MILL ROAD
10                       PALO ALTO, CALIFORNIA  94304

11

12   FOR THE DEFENDANT:  QUINN, EMANUEL, URQUHART,
                         OLIVER & HEDGES
13                       BY:  VICTORIA F. MAROULIS
                              KEVIN P.B. JOHNSON
14                       555 TWIN DOLPHIN DRIVE
                         SUITE 560
15                       REDWOOD SHORES, CALIFORNIA  94065

16                       BY:  MICHAEL T. ZELLER
                         865 SOUTH FIGUEROA STREET
17                       10TH FLOOR
                         LOS ANGELES, CALIFORNIA  90017

18

19

20

21

22

23

24

25

2

```
1    SAN JOSE, CALIFORNIA              JUNE 21, 2012
2                   P R O C E E D I N G S
3              (WHEREUPON, COURT CONVENED AND THE
4    FOLLOWING PROCEEDINGS WERE HELD:)
5              THE CLERK:  CALLING CASE NUMBER
6    C-11-01846 LHK, APPLE, INCORPORATED VERSUS SAMSUNG
7    ELECTRONICS COMPANY LIMITED, ET AL.
8              MR. MCELHINNY:  GOOD AFTERNOON, YOUR
9    HONOR.  FOR THE PLAINTIFF, HAROLD MCELHINNY AND
10   MICHAEL JACOBS.
11             MR. LEE:  GOOD MORNING, YOUR HONOR.  ALSO
12   FOR APPLE, MARK SELWYN AND BILL LEE.
13             THE COURT:  OKAY.  GOOD AFTERNOON.
14             MR. JOHNSON:  GOOD AFTERNOON, YOUR HONOR.
15   KEVIN JOHNSON FOR SAMSUNG, AND WITH ME ARE
16   VICKI MAROULIS AND MIKE ZELLER.
17             MR. ZELLER:  GOOD AFTERNOON, YOUR HONOR.
18             THE COURT:  OKAY.  GOOD AFTERNOON.
19             OKAY.  I HAVE QUESTIONS.  SAMSUNG'S
20   MOTION CHALLENGES ALL OF APPLE'S CAUSES OF ACTION,
21   AND I HAVE QUESTIONS BASICALLY ON EACH.
22             LET'S START WITH THE TRADE DRESS, TRADE
23   DRESS DILUTION ISSUE.
24             LET ME ASK, AND IF -- MR. MCELHINNY, ARE
25   YOU HANDLING THIS ISSUE?
```

1          MR. MCELHINNY:  IT'LL BE ME, YOUR HONOR.

2     OR IT'LL BE I.

3          THE COURT:  OKAY.  SO SHOULDN'T

4     WHETHER -- SHOULDN'T APPLE'S FAME BE MEASURED AT

5     THE TIME THAT SAMSUNG ALLEGEDLY -- WELL, RELEASED

6     THEIR ALLEGEDLY INFRINGING PRODUCTS?  ISN'T THAT

7     THE RELEVANT TIME PERIOD?

8          MR. MCELHINNY:  I BELIEVE THAT'S THE

9     TEST, YOUR HONOR.

10          THE COURT:  OKAY.  THEN WHAT EVIDENCE IS

11     THERE IN THE RECORD THAT ESTABLISHES FAME AT THOSE

12     MOMENTS FOR, YOU KNOW, THE FIRST SAMSUNG

13     SMARTPHONE, NOVEMBER OF '07, THE GALAXY IN MARCH OF

14     2010, AND THE TABLET IN NOVEMBER OF 2010?

15          MR. MCELHINNY:  YES, YOUR HONOR.  MAY I

16     COME UP?

17          THE COURT:  SURE.

18          MR. MCELHINNY:  WHERE WOULD YOU LIKE ME

19     TO --

20          THE COURT:  WHENEVER YOU'RE MOST

21     COMFORTABLE IS FINE.

22          MR. MCELHINNY:  OBVIOUSLY THE EVIDENCE IS

23     DIFFERENT FOR EACH OF THOSE TIME PERIODS, BUT

24     ESSENTIALLY IT FALLS INTO A NUMBER OF BUCKETS.

25          IT FALLS INTO THE -- FIRST OF ALL, AS

4

1        YOUR HONOR KNOWS, THE COURTS HAVE APPLIED EIGHT

2        SORT OF NON-STATUTORY FACTORS IN ORDER TO DETERMINE

3        WHETHER OR NOT THERE'S FAME, AND SO EACH ONE OF THE

4        EIGHT FACTORS HAS TO BE ADDRESSED AT THE VARIOUS

5        TIMES.

6                BUT THE EVIDENCE IN THE RECORD, AND THE

7        SPECIFIC ANSWER TO YOUR QUESTION, IS THE EVIDENCE

8        THAT WE'VE PUT IN ABOUT THE, LITERALLY, HUNDREDS OF

9        MILLIONS OF DOLLARS OF ADVERTISING THAT HAVE GONE

10       IN DIRECTED TO THE ELEMENTS OF THE TRADE DRESS,

11       IT'S WHAT WE CALL THE "PRODUCT AS HERO"

12       ADVERTISING, AND IN TERMS OF THE DECLARATIONS THAT

13       YOU'VE GOT, IT'S GOT NUMBERS, THE BACKUP --

14               THE COURT:  BUT ISN'T THAT SORT OF MORE

15       CUMULATIVE AND AGGREGATED?  I'M JUST WONDERING,

16       WHAT'S SPECIFIC AS TO THOSE SPECIFIC TIME PERIODS

17       THAT I WOULD NEED TO FIND THAT THE FAME HAS BEEN

18       ESTABLISHED?

19               MR. MCELHINNY:  I BELIEVE WHAT YOU HAVE

20       IS IN THE DECLARATIONS.  YOU HAVE AN AGGREGATED

21       NUMBER WHICH IS BASED ON DOCUMENTS THAT ARE IN THE

22       RECORD FROM WHICH THAT HAS BEEN ACCUMULATED.

23               I DO NOT BELIEVE THAT OUR DECLARATIONS

24       BREAK IT OUT FOR SPECIFIC TIME PERIODS LIKE YOUR

25       HONOR IS ASKING, BUT I THINK THAT IS THE UNDERLYING

```
 1    INFORMATION ON WHICH THE DECLARANTS ARE RELYING.

 2              THE COURT:  AND THOSE UNDERLYING

 3    DOCUMENTS, ARE THEY EXHIBITS TO THE DECLARATIONS?

 4    OR YOU'RE JUST SAYING GENERALLY IN THE PRODUCTIONS

 5    THEY INCLUDE DOCUMENTS THAT SUPPORT THE AGGREGATED

 6    NUMBER?

 7              MR. MCELHINNY:  I THINK IT'S A

 8    COMBINATION OF BOTH, AND I JUST --

 9              THE COURT:  OKAY.

10              MR. MCELHINNY:  I CANNOT AT THIS MOMENT

11    CITE YOU TO A SPECIFIC EXHIBIT THAT BREAKS IT OUT.

12              BUT I CERTAINLY KNOW THE LATTER IS TRUE.

13    I CERTAINLY KNOW THERE ARE A NUMBER OF DOCUMENTS

14    THAT HAVE BEEN PRODUCED ON ADVERTISING, 30(B)(6)

15    DEPOSITIONS THAT HAVE BEEN TAKEN ON ADVERTISING

16    THAT GO AS TO WHEN THE PRODUCTS WERE RELEASED.

17              OBVIOUSLY THIS STARTED FOR US IN JANUARY

18    OF 2007, AND OBVIOUSLY THERE'S A FAIR AMOUNT OF

19    ADVERTISING GOING ON IMMEDIATELY IN TERMS OF THE

20    DESIGNS AND THE NOVELTY AND THE NEWSPAPER ARTICLES

21    AND THE PUBLICITY THAT SURROUNDED WHAT WAS

22    GENERALLY RECOGNIZED TO BE A NOVEL AND

23    REVOLUTIONARY DESIGN THAT CAME OUT RIGHT THEN.

24              THE IPOD HAD COME BEFORE, WHICH HAD

25    SIMILAR ELEMENTS OF THE --
```

1          THE COURT:  I'M SORRY.  I'M GOING TO

2     INTERRUPT YOU HERE.

3          MR. MCELHINNY:  YES, MA'AM.

4          THE COURT:  -- JUST BECAUSE WE HAVE A LOT

5     TO COVER TODAY.

6          HOW SPECIFIC DOES THE FAME HAVE TO BE?

7     FOR EXAMPLE, WITH THE 3G, DO FOLKS NEED TO KNOW

8     THAT THAT'S A 3G, OR DO THEY JUST NEED TO KNOW,

9     THIS IS AN APPLE IPHONE?  WHAT'S THE LEVEL OF

10    SPECIFICITY FOR FAME?

11         MR. MCELHINNY:  I THINK -- I THINK THE

12    ANSWER, IN OUR CASE, IS THAT FOR THE TRADEMARK FOR

13    WHICH WE'RE ASSERTING DILUTION, THE FAME HAS TO

14    BE THE FAME ON WHICH THE ELEMENTS OF THAT TRADEMARK

15    ARE ASSOCIATED WITH A PRODUCT, AND IN THIS CASE

16    WITH APPLE'S PRODUCT.

17         SO I THINK IT HAS TO BE -- I THINK THE

18    RESULT OF THE FAME HAS TO BE THE RECOGNITION OF THE

19    TRADEMARK AND HOW THAT IS ATTRIBUTABLE AND HAS

20    SECONDARY MEANING AS BELONGING TO APPLE AS A

21    COMPANY.

22         THAT'S WHY I FOCUS, AND I'M NOT GOING

23    TO -- I'M NOT GOING TO TALK LONGER THAN YOU WANT ME

24    TO TALK, BUT THAT'S WHY I FOCUS ON THE NATURE OF

25    APPLE'S ADVERTISING IN THIS "PRODUCT AS HERO" THAT

1    LARGELY GO TO PICTURES OF THE PRODUCTS THEMSELVES,

2    THE BREAKTHROUGH PRODUCTS.

3          WE ALSO -- I DIDN'T FINISH MY ANSWER.  WE

4    ALSO HAVE, IN A SIMILAR FASHION, THE NUMBERS OF

5    SALES, AND THAT I KNOW YOU HAVE A MORE COMPLETE

6    RECORD OF BECAUSE WE'VE PUT IN THE NUMBERS OF

7    PRODUCTS THAT WERE SOLD WITHIN THE DATE OF THEIR

8    RELEASE AND HOW UNUSUAL THAT WAS IN TERMS OF --

9          AND THEN THE DESIGN AWARDS.  WE HAVE THE

10   SPECIFIC DATES FOR THE DESIGN AWARDS.

11         WE HAVE THE SPECIFIC DATES FOR THE MUSEUM

12   SHOWS.

13         ALL OF THAT IS IN THE RECORD THAT WOULD

14   ACTUALLY LET YOU TIE IT TO A SPECIFIC CHRONOLOGY.

15         THE COURT:  OKAY.  THANKS.

16         LET'S GO TO THE DESIGN PATENTS.

17         WITH THE '334, IS THERE GOING TO BE A

18   STIPULATION?  IT WAS A LITTLE BIT MAYBE SLIGHTLY

19   VAGUE AS TO WHETHER SAMSUNG WAS GOING TO STIPULATE

20   TO THAT OR NOT.

21         MR. MCELHINNY:  I BELIEVE THE STATE OF

22   THE RECORD, AS I UNDERSTAND IT, IS WE HAVE AN

23   AGREEMENT THERE WILL BE A STIPULATION.  THEY WERE

24   REVIEWING THE FORM OF IT.

25         MR. ZELLER:  YES, YOUR HONOR.  WE

8

1    RECEIVED NOTICE FROM APPLE LATE YESTERDAY AFTERNOON

2    ABOUT ITS INTENTION TO STIPULATE TO DROPPING THAT

3    PATENT.

4            BECAUSE OF THE TIME DIFFERENCE AND THE

5    LIKE AND COMMUNICATING WITH THE CLIENT, WE WEREN'T

6    ABLE TO RESPOND IMMEDIATELY, BUT IT IS OUR

7    INTENTION TO STIPULATE AS TO THE '334.

8            THE COURT:  OKAY.  WHEN CAN THAT BE

9    FILED?

10           MR. MCELHINNY:  THEY HAVE OUR PROPOSED

11   STIPULATION.

12           MR. ZELLER:  TODAY.

13           THE COURT:  YOU'LL FILE IT TODAY?

14           MR. ZELLER:  YES.

15           THE COURT:  OH, GREAT.  BECAUSE I HAVE

16   QUESTIONS ON THE '334, BUT I'M NOW GOING TO SKIP

17   THIS BECAUSE I DON'T SEE ANY REASON TO WASTE OUR

18   TIME ON THIS.

19           MR. MCELHINNY:  WE DO NOT INTEND TO

20   PROCEED.  WE TOLD YOUR HONOR THAT WE WERE GOING TO

21   MAKE AN ELECTION AND WE MADE IT.

22           THE COURT:  OKAY.  SO PLEASE FILE THAT ON

23   JUNE 21, 2012.  AND THAT'S A DISMISSAL WITHOUT

24   PREJUDICE; CORRECT?

25           MR. MCELHINNY:  YES, YOUR HONOR.

9

1          THE COURT:  OKAY.  LET ME ASK, AND THIS

2   IS A QUESTION FOR BOTH SIDES, WHAT THE DIFFERENCE

3   IS FOR A DESIGN PATENT WHEN YOU'RE LOOKING AT

4   OBVIOUSNESS BETWEEN AN ANTICIPATORY REFERENCE AND A

5   PRIMARY REFERENCE?  ARE THOSE THE SAME THING FOR

6   DESIGN PATENTS?  AND IF NOT, WHAT'S THE DIFFERENCE?

7          MR. MCELHINNY:  MY POSITION IS THAT THEY

8   HAVE TO BE -- THEY WOULD BE VERY CLOSE TO THE SAME

9   THING.

10          AND BECAUSE OF THE DEFINITION -- THE

11   DEFINITION OF A PRIMARY REFERENCE IS ONE THAT, AS

12   THE COURT HAS TAUGHT US IN THIS CASE, IS SOMETHING

13   THAT HAS BASICALLY THE SAME CHARACTERISTICS AS THE

14   CLAIMED DESIGN.  THAT'S THE TEST FOR THE PRIMARY

15   REFERENCE.

16          THE COURT:  SO WHAT'S THE DIFFERENCE THEN

17   WITH AN ANTICIPATORY REFERENCE?

18          MR. MCELHINNY:  AND I THINK THE

19   DIFFERENCE -- WELL, THAT'S WHY I SAY I THINK

20   THEY'RE QUITE CLOSE.

21          THE COURT:  SO WHAT'S SEPARATING THEM

22   FROM BEING THE SAME?

23          MR. MCELHINNY:  THE DIFFERENCE, AS I

24   UNDERSTAND IT, IS THAT THERE -- ALTHOUGH IT'S

25   BASICALLY THE SAME, THERE COULD BE SOME, YOU KNOW,

1    ADDITIONAL DIFFERENCE THAT AN OBSERVER WOULD SEE

2    THAT COULD BE FILLED IN IF YOU FOUND A SECONDARY

3    REFERENCE THAT SUGGESTED THE COMBINATION OF THE

4    TWO.

5              WHAT YOU CAN'T DO, TO USE OUR EXAMPLE, IS

6    YOU CAN'T TAKE A CONVEX FACE OF A PRODUCT AND THEN

7    FIND SOMETHING THAT HAS A FLAT FACE AND THEN SAY,

8    "WELL, WE WOULD HAVE MADE THE CONVEX FACE FLAT"

9    BECAUSE THOSE ARE TWO DIFFERENT DESIGN APPROACHES.

10             THE COURT:  OKAY.  I'M TRYING TO WRITE

11   THIS DOWN.  YOU SAID IT'S BASICALLY THE SAME, BUT

12   THE DIFFERENCE OBSERVED BY AN OBSERVER --

13             MR. MCELHINNY:  I'LL TRY IT AGAIN.

14             THE COURT:  YEAH.

15             MR. MCELHINNY:  OUR POSITION IS -- I

16   MEAN, THE TEST IS BASICALLY THE SAME FOR YOUR

17   PRIMARY REFERENCE.

18             THE COURT:  RIGHT.  SO WHAT'S --

19             MR. MCELHINNY:  IF YOU HAVE --

20             THE COURT:  UM-HUM.

21             MR. MCELHINNY:  -- A DESIGN THAT YOU DO

22   NOT HAVE AN ANTICIPATORY REFERENCE, YOU DON'T HAVE

23   THE IDENTICAL DESIGN, BUT YOU HAVE ONE THAT IS

24   EXTREMELY CLOSE -- I DON'T WANT TO CHANGE THE

25   WORDS, I WANT TO SAY BASICALLY THE SAME -- YOU ARE

11

1    PERMITTED TO SHOW ADDITIONAL PRIOR ART THAT YOU

2    WOULD COMBINE, BUT ONLY IF THAT ADDITIONAL PRIOR

3    ART IS OF A NATURE THAT THE COMBINATION WOULD BE

4    SUGGESTED BY THE ART ITSELF.

5              THE COURT:  OKAY.  SO YOU WOULD BASICALLY

6    SAY THAT AN ANTICIPATORY REFERENCE IS IDENTICAL?

7              MR. MCELHINNY:  I WOULD, YOUR HONOR.

8              THE COURT:  AND -- I'M SORRY.  YOU SAID

9    YES?

10             MR. MCELHINNY:  I WOULD SAY THAT.

11             THE COURT:  OKAY, OKAY.

12             BUT THAT A PRIMARY IS JUST BASICALLY THE

13   SAME?

14             MR. MCELHINNY:  THAT'S WHAT I WOULD SAY.

15   THAT'S WHAT I SHOULD HAVE SAID.  SORRY.

16             THE COURT:  IS THAT --

17             MR. JOHNSON:  YOUR HONOR, MR. ZELLER IS

18   GOING TO HANDLE THE DESIGN PORTIONS.

19             THE COURT:  ALL RIGHT.

20             DO YOU AGREE WITH THAT?

21             MR. ZELLER:  NO, YOUR HONOR.

22             THE COURT:  ALL RIGHT.  WHAT'S THE

23   DIFFERENCE?

24             MR. ZELLER:  I THINK THE REAL PROBLEM IS

25   IT DOES COLLAPSE THE DISTINCTION BETWEEN

                                                    12

1    ANTICIPATION AND OBVIOUSNESS, AND ANTICIPATION

2    OCCURS WHEN THE ORDINARY OBSERVER WOULD CONSIDER

3    THE DESIGNS TO BE SO MUCH THE SAME THAT THE

4    ORDINARY OBSERVER WOULD BE DECEIVED IN THE

5    PURCHASING CONTEXT, THE GORHAM STANDARD WOULD BE

6    MET.

7            OBVIOUSNESS OBVIOUSLY DOES NOT HAVE TO

8    MEET ANYTHING THAT STRINGENT OR ELSE THERE WOULD BE

9    NO OBVIOUSNESS DOCTRINE THAT IS SEPARATE AND APART

10   FROM ANTICIPATION.

11           AND THE TEST THAT'S STATED IS THAT IT'S

12   BASICALLY THE SAME DESIGN CHARACTERISTICS, AND

13   THAT'S FROM DURLING.

14           THE ONLY -- THE ONE WAY OF RECONCILING

15   THESE, AT LEAST IN MY OWN VIEW, IS THAT BASICALLY

16   THE SAME MEANS THAT IT HAS TO HAVE BASICALLY THE

17   SAME OVERALL IMPRESSION, ONCE YOU, OF COURSE,

18   COMBINE REFERENCES; BUT IT DOESN'T HAVE TO BE SO

19   CLOSE THAT IT IS A DECEPTIVE SIMILARITY IN THE

20   PURCHASING CONTEXT, AND THAT'S WHERE I THINK THE

21   DIVIDING LINE COMES ABOUT.

22           THE COURT:  I GUESS I DON'T SEE ANY

23   DIFFERENCE BETWEEN WHAT THE TWO OF YOU HAVE JUST

24   SAID.

25           MR. MCELHINNY, DO YOU HAVE ANY PROBLEM

13

1    WITH WHAT MR. ZELLER JUST SAID?

2            MR. MCELHINNY:  I DO, BUT FOR COMPLETELY

3    UNRELATED REASONS.

4            WE JUST FINISHING LITIGATING EXACTLY THIS

5    ISSUE IN THE ITC, AND MR. ZELLER WANTS TO GET IN

6    CONSUMER DESIGN AS PART OF THE ELEMENT, SO THAT'S

7    WHY HE'S TALKING ABOUT DECEPTIVE AND THE CONSUMER.

8            BUT IF YOU TAKE THAT PART AWAY, THEN I

9    THINK HE DID SAY PRETTY MUCH THE SAME AS WHAT I

10   SAID.

11           MR. ZELLER:  I ACTUALLY DON'T THINK WE'RE

12   TALKING ABOUT THE SAME THING.

13           WHAT APPLE IS CLEARLY SAYING IS THAT THEY

14   ARE ESSENTIALLY THE SAME STANDARD, AND THEY ARE

15   NOT.

16           THERE CAN BE CERTAINLY AN OVERALL --

17           THE COURT:  THEY'RE SAYING IDENTICAL

18   VERSUS BASICALLY OVERALL IMPRESSION IS THE SAME

19   THING.

20           MR. ZELLER:  RIGHT.

21           THE COURT:  I DON'T THINK THOSE ARE THE

22   SAME THING.

23           MR. ZELLER:  I THINK THEY ARE DIFFERENT

24   WHEN YOU APPLY THE GORHAM TEST IS WHAT I'M SAYING,

25   BECAUSE CLEARLY IT'S THE SAME ORDINARY OBSERVER

1    TEST THAT YOU APPLY GORHAM AND IT'S A VERY

2    SPECIFIC, NARROW TEST THAT HAS TO MEET ALL THE

3    STANDARDS SET FORTH IN THE GORHAM STANDARD.

4         THE COURT:  LET ME ASK YOU, IS THE

5    DETERMINATION OR SELECTION OF A PRIMARY REFERENCE A

6    JURY QUESTION?

7         MR. ZELLER:  NO, YOUR HONOR.  IT -- IN

8    THIS CONTEXT, WE DON'T BELIEVE SO.  WE BELIEVE THAT

9    THE COURT CAN MAKE THAT DETERMINATION.

10        THAT'S WHAT DURLING, WE BELIEVE, STANDS

11   FOR THE PROPOSITION THAT THE COURT CAN MAKE THAT

12   DETERMINATION WHERE NO REASONABLE JURY COULD COME

13   TO A DIFFERENT CONCLUSION.

14        OBVIOUSLY IF THERE ARE DISPUTED ISSUES OF

15   FACT, WE WOULD AGREE THAT THEN WE'RE BACK INTO A

16   TERRITORY WHERE THE JURY HAS TO DECIDE THE

17   QUESTION.

18        BUT WE WOULD SUBMIT THAT, BASED ON THE

19   PRIOR ART REFERENCES THAT WE DO HAVE, AS WELL AS

20   THE STANDARD, OR THE CONSTRUCTION, I SHOULD SAY,

21   THAT APPLE IS ASSERTING HERE, THAT NO REASONABLE

22   JURY COULD FIND ANYTHING OTHER THAN THAT THESE

23   DESIGNS ARE OBVIOUS.

24        THE COURT:  OKAY.  LET ME HEAR FROM

25   MR. MCELHINNY.

15

1              MR. MCELHINNY:  I WOULD SAY THAT

2     MR. ZELLER HAS NOT ANSWERED YOUR QUESTION AND HAS

3     ANSWERED HIS OWN QUESTION.

4              EVERY STEP OF THIS ELEMENT IS A QUESTION

5     OF FACT.

6              DETERMINING WHETHER OR NOT THE TWO

7     DESIGNS ARE BASICALLY THE SAME AND, THEREFORE, CAN

8     SERVE AS A PRIMARY REFERENCE IS A QUESTION OF FACT.

9              DETERMINING WHETHER OR NOT THE SECONDARY

10    REFERENCES SUGGEST A COMBINATION IS BASED ON EXPERT

11    OPINION, BUT IS A QUESTION OF FACT.

12             ALL OF THESE, EVERY ELEMENT OF THIS

13    REQUIRES ONE TO BE COMPARED TO ANOTHER, WHICH IS

14    WHAT THE TRIER OF FACT IS DOING IN ORDER TO

15    DETERMINE HOW AN ORDINARY OBSERVER WOULD DETERMINE

16    THE SIMILARITY.

17             MR. ZELLER'S ANSWER TO THAT, HE WOULD

18    HOPE THAT ON THIS QUESTION YOU WERE GOING TO GO

19    FURTHER AND SAY NO REASONABLE JURY COULD DECIDE

20    THAT.  THAT DOESN'T ANSWER YOUR QUESTION.

21             THE QUESTION IS -- THESE ARE QUESTIONS OF

22    FACT, AND WE THINK THERE'S A CONFLICT IN THE FACTS

23    IN THE RECORD.

24             MR. ZELLER:  YOUR HONOR, I APOLOGIZE.  I

25    THOUGHT I DID ANSWER THE COURT'S QUESTION.

```
 1              I DON'T THINK THERE'S A DISAGREEMENT THAT
 2    WHAT WE'RE LOOKING AT IS A QUESTION OF FACT.
 3              BUT THAT DOES NOT -- THAT IS NOT
 4    DETERMINATIVE OF WHETHER OR NOT A COURT CAN ENTER
 5    SUMMARY JUDGMENT ON A QUESTION LIKE OBVIOUSNESS.
 6              THE FACTS ARE UNDISPUTED AND A JURY COULD
 7    ONLY COME TO ONE CONCLUSION, EVEN IF IT IS A
 8    FACTUAL ISSUE.  THIS IS A WELL-KNOWN STANDARD FOR
 9    SUMMARY JUDGMENT.  THERE HAVE TO BE TRIABLE ISSUES
10    OF FACT, NOT JUST SIMPLY THAT THERE ARE ISSUES OF
11    FACT.
12              THE COURT:  OKAY.  SO YOUR -- IS YOUR
13    POSITION JUST THAT SUMMARY JUDGMENT SHOULD BE
14    GRANTED IN YOUR FAVOR, OR THAT THE COURT SHOULD
15    ACTUALLY GIVE AN INSTRUCTION TO THE JURY?
16              MR. ZELLER:  WE BELIEVE THAT THE COURT
17    SHOULD GRANT SUMMARY JUDGMENT IN OUR FAVOR.  WE'RE
18    THE MOVANT ON OBVIOUSNESS.
19              NOW, OBVIOUSLY IF THERE ARE ISSUES OF
20    FACT AND THAT'S THE COURT'S DETERMINATION ON OUR
21    SUMMARY JUDGMENT MOTION, THEN IT GOES TO THE JURY
22    AND WHAT THE JURY IS INSTRUCTED ON IS THE
23    APPROPRIATE LEGAL STANDARD.
24              THE COURT:  OKAY.  SO YOUR ANSWER IS,
25    THEN, YOU DO THINK IT'S A JURY QUESTION, BUT YOUR
```

```
1    EVIDENCE JUSTIFIES SUMMARY JUDGMENT AND, THUS, IT

2    DOESN'T NEED TO GO TO THE JURY?

3           MR. ZELLER:  RIGHT.  BASICALLY IT'S THE

4    USUAL SUMMARY JUDGMENT STANDARD.

5           THE COURT:  ALL RIGHT.  THANK YOU.

6           LET ME GO TO THE ANTITRUST ISSUES AND

7    THEN WE'LL HANDLE THE UTILITY PATENTS.

8           I ASSUME THAT'S MR. LEE.  IS THAT RIGHT?

9           MR. LEE:  YES, YOUR HONOR.

10          THE COURT:  OKAY.  WHY DIDN'T YOU PROVIDE

11   ANY EVIDENCE, ANY AFFIDAVITS, ANYTHING ESTABLISHING

12   THE AMOUNT OF ATTORNEYS' FEES?  I'M ASSUMING YOU'RE

13   NOT DOING THIS PRO BONO.

14          MR. LEE:  ON THAT YOU'RE CORRECT, YOUR

15   HONOR.

16          THE COURT:  OKAY.

17          MR. LEE:  LET ME SAY, IF I COULD, YOUR

18   HONOR, TWO THINGS.

19          THE COURT:  YEAH.

20          MR. LEE:  ONE IS THIS ISSUE THAT YOUR

21   HONOR IS FOCUSSING ON WAS NOT THE FOCUS OF THE

22   MOTION AS FILED.  THERE WAS A QUESTION OF WHETHER

23   ATTORNEYS' FEES COULD CONSTITUTE ANTITRUST INJURY.

24          THE COURT:  I THINK IT DOES.

25          MR. LEE:  I THINK IT DOES.  I THINK HYNIX
```

18

1    ANSWERS MOST OF THE QUESTIONS THAT WERE BASICALLY

2    PUT AT ISSUE ON THE ORIGINAL MOTION.

3            YOUR HONOR WILL RECALL THAT THOSE ISSUES,

4    THE HYNIX ISSUE, THE QUESTION WAS WHETHER YOU HAD

5    TO HAVE A HANDGUARDS CLAIM IN ORDER FOR ATTORNEYS'

6    FEES OR COSTS TO BE LITIGATION ANTITRUST INJURY.

7            THE QUESTION OF WHETHER OUR EXPERT HAS

8    ADDRESSED ANTITRUST INJURY ALL WERE ADDRESSED IN

9    OUR RESPONSE.

10           THEN ON REPLY, OF COURSE IT BECOMES,

11   "WELL, ACTUALLY, THAT'S NOT WHAT WE'RE TALKING

12   ABOUT.  WHAT WE'RE TALKING ABOUT IS YOU DON'T HAVE

13   INJURY IN FACT AS A MATTER OF PROOF."

14           AND THE ANSWER, YOUR HONOR, IS WE DO, AND

15   I WILL ANSWER YOUR QUESTION PRECISELY.

16           WE COULD PUT IN OUR LEGAL FEES AND ALL OF

17   OUR LEGAL EXPENSES AS ANTITRUST INJURIES UNDER THE

18   HYNIX DECISION.

19           WE'VE ACTUALLY DECIDED NOT TO.  I THINK

20   YOUR HONOR KNOWS AND YOUR HONOR HAS COMMENTED --

21           THE COURT:  SO YOU'RE JUST ASKING FOR

22   NOMINAL DAMAGES, OR WHAT?

23           MR. LEE:  NO.  WE ACTUALLY HAVE PUT IN --

24   THERE IS IN THE RECORD BEFORE YOU THE FEES AND

25   EXPENSES OF TWO OF THE EXPERTS WHOSE FEES HAVE BEEN

1    INCURRED IN DEFENDING AGAINST THE STANDARD AND

2    ESSENTIAL PATENTS.

3              NOW, TWO OF THOSE PATENTS HAVE DROPPED

4    OUT.

5              WE HAVE FOUR OTHER EXPERTS WHO WILL

6    TESTIFY, DEPENDING UPON THE MANNER IN WHICH THE

7    CASE GETS PARED DOWN BEFORE --

8              THE COURT:  I DON'T REMEMBER SEEING ANY

9    OF THIS IN YOUR OPPOSITION.

10             MR. LEE:  YOUR HONOR, THE TWO -- WE HAVE

11   SUBMITTED THE TWO DEPOSITION TRANSCRIPTS OF THE TWO

12   EXPERTS ON STANDARD AND ESSENTIAL PATENTS.

13             I CAN GIVE YOU THEIR -- LET ME GET YOU

14   THEIR PRECISE NAMES.

15             BUT THEY'RE THERE AND THEY BOTH TESTIFIED

16   AS TO THEIR FEE ARRANGEMENT AND THE FACT THAT THEY

17   HAVE INCURRED THOSE FEES.

18             IN ADDITION, IN ADDITION, WE WOULD

19   SUBMIT -- WE WILL HAVE OUR EXPERTS, DR. KIM,

20   DR. KNIGHTLY, DR. STARK, DR. GITLIN, TESTIFY AND

21   THEY WILL TESTIFY TO THE FACT OF THEIR FEES AND

22   EXPENSES IN DEFENDING AGAINST THE STANDARD AND

23   ESSENTIAL PATENTS.

24             THERE'S NO REQUIREMENT THAT WE PUT IT IN

25   THROUGH AN EXPERT.

```
1              THERE'S A REQUIREMENT THAT WE HAVE

2    EVIDENCE THAT WE HAVE HAD FEES, EXPENSES, COSTS.

3    WE'RE GOING TO PUT THOSE IN.

4              THERE IS, FROM THE OTHER TWO EXPERTS,

5    INFORMATION IN THE RECORD THAT DEMONSTRATES THAT

6    INJURY IN FACT.

7              THE COURT:  SO THE ONLY RELIEF YOU ARE

8    CLAIMING, THEN, ON YOUR ANTITRUST CASE IS FEES AND

9    COSTS FOR SOME OF YOUR EXPERTS ON THE --

10             MR. LEE:  THE ONLY DAMAGES WE'RE

11   CLAIMING.

12             AND YOUR HONOR'S ORDER REQUIRES US TO

13   ARTICULATE AND IDENTIFY THOSE DAMAGES ON JULY 3RD,

14   AND WE WILL SPECIFICALLY, THOSE SPECIFIC DAMAGES.

15             THE ONLY REASON, YOUR HONOR, I HESITATED

16   ON THE QUESTION OF RELIEF, THERE ARE TWO TYPES OF

17   RELIEF REQUESTED.

18             WE'RE REQUESTING THE FEES AND EXPENSES OF

19   THE EXPERT IN DEFENDING AGAINST THE STANDARD AND

20   ESSENTIAL PATENTS.

21             THE FACT OF THE MATTER IS THERE ARE OTHER

22   FEES AND EXPENSES THAT HAVE BEEN INCURRED, BUT JUST

23   AGGREGATING THEM IS JUST TOO PROBLEMATIC AND TOO

24   CONFUSING.

25             WE HAVEN'T PUT OUR FEES AT ISSUE, QUITE
```

1    HONESTLY, YOUR HONOR, BECAUSE THE PRODUCTION WE

2    WOULD HAVE TO MAKE TO PUT OUR FEES AT ISSUE WOULD

3    DISCLOSE SO MUCH ABOUT OUR LITIGATION STRATEGY THAT

4    WE DECIDED NOT TO DO IT.

5              THERE IS STILL THE QUESTION OF, IF WE

6    PROVE OUR ANTITRUST CLAIMS, IF WE PROVE OUR

7    DAMAGES, THERE'S STILL THE QUESTION OF INJUNCTIVE

8    RELIEF, BOTH AS TO THE UPSTREAM TECHNOLOGY MARKETS

9    AND TO THE DOWNSTREAM CONSUMER MARKET.

10             SO THERE ARE TWO TYPES OF RELIEF, BUT THE

11   RELIEF YOUR HONOR IS FOCUSSED ON, I THINK FOR

12   PURPOSES OF THIS MOTION, IS, IS THERE PROOF OF

13   DAMAGES?

14             THERE IS.  THE ISSUES THAT WERE PUT

15   BEFORE YOUR HONOR -- AND THE REASON WE DIDN'T

16   RESPOND IN THAT MANNER IS THAT IF YOUR HONOR LOOKS

17   AT THE BRIEFING, YOU'LL SEE THAT THE ISSUES THAT

18   WERE JOINED ON THE ANTITRUST MOTION AT THE OUTSET,

19   WHICH ARE THE HYNIX TYPE MOTIONS WE ENGAGED ON, I

20   THINK WE DEMONSTRATED THAT HYNIX RESOLVES THEM.

21             THE QUESTION OF OUR EXPERTS' TESTIMONY, I

22   THINK WE DEMONSTRATED THAT WENT TO THE DOWNSTREAM

23   MARKETS, NOT TO THE UPSTREAM MARKETS THAT YOUR

24   HONOR ADDRESSED ON YOUR MOTION TO DISMISS.

25             THE COURT:  LET ME ASK, YOU KNOW, ONE

22

1    QUESTION THAT IS RELATED TO THIS.

2              AT LEAST AS FAR AS, AND WE'LL TALK ABOUT

3    THIS MORE LATER, AT LEAST AS FAR AS THE '867

4    PATENT, APPLE'S POSITION SEEMS TO BE THIS IS A

5    STANDARD -- "THIS IS ONE OF THE STANDARD SETTING

6    PATENTS, WE SHOULD HAVE BEEN GIVEN FRAND LICENSING

7    TERMS."

8              BUT THEN THE PATENT -- YOU KNOW, THE

9    STANDARD ACTUALLY DOESN'T REQUIRE PRACTICING THE

10   PATENT.

11             SO HOW DO YOU SQUARE THAT?

12             MR. LEE:  THAT ACTUALLY IS A GREAT

13   QUESTION, AND YOUR HONOR, THIS IS HOW IT SQUARES.

14             IN FACT, MR. JOHNSON AND I WERE JUST

15   LITIGATING THIS IN ANOTHER ITC CASE A WEEK AGO.

16             A DECLARED ESSENTIAL PATENT IS ONLY

17   DECLARED BY, IN THIS CASE, SAMSUNG.  SAMSUNG

18   DECLARES IT ESSENTIAL.

19             THERE IS NO MECHANISM AT THE STANDARD

20   SETTING BODY TO TEST THAT DECLARATION.

21             IN FACT, MANY TIMES THEY'RE NEVER TESTED

22   AND MANY TIMES THEY'RE TESTED FOR THE FIRST TIME IN

23   A LITIGATION SUCH AS THIS.

24             SO LET ME GIVE YOU AN EXAMPLE, YOUR

25   HONOR --

                                                    23

1          THE COURT:  SO THEN WHY ARE YOU ENTITLED

2   TO FRAND LICENSING IF YOU'RE SAYING THIS WAS A

3   SELF-SERVING, ERRONEOUS, SELF-DECLARATION UNDER THE

4   STANDARD OF ESSENTIAL PATENTS?

5          MR. LEE:  YOUR HONOR, MAYBE THE BEST I

6   CAN DO IS GIVE YOU AN ACTUAL EXAMPLE THAT'S BEEN

7   LITIGATED.

8          IN THE BROADCOM/QUALCOMM CASE IN

9   SAN DIEGO, THERE WAS A CLAIM THAT THE PATENT WAS

10  ESSENTIAL TO THE STANDARD.

11          OUR DEFENSE WAS ACTUALLY, AS A MATTER OF

12  FACT, IT'S NOT.  THERE'S A DIFFERENCE BETWEEN WHAT

13  GOT PATENTED AND WHAT THE STANDARD REQUIRES.

14          AND THAT IS THE '867 NON-INFRINGEMENT

15  ISSUE THAT YOUR HONOR HAS BEFORE YOU.

16          THE OTHER DEFENSE IS, BUT IF IT IS

17  ESSENTIAL, THERE'S A FRAND DECLARATION AND WE'RE

18  ENTITLED TO A FRAND LICENSE AND THERE'S AN

19  OBLIGATION.

20          BOTH OF THOSE ISSUES GOT LITIGATED SIDE

21  BY SIDE.  IN FACT, AT THE END OF THE DAY, THE

22  PATENT WAS DETERMINED NOT TO BE ESSENTIAL BECAUSE

23  IT WAS NOT INFRINGED BY THE MANNER IN WHICH THE

24  PEOPLE COMPLIED WITH THE STANDARD.

25          BUT THERE WAS ALSO -- THERE WAS AN

1    ADDITIONAL FINDING, AFFIRMED BY THE FEDERAL

2    CIRCUIT, THAT THE PATENT WAS UNENFORCEABLE IN ANY

3    EVENT BECAUSE AT THE TIME THAT THE PATENT HAD BEEN

4    DECLARED ESSENTIAL, BEFORE THIS HAD EVER BEEN

5    LITIGATED, THERE HAD -- I'M TRYING TO DO IT IN A

6    NON-PEJORATIVE WAY.

7         BASICALLY THERE HAD BEEN STANDARDS

8    MANIPULATION AND MISUSE THAT RESULTED IN THE PATENT

9    BEING UNENFORCEABLE.

10        SO THEY WENT SIDE BY SIDE.

11        AND IF THE PATENT IS, IN FACT, ESSENTIAL,

12   IF IT COVERED THE STANDARD, THERE'S A FRAND

13   OBLIGATION THAT WOULD ENTITLE YOU TO A LICENSE.

14        YOUR HONOR, THE EASIEST ANALOGY IS THIS:

15   IF YOU WERE PRESENTED WITH A CASE WHERE SOMEONE

16   SAYS --

17        THE COURT:  YOU'RE JUST SAYING YOU DON'T

18   THINK IT'S PART OF THE STANDARD, BUT IF IT IS --

19        MR. LEE:  WE HAVE A LICENSE.

20        THE COURT:  -- THEN YOU HAVE A FRAND

21   LICENSE?

22        MR. LEE:  WE HAVE A LICENSE.  THAT'S IT.

23   THAT'S EXACTLY IT.

24        THE COURT:  ALL RIGHT.  OKAY.  LET ME

25   ASK, ARE YOU STILL GOING TO PURSUE YOUR UCL AND

—

1    CONTRACT CLAIMS AT THE TRIAL, OR ARE THOSE --

2              MR. LEE:  WE INTEND TO NOW.

3              AND, YOUR HONOR, FOR ALL OF THESE CLAIMS,

4    THE ANTITRUST CLAIMS, THE UCL CLAIMS, THE CONTRACT

5    CLAIMS, PARTICULARLY WHERE THERE'S SEVEN PATENTS

6    THAT SAMSUNG STILL HAS IN AND THE FOUR STANDARD

7    ESSENTIAL PATENTS, THE PROOF SO OVERLAPS WITH THE

8    QUESTION OF WHETHER THOSE PATENTS ARE ENFORCEABLE,

9    WERE PROCURED BY SOME FORM OF MISCONDUCT BEFORE THE

10   STANDARDS BODY OR -- BEFORE THE STANDARDS BODY SO

11   OVERLAPS THAT WE DON'T THINK, AS WE SIT HERE NOW,

12   THAT'S GOING TO REQUIRE A TREMENDOUS AMOUNT OF

13   ADDITIONAL TIME TO TRY THIS ISSUE.

14             THE COURT:  ALL RIGHT.  LET ME ASK

15   SAMSUNG --

16             MR. JOHNSON:  YOUR HONOR, MS. MAROULIS IS

17   GOING TO HANDLE THAT.

18             THE COURT:  ALL RIGHT.

19             MS. MAROULIS, CERTAINLY APPLE DIDN'T

20   HAVE -- I DIDN'T SEE ANYTHING ABOUT THEIR EXPERTS

21   IN THEIR OPPOSITION, BUT WHAT IS YOUR POSITION ON

22   THAT?  DO YOU THINK THAT EXPERT FEES AND COSTS

23   COULD CONSTITUTE THE ANTITRUST INJURY?

24             GO AHEAD.

25             MS. MAROULIS:  YOUR HONOR, WE SUBMIT THAT

1    THERE'S A FAILURE OF PROOF HERE.

2            WE'RE NOT DISPUTING THAT ATTORNEYS' FEES

3    CAN BE A FORM OF DAMAGES.

4            WHAT WE SAID, BOTH IN THE OPENING PAPERS

5    AND IN THE REPLY PAPERS, IS THAT HERE THERE WAS NO

6    SUBMISSION OF ANY EVIDENCE TO US VIA EITHER EXPERT

7    REPORT BY DR. ORDOVER, WHO ADMITTED THAT HE DID NOT

8    CALCULATE ANY OF THESE DAMAGES, OR IN ANY OTHER

9    FORM, THROUGH A WITNESS, THROUGH INTERROGATORY

10   RESPONSE.

11           IN OTHER WORDS, WE'RE HERE AT THE END OF

12   DISCOVERY, ABOUT TO START TRIAL IN SIX WEEKS, AND

13   WE HAVE NO NOTICE AND NO EVIDENCE THAT THEY HAVE

14   SUSTAINED DAMAGES AND THEY CAN PROVE DAMAGES.

15           THAT WAS THE CAUSE FOR THE MOTION FOR

16   SUMMARY JUDGMENT.

17           IN OPPOSITION, FOR THE FIRST TIME THEY

18   MADE A CLAIM THAT TWO PARTICULAR EXPERTS' FEES

19   COULD BE DAMAGES, BUT WE NEVER HEARD THAT BEFORE,

20   AND IF THEY'RE GOING TO BE LIMITED TO JUST THOSE

21   TWO EXPERTS THAT THEY PUT IN -- AND IT'S NOT CLEAR

22   THAT THEY'RE CONCEDING THAT -- THAT'S A PROBLEM AS

23   WELL BECAUSE THEY'RE NOW SAYING THEY CAN PROVE

24   ADDITIONAL ONES.

25           THE COURT:  WELL, I GUESS DO YOU HAVE

1    ANY -- YOU AGREE THAT ATTORNEYS' FEES WOULD BE

2    APPROPRIATE DAMAGES.

3              DO YOU THINK THE EXPERT FEES WOULD BE AS

4    WELL, HAD THEY BEEN TIMELY AND SUFFICIENTLY

5    DISCLOSED?

6              MS. MAROULIS:  YOUR HONOR, I DON'T HAVE A

7    CASE ON POINT, BUT IT'S CONSISTENT WITH THE

8    ATTORNEYS' FEES BEING A FORM OF DAMAGES AS WELL.

9              SO, AGAIN, WHERE WE'RE STARTING WITH HERE

10   IS THE FAILURE OF PROOF, NOT A CONCEPTUAL THAT YOU

11   CANNOT MAKE IT A DAMAGES ISSUE.

12             THE COURT:  OKAY.  BUT THEY COULD ALSO

13   JUST GET NOMINAL DAMAGES AS WELL; RIGHT?

14             MS. MAROULIS:  YOUR HONOR, NOMINAL

15   DAMAGES REQUIRE PROOF OF INJURY, AND DR. ORDOVER

16   ALSO COULD NOT QUANTIFY THE INJURY BECAUSE, FOR

17   EXAMPLE, HE ADMITTED THAT PORTION OF SAMSUNG'S

18   LITIGATION EFFORT WOULD BE OFFENSIVE TO HIM BECAUSE

19   THAT WOULD BE LITIGATING ROYALTY LICENSES AS

20   OPPOSED TO JUST INJUNCTION.

21             SO HE WAS LIMITING HIMSELF TO JUST

22   INJUNCTION ONLY.

23             SO WE SUBMIT THAT THEY HAVE NOT FULLY

24   PROVEN THE INJURY.

25             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

```
 1              MS. MAROULIS:  YOUR HONOR, DID YOU WANT
 2    ME TO ADDRESS THE OTHER ISSUES ABOUT ESSENTIALITY,
 3    OR DO YOU WANT TO LEAVE IT FOR ANOTHER DAY?
 4              THE COURT:  OH, YOU MEAN -- NO.  I WOULD
 5    LIKE TO TALK ABOUT THE '867, BUT ABOUT MORE
 6    SPECIFIC QUESTIONS THAN THAT QUESTION.
 7              MS. MAROULIS:  OKAY.
 8              THE COURT:  BUT THANK YOU.
 9              OKAY.  WHY DON'T WE GO TO THE '867.
10              WHO IS HANDLING THE '867?
11              MR. JOHNSON:  I AM FOR SAMSUNG, YOUR
12    HONOR.
13              MR. LEE:  AND I AM, YOUR HONOR.
14              THE COURT:  OKAY.  LET ME ASK IF THE
15    PARTIES THINK THAT ANY TERM NEEDS TO BE CONSTRUED,
16    AND IF SO, WHICH TERM?
17              MR. LEE:  YOUR HONOR, COULD I JUST -- ON
18    THE LAST POINT, CAN I JUST GIVE YOUR HONOR ONE
19    CITATION SO THAT YOU HAVE IT?
20              THE COURT:  OKAY.
21              MR. LEE:  IF YOU LOOK AT PAGE 23 AND 24
22    OF OUR BRIEF, AND THEN THE HAMKINS, H-A-M-K-I-N-S
23    DEPOSITION IN THE RECORD AT PAGE 12, LINES 6 TO 25,
24    AND THE VEERAVALLI DEPOSITION AT PAGE 10, LINES 2
25    TO 19, THOSE ARE TWO OF THE EXPERTS AND THEIR
```

1    TESTIMONY ABOUT THEIR FEES INCURRED IN DEFENDING

2    THE STANDARD AND ESSENTIAL PATENTS.

3             THE COURT:  OKAY.

4             MR. LEE:  OKAY.

5             THE COURT:  THANK YOU.

6             MR. LEE:  AT -- YOUR HONOR, OUR VIEW IS

7    THERE'S NO ISSUE TO BE CONSTRUED.  YOUR HONOR COULD

8    DECIDE THE MOTION WITHOUT ANY FURTHER CONSTRUCTION.

9             MR. JOHNSON:  AND, YOUR HONOR, FROM OUR

10   STANDPOINT, THERE ARE GENUINE ISSUES OF FACT THAT

11   RELATE TO THE NON-INFRINGEMENT OF THIS PARTICULAR

12   PATENT.

13            WE NOW SEE THAT THEY'RE TRYING TO READ

14   LIMITATIONS INTO THE PATENT THAT DIDN'T -- THAT

15   DON'T EXIST, AND SO WE THINK THAT THERE IS A CLAIM

16   CONSTRUCTION ISSUE HERE.

17            THE COURT:  AND WHICH -- WHICH TERMS DO

18   YOU THINK NEED TO BE CONSTRUED?

19            MR. JOHNSON:  WELL, I THINK IT'S THE --

20   IT'S THE LIMITATION THAT STARTS WITH GOLD CODE AS A

21   KTH PRIMARY SCRAMBLING CODE.

22            AND THE REASON I SAY THAT IS BECAUSE, FOR

23   THE FIRST TIME IN THEIR REPLY BRIEF -- THIS IS AT

24   PAGE 3 -- WE SEE A DEFINITION THAT THEY SAY IS A

25   CODE, BASICALLY A DEFINITION THAT IS A CODE THAT IS

1    USED FOR SPREADING THE DATA, AND THAT'S NOT A

2    DEFINITION THAT WE'D EVER SEEN BEFORE.  IT WASN'T

3    SOMETHING THAT THEY USED IN THEIR 4-2 DISCLOSURES.

4            IN THEIR 4-2 DISCLOSURES -- AND THIS IS

5    AT EXHIBIT H IN THE RECORD AT PAGE 17 -- THEY

6    DEFINE A SCRAMBLING CODE THAT'S USED FOR CHANNEL

7    SEPARATION.

8            SO WE THINK THE PATENT, THE CLAIMS, THE

9    SPECIFICATION, THE PROSECUTION HISTORY, ALL THE

10   INTRINSIC EVIDENCE SUPPORT THE FACT THAT A GOLD

11   CODE IS GENERATED BY THE ADDITION OF TWO

12   M-SEQUENCES, AND THE GOLD CODE IS THE SAME AS A

13   SCRAMBLING CODE, AND THAT'S RIGHT OUT OF THE CLAIM

14   LANGUAGE THAT SAYS "GOLD CODE AS A PRIMARY

15   SCRAMBLING CODE," AND IT'S RIGHT OUT OF THE

16   SPECIFICATION OF THE PATENT.

17           THIS IS SOMETHING I DON'T EVER SEE APPLE

18   ADDRESSING.

19           IN THE CONTEXT -- IF YOU WERE TO LOOK AT

20   COLUMN 2, LINES 13 TO 16, AND I HAVE A SLIDE I CAN

21   PUT UP ON THIS -- IT'S SLIDE NUMBER 8, PLEASE,

22   NOEL -- AND THIS IS RIGHT OUT OF THE SPEC, IT SAYS,

23   "IT SHOULD BE NOTED THAT FOR THE PURPOSES OF

24   ILLUSTRATION, THE TERM 'SCRAMBLING CODE' IS

25   INTERCHANGEABLE WITH THE TERM 'GOLD CODE' OR 'GOLD

1    SEQUENCE' INDICATING THE SAME CODE AS THE

2    SCRAMBLING CODE."

3              THAT'S RIGHT OUT OF THE SPECIFICATION.

4              THE COURT:  LET ME STOP YOU THERE AND LET

5    ME HAVE MR. LEE RESPOND TO THAT.

6              WHY AREN'T ALL GOLD CODES SCRAMBLING

7    CODES?

8              MR. LEE:  YOUR HONOR -- COULD WE HAVE OUR

9    SLIDE, SLIDE 18 -- AND I THINK, YOUR HONOR, I CAN

10   SHOW YOU THAT THIS CLAIM CONSTRUCTION ISSUE IS NOT

11   A CLAIM CONSTRUCTION ISSUE.

12             AND THE ANSWER, AS WE BRING UP THE SLIDE,

13   IS THIS:  IT IS TRUE FOR THE PURPOSE OF THIS TEST

14   -- AND I ACTUALLY THINK THE PORTION THAT

15   MR. JOHNSON CITES TO YOU, COLUMN 2, LINES 13 TO 16,

16   ACTUALLY DEMONSTRATES OUR POINT, WHICH IS FOR

17   PURPOSES OF THIS PATENT, ALL THE SCRAMBLING CODES

18   ARE GOLD CODES.

19             BUT NOT ALL SCRAMBLING CODES ARE GOLD

20   CODES, AND NOT ALL GOLD CODES ARE SCRAMBLING CODES.

21             THIS CLAIM, YOUR HONOR, REQUIRES ON ITS

22   FACE BOTH A GOLD CODE AND A GOLD CODE AS A

23   SCRAMBLING CODE.

24             THE BEST INDICATION HERE, THIS PATENT --

25   MR. JOHNSON IS 100 PERCENT CORRECT, ON THIS WE

                                              32

1     AGREE, IF YOUR HONOR LOOKS AT COLUMN 1, LINES 37 TO

2     44, COLUMN 2, LINES 13 TO 16, YOUR HONOR WILL

3     SEE -- AND THEN COLUMN 3, LINE 5 TO 15, THEY EQUATE

4     GOLD CODES AND SCRAMBLING CODES.

5              AND THEN THE CLAIM TERM, YOUR HONOR,

6     WHICH IS ON THE SCREEN RIGHT NOW, SAYS "GENERATES A

7     GOLD CODE AS THE KTH PRIMARY SCRAMBLING CODE."

8              SO MR. JOHNSON IS RIGHT.  THERE IS A

9     ONE-TO-ONE CORRESPONDENCE IN THIS CLAIM AND IN THIS

10    PATENT.

11             BUT THERE'S NO DISPUTE THAT NOT ALL GOLD

12    CODES ARE SCRAMBLING CODES AND NOT ALL SCRAMBLING

13    CODES ARE GOLD CODES.

14             IF I COULD HAVE OUR SLIDE 18 --

15             THE COURT:  BUT I DON'T SEE HOW THAT

16    LANGUAGE NECESSARILY SAYS THAT ALL GOLD CODES ARE

17    NOT SCRAMBLING CODES.

18             MR. LEE:  YOUR HONOR, WHAT THIS SAYS IS

19    YOU HAVE TO GENERATE A GOLD CODE AS THE SCRAMBLING

20    CODE.

21             SO IF WE THEN GO --

22             THE COURT:  BUT THAT DOESN'T MEAN THAT

23    ALL GOLD CODES ARE NOT SCRAMBLING CODES.

24             MR. LEE:  YOUR HONOR -- WELL, IT DOESN'T

25    MEAN THAT ALL GOLD CODES ARE NECESSARILY NOT

33

1       SCRAMBLING CODES, NOR DOES IT MEAN THAT ALL

2       SCRAMBLING CODES ARE GOLD CODES, AND THE BEST

3       INDICATION FOR YOU IS IF I COULD HAVE SLIDE 13.

4                   AND THESE ARE UNDISPUTED, YOUR HONOR.

5                   WHAT I'M GOING TO SHOW YOU ON SLIDE 13 IS

6       THE SCRAMBLING CODE FROM THE 3GPP STANDARD THAT'S

7       ACCUSED OF INFRINGING, AND I'M GOING TO DESCRIBE IT

8       NOW, BUT I'M GOING TO DESCRIBE IT TO YOU IN A

9       MANNER WHICH IS IDENTICAL TO THE MANNER IN WHICH

10      THEIR EXPERT DESCRIBES IT.

11                  AND THE PROCESS BEGINS, TO BE SURE, WITH

12      A GOLD CODE SEQUENCE, WHICH IS ZSUBN, AND ZSUBN IS

13      COMPUTED BY THE FORMULA THAT IS THE SECOND LINE

14      DOWN IN SLIDE 13.

15                  ZSUBN IS THEN USED TO CALCULATE SOMETHING

16      THAT'S CALLED CAPITAL ZSUBN, AND THEN, YOUR HONOR,

17      IS A THIRD STEP, THE SCRAMBLING CODE SEQUENCE FOR

18      THE STANDARD, WHICH IS S LITTLE D LITTLE T

19      APOSTROPHE N IS COMPUTED.

20                  AND IF I TAKE YOUR HONOR TO SLIDE, OUR

21      SLIDE 16 --

22                  THE COURT:  ACTUALLY, WHY DON'T YOU STOP

23      RIGHT THERE?

24                  MR. LEE:  SURE.

25                  THE COURT:  I'M GOING TO GIVE MR. JOHNSON

                                                          34

1    AN OPPORTUNITY TO RESPOND BECAUSE I DO THINK THAT

2    THIS PARTICULAR SLIDE DOES SUPPORT APPLE'S

3    POSITION.

4            YOU WANT TO ADDRESS THIS ONE?

5            MR. JOHNSON:  SURE.  I WANT TO GO BACK A

6    LITTLE BIT FIRST BECAUSE NOW WE'RE LOOKING AT

7    EXTRINSIC EVIDENCE, RIGHT?  WE'RE TALKING ABOUT THE

8    STANDARD.  WE'RE NOT --

9            THE SPECIFICATION OF THE PATENT, THE

10   INTRINSIC EVIDENCE, THE CLAIM LANGUAGE IS WHAT --

11   IS WHERE WE SHOULD START, AND THE CLAIM LANGUAGE

12   SAYS "GOLD CODE AS A KTH PRIMARY SCRAMBLING CODE,"

13   AND THERE IS A GENUINE ISSUE OF FACT HERE -- AND

14   INFRINGEMENT IS A QUESTION OF FACT, YOUR HONOR --

15   THERE'S A GENUINE ISSUE OF FACT HERE BETWEEN

16   WHETHER APPLE USES A GOLD CODE IN EVEN CALCULATING

17   THE SCRAMBLING CODE, AND THERE'S A GENUINE ISSUE OF

18   FACT HERE AS TO WHETHER THEY USE A GOLD CODE AT

19   ALL.

20           WE HAVE -- WE PUT IN THE RECORD, YOUR

21   HONOR, THE INTEL SOURCE CODE.  I CAN'T REFER TO IT

22   BECAUSE PART OF IT HAS BEEN DESIGNATED AS HIGHLY

23   CONFIDENTIAL BUT, YOUR HONOR, WE PUT IN THE PORTION

24   IN THE RECORD THAT REFERS TO THE INTEL --

25           THE COURT:  BUT HOW DO YOU RESPOND TO

```
 1      THEIR ARGUMENT THAT, YOU KNOW, THIS REQUIRES THE

 2      GOLD CODE TO BE USED AS THE SCRAMBLING CODE, BUT

 3      THAT THEY DON'T DO THAT DIRECTLY, THAT THEY HAVE TO

 4      DO SOMETHING ELSE TO THE GOLD CODE, AND WHATEVER

 5      RESULTS FROM THAT SOMETHING ELSE IS WHAT THEY USE

 6      TO SCRAMBLE?  SO HOW DO YOU -- IS THAT A D.O.E.

 7      ISSUE?

 8              MR. JOHNSON:  NO, IT'S NOT A D.O.E.

 9      ISSUE.  THE CLAIM REQUIRES A GOLD CODE.  THEY HAVE

10      A GOLD CODE.

11              THE COURT:  YOU CONCEDE YOU'VE GOT A GOLD

12      CODE.

13              MR. JOHNSON:  THAT'S WHERE THE DISPUTE

14      SHOULD END BECAUSE THAT'S WHAT THE CLAIM SAYS.

15              MR. LEE:  THE CLAIM SAYS, YOUR HONOR, A

16      GOLD CODE AS A SCRAMBLING CODE.

17              MR. JOHNSON:  IT SAYS GOLD CODE AND

18      SCRAMBLING CODE ARE INTERCHANGEABLE.  IT MEANS THE

19      SAME THING.

20              THE COURT:  RIGHT.

21              OKAY.  BUT ANSWER MY QUESTION.  IF THEIR

22      POSITION IS "WE HAVE A GOLD CODE BUT WE DO

23      SOMETHING ELSE TO IT, AND THE RESULT OF THE

24      SOMETHING ELSE IS WHAT WE USE AS SCRAMBLING CODE,"

25      HOW IS THAT INFRINGEMENT UNDER THIS CLAIM?
```

1          MR. JOHNSON:  BECAUSE THE GOLD CODE IS

2     USED -- EVEN UNDER THEIR DEFINITION, EVEN UNDER THE

3     STANDARD --

4          SORRY ABOUT THAT, I DON'T MEAN TO DO THAT

5     TO YOU.

6          (LAUGHTER.)

7          MR. JOHNSON:  WE SPENT A MONTH TOGETHER.

8     WE'RE VERY GOOD FRIENDS.

9          MR. LEE:  I'M QUITE SURE THAT MY LIFE IS

10    NOT IN DANGER.

11          (LAUGHTER.)

12          MR. JOHNSON:  SO WHEN YOU LOOK AT THE 3G

13    STANDARD HERE, IT'S TALKING ABOUT A GOLD CODE

14    SEQUENCE.

15          THERE'S NO -- EVEN APPLE IS FORCED TO

16    ADMIT THAT THE GOLD CODE SEQUENCE IS USED FOR

17    SCRAMBLING, AND DR. WESEL, SAMSUNG'S EXPERT, STATED

18    VERY SUCCINCTLY IN HIS DEPOSITION AND IN HIS

19    DECLARATION --

20          THE COURT:  BUT THIS SORT OF SUPPORTS

21    WHAT THEY'RE SAYING THAT, YOU KNOW, THE GOLD CODE

22    ON THE SORT OF FIRST LINE IS NOT BEING USED

23    IMMEDIATELY AS A SCRAMBLING CODE, THAT THERE ARE

24    THESE OTHER CONVERSIONS AND PROCESSES HAPPENING,

25    AND THEN THE RESULT IS WHAT'S USED.

1            MR. JOHNSON:  THE VERY FIRST LINE -- THE

2      VERY FIRST LINE, "THE GOLD CODE SEQUENCE IS A

3      SCRAMBLING CODE."  IT IS A BINARY SCRAMBLING CODE,

4      EVEN BY THEIR OWN EXPERT'S ADMISSION.

5            IT IS A SCRAMBLING CODE, SHORT AND

6      SIMPLE, BECAUSE THE CLAIMS TALK ABOUT A SCRAMBLING

7      CODE BEING THE ADDITION OF TWO M-SEQUENCES, AND

8      THAT'S EXACTLY WHAT THE STANDARD SHOWS AND THAT'S

9      WHAT A GOLD CODE SHOWS, AND THAT'S ACTUALLY WHAT

10     THE CLAIM REQUIRES.

11           THE COURT:  SO YOU'RE SAYING IT DOESN'T

12     MATTER WHETHER IT'S ACTUALLY SCRAMBLING OR NOT,

13     IT'S NOT REQUIRED TO ACTUALLY SCRAMBLE.

14           JUST BY VIRTUE OF BEING A GOLD CODE, IT

15     IS A SCRAMBLING CODE JUST BY VIRTUE OF WHAT IT IS

16     OR HOW IT'S CREATED?  IS THAT IT?

17           MR. JOHNSON:  WITH ONE IMPORTANT

18     DISTINCTION.

19           THE COURT:  OKAY.  WHAT'S THAT?

20           MR. JOHNSON:  A GOLD IS ACTUALLY A

21     SCRAMBLING CODE, SEPARATE AND APART.

22           IT MAY NOT BE THE END COMPLEX -- THEY

23     WOULD LIKE THE CLAIM TO COVER A COMPLEX SCRAMBLING

24     CODE, AND IF YOU LOOK AT THE PROCESS, IF YOU LOOK

25     AT THE 3G STANDARD THAT'S ON THE SHEET HERE, WHAT

1    HAPPENS IS IT TAKES THE -- THE SYSTEM TAKES THESE

2    TWO M-SEQUENCES AND CALCULATES A GOLD CODE AND THAT

3    GOLD CODE IS A SCRAMBLING CODE.

4            IT THEN CONVERTS THAT GOLD CODE, JUST

5    USING STRAIGHTFORWARD MATH, TO A REAL CODE AT THAT

6    POINT, AND THEN IT CONVERTS THAT, USES IT IN SHIFT

7    REGISTERS, TO WHAT THEY CALL A COMPLEX SCRAMBLING

8    CODE SEQUENCE, AND THAT'S THE TERM --

9            THE COURT:  SO FROM YOUR -- FROM YOUR

10   VIEWPOINT, IT DOESN'T MATTER WHETHER APPLE USES THE

11   GOLD CODE AS A SCRAMBLING CODE.  IT IS INHERENTLY A

12   SCRAMBLING CODE?

13           MR. JOHNSON:  IT IS A SCRAMBLING CODE,

14   EXACTLY.

15           THE COURT:  OKAY.

16           MR. JOHNSON:  AND IN ADDITION TO THAT, I

17   GO BACK TO THE CLAIMS, BECAUSE THAT'S WHERE WE

18   SHOULD START.

19           THE COURT:  SO YOU'RE SAYING IT DOESN'T

20   MATTER --

21           MR. JOHNSON:  IT DOESN'T MATTER.

22           THE COURT:  -- IF THEY HAVE AN EXTRA

23   PROCESS AFTER THEY COME UP WITH THIS M-SEQUENCE

24   PLUS M-SEQUENCE?

25           MR. JOHNSON:  WE'RE NOW TALKING ABOUT THE

39

```
 1    3G STANDARD AND THE CLAIM AND THE SPECIFICATION
 2    TALKS ABOUT GOLD CODES.
 3              AND IT SAYS "GOLD CODES AND SCRAMBLING
 4    CODES ARE INTERCHANGEABLE," AND THAT'S HOW PEOPLE
 5    OF ORDINARY SKILL IN THE ART UNDERSTAND IT AND
 6    THAT'S WHY DR. WESEL EXPLAINS IN HIS DECLARATION
 7    AND IN HIS DEPOSITION THE PROCESS BEHIND TAKING
 8    THESE TWO M-SEQUENCES, PUTTING THEM THROUGH AN
 9    ADDER TO GENERATE THE GOLD CODE, WHICH IS A
10    SCRAMBLING CODE --
11              THE COURT:  AND IT DOESN'T MATTER --
12              MR. JOHNSON:  -- AND THEN THERE'S THIS
13    ADDITIONAL --
14              THE COURT:  -- WHETHER THAT'S --
15              MR. LEE:  YOUR HONOR --
16              THE COURT:  DO HAVE A DOCTRINE OF
17    EQUIVALENTS ARGUMENT, AND WHAT IS IT?
18              MR. LEE:  THERE IS NO DOCTRINE OF
19    EQUIVALENTS CLAIM.  IT'S ONLY LITERAL INFRINGEMENT.
20              THE COURT:  OKAY.
21              MR. LEE:  YOUR HONOR, IF I COULD RESPOND
22    BRIEFLY?
23              THIS IS -- THE CLAIM SAYS MUCH MORE THAN
24    MY GOOD FRIEND SAYS.
25              IT SAYS "GENERATING A," THERE'S A
```

40

1      FORMULA, "GOLD CODE AS THE KTH PRIMARY SCRAMBLING

2      CODE BY."

3                 THIS ISN'T JUST HAVING A GOLD CODE THAT

4      HAPPENS TO BE A SCRAMBLING CODE.  THIS ISN'T HAVING

5      A GOLD CODE THAT'S USED TO GENERATE THE PRIMARY

6      SCRAMBLING CODE.

7                 THE CLAIM TERM, YOUR HONOR, IS

8      "GENERATING A GOLD CODE AS THE KTH PRIMARY

9      SCRAMBLING CODE."

10                AND IF YOUR HONOR LOOKS AT THE

11     SPECIFICATION --

12                THE COURT:  BUT WHAT'S -- I'M SORRY.

13     YOU'RE GOING TO HAVE TO CLARIFY FOR ME THEN.  WHAT

14     IS YOUR ARGUMENT?  I THOUGHT YOU CONCEDE THAT YOU

15     HAVE A GOLD CODE.

16                DO YOU CONCEDE THAT?

17                MR. LEE:  IT'S NOT A PRIMARY SCRAMBLING

18     CODE.  THAT'S WHAT THE CLAIM REQUIRES.

19                THE COURT:  OKAY.

20                MR. LEE:  THAT'S WHY -- I APOLOGIZE IF I

21     WASN'T CLEAR ON THIS.  IT'S NOT ENOUGH TO HAVE A

22     GOLD CODE.  IT'S NOT ENOUGH TO HAVE A SCRAMBLING

23     CODE.

24                THE CLAIM TERM, WHICH IS VERY SPECIFIC,

25     BUT I THINK CLEAR IN LIGHT OF THE SPECIFICATION, IS

1    THAT GOLD CODE NEEDS TO BE THE KTH PRIMARY

2    SCRAMBLING CODE.

3              AND WHAT YOUR HONOR WILL SEE, READING THE

4    SPECIFICATION, IS THAT'S THE SCRAMBLING CODE THAT

5    ACTUALLY DOES THE SCRAMBLING FOR THE TRANSMISSION.

6              AND I CAN SHOW YOU, YOUR HONOR, TWO

7    THINGS, ONE OF WHICH WE'VE SHOWN BEFORE THAT I

8    THINK WILL MAKE THIS CLEAR.

9              IF I COULD HAVE SLIDE 18.

10             THE PRINCIPLE RESPONSE BY SAMSUNG ON THIS

11   MOTION IS TO SAY, "WELL, A SCRAMBLING CODE AND A

12   GOLD CODE ARE IDENTICAL, SO WHAT WE'LL DO IS WE'LL

13   SUBSTITUTE FOR 'PRIMARY SCRAMBLING CODE' THE PHRASE

14   'CODE GENERATED BY ADDING A FIRST M-SEQUENCE AND A

15   SECOND M-SEQUENCE.'"

16             THAT'S WHAT THEY URGE YOU IN THEIR

17   RESPONSE.

18             WELL, AS YOUR HONOR CAN SEE, IF YOU DID

19   THAT, YOU WOULD MAKE THE CLAIM COMPLETELY REDUNDANT

20   BECAUSE THE LATTER PART OF THE CLAIM ACTUALLY TALKS

21   ABOUT WHAT YOU DO TO CREATE A GOLD CODE.

22             THE INTERMEDIATE PORTION OF THE CLAIM IS

23   WHAT TAKES THAT GOLD CODE AND MAKES IT SOMETHING IN

24   PARTICULAR, AND THE SOMETHING IN PARTICULAR IS THE

25   PRIMARY -- I'LL GIVE YOU THE -- WELL, THE PRIMARY,

42

1    KTH PRIMARY SCRAMBLING CODE.

2              AND EVEN THEIR OWN EXPERT, IN THE

3    DEPOSITION TESTIMONY WE CITE TO YOU, CONCEDES THAT.

4              "THUS, SCRAMBLING CODE THAT IS USED BY

5    THE STANDARD" -- AND THERE'S NO DISPUTE THAT WE

6    PRACTICE THE STANDARD.  THEY'VE ACCUSED US OF

7    PRACTICING THE STANDARD.  THEIR OWN EXPERT AGREES

8    THAT THE ACTUAL SCRAMBLING CODE THAT'S USED IN THE

9    STANDARD IS NOT A GOLD CODE.

10             IT, IN FACT, IS A GOLD CODE USED IN

11   GETTING THERE.  RIGHT?

12             BUT THERE ARE TWO IMPORTANT POINTS.

13   THERE'S NO EQUIVALENTS CLAIM MADE ON THIS AT ALL,

14   SO LITERALLY, THERE HAS TO BE A GOLD CODE AS YOUR

15   PRIMARY SCRAMBLING CODE.  IT'S NOT ENOUGH THAT YOU

16   USE IT AS ONE OF THREE STEPS.  TO GET THERE, IT HAS

17   TO BE IT.

18             AND I THINK THE ONE THING THAT YOU WILL

19   NOT SEE IN SAMSUNG'S PAPERS --

20             THE COURT:  SO WAS -- TELL ME HOW -- I'M

21   A LITTLE BIT UNCLEAR.  IF YOU'RE SAYING YOU DO

22   PRACTICE THE STANDARD, BUT SAMSUNG'S PATENT IS NOT

23   THE STANDARD --

24             MR. LEE:  TRUE.

25             THE COURT:  -- IS THAT -- THAT'S YOUR

43

```
 1    POSITION?

 2              MR. LEE:  THAT'S OUR POSITION.

 3              AND, YOUR HONOR, IF I COULD SHOW YOU --

 4    IF I CAN HAVE OUR SLIDE 13, GO BACK TO THAT -- THIS

 5    IS NOT -- AS MR. JOHNSON SUGGESTS, I'M NOT OFFERING

 6    YOU THIS TO SAY THIS IS NECESSARILY HOW YOU HAVE TO

 7    CONSTRUE THE CLAIM.

 8              BUT HERE'S THE KEY, YOUR HONOR.

 9              IF YOU LOOK AT THE N:TH COMPLEX

10    SCRAMBLING CODE SEQUENCE S LITTLE D LITTLE L LITTLE

11    N, THERE IS NO FACTUAL DISPUTE THAT THAT'S THE

12    ACTUAL SCRAMBLING CODE THAT'S USED IN THE STANDARD.

13    THERE IS NO DISPUTE THAT THAT'S, IN FACT, WHAT WE

14    DO.

15              AND, YOUR HONOR, THERE IS NO DISPUTE THAT

16    THAT'S NOT A GOLD CODE.

17              MR. JOHNSON:  AND YOUR HONOR, THERE IS A

18    DISPUTE.  WHAT I HEARD MR. LEE SAY WAS THAT THE

19    GOLD CODE IS NOT A SCRAMBLING CODE.

20              YET, AS WE LOOKED AT THE -- RIGHT OUT OF

21    THE SPECIFICATION, THE SPECIFICATION SAYS

22    "SCRAMBLING CODE IS INTERCHANGEABLE WITH GOLD

23    CODE."

24              I DIDN'T HEAR MR. LEE SAY THEY DON'T

25    GENERATE GOLD CODES.
```

1           INSTEAD WHAT I HEARD HIM SAY IS, LOOKING

2    FURTHER INTO THE CLAIM LANGUAGE, THAT THEY DON'T

3    MEET ANOTHER LIMITATION IN THE CLAIM THAT REFERS TO

4    BI AND THE LANGUAGE THAT APPEARS THEREAFTER.

5           THERE IS A DISPUTE HERE AND THIS --

6    MR. LEE'S STATEMENT THAT OUR EXPERT HAS BASICALLY

7    ADMITTED THAT BINARY OR SCRAMBLING CODES OR GOLD

8    CODES ARE NOT USED ULTIMATELY IN THE STANDARD IS

9    JUST SIMPLY NOT TRUE.

10           THE -- OUR EXPERT EXPLAINED IN HIS

11   DECLARATION AND EXPLAINED IN THE DEPOSITION

12   TESTIMONY THAT WE CITED THAT, UNEQUIVOCALLY, APPLE

13   USES A GOLD CODE.  THAT GOLD CODE IS USED FOR

14   SCRAMBLING.  THERE MAY BE ADDITIONAL PROCESSING

15   THAT HAPPENS IN THE STANDARD AS WELL, YET AT THE

16   SAME TIME IT MEETS THE LIMITATIONS IN THE STANDARD.

17           AND IF I COULD GO FURTHER, YOUR HONOR,

18   THE REASON THAT -- YOU STARTED THE QUESTIONING THIS

19   AFTERNOON BY ASKING, IS THERE A CLAIM CONSTRUCTION

20   DISPUTE?

21           I SAID I THINK THERE IS.  I THINK MR. LEE

22   SAID HE DIDN'T THINK THERE IS.

23           I'M BACK TO THE POINT WHERE, HEARING THE

24   DISCUSSION BETWEEN THE TWO, I THINK THERE'S A

25   DISAGREEMENT AS TO WHAT, WHAT ACTUALLY THIS

45

1    PARTICULAR LIMITATION COVERS.

2                AND SO THERE IS AN ISSUE OF FACT HERE

3    ULTIMATELY.

4                THE COURT:  I'M SORRY TO INTERRUPT YOU,

5    AND I'M SORRY BECAUSE I KNOW I ASKED YOU THE

6    QUESTION, BUT I CAN'T RECALL WHAT YOU SAID.  I KNOW

7    YOU SAID YOU THOUGHT THERE SHOULD BE A CLAIM

8    CONSTRUCTION HERE.

9                BUT WHAT IS IT THAT NEEDS THE

10   CONSTRUCTION?  GOLD CODE?  SCRAMBLING CODE?  WHAT

11   IS IT THAT YOU THINK NEEDS CONSTRUCTION?

12               MR. JOHNSON:  IT'S ULTIMATELY SCRAMBLING

13   CODE, AND IT IS A GOLD CODE THAT'S GENERATED BY THE

14   ADDITION OF TWO M-SEQUENCES.

15               AND WHEN YOU LOOK AT -- THIS IS

16   IMPORTANT.  WHEN YOU LOOK AT WHAT'S DISCLOSED IN

17   CLAIM 30 -- THIS IS A CLAIM DIFFERENTIATION

18   ARGUMENT -- CLAIM 30, WHICH IS DEPENDENT ON CLAIM

19   25, IS DIRECTED TO THE COMPLEX SCRAMBLING CODE.  IT

20   IS DIRECTED TO THE PART OF THE SPECIFICATION THAT

21   MR. LEE POINTS TO AT THE BOTTOM THERE, THE COMPLEX

22   SCRAMBLING CODE.

23               WHAT YOU SEE IN CLAIM 30 IS IT TALKS

24   ABOUT PRIMARY SCRAMBLING CODE AND SECONDARY

25   SCRAMBLING CODE ARE I-CHANNEL COMPONENTS, THAT IS,

                                                      46

1    THE REAL SCRAMBLING CODE THAT GETS GENERATED AFTER

2    THE GOLD CODE SEQUENCE.

3              AND THEN IT SAYS, "AND MEANS FOR DELAYING

4    AT LEAST ONE OF THE PRIMARY SCRAMBLING CODES AND

5    SECONDARY SCRAMBLING CODES TO PRODUCE Q-CHANNEL

6    COMPONENTS."

7              A PERSON OF ORDINARY SKILL IN THE ART

8    WOULD UNDERSTAND THAT TO REFER TO THE COMPLEX

9    SCRAMBLING CODE.  THAT'S WHAT DR. WEXLER EXPLAINED

10   IN HIS DECLARATION AND HIS DEPOSITION.

11             THE COMPLEX SCRAMBLING CODE HAS BOTH A

12   REAL COMPONENT, WHICH IS THE I-CHANNEL, AND AN

13   IMAGINARY COMPONENT, WHICH IS THE Q-CHANNEL, WHICH

14   IS WHAT CLAIM 30 IS TALKING ABOUT.

15             MR. LEE:  WELL, YOUR HONOR, TWO THINGS.

16             THE COURT:  OKAY.

17             MR. LEE:  CLAIM 30 READS, "WHEREIN THE

18   PRIMARY SCRAMBLING CODE," SO THERE'S GOT TO BE AN

19   ANTECEDENT BASIS FOR "THE PRIMARY SCRAMBLING CODE,"

20   AND IT'S THE KTH PRIMARY SCRAMBLING CODE.

21             LAST POINT IS THIS, YOUR HONOR:  ALL

22   FORDS ARE AUTOMOBILES.  ALL FORD STATION WAGONS ARE

23   AUTOMOBILES.  NOT ALL AUTOMOBILES ARE FORDS.

24             THAT'S WHAT YOU'RE CONFRONTING HERE, AND

25   I THINK FOR AS MUCH TIME AS WE'VE TAKEN IN FRONT OF

1    YOUR HONOR, THE ONE THING YOU HAVEN'T HEARD IT

2    THIS:  THE SCRAMBLING CODE WHICH IS USED TO

3    PRACTICE THE STANDARD, WHICH IS THE BOTTOM OF THE

4    SLIDE THAT REFERS TO THE N:TH COMPLEX SCRAMBLING

5    CODE SEQUENCE, IS NOT A GOLD CODE.  IT MAY BE AN

6    AUTOMOBILE, IT'S A SCRAMBLING CODE, BUT IT'S NOT A

7    FORD.

8              THE COURT:  WELL, IT'S A GOLD CODE PLUS.

9              MR. LEE:  IT'S NOT, YOUR HONOR.

10             MR. JOHNSON:  AND THAT I DO TAKE -- I DO

11   DISAGREE WITH MR. LEE.

12             THAT'S EXACTLY WHAT I SAID.  THERE IS A

13   DISPUTE HERE.  THEY USE A GOLD CODE.  THE INTEL

14   SOURCE CODE, IN THE COMMENTS, REFER TO THE

15   SCRAMBLING CODE AS A GOLD CODE.

16             THE CLAIMS TALK ABOUT A GOLD CODE AS A

17   SCRAMBLING CODE.  THEY MEET THIS PARTICULAR

18   LIMITATION.

19             WHAT THEY'RE TRYING TO DO NOW IS READ

20   ADDITIONAL MEANING INTO THE TERM "SCRAMBLING CODE"

21   TO REQUIRE IT TO BE THIS COMPLEX SCRAMBLING CODE

22   THAT'S NOT DESCRIBED IN CLAIM 25, BUT IS, IN FACT,

23   THE SUBJECT OF CLAIM 30.  THEY'RE TRYING TO READ

24   THAT LIMITATION INTO CLAIM 25 WHERE IT DOESN'T

25   EXIST, NOT IN THE PROSECUTION HISTORY -- SORRY --

1    NOT IN THE PROSECUTION HISTORY, NOT IN THE

2    SPECIFICATION, NOT IN ANY OF THE INTRINSIC

3    EVIDENCE.

4            MR. LEE:  AND, YOUR HONOR, THAT'S NOT

5    CORRECT.

6            THE KTH PRIMARY SCRAMBLING CODE IS A

7    SCRAMBLING CODE THAT'S ACTUALLY USED TO TRANSMIT.

8    IT'S WHAT THE SPECIFICATION SAYS.

9            IT'S NOT -- IF WHAT THEY INTENDED TO

10   CLAIM WAS A SCRAMBLING CODE USED FOR TRANSMISSION

11   THAT, AT SOME POINT IN TIME, USED A GOLD CODE TO

12   GET THERE, THEY COULD HAVE CLAIMED THAT.

13           I DON'T KNOW THAT THE SPECIFICATION

14   DESCRIBES IT.  MAYBE THERE WOULD HAVE BEEN AN

15   EQUIVALENTS CASE.  BUT THERE'S NOT.  THE CLAIM IS

16   VERY SPECIFIC.

17           AND, RESPECTFULLY, MR. JOHNSON KEEPS

18   DROPPING WORDS.

19           THE KTH PRIMARY SCRAMBLING CODE HAS A

20   MEANING, AND I DON'T THINK IT'S REALLY DISPUTED.

21           AND THE FINAL THING I'LL SAY, YOUR HONOR,

22   IS THERE IS NO DISPUTE THAT THE SCRAMBLING CODE

23   THAT'S USED IS NOT A GOLD CODE, AND I DON'T THINK

24   THAT THERE'S ANY DISPUTE THAT THE CLAIM REQUIRES

25   THAT THE KTH PRIMARY SCRAMBLING CODE, THE

                                                    49

1    SCRAMBLING CODE USED FOR TRANSMISSION, BE A GOLD

2    CODE.

3              THE COURT:  WHAT IS THE SECONDARY

4    SCRAMBLING CODE?

5              MR. LEE:  THE SECONDARY SCRAMBLING CODE,

6    YOUR HONOR, IS WHEN YOU HAVE A BASE STATION AND A

7    RECEIVER, THE BASE STATION CAN OMIT A PRIMARY

8    SCRAMBLING CODE, AND THE PRIMARY SCRAMBLING CODE IS

9    WHAT ALLOWS YOU TO FIND THAT BASE STATION AS IN

10   DISTINCTION TO SOME OTHERS.

11             IT'S LIKE HEARING A VIOLIN FROM AN

12   ORCHESTRA.  YOU HEAR THAT SIGNAL.

13             THERE ARE SECONDARY SCRAMBLING CODES THAT

14   ALSO CAN BE USED -- AND I'M JUST PUTTING UP, FOR

15   DEMONSTRATIVE PURPOSES, OUR SLIDE NUMBER 5.

16             THE SAME BASE STATION CAN OMIT A

17   SECONDARY SCRAMBLING CODE, AND THE PATENT TALKS

18   ABOUT SECONDARY SCRAMBLING CODES, WHICH CAN HELP,

19   ASSIST, A CONNECTION BETWEEN THE RECEIVER AND THE

20   BASE STATION.

21             MR. JOHNSON:  THEY BASICALLY OPERATE THE

22   SAME WAY.

23             MR. LEE:  RIGHT.

24             MR. JOHNSON:  AND AT THE END OF THE

25   DAY --

50

1              THE COURT:  IS IT JUST WHEN THE PRIMARY

2     IS --

3              MR. JOHNSON:  WHEN THEY CAN'T --

4              THE COURT:  -- AT CAPACITY?

5              MR. JOHNSON:  THAT'S EXACTLY RIGHT.

6              MR. LEE:  RIGHT.

7              MR. JOHNSON:  WHEN IT REACHES CAPACITY.

8              BUT JUST -- I DO TAKE ISSUE WITH THE FACT

9     THAT THERE -- WE -- APPLE WANTS TO MAKE THE

10    ARGUMENT THAT SCRAMBLING CODES AND GOLD CODES ARE

11    DISTINCT.  THE INTRINSIC EVIDENCE SAYS OTHERWISE.

12             AND AS WE LAID OUT IN OUR BRIEFS, THEIR

13    OWN EXPERT, DR. STARK, USED THE TERM "SCRAMBLING

14    CODE," "PRIMARY SCRAMBLING CODE" AND "SECONDARY

15    SCRAMBLING CODE" AND "GOLD CODE" ALL

16    INTERCHANGEABLY.  WHEN HE WAS LOOKING AT PRIOR ART

17    ISSUES, HE USED THOSE TERMS INTERCHANGEABLY, AND WE

18    CITE HIS DEPOSITION TESTIMONY AT LINES -- AT PAGE

19    31 AND THEREAFTER.

20             BUT A PERSON OF ORDINARY SKILL IN THE

21    ART, LOOKING AT THE PATENT CLAIMS IN LIGHT OF THE

22    INTRINSIC EVIDENCE, WOULD UNDERSTAND THE GOLD CODE

23    IS A PRIMARY SCRAMBLING CODE, AND THAT IS -- I

24    DON'T THINK YOU HEARD MR. LEE SAY, THEY DON'T

25    DISPUTE IT.

51

1           THE COURT:  WHY DON'T WE SAY "GOLD CODE

2      AS A KTH PRIMARY GOLD CODE" IF THEY'RE REALLY THE

3      SAME?

4           MR. LEE:  I THINK THAT'S THE KEY, YOUR

5      HONOR.

6           IN FACT, IF YOU WERE TO TAKE

7      MR. JOHNSON'S ARTICULATION OF WHAT THE CLAIM SAID,

8      YOU COULD STOP AFTER "GOLD CODE."  YOU COULD JUST

9      HAVE A GOLD SCRAMBLING CODE AND THAT WOULD BE IT.

10          MR. JOHNSON:  THE KTH REFERS TO THE FACT

11     THAT HOW MANY -- HOW MANY -- IF WE COULD PULL UP

12     SLIDE NUMBER 5 -- HOW MANY UNITS ARE IN THE

13     SEQUENCE GENERATOR, RIGHT?

14          AND SO THESE SEQUENCE GENERATORS GET

15     ADDED TOGETHER.  THE FIRST M-SEQUENCE GENERATOR AND

16     THE SECOND M-SEQUENCE GENERATOR ARE ADDED.  THAT'S

17     WHAT THE CLAIM IS TALKING ABOUT.

18          AND THE KTH REFERS TO -- IT'S A VARIABLE.

19     SO IT'S THE GOLD CODE AS THE PRIMARY SCRAMBLING

20     CODE.

21          AND, AGAIN, "PRIMARY SCRAMBLING CODE"

22     HERE IS REFERRING TO -- IT IS NOT REFERRING TO THE

23     COMPLEX SCRAMBLING CODE THAT IS REFERRED TO

24     NECESSARILY IN THE SPECIFICATION, THE 3G STANDARD.

25          AT THE END OF THE DAY, THERE IS A

                                                        52

1    DISPUTE, EVEN AMONGST THE PARTIES, ABOUT WHETHER

2    GOLD CODE IS USED IN THE COMPLEX CODE.

3                THE COURT:  BUT IF YOU LOOK AT CLAIM 26

4    AS WELL, THEY SAY THE SECONDARY SCRAMBLING CODES OF

5    THE KTH PRIMARY SCRAMBLING CODES ARE THE BLANK

6    THROUGH BLANK GOLD CODES.

7                IT DOES SEEM TO DRAW A DISTINCTION.

8                MR. LEE:  YOUR HONOR, I THINK I CAN -- IF

9    WE CAN HAVE OUR SLIDE 19.

10               I THINK I MAY BE ABLE TO CAPTURE THIS

11   DISPUTE FOR US.

12               THIS IS THE KEY PROVISION.

13               THE COURT:  DO YOU ALL HAVE THESE IN

14   HANDOUT FORM?

15               MR. LEE:  WE DO.  WE'LL GIVE YOU COPIES.

16               MR. JOHNSON:  WE HAVEN'T EXCHANGED.

17               MR. LEE:  WE HAVEN'T EXCHANGED, BUT WE

18   WILL.

19               THE COURT:  OKAY.  ARE WE GOING TO GET

20   THEM?  AM I GOING TO GET COPIES?

21               MR. JOHNSON:  YES.

22               MR. LEE:  YES.

23               YOUR HONOR, IF YOU LOOK WHAT IS ON THE

24   SCREEN, WHICH IS JUST OUR HIGHLIGHTED VERSION OF

25   THE KEY LIMITATION, AND YOU STRIKE, LITERALLY

53

1    STRIKE OUT "AS A KTH PRIMARY SCRAMBLING CODE," JUST

2    STRIKE THAT PHRASE OUT, AND YOU TAKE MR. JOHNSON'S

3    WORD THAT EVERY GOLD CODE IS A SCRAMBLING CODE AND

4    YOU CREATE THEM --

5              THE COURT:  YEAH.  HAVE YOU -- YOU

6    HAVEN'T EXCHANGED THEM THEN?

7              MR. JOHNSON:  NOT YET.

8              MR. LEE:  NOT YET.

9              MR. JOHNSON:  BUT WE'LL -- WE'RE OKAY

10   WITH IT.

11             THE COURT:  OKAY.  WHY DON'T YOU EXCHANGE

12   THEM AND LET ME KNOW IF YOU HAVE ANY OBJECTIONS TO

13   EACH OTHER'S PRESENTATIONS?

14             MR. LEE:  OKAY.  WE WILL.

15             YOUR HONOR, IF YOU TAKE THIS AND YOU

16   STRIKE OUT THE WORDS "AS A KTH PRIMARY SCRAMBLING

17   CODE," JUST STRIKE THOSE WORDS OUT, YOU BASICALLY

18   HAVE WHAT SAMSUNG SAYS THE CLAIM REQUIRES, "AT

19   LEAST ONE ADDER FOR GENERATING A GOLD CODE BY

20   ADDING A TIME SHIFTED M-SEQUENCE AND THE SECOND

21   M-SEQUENCE."

22             BECAUSE WHAT'S DESCRIBED AT THE END

23   DESCRIBES HOW YOU CAN COME UP WITH A GOLD CODE.

24             SO I THINK THIS REALLY IS WHERE OUR

25   DISPUTE IS.

                                                      54

1              THE WORDS "A KTH PRIMARY SCRAMBLING CODE"

2    HAVE TO HAVE A MEANING.  THIS GOLD CODE HAS TO BE A

3    SPECIFIC SCRAMBLING CODE IN THIS PATENT, AND IT'S A

4    SCRAMBLING CODE THAT'S USED FOR TRANSMISSION.

5              THE COURT WILL SEARCH THAT SPECIFICATION

6    IN VAIN TO FIND A GOLD CODE USED FOR ANY OTHER

7    PURPOSE.

8              THAT'S WHY I SAY IT NEEDS TO BE BOTH,

9    YOUR HONOR.  THE AUTOMOBILE NEEDS TO BE A FORD, BUT

10   THE FORD ALSO NEEDS TO BE WHAT'S BEING USED TO

11   TRANSPORT THE PEOPLE FROM POINT A TO B.  IT HAS TO

12   BE BOTH.  IT'S NOT ENOUGH THAT YOU HAVE A FORD AND

13   SOMEONE HAS A CHEVROLET THAT'S BEING USED TO GET

14   PEOPLE FROM A TO B.

15             THIS SAYS YOU'VE GOT A FORD AND A FORD IS

16   TAKING YOU FROM A TO B.

17             MR. JOHNSON:  YOUR HONOR ASKED ABOUT

18   CLAIM 26.  CLAIM 26 IS TALKING ABOUT THE SECONDARY

19   SCRAMBLING CODES, AND IT'S CHANGING THE SEQUENCE

20   THERE.  I MEAN, IT'S PROVIDING MORE DETAIL.

21             I GO BACK TO, YOUR HONOR, THE FUNDAMENTAL

22   ISSUE.  APPLE SAYS IN ITS MOTION PAPERS, EVEN AT

23   THE BEGINNING, PAGE 2, LINES 21 TO 22, THEY SAY

24   IT'S UNDISPUTED THAT ITS PRODUCTS DO NOT USE GOLD

25   CODES AS PRIMARY SCRAMBLING CODES.

1           NOTHING COULD BE DISPUTED MORE IN THE

2    CONTEXT OF THIS MOTION.

3           THE SOURCE CODE DEMONSTRATES EXPLICITLY

4    THAT APPLE'S PRODUCTS USE GOLD CODES AS PRIMARY AND

5    SECONDARY SCRAMBLING CODES, AND THAT'S CITED

6    THROUGHOUT OUR PAPERS AND I HAVEN'T HEARD A

7    RESPONSE TO THAT, AND I DON'T SEE A RESPONSE TO

8    THAT IN ANY OF THEIR PAPERS.

9           AND SO AT THE END OF THE DAY, THERE'S A

10   GENUINE ISSUE OF FACT AS TO -- WE HAVE THE CLAIM

11   CONSTRUCTION ISSUE OVER HERE AS TO WHAT GOLD CODE

12   MEANS AND WHETHER IT'S A SCRAMBLING CODE AND

13   WHETHER IT'S THE COMPLEX SCRAMBLING CODE THAT APPLE

14   WOULD LIKE TO LIMIT IT TO.

15          THEN WE HAVE THE DISPUTE AS TO WHETHER

16   THE GOLD CODE IS ACTUALLY USED IN GENERATING THE

17   COMPLEX SCRAMBLING CODE.

18          THEN WE HAVE THE DISPUTE SEPARATELY

19   WHETHER THEY ACTUALLY JUST USE THE GOLD CODE, WHICH

20   IS WHAT WE SAY THE CLAIM IS DIRECTED TO, BECAUSE

21   THE INTEL SOURCE CODE SAYS THAT THEY USE IT.  I

22   HAVEN'T HEARD ANYBODY FROM APPLE SAY THAT THEY

23   DON'T USE IT.

24          MR. LEE:  AND YOUR HONOR --

25          THE COURT:  I'M GOING TO HAVE TO BRING

1    THIS TO A CLOSE.

2            MR. LEE:  LAST POINT.

3            THE COURT:  20 SECONDS.

4            MR. LEE:  20 SECONDS, YOUR HONOR.  SLIDE

5    16.

6            THIS IS A PLACE, YOUR HONOR, WHERE YOU

7    DON'T -- IN LESS THAN 20 SECONDS.

8            YOU DON'T HAVE TO TAKE MY WORD FOR IT.

9    THIS IS THE TESTIMONY OF THEIR EXPERT.

10           ON HIS DEPOSITION, AFTER ALL THIS ISSUE

11   WAS JOINED, WALKING THROUGH THE SPECIFICATION YOUR

12   HONOR JUST SAID, HE DESCRIBED THE GOLD CODE AS A

13   BINARY SCRAMBLING CODE, NOT THE PRIMARY SCRAMBLING

14   CODE, AND THEN HE TALKS ABOUT THE REAL SCRAMBLING

15   CODE USED FOR TRANSMISSION, WHICH IS EXACTLY WHAT I

16   SAID IT WAS.

17           SO MR. JOHNSON AND I CAN DEBATE WHAT THE

18   SPECIFICATION SAYS, BUT IF WE TAKE THEIR EXPERT AT

19   THEIR WORD, THE PRIMARY SCRAMBLING CODE USED FOR

20   TRANSMISSION IS NOT A GOLD CODE.

21           MR. JOHNSON:  AND FIVE SECONDS IN

22   RESPONSE.

23           THE WESEL DECLARATION AT PARAGRAPH 38

24   SAYS, QUOTE, "THE PATENT IS CLEAR THAT THE

25   SCRAMBLING CODES TAUGHT BY CLAIMS 25 AND 26 ARE

                                                    57

1    CODES GENERATED BY ADDING TWO M-SEQUENCES AND THAT

2    THE RESULT OF THIS ADDITION IS A SCRAMBLING CODE."

3            SO THERE IS A DISPUTE.

4            MR. LEE:  YOU CAN'T -- AND AN EXPERT

5    CAN'T COME IN WITH A DECLARATION AFTER THEY'VE

6    GIVEN THEIR DEPOSITION AND CREATE AN ISSUE OF FACT.

7            MR. JOHNSON:  THAT PART OF HIS DEPOSITION

8    HE WAS TALKING ABOUT WAS -- AS I SAID, IT GOES BACK

9    TO THE ISSUE OF, IS A GOLD CODE COVERED BY THE

10   CLAIMS, OR DOES IT END THERE?

11           OR DOES THE ADDITIONAL PROCESSING THAT

12   MR. LEE IS TALKS ABOUT, IS THAT REQUIRED BY THE

13   CLAIMS?

14           THE EXPERT, DR. WESEL, WAS TALKING ABOUT

15   THE FACT THAT GOLD CODES ARE USED, THEY ARE

16   SCRAMBLING CODES, AND THEY ARE USED TO ARRIVE AT

17   THE COMPLEX SCRAMBLING CODE THAT'S DESCRIBED IN THE

18   STANDARD.

19           THE COURT:  OKAY.

20           MR. LEE:  ONE OF US HAS TO STOP.  I'LL

21   STOP.

22           THE COURT:  THANK YOU.  THANK YOU.

23           OKAY.  LET'S GO TO -- WELL, MAYBE I'LL

24   JUST FINISH UP.

25           LET'S GO TO THE '460 PATENT AND THEN

1      WE'LL DO THE APPLE UTILITY PATENTS AND THEN WE'LL

2      JUST DO SOME HOUSEKEEPING AND I THINK WE'RE DONE.

3              OKAY?

4              MR. LEE:  I HAVE THIS ONE AGAIN.  I'M

5      MOVING TO THE FAR RIGHT OF THE PODIUM.

6              MR. JOHNSON:  I'VE GOT TO STAND OVER

7      HERE, TOO.

8              DON'T PUT ANYTHING ON THE SCREEN.

9              THE COURT:  I KNOW THERE'S A LOT OF LOVE

10     BETWEEN THE TWO OF YOU, SO --

11             (LAUGHTER.)

12             THE COURT:  OKAY.  SO '460.  OKAY.

13             THE THREE DIFFERENT -- THE THREE

14     DIFFERENT OPTIONS THAT APPLE PROPOSES AS TO HOW A

15     PERSON OF ORDINARY SKILL IN THE ART WOULD HAVE

16     UNDERSTOOD HOW YOU PRACTICE CLAIM 1, I FOUND NUMBER

17     2, FRANKLY, INCOMPREHENSIBLE.

18             SO CAN YOU TELL ME HOW NUMBER 2, AND THAT

19     IS "SENDING A SINGLE E-MAIL FROM THE FIRST E-MAIL'S

20     SUB-MODE IF THE E-MAIL DOES NOT CONTAIN AN IMAGE IN

21     A SINGLE E-MAIL FROM THE SECOND E-MAIL SUB-MODE IF

22     IT DOES NOT CONTAIN AN IMAGE," HOW DOES IT MEET THE

23     FIVE STEP REQUIREMENT IN CLAIM 1?

24             LET ME JUST PULL THAT OUT.

25             MR. LEE:  YOUR HONOR, I THINK THAT'S

1    EXACTLY WHY THIS IS INDEFINITE.

2             LET ME SAY ONE THING BY WAY OF

3    INTRODUCTION AND THEN I'LL GO DIRECTLY TO THAT.

4             ACTUALLY, FOR THE FIRST CATEGORY, WHICH

5    IS SENDING TWO SEPARATE E-MAIL MESSAGES, I THINK

6    IT'S CLEAR IN OUR PAPERS, BUT OUR CHARACTERIZING IT

7    AS THREE MAY HAVE MADE IT LESS CLEAR.

8             THERE ARE ACTUALLY TWO VERSIONS OF THAT

9    AS WELL.  THERE IS THE VERSION IN THE INFRINGEMENT

10   CONTENTIONS WHICH IS VERY SPECIFIC.  IT'S THE ORDER

11   IN WHICH THE STEPS ARE ARTICULATED IN THE CLAIM.

12            AND IF YOUR HONOR LOOKS AT THE

13   INFRINGEMENT CONTENTIONS WHICH, TO BE SURE, SAY

14   E.G., BUT THERE'S ONLY ONE E.G., IT GOES THROUGH

15   THEM AND TALKS ABOUT EXACTLY THE ORDER IN WHICH

16   THEY SHOULD OCCUR.

17            THERE IS A SECOND VERSION OF THIS, WHICH

18   IS DR. YANG'S, WE SUGGEST, A LITTLE BIT LATE

19   ARTICULATION OF WHAT IT MEANS, WHICH IS THERE ARE

20   THESE THREE CORE FUNCTIONALITIES AND IF THEY OCCUR

21   AT ANY TIME, EVEN DURING A YEAR, SEPARATED BY A

22   YEAR, IT'S ENOUGH.

23            SO IT'S REALLY -- WHEN YOUR HONOR LOOKS

24   AT IT, THERE ARE TWO VERSIONS OF NUMBER 1 .

25            WE WERE BEFORE JUDGE GREWAL THIS MORNING

1    ARGUING --

2            THE COURT:  ACTUALLY, I'M NOT ASKING

3    ABOUT NUMBER 1.  I WANT NUMBER 2.

4            MR. LEE:  AND NUMBER 2, YOUR HONOR --

5            THE COURT:  TELL ME ABOUT NUMBER 2.  YOU

6    ENTER THE FIRST E-MAIL TRANSMISSION SUB-MODE, YOU

7    ENTER THE SECOND E-MAIL TRANSMISSION SUB-MODE, YOU

8    SCROLL THROUGH THE PHOTOS, YOU SEND THE E-MAIL

9    ALONG WITH THE TEXT, YOU SEND THE E-MAIL WITH THE

10   IMAGE.

11           WHERE DO I FIND ALL FIVE OF THOSE IN

12   NUMBER 2?

13           MR. LEE:  IF YOU LOOK AT FIGURE 9, YOUR

14   HONOR -- AND LET ME GET THE TEXT.

15           YOUR HONOR, THIS IS THE CONFUSION,

16   BECAUSE THERE IS ONLY ONE SUB-MODE THAT'S DESCRIBED

17   IN THE PATENT, SO IF YOUR HONOR LOOKS AT FIGURE 9

18   OF THE PATENT, AND FIGURE 9, YOUR HONOR, YOU WILL

19   SEE STARTS AT THE TOP, E-MAIL TRANSMISSION

20   SUB-MODE.

21           THE COURT:  UM-HUM.

22           MR. LEE:  NOW, ONE OF THE PROBLEMS WITH

23   THIS CLAIM, ONE OF THE REASONS THE CLAIM IS

24   INDEFINITE IS THAT THIS IS THE ONLY E-MAIL

25   TRANSMISSION SUB-MODE.

61

1            IF YOU -- FOR THE SAKE OF TIME, IF YOUR

2      HONOR GOES DOWN TO 914, YOU SEE THE TRIANGLE IN THE

3      MIDDLE?

4            THE COURT:  YES.

5            MR. LEE:  AND THERE ARE STILL IMAGES TO

6      BE ENCLOSED IN E-MAIL, AND THERE ARE A "NO" AND A

7      "YES."  THERE TWO DIFFERENT WAYS TO GO IN THAT

8      CIRCUMSTANCE.

9            NOW, I'M GOING TO SAY TWO THINGS, YOUR

10     HONOR.  THE FIRST IS THIS IS THE ONLY SPECIFIC

11     EMBODIMENT OF WHAT'S SUPPOSEDLY COVERED BY THE

12     CLAIMS.  IT DOESN'T DESCRIBE, IN OUR VIEW, TWO

13     SUB-MODES.

14            AND IT DOES SHOW THAT -- IT REALLY

15     LITERALLY HAS THE "IF" BOX, THAT'S OUR SECOND, AND

16     IF YOU GO TO "STILL IMAGE TO BE ENCLOSED, NO,"

17     "DISPLAY MESSAGE TRANSMISSION NOTIFICATION" AND

18     THEN IF YOU FOLLOW 918 DOWN, YOUR HONOR, YOU SEE

19     "TRANSMISSION COMPLETED."

20            IF THERE'S AN IMAGE TO BE ENCLOSED, YOU

21     GO LEFT AND YOU GO TO 916 AND IT SAYS "TRANSMIT

22     MESSAGE AND STILL IMAGE AND DISPLAY TRANSMISSION

23     NOTIFICATION."

24            SO THERE IS YOUR "IF" BOX.

25            THE COURT:  OKAY.  I'M SORRY.  I DON'T

1    HEAR AN ANSWER TO MY QUESTION.

2              I SAID, IN YOUR PROPOSED NUMBER 2, WHERE

3    ARE THE FIVE STEPS?

4              MR. LEE:  YOUR HONOR, THOSE ARE THE --

5    THAT'S WHY THE CLAIM -- THERE ARE FOUR STEPS

6    DESCRIBED HERE, AND THE SEQUENTIALLY DISPLAYING

7    COMES FROM THE REST OF THE SPECIFICATION.

8              BUT THIS -- IF WHAT YOU HAVE TO BE IN IS

9    TWO DIFFERENT SUB-MODES, WHICH IS WHAT THE CLAIM

10   REQUIRES, AND YOU HAVE TO COME DOWN AND YOU HAVE TO

11   MAKE A DECISION --

12             THE COURT:  OKAY.  LET ME INTERRUPT YOU.

13             MR. JOHNSON, WHAT'S YOUR RESPONSE TO

14   FIGURE 9?

15             MR. JOHNSON:  MY RESPONSE TO FIGURE 9 IS,

16   FIRST OF ALL, YOU HAVE TO LOOK AT THE WHOLE

17   SPECIFICATION, AND YOU LOOK AT FIGURE 6, FIGURE 7,

18   FIGURE 8, AND --

19             THE COURT:  LET ME ASK YOU, IS FIGURE 9

20   AN EMBODIMENT OR NOT?

21             MR. JOHNSON:  FIGURE 9 IS AN EMBODIMENT.

22             BUT YOU HAVE TO --

23             THE COURT:  OKAY.  BUT THERE'S ONLY ONE

24   CLAIM IN THIS PATENT, AND I DON'T SEE THE FIVE

25   STEPS.

```
 1              MR. JOHNSON:  BUT MY POINT IS -- FIRST OF
 2      ALL, I DON'T THINK, OBVIOUSLY, THE CLAIM IS
 3      INSOLUBLY AMBIGUOUS.
 4              THE ONLY ONE THAT MAKES SENSE UNDER THE
 5      THREE ISSUES --
 6              THE COURT:  OKAY, I'M SORRY.  I WANT AN
 7      ANSWER TO MY QUESTION FROM BOTH OF YOU, OKAY,
 8      BECAUSE I HAVE TWO OTHER CASES TO CALL AFTER THIS
 9      ONE.
10              SO WHERE IS THE ANSWER TO MY QUESTION?
11      WHERE DOES FIGURE 9, IF IT IS AN EMBODIMENT, HAVE
12      THE FIVE STEPS REQUIRED IN THE ONLY CLAIM OF THIS
13      PATENT?
14              MR. LEE:  YOUR HONOR, TO BE MORE PRECISE,
15      THERE IS NO EMBODIMENT THAT DESCRIBES THE FIVE
16      STEPS UNDER ANY OF THE THREE DIFFERENT --
17              THE COURT:  ALL RIGHT.  LET ME HAVE
18      MR. JOHNSON RESPOND.
19              MR. JOHNSON:  YOU HAVE TO START AT FIGURE
20      6, BECAUSE FIGURE 6 IS -- IF WE COULD PULL UP SLIDE
21      44 -- IT SAYS "START," RIGHT?
22              SO WHEN YOU GET DOWN TO 602 -- AND 6, 8,
23      AND 9 FLOW TOGETHER AND I'M GOING TO EXPLAIN TO YOU
24      HOW WE GET THERE -- WE START IN THE PORTABLE PHONE
25      MODE, AND HERE IT'S HIGHLIGHTED IN YELLOW ON THE
```

1    SCREEN FOR YOU.  IT'S 602.  THAT'S ONE OF THE

2    SUB-MODES.

3            YOU THEN CAN CONTINUE DOWN IN THE FLOW

4    CHART AND YOU ULTIMATELY, YOU GET TO BOX 608,

5    TRIANGLE 608, AND IT SAYS "E-MAIL TRANSMISSION

6    REQUESTED, YES," YOU GO TO 610, WHICH IS THE E-MAIL

7    TRANSMISSION SUB-MODE.

8            THAT E-MAIL TRANSMISSION SUB-MODE IS

9    EXPLAINED IN FIGURE 9, AND THAT IS PART OF --

10   THAT'S WHY WE WERE SAYING BEFORE THE WAY YOU GET TO

11   FIGURE 9 IS YOU START AT THE BEGINNING AND YOU GO

12   INTO THE PORTABLE PHONE MODE.

13           AND THIS IS DESCRIBED THROUGHOUT THE

14   SPECIFICATION THAT THERE ARE BASICALLY THREE

15   THINGS, THREE CORE FUNCTIONS THAT ARE HAPPENING.

16           ONE IS THE ABILITY TO SEND TEXT ONLY

17   MESSAGES; ONE IS AN ABILITY TO SEND TEXT WITH AN

18   IMAGE; AND THE THIRD IS SEQUENTIALLY DISPLAYING THE

19   IMAGES.

20           THE COURT:  OKAY.

21           MR. JOHNSON:  AND 7 -- WHAT'S IMPORTANT

22   IS THAT YOU CONTINUE DOWN FIGURE 6 AND YOU GET TO

23   THE BOTTOM OF THE FLOW CHART, ON BOX 626 YOU SEE

24   THAT'S HOW YOU CAN GET INTO THEN THE PLAY SUB-MODE.

25   THAT'S ANOTHER SUB-MODE.  THAT'S THE SECOND

1    SUB-MODE.

2            AND WHEN YOU GO TO FIGURE 8, YOUR HONOR,

3    FIGURE 8 DESCRIBES WHAT HAPPENS IN THE PLAY

4    SUB-MODE, AND YOU'LL SEE, LOOKING AT FIGURE 8, IF

5    YOU FOLLOW DOWN THE PATH, ULTIMATELY ON THE

6    LEFT-HAND SIDE YOU'LL COME UPON BOX NUMBER 610 AND

7    THAT'S A SEPARATE WAY, A SECOND WAY, TO GET TO THE

8    E-MAIL TRANSMISSION SUB-MODE.  THAT'S DESCRIBED IN

9    FIGURE 9.

10           THE COURT:  ALL RIGHT.  THANK YOU.

11           ALL RIGHT.  LET ME ASK MR. LEE A

12   QUESTION.  SO IT SOUNDS LIKE YOUR ANSWER TO MY

13   QUESTION IS, "THE FIVE STEP REQUIREMENTS ARE NOT IN

14   MY SECOND PROPOSED WAY THAT A PERSON OF ORDINARY

15   SKILL IN THE ART WOULD PRACTICE THE CLAIMED METHOD

16   IN CLAIM 1 AND DOESN'T HAVE TO BE BECAUSE I DON'T

17   THINK THAT EMBODIMENTS OF THE '460 REQUIRE ALL FIVE

18   STEPS."

19           IS THAT YOUR POSITION?

20           MR. LEE:  YEAH.  I THINK, YOUR HONOR,

21   ACTUALLY UNDER ANY OF THE DIFFERENT SCENARIOS WE

22   PROVIDED TO YOUR HONOR, THE SPECIFICATION DOESN'T

23   DESCRIBE ALL OF THE STEPS.  THAT'S THE PROBLEM WITH

24   THE CLAIM.

25           AND, YOUR HONOR, ONE QUESTION IS, IF YOUR

66

1     HONOR CONSIDERS THE DIFFERENT POSSIBILITIES --

2               THE COURT:  WELL, I GUESS I DON'T

3     UNDERSTAND.  WE'RE ASKING WHAT A PERSON OF ORDINARY

4     SKILL IN THE ART WOULD UNDERSTAND CLAIM 1 TO BE,

5     WHICH EXPLICITLY HAS THE FIVE STEPS.

6               SO HOW COULD THEY POSSIBLY THINK THAT

7     YOUR SECOND PROPOSAL IS A WAY TO IMPLEMENT CLAIM 1?

8               MR. LEE:  YOUR HONOR, IT IS A QUESTION OF

9     WHAT IS MEANT BY THE WORD "AND" AT THE END.

10              AND THIS CLAIM --

11              THE COURT:  YOU MEAN BETWEEN --

12              MR. LEE:  TRANSMITTING AND TRANSMITTED.

13              AND IF YOU LOOK AT -- THIS CLAIM IS --

14              THE COURT:  "AND" IS -- THAT MEANS ALL OF

15    THEM.

16              MR. LEE:  NO.  BUT, YOUR HONOR, IT SAYS

17    "TRANSMITTING THE ADDRESS OF THE OTHER PARTY AND A

18    MESSAGE RECEIVED THROUGH A USER INTERFACE."

19              NOW LOOK AT THE NEXT ONE.  "TRANSMITTING

20    THE ADDRESS OF THE OTHER PARTY AND THE MESSAGE

21    RECEIVED FOR THE USER INTERFACE AND THE IMAGE

22    DISPLAYED ON A DISPLAY AS AN E-MAIL."

23              IF YOU LOOK AT THE PARAGRAPH IMMEDIATELY

24    ABOVE, THERE'S NOTHING ABOUT "AS AN E-MAIL."

25              THERE IS NO DISCLOSED EMBODIMENT --

67

1           THE COURT:  BUT WHAT WOULD AN E-MAIL

2    TRANSMISSION BE TRANSMITTING OTHER THAN E-MAILS?

3    PIZZA?

4           MR. JOHNSON:  THE QUESTION --

5           MR. LEE:  NO.

6           THE COURT:  I MEAN, COME ON.

7           MR. JOHNSON:  THE QUESTION IS WHETHER

8    IT'S AN E-MAIL THAT HAS TEXT IN IT OR TEXT AND THE

9    IMAGE.

10          AND IF I CAN GO TO MY SLIDE 36, PLEASE,

11   MY SLIDE 36 IS USING -- WHAT I TRIED TO DO HERE IS

12   PULL IT TOGETHER, YOUR HONOR.

13          THE LIMITATION A REFERS TO A FIRST E-MAIL

14   TRANSMISSION SUB-MODE.

15          LIMITATION D IS TRANSMITTING THAT MESSAGE

16   THROUGH A USER INTERFACE IN THE FIRST E-MAIL

17   TRANSMISSION SUB-MODE.

18          B, LIMITATION B TALKS ABOUT A SECOND

19   E-MAIL TRANSMISSION SUB-MODE, AND THAT GOES WITH

20   LIMITATION E, WHICH TALKS ABOUT TRANSMITTING THE

21   MESSAGE, AND IT ALSO HAS AN IMAGE, THE IMAGE

22   DISPLAYED ON THE DISPLAY.

23          SO WE'RE TALKING ABOUT TWO SUB-MODES, ONE

24   THAT HAS TEXT ONLY IN THE E-MAIL, ONE THAT HAS TEXT

25   AND AN IMAGE, AND THIS WE BELIEVE, TO A PERSON OF

1    ORDINARY SKILL IN THE ART, WOULD BE VERY APPARENT

2    WHAT'S BEING DESCRIBED HERE.

3              AND IN LIGHT OF THE SPECIFICATION -- I'M

4    HAPPY TO GO THROUGH THE DETAILS OF THE

5    SPECIFICATION AND THE PROSECUTION HISTORY, BUT WE

6    THINK THAT --

7              THE COURT:  NO.  THANK YOU.

8              MR. JOHNSON:  AND JUST ONE FINAL POINT.

9              THEIR OWN EXPERT, MR. SRIVASTAVA,

10   CONTENDS THAT THIS PATENT IS ANTICIPATED BY TWO

11   DIFFERENT REFERENCES.

12             WE ALL KNOW, UNDER THE ENZO BIOTECH CASE,

13   THAT A CLAIM CANNOT BE BOTH INDEFINITE AND

14   ANTICIPATED.

15             CERTAINLY MR. SRIVASTAVA FOUND THAT THE

16   CLAIMS WERE NOT INSOLU --

17             MR. LEE:  INSOLUBLY.

18             MR. JOHNSON:  INSOL --

19             MR. LEE:  I'M TRYING TO HELP OUT.

20             (LAUGHTER.)

21             MR. JOHNSON:  -- INSOLUBLY AMBIGUOUS.

22             AND AT THE END OF THE DAY, HE HAD TO HAVE

23   INTERPRETED THE CLAIMS IN ORDER TO FIND THAT

24   THEY'RE ANTICIPATED, AND THAT'S WHAT HE DID.

25             MR. LEE:  YOUR HONOR, BEFORE MR. JOHNSON

1    TOOK THE FLOOR BACK, IF I COULD FINISH THE THOUGHT

2    THAT I WAS TALKING ABOUT WITH YOUR HONOR?

3              THE COURT:  GO AHEAD.

4              MR. LEE:  IF YOUR HONOR GOES BACK TO THE

5    BRIEFING, YOU WILL FIND THAT -- I THINK YOU WILL

6    FIND THAT THERE ARE THREE THINGS.

7              IF YOU LOOK AT THE VERSION OF THE CLAIM

8    THAT'S ARTICULATED IN THE CONTENTION

9    INTERROGATORIES, WHICH IS A SPECIFIC SET OF STEPS

10   IN A SPECIFIC ORDER, YOU WON'T FIND THOSE IN THE

11   CLAIM, BUT THAT'S ONE POSSIBILITY OF THE CLAIM --

12   THAT'S ONE POSSIBILITY FOR INTERPRETING THE CLAIM.

13             A SECOND ONE IS DR. YANG'S LATE IN THE

14   DAY, OR LATE-BREAKING NEWS, WHICH IS IF YOU HAVE

15   THESE THREE CORE FUNCTIONALITIES, IF YOU DO THEM AT

16   ANY TIME DURING A YEAR OR SO, IT'S OKAY.

17             HOW -- WHICH ONE IS THE JURY SUPPOSED TO

18   APPLY?  THAT'S AN IMPORTANT QUESTION.

19             AND THE ANSWER WE SUGGEST IS YOU CAN'T

20   TELL.

21             THE OTHER INDICATION, YOUR HONOR, IS

22   WHILE INVENTOR TESTIMONY SHOULDN'T BE USED TO URGE

23   THE COURT TO ADOPT A CLAIM INTERPRETATION CONTRARY

24   TO THE SPECIFICATION OR THE INTRINSIC EVIDENCE,

25   WHEN AN INVENTOR IS ASKED, "HERE'S YOUR CLAIM.

1    DOES IT REQUIRE ONE E-MAIL OR TWO?" AND HE SAYS "I

2    DON'T KNOW," THAT'S PRETTY GOOD PROOF THAT IT'S

3    INDEFINITE, AND THAT'S IN THE RECORD BEFORE YOU.

4          TWO OF THE INVENTORS, THE ONLY TWO WHO

5    WERE ASKED ABOUT THIS CLAIM, WERE ASKED, "CAN YOU

6    PRACTICE YOUR INVENTION BY LOOKING AT YOUR CLAIM?"

7    AND THEY SAID NO.

8          MR. JOHNSON:  SO I JUST WANT TO, JUST TO

9    COUNTER THAT LAST POINT --

10         THE COURT:  THAT WAS FULLY BRIEFED, SO --

11         MR. LEE:  IT WAS FULLY BRIEFED.

12         MR. JOHNSON:  THE ONLY THING THAT I DON'T

13   THINK WAS LAID OUT PERHAPS AS CLEARLY AS IT SHOULD

14   HAVE BEEN IS THE QUESTION THAT WAS SPECIFICALLY

15   ASKED BY APPLE'S COUNSEL IS COULD -- THIS IS TO THE

16   INVENTOR -- "COULD YOU PRACTICE YOUR INVENTION BY

17   READING THE LANGUAGE IN CLAIM 1 OF THE U.S. '460

18   PATENT?"

19         AFTER AN OBJECTION, THE ANSWER WAS "I

20   DON'T KNOW."

21         I MEAN, A CONFUSING, LEGALISTIC QUESTION

22   RELATED TO ENABLEMENT, "COULD YOU PRACTICE YOUR

23   INVENTION BY READING THE LANGUAGE IN CLAIM 1,"

24   WITHOUT TALKING ABOUT WHAT'S DESCRIBED IN THE

25   SPECIFICATION OR ANYTHING ELSE, I SUBMIT THIS WAS A

1    LOADED QUESTION THAT WAS DIRECTED AT ENABLEMENT.

2              IT WASN'T ABOUT WHETHER -- WHAT'S THE

3    SCOPE OF MY INVENTION.

4              WHEN HE WAS ASKED THE QUESTIONS ABOUT

5    WHAT THE SCOPE OF HIS INVENTION WAS, HE TESTIFIED

6    WHAT HE THOUGHT THE SCOPE OF HIS INVENTION WAS, AND

7    THAT'S ALSO IN THE RECORD.

8              MR. LEE:  YOUR HONOR, THE OTHER INVENTOR

9    WAS ASKED, "ONE E-MAIL OR TWO?"  HE SAID, "I CAN'T

10   TELL YOU."

11             IF HE CAN'T --

12             MR. JOHNSON:  THAT'S THE CLAIM LANGUAGE.

13             MR. LEE:  IF HE CAN'T TELL US, HOW IS THE

14   JURY SUPPOSED TO FIGURE IT OUT?

15             THE COURT:  ALL RIGHT.  THANK YOU.

16             OKAY.  LET'S GO TO THE, AT LEAST THREE OF

17   THE UTILITY PATENTS THAT ARE IN SAMSUNG'S MOTION,

18   AND THEN WE'LL DO HOUSEKEEPING AND I THINK WE'RE

19   DONE.

20             LET'S GO TO THE '381.  I HAD SOME DÉJÀ VU

21   ON THIS PATENT.

22             MR. LEE:  YOUR HONOR, HERE'S A COPY OF

23   WHAT WE WERE REFERRING TO (HANDING).

24             THE COURT:  ALL RIGHT.  THANK YOU.

25             ALL RIGHT.  LET ME ASK, SINCE THERE

1    WAS -- LET ME ASK, WITH REGARD TO THE '381, WHETHER

2    YOU HAVE THE SAME POSITION ON CONSTRUCTION OF AN

3    "ELECTRONIC DOCUMENT," BUT YOU'RE JUST DISAGREEING

4    HOW TO APPLY THAT CONSTRUCTION?  WOULD THAT BE AN

5    ACCURATE STATEMENT, OR NO?

6         MR. JOHNSON:  I THINK THAT THERE IS SOME

7    AGREEMENT; YET, AT THE SAME TIME, I HEAR DIFFERENT,

8    DIFFERENT ARGUMENTS COMING FROM THEM ON WHETHER

9    WE -- WHAT WE SAY IS ELECTRONIC DOCUMENT IS

10   ACTUALLY MET BY WHAT THEY SAY IS AN ELECTRONIC

11   DOCUMENT.

12        SO I HONESTLY DON'T KNOW IF THERE'S A

13   SPECIFIC DISPUTE OR NOT.

14        WE THINK --

15        THE COURT:  BUT THAT STILL SOUNDS LIKE

16   YOU AGREE ON THE CONSTRUCTION, BUT YOU DISAGREE ON

17   ITS APPLICATION.  WHAT YOU JUST SAID, THAT'S WHAT

18   THAT SOUNDS LIKE TO ME.

19        MR. JOHNSON:  WELL, "ELECTRONIC DOCUMENT"

20   SPECIFICALLY, IT WASN'T SPECIFICALLY ADDRESSED IN

21   THE CONTEXT OF THE CLAIM CONSTRUCTION ORDER.  IT

22   WAS "BEYOND THE EDGE OF AN ELECTRONIC DOCUMENT."

23        SO THE ACTUAL TERM "ELECTRONIC DOCUMENT"

24   WE THINK IS FAIRLY STRAIGHTFORWARD AND REFERS TO

25   WEB PAGES AND DIGITAL IMAGES AS EXAMPLES OF

1    ELECTRONIC DOCUMENTS.

2              SO I DON'T THINK THERE'S A SPECIFIC

3    DISPUTE IN THAT RESPECT.

4              THE COURT:  WOULD YOU AGREE WITH THAT?

5              MR. JACOBS:  I THINK THAT THAT HASN'T

6    BEEN JOINED.  THE ISSUE HAS NOT BEEN JOINED

7    FORMALLY AS TO THE CONSTRUCTION OF "ELECTRONIC

8    DOCUMENT."

9              I THINK BOTH SIDES HAVE ADDUCED THEIR

10   EVIDENCE WITH IMPLICIT DEFINITIONS OF "ELECTRONIC

11   DOCUMENT."

12             FOR EXAMPLE, IN THEIR -- IN THE CASE OF

13   TABLECLOTH, THERE'S A QUESTION ABOUT WHETHER THE

14   TWO IMAGES REPRESENT A SINGLE DOCUMENT OR WHETHER

15   EACH IMAGE IS A SINGLE DOCUMENT, AND THAT CREATES

16   PART OF A FACT ISSUE ABOUT WHETHER TABLECLOTH, AS A

17   MATTER OF SUBSTANCE, IS ANTICIPATORY.

18             IN SHORT, I JUST DON'T THINK IT'S JOINED,

19   YOUR HONOR.

20             THE COURT:  WHAT DOES THAT MEAN --

21             MR. JOHNSON:  I THINK IT --

22             THE COURT:  -- THAT IT'S NOT JOINED?

23   DOES THAT MEAN IT'S NOT RIPE OR IT HASN'T --

24             MR. JOHNSON:  WELL, I THINK HE'S SAYING

25   THERE IS A DISPUTE, BECAUSE I THINK HE'S SAYING

                                                      74

1     THAT OUR VERSION OF "ELECTRONIC DOCUMENT," WHICH IS

2     BROAD AND WHICH CAN ENCOMPASS ONE IMAGE OR MULTIPLE

3     IMAGES, I THINK MR. JACOBS WOULD DISAGREE WITH

4     THAT.

5             THE COURT:  WELL, OKAY.  I'M SORRY.

6     LET'S BACK UP A SECOND.

7             SO YOU WOULD DEFINE "ELECTRONIC DOCUMENT"

8     BY EXAMPLES.  THAT'S WHAT IT SOUNDED LIKE EARLIER.

9             MR. JOHNSON:  AND THAT'S THE WAY --

10    THAT'S BECAUSE THAT'S THE WAY IT WAS RAISED, YOUR

11    HONOR, AND IT WAS DISCUSSED IN THE CONTEXT OF THE

12    CLAIM CONSTRUCTION ORDER.

13            THE COURT:  OKAY.  YOU AGREE WITH THAT?

14            MR. JACOBS:  I THINK THE BEST WE'VE BEEN

15    ABLE TO DO SO FAR IS EXAMPLES, BUT I DON'T THINK

16    EITHER SIDE HAS PUT FORTH A FORMAL DEFINITION OF

17    "ELECTRONIC DOCUMENT."

18            MR. JOHNSON:  THE REAL --

19            MR. JACOBS:  AND I THINK THE REASON IS,

20    IT'S A NATURAL REASON, WE'RE DEALING WITH EXAMPLES

21    IN THE REAL WORLD, AND IT MAY BE -- I'M NOT -- THEY

22    MAY COME UP WITH A DEFINITION OF "ELECTRONIC

23    DOCUMENT" THAT WE LIKE.

24            IF THEY DON'T, IT MAY BE SUFFICIENT THAT

25    WE AGREE THAT CERTAIN THINGS, BY WAY OF EXAMPLE,

1    ARE ELECTRONIC DOCUMENTS FOR PURPOSES OF WHATEVER

2    NEEDS TO BE LITIGATED IN THIS CASE.

3             MR. JOHNSON:  JUST TO --

4             THE COURT:  WOULD IT BE HELPFUL, BEFORE

5    TRIAL, FOR THE PARTIES TO TRY TO COME UP WITH SOME

6    CONSENSUS AS TO --

7             MR. JOHNSON:  I DON'T THINK WE'RE GOING

8    TO REACH CONSENSUS, AND THE REASON IS BECAUSE WHEN

9    WE LOOK AT -- IF WE PUT UP SLIDE 71, PLEASE,

10   NOEL -- THE REAL ISSUE HERE IS WHETHER A

11   MULTI-IMAGE DOCUMENT CAN BE AN ELECTRONIC DOCUMENT.

12            AND SO THIS WAS AN EXHIBIT THAT I PUT IN

13   FRONT OF MR. BALAKRISHNAN, DR. BALAKRISHNAN DURING

14   HIS DEPOSITION, AND I ASKED HIM ABOUT WHETHER --

15   YOU KNOW, IF AN ELECTRONIC DOCUMENT CONSISTS OF

16   SMALLER GRIDS?

17            AND HE SAID, "IT WOULD DEPENDING ON WHAT

18   ONE CONSIDERS TO BE THE ELECTRONIC DOCUMENT.  IT

19   COULD BE ONE OF THESE, LET ME CALL IT SUB

20   RECTANGLES THAT YOU CAN LABEL WITH NUMBERS."

21            AND HE LABELED THE EXHIBIT ON THE RIGHT

22   AS, IN OUR VIEW, EXAMPLES OF ELECTRONIC DOCUMENTS.

23            AND --

24            THE COURT:  SO HOW DO YOU WANT TO -- YOU

25   KNOW, ASSUMING THIS PATENT IS GOING TO A JURY, HOW

1    DO YOU WANT TO HANDLE THIS ISSUE?  DO YOU WANT TO

2    JUST LET THE JURY DECIDE WHETHER, YOU KNOW, THE

3    INDIVIDUAL RECTANGLE OR THE ENTIRE SQUARE

4    CONSTITUTES AN ELECTRONIC DOCUMENT?  HOW DO YOU ALL

5    WANT TO PROCEED?

6             MR. JOHNSON:  WE THINK IT OUGHT TO BE

7    CONSTRUED.

8             THE COURT:  OKAY.  BUT HOW?  BY EXAMPLES?

9    I MEAN, I NEED A CONSTRUCTION.  IF YOU WANT ME TO

10   CONSTRUE IT, I NEED A CONSTRUCTION.  SO WHAT'S YOUR

11   PROPOSAL?

12            MR. JOHNSON:  THE PROPOSAL WOULD BE THAT

13   WE PROVIDE -- THE REAL QUESTION IS WHETHER IT

14   INCLUDES MULTIPLE IMAGES IN MY VIEW.

15            MR. JACOBS:  BUT THAT'S NOT A

16   CONSTRUCTION.  THAT'S A --

17            MR. JOHNSON:  IT'S DEFINING IT BY WAY OF

18   EXAMPLE, AND THAT IS CRYSTALIZING WHAT THE ISSUE

19   IS, ULTIMATELY.

20            THE COURT:  WELL, THEN IT'S SOUNDING LIKE

21   THAT'S A JURY ISSUE.

22            MR. JACOBS:  IT IS.

23            MR. JOHNSON:  BUT THAT'S A -- WHETHER OR

24   NOT THE DEVICE ULTIMATELY HAS, HAS MULTIPLE IMAGES

25   OR NOT, BECAUSE THERE'S STILL GOING TO BE A DISPUTE

77

1    ON THAT.  FOR EXAMPLE, THEY ARGUE -- APPLE ARGUES

2    THAT A SCREEN THAT HAS MULTIPLE PHOTOGRAPHS ON IT

3    IS AN ELECTRONIC DOCUMENT.

4         SO THE QUESTION IS, WHERE DO YOU DRAW THE

5    BOUNDARIES AROUND ELECTRONIC DOCUMENT?

6         AND ULTIMATELY I THINK THE ONLY WAY TO DO

7    IT IS TO COME UP WITH EXAMPLES, TO SAY IT IS THIS,

8    IT IS NOT THIS.

9         MR. JACOBS:  AND I THINK THE POSITION IS

10   BEING SOMEWHAT OVERSIMPLIFIED.

11        AN ELECTRONIC DOCUMENT THAT CONTAINS

12   MULTIPLE IMAGES IS AN ELECTRONIC DOCUMENT.  THAT

13   DOESN'T MEAN THAT EVERY REPRESENTATION ON A SCREEN

14   OF MULTIPLE IMAGES IS A SINGLE ELECTRONIC DOCUMENT.

15        MR. JOHNSON:  WE, FRANKLY, COULD LIVE

16   WITH THE PORTION OF THE CLAIM CONSTRUCTION ORDER

17   WHICH BASICALLY SAYS, QUOTE, "UNDER THE EXPRESS

18   LANGUAGE OF THE CLAIMS, WEB PAGES AND DIGITAL

19   IMAGES ARE EXAMPLES OF ELECTRONIC DOCUMENTS."

20        WE BELIEVE THAT THAT'S SUFFICIENT AND

21   THAT COVERS MULTIPLE IMAGES.

22        MR. JACOBS:  NOT REALLY.

23        THE COURT:  WELL --

24        MR. JACOBS:  AND YOU CAN SEE EXACTLY WHY.

25        BUT I THINK ACTUALLY, WHAT WE SHOULD DO,

78

```
 1    BEFORE WE SEE YOU AGAIN, IS WE SHOULD WORK ON THIS
 2    AND WE SHOULD SEE IF WE CAN BOTH LIVE WITH
 3    SOMETHING THAT GOES -- THAT FALLS SHORT OF A
 4    FORMAL, ENTIRE, FOR ALL TIME CONSTRUCTION OF
 5    "ELECTRONIC DOCUMENT."
 6            AND IF WE CAN'T AGREE EVEN ON SOMETHING
 7    THAT'S LESS THAN A FORMAL FOR ALL TIME CONSTRUCTION
 8    OF "ELECTRONIC DOCUMENT," WE'LL TEE IT UP TO YOU.
 9            MR. JOHNSON:  AND WE CAN AT LEAST
10    CRYSTALIZE WHAT THE ISSUE IS AND TEE IT UP IN THAT
11    RESPECT, AND CERTAINLY BY THE TIME THE CHARGE
12    CONFERENCE COMES AROUND -- BUT CERTAINLY WE CAN DO
13    IT -- WE'RE GOING TO BE SEEING YOU OVER THE NEXT
14    FEW WEEKS AND WE COULD SET ASIDE SOME PORTION TO AT
15    LEAST DISCUSS IT.
16            THE COURT:  WELL, I WOULD FEEL BETTER IF
17    WE HAD SOME SORT OF SCHEDULE.
18            I GUESS IN THE HOUSEKEEPING PORTION I WAS
19    GOING TO HAVE YOU BOTH FURTHER NARROW YOUR CASES,
20    SO I GUESS THE FIRST QUESTION IS, IS THIS EVEN
21    GOING TO BE IN PLAY AT TRIAL OR NOT?  BECAUSE IF
22    YOU TAKE IT OFF THE TABLE, WE DON'T EVEN HAVE TO GO
23    HERE.
24            WELL, GIVE ME A TIMEFRAME -- OR MAYBE WE
25    CAN TALK ABOUT IT -- WELL, WHAT IS YOUR PROPOSAL
```

1    FOR A TIMEFRAME, ASSUMING THE '381 STAYS IN?

2              MR. JOHNSON:  WELL, RIGHT NOW WE'RE

3    SCHEDULED, I THINK YOUR HONOR, NOT TO OVERLOAD THE

4    PRETRIAL CONFERENCE, BUT WE'RE SCHEDULED TO AT

5    LEAST TALK ABOUT THE CLAIM CONSTRUCTION IN THE

6    CONTEXT OF THE DESIGN PATENTS ON THAT DAY, SO

7    PERHAPS WE COULD PUT A SCHEDULE IN PLACE SO THAT TO

8    THE EXTENT THERE'S ANY REMAINING ISSUE WITH RESPECT

9    TO THE '381 ELECTRONIC DOCUMENT, WE CAN ADDRESS IT

10   AT THAT POINT.  IT REALLY SHOULD NOT TAKE MUCH

11   TIME.

12             AND WE COULD SUBMIT SOMETHING ON THE

13   ORDER OF THREE PAGES, FIVE PAGES BEFORE THEN.

14             THE COURT:  ON WHICH DATE?

15             MR. JOHNSON:  WE COULD DO IT --

16             THE COURT:  BECAUSE I THOUGHT NEXT FRIDAY

17   IS ONLY THE CMC AND THE DAUBERTS.

18             MR. JOHNSON:  RIGHT.

19             THE COURT:  SO YOU'RE SAYING FOR

20   JULY 18TH?

21             MR. JOHNSON:  RIGHT.

22             THE COURT:  OH.  OKAY.  THAT'S LOADING A

23   LOT UP ON JULY 18TH.

24             MR. JOHNSON:  WE'RE GOING TO TALK BRIEFLY

25   ABOUT THE SCHEDULE FOR NEXT WEEK, TOO.  WE WANTED

                                                        80

1    TO --

2              THE COURT:  YEAH.  OKAY.  WELL, WHY DON'T

3    YOU GIVE ME A PROPOSAL ON THE '381 PATENT,

4    ELECTRONIC DOCUMENT.  OKAY?

5              MR. JOHNSON:  IF I COULD JUST CONFER WITH

6    MY TEAM AND TALK TO MR. JACOBS AND WE'LL REPORT

7    BACK TO YOU DURING THE CONTEXT OF THE HOUSEKEEPING.

8              THE COURT:  OKAY.  ALL RIGHT.

9              LET ME ASK, WITH REGARD TO THE '381,

10   WHY -- NUMBER ONE, I GUESS, IN THE REPLY, SAMSUNG

11   BROUGHT UP THAT THE SOFTWARE PROGRAM FOR TABLECLOTH

12   WAS LAST UPDATED IN JANUARY OF '05, WHICH WOULD

13   MEAN THAT IT WAS REDUCED TO PRACTICE BEFORE

14   CONCEPTION OF '381.

15             SO WHAT'S YOUR RESPONSE TO THAT?

16             MR. JACOBS:  A DECLARATION, YOUR HONOR.

17   THIS WAS QUITE INCOMPLETE.

18             MR. JOHNSON:  THIS IS A NEW DECLARATION?

19             MR. JACOBS:  THIS IS A DECLARATION --

20             MAY I PROVIDE THIS, YOUR HONOR?

21             THE COURT:  OKAY.

22             MR. JACOBS:  THERE WAS NEW INFORMATION IN

23   REPLY.  WE REQUEST LEAVE TO SUBMIT THIS DECLARATION

24   IN RESPONSE.

25             THE SHORT OF IT IS THAT THE FILE THAT WAS

                                                    81

1    DATED IN THE REPLY SUBMISSION IS NOT THE COMPLETE

2    APPLICATION, AND IF ONE FINDS THE REST OF THE FILE

3    THAT IS NECESSARY, THE DATE ON THAT FILE IS IN JUNE

4    OF THE SAME YEAR, AFTER THE CRITICAL DATE.

5              WE KNOW THIS BECAUSE IF YOU TRY AND RUN

6    THE FILE THAT WAS LABELED WITHOUT THE FILE THAT IS

7    LATER, IT WON'T RUN.  IT SHOWS A BLANK PAGE.

8              SO THERE IS A HUGE, FOR SUMMARY JUDGMENT

9    PURPOSES, DATE ISSUE ABOUT TABLECLOTH, AND AGAINST

10   THE CLEAR AND CONVINCING EVIDENCE STANDARD,

11   SAMSUNG'S IN SERIOUS TROUBLE.

12             MR. JOHNSON:  WELL, THIS IS OBVIOUSLY THE

13   FIRST TIME WE'VE SEEN THIS.  THIS IS A DECLARATION

14   FROM THEIR EXPERT, DR. BALAKRISHNAN.  I HAVEN'T,

15   OBVIOUSLY, SEEN IT BEFORE, SO WE OBJECT TO IT.  I

16   DON'T KNOW HOW TO EVEN ADDRESS IT AT THIS POINT.

17             THE COURT:  YEAH.  I'M NOT GOING TO MAKE

18   YOU ADDRESS THAT AT THIS TIME.

19             LET ME ASK, BECAUSE THIS ELECTRONIC

20   DOCUMENT ISSUE COMES UP AS WELL FOR THE '163 ON

21   WHAT'S THE STRUCTURE OF ELECTRONIC DOCUMENT, DO YOU

22   WANT TO ALSO JUST SORT OF RESERVE THAT AND TRY TO

23   WORK THIS OUT?

24             MR. JOHNSON:  WE CAN TRY, YOUR HONOR,

25   YES.

```
 1              MR. JACOBS:  AND --

 2              THE COURT:  WOULD THAT --

 3              MR. JACOBS:  AND IF WE CAN'T REACH

 4    AGREEMENT, WE WILL EITHER EXPLAIN TO YOU IT DOESN'T

 5    NEED TO BE RESOLVED OR SERVE IT UP TO YOU FOR

 6    DECISION.

 7              MR. JOHNSON:  AND I SUSPECT, JUST KNOWING

 8    THE PARTIES' RESPECTIVE POSITIONS, THAT WE'RE GOING

 9    TO END UP TEEING IT UP TO YOUR HONOR, SO THE

10    QUESTION IS WHAT THE SCHEDULE WOULD BE AND HOW WE

11    WOULD ADDRESS IT, BECAUSE IT IS IMPORTANT TO BOTH

12    OF THE PATENTS.

13              THE COURT:  YEAH.

14              LET ME ASK, WITH REGARD TO THE '163, ARE

15    YOU PROPOSING A CONSTRUCTION OF "STRUCTURED

16    ELECTRONIC DOCUMENT"?  DO YOU THINK WE NEED ONE?

17    WHAT'S YOUR VIEW ON SAMSUNG'S PROPOSAL?

18              MR. JACOBS:  I DON'T THINK WE NEED ONE TO

19    DECIDE THIS MOTION, AND THAT WILL ANSWER THE

20    QUESTION BECAUSE THIS IS THE BEST ART THEY'VE BEEN

21    ABLE TO COME UP WITH.

22              THE REASON WE DON'T NEED ONE ON THIS

23    MOTION IS THAT IF YOU FOLLOW THE LOGIC OF THE

24    CLAIM, WHATEVER A "STRUCTURED ELECTRONIC DOCUMENT"

25    IS, WITHIN THE REALM OF REASON, THIS PRIOR ART, THE
```

1    LAUNCHTILE, WHICH YOU'RE FAMILIAR WITH FROM THE

2    DÉJÀ VU PART OF THIS DISCUSSION, DOES NOT MEET

3    THOSE OTHER LIMITATIONS.

4            SO THAT'S WHY WE DIDN'T SAY IN OUR

5    OPPOSITION, THIS IS WHY -- "THIS IS NOT A

6    STRUCTURED ELECTRONIC DOCUMENT FOR THE FOLLOWING

7    REASONS."

8            WE DON'T NEED TO REACH THAT IN ORDER TO

9    DEFEAT LAUNCHTILE.

10           THE COURT:  WELL, I'M JUST -- I'M JUST

11   THINKING.  IF THIS SHOULD SURVIVE AND IT'S ONE OF

12   THE PATENTS GOING TO TRIAL, WE'RE GOING TO HAVE THE

13   SAME ISSUE THAT WE HAVE WITH THE '381 OF WHAT'S AN

14   ELECTRONIC DOCUMENT.  IS IT THE OVERALL IMAGE?

15           MR. JACOBS:  UM-HUM.

16           THE COURT:  IS IT THE IMAGES WITHIN THE

17   IMAGE?

18           MR. JOHNSON:  RIGHT.

19           THE COURT:  WE'RE GOING TO KIND OF KEEP

20   RUNNING INTO THE SAME ISSUE.

21           MR. JOHNSON:  RIGHT.  AND WE DID HAVE A

22   PROPOSAL AS TO WHAT THE PROPER CONSTRUCTION IS FOR

23   THIS.

24           THE COURT:  UM-HUM.

25           MR. JOHNSON:  WE DON'T -- I DON'T THINK

84

1    APPLE HAS OFFERED A CONSTRUCTION.

2          THE COURT:  I KNOW YOU'RE SAYING YOU

3    DON'T THINK YOU NEED ONE TO DEFEAT THIS MOTION, BUT

4    WHAT DO YOU THINK OF "TWO-DIMENSIONAL INFORMATION

5    SPACE CONTAINING EMBEDDED CODING THAT PROVIDES SOME

6    MEANING OR STRUCTURE TO THE DOCUMENT"?

7          MR. JACOBS:  I THINK IT TURNS OUT, ON

8    APPLICATION BY SAMSUNG, TO BE TOO BROAD.

9    "TWO-DIMENSIONAL INFORMATION SPACE" CONTEMPLATES

10   MULTIPLE DISTINCT ELECTRONIC DOCUMENTS, AND THAT'S

11   THE -- THAT'S A PROBLEM WITH IT.

12         THE COURT:  ALL RIGHT.  LET'S GO TO THE

13   LAST ONE AND THEN WE'RE GOING TO DO HOUSEKEEPING

14   AND WRAP UP.

15         MR. JACOBS:  UM-HUM.

16         THE COURT:  WELL, LET ME ASK FIRST, I

17   KNOW THAT FOR THE '607, AT LEAST THE PRIOR ART

18   REFERENCE, IS THIS BEFORE JUDGE GREWAL AS TO

19   WHETHER THIS SHOULD BE STRICKEN OR NOT FOR TIMELY

20   DISCLOSURE?  OR IS IT NOT?

21         MR. JOHNSON:  MS. MAROULIS IS GOING TO

22   ADDRESS THE '607 PATENT.

23         THE COURT:  OH, OKAY.  THANK YOU.

24         I JUST WANT TO KNOW WHAT -- THAT'S THE

25   ONLY ONE THAT'S SUBJECT TO THE SUMMARY JUDGMENT

1    MOTIONS THAT I THINK RELIES ON A RULING FROM

2    JUDGE GREWAL.

3             BUT TELL ME, IS THAT CORRECT?  OR ARE

4    THERE OTHER -- BECAUSE I KNOW YOU HAVE BOAT LOADS

5    OF MOTIONS BEFORE JUDGE GREWAL.

6             WHAT --

7             MS. MAROULIS:  YOUR HONOR, THERE ARE TWO

8    MOTIONS BEFORE JUDGE GREWAL THAT RELATE TO THE '607

9    PATENT.

10            THE COURT:  OKAY.

11            MS. MAROULIS:  ONE IS APPLE IS

12   CHALLENGING THE APPLICATION OF THE BLONDER

13   REFERENCE --

14            THE COURT:  UM-HUM.

15            MS. MAROULIS:  -- WHICH IS SUBJECT TO

16   THIS MOTION.

17            AND IN OUR MOTION WE SUBMIT THAT EVEN

18   WITHOUT THE BLONDER REFERENCE, WE CAN FIND THE

19   AMPLIFIER ELEMENT WITHIN SMARTSKIN OR PERSKI.

20            BUT THE SECOND MOTION THAT'S BEFORE

21   JUDGE GREWAL IS OUR MOTION TO EXCLUDE THE MAHARBIZ

22   REPORT THAT PROVIDES THE NEW THEORY ON WHAT THIS

23   VIRTUAL GROUND CHARGE AMPLIFIER IS.

24            IF JUDGE GREWAL GETS RID OF IT, THEY

25   CANNOT RELY ON FIGURE 13 IN THE '607 PATENT.

```
 1              THE COURT:  OKAY.  BUT OTHER THAN THE
 2    '607, IS ANYTHING ELSE THAT WE'VE DISCUSSED TODAY
 3    SORT OF DEPENDENT ON A PENDING MOTION TO EXCLUDE
 4    EITHER EXPERT TESTIMONY OR REFERENCES OR REPORTS OR
 5    ANYTHING BEFORE JUDGE GREWAL?
 6              MS. MAROULIS:  I DON'T BELIEVE SO, YOUR
 7    HONOR.
 8              MR. JACOBS:  LET ME DOUBLE-CHECK.
 9              MS. MAROULIS:  WE ARGUED THIS THIS
10    MORNING.  BUT WE'LL CHECK WITH BOTH TEAMS.
11              THE COURT:  OKAY.  THANK YOU.
12              MR. JACOBS:  ON THE UTILITY PATENTS, NO,
13    YOUR HONOR.
14              THE COURT:  OKAY.  BUT WHAT ABOUT ANY OF
15    THE OTHER -- ANYTHING ELSE WE DISCUSSED TODAY THAT
16    IS DEPENDENT UPON A RULING FROM JUDGE GREWAL, OTHER
17    THAN '607, WHICH I AGREE WITH YOU ON?
18              MR. MCELHINNY:  THERE ARE A NUMBER OF THE
19    DESIGN COMBINATIONS, FOR THE DESIGN PATENTS, THAT
20    ARE BEFORE JUDGE GREWAL IN TERMS OF THE ART THAT'S
21    BEING USED TO COMPILE IT.
22              THE COURT:  YOU MEAN FOR PURPOSES OF
23    THESE SUMMARY JUDGMENT MOTIONS?
24              MR. MCELHINNY:  FOR THE PURPOSE, YES, OF
25    THE OBVIOUSNESS SUMMARY JUDGMENT MOTIONS ON THE
```

1        DESIGN PATENTS, YES, YOUR HONOR.

2                THE COURT:  AND DO YOU RECALL WHICH,

3        WHICH REFERENCES IN PARTICULAR?

4                MS. MAROULIS:  YOUR HONOR, APPLE DID NOT

5        SPECIFY SPECIFIC COMBINATIONS.  THEY WERE

6        CHALLENGING MORE BROADLY THE REPORTS OF MR. SHERMAN

7        AND MR. LUCENTE.

8                MR. MCELHINNY:  YES, YOUR HONOR.  I HAVE

9        AT LEAST A PARTIAL LIST IS THE JP221, THE I-RIVER,

10       THE NOKIA FINGERPRINT, AND THE D889 WERE THE

11       SUBJECT OF A MOTION TO STRIKE.

12               MR. JOHNSON:  ARE YOU TALKING ABOUT THE

13       COMBINATION OF THOSE?

14               MR. MCELHINNY:  NO.

15               MR. JOHNSON:  STRAIGHT UP?

16               MR. MCELHINNY:  YEAH, EACH ONE OF THOSE

17       ITEMS.

18               THE COURT:  OKAY.  SO THAT WOULD BE FOR,

19       WHAT, THE '087, THE '677; RIGHT?  THAT WOULD BE

20       RELEVANT TO THOSE TWO; RIGHT?

21               MR. MCELHINNY:  YES, YOUR HONOR.

22               THE COURT:  OKAY.  ANYTHING ELSE?

23               MR. MCELHINNY:  THOSE ARE THE ONES THAT I

24       HAVE ON MY LIST, YOUR HONOR.

25               MS. MAROULIS:  NO, YOUR HONOR, NOT THAT

                                                          88

1    WE KNOW OF.

2              THE COURT:  ALL RIGHT.  SO IT'S ONLY AS

3    TO THE '607 AND THEN THE '087 AND THE '677 DESIGN?

4              MR. JOHNSON:  I THINK THAT'S RIGHT.

5              THE COURT:  OKAY.  ALL RIGHT.

6              ALL RIGHT.  WELL, LET ME GO TO THE -- LET

7    ME HEAR APPLE'S -- I GUESS THE QUESTION IS, IF YOUR

8    EXPERT SAYS THAT BLONDER -- I MEAN, PUTTING ASIDE

9    THE ISSUE OF WHETHER BLONDER COMES IN OR NOT OR

10   WHETHER IT'S EXCLUDED BASED ON HOW JUDGE GREWAL

11   ORDERS, ASSUMING BLONDER IS IN AND SAMSUNG'S EXPERT

12   SAYS, "WELL, BLONDER TEACHES USING THAT

13   AMPLIFICATION IN THIS TOUCH SENSING ENVIRONMENT,"

14   AND APPLE'S EXPERT SAYS, "NO, IT DOESN'T, IT

15   TEACHES AWAY," WHY ISN'T THAT A FACT DISPUTE THAT

16   SHOULD GO TO THE JURY?

17             MR. JOHNSON:  I'M GOING TO LET --

18             THE COURT:  IT SOUNDS LIKE IT IS; RIGHT?

19             MR. JOHNSON:  I'M GOING TO LET

20   MS. MAROULIS ADDRESS IT.

21             MS. MAROULIS:  YOUR HONOR, IN MOST PATENT

22   CASES YOU HAVE COMPETING EXPERT TESTIMONY ON THE

23   ISSUE OF WHAT THE PRIOR ART MEANS AND WHETHER

24   THERE'S A MOTIVATION TO COMBINE.

25             HERE WE BELIEVE WE ESTABLISHED BY CLEAR

89

1    AND CONVINCING EVIDENCE THAT THERE IS OBVIOUSNESS.

2    THERE'S MOTIVATION TO COMBINE BETWEEN BLONDER AND

3    PERSKI AND SMARTSKIN.

4           BUT ALSO, THIS IS A PRETTY UNIQUE CASE

5    BECAUSE THIS PATENT HAS BEEN FULLY LITIGATED IN THE

6    ITC PROCEEDINGS, AND WHILE IT'S NOT DISPOSITIVE FOR

7    YOUR HONOR, IT HAS PERSUASIVE EFFECT.

8           AND CLAIMS 1 AND 7 WERE FULLY INVALIDATED

9    AS ANTICIPATED AND --

10          THE COURT:  I COMPLETELY UNDERSTAND, BUT

11   I GUESS THE QUESTION IS, WHY -- IF YOU HAVE THE

12   DUELING EXPERTS DISAGREEING AS TO WHETHER BLONDER

13   DOES TEACH OR TEACHES AWAY --

14          MR. JACOBS:  TO AID YOUR HONOR IN THIS,

15   LET ME HAND YOU OUR -- I'M SORRY.

16          THE CLERK:  HER HANDS ARE BUSY.

17          MR. JACOBS:  I'M SORRY.  WRONG PERSON.

18          IF YOU TAKE A LOOK AT SLIDE 27, WE'VE PUT

19   A SIDE-BY-SIDE OF THE EXPERT OPINIONS TOGETHER SO

20   THAT IT WOULD BE READILY APPARENT THAT THE FACT

21   DISPUTES ARE NOT JUST KIND OF LARGE, BIG PICTURE

22   ARGUMENTS, BUT THEY'RE VERY GRANULAR DISAGREEMENTS

23   ABOUT WHAT ONE SHOULD CONCLUDE FROM THE RECORD.

24          SO THIS SIMPLY REENFORCES THE POINT THAT

25   IN THIS OBVIOUSNESS CASE WHERE THERE'S SOME VERY

1    TECHNICAL THINGS GOING ON AND THERE'S SOME

2    INFERENCES TO BE DRAWN BY THE EXPERT ABOUT THAT

3    CIRCUITRY AND WHAT THE DISCLOSURES OF THE CIRCUITRY

4    SHOW AND WHAT YOU CAN INFER FROM MANY YEARS OF NOT

5    HAVE A BLONDER-LIKE CIRCUIT OR A VIRTUAL CHARGE

6    GROUND AMPLIFIER IN TERMS OF OBVIOUSNESS, THIS HAS

7    TO BE DENIED, THIS MOTION HAS TO BE DENIED.

8            MS. MAROULIS:  YOUR HONOR, AS WE

9    MENTIONED BEFORE, THE EXPERT DISAGREEMENTS ARE NOT

10   NEW.

11           WE DO SAY IN OUR PAPERS THAT APPLE SHOULD

12   NOT EVEN BE ABLE TO RELY ON THIS BECAUSE THEIR

13   INFRINGEMENT CONTENTIONS ORIGINALLY WERE EXTREMELY

14   SPARSE AND THEY SAID THAT THEY WOULD IDENTIFY THE

15   CIRCUIT LATER IN DISCOVERY AND THEY NEVER DID.

16           SO THE FIRST TIME WE HEARD ABOUT THIS

17   BLONDER -- I'M SORRY -- THE FIGURE 13 AMPLIFIER

18   EXAMPLE WAS IN THIS MOTION.

19           SO IN SOME WAYS IT'S A MANUFACTURED

20   DISPUTE BECAUSE WE DIDN'T HAVE A FULL ABILITY TO

21   LITIGATE THIS IN DISCOVERY.

22           THE COURT:  OKAY.  BUT OTHER THAN

23   PRECLUSION, DO YOU HAVE ANY OTHER ARGUMENT?

24           MS. MAROULIS:  YOUR HONOR, WITHIN THE

25   SMARTSKIN AND THE PERSKI REFERENCES THEMSELVES,

```
1    THERE'S A MOTIVATION TO COMBINE IN -- AND LET'S

2    TAKE A LOOK AT SLIDE 92 --

3              THE COURT:  I HEAR WHAT YOU'RE SAYING,

4    THAT THE ITC INVALIDATED THE INDEPENDENT CLAIM AND

5    THE DEPENDENT CLAIM FROM WHICH THIS DEPENDENT CLAIM

6    DEPENDS, BUT I GUESS THE QUESTION IS, IS THERE

7    STILL A FACTUAL DISPUTE THAT WOULD STILL MEAN THIS

8    SHOULD GO TO THE JURY?

9              MS. MAROULIS:  CERTAINLY APPLE'S EXPERT

10   DISAGREES WITH US, BUT WE THINK THAT WITHIN THE

11   REFERENCES THEMSELVES THERE'S AMPLE REASON TO

12   COMBINE THE AMPLIFIER WITH THE REST OF THE CLAIM

13   LIMITATIONS.

14             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

15             LET'S DO SOME QUICK --

16             MR. MCELHINNY:  EXCUSE ME, YOUR HONOR.

17             THE COURT:  YES?

18             MR. MCELHINNY:  JUST TO COMPLETE THE

19   RECORD, I'VE BEEN HANDED A COMPLETE LIST OF THE

20   OTHER PRIOR ART ISSUES THAT ARE --

21             THE COURT:  OH, OKAY.

22             MR. MCELHINNY:  ON THE PHONES, ON THE

23   '677 AND '087, I GAVE YOU A LIST, BUT I FORGOT TO

24   MENTION THE BLUE BIRD PIDION, P-I-D-I-O-N.

25             THE COURT:  OKAY.
```

1          MR. MCELHINNY:  ON THE '889 IPAD, THERE

2    ARE MOTIONS TO STRIKE PENDING TO BOTH OF THE PRIOR

3    ART, THE D037 AND THE BRAIN BOX.

4          AND THEN FINALLY ON THE D305, WHICH IS

5    THE INVALID UNDER 102(A) ARGUMENT, THERE'S A MOTION

6    TO STRIKE PENDING TO THE MAC WORLD 2007 IMAGES,

7    WHICH IS THE ART THAT THEY'RE RELYING ON FOR THAT

8    ENTIRE MOTION.

9          THE COURT:  OKAY.  ALL RIGHT.

10          WELL, LET'S DO SOME HOUSEKEEPING HERE.

11    SO --

12          MR. JACOBS:  THANK YOU, YOUR HONOR.

13          THE COURT:  THANK YOU.

14          I WOULD LIKE TO TRY TO GET YOU SUMMARY

15    JUDGMENT ORDERS HOPEFULLY BY NEXT WEDNESDAY.  I

16    WILL TELL YOU THAT, TENTATIVELY, THE VAST MAJORITY

17    OF EVERYTHING IS GOING TO SURVIVE AND IS GOING TO

18    GO TO THE JURY.

19          THERE ARE SOME THAT ARE CLOSE, AND AFTER

20    THINKING ABOUT THIS FURTHER AND THINKING ABOUT WHAT

21    YOU'VE SAID, MY TENTATIVE LEANINGS MIGHT CHANGE,

22    BUT I THINK FOR OVERALL, YOU SHOULD JUST ASSUME

23    THAT THE VAST MAJORITY ARE GOING TO SURVIVE SUMMARY

24    JUDGMENT.

25          SO I GUESS THE QUESTION IS, I WILL WANT

1    YOU TO NARROW YOUR CASE FOR TRIAL FURTHER, AND I'D

2    LIKE YOU TO FILE BY FRIDAY, AT 10:00 A.M., AN EVEN

3    MORE NARROW LIST OF WHAT YOU'RE GOING TO PROCEED

4    WITH AT TRIAL, AND YOU WILL HAVE HAD HOPEFULLY THE

5    SUMMARY JUDGMENT RULINGS AT LEAST 24, 48 HOURS, IF

6    NOT MORE, BEFORE THEN.  OKAY?

7             MS. MAROULIS:  YOUR HONOR, YOU MEAN

8    FRIDAY THE 29TH?

9             THE COURT:  YES, FRIDAY THE 29TH.

10            AND IT COULD BE THAT, BASED ON YOUR

11   NARROWING, THEN POOR JUDGE GREWAL DOESN'T HAVE TO

12   RULE ON THE MOUNTAINS AND MOUNTAINS OF MOTIONS THAT

13   YOU FILED BECAUSE THEY MAY BECOME MOOT IF THEY'RE

14   NOT BEING ASSERTED.

15            BUT ANYWAY, I THINK THAT WOULD ALSO HELP

16   US GOING FORWARD FOR THE FINAL PRETRIAL CONFERENCE

17   NOT TO HAVE A LOT OF UNNECESSARY LITIGATION ON

18   ISSUES THAT ARE NOT GOING TO BE PRESENTED.

19            MR. MCELHINNY:  THIS IS MY JOB IS TO

20   STAND UP AND TRY THIS ONE.

21            THE COURT:  YEAH.

22            MR. MCELHINNY:  THE PROBLEM WITH YOUR

23   HONOR'S PROPOSAL --

24            THE COURT:  YES.

25            MR. MCELHINNY:  -- AT LEAST ONE OF THE

```
1     PROBLEMS FROM MY PERSPECTIVE IS THAT WE ARE FACING,

2     BOTH SIDES ARE FACING DAUBERT MOTIONS TO GO TO

3     THEIR DAMAGES THEORIES.

4               THE COURT:  I SEE.

5               MR. MCELHINNY:  AND TRYING TO PICK

6     PATENTS BEFORE WE KNOW -- THIS COULD END UP VERY

7     BADLY IF WE ENDED UP CHOOSING, EITHER SIDE ENDS UP

8     CHOOSING PATENTS THAT THEN THE DAUBERT MOTION ENDED

9     UP ELIMINATING THAT PART OF THE DAMAGES.

10              THE COURT:  I SEE.  BUT I THINK THE

11    PROCESS OF THE SUMMARY JUDGMENT, EVEN THOUGH BOTH

12    SIDES MAY SURVIVE A SUMMARY JUDGMENT MOTION, I

13    THINK THIS HAS SORT OF ILLUMINATED THAT CERTAIN

14    CLAIMS ARE WEAK --

15              MR. MCELHINNY:  THAT --

16              THE COURT:  -- ON BOTH SIDES.

17              MR. MCELHINNY:  I'M NOT ARGUING THAT.

18              THE COURT:  SO CAN YOU AT LEAST DECIDE

19    THAT THOSE THAT ARE LIMPING ALONG AND WILL SURVIVE

20    TO TRIAL, BUT BARELY, SHOULD AT LEAST BE OUT?

21              MR. MCELHINNY:  YES.  THE ANSWER TO THAT

22    QUESTION IS YES.

23              THE COURT:  UM-HUM.

24              MR. MCELHINNY:  BUT ALL I WANTED YOUR

25    HONOR -- WE FILE A PIECE OF PAPER WITH YOUR HONOR
```

95

1    AND YOUR HONOR REACTS TO IT AND WE'RE NOT THERE

2    NECESSARILY FOR THE REACTION, AND WHAT I WANT YOU

3    TO UNDERSTAND IS HOW, HOW ANY FURTHER CHOICES AT

4    THIS TIME DIRECTLY TIE TO DAMAGES AND MAKING --

5    IT'S IMPOSSIBLE, FRANKLY, FOR ME TO MAKE RATIONAL

6    DECISIONS WITHOUT HAVING BOTH PIECES OF THAT PUZZLE

7    AT THIS POINT, OTHER THAN WHAT YOUR HONOR JUST

8    SAID.

9          SO IF THERE ARE SOME THAT MEET YOUR

10   HONOR'S DEFINITION, WE WILL -- WE WILL DO THAT.  I

11   DON'T NEED TO KNOW THAT.

12         BUT GOING FURTHER THAN THAT, WITHOUT

13   KNOWING BOTH PIECES OF THAT PUZZLE, WOULD BE NOT

14   SERVING MY CLIENT WELL.

15         THE COURT:  WELL, THIS IS -- MY ONLY

16   REASON FOR DOING IT THIS WAY IS WE ARE HAVING A CMC

17   NEXT FRIDAY, AND IT WOULD BE HELPFUL TO KNOW A

18   LITTLE BIT FURTHER THE SCOPE OF THE CASE.

19         MR. JOHNSON:  AND I WANTED TO ADDRESS

20   THAT VERY BRIEFLY, YOUR HONOR.

21         THE COURT:  YEAH.

22         MR. JOHNSON:  YOUR HONOR SET THE CMC FOR

23   NEXT FRIDAY, AND ALSO THE DAUBERT MOTIONS FOR NEXT

24   FRIDAY, AND WE HAVE A SCHEDULING CONFLICT ON OUR

25   SIDE WITH RESPECT TO THE 29TH.

1           MR. VERHOEVEN, WHO OTHERWISE WOULD HAVE

2    BEEN HERE TODAY -- HE AND I JUST FINISHED TWO

3    TRIALS WITH THE APPLE COUNSEL IN THE ITC.  HE'S IN

4    TRIAL OUTSIDE OF THE COUNTRY ACTUALLY AND WILL BE

5    IN TRIAL NEXT WEEK AS WELL.

6           THE COURT:  OKAY.

7           MR. JOHNSON:  AND SO WE WERE -- WE HAD

8    APPROACHED APPLE'S COUNSEL ABOUT POTENTIALLY MOVING

9    THE DATE OF THE 29TH BACK EITHER A WEEK OR EVEN TO

10   THE WEEK OF THE 9TH TO HAVE THE DAUBERT MOTIONS

11   HEARD AND THE CMC HEARD THEN, AND PERHAPS AT THAT

12   POINT WE WOULD ALSO -- YOU KNOW, WE COULD MEET AND

13   CONFER ON SOME OF THESE ADDITIONAL ISSUES TO SEE IF

14   WE CAN'T NARROW THE CASE.

15          I MEAN, FROM OUR STANDPOINT, AT THIS

16   POINT, AS WE EXPLAINED IN OUR LAST STATEMENT TO

17   NARROW THE CASE, WE AGREE THAT THE CASE, GIVEN THE

18   25 HOURS, IT JUST -- IT CAN'T BE TRIED IN THE

19   AMOUNT OF TIME THAT WE HAVE.

20          SO THAT'S -- THAT'S WHY WE'RE LOOKING

21   FROM THE STANDPOINT OF PERHAPS HAVING THE

22   ADDITIONAL TIME AND GUIDANCE FROM YOUR HONOR WITH

23   RESPECT TO SOME OF THESE MOTIONS.

24          THE COURT:  WELL, I MEAN, I CAN TELL YOU,

25   I DON'T THINK THE SUMMARY JUDGMENT MOTIONS ARE

1    GOING TO GIVE YOU MUCH GUIDANCE, OTHER THAN SAYING

2    "THERE IS A MATERIAL FACTUAL DISPUTE HERE THAT

3    SHOULD GO TO THE JURY.  SUMMARY JUDGMENT DENIED."

4         I MEAN, DO YOU REALLY NEED THAT TO DECIDE

5    WHICH ONES ARE YOUR WINNERS AND WHICH ONES ARE YOUR

6    WEAKER CLAIMS?

7         I GUESS -- MY CONCERN IS I HAVE ANOTHER

8    PATENT JURY TRIAL STARTING ON JULY 16TH.  I HAVE

9    THE FINAL PRETRIAL CONFERENCE IN THAT CASE NEXT

10   WEDNESDAY.

11        AND SO THE MORE YOU KEEP PUSHING ALL OF

12   THIS STUFF, ALONG WITH MY OTHER CRIMINAL CALENDAR

13   AND CIVIL CALENDAR, TOWARDS WHEN I'M IN TRIAL IN

14   ANOTHER PATENT CASE, I THINK I'M NOT GOING TO BE

15   ABLE --

16        MR. MCELHINNY:  AND TO BE CLEAR, WHEN

17   MR. JOHNSON CALLED ME AND ASKED IF WE WOULD AGREE

18   TO MOVE NEXT FRIDAY, WHAT I RESPONDED TO HIM WAS,

19   AS A MATTER OF PROFESSIONAL COURTESY, WE'LL DO

20   ANYTHING.

21        BUT WE ARE VERY AWARE THAT IT IS YOUR

22   HONOR'S SCHEDULE AND THE AMOUNT OF WORK THAT IS

23   CONTROLLING THESE THINGS AND THAT HAS TO GOVERN

24   BECAUSE WE'RE NOT WILLING TO DO ANYTHING THAT WOULD

25   JEOPARDIZE THE TRIAL DATE.

98

1          THE COURT:  I MEAN, I GUESS WHAT I DON'T

2    UNDERSTAND IS YOU ALL HAVE LEGIONS OF LAWYERS ON

3    ALL SIDES, AND SO CAN'T YOU FIND SOMEONE TO COME ON

4    A FRIDAY?  I MEAN --

5          MR. JOHNSON:  THE QUICK --

6          THE COURT:  THIS IS MY CONCERN AS WELL.

7          MR. JOHNSON:  THE QUICK ANSWER IS YES.

8          THE COURT:  WHEN IS THE MANDATE GOING TO

9    ISSUE, DO YOU HAVE ANY IDEA, ON THE FIRST P.I.?

10         MR. MCELHINNY:  THANK YOU, YOUR HONOR.

11         THE DAY BEFORE YESTERDAY THE FEDERAL

12   CIRCUIT DENIED REHEARING --

13         THE COURT:  I KNOW.

14         MR. MCELHINNY:  -- AND ORDERED THE

15   ISSUE -- ORDERED THE MANDATE TO ISSUE FORTHWITH,

16   WHICH IS AN UNUSUAL PROCEDURE.

17         THE COURT:  OKAY.

18         MR. MCELHINNY:  EXPEDITED.  IT HAS

19   ISSUED.  IT GETS SENT BY REGULAR MAIL.  THE MANDATE

20   ISSUED TWO DAYS AGO.  IT HAS ISSUED.

21         IT GETS SENT BY REGULAR MAIL, SO YOUR

22   HONOR WOULD HAVE RECEIVED IT TODAY OR MAYBE

23   TOMORROW, BUT THE MANDATE HAS ISSUED BY THE FEDERAL

24   CIRCUIT.

25         THE COURT:  BECAUSE THIS IS WHAT I WANT

1      TO DO.  I WANT TO HAVE THE HEARING ON THE FIRST

2      P.I. NEXT FRIDAY.  YOU'RE GOING TO BE HERE ANYWAY

3      AND I WANT TO GET THAT TAKEN CARE OF.

4              I HAVE A SECOND P.I. ORDER WHICH I'M

5      HOPING TO ISSUE VERY QUICKLY.

6              MR. MCELHINNY:  THAT WAS OUR HOPE.  TO

7      BE --

8              THE COURT:  SO I JUST DON'T WANT TO KEEP

9      PUSHING THIS BACK.  I DO HAVE ANOTHER PATENT TRIAL

10     STARTING JULY 16TH.

11             MR. MCELHINNY:  TO BE FAIR, OUR POSITION

12     IS THAT IT'S FULLY BRIEFED AND YOUR HONOR HAS IT.

13     WE DIDN'T KNOW THAT YOUR HONOR WOULD ACTUALLY

14     REQUIRE A HEARING, BUT IF YOU WANT ONE, WE'LL DO IT

15     WHATEVER DAY WORKS FOR YOU.

16             THE COURT:  WELL, I MEAN, I THINK IT IS

17     FULLY BRIEFED.  IT'S BEEN BRIEFED TWICE.  YOU ALL

18     HAD THE OPPORTUNITY TO BRIEF PUBLIC INTEREST AND

19     BALANCING OF THE HARDSHIPS LAST TIME --

20             MR. MCELHINNY:  YES, YOUR HONOR.

21             THE COURT:  -- WHEN I HAD A HEARING IN

22     OCTOBER.

23             BUT I THINK -- I MEAN, I MIGHT RECONSIDER

24     THIS, BUT I THINK FOR DUE PROCESS REASONS, I SHOULD

25     HAVE A HEARING.

1          MR. JOHNSON:  AND, YOUR HONOR, WE DID

2     FILE A MOTION FOR RECONSIDERATION AND TO

3     SUPPLEMENT --

4          THE COURT:  THAT'S GOING TO BE DENIED.

5          MR. JOHNSON:  SORRY?

6          THE COURT:  THAT'S GOING TO BE DENIED.

7     OKAY?

8          SO I WANT TO HAVE -- ASSUMING THE MANDATE

9     DID ISSUE TWO DAYS AGO, I WANT TO HAVE A HEARING ON

10    THE FIRST P.I. NEXT FRIDAY, ALONG WITH THE DAUBERT.

11         I MEAN, I THINK THE DAUBERTS ACTUALLY ARE

12    RELATIVELY EASIER THAN WHAT WE HANDLED TODAY, WHICH

13    IS BASICALLY MERITS OF A BUNCH OF UTILITY PATENTS,

14    DESIGN PATENTS, ANTITRUST, ET CETERA, ET CETERA,

15    TRADE DRESS DILUTION.

16         SO I'M HOPING FOR THE DAUBERTS THAT I CAN

17    GIVE YOU ORAL RULINGS AND THEN I'LL JUST ISSUE AN

18    ORDER SAYING "FOR THE REASONS STATED ON THE RECORD,

19    X, Y, Z MOTIONS WERE GRANTED AND X, Y, Z MOTIONS

20    WERE DENIED."

21         WHAT I COULD DO IS I GUESS GIVE YOU UNTIL

22    THE FOLLOWING MONDAY OR TUESDAY, THE WEEK OF

23    JULY 4TH, TO NARROW YOUR CASE AFTER YOU HAVE THE

24    SUMMARY JUDGMENT RULINGS AND THE DAUBERT RULINGS.

25         MR. MCELHINNY:  THEY WOULD BE VERY

1    HELPFUL TO US, YOUR HONOR.

2              MR. JOHNSON:  THE ONLY THING, AS

3    MR. MCELHINNY SAYS -- AND WE'RE OKAY DOING THAT --

4    THE ONLY THING IS WE'D LIKE THE OPPORTUNITY TO COME

5    BACK AND TALK TO YOUR HONOR AND HAVE A -- AFTER WE

6    GET THE CASE NARROWING STATEMENT, TO COME BACK AND

7    HAVE A CMC WHERE WE DISCUSS THE ACTUAL -- WHAT THIS

8    REALLY MEANS.

9              THE LAST TIME WE WENT THROUGH THIS, YOUR

10   HONOR, WHEN THERE WAS A CASE NARROWING, FROM OUR

11   PERSPECTIVE, IT WASN'T NARROWED VERY MUCH.

12             THE COURT:  ACTUALLY, I WOULD DISAGREE.

13   I THINK IN THE LAST NARROWING, I WAS MORE SATISFIED

14   WITH APPLE'S NARROWING THAN YOUR NARROWING WHERE

15   YOU STILL HAVE A LOT OF VERY, VERY COMPLEX,

16   DIFFICULT TO UNDERSTAND UTILITY PATENTS.

17             MR. MCELHINNY:  AND THEY TOLD THE COURT

18   THEY COULD HAVE NARROWED IT FURTHER.

19             THE COURT:  SO I WOULD ACTUALLY DISAGREE

20   WITH YOU ON THAT.  I WAS MORE SATISFIED WITH

21   APPLE'S NARROWING WITH THIS LAST ROUND.

22             BUT, I MEAN, HAVING SAID THAT, I'M HOPING

23   THAT THERE WILL BE FURTHER NARROWING ON BOTH SIDES.

24             SO WHAT'S YOUR PROPOSAL -- I MEAN, I --

25   DO YOU THINK A CMC NEXT FRIDAY IS NOT NECESSARY AND

1      WE SHOULD TRY TO SCHEDULE ONE LATER?  OR WHAT --

2              MR. JOHNSON:  WE WOULD SUGGEST THAT WE DO

3      THE DAUBERT MOTIONS ON FRIDAY AND WE CAN TAKE CARE

4      OF ANY HOUSEKEEPING ISSUES, BUT THAT WE HAVE THE

5      OPPORTUNITY TO COME IN AND TALK DIRECTLY -- RIGHT

6      AFTER THE PROPOSALS ARE SUBMITTED, WHETHER IT'S

7      THAT WEEK OR THE 9TH OR THE 10TH OR SOMETHING QUICK

8      IN THAT FIRST -- YOU KNOW, IN THE SECOND WEEK OF

9      JULY.

10             MR. MCELHINNY:  MY VIEW, MY VIEW IS THAT

11     WHENEVER YOU CAN GIVE US TIME, IT'S VALUABLE, AND

12     THERE IS STUFF TO BE DONE.

13             JUDGE GREWAL STARTED TALKING TO US THIS

14     MORNING ABOUT LIMITATIONS ON THE NUMBERS OF

15     EXHIBITS, THAT THERE ARE -- THAT THERE ARE -- WE

16     KNOW YOUR HONOR IS GOING TO HAVE VIEWS ABOUT HOW

17     WE'RE ACTUALLY GOING TO TRY THIS CASE BECAUSE YOUR

18     HONOR NOW IS STEEPED IN IT, AND THE SOONER WE LEARN

19     THOSE VIEWS, THE BETTER WE'RE GOING TO BE ABLE TO

20     ADJUST TO THEM AND ACCOMMODATE THEM.

21             SO I DON'T MIND IF, IF THERE'S ANOTHER

22     CMC AT A LATER TIME.

23             BUT I WOULDN'T -- IF YOUR HONOR CAN GIVE

24     US THE TIME ON FRIDAY --

25             MR. JOHNSON:  AND THAT'S REALLY WHAT I'M

                                                        103

1    SUGGESTING.

2              MR. MCELHINNY:  WHAT HASN'T COME UP HERE

3    YET THAT NEEDS TO BE DISCUSSED IS WE'RE REQUIRED,

4    UNDER YOUR HONOR'S RULE, TO HAVE A LEAD COUNSEL

5    MEET AND CONFER BEFORE THE FILINGS THAT ARE DUE THE

6    FIRST WEEK IN JULY.

7              THE COURT:  WELL, I CAN TELL YOU RIGHT

8    NOW, IT'S GOING TO BE 125 EXHIBITS PER SIDE, AND IF

9    YOU WANT TO SEEK TO ADMIT AN EXHIBIT THAT'S NOT ON

10   YOUR LIST, YOU'RE GOING TO HAVE TO SHOW GOOD CAUSE.

11   OKAY?  125, THAT'S IT.  NO MORE.

12             FOR --

13             MR. MCELHINNY:  I THINK THIS IS CALLED

14   THE BE-CAREFUL-WHAT-YOU-PRAY-FOR RULE.

15             THE COURT:  AND FOR IMPEACHMENT AND

16   REBUTTAL EXHIBITS, I WON'T REQUIRE THEM TO BE PART

17   OF YOUR 125, BUT I'LL REQUIRE A 24 HOUR EXCHANGE.

18             OKAY.  WE'VE ALREADY AGREED ON THE HOUR

19   LIMITS.

20             WHAT -- IS THERE ANYTHING ELSE THAT

21   WAS -- WHAT OTHER LIMITS WOULD BE HELPFUL TO KNOW

22   GOING FORWARD?

23             BECAUSE YOU'RE RIGHT, I THINK IT'S 21

24   DAYS BEFORE JULY 18TH, WHICH BASICALLY MEANS NEXT

25   WEEK.

```
 1              MR. MCELHINNY:  AND WE'VE BEEN TOLD --
 2              MR. JOHNSON:  THAT'S WHY WHAT
 3    MR. MCELHINNY WAS REFERRING TO IS, AS I MENTIONED,
 4    MR. VERHOEVEN IS OUT OF THE COUNTRY ON A TRIAL, AND
 5    SO YOUR HONOR -- YOUR HONOR'S RULES REFER TO LEAD
 6    COUNSEL BASICALLY MEETING AND CONFERRING WITH
 7    RESPECT TO --
 8              THE COURT:  AND I HAVE SEEN SO MUCH,
 9    FRANKLY, JUNK ABOUT WHAT'S BEEN APPEARING BEFORE
10    JUDGE GREWAL WHERE YOU ALL HAVE NOT HAD LEAD
11    COUNSEL ACTUALLY DOING THE MEET AND CONFERS AND
12    CONTACTING EACH OTHER AND COMPLYING WITH MY ORDERS.
13              SO I FIND IT A LITTLE BIT INCONSISTENT
14    NOW, AFTER SORT OF NOT COMPLYING WITH MY ORDER THAT
15    REQUIRED LEAD TRIAL COUNSEL TO MEET AND CONFER ON
16    DISCOVERY DISPUTES, TO NOW COME IN AND SAY, "OH, WE
17    CAN'T MOVE FORWARD."
18              SO I'M SORRY.  YOU HAVE LEGIONS OF
19    LAWYERS ON YOUR TEAM.  WE'RE GOING FORWARD NEXT
20    FRIDAY.
21              MR. JOHNSON:  I WASN'T SUGGESTING WE
22    CAN'T MOVE FORWARD.
23              WHAT I WAS SUGGESTING IS THAT YOUR
24    HONOR -- AND I'M TRYING TO BE AS LITERAL AS I CAN
25    WITH RESPECT TO LEAD COUNSEL MEET AND CONFER -- AND
```

1    IF THERE'S A VIEW THAT MR. VERHOEVEN IS LEAD

2    COUNSEL, WE'RE ASKING FOR RELIEF FROM THAT SO THAT

3    I MAY PARTICIPATE WITH MR. MCELHINNY.

4            MR. MCELHINNY:  OR MR. JACOBS.

5            MR. JOHNSON:  OR MR. JACOBS.

6            THE COURT:  YOU MEAN FOR THE --

7            MR. JOHNSON:  TO SATISFY THE LEAD

8    COUNSEL.

9            THE COURT:  FINE, THAT'S FINE.

10           MR. JOHNSON:  THAT'S ALL WE'RE ASKING

11   FOR.

12           THE COURT:  OKAY.  SO WE'RE HAVING A CMC

13   NEXT FRIDAY.

14           ASSUMING THE MANDATE ISSUES, WE'LL ALSO

15   HAVE A HEARING ON THE GALAXY 10.1 PRELIMINARY

16   INJUNCTION.

17           AND I WILL HOPEFULLY BE ABLE TO GIVE YOU

18   ALL OF MY DAUBERT RULINGS ORALLY.  THERE MIGHT BE

19   SOME THAT I NEED TO THINK ABOUT MORE AFTER THE

20   HEARING, BUT HOPEFULLY THE VAST MAJORITY WE CAN

21   TAKE CARE OF ON FRIDAY.

22           MR. MCELHINNY:  WILL YOUR HONOR ISSUE

23   A -- WILL YOUR HONOR ISSUE A FORMAL ORDER SETTING

24   THE HEARING?  OR IS THIS THE NOTICE THAT EVERYBODY

25   IS GOING TO GET?  FOR THE GALAXY TAB --

1          THE COURT:  WELL, I DON'T HAVE A MANDATE,

2     SO --

3          MR. MCELHINNY:  THAT'S RIGHT.

4          THE COURT:  I DON'T FEEL I HAVE

5     JURISDICTION RIGHT NOW.

6          MR. MCELHINNY:  BUT YOU CAN SET THE

7     HEARING DATE.  THAT'S --

8          THE COURT:  WELL, ASSUMING THE MANDATE

9     ISSUES, I WANT TO DO IT FRIDAY.

10          MR. MCELHINNY:  OKAY.

11          THE COURT:  FRIDAY AT 2:00 O'CLOCK IS

12     WHEN YOU'RE COMING IN ANYWAY ON THE DAUBERT MOTIONS

13     AND THE CMC.

14          MR. MCELHINNY:  THANK YOU, YOUR HONOR.

15          THE COURT:  OKAY.  ANYTHING ELSE THAT WE

16     NEED TO DO TODAY?

17          THE CLERK:  IT'S ACTUALLY SET FOR 1:30 ON

18     FRIDAY.

19          THE COURT:  IS IT SET FOR 1:30?

20          THE CLERK:  UM-HUM.

21          THE COURT:  I THINK ON THE PUBLIC

22     CALENDAR IT SAYS 2:00.

23          (DISCUSSION OFF THE RECORD BETWEEN THE

24     COURT AND THE CLERK.)

25          MR. JOHNSON:  ARE WE IN THIS COURTROOM?

107

1              THE COURT:  YES.  I THINK MY COURTROOM IS

2     TOO SMALL.

3              THE CLERK:  1:30.

4              THE COURT:  OKAY.  SO THAT'S JUNE 29TH AT

5     1:30.

6              OKAY.  ANYTHING ELSE?

7              MR. JOHNSON:  NO, YOUR HONOR.  THANK YOU.

8              THE COURT:  NO.  OKAY.  THANK YOU.

9              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

10             (WHEREUPON, THE PROCEEDINGS IN THIS

11    MATTER WERE CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                        CERTIFICATE OF REPORTER

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23              /S/
                _____
24              LEE-ANNE SHORTRIDGE, CSR, CRR
                CERTIFICATE NUMBER 9595

25