UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　　　Defendants. | Case No.: 11-CV-01846-LHK<br><br>ORDER DENYING SAMSUNG'S MOTION TO STAY |

On December 2, 2011, this Court issued an order denying Apple's motion for a preliminary injunction. Apple sought an injunction based on Samsung's alleged infringement of Apple's Design Patent Nos. D618,677 ("the D'677 Patent"), D593,087 ("the D'087 Patent"), D504,889 ("the D'889 Patent"), and based on Samsung's alleged infringement of Apple's U.S. Patent No. 7,469,381 ("the '381 Patent"). ECF No. 452. The Federal Circuit affirmed, in part, this Court's Order, but remanded for further proceedings solely with respect to the D'889 Patent. *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314 (Fed. Cir. 2012). Upon remand, on June 26, 2012, the Court issued a preliminary injunction, enjoining the sale of Galaxy Tab 10.1 tablet computers. *See* ECF No. 1135. On the same day, Samsung filed an appeal of the preliminary injunction with the Federal Circuit.

1

Case No.: 11-CV-01846-LHK
ORDER DENYING SAMSUNG'S MOTION TO STAY

1    On June 27, 2012, Apple posted bond, and the preliminary injunction went into effect. On
2  the same day, Samsung filed a motion to stay the injunction pending resolution of the appeal.
3  Samsung seeks to stay and suspend the preliminary injunction pending the Federal Circuit appeal,
4  or, in the alternative, to stay and suspend the preliminary injunction at least until the Federal
5  Circuit can rule on a motion for stay pending appeal. *See* Mot. at 7.

6    Samsung requested a motion to shorten time on the stay motion and requested an expedited
7  briefing schedule without a reply or a hearing on the issue. The Court granted Samsung's request.
8  Apple served[1] its opposition to the motion to stay on June 30, 2012. Because of the expedited
9  nature of this issue, the Court will not go into great detail regarding the factual background and
10  procedural history of the preliminary injunction. Instead, the Court refers the reader to (1) the
11  December 2, 2011 Order Denying the Preliminary Injunction, (2) the May 14, 2012 Opinion from
12  the Federal Circuit affirming in part and reversing in part the Court's Order Denying the
13  Preliminary Injunction, and (3) the June 26, 2012 Order Granting the Preliminary Injunction. After
14  considering the briefing by the parties, the Court DENIES Samsung's request for a stay pending
15  appeal.

## I.  STANDARD

Both the court of appeals and the district court have the authority to stay an order pending appeal. For the district court, Federal Rule of Civil Procedure 62(c) vests the power to stay an order pending appeal with the district court. *See* Fed. R. Civ. P. 62(c). For both the appellate court and the district court "the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other [parties' interest] in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

Deciding whether to grant a stay of a preliminary injunction pending an appeal is an equitable inquiry. Each factor in the analysis need not be given equal weight. *Standard Havens*

---

[1] At the time that Apple's brief was due, the Court's Electronic Case Filing ("ECF") system was not functioning. Therefore, Apple served, on the Court and on Samsung, its response by e-mail. Apple shall file its response on ECF now that the ECF system has been restored.

2
Case No.: 11-CV-01846-LHK
ORDER DENYING SAMSUNG'S MOTION TO STAY

*Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed. Cir. 1990). "When harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'" *Id*. (citing *Hilton*, 481 U.S. at 776). Indeed, in *Hilton* the Supreme Court acknowledged, "the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton*, 481 U.S. at 777. "Thus, the four stay factors can effectively merge," and a court therefore, "assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public." *Standard Havens Prods*., 897 F.2d at 513 (citations omitted).

## II.   APPLICATION

### A.   Likelihood of Success on Appeal

#### 1.   Whether the Court Erred in Following the Remand Order of the Federal Circuit

Samsung first argues that the Court committed reversible error by not reopening the record or reconsidering the first two *Winter* factors on remand. "Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on 'matters left open by the mandate.'" *Laitram Corp. v. NEC Corp*., 115 F.3d 947, 951 (Fed. Cir. 1997) (citing *Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust*, 824 F.2d 765, 767 (9th Cir. 1987)). "In other words, the court is entitled to assume that an appellant has raised all issues it deems important against a judgment appealed from." *Engel Indus., Inc. v. Lockformer Co*., 166 F.3d 1379, 1383 (Fed. Cir. 1999). "Unless remanded by [the court of appeals], all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Id*. "Only the issues actually decided—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." *Id*. Moreover, the district court's actions on remand should not be inconsistent with either the letter or the spirit of the mandate. *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979). Therefore, the critical question is what issues were left open by the mandate.

The Federal Circuit went through a detailed analysis of this Court's December 2, 2011 Order and explicitly upheld the Court's findings of infringement and irreparable harm with respect

3

Case No.: 11-CV-01846-LHK
ORDER DENYING SAMSUNG'S MOTION TO STAY

to the D'889 Patent, but reversed the Court's invalidity finding as to that patent. *See Apple*, 678 F.3d at 1328-33. The Federal Circuit's remand instructed the Court to make findings regarding the third and fourth *Winter* factors, and to determine as a whole whether the injunction should issue. *Id.* at 1333. The Federal Circuit explicitly instructed this Court what should be considered on remand:

> On remand, the court should conduct a similar assessment of the balance of hardships with respect to the D'889 Patent. To the extent that the court finds that the public interest factor cuts in favor of either side, it should weigh that factor as well in determining whether to issue a preliminary injunction against Samsung's Galaxy Tab 10.1 tablet computer.

*Id.* Upon remand, this Court followed the Federal Circuit's explicit instructions. The Court found that the last two *Winter* factors favored a preliminary injunction and then weighed all four *Winter* factors and found that a preliminary injunction should issue. *See* June 26 Order at 3-6.

Samsung argues that, notwithstanding the Federal Circuit's Order, because of the prospective nature of an injunction, the Court was required to reopen the record. The Court is not convinced that the factual and procedural history of this case, in light of the remand Order from the Federal Circuit, compelled this Court to start anew in its analysis.

The Supreme Court has explained that "[a]n injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, 130 S. Ct. 1803, 1816 (2010). "Because injunctive relief is drafted in light of what the court believes will be the future course of events, . . . a court must never ignore *significant changes in the law or circumstances* underlying an injunction lest the decree be turned into an 'instrument of wrong.'" *Id.* (internal quotation marks and citations omitted) (emphasis added). Thus, where *significant changes* in the law have occurred – for example, intervening federal statutes directly on point, or Supreme Court precedent that directly implicates the analysis of the preliminary injunction on remand – reconsideration of the entire record may be appropriate. *See, e.g. id.* (intervening federal statute on point must be considered on remand); *NAACP v. N. Hudson Reg'l Fire & Rescue*, 707 F. Supp. 2d 520 (D.N.J. 2010) (reconsidering four factors because Third Circuit *sua sponte* summarily remanded the matter for further proceedings in light of the Supreme Court's recent decision in *Ricci v. DeStefano*, 557 U.S.

4
Case No.: 11-CV-01846-LHK
ORDER DENYING SAMSUNG'S MOTION TO STAY

557 (2009)). Similarly, where the appellate court issues a broad mandate on remand, or when the record on appeal is three or four years old, reopening the record is appropriate. *See, e.g., MercExchange LLC v. eBay, Inc.*, 467 F. Supp. 2d 608, 611 (W.D. Va. 2006) ("Based on the prospective nature of the relief sought, as well as the significant time lapse subsequent to this court's denial of MercExchange's original motion for an injunction," new evidence on remand was appropriate.).

Given the procedural background of this case, however, the Court was not compelled to reopen the entire record and to reconsider the first two *Winter* factors as doing so would be directly contrary to the instructions of the Federal Circuit. Neither a major change in the law or circumstances (see discussion below), nor a record that is three or four years old exists in this case such that reopening the record is necessary. Indeed, the Court's ruling on this issue was both consistent with the Federal Circuit's instructions on remand, and the Federal Circuit's recognition that this Court's findings "in the smartphone part of this case" might be "readily transferrable to the tablet part of the case" such that "the district court should be able to make [a determination] in short order, thus minimizing the amount of delay." *Apple*, 678 F.3d at 1333. In light of the Federal Circuit's discussion, Samsung has not demonstrated a likelihood of success on appeal of the preliminary injunction based on the Court's refusal to reopen the record and allow the parties to relitigate the first two *Winter* factors.

### 2. Whether Samsung is Likely to Show that The Preliminary Injunction was Improperly Entered Because of "New Evidence"

Even assuming that the Court should have reopened the record to consider evidence and arguments that were not a part of the Federal Circuit's Order, such new evidence is not likely to persuade the Federal Circuit that the preliminary injunction was improperly entered.

#### a. Evidence of Infringement

Samsung argues that the preliminary injunction was erroneously issued because Apple has not established a likelihood of success on its claim that the Galaxy Tab 10.1 infringes the D'889 Patent. Specifically, Samsung argues that the "035" prototype of the D'889 establishes that the Galaxy Tab 10.1 does not infringe. Mot. at 12-14.

5

1          The 035 Prototype is not "new evidence" that establishes that the Galaxy Tab 10.1 likely
2  infringes the D'889 Patent. Samsung included the 035 Prototype with additional evidence
3  submitted to this Court shortly after the preliminary injunction hearing. Tung Decl. Ex. R;
4  December 2, 2011 Order at 8. Moreover, Samsung also provided these same photographs to the
5  Federal Circuit in support of its argument that this Court erred in finding the D'889 likely infringed
6  by the Galaxy Tab 10.1. *See* Bartlett Decl. Ex. B. The Court agrees with Apple that it is unlikely
7  that Samsung has established a likelihood of success on appeal in light of the fact that Samsung
8  presented the same arguments to the Federal Circuit, to no avail.
9          Additionally, the 035 Prototype is not a relevant comparison to establish infringement of
10 the D'889 Patent. The Examiner excluded the photographs of the prototype by cancelling the
11 "statement regarding the appendix" which included the photographs. *See* Bartlett Decl. Ex. C at 2;
12 *see also* 37 C.F.R. § 1.84 ("Photographs, including photocopies of photographs, are not ordinarily
13 permitted in utility and design patent applications. The Office will accept photographs in utility and
14 design patent applications, however, if photographs are *the only practicable medium* for illustrating
15 the claimed invention.") (emphasis added). Thus, the photographs do not otherwise change the
16 scope of the D'889 Patent, as the drawings in the D'889 Patent establish the claimed design.
17         In light of the discussion above, the proper comparison between the D'889 Patent and the
18 Galaxy Tab 10.1 is the comparison that both this Court, and the Federal Circuit have already made.
19 The relevant comparison chart is shown below. Based on this comparison, this Court found that
20 the Galaxy Tab 10.1 likely infringed the D'889 Patent. The Federal Circuit did not upset this
21 finding on appeal, nor did it direct the Court to address this issue on remand. Therefore, Samsung
22 is not likely to show that the preliminary injunction was erroneously granted on this ground.



### b. Evidence of Invalidity

Samsung also argues that newly disclosed prior art, not considered in the original preliminary injunction motion, establishes that the D'889 is likely invalid. Mot. at 14-16. Specifically, Samsung argues that the U.S. Patent No. D500,037 (the "D'037 Patent") and the "Brain Box" render the D'889 obvious. For the reasons stated below, the Court disagrees.

Samsung has not established that it is likely to succeed on appeal in establishing that the D'889 Patent is obvious in light of the D'307 Patent and the Brain Box. To obtain an injunction, Apple bore the burden of persuading the Court that it is more likely than not that Samsung will be unable to prove invalidity by clear and convincing evidence at trial. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379-80 (Fed. Cir. 2009). Samsung challenges the validity of the D'889 Patent, claiming that the D'889 Patent would have been obvious to one skilled in the art at the time of invention. In its recent opinion, the Federal Circuit explained the proper obviousness inquiry for design patents: "[t]o determine whether 'one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design, the finder of fact must employ a two-step process." *Apple*, 678 F.3d at 1329. First, "one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design." *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (internal quotations and citations omitted). Second, after a primary reference is found, other secondary references "may be used to modify it," but only if "they are so related to the primary

7

Case No.: 11-CV-01846-LHK
ORDER DENYING SAMSUNG'S MOTION TO STAY

reference that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Id*. (internal quotation marks, citations, and alterations omitted).

"Once that piece of prior art has been constructed" by one skilled in the art, whether by "combin[ing] earlier references . . . or [by] modify[ing] a single prior art reference," only then does "obviousness, like anticipation, require[] application of the ordinary observer test," asking whether an ordinary observer would find the patented design substantially the same as the hypothetical prior art reference. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41 (Fed. Cir. 2009).

Samsung has not established that either the D'037 or the "Brain Box" is properly a primary reference. In other words, Samsung has not established that "the design characteristics of [the D'037 or the Brain Box] are basically the same as the [D'889]." *Durling*, 101 F.3d at 103. As explained by the Federal Circuit, the overall visual impression of the D'889 Patent is as follows: "[t]he transparent glass-like front surface of the D'889 Patent . . . covers essentially the entire front face of the patented design without any breaks or interruptions. As a result, the D'889 design creates the visual impression of an unbroken slab of glass extending from edge to edge on the front side of the tablet." *Apple*, 678 F.3d at 1331. In contrast, the D'037 Patent does not have the same overall visual impression as the D'889. The D'037 does not disclose oblique line shading (which is required to claim a translucent or transparent surface) or a border underneath the display. Instead, the D'037 Patent discloses certain detail on the back. The D'037 also discloses a thicker form with steeper, more angled sides. In light of the Federal Circuit's description of the "overall visual impression" of the D'889 Patent, this Court cannot say that the D'037 has design characteristics that are "basically the same" as the D'889 Patent.

Nor can "Brain Box" serve as a primary art reference. The one photograph of the Brain Box submitted by Samsung does not disclose all views of the reference. Thus, the fact finder will not be able to evaluate whether the reference creates "basically the same visual impression" as the D'889 Patent. *See Durling*, 101 F.3d at 103 (internal quotations omitted). For example, it is difficult to discern whether the Brain Box has a flat front piece, and whether the back view of the reference is flat, rounded, or otherwise has the same overall visual impression as the D'889. *cf.*

8

*Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002); *Int'l Seaway Trading*, 589 F.3d at 1241 (the obviousness inquiry on invalidity focuses on the overall design).

Moreover, even if the D'037 Patent could serve as a primary reference and the Brain Box could be used to modify the D'037 Patent, it is not clear that this combination of references would render the D'889 obvious. As explained in the Court's recent Order Denying Samsung's Motion for Summary Judgment, there are several differences between the hypothetical combination of the D'037 Patent and the Brain Box and the D'889 Patent. Even assuming that a person of ordinary skill would combine the D'037 and the Brain Box, the hypothetical combination still would not necessarily disclose the D'889 Patent's even borders that appear beneath the transparent front surface or the D'889 Patent's rounded edge profile. Order Denying Samsung's Mot. for Summary Judgment at 37 (citing Bressler Decl. ¶ 112). Thus, Samsung has not raised a substantial question of validity of the D'889 Patent based on an obviousness challenge in light of the D'307 Patent and the Brain Box.

Moreover, it is not clear that the D'037 Patent and the Brain Box should even be considered newly discovered evidence. The references are publicly disclosed prior art that were not briefed in the original motion for a preliminary injunction. Moreover, Samsung presented similar prior art references to the Federal Circuit in its petition for rehearing. *See* Bartlett Decl. Ex. E. Nonetheless, the Federal Circuit denied Samsung's petition for rehearing or rehearing en banc.

Finally, the Court notes that Judge Grewal recently excluded the D'037 and the Brain Box from trial because Samsung failed to timely disclose the prior art or invalidity theory. *See* Order Granting in part and Denying in part Mots. to Strike at 4-5, ECF No. 1144. In light of this ruling, Samsung cannot rely on the D'037 and the Brain Box to challenge the validity of the D'889 Patent at trial. In light of these considerations, it is unlikely that Samsung will succeed in its appeal of the preliminary injunction order.

### c. Evidence Related to Irreparable Harm

Samsung also argues that the tablet market has changed since the Court's December 2, 2011 Order such that Apple is no longer likely to suffer irreparable harm absent an injunction. *See* Mot. at 10-12. Specifically, Samsung argues that the tablet market is no longer a two-player

market and Samsung's market share is much lower now than it was when the briefing was completed on the original motion, or when the Order issued on December 2, 2011.

It is unlikely that the Federal Circuit will conclude that the preliminary injunction was improperly granted in light of this allegedly "new" evidence. For one, Samsung raised this issue before the Federal Circuit in its original briefing. *See* Bartlett Decl. Ex. A at 63-64. Despite awareness of this issue, the Federal Circuit affirmed this Court's finding that Apple had shown that it was likely to suffer irreparable harm from the sales of Samsung's infringing tablets because "the district court considered the relevant factors [and] properly weighed them." *Apple*, 678 F.3d at 1328.

Moreover, even if the Federal Circuit were to consider this "new" evidence, it is doubtful that Samsung will succeed in arguing that this one change in circumstances establishes that Apple is no longer likely to suffer irreparable harm. Although the tablet market is no longer a two-player market, and Samsung's market share has decreased, this fact alone does not necessarily obviate the Court's original finding of irreparable harm. As the Federal Circuit has explained, "[w]hile the existence of a two-player market may well serve as a substantial ground for granting an injunction – e.g., because it creates an inference that an infringing sale amounts to a lost sale for the patentee – the converse is not automatically true." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011). The entrance of additional market participants does not necessarily mean that there is no likelihood of irreparable harm.

In contrast, several of the other factors upon which this Court rested its irreparable harm analysis continue to be true (or Samsung does not challenge them at this time): (1) Apple and Samsung continue to be direct competitors in the tablet market, (2) design matters more to customers in making tablet purchases, indeed design is an important driver in the demand for tablet sales, (3) Apple had claimed all views of the patented device, and (4) Apple was prompt in asserting its patent rights. December 2 Order at 49. In light of the fact that the Federal Circuit was aware of the change in market conditions, and the remaining factors upon which the Court based its decision remain, it is unlikely that Samsung will succeed on appeal in its argument that Apple will no longer be irreparably harmed.

### B. Weighing of the Equities

#### 1. Irreparable Harm to Samsung Absent a Stay

In order to obtain a stay, Samsung must establish it is likely to suffer irreparable harm without a stay. For example, evidence of employee layoffs, immediate insolvency, and possible extinction of a company provide a basis of irreparable harm that militates in favor of granting a stay. *See, e.g., Standard Havens Prods.*, 897 F.2d at 515. Samsung, in contrast, has not met its burden of establishing that it will likely face irreparable injury absent a stay of the preliminary injunction.

Samsung argues that its business relationships will be irreparably harmed by having the Galaxy Tab 10.1 pulled from the market. Mot. at 17. The Court already considered, and rejected, the same argument in issuing the preliminary injunction. June 26 Order at 5. Moreover, any residual concerns the Court may have had about harm to Samsung as a result of the preliminary injunction are lessened by evidence that Apple has provided in support of its opposition to Samsung's motion to stay. Samsung representatives have stated publicly that Samsung projects no significant harm as a result of the preliminary injunction. *See* Bartlett Ex. F ("A Samsung spokesman said Wednesday in a prepared statement that the company did not expect the ruling enjoining the sale of the Galaxy Tab 10.1 to have a 'significant impact on our business operations,' noting that the company has other Galaxy Tab products to sell."); Ex. G ("Samsung Electronics has revealed that its position is that it will not suffer real harm because of the Galaxy Tab 10.1 . . . 'Our view is that in the U.S. this will not deal a big blow to sales of tablet PC's, since the successor model to the Galaxy Tab 10.1 is already on the market,' said Samsung Electronics on June 28th."). Moreover, Samsung has admitted that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Mot. at 11. In light of these admissions, Samsung cannot establish that it is likely to suffer irreparable harm absent a stay.

Additionally, the amount of bond agreed on by the parties – $2.6 million – confirms that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and supports a finding that Samsung will not be irreparably harmed absent a stay. The bond provides protection to Samsung from the potential harm if the injunction was wrongly issued. *See CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp.

11

Case No.: 11-CV-01846-LHK
ORDER DENYING SAMSUNG'S MOTION TO STAY

1  2d 1051, 1085 (E.D. Cal. 2009). Therefore, the Court finds that Samsung has not shown that it is
2  likely to be irreparably harmed absent a stay.

### 2. Balance of the Equities and Public Interest

As previously explained in the order granting the preliminary injunction, the balance of the hardships and the public interest weigh in favor of the injunction. Samsung's motion does not change this analysis, or convince the Court that the preliminary injunction should be stayed. As explained above, Samsung is not likely to suffer irreparable harm as a result of the injunction. In contrast, Apple's interest in enforcing its patent rights is particularly strong because it has presented a strong case on the merits. Indeed, had the Court found that the D'889 Patent was valid on December 2, 2011, the Court would have issued the preliminary injunction at that time. The Galaxy Tab 10.1 sales in the seven-month interim, as well as any downstream effects that Samsung may have accrued, have been a windfall to Samsung. Moreover, where an injunction should issue, the public interest favors swift resolution of the matter. Prolonging the proceedings, after the issue has been extensively vetted by both this Court and the Federal Circuit, does not promote the public interest.

Weighing the stay factors, the Court finds that a stay of the preliminary injunction of the Galaxy Tab 10.1 would not lead to an equitable result. *Standard Havens Prods.*, 897 F.2d at 513 (citations omitted) (the court "assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public."). Samsung has not established a likelihood of success on appeal. This Court followed the Federal Circuit's remand instructions, and in any event, the "new evidence" cited by Samsung is unlikely to change either this Court's or the Federal Circuit's assessment of the merits. Moreover, Samsung is unlikely to face irreparable harm absent a stay. As Samsung itself concedes, the injunction will cause Samsung minimal harm because it has other tablet products on the market and the Galaxy Tab 10.1 sales ███████. In contrast, a stay would further irreparably harm Apple. In light of these findings, the balancing of the equities favors Apple. Finally, further delay does not serve the public interest. Weighing the factors together, the Court finds that equity disfavors granting a stay on the preliminary injunction.

### III. CONCLUSION

1         For the foregoing reasons, the Court DENIES Samsung's Motion to Stay.

2   **IT IS SO ORDERED.**

3   Dated: July 2, 2012

                                                *[signature]*
LUCY H. KOH
United States District Judge

Case No.: 11-CV-01846-LHK
ORDER DENYING SAMSUNG'S MOTION TO STAY