QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO.   11-cv-01846-LHK<br><br>**SAMSUNG'S REPLY IN SUPPORT OF OPENING MEMORANDUM RE CLAIM CONSTRUCTION**<br><br>Date:   July 18, 2012<br>Time:   2:00 pm<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh<br><br>**REDACTED VERSION** |

## I. APPLE'S DESIGN PATENTS MUST BE CONSTRUED TO ASSIST THE JURY

Apple principally opposes Samsung's proposed claim construction by arguing that it is an impermissibly "detailed verbal construction." Dkt. 1136 at 1. That mischaracterizes Samsung's proposals and disregards authority. Apple cites the Court of Appeal's decision in this case, but fails to heed the Federal Circuit's warning against construing designs "too broadly" and at "too high a level of abstraction." *Apple, Inc. v. Samsung Elecs. Co., Inc.*, 2012 WL 1662048 at *13 (Fed. Cir. May 14, 2012). Consistent with that ruling, claim construction is necessary to instruct the jury that design patents protect the overall impression of the specific ornamental designs disclosed, but do not extend to generalized design concepts such as an unadorned rectangular shape with rounded corners and slim form factor. *Accord Elmer v. ICC Fabricating,* 67 F.3d 1571, 1577 (Fed. Cir. 1995); *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997).

Samsung asks the Court to so inform the jury on the scope of the patents and on the meaning of relevant drawing conventions, which is appropriate in design patent cases. *See Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 680 (Fed. Cir. 2008). Contrary to Apple's suggestion, merely using words together with the drawings to understand the designs is not "excessive reliance on a detailed verbal description" or substituting verbal constructions for the drawings, which the Federal Circuit found erroneous in *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010).

Apple also attempts to remove prior art from design patent construction by relegating it to a "frame of reference for the comparison step" of infringement analysis. Dkt. 1136 at 2. But as the Federal Circuit held in rejecting that argument, design patent construction cannot be determined by the infringement analysis. *OddzOn,* 122 F.3d at 1404. Because the "field" of prior art electronic devices with rectangular shapes and rounded corners, a relatively large display screen, flat front surfaces, and minimal ornamentation is indisputably "crowded," *see* Dkt. 1090-01 at 10, 13, the Court "must construe the range of equivalents very narrowly." *Egyptian Goddess,* 543 F.3d at 679; *id*. at 676 ("And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer. It was for that reason that the Supreme Court in *Whitman Saddle* focused on the one feature of the patented saddle design that departed from the prior art –

the sharp drop at the rear of the pommel."). Apple's conflation of claim construction with infringement analysis and its efforts to escape the significance of prior art is contrary to law.

After all, the scope of the design patent right is limited, as Apple's own cited case held: "Design patents have almost no scope." *Tone Bros., Inc. v. Sysco Corp.*, 1992 WL 200128, *5 (S.D. Iowa, Mar. 17, 1992) (citing *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988)); *see also Elmer*, 67 F.3d at 1577. Apple ignores this basic tenet, which would inappropriately invite jurors who have likely never seen a design patent before to assume they protect general concepts and otherwise grant Apple rights it does not possess. The Court should provide guidance and proper constructions to assist the jury from the commencement of trial.

## II. THE CONSTRUCTION AND SCOPE OF THE D'087 AND D'677 PATENTS ARE DICTATED BY WHAT THE FIGURES CLAIM

Accuracy in design patent drawings is crucial, and the patentee is entitled to claim only what is properly disclosed. *Elmer*, 67 F.3d at 1577. As the Court has recognized, *see* Dkt. 1170 at 8, the MPEP mandates that "oblique line shading must be used to show transparent, translucent and highly polished or reflective surfaces, such as a mirror." MPEP § 1530.02. Apple itself has asserted that prior art designs do not claim a transparent surface where they lack oblique lines. *See* Dkt. 1091, Ex. 14, at ¶ 124. Nevertheless, when it comes to its own patents, Apple contradicts itself by urging the Court to ignore the lack of *any* surface shading in D'087 and argues that its absence should *expand* the patent's scope to "a design formed of particular geometric shapes" with any kind of surface. Dkt. 1136 at 7. This argument fails. Not only is it contrary to this Court's rulings and Apple's own prior positions, but there is no MPEP convention for claiming an opaque surface; it is the default unless the patent distinguishes it as a transparent or reflective surface by using the required oblique shading. Second, design patents must claim their surface ornamentation in addition to their shape. *See Lee v. Dayton-Hudson*, 838 F. 2d 1186, 1188-89 (Fed. Cir. 1988) (rejecting argument that design patents can broadly cover a "basic configuration, not the surface details"). Accordingly, the surfaces of D'087 must be construed as "opaque" or at least as "not transparent, highly polished or reflective."

Apple dismisses as "quibbles" the fact that D'087 and D'677 lack the surface shading required to indicate openings on the surface such as for the earpieces or concave buttons. Dkt.

1136 at 6-7. But patent drawings are scarcely "quibbles." "The necessity for good drawings in a design patent application cannot be overemphasized. As the drawing constitutes the whole disclosure of the design, it is of utmost importance that it be so well executed both as to clarity of showing and completeness, that nothing regarding the design sought to be patented is left to conjecture." MPEP § 1530.02 ¶15.48. The MPEP specifically dictates that "[s]urface shading is also necessary to distinguish between any open and solid areas of the article" and to "delineate plane, concave, convex, raised, and/or depressed surfaces of the subject matter." MPEP § 1503.02, ¶15.48-49. Apple's lofty appeals to the designs' "overall visual impression" do not alter the fact that the patents must be construed in accordance with the governing rules. Apple claims these features are "minor," Dkt. 1136 at 7, but there is no such exception for the proper construction of design patents that would allow them to be ignored. Indeed, Apple's position is implausible because, with so few design elements, each is significant. And Apple offers no support for an opening looking the same as a surface decoration. Neither of these patents claim openings or concave areas on their front surfaces because none are shown in the patent figures.

Finally, Apple disregards both its prior admissions and a prior Court order by claiming that *no* element of its designs is functional. Dkt. 1136 at 9-13. The Court has found that certain D'087 and D'677 design elements are "dictated by" function: "a size that can be handheld, a screen that encompasses a large portion of the front face of the smartphone, and a speaker on the upper portion of the front face of the product." Dkt. 449 at 15.[1] Apple argues the existence of alternative designs disproves any functionality, Dkt. 1136 at 10-12, but that is wrong. First, despite such alleged alternatives, Apple's expert admits that a display, a transparent cover directly above the display, and a receiver hole located in the upper portion of the front face are essential to the use of a smartphone. *See* Dkt 1090-1 at 12. Second, the Federal Circuit has held even if

---

[1] Apple tries to evade this Court's and its expert's functionality determinations by saying the designs are generically for "electronic devices" not only smartphones or tablets. Dkt. No. 1136 at 9-10. Apple is trying to apply its patents to smartphones and tablets that must have those features to function. Apple cannot use a design patent to gain a monopoly on functional features — that is reserved only for utility patents. *See, e.g., Lee*, 838 F.2d at 1188-89 ("[A] a design patent is not a substitute for a utility patent."). D'677 claims an ornamental designs for "cellular phones," among other devices, and in that context the features identified by the Court are indeed functional.

individual elements might have alternative designs, the relative placement of those elements on the article can be functional and unprotectable.  *See Richardson v. Stanley Works*, 597 F.3d 1288, 1294-96 (Fed. Cir. 2010).   Third, the existence of alternative designs alone does not render all elements of a design patent ornamental.  Rather, the existence of alternatives is merely one factor to be considered in determining whether design elements are functional.  *See PHG Tech., Inc. v. St. John Co., Inc.*, 469 F.3d 1361, 1366 (Fed Cir. 2006); *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed Cir. 1997).   Finally, Apple's alternatives argument has since been restricted significantly by Judge Grewal's order granting Samsung' motion to strike numerous alternative design references.  Dkt. 1144 at 7.   The Court should instruct the jury to factor out these indisputably functional elements.   Dkt. 1090, at 14-15.[2]

### III. THE D'889 PATENT MUST BE CONSTRUED CONSISTENTLY WITH ITS FIGURES AND THE EMBODIMENT CLAIMED BEFORE THE PTO

The specification, prosecution history and inventor testimony are all useful sources of evidence for construing claims.   *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (en banc).   Patents also should not be construed to exclude a claimed embodiment.   *Oatey Corp. v. IPS Corp.*, 514 F.3d 1271, 1276-77 (Fed. Cir. 2008) (vacating construction that "improperly excluded" embodiment from scope of claim and holding that "where claims can reasonably be interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary.").   Here, Apple represented to the PTO that the 035 model embodies the D'889.  Dkt. 1091, Ex. 3 at APLPROS0000010190.  Its patent agent who prepared the D'889 application testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  *See* Declaration of Katharine Barach ("Barach Dec.") Ex. 1; *see also* Dkt. 1091 Ex. 17, at 185:10-194:7 (named inventor Daniele De Iuliis

---

[2]  Apple argues its other patents cannot be used to narrow the scope of these patents, Dkt. 1136 at 3, but that is not Samsung's position.   It is the fact that, in each instance, Apple swore under oath to the PTO that the design it sought to patent was "new" and "original" over the prior art, including Apple's previous patents.   35 U.S.C. § 171.   MPEP § 1504.06(II) does allow multiple patents on matter that is not patentably distinct if the patentee agrees to a terminal disclaimer, but only 3 of the 23 iPhone patents cited by Samsung are subject to terminal disclaimers and a number of those were filed before D'677 and D'087, which makes them prior art, not "subsequent patents."   Thus, Apple's representations to the PTO are highly probative.

1 confirming that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).  Apple's named inventors have also

2 testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Barach Dec. Exs. 2, 3.

Apple argues that the 035 embodiment and photographs of it should be disregarded because the patent examiner "cancelled" Apple's photo appendix as superfluous under 37 CFR 1.153, which states that the description is ordinarily limited to references to the drawings.  Dkt. 1091, Ex. 3 at APLPROS0000010267.   But the PTO's cancellation of the proposed appendix said *nothing* about Apple's statement that the 035 model was D'889's embodiment.   Nor could the PTO's action negate Apple's representations then or years later, including in its Opposition (Dkt. 1136 at 5), that the 035 is in fact an embodiment of the D'889 design.   Apple's representations are relevant to construe D'889, to assess Apple's claims that the iPad / iPad 2 are embodiments, and to make infringement comparisons: "When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices."   *Lee*, 838 F. 2d at 1189.   The jury should be allowed to see the 035 embodiment and photographs because they reflect how Apple and named inventors understood the patent at the time it was issued.   *See Phillips*, 415 F.3d at 1317.   Even if the Court is reluctant to affirmatively construe the D'889 using the 035 model, the Court should instruct the jury that Apple represented to the PTO that the model embodies the patent.   *Egyptian Goddess*, 543 F.2d at 680 ("Apart from attempting to provide a verbal description of the design, a trial court can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim.   Those include such matters as . . . assessing and describing the effect of any representations that may have been made in the course of the prosecution history . . . .").

DATED: June 26, 2012                        QUINN EMANUEL URQUHART &
                                                            SULLIVAN, LLP


                                                            By  */s/ Victoria Maroulis*

1
2
3
4
5
6

        Charles K. Verhoeven
        Kevin P.B. Johnson
        Victoria F. Maroulis
        Michael T. Zeller

        Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-6-  Case No.   11-cv-01846-LHK
SAMSUNG'S REPLY IN SUPPORT OF OPENING MEMORANDUM RE CLAIM CONSTRUCTION