# EXHIBIT 8

99999.77769/4844798.1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>           Plaintiff,<br><br>     vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>           Defendants. | CASE NO. 11-cv-01846-LHK |

**EXPERT REPORT OF STEPHEN GRAY**
**REGARDING INVALIDITY OF U.S. PATENT NOS. 7,844,915 AND 7,864,163**

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

time.  PDAs will get more power and smaller size and accommodate more, and more versatile functionalities.

Bandwidth and display size are believed to be the factors that limit the usability and practicality of the handheld device, be it a mobile phone, a palmtop or a hybrid.  In particular, the GUI and the services accessible to such handhelds are critical factors for the consumers' acceptability of such services.

Van Ee US 2002/0030699 A1 at [0005-0006].

### 2.      Touch Screen Displays

273.     As discussed in Section III.A.2 multi-touch display technology was well known by persons of ordinary skill in the art in 2006.  The term "touch screen display" was commonly used to refer to displays incorporating the well-known technologies for sensing the direct touch of a user through resistive, optical and acoustic technologies.

### 3.      Structured Electronic Documents

274.      At the time of the '163 Patent, persons skilled in the art would have been familiar with structured electronic documents and their various applications.  As understood by those in the art, a "structured electronic document" refers to any type of two dimensional information space containing embedded coding that provides some meaning or "structure" to the document.  The coding is embedded within the content of the document and specifies how elements or objects are to be arranged within the information space and relative to one another.  Thus, the comingling of data providing *structure* and data providing *content* in the code of the document is a distinguishing feature of a structured electronic document.

275.      Two common markup languages known to persons skilled in the art at the time of filing the '163 Patent were Hypertext Markup Language ("HTML") and Extensible Markup Language ("XML").  HTML was and is the most common form of markup languages for the web pages that comprise the World Wide Web.  An HTML document consists of "tags" that are embedded in, and surround, the content that is to be displayed.  These tags provide the author's intent as to how the elements are to be displayed and arranged on the HTML document presented to a user through a standard web browser.  The browser interprets these HTML tags and renders the document on the two dimensional display surface accordingly.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

421.      Just as the term "substantially centered" fails to reasonably apprise a person of ordinary skill as to the scope of claim 2, so too does the term "substantially the same" fail to reasonably apprise a person of ordinary skill as to the scope of claim 18.

(c)      **Means-plus-function Claim (Claim 50 and 52)**

422.      It is my opinion that the specification of the '163 Patent lacks corresponding structure to adequately identify the scope of claims 50 and 52 with the requisite specificity.

423.      I have reviewed Apple's P.L.R 4-2 disclosures in this case, and I am aware that Apple's position on the means-plus-function elements is that they are limited to "one or more special or general purpose processors programmed with special-purpose software to execute an algorithm."

424.      It is my opinion that one of ordinary skill in the art would not understand this proposed construction to disclose a structure.  Apple has not identified the particular algorithm used to perform the claimed functions, one of ordinary skill in the art could identify the corresponding algorithms from reading the Patent specification.  It is my opinion that claims 50 and 52 are therefore invalid for indefiniteness.

V.      **CONCLUSION**

For the foregoing reasons, it is my opinion that every asserted claim in both the '915 Patent and the '163 Patent are invalid.


Dated: March 22, 2012




By _Stephen Gray_____
       Stephen Gray

-112-