1  J. MCELHINNY (CA SBN 66781)
   hmcelhinny@mofo.com
2  MICHAEL A. JACOBS (CA SBN 111664)
   mjacobs@mofo.com
3  JENNIFER LEE TAYLOR (CA SBN 161368)
   jtaylor@mofo.com
4  ALISON M. TUCHER (CA SBN 171363)
   atucher@mofo.com
5  RICHARD S.J. HUNG (CA SBN 197425)
   rhung@mofo.com
6  JASON R. BARTLETT (CA SBN 214530)
   jasonbartlett@mofo.com
7  MORRISON & FOERSTER LLP
   425 Market Street
8  San Francisco, California  94105-2482
   Telephone:  (415) 268-7000
9  Facsimile:  (415) 268-7522

   WILLIAM F. LEE
   william.lee@wilmerhale.com
   WILMER CUTLER PICKERING
   HALE AND DORR LLP
   60 State Street
   Boston, MA 02109
   Telephone: (617) 526-6000
   Facsimile: (617) 526-5000

   MARK D. SELWYN (SBN 244180)
   mark.selwyn@wilmerhale.com
   WILMER CUTLER PICKERING
   HALE AND DORR LLP
   950 Page Mill Road
   Palo Alto, California 94304
   Telephone: (650) 858-6000
   Facsimile: (650) 858-6100

11 Attorneys for Plaintiff and
   Counterclaim-Defendant APPLE INC.

13                   UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                        SAN JOSE DIVISION

17  APPLE INC., a California corporation,          Case No.     11-cv-01846-LHK (PSG)

18                     Plaintiff,                  **APPLE'S MOTIONS IN LIMINE**

19           v.

20  SAMSUNG ELECTRONICS CO., LTD., a
    Korean business entity; SAMSUNG
21  ELECTRONICS AMERICA, INC., a New York
    corporation; SAMSUNG
22  TELECOMMUNICATIONS AMERICA, LLC, a
    Delaware limited liability company,

23                     Defendants.

26                  **PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

I.      APPLE MOVES TO EXCLUDE THE 035 MODEL AND PHOTOGRAPHS OF IT. ................................................................................................................... 1

II.     APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING NON-PRIOR ART APPLE OR SAMSUNG DESIGN PATENTS AS THESE PATENTS CANNOT AFFECT THE SCOPE OF A DESIGN PATENT. ........................ 2

III.    APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING CLAIMED PRIOR ART DEVICES AND DOCUMENTS THAT DO NOT QUALIFY AS PRIOR ART. ........................................................................................ 3

IV.     APPLE MOVES TO EXCLUDE TESTIMONY OR EXHIBITS REGARDING MISLEADING PARTIAL VIEWS OF DESIGNS. ............................................................ 7

V.      APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT THAT SAMSUNG RECEIVED LEGAL ADVICE REGARDING THE PATENTS AT ISSUE IN THIS CASE. ........................................................................................... 10

VI.     APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT AS TO HOW COURTS OR TRIBUNALS IN OTHER CASES HAVE CONSTRUED—OR RULED ON THE VALIDITY, ENFORCEABILITY, OR INFRINGEMENT OF—ANY APPLE OR SAMSUNG PATENT ................................................................. 11

VII.    APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT AS TO ANY STATEMENTS ALLEGEDLY MADE BY STEVE JOBS TO WALTER ISAACSON. ...................................................................................................... 12

        A.      The Statements Are Inadmissible under Rule 802. ................................. 13

        B.      The Statements Are Inadmissible under Rule 402. ................................. 13

        C.      The Statements Are Inadmissible under Rule 403. ................................. 14

VIII.   APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT AS TO PARTIES' CORPORATE BEHAVIOR OR FINANCIAL CIRCUMSTANCES UNRELATED TO THIS CASE. .................................................................................. 14

IX.     APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING SAMSUNG'S "PROFITS" CALCULATED BASED ON A TAX AGREEMENT WITH THE UNITED STATES INTERNAL REVENUE SERVICE............................... 15

X.      APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT OF THE FINANCIAL TERMS FOR APPLE'S ACQUISITION OF FINGERWORKS. ............. 17

# TABLE OF AUTHORITIES

**Page**

CASES

*Apple, Inc. v. Samsung Elecs. Co.*,
   678 F.3d 1314 (Fed. Cir. 2012)....................................................................... 4, 8, 9

*Bergstrom v. Sears, Roebuck & Co.*
   496 F. Supp. 476 (D. Minn. 1980) ...................................................................... 16

*Cardinal v. Buchnoff*,
   No. 06-CV-0072, 2010 U.S. Dist. LEXIS 86523 (S.D. Cal. August 23, 2010)..................... 12

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
   282 F.3d 1370 (Fed. Cir. 2002)........................................................................... 9

*Corning Glass Works v. ITC*,
   799 F.2d 1559 (Fed. Cir. 1986)........................................................................... 12

*Crocs, Inc. v. ITC*,
   598 F.3d 1294 (Fed. Cir. 2010)............................................................................ 1

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008)............................................................................. 2

*Faulkner v. Arista Records LLC*
   797 F. Supp. 2d 299 (S.D.N.Y. 2011)............................................................... 13, 14

*Fort James Corp. v Solo Cup Co.*,
   412 F.3d 1340 (Fed. Cir. 2005)........................................................................... 11

*Gorham Co. v. White*,
   81 U.S. 511 (1872)..................................................................................... 2, 3

*In re EchoStar Commc'ns Corp*,
   448 F.3d 1294 (Fed. Cir. 2006).......................................................................... 11

*In re Seagate Tech., LLC*,
   497 F.3d 1360 .......................................................................................... 11

*Jerry's Famous Deli, Inc. v. Papanicolaou*,
   383 F.3d 998 (9th Cir. 2004)............................................................................ 16

*Leatherman Tool Grp. v. Cooper Indus.*,
   131 F.3d 1011 (Fed. Cir. 1997)........................................................................... 3

*Mendenhall v. Cedarapids, Inc.*,
   5 F.3d 1557 (Fed. Cir. 1993)............................................................................ 11

# TABLE OF AUTHORITIES
### (continued)

Page

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
  303 F.3d 1294 (Fed. Cir. 2002)................................................................................. 3

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
  40 F.3d 1007 (9th Cir. 1994)................................................................................. 16

*OddzOn Prods. v. Just Toys*,
  122 F.3d 1396 (Fed. Cir. 1997)............................................................................... 5

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*,
  998 F.2d 985 (Fed. Cir. 1993)................................................................................. 1

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)............................................................................... 2

*Powertech Tech. Inc. v. Tessera, Inc.*,
  660 F.3d 1301 (Fed. Cir. 2011)............................................................................. 12

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)............................................................................... 17

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008)............................................................................... 3

*Tone Bros., Inc. v. Sysco Corp.*,
  No. 90-cv-60011, 1992 WL 200128 (S.D. Iowa Mar. 17, 1992), *vacated on other
  grounds*, 28 F.3d 1192 (Fed. Cir. 1994)................................................................. 3

*U.S. v. Sine*,
  493 F.3d 1021 (9th Cir. 2007)............................................................................... 12

*Woodland Trust v. Flowertree Nursery*,
  148 F.3d 1368 (Fed. Cir. 1998)............................................................................... 5

STATUTES

15 U.S.C.
  § 1117.................................................................................................................... 15

35 U.S.C.
  § 102.................................................................................................................... 3, 5
  § 289.................................................................................................................... 15

# TABLE OF AUTHORITIES
### (continued)

Page

**OTHER AUTHORITIES**

Fed. R. Evid.

Rule 401 ................................................................................................................... 1, 2, 15
Rule 402 ................................................................................................................... passim
Rule 403 ................................................................................................................... passim
Rule 802 ................................................................................................................... 13, 14
Rule 1002 ................................................................................................................. 7, 11
Rule 1003 ................................................................................................................. 7, 11

**INTRODUCTION**

Only relevant evidence is admissible under Rules 401 and 402 of the Federal Rules of Evidence, and even relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of [] unfair prejudice, confusing the issues, misleading the jury" or "wasting time." Fed. R. Evid. 403. Relying on these principles, Apple moves to exclude the following evidence.

**I.     APPLE MOVES TO EXCLUDE THE 035 MODEL AND PHOTOGRAPHS OF IT.**

Samsung seeks to rely on an internal Apple design model (Model 035), photographs of it submitted with the D'889 patent application, and photographs that Samsung has recently taken of that model. None of these is relevant to the scope of the D'889 patent. All of these materials should be excluded as irrelevant and potentially confusing to the jury.

As this Court recently held, Model 035 is not relevant to the scope of Apple's D'889 patent: "the 035 Prototype is not a relevant comparison to establish infringement of the D'889 Patent," and photographs of Model 035 cannot "change the scope of the D'889 Patent, as the drawings in the D'889 Patent establish the claimed design." (Dkt. No. 1170 at 6.)

Samsung has argued that a gap should be read into the D'889 patent based on Samsung's assertion that Model 035 and photographs of it allegedly show such a feature. (*See, e.g.*, Dkt. No. 1090-1 at 5-6.) However, the appropriate construction for a design patent is "the design shown in the [figures of the patent]." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010); *see also Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) (accused design compared to claimed design, not to embodiments of design). Model 035 represents only one embodiment of the D'889 and cannot change the scope of the patent, and neither can photographs of it. Moreover, the photographs of it submitted with the D'889 patent application were canceled from the application as improper for the specification of a design patent. (Dkt. No. 1170 at 6 (citing 37 C.F.R. § 1.84 ("Photographs, including photocopies of photographs, are not ordinarily permitted in utility and design patent applications.").) Thus, allowing Samsung to rely on Model 035 or photographs of it in an attempt to narrow the scope of the D'889 patent would be

prejudicial and confusing to the jury.

The Court should reject Samsung's attempt to use an internal design model or photographs of it as evidence of the scope of the D'889 patent.  The evidence is both irrelevant and more prejudicial than probative.

## II.   APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING NON-PRIOR ART APPLE OR SAMSUNG DESIGN PATENTS AS THESE PATENTS CANNOT AFFECT THE SCOPE OF A DESIGN PATENT.

It appears Samsung intends to proffer evidence of non-prior art Apple or Samsung design patents, or their prosecution histories, in an attempt to narrow the scope of Apple's asserted design patents.  *See* Bartlett Decl. Exh. 1; (*see also* Dkt. No. 1090-1 figure at 11.)  Samsung's argument is legally incorrect and flies in the face of well-settled principles of patent law.  It would also undermine the public notice function of patents.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) ("undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents").

The Court has already rejected this argument as to patents that issued after the date of the asserted patents.  (Dkt. No. 1157 at 5.) (consideration of "patent scope in light of *subsequently issued* patents" was "legal error," rendering testimony "irrelevant under FRE 401.") (emphasis in original).  Similarly, it is legal error to consider patent scope in light of any reference that is not prior art to the asserted patents.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008), which clarifies the ordinary observer test set forth in *Gorham Co. v. White*, 81 U.S. 511 (1872), states that the ordinary observer is deemed knowledgeable of the "prior art." 543 F.2d at 676-77 (prior art provides "frame of reference and is therefore often useful in the process of comparison" of claimed and accused designs).

Nothing in *Egyptian Goddess* suggests that consideration should be given in the infringement analysis to any reference that is not prior art, even if the later reference is a patent issued to the plaintiff.  *See also*, *Tone Bros., Inc. v. Sysco Corp.*, No. 90-cv-60011, 1992 WL

1    200128, at *5 (S.D. Iowa Mar. 17, 1992) ("the scope of the patent is limited only by its terms and

2    not by subsequent patents obtained by Tone [the patentholder]"; thus, "[i]t is of no importance

3    that Tone obtained patents on designs similar to the one at issue"), *vacated on other grounds*,

4    28 F.3d 1192 (Fed. Cir. 1994).

5          As for patents issued to Samsung, it is well settled that issuance of a patent for an accused

6    product provides no protection from infringement of an asserted patent.  In fact, in *Gorham Co. v.*

7    *White*, the Supreme Court held that two separately patented spoon and fork handle designs used

8    by White infringed Gorham's patents.  81 U.S. at 528-31; *see also Leatherman Tool Grp. v.*

9    *Cooper Indus.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997) (patent conveys right to exclude others, not

10   affirmative right to practice claimed invention).

11         Thus, patents owned by Apple or Samsung (or any third party) that are not prior art to the

12   asserted patents, and their prosecution histories, should be excluded from evidence because they

13   are irrelevant and will confuse the jury.

14   **III.    APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT
             REGARDING CLAIMED PRIOR ART DEVICES AND DOCUMENTS
15           THAT DO NOT QUALIFY AS PRIOR ART.**

16         Apple moves to preclude Samsung from relying on alleged prior art that does not qualify

17   as prior art under 35 U.S.C. § 102.  As the accused infringer, Samsung bears the burden of

18   proving by clear and convincing evidence that alleged prior art references anticipate or render

19   obvious the asserted patents.  *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed.

20   Cir. 2008).  Prior art must be both *prior* to the patent at issue and published or known to others.

21   35 U.S.C. § 102; *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir.

22   2002).  Art that is not prior or was not public cannot invalidate the patents-in-suit and should be

23   excluded under Rules 402 and 403.

24         Art that should be excluded includes any alleged D'087 and D'677 prior art that does not

25   pre-date the January 5, 2007 effective filing date for those patents, alleged D'305 prior art that

26   does not pre-date the June 23, 2007 filing date for that patent, and alleged D'889 prior art that

27   does not pre-date the Mar. 17, 2004 filing date for that patent.  In their expert reports Samsung's

28   design patent experts rely on later art as part of their infringement and validity analysis.  They

also rely on references whose date of publication is not self-evident and for which Samsung has presented no evidence of a prior publication date.  Finally, they rely on documents where there is no evidence that the documents were ever published at all.  None of this alleged "prior art" should be admitted into evidence because it is irrelevant and will likely confuse the jury.

Because the deadline to file motions in limine is the day when the parties are to exchange exhibit lists, Apple has relied on the reports of Samsung's experts Itay Sherman, Sam Lucente, and Robert Anders to identify specific pieces of prior art that should be excluded at trial:

- KR30-0452985, alleged prior art to the D'677 and D'087 patents.  Mr. Sherman claims that this reference was "created" no later than August 2006, but the creation date is irrelevant.  (Dkt. 940-3 at 38-39 (filed under seal).)  It is the publication date that matters.  The publication date of this patent is August 27, 2007.  (Dkt. 172-31.)  It is not prior art.

- Sharp Softbank 825SH, alleged prior art to the D'677 and D'087 patents.  Samsung has asserted that this phone is an embodiment of Japanese Design Patent D1241638, and on this basis that it "help[s] demonstrate" aspects of the alleged prior art.  (Dkt. 940-3 at 53.)  Having failed to establish any public release date for the phone that would qualify the phone itself as prior art, Samsung may not introduce it as demonstrative of the JP'638 design.  Moreover, a claim that the Softbank product "helps demonstrate" prior art would be particularly confusing to the jury given the significant differences between the Softbank product and the JP'638 patent.  *See, e.g.*, Bartlett Decl. Exh. 7 at 25 n.6 (describing differences between Softbank and JP '638, in particular less camber to surface of Softbank); *compare* Dkt. 940-3  at 53 (picturing Softbank and describing it as "largely flat") *with Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1326 (Fed. Cir. 2012) (referring to "arched, convex front of the '638 reference").

- LG Chocolate and LG KE850 Prada, alleged prior art to the D'677, D'087, and (as to the LG KE850 Prada) D'305  patents.  Mr. Sherman relies on these two non-patent references and claims in his expert report, with no evidentiary support, that

they were released in "March 2006" and "late 2006," respectively.  (Dkt. 940-3 at 43, 41.)  Mr. Sherman cites to no evidence of their release dates and Samsung has never produced any in this litigation.  The most that Samsung ever mustered were copies of documents indicating "announcement" dates (Dkt. No. 172-18, 172-19), which happen to correspond to the dates that Mr. Sherman now claims are *release* dates.  There is no evidence in the record that the announcements included a public disclosure of the designs in the U.S., which is required for them to be considered prior art to the asserted patents.  35 U.S.C. §102; *OddzOn  Prods. v. Just Toys*, 122 F.3d 1396, 1402 (Fed. Cir. 1997) ("basic principle of patent law" that prior art consists of publications and things known or in use in this country) (internal citation omitted).  For the LG Prada, Samsung has produced a copy of a 2011 website listing a design award and a blog entry showing a low-quality image of one angle of a phone.  (Dkt. No. 179, Ex. F and G.)  However, the website and the blog provide no indication of whether or when the LG Prada design was actually published in the United States, and therefore do not establish by clear and convincing evidence that the LG Prada is a proper prior art reference.  *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1373 (Fed. Cir. 1998) (reversing judgment of invalidity where alleged infringer did not provide clear and convincing evidence of prior public knowledge and use).  Mr. Lucente relies on three different screens of the LG Prada , but there is no indication that any of these screens was publicly disclosed in the United States prior to June 23, 2007.  (Dkt. 940-8 at 37 (filed under seal).)

- Samsung F300, alleged prior art to the D'305 patent.  Samsung alleges that the graphical user interface of the F300 is prior art to the D'305 patent, but Mr. Lucente refers only to the F300 being "announced" in December 2006.  (Dkt. 940-8 at 59.)  Samsung has provided no evidence that the F300 was released, or that the F300 graphical user interface was publicly disclosed, in the United States before June 23, 2007.

- KU990Viewty and LG KS20 icons, alleged prior art to the D'305 patent. Mr. Lucente provides dates for these icons in his report — "08.2007" and "09.2007" — without clarifying whether these are alleged dates of creation, announcement, publication, or something else entirely.  In any case, both are after the filing date of the D'305 patent.  (Dkt. 940-8 at 64.)  These references therefore cannot be prior art to that patent, regardless of what the dates mean.

- F700, alleged prior art to the D'677 and D'087 patents and proposed by Samsung as prior art for inclusion in a joint exhibit list.  Mr. Sherman claimed in his opening report the F700 was "designed" before the iPhone and released "in 2007," but did not specify an actual date of release.  (Dkt. 940-3 at 80.)  Both the D'087 and D'677 patents state on their face that the F700 was *announced* in February 2007.  (Dkt. 75-12 and Dkt. 75-13.)  The F700 therefore is not prior art to the D'087 patent or the D'677 patent.

- Internal documents related to Samsung design concepts, alleged prior art to the D'677 and D'305 patents.  Mr. Sherman refers to various *internal Samsung* documents relating to Samsung's F700 phone as if the underlying design documents are prior art.  (Dkt. 940-3 at 39-40 (filed under seal).)  Non-public internal documents cannot be prior art as they were not publicly known at the time. Similarly, an internal "Samsung Mobile UX Group" document relied on by Mr. Lucente is Samsung-confidential material and cannot be considered a prior art "publication," as it was never published.  (Dkt. 940-8 at 36-37 (filed under seal).)  Indeed, to this very day, Samsung marks these items confidential and redacts them from public filings.  That is the best possible demonstration that the documents are not published or publicly known.

Samsung may argue in response to this motion that non-prior art, if independently made within a comparatively short space of time, can be evidence of obviousness or the level of ordinary skill in the art, even if not prior or not publicly known.  But Samsung's validity experts (Sherman and Lucente) do not rely on the non-prior art for this purpose, and therefore cannot use

the non-prior art in this fashion at trial.  Instead, they treat the later references as invalidating

prior art references while misleadingly stating "announcement" or "creation" dates rather than

publication dates.  (*See, e.g.*, Dkt. 940-3 at 38-39 (filed under seal) (treating KR30-0452985

reference as invalidating prior art and stating creation date of August 2006, omitting that

publication date post-dates asserted patent); (*see also* Dkt. 940-8 at 63-64 (listing "prior art" icons

that post-date asserted patent).)  Other references are treated as invalidating prior art with no

evidence of any publication date.  (*See, e.g.*, Dkt. 940-3 at 53 (citing Sharp Softbank 825SH as

prior art without stating *any* public release date for phone); *see also* Dkt. 940-8 at 59 (citing

Samsung F300 as prior art but stating only announcement date).)  Samsung's internal confidential

documents are not treated as a secondary consideration of obviousness, but as a *primary reference*

by Mr. Lucente, who claims they are "substantially the same" as one Apple patent and that a

designer would have found it obvious to modify this internal Samsung design in various ways,

and as invalidating prior art by Mr. Sherman, who opines that these "internal designs" were

created before the filing of the application for the D'677 patent.

In addition to excluding the above non-prior art references, Apple requests that no

testimony—expert or fact—be allowed about these materials.  As with the references themselves,

such testimony would be both irrelevant and misleading to the jury.  Fed. R. Evid. 403, 1002,

1003.

## IV.   APPLE MOVES TO EXCLUDE TESTIMONY OR EXHIBITS REGARDING MISLEADING PARTIAL VIEWS OF DESIGNS.

Apple moves to preclude Samsung from relying on misleading partial views of designs,

whether in playing deposition testimony, cross-examining live witnesses, or arguing its case to

the jury.

Although designs are three dimensional, Samsung consistently shows only one two-

dimensional representation of certain designs.  It did so in its preliminary injunction briefing,

presenting only the front view of the JP'638 reference and dismissively claiming—without

showing the full picture—that differences were "subtle" and did "not change the teaching of the

design or the overall impression of the design."  (Dkt. 429 at 7.)  The Federal Circuit did not

1   agree.  *Apple*, 678 F.3d at 1326-27 ("the side view . . . of the 638 reference distinguish[es] it from

2   the perfectly flat front face of the D'087 patent").  Yet, Samsung persists in playing a game with

3   single views and has elicited deposition testimony that it may seek to use at trial, misleadingly

4   presenting to witnesses only front views of the design.

5        For example, Samsung has shown witnesses the following graphic and asked them

6   whether the designs are "substantially the same."

7

8

9



10

11

12

13

14

15

16        Some witnesses have agreed, only to discover later that the front surface of the design on

17   the left is not flat when they were able to view all figures in the JP'638 patent:

18

19

20



21

22

23

24

25   (Dkt. No. 172-16 at 3-4.)

26        Allowing Samsung to use the testimony that it obtained as a result of its misleading

27   deposition questions will confuse the jury, particularly when the prior art analysis requires

28

1  consideration of whether the art presents "the same *overall* visual appearance as the claimed

2  design."  *Apple*, 678 F.3d at 1329-32 (internal citation omitted) (emphasis in original).  As the

3  Administrative Law Judge explained when testimony about the above graphic arose at the hearing

4  in the related ITC investigation:

5  > And the thing you should be showing the witness is the backside
>  and front. . . .  I would not let you have gotten away with that inside
6  > the hearing room. . . . Because I think it's inherently misleading.

7  Bartlett Decl. Exh. 9.

8  In addition to the testimony that Samsung obtained in depositions, Samsung also uses

9  misleading, incomplete views of designs to compare against Apple's asserted design patents in its

10  interrogatory responses and expert reports, and likely will try to do so in its demonstrative

11  exhibits at trial.  For example, Samsung's expert Itay Sherman features the single front view of

12  the JP'638 shown above on the left in his expert report three times along with similar front-only

13  views of two phones that Mr. Sherman alleges embody this patent (which disguises the significant

14  differences between those phones and the JP'638, as discussed above).  With one exception

15  showing a small side-cut view, no other figures from the JP'638 patent and no other perspectives

16  of the alleged embodiments are shown, concealing the full picture revealed by the alternate views

17  shown above.

18  Mr. Sherman's testimony about partial views of a prior art reference is legally irrelevant

19  because it fails to take into account all views of the prior art, compared against all views of

20  Apple's design patents.  "[T]he 'ordinary observer' analysis is not limited to the ornamental

21  features of a subset of the [patent's] drawings, but instead must encompass the claimed

22  ornamental features of all figures of a design patent."  *Contessa Food Prods., Inc. v. Conagra,*

23  *Inc.*, 282 F.3d 1370, 1379 (Fed. Cir. 2002).  Because showing only a partial view may conceal

24  significant differences apparent from other views,  Samsung should not be permitted to question

25  witnesses or present to the jury misleadingly incomplete depictions of any prior art reference. [1]

26  _____

27  [1] This motion does not assert that all eight views of a patent must be shown in every
demonstrative.  In some circumstances, for example to save space, one view of a patent may be
28  presented as illustrative.   What is misleading and should be precluded is to show only one view

(Footnote continues on next page.)

**V.      APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT THAT SAMSUNG RECEIVED LEGAL ADVICE REGARDING THE PATENTS AT ISSUE IN THIS CASE.**

Apple seeks to preclude Samsung from proffering any evidence that it relied on advice of counsel in continuing to infringe Apple's patents and to infringe and dilute Apple's trade dress. Samsung invoked the attorney-client privilege to shield these communications from discovery, and therefore should not be allowed to invoke the advice of counsel to rebut an inference that its infringement was willful.

Samsung has refused to disclose privileged communications with counsel regarding the patents at issue on several occasions.  Apple's Requests for Production 20 and 21 request "all documents relating to Samsung's analyses, actions, plans or attempts to exercise due care to avoid infringing the Patents at Issue" and "all documents relating to any opinions, investigations, prior art searches, legal opinions, or oral or written advice regarding the patentability, novelty, validity, enforceability, infringement, interpretation, or scope of any claim(s) of the Patents at Issue," respectively.  Bartlett Decl. Exh. 3 at 9.  Samsung's responses to RFPs 20 and 21 invoked "the attorney-client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity."  Bartlett Decl. Exh. 4 at 13.  Also, ██████████████████████████████████████ ██████████████████████████████████████████████████  Bartlett Decl. Exh. 2 at 137:2-5, ██████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████

Samsung should not be allowed to invoke the advice of counsel at this late stage, after preventing Apple from obtaining discovery on this issue.  A party may not use the attorney-client

---

(Footnote continued from previous page.)

of a design in questioning witnesses about the similarity between that design and a patent-in-suit, or in arguing that issue to the jury.

1    privilege as "both a sword and a shield," disclosing "favorable communications while asserting

2    the privilege as to less favorable ones." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1372, citing *In*

3    *re EchoStar Commc'ns Corp,* 448 F.3d 1294, at 1299 (Fed. Cir. 2006); *Fort James Corp. v Solo*

4    *Cup Co.,* 412 F.3d 1340, at 1349 (Fed. Cir. 2005).  Nor may a party rely on having sought the

5    advice of counsel without disclosing the substance of that advice.  *In re EchoStar Commc'ns*

6    *Corp.*, 448 F.3d at 1299 (Fed. Cir. 2006) (once party announces reliance on advice of counsel,

7    attorney-client privilege is waived).

8         Samsung should be precluded, not only from offering documentary evidence that it sought

9    counsel's advice on infringement or validity, but also from eliciting testimony that Samsung

10   consulted legal advisors about the patents.  Fed. R. Evid. 403, 1002, 1003.  Apple has sought, but

11   been denied, discovery of this evidence, and would be unfairly prejudiced by its admission into

12   evidence.

13   **VI.    APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT AS TO**
**HOW COURTS OR TRIBUNALS IN OTHER CASES HAVE**
14   **CONSTRUED—OR RULED ON THE VALIDITY, ENFORCEABILITY,**
**OR INFRINGEMENT OF—ANY APPLE OR SAMSUNG PATENT**
15

16        Apple moves *in limine* to preclude Samsung from introducing as evidence, or otherwise

17   using in its presentation to the jury, any decision of another district court, a foreign court, or any

18   tribunal such as the International Trade Commission ("ITC") concerning Apple's patents.  While

19   other tribunals have construed and adjudicated certain of the patents-in-suit or their family

20   members or foreign counterparts, these decisions are irrelevant, potentially prejudicial, and

21   hearsay.

22        Other courts' decisions are irrelevant and their mention before the jury is potentially

23   prejudicial.  It is for this Court to instruct the jury as to the claim constructions that apply in this

24   case.  Confusion will result from "exposing the jury to another judge's statements on the law" or

25   of the application of that law to the facts of another case.  *Mendenhall v. Cedarapids, Inc.*, 5 F.3d

26   1557, 1574-75 (Fed. Cir. 1993).  In addition, ITC determinations have no preclusive effect or

27   precedential value.  *See Powertech Tech. Inc.* v. *Tessera, Inc.*, 660 F.3d 1301, 1308 (Fed. Cir.

28

2011); *Corning Glass Works v. ITC*, 799 F.2d 1559, 1570 n. 12 (Fed. Cir. 1986).  Under Rules 402 and 403, all such evidence should thus be excluded.

Any mention of other courts' decisions should also be excluded as inadmissible hearsay. *See, e.g.*, *U.S. v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) ("A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'  It is even more plain that the introduction of discrete judicial factfindings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay") (internal citations omitted).  Judicial opinions and judicial fact-finding do not fall under the public records exception to the hearsay rule. *Cardinal v. Buchnoff*, No. 06-CV-0072, 2010 U.S. Dist. LEXIS 86523, at *7 (S.D. Cal. August 23, 2010).

## VII.   APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT AS TO ANY STATEMENTS ALLEGEDLY MADE BY STEVE JOBS TO WALTER ISAACSON.

Apple's co-founder and former CEO Steve Jobs was an iconic figure, and the publication of his biography shortly after his death drew intense media scrutiny.  *See* W. Isaacson, *Steve Jobs* (Simon & Schuster Oct. 24, 2011).  The biography contains several colorful quotes that author Walter Isaacson attributes to Mr. Jobs, including quotes concerning Mr. Jobs' belief that Google used Apple's intellectual property to develop the Android mobile operating system.  Among other things, Mr. Isaacson quotes Mr. Jobs as saying: "I'm going to destroy Android, because it's a stolen product.  I'm willing to go thermonuclear war on this."  "I will spend my last dying breath if I need to, and I will spend every penny of Apple's $40 billion in the bank, to right this wrong." Mr. Isaacson also quotes Mr. Jobs as saying, "Picasso had a saying, 'Good artists copy, great artists steal.'  And we have always been shameless about stealing great ideas."  Samsung used these quotes in its pre-hearing brief in the parties' related ITC action, and will likely attempt to use this same material in order to unfairly influence the jury in this case.  *See* Bartlett Decl. Exh. 6 at 1.

While Mr. Isaacson's account of Mr. Jobs' feelings toward Android may interest people looking for insight into Jobs' life, Mr. Isaacson's out-of-court statements about what Mr. Jobs allegedly said to him are inadmissible hearsay irrelevant to any issue in this case.  Accordingly,

Apple moves this Court to exclude from trial all quotes attributed to Steve Jobs in Walter Isaacson's biography, whether or not Mr. Isaacson is mentioned as the source for the quotation.

### A.     The Statements Are Inadmissible under Rule 802.

The statements attributed to Mr. Jobs in Isaacson's biography should not be admitted into evidence because they are hearsay not subject to an exception.  Mr. Isaacson's biography is an out-of-court statement that purports to report Mr. Jobs' out-of-court statements.  Even if the statements would have been admissible as Mr. Jobs' sworn testimony, or as Mr. Isaacson's sworn account of Mr. Jobs' statements, they are not admissible as text on a written page.  Mr. Isaacson's biography is not a business record or a learned treatise that an expert could plausibly rely upon in forming relevant opinions.  Mr. Isaacson's out-of-court recounting of the statements is therefore inadmissible under Rule 802, and any third party's repetition of the same statements, whether attributed to Mr. Isaacson or Mr. Jobs, is inadmissible for the same reason.

### B.     The Statements Are Inadmissible under Rule 402.

To be admissible at trial, Mr. Jobs' purported statements must also be relevant to some issue in this case, and they are not.  *See* Fed. R. Evid. 402.  They do not make infringement more or less likely, have nothing to do with validity or functionality, and are otherwise irrelevant to any material factual dispute in this case.

In *Faulkner v. Arista Records LLC*, members of a 1970s-era musical group brought suit against their record company, alleging that they were owed tens of millions of dollars in unpaid royalties.  797 F. Supp. 2d 299 (S.D.N.Y. 2011).  To support its assertion that the band did not have a hit single or album after 1977, the record company sought to introduce two pages from a book by one of the band members.  *Id.* at 306.  The court found that, while the information would no doubt be of great interest to the observer of popular culture or the trivia lover, the question whether the band had any hits after 1977 was completely irrelevant to any legal issue in the case.  *Id.*  The pages were therefore inadmissible pursuant to Rule 402.  *Id.*

Mr. Jobs' purported statements are similarly irrelevant to any issue in this case.  The claim that "Great artists steal," for example, has no bearing on whether Samsung's conduct is legally

1   actionable or whether Apple's technology infringes Samsung's patents.  And similarly, even if the

2   sound bites in Mr. Isaacson's biography accurately captured Mr. Jobs' feelings about Android,

3   those feelings have no bearing on the merits of Apple's claims.  Accordingly, the statements

4   should be excluded.

5           **C.**      **The Statements Are Inadmissible under Rule 403.**

6

7          Even if they were admissible under Rule 802 and Rule 402, Mr. Jobs' purported

8   statements should be inadmissible under Rule 403.   Any probative value that these statements

9   may have is substantially outweighed by the danger of undue prejudice and confusion.  Fed. R.

    Evid. 403.

10         "Undue prejudice" according to the comments to Rule 403 "means an undue tendency to

11  suggest a decision on an improper basis, commonly, though not necessarily, an emotional one."

12  Fed. R. Evid. 403 advisory committee's note.  The sound bites in Mr. Isaacson's biography may

13  reflect Mr. Jobs' strong feelings towards protecting Apple's intellectual property, but it would be

14  a distraction to introduce them in this trial.

15  **VIII.  APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT AS TO**
16         **PARTIES' CORPORATE BEHAVIOR OR FINANCIAL**
           **CIRCUMSTANCES UNRELATED TO THIS CASE.**
17
           Samsung may attempt to introduce evidence of allegations relating to the size of Apple's
18
    tax bill, the compensation paid to Apple's employees, working conditions related to the
19
    manufacture of Apple products, other similarly irrelevant Apple corporate behavior.  These issues
20
    have no relevance to this case and any evidence should be excluded under Rules 401 and 402.
21
    Such evidence has no "tendency to make the existence of any fact that is of consequence to the
22
    determination of [this] action more probable or less probable than it would be without the
23
    evidence." Fed. R. Evid. 401.  Samsung's proffering of this evidence would be an obvious
24
    attempt to tar Apple's corporate reputation with irrelevant hearsay and should be excluded. Fed.
25
    R. Evid. 402 ("irrelevant evidence is not admissible").
26
           Similarly, neither party's overall revenues, profits, cash on hand, or wealth are relevant or
27
    admissible.  Damages should be determined based the financial results relating to the accused
28

1    products on both sides and not the overall revenues or wealth of either company.  Apple should

2    not pay more or receive less due to its overall revenues or valuation.[2]

3        Evidence as to these issues should also be excluded because its probative value is

4    substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading

5    the jury, and wasting time.  Fed. R. Evid. 403.  The tendency of such evidence to encourage the

6    jury to make a decision on an improper, emotional basis far outweighs any possible relevance.

7    *See* Fed. R. Evid. 403 advisory committee's note.  Exclusion under Rule 403 is particularly

8    appropriate given that trial time is limited to 25 hours per side.  Allowing this evidence would

9    unnecessarily waste valuable trial time.  If Samsung were allowed to introduce evidence on these

10   issues, Apple would be compelled to respond to the allegations, despite limited time to address

11   the true issues in the case.  Accordingly, Apple requests that the Court preclude Samsung from

12   offering any evidence of the size of Apple's tax bill, the compensation paid to Apple's employees,

13   working conditions related to the manufacture of Apple products, or other irrelevant corporate

14   behavior, and/or either party's overall revenues, profits, cash on hand, or wealth.

15   **IX.    APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT**
**REGARDING SAMSUNG'S "PROFITS" CALCULATED BASED ON A**
16   **TAX AGREEMENT WITH THE UNITED STATES INTERNAL**
**REVENUE SERVICE.**
17

18       The Court should preclude Samsung from introducing evidence of its "profits" calculated

19   based on a tax agreement with the United States Internal Revenue Service because the jury must

20   award damages based on Samsung's *economic* profits and losses.  Under 35 U.S.C. § 289,

21   Samsung is liable to Apple "to the extent of its total profit" for sale of products that infringe

22   Apple's design patents, and under 15 U.S.C. § 1117, Samsung must disgorge its profits from the

23   sale of products that violate Apple's trade dress.  *See Jerry's Famous Deli, Inc. v. Papanicolaou*,

24   383 F.3d 998, 1004–05 (9th Cir. 2004); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007,

25

26       [2] The damages experts of both sides have used measures related to the market
capitalization and financial return of both companies as an input into certain calculations.  These
27   methods and the resulting output can be explained without specific reference to the wealth or
overall revenues of either company.
28

1010 (9th Cir. 1994).  These statutes refer to and permit Apple to obtain damages based on Samsung's economic profits.  *See Bergstrom v. Sears, Roebuck & Co.* 496 F. Supp. 476 (D. Minn. 1980) (for purpose of determining "total profits" under 35 U.S.C. § 289, plaintiff-owner was entitled to full economic profits of manufacturer and other sellers in chain of distribution). As a result, profit calculations that derive from tax treaties between Samsung and the IRS are not relevant and will be confusing to the jury.  They should be excluded under Rules 402 and 403.

Both Samsung's and Apple's damages experts have submitted reports and rendered opinions regarding Samsung's economic profits – the total amount of money the Samsung entities collectively earn from the sale of accused products, minus the costs to manufacture the products and any variable costs directly associated with the manufacture, marketing and sale of the products.  This evidence bears on material, contested facts and is admissible.

Samsung, however, intends to introduce a separate "profit" calculation for Samsung Telecommunications America, LLC ("STA") and Samsung Electronics America, Inc. ("SEA") that is based instead on a tax treaty with the U.S. government.  As a foreign company operating in the United States, ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████████.  According to Samsung's U.S. financial controller, as a result of the Advanced Pricing Agreement Samsung's U.S. subsidiaries report an artificial but consistent ████████████ "profits" in the United States and pay taxes based on this taxable income in comparison to the ████████████████████ that Samsung collectively earns in economic profit from the sale of the same product.  Samsung's U.S. controller admitted under oath that ████████████████████████████████████████████████████████ ████████

1    Despite these undisputed facts, Samsung apparently intends to introduce this artificially

2    low, tax-driven "profit" calculation to the jury.  This evidence would confuse the jury into

3    awarding Apple damages based on an artificially low amount that is relevant to taxes but not to

4    economic profits.  Because these tax-driven calculations do not provide any relevant calculation

5    for the determination of damages, they should be excluded under Rule 402 and 403.  The Court

6    should limit the parties to the introduction of evidence regarding consolidated economic profits,

7    not tax-reportable profits, from the sale of the accused devices.

8    ## X.    APPLE MOVES TO EXCLUDE EVIDENCE OR ARGUMENT OF THE
         FINANCIAL TERMS FOR APPLE'S ACQUISITION OF FINGERWORKS.
9

10    As this Court recognized in its order on the *Daubert* motions, a license, patent acquisition,

11    or other commercial agreement is only admissible if it involves a comparable transaction

12    involving the same or very similar technology.  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860,

13    869 (Fed. Cir. 2010); (Dkt. 1157 at 12.)  Based on this rule, the Court should exclude any evidence of

14    Apple's acquisition of a company called Fingerworks Inc.  The Fingerworks acquisition did not

15    involve any of the patents-in-suit.  It was a complex corporate transaction that occurred more than

16    five years before the hypothetical negotiation date here.   And Apple is dismissing from the case

17    the '607 patent, the one that Samsung's expert relied on for his explanation for how this

18    transaction could possibly be relevant.

19    Samsung seeks to introduce evidence of Apple's acquisition of Fingerworks based on the

20    following statement by its damages expert Michael Wagner:

21         "I do not have enough information to use this factor to determine the value of the
         patents-in-suit. However, Apple's acquisition of FingerWorks for $13.5 million
22         that includes what appears to be two foundational patents for multi-touch
         capabilities should be considered as a reasonableness check on any conclusion of
23         value of a non-exclusive license to the '607 Patent and the '129 Patent that all
         reference one of these two foundational patents."
24
     (Dkt. 940-2, Exh. 22 (filed under seal) at ¶ 404.)
25
         The Fingerworks acquisition is entirely irrelevant to the assessment of a reasonable
26
     royalty in this case.  Apple did not use the Fingerwork's technology when it designed the
27
     touchscreen on the iPhone or the iPad.  Bartlett Decl. Exh. 10 at 105:9-13 ▮▮▮▮▮▮▮▮▮▮
28

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████ *see also id.* at 105:19-24.  And in any

4 event Apple has committed to dismissing both of its touchscreen hardware patents without

5 prejudice in order to narrow the case for trial.  (Dkt. 981 and Dkt. 1178.)   With the '129 and the

6 '607 patents out of the case, Apple is at a loss to understand why Samsung remains opposed to

7 this motion.  Bartlett Decl. Exh. 8.

8      Samsung should not be allowed to use a dissimilar corporate acquisition regarding

9 different technology, at a different time, involving different parties in an effort improperly to

10 reduce damages involving patents that have been removed from the trial.  The Court should

11 exclude economic evidence about the Fingerworks' acquisition and its effect on reasonable

12 royalties under Rules 402 and 403.

13

14 Dated: July 5, 2012            MORRISON & FOERSTER LLP

15

16                 By:    */s/ Michael A. Jacobs*

17                      Michael A. Jacobs

18                      Attorneys for Plaintiff
                     APPLE INC.

19

20

21

22

23

24

25

26

27

28