Exhibit 3

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

KENNETH H. BRIDGES (CA SBN 243541)
kbridges@bridgesmav.com
MICHAEL T. PIEJA (CA SBN 250351)
mpieja@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone:  (650) 804-7800
Facsimile:  (650) 852-9224

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE INC.'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

Apple Inc. ("Apple" or "Plaintiff") hereby requests, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, that Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC respond to Apple's Second Set of Requests for Production of Documents (the "Requests"). Apple requests that Samsung produce for inspection and copying the documents and things set forth below at the offices of Morrison & Foerster, LLP, 425 Market St., San Francisco, CA 94105-2482 within thirty (30) days, or such other time as the parties agree or the Court orders.

**DEFINITIONS**

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California. In addition, the following terms shall have the meanings set forth below whenever used in any Request.

1.  "Samsung," "You," "Your," and/or "Defendants" mean Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC and all predecessors, successors, predecessors-in-interest, successors-in-interest, subsidiaries, divisions, parents, and/or affiliates, past or present, any companies that have a controlling interest in Defendants, and any current or former employee, officer, director, principal, agent, consultant, representative, or attorney thereof, or anyone acting on their behalf.

2.  "Apple" means Apple Inc. and its subsidiary entities, divisions, predecessors, successors, present and former officers, directors, employees, representatives, agents, and anyone acting on its behalf.

3.  "Products at Issue" means the following products that Samsung has imported into or sold, or will import into or sell, in the United States: Acclaim, Captivate, Continuum, Droid Charge, Exhibit 4G, Epic 4G, Fascinate, Gem, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Showcase i500, Showcase Galaxy S, Sidekick, Transform, Vibrant, and Galaxy S II (aka Galaxy S 2) phones and the Galaxy Tab, Galaxy Tab 10.1, and Galaxy Tab 8.9 tablet computers; any similar products, and any products that Apple accuses of infringing its

1   intellectual property in this litigation.

2      4.     "Utility Patents at Issue" means U.S. Patent Nos. 7,812,828 (the "'828 Patent"), 6,493,002 (the "'002 Patent"), 7,469,381 (the "'381 Patent"), 7,844,915 (the "'915 Patent"), 7,853,891 (the "'891 Patent"), 7,663,607 (the "'607 Patent"), 7,864,163 (the "'163 Patent"), and 7,920,129 (the "'129 Patent").

3      5.     "Design Patents at Issue" means U.S. Design Patent Nos. D627,790 (the "D'790 Patent"), D617,334 (the "D'334 Patent"), D604,305 (the "D'305 Patent"), D593,087 (the "D'087 Patent"), D618,677 (the "D'677 Patent"), D622,270 (the "D'270 Patent"), and D504,889 (the "D'270 Patent").

4      6.     "Patents at Issue" means the Utility Patents at Issue and the Design Patents at Issue.

5      7.     "Hardware Design" means a device's casing, screen and screen borders, bezel or band, buttons, ports, speaker, and all hardware, insignia, or ornamentation thereon.

6      8.     "Graphical User Interface Design" means the graphical user interface displayed on a device's screen, including all of the icons displayed as part of the graphical user interface.

7      9.     "Original iPhone Trade Dress" means the following elements of Apple's product designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic bezel around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

8      10.    "iPhone 3G Trade Dress" means the following elements of Apple's product designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic bezel around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial black borders above and below

the display screen and narrower black borders on either side of the screen; when the device is on, a row of small dots on the display screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

11. "iPhone 4 Trade Dress" means the following elements of Apple's product designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower black borders on either side of the screen; a thin metallic band around the outside edge of the phone; when the device is on, a row of small dots on the display screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

12. "iPhone Trade Dress" means the following elements of Apple's product designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower neutral borders on either side of the screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

13. "iPad Trade Dress" means the following elements of Apple's product designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic rim around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders on all sides of the display screen; and when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen.

14. "iPad 2 Trade Dress" means the following elements of Apple's product designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic rim around the clear flat surface; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders on all sides of the display screen; and when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen.

15. "Trade Dress Registrations" means U.S. Registration Nos. 3,470,983; 3,457,218; and 3,475,327.

16. "Trade Dress Applications" means U.S. Application Serial Nos. 77/921,838; 77/921,829; 77/921,867; and 85/299,118.

17. "Registered Icon Trademarks" means the marks shown in U.S. Registration Nos. 3,866,196; 3,889,642; 3,886,200; 3,889,685; 3,886,169; and 3,886,197.

18. "Purple iTunes Store Trademark" means the mark shown in U.S. Application Serial No. 85/041,463.

19. "iTunes Eighth Note and CD Design Trademark" means the mark shown in U.S. Registration No. 2,935,038.

20. "Apple Products" means the original iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPad, iPad 2, and iPod touch.

21. "Document(s)" has the broadest possible meaning permitted by Federal Rules of Civil Procedure Rules 26 and 34 and the relevant case law, and the broadest meaning consistent with the terms "writings" or "recordings" as set forth in Rule 1001 of the Federal Rules of Evidence, and specifically and without limitation include tangible things and electronically stored information, including e-mail and information stored on computer disk or other electronic, magnetic, or optical data storage medium.  "Document(s)" also includes all drafts or non-final versions, alterations, modifications, and amendments to any of the foregoing.

22. "Communication(s)" means the transmittal of information in the form of facts, ideas, inquiries, and any exchange or transfer of information whether written, oral, electronic, or in any form.

23. "Tangible Thing(s)" has the broadest possible meaning permitted by Federal Rules of Civil Procedure 26 and 34 and the relevant case law.

24. "Relating" means regarding, referring to, concerning, mentioning, reflecting, pertaining to, analyzing, evidencing, stating, involving, identifying, describing, discussing, documenting, commenting on, dealing with, embodying, responding to, supporting, contradicting, comprising, containing, or constituting (in whole or in part), as the context makes appropriate.

25. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

26. The use of the singular form of any word includes the plural and vice versa.

27. The singular is to be construed as including the plural and vice versa. "And" as well as "or" are to be construed either disjunctively or conjunctively to acquire the broadest meaning possible, so as to bring within the scope of the Request all information that might otherwise be construed to be outside its scope. The term "all" is to be construed to mean "any" and "each" and vice versa.

28. "Including" shall be construed to mean "including, without limitation" or "including, but not limited to."

29. "Person(s)" means natural persons as well as business entities and associations of all sorts, including partnerships, companies, proprietorships, joint ventures, corporations, government agencies, and unincorporated associations.

30. "Entity" or "Entities" means, including without limitation, corporation, company, firm, partnership, joint venture, association, governmental body or agency, or persons other than a natural person.

31. "Third Party" or "Third Parties" means all persons who are not parties to this Litigation, as well as their officers, directors, employees, agents and attorneys.

32. "First Amended Complaint" means the first amended complaint in the above-captioned action dated June 16, 2011.

33. "Answer" means Samsung's answer to the First Amended Complaint in the

above-captioned action dated June 30, 2011.

34. "Samsung's Counterclaims" means Samsung's Counterclaims asserted in response to the First Amended Complaint in the above-captioned action dated June 30, 2011.

**INSTRUCTIONS**

1. Each document is to be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, and as maintained in the ordinary course of business.

2. If Samsung withholds any documents on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support of that claim as required by Rule 26(b)(5) of the Federal Rules of Civil Procedure.

3. Documents responsive to each Request must be produced in full and subject to any Request being narrowed by the parties' meeting and conferring regarding your corresponding requests to Plaintiff, if applicable.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 9:**

All documents created within the last five years relating to Samsung's actual or projected smartphone market share.

**REQUEST FOR PRODUCTION NO. 10:**

All documents created within the last five years relating to Samsung's actual or projected tablet computer market share.

**REQUEST FOR PRODUCTION NO. 11:**

Documents relating to the Hardware Design and Graphical User Interface Design of the Captivate, Continuum, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Showcase i500, Showcase Galaxy S, Transform, Vibrant, and Galaxy S II phones and the Galaxy tablets.

**REQUEST FOR PRODUCTION NO. 12:**

Documents relating to the development of the designs, features, and functions in the Products at Issue that are alleged in this action to infringe one or more of the Patents at Issue,

1  including, but not limited to, all documents reviewed for purposes of developing these designs,
2  features, and functions and all computer-aided design files relating to these designs, features, and
3  functions.

4  **REQUEST FOR PRODUCTION NO. 13:**

5  All documents relating to the development of the Products at Issue that mention or refer to
6  Apple or Apple Products, including communications among or with Your personnel that discuss
7  whether or how to copy any design, feature, or function of an Apple Product.  Documents
8  responsive to this Request include, but are not limited to, Your decision to redesign the Galaxy
9  Tab 10.1 to more closely match the design of the iPad 2.

10 **REQUEST FOR PRODUCTION NO. 14:**

11 All physical samples of Apple Products in Your possession (excluding only samples, if
12 any, which may have been purchased exclusively for purposes related to this litigation by or at the
13 direction of counsel) together with all documents relating to when the samples were obtained, for
14 what purpose, and how You used them.

15 **REQUEST FOR PRODUCTION NO. 15:**

16 All documents relating to Your inspection of Apple Products.  Documents responsive to
17 this Request include, but are not limited to, photographs of Apple Products and tear-downs of
18 Apple Products, notes and memoranda that You made relating to Apple Products, and email
19 communications relating to any such inspection.

20 **REQUEST FOR PRODUCTION NO. 16:**

21 All documents relating to marketing of any Products at Issue that discuss or refer directly
22 or indirectly to Apple or Apple Products, including copies of all advertisements or other
23 promotional materials, marketing plans, market surveys, focus group studies, or other documents
24 related to testing of advertisements or advertisement messaging.  Documents responsive to this
25 Request include, but are not limited to, Your "Hello" marketing campaign relating to the
26 Galaxy S, Your "See Flash Run" marketing campaign for the Galaxy Tab, and Your "Appelmos"
27 ("Applesauce") marketing campaign relating to the Galaxy S II.
28

**REQUEST FOR PRODUCTION NO. 17:**

Copies of all advertisements relating to the Products at Issue.

**REQUEST FOR PRODUCTION NO. 18:**

Three samples of each Product at Issue, together with all packaging and documentation that You provide to end users in connection with the Products at Issue.

**REQUEST FOR PRODUCTION NO. 19:**

All documents relating to when and under what circumstances You first became aware of the Patents at Issue.

**REQUEST FOR PRODUCTION NO. 20:**

All documents relating to Samsung's analyses, actions, plans or attempts to exercise due care to avoid infringing the Patents at Issue.

**REQUEST FOR PRODUCTION NO. 21:**

All documents relating to any opinions, investigations, prior art searches, legal opinions, or oral or written advice regarding the patentability, novelty, validity, enforceability, infringement, interpretation, or scope of any claim(s) of the Patents at Issue.

**REQUEST FOR PRODUCTION NO. 22:**

All documents relating to any indemnification for any infringement (including contributory or inducement of infringement) of the Patents at Issue, including all documents relating to agreements by Samsung to indemnify any person or third parties, agreements by any person or third party to indemnify Samsung, and all documents relating to discussions, meetings, and communications relating to any indemnification proposal or agreement.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to any estimate, approximation, or determination of the value of the Patents at Issue.

**REQUEST FOR PRODUCTION NO. 24:**

All documents relating to any estimate, approximation, or determination of a royalty rate or license fee for any patent or portfolio of patents held by Samsung.

1  **REQUEST FOR PRODUCTION NO. 25:**

2  All documents relating to payments made by Samsung to third parties for licenses to

3  intellectual property or payments made to Samsung by third parties for licenses to intellectual

4  property.

5  **REQUEST FOR PRODUCTION NO. 26:**

6  All documents relating to the decision to adopt the Hardware Design of each of the

7  Captivate, Continuum, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G,

8  Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Showcase i500, Showcase Galaxy

9  S, Transform, Vibrant, and Galaxy S II phones and the Galaxy tablets.

10  **REQUEST FOR PRODUCTION NO. 27:**

11  All documents relating to the decision to adopt each version of the Graphical User

12  Interface Design installed on or available on each of the Products at Issue, including the decision

13  to adopt each of the icons displayed in each version of the Graphical User Interface Design

14  installed on or available on each of the Products at Issue.

15  **REQUEST FOR PRODUCTION NO. 28:**

16  All documents sufficient to show each of Your sales forecasts for each of the Products at

17  Issue.

18  **REQUEST FOR PRODUCTION NO. 29:**

19  All documents relating to any testing, surveys, focus groups, studies, or other means of

20  obtaining consumer opinions that Samsung conducted or had conducted on their behalf in

21  connection with each of the Products at Issue.

22  **REQUEST FOR PRODUCTION NO. 30:**

23  Documents sufficient to identify each Person who was involved in the design of the

24  Hardware Design of each of the Products at Issue and/or each version of the Graphical User

25  Interface Design installed on or available on each of the Products at Issue, including identifying

26  the title of each such Person and the group or department with which each such Person was

27  associated during the period of his or her involvement.

28

**REQUEST FOR PRODUCTION NO. 31:**

All documents authored, received, or viewed by Lee Don-Joo relating to Apple or the Apple Products, including email communications.

**REQUEST FOR PRODUCTION NO. 32:**

Documents sufficient to identify all retail outlets in the United States where each of the Products at Issue has been, is, or will be sold.

**REQUEST FOR PRODUCTION NO. 33:**

Documents sufficient to show the date when each of the Products at Issue was first offered for sale in the United States.

**REQUEST FOR PRODUCTION NO. 34:**

Documents sufficient to identify U.S. revenues generated by each of the Products at Issue on a product-by-product basis.

**REQUEST FOR PRODUCTION NO. 35:**

All documents relating to any communications between Samsung and any third parties relating to Apple or to any lawsuit currently pending in which You and Apple are adverse.

**REQUEST FOR PRODUCTION NO. 36:**

All documents relating to any of the elements of the Original iPhone Trade Dress, iPhone 3G Trade Dress, iPhone 3GS Trade Dress, iPhone 4 Trade Dress, iPhone Trade Dress, iPad Trade Dress, and iPad 2 Trade Dress, any of the elements identified in the descriptions in the Trade Dress Registrations and the Trade Dress Applications, or any of the Registered Icon Trademarks, the Purple iTunes Store Trademark, or the iTunes Eighth Note and CD Design Trademark.

**REQUEST FOR PRODUCTION NO. 37:**

All documents relating to Samsung's knowledge of any third party's use of any of the elements of the Original iPhone Trade Dress, iPhone 3G Trade Dress, iPhone 3GS Trade Dress, iPhone 4 Trade Dress, and iPhone Trade Dress, any of the elements identified in the descriptions in the Trade Dress Registrations and U.S. Application Serial No. 85/299,118, or any of the Registered Icon Trademarks, the Purple iTunes Store Trademark, or the iTunes Eighth Note and CD Design Trademark in the field of smartphones or digital media players.

**REQUEST FOR PRODUCTION NO. 38:**

All documents relating to Samsung's knowledge of any third party's use of any of the elements of the iPad Trade Dress and iPad 2 Trade Dress, any of the elements identified in the descriptions of U.S. Application Serial Nos. 77/921,838, 77/921,820, and 77/921,869, or any of the Registered Icon Trademarks, the Purple iTunes Store Trademark, or the iTunes Eighth Note and CD Design Trademark in the field of tablet computers.

**REQUEST FOR PRODUCTION NO. 39:**

All documents relating to actual or possible confusion, mistake or deception, or the likelihood of confusion, as to source, affiliation, or sponsorship between Apple and Samsung or between any of the Apple Products and any of the Captivate, Continuum, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Showcase i500, Showcase Galaxy S, Transform, Vibrant, and Galaxy S II phones and the Galaxy tablets.

**REQUEST FOR PRODUCTION NO. 40:**

Documents sufficient to show, by month, the amount spent by Samsung in the United States on advertising, marketing, and promotion of each of the Products at Issue on a product-by-product basis.

**REQUEST FOR PRODUCTION NO. 41:**

Documents sufficient to show, by month, the volume of sales in the United States, in units, of each of the Products at Issue on a product-by-product basis.

**REQUEST FOR PRODUCTION NO. 42:**

Documents sufficient to show the current and past retail prices for each of the Products at Issue.

**REQUEST FOR PRODUCTION NO. 43:**

All documents relating to Your affirmative defenses.

**REQUEST FOR PRODUCTION NO. 44:**

Documents sufficient to disclose Samsung's accounting practices and methods, including Samsung's theories of depreciation, assignment of debt, and allocation of expenses, profit, and losses.

**REQUEST FOR PRODUCTION NO. 45:**

Documents sufficient to identify Samsung's executive and management structure for each of the past three years, including documents that identify each individual holding such positions as director, CEO, CFO, CTO, CAO, president, vice president, general counsel, and management-level engineers, department heads, and sales and marketing representatives.

**REQUEST FOR PRODUCTION NO. 46:**

Documents sufficient to identify the structure and hierarchy of all entities, divisions, departments, teams, and groups that research, develop, test, manufacture, produce, market, sell, or are otherwise responsible for any of the Product at Issue, including documents that identify Samsung's management personnel and third-party suppliers, manufacturers, and distributors.

**REQUEST FOR PRODUCTION NO. 47:**

Documents sufficient to identify the number (and percentage) of units of each of the Products at Issue that has been returned to retailers by purchasers, or by retailers to, Samsung, on a product-by-product basis.

**REQUEST FOR PRODUCTION NO. 48:**

All documents relating to purchasers' reasons for returning any of the Products at Issue to retailers.

**REQUEST FOR PRODUCTION NO. 49:**

All documents relating to any joint defense agreements between Samsung and any third parties relating to the subject matter or issues of this proceeding.

**REQUEST FOR PRODUCTION NO. 50:**

A copy of each document retention policy used by Samsung during the last three years and documents sufficient to identify the dates during which each policy was in effect.

**REQUEST FOR PRODUCTION NO. 51:**

All documents upon which Samsung relied, or to which Samsung referred, in preparing its responses to Apple's Second Set of Interrogatories.

**REQUEST FOR PRODUCTION NO. 52:**

All documents relating to agreements, contracts, or other guarantees, between You and any carrier, wholesaler, retailer, or other consumer of Your mobile phones or tablet computers, that would prohibit or impact Your ability to seek, enforce, or maintain an injunction against another manufacturer of mobile phones or tablet computers, including, but not limited to, any "non-disruption" clause, provision, or language in Your "Master Purchase Agreement" or other supply agreement with AT&T.

Dated:   August 3, 2011                                MORRISON & FOERSTER LLP

By:   /s/ Jason R. Bartlett
      JASON R. BARTLETT

      Attorneys for Plaintiff
      APPLE INC.

# CERTIFICATE OF SERVICE

I, Robin L. Sexton, hereby certify that on August 3, 2011, true and correct copies of the foregoing document was served on the following counsel of record at the addresses and in the manner indicated:

**VIA ELECTRONIC MAIL:**

**Charles K. Verhoeven**
charlesverhoeven@quinnemanuel.com
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**Kevin P.B. Johnson**
kevinjohnson@quinnemanuel.com
**Victoria F. Maroulis**
victoriamaroulis@quinnemanuel.com
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

**Edward J. DeFranco**
eddefranco@quinnemanuel.com
Quinn Emanuel Urquhart Oliver & Hedges, LLP
335 Madison Avenue, 22nd Floor
New York, NY 10017
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

**Michael Thomas Zeller**
michaelzeller@quinnemanuel.com
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

**VIA MESSENGER:**

**Charles K. Verhoeven**
charlesverhoeven@quinnemanuel.com
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**VIA U.S. MAIL:**

**Victoria F. Maroulis**
victoriamaroulis@quinnemanuel.com
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

I declare under the penalty of perjury that the foregoing is true and correct.

_____
Robin L. Sexton

CERTIFICATE OF SERVICE
CASE NO. 11-CV-01846-LHK
sf-3021470

2