QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>      vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S NOTICE OF MOTIONS AND MOTIONS IN LIMINE**<br><br>**Date: July 18, 2012**<br>**Time: 2:00 pm**<br>**Place: Courtroom 8, 4th Floor**<br>**Judge: Hon. Lucy H. Koh** |

**FILED UNDER SEAL**

**SAMSUNG'S MOTIONS IN LIMINE**

<u>**NOTICE OF MOTIONS AND MOTIONS**</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, July 18, 2012, at 2:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") will, and hereby does move the Court for an order to:

1.   Exclude Evidence And Arguments Not Tied To The Specific Intellectual Property Rights Claimed By Apple Inc. ("Apple") In This Action;

2.   Exclude Out-Of-Court Third Party Statements About Purported Similarities Or Purported Confusion;

3.   Exclude Accused Devices, Contentions, Theories, And Witnesses Not Timely Disclosed By Apple In Infringement Contentions Or Interrogatory Responses;

4.   Exclude References To Findings Or Rulings In Other Proceedings Not Involving The Patents At Issue In This Action;

5.   Exclude Disputes And Rulings In This Action, Including Discovery Disputes And The Preliminary Injunction Ruling;

6.   Exclude Generalizations Regarding The Operation Of Accused Samsung Products;

7.   Exclude Resized Or Altered Photos Of Samsung's Products In Side-By-Side Product Comparisons;

8.   Exclude Opinions Of Terry Musika On Pre-Filing Damages, Unless And Until Apple Makes A *Prima Facie* Showing Of Entitlement To Such Damages;

9.   Exclude Samsung's Overall Revenues, Profits, Wealth And Value, And ███████ ████████████████████████████████████████████████ and

10.   Exclude Evidence And Argument That Apple Is Presently Licensed To The Declared Essential Patents-In-Suit.   This motion is unopposed.

1    These motions are based on this Notice of Motions, the supporting Memorandum of Points

2   and Authorities, the Declaration of John D'Amato in Support of Samsung's Motions *In Limine*

3   dated July 5, 2012, together with all accompanying exhibits, all pleadings on file in this action,

4   and such other evidence or argument as may be presented at or before the time these Motions are

5   deemed submitted by the Court, and such matters of which this Court may take judicial notice.

6   **SAMSUNG'S CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL
    PROCEDURE 16(a) AND THE COURT'S JANUARY 3, 2011 STANDING ORDER**

7

8    In accordance with Federal Rule of Civil Procedure 16(a) and the Court's January 3, 2011

9   Standing Order, Samsung hereby certifies that it has in good faith conferred with Apple in an

10  effort to resolve the parties' dispute over the admissibility of evidence that is subject to these

11  motions without the Court's intervention.   Samsung's efforts to resolve these disputes are

12  described in the Declaration of John D'Amato and exhibits attached thereto.

13   **RELIEF REQUESTED**

14    Pursuant to the Federal Rules of Evidence, Samsung seeks an Order excluding: (1)

15  excluding evidence and arguments not tied to the specific intellectual property rights claimed by

16  Apple in this Action; (2) out-of-court third party statements about purported similarities or

17  purported confusion; (3) accused devices, contentions, theories, and witnesses not timely disclosed

18  by Apple in infringement contentions or interrogatory responses; (4) references to findings or

19  rulings in other proceedings not involving the patents at issue in this Action; (5) disputes and

20  rulings in this Action, including discovery disputes and the preliminary injunction ruling; (6)

21  generalizations regarding the operation of accused Samsung products; (7) resized or altered photos

22  of Samsung's products in side-by-side product comparisons; (8) opinions of Terry Musika on pre-

23  filing damages, unless and until Apple makes a *prima facie* showing of entitlement to such

24  damages; (9) Samsung's overall revenues, profits, wealth and value, and evidence or argument that

25  Samsung has paid lower taxes than it should have; and (10) evidence and argument that Apple is

26  presently licensed to the declared essential patents-in-suit.

27

28

1
2

DATED: July 5, 2012                 Respectfully submitted,

3

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

4
5
6

By /s/    Victoria F. Maroulis
   Charles K. Verhoeven
   Kevin P.B. Johnson
   Victoria F. Maroulis
   Michael T. Zeller
   Attorneys for SAMSUNG ELECTRONICS CO.,
   LTD., SAMSUNG ELECTRONICS AMERICA,
   INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

    A.    Motion # 1:   Exclude Evidence Or Argument Not Tied To The Specific IP Rights Claimed By Apple in This Action ................................................................. 1

    B.    Motion #2:   Exclude Out-of-Court Third-Party Statements About Purported Similarities or Purported Confusion ............................................................................. 7

    C.    Motion #3:   Exclude Accused Devices, Contentions, Theories, and Witnesses Not Timely Disclosed In Infringement Contentions Or Interrogatory Responses ............................................................................................ 10

    D.    Motion #4:   Exclude Reference to Findings or Rulings In Other Proceedings Not Involving The Patents At Issue In This Case.............................. 15

    E.    Motion #5:   Exclude Disputes and Rulings in this Action, Including Discovery Disputes and the Preliminary Injunction Ruling.................................... 16

    F.    Motion #6:   Exclude Generalizations Regarding the Operation of Accused Samsung Products ................................................................................................... 17

    G.    Motion # 7:   Exclude Resized or Altered Photos of Samsung's Products in Side-by-Side Product Comparisons .......................................................................... 18

    H.    Motion # 8:   Exclude Any Evidence of Pre-Filing Notice Other Than Identified In Apple's Interrogatory Response and Provisionally Exclude Mr. Musika's Opinions on Pre-Filing Damages Unless and Until Apple Makes a *Prima Facie* Showing of Entitlement to Such Damages......................................... 19

    I.    Motion #9:   Exclude Evidence of Samsung's Overall Revenues, Profits, Wealth and Value and ████████████████ ................................................................................. 21

    J.    Unopposed Motion# 10:   Exclude Evidence and Argument that Apple is Presently Licensed to the Declared Essential Patents-in-Suit ................................ 25

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Alkhatib v. Steadman*,
201 WL 5553775 (S.D. Ala. 2011) ..................................................................................8

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
6 F.3d 1523 (Fed. Cir. 1993) .........................................................................................20

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) .......................................................................................5

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
24 F.3d 178 (Fed. Cir. 1994) ....................................................................................20, 21

*Apple, Inc. v. Motorola, Inc.*,
Case No. 1:11-cv-08540, Order of May 31, 2012 ......................................................5, 16

*Asyst Techs, Inc. v. Emtrak, Inc.*,
544 F.3d 1310 (Fed. Cir. 2008) .......................................................................................2

*The Coryn Group II, LLC v. O.C. Seacrets, Inc.*,
2011 WL 862729 (D. Md. March 10, 2011) ....................................................................24

*CVI/Beta Ventures, Inc. v. Tura L.P.*,
112 F.3d 1146 (Fed. Cir. 1997) .....................................................................................17

*In re GPac*,
57 F.3d 1573 (Fed. Cir. 1995) .........................................................................................3

*General Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983) ........................................................................................................24

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*,
302 F.3d 1352 (Fed. Cir. 2002) .....................................................................................17

*Jones v. C.H. Robinson Worldwide, Inc.*,
558 F. Supp. 2d 630 (W.D. Va. 2008) ...........................................................................22

*La Plante v. Am. Honda Motor Co., Inc.*,
27 F.3d 731 (1st Cir. 1994) ............................................................................................22

*Mars, Inc. v Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008) ................................................................................24, 25

*Mennick v. Smith*,
459 F. App'x 649 (9th Cir. 2011) ...................................................................................26

*Microstrategy Inc. v. Business Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) .....................................................................................15

-ii-

**SAMSUNG'S MOTIONS IN LIMINE**

*Nike, Inc. v. Walmart Stores, Inc.,*
   138 F.3d 1437 (Fed. Cir. 1998) ................................................................................20

*Nora Beverages, Inc. v. Perrier Group of America, Inc.,*
   269 F.3d 114 (2d Cir. 2001) .....................................................................................9

*Oracle USA, Inc. v. SAP AG,*
   264 F.R.D. 541 (N.D. Cal. 2009) ............................................................................21

*Poly-America, L.P. v. GSE Lining Technology, Inc.,*
   383 F.3d 1303 (Fed. Cir. 2004) ..............................................................................24

*QVC, Inc. v. MJC America,*
   2012 WL 33026 (E.D. Pa. 2012) ..............................................................................8

*Richardson v. Stanley Works,*
   597 F.3d 1298 (Fed. Cir. 2010) ................................................................................4

*SPX Corp. v. Bartec USA, LLC,*
   2008 U.S. Dist. LEXIS 29235 (E.D. Mich. Apr. 10, 2008) .....................................16

*Shimozono v. May Department Stores Co.,*
   2002 WL 34373490 (C. D. Cal. 2002) ......................................................................7

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
   739 F.2d 1415 (9th Cir. 1984) ................................................................................17

*T. Harris Young & Assoc., Inc. v. Marquette Electronics, Inc.,*
   931 F.2d 816 (11th Cir. 1991) ..................................................................................8

*Tokai Corp. v. Easton Enters.,*
   632 F.3d 1358 (Fed. Cir. 2011) ................................................................................3

*Transclean Corp. v. Bridgewood Servs., Inc.,*
   77 F. Supp. 2d 1045 (D. Minn. 1999), aff'd, 290 F.3d 1364 (Fed. Cir. 2002) .........15

*United States of America v. Pazsint,*
   703 F.2d 420 (9th Cir. 1983) ..............................................................................7, 8

*United States v. Alexander,*
   106 F.3d 874 (9th Cir. 1997) ..................................................................................26

*Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.,*
   22 F.3d 1527 (10th Cir. 1994) ..................................................................................9

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.,*
   259 F.3d 1101 (9th Cir. 2001) ................................................................................21

### Statutes

15 U.S.C. § 1117(a) .........................................................................................................24

15 U.S.C. 1117(a)(3) ......................................................................................................24

35 U.S.C. § 112(6) ...................................................................................................................11

35 U.S.C. § 289 .......................................................................................................................24

35 U.S.C. § 287 .......................................................................................................................20

Fed. R. Civ. P. 26 ...............................................................................................................15, 16

Fed. R. Evid. 403...............................................................................................................16, 17

Fed. R. Evid. 801-803 ...............................................................................................................2

Fed. R. Evid. 803(6) .................................................................................................................7

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

Pursuant to the Court's May 2, 2012 Minute Order and Case Management Order, Samsung

3

moves *in limine* to exclude the categories of evidence and argument described below.

4

### A.    **Motion # 1:   Exclude Evidence Or Argument Not Tied To The Specific IP Rights Claimed By Apple in This Action**

5

6

As the Court is aware, Apple's claims are premised on specific alleged utility and design

7

patent and trade dress rights.   Apple's trade dress claims identify particular claimed features of its

8

iPhone and iPad devices that collectively comprise the claimed trade dress.   (Dkt. No. 75

9

(Apple's Am. Compl.) ¶¶ 57-68.)   For example, Apple alleges its "iPhone Trade Dress" to

10

include specific features such as: a rectangular product with four evenly rounded corners; a flat

11

clear surface covering the front of the product; the appearance of a metallic bezel around the flat

12

clear surface; a display screen under the clear surface; under the clear surface, substantial black

13

borders above and below the display screen and narrower black borders on either side of the

14

screen; and, when the device is on, both a matrix of colorful square icons with evenly rounded

15

corners within the display screen and a bottom dock of colorful square icons with evenly rounded

16

corners set off from the other icons on the display, which does not change as other pages of the

17

user interface are viewed.   (*Id*. ¶ 57.)   Notably, the claimed trade dress does not include such

18

prominent features as the home button on the front of the device, or the Apple logo on the back.

19

Nor, of course, does it include any of the features that determine how the device performs, as

20

opposed to how it looks, including the phone, web browsing, camera functions, or video face time

21

calls.   Apple's design patents are similarly limited in scope, claiming for example only the front

22

surface and/or the bezel of an electronic device, not the overall exterior.   They do not claim

23

curved sides or rear surface, or even Apple's "home screen" button, which it represented to the

24

PTO is a "distinctive" and "prominent" feature of every version of the iPhone since Apple

25

announced the original iPhone in 2007.   (Dkt. No. 1068-13.)

26

Notwithstanding the limited scope of the purported rights at issue, Apple intends to turn

27

this trial into a popularity contest in its home town, by inundating the jury with hearsay evidence

28

from various media sources, presented by its "expert" witnesses, touting the greatness of all things

1  Apple.   This strategy was previewed in Apple's complaint, where, in a section called "Apple's

2  Innovations," Apple describes how the iPhone supposedly "revolutionized the telecommunications

3  industry" and references media coverage of the device.   (Dkt. No. 75 ¶¶ 13-25.)   More recently,

4  in opposition to Samsung's summary judgment motion, Apple presented through its "expert" Peter

5  Bressler selected snippets from various publications touting the iPhone.   For example, Mr.

6  Bressler quoted an RBC Capital Markets analyst report commenting that "Apple's iPhone in June

7  2007 disruptively raised the standard for a new kind of Smartphone design and user experience,

8  breaking sales launch records, sparking competitive responses, and *defying accepted conventions*."

9  (Dkt. No. 1022-02 (Bressler Decl.) ¶ 81 (emphasis in original).) █████████████████████

10  ██████████████████████████████████████████████████████████████████████

11  ████████████████████████████

12  ███████████████████████████████████████████████████

13  ██████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████

17  ██████████████████████████████████████████████

18  ██████████████████████████████████████████████████████████████████

19       All of this evidence is hearsay.   It consists of out-of-court statements being offered by

20  Apple to prove the truth of the statements made therein.   Because there is no relevant exception to

21  the hearsay rule covering these articles, they are inadmissible.   *See generally* Fed. R. Evid. 801-

22  803.   They are also legally irrelevant.   Apple has argued that this evidence is relevant to establish

23  secondary considerations of non-obviousness.   But in order for secondary consideration evidence

24  to be relevant, it must be tied to the patented features of the device.   *Asyst Techs, Inc. v. Emtrak,*

25  *Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008) (citation omitted) (noting that no evidence showed that

26  the commercial success of the "overall system" was attributable to the patented invention).   The

27  evidence Apple seeks to introduce is directed generally to the success of Apple's iPhone and/or

28  iPad products, rather than the specific claimed features of the design patents-in-suit.   And even

1  the articles that do identify specific features – such as the "shiny" bezel – those particular features

2  are not part of the asserted design patents or claimed trade dress.   Moreover, while Apple cites to

3  articles, studies, and surveys purporting to show that the appearance of the iPhone is something

4  people find attractive or even important, Apple presents no evidence suggesting that purchasers

5  buy iPhones *because of* the patented features or its claimed trade dress as opposed to buying it for

6  other reasons – such as the ability to browse the internet, watch videos, play games, read and

7  compose emails, download applications or numerous other functions.

10  As such, there is no nexus between the evidence and the asserted claims of the

11  patents, and the evidence cannot therefore support a finding of commercial success.   *Tokai Corp.*

12  *v. Easton Enters.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011) ("[A] nexus must exist between the

13  commercial success and the claimed invention").   *See also In re GPac*, 57 F.3d 1573, 1580 (Fed.

14  Cir. 1995) (patentee's burden to establish a nexus between any secondary considerations, such as

15  commercial success, and the limitations recited in the asserted claims).   *Wm. Wrigley Jr. Co. v.*

16  *Cadbury Adams USA LLC*, -- F.3d ---, 2012 WL 2367947, at *5 (Fed. Cir. 2012) ("for commercial

17  success to be probative evidence of nonobviousness, a nexus must be shown between the claimed

18  invention and the evidence of commercial success").

19      In addition to seeking to introduce "puffery" concerning the success of the iPhones or

20  iPads that is unrelated to the particular design patents or trade dress at issue,

22  But the articles Apple claims show "copying"

23  are both hearsay and untethered to the particular features claimed in the design patents and trade

**SAMSUNG'S MOTIONS IN LIMINE**

1   dress at issue.   The internal Samsung documents that Apple relies on also fail to provide the

2   required nexus between the claimed rights and the alleged copying.   For example, ███████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████  *Wm. Wrigley Jr. Co.*, -- F.3d at --, 2012 WL 2367947, at *6 ("[i]n some cases, evidence

9   that a competitor has copied a product *embodying a patented invention* can be an indication of

10   nonobviousness. . . . [However,] just as with the commercial success analysis, a nexus between the

11   copying and the novel aspects of the claimed invention must exist for evidence of copying to be

12   given significant weight in an obviousness analysis.") (emphasis added) (citations omitted).

13        Similarly, Apple points to documents such as an internet article entitled: "Samsung Vibrant

14   Rips Off iPhone 3G Design" (D'Amato Decl. Ex. A) and an internet article in PC World saying

15   "[t]he design is actually very iPhone 3GS-like with an all black, shiny plastic body and minimal

16   buttons on the phone's face" (*Id.* Ex. B) and ████████████████████████████

17   ████████████████████████████████████████████████████████████

18   █████████████████████████████████ (*Id.* Ex. C.)   The third party

19   statements are inadmissible as hearsay, and all of these materials are inadmissible because there is

20   no demonstrated connection to the specific IP rights in this case.   Nor do they filter out any

21   similarities resulting from functionality considerations, as is required for a proper assessment of

22   similarity for design patent purposes.   *Richardson v. Stanley Works*, 597 F.3d 1298, 1293 (Fed.

23   Cir. 2010) ("[w]here a design contains both functional and non-functional elements, the scope of

24   the claim must be construed in order to identify the non-functional aspects of the design as shown

25   in the patent.") (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir.

26   1997)).

27        Without reference to an alleged invention of any of the patents-in-suit, such evidence

28   cannot constitute either acceptance of the desirability of the invention by Samsung or evidence of

1   Samsung's copying of that invention.   As a result, these documents have no relevance to the

2   issues to be presented at trial.   *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d

3   1343, 1366 (Fed. Cir. 2001) ("[E]vidence of copying [the patentee's product] is legally irrelevant

4   unless the [product] is shown to be an embodiment of the claims").

5           For similar reasons, the Court should preclude Apple from presenting evidence regarding

6   former Apple CEO Steve Jobs, unless that evidence is specifically related to one of the claimed

7   patents at issue.   Mr. Jobs is a popular figure to some and has become even more so since his

8   recent death.   Yet while he was a named inventor on some of the patents-in-suit, he was not

9   deposed before his death, and his relevance to the particular issues raised by Apple's claims is

10  minimal, at best.   Apple should not be permitted to curry favor with the jury unrelated to the

11  substance of its claims by presenting evidence relating to its former CEO.

12          Apple's attempt to turn an IP trial into a popularity contest was recently rejected in another

13  case.   Sitting by designation, Seventh Circuit Judge Richard Posner excluded this very sort of

14  evidence, including purported secondary considerations evidence of commercial success and

15  copying:

16          Apple will not be permitted to present media articles or equivalent publicity praising
            features of the iPhone or iPad (or the Apple company, Steve Jobs, or Apple products in
17          general) unless they mention (or can be shown to be referring to) claim elements that
            Apple alleges Motorola infringes or that Motorola argues were anticipated or obvious and
18          that that are actually in dispute.   If the articles or other publicity do not praise an element
            in suit, they are irrelevant to any legal issue in the case, and can only confuse the jury. . . .

19
            More broadly, I forbid Apple to insinuate to the jury that this case is a popularity contest
20          and that jurors should be predisposed to render a verdict for Apple if they like Apple
            products or the Apple company or admire Steve Jobs, or if they dislike Motorola or
21          Google. The overall quality of the products involved in the litigation is irrelevant to the
            legal issues.   (D'Amato Decl. Ex. D (*Apple, Inc. v. Motorola, Inc.*, Case No.
22          1:11-cv-08540, Order of May 25, 2012 (N.D. Ill.)) at 3.)[2]

23          _____

24          [2]    Judge Posner reaffirmed his rationale in a more recent decision denying Apple injunctive
25   relief:
            "[T]he quality of the iPhone (and of related Apple products, primarily the iPad) and
26   consumers' regard for it have, so far as the record shows, nothing to do with the handful of patent
     claims that I had ruled presented triable issues of infringement.   Apple's 'feel good' theory does
27   not indicate that infringement of *these* claims (if they were infringed) reduced Apple's sales or
     market share, or impaired consumer goodwill toward Apple products.   Typical is the statement in
28          (footnote continued)

1    The potential prejudice to Samsung from Apple's proffered "feel good" evidence is even

2    greater here, where the case is being tried before a jury in Apple's home town.   Accordingly, the

3    Court should bar Apple from presenting any evidence of supposed third-party praise, copying, or

4    regarding Steve Jobs, that does not expressly relate to the claimed features of the design or utility

5    patents or trade dress at issue.   To the extent Apple believes any of the evidence it seeks to

6    introduce satisfies this requirement, the Court should require it to submit the evidence in advance,

7    so Samsung and the Court can address it before it is shown to the jury.

8    Conversely, Apple should not be allowed to make allegations of wrongdoing by Samsung

9    that are not tied to the claims asserted by Apple in this case. ████████████████

10   ████████████████████████████████████████████

11   ████████████████████████████████████████████

12   ████████████████████████████████████████████

13   ████████████████████████████████████████████

14   ████████████████████████████████████

15   ████████████████████████████████████

16   ████████████████████████████████████████

17   ████████████████████████████████ The Court

18   should bar Apple from asking witnesses questions regarding any such allegations, or including any

19   such references in its argument to the jury.

20

21   _____

22   Apple's brief of June 18 that 'an Apple survey identified watching streaming videos from
     YouTube among the top ten planned activities for consumers using iPads in the United States.'

23   The '263 patent in issue in this litigation is not a claim to a monopoly of streaming video!   Apple
     is complaining that Motorola's phones *as a whole* ripped off the iPhone *as a whole*.   But

24   Motorola's desire to sell products that compete with the iPhone is a separate harm – and a
     perfectly legal one – from any harm caused by patent infringement."   (D'Amato Decl. Ex. F

25

26   (*Apple, Inc. v. Motorola, Inc.*, Case No. 1:11-cv-08540, Order of June 22, 2012) at 30-31.)

27

28

**SAMSUNG'S MOTIONS IN LIMINE**

**B.    Motion #2:   Exclude Out-of-Court Third-Party Statements About Purported Similarities or Purported Confusion**

Apple has questioned witnesses at deposition regarding documents it claims show actual confusion between Samsung's accused products and Apple's claimed designs or trade dress. Each of the documents contains multiple levels of hearsay, and none of them are relevant to show actual confusion, as they do not address Apple's specific claimed designs or trade dress.   Because they do not address the claims at issue in this case, the prejudicial effect of these documents far outweighs their probative value.

Courts have recognized that this sort of internal survey-based evidence is inadmissible hearsay and does not qualify for admission under the business records exception, Fed. R. Evid. 803(6).   That rule only applies "where the person furnishing the information is 'acting routinely, under a duty of accuracy, with the employer reliance on the result, or in short 'in the regular course of business.'"   *Shimozono v. May Department Stores Co.*, 2002 WL 34373490, at *14 (C. D. Cal. 2002) (quoting *United States of America v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983)). "If the records contain information obtained from a customer, thus constituting hearsay within hearsay, the records will come within the business records exception only 'if it is shown that the

**SAMSUNG'S MOTIONS IN LIMINE**

business's standard practice was to verify the information provided.'" *Id.* "The problem is that the customer is under no duty to report accurately." *Id.* (excluding customer survey response cards). *See also QVC, Inc. v. MJC America*, 2012 WL 33026, at *2 (E.D. Pa. 2012) (business records exception cannot be used to admit customer complaints or customer complaint logs for their truth); *Alkhatib v. Steadman*, 201 WL 5553775, at * 8 (S.D. Ala. 2011) (business records exception inapplicable to anonymous university faculty survey results).   In *T. Harris Young & Assoc., Inc. v. Marquette Electronics, Inc.*, 931 F.2d 816 (11th Cir. 1991), the court considered the admissibility of a telephone survey, where interviewers allegedly wrote down what hospital employees reported that they had been told by employees of the defendant.   In rejecting application of the business records exception, the Eleventh Circuit noted that "[f]or this exception to be available, all persons involved in the process must be acting in the regular course of business – otherwise, an essential link in the trustworthiness chain is missing." *Id.* at 828.

Here, Apple seeks to introduce the task force report for the truth of the matter asserted – ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████ the Court should exclude this evidence as inadmissible hearsay.

Hearsay aside, the evidence should be excluded under Fed. R. Evid. 401 and 403.   There is no evidence that any confusion reported in the document was predicated on the particular features Apple is claiming as part of its patented designs or trade dress, as opposed to unclaimed features.   Absent such a showing, a general report of confusion is not relevant and would be highly misleading and prejudicial to Samsung.   Nor is there any evidence tending to show that the

**SAMSUNG'S MOTIONS IN LIMINE**

customers in question are typical consumers of Samsung's tablets or that, even if accurate, the experience of a few customers can be extrapolated into reliable evidence of confusion.   *See, e.g., Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, (2d Cir. 2001) ("we do not believe that the district court erred in finding that two anecdotes of confusion over the entire course of competition constituted de minimis evidence insufficient to raise triable issues."); *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.,* 22 F.3d 1527, 1535 (10th Cir. 1994) ("De minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion[.]").

This document should also be excluded.   First, Apple is no longer claiming that version of the Tab infringes the iPad trade dress.   (Dkt. No. 1178 (Joint Case Narrowing Statement) ¶ A.) Accordingly, it is no longer relevant and should be excluded under Rule 401 and 403.   Second, it contains multiple layers of hearsay and does not fall within the business records exception or any other hearsay exception.



C.   **Motion #3:   Exclude Accused Devices, Contentions, Theories, and Witnesses Not Timely Disclosed In Infringement Contentions Or Interrogatory Responses**

On multiple occasions during the course of this litigation, the rules of this Court and the Federal Rules of Civil Procedure have required Apple to provide adequate and timely notice to Samsung regarding what products Apple alleges infringe its trade dress, trademark and design and utility patents.   On August 26, 2011, Apple served its Infringement Contentions per Local Patent Rule 3-1, which required that Apple identify for the asserted utility patents "[s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. . . as specific as possible" and a chart "identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function."   L.P.R. 3-1(b)-(c).   In its Infringement Contentions, Apple identified 26 specific accused devices.   (Dkt. No. 801-5.)

---

[3]   Apple's use of such evidence has not been limited to these two documents. ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████   Any such types of evidence should be excluded.

**SAMSUNG'S MOTIONS IN LIMINE**

1    Apple also served an Addendum to its Disclosure of Asserted Claims and Infringement

2    Contentions, identifying one additional specific device – the Galaxy S II.   (Dkt. No. 801-6.)

3    Apple did not identify the Epic 4G Touch, Skyrocket, Galaxy Tab 10.1 LTE, Gravity Smart, or

4    Galaxy S Showcase (i500) in its infringement contentions, nor did it provide any detailed charts

5    required under L.P.R. 3-1(b)-(c) for the Galaxy S II product.

6           Samsung's Interrogatory No. 5 also required Apple to identify, by September 12, 2011,

7    "every product manufactured, used, sold, offered for sale, or imported into the United States since

8    2005 that [Apple] believe[d] uses or may use any protected design, trademark, trade dress, or

9    invention of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS, and APPLE

10   TRADEMARKS and the date(s) on which you believe that use occurred."   Apple served its

11   response on September 12, 2011.   (D'Amato Decl. Ex. P (Apple's Objections and Responses to

12   Samsung Electronics Co. Ltd.'s First Set of Interrogatories).)                      ███████████

13   ████████████████████████████████████████████████████████████████████████

14   ████

15          Since then—for nearly *6 months*—Apple did not amend either its Infringement

16   Contentions or its response to Interrogatory No. 5.   Not until March 2012, on the very last day of

17   discovery, and after the scheduled discovery cut-off,, did Apple serve an amended response to

18   Interrogatory No. 5 that purported to expand the scope of Apple's infringement allegations and

19   accuse *new products* of infringing Apple's utility patents, design patents, trademarks and trade

20   dress.    (D'Amato Decl. Ex. Q (Apple's Second Amended Objections and Response to Samsung

21   Electronics Co. Ltd.'s Interrogatory No. 5).)

22          The Court should reject Apple's last minute effort to expand the scope of the accused

23   Samsung products.   Indeed, in February 2012, Apple vigorously opposed Samsung's request to

24   amend its infringement contentions to add Apple's iPhone 4S, arguing that adding a new device

25   with only a month remaining in discovery would leave the parties "little time to conduct

26   discovery" and risk "delaying the existing expedited trial schedule."   (Dkt. No. 713 at 1.)   But

27   Apple went even further, arguing that the parties' dispute over the scope of any discovery relating

28   to the additional products both parties wanted to add "confirm[ed] that no additional products –

**SAMSUNG'S MOTIONS IN LIMINE**

1   *whether Apple's or Samsung's* – should be added to this case at this time." (*Id.* at 7 (emphasis

2   added).)   Based on Apple's representations, the Court denied Samsung's request to add the

3   iPhone 4S.   (Dkt. No. 836 at 12.)

4          Having succeeded in defeating Samsung's request to add one product to this case by

5   amending its complaint, and having argued that neither party should be permitted to add new

6   products after February 3, 2012, when it filed its opposition to Samsung's motion to amend its

7   infringement contentions, Apple should be barred from asserting at trial any utility patent claims

8   with respect to Samsung products that were not identified in its Infringement Contentions served

9   on August 26, 2011.   Apple clearly knew that at least the Skyrocket, Epic 4G Touch, Gravity

10  Smart, and Galaxy 10.1 LTE were *not* covered by its infringement contentions: Apple asked

11  Samsung to stipulate that these new products should be added to the case in March 2012 (Dkt. No.

12  801-8), and after Apple failed to get a stipulation, Apple unilaterally added the new products to its

13  interrogatory response.   Such amendment would not have been necessary if Apple had complied

14  with its obligations under the local patent rules to identify the products in its Infringement

15  Contentions.

16         Apple also should be barred from asserting at trial any design patent or trade dress claims

17  with respect to any products not identified in Apple's original response to Samsung's contention

18  Interrogatory No. 5, served on September 12, 2011.   Apple waited until March 2012 to identify

19  the following products as accused products for Apple's design patent, trade dress, and trademark

20  claims: Galaxy S2 i9100, Galaxy S2 Epic 4G Touch, Galaxy S2 (T-Mobile), Galaxy S2 (AT&T),

21  and Galaxy S2 Skyrocket.   Apple also waited until March 2012 to accuse the Captivate, Galaxy

22  Ace, Droid Charge, Continuum, Epic 4G, and Galaxy Tab 7.0 Plus of trade dress claims.   Apple

23  further delayed until March 2012 to identify the Acclaim, Indulge, Intercept, Galaxy S i9000, and

24  Galaxy Tab 7.0 Plus as accused products for its trademark claims.

25         Apple thus should be barred from asserting at trial infringement or trade dress claims

26  against the following products identified for the first time in Apple's recently served supplemental

27  interrogatory response: Galaxy S2 Epic 4G Touch; Galaxy S2 i9100; and Galaxy S2 Skyrocket

28  ('002, '891, '163 '915, and '828 patents); Galaxy S2 Epic 4G Touch ('381 patent); Galaxy S2

1   Epic 4G Touch; Galaxy S2 i9100; and Galaxy S2 Skyrocket; Galaxy S2 (T-Mobile); Galaxy S2

2   (AT&T) (D'087, D'677 and D'270 patents); Galaxy S2 i9100, Galaxy S2 Epic 4G Touch, Galaxy

3   S2 (AT&T), Galaxy S2 (T-Mobile), Galaxy S2 Skyrocket (all iPhone Trade Dress claims); and

4   Galaxy Tab 7.0 Plus (all iPad Trade Dress claims).   Apple should also be precluded from

5   broadening its claims against existing accused products based on the late notice provided in its

6   March 2012 interrogatory responses.

7          Apple should similarly be prevented from offering argument or testimony on theories and

8   contentions it withheld during discovery despite interrogatory requests from Samsung.   In

9   particular, Apple should be limited in its infringement arguments for its design patents to the level

10  of detail it included in its interrogatory responses.   Samsung's Interrogatory No. 72 sought the

11  following: "Separately for each SAMSUNG product that YOU contend infringes any APPLE

12  DESIGN PATENT, state fully and in detail on a patent-by-patent basis all facts supporting YOUR

13  contention of infringement."   (D'Amato Decl. Ex. R (Samsung's Fourth Set of Interrogatories to

14  Apple) at 23.)   Apple's response was beyond perfunctory.   Here are the responses it provided by

15  patent:





Apple should be precluded from offering new and previously undisclosed evidence or argument purporting to show that any similarity between the Apple patent and the Samsung product is due to the remaining ornamental features.

Finally, Apple should also be precluded from introducing any evidence at trial solely directed to supporting an indirect theory of infringement of its design patents.   Apple failed to articulate any such theory in its Complaint, Amended Complaint, Interrogatory Responses, or Expert Reports.   In its Interrogatory No. 7, Samsung asked Apple to "Separately for each of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS and APPLE TRADEMARKS state all facts supporting any contention by APPLE that Samsung has willfully infringed, diluted, or falsely designated the origin of its products for each patent, trade dress, and trademark, including when and how APPLE asserts Samsung had actual notice of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS, and APPLE TRADEMARKS."    (See D'Amato Decl. Ex. O (Samsung's First

1    Set of Interrogatories to Apple, Inc.) at 13-14.)   In response, ███████████████████

2    ██████████████████████████████████████████████████████████████████

3    ██████████████████████████████████████████████████████████████████

4    ██████████████████████████████████████████████████████████████████

5    ██████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ████████████████████████   All of the identified conduct are acts of direct infringement.   (*See*

8    *id*. at 7-9.)   Similarly, in its Interrogatory No. 72, Samsung requested that Apple "state fully and

9    in detail on a patent-by-patent basis all facts supporting YOUR contention of infringement."   (*Id.*

10   Ex. R at 23.)   Nowhere in its response did Apple articulate any theory or acts of indirect

11   infringement of any design patent.   (*Id.* Ex. S at 94-96.) ███████████████████████

12   ██████████████████████████████████████████████████████████████

13   ████████████████████████████████████

14          Because Apple failed to plead indirect infringement, disclose an indirect infringement

15   theory in discovery, or include an indirect infringement theory in its expert reports, Apple should

16   be precluded at trial from arguing such a theory or presenting evidence solely directed to it.   *See,*

17   *e.g., Fed. R. Civ. P. 26(e)(1)*;   *Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1356-

18   57 (Fed. Cir. 2005);   *Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1061-62

19   (D. Minn. 1999), aff'd, 290 F.3d 1364 (Fed. Cir. 2002) (party violated Rule 26(e) by failing to

20   "completely disclose its position" on patent invalidity in response to contention interrogatories).

21   A party must exercise "due diligence" in supplementing its disclosures, *SPX Corp. v. Bartec USA,*

22   *LLC*, 2008 U.S. Dist. LEXIS 29235, at *22 (E.D. Mich. Apr. 10, 2008), and supplementation

23   should occur "during the discovery period."   Fed. R. Civ. P. 26 Advisory Committee's Note to

24   1993 Amendments.

25          **D.**      **Motion #4:   Exclude Reference to Findings or Rulings In Other Proceedings**
              **Not Involving The Patents At Issue In This Case**

26

27          Both Apple and Samsung are currently or have been involved in other proceedings, some

28   of which involved the same or related IP rights.   These include litigation in foreign jurisdictions,

1    as well as investigations before the ITC.   Apple should be precluded from referencing any

2    findings or rulings from those proceedings, as they would not be relevant to the issues in this case.

3    Furthermore, any introduction of, or reference to, findings or orders of those proceedings could

4    only serve to mislead and/or confuse the jury, warranting exclusion under Fed. R. Evid. 403.[4]

5    Judge Posner granted a similar motion that both *Apple* and Motorola filed in the Motorola

6
     proceeding.   (D'Amato Decl. Ex. U (*Apple, Inc. v. Motorola, Inc.*, Case No. 1:11-cv-08540,
7    Order of May 31, 2012) at 10.)

8        **E.     Motion #5:   Exclude Disputes and Rulings in this Action, Including Discovery
                  Disputes and the Preliminary Injunction Ruling**
9

10       Both sides in this action have presented a number of discovery disputes for resolution by

11   the Court.   Both sides have prevailed on some but not others.   In none of these disputes has the

12   Court imposed any remedy of which the jury should be made aware: there have been no deemed

13   findings of fact, and no adverse inference instructions**.**   Accordingly, the mere fact that discovery

14   disputes arose and the results of those disputes, whether they be motions to compel, motions for

15   sanctions, orders on motions to compel or orders on motions for sanctions, which happen in every

16   major litigation, is of no relevance to any issue to be decided by the jury and will likely distract

17   the jury from the dispositive issues of the case.   Apple should be precluded from making any

18   reference to any such disputes, motions or orders.

19       Similarly, the Court's rulings on Apple's preliminary injunction motion should not be

20   referenced to the jury.   A preliminary injunction proceeding is by nature interim.   A court need

21   only find a likelihood of success on the merits, not make a final adjudication.   *See, e.g., Sierra*

22   *On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984).   Moreover, a court

23   can change its mind on the merits of the case as later developments clarify the relevant facts and

24   law.   *See, Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir.

25   _____

26       [4]   This motion does not seek to exclude evidence or attorney argument from other
     proceedings to the extent it is relevant to the issues here, including from the related '796
27   Investigation Apple brought in the ITC.   Further, the motion does not seek to exclude evidence or
     attorney argument on issues for the Court's (not the jury's) determination.
28

2002).   Any reference to the Court's ruling on the preliminary injunction motion might have an undue impact on the jury.   It should be excluded under Fed. R. Evid. 403.

**F.        Motion #6:   Exclude Generalizations Regarding the Operation of Accused Samsung Products**

To prove that each of the accused Samsung products infringes Apple's design and utility patents, Apple must demonstrate that each accused model contains all of the limitations in the allegedly infringed patent claim.   *CVI/Beta Ventures, Inc. v. Tura L.P.*, 112 F.3d 1146, 1161 (Fed. Cir. 1997) ("In order for there to be infringement, each and every limitation set forth in a patent claim must be found in the accused product, either literally or under the doctrine of equivalents"). Apple has accused over two dozen Samsung models of infringement; accordingly, Apple must present evidence that each and every one of those models practice all of the limitations of the asserted claims.

Apple's experts, however, have not satisfied that burden in their reports. ▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮

Apple's other experts apply similar shortcuts to their infringement analyses. ▮▮▮

▮▮▮

**SAMSUNG'S MOTIONS IN LIMINE**

Apple's experts—by relying on their own interpretation of what products are "representative" of all of the accused products—have performed and presented only an incomplete analysis of the accused product models.   The parties have not reached an agreement regarding representative products, and indeed such an agreement would be virtually impossible since there are numerous variations in the operation of the accused features or applications on each of the accused models, each of which is capable of running one of the many different versions of Android.   Thus Apple certainly has no basis to say that all or even some of the accused products operate in the same way as the sample products Apple did analyze.   The Court therefore should bar Apple from making broad sweeping generalizations that all or any of the accused products operate in the same way for purposes of the infringement analysis.

**G.     Exclude Resized or Altered Photos of Samsung's Products in Side-by-Side Product Comparisons**

Apple has repeatedly presented the Court with manipulated images of the accused Samsung products that are intended to make the Samsung phones or tablets look like they are identical in height or width to the iPhone or iPad.   (*See, e.g.,* Dkt. No. 1 ¶ 61 (side-by-side comparison of Apple iPhone 3GS and Galaxy S i9000); Dkt. No. 75 ¶¶ 94-95 (same); Dkt. No. 86 (Apple's Motion for Preliminary Injunction) at 2 (side-by-side comparisons of iPhone 3GS versus Galaxy S 4G and iPhone 4 versus Infuse 4G), 3 (side-by-side comparison of iPad 2 and Galaxy Tab 10.1), 9-12 (comparison of Apple iPhone 4 with Galaxy S 4G and Infuse 4G); Dkt. No. 90 (Declaration of Cooper C. Woodring in Support of Apple's Motion for Preliminary Injunction) Ex. 9 (side-by-side comparisons of iPhone 3GS and Galaxy S 4G), Ex. 12 (side-by-side comparisons

of iPhone 4 and Infuse 4G), Ex. 15 (side-by-side comparisons of iPhone 1 and Galaxy S 4G), Ex.

18 (side-by-side comparisons of iPhone 1 and Infuse 4G).)

Most, if not all, of the accused Samsung products have different dimensions than Apple's

phone and tablet products, and users can perceive those differences by looking at the products

themselves.   In the mobile and tablet computer industries, where a tenth of an inch makes a

difference for user experience, Apple cannot alter images of the Samsung products to eliminate

these dimensional differences and then argue copying on that basis.

To ensure that the jury is not improperly swayed and that Samsung is not prejudiced by

such altered or resized pictures that give the inaccurate sense of similarity, the Court should bar

Apple from presenting any altered or resized or manipulated pictures of the accused Samsung

products, especially in side-by-side comparisons with Apple products.

**H.   Motion # 8:   Exclude Any Evidence of Pre-Filing Notice Other Than Identified In Apple's Interrogatory Response and Provisionally Exclude Mr. Musika's Opinions on Pre-Filing Damages Unless and Until Apple Makes a *Prima Facie* Showing of Entitlement to Such Damages**

Therefore,

Apple cannot recover damages before the date that it put Samsung on actual notice of its patents.

35 U.S.C. § 287; *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993);

*Nike, Inc. v. Walmart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) (marking applies to

design patents).   Notice requires not only identifying the patent allegedly infringed, but also the

affirmative communication of a specific charge of infringement by a specific accused product.

*See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("Actual

notice requires the affirmative communication of a specific charge of infringement by a specific

accused product or device.").

1 █████████████████████████████████████████████████████████████████

2 ████████████████████████████

3     In its Interrogatory No. 7, Samsung asked Apple to state "when and how APPLE asserts

4 Samsung had actual notice of the APPLE PATENTS-IN-SUIT . . ."   (D'Amato Decl. Ex. T

5 (Apple's Corrected Amended Objections and Responses to Samsung Electronics Co. Ltd.'s

6 Interrogatory Nos. 4, 6, 7, 16, 17, 18) at 6.)   █████████████████████████████████

7 ████████████████████████████████████████████████████████████████

8 █████████████████████████████████████████████████████████████████

9 █████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████    *See Amsted,* 24 F.3d at 187.   And, Apple

13 never sought to supplement its response.   Accordingly, Apple's response to Samsung's

14 Interrogatory No. 7 fails to allege legally sufficient actual pre-suit notice for anything other than

15 the '381 patent.

16     In ruling on Samsung's *Daubert* motions, the Court declined to exclude Mr. Musika's

17 opinions on pre-notice damages on the basis that "Samsung's objection turns on a factual dispute

18 as to when Samsung received actual notice."   (Dkt. No. 1157 at 13:17.)   But Apple should be

19 held to the information it chose to disclose during discovery.   And the information contained in

20 Apple's interrogatory response raises no factual dispute as to Samsung's notice of any asserted

21 patent – ██████████████████████████████████████████████████

22 █████████████████████████    does not meet the *Amsted* standards.   Accordingly, at very

23 least, Mr. Musika should be precluded from offering any opinions regarding pre-filing damages

24 for these specific patents.

25     Indeed, having successfully argued for this standard to apply to Samsung in the context of

26 its motion to strike, Apple has no credible argument to the contrary.   (*See* Dkt. No. 939, at 3

27 ("Rule 26(e)(1) of the Federal Rules of Civil Procedure requires parties to seasonably supplement

28 their interrogatory responses if the prior responses are incomplete or incorrect.   . . . Rule 37(c)(1)

1   'mandates that a party's failure to comply with . . . the supplemental disclosure obligations under

2   [Rule] 26(e) results in that party being precluded from use' of the withheld information.   *Oracle*

3   *USA, Inc. v. SAP AG*, 264 F.R.D. 541, 544 (N.D. Cal. 2009); *see also Yeti by Molly Ltd. v.*

4   *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (preclusion of evidence under Rule

5   37(c)(1) is 'automatic' and 'self-executing' unless an exception applies)".)

6          Even were the Court inclined to permit Apple to offer evidence at trial not previously

7   disclosed in discovery, Apple should not be allowed to have Mr. Musika testify to pre-notice

8   damages unless and until Apple first places admissible evidence before the jury that creates a

9   genuine dispute of fact concerning when Samsung received actual notice.   (*Id.*)   Almost half of

10  Mr. Musika's extraordinary damages figure pertains to the period before Samsung contends it

11  received notice of Apple's asserted intellectual property.   (Dkt. No. 991-19c (Supp'l Expert

12  Report of Terry Musika) Exs. 17.2-S, 17.3-S, 17.4-S, 18.2-S, 18.3-S, 18.4-S.)   It would be highly

13  prejudicial to allow Mr. Musika to put this large figure before the jury without Apple first making

14  at least a *Prima Facie* showing that Samsung is liable for pre-notice damages (which, frankly,

15  Apple's interrogatory response shows it cannot do).

16         Accordingly, Samsung requests that the Court either:   (a) hold Apple to its interrogatory

17  response and preclude Mr. Musika from testifying as to pre-filing damages with respect to the

18  '915, '163, D'087, D'889 and D'305 patents; or at very least (b) provisionally exclude Mr.

19  Musika's opinions on pre-notice damages unless and until Apple first makes a *prima facie*

20  showing that it is entitled to pre-notice damages; or alternatively, grant Samsung a hearing outside

21  the presence of the jury before Mr. Musika takes the stand in order for the Court to determine

22  whether there is indeed a material factual dispute sufficient to provide a basis for Mr. Musika's

23  pre-notice testimony.

24  **I.     Motion #9:   Exclude E** ███████████████

25  ███████████████████████████████████

26         Apple has suggested that it intends to present at trial evidence of Samsung's overall

27  revenues, profits, wealth and value – as opposed to revenues, profits, wealth or value attributable

28  to the intellectual property at issue in this case.   These figures are irrelevant to the parties' claims

1   and are likely to confuse and distract the jury from the issues in dispute.   The only purpose for

2   Apple putting such figures before the jury would be to suggest that Samsung has the means to pay

3   a very large damages award and the jury should thus give Apple one.   But such evidence and

4   argument would be irrelevant to any damages determination, highly prejudicial, and should be

5   excluded under Rule 403.   *See, e.g., La Plante v. Am. Honda Motor Co., Inc.*, 27 F.3d 731, 740

6   (1st Cir. 1994) ("Although the evidence of Honda's profits from ATV sales was of some probative

7   value, we believe the danger that this evidence would unfairly prejudice the jury was

8   overwhelming."); *Jones v. C.H. Robinson Worldwide, Inc.,* 558 F. Supp. 2d 630, 651 (W.D. Va.

9   2008).

**SAMSUNG'S MOTIONS IN LIMINE**



1

2

3

4

5

6

7

8

9

10

11

12  In any event, Apple's proposed argument is unsupported by any relevant law.   If Apple

13  prevails on its claims, and satisfies the relevant legal standards, it may be entitled to STA's and/or

14  SEA's actual profits from sales of the accused Samsung products.  *See* 15 U.S.C. § 1117(a) (the

15  plaintiff shall be entitled to recover, upon the finding of an infringement and "subject to the

16  principles of equity": [¶] (1) *defendant's profits*") (emphasis added); 35 U.S.C. § 289 (An accused

17  design patent infringer "shall be liable to the owner to the extent of *his total profit*").   Apple has

18  not – and cannot – cite any relevant law for the proposition that an infringer should be required to

19  disgorge *more* than its actual profits merely because its profits could have been higher, whether

20  because its profits were set by an agreement with the federal government or otherwise.

21  Indeed, to allow Apple to argue at trial that the jury should order the disgorgement of *more*

22  than STA's and/or SEA's actual profits would be an error of law.   15 U.S.C. 1117(a)(3) provides

23  that, "If the *court* shall find that the amount of the recovery based on profits is either inadequate or

24  excessive the *court* may in its discretion enter judgment for such sum as the *court* shall find to be

25  just, according to the circumstances of the case."   (Emphasis added.)   Section 1117(a)(3) thus

26  entrusts the Court – not the jury – with the discretion of increasing the plaintiff's recovery if the

27  disgorgement of defendant's actual profits is inadequate.   It does not permit the jury to increase

28  plaintiff's recovery by simply deeming the defendant to have made more profit than it actually did.

**SAMSUNG'S MOTIONS IN LIMINE**

1   *See The Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 2011 WL 862729, at \*9 n.29 (D. Md. March

2   10, 2011) (the "language of the Lanham Act is clear-a successful plaintiff in a trademark

3   infringement may recover the 'defendant's profits,' and to prove the defendant's profits, the

4   plaintiff must show the 'defendant's sales.')   15 U.S.C. § 1117(a).   ***The Act does not allow for***

5   ***recovery of profits not attributable to the defendant***."   (Emphasis in original).

6       The Federal Circuit has repeatedly held that a corporation must accept both the benefits

7   and the consequences of its structure, one significant consequence being preclusion from claiming

8   an affiliate's lost profits in utility patent infringement cases.   In *Poly-America, L.P. v. GSE Lining*

9   *Technology, Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (*citing General Motors Corp. v. Devex*

10  *Corp.*, 461 U.S. 648, 654 (1983)), the Federal Circuit held that the patentee was not entitled to

11  claim the alleged lost profits of its sister corporation, despite the fact that both the patentee and the

12  sister corporation were wholly owned by the same corporate parent.   Similarly, in *Mars, Inc. v*

13  *Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008), the Federal Circuit rejected the parent

14  patentee's assertion that its subsidiary's lost profits are, by virtue of the corporate relationship,

15  inherently its lost profits.

16      So too here.   STA and SEA are corporate entities distinct from SEC.   STA and SEA each

17  made certain profits from the sale of certain accused products in accordance with an agreement

18  blessed by the federal government.   SEC also made certain profits from selling those products to

19  STA and SEA, which then sold them in the United States.   █████████████████████

20  ████████████████████████████████████████████████

21  ███████████████████████████████████████

22  ████████████████████████████████████████████

23  ██████████████████████████████████████

24  ██████████████████████████████████████████████

25      ███████████████████████████████████████

26  ████████████████████████████████████

27  ██████████████████████████████████████████████

28

**SAMSUNG'S MOTIONS IN LIMINE**

1

2

3    **J.**    **Unopposed Motion# 10:   Exclude Evidence and Argument that Apple is**
4              **Presently Licensed to the Declared Essential Patents-in-Suit**

5        The Court previously rejected as a matter of law Apple's counterclaim defense that it has

6    an existing license to Samsung's asserted declared essential patents.  (Dkt. No. 920 at 19-21.)  In

7    doing so, the Court ruled explicitly:   "Apple's theory that it has an existing license of Samsung's

8    Declared-Essential Patents is implausible, and Apple may not proceed under this theory."  (*Id.* at

9    21.)  Recently, at the hearing on the parties' motions for summary judgment, Apple represented to

10   the Court that Apple was going to assert the dismissed claim, stating that, "We have a

11   license."  (Dkt. Nos. 1164-65 (6/21/12 Hr'g Tr. at 25:17-23.)  Because Apple's automatic

12   licensing defense has been dismissed, it is now the law of the case, and any and all evidence or

13   argument that Apple is presently licensed to the declared essential patents-in-suit should be

14   excluded.  *Mennick v. Smith*, 459 F. App'x 649, 651 (9th Cir. 2011) (holding that "a court is

15   generally precluded from reconsidering an issue that has already been decided by the same court,

16   or a higher court in the identical case." (quoting *United States v. Alexander*, 106 F.3d 874, 876

17   (9th Cir. 1997)).

18       On the afternoon of this filing, Apple indicated it would not oppose this motion.

19   (D'Amato Decl. Ex. X (7/5/2012 E-Mail from A. Tucker) at 1.)

20

21   DATED: July 5, 2012                    QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
22

23                                         By */s/ Victoria F. Maroulis*
                                               Victoria F. Maroulis
24                                             Attorneys for SAMSUNG ELECTRONICS
                                               CO., LTD., SAMSUNG ELECTRONICS
25                                             AMERICA, INC., and SAMSUNG
                                               TELECOMMUNICATIONS AMERICA, LLC
26

27

28