# D'AMATO DECLARATION EX. O

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG ELECTRONICS CO. LTD.'S FIRST SET OF INTERROGATORIES TO APPLE INC.** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant Samsung Electronics Co., Ltd., ("Samsung") hereby serves the following interrogatories on Plaintiff Apple Inc. ("Apple"). Apple shall answer each interrogatory below, in accordance with the definitions below, and serve them on Defendants' counsel, Quinn Emanuel Urquhart & Sullivan, LLP, 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 within 30 days, or such other time as the parties agree or the Court orders. These interrogatories are continuing in nature and Plaintiff must timely supplement the answers to them under Fed. R. Civ. P. 26(e) whenever an answer is in some material respect incomplete or incorrect.

## DEFINITIONS

The interrogatories, as well as the Instructions provided above, are subject to and incorporate the following definitions and instructions as used herein:

1. The terms "APPLE," "PLAINTIFF," "YOU," and "YOUR" shall refer to Apple, Inc., any predecessor or successor of Apple, Inc., and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member, or other representative of Apple, Inc., including counsel and patent agents, in any country.

2. The term "DEFENDANTS" or "SAMSUNG" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

3. "This Lawsuit" shall mean the action entitled *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 11-cv-01846-LHK.

4. The term "'604 PATENT" shall mean U.S. Patent No. 6,928,604 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

5. The term "'410 PATENT" shall mean U.S. Patent No. 7,050,410 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

6. The term "'792 PATENT" shall mean U.S. Patent No. 7,200,792 and all parents,

1  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof
2  and all foreign counterpart applications and patents which claim the same subject matter.
3          7.      The term "'867 PATENT" shall mean U.S. Patent No. 7,362,867 and all parents,
4  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof
5  and all foreign counterpart applications and patents which claim the same subject matter.
6          8.      The term "'001 PATENT" shall mean U.S. Patent No. 7,386,001 and all parents,
7  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof
8  and all foreign counterpart applications and patents which claim the same subject matter.
9          9.      The term "'516 PATENT" shall mean U.S. Patent No. 7,447,516 and all parents,
10 progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof
11 and all foreign counterpart applications and patents which claim the same subject matter.
12         10.     The term "'941 PATENT" shall mean U.S. Patent No. 7,675,941 and all parents,
13 progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof
14 and all foreign counterpart applications and patents which claim the same subject matter.
15         11.     The term "'055 PATENT" shall mean U.S. Patent No. 7,069,055 and all parents,
16 progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof
17 and all foreign counterpart applications and patents which claim the same subject matter.
18         12.     The term "'871 PATENT" shall mean U.S. Patent No. 7,079,871 and all parents,
19 progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof
20 and all foreign counterpart applications and patents which claim the same subject matter.
21         13.     The term "'893 PATENT" shall mean U.S. Patent No. 7,456,893 and all parents,
22 progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof
23 and all foreign counterpart applications and patents which claim the same subject matter.
24         14.     The term "'460 PATENT" shall mean U.S. Patent No. 7,577,460 and all parents,
25 progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof
26 and all foreign counterpart applications and patents which claim the same subject matter.
27         15.     The term "'711 PATENT" shall mean U.S. Patent No. 7,698,711 and all parents,
28 progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

and all foreign counterpart applications and patents which claim the same subject matter.

16. "SAMSUNG PATENTS-IN-SUIT" shall mean the '604 PATENT, the '410 PATENT, the '792 PATENT, the '867 PATENT, the '001 PATENT, the '516 PATENT, the '941 PATENT, the '055 PATENT, the '871 PATENT, the '893 PATENT, the '460 PATENT, and the '711 PATENT.

17. The term "'002 PATENT" shall mean U.S. Patent No. 6,493,002 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

18. The term "'381 PATENT" shall mean U.S. Patent No. 7,469,381 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

19. The term "'607 PATENT" shall mean U.S. Patent No. 7,663,607 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

20. The term "'828 PATENT" shall mean U.S. Patent No. 7,812,828 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

21. The term "'915 PATENT" shall mean U.S. Patent No. 7,844,915 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

22. The term "'891 PATENT" shall mean U.S. Patent No. 7,853,891 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

23. The term "'163 PATENT" shall mean U.S. Patent No. 7,864,163 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

24. The term "'129 PATENT" shall mean U.S. Patent No. 7,920,129 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

and all foreign counterpart applications and patents which claim the same subject matter.

25. "APPLE UTILITY PATENTS" shall mean the '002 PATENT, the '381 PATENT, the '607 PATENT, the '828 PATENT, the '915 PATENT, the '891 PATENT, the '163 PATENT, and the '129 PATENT.

26. The term "'D790 PATENT" shall mean U.S. Design Patent No. D627,790 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

27. The term "'D334 PATENT" shall mean U.S. Design Patent No. D617,334 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

28. The term "'D305 PATENT" shall mean U.S. Design Patent No. D604,305 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

29. The term "'D087 PATENT" shall mean U.S. Design Patent No. D593,087 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

30. The term "'D677 PATENT" shall mean U.S. Design Patent No. D618,677 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

31. The term "'D270 PATENT" shall mean U.S. Design Patent No. D622,270 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

32. The term "'D889 PATENT" shall mean U.S. Design Patent No. D504,889 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

33. "APPLE DESIGN PATENTS" shall mean the 'D790 PATENT, the 'D334 PATENT, the 'D305 PATENT, the 'D087 PATENT, the 'D677 PATENT, the 'D270 PATENT, and the 'D889 PATENT.

34. "APPLE PATENTS-IN-SUIT" shall mean the APPLE UTILITY PATENTS and the APPLE DESIGN PATENTS.

35. "PRIOR ART" shall mean any reference, publication, patent, physical specimen, use, invention by another, sale, offer for sale, or other activities that are relevant to the validity of the APPLE PATENTS-IN-SUIT, including anything that is relevant to the patentability of any patent claim under 35 U.S.C. §§ 102 and 103. Prior Art is not limited to references or other activities cited to the United States Patent and Trademark Office during prosecution of any patent.

36. The term "APPLE TRADE DRESS" shall mean U.S. Registration Nos. 3,470,983; 3,457,218; 3,475,327; US Application Serial Nos. 77/921,838; 77/921,829; 77/921,869; 85/299,118; and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and which claim the same subject matter, and the unregistered iPhone, iPhone 3G, iPhone 4, iPhone/iPhone 3G/iPhone 4, iPad, and iPad 2 trade dress claimed by Apple.

37. The term "APPLE TRADEMARKS" shall mean U.S. Trademark Registration Nos. 3,886,196; 3,889,642; 3,886,200; 3,889,685; 3,886,169; 3,886,197; 2,935,038; U.S. Application Serial No. 85/041,463, and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and which claim the same subject matter.

38. The term "APPLE ACCUSED PRODUCTS" shall mean electronic devices that allow for communications and data transfer over networks including establishing data connections, execution of user operations and audio play back of digital data that are

manufactured, distributed, and/or sold by You or Your parent, subsidiary, or affiliate companies or on Your behalf, or on behalf of Your parent, subsidiary, or affiliate companies anywhere in the world, at any time between April 15, 2005 through the pendency of This Lawsuit, including each and every Apple product that Samsung has identified as infringing in any of its complaints or infringement contentions served in this action.  The term shall include, without limitation, the following devices:  the Apple iPhone 3G, the Apple iPhone 3GS, the Apple iPhone 4, the iPod Touch, the iPad, the iPad 3G, the iPad 2, the iPad 2 3G.

39. The term "SAMSUNG ACCUSED PRODUCTS" shall mean the products Apple alleges infringe, dilute, unfairly compete with, or otherwise violate Apple's rights in any of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS, or APPLE TRADEMARKS, including, without limitation, the Acclaim, Captivate, Continuum, Droid Charge, Exhibit 4G, Epic 4G, Fascinate, Gem, Galaxy Ace, Galaxy Prevail, Galaxy S, Galaxy S i9000, Galaxy S 4G, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Showcase i500, Showcase Galaxy S, Sidekick, Transform, and Vibrant phones, and Galaxy Tab and Galaxy Tab 10.1 tablet computers.

40. "PATENTED PRODUCT" means any product developed, manufactured, marketed, offered for sale or sold Apple that practices at least one claim of the APPLE PATENTS-IN-SUIT, including all products Apple identifies or will identify pursuant to Patent Local Rule 3-1(f).

41. The term "IDENTIFY" means (1) when referring to a person, the person's full name, present or last known address, and the last known title and place of employment; (2) when referring to a business, legal, or governmental entity or association, the name and address of the entity or association; (3) when referring to a fact, the fact and the documentary or testimonial support for that fact; (4) when referring to a product, the model name/number, the manufacturer, the date it was first announced, the date it was first released, the date it was first sold and the entity that first sold the product (e.g., the carrier) and a general description of the product or thing; (5) when referring to a written communication, identity of the DOCUMENT(s) in which the communication was made; (6) when referring to an oral communication, the identity of persons participating in the communication; (7) when referring to nonpatent DOCUMENTS, the

production number or type of DOCUMENT, its general nature and subject matter, date of creation, and all author(s), addressee(s), and recipient(s); and (8) when referring to patent DOCUMENTS, the country, patent and/or application number, dates of filing, publication, and grant, and the names of patentees or applicants.

42. The term "person" or "persons" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies. The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

43. The terms "any," "all," "every," and "each" shall each mean and include the other as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

44. The terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of its scope.

45. The term "thing" refers to any physical specimen or tangible item in Your possession, custody or control, including research and development samples, prototypes, productions samples and the like.

46. The terms "referring to," "relating to," "concerning" or "regarding" shall mean containing, describing, discussing, embodying, commenting upon, identifying, incorporating, summarizing, constituting, comprising or are otherwise pertinent to the matter or any aspect thereof.

47. The use of the singular form of any word includes the plural and vice versa, as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of its scope.

48. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

49. The term "Software" shall include source code, hardware code, machine code, assembly code, or code written in any programming language, and code that can be compiled or

acted upon by a processor, any listings or printouts thereof, and any release notes describing the features or modifications of such code.

50.     The term "3GPP" shall mean the organization known as the 3rd Generation Partnership Project which specifies, develops, and promulgates technical specifications for wireless networks.

51.     The term "TFCI" shall mean Transport Format Combination Indicator as used in all technical specifications promulgated by 3GPP and is the combination of bits sent along with a frame that identifies the transport format of the communication.

52.     The term "UMTS" shall mean the Universal Mobile Telecommunications System as developed and promulgated by 3GPP.

53.     The term "WCDMA" shall mean Wideband Code Division Multiple Access a member of the UMTS family of standards.

54.     The term "GSM" shall means the standard known as Global System for Mobile Communications.

55.     The term "Intel" shall mean Intel Corporation and includes any entities constituting parents, predecessors, subsidiaries, affiliates, divisions, associated organizations, joint ventures, as well as present and former officers, directors, trustees, employees, staff members, agents, or other representatives, including counsel and patent agents, in any country.

56.     The term "Qualcomm" shall mean Qualcomm Incorporated and includes any entities constituting parents, predecessors, subsidiaries, affiliates, divisions, associated organizations, joint ventures, as well as present and former officers, directors, trustees, employees, staff members, agents, or other representatives, including counsel and patent agents, in any country.

**INSTRUCTIONS**

The following instructions shall apply to each of the Interrogatories herein:

1.     In answering the following Interrogatories, furnish all available information, including information in the possession, custody, or control of any of PLAINTIFF's attorneys,

directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and persons under PLAINTIFF's control, who have the best knowledge, not merely information known to PLAINTIFF based on PLAINTIFF's own personal knowledge. If YOU cannot fully respond to the following Interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Interrogatory that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Interrogatory cannot be answered fully and completely; and state what knowledge, information or belief PLAINTIFF has concerning the unanswered portion of any such Interrogatory.

2. If any information requested is claimed to be privileged or otherwise, provide all information falling within the scope of the Interrogatory which is not privileged, and for each item of information contained in a document to which a claim of privilege is made, identify such document with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

    a. the basis on which the privilege is claimed;
    b. the names and positions of the author of the information and all other persons participating in the preparation of the information;
    c. the name and position of each individual or other person to whom the information, or a copy thereof, was sent or otherwise disclosed;
    d. the date of the information;
    e. a description of any accompanying material transmitted with or attached to such information;
    f. the number of pages in such document or information; the particular Interrogatory to which such document is responsive; and whether any business or non-

1  legal matter is contained or discussed in such information.

2  3.   In the event YOU contend that any of these Interrogatories is objectionable, in
3  whole or in part, YOU shall state with particularity each such objection and the bases therefore,
4  and shall respond to the remainder of the Interrogatory to the extent you are not objecting to it.

5  4.   For any Interrogatory or portion thereof that YOU determine to be vague,
6  overbroad, or unclear, YOU shall adopt a reasonable meaning for that portion of the Interrogatory,
7  state the adopted meaning in YOUR response to the particular Interrogatory, and produce
8  responsive information accordingly.

9  5.   The words "and" and "or" shall be construed as either conjunctive or disjunctive in
10 such manner as will broaden as widely as possible the scope of any request for production; the
11 word "including" means "including without limitation."

12 6.   The use of the singular form of any word includes the plural and vice versa.

13 7.   PLAINTIFF's obligation to respond to these Interrogatories is continuing and its
14 responses are to be supplemented to include subsequently acquired information in accordance with
15 the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

# INTERROGATORIES

**INTERROGATORY NO. 1**:

Separately for each claim of the APPLE PATENTS-IN-SUIT, describe the circumstances surrounding the invention of the claims, including the precise date of conception, the persons involved, the date of actual or constructive reduction to practice, and the steps constituting diligence from conception to actual or constructive reduction to practice.

**INTERROGATORY NO. 2**:

Separately for each claim of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS and APPLE TRADEMARKS, describe all investigations made by or on behalf of APPLE prior to the filing of the Complaint regarding whether any claim of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS or APPLE TRADEMARKS is infringed by any SAMSUNG product, including identifying the persons involved in the investigations, the persons to whom reports were made, the persons involved in the approval of the action, the date of the investigation, the items considered, when and where such items were obtained, the conclusion reached in the investigations, and all documents referring to or describing such investigations.

**INTERROGATORY NO. 3**:

Separately for each of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS and APPLE TRADEMARKS, identify every instance where APPLE has contacted any third party regarding each patent, trade dress and/or trademark, including the name and address of each third party and the circumstances surrounding the contact, including specifically identifying any instances where APPLE attempted to enforce the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS and APPLE TRADEMARKS.

**INTERROGATORY NO. 4**:

Separately for each of the APPLE PATENTS-IN-SUIT, identify each PATENTED PRODUCT, which Apple patent(s) is/are embodied in the PATENTED PRODUCT, the date each

PATENTED PRODUCT was first sold in the United States, and whether each PATENTED PRODUCT was marked pursuant to 35 U.S.C § 287 or otherwise, how each product was marked including the location and manner of the marking, the individuals or entities that marked each product, and any interruptions to or other changes in the practice of marking the PATENTED PRODUCT since it was first marked.

**INTERROGATORY NO. 5:**

Separately for each of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS and APPLE TRADEMARKS, IDENTIFY every product manufactured, used, sold, offered for sale, or imported into the United States since 2005 that YOU believe uses or may use any protected design, trademark, trade dress, or invention of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS, and APPLE TRADEMARKS and the date(s) on which you believe that use occurred. The products shall be identified by product name, product manufacturer, telecommunications carrier (if applicable), date of product announcement, date of product release, and appearance of product – including front, back, and side images.

**INTERROGATORY NO. 6:**

Separately for each of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS, and APPLE TRADEMARKS, IDENTIFY any and all persons to whom YOU have ever licensed or offered to license, or persons who have requested to license, or to whom YOU have granted or offered to grant any other rights under the patent, trade dress, or trademark, including the status of those requests and offers, whether continuing, successful, or terminated, and identify (by Bates number) all DOCUMENTS RELATED to any such license, offer, request, or other grant of rights.

**INTERROGATORY NO. 7**:

Separately for each of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS and APPLE TRADEMARKS state all facts supporting any contention by APPLE that Samsung has willfully infringed, diluted, or falsely designated the origin of its products for each patent, trade

1  dress, and trademark, including when and how APPLE asserts Samsung had actual notice of the
2  APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS, and APPLE TRADEMARKS.
3
4  **INTERROGATORY NO. 8**:
5   Separately for each claim or counterclaim APPLE has asserted or will assert, identify and
6  fully describe any and all damages that APPLE is claiming in This Lawsuit and the detailed basis
7  for any such damages claim, including whether APPLE is seeking lost profits or a reasonable
8  royalty and the periods of time over which APPLE claims it has suffered damages.  If APPLE is
9  seeking lost profits, identify the amount of the alleged lost profits, the computation of the alleged
10 lost profits including all revenues, income, costs, unit costs, and quantity associated with the
11 manufacture, sales and offers for sale by APPLE or any other entity of any product APPLE
12 contends is covered by the APPLE PATENTS-IN-SUIT, each purported lost sale or other item
13 which forms any part of APPLE's alleged lost profits, and the time period over which APPLE
14 claims it is entitled to lost profits.  If APPLE is seeking a reasonable royalty, identify the amount
15 of the reasonable royalty, including any royalty rate expressed in per unit or percentage of
16 revenues terms and the basis for the per unit or percentage used, the computation of the alleged
17 reasonable royalty, and the time period over which APPLE claims it is entitled to lost profits.
18
19 **INTERROGATORY NO. 9**:
20  Separately for each of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS and
21 APPLE TRADEMARKS, identify each claim which APPLE asserts is subject to a FRAND
22 royalty obligation (if any), and describe in detail the basis for such assertion, including but not
23 limited to the source of the obligation, the scope of the obligation including specific patents and/or
24 subject area, the time period of the obligation, the terms of the license to be offered under the
25 obligation, and the royalty rate(s) APPLE asserts Samsung is obligated to offer.
26
27 **INTERROGATORY NO. 10**:
28

Separately for each of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS and APPLE TRADEMARKS, identify each patent, trade dress, or trademark which APPLE asserts is licensed (if any), and describe in detail the basis for such assertion, including but not limited to the source of the license, the scope of the license including specific patents and/or subject area, the time period of the license, whether the license is exclusive or non-exclusive, any geographic limitations of the license, any limitations of the license to certain products, any limitations on the ability to sublicense, and any other limitations on the license.

**INTERROGATORY NO. 11**:

For each APPLE ACCUSED PRODUCT, identify each person involved in the design, development, marketing and/or sales of the product and the nature of the person's involvement in such activities, and identify the starting and completion dates for the design and development of the product and the date of first sale of the product.

**INTERROGATORY NO. 12**:

If APPLE contends that it does not infringe any claim of the SAMSUNG PATENTS-IN-SUIT, identify in detail on a claim-by-claim and limitation-by-limitation basis in a claim chart format all bases for any allegation that APPLE does not infringe the claim(s), including an identification of each limitation of each claim which APPLE contends is not practiced by any of its products, and state in detail the reasons why APPLE 's products do not practice those limitations.

**INTERROGATORY NO. 13**:

Separately for each of the SAMSUNG PATENTS-IN-SUIT, identify the date(s) APPLE first became aware of each patent, the persons at APPLE who first became aware of each patent and the detailed circumstances by which each such person became aware of each patent.

**INTERROGATORY NO. 14**:

Describe in detail the factual basis for every claim, affirmative defense and every counterclaim APPLE has asserted or will assert in this lawsuit.

**INTERROGATORY NO. 15**:

IDENTIFY each person working for or on behalf of Apple who has ever analyzed use of any APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS or APPLE TRADEMARKS by someone other than YOU, and the subject matter of their analysis.

**INTERROGATORY NO. 16**:

IDENTIFY all facts RELATING TO studies, including formal or informal analysis, investigation, surveys, focus groups, consumer research, or other information or reports that relate to, support, or refute YOUR claims in this action, including, for each such study, when it was commissioned, conducted, and completed, by whom it was conducted, and its conclusions.

**INTERROGATORY NO. 17**:

Describe all instances known to YOU of confusion, including mistake, or deception RELATING TO any of the APPLE TRADE DRESS or APPLE TRADEMARKS. For each instance described, your response should include when and how you became aware of the instance, when the instance occurred, all persons with knowledge of such instance, the source of their knowledge, the circumstances reflecting the confusion, the IDENTITY of the SAMSUNG ACCUSED PRODUCT allegedly giving rise to the confusion, the IDENTITY of all confused persons, and the IDENTITY of all DOCUMENTS and things supporting or refuting your response to this Interrogatory.

**INTERROGATORY NO. 18**:

IDENTIFY all facts supporting your contentions regarding the fame, distinctiveness, secondary meaning, and/or strength of the APPLE TRADE DRESS and APPLE TRADEMARKS.

1  DATED: August 3, 2011        QUINN EMANUEL URQUHART &
2                                SULLIVAN, LLP
3
4                                By /s/ Victoria F. Maroulis
                                    Charles K. Verhoeven
5                                   Kevin P.B. Johnson
                                    Victoria F. Maroulis
6                                   Michael T. Zeller
7                                   Attorneys for SAMSUNG ELECTRONICS CO.,
                                    LTD., SAMSUNG ELECTRONICS AMERICA,
8                                   INC., and SAMSUNG
                                    TELECOMMUNICATIONS AMERICA, LLC
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2011, I caused **SAMSUNG ELECTRONICS CO. LTD.'S FIRST SET OF INTERROGATORIES TO APPLE INC.** to be electronically served on the following via email:

**ATTORNEYS FOR APPLE INC.**

HAROLD J. MCELHINNY
hmcelhinny@mofo.com
MICHAEL A. JACOBS
mjacobs@mofo.com
JENNIFER LEE TAYLOR
jtaylor@mofo.com
ALISON M. TUCHER
atucher@mofo.com
RICHARD S.J. HUNG
rhung@mofo.com
JASON R. BARTLETT
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522


WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

I declare under penalty of perjury that the foregoing is true and correct. Executed in Redwood Shores, California on August 3, 2011.

                                                  /s/ Mark Tung