# D'AMATO DECLARATION EX. R

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.** |

02198.51855/4588740.1

Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.

1   Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants and

2   Counterclaimants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and

3   Samsung Telecommunications America, LLC (collectively "Samsung") hereby serve the

4   following interrogatories on Plaintiff and Counterclaim Defendant Apple Inc. ("Apple").   Apple

5   shall answer each interrogatory below, in accordance with the definitions below, and serve them

6   on Defendants' counsel, Quinn Emanuel Urquhart & Sullivan, LLP, 555 Twin Dolphin Drive, 5th

7   Floor, Redwood Shores, CA 94065, within 30 days, or such other time as the parties agree or the

8   Court orders.   These interrogatories are continuing in nature and Plaintiff/Counterclaim

9   Defendant must timely supplement the answers to them under Fed. R. Civ. P. 26(e) whenever an

10   answer is in some material respect incomplete or incorrect.

## DEFINITIONS

11

12   1.   The terms "APPLE," "PLAINTIFF," "YOU," and "YOUR" shall refer to Apple

13   Inc., any predecessor or successor of Apple Inc., and any past or present parent, division,

14   subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee,

15   consultant, staff member, or other representative of Apple Inc., including counsel and patent

16   agents, in any country.

17   2.   The term "DEFENDANTS" and "SAMSUNG" means Samsung Electronics Co.,

18   Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

19   3.   "THIS LAWSUIT" shall mean the action entitled *Apple Inc. v. Samsung*

20   *Electronics Co., Ltd.*, Case No. 11-cv-01846-LHK.

21   4.   The term "'604 PATENT" shall mean U.S. Patent No. 6,928,604 and all parents,

22   progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

23   and all foreign counterpart applications and patents which claim the same subject matter.

24   5.   The term "'410 PATENT" shall mean U.S. Patent No. 7,050,410 and all parents,

25   progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

26   and all foreign counterpart applications and patents which claim the same subject matter.

27   6.   The term "'792 PATENT" shall mean U.S. Patent No. 7,200,792 and all parents,

28   progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

02198.51855/4588740.1

Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.

1  and all foreign counterpart applications and patents which claim the same subject matter.

2      7.    The term "'867 PATENT" shall mean U.S. Patent No. 7,362,867 and all parents,

3  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

4  and all foreign counterpart applications and patents which claim the same subject matter.

5      8.    The term "'001 PATENT" shall mean U.S. Patent No. 7,386,001 and all parents,

6  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

7  and all foreign counterpart applications and patents which claim the same subject matter.

8      9.    The term "'516 PATENT" shall mean U.S. Patent No. 7,447,516 and all parents,

9  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

10  and all foreign counterpart applications and patents which claim the same subject matter.

11      10.    The term "'941 PATENT" shall mean U.S. Patent No. 7,675,941 and all parents,

12  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

13  and all foreign counterpart applications and patents which claim the same subject matter.

14      11.    The term "'055 PATENT" shall mean U.S. Patent No. 7,069,055 and all parents,

15  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

16  and all foreign counterpart applications and patents which claim the same subject matter.

17      12.    The term "'871 PATENT" shall mean U.S. Patent No. 7,079,871 and all parents,

18  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

19  and all foreign counterpart applications and patents which claim the same subject matter.

20      13.    The term "'893 PATENT" shall mean U.S. Patent No. 7,456,893 and all parents,

21  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

22  and all foreign counterpart applications and patents which claim the same subject matter.

23      14.    The term "'460 PATENT" shall mean U.S. Patent No. 7,577,460 and all parents,

24  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

25  and all foreign counterpart applications and patents which claim the same subject matter.

26      15.    The term "'711 PATENT" shall mean U.S. Patent No. 7,698,711 and all parents,

27  progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

28  and all foreign counterpart applications and patents which claim the same subject matter.

16.     "SAMSUNG PATENT(S)-IN-SUIT" shall mean the '604 PATENT, the '410 PATENT, the '792 PATENT, the '867 PATENT, the '001 PATENT, the '516 PATENT, the '941 PATENT, the '055 PATENT, the '871 PATENT, the '893 PATENT, the '460 PATENT, and the '711 PATENT.

17.     The term "APPLE ACCUSED PRODUCTS" shall mean electronic devices that allow for communications and data transfer over networks including establishing data connections, execution of user operations and audio play back of digital data that are manufactured, distributed, and/or sold by YOU or YOUR parent, subsidiary, or affiliate companies or on YOUR behalf, or on behalf of YOUR parent, subsidiary, or affiliate companies anywhere in the world, at any time from April 15, 2005 through the pendency of This Lawsuit, including each and every Apple product that Samsung has identified as infringing in any of its complaints or infringement contentions served in this action.   The term shall include, without limitation, the following devices: the Apple iPhone 3G, the Apple iPhone 3GS, the Apple iPhone 4, the iPod Touch, the iPad, the iPad 3G, the iPad 2, the iPad 2 3G.

18.     The term "APPLE MANUFACTURER(S)" refers collectively and individually to the manufacturers of the APPLE ACCUSED PRODUCTS, including but not limited to Foxconn Electronics, Inc., Quanta Computer, Inc., Hon Hai Precision Industry Co. Ltd., Pegatron Corp., and all their predecessors, successors, parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on their behalf, or any other person or entity subject to their control or which controls them.

19.     The term "SAMSUNG/INTEL AGREEMENT" shall mean the Patent Cross License Agreement Between Samsung Electronics Co., Ltd. and Intel Corporation having an effective date of January 1, 1993 and all Amendments thereto, including but not limited to the Amendment signed in 2003 (Amendment 1) and the Amendment signed in 2004 (Amendment 2).

20.     The term "3GPP" shall mean the organization known as the 3rd Generation Partnership Project, which specifies, develops, and promulgates technical specifications for wireless networks.

21.     The term "UMTS" shall mean the Universal Mobile Telecommunications System

02198.51855/4588740.1

-2-                                      Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.

as developed and promulgated by 3GPP.

22.     The term "CDMA2000" shall mean the code-division multiple access (CDMA) version of the IMT-2000 standard developed by the International Telecommunication Union (ITU), also known as IMT-CDMA Multi-Carrier or 1xRTT.

23.     The term "CDMA EV-DO" shall mean Evolution-Data Optimized, an evolution of the CDMA2000 standard.

24.     The term "GSM" shall mean Global System for Mobile Communications as developed by the European Telecommunications Standards Institute.

25.     The term "EDGE" shall mean Enhanced Data rates for GSM Evolution as standardized by 3GPP.

26.     The term "WCDMA" shall mean Wideband Code Division Multiple Access, a member of the UMTS family of standards.

27.     The term "HSDPA" shall mean High-Speed Downlink Packet Access, the mobile telecommunications protocol.

28.     The term "HSUPA" shall mean the High-Speed Uplink Packet Access, also known as Enhanced Uplink (EUL) under the specifications promulgated by 3GPP.

29.     The term "INTEL" shall mean Intel Corporation and includes any entities constituting parents, predecessors, subsidiaries, affiliates, divisions, associated organizations, joint ventures, as well as present and former officers, directors, trustees, employees, staff members, agents, or other representatives, including counsel and patent agents, in any country.    "INTEL" includes, but is not limited to, Intel Americas, Inc. ("IAI") and Intel Mobile Communications ("IMC").

30.     The term "INFINEON" shall mean Infineon Technologies AG and includes any entities constituting parents, predecessors, subsidiaries, affiliates, divisions, associated organizations, joint ventures, as well as present and former officers, directors, trustees, employees, staff members, agents, or other representatives, including counsel and patent agents, in any country.

31.     The term "QUALCOMM" shall mean Qualcomm Incorporated and includes

02198.51855/4588740.1

-3-                                                    Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.

1    entities constituting parents, predecessors, subsidiaries, affiliates, divisions, associated

2    organizations, joint ventures, as well as present and former officers, directors, trustees, employees,

3    staff members, agents, or other representatives, including counsel and patent agents, in any

4    country.

5         32.    The term "SOFTWARE" shall include source code, hardware code, machine code,

6    object code, assembly code, or code written in any programming language, and code that can be

7    compiled or acted upon by a processor, any listings or printouts thereof, and any release notes

8    describing the features or modifications of such code.    With regard to Software, "RELATED

9    DOCUMENTATION" further includes the architecture designs, logic diagrams, flow diagrams,

10   technical descriptions and flowcharts associated with, or used in the design of, such Software, and

11   all descriptive or explanatory documentary documents relating to it.

12        33.    The term "BASEBAND PROCESSOR" shall mean a processor that is mainly used

13   to process communication functions that is incorporated, used or provided for use in, or otherwise

14   known by Apple to be used in, an Apple Accused Product.

15        34.    The term "ETSI" shall mean the European Telecommunications Standards

16   Institute.

17        35.    The term "FRAND" shall mean fair, reasonable, and non-discriminatory.

18        36.    The term "USB" shall mean Universal Serial Bus.

19        37.    The term "SPI" shall mean Serial Peripheral Interface Bus.

20        38.    The term "INPUT TECHNOLOGY" shall have the meaning used in Counterclaim

21   Defendant Apple Inc.'s Amended Answer, Defenses and Counterclaims in Reply to Samsung's

22   Counterclaims.

23        39.    The term "INPUT TECHNOLOGIES MARKET(S)" shall have the meaning used

24   in Counterclaim Defendant Apple Inc.'s Amended Answer, Defenses and Counterclaims in Reply

25   to Samsung's Counterclaims.

26        40.    The term "ESSENTIAL IPR" shall have the meaning used in the ETSI Intellectual

27   Property Rights Policy.

28        41.    The term "ESSENTIAL" as applied to a patent or other intellectual property right

1   ("IPR") shall have the same meaning as used in the ETSI IPR Policy (see

2   http://www.etsi.org/WebSite/document/Legal/ETSI_IPR-Policy.pdf), namely that it is not possible

3   on technical (but not commercial) grounds, taking into account normal technical practice and the

4   state of the art generally available at the time of standardization, to make, sell, lease, otherwise

5   dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a Standard

6   without infringing that patent or IPR. For the avoidance of doubt in exceptional cases where a

7   Standard can only be implemented by technical solutions, all of which are infringements of IPRs,

8   all such IPRs shall be considered Essential.

9       42.     The term "APPLE TRADE DRESS" shall mean U.S. Registration Nos. 3,470,983;

10  3,457,218; 3,475,327; US Application Serial Nos. 77/921,838; 77/921,829; 77/921,869;

11  85/299,118; and all parents, progeny, continuations, applications, divisional applications,

12  reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and

13  which claim the same subject matter, and the unregistered iPhone, iPhone 3G, iPhone 4,

14  iPhone/iPhone 3G/iPhone 4, iPad, iPad 2, and packaging trade dress claimed by Apple.

15      43.     The term "APPLE TRADEMARKS" shall mean U.S. Trademark Registration Nos.

16  3,886,196; 3,889,642; 3,886,200; 3,889,685; 3,886,169; 3,886,197; 2,935,038; U.S. Application

17  Serial No. 85/041,463, and all parents, progeny, continuations, applications, divisional

18  applications, reexaminations, or reissues thereof and all foreign counterpart applications,

19  registrations, and which claim the same subject matter.

20      44.     The term "'D790 PATENT" shall mean U.S. Design Patent No. D627,790 and all

21  parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues

22  thereof and all foreign counterpart applications, registrations, and patents which claim the same

23  subject matter.

24      45.     The term "'D334 PATENT" shall mean U.S. Design Patent No. D617,334 and all

25  parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues

26  thereof and all foreign counterpart applications, registrations, and patents which claim the same

27  subject matter.

28      46.     The term "'D305 PATENT" shall mean U.S. Design Patent No. D604,305 and all

parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

47.     The term "'D087 PATENT" shall mean U.S. Design Patent No. D593,087 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

48.     The term "'D677 PATENT" shall mean U.S. Design Patent No. D618,677 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

49.     The term "'D270 PATENT" shall mean U.S. Design Patent No. D622,270 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

50.     The term "'D889 PATENT" shall mean U.S. Design Patent No. D504,889 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same subject matter.

51.     "APPLE DESIGN PATENTS" shall mean the 'D790 PATENT, the 'D334 PATENT, the 'D305 PATENT, the 'D087 PATENT, the 'D677 PATENT, the 'D270 PATENT, and the 'D889 PATENT.

52.     The term "iOS SOURCE CODE" shall mean source code pertaining to Apple's iOS operating system (formerly iPhone OS), including all versions of the operating system.

53.     The terms "DOCUMENT" and "DOCUMENTS" shall have the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.   The term shall include within its meaning, by way of example and not limitation, any and all accounts, analyses, books, CDs, calendars, commercial paper, communications, correspondence, DVDs, e-

mail, films, financial statements, floppy disks, hard disks, inter-office memoranda, intangible things, invoices, ledgers, letters, licenses, logs, memoranda, microfilms, minutes, notes, notes of conversations, notes of meetings, notes of telephone calls, office communications, photographs, printouts, recordings of conversations (whether written or electronic), reports, schedules, storage tape, task lists, telegrams, telephone bills, videotapes or other video recordings, and any differing versions of the foregoing whether denominated formal, informal or otherwise, as well as copies of the foregoing which differ from the original in any way, including handwritten notations or other written or printed matter.   The foregoing specifically includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently in documentary form or not.   A draft or non-identical copy of a Document is a separate Document within the meaning of this term.

54.   The term "RELATING" shall mean regarding, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, identifying, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, containing, or constituting (in whole or in part).

55.   The term "IDENTIFY" means (1) when referring to a person, the person's full name, present or last known address, and the last known title and place of employment; (2) when referring to a business, legal, or governmental entity or association, the name and address of the entity or association; (3) when referring to a fact, the fact and the documentary or testimonial support for that fact; (4) when referring to a product, the model name/number, the manufacturer, the date it was first announced, the date it was first released, the date it was first sold and the entity that first sold the product (*e.g.*, the carrier) and a general description of the product or thing; (5) when referring to a written communication, identity of the DOCUMENT(s) in which the communication was made; (6) when referring to an oral communication, the identity of persons participating in the communication; (7) when referring to nonpatent DOCUMENTS, the production number or type of DOCUMENT, its general nature and subject matter, date of creation, and all author(s), addressee(s), and recipient(s); and (8) when referring to patent DOCUMENTS, the country, patent and/or application number, dates of filing, publication, and

02198.51855/4588740.1

-7-

Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.

1  grant, and the names of patentees or applicants.

2

3                                    **INSTRUCTIONS**

4        The following instructions shall apply to each of the Interrogatories herein:

5        1.       In answering the following Interrogatories, furnish all available information,

6  including information in the possession, custody, or control of any of PLAINTIFF's or

7  COUNTERCLAIM DEFENDANT's attorneys, directors, officers, agents, employees,

8  representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries,

9  and persons under PLAINTIFF's or COUNTERCLAIM DEFENDANT's control, who have the

10 best knowledge, not merely information known to PLAINTIFF or COUNTERCLAIM

11 DEFENDANT based on PLAINTIFF's or COUNTERCLAIM DEFENDANT's own personal

12 knowledge.

13       2.       If YOU cannot fully respond to the following Interrogatories after exercising due

14 diligence to secure the information requested thereby, so state, and provide the following

15 information: (a) the portion of the Interrogatory that cannot be responded to fully and completely;

16 (b) the efforts that were made to obtain the requested information and the facts relied upon that

17 support the contention that the Interrogatory cannot be answered fully and completely; (c) the

18 knowledge, information or belief YOU have concerning the unanswered portion of the

19 Interrogatory; (d) whether the inability to respond is because the particular item or category of

20 information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never

21 been, or is no longer, in YOUR possession, custody, or control.   If the information is no longer in

22 YOUR possession, custody, or control, further IDENTIFY the name and address of any person or

23 entity known or believed by YOU to have possession, custody, or control of that information or

24 category of information.

25       3.       If any information requested is claimed to be privileged or otherwise, provide all

26 information falling within the scope of the Interrogatory which is not privileged, and for each item

27 of information contained in a document to which a claim of privilege is made, IDENTIFY such

28

1  document with sufficient particularity for purposes of a motion to compel, such identification to

2  include at least the following:

3        a.    the basis on which the privilege is claimed;

4        b.    the names and positions of the author of the information and all other

5              persons participating in the preparation of the information;

6        c.    the name and position of each individual or other person to whom the

7              information, or a copy thereof, was sent or otherwise disclosed;

8        d.    the date of the information;

9        e.    a description of any accompanying material transmitted with or attached to

10             such information;

11       f.    the number of pages in such document or information;

12       g.    the particular Interrogatory to which such document is responsive; and

13             whether any business or non-legal matter is contained or discussed in such

14             information.[1]

---

[1]   Per the parties' agreement, neither party needs to log documents and information generated after the start of THIS LAWSUIT on April 15, 2011.

4.     In the event YOU contend that any of these Interrogatories is objectionable, in whole or in part, YOU shall state with particularity each such objection and the bases therefore, and shall respond to the remainder of the Interrogatory to the extent YOU are not objecting to it.

5.     If YOU are producing Documents in connection with the Interrogatories, selection of Documents from the files and other sources and the numbering of such Documents shall be performed in such a manner as to ensure that the source of each Document may be determined, if necessary.   File folders with tabs or labels or directories of files IDENTIFYING Documents must be produced intact with such Documents.   Documents attached to each other shall not be separated.   All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.   Electronic records and computerized information must be produced in an intelligible format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

6.     Where an identified document is in a language other than English, state whether an English translation of such document exists.   If a document is in a language other than English and an English translation exists, IDENTIFY and provide both documents.

7.     Any response made by reference to documents shall IDENTIFY each responsive document by document production number.

8.     If possible, supply all financial data requested on a calendar year basis.   If fiscal year data is provided, please specify the dates on which the fiscal years begin and end.

9.     For any information requested that is not readily available from YOUR records in the form requested, furnish carefully prepared estimates, designated as such.   Attach a statement of the basis for such estimates and IDENTIFY the person or persons making them.

10.     If any documents responsive to any of these Interrogatories have been destroyed, then separately, for each such document, IDENTIFY when, why, and by whom it was destroyed, the person or persons who destroyed it, why it was destroyed, and the circumstances under which it was destroyed.

02198.51855/4588740.1

-10-                                   Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.

11.     Confidential business information.   Please mark each page that YOU consider to contain confidential business information.

12.     For any Interrogatory or portion thereof that YOU determine to be vague, overbroad, or unclear, YOU shall adopt a reasonable meaning for that portion of the Interrogatory, state the adopted meaning in YOUR response to the particular Interrogatory, and produce responsive information accordingly.

13.     The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "including" means "including without limitation."

14.     The use of the singular form of any word includes the plural and vice versa.

15.     PLAINTIFF's or COUNTERCLAIM DEFENDANT's obligation to respond to these Interrogatories is continuing and its responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

# INTERROGATORIES

## INTERROGATORY NO. 34:

IDENTIFY all facts (including any DOCUMENTS reflecting such facts and persons having knowledge of them) concerning any advance notice, communications or other information that APPLE had, including without limitation any discussions between Steve Jobs and Paul Otellini, concerning INTEL's acquisition of INFINEON'S Wireless Business and the creation of Intel Mobile Communications, Inc., including any expected effects or benefits of the transaction with respect to APPLE, INTEL, or BASEBAND PROCESSORS supplied for incorporation in the ACCUSED APPLE PRODUCTS, including without limitation, license coverage, patent exhaustion, and benefits to third parties including APPLE.

## INTERROGATORY NO. 35:

IDENTIFY all ESSENTIAL IPRs, including patent applications and U.S. Patent Nos. 5,410,543 and 5,835,721, that APPLE disclosed to ETSI or 3GPP with respect to UMTS standards or technical specifications, and for each such ESSENTIAL IPR, IDENTIFY the priority date of the earliest related application for that IPR, the standard or technical specification to which the proposal related, the date APPLE (or another company) submitted a proposal related to the technology that is the subject matter of the IPR, the date that the proposal (whether or not modified) was frozen into the standard or technical specification, and the date on which APPLE first disclosed its IPR.

## INTERROGATORY NO. 36:

State APPLE'S contention (and the bases therefor) of what it means to "timely inform ETSI of ESSENTIAL IPRs" under any ETSI IPR POLICY effective from March 1998 to the present, including any maximum temporal delay period (*e.g.*, one year) after which APPLE contends the disclosure of an ESSENTIAL IPR is presumptively untimely, and IDENTIFY whether APPLE'S disclosures of ESSENTIAL IPR RELATING to ETSI UMTS standards and

1   technical specifications were in all cases timely, and IDENTIFY any related facts or

2   DOCUMENTS.

3

4   **INTERROGATORY NO. 37:**

5        State YOUR contention (including identification of all supporting facts and any related

6   DOCUMENTS) concerning the proper methodology, and the bases therefor, for determining

7   whether the terms and conditions for a proposed license to IPRs declared to be ESSENTIAL to an

8   ETSI standard or technical specification are fair, reasonable and non-discriminatory, including the

9   range of royalty rates, if any, that APPLE concedes are FRAND.

10

11   **INTERROGATORY NO. 38:**

12        To the extent that YOU contend that the sale of an INTEL or QUALCOMM BASEBAND

13   PROCESSOR(S) exhausts Samsung's rights in one or more of the SAMSUNG PATENTS-IN-

14   SUIT, state in detail the basis for that contention including an identification of all facts concerning

15   any alleged first sale of the BASEBAND PROCESSOR(s) in the United States and the

16   circumstances surrounding such sale, including any delivery of the BASEBAND PROCESSOR(s)

17   to any entity in the United States.   If, for example, the BASEBAND PROCESSOR(s) is not

18   delivered to any entity in the United States before being imported into the United States as part of

19   an ACCUSED PRODUCT, YOU should so state.

20

21   **INTERROGATORY NO. 39:**

22        To the extent YOU contend that SAMSUNG'S named inventors or other personnel

23   promoted technologies for inclusion in UMTS that are covered by one or more of the asserted

24   SAMSUNG PATENTS-IN-SUIT, state in detail the complete basis for that contention including a

25   description of all DOCUMENTS and other evidence reflecting SAMSUNG'S alleged efforts to

26   promote the technologies of the patents-in-suit for inclusion in UMTS, the identification of any

27   proposals or other DOCUMENTS reflecting these alleged efforts to promote, and the detailed

28

1  legal and technical basis for YOUR assertion that these proposals or other DOCUMENTS reflect

2  the subject matter of the asserted SAMSUNG PATENTS-IN-SUIT.

3

4  **INTERROGATORY NO. 40:**

5      For each APPLE ACCUSED PRODUCT, IDENTIFY whether APPLE contends that

6  product complies with any ETSI or 3GPP Standard or Technical Specification, and if so,

7  IDENTIFY the standard or technical specification and when the product first complied with that

8  standard or technical specification, including all supporting facts and documentation.   If YOU

9  contend that an APPLE ACCUSED PRODUCT does not comply with any ETSI or 3GPP

10  Standard or Technical Specification, YOU should so state.

11

12  **INTERROGATORY NO. 41:**

13      Separately for each of the APPLE ACCUSED PRODUCTS, describe all actions, if any,

14  taken by APPLE before offering those products for sale to obtain a license for any IPRs declared

15  to be ESSENTIAL to ETSI UMTS standards or technical proposals, including, without limitation,

16  patents and patent applications owned by SAMSUNG, Ericsson, Nokia, Motorola, and others.

17  To the extent APPLE did not attempt to a obtain a license to IPR declared to be ESSENTIAL to an

18  ETSI UMTS standard or technical specification before offering an APPLE ACCUSED

19  PRODUCT for sale, YOU should so state and provide an explanation, if one exists, for APPLE'S

20  failure to do so.

21

22  **INTERROGATORY NO. 42:**

23      To the extent APPLE contends it is presently licensed under one or more of the IPR

24  declared to be ESSENTIAL to any ETSI UMTS standard or technical specification, including any

25  of the asserted SAMSUNG PATENTS-IN-SUIT, state all terms and conditions of each such

26  license, and the bases therefor.

27

28

1    **INTERROGATORY NO. 43:**

2        Describe APPLE's involvement in ETSI, particularly with respect to UMTS

3    standardization, including an identification of when APPLE joined ETSI, any lapses in APPLE'S

4    membership in ETSI, the identities of any APPLE personnel or others who have been involved in

5    ETSI standardization on behalf of APPLE, and any proposals or other technical contributions

6    made by APPLE to ETSI standardization.

7

8    **INTERROGATORY NO. 44:**

9        For each INTEL BASEBAND PROCESSOR, IDENTIFY all steps taken by APPLE or on

10   its behalf to determine whether the BASEBAND PROCESSOR comprises one or more integrated

11   circuits that can interface with a SAMSUNG processor (e.g., the SAMSUNG processor in the

12   iPhone 3GS) through a SAMSUNG processor bus, as those terms are defined in the

13   SAMSUNG/INTEL AGREEMENT, including identification of any related facts or

14   DOCUMENTS related to APPLE'S opinion and/or analysis.

15

16   **INTERROGATORY NO. 45:**

17       State YOUR contention (including identification of all supporting facts and any related

18   DOCUMENTS) concerning the proper methodology for determining which patents or patent

19   applications are, or are likely to become, ESSENTIAL IPRs in relation to an ETSI STANDARD.

20

21   **INTERROGATORY NO. 46:**

22       IDENTIFY all patents for which APPLE has both (i) sought an injunction to prevent

23   alleged infringement (including identification of each such lawsuit in which APPLE has sought

24   such an injunction, the date such lawsuit was filed, the opposing party, and the patent or patents at

25   issue), and (ii) agreed to a license to any party (including identification of each such licensed

26   party, the date of such license, the terms of such license, and the patent or patents subject to such

27   license).

28

02198.51855/4588740.1

-15-                                  Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.

1  **INTERROGATORY NO. 47:**

2        IDENTIFY all patents for which APPLE has both (i) sought an injunction to prevent

3  alleged infringement (including identification of each such lawsuit in which APPLE has sought

4  such an injunction, the date such lawsuit was filed, the opposing party, and the patent or patents at

5  issue), and (ii) disclosed as ESSENTIAL or likely to become ESSENTIAL to ETSI or any other

6  standard-setting organization (including identification of each such disclosure, the date of such

7  disclosure, the standard-setting organization in question, and the patent or patents disclosed) and

8  whether APPLE committed to license those patents on fair, reasonable, and non-discriminatory

9  ("FRAND") terms.

10

11  **INTERROGATORY NO. 48:**

12        IDENTIFY all patents that APPLE is aware of that both (i) have been disclosed by any

13  party as ESSENTIAL or likely to become ESSENTIAL to an ETSI STANDARD (including

14  identification of the patent number(s), the owner(s) of such patents, the date of such disclosure,

15  and the ETSI STANDARD for which such patents were disclosed); and (ii) have been the basis

16  for any request for an injunction by the owner or licensee of such patent(s) (including

17  identification of each such lawsuit in which such an injunction was sought, the date such lawsuit

18  was filed, the party seeking the injunction, and the patent or patents at issue).

19

20  **INTERROGATORY NO. 49:**

21        IDENTIFY all royalties that APPLE pays to any party for patents that have been disclosed

22  as ESSENTIAL or likely to become ESSENTIAL to the ETSI UMTS standard (including

23  identification of the party to whom APPLE pays such royalties, the products on which APPLE

24  pays such royalties, the amount of such royalties, and the royalty rate).

25

26  **INTERROGATORY NO. 50:**

27        To the extent that YOU contend that failure to timely inform ETSI of an ESSENTIAL IPR

28  as provided in Section 4.1 of the ETSI IPR Policy makes such ESSENTIAL IPR unenforceable

1    against implementers of the ETSI STANDARD, state in detail the basis for that contention

2    including identification of all provisions of the ETSI IPR Policy that YOU contend support that

3    contention.

4

5    **INTERROGATORY NO. 51:**

6            To the extent that YOU contend that giving a FRAND undertaking with respect to a patent,

7    as provided in Section 6.1 of the ETSI IPR Policy, forecloses the patent owner from seeking an

8    injunction with respect to that patent, state in detail the basis for that contention including

9    identification of all provisions of the ETSI IPR Policy or other ETSI DOCUMENTS that YOU

10   contend support that contention.

11

12   **INTERROGATORY NO. 52:**

13           For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to

14   be used in an APPLE ACCUSED PRODUCT including, without limitation, the

15   Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon

16   PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon

17   PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618

18   and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE

19   MANUFACTURERS, IDENTIFY whether it operates in accordance with the WCDMA,

20   CDMA2000, CDMA EV-DO Rev. A, GSM, EDGE, UMTS, HSUPA, HSDPA, 3GPP Release 5,

21   3GPP Release 6, 3GPP Release 7, USB 2.0, or SPI standards and all documentation including

22   certifications of compliance, reflecting its operation and/or compliance with any of these

23   standards.

24

25   **INTERROGATORY NO. 53:**

26           For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to

27   be used in an APPLE ACCUSED PRODUCT including, without limitation, the

28   Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon

PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS, IDENTIFY the designs, schematics, technical drawings, register programming manuals, specifications and/or working drawings used for its manufacture, and for each design, schematic, technical drawing, register programming manual, specification and/or working drawing, and IDENTIFY its origin and ownership.

**INTERROGATORY NO. 54:**

For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to be used in an APPLE ACCUSED PRODUCT including, without limitation, the Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS, IDENTIFY any involvement in the development and specification design of the BASEBAND PROCESSOR by APPLE or APPLE MANUFACTURERS, including any joint development or contribution.

**INTERROGATORY NO. 55:**

For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to be used in an APPLE ACCUSED PRODUCT including, without limitation, the Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS, describe the chain of possession, custody, or commerce of the BASEBAND PROCESSOR from manufacture to integration into an APPLE ACCUSED

1  PRODUCT by identifying each entity involved in the chain of possession, custody, or commerce

2  (including, but not limited to, IAI, IMC, INTEL, INFINEON and/or QUALCOMM); the entity's

3  role; the entity's relationship with the other identified entities; all related sales information,

4  contracts, licenses, agreements or informal understandings between the entity and the other

5  identified entities concerning the design, manufacture, testing, assembly, sale and chain of

6  distribution of BASEBAND PROCESSORS to APPLE or APPLE MANUFACTURERS; and any

7  changes in the design, manufacture, sale or distribution of BASEBAND PROCESSORS that

8  occurred after September 1, 2010.

9

10  **INTERROGATORY NO. 56:**

11        For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to

12  be used in an APPLE ACCUSED PRODUCT including, without limitation, the

13  Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon

14  PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon

15  PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618

16  and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE

17  MANUFACTURERS, IDENTIFY whether any transfer of possession, transfer of custody,

18  delivery, integration into an ACCUSED PRODUCT, or sale of the BASEBAND PROCESSORS

19  takes place in the United States, including the entities involved and the terms of such transfer,

20  delivery, integration or sale in the United States.

21

22  **INTERROGATORY NO. 57:**

23        Describe every test procedure performed by or on behalf of APPLE for each BASEBAND

24  PROCESSOR provided for use in or otherwise known by YOU to be used in an APPLE

25  ACCUSED PRODUCT including, without limitation, the Qualcomm MDM6610,

26  Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon PMB 8878; Infineon

27  PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi

28  3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other

baseband or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS, including an identification of the type of test(s), processors and/or chipsets paired with the BASEBAND PROCESSOR, SOFTWARE used in the testing, the procedure followed for the testing, and the geographic location of the testing.

**INTERROGATORY NO. 58:**

From January 1, 2007, to the present, for each model and version of each of the APPLE ACCUSED PRODUCTS, including those identified in response to Interrogatory 19, IDENTIFY on a carrier-by-carrier basis, APPLE's quarterly (calendar and fiscal) revenue derived from its share of mobile carrier revenue in the U.S. resulting from sales or distribution of the APPLE ACCUSED PRODUCTS, including the percentage of each carrier's total revenue that is paid to APPLE.

**INTERROGATORY NO. 59:**

IDENTIFY and describe all communications that APPLE has had with or from QUALCOMM, INFINEON, and/or INTEL and/or any of their subsidiaries (including IAI and/or IMC) regarding THIS LAWSUIT, SAMSUNG's patents, and/or contracts and licensing agreements to which SAMSUNG is a party, including any similar communication to the April 19, 2011 letter from QUALCOMM to APPLE regarding the "most recent version" of its "Summary of Third Party IP Rights Benefiting Customers of Qualcomm's MSMs and Software" (Exhibit B to Professor Fried's November 13, 2011 Expert Report) and any communication which prompted the letter.

**INTERROGATORY NO. 60:**

IDENTIFY the licensing rates for any patent owned, whether directly or indirectly, by APPLE that APPLE believes, has declared, or has otherwise been deemed or declared, to be essential to the WCDMA standard.

02198.51855/4588740.1

-20-                                                          Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.

**INTERROGATORY NO. 61:**

IDENTIFY by licensor, licensee, effective date, consideration, royalty rate, royalty base, milestone payments (or other one-time or periodic payments) each agreement (e.g., license, settlement, covenant not to sue) that YOU contend is comparable to any hypothetical license that would be evaluated (for patents, under the *Georgia Pacific* factors) in determining a reasonable royalty.

**INTERROGATORY NO. 62:**

On a patent-by-patent basis, IDENTIFY the date (or dates) that YOU contend would form the date for the hypothetical negotiation contemplated by *Georgia Pacific* in determining a reasonable royalty for each patent asserted by the parties.

**INTERROGATORY NO. 63:**

IDENTIFY all ETSI or 3GPP working groups related to UMTS or an INPUT TECHNOLOGY in which APPLE has participated, the APPLE representatives that participated in any ETSI meeting RELATING to UMTS or an INPUT TECHNOLOGY, the meetings in which each APPLE representative participated, and any comments, DOCUMENTS, or proposals made or submitted by the APPLE representative at that meeting.

**INTERROGATORY NO. 64:**

For each SAMSUNG PATENT-IN-SUIT, IDENTIFY when APPLE became aware that the SAMSUNG PATENT-IN-SUIT was ESSENTIAL IPR, declared ESSENTIAL IPR, or that SAMSUNG owed an alleged licensing commitment to ETSI regarding a SAMSUNG PATENT-IN-SUIT.

**INTERROGATORY NO. 65:**

For each INPUT TECHNOLOGY MARKET, IDENTIFY each technology in that market, SAMSUNG's share of that market, and any barriers to entry to the market.

**INTERROGATORY NO. 66:**

IDENTIFY any cost APPLE would incur by switching from: a) an INPUT TECHNOLOGY to an alternative technology; and b) WCDMA to an alternative standard, including CDMA2000.

**INTERROGATORY NO. 67:**

From January 1, 2007 to the present, for each model and version of each of the APPLE ACCUSED PRODUCTS, including those identified in response to Interrogatory 19, IDENTIFY by quarter (calendar and fiscal) the amount in gross margin or gross profit that APPLE has obtained from the sale of accessories or other services that are designed to work with any APPLE ACCUSED PRODUCT, including but not limited to sales from iTunes, sales from APPLE'S App Store, and sales of products sold by a third-party for which APPLE receives revenue from the third-party.

**INTERROGATORY NO. 68:**

Separately for each APPLE DESIGN PATENT and APPLE TRADE DRESS, state fully and in detail all facts that support YOUR contention as to the non-functionality of any claimed feature, element or combination of features or elements.

**INTERROGATORY NO. 69:**

Separately for each APPLE TRADE DRESS and APPLE TRADEMARK, state the date on which YOU contend such trade dress and trademark became famous and acquired secondary meaning and state fully and in detail all facts that support YOUR contention that such trade dress and trademark became famous and acquired secondary meaning as of that date.

**INTERROGATORY NO. 70:**

Separately for each APPLE TRADE DRESS, state fully and in detail all facts that support YOUR contention that SAMSUNG is diluting or has diluted such trade dress.

02198.51855/4588740.1

-22-                     Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.

**INTERROGATORY NO. 71:**

Separately for each SAMSUNG product or product packaging that YOU contend infringes any APPLE TRADE DRESS or APPLE TRADEMARK, state fully and in detail on a trade dress-by-trade dress and trademark-by-trademark basis all facts that support YOUR contention that the SAMSUNG product or product packaging is likely to cause confusion, cause mistake, or deceive consumers as to the affiliation, connection, or association of SAMSUNG with APPLE, or as to origin, sponsorship, or approval by APPLE of SAMSUNG'S goods, services or commercial activities.

**INTERROGATORY NO. 72:**

Separately for each SAMSUNG product that YOU contend infringes any APPLE DESIGN PATENT, state fully and in detail on a patent-by-patent basis all facts supporting YOUR contention of infringement, describe fully and in detail on a patent-by-patent basis where each claimed element or feature of the patent is found on the accused SAMSUNG product and provide a chart identifying fully and in detail on a patent-by-patent basis specifically where each claimed element or feature is found on the accused SAMSUNG product.

**INTERROGATORY NO. 73:**

Separately, fully, and in detail for each of the SAMSUNG PATENTS-IN-SUIT, IDENTIFY and explain any design-around and/or alleged alternative technology or method that can be used as an alternative to the patented technology, including but not limited to: (a) a description of the alleged design-around; (b) a description of when and how the alleged design-around was developed; (c) the identity of individuals involved in developing the alleged design-around, including their titles and departments if they are or were APPLE employees; and (d) dates when the alleged design-around was incorporated into the APPLE ACCUSED PRODUCTS.

**INTERROGATORY NO. 74:**

Separately for all SOFTWARE produced by APPLE including, but not limited to iOS SOURCE CODE, IDENTIFY: (a) each version of SOFTWARE that corresponds to commercially distributed versions of SOFTWARE; (b) which APPLE ACCUSED PRODUCT was commercially distributed with which version of the SOFTWARE produced by APPLE; and (c) all material differences between the commercially distributed versions of SOFTWARE that are relevant to any aspect, element or function of any APPLE ACCUSED PRODUCT that is alleged to infringe any of the SAMSUNG PATENTS-IN-SUIT.

**INTERROGATORY NO. 75:**

IDENTIFY all facts supporting APPLE's Twenty-Fifth Counterclaim (Breach of Contract – FRAND and Other Standard-Related Misconduct).

**INTERROGATORY NO. 76:**

IDENTIFY all facts supporting APPLE's Twenty-Sixth Counterclaim (Promissory Estoppel).

**INTERROGATORY NO. 77:**

IDENTIFY all facts supporting APPLE's Twenty-Seventh Counterclaim (Declaratory Judgment that APPLE is Licensed to SAMSUNG's Declared-Essential Patents).

**INTERROGATORY NO. 78:**

IDENTIFY all facts supporting APPLE's Twenty-Eighth Counterclaim (Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2).

**INTERROGATORY NO. 79:**

IDENTIFY all facts supporting APPLE's Twenty-Eighth Counterclaim (Unfair Competition Under Cal. Bus. & Prof. Code § 17200).

1 | **INTERROGATORY NO. 80:**

2 |      IDENTIFY with particularity all alleged trade dresses that YOU claim are infringed by

3 | SAMSUNG, including each and every element alleged to be a component thereof.

4 |

5 |

6 | DATED: February 7, 2012            QUINN EMANUEL URQUHART &
7 |                                         SULLIVAN, LLP

8 |

9 |                    By  _/s/ Victoria F. Maroulis_
10 |                         Charles K. Verhoeven
                        Kevin P.B. Johnson
11 |                         Victoria F. Maroulis
                        Michael T. Zeller
12 |                         Attorneys for SAMSUNG ELECTRONICS CO.,
                        LTD., SAMSUNG ELECTRONICS AMERICA,
13 |                         INC., and SAMSUNG
                        TELECOMMUNICATIONS AMERICA, LLC

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on February 7, 2012, I caused **SAMSUNG'S FOURTH SET OF**

3  **INTERROGATORIES TO APPLE INC.** to be electronically served on the following via email:

4  **ATTORNEYS FOR APPLE INC.**

5  HAROLD J. MCELHINNY
   hmcelhinny@mofo.com
6  MICHAEL A. JACOBS
   mjacobs@mofo.com
7  JENNIFER LEE TAYLOR
   jtaylor@mofo.com
8  ALISON M. TUCHER
   atucher@mofo.com
9  RICHARD S.J. HUNG
   rhung@mofo.com
10 JASON R. BARTLETT
   jasonbartlett@mofo.com
11 MORRISON & FOERSTER LLP
   425 Market Street
12 San Francisco, California 94105-2482
   Telephone: (415) 268-7000
13 Facsimile: (415) 268-7522

14 WILLIAM F. LEE
   william.lee@wilmerhale.com
15 WILMER CUTLER PICKERING HALE
   AND DORR LLP
16 60 State Street
   Boston, Massachusetts 02109
17 Telephone: (617) 526-6000
   Facsimile: (617) 526-5000

18
   MARK D. SELWYN
19 mark.selwyn@wilmerhale.com
   WILMER CUTLER PICKERING HALE
20 AND DORR LLP
   950 Page Mill Road
21 Palo Alto, California 94304
   Telephone: (650) 858-6000
22 Facsimile: (650) 858-6100

23

24      I declare under penalty of perjury that the foregoing is true and correct.    Executed in Los

25 Angeles, California on February 7, 2012.

26

27                                    ___/s/ __Kara M. Borden_____

28

02198.51855/4588740.1

-26-                        Case No. 11-cv-01846-LHK
SAMSUNG'S FOURTH SET OF INTERROGATORIES TO APPLE INC.