# EXHIBIT 1

# EXHIBIT 1

# FILED UNDER SEAL

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 1

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4    APPLE INC., a California        )
     corporation,                    )
5                                     )
                      Plaintiff,      )
6                                     )
           vs.                        )  No: 11-CV-01846-LHK
7                                     )
     SAMSUNG ELECTRONICS CO., LTD,    )
8    a Korean business entity;        )
     SAMSUNG ELECTRONICS AMERICA,     )
9    INC., a New York corporation;    )
     SAMSUNG TELECOMMUNICATIONS       )
10   AMERICA, LLC, a Delaware         )
     limited liability company        )
11                                    )
                      Defendants.     )
12   _____ )

13

14      **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

15

16            DEPOSITION OF QUIN HOELLWARTH

17             Redwood Shores, California

18              Tuesday, October 25, 2011

19

20

21

22

23   Reported By:

24   LINDA VACCAREZZA, RPR, CLR, CRP, CSR. NO. 10201

25   JOB NO. 42859

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 2

1

2

3

4                    Tuesday, October 25, 2011

5                    9:32 a.m.

6

7

8        Videotaped deposition of QUIN

9   HOELLWARTH, held at Quinn Emanuel

10  Urquhart & Sullivan, LLP, 555 Twin

11  Dolphin Drive, Redwood Shores,

12  California, pursuant to

13  Subpoena before Linda Vaccarezza, a

14  Certified Shorthand Reporter of the

15  State of California.

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 3

```
 1          A P P E A R A N C E S:

 2               QUINN EMANUEL URQUHART & SULLIVAN

 3               Attorneys for Defendants

 4                    865 South Figueroa Street

 5                    Los Angeles, California 90017

 6               BY:  MICHAEL T. ZELLER, ESQ.

 7                    ANNA NEILL, ESQ

 8                    michaelzeller@quinnemanuel.com

 9                    annaneill@quinnemanuel.com

10

11               MORRISON & FOERSTER

12               Attorneys for Plaintiff

13                    755 Page Mill Road

14                    Palo Alto, California 94304

15               BY:  ERIK J. OLSON, ESQ.

16                    ejolson@mofo.com

17

18

19

20  also present:  Wendy Anna Herby,
                    Apple in-house Counsel
21

22

23

24

25  Videographer:  Jason Kocol
```

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 4

1          THE VIDEOGRAPHER:  This is the

2     start of tape labeled Number 1 of the

3     videotaped deposition of Quin Hoellwarth

4     in the matter Apple Incorporated versus

5     Samsung Electronics Company, Limited, in

6     the United States District Court,

7     Northern District of California, San Jose

8     division.  Case number 11-CV-01846-LHK.

9     This deposition is being held at 555 Twin

10    Dolphin Drive, Redwood Shores,

11    California, on October 25th, 2011.  It is

12    approximately 9:32 a.m.

13          My name is Jason Kocol and I'm

14    a legal video specialist from TSG

15    Reporting, Incorporated, headquartered at

16    747 Third Avenue, New York, New York.

17    The court reporter is Linda Vaccarezza in

18    association with TSG Reporting.

19          Will counsel please introduce

20    yourselves for the record.

21    MR. ZELLER:  Mike Zeller for

22    Samsung.

23    MS. NEILL:  Anna Neill for Samsung.

24    MR. OLSON:  Erik Olson of Morrison

25    & Foerster on behalf of Apple and the

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 5

1          witness.

2               THE VIDEOGRAPHER:  Will the court

3          reporter please swear in the witness.

4                         QUIN HOELLWARTH,

5                         having been duly

6          sworn, by the Certified Shorthand

7          Reporter, was examined and testified as

8          follows:

9                         EXAMINATION

10    BY MR. ZELLER:

11         Q.    Good morning.

12         A.    Good morning.

13         Q.    Please tell us and spell your full

14    name for the record.

15         A.    Quin Hoellwarth.  Q-U-I-N, C as a

16    middle initial, Hoellwarth, H-O-E-L-L-W-A-R-T-H.

17         Q.    Have you ever been known as or

18    gone by any other name?

19         A.    I have not.

20         Q.    And are you currently employed?

21         A.    I am.

22         Q.    By whom?

23         A.    Apple.

24         Q.    How long have you worked for

25    Apple?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 102

1            12:13 p.m.)

2                    THE VIDEOGRAPHER:  The time is

3            12:13 p.m.  We are on the record.

4    BY MR. ZELLER:

5            Q.    You've an opportunity to review

6    the 889 design patent?

7            A.    I have.

8            Q.    Do you recognize this as an issued

9    patent that you worked on the application for?

10           A.    Yes.

11           Q.    And you did this back when you

12   were with Beyer Weaver & Thomas?

13           A.    Yes.

14           Q.    Was your involvement complete

15   prior to the time that you went and began working

16   as an Apple employee or did your work on this

17   design patent application continue on?

18                   MR. OLSON:  Did he work on, you

19           mean the prosecution?

20                   MR. ZELLER:  Yes.

21                   THE WITNESS:  I started at Apple

22           in 2007.  This issued in 2005.

23           Q.    So the answer is that it was

24   completed before you left?

25           A.    Yes.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 103

1        Q.    Before you left Beyer Weaver &

2  Thomas?

3        A.    Yes.

4        Q.    And generally speaking, what did

5  you do in connection with the application that

6  resulted in the 889 design patent?

7        A.    What do you mean, generally do?

8  Can you be more specific?

9        Q.    Well, please tell me what the

10  nature of your tasks and responsibilities were in

11  connection with the 889 design patent in the

12  prosecution?

13       A.    I prepared the patent application

14  and filed it.  Is that what you mean?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 104



HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 105



HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 120

1    out the facts from you.  What I can say is is

2    that, that these -- and I'm talking about exactly

3    in this form is how it was produced by an Apple

4    prosecuting firm, the Stern firm, as I understand

5    it.  That's my best understanding.

6              A.    This is from the file wrapper.

7              Q.    I believe that there are photos

8    that are in the file wrapper that I'm going to

9    ask you about next that I believe correspond to

10   these.  But again, I'm just an outside lawyer.

11   I'm trying to see how these things are related.

12   And that's my -- that's the point of my

13   questioning.  So it's a little hard for me to

14   make representations to you about any of this

15   because that's part of what I'm trying to find

16   out.

17              MR. OLSON:  Did we provide source

18         information for these?

19              MR. ZELLER:  I don't think so.  My

20         last understanding -- we have asked for

21         the native files of these, these images.

22              MR. OLSON:  And I'm happy to

23         address that as well, but go ahead.

24              MR. ZELLER:  And any original

25         photographs so that we would have clear

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 121

1          images of it and the like.  But, you

2          know, the information we have is pretty

3          limited.  It was, as I understand it,

4          produced by Stern, which I believe took

5          over the prosecution, but -- and that's

6          probably why it's in possession of them.

7          But it doesn't -- we don't know what the

8          ultimate source of this was.

9               It was presumably transferred

10          from Beyer Weaver & Thomas at some point

11          would be my assumption, but again, that's

12          part of what I'm trying to find out.  So

13          maybe if we step back for a minute and

14          try some kind of foundational things and

15          see if this helps --

16          A.   Okay.

17          Q.   -- jog your memory on any of

18   this.  And let's first focus on the '889 design

19   patent for a moment.

20          A.   Yes.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

2         Q.    And if you could direct your

3    attention to the page of Exhibit 841 that bears

4    Bates number APLPROS 0000018789.

5         A.    18789?

6         Q.    Yes.  And you'll see this is a

7    photograph of an individual.  Is this you?

8         A.    Yes.

9         Q.    And this photograph shows you

10   holding a three-dimensional tablet mock-up?

11        A.    Yes.

23        Q.    Directing your attention to the

24   last page of Exhibit 841.

25        A.    (Witness complies.)

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 123

1        Q.    You'll see that this is a

2  cornucopia of you?

3        A.    Yes.



24       Q.    Do you know where the photographs

25  are?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 140

1    mock-up?

2              A.    Just to verify, point to what

3    you're talking about.

4              Q.    You'll see that there's an area

5    here between the glass surface and then what

6    sometimes people call the bezel, there's an

7    actual physical gap or groove that runs all

8    around the perimeter of the front of the device.

9              A.    It does feel that way.

10             Q.    And as you can tell from looking

11   at the mock-up and also can tell from this

12   photograph at 842, underneath that opening, that

13   gap or groove, there are a series of holes?

14             A.    Are you referring to these holes?

15             Q.    Yes.

16             A.    Much easier to see in the

17   picture.

18             Q.    And you do see, even though it's a

19   little tougher to actually see it in the physical

20   mock-up, but you do see that underneath the gap

21   or that groove that runs around the front surface

22   of the mock-up that there's a series of holes?

23             A.    Does -- I can't tell that they are

24   holes from what I'm looking at, but there's a

25   series of something, a feature.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 141

1          Q.    Is there some word you would use

2     to describe what those are, if you can't tell

3     that they are holes?

4          A.    I mean, I would call them a

5     feature.  With regards to the device, the picture

6     it seems -- it appears more like a hole, series

7     of holes.

8          Q.    Now, in the course of working on

9     the '889 design patent prosecution, did it come

10    to your attention that the design had vents that

11    ran around the perimeter of the front of the

12    device?

13         A.    I don't recall.

14         Q.    Directing your attention to

15    Exhibit 841, and specifically --

16              MR. OLSON:  Let him find 841.

17              MR. ZELLER:  841.

18              THE WITNESS:  This one.

19    BY MR. ZELLER:

20         Q.    Right.

21         A.    Okay.

22         Q.    Directing your attention to

23    Exhibit 841 and specifically page APLPROS

24    0000018791.

25         A.    This one?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 142

1          Q.    Yes.  Now, you'll see that this

2    depicts a closer end view of the corner of the

3    mock-up that you had, right?

4          A.    Okay.

█        █        ████████████████

█    █████████████████████████████

█    ██████████████████████████

█        █        ██████████████

9          Q.    You'll see from this perspective

10   that running around the perimeter of the front of

11   the device that's shown that there is that

12   thicker black line.  Do you see that?

13         A.    I see a thicker black line.

14         Q.    And that corresponds to the groove

15   or the gap in the mock-up that you have, correct?

16              MR. OLSON:  Objection.  Lack of

17              foundation.

18              THE WITNESS:  I don't know what

19              that is.

20         Q.    Is the physical mock-up that you

21   have in front of you --

22         A.    Yes.

23         Q.    -- that your counsel brought and

24   photographs of which we have marked as Exhibit

25   842 and 843 the mock-up that is depicted here in

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 143

1    Exhibit 841?

2           A.    Exhibit 842?  You're saying these

3    photos that you took which represents this, are

4    you saying is what was in the case?

5           Q.    Let me break it down further.  Is

6    the physical mock-up that your counsel brought

7    the physical mock-up that's depicted in

8    Exhibit 841?

9           A.    I don't know.

10          Q.    Who would know?

11          A.    I don't know.  I don't know that

12   there's a person.  It may have been Cal Seid.

13          Q.    Directing your attention to

14   Exhibit 841, specifically page APLPROS 000001879.

15          A.    Yes.

16          Q.    This is a photograph that was

17   submitted to the patent office by Apple in

18   connection with the '889 design patent

19   prosecution, correct?

20               MR. OLSON:  I don't think you're

21          on the same page.

22               THE WITNESS:  This one?

23               MR. ZELLER:  Yes.

24               MR. OLSON:  You have a different

25          number down.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 350

1          THE VIDEOGRAPHER:  This marks the

2     end of the addendum to Tape Number 5 of

3     today's deposition of Quin Hoellwarth,

4     and concludes today's deposition.

5               The time is 8:47 p.m.  We are

6     off the record.

7

8          (Time noted: 8:47 p.m.)

9

10

11

12

13                    _____

14                    QUIN HOELLWARTH

15

16

17     Subscribed and sworn to before me

18     This       day of              , 2011.

19

20     _____

21

22

23

24

25

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 351

1          C E R T I F I C A T E

2      STATE OF CALIFORNIA      )

3                               )

4      COUNTY OF SAN FRANCISCO )

5          I, LINDA VACCAREZZA, a Certified

6      California, do hereby certify:Shorthand

7      Reporter for the State of

8          That QUIN HOELLWARTH, the witness

9      whose deposition is hereinbefore set

10     forth, was duly sworn by me and that such

11     deposition is a true record of the

12     testimony given by such witness.

13         I further certify that I am not

14     related to any of the parties to this

15     action by blood or marriage; and that I

16     am in no way interested in the outcome of

17     this matter.

18         IN WITNESS WHEREOF, I have hereunto

19     set my hand this 26th day of October, 2011.

20

21

22     _____

23      LINDA VACCAREZZA, CSR. NO. 10201

24

25