Exhibit 6

*MAY CONTAIN CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

UNITED STATES INTERNATIONAL TRADE COMMISSION

Washington, D.C.

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN PORTABLE ELECTRONIC DEVICES AND RELATED SOFTWARE** | Inv. No. 337-TA-797 |

**ORDER NO. 57:** CONSTRUING THE TERMS OF THE ASSERTED CLAIMS OF THE PATENTS AT ISSUE

(June 26, 2012)

*MAY CONTAIN CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

specification confirms the lay meaning by referring to an electronic document as having a definable length and width and an "edge." (*Id.* at 42 (citing JXM-4 at 6:1-4, Fig. 7 (at block 724), Fig. 8C).) In the end, Staff says that even though the distinction between the parties' positions may not be significant, Staff believes that the potential ambiguities pointed out by Apple, and the common lay understanding of the term, suggest that no special construction of this term is necessary. (*Id.*)

The term "electronic document" as it appears in the context of the asserted claims carries no unusual meaning. Claim 1, for example, recites a computer-implemented method comprising a device that has a touch screen that displays one portion of an electronic document and, in response to detection of movement of an object on or near the screen, translates the electronic document in one direction in order to display a different, second portion of the document. (JXM-4 at 35:33-43.) Continuing, the claim says that when the edge of the document is reached an area beyond the edge is displayed, and a smaller, third portion of the document is displayed. (*Id.* at 35:43-51.) Concluding, the claim says that when the object is no longer detected on or near the touch screen, the electronic document is translated in a second direction until the area beyond the edge of the document is no longer displayed and a fourth portion of the document, which is different from the first portion, is displayed. (*Id.* at 35:52-58.)

No special meaning for the term "electronic document" is expressly or implicitly revealed in this claim. All of the other claims of the '381 patent, asserted or not, are similarly conventional in employing the term "electronic document." Thus, the claims themselves do not suggest something unique, different, or out of the ordinary about the term. HTC's argument that its

-27-

*MAY CONTAIN CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER*

proposed construction implies a visual representation on the screen that has a defined set of boundaries creates questions about what defines the set of boundaries and how this is to be done.

The specification frequently mentions "electronic document" but does not provide a specific definition for it and does not employ the word in a manner that suggests that the inventor intended something unique or different by it. For example, the Abstract recites, in part:

> ....In the method, a movement of an object on or near the touch screen display is detected. In response to detecting the movement, an electronic document displayed on the touch screen display is translated in a first direction. If an edge of the document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display, an area beyond the edge of the document is displayed. After the object is no longer detected on or near the touch screen display, the document is translated in a second direction until the area beyond the edge of the document is no longer displayed.

(JXM-4 at Abstract (797APPLE00000057).) This is consistent with the language of claim 1, as well as the language of the other claims of the patent, and does not suggest that the inventor was using "electronic document" in some unique or special way.

The words "electronic" and "document" are generally understood by laypersons as well as persons skilled in the art of computer science and electrical engineering. For example, one general purpose dictionary includes this definition of "document": "a computer file containing information input by a computer user and usu[ally] created with an application (as a word processor).[5]" HTC's proposed construction, "electronic data that can be stored and displayed," is too vague and broad, to the point that "document" loses its character as the sum of its parts, and becomes, instead, merely a portion of them.

---

[5] Merriam-Webster's Collegiate Dictionary (11th Ed., 2009).

*MAY CONTAIN CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER*

The Administrative Law Judge concludes, for the reasons argued by Apple and Staff, mentioned above, that a person of ordinary skill at the time of the invention would have understood the term "electronic document" according to the plain and ordinary meanings of the words "electronic" and "document" when considered in combination and that no construction of this term is required or helpful.

### 3. Claim 19—*"instructions for..."*

This term appears five times in claim 19:

> 19. A device, comprising:
> a touch screen display;
> one or more processors:
> memory; and
> one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the programs including:
> instructions for displaying a first portion of an electronic document;
> instructions for detecting a movement of an object on or near the touch screen display;
> instructions for translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion, in response to detecting the movement;
> instructions for displaying an area beyond an edge of the electronic document and displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion, in response to the edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display; and
> instructions for translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion is different from the first portion, in response to detecting that the object is no longer on or near the touch screen display.

(JXM-4 at 36:59-37:22.) Apple proposes the following constructions for the elements in the order in which the term appears in the claim:

-29-