HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.    11-cv-01846-LHK (PSG)<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTIONS IN LIMINE** |

REDACTED PUBLIC VERSION

**TABLE OF CONTENTS**

**Page**

I.   EVIDENCE OF PUBLIC PRAISE FOR APPLE'S IPHONE AND IPAD AND THAT SAMSUNG COPIED APPLE'S PRODUCTS IS RELEVANT AND ADMISSIBLE ................................................................................................ 1

    A.   Evidence of the Success of the iPhone and iPad is Relevant and Admissible ........ 1

        1.   Evidence of the iPhone's and iPad's Success is Relevant to the Fame of Apple's Trade Dress, the Validity of Apple's Patents, Reasonable Royalty, and Samsung's Motive for Copying ........................ 1

        2.   Evidence of the iPhone's and iPad's Success is Admissible Because It Reflects the Declarant's State of Mind, and is Evidence on Which Apple's Experts Reasonably Rely .............................................................. 2

    B.   Samsung Documents Showing that Samsung Copied the iPhone and iPad Are Relevant and Admissible ........................................................................... 3

    C.   Evidence that Samsung's Products Are Viewed As Similar to the iPhone and iPad is Relevant and Admissible ........................................................................ 5

        1.   Evidence of Perceived Similarity of Samsung's Products Is Relevant to Apple's Design Patent and Trade Dress Claims, and to Willfulness and the Validity of Apple's Patents ........................................ 5

        2.   Evidence of Perceived Similarity of Samsung's Products is Not Inadmissible Hearsay .................................................................................. 6

    D.   Samsung's Objections to Other Evidence That it Contends is Not Linked to Apple's Infringement Claims Lack Merit ............................................................ 7

II.   APPLE'S EVIDENCE THAT THE PUBLIC, THE MEDIA, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ COMMENTED ON SAMSUNG'S COPYING IS RELEVANT AND ADMISSIBLE ............................................................................... 8

    A.   Evidence of Commentary on Similarity and Confusion Between Samsung's Products and Apple's Products is Relevant to Show Notice to Samsung ............... 8

    B.   Evidence that Consumers Confused Samsung's Tablets with Apple's is Also Admissible to Show a Likelihood of Consumer Confusion ....................... 10

    C.   Evidence that Samsung Knew its Tablet Design was Confusingly Similar to Apple's Designs is Not Substantially More Prejudicial than Probative .......... 13

III.  APPLE TIMELY DISCLOSED ITS INFRINGEMENT THEORIES ............................ 14

    A.   Apple Timely Disclosed the Samsung Products at Issue ...................................... 14

    B.   Judge Grewal Has Already Ruled That Apple Timely Disclosed Its Design Patent Infringement Theories ................................................................................ 16

    C.   Apple Should Not Be Precluded From Any Arguments Relating to "Factoring Out" Any Functional Elements of the Asserted Design Patents ........ 17

    D.   Apple Timely Disclosed Its Indirect Infringement Theories ............................... 17

IV.   APPLE DOES NOT OPPOSE SAMSUNG'S MOTION TO EXCLUDE EVIDENCE OF THE DECISIONS OF OTHER COURTS AND TRIBUNALS ............ 18

V.   THE JURY HAS A RIGHT TO HEAR THAT SAMSUNG CONTINUED SELLING INFRINGING PRODUCTS AFTER BEING TOLD BY U.S. COURTS THAT IT LIKELY INFRINGED PATENTS-IN-SUIT, AND THAT SAMSUNG ATTEMPTED TO PREVENT CERTAIN FACTS FROM COMING TO LIGHT IN THIS LITIGATION ................................................................................................. 19

A.   The Preliminary Injunction Decisions Are Relevant to Willfulness and Inducement ........................................................................................................ 19

B.   Samsung's Discovery Tactics Demonstrate Samsung Was Aware of and Sought to Hide Its Infringement ............................................................................ 21

VI.   APPLE'S EXPERTS WILL PROVIDE SUFFICIENTLY SPECIFIC EVIDENCE OF SAMSUNG'S INFRINGEMENT ............................................................................... 23

VII.   APPLE'S PHOTOGRAPHS WILL APPROPRIATELY DEPICT THE ACCUSED PRODUCTS ............................................................................................ 24

VIII.   APPLE'S EVIDENCE OF DAMAGES PRIOR TO APRIL 2011 IS RELEVANT TO ITS UNREGISTERED TRADE DRESS CLAIMS AND IN ANY EVENT CANNOT BE EXCLUDED BY A MOTION IN LIMINE ............................................... 25

IX.   SAMSUNG'S TAX ACCOUNTING IS ESSENTIAL TO UNDERSTANDING SAMSUNG'S PROPOSED PRESENTATION OF STA'S AND SEA'S "PROFITS" BUT APPLE AGREES THAT GENERAL REVENUES, PROFITS, WEALTH AND TAX PAYMENTS ARE NOT OTHERWISE RELEVANT ................ 27

# TABLE OF AUTHORITIES

Page

**CASES**

*adidas-Am.*, *Inc. v. Payless Shoesource, Inc.*
546 F. Supp. 2d 1029 (D. Or. 2008) ........................................................ 9

*Alkhatib v. Steadman,*
No. 10-342,
2011 WL 5553775 (S.D. Ala. Nov. 15, 2011) ...................................... 12

*AMF Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979) .............................................................. 5, 9

*Apple, Inc. v. Samsung Elecs. Co., Ltd.,*
678 F.3d 1314 (Fed. Cir. 2012) ............................................................ 20

*Asyst Techs., Inc. v. Emtrak, Inc.,*
544 F.3d 1310 (Fed. Cir. 2008) .............................................................. 2

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.,*
No. 2010-1510,
2012 U.S. App. Lexis 13561 (Fed. Cir. June 14, 2012) .................... 9, 19

*Bergstrom v. Sears, Roebuck and Co.,*
496 F. Supp. 476 (D. Minn. 1980) ........................................................ 28

*Bodeans Cone Co., L.L.C. v. Norse Dairy Sys., L.L.C.,*
678 F. Supp. 2d 883 (N.D. Iowa 2009) ............................................ 6, 11

*Bradley v. Pittsburgh Bd. of Educ.,*
913 F.2d 1064 (3d Cir. 1990) ............................................................... 26

*C & E Servs., Inc. v. Ashland Inc.,*
539 F. Supp. 2d 316 (D.D.C. 2008) ...................................................... 26

*Carson Harbor Vill., Ltd. v. Unocal Corp.,*
270 F.3d 863 (9th Cir. 2001) ................................................................. 3

*Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.,*
817 F. Supp. 979 (D. Mass. 1992). ...................................................... 26

*Chavez v. Carranza,*
559 F.3d 486 (6th Cir. 2009) ................................................................. 3

*Clicks Billiards, Inc. v. Sixshooters Inc.,*
251 F.3d 1252 (9th Cir. 2001) .............................................................. 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Cordis Corp. v. Boston Sci. Corp.*,
  Civ. No. 03-27,
  2010 U.S. Dist. LEXIS 7197 (D. Del. Jan. 28, 2010) ........................................... 20

*Coryn Group II, LLC v. O.C. Seacrets, Inc.*,
  No. WDQ-08-2746,
  2011 WL 862729 (D. Md. Mar. 10, 2011) ........................................... 28

*Coupe v. Royer*,
  155 U.S. 565 (1895) ........................................... 26

*Crocs, Inc. v. ITC*,
  598 F.3d 1294 (Fed. Cir. 2010) ........................................... 2, 3

*CytoSport, Inc. v. Vital Pharms., Inc.*,
  617 F. Supp. 2d 1051 (E.D. Cal. 2009) ........................................... 11

*Ecolab, Inc. v. Envirochem, Inc.*,
  264 F.3d 1358 (Fed. Cir. 2001) ........................................... 24

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) (en banc) ........................................... 5

*ePlus, Inc. v. Lawson Software, Inc.*,
  No. 3:09cv620,
  2011 WL 3584313 (E.D. Va. Aug. 12, 2011) ........................................... 9, 19

*Global-Tech Appliances, Inc., v. SEB S.A.*,
  131 S. Ct. 2060 (2011) ........................................... 9, 19

*GTFM, Inc. v. Solid Clothing, Inc.*,
  215 F. Supp. 2d 273 (S.D.N.Y. 2002) ........................................... 25

*Henrob Ltd. v. Bollhoff Systemtechnick GmbH & Co.*,
  No. 05-CV-73214,
  2009 U.S. Dist. LEXIS 107966 (E.D. Mich. Nov. 19, 2009) ........................................... 6

*In re Seagate Tech. LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) ........................................... 9, 19, 20

*Itar-Tass Russian News Agency v. Russian Kurier*,
  95 Civ. 2144,
  1997 U.S. Dist. LEXIS 8297 (S.D.N.Y. June 10, 1997) ........................................... 20

*Kos Pharms., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) ........................................... 10, 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Lahoti v. Vericheck, Inc.*,
636 F.3d 501 (9th Cir. 2011)........................................................................... 3, 6, 11

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
449 F.3d 1209 (Fed. Cir. 2006)............................................................................. 24

*Lopes v. Viera*,
No. 1:06-CV-01243 JLT,
2012 U.S. Dist. LEXIS 27990 (E.D. Cal. Mar. 2, 2012) ...................................... 26

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008)............................................................................. 30

*Minks v. Polaris Indus., Inc.*,
546 F.3d 1364 (Fed. Cir. 2008)............................................................................. 26

*Official Airline Guides v. Goss*,
6 F.3d 1385 (9th Cir. 1993).................................................................................. 13

*OG Int'l, Ltd. v. Ubisoft Entm't*,
No. C 11-4980,
2011 U.S. Dist. LEXIS 124020 (N.D. Cal. Oct. 26, 2011) ..................................... 5

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
383 F.3d 1303 (Fed. Cir. 2004)............................................................................. 30

*Power Balance LLC v. Power Force LLC*,
No. SACV 10-1726 AG,
2010 U.S. Dist. LEXIS 136574 (C.D. Cal. Dec. 14, 2010) ..................................... 1

*QVC, Inc. v. MJC Am., Ltd.*,
No. 08-3830,
2012 WL 33026 (E.D. Pa. Jan. 6, 2012) ......................................................... 10, 12

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992)............................................................................... 22

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2010)............................................................................. 17

*Safeworks, LLC v. Spydercrane.com, LLC*,
No. 08-cv-0922-JPD,
2009 WL 3169151 (W.D. Wash. Sept. 29, 2009) ................................................. 11

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Sara Lee Corp. v. Sycamore Family Bakery, Inc.,*
    No. 2:09CV523,
4    2011 U.S. Dist. LEXIS 86966 (D. Utah Aug. 4, 2011) ........................................................ 23

5

*Schering Corp. v. Pfizer Inc.,*
    189 F.3d 218 (2d Cir. 1999) .................................................................................... 6, 11
6

7

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC,*
    285 F.3d 808 (9th Cir. 2002) ............................................................................... 6, 11, 12

8

*SEB, S.A. v. Montgomery Ward & Co.,*
    412 F. Supp. 2d 336 (S.D.N.Y. 2006) ................................................................................ 20
9

10

*SEC v. Jasper,*
    678 F.3d 1116 (9th Cir. 2012) ................................................................................... 14
11

12

*SmartPhone Techs. LLC v. HTC Corp.,*
    No. G:10cv580,
13    2012 WL 1424173 (E.D. Tex. Mar. 16, 2012) ................................................................... 23

14

*Spansion, Inc. v. ITC,*
    629 F.3d 1331 (Fed. Cir. 2010) .................................................................................. 23
15

16

*Stevens v. Moore Bus. Forms,*
    18 F.3d 1443 (9th Cir. 1994) ..................................................................................... 10

17

*Sun Hill Indus. v. Easter Unlimited,*
    48 F.3d 1193 (Fed. Cir. 1995) .................................................................................. 25
18

19

*T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc.*
    931 F.2d 816 (11th Cir. 1991) .................................................................................. 25
20

21

*THK America, Inc. v. NSK, Ltd.,*
    917 F. Supp. 563 (N.D. Ill. 1996) .............................................................................. 22

22

*TIG Ins. Co. v. Giffin, Winning, Cohen & Bodewes, P.C.,*
    No. 00 C 2737,
23    2002 U.S. Dist. LEXIS 24469 (N.D. Ill. Dec. 20, 2002) ...................................................... 22

24

*Tivo, Inc. v. EchoStar Commc'ns Corp.,*
    516 F.3d 1290 (Fed. Cir. 2008) .................................................................................. 23
25

26

*Tokai Corp.v. Easton Enters.,*
    632 F.3d 1358 (Fed. Cir. 2011) ................................................................................... 2
27

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Ultrapure Sys., Inc. v. Ham-Let Grp.,*
 921 F. Supp. 659 (N.D. Cal. 1996) ..................................................................... 11

*United States v. Boulware,*
 384 F.3d 794 (9th Cir. 2004) ............................................................................... 1

*WWP, Inc. v. Wounded Warriors, Inc.,*
 8:07CV370,
 2009 U.S. Dist. LEXIS 92509 (D. Neb. Sept. 21, 2009) ..................................... 23

*Zippo Mfg. Co. v. Rogers Imports, Inc.,*
 216 F. Supp. 670 (S.D.N.Y. 1963) ...................................................................... 10

STATUTES

15 U.S.C.
 § 1117 ................................................................................................................. 28
 § 1125(c)(2)(B) ................................................................................................. 5, 9

35 U.S.C.
 § 271(b) ............................................................................................................... 20
 § 289 .............................................................................................................. 27, 28

Fed. R. Evid.
 401 ....................................................................................................................... 1
 402 ..................................................................................................................... 25
 703 .................................................................................................................... 3, 7
 801(2) ................................................................................................................... 6
 801(d)(2)(B) ....................................................................................................... 11
 801(d)(2)(D) ....................................................................................................... 12
 803(3) .......................................................................................................... 2, 6, 10

OTHER AUTHORITIES

MCCARTHY ON TRADEMARKS § 19:144 (4th ed. 2012) ............................................. 25

MCCORMICK ON EVID. §185 (6th ed.) ...................................................................... 4

1   Apple opposes eight of Samsung's motions *in limine*, but not its fourth or tenth motion.

2   **I.   EVIDENCE OF PUBLIC PRAISE FOR APPLE'S IPHONE AND IPAD**

3   **AND THAT SAMSUNG COPIED APPLE'S PRODUCTS IS RELEVANT AND ADMISSIBLE.**

4   Samsung moves to exclude "evidence or argument not tied to the specific IP rights

5   claimed by Apple in this action," including: (a) praise for the Apple iPhone and iPad;

6   (b) Samsung documents showing that Samsung copied Apple; (c) evidence that others viewed

7   Samsung's products as similar to Apple's; and (d) evidence that design is important to Apple.

8   Samsung contends this evidence is irrelevant and inadmissible hearsay.  Samsung is wrong.

9   **A.   Evidence of the Success of the iPhone and iPad is Relevant and Admissible.**

10   Samsung objects to evidence that the iPhone and iPad have been successful and widely

11   praised, including media articles cited in the expert opinions of Russell Winer and Peter Bressler

12   and in Apple's complaint.  (Dkt. No. 1185-3 at 2 (filed under seal).)  Samsung's objections lack

13   merit.

14   **1.   Evidence of the iPhone's and iPad's Success is Relevant to the Fame of**

15   **Apple's Trade Dress, the Validity of Apple's Patents, Reasonable Royalty, and Samsung's Motive for Copying.**

16   Evidence is relevant if "it has any tendency to make a fact more or less probable than it

17   would be without the evidence."  Fed. R. Evid. 401.  "For evidence to be relevant" it need not

18   "'prove' anything.  Rule 401's only requirement is that the proffered evidence have a tendency to

19   prove a fact in issue . . . ."  *United States v. Boulware*, 384 F.3d 794, 805 (9th Cir. 2004).

20   Evidence of the iPhone's and iPad's success is relevant to Apple's case for multiple reasons.

21   First, widespread praise for the iPhone and iPad design shows that Apple's trade dress is

22   famous and distinctive, which is relevant to Apple's trade dress claims.  Indeed, this Court cited

23   media articles (such as *Time* magazine's "Invention of the Year" award to the iPhone) in finding

24   Apple's evidence of fame sufficient to raise a triable issue on Apple's trade dress dilution claim.

25   (Dkt. No. 1158 at 11; *see id* at 9 ("famous and distinctive" trade dress required); *Power Balance*

26   *LLC v. Power Force LLC*, Case No. SACV 10-1726 AG (MLGx), 2010 U.S. Dist. LEXIS 136574,

27   at *9 (C.D. Cal. Dec. 14, 2010) (media articles supported trade dress distinctiveness).)  The

28   challenged portions of Winer's report cite the *Time* award and other articles, such as the *New*

1    *York Times'* praise of the iPhone as "gorgeous," with a "shiny black" face, "rimmed by mirror-

2    finish stainless steel." (Dkt. No. 1023-02a at ¶¶ 61-62, Ex. 1 (filed under seal) (Winer Rebuttal

3    Report).)

4          Second, as this Court held in denying summary judgment, "evidence of praise for the

5    Apple iPhone, the commercial embodiment of the D'087 and D'677 Patents," is "probative

6    evidence of non-obviousness of a design patent." (Dkt. No. 1158 at 31, citing *Crocs, Inc. v. ITC,*

7    598 F.3d 1294, 1310-11 (Fed. Cir. 2010).) Samsung objects to this evidence as "directed

8    generally to the success of Apple's iPhone and/or iPad products, rather than the specific claimed

9    features of the design patents-in-suit." (Dkt. No. 1185-3 at 2.) This Court *has already rejected*

10   this argument, stating: "While Samsung contests whether the commercial success is tied to the

11   D'087 and D'677 Patents . . . , Apple has identified evidence from which a reasonable juror could

12   find the necessary nexus between the asserted patents and the secondary considerations." (Dkt.

13   No. 1158 at 31; *see Crocs,* 598 F.3d at 1310-11 (prima facie showing of success of patented

14   product shifts burden to defendant to present evidence of lack of nexus).)[1]

15         The iPhone's and iPad's success is also relevant because it gave Samsung a motive to

16   copy Apple's products to achieve similar success. In addition, it bears on the amount of a

17   reasonable royalty, as Apple's damages expert explains. (Dkt. No. 927-2 Ex. 3, at ¶¶ 195-96 &

18   n.186 (filed under seal).)

19               **2.      Evidence of the iPhone's and iPad's Success is Admissible Because it
                           Reflects the Declarant's State of Mind, and is Evidence on Which**
20                         **Apple's Experts Reasonably Rely.**

21         Samsung's hearsay objection to evidence of industry praise fails because media articles

22   lauding Apple's products is admissible as reflecting the "state of mind" of the reviewers. *See* Fed.

23

---

24   [1]  Samsung's cited cases are inapposite because they did not *exclude* evidence of success; rather,
     they found the evidence insufficiently persuasive, and thus go to the evidence's weight, not its
25   admissibility. *See Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008)
     (insufficient nexus "undermines the probative force" of evidence of success); *Tokai Corp.v.*
26   *Easton Enters.*, 632 F.3d 1358, 1369-70 (Fed. Cir. 2011) (evidence of success insufficient to
     rebut obviousness). Further, Apple's evidence includes praise for specific patented features, such
27   as the iPhone's "shiny black" face, which is a key part of the D'677 design.

28

R. Evid. 803(3); *see Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) (hearsay comments from confused consumers admissible under state-of-mind exception).  This evidence is also admissible because Apple's experts have relied on the media articles, which  are "of a type reasonably relied upon by experts in the particular field."  *See* Fed. R. Evid. 703; *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001) (admitting hearsay evidence because it was part of the basis for expert's report); *Chavez v. Carranza*, 559 F.3d 486, 497 (6th Cir. 2009) (newspaper articles reasonably relied upon by social science experts).  Samsung does not argue otherwise, and indeed this Court has already so held in its *Daubert* order finding that Winer "reasonably relied" on the cited evidence.  (Dkt. No. 1157 at 16.)

### B. Samsung Documents Showing that Samsung Copied the iPhone and iPad Are Relevant and Admissible.

From the outset of this case, Samsung has adamantly denied copying Apple products, arguing that it independently developed its products without any reference to Apple.  Now that Samsung has reluctantly produced (after multiple orders) evidence of copying, Samsung attempts to prevent the jury from seeing this evidence by asserting relevance and hearsay objections.

Samsung has produced voluminous copying documents, but focuses in its motion on those cited by Apple's expert Peter Bressler in his expert declaration opposing summary judgment, and specifically on an "internal design strategy document."  (Dkt. No. 1185-3 at 3-4.)  Yet, this Court *already relied* on the documents Mr. Bressler cites, as "evidence that Samsung took steps to copy the iPhone design," which is a secondary consideration of non-obviousness.  (Dkt. No. 1158 at 31); *see Crocs*, 598 F.3d at 1311 ("copying may indeed be another form of flattering praise" that "tips the scale in the direction of non-obviousness").  The specific document cited by Samsung concludes that ██████████████████████████████████████████████████████ ██████████████████████████ (Dkt. No. 1022-2 at ¶ 96; *see also* Dkt. No. 1022-2, Ex. 30 at SAMNDCA 00217380 (filed under seal).)  This shows that Samsung recognized ██████████ ██████████████, which supports Apple's trade dress claims.  It also shows that Samsung's designers ████████████████████████████, and thus had both a motive and the opportunity to copy Apple's designs.

1   The vague phrasing of Samsung's motion suggests it may be seeking to exclude other

2   documents it does not mention.  The Samsung copying documents identified as trial exhibits are

3   clearly relevant and admissible as business records and party admissions.  Examples include:

4   • A September 2007 Samsung internal analysis of the smartphone market that
5     concludes █████████████████████████████████████████████████████████
6     ████████████████████████████████ (Kanada Decl. Ex. 1.)

6   • A September 2008 internal Samsung email that reports Samsung should
7     ████████████████████████████████████████████████████
8     ██████████████████████████ (Kanada Decl. Ex. 2.)

8   • February 2010 minutes of a meeting ████████████████████████
9     ████████████████████████████████████████████████████████
10    ██████████████████ (Dkt. No. 736-3 Ex. 9 (sealed).)

11  • A 2011 Samsung Design Group analysis that concludes ██████████
12    ████████████████████████████████████████████ (Kanada Decl. Ex.
13    3.)

14  • A Samsung-commissioned analysis of its smartphone icons, which concluded
15    that ██████████████████████████████████████ (Kanada
      Decl. Ex. 4.)

16      Samsung's reference to evidence "not tied to the specific IP rights claimed by Apple in

17  this action" suggests that Samsung contends the evidence is irrelevant unless it relates specifically

18  to Samsung's ultimate acts of infringement.  But that is not the law.  "An item of evidence, being

19  but a single link in the chain of proof, need not prove conclusively the proposition for which it is

20  offered . . . A brick is not a wall." MCCORMICK ON EVID. §185 (6th ed.).  Samsung's copying of

21  the game-changing iPhone and iPad occurred through a chain of events.  Evidence that Samsung

22  admired Apple's beautiful designs and intuitive user interface, decided that Samsung needed to

23  emulate them, and created a plan to closely study and compare its product plans to Apple's design

24  and user interface is probative of copying, even if does not refer to specific Apple intellectual

25  property rights.  Evidence that Samsung's Mobile Division President encouraged Samsung

26  designers to ██████████████████████████████ for example, supports an inference that Samsung

27  copied the specific intellectual property in this case, especially when combined with evidence that

28

1    Samsung's products are strikingly similar and infringe Apple's intellectual property rights.  It also

2    refutes Samsung's "independent development" defense.

3              **C.      Evidence that Samsung's Products Are Viewed as Similar to the
                       iPhone and iPad is Relevant and Admissible.**

4

5              Samsung objects to evidence that Samsung's accused products are widely viewed as

6    copies of the iPhone and iPad, including media articles opining that Samsung's Galaxy S Vibrant

7    looks like the iPhone and a Samsung email noting that ███████████████████████████

8    ████████████      (Dkt. No. 1185-3 at 4 (filed under seal).)  As explained below and in

9    response to Samsung's overlapping Motion *in Limine* Number Two, Samsung's objections fail.

10             **1.      Evidence of Perceived Similarity of Samsung's Products is Relevant to
                       Apple's Design Patent and Trade Dress Claims, and to Willfulness and
11                     the Validity of Apple's Patents.**

12             The fact that industry reviewers considered Samsung's accused products to look similar to

13   the iPhone and iPad is relevant to Apple's design and trade dress claims.  The test for design

14   patent infringement is whether an ordinary observer would consider the appearance of Samsung's

15   products to be substantially the same as the patented designs.  *Egyptian Goddess, Inc. v. Swisa,*

16   *Inc.*, 543 F.3d 665, 678-79 (Fed. Cir. 2008) (en banc).   An element in the trade dress analysis is

17   the "degree of similarity" between Apple's trade dress and the accused products.  *See* 15 U.S.C. §

18   1125(c)(2)(B) (dilution by blurring); *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49

19   (9th Cir. 1979) (likelihood of confusion factors include "similarity of the marks"); *OG Int'l, Ltd. v.*

20   *Ubisoft Entm't*, No. C 11-4980, 2011 U.S. Dist. LEXIS 124020, at *9-10 (N.D. Cal. Oct. 26,

21   2011) (applying *Sleekcraft* test in trade dress case).  Apple's experts have opined on both subjects

22   and may reasonably support their views with evidence that others have reached similar

23   conclusions.

24             Evidence that Samsung knew (or was willfully blind to the fact) that others perceived its

25   products as very similar to Apple's is independently relevant.  That Samsung knew or should

26   have known it was infringing Apple's design patents is an element of willful infringement, and

27   knowing adoption of a similar mark is relevant to the "intent" prong of the likelihood of

28   confusion test.  (*See infra*, at 9.)

1    **2.    Evidence of Perceived Similarity of Samsung's Products is Not**
         **Inadmissible Hearsay.**

2

3        Samsung's hearsay objection to evidence that third parties consider Samsung's products to

4    look similar to the iPhone and iPad fails for multiple reasons.  First, statements that others

5    considered Samsung's products to look similar to Apple's are not hearsay when admitted to show

6    that Samsung knew or should have known of likely infringement, which is relevant to willful

7    infringement.  *See Henrob Ltd. v. Bollhoff Systemtechnick GmbH & Co.*, Case No. 05-CV-73214,

8    2009 U.S. Dist. LEXIS 107966 at *15 n.2 (E.D. Mich. Nov. 19, 2009).  Second, statements of

9    perceived similarity are also admissible as involving the declarant's state of mind.  Fed. R. Evid.

10   803(3); *Lahoti*, 636 F.3d at 509.  Third, Apple's experts have reasonably relied on evidence that

11   industry reviewers considered Samsung's products to look similar to the iPhone and iPad.  (*See,*

12   *e.g.,* Dkt. No. 935-6 at ¶¶ 104, 136; Kanada Decl. Ex. 5 at ¶¶ 282, 286; Dkt. No. 927-26 at ¶¶ 113

13   (filed under seal), 119-121, 155, 175-176, 187.)  (*See also*, *infra* at 8.)

14       The email opining that the Galaxy S ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is also admissible as a

15   party admission and business record.  It is an internal Samsung email from ▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,[2]  which conveys comments ▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮  (Dkt. No. 1185-7 at 1-3 (filed under seal).)  Because the email

19   reflects information from an official Samsung study, the comments are party admissions by

20   Samsung that do not constitute hearsay.  *See* Fed. R. Evid. 801(2); *Sea-Land Serv., Inc. v. Lozen*

21   *Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (hearsay email admissible where sender manifested

22   adoption or belief in truth of forwarded email); *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 238

23   (2d Cir. 1999) (market survey commissioned by opposing party admissible as adopted admission

24   where party employee's analysis manifested belief in trustworthiness of study); *Bodeans Cone*

25

26   ───────────────────

27   [2] Some email addresses are garbled, but the first page identifies the sender as

28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   *Co., L.L.C. v. Norse Dairy Sys., L.L.C.*, 678 F. Supp. 2d 883, 906 (N.D. Iowa 2009) (third-party

2   surveys admissible as adopted admissions where opposing party used and relied on the data).

### D.   Samsung's Objections to Other Evidence That it Contends is Not Linked to Apple's Infringement Claims Lack Merit.

5          Samsung's objections to several other types of evidence should be rejected.  First,

6   Samsung objects to Sanjay Sood's opinion that design is important to Apple and closely

7   associated with the Apple brand.  (Dkt. No. 1185-3 at 2.)  As explained above, the distinctive,

8   famous, and valuable nature of Apple's product designs is relevant to Apple's claims on the

9   merits and to damages.  Sood explains that Apple uses design as "a unique point of difference

10  around which the brand can be positioned."  (Dkt. 935-10 at ¶¶ 39-43, 51-55, 57-62.)  Sood's

11  discussion of how Apple's distinctive designs reinforce the consuming public's perception of

12  Apple as a company or brand is relevant.  Nor is there merit to Samsung's hearsay objections, as

13  the industry articles and other documents cited by Sood are "of the type reasonably relied upon by

14  experts" in the field of brand identity and value.  Fed. R. Evid. 703.

15         Second, Samsung objects to unspecified evidence concerning Steve Jobs.  The only

16  evidence Samsung mentions is Sanjay Sood's opinion that design is important "to Apple and/or

17  Steve Jobs."  (Dkt. No. 1185-3 at 2.)  That evidence is relevant to Apple's contention that Apple

18  places a high value on its patented designs and trade dress and, contrary to Samsung's assertion,

19  would never willingly license its designs.  Apple does not know what other evidence Samsung

20  seeks to exclude, but the fact that Steve Jobs was Apple's long-time Chief Executive Officer

21  makes a blanket exclusion of evidence relating to him inappropriate.

22         Third, Samsung objects on relevance grounds to evidence of other "wrongdoing" by

23  Samsung, citing deposition testimony by former Samsung Vice-Chairman and CEO Gee-Sung

24  Choi.  (Dkt. No. 1185-3 at 6.)  The documents discussed during this testimony show that

25  Samsung's LSI Logic business unit (which supplies components to Apple) ████████████

26  ███████████████████████████████████████████████████ (Dkt. No.

27  1185-9 (filed under seal).)  This evidence is relevant because it shows that ███████████

28  ████████████████████████████████████████████████████

1   ████████████████████████████████

2         In sum, Samsung's first motion *in limine* should be denied because Apple's copying

3   documents are individual bricks that together build a wall, and taken together they establish the

4   real reason that Samsung's products look so much like Apple's iPhone and iPad.

5   **II.**     **APPLE'S EVIDENCE THAT THE PUBLIC, THE MEDIA, ████████████**

                **████████ COMMENTED ON SAMSUNG'S COPYING IS**

6         **RELEVANT AND ADMISSIBLE.**

7         Samsung's second motion in limine seeks to exclude extensive evidence that it has known

8   for years that some of the public, the media, ████████████████ see its product designs

9   as confusingly similar to Apple's designs.  Such evidence is admissible because it shows

10   Samsung knowingly used designs similar to Apple's after being put on notice of the risk its

11   designs would be confused with Apple's designs, which suggests willful intent to trade on

12   Apple's goodwill.  It is also admissible because courts consistently hold that evidence of

13   consumer confusion is non-hearsay or admissible under the state-of-mind exception—a body of

14   law Samsung utterly ignores—and because presentations that Samsung created or adopted are

15   admissions of a party opponent.

16             **A.**     **Evidence of Commentary on Similarity and Confusion Between**

                      **Samsung's Products and Apple's Products is Relevant to Show Notice**

17                 **to Samsung.**

18         Apple's evidence shows that ████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████ Each of the documents specifically cited by Samsung is

21   relevant for this purpose and therefore admissible.  The documents Samsung cites in a footnote

22   show that ██████████████████████████████████████

23   ████████████████████████████████████

24   ██████ (Dkt. No. 1185-15, 16, 17, 18, 29 (filed under seal) (D'Amato Exs. K, L, M, N, Y).)

25   ████████████████████████████████████████

26   ████████████████████. (*See*, *e.g.*, Kanada  Decl. Ex. 7 at 4). ████████████

27   ████████████████████████████████████████

28   ████████████████████████████████████

1  ███████████████████████████████ (Dkt. No. 1185-13 (filed under seal).) ██

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████████████████

5  ███████████████████████████ (Dkt. No. 1185-11 (filed under seal) (D'Amato Ex. G).) ██

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  (Kanada Decl. Ex. 6.)

9        This evidence is relevant to issues of intent, willfulness, and inducement.  Samsung chose

10  to continue using designs that it knew were confusingly similar to Apple's, and that choice

11  strongly suggests an intent to trade on Apple's goodwill and reputation and to deceive consumers,

12  factors that are relevant to dilution and trade dress infringement.  *AMF, Inc. v. Sleekcraft Boats*,

13  599 F.2d 341, 354 (9th Cir. 1979) (knowing adoption of mark similar to another's relevant to

14  "intent" prong of *Sleekcraft*); *see also* 15 U.S.C. § 1125(c)(2)(B) ("intent to create an association"

15  element of dilution by blurring; *adidas-Am.*, *Inc. v. Payless Shoesource, Inc.* 546 F. Supp. 2d

16  1029 at 1061 (D. Or. 2008) (trade dress dilution damages claim requires showing defendant

17  "willfully intended to trade on the trademark owner's reputation or to cause dilution.").[3]

18  Samsung's knowledge of a risk that it was infringing Apple's design rights is relevant to

19  willfulness.  *In re Seagate Tech. LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007); *Bard Peripheral*

20  *Vascular v. W.L. Gore & Assocs.,* No. 2010-1510 , 2012 U.S. App. Lexis 13561, at *6 (Fed. Cir.

21  June 14, 2012).  And willful blindness to the fact that Samsung's American subsidiaries were

22  infringing Apple's design patent rights is relevant to proving that SEC induced infringement.

23  *Global-Tech Appliances, Inc., v. SEB S.A.,* 131 S. Ct. 2060, 2069 (2011); *ePlus, Inc. v. Lawson*

24  *Software, Inc.,* No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011).  Thus,

---

26      [3] Notably, Samsung has proposed jury instructions that (incorrectly) claim trade dress law prohibits copying "only in order to prevent consumer deception," and that "deliberate copying must be an intentional attempt to capitalize on a company's reputation or good will."  (Kanada Decl. Ex. 8).  Samsung's motion in limine seeks to exclude the strongest evidence that would show actionable copying under the instructions it hopes to submit to the jury.

1  evidence that Samsung received, reviewed, and even incorporated into its own internal

2  presentations, reports that Samsung's designs were confusingly similar to Apple's designs is

3  relevant in at least three ways.

4       Courts consistently hold that evidence offered to show notice or knowledge is not hearsay.

5  Even one of the cases Samsung cites so holds.  Samsung cites *QVC, Inc. v. MJC Am., Ltd.,* No.

6  08-3830, 2012 WL 33026, at *2 (E.D. Pa. Jan. 6, 2012), for the point that certain customer

7  comments could not be admitted for their truth under the business records exception, an argument

8  Apple is not making.  (*See* Dkt. No. 1185 at 8.)  However, *QVC* went on to hold that the customer

9  comments *were* admissible because "[r]egardless of [their] truth," they showed notice to the party

10  and awareness of the potential issue raised by consumers.  *QVC, Inc.*, 2012 WL 33026, at *3;

11  *accord*, *Stevens v. Moore Bus. Forms*, 18 F.3d 1443, 1449 (9th Cir. 1994) (statements offered to

12  show notice or knowledge not hearsay).  So, here, the avalanche of warnings from all

13  directions—and Samsung's failure to take corrective action—is highly relevant to intent,

14  willfulness and inducement, and is not hearsay when offered to prove these facts.

15           **B.**    **Evidence that Consumers Confused Samsung's Tablets with Apple's is**

16                      **Also Admissible to Show a Likelihood of Consumer Confusion.**

17       Independent of its relevance to show Samsung's knowledge and intent, the evidence at

18  issue is also relevant to show a likelihood of consumer confusion because each level of alleged

19  hearsay is either not hearsay or falls within a hearsay exception.

20       The first level of alleged hearsay— ██████████████████████████

21  ███████████████████████████████████—is not hearsay as it is not used for the

22  truth of the matter, and even if it were it would fall within the state-of-mind exception.  ██

23  ███████████████████████████████████████ falls squarely within

24  Fed. R. Evid. 803(3), which mentions motive and intent as examples of the state-of-mind hearsay

25  exception.  A ████████████████████████████████████████ is

26  not being offered for the truth of the matter—the statement is relevant precisely because it is *not*

27  *true.  Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 719 (3d Cir. 2004); *Zippo Mfg. Co. v.*

28  *Rogers Imports, Inc.*, 216 F. Supp. 670, 682 (S.D.N.Y. 1963) ("The weight of case authority, the

1  consensus of legal writers, and reasoned policy considerations all indicate that the hearsay rule

2  should not bar the admission of properly conducted public surveys.").  These are two examples of

3  the general point that consumer confusion evidence is admissible because a statement

4  demonstrating confusion a) falls under the state-of-mind exception to the hearsay rule, and b) is

5  not hearsay when it is not offered for the truth of the matter asserted.  *See Lahoti* 636 F.3d at 509

6  (9th Cir. 2011) (evidence of telephone calls from confused consumers admissible under state-of-

7  mind exception); *Kos Pharms., Inc.*, 369 F.3d at 719 (statements proclaiming confusion

8  admissible under state-of-mind exception, statements showing confusion admissible because they

9  are not submitted for their truth); *Safeworks, LLC v. Spydercrane.com, LLC*, No. 08-cv-0922-

10  JPD, 2009 WL 3169151, at *6 n.1 (W.D. Wash. Sept. 29, 2009)(evidence of consumer calling

11  party looking for parts produced by other party not hearsay because it was offered to demonstrate

12  *lack of truth*, or confusion, of caller); *Ultrapure Sys., Inc. v. Ham-Let Grp.*, 921 F. Supp. 659, 663

13  (N.D. Cal. 1996) (evidence of consumers questioning source of product not hearsay); *see also*

14  *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1074-75 (E.D. Cal. 2009) (noting

15  majority of circuit courts hold employee testimony regarding consumer confusion testimony not

16  hearsay).

17  　　　　The intervening level or levels of alleged hearsay— ██████████████████

18  ████████████████████████████████████████████ —is non-hearsay

19  as an adopted party admission under Fed. R. Evid. 801(d)(2)(B).  *See Sea-Land Serv. Inc. v.*

20  *Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (hearsay email admissible where sender

21  manifested adoption or belief in truth of forwarded email via remark, "Yikes, Pls note . . . .");

22  *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 238 (2d Cir. 1999) (market survey admissible as

23  adopted admission where party employee's analysis manifested belief in trustworthiness of

24  study); *Bodeans Cone Co., L.L.C. v. Norse Dairy Sys., L.L.C.*, 678 F. Supp. 2d at 906 (N.D. Iowa

25  2009) (third-party surveys admissible as adopted admissions where party used and relied on the

26  data).  Samsung argues that the ████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████████

1    ████████████████████████████████   In both cases, the Samsung employee

2    responsible for the final report adopted the alleged intervening hearsay statements and

3    incorporated them into the final presentations discussed above.  This is an even more affirmative

4    step showing belief in the truth of a statement than merely forwarding an email with a side remark

5    of, "Yikes," as in *Sea-Land Serv.*  285 F.3d at 821.

6         The final level of alleged hearsay—the document itself—constitutes an admission of a

7    party opponent, non-hearsay under Fed. R. Evid. 801(d)(2)(D).  Samsung cannot dispute that the

8    final reports were produced by Samsung employees operating within the scope of their

9    employment ██████████████████████████████████████

10   ████████████████████████████████████████████

11   ████████████████████████████████████████

12   ████████████████████████████████████████████

13   (Kanada Decl. Ex. 9; Dkt. No. 1185-22.)████████████

14   ████████████████████████████████████████

15   ████   (Kanada  Decl. Ex. 10 , Dkt. No. 1185-14 at 127:14-128:1 (filed under seal).)

16        Samsung does not cite a single case involving consumer confusion or declarant state-of-

17   mind, but instead focusses entirely on the business records exception.  (*See* Dkt. No. 1185-3 at 7-

18   8 (citing *Shimozono v. May Dep't Stores Co.*, No. 00-04261, 2002 WL 34373490, at *14 (C.D.

19   Cal. 2002) (party sought to introduce customer complaints regarding overcrowding of stores to

20   prove extent of overcrowding); *QVC, Inc. v. MJC Am.*, 2012 WL 33026, at *2 (admitting

21   customer complaints of defects to prove notice to defendant but not that defects existed); *Alkhatib

22   v. Steadman*, No. 10-342, 2011 WL 5553775, at *8 (S.D. Ala. Nov. 15, 2011) (party sought to

23   introduce anonymous survey responses reporting past discriminatory statements to prove

24   discriminatory statements were made); *T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc.*,

25   931 F.2d 816 (11th Cir. 1991) (party sought to introduce telephone survey responses reporting

26   allegedly tortious statements to prove statements were made)).)  These cases are off point because

27   Apple does not rest on the business records exception, but on the state-of-mind exception and the

28   point that the statements are not hearsay if party admissions or presented for reasons other than

the truth of the matter asserted.  The only two cases Samsung cites that speak to confusion are

out-of-circuit decisions on the summary judgment standard that have nothing to do with exclusion

of evidence.  (*Id.* at 9 (citing *Nora Bevs., Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d

Cir. 2001) (no triable issue of fact where plaintiff *de minimis* evidence of confusion); *Universal

Money Ctrs., Inc. v. AT&T Co.*, 22 F.3d 1527, 1535 (10th Cir. 1994) (*de minimis* evidence of

actual confusion does not establish existence of genuine issue of material fact).)

> **C.** **Evidence that Samsung Knew its Tablet Design was Confusingly Similar to Apple's Designs is Not Substantially More Prejudicial than Probative.**

Samsung's final argument that the ██████████████████████████████████████

███████████████████ should be excluded under Rule 403 is meritless.  Evidence of actual

confusion is highly probative of a likelihood of confusion (*Official Airline Guides v. Goss*, 6 F.3d

1385, 1393 (9th Cir. 1993), and evidence that Samsung was on notice of the potential confusion

between Apple's iPad designs and Samsung's tablets is relevant to intent, willfulness and

inducement, as set out above.  ████████████████████████████████████████████

████████████████████████████████████████████ but the law has never required

such a specific showing.  *See, e.g.*, *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1265

(9th Cir. 2001) (evidence that respondents shown photographs of one establishment thought it

was owned or operated by other establishment was "significant evidence of actual confusion,"

without any showing of what particular features drove that decision).  ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ (Dkt. No. 1185-3 at 10 (filed under seal)) ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ In any event, these arguments, and Samsung's attempt to

1    explain away the apparent confusion, do not show "unfair prejudice" that would "substantially

2    outweigh[]" the probative value of the evidence, as Rule 403 requires.  "That an exhibit contains

3    ambiguities generally goes to the weight and not the admissibility of the evidence."  *SEC v.*

4    *Jasper*, 678 F.3d 1116, 1124 (9th Cir. 2012) (rejecting Rule 403 argument).

5    **III.    APPLE TIMELY DISCLOSED ITS INFRINGEMENT THEORIES.**

6         Samsung's Motion *in Limine* No. 3 makes four requests for relief, that the Court exclude:

7    (a) certain Samsung products; (b) design patent infringement theories beyond the "level of detail"

8    disclosed in Apple's Interrogatory responses; (c) certain functionality arguments in support of

9    design patent infringement; and (d) any indirect infringement arguments as to design patents.

10   These requests are meritless, as shown below. [4]

11        **A.    Apple Timely Disclosed the Samsung Products at Issue.**

12        **Galaxy S II**.  Apple's Amended Complaint alleged that "Samsung will soon import or

13   sell in the United States the Galaxy S II (aka Galaxy S2) phone, which will infringe Apple's

14   patent, trade dress, and/or trademark rights."  (Dkt. No. 75 ¶ 92.)  As Samsung admits, Apple also

15   identified the Galaxy S II in a timely served Addendum to its Infringement Contentions, on

16   August 26, 2011.  (Dkt. No. 1185 at 11.)  These disclosures encompass all five Galaxy S II

17   versions that Apple accuses in this action.  The Galaxy S II (i9100) was the only Galaxy S II on

18   the market at the time Apple served its Infringement Contentions, but Apple used the broader

19   product title, "Galaxy S II," in its contentions, and Samsung does not dispute that the Galaxy S II

20   Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S II (AT&T), and Galaxy S II (T-Mobile) are all

21   versions of the "Galaxy S II."  (Dkt. No. 1185 at 12-13.)  Samsung's website refers to all four of

22   those products as the "Galaxy S II."  (Dkt. No. 822-9 ¶ 4, Ex. 2; Kanada Decl. Ex. 28, 29.)

23   Samsung's source code production in response to Judge Grewal's orders even included source

24   code for the Galaxy S II (T-Mobile).   Dkt. No. 1044-1 at 2 (acknowledging production of Galaxy

---

25   [4] Samsung's request to exclude its Galaxy Tab 7.0 Plus product is moot since Apple does
26   not intend to assert any claims at trial based on that product.  (*See* Dkt. No. 1189 at 1-3.)  In the
     parties' Pretrial Statement, Samsung noted that it would seek to exclude its Gem product for
27   purposes of the '381 Patent (*see id.* at 3), but has chosen to omit that request from its Motions *in*
     *Limine*.
28

1  S II (T-Mobile) source code and arguing its relevance on ground that the product is "at issue in

2  this litigation").

3      In addition, for purposes of Apple's design patent and trade dress claims, Apple analyzed

4  all five Galaxy S II versions as accused products in its March 4, 2012 response to Samsung's

5  Interrogatory No. 5.  (Kanada  Decl. Ex. 11 at 10.)  That was six days before the deadline for

6  written discovery.  Samsung cites no authority for excluding products properly identified during

7  fact discovery.  Indeed, in Apple's motion to strike Samsung's untimely disclosures, Apple did

8  *not* seek to exclude numerous Samsung theories relating to design patent and trade dress

9  functionality that were disclosed for the first time on March 7, 2012.  (Kanada Decl. ¶13.)  The

10  same disclosure standard should apply here.  Moreover, Samsung was not in any way prejudiced

11  by the timing of Apple's disclosure.  Its design patent and trade dress infringement experts

12  addressed all of the Galaxy S II versions in their reports.  (*See* Dkt. No. 939-4 Ex. 29 at 46 n.57

13  (filed under seal); Kanada  Decl. Ex. 12 at 2-3.)

14      **Galaxy Tab 10.1 LTE, Galaxy S Showcase (i500), and Gravity Smart**.  Apple

15  identified all of these products in its Infringement Contentions.  (Dkt. No. 801-5 at 2.)  The

16  Galaxy Tab 10.1 (LTE) is a version of the Galaxy Tab 10.1 that differs from the Galaxy Tab 10.1

17  (Wi-Fi) only in that it includes a feature allowing internet connectivity over a 4G LTE cellular

18  network.  (Dkt. No. 822-9 ¶ 9, Ex. 8.)  Apple's utility patent claims do not in any way depend on

19  that feature, and Apple's Infringement Contentions accusing the Galaxy Tab 10.1 were not

20  limited to the Wi-Fi version..

21      Apple's Infringement Contentions also identified the Galaxy S Showcase (i500), albeit

22  using a slightly different name, the "Showcase Galaxy S."  (Dkt. No. 801-5 at 2.)  Samsung does

23  not argue that these are different products.

24      Apple's Infringement Contentions also identified the "Gravity" as an accused product.

25  (Dkt. No. 801-5 at 2.)  That disclosure was intended to apply to the Gravity Smart, and Samsung

26  has known as much since no later than early February.  (*See* Dkt. No. 713 at 4.)  Apple further

27  confirmed that the Gravity Smart was the subject of the asserted utility patent claims in its March

28

1   8, 2012 response to Interrogatory No. 5.  (*See* Dkt. No. 1185-2 at 2.)  Samsung does not claim any

2   prejudice or confusion on this point.

3           **Captivate, Galaxy Ace, Droid Charge, Continuum, and Epic 4G.**  Apple identified all

4   five of these products as accused products for purposes of all claims, including its trade dress

5   claims, in its March 8, 2012 response to Samsung's Interrogatory No. 5.  (Dkt. No. 1185-21 at 3.)

6   That was two days before the deadline for written discovery.  Samsung cites no authority for

7   excluding contentions timely disclosed in a party's pleadings and discovery responses.

8   Moreover, Apple's original response to that Interrogatory, served on September 12, 2011,

9   asserted that the Captivate, Galaxy Ace, Droid Charge, Continuum, and Epic 4G products

10   infringe Apple's GUI design patents, so Samsung was on notice that these products were at issue

11   in the case.

12           Samsung argues that the products discussed above should be excluded because Apple

13   stated in February 2012 that no additional products should be added to the case.  Apple stands by

14   that statement, but Samsung's instant motion would exclude versions of products that have been

15   accused in this case since last summer.

16       **B.      Judge Grewal Has Already Ruled That Apple Timely Disclosed its Design
17               Patent Infringement Theories.**

18           Samsung seeks to preclude Apple from presenting design patent infringement arguments

19   and evidence that go beyond the "level of detail" disclosed by Apple in response to Samsung's

20   Interrogatory No. 72.  ( Dkt. No. 1185 at 13-14.) The parties have already litigated this issue, and

21   Samsung lost.  In its motion to strike Apple's expert reports, Samsung argued that numerous

22   theories raised in the expert report of Peter Bressler should be stricken because Apple failed to

23   disclose them in its response to Interrogatory No. 72.  (Dkt. No. 934-3 at 6.)  Judge Grewal

24   denied Samsung's motion (Dkt. No. 1144 at 7), and Samsung improperly relitigates it here.

25           In any event, Apple's response to Interrogatory 72 was far from "perfunctory."  It spanned

26   58 pages and was more than adequate to put Samsung on notice of Apple's infringement

27   arguments.  (Dkt. No. 1185-23 at 94-151 (filed under seal).)  As Samsung acknowledged

28

1   previously, a party's interrogatory responses are "not required to provide the same level of detail

2   that may ultimately be needed for it to support" its position at trial.  (Dkt. No. 1000 at 2.)

3   **C.      Apple Should Not Be Precluded From Any Arguments Relating to "Factoring**

4   **Out" Any Functional Elements of the Asserted Design Patents.**

5   Samsung's argument on this subject is confused and baseless.  Samsung argues Apple

6   should be prevented from arguing "that it factored out any functional elements," then states Apple

7   should be precluded from arguing that "any similarity between the Apple patent and the Samsung

8   product is due to the remaining ornamental features."  (Dkt. No.1185 at 14.)  But even if a

9   patented design incorporates functional elements, the infringement test still evaluates "the

10  similarities in the overall design, *not* of similarities in ornamental features in isolation."

11  *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) (emphasis added).

12  Accordingly, *no* party should be analyzing similarity merely based on specific ornamental

13  features.  In any event, Apple's position has always been that the asserted Apple designs are

14  substantially the same in overall visual appearance as the corresponding portion of each accused

15  Samsung product.  (*See, e.g.*, Dkt. No. 1185-23 at 96 (filed under seal).)  If the Court determines

16  through claim construction that certain features are functional and should be factored out, Apple

17  should not be precluded from arguing that the overall visual impressions of the patented designs

18  and the accused products remain substantially similar even with those features factored out, as

19  this would be entirely consistent with Apple's position throughout this litigation.

20  **D.      Apple Timely Disclosed its Indirect Infringement Theories.**

21  Samsung's argument on this point fails for multiple reasons. First, Apple's Amended

22  Complaint clearly disclosed a theory of indirect infringement in its Prayer for Relief, where it

23  requested an order enjoining Samsung "from directly or indirectly infringing or diluting" the

24  intellectual property rights asserted by Apple, including its design patents.  (Dkt. No. 75 at 61.)

25  Second, Apple's Infringement Contentions explicitly stated, under the heading "Indirect

26  Infringement," that "Samsung induces the infringement of others under 35 U.S.C. § 271(b)."

27

28

1   (Dkt. No. 801-5 at 3.)  Nothing in that portion of Apple's Infringement Contentions limited

2   Apple's indirect infringement theory to utility patents.

3          Third, Apple's September 12, 2011 response to Samsung's Interrogatory No. 7 disclosed

4   Apple's indirect infringement position.  Specifically, Apple disclosed its contentions that

5   Samsung (through at least one of its entities) directly infringed the patents at issue, and that the

6   Korean parent company, SEC, knew of the patents at issue and of the alleged infringement.

7   Interrogatory No. 7 defined "Samsung" as SEC and its two American subsidiaries.  (Dkt. No.

8   1185-11 at 2.)  Adopting that definition, Apple asserted that Samsung engaged in conduct that

9   directly infringed Apple's patents.  (Dkt. No. 817-2.)  Apple further asserted that Samsung

10  (including SEC) knew of the Apple patents at issue and knew of their infringement by Samsung

11  entities.  For example, Apple stated that, in August 2010, Apple representatives met with SEC in

12  Korea to "show[] a presentation titled 'Samsung's Use of Apple's Patents in Smartphones.'"

13  (Dkt. No. 817-2.)  That presentation "emphasized Samsung's copying of the iPhone and

14  identified two of the patents-in-suit."  (*Id.*)

15         These contentions, if proven at trial, will establish SEC's liability for indirect

16  infringement of the asserted patents and trade dress.  *See* N.D. Cal. Model Patent Jury Instr.

17  B.3.9.  As such, they disclosed Apple's indirect infringement theory.

18  **IV.     APPLE DOES NOT OPPOSE SAMSUNG'S MOTION TO EXCLUDE EVIDENCE**
           **OF THE DECISIONS OF OTHER COURTS AND TRIBUNALS.**
19

20         Apple has moved *in limine* to exclude evidence of the decisions of other courts and

21  tribunals concerning Apple's and Samsung's patents.  Apple sees no reason to carve out from this

22  exclusion order decisions "involving the patents at issue in this case."  (Dkt. No. 1185 at 15.)

23  Apple believes that all such decisions are properly excluded as irrelevant, potentially prejudicial,

24  and hearsay (although a party's statements made in another litigation forum may be admissible

25  under appropriate circumstances, and Samsung does not argue otherwise).

26

27

28

1  **V.      THE JURY HAS A RIGHT TO HEAR THAT SAMSUNG CONTINUED SELLING**
**INFRINGING PRODUCTS AFTER BEING TOLD BY U.S. COURTS THAT IT**
2  **LIKELY INFRINGED PATENTS-IN-SUIT, AND THAT SAMSUNG**
**ATTEMPTED TO PREVENT CERTAIN FACTS FROM COMING TO LIGHT IN**
3  **THIS LITIGATION.**

4       This Court's and the Federal Circuit's rulings on Apple's motion for a preliminary

5  injunction are relevant to contested issues of fact in this case, as are the sanctions orders Judge

6  Grewal has entered.

7              **A.      The Preliminary Injunction Decisions Are Relevant to Willfulness and**
**Inducement.**
8

9       The preliminary injunction rulings – and Samsung's failure to modify its behavior

10 immediately in light of them – are relevant to issues of willfulness and inducement.  To prove

11 willfulness, Apple has to prove that Samsung knew or should have known of the risk that it was

12 infringing Apple's design and utility patents.  *In re Seagate Tech. LLC,* 497 F.3d 1360, 1371

13 (Fed. Cir. 2007); *Bard Peripheral* 2012 U.S. App. Lexis 13561 at *6.  To prove inducement,

14 Apple has to prove that SEC knew or was willfully blind to the fact that the activities of

15 Samsung's American subsidiaries infringe.  *Global-Tech Appliances, Inc., v. SEB S.A.,* 131 S. Ct.

16 2060, 2069 (2011); *ePlus, Inc. v. Lawson Software, Inc.,* No. 3:09cv620, 2011 WL 3584313, at

17 *5 (E.D. Va. Aug. 12, 2011) ("[k]nowledge of the patent may be established by a finding that [the

18 alleged infringer] had actual knowledge of the patent or that [the alleged infringer] deliberately

19 disregarded a known risk that ePlus had a protective patent.").

20      On December 2, 2011, this Court handed down a preliminary injunction decision that

21 found Samsung was likely infringing two valid Apple patents.  The Court found that two of

22 Samsung's phones "likely infringe[] upon the D'677 patent" and that "Samsung has not raised

23 'substantial questions' regarding the validity of the D'677 Patent."  (Dkt. No. 452 at 24:15-16,

24 26:13-16, & 27:22-23.)  The Court likewise found that various Samsung products likely infringe

25 the '381 patent, and that Samsung has not raised substantial questions regarding the validity of

26 the '381 patent.  (*Id.* at 61:2-3.)  The fact that Samsung has known of this decision for more than

27 seven months *and yet continues to sell infringing phones in the U.S. market today* is probative of

28 the fact that Samsung has carried out its infringing activities in spite of knowing that it is

1  infringing Apple's valid patents.  (Dkt. No. 991-20, Ex. B; Dkt. No. 939-4, Ex. 17 (filed under

2  seal); Kanada Decl. Ex. 14, 15, 18-37.)

3       The Federal Circuit's decision is similarly relevant because it establishes Samsung's

4  knowledge as of May 14, 2012.  On that date, the Federal Circuit affirmed this Court on the

5  D'677 Patent; found that the same phones likely infringe a second valid Apple patent (D'087);

6  and found that Samsung's Tab 10.1 likely infringes another valid Apple patent (D'889).  *Apple,*

7  *Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1326-27, 1332-33 (Fed. Cir. 2012).  Yet

8  Samsung did not immediately withdraw its infringing products from the U.S. market.  Indeed,

9  although forced by this Court's order of June 26, 2012, to withdraw the Tab 10.1 from the U.S.

10  market, Samsung still continues to sell other products that infringe Apple's patents in the same

11  way as the Tablet 10.1.  (Kanada Decl. Exs. 16, 17, 38.)  This is further evidence of Samsung's

12  willful infringement, and the jury deserves to hear of it.  *See Itar-Tass Russian News Agency v.*

13  *Russian Kurier,* 95 Civ. 2144, 1997 U.S. Dist. LEXIS 8297, at *3-4 (S.D.N.Y. June 10, 1997)

14  (copyright infringement was blatant and willful when defendant continued to publish articles not

15  covered by a preliminary injunction).

16       Other courts in similar circumstances have held that juries should learn of a preliminary

17  injunction where the injunction was relevant to the jury's determination of a party's state of mind.

18  *See, e.g., SEB, S.A. v. Montgomery Ward & Co.,* 412 F. Supp. 2d 336, 337, 344 (S.D.N.Y. 2006)

19  (a reasonable jury could consider the fact that a defendant continued to sell a redesigned product

20  after a preliminary injunction finding infringement for purposes of determining intent and

21  induced infringement under § 271(b)); *Cordis Corp. v. Boston Sci. Corp.,* Civ. No. 03-27, 2010

22  U.S. Dist. LEXIS 7197, at *7-8 (D. Del. Jan. 28, 2010) (jury given summary of preliminary

23  injunction for purposes of willfulness under *Seagate*).

24       Samsung's failure to stop infringing Apple's patents even after two federal court decisions

25  held that it was likely infringing valid Apple patents is evidence the jury is entitled to consider as

26  long as Samsung is contesting either willfulness or inducement.

27

28

1    **B.    Samsung's Discovery Tactics Demonstrate Samsung Was Aware of and Sought to Hide its Infringement.**

2

3    Samsung's tactic of withholding documents in violation of court orders is also relevant to

4    proving willfulness and inducement, as well as to establishing the unreliability of some of

5    Samsung's financial records, because it shows Samsung's efforts to avoid having the truth about

6    its conduct come to light.

7    Judge Grewal has repeatedly sanctioned Samsung for failing to produce critical

8    documents.  Judge Grewal ordered Samsung to produce copying and survey documents, first on

9    September 28, 2011 and again on December 22, 2011.  (Dkt. Nos. 267 & 537.)  Samsung's failure

10   to comply led Judge Grewal to issue sanctions against Samsung on April 23, 2012. (Dkt. No.

11   880.)  Samsung next refused to comply with Judge Grewal's January 27, 2012 order to produce

12   sales and financial documents.  (Dkt. No. 673.)  This refusal also led to sanctions on April 23,

13   2012. (Dkt. No. 880.)  Finally, Samsung's refusal to abide by Judge Grewal's December 22, 2011

14   order led to sanctions on May 4, 2012 for failure to produce source code.  (Dkt. No. 898.)  This

15   pattern of behavior demonstrates both the lengths to which Samsung went to delay Apple's

16   discovery of incriminating evidence and Samsung's willingness to mislead both Apple and the

17   Court.

18   While continuing to sell products that this Court found were likely infringing Apple

19   patents, Samsung simultaneously avoided producing in the litigation highly relevant documents.

20   As Judge Grewal stated with respect to Samsung's withholding of copying documents and survey

21   documents, "Samsung's belated production of these documents directly contradicts counsel's

22   multiple representations to this court that the type of documents Apple sought did not exist. Even

23   more troubling is Samsung failure to address the inaccuracy of these earlier representations to the

24   court." (Dkt. No. 880 at 9:14-16.)  Survey documents indicating market opinions regarding

25   Apple's products and documents relating to whether and/or how Samsung copied the designs of

26   these products are relevant to whether Samsung's infringement was willful.  Steps taken by

27   Samsung to keep this information from coming to light suggest that Samsung knew the

28

1    documents were likely to show its own copying. The pattern of noncompliance is reflective of

2    Samsung's state of mind.

3         Samsung adopted similar tactics to prevent Apple from discovering the scope of its profits

4    unjustly earned from infringement. Judge Grewal ordered Samsung to produce sales, financial,

5    and marketing data necessary to determine the amount of sales of the accused products. (Dkt. No.

6    673 at 15:15-23.)  It failed to do so.  In sanctioning Samsung, Judge Grewal noted that there were

7    multiple versions of Samsung's financial data (his order refers to at least three) that contained

8    "errors that require additional iterations of what Samsung insists was an accurate and complete

9    spreadsheet ." (Dkt. No. 880 at 14:25-15:2.)  This data goes to the heart of the parties' damages

10   calculations. When Samsung's damages expert presents to the jury a profit calculation that is less

11   than Apple's by roughly a billion dollars, the jury deserves to understand the context for the

12   financial information on which he relies.  They deserve to know that that the financial

13   information on which Samsung relies is just the most recent set of numbers in a long series of

14   late-produced, inaccurate, and incomplete versions of Samsung's financial data.

15        Samsung's multiple instances of sanctionable discovery conduct tend to show Samsung

16   knew of its risk of infringement.  *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 827 (Fed. Cir. 1992)

17   (attempt to conceal misconduct a willfulness factor).  The probative value of this evidence

18   outweighs any prejudice concerns.  *See, e.g., THK America, Inc. v. NSK, Ltd.*, 917 F. Supp. 563,

19   573-74 (N.D. Ill. 1996) (denying  motion to exclude evidence of pretrial sanctions, noting that

20   one factor in determining willfulness is an infringer's behavior during litigation); *TIG Ins. Co. v.*

21   *Giffin, Winning, Cohen & Bodewes, P.C.,* No. 00 C 2737, 2002 U.S. Dist. LEXIS 24469, at *1-*3

22   (N.D. Ill. Dec. 20, 2002) (allowing evidence of sanctions order from another case because that

23   order was the basis for this subrogation lawsuit and showed "the seriousness of the alleged

24   negligence" leading to sanctions).  Rule 37(c)(1)(B) of the Federal Rules of Civil Procedure

25   expressly contemplates informing the jury of sanctionable discovery misconduct.  Samsung cites

26   no authority for the proposition it should be excluded here.  Indeed, Samsung's only authority in

27   support of this motion *in limine* is a pair of cases that appeal preliminary injunctions that have no

28   bearing on the question of what evidence is admissible in jury trial.  (*See* Dkt. No. 1185 at 16

1  (citing *Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415 (9th Cir. 1984); *Jack*

2  *Guttman, Inc. v. Kopykake Enterprises, Inc*., 302 F.3d 1352 (Fed. Cir. 2002)).)

3          Here, any prejudice is of Samsung's own making and thus cannot justify exclusion.  *Sara*

4  *Lee Corp. v. Sycamore Family Bakery, Inc.,* No. 2:09CV523, 2011 U.S. Dist. LEXIS 86966, at

5  *10 (D. Utah Aug. 4, 2011) ("Evidence of disobeying court orders undoubtedly looks bad to a

6  jury. But, the court notes that Defendants brought about that prejudice themselves by disobeying

7  court orders.").  Preliminary injunctions have similarly been admitted over FRE 403 objections.

8  *WWP, Inc. v. Wounded Warriors, Inc.,* 8:07CV370, 2009 U.S. Dist. LEXIS 92509, at *4-5 (D.

9  Neb. Sept. 21, 2009) (motion in limine denied when any potential jury confusion from evidence

10  regarding court's previous grant of preliminary injunction could be addressed through limiting

11  instruction).

12  **VI.   APPLE'S EXPERTS WILL PROVIDE SUFFICIENTLY SPECIFIC EVIDENCE**
13        **OF SAMSUNG'S INFRINGEMENT.**

14          Apple has not made, and does not intend to make, "broad sweeping generalizations"

15  regarding the operation of accused Samsung products.  Samsung misrepresents both Dr.

16  Balakrishnan and Dr. Singh's expert reports when it claims that they failed to analyze each of the

17  accused products against each asserted patent claim.  (Dkt. No. 1185 at 17:13-18:7.)  Dr.

18  Balakrishnan did in fact test every single accused product.  (Dkt. No. 935-16 at ¶17; Kanada

19  Decl. Ex. 39.)  So did Dr. Singh.  (Kanada Decl. Ex. 40.)

20          Apple has focused on certain products for more in-depth analysis of Samsung's

21  infringement, but this practice is well supported by Federal Circuit and district court case law.

22  "There is nothing improper about an expert testifying in detail about a particular device and then

23  stating that the same analysis applies to other allegedly infringing devices that operate similarly,

24  without discussing each type of device in detail."  *Tivo, Inc. v. EchoStar Commc'ns Corp.*, 516

25  F.3d 1290, 1308 (Fed. Cir. 2008).  *See also Spansion, Inc. v. ITC,* 629 F.3d 1331, 1350 (Fed. Cir.

26  2010) (court accepted 52 models as representative of all semiconductor packages at issue because

27  expert offered "specific and substantial" evidence about why other packages would behave

28  similarly to the 52 he tested); *SmartPhone Techs. LLC v. HTC Corp.*, No. G:10cv580, 2012 WL

1424173, at *1 (E.D. Tex. Mar. 16, 2012) (accepting two smart phones as representative products

for claims of nine different patents against over twenty different smart phones); *Ecolab, Inc. v.*

*Envirochem, Inc.*, 264 F.3d 1358, 1363 (Fed. Cir. 2001) (accepting plaintiff's extrapolation from

representative chemicals absent evidence from defendant that extrapolation was improper).

Samsung's arguments go to the weight of Apple's expert testimony, not its admissibility.

Where Apple has subjected an infringing product to particularly close scrutiny, that analysis is

direct evidence of infringement by that product.  With an appropriate foundation, it may also be

circumstantial evidence that other products infringe.  Apple may properly rely on circumstantial

evidence to prove infringement. [5]   *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209,

1219 (Fed. Cir. 2006) (patentee may prove direct infringement by either direct or circumstantial

evidence).

## VII.   APPLE'S PHOTOGRAPHS WILL APPROPRIATELY DEPICT THE ACCUSED PRODUCTS.

Samsung's motion to exclude resized photographs of the accused products should be denied

for at least three reasons.  First, the jury will not have to rely on photographs since it will have

physical products to consider and compare.  Apple's proposed joint exhibit list includes the Apple

and Samsung products at issue in the case (Dkt. No. 1189-7), and Apple will encourage the jury

to consider the physical products as it deliberates.

Second, Samsung's motion is a speculative objection to evidence Apple has not yet offered,

and the Court can better adjudicate any actual objections on a case-by-case basis.  Should

Samsung object to a particular depiction of one its products, it will have an opportunity to make

that objection out of hearing of the jury before the photograph is proffered, at least under Apple's

---

[5] Apple may also rely on Judge Grewal's order awarding evidentiary sanctions for Samsung's prolonged and egregious failure to produce source code in response to discovery obligations and court orders.  (Dkt. No. 898, 7:12-8:7).  The order allows Apple to treat a product whose source code Samsung timely produced as representative of all units of that product sold in the United States, whether or not Samsung subsequently modified the source code for that product to design around one or more of the patents-in-suit.  (*Id.* at 9:7-13.)

1   proposal that the parties exchange demonstratives as well as evidence two days before their use at

2   trial to allow the other party an opportunity to object.  (Dkt. No. 1189 at 15.)

3        Third, size doesn't matter for the purposes of Apple's design patent infringement claims, as

4   size is not a claimed element of Apple's designs. (*See, e.g.*, Dkt. No. 1089-8 at 1.)  Therefore, the

5   relative size of the accused Samsung products as compared to Apple products does not affect the

6   analysis of design patent infringement.  *See Sun Hill Indus. v. Easter Unlimited*, 48 F.3d 1193,

7   1196-97 (Fed. Cir. 1995).

8   **VIII.   APPLE'S EVIDENCE OF DAMAGES PRIOR TO APRIL 2011 IS RELEVANT TO ITS UNREGISTERED TRADE DRESS CLAIMS AND IN ANY EVENT CANNOT BE EXCLUDED BY A MOTION *IN LIMINE*.**

9

10       Samsung's motion for exclusion of all evidence of Apple's damages before April 2011

11  rests on three arguments: 1) a legal argument that Apple cannot recover *any* damages for its IP

12  before the filing of its complaint, 2) a procedural argument that the Court can resolve a disputed

13  factual issue about when Apple gave Samsung notice using a motion *in limine*, and 3) a factual

14  argument that Apple has no evidence showing actual notice prior to its complaint.  None of these

15  is correct.

16       Evidence is admissible if it is relevant to any disputed issue, Fed. R. Evid. 402, and

17  Apple's evidence of damages prior to April 2011 is relevant to at least its trade dress damages.

18  Samsung claims the evidence cannot be used to show damages for Apple's patents.  Samsung is

19  wrong, but that does not matter to the question whether the evidence should be admitted in light

20  of its separate relevance to Apple's trade dress claim.  Apple can recover damages for Samsung's

21  violations of Apple's unregistered trade dress regardless of the date on which it gave Samsung

22  notice.  *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 306 (S.D.N.Y. 2002); *see also*

23  MCCARTHY ON TRADEMARKS § 19:144 (4th ed. 2012).  This principle by itself resolves

24  Samsung's motion and provides that the evidence of damages before the complaint was filed

25  should come in.[6]

26  _____

27       [6] As discussed below, if the Court concludes that patent damages cannot accrue until the complaint was filed – a position with which Apple strongly disagrees – the proper way to address this is by instruction not by excluding evidence relevant to relief for Apple's other claims.

28

1          Furthermore, Samsung cannot use a motion *in limine* to resolve a disputed factual issue

2    about when notice occurred.  This Court already ruled on this very issue in favor of Apple.

3    "Samsung's objection turns on a factual dispute as to when Samsung received actual notice, and

4    is not a proper ground for excluding Mr. Musika's expert damages testimony."  (Dkt. No. 1157 at

5    13:17-18.)  Like a *Daubert* motion, "a motion *in limine* should not be used to resolve factual

6    disputes or weigh evidence…because that is the province of the jury."  *Lopes v. Viera*, Case No.

7    1:06-CV-01243 JLT, 2012 U.S. Dist. LEXIS 27990 (E.D. Cal. March 2, 2012); *C & E Servs., Inc.*

8    *v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) (attempt to use a motion *in limine* to

9    preclude a claim lacking evidentiary support must fail).  A motion *in limine* is not a substitute for

10   a motion for summary judgment because a motion *in limine* is not subject to the same procedural

11   safeguards as a motion for summary judgment.  *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d

12   1064, 1069-70 (3d Cir. 1990).

13         Courts have repeatedly recognized that the question of "actual notice" sufficient to give

14   rise to pre-complaint damages is a fact-intensive inquiry reserved for the jury.  *Coupe v. Royer*,

15   155 U.S. 565, 584-85 (1895) (holding that where plaintiffs presented evidence of actual notice

16   and defendants offered evidence that they did not receive notice, the "court ought to have

17   submitted that question to the jury"); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed.

18   Cir. 2008) (trier of fact must take into account the history of the relationship between the parties

19   when determining whether a communication was "sufficiently specific" to give rise to actual

20   notice); *Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979, 986-87 (D. Mass. 1992) (a

21   patent-holder needed not mention a specific patent number when the evidence otherwise shows

22   that the defendant was notified of the infringement).  The inquiry is inherently fact-intensive and

23   should not be taken away from the jury.

24         Because the jury must decide the issue, Samsung's request for a special hearing to prove

25   the existence of *prima facie* evidence is not necessary, proper or prudent.  A hearing is

26   unnecessary because the evidence is admissible to show damages for Apple's trade dress, as

27   discussed above, and thus will be admitted in any event.  The approach is improper because the

28   Federal Rules do not permit the Court to weigh the evidence and prejudge a disputed factual issue

1    as a prerequisite to admitting evidence.  Proper jury instructions are an appropriate means by

2    which to address limitations, if any, on the use of the evidence that may be relevant to more than

3    one claim.  Finally, a hearing would be imprudent because it will result in a multiplicity of

4    "evidentiary hearings" every morning of the trial as each party challenges the lack of a *prima*

5    *facie* case to resolve disputed issues.

6          Samsung's motion should also be denied because Samsung is wrong about the facts and

7    what occurred in discovery.  Apple provided a robust interrogatory that described the allegations

8    and discussions between the parties regarding Samsung's misconduct, beginning in July 2010.

9    These meetings continued through at least November of 2010 in an effort to avoid this lawsuit.

10   Samsung's Rule 30(b)(6) witness admitted that ███████████████████████████████████

11   ████████████████████████████████, (Kanada Decl. Ex. 41.), and Samsung

12   admits that the '381 Patent and other IP rights were discussed before suit.  (Dkt. No. 1185 at

13   19:26-27 (filed under seal).)  Nothing was hidden in discovery.  Apple's efforts to provide notice

14   and the foregoing discussions were the subject of at least four depositions (Jun Won Lee, Boris

15   Teksler, and two depositions of Chip Lutton).  (Kanada Decl. ¶ 34.)  Starting in *July 2010*, Apple

16   produced the e-mail and documents exchanged in 2010.  (Kanada Decl. ¶ 35.)  The facts are

17   disputed, and thus the jury must resolve the issue based on the evidence and proper jury

18   instructions.  Exclusion of evidence based on Federal Rule of Civil Procedure 26(e) and Rule 37

19   would be improper.  Rule 26(e) requires that a supplement when missing information "has not

20   otherwise been made known to the other parties during the discovery process."  Apple's notice

21   and the parties' discussions were fully explored from the very start of discovery.  There is no

22   basis to exclude this evidence.

23   **IX.   SAMSUNG'S TAX ACCOUNTING IS ESSENTIAL TO UNDERSTANDING
     SAMSUNG'S PROPOSED PRESENTATION OF STA'S AND SEA'S "PROFITS"**

24   **BUT APPLE AGREES THAT GENERAL REVENUES, PROFITS, WEALTH AND
     TAX PAYMENTS ARE NOT OTHERWISE RELEVANT.**

25

26         Samsung, not Apple, is attempting to use tax issues to confuse the jury and improperly

27   affect the damages calculation.  Apple's damages for design patent infringement under 35 U.S.C.

28   § 289 include disgorgement of the "total profits" for the sale of infringing products.  Similarly,

1   Samsung must disgorge its profits from the sale of products that violate Apple's trade dress under

2   15 U.S.C. § 1117.  Courts have consistently concluded that the intellectual property owner is

3   entitled to the infringer's total *economic profit*.  *Bergstrom v. Sears, Roebuck and Co.*, 496 F.

4   Supp. 476, 496 (D. Minn. 1980) (for purpose of determining "total profits" under 35 U.S.C. §

5   289, plaintiff-owner was entitled to full economic profits of manufacturer and other sellers in

6   chain of distribution); *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, Case No. WDQ-08-2746, 2011

7   WL 862729, at *8-9 (D. Md., Mar. 10, 2011)  In *Coryn*, the plaintiff argued that financial

8   information about entities related to the defendant corporation was relevant to its damages

9   because "the corporate structure of the various…entities has permitted the booking of profit and

10  loss in a manner that…understat[es] the revenue and income of [defendant]."  *Coryn*, 2011 WL

11  862729, at *8.  The court reasoned that the "trial court's primary function should center on

12  making any violations of the Lanham Act unprofitable to the infringing party and held that non-

13  party financial data from defendant's sister and parent corporations was relevant and admissible

14  to "show profits that were earned by the defendant" under the Lanham Act."  *Id.* at *8-9.  Thus,

15  the only evidence relevant to disgorgement is the economic profit that Samsung obtains from sale

16  of the accused products.

17          Samsung would obscure its economic profit behind a screen of tax accounting.  SEA's and

18  STA's standalone "profits" do not reflect their economic profits but are entirely the product of a

19  

20  

21  

22  

23  

24  

25  

26  

27  

28

(Kanada Decl. Ex. 42.) ███████████████████████████████

████████████████████████████████████████████ (Kanada Decl Ex.

43.)  Similarly, Samsung's own financial controller admits that ████████████

██████████████████████████████████████████████

███████ (Kanada Decl Ex. 44).

     As reflected in Apple's motion *in limine* to exclude evidence or argument regarding

Samsung's "profits" calculated based on the ████████████████, STA and SEA's "profits"

1    are not relevant to the jury's inquiry and should be excluded.  However, if the Court allows them

2    to be admitted, Apple must be permitted to demonstrate to the jury how and why they are based

3    on tax allocations and tax policy and do not reflect the actual economic profits of Samsung's

4    misconduct in the United States.

5            Samsung's authorities, *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303 (Fed.

6    Cir. 2004) and *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), are not

7    relevant and certainly do not dictate exclusion.  These cases address the issue of whether a patent-

8    holder corporate entity, when acting as a plaintiff, can recover for a related entity's lost profits

9    due to patent infringement.  Neither addresses recovery of infringers' profits.  Neither case

10   decides "whether a parent company can recover on a lost profits theory when profits of a

11   subsidiary do flow inexorably up to the parent."  *Mars, Inc.*, 527 F.3d at 1367.  Here, the issue is

12   infringer's profits.  Here, Samsung admits that SEC reports the bulk of the economic profits made

13   on U.S. sales.  (Dkt. No. 1185-3 at 24:18-19) ("SEC also made certain profits from selling those

14   products to STA and SEA, which then sold them in the United States.")  Here, Samsung has

15   introduced the issue of its tax policy and ███████████ by its effort to introduce results that are

16   based entirely on these tax adjustments.

17           With respect to the remaining issues, Apple agrees that the parties' general revenues,

18   profits, wealth and value are generally not relevant to the case and should not be used to justify an

19   increase or decrease in the damages award.  The damages experts on both sides have used

20   measures related to the market capitalization, tax rate and financial return of both companies as

21   inputs into their calculations of reasonable royalties, but the methods and the resulting output can

22   be explained without specific reference to the wealth or overall revenues of either company.

23                              *       *       *

24           Apple's case against Samsung on liability and on damages should be decided on a full

25   evidentiary record, and Samsung's motions *in limine* numbers 1-3 and 5-9 should accordingly be

26   denied.

27

28

1   Dated: July 10, 2012                    MORRISON & FOERSTER LLP

2

3                                    By:    /s/ Michael A. Jacobs
                                            Michael A. Jacobs
4
                                            Attorneys for Plaintiff
5                                           APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28