QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE** |

**FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................................1

A.   Opposition to Apple's Motion No. 1 to Exclude Evidence and Argument
     Re: the 035 Model And Pictures Of It.........................................................1

B.   Opposition to Apple's Motion No. 2 to Exclude Evidence and Argument
     Re: Non-Prior Art Apple Or Samsung Design Patents ...............................4

C.   Opposition to Apple's Motion No. 3 to Exclude Evidence and Argument
     Re: Claimed Prior Art Devices And Documents .........................................7

D.   Opposition to Apple's Motion No. 4 to Exclude Evidence and Argument
     Re: Partial Views of Designs ....................................................................13

E.   Response to Apple's Motion No. 5 to Exclude Evidence and Argument Re:
     Samsung's Receipt Of Legal Advice Regarding The Patents At Issue In
     This Case ...................................................................................................15

F.   Response to Apple's Motion No. 6 to Exclude Evidence and Argument Re:
     Rulings On The Validity, Enforceability, Or Infringement Of Any Apple Or
     Samsung Patent By Other Courts or Tribunals ..........................................15

G.   Opposition to Apple's Motion No. 7 to Exclude Evidence and Argument
     Re: Statements Made By Steve Jobs To Walter Isaacson ..........................15

     1.   Admission of Mr. Jobs Statements is not Barred by the Hearsay
          Rule .................................................................................................16

     2.   Mr. Jobs' Statements Are Relevant.................................................18

     3.   Mr. Jobs' Statements are Probative and are not Unfairly Prejudicial .........18

H.   Opposition to Apple's Motion No. 8 to Exclude Evidence and Argument
     Re: Parties' Corporate Behavior Or Financial Circumstances...................19

I.   Opposition to Apple's Motion No. 9 to Exclude Evidence and Argument Re:
     Samsung's Profits Calculated Based On A Tax Agreement With The United
     States Internal Revenue Service ................................................................23

J.   Response to Apple's Motion No. 10 to Exclude Evidence and Argument Re:
     Financial Terms For Apple's Acquisition of Fingerworks .......................26

# TABLE OF AUTHORITIES

**Page**

### Cases

*Amini Innovation Corp. v. Anthony California, Inc.,*
 2006 U.S. Dist. LEXIS 100800 (C.D. Cal. Sept. 21, 2006) ........................................................2

*Art Attacks Ink, LLC v. MGA Entertainment Inc.,*
 581 F.3d 1138 (9th Cir. 2009)................................................................................................12

*Bergstrom v. Sears, Roebuck & Co.,*
 496 F. Supp. 476 (D. Minn. 1980) .........................................................................................25

*Braun Inc. v. Dynamics Corp. of Am.,*
 975 F.2d 815 (Fed. Cir. 1992) .................................................................................................2

*Concrete Appliances Co. v. Gomery,*
 269 U.S. 177 (1925)...............................................................................................................10

*Contessa Food Prods., Inc. v. Conagra, Inc.,*
 282 F.3d 1370 (Fed. Cir. 2002)..............................................................................................14

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.,*
 424 F.3d 1293 (Fed. Cir. 2005)................................................................................................9

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
 543 F.3d 665 (Fed. Cir. 2008)..............................................................................................1, 6

*Elmer v. ICC Fabricating,*
 67 F.3d 1571 (Fed. Cir. 1995)..................................................................................................1

*Federal Trade Commission v. Figgie International, Inc.,*
 994 F.2d 595 (9th Cir. 1993).............................................................................................16, 17

*Fin. Bus. Equip. Solutions, Inc. v. Quality Data Sys., Inc.,*
 2008 WL 4663277 (S.D. Fla. Oct. 21, 2008) ........................................................................20

*Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.,*
 2006 WL 1646113 (N.D. Cal. June 12, 2006) .......................................................................22

*General Motors Corp. v. Devex Corp.,*
 461 U.S. 648 (1983)...............................................................................................................24

*Geo M. Martin Co. v. Alliance Mach. Sys. Int'l,*
 618 F.3d 1294 (Fed. Cir. 2010)..............................................................................................10

*Graham v. John Deere Co.,*
 383 U.S. 1 (1966)...................................................................................................................10

*Gyromat Corp. v. Champion Spark Plug Co.,*
 735 F.2d 549 (Fed. Cir. 1984)..................................................................................................3

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

*Huberman v. Tag-It Pac. Inc.*,
   314 F. App'x 59 (9th Cir. 2009) ..................................................................................23

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009) ..................................................................................13

*Jack Schwartz Shoes v. Skechers U.S.A.*,
   2002 U.S. Dist. LEXIS 25699 (S.D.N.Y. 2002) ..........................................................2

*Keystone Retaining Wall Sys. v. Rockwood Retaining Wall, Inc.*,
   2001 U.S. Dist. LEXIS 26272 (D. Minn. Oct. 9, 2001) ................................................2

*LA Gear v. Thom McAn Shoe Co.*,
   988 F.2d 1117 (Fed. Cir. 1993) ....................................................................................2

*Lee v. Dayton-Hudson*,
   838 F.2d 1186 (Fed. Cir. 1988) .................................................................................2, 4

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   537 F. Supp. 2d 1095 (S.D. Cal. 2008) .......................................................................10

*Mars, Inc. v Coin Acceptors, Inc.*,
   527 F.3d 1359 (Fed. Cir. 2008) ..................................................................................24

*Medical Sales & Consulting Group v. Plus Orthopedics USA, Inc.*,
   2011 WL 1898600 (S.D. Cal. May 19, 2011) .............................................................16

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   454 F. Supp. 2d 966 (C.D. Cal. 2006) ........................................................................16

*National Steel Car, Ltd. v. Canadian Pac. Railway, Ltd.*,
   357 F.3d 1319 (Fed. Cir. 2004) ....................................................................................9

*Netscape Communications Corp. v. Valueclick*,
   707 F. Supp. 2d 640 (E.D. Va. 2010) .........................................................................10

*Newell Cos., Inc. v. Kenney Mfg. Co.*,
   864 F.2d 757 (Fed. Cir. 1988) ....................................................................................10

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997) ....................................................................................1

*Panduit Corp. v Stahlin Bros. Fibre Works*,
   575 F.2d 1152 (6th Cir. 1978) ....................................................................................20

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*,
   998 F.2d 985 (Fed. Cir. 1993) ......................................................................................3

*Poly-America, L.P. v. GSE Lining Technology, Inc.*,
   383 F.3d 1303 (Fed. Cir. 2004) ..................................................................................24

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008) ....................................................................................6

*Rubert-Torres ex rel. Cintron-Rupert v. Hospital San Pablo, Inc.,*
  205 F.3d 472 (1st Cir. 2000) ......................................................................................18

*Stryker Corp. v. Intermedics Orthopedics, Inc.,*
  891 F. Supp. 751 (E.D.N.Y. 1995) ...............................................................................3

*Talking Rain Beverage Co. v. South Beach Beverage Co.,*
  349 F.3d 601 ...............................................................................................................12

*The Coryn Group II, LLC v. O.C. Seacrets, Inc.,*
  2011 WL 862729 (D. Md. March 10, 2011) ................................................................25

*United States v. Candelaria-Silva,*
  162 F.3d 698 (1st Cir. 1998) .......................................................................................18

*United States v. Dennis,*
  625 F.2d 782 (8th Cir.1980) ........................................................................................22

*United States v. Dodds,*
  347 F.3d 893 (11th Cir. 2003) .....................................................................................22

*United States v. Rivera-Gomez,*
  67 F.3d 993 (1st Cir. 1995) .........................................................................................18

## **Statutes**

15 U.S.C. § 1117(a) ............................................................................................24, 25

35 U.S.C. § 171 .........................................................................................................5

35 U.S.C. § 177 .........................................................................................................6

35 U.S.C. § 289 ........................................................................................................24

37 C.F.R. 1.153 ..........................................................................................................4

Fed. R. Civ. Pro. 32(d)(3)(B) ..................................................................................14

Fed. R. Evid. 801(c)(2) ............................................................................................17

Fed. R. Evid. § 801(d)(2)(C) ....................................................................................16

Fed. R. Evid. § 801(d)(2)(D) ....................................................................................16

Fed. R. Evid. 807(a)(1) .............................................................................................16

## **Other Authorities**

4 Weinstein & Berger, Evidence, ¶ 803(24)[01] (1984) ....................................16, 17

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

# ARGUMENT

### A.    Opposition to Apple's Motion No. 1 to Exclude Evidence and Argument Re: the 035 Model And Pictures Of It

Although Apple disclosed only some poor quality photographs of the 035 model at the time of the preliminary injunction, Apple concealed and withheld the physical 035 model itself until after the preliminary injunction ruling.   Apple once again tries to bury this evidence through its motion in limine, but Apple cannot succeed because it has admitted that the 035 model is an embodiment of D'889 and it is thus highly relevant to the infringement and damages issues to be tried.   It would be extraordinary to allow Apple, as it requests, to conceal from the jury its own admissions and prior inconsistent statements on such central matters.

Apple concedes, as it must, that it expressly admitted to the PTO that the 035 model was an embodiment of D'889.   Apple's argument for excluding the model (and the photos of it in the D'889 file history) misstates design patent law.   According to Apple, the 035 model is irrelevant to the *scope* of the D'889 patent and it should kept from the jury for that reason.   (Dkt. 1184-03 (Apple's Motions in Limine) at 1-2).   Contrary to Apple's position, construing the D'889 is not the same as infringement analysis.   *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997) ("OddzOn argues that 'the scope of a design patent is effectively determined by deciding infringement, rather than by construing the claim.'   We do not agree.").   Apple thus conflates different analytical steps because juries do not determine the scope of design patents. Rather, the Court is currently addressing this first step in the context of claim construction (Dkt Nos. 1089, 1090, 1136, 1139, and 1177 (Claim Construction Briefing)), and Samsung has no intention of arguing scope to the jury based on the 035 model or the photos.   The step the jury as the trier of fact will take, however, is to determine infringement by comparing the D'889 patent with the accused products using the *Gorham* ordinary observer test.   *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 681 (Fed. Cir. 2008); *Elmer v. ICC Fabricating,* 67 F.3d 1571, 1577 (Fed. Cir. 1995) (describing two-step process).

The Federal Circuit has ruled that claimed embodiments of design patents, including models of the design made by the patentee, are relevant to making this infringement comparison.

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

1    In *Lee v. Dayton-Hudson*, 838 F.2d 1186 (Fed. Cir. 1988), for example, the trial court found non-

2    infringement after comparing the accused product with a physical model made by the patentee, as

3    well as the patent itself.   *Id.* at 1189.   The Federal Circuit affirmed, noting that having the

4    physical model along with the patent "enabled [the court] to view the designs as a whole as

5    required by law."   *Id*; *see also LA Gear v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1126 (Fed. Cir.

6    1993) (affirming comparison between embodiment, design patent drawings and accused products

7    and explaining that "[i]ndeed, such comparison may facilitate application of the *Gorham* criterion

8    of whether an ordinary purchaser would be deceived into thinking that one were the other.");

9    *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820-21 & n.8 (Fed. Cir. 1992) (comparing

10   embodiment with accused product); *Keystone Retaining Wall Sys. v. Rockwood Retaining Wall,*

11   *Inc.*, 2001 U.S. Dist. LEXIS 26272, at \*24-25 (D. Minn. Oct. 9, 2001); *Amini Innovation Corp. v.*

12   *Anthony California, Inc.*, 2006 U.S. Dist. LEXIS 100800 (C.D. Cal. Sept. 21, 2006); *Jack*

13   *Schwartz Shoes v. Skechers U.S.A.*, 2002 U.S. Dist. LEXIS 25699, at \*37 n. 7 (S.D.N.Y. 2002).

14   The reason for this is plain: it is easier to compare physical items to each other than it is to

15   compare a physical item to a drawing.   This is a point Apple itself has successfully asserted in this

16   litigation.   (Dkt No. 282 (Apple's Reply ISO Mot. for Preliminary Injunction) at 8; Dkt No. 449

17   (Order on Mot. for P.I.) at 47-48 and n.27-28; Dkt No. 1135 (Order Granting P.I.) at 4.)

18          Apple has nowhere disputed that the 035 model is anything other than "a fair exemplar of

19   the patented design."   *Lee*, at 1189.   In addition to its admission to the PTO that the 035

20   embodies the D'889 (Dkt. 1091-3 (Cashman Decl. ISO Samsung's Opening Claim Const. Memo.

21   ("Cashman Decl."), Ex. 3) at APLPROS0000010190), Apple has admitted several times since

22   then that the 035 model is an embodiment of the D'889 patent.   (*See, e.g.,* Apple MIL; Dkt No.

23   1136 (Apple's Response to Samsung's Opening Claim Const. Memo.) at 5).   ████████████

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████   (See, e.g., Declaration of John D'Amato in

26   Support of Samsung's Oppositions to Apple's Motions *in Limine* ("D'Amato Decl."), Ex. A

27   (November 4, 2011 Deposition Tr. of Christopher Stringer) at 95:5-21, 100:6-18, 121:18-22;

28   D'Amato Decl., Ex. B (December 1, 2011 Deposition Tr. of Jonathan Ive) at 161:25-162:12.)   Not

1   surprisingly, the physical 035 model shares the same shape, proportions, and surface details as the

2   D'889 patent, as a visual comparison between model and patent confirms and as a jury could

3   reasonably concluded.  ████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████████████████

5   ████████████████████████   (See, e.g., D'Amato Decl., Ex. C (Aug. 3, 2011 Deposition of

6   Christopher Stringer) at 52:5-17; 319:4-320:12; D'Amato Decl., Ex. A (Nov. 4, 2011 Deposition

7   of Christopher Stringer) at 95:5-21; 100:6-18.)   Thus, the 035 model is itself integral to the

8   origins of Apple's claimed D'889 design.

9          Apple no doubt will ask the jury to compare the accused Samsung tablet directly with the

10  iPad 2, which Apple has also claimed is an embodiment.  Indeed,  it necessarily will argue to the

11  jury that its iPad/iPad 2 products are embodiments in order to seek lost profit damages and to

12  argue for a reasonable royalty under the Georgia-Pacific factors.   (Dkt. 991 (March 22, 2012

13  Musika Expert Report (under seal) at 84); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891

14  F.Supp. 751, 819-820 (E.D.N.Y. 1995) (sales of commercial embodiment established demand for

15  patented product as required for award of lost profit damages); *Gyromat Corp. v. Champion Spark

16  Plug Co.,* 735 F.2d 549, 552 (Fed. Cir. 1984) (sales of infringing products containing patented

17  features was compelling evidence for demand for product, for purposes of determining lost

18  profits).   Apple cites no authority to support its view that it can cherry pick amongst claimed

19  embodiments for use in the infringement or damages analysis.   If anything, Apple is asking that

20  the Court resolve, in the guise of a motion in limine, key factual and credibility issues that are

21  reserved for the jury as trier of fact, including which of the claimed embodiments are in fact

22  embodiments, what weight if any should be given to Apple's current arguments that its iPad/iPad 2

23  products are embodiments in light of its other admissions that the 035 model embodies the D'889,

24  and whether Samsung's products infringe in light of comparisons to the 035 model.

25          *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993), cited by

26  Apple, does not assist Apple.   Rather, it counsels against allowing Apple to compare the iPad or

27  iPad 2 as alleged embodiments, not the 035 model, because Apple's commercial tablets have

28  many design features and characteristics that are not part of the claimed design and "thus they may

1   not serve as a valid basis for comparison in a design patent infringement analysis."   The iPad and

2   iPad 2 have a number of recognizable differences with D'889 and the 035 model, such as a much

3   thinner profile, rounded backs, no rim around the front, and different side angles.   S amsung is

4   entitled to show the 035 model to the jury to point out these differences.   And there is no

5   requirement that the embodiment be a commercial one.   The Federal Circuit's seminal case in this

6   area, *Lee v. Dayton-Hudson*, involved a model of a massager the inventor had made using tennis

7   balls.   *Lee*, 838 F.2d at 1189.   Far from being prejudicial or irrelevant, the 035 model is the very

8   type of evidence the Federal Circuit has found to be relevant and helpful to the finder of fact.

9          Apple also seeks to exclude photos of the model that are a part of the official prosecution

10  history of the patent.   (Apple MIL at 1-2.)   To  justify excluding this undoubtedly admissible

11  evidence from the asserted patent's prosecution history, Apple mischaracterizes the history of the

12  photos at the PTO.   Apple stated that the 035 model was an embodiment of the claim and sought

13  to include pictures of it as an appendix to the patent so that the public could see that embodiment.

14  The PTO in no way opposed, or even commented on, Apple's statement that the 035 model was an

15  embodiment of the claim.   Nor were the photos "cancelled from the application" as if the

16  examiner struck them from the file history.   The patent examiner merely "cancelled" Apple's

17  photo appendix as superfluous under 37 CFR 1.153, which states that the description is ordinarily

18  limited to references to the drawings.  (Dkt.  1091-03 at APLPROS0000010267).

19         Apple has failed to offer any legitimate reason why the 035 model and the photos

20  contained in the official file history should be hidden from the jury.   The model is directly

21  relevant to Apple's own account of the origins of the D'889, to the infringement analysis that the

22  jury as the trier of fact will make, and to damages.   Apple's motion should be denied.

**B.      Opposition to Apple's Motion No. 2 to Exclude Evidence and Argument Re:
          Non-Prior Art Apple Or Samsung Design Patents**

23
24
25  Apple's Motion In Limine 2 to exclude Apple and Samsung design patents and prosecution

    history incorrectly asserts that because these exhibits are not relevant for one purpose, they should

26  be excluded for all purposes.   This argument is plainly contrary to the law.   Apple's motion must

27
28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

1   be rejected as Apple and Samsung design patents are relevant to issues of obviousness, ordinary

2   skill in the art and in rebutting Apple's copying allegations.

3          First, Samsung is not arguing that Apple's later-filed patents somehow narrow the claims

4   of the earlier patents post hoc.   Rather, the fact that Apple's non-asserted patents show various

5   features (such as oblong shapes and surface shading) and modifications (such as different curves)

6   that the asserted patents do not show confirms in a number of specific ways how narrow the

7   asserted patents were *from their issuance as Apple itself understood them*.  By  Apple's own

8   admissions to the USPTO, the later patents were new and original designs compared to the earlier

9   ones, even if very close in overall impression.   See 35 U.S.C. § 171 (limiting design patents to

10  new, original, and ornamental designs).   These admissions themselves are relevant and

11  admissible.   They also refute Apple's claim that the other products it obtained specific design

12  patents for, such as the iPhone 3G/3GS or the iPhone 4, are commercial embodiments of its

13  asserted design patents and therefore are highly pertinent to issues such as damages.   The jury is

14  entitled to weigh the credibility of Apple's current litigation-driven positions against its prior

15  admissions and conduct.

16         The same goes for Apple's iPad 2 design patent applications, to the extent Apple may

17  argue they are included in its motion.   Those applications are directly relevant to impeaching

18  Apple's assertion that its iPad products are embodiments of the D'889 patent, which bears directly

19  on several fact issues for the jury, namely infringement and damages.   And as with the later-

20  issued patents described above, these iPad 2 applications include signed oaths by Apple's

21  designers stating that they believe themselves to be the original inventors of what is claimed as a

22  new, original and ornamental design.   (*See, e.g.*, Dkt. 1091-17 (Cashman Decl., Ex. 25 (under

23  seal)) at APLNDC-Y0000310117-123, 158.)   The applications also cite D'889 as prior art over

24  which the design is said to be new and novel.   (*See, e.g.*, *id.* at APLNDC-Y0000310131; *see also*

25  Dkt. 1063-2 (Samsung's Reply ISO MSJ) at 8.)   Samsung should be afforded the right to put such

26  documents in front of the jury to impeach any Apple factual assertions to the contrary.

27

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

1        Second, as the cases discussed in response to Apple's Motion In Limine No. 3 below make

2   clear, Apple's design patents are relevant to obviousness and the level of ordinary skill in the art,

3   even if issued subsequent to the patents-in-suit.   *See infra* at 8-9.

4        Third, design patents issued to Samsung are also relevant.  Each  design patent is deemed

5   to disclose a separate design, one which, by definition, is not substantially similar to (i.e., does not

6   infringe) other design patents.   35 U.S.C. § 177 (requiring that design patents must be "new" and

7   "original").   When the USPTO grants a patent, it is "presumed to have properly done its job,

8   which includes one or more examiners who are assumed to have some expertise in interpreting the

9   references and to be familiar from their work with the level of skill in the art and whose duty it is

10  to issue only valid patents."   *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed.

11  Cir. 2008) (internal quotations, citation omitted).   Thus, the fact that the USPTO issued the

12  Samsung patent is, at the very least, probative of non-infringement.   *See, e.g., Egyptian Goddess,*

13  *Inc.*, 543 F.3d at 676 (en banc) (noting where "a field is crowded with many references relating to

14  the design of the same type of appliance, we must construe the range of equivalents very

15  narrowly") (quoting *Litton Sys., Inc. v. Sundstrand Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)).

16  This is especially true where Apple is "simply go[ing] over the same ground travelled [sic] by the

17  PTO," which found Samsung's design different from Apple's designs that are named as prior art.

18  *PowerOasis, Inc.,* 522 F.3d at 1304.   Furthermore, the USPTO's judgment is directly relevant to

19  refuting Apple's allegations of copying and similarity.  Apple  intends to present the jury with a

20  motley, selective collection of hearsay articles (including from anonymous sources) that,

21  according to Apple, support its claims that Samsung's products look like or were copied from

22  Apple's.  Certainly  the countervailing view of a governmental agency is relevant to rebutting

23  those contentions.   Accordingly, evidence of the Samsung design patents embodied in the accused

24  products is relevant to this litigation and should not be excluded.

25        For the foregoing reasons, Apple's Motion In Limine No. 2 must be denied.

26

27

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

**C.    Opposition to Apple's Motion No. 3 to Exclude Evidence and Argument Re: Claimed Prior Art Devices And Documents**

Apple's Motion In Limine No. 3 to exclude certain references identified in Samsung's expert reports is premised on an alleged failure of proof regarding dates of publication.   But that premise is false because Samsung and its experts have submitted evidence concerning these references, and Apple has provided no contrary date evidence in any event.   Apple's motion is even more off-point for some of the references, since they are not offered as invalidating prior art *per se* but instead for other, proper purposes.   The references can be offered to explain prior art Apple does not seek to exclude, to prove obviousness of Apple's designs, or to establish the level of ordinary skill in the art at the time of the alleged inventions here.   They also are relevant to prove Apple's claimed trade dress lacks distinctiveness and to rebut Apple's allegations that Samsung copied Apple's designs and trade dress.   Indeed, Apple so far overreaches that it attempts to sweep into its vague motion Samsung's own internal documents, mockups and commercial devices.   As is indisputable, however, they are highly probative of Samsung's simultaneous and independent creation of designs that Apple has claimed are similar to Apple's.[1] These alternative bases for admissibility are not even addressed by Apple's motion, which should be denied outright.

For certain references, Apple simply purports to dispute the dates of public disclosure provided by Samsung's experts, but does not prove them wrong or even discuss the evidence actually supporting them.   For  example, Apple disputes Samsung's expert Itay Sherman's statement that the LG KE850 Prada was disclosed "in late 2006, before the iPhone was announced or the D'677 patent application was filed."   (Dkt. 940-3 (Bartlett Decl. ISO Apple's *Daubert Motion*, Ex. 3 (Sherman Expert Report)) at 41.)   Yet, Apple ignores the supporting evidence of

---

[1]    According to the Proposed Order it submitted, Apple seeks to broaden the scope of this motion in limine beyond the references actually discussed:   "This evidence includes *but is not limited to* the specific devices and documents discussed in Apple's Motions in Limine." (Emphasis added.)   Apple's attempt must be rejected because Apple had the ability to identify any references subject to its arguments, and the Court should not extend any ruling to evidence Apple has not specifically identified, and which Samsung has not therefore had an opportunity to address.

1   this fact, previously submitted by Samsung, in the form of engadget.com's initial article about the

2   Prada phone on December 15, 2006, which includes a color photograph of the front perspective of

3   the phone.   (Dkt. 179 (Jenkins Decl. ISO Samsung's Opp. to P.I.) at ¶ 8; Dkt. 179-7 (*id.*, Ex. G) at

4   2).   Mr. Sherman references the www.gsmarena.com entry for the LG Prada phone's formal

5   announcement in January 2007, which is the same citation that the PTO uses when it lists the LG

6   Prada as prior art to the D'677 and D'087 patents.   (http://www.gs marena.com/lg_ke850_prada-

7   1828.php)   The European design patent for the LG Prada was published in September 2006, and

8   that too is part of the file history for both the D'677 and D'087 patents.   (Dkt. 940-3 at 41 (EU

9   design rights registration 000569157-0005).)   Mr. Sherman's report also states that the LG

10  Chocolate KG800 was released "in March 2006 (before the submission of the D'677 or D'087 and

11  even before their claimed conception date)."   (Dkt. 940-3 at 43.)   Among the materials Mr.

12  Sherman references is the March 23, 2006 report on TechSpot.com, which announced the LG

13  Chocolate and stated that LG already had sold 300,000 of the phones since their release in

14  November 2005.  (http://www.techspot.com /news/20929-the-lg-chocolate-phone.html)

15        Thus, Apple's contention that there is "no evidentiary support" for the asserted dates

16  regarding the LG Prada and Chocolate references is clearly wrong.   (Apple MIL at 4.)

17  Moreover, Apple offers no evidence of its own to support its suggestion that those dates are

18  inaccurate.   Apple had a full opportunity to challenge this evidence or cross-examine

19  Mr. Sherman, but tellingly offers no evidence to undermine these portions of his report.   Apple's

20  unsupported – and unfounded – proclamation that it disagrees on the dates of these references is

21  no basis to exclude them.

22        It is also pertinent that Mr. Sherman identifies LG Prada and Chocolate as embodiments of

23  prior art design patents that Apple's motion does not seek to exclude.   For example, the LG Prada

24  is cited as an embodiment of EU design rights registration 000569157-0005 (Dkt. 940-3 at 41),

25  and the LG Chocolate as an embodiment of USD534,516.   *Id.* at 42.   Apple cites no authority

26  supporting exclusion of an embodiment of an otherwise relevant prior art reference.   Apple's

27  challenge to this reference as supposedly confusing does not support exclusion, but is at best a

28  matter that Apple can address on cross-examination.

1     Similarly, for the Samsung F300 phone, Samsung's Expert Sam Lucente states in his

2   Report that the device was "announced in December 2006."   (Dkt. 940-8 (Bartlett Decl. ISO

3   Apple's *Daubert* Motion, Ex. 9 (Lucente Expert Report)) at 59.)   Not only can Samsung's

4   percipient witnesses date the F300 announcement and release, but www.gsmarena.com confirms

5   the F300 announcement in December 2006.   (http://www.gsmarena.com/samsung_f300-

6   1805.php.)   Engadget.com also had an announcement and a review of the F300 on December 12

7   and 26, 2006, respectively, and the latter even included images of the GUI feature mentioned in

8   Mr. Lucente's report.   (http://www.engadget.com/2006/12/12/samsungs-f300-and-f500-ultra-

9   phones/ and http://www.engadget.com/2006/12/26/samsung-f300-ultra-music-reviewed/)   In any

10   event, Mr. Lucente identifies the F300 to show that "dot indicators" were "already known" prior to

11   the conception dates for the D'305 patent, not as invalidating prior art on its own.   (Dkt 940-8 at

12   59.)   Apple had an opportunity to question Mr. Lucente regarding his statements and the actual

13   dates it now questions, but Apple offers no deposition testimony or other evidence to supports its

14   position that this reference should be excluded based on its release or public disclosure date.

15     Even if (contrary to fact) Apple had established as a matter of undisputed fact on its

16   motion that certain references could not qualify as prior art based on their publication date, or

17   because they were internal documents that had not been disclosed, the references would still be

18   relevant on the question of obviousness and the level of ordinary skill in the art.   "In determining

19   whether a combination of old elements is non-obvious, the court must assess whether, in fact, an

20   artisan of ordinary skill in the art at the time of invention, with no knowledge of the claimed

21   invention, would have some motivation to combine the teachings of one reference with the

22   teachings of another reference."   *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,

23   424 F.3d 1293, 1321 (Fed. Cir. 2005). "It has long been the law that the motivation to combine

24   need not be found in prior art references, but equally can be found in the knowledge generally

25   available to one of ordinary skill in the art."   *Id.* (quoting *National Steel Car, Ltd. v. Canadian

26   Pac. Rwy., Ltd.*, 357 F.3d 1319, 1337-38 (Fed. Cir. 2004)).   "Evidence of a motivation to combine

27   references need not be in the form of prior art."   *Id.   See National Steel Car, Ltd. v. Canadian

28   Pac. Railway, Ltd.*, 357 F.3d 1319, 1337 (Fed. Cir. 2004) (unpublished documents were evidence

of suggestion to combine prior art references regardless of "whether either had been disseminated to a sufficiently broad public so as to give either the status of a prior art reference"); *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 766 (Fed. Cir. 1988) (although not technically "prior art," internal memorandum was admissible to show that persons of ordinary skill in the art suggested solutions to the problem in question similar to that claimed in the patent in suit); *Lucent Technologies, Inc. v. Gateway, Inc.*, 537 F. Supp. 2d 1095, (S.D. Cal. 2008) ("Even if a document is not prior art, a Court may consider it for motivation to combine, at least to the extent that motivation to combine is treated flexibly under *KSR*").

Evidence that does not satisfy the requirements for prior art also may be relevant to establish the characteristics and understanding of an individual of ordinary skill in the art at the time of invention, under *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).   *See also Netscape Communications Corp. v. Valueclick*, 707 F. Supp. 2d 640, 655 (E.D. Va. 2010) ("This result is sensible, the Federal Circuit has explained, because certain references not 'technically "prior art"' may nonetheless be admissible to establish the level of one skilled in the art because the fact that other inventors independently suggested similar solutions to the same or analogous problems during the same time frame may be probative of obviousness.") (citations omitted); *See Geo M. Martin Co. v. Alliance Mach. Sys. Int'l*, 618 F.3d 1294, 1305-06 (Fed. Cir. 2010) (independent development of similar solution "within a comparatively short space of time" persuasive evidence that claimed invention was the product only of ordinary skill (quoting *Concrete Appliances Co. v. Gomery*, 269 U.S. 177, 184 (1925)).

Contrary to Apple's selective argument, it is precisely for these non-prior art reasons that Samsung's experts identify several of the references Apple seeks to exclude.   Even if not prior to the patents, the above case law supports admissibility of the references as evidence of what would have been obvious to other designers.   Mr. Sherman specifically discusses a number of references as "reinforc[ing] the obviousness of the D'677 design patent" because they "predate Apple's application for D'677 on January 7, 2007, as well as the initial announcement and disclosure of the iPhone on January 9, 2007 [and therefore] there is no basis to believe they were copied from Apple's designs, and the substantial similarity of these designs is further proof that the D'677

design lacked any novelty."   (Dkt. 940-3 at 38.)   This includes the Samsung design patent

application for the KR30-0452985, which was filed in December 2006, and the Samsung F700

smart phone that is an embodiment of that patent, which was announced shortly after the iPhone in

February 2007.   *Id*. at 39.   Mr. Sherman correctly notes that the KR30-0452985 design was

"created no later than August 2006" based on percipient deposition testimony by a Samsung

witness.   *Id*. at 38-39.   His report also relies upon Samsung's internal "reports and presentations"

that Mr. Sherman notes "were created [] between July and September in connection with the

project that yielded the F700," *id*. at 39, which is supported through testimony of the F700's

designer.

Moreover, the primary relevance of these references is not related to prior art at all, and not

reliant on expert testimony in any event, because they are evidence to rebut Apple's continued

mantra that Samsung "slavishly copied" Apple's designs.   Apple has not challenged and cannot

challenge the admissibility of the F700, the internal Samsung hardware and GUI design

documents, or the related testimony for this purpose, and indeed Apple does not even discuss this

obvious basis for admissibility in its motion.   Below are images of the Samsung F700 and a

sample of the 2006 Samsung smart phone and GUI designs that are found in the internal

documents Apple improperly seeks to exclude, and the jury should see all of them:



Samsung F700, Q-Bowl Mockup, Bowl Mockup, and GUI Design.   D'Amato Decl., Exs. E-F

(Trial Exs. 526, 522, 625).

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

1  Again, these documents and devices will be properly authenticated and introduced by Samsung

2  fact witnesses, and the jury will be entitled to find that they refute Apple's copying allegations

3  regardless of the experts' reports.

4       Beyond their relevance to prove Samsung's patent invalidity defense and to rebut copying

5  charges in the design patent context, the cited references are also relevant to show that Samsung

6  did not copy Apple's claimed trade dress and to show the functionality and lack of distinctiveness

7  of that alleged trade dress.   The relevance of this evidence to refute Apple's copying claims are

8  the same as those already discussed above and are never even addressed, let alone challenged, for

9  trade dress purposes in Apple's motion.   For lack of distinctiveness, it is not the particular

10 publication date that matters, but rather whether the evidence shows that the same or similar trade

11 dress has been used by third parties on related products.   *Art Attacks Ink, LLC v. MGA*

12 *Entertainment Inc.*, 581 F.3d 1138, 1376-77 (9th Cir. 2009).   Apple fails to address this basis for

13 admissibility as well.   And, the fact that Samsung's designers independently created hardware and

14 GUI to solve similar problems to those that Apple's designs were also intended to solve is

15 probative of trade dress functionality, which the Court is aware allows a broad range of

16 considerations.  (Dkt.  1158 (Order Denying Samsung's MSJ) at 6; *see also Talking Rain*

17 *Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601, 604 ("[T]hat the grip feature reflects a

18 comparatively simple method of manufacturing a structurally sound bottle indicates that the

19 trademarked bottle is functional."); *id.* (collecting cases).)

20      In sum, each of the references Apple seeks to exclude are either properly identified as prior

21 art, based on the testimony and evidentiary support offered by Samsung's experts, or are being

22 offered for different purposes such as proving obviousness and the level of ordinary skill in the art.

23 Moreover, Samsung's own internal documents and its devices are highly relevant to rebut Apple's

24 copying allegations.   Finally, the references are all relevant to show lack of copying, lack of

25 distinctiveness and the functionality of Apple's asserted trade dress.   Apple's proposed order

26 attempts to extend beyond even the specific references attacked, but this ambiguous and overbroad

27 request is improper.   No references should be excluded on the basis of this motion.

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

**D.      Opposition to Apple's Motion No. 4 to Exclude Evidence and Argument Re: Partial Views of Designs**

In this motion, Apple attempts to interfere with how Samsung presents its evidence at trial. Parties routinely ask witnesses questions about some parts of a document and not others or emphasize some views of an object but not others.   The other party's remedy is to ask the witness about other parts or views it wishes to emphasize when its turn comes, not to obtain an order directing opposing counsel to conduct examinations in a certain way or striking prior testimony.

Specifically in the context of design patents, Samsung agrees that the overall visual impression based on all views of the patent is the relevant focus.   But that does not mean that certain features cannot be considered more important than others.   *See, Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("Although the ordinary observer test requires consideration of the design as a whole, . . . this does not prevent the district court . . . from determining that individual features of the design are insignificant from the point of view of the ordinary observer and should not be considered as part of the overall comparison.").   The law also allows for comparisons between individual aspects of prior art designs, and even individual aspects of multiple prior art designs.   *Id.* at 1240.

In this action, two of the patents cover only partial designs, either the front face only, D'677, or the front face and bezel, D'087.   Moreover, Apple's own design expert, Peter Bressler, has opined that the front view of the accused devices, as opposed to the sides or back, is the dominant view in the eyes of the ordinary observer.   He thus has testified:



(D'Amato Decl., Ex. G (Testimony of P. Bressler, Certain Electronic Digital Media Devices and Components Thereof (Inv. No. 337-TA-796), dated June 6, 2012, at 2050:5-18) (emphasis added).)   And, Apple itself, in its expert reports and elsewhere, repeatedly present only a single

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

1   design patent figure with a single view of an accused device.   Given its own expert's stated

2   position, Apple's argument here is disingenuous and intended to hamstring Samsung's

3   presentation of evidence in a trial with significant time restrictions.

4          Apple has presented no legal authority for excluding testimony regarding the front view of

5   its patents and relevant devices at trial.   The case Apple does cite, *Contessa Food Prods., Inc. v.*

6   *Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002), is inapposite here.   *Contessa Foods* stated

7   the important rule that before deciding infringement, a court or jury must consider all the figures

8   in a design patent in comparison with all portions of the accused product at all stages of its useful

9   life.   *Id.   Contessa Foods* did not say that at trial counsel must ask each witness about each of the

10  patent figures individually each time the patent is discussed in testimony.   Importantly, both of

11  Samsung's non-infringement experts cited *Contessa Foods*, and explicitly stated that they

12  considered all views of the patents, and expressly made their opinions accordingly.  (Dkt.  940-8

13  at 5; and Dkt. 940-07 (Bartlett Decl., Ex. 7 (Anders Expert Report)) at 6-7.)   Samsung's expert,

14  Itay Sherman, presented his report to put Apple on notice of his opinions, so the complaints about

15  which views he displayed in his report are irrelevant.  If  Apple wishes to cross-examine

16  Mr. Sherman about other views and how they would affect his opinions, then Apple will be free to

17  do so.   The Court has already denied Apple's *Daubert* motion, so this motion in limine is an

18  improper surrogate for attacking Mr. Sherman's opinions.

19          Furthermore, with respect to the deposition testimony of Apple witnesses, Apple did not

20  raise its objections regarding the use of partial views at a given deposition.  They  accordingly are

21  waived.   "Objection to an error or irregularity at an oral examination is waived if: it relates to

22  . . . *matters that might have been corrected at the time*; and it is not timely made during the

23  deposition."  *Fed. R. Civ. Pro*. 32(d)(3)(B) (emphasis added).   Had Apple objected at the

24  deposition, the testimony that Apple seeks to exclude might have been corrected by showing the

25  other views.   Its objection is now waived.   In any event, Apple had the ability to examine its

26  witnesses at the end of Samsung's questioning in order to show them whatever additional material

27  Apple chose.   Moreover, for witnesses under Apple's control, Apple may still call its witnesses

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

1   live at trial to examine them on these points if Apple believes they would testify differently with

2   additional information.   There is simply no reason or basis to strike this testimony.

3        Requiring the parties to display and discuss all views for every design patent at trial would

4   be absolutely unwieldy and would consume trial time that is scarce.   This motion is simply

5   Apple's attempt to manipulate and hinder Samsung's presentation of evidence at trial.  If  Apple

6   believes Samsung's questions are misleading, its remedy is to ask the witness about the parts of its

7   design patents that it wishes to emphasize, not to strike prior testimony and prevent Samsung's

8   counsel from conducting examinations as counsel sees fit within the rules and applicable case law.

9   This motion should be denied.

10  **E.      Response to Apple's Motion No. 5 to Exclude Evidence and Argument Re:
            Samsung's Receipt Of Legal Advice Regarding The Patents At Issue In This**

11  **Case**

12       Samsung is not asserting an advice of counsel defense to alleged infringement in this

13  action.   Therefore, Apple's motion is moot.   Nothing in the motion or this statement should be

14  construed to prevent Samsung from eliciting testimony about pre-suit discussions between

15  Samsung and Apple discussing the patents in suit because these communications are not

16  privileged and thus would not fall within Apple's motion.

17  **F.      Response to Apple's Motion No. 6 to Exclude Evidence and Argument Re:
            Rulings On The Validity, Enforceability, Or Infringement Of Any Apple Or**

18  **Samsung Patent By Other Courts or Tribunals**

19       In light of recent claim narrowing in this case, Samsung does not oppose this motion in

20  limine.   However, the Court should also grant Samsung's Motion in Limine no. 4 seeking

21  exclusion of foreign rulings not relating to patents in suit.   Such rulings are far less relevant and

22  probative of issues in this case than foreign and others courts' rulings related to the patents in suit.

23  **G.      Opposition to Apple's Motion No. 7 to Exclude Evidence and Argument Re:
            Statements Made By Steve Jobs To Walter Isaacson**

24

25       Samsung should be permitted to cross examine Apple's witnesses with at least the

    following statements made by the late Apple CEO Steve Jobs and recorded by Mr. Jobs' hand-

26  picked biographer, Walter Isaacson.

27

28

- "Picasso had a saying, 'Good artists copy, great artists steal.'   And we have always been shameless about stealing great ideas."

- "The current wave of industrial design is Sony's high-tech look, which is gunmetal gray, maybe paint it black, do weird stuff to it . . . . It's easy to do that. But it's not great . . . . What we're going to do is make the products high-tech, and we're going to package them cleanly so that you know they're high-tech. We will fit them in a small package, and then we can make them beautiful and white, just like Braun does with its electronics."   *Id.* at 126.

- "Well, circles and ovals are good, but how about drawing rectangles with rounded corners?"   *Id.* at 130.

- "I want to make a tablet, and it can't have a keyboard or a stylus . . . . So could you guys come up with a multi-touch, touch-sensitive display for me?"   *Id.* at 467-68.

- "Our lawsuit is saying, "Google, you flicking ripped off the iPhone, wholesale ripped us off" Grand theft. I will spend my last dying breath if I need to, and I will spend every penny of Apple's $40 billion in the bank, to right this wrong. I'm going to destroy Android, because it's a stolen product. I'm willing to go to thermonuclear war on this."   *Id.* at 512.

### 1.        Admission of Mr. Jobs Statements is not Barred by the Hearsay Rule

First, the statements made by Mr. Jobs to Mr. Isaacson are admissions by a party opponent and thus are not hearsay at all.   Fed. R. Evid. § 801(d)(2)(C), (D).   Statements of Apple's former Chief Executive Officer plainly fall within this provision.   *Medical Sales & Consulting Group v. Plus Orthopedics USA, Inc.*, 2011 WL 1898600, at * (S.D. Cal. May 19, 2011) (statements by defendant's President and CEO not hearsay under FRE 802(d)(2)); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (any statement made by corporate CEO is admissible under 802(d)(2)(D)).

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

1    The recording of these admissions by Mr. Isaacson is admissible under the residual

2   exception to the hearsay rule, which permits the admission of hearsay even if not specifically

3   covered by a hearsay exception under Rule 803 or 804 if "the statement has equivalent

4   circumstantial guarantees of trustworthiness."   Fed. R. Evid. 807(a)(1).   "This Rule facilitates

5   'the admission of needed, relevant, reliable evidence which does not conform to a class

6   exception.'"   *Federal Trade Commission v. Figgie International, Inc.*, 994 F.2d 595, 608 (9th Cir.

7   1993) (quoting 4 Weinstein & Berger, Evidence, ¶ 803(24)[01] (1984) at 803-381) (addressing

8   former Rule 803(24)).   "A court's most important inquiry under this Rule is whether the proffered

9   evidence has trustworthiness equivalent to that of the enumerated hearsay exceptions."   *Id.*

10    Conspicuously absent in Apple's motion is any claim that these statements are inaccurate

11   or misattributed to Mr. Jobs.   Nor could Apple make such an argument.   The statements it seeks

12   to exclude were carefully recorded by Mr. Jobs' hand-picked biographer, a highly respected author

13   and former managing editor of *TIME* magazine, and are unquestionably accurate.   Indeed, one of

14   Mr. Jobs' statements that Apple seeks to exclude with its motion – that "good artists copy" and

15   "great artists steal" – was recorded on video.[2]   It is simply not the case that the accuracy of these

16   statements, or their attribution to Mr. Jobs, is at issue.   Accordingly, these statements fall under

17   the residual exception to the hearsay rule.   *See Figgie International,* 994 F.2d at 608-09

18   (affirming admission of letters to the FTC where declarants had "no motive to lie," evidence

19   related to a material fact, reasonable efforts would not produce more probative evidence, and

20   admitting the letters "further[ed] the paramount goal of making relevant evidence admissible").

21    Even though these statements would be admissible for the truth of their contents under the

22   residual exception, the statements are also admissible for the non-hearsay purpose of proving that

23   Mr. Jobs actually expressed these views.   For example, Samsung seeks to use Mr. Jobs' "good

24   artists copy, great artists steal" statement to prove the fact that Mr. Jobs made this statement, not

25   to prove that it is true that good artists copy and great artists steal.   Such use of these statement is

26   not barred by the hearsay rule.   Fed. R. Evid. 801(c)(2).

27

28      [2]   *See* http://www.youtube.com/watch?v=CW0DUg63lqU (last visited on July 9, 2012).

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

### 2.      Mr. Jobs' Statements Are Relevant

Mr. Jobs' statements are relevant to Samsung's defense of Apple's claims.   The first statement made by Mr. Jobs regarding Apple's philosophy on "stealing" is highly relevant insofar as it speaks to the notion of design generally.   One of Samsung's primary defenses is that Apple's design philosophies and concepts are not novel and that no one company has a monopoly over, for example, rectangular shaped phones with rounded edges.   The statement by Steve Jobs affirms this theory insofar as certain designs embodied by the Apple products at issue are admittedly ubiquitous within the marketplace.   The second statement regarding Sony is relevant as it goes to Samsung's argument that Sony Style was the inspiration and basis for Apple's design of the iPhone, as Apple's internal documents reflect.   This statement may properly be used during the examination of Apple's industrial designers and experts.   The third statement regarding "rectangles with rounded corners" is relevant to the D'305 patent (graphical user interface) and may properly be used in connection with the examination of its inventors, Imran Chaudhri and Freddy Anzures, as well as Apple's expert Susan Kare.   The fourth statement regarding the tablet speaks to the D'889 patent and may properly used in examining the iPad's industrial designers and expert Alan Hedge.   Finally,  the fifth statement speaks to Apple's bias, improper motives and its lack of belief in its own claims in that they are a means to an end, namely the destruction of Android.   Indeed, the statement is directly probative of Apple's witnesses' credibility, since it is a edict from its then-CEO that the jury may properly conclude has bent and influenced the substance of their testimony.

### 3.      Mr. Jobs' Statements are Probative and are not Unfairly Prejudicial

The relevance and probative value of Mr. Jobs' statements are outlined above. Additionally, the statements at issue are neither unduly nor unfairly prejudicial to Apple.   The "law protects a defendant against unfair prejudice, not against *all* prejudice."   *United States v. Candelaria-Silva*, 162 F.3d 698, 705 (1st Cir. 1998) (quoting *United States v. Rivera-Gomez*, 67 F.3d 993, 997 (1st Cir. 1995) (emphasis in original)).   Here, given that the statements made by Mr. Jobs are highly relevant to Samsung's defenses, particularly with respect to Apple's design

1    patents, the balancing required by Rule 403 should militate in favor of their admission.   *Rubert-*

2    *Torres ex rel. Cintron-Rupert v. Hospital San Pablo, Inc.*, 205 F.3d 472, 479 (1st Cir. 2000)

3    ("Because the Federal Rules of Evidence favor the admissibility of evidence, less intrusive

4    measures to minimizing the prejudicial effect of evidence are preferred to excluding evidence.")

5    (citing 2 *Weinstein's Federal Evidence*, § 403.02[2][c]).

6        **H.**    **Opposition to Apple's Motion No. 8 to Exclude Evidence and Argument Re: Parties' Corporate Behavior Or Financial Circumstances**

7           Samsung does not intend to present evidence of what Apple refers to as "irrelevant

8    corporate behavior."  Sam sung expects that neither party will present non-pertinent corporate or

9    financial information in this case, and that Apple will abide by these same standards.   But Apple

10   tries to overreach by folding into this motion specific items of highly relevant evidence.  In

11   particular, Apple's continued success in the market, a key issue in the case, is best evidenced by its

12   consistently high profits and accumulating wealth.   Also, the compensation and working hours of

13   the employees who manufacture products at issue in this case, and the amount of Apple's taxes,

14   are both directly relevant to damages issues, as is any alleged harm to Apple caused by dilution of

15   Apple's brand.

16          First, Apple's contention that its profits and overall wealth are irrelevant ignores a central

17   plank of Apple's case:   that its profits, and the value of its brand, have been harmed by Samsung's

18   alleged infringement and dilution of Apple's trade dress.   Apple has repeatedly asserted that

19   Samsung has harmed the Apple brand, eroded Apple's profits, and otherwise caused economic

20   harm to Apple.   (See, e.g., Dkt. No. 75 (Apple Amend. Compl.) at ¶¶ 142-160 (alleging that

21   Samsung's supposed infringement has diluted the Apple brand and cut into Apple's profits); Dkt.

22   No. 991 (Musika Expert Rep.) at ¶ 82 ███████████████████████████████

23   ████████████████████████████████████████████████

24   ████████████");  Dkt. No. 1023-2 (Winer Decl. ISO Apple's Opp. to Samsung's MSJ, Ex. 2

25   (Winer Expert Rep.)) at 67-77 (discussing harm to Apple's brand under heading "Samsung's

26   Misappropriation of Apple's Trade Dress Dilutes and Harms Apple's Brand").)  Apple's

27   economic well-being and market position, its profits, and its wealth, are clearly at issue in a case

28

1   where Apple alleges that Samsung has harmed its brand and caused it to lose profits.   Samsung is

2   entitled to use Apple's continuing record-breaking profits to show that Samsung has *not* diluted

3   Apple's brand or cut into its profits.

4       Apple also seeks a lost profits remedy for Samsung's alleged infringement of Apple's

5   design and utility patents.   (Dkt. No. 991 (Musika Expert Rep.) at ¶¶ 80-81.)  Sam sung is entitled

6   to use Apple's consistently improving profits to show that Apple has either lost *no* profits, or at

7   very least lost far less than it is now claiming.   While the admission of such evidence may not be

8   in Apple's strategic interest, it is both highly relevant and perfectly appropriate.   *See, e.g., Fin.*

9   *Bus. Equip. Solutions, Inc. v. Quality Data Sys., Inc.*, 2008 WL 4663277, at *1 (S.D. Fla. Oct. 21,

10  2008) (explaining that evidence of plaintiff's profit margins and other financial data were relevant

11  to contesting claims of lost profits).

12      Moreover, Apple itself admits – albeit buried in a footnote that "the damages experts of

13  both sides have used measures related to the market capitalization and financial return of both

14  companies as an input into certain calculations."   (Apple MIL at 15:26-28, n. 2.)   Yet, Apple

15  ambiguously asserts that "[t]hese methods and the resulting output can be explained without

16  specific reference to the wealth or overall revenues of either company."   *Id.*   As an initial matter,

17  Apple's assertion is misleading.   It is *Apple's* expert that relied on the companies' overall market

18  capitalization and financial returns. (See,  e.g., Dkt. No. 991 (Musika Expert Rep.) at ¶ 64:10-11,

19  ¶ 186 ███████████████████████████████████████████

20  ███████████████████████████████ (emphasis added); *id.,* Ex. 41.5

21  entitled, "Apple Brand Value as Percentage of Market Capitalization" (showing Apple's market

22  capitalization at $177.4 billion and 282.6 billion in 2010 and 201, respectively).)  Sam sung's

23  expert has merely responded to Apple's expert's chosen methodology.

24      More importantly, Samsung is entitled to question Apple's experts methodology *using his*

25  *numbers* and should not be silenced because Apple has now decided it doesn't want the jury to

26  hear them.   Apple made a strategic decision to have its expert rely on a methodology that uses the

27  parties' market capitalization and overall profits, revenues, and wealth.   It can't now cut-off

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

1   Samsung's ability to test this methodology at trial by precluding Samsung from actually

2   mentioning any of these numbers.

3          Second, Apple itself has put the wages and working hours of its employees and contractors

4   at issue.   To obtain lost profits, Apple must show under the third *Panduit* factor that it had the

5   manufacturing and marketing capacity to make any allegedly infringing sales made by Samsung.

6   *See Panduit Corp. v Stahlin Bros. Fibre Works*, 575 F.2nd 1152, 1164 (6th Cir. 1978).   In opining

7   that Apple had such capacity, Apple's damages expert, Terry Musika, relies on ███████████

8   ██████████████████████████████████████████████████████████████████

9   ████████████████████████████████████ (See Dkt. No. 991-19

10  (Musika Expert Rep.), at ¶ 127 ████████████████████████████████████

11  ██████████████████████████████████████████.")  In  turn, these

12  ██████████████████████████████████████████████████████████

13  ████████████████ *Id.* at 44:1-3, ¶ 133 ██████████████████████████

14  ██████████████████████████████████████████████████████████

15  ████████████████████████████ Samsung is entitled to test the

16  reasonableness and veracity of this assumption, which forms an important basis of Mr. Musika's

17  lost profits opinion.

18         Contrary to Apple's contention, the wages Apple pays to workers for production of the

19  products at issue are also relevant for at least two reasons.   First, to calculate Apple's purported

20  lost profits, ████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████

22  ████████████████ *Id.* at ¶ 134. ████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████ *Id.* at 44:15-16. ████████████████████████████████

25  ████████████████████████████ Samsung is thus entitled to test the correctness of

26  these calculations by showing that Mr. Musika's assumptions concerning salaries was understated

27  or inflated.   Second, one of the most basic elements of manufacturing capacity is the wages Apple

28  pays to those employees to create that alleged capacity, which affects the costs of production and

**SAMSUNG'S OPPOSITION TO APPLE'S MOTIONS IN LIMINE**

1    Apple's ability to manufacture products in the volume alleged and relied upon by Mr. Musika to

2    support his opinions.   Apple's attempt to exclude this relevant evidence, and hence hamstring

3    Samsung's ability to counter Apple's damages theories' at trial, should be rejected..

4           Finally, Apple cannot claim that its taxes are probative when its expert calculates

5    enormous damages, but irrelevant when Samsung's expert uses them to rebut Mr. Musika's

6    contentions.   D'Amato Decl., Ex. H (Michael Wagner Dep., May 12, 2012, at 514:19-515:1)

7    (discussing Mr. Musika's use of only a █████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████

9    █████████████████.   Further, the amount of Apple's taxes (what it refers to as its "tax bill")

10   is relevant, among other reasons, as a source to critique and rebut Mr. Musika's analysis.

11   Mr. Musika asserts███████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████ (Dkt.

13   No. 991 (Musika Expert Rep.) at ¶ 185.)   Yet, he states in the very next paragraph of his report

14   that he █████████████████████████████████ *Id.* ¶ 186.   Why Mr. Musika

15   makes this departure, and how it affects his analysis and conclusions, are among the reasons why

16   evidence of Apple's taxes paid is relevant.

17           Apple attempts to blur the distinction between unidentified irrelevant information and

18   specific items of probative financial evidence, such as Apple's profits and wealth, the amount of

19   its taxes and the wages it must pay to make the products at issue.   If Apple believes at trial that

20   certain financial information is irrelevant and unduly prejudicial, it can register an objection.

21   What is cannot do is preclude Samsung from presenting its damages case by excluding evidence

22   before trial its own expert has put at issue.   "[E]vidence  is excluded on a motion in limine 'only if

23   the evidence is clearly inadmissible *for any purpose*.'" *Fresenius Med. Care Holdings, Inc., v.*

24   *Baxter Int'l, Inc.*, 2006 WL 1646113 (N.D. Cal. June 12, 2006) (emphasis added); *see also id.*

25   (explaining that even non-financial data, only secondarily related to damages, should be admitted

26   if it has a tendency to make a party's damages arguments more or less probable than they would

27   be without the evidence).   "In weighing the probative value of evidence against the dangers and

28   considerations enumerated in Rule 403, the general rule is that the balance should be struck in

1  favor of admission."   *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir.1980); *United States v.*

2  *Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) (same).[3]

3      Here, Apple tries to exclude primary, directly relevant financial information that would be

4  used by Samsung to show that Apple's alleged harm is either nonexistent, or greatly overstated.

5  To that extent, this is an improper attempt to prevent the jury from having access to relevant

6  evidence.   The Court should deny Apple's motion.

7      **I.**   ████████████████████████████████████

8  ████████████████████████████████

9      Apple's Motion *In Limine* is unsupported by law or logic.  Even  though Apple seeks

10  Samsung's profits as a remedy, it essentially asks the Court to preclude Samsung from introducing

11  any evidence of SEA's and STA's actual profits from sales of the accused Samsung devices

12  because Apple considers those profits to be too low.   Instead, Apple wants to attribute SEC's

13  higher profits to STA and SEA as what it calls "consolidated profits."   Apple's financial

14  engineering should be rejected.

15      Apple's argument is that ████████████████████████

16  ███████████████████████████████████████████

17  ███████████████████████████████████████████

18  ████████  But so what?   SEA's and STA's profits are what they are.  ██████████

19  ███████████████████████████████████████████

21     [3]   As this also makes clear, if Apple is seeking to preclude Samsung from impeaching

22  Apple's witnesses by using publicity surrounding Apple's own conduct, that too fails.   As an

23  initial matter, Apple's sweeping demands for unspecified relief is improper and impermissible. Furthermore, Apple's witnesses, including its experts Winer and Bressler, make sweeping

24  assertions about Apple's "brand" and about Samsung diluting it.  Evidence  regarding negative publicity surrounding Apple and its conduct is directly relevant to such matters that Apple has

25  chosen to put at issue.   For example, they are pertinent to refuting Apple's claims of causation, since the jury may reasonably infer that it is not Samsung, but instead other instances of negative

26  publicity having nothing to do with Samsung, that have been the cause of Apple's putative losses and supposed dilution of its brand.  *Cf.*, *Huberman v. Tag-It Pac. Inc.*, 314 F. App'x 59, 62 (9th

27  Cir. 2009) (explaining that reasonable factfinders can draw conclusions about the causes of a company's losses from reviewing negative publicity about the company).

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████  This was explained

4  by STA's Chief Financial Officer, Timothy Sheppard:



(See D'Amato Decl., Ex. J (T. Sheppard Dep. 2/29/12) at 126:2-10.)[4]

If Apple prevails on its claims at trial, it may be entitled to STA's and/or SEA's *actual* profits from sales of the accused Samsung products.   15 U.S.C. § 1117(a) (the plaintiff shall be entitled to recover, upon the finding of an infringement and "subject to the principles of equity": [¶] (1) *defendant's profits*") (emphasis added); 35 U.S.C. § 289 (An accused design patent infringer "shall be liable to the owner to the extent of *his total profit*").   Apple is not entitled to ignore those profits – and even preclude Samsung from introducing evidence of them – █████ █████████████████████████████████████████████████

Nor should Apple be allowed to mislead the jury by using the term "consolidated profits" to suggest that – if the jury finds SEA and/or STA liable, but not SEC – it can order STA and SEA to disgorge SEC's profit, not just their own.   The Federal Circuit has repeatedly held that a corporation must accept both the benefits and the consequences of its structure, one significant consequence being preclusion from claiming an affiliate's lost profits in utility patent infringement cases.  In  *Poly-America, L.P. v. GSE Lining Technology, Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (*citing General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983)), the Federal Circuit held that the patentee was not entitled to claim the alleged lost profits of its sister

_____

[4]   Although Apple's Motion states that ████████████████████████████████████████ Apple fails to include a citation to any such admission.   (See Dkt. No. 1184, 16:25-27.)

corporation, despite the fact that both the patentee and the sister corporation were wholly owned

by the same corporate parent.   Similarly, in *Mars, Inc. v Coin Acceptors, Inc.*, 527 F.3d 1359

(Fed. Cir. 2008), the Federal Circuit rejected the parent patentee's assertion that its subsidiary's

lost profits are, by virtue of the corporate relationship, inherently its lost profits.

Here, STA and SEA made certain profits from the sale of the accused products █████

████████████████████████████████   SEC also made certain profits from

selling those products to STA and SEA, which then sold them in the United States.   ████████

█████████████████████████████████████████████████████

███████████████████████   is irrelevant because they are all distinct corporate entities.

Absent an *alter ego* or veil piercing theory that Apple has never plead or articulated (undoubtedly

because it knows it could not sustain any such theory), Apple's interpretation of "Samsung's

economic profits" lacks any relevance and would only serve to confuse the jury.

Apple's reliance on *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476 (D. Minn. 1980)

is unavailing.   *Bergstrom* addresses only the liability of separate entities for infringement, but not

the manner in which profits for separate entities should be calculated.   *Id.* at 496.   Apple has

failed to cite a single case supporting the notion that:   (1) a defendant should be precluded from

offering evidence of its actual profits where disgorgement of profits is sought; (2) a defendant's

profits should be combined with that of another entity for disgorgement purposes, thus potentially

resulting in the defendant disgorging more than it actually earned; or (3) a plaintiff should be able

to suggest to the jury that a defendant's profits should be combined with that of another entity for

disgorgement purposes, thus potentially resulting in the defendant disgorging more than it actually

earned.   Put simply, what Apple intends to argue at trial is not only unsupported by any law, but

highly misleading, and should be precluded in accordance with Samsung's Motion *in Limine* No.

9.

Indeed, to allow Apple to present its "consolidated profits" argument to the jury would be

an error of law.   The jury cannot increase a plaintiff's recovery by simply deeming the defendant

to have made more profit than it actually did.   *See The Coryn Group II, LLC v. O.C. Seacrets,*

*Inc.*, 2011 WL 862729, at *9 n.29 (D. Md. March 10, 2011) (the "language of the Lanham Act is

1   clear-a successful plaintiff in a trademark infringement may recover the 'defendant's profits,' and

2   to prove the defendant's profits, the plaintiff must show the 'defendant's sales.') 15  U.S.C. §

3   1117(a).  *The Act does not allow for recovery of profits not attributable to the defendant*.")

4   (Emphasis in original).

5          Finally, Apple is trying to have it both ways.   Apple's damages expert, Terry Musika,

6   █████████████████████████████████████████████████████████████████████████

7   ██████  (See Dkt. No. 991 (Musika Expert Rep.) at ¶ 148.)   Yet, Apple now tries to preclude

8   Samsung from offering the same type of evidence when it would not serve Apple's objectives.

9          Samsung is entitled to put in evidence of the actual profits made by SEA and STA

10  attributable to the products at issue, because it is pertinent to the jury's calculation of

11  disgorgement.   Apple's  request to exclude this relevant evidence in an attempt to present a

12  highly misleading argument to the jury should be denied.

13          **J.      Response to Apple's Motion No. 10 to Exclude Evidence and Argument Re:
                      Financial Terms For Apple's Acquisition of Fingerworks**

14          In light of recent claim narrowing in this case, Samsung does not intend to offer evidence

15  or argument about the financial terms of Apple's acquisition of Fingerworks.   Nothing in Apple's

16  motion or this statement requires the exclusion of evidence concerning Fingerworks generally.

17

18  DATED: July 10, 2012                     QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
19

20  By                                       */s/ Victoria F. Maroulis*
21  Victoria                                      F. Maroulis
                                             Attorneys for SAMSUNG ELECTRONICS
22                                           CO., LTD., SAMSUNG ELECTRONICS
                                             AMERICA, INC., and SAMSUNG
23                                           TELECOMMUNICATIONS AMERICA, LLC

24

25

26

27

28