1    [COUNSEL LISTED ON SIGNATURE PAGES]

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11   APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK

12                  Plaintiff,                     **(DISPUTED) JOINT PROPOSED
                                                   JURY INSTRUCTIONS**
13           v.
                                                   Date:    July 24, 2012
14   SAMSUNG ELECTRONICS CO., LTD., a              Time:    1:30 pm
     Korean corporation; SAMSUNG                   Place:   Courtroom 1, 5th Floor
15   ELECTRONICS AMERICA, INC., a New              Judge:   Hon. Lucy H. Koh
     York corporation; and SAMSUNG
16   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited liability company,
17
                  Defendants.
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

**PRELIMINARY INSTRUCTIONS** ............................................................................. 1

4

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 1 JURY TO BE GUIDED BY
OFFICIAL ENGLISH TRANSLATION/INTERPRETATION ........................................ 2

5

6

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 2 USE OF INTERPRETERS
IN COURT.................................................................................................................. 4

7

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 3 BENCH CONFERENCES
AND RECESSES........................................................................................................ 6

8

9

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 4 RULING ON
OBJECTIONS............................................................................................................. 8

10

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 5 WHAT PATENTS AND
TRADE DRESS ARE AND HOW THEY ARE OBTAINED........................................ 10

11

12

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6 SUMMARY OF PATENT
CONTENTIONS....................................................................................................... 16

13

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6.1 PATENTS AT
ISSUE............................................................................................................ 25

14

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6.2 THE UTILITY
PATENTS AT ISSUE IN THIS CASE ............................................................. 26

15

16

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6.3 THE DESIGN
PATENTS AT ISSUE IN THIS CASE ............................................................. 27

17

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7 SUMMARY OF TRADE
DRESS CONTENTIONS .......................................................................................... 28

18

19

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.1 DEFINITION OF
A TRADE DRESS .......................................................................................... 31

20

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.2 HOW A TRADE
DRESS IS OBTAINED ................................................................................... 32

21

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.3 TRADE DRESS
LIABILITY—THEORIES AND POLICIES ....................................................... 33

22

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.4 TRADE DRESS—
NO LIABILITY FOR COPYING....................................................................... 34

23

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.5 TRADE DRESS
DILUTION...................................................................................................... 35

24

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 8 SUMMARY OF
ANTITRUST AND CONTRACT CONTENTIONS ...................................................... 36

25

26

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 9 OUTLINE OF TRIAL .............. 37

27

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 10 INTERPRETATION OF
CLAIMS................................................................................................................... 41

28

**TABLE OF CONTENTS**
**(continued)**

Page

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 10.1 DESIGN
PATENT INTERPRETATION OF CLAIMS ....................................................... 44

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 11 DESIGN AND UTILITY
PATENT TERM GLOSSARY ...................................................................... 47

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE** ........................................................... **51**

**GENERAL CIVIL INSTRUCTIONS** ........................................................................ **52**

PROPOSED FINAL JURY INSTRUCTION NO. 12 BURDENS OF PROOF--
GENERALLY .......................................................................................... 53

PROPOSED FINAL JURY INSTRUCTION NO. 12.1 BURDEN OF PROOF—
CLEAR AND CONVINCING EVIDENCE ....................................................... 55

PROPOSED FINAL JURY INSTRUCTION NO. 13 TWO OR MORE PARTIES—
DIFFERENT LEGAL RIGHTS ..................................................................... 56

PROPOSED FINAL JURY INSTRUCTION NO. 14 CHARTS AND SUMMARIES ............... 57

PROPOSED FINAL JURY INSTRUCTION NO. 14.1 CHARTS AND
SUMMARIES IN EVIDENCE ...................................................................... 59

PROPOSED FINAL JURY INSTRUCTION NO. 15 RETURN OF VERDICT ....................... 60

PROPOSED FINAL JURY INSTRUCTION NO. 16 SUMMARY OF CONTENTIONS ........ 62

PROPOSED FINAL JURY INSTRUCTION NO. 16.1 SUMMARY OF
CONTENTIONS ...................................................................................... 71

PROPOSED FINAL JURY INSTRUCTION NO. 16.2 SUMMARY OF UTILITY
PATENT CONTENTIONS .......................................................................... 72

PROPOSED FINAL JURY INSTRUCTION NO. 16.3 SUMMARY OF DESIGN
PATENT ISSUES ..................................................................................... 75

**UTILITY PATENT JURY INSTRUCTIONS** ........................................................... **76**

PROPOSED FINAL JURY INSTRUCTION NO. 17 UTILITY PATENTS—
INTERPRETATION OF CLAIMS ................................................................. 77

PROPOSED FINAL JURY INSTRUCTION NO. 18 UTILITY PATENTS—
INFRINGEMENT GENERALLY ................................................................... 80

PROPOSED FINAL JURY INSTRUCTION NO. 19 UTILITY PATENTS—DIRECT
INFRINGEMENT ..................................................................................... 82

**TABLE OF CONTENTS**
**(continued)**

Page

PROPOSED FINAL JURY INSTRUCTION NO. 20 UTILITY PATENTS—LITERAL INFRINGEMENT ................................................................................ 85

PROPOSED FINAL JURY INSTRUCTION NO. 21 UTILITY PATENTS—INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ........................... 87

PROPOSED FINAL JURY INSTRUCTION NO. 22 UTILITY PATENTS—LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS ........................................ 91

PROPOSED FINAL JURY INSTRUCTION NO. 23 UTILITY PATENTS—INVALIDITY—BURDEN OF PROOF ........................................................... 93

PROPOSED FINAL JURY INSTRUCTION NO. 24 UTILITY PATENTS—WRITTEN DESCRIPTION REQUIREMENT ...................................................... 96

PROPOSED FINAL JURY INSTRUCTION NO. 25 UTILITY PATENTS—ANTICIPATION/STATUTORY BARS .......................................................... 97

PROPOSED FINAL JURY INSTRUCTION NO. 25.1 UTILITY PATENTS—ANTICIPATION (STATUTORY BAR) ............................................................ 101

PROPOSED FINAL JURY INSTRUCTION NO. 26 UTILITY PATENTS—OBVIOUSNESS ......................................................................................... 103

PROPOSED FINAL JURY INSTRUCTION NO. 27 PATENT EXHAUSTION .................... 107

PROPOSED FINAL JURY INSTRUCTION NO. 28 EQUITABLE DEFENSES – WAIVER .......................................................................................... 110

PROPOSED FINAL JURY INSTRUCTION NO. 29 EQUITABLE DEFENSES – EQUITABLE ESTOPPEL ....................................................................... 113

PROPOSED FINAL JURY INSTRUCTION NO. 30 UTILITY PATENT DAMAGES—GENERALLY ....................................................................................... 117

PROPOSED FINAL JURY INSTRUCTION NO. 31 UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY ........................................................... 121

PROPOSED FINAL JURY INSTRUCTION NO. 32 UTILITY PATENT DAMAGES — LOST PROFITS — FACTORS TO CONSIDER ........................................ 124

PROPOSED FINAL JURY INSTRUCTION NO. 33 UTILITY PATENT DAMAGES—LOST PROFITS— NON-INFRINGING SUBSTITUTES ............................ 128

PROPOSED FINAL JURY INSTRUCTION NO. 34 UTILITY PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT ................................................. 131

1

## TABLE OF CONTENTS
(continued)

2

Page

3

PROPOSED FINAL JURY INSTRUCTION NO. 35 UTILITY PATENT DAMAGES—
LOST PROFITS—MARKET SHARE ........................................................................... 133

4

PROPOSED FINAL JURY INSTRUCTION NO. 36 UTILITY PATENT DAMAGES—
REASONABLE ROYALTY—DEFINITION .................................................................. 135

5

PROPOSED FINAL JURY INSTRUCTION NO. 36.1 REASONABLE
ROYALTY—DEFINITION ......................................................................................... 138

6

7

PROPOSED FINAL JURY INSTRUCTION NO. 37 UTILITY PATENT DAMAGES—
REASONABLE ROYALTY—  RELEVANT FACTORS ........................................... 140

8

PROPOSED FINAL JURY INSTRUCTION NO. 38 UTILITY PATENT DAMAGES—
DAMAGES FOR METHOD CLAIMS MUST BE CORRELATED TO USE ............. 144

9

PROPOSED FINAL JURY INSTRUCTION NO. 39 UTILITY PATENT DAMAGES—
DATE OF COMMENCEMENT—PRODUCTS ........................................................... 145

10

11

PROPOSED FINAL JURY INSTRUCTION NO. 40 CALCULATING DAMAGES IN
CASES OF INDUCEMENT ......................................................................................... 149

12

PROPOSED FINAL JURY INSTRUCTION NO. 41 UTILITY PATENT DAMAGES—
NO DOUBLE COUNTING .......................................................................................... 150

13

14

15

**DESIGN PATENT JURY INSTRUCTIONS** ..................................................................... **151**

16

PROPOSED FINAL JURY INSTRUCTION NO. 42 DESIGN PATENTS—
INTERPRETATION OF PATENT CLAIMS ............................................................... 152

17

18

19

PROPOSED FINAL JURY INSTRUCTION NO. 43 DESIGN PATENT
INFRINGEMENT—GENERALLY ............................................................................... 156

20

PROPOSED FINAL JURY INSTRUCTION NO. 44 DESIGN PATENTS—DIRECT
INFRINGEMENT .......................................................................................................... 157

21

22

PROPOSED FINAL JURY INSTRUCTION NO. 44.1 DESIGN PATENT
DIRECT INFRINGEMENT – LIABILITY MUST BE PROVED FOR
EACH ENTITY SEPARATELY ................................................................................... 162

23

24

PROPOSED FINAL JURY INSTRUCTION NO. 44.2 DESIGN PATENT
DIRECT INFRINGEMENT—"ORDINARY OBSERVER TEST" ................. 163

25

PROPOSED FINAL JURY INSTRUCTION NO. 44.3 DESIGN PATENT
DIRECT INFRINGEMENT—COMPARISONS ............................................... 166

26

PROPOSED FINAL JURY INSTRUCTION NO. 44.4 DESIGN PATENT
DIRECT INFRINGEMENT—ORNAMENTAL VERSUS FUNCTIONAL
FEATURES ...................................................................................................... 168

27

28

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

PROPOSED FINAL JURY INSTRUCTION NO. 44.5 DESIGN PATENT
PROSECUTION HISTORY ESTOPPEL ......................................................... 170

PROPOSED FINAL JURY INSTRUCTION NO. 45 DESIGN PATENTS—
INVALIDITY BURDEN OF PROOF ........................................................... 171

PROPOSED FINAL JURY INSTRUCTION NO. 46 DESIGN PATENTS—
ANTICIPATION/STATUTORY BARS ......................................................... 174

PROPOSED FINAL JURY INSTRUCTION NO. 46.1 ANTICIPATION – A
SINGLE REFERENCE OR A SINGLE PRODUCT ......................................... 179

PROPOSED FINAL JURY INSTRUCTION NO. 46.2 DESIGN PATENT
ANTICIPATION – PUBLIC USE AND PUBLIC DISPLAY .......................... 180

PROPOSED FINAL JURY INSTRUCTION NO. 46.3 ANTICIPATION – DATE
OF INVENTION ........................................................................................ 181

PROPOSED FINAL JURY INSTRUCTION NO. 47 DESIGN PATENTS—
OBVIOUSNESS ......................................................................................... 182

PROPOSED FINAL JURY INSTRUCTION NO. 47.1 DESIGN PATENT
OBVIOUSNESS ......................................................................................... 185

PROPOSED FINAL JURY INSTRUCTION NO. 47.2 DESIGN PATENT
OBVIOUSNESS – PRIMARY AND SECONDARY REFERENCES ............. 187

PROPOSED FINAL JURY INSTRUCTION NO. 47.3 DESIGNER OF
ORDINARY SKILL IN THE ART ............................................................... 189

PROPOSED FINAL JURY INSTRUCTION NO. 47.4 DESIGN PATENT
OBVIOUSNESS – SECONDARY FACTORS INDICATING
NONOBVIOUSNESS ................................................................................. 190

PROPOSED FINAL JURY INSTRUCTION NO. 48 DESIGN PATENTS—
INVALIDITY—LACK OF ORNAMENTALITY ......................................... 192

PROPOSED FINAL JURY INSTRUCTION NO. 49 DESIGN PATENT -- DRAWINGS ...... 196

PROPOSED FINAL JURY INSTRUCTION NO. 50 DESIGN PATENT INVALIDITY –
INDEFINITENESS .................................................................................... 197

PROPOSED FINAL JURY INSTRUCTION NO. 51 DESIGN PATENT INVALIDITY –
DOUBLE PATENTING .............................................................................. 198

PROPOSED FINAL JURY INSTRUCTION NO. 52 DESIGN PATENT DAMAGES—
GENERALLY ............................................................................................ 199

PROPOSED FINAL JURY INSTRUCTION NO. 53 DESIGN PATENT DAMAGES -
LOST PROFITS ........................................................................................ 203

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3

PROPOSED FINAL JURY INSTRUCTION NO. 53.1 LOST PROFITS – FACTORS TO CONSIDER ................................................................. 206

4

PROPOSED FINAL JURY INSTRUCTION NO. 53.2 LOST PROFITS – MARKET SHARE ........................................................................... 207

5

PROPOSED FINAL JURY INSTRUCTION NO. 53.3 DAMAGES – AMOUNT OF LOST PROFITS .......................................................................... 208

6

PROPOSED FINAL JURY INSTRUCTION NO. 54 DESIGN PATENT INFRINGEMENT DAMAGES – DEFENDANT'S PROFITS ..................... 209

7

PROPOSED FINAL JURY INSTRUCTION NO. 55 DESIGN PATENT DAMAGES— REASONABLE ROYALTY— ENTITLEMENT—DEFINITION—RELEVANT FACTORS ........................................................................................ 212

8

9

PROPOSED FINAL JURY INSTRUCTION NO. 55.1 REASONABLE ROYALTY—RELEVANT FACTORS ............................................... 217

10

PROPOSED FINAL JURY INSTRUCTION NO. 56 DESIGN PATENT DAMAGES— DATE OF COMMENCEMENT—PRODUCTS ................................ 219

11

12

PROPOSED FINAL JURY INSTRUCTION NO. 57 DESIGN PATENT DAMAGES— NO DOUBLE COUNTING ......................................................... 222

13

14

15

**INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS .................. 223**

16

PROPOSED JURY INSTRUCTION NO. 58 UTILITY AND DESIGN PATENTS— INDUCING PATENT INFRINGEMENT ........................................ 224

17

PROPOSED JURY INSTRUCTION NO. 58.1 INDUCING PATENT INFRINGEMENT ...................................................................... 227

18

19

PROPOSED FINAL JURY INSTRUCTION NO. 58.2 INDUCING DESIGN PATENT INFRINGEMENT ........................................................ 229

20

.PROPOSED FINAL JURY INSTRUCTION NO. 59 DESIGN AND UTILITY PATENTS—WILLFUL PATENT INFRINGEMENT ...................... 230

21

22

23

**TRADE DRESS JURY INSTRUCTIONS ................................................ 236**

24

PROPOSED FINAL JURY INSTRUCTION NO. 60 TRADE DRESS DILUTION AND INFRINGEMENT—PROTECTABILITY .................................... 237

25

PROPOSED FINAL JURY INSTRUCTION NO. 61 TRADE DRESS PROTECTABILITY—DISTINCTIVENESS ................................... 239

26

27

PROPOSED FINAL JURY INSTRUCTION NO. 61.1 SECONDARY MEANING—ADVERTISING ...................................................... 243

28

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3

PROPOSED FINAL JURY INSTRUCTION NO. 61.2 SECONDARY
  MEANING—SALES SUCCESS ................................................ 244

4

PROPOSED FINAL JURY INSTRUCTION NO. 61.3 SECONDARY
  MEANING—EXCLUSIVITY OF USE .......................................... 245

5

PROPOSED FINAL JURY INSTRUCTION NO. 61.4 SECONDARY
  MEANING—COPYING .......................................................... 246

6

PROPOSED FINAL JURY INSTRUCTION NO. 61.5 SECONDARY
  MEANING—ACTUAL CONFUSION .............................................. 248

7

PROPOSED FINAL JURY INSTRUCTION NO. 61.6 SECONDARY
  MEANING—TIMING ............................................................. 249

8

9

10

PROPOSED FINAL JURY INSTRUCTION NO. 62 TRADE DRESS
  PROTECTABILITY—NON-FUNCTIONALITY ................................... 250

11

PROPOSED FINAL JURY INSTRUCTION NO. 63 TRADE DRESS DILUTION—
  ELEMENTS AND BURDEN OF PROOF ....................................... 254

12

PROPOSED FINAL JURY INSTRUCTION NO. 63.1 TRADE DRESS
  DILUTION—ELEMENTS ........................................................ 257

13

14

PROPOSED FINAL JURY INSTRUCTION NO. 63.2 TRADE DRESS
  FUNCTIONALITY—DILUTION—BURDEN OF PROOF ........................ 258

15

PROPOSED FINAL JURY INSTRUCTION NO. 64 TRADE DRESS DILUTION
  ELEMENT #2—FAME ........................................................... 259

16

PROPOSED FINAL JURY INSTRUCTION NO. 64.1 TRADE DRESS
  DILUTION—FAME—SURVEY EVIDENCE ................................... 263

17

18

PROPOSED FINAL JURY INSTRUCTION NO. 65 TRADE DRESS DILUTION
  ELEMENT #3—USE OF ACCUSED TRADE DRESS IN COMMERCE AFTER
  APPLE TRADE DRESS BECAME FAMOUS ................................. 264

19

20

PROPOSED FINAL JURY INSTRUCTION NO. 66 TRADE DRESS DILUTION
  ELEMENT #4—DILUTION ..................................................... 266

21

PROPOSED FINAL JURY INSTRUCTION NO. 67 TRADE DRESS
  INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF (15 U.S.C. §
  1125(A)(1)) ..................................................................... 270

22

23

PROPOSED FINAL JURY INSTRUCTION NO. 68 INFRINGEMENT—LIKELIHOOD
  OF CONFUSION ................................................................ 272

24

25

PROPOSED FINAL JURY INSTRUCTION NO. 69 TRADE DRESS
  INFRINGEMENT—LIKELIHOOD OF CONFUSION—SLEEKCRAFT TEST
  (15 U.S.C. §§ 1114(1), 1125(A)) .......................................... 273

26

27

PROPOSED FINAL JURY INSTRUCTION NO. 69.1 LIKELIHOOD OF
  CONFUSION FACTORS— STRENGTH OF TRADE DRESS ............... 280

28

**TABLE OF CONTENTS**
**(continued)**

Page

PROPOSED FINAL JURY INSTRUCTION NO. 69.2 LIKELIHOOD OF CONFUSION FACTORS—SIMILARITY OF TRADE DRESS ..................... 281

PROPOSED FINAL JURY INSTRUCTION NO. 69.3 LIKELIHOOD OF CONFUSION FACTORS—INTENT ...................................................... 282

PROPOSED FINAL JURY INSTRUCTION NO. 69.4 LIKELIHOOD OF CONFUSION FACTORS—ADVERTISING ....................................... 283

PROPOSED FINAL JURY INSTRUCTION NO. 70 TRADE DRESS .................................. 284

PROPOSED FINAL JURY INSTRUCTION NO. 71 DEFINITION–TRADE DRESS ........... 285

PROPOSED FINAL JURY INSTRUCTION NO. 72 TRADE DRESS LIABILITY— THEORIES AND POLICIES ........................................................................ 287

PROPOSED FINAL JURY INSTRUCTION NO. 73 TRADE DRESS—NO LIABILITY FOR COPYING ......................................................................................... 288

PROPOSED FINAL JURY INSTRUCTION NO. 74 TRADE DRESS DAMAGES IN GENERAL ............................................................................................... 290

PROPOSED FINAL JURY INSTRUCTION NO. 75 TRADE DRESS DAMAGES— PLAINTIFF'S ACTUAL DAMAGES (15 U.S.C. § 1117(A)) ..................................... 293

PROPOSED FINAL JURY INSTRUCTION NO. 76 TRADE DRESS DAMAGES— DEFENDANT'S PROFITS (15 U.S.C. § 1117(A)) ....................................... 296

PROPOSED FINAL JURY INSTRUCTION NO. 76.1 DAMAGES—TRADE DRESS INFRINGEMENT—APPORTIONMENT OF DEFENDANT'S PROFITS ................................................................................................... 301

PROPOSED FINAL JURY INSTRUCTION NO. 77 TRADE DRESS DAMAGES – REASONABLE ROYALTY .......................................................................... 303

PROPOSED FINAL JURY INSTRUCTION NO. 78 TRADE DRESS DILUTION DAMAGES— WILLFULNESS REQUIRED FOR DILUTION DAMAGES ............ 307

PROPOSED FINAL JURY INSTRUCTION NO. 79 MONETARY REMEDIES— TRADE DRESS DILUTION—ACTUAL NOTICE REQUIREMENT ...................... 311

PROPOSED FINAL JURY INSTRUCTION NO. 80 TRADE DRESS DAMAGES—NO DOUBLE-COUNTING ............................................................................... 313

PROPOSED FINAL JURY INSTRUCTION NO. 78.1 MONETARY REMEDIES—ONLY ONE RECOVERY PER ACCUSED PRODUCT ......... 315

PROPOSED FINAL JURY INSTRUCTION NO. 81 DILUTION—TARNISHMENT .......... 316

BREACH OF CONTRACT JURY INSTRUCTIONS ............................................... 317

PROPOSED FINAL JURY INSTRUCTION NO. 82 BREACH OF CONTRACT – OBLIGATION TO LICENSE PATENTS ON FRAND TERMS ................................ 318

**TABLE OF CONTENTS**
(continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 82.1 REQUIREMENTS OF THE ETSI IPR POLICY—AVAILABILITY OF LICENSES .......................... 320

PROPOSED FINAL JURY INSTRUCTION NO. 83 BREACH OF CONTRACT – OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL PROPERTY RIGHTS ("IPR") ................................................................................................ 321

**ANTITRUST JURY INSTRUCTIONS** ............................................................ 323

PROPOSED FINAL JURY INSTRUCTION NO. 84 MONOPOLIZATION ─ ELEMENTS ...................................................................................................... 324

PROPOSED FINAL JURY INSTRUCTION NO. 84.1 MONOPOLIZATION ─ MONOPOLY POWER GENERALLY ............................................................ 326

PROPOSED FINAL JURY INSTRUCTION NO. 85 MONOPOLIZATION ─ RELEVANT MARKET ...................................................................................... 327

PROPOSED FINAL JURY INSTRUCTION NO. 85.1 MONOPOLIZATION RELEVANT TECHNOLOGY—MARKET ...................................................... 329

PROPOSED FINAL JURY INSTRUCTION NO. 85.2 MONOPOLIZATION RELEVANT GEOGRAPHIC MARKET—MARKET ................................... 330

PROPOSED FINAL JURY INSTRUCTION NO. 86 MONOPOLIZATION — EVIDENCE OF MONOPOLY POWER ........................................................ 331

PROPOSED FINAL JURY INSTRUCTION NO. 86.1 MONOPOLIZATION— EXISTENCE OF MONOPOLY POWER—DIRECT PROOF ........................ 335

PROPOSED FINAL JURY INSTRUCTION NO. 87 MONOPOLIZATION — WILLFUL ACQUISITION OF MONOPOLY POWER THROUGH ANTICOMPETITIVE ACTS ...................................................................... 337

PROPOSED FINAL JURY INSTRUCTION NO. 88 MONOPOLIZATION — ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING ................... 340

PROPOSED FINAL JURY INSTRUCTION NO. 89 MONOPOLIZATION — SAMSUNG'S INTENT .................................................................................. 344

PROPOSED FINAL JURY INSTRUCTION NO. 90 MONOPOLIZATION — INTERSTATE CONDUCT .......................................................................... 346

PROPOSED FINAL JURY INSTRUCTION NO. 91 MONOPOLIZATION — INJURY AND DAMAGES ................................................................................ 347

1

## PRELIMINARY INSTRUCTIONS

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 1**
**JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSLATION/INTERPRETATION**

**Apple's Proposed Instruction**

3

4

**[THIS INSTRUCTION SHOULD BE GIVEN WHEN THE FIRST FOREIGN SPEAKER TESTIFIES.]**

5

Languages other than English may be used during this trial.  One such language will be Korean.

6

7

The evidence to be considered by you is only that provided through the official court translators.  Although some of you may know Korean, it is important that all jurors consider the same evidence.  Therefore, you must accept the English translation.  You must disregard any different meaning.

8

9

**Source**

Ninth Circuit Model Civil Jury Instr. - 1.16 (2007 Ed.).

10

11

**Samsung's Objection to Apple's Instruction**

12

13

14

15

16

17

18

19

Although Apple's Instruction is similar in many respects, Samsung's Alternative to Apple's Proposed Preliminary Instruction No. 1 is more descriptive and easier for the jurors to understand.  The bigger dispute, however, is the time when this instruction will be read.  Apple proposes to read this instruction, and the next, Apple's Proposed Preliminary Instruction No. 2, at the time Samsung's first Korean-speaking witness is put on the stand.  This proposal will disrupt the trial and unnecessarily call attention to the witness' ethnicity.  Samsung's proposal to have this instruction read along with the other preliminary instructions is preferable because it will still inform the jurors that they will hear testimony and see documents in Korean before the first Korean speaking witness takes the stand, but without the disadvantages set forth above.  In addition, the instruction will be included in the juror notebooks the Court has requested, which the members of the jury can review at any time, and can reference when the first Korean speaking witness testifies.  The preliminary instructions introduce the jury to many different issues they will encounter for the first time when various witnesses get on the stand, and there is no reason to treat this particular issue differently.  As a result, Apple's proposal should be denied.

20

21

22

23

24

25

26

27

28

1

**Samsung's Proposed Instruction**

2

Languages other than English may be used during this trial.

3

Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although some of you may know, for example, Korean, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning.

4

5

6

**Source**

7

Ninth Circuit Model Civil Jury Instr. – 1.16 and 2.7 (2007 Ed.)

8

**Apple's Objection to Samsung's Instruction**

9

The jury will be asked to comprehend upwards of one hundred separate instructions throughout the course of these proceedings. To facilitate this process, this instruction should be given when the first foreign speaker testifies, providing the appropriate context in which to apply the instruction. This will also allow the jury to focus on the global instructions at the start of trial without being distracted or confused by instructions that only apply in narrow situations.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 2**
**USE OF INTERPRETERS IN COURT**

3

**Apple's Proposed Instruction**

4

**[THIS INSTRUCTION SHOULD BE GIVEN WHEN THE FIRST FOREIGN SPEAKER TESTIFIES.]**

5

6

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

7

**Source**

8

Ninth Circuit Model Civil Jury Instr. - 1.17 (2007 Ed.).

9

10

**Samsung's Objection to Apple's Instruction**

11

12

13

The text of this instruction is the same as that proposed by Samsung, but Apple seeks to have it read just before the first foreign-language speaker testifies. For all the reasons mentioned in Samsung's objection to Apple's Proposed Preliminary Instruction No. 1, however, Apple's proposal to have Apple's Proposed Preliminary Instruction No. 1 and Apple's Proposed Preliminary Instruction No. 2 at the time the first Korean speaking witness takes the witness stand should be denied.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Samsung's Proposed Instruction**

2

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

3

4

**Source**

5

Ninth Circuit Model Civil Jury Instr. – 1.17 (2007 Ed.)

6

**Apple's Objection to Samsung's Instruction**

7

The jury will be asked to comprehend and apply upwards of one hundred separate instructions throughout the course of these proceedings. To facilitate this process, this instruction should be given when the first foreign speaker testifies, providing the appropriate context in which to apply the instruction. This will also allow the jury to focus on the global instructions at the start of trial without being distracted or confused by instructions that only apply in narrow situations.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

<div align="center">

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 3**
**BENCH CONFERENCES AND RECESSES**

</div>

3

**Apple's Proposed Instruction**

4

**[THIS INSTRUCTION SHOULD BE GIVEN WHEN THE FIRST CONFERENCE OCCURS.]**

5
6
7
8

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

9
10

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

11

**Source**

12

Ninth Circuit Model Civil Jury Instr. - 1.18 (2007 Ed.).

13
14

**Samsung's Objection to Apple's Instruction**

15
16
17
18

The parties only dispute the time this instruction will be given. Apple's proposal to have this instruction read when the first sidebar conference occurs will again disrupt trial and distract the jury's attention from their fact evaluating duties. The Bench Conferences and Recesses instruction helpfully introduces the jury to the trial process, what they may see and experience, what might be discussed during conferences, and why. It should be given the beginning of trial, along with the other Preliminary Instructions, and without disrupting it any more than a sidebar conference already does.

19
20
21
22
23
24
25
26
27
28

**Samsung's Proposed Instruction**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Source**

Ninth Circuit Model Civil Jury Instr. – 1.18 (2007 Ed.)

**Apple's Objection to Samsung's Instruction**

The jury will be asked to comprehend and apply upwards of one hundred separate instructions throughout the course of these proceedings. To facilitate this process, this instruction should be given when the first bench conference and recess occurs, providing the appropriate context in which to apply the instruction. This will also allow the jury to focus on the core instructions at the start of trial without being distracted or confused by instructions that only apply in narrow situations.

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 4**
**RULING ON OBJECTIONS**

**Apple's Proposed Instruction**

**[THIS INSTRUCTION SHOULD BE GIVEN WHEN THE FIRST OBJECTION IS MADE.]**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**Source**

Ninth Circuit Model Civil Jury Instructions – 1.10 (2007 Ed).

**Samsung's Objection to Apple's Instruction**

The parties only dispute the time this instruction will be given.  Apple's proposal to have this instruction read when the first objection is made will again disrupt trial and distract the jury's attention from their decision making duties.  It should be given the beginning of trial, along with the other Preliminary Instructions, and without disrupting the trial.

**Samsung's Proposed Instruction**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**Source**

Ninth Circuit Model Civil Jury Instructions – 1.10 (2007 Edition)

**Apple's Objection to Samsung's Instruction**

The jury will be asked to comprehend and apply over one hundred separate instructions throughout the course of these proceedings.  To facilitate this process, this instruction should be given when the first objection is made, providing the appropriate context in which to apply the instruction.  This will also allow the jury to focus on the global instructions at the start of trial without being distracted or confused by instructions that only apply in narrow situations.

1

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 5**
**WHAT PATENTS AND TRADE DRESS ARE AND HOW THEY ARE OBTAINED**

2

3

**Apple's Proposed Instruction**

This case involves disputes relating to United States utility and design patents, and to trade dress. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me explain what patents and trade dress rights are, and how they are obtained.

4

5

6

**I.      Utility and Design Patents**

7

There are two types of patents in this case:  utility patents and design patents.  A "utility patent" protects inventions.  A utility patent may cover a process, machine, article of manufacture, or composition of matter.  A "design patent" protects the way an article of manufacture looks.  It covers the shape, configuration, and/or surface ornamentation of the article.

8

9

A valid patent gives its owner the right to prevent others from making, using, offering to sell, selling, or importing the invention or patented design within the United States during the patent's term.  A violation of this right is called "infringement."  The patent owner can enforce a patent against infringers in federal court.

10

11

12

The content and structure of utility and design patents are different.  A utility patent has what is called a "specification."  The specification describes what the invention is, how it works, how to make it, and how to use it.  The specification concludes with a number of claims.  The claims are numbered sentences that define the boundaries of the patent's protection and notify the public about them.

13

14

15

A design patent also has a "specification."  For a design patent, the specification contains drawings of the design and a description of the drawings.  It also has a claim, but design patents can only have one claim.  The claim generally refers to the drawings and how they are described. The claim defines the patent's boundaries and notifies the public of those boundaries.

16

17

18

For both types of patents, a Patent Office Examiner reviews the application for the patent and determines whether the claimed design or invention is patentable.  The Examiner reviews what is called "prior art" either that was in Patent Office records or that was submitted by the applicant. I will give you instructions later on what constitutes prior art.  In general, prior art includes things that existed before the claimed invention, that were publicly known, that were used in a publicly accessible way, or that were patented or described in a publication.  The Examiner considers whether each claim defines a design or an invention that is new and not obvious in view of the prior art.  A patent lists the prior art that the Examiner considered.

19

20

21

22

After the prior art search and examination of the application, the Examiner informs the applicant what the Examiner has found and whether any claim is patentable.  This writing from the Examiner is called an "office action."  In the case of a utility patent application, if the Examiner rejects the claims, the applicant may respond and/or change the claims or submit new claims.  In the case of a design patent application, if the Examiner rejects the claimed design, the applicant may respond and/or change the drawings.  In both cases, the applicant's response may include arguments about why the Examiner's initial rejection should be reconsidered.

23

24

25

26

This "patent prosecution" process takes place only between the Examiner and the applicant.  The process may go back and forth for some time until the Examiner finds that the requirements for a patent are met.  The papers generated during this back and forth make up the "prosecution history."  This material becomes available to the public at the time that the patent issues.

27

28

The fact that the Patent Office grants a patent does not necessarily mean that any invention or design claimed in the patent deserves the protection of a patent.  For example, the Patent Office may not have had available to it all the information that will be presented to you.  A company accused of infringement has the right to argue in federal court that a claimed invention or design is invalid because it does not meet the requirements for a patent.

## II.   Trade Dress

Trade dress is also at issue here.  Trade dress is the physical detail and design of a product or its packaging, which indicates the product's source and distinguishes it from the products of others.  Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.  The shape of the old-fashioned Coca-Cola bottle is an example of a trade dress.

The owner of a valid trade dress has the right to prevent others from "diluting" or "infringing" it.  "Dilution" refers to reducing the capacity of a famous trade dress to identify and distinguish products or services.  "Infringement" refers to another company's use of a trade dress similar to the owner's trade dress that is likely to cause confusion in the marketplace.

A company acquires the right to exclude others from infringing or diluting its trade dress by being the first to use it in the marketplace, or by using it before the alleged infringer or diluter.  Rights in a trade dress are obtained only through commercial use.

Once the owner of a trade dress has obtained the right to enforce it, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office (which is sometimes called the "Patent Office").  If the owner takes that step, when it later brings suit for infringement or dilution, the owner may rely solely on the certificate to prove that the trade dress is protectable.  That said, an unregistered trade dress can also provide the owner with the exclusive right to use that trade dress and to prevent others from diluting it.

## Source

Adapted from Ninth Circuit Model Jury Instr. – 15.0, 15.2 (2007 Ed.); ABA 3.1.1; N.D. Cal. Model Patent Jury Instr. A.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 1.1; adapted from instructions in *Nichia Corp. v. Seoul Semiconductor, Ltd.*, No. 3:06-CV-0162-MMC (JCS), Dkt. No. 912, filed Nov. 8, 2007 (N.D. Cal.).

## Samsung's Objection to Apple's Instruction

Samsung objects to Apple's Instruction to the extent it conflates utility and design patents and departs from the Northern District of California's Model Patent Jury Instructions.  Samsung's Alternative to Apple's Proposed Preliminary Instruction No. 5 below provides additional detail regarding the patent prosecution process, in particularly the process of obtaining design patents, which would benefit the jury in providing a better foundation for understanding the issues in this litigation.  Further, Apple's proposed instruction asserts that a design patent "covers the shape, configuration, and/or surface ornamentation of the article."  The statement is contrary to law.  A design patent cannot claim the basic shape of an article of manufacture without claiming the surface details or else it improperly intrudes on the province of utility patents.  The Federal Circuit made this clear in *Lee v. Dayton-Hudson*, 838 F.2d 1186 (Fed. Cir. 1988), where it rejected a patentee's argument that the surface ornamentation of his design did not matter because the "the novelty of his design resides in its basic configuration, not the surface details."  *Id.* at 1188.  The Court held that "by obtaining a design patent, not a utility patent, Mr. Lee limited his patent protection to the ornamental design of the article," and that "[d]esign patents do not and cannot include claims to the structural or functional aspects of the article."  Indeed,

1   the relevant statutory provisions have been amended to specifically exclude design patent
    protection for shapes.  The design patent statute previously allowed protection for, among other
2   things, "any new, useful, and original shape or configuration of any article of manufacture."  Act
    of July 8, 1870, c. 230, § 71, 16 Stat. 209.  In 1902, that language was removed and replaced by
3   language that is still substantially in place today: "Any person who has invented any new,
    original, and ornamental design for an article of manufacture . . ."  Act of May 9, 1902, c. 783, §
4   4929, 32 Stat. 193.  Apple has cited no authority for its instruction.  In another instance, Apple
    has pointed to unclear dicta in a pre-Federal Circuit case that was using language from the 1861
5   version of the statute, which is irrelevant in light of later statutory amendments.  Apple also
    previously cited an unsupported note in the MPEP.  While the MPEP is the authoritative guide
6   for such matters as drafting conventions, it cannot confer a property right where one was not
    created — and indeed has been expressly rejected — by statute.  Samsung's Alternative to
7   Apple's Proposed Preliminary Instruction No. 5  properly clarifies that design patents include
    their ornamental design and surface details, in conformity with the statutory history and Federal
8   Circuit law.  Apple's proposed instruction on what trade dress is and how it is obtained is
    prejudicial and an inaccurate statement of the law as well.  First, Apple's example of a Coca-
9   Cola bottle's shape is unnecessary and prejudicial as it implies that the shape of any utilitarian
    object is protectable as trade dress.  That is not accurate even for beverage containers, much less
10  electronic devices.  *See Talking Rain Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601,
    605 (9th Cir. 2003) (affirming trade dress for unadorned water bottle was functional).  Second,
11  Apple mischaracterizes trade dresses as absolute property rights by stating that "the owner of a
    valid trade dress has the right to prevent others from diluting or infringing it."  This ignores the
12  competing policy justifications for trade dress protection.  A more balanced approach is found in
    the Ninth Circuit's Model Jury Instructions No. 15.4, as reflected in Samsung's Proposed
13  Preliminary Instruction No. 6.3.  Third, Apple's instruction about the relevance of trade dress
    registrations is unbalanced and prejudicial.  It makes no mention of a defendant's right to rebut
14  the presumption of a certificate and erroneously suggests instead that registration provides
    irrefutable and conclusive proof of protectability. *See Vuitton Et Fils S.A. v. J. Young Enterprises,*
15  *Inc.*, 644 F. 2d 769, 775 (9th Cir. 1981) ("registration ... shifts the burden of proof from the
    plaintiff . . . to the defendant, who must introduce sufficient evidence to rebut the presumption of
16  plaintiff's right to such protected use.").  Further, Apple does not provide any explanation of how
    unregistered trade dress becomes protectable, further compounding the inaccuracies and
17  confusion caused by Apple's misleading suggestion that absolute property rights are conveyed
    simply by prior use of a trade dress.  The more appropriate overview instruction is found in the
18  Ninth Circuit's Model Jury Instructions No. 15, as reflected in Samsung's Proposed Preliminary
    Instructions Nos. 6.1-6.3
19
20
21
22
23
24
25
26
27
28

**Samsung's Proposed Instruction**

Because this case involves disputes relating to patents, let me take a moment to explain what a patent is and how one is obtained.

There are two types of patents that have been asserted in this case. The first type is called a "utility patent." The second type is called a "design patent."

In general terms, a "utility patent" protects the way an article is used and works. It also protects a method or process of making or doing something. A "design patent" protects the way an article looks, but not the way it functions. Both utility and design patents are granted by the U.S. Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent from the PTO is called "patent prosecution." The PTO is an agency of the federal government and employs examiners who review applications for patents.

A utility patent application must be for a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvements thereof." A design patent application must be for a "new, original, and ornamental design for an article of manufacture ." The term "ornamental design" refers to the look of an article, including its surface details. Design patents cannot protect the general configuration of an article apart from the surface details.

Both utility and design patent applications must include an oath stating that the named inventors are the original and first inventors of the subject matter which is claimed and for which a patent is sought. The oath must also acknowledge the duty to disclose to the Patent Office all information known to the person to be material to patentability, such as any prior art designs.

Both utility patent and design patent applications include what is called a "specification." A specification for a utility patent application is a written description of the claimed invention which must tell what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification for a utility patent application concludes with one or more numbered sentences. These are the patent "claims." When the utility patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

For a design patent, the specification contains one or more drawings of the design, a description of the drawings, and a single claim that references the drawings. A design patent can have only a single claim. When the design patent is eventually granted by the PTO, those drawings define the boundaries of the patent's protection and are supposed to give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable, and specifically with respect to utility patents, whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law, and I will again give you at a later time specific instructions as to what constitutes prior art. However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The examiner considers, among other things when evaluating a utility patent application, whether each claim defines an invention or design that is new, useful, and not obvious in view of the prior art. Even if a claim is new, it cannot qualify for a patent if it is obvious. A utility patent lists the prior art that the examiner considered in deciding to allow the application; this list is called the "cited references."

For design patent applications, the examiner considers, among other things, whether the application is for a novel and non-obvious design.  The standard used by the PTO to decide whether a design is novel is whether an average observer would take the design for a different, and not a modified, design already in existence.  Even if a design is novel, it cannot qualify for a patent if it is obvious.  A design is obvious when differences between the design sought to be patented and the prior art are such that the design as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.  A design patent will list all the prior art that the examiner considered; this list is called the "references cited."  There may be prior art that is not before the Patent Office examiner and that is therefore not reviewed or considered

After the prior art search and examination of the patent application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth until the examiner decides that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material becomes available to the public no later than the date when the patent issues.  When the patent is eventually granted by the Patent Office, it gives notice to the public of what the Patent Office and the patent applicant regard as the patentable design.

After the patent issues, if someone else does make, use, sell, offer to sell, or import the patented invention or design without the patent owner's permission, the patent owner can sue the alleged violator in federal court.  A violation of the patent owner's rights is called "infringement."  If the patent owner wins, the infringement may be stopped and the patent owner may receive payment from the other party.

However, even if the infringer did infringe the patent, the infringer can still win the case if it can prove that the patent was "invalid," meaning the PTO made a mistake in issuing it.  The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent actually deserves the protection of a patent.  For example, the PTO may not have had available to it all the prior art that will be presented to you.  A person accused of infringing has the right to argue here in federal court that the patent or patents asserted against them are invalid because they do not meet the requirements for patentability.  Both infringement and invalidity are issues in this lawsuit.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instructions, A.1; *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1187-88 (Fed. Cir. 1988) ("[Patentee] argues that the novelty of his design resides in its basic configuration, not the surface details, and points out that the references cited by the Patent and Trademark Office do not show this basic configuration. However, by obtaining a design patent, not a utility patent, Mr. Lee limited his patent protection to the ornamental design of the article: 35 U.S.C. § 171. "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." Design patents do not and cannot include claims to the structural or functional aspects of the article"); MPEP §§ 1504.02-.03; 37 CFR 1.63; 35 U.S.C. § 171; Act of May 9, 1902, c. 783, § 4929, 32 Stat. 193.

1

**Apple's Objection to Samsung's Instruction**

2   Samsung's proposed instruction misstates the law in several ways.  First, the instruction states

3   that "[a] 'design patent' protects the way an article looks, but not the way it functions."  This
    instruction is misleading because design patents protect articles of manufacture that have or
    serve a function, so long as the overall design of the article is not "dictated by function."  *L.A.*

4   *Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993); *see also Hupp v.*
    *Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997).  Second, the assertion in Samsung's

5   instruction that "[d]esign patents cannot protect the general configuration of an article apart from
    the surface details" is incorrect under the law.  Design patents are "inclusive of ornamental

6   designs of all kinds including surface ornamentation *as well as configuration of goods*."  *In re*
    *Zahn*, 617 F.2d 261, 268 (C.C.P.A. 1980) (emphasis added); *see also* MPEP § 1502 ("Since a

7   design is manifested in appearance, the subject matter of a design patent application may relate
    to the configuration or shape of an article, to the surface ornamentation applied to an article, or to

8   the combination of configuration and surface ornamentation.").  Third, Samsung's instruction
    concerning the oath required of an applicant is incorrect.  37 C.F.R. 1.68 states that an applicant

9   may submit an oath *or declaration*.  In addition, Samsung misstates what the oath requires, *i.e.*,
    that the declarant *believes that* the named inventors are the original and first inventors …."

10  37 C.F.R. 1.63(a)(4).  Fourth, Samsung's instructions regarding specific standards the PTO uses
    internally are <u>irrelevant</u> to the jury's assessment of novelty and non-obviousness at this stage.

11  Moreover, Samsung's description of the PTO standards for novelty and obviousness are
    <u>incomplete</u>.  For instance, Samsung's instruction regarding the PTO obviousness standards omits

12  the requirement that there must be a primary reference whose "design characteristics of which
    are basically the same as the claimed design."  MPEP § 1504.03 (*citing In re Rosen*, 673 F.2d

13  388, 391 (C.C.P.A. 1982).  Samsung's instruction also is incomplete because it includes only
    instructions regarding design patentability standards without any comparable utility patentability

14  standards.  Hence, the jury may attach <u>unwarranted importance</u> to Samsung's alleged PTO
    patentability standard for design patents.  Apple's corresponding instruction is a concise and

15  accurate instruction of what patents are and how they are obtained.  It correctly specifies that a
    "design patent protects the way an article of manufacture looks" and that it can cover "the shape,

16  configuration, and/or surface ornamentation of the article."  *See Zahn*, 617 F.2d at 268.  It also
    does not confuse the jury with instructions regarding the specific standards used by the PTO

17  during the patent examination process.

18

19

20

21

22

23

24

25

26

27

28

### PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6
### SUMMARY OF PATENT CONTENTIONS

**Apple's Proposed Instruction**

I will now summarize for you each of the parties' patent infringement claims.

**Apple's Utility and Design Patent Claims**

Apple accuses Samsung of infringing a number of Apple's utility and design patents. Each Apple patent was obtained by one or more named inventors and is owned by Apple.

The three Apple utility patents at issue in this case are:

- United States Patent Number 7,469,381. The parties and I will often refer to this patent as the "'381," with '381 being the last three numbers of its patent number. This patent is behind Tab __ in your notebooks.

- United States Patent Number 7,844,915. We may refer to this patent as the "'915 patent." It is behind Tab __ in your notebooks.

- United States Patent Number 7,864,163. We will often refer to this patent as the "'163 patent." It is at Tab __ in your notebooks.

The Samsung products that Apple accuses of infringing its utility patents are listed behind Tab __ in the Juror Notebooks.

Apple also claims that Samsung has infringed four iPhone and iPad-related design patents. The design patents are:

- United States Patent No. D604,305. This is the "D'305 patent," with D indicating that it is a design patent and '305 being the last three numbers of its patent number. This patent is behind Tab __ in your notebooks.

- United States Patents No. D504,889. This is the "D'889 patent." It is behind Tab __ in your notebooks.

- United States Patent No. D593,087, or the "D'087 patent." This is at Tab __.

- United States Patent No. D618,677. This is the "D'677 patent" and it is behind Tab __.

The Samsung products that Apple accuses of infringing its design patents are listed behind Tab __ in the Juror Notebooks.

Apple seeks money damages from Samsung for allegedly infringing certain claims of these utility and design patents by making, importing, using, selling, and/or offering for sale the smartphone and tablet products identified in your notebooks. Apple also argues that Samsung's Korean parent SEC actively induced the U.S. Samsung entities (STA and SEA) to infringe. Apple contends that Samsung's infringement has been willful.

Samsung denies that it has infringed Apple's design and utility patents and argues that the claims asserted by Apple are invalid. Invalidity is a defense to infringement.

**Samsung's Utility Patent Claims**

Samsung accuses Apple of infringing a number of Samsung's utility patents.  Each of Samsung's utility patents was obtained by one or more named inventors and transferred to Samsung.

The six Samsung utility patents at issue in this case are:

- United States Patent Number 6,928,604, or the "'604 patent."  This patent is behind Tab __ in your notebooks.

- United States Patent Number 7,447,516, or the "'516 patent."  This is behind Tab __.

- United States Patent Number 7,456,893, or the "'893 patent."  This is behind Tab __.

- United States Patent Number 7,577,460, or the "'460 patent."  This is behind Tab __.

- United States Patent Number 7,675,941, or the "'941 patent."  This is behind Tab __.

- United States Patent Number 7,698,711, or the "'711 patent."  This is behind Tab __.

The Apple iPhone, iPad, and iPod Touch products that Samsung contends infringe various claims of these patents are listed behind Tab __ in your Juror Notebooks.

Samsung seeks money damages from Apple for allegedly infringing these utility patents by making, using, selling, offering for sale, and/or importing the products identified in your notebooks.  Samsung also alleges that Apple's infringement has been willful.

Apple denies that it has infringed Samsung's utility patents and argues that the claims asserted by Samsung are invalid and, for the '516, '941, and '604 patents, also unenforceable.  Invalidity and unenforceability are defenses to infringement.

<center>*     *     *</center>

For each party's patent infringement claims against the other, the first issue you will be asked to decide is whether the alleged infringer has infringed the claims of the patent holder's patents.  There are a few different ways that a patent may be infringed.  I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case, including any differences between utility patent infringement and design patent infringement.

The second issue you will need to decide to resolve each party's patent infringement claims is whether the patent holder's patents are invalid.  A patent claim may be invalid for a number of reasons, including because it claims subject matter that is not new or that would have been obvious at the time it was initially invented or designed.

If you decide that any claim of either patent holder's patents has been infringed and is not invalid, you will then need to decide the money damages that must be awarded to the patent holder.  For each party's patent infringement allegations, you will also need to make a finding as to whether any infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

I will give you more detailed instructions on all of these issues at the end of the case.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. A.3; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 4.

<u>**Samsung's Objection to Apple's Instruction**</u>

Apple's proposed instruction improperly labels the four design patents at issue as the "four Apple iPhone and iPad-related design patents." Three of the patents are actually entitled "Electronic Device" and the fourth is entitled "Graphical User Interface for a Display Screen or Portion Thereof," so none of them is identified as an iPhone or iPad-related design. Furthermore, the proposed instruction purports to essentially direct a verdict on a key issue. Whether Apple's products embody its design patents is a factual determination that must be left for the jury to decide. That factual issue is disputed by the parties and affects at least the issues of infringement and damages. *See, e.g., Lee v. Dayton-Hudson*, 838 F.2d at 1189 (embodiment-to-accused-device comparison for infringement permissible where "no significant distinction in design has been shown between the patent drawing and its physical embodiment"); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F.Supp. 751, 819-820 (E.D.N.Y. 1995) (sales of commercial embodiment established demand for patented product as required for award of lost profit damages). For example, Apple claims the iPad 2 is an embodiment of the D'889 patent and presumably for that reason calls it an "iPad-related" design patent. D'889 was filed in March 2004, approximately six years before the release of the iPad and seven years before the iPad 2. The D'889 therefore could not have been an "iPad-related" design patent for most of its life, and Apple cannot deny Samsung its right to a jury trial on contested factual issues or prejudice the jury by having the Court suggest it is. Apple needs to present evidence to the jury to establish that D'889 is iPad-related. In contrast to this improper instruction, Samsung's Proposed Final Jury Instruction No. 44.1 appropriately instructs the jury on how to determine whether a product is an embodiment of a design patent, and the significance of that fact finding for infringement purposes. In addition, Apple's proposed instruction is biased. For example, the instruction states that each Apple patent "is owned by Apple"; however, each Samsung patent was "transferred to Samsung." Apple also fails to state that Samsung is asserting induced infringement against Apple, yet Apple's proposed instruction improperly states: "Apple also argues that Samsung's Korean parent SEC actively induced the U.S. Samsung entities (STA and SEA) to infringe." But Apple has not alleged inducement for its design or utility patents in its Complaint or any other pleading and has never included it in response to a Samsung interrogatory directed at Apple's design or utility patent infringement contentions. It therefore should not be allowed to assert it, let alone include a jury instruction on it. (*See* Samsung's Objections to Apple's Proposed Jury Instruction No. 58; see also Dkt No. 1185-3 at 13-15 (Samsung's Motions in Limine) (seeking to preclude Apple from offering evidence of indirect infringement regarding design patents due to failure to plead or disclose such a theory).) Apple's instruction also includes a reference to "Juror Notebooks" as including a list of accused devices. Samsung's Alternative to Apple's Proposed Preliminary Instruction No. 6 is preferable because it includes all the products and claims that were timely identified by the parties. Samsung's Instruction will help prevent confusion at trial should there be disagreement about the products that should be or were included in the juror notebooks.

**Samsung's Proposed Instruction**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Apple Inc. and Samsung Electronics Company Ltd., Samsung Electronics America Inc., and Samsung Telecommunications America LLC. In these Instructions I will refer to Apple Inc. as "Apple," and I will refer to Samsung Electronics Company Ltd., Samsung Electronics America Inc., and Samsung Telecommunications America LLC collectively as "Samsung" unless I think it is important to distinguish between these entities for the purposes of a specific Instruction. You must decide the case as to Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America separately regardless of whether I refer to them collectively as "Samsung" or individually.

Apple has brought claims against Samsung seeking money damages from Samsung for alleged trade dress infringement and dilution, and utility patent and design patent infringement, relating to Samsung's smartphone and tablet products. Samsung has denied Apple's allegations and sought declarations that it does not infringe any of Apple's rights and that Apple's trade dress and design and utility patents are invalid.

Samsung also has brought claims against Apple for patent infringement relating to Apple's iPhone, iPad and iPod products. Apple has denied Samsung's allegations and sought declarations as to Samsung's claims. Apple further has brought claims of monopolization, and breach of contract associated with Samsung's assertion of patents that Samsung has declared to be essential to certain wireless telecommunications standards. In addition, Apple seeks a declaration that it is irrevocably entitled to a fair, reasonable and non-discriminatory ("FRAND") license to those declared essential patents, and which sets forth the FRAND terms and conditions of that license. Samsung has denied Apple's allegations.

Specifically, your job will be to decide the following:

**Apple's Claims**

1.  Whether the Gallery, Contacts, Web Browser or ThinkFree Office applications in the following Samsung products infringe Claim 19 of U.S. Patent No. 7,469,381:

    - Galaxy Tab
    - Galaxy Tab 10.1
    - Captivate
    - Continuum
    - Droid Charge
    - Epic 4G
    - Exhibit 4G
    - Fascinate
    - Galaxy Ace
    - Galaxy Prevail
    - Galaxy S (i9000)
    - Galaxy S 4G
    - Gravity
    - Indulge
    - Infuse 4G
    - Intercept
    - Mesmerize
    - Nexus S
    - Nexus S 4G
    - Replenish

- Showcase Galaxy S
- Sidekick
- Vibrant
- Galaxy S II (pre-August 26, 2011 versions)

2.  Whether the Web Browser application in the following Samsung products infringe Claim 8 of U.S. Patent No. 7,844,915:

- Galaxy Tab
- Galaxy Tab 10.1
- Acclaim
- Captivate
- Continuum
- Droid Charge
- Epic 4G
- Exhibit 4G
- Fascinate
- Galaxy Ace
- Galaxy Prevail
- Galaxy S (i9000)
- Galaxy S 4G
- Gem
- Gravity
- Indulge
- Infuse 4G
- Intercept
- Mesmerize
- Nexus S
- Nexus S 4G
- Replenish
- Showcase Galaxy S
- Sidekick
- Transform
- Vibrant
- Galaxy S II (pre-August 26, 2011 versions)

3.  Whether the Web Browser application in the following Samsung products infringe Claim 50 of U.S. Patent No. 7,864,163:

- Galaxy Tab
- Galaxy Tab 10.1
- Acclaim
- Captivate
- Continuum
- Droid Charge
- Epic 4G
- Exhibit 4G
- Fascinate
- Galaxy Ace
- Galaxy Prevail
- Galaxy S (i9000)
- Galaxy S 4G
- Gem
- Gravity
- Indulge

- Infuse 4G
- Intercept
- Mesmerize
- Nexus S
- Nexus S 4G
- Replenish
- Showcase Galaxy S
- Sidekick
- Transform
- Vibrant
- Galaxy S II (pre-August 26, 2011 versions)

4.  Whether Samsung infringes:

    a.  U.S. Patent No. D618,677 by selling the following smartphones;

- Samsung Galaxy Ace (SHW-M240S);
- Samsung Infuse 4G (SGH-1997);
- Samsung Galaxy S i9000 (SHW-M1105);
- Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize);
- Samsung Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959).

    b.  U.S. Patent No. D593,087 by selling the following smartphones;

- Samsung Galaxy Ace (SHW-M240S);
- Samsung Infuse 4G (SGH-1997);
- Samsung Galaxy S i9000 (SHW-M1105);
- Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize);
- Samsung Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959)

    c.  U.S. Patent No. D604,305 by selling the following smartphones;

- Captivate;
- Continuum;
- Droid Charge;
- Epic 4G;
- Fascinate;
- Gem;
- Galaxy S i9000;
- Galaxy S 4G;
- Indulge;
- Infuse 4G;
- Mesmerize;
- Showcase;
- Galaxy S Showcase i500;
- Vibrant.

    d.  U.S. Patent No. D504,889 by selling the following computer tablet:

- Galaxy Tab 10.1

5.  Whether Apple's asserted patent claims are valid;

6.  Whether Samsung has diluted the iPhone trade dress based on the trade dress Registration No. 3,470,983 by selling the following smartphones:

- Fascinate
- Galaxy S 4G
- Galaxy S Showcase (i500)
- Infuse 4G
- Mesmerize
- Vibrant

7.  Whether Samsung has diluted the unregistered iPhone trade dress by selling the following smartphones:

- Fascinate
- Galaxy Prevail
- Galaxy S 4G
- Galaxy S Showcase (i500)
- Infuse 4G
- Mesmerize
- Vibrant

8.  Whether Samsung has diluted the unregistered iPhone 3G trade dress by selling the following smartphones:

- Fascinate
- Galaxy Prevail
- Galaxy S 4G
- Galaxy S Showcase (i500)
- Infuse 4G
- Mesmerize
- Vibrant

9.  Whether Samsung has diluted or infringed the unregistered iPad trade dress by selling the following tablet computers:

- Galaxy Tab 10.1
- Galaxy Tab 10.1 LTE

10. Whether Samsung has diluted or infringed the unregistered iPad 2 trade dress by selling the following tablet computers:

- Galaxy Tab 10.1
- Galaxy Tab 10.1 LTE

11. Whether Apple's claims are barred by Samsung's defenses.

12. The remedies to which Apple is entitled, if any, as a result.

**Samsung's Claims**

1.  Whether Apple infringes:

a.  Claims 10 and 15 of U.S. Patent No. 7,675,941 by selling the following smartphone and tablet computer;

- iPhone 4
- iPad2 3G

    b.   Claims 17 and 18 of U.S. Patent No. 6,928,604 by selling the following smartphones and tablet computers;

- iPhone 3G
- iPhone 3GS
- iPhone 4
- iPad 3G
- iPad2 3G

    c.   Claims 15 and 16 of U.S. Patent No. 7,447,516 by selling the following smartphone and tablet computer;

- iPhone 4
- iPad2 3G

    d.   Claim 9 of U.S. Patent No. 7,698,711 by selling the following;

- iPhone 3G
- iPhone 3GS
- iPhone 4
- iPhone 4S
- iPad 2
- iPod Touch (4th Generation)

    e.   Claim 1 of U.S. Patent No. 7,577,460 by selling the following; or

- iPhone 3G
- iPhone 3GS
- iPhone 4
- iPhone 4S
- iPad 2
- iPod Touch (4th Generation)

    f.   Claim 10 of U.S. Patent No. 7,456,893 by selling the following.

- iPhone 3GS
- iPhone 4
- iPhone 4S
- iPad 2
- iPod Touch (4th Generation)

2.   Whether Samsung's asserted patent claims are valid;

3.   Whether Samsung's asserted patent claims are enforceable;

4.   Whether Samsung's claims are barred by Apple's defenses;

5.   Whether Samsung has engaged in breach of contract or violated antitrust or unfair competition law in connection with its standards-related conduct or its assertion of patents that it has declared essential to industry standards;

6.   The remedies to which Samsung is entitled, if any, as a result.

**Source**

N.D. Cal. Model Patent Jury Instr. A.3

**Apple's Objection to Samsung's Instruction**

Samsung's proposed preliminary instruction is too lengthy and dense.  Samsung spends 5 pages in this instruction summarizing the parties' contentions.  The instruction contains too much detail to be informative for or comprehensible to the jury.  Apple's proposed preliminary instruction Nos. 6-8, by contrast, cover the same ground in half the space.  These Apple instructions also summarize the parties' utility patent, design patent, trade dress, antitrust, and contract contentions, but do so in a much more user-friendly format.  Apple's proposed preliminary instruction Nos. 6-8 liberally direct the jurors to their notebooks that contain information about the intellectual property and accused products at issue in the case.  This format will prove much more effective at aiding jury comprehension, and it will allow the jury to become conversant with the notebook as a resource for the entirety of the trial.  Another problem with Samsung's proposed instruction is that the lists of accused products provided by Samsung are incorrect.  The Gem is not listed as an accused product for the '381 patent, and the Gravity Smart is not listed for either the '915 or the '163 patents.  Samsung then fails to list any of the five Galaxy S II phones that Apple has accused of infringing the D'677 and D'087 patents, and incorrectly lists the Fascinate, Mesmerize, Showcase, and Galaxy Ace as accused products under the D'087 patent.  Samsung has also omitted the Tab 10.1 LTE from the list of products accused under the D'889 patent.  Samsung's listing of the accused products that violate Apple's trade dresses is inaccurate as well.

1

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6.1
PATENTS AT ISSUE**

2

3    **Samsung's Proposed Instruction**

4    [The court should show the jury one Samsung utility patent and one Apple design patent at issue
and point out the parts including the specification, drawings and claims including the claims at

5    issue.]

6    **Source**

7    N.D. Cal. Model Instructions, A.2.

8

9    **Samsung's Statement in Support**

10   This instruction is based on the Court's Model Patent Jury Instruction.  The Court's brief
demonstration of one Samsung utility patent and one Apple design patent will help orientate the

11   jury to patents in a balanced and fair way.

12   **Apple's Objection to Samsung's Instruction**

13   Samsung's proposed preliminary instruction is unnecessary.  To the extent that the Court wants to
show a patent or two to the jury at the beginning of the trial, the Court can do so when giving

14   Apple's proposed preliminary instruction No. 6.  At that point, the Court will already have
explained the parts of a patent to the jury.  When the Court reads Apple's proposed preliminary

15   instruction No. 6 and identifies the specific patents that are in the jury notebooks, the Court can
also point to a couple of specifications, drawings, and claims.  If the Court opts to take this

16   approach, it should point out the parts from an Apple utility patent and an Apple design patent.
The Court can also, in the interest of balance, point to a Samsung utility patent.

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6.2
## THE UTILITY PATENTS AT ISSUE IN THIS CASE

**Samsung's Proposed Instruction**

There are 9 utility patents asserted in this case.  For Apple, they are United States Patent Nos. 7,469,381, 7,844,915, 7,864,163.  For Samsung, they are U.S. Patent Nos. 7,675,941; 6,928,604; 7,447,516; 7,698,711; 7,577,460; and 7,456,893.

Utility patents are often referred to by their last three digits, so the utility patents here will be referred to in shorthand as the '381, '915, '163, '941, '604, '516, '711, 460, and '893 patents.

**Samsung's Statement in Support**

Samsung proposes a simple instruction informing the jury of the utility patents at issue in this case.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed preliminary instruction is unnecessary.  Pursuant to either party's previous instructions, the Court will have already identified the patents at issue.  During the reading of Apple's Proposed Preliminary Instruction No. 6, for instance, the Court would identify the patents to the jurors, and explain that they are often referred to by their last three digits.  There is no need to do this two (or more) times.

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6.3**
**THE DESIGN PATENTS AT ISSUE IN THIS CASE**

**Samsung's Proposed Instruction**

There are four design patents asserted in this case. They are United States Patent Nos. D504,889, D593,087, D618,677, and D604,305. Design patents are often referred to by their last three digits, so the design patents here will be referred to in shorthand as the D'889, D'087, D'677, and D'305 patents.

The D'677, D'087 and D'889 design patents claim designs for electronic devices. The D'305 claims a design for a graphical user interface for a display screen or a portion of a display screen.

**Samsung's Statement in Support**

Samsung proposes a simple instruction informing the jury of the design patents at issue in this case.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed preliminary instruction is unnecessary. Pursuant to either party's previous instructions, the Court will have already identified patents at issue. During the reading of Apple's proposed preliminary instruction No. 6, for instance, the Court would identify the patents to the jurors, and explain that they are often referred to by their last three digits. There is no need to do this two (or more) times.

1

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7
SUMMARY OF TRADE DRESS CONTENTIONS**

2

3

**Apple's Proposed Instruction**

4

I will now give you an introduction to Apple's trade dress claims.

5

Apple accuses Samsung of diluting Apple's Registered Trade Dress No. 3,470,983.  A copy of the registration certificate for this trade dress is behind Tab __ in the Juror Notebooks that you have each received.  As you can see, this Apple trade dress relates to the iPhone.  The Samsung products that Apple accuses of diluting this registered trade dress are listed behind Tab __ in your Juror Notebooks.

6

7

Apple also accuses Samsung of diluting two unregistered trade dresses relating to the iPhone. These Apple trade dresses are described for you behind Tab __ in your Juror Notebooks.  The Samsung products that Apple accuses of diluting these iPhone-related trade dresses are then listed behind Tab __ in your notebooks.

8

9

Apple additionally claims that Samsung has diluted and infringed its unregistered trade dress relating to the iPad.  This trade dress is described for you behind Tab __ in the notebooks.  The Samsung products that Apple accuses of diluting and infringing its iPad-related trade dress are listed behind Tab __.

10

11

12

For each of Apple's trade dress dilution and infringement claims, the first issue you will have to decide is whether the Apple trade dress is protectable.  An asserted trade dress is only protectable if the trade dress as a whole is both sufficiently distinctive and non-functional.

13

14

For Apple's dilution claims, the next issues you will decide are whether Apple's trade dress was famous before Samsung started selling its accused products, and whether Samsung's products are likely to cause dilution of the asserted Apple trade dresses.  Dilution occurs when the similarity between Samsung's products and Apple's trade dress impairs the distinctiveness of the asserted Apple trade dress.

15

16

17

Apple's trade dress infringement claim will require you to resolve different issues.  You will need to determine whether Apple's trade dress had acquired distinctiveness before Samsung started selling its infringing products, and whether Samsung's products are sufficiently similar to Apple's trade dress such that they are likely to cause confusion as to their source.

18

19

If you decide that any protectable Apple trade dress has been infringed or willfully diluted by Samsung, you will then need to decide the money damages to be awarded to Apple.

20

21

Samsung denies that it has infringed or diluted any Apple trade dress and argues that each asserted trade dress is not protectable.  If a trade dress is not protectable, that is a defense to infringement and dilution.

22

23

I will give you more detailed instructions on all of these issues at the conclusion of the case.

24

25

**Samsung's Objection to Apple's Instruction**

26

Apple's proposed instruction on trade dress infringement is prejudicial and an inaccurate statement of the law. First, Apple improperly suggests to the jury that the Court has prejudged the issue of trade dress infringement by stating that "… Samsung started selling its infringing products."  The instruction should refer to Samsung selling its "allegedly infringing products."

27

28

1   Second, Apple's question of "whether Samsung's products are sufficiently similar to Apple's
trade dress such that they are likely to cause confusion as to their source" incorrectly suggests
2   that the likelihood of confusion analysis turns solely on the similarity factor--to the exclusion of
the numerous other Sleekcraft factors.  Apple's erroneous instructions should be rejected.
3   Apple's instruction also includes a reference to "Juror Notebooks" as including a list of accused
devices.  Samsung's alternate Preliminary Instruction No. 6 is preferable because it includes all
4   the products and claims that were timely identified by the parties.  Samsung's Instruction will
help prevent confusion at trial should there be disagreement about the products that should be or
5   were included in the juror notebooks.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Apple also seeks damages against Samsung for alleged trade dress infringement and dilution arising from Samsung's sale of certain phones and tablet computers.  Samsung denies infringing and diluting Apple's trade dresses and contends Apple's trade dresses are invalid.  To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

**Source**

Ninth Circuit Model Civil Jury Instr. No. 15.


**Apple's Objection to Samsung's Instruction**

Samsung's preliminary proposed instruction is unnecessary.  The jury will already have been informed that Apple has sued Samsung for trade dress dilution and infringement based on Samsung's sale of certain phone and tablet computers.  Apple's preliminary proposed instruction No. 7 will have made this clear and/or Samsung's preliminary proposed instruction No. 6 would have said it.  The jury will not need to be told this again within the preliminary instructions, especially in an instruction that does not actually instruct the jury to do anything.

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.1
DEFINITION OF A TRADE DRESS**

**Samsung's Proposed Instruction**

Trade dress is the non-functional physical detail and design of a product which identifies the product's source and distinguishes it from the products of others.  Trade dress may include features such as size, shape, color, color combinations, texture, or graphics.  In other words, trade dress is the form in which a company presents a product or service to the market, its manner of display.

The trade dresses at issue in this case involve certain products sold by Apple.  Trade dress rights in product designs are more limited than rights in other types of trade dress because most product designs are intended to make the product more useful or more appealing to consumers and are not intended to identify the source of the product.

**Source**

Model Instructions No. 15.2 (modified); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000) ("In the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist.  Consumers are aware of the reality that, almost invariably, even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing"); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2003) ("And in *Wal-Mart*, supra, we were careful to caution against misuse or overextension of trade dress.  We noted that "product design almost invariably serves purposes other than source identification."")

**Apple's Objection to Samsung's Instruction**

Samsung's preliminary proposed instruction is unnecessary.  Apple's preliminary proposed instruction No. 5 provides the jury with a balanced background definition of trade dress.  There is no need to have this type of information repeated.  Moreover, Samsung's proposed instruction has at least three legal errors.  First, Samsung omits that trade dress is the "total image and overall appearance," instead only identifying "types" of features that may make up a trade dress.  This is improper, as it gives the incorrect impression that trade dress is evaluated on a feature-by-feature basis.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992) (trade dress of product "is essentially its total image and overall appearance") (internal quotation omitted).  Second, defining "trade dress" as the "non-functional" physical detail and design of a product implies that individual features with a function cannot form part of the claimed trade dress, which is not the law.  *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1261 (9th Cir. 2001) (functionality of individual features may not preclude trade dress protection if particular integration of elements leaves multitude of alternatives).  In fact, the Ninth Circuit explicitly states: "functional elements that are separately unprotectable can be protected together as part of a trade dress."  *Id.* at 1259 (internal citation omitted).  Third, Samsung claims that trade dress rights in product designs are "more limited than rights in other types of trade dress."  There is no support for this statement in the law.  Samsung cites both *Wal-Mart* and *TrafFix Devices*, but these cases address *protectability*—distinctiveness or functionality—not the extent or rights *once protectability is shown*.  *TrafFix Devices v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30, 33-34 (2001); *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213-15 (2000).  In fact, the test for protectability of trade dress is the same for all types of trade dress—the trade dress must be both distinctive and nonfunctional.  The cases that Samsung cites do not suggest otherwise.  They only state that product design trade dress is not inherently distinctive; instead, the product design must be shown to have acquired distinctiveness, or secondary meaning.  Those rulings do not translate to "limited rights" once acquired distinctiveness is shown.

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.2**
**HOW A TRADE DRESS IS OBTAINED**

**Samsung's Proposed Instruction**

A company acquires the right to exclude others from using a trade dress by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trade dress are obtained only through commercial use of the trade dress.

**Source**

Ninth Circuit Model Civil Jury Instr. No. 15.0 (modified).

**Apple's Objection to Samsung's Instruction**

Samsung's Preliminary proposed instruction is unnecessary. Apple's preliminary proposed instruction No. 5 already explains to the jury how the owner of a trade dress acquires the right to prevent others from diluting or infringing it. Apple's instruction also provides much more information than Samsung's proposed instruction.

1

2

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.3
TRADE DRESS LIABILITY—THEORIES AND POLICIES**

3

**Samsung's Proposed Instruction**

4

5

The trade dress laws balance three often-conflicting goals:  (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

6

7

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

8

**Source**

9

10

Model Instructions No. 15.4 (modified).

11

**Apple's Objection to Samsung's Instruction**

12

13

14

15

16

17

18

19

20

Samsung's preliminary proposed instruction is unnecessary.  The jury needs no explanation at this stage of the policies underlying the trade dress laws.  Nor does the jury need to be told again that it should decide this case based on the specific facts in evidence.  As with many of Samsung's proposed instructions, this unnecessary preliminary instruction would only slow down the proceedings.  Furthermore, Samsung's proposed instruction is likely to confuse and mislead the jury because it is adapted from a set of Ninth Circuit model instructions that do not address dilution.  First, the instruction suggests that consumer confusion is *always* part of the balance, but consumer confusion is not an element of a trade dress dilution claim.  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 905 (9th Cir. 2002) ("Dilution, by contrast, does not require a showing of consumer confusion[.]")  Second, the "often-conflicting goals" are tied to the specific remedy sought, not trade dress rights—infringement is a balance between prongs 1 and 3, balancing likelihood of confusion against interest in fair competition, whereas dilution is a balance of 2 and 3, balancing a business's reputation and right to identify itself against interest in fair competition.  (*Compare* Dkt. No. 1158 at 3 (trade dress infringement requires showing of likelihood of confusion) *with* Dkt. No. 1158 at 8 (trademark or trade dress dilution claim addresses use that "impairs the distinctiveness" or "harms the reputation" of famous mark).  Conflating these two theories will be misleading.

21

22

23

24

25

26

27

28

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.4
### TRADE DRESS—NO LIABILITY FOR COPYING

**Samsung's Proposed Instruction**

Trade dress law does not prohibit competitors from copying each other's products.  Nor does it protect a company's innovation and creativity.  Rather, trade dress law prohibits the copying of source-identifying trade dress only in order to prevent consumer deception.

**Source**

*Dastar Corp v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36 (2003) ("reading §43(a) of the Lanham Act as creating a cause of action for, in effect plagiarism – the use of otherwise unprotected works and inventions without attribution – would be hard ."); *Wal-Mart Stores v. Samara Brothers, Inc.*, 529 U.S. 205 (2000) (no cause of action for trade dress violation because asserted trade dress was not source identifying even though Wal-Mart produced 'knockoffs' of children's clothes designed and manufactured by Samara Broths, containing only 'minor modifications' of the original designs.); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001) (The Supreme Court has been 'careful to caution against misuse of overextension" of trademark related protections into areas traditionally occupied by patent and copyright.");  *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n. 11 (1982) (designs cannot be protected under the Lanham Act unless they "identify the source of the product rather than the product itself"); *Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) ("The defendant . . . may copy plaintiff's goods slavishly down to the minutest detail; but he may not represent himself as the plaintiff in their sale.") (internal quotation marks omitted); *Newton v.Thomason*, 22 F.3d 1455, 1463 (9th Cir. 1994) ("must show that, in selecting [accused] name, Appellees intended to profit by confusing consumer") (internal quotation marks omitted); *Bretford Manufacturing, Inc. v. Smith System Manufacturing Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) ("Businesses often think competition unfair, but federal law encourages wholesale copying, the better to drive down prices.")

**Apple's Objection to Samsung's Instruction**

Samsung's preliminary proposed instruction is legally incorrect.  First, it claims there is "no liability for copying," but there *is* liability for copying if one copies protectable trade dress.  *See China Int'l Travel Servs. (USA) v. China & Asia Travel Serv., Inc.*, No. 08-cv-01293 JJW (MEJ), 2008 U.S. Dist. LEXIS 106622, at *22 (N.D. Cal. Dec. 18, 2008) (facts of case, including "blatant copying" of trademark, showed intent to profit from reputation and goodwill).  Second, trade dress law does not prohibit copying "only in order to prevent consumer deception," as claimed in the proposed instruction.  The Lanham Act specifically addresses copies that are "likely to cause confusion, or to cause mistake, *or* to deceive."  15 U.S.C. § 1114 (emphasis added); *see also* 15 U.S.C. § 1125(a) (civil action for use in commerce "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person").  Apple's trade dress dilution claim has nothing to do with preventing consumer deception, or even confusion, but is aimed at stopping Samsung from "impair[ing] the distinctiveness" of Apple's trade dress.  (Dkt. No. 1158 at 8; 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark").)  The jury is elsewhere instructed on the elements of a trade dress claim and what must be proven.  Here, Samsung is attempting to insert an argumentative and oversimplified response to Apple's claims as a separate jury instruction.

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7.5
## TRADE DRESS DILUTION

**Samsung's Proposed Instruction**

In this case, Apple contends that Samsung has diluted Apple's trade dresses.

"Dilution" means a lessening of the capacity of a famous well-known trade dress to identify and distinguish goods or services as coming from a single source. The purpose of the anti-dilution laws is to protect against erosion of the trade dress' value as a source identifier, or the tarnishment of a trade dress' image. The mere fact that consumers mentally associate the junior user's mark with the senior user's mark is not enough to establish dilution.

Dilution is reserved for a limited set of trade dresses that are famous, meaning that they are so widely known that they are like a household name among members of the general public. It will be for you to decide whether Apple's asserted trade dresses are famous enough to be protected under dilution law.

**Source**

15 U.S.C. § 1125(c)(1); *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1179-1180 (9th Cir. 2007) ("Dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge their value."); *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002) ("[F]or purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way. . . the mark must be a household name.).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed preliminary instruction is misleading and misstates the law in three ways. First, it refers to tarnishment, which is not at issue in this case. Second, it incorrectly states that association of the junior user's mark with the senior user's mark is not enough to establish dilution, when that is, in fact, the very test for dilution by blurring: 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark"). Third, Samsung's comment that the jury must decide if Apple's trade dresses are "famous enough" is misleading as it suggests multiple levels of fame. This instruction may improperly lead the jury to believe that it could find in favor of Apple on application of the test for fame but nevertheless determine that Apple's trade dress is not "famous enough" for dilution. Fourth, the statement that a famous trade dress is like a "household name" is likely to confuse the jury, as that language logically can only apply to word marks, not trade dress.

1
2

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 8
## SUMMARY OF ANTITRUST AND CONTRACT CONTENTIONS

3

**Apple's Proposed Instruction**

4

Apple has also brought counterclaims against Samsung with respect to seven patents that Samsung declared to an international standard-setting organization called ETSI to be essential to the use of certain industry standards for wireless technologies, and then asserted against Apple.

5
6

These "declared essential" patents include Samsung's '516, '941, and '604 patents which I have already described to you. They also include the following Samsung patents:

7

- U.S. Patent Number 7,050,410, or the "'410" patent, which is at Tab ___.

8

- U.S. Patent Number 7,200,792, or the "'792" patent, which is at Tab ___.

9

- U.S. Patent Number 7,362,867, or the "'867" patent, which is at Tab ___.

10

- U.S. Patent Number 7,386,001, or the "'001" patent, which is at Tab ___.

11
12
13

Apple contends that, by asserting these patents against Apple, Samsung both violated the antitrust laws and breached its contractual obligations to timely disclose and then license these patents on fair and reasonable terms. Apple also contends that Samsung's '516, '941, and '604 patents are unenforceable as a result of this conduct.

14

Samsung denies that it has violated the antitrust laws or breached any contractual obligations.

15
16
17

For Apple's allegations regarding these patents, your job will be to decide whether Samsung violated the antitrust laws and whether Samsung breached its contractual obligations. If you decide that Samsung did so, you will then need to decide what money damages to award to Apple. You will also be asked to decide whether Samsung's conduct bars Samsung from enforcing these patents against Apple.

18

**Samsung's Objection to Apple's Instruction**

19
20
21
22
23

Samsung objects to Apple's continued use of affirmative defenses, such as breach of contract, and counterclaims, such as its antitrust counterclaims, that are based upon patents which have been dropped by Samsung for reasons that include the Court's request that the parties narrow the case. Samsung will be prejudiced in responding to defenses based on patents that will not be raised at trial and that were not, for example, the subject of Samsung's depositions of Apple's experts. Moreover, improperly adding defenses to patent claims no longer at issue specifically violates the Court's direction to narrow the case. *See e.g.* May 10, 2012 Order Regarding Parties' Statements Narrowing Claims to Asserted at Trial.

24
25
26
27
28

1

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 9
## OUTLINE OF TRIAL

2

3

**Apple's Proposed Instruction**

4

The trial will very shortly begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

5

6

The presentation of evidence will then start.  Witnesses will take the stand and the documents will be offered and admitted into evidence.

7

**Apple's Direct Case**

8

Apple will first present its evidence on its contentions that Samsung has infringed Apple's utility and design patents, that Samsung has diluted and infringed Apple's iPhone and iPad related trade dresses, and that Samsung's infringement and dilution have been willful.  Apple also will present its evidence that its unregistered trade dresses are protectable.  Apple will additionally put on evidence relating to its damages.

9

10

11

Witnesses will be questioned by Apple's counsel on direct examination.  After the direct examination of a witness, Samsung will have an opportunity to cross-examine the witness.

12

13

**Samsung's Response and Direct Case**

14

After Apple has presented its witnesses, Samsung will call its witnesses, who will also be examined and cross-examined.  With respect to Apple's patents and trade dresses, Samsung will put on evidence responding to Apple's infringement, dilution, and willfulness contentions.  Samsung also will present its evidence that the claims of Apple's asserted patents are invalid, and that the Apple trade dresses are unprotectable.  Samsung will also respond to Apple's assertions with regard to damages.

15

16

17

Samsung will further present its evidence on its contentions that Apple has infringed Samsung's patents, that Apple's infringement has been willful, and that Samsung should be awarded a reasonable royalty as damages.

18

19

**Apple's Rebuttal and Response**

20

Next, Apple will return and put on evidence responding to Samsung's contentions that the Apple patents are invalid and that the Apple trade dresses are unprotectable.

21

22

With respect to Samsung's patent claims, Apple will put on evidence responding to Samsung's infringement, willfulness, and damages assertions.  Apple will also present its evidence that the claims of Samsung's patents are invalid and unenforceable.  For Samsung's "declared essential" patents, Apple will present its evidence that Samsung violated the antitrust laws and breached its contractual obligations.

23

24

**Samsung's Rebuttal**

25

Finally, Samsung will return and will put on evidence responding to Apple's contentions that Samsung's patent claims are invalid, that Samsung violated the antitrust laws, and that Samsung breached its contractual obligations.

26

27

\*   \*   \*

28

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions.  In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. A.5.

**Samsung's Objection to Apple's Instruction**

Apple's Outline of Trial instruction should not be adopted because it is inaccurate and does not inform the jury of the relative burdens of each party with respect to their claims, counterclaims and affirmative defenses.  First, Samsung intends to present its affirmative patent infringement case against Apple before responding to Apple's infringement claims.  Apple's Proposed Preliminary Instruction No. 9 states the opposite.  Second, Apple's Outline of Trial instruction omits critical information about the relative burdens of the parties to prove their claims and defenses.  Giving the burdens before the presentation of evidence will inform and guide the jury through trial.  Specifying the relative burdens of the parties is specifically contemplated by N.D. Cal. Model Patent Jury Instr. A.5.  Samsung's proposal must be adopted instead.

1   **Samsung's Proposed Instruction**

2   The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the
3   evidence will show.

4   The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.  There are two standards of proof that you
5   will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is more likely true than not.  On other issues you must use a higher
6   standard and decide whether it is highly probable that something is true.

7   Apple will start by presenting its evidence on its contentions that Samsung has infringed its utility and design patents, diluted its iPhone trade dress, diluted its iPhone 3G trade dress and diluted
8   and infringed its iPad and iPad 2 trade dresses.  These witnesses will be questioned by Apple's counsel in what is called direct examination.  After the direct examination of a witness is
9   completed, Samsung has an opportunity to cross-examine the witness.  To prove infringement and dilution of Apple's patent and trade dress claims, Apple must persuade you that it is more likely
10  than not that Samsung has infringed or diluted.

11  After Apple has presented its witnesses, Samsung will call its witnesses, who will also be examined and cross-examined.  Samsung will present its evidence on its contentions that Apple
12  has infringed its utility patents. Samsung must persuade you that it is more likely than not that Apple has infringed its utility patents.

13
    Samsung will also present its evidence that the asserted claims of Apple's utility and design
14  patents are not infringed and invalid.  To prove invalidity of any utility or design patent claim by Apple, Samsung must persuade you that it is highly probable that the claim is invalid.  Samsung
15  will also present evidence that the Apple trade dresses are invalid.

16  Apple will then return and will put on evidence responding to Samsung's contention that the Apple utility and design patents and trade dresses are invalid.  Apple will then present its non-
17  infringement and invalidity defenses on the Samsung utility patents.  To prove invalidity of any utility patent claim by Samsung, Apple must persuade you that it is highly probable that the claim
18  is invalid.  Apple will further present its patent exhaustion defense, in which it contends that Samsung authorized the sale of baseband chips incorporated in the accused Apple products under
19  the Declared-Essential patents, and its defense that Samsung's conduct with respect to standard setting organizations rendered its patents unenforceable or gives Apple the right to a license.
20  Apple will also present its claims that Samsung has breached contract or violated antitrust or unfair competition law in connection with its standards-related conduct or its assertion of the
21  Declared-Essential patents.  Apple has the burden of showing that it is more likely than not that Samsung's patent rights are exhausted.  Apple must prove that it is highly probable that Samsung
22  waived its rights to enforce certain of its patents and/or violated the antitrust or unfair competition law in connections with its standards-related conduct or its assertion of patents that it has declared
23  essential to industry standards.

24  Finally, Samsung will rebut Apple's invalidity evidence with respect to the Samsung patents.  Samsung will also rebut Apple's patent exhaustion defense and its defenses relating to Samsung's
25  standard-setting conduct.  Samsung will also rebut Apple's contract, antitrust, and unfair competition claims.

26
    During the presentation of the evidence, the attorneys will be allowed brief opportunities to
27  explain what they believe the evidence has shown or what they believe upcoming evidence will show.  Such comments are not evidence and are being allowed solely for the purpose of helping
28  you understand the evidence.

1    Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence
     comes in and wait for all the evidence before you make any decisions. In other words, you
2    should keep an open mind throughout the entire trial.

3    The parties may present the testimony of a witness by playing a videotape of the witness's
     deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is
4    entitled to the same consideration as if the witness had testified at trial.

5    After the evidence has been presented, I will give you final instructions on the law that applies to
     the case and the attorneys will make closing arguments. Closing arguments are not evidence.
6    After the instructions and closing arguments, you will then decide the case.

7    **Source**

8    Adapted from N.D. Cal. Model Patent Jury Instructions, A.5; Ninth Circuit Model Civil Jury
     Instr. No. 15.0.

9

10   **Apple's Objection to Samsung's Instruction**

11   Apple's proposed preliminary instruction to the jury regarding the basic outline of the trial is
     clearer and more concise than Samsung's outline. It is also more balanced and neutral.
12   Samsung's proposed instruction frequently uses subtle distinctions in language that present
     Samsung in a more positive light than Apple. For example, Samsung's instruction states that
13   Samsung "will rebut Apple's invalidity evidence," whereas Apple will merely "put on evidence
     responding to Samsung's contention" of invalidity (emphasis added). Likewise, Samsung's
14   instruction says that "Samsung will [ ] present its evidence that the asserted claims of Apple's
     utility and design patents are not infringed and invalid," while "Apple will [ ] present its
15   noninfringement and invalidity defenses on the Samsung utility patents" (emphasis added).
     Samsung's consistent use of more active and robust language to describe its actions than the
16   language that it uses to characterize Apple's actions is not fair. Apple's alternative instruction
     uses more neutral and balanced language. An additional problem with Samsung's proposed
17   instruction is that its description of the burden of proof is also likely to confuse the jury.
     Samsung here refers to the burden of proof on certain issues as whether it "is highly probable
18   that something is true." In many other places, Samsung switches its lexicon and uses the "clear
     and convincing evidence" formulation. It would be better for the jury to hear consistent
19   articulations of the burden. Apple's version of this instruction should be adopted.

20

21

22

23

24

25

26

27

28

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 10
## INTERPRETATION OF CLAIMS

**Apple's Proposed Instruction**

Before you decide whether either Samsung or Apple has infringed the claims of the other party's patents or whether those claims are invalid, you will need to understand the patent claims.

The utility patent claims are numbered textual sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as the judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the claims of the patents asserted here.  You have been given a document at Tab __ of your notebooks reflecting those meanings.  You are to apply my definitions of these terms throughout this case.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity.  Those issues are yours to decide.  For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

Design patents have a different structure.  For each of the asserted Apple design patents, the scope of the claim is defined by the drawings collectively.  The scope of the claimed design encompasses its visual appearance as a whole and in particular the overall visual impression it creates.  You should consider all of the features of the design patent as a whole and not merely isolated portions of the claimed design.

At the end of the trial, when I instruct you in more detail, I will provide further instruction regarding the proper interpretation of the asserted Apple design patents.[1]  At this point, I am going to instruct you on how to interpret certain aspects of the asserted Apple design patents:

D'305 and D'087 patents.  For these design patents, the broken lines in the patent figures form no part of the claimed design.

     [Show D'305 patent, Fig. 1 and D'087 patent, Fig. 1 to jury.]

D'677 patent.  The oblique lines appearing in the D'677 patent indicate a transparent, translucent, or highly polished or reflective surface.  (The "oblique" lines are the diagonal lines shown in the figures of the patent.)  In addition, the broken lines in the patent figures form no part of the claimed design for the D'677 patent.

     [Show D'677 patent, Fig. 1 to jury.]

D'889 patent.  The front surface of the device marked with oblique lines is a transparent surface.  The dotted-line rectangle in the front surface marks an area visible beneath the transparent surface and is claimed subject matter.  The human figure shown in broken lines in Figure 9 forms no part of the claimed design.

     [Show D'889 patent, Fig. 1 to jury.]

---

[1] Apple reserves the right to modify this instruction once the Court issues an order regarding claim construction of the design patents.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 5.

**Samsung's Objection to Apple's Instruction**

Samsung asserts that its proposed instruction below more concisely and more clearly provides an introduction to patent claims and claim construction. Samsung also believes that different instructions should be provided for design and utility patent claim construction, whereas Apple proposes a single one. With respect to the design patent portion, Apple's instruction is confusing and erroneous in several respects. First, Apple states that the jury "should consider all of the features of the design patent as a whole and not merely isolated portions of the claimed design." While it is correct that "the scope of the claimed design encompasses its visual appearance as a whole," *Contessa v. Conagra*, 282 F.3d 1370, 1377 (Fed. Cir. 2002), it is not accurate to say that all "features" of the design patent are to be considered. The Federal Circuit is clear that functional features are not to be considered as part of the comparison analysis because design patents do not protect them. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010). Second, the instructions given for how to read the drafting language of the specific design patents are neither accurate nor appropriate. These patents are the subject of pending and disputed claim constructions on the issues discussed in this instruction. (Dkt Nos. 1089 & 1090.) Specifically, the D'087 patent includes multiple embodiments, with varying uses of broken lines, yet the Apple instruction says only that broken lines "form no part of the design." This could cause confusion to a juror looking at the various embodiments. For the D'677 patent, the description of the broken lines is contrary to the patent itself and the MPEP. The D'677 patent does not specify the purpose of the broken lines in the patent, as required by the MPEP: "As it is possible that broken lines with different purposes may be included in a single application, the description *must* make a visual distinction between the two purposes." MPEP § 1503.02 (emphasis added). "Unclaimed subject matter *must* be described as forming no part of the claimed design or of a specified embodiment thereof." MPEP § 1503.02 (emphasis added). Because the subject matter in the D'677 patent is not specified as being unclaimed, it must be understood to be part of the claimed design. The instruction regarding D'889 is also inappropriate because nothing in the patent indicates that the surface is transparent, as opposed to reflective or highly polished. Also, nothing in the patent indicates that the dotted-line rectangle marks an area underneath a transparent surface. In fact, this instruction is contrary to the USPTO instruction to design patent applicants that "elements visible behind transparent surfaces should be shown in light, full lines, not broken lines." USPTO, A Guide to Filing A Design Patent Application at 14, http://www.uspto.gov/web/offices/com/iip/pdf/brochure_05.pdf. Samsung's proposed proposal is preferable because it accurately states the applicable drafting convention rules in general terms without tying them to specific patents, which intrudes on the Court's claim construction. Samsung's instruction also uses verbatim language from MPEP § 1503.02 regarding oblique lines, broken lines, surface shading, and color drawings. Samsung's instruction also includes principles of design patents that are crucial for the jury. For example, design patents do not protect general design concepts, but rather are limited to the specific images in the drawings. *See, e.g.*, *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("We agree with the district court's claim construction, which properly limits the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept of a rocket-like tossing ball."); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings.") (quoting *In re Mann*, 861 F.2d 1581, 1582, (Fed. Cir. 1988)).

**Samsung's Proposed Instruction**

Before you decide whether the alleged infringer has infringed the asserted claims of each patent or whether the asserted claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

[The Court may wish to hand out its claim constructions (if the claims have been construed at this point) and the glossary at this time. If the claim constructions are handed out, the following instruction should be read:

I have already determined the meaning of certain terms of the claims of Apple's '381 and '915 patents and Samsung's '711 patent. You have been given a document reflecting those meanings. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. A.3.


**Apple's Objection to Samsung's Instruction**

Samsung's proposed preliminary instruction is unnecessary. Under the more streamlined approach advocated by Apple, the Court could give a single instruction that explains claim construction for both design patents and utility patents, and that would refer the jurors to their notebooks that contain the Court's claim constructions. Apple's proposed preliminary instruction No. 10 achieves this.

1

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 10.1**
**DESIGN PATENT INTERPRETATION OF CLAIMS**

2

**Samsung's Proposed Instruction**

3

4

Before you decide whether any particular design patent is or is not infringed, you will need to understand what the design patents claim.  The word "claim" is synonymous with the words cover or protect.

5

6

A design patent only protects the specific ornamental design shown in the drawings or images in the patent.  Design patents do not protect general or broad design concepts.  Said another way, design patents have almost no scope — they can claim only what appears in their drawings, and nothing else.

7

8

The design covers the overall visual impression it creates.  The scope of a design patent includes all the views and images in the patent, not just particular views or features.

9

10

For the sake of uniformity and clarity, design patents have to follow particular drafting rules issued by the Patent Office.  I will inform you of the relevant rules for the patents at issue here.

11

12

- First, oblique line shading must be used to show transparent, translucent and highly polished or reflective surfaces, such as a mirror.  Surfaces that lack oblique lines or other markings must be interpreted to be opaque and non-transparent.

13

14

15

- Second, broken lines are used in design patents for different reasons.  The two most common uses of broken lines are to disclose the environment related to the claimed design and to define the bounds of the claim.  As it is possible that broken lines with different purposes may be included in a single application, the description must make a visual distinction between the purposes.  Unclaimed subject matter must be described as forming no part of the claimed design, otherwise it is considered a part of the claimed design.

16

17

18

19

- Third, surface shading is necessary to distinguish between any open and solid areas of the article.  This is of particular importance in the showing of three dimensional articles where it is necessary to delineate plane, concave, convex, raised, and/or depressed surfaces of the subject matter, and to distinguish between open and closed areas.  Lack of appropriate surface shading in the drawing as filed may render the design nonenabling and indefinite.  Solid black surface shading is not permitted except when used to represent the color black as well as color contrast.

20

21

- Fourth, if color photographs or color drawings are included in the patent application, they will be considered an integral part of the disclosed and claimed design.

22

I will instruct you on specific design patents at a later time.

23

**Source**

24

*OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997) ("Whether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device.") (citations omitted); *id.* at 1405 ("We agree with the district court's claim construction, which properly limits the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept of a rocket-like tossing ball."); *In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988) ("Design patents have almost no scope."); *Elmer v. I.C.C. Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (quoting *In re Mann*); *Minka Lighting, Inc. v. Craftmade Intern., Inc.*, 93 Fed. Apx. 214, 217 (Fed. Cir. 2004) (same); *Amini Innovation Corp. v. Anthony Cal., Inc.*, 2004 WL 5545445,

25

26

27

28

*9 (C.D. Cal. Dec. 3, 2004); *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1187-88 (Fed. Cir. 1988).

-MPEP § 1503.02:

- "Oblique line shading must be used to show transparent, translucent and highly polished or reflective surfaces, such as a mirror."

- "The two most common uses of broken lines are to disclose the environment related to the claimed design and to define the bounds of the claim."

- "As it is possible that broken lines with different purposes may be included in a single application, the description must make a visual distinction between the two purposes."

- "Unclaimed subject matter must be described as forming no part of the claimed design or of a specified embodiment thereof."

- "Surface shading is also necessary to distinguish between any open and solid areas of the article."

- "The drawing figures should be appropriately and adequately shaded to show clearly the character and/or contour of all surfaces represented. See 37 CFR 1.152. This is of particular importance in the showing of three (3) dimensional articles where it is necessary to delineate plane, concave, convex, raised, and/or depressed surfaces of the subject matter, and to distinguish between open and closed areas. Solid black surface shading is not permitted except when used to represent the color black as well as color contrast."

- "Lack of appropriate surface shading in the drawing as filed may render the design nonenabling and indefinite under 35 U.S.C. 112,"

- "If color photographs or color drawings are filed with the original application, color will be considered an integral part of the disclosed and claimed design."

**Apple's Objection to Samsung's Instruction**

Samsung's proposed preliminary instruction misstates the law in several ways. First, the instruction states that "[a] design patent only protects the specific ornamental design shown in the drawings or images in the patent." Samsung inappropriately inserts unnecessary and misleading descriptors such as "only" and "specific" in an attempt to narrow the "scope" of a design patent. The law is clear that a design patent protects the ornamental design as shown in the drawings in the patent. *See, e.g., Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) ("Design patents are typically claimed as shown in drawings . . ."); MPEP § 1503.01 ("[A]s a rule, the illustration in the drawing views is its own best description."). Likewise, Samsung's instruction that "design patents have almost no scope" has no foundation in law and would be inherently confusing to the jury. Samsung presents this instruction as though it were an independent rule that somehow restricts the coverage of design patents to something less than what the drawings show. But there is no such rule. Samsung will rely on *In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988), but this case was not about design patent "scope" or interpretation, or design patent infringement at all. Rather, *Mann* dealt with a design patent application that was properly rejected because the design had been publicly displayed more than a year before filing. *Id.* at 1582. Thus, Samsung's favorite Federal Circuit's comment – that "[d]esign patents have almost no scope" *id.* – is dicta. The holding of the case is simply that the public display was not exempt as an "experimental use;" it made no sense to consider the display of a design experimental because "[t]he only use possible for an ornamental design is its embodiment,

exhibition, and observation." *Id.* at 1581.  The out of context instruction that design patents have "almost no scope" would, moreover, confuse the jury as potentially inconsistent with the infringement test that a substantially similar design will infringe.  Third, Samsung's instruction that "[d]esign patents do not protect general or broad design concepts" is gratuitous and unnecessary.  The phrase "general or broad design concepts" is confusing and will distract the jury from the task of visually comparing the overall impression of the designs at issue with those of the accused designs.  Fourth, Samsung's purported list of "drafting rules" for design patents is incorrect.  Samsung incorrectly states that "[s]urfaces that lack oblique lines or other markings must be interpreted to be opaque and non-transparent."  There is no authority for this assertion.  The lack of oblique lines in a design patent means that a transparent or reflective surface is not claimed.  But it does not follow that, if a transparent or reflective surface is *not* claimed, an opaque surface must be claimed instead.  Moreover, Samsung's instruction that "[u]nclaimed subject matter must be described as forming no part of the claimed design, otherwise it is considered a part of the claimed design" not only finds no support in the law, it is nonsensical and can only confuse the jury.  "*Unclaimed* subject matter" by definition cannot be "considered a part of the claimed design."  Samsung's instruction that a design can be "nonenabling and indefinite" should not be given, because enablement and indefiniteness are questions of law, not issues for the jury.  *Anthony John Antonious v. Spalding & Evenflo Cos.*, No. 98-1478, 1999 U.S. App. LEXIS 22984, at *20 (Fed. Cir. Aug. 31, 1999) ("Design patents must comply with the requirements of 35 U.S.C. § 112. . . . Whether a claim is indefinite and therefore invalid for violating section 112, P 1, is a question of law, which we review *de novo*.") (internal citations omitted); *Adang v. Fischhoff*, 286 F.3d 1346, 1353 (Fed. Cir. 2002) ("Enablement is a question of law and is reviewed *de novo*.").  Samsung also incorrectly states that "if color photographs or color drawings are included in the patent application, they will be considered an integral part of the disclosed and claimed design."  This instruction has no support in law.  The appropriate construction for a design patent is "the design shown in the [figures of the patent]."  *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010); *see also Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) (accused design compared to claimed design, not to embodiments of design).  With this instruction, Samsung attempts to mislead the jury regarding the photos of the "035 model" that were submitted with the application of the D'889 patent.  But these photos represented but "one embodiment" of the D'889 patent, not a replacement for the drawings that depict the patented design.  In fact, the PTO "cancelled" the photos from the D'889 application.  Apple's corresponding instruction, No. 10, is an accurate and succinct statement of the law of how to interpret a design patent.  It properly instructs the jury that for design patents, the "scope of the claim is defined by the drawings collectively" and that it "encompasses its visual appearance as a whole and in particular the overall visual impression it creates."  *See, e.g., Egyptian Goddess v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) ("[A] design is better represented by an illustration 'than it could be by any description.'") (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)).  It also provides tailored instructions for interpreting each design patent.

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 11**
**DESIGN AND UTILITY PATENT TERM GLOSSARY**

**Samsung's Proposed Instruction**

**Some of the terms in this glossary will be defined in more detail in the instructions you are given.  The definitions in the instructions must be followed and must control your deliberations.**

**Abstract**:  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**:  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**:  A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment**:  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

**Claim (Design Patent Claim)**:  The portion of the design patent that defines the design.  Each design patent includes a single claim, and only one claim, that includes a single sentence beginning with the expression "The ornamental design for . . ." and refers to the "specification," which is defined later.  The claim defines the scope of the patent holder's exclusive rights during the life of the design patent.

**Claim (Utility Patent Claim)**:  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**:  The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Continuation Application**:  A patent application filed during the examination process of an earlier application which has the same disclosure as the original application and does not include anything which would constitute new matter if inserted in the original application.

**Continuation-In-Part (C-I-P) Application**:  A patent application filed during the application process of an earlier application which repeats some or all of the earlier application and adds matter not disclosed in the earlier application to support the addition of new patent claims.

**Drawings (Design Patent)**:  The drawings are visual representations of the claimed design contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed design.  The drawings are part of the specification of a design patent.

**Drawings (Utility Patent)**:  The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**:  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**:  A product or method that contains the claimed invention.

**Examination**:  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**:  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**:  Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent.  Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using or selling the patented invention without permission.  Inducing infringement is intentionally causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling an item that is an important component of the invention, so that the buyer directly infringes the patent.  To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common component suitable for non-infringing uses.

**Limitation**:  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness**:  One of the requirements for securing a patent.  To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

**Office Action**:  A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

**Ordinary Observer Test:**  This is the test used to determine whether a design patent is infringed.  It states that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."  This same standard is also used to determine whether a design patent is invalid in light of prior art.

**Patent**:  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**:  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and

trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**:  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

**Prosecution History**:  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**:  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice**:  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

**Reexamination**:  A process in which a patent is reexamined by the PTO to determine whether one or more of the claims are patentable with respect to submitted prior art which may consist only of prior patents or printed publications.  An "ex parte" reexamination is initiated by the patent holder or a third party, but does not include the further participation of any third party.  An "inter partes" reexamination is initiated by a third party who continues to participate in the proceedings.

**Requirement**:  A required part or step of an invention set forth in a patent claim.  The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**:  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

**Specification (Design Patent)**:  The information that describes and shows the ornamental design referenced in the claim of the design patent.  The specification includes a description and one or more drawings and/or photographs, all of which are incorporated into the claim.  In the specification, the one or more drawings and/or photographs must include a sufficient number of views to constitute a complete disclosure of the appearance of the design claimed.

**Specification (Utility Patent)**:  The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.

**Source**

N.D. Cal. Model Patent Jury Instr. C.1; The Intellectual Property Owners Ass'n Designs Rights Committee Model Patent Jury Instructions Glossary.

**<u>Samsung's Statement in Support</u>**

Samsung asserts that a glossary would be of great benefit to a jury as it attempts to understand the myriad of patent-related terms in this litigation.  Further, Samsung's definition for the Ordinary Observer Test quotes Gorham Co. v. White, 81 U.S. 511, 528 (1871), the seminal case on design patent infringement.  The Federal Circuit held in Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 678 (Fed. Cir. 2008) that the "ordinary observer test" as from Gorham v. White was the sole test for design patent infringement.  Under Int'l Seaway Trading Corp. v. Walgreens Corp., 589 F.3d 1233, 1240 (Fed. Cir. 2010), the ordinary observer test was applied to anticipation and

1    obviousness as well.  Additional terms such as Claim, Drawings, Specification and the rest are
     included to orient the jury to common patent terminology.

2

3    **Apple's Objection to Samsung's Glossary**

4    Samsung's proposed "glossary" is unnecessary, inaccurate, incomplete, and misstates the law in
     several ways.  It is also redundant in that it repeats, often incorrectly, concepts addressed

5    elsewhere in the instructions.  First, its definitions of "anticipation" and "nonobviousness" relate
     only to utility patents, and fail to account for design patent standards.  Likewise, Samsung's

6    definition of "reads on" is misleading as it does not account for design patents.  It is also
     extraneous in light of Samsung's definitions of "elements" and "limitation."  Second, its

7    definition of "infringement" is inaccurate as it inappropriately limits all infringement – rather
     than just direct infringement – to acts "within the United States."  *See, e.g.,* 35 U.S.C. § 271(b)

8    (no territorial limitation on inducement).  Third, its definition of the "ordinary observer test" is
     also misleading.  Its sole reliance on an excerpt from *Gorham Co. v. White*, 81 U.S. 511 (1871),

9    does not adequately inform the jury regarding the proper application of the test.  Indeed,
     Samsung's instruction that "[t]his same standard is also used to determine whether a design

10   patent is invalid in light of prior art" underscores the confusion as an ordinary observer cannot be
     induced into "purchasing" a prior art patent.  Other definitions suffer from similar defects.

11   Samsung's definition of "patent" is also inaccurate with respect to the statement that "[w]hen the
     patent expires, the right to make, sue, or sell the invention is dedicated to the public."  The

12   expiration of a patent does not convey any rights to do anything in particular.  Samsung's
     definition of "reduction to practice" does not account for "constructive reduction to practice."

13   Samsung's definition of "specification (design patent)" is also misleading as it references
     "photographs" when none of the asserted design patents include photographs in their

14   specification.  This is merely an inappropriate attempt by Samsung to highlight the cancelled
     appendix of photographs in the D'889 prosecution history.  Because Samsung's proposed

15   "glossary" is incomplete, redundant, and misstates the law, it should not be part of the Court's
     preliminary jury instructions.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# GENERAL CIVIL INSTRUCTIONS

1

**PROPOSED FINAL JURY INSTRUCTION NO. 12
BURDENS OF PROOF--GENERALLY**

2

**Apple's Proposed Instruction**

3

The law recognizes three kinds of burdens of proof:

4

5
(1) When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true;

6

7
(2) When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence; and

8

9
(3) The third kind of burden of proof is referred to as "beyond a reasonable doubt."  But this burden of proof is involved in criminal cases and is not required in this case.

10

11

**Source**

12

Adapted from Ninth Circuit Model Civil Jury Instr. - 1.3, 1.4 (2007 Ed.).

13

**Samsung's Objection to Apple's Instruction**

14

15
Apple's Proposed Final Instruction No. 12 departs from the Ninth Circuit Model Rules because it introduces the "beyond a reasonable doubt" standard to the jury, along with the "preponderance of the evidence" and "clear and convincing evidence" standards used in civil cases.  Each of those standards is set forth and defined in Samsung's two proposed instructions below, and there is no reason to confuse the issue by introducing the criminal standard as well.

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Samsung's Proposed Instruction**

2   When a party has the burden of proof on any claim or affirmative defense by a preponderance of
    the evidence, it means you must be persuaded by the evidence that the claim or affirmative
3   defense is more probably true than not true.

4   You should base your decision on all of the evidence, regardless of which party presented it.

5   **Source**

6   Ninth Circuit Model Civil Jury Instr. – 1.3 (2007 Ed.)

7

8   **Apple's Objection to Samsung's Instruction**

9   Samsung's proposed instruction is devoid of context.  Rather than discussing the preponderance
    of the evidence burden of proof in a vacuum, the Court should give a general burden of proof
    instruction addressing the preponderance of the evidence, clear and convincing evidence, and
10  "beyond a reasonable doubt" standards together.  Many jurors may associate a "burden of proof"
    with the "beyond a reasonable doubt" criminal standard that dominates the media.  Having a
11  general burden of proof instruction addressing and distinguishing the "beyond a reasonable
    doubt" burden will prevent the jury from inadvertently applying the incorrect burden.  A general
12  burden of proof instruction also more accurately conveys that proof is a spectrum, with various
    burdens falling at different places on this spectrum.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 12.1
BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

**Samsung's Proposed Instruction**

3
4
5

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

6

You should base your decision on all of the evidence, regardless of which party presented it.

7

**Source**

8

Ninth Circuit Model Civil Jury Instr. – 1.4 (2007 Ed.)

9

**Apple's Objection to Samsung's Instruction**

10
11
12
13
14

Samsung's proposed instruction is devoid of context and invites jury confusion.  Rather than discussing the clear and convincing evidence burden of proof in a vacuum, the Court should give a general burden of proof instruction addressing the preponderance of the evidence, the clear and convincing evidence, and beyond a reasonable doubt standards.  Many jurors may associate a "burden of proof" with the "beyond a reasonable doubt" criminal standard that dominates the media.  Having a general burden of proof instruction that addresses and distinguishes the "beyond a reasonable doubt" burden will prevent the jury from inadvertently applying the incorrect burden.  A general burden of proof instruction also accurately more conveys that proof is a spectrum, with various burdens falling at different places on this spectrum.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 13
## TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

3

**Samsung's Proposed Instruction**

4

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

5

6

**Source**

Ninth Circuit Model Civil Jury Instr. – 1.5 (2007 Ed.)

7

8

**Apple's Objection to Samsung's Instruction**

9

10

11

Samsung's proposed instruction is duplicative in light of Apple's Proposed Summary of Patent Contentions and Samsung's Proposed Summary of Contentions instructions which both convey that each party's claims are separate and to be considered independently. Furthermore, any distinction between different Samsung entities should be addressed as the distinction arises (the approach adopted by Apple's proposed instructions) so as to provide the jury with sufficient context to appreciate the distinction.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 14
## CHARTS AND SUMMARIES

2

3

**Apple's Proposed Instruction**

4

You will remember that certain summaries and charts were admitted in evidence. You may use
those summaries and charts as evidence, even though the underlying documents and records are
not here. [However, the accuracy and authenticity of those summaries and charts have been
challenged. It is for you to decide how much weight, if any, you will give to them. In making
that decision, you should consider all of the testimony you heard about the way in which they
were prepared.]

5

6

7

**Source**

8

Eighth Circuit Model Criminal Jury Instructions - 4.12 (2008 Ed.).

9

**Authorities**

10

Fed. R. Evid. 1006, 1008(c); 5 Weinstein's Evidence ¶¶ 1006, 1008 (1978); *United States v. Rizk,*
660 F.3d 1125, 1130 (9th Cir. 2011) (for charts to be admitted under Rule 1006, material
underlying charts do not need to be admitted into evidence as long as they are admissible and
made available to opposing party for inspection); *United States v. Meyers,* 847 F.2d 1408, 1412
(9th Cir. 1988) (underlying material must be admissible but need not be admitted); *Keith v. Volpe,*
858 F.2d 467, 479-81 (9th Cir. 1988) (affirming court's decision to admit summary report under
Rule 1006 over challenges that the summary was neither necessary nor trustworthy); *Ford Motor
Co. v. Auto Supply Co., Inc.*, 661 F.2d 1171, 1175-76 (8th Cir. 1981) (permitting summaries to be
admitted as evidence without admission of the underlying documents as long as the opposing
party has had an opportunity to examine and copy the documents at a reasonable time and place
and if those underlying documents would be admissible); *United States v. Robinson*, 774 F.2d
261,275- 276 (8th Cir. 1985) (summaries will not be admitted until the court has made a
preliminary ruling as to their accuracy); *United States v. King*, 616 F.2d 1034, 1041 (8th Cir.
1980) (admission is within the sound discretion of the trial judge.); *United States v. Possick*,
849 F.2d 332, 339 (8th Cir. 1988) ("voluminous" requirement of Rule 1006 does not require that
it literally be impossible to examine all the underlying records, but only that in-court examination
would be an inconvenience); *id.* (charts and diagrams admitted under Rule 1006 may be sent to
the jury at the district court's discretion); *id.* at 340 (when this type of exhibit is sent to the jury, a
limiting instruction is appropriate, but failure to give an instruction on the use of charts is not
reversible error); *United States v. Orlowski*, 808 F.2d 1283, 1289 (8th Cir. 1986) (charts and
diagrams admitted under Rule 1006 may be sent to the jury at the district court's discretion).

11

12

13

14

15

16

17

18

19

20

21

**Samsung's Objection to Apple's Instruction**

22

23

As the Ninth Circuit's Model Civil Jury Instruction 2.12, upon which Samsung's proposed
instruction is based, highlights, charts, summaries, and demonstratives are "not themselves
evidence or proof of any facts." To the extent the parties' un-admitted charts, summaries, and
demonstratives conflict with underlying evidence, the jury should rely on the underlying
substantive evidence, not attorney-created charts, summaries, or demonstratives. Samsung's
proposed Instruction explains the proper relationship between summaries and underlying
evidence, and ensures that the jury will properly evaluate weight any charts, summaries, and
demonstratives in reaching a verdict.

24

25

26

27

28

**Samsung's Proposed Instruction**

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Source**

Ninth Circuit Model Civil Jury Instr. – 2.12 (2007 Ed.)

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is at odds with the basic tenets of Fed. R. Ev. 1006. Rule 1006 permits a proponent to use "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court (emphasis added)." All that Rule 1006 requires is that "[t]he proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." Moreover, Rule 1006 gives the court discretion to order the proponent to produce them in court. However, Samsung's proposed instruction is predicated on the underlying evidence being admitted into evidence. Rule 1006 requires no such thing. Samsung's instructions undercut the purpose of Rule 1006, which is to avoid requiring the jury to engage in needless, voluminous examination. The Eighth Circuit Model Criminal Jury Instruction – 4.12 (2008 Ed.) captures the clear language and purpose of Rule 1006 and should be given to the jury. Ninth Circuit case law has long supported this approach. *See* Fed. R. Evid. 1006, 1008(c); 5 Weinstein's Evidence ¶¶ 1006, 1008 (1978); *United States v. Rizk,* 660 F.3d 1125, 1130 (9th Cir. 2011) (for charts to be admitted under Rule 1006, material underlying charts do not need to be admitted into evidence as long as they are admissible and made available to opposing party for inspection); *United States v. Meyers,* 847 F.2d 1408, 1412 (9th Cir. 1988) (underlying material must be admissible but need not be admitted); *Keith v. Volpe,* 858 F.2d 467, 479-81 (9th Cir. 1988) (affirming court's decision to admit summary report under Rule 1006 over challenges that the summary was neither necessary nor trustworthy).

1

## PROPOSED FINAL JURY INSTRUCTION NO. 14.1
## CHARTS AND SUMMARIES IN EVIDENCE

2

**Samsung's Proposed Instruction**

3

4   Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

5

6   **Source**

7   Ninth Circuit Model Civil Jury Instr. – 2.13 (2007 Ed.)

8

**Apple's Objection to Samsung's Instruction**

9

10   Samsung's proposed instruction is odds with the basic tenets of Fed. R. Ev. 1006.  Rule 1006 permits a proponent to use "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court (emphasis added)."  All that Rule 1006 requires is that "[t]he proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."  Moreover, Rule 1006 gives the court discretion to order the proponent to produce them in court.  However, Samsung's proposed instruction is predicated on the underlying evidence being admitted into evidence.  Rule 1006 requires no such thing.  Samsung's instructions undercut the purpose of Rule 1006, which is to avoid requiring the jury to engage in needless, voluminous examination.  The Eighth Circuit Model Criminal Jury Instruction – 4.12 (2008 Ed.) captures the clear language and purpose of Rule 1006 and should be given to the jury.  Ninth Circuit case law has long supported this approach.  *See* Fed. R. Evid. 1006, 1008(c); 5 Weinstein's Evidence ¶¶ 1006, 1008 (1978); *United States v. Rizk,* 660 F.3d 1125, 1130 (9th Cir. 2011) (for charts to be admitted under Rule 1006, material underlying charts do not need to be admitted into evidence as long as they are admissible and made available to opposing party for inspection); *United States v. Meyers,* 847 F.2d 1408, 1412 (9th Cir. 1988) (underlying material must be admissible but need not be admitted); *Keith v. Volpe,* 858 F.2d 467, 479-81 (9th Cir. 1988) (affirming court's decision to admit summary report under Rule 1006 over challenges that the summary was neither necessary nor trustworthy).

11

12

13

14

15

16

17

18

19

**Samsung's Statement in Support**

20

21   Charts and summaries are admitted into evidence to assist the jury in understanding the "content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. of Evid. 1006.  As such, a party admitting charts or summaries instead of the underlying evidence has the burden of  establishing proper foundation.  *See United States v. Johnson,* 594 F.2d 1253, 1254-55 (9th Cir. 1979).  The Ninth Circuit's Model Civil Jury Instruction 2.13 recognizes that where a party fails to meet that burden, it cannot rely on charts or summaries that conflict with the underlying substantive evidence.

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 15**
**RETURN OF VERDICT**

2

3

**Apple's Proposed Instruction**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a
verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and
advise the court that you are ready to return to the courtroom.

4

5

**Source**

6

Ninth Circuit Model Civil Jury Instr. - 3.3 (2007 Ed.).

7

8

**Samsung's Objection to Apple's Instruction**

9

10

Apple's proposed instruction excludes the Ninth Circuit's suggested explanation of the verdict
form.  In a case that includes multiple utility patents, multiple design patents, trade dress,
antitrust and other claims, particularly one that is being tried in a short amount of time, an
explanation of the verdict form is very important because it gives the jurors a proper framework
around which they should organize their decisionmaking process after hearing so much evidence.
In addition, for the same reason, Samsung's Alternative to Apple's Proposed Final Instruction
No. 15, reminds the jurors, as they are approaching the verdict form, that their answer to each
question must be unanimous.  Apple's instruction acknowledges that this is the law but glosses
over it by mentioning it in passing.  Apple's proposed instruction should not be adopted.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Samsung's Proposed Instruction**

2

A form of Special Verdict has been prepared for you.  [Any explanation of the verdict form may be given at this time.]  The answer to each question must be the unanimous answer of the jury.

3

Your foreperson will write the unanimous answer of the jury in the space provided below each question.  When you have finished the Special verdict form, your foreperson will sign and date it,

4

and advise the court that you are ready to return to the courtroom.

5

**Source**

6

Ninth Circuit Model Civil Jury Instr. – 3.3 (2007 Ed.)

7

**Apple's Objection to Samsung's Instruction**

8

There is no need to introduce the details of the verdict form at the stage when this instruction will

9

get read.  This would only complicate matters.  Apple's proposed instruction closely matches the Ninth Circuit model, and focuses on the key concepts of unanimity and the role of

10

the foreperson.  Armed with these principles, and after the final substantive instructions get read, the jury will be able to parse the requirements of the verdict form once it is in its hands.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 16**
**SUMMARY OF CONTENTIONS**

3

**Apple's Proposed Instruction**

4

I will now again summarize for you each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

5

6

7

As I previously explained, Apple accuses Samsung of directly infringing a number of its utility and design patents, and claims that the Samsung Korean parent actively induced its Samsung affiliates in the United States to infringe the patents. Apple contends also that Samsung's infringement has been willful. Samsung denies that it has infringed the asserted claims of Apple's patents and argues that, in addition, those claims are invalid.

8

9

10

11

Your job will be to decide whether Samsung has infringed the asserted claims and claimed designs of the Apple patents and whether each claim or claimed design is invalid. If you decide that any Apple patent claim or claimed design has been infringed and is not invalid, you will then need to decide any money damages to award Apple for the infringement. You will also need to make a finding as to whether any Samsung infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

12

13

14

15

16

Apple also accuses Samsung of diluting and infringing a number of Apple's iPhone and iPad-related trade dresses. Apple alleges that Samsung's sale of certain smart phone products and tablets dilute its iPhone and iPad-related trade dresses by impairing their distinctiveness, and that Samsung's sale of certain tablet computer products infringed its iPad-related trade dress because they are likely to cause confusion as to the source of the Samsung products. Apple seeks money damages from Samsung for this alleged dilution and infringement of its trade dresses. Samsung denies that it has diluted or infringed Apple's trade dress rights and argues that, in addition, the trade dresses asserted by Apple are not protectable.

17

18

Your job is to decide whether each asserted trade dress has been diluted or infringed (or both) by Samsung, and whether each trade dress is protectable. If you decide that any of Apple's trade dresses are protectable, and that they have been willfully diluted or infringed, you will need to decide any money damages to be awarded to Apple for the dilution and/or infringement.

19

20

21

22

Samsung also accuses Apple of infringing a number of its utility patents, and argues that Apple's infringement has been willful. Apple denies that it has infringed the asserted claims of Samsung's patents and argues that, in addition, those claims are invalid and, for the '516, '941, and '604 patents, also unenforceable. Apple also contends that, by asserting its "declared essential" patents against Apple, Samsung has violated the antitrust laws and breached its contractual obligations to timely disclose and then license these patents on fair and reasonable terms.

23

24

25

26

Your job will be to decide whether Apple has infringed the asserted claims of the Samsung patents and whether each claim is invalid. If you decide that any Samsung patent claim has been infringed and is not invalid, you will then need to decide any money damages to award Samsung for the infringement. You will also need to make a finding as to whether any Apple infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

27

28

To resolve Apple's claims regarding Samsung's "declared essential" patents, you will need to make a finding as to whether Samsung violated the antitrust laws and whether Samsung breached its contractual obligations. If you decide that Samsung violated the antitrust laws or breached its contractual obligations, you will then need to decide what money damages to award to Apple.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 6.

**Samsung's Objection to Apple's Instruction**

Samsung objects to Apple's proposed instruction and urges the Court to adopt its alternative. Apple's instruction includes many statements that imply that issues before the jury have been already resolved in its favor. For example, it uses the term "Apple's iPhone and iPad" related trade dresses, which it must prove. As another example, the statement "Apple alleges that Samsung's sales of certain smart phone products and tablets dilute its iPhone and iPad-related trade dresses by impairing their distinctiveness" suggests to the jurors that the distinctiveness of Apple's trade dress has already been determined and that Apple must only prove its alleged dilution. This is improper. The instruction is also one-sided because it buries Samsung's claims in the middle of a lengthy and biased discussion of Apple's claims. Apple's instruction also creates ambiguity and confusion by failing to identify the individual Samsung entities and instead referring vaguely to "Samsung." The Court should adopt Samsung's proposed instruction because it is a proper summary and presents each party's claim in an unbiased and clear fashion. The rest of the instructions can then be used for Apple and Samsung to set forth the details of their various allegations.

1   **Samsung's Proposed Instruction**

2   The parties in this case are Apple Inc. and Samsung Electronics Company Ltd. (sometimes
    referred to as "SEC"), Samsung Electronics America Inc. (sometimes referred to as "SEA"), and
3   Samsung Telecommunications America LLC (sometimes referred to as "STA").  In these
    Instructions I will refer to Apple Inc. as "Apple," and  I generally will refer to Samsung
4   Electronics Company Ltd., Samsung Electronics America Inc., and Samsung
    Telecommunications America LLC collectively as "Samsung" for the purposes of a specific
5   Instruction.  However, you must consider the evidence and decide the case separately as to
    Samsung Electronics Company, Samsung Electronics America, and Samsung
6   Telecommunications America, regardless of whether I refer to them collectively as "Samsung" or
    individually.

7
    Apple has brought claims against Samsung seeking money damages from Samsung for alleged
8   trade dress infringement and dilution, and utility patent and design patent infringement, relating to
    Samsung's smartphone and tablet products.  Samsung has denied Apple's allegations, has sought
9   a determination that it does not infringe any of rights of Apple and sought a declaration that
    Apple's trade dress, design patent, and utility patents are invalid.
10
    Samsung also has brought claims against Apple for patent infringement relating to Apple's
11  iPhone, iPad and iPod products.  Apple has denied Samsung's allegations, has sought  a
    declaratory judgment as to Samsung's counterclaims and asserted further claims of
12  monopolization, violation of the California Unfair Competition Law, and breach of contract
    associated with Samsung's assertion of patents that Samsung has declared to be essential to
13  certain wireless telecommunications standards.  In addition, Apple seeks a declaration that it is
    irrevocably entitled to a fair, reasonable and non-discriminatory ("FRAND") license to those
14  essential patents, and which sets forth the FRAND terms and conditions of that license.  Samsung
    has denied Apple's allegations.
15
    Specifically, your job will be to decide the following:
16
    **Apple's Claims**
17
       1.   Whether the Gallery, Contacts, Web Browser or ThinkFree Office applications in the
18          following Samsung products infringe Claim 19 of U.S. Patent No. 7,469,381:

19
                  • Galaxy Tab
20                • Galaxy Tab 10.1
                  • Captivate
21                • Continuum
                  • Droid Charge
22                • Epic 4G
                  • Exhibit 4G
23                • Fascinate
                  • Galaxy Ace
24                • Galaxy Prevail
                  • Galaxy S (i9000)
25                • Galaxy S 4G
                  • Gravity
26                • Indulge
                  • Infuse 4G
27

28

- Intercept
- Mesmerize
- Nexus S
- Nexus S 4G
- Replenish
- Showcase Galaxy S
- Sidekick
- Vibrant
- Galaxy S II (pre-August 26, 2011 versions)

2. Whether the Web Browser application in the following Samsung products infringe Claim 8 of U.S. Patent No. 7,844,915:

- Galaxy Tab
- Galaxy Tab 10.1
- Acclaim
- Captivate
- Continuum
- Droid Charge
- Epic 4G
- Exhibit 4G
- Fascinate
- Galaxy Ace
- Galaxy Prevail
- Galaxy S (i9000)
- Galaxy S 4G
- Gem
- Gravity
- Indulge
- Infuse 4G
- Intercept
- Mesmerize
- Nexus S
- Nexus S 4G
- Replenish
- Showcase Galaxy S
- Sidekick
- Transform
- Vibrant
- Galaxy S II (pre-August 26, 2011 versions)

3. Whether the Web Browser application in the following Samsung products infringe Claim 50 of U.S. Patent No. 7,864,163:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Galaxy Tab
- Galaxy Tab 10.1
- Acclaim
- Captivate
- Continuum
- Droid Charge
- Epic 4G
- Exhibit 4G
- Fascinate
- Galaxy Ace
- Galaxy Prevail
- Galaxy S (i9000)
- Galaxy S 4G
- Gem
- Gravity
- Indulge
- Infuse 4G
- Intercept
- Mesmerize
- Nexus S
- Nexus S 4G
- Replenish
- Showcase Galaxy S
- Sidekick
- Transform
- Vibrant
- Galaxy S II (pre-August 26, 2011 versions)

4. Whether Samsung infringes:

    a.   U.S. Patent No. D618,677 by selling the following smartphone;

- Samsung Galaxy Ace (SHW-M240S);
- Samsung Infuse 4G (SGH-1997);
- Samsung Galaxy S i9000 (SHW-M1105);
- Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize);
- Samsung Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959).

    b.   U.S. Patent No. D593,087 by selling the following smartphones;

- Samsung Galaxy Ace (SHW-M240S);
- Samsung Infuse 4G (SGH-1997);
- Samsung Galaxy S i9000 (SHW-M1105);

- Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize);
- Samsung Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959)

c. U.S. Patent No. D604,305 by selling the following smartphones;

- Captivate;
- Continuum;
- Droid Charge;
- Epic 4G;
- Fascinate;
- Gem;
- Galaxy S i9000;
- Galaxy S 4G;
- Indulge;
- Infuse 4G;
- Mesmerize;
- Showcase;
- Galaxy S Showcase i500;
- Vibrant.

d. U.S. Patent No. D504,889 by selling the following tablet computers:

- Galaxy Tab 10.1

e. Whether Apple's asserted patent claims are valid;

5. Whether Samsung has diluted the iPhone trade dress based on the trade dress Registration No. 3,470,983 by selling the following smartphones:

- Fascinate
- Galaxy S 4G
- Galaxy S Showcase (i500)
- Infuse 4G
- Mesmerize
- Vibrant

6. Whether Samsung has diluted the unregistered iPhone trade dress by selling the following smartphones:

- Fascinate
- Galaxy Prevail
- Galaxy S 4G
- Galaxy S Showcase (i500)
- Infuse 4G
- Mesmerize

- Vibrant

7. Whether Samsung has diluted the unregistered iPhone 3G trade dress by selling the following smartphones:

- Fascinate
- Galaxy Prevail
- Galaxy S 4G
- Galaxy S Showcase (i500)
- Infuse 4G
- Mesmerize
- Vibrant

8. Whether Samsung has diluted or infringed the unregistered iPad trade dress by selling the following tablet computers:

- Galaxy Tab 10.1
- Galaxy Tab 10.1 LTE

9. Whether Samsung has diluted or infringed the unregistered iPad 2 trade dress by selling the following tablet computers:

- Galaxy Tab 10.1
- Galaxy Tab 10.1 LTE

10.     Whether Apple's claims are barred by Samsung's defenses.

11. The remedies to which Apple is entitled, if any, as a result.

**Samsung's Claims**

7. Whether Apple infringes:

  a.   Claims 10 and 15 of U.S. Patent No. 7,675,941 by selling the following smartphone and tablet computer;

- iPhone 4
- iPad2 3G

  b.   Claims 17 and 18 of U.S. Patent No. 6,928,604 by selling the following smartphones and tablet computers;

- iPhone 3G
- iPhone 3GS
- iPhone 4
- iPad 3G

1          • iPad2 3G

2     c.  Claims 15 and 16 of U.S. Patent No. 7,447,516 by selling the following
3         smartphone and tablet computer;

4          • iPhone 4
           • iPad2 3G
5

6     d.  Claim 9 of U.S. Patent No. 7,698,711 by selling the following;

7          • iPhone 3G
           • iPhone 3GS
8          • iPhone 4
           • iPhone 4S
9          • iPad 2
           • iPod Touch (4th Generation)
10

11    e.  Claim 1 of U.S. Patent No. 7,577,460 by selling the following; or

12         • iPhone 3G
           • iPhone 3GS
13         • iPhone 4
           • iPhone 4S
14         • iPad 2
           • iPod Touch (4th Generation)
15

16    f.  Claim 10 of U.S. Patent No. 7,456,893 by selling the following.

17         • iPhone 3GS
18         • iPhone 4
           • iPhone 4S
19         • iPad 2
           • iPod Touch (4th Generation)
20

21   8.  Whether Samsung's asserted patent claims are valid;

22   9.  Whether Samsung's asserted patent claims are enforceable;

23   10. Whether Samsung's claims are barred by Apple's defenses;

24   11. Whether Samsung has engaged in breach of contract or violated antitrust or unfair
25       competition law in connection with its standards-related conduct or its assertion of patents
         that it has declared essential to industry standards; and

26
27   12. The remedies to which Samsung is entitled, if any, as a result.

28

1

**Source**

2

N.D. Cal. Model Patent Jury Instr. A.3

3

**Apple's Objection to Samsung's Instruction**

4

5

Samsung's proposed instruction is too lengthy and dense.  Samsung again spends 6 pages in this instruction summarizing the parties' contentions.  The instruction contains too much detail to be informative or comprehensible to the jury.  Apple's proposed preliminary instruction Nos. 6-8, by contrast, cover the same ground in half the space.  These Apple instructions also summarize the parties' utility patent, design patent, trade dress, antitrust, and contract contentions, but do so in a much more user-friendly format.  Apple's proposed preliminary instruction Nos. 6-8 liberally direct the jurors to the tabs in their notebooks that contain information about the intellectual property and accused products at issue in the case.  This format will prove much more effective at aiding jury comprehension, and it will allow the jury to become conversant with the notebook as a resource for the entirety of the trial.  By the time that the presentation of evidence has closed and it is time to read the final instructions to the jury, it will be even less necessary than at the beginning to read this 6-page list to the jury.  Another problem with Samsung's proposed instruction is that the lists of accused products provided by Samsung are incorrect.  The Gem is not listed as an accused product for the '381 patent, and the Gravity Smart is not listed for either the '915 or the '163 patents.  Samsung then fails to list any of the five Galaxy S II phones that Apple has accused of infringing the D'677 and D'087 patents, and incorrectly lists the Fascinate, Mesmerize, Showcase, and Galaxy Ace as accused products under the D'087 patent.  Samsung has also omitted the Tab 10.1 LTE from the list of products accused under the D'889 patent.  Samsung also incorrectly identifies the products that allegedly violate Apple's trade dresses.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 16.1**
**SUMMARY OF CONTENTIONS**

2

**Samsung's Proposed Instruction**

3

I will now give you a summary of each side's contentions in this case with respect to design and
utility patent infringement. I will then tell you what each must prove to win on each of its
contentions.

4

5

Your job is to decide whether the asserted claims of the design or utility patents have been
infringed and whether any of the asserted claims are invalid. If you decide that any claim of the
asserted patents have been infringed and is not invalid, you will then need to decide any monetary
damages to be awarded to either Apple or the Samsung to compensate for the infringement.

6

7

8

**Source**

9

Adapted from N.D. Cal. Model Instructions, B.1.

10

11

**Apple's Objection to Samsung's Instruction**

12

Samsung's proposed instruction is unnecessary. The jury will already have been informed more
than once that it will have to decide the parties' respective claims for patent infringement and
that it may have to assess damages. There will be no need to remind the jury again. Apple's
proposed instruction No. 16 will provide the jury with one post-evidence summary of the parties'
contentions as to all claims in the case, not just the patent claims.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 16.2**
**SUMMARY OF UTILITY PATENT CONTENTIONS**

2

3

**Samsung's Proposed Instruction**

4

I will now give you a summary of the positions of the parties with respect to utility patent infringement.

5

Apple alleges that the following devices infringe the '381, '915 and '163 utility patents:

6

| Utility Patent(s) | Device(s) Accused of Infringing |
| --- | --- |
| '381 | Gallery, Contacts, Web Browser or ThinkFree Office applications in the Galaxy Tab, Galaxy Tab 10.1, Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Showcase Galaxy S, Sidekick, Vibrant, Galaxy S II (pre-August 26, 2011 versions) |
| '915 | Web Browser application in the Galaxy Tab, Galaxy Tab 10.1, Acclaim, Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Gem, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Showcase Galaxy S, Sidekick, Transform, Vibrant, Galaxy S II (pre-August 26, 2011 versions) |
| '163 | Web Browser application in the Galaxy Tab, Galaxy Tab 10.1, Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Gem, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Showcase Galaxy S, Sidekick, Transform, Vibrant, Galaxy S II (pre-August 26, 2011 versions) |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Each of the Samsung entities deny that any of these devices infringe any Apple patent. Apple bears the burden of proving by a preponderance of the evidence its allegations that each device infringes each separate patent. Therefore, you the jury must determine infringement for each patent separately, considering each individual device separately. You must not consider the patents or devices in groups to determine infringement on that basis.

21

22

23

In addition, each of the Samsung entities argue that the asserted claims of the Apple patents are invalid. To prove invalidity of any utility patent claim, the alleged infringer must persuade you by clear and convincing evidence that the claim is invalid.

24

25

26

27

28

Samsung alleges that the following devices infringe the '941, '604, '516, '711, '460 and '893 utility patents:

| Utility Patent(s) | Device(s) Accused of Infringing |
|---|---|
| '941 | iPhone 4,  iPad 2 3G |
| '604 | iPhone 3G, iPhone 3GS, iPhone 4, iPad 3G, iPad 2 3G |
| '516 | iPhone 4,  iPad 2 3G |
| '711 | iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, and iPod Touch (4th Generation) |
| '460 | iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, iPad 2, and iPod Touch (4th Generation) |
| '893 | iPhone 3GS, iPhone 4, iPhone 4S, iPad 2, and iPod Touch (4th Generation) |

Apple denies that any of these devices infringe any Samsung patent and argues that, in addition, the asserted claims of the Samsung patents are invalid.  Samsung bears the burden of proving by a preponderance of the evidence its allegations that each device infringes each separate patent. Therefore, you the jury must determine infringement for each patent separately, considering each individual device separately.  You must not consider the patents or devices in groups to determine infringement on that basis.

In addition, Apple argues that the asserted claims of the Samsung patents are invalid.  To prove invalidity of any utility patent claim, the alleged infringer must persuade you by clear and convincing evidence that the claim is invalid.

Your job will be to decide whether any of the asserted claims of each patent have been infringed and whether those claims are invalid.  If you decide that any of the asserted claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to compensate for infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

**Source**

N.D. Cal. Model Patent Jury Instr. A.3, B.1; AIPLA Model Patent Jury Instructions, 3.0; 35 U.S.C. § 271; 35 U.S.C. 289; *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116¬17 (Fed. Cir. 1998); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir.1998) (*en banc*); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), aff'd, 517 U.S. 370, 374, 116 S.Ct. 1384, 1388, 134 L. Ed. 2d 577 (1996); *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993); *but see, L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993) ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly, indeed, such comparison may facilitate application of Gorham criterion of whether an ordinary purchaser would be deceived into thinking that one were the

1    other."); *Braun, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 820 n.8 (Fed. Cir. 1992);
2    *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988).

3    **Apple's Objection to Samsung's Instruction**

4    Samsung's proposed instruction is unnecessary.  First, the information in this long summary of
     utility patent contentions will already have been provided by the Court (*see* Apple proposed
5    preliminary instruction No. 6), and the jurors will already have their jury binders that contain all
     of the relevant information about the identity of the patents and the accused products.  The Court
6    does not need to slow down the proceedings and repeat this information.  Second, the list of
     accused products provided by Samsung is incorrect.  The Gem is not listed as an accused product
7    for the '381 patent, and the Gravity Smart is not listed for either the '915 or the '163 patents.
     Third, Samsung's statement that the jury "must not consider the patents or devices in groups to
8    determine infringement on that basis" is overbroad and, in the context of this case, inaccurate.
     The Federal Circuit has consistently accepted examples and analysis about a subset of accused
9    products that can be extrapolated to many (or sometimes all) infringing products.  *See TiVo, Inc.*
     v. *EchoStar Communications Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008) (permissible to have
10   "expert testifying in detail about a particular device and then stating that the same analysis
     applies to other allegedly infringing devices that operate similarly, without discussing each type
11   of device in detail"); *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1350 (Fed. Cir. 2010) (court accepted
     52 models as representative of all semiconductor packages at issue because expert had offered
12   "specific and substantial evidence" about why all other packages would behave similarly);
     *Intellectual Sci. & Tech., Inc. v. Sony Electronics, Inc.*, 589 F.3d 1179, 1181 (Fed. Cir. 2009)
13   (analyzing all patents using categories created by the district court and representative products
     that plaintiffs provided pursuant to district court order).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 16.3
SUMMARY OF DESIGN PATENT ISSUES**

**Samsung's Proposed Instruction**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations with respect to Apple's design patent infringement claims.  You must decide the following:

1       Whether Apple has proved by a preponderance of the evidence that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America have each infringed any of the D'677, D'087, D'305 and D'889 design patents.

2       Whether Samsung has proved by clear and convincing evidence that any of the D'677, D'087, D'305 and D'889 design patents are invalid.

3       If you determine that one or more of the D'677, D'087, D'305 and D'889 design patents are infringed and not invalid, what amount of damages Apple has proved by a preponderance of the evidence, if any.

**Source**

AIPLA Model Jury Instruction 1.

**Samsung's Statement in Support**

This instruction transitions from the utility patent section to the design patent section when in the proper order.  Apple's design patent instructions abruptly jump into interpreting the claim of a design patent without noting the substantive topic change or summarizing the patents and issues to be discussed.  Samsung's instruction states the three areas to be covered for design patents — infringement, invalidity, and damages — and states the burden of proof for each.  It is based on the AIPLA Model Jury Instruction 1.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is repetitive of its and Apple's earlier summaries of the parties' contentions.  No further summary is needed.

1

**UTILITY PATENT JURY INSTRUCTIONS**

**PROPOSED FINAL JURY INSTRUCTION NO. 17**
**UTILITY PATENTS—INTERPRETATION OF CLAIMS**

**Apple's Proposed Instruction**

I will now instruct you how to decide whether each party has proven that the other has infringed any claims of the party's utility patents.  As I mentioned, utility patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  Before you decide whether any claim has been infringed or is invalid, you must understand the claim.

I have already determined the meaning of any claim language that needs interpretation.  You have been given a document at Tab ___ of your notebooks that contains these meanings.  You must accept these interpretations.  My interpretations should not be taken as an indication that I have a view regarding infringement or invalidity.  Those decisions are yours to make.

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1.

**Authorities**

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc); Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

**Samsung's Objection to Apple's Instruction**

Samsung objects to Apple's Instruction to the extent it fails to provide the Court's interpretation of already-constructed terms.  Samsung's proposal immediately below provides the Court's interpretation of its already-construed terms in the body of the instruction itself, as instructed by the Northern District of California's Model Patent Jury Instructions.  Samsung believes that it would be helpful for the jury to have the constructions of the already-construed terms available in the instruction rather than having to reference a tab in a binder.

**Samsung's Proposed Instruction**

Before you decide whether the parties have infringed the claims of the other's utility patents, or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the utility patent claims are numbered sentences at the end of the patent that describe the boundaries of the utility patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the utility patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

**'711 Patent Terms:**

*"applet"*

The term "applet" appears in Claim 9 of Samsung's '711 Patent. The term "applet" means "an application designed to run within an application module." This definition is how a person of ordinary skill in the art in 2005 would define "applet." An "applet" runs within an application module rather than within another program, and need not be operating system-independent.

**'381 Patent Terms:**

*"edge of [an or the] electronic document"*

The disputed term "edge of [an or the] electronic document" appears in claim 19 of Apple's '381 Patent. "Edge of [an or the] electronic document" has its plain and ordinary meaning. The meaning of "edge of [an or the] electronic document" is not limited to an external boundary, but may also refer to edges that are internal, such as when an electronic document is embedded in another electronic document.

**'915 Patent Terms:**

*"scrolling a window having a view associated with the event object"*

The disputed term "scrolling a window having a view associated with the event object" is found in claim 8 of Apple's '915 Patent. "Scrolling a window having a view associated with the event object" has its plain and ordinary meaning. The meaning of "scrolling a window having a view associated with the event object" is not limited to mean content viewed through the window must move in the same direction as the user input.

*"invokes"*

The disputed term "invokes" is found in claim 8 of Apple's '915 Patent. The term "invokes" means "causes" or "causes a procedure to be carried out."

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning, as it would have been understood by a person of ordinary skill in the art. I will provide you with a definition of "a person of ordinary skill in the art in Instruction No. _[Court to insert final number]__."

1

**Source**

2

N.D. Cal. Model Patent Jury Instr. B.2; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*)*; Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*); Order Construing Disputed Claim Terms of U.S. Patent Nos. 7,698,711; 6,493,002; 7,469,381; 7,663,607; 7,812,828; 7,844,915; and 7,853,891 (Dkt. 849).

3

4

5

6

7

**<u>Apple's Objection to Samsung's Instruction</u>**

8

Samsung's proposed instruction is unnecessary.  The Court should not have to read claim constructions to the jury.  Apple's proposed instruction No. 17 will direct the jurors to their binders, which is a more efficient process for the jury and the Court.  In addition, to the extent that claim constructions are read—or provided in written format in a binder—the terms from Apple's asserted patents should get presented first.  Finally, the language offered by Samsung is inaccurate and misleading.  These terms are not "disputed" anymore; they have been construed by the Court.  Samsung's characterizations are also incorrect.  With regard to the "edge" phrase cited by Samsung, this term appears in claim 19 of Apple's '381 patent and has its plain and ordinary meaning.  It is not limited to an external edge, and may be an internal edge.  With regard to the "scrolling" phrase, this term is found in claim 8 of Apple's '915 patent and has its plain and ordinary meaning.  It is not limited to mean that content viewed through the window must move in the same direction as the user input.  It can, for example, mean that a finger swipe to the right will reveal content from the left side of a screen.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 18**
**UTILITY PATENTS—INFRINGEMENT GENERALLY**

2

3

**Apple's Proposed Instruction**

A utility patent may be infringed directly or indirectly. I will explain the difference shortly. To prove infringement of any claim from a patent in suit, the patent holder must persuade you that it is more likely than not that the other side infringed that claim.

4

5

**Source**

6

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.1.

7

**Authorities**

8

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.,* 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.,* 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

9

10

11

**Samsung's Objection to Apple's Instruction**

12

Samsung objects to Apple's Instruction to the extent it fails to provide what is required to prove indirect infringement. Induced infringement is being asserted by each party in this action; thus, a description of the burden of proof required would be helpful to the jury. Samsung's proposed instruction immediately below provides this description and is preferable to Apple's Instruction.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

I will now instruct you on the rules you must follow in deciding whether each party has proven that the other party has infringed one or more of the asserted claims of its utility patents.

To prove infringement of any of Apple's claims, Apple must persuade you by a preponderance of the evidence that Samsung has infringed that claim. Each Samsung entity must be considered separately when determining infringement. To prove induced infringement of any of Apple's claims, Apple must persuade you both that someone else directly infringed that claim, and that Samsung induced that infringement, by a preponderance of the evidence.

Likewise, to prove infringement of any of Samsung's claims, Samsung must persuade you by a preponderance of evidence that Apple has infringed that claim. To prove induced infringement of any of Samsung's claims, Samsung must persuade you both that someone else directly infringed that claim, and that Apple induced that infringement, by a preponderance of the evidence.

I will explain the concepts of direct infringement and inducing infringement in a moment.

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.1; *Warner-Lambert Co. v. Teva Pharm. USA, Inc.,* 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction regarding the burden of proof for patent infringement is flawed for three reasons. First, it is unnecessarily long and convoluted. There is no need for all the excess verbiage in Samsung's proposal. Apple's more concise proposed instruction No. 18 informs the jury about the governing burden in less than three lines of text. Second, Samsung's use of the term "preponderance of the evidence"—rather than the more juror-friendly "more likely than not" language offered by Apple and found in the Northern District model—makes Samsung's proposal unduly legalistic and technical. Third, there is no need to instruct the jury that it must consider infringement separately for each Samsung entity. Apple's instructions are less confusing in that they refer to "Samsung" collectively unless it makes a difference. Most of the time it does not. In situations where it makes sense, such as in the context of inducement, Apple's instruction refers to the separate Samsung entities. (*See* Apple proposed instruction No. 58.) Doing so more generally as Samsung proposes in Instruction No. 18 would confuse the jury and lead to duplicative and unnecessary effort by the jury.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 19
UTILITY PATENTS—DIRECT INFRINGEMENT**

2

3

**Apple's Proposed Instruction**

A product or method directly infringes a utility patent if it is covered by at least one claim of the patent. The first step in deciding whether a claim has been directly infringed is to understand the claim's meaning. You have already been instructed on the meaning of some claim language. The next step is to decide whether the alleged infringer has made, used, sold, offered for sale, or imported within the United States a product covered by the claim. You make that decision.

4

5

6

With one exception, you must decide whether the alleged infringer's product infringes each asserted claim individually. The exception concerns dependent claims. Dependent claims include all the requirements of an independent claim, plus additional requirements. As a result, if an independent claim is not infringed, its dependent claims are not infringed. But if an independent claim has been infringed, you must still decide whether the additional requirements of its dependent claims have been infringed.

7

8

9

You have heard about both sides' commercial products. In deciding whether a claim has been infringed, you may not compare the alleged infringer's products to the patent holder's products. Rather, you must compare the accused products to the claim.

10

11

Whether the alleged infringer knew its products infringed, or knew of the patent, does not matter in determining direct infringement.

12

13

There are two ways in which a claim may be directly infringed: "literally" or under the "doctrine of equivalents." I will now instruct you on both.

14

15

**Source**

16

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.2.

17

**Authorities**

18

35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

19

20

21

22

**Samsung's Objection to Apple's Instruction**

23

Samsung objects to Apple's Instruction to the extent it fails to explicitly state that the jury must consider separately whether each of Samsung's devices infringe each disputed claim of Apple's patents and whether each of Apple's devices infringe each disputed claim of Samsung's patents. Samsung asserts that it's proposed instruction immediately below will be more helpful for the jury.

24

25

26

27

28

**Samsung's Proposed Instruction**

A utility patent's claims define what is covered by the patent. A product directly infringes a utility patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the utility patent claim. I have already made this decision for some of the patent claims, and I have already instructed you as to the meaning of some of those claims. The second step is to decide whether the accused party has made, used, sold, offered for sale, or imported into the United States a product covered by a claim of the utility patent. If so, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether the accused party's product infringes that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

With regards to Samsung's utility patents, you will hear evidence about Samsung's commercial products and Apple's accused products. Likewise, with regards to Apple's utility patents, you will hear evidence about Apple's commercial products and Samsung's accused products. However, in deciding the issue of infringement you may not compare one party's accused products to the other party's commercial products. Rather, you must compare the accused product to the claims of the patent when making your decision regarding infringement.

You must consider separately whether each of Samsung's accused devices infringe each disputed claim of Apple's patents. Samsung's devices infringe a patent if every element in one of the patent's claims is found in Samsung's device.

You must also consider separately whether each of Apple's accused devices infringe each disputed claim of Samsung's patents. Apple's devices infringe a patent if every element in one of the patent's claims is found in Apple's device.

Whether or not the accused party knew its product infringed or even knew of the patent does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.2; 35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *In re Seagate Tech., LLC*, 497 F. 3d 1360, 1368 (Fed. Cir. 2007) (*en banc*) ("patent infringement is a strict liability offense").

1    **Apple's Objection to Samsung's Instruction**

2    Samsung's proposed instruction is far lengthier than necessary.  Apple's proposed instruction
     No. 19 provides a much more concise and clear explanation of direct infringement.  Furthermore,
3    the fourth paragraph of Samsung's Instruction No. 19 refers to Samsung's patents and Apple's
     accused products before it refers to Apple's patents and Samsung's accused products.  That is
4    backwards.  Apple should come first.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 20**
**UTILITY PATENTS—LITERAL INFRINGEMENT**

**Apple's Proposed Instruction**

To decide whether an accused product literally infringes a claim, you must compare the product to the claim and determine whether every requirement of the claim is in that product. If so, the product literally infringes. If not, it does not literally infringe. You must decide this for each claim asserted against a product.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. The asserted claims for all of the patents in this dispute are to be understood as open claims. An open claim is infringed as long as every requirement in the claim is present in the accused product. The fact that the accused product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.3.

**Authorities**

*MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007). Note that the issue of divided infringement is the subject of two en banc cases pending at this writing: *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010) and *McKesson Techs. v. Epic Sys. Corp.*, 463 F. App'x 906 (Fed. Cir. May 26, 2011).

**Samsung's Objection to Apple's Instruction**

The Court should adopt Samsung's proposal that follows.

1

**Samsung's Proposed Instruction**

2

To decide whether a product literally infringes an asserted claim of a utility patent, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product.  If so, the product literally infringes that claim.  If, however, the product does not have every requirement in the patent claim, the product does not literally infringe that claim.  You must decide literal infringement for each asserted claim separately.

3

4

5

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  The asserted claims for all of the patents in this dispute are to be understood as open claims.  An open claim is infringed as long as every requirement in the claim is present in the accused product.  The fact that the accused product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

6

7

8

**Source**

9

N.D. Cal. Model Patent Jury Instr. B.3.3; *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 535 F.3d 1369 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

10

11

12

13

**Apple's Objection to Samsung's Instruction**

14

Samsung's proposed instruction is lengthier than necessary.  Apple's proposed instruction No. 20 provides a more concise explanation of literal infringement.  This makes Apple's proposal more juror-friendly.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 21
UTILITY PATENTS—INFRINGEMENT UNDER THE DOCTRINE OF
EQUIVALENTS[2]**

**Apple's Proposed Instruction**

If you decide that any accused product does not literally infringe an asserted claim from one of the other side's asserted utility patents, you must decide whether the product infringes that claim under the "doctrine of equivalents."

An accused product infringes a claim if it has parts or software instructions that are identical or equivalent to the claim requirements. If the product lacks a part or software instructions that is identical or equivalent to even one claim requirement, the product does not infringe. You must look at each requirement of the claim and decide whether the product has a part or a set of instructions that is identical or equivalent to it.

A product part or a set of software instructions is equivalent to a claim requirement if a person of ordinary skill in the field would think that the differences between the part or instructions and the requirement were not substantial at the time of alleged infringement. One way to decide this is to look at whether, at the time, the product part or instructions performed substantially the same function, in substantially the same way, to achieve substantially the same result as the claim requirement.

You may also consider whether, at the time of alleged infringement, persons of ordinary skill in the field would have known that the part or instructions in the accused product and the claim requirement were interchangeable. Known interchangeability is not required, but it may support a finding of infringement under the doctrine of equivalents. That a product part or instructions perform the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

Changes in technique or improvements made possible by technology developed after the patent application is filed may be equivalent for purposes of the doctrine of equivalents if they meet the other requirements of the doctrine of equivalents set forth in this instruction.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.4.

**Authorities**

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

---

[2] Apple does not believe that Samsung should be permitted to rely on the doctrine of equivalents with respect to any of its infringement contentions. Apple reserves the right to modify the instruction if the Court rules in its favor on this issue.

**Samsung's Objection to Apple's Instruction**

Samsung objects to Apple's Instruction because Apple does not make it clear that the doctrine of equivalents has only been asserted for Samsung's '460 patent.  Because Apple failed to assert a doctrine of equivalents theory for the asserted claims of the '381, '915, and '163 patents in its infringement contentions, it is precluded from doing so now.  *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, at *4 (N.D. Cal. 2004) (precluding reliance of doctrine of equivalents theory not disclosed in infringement contentions); *Rambus, Inc. v. Hynix Semiconductor Inc.*, 2008 WL 5411564, at *3 (N.D. Cal. 2008) (same); *Genentech, Inc. v. Amgen*, 289 F.3d 761, 773–74 (Fed. Cir. 2002).  In addition, Samsung objects to Apple's Instruction to the extent it does not contain a paragraph regarding interchangeability.  Apple's Instruction differs from the Northern District of California's Model Patent Jury Instructions in this regard and Samsung believes it is important for the jury to understand that the fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.   Samsung's proposed instruction immediately below is preferable because it more closely follows the Northern District of California's Model Patent Jury Instructions and does not contain attorney argument, as does Apple's Instruction.

1

**Samsung's Proposed Instruction**

2

If you decide that the products accused of infringing Samsung's '460 patent do not literally
infringe, you must then decide whether those products infringe the asserted claim under what is

3

called the "doctrine of equivalents."  Because Apple has not asserted infringement under the
doctrine of equivalents for its '381, '915 and '163 patents and Samsung has not asserted

4

infringement under the doctrine of equivalents for its '893 and '711 patents, you cannot determine
infringement under the doctrine of equivalents for these patents.[3]  You will only determine

5

whether those patents are literally infringed.

6

If you decide that the accused products do not literally infringe an asserted utility patent claim,
you must then decide whether that product infringes the asserted claim under what is called the

7

"doctrine of equivalents."  Certain of Apple's accused products are accused of utility patent
infringement under the "doctrine of equivalents."

8

9

Under the doctrine of equivalents, the product can infringe an asserted utility patent claim if it
includes parts that are identical or equivalent to the requirements of the claim.  If the product is

10

missing an identical or equivalent part to even one requirement of the asserted utility patent
claim, the product cannot infringe the claim under the doctrine of equivalents.  Thus, in making

11

your decision under the doctrine of equivalents, you must look at each individual requirement of
the asserted utility patent claim and decide whether the product has either an identical or

12

equivalent part to that individual claim requirement.

13

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill
in the field would think that the differences between the part and the requirement were not

14

substantial as of the time of the alleged infringement.

15

Changes in technique or improvements made possible by technology developed after the patent
application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still

16

meets the other requirements of the doctrine of equivalents set forth in this instruction.

17

One way to decide whether any difference between a requirement of an asserted claim and a part
of the product is not substantial is to consider whether, as of the time of the alleged infringement,
the part of the product performed substantially the same function, in substantially the same way,

18

to achieve substantially the same result as the requirement in the patent claim.

19

In deciding whether any difference between a claim requirement and the product is not

20

substantial, you may consider whether, at the time of the alleged infringement, persons of
ordinary skill in the field would have known of the interchangeability of the part with the claimed
requirement.  The known interchangeability between the claim requirement and the part of the

21

product is not necessary to find infringement under the doctrine of equivalents.  However, known
interchangeability may support a conclusion that the difference between the part in the product

22

and the claim requirement is not substantial.  The fact that a part of the product performs the same
function as the claim requirement is not, by itself, sufficient to show known interchangeability.

23

24

25

26

[3] Because Apple failed to assert a doctrine of equivalents theory for the asserted claims of
the '381, '915, and '163 patents in its infringement contentions, it is precluded from doing so

27

now.  *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, at *4
(N.D. Cal. 2004) (precluding reliance of doctrine of equivalents theory not disclosed in

28

infringement contentions); *Rambus, Inc. v. Hynix Semiconductor Inc.*, 2008 WL 5411564, at *3
(N.D. Cal. 2008) (same); *Genentech, Inc. v. Amgen*, 289 F.3d 761, 773–74 (Fed. Cir. 2002).

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.4; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is lengthier than necessary. Apple's proposed instruction No. 21 offers a shorter explanation of the doctrine of equivalents that is couched in more plain language than Samsung's proposal. And, although more concise, Apple's instruction No. 21 contains all of the substance found in the Northern District model. It is missing nothing. Especially in combination with all the other more concise instructions offered by Apple, Apple's proposal is more juror-friendly. Samsung's instruction No. 21 also does not refer to "software instructions;" it only speaks of "parts" that might have equivalents. The "parts" terminology does not fit for all the infringement issues in this case. Finally, Apple does not believe that Samsung should be permitted to rely on the doctrine of equivalents with respect to any of its infringement contentions. Samsung did not properly disclose this theory. Accordingly, regardless of which version of the competing instructions the Court adopts, the Court should tailor the language so that it only applies to Apple's assertion of an infringement theory based on the doctrine of equivalents.

**PROPOSED FINAL JURY INSTRUCTION NO. 22**
**UTILITY PATENTS— LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS[4]**

**Apple's Proposed Instruction**

Because Samsung made certain claim changes or statements during patent prosecution, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

- The limitation requiring "wherein the music background play object includes an application module including at least one applet" in claim 9 of the '711 patent.

- The limitations requiring a "first E-mail transmission sub-mode," a "second E-mail transmission sub-mode," "displaying an image most recently captured in a camera mode," "sequentially displaying other images stored in a memory through the use of scroll keys" in claim 1 of the '460 patent.

- The limitation requiring "irrespective of a duration" in claim 10 of the '893 patent.

Unless each of these requirements is literally present within Apple's accused products or methods, there can be no infringement of these claims.

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.7.

**Authorities**

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (*en banc*); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d 1359 (Fed. Cir. 2003) (*en banc*).

**Samsung's Objection to Apple's Instruction**

Samsung objects to Apple's Instruction because Apple does not make it clear that the doctrine of equivalents has only been asserted for Samsung's '460 patent. Because Apple failed to assert a doctrine of equivalents theory for the asserted claims of the '381, '915, and '163 patents in its infringement contentions, it is precluded from doing so now. *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, at *4 (N.D. Cal. 2004) (precluding reliance of doctrine of equivalents theory not disclosed in infringement contentions); *Rambus, Inc. v. Hynix Semiconductor Inc.*, 2008 WL 5411564, at *3 (N.D. Cal. 2008) (same); *Genentech, Inc. v. Amgen*, 289 F.3d 761, 773–74 (Fed. Cir. 2002). In addition, Samsung has not asserted a doctrine of equivalents argument for either the '711 or '893 patent; therefore, Apple's instruction regarding those patents is improper. Regardless, Samsung disputes whether each of the doctrine

---

[4] Apple does not believe that Samsung should be permitted to rely on the doctrine of equivalents with respect to any of its infringement contentions. Apple reserves its right to withdraw or modify this instruction if the Court rules in its favor on this issue.

1   of equivalents analysis can be applied to each of the limitations identified by Apple.  In sum,
2   Samsung asserts that Apple's instruction is unnecessary and prejudicial to Samsung and should
    not be included.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 23**
**UTILITY PATENTS—INVALIDITY—BURDEN OF PROOF**

**Apple's Proposed Instruction**

I will now instruct you on how to decide whether each party has proven that claims of the other side's utility patents are invalid.  For each claim, the alleged infringer must persuade you by clear and convincing evidence that the claim is invalid.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.,* No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

— **OR** —

I will now instruct you on how to decide whether each party has proven that claims of the other side's utility patents are invalid.  For each claim, the alleged infringer must persuade you by clear and convincing evidence that the claim is invalid.

In deciding this issue, you may take into account that each alleged infringer relies on certain prior art that was not considered by the Patent Office when it issued the asserted patents.  Although the alleged infringer must persuade you of invalidity by clear and convincing evidence, prior art that was not considered by the Patent Office may carry more weight than prior art that was considered.  This may make an alleged infringer's burden of showing invalidity easier to sustain.  Conversely, relying on prior art that was considered by the Patent Office may make an alleged infringer's burden of showing invalidity by clear and convincing evidence more difficult to sustain.

**Source**

N.D. Cal. Model Patent Jury Instr. B.4.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.,* No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

1    **<u>Samsung's Objection to Apple's Instruction</u>**

2    Samsung objects to Apple's Proposed Final Instruction No. 23 Alternative 1 Instruction in that it
     fails to provide any guidance on prior art that was considered by the Patent Office.  Samsung
3    objects to Apple's Proposed Final Instruction No. 23 Alternative 2 Instruction to the extent it
     differs from the Northern District of California's Model Patent Jury Instruction.  Samsung asserts
4    that its proposed instruction immediately below is preferable to either of Apple's alternative
     instructions.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

94

**Samsung's Proposed Instruction**

I will now instruct you on the rules you must follow in deciding whether the alleged infringer has proven that the asserted claims of the other party's utility patents are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any utility patent claim, the alleged infringer must persuade you by clear and convincing evidence that the claim is invalid.

During this case, both Apple and Samsung have submitted evidence, including but not limited to, prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the patents at issue. Each contends that such prior art invalidates certain claims of the other's utility patents. In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the utility patent. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make the alleged infringer's burden of showing by clear and convincing evidence that a utility patent claim is invalid easier to sustain.

**Source**

N.D. Cal. Model Patent Jury Instr. B.4.1; *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction tells only part of the story regarding the accused infringer's burden of proof on patent invalidity. Although Samsung follows the Northern District model instruction on this issue, Apple's two proposed instructions offer more balanced and legally accurate alternatives. Samsung's instruction begins by correctly stating that the burden of proving invalidity is clear and convincing evidence. The instruction goes on to say that uncited prior art "may carry more weight than the prior art that was considered and may make the alleged infringer's burden of showing [invalidity] easier to sustain." There are two problems with this. First, if the Court instructs the jury about the effect of uncited art, it should also make clear that the burden never changes—it always remains clear and convincing. *See Microsoft Corp. v. i4i LTD Partnership,* 131 S.Ct. 2238, 2242, 2251 (2011); *Sciele Pharma Inc. v. Lupin Ltd.*, No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-13 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity."). Second, if the jury is told that uncited art may make the challenger's burden easier to sustain, it should also be told about the converse: relying on previously considered art may make the burden more difficult to sustain. *See Sciele Pharma*, 2012 U.S. App. LEXIS 13513, at *15-16 ("Conversely, it may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered."). Samsung's proposal tells only half the story. The Court should either tell the full story (alternative 2 in Apple's proposed instruction No. 23), or simply state that the burden is clear and convincing evidence, and leave it at that (alternative 1 in Apple's proposed instruction No. 23).

1
2

## PROPOSED FINAL JURY INSTRUCTION NO. 24
## UTILITY PATENTS—WRITTEN DESCRIPTION REQUIREMENT

3

**Apple's Proposed Instruction**

4

A utility patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  This requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the application described the claimed invention.  A claim requirement need not be expressly disclosed in the application.  It is sufficient that a person of ordinary skill would understand that the missing requirement was necessarily implied in the application.

5
6

7

**Source**

8

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.2a.

9

**Authorities**

10

35 U.S.C. § 112(1) and (2); *In re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009); *Kao Corp. v. Unilever U.S., Inc.,* 441 F.3d 963, 968 (Fed. Cir. 2006); *Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc.,* 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.,* 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *In re Alton,* 76 F.3d 1168, 1172 (Fed. Cir. 1996); *Univ. of Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 926-928 (Fed. Cir. 2004).

11
12
13

14
15

**Samsung's Objection to Apple's Instruction**

16

Samsung objects to Apple's Instruction as unnecessary and likely to confuse the jury.  In addition, Samsung objects to Apple's Instruction in that it omits several substantive phrases and sentences from the Northern District of California's Model Patent Jury Instruction (*e.g.*, "even though the description may not use the exact words found in the claim"), which is prejudicial to Samsung.  If the Court chooses to provide an instruction on Written Description, Samsung asks that it follow the Northern District of California's Model Patent Jury Instruction 4.2a.

17
18

19
20
21
22
23
24
25
26
27
28

**PROPOSED FINAL JURY INSTRUCTION NO. 25**
**UTILITY PATENTS—ANTICIPATION/STATUTORY BARS**

<u>**Apple's Proposed Instruction**</u>

A utility patent claim is invalid if it was not new or if the application for it was not filed by the required time.  The claim is invalid if all the claim requirements existed in a single prior art reference that predates the claimed invention or that was dated more than one year before the application was filed.  The description in a prior art reference does not have to be in the same words as the claim.  But all of the claim requirements must be there, either expressly or implicitly, so that one of ordinary skill in the field looking at it would be able to make and use the claimed invention.

Here are ways that either side can show that an asserted claim is invalid because it was not new or because the application for it was not timely filed:

- If the claimed invention was publicly known or publicly used in the United States before the date of conception of the claim;

- If the claimed invention was patented or described in a printed publication anywhere in the world before the date of conception of the claim, or more than one year before the effective filing date of the patent;

- If the claimed invention was made by someone else in the United States before the date of conception of the claim, if that person had not abandoned the invention or kept it secret;

    If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice.  An invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in an application filed with the Patent Office.

- If the claimed invention was described in another U.S. patent or published patent application that was based on a patent application filed before the date of conception of the claim.

- If the claimed invention was openly used in the United States more than one year before the effective filing date of the patent, and that use was not primarily an experimental use controlled by the inventor to test whether the invention worked for its intended purpose;

- If a device using the claimed invention was sold or offered for sale in the United States, and was ready for patenting, more than one year before the effective filing date of the patent.  The claimed invention was not being sold or offered for sale if the sale or offer was primarily experimental.  The claimed invention was ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the invention that were sufficiently detailed to enable a person of ordinary skill in the field to make and use it based on them.

The parties agree that the patents at issue have the following effective filing dates:

- '381 patent:  January 7, 2007.

- '915 patent: January 7, 2007.

- '163 patent: September 6, 2006.

In deciding whether a reference qualifies as prior art, you may have to determine the date of conception of the claimed invention, and of any alleged prior invention(s) relied on by the accused infringer. Conception is defined as the mental part of an inventive act. It is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a1, B.4.3a2.

**Authorities**

35 U.S.C. § 102; *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

**Samsung's Objection to Apple's Instruction**

Samsung objects to Apple's Instruction in that it combines Northern District of California's Model Patent Jury Instruction 4.3a1 and 4.3a2, which would be confusing to a jury. Samsung also objects to the Instruction in that it includes alleged "effective filing dates" for the '381, '915, and '163 patents. Samsung does not, as Apple asserts "agree" on these effective filing dates; therefore, at the least, this portion of Apple's Instruction should be stricken. Further, Samsung objects to the Instruction in that it omits the final paragraph from Model Patent Jury Instruction 4.3a2, which lays out the requirements for a claim to be invalid because of a statutory bar. Such an omission would be unduly confusing to a jury. Finally, Samsung objects to Apple's omission of a paragraph regarding enablement of a prior art reference. There are both prior art patents and prior publications at issue here, and Samsung believes an instruction on the presumptions afforded those pieces of prior art would be instructive to the jury. Samsung's Alternative to Apple's Proposed Final Instruction No. 25 and 25.1 below closely follow the Northern District of California's Model Patent Jury Instruction and are preferable to Apple's biased Instruction.

**Samsung's Proposed Instruction**

A utility patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods, publications or patents are called "prior art references." If a utility patent claim is not new we say it is "anticipated" by a prior art reference.

In order to be anticipating, a prior art reference must enable one of ordinary skill in the art to make the invention without undue experimentation. If the prior art is a patent, there is a presumption that it is enabled. However, if the prior art is a publication, there is a presumption that it is not enabled.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that the alleged infringer can show that a patent claim was not new:

> If the claimed invention was already publicly known or publicly used by others in the United States before the date of conception;

> If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

> If the claimed invention was already made by someone else in the United States before the date of conception, if that other person had not abandoned the invention or kept it secret;

> If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the date of conception;

> If the patent holder and alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor. If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it and (b) continued to work diligently to reduce it to practice. A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

Since it is in dispute, you must determine a date of conception for certain of the claimed inventions. Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial.

**Source**

N.D. Cal. Model Patent Jury Instr. B.4.3a1; 35 U.S.C. § 102(a), (c), (e), (f) and (g); *Flex-Rest, LLC v. Steelcase, Inc.,* 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *Apotex U.S.A., Inc. v. Merck & Co.,* 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.,* 243 F.3d

1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopies*, 250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Impax Labs, Inc. v. Aventis Pharms. Inc.,* 468 F.3d 1366, 1381-84 (Fed. Cir. 2006); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003); *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1479 (Fed. Cir. 1986); *Elan Pharms., Inc. v. Mayo Found.*, 346 F.3d 1051, 1057 (Fed. Cir. 2003) (remanding the case to the district court for a determination of whether the prior art reference enabled persons of ordinary skill to make the invention without undue experimentation); *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction Nos. 25 and 25.1 take twice as long to instruct the jury on anticipation than is necessary. By splitting up the different grounds for invalidity under 35 U.S.C. Section 102 into one instruction on "anticipation" and one instruction on the "statutory bars," Samsung's instructions double the time the Court needs to spend reading these instructions and doubles the text that the jury must digest. That is a waste. Apple's proposed instruction No. 25 is a more streamlined and concise approach that includes all of the required content from the Northern District model anticipation instructions, but takes up half the space. Apple's proposal in fact provides more information. It informs the jury of the undisputed effective filing dates for the Apple utility patents. In addition, Samsung's contention that "patents" are presumed enabled is overbroad or ambiguous. The Federal Circuit has not held that foreign patents are presumed enabled. Nor has the Federal Circuit held that patent applications, as opposed to issued patents, are presumed enabled. The Court should not therefore give an instruction on enablement as phrased here by Samsung.

**PROPOSED FINAL JURY INSTRUCTION NO. 25.1**
**UTILITY PATENTS— ANTICIPATION (STATUTORY BAR)**

### Samsung's Proposed Instruction

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar."  For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed.  Here is a list of ways an alleged infringer can show that the patent application was not timely filed:

> – if the claimed invention was already patented or described in a printed publication anywhere in the world one year before effective filing date of patent application.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.;

> – if the claimed invention was already being openly used in the United States one year before the application filing date and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

> – if a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, one year before the application filing date.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time.  The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of [identify field] looking at the reference to make and use the claimed invention.

### Authorities

35 U.S.C. § 102(b) and (d); *Pfaff v. Wells Elec. Inc.*, 525 U.S. 55 (1998); *Schering Corp. v. Geneva Pharms.*, 339 F.2d 1273 (Fed Cir. 2003); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150 (Fed. Cir. 1983).

### Samsung's Statement in Support

Samsung objects to Apple's Instruction in that it combines Northern District of California's Model Patent Jury Instruction 4.3a1 and 4.3a2, which would be confusing to a jury.  *See also* Samsung's Objection to Apple's Proposed Final Instruction No. 25.

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction Nos. 25 and 25.1 take twice as long to instruct the jury on anticipation than is necessary.  By splitting up the different grounds for invalidity under 35

U.S.C. Section 102 into one instruction on "anticipation" and one instruction on the "statutory bars," Samsung's instructions double the time the Court needs to spend reading these instructions and doubles the text that the jury must digest.  That is a waste.  Apple's proposed instruction No. 25 is a more streamlined and concise approach that includes all of the required content from the Northern District model anticipation instructions, but takes up half the space.  Apple's proposal in fact provides more information.  It informs the jury of the undisputed effective filing dates for the Apple utility patents.  In addition, Samsung's contention that "patents" are presumed enabled is overbroad or ambiguous.  The Federal Circuit has not held that foreign patents are presumed enabled.  Nor has the Federal Circuit held that patent applications, as opposed to issued patents, are presumed enabled.  The Court should not therefore give an instruction on enablement as phrased here by Samsung.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 26**
**UTILITY PATENTS—OBVIOUSNESS**

2

**Apple's Proposed Instruction**

3

4   A utility patent claim is invalid if the claimed invention would have been obvious to a person of
ordinary skill in the field at the time of invention.  A claim is obvious if, even though all the
claim requirements cannot be found in a single prior art reference (as discussed in my previous
instruction), a person of ordinary skill in the relevant field would have come up with the claimed
invention.

5

6

7   The ultimate conclusion of whether a claim is obvious should be based upon your determination
of several factual decisions.

8   First, you must decide the level of ordinary skill in the field at the time the invention was made.
In deciding this, you should consider all the evidence introduced at trial, including:

9

10          (1)     the level of education and experience of persons working in the field;

11          (2)     the types of problems encountered in the field; and

12          (3)     the sophistication of the technology.

13   Second, you must decide the scope and content of the prior art.

14   Third, you must decide what differences existed between the claimed invention and the prior art.

15   Finally, you should consider any of the following factors that you find have been shown by the
evidence.  Factors (1)-(6) may indicate that the claimed invention would not have been obvious
at the time it was made:

16

17          (1)     commercial success of a product due to the merits of the claimed invention;

18          (2)     a long felt need for the solution provided by the claimed invention;

19          (3)     unsuccessful attempts by others to find the solution provided by the claimed
                    invention;

20          (4)     copying of the claimed invention by others;

21          (5)     unexpected and superior results from the claimed invention; and

22          (6)     acceptance by others of the claimed invention as shown by praise from others in
                    the field or from the licensing of the claimed invention.

23

24   Factor (7) may indicate that the claimed invention would have been obvious at the time it was
made:

25          (7)     independent invention of the claimed invention by others before or at about the
                    same time as the named inventor thought of it.

26

27   Although you should consider any evidence of these factors, the relevance and importance of any
of them to your decision on obviousness or non-obviousness is up to you.

28

A patent claim with several elements is not obvious merely because each element was independently known in the prior art.  In evaluating obviousness, you may consider whether there was a reason for one of ordinary skill in the field to combine prior art elements in the same way the claimed invention combines them.  There is no one way to draw the line between true inventiveness, and the application of common sense and ordinary skill.

For example, market forces or other incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was the predictable result of using prior art elements according to their known functions, or whether it resulted from true inventiveness.  You may also consider whether there was a suggestion in the prior art to make the combination of elements claimed in the patent, and whether the claim applies a known technique that had been used with a similar device.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a small number of possible approaches to the problem with a reasonable expectation of success.

However, you must always be careful not to determine obviousness using the benefit of hindsight.  Many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and should not consider what is known today or what is learned from the teaching of the patent.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3b; Federal Circuit Bar Association Model Patent Jury Instr. 4.3c.

**Authorities**

35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 407 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985).  *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); *Wang Labs, Inc.. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

**Samsung's Objection to Apple's Instruction**

Samsung objects to Apple's Instruction to the extent it differs from the Northern District of California's Model Patent Jury Instruction.  Samsung also disagrees with Apple's omission regarding how any prior art reference must be reasonably related to the claimed invention, as described in the Northern District of California's Model Patent Jury Instruction.  This instruction assists the jury in determining which prior art references may be considered when determining obviousness.  Therefore, Samsung's Alternative to Apple's Proposed Final Instruction No. 26 immediately below, which closely follows the Northern District of California's Model Patent Jury Instruction and is preferable to Apple's Instruction.

**Samsung's Proposed Instruction**

Not all innovations are patentable.  A utility patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed.  This means that, even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

      (1)    the levels of education and experience of persons working in the field;

      (2)    the types of problems encountered in the field; and

      (3)    the sophistication of the technology.

Second, you must decide the scope and content of the prior art.  The parties disagree as to whether certain prior art references should be included in the prior art you use to decide the validity of the claims.  In order to be considered as prior art, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you must determine which, if any, of the following factors have been established by the evidence:

      (1)    commercial success of a product due to the merits of the claimed invention;

      (2)    a long felt need for the solution provided by the claimed invention;

      (3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

      (4)    copying of the claimed invention by others;

      (5)    unexpected and superior results from the claimed invention;

      (6)    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

      (7)    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

      (8)    other evidence tending to show obviousness.

The presence of any of factors 1-7 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factor 8 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether the alleged infringer has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

**Source**

N.D. Cal. Model Patent Jury Instr. B.4.3b (Alternative 2); 35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 407 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985); *Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d. 1254, 1256 (Fed. Cir. 2007)*; Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 26 is longer than necessary.  Apple has provided an obviousness instruction that has all the substantive information that the jury needs to consider, but that is presented in a more concise fashion.  Apple's proposed instruction No. 26 also omits needless information that the jury does not need to hear, such as on how to decide whether a reference is properly within the scope and content of the prior art to be considered.  This is not in dispute.

1

## PROPOSED FINAL JURY INSTRUCTION NO. 27
## PATENT EXHAUSTION

2

3

### Apple's Proposed Instruction

4   I will now instruct you on how to decide Apple's defense of patent exhaustion. Apple contends that Samsung is barred from enforcing the '516, '914, and '604 patents against Apple's products – including the accused Apple iPhones and iPads – that incorporate baseband chipsets that Intel sold to Apple because Intel was authorized by Samsung to sell those baseband chipsets.

5

6   To prevail on the defense of patent exhaustion, Apple must prove the following:

7       **First**, that Intel was authorized to sell the baseband chipsets under the terms of the license agreement between Samsung and Intel;

8

9       **Second**, that the sales were made in the United States. The location of the sale depends on many factors, and you may find that the sale occurred in several places. A sale occurs wherever the "essential activities" of the sale take place. The essential activities include, for example, negotiating the contract and performing obligations under the contract; and

10

11      **Third**, that the baseband chipsets substantially embody the '516, '914, and/or '604 patents. The baseband chipsets embody the relevant patent if they: (i) include all the inventive aspects of the patented device; and (ii) have no reasonable non-infringing use.

12

13  If you find that Intel acted within the scope of authorization received from Samsung in selling its baseband chipsets to Apple in the United States, and the baseband chipsets substantially embody the '516, '914, and/or '604 patents, then you must find that Samsung is barred from enforcing those patents against Apple's products that incorporate the Intel baseband chipsets.

14

15

### Authorities

16

17  *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008); *Transcore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009); *U.S. v. Univis Lens*, 316 U.S. 241 (1942); *Adams v. Burke*, 84 U.S. 453 (1873); *Bloomer v. Millinger*, 68 U.S. 340, 350-51 (1863); *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed. Cir. 2008); *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (2005); *Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 522, 539 (E.D. Tex. 1994) ("Cyrix 1994"); *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993); *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 U.S. Dist. LEXIS 60209 (N.D.N.Y. Aug. 1, 2008).

18

19

20

21

22

### Samsung's Objection to Apple's Instruction

23  Samsung objects to Apple's description of the second element of exhaustion. The fundamental initial US sale requirement was recently reaffirmed by the Federal Circuit. *See Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373 (Fed. Cir. 2012) ("[P]atents are subject to exhaustion upon sale of product or components in the United States."); *see also Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1371 (Fed. Cir. 2010). Apple's instruction does not set forth the most important requirement in assessing the location of the sale, which is where the items were delivered. *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 146 (D.D.C. 2006); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 WL 4349135, *51 (N.D.N.Y. Jan. 31, 2007).

24

25

26

27

28

**Samsung's Proposed Instruction**

Apple has also asserted a defense of "patent exhaustion" to Samsung's claim that Apple infringes Samsung's '604 patent, '516 patent, and '941 patent.  I will now explain the "patent exhaustion" defense to you.

Apple claims that Samsung has licensed the use of the '604, '516, and '941 patents to Intel. Apple further claims that since it purchased baseband processor chips from Intel that are covered by the license and that Apple therefore it is not liable for infringing Samsung's patents. This is called the "patent exhaustion" defense. In other words, Apple claims that Samsung's licenses to Intel baseband processor exhausts Samsung's patent rights as to the use of Samsung's technologies in the Intel chips.

Apple has the burden of proving the "exhaustion" defense by a preponderance of the evidence.  In order to meet this burden, Apple must show that:

> **First**, that Intel was authorized to sell the baseband processor chip under the terms of a license agreement between Samsung and Intel.  In making your determination, you must evaluate whether the terms of Samsung's license with Intel authorized the sales of the baseband chips.

> **Second**, that Intel made an initial sale in the United States of the Intel baseband chips incorporated in the accused products.  In evaluating whether the sales took place in the United States, you must consider whether the baseband processor chips were actually delivered to Apple or its contractors in the United States.

> **Third**, that the Intel baseband processor chips substantially embody the inventions of the '604 patent, '516 patent, and '941 patent.

Apple must prove each of these elements to prevail on this defense.  If Apple does not prove any one of these elements, you must reject Apple's affirmative defense and find for Samsung on this issue.

**Source**

*Quanta Computer, Inc. v. LG Elecs, Inc.*, 553 U.S. 617 (2008); *Ninestar Tech. Co. v. Int'l Trade Comm'n,* 667 F.3d 1373 (Fed. Cir. 2012); *Fujifilm Corp. v. Benun*, 605 F.3d 1366 (Fed. Cir. 2010); *LaserDynamics, Inc. v. Quanta Storage America, Inc.*, No. 2:06-CV-348-TJW-CE, 2009 U.S. Dist. LEXIS 115848 at \*3 (E.D. Tex. 2009); *MedImmune, LLC v. BioPharma, Inc.*, No. C 08-9550 JF HRL, 2011 WL 61191 at \*17 (N.D. Cal. 2011); *Wing Shing Prods. Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 403 (S.D.N.Y. 2007); *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 659 F. Supp. 2d 790, 801 (S.D. Tex. 2009); *Intel Corp. v. Broadcom Corp.,* 173 F. Supp. 2d 201, 222 (D. Del 2001); *Gilson v. Republic of Ireland*, 787 F.2d 655, 658 (D.C. Cir. 1986); *PPG Industries, Inc. v. Guardian Industries Corp.*, 597 F.2d 1090, 1093 (6th Cir. 1979); *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985); *Minebea Co. v. Papst*, 444 F. Supp. 2d 68 (D.D.C. 2006); *Cornell Research Found., Inc. v. Hewlett-Packard Co.,* No. 5:01-CV-1974, 2007 WL 4349135 at \*51 (N.D.N.Y. Jan. 31, 2007).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law in two ways.  First, the instruction states that, in determining whether a sale occurred in the United States, the jury must consider only "whether the Intel chips were delivered to Apple in the United States."  But that is an incomplete and inaccurate statement of the law, since it describes only one way in which a sale may occur in

1   the United States.  The Federal Circuit has made clear that a sale is made at all the locations
    where the sale's "essential activities," including negotiation and performance of the contract for
2   sale or order and payment for the goods, take place.  *See, e.g.*, *MEMC Elec. Materials, Inc. v.
    Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376-77 (2005) (determining the location of
3   a sale by considering where its "essential activities," such as ordering, packaging, shipping and
    payment, took place); *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d
4   1576, 1579 (Fed. Cir. 1994) (stating that a sale occurs not only where legal title passes, but also
    where contracting and performance occur); *Litecubes, LLC v. Northern Light Prods., Inc.*, 523
5   F.3d 1353, 1370-71 (Fed. Cir. 2008) (determining the location of a sale by considering where the
    customers were located when they contracted for the accused products and where the products
6   were delivered).  *Second*, the instruction states that Apple must show that the "only intended use
    of the baseband processor chips is to practice the patent."  This misstates the law, which is that
7   the chips substantially embody the patents if there are no reasonable non-infringing uses and the
    inventive elements of the patents are embodied in the chips.  *See Quanta Computer, Inc. v. LG
8   Electronics, Inc.*, 553 U.S. 617 (2008) (holding that a chip substantially embodied a patent where
    there was "no reasonable use" for the chip other than to practice the patent, and the chips
9   "embod[ied] the essential features" of the patented invention).  Apple's corresponding
    instruction No. 27 is an accurate statement of the law of patent exhaustion.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 28
## EQUITABLE DEFENSES – WAIVER[5]

**Apple's Proposed Instruction**

A patent is not enforceable when the patent holder's course of conduct indicates to others in the industry that it does not intend to enforce its patents. Apple asserts that Samsung's failure to timely disclose the existence of its "declared-essential" patents – including the '604, '941, and '516 patents – to ETSI constitutes a waiver of its right to enforce those patents, and renders those patents unenforceable.

You must consider whether Apple has proven by clear and convincing evidence that Samsung's conduct was inconsistent with an intent to enforce its rights and induced a reasonable belief that such right had been relinquished. To find that Samsung has waived its right to enforce the '604, '941, or '516 patent, Apple must prove that Samsung had a duty to timely disclose the existence of those patents or related patent applications and failed to do so.

**Source**

Adapted from instructions in *Qualcomm Inc. v. Broadcom Corp.*, No. 05-cv-01958 (S.D. Cal.), as quoted in *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008).

**Authorities**

*Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008); *Wang Labs, Inc. v. Mitsubishi Elec. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) (citing *Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) ("In patent law, an implied license merely signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention.").

**Samsung's Objection to Apple's Instruction**

Apple ignores a critical element of waiver as set forth in *Qualcomm v. Broadcom*, the very authority on which it relies: that appropriate circumstances must exist to justify the Court's decision, sitting in equity, to hold the patents unenforceable. *See Qualcomm*, 548 F.3d at 1012.

---

[5] Apple requests that the Court seek an advisory verdict from the jury on the question of waiver. *See, e.g., Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1009 (Fed. Cir. 2008) (addressing advisory jury verdict on waiver in patent infringement case involving the patent owner's conduct before a standards-setting organization).

**Samsung's Proposed Instruction**

**[CONDITIONAL INSTRUCTION ONLY.  SAMSUNG DOES NOT BELIEVE APPLE'S EQUITABLE CLAIMS SHOULD BE DECIDED BY THE JURY.]**

Apple has also asserted a defense of waiver to Samsung's claim that Apple infringes Samsung's '604 patent, '516 patent, and '941 patent.  In order to prove waiver, Apple must show by clear and convincing evidence that Samsung, with full knowledge of the material facts, intended to relinquish its rights to enforce the '604, '941 and '516 patents.

Apple asserts that Samsung's failure to disclose the existence of the Korean patent applications on which the '604, '941 and '516 patents claim priority constitutes a waiver of its right to enforce these patents and renders the patents unenforceable.  To find that Samsung has waived its right to enforce the patents, you must find that each of the following factors is met:

    1.      Samsung had a duty to disclose the existence of the Korean patent applications to ETSI as a member of that organization.

    2.      The Korean patent applications were in fact essential to an ETSI standard.

    3.      Samsung breached its disclosure duty by failing to disclose the Korean patent applications.

    4.      Appropriate circumstances exist to justify a finding that the '604, '941, and '516 patents are unenforceable against products practicing the ETSI standard, including the accused products.

**Source**

*Qualcomm Inc. v. Broadcom Corp*, 548 F.3d 1004 (Fed. Cir. 2008). ("In order to prove waiver, Broadcom must show by clear and convincing evidence either that Qualcomm, with full knowledge of the material facts, intentionally relinquished its rights to enforce the 104 and 767 patents or that its conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law and Apple's contentions in three ways.   First, the instruction states that Apple must prove that Samsung "with full knowledge of the material facts, intended to relinquish its rights to enforce" its patents.  But the Federal Circuit has made clear that, under the doctrine of implied waiver, Apple may instead prove that Samsung's conduct "was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished."  *See, e.g.*, *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020-21 (Fed. Cir. 2008).  Second, Samsung's instruction states that Apple must prove that the undisclosed patent applications "were in fact essential to an ETSI standard."  But that is not a requirement of waiver, which Apple may prove by showing that Samsung had a duty to timely disclose patents or applications under the ETSI IPR Policy but failed to do so, regardless of whether the patents or applications were actually essential to the standard.  *See, e.g.*, *Qualcomm*, 548 F.3d at 1022 (finding waiver where the undisclosed patents "reasonably might be necessary" to practice the standard).  Indeed, the ETSI IPR Policy—which is similar to the IPR policy at issue in the *Qualcomm* case—required Samsung to disclose patent applications that "*might be* essential."  Third, Samsung's instruction is misleading because it narrowly focuses on Samsung's failure to disclose certain Korean patent applications, but Apple's contentions include Samsung's failure to disclose <u>any</u> patents or applications that "might be essential" to those

1  portions of the UMTS standard that Samsung claims are practice by its patents.  Apple's
   corresponding instruction is an accurate statement of the law of waiver and Apple's
2  contentions.  *See*, *e.g.*, *Qualcomm*, 548 F.3d at 1020-22 (describing waiver in the context of
   conduct before a standards-setting organization).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 29
EQUITABLE DEFENSES – EQUITABLE ESTOPPEL[6]**

**Apple's Proposed Instruction**

The owner of a patent may forfeit its right to any relief from an alleged infringer where: (1) the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the alleged infringer relies upon the misleading communication from the patent holder, and (3) the alleged infringer will be materially harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication.  This is referred to as an "equitable estoppel" and it is a defense that Apple contends precludes any recovery by Samsung with respect to the "declared essential" patents – including the '604, '941, or '516 patents – in this lawsuit.  Apple must prove each of these elements is more likely true than not, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

Apple contends that Samsung made communications about its "declared essential" patents before Samsung filed this lawsuit.  A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence.  Conduct may include action or inaction. Whether in fact Samsung communicated with 3GPP and Apple about its "declared essential" patents prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to Apple can be economic in form.  Whether Apple suffered economic prejudice is a question that must be answered by evaluating whether Apple changed its economic position as a result of its reliance on any misleading communication from Samsung about its "declared essential" patents, resulting in losses beyond merely paying for infringement (such as if 3GPP could have drafted the UMTS standard to avoid the allegedly infringing technology if Samsung had timely disclosed the '604, '941, or '516 patents or related patent applications when obligated to do so or had truthfully disclosed its licensing contentions) and whether losses as a result of any change in economic position could have been avoided.

**Source**

Adapted from Federal Circuit Bar Association Model Patent Jury Instr. B.5.3.

**Authorities**

35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995) (to establish equitable estoppel, one must show reliance on patentee's misleading conduct); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (*en banc*).

**Samsung's Objection to Apple's Instruction**

Samsung objects to Apple's description relating to "losses beyond merely paying for infringement," that "if 3GPP could have drafted the UMTS standard to avoid the allegedly infringing technology if Samsung had timely disclosed…"  This statement presupposes that Section 4.1 of the ETSI IPR Policy is violated when an IPR is not declared before the standard is

_____
[6] Apple requests that the Court seek an advisory verdict from the jury on the question of equitable estoppel.

1    frozen.  It also improperly attempts to shifts Apple's burden of proving that Apple itself relied to
2    its detriment on a material miscommunication from Samsung and thereby suffered material harm
     to a generic requirement that Apple merely show that 3GPP "could" have taken a different
3    action, such as by drafting the UMTS standard in a different way.  Even if it were sufficient for
     Apple to focus its proof on alleged reliance and material harm to 3GPP in some generic sense,
4    and it is not, Apple must still prove that 3GPP would necessarily have acted differently, not
     simply that it "could" have done so.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

**[CONDITIONAL INSTRUCTION ONLY.  SAMSUNG DOES NOT BELIEVE APPLE'S EQUITABLE CLAIMS SHOULD BE DECIDED BY THE JURY.]**

The owner of a patent may forfeit its right to any relief from an alleged infringer where: (1) the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the alleged infringer relies upon the misleading communication from the patent holder, and (3) due to its reliance, the alleged infringer will be materially harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication.  This is referred to as an "equitable estoppel" and it is a defense that Apple contends precludes any recovery by Samsung with respect to the '604, '941, or '516 patents.  Apple must prove each of these elements by a preponderance of the evidence, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

Apple contends that Samsung made communications about its "declared essential" patents before Samsung filed this lawsuit.  A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence.  Conduct may include action or inaction.  Whether in fact Samsung communicated with Apple about its "declared essential" patents prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to Apple can be economic in form.  Whether Apple suffered economic prejudice is a question that must be answered by evaluating whether Apple changed its economic position as a result of its reliance on any misleading communication from Samsung about its "declared essential" patents, resulting in losses beyond merely paying for infringement (such as if Apple could have switched to a noninfringing product if sued earlier) and whether losses as a result of any change in economic position could have been avoided.

**Source**

Adapted from Federal Circuit Bar Association Model Patent Jury Instr. B.5.3; *A.C. Aukerman Co. v. R.L Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (*en banc*); 35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995) (to establish equitable estoppel, one must show reliance on patentee's misleading conduct); *Winbond Electronics Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374-75 (Fed. Cir. 2001).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law and Apple's contentions.   In describing the element of harm to Apple, the instruction suggests that Apple must show that it "could have switched to a non-infringing product if sued earlier."  That language is out of context because it addresses a situation where estoppel arises from the patentee's delay in filing a complaint for infringement; it does not apply to estoppel in the standard-setting context.  Here, Apple's contention is that it suffered harm not because of Samsung's delay in filing suit, but because of Samsung's conduct before a standard-setting organization and its assertion of patents that it contends practice the UMTS standard.  *See*, *e.g.*, Apple's Amended Answer, Defenses, and Counterclaims ¶¶ 186-190 (Dkt. No. 381).  Apple's corresponding instruction is an accurate statement of the law of equitable estoppel and Apple's contentions in the standard-setting context.  *See*, *e.g.*, *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1022-24 (Fed. Cir. 2008)

1    (recognizing that equitable estoppel is applicable to conduct before a standards-setting
2    organization).

**PROPOSED FINAL JURY INSTRUCTION NO. 30**
**UTILITY PATENT DAMAGES—GENERALLY**

**Apple's Proposed Instruction**

I will instruct you now about monetary damages for the Apple and Samsung utility patent infringement claims. If you find that Samsung or Apple infringed any valid and enforceable claim from any of the other side's utility patents, you must then determine the amount of money damages to award to each prevailing patent holder.

The amount of those damages must be adequate to compensate a patent holder for any infringement. There are two different types of damages that a utility patent holder may be entitled to recover—the profits the patent holder lost due to the infringement, and a reasonable royalty for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that damages are meant to compensate the patent holder and not meant to punish an infringer.

Apple seeks to recover its lost profits and, in the alternative, a reasonable royalty. Samsung seeks recovery of a reasonable royalty. Each patent holder has the burden to persuade you of the amount of its damages. You should award only those damages that the patent holder more likely than not suffered. While the patent holder need not prove its damages with mathematical precision, it must prove them with reasonable certainty. A patent holder is not is entitled to damages that are remote or speculative. Both parties are entitled to their total damages, regardless of their other wealth or revenues.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1; Federal Circuit Bar Association Model Patent Jury Instr. 6.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.1.

**Authorities**

35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (*en banc*).

**Samsung's Objection to Apple's Instruction**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages. The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury. Similarly, the phrase "total damages," which is undefined and vague, would confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). Similarly, Apple's proposed instruction, again without any basis in the Model Patent Jury Instructions or its cited authorities, implies that the jury may find that Apple "*or*" Samsung has infringed, but not that *both* have. This instruction misleadingly frames the issues. Apple's proposed final line appears in no model instruction, and is improper. Apple has also changed the language in the model instruction's "nail" example to be prejudicial (e.g., consistently referring to "infringer" rather than the neutral "licensee") and to suggest that royalties may be tied to the number of units sold, and not to revenues. This is improper: Apple

1

2

should not have departed from the model's example, which was carefully designed to be evenhanded.  Also, Apple's instruction fails to take into account that there are several separate and independent individual Samsung defendants.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

I will instruct you about the measure of damages for infringement of both utility and design patents. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that the alleged infringer (Samsung Electronics Company, Samsung Electronics America, Samsung Telecommunications America and/or Apple) infringed any valid claim of a patent, you must then determine the amount of money damages to be awarded to the patent holder (Samsung and/or Apple) to compensate it for the infringement. You should evaluate damages separately for each party you find to have infringed, and may not award more than the patent holder seeks.

The amount of those damages must be adequate to compensate the patent holder for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

The patent holder has the burden to persuade you of the amount of its damages. You should award only those damages caused by the infringement that the patent holder proves it suffered by a preponderance of the evidence. While the patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. The patent holder is not entitled to damages that are remote or speculative.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.1 (modified).

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in five ways. First, Samsung's proposed instruction does not accurately state the law. Samsung's inclusion of the last sentence in the first paragraph—"You should evaluate damages separately for each party you find to have infringed, and may not award more than the patent holder seeks"—deviates from the model instruction and is incorrect. The jury is not limited by Apple's request for relief, but may award damages consistent with the law and the facts of the case. Second, Samsung's inclusion of the words "caused by the infringement" in the third paragraph also deviates from the model rule, and is inaccurate because the instruction does not apply to infringer's profits or reasonable royalty damages. Causation is only an issue for lost profits damages. Third, Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions. Apple divides them for two reasons. In light of the difference in remedies—in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents—it makes more sense to treat utility and design patent damages separately. Further, it will be easier for the jury to delve into and address all of the utility liability and damages issues together before it has to address design patents. Under Apple's approach, the jury can decide the utility case and then move forward to the design patent issues, rather than fracturing its analysis between the two. Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions. Apple believes this to be more logical and easier to understand for the jury. Fourth, on top of the greater efficiency to Apple's approach, Samsung's proposed instruction erroneously includes a sentence that points away from Apple's right to recover Samsung's profits under 35 U.S.C. § 289. Specifically, Samsung's instruction states: "A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty." This statement, while applicable to a recovery of lost profits or reasonable royalty under 35 U.S.C. § 284 and taken from the Northern

1    District model, is inaccurate as it applies to this case, because Apple is also seeking infringer's
     profits under 35 U.S.C. § 289.  Infringer's profits do not put the patent holder in the same

2    financial position that would have occurred without the infringement.  The sentence is
     unnecessary and is likely to confuse the jury in the unique context of this case.  Apple's

3    instruction removes this sentence as it applies to infringement of the design patents.  *See* Apple's
     Proposed Instruction No. 52.  Fifth, Samsung's instruction also includes an incomplete and

4    inaccurate statement regarding the availability of remedies.  Both parties have proposed separate
     double counting instructions and these instructions should be used to address this issue.  Apple's

5    instructions on the equivalent topic (41 and 57) are also preferable and clearer in two additional
     respects.  They explicitly list the type of remedies that each party claims.  Further, they include a

6    final statement that the party claiming damages are entitled to those damages regardless of its
     general wealth or revenues.  Both parties were concerned enough about this issue to bring

7    motions in limine related to it.  The equivalent information is easily accessible by the web.
     These facts by themselves warrant the statement's inclusion.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 31**
**UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY**

2

3

**Apple's Proposed Instruction**

In this case Apple seeks to recover lost profits for some of Samsung's sales of certain products, and other remedies on the rest of Samsung's sales.

4

5

To recover these lost profits, Apple must show that but for Samsung's infringement, there is a reasonable probability that Apple would have made sales that Samsung made.  Apple must show the share of Samsung's sales that it would have made if Samsung's infringing products had not been on the market.

6

7

**Source**

8

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

9

10

**Samsung's Objection to Apple's Instruction**

11

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages.  The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury.  Also, the phrase "other remedies" is misleading, because the only available alternative remedy is reasonable royalties.  A confusing or misleading jury instruction is improper.  *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury).  Moreover, Apple substantially diverged from the N.D. Cal. Model Patent Jury Instruction.  Specifically, it deleted the final paragraph of that Model, which states that "You must allocate the lost profits based upon the customer demand for the patented feature of the infringing [product] [method]. That is, you must determine which profits derive from the patented invention that [alleged infringer] sells, and not from other features of the infringing [product] [method]."  Apple has no authority for such a change.  This unjustified departure from the model without precedential authority is improper.  *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009) ("[W]e repeat our suggestion that trial judges should use the model jury instructions when applicable . . . . We urge trial courts, in the future, to stick to the model jury instructions regarding this issue.") (citing *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913-14 (2d Cir. 1984) ("[T]rial judges would be exceedingly well advised to use [the model instructions] rather than impose variations upon it.")) (internal quotation omitted); *United States v. Wilson-Garcia*, 2012 WL 226032 (W.D. Pa. Jan. 25, 2012) ("It is axiomatic that "trial judges should use the model jury instructions when applicable.").  In addition, Apple employs prejudicial language that assumes Samsung has infringed its patents, such as "but for Samsung's infringement" and "Samsung's infringing products."  This language presumes the validity of Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and adverse to Samsung.   Finally, Apple's instruction fails to take into account that there are several separate and independent individual defendants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

In this case, Apple seeks to recover lost profits for some of Samsung's sales of certain products. Samsung does not seek to recover lost profits for Apple's sales of allegedly infringing products.

To recover lost profits for infringing sale, Apple must show that, but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America made of each allegedly infringing product. Apple must show the share of Samsung Electronics Company's, Samsung Electronics America's and Samsung Telecommunications America's sales of each product that it would have made if the allegedly infringing product had not been on the market.

You must allocate the lost profits based upon the customer demand for the patented feature or design of each of the allegedly infringing products. That is, you must determine which profits derive from the patented invention or design that Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America allegedly sells, and not from other features of these infringing products.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.2 (modified).

**Apple's Objection to Samsung's Instruction**

The last paragraph of Samsung's instruction is not a proper statement of the law, particularly where, as here, the parties and the parties' experts are applying the *Panduit* factors to determine Apple's lost profits. The last sentence of the instruction more properly addresses concerns arising where *Panduit* is not being applied or when the "entire market value" rule is being separately invoked. The language derives from *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (vacating and remanding lost profits award for entire value of a device containing a first component embodying a first patent, found infringed, as well as a second component embodying a second patent, found not infringed, where profits could fairly be allocated to customer demand for second component). The Federal Circuit has since held that this rule does not apply where, as here, lost profits are evaluated under the *Panduit* factors. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009) ("Medtronic's reliance on *Ferguson* fares no better. *Ferguson* dealt with lost profits under the 'entire market value' rule . . . In the present case, Medtronic challenges the lost-profits award for [the infringing products] under the *Panduit* factors, not under the 'entire market value' rule."). The distinction is important. *Panduit* separately addresses the need to tailor a lost profit award to the specifics of the claimed technology through a robust evaluation of what non-infringing alternatives were available, when they were available and how they would affect the market. This approach inherently reallocates sales in light of the availability of non-infringing technology and thus accounts for consumer demand for patented as compared to the non-patented features. This is consistent with and required by the Federal Circuit's decision in *DePuy Spine*, which as the Court already recognized, focuses initially on the patented product and not on the specific patented features. (Dkt. No. 1157) ("DuPuy made it very clear that, while evidence of demand for the patented feature "goes to the availability of acceptable noninfringing substitutes under the second Panduit factor," under the first *Panduit* factor, the patentee need not show demand for a particular feature to establish demand for a patented product."). If used as a whole, Samsung's proposed instructions would suggest that the jury reevaluate and reallocate based on the demand for the technology at least three times, in connection with this instruction, in the first factor of *Panduit* and finally when evaluating non-infringing alternatives. In comparison, Apple's corresponding instructions are an accurate statement of the law of lost profits based on *Panduit, DePuy Spine,*

1  *Grain Processing* and the cases that follow them.  Finally, if this instruction is used, Samsung's
   repeated use of the phrase "of each infringing product" should be stricken as confusing and in
2  error.  The language "each infringing product" is not in the Northern District's model instruction,
   nor in any other model instruction, and would purportedly require Apple to show a specific
3  allocation for each product.  As such, Samsung seeks to exclude all other efforts to allocate, such
   as the use of the market share that Samsung and competitors enjoy at each carrier or in the
4  market more generally, when accounting for demand and competing products.  The Federal
   Circuit acknowledged the appropriate use of market share for this purpose in *Mor-Flo* and has
5  separately emphasized the flexibility required due to the inherent imprecision that results from
   reconstructing past events.  *See Grain Processing Corp. v. American Maize-Products Co.*, 185
6  F.3d 1341, 1350 (Fed. Cir. 1999) ("courts have given patentees significant latitude to prove and
   recover lost profits for a wide variety of foreseeable economic effects of the infringement");
7  *State Industries Inc v. Mor-Flo Indus.*, 883 F.3d 1573, 1578-79 (Fed. Cir. 1983).  No case has
   stated the additional requirement that Samsung seeks to impose and the language "for each
8  allegedly infringing product" should not be stricken.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 32**
**UTILITY PATENT DAMAGES — LOST PROFITS — FACTORS TO CONSIDER**

**Apple's Proposed Instruction**

To determine whether Apple is entitled to lost profits, you should consider whether Apple has shown:

      (1)      that there was a demand for Apple's patented products;

      (2)      that there were no commercially acceptable, non-infringing substitutes available, or, if there were, the number of the sales made by Samsung that Apple would have made despite the availability of other non-infringing substitutes

      (3)      that Apple had the manufacturing and marketing capacity to make the sales that were actually made by Samsung of infringing products for which Apple seeks an award of lost profits; and

      (4)      the amount of profit Apple would have made if Samsung had not infringed.

These factors are not the exclusive test for establishing lost profits. The ultimate question you must answer is whether Apple would have made the lost profits that it claims but for Samsung's infringement of Apple's patents.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.3.

**Authorities**

*Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.,* 318 F.3d 1119, 1122-23 (Fed. Cir. 2003); *Gargoyles, Inc. v. U.S.,* 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Carella v. Starlight Archery and Pro Line,* 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 552-53 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir 1978); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.* , 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("[T]he Panduit test is an acceptable, though not an exclusive, test for determining 'but for' causation"); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1330 (Fed. Cir. 2009) ("All that the first [ Panduit ] factor states, and thus requires, is 'demand for the patented product.'"); *Aro Mfg. Co. v. Convertible Top Replacement Co. Inc..,* 377 U.S. 476, 502-07 (1964); *Beauregard v. Mega Sys., LLC,* 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Cent. Soya Co. v. George A. Hormel & Co.,* 723 F.2d 1573, 1579 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983).

**Samsung's Objection to Apple's Instruction**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages. The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie,* 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). Moreover, Apple has substantially diverged from the N.D. Cal. Model Patent Jury Instruction. Specifically, Apple deleted most of the text of the second factor to consider. *See* N.D. Cal. Model Patent Jury Instr. 5.3(2) ("An alternative may be

considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available. Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether [alleged infringer] had to design or invent around the patented technology to develop an alleged substitute"). Apple also added an entirely new paragraph without a basis in the model. Apple has no authority for such changes. This unjustified departure from the model without precedential authority is improper. *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009) ("[W]e repeat our suggestion that trial judges should use the model jury instructions when applicable . . . . We urge trial courts, in the future, to stick to the model jury instructions regarding this issue.") (citing *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913-14 (2d Cir. 1984) ("[T]rial judges would be exceedingly well advised to use [the model instructions] rather than impose variations upon it.")) (internal quotation omitted); *United States v. Wilson-Garcia*, 2012 WL 226032 (W.D. Pa. Jan. 25, 2012) ("It is axiomatic that "trial judges should use the model jury instructions when applicable."). Finally, Apple's instruction fails to take into account that there are several separate and independent individual defendants.

**Samsung's Proposed Instruction**

Apple is entitled to lost profits if it proves all of the following:

    (1)    that there was a demand for the patented inventions and designs [alternate: that there was demand for the patented products];

    (2)    that there were no non-infringing substitutes for each of the allegedly infringing products, or, if there were, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America that Apple would have made despite the availability of other non-infringing substitutes. An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available. Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology to develop an alleged substitute;

    (3)    that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

    (4)    the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America had not allegedly infringed.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.3 (modified).

**Apple's Objection to Samsung's Instruction**

The parties' separate proposed instructions on factors to consider for lost profit damages differ in four ways: (1) Samsung's first indented bullet refers to the "patented invention and design" rather than the "patented product," which is a violation of *DePuy Spine*; (2) Samsung's instruction implies that *Panduit* is an exclusive test for lost profit recovery when the Federal Circuit says it is not; (3) Apple's instruction addresses the availability and acceptability of a non-infringing alternative in a separate instruction (discussed below) in a manner more consistent with Federal Circuit law; (4) Samsung inserts the word "allegedly" into the language of the model instruction in its proposed instruction No. 32, which improperly emphasizes Samsung's position. As to the first issue, the Federal Circuit has made clear that the first factor of *Panduit* focuses on demand for the patented product, not the specific inventions and designs claimed. *Deputy DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009). *DePuy Spine* holds that *Panduit* "does not require any allocation of consumer demand"; it is sufficient to show demand "for a product that is covered by the patent in suit." *Id.* ("All that the first [ *Panduit* ] factor states, and thus requires, is demand for the patented product.") The Court already resolved this as part of a *Daubert* ruling in the case. Second, the Federal Circuit has made clear that "[T]he *Panduit* test is an acceptable, though not an exclusive, test for determining 'but for' causation." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993). Apple's corresponding instruction, No. 32, is an accurate statement of the law of lost profits and captures both of these elements. Third, Apple's instructions includes the requirement that non-infringing alternatives be commercially acceptable. Apple's separate

1    instruction No. 33 (on non-infringing substitutes) is adapted from the N.D. Cal Model Patent
2    Jury Instructions and Federal Circuit Bar Association Model Patent Jury Instructions, and these
     instructions accurately state the law of the Federal Circuit regarding non-infringing alternatives,
3    a key element of the factual dispute between the parties.  *See Grain Processing Corp. v. Am.*
     *Maize-Products Co.*, 185 F.3d 1341, 1343 (Fed. Cir. 1999) (a non-infringing replacement
4    product is not considered a substitute unless it is "acceptable to all purchasers of the infringing
     product"); *Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers
5    must view the substitute as equivalent to the patented device.").  Given its significance, the jury
     should receive a clear and complete explanation of the issue in a single instruction, consistent
6    with the Federal Circuit model instructions.  Samsung's proposal, which is drawn from the
     Northern District model is nonetheless incomplete.  Samsung's proposed instruction lacks a
7    discussion of whether the substitute is acceptable and who bears the burden of proving this when
     the alternative is not immediately available when infringement began.  *See Grain Processing*
8    *Corp.*, 185 F.3d at1349.  Fifth, Samsung's proposed instruction adds the word "allegedly" to the
     fourth factor.  This is an improper and unnecessary modification to the Northern District's model
9    instruction.  The jury will only have reached this issue because it has found that Samsung has
     infringed and the Court's earlier instruction, introducing damages, makes clear that the Court is
10   taking no position on damages by providing an instruction.

**PROPOSED FINAL JURY INSTRUCTION NO. 33**
**UTILITY PATENT DAMAGES—LOST PROFITS—**
**NON-INFRINGING SUBSTITUTES**

**Apple's Proposed Instruction**

A non-infringing alternative may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period.

Factors suggesting the alternative was available include whether the experience and know-how for the alleged substitute were readily available at the time of infringement. Factors suggesting the alternative was not available include whether the alternative was of such high cost as to render the alternative unavailable, and whether Samsung had to design or invent around the patented design to develop an alleged substitute. You may also consider the amount of time it would take for an alleged substitute to be developed and introduced into the market. Apple may obtain lost profits during the period in which Samsung would have been developing an alleged substitute even if you find that it would not have suffered lost sales or profits after a substitute became available.

To be commercially acceptable, an alternative must have had the advantages of the patented invention that were important to people who purchased an accused Samsung product.

If you find that Samsung's proposed alternative would not be available or would not be commercially acceptable for some or all of the period in which Samsung infringed, you should determine whether Apple lost sales and profits during this period.

If you find that an alleged alternative was not on the market during some or all of the period in which Samsung infringed, you may reasonably infer that it was not available as a non-infringing substitute at that time. But Samsung may overcome this inference by showing that the substitute could have been created and marketed during the period in which it infringed. Mere speculation or conclusory assertions are not sufficient to overcome the inference.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.3; Federal Circuit Bar Association Model Patent Jury Instr. B.6.2.

**Authorities**

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) (holding that an unused, but available, noninfringing process was an acceptable substitute) ("When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time. *Cf. Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period. *Cf. id.* Mere speculation or conclusory assertions will not suffice to overcome the inference."); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003) ("The record shows that Lextron did not have the necessary equipment, know-how, and experience to make the [alternative] machine at the time of infringement."); *Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers must view the substitute as equivalent to the patented device."); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).

**Apple's Statement in Support of Apple's Related Noninfringing Instruction (No. 33).**

Apple's proposed instruction No. 33 is a complete and accurate statement of non-infringing alternatives, an important factor that the jury will consider under the *Panduit* test. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir 1978). All parts of Samsung's proposed instruction No. 32 regarding non-infringing substitutes have been retained. Apple's proposed instruction, however, addresses other important areas on the legal requirements for proof of non-infringing alternatives. First, Apple's instruction explains that a substitute must not simply be available, as Samsung's proposed instruction states, but must also be "commercially acceptable" and explains this concept consistent with Federal Circuit law. *See Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1343 (Fed. Cir. 1999) (a non-infringing replacement product is not considered a substitute unless it is "acceptable to all purchasers of the infringing product"); *Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers must view the substitute as equivalent to the patented device."); *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1578 (Fed. Cir. 1992) (affirming defendant failed to establish a "commercially acceptable" noninfringing alternative). Second, Apple's instruction explains that the need to consider the amount of time that it may take for the alleged substitutes to be developed and introduced in the market. Apple is entitled to lost profits during this period if, as it will show a trial, the alternatives on which Samsung may rely were not immediately available. *See Grain Processing Corp.*, 185 F.3d at 1343; *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164, 1179 (N.D. Cal. 2010) (finding defendant's "capacity to 'implement' noninfringing alternatives during the period of alleged infringement" relevant to whether non-infringing alternatives were available). Finally, using language directly from the Federal Circuit, Apple's proposed instruction describes the burden that Samsung bears to show the availability of the alleged alternative during the accounting period. *Grain Processing Corp.*, 185 F.3d at 1349 ("When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time. *Cf. Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period. *Cf. id.* Mere speculation or conclusory assertions will not suffice to overcome the inference."). Apple's proposed instruction No. 33 is both necessary and appropriate to fully explain the requirements for proving non-infringing substitutes. Samsung's proposed instruction omits significant legal requirements relevant to disputed issues.

**Samsung's Objection to Apple's Instruction**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages. The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). Apple has added language without a basis in the model and which is not directly drawn from caselaw, including the phrase "You may also consider the amount of time it would take for an alleged substitute to be developed and introduced into the market. Apple may obtain lost profits during the period in which Samsung would have been developing an alleged substitute even if you find that it would not have suffered lost sales or profits after a substitute became available." Apple also employs prejudicial language that assumes Samsung has infringed its patents, such as "the period in which Samsung infringed." This language presumes the validity of Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and adverse to Samsung. This unjustified departure from the model without precedential authority is improper. *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009) ("[W]e repeat our suggestion that trial judges should use the model jury instructions when applicable . . . . We urge trial courts, in the future, to stick to the model jury instructions

1   regarding this issue.") (citing *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913-14 (2d Cir.
2   1984) ("[T]rial judges would be exceedingly well advised to use [the model instructions] rather
    than impose variations upon it.")) (internal quotation omitted); *United States v. Wilson-Garcia*,
3   2012 WL 226032 (W.D. Pa. Jan. 25, 2012) ("It is axiomatic that "trial judges should use the
    model jury instructions when applicable."").   In addition, Apple's reference to "patented
4   design[s]" is totally inapposite in a utility patent instruction.  Finally, Apple's instruction fails to
    take into account that there are several separate and independent individual defendants.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 34
## UTILITY PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT

**Apple's Proposed Instruction**

3

4

Apple may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement, and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales (such as cost of goods, sales costs, packaging costs, and shipping costs). Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from Apple's lost revenue.

5

6

**Source**

7

8

Adapted from Federal Circuit Bar Association Model Patent Jury Instr. B.6.2.

9

**Authorities**

10

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir. 1984).

11

12

**Samsung's Objection to Apple's Instruction**

13

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages. The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). Apple also employs prejudicial language that assumes Samsung has infringed its patents, such as "Apple may calculate its lost profits." This language presumes the validity of Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and adverse to Samsung. Apple has no authority for such changes. This unjustified departure from the model without precedential authority is improper. *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009) ("[W]e repeat our suggestion that trial judges should use the model jury instructions when applicable . . . . We urge trial courts, in the future, to stick to the model jury instructions regarding this issue.") (citing *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913-14 (2d Cir. 1984) ("[T]rial judges would be exceedingly well advised to use [the model instructions] rather than impose variations upon it.")) (internal quotation omitted); *United States v. Wilson-Garcia*, 2012 WL 226032 (W.D. Pa. Jan. 25, 2012) ("It is axiomatic that "trial judges should use the model jury instructions when applicable."). Apple's instruction also fails to take into account that there are several separate and independent individual defendants. Finally, Apple's instruction presumes to resolve a factual dispute – whether taxes, insurance, rent, and administrative overhead are fixed costs in all circumstances. Samsung disputes this factual assertion, and a jury instruction should not be used to settle this factual dispute.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Apple may calculate its lost profits on any lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.  Fixed costs that do not vary with increases in production or scale should not be subtracted from Apple's lost revenue, if any.

**Source**

Federal Circuit Bar Association Model Patent Jury Instr. B.6.2 (modified).

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in two respects.  First, contrary to the model, Samsung adds "if any" to the last sentence.  The statement is not necessary, particularly in light of the introductory instruction that makes clear that the Court is not providing any statement as to whether damages have been proved.  Second, Samsung's instruction omits the examples of fixed costs, which should not be deducted, while retaining examples of other costs, which should be deducted.  This modification from the model is biased and improper.  Examples of both types of costs are helpful to the jury and should be included.

**PROPOSED FINAL JURY INSTRUCTION NO. 35**
**UTILITY PATENT DAMAGES—LOST PROFITS—MARKET SHARE**

**Apple's Proposed Instruction**

One way Apple may prove the number of sales it would have made if Samsung's infringement had not happened is to prove its share of the relevant market excluding the infringing products. You may award Apple a share of profits equal to that market share.

In deciding Apple's market share, you must decide which products are in Apple's market. Products are in the same market if they are sufficient similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.3a.

**Authorities**

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354-55 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).

**Samsung's Objection to Apple's Instruction**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages. The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). Apple also employs prejudicial language that assumes Samsung has infringed its patents, such as "if Samsung's infringement had not happened." This language presumes the validity of Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and adverse to Samsung. Apple has no authority for such changes. This unjustified departure from the model without precedential authority is improper. *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009) ("[W]e repeat our suggestion that trial judges should use the model jury instructions when applicable . . . . We urge trial courts, in the future, to stick to the model jury instructions regarding this issue.") (citing *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913-14 (2d Cir. 1984) ("[T]rial judges would be exceedingly well advised to use [the model instructions] rather than impose variations upon it.")) (internal quotation omitted); *United States v. Wilson-Garcia*, 2012 WL 226032 (W.D. Pa. Jan. 25, 2012) ("It is axiomatic that "trial judges should use the model jury instructions when applicable."). Finally, Apple's instruction fails to take into account that there are several separate and independent individual defendants.

**Samsung's Proposed Instruction**

One way Apple may prove the number of sales it would have made if the alleged infringement had not happened is to prove its share of the relevant market excluding infringing products.  You may award Apple a share of profits equal to that market share.

In deciding Apple's market share, you must decide which products are in its market.  Products are in the same market if they are sufficiently similar to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.3a (modified).

**Apple's Objection to Samsung's Instruction**

Samsung's instruction differs from the model and from Apple's instruction in adding "the alleged infringement" in the first sentence.  This is unnecessary and not consistent with the model, which refers to "the infringement."  Apple has stated "Samsung's infringement" to distinguish it from any infringement allegations made against Apple.

## PROPOSED FINAL JURY INSTRUCTION NO. 36
## UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION

**Apple's Proposed Instruction**

Both Apple and Samsung seek a reasonable royalty for the infringement of their respective utility patents.  If Apple has proven its claim to lost profits for all or a portion of Samsung's infringing sales, Apple should receive its lost profits for those sales.  However, for any sales that infringe Apple's utility patents where Apple has not proven its claim to lost profits, you must award Apple a reasonable royalty.  Samsung does not make a claim for lost profits.  You must determine the reasonable royalties to which Samsung is entitled for any Apple sales that infringe Samsung's asserted patents.

In no event should the damages you award to either patent holder for patent infringement be less than a reasonable royalty.

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the invention.  The right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the utility patent owner and an infringer taking place when infringement began.  Your role is to determine what royalty would have resulted from the hypothetical negotiation.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed that the patent was valid and infringed.  Your role is to determine what the results of that hypothetical negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way is to calculate a "running royalty."  For this, you first determine the "base," *i.e.*, the products on which the infringer will pay.  You then determine the "rate" (or percentage of the base) that would have come out of the hypothetical negotiation.  For example, if the patent covers a nail that sells for $2, and the infringer sold 200 nails, the royalty base would be $400 in revenue.  If the rate that you find would have resulted from the hypothetical negotiation is 1%, then the infringer or licensee would pay an running royalty of $0.02 for each $2 nail it sold.  For the entire royalty base of its $400 in revenue, the licensee would pay $4.  That is 1% of $400.

If the patent covers only part of the product that the infringer sells, the base would normally only correspond to that feature of the product.  For example, for a $1000 car where the patented invention is on a steering wheel that sells for $50, the base revenue would be $50.  However, if the patented invention is the reason customers buy the whole product, the base could be the value of the whole product.

Another way to calculate a royalty is to determine a one-time lump sum that the infringer would have paid and the patent owner would have accepted at the time of the hypothetical negotiation for a license covering all past and future sales of the licensed product.  This differs from payment of a running royalty because the licensee does not pay based on the number or revenues of actual licensed products it sells.  When a one-time lump sum is paid, the infringer instead pays a single price up front for the license.

It is up to you to decide what type of royalty is appropriate here based on the evidence you heard.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6, B.5.7.

**Authorities**

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

**Samsung's Objection to Apple's Instruction**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages. That is both inefficient and likely only to confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). In addition, Apple has "adapted" this instruction from the cited Model Patent Jury Instructions, but this "adaptation" seems to consist of adding language to the Model Instructions in an attempt to gain an advantage – by use of phrases like "Samsung's infringing sales." Moreover, Apple's first paragraph is obviously skewed in favor of finding damages for Apple, with Samsung as an afterthought. "In drafting [civil jury] instructions, a common vice to be avoided is the phrasing of instructions in an argumentative fashion favorable to the side submitting them. Instructions must be objective, not subjective. It is the court, not counsel, who announces them. The judge is the only non-partisan lawyer in the courtroom, from whom the jury may properly expect a dispassionate and unslanted statement of the pertinent law." 1 Fed. Jury Prac. & Instr. § 7:2 (6th ed.); *see also United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and combative instructions); *United States v. Matias*, 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions).

**Samsung's Proposed Instruction**

Both Samsung and Apple seek an award of a reasonable royalty for the alleged infringement of their respective patents.

If the holder of a patent does not seek lost profits (like Samsung), or has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the sales alleged to infringe the patent, then the patent holder should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

A reasonable royalty must be limited to compensation for the amount and type of alleged infringement that actually occurred.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.6 (modified); *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1117 (N.D. Cal. 2011) (citing 35 U.S.C. 284); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention.").

**Apple's Objection to Samsung's Instruction**

The following sentence in Samsung's proposed instruction misstates the law: "A reasonable royalty must be limited to compensation for the amount and type of alleged infringement that actually occurred."  First, this language is not in the Northern District of California's Model Patent Jury Instructions.  Second, Samsung cites *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), as support for this additional language.  *ResQNet* simply makes the general statement that, "[a]t all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention," referring to a quote from *Aro Mfg. Co. v. Convertible Top Replacement Co., Inc.*, 377 U.S. 476, 507 (1964), which states that "the present statutory rule is that only 'damages' may be recovered."  *ResQNet*, 594 F.3d at 869. Samsung's additional language is an inaccurate reflection of *ResQNet*, improperly repeats general principles already addressed in the first damages instruction, and should be omitted.

**Samsung's Statement in Support**

Samsung provides this instruction  to clarify the concept of reasonable royalties for the jury.  Apple's amalgam instruction about a party's entitlement to reasonable royalties is confusing and may mislead the jury.  A confusing or misleading jury instruction is improper.  *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (reviewing jury instructions to determine clarity). Samsung's instruction is  clear and focused, explaining when it is appropriate to award a reasonable royalty and will avoid juror confusion and a possible double recovery.  *Barnes v. Borough of Pottstown*, 1993 WL 239314 (E.D. Pa. June 30, 1993) ("complicated and potentially confusing" jury instructions are undesirable).

## PROPOSED FINAL JURY INSTRUCTION NO. 36.1
## REASONABLE ROYALTY—DEFINITION

**Samsung's Proposed Instruction**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place prior to the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $10,000 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product. Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product. In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for Samsung and/or Apple.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.7 (modified).

**Samsung's Statement in Support**

Samsung provides this instruction to clarify a complicated issue for the jury. Apple's amalgram instruction is confusing and may mislead the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of

Appeals examines jury instructions for, among other things, whether they confuse the jury). Samsung offers this clear and focused instruction to explain in common sense terms the nature of a reasonable royalty award.   *Barnes v. Borough of Pottstown*, 1993 WL 239314 (E.D. Pa. June 30, 1993) ("complicated and potentially confusing" jury instructions are undesirable).

**Apple's Objection to Samsung's Instruction**

The parties' proposed instructions on the definition of reasonable royalty differ in four ways: (1) Samsung's proposed instruction No. 36.1 only includes two of the three possible ways to calculate a reasonable royalty that a jury will hear during the trial, while Apple's proposed instruction No. 36 includes all three ways, (2) Samsung's instruction refers to the "second" way to calculate a royalty, when it should say "additional" way for the same reason; (3) Samsung uses the term "ongoing royalty," rather than the more accurate term "running royalty"; and (4) Samsung's proposed instruction misstates the law of the entire market value rule.  First, the second paragraph in Samsung's instruction expresses "ongoing royalties" only in the form of a percentage, but it is not disputed that the jury will hear evidence on  three ways to calculate a reasonable royalty: (1) a lump sum, (2) a percentage, and (3) per unit dollar amount.  As a result, the jury should receive an instruction consistent with the evidence presented.  Apple's corresponding instruction No. 36 includes this per unit calculation and is therefore more appropriate for this trial.  It otherwise adopts and is consistent with the Northern District model. Samsung's omission wrongly suggests the "per unit" approach is disfavored.  Second, if the per unit calculation is included in Samsung's instruction, the fourth paragraph of proposed instruction No. 36.1 should begin with, "An additional way to calculate a royalty . . ." rather than "A second way to calculate a reasonable royalty . . ."  Third, Samsung's use of the term "ongoing royalty" is less appropriate for the type of pre-verdict royalty contemplated by the instruction. Apple's use of the term "running royalty" is more accurate.  Fourth, Samsung's instruction misstates the law of the entire market value rule with the inclusion of the following passage: "Even if the patented invention is not the reason for demand, the value of the whole product could be used if the value of the invention cannot be separated out from the value of the product. In such a case, however, the rate from the hypothetical negotiation would be lower because it is being applied to the value of the whole product and the patented invention is not the reason customers purchase the whole product."  Under current Federal Circuit precedent, juries cannot apply the entire market value to accused products for minor patent improvements simply by asserting a low enough royalty rate.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Lucent Tech's, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009). Instead, for the entire market value rule to apply, the patentee must prove that the patent-related feature is the basis for customer demand.  *Id.*  Apple's corresponding instruction No. 36 contains an accurate statement of the law regarding the entire market value rule.

**PROPOSED FINAL JURY INSTRUCTION NO. 37
UTILITY PATENT DAMAGES—REASONABLE ROYALTY—
RELEVANT FACTORS**

**Apple's Proposed Instruction**

In determining the outcome of the hypothetical negotiation, you should consider all facts known to the parties at the time infringement began.  Some of the factors you may consider are:

(1)   Royalties received by the patent holder for licensing the patent-in-suit, proving or tending to prove an established royalty.

(2)   Rates the infringer paid for using other patents comparable to the patent-in-suit.

(3)   The nature of the license, *i.e.*, exclusive or nonexclusive, restricted or unrestricted in terms of territory or to whom products covered by the patent claim may be sold.

(4)   The patent holder's policy to maintain its patent monopoly by not licensing others or by granting licenses under special conditions designed to preserve its monopoly.

(5)   The commercial relationship between the patent holder and infringer, such as whether they are competitors in the same territory in the same line of business.

(6)   The effect of selling the patented invention in promoting sales of other products of the infringer, the existing value of the patented invention to the patent holder as a generator of sales of nonpatented items, and the extent of such derivative or convoyed sales.

(7)   The duration of the patent and the term of the license.

(8)   The established profitability of products covered by the patent claim, their commercial success, and their current popularity.

(9)   The advantages and benefits of the patented invention over older modes or devices, if any, that had been used to work on similar problems.

(10)   The nature of the patented invention, the character of the patent holder's products covered by it, and the benefits to those who have used the invention.

(11)   The extent to which the infringer has made use of the patented invention and any evidence probative of the value of that use.

(12)   The portion of the profit or selling price that was customary in the business or in comparable businesses to allow for use of the invention or analogous inventions.

(13)   The portion of the realizable profits that should be credited to the patented invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)   The opinion and testimony of qualified experts.

(15)   The amount that a prudent licensor (such as the patent holder) and a prudent licensee (such as the infringer) would have agreed upon at the time infringement began if both had been reasonably and voluntarily trying to reach an agreement.

No one factor is dispositive, and you should consider the evidence that has been presented to you in this case on each one of the factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time when infringement began.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6, B.5.7; Adapted from Federal Circuit Bar Association Model Patent Jury Instr. B.6.7.

**Authorities**

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ("25% rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009), cert. denied, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions 9.8 (1999); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

**<u>Samsung's Objection to Apple's Instruction</u>**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages.  That is both inefficient and likely only to confuse the jury.  A confusing or misleading jury instruction is improper.  *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury).  Moreover, Apple has excluded portions of the model, without explanation.  Samsung's proposed instruction immediately below more closely adheres to the model instruction, where, for example, the first paragraph reads "In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are."

1    **Samsung's Proposed Instruction**

2    In determining the reasonable royalty for Samsung and/or Apple, you should consider all the facts
     known and available to the parties at the time the infringement began.  Some of the kinds of
3    factors that you may consider in making your determination are:

4        (1)   The royalties received by the patentee for the licensing of the patent-in-suit, proving
               or tending to prove an established royalty.

5
         (2)   The rates paid by the licensee for the use of other patents comparable to the patent-
6              in-suit.

7        (3)   The nature and scope of the license, as exclusive or nonexclusive, or as restricted or
               nonrestricted in terms of territory or with respect to whom the manufactured product
8              may be sold.

9        (4)   The licensor's established policy and marketing program to maintain his or her
               patent monopoly by not licensing others to use the invention or by granting licenses
10             under special conditions designed to preserve that monopoly.

11       (5)   The commercial relationship between the licensor and licensee, such as whether they
               are competitors in the same territory in the same line of business, or whether they
12             are inventor and promoter.

13       (6)   The effect of selling the patented specialty in promoting sales of other products of
               the licensee, the existing value of the invention to the licensor as a generator of sales
14             of his nonpatented items, and the extent of such derivative or convoyed sales.

15       (7)   The duration of the patent and the term of the license.

16       (8)   The established profitability of the product made under the patents, its commercial
               success, and its current popularity.
17
         (9)   The utility and advantages of the patented property over the old modes or devices, if
18             any, that had been used for working out similar results.

19       (10)  The nature of the patented invention, the character of the commercial embodiment of
               it as owned and produced by the licensor, and the benefits to those who have used
20             the invention.

21       (11)  The extent to which the infringer has made use of the invention and any evidence
               probative of the value of that use.
22
         (12)  The portion of the profit or of the selling price that may be customary in the
23             particular business or in comparable business to allow for the use of the invention or
               analogous inventions.
24
         (13)  The portion of the realizable profits that should be credited to the invention as
25             distinguished from nonpatented elements, the manufacturing process, business risks,
               or significant features or improvements added by the infringer.
26
         (14)  The opinion and testimony of qualified experts.
27
         (15)  The amount that a licensor (such as the patentee) and a licensee (such as the
28             infringer) would have agreed upon (at the time the infringement began) if both had

been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**Source**

Federal Circuit Bar Association Model Patent Jury Instr. B.6.7 (modified).

**<u>Apple's Objection to Samsung's Instruction</u>**

Apple and Samsung's instructions differ in only two ways. First, the introductions are different in immaterial ways. Either could be conformed to the other. Second, in the last sentence, Samsung uses the phrase "taking place at a time prior to when the infringement began." Apple's instruction states, "taking place when infringement began." The latter change was made to make the instruction consistent with the Northern District model instruction, which uses the phrase "when the infringing activity first began."

**PROPOSED FINAL JURY INSTRUCTION NO. 38
UTILITY PATENT DAMAGES— DAMAGES FOR METHOD CLAIMS MUST BE
CORRELATED TO USE**

### Apple's Proposed Instruction

In determining damages for infringement of a patent that claims only a method, the amount of any reasonable royalty must be correlated to the extent the infringing method is actually used by consumers who possess the devices that are capable of being operated in an infringing manner.

### Authorities

*Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334-35 (Fed. Cir. 2009) (holding "[t]he damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers" and vacating damages award for method patent where patent holder failed to prove that "the extent to which the infringing method has been used supports the lump-sum damages award"); *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (one fact to be considered in determining a reasonable royalty is "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.").

### Samsung's Objection to Apple's Instruction

Apple's proposed instruction is not supported by any model. Instead, Apple has proposed an atypical instruction designed to advance Apple's case. Samsung's corresponding proposed instruction, on the other hand, is based on N.D. Cal. Model Patent Jury Instr. B.5.6. This is a more general instruction, and more appropriate and generally accepted. It says in essence that reasonable royalties must be correlated with the extent and the nature of infringement, as explained in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention."). Apple's self-serving and unfounded instruction is improper and should be rejected.

**PROPOSED FINAL JURY INSTRUCTION NO. 39**
**UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

**Apple's Proposed Instruction**

Apple and Samsung each make damages claims against the other for patent infringement. To determine the amount of damages to award for each claim, you must determine the date on which damages began to accrue. Once you have determined that date, you should calculate the damages that are attributable to sales that occurred on that date and after. This determination should be made for each patent-holder's utility patent that you find has been infringed.

For each patent that the alleged infringer infringed but for which the patent-holder does not sell a product covered by the patent, you should calculate damages as follows:

- If the patent was granted before the alleged infringer's infringement began, damages should be calculated as of the date infringement began.

- If the patent was granted after the alleged infringer's infringement began, damages should be calculated as of the date the patent issued.

For each patent that the alleged infringer infringed and for which the patent-holder does sell a product covered by the patent, you must determine the date that the alleged infringer received actual notice of the patent and the specific product or products alleged to infringe. Damages should be calculated as of that date.

While you may identify an earlier date by which Samsung had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung with such notice for the '381 and '915 patents no later than April 15, 2011, and for the '163 patent no later than June 16, 2011.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8; Federal Circuit Bar Association Model Patent Jury Instr. B.6.8.

**Authorities**

35 U.S.C. § 287; *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer. Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979 (D. Mass. 1992) (actual notice does not require identifying a particular patent by number where plaintiff acted affirmatively to notify his adversary that he had a patent on a given item and the defendant was infringing that patent); *Coupe v. Royer*, 155 U.S. 565, 584-85 (1895) (holding that where plaintiffs presented evidence of actual notice and defendants offered evidence that they did not receive notice, the "court ought to have submitted that question to the jury"); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed. Cir. 2008) (trier of fact must take into account the history of the relationship between the parties when determining whether a communication was "sufficiently specific" to

give rise to actual notice); *Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (communication giving rise to actual notice does not need to identify all related products since "ensuing discovery . . . may bring those products within the scope of the notice").

**Samsung's Objection to Apple's Instruction**

Apple's proposed instruction is inappropriate because it varies from the models upon which Apple purports to rely by inserting additional argumentative and prejudicial language. For example, it presumes that Samsung infringed its patents ("For each design patent that Samsung infringed . . ."). "In drafting [civil jury] instructions, a common vice to be avoided is the phrasing of instructions in an argumentative fashion favorable to the side submitting them. Instructions must be objective, not subjective. It is the court, not counsel, who announces them. The judge is the only non-partisan lawyer in the courtroom, from whom the jury may properly expect a dispassionate and unslanted statement of the pertinent law." 1 Fed. Jury Prac. & Instr. § 7:2 (6th ed.*); see also United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and combative instructions); *United States v. Matias,* 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions). Moreover, Apple's modification of the model instruction to imply that notice merely of a "category of products" – as opposed to allegedly infringing products – is sufficient to trigger damages is unsupported by any law.

**Samsung's Proposed Instruction**

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that the alleged infringer has both infringed and been notified of the alleged infringement of the patent.

If you find that the patent holder sells a product that includes the claimed invention, you must determine the date that the alleged infringer received actual notice of the patent and the specific product alleged to infringe. Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the patent by a specific accused product or device. The filing of the complaint and counterclaims in this case qualified as actual notice, so the damages period begins no later than the dates the complaint and counterclaims were filed. The patent holder has the burden of establishing that it is more probable than not the alleged infringer received notice of infringement before the complaint and counterclaims were filed.

If you find that the patent holder does not sell a product covered by the patent, damages begin without the requirement for actual notice. If you find that the patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began. If you find that the patent was granted after the infringing activity began, damages should be calculated as of the date the patent issued.

While you may identify an earlier date by which Apple had actual notice of Samsung's claims of infringement based on your evaluation of the evidence, Samsung's counterclaims provided Apple such notice by no later than June 16, 2011. With respect to Samsung's U.S. Patent No. 7,577,460, damages should be calculated as of August 18, 2009, because Samsung is asserting only method claims.

While you may identify an earlier date by which Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America had actual notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the '381, '915 and D'677 patents by no later than April 15, 2011, and for the '163, D'305, D'889 and D'087 patents by no later than June 16, 2011.

**Source**

N.D. Cal. Model Patent Instr. B.5.8 (modified); Federal Circuit Bar Association Model Patent Jury Instr. B.6.8 (modified); *Mformation Techs., Inc. v. Research In Motion Ltd.*, 2011 WL 6357804 (N.D.Cal. Dec. 19, 2011) (Ware C.J.) ("The marking requirements of § 287(a) do not apply to patents containing only method claims. *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed.Cir.1983).").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction contains numerous misstatements of law. First, the instruction states that "If you find that the patent holder sells a product that includes the claimed invention, you must determine the date that the alleged infringer received actual notice of the patent and the specific product alleged to infringe. Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the patent by a specific accused product or device." But the Federal Circuit law makes clear that actual notice does not require actual notice of all the products. *See Funai Elec. Co. Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (communication giving rise to actual notice does not need to identify all related products since "ensuing discovery . . . may bring those products within the scope of the notice"). This is particularly true where, as here, there is an ongoing relationship between the parties. *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364 (Fed. Cir. 2008) (" . . . the [T]he court's instruction

1   to the jury should have more clearly articulated that, in the context of this ongoing relationship
    between the parties, knowledge of a specific infringing device is not a legal prerequisite to such a
2   finding.")  Additionally, it is established that notice of the specific patent number is not required
    to constitute give rise to actual notice.  *See Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F.
3   Supp. 979 (D. Mass. 1992) (actual notice does not require identifying a particular patent by
    number where plaintiff acted affirmatively to notify his adversary that he had a patent on a given
4   item and the defendant was infringing that patent).  Apple's corresponding instruction, No. 39, is
    an accurate statement of the law of actual notice and reflects the accepted Northern District
5   model instruction on this issue.  *See id.* ("[T]he crucial inquiry under the notice statute is not
    whether the plaintiff precisely stated the patent number or date of issuance to the defendant, but
6   whether the plaintiff has acted affirmatively to notify his adversary of the essential information:
    that the plaintiff had a patent on a given item and that the defendant is infringing the patent").
7   These same comments apply to Apple's proposed instruction No. 56.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 40
CALCULATING DAMAGES IN CASES OF INDUCEMENT[7]**

**Samsung's Proposed Instruction**

Apple asserts that Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America have each actively induced another to infringe Apple's patents.

Samsung asserts that Apple has actively induced another to infringe Samsung's patents.

In order to recover damages for induced infringement, the patent holder (Samsung and/or Apple) must either prove that the accused product necessarily infringes the patent in suit or prove acts of direct infringement by others that were induced by the accused infringer.  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, the patent holder must further prove the number of direct acts of infringement of the patent in suit, for example, by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.

**Source**

N.D. Cal. Model Patent Instr. B.5.9 (modified).

**Samsung's Statement in Support**

Samsung offers this proposed instruction properly explaining the burden of proof and damages for a claim of inducement that is adapted from this Court's Model Patent Jury Instructions.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is unnecessary and confusing to the jury regarding a damages (as opposed to a liability) issue that is not in dispute.  Both parties have proposed separate instructions regarding the requirements for direct infringement and for inducement.  Under the facts and circumstances of this case, if both are proved, there is no further reduction to damages or to the sales that are affected for the jury to evaluate.  Apple's claims are all apparatus or design claims and thus, if the Korean parent company induces infringement, the scope of the induced infringement will overlap entirely with the underlying conduct of the U.S sales subsidiaries. There is no evidence that Samsung's U.S. sales subsidiaries either modify products before sale or provide separate instructions to users that would affect the determination whether infringement is occurring (such as when method claims are being asserted).  Samsung's devices either infringe or they do not.  Further, the parent company either directs the sale of the products or it does not.  A separate inquiry into whether some unit sales of the same product do not infringe is both confusing and unwarranted.  References to whether a product "necessarily infringes" or to infringement by "a particular class of products" will misdirect the jury regarding the issues that they must decide.  Thus, the instruction should not be given.

---

[7] Samsung does not believe that Apple has properly asserted inducement of patent infringement in this case.  *See* Samsung's Motion *In Limine*, No. 3.  It includes this instruction solely in the event the Court disagrees.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 41
UTILITY PATENT DAMAGES—NO DOUBLE COUNTING**

2

3

**Apple's Proposed Instruction**

While Apple is entitled to monetary relief for each infringing sale by Samsung, it may not recover twice for the same sale.  You should award Apple the highest remedy that you find applies to the infringing Samsung sale, whether it is based on Apple's lost profit or a reasonable royalty.  However, once you have awarded Apple a remedy with respect to a Samsung sale, you should not award Apple another remedy with respect to the sale of the same unit.

If you award Apple one form of remedy with respect to some but not all of Samsung's infringing sales, you should award Apple a different remedy with respect to the other Samsung infringing sales if Apple meets the requirements for that remedy.

In addition, a single Samsung product could violate more than one of Apple's intellectual property assets.  However, you should award Apple only one form of remedy for each sale that violates Apple's intellectual property rights.  If the sale of a Samsung product violates more than one of Apple's utility patents, design patents, or trade dresses, you should award Apple the highest remedy that Apple has proven with respect to that sale.

**Authorities**

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291-1292 (Fed. Cir. 2002) ("[W]hen both a design patent and a utility patent have been infringed [the plaintiff] … is entitled to damages for each infringement, but once it receives profits under § 289 for each sale, [the plaintiff] is not entitled to a further recovery from the same sale"); *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017-19 (Fed. Cir. 2006) ("Generally, the double recovery of damages is impermissible," holding that a plaintiff cannot recover damages from a defendant for patent infringement and trademark infringement if the damages were calculated from the sale of the same product by the same defendant); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("[R]ecovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act.").

**Samsung's Objection to Apple's Instruction**

Apple's proposed instruction is materially incorrect and otherwise inappropriate.  Apple is not "entitled to monetary relief," nor is it required to receive the "highest remedy that you find applies."  Yet, this instruction presupposes that and makes this inference to the jury.   None of Apple's cited authority supports including language that unduly suggests that Apple is "entitled" to relief, let alone the "highest remedy;"  as such, this instruction is misleading and would be reversible error if adopted.  *See Yan Fang Du v. Allstate Ins. Co.*, 681 F.3d 1118, 1122 (9th Cir. 2012) ("Where there is legal error in instructing the jury in a civil case, reversal is required unless the error is more probably than not harmless.").  In addition to being incorrect, this language is prejudicial, and improper for that reason also.  1 Fed. Jury Prac. & Instr. § 7:2 (6th ed.); *see also United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and combative instructions); *United States v. Matias*, 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions).  The instruction also assumes a remedy for Apple, but Samsung has asserted utility patents as well.  Samsung's proposed instruction is reciprocal, and therefore more appropriate.

1

**DESIGN PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 42**
**DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS**

**Apple's Proposed Instruction**

I will now instruct you about how to decide Apple's design patent infringement claims.  Before you decide whether Samsung has infringed each patent or whether it is invalid, you must understand the patent.  Each Apple design patent has one claim that covers the design "as shown and described."  Each design patent then uses multiple drawings to illustrate the claimed design.  The drawings collectively define the design claimed by each patent.  The scope of the claim encompasses the design's visual appearance as a whole.  It does not cover a general design concept, and is not limited to isolated features of the drawings.

When viewing the drawings, keep in mind that all matter depicted in solid lines contributes to the overall appearance of the design.  In addition, you should view certain features in the drawings of the Apple design patents in this way:

D'305 and D'087 patents.  For these patents, the broken lines in the patent figures form no part of the claimed design.

[Show D'305 patent, Fig. 1 and D'087 patent, Fig. 1 to jury.]

D'677 patent.  The oblique lines appearing in the D'677 patent indicate a transparent, translucent, or highly polished or reflective surface.  In addition, the broken lines in the patent figures form no part of the claimed design for the D'677 patent.  (The "oblique" lines are the diagonal lines shown in the figures of the patent.)

[Show D'677 patent, Fig. 1 to jury.]

D'889 patent.  The front surface of the device marked with oblique lines is a transparent surface, the dotted-line rectangle in the front surface marks an area visible beneath the transparent surface and is claimed subject matter, and the human figure shown in broken lines in Figure 9 forms no part of the claimed design.

[Show D'889 patent, Fig. 1 to jury.]

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 5, 7.2.

**Authorities**

*Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.,* 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.,* 138 F.3d 1448 (Fed. Cir. 1998) *(en banc); Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed. Cir. 1995) *(en banc); see also* MPEP § 1503.02; *Unique Indus. v. 965207 Alta. Ltd.,* 722 F. Supp. 2d 1, 10 n.2 (D.D.C. 2009) (broken lines may be considered part of the claimed design, "if it is not clear that the inventor intended to exclude those portions from the claim").

1

**Samsung's Objection to Apple's Instruction**

2   Apple has provided inaccurate descriptions of the patents that do not comport with the drafting conventions set forth in the MPEP.  Samsung's position is laid out in full above at Apple's
3   Proposed Preliminary Instruction No. 10.  In short, the D'087 has multiple embodiments, which makes vague comments about broken lines unhelpful or confusing; the D'677 does not specify
4   what the purpose of the broken lines are so those features must be assumed to be part of the claim; and nothing in the D'889 patent indicates that the broken lines show a feature below a
5   transparent surface.  That is not only contrary to the PTO's guide to filing a design patent, but the broken lines are also said to show features not claimed by the patent, which would mean that the
6   front face of the D'889 patent is mostly disclaimed.  Samsung's Alternatives to Apple's Proposed Final Instruction No. 42 (found below) are preferable because they state correctly important
7   points of design patent law: that design patents can have only one claim, the claim covers all
8   figures in the patent, and that multiple embodiments are permissible where they are patentably
9   indistinct.

10   **SAMSUNG'S GENERAL OBJECTION TO APPLE'S USE OF THE IPO MODEL JURY INSTRUCTIONS**

11

12   Nearly all of Apple's design patent instructions are based on the Intellectual Property Organization's model jury instructions.  (http://www.ipo.org/AM/Template.cfm?Section=
13   Home&Template=/CM/ContentDisplay.cfm&ContentID=24722.)  This is a biased source for Apple to use for model instructions.  The Vice Chair of the Design Rights Committee, which
14   oversaw drafting of the instructions, is Tracy-Gene Durkin, one of Apple's top design patent prosecuting attorneys whose name is in the file history for all four design patents-in-suit, along
15   with numerous other Apple patents.  Apple employee Quin Hoellwarth, who oversees design patents at Apple, is also a member of the Design Rights Committee, as is Perry Saidman, who is
16   a design patent prosecuting attorney for Apple and was Apple's attorney when it filed an amicus brief in *Egyptian Goddess v. Swisa.  See* Amicus Br. of Apple in Support of Neither Party, 2008
17   WL 699183, *1 (Fed. Cir. 2008).

18

19

20

21

22

23

24

25

26

27

28

1

**Samsung's Proposed Instruction**

2

Before you decide whether Samsung Electronics Company, Samsung Electronics America, and/or
Samsung Telecommunications America have infringed one or more of the asserted design
patents, or whether the design patents are invalid, you will have to understand the design patent
claims.

3

4

5

Unlike utility patents, a design patent can only have one claim.  That claim covers all the figures
in the patent.  It is permissible to illustrate more than one embodiment of a design in a single
design patent application.  Multiple embodiments may be presented only if they are directed to
substantially the same design and are not patentably distinct from one another.

6

7

**Source**

8

AIPLA Model Jury Instruction 2; 37 C.F.R. § 1.153; *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543
F.3d 665, 679 (Fed. Cir. 2008) (en banc); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577
(Fed. Cir. 1995); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311-12 (Fed. Cir. 2005) (en banc);
*Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1285-86 (Fed. Cir. 2002);
*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517
U.S. 370, 374, 116 S.Ct. 1384, 1388 (1996).

9

10

11

12

**Apple's Objection to Samsung's Instruction**

13

Samsung's proposed instruction that "[m]ultiple embodiments may be presented only if they are
directed to substantially the same design and are not patentably distinct from one another" is
unnecessary and misleading.  There is no claim in this case that the asserted designs are invalid
based on "multiple embodiments."  Given the absence of such a defense, there is no reason to
introduce complexity and possible confusion by the undefined concept of patentably indistinct
designs.  Apple's corresponding instruction accurately and concisely summarizes the issues
relating to interpretation of the design patents and accurately reflect the law.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**[8]

It is my job as a judge to interpret for you what is claimed by the patents. You must accept my interpretations as correct. My interpretations should not be taken as an indication that I have an opinion one way or another regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

[READ COURT'S CLAIM CONSTRUCTIONS]

**Source**

AIPLA Model Jury Instruction 2.1; 37 C.F.R. § 1.152; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc) *aff'd,* 517 U.S. 370 (1996); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) (en banc); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is unnecessary in light of the Federal Circuit's holding in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008), that "a design is better represented by an illustration 'than it could be by any description'" (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). Apple has set forth its reasons why a separate verbal claim construction of the design patents-in-suit is neither needed nor appropriate.

---

[8] Samsung reserves the right to modify this instruction once the Court issues an order regarding claim construction.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 43**
**DESIGN PATENT INFRINGEMENT—GENERALLY**

2

**Apple's Proposed Instruction**

3

A design patent may be infringed directly or indirectly.  I will explain the difference shortly.

4

To prove infringement, Apple must persuade you that it is more likely than not that Samsung infringed the patent.

5

6

**Source**

7

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 8.1, 8.2.

8

**Samsung's Objection to Apple's Instruction**

9

10

This instruction is improper because it introduces again Apple's untimely allegation that there has been indirect infringement of any design patents.  (*See* Samsung's Objections to Apple's Proposed Preliminary Instruction No. 6)  This allegation is nowhere found in any pleading or in any interrogatory response designed to elicit Apple's infringement contentions for the design patents.  (*See* Dkt No. 1185-3 at 13-15.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 44
## DESIGN PATENTS—DIRECT INFRINGEMENT

**Apple's Proposed Instruction**

To determine direct infringement of a design patent, you must compare the overall appearances of the accused design and the claimed design.

Before doing so, you must familiarize yourself with the prior art admitted at trial.  In view of this prior art, if you find it more likely than not that the overall appearance of an accused Samsung design is substantially the same as the overall appearance of the claimed Apple design, you must find that Samsung infringed the patent.

You should consider any perceived similarities or differences between the patented and accused designs.  Minor differences should not prevent a finding of infringement.  The use of a mark or a label on an otherwise infringing design will not avoid infringement.

You may find the following guidelines helpful to your analysis:

1.  When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

2.  If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

3.  If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

4.  You do not need to consider the size of the accused products if the asserted design patent does not specify the size of the design.

While these guidelines may be helpful, the test for infringement is whether the overall appearances of the accused design and the claimed design are substantially the same.  If they are, you must find infringement.  Whether Samsung knew its products infringed or even knew of Apple design patents does not matter in determining infringement.

**Source**

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 8.3.

**Authorities**

*Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK (Dkt. No. 452) (N.D. Cal. Dec. 2, 2011) at 10-11 ("Under the ordinary observer test, an accused device infringes upon a design patent if in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of the accused device and the patented design are substantially the same.  The designs are substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary observer], inducing him to purchase one supposing it to be the other.") (internal quotations omitted) (citing *Egyptian Goddess, Inc. v. Swisa, Unc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 8l U.S. 51l, 528 (1871)); *id.* at 11 ("This 'ordinary observer' test applies to the infringement, anticipation, and obviousness inquiries in the design patent context.") (citing *Int'l Seaway Trading Corp. v.*

*Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed. Cir. 2009)); *id.* ("In the infringement analysis, the focus should be on "the overall design" of the patent. For the anticipation and obviousness analysis, the focus should likewise be on "the overall design" of the patent as compared to the prior art.") (citing citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed. Cir. 2009)); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1304 (Fed. Cir. 2010) ("The proper comparison requires a side-by-side view of the drawings of the [asserted] design and the accused products."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126 (Fed. Cir. 1993) ("Design patent infringement *relates solely to the patented design, and does not require proof of unfair competition in the marketplace . . .*") (emphasis added); *Braun, Inc. v. Dynamics Corp.*, 975 F.2d 815, 821 (Fed. Cir. 1992) ("[n]othing in *Gorham* suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely *exclusively or primarily on a visual comparison* of the patented design, as well as the device that embodies the design, and the accused device's design.") (emphases added); *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995) (holding that the trial court recognized that "the patent never mentions color or size or material," "the court erroneously relied on these unclaimed features of Sun Hill's GIANT STUFF-A-PUMPKIN in finding infringement") (citation omitted).

## **Samsung's Objection to Apple's Instruction**

Apple's proposed instruction misstates Supreme Court and Federal Circuit law on the proper design patent infringement standard.  The seminal case on this issue, *Gorham Co. v. White*, 81 U.S. 511 (1871), laid out the precedential 53-word test for what constitutes design patent infringement.  As the Supreme Court held:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Apple, however, selectively extracts just 3 words out of the test — "substantially the same" — and then ignores how binding Supreme Court precedent has defined those words and how the Federal Circuit has interpreted them over the past 140 years.  In stark contrast, Samsung's Proposed Final Instruction No. 44.2, quotes verbatim controlling authority explaining what makes two designs "substantially the same," as well as what defines the hypothetical ordinary observer, as can be seen from the extensive list of authorities included with Samsung's instruction.  Apple may attempt to argue that statements about deceptive similarity do not apply in a patent-to-product comparison and that they only make sense in a product-to-product comparison, but the Federal Circuit consistently uses the language of deception irrespective of what type of comparison is being done.  Apple's proposed instruction ignores this critical part of the infringement test and instead focuses predominantly on statements in *Egyptian Goddess* about how to compare prior art to the designs at issue.  Apple's instruction leaves it up to the jury to decide infringement using a phrase that is undefined and completely untethered from binding law.  Indeed jurors could have a whole range of ideas about what "substantially the same" means that does not rise to the level of deceptive similarity.  Apple's proposed instruction is also wrong in its statement that "[m]inor differences should not prevent a finding of infringement."  The instruction nowhere states what a "minor difference" is.  Under the law, when dealing with Apple's design patents, some of which cover only one surface of a hand-held electronic device in a field crowded with prior art, minor differences very well might be significant to the hypothetical ordinary observer.  *See Egyptian Goddess*, 543 F.3d at 678 ("Where there are many examples of similar prior art designs, as in a case such as *Whitman Saddle* [*Co.*, 148 U.S. 674 (1893)],

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.").  Apple's instruction also misleadingly states that "[t]he use of a mark or a label on an otherwise infringing design will not avoid infringement," implying that logos should be ignored for any purpose.  This Court has noted that "a logo's placement can be considered when logo placement and appearance are part of the style claimed in the patented designs."  Dkt No. 452 at 25 (citing *Revision Military, Inc. v. Balboa Mfg. Co.*, 2011 WL 3875624, at *16 n.16 (D. Vt. Aug. 31, 2011).  The Court went on to say that "additional writing on the front face of the Samsung phone alters the minimalist style conveyed in the overall design disclosed by the D'677 and D'087 patents."  *Id.* at 26.  An appropriate instruction in this case needs to take into account that the presence of logos on the Samsung phones can do more in the eye of the ordinary observer than just communicate source.  Regardless of what the words say, they are an integral part of the surface ornamentation on a surface with very limited real estate.

1  **Samsung's Proposed Instruction**

2  Questions _____ through _____ of the Verdict Form read as follows: [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

3

4  I will now instruct you as to the rules you must follow when deciding whether Apple has proven that one or more of the Samsung entities has infringed the D'677, D'087, D'305 and/or D'889 design patents.

5

6  Patent law gives the owner of a valid design patent the right to exclude others from applying the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or selling or offering to sell any article of manufacture to which such design or colorable imitation has been applied within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the design patent owner's permission infringes the patent. Here, Apple alleges that the following devices infringe the D'677, D'087, D'305 and D'889 design patents:

7

8

9

| **Design Patent(s)** | **Device(s) Accused of Infringing** |
|---|---|
| D'677 | Samsung Galaxy Ace (SHW-M240S); Samsung Infuse 4G (SGH-1997); Samsung Galaxy S i9000 (SHW-M1105); Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize); Samsung Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959). |
| D'087 | Samsung Galaxy Ace (SHW-M240S); Samsung Infuse 4G (SGH-1997); Samsung Galaxy S i9000 (SHW-M1105); Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize); Samsung Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959). |
| D'305 | Captivate; Continuum; Droid Charge; Epic 4G; Fascinate; Gem; Galaxy S i9000; Galaxy S 4G; Indulge; Infuse 4G; Mesmerize; Showcase; Galaxy S Showcase i500; and Vibrant. |
| D'889 | Galaxy Tab 10.1 |

10

11

12

13

14

15

16

17

18

19

20

21  Each of the Samsung entities deny that any of these devices infringe any Apple design patent. Apple bears the burden of proving by a preponderance of the evidence its allegations that each device infringes each separate patent. Therefore, you the jury must determine infringement for each patent separately, considering each individual device separately. You must not consider the patents or devices in groups to determine infringement on that basis.

22

23

24  **Source**

25  AIPLA Model Patent Jury Instructions 3.0; 35 U.S.C. § 289; *Crocs, Inc. v. International Trade Com'n*, 598 F.3d 1294, 1304-06 (Fed. Cir. 2010); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116-17 (Fed. Cir. 1998); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993).

26

27

28

1    **Apple's Objection to Samsung's Instruction**

2    Samsung's proposed instruction is unnecessary because an overview of Apple's infringement
     contentions has been more succinctly provided in Apple's proposed instructions.  Samsung's
3    proposed instruction is also objectionable because it omits from its list of acts of infringement
     making, using, or importing into the U.S.  Further, its use of the term "any colorable imitation,"
4    without any definition or explanation, is likely to be confusing.  In addition, the instruction
     misstates Apple's infringement contentions by omitting the five Galaxy S II phones from the
5    accused product list for the D'677 and D'087 patents, and incorrectly listing the Fascinate,
     Mesmerize, Showcase, and Galaxy Ace as accused products under the D'087 patent.  Samsung
6    has also omitted the Tab 10.1 LTE from the list of products accused under the D'889 patent.
     Samsung's proposed instruction also adds the factual assertion that "[e]ach of the Samsung
7    entities deny that any of these devices infringe any Apple design patent," and asserts that patents
     or devices cannot be considered in groups for purposes of assessing infringement.  This is wrong.
8    *See TiVo, Inc.* v. *EchoStar Communications Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008)
     (permissible to have "expert testifying in detail about a particular device and then stating that the
9    same analysis applies to other allegedly infringing devices that operate similarly, without
     discussing each type of device in detail"); *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1350 (Fed. Cir.
10   2010) (court accepted 52 models as representative of all semiconductor packages at issue because
     expert had offered "specific and substantial evidence" about why all other packages would
11   behave similarly); *Intellectual Sci. & Tech., Inc. v. Sony Electronics, Inc.*, 589 F.3d 1179, 1181
     (Fed. Cir. 2009) (analyzing all patents using categories created by the district court and
12   representative products that plaintiffs provided pursuant to district court order).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 44.1**
**DESIGN PATENT DIRECT INFRINGEMENT – LIABILITY MUST BE PROVED FOR**
**EACH ENTITY SEPARATELY**

### Samsung's Proposed Instruction

In this case, Apple asserts that Samsung Electronics America, Samsung Telecommunications America, and Samsung Electronics Company have each directly infringed the D'677, D'087, D'305 and D'889 design patents. Even if you determine that a particular device infringes one of the patents, you may not find any of the Samsung entities liable for direct infringement unless Apple proves by a preponderance of the evidence that the particular Samsung entity has, in the United States, made, used, offered to sell, or sold the device. You must determine this liability separately for each Samsung entity and each device.

### Source

AIPLA Model Patent Jury Instructions, 3.1; 35 U.S.C. § 289; *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-32 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988); *Crocs, Inc. v. International Trade Com'n*, 598 F.3d 1294, 1304-06 (Fed. Cir. 2010).

### Samsung's Statement in Support

This simple instruction states that liability for direct infringement has to be determined separately for each Samsung entity. It also states the burden of proof. This instruction is necessary to help the jury from being confused about whether it is supposed to decide liability for all the Samsung entities as a group or individually. This instruction is based on AIPLA Model Patent Jury Instructions, 3.1.

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction incorrectly omits that Samsung may be liable for infringement if it imports into the U.S. an infringing device. *See* 35 U.S.C. § 271 (a). Apple's instruction No. 44 accurately summarizes the infringement issues and accurately reflects the law. There is also no dispute here, except in limited circumstances, as to whether the liability of the Samsung entities stands or falls together. When it is necessary to make a distinction, as in the case of inducement, the instructions should reflect that. But there is no reason to confuse the jury at this point with this concept.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 44.2
DESIGN PATENT DIRECT INFRINGEMENT—"ORDINARY OBSERVER TEST"**

2

3

**Samsung's Proposed Instruction**

Design patent infringement cannot be found unless the accused product creates an appearance deceptively similar to the claimed design.

4

5

To determine whether an accused product is deceptively similar to a patented design, you must use the "ordinary observer test."  The ordinary observer test provides that:

6

7

> If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

8

9

Said another way, two designs are substantially the same if their resemblance is deceptive to the extent that it would induce an ordinary observer, giving such attention as a purchaser usually gives, to purchase an article having one design supposing it to be the other.

10

11

There are some characteristics of this ordinary observer that you must take into account  in determining whether two designs are deceptively similar.  First, the ordinary observer is someone who purchases smartphones and/or tablet computers and who gives the same level of attention to those products as a normal purchaser would give in that purchasing context.  You must assume that the ordinary observer is capable of making a reasonably discerning decision when observing the Samsung designs to determine whether they have an appearance that is deceptively similar to the patented designs.

12

13

14

15

Second, you must assume that the ordinary observer views the design patents and the accused products in light of earlier designs, known as "prior art."  When the differences between the design in the patent and the accused products are viewed in light of the prior art, the ordinary observer's attention will be drawn to those aspects of the patented design that are different from the prior art.  And when the patent design is close to the prior art designs, small differences between the patent design and the Samsung products are likely to be important to the ordinary observer.

16

17

18

19

**Source**

20

*Gorham Co. v. White*, 81 U.S. 511, 528 (1871); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008) (en banc) ("The question before this court under the standard we have set forth above is whether an ordinary observer, familiar with the prior art Falley and Nailco designs, would be deceived into believing the Swisa buffer is the same as the patented buffer."); *id.* at 683 ("In the language used by the Supreme Court in *Gorham*, 81 U.S. at 528, we hold that the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs, 'inducing him to purchase one supposing it to be the other.'"); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1296 (Fed. Cir. 2010) ("[I]nfringement cannot be found unless the accused product creates an appearance deceptively similar to the claimed design") (citing *Egyptian Goddess*); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001) ("Two designs are substantially the same if their resemblance is deceptive to the extent that it would induce an ordinary observer, giving such attention as a purchaser usually gives, to purchase an article having one design supposing it to be the other."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) ("Design patent infringement requires a showing that the accused design is substantially the same as the claimed design.  The criterion is deception of the ordinary observer, such that one design would be confused with the

21

22

23

24

25

26

27

28

other."); *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007) ("[T]he purchaser of the patented and accused designs in this case is the purchaser of one of a retail product's component parts that is thereafter assembled with other parts to make the retail product.  To hold that such a purchaser is the appropriate hypothetical ordinary observer fits squarely with our precedent that the ordinary observer is a person who is either a purchaser of, or sufficiently interested in, the item that displays the patented designs and who has the capability of making a reasonably discerning decision when observing the accused item's design whether the accused item is substantially the same as the item claimed in the design patent."); *id.* at 1324 ("Specifically, *the question to be addressed* in applying the ordinary observer test *is whether the ordinary observer would be deceived* by the accused design because it is substantially similar to the patented design.") (emphasis added); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998) ("The measure of infringement of a design patent is deception of the ordinary observer, when such person gives the design the attention usually given by a purchaser of the item bearing the design."); *id.* ("[T]he focus is on the actual product that is presented for purchase, and the ordinary purchaser of that product.  The accused tire, the Hercules Power Trac, is a truck tire.  The district court correctly invoked the ordinary trucker or fleet operator who purchases truck tires, as the person from whose viewpoint deceptive similarity to the '080 design is determined."); *Crocs, Inc. v. International Trade Com'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("To show infringement under the proper test, an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."); *id.* at 1306 ("These side-by-side comparisons of the '789 patent design and the accused products suggest that an ordinary observer, familiar with the prior art designs, would be deceived into believing the accused products are the same as the patented design.  In one comparison after another, the shoes appear nearly identical.  If the claimed design and the accused designs were arrayed in matching colors and mixed up randomly, this court is not confident that an ordinary observer could properly restore them to their original order without very careful and prolonged effort."); *OddzOn v. Just Toys*, 122 F.2d 1396, 1405 ("The patentee 'must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental.'") (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 825 (Fed. Cir. 1992)); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008) (en banc) ("When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical observer will be drawn to those aspects of the claimed design that differ from the prior art.  And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer."); *id.* at 678 ("[D]ifferences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.").

## Apple's Objection to Samsung's Instruction

Samsung's proposed instruction misstates the law and is misleading in several ways.  First, beginning with its first sentence, Samsung repeatedly redefines the infringement test from "substantially the same" or "substantially similar" to "deceptively similar."  Samsung relies virtually exclusively on one phrase in the "ordinary observer test" in *Gorham Co. v. White* 81 U.S. 511, 528 (1871), to attempt to create a separate requirement for deception.  Samsung then paraphrases and re-arranges the words from the quote repeatedly to suggest that there needs to be evidence of deception of a consumer purchasing a Samsung product for an Apple product in order to prove infringement.  This is incorrect.  The "such as to deceive" passage of *Gorham* is simply an elaboration on how similar two designs must be to be "substantially the same."  *See Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("the deception that arises is a result of similarities in the overall design").  No Federal Circuit case has required evidence of deception, and to suggest such a requirement to the jury would be error.  In fact, in *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126-34 (Fed. Cir. 1993), the

1   Federal Circuit found patent infringement despite holding that "the district court clearly erred in
2   holding that purchasers of [the accused] shoes would be likely to be confused or deceived or
    mistakenly think that they were buying the L.A. Gear athletic shoes, despite the substantial
3   similarity of overall design." Moreover, undue emphasis on the "deceive" term in *Gorham*
    carries the further risk of misleading the jury into thinking some kind of trickery or dishonesty is
4   required, which it is not. Finally, Samsung's emphasis on the "purchase" phrase in *Gorham* may
    mislead the jury away from focusing on and comparing the claimed *designs*. Indeed, Samsung's
5   statement in instruction No. 46.1 that "[t]he same standard of deceptive similarity that applied to
    infringement also applies to anticipation" underscores why Samsung's instruction is nonsensical.
6   An ordinary observer cannot "purchase" a prior art patent with respect to anticipation. Likewise,
    a determination of whether a patentee practices its own design patents would be nonsensical
7   under Samsung's formulation; a purchaser would not be deceived into purchasing an Apple
    product supposing it to be an Apple design. *See also Payless Shoesource, Inc. v. Reebok Int'l*
8   *Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) ("Proper application of the *Gorham* test requires that an
    accused design be compared to the claimed design, not to a commercial embodiment."). Second,
9   Samsung's extraneous "characteristics" of the ordinary observer are wrong. Samsung's
    instruction that ordinary observer "gives the same level of attention to those products as a normal
10  purchaser would give in that purchasing context" is not even supported by Samsung's own case
    citations, which refer to a purchaser or one "sufficiently interested in[] the item," and of giving
11  "the design the attention *usually* given …." *Arminak & Assocs., Inc. v. Saint-Gobain Calmar,*
    *Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007); *see also Goodyear Tire & Rubber Co. v. Hercules*
12  *Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998). Moreover, Samsung's
    instruction that the ordinary observer "is capable of making a reasonably discerning decision
13  when observing the Samsung designs to determine whether they have an appearance that is
    deceptively similar to the patented designs" inappropriately replaces the test of "substantially the
14  same" with the phrase "deceptively similar" in order once again to mislead the jury into thinking
    that actual deception is a required element for infringement. Third, Samsung's last paragraph is
15  incorrect and incomplete. It incorrectly emphasizes focusing on individual aspects of the
    designs, and not the overall impressions of the design. *See Egyptian Goddess, Inc. v. Swisa, Inc.*,
16  543 F.3d 665, 677 (Fed. Cir. 2008) (rejecting point of novelty test as it inappropriately "focused
    on whether the accused design has appropriated a single specified feature of the claimed design,
17  rather than on the proper inquiry, i.e., whether the accused design has appropriated the claimed
    design as a whole"). Moreover, Samsung's instruction is incomplete as it only accounts for
18  potential differences between the asserted and accused design and not similarities. For instance,
    Samsung's instruction fails to instruct that if the accused design includes "a feature of the
19  claimed design that departs conspicuously from the prior art," the design would more likely be
    infringing. *Id.* Apple's corresponding instruction, No. 44, is an accurate statement of the
20  ordinary observer test. It properly instructs the jury that they themselves, as ordinary observers,
    familiar with the prior art presented at trial, determine whether there is substantial similarity
21  between the overall impressions of the asserted design and the accused design. *Gorham*, 81 U.S.
    at 528; *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 821 (Fed. Cir. 1992 ) ("Nothing in
22  Gorham suggests that, in finding design patent infringement, a trier of fact may not as a matter of
    law rely exclusively or primarily on a visual comparison of the patented design, as well as the
23  device that embodies the design, and the accused device's design."). It also properly instructs
    the jury regarding the role of prior art in the infringement analysis. *See, e.g.*, *Egyptian Goddess*,
24  543 F.3d at 677-683. It also properly instructs that minor differences and labels are not enough
    to escape infringement. *See Crocs v. ITC*, 598 F.3d 1294, 1304 (Fed. Cir. 2010); *L.A. Gear*, 988
25  F.2d 1117 at 1126. It also properly instructs that size of the accused product is irrelevant if the
    asserted design does not specify a size. See *Sun Hill Indus. v. Easter Unlimited Inc.*, 48 F.3d
26  1193, 1196-97 (Fed. Cir. 1995).

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 44.3
DESIGN PATENT DIRECT INFRINGEMENT—COMPARISONS**

**Samsung's Proposed Instruction**

You have heard evidence about certain Apple products and models, such as the various generations of iPhones and iPads, as well as the 035 model.  If you determine that any of Apple's products or models embody an Apple patent design because they are substantially the same as that design and have no material distinctions, you may compare the product or model directly to the accused Samsung products.  This may facilitate your determination of whether an ordinary observer would be deceived.  However, if you determine that a particular Apple product or model does not embody a patented design, you may not compare it to the accused devices.

**Source**

*Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988) ("When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993) ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly, indeed, such comparison may facilitate application of Gorham criterion of whether an ordinary purchaser would be deceived into thinking that one were the other."); *Braun, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 820 & n.8 (Fed. Cir. 1992).

**Samsung's Statement in Support**

This instruction is based on Federal Circuit law governing when an embodiment can be used in the infringement analysis along with the patent.  Both parties will likely ask the jury to compare the accused devices directly to a claimed embodiment of an asserted patent.  Apple already did this at the preliminary injunction stage, claiming its iPad 2 was an embodiment of D'889.  *See* Dkt. No. 282 at 8 (under seal).  Samsung will want to present the 035 model to the jury for infringement comparison purposes.  Because the parties have a dispute as to which tangible items are legitimate embodiments of the patents, an instruction is necessary to enable the jurors to decide this factual dispute.  This is particularly important because determining whether a device or model is an embodiment of a patent can affect the whole infringement analysis.  *See Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988) ("When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices.").  It can also affect the damages calculation and whether lost profit damages should be awarded.  *See, e.g.*, *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F.Supp. 751, 819-820 (E.D.N.Y. 1995) (sales of commercial embodiment established demand for patented product as required for award of lost profit damages).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is improper because it would undermine the Court's claim construction decision on whether the 035 model has any effect on the scope of Apple's D'889 patent.  As the Court previously found, "the 035 Prototype is not a relevant comparison to establish infringement of the D'889 patent" because its photos were canceled from the D'889 application.  (Dkt. 1171 at 6.)  Instead, "the drawings in the D'889 Patent establish the claimed design."  *Id.*  This instruction is objectionable because it fails to emphasize that even if a product comparison may "facilitate" a decision, the proper comparison ultimately is to the patent drawings, not to the product embodiment.  Moreover, this instruction is further objectionable for

once again misstating the infringement test as <u>deception</u> rather than "substantially the same." Moreover, Samsung seeks to introduce not the photographs that were submitted with the D'889 patent application, but the physical 035 model itself, which was never submitted to the PTO. And because the 035 model has certain features not found in the D'889 patent figures, such as the gap around the front surface pointed to by Samsung and a larger physical size compared to the iPad and Tab 10.1, its use in the infringement comparison would be misleading. *See Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988) ("When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both.").

**PROPOSED FINAL JURY INSTRUCTION NO. 44.4
DESIGN PATENT DIRECT INFRINGEMENT—ORNAMENTAL VERSUS
FUNCTIONAL FEATURES**

## Samsung's Proposed Instruction

Design patents do not protect the functional aspects of a design, only the ornamental aspects. Thus, to determine infringement under the ordinary observer test as I have instructed you on previously, you must consider only the ornamental design features of the design patents. You must not consider functional elements for purposes of comparing a design patent to an accused device in deciding infringement. Apple must prove by a preponderance of the evidence that the ordinary observer would be deceived by reason of the common features in the claimed and accused designs that are ornamental. The similarity cannot be a result of any functional features.

**[THE FOLLOWING ALTERNATIVE PARAGRAPH TO BE READ IN THE EVENT THE COURT ALLOWS THE JURY TO DETERMINE WHICH FEATURES ARE FUNCTIONAL FOR INFRINGEMENT PURPOSES.]**

Design patents do not protect the functional aspects of a design, only the ornamental aspects. Thus, to determine infringement under the ordinary observer test as I have instructed you on previously, you must consider only the ornamental design features of the design patents. You must not consider functional elements for purposes of comparing a design patent to an accused device in deciding infringement. A feature is functional if the feature is essential to the use or purpose of the article. A design feature also is functional if it affects the cost or quality of the article. If you determine that any of the design patents includes functional features, you cannot find infringement unless Apple proves by a preponderance of the evidence that the ordinary observer would be deceived by reason of the common features in the claimed and accused designs that are ornamental. The similarity cannot be a result of any functional features.

## Source

*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 825-26 (Fed. Cir. 1992) ("[Where] a design is composed of functional as well as ornamental features, to prove infringement a patent owner must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental."); *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010); *id.* at 1296 ("We also agree that, ignoring the functional elements of the tools, the two designs are indeed different."); *Amini Innovation Corp. v. Anthony Cal. Inc.*, 439 F.3d 1365, 1371-72 (Fed. Cir. 2006) ("An aspect is functional 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'"); *PHG Tech., Inc. v. St. John Co., Inc.*, 469 F.3d 1361, 1366 (Fed Cir. 2006); *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed Cir. 1997).

## Samsung's Statement in Support

This instruction is based on clear Federal Circuit law that functional features cannot be protected by a design patent. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010) ("[W]e have made clear that a design patent, unlike a utility patent, limits protection to the ornamental design of the article."). It properly informs the jury that they may not consider the similarity of functional features in the infringement analysis and that Apple bears the burden to prove that the ordinary observer would be deceived by similarities in their ornamental features alone, excluding the functional features. *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("The patentee 'must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental.'") (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 825 (Fed. Cir. 1992).) The

1  instruction is presented as a pair of alternatives depending on whether the Court determines
2  which elements are functional or asks the jury to do so.  In either case, it should instruct the jury
   on the significance of a feature or features being deemed functional because that determination
3  affects the entire infringement analysis.  In the event the Court asks the jury to determine which
   features are functional for the infringement analysis, the second alternate instruction includes
4  Federal Circuit language giving the guidelines for determining functionality.  *See, e.g., Amini*
   *Innovation Corp. v. Anthony Cal. Inc.*, 439 F.3d 1365, 1371-72 (Fed. Cir. 2006) ("An aspect is
5  functional if it is essential to the use or purpose of the article or if it affects the cost or quality of
   the article.") (quotation marks omitted).

6  **Apple's Objection to Samsung's Instruction**

7  Samsung's proposed instruction is unnecessary because a finding of functional elements for
   purposes of an infringement analysis is a claim construction issue for the Court.  *Richardson v.*
8  *Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).  The Court will decide the manner
   and language of its instruction to the jury.  Moreover, Samsung's instruction requires that the
9  ordinary observer be "deceived" for a finding of infringement, which is not the law.  (*See*
   Apple's objection to Samsung's proposed instruction No. 44.2.)  Samsung's alternative statement
10 relies on the unfounded proposition that the jury should decide what features are functional.
   *Richardson*, 597 F.3d at 1293.  The alternative statement also misstates the law of functionality.
11 As the Court noted previously, the standard is clear:  a design is functional only if it is "dictated
   by the functionality of the item."  (Dkt. No. 452 at 13.)  *See L.A. Gear, Inc., v. Shoe Co.*, 88 F.2d
12 1117 at 1123 (Fed. Cir. 1993) ("If the particular design is essential to the use of the article, it
   cannot be the subject of a design patent.").  While Samsung cites to *Amini Innovation Corp. v.*
13 *Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006), for an "affects the cost or quality
   of the article" standard of functionality, the *Amini* court was quoting the standard for trade dress
14 functionality, *see Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 (1982), and did not
   actually apply that standard in its analysis.  Samsung has not identified cases that actually apply
15 this "cost or quality" standard in the design patent context, or shown how that standard would be
   less stringent than the "dictated by function" standard consistently used for design patents.
16 Finally, to the extent the jury is to decide issues of functionality, the instruction must clearly
   delineate between what Samsung calls a "feature" – *e.g.*, a display screen – and the particular
17 design of such a feature – *e.g.*, the size, shape and location of a display screen.  For an element to
   be deemed "functional," it must be shown that the *particular design* of that element is dictated
18 by function; Samsung's proposed instruction fails to convey this requirement.

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 44.5
## DESIGN PATENT PROSECUTION HISTORY ESTOPPEL

**Samsung's Proposed Instruction**

You are instructed that the scope of a design patent can be limited by what is called "prosecution history estoppel." As you have already heard, during prosecution of a patent, the patent applicant often makes arguments and amendments in an attempt to convince the Patent Office examiner to grant the patent. The party seeking to obtain a patent may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims to obtain the patent. Once it has done so, it is not entitled to patent coverage that would be broad enough to cover the same feature that was used to distinguish the invention during the prosecution of the patent.

You are instructed that prosecution history estoppel applies in the following way:

Apple overcame a non-final obviousness rejection by the Patent Office during prosecution of the D'677 patent by claiming that the design disclosed the overall impression of a substantially continuous transparent surface on an electronic device and the substantially smooth or flush transition between the display screen and the rest of the front face of the device. The D'677 patent is not entitled to broader coverage than this description.

**Source**

AIPLA Model Jury Instruction 3.13; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 30-34 (1997); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) (en banc) ("[A] trial court can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim. Those include such matters as . . . assessing and describing the effect of any representations that may have been made in the course of the prosecution history,"); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124-25 (Fed. Cir. 1993) ("As for other patented inventions, reference is made to the prior art and the prosecution history in order to give appropriate weight to the factors that contributed to patentability.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is unnecessary because prosecution history estoppel may apply only to claim construction arguments or to limit the doctrine of equivalents for infringement. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733-34 (2002). But claim construction is an issue for the Court, and Apple is not alleging infringement by equivalents for its design patents-in-suit. Samsung's proposed instruction attempts to introduce a new argument that Samsung failed to advance during the design patent claim construction briefing, or anywhere else in this case. Even if an estoppel instruction were needed, Samsung's proposal is misguided. The prosecution statement cited by Samsung merely points out that two pieces of cited prior art fail to disclose a readily-apparent feature shown in the D'677 patent figures (its edge-to-edge transparent front surface). There was neither a narrowing amendment to avoid the art or any other evidence of a surrender of subject matter. *Festo*, 535 U.S. at 734 ("Prosecution history estoppel . . . precludes a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent.") (quoting *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1577-1578 (Fed. Cir. 1997)).

**PROPOSED FINAL JURY INSTRUCTION NO. 45**
**DESIGN PATENTS—INVALIDITY BURDEN OF PROOF**

**Apple's Proposed Instruction**

I will now instruct you on how to decide whether Samsung has proven that the Apple design patents are invalid.  For each patent, Samsung must persuade you by clear and convincing evidence that the design patent is invalid.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.*, No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

## — OR —

I will now instruct you on how to decide whether Samsung has proven that the Apple design patents are invalid.  For each patent, Samsung must persuade you by clear and convincing evidence that the design patent is invalid.

In deciding this issue, you may take into account that Samsung relies on certain prior art that was not considered by the Patent Office when it issued the asserted patents.  Although Samsung must persuade you of invalidity by clear and convincing evidence, prior art that was not considered by the Patent Office may carry more weight than prior art that was considered.  This may make Samsung's burden of showing that a patent is invalid easier to sustain.  Conversely, relying on prior art that was considered by the Patent Office may make Samsung's burden of showing invalidity by clear and convincing evidence more difficult to sustain.

**Source**

N.D. Cal. Model Patent Jury Instr. B.4.1; Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instructions 9.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.*, No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

1  **Samsung's Objection to Apple's Instruction**

2  Apple's first alternative instruction is not objectionable substantively, though Samsung's
Alternative to Apple's Proposed Final Instruction No. 45 immediately below provides a more

3  useful introduction to the invalidity instructions.  In the context of design patents, Apple's second
alternative instruction is likely to cause more confusion than assistance.  If there were just a few

4  prior art references that could be identified by name in the instruction as either disclosed to the
PTO or not, that might be useful, but where as here there are a number of patents, publications,

5  and devices, such an instruction will likely serve only to confuse the jury and obscure the
standard.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Once you have considered the issue of infringement, you must consider whether Apple's patents are valid. Samsung has asserted that each of the Apple design patents is invalid. This means that even if you find that a patent has been infringed, you must still determine whether that patent is actually a valid one. Simply because the US Patent Office issued a design patent does not mean that it is valid. Samsung must prove this by clear and convincing evidence.

An issued design patent may be found invalid where:

> (a) it is anticipated by a single earlier design;

> (b) it is obvious in view of one or more earlier designs;

> (c) it is indefinite, which means it is unclear;

> (d) it is the second patent on the same design, which is called double patenting; or

> (e) it is a functional design, not an ornamental one.

A design patent with multiple embodiments is invalid even if just one of the embodiment is found to be anticipated or obvious.

I will give you more guidance on each of these reasons.

**Source**

35 U.S.C. §§ 102, 103,171; *In re Klein*, 987 F.2d 1569, 1570 (Fed. Cir. 1993) (citing *Ex Parte Appeal No. 315-40*, 152 USPQ2d 71, 72 (TTAB 1965). See each section below for authority.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law in numerous important ways. First, it contradicts the presumption of validity and the heightened standard of proof for invalidity by stating that "[s]imply because the US Patent Office issued a design patent does not mean that it is valid." *See Microsoft Corp. v. i4i L.P.*, 131 S. Ct. 2238, 2242 (2011). Second, it unnecessarily provides an instruction on indefiniteness, which is an issue for the Court, *see Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (determining whether a patent complies with 35 U.S.C. § 112(2) presents a question of law "that is drawn from the court's performance of its duty as the construer of patent claims"), and then proceeds to misstate the indefiniteness standard as simply "unclear." *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1353 (Fed. Cir. 2003) (a claim is not indefinite unless "reasonable efforts at claim construction prove futile" and "it is 'insolubly ambiguous' and not 'amenable to construction'"). Third, it provides overly-simplified descriptions of the functionality and double patenting defenses. Moreover, Samsung refers to double patenting and indefiniteness defenses that are not in the case, having never been properly disclosed by Samsung in discovery. Fourth, the instruction is unclear in its statement that "Samsung must prove this by clear and convincing evidence;" exactly what "this" Samsung has to prove is uncertain. Finally, the instruction's shorthand statement of the test for obviousness is incorrect in suggesting that any combination of prior art may be used, without reference to the requirements for primary and secondary references.

**PROPOSED FINAL JURY INSTRUCTION NO. 46
DESIGN PATENTS—ANTICIPATION/STATUTORY BARS**

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any Evidence at Trial That Any Prior Art Reference Is Identical in All Material Respects to the Overall Visual Impression of Any Claimed Design—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

A design patent is invalid if it is not new or if the application for it was not filed by the required time.  Certain articles of manufacture, publications, patents, and public uses that predate the patented design, or the date that the application for it was filed, are called "prior art references."  A prior art reference that, to an ordinary observer, is identical in all material respects to the overall visual impression of the claimed design may invalidate a design patent.  Minor differences between the two do not necessarily preclude a finding of invalidity.

The Court has already found that Japanese Design Registration No. 1241638 cannot be used as a prior art reference to invalidate any Apple design patent on this basis.

Here are ways that Samsung can show that an Apple design patent is invalid because it was not new or because the application for it was not timely filed:

- If the claimed design was publicly known or publicly used in the United States before the date of invention of the claimed design;

- If the claimed design was patented or described in a printed publication anywhere in the world before the date of invention of the claimed design, or more than one year before the effective filing date of the patent;

- If the claimed design was described in another U.S. patent or published U.S. patent application that was based on an application filed before the date of invention of the claimed design;

- If the claimed design was openly used in the United States more than one year before the effective filing date of the patent; or

- If an article using the claimed design was sold or offered for sale in the United States more than one year before the effective filing date of the patent.

The parties agree that Apple's design patents have the following effective filing dates:

- D'305 patent:  June 23, 2007.

- D'087 patent:  January 5, 2007.

- D'677 patent:  January 5, 2007.

- D'889 patent:  March 17, 2004.

You must determine the dates of invention for the Apple design patents.  Invention is proven when the design is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a1, B.4.3a2; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.3, 9.4.

**Authorities**

35 U.S.C. § 102; *Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK (Dkt. No. 452) (N.D. Cal. Dec. 2, 2011) at 11 (the "ordinary observer" test applies to anticipation) (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed. Cir. 2009)); *id.* at 18 ("The test for anticipation is the same as the test for infringement, the only difference being that the court compares the patented design with the alleged anticipatory reference rather than with the accused infringing product."); *id.* at 10-11 ("Under the ordinary observer test, an accused device infringes upon a design patent if "'in the eye of an ordinary observer, giving such attention as a purchaser usually gives,'"the design of the accused device and the patented design are "'substantially the same.'" The designs are "'substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary observer], inducing him to purchase one supposing it to be the other.'"") (citing *Egyptian Goddess, Inc. v. Swisa, Unc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 8l U.S. 51l, 528 (1871)); *id.* at 11 ("For the anticipation and obviousness analysis, the focus should likewise be on 'the overall design' of the patent as compared to the prior art.") (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed. Cir. 2009)).

**Samsung's Objection to Apple's Instruction**

*Apple's proposed instruction misstates the law of anticipation.*  The Federal Circuit, following Supreme Court precedent, made clear that the same standard used for infringement applies to invalidity.  *Int'l Seaway Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) ("In light of Supreme Court precedent and our precedent holding that the same tests must be applied to infringement and anticipation, and our holding in *Egyptian Goddess* that the ordinary observer test is the sole test for infringement, we now conclude that the ordinary observer test must logically be the sole test for anticipation as well.").  Apple instead proposes that the instruction be based on an old holding that to anticipate, a prior art reference must be "identical in all material respects to the overall visual impression of the claimed design" to an ordinary observer.  This is a more stringent standard than Apple advocates on the infringement side and it is erroneous.
*Apple's proposed instruction misstates the law and facts regarding the JP'638 reference.*  First, the Federal Circuit did not say JP'638 "cannot be used" as an anticipating reference.  It said that because JP'638 is arched from the side view, the Federal Circuit found it distinguishable from D'087 and therefore rejected this Court's "ruling that the D'087 patent is *likely anticipated* by the '638 reference." *Apple v. Samsung*, 678 F.3d 1314, 1327 (Fed. Cir. 2012) (emphasis added).  The Federal Circuit made no ruling as a matter of fact or law that JP'638 *could not be used* to anticipate D'087, just that it considered it unlikely on that record.  Nor did it consider JP'638 in comparison to D'677.  Yet Apple would have the jury instructed that JP'638 cannot be used to anticipate "any Apple design patent."  That is wrong.  Second, even if the Federal Circuit had issued a ruling on whether JP'638 was a proper anticipating reference, such "decisions on preliminary injunctions are just that—preliminary."  *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1136 (9th Cir. 2004).  The Federal Circuit itself said that it's "mindful that all findings of fact and conclusions of law at the preliminary injunction stage are subject to change upon the ultimate trial on the merits." *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352,

1  1361 (Fed. Cir. 2002); *see also Balboa Instr., Inc. v. Gecko Electronique, Inc.*, 31 F. App'x 658,
2  661 (Fed. Cir. 2002); *N.A.A.C.P. v. North Hudson Regional Fire & Rescue*, 707 F. Supp. 2d 520,
   541 (D.N.J. 2010) ("[T]he findings of fact and conclusions of law in a ruling on a preliminary
3  injunction are naturally preliminary in nature and thus do not foreclose any findings or
   conclusions to the contrary in subsequent stages of the litigation").  This is good because the
4  Federal Circuit actually misread this Court's Dec. 2, 2011 order when it said that the Court
   "expressly refused to compare anything more than the front views of the patent in question and
5  the prior art reference."  *Apple v. Samsung*, at 1327.  This Court *did* take the side views into
   account, saying that "[t]here are some differences between the D'087 and the '638 patents: . . . the
6  side view discloses a slightly convex screen in the '638 patent, whereas the D'087 patent discloses
7  an entirely flat screen," but finding that these differences may be minor to an ordinary observer.
   Dkt 452 at 20.  The Court simply did not compare the slider portion of JP'638 to the patent, which
8  the Federal Circuit also did not do.  In any event, an instruction on JP'638 is contrary to law.  The
   jury should not be confused or cabined by the preliminary findings of either court.  Finally,
9  Samsung does not agree to the effective filing dates of the patents where they differ from the
   actual filing dates.  D'087 and D'677 both claim a priority date based on an earlier application,
10 and Samsung should have the right to challenge that priority date at trial.  The jury should be told
11 only that the parties agree on the actual filing dates of the patents. Samsung's Proposed Final
   Instruction Nos. 46.1-46.3 give the anticipation standard in smaller, more manageable chunks and
12 follow Federal Circuit law regarding the ordinary observer test as applied in the anticipation
   context.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Before I describe the different ways a design patent can be invalidated, I will instruct you about documents and things called "prior art." The term "prior art" will be used in several of the following instructions on invalidity. Prior art is also a term used in the infringement test for design patents because the ordinary observer is deemed to know about all the prior art and to view the accused products and Apple patents in light of the prior art. In general, prior art refers to early patents, designs, and devices that were made before Apple's designs were invented or filed with the Patent Office. That is, these are designs that were already known in the world before Apple's designs were ever made or submitted to become patents.

There are some rules that determine whether you may consider a particular early design as prior art. In some instances, you will need to look to the date the Apple design was made to determine if an early design is prior art; in other instances you will look to the filing date of the Apple design regardless of what the invention date is. Prior art includes any of the following items received into evidence during trial:

     1     Any design or product that was publicly known or used by others in the United States before the patented Apple design was made;

     2     Any design or product that was patented or described in a printed publication in the United States or a foreign country before the Apple design was made;

     3     Any issued United States patent or published United States patent application that was filed before the Apple design was made;

     4     Any publications, including patents and design registrations, that were published or issued more than one year before the filing date of the Apple patent;

     5     Any design or product that was in public use or on sale in the United States more than one year before the Apple patent was filed;

     6     Any design or product that was made by anyone before the named inventors created the patented design or product where the design or product was not abandoned, suppressed, or concealed.

An inventor's own earlier designs can be used as prior art to invalidate his or her later patents.

**Source**

35 U.S.C. § 102.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is part of a four instruction set that is unnecessarily long and complex. Rather than spread Section 102 defenses out amongst four instructions, Apple's proposed instruction No. 46 explains in one instruction all of the Section 102 grounds for anticipation. That is more efficient and juror-friendly. Samsung's instruction also misstates the law. First, its loose description of prior art as "early patents, designs, and devices that were *made* before Apple's designs were invented or filed with the Patent Office" gives the erroneous impression that no publication or public use is required. "[D]esigns that were already known in the world" gives a similarly erroneous impression about the requirement for publication or use in the U.S. Second, contrary to Samsung's proposed instruction, "[a]n inventor's own earlier designs" *cannot* be "used as prior art to invalidate his or her later patents" unless their earlier

disclosure is a statutory bar.  *See Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1355-56 (Fed. Cir. 2003) ("One's own work may not be considered prior art in the absence of a statutory basis."); *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982) ("[d]isclosure to the public of one's own work constitutes a bar to the grant of a patent . . . only when the disclosure occurred more than one year prior to the date of the application").  Similarly, Samsung's proposed sub-instructions (1)-(3) ignore the fact that only prior art "by another" can qualify as prior art under 35 U.S.C. 102(a) and (e), and erroneously sweep in "[a]ny design or product" and "[a]ny issued United States patent or published United States patent application."  Third, Samsung's sub-instruction (6) misstates 35 U.S.C. 102(g)(2), which requires that a prior design be "made *in this country by another inventor* who had not abandoned, suppressed, or concealed it."  (Emphasis added.)  Sub-instruction (6) also entirely ignores section 102(g)'s guidance on the role of conception, reduction to practice, and reasonable diligence in determining priority of invention. In fact, this Samsung instruction is not relevant to the case and should not be given, where no allegation has been made that Apple's designs were in fact invented earlier by another.

**PROPOSED FINAL JURY INSTRUCTION NO. 46.1**
**ANTICIPATION – A SINGLE REFERENCE OR A SINGLE PRODUCT**

**Samsung's Proposed Instruction**

Now that you have been instructed about prior art, I'll explain how it can be used to determine whether a design patent is invalid.  In basic terms, the design must be new and novel in light of the prior art.  A design that is not new or novel in light of prior art is said to be "anticipated by the prior art."  A design that is "anticipated" is not entitled to patent protection.

The same standard of deceptive similarity that applied to infringement also applies to anticipation.  Therefore, to find that an Apple design patent is anticipated, Samsung must prove by clear and convincing evidence that a single prior art reference is so similar in appearance to the Apple patent that an ordinary observer would be deceived into believing they were the same design.

**Source**

Adapted from AIPLA Model Patent Jury Instructions, 6.0; 35 U.S.C. §§ 102,171; *Gorham Co. v. White*, 81 U.S. 511, 526-27 (1871); *Int'l Seaway Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) ("In light of Supreme Court precedent and our precedent holding that the same tests must be applied to infringement and anticipation, and our holding in *Egyptian Goddess* that the ordinary observer test is the sole test for infringement, we now conclude that the ordinary observer test must logically be the sole test for anticipation as well.  In doing so, we will prevent an inconsistency from developing between the infringement and anticipation analyses, and we will continue our well-established practice of maintaining identical tests for infringement and anticipation.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law and is misleading in several ways.  First, it states that a design "must be new and novel," which inappropriately suggests that "newness" and "novelty" are distinct requirements, when in fact the statute requires "new."  Moreover, it misleadingly states that "a design that is not new or novel in light of prior art is said to be 'anticipated by the prior art'" without explaining that anticipation can only be by a *single* item of prior art.  *See* 35 U.S.C. § 102; 35 U.S.C. § 171.  Finally, Samsung once again injects into its instruction a purported requirement of deception.  Apple's corresponding instruction, No. 46, is an accurate and concise statement of the test for anticipation including the statutory bars, tracking the N.D. Cal. Model Patent Jury Instructions.  It also correctly states the test for anticipation without inappropriately suggesting a requirement of deception.  *See Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461 (Fed. Cir. 1997) ("The publication must show the same subject matter as that of the patent, and must be identical in all material respects.").  Also, Samsung's proposed instruction is part of a four instruction set that is unnecessarily long and complex.  Rather than spread Section 102 defenses out amongst four instructions, Apple's proposed instruction No. 46 explains in one instruction all of the Section 102 grounds for anticipation.  That is more efficient and juror-friendly.

**PROPOSED FINAL JURY INSTRUCTION NO. 46.2**
**DESIGN PATENT ANTICIPATION – PUBLIC USE AND PUBLIC DISPLAY**

**Samsung's Proposed Instruction**

A design patent is invalid if, under the deceptive similarity test I have described, the same or substantially the same design was in public use or on public display in this country prior to the time the patented design was invented. In determining whether a design was in public use or on public display, you must consider the activities that occurred in public and how much access and knowledge the public had of the display or use. A public display of a design at a trade show, for example, is generally considered a public use.

**Source**

35 U.S.C. §102(a) & (b); *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004); *Continental Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1079 (Fed. Cir. 1998); *Fitzgerald v. Arbib*, 268 F.2d 763 (C.C.P.A. 1959); *In re Mann*, 861 F.2d 1581, 1581 (Fed. Cir. 1988); *see also, Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1058-59 (Fed. Cir. 1996); *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971-72 (Fed. Cir. 1984).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is part of a four instruction set that is unnecessarily long and complex. Rather than spread Section 102 defenses out amongst four instructions, Apple's proposed instruction No. 46 explains in one instruction all of the Section 102 grounds for anticipation. That is more efficient and juror-friendly. Samsung's instruction also is contrary to law because it refers to the "deceptive similarity" test, which, as discussed in detail in Apple's objection to Samsung's proposed instruction Nos. 44.2, 46.1, and 46.2, is not the test for design patent infringement or anticipation. *See also Int'l Seaway Trading*, 589 F.3d at 1340 ("we now conclude that the ordinary observer test must logically be the sole test for anticipation as well"). Samsung's instruction also fails to mention the requirement for adequate, enabling disclosure of the design in the publication. *In re Paulsen*, 30 F.3d 1475, 1478 (Fed. Cir. 1994) ("the reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention"). Samsung's instruction also erroneously concludes, without consideration of individual circumstances (such as whether the complete design was displayed) and as a matter of law, that "public display of a design at a trade show" is generally considered a public use.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 46.3**
**ANTICIPATION – DATE OF INVENTION**

2

**Samsung's Proposed Instruction**

3

4

Since the date of invention of the Apple design patents is in dispute in this case, you must determine whether Apple has proved the dates its designs were invented. If you determine that Apple has not proved when its designs were invented, you must assume that it was not until the filing date of the patents.

5

6

**Source**

7

N.D. Cal. Model Patent Instructions, B.4.3.a1; *Continental Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1077-79 (Fed. Cir. 1998) ("[D]esign inventions are reduced to practice as soon as an embodiment is constructed"); *Mas v. Root*, 54 F.2d 435, 435 (C.C.P.A. 1932).

8

9

10

**Apple's Objection to Samsung's Instruction**

11

Samsung's proposed instruction misstates the law of priority. Samsung's instruction that "[i]f you determine that Apple has not proved when its designs were invented, you must assume that it was not until the filing date of the patents" ignores that "the date of invention is presumed to be the *filing date of the parent application*" if an earlier invention date is not proven. *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000) (emphasis added). This is important as two of the asserted designs (US D618,677 and USD593,087) claim priority to earlier applications filed on January 5, 2007. Also, Samsung's proposed instruction is part of a four instruction set that is unnecessarily long and complex. Rather than spread Section 102 defenses out amongst four instructions, Apple's proposed instruction No. 46 explains in one instruction all of the Section 102 grounds for anticipation. That is more efficient and juror-friendly.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 47**
**DESIGN PATENTS—OBVIOUSNESS**

2

**Apple's Proposed Instruction**

3

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any**
**Evidence at Trial That Any Primary/Secondary References Yield A Design That Has Same**
**Overall Visual Impression As Any Claimed Design—Instruction Provided In The Event**
**That Court Decides Instruction Must Be Provided]**

4

5

6

A design patent claim is invalid if the claimed design would have been obvious to a designer of
ordinary skill in the field at the time the design was made, even if an ordinary observer would not
find the design to be substantially the same as a single prior art reference.

7

8

The ultimate conclusion of whether a claimed design is obvious should be based upon your
determination of several factual decisions.

9

First, you must decide the level of ordinary skill in the field of the patent at the time the claimed
design was made.  In deciding this, you should consider all the evidence from trial, including:

10

11

        (1)      the levels of education and experience of persons designing articles in the field;

12

        (2)      the types of problems encountered in designing articles in the field; and

13

        (3)      the sophistication of the field.

14

Second, you must decide the scope and content of the prior art.

15

Third, you must consider whether Samsung has identified a "primary" prior art reference.  A
"primary" reference must depict an actual design which, to a designer of ordinary skill in the
field of the patent, is basically the same as the claimed design.  The Court has decided, and I am
therefore instructing you, that you may not use the Fidler tablet as a primary reference against
the D'889 patent.

16

17

18

You must then consider whether Samsung has identified a "secondary" prior art reference that a
designer of ordinary skill would use to modify the primary reference.  A "secondary" reference
must be so visually related to the primary reference that the appearance of certain ornamental
features in the reference would suggest to the designer of ordinary skill the application of those
features to the primary reference.  The Court has decided, and I am therefore instructing you, that
you may not use the TC1000 tablet as a secondary reference against the D'889 patent.

19

20

21

After making these decisions, you then need to determine if the primary reference alone or in
combination with one or more secondary references results in a design that, in the eyes of an
ordinary observer, has substantially the same overall visual appearance as the claimed design in
the patent.  You must perform this analysis for each Apple design patent that Samsung claims was
obvious.

22

23

24

For each Apple patent, if you conclude that the primary reference alone or combined with any
secondary references does not result in a design with substantially the same overall visual
appearance in the eyes of an ordinary observer as the claimed design, your analysis can stop
because the claimed design cannot be considered obvious in light of the identified prior art.  You
must conclude that any such Apple design patent is not invalid on obviousness grounds.

25

26

27

Finally, if you do not conclude that the primary reference alone or in combination with any
secondary references does not result in a design with substantially the same overall visual

28

appearance as the claimed design in the eyes of an ordinary observer, you should consider any of the following factors that you find have been shown by the evidence.  These factors may indicate that the claimed design would not have been obvious at the time it was made:

> (1)   commercial success of products covered by the claimed design due to the appearance of the claimed design;

> (2)   copying of the claimed design by others;

> (3)   acceptance by others of the claimed design as shown by praise from others in the field; and

> (4)   whether others expressed surprise or disbelief regarding the claimed design.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on obviousness or non-obviousness is up to you.

In deciding whether the claimed design was obvious, please keep in mind that a design with several features is not obvious merely because each individual feature was present in prior art designs.  You must always be careful not to determine obviousness using the benefit of hindsight.  Many truly novel and non-obvious designs might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed design was made and should not consider what is known today or what is learned from the teaching of the patent.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3b; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.7- 9.10; Federal Circuit Bar Association Model Patent Jury Instr. 4.3c.

**Authorities**

35 U.S.C.§ 103; *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329, 1332 (Fed. Cir. 2012) (obviousness analysis requires "a two step process" and must focus on visual appearance, not the "general concept" of a design); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) ("[T]he ultimate inquiry . . . is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved."); *id.* at 103, quoting *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) ("[O]ne must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'"); *id.*, quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996) ("[S]econdary references may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other.'"); *see also Apple Inc.*, 678 F.3d at 1329-1332 (applying quoted language from *Durling*, *In re Rosen*, and *In re Borden*).

**<u>Samsung's Objection to Apple's Instruction</u>**

Apple's proposed instruction on obviousness misstates the law.  There is no requirement that the designs must look basically the same "to a designer of ordinary skill in the field of the patent," as Apple's instruction reads.  *See Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).  The role of the designer skilled in the art comes into play when deciding to combine references, not in observing whether two designs have design characteristics that are basically the same.  Also, as explained more fully in Apple's prior proposed instruction regarding

anticipation, the Federal Circuit's decisions at the preliminary injunction phase are not binding on the trier of fact at a trial on the merits.  *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128 (9th Cir. 2004); *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002).  The jury should therefore not be instructed in any way regarding specific prior art references that were commented on in the preliminary injunction phase, including the 1994 Fidler tablet.  This is particularly important here where Apple has simply called it the "Fidler tablet" which could refer to a number of devices or images that were not a part of the Federal Circuit's opinion.  Likewise, the Federal Circuit opinion does not compel or support Apple's instruction that "you may not use the TC1000 tablet as a secondary reference against the D'889 patent."  The Federal Circuit was only of the opinion that the TC1000 was not a proper secondary reference *for the 1994 Fidler tablet*.  It never stated that the TC1000 could not serve as a secondary reference for any other references, and it also never considered whether it could be a primary reference in its own right.  Importantly, the Federal Circuit did not have the actual prior art devices, it had only pictures of them, unlike the jury.  Nor did the preliminary injunction record include the physical 035 model, which Apple has admitted is an embodiment of the D'889 and is therefore highly relevant for comparing to other devices under the ordinary observer test.  These are just several examples to show that the Federal Circuit did not have all the relevant evidence before it that will be available to the jury.  Apple's instructions therefore improperly try to interfere with the jury's ability to evaluate *all* the evidence on its own as the ultimate trier of fact, free from the influence of non-binding rulings made at the preliminary injunction stage.  Apple's secondary considerations also fail to include important disclaimers about their relevance and significance, unlike Samsung's Proposed Final Instruction No. 47.4.  Samsung's proposed alternative instructions on obviousness immediately below avoid these serious pitfalls.  The first alternative, Samsung's Proposed Final Instruction No. 47.1, follows the language of the Supreme Court in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S.Ct. 1727,1742-43 (2007).  The Federal Circuit noted in *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009) that "it is not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of *KSR*."  *Id.* at 1385.  *KSR* should be followed.  As an alternative, Samsung's Proposed Final Instruction No. 47.2 hews to the primary/secondary reference framework of *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996).  Samsung's Proposed Final Instruction No. 47.3 identifies for the jury the qualifications of a designer of ordinary skill in the art.

## PROPOSED FINAL JURY INSTRUCTION NO. 47.1
## DESIGN PATENT OBVIOUSNESS

**Samsung's Proposed Instruction**

Even if a design is not anticipated by a single reference, it may still be invalid because it was an obvious design at the time it was made.  Design patents are not valid when the design is an obvious one.  This means that it would have been obvious for a designer of skill in the field to combine or modify earlier designs to arrive at the design in the patent.

In deciding whether any design is invalid because it was obvious at the time it was made, you should analyze whether there are any relevant differences between the prior art and the design from the view of a person of ordinary skill in the art at the time of the invention.

You do not need to look for precise teachings in the prior art directed to the subject matter of the claimed invention.  You may take into account the creative steps and inferences that a person of ordinary skill in the art would have employed when viewing the prior art at the time of the invention.  For example, if the claimed invention combines elements already known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed design, this evidence would make it more likely that the claimed invention was obvious.

**Source**

AIPLA Model Jury Instruction 7.2; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1567-68 (Fed. Cir. 1983); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384-85 (Fed. Cir. 2009) ("Design patents, like utility patents, must meet the nonobviousness requirement of 35 U.S.C. §103, and it is not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of *KSR*."); *Smith v. Whitman Saddle Co.*, 148 U.S. 674, 681-82, 13 S.Ct. 768, 770-71, 37 L.Ed. 606 (1893) ("The presence or the absence of the central open slot was not material, and we do not think that the addition of a known cantle to a known saddle, in view of the fact that such use of the cantle was common, in itself involved genius or invention, or produced a patentable design… The shape of the front end being old, the sharp drop of the pommel at the rear seems to constitute what was new and to be material. . . . If, therefore, this drop were material to the design, and rendered it patentable as a complete and integral whole, there was no infringement.").

1

2

**Apple's Objection to Samsung's Instruction**

3    Samsung's proposed instruction is unnecessary because the full, correct legal standard for
     obviousness is set forth in Apple's instruction No. 47.  Much of Samsung's proposed instruction

4    is inapplicable verbiage directed to utility patents, as Samsung admits in its footnote to No. 47.2.
     For example, the instruction refers to combinations of known elements that "yielded results that

5    were predictable to a person of ordinary skill in the art."  This language relates to functional
     motivations and is erroneous in the design patent context, where the focus in the obviousness

6    analysis must be on ornamental appearances, not uses, and the designer of ordinary skill in the
     art must find a suggestion to combine primary and secondary references in the visual similarity

7    of the prior art designs.  *See In re Harvey*, 12 F.3d 1061, 1063 (Fed Cir. 1993); *Apple Inc. v.
     Samsung Elecs. Co.*, No. 2012-1105, 2012 U.S. App. LEXIS 9720, at *36-37 (Fed. Cir. May 14,

8    2012).  Moreover, Apple's proposed instruction No. 47 is more appropriate as it provides
     sequenced guidance for the design patent obviousness analysis in a single instruction, rather than
     multiple, out of sequence instructions proposed by Samsung.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 47.2
DESIGN PATENT OBVIOUSNESS – PRIMARY AND SECONDARY REFERENCES**

**Samsung's Proposed Instruction**[9]

Even if a design is not anticipated by a single reference, it may still be invalid because it was an obvious design at the time it was made.  Design patents are not valid when the design is an obvious one.  This means that it would have been obvious for a designer of skill in the field to combine or modify earlier designs to arrive at the design in the patent.

There are several steps you have to take in determining that a design patent is invalid because it is obvious.

First, you have to find that there is a prior art reference that has basically the same design as the one in the patent.  This is called a primary reference.  The primary reference does not have to be deceptively similar to the design in the patent, since that is a higher standard.

If you find that there is a primary reference for the patent, the next step is to find one or more secondary references that are similar in appearance to the primary reference such that the appearance of ornamental features in one would suggest application of those features to the other.  If you find that there are one or more such secondary references, the features of those references can be used to modify the primary reference to look more like the patented design.

Finally, you must decide whether this combined obviousness reference is substantially the same as the design in the patent using the standard of deceptive similarity you used for infringement and anticipation.

Samsung must prove obviousness by clear and convincing evidence.

**Source**

*In re Rosen*, 673 F.2d 388, 390 (C.C.P.A. 1982); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) ("More specifically, the inquiry is whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design."); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384-85 (Fed. Cir. 2009) ("Design patents, like utility patents, must meet the nonobviousness requirement of 35 U.S.C. §103, and it is not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of KSR."); *Int'l Seaway Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) ("For design patents, the role of one skilled in the art in the obviousness context lies only in determining whether to combine earlier references to arrive at a single piece of art for comparison with the potential design or to modify a single prior art reference.  Once that piece of prior art has been constructed, obviousness, like anticipation, requires application of the ordinary observer test, not the view of one skilled in the art.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction contains a number of misstatements regarding the law and should be rejected in favor of Apple's instruction No. 47, which covers the same ground.  First, Samsung omits the requirement that a primary reference must appear "basically the same" in the

---

[9] Samsung offers this instruction on obviousness as an alternative in the event the prior obviousness instruction based on *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727 (2007), is not accepted by the Court.

1 | eyes of the designer of ordinary skill in the art. *Int'l Seaway Trading Corp. v. Walgreens Corp.*,
2 | 589 F.3d 1233, 1240 (Fed. Cir. 2009). Second, Samsung repeatedly refers to "deceptive" similarity, which is not the correct test for infringement or anticipation. (*See* Apple objection to Samsung's proposed instruction No. 46.1.) Third, Samsung's instruction mischaracterizes the
3 | requisite visual similarity between primary and secondary references by dropping the word "so" from the test, such that it misleadingly reads "secondary references that are similar in appearance
4 | to the primary reference such that the appearance of ornamental features in one would suggest application of those features to the other." *Cf. In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)
5 | (primary and secondary references must be "so related that the appearance of certain ornamental features in one would suggest the application of those features to the other"). Moreover, Apple's
6 | proposed instruction No. 47 is more appropriate as it provides sequenced guidance for the design patent obviousness analysis in a single instruction, rather than multiple, out of sequence
7 | instructions proposed by Samsung.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 47.3**
**DESIGNER OF ORDINARY SKILL IN THE ART**

**Samsung's Proposed Instruction**

The determination of whether a claimed design is obvious is based on the perspective of the ordinary designer skilled in the art. The ordinary designer skilled in the art is presumed to be familiar with all of the prior art designs that you have determined to be reasonably relevant.

A designer of ordinary skill in the art is a designer of ordinary capabilities in the field of electronic products. Such a person would have an undergraduate degree in a discipline such as engineering or industrial design, and about 1-2 years of experience in designing electronic devices. Alternatively, a designer in academia who taught industrial design students the design of electronic devices would also be identified as a designer skilled in the art.

**Source**

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727 (2007): *Titan Tire Corp v. Case New Holland, Inc.*, 566 F.3d 1372, 1380-81 (Fed. Cir. 2009); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction attempts to usurp the jury's fact finding regarding the level of ordinary skill. *Graham v. John Deere*, 383 U.S. 1, 17 (1966) ("the level of ordinary skill in the pertinent art" is one of "several basic factual inquiries" relating to obviousness). Moreover, Samsung's instruction misstates the law when it says that "[t]he determination of whether a claimed design is obvious is based on the perspective of the ordinary designer skilled in the art." As correctly set forth in Apple's instruction No. 47, the obviousness inquiry involves both the ordinary designer (in identifying primary and secondary references) and the ordinary observer (in the final step of comparing the combined reference with the patented design). *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41 (Fed Cir. 2009). Apple also contests the standard set forth by Samsung: a degree in engineering would not qualify one as a designer of ordinary skill, nor would merely serving in academia. Moreover, Apple's proposed instruction No. 47 is more appropriate as it provides sequenced guidance for the design patent obviousness analysis in a single instruction, rather than multiple, out of sequence instructions proposed by Samsung.

**PROPOSED FINAL JURY INSTRUCTION NO. 47.4**
**DESIGN PATENT OBVIOUSNESS – SECONDARY FACTORS INDICATING**
**NONOBVIOUSNESS**

### Samsung's Proposed Instruction

Before deciding the issue of obviousness, you must consider other factors that might show that the designs were not obvious despite the prior art. You may only consider those factors that Apple has established through evidence admitted at trial. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the claimed design as a whole. Here are the questions you should ask:

      1      If there were products embodying the claimed designs that were commercially successful, was that success due to the claimed design, or was the success instead due to other factors such as the technology and usefulness of the Apple devices, advertising, promotion, salesmanship, the Apple ecosystem, or any other features of the devices besides the design claimed in the design patents?

      2      Was there a long felt need for the specific look or claimed design of the Apple patents?

      3      Did others try, but fail to create the claimed design?

      4      Did others copy the claimed design? Where parties have a practice of marketing very similar products, however, evidence of copying is not a strong indicator of nonobviousness, but rather a measure of the extent to which parties in the market typically follow developments by their competitors, whether patented or not.

      5      Did the claimed design achieve an unexpectedly superior appearance over the closest prior art? Remember again that this refers only to the ornamental appearance of the design, not its functional features.

      6      Did others in the field praise the claimed design or express admiration for the claimed design? For patents that do not claim the entire design of the device, any praise must be directed to the specific designs that are claimed in the patent.

      7      Did others accept licenses under the D'667, D'087, D'035 or D'889 design patents?

**Source**

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966); *Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988); *see also Jore Corp. v. Kouvato, Inc.*, 117 Fed. Appx. 761, 765, 2005 WL 27553 (Fed. Cir. 2005); *Kwik-Site Corp. v. Clear View Mfg. Co., Inc.*, 758 F.2d 167, 173 (Fed. Cir. 1985); *Wrigley v. Cadbury*, 2011-1140, 2012 U.S. App. LEXIS 12834, *19 (Fed. Cir. June 22, 2012).

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction includes a number of argumentative statements that are not supported by law. First, Samsung's sub-instruction (1) is misleading as it suggests that the patented invention must be the sole cause of commercial success. *Continental Can Company USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991) ("It is not necessary, however, that the patented invention be solely responsible for the commercial success, in order for this

1   factor to be given weight appropriate to the evidence."). It also wrongly suggests that
    advertising and promotion related to patented features would be irrelevant. Second, Samsung's
2   sub-instruction (4) goes far beyond the law to excuse Samsung's copying and eliminate the
    relevance of this factor. *Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082, 1099 (Fed. Cir.
3   1985) ("That Dennison, a large corporation with many engineers on its staff, did not copy any
    prior art device, but found it necessary to copy the [patented invention], is equally strong
4   evidence of nonobviousness."). Samsung's sub-instructions (2), (3), (5), and (7) also refer to
    factors that are not at issue in this case and that will likely confuse the jury. Moreover, Apple's
5   proposed instruction No. 47 is more appropriate as it provides sequenced guidance for the design
    patent obviousness analysis in a single instruction, rather than multiple, out of sequence
6   instructions proposed by Samsung.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 48**
**DESIGN PATENTS—INVALIDITY—LACK OF ORNAMENTALITY**

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—The Court Will Instruct The Jury On Whether There Are Functional Elements In The Design Patents—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

Design patents protect the ornamental appearance, including shape or configuration, of an article of manufacture.  If Samsung proves by clear and convincing evidence that the overall appearance of an Apple patented design is dictated solely by how the article claimed in the patent works, the patent is invalid because the design is not "ornamental."

When deciding this, you should keep in mind that design patents must be for articles of manufacture, which by definition have inherent functional characteristics.  It is normal that claimed designs perform some function – that does not disqualify them from patent protection.  Likewise, that features of a design may enhance the user's experience does not necessarily mean that the patented design was dictated solely by functionality.

The question is whether any general functional characteristics in a patented design can only be embodied by that design, or whether they can be embodied by other designs.  The existence of alternate designs that perform substantially the same function may be strong evidence that the design is not dictated solely by function.

**Source**

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.11.

**Authorities**

35 U.S.C. § 171 (A design patent may be granted for any "new, original and ornamental design for an article of manufacture."); *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("A design patent is directed to the appearance of an article of manufacture.  An article of manufacture *necessarily serves a utilitarian purpose*, and the design of a useful article is deemed to be functional when *the appearance of the claimed design is 'dictated by'* the use or purpose of the article.") (emphasis added); *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK (Dkt. No. 452) at 13 (N.D. Cal. Dec. 2, 2011) ("The standard . . . requires that the design itself be *dictated by* the functionality of the item.  Just because various elements of Apple's D'677 and D'087 patents *enhance* the user experience does not necessarily mean that the patented design is *dictated by* functionality."); *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996); *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1368 (Fed. Cir. 1999); *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997).

**Samsung's Objection to Apple's Instruction**

Apple's proposed instruction misleadingly omits the factors spelled out by the Federal Circuit for determining whether a design patent is invalid as functional.  *See, e.g.*, *PGH Technologies, LLC v. St. John Co., Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) ("Our cases reveal a 'list of ... considerations' for assessing whether the patented design as a whole—its overall appearance—was dictated by functional considerations,' including: whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features

of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function." (quoting *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997)).  Apple's equivocal statement that a patented design is not necessarily dictated solely by function where features of the "design may enhance the user's experience" conflicts with the Federal Circuit's criterion that asks "whether alternative designs would adversely affect the utility of the specified article." *Id.*  If the supposedly "ornamental" design features of Apple's patents are affecting the utility of the article, for example by enhancing the user's experience, that is an indication that the design is functional.  Instructing jurors to the contrary is improper.  Finally, Apple says that "[t]he existence of alternate designs that perform substantially the same function may be strong evidence that the design is not dictated solely by function."  The instruction gives no guidance as to what it means to "perform substantially the same function."  Indeed, the Federal Circuit has strict guidelines for what constitutes a true alternative under the law: "Our case law makes clear that a full inquiry with respect to alleged alternative designs includes a determination as to whether the alleged alternative designs would adversely affect the utility of the specified article, such that they are not truly 'alternatives' within the meaning of our case law."  In other words, simply because a different design can perform the same type of function does not make it an "alternative" if the utility of the article is adversely affected by the different design.  It needs to be able to perform the same function *at the same level of utility*.  Samsung's Alternative to Apple's Proposed Final Instruction No. 48 is a preferable alternative because it offers the full list of criteria from Federal Circuit case law.  It also notes that invalidity can be due to overall functionality, or the functionality of all the individual features of the design. *Id.* at 1366 (inquiring "whether there are any elements in the design *or* an overall appearance clearly not dictated by function"); *see also Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 239, 231 USPQ 774, 777-78 (Fed. Cir. 1986) (finding that testimony from an inventor as to the functionality of each feature of a patented design is evidence of the functionality of the patented design); *Five Star Manufacturing, Inc. v. Ramp Lite Manufacturing, Inc.,* 4 F. App'x. 922, 2001 WL 120070 (Fed. Cir. Feb, 12, 2001) (upholding invalidity verdict based on "evidence that each element of the patented design serve[d] a functional, rather than ornamental, purpose.").  Also, contrary to Apple's statement that the jury should not be instructed on this issue, whether a design is functional or ornamental is a question of fact. *See Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460, 43 USPQ2d 1887, 1890 (Fed. Cir. 1997); *accord Five Star*, 4 F. App'x. at 924.

**Samsung's Proposed Instruction**

As I mentioned in Instruction No. 44.4, design patents protect the ornamental appearance of an article of manufacture, not the functionality of the article.  You'll remember that when you determine infringement, you have to ignore any features that are functional and compare only the ornamental features.  When determining invalidity, you have to decide if the design as a whole is functional rather than ornamental.  In determining whether the overall design is functional, the functionality of each of the various elements that comprise the patented design may be relevant.

You should consider the following criteria in deciding whether any of the designs in Apple's patents are functional, and are therefore ineligible for design patent protection:

1.  Whether the design in the patent represents the best design

2.  Whether alternative designs would adversely affect the usefulness of the article

3.  Whether there are any utility patents related to the same article

4.  Whether there is any advertising touting particular features of the design as having specific usefulness

5.  Whether there are any elements in the design that are purely ornamental

Samsung must prove that the D'667, D'087, D'035 or D'889 design patent claims are functional by clear and convincing evidence.

**Source**

35 U.S.C. §171 (a design patent may be granted for any "new, original and ornamental design for an article of manufacture."); *PGH Technologies, LLC v. St. John Co., Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) ("Our cases reveal a 'list of ... considerations for assessing whether the patented design as a whole—its overall appearance—was dictated by functional considerations,' including: whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function." (quoting *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997)); *id.* at 1367 ("Our case law makes clear that a full inquiry with respect to alleged alternative designs includes a determination as to whether the alleged 'alternative designs would adversely affect the utility of the specified article,' such that they are not truly 'alternatives' within the meaning of our case law."); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010); *Five Star Manufacturing, Inc. v. Ramp Lite Manufacturing, Inc.*, 4 Fed.Appx. 922, 2001 WL 120070 (Fed. Cir. Feb, 12, 2001) ("The design of a utilitarian article is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article.  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123, 25 USPQ2d 1913, 1917 (Fed.Cir.1993). While the functionality of each of the various elements that comprise the patented design may be relevant, the ultimate question is whether the claimed design, viewed in its entirety, is dictated by the utilitarian purpose of the article.  *Id.; see also Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 239, 231 USPQ 774, 777-78 (Fed.Cir.1986) (finding that testimony from an inventor as to the functionality of each feature of a patented design is evidence of the functionality of the patented design).").

1    **Apple's Objection to Samsung's Instruction**

2    Samsung's proposed instruction misstates the law and misleading in several ways.  First, as the
     Court previously recognized, the test for whether a patent is invalid for lack of ornamentality is
3    whether the overall appearance is "dictated by" function.  Dkt. No. 452 at 13; *L.A. Gear, Inc. v.
     Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).  Samsung's instruction, which
4    merely describes the test as one of "functionality," is misleading as the article of manufacture
     claimed by a design patent can serve a function so long as the design is not "dictated by"
5    function.  *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997).  Samsung's
     instruction also is incomplete.  It instructs the jury that "the functionality of each of the various
6    elements that comprise the patented design may be relevant," but fails to instruct the jury to
     "return to the overall appearance after . . . analyzing each of the elements of the design."  *See*
7    *Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997) (the lower
     court "erred in its analysis by failing to return to the overall appearance after purportedly
8    analyzing each of the elements of the design").  It is black letter law that a design can be invalid
     for lack of ornamentality only if the "overall design" is "dictated by" function.  *L.A. Gear*, 988
9    F.2d at 1123 ("[T]he ultimate question is not the functional or decorative aspect of each separate
     feature, but the overall appearance of the article, in determining whether the claimed design is
10   dictated by the utilitarian purpose of the article.").  Samsung's list of criteria for determining
     whether Apple's patents are functional is also wrong and extraneous.  For instance, Samsung
11   lists "[w]hether the design in the patent represents the best design," but this factor is vague and
     meaningless without providing any definition of what constitutes a "best design."  Samsung also
12   inappropriately includes the consideration of "[w]hether alternative designs would adversely
     affect the usefulness of the article," but the correct consideration is if "alternative designs for the
13   article of manufacture are available."  *See Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563,
     1566 (Fed. Cir. 1996) ("A design is not dictated solely by its function when alternative designs
14   for the article of manufacture are available.") (citation omitted).  To the extent that Samsung
     purports to rely on *PHG Tech., Inc. v. St. John Co.*, 469 F.3d 1361, 1366 (Fed Cir. 2006), and its
15   quote from the *Berry Sterling Corp.* case for this list of criteria, Samsung's instruction is
     misleading and incorrect.  First of all, the *Berry Sterling Corp.* opinion states that it is a list of
16   factors that *might* be considered, clearly indicating that all of these factors may not be applicable
     in every case; Samsung, however, converts this permissive list into a mandatory "should
17   consider" list.  Samsung has also rewritten these possible considerations.  For instance,
     Samsung's instructions states "[w]hether there are any elements in the design that are purely
18   ornamental" but the actual test from *PHG* is whether there are any elements in the design
     "*clearly* not dictated by function."  *Id.* (emphasis added).  Also, Samsung incorrectly recites the
19   criteria of "[w]hether there are any utility patents related to the same article."  This is wrong and,
     again, potentially misleading.  For instance, with respect to this case, the asserted utility patents
20   are practiced by Apple's products and thus are "related to the same article," but have no bearing
     on the whether the asserted designs are dictated by function.  Apple's corresponding instruction,
21   No. 48, is a concise and accurate statement of the test for invalidity due to lack of ornamentality,
     tracking The Intellectual Property Owners Ass'n Model Design Patent Jury Instructions.  It
22   correctly states that the test is whether the design is dictated by function.  *L.A. Gear*, 988 F.2d at
     1123.  It also accurately reflects the role of alternative designs in this analysis: they are strong
23   evidence that the design is not dictated by function.  *See Best Lock*, 94 F.3d at 1566.

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 49**
**DESIGN PATENT -- DRAWINGS**

**Samsung's Proposed Instruction**

The necessity for good drawings in a design patent application cannot be overemphasized. As the drawing constitutes the whole disclosure of the design, it is of utmost importance that it be so well executed both as to clarity of showing and completeness, that nothing regarding the design sought to be patented is left to conjecture. The reason for this is that patents are property rights and the public deserves to know what is covered by the patent and what is not.

**Source**

35 U.S.C. §112; MPEP 1503.02.

**Samsung's Statement in Support**

This short instruction introduces the instruction on indefiniteness and tracks the language of the Manual of Patent Examining Procedure. It also identifies the enablement requirement that design patents share with utility patents. MPEP § 1503.02 ("The necessity for good drawings in a design patent application cannot be overemphasized. As the drawing constitutes the whole disclosure of the design, it is of utmost importance that it be so well executed both as to clarity of showing and completeness, that nothing regarding the design sought to be patented is left to conjecture.")

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is plainly tied to its indefiniteness defense. As indefiniteness is a legal issue for the Court, this instruction is unnecessary. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (determining whether a patent complies with 35 U.S.C. § 112(2) presents a question of law "that is drawn from the court's performance of its duty as the construer of patent claims").

**PROPOSED FINAL JURY INSTRUCTION NO. 50
DESIGN PATENT INVALIDITY – INDEFINITENESS**

**Samsung's Proposed Instruction**

Where a design patent includes ambiguities, inconsistencies, or features that are not readily understandable or could cause confusion, the design is likely indefinite. For example, lack of appropriate surface shading in the drawing as filed may render the design indefinite. You must determine whether the Apple patents are indefinite such that they would not enable a designer skilled in the art to make the designs without having to guess at what is claimed in the patent drawings.

**Source**

35 U.S.C. §112; MPEP 1503.02.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is unnecessary as indefiniteness is a legal issue for the Court; this instruction should not be given. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (determining whether a patent complies with 35 U.S.C. § 112(2) presents a question of law "that is drawn from the court's performance of its duty as the construer of patent claims"). Samsung also misstates the law so as to lower the threshold for indefiniteness to "not readily understandable or could cause confusion." *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1353 (Fed. Cir. 2003) (a claim is not indefinite unless "reasonable efforts at claim construction prove futile" and "it is 'insolubly ambiguous' and not 'amenable to construction'"). Finally, Samsung fails to cite any authority for its contention that "lack of appropriate surface shading … may render the design indefinite."

## PROPOSED FINAL JURY INSTRUCTION NO. 51
## DESIGN PATENT INVALIDITY – DOUBLE PATENTING

**Samsung's Proposed Instruction**

If an inventor obtains a second patent for a design that is already covered by a former patent, the second patent is invalid. This is especially true where the patents are issued to the same inventor or inventors. To be valid, the invention in the second patent has to be distinctly different and independent from the design in the first patent. The difference cannot be a mere distinction in the breadth or scope of the claim. In other words, the second patent cannot simply be a broader, more generic version of the earlier patent. Also, it is the date the patents issue and not the date they were filed that determines priority for patents issued to the same inventor for the same invention.

**Source**

35 U.S.C. 171 ("Whoever invents any new, original, and ornamental design for an article of manufacture may obtain a patent therefor"); *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 198 (1894) ("[N]o patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character, than the specific claims, contained in the prior patent, is also void.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is extraneous because Samsung has not properly disclosed any theory of double patenting in this case—not in its answer, nor in its expert reports. The only timely disclosure by Samsung is a vague mention in an interrogatory response that Apple's patents are "invalid for double patenting," without identifying which earlier patents allegedly created a double patenting issue. With no adequate, timely disclosure of this defense, and without any expert testimony supporting it, this instruction should not be given. Furthermore, Samsung's proposed instruction entirely misstates the law of double patenting with its vague and incorrect references to a requirement for "distinctly different and independent" inventions that are not merely "broader, more generic" versions of the earlier patent. *See In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985) (describing "same invention" type double patenting as relating to "an invention drawn to identical subject matter" and "obviousness type" double patenting as relating to "an obvious modification of the same invention"); MPEP 804. There is also no legal support for the proposition that the double patenting defense is "especially true where patents are issued to the same inventor or inventors."

**PROPOSED FINAL JURY INSTRUCTION NO. 52
DESIGN PATENT DAMAGES—GENERALLY**

**Apple's Proposed Instruction**

I will instruct you now about the measure of damages for infringement of Apple's design patents. By instructing you on damages, I am not suggesting which party should win on any issue.

If you find that Samsung infringed any valid Apple design patent, you must then determine the money damages to award Apple. The amount of those damages must be adequate to compensate Apple for the alleged infringement. Apple seeks three different forms of damages: lost profits, defendants' profits and a reasonable royalty. You should keep in mind that damages are meant to compensate the patent holder and not to punish an infringer.

Subject to certain exceptions I will mention, Apple has the burden to persuade you of the amount of its damages. You should award Apple the damages that the patent holder more likely than not suffered. While Apple is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Apple is not entitled to monetary relief that is remote or speculative. Apple is entitled to its total damages, regardless of its other wealth or revenues.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1; Federal Circuit Bar Association Model Patent Jury Instr. 6.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.1.

**Authorities**

35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) *(en banc).*

**Samsung's Objection to Apple's Instruction**

Apple improperly splits the instructions for utility patent and design patent damages. Apple does not and cannot cite any authority supporting this. The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie,* 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). In addition, Apple's proposed instruction uses prejudicial language that assumes Samsung has infringed its patents. This language presumes the validity of Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and against Samsung. Apple also uses loaded terms like "total damages," which presumes that Apple was damaged and that the jury should be looking to find a total. These terms, along with the last sentence in Apple's instruction, appear nowhere in the model jury instructions, nor are they supported by Apple's cited authorities. Such biased language is inappropriate in a jury instruction. 1 Fed. Jury Prac. & Instr. § 7:2 (6th ed.); *see also United States v. Hach,* 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and combative instructions); *United States v. Matias,* 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions). Apple's proposed instruction also fails to mention its burden of proof by a preponderance of the evidence. It also does not address the requirement that Apple make an election for either actual damages or Samsung's profits, as set out in the IPO Model Design Patent Jury Instruction. *See id.* ("A plaintiff in a design patent case can elect to

1  prove either actual damages, known as compensatory damages, or they may elect to prove the
   defendant's profits as its measure of potential recovery.")  On the contrary, it misleadingly
2  implies that Apple may obtain both remedies.  No court has ever allowed what Apple proposes
   here—to split its recovery between actual damages as lost profits under Section 284 and
3  infringer's profits under Section 289.  Thus, Apple's proposed instruction should be rejected as
   incomplete, legally inaccurate, and skewed in favor of Apple, and is not supported by persuasive
4  authority.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

I will instruct you about the measure of damages for infringement of both utility and design patents. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that the alleged infringer (Samsung Electronics Company, Samsung Electronics America, Samsung Telecommunications America and/or Apple) infringed any valid claim of a patent, you must then determine the amount of money damages to be awarded to the patent holder (Samsung and/or Apple) to compensate it for the infringement. You should evaluate damages separately for each party you find to have infringed, and may not award more than the patent holder seeks.

The amount of those damages must be adequate to compensate the patent holder for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

The patent holder has the burden to persuade you of the amount of its damages. You should award only those damages caused by the infringement that the patent holder proves it suffered by a preponderance of the evidence. While the patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. The patent holder is not entitled to damages that are remote or speculative.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.1 (modified).

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in five ways. First, Samsung's proposed instruction does not accurately state the law. Samsung's inclusion of the last sentence in the first paragraph—"You should evaluate damages separately for each party you find to have infringed, and may not award more than the patent holder seeks"—deviates from the model instruction and is incorrect. The jury is not limited by Apple's request for relief, but may award damages consistent with the law and the facts of the case. Second, Samsung's inclusion of the words "caused by the infringement" in the third paragraph also deviates from the model rule, and is inaccurate because the instruction does not apply to infringer's profits or reasonable royalty damages. Causation is only an issue for lost profits damages. Third, Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions. Apple divides them for two reasons. First, in light of the difference in remedies—in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents—it makes more sense to treat utility and design patent damages separately. Second, it will be easier for the jury to delve into and address all of the utility liability and damages issues together before it has to address design patents. Under Apple's approach, the jury can decide the utility case and then move forward to the design patent issues, rather than fracturing its analysis between the two. Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions. Apple believes this to be more logical and easier to understand for the jury. Fourth, on top of the greater efficiency to Apple's approach, Samsung's proposed instruction erroneously includes a sentence that points away from Apple's right to recover Samsung's profits under 35 U.S.C. § 289. Specifically, Samsung's instruction states: "A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty." This statement, while applicable to a recovery of lost profits or reasonable royalty under 35 U.S.C. § 284 and taken from the Northern

1    District model, is inaccurate as it applies to this case, because Apple is also seeking infringer's
     profits under 35 U.S.C. § 289.  Infringer's profits do not put the patent holder in the same

2    financial position that would have occurred without the infringement.  The sentence is
     unnecessary and is likely to confuse the jury in the unique context of this case.  Apple's

3    instruction removes this sentence as it applies to infringement of the design patents.  *See* Apple's
     Pproposed Iinstruction No. 52.  Fifth, Samsung's instruction also includes an incomplete and

4    inaccurate statement regarding the availability of remedies.  Both parties have proposed separate
     double counting instructions and these instructions should be used to address this issue.  Apple's

5    instructions on the equivalent topic (41 and 57) are also preferable and clearer in two additional
     respects.  They explicitly list the type of remedies that each party claims.  Further, they include a

6    final statement that the party claiming damages are entitled to those damages regardless of its
     general wealth or revenues.  Both parties were concerned enough about this issue to bring

7    motions in limine related to it.  The equivalent information is easily accessible by the web.
     These facts by themselves warrant the statement's inclusion.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 53
DESIGN PATENT DAMAGES - LOST PROFITS**

**Apple's Proposed Instruction**

Apple seeks to recover the profits it lost due to some of Samsung's sales that infringed Apple's design patents. To recover lost profits for infringing sales, Apple must show that but for Samsung's infringement there is a reasonable probability that Apple would have made sales that Samsung made. Apple must show the share of Samsung's sales that it would have made if the infringing Samsung products had not been on the market.

In assessing Apple's right to recover lost profits for Samsung's infringement of its design patents, you should apply the same rules I already explained in the context of lost profits for infringement of Apple's utility patents. Those Instructions are set out in Jury Instructions Nos. 31-35. Wherever in those Instructions I referred to Apple's utility patents, you should now focus on Apple's design patents. Wherever in those Instructions I referred to the patented invention, you should now focus on the patented design. Wherever I in those Instructions referred to patented products or products covered by a patent claim, you should now focus on products or articles that use or bear the patented design.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

**Authorities**

*Aro Mfg. Co. v. Convertible Top Replacement Co., Inc.*, 377 U.S. 476, 502-07 (1964); *Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1579 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-23 (Fed. Cir. 2003); *Gargoyles, Inc. v. U.S.*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552-53 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir 1978); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.* , 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("[T]he Panduit test is an acceptable, though not an exclusive, test for determining 'but for' causation"); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) ("All that the first [Panduit] factor states, and thus requires, 'is demand for the patented product.'").

**Samsung's Objection to Apple's Instruction**

Apple improperly splits the instructions for utility patent and design patent damages. Apple does not and cannot cite any authority supporting this. The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). Although Apple claims the proposed instruction was "adapted" from Model Patent Jury Instruction B.5.2, it deleted language that might be disadvantageous to Apple. Specifically, Apple chose not to include the following passage from Model Instr. B.5.2: "You must allocate the lost profits based upon the customer demand for the patented feature of the infringing [product] [method]. That is, you must determine which profits derive from the patented invention that [alleged infringer] sells, and not from other features of the infringing [product] [method]." Obviously, this "modification" of the Model Instruction is

1  not to fit any unusual and unique fact pattern, but instead just to make the instruction more
2  favorable to Apple.  Samsung's Alternative to Apple's Proposed Final Instruction No. 53 more
   closely adheres to the pattern instruction.  *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009)
3  ("[W]e repeat our suggestion that trial judges should use the model jury instructions when
   applicable . . . . We urge trial courts, in the future, to stick to the model jury instructions
   regarding this issue.") (citing *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913-14 (2d Cir.
4  1984) ("[T]rial judges would be exceedingly well advised to use [the model instructions] rather
   than impose variations upon it.")) (internal quotation omitted); *United States v. Wilson-Garcia*,
5  2012 WL 226032 (W.D. Pa. Jan. 25, 2012) ("It is axiomatic that "trial judges should use the
   model jury instructions when applicable.").  In addition, Apple employs prejudicial language that
6  assumes Samsung has infringed its patents, such as "Samsung's infringing products,"
   "Samsung's infringement of its design patents," and "infringement of Apple's utility patents."
7  This language presumes the validity of Apple's arguments, and unfairly suggests to jurors an
   outcome favorable to Apple and adverse to Samsung.  Finally, Apple's instruction fails to take
8  into account that there are several separate and independent individual defendants.

**Samsung's Proposed Instruction**

In this case, Apple seeks to recover lost profits for some of Samsung's sales of certain products. Samsung does not seek to recover lost profits for Apple's sales of allegedly infringing products.

To recover lost profits for infringing sales, Apple must show that, but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America made of each allegedly infringing product. Apple must show the share of Samsung Electronics Company's, Samsung Electronics America's and Samsung Telecommunications America's sales of each product that it would have made if the allegedly infringing product had not been on the market.

You must allocate the lost profits based upon the customer demand for the patented feature or design of each of the allegedly infringing products. That is, you must determine which profits derive from the patented invention or design that Samsung Electronics Company, Samsung Electronics America or Samsung Telecommunications America allegedly sells, and not from other features of these infringing products.

**Source**
N.D. Cal. Model Patent Jury Instr. B.5.2 (modified).

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions. Apple divides them in light of the difference in remedies, in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents. Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions. Apple believes this to be more logical and easier to understand for the jury. Apple's comments addressing the substance of this instruction can be found in connection with Samsung's proposed instruction No. 31 above.

**PROPOSED FINAL JURY INSTRUCTION NO. 53.1**
**LOST PROFITS – FACTORS TO CONSIDER**

**Samsung's Proposed Instruction**

Apple is entitled to lost profits if it proves all of the following:

   (1)    that there was a demand for the patented inventions and designs;

   (2)    that there were no non-infringing substitutes for each of the allegedly infringing products, or, if there were, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America that Apple would have made despite the availability of other non-infringing substitutes.  An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period.  Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available.  Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether the Samsung had to design or invent around the patented technology to develop an alleged substitute;

   (3)    that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

   (4)    the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America had not allegedly infringed.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.3 (modified).

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions.  Apple divides them in light of the difference in remedies, in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents.  Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions.  Apple believes this to be more logical and easier to understand for the jury.  Apple's comments addressing the substance of this instruction can be found in connection with Samsung's proposed instruction No. 32 above.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 53.2**
**LOST PROFITS – MARKET SHARE**

2

3

**Samsung's Proposed Instruction**

4

One way Apple may prove the number of sales it would have made if the alleged infringement had not happened is to prove its share of the relevant market excluding infringing products.  You may award Apple a share of profits equal to that market share.

5

6

In deciding Apple's market share, you must decide which products are in its market.  Products are in the same market if they are sufficiently similar to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

7

8

**Source**

9

N.D. Cal. Model Patent Jury Instr. B.5.3a (modified).

10

11

**Apple's Objection to Samsung's Instruction**

12

Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions.  Apple divides them in light of the difference in remedies, in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents.  Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions.  Apple believes this to be more logical and easier to understand for the jury.  Apple's comments addressing the substance of this instruction can be found in connection with Samsung's proposed instruction No. 35 above.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 53.3
DAMAGES – AMOUNT OF LOST PROFITS**

3

**Samsung's Proposed Instruction**

4

5

Apple may calculate its lost profits on any lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.  Fixed costs that do not vary with increases in production or scale should not be subtracted from Apple's lost revenue, if any.

6

7

**Source**

8

Federal Circuit Bar Association Model Patent Jury Instr. B.6.2 (modified).

9

**Apple's Objection to Samsung's Instruction**

10

11

12

13

Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions.  Apple divides them in light of the difference in remedies, in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents.  Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions.  Apple believes this to be more logical and easier to understand for the jury.  Apple's comments addressing the substance of this instruction can be found in connection with Samsung's proposed instruction No. 34 above.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 54**
**DESIGN PATENT INFRINGEMENT DAMAGES – DEFENDANT'S PROFITS**

**Apple's Proposed Instruction**

Apple is alternatively entitled to the total profits earned by Samsung that are attributable to sales of items that infringed an Apple design patent. "Total profits" include the entire profit on the sale of products with patented designs, and not just the portion of profit attributable to the design. "Total profits" do not include profit attributable to other products that may have been sold in association with an infringing article.

Profit is determined by deducting certain expenses from gross revenue. Gross revenue is all of Samsung's receipts from the sale of infringing products. Apple has the burden of proving the gross revenue that Samsung more likely than not received.

Samsung has the burden of proving the deductible expenses. Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods. Other costs may be included as deductible expenses if they are directly attributable to the sale of the infringing products resulting in a nexus between the infringing products and the expense.

**Source**

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.8.

**Authorities**

35 U.S.C. § 289; *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291-1292, (Fed. Cir. 2002); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447-48 (Fed. Cir. 1998); *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 (Fed. Cir. 1992); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1566-68 (Fed. Cir. 1984); *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 495 (D. Minn. 1980)*; Junker v. HDC Corp.*, No. C-07-05094 JCS, 2008 WL 3385819, at *3 (N.D. Cal. July 28, 2008) ("patent holder is not required to demonstrate that the profits are attributable to the ornamental qualities of the item in the design patent" but is "entitled to the entire profit obtained by the infringer as a result of sales of the item with the infringing design").

**Samsung's Objection to Apple's Instruction**

Although both parties have crafted proposed instructions that track draft IPO Model Design Patent Jury Instr. 10.8, Samsung's Alternative to Apple's Proposed Final Instruction No. 54 is much closer to the text of the IPO instruction, deviating only slightly to contour to this case. Apple's proposed instruction also fails to mention its burden of proof by a preponderance of the evidence. It also does not address the requirement that Apple make an election for either actual damages or Samsung's profits, as set out in the draft IPO Model Design Patent Jury Instruction. *See id.* ("A plaintiff in a design patent case can elect to prove either actual damages, known as compensatory damages, or they may elect to prove the defendant's profits as its measure of potential recovery.") On the contrary, it misleadingly implies that Apple may obtain both remedies. No court has ever allowed what Apple proposes here—to split its recovery between actual damages as lost profits under Section 284 and infringer's profits under Section 289. Thus, Apple's proposed instruction should be rejected as incomplete, legally inaccurate, and skewed in favor of Apple, and is not supported by persuasive authority.

**Samsung's Proposed Instruction**[10]

In this case, Apple alternatively seeks Samsung Electronics Company's, Samsung Electronics America's, and Samsung Telecommunications America's profit from sales of products alleged to infringe Apple's design patents. Accordingly, if you find infringement by Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America, do not find Apple's design patents are invalid, and do not award Apple lost profits and/or a reasonable royalty, you may award Apple Samsung Electronics Company's, Samsung Electronics America's and/or Samsung Telecommunications America's total profit on sales of products alleged to infringe Apple's design patents.

The "total profit" of Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America means the entire profit on the sale of the article to which the patented design is applied, or with which it is used and not just the portion of profit attributable to the design or ornamental aspects of the patent. "Total profit" does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design. A design patent owner can recover the profit not only of the manufacturer or producer of an infringing article, but also of other sellers in the chain of distribution, if any such profits are proven by Apple by a preponderance of the evidence.

If you find infringement by any Samsung defendant, and do not award Apple lost profits and/or a reasonable royalty, you may award Apple all profit earned by that defendant on sales of products alleged to infringe Apple's design patents, and that is attributable to whatever infringement you have found by that particular defendant. Profit is determined by deducting certain expenses from gross revenue. Gross revenue is all of the infringer's receipts from the sale of products using any design found infringed. Apple has the burden of proving the infringing defendant's gross revenue by a preponderance of the evidence.

Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods. Other costs may be included as deductible expenses if they are attributable to the sales of the infringing products resulting in a nexus between the infringing products and the expense. Samsung has the burden of proving the deductible expenses and the portion of the profit attributable to factors other than use of the infringed design by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the infringing product is attributable to factors other than use of the infringed design, you shall find that the total profit is attributable to the infringement.

**Source**

Intellectual Property Owners Association, Proposed Design Patent Model Jury Instr., No. 10.8 (modified).

**Apple's Objection to Samsung's Instruction**

The parties' proposed instructions on defendant's profits under section 289 differ in three ways: (1) Samsung's proposed instruction fails to reflect the Court's prior ruling in this case that profits awarded under section 289 cannot be apportioned; (2) Samsung's proposed instruction No. 54

---

[10] Samsung objects to Apple's attempt to obtain both lost profits and infringer's profits as unsupported by any legal authority. Samsung offers this instruction solely in the event that the Court disagrees. Samsung also offers this instruction subject to its objection that any disgorgement of profits should be subject to apportionment.

omits the word "directly" from a sentence addressing deductible expenses, which is an important element of Samsung's burden; and (3) Samsung's proposed instruction repeats unnecessarily the requirements of validity and infringement.  Apple's instruction reflects a direct recitation of the statute's grant of total profits.  *First,* the instruction includes three statements on the apportionment of the defendant's profits, the amount that is "attributable" to the design or the infringement, and the amount "attributable" to factors other than design.  But the Court has made clear based on controlling Federal Circuit law that if Samsung is found to infringe Apple's design patents, Apple is entitled to recover all of Samsung's profits relating to the accused products without apportionment.  This issue was resolved in Dkt. No. 1157 (Daubert order) at 9, which excluded Samsung's expert testimony as "contrary to law."  Samsung's footnote acknowledges this issue.  *Second*, Samsung's proposed instruction No. 54 incorrectly omits the word "directly" from the statement: "Other costs may be included as deductible expenses if they are <u>directly</u> attributable to the sales of the infringing products . . ."  The Intellectual Property Owners Ass'n Model Design Patent Jury Instructions include the word "directly" and are an accurate statement of the law.  This is an important element of Samsung's burden of proof in proving those costs that will be deducted, and the jury will hear competing evidence from each side's damages experts on which costs are and are not "directly attributable" to the product sales.  *See Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166, 1171 (6th Cir. 1980) (stating that the "parties are agreed that the expenses which vary directly with productive activity should be deducted in determining total profits,"); *see also Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980) ("The burden of establishing the nature and amount of these costs, as well as their relationship to the infringing product, is on the defendants.").  Finally, Samsung, consistent with the improper pattern it set in other instructions, repeats the requirement of validity and infringement where it is not necessary.  This requirement is set out in prior instructions and need not be repeated for the benefit of the defendant whenever a new damages subject matter is introduced.

**PROPOSED FINAL JURY INSTRUCTION NO. 55
DESIGN PATENT DAMAGES—REASONABLE ROYALTY—
ENTITLEMENT—DEFINITION—RELEVANT FACTORS**

**Apple's Proposed Instruction**

If Apple has not proved its claim for lost profits, has not proved its claim to defendants' profits, or has proved its claim to either remedy for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits or defendants' profits. In no event should the damages you award Apple for Samsung's design patent infringement be less than a reasonable royalty.

The definition of a reasonable royalty for design patent infringement is the same as the definition I explained to you in Jury Instruction No. 36 for utility patent infringement. However, wherever in that Instruction I referred to the patented invention or a utility patent, you should now focus on the design patents or patented designs.

The factors you may consider in determining a reasonable royalty are also the same for design patent infringement as they are for utility patent infringement. Wherever Instruction No. 37 referred to the patented invention or a patent claim, you should now focus on the patented design. Wherever Instruction No. 37 referred to a patented product or a product covered by the utility patent claim, you should now focus on an article or product bearing the patented design.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6, B.5.7; Federal Circuit Bar Association Model Patent Jury Instr. B.6.7.

**Authorities**

35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) *cert. denied*, 130 S. Ct. 3324 (2010) (vacating and remanding jury award as excessive); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ("25% rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, No. 9.8 (1999); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

**Samsung's Objection to Apple's Instruction**

Apple's proposed instruction fails to mention its burden of proof by a preponderance of the evidence. It also does not address the requirement that Apple make an election for either actual damages or Samsung's profits, as set out in the draft IPO Model Design Patent Jury Instruction. See id. ("A plaintiff in a design patent case can elect to prove either actual damages, known as compensatory damages, or they may elect to prove the defendant's profits as its measure of potential recovery.") On the contrary, it misleadingly implies that Apple may obtain both

1    remedies.   No court has ever allowed what Apple proposes here—to split its recovery between
     actual damages as lost profits under Section 284 and infringer's profits under Section 289.   In
2    addition, Apple employs prejudicial language that assumes Samsung has infringed its patents,
     such as "Samsung's design patent infringement."   This language presumes the validity of
3    Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and adverse to
     Samsung.    Finally, Apple's instruction fails to take into account that there are several separate
4    and independent individual defendants.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Both Samsung and Apple seek an award of a reasonable royalty for alleged patent infringement.

If the holder of a patent does not seek lost profits (like Samsung), or has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the sales alleged to infringe the patent, then the patent holder should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

A reasonable royalty must be limited to compensation for the amount and type of alleged infringement that actually occurred.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.6 (modified); *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1117 (N.D. Cal. 2011) (citing 35 U.S.C. 284); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention.").

**Samsung's Statement in Support**

Samsung provides this instruction to clarify the concept of reasonable royalties for the jury. Apple's amalgam instruction about a party's entitlement to reasonable royalties is confusing and may mislead the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (reviewing jury instructions to determine clarity). Samsung's instruction is clear and focused, explaining when it is appropriate to award a reasonable royalty and will avoid juror confusion and a possible double recovery. *Barnes v. Borough of Pottstown*, 1993 WL 239314 (E.D. Pa. June 30, 1993) ("complicated and potentially confusing" jury instructions are undesirable).

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions. Apple divides them in light of the difference in remedies, in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents. Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions. Apple believes this to be more logical and easier to understand for the jury. Apple's comments addressing the substance of this instruction can be found in connection with Samsung's proposed instruction No. 36 above.

**Samsung's Proposed Instruction**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place prior to the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $10,000 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product. Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product. In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for Samsung and/or Apple.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.7 (modified).

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions. Apple divides them in light of the difference in remedies, in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents. Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions. Apple believes this to be more

1  logical and easier to understand for the jury.  Apple's comments addressing the substance of this
2  instruction can be found in connection with Samsung's proposed instruction No. 36.1 above.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 55.1
REASONABLE ROYALTY—RELEVANT FACTORS**

**Samsung's Proposed Instruction**

In determining the reasonable royalty for Samsung and/or Apple, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)   The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)   The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)   The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)   The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)   The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)   The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)   The duration of the patent and the term of the license.

(8)   The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)   The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)   The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)   The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)   The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)   The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)   The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**Source**

Federal Circuit Bar Association Model Patent Jury Instr. B.6.7 (modified).

**<u>Apple's Objection to Samsung's Instruction</u>**

Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions.  Apple divides them in light of the difference in remedies, in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents.  Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions.  Apple believes this to be more logical and easier to understand for the jury.  Apple's comments addressing the substance of this instruction can be found in connection with Samsung's proposed instruction No. 37 above.

**PROPOSED FINAL JURY INSTRUCTION NO. 56
DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

**Apple's Proposed Instruction**

In determining the amount of damages, you must determine the date on which damages began to accrue. Once you have determined that date, you should calculate the damages that are attributable to sales that occurred on that date and after. This determination should be made for each design patent that Samsung infringed.

For each design patent that Samsung infringed but for which Apple does not sell a product covered by the patent, you should calculate damages as follows:

- If the patent was granted before Samsung's infringement began, damages should be calculated as of the date infringement began.

- If the patent was granted after Samsung's infringement began, damages should be calculated as of the date the patent issued.

For each design patent that Samsung infringed and for which Apple does sell a product covered by the patent, you must determine the date that Samsung received actual notice of the patent and the specific product or category of products alleged to infringe. Damages should be calculated as of that date.

While you may identify an earlier date by which Samsung had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the D'677 patent by no later than April 15, 2011, and for the D'305, D'889 and D'087 patents by no later than June 16, 2011.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8; Federal Circuit Bar Association Model Patent Jury Instr. B.6.8.

**Authorities**

35 U.S.C. § 287; *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer. Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979 (D. Mass. 1992) (actual notice does not require identifying a particular patent by number where plaintiff acted affirmatively to notify his adversary that he had a patent on a given item and the defendant was infringing that patent); *Coupe v. Royer*, 155 U.S. 565, 584-85 (1895) (holding that where plaintiffs presented evidence of actual notice and defendants offered evidence that they did not receive notice, the "court ought to have submitted that question to the jury"); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed. Cir. 2008) (trier of fact must take into account the history of the relationship between the parties when determining whether a communication was "sufficiently specific" to give rise to actual notice); *Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373

1    (Fed. Cir. 2010) (communication giving rise to actual notice does not need to identify all related products since "ensuing discovery . . . may bring those products within the scope of the notice").

2

3    **Samsung's Objection to Apple's Instruction**

4    Apple's proposed instruction is inappropriate because it varies from the models upon which Apple purports to rely by inserting additional argumentative and prejudicial language. For example, it presumes that Samsung infringed its patents ("For each design patent that Samsung infringed . . ."). "In drafting [civil jury] instructions, a common vice to be avoided is the phrasing of instructions in an argumentative fashion favorable to the side submitting them. Instructions must be objective, not subjective. It is the court, not counsel, who announces them. The judge is the only non-partisan lawyer in the courtroom, from whom the jury may properly expect a dispassionate and unslanted statement of the pertinent law."  1 Fed. Jury Prac. & Instr. § 7:2 (6th ed.*); see also United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and combative instructions); *United States v. Matias,* 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions). Moreover, Apple's modification of the model instruction to imply that notice merely of a "category of products" – as opposed to allegedly infringing products – is sufficient to trigger damages is unsupported by any law.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---


**Samsung's Proposed Instruction**

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that the alleged infringer has both infringed and been notified of the alleged infringement of the patent.

If you find that the patent holder sells a product that includes the claimed invention, you must determine the date that the alleged infringer received actual notice of the patent and the specific product alleged to infringe. Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the patent by a specific accused product or device. The filing of the complaint and counterclaims in this case qualified as actual notice, so the damages period begins no later than the dates the complaint and counterclaims were filed. The patent holder has the burden of establishing that it is more probable than not the alleged infringer received notice of infringement before the complaint and counterclaims were filed.

If you find that the patent holder does not sell a product covered by the patent, damages begin without the requirement for actual notice. If you find that the patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began. If you find that the patent was granted after the infringing activity began, damages should be calculated as of the date the patent issued.

While you may identify an earlier date by which Apple had actual notice of Samsung's claims of infringement based on your evaluation of the evidence, Samsung's counterclaims provided Apple such notice by no later than June 16, 2011. With respect to Samsung's U.S. Patent No. 7,577,460, damages should be calculated as of August 18, 2009, because the patent contains only a method claims.

While you may identify an earlier date by which Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America had actual notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the '381, '915 and D'677 patents by no later than April 15, 2011, and for the '163, D'305, D'889 and D'087 patents by no later than June 16, 2011.

**Source**

N.D. Cal. Model Patent Instr. B.5.8 (modified); Federal Circuit Bar Association Model Patent Jury Instr. B.6.8 (modified); *Mformation Techs., Inc. v. Research In Motion Ltd.*, C 08-04990 JW, 2011 WL 6357804 at *15 (N.D.Cal. Dec. 19, 2011) (Ware C.J.) ("The marking requirements of § 287(a) do not apply to patents containing only method claims. *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed.Cir.1983).").

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions. Apple divides them in light of the difference in remedies, in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents. Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions. Apple believes this to be more logical and easier to understand for the jury. Apple's comments addressing the substance of this instruction can be found in connection with Samsung's proposed instruction No. 39 above.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 57**
**DESIGN PATENT DAMAGES—NO DOUBLE COUNTING**

3

**Apple's Proposed Instruction**

4

While Apple is entitled to monetary relief for each infringing sale by Samsung, it may not recover twice for the same sale.  You should award Apple the highest remedy that you find applies to the infringing Samsung sale, whether it is based on Apple's lost profit, Samsung's total profit, or a reasonable royalty.  However, once you have awarded Apple a remedy with respect to a Samsung sale, you should not award Apple another remedy with respect to the sale of the same unit.

5

6

7

If you award Apple one form of remedy with respect to some but not all of Samsung's infringing sales, you should award Apple a different remedy with respect to the other Samsung infringing sales if Apple meets the requirements for that remedy.

8

9

In addition, as I previously explained, you should award Apple only one remedy for each Samsung sale that violates Apple's utility patents, design patents, or trade dresses.

10

**Authorities**

11

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291-1292 (Fed. Cir. 2002) ("[W]hen both a design patent and a utility patent have been infringed [the plaintiff] is entitled to damages for each infringement, but once it receives profits under § 289 for each sale, [the plaintiff] is not entitled to a further recovery from the same sale"); *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017-19 (Fed. Cir. 2006) (holding that a plaintiff cannot recover damages from a defendant for patent infringement and trademark infringement if damages were calculated from sale of same product by same defendant; "Generally, the double recovery of damages is impermissible.").

12

13

14

15

16

**Samsung's Objection to Apple's Instruction**

17

Apple's proposed instruction is materially incorrect and otherwise inappropriate.  Apple is not "entitled to monetary relief," nor is it required to receive the "highest remedy that you find applies."  Yet, this instruction presupposes that and makes this inference to the jury.   None of Apple's cited authority supports including language that unduly suggests that Apple is "entitled" to relief, let alone the "highest remedy;"  as such, this instruction is misleading and would be reversible error if adopted.  *See Yan Fang Du v. Allstate Ins. Co.*, 681 F.3d 1118, 1122 (9th Cir. 2012) ("Where there is legal error in instructing the jury in a civil case, reversal is required unless the error is more probably than not harmless.").  In addition to being incorrect, this language is prejudicial, and improper for that reason also.  1 Fed. Jury Prac. & Instr. § 7:2 (6th ed.); *see also United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and combative instructions); *United States v. Matias*, 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions).

18

19

20

21

22

23

24

25

26

27

28

1

**INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED JURY INSTRUCTION NO. 58**
**UTILITY AND DESIGN PATENTS—INDUCING PATENT INFRINGEMENT**

**Apple's Proposed Instruction**

Apple also claims that Samsung's Korean parent SEC indirectly infringed its utility and design patents.  Apple argues that SEC induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility and design patents.  For there to be inducement of infringement, there must have been direct infringement by STA or SEA.

For each utility and design patent where you find that STA or SEA directly infringed, you should also determine:

    1.    Whether SEC knew of the patent; and

    2.    Whether SEC knew that STA's and SEA's activities would infringe.

If your answers to both of these questions are "yes," you must find SEC liable for inducing infringement of the patent.

While you may identify an earlier date by which SEC knew of certain of Apple's utility or design patents based on your evaluation of the evidence, Apple's lawsuit provided Samsung with knowledge of the '381, '915, and D'677 patents by no later than April 15, 2011, and of the '163, D'305, D'889 and D'087 patents by no later than June 16, 2011.

The knowledge requirement can alternatively be satisfied by showing that SEC was willfully blind.  In order to show that SEC willfully blinded itself to a fact, Apple must show that:

    1.    SEC subjectively believed that there was a high probability that a fact existed; and

    2.    SEC took deliberate actions to avoid learning of that fact.

For example, to show that SEC willfully blinded itself to the existence of an asserted utility or design patent, Apple must show that Samsung subjectively believed that there was a high probability that the patent existed and that Samsung took deliberate actions to avoid learning of the patent.

Samsung argues that Apple has actively induced third parties to infringe certain of Samsung's utility patents in suit.  To resolve this claim, for each patent where you find that a third party directly infringed, you should also determine:

    1.    Whether Apple intentionally took action that actually induced direct infringement by another;

    2.    Whether Apple knew of the patent; and

    3.    Whether Apple knew that another's activities would infringe.

The knowledge requirement can alternatively be satisfied by showing that Apple was willfully blind.  In order to show that Apple willfully blinded itself to a fact, Samsung must show that:

    1.    Apple subjectively believed that there was a high probability that a fact existed; and

2.     Apple took deliberate actions to avoid learning of that fact.

**Sources**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.9; adapted from instructions in *Oracle America, Inc. v. Google Inc.*, Case No. 3:10-cv-03561-WHA, Dkt. No. 1121, filed May 11, 2012 (N.D. Cal.).

**Authorities**

35 U.S.C. § 271(b); *Global-Tech Appliances, Inc., v. SEB S.A.,* 131 S. Ct. 2060, 2069 (2011) ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C.§ 271(b)."); *ePlus, Inc. v. Lawson Software, Inc.,* No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011) ("Knowledge of the patent may be established by a finding that [the alleged infringer] had actual knowledge of the patent or that [the alleged infringer] deliberately disregarded a known risk that ePlus had a protective patent."); *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304-1306 (Fed. Cir. 2006) (*en banc*); *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683 (Fed. Cir. 2008).

**Samsung's Objection to Apple's Instruction**

Apple's proposed instruction is improper because it introduces again Apple's untimely allegation that there has been indirect infringement of any Apple patents. This allegation is nowhere found in any pleading, nor in any response to an interrogatory served to elicit Apple's infringement contentions for the design patents. See Dkt No. 1185-3 at 13-15. In addition, Samsung objects to Apple's Instruction on the grounds that Apple did not make an inducement allegation that met the requirements of Patent Local Rule 3-1, which states in part:

> Separately for each opposing party, the "Disclosure of Asserted Claims and Infringement Contentions" shall contain the following information … For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

Apple's infringement contentions state in conclusory fashion, "Samsung induces the infringement of others under 35 U.S.C. § 271(b) to the extent it contracts, instructs, or otherwise induces others to make, use, offer to sell, sell, or import the Accused Instrumentalities within or into the United States." (See Apple's 3-1 Patent Local Rule Disclosures, attached as Exhibit D to the Declaration of Thomas Watson in Support of Samsung's Jury Instructions.) This statement did not "identif[y] any direct infringement" nor did it provide a "description of the acts of the alleged indirect infringement that . . . induc[e] that direct infringement." Consequently, Apple should be precluded from asserting an inducement theory now. *See Integrated Circuit Sys. v. Realtek Semiconductor Co.*, 308 F. Supp. 2d 1106, 1106-07 (N.D. Cal. 2004). Further, Apple's instruction erroneously omits one of the three necessary criteria for finding active inducement of infringement, namely taking action of any kind. Tellingly, when Apple states the burden of proof that Samsung must meet, the active inducement criteria is listed. When applied to itself, Apple states that if (1) SEC knew of the patent and (2) knew that STA or SEA's activities would infringe, it is therefore liable for inducement. The statute, however, requires action on the part of the alleged inducer; not just knowledge: "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271 (emphasis added). This is true for parent and sub relationships as well: "evidence of mere inaction by a parent company in the face of infringement by a subsidiary-i.e., a failure to stop infringement" is not sufficient.

1 | *Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) (*citing A. Stucki*
*Co. v. Worthington Industries, Inc.*, 849 F.2d 593, 597 (Fed. Cir. 1988).) "[E]vidence of mere
2 | inaction [does] not constitute inducement." *Id.* "Absent evidence of active inducement," it is
"mere speculation, not a justifiable inference" to assume that the parent "did assent to, endorse,
3 | [or] condone continued infringement." A. Stucki, 849 F.2d at 597. Apple's cited authorities
provide no basis for Apple's changing the elements for active inducement to no longer require
4 | evidence of active inducement. Apple's second criteria regarding knowledge is also deficient
because "mere knowledge of possible infringement by others does not amount to inducement;
5 | specific intent and action to induce infringement must be proven." *DSU Medical Corp. v. JMS
Co.,* 471 F.3d 1293 (Fed. Cir. 2006) (en banc). In the event the Court allows Apple to present
6 | evidence or argument on this issue, a proper instruction must include a requirement not only of
some affirmative action, but also that the inducing party knows or should know that their actions
7 | would lead to direct infringement, not just mere knowledge that someone else's actions might
cause infringement. Samsung's alternative Final Instruction No. 40 contains language based on
8 | the AIPLA model instruction, which follows Federal Circuit precedent on this issue, and
properly follows the Federal Circuit's en banc decision in *DSU Medical Corp. v. JMS Co.*, 471
9 | F.3d 1293 (Fed. Cir. 2006) (en banc) that "[t]o establish liability under section 271(b), a patent
holder must prove that once the defendants knew of the patent, they actively and knowingly
10 | aided and abetted another's direct infringement." *Id.* at 1305. According to Apple's instruction,
there is no difference between passive observation and active inducement. That is legally
11 | erroneous.

**PROPOSED JURY INSTRUCTION NO. 58.1
INDUCING PATENT INFRINGEMENT**

**Samsung's Proposed Instruction**

Apple argues that Samsung's Korean parent, SEC, has actively induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility patents.  Samsung argues that Apple has actively induced third parties to infringe Samsung's utility patents.

In order for there to be inducement of infringement by an alleged infringer, someone else must directly infringe a claim of the patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, the alleged infringer must:

     1.    have intentionally taken action that actually induced direct infringement by another;

     2.    have been aware of the patent; and

     3.    have known that the acts it was causing would be infringing.

If the alleged infringer did not know of the existence of the patent or that the acts it was inducing were infringing, it cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that the accused infringer was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that the accused infringer took a risk that was substantial and unjustified.

If you find that the alleged infringer was aware of the patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, the alleged infringer cannot be liable for inducement.

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.9; 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-06 (Fed. Cir. 2006) (*en banc*) (quoting Metro-*Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060 (2011); *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683 (Fed. Cir. 2008).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 58.1 ignores several of the specifics concerning Apple's inducement claim in this case.  Apple's proposed instruction No. 58.1 is more tailored to the case, and will therefore better prepare the jury to decide the issues here on the merits.  In particular, Apple's inducement theory concerns whether Samsung's Korean parent SEC induced its U.S. subsidiaries STA and SEA to infringe.  It makes sense to instruct the jury that this is the theory that is at issue.  In addition, because of these facts, one of the traditional elements of an inducement claim—that the putative inducer intentionally took actions that induced third-party conduct—is not in dispute.  Samsung does not dispute that SEC intentionally took steps to induce the accused conduct by STA and SEA.  There is thus no need to ask the jury to resolve that question at trial.  Apple's proposed instruction also informs the jury about the latest date on which SEC could have been on notice of the Apple patents.  Informing the jury that the filing of this litigation sets a ceiling on when SEC had the requisite knowledge of the asserted patents will

make the jury's job easier.  Finally, Apple also submits that its proposed instruction better captures the "willful blindness" standard articulated in *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011).

1

2

<div align="center">

**PROPOSED FINAL JURY INSTRUCTION NO. 58.2**
**INDUCING DESIGN PATENT INFRINGEMENT[11]**

</div>

3

**Samsung's Proposed Instruction**

4

To show induced infringement, Apple must prove by a preponderance of the evidence that someone has directly infringed the D'677, D'087, D'305 and D'889 design patents and that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications have actively and knowingly aided and abetted that direct infringement. Apple must show that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America actually intended to cause the acts that constitute direct infringement, knew of the patent, and knew or should have known that their actions would lead to actual infringement. Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement. If there is no direct infringement by anyone, there can be no induced infringement.

5

6

7

8

9

**Source:**

10

AIPLA Model Patent Jury Instructions, 3.3; 35 U.S.C. § 271(b); *DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc) ("Under section 271(b), '[w]hoever actively induces infringement of a patent shall be liable as an infringer.' 35 U.S.C. § 271(b). To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they 'actively and knowingly aid[ed] and abett[ed] another's direct infringement.' *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed.Cir.1988) (emphasis in original). However, 'knowledge of the acts alleged to constitute infringement' is not enough. *Warner-Lambert Co. v. Apotex Corp.,* 316 F.3d 1348, 1363 (Fed.Cir.2003) (citation omitted). The 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.' *Id.* at 1364 (citing *Manville,* 917 F.2d at 554)").*See also Tegal Corp. v. Tokyo Electron Co., Ltd.,* 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("In *A. Stucki Co. v. Worthington Industries, Inc.,* 849 F.2d 593, 7 USPQ2d 1066 (Fed.Cir.1988), we considered whether evidence of mere inaction by a parent company in the face of infringement by a subsidiary-i.e., a failure to stop infringement-could constitute either direct infringement or active inducement. . . . We also concluded that evidence of mere inaction did not constitute inducement, and we therefore affirmed the directed verdict in favor of the defendant."); *A. Stucki Co. v. Worthington Industries, Inc.,* 849 F.2d 593, 597 (Fed. Cir. 1988) ("Stucki's difficulty is two-fold: (1) the facts do not add up to inducement of infringement; and (2) the inferences Stucki posits are not justifiable. Stucki says "although no document exists which states that the Worthington officials advised RDI to continue its infringement," the evidence shows "it is an inescapable conclusion that the Worthington officials did assent to, endorse and condone continued infringement." Absent evidence of active inducement, however, Stucki's "inescapable conclusion" is mere speculation, not a justifiable inference. The district court was not obliged to make the jury engage in such speculation. *See Anderson,* 477 U.S. at 251, 106 S.Ct. at 2512. Stucki's evidence is not "evidence on which the jury could reasonably find" that Worthington had "actively" induced infringement under 35 U.S.C. § 271(b)."); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[11] Samsung does not believe Apple should be permitted to offer evidence or argument on any indirect infringement theory. Out of an abundance of caution, however, and without waiving any right to object, Samsung proposes this instruction should Apple be allowed to offer such evidence or argument.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction on inducing design patent infringement is flawed in many ways. First, this instruction is differently formulated than—and inconsistent with—its proposed instruction No. 58.1 on inducing utility patent infringement.  This inducement instruction uses "aided and abetted" language that does not appear in Samsung's utility inducement instruction No. 58.1 or in the N.D. Cal. model instructions.  Apple's approach of combining design patent and utility patent inducement instructions into a single instruction that substantially tracks this Court's model is both more consistent and less confusing for the jury.  Second, Apple's proposed instruction No. 58 is also more tailored to the case, and will therefore better prepare the jury to decide the issues here on the merits.  In particular, Apple's inducement theory concerns whether Samsung's Korean parent SEC induced its U.S. subsidiaries STA and SEA to infringe.  It makes sense to instruct the jury that this is the theory that is at issue.  In addition, because of these facts, one of the traditional elements of an inducement claim—that the putative inducer intentionally took actions that induced third-party conduct—is not in dispute.  Samsung does not dispute that SEC intentionally took steps to induce the accused conduct by STA and SEA, *i.e.*, the importation and sale of the accused products.  There is thus no need to ask the jury to resolve that question at trial.  Third, Samsung's proposed instruction also includes the criminal law concept of aiding and abetting, which is not found in the N.D. Cal. model instructions.  Fourth, Samsung's reference to "knowingly" aiding direct infringement is inconsistent with its own later instruction that the inducer "knew or should have known that their actions would lead to actual infringement."  Fifth, Apple's proposed instruction informs the jury about the latest date on which SEC could have been on notice of the Apple patents.  Informing the jury that the filing of this litigation sets a ceiling on when SEC had the requisite knowledge of the asserted patents will make the jury's job easier.  Finally, Apple also submits that its proposed instruction better captures the "willful blindness" standard articulated in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011).

.

**PROPOSED FINAL JURY INSTRUCTION NO. 59
DESIGN AND UTILITY PATENTS—WILLFUL PATENT INFRINGEMENT**

**Apple's Proposed Instruction**

Apple argues that Samsung willfully infringed Apple's design and utility patents, and Samsung argues that Apple willfully infringed Samsung's patents. I previously instructed you regarding a type of "willfulness" in the context of Apple's claim that Samsung has diluted certain Apple trade dresses. The type of "willfulness" that I explain here is different.

To prove an accused infringer willfully infringed one of its patents, each patent-holder must first persuade you that the other side infringed a valid and enforceable claim of an asserted patent. In addition, each patent holder must prove by clear and convincing evidence that the alleged infringer acted with reckless disregard of the patent holder's patent. To demonstrate this, the patent holder must persuade you that the alleged infringer knew, or it was so obvious that the alleged infringer should have known, that its actions infringed a valid patent. In deciding this question, you should consider all of the facts surrounding the alleged infringement.

Factors that may indicate that the alleged infringer was not willful include whether it acted in a manner consistent with the standards of commerce for its industry. Factors that may indicate that the alleged infringer was willful include whether it intentionally copied a product of the patent holder covered by the patent.

Additional factors you may consider as evidence that Samsung was willful include:

(1)     That Samsung was sanctioned in this case for disobeying three Court orders directing it to produce (a) documents relating to consumer surveys and whether Samsung copied from Apple, (b) source code, and (c) financial information;

(2)     That Samsung continued to sell the Galaxy S 4G and Infuse 4 phones after the Court found in December 2011 that (a) these products likely infringe the D'677 patent; and (b) Samsung had not raised a substantial question regarding the validity of the D'677 patent; and

(3)     That Samsung continued to sell the Infuse 4G, Galaxy S 4G, and Droid Charge phones, and the Galaxy Tab 10.1 tablet, after the Court found in December 2011 that (a) these products likely infringe the '381 patent; and (b) Samsung had not raised a substantial question regarding the validity of the '381 patent.

(4)     That Samsung continued to sell the above-mentioned phones and tablets after the United States Court of Appeals for the Federal Circuit announced its decision on May 14, 2012. On that date the Court of Appeals affirmed this Court on the '677 patent and the '381 patent, and reached a similar conclusion on the '087 patent and the '899 patent.

In determining whether the alleged infringer knew, or it was so obvious that the alleged infringer should have known, that its actions infringed a valid patent, you should keep in mind that the knowledge requirement can be satisfied by showing that the alleged infringer was willfully blind. In order to show that the alleged infringer willfully blinded itself to a fact, the patent-holder must show that:

1.     the alleged infringer subjectively believed that there was a high probability that a fact existed; and

2.     the alleged infringer took deliberate actions to avoid learning of that fact.

1

2   In this context, to show that the alleged infringer willfully blinded itself about whether its actions infringed a valid patent, the patent-holder must show that the alleged infringer subjectively believed that there was a high probability it was infringing and took deliberate actions to avoid learning if that was the case.

3

4   **Source**

5   Adapted from N.D. Cal. Model Patent Jury Instr. B.3.10.

6   **Authorities**

7   35 U.S.C. § 284; *In re Seagate Tech., LLC* ("Seagate"), 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) (standard for willful infringement); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (en banc); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-827 (Fed. Cir. 1992); *C.R. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, No. 2010-1510, 2012 U.S. App. LEXIS 13561, at *6-7 (Fed. Cir. June 14, 2012) (the *Seagate* subjective prong is an issue of fact); *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060, 2069 (2011) ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C.§ 271(b)."); *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011) ("Knowledge of the patent may be established by a finding that [the alleged infringer] had actual knowledge of the patent or that [the alleged infringer] deliberately disregarded a known risk that ePlus had a protective patent."); *Itar-Tass Russian News Agency v. Russian Kurier*, No. 95-Civ-2144 (JGK), 1997 U.S. Dist. LEXIS 8297, at *3-4 (S.D.N.Y. June 10, 1997) (copyright infringement was blatant and willful when defendant continued to publish articles not covered by a preliminary injunction); *SEB, S.A. v. Montgomery Ward & Co.*, 412 F. Supp. 2d 336, 337, 344 (S.D.N.Y. 2006) (a reasonable jury could consider the fact that a defendant continued to sell a redesigned product after a preliminary injunction finding infringement for purposes of determining intent and induced infringement under § 271(b)); *Cordis Corp. v. Boston Sci. Corp.*, No. 03-27-SLR, 2010 U.S. Dist. LEXIS 7197, at *7-8 (D. Del. Jan. 28, 2010) (jury given summary of preliminary injunction for purposes of willfulness under *Seagate*).

8

9

10

11

12

13

14

15

16

17

18

19

20   **<u>Samsung's Objection to Apple's Instruction</u>**

21   Samsung objects to Apple's one-sided Instruction in that it identifies the results of specific discovery motions and preliminary injunction rulings, which would result in extreme prejudice to Samsung. The information that Apple seeks to include is the current subject of a Samsung Motion in Limine (*see* Dkt. 1185). As Samsung stated in its Motion in Limine, both sides in this action have presented a number of discovery disputes for resolution by the Court. Both sides have prevailed on some but not others. Both sides have been sanctioned by Magistrate Judge Grewal. In none of these disputes has the Court imposed any remedy of which the jury should be made aware: there have been no deemed findings of fact, and no adverse inference instructions. Accordingly, the mere fact that discovery disputes arose and the results of those disputes, whether they be motions to compel, motions for sanctions, orders on motions to compel or orders on motions for sanctions, which happen in every major litigation, is of no relevance to any issue to be decided by the jury and will likely distract the jury from the dispositive issues of the case. Apple should be precluded from making any reference to any such disputes, motions or orders. Similarly, the Court's rulings on Apple's preliminary injunction motion should not be referenced to the jury. A preliminary injunction proceeding is by nature interim. A court need

22

23

24

25

26

27

28

1   only find a likelihood of success on the merits, not make a final adjudication. *See, e.g., Sierra*
2   *On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984). Moreover, a court
    can change its mind on the merits of the case as later developments clarify the relevant facts and
3   law. *See Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir.
    2002). Any reference to the Court's ruling on the preliminary injunction motion might have an
4   undue impact on the jury. It should be excluded under Fed. R. Evid. 403. Furthermore, Apple
    has failed to link the subject of the sanction order, or the preliminary injunction findings, to
5   willful infringement. In sum, Apple's jury instruction amounts to attorney argument and should
    be disregarded. Samsung's Alternative to Apple's Proposed Final Instruction No. 59 follows the
6   Federal Circuit Model Patent Jury Instruction for Willful Infringement. Samsung believes that
    this instruction, though similar to the Northern District of California's instruction, provides more
7   information and assistance to the jury in that describes more of the factors that should be
    considered when determining willful infringement. In addition, Samsung' Alternative to Apple's
8   Proposed Final Instruction No. 59 does not contain prejudicial attorney argument and
    incorporates the Federal Circuit's recent *Bard* decision. Therefore, Apple's Instruction should be
9   rejected in favor of Samsung's Alternative to Apple's Proposed Final Instruction No. 59
    immediately below.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

In this case, Apple argues both that Samsung infringed and, further, that Samsung infringed willfully. Likewise, Samsung argues that Apple infringed and, further, that Apple infringed willfully. If you have decided that the alleged infringer has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires a determination that the alleged infringer acted recklessly.

To prove that the alleged infringer acted recklessly, the patent holder must prove the state of mind of the alleged infringer by clear and convincing evidence. The patent holder must persuade you by clear and convincing evidence that the alleged infringer actually knew or should have known that its actions constituted an unjustifiably high risk of infringement actions of a valid and enforceable patent. To determine whether the alleged infringer had this state of mind, consider all facts which may include, but are not limited to:

(1) Whether or not the alleged infringer acted in accordance with the standards of commerce for its industry;

(2) Whether or not the alleged infringer intentionally copied a product of the patent holder that is covered by the patent;

(3) Whether or not there is a reasonable basis to believe that the alleged infringer did not infringe or had a reasonable defense to infringement;

(4) Whether or not the alleged infringer made a good-faith effort to avoid infringing the patent, for example, whether the alleged infringer attempted to design around the patent; and

(5) Whether or not the alleged infringer tried to cover up its infringement.

**Source**:

Federal Circuit Model Patent Jury Instr. B.3.8; 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (standard for finding willfulness); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (burden of proof for willfulness); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that may show willfulness); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990) (history of Federal Circuit decisions on willfulness); *Bard Peripheral Vascular, Inc. v. W.L Gore & Assoc., Inc.*, No. 2010-1510, 2012 U.S. App. LEXIS 13561, at *13 (Fed. Cir. June 14, 2012) ("the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction regarding willfulness is flawed on many levels. First, although Samsung's instruction acknowledges that factors other than those listed in the Northern District model instruction can be probative of willfulness, it ignores several that are especially important here given the unique facts of this case. As pointed out in Apple's proposed instruction No. 59, Samsung's continued sale of accused products after this Court ruled that Samsung likely infringed two patents and had failed to raise substantial questions regarding the validity of these patents is something that the jury should weigh as it decides whether Samsung knew or should have known that it was infringing valid patents. The jury should be told it can consider these rulings—and the affirmance by the Federal Circuit—in deciding willfulness. Likewise, the Court's three sanctions orders directed at Samsung are probative of whether Samsung tried to

1  cover up its infringement, which Samsung concedes is a relevant factor.  The jury should be told
   it can consider these facts too.  Second, Samsung's instruction tells the jury it can consider
2  Samsung's efforts to design around Apple's patents.  But the Court has already (twice) ordered
   that "Samsung may not offer any evidence of its design-arounds.  This means no source code
3  evidence, no non-source code evidence, no evidence of any kind, whether for liability purposes or
   any other purpose. Period."  (Dkt. No. 1106 at 3-4.)  Samsung cannot get this evidence in now
4  through the back door of willfulness.  Accordingly, even if the Court gave Samsung's instruction, the
   Court's order would still bar any introduction of Samsung's design-around evidence.  Third,
5  Samsung's instruction refers three times to the clear and convincing burden of proof. That is
   excessive.  Apple's proposed instruction has none of these flaws.  Apple's proposed instruction is
6  based on the Northern District's model instruction, captures the unique factors that are at play
   here, and, unlike Samsung's version, informs the jury that "willful blindness" can provide the
7  basis for the knowledge required for a finding of willfulness.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TRADE DRESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 60
TRADE DRESS DILUTION AND INFRINGEMENT—PROTECTABILITY**

**Apple's Proposed Instruction**

I will now instruct you about how to decide Apple's claims for trade dress dilution and trade dress infringement.

The first step in deciding Apple's trade dress dilution and infringement claims is to determine whether each trade dress is protectable. For each Apple trade dress, you must find that the trade dress is protectable if you find that it is:

      1.    distinctive; and

      2.    non-functional.

You must presume Apple's registered trade dress is protectable. Samsung must persuade you that it is more likely than not that the registered trade dress is not protectable. For each unregistered trade dress, Apple must persuade you that it is more likely than not protectable.

For each Apple trade dress that you find is protectable, resolving whether Samsung has diluted or infringed the trade dress will require you to assess additional questions that I will explain after addressing protectability.

**Source**

Adapted from ABA 3.2.1-3.2.2.

**Authorities**

15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); 15 U.S.C. § 1115(a) (a registration "shall be prima facie evidence of the validity of the registered mark"); *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 209-10 (2000) ("The breadth of the definition of marks registrable under § 2 . . . has been held to embrace not just word marks . . . but also 'trade dress' . . . [which] encompass[es] the design of a product."); *Wal-Mart*, 529 U.S. at 216 ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.").

**Samsung's Objection to Apple's Instruction**

As the first instruction regarding trade dress, Apple's Proposed Final Instruction No. 60 will lead to jury confusion and unfair prejudice to Samsung. As guided in Ninth Circuit Model Jury Instructions, the jury first should be instructed on all the elements needed to establish trade dress infringement and then on each element. Even if given after an appropriate introductory instruction, Apple's proposed instruction is inappropriate. First, it uses the words "must persuade you" instead of referring to the legal standard of proving by a preponderance of the evidence. Second, by combining infringement with dilution, it inaccurately suggests that a trade dress is capable of being diluted as long as it is distinctive and not functional. Third, four of the five asserted trade dresses are not registered. Yet Apple incorrectly suggests that all trade dress must be presumed valid because the word "registered" is buried in the first sentence regarding burdens of proof. Fourth, by combining distinctiveness and non-functionality into a single element,

1  Apple later makes it appear that Apple has fewer elements to prove—an approach that deviates
   from the approach of the Ninth Circuit Model Jury Instructions.

2

3  **Apple's Statement in Support of Instruction No. 60**

4  Apple also respectfully submits that, for the trade dress instructions, the ABA model instructions
   are preferable to the Ninth Circuit model instructions because the Ninth Circuit model

5  instructions do not address dilution claims. Apple made an exception for the infringement
   instruction because the *Sleekcraft* factors control in the Ninth Circuit, so Apple used the Ninth

6  Circuit model instruction that is based on the *Sleekcraft* factors. Apple accuses Samsung phones
   and tablets of dilution, and Samsung's proposed dilution instructions are largely created from

7  scratch. The ABA model instructions offer a coherent, consistent, and streamlined approach for
   a case that involves both dilution and infringement claims. For example, the ABA instructions

8  define the protectability standard for trade dress so that it applies to both infringement and
   dilution claims, noting the different burdens of proof for registered and unregistered trade

9  dresses. By contrast, Samsung's proposed instructions are unnecessarily repetitive and yet still
   have gaps (*e.g.*, presumptions attached to a registered trade dress). Samsung's instruction

10  Nos. 70 through 73 are unnecessarily duplicative.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 61**
**TRADE DRESS PROTECTABILITY—DISTINCTIVENESS**

**Apple's Proposed Instruction**

You need to decide whether Apple's trade dresses had acquired distinctiveness (which is also called "secondary meaning") before Samsung's first sale of its accused products.  Secondary meaning distinguishes a company's goods from similar goods offered by others, and refers to the ability to convey that the product comes from a particular source.  Trade dress acquires distinctiveness or secondary meaning when prospective purchasers identify the trade dress with a particular source.

In addition to your common sense and experience, you may also consider the following factors in determining whether each Apple trade dress had acquired secondary meaning before Samsung's adoption of it:

1.    The length and manner of Apple's use of the asserted trade dress;

2.    The nature and extent of Apple's advertising and promotion of its asserted trade dress;

3.    The efforts made to promote a conscious connection in the public's mind between the asserted Apple trade dress and Apple's products;

4.    Whether people who purchase Apple products embodying the asserted trade dress associate the asserted trade dress with Apple;

5.    Whether Apple successfully used the asserted trade dress to increase its sales;

6.    Whether Apple has authorized anyone else to use the asserted trade dress; and

7.    Whether Samsung intentionally copied the asserted Apple trade dress.

The presence or absence of any particular factor should not necessarily resolve whether a trade dress asserted by Apple has acquired secondary meaning.  You should consider all of these factors as well as the other relevant evidence that you have heard.

**Source**

Adapted from ABA 3.2.5; Ninth Circuit Model Civil Jury Instr. - 15.10 (2007 Ed.).

**Authorities**

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 216 (2000) ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning."); *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987) ("'The trade dress of a product or service attains secondary meaning when the purchasing public associates the dress with a particular source.'"); *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989) ("A product configuration has secondary meaning if the purchasing public associates that configuration with a particular source.  The factors to be assessed in determining secondary meaning include: whether actual purchasers of [the product] associate the configuration with [the plaintiff]; the degree and manner of [plaintiff's] advertising; the length and manner of [plaintiff's] use of the configuration; and whether [plaintiff's] use of the configuration has been exclusive.").

1    **Samsung's Objection to Apple's Instruction**

2    Apple's proposed instruction omits two factors established by case law and used by the Ninth
     Circuit Model Jury Instruction 15.10— actual confusion and exclusivity. *See also, e.g., Filipino*
3    *Yellow Pgs. v. Asian Journal Publications*, 198 F. 3d 1143, 1151 (9th Cir. 1999) ("Secondary
     meaning can be established in many ways, including . . . direct consumer testimony; survey
4    evidence; exclusivity, … ."). Instead of exclusivity, Apple substitutes a new factor—whether it
     authorized any third-party use. Apple cites no justification for this new factor and there is none.
5    Indeed, it is the existence of *un*authorized uses by third-parties that shows a lack of
     distinctiveness. As the very authority Apple quotes states, the relevant factor is "whether
6    [plaintiff's] use of the configuration has been exclusive." *Clamp Mfg. Co. v. Enco Mfg. Co.,* 870
     F.2d 512, 517 (9th Cir. 1989). Apple also misstates the standard on secondary meaning by not
7    referring to "primary significance" of the trade dress to a "significant proportion of prospective
     purchasers"—the exact wording used by the Ninth Circuit Model Jury Instruction 15.10.
8    Samsung's Alternative to Apple's Proposed Final Instruction No. 61 is a more accurate
     representation of the law on secondary meaning and comports with Ninth Circuit Model Jury
9    Instructions. Apple's proposed instructions on secondary meaning factors are also incomplete and
     do not provide the jury with enough guidance. Samsung's Proposed Final Instructions Nos.
10   61.1-61.6, in contrast, explain to the jury the current state of applicable Ninth Circuit precedent,
     as is necessary to avoid legal error.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

To prove infringement of its claimed iPad and iPad 2 trade dresses, Apple has the burden of proving by a preponderance of the evidence that the claimed trade dresses are distinctive.

To prove distinctiveness, Apple must show that its claimed trade dresses have "secondary meaning." Trade dress has secondary meaning when its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.

To find that the claimed trade dress have acquired secondary meaning, you must find by a preponderance of the evidence that a significant proportion of prospective purchasers of tablet computers associates the claimed trade dress with a single source.

When you are determining whether the claimed trade dress has acquired a secondary meaning, you may consider the following factors:

　　　1.　　Consumer Perception. Whether the people who purchase tablet computers associate the claimed trade dress with Apple;

　　　2.　　Advertisement. To what degree and in what manner Apple may have advertised using the claimed trade dress;

　　　3.　　Demonstrated Utility. Whether Apple has successfully used the claimed trade dress to increase the sales of iPad or iPad 2;

　　　4.　　Extent of Use. The length of time and manner in which Apple has used the claimed trade dress;

　　　5.　　Exclusivity. Whether Apple's use of the claimed trade dress was exclusive;

　　　6.　　Copying. Whether Samsung intentionally copied Apple's alleged trade dress.

　　　7.　　Actual Confusion. Whether Samsung's use of Apple's alleged trade dress has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether the claimed trade dresses have acquired secondary meaning.

Apple's claimed trade dresses are protectable only to the extent you find it has acquired distinctiveness through secondary meaning. If either the claimed iPad or iPad 2 trade dress has not required a sufficient level of secondary meaning, then that trade dress is invalid and not entitled to protection and your verdict on that trade dress must be for Samsung.

**Source**

Ninth Circuit Model Instruction 15.10 (modified); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 211 (2000)("a mark has acquired distinctiveness. . . if it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.") (internal quotations omitted); *Filipino Yellow Pgs. v. Asian Journal Publications,* 198 F. 3d 1143, 1151 (9th Cir. 1999) ("Secondary meaning can be established in many ways, including . . . direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 61 misstates the law in four ways. First, it improperly focuses on the "prospective purchaser." The relevant test for secondary meaning is whether "a significant number of the *consuming public*" associates the claimed trade dress with a single source. *See Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (referring to "secondary meaning in the minds of consumers"). Second, Samsung's instruction incorrectly states that Apple's claimed trade dresses are protectable only to the extent the jury finds secondary meaning. This is only applicable to Apple's *unregistered* trade dress. *See* 15 U.S.C. § 1115 (registration constitutes prima facie evidence of validity); *Rodan & Fields, LLC v. Estee Lauder Cos.*, No. 10-cv-02451-LHK, 2010 U.S. Dist. LEXIS 109573, at *15 (N.D. Cal. Oct. 5, 2010) (registration of trade dress entitles owner to presumption of protectable rights under 15 U.S.C. § 1115(a); plaintiff had to show inherent distinctiveness or secondary meaning "[b]ecause [its] trade dress [was] not registered"). Third, Samsung's instruction lists "actual confusion," but this is not a factor to be weighed and counted against a finding of secondary meaning, and will lead the jury to double count "actual confusion," or, as Samsung will argue, the lack of actual confusion. Secondary meaning and likelihood of confusion are separate concepts with separate tests.[12] The Ninth Circuit does not mention evidence of actual confusion in listing factors to address for secondary meaning. *See, e.g.*, *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989). Fourth, although it is present in the Ninth Circuit model instruction, there is no support for the language "demonstrated utility" in Ninth Circuit opinions. This phrase appears in only two district court cases within the Ninth Circuit: *Art Attacks Ink, LLC v. MGA Entm't, Inc.*, No. 04-CV-1035-B(BLM), 2007 U.S. Dist. LEXIS 48254, at *13 (S.D. Cal. July 2, 2007) and *Decorations for Generations, Inc. v. Home Depot USA, Inc.*, No. CIV-S-01-0284, 2003 U.S. Dist. LEXIS 26608, at *11 (E.D. Cal. Sept. 22, 2003)—each citing the instructions provided to the jury in that case, not Ninth Circuit authority. The meaning of the phrase is unclear, and here particularly so given the central role of the functionality doctrine in Samsung's arguments. The jury would be told simultaneously that "utilitarian function" will render Apple's trade dress design rights unprotectable, and that "demonstrated utility" supports a finding of trade dress distinctiveness, which is highly confusing. Fourth, although the "exclusivity" term is also present in the Ninth Circuit model instruction, in this case, stating that factor without any explanation will be misleading to the jury, as it will suggest copycat infringers and other unauthorized users arising after the date of Samsung's first infringement are relevant, which is not the law. If this instruction is adopted, qualifying language should be added noting that this factor is "as of the time of the first alleged infringement," and that only uses in the relevant industry are relevant. *See Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1074 (9th Cir. 1999) (secondary meaning evaluated as of date infringer began using mark); *see, e.g.*, *Eclipse Assoc., Ltd. v. Data General Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990 ("Evidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law.").

---

[12] The only case where the Ninth Circuit addressed inclusion of actual confusion as a factor in the secondary meaning analysis was a case where the *plaintiff* requested such an instruction because there had been substantial actual confusion, which the plaintiff believed would help to demonstrate that the plaintiff's trademark had secondary meaning – there would not be actual confusion if there was not secondary meaning. The Ninth Circuit held it was error not to include the plaintiffs' requested instructions. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1995) ("actual confusion is an indicium of secondary meaning," and it was error to exclude from jury instruction *where trademark owner requested inclusion of the factor*). However, lack of evidence of actual confusion does not lead to the opposite conclusion – that there is no secondary meaning.

1

## PROPOSED FINAL JURY INSTRUCTION NO. 61.1
## SECONDARY MEANING—ADVERTISING

2

**Samsung's Proposed Instruction**

3

4   To be probative of secondary meaning, Apple's advertising must direct the consumer to those features claimed as trade dress or identify or stress them, such as by directing the consumer to "look for" the claimed features.  Merely featuring the relevant aspects of the product does not support a finding of secondary meaning.

5

6   **Source**

7   *First Brands Corporation v. Fred Meyer, Inc.,* 809 F.2d 1378, 1383 (9th Cir. 1987) (advertisements must identify and feature the claimed trade dress in order to support a finding of secondary meaning; plaintiff failed to use "look for" advertising); *Yankee Candle Co., Inc. v. Bridgewater Candle Co.*, LLC, 259 F.3d 25, 44 (2d Cir. 2001) ("[I]t is advertising that specifically directs a consumer's attention to a particular aspect of the product. To be probative of secondary meaning, the advertising must direct the consumer to the features claimed as trade dress. [Citation.] Merely 'featuring' the relevant aspect of the product in advertising is no more probative of secondary meaning than are strong sales; again to provide protection based on extensive advertising would extend trade dress protection to the [elements for which protection is sought] without any showing that the consumers associate the dress with the product's source."); *Autodesk, Inc., v. Dassault Systems Solidworks Corp.*, 685 F. Supp. 2d 1001, 1014 (N.D. Cal. 2009);*Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F. Supp. 2d 1168, 1180 (ND Cal 2007) (quoting same; plaintiff failed to use "look for" advertising).

8

9

10

11

12

13

14   **Apple's Objection to Samsung's Instruction**

15   Samsung's proposed instruction No. 61.1 is contrary to law.  Ninth Circuit precedent requires only that advertising "feature in some way the trade dress itself"; it does not require literally "directing the consumer to 'look for' the claimed features."  *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (discussing requirement of "image advertising"); *see, e.g., HWE, Inc. v. JB Research, Inc.*, 993 F.2d 694, 695 (9th Cir. 1993); *Interactive Health LLC v. Kong Kong USA, Inc.*, 2008 U.S. Dist. LEXIS 123559, at *6 (C.D. Cal. July 24, 2008) (rejecting assertion that "advertisement must overtly point to the trade dress" as "there is no such restriction in the law"); *Adidas-Salomon Ag v. Target Corp.*, 228 F. Supp. 2d 1192, 1208 ("trade dress can be recognizable without advertising specifically telling a consumer to look for it").  Samsung's "instruction" is also one-sided, calling out a specific factor from the secondary meaning analysis and emphasizing only what would lead to a finding of no secondary meaning. Providing the list of factors to consider should be sufficient without providing a separate instruction on each factor.

16

17

18

19

20

21

22   **Samsung's Statement in Support**

23   As Samsung's Proposed Final Instruction 61 explains, several factors may be considered in determining whether the claimed trade dress has acquired a secondary meaning.  Instruction 61.1 addresses one of those factors:  advertisement.  Apple has indicated its intent to present evidence about its marketing and advertising efforts in support of its position that the trade dress associated with its  products is well known to consumers.  Apple has not presented a competing instruction, however.  Under the precedent in support of Instruction 61.1, it is clear that advertising efforts for product configuration trade dress are only relevant if they specifically direct the consumer to those features claimed as trade dress, as opposed to other features, because that may tend to show that consumers will recognize the claimed trade dress as being associated with a particular source. This instruction will focus the jury on relevant evidence and assure that they do not rely upon evidence that cannot support a finding of secondary meaning.

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 61.2
SECONDARY MEANING—SALES SUCCESS**

**Samsung's Proposed Instruction**

Sales success by itself will typically not be as probative of secondary meaning in a product configuration case as in a trademark case, since the product's market success could be attributable to the desirability of the product design rather than the source-designating capacity of the trade dress. And unlike with a trademark, where repeated purchases of a product support an inference that consumers have associated the mark with the producer or source, one can much less confidently presume that a consumer's repeated purchase of a product has created an association between a particular product configuration and the source.

**Source**

*Continental Laboratory Products, Inc. v. Medax Intern., Inc.*, 114 F. Supp. 2d 992, 1002-03 (S.D.Cal. 2000) (quoting *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1452-53 (3d Cir. 1994) ("Sales success by itself will typically not be as probative of secondary meaning in a product configuration case as in a trademark case, since the product's market success may well be attributable to the desirability of the product configuration rather than the source-designating capacity of the supposedly distinguishing feature or combination of features. And unlike with a trademark, where repeated purchases of a product support an inference that consumers have associated the mark with the producer or source, one can much less confidently presume that a consumer's repeated purchase of a product has created an association between a particular product configuration and the source."); *Yankee Candle Co., Inc. v. Bridgewater Candle Co.,* 99 F. Supp. 2d 140, 155 (D. Mass. 2000); 4 *McCarthy* § 15:47 at 15-67 ("Popularity of a product is not synonymous with secondary meaning. Large sales of the product may be due to dozens of factors, only one of which may be the drawing power of the trademark.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 61.2 is argumentative and not supported in the law of the Ninth Circuit. As with the previous instruction, it calls out a specific factor of the secondary meaning analysis and emphasizes only what would lead to a finding of no secondary meaning. Moreover, the quote that Samsung uses for this instruction from *Cont'l Lab. Prods., Inc. v. Medax Intern., Inc.*, 114 F. Supp. 2d 992, 1002-03 (S.D. Cal. 2000), is not Ninth Circuit authority, but a Third Circuit case, *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1452-53 (3d Cir. 1994). Ninth Circuit authority is clear that sales success *does* support a finding of secondary meaning, including in product design cases. *See, e.g., Art Attacks, LLC v. MGA Enter., Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) ("amount of sales and number of customers" relevant to secondary meaning); *Filipino Yellow Pages, Inc. v. Asian Journal Publn's., Inc.*, 198 F.3d 1143, 1151 (same).

**Samsung's Statement in Support**

As Samsung's Proposed Final Instruction 61 explains, several factors may be considered in determining whether the claimed trade dress has acquired a secondary meaning. Instruction 61.2 addresses another one of those factors: sales success. Apple did not submit any competing instruction. Although Apple has indicated its intent to present evidence about its product sales, Apple has not presented an instruction that would help the jury fairly assess that evidence in the context of a product configuration trade dress case. As the authorities cited in support of Instruction 61.2 explain, the product's market success needs to be attributable to the claimed trade dress in order to be relevant, so sales success evidence without any connection to the claimed trade dress features should be disregarded.

**PROPOSED FINAL JURY INSTRUCTION NO. 61.3**
**SECONDARY MEANING—EXCLUSIVITY OF USE**

**Samsung's Proposed Instruction**

If there are numerous other products in the market with the same or similar trade dresses, this tends to support a finding that the trade dress does not have secondary meaning.

**Source**

*Miss World (UK), Inc. v. Mrs. American Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) ("Simply put, a mark which is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive'. It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other."); *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F. 3d 971 (8th Cir. 2006) (considering use of mark by third-parties and newspapers); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ("Courts view a mark's use by competitors as strong evidence of how the public perceives the term. …Naturally, when more members of the public see a mark used by several producers in the industry, the less likely they will identify a particular producer with that mark.") (internal quotation marks, citations omitted).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 61.3 is flawed in the same manner as it improperly presents an argumentative counterpoint to one specific factor. In addition, it improperly phrases the exclusivity test as looking to the present—"if there *are* numerous other products in the market . . . ." Secondary meaning is evaluated at the time infringement began, and therefore current use is irrelevant. *Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1074 (9th Cir. 1999) (secondary meaning evaluated as of date infringer began using mark). Furthermore, evidence of other, unrelated infringing products in the market is irrelevant. *See, e.g., Eclipse Assoc., Ltd. v. Data General Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990).

**Samsung's Statement in Support**

Instruction 61.3, addressing exclusivity of trade dress, has no competing Apple instruction. This instruction is important for a case in which the marketplace is filled with products that have similar features and where, despite those similarities, customers are not confused and can easily distinguish among them. The law does not protect non-distinctive trade dress any more than it protects trade dress that does not identify the product's source.

## PROPOSED FINAL JURY INSTRUCTION NO. 61.4
## SECONDARY MEANING—COPYING

**Samsung's Proposed Instruction**

To support a finding of secondary meaning, deliberate copying must be an intentional attempt to capitalize on a company's reputation or good will. Mere attempts to copy a product are not necessarily probative since the copier may very well be exploiting a particularly desirable feature, rather than seeking to confuse consumers as to the source of the product. Thus the relevant intent is not just the intent to copy but, rather, the intent to "pass off" ones goods as those of another.

**Source**

*Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) ("The defendant . . . may copy plaintiff's goods slavishly down to the minutest detail; but may not represent himself as the plaintiff in their sale.") (internal quotation marks omitted); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837, 845-46 (9th Cir. 1987) ("Competitors may intentionally copy product features for a variety of reasons. They may, for example, choose to copy wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits."); *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1085 (9th Cir. 2005) (found no intent because the defendant did not have "any intention of capitalizing on [plaintiff's] trademark.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 61.4 misstates the law by improperly limiting the "copying" prong of the test for secondary meaning such that copying would be relevant only if there was "an intentional attempt to capitalize on a company's reputation or good will" or "to 'pass off' one's goods as those of another." This is not the law. If Samsung intentionally copied Apple's designs, that supports a finding of secondary meaning. *Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999). Samsung's assertion that Apple must prove an intent to "pass off" is even more incorrect for dilution claims, which have nothing to do with "passing off" or confusion. 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark"). The cases Samsung cites to the contrary are inapposite. *Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989), involves analysis of a Florida statute, and the internal quote is to a 1917 case that predates the Lanham Act. Neither has anything to do with the "intent to copy" prong of the secondary meaning test. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845-46 (9th Cir. 1987), actually *contradicts* Samsung's point, as it states, "evidence of deliberate copying is relevant to a determination of secondary meaning" and even that "in appropriate circumstances, deliberate copying may suffice to support an inference of secondary meaning." The quote Samsung pulls out was to explain why the Ninth Circuit declined to "hold that evidence of deliberate copying *shifts the burden of proof.*" 826 F.2d at 844 (emphasis added). And *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005), is inapposite because it is considering the likelihood of confusion factors, *not* secondary meaning. The remainder of Samsung's proposed instruction about exploiting a "particularly desirable feature" is misleading and unsupported by any authority because no feature protected under patent or trade dress laws can be exploited without permission for any reason – regardless of how desirable it is. Consideration of the desirability of a feature cannot be divorced from intellectual property laws. Finally, this is another unnecessary, one-sided instruction.

1

**Samsung's Statement in Support**

2

Instruction 61.4 addresses the importance of establishing an intent to capitalize on the plaintiff's mark and assists the jury in placing supposed "copying" activities into the proper context. Apple will present facts it will argue constitute willful copying, yet *Bonito Boats v. Thunder Craft Boats, Inc.,* 489 U.S. 141 (1989), establishes that such willful copying is irrelevant without the intent to confuse consumers. Apple has not submitted a competing instruction that reflects this important legal point.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 61.5**
**SECONDARY MEANING—ACTUAL CONFUSION**

**Samsung's Proposed Instruction**

Evidence of just a few instances of actual confusion is inadequate to support a finding of secondary meaning.

**Source**

*Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1995) (failure to list actual confusion as one of the factors the jury should have considered in determining whether the plaintiff had established secondary meaning was not harmless error); *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 873-74 (9th Cir. 2002) (holding that a few instances of actual confusion is not probative of secondary meaning).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 61.5 misstates the law and is misleading.  First, *absence* of actual confusion is not part of the secondary meaning analysis—even though *presence* of actual confusion is an indicium of secondary meaning.  *See* Apple's Argument against proposed instruction No. 61 and accompanying footnote.  *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 873-74 (9th Cir. 2002), *did not* hold that a few instances of actual confusion was not *probative* of secondary meaning.  It held that the particular alleged evidence of actual confusion in that case did not establish secondary meaning, because one affidavit "lack[ed] foundation," two incorrectly addressed letters "could have been the result of clerical errors," and six declarations all contained nearly identical language from business owners who "personally" knew the plaintiff.  287 F.3d at 873-74.  Second, as with previous proposed instructions, Samsung is proposing an unnecessary, one-sided instruction that improperly biases the jury against a finding of secondary meaning.

**Samsung's Statement in Support**

Instruction 61.5 reflects established Ninth Circuit precedent to the effect that incidental instances of confusion are not adequate to support a finding of secondary meaning.  Without such an instruction, jurors may give too much significance to evidence of such incidental instances of confusion.  Apple did not submit any competing instruction.

## PROPOSED FINAL JURY INSTRUCTION NO. 61.6
## SECONDARY MEANING—TIMING

**Samsung's Proposed Instruction**

Apple must prove by a preponderance of the evidence that the claimed iPad and iPad 2 trade dresses acquired secondary meaning before date that Samsung first sold a product that Apple claims is infringing its claim trade dresses.

If you find that Apple has not shown by a preponderance of the evidence that the alleged iPad or iPad 2 trade dress acquired secondary meaning before May 9, 2011, then you must find for Samsung.

**Source**

*Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir. 1970) (plaintiff must prove the existence of secondary meaning in its trademark at the time and place that the junior user first began use of that mark).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 61.1 incorrectly states a date of May 9, 2011, when the parties stipulated in the joint pretrial statement that Samsung began selling the accused product Galaxy Tab 10.1 on June 8, 2011. (Dkt. No. 1189-0 at 11.)

**Samsung's Statement in Support**

Instruction 61.6, which has no counterpart in Apple's jury instructions, addresses the requirement of timing. In order to establish secondary meaning, Apple must prove by a preponderance of the evidence that the claimed trade dresses acquired their secondary meaning before the date that Samsung sold any of the supposedly infringing products. *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir. 1970).

1

2

### PROPOSED FINAL JURY INSTRUCTION NO. 62
### TRADE DRESS PROTECTABILITY—NON-FUNCTIONALITY

3

**Apple's Proposed Instruction**

4

You must decide whether each Apple trade dress is non-functional.  Trade dress is not considered "functional" merely because it or its components perform useful functions.  For example, all bottles perform the function of holding a liquid.  This does not mean that a specific design for a bottle is necessarily "functional" and unprotectable.

5

6

An isolated design feature standing alone is "functional" only if the design of that feature is essential to the use or purpose of the product, or affects the cost or quality of the product.  Put another way, a design feature is functional if the product works better because of that feature.

7

8

In determining whether each Apple trade dress is functional, you should consider the trade dress as a whole.  A trade dress consisting of several features may be non-functional and protectable even though it includes functional features that, taken separately, would not be protectable.  Only where the combination as a whole is functional is the trade dress unprotectable.  In making this determination, you should consider the following factors:

9

10

11        1.     Whether Apple's advertising touted the utilitarian advantages of the asserted trade dress's design;

12

13        2.     Whether the asserted trade dress design results from a comparatively simple or inexpensive method of manufacture;

14        3.     Whether the asserted trade dress design yields a utilitarian advantage; and

15        4.     Whether alternative designs are available.  While the existence of alternative designs does not necessarily prevent a finding of functionality, alternative designs may suggest that the trade dress is non-functional.

16

17

The presence or absence of any particular factor is not dispositive.  You should consider all of these factors as well as any other relevant evidence that bears on this issue.

18

**Source**

19

Adapted from ABA 3.2.6.

20

**Authorities**

21

22

*Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 4 (N.D. Cal., June 30, 2012) ("[U]nder the traditional, utilitarian functionality test, a trade dress is functional 'when it is essential to the use or purpose of the device or when it affects the cost or quality of the device.'  In applying this test, the Ninth Circuit assesses four factors: '(1) whether advertising touts the utilitarian advantages of the design, (2) whether the particular design results from a comparatively simple or inexpensive method of manufacture, (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are available.'") (citing *Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001); *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)); *Au-Tomotive Gold, Inc.*, 457 F.3d 1062, 1072 n.8 (9th Cir. 2006)); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 5 (N.D. Cal., June 30, 2012) ("The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather,

23

24

25

26

27

28

1   functional elements that are separately unprotectable can be protected together as part of a trade
2   dress.") (citing *Adidas-Solomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1195 (D. Or. 2002)
    (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001))); *Disc Golf
3   Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006-09 (9th Cir. 1998) ("To determine whether a
    product feature is functional, we consider several factors: (1) whether the design yields a
4   utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts
    the utilitarian advantages of the design, and (4) whether the particular design results from a
5   comparatively simple or inexpensive method of manufacture. No one factor is dispositive.");
    *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842-43 (9th Cir. 1987) ("We examine
6   trade dress as a whole to determine its functionality; functional elements that are separately
    unprotectable can be protected together as part of a trade dress. In other words, our inquiry is not
7   addressed to whether individual elements of the trade dress fall within the definition of functional,
    but to whether the whole collection of elements taken together are functional."); *see also Traffix
8   Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001).

9   **Samsung's Objection to Apple's Instruction**

10  The functionality instruction should begin with what functionality is—not examples of what it is
    not. By beginning with a negative, Apple's instruction will confuse the jury about what
11  functionality means. Apple adds to this confusion, and prejudices Samsung, by giving an
    inapplicable example of a bottle of water. Samsung has never argued that Apple's trade dress is
12  functionality because it relates to a useful object—a cell phone. Yet that is the nature of Apple's
13  example. A more appropriate example would be one that addresses the functionality of a claimed
    feature of a trade dress, such as the grip of a bottle that enhances the functional performance of
14  the bottle. *Talking Rain Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601, 605 (9th Cir.
    2003) (affirming trade dress for unadorned water bottle was functional). Apple's use of the *Disc
15  Golf* factors is also inappropriate. In view of the Supreme Court's admonition that "Where the
    design is functional under the *Inwood* formulation [i.e., if the feature is essential to the use or
16  purpose of the article or if it affects the cost or quality of the article] there is no need to proceed
17  further to consider if there is a competitive necessity for the feature." *TrafFix Devices, Inc. v.
    Marketing Displays, Inc.*, 532 U.S. 23, 33 (2001). In so holding, the Supreme Court rejected as
18  erroneous the appellate court's "comprehensive" definition that inquired "whether the particular
19  product configuration is a competitive necessity." *Id.* Yet that is what the *Disc Golf* factors do.
    Accordingly, instructing the jury to consider these factors for utilitarian functionality would be
20  erroneous under the Supreme Court's controlling precedent. At a minimum, if the *Disc Golf*
    factors are referenced, it should be explain that they are merely guides to use in assessing
21  utilitarian functionality. *See Secalt S.A. v. Wuxi Shenxi Construction Mach. Co. Ltd.*, 688 F.3d
    677, 683 (9th Cir. 2012) ("A determination of functionality under *Inwood* [or *TrafFix*] may be
22  seen as short circuiting some of the *Disc Golf* factors."). Finally, it would be legal error not to
23  give an instruction on aesthetic functionality in this product configuration case. As this Court
    recognized in its June 29, 2012 Summary Judgment Order (Dkt No. 1158), the Supreme Court
24  has recognized aesthetic functionality as a viable defense and the Ninth Circuit has affirmed its
    continued viability. *Id.* at 4 (citing *TrafFix*, 532 U.S. at 32-33), 7 (citing *Au-Tomotive Gold*, 457
25  F.3d at 1070); *see also Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1007-8
    (C.D. Cal. 2011); *Aurora World Inc. v, Ty, Inc.*, 719 F. Supp.2d 1115, 1149 (C.D. Ca. 2009); *The
26  Jumpitz Corp. v. Viacom Intern., Inc.*, No. 09-CV1063, 2010 WL 3238953, * 7 (Aug. 13, 2010,
    S.D. Cal. 2010). Apple did not submit any competing instruction on aesthetic functionality.
27

28

**Samsung's Proposed Instruction**

Trade dress that is functional is invalid and not protectable. You must decide whether the alleged trade dresses asserted by Apple in this action are functional.

There are two types of functionality you should consider in deciding whether Apple's claimed trade dresses are functional: utilitarian functionality and aesthetic functionality. If any of Apple's claimed trade dresses are functional in either of these ways, that trade dress is invalid and you must find for Samsung on it.

- Utilitarian functionality means that a claimed feature of the trade dress is:

    (a) essential to the product's use or purpose *or*

    (b) affects the cost or quality of the product.

    It is non-functional if its shape or form makes no contribution to the product's function or operation. If the feature is part of the actual benefit that consumers wish to purchase when they buy the product, the feature is functional. However, if the feature serves no purpose other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional.

- Aesthetic functionality means that a claimed design feature of the trade dress improves the attractiveness and eye-appeal of the design. Trade dress is aesthetically functional if limiting its use would impose a significant non-reputational-related competitive disadvantage upon a company. If the entire significance of a feature is merely to associate goods with a particular source, the feature is non-functional.

Functionality is determined by considering the trade dress as a whole and not the individual elements alone. However, if the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, then the trade dress as a whole is functional.

**Source**

Ninth Circuit Model Instructions No. 15.11(modified) ; *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001) (trade dress protection may not be claimed for product features that are functional); *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 165 (1995) ("[I]f exclusive use of a feature would put competitors at a significant non-reputation-related disadvantage ["the feature in general terms is functional]."); *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1067-74 (9th Cir. 2006) (discussing and defining aesthetic and utilitarian functionality); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 782 (9th Cir. 2002) ("The physical details and design of a product may be protected under the trademark laws only if they are nonfunctional...."); *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F. 3d 1009, 1013 (9th Cir. 1999) ("[W]here the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is non-functional."); *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1007-8 (C.D. Cal. 2011); *Aurora World Inc. v, Ty, Inc.*, 719 F. Supp.. 2d 1115, 1149 (C.D. Ca. 2009) ("Other design features, such as the fanciful coloring of the toys, are aesthetically functional as that term is used in Au-Tomotive Gold."); *The Jumpitz Corp. v. Viacom Intern., Inc.*, No. 09-CV1063, 2010 WL 3238953, * 7 (Aug. 13, 2010, S.D. Cal. 2010).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction 62 misstates the law in five ways.  First, it improperly suggests a feature-by-feature test for functionality.  Trade dress functionality is determined *as a whole*, not on a feature-by-feature basis.  *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) ("in evaluating functionality . . . it is crucial that we focus *not* on the individual elements, but rather on the overall visual impression") (emphasis in original).  Samsung quotes *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1013 (9th Cir. 1999), for the proposition that if the whole is nothing other than the assemblage of functional parts "where even the arrangement and combination of the parts is designed to result in superior performance," the whole is still functional.  This quote is highly misleading.  *Leatherman* agrees that "trade dress must be viewed as a whole."  Second, the instruction mentions the "cost or quality" standard but does not explain it with reference to the four-factor test applied in the Ninth Circuit.  *See, e.g., Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) ("To determine whether a product feature is functional, we consider several factors . . .").  Third, Samsung's instruction states that trade dress is only non-functional if it "makes no contribution to the product's function or operation."  That is not the legal standard (*see, e.g., Dogloo, Inc. v. Doskocil Mfg. Co.*, 893 F. Supp. 911, 918 (C.D. Cal. 1995) ("It is well established that a product shape/configuration which is *primarily functional or utilitarian* cannot be capable of trademark protection.") (emphasis added)), and the cases cited by Samsung do not support such an expansive view.  Fourth, Samsung states that a "feature is functional" if it "is part of the actual benefit that consumers wish to purchase."  This will mislead the jury given the facts of this case, as Apple's design is a strong driver of demand for Apple's products, but desirability does not render trade dress unprotectable.  In a case cited by Samsung, the Ninth Circuit explained this distinction clearly: "Auto Gold argues that Volkswagen and Audi trademarks are functional features of its products because 'the trademark is the feature of the product which constitutes the actual benefit that the consumer wishes to purchase.'  While that may be so, the fact that a trademark is desirable *does not, and should not*, render it unprotectable."  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006).  Samsung's use of various phrases other than the legal standard will mislead the jury into believing exactly what the Ninth Circuit rejects: that desirability of Apple's designs renders them unprotectable.  Fifth, Samsung's claim that aesthetic functionality is anything that "improves the attractiveness and eye-appeal of the design" is an exceedingly overbroad standard that would swallow all trade dress.  That quote is from *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1068 (9th Cir. 2006), where the court recounts the history of the aesthetic functionality doctrine.  On the very next page of the same opinion—and repeated again several pages later—the Ninth Circuit "emphatically rejected the notion that any feature of a product which contributes to the consumer appeal and saleability of the product is, as a matter of law, a functional element of the product."  *Au-Tomotive Gold*, 457 F.3d at 1069, 1073.  Accepting such a broad view of aesthetic functionality would lead to the problematic view that "[t]he more appealing the design, the less protection it would receive."  *Id.* (internal quotation omitted).

**PROPOSED FINAL JURY INSTRUCTION NO. 63**
**TRADE DRESS DILUTION—ELEMENTS AND BURDEN OF PROOF**

**Apple's Proposed Instruction**

Apple contends that Samsung has diluted Apple's iPhone and iPad-related trade dresses. "Dilution" means a lessening of the capacity of a famous trade dress to identify and distinguish goods.

You must find for Apple on its dilution claim if, for any asserted trade dress, the following elements are proven:

      1.      Apple's trade dress is protectable;

      2.      Apple's trade dress is famous;

      3.      Samsung began selling its accused products in commerce after Apple's trade dress became famous; and

      4.      Samsung's accused products are likely to cause dilution of Apple's trade dress.

I have already instructed you on how to determine if each Apple trade dress is protectable. If you find that Apple has a protectable trade dress, then you should go on to consider elements 2-4 for each trade dress. For elements 2-4, Apple must persuade you that the element is more likely true than not.

**Source**

Adapted from ABA 3.4.1.

**Authorities**

15 U.S.C. § 1125(c)(2)(1) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."); 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark").

**Samsung's Objection to Apple's Instruction**

This instruction is confusing to the jury and prejudicial to Samsung. This Instruction again fails to properly identify Apple's burden of proof, which is accurately set forth in Samsung's Alternative to Apple's Proposed Final Instruction No. 63. In addition, by collapsing distinctiveness and non-functionality into a single element "protectability," Apple suggests that the jury need not separately consider those elements, which is particularly confusing in the case of Apple's iPhone dilution claims, for which the jury may not return to the trade dress infringement instructions. Further, the placement of this instruction after the preliminary trade dress infringement instructions is also confusing. It will be easier for the jurors to understand their task if the trade dress infringement instructions directly follow the instructions regarding whether trade dress is capable of being infringed (i.e., distinctiveness and non-functionality), and the dilution factors follow the instructions regarding whether trade dress is capable of being

1   diluted.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

In this case, Apple contends that Samsung has diluted Apple's trade dresses.

"Dilution" means a lessening of the capacity of a famous trade dress to identify and distinguish goods or services as coming from a single source. The purpose of the anti-dilution laws is to protect against erosion of a famous trade dress's value as a source identifier, or the tarnishment of a famous trade dress's image. The mere fact that consumers mentally associate the junior user's mark with the senior user's mark is not enough to establish dilution.

Dilution is reserved for a limited set of trade dresses that are famous, meaning that they are so widely known that they are like a household name among members of the general public. It will be for you to decide whether Apple's serted trade dresses are famous enough to be protected under dilution law and, if so, whether those trade dresses have been diluted.

**Source**

15 U.S.C. § 1125(c)(1); *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1179-1180 (9th Cir. 2007) ("Dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge their value."); *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002) ("[F]or purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way . . . the mark must be a household name.").

**Apple's Objection to Samsung's Instruction**

Samsung's instruction No. 63 is misleading and misstates the law in three ways. First, it refers to tarnishment, which is not at issue in this case. Second, it incorrectly states that association of the junior user's mark with the senior user's mark is not enough to establish dilution, when that is, in fact, the very test for dilution by blurring: 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark"). Third, Samsung's comment that the jury must decide if Apple's trade dresses are "famous enough" is misleading as it suggests multiple levels of fame. This instruction may improperly lead the jury to believe that it could find in favor of Apple on application of the test for fame but nevertheless determine that Apple's trade dress is not "famous enough" for dilution. Fourth, the statement that a famous trade dress is like a "household name" is likely to confuse the jury, as that language logically can only apply to word marks, not trade dress.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 63.1**
**TRADE DRESS DILUTION—ELEMENTS**

2

3      **Samsung's Proposed Instruction**

4      In order to prove dilution, Apple must prove **each** of the following elements by a preponderance
of evidence:

5

6              1.      That each of the alleged trade dresses are famous;

7              2.      That each of the alleged trade dresses are not functional;

8              3.      That each of the alleged trade dresses are distinctive by having acquired secondary
meaning;

9              4.      That each of the alleged trade dresses were famous before any of the accused
10     Samsung products were sold to the public; and

11             5.      That Samsung's alleged use of each of the claimed trade dresses is likely to cause
dilution of the distinctive quality of each alleged trade dress.

12     **Source**

13     *Visa Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010) ("A plaintiff
seeking relief under federal anti-dilution law must show that its mark is famous and distinctive,
14     that defendant began using its mark in commerce after plaintiff's mark became famous and
distinctive, and that defendant's mark is likely to dilute plaintiff's mark.").

15

16     **Apple's Objection to Samsung's Instruction**

17     Samsung's instruction No. 63.1 is also misleading, unnecessarily repetitive, and a misstatement
of the law.  First, this instruction on the elements of dilution is reached without *any* prior
18     instruction that Apple has a trade registration and that the trade registration entitles that trade
dress to a presumption of validity.  Because Apple's dilution claim is based in part on a
19     registered trade dress, this is highly misleading to the jury and prejudicial to Apple.  Second, the
instruction improperly suggests that Apple must prove secondary meaning, which, as discussed
20     above, does not apply to Apple's registered trade dress.  *See* 15 U.S.C. § 1115 (registration
constitutes prima facie evidence of validity); *Rodan & Fields, LLC v. Estee Lauder Cos.*, No. 10-
21     cv-02451-LHK, 2010 U.S. Dist. LEXIS 109573, at *15 (N.D. Cal. Oct. 5, 2010) (registration of
trade dress entitles owner to presumption of protectable rights under 15 U.S.C. § 1115(a);
22     plaintiff had to show inherent distinctiveness or secondary meaning "[b]ecause [its] trade dress
[was] not registered.").  Third, this instruction improperly suggests that Apple must prove
23     distinctiveness *again*, when distinctiveness has already been addressed in earlier instructions to
establish that Apple has protectable trade dress.  It will confuse the jury to suggest that Apple
24     must prove distinctiveness and non-functionality separately for its dilution claim.

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 63.2
## TRADE DRESS FUNCTIONALITY—DILUTION—BURDEN OF PROOF

2

3   **Samsung's Proposed Instruction**

4   As I have instructed you in connection with Apple's infringement claim, trade dress that is
functional is invalid and not protectable.  You must decide whether the product trade dress

5   asserted by Apple in this action is functional.

6   To prove trade dress dilution, Apple has the burden of proving by a preponderance of the
evidence that the claimed, unregistered trade dresses are not functional.

7

8   Samsung has the initial burden of proving by a preponderance of the evidence that the iPhone
trade dress depicted in U.S. Registration No. 3,470,983 is functional.  If Samsung makes this

9   showing, the burden shifts to Apple to prove by a preponderance of the evidence that the trade
dress is not functional.

10  **Source**

11  15 U.S.C. §1125(a)(3) ("In a civil action for trade dress infringement…for trade dress not
registered on the principal register, the person who asserts trade dress protection has the burden

12  of proving that the matter sought to be protected is not functional."); *Vuitton Et Fils S.A. v. J.
Young Enterprises, Inc.*, 644 F. 2d 769, 775 (9th Cir. 1981) ("registration ... shifts the burden of

13  proof from the plaintiff . . . to the defendant, who must introduce sufficient evidence to rebut the
presumption of plaintiff's right to such protected use.").

14

15  **Apple's Objection to Samsung's Instruction**

16  Samsung's instruction No. 63.2 is unnecessarily duplicative and misleading as it revisits the issue
of functionality as if Apple must *again* prove non-functionality, when that point is part of

17  protectability, not the dilution analysis.  Apple's dilution instruction, by contrast, mirrors the
statutory language in one simple and streamlined instruction.  Moreover, the instruction should

18  clarify for the jury that trade dress is the "total image and overall appearance" of a product.  *Two
Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992).

19

20  **Samsung's Statement in Support**

21  Instruction 63.2, which has no counterpart in Apple's jury instructions, addresses the burden of
proof.  This additional explanation is necessary to help the jury to understand which party should

22  prove the trade dresses at issue are functional or not functional.

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 64
### TRADE DRESS DILUTION ELEMENT #2—FAME

**Apple's Proposed Instruction**

A trade dress is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the trade dress owner.

To be "famous," each Apple trade dress must have been prominent and renowned at the time of Samsung's first sale of its accused products. It must have become widely recognized by the consuming public as the designator of its goods and must have such significant consumer associations that even uses of trade dress on non-competing goods could affect the value of the trade dress.

In determining whether each Apple trade dress is famous, you should consider all the relevant evidence, including the factors that follow below. These factors are suggestions and may not constitute all the evidence indicating whether a trade dress is famous. The presence or absence of any particular factor is not alone determinative:

1.     The duration, extent, and geographic reach of advertising and publicity of the trade dress, whether or not advertised or publicized by Apple;

2.     The amount, volume, and geographic extent of sales of goods offered under the trade dress;

3.     The extent of actual recognition of the trade dress; and

4.     Whether the trade dress is federally registered.

**Source**

Adapted from ABA 3.4.2—3.4.3.

**Authorities**

15 U.S.C. § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) [t]he extent of actual recognition of the mark; (iv) [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 8 (N.D. Cal., June 30, 2012) ("To establish a claim fo trade dress dilution, a plaintiff must show that (1) the trade dress is 'famous and distinctive,' (2) the defendant is 'making use of the [trade dress] in commerce,' (3) the defendant's 'use began after the [trade dress] became famous,' and (4) the defendant's use of the trade dress is 'likely to cause dilution by blurring' or by 'tarnishment.'") (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008)).

**Samsung's Objection to Apple's Instruction**

Apple's instruction does not fairly address three highly relevant factors that the jury should consider in determining whether a trade dress is famous:  First, to be considered famous, a trade dress must be must be so well known among the "general consuming public"—not just the smartphone or tablet consuming public—as to be akin to a "household name."  *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002) ("[F]or purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way. . . the mark must be a household name.").  Second, to be probative of fame, Apple's advertising must direct the consumer to those features claimed as trade dress or identify them, such as by directing the consumer to "look for" the claimed features.  *E.g., First Brands Corporation v. Fred Meyer, Inc.,* 809 F.2d 1378, 1383 (9th Cir. 1987) (advertisements must identify and feature the claimed trade dress in order to support a finding of secondary meaning).  "[U]nlike with a trademark, where repeated purchases of a product support an inference that consumers have associated the mark with the producer or source, one can much less confidently presume that a consumer's repeated purchase of a product has created an association between a particular product configuration and the source.");  While in trade*mark* cases, advertising may be presumed to strongly correlate with fame, that is not necessarily the case regarding product configuration.  *Continental Laboratory Products, Inc. v. Medax Intern., Inc.*, 114 F. Supp. 2d 992, 1002-03 (S.D.Cal. 2000) (quoting *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1452-53 (3d Cir. 1994).  Third, for the same reasons, sales are not necessarily evidence of fame if sales are more likely driven by the desirability of the product itself.  *See id., Autodesk, Inc., v. Dassault Systems Solidworks Corp.*, 685 F. Supp. 2d 1001, 1014 (N.D. Cal. 2009);*Walker & Zanger, Inc. v. Paragon Industries, Inc.,* 549 F. Supp. 2d 1168, 1180-81 (ND Cal 2007).  Further, Apple fails to state that it bears the burden of proving that its trade dress is famous.  Finally, Apple's title--TRADE DRESS DILUTION ELEMENT #2—FAME—highlights the confusing nature of the placement of the instruction, which does not follow a TRADE DRESS DILUTION ELEMENT #1 titled-instruction (which does not exist) but is followed by numbers 3 and 4, all sandwiched in the middle of the trade dress infringement instructions, which have no numbering.  Further, the "#2" title suggests that this is the second instruction relevant to dilution, even though, under Apple's structure it is the fifth.

1    **Samsung's Proposed Instruction**

2    Apple bears the burden of proving that each of its alleged trade dresses are famous.

3    Trade dress is considered to be famous if it is widely recognized by the general consuming public of the United States as a designation of the source of the products of the trade dress' owner.  To
4    be considered famous, a trade dress (or trademark) must be must be so well know as to be akin to a "household name."  The level of distinctiveness required to establish fame is significantly
5    greater than to establish secondary meaning.  For example, trademarks such as NISSAN and COACH have not been famous enough to be protected under dilution law.

6

7    You may consider the following factors when considering whether each of Apple's alleged trade dresses are famous.  These factors are only suggestions and may not constitute all of the possible types of evidence whether a trade dress is famous.  The presence or absence of any one particular
8    factor on this list should not necessarily determine whether a trademark is famous.  You should consider all the relevant evidence in making your determination.  These factors should be not be
9    counted up to see which party has more, but should be carefully weighed given the specific facts and circumstances of this case. The factors you should consider are:

10

11           1.      The duration, extent, and geographic reach of advertising and publicity of the trade dress, whether advertised or publicized by the owner or third parties.  To be probative of fame, Apple's advertising must direct the consumer to those features claimed as trade dress or identify
12    them, such as by directing the consumer to "look for" the claimed features.  Merely featuring the relevant aspect of the product does not suffice.

13

14           2.      The amount, volume, and geographic extent of sales of goods or services offered using the trade dress.  Although in some instances a large number of sales may be considered evidence of fame, in the case of trade dress for product design, sales are not necessarily evidence
15    of fame if sales are more likely driven by the desirability of the product itself.

16           3.      The extent of actual recognition of the trade dress; and

17           4.      Whether the trade dress is registered.

18    **Source**

19    15 U.S.C. § 1125(c)(2)(A) (defining a famous mark as "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the
20    mark's owner."); *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002) ("[F]or purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large
21    portion of the general consuming public recognizes that mark. Put another way. . . the mark must be a household name."); 15 U.S.C. § 1125(c)(1) (listing factors to assess fame); *Nissan Motor
22    Co. v. Nissan Computer Corp.*, 378 F. 3d 1002 (9th Cir. 2004); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 879 (9th Cir. 1999) ("[F]amousness requires more than mere
23    distinctiveness." ); *Jada Toys v. Mattel*, 496 F.3d 974, 981-82 (9th Cir. 2007); *Coach Services, Inc. v. Triumph Learning LLC*, 96 U.S.P.Q.2d 1600, 1611 (T.T.A.B. 2010) (COACH trademark
24    was not famous enough to qualify for dilution protection), *aff'd on point* 101 U.S.P.Q.2d 1713, 2012 WL 540069 (Fed. Cir. 2012); *TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244
25    F.3d 88 (2d Cir. 2001) (holding THE CHILDREN'S PLACE mark was not famous); *First Brands Corporation v. Fred Meyer, Inc.,* 809 F.2d 1378, 1383 (9th Cir. 1987) (advertisements
26    must identify and feature the claimed trade dress in order to support a finding of secondary meaning); *Yankee Candle Co., Inc. v. Bridgewater Candle Co.*, L.L.C., 259 F.3d 25, 44 (2d Cir.
27    2001) ("[I]t is advertising that specifically directs a consumer's attention to a particular aspect of the product. To be probative of secondary meaning, the advertising must direct the consumer to
28    the features claimed as trade dress. [citation] Merely 'featuring' the relevant aspect of the

1  product in advertising is no more probative of secondary meaning than are strong sales; again to
2  provide protection based on extensive advertising would extend trade dress protection to the
   [elements for which protection is sought] without any showing that the consumers associate the
   dress with the product's source."); *Continental Laboratory Products, Inc. v. Medax Intern., Inc.*,
3  114 F. Supp. 2d 992, 1002-03 (S.D.Cal. 2000) (quoting *Duraco Prods., Inc. v. Joy Plastic
   Enters., Ltd.*, 40 F.3d 1431, 1452-53 (3d Cir. 1994) ("Sales success by itself will typically not be
4  as probative of secondary meaning in a product configuration case as in a trademark case, since
   the product's market success may well be attributable to the desirability of the product
5  configuration rather than the source-designating capacity of the supposedly distinguishing
   feature or combination of features. And unlike with a trademark, where repeated purchases of a
6  product support an inference that consumers have associated the mark with the producer or
   source, one can much less confidently presume that a consumer's repeated purchase of a product
7  has created an association between a particular product configuration and the source.");
   *Autodesk, Inc., v. Dassault Systems Solidworks Corp.*, 685 F. Supp. 2d 1001, 1014 (N.D. Cal.
8  2009);*Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F. Supp. 2d 1168, 1180-81 (ND
   Cal 2007); 4 *McCarthy* § 15:47 at 15-67 ("Popularity of a product is not synonymous with
9  secondary meaning. Large sales of the product may be due to dozens of factors, only one of
   which may be the drawing power of the trademark.").
10

11  **Apple's Objection to Samsung's Instruction**

12  Samsung's instruction No. 64 is misleading and inaccurate.  First, it states that "trademarks such
   as NISSAN and COACH have not been famous enough to be protected under dilution law."  In
13  fact, the NISSAN mark *was* found to be famous.  In *Nissan Motor Co. v. Nissan Computer
   Corp.*, No. CV-99-12980, 2007 U.S. Dist. LEXIS 90487 at *31 (C.D. Cal. Sept. 21, 2007), after
14  a remand from the Ninth Circuit, the court found "[t]he Nissan mark was famous as of May
   1991 – before Nissan Computer began its commercial use of the mark."  *See also id.* at *36.  The
15  reference to COACH is highly misleading, as the decision Samsung cites is a Trademark Trial
   and Appeal Board decision in the U.S. Patent and Trademark Office in the context of an
16  opposition proceeding, not a Ninth Circuit case, and there was a highly fact-specific
   determination.  The COACH trademark owner provided evidence of sales and advertising for
17  only one year, presented that information only worldwide (without breaking down the
   information specific to the United States), and did not persuade the TTAB that it was the
18  "subject of intense media recognition."  *See Coach Services, Inc. v. Triumph Learning LLC*,
   96 U.S.P.Q.2d 1600, 1611 (T.T.A.B. 2010).  The finding on that limited record is irrelevant
19  given the facts of this case.  And if the Court were inclined to provide examples of marks held
   not famous, the instruction should also provide counterexamples of marks that *were* held famous,
20  such as NISSAN (*Nissan Motor Co.*, 2007 U.S. Dist. LEXIS 90487 at *31)), BURBERRY
   (*Burberry Ltd. v. Euro Moda, Inc.*, No. 08-Civ-5781 (CM), 2009 U.S. Dist. LEXIS 53250, at *33
21  (S.D.N.Y. June 10, 2009)), or Louis Vuitton's "Monogram Multicolore" mark (*Louis Vuitton
   Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 391 (S.D.N.Y. 2008)).  Second,
22  Samsung alters the wording of the model instruction to add "far" before "greater," implying a
   higher standard than the law requires.  Third, as with its secondary meaning instructions,
23  Samsung inserts improper caveats to the first two prongs of the test that have no basis in the law,
   implying that advertising must specifically identify claimed trade dresses and that sales for
24  product designs are less probative than sales for other types of products.  These are meritless
   assertions.  *See* Apple's Objections to proposed instruction Nos. 61.1 and 61.2  Fourth, the
25  statement that a famous trade dress is like a "household name" is likely to confuse the jury, as
   that language logically can only apply to word marks, not trade dress.
26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 64.1
## TRADE DRESS DILUTION—FAME—SURVEY EVIDENCE

**Samsung's Proposed Instruction**

Survey evidence is not necessary to support a finding of fame. But famousness requires a high level of consumer recognition of a claimed dress such that to support fame of an alleged trade dress, generally, some 75% or more of the general U.S. consuming public should recognize the trade dress as a designation of source of the goods or services of the alleged trade dress's owner.

**Source**

15 U.S.C. § 1125(c)(2)(A) (defining a famous mark as "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."); 4 *McCarthy on Trademarks and Unfair Competition* § 24:106, 24-310 (2008 ed.) ("[M]inimum threshold survey response should be in the range of 75% of the general consuming public of the United States."); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F. 3d 1002, 1014 (9th Cir. 2004) (survey showing 65% consumer recognition insufficient to prove fame); *Carnival Corp. v. SeaEscape Casino Cruises*, Inc., 74 F. Supp. 2d 1261, 1270-1271 (S.D. Fla. 1999) (68% consumer recognition did not support a finding of fame); *Hershey Foods Corp. v. Mars, Inc.*, 998 F. Supp. 500, 515 (M.D. Pa. 1998) (abbreviated Reese's trade dress not found famous not withstanding a survey which found 94% of respondents recognized the abbreviated trade dress).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction , in particular its 75% "minimum," does not have any basis in the law. In fact, this Court's recent denial of Samsung's motion for summary judgment rebuts Samsung's proposed instruction, as it noted surveys are not required and cited a case in which a court found a factual issue as to fame with a survey showing 65% recognition. (Dkt. No. 1158 at 10-11.)

**Samsung's Statement in Support**

Instruction 64.1 also addresses the fame of trade dress and specifically, the level of consumer recognition to establish fame. Even if there were no survey evidence, this authority helps the jury quantify the concept of fame. Informing the jury of the cited authority that surveys showing less than 75% of the U.S. consuming public recognizing the trade dress as a designation of the source of the trade dress is insufficient to establish fame will help the jury evaluate the surveys in this action in accordance with applicable precedent. Apple did not submit any competing instruction.

**PROPOSED FINAL JURY INSTRUCTION NO. 65**
**TRADE DRESS DILUTION ELEMENT #3—USE OF ACCUSED TRADE DRESS IN**
**COMMERCE AFTER APPLE TRADE DRESS BECAME FAMOUS**

### Apple's Proposed Instruction

A claim for dilution requires that the defendant's accused products were first offered in commerce after the plaintiff's trade dress became famous.

For each asserted Apple iPhone-related trade dress, you must therefore determine whether the trade dress became famous before Samsung's first sale of an accused smart phone product on July 15, 2010.

For each asserted Apple iPad-related trade dress, you must determine whether the trade dress became famous before Samsung's first sale of an accused tablet computer product on June 8, 2011.

**Source**

Adapted from ABA 3.4.1.

**Authorities**

15 U.S.C. § 1125(c)(2)(1) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.").

### Samsung's Objection to Apple's Instruction

Apple incorrectly states that it should prove iPhone-related trade dress became famous by July 15, 2010. The instruction should be corrected to reflect that Apple must prove its iPhone trade dresses were famous by November 2007, the date the Samsung first offered for sale a product that Apple alleges used the iPhone trade dress. *See* Amended Complaint Paragraph 80 ("Samsung released the Samsung F700 in November 2007 — copying the clean flat clear surface of the Apple iPhone Trade Dress and the Apple iPhone/iPhone 3G/iPhone 4 Trade Dress."); Transcript of June 21, 2012 proceedings at 4 (Court: "what evidence is there in the record that establishes fame at those moments for, you know, the first Samsung smartphone, November of '07…?"); *see also Nissan Motor Co. v. Nissan Computer Corp*., 378 F.3d 1002, 1013 (9th Cir. 2004) (holding that a defendant's first use of an allegedly famous mark, not the first use that a trademark holder finds objectionable, "fixes the time by which famousness is to be measured"). Apple also fails to state that it bears the burden of proof. This instruction also suffers from the placement confusion described in Samsung's objection to instruction No. 64.

**Samsung's Proposed Instruction**

Apple must prove that each of its claimed trade dresses were famous prior to the time that Samsung began the accused use.

Apple must prove by a preponderance of the evidence that its claimed iPhone trade dresses were famous by November 2007, the date Samsung first sold a product accused of using the iPhone trade dress.

Apple must prove by a preponderance of the evidence that its claimed iPad trade dress was famous by June 8, 2011, the date Samsung first sold a product accused of diluting the iPad trade dress.

Apple must prove by a preponderance of the evidence that its claimed iPad 2 trade dress was famous by June 8, 2011, the date Samsung first sold a product accused of diluting the iPad 2 trade dress.

If Apple has proven by a preponderance of the evidence that a particular trade dress was famous as of the date indicated, then Apple has proven the element of fame.  If Apple has not proven that a particular trade dresses was famous as of the date indicated, then Apple has not proven the element of fame, and you must find for Samsung on Apple's dilution claim as to that trade dress.

**Source**

*Visa Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010) ("A plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark."); Amended Complaint Paragraph 80 ("Samsung released the Samsung F700 in November 2007 — copying the clean flat clear surface of the Apple iPhone Trade Dress and the Apple iPhone/iPhone 3G/iPhone 4Trade Dress.").

**Apple's Objection to Samsung's Instruction**

Samsung's instruction No. 65 sets out the wrong release dates for accused products.  The first product accused of diluting the iPhone-related trade dresses (the Galaxy S Vibrant) went on sale on July 15, 2010.  (Dkt. No. 1189-0 at 11.)  The relevant date by which Apple must prove fame for these trade dresses is thus July 15, 2010, not November 2007.

## PROPOSED FINAL JURY INSTRUCTION NO. 66
## TRADE DRESS DILUTION ELEMENT #4—DILUTION

**Apple's Proposed Instruction**

Dilution is an association arising from the similarity between the appearance of the defendant's accused products and the plaintiff's trade dress that impairs the distinctiveness of the plaintiff's trade dress.  A dilution claim does not require a finding of actual dilution of the plaintiff's trade dress.  It is sufficient for you to find here that Samsung's sale of its accused products is likely to cause dilution of an asserted Apple trade dress.

In determining whether the appearance of Samsung's accused products is likely to cause dilution, you may consider all relevant factors, including:

1. the degree of similarity between Samsung's accused products and Apple's trade dress;

2. the degree of acquired distinctiveness of Apple's trade dress;

3. the extent to which Apple has authorized anyone else to use its trade dress;

4. the degree of recognition of Apple's trade dress;

5. whether Samsung intended to create an association with Apple's trade dress; and

6. any actual association between Samsung's and Apple's trade dresses.

The presence or absence of any particular factor should not necessarily resolve whether there is a likelihood of dilution.  You must consider all relevant evidence in deciding this question.

**Source**

Adapted from ABA 3.4.4.

**Authorities**

15 U.S.C. § 1125(c)(2)(1) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."); 15 U.S.C. § 1125(c)(2)(B) ("In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following: (i) [t]he degree of similarity between the mark or trade name and the famous mark; (ii) [t]he degree of inherent or acquired distinctiveness of the famous mark; (iii) [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) [t]he degree of recognition of the famous mark; (v) [w]hether the user of the mark or trade name intended to create an association with the famous mark; (vi) [a]ny actual association between the mark or trade name and the famous mark."); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 n.2 (9th Cir. 2008) ("[T]he FTDA has been amended so as to require only a likelihood of dilution to succeed.  Trademark Dilution Revision Act of 2006 ("TDRA"), Pub. L. No. 109-312 § 2(1), 120 Stat. 1730.").

**Samsung's Objection to Apple's Instruction**

Apple's instruction on the degree of acquired distinctiveness is inaccurate, incomplete, and does not provide the jury with enough detail on the association factor to assess its product configuration dilution claims. Apple's proposed instruction replaces the statutory exclusivity of use factor with one Apple invented—the extent to which Apple has authorized others to use its trade dress. Apple cites no justification for this new factor and there is none. Indeed, it is the extent of *un*authorized uses by third-parties that bears on the capacity of a trade dress to be diluted. *E.g., CG Roxane LLC v. Fiji Water Co. LLC,* 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ("Courts view a mark's use by competitors as strong evidence of how the public perceives the term. …Naturally, when more members of the public see a mark used by several producers in the industry, the less likely they will identify a particular producer with that mark.") (internal quotation marks, citations omitted). By not clarifying that the relevant association must arise solely from protectable trade dress, Apple encourages the jury to speculate that any association between the products or companies favors a finding of dilution, even if, for example, the association arises from knowledge that Samsung supplies Apple with components for its products or the fact that some consumers may use "iPad" or "iPhone" generically to describe tablet computers and smartphones. In addition, the reference to "actual dilution" is also unnecessary, confusing, and prejudicial. The jury does not need to understand the history of the Federal Trademark Dilution Act of 1995, and this additional information will lead to jury confusion and prejudice to Samsung because the jury must find actual dilution to award damages for dilution. Telling them at this stage, without qualification, that actual dilution is not necessary will conflict with the later instruction. Finally, this instruction also suffers from the placement confusion described in Samsung's Objection to Apple's Proposed Final Instruction No. 64.

**Samsung's Proposed Instruction**

To prove dilution of an alleged trade dress by blurring, Apple must prove by a preponderance of the evidence that the accused Samsung products have created an association with Apple which impairs the distinctiveness of those alleged trade dresses.

Factors you can consider in determining whether dilution by blurring has occurred include:

     1.     The degree or similarity between the alleged trade dress and the accused product.. The more similar they are, the more likely an association will arise between the products.

     2.     The degree of acquired distinctiveness through secondary meaning of Apple's alleged trade dresses.  The more distinctive a trade dress is in the marketplace, the greater protection it is entitled to.  On the other hand, if trade dress is common in the marketplace, it is entitled to less protection from dilution.

     3.     The extent to which Apple is engaged in substantially exclusive use of the alleged trade dresses.  If you find that companies other than Apple use the same or similar trade dress in connection with smart phones or tablets, then dilution by blurring is less likely.

     4.     The degree of recognition of the alleged trade dresses with Apple;

     5.     Whether Samsung intended to create an association with Apple's alleged trade dresses; and

     6.     Any actual association between the alleged trade dress and the accused products. The association must be created solely by the similarity of the trade dresses and not from some other source.  In other words, this means that the required "association" cannot be created just because the two products possess some similar characteristics.

These factors should be weighed by you given the facts and circumstances of the case.

**Source**

15 U.S.C. § 1125(c)(2)(B) (listing non-exhaustive factors for dilution by blurring); 4 *McCarthy* § 24:119 (discussing the meaning and significance of each of the TDRA dilution by blurring factors); *id*. ("Consideration of third party uses is relevant both here, in determining if blurring is likely, as well as in the first instance in determining if a mark is "famous."  A mark that is merely one of several identical or very similar marks is already "diluted" in fact.  In such a case, the junior user's actions can hardly be said to be likely to cause any significant further "dilution" of such a mark. . . . The statute does not require that the mark be "unique" in the strict sense: one of a kind. There can be some existing third party uses that do not significantly impact on the public mind, but if there are third party uses, the scope of protection against blurring may be constricted according to the quantity and type of the third party uses."); *id.,* at § 24:116 ("The required 'association' must be created solely by the similarity of the conflicting marks, not from some other source. This means that the required 'association' cannot be created just because the two products possess some similar characteristics."); *Schwan's IP, LLC v. Kraft Pizza Co.,* 460 F. 3d 971 (8th Cir. 2006) (considering use of mark by third-parties and newspapers); *CG Roxane LLC v. Fiji Water Co. LLC,* 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ("Courts view a mark's use by competitors as strong evidence of how the public perceives the term. …Naturally, when more members of the public see a mark used by several producers in the industry, the less likely they will identify a particular producer with that mark.") (internal quotation marks, citations omitted).

1    **Apple's Objection to Samsung's Instruction**

2    Samsung's proposed instruction No. 66 is wrong for three reasons.  First, there is no reason for
     the commentary Samsung adds to most of the factors.  This is particularly problematic as
3    Samsung's commentary blurs the second and third prong by stating that trade dress is less
     distinctive if common in the marketplace, while the commentary on the sixth factor suggests that
4    association cannot be based upon similarities in the products, when this type of association is
     what the trade dress laws are intended to address.  Second, Samsung omits timing from both the
5    second and third prong, implying that other companies *currently* using similar trade dresses
     would weaken Apple's rights, which is incorrect as distinctiveness and exclusivity are judged as
6    of the time of the dilution starts.  *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002,
     1013 (9th Cir. 2004) (fame measured for dilution claim as of first arguably diluting use).
7    Moreover, if additional commentary is to be added addressing "substantially exclusive use,"
     whether to the third prong or both the second and third prong, it should be countered with the
8    following point: "Extensive advertising and enforcement policies are also relevant in determining
     substantially exclusive use."  *See, e.g.*, *Gen. Motors Co. v. Urban Gorilla, LLC*, No. 2:06-cv-
9    00133, 2010 U.S. Dist. LEXIS 136711, at *38-39 (D. Utah Dec. 27, 2010); *New York City
     Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) (requiring
10   written approval before use of mark relevant to determining substantial exclusivity).  Third,
     Samsung omits any mention that presence or absence of a single factor is not dispositive.  *See,
11   e.g.*, *Pendleton Woolen Mills, Inc. v. Round Up Ass'n*, No. 3:11-CV-592-AC, 2012 U.S. Dist.
     LEXIS 94502, at *11 (D. Or. July 9, 2012) (statute identifies factors courts may consider, along
12   with other relevant factors).  By contrast, Apple's proposed instruction presents the statutory test
     without unnecessary commentary on the factors, clarifies that confusion is not required, and notes
13   that presence or absence of any particular factor does not resolve the issue.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 67**
**TRADE DRESS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF**
**(15 U.S.C. § 1125(A)(1))**

**Apple's Proposed Instruction**

Apple also claims that Samsung infringed its unregistered iPad-related trade dress. To prevail, Apple must persuade you that each of the following two elements is more likely than not true:

    1.    <u>Protectability</u>: I have instructed you already on how to determine if Apple's iPad-related trade dress is protectable. If you find for Apple on this issue, then you should consider the next element.

    2.    <u>Likelihood of Confusion</u>: This element requires you to determine whether the appearance of Samsung's accused tablet computer products is likely to cause confusion with Apple's iPad products. I will now instruct you on the factors you should consider in determining the issue of likelihood of confusion.

**Source**

Adapted from ABA 3.3.1.

**Authorities**

*Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (stating that plaintiff "must meet three elements: (1) nonfunctionality, (2) distinctiveness and (3) likelihood of confusion" to establish trade dress infringement).

**Samsung's Objection to Apple's Instruction**

This instruction will be confusing to the jury and prejudicial to Samsung. As modeled by the Ninth Circuit Model Jury Instructions, the jury first should be instructed on all the elements needed to establish trade dress infringement and then on each element. This Instruction again fails to explain Apple's burden of proof, which is properly set forth in Samsung's proposed instruction below—i.e, Apple must prove by a preponderance of the evidence that prospective consumers of tablet computers are likely to believe a Samsung product is an Apple product. A likelihood of confusion requires that confusion among reasonably prudent consumers is probable, and not merely a possibility. *E.g., Murray v. Cable Nat'l Broadcasting Co.*, 86 F.3d 858, 861 (9th Cir. 1996) (confusion must be "probable, not simply a possibility") (quoting *Rodeo Collection, Ltd. v. Western Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987)). The language of Apple's instruction suggests that confusion "between" the parties products, including consumers mistaking an iPad for a Galaxy Tab, would satisfy Apple's burden. That type of confusion, known as reverse confusion, was never pled by Apple nor disclosed in any of its discovery responses. To the extent Apple intends to allow the jury to consider such a theory, it is too late. Further, the placement of this instruction after the dilution instructions regarding whether trade dress is capable of being diluted is also confusing. It will be easier for the jury to understand their task if the trade dress infringement instructions directly follow the instructions regarding whether trade dress is capable of being infringed.

**Samsung's Proposed Instruction**

In this action, Apple contends that Samsung's Galaxy Tab 10.1 tablet computers infringe Apple's unregistered trade dresses for the iPad and iPad 2 tablet computers.

To prove trade dress infringement, Apple bears the burden of proof by a preponderance of the evidence on each of the following elements for each of its claimed trade dresses:

      1.    Apple must prove that the claimed trade dresses are not functional.

      2.    Apple must prove that the claimed trade dresses have acquired distinctiveness through secondary meaning.

      3.    Apple must prove that Samsung used trade dress similar to Apple's claimed trade dresses without Apple's consent in a manner that is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of Samsung's goods.

If you find that **each** of the elements on which Apple has the burden of proof has been proved, your verdict should be for Apple.  If, on the other hand, Apple has failed to prove any one of these elements, your verdict must be for Samsung.

**Source** Ninth Circuit Model Instructions No. 15.6 (modified); *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 808 (9th Cir. 2003) ("Generally, to recover for trade dress infringement under [15 U.S.C.] § 1125, a plaintiff must show that 'its trade dress is protectable and that defendant's use of the same or similar trade dress is likely to confuse consumers.'  A trade dress is protectable if it is 'nonfunctional and has acquired secondary meaning and if its imitation creates a likelihood of consumer confusion.'") (citations omitted); *Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing as elements of proof necessary to show infringement of a bottle design as: "(1) nonfunctionality, (2) distinctiveness and (3) likelihood of confusion.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is misleading and unnecessarily duplicative.  Samsung does not have an instruction preceding its proposed instruction addressing the difference between registered and unregistered claims.  As a result, the statement in this instruction that Apple bears the burden of proof for "each of its claimed trade dresses" is ambiguous as to whether that means trade dresses only in the context of this particular instruction, or all claimed trade dresses in the case.  Apple's approach is more streamlined and instructs the jury on protectability in a manner that can be applied to trade dress infringement, trade dress dilution, registered marks, and unregistered marks, without any ambiguity.

**PROPOSED FINAL JURY INSTRUCTION NO. 68
INFRINGEMENT—LIKELIHOOD OF CONFUSION**

**Samsung's Proposed Instruction**

To prevail on its trade dress infringement claim, Apple must prove by a preponderance of the evidence that there is a likelihood of consumer confusion between Samsung's Galaxy Tab 10.1 and the trade dresses of Apple's iPad and iPad 2 tablet computers that Apple is claiming.  In other words, Apple must prove that prospective consumers of tablet computers are likely to mistakenly purchase a Samsung Galaxy Tab 10.1 tablet computer believing that it is an Apple iPad or iPad 2 tablet computer.

A likelihood of confusion requires that you find that confusion among reasonably prudent consumers is probable, and not merely a possibility.

**Source**

Ninth Circuit Model Instructions No. 15.16 (modified); *Murray v. Cable Nat'l. Broadcasting Co.,* 86 F.3d 858, 861 (9th Cir. 1996) (confusion must be "probable, not simply a possibility") (*quoting Rodeo Collection, Ltd. v. Western Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987)).

**Apple's Objection to Samsung's Instruction**

Samsung's instruction No. 68 misstates the law and is inappropriate to this case.  First, the instruction improperly limits likelihood of confusion to the point of purchase.  The Lanham Act reaches post-sale confusion.  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032 (9th Cir. 2010); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.* 944 F.2d 1446, 1455 (9th Cir. 1991).  Second, the instruction improperly requires proof that prospective consumers are likely to mistakenly purchase a Samsung Galaxy Tab 10.1 believing it to be an iPad.  In fact, the Lanham Act reaches likelihood of confusion as to source, sponsorship, or affiliation; it does not discuss likelihood of mistaken purchases.  15 U.S.C. § 1125.  Third, Samsung imposes additional qualifiers beyond the *Sleekcraft* test, by suggesting the requirement is "probable" confusion among "reasonably prudent" consumers.  The operative test, set out in *Sleekcraft*, does not use this language.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-53 (9th Cir. 1979).

**Samsung's Statement in Support**

As discussed in Samsung's Objection to Apple's Proposed Final Instruction No. 67, Samsung's instruction is accurate under Ninth Circuit precedent and consistent with Ninth Circuit Model Instruction No. 15.16.  It is therefore clearer and more complete.

**PROPOSED FINAL JURY INSTRUCTION NO. 69
TRADE DRESS INFRINGEMENT—LIKELIHOOD OF CONFUSION—SLEEKCRAFT
TEST (15 U.S.C. §§ 1114(1), 1125(A))**

**Apple's Proposed Instruction**

You must decide whether Samsung's use of its accused products is likely to cause confusion about the source of Samsung's tablet computer products. Confusion in the marketplace can occur at three distinct times: Confusion in the marketplace can occur at three distinct times: before the purchase (also called "initial interest" confusion), at the moment of the purchase (also called "point of sale" confusion), and after the purchase (also called "post-sale" confusion). .

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor should not necessarily resolve whether there was a likelihood of confusion. You must consider all relevant evidence in determining this. As you consider the likelihood of confusion, you should examine the following:

1. Strength or Weakness of Apple's Trade Dress. The more the public recognizes Apple's trade dress as indicating the origin of Apple's goods, the more likely it is that consumers would be confused about the source of Samsung's goods with a similar appearance.

2. Samsung's Use of the Accused Designs. If Samsung's accused products and the products that embody Apple's asserted trade dresses are the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source of the goods.

3. Similarity of Apple's and Samsung's Trade Dress. If the overall impression created by Apple's trade dress in the marketplace is similar to the impression created by the appearance of Samsung's accused products, there is a greater chance of likelihood of confusion. Similarities in appearance weigh more heavily than differences in finding the trade dress is similar.

4. Actual Confusion. If the appearance of Samsung's accused products has led to actual confusion with the products that embody Apple's asserted trade dresses, this strongly suggests a likelihood of confusion. But actual confusion is not required. You should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few instances of actual confusion, you may find there has not been substantial actual confusion.

5. Samsung's Intent. Knowing use by Samsung of a design similar to Apple's trade dress on similar goods may strongly show an intent to derive benefit from the reputation of Apple's trade dress, suggesting an intent to cause a likelihood of confusion.

6. Marketing/Advertising Channels. If Apple's and Samsung's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7. Consumer's Degree of Care. The more sophisticated the potential consumers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent consumer exercising ordinary caution may be. They may be less likely to be confused by similarities in Apple's and Samsung's trade dress.

When considering this factor, please keep in mind that the application of discrimination and scrutiny by a consumer to financial terms such as data plans does not necessarily equate to discrimination and scrutiny regarding product appearance.

**Source**

Ninth Circuit Model Civil Jury Instr. - 15.16 (2007 Ed.).

**Authorities**

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (setting out likelihood of confusion factors); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030-31 (9th Cir. 2010) (applying *Sleekcraft* test); *Metro Pub. v San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("Because each factor is not necessarily relevant to every case, this list [of likelihood of confusion factors] functions as a guide and is 'neither exhaustive nor exclusive.'"); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032 (9th Cir. 2010); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.* 944 F.2d 1446, 1455 (9th Cir. 1991).

**Samsung's Objection to Apple's Instruction**

Apple's proposed instruction gives a misleading impression of what the jury should consider in evaluating the likelihood of confusion factors. <u>First</u>, in paragraph 3, Apple adds language not dictated by the Ninth Circuit Model Rules: "Similarities in appearance weigh more heavily than differences in finding the trade dress is similar." The optional Ninth Circuit language Apple modified is about trademarks, not trade dress: "Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar." Modifying that language as Apple has done for use in a product configuration case, where functionality concerns, at a minimum, significantly influence the appearance of the products is not appropriate and would unfairly prejudice Samsung. *E.g., Motorola Inc. v. Qualcomm Inc.*, 45 U.S.P.Q.2d 1558 (S.D. Cal. 1997), aff'd without op., 135 F.3d 776 (Fed. Cir. 1998) ("While [defendant's] phone has many of the same features as [plaintiff's phone], many of these features are functional and the two phones are sufficiently distinct."); *OddzOn Products, Inc. v. Just Toys, Inc*., 122 F.3d 1396 (Fed. Cir. 1997) (the mistaken association in the survey of plaintiff's and defendant's products in a line-up including three additional products that lacked the functional attributes of the two conflicting products "is not probative of trade dress infringement"). <u>Second</u>, Apple's instruction regarding intent similarly ignores justifiable reasons that a plaintiff's product configuration could be known and used by defendants without intent to deceive such as to use "wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 844-845 (9th Cir. 1987); *see also Walker & Zanger, Inc. v. Paragon Indus., Inc.,* 549 F. Supp. 2d 1168, 1181 (N. D. Cal. 2007) (found no secondary meaning because competitors may intentionally copy product features for a variety of reasons); *Libman Co. v. Vining Industries, Inc*., 69 F. 3d 1360, 1363 (7th Cir. 1995) ("Vining noticed that Libman's brooms were selling briskly, inferred that consumers like brooms with contrasting color bands, and decided to climb on the bandwagon. We call that competition, not bad faith, provided there is no intention to confuse, and, so far as appears, there was none."). 4 McCarthy §§ 8:19, 23:122 at 23-377 (2012 ed.) ("If all that happens is that a junior user copies a competitor's trade dress design because it sells better and consumers seem to like it, then this is not evidence of an intent to confuse."). <u>Third</u>, in Paragraph 7, Apple introduces an additional instruction: "When considering this factor, please keep in mind that the application of discrimination and scrutiny by a consumer to financial terms such as data plans does not necessarily equate to discrimination and scrutiny regarding product appearance." The Ninth Circuit Model Jury Instructions does not include the any language along those lines. Nor

does Apple cite any authority supporting the addition of language that restricts consideration of actual market place conditions. This is because market place conditions, i.e., "what consumers 'encounter[] in the marketplace,'" are the core assessment of the likelihood of confusion. *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011); see also id. at 1152 ("the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace") (citing *Toyota Motor Sales v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ("Consumers who use the internet for shopping are generally quite sophisticated about such matters.")); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999) ("What is expected of this reasonably prudent consumer depends on the circumstances."); *see also Beer Nuts v. Clover Club Foods Co.*, 805 F.2d 920, 926-27 (10th Cir. 1986) ("[T]he court must examine the degree of care with which the public will choose the products in the marketplace. . . . Buyers typically exercise little care in the selection of inexpensive items [such as peanuts] that may be purchased on impulse. Despite a lower degree of similarity, these items are more likely to be confused than expensive items which are chosen carefully."). Fourth, Apple's instruction fails to identify that Apple bears the burden of proving likelihood of confusion. Fifth, Apple introduces a theory of trade dress infringement based on initial interest confusion for the first time. This new theory was never pled in Apple's complaint, never provided in iterations of Apple's infringement contentions, and not pursued during discovery, and thus should be excluded from trial. Fed.R.Civ.P. 26(a), 37(c)(1); *See Accentra Inc. v. Staples, Inc.*, No. CV 07-5862 ABC (RZx), 2010 WL 8450890, *23 (C.D. Cal. Sept. 22, 2010) (granting the defendant's motion in limine excluding a new induced infringement theory introduced for the first time in the plaintiff's proposed jury instructions). Further, Apple's instruction is misleading and unfairly prejudicial because it improperly injects the concepts of "initial interest confusion," "point-of-sale confusion" and "post-sale confusion" into the pivotal instruction on consumer confusion. Apple has deviated from the Ninth Circuit Model Instruction No. 15.16 by abruptly introducing these concepts (which do not appear in the model instruction) without any explanation or context. The jury will be confused by the way Apple's instruction identifies these distinct theories of consumer confusion, but fails to explain how, if at all, they apply to this case. Nor does this instruction describe Apple's considerable burden with respect to proving each of these forms of confusion, particularly given their inapplicability to the facts of this case:

- First, Apple's instruction is improper because it misleadingly implies that the jury may find liability for trade dress infringement based solely of a finding of "confusion" at any point before, during or after the sale of a Samsung tablet without also finding that the confusion affected a purchase decision. This is not the law. Ninth Circuit holds that consumer confusion in general is not actionable; only consumer confusion that affects a purchasing decision is sufficient to prove trade dress infringement. *See Rearden LLC v. Rearden Commerce, Inc.*___ F.3d ___, 2012 WL 2402012, *19 (9th Cir. June 27, 2012) ("[t]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (quoting *Bosley Med. Ins., Inc. v. Kremer*, 403 F.3d 673, 677 (9th Cir. 2005).

- Second, Apple's instruction is improper because it identifies "initial interest" confusion as an available form of consumer confusion, ignoring that the doctrine has been rejected in the context of product configuration. *See, e.g., Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539 (6th Cir. 2005) ("Given severe anti-competitive effects such a decision could have, we do not believe it is appropriate to extend the initial-interest-confusion doctrine in this manner."); *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796 (7th Cir. 2002) (rejecting non-point-of-sale confusion involving grille shape of expensive jeep); *Dorr-Oliver*, 94 F.3d 376, 383 (7th Cir. 1996) (rejecting plaintiff's theory of initial interest confusion and stating that "where product configurations are at issue, consumers are generally more likely to think that a competitor has entered the market with a similar product assume that the two manufactures are associated…"); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193 (1st Cir. 1980) (rejecting pre-sale confusion

claim involving the silhouette of a high-price wood burning stove because no likelihood of confusion when the manufacturer's name is clearly displayed). Given that consumers "almost invariably" do not perceive product configurations as indicators of source, *see Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 213 (2000), the initial interest confusion should not be applied here.

▪ Third, Apple's proposed instruction is improper because initial interest confusion requires a finding that a significant number of consumers are likely to go to a store or a website with the intention of purchasing an iPad and mistakenly assume that a Samsung tablet computer is an iPad and then, even once their initial assumption is corrected, decide to purchase the Samsung tablet computer because it would be too much effort to locate an iPad instead. *Brookfield Communications, Inc. v. West Coast Entm't,* 174 F.3d 1036, 1066 (9th Cir. 1999) ("Suppose West Coast's competitor (let's call it "Blockbuster") puts up a billboard on a highway reading—"West Coast Video: 2 miles ahead at Exit 7" — where West Coast is really located at Exit 8 but Blockbuster is located at Exit 7. Customers looking for West Coast's store will pull off at Exit 7 and drive around looking for it. Unable to locate West Coast, but seeing the Blockbuster store right by the highway entrance, they may simply rent there. Even consumers who prefer West Coast may find it not worth the trouble to continue searching for West Coast since there is a Blockbuster right there. Customers are not confused in the narrow sense: they are fully aware that they are purchasing from Blockbuster and they have no reason to believe that Blockbuster is related to, or in any way sponsored by, West Coast."). Apple has never identified any such evidence.

▪ Fourth, Apple's instruction on initial interest confusion is also improper because initial interest confusion in the 9th Circuit has been limited almost exclusively to the misleading use of trademarks in the Internet context. *See Brookfield Commc'ns v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) (applied to domain name and website metatags); *Playboy Enter., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020 (9th Cir. 2004) (applied to keywords in banner advertising); *Internet Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107 (9th Cir. 1999) (applied to domain name); *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 55 F.Supp.2d 1070, 1074 (C.D. Cal. 1999) (initial interest confusion is "brand of confusion particularly applicable to the Internet." ); *Golden West Financial v. WMA Mortg. Services, Inc.*, 2003 WL 1343019 at *7 (N.D. Cal. 2003) (noting that "Brookfield has marginal application to this case which does not focus primarily on the Internet user"); *Shell Trademark Management BV*, 2002 WL 32104586 at *1 (N.D. Cal. May 21, 2002) ("[T]he evolving doctrine of infringement by initial interest confusion, applied primarily in the Internet context").

▪ Fifth, Apple's inclusion of an instruction on post-sale confusion is also improper because Apple does not maintain that it has sustained reputational injury, which is precisely the harm post-sale confusion seeks to address. *See Karl Storz Endoscopy v. Surgical Tech, Inc.*, 285 F.3d 848, 854 (9th Cir. 2002 (post-sale confusion results in reputational injury); *adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1058 (D. Or. 2008) (adidas proffered evidence that post-sale confusion "negatively impact consumer perceptions of the adidas brand as a source of quality footwear" given the "inferior quality" of Payless' shoes). Apple is not pursuing dilution by tarnishment (i.e.—injury to its reputation), *see* Apple's Response to Interrogatory No. 70 (omitting dilution by tarnishment as a basis for claimed dilution) nor has its damages expert opined on or attempted to quantify a diminution in value to the trade dresses asserted, *see* Expert Report of Terry L Musika. In addition, Apple has not identified any authority for the application of post-sale confusion arising in the product configuration context, and the cases that Apple does cites in support of its instruction are highly distinguishable—one involving confusion arising from the sale of a statuette designed to mimic the famous Oscar statue and the other involving the use of plaintiffs trademark printed on a tee-shirt.

1   Neither of these cases is even remotely similar to the facts here where the trade dress at
2   issue is embodied in the product design and where there is no evidence that the sale harms
    Apple's reputation.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **Samsung's Proposed Instruction**

2    I will suggest some factors you should consider in deciding whether there is a likelihood of
     consumer confusion based on Apple's alleged iPad trade dress or alleged iPad 2 trade dress.  The
3    presence or absence of any particular factor that I suggest should not necessarily resolve whether
     there was a likelihood of confusion, because you must consider all relevant evidence in
4    determining this.

5          1.      Strength or Weakness of the Plaintiff's Trade Dress. The more the consuming
     public recognizes the plaintiff's trade dress as an indication of origin of the plaintiff's goods, the
6    more likely it is that consumers would be confused about the source of the defendant's goods if
     the defendant uses a similar trade dress.

7
           2.      Defendant's Use of the Trade Dress. If the defendant and plaintiff use their trade
8    dress on the same, related, or complementary kinds of goods there may be a greater likelihood of
     confusion about the source of the goods than otherwise.

9
           3.      Similarity of Plaintiff's and Defendant's Trade Dress.  If the overall impression
10   created by the plaintiff's trade dress in the marketplace is similar to that created by the
     defendant's trademark in appearance there is a greater chance of likelihood of confusion.

11
           4.      Actual Confusion.  If use by the defendant of the plaintiff's trade dress has led to a
12   significant number of instances of actual confusion, this suggests a likelihood of confusion.  As
     you consider whether the trade dress used by the defendant creates for consumers a likelihood of
13   confusion with the plaintiff's trade dress, you should weigh any instances of actual confusion
     against the opportunities for such confusion.  If the instances of actual confusion have been
14   relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast,
     there is a very large volume of sales, but only a few isolated instances of actual confusion you
15   may find that there has not been substantial actual confusion.

16         5.      Defendant's Intent.  If the defendant adopted trade dress similar to the plaintiff's
     with the intent to deceive consumers, this increases the likelihood of consumer confusion.
17
           6.      Marketing/Advertising Channels. If the plaintiff's and defendant's products are
18   likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may
     increase the likelihood of confusion.

19
           7.      Consumer's Degree of Care.  The more sophisticated the potential buyers of the
20   goods or the more costly the goods, the more careful and discriminating the reasonably prudent
     purchaser exercising ordinary caution may be. They may be less likely to be confused by
21   similarities in the plaintiff's and defendant's trade dresses.

22   **Source**

23   Ninth Circuit Model Instructions No. 15.16 (modified); *Art Attacks, LLC. v. MGA Entertainment
     Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009) ("To prove trade dress infringement, a plaintiff must
24   demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary
     meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and
25   defendant's products"); *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F. 3d
     1137, 1144 (9th Cir. 2011) ("[W]e must apply the *Sleekcraft* test in a flexible manner, keeping in
26   mind that the eight factors it recited are not exhaustive, and that only some of them are relevant
     to determining whether confusion is likely in the case at hand.").

27

28

1 | **Apple's Objection to Samsung's Instruction**

2 | Samsung's instruction No. 69 lists the correct *Sleekcraft* factors, but makes numerous one-sided
and inappropriate edits that misrepresent application of the test. First, it omits the important
3 | language that similarities in appearance weigh more heavily than differences. *Entrepreneur
Media v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002) (that "[s]imilarities weigh more heavily
4 | than differences" is one of three axioms of similarity analysis). Second, it adds to the actual
confusion prong the language "significant number" suggesting a minimum number must be
5 | reached before actual confusion is relevant, while omitting the points that actual confusion
"strongly" suggests, but is not required, for a finding of likelihood of confusion. *Clamp Mfg.
6 | Co. v. Enco Mfg. Co.*, No. CV-82-4352, 1987 U.S. Dist. LEXIS 13427, at *12-13 (C.D. Cal.
Aug. 10, 1987). The term "significant" does not appear in the Ninth Circuit model on which
7 | Samsung's instruction is based, nor in *Sleekcraft*. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341,
353 (9th Cir. 1979). In fact, while "significant" amounts of actual confusion may suggest
8 | likelihood of confusion, some courts have noted that actual confusion can be difficult to find, and
that "very little proof" of actual confusion still suggests likelihood of confusion. *See, e.g.*,
9 | *Citibank, N.A. v. City Bank of San Francisco*, No. C-79-1922, 1980 WL 30239, at *1009 (N.D.
Cal. Mar. 23, 1980) ("Very little proof of actual confusion would be necessary to prove
10 | likelihood of confusion."); *see also Metro Publ'g, Inc. v. Surfmet, Inc.*, No. C-02-01833, 2002
U.S. Dist. LEXIS 26232, at *25 (N.D. Cal. July 3, 2002) (evidence of actual confusion "strongly
11 | support[ed]" finding of likelihood of confusion). Third, Samsung alters the meaning of the
"intent" prong by asserting that only "intent to deceive" is relevant. The Ninth Circuit does not
12 | require that Apple prove "intent to deceive." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354
(9th Cir. 1979) (knowing adoption of mark similar to another's relevant to "intent").

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 69.1**
**LIKELIHOOD OF CONFUSION FACTORS— STRENGTH OF TRADE DRESS**

2

**Samsung's Proposed Instruction**

3

4

When products with similar trade dress permeate the marketplace, the strength of the trade dress decreases, and the likelihood that consumers will be confused is lessened.

5

**Source**

6

*Miss World (UK), Inc. v. Mrs. American Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) ("Simply put, a mark which is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive'. It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other."), *abrogated on other grounds*; *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F. 3d 971 (8th Cir. 2006) (considering use of mark by third-parties and newspapers); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ("Courts view a mark's use by competitors as strong evidence of how the public perceives the term. …Naturally, when more members of the public see a mark used by several producers in the industry, the less likely they will identify a particular producer with that mark.") (internal quotation marks, citations omitted).

7

8

9

10

11

12

**Apple's Objection to Samsung's Instruction**

13

Samsung's proposed instruction is misleading and confusing. First, Samsung is repeating the pattern it began with its secondary meaning instructions, inserting unnecessary and one-sided argumentative commentary on each individual factor of the test. Second, Samsung again ignores timing issues. *See, e.g.*, *Death Tobacco v. Black Death USA*, No. CV-92-6437-WMB, 1993 U.S. Dist. LEXIS 20646, at *12-13 (C.D. Cal. June 30, 1993) ("The proper time to assess the strength of a trademark is as of the time of the first alleged infringement.").

14

15

16

17

**Samsung's Statement in Support**

18

Instruction 69.1 addressing strength of trade dress, has no competing Apple instruction even though Ninth Circuit Model Jury Instruction 15.17 contains detailed information about strength of trademarks and trade dress, and even cites one of the cases Samsung relies on, *Miss World (UK) Ltd. v. Mrs. America Pageants*, 856 F.2d 1445, 1449 (9th Cir.1988). Although the Model Instruction does not propose an explanatory instruction for strength of trade dress, Samsung's short instruction captures the relevant point of its guidance for a case like this one, in which the marketplace is filled with products that have similar features and where, despite those similarities, customers are not confused and can easily distinguish among them.

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 69.2**
**LIKELIHOOD OF CONFUSION FACTORS—SIMILARITY OF TRADE DRESS**

2

**Samsung's Proposed Instruction**

3

4

5

In assessing similarity of the trade dresses, you may consider the use of the of the "Samsung" trademark on Galaxy Tab 10.1 product and Apple's use of Apple's trademarks and logos on the iPad and iPad 2 product.  If you find that the parties trade names or other source identifying features are featured prominently on the products, then consumer confusion is unlikely.

6

**Source**

7

8

9

10

11

*AMF Inc. v. Sleekcraft Boats,* 599 F. 2d 341, 351 (9th Cir. 1979) (use of a prominent "house-mark" reduces likelihood of confusion); *Rodan & Fields, LLC v. Estee Lauder Companies, Inc.,* No. 10–CV–02451–LHK,  2010 WL 3910178, *3 (Oct. 5, 2010, N.D. Cal) ("The prominence of the trade names on the packaging strongly supports a finding that consumer confusion is unlikely") (*citing Bristol–Myers Squibb Co. v. McNeil–P.P. C., Inc.,* 973 F.2d 1033, 1045–46 (2d Cir. 1992) ("[W]e conclude that, although [the trade dresses of Tylenol PM and Excedrin PM] share many similar elements, the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion resulting from the overall look of the packaging.")).

12

13

**Apple's Objection to Samsung's Instruction**

14

15

16

17

18

Samsung's proposed instruction consists of an improper factual argument, not a legal instruction.  First, there is no basis in the law for Samsung's instruction that consumer confusion is unlikely if trade names or logos are featured prominently on products.  For the cases it cites, Samsung's own parentheticals reveal that the cases do not hold as a matter of law that presence of trade names makes consumer confusion is unlikely.  Second, Samsung's assertion that prominent logos render confusion "unlikely" elevates this single fact above the test, as if it were to be weighed separately.  Third, Samsung's instruction assumes facts not in evidence—for example, the evidence at trial may show that when Samsung's products first entered the U.S. market, they did not have a SAMSUNG trademark featured prominently.

19

**Samsung's Statement in Support**

20

21

22

23

24

Instruction 69.2 addresses the impact of trademarks and logos in determining trade dress infringement.  Apple has not submitted a competing instruction.  Because trade dress law is designed in part to protect the public from being misled or confused in the market, as this Ninth Circuit precedent recognizes, a party's prominent use of a mark or logo on its products is highly relevant.  *E.g., Network Automation, Inc. v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137, 1150 (9th Cir. 2011)  ("[T]he proximity of the goods would become less important if advertisements are clearly labeled or consumers exercise a high degree of care, because rather than being misled, the consumer would merely be confronted with choices among similar products.")  This instruction will assist the jury with a clear and pertinent statement of the law.

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 69.3
## LIKELIHOOD OF CONFUSION FACTORS—INTENT

**Samsung's Proposed Instruction**

Mere attempts to copy a product are not necessarily probative of an intent to deceive consumers since it may well be emulating a desirable or functional feature of the product and not attempting to confuse consumers. The law permits a defendant to copy the plaintiff's product down to the minutest detail, as long as the defendant does not represent itself as the plaintiff in the sale of those products.

**Source**

*Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) ("The defendant . . . may copy plaintiff's goods slavishly down to the minutest detail; but may not represent himself as the plaintiff in their sale.") (internal quotation marks omitted); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844-845 (9th Cir. 1987) ("Competitors may intentionally copy product features for a variety of reasons. They may, for example, choose to copy wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits."); *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1085 (9th Cir. 2005) (found no intent because the defendant did not have "any intention of capitalizing on [plaintiff's] trademark.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law in the same manner as its proposed instruction 61.4, and miscites the same cases. *See* Apple's Objection to proposed instruction 61.4.

**Samsung's Statement in Support**

Instruction 69.3 addresses the importance of establishing an intent to capitalize on the plaintiff's mark and assists the jury in placing supposed "copying" activities into the proper context. Apple will present facts it will argue constitute willful copying, yet *Bonito Boats v. Thunder Craft Boats, Inc.,* 489 U.S. 141 (1989) establishes that such willful copying is irrelevant without the intent to confuse consumers. Apple has not submitted a competing instruction that reflects this important legal point.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 69.4**
**LIKELIHOOD OF CONFUSION FACTORS—ADVERTISING**

3

**Samsung's Proposed Instruction**

4

The fact that both Apple and Samsung advertise in mainstream media and sell their products on the Internet and other major retail chains does not weigh in favor of likely confusion because these channels are used by most commercial retailers today.

5

6

**Source**

7

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F. 3d 1137, 1151 (9th Cir. 2011) ("[T]shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion.").

8

9

**Apple's Objection to Samsung's Instruction**

10

Samsung's proposed instruction is wrong for two reasons. First, Samsung suggests that the jury should ignore the "channels of trade" prong, which is not the law. *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1151 (9th Cir. 2011), simply held that where both parties were marketing online and in a ubiquitous marketing channel, this factor did "not shed much light" on likelihood of confusion. *See Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011) (affirming district court finding that use of Internet as marketing channel favored trademark owner, though noting proof of different consumer bases may favor defendant). Second, Samsung's instruction is again an unnecessary attempt to insert an argumentative response leading the jury to a particular conclusion as a separate "instruction."

11

12

13

14

15

16

**Samsung's Statement in Support**

17

Instruction 69.4 has no competing Apple instruction. Apple intends to present evidence about the fact that Samsung and Apple sell products through the same retail channels and through the internet, in order to suggest that consumers will therefore be confused into thinking that Samsung's products are Apple's products. But as the Ninth Circuit recently held, the use of ubiquitous marketing channels is not probative because in many such circumstances, consumers are not confused and in fact are easily able to distinguish among many similar-looking competing products. This is not a situation in which Apple and Samsung are using the same niche marketing channels to promote their products. *E.g., Network Automation, Inc. v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137, 1151 (9th Cir. 2011) (distinguishing *Sleekcraft*, where "the two products were sold in niche marketplaces, including boat shows, specialty retail outlets, and trade magazines" and holding "this factor becomes less important when the marketing channel is less obscure.").

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 70
## TRADE DRESS

2

**Samsung's Proposed Instruction**

3

4    Apple seeks damages from Samsung for trade dress infringement and dilution arising from
Samsung's sale of certain phones and tablets. Samsung denies infringing or diluting Apple's
5    alleged trade dresses and contends they are invalid. Here are the instructions you must follow in
deciding these claims.

6    **Source**

7    Ninth Circuit Model Civil Jury Instr. ("Model Instructions") No. 15 (modified).

8

**Apple's Objection to Samsung's Instruction**

9

10    Apple objects that Samsung's proposed instruction No. 70 duplicates the earlier summary of the
parties' contentions. Apple also respectfully submits that, for the trade dress instructions, the
ABA model instructions are preferable to the Ninth Circuit model instructions because the Ninth
11    Circuit model instructions do not address dilution claims. Apple made an exception for the
infringement instruction because the *Sleekcraft* factors control in the Ninth Circuit, so Apple used
12    the Ninth Circuit model instruction that is based on the *Sleekcraft* factors. Apple accuses
Samsung phones and tablets of dilution, and Samsung's proposed dilution instructions are largely
13    created from scratch. The ABA model instructions offer a coherent, consistent, and streamlined
approach for a case that involves both dilution and infringement claims. For example, the ABA
14    instructions define the protectability standard for trade dress so that it applies to both
infringement and dilution claims, noting the different burdens of proof for registered and
15    unregistered trade dresses. By contrast, Samsung's proposed instructions are unnecessarily
repetitive and yet still have gaps (*e.g.*, presumptions attached to a registered trade dress).
16    Samsung's instruction Nos. 70 through 73 are unnecessarily duplicative.

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 71
DEFINITION–TRADE DRESS**

2

3

**Samsung's Proposed Instruction**

4

Trade dress is the non-functional physical detail and design of a product which identifies the product's source and distinguishes it from the products of others. Trade dress may include features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a company presents a product or service to the market, its manner of display.

5

6

The trade dresses at issue in this case involve certain products sold by Apple. Trade dress rights in product designs are more limited than rights in trade dress packaging cases because most product designs are intended to make the product more useful or more appealing to consumers and are not intended to identify the source of the product.

7

8

9

**Source**

10

Ninth Circuit Model Instructions No. 15.2 (modified); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000) ("In the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing."); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2003) ("And in *Wal-Mart*, supra, we were careful to caution against misuse or overextension of trade dress. We noted that "product design almost invariably serves purposes other than source identification.").

11

12

13

14

15

16

**Samsung's Statement in Support**

17

Instruction 71 is based on the Ninth Circuit Model instructions and is designed to introduce the jury to the concept of "trade dress." Apple has not submitted a competing instruction. Many potential jurors may be unfamiliar with the term "trade dress," or may have difficulty differentiating it from other forms of intellectual property rights. It is crucial for jurors to understand that trade dress must identify the product's source. Apple's trade dress instructions begin with protectability of the trade dress and do not explain what trade dress is, making the remainder of Apple's trade dress instructions needlessly opaque. This instruction should be given to orient the jury and assure that they have a proper understanding of the rights at issue.

18

19

20

21

22

**Apple's Objection to Samsung's Instruction**

23

Samsung's proposed instruction misstates the law in at least three ways. First, Samsung omits that trade dress is the "total image and overall appearance," instead only identifying "types" of features that may make up a trade dress. This is improper, as it gives the incorrect impression that trade dress is evaluated on a feature-by-feature basis. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992) (trade dress of product "is essentially its total image and overall appearance") (internal quotation omitted). Second, defining "trade dress" as the "non-functional" physical detail and design of a product implies that individual features with a function cannot form part of the claimed trade dress, which is not the law. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1261 (9th Cir. 2001) (functionality of individual features may not preclude trade dress protection if particular integration of elements leaves multitude of alternatives). In fact, the Ninth Circuit explicitly states: "functional elements that are separately unprotectable can

24

25

26

27

28

1  be protected together as part of a trade dress." *Id.* at 1259 (internal citation omitted).  Third,
2  Samsung claims that trade dress rights in product designs are "more limited than rights in other
   types of trade dress."  There is no support for this statement in the law.  Samsung cites both *Wal-
   Mart* and *TrafFix Devices*, but these cases address *protectability*—distinctiveness or
3  functionality—not the extent or rights *once protectability is shown.  TrafFix Devices v. Mktg.
   Displays, Inc.*, 532 U.S. 23, 29-30, 33-34 (2001); *Wal-Mart Stores, Inc. v. Samara Bros.*,
4  529 U.S. 205, 213-15 (2000).  And, in fact, the test for protectability of trade dress is the same for
   all types of trade dress; the trade dress must be both distinctive and nonfunctional.  The cases that
5  Samsung cites do not suggest otherwise.  They only state that product design trade dress is not
   inherently distinctive; instead, the product design must be shown to have acquired distinctiveness,
6  or secondary meaning.  Those rulings do not translate to "limited rights" once acquired
   distinctiveness is shown.  This instruction is also unnecessarily duplicative.  The elements of what
7  qualifies as a trade dress have been covered.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 72
TRADE DRESS LIABILITY—THEORIES AND POLICIES**

2

3

**Samsung's Proposed Instruction**

The trade dress laws balance three often-conflicting goals:  (1) protecting the public from being
misled about the nature and source of goods and services, so that the consumer is not confused or
misled in the market; (2) protecting the rights of a business to identify itself to the public and its
reputation in offering goods and services to the public; and (3) protecting the public interest in
fair competition in the market.

4

5

6

The balance of these policy objectives vary from case to case, because they may often conflict.
Accordingly, each case must be decided by examining its specific facts and circumstances, of
which you are to judge.

7

8

**Source**

9

Ninth Circuit Model Instructions No. 15.4 (modified).

10

11

**Samsung's Statement in Support**

12

Instruction 72 is based on the Ninth Circuit Model instructions and is also designed to aid the jury
in understanding what "trade dress" is and what the trade dress right is designed to protect. Apple
has not submitted a competing instruction.  Instruction 72 is useful because it explains why it is
not just a physical design that is being protected but a design that identifies the product's source
and distinguishes it from other manufacturers' products.  Failure to include introductory
instructions like 71 and 72 creates the possibility that the jury will confuse trade dress
infringement with design patent infringement or even other rights not at issue.

13

14

15

16

17

**Apple's Objection to Samsung's Instruction**

18

Samsung's proposed instruction No. 72 will confuse and mislead the jury because it is adapted
from a set of Ninth Circuit model instructions that do not address dilution.  First, the instruction
suggests that consumer confusion is always part of the balance, but consumer confusion is not an
element of a trade dress dilution claim.  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 905 (9th
Cir. 2002) ("Dilution, by contrast, does not require a showing of consumer confusion[.]")
Second, the "often-conflicting goals" are tied to the specific remedy sought, not trade dress
rights—infringement is a balance between prongs 1 and 3, balancing likelihood of confusion
against interest in fair competition, whereas dilution is a balance of 2 and 3, balancing a
business's reputation and right to identify itself against interest in fair competition. (*Compare*
Dkt. No. 1158 at 3 (trade dress infringement requires showing of likelihood of confusion) *with*
Dkt. No. 1158 at 8 (trademark or trade dress dilution claim addresses use that "impairs the
distinctiveness" or "harms the reputation" of famous mark).  Conflating these two theories will be
highly misleading to the jury.

19

20

21

22

23

24

25

26

27

28

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 73
## TRADE DRESS—NO LIABILITY FOR COPYING

3

### Samsung's Proposed Instruction

4

Trade dress law prohibits the copying of protectable trade dress only in order to prevent the likelihood of consumer confusion as to source.  It does not otherwise prohibit competitors from copying each other's products.  Nor does it protect a company's innovation and creativity.

5

### Source

6

*Dastar Corp v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36 (2003) ("reading §43(a) of the Lanham Act as creating a cause of action for, in effect plagiarism – the use of otherwise unprotected works and inventions without attribution – would be hard ."); *Wal-Mart Stores v. Samara Brothers, Inc.*, 529 U.S. 205 (2000) (no cause of action for trade dress violation because asserted trade dress was not source identifying even though Wal-Mart produced 'knockoffs' of children's clothes designed and manufactured by Samara Broths, containing only 'minor modifications' of the original designs.); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001) (The Supreme Court has been 'careful to caution against misuse or overextension" of trademark related protections into areas traditionally occupied by patent and copyright."); *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n. 11 (1982) (designs cannot be protected under the Lanham Act unless they "identify the source of the product rather than the product itself"); *Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) ("The defendant . . . may copy plaintiff's goods slavishly down to the minutest detail; but he may not represent himself as the plaintiff in their sale.") (internal quotation marks omitted); *Newton v. Thomason*, 22 F.3d 1455, 1463 (9th Cir. 1994) ("must show that, in selecting [accused] name, Appellees intended to profit by confusing consumer") (internal quotation marks omitted); *Bretford Manufacturing, Inc. v. Smith System Manufacturing Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) ("Businesses often think competition unfair, but federal law encourages wholesale copying, the better to drive down prices.").

7

8

9

10

11

12

13

14

15

16

17

### Samsung's Statement in Support

18

Instruction 73 reflects established Ninth Circuit precedent with regard to the scope of trade dress protection; confusion of source or sponsorship is the core legal element for finding of infringement.  Without such an instruction, the jury may be confused about distinctions between the other types of intellectual property and trade dress, and erroneously believe that copying of any elements may give rise to infringement of trade dress.  Apple did not submit any competing instruction.

19

20

21

22

### Apple's Objection to Samsung's Instruction

23

Samsung's proposed instruction No. 73 is wrong for several reasons.  First, it claims there is "no liability for copying," but there *is* liability for copying if one copies protectable trade dress.  *See China Int'l Travel Servs. (USA) v. China & Asia Travel Serv., Inc.*, No. 08-cv-01293, 2008 U.S. Dist. LEXIS 106622, at *22 (N.D. Cal. Dec. 18, 2008) (facts of case, including "blatant copying" of trademark, showed intent to profit from reputation and goodwill).  Second, trade dress law does not prohibit copying "only in order to prevent consumer deception," as claimed in the proposed instruction.  The Lanham Act specifically addresses copies that are "likely to cause confusion, or to cause mistake, *or* to deceive."  15 U.S.C. § 1114 (emphasis added); *see also* 15 U.S.C. § 1125(a) (civil action for use in commerce "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another

24

25

26

27

28

person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person"). Apple's trade dress dilution claim has nothing to do with preventing consumer deception, or even confusion, but is aimed at stopping Samsung from "impair[ing] the distinctiveness" of Apple's trade dress. (Dkt. No. 1158 at 8; 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark").) The jury is elsewhere instructed on the elements of a trade dress claim and what must be proven; here, Samsung is attempting to insert an argumentative and oversimplified response to Apple's claims as a separate jury instruction.

**PROPOSED FINAL JURY INSTRUCTION NO. 74**
**TRADE DRESS DAMAGES IN GENERAL**

**Apple's Proposed Instruction**

I will now explain to you how to assess the monetary relief to which Apple is entitled based on its claims for trade dress dilution and infringement.  As I will explain, there are three forms of monetary relief to which Apple may be entitled.

Subject to any exceptions I mention, Apple has the burden to persuade you of the amount of monetary relief to which it is entitled.

In determining the amount of money to award Apple for its trade dress claims, you must determine the date on which damages began to accrue.  Damages for trade dress dilution and trade dress infringement begin to accrue on the date that a violation first occurred.  You should award Apple money damages for all violations that occurred on that date and any date after that.

**Authorities**

15 U.S.C. § 1111 ("Notwithstanding the provisions of section 1072 hereof [15 USC 1072], a registrant of a mark registered in the Patent and Trademark Office, may give notice that his mark is registered by displaying with the mark the words "Registered in U. S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle, thus (R); and in any suit for infringement under this Chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this Chapter unless the defendant had actual notice of the registration."); 15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."); *Coach, Inc. v. Asia Pac. Trading Co., Inc.,* 676 F. Supp. 2d 914, 924-9259 (C.D. Cal. 2009) ("Since 1989, [§ 1117] statutory damages for a violation of [§ 1125(a) ] for infringement of an unregistered mark are "subject to" the provisions of the [§ 1111] requirements of notice. But because the [§ 1111] requirement of notice only applies to registered marks, it is, of course, not a limitation on recovery of damages under a [§ 1125(a) ] count for infringement *of an unregistered mark . . . McCarthy on Trademarks, supra, § 19:144* (emphasis added); *see also GTFM, Inc. v. Solid Clothing, Inc.,* 215 F. Supp. 2d 273, 306 (S.D.N.Y. 2002) (stating that for any infringement occurring before date of mark's registration plaintiff could recover profits and damages under 15 U.S.C. § 1125(a), but for all infringement occurring after date of registration plaintiff had to satisfy notice requirements of § 1111 to recover profits and damages).").

**Samsung's Objection to Apple's Instruction**

Apple's instruction prejudicially assumes that Samsung is liable and Apple is entitled to damages ("the monetary relief to which Apple is entitled").  Apple also fails to explain its burden to prove damages, including by (a) a preponderance of the evidence, (b) the amount of damages to a reasonably certainty, and (c) that the Jury cannot award speculative damages.  *See Lindy Pen Co. v. Bic Pen Corp.,* 982 F. 2d 1400, 1407 (9th Cir. 1993) (damages must be proved to a "reasonably certainty" and may not be "speculative"); Ninth Circuit Model 15.25; ABA Model 3.6.1.  The legal authorities cited by Apple do not support such material omissions.  Samsung's Alternative to Apple's Proposed Instruction No. 74, on the other hand, is modeled on ABA Model 3.6.1 and correctly states the burden of proof and law concerning trade dress damages.

Apple's instruction also incorrectly states that all trade dress damages accrue on the date that a violation first occurred.  The jury should be instructed, as stated by Ninth Circuit Model Instruction 15.24 and Samsung Proposed Final Instruction No. 75, that Apple may only recover damages for its registered trade-dress claim when each Samsung defendant received "statutory or actual notice that Apple's iPhone trade dress was registered."  Finally, Apple incorrectly states that there are "three forms of monetary relief" available for Apple's trade dress claims.  In fact, Apple may recover only two forms of monetary relief, actual damages and/or defendant's profits. As explained in Samsung's Objection to Apple's Proposed Final Instruction No. 78, Apple may not recover a reasonable royalty for its trade dress claims.

**Samsung's Proposed Instruction**

I am going to provide you with details on the calculation of damages for Apple's trade dress infringement claim. All of these instructions apply only if you find that Samsung Electronics Company, Samsung Electronics America or Samsung Telecommunications America has in fact infringed upon Apple's trade dress. The fact that I am giving you these instructions should not be taken as an indication that an infringement has taken place. They are to be used only in the event you make a specific finding that Samsung Electronics Company, Samsung Electronics America or Samsung Telecommunications America has in fact infringed on Apple's trade dress.

If Apple prevails on its claim for trade dress infringement, you may award Apple damages only if it has proven actual consumer confusion resulting from Samsung Electronics Company's, Samsung Electronics America's or Samsung Telecommunications America's infringement or that their actions were intentionally deceptive.

If Apple has established actual consumer confusion or intentional deception by Samsung Electronics Company, Samsung Electronics America or Samsung Telecommunications America, it is your duty to determine Apple's damages. The burden is on Apple to prove damages by a preponderance of the evidence. Damages are the amount of money that will reasonably and fairly compensate Apple for any injury that you find was caused by a defendant's alleged infringement of Apple's trade dress. The factors that you may consider, which I will explain to you in greater detail, are any Apple lost sales and lost profits from the alleged infringement.

Proof of damages to a certainty is not required. However, the burden is on Apple to show any damages to a reasonable certainty, and awarded damages may not be speculative.

**Source**
ABA 3.6.1 (modified).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 74 is both inefficient and prejudicially repetitive for three reasons. First, the instruction introduces jurors to trade dress remedies, but confusingly, only addresses infringement and not dilution. As discussed in other objections, because the same remedies are available for both causes of action, they should be discussed in one set of instructions. Separating the infringement damages instructions from the dilution damages instructions creates unnecessarily duplicative instructions and confusion. 15 U.S.C. 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 USC 1125(a) or (d)], or a willful violation under section 43(c) [15 USC 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USC § §1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."). Second, the first paragraph in Samsung's proposed instruction No. 74 repeats – three times – that jurors must only award damages if the jury finds that Samsung has infringed Apple's trade dress. There is no reason for Samsung to repeat this conditional language three times and it reflects a blatant effort to bias the jury. Third, Samsung's instruction repeats that Apple bears the burden of proving damages, again three times in the single instruction. This is yet another statement that should be made once as occurs in Apple's proposed instruction.

**PROPOSED FINAL JURY INSTRUCTION NO. 75**
**TRADE DRESS DAMAGES—PLAINTIFF'S ACTUAL DAMAGES**
**(15 U.S.C. § 1117(A))**

**Apple's Proposed Instruction**

Apple seeks its actual damages for violations of its trade dress.

If you find for Apple on any of its dilution claims and that Samsung's acts of dilution were willful, you must determine Apple's actual damages.

In addition, if you find for Apple on its trade dress infringement claim, and if you find that Apple has proven actual consumer confusion resulting from Samsung's infringement or that Samsung's actions were intentionally deceptive, you must determine Apple's actual damages.

Actual damages refers to the amount of money that will reasonably compensate Apple for any injury you find was caused by Samsung's dilution or infringement of Apple's trade dress. You should award Apple any profits that Apple lost due to Samsung's dilution or infringement.

**Source**

Adapted from ABA 3.6.1.

**Authorities**

15 U.S.C. § 1117(a); 15 U.S.C. § 1125; *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614, 621 (9th Cir. 1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Id.* "[T]he purpose of section 1117 is to 'take all the economic incentive out of trademark infringement.'") (internal citations omitted); *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1407 (9th Cir. 1993) (15 U.S.C. § 1117(a) further provides for an award, subject to equitable principles, of "any damages sustained by the plaintiff...." A plaintiff must prove both the fact and the amount of damage. 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984)").

**Samsung's Objection to Apple's Instruction**

Apple's instruction prejudicially assumes that Samsung is liable and Apple is entitled to damages ("for violation of its trade dress"). Apple also generally refers to "Samsung" without distinguishing between the three, separate Samsung defendants. Further, although Apple purports to have adapted ABA Model 3.6.1, it has deleted from that model necessary, material instructions, including that the damages instructions apply only if the jury first finds infringement; that damages are "the amount of money that will reasonably and fairly compensate;" that Apple's burden is by a preponderance of the evidence;" that Apple must prove damages to "a reasonable certainty;" and that "awarded damages may not be speculative." *See* ABA Model 3.6.1. Samsung's Alternative to Apple's Proposed Final Instruction No. 74, on the other hand, includes these instructions and accurately states the law. *See Lindy Pen Co. v. Bic Pen Corp.,* 982 F. 2d 1400, 1407 (9th Cir. 1993) (damages must be proved to a "reasonably certainty" and may not be "speculative"); Ninth Circuit Model 15.25. Additionally, whereas Samsung's Alternative to Apple's Proposed Instruction No. 75 provides appropriate guidance on how to calculate lost profits, Apple's offers no guidance on that issue. Finally, Apple fails to instruct – as correctly stated in Samsung's Alternative to Apple's Proposed Final Instruction No. 78 – that before Apple may recover monetary damages for its dilution claim, it must prove by a preponderance of the evidence that its trade dress was in fact injured or harmed. *See 4 McCarthy*

1  § 24:132, at 24-410 ("monetary recovery for dilution requires some proof that the famous mark
2  was in fact injured or harmed by the defendant's conduct").

**Samsung's Proposed Instruction**

Apple has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate Apple for any injury to Apple you find was caused by Samsung Electronics Company's, Samsung Electronics America's or Samsung Telecommunications America's alleged infringement of Apple's trade dress.

You should consider any lost profits that Apple would have earned but for Samsung Electronics Company's, Samsung Electronics America's or Samsung Telecommunications America's alleged infringement. Profit is determined by deducting all expenses from gross revenue.

If you find that any loss in sales shown by Apple was caused by other market factors and not as a result of Samsung Electronics Company's, Samsung Electronics America's or Samsung Telecommunications America's alleged infringement, then you should not award any amount for lost profits or should reduce any such amount to account for the other market factors.

**Source**

Ninth Circuit Model Instruction No. 15.25 (modified) and the accompany Comment.

**Apple's Objection to Samsung's Instruction**

Apple's proposed instruction No. 75 provides an introduction to actual damages for violation of trade dress rights, including the different legal standards giving rise to actual damages based on infringement versus dilution. Apple's instruction is clear, succinct, and accurately summarizes controlling law. Samsung's proposed instruction Nos. 75 and 78 unnecessarily presents two separate and therefore confusing instructions on actual damages based on trade dress infringement and dilution, even though Samsung acknowledges that the "same standards apply" when calculating damages based on those violations. In addition, Samsung's instructions contain numerous misstatements of the law. For example, Samsung proposed instruction No. 75 states that "[p]rofit is determined by deducting all expenses from gross revenue." This is incorrect for the reasons Apple stated in connection with Samsung proposed instruction No. 76.1. In addition, this instruction inaccurately instructs the jury about the standard of causation that applies. The instruction states: "If you find that any loss in sales shown by Apple was caused by other market factors and not as a result of [Samsung's] alleged infringement, then you should not award any amount for lost profits or should reduce any such amount to account for the other market factors." But as Apple correctly notes in Apple's proposed instruction No. 75, the standard in the Ninth Circuit is simply "but for" causation. *See* Apple's proposed instruction No. 75 ("You should award Apple any profits that Apple lost due to Samsung's dilution or infringement."); *see Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir.1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement."). Samsung's proposed instruction invites the jury to decline to award Apple lost profits, even if it were to find "but for" causation, provided the jury believes "other market factors" contributed to those lost sales. That is not the appropriate standard.

**PROPOSED FINAL JURY INSTRUCTION NO. 76
TRADE DRESS DAMAGES—DEFENDANT'S PROFITS
(15 U.S.C. § 1117(A))**

**Apple's Proposed Instruction**

Apple is alternatively entitled to recover Samsung's profits that resulted from Samsung's willful dilution or infringement of Apple's trade dress. To the extent that Samsung's profit from a sale that willfully diluted or infringed Apple's trade dress was greater than Apple's actual damage, you should award Samsung's profit to Apple.

Samsung's profits are determined by deducting expenses from the gross sales revenue of Samsung's products that infringed or diluted Apple's trade dress. Gross sales revenue is the sales receipts from sales of those products. Apple has the burden of proving the amount of gross sales revenue that Samsung more likely than not received. All sales proven by Apple are presumed to be attributable to Samsung's violations of Apple's trade dresses.

However, Samsung may rebut this presumption if it proves it is more likely than not that any particular sales and their profits were not the result of a violation. Samsung must show that the particular sale(s) resulted exclusively from intrinsic qualities of its products and not from the use or dilution of Apple's trade dress.

It is also Samsung's burden to prove that any sums it seeks to deduct from its gross sales revenues as expenses were more likely than not attributable to overhead, operating expenses, materials, or labor. Such proof need not be precise. Reasonable approximations constitute satisfactory evidence. However, if Samsung fails to offer proof sufficient to meet its burden, its entire gross revenues from sales of the products that violated Apple's trade dress should be awarded to Apple.

**Source**

Adapted from ABA 3.6.6.

**Authorities**

15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 USCS § 1125(a) or (d)], or a willful violation under section 43(c) [15 USCS § 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USCS §§ 1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."); *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004–05 (9th Cir. 2004) ("We also note that disgorgement of profits is a traditional trademark remedy . . ."); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (affirming defendant's profits as damages under 15 U.S.C. § 1117); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("'[d]amages are not rendered uncertain because they cannot be calculated with absolute exactness,' yet, a reasonable basis for computation must exist."); *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) ("The statute thus allocates the initial burden of proving gross sales to the trademark plaintiff, and the subsequent burden of proving costs to the infringing defendant.[citations omitted]. Ordinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it. This sequence of proof thus places the burden of proving costs on the party with the superior access to such information, namely the infringing defendant."); *Adray v. Adry-Mart, Inc.*, 76 F.3d

984, 989 (9th Cir. 1995) ("[T]he burden of any uncertainty in the amount of damages should be borne by the wrongdoer . . . ."); *Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968); *Landes Mfg. Co. v. Chromodern Chair Co.*, No. CV 76-3540, 1978 U.S. Dist. LEXIS 15095, at *11 (C.D. Cal. Oct. 5, 1978). Ninth Circuit Model Civil Jury Instructions, Comment to 15.26 Trademark Damages—Defendant's Profits (15 U.S.C. § 1117(a)) ("The Ninth Circuit has not addressed, and other circuits are divided on, whether willfulness remained a prerequisite to disgorgement of a defendant's profits as a result of the Trademark Amendments Act of 1999, Pub. L. 106-43, § 3(b), 113 Stat. 218, 219 (codified in relevant part at 15 U.S.C. § 1117). However, even prior to the 1999 Amendments, the Ninth Circuit suggested that willfulness was not always a requirement for the award of profits. *See Adray v. Adry-Mart*, 76 F.3d at 988 ("An instruction that willful infringement is a prerequisite to an award of defendant's profits may be an error in some circumstances ([such] as when plaintiff seeks the defendant's profits as a measure of [plaintiff's] own damage [citation omitted])").")

**Samsung's Objection to Apple's Instruction**

Apple's instruction relies in part on modified ABA Model 3.6.6, but Apple deletes material terms. Apple deletes the requirement that it can recover Samsung's profits "only when defendant's profits are not derived from the same lost sales claimed by plaintiff as actual damages." *See* ABA Model 3.6.6. This deletion confuses an instruction that should clearly state the law prohibiting a double recovery. *See Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("Recovery of plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act."); Ninth Circuit Model 15.16 ("You may not, however, include in any award of profits any amount that you took into account in determining actual damages."). Samsung's Alternative to Apple's Proposed Final Instruction No. 76 correctly instructs that Apple is seeking an accounting of profits for sales "on which you do not award Apple its alleged lost profits." Apple also repeatedly uses the phrase "should award" when the ABA correctly states, "may award." Apple also generally refers to "Samsung" without distinguishing between the three, separate Samsung defendants. Apple further fails to provide any definition of "willfulness" and then compounds its mistake by failing to instruct that Apple must prove willfulness to obtain a defendant's profits for trade dress infringement. Apple ignores the willfulness instruction provided in the Comment to ABA Model 3.6.6, which states that some courts require "that infringement be 'willful' for an award of profits" and identifies the Ninth Circuit as such a jurisdiction. *See ABA Model Jury Instructions, Copyright, Trademark and Trademark*, at 260 (2008). This is consistent with Ninth Circuit authority. *See Adray v. Adry–Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1996) (plaintiff could recover infringer's profits "only if the infringement was willful."); *M2 Software Inc. v. Viacom Inc.*, 223 Fed. Appx. 653, 655, 2007 WL 649733 (9th Cir. 2007) ("M2 Software is not entitled to an accounting of Viacom's profits, because it did not introduce evidence from which a reasonable fact finder could conclude that Viacom willfully infringed M2 Software's trademark."); *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (finding that a recovery of profits requires a finding of willful infringement); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F. 2d 1400, 1407 (9th Cir. 1993) (denying accounting of profits because "the present case simply does not involve willful infringement"); *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956, 968 (N. D. Cal. 1977), *aff'd*, 646 F.2d 347, 352 (9th Cir. 1980) ("Plaintiff is not entitled to damages or accounting for profits since there has been no showing of fraud and defendant's claim that he innocently adopted and used the name stands unrefuted."). Moreover, Apple's own damages expert admits that his calculations of defendants' profits are designed to avoid Samsung's "unjust enrichment," not as a proxy for Apple's actual damages. *See* Dkt. No. 991-19b, Ex. 14. Although the Ninth Circuit in dicta has suggested that willfulness may not be a required element "when plaintiff seeks the defendant's profits as a measure of its own damage," *Adray*, 76 F.3d at 988, such an exception – if it exists – is not relevant here. Apple, as reflected in its proffered jury instructions, does not seek the defendant's profits as a measure of its own damage but as an "alternative" remedy. Apple's "Actual Damages" instruction seeks only lost profits. *See* Apple Instruction No. 75

("You should award Apple any profits that Apple lost due to Samsung's dilution or infringement.").  Apple seeks Samsung's profits as a separate remedy.  *See* Apple Instruction No. 76, seeking ("Apple is alternatively entitled to recover Samsung's profits….").  In contrast to Apple's Instruction, the law is accurately reflected in Samsung's Alternative to Apple's Proposed Final Instruction No. 76.  Further, Apple incorrectly states that "Samsung must show that the particular sale(s) resulted exclusively from intrinsic qualities of its products and not from the use or dilution of Apple's trade dress."  There is no legal authority for this statement.  In the Ninth Circuit, the defendant need only show that the profit is attributable to factors "other than use of the infringed trademarks."  Ninth Circuit Model 15.26; *see also Lindy Pen Co.*, 982 F.2d at 1408 (plaintiff not entitled to profits that "are not attributable to the infringing activity").  Samsung's Alternative to Apple's Proposed Final Instruction No. 76 accurately articulates this standard; Apple's instruction is contrary to Ninth Circuit law.  Finally, Apple fails to instruct – as correctly stated in Samsung's Alternative to Apple's Proposed Final Instruction No. 78 – that before Apple may recover monetary damages for its dilution claim it must prove by a preponderance of the evidence that the infringement in fact injured or harmed Apple's trade dress.  *See* 4 *McCarthy* § 24:132, at 24-410 ("monetary recovery for dilution requires some proof that the famous mark was in fact injured or harmed by the defendant's conduct").

**Samsung's Proposed Instruction**

Apple also seeks Samsung Electronics Company's, Samsung Electronics America's, and Samsung Telecommunications America's profits from sales alleged to infringe Apple's trade dress on which you do not award Apple its alleged lost profits.  To recover Samsung Electronics Company's, Samsung Electronics America's and/or Samsung Telecommunications America's profits attributable to infringement, Apple has the burden of proving by clear and convincing evidence that the Samsung defendant found to infringe the trade dress acted willfully or in bad faith when it infringed Apple's trade dress.

Willful infringement means a deliberate intent to deceive consumers.

If you find that the infringing Samsung defendant did not intend to deceive consumers, you may not award that defendant's profits to Apple.

**Source**

*Adray v. Adry–Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995); *Lindy Pen Co., Inc. v. Bic Pen Co.*, 982 F. 2d at 1407 (9th Cir. 1993) ("Willful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."); *CollegeNET, Inc. v. XAP Corp.*, 483 F.2d 1058, 1066 (D. Oregon 2007) ("A finding of willful misconduct under the Lanham Act must be supported by clear and convincing evidence. *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 294 F.3d 227, 229 (1st Cir.2002). *See also Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 208 (3d Cir.1995); *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F.Supp.2d 332, 341 & n. 8 (D.N.J.2001)").

**Apple's Objection to Samsung's Instruction**

Samsung's instruction only references infringement and not dilution.  This is inappropriate and confusing because the remedy of an accounting of defendant's profits is available equally for both trade dress infringement and dilution claims.  15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 USC 1125(a) or (d)], or a willful violation under section 43(c) [15 USC 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USC §§ 1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."); s*ee also Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 558-59 (9th Cir. 1992) ("Reebok's 'rights" under the Lanham Act may include… the right under 15 U.S.C. § 1117 to recover defendant's profits and damages for that dilution.").  While infringement and dilution may have different threshold issues, those issues are adequately addressed in jury instruction Nos. 60 (Trade Dress Dilution and Infringement – Protectability), 63 (Trade Dress Dilution – Elements and Burden of Proof), 64 (Trade Dress Dilution Element #2 – Fame), 65 (Trade Dress Dilution Element #3 – Use of Accused Trade Dress in Commerce After Apple Trade Dress Became Famous), 66 (Trade Dress Dilution Element #4 – Dilution), 67 (Trade Dress Infringement – Elements and Burden of Proof), 69 (Trade Dress Infringement – Likelihood of Confusion – Sleekcraft Test), 74 (Trade Dress Damages in General), 78 (Trade Dress Dilution Damages – Willfulness Required for Dilution Damages).  Second, instruction No. 76 does not actually address the element of an accounting, but instead discusses and repeats several alleged prerequisites to recovering profits, which are already stated in the other instructions.  Further, instruction No. 76 seeks improperly to emphasize the "willful infringement" element by repeating it twice.  Finally, as described in detail in Apple's objection to Samsung's proposed instruction No. 78, the burden of proof for willfulness is preponderance of the evidence, not clear and convincing evidence.  This is

1    reflected in both the ABA Model Instructions and in Ninth Circuit law. *See Gracie v. Gracie*,

2    217 F.3d 1060, 1068 -1069 (9th Cir. 2000) (analyzing and approving a jury instruction that did
     not include a "clear and convincing" standard).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 76.1
DAMAGES—TRADE DRESS INFRINGEMENT—APPORTIONMENT OF
DEFENDANT'S PROFITS**

3    **Samsung's Proposed Instruction**

4    Apple is only entitled to profits earned by an infringing defendant that are attributable to the
     infringement, if any, which Apple must prove by a preponderance of the evidence.  You may not
5    include in any award of profits any amount that you took into account in determining damages.

6    Profit is determined by deducting all expenses from gross revenue.

7    Gross revenue is all of the infringing defendant's receipts from using the trade dress in the sale of
     an infringing product.  Apple has the burden of proving the infringing defendant's gross revenue
8    by a preponderance of the evidence and with a reasonable certainty.

9    Expenses are all costs that the infringing defendant incurred in the production, distribution, or
     sale of the infringing products.  The infringing defendant has the burden of proving the expenses.
10

11   You must also deduct from the profit award, if any, the portion of the profit attributable to factors
     other than the infringing defendant's use of the trade dress.  The infringing defendant has the
     burden of proving profit attributable to factors other than the trade dress by a preponderance of
12   the evidence.

13   **Source**

14   Ninth Circuit Model Instructions No. 15.26 (modified); *Rolex Watch, U.S.A., Inc., v. Michel Co*.,
     179 F.3d 704, 712 (9th Cir. 1999) (plaintiff carries burden to show with "reasonable certainty"
15   the defendant's gross sales from the infringing activity); *Lindy Pen Co.,* 982 F.2d at 1405-1408
     (plaintiff has the burden of proof as to damages).
16

17   **Apple's Objection to Samsung's Instruction**

18   The parties' instructions on defendant's profits differ in five ways, all of which favor Apple's
     proposal.  First, Apple adopts a model while Samsung does not.  Samsung's proposed instruction
     No. 76.1 so heavily modifies a Ninth Circuit model that it is no longer equivalent.  In contrast,
19   Apple's proposed instruction No. 76 closely follows the unbiased language of the ABA model
     instruction.  Second, Samsung's instruction No. 76.1 repeatedly and almost exclusively focuses
20   on apportionment of profits, rather than on the actual calculation of profits, which is the basic
     purpose of the instruction.  Apple's instruction No. 76 provides a balanced, accurate position,
21   drawn from the model.  Third, Samsung states that Apple has the burden of proving gross
     revenue by the preponderance of the evidence "and with reasonable certainty."  The clause "and
22   with reasonable certainty" is not in the model instruction, is inaccurate when devoted to this
     specific element, and need not be added to the model language.  Fourth, Samsung adds a separate
23   and inaccurate paragraph on apportionment that is not in the Ninth Circuit Model Instruction.  By
     contrast, Apple's instruction No. 76 includes a paragraph on apportionment that uses language
24   directly from the ABA Model, and therefore should be favored over Samsung's creation.  Fifth,
     as with Apple's proposed instruction No.76, Samsung's proposed instruction No. 76.1 only
25   refers to infringement and not dilution.  As set forth in Apple's objection to Samsung's
     instruction No. 76, this is unnecessarily duplicative because remedies are the same for both trade
26   dress infringement and dilution claims.  *See* 15 U.S.C. § 1117(a).  Apple's proposed instruction,
     on the other hand, is both an accurate and neutral statement of the law, as reflected by the close
27   adherence of the proposal to the ABA model instruction.  Apple bears the burden of proving
     gross revenues, which are properly defined, and is entitled to a presumption that these revenues
28   are attributable to the trade dress.  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir.

1993) ("Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity") *citing Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942). Samsung bears the burden of rebutting this presumption and must prove its expenses and that the sales resulting *exclusively* from the intrinsic qualities of the products and not the trade dress, as provided in binding U.S. Supreme Court case law and the statute. *Id.* ("[I]f it can be shown that the infringement had *no relation* to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher.") (emphasis added).

1

**PROPOSED FINAL JURY INSTRUCTION NO. 77**
**TRADE DRESS DAMAGES – REASONABLE ROYALTY**

2

3

**Apple's Proposed Instruction**

4

Apple is alternatively entitled to a reasonable royalty on any Samsung sales that were the result of the willful dilution of its trade dress or that infringed its trade dress.  To the extent you find that Apple is not entitled to Samsung's profit or Apple's actual damage from a Samsung sale that violated Apple's trade dress rights, you should award Apple a reasonable royalty for that sale.

5

6

A royalty is a payment made to the trade dress owner by a non-owner in exchange for rights to use the trade dress.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the trade dress owner and a company seeking the right to use the trade dress that took place just before infringement or dilution began.

7

8

9

In determining a reasonable royalty in this case, assume that both parties to the negotiation understood the Apple trade dresses to be protectable.  In addition, although the relevant date for the hypothetical negotiation is just before infringement or dilution began, you may consider profits made by Samsung from sales of infringing or diluting products after that time, and any commercial success attributable to an Apple trade dress after that time.

10

11

12

**Source**

13

Adapted from final jury instructions in *Adidas America v. Payless Shoesource, Inc.*, Civil Case No. 01-1655-KT (D. Or. May 1, 2008).

14

**Authorities**

15

*Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982) (acknowledging reasonable royalty as a remedy for trademark infringement); McCarthy on Trademarks and Unfair Competition, § 30:85 ("It has been argued that an award of a reasonable royalty as compensation for past acts of infringement is a more workable measure of damages than an accounting of profits . . .  All of these ambiguities require that, in fashioning relief based on royalty payments, a court take special care to ensure that the royalty payment has not undercompensated the victim.").

16

17

18

19

20

**Samsung's Objection to Apple's Instruction**

21

Apple is not entitled to a reasonable royalty instruction because it failed to disclose such a theory in response to written discovery, even though specifically asked to do so, and there is almost no legal support for such a theory in the context of a pure trade dress claim.  (Declaration of Thomas R. Watson in Support of Samsung's Jury Instructions, Exs. A – C).  The only authority cited by Apple, *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982), discusses trademark infringement claims; it does not involve trade dress claims. Moreover, *Baccarat Clothing* does not stand for the proposition that a reasonable royalty is an appropriate remedy for even a trademark infringement claim.  The court reversed a trial court's award of a royalty as an "ineffective" remedy and remanded the case for an accounting of profits. Even if a reasonable royalty were an appropriate remedy, however, Apple's instruction is incorrect.  A reasonable royalty award in a trademark infringement action is inappropriate unless the plaintiff and infringing defendant had or contemplated a license for the specific trade dress at issue.  *See A&H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-09 (3rd Cir. 1999) ("Even when the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by

22

23

24

25

26

27

28

1   the license the parties had or contemplated."); *Buffalo Wild Sings, Inc. v. Buffalo Wings & Rings*,
2   2011 WL 4537970, *3-5 (D. Minn. Sept. 29, 2011) ("Courts consistently conclude that, where no
    prior licensing agreement existed between the parties in a trademark infringement suit, a royalty
3   theory of recovery is inappropriately speculative."); *Tokidoki, LLC v. Fortune Dynamic, Inc.*,
    2009 WL 2366439, *14-15 (C.D. Cal. July 28, 2009) (denying request for reasonably royalty
4   award because "there was no prior licensing relationship" between "the plaintiff and defendant").
    Additionally, Apple fails to provide any guidance on how to determine a reasonable royalty.
5   Although Samsung does not believe a reasonable royalty instruction is appropriate, if the Court
    decides to give one, it should use Samsung's Alternative to Apple's Proposed Final Instruction
6   No. 77, which includes the correct standard and provides appropriate guidance on how the jury
    should determine a reasonable royalty award.  Finally, Apple generally refers to "Samsung"
7   without distinguishing between the three, separate Samsung defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**[13]

Apple is alternatively seeking actual damages in the form of a reasonable royalty. To the extent you decide that Apple is not entitled to lost profits or to Samsung Electronics Company's, Samsung Electronics America's, and/or Samsung Telecommunications America's profits from an allegedly infringing sale, you may award Apple a reasonable royalty for that sale.

A royalty is a payment made to the owner of a trade dress by a non-owner in exchange for rights to use the trade dress. A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the owner of the trade dress and the infringer taking place prior to the time when the infringing activity first began. You may only impose a reasonable royalty for trade dress infringement, however, if you first find to a reasonable certainty that before the filing of this lawsuit Apple and the infringing defendant had or contemplated a license for the specific trade dress for which Apple claims damages.

If you find that Apple has demonstrated that a pre-lawsuit licensing arrangement existed, you should assume for purposes of the hypothetical negotiation that both parties understood the trade dress to be valid and infringed. You should take into account what Apple's and the infringing defendant's expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. Your role is to determine what Apple and the infringing defendant would have agreed upon if they had negotiated in this manner, not just what either Apple or the infringing defendant would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

> Royalties that others paid to Apple for the same trade dress;

> Royalties that the infringing defendant paid to others for comparable trade dress;

> Whether Apple had a policy of licensing or not licensing the trade dress;

> Whether Apple and the infringing defendant are competitors;

> Whether use of the trade dress helps to make sales of other products or services;

> Whether the product made using the trade dress is commercially successful, as well as its profitability;

> The advantages of using the trade dress over products not covered by the trade dress;

> The extent of the infringing defendant's use of the trade dress and the value of that use to the defendant;

> Any royalty amounts that are customary for similar or comparable trade dress;

---

[13]   As noted in the Joint Pre-Trial Order, Samsung does not believe that Apple is entitled to present a reasonable royalty theory for its trade dress infringement and dilution claims because: (a) it failed to disclose such theory in response to written discovery, even though specifically asked to do so; and (b) there is almost no legal support for such a theory in the context of a pure trade dress claim.

The portion of the profit on sales that is due to the trade dress, as opposed to other factors, such as features not covered by the trade dress or features, or improvements developed by defendant;

Expert opinions regarding what would be a reasonable royalty.

**Source**

*A&H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-09 (3rd Cir. 1999); *Buffalo Wild Wings Sings, Inc. v. Buffalo Wings & Rings*, No. 09-1426 (JRI/SER), 2011 WL 4537970, at *3-5 (D. Minn. Sept. 29, 2011); *Tokidoki, LLC v. Fortune Dynamic, Inc.*, No. CV07-1923 DSF, 2009 WL 2366439, at *14-15 (C.D. Cal., July 28, 2009).

**<u>Apple's Objection to Samsung's Instruction</u>**

The parties' proposed instructions on reasonable royalty damages in trade dress cases differ in three ways: (1) Samsung's proposed instruction No. 77 incorrectly states that the parties must have contemplated a license for the specific trade dress to recover reasonable royalty damages, (2) Samsung's instruction improperly includes the *Georgia-Pacific* factors, which have not be adopted in any trade dress case; and (3) it fails to mention that reasonable royalty damages may be awarded for trade dress dilution, and not just trade dress infringement. *First*, there is no clearly delineated rule that the parties in a lawsuit must have had or contemplated a license for the specific trade dress at issue for the plaintiff to recover a reasonable royalty. While courts may often use prior licenses as evidence in favor of awarding or calculating a reasonable royalty, they do not state that such a license is required for reasonable royalty damages. *See, e.g., Shakey's USA, Inc. v. Tutto's Pizza Corp.*, 2009 U.S. Dist. LEXIS 90472, at *12-13 (E.D. Cal. Sept. 30, 2009) (finding reasonable royalty based on a franchising agreement between the parties is an "appropriate" form of damages where they were otherwise difficult to calculate); *see also Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982) (acknowledging reasonable royalty as a remedy for trademark infringement); *McCarthy on Trademarks and Unfair Competition*, § 30:85 ("It has been argued that an award of a reasonable royalty as compensation for past acts of infringement is a more workable measure of damages than an accounting of profits . . . All of these ambiguities require that, in fashioning relief based on royalty payments, a court take special care to ensure that the royalty payment has not undercompensated the victim."). To the contrary, courts may award a reasonable royalty where the parties have never had or contemplated a license between the two of them. *See Sands, Taylor & Wood Co. v Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992) *(Sands I), remanded and affirmed,* 34 F.3d 1340 (7th Cir. 1994) *(Sands II)* (awarding a reasonable royalty without any evidence of a prior licensing relationship between the plaintiff and the defendant). Second, there is no authority stating that the *Georgia-Pacific* factors or the *Georgia Pacific* framework, which are used to calculate a reasonable royalty in the patent context, are applicable in the trade dress context. Apple's instruction No. 77 correctly reflects the law. Samsung's instruction wrongly adds numerous elements or consideration not authorized by prior cases. *Third*, Samsung's instruction focuses only on trade dress infringement, and fails to instruct the jury that it may award reasonable royalty damages for trade dress dilution. Apple's proposed instruction does not suffer from this defect.

**PROPOSED FINAL JURY INSTRUCTION NO. 78**
**TRADE DRESS DILUTION DAMAGES—**
**WILLFULNESS REQUIRED FOR DILUTION DAMAGES**

**Apple's Proposed Instruction**

You should not award Apple monetary relief for any of its dilution claims unless Apple proves it more likely than not that Samsung willfully intended to trade on the recognition or good will of an Apple trade dress, or where Samsung's actions were calculated to exploit the benefits of an Apple trade dress. This does not apply to Apple's trade dress infringement claim.

In deciding this issue, you may consider whether Samsung continued to sell the accused products when Samsung had no reasonable basis to believe that it had a legal right to sell the products accused by Apple.

**Source**

Adapted from ABA 3.4.5.

**Authorities**

15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover  (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."); 15 U.S.C. § 1125(c) ("Dilution by blurring, tarnishment"); *Gracie v. Gracie*, 217 F.3d 1060, 1068 -1069 (9th Cir. 2000) (analyzing and approving a jury instruction that did not include a "clear and convincing" standard); *Adidas America, Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *12 -13 (D. Or. Sept. 12, 2008) (holding that, with respect to willful trademark infringement jury instruction, "we do not believe that [cases cited by party challenging instruction] provide convincing support for a requirement of a clear and convincing standard"); *B & H Mfg. Co., Inc. v. Bright,* No. CVF016619AWISMS, 2005 WL 1342815, at *9 (E.D. Cal. May 10, 2005) ("To prevail on its dilution claim, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence: . . . Defendant willfully intended to trade on the owner's reputation or to cause dilution of the famous mark . . .").

**Samsung's Objection to Apple's Instruction**

Apple's instruction incorrectly deletes the following phrase from ABA Model 3.4.5:  "Only if you find such willful dilution should you award damages to plaintiffs."  Apple also incorrectly states that the willfulness requirement does not apply to Apple's trade dress infringement claims. *See Adray v. Adry–Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1996) (plaintiff could recover infringer's profits "only if the infringement was willful."); *Lindy Pen* Co. *v. Bic Pen Corp.*, 982 F. 2d 1400, 1407 (9th Cir. 1993) ("Willful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."); *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956, 968 (N. D. Cal. 1977), *aff'd*, 646 F.2d 347, 352 (9th Cir. 1980) ("Plaintiff is not entitled to damages or accounting for profits since there has been no showing of fraud and defendant's claim that he innocently adopted and used the name stands unrefuted.").  In any event, Apple is wrong to delete the "clear and convincing evidence" standard from its willfulness instruction. *See CollegeNET, Inc. v. XAP Corp.*, 483 F.2d 1058, 1066 (D. Oregon 2007) ("A finding of willful misconduct under the Lanham Act must be supported by clear and convincing evidence.

1   *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 294 F.3d 227, 229 (1st Cir.2002). *See also Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 208 (3d Cir.1995); *Castrol,*

2   *Inc. v. Pennzoil Quaker State Co.*, 169 F.Supp.2d 332, 341 & n. 8 (D.N.J.2001)."); *In re Smith*, 2009 WL 7809005, *12 (9th Cir. BAP Dec. 17, 2009) ("[A] claim of intentional trademark

3   infringement must be proven by clear and convincing evidence."). Apple also states "more likely than not" rather than the "preponderance of the evidence standard" found in ABA Model

4   3.4.5 and throughout the Ninth Circuit Model Instructions. Further, Apple generally refers to "Samsung" without distinguishing between the three, separate Samsung defendants. Samsung's

5   Alternative to Apple's Proposed Instruction No. 78 corrects Apple's misstatements and accurately states the law. Finally, the last paragraph is argumentative, prejudicial, and

6   unsupported by the legal authorities cited by Apple.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

I have already instructed you about the meaning of, and when and how to calculate actual damages and infringer's profits with respect to Apple's trade dress infringement claim. Those same standards apply to Apple's trade dress dilution claim with the following differences.

In order to recover monetary damages, either actual damages or infringer's profits, for its dilution claim, Apple must prove by a preponderance of the evidence that the trade dress was in fact injured or harmed by the alleged dilution. Additionally, Apple must prove by clear and convincing evidence that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America willfully intended to cause dilution of the trade dresses. In other words, Apple must show that Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America intended to trade on the recognition of Apple's trade dress or intended to harm Apple's reputation. If you do not find that Apple's trade dress was in fact injured or harmed and that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America intended to trade on the recognition of Apple's trade dress or intended to harm Apple's reputation, you may not award Apple any damages for trade dress dilution.

**Source**

15 U.S.C. § 1117(a) (governs the award of monetary remedies in Lanham Act cases and provides for an award of defendant's profits, any damages sustained by the plaintiff, and the costs of the action); 4 *McCarthy* § 24:132 at 24-410 ("More than a mere likelihood of impairment or harm is needed to recover any damages or profits. Some proof of actual impairment or harm to the famous mark is required. In traditional likelihood of confusion law, courts require that more than a mere likelihood of confusion is required for damages: proof is usually needed that some consumers were actually confused or deceived. Similarly, in the author's view, monetary recovery for dilution requires some proof that the famous mark was in fact injured or harmed by the defendant's conduct."); *CollegeNET, Inc. v. XAP Corp.*, 483 F.2d 1058, 1066 (D. Oregon 2007) ("A finding of willful misconduct under the Lanham Act must be supported by clear and convincing evidence. *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 294 F.3d 227, 229 (1st Cir.2002). See *also Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 208 (3d Cir.1995); *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F.Supp.2d 332, 341 & n. 8 (D.N.J.2001)").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 78 is inaccurate and confusing in numerous ways. First, it includes the inaccurate burden of proof for willfulness. The Ninth Circuit has explicitly affirmed a jury instruction on willfulness where there was no "clear and convincing" standard. *Gracie v. Gracie*, 217 F.3d 1060, 1068 -1069 (9th Cir. 2000) (analyzing and approving a jury instruction that did not include a "clear and convincing" standard). As stated in the ABA Model Instructions, the proper standard for willfulness is preponderance of the evidence. *See B & H Mfg. Co., Inc. v. Bright*, No. CV01-6619AWISMS, 2005 WL 1342815, at *9 (E.D. Cal., May 10, 2005) ("To prevail on its dilution claim, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence: . . . Defendant willfully intended to trade on the owner's reputation or to cause dilution of the famous mark . . ."). In fact, at least one court has rejected the case cited by Samsung in support of the "clear and convincing standard," *CollegeNET, Inc. v. XAP Corp.*, 483 F.2d 1058, 1066 (D. Oregon 2007), as unpersuasive, while instead adhering to the Ninth Circuit's holding in *Gracie v. Gracie*. *See Adidas America, Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *12 -13 (D. Or. Sept. 12, 2008) (holding that, with respect to willful trademark infringement jury instruction, "we do not believe that [cases cited by party challenging instruction] provide convincing support for a

requirement of a clear and convincing standard").  Apple's proposed instruction No. 78 provides the accurate standard for willfulness, which is preponderance of the evidence.  Next, Apple's proposed instruction No. 75 provides an introduction to actual damages for violation of trade dress rights, including the different legal standards giving rise to actual damages based on infringement versus dilution.  Apple's instruction is clear, succinct, and accurately summarizes controlling law.  The substance standard, as stated in Samsung's instruction, is not materially different.  Samsung's proposed instruction Nos. 75 and 78 unnecessarily presents two separate and therefore confusing instructions on actual damages based on trade dress infringement and dilution, even though Samsung acknowledges that the "same standards apply" when calculating damages based on those violations.  In addition, Samsung's proposed instruction repeated language found elsewhere in instructions directed specifically to the meaning of willful dilution (*see* Apple's proposed instruction number 78), and then repeats those statement three times in each of the three sentences of the second paragraph.  Such repetition is unnecessary and prejudicial to Apple.  Samsung's instruction also fails to address the fact that Samsung's conduct can be found to be willfully because Samsung knowingly sold it products when it had no basis to believe it had the legal right to do so, which is the most common and traditional definition of willful conduct.

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 79**
**MONETARY REMEDIES—TRADE DRESS DILUTION—ACTUAL NOTICE**
**REQUIREMENT**

3

### Samsung's Proposed Instruction

4

In order for Apple to recover damages for dilution of the registered iPhone trade dress, Apple has
the burden of proving by a preponderance of the evidence that Samsung Electronics Company,
Samsung Electronics America, and Samsung Telecommunications America  had either statutory
or actual notice that Apple's iPhone trade dress was registered.

5
6

Samsung Electronics Company, Samsung Electronics America, and Samsung
Telecommunications America had statutory notice if:

7
8

Apple displayed the particular alleged trade dress with the words "Registered in U.S.
Patent and Trademark Office"; or

9
10

Apple displayed the particular alleged trade dress the words "Reg. U. S. Pat. & Tm. Off.";
or

11

Apple displayed the particular alleged trade dress with the letter R enclosed within a
circle, thus ®.

12

### Source

13

Model Instructions No. 15.24 (modified).

14
15

### Samsung's Statement in Support

16

Apple seeks damages for the alleged violation of a registered trade dress.  Apple has not
submitted an instruction correctly setting forth the Lanham Act's notice requirement.  *See* 15
U.S.C. § 1111 ("Notwithstanding the provisions of section 22 hereof [15 USC 1072], a registrant
of a mark registered in the Patent Office, may give notice that his mark is registered by displaying
with the mark the words "Registered in U. S. Patent and Trademark Office" or "Reg. U.S. Pat. &
Tm. Off." or the letter R enclosed within a circle, thus (R); and in any suit for infringement under
this Act by such a registrant failing to give such notice of registration, no profits and no damages
shall be recovered under the provisions of this Act unless the defendant had actual notice of the
registration.").  Accordingly, Samsung submits Ninth Circuit Model 15.24 to address this
requirement.

17
18
19
20
21
22
23

### Apple's Objection to Samsung's Instruction

24

Samsung's proposed instruction No. 79 misstates the law in two ways: (1) it fails to explain that
there is no notice requirement for unregistered trade dress, and (2) it imposes a notice requirement
for Apple's dilution claim, which is not required by the plain language of the statute.   In contrast,
Apple's proposed instruction No. 74 includes an accurate statement of the date on which damages
begin to accrue.  Although some claims under the Lanham Act require that the plaintiff provide
statutory or actual notice before the accounting period can begin, *see* 15 U.S.C. § 1111, this
damages limitation does not apply to any of Apple's trade dress claims for two reasons.  First,
four of the five trade dress that Apple asserts are *unregistered* trade dress.  The notice statute,
15 U.S.C. § 1111 only applies to *registered* trade dress.  *See Coach, Inc. v. Asia Pacific Trading
Co., Inc.,* 676 F. Supp. 2d 914, 924-925 (C.D. Cal. 2009) ("But because the [§ 1111] requirement

25
26
27
28

1    of notice only applies to registered marks, it is, of course, not a limitation on recovery of damages
      under a [§ 1125(a) ] count for infringement of an unregistered mark . . .”); *see also GTFM, Inc. v.*
2    *Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 306 (S.D.N.Y. 2002); McCarthy on Trademarks
      § 19:144 (4th ed. 2012.).   Thus, Apple is not required to give statutory or actual notice of its
3    unregistered trade dress before it can collect damages.  Second, Apple asserts its registered trade
      dress in a claim for *dilution*, not for infringement.  The notice statute is clear that it exclusively
4    applies to claims of infringement.  15 U.S.C. § 1111 states that, “ . . . in any suit for *infringement*
      under this chapter by such a registrant failing to give such notice of registration, no profits and no
5    damages shall be recovered under the provisions of this chapter unless the defendant had actual
      notice of the registration.”  (Emphasis added.)  Moreover, the trade dress damages statute states
6    that a plaintiff may recover damages for claims of infringement or dilution, “subject to” the notice
      requirement.  As such, the notice requirement does not apply to dilution claims.  *See* 15 U.S.C.
7    § 1117(a) (“When a violation of any right of the registrant of a mark registered in the Patent and
      Trademark Office, a violation under section 43(a) or (d) [15 USC 1125(a) or (d)], or a willful
8    violation under section 43(c) [15 USC 1125(c)], shall have been established in any civil action
      arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and
9    32 [15 USC § §1111, 1114], and subject to the principles of equity, to recover (1) defendant’s
      profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.”).  Damages
10   simply start from the date the violation first occurred.  This is explained in Apple’s proposed
      instruction as follows: “In determining the amount of money to award Apple for its trade dress
11   claims, you must determine the date on which damages began to accrue.  Damages for trade dress
      dilution and trade dress infringement begin to accrue on the date that a violation first occurred.
12   You should award Apple money damages for all violations that occurred on that date and any
      date after that.”  No registered trade dress is being asserted for claims of infringement.  Thus, this
13   notice provision has no purpose in the present case.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 80
## TRADE DRESS DAMAGES—NO DOUBLE-COUNTING

**Apple's Proposed Instruction**

While Apple is entitled to monetary relief for each act by Samsung that violates Apple's trade dress rights, it may not recover twice for the same sale of a Samsung product. You should award Apple the highest remedy that it has proven with respect to each sale of a Samsung product that willfully caused the dilution of an Apple trade dress or that infringed an Apple trade dress. But you should not award Apple twice for the same sale of a Samsung tablet or smart phone product.

In addition, if you award Apple one form of remedy with respect to some but not all of Samsung's sales, you should award Apple a different remedy with respect to the remaining sales that violated any Apple trade dress.

These principles also apply with respect to the monetary relief you will later consider in connection with Apple's claims for design and utility patent infringement. A single Samsung product could violate more than one of Apple's intellectual property assets. However, you should award Apple only one form of remedy for each sale that violates Apple's intellectual property rights. If the sale of a Samsung product violates more than one of Apple's trade dresses, design patents, or utility patents, you should award Apple the highest remedy that Apple has proven with respect to that sale.

**Authorities**

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("Recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act.").

**Samsung's Objection to Apple's Instruction**

Apple's instruction prejudicially asserts that Apple is "entitled to monetary relief" and that the jury "must" award damages. Apple further misstates the law by asserting that Apple is entitled to the "highest remedy" available. Apple cites no law for this misleading statement. Apple also inaccurately refers to "Samsung" without distinguishing between the three, separate Samsung defendants. Additionally, although Samsung agrees that Apple is not entitled to a double recovery of damages across all its intellectual property claims, Samsung's Alternative to Apple's Proposed Final Instruction No. 80 is a more accurate statement of the law regarding double recovery in awarding trade dress damages, lacking the biased language that Apple is entitled to monetary relief and must be awarded damages. *See Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("Recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act."). Samsung's Proposed Final Instruction No. 78.1 similarly lacks the biased and inaccurate language of Apple's instruction and correctly instructs that the bar on double recovery applies across different forms of intellectual property. *See Aero Products Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006) (reversing damages award which combined patent damages and trademark damages based on the sale of infringing profits). Also, Instruction No. 78.1 fairly applies to both sides, not just Apple; whereas Apple's instruction only protects Apple against double counting.

**Samsung's Proposed Instruction**

If you determine that Apple is entitled to monetary relief on its trade dress infringement or dilution claims, you should not award Apple monetary relief twice for the same sale of a Samsung product alleged to infringe or dilute Apple's trade dress.  If you award Apple one form of remedy with respect to some but not all of Samsung's sales, you may award Apple a different remedy with respect to any remaining sales that you find infringed or diluted Apple's trade dress.  However, you should not award Apple twice for the same sale.

**Source**

*Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("Recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act.")

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instructions on double counting (Nos. 80 and 78.1) differ from Apple's in at least four ways.  First, Samsung's instructions do not instruct the jury to award the highest remedy that applies to an infringing sale.  The absence of this instruction invites the jury to commit legal error by awarding reasonable royalty damages, for example, in lieu of lost profits, even if the jury finds that Apple proved lost profit damages.  The jury does not have that kind of discretion, but must award the higher form of damages in this case (lost profits) if Apple meets it burden of proof on that issue.  *See Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991) ("[W]e reject an interpretation of our precedent holding that a judge has 'discretion' to choose the 'methodology' in determining an award to mean that the judge may choose between basing an award on 'lost profits' damages or on a reasonable royalty. That is not choosing methodology. If a winning patentee seeks and proves lost profits, he is entitled to an award reflecting that amount.").  Second, Samsung's instructions misleadingly state that the jury may only award damages "with respect to some but not all of Samsung's sales" (No. 80) or "with respect to each sale of an accused product" (No. 78.1).  This language is ambiguous, as it does not clearly communicate that double counting only applies with respect to an infringing sale at the unit level, as opposed to the product-line level.  Apple's instructions (Nos. 41, 57, and 80), by contrast, make it clear that double counting is prohibited only at the unit level.  (*E.g.*, Apple No. 41 ("[O]nce you have awarded Apple a remedy with respect to a Samsung sale, you should not award Apple another remedy with respect to the sale of the same unit.").)  Apple can legally obtain different remedies on the sale different units of the same product but Samsung's instruction improperly suggests to the jury that Apple can obtain different remedies only on different models.  Third, Samsung's instructions, unlike Apple's, state that if the jury awards one form of remedy with respect to some sales, it "may award" Apple a different remedy with respect to any remaining sales.  This suggests that Apple's entitlement to compensation is discretionary at the jury's option.  Apple's instruction cures this prejudicial defect by instructing the jury that it "should award" Apple a different remedy on any remaining sales "if Apple meets the requirements for that remedy."  This is consistent with both 35 U.S.C. § 284 and the N.D. Model instruction that requires a least one remedy for each infringing unit.  Finally, Samsung's instructions contain the following erroneous example of supposed double counting:  "For example, if you find that an accused product infringes a utility patent and you decide to award the patent holder lost profits resulting from the sale of that infringing product, you may not award lost profits again because you find that the product also infringes another patent or diluted trade dress."  This is not an accurate statement of the law.  Apple may recover lost profits based on different IP violations by a single product (e.g., in different time period), as long as Apple does not obtain a double recovery with respect to the same unit sale.

**PROPOSED FINAL JURY INSTRUCTION NO. 78.1**
**MONETARY REMEDIES—ONLY ONE RECOVERY PER ACCUSED PRODUCT**

**Samsung's Proposed Instruction**

In calculating damages in this case, you may only award damages once with respect to each sale of an accused product, even if you find that the product infringed more than one type of intellectual property.  For example, if you find that an accused product infringes a utility patent and you decide to award the patent holder lost profits resulting from the sale of that infringing product, you may not award lost profits again because you find that the product also infringes another patent or diluted trade dress.  You may only award damages once with respect to each sale of an accused product, even if you find that the product infringes or dilutes multiple items of intellectual property.

**Source**
*Aero Products Int'l, Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1016 (Fed. Cir. 2006).


**Apple's Objection to Samsung's Instruction**

See Apple's comments in connection with Samsung's proposed instruction No. 80, which addresses both instruction Nos. 80 and 78.1.

**PROPOSED FINAL JURY INSTRUCTION NO. 81**
**DILUTION—TARNISHMENT**

**Samsung's Proposed Instruction**

**[Apple has represented that it is not seeking to establish dilution by tarnishment. If Apple agrees not to make any arguments that sound in tarnishment or submit its own jury instruction on tarnishment, Samsung will withdraw its request for this instruction.]**

To prove dilution by tarnishment, Apple must prove by a preponderance of the evidence that the design of Samsung's products harms the reputation of the Apple's trade dress by improperly associating it with an inferior or offensive product or service.

**Source** 15 U.S.C. § 1125(c)(2)(C).

**Apple's Objection to Samsung's Instruction**

Apple confirms it is not seeking to establish dilution by tarnishment and will not submit its own jury instruction on tarnishment.

1

**BREACH OF CONTRACT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 82**
**BREACH OF CONTRACT – OBLIGATION TO LICENSE PATENTS ON**
**FRAND TERMS**

3

**Apple's Proposed Instruction**

4
5

I will now instruct you on how to determine whether Apple has proved its breach of contract claim. A breach is an unjustified failure to perform a contract.

6
7
8
9

Samsung has submitted declarations that it is prepared to grant irrevocable licenses to patents declared essential to the UMTS standard on fair, reasonable and non-discriminatory ("FRAND") terms and conditions. In order to demonstrate breach of this contract provision, Apple must prove that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation. Apple is not required to prove that Samsung's alleged breach was the sole cause of its injury. Apple is required to prove that Samsung's alleged breach was a material cause of its injury.

10

**Samsung's Objection to Apple's Instruction**

11
12
13

The ETSI IPR Policy is governed by French Law, as is any breach of the Policy. Apple has no basis for its proposed instructions as to what is it is "not required to prove," as this is not the law of France. Further, the instruction fails to properly recite the language of Samsung's declaration, which includes the limitation that Samsung will be prepared to grant irrevocable licenses to the listed patents "to the extent those patents remain essential to the standard."

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Samsung has submitted declarations to ETSI in which Samsung identified the '516, '604, and '941 patents, or related patents or applications, as IPRs that it believed may be considered essential to the UMTS standard. In those declarations, Samsung declared that it would be prepared to grant irrevocable licenses under those IPRs on fair, reasonable and non-discriminatory terms and conditions to the extent the IPRs remain essential to the UMTS standard. In order to demonstrate breach of this provision, Apple must prove that all of the conditions for performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law and Apple's contentions in two ways. First, the instruction states that Samsung's obligation to license on FRAND terms applies "to the extent those patents remain essential to the standard." It is not necessary, however, for Samsung's patents to "remain essential" to the standard; it is enough that Samsung has declared the relevant patents essential and has not withdrawn its declaration. Second, the instruction addresses only the '516, '604, and '941 patents and related applications, but Apple alleges that Samsung breached its licensing obligations with respect to each of the seven originally asserted declared essential patents (also including the '410, '792, '867, and '001 patents). *See, e.g.*, Apple's Amended Answer, Defenses, and Counterclaims ¶¶ 44-89, 180-184 (Dkt. No. 381). Apple's corresponding instruction, Nos. 82 and 83, accurately reflects the elements that are actually disputed by the parties.

**PROPOSED FINAL JURY INSTRUCTION NO. 82.1**
**REQUIREMENTS OF THE ETSI IPR POLICY—AVAILABILITY OF LICENSES**

**Samsung's Proposed Instruction**

If you find that Samsung's '604 patent, '516 patent, and '941 patent are valid and that Apple has infringed those patents, Apple has raised a defense of breach of contract. Apple contends that Samsung has an obligation to license Samsung's patents that are essential to the UMTS standard, an obligation to negotiate in good faith, and an obligation to disclose IPRs to ETSI in a manner consistent with the ETSI IPR Policy and that Samsung breached these obligations. However, there is no allegation that Apple has an existing license to Samsung's '604 patent, '516 patent, and '941 patent.

**Source**

Order of May 4, 2012, at 20:1-21:25 ("First, there is no existing license between Apple and Samsung because there was no firm offer and acceptance of the terms of the license that Apple claims already exists. Both experts agree that an offer and acceptance are essential to contract formation under French law….").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is unnecessary. It mentions breach of contract, but does not ask the jury to decide any factual issue. Samsung's proposed instruction Nos. 82, 82.1, and 83 and Apple's proposed instruction Nos. 82 and 83 address Apple's breach of contract claims. In addition, Samsung's proposed instruction incorrectly states that "Apple contends that Samsung has an obligation to license Samsung's patent that *are essential* to the UMTS standard." But Apple contends that Samsung is obligated to license patents that it has declared essential to the standard, even if they are not in fact essential to the standard.

**PROPOSED FINAL JURY INSTRUCTION NO. 83**
**BREACH OF CONTRACT – OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL**
**PROPERTY RIGHTS ("IPR")**

**Apple's Proposed Instruction**

The ETSI IPR Policy provides that a member must use its reasonable endeavors during the development of a standard where it participates to disclose essential intellectual property rights. Where a member has submitted a technical proposal for a standard, it shall, on a bona fide basis, disclose all intellectual property rights that might be essential if that proposal is adopted. In order to demonstrate breach of this contract provision, Apple must prove that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation. Apple is not required to prove that Samsung's alleged breach was the sole cause of its injury. Apple is required to prove that Samsung's alleged breach was a material cause of its injury.

**Samsung's Objection to Apple's Instruction**

Samsung objects to the use of "this obligation" with respect to the ETSI IPR Policy because it is Apple's burden to prove that ETSI Members recognized that the ETSI IPR Policy imposes such a duty on its members. Moreover, Apple incorrectly paraphrases the ETSI IPR Policy. The Policy states, as reflected in Samsung's instruction:

> Each MEMBER shall use its reasonable endeavours to timely inform ETSI of ESSENTIAL IPRs it becomes aware of. In particular, a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

*See* Exhibit 503, ETSI IPR Policy (Nov. 1997). The second sentence directly relates to the first and cannot be read in a vacuum. Moreover, even if this policy were to impose a duty to disclose on members, it does not extend to all intellectual property rights that might be essential, but rather refers to a member's "IPR," a defined term that expressly excludes certain kinds of intellectual property rights, which might be ESSENTIAL, another defined term, and requires "reasonable endeavors" with respect to ESSENTIAL IPRs that a member "becomes aware of."
Additionally, Apple has no basis for its proposed instructions as to what is it is "not required to prove," as this is not the law of France.

1

**Samsung's Proposed Instruction**

2

The November 1997 ETSI IPR Policy provides:

3

      Each MEMBER shall use its reasonable endeavours to timely
      inform ETSI of ESSENTIAL IPRs it becomes aware of. In

4

      particular, a MEMBER submitting a technical proposal for a
      STANDARD shall, on a bona fide basis, draw the attention of

5

      ETSI to any of that MEMBER's IPR which might be ESSENTIAL
      if that proposal is adopted.

6

In order to demonstrate breach of this provision, Apple must prove that all of the conditions for

7

performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple
was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

8

9

**Apple's Objection to Samsung's Instruction**

10

Samsung's proposed instruction incorrectly states that Apple must prove that "all of the

11

conditions for performance of [Samsung's] obligation occurred," but Samsung has not described
what conditions for performance have not been met.   Apple's corresponding instruction No. 83
reflects the elements actually in dispute between the parties.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ANTITRUST JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 84**
**MONOPOLIZATION — ELEMENTS**

2

3

**Apple's Proposed Instruction**

4

I will now instruct you on how to decide whether Apple has proven that Samsung has violated the federal antitrust laws. Apple alleges that Samsung has unlawfully monopolized various markets consisting of technologies that competed to perform functions included in the UMTS standard. To prove its monopolization claim in any such market, Apple must persuade you that each of the following elements is more likely true than not:

5

6

7

      **First**, that the alleged technology market is a relevant antitrust market;

8

      **Second**, that Samsung possessed monopoly power in that market;

9

      **Third**, that Samsung willfully acquired its monopoly power in that relevant market by engaging in anticompetitive conduct;

10

      **Fourth**, that Samsung's conduct occurred in or affected interstate commerce; and

11

      **Fifth**, that Samsung's anticompetitive conduct was a substantial factor in causing injury to Apple in its business or property.

12

13

If you find that Apple has proved each of these elements for one or more alleged technology markets, then you must find for Apple and against Samsung on the monopolization claim. If you find that Apple has failed to do so, then you must find for Samsung and against Apple on this claim.

14

15

**Source**

16

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

17

18

**Authorities**

19

Sherman Act Section 2, 15 U.S.C. § 2; *Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Brunswich Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008).

20

21

22

**Samsung's Objection to Apple's Instruction**

23

Samsung objects to this instruction in that it states that the markets consist of technologies that "competed to perform functions included in the UMTS standard." The statement presumes that such competing technologies exist, which Apple must prove at trial.

24

25

26

27

28

**Samsung's Proposed Instruction**

Apple alleges that Samsung failed to disclose its intellectual property rights in the patents essential to the UMTS standard to an organization called ETSI, and thus violated Section 2 of the Sherman Act. If you determine that these three patents are in fact standard essential patents, you must then evaluate whether Apple has proven that Samsung violated antitrust laws. To win on its antitrust claim, Apple must prove each of the following elements is more likely true than not true:

> **First,** that the alleged technology market is a relevant antitrust market;

> **Second,** that Samsung possessed monopoly power in that market;

> **Third,** that Samsung willfully acquired or maintained its monopoly power in that market by engaging in anticompetitive conduct; and

> **Fourth,** that Samsung's anticompetitive conduct was a substantial factor in causing injury to Apple in its business or property.

If you find that Apple has proved each of these elements, then you must find for Apple and against Samsung on the monopolization claim. If you find that Apple has failed to prove any one or more of these elements, then you must find for Samsung and against Apple on this claim.

**Source**

Adapted from ABA Model Antitrust Jury Instructions, at C-2.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is improper for two reasons. First, the instruction states that Apple's monopolization claim depends on a finding that Samsung's patents "are in fact standard essential patents." However, Apple has alleged that Samsung has monopolized the relevant technology markets on the basis of its <u>declaration</u> that its patents are essential and the market power it obtained and exercised as a result of those declarations, regardless of whether the patents are in fact standard-essential. Second, the instruction states that Apple's monopolization claim is based solely on a failure to disclose intellectual property rights ("IPR"). But Apple alleges an overall course of conduct in which Samsung not only failed to disclose its IPR, but also deceived standards bodies regarding its licensing intentions and later breached its licensing commitments. Apple's Proposed Final Instruction No. 84 is an accurate statement of the law of monopolization and accurately describes Apple's claim.

**PROPOSED FINAL JURY INSTRUCTION NO. 84.1
MONOPOLIZATION — MONOPOLY POWER GENERALLY**

### Samsung's Proposed Instruction

Monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time. To prove a monopolization claim, one of the elements Apple must prove is that Samsung has monopoly power in a relevant antitrust market. However, monopoly power, in and of itself, is not unlawful. A patent owner who does no more than take advantage of the right to exclude created by its patent does not violate the antitrust laws.

I will now provide further instructions about how you may determining whether the Apple has met its burden of proving Samsung's alleged monopoly power in a relevant market.

**Source**

ABA Model Antitrust Jury Instructions, at C-4; *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 389 (1956); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1987).

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction is unnecessary, and Apple believes it should be deleted. To the extent it is included, Apple objects to including the statements that having monopoly power is not unlawful and that "[a] patent owner who does no more than take advantage of the right to exclude created by its patent does not violate the antitrust laws." These statements relate to whether Samsung is ultimately liable, and not whether Apple has proven monopoly power. Including them could confuse the jury and imply that enforcing a patent can never be part of the proof of monopoly power, which is incorrect. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) (holding that standard-setting misconduct followed by improper assertion of patent rights can violate the Sherman Act).

**PROPOSED FINAL JURY INSTRUCTION NO. 85**
**MONOPOLIZATION — RELEVANT MARKET**

**Apple's Proposed Instruction**

To prove a monopolization claim, one of the elements Apple must prove is that Samsung has monopoly power in a relevant antitrust market. An antitrust market is defined both by the relevant technologies that compete with each other, and by the geographic area in which they compete.

A relevant technology market includes all those technologies that are reasonable substitutes for each other from the user's point of view; that is, the technologies that compete with each other. These technologies are not physical products themselves, but rather are intellectual property rights and close substitutes – including ideas or techniques not covered by such property rights – that are used to produce products. A relevant technology market includes the technologies that users believe are reasonably interchangeable to achieve certain functionality, and need not be identical or precisely interchangeable as long as they are reasonable substitutes. This is a practical test, and you may consider the actual behavior of users or potential users and the marketing efforts of licensors in making this determination.

The relevant geographic market is the area in which the Samsung technologies face competition from other technologies to which customers can reasonably turn. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

In this case, Apple claims that the relevant geographic market is worldwide. Samsung does not propose any geographic market, but asserts that Apple has not shown a worldwide market.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

Sherman Act Section 2, 15 U.S.C. § 2; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Rebel Oil v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995); *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D.Cal. Jan. 5, 2008).

**Samsung's Objection to Apple's Instruction**

While Apple's instruction discusses both a technology market and a geographic market, the instruction fails to make clear that Apple must prove the existence of both. Apple's instruction also neglects to state that it must prove the existence of these markets by a preponderance of the evidence.

1  **Samsung's Proposed Instruction**

2  Apple must prove that it is more likely true than not true that Samsung had monopoly power in
   one or more relevant markets. Defining the relevant market is essential to determining whether
3  Samsung had monopoly power because whether a company has monopoly power depends on the
   contours of the market.

4

5  There are two aspects you must consider in determining whether Apple has met its burden of
   proving the relevant market or markets. The first is the existence of a relevant technology
   market. The second is the existence of a relevant geographic market.

6

7  If, after considering all the evidence, you find that Apple has proven both a relevant technology
   market and a relevant geographic market, then you must find that Apple has met the relevant
   market requirement and you must consider the remaining elements of its unlawful
8  monopolization claims.

9  If you find that Apple has failed to prove either a relevant technology market or a relevant
   geographic market, then you must find for Samsung and against Apple on Apple's unlawful
10 monopolization claim.

11 **Source**

12 Adapted from ABA Model Antitrust Jury Instructions, at C-6

13

   **Apple's Objection to Samsung's Instruction**
14

15 Samsung's proposed instruction Nos. 85-85.2 are unnecessarily long, and Apple believes they
   should be combined to reduce the burden on the jury. Apple's corresponding instruction, No. 85,
   accurately and more succinctly identifies the elements of the law of market definition.

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 85.1**
**MONOPOLIZATION RELEVANT TECHNOLOGY—MARKET**

**Samsung's Proposed Instruction**

A "technology" refers to an invention or process for accomplishing something, and is sometimes covered by a patent. The basic idea of a relevant technology market is that the technologies within it are reasonable substitutes for each other from the user's point of view; that is, the technologies compete with each other. In other words, a relevant technology market includes the technologies that a user believes are reasonably interchangeable or reasonable substitutes for each other. Technologies need not be identical or precise interchangeable as long as they are reasonable substitutes. This is a practical test, and you may consider the actual behavior of users and the marketing efforts of licensors.

**Source**
Based generally on *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007); *Hynix, et al. v. Rambus Inc.*, Case No. 06-cv-00244-RMW, Ckt. No. 1254 (Final Jury Instructions), at 26-27.

**Samsung's Statement in Support**

Apple's Proposed Final Jury Instruction No. 85 contains an abbreviated statement of law regarding market definition. Samsung's Proposed Final Jury Instruction No. 85.1 is part of several instructions that provide the jury with greater detail regarding how technology and geographic markets are defined.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction Nos. 85-85.2 are unnecessarily long, and Apple believes they should be combined to reduce the burden on the jury. Apple's corresponding instruction, No. 85, accurately and more succinctly identifies the elements of the law of market definition.

**PROPOSED FINAL JURY INSTRUCTION NO. 85.2
MONOPOLIZATION RELEVANT GEOGRAPHIC MARKET—MARKET**

**Samsung's Proposed Instruction**

The relevant geographic market is the area in which Samsung faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market.  The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

Apple has the burden of proving the relevant geographic market by a preponderance of the evidence.  In this case, Apple claims that the relevant geographic market is worldwide.  Samsung asserts that Apple will not show that such a market exists or that Samsung has monopoly power in it. In determining whether Apple has met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

- the geographic area in which Samsung licenses its patents and where Samsung's customers are located;
- the geographic area to which customers turn for supply of the product;
- the geographic area to which customers have turned or have seriously considered turning;
- the geographic areas that suppliers view as potential sources of competition;
- whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

**Source**
ABA Model Instructions, pp. C–13–C–14; *United States v. Grinnell Corp.*, 384 U.S. 563 (1966); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d. 1003, 1026-27 (10th Cir. 2002); *ReMax Int'l, Inc. v. Realty One, Inc.*, 173 F.2d 995 (6th Cir. 1999); *Morgenstern v. Wilson*, 29 F.3d 1291 (8th Cir. 1994); ABA Section of Antitrust Law, 1 Antitrust Law Developments 577-89 (5th ed. 2002); *Battle v. Liberty Nat'l Life Ins. Co.*, 493 F.2d 39, 45 (5th Cir. 1974); *Apani Southwest, Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 626 (5th Cir. 2002) (finding alleged geographic market of 27 city-run facilities insufficient to support Clayton Act and Sherman Act § 1 claims); *FTC v. Tenet Health Care*, 186 F.3d 1045 (8th Cir. 1999) (holding that the government must present evidence concerning where consumers could practicably go for care, not where they actually do go).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 85.2 would confuse the jury in two ways.  First, the instruction inappropriately refers to whether "Samsung has monopoly power," which is irrelevant to identifying the relevant geographic market.  Second, the instruction refers to various considerations that inappropriately focus on the location of licensees rather than the location of potential licensors (or inventors) of alternative technologies that could be considered for incorporation into the UMTS standard.  Apple's corresponding instruction, No. 85, is an accurate statement of the elements of the law of market definition and is more appropriate given the facts of this case.

**PROPOSED FINAL JURY INSTRUCTION NO. 86**
**MONOPOLIZATION — EVIDENCE OF MONOPOLY POWER**

**Apple's Proposed Instruction**

If you find that Apple has proven one or more relevant markets, then you should determine whether Samsung has monopoly power in those markets. Monopoly power is the power to control prices and exclude competition in a relevant antitrust market.

*Direct Evidence of Monopoly Power*

In determining whether Samsung has monopoly power in a relevant market, you may consider whether there is direct evidence that Samsung controls prices or excluded competition. Such direct evidence would consist of evidence that Samsung has demanded or received royalties above competitive levels for patents it claims are essential to the UMTS standard or excluded alternative technologies in the relevant technology market or markets.

*Indirect Evidence of Monopoly Power*

If you do not find there is direct evidence of monopoly power, there are a number of factors you may consider as indirect evidence of monopoly power:

> One factor you should consider is Samsung's market share in any relevant technology market. A market share above 50 percent may be sufficient to support an inference that Samsung has monopoly power. The likelihood that a company has monopoly power is stronger when the company's share is above 50 percent. However, it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry into the market, actual entry and exit by other companies, and the number and size of competitors.

> Another factor you may consider is whether there are barriers to entry into the relevant market or markets. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. A potential barrier to entry may be the existence of a recognized standard that prevents alternative technologies from being adopted or introduced in the market. Similarly, if users of a technology cannot readily switch between technologies, entry into the technology market may be impossible.

If you find based on these factors or other evidence that Samsung more likely than not has the power to maintain royalties above a competitive level or to exclude alternative technologies in the relevant market or markets, then you should find that Samsung has monopoly power in the relevant market or markets.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

Sherman Act Section 2, 15 U.S.C. § 2; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D.Cal. Jan. 5, 2008); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

1

2

**Samsung's Objection to Apple's Instruction**

3

Both Samsung and Apple's instructions derive from ABA Model Antitrust Jury Instructions, C-16 to C-19, C-23.  However, Apple's instructions improperly abridge the rules by omitting important statements of law.  For example, Apple's instructions do not explain that a market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power (*see e.g. In re IBM Peripheral EDP Devices Antitrust Litig*., 481 F. Supp. 965, 982 (N.D. Cal. 1979) ("This market was not monopolized. IBM did not control prices, it reacted to the prices set by others. IBM's market share (if the market had been properly defined) was below 57 percent and falling. "); *In re Se. Milk Antitrust Litig*., 801 F. Supp. 2d 705, 725 (E.D. Tenn. 2011))  and that, to prove direct infringement, it must be shown that defendant has the power to maintain prices above a competitive level for a significant period of time (*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P*., 786 F. Supp. 2d 1202, 1212 (S.D. Tex. 2009)).  There is also no legal support for Apple's contention that direct evidence of monopolization includes that Samsung merely ***demanded*** above competitive levels for patents it claims are essential to the UMTS standard.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

If you find that plaintiffs have proven a relevant market, then you should determine whether Samsung has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.

**Market Share**

The first factor that you should consider is Samsung's market share. A market share above 50 percent may be sufficient to support an inference that a defendant has monopoly power, but in considering whether a defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with a defendant's market share, these factors should inform you as to whether the defendant has monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that defendant does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that the defendant has monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products). Evidence of low or no entry barriers may be evidence that defendant does not have monopoly power, regardless of defendant's market share, because new competitors could enter easily if the defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

**Number and Size of Competitors**

You may consider whether the defendant's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on the defendant's ability to price its products. If the defendant's competitors are vigorous or have large or increasing market shares, this may be evidence that the defendant lacks monopoly power. On the other hand, if you determine that the defendant's competitors are weak or have small or declining market shares, this may support an inference that the defendant has monopoly power.

**Conclusion**

If you find that Samsung has monopoly power in the relevant market, then you must consider the remaining elements of Apple's monopolization claim. If you find that Samsung does not have monopoly power, then you must find for Samsung and against Apple on this claim.

1   **Source**

2   Based on ABA Model Antitrust Jury Instructions, at C-16 to C-19 and the authorities cited
    therein.

3

4   **Apple's Objection to Samsung's Instruction**

5   Samsung's proposed instruction misstates the law in *two* ways.  First, the instruction (along with
    instruction No. 86.1) does not make clear that Apple can prove monopoly power through either

6   direct or indirect evidence, and instead implies that Apple must prove monopoly power through
    both types of evidence.  But the Ninth Circuit has made clear that either type of proof, standing

7   alone, is sufficient to establish monopoly power.  *See, e.g.*, *Rebel Oil v. Atl. Richfield Co.*,
    51 F.3d 1421, 1434 (9th Cir. 1995) ("Market power may be demonstrated through either of two

8   types of proof. One type of proof is direct evidence of the injurious exercise of market power.").
    Second, the instruction fails to explain the role of standards in the analysis of barriers to entry.

9   Again, the law is clear that standardization of one technology can eliminate alternative
    technologies from the relevant technology market.  *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*,

10  501 F.3d 297, 314 (3d Cir. 2007) ("When a patented technology is incorporated in a standard,
    adoption of the standard eliminates alternatives to the patented technology.").  Apple's

11  corresponding instruction, No. 86, is an accurate statement of the law of monopoly power.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 86.1**
**MONOPOLIZATION—EXISTENCE OF MONOPOLY POWER—DIRECT PROOF**

**Samsung's Proposed Instruction**

If you find that plaintiff has proven a relevant market, then you should determine whether defendant has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.

Plaintiff has the burden of proving that defendant has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. Plaintiff must prove that defendant has the power to do so by itself -- that is, without the assistance of, and despite competition from, any existing or potential competitors.

Plaintiff must also prove that defendant has the power to maintain prices above a competitive level for a significant period of time. If defendant attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then defendant does not have monopoly power.

Similarly, plaintiff must prove that defendant has the ability to exclude competition. For example, if defendant attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then defendant does not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that defendant has monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services, the ability to maintain an efficient business operation, or superior advertising or marketing [expand or contract list as appropriate]. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that defendant would lose a substantial amount of sales if it raised prices substantially, or that the defendant's profit margins were low compared to its competitors, erratic, and/or decreasing, might be evidence that the defendant does not have monopoly power.

If you find that defendant has monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that defendant does not have monopoly power, then you must find for defendant and against the plaintiff on this claim.

**Source**

Based on ABA Model Antitrust Jury Instructions, at C-23 and the authorities cited therein.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law in two ways. First, the instruction (along with instruction No. 86) does not make clear that Apple can prove monopoly power through either direct or indirect evidence, and instead implies that Apple must prove monopoly power through both types of evidence. But the Ninth Circuit has made clear that either type of proof, standing alone, is sufficient to establish monopoly power. *See, e.g.*, *Rebel Oil v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) ("Market power may be demonstrated through either of two types of proof. One type of proof is direct evidence of the injurious exercise of market power.").

1
2
3

Second, this instruction deals primarily with direct evidence of raised prices, rather than direct evidence of excluded competition.  But Apple intends to introduce direct evidence of monopoly power based on the exclusion of technologies that, pre-standardization, were viable alternatives for the technologies Samsung claims are covered by its patents.  Apple's corresponding instruction, No. 86, is an accurate statement of the law of monopoly power.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROPOSED FINAL JURY INSTRUCTION NO. 87
MONOPOLIZATION — WILLFUL ACQUISITION OF MONOPOLY POWER
THROUGH ANTICOMPETITIVE ACTS**

**Apple's Proposed Instruction**

The next element Apple must prove is that Samsung willfully acquired monopoly power through anticompetitive acts or practices in the relevant technology markets. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition among technologies. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better technology, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

To be anticompetitive, the acts or practices that result in the acquisition of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. You may not find that a company willfully acquired monopoly power if it has acquired that power solely through the exercise of superior foresight and skill; or because of economic or technological efficiency, including efficiency resulting from scientific research; or because changes in cost or taste have driven out all but one supplier.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Rebel Oil Co., Inc. v. Atlantic Richfield, Co.* 51 F.3d 1421 (9th Cir. 1995) (monopoly power may be proven directly); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

**Samsung's Objection to Apple's Instruction**

Both parties' instructions are based on the ABA Model Antitrust Jury Instructions, but Apple's instruction omits discussion of whether Samsung's conduct was legitimate business conduct. *See e.g. Thomsen v. W. Elec. Co., Inc.*, 512 F. Supp. 128, 131 (N.D. Cal. 1981) aff'd, 680 F.2d 1263 (9th Cir. 1982). For example, Samsung intends to introduce evidence that the timing of Samsung's disclosure of its essential patents was consistent with competition on the merits. Apple's instruction provides no guidance as to what constitutes legitimate business conduct and should therefore be rejected. Apple's instruction also omits examples which may prove useful to explaining this element to the jury.

**Samsung's Proposed Instruction**

The next element plaintiffs must prove is that Samsung willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals – or the achievement of these goals – unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Samsung's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

For example, suppose there are five firms that make printers for home computers and that these printers comprised a relevant product market. Suppose also that Firm A developed a more efficient manufacturing process that allowed it to sell profitably at a lower price than its competitors. If Firm A grew its market share and achieved monopoly power by selling profitably at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a revolutionary new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

By contrast, in the same example, suppose not only that Firm C makes printers, but also that Firm C is the world's only manufacturer of computers and that there are barriers to entry in the computer market such that no other firm will be able to enter that market. Suppose also that Firm C altered its computers in such a way that only Firm C's printers would work with its computers, and that the alteration does not improve the design of Firm C's computers or provide any benefits to competition or consumers – the only effect of the alteration is to exclude competing printer makers from the marketplace. If Firm C thereby prevented its printer competitors from competing and achieved monopoly power, it would be unlawful for Firm C to achieve monopoly power in the printer market in this way.

As these examples show, the acts or practices that result in the acquisition of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or

impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully acquired monopoly power if it has acquired that power solely through the exercise of superior foresight and skill; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or taste have driven out all but one supplier.

If you find that Apple has proven by a preponderance of the evidence that Samsung willfully acquired monopoly power through anticompetitive acts, then you must consider whether the Apple has proved the remaining elements of their monopolization claim. If, however, you find that Apple did not prove this element by a preponderance of the evidence, then you must find for Samsung and against the plaintiffs on this claim.

**Source**

Based on ABA Model Antitrust Jury Instructions, at C-26 to C-30 and the authorities cited therein; *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1370-72 (Fed. Cir. 2002); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068-73 (Fed. Cir. 1998), *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979)).

**<u>Apple's Objection to Samsung's Instruction</u>**

Samsung's proposed instruction is likely to confuse the jury because it includes examples that unnecessarily increase its length and complexity. Apple's corresponding instruction, No. 87, is an accurate and more succinct statement of the law of willful acquisition of monopoly power.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 88**
**MONOPOLIZATION — ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING**

2

3

**Apple's Proposed Instruction**

Apple alleges that Samsung willfully acquired monopoly power based on anticompetitive behavior in connection with the UMTS standard-setting process at 3GPP.  Apple and Samsung agree that Samsung was obligated to abide by the ETSI IPR Policy when participating in standard-setting activities related to the UMTS standard.

4

5

6

Based on the available information, a standard-setting organization can select the best technology (considering its cost and its performance) and can include that technology in the standard.  To the extent the industry has invested in a standard and cannot easily transfer that investment to an alternative standard, the process of standardization may eliminate alternative technologies.  When a patented technology is incorporated into such a standard, adoption of the standard may eliminate alternatives to the patented technology.

7

8

9

As to Apple's claims that Samsung failed to timely disclose IPR (including patents and patent applications) that may cover technology being considered for inclusion in the UMTS standard, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if:  (1) the ETSI IPR Policy created an expectation that participants would timely disclose IPR that reasonably might cover technology being considered for adoption in the UMTS standard; (2) Samsung knowingly failed to disclose such IPR in a timely fashion; (3) 3GPP relied on the requirement that Samsung would timely disclose such IPR when 3GPP created the UMTS standard; and (4) Samsung later attempted to enforce such IPR against a standard-compliant product.

10

11

12

13

14

As to Apple's claims that during the standard-setting process Samsung concealed its true intentions not to meet the commitment it had made to license its declared-essential IPR on fair, reasonable, and non-discriminatory ("FRAND") terms, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if:  (1) the ETSI IPR Policy created an expectation that participants would truthfully disclose their intentions whether or not to license their declared-essential IPR on FRAND terms; (2) Samsung knowingly concealed its true intentions; (3) 3GPP relied on the requirement that Samsung would truthfully disclose its intentions whether or not license its declared-essential IPR on FRAND terms when 3GPP adopted the UMTS standard; and (4) Samsung later attempted to enforce such IPR against a standard-compliant product in a manner inconsistent with its FRAND commitments.

15

16

17

18

19

In determining whether Apple has proved that Samsung willfully acquired monopoly power, you may consider Samsung's course of conduct as a whole and its overall effect, rather than focusing on a particular aspect of Samsung's disclosure or licensing conduct in isolation.

20

21

**Source**

22

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

23

24

**Authorities**

25

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

26

27

28

1    **Samsung's Objection to Apple's Instruction**

2    Apple's instruction includes statements that are both incorrect and unfounded.  The instruction
     states that "a standard-setting organization can select the best technology (***considering its cost***
3    and its performance) . . . ."  (emphasis added).  But the ETSI Guide on Intellectual Property
     Rights states that the Technical Bodies that decide which standards to implement "are not the
4    appropriate place to discuss IPR Issues" and that they "do not have the competence to deal with
     commercial issues."  (ETSI Guide on Intellectual Property Rights § 4.1.)  The instruction also
5    misrepresents several provisions of the ETSI IPR Policy.  The instruction asks the jury to
     consider whether "3GPP had an expectation that participants would timely disclose IPR that
6    reasonably might cover technology being considered for adoption in the UMTS standard."
     However, the provision of the ETSI IPR Policy that forms the basis for Apple's claim regarding
7    the timing of Samsung's disclosure of its essential patents to ETSI requires that "each MEMBER
     shall use its ***reasonable endeavors*** to timely inform ETSI of ESSENTIAL IPRs it becomes aware
8    of."  (D.N. 381 at 41; November 1997 ETSI IPR Policy § 4.1 (emphasis added).)  Similarly,
     Apple's instructions incorrectly require the jury to consider whether the "ETSI IPR Policy created
9    an expectation that participants would truthfully disclose their intentions whether or not to license
     their declared-essential IPR on FRAND terms."  However, the provision of the ETSI IPR
10   regarding the availability of licenses states that the owner shall be "***prepared to grant irrevocable***
     ***licenses*** on fair, reasonable and non-discriminatory terms and conditions under such IPR . . . ."
11   (D.N. 381 at 42; November 1997 ETSI IPR Policy § 6.1 (emphasis added).)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Samsung's Proposed Instruction**

2   Apple alleges that Samsung willfully acquired or maintained monopoly power in the technologies
    based on anticompetitive behavior at ETSI.  ETSI is a standard-setting organization.  A standard
3   can enhance consumer welfare by ensuring interoperability of products and devices.  The ideal
    standard-setting process can allow members of a standard-setting organization to make an
4   objective comparison between multiple technologies before a standard is adopted.  To the extent
    the marketplace only recognizes one standard, the process of standardization may eliminate
5   alternative technologies.  When a patented technology is incorporated into a standard, adoption of
    the standard may eliminate alternatives to the patented technology.  Nevertheless, "winning" the
6   competition between two technologies to be included in the standard may enhance consumer
    welfare and not be anticompetitive even if the technology is covered by a patent.

7

8   Apple contends that Samsung's conduct with respect to the disclosure of its declared essential
    patents was anticompetitive.  In order to prove that this conduct was anticompetitive, Apple must
9   show that (1) ETSI members shared a clearly defined expectation that members would use
    reasonable endeavors to timely inform ETSI of essential IPR that the member became aware of;
    (2) Samsung knowingly failed to use reasonable endeavors to timely inform ETSI of essential
10  IPR; (3) ETSI members relied on the requirement that Samsung would disclose such essential
    IPR when they adopted the standards; and (4) Samsung later attempted to enforce such a patent
11  against a standards-compliant device.

12  Apple contends that Samsung's conduct with respect to making available licenses to declared
    essential IPRs was anticompetitive.  In order to prove that this conduct was anticompetitive,
13  Apple must show that (1) ETSI members shared a clearly defined expectation that members
    would be prepared to grant licenses to essential patents on FRAND terms and conditions; (2)
14  Samsung knowingly did not intend to grant licenses to essential patents on FRAND terms and
    conditions; (3) ETSI members relied on the requirement that Samsung would be prepared to grant
15  licenses to essential patents on FRAND terms and conditions when they adopted the standards;
    and (4) Samsung later attempted to enforce an essential patent against a standards-compliant
16  device.

17  In addition, Apple must prove that Samsung induced ETSI to adopt its standard.  In other words,
    Apple must prove that there was an alternative technology that ETSI was considering during the
18  standard setting process and that ETSI would have adopted an alternative standard had it known
    of Samsung's intellectual property rights.

19

    **Source**
20

21  Adapted from ABA Model Antitrust Jury Instructions, at C-26, D-64, and the authorities cited
    therein; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007); November 1997 ETSI
    IPR Policy.
22

23  **Apple's Objection to Samsung's Instruction**

24  Samsung's proposed instruction misstates the law and Samsung's disclosure obligations at ETSI.
    First, the instruction states that Apple must show that "there was an alternative technology that
25  ETSI was considering during the standard setting process and that ETSI would have adopted an
    alternative standard had it known of Samsung's intellectual property rights."  But the law is clear
26  that Apple could also establish that Samsung's misconduct wrongfully led to its acquisition of
    monopoly power if Samsung's conduct caused ETSI to include a feature in the standard that it
27  otherwise would have excluded, or if alternatives existed that ETSI did not consider during
    standardization but would have sought out had Samsung's intention not to license its IPR been
28  known.  *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 501 F. 3d 297, 313 (3d Cir. 2007)

1   ("Misrepresentations concerning the cost of implementing a given technology may confer an
unfair advantage and bias the competitive process in favor of that technology's inclusion in the

2   standard."). Second, the instruction presents the two bases for Apple's claim in a misleading
manner because it fails to clarify that either one, standing alone, is sufficient to prove

3   anticompetitive conduct.  Apple can prevail by proving either its non-disclosure theory, its
theory that Samsung concealed its licensing intentions during standardization, and Apple is

4   entitled to an instruction that the jury may consider Samsung's course of conduct as a whole.
*See*, *e.g.*, *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("In

5   [Sherman Act cases], plaintiffs should be given the full benefit of their proof without tightly
compartmentalizing the various factual components and wiping the slate clean after scrutiny of

6   each.").  Third, Samsung's description of Samsung's obligations under the ETSI IPR Policy
ignore the obligation to disclose IPR that "might be" essential if a Samsung proposal were

7   adopted.  *See* ETSI IPR Policy Clause 4.1.  Additionally, Apple asserts that Samsung failed to
disclose IPR that it had actual knowledge might be essential to technologies under consideration

8   for standardization, and therefore the instruction's reference to "reasonable endeavors" is
inapplicable.  Apple's corresponding instruction, No. 88, accurately reflects the law and Apple's

9   claim.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 89
MONOPOLIZATION — SAMSUNG'S INTENT**

3

**Apple's Proposed Instruction**

4

5

In determining whether or not Samsung willfully acquired monopoly power in a relevant technology market, you may consider any evidence that Samsung intended to deceive ETSI to the extent it helps to understand the likely effect of Samsung's conduct. Specific intent to monopolize, however, is not required for one to be liable for monopolization; only the intent to commit the acts that resulted in monopolization.

6

7

**Source**

8

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

9

**Authorities**

10

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 US 585, 602 (1985).

11

12

**Samsung's Objection to Apple's Instruction**

13

14

15

Samsung objects to this instruction because Apple's cited authority does not support the proposition that "any evidence that Samsung intended to deceive ETSI to the extent it helps to understand the likely effect of Samsung's conduct." Further, the meaning of the instruction is unclear and may confuse the jury. Accordingly, Apple's proposed construction should be rejected, as it does nothing to clarify the intent requirement that is already set forth in both Samsung's Proposed Final Instruction No. 61.2 and Samsung's Alternative to Apple's Proposed Final Instruction No. 84.

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Samsung has introduced evidence that its licensing decisions were based on legitimate business purposes. A refusal to cooperate that is designed to protect or further the legitimate business purposes of a monopolist does not violate the antitrust laws, even if that refusal injures competitors. In general, the desire, to maintain monopoly power or to block entry of competitors is not a legitimate business purpose. A legitimate business purpose is one that benefits the actor regardless of any harmful effect on competitors, such as a purpose to promote efficiency or quality, offer a better product or service, or increase short run profits. Thus, a refusal to cooperate that harms Samsung's independent interests and makes sense only to obtain or maintain monopoly power is not based on legitimate business purposes. A refusal to cooperate that is based in part on legitimate business reasons, even if it is also motivated by the desire to harm competitors, does not violate the antitrust laws. It is Apple's burden to prove that Samsung's refusal to cooperate was not motivated by legitimate business purposes.

**Source**

Based on ABA Model Antitrust Jury Instructions, at C-39; *City of Vernon v. Southern Cal. Edison Co.*, 955 F.2d 1361, 1266 (9th Cir. 1992).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law and should be omitted. It misstates the law by imposing an improper legal standard—*i.e.*, the standard from a "refusal to deal" case—rather than the proper standard for a standard-setting misconduct case such as this one. In a unilateral refusal to deal case, plaintiffs must prove a lack of business justification. But the law is clear that such proof is not required in a standard-setting misconduct case. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) (listing elements of a standard-setting misconduct case). To the extent Samsung wishes to raise the <u>defense</u> of business justification, *Samsung* must prove the existence of a legitimate business purpose, if indeed such a defense is even available outside the tying context. *See, e.g., Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1349-51 (9th Cir. 1987) (recognizing a limited defense of business justification in tying cases and setting out elements of such a defense). With regard to jury confusion, the instruction improperly adds discussion of a business justification defense to Apple's antitrust claim. In the present dispute, if Apple proves breach of Samsung's disclosure obligations, or that Samsung misrepresented its licensing intentions, there could be no possible business justification for such conduct, and Samsung has pointed to none.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 90**
**MONOPOLIZATION — INTERSTATE CONDUCT**

2

3

**Apple's Proposed Instruction**

The federal antitrust laws apply only to conduct that affects interstate commerce. In this case,
there is no dispute that Samsung's conduct affected interstate commerce.

4

5

**Source**

6

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-
RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

7

8

**Samsung's Objection to Apple's Instruction**

9

Samsung has addressed this element by eliminating the "interstate commerce" element from its
Alternative to Apple's Proposed Final Instruction No. 84. If the Court adopts Samsung's
Instruction in lieu of Apple's Proposed Final Instruction No. 90, then this instruction is
unnecessary.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED FINAL JURY INSTRUCTION NO. 91
MONOPOLIZATION — INJURY AND DAMAGES

**Apple's Proposed Instruction**

If you find that Samsung has violated the federal antitrust laws as alleged by Apple, you must then decide if Apple is entitled to recover damages from Samsung.

Apple is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

> **First**, Apple must prove that it was in fact injured as a result of Samsung's alleged violation of the antitrust laws.

> **Second**, Apple must prove that Samsung's alleged illegal conduct was a material cause of Apple's injury. This means that Apple must prove that some damages occurred as a result of Samsung's alleged antitrust violation, and not some other cause. Apple is not required to prove that Samsung's alleged antitrust violation was the sole cause of its injury; nor need Apple eliminate all other possible causes of injury.

> **Third**, Apple must prove that its injury is the type of injury that the antitrust laws were intended to prevent. If Apple's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then Apple's injury is an "antitrust injury." The costs and expenses in defending against the assertion of declared-essential patents may be antitrust injury. On the other hand, if Apple's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Apple's injuries are not antitrust injuries and Apple may not recover damages for those injuries under the antitrust laws.

If you find that Apple has suffered injury to its business or property, you must determine whether Apple has proven that it is entitled to damages for such injury. The amount of any such damages is the amount of damages that Apple has proven at trial with reasonable certainty.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5141861, at *4 (N.D. Cal. Dec. 13, 2010).

**Samsung's Objection to Apple's Instruction**

The parties' constructions are identical, except for Samsung's use of the term "essential patents" rather than "declared-essential patents." As Apple's antitrust claim is predicated on Samsung's patents being essential, rather than simply declared essential, Samsung's construction should be adopted.

**Samsung's Proposed Instruction**

If you find that Samsung has violated Section 2 of the Sherman Act as alleged by Apple, you must then decide if Apple is entitled to recover damages from Samsung.

Apple is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

> **First**, Apple must prove that it was in fact injured as a result of Samsung's alleged violation of the antitrust laws.

> **Second**, Apple must prove that Samsung's alleged illegal conduct was a material cause of Apple's injury. This means that Apple must prove that some damages occurred as a result of Samsung's alleged antitrust violation, and not some other cause. Apple is not required to prove that Samsung's alleged antitrust violation was the sole cause of its injury; nor need Apple eliminate all other possible causes of injury.

> **Third**, Apple must prove that its injury is the type of injury that the antitrust laws were intended to prevent. If Apple's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then Apple's injury is an "antitrust injury." The costs and expenses in defending against the assertion of essential patents may be antitrust injury. On the other hand, if Apple's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Apple's injuries are not antitrust injuries and Apple may not recover damages for those injuries under the antitrust laws.

If you find that Apple has suffered injury to its business or property, you must determine whether Apple has proven that it is entitled to damages for such injury. The amount of any such damages is the amount of damages that Apple has proven at trial with reasonable certainty.

**Apple's Objection to Samsung's Instruction**

The parties' instructions are virtually identical, except that Samsung's proposed instruction refers to "essential patents" while Apple's refers to "declared-essential patents." Apple has alleged that Samsung has monopolized the relevant technology markets on the basis of its <u>declaration</u> that its patents are essential and the market power it obtained and exercised as a result of those declarations, regardless of whether the patents are in fact standard-essential. Apple's corresponding instruction, No. 91, accurately reflects the law and Apple's claim.

1    Dated:  July 13, 2012                  HAROLD J. MCELHINNY (CA SBN 66781)
                                            hmcelhinny@mofo.com
2                                           MICHAEL A. JACOBS (CA SBN 111664)
                                            mjacobs@mofo.com
3                                           JENNIFER LEE TAYLOR (CA SBN 161368)
                                            jtaylor@mofo.com
4                                           ALISON M. TUCHER (CA SBN 171363)
                                            atucher@mofo.com
5                                           RICHARD S.J. HUNG (CA SBN 197425)
                                            rhung@mofo.com
6                                           JASON R. BARTLETT (CA SBN 214530)
                                            jasonbartlett@mofo.com
7                                           MORRISON & FOERSTER LLP
                                            425 Market Street
8                                           San Francisco, California  94105-2482
                                            Telephone:  (415) 268-7000
9                                           Facsimile:  (415) 268-7522

10                                          WILLIAM F. LEE
                                            william.lee@wilmerhale.com
11                                          WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
12                                          60 State Street
                                            Boston, MA 02109
13                                          Telephone: (617) 526-6000
                                            Facsimile: (617) 526-5000

14

15                                          MARK D. SELWYN (SBN 244180)
                                            mark.selwyn@wilmerhale.com
16                                          WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
17                                          950 Page Mill Road
                                            Palo Alto, California 94304
18                                          Telephone: (650) 858-6000
                                            Facsimile: (650) 858-6100

19

20
                                            By:    _Michael A. Jacobs_____
21                                                   Michael A. Jacobs

22                                          Attorneys for Plaintiff and
                                            Counterclaim-Defendant
23                                          APPLE INC.

24

25

26

27

28

1    Dated: July 13, 2012                    QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
2                                            Charles K. Verhoeven (Cal. Bar No. 170151)
                                             charlesverhoeven@quinnemanuel.com
3                                            50 California Street, 22nd Floor
                                             San Francisco, California 94111
4                                            Telephone: (415) 875-6600
                                             Facsimile: (415) 875-6700
5
                                             Kevin P.B. Johnson (Cal. Bar No. 177129)
6                                            kevinjohnson@quinnemanuel.com
                                             Victoria F. Maroulis (Cal. Bar No. 202603)
7                                            victoriamaroulis@quinnemanuel.com
                                             555 Twin Dolphin Drive 5th Floor
8                                            Redwood Shores, California 94065
                                             Telephone: (650) 801-5000
9                                            Facsimile: (650) 801-5100

10                                           Michael T. Zeller (Cal. Bar No. 196417)
                                             michaelzeller@quinnemanuel.com
11                                           865 S. Figueroa St., 10th Floor
                                             Los Angeles, California 90017
12                                           Telephone: (213) 443-3000
                                             Facsimile: (213) 443-3100
13

14
                                             By:    _Victoria Maroulis_____
15                                                   Victoria Maroulis

16                                           Attorneys for Defendants and
                                             Counterclaim-Plaintiffs
17                                           SAMSUNG ELECTRONICS CO.,
                                             LTD., SAMSUNG ELECTRONICS
18                                           AMERICA, INC. and SAMSUNG
                                             TELECOMMUNICATIONS
19                                           AMERICA, LLC

20

21

22

23

24

25

26

27

28

1

**ATTESTATION OF E-FILED SIGNATURE**

2          I, Michael A. Jacobs , am the ECF User whose ID and password are being used to file this

3    Declaration.  In compliance with General Order 45, X.B., I hereby attest that Victoria Maroulis

4    has concurred in this filing.

5    Dated:  July 13, 2012                                    _____ */s/  Michael A. Jacobs* _____
                                                                       Michael A. Jacobs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28