1   HAROLD J. MCELHINNY (CA SBN 66781)          WILLIAM F. LEE (*pro hac vice*)
    hmcelhinny@mofo.com                          william.lee@wilmerhale.com
2   MICHAEL A. JACOBS (CA SBN 111664)            WILMER CUTLER PICKERING
    mjacobs@mofo.com                             HALE AND DORR LLP
3   JENNIFER LEE TAYLOR (CA SBN 161368)          60 State Street
    jtaylor@mofo.com                             Boston, MA 02109
4   ALISON M. TUCHER (CA SBN 171363)             Telephone: (617) 526-6000
    atucher@mofo.com                             Facsimile: (617) 526-5000
5   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
6   JASON R. BARTLETT (CA SBN 214530)            MARK D. SELWYN (CA SBN 244180)
    jasonbartlett@mofo.com                       mark.selwyn@wilmerhale.com
7   MORRISON & FOERSTER LLP                      WILMER CUTLER PICKERING
    425 Market Street                            HALE AND DORR LLP
8   San Francisco, California  94105-2482        950 Page Mill Road
    Telephone:  (415) 268-7000                   Palo Alto, California 94304
9   Facsimile:  (415) 268-7522                   Telephone: (650) 858-6000
                                                 Facsimile: (650) 858-6100
10

11  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.
12

13

14                     UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                          SAN JOSE DIVISION

17   APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK (PSG)

18                  Plaintiff,                    **APPLE'S PROPOSED DISPUTED
                                                  JURY INSTRUCTIONS**
19          v.

20   SAMSUNG ELECTRONICS CO., LTD., a
     Korean corporation; SAMSUNG                  Judge:    Hon. Lucy H. Koh
21   ELECTRONICS AMERICA, INC., a New York        Place:    Courtroom 8, 4th Floor
     corporation; and SAMSUNG                     Trial:    July 30, 2012 at 9 A.M.
22   TELECOMMUNICATIONS AMERICA, LLC, a
     Delaware limited liability company,
23
                    Defendants.
24

25

26

27

28

1  **APPLE'S PROPOSED DISPUTED JURY INSTRUCTIONS**

2       Samsung has suggested that, although not required by any Court order, the Court might

3  benefit from having a full set of Samsung's proposals for the disputed jury instructions standing

4  alone.  Apple does not object to that proposal.  Apple thinks the Court might also benefit from

5  having a full set of Apple's disputed jury instructions standing alone.  To that end, Apple

6  respectfully submits below a complete set of Apple's proposals for the parties' jury instructions

7  that remain in dispute.

8

9  Dated:  July 16, 2012            MORRISON & FOERSTER LLP

10

11              By:   */s/ Michael A. Jacobs*

12                  Michael A. Jacobs

13                  Attorneys for Plaintiff APPLE INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

**PRELIMINARY INSTRUCTIONS** ............................................................................ 1

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 1 JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSLATION/INTERPRETATION ....................................... 2

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 2 USE OF INTERPRETERS IN COURT ....................................................................................................................... 3

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 3 BENCH CONFERENCES AND RECESSES ....................................................................................................... 4

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 4 RULING ON OBJECTIONS .......................................................................................................... 5

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 5 WHAT PATENTS AND TRADE DRESS ARE AND HOW THEY ARE OBTAINED ..................................... 6

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6 SUMMARY OF PATENT CONTENTIONS ...................................................................................................... 8

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7 SUMMARY OF TRADE DRESS CONTENTIONS ....................................................................................... 11

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 8 SUMMARY OF ANTITRUST AND CONTRACT CONTENTIONS ..................................................... 12

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 9 OUTLINE OF TRIAL ............... 13

PROPOSED PRELIMINARY JURY INSTRUCTION NO. 10 INTERPRETATION OF CLAIMS .................................................................................................................. 15

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE** ........................................................... 17

**GENERAL CIVIL INSTRUCTIONS** ................................................................................. 18

PROPOSED FINAL JURY INSTRUCTION NO. 12 BURDENS OF PROOF-- GENERALLY ........................................................................................................... 19

PROPOSED FINAL JURY INSTRUCTION NO. 14 CHARTS AND SUMMARIES .............. 20

PROPOSED FINAL JURY INSTRUCTION NO. 15 RETURN OF VERDICT ........................ 21

PROPOSED FINAL JURY INSTRUCTION NO. 16 SUMMARY OF CONTENTIONS ......... 22

**TABLE OF CONTENTS**
(continued)

Page

**UTILITY PATENT JURY INSTRUCTIONS** ........................................................................ 24

PROPOSED FINAL JURY INSTRUCTION NO. 17 UTILITY PATENTS—
        INTERPRETATION OF CLAIMS ................................................................. 25

PROPOSED FINAL JURY INSTRUCTION NO. 18 UTILITY PATENTS—
        INFRINGEMENT GENERALLY ................................................................. 26

PROPOSED FINAL JURY INSTRUCTION NO. 19 UTILITY PATENTS—DIRECT
        INFRINGEMENT ......................................................................................... 27

PROPOSED FINAL JURY INSTRUCTION NO. 20 UTILITY PATENTS—LITERAL
        INFRINGEMENT ......................................................................................... 28

PROPOSED FINAL JURY INSTRUCTION NO. 21 UTILITY PATENTS—
        INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ............. 29

PROPOSED FINAL JURY INSTRUCTION NO. 22 UTILITY PATENTS—
        LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS ......................... 30

PROPOSED FINAL JURY INSTRUCTION NO. 23 UTILITY PATENTS—
        INVALIDITY—BURDEN OF PROOF ......................................................... 31

PROPOSED FINAL JURY INSTRUCTION NO. 24 UTILITY PATENTS—WRITTEN
        DESCRIPTION REQUIREMENT ................................................................. 32

PROPOSED FINAL JURY INSTRUCTION NO. 25 UTILITY PATENTS—
        ANTICIPATION/STATUTORY BARS ......................................................... 33

PROPOSED FINAL JURY INSTRUCTION NO. 26 UTILITY PATENTS—
        OBVIOUSNESS ........................................................................................... 35

PROPOSED FINAL JURY INSTRUCTION NO. 27 PATENT EXHAUSTION ....................... 37

PROPOSED FINAL JURY INSTRUCTION NO. 28 EQUITABLE DEFENSES –
        WAIVER ....................................................................................................... 38

PROPOSED FINAL JURY INSTRUCTION NO. 29 EQUITABLE DEFENSES –
        EQUITABLE ESTOPPEL .............................................................................. 39

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

3   PROPOSED FINAL JURY INSTRUCTION NO. 30 UTILITY PATENT DAMAGES—
4           GENERALLY .................................................................................................... 40

PROPOSED FINAL JURY INSTRUCTION NO. 31 UTILITY PATENT DAMAGES —
5           LOST PROFITS — GENERALLY ..................................................................... 41

6   PROPOSED FINAL JURY INSTRUCTION NO. 32 UTILITY PATENT DAMAGES —
7           LOST PROFITS — FACTORS TO CONSIDER ........................................... 42

PROPOSED FINAL JURY INSTRUCTION NO. 33 UTILITY PATENT DAMAGES—
8           LOST PROFITS— NON-INFRINGING SUBSTITUTES ............................. 43

9   PROPOSED FINAL JURY INSTRUCTION NO. 34 UTILITY PATENT DAMAGES—
10          LOST PROFITS—AMOUNT OF PROFIT ..................................................... 44

PROPOSED FINAL JURY INSTRUCTION NO. 35 UTILITY PATENT DAMAGES—
11          LOST PROFITS—MARKET SHARE .............................................................. 45

12  PROPOSED FINAL JURY INSTRUCTION NO. 36 UTILITY PATENT DAMAGES—
13          REASONABLE ROYALTY—DEFINITION .................................................. 46

PROPOSED FINAL JURY INSTRUCTION NO. 37 UTILITY PATENT DAMAGES—
14          REASONABLE ROYALTY—  RELEVANT FACTORS ............................... 48

15  PROPOSED FINAL JURY INSTRUCTION NO. 38 UTILITY PATENT DAMAGES—
16          DAMAGES FOR METHOD CLAIMS MUST BE CORRELATED TO USE ............. 50

PROPOSED FINAL JURY INSTRUCTION NO. 39 UTILITY PATENT DAMAGES—
17          DATE OF COMMENCEMENT—PRODUCTS ............................................... 51

18  PROPOSED FINAL JURY INSTRUCTION NO. 41 UTILITY PATENT DAMAGES—
19          NO DOUBLE COUNTING ............................................................................... 53

20  **DESIGN PATENT JURY INSTRUCTIONS** ......................................................... 54

21  PROPOSED FINAL JURY INSTRUCTION NO. 42 DESIGN PATENTS—
22          INTERPRETATION OF PATENT CLAIMS .................................................. 55

23

24  PROPOSED FINAL JURY INSTRUCTION NO. 43 DESIGN PATENT
25          INFRINGEMENT—GENERALLY ................................................................ 56

PROPOSED FINAL JURY INSTRUCTION NO. 44 DESIGN PATENTS—DIRECT
26          INFRINGEMENT ............................................................................................. 57

27

28

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED FINAL JURY INSTRUCTION NO. 45 DESIGN PATENTS—
INVALIDITY BURDEN OF PROOF ............................................................... 59

PROPOSED FINAL JURY INSTRUCTION NO. 46 DESIGN PATENTS—
ANTICIPATION/STATUTORY BARS ........................................................ 60

PROPOSED FINAL JURY INSTRUCTION NO. 47 DESIGN PATENTS—
OBVIOUSNESS .......................................................................................... 62

PROPOSED FINAL JURY INSTRUCTION NO. 48 DESIGN PATENTS—
INVALIDITY—LACK OF ORNAMENTALITY ........................................... 64

PROPOSED FINAL JURY INSTRUCTION NO. 52 DESIGN PATENT DAMAGES—
GENERALLY ............................................................................................. 65

PROPOSED FINAL JURY INSTRUCTION NO. 53 DESIGN PATENT DAMAGES -
LOST PROFITS .......................................................................................... 66

PROPOSED FINAL JURY INSTRUCTION NO. 54 DESIGN PATENT
INFRINGEMENT DAMAGES – DEFENDANT'S PROFITS ......................... 67

PROPOSED FINAL JURY INSTRUCTION NO. 55 DESIGN PATENT DAMAGES—
REASONABLE ROYALTY— ENTITLEMENT—DEFINITION—RELEVANT
FACTORS ................................................................................................... 68

PROPOSED FINAL JURY INSTRUCTION NO. 56 DESIGN PATENT DAMAGES—
DATE OF COMMENCEMENT—PRODUCTS ............................................. 69

PROPOSED FINAL JURY INSTRUCTION NO. 57 DESIGN PATENT DAMAGES—
NO DOUBLE COUNTING .......................................................................... 71

**INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS** ...................... 72

PROPOSED JURY INSTRUCTION NO. 58 UTILITY AND DESIGN PATENTS—
INDUCING PATENT INFRINGEMENT ...................................................... 73

.PROPOSED FINAL JURY INSTRUCTION NO. 59 DESIGN AND UTILITY
PATENTS—WILLFUL PATENT INFRINGEMENT ..................................... 75

**TABLE OF CONTENTS**
(continued)

Page

**TRADE DRESS JURY INSTRUCTIONS**................................................. 77

PROPOSED FINAL JURY INSTRUCTION NO. 60 TRADE DRESS DILUTION AND INFRINGEMENT—PROTECTABILITY ................................. 78

PROPOSED FINAL JURY INSTRUCTION NO. 61 TRADE DRESS PROTECTABILITY—DISTINCTIVENESS ................................. 79

PROPOSED FINAL JURY INSTRUCTION NO. 62 TRADE DRESS PROTECTABILITY—NON-FUNCTIONALITY........................... 80

PROPOSED FINAL JURY INSTRUCTION NO. 63 TRADE DRESS DILUTION— ELEMENTS AND BURDEN OF PROOF................................ 82

PROPOSED FINAL JURY INSTRUCTION NO. 64 TRADE DRESS DILUTION ELEMENT #2—FAME ............................................ 83

PROPOSED FINAL JURY INSTRUCTION NO. 65 TRADE DRESS DILUTION ELEMENT #3—USE OF ACCUSED TRADE DRESS IN COMMERCE AFTER APPLE TRADE DRESS BECAME FAMOUS ........................... 84

PROPOSED FINAL JURY INSTRUCTION NO. 66 TRADE DRESS DILUTION ELEMENT #4—DILUTION ........................................ 85

PROPOSED FINAL JURY INSTRUCTION NO. 67 TRADE DRESS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF (15 U.S.C. § 1125(A)(1)) ...................................................... 86

PROPOSED FINAL JURY INSTRUCTION NO. 69 TRADE DRESS INFRINGEMENT—LIKELIHOOD OF CONFUSION—SLEEKCRAFT TEST (15 U.S.C. §§ 1114(1), 1125(A)) ..................................... 87

PROPOSED FINAL JURY INSTRUCTION NO. 74 TRADE DRESS DAMAGES IN GENERAL ....................................................... 89

PROPOSED FINAL JURY INSTRUCTION NO. 75 TRADE DRESS DAMAGES— PLAINTIFF'S ACTUAL DAMAGES (15 U.S.C. § 1117(A)) .............. 90

PROPOSED FINAL JURY INSTRUCTION NO. 76 TRADE DRESS DAMAGES— DEFENDANT'S PROFITS (15 U.S.C. § 1117(A)) ...................... 91

PROPOSED FINAL JURY INSTRUCTION NO. 77 TRADE DRESS DAMAGES – REASONABLE ROYALTY ......................................... 93

1

2

## TABLE OF CONTENTS
### (continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 78 TRADE DRESS DILUTION
DAMAGES— WILLFULNESS REQUIRED FOR DILUTION DAMAGES ............... 94

PROPOSED FINAL JURY INSTRUCTION NO. 80 TRADE DRESS DAMAGES—NO
DOUBLE-COUNTING ................................................................................. 95

**BREACH OF CONTRACT JURY INSTRUCTIONS** ........................................... 96

PROPOSED FINAL JURY INSTRUCTION NO. 82 BREACH OF CONTRACT –
OBLIGATION TO LICENSE PATENTS ON  FRAND TERMS ................................... 97

PROPOSED FINAL JURY INSTRUCTION NO. 83 BREACH OF CONTRACT –
OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL PROPERTY
RIGHTS ("IPR") ................................................................................. 98

**ANTITRUST JURY INSTRUCTIONS** ................................................. 99

PROPOSED FINAL JURY INSTRUCTION NO. 84 MONOPOLIZATION ─
ELEMENTS ................................................................................. 100

PROPOSED FINAL JURY INSTRUCTION NO. 85 MONOPOLIZATION ─
RELEVANT MARKET ................................................................. 101

PROPOSED FINAL JURY INSTRUCTION NO. 86 MONOPOLIZATION —
EVIDENCE OF MONOPOLY POWER ............................................. 102

PROPOSED FINAL JURY INSTRUCTION NO. 87 MONOPOLIZATION —
WILLFUL ACQUISITION OF MONOPOLY POWER THROUGH
ANTICOMPETITIVE ACTS ......................................................... 103

PROPOSED FINAL JURY INSTRUCTION NO. 88 MONOPOLIZATION —
ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING ................................ 104

PROPOSED FINAL JURY INSTRUCTION NO. 89 MONOPOLIZATION —
SAMSUNG'S INTENT ............................................................... 105

PROPOSED FINAL JURY INSTRUCTION NO. 90 MONOPOLIZATION —
INTERSTATE CONDUCT .......................................................... 106

PROPOSED FINAL JURY INSTRUCTION NO. 91 MONOPOLIZATION — INJURY
AND DAMAGES .................................................................... 107

## **PRELIMINARY INSTRUCTIONS**

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 1**
**JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSLATION/INTERPRETATION**

**Apple's Proposed Instruction**

**[THIS INSTRUCTION SHOULD BE GIVEN WHEN THE FIRST FOREIGN SPEAKER TESTIFIES.]**

Languages other than English may be used during this trial.  One such language will be Korean.

The evidence to be considered by you is only that provided through the official court translators.  Although some of you may know Korean, it is important that all jurors consider the same evidence.  Therefore, you must accept the English translation.  You must disregard any different meaning.

**Source**

Ninth Circuit Model Civil Jury Instr. - 1.16 (2007 Ed.).

1

2

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 2**
**USE OF INTERPRETERS IN COURT**

3

**Apple's Proposed Instruction**

4

**[THIS INSTRUCTION SHOULD BE GIVEN WHEN THE FIRST FOREIGN SPEAKER TESTIFIES.]**

5

6

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

7

**Source**

8

Ninth Circuit Model Civil Jury Instr. - 1.17 (2007 Ed.).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 3**
**BENCH CONFERENCES AND RECESSES**

**Apple's Proposed Instruction**

**[THIS INSTRUCTION SHOULD BE GIVEN WHEN THE FIRST CONFERENCE OCCURS.]**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Source**

Ninth Circuit Model Civil Jury Instr. - 1.18 (2007 Ed.).

1

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 4
RULING ON OBJECTIONS**

2

**Apple's Proposed Instruction**

3

**[THIS INSTRUCTION SHOULD BE GIVEN WHEN THE FIRST OBJECTION IS
MADE.]**

4

5    There are rules of evidence that control what can be received into evidence.  When a lawyer asks
6    a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not
     permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the
7    question may be answered or the exhibit received.  If I sustain the objection, the question cannot
     be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question,
8    you must ignore the question and must not guess what the answer might have been.

9    Sometimes I may order that evidence be stricken from the record and that you disregard or ignore
     the evidence.  That means that when you are deciding the case, you must not consider the
10   evidence that I told you to disregard.

11   **Source**

12   Ninth Circuit Model Civil Jury Instructions – 1.10 (2007 Ed).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 5
### WHAT PATENTS AND TRADE DRESS ARE AND HOW THEY ARE OBTAINED

**Apple's Proposed Instruction**

This case involves disputes relating to United States utility and design patents, and to trade dress. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me explain what patents and trade dress rights are, and how they are obtained.

## I.      Utility and Design Patents

There are two types of patents in this case: utility patents and design patents. A "utility patent" protects inventions. A utility patent may cover a process, machine, article of manufacture, or composition of matter. A "design patent" protects the way an article of manufacture looks. It covers the shape, configuration, and/or surface ornamentation of the article.

A valid patent gives its owner the right to prevent others from making, using, offering to sell, selling, or importing the invention or patented design within the United States during the patent's term. A violation of this right is called "infringement." The patent owner can enforce a patent against infringers in federal court.

The content and structure of utility and design patents are different. A utility patent has what is called a "specification." The specification describes what the invention is, how it works, how to make it, and how to use it. The specification concludes with a number of claims. The claims are numbered sentences that define the boundaries of the patent's protection and notify the public about them.

A design patent also has a "specification." For a design patent, the specification contains drawings of the design and a description of the drawings. It also has a claim, but design patents can only have one claim. The claim generally refers to the drawings and how they are described. The claim defines the patent's boundaries and notifies the public of those boundaries.

For both types of patents, a Patent Office Examiner reviews the application for the patent and determines whether the claimed design or invention is patentable. The Examiner reviews what is called "prior art" either that was in Patent Office records or that was submitted by the applicant. I will give you instructions later on what constitutes prior art. In general, prior art includes things that existed before the claimed invention, that were publicly known, that were used in a publicly accessible way, or that were patented or described in a publication. The Examiner considers whether each claim defines a design or an invention that is new and not obvious in view of the prior art. A patent lists the prior art that the Examiner considered.

After the prior art search and examination of the application, the Examiner informs the applicant what the Examiner has found and whether any claim is patentable. This writing from the Examiner is called an "office action." In the case of a utility patent application, if the Examiner rejects the claims, the applicant may respond and/or change the claims or submit new claims. In the case of a design patent application, if the Examiner rejects the claimed design, the applicant may respond and/or change the drawings. In both cases, the applicant's response may include arguments about why the Examiner's initial rejection should be reconsidered.

This "patent prosecution" process takes place only between the Examiner and the applicant. The process may go back and forth for some time until the Examiner finds that the requirements for a patent are met. The papers generated during this back and forth make up the "prosecution history." This material becomes available to the public at the time that the patent issues.

1   The fact that the Patent Office grants a patent does not necessarily mean that any invention or
design claimed in the patent deserves the protection of a patent.  For example, the Patent Office
2   may not have had available to it all the information that will be presented to you.  A company
accused of infringement has the right to argue in federal court that a claimed invention or design
3   is invalid because it does not meet the requirements for a patent.

4   **II.      Trade Dress**

5   Trade dress is also at issue here.  Trade dress is the physical detail and design of a product or its
packaging, which indicates the product's source and distinguishes it from the products of others.
6   Trade dress is the product's total image and overall appearance, and may include features such as
size, shape, color, color combinations, texture, or graphics.  The shape of the old-fashioned
7   Coca-Cola bottle is an example of a trade dress.

8   The owner of a valid trade dress has the right to prevent others from "diluting" or "infringing" it.
"Dilution" refers to reducing the capacity of a famous trade dress to identify and distinguish
9   products or services.  "Infringement" refers to another company's use of a trade dress similar to
the owner's trade dress that is likely to cause confusion in the marketplace.
10
11   A company acquires the right to exclude others from infringing or diluting its trade dress by
being the first to use it in the marketplace, or by using it before the alleged infringer or diluter.
12   Rights in a trade dress are obtained only through commercial use.

13   Once the owner of a trade dress has obtained the right to enforce it, the owner may obtain a
certificate of registration issued by the United States Patent and Trademark Office (which is
14   sometimes called the "Patent Office").  If the owner takes that step, when it later brings suit for
infringement or dilution, the owner may rely solely on the certificate to prove that the trade dress
15   is protectable.  That said, an unregistered trade dress can also provide the owner with the
exclusive right to use that trade dress and to prevent others from diluting it.

16   **Source**

17   Adapted from Ninth Circuit Model Jury Instr. – 15.0, 15.2 (2007 Ed.); ABA 3.1.1; N.D. Cal.
Model Patent Jury Instr. A.1; The Intellectual Property Owners Ass'n Model Design Patent Jury
18   Instr. 1.1; adapted from instructions in *Nichia Corp. v. Seoul Semiconductor, Ltd.*, No. 3:06-CV-
0162-MMC (JCS), Dkt. No. 912, filed Nov. 8, 2007 (N.D. Cal.).

19

20

21

22

23

24

25

26

27

28

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6
SUMMARY OF PATENT CONTENTIONS**

<u>**Apple's Proposed Instruction**</u>

I will now summarize for you each of the parties' patent infringement claims.

**Apple's Utility and Design Patent Claims**

Apple accuses Samsung of infringing a number of Apple's utility and design patents.  Each Apple patent was obtained by one or more named inventors and is owned by Apple.

The three Apple utility patents at issue in this case are:

- United States Patent Number 7,469,381.  The parties and I will often refer to this patent as the "'381," with '381 being the last three numbers of its patent number.  This patent is behind Tab __ in your notebooks.

- United States Patent Number 7,844,915.  We may refer to this patent as the "'915 patent."  It is behind Tab __ in your notebooks.

- United States Patent Number 7,864,163.  We will often refer to this patent as the "'163 patent."  It is at Tab __ in your notebooks.

The Samsung products that Apple accuses of infringing its utility patents are listed behind Tab __ in the Juror Notebooks.

Apple also claims that Samsung has infringed four iPhone and iPad-related design patents.  The design patents are:

- United States Patent No. D604,305.  This is the "D'305 patent," with D indicating that it is a design patent and '305 being the last three numbers of its patent number.  This patent is behind Tab __ in your notebooks.

- United States Patents No. D504,889.  This is the "D'889 patent."  It is behind Tab __ in your notebooks.

- United States Patent No. D593,087, or the "D'087 patent."  This is at Tab __.

- United States Patent No. D618,677.  This is the "D'677 patent" and it is behind Tab __.

The Samsung products that Apple accuses of infringing its design patents are listed behind Tab __ in the Juror Notebooks.

Apple seeks money damages from Samsung for allegedly infringing certain claims of these utility and design patents by making, importing, using, selling, and/or offering for sale the smartphone and tablet products identified in your notebooks.  Apple also argues that Samsung's Korean parent SEC actively induced the U.S. Samsung entities (STA and SEA) to infringe.  Apple contends that Samsung's infringement has been willful.

Samsung denies that it has infringed Apple's design and utility patents and argues that the claims asserted by Apple are invalid.  Invalidity is a defense to infringement.

**Samsung's Utility Patent Claims**

Samsung accuses Apple of infringing a number of Samsung's utility patents. Each of Samsung's utility patents was obtained by one or more named inventors and transferred to Samsung.

The six Samsung utility patents at issue in this case are:

- United States Patent Number 6,928,604, or the "'604 patent." This patent is behind Tab __ in your notebooks.

- United States Patent Number 7,447,516, or the "'516 patent." This is behind Tab __.

- United States Patent Number 7,456,893, or the "'893 patent." This is behind Tab __.

- United States Patent Number 7,577,460, or the "'460 patent." This is behind Tab __.

- United States Patent Number 7,675,941, or the "'941 patent." This is behind Tab __.

- United States Patent Number 7,698,711, or the "'711 patent." This is behind Tab __.

The Apple iPhone, iPad, and iPod Touch products that Samsung contends infringe various claims of these patents are listed behind Tab __ in your Juror Notebooks.

Samsung seeks money damages from Apple for allegedly infringing these utility patents by making, using, selling, offering for sale, and/or importing the products identified in your notebooks. Samsung also alleges that Apple's infringement has been willful.

Apple denies that it has infringed Samsung's utility patents and argues that the claims asserted by Samsung are invalid and, for the '516, '941, and '604 patents, also unenforceable. Invalidity and unenforceability are defenses to infringement.

*       *       *

For each party's patent infringement claims against the other, the first issue you will be asked to decide is whether the alleged infringer has infringed the claims of the patent holder's patents. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case, including any differences between utility patent infringement and design patent infringement.

The second issue you will need to decide to resolve each party's patent infringement claims is whether the patent holder's patents are invalid. A patent claim may be invalid for a number of reasons, including because it claims subject matter that is not new or that would have been obvious at the time it was initially invented or designed.

If you decide that any claim of either patent holder's patents has been infringed and is not invalid, you will then need to decide the money damages that must be awarded to the patent holder. For each party's patent infringement allegations, you will also need to make a finding as to whether any infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

I will give you more detailed instructions on all of these issues at the end of the case.

1

**Source**

2

Adapted from N.D. Cal. Model Patent Jury Instr. A.3; The Intellectual Property Owners Ass'n
Model Design Patent Jury Instr. 4.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7
SUMMARY OF TRADE DRESS CONTENTIONS**

**Apple's Proposed Instruction**

I will now give you an introduction to Apple's trade dress claims.

Apple accuses Samsung of diluting Apple's Registered Trade Dress No. 3,470,983.  A copy of the registration certificate for this trade dress is behind Tab __ in the Juror Notebooks that you have each received.  As you can see, this Apple trade dress relates to the iPhone.  The Samsung products that Apple accuses of diluting this registered trade dress are listed behind Tab __ in your Juror Notebooks.

Apple also accuses Samsung of diluting two unregistered trade dresses relating to the iPhone.  These Apple trade dresses are described for you behind Tab __ in your Juror Notebooks.  The Samsung products that Apple accuses of diluting these iPhone-related trade dresses are then listed behind Tab __ in your notebooks.

Apple additionally claims that Samsung has diluted and infringed its unregistered trade dress relating to the iPad.  This trade dress is described for you behind Tab __ in the notebooks.  The Samsung products that Apple accuses of diluting and infringing its iPad-related trade dress are listed behind Tab __.

For each of Apple's trade dress dilution and infringement claims, the first issue you will have to decide is whether the Apple trade dress is protectable.  An asserted trade dress is only protectable if the trade dress as a whole is both sufficiently distinctive and non-functional.

For Apple's dilution claims, the next issues you will decide are whether Apple's trade dress was famous before Samsung started selling its accused products, and whether Samsung's products are likely to cause dilution of the asserted Apple trade dresses.  Dilution occurs when the similarity between Samsung's products and Apple's trade dress impairs the distinctiveness of the asserted Apple trade dress.

Apple's trade dress infringement claim will require you to resolve different issues.  You will need to determine whether Apple's trade dress had acquired distinctiveness before Samsung started selling its infringing products, and whether Samsung's products are sufficiently similar to Apple's trade dress such that they are likely to cause confusion as to their source.

If you decide that any protectable Apple trade dress has been infringed or willfully diluted by Samsung, you will then need to decide the money damages to be awarded to Apple.

Samsung denies that it has infringed or diluted any Apple trade dress and argues that each asserted trade dress is not protectable.  If a trade dress is not protectable, that is a defense to infringement and dilution.

I will give you more detailed instructions on all of these issues at the conclusion of the case.

1

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 8
## SUMMARY OF ANTITRUST AND CONTRACT CONTENTIONS

2

3

**Apple's Proposed Instruction**

4

Apple has also brought counterclaims against Samsung with respect to seven patents that Samsung declared to an international standard-setting organization called ETSI to be essential to the use of certain industry standards for wireless technologies, and then asserted against Apple.

5

6

These "declared essential" patents include Samsung's '516, '941, and '604 patents which I have already described to you.  They also include the following Samsung patents:

7

- U.S. Patent Number 7,050,410, or the "'410" patent, which is at Tab __.

8

- U.S. Patent Number 7,200,792, or the "'792" patent, which is at Tab __.

9

- U.S. Patent Number 7,362,867, or the "'867" patent, which is at Tab __.

10

- U.S. Patent Number 7,386,001, or the "'001" patent, which is at Tab __.

11

Apple contends that, by asserting these patents against Apple, Samsung both violated the antitrust laws and breached its contractual obligations to timely disclose and then license these patents on fair and reasonable terms.  Apple also contends that Samsung's '516, '941, and '604 patents are unenforceable as a result of this conduct.

12

13

Samsung denies that it has violated the antitrust laws or breached any contractual obligations.

14

For Apple's allegations regarding these patents, your job will be to decide whether Samsung violated the antitrust laws and whether Samsung breached its contractual obligations.  If you decide that Samsung did so, you will then need to decide what money damages to award to Apple.  You will also be asked to decide whether Samsung's conduct bars Samsung from enforcing these patents against Apple.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 9
## OUTLINE OF TRIAL

2

3

**Apple's Proposed Instruction**

4

The trial will very shortly begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

5

6

The presentation of evidence will then start.  Witnesses will take the stand and the documents will be offered and admitted into evidence.

7

**Apple's Direct Case**

8

Apple will first present its evidence on its contentions that Samsung has infringed Apple's utility and design patents, that Samsung has diluted and infringed Apple's iPhone and iPad related trade dresses, and that Samsung's infringement and dilution have been willful.  Apple also will present its evidence that its unregistered trade dresses are protectable.  Apple will additionally put on evidence relating to its damages.

9

10

11

Witnesses will be questioned by Apple's counsel on direct examination.  After the direct examination of a witness, Samsung will have an opportunity to cross-examine the witness.

12

13

**Samsung's Response and Direct Case**

14

After Apple has presented its witnesses, Samsung will call its witnesses, who will also be examined and cross-examined.  With respect to Apple's patents and trade dresses, Samsung will put on evidence responding to Apple's infringement, dilution, and willfulness contentions.  Samsung also will present its evidence that the claims of Apple's asserted patents are invalid, and that the Apple trade dresses are unprotectable.  Samsung will also respond to Apple's assertions with regard to damages.

15

16

17

Samsung will further present its evidence on its contentions that Apple has infringed Samsung's patents, that Apple's infringement has been willful, and that Samsung should be awarded a reasonable royalty as damages.

18

19

**Apple's Rebuttal and Response**

20

Next, Apple will return and put on evidence responding to Samsung's contentions that the Apple patents are invalid and that the Apple trade dresses are unprotectable.

21

22

With respect to Samsung's patent claims, Apple will put on evidence responding to Samsung's infringement, willfulness, and damages assertions.  Apple will also present its evidence that the claims of Samsung's patents are invalid and unenforceable.  For Samsung's "declared essential" patents, Apple will present its evidence that Samsung violated the antitrust laws and breached its contractual obligations.

23

24

**Samsung's Rebuttal**

25

Finally, Samsung will return and will put on evidence responding to Apple's contentions that Samsung's patent claims are invalid, that Samsung violated the antitrust laws, and that Samsung breached its contractual obligations.

26

27

\*   \*   \*

28

1   Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence
2   comes in and wait for all the evidence before you make any decisions.  In other words, you
    should keep an open mind throughout the entire trial.

3   After the evidence has been presented, the attorneys will make closing arguments and I will give
    you final instructions on the law that applies to the case.

4   **Source**

5   Adapted from N.D. Cal. Model Patent Jury Instr. A.5.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 10**
**INTERPRETATION OF CLAIMS**

**Apple's Proposed Instruction**

Before you decide whether either Samsung or Apple has infringed the claims of the other party's patents or whether those claims are invalid, you will need to understand the patent claims.

The utility patent claims are numbered textual sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as the judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the claims of the patents asserted here. You have been given a document at Tab ___ of your notebooks reflecting those meanings. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

Design patents have a different structure. For each of the asserted Apple design patents, the scope of the claim is defined by the drawings collectively. The scope of the claimed design encompasses its visual appearance as a whole and in particular the overall visual impression it creates. You should consider all of the features of the design patent as a whole and not merely isolated portions of the claimed design.

At the end of the trial, when I instruct you in more detail, I will provide further instruction regarding the proper interpretation of the asserted Apple design patents.[1]  At this point, I am going to instruct you on how to interpret certain aspects of the asserted Apple design patents:

D'305 and D'087 patents.  For these design patents, the broken lines in the patent figures form no part of the claimed design.

[Show D'305 patent, Fig. 1 and D'087 patent, Fig. 1 to jury.]

D'677 patent.  The oblique lines appearing in the D'677 patent indicate a transparent, translucent, or highly polished or reflective surface.  (The "oblique" lines are the diagonal lines shown in the figures of the patent.)  In addition, the broken lines in the patent figures form no part of the claimed design for the D'677 patent.

[Show D'677 patent, Fig. 1 to jury.]

D'889 patent.  The front surface of the device marked with oblique lines is a transparent surface. The dotted-line rectangle in the front surface marks an area visible beneath the transparent surface and is claimed subject matter.  The human figure shown in broken lines in Figure 9 forms no part of the claimed design.

[Show D'889 patent, Fig. 1 to jury.]

---

[1] Apple reserves the right to modify this instruction once the Court issues an order regarding claim construction of the design patents.

1

**Source**

2

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1; The Intellectual Property Owners Ass'n
Model Design Patent Jury Instr. 5.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **GENERAL CIVIL INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 12**
**BURDENS OF PROOF--GENERALLY**

2

**Apple's Proposed Instruction**

3

The law recognizes three kinds of burdens of proof:

4

5
(1) When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true;

6

7
(2) When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence; and

8

9
(3) The third kind of burden of proof is referred to as "beyond a reasonable doubt."  But this burden of proof is involved in criminal cases and is not required in this case.

10

11

**Source**

12
Adapted from Ninth Circuit Model Civil Jury Instr. - 1.3, 1.4 (2007 Ed.).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROPOSED FINAL JURY INSTRUCTION NO. 14
## CHARTS AND SUMMARIES

**Apple's Proposed Instruction**

You will remember that certain summaries and charts were admitted in evidence.  You may use those summaries and charts as evidence, even though the underlying documents and records are not here.  [However, the accuracy and authenticity of those summaries and charts have been challenged.  It is for you to decide how much weight, if any, you will give to them.  In making that decision, you should consider all of the testimony you heard about the way in which they were prepared.]

**Source**

Eighth Circuit Model Criminal Jury Instructions - 4.12 (2008 Ed.).

**Authorities**

Fed. R. Evid. 1006, 1008(c); 5 Weinstein's Evidence ¶¶ 1006, 1008 (1978); *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011) (for charts to be admitted under Rule 1006, material underlying charts do not need to be admitted into evidence as long as they are admissible and made available to opposing party for inspection); *United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988) (underlying material must be admissible but need not be admitted); *Keith v. Volpe*, 858 F.2d 467, 479-81 (9th Cir. 1988) (affirming court's decision to admit summary report under Rule 1006 over challenges that the summary was neither necessary nor trustworthy); *Ford Motor Co. v. Auto Supply Co., Inc.*, 661 F.2d 1171, 1175-76 (8th Cir. 1981) (permitting summaries to be admitted as evidence without admission of the underlying documents as long as the opposing party has had an opportunity to examine and copy the documents at a reasonable time and place and if those underlying documents would be admissible); *United States v. Robinson*, 774 F.2d 261,275- 276 (8th Cir. 1985) (summaries will not be admitted until the court has made a preliminary ruling as to their accuracy); *United States v. King*, 616 F.2d 1034, 1041 (8th Cir. 1980) (admission is within the sound discretion of the trial judge.); *United States v. Possick*, 849 F.2d 332, 339 (8th Cir. 1988) ("voluminous" requirement of Rule 1006 does not require that it literally be impossible to examine all the underlying records, but only that in-court examination would be an inconvenience); *id.* (charts and diagrams admitted under Rule 1006 may be sent to the jury at the district court's discretion); *id.* at 340 (when this type of exhibit is sent to the jury, a limiting instruction is appropriate, but failure to give an instruction on the use of charts is not reversible error); *United States v. Orlowski*, 808 F.2d 1283, 1289 (8th Cir. 1986) (charts and diagrams admitted under Rule 1006 may be sent to the jury at the district court's discretion).

## PROPOSED FINAL JURY INSTRUCTION NO. 15
## RETURN OF VERDICT

**Apple's Proposed Instruction**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**Source**

Ninth Circuit Model Civil Jury Instr. - 3.3 (2007 Ed.).

**PROPOSED FINAL JURY INSTRUCTION NO. 16**
**SUMMARY OF CONTENTIONS**

**Apple's Proposed Instruction**

I will now again summarize for you each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

As I previously explained, Apple accuses Samsung of directly infringing a number of its utility and design patents, and claims that the Samsung Korean parent actively induced its Samsung affiliates in the United States to infringe the patents. Apple contends also that Samsung's infringement has been willful. Samsung denies that it has infringed the asserted claims of Apple's patents and argues that, in addition, those claims are invalid.

Your job will be to decide whether Samsung has infringed the asserted claims and claimed designs of the Apple patents and whether each claim or claimed design is invalid. If you decide that any Apple patent claim or claimed design has been infringed and is not invalid, you will then need to decide any money damages to award Apple for the infringement. You will also need to make a finding as to whether any Samsung infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

Apple also accuses Samsung of diluting and infringing a number of Apple's iPhone and iPad-related trade dresses. Apple alleges that Samsung's sale of certain smart phone products and tablets dilute its iPhone and iPad-related trade dresses by impairing their distinctiveness, and that Samsung's sale of certain tablet computer products infringed its iPad-related trade dress because they are likely to cause confusion as to the source of the Samsung products. Apple seeks money damages from Samsung for this alleged dilution and infringement of its trade dresses. Samsung denies that it has diluted or infringed Apple's trade dress rights and argues that, in addition, the trade dresses asserted by Apple are not protectable.

Your job is to decide whether each asserted trade dress has been diluted or infringed (or both) by Samsung, and whether each trade dress is protectable. If you decide that any of Apple's trade dresses are protectable, and that they have been willfully diluted or infringed, you will need to decide any money damages to be awarded to Apple for the dilution and/or infringement.

Samsung also accuses Apple of infringing a number of its utility patents, and argues that Apple's infringement has been willful. Apple denies that it has infringed the asserted claims of Samsung's patents and argues that, in addition, those claims are invalid and, for the '516, '941, and '604 patents, also unenforceable. Apple also contends that, by asserting its "declared essential" patents against Apple, Samsung has violated the antitrust laws and breached its contractual obligations to timely disclose and then license these patents on fair and reasonable terms.

Your job will be to decide whether Apple has infringed the asserted claims of the Samsung patents and whether each claim is invalid. If you decide that any Samsung patent claim has been infringed and is not invalid, you will then need to decide any money damages to award Samsung for the infringement. You will also need to make a finding as to whether any Apple infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

To resolve Apple's claims regarding Samsung's "declared essential" patents, you will need to make a finding as to whether Samsung violated the antitrust laws and whether Samsung breached its contractual obligations. If you decide that Samsung violated the antitrust laws or breached its contractual obligations, you will then need to decide what money damages to award to Apple.

1

2

**Source**

3     Adapted from N.D. Cal. Model Patent Jury Instr. B.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 6.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>UTILITY PATENT JURY INSTRUCTIONS</u>

1

**PROPOSED FINAL JURY INSTRUCTION NO. 17**
**UTILITY PATENTS—INTERPRETATION OF CLAIMS**

2

3

**Apple's Proposed Instruction**

I will now instruct you how to decide whether each party has proven that the other has infringed
any claims of the party's utility patents.  As I mentioned, utility patent claims are numbered
sentences at the end of the patent that describe the boundaries of the patent's protection.  Before
you decide whether any claim has been infringed or is invalid, you must understand the claim.

4

5

6

I have already determined the meaning of any claim language that needs interpretation.  You have
been given a document at Tab ___ of your notebooks that contains these meanings.  You must
accept these interpretations.  My interpretations should not be taken as an indication that I have a
view regarding infringement or invalidity.  Those decisions are yours to make.

7

8

9

For claim language where I have not provided you with any meaning, you should apply the claim
language's plain and ordinary meaning.

10

**Source**

11

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1.

12

**Authorities**

13

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*,
415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d
1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en
banc*); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 18**
**UTILITY PATENTS—INFRINGEMENT GENERALLY**

3

**Apple's Proposed Instruction**

4

A utility patent may be infringed directly or indirectly.  I will explain the difference shortly.  To prove infringement of any claim from a patent in suit, the patent holder must persuade you that it is more likely than not that the other side infringed that claim.

5

6

**Source**

7

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.1.

8

**Authorities**

9

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.,* 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.,* 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROPOSED FINAL JURY INSTRUCTION NO. 19
## UTILITY PATENTS—DIRECT INFRINGEMENT

**Apple's Proposed Instruction**

A product or method directly infringes a utility patent if it is covered by at least one claim of the patent. The first step in deciding whether a claim has been directly infringed is to understand the claim's meaning. You have already been instructed on the meaning of some claim language. The next step is to decide whether the alleged infringer has made, used, sold, offered for sale, or imported within the United States a product covered by the claim. You make that decision.

With one exception, you must decide whether the alleged infringer's product infringes each asserted claim individually. The exception concerns dependent claims. Dependent claims include all the requirements of an independent claim, plus additional requirements. As a result, if an independent claim is not infringed, its dependent claims are not infringed. But if an independent claim has been infringed, you must still decide whether the additional requirements of its dependent claims have been infringed.

You have heard about both sides' commercial products. In deciding whether a claim has been infringed, you may not compare the alleged infringer's products to the patent holder's products. Rather, you must compare the accused products to the claim.

Whether the alleged infringer knew its products infringed, or knew of the patent, does not matter in determining direct infringement.

There are two ways in which a claim may be directly infringed: "literally" or under the "doctrine of equivalents." I will now instruct you on both.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.2.

**Authorities**

35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.2; 35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *In re Seagate Tech., LLC*, 497 F. 3d 1360, 1368 (Fed. Cir. 2007) (*en banc*) ("patent infringement is a strict liability offense").

1

**PROPOSED FINAL JURY INSTRUCTION NO. 20
UTILITY PATENTS—LITERAL INFRINGEMENT**

2

3

**Apple's Proposed Instruction**

4

To decide whether an accused product literally infringes a claim, you must compare the product to the claim and determine whether every requirement of the claim is in that product.  If so, the product literally infringes.  If not, it does not literally infringe. You must decide this for each claim asserted against a product.

5

6

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  The asserted claims for all of the patents in this dispute are to be understood as open claims.  An open claim is infringed as long as every requirement in the claim is present in the accused product.  The fact that the accused product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

7

8

9

**Source**

10

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.3.

11

**Authorities**

12

*MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007). Note that the issue of divided infringement is the subject of two en banc cases pending at this writing: *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010) and *McKesson Techs. v. Epic Sys. Corp.*, 463 F. App'x 906 (Fed. Cir. May 26, 2011).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 21**
**UTILITY PATENTS—INFRINGEMENT UNDER THE DOCTRINE OF**
**EQUIVALENTS[2]**

**Apple's Proposed Instruction**

If you decide that any accused product does not literally infringe an asserted claim from one of the other side's asserted utility patents, you must decide whether the product infringes that claim under the "doctrine of equivalents."

An accused product infringes a claim if it has parts or software instructions that are identical or equivalent to the claim requirements. If the product lacks a part or software instructions that is identical or equivalent to even one claim requirement, the product does not infringe. You must look at each requirement of the claim and decide whether the product has a part or a set of instructions that is identical or equivalent to it.

A product part or a set of software instructions is equivalent to a claim requirement if a person of ordinary skill in the field would think that the differences between the part or instructions and the requirement were not substantial at the time of alleged infringement. One way to decide this is to look at whether, at the time, the product part or instructions performed substantially the same function, in substantially the same way, to achieve substantially the same result as the claim requirement.

You may also consider whether, at the time of alleged infringement, persons of ordinary skill in the field would have known that the part or instructions in the accused product and the claim requirement were interchangeable. Known interchangeability is not required, but it may support a finding of infringement under the doctrine of equivalents. That a product part or instructions perform the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

Changes in technique or improvements made possible by technology developed after the patent application is filed may be equivalent for purposes of the doctrine of equivalents if they meet the other requirements of the doctrine of equivalents set forth in this instruction.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.4.

**Authorities**

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

---

[2] Apple does not believe that Samsung should be permitted to rely on the doctrine of equivalents with respect to any of its infringement contentions. Apple reserves the right to modify the instruction if the Court rules in its favor on this issue.

**PROPOSED FINAL JURY INSTRUCTION NO. 22**
**UTILITY PATENTS— LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS[3]**

**Apple's Proposed Instruction**

Because Samsung made certain claim changes or statements during patent prosecution, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

- The limitation requiring "wherein the music background play object includes an application module including at least one applet" in claim 9 of the '711 patent.

- The limitations requiring a "first E-mail transmission sub-mode," a "second E-mail transmission sub-mode," "displaying an image most recently captured in a camera mode," "sequentially displaying other images stored in a memory through the use of scroll keys" in claim 1 of the '460 patent.

- The limitation requiring "irrespective of a duration" in claim 10 of the '893 patent.

Unless each of these requirements is literally present within Apple's accused products or methods, there can be no infringement of these claims.

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.7.

**Authorities**

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (*en banc*); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d 1359 (Fed. Cir. 2003) (*en banc*).

---

[3] Apple does not believe that Samsung should be permitted to rely on the doctrine of equivalents with respect to any of its infringement contentions. Apple reserves its right to withdraw or modify this instruction if the Court rules in its favor on this issue.

**PROPOSED FINAL JURY INSTRUCTION NO. 23**
**UTILITY PATENTS—INVALIDITY—BURDEN OF PROOF**

**Apple's Proposed Instruction**

I will now instruct you on how to decide whether each party has proven that claims of the other side's utility patents are invalid.  For each claim, the alleged infringer must persuade you by clear and convincing evidence that the claim is invalid.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.,* No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

— **OR** —

I will now instruct you on how to decide whether each party has proven that claims of the other side's utility patents are invalid.  For each claim, the alleged infringer must persuade you by clear and convincing evidence that the claim is invalid.

In deciding this issue, you may take into account that each alleged infringer relies on certain prior art that was not considered by the Patent Office when it issued the asserted patents.  Although the alleged infringer must persuade you of invalidity by clear and convincing evidence, prior art that was not considered by the Patent Office may carry more weight than prior art that was considered.  This may make an alleged infringer's burden of showing invalidity easier to sustain.  Conversely, relying on prior art that was considered by the Patent Office may make an alleged infringer's burden of showing invalidity by clear and convincing evidence more difficult to sustain.

**Source**

N.D. Cal. Model Patent Jury Instr. B.4.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.,* No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 24
UTILITY PATENTS—WRITTEN DESCRIPTION REQUIREMENT**

3

**Apple's Proposed Instruction**

4
5
6

A utility patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  This requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the application described the claimed invention.  A claim requirement need not be expressly disclosed in the application.  It is sufficient that a person of ordinary skill would understand that the missing requirement was necessarily implied in the application.

7

**Source**

8

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.2a.

9

**Authorities**

10
11
12
13

35 U.S.C. § 112(1) and (2); *In re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009); *Kao Corp. v. Unilever U.S., Inc.,* 441 F.3d 963, 968 (Fed. Cir. 2006); *Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc.,* 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.,* 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *In re Alton,* 76 F.3d 1168, 1172 (Fed. Cir. 1996); *Univ. of Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 926-928 (Fed. Cir. 2004).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROPOSED FINAL JURY INSTRUCTION NO. 25**
**UTILITY PATENTS—ANTICIPATION/STATUTORY BARS**

**Apple's Proposed Instruction**

A utility patent claim is invalid if it was not new or if the application for it was not filed by the required time.  The claim is invalid if all the claim requirements existed in a single prior art reference that predates the claimed invention or that was dated more than one year before the application was filed.  The description in a prior art reference does not have to be in the same words as the claim.  But all of the claim requirements must be there, either expressly or implicitly, so that one of ordinary skill in the field looking at it would be able to make and use the claimed invention.

Here are ways that either side can show that an asserted claim is invalid because it was not new or because the application for it was not timely filed:

- If the claimed invention was publicly known or publicly used in the United States before the date of conception of the claim;

- If the claimed invention was patented or described in a printed publication anywhere in the world before the date of conception of the claim, or more than one year before the effective filing date of the patent;

- If the claimed invention was made by someone else in the United States before the date of conception of the claim, if that person had not abandoned the invention or kept it secret;

   If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice.  An invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in an application filed with the Patent Office.

- If the claimed invention was described in another U.S. patent or published patent application that was based on a patent application filed before the date of conception of the claim.

- If the claimed invention was openly used in the United States more than one year before the effective filing date of the patent, and that use was not primarily an experimental use controlled by the inventor to test whether the invention worked for its intended purpose;

- If a device using the claimed invention was sold or offered for sale in the United States, and was ready for patenting, more than one year before the effective filing date of the patent.  The claimed invention was not being sold or offered for sale if the sale or offer was primarily experimental.  The claimed invention was ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the invention that were sufficiently detailed to enable a person of ordinary skill in the field to make and use it based on them.

The parties agree that the patents at issue have the following effective filing dates:

- '381 patent:  January 7, 2007.

1

2

- '915 patent:  January 7, 2007.

- '163 patent:  September 6, 2006.

3

4

In deciding whether a reference qualifies as prior art, you may have to determine the date of conception of the claimed invention, and of any alleged prior invention(s) relied on by the accused infringer.  Conception is defined as the mental part of an inventive act.  It is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

5

6

**Source**

7

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a1, B.4.3a2.

8

**Authorities**

9

35 U.S.C. § 102; *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROPOSED FINAL JURY INSTRUCTION NO. 26
## UTILITY PATENTS—OBVIOUSNESS

**Apple's Proposed Instruction**

A utility patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time of invention.  A claim is obvious if, even though all the claim requirements cannot be found in a single prior art reference (as discussed in my previous instruction), a person of ordinary skill in the relevant field would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field at the time the invention was made. In deciding this, you should consider all the evidence introduced at trial, including:

    (1)    the level of education and experience of persons working in the field;

    (2)    the types of problems encountered in the field; and

    (3)    the sophistication of the technology.

Second, you must decide the scope and content of the prior art.

Third, you must decide what differences existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence.  Factors (1)-(6) may indicate that the claimed invention would not have been obvious at the time it was made:

    (1)    commercial success of a product due to the merits of the claimed invention;

    (2)    a long felt need for the solution provided by the claimed invention;

    (3)    unsuccessful attempts by others to find the solution provided by the claimed invention;

    (4)    copying of the claimed invention by others;

    (5)    unexpected and superior results from the claimed invention; and

    (6)    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention.

Factor (7) may indicate that the claimed invention would have been obvious at the time it was made:

    (7)    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on obviousness or non-obviousness is up to you.

1   A patent claim with several elements is not obvious merely because each element was
    independently known in the prior art.  In evaluating obviousness, you may consider whether
2   there was a reason for one of ordinary skill in the field to combine prior art elements in the same
    way the claimed invention combines them.  There is no one way to draw the line between true
3   inventiveness, and the application of common sense and ordinary skill.

4   For example, market forces or other incentives may be what produced a change, rather than true
    inventiveness.  You may consider whether the change was the predictable result of using prior art
5   elements according to their known functions, or whether it resulted from true inventiveness.  You
    may also consider whether there was a suggestion in the prior art to make the combination of
6   elements claimed in the patent, and whether the claim applies a known technique that had been
    used with a similar device.  You may also consider whether the claimed invention would have
7   been obvious to try, meaning that the claimed innovation was one of a small number of possible
    approaches to the problem with a reasonable expectation of success.
8
    However, you must always be careful not to determine obviousness using the benefit of
9   hindsight.  Many true inventions might seem obvious after the fact.  You should put yourself in
    the position of a person of ordinary skill in the field at the time the claimed invention was made
10  and should not consider what is known today or what is learned from the teaching of the patent.

11  **Source**

12  Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3b; Federal Circuit Bar Association Model
    Patent Jury Instr. 4.3c.
13
    **Authorities**
14
15  35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398, 407 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures,*
    *Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v.*
16  *Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d
    995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir.
17  1985).  *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir.
    2002); *Wang Labs, Inc.. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo*
18  *Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007)*; Brown & Williamson Tobacco*
    *Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v.*
19  *Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*,
    950 F.2d 714, 718-19 (Fed. Cir. 1991).
20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 27**
**PATENT EXHAUSTION**

2

3

**Apple's Proposed Instruction**

4

I will now instruct you on how to decide Apple's defense of patent exhaustion. Apple contends that Samsung is barred from enforcing the '516, '914, and '604 patents against Apple's products – including the accused Apple iPhones and iPads – that incorporate baseband chipsets that Intel sold to Apple because Intel was authorized by Samsung to sell those baseband chipsets.

5

6

To prevail on the defense of patent exhaustion, Apple must prove the following:

7

**First**, that Intel was authorized to sell the baseband chipsets under the terms of the license agreement between Samsung and Intel;

8

9

**Second**, that the sales were made in the United States. The location of the sale depends on many factors, and you may find that the sale occurred in several places. A sale occurs wherever the "essential activities" of the sale take place. The essential activities include, for example, negotiating the contract and performing obligations under the contract; and

10

11

**Third**, that the baseband chipsets substantially embody the '516, '914, and/or '604 patents. The baseband chipsets embody the relevant patent if they: (i) include all the inventive aspects of the patented device; and (ii) have no reasonable non-infringing use.

12

13

If you find that Intel acted within the scope of authorization received from Samsung in selling its baseband chipsets to Apple in the United States, and the baseband chipsets substantially embody the '516, '914, and/or '604 patents, then you must find that Samsung is barred from enforcing those patents against Apple's products that incorporate the Intel baseband chipsets.

14

15

**Authorities**

16

*Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008); *Transcore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009); *U.S. v. Univis Lens*, 316 U.S. 241 (1942); *Adams v. Burke*, 84 U.S. 453 (1873); *Bloomer v. Millinger*, 68 U.S. 340, 350-51 (1863); *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed. Cir. 2008); *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (2005); *Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 522, 539 (E.D. Tex. 1994) ("*Cyrix 1994*"); *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993); *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 U.S. Dist. LEXIS 60209 (N.D.N.Y. Aug. 1, 2008).

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 28
## EQUITABLE DEFENSES – WAIVER[4]

2

3

**Apple's Proposed Instruction**

4

A patent is not enforceable when the patent holder's course of conduct indicates to others in the industry that it does not intend to enforce its patents. Apple asserts that Samsung's failure to timely disclose the existence of its "declared-essential" patents – including the '604, '941, and '516 patents – to ETSI constitutes a waiver of its right to enforce those patents, and renders those patents unenforceable.

5

6

7

You must consider whether Apple has proven by clear and convincing evidence that Samsung's conduct was inconsistent with an intent to enforce its rights and induced a reasonable belief that such right had been relinquished.  To find that Samsung has waived its right to enforce the '604, '941, or '516 patent, Apple must prove that Samsung had a duty to timely disclose the existence of those patents or related patent applications and failed to do so.

8

9

**Source**

10

Adapted from instructions in *Qualcomm Inc. v. Broadcom Corp.*, No. 05-cv-01958 (S.D. Cal.), as quoted in *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008).

11

12

**Authorities**

13

*Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008); *Wang Labs, Inc. v. Mitsubishi Elec. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) (citing *Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) ("In patent law, an implied license merely signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention.").

14

15

16

17

18

19

20

21

22

23

24

25

26

---

[4] Apple requests that the Court seek an advisory verdict from the jury on the question of waiver.  *See*, *e.g.*, *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1009 (Fed. Cir. 2008) (addressing advisory jury verdict on waiver in patent infringement case involving the patent owner's conduct before a standards-setting organization).

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 29**
**EQUITABLE DEFENSES – EQUITABLE ESTOPPEL[5]**

**Apple's Proposed Instruction**

The owner of a patent may forfeit its right to any relief from an alleged infringer where: (1) the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the alleged infringer relies upon the misleading communication from the patent holder, and (3) the alleged infringer will be materially harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication.  This is referred to as an "equitable estoppel" and it is a defense that Apple contends precludes any recovery by Samsung with respect to the "declared essential" patents – including the '604, '941, or '516 patents – in this lawsuit.  Apple must prove each of these elements is more likely true than not, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

Apple contends that Samsung made communications about its "declared essential" patents before Samsung filed this lawsuit.  A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence.  Conduct may include action or inaction.  Whether in fact Samsung communicated with 3GPP and Apple about its "declared essential" patents prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to Apple can be economic in form.  Whether Apple suffered economic prejudice is a question that must be answered by evaluating whether Apple changed its economic position as a result of its reliance on any misleading communication from Samsung about its "declared essential" patents, resulting in losses beyond merely paying for infringement (such as if 3GPP could have drafted the UMTS standard to avoid the allegedly infringing technology if Samsung had timely disclosed the '604, '941, or '516 patents or related patent applications when obligated to do so or had truthfully disclosed its licensing contentions) and whether losses as a result of any change in economic position could have been avoided.

**Source**

Adapted from Federal Circuit Bar Association Model Patent Jury Instr. B.5.3.

**Authorities**

35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995) (to establish equitable estoppel, one must show reliance on patentee's misleading conduct); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (*en banc*).

---

[5] Apple requests that the Court seek an advisory verdict from the jury on the question of equitable estoppel.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 30**
**UTILITY PATENT DAMAGES—GENERALLY**

2

3

**Apple's Proposed Instruction**

I will instruct you now about monetary damages for the Apple and Samsung utility patent infringement claims.  If you find that Samsung or Apple infringed any valid and enforceable claim from any of the other side's utility patents, you must then determine the amount of money damages to award to each prevailing patent holder.

4

5

6

The amount of those damages must be adequate to compensate a patent holder for any infringement.  There are two different types of damages that a utility patent holder may be entitled to recover—the profits the patent holder lost due to the infringement, and a reasonable royalty for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that damages are meant to compensate the patent holder and not meant to punish an infringer.

7

8

9

Apple seeks to recover its lost profits and, in the alternative, a reasonable royalty.  Samsung seeks recovery of a reasonable royalty.  Each patent holder has the burden to persuade you of the amount of its damages.  You should award only those damages that the patent holder more likely than not suffered.  While the patent holder need not prove its damages with mathematical precision, it must prove them with reasonable certainty.  A patent holder is not is entitled to damages that are remote or speculative.  Both parties are entitled to their total damages, regardless of their other wealth or revenues.

10

11

12

13

**Source**

14

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1; Federal Circuit Bar Association Model Patent Jury Instr. 6.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.1.

15

16

**Authorities**

17

35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (*en banc*).

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 31**
**UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY**

**Apple's Proposed Instruction**

In this case Apple seeks to recover lost profits for some of Samsung's sales of certain products, and other remedies on the rest of Samsung's sales.

To recover these lost profits, Apple must show that but for Samsung's infringement, there is a reasonable probability that Apple would have made sales that Samsung made.  Apple must show the share of Samsung's sales that it would have made if Samsung's infringing products had not been on the market.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

**PROPOSED FINAL JURY INSTRUCTION NO. 32**
**UTILITY PATENT DAMAGES — LOST PROFITS — FACTORS TO CONSIDER**

**Apple's Proposed Instruction**

To determine whether Apple is entitled to lost profits, you should consider whether Apple has shown:

      (1)      that there was a demand for Apple's patented products;

      (2)      that there were no commercially acceptable, non-infringing substitutes available, or, if there were, the number of the sales made by Samsung that Apple would have made despite the availability of other non-infringing substitutes

      (3)      that Apple had the manufacturing and marketing capacity to make the sales that were actually made by Samsung of infringing products for which Apple seeks an award of lost profits; and

      (4)      the amount of profit Apple would have made if Samsung had not infringed.

These factors are not the exclusive test for establishing lost profits. The ultimate question you must answer is whether Apple would have made the lost profits that it claims but for Samsung's infringement of Apple's patents.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.3.

**Authorities**

*Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.,* 318 F.3d 1119, 1122-23 (Fed. Cir. 2003); *Gargoyles, Inc. v. U.S.,* 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Carella v. Starlight Archery and Pro Line,* 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 552-53 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir 1978); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("[T]he Panduit test is an acceptable, though not an exclusive, test for determining 'but for' causation"); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1330 (Fed. Cir. 2009) ("All that the first [ Panduit ] factor states, and thus requires, is 'demand for the patented product.'"); *Aro Mfg. Co. v. Convertible Top Replacement Co. Inc..,* 377 U.S. 476, 502-07 (1964); *Beauregard v. Mega Sys., LLC,* 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Cent. Soya Co. v. George A. Hormel & Co.,* 723 F.2d 1573, 1579 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983).

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 33**
**UTILITY PATENT DAMAGES—LOST PROFITS—**
**NON-INFRINGING SUBSTITUTES**

3

**Apple's Proposed Instruction**

4
5

A non-infringing alternative may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period.

6
7
8
9
10

Factors suggesting the alternative was available include whether the experience and know-how for the alleged substitute were readily available at the time of infringement.  Factors suggesting the alternative was not available include whether the alternative was of such high cost as to render the alternative unavailable, and whether Samsung had to design or invent around the patented design to develop an alleged substitute.  You may also consider the amount of time it would take for an alleged substitute to be developed and introduced into the market.  Apple may obtain lost profits during the period in which Samsung would have been developing an alleged substitute even if you find that it would not have suffered lost sales or profits after a substitute became available.

11

To be commercially acceptable, an alternative must have had the advantages of the patented invention that were important to people who purchased an accused Samsung product.

12
13

If you find that Samsung's proposed alternative would not be available or would not be commercially acceptable for some or all of the period in which Samsung infringed, you should determine whether Apple lost sales and profits during this period.

14
15
16

If you find that an alleged alternative was not on the market during some or all of the period in which Samsung infringed, you may reasonably infer that it was not available as a non-infringing substitute at that time.  But Samsung may overcome this inference by showing that the substitute could have been created and marketed during the period in which it infringed.  Mere speculation or conclusory assertions are not sufficient to overcome the inference.

17

**Source**

18
19

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.3; Federal Circuit Bar Association Model Patent Jury Instr. B.6.2.

**Authorities**

20
21
22
23
24
25
26
27

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) (holding that an unused, but available, noninfringing process was an acceptable substitute) ("When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time.  *Cf. Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).  The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period.  *Cf. id.*  Mere speculation or conclusory assertions will not suffice to overcome the inference."); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003) ("The record shows that Lextron did not have the necessary equipment, know-how, and experience to make the [alternative] machine at the time of infringement."); *Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers must view the substitute as equivalent to the patented device."); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).

28

1

2

### PROPOSED FINAL JURY INSTRUCTION NO. 34
### UTILITY PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT

3

**Apple's Proposed Instruction**

4

5

6

Apple may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement, and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales (such as cost of goods, sales costs, packaging costs, and shipping costs).  Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from Apple's lost revenue.

7

**Source**

8

Adapted from Federal Circuit Bar Association Model Patent Jury Instr. B.6.2.

9

**Authorities**

10

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir. 1984).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 35**
**UTILITY PATENT DAMAGES—LOST PROFITS—MARKET SHARE**

2

3

**Apple's Proposed Instruction**

One way Apple may prove the number of sales it would have made if Samsung's infringement had not happened is to prove its share of the relevant market excluding the infringing products. You may award Apple a share of profits equal to that market share.

4

5

6

In deciding Apple's market share, you must decide which products are in Apple's market. Products are in the same market if they are sufficient similar to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

7

8

**Source**

9

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.3a.

10

**Authorities**

11

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354-55 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 36**
**UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

**Apple's Proposed Instruction**

Both Apple and Samsung seek a reasonable royalty for the infringement of their respective utility patents. If Apple has proven its claim to lost profits for all or a portion of Samsung's infringing sales, Apple should receive its lost profits for those sales. However, for any sales that infringe Apple's utility patents where Apple has not proven its claim to lost profits, you must award Apple a reasonable royalty. Samsung does not make a claim for lost profits. You must determine the reasonable royalties to which Samsung is entitled for any Apple sales that infringe Samsung's asserted patents.

In no event should the damages you award to either patent holder for patent infringement be less than a reasonable royalty.

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the invention. The right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the utility patent owner and an infringer taking place when infringement began. Your role is to determine what royalty would have resulted from the hypothetical negotiation. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed that the patent was valid and infringed. Your role is to determine what the results of that hypothetical negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way is to calculate a "running royalty." For this, you first determine the "base," *i.e.*, the products on which the infringer will pay. You then determine the "rate" (or percentage of the base) that would have come out of the hypothetical negotiation. For example, if the patent covers a nail that sells for $2, and the infringer sold 200 nails, the royalty base would be $400 in revenue. If the rate that you find would have resulted from the hypothetical negotiation is 1%, then the infringer or licensee would pay an running royalty of $0.02 for each $2 nail it sold. For the entire royalty base of its $400 in revenue, the licensee would pay $4. That is 1% of $400.

If the patent covers only part of the product that the infringer sells, the base would normally only correspond to that feature of the product. For example, for a $1000 car where the patented invention is on a steering wheel that sells for $50, the base revenue would be $50. However, if the patented invention is the reason customers buy the whole product, the base could be the value of the whole product.

Another way to calculate a royalty is to determine a one-time lump sum that the infringer would have paid and the patent owner would have accepted at the time of the hypothetical negotiation for a license covering all past and future sales of the licensed product. This differs from payment of a running royalty because the licensee does not pay based on the number or revenues of actual licensed products it sells. When a one-time lump sum is paid, the infringer instead pays a single price up front for the license.

It is up to you to decide what type of royalty is appropriate here based on the evidence you heard.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6, B.5.7.

1

2

**Authorities**

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d
1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed.
Cir. 1998) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109,
1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996);
*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Golight, Inc., v.
Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d
1098, 1108-10 (Fed. Cir. 1996); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.
Supp. 1116, 1120 (S.D.N.Y. 1970).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 37
UTILITY PATENT DAMAGES—REASONABLE ROYALTY—
RELEVANT FACTORS**

**Apple's Proposed Instruction**

In determining the outcome of the hypothetical negotiation, you should consider all facts known to the parties at the time infringement began.  Some of the factors you may consider are:

(1)     Royalties received by the patent holder for licensing the patent-in-suit, proving or tending to prove an established royalty.

(2)     Rates the infringer paid for using other patents comparable to the patent-in-suit.

(3)     The nature of the license, *i.e.*, exclusive or nonexclusive, restricted or unrestricted in terms of territory or to whom products covered by the patent claim may be sold.

(4)     The patent holder's policy to maintain its patent monopoly by not licensing others or by granting licenses under special conditions designed to preserve its monopoly.

(5)     The commercial relationship between the patent holder and infringer, such as whether they are competitors in the same territory in the same line of business.

(6)     The effect of selling the patented invention in promoting sales of other products of the infringer, the existing value of the patented invention to the patent holder as a generator of sales of nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of products covered by the patent claim, their commercial success, and their current popularity.

(9)     The advantages and benefits of the patented invention over older modes or devices, if any, that had been used to work on similar problems.

(10)    The nature of the patented invention, the character of the patent holder's products covered by it, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the patented invention and any evidence probative of the value of that use.

(12)    The portion of the profit or selling price that was customary in the business or in comparable businesses to allow for use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the patented invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a prudent licensor (such as the patent holder) and a prudent licensee (such as the infringer) would have agreed upon at the time infringement began if both had been reasonably and voluntarily trying to reach an agreement.

No one factor is dispositive, and you should consider the evidence that has been presented to you in this case on each one of the factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time when infringement began.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6, B.5.7; Adapted from Federal Circuit Bar Association Model Patent Jury Instr. B.6.7.

**Authorities**

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ("25% rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009), cert. denied, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions 9.8 (1999); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 38**
**UTILITY PATENT DAMAGES— DAMAGES FOR METHOD CLAIMS MUST BE**
**CORRELATED TO USE**

3

### Apple's Proposed Instruction

4

5

In determining damages for infringement of a patent that claims only a method, the amount of any reasonable royalty must be correlated to the extent the infringing method is actually used by consumers who possess the devices that are capable of being operated in an infringing manner.

6

### Authorities

7

8

9

10

11

*Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334-35 (Fed. Cir. 2009) (holding "[t]he damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers" and vacating damages award for method patent where patent holder failed to prove that "the extent to which the infringing method has been used supports the lump-sum damages award"); *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (one fact to be considered in determining a reasonable royalty is "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.").

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 39**
**UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

**Apple's Proposed Instruction**

Apple and Samsung each make damages claims against the other for patent infringement. To determine the amount of damages to award for each claim, you must determine the date on which damages began to accrue. Once you have determined that date, you should calculate the damages that are attributable to sales that occurred on that date and after. This determination should be made for each patent-holder's utility patent that you find has been infringed.

For each patent that the alleged infringer infringed but for which the patent-holder does not sell a product covered by the patent, you should calculate damages as follows:

- If the patent was granted before the alleged infringer's infringement began, damages should be calculated as of the date infringement began.

- If the patent was granted after the alleged infringer's infringement began, damages should be calculated as of the date the patent issued.

For each patent that the alleged infringer infringed and for which the patent-holder does sell a product covered by the patent, you must determine the date that the alleged infringer received actual notice of the patent and the specific product or products alleged to infringe. Damages should be calculated as of that date.

While you may identify an earlier date by which Samsung had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung with such notice for the '381 and '915 patents no later than April 15, 2011, and for the '163 patent no later than June 16, 2011.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8; Federal Circuit Bar Association Model Patent Jury Instr. B.6.8.

**Authorities**

35 U.S.C. § 287; *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer. Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979 (D. Mass. 1992) (actual notice does not require identifying a particular patent by number where plaintiff acted affirmatively to notify his adversary that he had a patent on a given item and the defendant was infringing that patent); *Coupe v. Royer*, 155 U.S. 565, 584-85 (1895) (holding that where plaintiffs presented evidence of actual notice and defendants offered evidence that they did not receive notice, the "court ought to have submitted that question to the jury"); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed. Cir. 2008) (trier of fact must take into account the history of the relationship between the parties when determining whether a communication was "sufficiently specific" to

1
2

give rise to actual notice); *Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (communication giving rise to actual notice does not need to identify all related products since "ensuing discovery . . . may bring those products within the scope of the notice").

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 41**
**UTILITY PATENT DAMAGES—NO DOUBLE COUNTING**

**Apple's Proposed Instruction**

While Apple is entitled to monetary relief for each infringing sale by Samsung, it may not recover twice for the same sale.  You should award Apple the highest remedy that you find applies to the infringing Samsung sale, whether it is based on Apple's lost profit or a reasonable royalty.  However, once you have awarded Apple a remedy with respect to a Samsung sale, you should not award Apple another remedy with respect to the sale of the same unit.

If you award Apple one form of remedy with respect to some but not all of Samsung's infringing sales, you should award Apple a different remedy with respect to the other Samsung infringing sales if Apple meets the requirements for that remedy.

In addition, a single Samsung product could violate more than one of Apple's intellectual property assets.  However, you should award Apple only one form of remedy for each sale that violates Apple's intellectual property rights.  If the sale of a Samsung product violates more than one of Apple's utility patents, design patents, or trade dresses, you should award Apple the highest remedy that Apple has proven with respect to that sale.

**Authorities**

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291-1292 (Fed. Cir. 2002) ("[W]hen both a design patent and a utility patent have been infringed [the plaintiff] … is entitled to damages for each infringement, but once it receives profits under § 289 for each sale, [the plaintiff] is not entitled to a further recovery from the same sale"); *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017-19 (Fed. Cir. 2006) ("Generally, the double recovery of damages is impermissible," holding that a plaintiff cannot recover damages from a defendant for patent infringement and trademark infringement if the damages were calculated from the sale of the same product by the same defendant); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("[R]ecovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act.").

1

## **DESIGN PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 42**
**DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS**

**Apple's Proposed Instruction**

I will now instruct you about how to decide Apple's design patent infringement claims. Before you decide whether Samsung has infringed each patent or whether it is invalid, you must understand the patent. Each Apple design patent has one claim that covers the design "as shown and described." Each design patent then uses multiple drawings to illustrate the claimed design. The drawings collectively define the design claimed by each patent. The scope of the claim encompasses the design's visual appearance as a whole. It does not cover a general design concept, and is not limited to isolated features of the drawings.

When viewing the drawings, keep in mind that all matter depicted in solid lines contributes to the overall appearance of the design. In addition, you should view certain features in the drawings of the Apple design patents in this way:

D'305 and D'087 patents. For these patents, the broken lines in the patent figures form no part of the claimed design.

[Show D'305 patent, Fig. 1 and D'087 patent, Fig. 1 to jury.]

D'677 patent. The oblique lines appearing in the D'677 patent indicate a transparent, translucent, or highly polished or reflective surface. In addition, the broken lines in the patent figures form no part of the claimed design for the D'677 patent. (The "oblique" lines are the diagonal lines shown in the figures of the patent.)

[Show D'677 patent, Fig. 1 to jury.]

D'889 patent. The front surface of the device marked with oblique lines is a transparent surface, the dotted-line rectangle in the front surface marks an area visible beneath the transparent surface and is claimed subject matter, and the human figure shown in broken lines in Figure 9 forms no part of the claimed design.

[Show D'889 patent, Fig. 1 to jury.]

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 5, 7.2.

**Authorities**

*Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.,* 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.,* 138 F.3d 1448 (Fed. Cir. 1998) *(en banc); Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed. Cir. 1995) *(en banc); see also* MPEP § 1503.02; *Unique Indus. v. 965207 Alta. Ltd.,* 722 F. Supp. 2d 1, 10 n.2 (D.D.C. 2009) (broken lines may be considered part of the claimed design, "if it is not clear that the inventor intended to exclude those portions from the claim").

1

**PROPOSED FINAL JURY INSTRUCTION NO. 43
DESIGN PATENT INFRINGEMENT—GENERALLY**

2

3

<u>**Apple's Proposed Instruction**</u>

A design patent may be infringed directly or indirectly.  I will explain the difference shortly.

4

5

To prove infringement, Apple must persuade you that it is more likely than not that Samsung infringed the patent.

6

**Source**

7

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 8.1, 8.2.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 44
## DESIGN PATENTS—DIRECT INFRINGEMENT

**Apple's Proposed Instruction**

To determine direct infringement of a design patent, you must compare the overall appearances of the accused design and the claimed design.

Before doing so, you must familiarize yourself with the prior art admitted at trial.  In view of this prior art, if you find it more likely than not that the overall appearance of an accused Samsung design is substantially the same as the overall appearance of the claimed Apple design, you must find that Samsung infringed the patent.

You should consider any perceived similarities or differences between the patented and accused designs.  Minor differences should not prevent a finding of infringement.  The use of a mark or a label on an otherwise infringing design will not avoid infringement.

You may find the following guidelines helpful to your analysis:

1.  When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

2.  If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

3.  If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

4.  You do not need to consider the size of the accused products if the asserted design patent does not specify the size of the design.

While these guidelines may be helpful, the test for infringement is whether the overall appearances of the accused design and the claimed design are substantially the same.  If they are, you must find infringement.  Whether Samsung knew its products infringed or even knew of Apple design patents does not matter in determining infringement.

**Source**

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 8.3.

**Authorities**

*Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK (Dkt. No. 452) (N.D. Cal. Dec. 2, 2011) at 10-11 ("Under the ordinary observer test, an accused device infringes upon a design patent if in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of the accused device and the patented design are substantially the same.  The designs are substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary observer], inducing him to purchase one supposing it to be the other.") (internal quotations omitted) (citing *Egyptian Goddess, Inc. v. Swisa, Unc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 8l U.S. 51l, 528 (1871)); *id.* at 11 ("This 'ordinary observer' test applies to the infringement, anticipation, and obviousness inquiries in the design patent context.") (citing *Int'l Seaway Trading Corp. v.*

1   *Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed. Cir. 2009)); *id.* ("In the infringement analysis,
    the focus should be on "the overall design" of the patent. For the anticipation and obviousness
2   analysis, the focus should likewise be on "the overall design" of the patent as compared to the
    prior art.") (citing citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-
3   40 (Fed. Cir. 2009)); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1304 (Fed. Cir. 2010) ("The proper
    comparison requires a side-by-side view of the drawings of the [asserted] design and the accused
4   products."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126 (Fed. Cir. 1993)
    ("Design patent infringement *relates solely to the patented design, and does not require proof of*
5   *unfair competition in the marketplace . . .*") (emphasis added); *Braun, Inc. v. Dynamics Corp.*,
    975 F.2d 815, 821 (Fed. Cir. 1992) ("[n]othing in *Gorham* suggests that, in finding design patent
6   infringement, a trier of fact may not as a matter of law rely *exclusively or primarily on a visual*
    *comparison* of the patented design, as well as the device that embodies the design, and the
7   accused device's design.") (emphases added); *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*,
    48 F.3d 1193, 1196 (Fed. Cir. 1995) (holding that the trial court recognized that "the patent never
8   mentions color or size or material," "the court erroneously relied on these unclaimed features of
    Sun Hill's GIANT STUFF-A-PUMPKIN in finding infringement") (citation omitted).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 45
DESIGN PATENTS—INVALIDITY BURDEN OF PROOF**

**Apple's Proposed Instruction**

I will now instruct you on how to decide whether Samsung has proven that the Apple design patents are invalid. For each patent, Samsung must persuade you by clear and convincing evidence that the design patent is invalid.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.*, No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

**— OR —**

I will now instruct you on how to decide whether Samsung has proven that the Apple design patents are invalid. For each patent, Samsung must persuade you by clear and convincing evidence that the design patent is invalid.

In deciding this issue, you may take into account that Samsung relies on certain prior art that was not considered by the Patent Office when it issued the asserted patents. Although Samsung must persuade you of invalidity by clear and convincing evidence, prior art that was not considered by the Patent Office may carry more weight than prior art that was considered. This may make Samsung's burden of showing that a patent is invalid easier to sustain. Conversely, relying on prior art that was considered by the Patent Office may make Samsung's burden of showing invalidity by clear and convincing evidence more difficult to sustain.

**Source**

N.D. Cal. Model Patent Jury Instr. B.4.1; Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instructions 9.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.*, No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

1

**PROPOSED FINAL JURY INSTRUCTION NO. 46**
**DESIGN PATENTS—ANTICIPATION/STATUTORY BARS**

2

**Apple's Proposed Instruction**

3

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any**
**Evidence at Trial That Any Prior Art Reference Is Identical in All Material Respects to the**
**Overall Visual Impression of Any Claimed Design—Instruction Provided In The Event**
**That Court Decides Instruction Must Be Provided]**

4

5

6

A design patent is invalid if it is not new or if the application for it was not filed by the required time. Certain articles of manufacture, publications, patents, and public uses that predate the patented design, or the date that the application for it was filed, are called "prior art references." A prior art reference that, to an ordinary observer, is identical in all material respects to the overall visual impression of the claimed design may invalidate a design patent. Minor differences between the two do not necessarily preclude a finding of invalidity.

7

8

9

The Court has already found that Japanese Design Registration No. 1241638 cannot be used as a prior art reference to invalidate any Apple design patent on this basis.

10

11

Here are ways that Samsung can show that an Apple design patent is invalid because it was not new or because the application for it was not timely filed:

12

13

- If the claimed design was publicly known or publicly used in the United States before the date of invention of the claimed design;

14

- If the claimed design was patented or described in a printed publication anywhere in the world before the date of invention of the claimed design, or more than one year before the effective filing date of the patent;

15

16

- If the claimed design was described in another U.S. patent or published U.S. patent application that was based on an application filed before the date of invention of the claimed design;

17

18

- If the claimed design was openly used in the United States more than one year before the effective filing date of the patent; or

19

- If an article using the claimed design was sold or offered for sale in the United States more than one year before the effective filing date of the patent.

20

21

The parties agree that Apple's design patents have the following effective filing dates:

22

- D'305 patent:  June 23, 2007.

23

- D'087 patent:  January 5, 2007.

24

- D'677 patent:  January 5, 2007.

25

- D'889 patent:  March 17, 2004.

26

You must determine the dates of invention for the Apple design patents.  Invention is proven when the design is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

27

28

1

**Source**

2

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a1, B.4.3a2; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.3, 9.4.

3

**Authorities**

4

5

6

7

8

9

10

11

12

35 U.S.C.§ 102; *Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK (Dkt. No. 452) (N.D. Cal. Dec. 2, 2011) at 11 (the "ordinary observer" test applies to anticipation) (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233,1239-40 (Fed. Cir. 2009)); *id.* at 18 ("The test for anticipation is the same as the test for infringement, the only difference being that the court compares the patented design with the alleged anticipatory reference rather than with the accused infringing product."); *id.* at 10-11 ("Under the ordinary observer test, an accused device infringes upon a design patent if "'in the eye of an ordinary observer, giving such attention as a purchaser usually gives,' 'the design of the accused device and the patented design are "'substantially the same."' The designs are "'substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary observer], inducing him to purchase one supposing it to be the other."'"") (citing *Egyptian Goddess, Inc. v. Swisa, Únc.*,543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 8l U.S. 51l, 528 (1871)); *id.* at 11 ("For the anticipation and obviousness analysis, the focus should likewise be on 'the overall design' of the patent as compared to the prior art.") (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*,589 F.3d 1233,1239-40 (Fed. Cir. 2009)).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 47**
**DESIGN PATENTS—OBVIOUSNESS**

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any Evidence at Trial That Any Primary/Secondary References Yield A Design That Has Same Overall Visual Impression As Any Claimed Design—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

A design patent claim is invalid if the claimed design would have been obvious to a designer of ordinary skill in the field at the time the design was made, even if an ordinary observer would not find the design to be substantially the same as a single prior art reference.

The ultimate conclusion of whether a claimed design is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field of the patent at the time the claimed design was made. In deciding this, you should consider all the evidence from trial, including:

>        (1)       the levels of education and experience of persons designing articles in the field;

>        (2)       the types of problems encountered in designing articles in the field; and

>        (3)       the sophistication of the field.

Second, you must decide the scope and content of the prior art.

Third, you must consider whether Samsung has identified a "primary" prior art reference. A "primary" reference must depict an actual design which, to a designer of ordinary skill in the field of the patent, is basically the same as the claimed design. The Court has decided, and I am therefore instructing you, that you may not use the Fidler tablet as a primary reference against the D'889 patent.

You must then consider whether Samsung has identified a "secondary" prior art reference that a designer of ordinary skill would use to modify the primary reference. A "secondary" reference must be so visually related to the primary reference that the appearance of certain ornamental features in the reference would suggest to the designer of ordinary skill the application of those features to the primary reference. The Court has decided, and I am therefore instructing you, that you may not use the TC1000 tablet as a secondary reference against the D'889 patent.

After making these decisions, you then need to determine if the primary reference alone or in combination with one or more secondary references results in a design that, in the eyes of an ordinary observer, has substantially the same overall visual appearance as the claimed design in the patent. You must perform this analysis for each Apple design patent that Samsung claims was obvious.

For each Apple patent, if you conclude that the primary reference alone or combined with any secondary references does not result in a design with substantially the same overall visual appearance in the eyes of an ordinary observer as the claimed design, your analysis can stop because the claimed design cannot be considered obvious in light of the identified prior art. You must conclude that any such Apple design patent is not invalid on obviousness grounds.

Finally, if you do not conclude that the primary reference alone or in combination with any secondary references does not result in a design with substantially the same overall visual

appearance as the claimed design in the eyes of an ordinary observer, you should consider any of the following factors that you find have been shown by the evidence. These factors may indicate that the claimed design would not have been obvious at the time it was made:

    (1)    commercial success of products covered by the claimed design due to the appearance of the claimed design;

    (2)    copying of the claimed design by others;

    (3)    acceptance by others of the claimed design as shown by praise from others in the field; and

    (4)    whether others expressed surprise or disbelief regarding the claimed design.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on obviousness or non-obviousness is up to you.

In deciding whether the claimed design was obvious, please keep in mind that a design with several features is not obvious merely because each individual feature was present in prior art designs. You must always be careful not to determine obviousness using the benefit of hindsight. Many truly novel and non-obvious designs might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed design was made and should not consider what is known today or what is learned from the teaching of the patent.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3b; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.7- 9.10; Federal Circuit Bar Association Model Patent Jury Instr. 4.3c.

**Authorities**

35 U.S.C.§ 103; *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329, 1332 (Fed. Cir. 2012) (obviousness analysis requires "a two step process" and must focus on visual appearance, not the "general concept" of a design); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) ("[T]he ultimate inquiry . . . is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved."); *id.* at 103, quoting *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) ("[O]ne must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'"); *id.*, quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996) ("[S]econdary references may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other.'"); *see also Apple Inc.*, 678 F.3d at 1329-1332 (applying quoted language from *Durling*, *In re Rosen*, and *In re Borden*).

**PROPOSED FINAL JURY INSTRUCTION NO. 48
DESIGN PATENTS—INVALIDITY—LACK OF ORNAMENTALITY**

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—The Court Will Instruct The Jury On Whether There Are Functional Elements In The Design Patents—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

Design patents protect the ornamental appearance, including shape or configuration, of an article of manufacture. If Samsung proves by clear and convincing evidence that the overall appearance of an Apple patented design is dictated solely by how the article claimed in the patent works, the patent is invalid because the design is not "ornamental."

When deciding this, you should keep in mind that design patents must be for articles of manufacture, which by definition have inherent functional characteristics. It is normal that claimed designs perform some function – that does not disqualify them from patent protection. Likewise, that features of a design may enhance the user's experience does not necessarily mean that the patented design was dictated solely by functionality.

The question is whether any general functional characteristics in a patented design can only be embodied by that design, or whether they can be embodied by other designs. The existence of alternate designs that perform substantially the same function may be strong evidence that the design is not dictated solely by function.

**Source**

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.11.

**Authorities**

35 U.S.C. § 171 (A design patent may be granted for any "new, original and ornamental design for an article of manufacture."); *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("A design patent is directed to the appearance of an article of manufacture. An article of manufacture *necessarily serves a utilitarian purpose*, and the design of a useful article is deemed to be functional when *the appearance of the claimed design is 'dictated by'* the use or purpose of the article.") (emphasis added); *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK (Dkt. No. 452) at 13 (N.D. Cal. Dec. 2, 2011) ("The standard . . . requires that the design itself be *dictated by* the functionality of the item. Just because various elements of Apple's D'677 and D'087 patents *enhance* the user experience does not necessarily mean that the patented design is *dictated by* functionality."); *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996); *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1368 (Fed. Cir. 1999); *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997).

**PROPOSED FINAL JURY INSTRUCTION NO. 52**
**DESIGN PATENT DAMAGES—GENERALLY**

**Apple's Proposed Instruction**

I will instruct you now about the measure of damages for infringement of Apple's design patents. By instructing you on damages, I am not suggesting which party should win on any issue.

If you find that Samsung infringed any valid Apple design patent, you must then determine the money damages to award Apple. The amount of those damages must be adequate to compensate Apple for the alleged infringement. Apple seeks three different forms of damages: lost profits, defendants' profits and a reasonable royalty. You should keep in mind that damages are meant to compensate the patent holder and not to punish an infringer.

Subject to certain exceptions I will mention, Apple has the burden to persuade you of the amount of its damages. You should award Apple the damages that the patent holder more likely than not suffered. While Apple is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Apple is not entitled to monetary relief that is remote or speculative. Apple is entitled to its total damages, regardless of its other wealth or revenues.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1; Federal Circuit Bar Association Model Patent Jury Instr. 6.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.1.

**Authorities**

35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) *(en banc).*

**PROPOSED FINAL JURY INSTRUCTION NO. 53
DESIGN PATENT DAMAGES - LOST PROFITS**

**Apple's Proposed Instruction**

Apple seeks to recover the profits it lost due to some of Samsung's sales that infringed Apple's design patents.  To recover lost profits for infringing sales, Apple must show that but for Samsung's infringement there is a reasonable probability that Apple would have made sales that Samsung made.  Apple must show the share of Samsung's sales that it would have made if the infringing Samsung products had not been on the market.

In assessing Apple's right to recover lost profits for Samsung's infringement of its design patents, you should apply the same rules I already explained in the context of lost profits for infringement of Apple's utility patents.  Those Instructions are set out in Jury Instructions Nos. 31-35.  Wherever in those Instructions I referred to Apple's utility patents, you should now focus on Apple's design patents.  Wherever in those Instructions I referred to the patented invention, you should now focus on the patented design.  Wherever I in those Instructions referred to patented products or products covered by a patent claim, you should now focus on products or articles that use or bear the patented design.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

**Authorities**

*Aro Mfg. Co. v. Convertible Top Replacement Co., Inc.*, 377 U.S. 476, 502-07 (1964); *Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1579 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-23 (Fed. Cir. 2003); *Gargoyles, Inc. v. U.S.*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552-53 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir 1978); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("[T]he Panduit test is an acceptable, though not an exclusive, test for determining 'but for' causation"); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) ("All that the first [Panduit] factor states, and thus requires, 'is demand for the patented product.'").

1

**PROPOSED FINAL JURY INSTRUCTION NO. 54**
**DESIGN PATENT INFRINGEMENT DAMAGES – DEFENDANT'S PROFITS**

2

3

**Apple's Proposed Instruction**

Apple is alternatively entitled to the total profits earned by Samsung that are attributable to sales of items that infringed an Apple design patent. "Total profits" include the entire profit on the sale of products with patented designs, and not just the portion of profit attributable to the design. "Total profits" do not include profit attributable to other products that may have been sold in association with an infringing article.

4

5

6

Profit is determined by deducting certain expenses from gross revenue. Gross revenue is all of Samsung's receipts from the sale of infringing products. Apple has the burden of proving the gross revenue that Samsung more likely than not received.

7

8

Samsung has the burden of proving the deductible expenses. Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods. Other costs may be included as deductible expenses if they are directly attributable to the sale of the infringing products resulting in a nexus between the infringing products and the expense.

9

10

11

**Source**

12

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.8.

13

**Authorities**

14

35 U.S.C. § 289; *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291-1292, (Fed. Cir. 2002); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447-48 (Fed. Cir. 1998); *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 (Fed. Cir. 1992); *Trans-World Mfg. Corp. v. A1 Nyman & Sons, Inc.*, 750 F.2d 1552, 1566-68 (Fed. Cir. 1984); *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 495 (D. Minn. 1980)*; Junker v. HDC Corp.*, No. C-07-05094 JCS, 2008 WL 3385819, at *3 (N.D. Cal. July 28, 2008) ("patent holder is not required to demonstrate that the profits are attributable to the ornamental qualities of the item in the design patent" but is "entitled to the entire profit obtained by the infringer as a result of sales of the item with the infringing design").

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 55
DESIGN PATENT DAMAGES—REASONABLE ROYALTY—
ENTITLEMENT—DEFINITION—RELEVANT FACTORS**

2

3   **Apple's Proposed Instruction**

4   If Apple has not proved its claim for lost profits, has not proved its claim to defendants' profits, or has proved its claim to either remedy for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits or defendants' profits.  In no event should the damages you award Apple for Samsung's design patent infringement be less than a reasonable royalty.

5

6

7   The definition of a reasonable royalty for design patent infringement is the same as the definition I explained to you in Jury Instruction No. 36 for utility patent infringement.  However, wherever in that Instruction I referred to the patented invention or a utility patent, you should now focus on the design patents or patented designs.

8

9

10   The factors you may consider in determining a reasonable royalty are also the same for design patent infringement as they are for utility patent infringement.  Wherever Instruction No. 37 referred to the patented invention or a patent claim, you should now focus on the patented design. Wherever Instruction No. 37 referred to a patented product or a product covered by the utility patent claim, you should now focus on an article or product bearing the patented design.

11

12   **Source**

13

14   Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6, B.5.7; Federal Circuit Bar Association Model Patent Jury Instr. B.6.7.

15   **Authorities**

16   35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) *cert. denied*, 130 S. Ct. 3324 (2010) (vacating and remanding jury award as excessive); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ("25% rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, No. 9.8 (1999); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 56
DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

**Apple's Proposed Instruction**

In determining the amount of damages, you must determine the date on which damages began to accrue.  Once you have determined that date, you should calculate the damages that are attributable to sales that occurred on that date and after.  This determination should be made for each design patent that Samsung infringed.

For each design patent that Samsung infringed but for which Apple does not sell a product covered by the patent, you should calculate damages as follows:

- If the patent was granted before Samsung's infringement began, damages should be calculated as of the date infringement began.

- If the patent was granted after Samsung's infringement began, damages should be calculated as of the date the patent issued.

For each design patent that Samsung infringed and for which Apple does sell a product covered by the patent, you must determine the date that Samsung received actual notice of the patent and the specific product or category of products alleged to infringe.  Damages should be calculated as of that date.

While you may identify an earlier date by which Samsung had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the D'677 patent by no later than April 15, 2011, and for the D'305, D'889 and D'087 patents by no later than June 16, 2011.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8; Federal Circuit Bar Association Model Patent Jury Instr. B.6.8.

**Authorities**

35 U.S.C. § 287; *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer. Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979 (D. Mass. 1992) (actual notice does not require identifying a particular patent by number where plaintiff acted affirmatively to notify his adversary that he had a patent on a given item and the defendant was infringing that patent); *Coupe v. Royer*, 155 U.S. 565, 584-85 (1895) (holding that where plaintiffs presented evidence of actual notice and defendants offered evidence that they did not receive notice, the "court ought to have submitted that question to the jury"); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed. Cir. 2008) (trier of fact must take into account the history of the relationship between the parties when determining whether a communication was "sufficiently specific" to give rise to actual notice); *Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373

1    (Fed. Cir. 2010) (communication giving rise to actual notice does not need to identify all related
2    products since "ensuing discovery . . . may bring those products within the scope of the notice").

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 57**
**DESIGN PATENT DAMAGES—NO DOUBLE COUNTING**

**Apple's Proposed Instruction**

3

4

5

While Apple is entitled to monetary relief for each infringing sale by Samsung, it may not recover twice for the same sale. You should award Apple the highest remedy that you find applies to the infringing Samsung sale, whether it is based on Apple's lost profit, Samsung's total profit, or a reasonable royalty. However, once you have awarded Apple a remedy with respect to a Samsung sale, you should not award Apple another remedy with respect to the sale of the same unit.

6

7

If you award Apple one form of remedy with respect to some but not all of Samsung's infringing sales, you should award Apple a different remedy with respect to the other Samsung infringing sales if Apple meets the requirements for that remedy.

8

9

In addition, as I previously explained, you should award Apple only one remedy for each Samsung sale that violates Apple's utility patents, design patents, or trade dresses.

10

**Authorities**

11

12

13

14

15

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291-1292 (Fed. Cir. 2002) ("[W]hen both a design patent and a utility patent have been infringed [the plaintiff] is entitled to damages for each infringement, but once it receives profits under § 289 for each sale, [the plaintiff] is not entitled to a further recovery from the same sale"); *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017-19 (Fed. Cir. 2006) (holding that a plaintiff cannot recover damages from a defendant for patent infringement and trademark infringement if damages were calculated from sale of same product by same defendant; "Generally, the double recovery of damages is impermissible.").

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED JURY INSTRUCTION NO. 58**
**UTILITY AND DESIGN PATENTS—INDUCING PATENT INFRINGEMENT**

2

**Apple's Proposed Instruction**

3

4   Apple also claims that Samsung's Korean parent SEC indirectly infringed its utility and design patents.  Apple argues that SEC induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility and design patents.  For there to be inducement of infringement, there must have been direct infringement by STA or SEA.

5

6

7   For each utility and design patent where you find that STA or SEA directly infringed, you should also determine:

8         1.       Whether SEC knew of the patent; and

9         2.       Whether SEC knew that STA's and SEA's activities would infringe.

10   If your answers to both of these questions are "yes," you must find SEC liable for inducing infringement of the patent.

11

12   While you may identify an earlier date by which SEC knew of certain of Apple's utility or design patents based on your evaluation of the evidence, Apple's lawsuit provided Samsung with knowledge of the '381, '915, and D'677 patents by no later than April 15, 2011, and of the '163, D'305, D'889 and D'087 patents by no later than June 16, 2011.

13

14   The knowledge requirement can alternatively be satisfied by showing that SEC was willfully blind.  In order to show that SEC willfully blinded itself to a fact, Apple must show that:

15

16         1.       SEC subjectively believed that there was a high probability that a fact existed; and

17         2.       SEC took deliberate actions to avoid learning of that fact.

18   For example, to show that SEC willfully blinded itself to the existence of an asserted utility or design patent, Apple must show that Samsung subjectively believed that there was a high probability that the patent existed and that Samsung took deliberate actions to avoid learning of the patent.

19

20   Samsung argues that Apple has actively induced third parties to infringe certain of Samsung's utility patents in suit.  To resolve this claim, for each patent where you find that a third party directly infringed, you should also determine:

21

22         1.       Whether Apple intentionally took action that actually induced direct infringement by another;

23

24         2.       Whether Apple knew of the patent; and

25         3.       Whether Apple knew that another's activities would infringe.

26   The knowledge requirement can alternatively be satisfied by showing that Apple was willfully blind.  In order to show that Apple willfully blinded itself to a fact, Samsung must show that:

27         1.       Apple subjectively believed that there was a high probability that a fact existed; and

28

2.      Apple took deliberate actions to avoid learning of that fact.

**Sources**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.9; adapted from instructions in *Oracle America, Inc. v. Google Inc.*, Case No. 3:10-cv-03561-WHA, Dkt. No. 1121, filed May 11, 2012 (N.D. Cal.).

**Authorities**

35 U.S.C. § 271(b); *Global-Tech Appliances, Inc., v. SEB S.A.,* 131 S. Ct. 2060, 2069 (2011) ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C. § 271(b)."); *ePlus, Inc. v. Lawson Software, Inc.,* No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011) ("Knowledge of the patent may be established by a finding that [the alleged infringer] had actual knowledge of the patent or that [the alleged infringer] deliberately disregarded a known risk that ePlus had a protective patent."); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-1306 (Fed. Cir. 2006) (*en banc*); *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683 (Fed. Cir. 2008).

**PROPOSED FINAL JURY INSTRUCTION NO. 59**
**DESIGN AND UTILITY PATENTS—WILLFUL PATENT INFRINGEMENT**

**Apple's Proposed Instruction**

Apple argues that Samsung willfully infringed Apple's design and utility patents, and Samsung argues that Apple willfully infringed Samsung's patents. I previously instructed you regarding a type of "willfulness" in the context of Apple's claim that Samsung has diluted certain Apple trade dresses. The type of "willfulness" that I explain here is different.

To prove an accused infringer willfully infringed one of its patents, each patent-holder must first persuade you that the other side infringed a valid and enforceable claim of an asserted patent. In addition, each patent holder must prove by clear and convincing evidence that the alleged infringer acted with reckless disregard of the patent holder's patent. To demonstrate this, the patent holder must persuade you that the alleged infringer knew, or it was so obvious that the alleged infringer should have known, that its actions infringed a valid patent. In deciding this question, you should consider all of the facts surrounding the alleged infringement.

Factors that may indicate that the alleged infringer was not willful include whether it acted in a manner consistent with the standards of commerce for its industry. Factors that may indicate that the alleged infringer was willful include whether it intentionally copied a product of the patent holder covered by the patent.

Additional factors you may consider as evidence that Samsung was willful include:

(1)     That Samsung was sanctioned in this case for disobeying three Court orders directing it to produce (a) documents relating to consumer surveys and whether Samsung copied from Apple, (b) source code, and (c) financial information;

(2)     That Samsung continued to sell the Galaxy S 4G and Infuse 4 phones after the Court found in December 2011 that (a) these products likely infringe the D'677 patent; and (b) Samsung had not raised a substantial question regarding the validity of the D'677 patent; and

(3)     That Samsung continued to sell the Infuse 4G, Galaxy S 4G, and Droid Charge phones, and the Galaxy Tab 10.1 tablet, after the Court found in December 2011 that (a) these products likely infringe the '381 patent; and (b) Samsung had not raised a substantial question regarding the validity of the '381 patent.

(4)     That Samsung continued to sell the above-mentioned phones and tablets after the United States Court of Appeals for the Federal Circuit announced its decision on May 14, 2012. On that date the Court of Appeals affirmed this Court on the '677 patent and the '381 patent, and reached a similar conclusion on the '087 patent and the '899 patent.

In determining whether the alleged infringer knew, or it was so obvious that the alleged infringer should have known, that its actions infringed a valid patent, you should keep in mind that the knowledge requirement can be satisfied by showing that the alleged infringer was willfully blind. In order to show that the alleged infringer willfully blinded itself to a fact, the patent-holder must show that:

1.     the alleged infringer subjectively believed that there was a high probability that a fact existed; and

2.     the alleged infringer took deliberate actions to avoid learning of that fact.

1

2   In this context, to show that the alleged infringer willfully blinded itself about whether its actions infringed a valid patent, the patent-holder must show that the alleged infringer subjectively believed that there was a high probability it was infringing and took deliberate actions to avoid learning if that was the case.

3

4   **Source**

5   Adapted from N.D. Cal. Model Patent Jury Instr. B.3.10.

6   **Authorities**

7   35 U.S.C. § 284; *In re Seagate Tech., LLC* ("Seagate"), 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) (standard for willful infringement); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v.*

8   *Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v.*

9   *Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-

10   827 (Fed. Cir. 1992); *C.R. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, No. 2010-1510, 2012 U.S. App. LEXIS 13561, at *6-7 (Fed. Cir. June 14, 2012) (the *Seagate* subjective

11   prong is an issue of fact); *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060, 2069 (2011) ("Given the long history of willful blindness and its wide acceptance in the Federal

12   Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C.§ 271(b)."); *ePlus, Inc. v. Lawson Software, Inc.*,

13   No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011) ("Knowledge of the patent may be established by a finding that [the alleged infringer] had actual knowledge of the patent or

14   that [the alleged infringer] deliberately disregarded a known risk that ePlus had a protective patent."); *Itar-Tass Russian News Agency v. Russian Kurier*, No. 95-Civ-2144 (JGK), 1997 U.S.

15   Dist. LEXIS 8297, at *3-4 (S.D.N.Y. June 10, 1997) (copyright infringement was blatant and willful when defendant continued to publish articles not covered by a preliminary injunction);

16   *SEB, S.A. v. Montgomery Ward & Co.*, 412 F. Supp. 2d 336, 337, 344 (S.D.N.Y. 2006) (a reasonable jury could consider the fact that a defendant continued to sell a redesigned product

17   after a preliminary injunction finding infringement for purposes of determining intent and induced infringement under § 271(b)); *Cordis Corp. v. Boston Sci. Corp.*, No. 03-27-SLR, 2010

18   U.S. Dist. LEXIS 7197, at *7-8 (D. Del. Jan. 28, 2010) (jury given summary of preliminary injunction for purposes of willfulness under *Seagate*).

19

20

21

22

23

24

25

26

27

28

1

**TRADE DRESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 60**
**TRADE DRESS DILUTION AND INFRINGEMENT—PROTECTABILITY**

**Apple's Proposed Instruction**

I will now instruct you about how to decide Apple's claims for trade dress dilution and trade dress infringement.

The first step in deciding Apple's trade dress dilution and infringement claims is to determine whether each trade dress is protectable. For each Apple trade dress, you must find that the trade dress is protectable if you find that it is:

      1.    distinctive; and

      2.    non-functional.

You must presume Apple's registered trade dress is protectable. Samsung must persuade you that it is more likely than not that the registered trade dress is not protectable. For each unregistered trade dress, Apple must persuade you that it is more likely than not protectable.

For each Apple trade dress that you find is protectable, resolving whether Samsung has diluted or infringed the trade dress will require you to assess additional questions that I will explain after addressing protectability.

**Source**

Adapted from ABA 3.2.1-3.2.2.

**Authorities**

15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); 15 U.S.C. § 1115(a) (a registration "shall be prima facie evidence of the validity of the registered mark"); *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 209-10 (2000) ("The breadth of the definition of marks registrable under § 2 . . . has been held to embrace not just word marks . . . but also 'trade dress' . . . [which] encompass[es] the design of a product."); *Wal-Mart*, 529 U.S. at 216 ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.").

**PROPOSED FINAL JURY INSTRUCTION NO. 61
TRADE DRESS PROTECTABILITY—DISTINCTIVENESS**

**Apple's Proposed Instruction**

You need to decide whether Apple's trade dresses had acquired distinctiveness (which is also called "secondary meaning") before Samsung's first sale of its accused products. Secondary meaning distinguishes a company's goods from similar goods offered by others, and refers to the ability to convey that the product comes from a particular source. Trade dress acquires distinctiveness or secondary meaning when prospective purchasers identify the trade dress with a particular source.

In addition to your common sense and experience, you may also consider the following factors in determining whether each Apple trade dress had acquired secondary meaning before Samsung's adoption of it:

1.   The length and manner of Apple's use of the asserted trade dress;

2.   The nature and extent of Apple's advertising and promotion of its asserted trade dress;

3.   The efforts made to promote a conscious connection in the public's mind between the asserted Apple trade dress and Apple's products;

4.   Whether people who purchase Apple products embodying the asserted trade dress associate the asserted trade dress with Apple;

5.   Whether Apple successfully used the asserted trade dress to increase its sales;

6.   Whether Apple has authorized anyone else to use the asserted trade dress; and

7.   Whether Samsung intentionally copied the asserted Apple trade dress.

The presence or absence of any particular factor should not necessarily resolve whether a trade dress asserted by Apple has acquired secondary meaning. You should consider all of these factors as well as the other relevant evidence that you have heard.

**Source**

Adapted from ABA 3.2.5; Ninth Circuit Model Civil Jury Instr. - 15.10 (2007 Ed.).

**Authorities**

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 216 (2000) ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning."); *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987) ("'The trade dress of a product or service attains secondary meaning when the purchasing public associates the dress with a particular source.'"); *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989) ("A product configuration has secondary meaning if the purchasing public associates that configuration with a particular source. The factors to be assessed in determining secondary meaning include: whether actual purchasers of [the product] associate the configuration with [the plaintiff]; the degree and manner of [plaintiff's] advertising; the length and manner of [plaintiff's] use of the configuration; and whether [plaintiff's] use of the configuration has been exclusive.").

## PROPOSED FINAL JURY INSTRUCTION NO. 62
## TRADE DRESS PROTECTABILITY—NON-FUNCTIONALITY

**Apple's Proposed Instruction**

You must decide whether each Apple trade dress is non-functional. Trade dress is not considered "functional" merely because it or its components perform useful functions. For example, all bottles perform the function of holding a liquid. This does not mean that a specific design for a bottle is necessarily "functional" and unprotectable.

An isolated design feature standing alone is "functional" only if the design of that feature is essential to the use or purpose of the product, or affects the cost or quality of the product. Put another way, a design feature is functional if the product works better because of that feature.

In determining whether each Apple trade dress is functional, you should consider the trade dress as a whole. A trade dress consisting of several features may be non-functional and protectable even though it includes functional features that, taken separately, would not be protectable. Only where the combination as a whole is functional is the trade dress unprotectable. In making this determination, you should consider the following factors:

> 1. Whether Apple's advertising touted the utilitarian advantages of the asserted trade dress's design;
>
> 2. Whether the asserted trade dress design results from a comparatively simple or inexpensive method of manufacture;
>
> 3. Whether the asserted trade dress design yields a utilitarian advantage; and
>
> 4. Whether alternative designs are available. While the existence of alternative designs does not necessarily prevent a finding of functionality, alternative designs may suggest that the trade dress is non-functional.

The presence or absence of any particular factor is not dispositive. You should consider all of these factors as well as any other relevant evidence that bears on this issue.

**Source**

Adapted from ABA 3.2.6.

**Authorities**

*Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 4 (N.D. Cal., June 30, 2012) ("[U]nder the traditional, utilitarian functionality test, a trade dress is functional 'when it is essential to the use or purpose of the device or when it affects the cost or quality of the device.' In applying this test, the Ninth Circuit assesses four factors: '(1) whether advertising touts the utilitarian advantages of the design, (2) whether the particular design results from a comparatively simple or inexpensive method of manufacture, (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are available.'") (citing *Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001); *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)); *Au-Tomotive Gold, Inc.*, 457 F.3d 1062, 1072 n.8 (9th Cir. 2006)); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 5 (N.D. Cal., June 30, 2012) ("The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather,

1  functional elements that are separately unprotectable can be protected together as part of a trade
   dress.") (citing *Adidas-Solomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1195 (D. Or. 2002)
2  (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001))); *Disc Golf
   Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006-09 (9th Cir. 1998) ("To determine whether a
3  product feature is functional, we consider several factors: (1) whether the design yields a
   utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts
4  the utilitarian advantages of the design, and (4) whether the particular design results from a
   comparatively simple or inexpensive method of manufacture.  No one factor is dispositive.");
5  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842-43 (9th Cir. 1987) ("We examine
   trade dress as a whole to determine its functionality; functional elements that are separately
6  unprotectable can be protected together as part of a trade dress.  In other words, our inquiry is not
   addressed to whether individual elements of the trade dress fall within the definition of functional,
7  but to whether the whole collection of elements taken together are functional."); *see also Traffix
   Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 63**
**TRADE DRESS DILUTION—ELEMENTS AND BURDEN OF PROOF**

2

**Apple's Proposed Instruction**

3

Apple contends that Samsung has diluted Apple's iPhone and iPad-related trade dresses.
"Dilution" means a lessening of the capacity of a famous trade dress to identify and distinguish
goods.

4

5

You must find for Apple on its dilution claim if, for any asserted trade dress, the following
elements are proven:

6

7
      1.     Apple's trade dress is protectable;

8
      2.     Apple's trade dress is famous;

9
      3.     Samsung began selling its accused products in commerce after Apple's trade
              dress became famous; and

10
      4.     Samsung's accused products are likely to cause dilution of Apple's trade dress.

11

12
I have already instructed you on how to determine if each Apple trade dress is protectable.  If you
find that Apple has a protectable trade dress, then you should go on to consider elements 2-4 for
each trade dress.  For elements 2-4, Apple must persuade you that the element is more likely true
than not.

13

14

**Source**

15

Adapted from ABA 3.4.1.

16

**Authorities**

17

15 U.S.C. § 1125(c)(2)(1) ("Subject to the principles of equity, the owner of a famous mark that
is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction
against another person who, at any time after the owner's mark has become famous, commences
use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by
tarnishment of the famous mark, regardless of the presence or absence of actual or likely
confusion, of competition, or of actual economic injury."); 15 U.S.C. § 1125(c)(2)(B) ("'dilution
by blurring' is association arising from the similarity between a mark or trade name and a famous
mark that impairs the distinctiveness of the famous mark").

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 64**
**TRADE DRESS DILUTION ELEMENT #2—FAME**

**Apple's Proposed Instruction**

A trade dress is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the trade dress owner.

To be "famous," each Apple trade dress must have been prominent and renowned at the time of Samsung's first sale of its accused products. It must have become widely recognized by the consuming public as the designator of its goods and must have such significant consumer associations that even uses of trade dress on non-competing goods could affect the value of the trade dress.

In determining whether each Apple trade dress is famous, you should consider all the relevant evidence, including the factors that follow below. These factors are suggestions and may not constitute all the evidence indicating whether a trade dress is famous. The presence or absence of any particular factor is not alone determinative:

    1.     The duration, extent, and geographic reach of advertising and publicity of the trade dress, whether or not advertised or publicized by Apple;

    2.     The amount, volume, and geographic extent of sales of goods offered under the trade dress;

    3.     The extent of actual recognition of the trade dress; and

    4.     Whether the trade dress is federally registered.

**Source**

Adapted from ABA 3.4.2—3.4.3.

**Authorities**

15 U.S.C. § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) [t]he extent of actual recognition of the mark; (iv) [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 8 (N.D. Cal., June 30, 2012) ("To establish a claim fo trade dress dilution, a plaintiff must show that (1) the trade dress is 'famous and distinctive,' (2) the defendant is 'making use of the [trade dress] in commerce,' (3) the defendant's 'use began after the [trade dress] became famous,' and (4) the defendant's use of the trade dress is 'likely to cause dilution by blurring' or by 'tarnishment.'") (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008)).

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 65**
**TRADE DRESS DILUTION ELEMENT #3—USE OF ACCUSED TRADE DRESS IN**
**COMMERCE AFTER APPLE TRADE DRESS BECAME FAMOUS**

3

**Apple's Proposed Instruction**

4

A claim for dilution requires that the defendant's accused products were first offered in commerce after the plaintiff's trade dress became famous.

5

6

For each asserted Apple iPhone-related trade dress, you must therefore determine whether the trade dress became famous before Samsung's first sale of an accused smart phone product on July 15, 2010.

7

8

For each asserted Apple iPad-related trade dress, you must determine whether the trade dress became famous before Samsung's first sale of an accused tablet computer product on June 8, 2011.

9

**Source**

10

Adapted from ABA 3.4.1.

11

**Authorities**

12

13

14

15

15 U.S.C. § 1125(c)(2)(1) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.").

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 66**
**TRADE DRESS DILUTION ELEMENT #4—DILUTION**

**Apple's Proposed Instruction**

Dilution is an association arising from the similarity between the appearance of the defendant's accused products and the plaintiff's trade dress that impairs the distinctiveness of the plaintiff's trade dress. A dilution claim does not require a finding of actual dilution of the plaintiff's trade dress. It is sufficient for you to find here that Samsung's sale of its accused products is likely to cause dilution of an asserted Apple trade dress.

In determining whether the appearance of Samsung's accused products is likely to cause dilution, you may consider all relevant factors, including:

1. the degree of similarity between Samsung's accused products and Apple's trade dress;

2. the degree of acquired distinctiveness of Apple's trade dress;

3. the extent to which Apple has authorized anyone else to use its trade dress;

4. the degree of recognition of Apple's trade dress;

5. whether Samsung intended to create an association with Apple's trade dress; and

6. any actual association between Samsung's and Apple's trade dresses.

The presence or absence of any particular factor should not necessarily resolve whether there is a likelihood of dilution. You must consider all relevant evidence in deciding this question.

**Source**

Adapted from ABA 3.4.4.

**Authorities**

15 U.S.C. § 1125(c)(2)(1) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."); 15 U.S.C. § 1125(c)(2)(B) ("In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following: (i) [t]he degree of similarity between the mark or trade name and the famous mark; (ii) [t]he degree of inherent or acquired distinctiveness of the famous mark; (iii) [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) [t]he degree of recognition of the famous mark; (v) [w]hether the user of the mark or trade name intended to create an association with the famous mark; (vi) [a]ny actual association between the mark or trade name and the famous mark."); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 n.2 (9th Cir. 2008) ("[T]he FTDA has been amended so as to require only a likelihood of dilution to succeed. Trademark Dilution Revision Act of 2006 ("TDRA"), Pub. L. No. 109-312 § 2(1), 120 Stat. 1730.").

**PROPOSED FINAL JURY INSTRUCTION NO. 67**
**TRADE DRESS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF**
**(15 U.S.C. § 1125(A)(1))**

**Apple's Proposed Instruction**

Apple also claims that Samsung infringed its unregistered iPad-related trade dress.  To prevail, Apple must persuade you that each of the following two elements is more likely than not true:

1.  Protectability:  I have instructed you already on how to determine if Apple's iPad-related trade dress is protectable.  If you find for Apple on this issue, then you should consider the next element.

2.  Likelihood of Confusion:  This element requires you to determine whether the appearance of Samsung's accused tablet computer products is likely to cause confusion with Apple's iPad products.  I will now instruct you on the factors you should consider in determining the issue of likelihood of confusion.

**Source**

Adapted from ABA 3.3.1.

**Authorities**

*Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (stating that plaintiff "must meet three elements: (1) nonfunctionality, (2) distinctiveness and (3) likelihood of confusion" to establish trade dress infringement).

**PROPOSED FINAL JURY INSTRUCTION NO. 69**
**TRADE DRESS INFRINGEMENT—LIKELIHOOD OF CONFUSION—SLEEKCRAFT**
**TEST (15 U.S.C. §§ 1114(1), 1125(A))**

**Apple's Proposed Instruction**

You must decide whether Samsung's use of its accused products is likely to cause confusion about the source of Samsung's tablet computer products.  Confusion in the marketplace can occur at three distinct times:  Confusion in the marketplace can occur at three distinct times:  before the purchase (also called "initial interest" confusion), at the moment of the purchase (also called "point of sale" confusion), and after the purchase (also called "post-sale" confusion).   .

I will suggest some factors you should consider in deciding this.  The presence or absence of any particular factor should not necessarily resolve whether there was a likelihood of confusion.  You must consider all relevant evidence in determining this.  As you consider the likelihood of confusion, you should examine the following:

1.  Strength or Weakness of Apple's Trade Dress.  The more the public recognizes Apple's trade dress as indicating the origin of Apple's goods, the more likely it is that consumers would be confused about the source of Samsung's goods with a similar appearance.

2.  Samsung's Use of the Accused Designs.  If Samsung's accused products and the products that embody Apple's asserted trade dresses are the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source of the goods.

3.  Similarity of Apple's and Samsung's Trade Dress.  If the overall impression created by Apple's trade dress in the marketplace is similar to the impression created by the appearance of Samsung's accused products, there is a greater chance of likelihood of confusion.  Similarities in appearance weigh more heavily than differences in finding the trade dress is similar.

4.  Actual Confusion.  If the appearance of Samsung's accused products has led to actual confusion with the products that embody Apple's asserted trade dresses, this strongly suggests a likelihood of confusion.  But actual confusion is not required.  You should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few instances of actual confusion, you may find there has not been substantial actual confusion.

5.  Samsung's Intent.  Knowing use by Samsung of a design similar to Apple's trade dress on similar goods may strongly show an intent to derive benefit from the reputation of Apple's trade dress, suggesting an intent to cause a likelihood of confusion.

6.  Marketing/Advertising Channels.  If Apple's and Samsung's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7.  Consumer's Degree of Care.  The more sophisticated the potential consumers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent consumer exercising ordinary caution may be.  They may be less likely to be confused by similarities in Apple's and Samsung's trade dress.

When considering this factor, please keep in mind that the application of discrimination and scrutiny by a consumer to financial terms such as data plans does not necessarily equate to discrimination and scrutiny regarding product appearance.

**Source**

Ninth Circuit Model Civil Jury Instr. - 15.16 (2007 Ed.).

**Authorities**

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (setting out likelihood of confusion factors); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030-31 (9th Cir. 2010) (applying *Sleekcraft* test); *Metro Pub. v San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("Because each factor is not necessarily relevant to every case, this list [of likelihood of confusion factors] functions as a guide and is 'neither exhaustive nor exclusive.'"); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032 (9th Cir. 2010); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.* 944 F.2d 1446, 1455 (9th Cir. 1991).

1

**PROPOSED FINAL JURY INSTRUCTION NO. 74**
**TRADE DRESS DAMAGES IN GENERAL**

2

**Apple's Proposed Instruction**

3

4

I will now explain to you how to assess the monetary relief to which Apple is entitled based on its claims for trade dress dilution and infringement. As I will explain, there are three forms of monetary relief to which Apple may be entitled.

5

6

Subject to any exceptions I mention, Apple has the burden to persuade you of the amount of monetary relief to which it is entitled.

7

8

In determining the amount of money to award Apple for its trade dress claims, you must determine the date on which damages began to accrue. Damages for trade dress dilution and trade dress infringement begin to accrue on the date that a violation first occurred. You should award Apple money damages for all violations that occurred on that date and any date after that.

9

**Authorities**

10

11

12

13

14

15

16

17

18

19

20

21

15 U.S.C. § 1111 ("Notwithstanding the provisions of section 1072 hereof [15 USC 1072], a registrant of a mark registered in the Patent and Trademark Office, may give notice that his mark is registered by displaying with the mark the words "Registered in U. S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle, thus (R); and in any suit for infringement under this Chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this Chapter unless the defendant had actual notice of the registration."); 15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."); *Coach, Inc. v. Asia Pac. Trading Co., Inc.*, 676 F. Supp. 2d 914, 924-9259 (C.D. Cal. 2009) ("Since 1989, [§ 1117] statutory damages for a violation of [§ 1125(a) ] for infringement of an unregistered mark are "subject to" the provisions of the [§ 1111] requirements of notice. But because the [§ 1111] requirement of notice only applies to registered marks, it is, of course, not a limitation on recovery of damages under a [§ 1125(a) ] count for infringement *of an unregistered mark . . . McCarthy on Trademarks, supra, § 19:144* (emphasis added); *see also GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 306 (S.D.N.Y. 2002) (stating that for any infringement occurring before date of mark's registration plaintiff could recover profits and damages under 15 U.S.C. § 1125(a), but for all infringement occurring after date of registration plaintiff had to satisfy notice requirements of § 1111 to recover profits and damages).").

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 75**
**TRADE DRESS DAMAGES—PLAINTIFF'S ACTUAL DAMAGES**
**(15 U.S.C. § 1117(A))**

**Apple's Proposed Instruction**

Apple seeks its actual damages for violations of its trade dress.

If you find for Apple on any of its dilution claims and that Samsung's acts of dilution were willful, you must determine Apple's actual damages.

In addition, if you find for Apple on its trade dress infringement claim, and if you find that Apple has proven actual consumer confusion resulting from Samsung's infringement or that Samsung's actions were intentionally deceptive, you must determine Apple's actual damages.

Actual damages refers to the amount of money that will reasonably compensate Apple for any injury you find was caused by Samsung's dilution or infringement of Apple's trade dress.  You should award Apple any profits that Apple lost due to Samsung's dilution or infringement.

**Source**

Adapted from ABA 3.6.1.

**Authorities**

15 U.S.C. § 1117(a); 15 U.S.C. § 1125; *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614, 621 (9th Cir. 1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Id.* "[T]he purpose of section 1117 is to 'take all the economic incentive out of trademark infringement.'") (internal citations omitted); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) (15 U.S.C. § 1117(a) further provides for an award, subject to equitable principles, of "any damages sustained by the plaintiff...." A plaintiff must prove both the fact and the amount of damage. 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984)").

**PROPOSED FINAL JURY INSTRUCTION NO. 76**
**TRADE DRESS DAMAGES—DEFENDANT'S PROFITS**
**(15 U.S.C. § 1117(A))**

**Apple's Proposed Instruction**

Apple is alternatively entitled to recover Samsung's profits that resulted from Samsung's willful dilution or infringement of Apple's trade dress. To the extent that Samsung's profit from a sale that willfully diluted or infringed Apple's trade dress was greater than Apple's actual damage, you should award Samsung's profit to Apple.

Samsung's profits are determined by deducting expenses from the gross sales revenue of Samsung's products that infringed or diluted Apple's trade dress. Gross sales revenue is the sales receipts from sales of those products. Apple has the burden of proving the amount of gross sales revenue that Samsung more likely than not received. All sales proven by Apple are presumed to be attributable to Samsung's violations of Apple's trade dresses.

However, Samsung may rebut this presumption if it proves it is more likely than not that any particular sales and their profits were not the result of a violation. Samsung must show that the particular sale(s) resulted exclusively from intrinsic qualities of its products and not from the use or dilution of Apple's trade dress.

It is also Samsung's burden to prove that any sums it seeks to deduct from its gross sales revenues as expenses were more likely than not attributable to overhead, operating expenses, materials, or labor. Such proof need not be precise. Reasonable approximations constitute satisfactory evidence. However, if Samsung fails to offer proof sufficient to meet its burden, its entire gross revenues from sales of the products that violated Apple's trade dress should be awarded to Apple.

**Source**

Adapted from ABA 3.6.6.

**Authorities**

15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 USCS § 1125(a) or (d)], or a willful violation under section 43(c) [15 USCS § 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USCS §§ 1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."); *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004–05 (9th Cir. 2004) ("We also note that disgorgement of profits is a traditional trademark remedy . . ."); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (affirming defendant's profits as damages under 15 U.S.C. § 1117); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("'[d]amages are not rendered uncertain because they cannot be calculated with absolute exactness,' yet, a reasonable basis for computation must exist."); *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) ("The statute thus allocates the initial burden of proving gross sales to the trademark plaintiff, and the subsequent burden of proving costs to the infringing defendant.[citations omitted]. Ordinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it. This sequence of proof thus places the burden of proving costs on the party with the superior access to such information, namely the infringing defendant."); *Adray v. Adry-Mart, Inc.*, 76 F.3d

984, 989 (9th Cir. 1995) ("[T]he burden of any uncertainty in the amount of damages should be borne by the wrongdoer . . . ."); *Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968); *Landes Mfg. Co. v. Chromodern Chair Co.*, No. CV 76-3540, 1978 U.S. Dist. LEXIS 15095, at *11 (C.D. Cal. Oct. 5, 1978). Ninth Circuit Model Civil Jury Instructions, Comment to 15.26 Trademark Damages—Defendant's Profits (15 U.S.C. § 1117(a)) ("The Ninth Circuit has not addressed, and other circuits are divided on, whether willfulness remained a prerequisite to disgorgement of a defendant's profits as a result of the Trademark Amendments Act of 1999, Pub. L. 106-43, § 3(b), 113 Stat. 218, 219 (codified in relevant part at 15 U.S.C. § 1117). However, even prior to the 1999 Amendments, the Ninth Circuit suggested that willfulness was not always a requirement for the award of profits. *See Adray v. Adry-Mart,* 76 F.3d at 988 ("An instruction that willful infringement is a prerequisite to an award of defendant's profits may be an error in some circumstances ([such] as when plaintiff seeks the defendant's profits as a measure of [plaintiff's] own damage [citation omitted])").").

1

**PROPOSED FINAL JURY INSTRUCTION NO. 77**
**TRADE DRESS DAMAGES – REASONABLE ROYALTY**

2

3    **Apple's Proposed Instruction**

4    Apple is alternatively entitled to a reasonable royalty on any Samsung sales that were the result of
the willful dilution of its trade dress or that infringed its trade dress.  To the extent you find that
5    Apple is not entitled to Samsung's profit or Apple's actual damage from a Samsung sale that
violated Apple's trade dress rights, you should award Apple a reasonable royalty for that sale.

6

7    A royalty is a payment made to the trade dress owner by a non-owner in exchange for rights to
use the trade dress.  A reasonable royalty is the royalty that would have resulted from a
hypothetical negotiation between the trade dress owner and a company seeking the right to use
8    the trade dress that took place just before infringement or dilution began.

9    In determining a reasonable royalty in this case, assume that both parties to the negotiation
understood the Apple trade dresses to be protectable.  In addition, although the relevant date for
10   the hypothetical negotiation is just before infringement or dilution began, you may consider
profits made by Samsung from sales of infringing or diluting products after that time, and any
11   commercial success attributable to an Apple trade dress after that time.

12   **Source**

13   Adapted from final jury instructions in *Adidas America v. Payless Shoesource, Inc.*, Civil Case
No. 01-1655-KT (D. Or. May 1, 2008).
14

**Authorities**
15

*Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982)
16   (acknowledging reasonable royalty as a remedy for trademark infringement); McCarthy on
Trademarks and Unfair Competition, § 30:85 ("It has been argued that an award of a reasonable
17   royalty as compensation for past acts of infringement is a more workable measure of damages
than an accounting of profits . . .  All of these ambiguities require that, in fashioning relief based
18   on royalty payments, a court take special care to ensure that the royalty payment has not
undercompensated the victim.").

19

20

21

22

23

24

25

26

27

28

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 78**
**TRADE DRESS DILUTION DAMAGES—**
**WILLFULNESS REQUIRED FOR DILUTION DAMAGES**

3

**Apple's Proposed Instruction**

4
5
6

You should not award Apple monetary relief for any of its dilution claims unless Apple proves it more likely than not that Samsung willfully intended to trade on the recognition or good will of an Apple trade dress, or where Samsung's actions were calculated to exploit the benefits of an Apple trade dress.  This does not apply to Apple's trade dress infringement claim.

7

In deciding this issue, you may consider whether Samsung continued to sell the accused products when Samsung had no reasonable basis to believe that it had a legal right to sell the products accused by Apple.

8
9

**Source**

10

Adapted from ABA 3.4.5.

11

**Authorities**

12
13
14
15
16
17
18
19

15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover  (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."); 15 U.S.C. § 1125(c) ("Dilution by blurring, tarnishment"); *Gracie v. Gracie*, 217 F.3d 1060, 1068 -1069 (9th Cir. 2000) (analyzing and approving a jury instruction that did not include a "clear and convincing" standard); *Adidas America, Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *12 -13 (D. Or. Sept. 12, 2008) (holding that, with respect to willful trademark infringement jury instruction, "we do not believe that [cases cited by party challenging instruction] provide convincing support for a requirement of a clear and convincing standard"); *B & H Mfg. Co., Inc. v. Bright,* No. CVF016619AWISMS, 2005 WL 1342815, at *9 (E.D. Cal. May 10, 2005) ("To prevail on its dilution claim, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence: . . . Defendant willfully intended to trade on the owner's reputation or to cause dilution of the famous mark . . .").

20
21
22
23
24
25
26
27
28

**PROPOSED FINAL JURY INSTRUCTION NO. 80
TRADE DRESS DAMAGES—NO DOUBLE-COUNTING**

**Apple's Proposed Instruction**

While Apple is entitled to monetary relief for each act by Samsung that violates Apple's trade dress rights, it may not recover twice for the same sale of a Samsung product. You should award Apple the highest remedy that it has proven with respect to each sale of a Samsung product that willfully caused the dilution of an Apple trade dress or that infringed an Apple trade dress. But you should not award Apple twice for the same sale of a Samsung tablet or smart phone product.

In addition, if you award Apple one form of remedy with respect to some but not all of Samsung's sales, you should award Apple a different remedy with respect to the remaining sales that violated any Apple trade dress.

These principles also apply with respect to the monetary relief you will later consider in connection with Apple's claims for design and utility patent infringement. A single Samsung product could violate more than one of Apple's intellectual property assets. However, you should award Apple only one form of remedy for each sale that violates Apple's intellectual property rights. If the sale of a Samsung product violates more than one of Apple's trade dresses, design patents, or utility patents, you should award Apple the highest remedy that Apple has proven with respect to that sale.

**Authorities**

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("Recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act.").

1

## **BREACH OF CONTRACT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 82**
**BREACH OF CONTRACT – OBLIGATION TO LICENSE PATENTS ON**
**FRAND TERMS**

2

3    **Apple's Proposed Instruction**

4    I will now instruct you on how to determine whether Apple has proved its breach of contract
     claim.  A breach is an unjustified failure to perform a contract.

5

6    Samsung has submitted declarations that it is prepared to grant irrevocable licenses to patents
     declared essential to the UMTS standard on fair, reasonable and non-discriminatory ("FRAND")
     terms and conditions.  In order to demonstrate breach of this contract provision, Apple must prove
7    that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused
     by Samsung's failure to perform this obligation.  Apple is not required to prove that Samsung's
8    alleged breach was the sole cause of its injury.  Apple is required to prove that Samsung's alleged
     breach was a material cause of its injury.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 83**
**BREACH OF CONTRACT – OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL**
**PROPERTY RIGHTS ("IPR")**

2

3   **Apple's Proposed Instruction**

4   The ETSI IPR Policy provides that a member must use its reasonable endeavors during the development of a standard where it participates to disclose essential intellectual property rights.

5   Where a member has submitted a technical proposal for a standard, it shall, on a bona fide basis, disclose all intellectual property rights that might be essential if that proposal is adopted.  In order

6   to demonstrate breach of this contract provision, Apple must prove that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to

7   perform this obligation.  Apple is not required to prove that Samsung's alleged breach was the sole cause of its injury.  Apple is required to prove that Samsung's alleged breach was a material

8   cause of its injury.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ANTITRUST JURY INSTRUCTIONS**

1

## PROPOSED FINAL JURY INSTRUCTION NO. 84
## MONOPOLIZATION — ELEMENTS

2

3

**Apple's Proposed Instruction**

4

I will now instruct you on how to decide whether Apple has proven that Samsung has violated the federal antitrust laws.  Apple alleges that Samsung has unlawfully monopolized various markets consisting of technologies that competed to perform functions included in the UMTS standard. To prove its monopolization claim in any such market, Apple must persuade you that each of the following elements is more likely true than not:

5

6

7

**First**, that the alleged technology market is a relevant antitrust market;

8

**Second**, that Samsung possessed monopoly power in that market;

9

**Third**, that Samsung willfully acquired its monopoly power in that relevant market by engaging in anticompetitive conduct;

10

**Fourth**, that Samsung's conduct occurred in or affected interstate commerce; and

11

**Fifth**, that Samsung's anticompetitive conduct was a substantial factor in causing injury to Apple in its business or property.

12

13

If you find that Apple has proved each of these elements for one or more alleged technology markets, then you must find for Apple and against Samsung on the monopolization claim.  If you find that Apple has failed to do so, then you must find for Samsung and against Apple on this claim.

14

15

16

**Source**

17

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

18

**Authorities**

19

Sherman Act Section 2, 15 U.S.C. § 2; *Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Brunswich Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008).

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 85
## MONOPOLIZATION — RELEVANT MARKET

2

3

**Apple's Proposed Instruction**

4

To prove a monopolization claim, one of the elements Apple must prove is that Samsung has monopoly power in a relevant antitrust market. An antitrust market is defined both by the relevant technologies that compete with each other, and by the geographic area in which they compete.

5

6

A relevant technology market includes all those technologies that are reasonable substitutes for each other from the user's point of view; that is, the technologies that compete with each other. These technologies are not physical products themselves, but rather are intellectual property rights and close substitutes – including ideas or techniques not covered by such property rights – that are used to produce products. A relevant technology market includes the technologies that users believe are reasonably interchangeable to achieve certain functionality, and need not be identical or precisely interchangeable as long as they are reasonable substitutes. This is a practical test, and you may consider the actual behavior of users or potential users and the marketing efforts of licensors in making this determination.

7

8

9

10

11

The relevant geographic market is the area in which the Samsung technologies face competition from other technologies to which customers can reasonably turn. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

12

13

In this case, Apple claims that the relevant geographic market is worldwide. Samsung does not propose any geographic market, but asserts that Apple has not shown a worldwide market.

14

**Source**

15

16

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

17

**Authorities**

18

Sherman Act Section 2, 15 U.S.C. § 2; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Rebel Oil v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995); *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D.Cal. Jan. 5, 2008).

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 86**
**MONOPOLIZATION — EVIDENCE OF MONOPOLY POWER**

**Apple's Proposed Instruction**

If you find that Apple has proven one or more relevant markets, then you should determine whether Samsung has monopoly power in those markets. Monopoly power is the power to control prices and exclude competition in a relevant antitrust market.

*Direct Evidence of Monopoly Power*

In determining whether Samsung has monopoly power in a relevant market, you may consider whether there is direct evidence that Samsung controls prices or excluded competition. Such direct evidence would consist of evidence that Samsung has demanded or received royalties above competitive levels for patents it claims are essential to the UMTS standard or excluded alternative technologies in the relevant technology market or markets.

*Indirect Evidence of Monopoly Power*

If you do not find there is direct evidence of monopoly power, there are a number of factors you may consider as indirect evidence of monopoly power:

> One factor you should consider is Samsung's market share in any relevant technology market. A market share above 50 percent may be sufficient to support an inference that Samsung has monopoly power. The likelihood that a company has monopoly power is stronger when the company's share is above 50 percent. However, it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry into the market, actual entry and exit by other companies, and the number and size of competitors.

> Another factor you may consider is whether there are barriers to entry into the relevant market or markets. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. A potential barrier to entry may be the existence of a recognized standard that prevents alternative technologies from being adopted or introduced in the market. Similarly, if users of a technology cannot readily switch between technologies, entry into the technology market may be impossible.

If you find based on these factors or other evidence that Samsung more likely than not has the power to maintain royalties above a competitive level or to exclude alternative technologies in the relevant market or markets, then you should find that Samsung has monopoly power in the relevant market or markets.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

Sherman Act Section 2, 15 U.S.C. § 2; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D.Cal. Jan. 5, 2008); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 87**
**MONOPOLIZATION — WILLFUL ACQUISITION OF MONOPOLY POWER**
**THROUGH ANTICOMPETITIVE ACTS**

3

**Apple's Proposed Instruction**

4

The next element Apple must prove is that Samsung willfully acquired monopoly power through anticompetitive acts or practices in the relevant technology markets. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition among technologies. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better technology, possessing superior business skills, or because of luck, which is not unlawful.

5
6
7

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

8
9

To be anticompetitive, the acts or practices that result in the acquisition of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. You may not find that a company willfully acquired monopoly power if it has acquired that power solely through the exercise of superior foresight and skill; or because of economic or technological efficiency, including efficiency resulting from scientific research; or because changes in cost or taste have driven out all but one supplier.

10
11
12
13

**Source**

14

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

15

16

**Authorities**

17

*Rebel Oil Co., Inc. v. Atlantic Richfield, Co.* 51 F.3d 1421 (9th Cir. 1995) (monopoly power may be proven directly); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 88**
**MONOPOLIZATION — ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING**

**Apple's Proposed Instruction**

Apple alleges that Samsung willfully acquired monopoly power based on anticompetitive behavior in connection with the UMTS standard-setting process at 3GPP. Apple and Samsung agree that Samsung was obligated to abide by the ETSI IPR Policy when participating in standard-setting activities related to the UMTS standard.

Based on the available information, a standard-setting organization can select the best technology (considering its cost and its performance) and can include that technology in the standard. To the extent the industry has invested in a standard and cannot easily transfer that investment to an alternative standard, the process of standardization may eliminate alternative technologies. When a patented technology is incorporated into such a standard, adoption of the standard may eliminate alternatives to the patented technology.

As to Apple's claims that Samsung failed to timely disclose IPR (including patents and patent applications) that may cover technology being considered for inclusion in the UMTS standard, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if: (1) the ETSI IPR Policy created an expectation that participants would timely disclose IPR that reasonably might cover technology being considered for adoption in the UMTS standard; (2) Samsung knowingly failed to disclose such IPR in a timely fashion; (3) 3GPP relied on the requirement that Samsung would timely disclose such IPR when 3GPP created the UMTS standard; and (4) Samsung later attempted to enforce such IPR against a standard-compliant product.

As to Apple's claims that during the standard-setting process Samsung concealed its true intentions not to meet the commitment it had made to license its declared-essential IPR on fair, reasonable, and non-discriminatory ("FRAND") terms, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if: (1) the ETSI IPR Policy created an expectation that participants would truthfully disclose their intentions whether or not to license their declared-essential IPR on FRAND terms; (2) Samsung knowingly concealed its true intentions; (3) 3GPP relied on the requirement that Samsung would truthfully disclose its intentions whether or not license its declared-essential IPR on FRAND terms when 3GPP adopted the UMTS standard; and (4) Samsung later attempted to enforce such IPR against a standard-compliant product in a manner inconsistent with its FRAND commitments.

In determining whether Apple has proved that Samsung willfully acquired monopoly power, you may consider Samsung's course of conduct as a whole and its overall effect, rather than focusing on a particular aspect of Samsung's disclosure or licensing conduct in isolation.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 89
MONOPOLIZATION — SAMSUNG'S INTENT**

3

**Apple's Proposed Instruction**

4

5

In determining whether or not Samsung willfully acquired monopoly power in a relevant technology market, you may consider any evidence that Samsung intended to deceive ETSI to the extent it helps to understand the likely effect of Samsung's conduct.  Specific intent to monopolize, however, is not required for one to be liable for monopolization; only the intent to commit the acts that resulted in monopolization.

6

**Source**

7

8

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

9

**Authorities**

10

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 US 585, 602 (1985).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 90**
**MONOPOLIZATION — INTERSTATE CONDUCT**

**Apple's Proposed Instruction**

The federal antitrust laws apply only to conduct that affects interstate commerce.  In this case, there is no dispute that Samsung's conduct affected interstate commerce.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

1

**PROPOSED FINAL JURY INSTRUCTION NO. 91**
**MONOPOLIZATION — INJURY AND DAMAGES**

2

**Apple's Proposed Instruction**

3

4

If you find that Samsung has violated the federal antitrust laws as alleged by Apple, you must then decide if Apple is entitled to recover damages from Samsung.

5

Apple is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

6

7

**First**, Apple must prove that it was in fact injured as a result of Samsung's alleged violation of the antitrust laws.

8

9

10

**Second**, Apple must prove that Samsung's alleged illegal conduct was a material cause of Apple's injury. This means that Apple must prove that some damages occurred as a result of Samsung's alleged antitrust violation, and not some other cause. Apple is not required to prove that Samsung's alleged antitrust violation was the sole cause of its injury; nor need Apple eliminate all other possible causes of injury.

11

12

13

14

15

**Third**, Apple must prove that its injury is the type of injury that the antitrust laws were intended to prevent. If Apple's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then Apple's injury is an "antitrust injury." The costs and expenses in defending against the assertion of declared-essential patents may be antitrust injury. On the other hand, if Apple's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Apple's injuries are not antitrust injuries and Apple may not recover damages for those injuries under the antitrust laws.

16

17

18

If you find that Apple has suffered injury to its business or property, you must determine whether Apple has proven that it is entitled to damages for such injury. The amount of any such damages is the amount of damages that Apple has proven at trial with reasonable certainty.

**Source**

19

20

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

21

**Authorities**

22

23

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5141861, at *4 (N.D. Cal. Dec. 13, 2010).

24

25

26

27

28