[COUNSEL LISTED ON SIGNATURE PAGES]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**CORRECTED JOINT PROPOSED DISPUTED JURY INSTRUCTION NO. 69**<br><br>Date:     July 24, 2012<br>Time:     1:30 pm<br>Place:    Courtroom 1, 5th Floor<br>Judge:    Hon. Lucy H. Koh |

**PROPOSED FINAL JURY INSTRUCTION NO. 69
TRADE DRESS INFRINGEMENT—LIKELIHOOD OF CONFUSION—SLEEKCRAFT
TEST (15 U.S.C. §§ 1114(1), 1125(A))**

**Apple's Proposed Instruction**

You must decide whether Samsung's use of its accused products is likely to cause confusion about the source, sponsorship, or approval of Samsung's tablet computer products. Confusion in the marketplace can occur at three distinct times: Confusion in the marketplace can occur at three distinct times: before the purchase (also called "initial interest" confusion), at the moment of the purchase (also called "point of sale" confusion), and after the purchase (also called "post-sale" confusion).

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor should not necessarily resolve whether there was a likelihood of confusion. You must consider all relevant evidence in determining this. As you consider the likelihood of confusion, you should examine the following:

1. **Strength or Weakness of Apple's Trade Dress**. The more the public recognizes Apple's trade dress as indicating the origin of Apple's goods, the more likely it is that consumers would be confused about the source of Samsung's goods with a similar appearance.

2. **Samsung's Use of the Accused Designs**. If Samsung's accused products and the products that embody Apple's asserted trade dresses are the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source of the goods.

3. **Similarity of Apple's and Samsung's Trade Dress**. If the overall impression created by Apple's trade dress in the marketplace is similar to the impression created by the appearance of Samsung's accused products, there is a greater chance of likelihood of confusion. Similarities in appearance weigh more heavily than differences in finding the trade dress is similar.

4. **Actual Confusion**. If the appearance of Samsung's accused products has led to actual confusion with the products that embody Apple's asserted trade dresses, this strongly suggests a likelihood of confusion. But actual confusion is not required. You should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few instances of actual confusion, you may find there has not been substantial actual confusion.

5. **Samsung's Intent**. Knowing use by Samsung of a design similar to Apple's trade dress on similar goods may strongly show an intent to derive benefit from the reputation of Apple's trade dress, suggesting an intent to cause a likelihood of confusion.

6. **Marketing/Advertising Channels**. If Apple's and Samsung's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7. **Consumer's Degree of Care**. The more sophisticated the potential consumers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent consumer exercising ordinary caution may be. They may be

less likely to be confused by similarities in Apple's and Samsung's trade dress. When considering this factor, please keep in mind that the application of discrimination and scrutiny by a consumer to financial terms such as data plans does not necessarily equate to discrimination and scrutiny regarding product appearance.

**Source**

Ninth Circuit Model Civil Jury Instr. - 15.16 (2007 Ed.).

**Authorities**

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (setting out likelihood of confusion factors); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030-31 (9th Cir. 2010) (applying *Sleekcraft* test); *Metro Pub. v San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("Because each factor is not necessarily relevant to every case, this list [of likelihood of confusion factors] functions as a guide and is 'neither exhaustive nor exclusive.'"); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032 (9th Cir. 2010); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.* 944 F.2d 1446, 1455 (9th Cir. 1991).

## **Samsung's Objection to Apple's Instruction**

Apple's proposed instruction gives a misleading impression of what the jury should consider in evaluating the likelihood of confusion factors.  First, in paragraph 3, Apple adds language not dictated by the Ninth Circuit Model Rules: "Similarities in appearance weigh more heavily than differences in finding the trade dress is similar."  The optional Ninth Circuit language Apple modified is about trademarks, not trade dress: "Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar."  Modifying that language as Apple has done for use in a product configuration case, where functionality concerns, at a minimum, significantly influence the appearance of the products is not appropriate and would unfairly prejudice Samsung.  *E.g., Motorola Inc. v. Qualcomm Inc.,* 45 U.S.P.Q.2d 1558 (S.D. Cal. 1997), aff'd without op., 135 F.3d 776 (Fed. Cir. 1998) ("While [defendant's] phone has many of the same features as [plaintiff's phone], many of these features are functional and the two phones are sufficiently distinct."); *OddzOn Products, Inc. v. Just Toys, Inc*., 122 F.3d 1396 (Fed. Cir. 1997) (the mistaken association in the survey of plaintiff's and defendant's products in a line-up including three additional products that lacked the functional attributes of the two conflicting products "is not probative of trade dress infringement").  Second, Apple's instruction regarding intent similarly ignores justifiable reasons that a plaintiff's product configuration could be known and used by defendants without intent to deceive such as to use "wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits."  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 844-845 (9th Cir. 1987); *see also Walker & Zanger, Inc. v. Paragon Indus., Inc.,* 549 F. Supp. 2d 1168, 1181 (N. D. Cal. 2007) (found no secondary meaning because competitors may intentionally copy product features for a variety of reasons); *Libman Co. v. Vining Industries, Inc*., 69 F. 3d 1360, 1363 (7th Cir. 1995) ("Vining noticed that Libman's brooms were selling briskly, inferred that consumers like brooms with contrasting color bands, and decided to climb on the bandwagon. We call that competition, not bad faith, provided there is no intention to confuse, and, so far as appears, there was none."). 4 McCarthy §§ 8:19, 23:122 at 23-377 (2012 ed.) ("If all that happens is that a junior user copies a competitor's trade dress design because it sells better and consumers seem to like it, then this is not evidence of an intent to confuse.").  Third, in Paragraph 7, Apple introduces an additional instruction: "When considering this factor, please keep in mind that the application of discrimination and scrutiny by a consumer to financial terms such as data plans does not necessarily equate to discrimination and scrutiny regarding product appearance."  The

1  Ninth Circuit Model Jury Instructions does not include the any language along those lines. Nor
2  does Apple cite any authority supporting the addition of language that restricts consideration of
   actual market place conditions. This is because market place conditions, i.e., "what consumers
   'encounter[] in the marketplace,'" are the core assessment of the likelihood of confusion.
3  *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir.
   2011); see also id. at 1152 ("the default degree of consumer care is becoming more heightened as
4  the novelty of the Internet evaporates and online commerce becomes commonplace") (citing
   *Toyota Motor Sales v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ("Consumers who use the internet
5  for shopping are generally quite sophisticated about such matters.")); *Brookfield
   Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999) ("What
6  is expected of this reasonably prudent consumer depends on the circumstances."); *see also Beer
   Nuts v. Clover Club Foods Co.*, 805 F.2d 920, 926-27 (10th Cir. 1986) ("[T]he court must
7  examine the degree of care with which the public will choose the products in the marketplace. . . .
   Buyers typically exercise little care in the selection of inexpensive items [such as peanuts] that
8  may be purchased on impulse. Despite a lower degree of similarity, these items are more likely to
   be confused than expensive items which are chosen carefully."). Fourth, Apple's instruction fails
9  to identify that Apple bears the burden of proving likelihood of confusion. Fifth, Apple
   introduces a theory of trade dress infringement based on initial interest confusion for the first
10 time. This new theory was never pled in Apple's complaint, never provided in iterations of
   Apple's infringement contentions, and not pursued during discovery, and thus should be excluded
11 from trial. Fed.R.Civ.P. 26(a), 37(c)(1); *See Accentra Inc. v. Staples, Inc.*, No. CV 07-5862 ABC
   (RZx), 2010 WL 8450890, *23 (C.D. Cal. Sept. 22, 2010) (granting the defendant's motion in
12 limine excluding a new induced infringement theory introduced for the first time in the plaintiff's
   proposed jury instructions). Further, Apple's instruction is misleading and unfairly prejudicial
13 because it improperly injects the concepts of "initial interest confusion," "point-of-sale
   confusion" and "post-sale confusion" into the pivotal instruction on consumer confusion. Apple
14 has deviated from the Ninth Circuit Model Instruction No. 15.16 by abruptly introducing these
   concepts (which do not appear in the model instruction) without any explanation or context. The
15 jury will be confused by the way Apple's instruction identifies these distinct theories of consumer
   confusion, but fails to explain how, if at all, they apply to this case. Nor does this instruction
16 describe Apple's considerable burden with respect to proving each of these forms of confusion,
   particularly given their inapplicability to the facts of this case:
17

18 - First, Apple's instruction is improper because it misleadingly implies that the jury may
     find liability for trade dress infringement based solely of a finding of "confusion" at any
     point before, during or after the sale of a Samsung tablet without also finding that the
19   confusion affected a purchase decision. This is not the law. Ninth Circuit holds that
     consumer confusion in general is not actionable; only consumer confusion that affects a
20   purchasing decision is sufficient to prove trade dress infringement. *See Rearden LLC v.
     Rearden Commerce, Inc.*__ F.3d ___, 2012 WL 2402012, *19 (9th Cir. June 27, 2012)
21   ("[t]rademark infringement protects only against mistaken purchasing decisions and not
     against confusion generally.") (quoting *Bosley Med. Ins., Inc. v. Kremer*, 403 F.3d 673,
22   677 (9th Cir. 2005); *see also Lang v. Retirement Living Pub. Co., Inc.*, 949 F. 2d 576,
     582-83 (2d Cir, 1991) ("[T]rademark infringement protects only against mistaken
23   purchasing decisions and not against confusion generally"); *Elvis Presley Enterprises Inc.
     v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998) ("Initial-interest confusion gives the junior
24   user credibility during the early stages of a transaction and ***can possibly bar the senior
     user from consideration by the consumer once the confusion is dissipated***") (emphasis
25   added); *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 638 (7th Cir.
     1999) ("Such "bait and switch," also known as "initial interest" confusion, will affect the
26   buying decisions of the consumers when it permits the competitor to "get its foot in the
     door" by confusing the consumers.); *HRL Associates, Inc. v. Weiss Associates, Inc*., 12
27   U.S.P.Q.2d 1819, 1989 WL 274391 (T.T.A.B. 1989), aff'd on other grounds, 902 F.2d
     1546, 14 U.S.P.Q.2d 1840 (Fed. Cir. 1990) (Initial interest confusion is actionable under
28   Lanham Act § 2(d) in PTO inter partes proceedings. A senior user/opposer may suffer

injury "if a potential purchaser is initially confused between the parties respective marks in that *opposer may be precluded from further consideration by the potential purchaser in reaching his or her buying decision*.") (emphasis added).

- Second, Apple's instruction is improper because it identifies "initial interest" confusion as an available form of consumer confusion, ignoring that the doctrine has been rejected in the context of product configuration.  *See, e.g., Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539 (6th Cir. 2005) ("Given severe anti-competitive effects such a decision could have, we do not believe it is appropriate to extend the initial-interest-confusion doctrine in this manner."); *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796 (7th Cir. 2002) (rejecting non-point-of-sale confusion involving grille shape of expensive jeep); *Dorr-Oliver*, 94 F.3d 376, 383 (7th Cir. 1996) (rejecting plaintiff's theory of initial interest confusion and stating that "where product configurations are at issue, consumers are generally more likely to think that a competitor has entered the market with a similar product assume that the two manufactures are associated…"); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193 (1st Cir. 1980) (rejecting pre-sale confusion claim involving the silhouette of a high-price wood burning stove because no likelihood of confusion when the manufacturer's name is clearly displayed).  Given that consumers "almost invariably" do not perceive product configurations as indicators of source, *see Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 213 (2000), the initial interest confusion should not be applied here.

- Third, Apple's proposed instruction is improper because initial interest confusion requires a finding that reasonable consumers are likely to go to a store or a website with the intention of purchasing an iPad and mistakenly assume that a Samsung tablet computer is an iPad and then, even once their initial assumption is corrected, decide to purchase the Samsung tablet computer because it would be too much effort to locate an iPad instead.  *Brookfield Communications, Inc. v. West Coast Entm't*, 174 F.3d 1036, 1066 (9th Cir. 1999) ("Suppose West Coast's competitor (let's call it "Blockbuster") puts up a billboard on a highway reading—"West Coast Video: 2 miles ahead at Exit 7" —where West Coast is really located at Exit 8 but Blockbuster is located at Exit 7. Customers looking for West Coast's store will pull off at Exit 7 and drive around looking for it. Unable to locate West Coast, but seeing the Blockbuster store right by the highway entrance, they may simply rent there. Even consumers who prefer West Coast may find it not worth the trouble to continue searching for West Coast since there is a Blockbuster right there. Customers are not confused in the narrow sense: they are fully aware that they are purchasing from Blockbuster and they have no reason to believe that Blockbuster is related to, or in any way sponsored by, West Coast.").  And in *Nissan Motor Co. v. Nissan Computer Corp.* 378 F.3d 1002, 1019 (9th Cir 2004), the Ninth Circuit specifically limited its finding liability for initial interest confusion to only instances in which the use conferred a direct financial benefit on defendant.  Although the continued viability of even that limited holding of liability is questionable after *Network Automation, Inc. v. Advanced Systems Concepts, Inc.,* 638 F. 3d 1137 (9th Cir. 2011), it remains instructive that even there, the requirement of direct financial benefit to the defendant was required to impose liability.  Apple has never identified any such evidence tied to "initial interest confusion," and its instruction assumes Apple need not prove any damage to itself nor direct benefit to Samsung.

- Fourth, Apple's instruction on initial interest confusion is also improper because initial interest confusion in the 9th Circuit has been limited almost exclusively to the misleading use of trademarks in the Internet context.  *See Brookfield Commc'ns v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) (applied to domain name and website metatags); *Playboy Enter., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020 (9th Cir. 2004) (applied to keywords in banner advertising); *Internet Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107 (9th Cir. 1999) (applied to domain name); *Playboy Enterprises, Inc. v. Netscape*

1       *Communications Corp.*, 55 F.Supp.2d 1070, 1074 (C.D. Cal. 1999) (initial interest
    confusion is "brand of confusion particularly applicable to the Internet." ); *Golden West*
2       *Financial v. WMA Mortg. Services, Inc.*, 2003 WL 1343019 at *7 (N.D. Cal. 2003)
    (noting that "Brookfield has marginal application to this case which does not focus
3       primarily on the Internet user"); *Shell Trademark Management BV*, 2002 WL 32104586 at
    *1 (N.D. Cal. May 21, 2002) ("[T]he evolving doctrine of infringement by initial interest
4       confusion, applied primarily in the Internet context").

5   ▪  Fifth, Apple's inclusion of an instruction on post-sale confusion is also improper because
    Apple does not maintain that it has sustained reputational injury, which is precisely the
6       harm post-sale confusion seeks to address. *See Karl Storz Endoscopy v. Surgical Tech,*
    *Inc.*, 285 F.3d 848, 854 (9th Cir. 2002 (post-sale confusion results in reputational injury);
7       *adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1058 (D. Or.
    2008) (adidas proffered evidence that post-sale confusion "negatively impact consumer
8       perceptions of the adidas brand as a source of quality footwear" given the "inferior
    quality" of Payless' shoes).  Moreover, it is a bedrock principle of trademark law that all
9       forms of confusion—initial interest, point of sale and post-sale—require a showing that
    the alleged confusion affect purchase decisions. *See Rearden LLC v. Rearden Commerce,*
10      *Inc.*,__ F.3d ___, 2012 WL 2402012, *19  (9th Cir. June 27, 2012) ("Trademark
    infringement protects only against mistaken purchasing decisions and not against
11      confusion generally.") (quoting *Bosley Med. Ins., Inc. v. Kremer*, 403 F.3d 673, 677 (9th
    Cir. 2005); *Lang v. Retirement Living Pub. Co., Inc.*, 949 F. 2d 576, 582-83 (2d Cir, 1991)
12      ("[T]rademark infringement protects only against mistaken purchasing decisions and not
    against confusion generally"). Indeed, in *Karl Storz*, the potential for post-sale confusion
13      involved the surgeons who used the devices at issue and who were in position to "affect [a
    hospital's] purchasing decisions." 285 F.2d at 855.  The requirement that the identified
14      confusion impact purchasing decisions is critical; without it post-sale confusion becomes
    trademark dilution absent the statutory requirements of fame and willfulness.  Apple is not
15      pursuing dilution by tarnishment (i.e.—injury to its reputation), see Apple's Response to
    Interrogatory No. 70 (omitting dilution by tarnishment as a basis for claimed dilution) nor
16      has its damages expert opined on or attempted to quantify a diminution in value to the
    trade dresses asserted, see Expert Report of Terry L Musika.  In addition, Apple has not
17      identified any authority for the application of post-sale confusion arising in the product
    configuration context, and the cases that Apple does cites in support of its instruction are
18      highly distinguishable—one involving confusion arising from the sale of a statuette
    designed to mimic the famous Oscar statue and the other involving the use of plaintiffs
19      trademark printed on a tee-shirt.  Neither of these cases is even remotely similar to the
    facts here where the trade dress at issue is embodied in the product design and where there
20      is no evidence that the sale harms Apple's reputation.

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**[1]

You must decide whether Samsung's use of its accused products is likely to cause confusion about the source of Samsung's tablet computers.  Apple alleges consumer confusion has occurred or is likely to occur at three times:  before the purchase (called "initial interest" confusion), at the moment of the purchase (called "point of sale" confusion), and after the purchase (called "post-sale" confusion).

To establish any of these types of confusion, Apple must prove by a preponderance of the evidence that any such consumer confusion affected consumers' decisions to purchase tablet computers.

In addition, to establish initial interest confusion, Apple must prove by a preponderance of the evidence that consumers are likely to go to a store or a website with the intention of purchasing an iPad and mistakenly assume that a Samsung tablet computer is an iPad and then, even after their initial assumption is corrected, decide to purchase the Samsung tablet computer because it would be too much effort to locate an iPad instead.

In addition, to establish point of sale confusion, Apple must prove by a preponderance of the evidence that consumers are likely to purchase a Samsung tablet falsely believing it to be an iPad.

In addition, to establish post-sale confusion, Apple must prove by a preponderance of the evidence that consumers are likely to incorrectly believe that a Samsung tablet is an iPad after it has been purchased and that this consumer confusion has caused consumers not to purchase an iPad and caused injury to Apple's reputation.

I will suggest some factors you should consider in deciding whether there is a likelihood of consumer confusion based on Apple's alleged iPad trade dress or alleged iPad 2 trade dress.  The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this.

    1.    Strength or Weakness of the Plaintiff's Trade Dress. The more the consuming public recognizes the plaintiff's trade dress as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses a similar trade dress.

    2.    Defendant's Use of the Trade Dress. If the defendant and plaintiff use their trade dress on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

    3.    Similarity of Plaintiff's and Defendant's Trade Dress.  If the overall impression created by the plaintiff's trade dress in the marketplace is similar to that created by the defendant's trademark in appearance there is a greater chance of likelihood of confusion.

    4.    Actual Confusion.  If use by the defendant of the plaintiff's trade dress has led to a significant number of instances of actual confusion, this suggests a likelihood of confusion.  As you consider whether the trade dress used by the defendant creates for consumers a likelihood of

---

[1] Samsung objects to informing the jury about the various theories of consumer confusion for the reasons set forth in Samsung's Objection To Apple's Jury Instruction No. 69 ("TRADE DRESS INFRINGEMENT—LIKELIHOOD OF CONFUSION—SLEEKCRAFT TEST"). However, in the event the Court chooses to educate the jury on the different forms of confusion, Samsung proposes this instruction.

1   confusion with the plaintiff's trade dress, you should weigh any instances of actual confusion
    against the opportunities for such confusion. If the instances of actual confusion have been
2   relatively frequent, you may find that there has been substantial actual confusion. If, by contrast,
    there is a very large volume of sales, but only a few isolated instances of actual confusion you
3   may find that there has not been substantial actual confusion.

4       5.     Defendant's Intent. If the defendant adopted trade dress similar to the plaintiff's
        with the intent to deceive consumers, this increases the likelihood of consumer confusion.

5

6       6.     Marketing/Advertising Channels. If the plaintiff's and defendant's products are
        likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may
        increase the likelihood of confusion.

7

8       7.     Consumer's Degree of Care. The more sophisticated the potential buyers of the
        goods or the more costly the goods, the more careful and discriminating the reasonably prudent
        purchaser exercising ordinary caution may be. They may be less likely to be confused by
9       similarities in the plaintiff's and defendant's trade dresses.

10  **Source**

11  Ninth Circuit Model Instructions No. 15.16 (modified); *Art Attacks, LLC. v. MGA Entertainment
    Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009) ("To prove trade dress infringement, a plaintiff must
12  demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary
    meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and
13  defendant's products"); *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F. 3d
    1137, 1144 (9th Cir. 2011) ("[W]e must apply the *Sleekcraft* test in a flexible manner, keeping in
14  mind that the eight factors it recited are not exhaustive, and that only some of them are relevant
    to determining whether confusion is likely in the case at hand."); *Brookfield Communications,
15  Inc. v. West Coast Entm't*, 174 F.3d 1036, 1066 (9th Cir. 1999) ("Suppose West Coast's
    competitor (let's call it "Blockbuster") puts up a billboard on a highway reading—"West Coast
16  Video: 2 miles ahead at Exit 7" —where West Coast is really located at Exit 8 but Blockbuster is
    located at Exit 7. Customers looking for West Coast's store will pull off at Exit 7 and drive
17  around looking for it. Unable to locate West Coast, but seeing the Blockbuster store right by the
    highway entrance, they may simply rent there. Even consumers who prefer West Coast may find
18  it not worth the trouble to continue searching for West Coast since there is a Blockbuster right
    there. Customers are not confused in the narrow sense: they are fully aware that they are
19  purchasing from Blockbuster and they have no reason to believe that Blockbuster is related to, or
    in any way sponsored by, West Coast."); *Rearden LLC v. Rearden Commerce, Inc.*,__ F.3d ___,
20  2012 WL 2402012, *19  (9th Cir. June 27, 2012) ("Trademark infringement protects only against
    mistaken purchasing decisions and not against confusion generally.") (quoting *Bosley Med. Ins.,
21  Inc. v. Kremer*, 403 F.3d 673, 677 (9th Cir. 2005); *Bosley Med. Inst., Inc. v. Kremer*, 403 F. 3d
    673, 677 (9th Cir. 2005) (post sale confusion results when product is viewed by a third party
22  subsequent to purchase); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000)
    (consumers "almost invariably" do not perceive product configurations as indicators of source);
23  *Karl Storz Endoscopy-America v. Surgical Tech.*, 285 F. 3d 848, 854 (9th Cir. 2002) (injury from
    post sale confusion is reputational).

24

25  **Apple's Objection to Samsung's Instruction**

26  Samsung's Proposed Instruction No. 69 mischaracterizes Apple's position and the law in the
    Ninth Circuit. **First**, Samsung states that "Apple alleges consumer confusion has occurred or is
27  likely to occur at three times[.]" The types of confusion to which Apple cites are not separate or
    new theories. Apple alleges a *likelihood of confusion*, and its proposed instruction simply
28  informs the jury—accurately and without argument or bias—that it may consider three different

timeframes when assessing whether Samsung's products are likely to cause confusion: (i) before the purchase, (ii) at the moment of purchase, and (iii) after the purchase. *See, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1032 (9th Cir. 2010) (considering "post-purchase confusion" when analyzing "similarity of marks" prong of *Sleekcraft* test); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018 (9th Cir. 2004) (likelihood of confusion, including initial interest confusion, analyzed under *Sleekcraft* test); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002) (post-purchase confusion can establish required likelihood of confusion under Lanham Act); *see also* Apple's Proposed Instruction No. 69 and cited authorities therein. **Second**, Samsung creates out of whole cloth additional burdens that do not exist in the law by misleadingly citing facts from particular cases, and incorrectly suggesting that *only* those facts could support such a claim.

- With regard to <u>initial interest confusion</u>, courts in the Ninth Circuit apply the doctrine to product configuration cases. *See, e.g., Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1058 (D. Or. 2008) (holding in product design case that "[i]nitial-interest and post-sale confusion are well established forms of confusion"). Courts do *not* require that consumers "mistakenly assume that a Samsung tablet computer is an iPad and then . . . decide to purchase the Samsung tablet computer . . . ." Samsung's only cited support is *Brookfield Comm's., Inc. v. West Coast Entm't*, 174 F. 3d 1036, 1066 (9th Cir. 1999), but Samsung quotes an *example* of initial interest confusion from that case, *not a standard that Apple must meet*. *Brookfield* agrees with other Ninth Circuit case law (and with Apple), that initial interest confusion is actionable even if "no actual sale is finally completed as a result of the confusion." *Nissan Motor Co.*, 378 F.3d at 1018; *see also*, *Brookfield*, 174 F.3d at 1062.

- With regard to <u>point of sale confusion</u>, Samsung's instruction wrongly maintains that the jury must decide whether Samsung's sale of accused products is likely to cause confusion "about the source" of Samsung's tablet computers. But the Lanham Act addresses likelihood of confusion as to "origin, sponsorship, or approval." *See, e.g.*, 15 U.S.C. § 1125(a).

- With regard to <u>post-sale confusion</u>, Samsung incorrectly states that Apple must prove "consumers are likely to incorrectly believe that a Samsung tablet is an iPad after it has been purchased and that this consumer confusion has caused consumers not to purchase an iPad and caused injury to Apple's reputation." This has no basis in the law. Samsung's only cited support is *Karl Storz Endoscopy*, 285 F.3d at 854, but this is again a misleading citation to the court's comment on the facts of that case—*not* a standard that Apple must meet. The *Karl Storz* decision simply recognized that "[p]ost-sale confusion . . . may be no less injurious to the trademark owner's reputation than confusion on the part of the purchaser at the time of sale." *Id.* at 854. Neither it nor any other Ninth Circuit case held that a plaintiff must prove reputational harm in order to render post-sale likelihood of confusion actionable. *See Fortune Dynamic*, 618 F.3d at 1032 (noting that "possibility of post-purchase confusion . . . can establish the required likelihood of confusion under the Lanham Act" with no discussion of reputational harm); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1139 (9th Cir. 2010) (discussing post-purchase confusion and rejecting argument "that there is no trademark infringement because [defendant's products] are of high quality").

- Samsung's further claim that <u>initial interest and post-sale confusion</u> are only actionable if they lead to a mistaken purchasing decision—either mistakenly purchasing a Samsung tablet (initial interest) or mistakenly *not* purchasing an iPad (post-sale confusion)—is also incorrect. Samsung cites *Rearden LLC v.*

*Rearden Commerce, Inc.*, 2012 U.S. App. LEXIS 13152, at *60 (9th Cir. 2012), but *Rearden* did not involve initial-interest or post-sale confusion, and did not limit the court's prior jurisprudence in those areas.  In fact, *Rearden* only mentions post-purchase confusion to support the proposition that even *non-consumer* confusion can bear on the likelihood of confusion.  2012 U.S. App. LEXIS 13152, at *66.  Ninth Circuit cases discussing initial interest and post-sale confusion make clear that *no* showing of a mistaken purchase is necessary.  *See Nissan Motor Co.* 378 F.3d at 1018 ("Initial interest confusion occurs when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, *even though no actual sale is finally completed* as a result of the confusion.") (emphasis added) (internal citations omitted); *Karl Storz Endoscopy-Am., Inc.*, 285 F.3d at 854 ("The law in the Ninth Circuit is clear that 'post-purchase confusion,' *i.e.*, confusion on the part of someone other than the purchaser who, for example, *simply sees the item after it has been purchased*, can establish the required likelihood of confusion under the Lanham Act.") (emphasis added).

**Third**, with no support, Samsung adds the vague term "significant" to the "actual confusion" prong of the *Sleekcraft* test.  The term "significant" does not appear in the Ninth Circuit model on which Samsung's instruction is based, or in *Sleekcraft*.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir. 1979).  In fact, as to the actual confusion factor, while "significant" amounts of actual confusion may suggest likelihood of confusion, courts have noted that actual confusion can be difficult to find, and that "very little proof" of actual confusion still suggests likelihood of confusion.  *See Citibank, N.A. v. City Bank of San Francisco*, No. C-79-1922, 1980 WL 30239, at *1009 (N.D. Cal. Mar. 23, 1980) ("Very little proof of actual confusion would be necessary to prove likelihood of confusion."); *Metro Publ'g, Inc. v. Surfmet, Inc.*, No. C-02-01833, 2002 U.S. Dist. LEXIS 26232, at *25 (N.D. Cal. July 3, 2002) (evidence of actual confusion "strongly support[ed]" finding of likelihood of confusion).  Samsung also omits that actual confusion "strongly" suggests, but is not required, for a finding of likelihood of confusion. *Clamp Mfg. Co. v. Enco Mfg. Co.*, No. CV-82-4352, 1987 U.S. Dist. LEXIS 13427, at *12-13 (C.D. Cal. Aug. 10, 1987).  **Fourth**, Samsung also omits the important language that similarities in appearance weigh more heavily than differences.  *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002) (that "[s]imilarities weigh more heavily than differences" is one of three axioms of similarity analysis).  **Finally**, Samsung alters the meaning of the "intent" prong by asserting that only "intent to deceive" is relevant.  The Ninth Circuit does not require that Apple prove "intent to deceive." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) (knowing adoption of mark similar to another's relevant to "intent").

1    Dated: July 18, 2012                  HAROLD J. MCELHINNY (CA SBN 66781)
                                           hmcelhinny@mofo.com
2                                          MICHAEL A. JACOBS (CA SBN 111664)
                                           mjacobs@mofo.com
3                                          JENNIFER LEE TAYLOR (CA SBN 161368)
                                           jtaylor@mofo.com
4                                          ALISON M. TUCHER (CA SBN 171363)
                                           atucher@mofo.com
5                                          RICHARD S.J. HUNG (CA SBN 197425)
                                           rhung@mofo.com
6                                          JASON R. BARTLETT (CA SBN 214530)
                                           jasonbartlett@mofo.com
7                                          MORRISON & FOERSTER LLP
                                           425 Market Street
8                                          San Francisco, California  94105-2482
                                           Telephone:  (415) 268-7000
9                                          Facsimile:  (415) 268-7522

10                                         WILLIAM F. LEE
                                           william.lee@wilmerhale.com
11                                         WILMER CUTLER PICKERING
                                           HALE AND DORR LLP
12                                         60 State Street
                                           Boston, MA 02109
13                                         Telephone: (617) 526-6000
                                           Facsimile: (617) 526-5000
14
                                           MARK D. SELWYN (SBN 244180)
15                                         mark.selwyn@wilmerhale.com
                                           WILMER CUTLER PICKERING
16                                         HALE AND DORR LLP
                                           950 Page Mill Road
17                                         Palo Alto, California 94304
                                           Telephone: (650) 858-6000
18                                         Facsimile: (650) 858-6100

19

20                                         By:    *Michael A. Jacobs*
                                                  Michael A. Jacobs
21
                                                  Attorneys for Plaintiff and Counterclaim-
22                                                Defendant
                                                  APPLE INC.
23

24

25

26

27

28

CORRECTED JOINT PROPOSED DISPUTED JURY INSTRUCTION NO. 69
Case No. 11-cv-01846-LHK (PSG)
pa-1542084

10

1  Dated: July 18, 2012

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

2

Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com

3

50 California Street, 22nd Floor
San Francisco, California 94111

4

Telephone: (415) 875-6600
Facsimile: (415) 875-6700

5

6

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com

Victoria F. Maroulis (Cal. Bar No. 202603)

7

victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor

8

Redwood Shores, California 94065
Telephone: (650) 801-5000

9

Facsimile: (650) 801-5100

10

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com

11

865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

12

Telephone: (213) 443-3000
Facsimile: (213) 443-3100

13

14

By:  *Victoria Maroulis*

15

Victoria Maroulis

16

Attorneys for Defendants and
Counterclaim-Plaintiffs

17

SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS

18

AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS

19

AMERICA, LLC

20

21

22

23

24

25

26

27

28

1

**ATTESTATION OF E-FILED SIGNATURE**

2          I, Michael A. Jacobs , am the ECF User whose ID and password are being used to file this

3   Declaration.  In compliance with General Order 45, X.B., I hereby attest that Victoria Maroulis

4   has concurred in this filing.

5   Dated:  July 18, 2012                    _____/s/ *Michael A. Jacobs*_____

6                                                               Michael A. Jacobs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28