1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4

5

       APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6      CORPORATION,                  )
                                     )  SAN JOSE, CALIFORNIA
7                    PLAINTIFF,      )
                                     )  JULY 18, 2012
8             VS.                    )
                                     )  PAGES 1-146
9      SAMSUNG ELECTRONICS CO.,      )
       LTD., A KOREAN BUSINESS       )
10     ENTITY; SAMSUNG               )
       ELECTRONICS AMERICA,          )
11     INC., A NEW YORK              )
       CORPORATION; SAMSUNG          )
12     TELECOMMUNICATIONS            )
       AMERICA, LLC, A DELAWARE      )
13     LIMITED LIABILITY             )
       COMPANY,                      )
14                                   )
                     DEFENDANTS.     )
15     _____

16               TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE LUCY H. KOH
17              UNITED STATES DISTRICT JUDGE

18

19

20             APPEARANCES ON NEXT PAGE

21

22

23

24     OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                       CERTIFICATE NUMBER 9595
25

```
 1

 2     A P P E A R A N C E S:

 3     FOR PLAINTIFF          MORRISON & FOERSTER
       APPLE:                 BY:  HAROLD J. MCELHINNY,
 4                                 MICHAEL A. JACOBS,
                                   RACHEL KREVANS
 5                            425 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94105
 6

 7     FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
       APPLE:                 HALE AND DORR
 8                            BY:  WILLIAM F. LEE
                              60 STATE STREET
 9                            BOSTON, MASSACHUSETTS  02109

10                            BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
11                            PALO ALTO, CALIFORNIA  94304

12     FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                              OLIVER & HEDGES
13                            BY:  CHARLES K. VERHOEVEN
                              50 CALIFORNIA STREET, 22ND FLOOR
14                            SAN FRANCISCO, CALIFORNIA  94111

15                            BY:  VICTORIA F. MAROULIS,
                                   KEVIN P.B. JOHNSON
16                            555 TWIN DOLPHIN DRIVE
                              SUITE 560
17                            REDWOOD SHORES, CALIFORNIA  94065

18                            BY:  MICHAEL T. ZELLER,
                                   WILLIAM C. PRICE
19                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
20                            LOS ANGELES, CALIFORNIA  90017

21     FOR INTERVENOR         RAM, OLSON,
       REUTERS:               CEREGHINO & KOPCZYNSKI
22                            BY:  KARL OLSON
                              555 MONTGOMERY STREET, SUITE 820
23                            SAN FRANCISCO, CALIFORNIA  94111

24

25
```

```
 1    SAN JOSE, CALIFORNIA              JULY 18, 2012
 2                P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5              THE CLERK:  CALLING CASE NUMBER
 6    C-11-01846 LHK, APPLE INCORPORATED VERSUS SAMSUNG
 7    ELECTRONICS COMPANY LIMITED, ET AL.
 8              (PAUSE IN PROCEEDINGS.)
 9              MR. MCELHINNY:  GOOD AFTERNOON, YOUR
10    HONOR.  HAROLD MCELHINNY AND MICHAEL JACOBS ON
11    BEHALF OF APPLE.  AND I WOULD ALSO LIKE TO
12    INTRODUCE MY PARTNER, RACHEL KREVANS, WHO WILL BE
13    JOINING US IN PART OF THE TRIAL.
14              MS. KREVANS:  GOOD AFTERNOON, YOUR HONOR.
15              THE COURT:  GOOD AFTERNOON.
16              MR. LEE:  GOOD AFTERNOON, YOUR HONOR.
17    BILL LEE AND MARK SELWYN FROM WILMER HALE FOR
18    APPLE.
19              MR. VERHOEVEN:  GOOD AFTERNOON, YOUR
20    HONOR.  CHARLES VERHOEVEN, AND WITH ME ARE MY
21    PARTNERS, KEVIN JOHNSON, MICHAEL ZELLER,
22    WILLIAM PRICE, AND VICTORIA MAROULIS FROM QUINN,
23    EMANUEL ON BEHALF OF SAMSUNG.
24              THE COURT:  OKAY.  GOOD AFTERNOON.
25              MR. OLSON:  GOOD AFTERNOON, YOUR HONOR.
```

1   CARL OLSON FOR THE INTERVENOR, REUTERS AMERICA,

2   LLC.

3             THE COURT:  OKAY.  GOOD AFTERNOON.

4             LET ME FIRST JUST GET A SENSE OF WHAT

5   REMAINS OUTSTANDING.

6             SO NEXT TUESDAY, THE 24TH OF JULY -- I

7   WANT TO DISCUSS THE VERDICT FORM AND JURY

8   INSTRUCTIONS TODAY A LITTLE BIT, BUT WE'LL HAVE

9   FURTHER CONVERSATIONS ON THAT, AND WE ALSO HAVE THE

10  CLAIM CONSTRUCTION ON THE DESIGN PATENTS.

11            AS FAR AS OTHER OUTSTANDING MOTIONS, WE

12  HAVE THE SAMSUNG MOTION REGARDING PRIOR ART

13  EXCLUSION.

14            I JUST GRANTED THE MOTION TO SHORTEN

15  TIME.  I DON'T THINK I'LL NEED A HEARING ON THAT.

16            IS THAT -- THERE WAS PREVIOUSLY A SAMSUNG

17  MOTION REGARDING INVALIDITY, INFRINGEMENT

18  CONTENTIONS.

19            IT SEEMS TO BE SOMEWHAT OVERLAPPING WITH

20  THE PRIOR ART EXCLUSION.  IS THAT CORRECT OR IS

21  THAT A MISIMPRESSION?

22            MR. ZELLER:  THEY ARE SIMILAR RELATED

23  ISSUES, BUT THEY'RE COMING AT IT FROM SLIGHTLY

24  DIFFERENT ANGLES, AND THAT'S BECAUSE ONE -- THE

25  FIRST MOTION WAS AN APPEAL, TECHNICALLY A

1    RECONSIDERATION MOTION FROM JUDGE GREWAL'S ORDER

2    WHICH GRANTED, ALSO DENIED, BUT IT GRANTED, AT

3    LEAST IN PART, AN APPLE MOTION TO STRIKE --

4            THE COURT:  OKAY.

5            MR. ZELLER:  -- CERTAIN ASPECTS OF

6    SAMSUNG EXPERT REPORTS.

7            THE COURT:  OKAY.

8            MR. ZELLER:  THE SECOND MOTION, YOUR

9    HONOR, THE ONE THAT WE FILED RECENTLY AND THE COURT

10   GRANTED THE MOTION FOR SHORTENED TIME ON IS

11   DIRECTED THEN TO THE COURT'S, THIS COURT'S

12   INTERPRETATION AND APPLICATION OF THAT ORDER.

13           THE COURT:  OKAY.

14           MR. ZELLER:  WHICH THEN WOULD APPLY, FOR

15   EXAMPLE, IN THE SUMMARY JUDGMENT ORDER, AS WELL AS

16   IN A COUPLE OF OTHER PLACES.

17           SO WE THINK THAT THEY RAISE DIFFERENT

18   ISSUES BECAUSE WE BELIEVE THAT EVEN IF

19   JUDGE GREWAL'S ORDER STANDS FROM -- BASED ON THE

20   APPEAL, THAT NEVERTHELESS, IT SHOULD NOT BE

21   EXTENDED IN THE WAY THAT IT HAS BEEN.

22           THE COURT:  OKAY.  ALL RIGHT.  AND I

23   UNDERSTAND THAT JUDGE GREWAL STILL HAS THE APPLE

24   MOTION FOR AN ADVERSE INFERENCE INSTRUCTION STILL

25   PENDING.

1          MR. ZELLER:  THAT'S CORRECT.

2          THE COURT:  OKAY.  IS THERE A HEARING

3   DATE ON THAT, OR THAT'S BEEN SUBMITTED ON THE

4   PAPERS?

5          MR. ZELLER:  THERE WAS ALREADY A HEARING

6   ON THAT.

7          THE COURT:  OKAY.

8          MR. ZELLER:  AND WE UNDERSTAND IT'S

9   SUBMITTED.

10         THE COURT:  OKAY.  AND THEN I UNDERSTAND

11  THERE'S ALSO A, A SEPARATE, I THINK IT'S A SAMSUNG

12  MOTION FOR JUDGE GREWAL TO RECONSIDER SOME OF HIS

13  RULINGS.  IS THAT RIGHT?

14         MR. ZELLER:  I'D HAVE TO DOUBLE-CHECK ON

15  THAT, YOUR HONOR.

16         THE COURT:  OKAY.

17         MR. ZELLER:  I BELIEVE THAT HE MAY HAVE

18  ALREADY RULED ON THAT.

19         THE COURT:  OH, OKAY.

20         MR. ZELLER:  BUT I THINK THAT THERE WAS

21  ONE -- THERE WAS ONE MOTION --

22         THE COURT:  SO THERE'S --

23         (DISCUSSION OFF THE RECORD BETWEEN

24  DEFENSE COUNSEL.)

25         MR. ZELLER:  OKAY.  SO THIS IS THE ONE

1    THAT JUDGE GREWAL DID GRANT.  HE GRANTED IT,

2    HOWEVER, IN A WAY THAT WAS ADVERSE TO US.

3              THE COURT:  OKAY.

4              MR. ZELLER:  SO WE THEN FILED WITH THE

5    COURT OUR OBJECTIONS TO IT AND THAT HAS BEEN

6    PENDING.

7              THE COURT:  OKAY.  AND IS THAT NOW

8    PENDING BEFORE JUDGE GREWAL OR HERE?

9              MR. ZELLER:  THAT'S BEFORE YOUR HONOR.

10             THE COURT:  OH, OKAY.  BECAUSE I WAS

11   UNCLEAR ON THAT ONE.

12             OKAY.  SO THAT ONE NEEDS TO GET --

13   BECAUSE I UNDERSTOOD THAT WAS PENDING BEFORE

14   JUDGE GREWAL, BUT YOU'RE SAYING IT'S ALREADY BEEN

15   RULED UPON?

16             MR. ZELLER:  THAT'S CORRECT.

17             THE COURT:  AND OBJECTIONS HAVE ALREADY

18   BEEN FILED?

19             MR. ZELLER:  CORRECT.

20             THE COURT:  WHAT, ROUGHLY, IS THE

21   CATEGORY OF INFORMATION THAT'S THE SUBJECT OF THAT

22   MOTION FOR RECONSIDERATION?

23             MR. ZELLER:  THIS GOES TO THE, THE ORDER

24   WHERE JUDGE GREWAL PROHIBITED US FROM MAKING

25   CERTAIN DESIGN-AROUND ARGUMENTS BASED UPON THE

```
1    PRODUCTION OF SOURCE CODE.
2              THE COURT:  OKAY.
3              MR. ZELLER:  AND WE WENT BACK AND WE
4    ASKED FOR CLARIFICATION AS TO THE SCOPE OF THAT
5    ORDER AND HE CLARIFIED IT, BUT IT WAS IN A WAY THAT
6    WAS, FROM OUR PERSPECTIVE, ADVERSE.
7              THE COURT:  AND WHEN WAS HIS ORDER
8    ISSUED?  RECENTLY?
9              MR. ZELLER:  I CAN CHECK ON THAT, YOUR
10   HONOR.
11             THE COURT:  OKAY.  THANK YOU.
12             MR. ZELLER:  WE WILL GET THE EXACT DATE
13   AND PROVIDE THE COURT WITH A DOCKET NUMBER, BUT THE
14   ORDER WAS IN EARLY JUNE, JUDGE GREWAL'S ORDER.
15             THE COURT:  HIS CLARIFICATION ORDER?
16             MR. ZELLER:  CORRECT.
17             THE COURT:  OH, OKAY.  OKAY.
18             NOW, DOES THE PENDING -- THE PENDING
19   ADVERSE INFERENCE INSTRUCTION DOES NOT AFFECT
20   SAMSUNG'S MOTION IN LIMINE NUMBER 5, RIGHT?  THOSE
21   ARE SEPARATE?
22             MR. ZELLER:  YOU'LL HAVE TO REMIND ME
23   WHICH ONE IS NUMBER 5.
24             THE COURT:  WELL, DOES IT AFFECT ANY OF
25   THE MOTIONS IN LIMINE?
```

```
1              MR. ZELLER:  NOT AT THE MOMENT, YOUR
2    HONOR.
3              THE COURT:  OKAY.
4              MR. ZELLER:  THEORETICALLY WE DID MAKE A
5    MOTION THAT CERTAIN KINDS OF ORDERS AND RULINGS AND
6    THE LIKE NOT BE MENTIONED IN FRONT OF THE JURY.
7              THE COURT:  UM-HUM.
8              MR. ZELLER:  AT THIS MOMENT, OF COURSE,
9    WE DON'T HAVE A RULING, SO -- BUT PRESUMABLY IF
10   THERE WERE, WE'D HAVE TO UNDERSTAND WHAT THAT
11   RULING WAS AS TO WHETHER IT WAS APPROPRIATE OR NOT.
12             BUT RIGHT NOW, THAT'S -- IT'S NOT
13   ANYTHING THAT'S IN THE RANKS BECAUSE IT DOESN'T
14   EXIST YET.
15             THE COURT:  OKAY.  AND WHAT ELSE BEYOND
16   THE ISSUES THAT I'VE JUST RAISED, WHAT ELSE IS
17   STILL OUTSTANDING THAT WE NEED TO COVER NEXT WEEK?
18   IS THERE ANYTHING ELSE FOR NEXT WEEK?
19             (PAUSE IN PROCEEDINGS.)
20             MR. ZELLER:  THAT'S -- WE HAVE A --
21   THAT'S IT AS FAR AS WE KNOW, YOUR HONOR.
22             THE COURT:  OKAY.  THANK YOU.  ANYTHING
23   ELSE?
24             MR. JACOBS:  YOUR HONOR, I WANTED TO MAKE
25   SURE YOU -- WE CREATED A LIST FOR THE COURT AND
```

1    SENT IN A PROPOSED AGENDA.

2          IF WE GET THROUGH THAT PROPOSED AGENDA,

3    THEN I CAN'T THINK OF ANYTHING ELSE THAT WOULD BE

4    LEFT FOR THE SUBSEQUENT HEARING.

5          THE COURT:  ALL RIGHT.

6          MR. JACOBS:  BUT THAT'S AN AMBITIOUS

7    LIST.

8          THE COURT:  OKAY.  ALL RIGHT.  WELL, WE

9    CAN GO THROUGH -- SO WHAT I'D LIKE YOU TO IDENTIFY

10   IS FOR THE VERDICT FORM, OBVIOUSLY ONE THAT'S 40

11   PAGES IS GOING TO BE TOO LONG AND IT'S TOO

12   DETAILED.

13         I DON'T KNOW AT THIS POINT WHETHER THE

14   PARTIES CAN NARROW ANY DISPUTES.  IS IT WORTH YOU

15   ALL TRYING TO DO A JOINT ONE AT THIS POINT?

16         MS. MAROULIS:  YOUR HONOR, WE DIDN'T HAVE

17   A CHANCE TO MEET AND CONFER BEFORE FILING SEPARATE

18   FORMS, SO WE'RE HAPPY TO GO BACK AND HAVE A

19   DISCUSSION ON THIS.  THEY WERE FILED SEPARATELY ON

20   THE JURY INSTRUCTIONS.

21         THE COURT:  OKAY.

22         MR. JACOBS:  SO YOU'VE GIVEN US SOME

23   INITIAL GUIDANCE.  40 PAGES IS TOO LONG.  THAT

24   HELPS.

25         BUT 15 PAGES IS PROBABLY TOO LONG.  12

```
 1    PAGES IS PROBABLY TOO LONG.
 2            IF WE GET SOME DIRECTION FROM YOUR HONOR
 3    ON -- AND I THINK THE -- ACTUALLY AT ONE POINT YOU
 4    SAID YOU THINK THE VERDICT FORM WOULD BE PRETTY
 5    SHORT, SO THAT IS WHAT WE DELIVERED.
 6            THE COURT:  I -- WELL, OKAY.  SO I
 7    GUESS -- WE HAVE SO MANY DIFFERENT ISSUES TO COVER,
 8    I'M SORRY.
 9            WITH REGARD TO THE VERDICT FORM, THE WAY
10    APPLE'S IS DRAFTED, I GUESS I'M NOT SURE WHETHER
11    YOU'RE JUST ASSUMING THAT ALL JURORS ARE RULING ONE
12    WAY OR THE OTHER ON ALL PRODUCTS.
13            THERE'S, LIKE, NO DIFFERENTIATION BASED
14    ON PRODUCTS.  THERE'S NO DIFFERENTIATION BASED ON
15    ANTICIPATION VERSUS OBVIOUSNESS.
16            THERE'S -- YOU KNOW, THINGS ARE JUST DONE
17    AT THE, YOU KNOW, 10,000 FOOT LEVEL.
18            NOW, IF YOU ALL AGREE, THEN I WILL
19    PROBABLY JUST ADOPT WHATEVER YOU AGREE TO.
20            BUT THAT'S MY ONE -- YOU KNOW, WHILE I
21    THINK THAT SAMSUNG'S IS JUST TOO LONG, I MEAN, IT'S
22    PAINFUL TO GO THROUGH 40 PAGES OF THAT, BUT WITH
23    YOURS I JUST HAVE SOME CONCERNS ABOUT WILL WE GET
24    ENOUGH INFORMATION FROM THE JURY ABOUT WHAT THEY'RE
25    ACTUALLY FINDING.  SO --
```

```
1          MS. MAROULIS:  YOUR HONOR, WE BELIEVE WE
2    SHOULD GO BACK AND DISCUSS IT, BUT THAT WAS OUR
3    CONCERN WITH THE VERY SHORT FORM BECAUSE IT DOES
4    NOT DIFFERENTIATE BETWEEN THE 30 DIFFERENT PRODUCTS
5    AND THE MANY CAUSES OF ACTION.
6          SO WITH THAT GUIDANCE, I THINK WE NEED TO
7    GO BACK WITH THE PARTIES AND HAVE A DISCUSSION.
8          THE COURT:  OKAY.  WHEN DO YOU THINK
9    YOU'D BE ABLE TO FILE A NEW ONE?  THEORETICALLY, I
10   WOULD LIKE TO BE ABLE TO DISCUSS IT ON TUESDAY, BUT
11   IS THAT ENOUGH TIME FOR YOU?
12         MS. MAROULIS:  WE CAN FILE IT ON MONDAY.
13         MR. JACOBS:  YES, WE CAN FILE IT ON
14   MONDAY BY CLOSE OF BUSINESS AND HAVE IT FOR YOU.
15         THE COURT:  SO I WOULD THINK -- I WOULD
16   LIKE SOMETHING 10 PAGES OR LESS IDEALLY.
17         ON THE OTHER HAND, COVER WHAT YOU NEED TO
18   COVER, SO THAT'S NOT AN ABSOLUTE NUMBER.
19         MR. JACOBS:  THAT'S HELPFUL, YOUR HONOR.
20         THE COURT:  YEAH.  IF IT'S 8 TO 15 PAGES,
21   SOMETHING IN THAT RANGE, OKAY.  SO THAT WILL BE
22   FILED ON MONDAY, WHICH IS THE 23RD.
23         ALL RIGHT.  LET'S TALK ABOUT THE JURY
24   INSTRUCTIONS.
25         I AM HOPING TO FILE PRELIMINARY JURY
```

1    INSTRUCTIONS TOMORROW OR MONDAY, AND I DON'T WANT

2    TO GO INTO A LOT OF DETAIL ABOUT THE LAW BECAUSE I

3    THINK A LOT OF THAT MAY BE DETERMINED BY HOW THE

4    TRIAL EVIDENCE COMES IN.  SO I'D LIKE IT TO BE

5    REALLY BASIC AND PRETTY MINIMALIST.

6            I'LL TAKE ALL THE ONES THAT YOU HAVE

7    STIPULATED TO AND INCLUDE THOSE.

8            BUT YOU MAY END UP HAVING, YOU KNOW, SOME

9    OBJECTIONS TO THE ONES THAT HAVE A LITTLE BIT MORE

10   SUBSTANCE.

11           SO I WILL TRY TO FILE THOSE BY MONDAY AT

12   THE LATEST, HOPEFULLY SOONER.

13           LET'S TALK ABOUT THE NUMBER OF PRODUCTS,

14   AND THIS SORT OF OVERLAPS WITH SOME OF THE MOTIONS

15   IN LIMINE.

16           MY UNDERSTANDING, JUST FROM READING THE

17   MOTIONS IN LIMINE, IS THAT APPLE'S EXPERT REPORTS

18   ANALYZE ONE PRODUCT IN DETAIL AND THEN SAY "THE

19   FOLLOWING OTHER PRODUCTS HAVE THE SAME FEATURE OR

20   THE SAME IMPLEMENTATION AND, THUS, I COME TO THE

21   SAME CONCLUSION."

22           IS THAT RIGHT?

23           MR. JACOBS:  AS A GENERALIZATION, THAT'S

24   CORRECT, YOUR HONOR.

25           THE COURT:  OKAY.  THEN WHY CAN'T WE JUST

```
1    TRY THOSE REPRESENTATIVE PRODUCTS?

2              MR. JACOBS:  THAT WOULD BE FANTASTIC.

3              THE COURT:  OKAY.

4              MR. JACOBS:  WE HAVE SO FAR BEEN UNABLE

5    TO REACH A STIPULATION ON THE REPRESENTATIVE

6    PRODUCTS.

7              WITH THE COURT'S URGING, PERHAPS THE

8    PARTIES COULD REACH SUCH AN UNDERSTANDING.

9              THE COURT:  WELL, LET ME HEAR FROM -- I'M

10   JUST CONCERNED THAT -- I MEAN, I'M GOING TO GRANT

11   THE MOTION IN LIMINE EXCLUDING THE ADDITIONAL LATER

12   PRODUCTS, BUT EVEN 26 IS JUST TOO MANY.

13             SO --

14             MR. JOHNSON:  I'M HAPPY TO APPROACH, YOUR

15   HONOR.

16             THE COURT:  WHATEVER YOU'D LIKE.

17             MR. JOHNSON:  THE REAL ISSUE, THE REAL

18   ISSUE FROM OUR STANDPOINT IS THAT THEIR EXPERT --

19   NEITHER ONE OF THEIR EXPERTS, NEITHER

20   DR. BALAKRISHNAN NOR DR. SINGH, IDENTIFIED ANY ONE

21   PRODUCT, OR SUBSET OF PRODUCTS, AS THE

22   REPRESENTATIVE PRODUCT.

23             AND JUDGE GREWAL ORDERED THAT WE GET SOME

24   ADDITIONAL TIME TO DEPOSE DR. BALAKRISHNAN, WHICH

25   WE DID LAST WEEK, AND WE ASKED HIM A QUESTION --
```

1    AND THIS IS NEW TO THE RECORD -- WE ASKED HIM, AND

2    THIS IS AT PAGE 68 TO 69, QUOTE, "AND YOU'RE NOT

3    TRYING TO GENERALIZE ACROSS ALL PRODUCTS OR SAY

4    THAT ONE PRODUCT IS REPRESENTATIVE OF ALL THE OTHER

5    PRODUCTS; RIGHT?"

6            "ANSWER:  I'M NOT SAYING THAT ANY ONE

7    PRODUCT IS REPRESENTATIVE OF ALL THE PRODUCTS.

8            "AND I WILL NOTE THAT AS FAR AS THE

9    ANDROID VERSIONS ARE CONCERNED, THOSE ARE

10   REPRESENTATIVE VERSIONS OF THE SOURCE CODE I LOOKED

11   AT INDICATED BY SAMSUNG TO BE REPRESENTATIVE OF THE

12   DIFFERENT VERSIONS OF THE DIFFERENT -- PARTICULAR

13   DIFFERENT VERSIONS OF ANDROID."

14           THE ISSUE WE HAVE IS THAT NEITHER ONE OF

15   THEIR EXPERTS HAS OFFERED SPECIFIC AND SUBSTANTIAL

16   EVIDENCE ABOUT WHY ANY PARTICULAR PRODUCT IS

17   REPRESENTATIVE OR BEHAVES SIMILARLY TO ALL THE

18   OTHER PRODUCTS.

19           AND THAT'S JUST -- THAT'S JUST NOT IN HIS

20   REPORT.  THAT'S NOT IN HIS -- IT WASN'T TESTIFIED

21   ABOUT IN HIS DEPOSITION.

22           AND SO THAT'S WHY WE FILED THE MOTION IN

23   LIMINE IS THAT THERE -- THEY HAVE NOT CARRIED THE

24   BURDEN TO ESTABLISH THAT ANY OF THESE ARE, IN FACT,

25   REPRESENTATIVE OF WHAT THEY VIEW TO BE SIMILARLY

```
 1    SITUATED OR SIMILARLY BEHAVING PRODUCTS.
 2             THE COURT:  WHEN -- HOW IS THE DAMAGES
 3    ANALYSIS DONE?  IS THERE DIFFERENT -- ARE THERE
 4    DIFFERENT ROYALTY RATES AND DIFFERENT LOST PROFITS
 5    CALCULATIONS BY PRODUCT?  OR EVERYTHING --
 6             MR. JACOBS:  YES.
 7             THE COURT:  I SEE.  OKAY.
 8             MR. JACOBS:  BUT I THINK THERE'S A MIS --
 9    SO WE -- UNABLE TO REACH AGREEMENT ON
10    REPRESENTATIVE PRODUCTS, NATURALLY OUR EXPERT DOES
11    NOT TESTIFY, "I'M DOING THIS ON THE BASIS OF A
12    REPRESENTATIVE PRODUCTS APPROACH."
13             WHAT HE TESTIFIED IS, "I'VE LOOKED IN
14    DETAIL AT THIS PRODUCT, IT'S ANDROID X.Y.Z, I KNOW
15    THIS OTHER PRODUCT HAS THE VERY SAME WORKINGS OF
16    ANDROID IN IT AND I'VE LOOKED AT IT AND I SEE THE
17    SAME BEHAVIOR AND I, THEREFORE, CONCLUDE THAT WITH
18    THE SAME SOURCE CODE AND WITH THE SAME BEHAVIOR, IT
19    INFRINGES THE SAME WAY."
20             SO THEY HAVE THE FOUNDATIONAL INFORMATION
21    FOR A REPRESENTATIVE PRODUCT STIPULATION IF THEY
22    WERE WILLING TO TRY THE CASE ON REPRESENTATIVE
23    PRODUCTS.
24             I THINK IT'S A STRATEGIC MOVE ON
25    SAMSUNG'S PART TO TRY AND OVERLOAD THE SYSTEM THAT
```

1    HAS HELD US UP, NOT ANY LACK OF TECHNICAL DETAIL

2    FROM OUR EXPERTS.

3              MR. JOHNSON:  IT'S NOT A STRATEGIC MOVE

4    ON OUR PART.  THEIR EXPERTS SIMPLY HAVEN'T CARRIED

5    THE BURDEN AND ESTABLISHED THAT ANY OF THESE WERE

6    REPRESENTATIVE.

7              AND WHEN WE TOOK THE DEPOSITION OF

8    DR. BALAKRISHNAN LAST WEEK, HE WENT FURTHER AND HE

9    ESTABLISHED THAT HE NEEDS -- HE WASN'T -- EVEN IF

10   HE HAD THE SAME VERSION OF ANDROID, HE SAID THAT

11   WASN'T ENOUGH.  WE HAVE TO ESTABLISH THAT THE CODE

12   ON EACH PRODUCT WAS IDENTICAL.

13             AND HE HASN'T DONE THAT AND THAT WAS THE

14   BASIS FOR OUR MOTION FROM THE BEGINNING.

15             THE COURT:  IS THERE ANY -- IS THERE ANY

16   HORSE TRADING THAT CAN HAPPEN HERE?  IS THERE

17   SOMETHING THAT SAMSUNG WANTS OF APPLE AND YOU CAN

18   JUST SORT OF DO A HORSE TRADE ON -- I WOULD LIKE

19   THE NUMBER OF PRODUCTS TO GO DOWN.

20             I SEE BOTH SIDES' POINT AS TO WHY YOU

21   EACH HAVE A VALID POSITION.

22             CAN WE WORK OUT SOME DEAL WHERE THERE'S

23   SOMETHING THAT YOU WANT THAT THEY GIVE A LITTLE AND

24   THEN YOU GIVE A LITTLE ON THE PRODUCTS SO THAT EACH

25   SIDE FEELS SOMEWHAT SATISFIED?

```
 1            MR. JOHNSON:  WE CAN GO BACK AND TRY,

 2   YOUR HONOR.  WE HAVE BEEN -- BETWEEN NOW AND WHEN

 3   WE SEE YOU IN THE CASE TUESDAY.

 4            THE COURT:  OKAY.  COULD YOU FILE

 5   SOMETHING ON MONDAY, THEN, ON IF YOU'RE ABLE TO

 6   NARROW THE PRODUCTS IN EXCHANGE FOR SOMETHING ELSE,

 7   OR -- YOU KNOW, THERE ARE PROBABLY OTHER THINGS

 8   GOING ON HERE THAT I DON'T KNOW ABOUT THAT MAYBE

 9   YOU CAN WORK OUT SOME AGREEMENT.

10            MR. JACOBS:  WE'LL TAKE A SHOT IT, YOUR

11   HONOR.

12            MR. JOHNSON:  WE'LL TRY.

13            THE COURT:  OKAY.  NOW, WE'VE GOT TO TALK

14   ABOUT WITNESSES.

15            SAMSUNG HAS 192 WITNESSES ON ITS WILL

16   CALL LIST AND HAS 118 DEPONENTS FOR WHICH YOU MAY

17   DESIGNATE DEPOSITION EXCERPTS.

18            APPLE HAS 33 ON THE WILL CALL LIST, 17 ON

19   THE MAY CALL LIST, AND 90 DEPONENTS FOR WHOM YOU

20   MAY DESIGNATE DEPOSITION EXCERPTS.

21            OBVIOUSLY -- DO I NEED TO SAY ANYTHING

22   MORE ON THIS?  I MEAN, THIS IS -- THIS IS NOT

23   REALISTIC.

24            SO IF YOU ALL DON'T BRING IT DOWN, THEN I

25   WILL JUST IMPOSE MY OWN NUMBERS.  DO YOU WANT ME TO
```

```
 1    DO THAT?  BECAUSE I'M HAPPY TO DO THAT, BECAUSE I'M
 2    NOT -- --
 3              MR. JACOBS:  YOUR HONOR, WE'D PROBABLY
 4    TAKE YOUR NUMBERS.  THIS HAS BEEN -- I DO HAVE AN
 5    UPDATE FOR YOU ON DEPOSITIONS.
 6              THE COURT:  OKAY.  WHAT'S THAT?
 7              MR. JACOBS:  AT LEAST 150 HOURS OF
 8    DEPOSITION TESTIMONY WAS ACTUALLY DESIGNATED BY
 9    SAMSUNG LAST NIGHT, CREATING AN IMPOSSIBLE BURDEN
10    IN TERMS OF COUNTER-DESIGNATION AND FILING TIMELY
11    OBJECTIONS.
12              WE HAVE 71 CURRENT AND FORMER APPLE
13    EMPLOYEES THAT ARE SUBJECT TO SUBPOENA AT TRIAL.
14              SO THE LIMITS THAT YOU'VE -- THAT THE
15    COURT HAS IMPOSED WE HAVE BEEN ABLE TO WORK WITH,
16    AND I THINK THE LIMITS THAT THE COURT WOULD IMPOSE
17    ON THESE TOPICS I WOULD HOPE WE WOULD BE ABLE TO
18    WORK WITH AS WELL.
19              THE COURT:  LET ME HEAR --
20              MS. MAROULIS:  YOUR HONOR, CAN I ADDRESS
21    THE DEPOSITION DESIGNATIONS BRIEFLY?
22              THE COURT:  YES.  WELL, 192 WILL CALL
23    WITNESSES?  I MEAN --
24              MS. MAROULIS:  YOUR HONOR, OF THOSE 192,
25    118 OF THOSE WOULD MOSTLY BE CALLED BY DEPOSITION.
```

```
 1              AND THE REASON WE APPROACHED APPLE AHEAD

 2    OF TIME IS BECAUSE A LOT OF THEM ARE HERE IN THIS

 3    AREA, SO THEY'RE WITHIN THE SUBPOENA POWER.

 4              WHAT WE REALLY WANT TO HAPPEN IS FOR THEM

 5    TO SAY "YOU CANNOT PLAY THE DEPOSITION OF THIS

 6    WITNESS BECAUSE YOU CAN CALL THEM LIVE."

 7              SO WE APPROACHED APPLE AND ASKED TO CALL

 8    BY DEPOSITION MOST OF THEIR WITNESSES FOR CURRENT

 9    OR FORMER EMPLOYEES.

10              THERE'S ONLY A HANDFUL OF THOSE 118 THAT

11    WE'D LIKE TO CALL LIVE AND THE REST WE'D LIKE TO

12    CALL BY DEPOSITION.

13              BUT WITHOUT SOME KIND OF AGREEMENT AND

14    ASSURANCE THAT WE CAN CALL THEM BY DEPOSITION, WE

15    CANNOT GIVE UP OUR RIGHTS TO CALL THEM AT ALL.

16              SO 192 AND -- 118 IS A SUBSET OF THE 192.

17              THE COURT:  BUT 118 IS STILL NOT GOING TO

18    BE POSSIBLE IN 25 HOURS.  I MEAN, THAT'S JUST YOUR

19    OWN WITNESSES.

20              DON'T YOU WANT TO DO ANY CROSS OF APPLE'S

21    WITNESSES?  I MEAN, WE'RE TALKING -- IF YOU DON'T

22    DO ANY CROSS AND YOU DON'T DO ANY DEPOSITIONS, 192

23    WITNESSES, YOU HAVE LESS THAN EIGHT MINUTES PER

24    WITNESS FOR YOUR FULL 25 HOURS.

25              SO --
```

1          MS. MAROULIS:  YOUR HONOR, THEY HAVE AT

2     LEAST 16 INVENTORS ON THEIR DESIGN PATENTS ALONE.

3          IF WE WERE TO PLAY TWO MINUTES OF EACH

4     DEPOSITION OF EACH INVENTOR, THAT WOULD ONLY BE

5     ABOUT HALF AN HOUR, BUT THAT MEANS 16 PEOPLE ARE ON

6     OUR DEPOSITION DESIGNATION LIST.

7          THAT IS HOW THE NUMBERS ADD UP.

8          THE COURT:  WELL, I STILL DON'T SEE HOW

9     THAT GETS TO 192 WITNESSES.

10          MS. MAROULIS:  HONESTLY, YOUR HONOR,

11     WE'RE NOT GOING TO CALL --

12          THE COURT:  IF I DON'T HEAR ANY NUMBERS,

13     I'M JUST GOING TO IMPOSE MY OWN BECAUSE THIS IS

14     JUST NOT -- IT'S NOT FEASIBLE.  IT'S GOING TO

15     CREATE A LOT OF -- I THINK WHAT'S GOING ON IS A LOT

16     OF HIDE THE BALL SO THAT ONE SIDE DOES NOT KNOW

17     EXACTLY WHO'S GOING TO BE CALLED AND HAS TO PREPARE

18     FOR OVER 200 WITNESSES AND THAT'S NOT RIGHT.

19          MS. MAROULIS:  YOUR HONOR, WE'D LIKE TO

20     GO BACK AND REVISIT OUR WITNESS LIST, BUT WE'D LIKE

21     FOR APPLE TO DO THAT, TOO, BECAUSE THEY HAVE 90

22     WITNESSES ON THEIR DEPO DESIGNATIONS.

23          SO IF BOTH PARTIES CAN GO BACK AND SUBMIT

24     REVISED WITNESS LISTS, WE'LL DO THAT IMMEDIATELY,

25     OR WITHIN THE NEXT COUPLE DAYS.

```
 1              THE COURT:  BUT I'M GOING TO IMPOSE
 2    LIMITS BECAUSE I DON'T WANT TO SEE EVEN 75
 3    WITNESSES ON THE LIST.
 4              WE HAVE 25 HOURS AND THAT'S JUST TOO
 5    MANY.
 6              SO DO YOU WANT TO PUT OUT A NUMBER?
 7    WHAT'S THE NUMBER?
 8              (PAUSE IN PROCEEDINGS.)
 9              MR. VERHOEVEN:  YOUR HONOR, WHILE WE'RE
10    CONFERRING AMONGST OURSELVES ON THE NUMBER ISSUE, I
11    JUST WANT TO RAISE ONE -- I MEAN, ONE POSSIBILITY
12    FOR THIS, YOUR HONOR, IS WE ARE ALREADY UNDER A
13    TIME LIMIT.  WE'RE ALREADY GOING TO BE ON THE
14    CLOCK.
15              WE ALSO HAVE AGREED, AMONGST OURSELVES,
16    TO ADVANCE -- TO GIVE TWO DAYS ADVANCE NOTICE OF
17    OUR WITNESS ORDER.
18              AND MY THOUGHT, YOUR HONOR, WAS THOSE
19    VEHICLES TOGETHER, THE FACT THAT WE'RE ON THE CLOCK
20    AND THE FACT THAT WE'RE GOING TO GIVE ADVANCED
21    NOTICE, SHOULD BE SUFFICIENT FOR EACH SIDE.
22              AND THE ISSUE OF THE NUMBER OF WITNESSES
23    ON THE ACTUAL LIST ISN'T GOING TO BE A BIG PROBLEM,
24    I DON'T THINK, YOUR HONOR, BECAUSE WE'RE GOING TO
25    BE TELLING EACH OTHER IN ADVANCE -- I AGREE THAT WE
```

1      SHOULD MEET AND CONFER, YOUR HONOR.

2             BUT FROM OUR PERSPECTIVE, WE HAVE TO BE

3      ABLE TO REACT TO WHAT THEY DECIDE TO DO AND, YOU

4      KNOW, WE'RE CONCERNED A LITTLE BIT ABOUT MAKING

5      SURE WE HAVE SOMEONE ON THE LIST THAT WE MAY NEED,

6      OR WE MAY NOT NEED, DEPENDING ON WHAT THEY DO IN

7      THEIR CASE-IN-CHIEF.

8             AND SO IT'S NOT LIKE HIDE THE BALL FOR

9      US.  IT'S PRESERVING OUR FLEXIBILITY SO THAT IF WE

10     NEEDED TO CALL SOMEBODY BECAUSE OF SOMETHING THAT

11     WAS DONE IN THE CASE-IN-CHIEF, WE'D HAVE THAT

12     ABILITY.

13            AND MY SUGGESTION IS THAT THE TIME LIMITS

14     WILL, WILL FORCE BOTH SIDES TO CALL MANY, MANY

15     FEWER THE WITNESSES THAN ARE ON THESE LISTS.

16            AND THE ADVANCED NOTICE WILL HELP ENSURE

17     THAT THERE'S NO PREJUDICE.

18            AND BY HAVING TO NARROW DRAMATICALLY OUR

19     LIST, WE MIGHT SUFFER SOME PREJUDICE IN THAT

20     SOMETHING MAY COME UP IN THE CASE-IN-CHIEF THAT WE

21     NEED A WITNESS FROM OUR BIGGER LIST TO RESPOND TO

22     THAT'S NOT ON OUR SHORTER LIST.

23            THE COURT:  WELL, LET ME ASK, FOR THE

24     DEPO DESIGNATIONS, ARE THOSE GOING TO BE VIDEOTAPES

25     OR IS SOMEONE GOING TO READ THE TRANSCRIPTS OR HOW

```
 1     ARE THOSE COMING IN?

 2               MS. MAROULIS:  YOUR HONOR, ALL

 3     DEPOSITIONS HAVE BEEN VIDEOTAPED, SO IT WOULD BE

 4     VIDEOTAPES.

 5               THE COURT:  IT WILL BE VIDEOTAPES, OKAY.

 6               MR. MCELHINNY:  I HAVE TWO SEPARATE

 7     ISSUES.  ONE IS THE ISSUE WE HAVE BEEN DISCUSSING,

 8     AND AT LEAST MY PERCEPTION IS THE SAME AS YOUR

 9     HONOR'S.

10               I THINK WE ARE NOT FINDING OUT IN A

11     REALISTIC WAY WHO'S GOING TO BE -- AND WE WOULD

12     APPRECIATE YOUR HONOR SETTING LIMITATIONS FOR THIS.

13               IF YOU WANT ME TO THROW OUT NUMBERS, I

14     CAN DO THAT.  I MEAN, WE THINK, WE THINK THAT 45 ON

15     YOUR COMBINED LIVE -- YOUR WILL AND MAY CALL LIST,

16     AND THEN 25 HOURS OF DEPOSITION DESIGNATION WITH NO

17     MORE THAN 30 WITNESSES ON THAT WOULD ACTUALLY

18     PROVIDE A LOT OF FLEXIBILITY, BUT ALSO SERVE THE

19     PURPOSE OF THE RULE, WHICH IS TO GIVE SOME NOTICE

20     AND TO MAKE COUNTER-DESIGNATIONS.  I MEAN, YOUR

21     HONOR KNOWS HOW THIS WORKS.

22               THEY'VE DESIGNATED ENTIRE DEPOSITIONS,

23     WHICH MEANS WE HAVE TO FILE OBJECTIONS TO ENTIRE

24     DEPOSITIONS.

25               IF YOU'RE THE NOT SERIOUS ABOUT THIS --
```

1    BUT I ALSO WANT TO KNOW, WE HAVE A SEPARATE ISSUE

2    WHICH WE JUST TOUCHED ON, WHICH IS THEY HAVE

3    SUBPOENAED 71 OF OUR CURRENT EMPLOYEES AND THEY

4    WANT THEM ON 24-HOUR CALL AND 48-HOUR CALL.

5             WE CAN'T KEEP THE ENTIRE COMPANY AT THAT

6    KIND OF A SITUATION.  THEY -- AND YOUR HONOR'S LIST

7    NARROWING WILL SOLVE BOTH OF THOSE PROBLEMS FOR US.

8             THE COURT:  ALL RIGHT.  WELL, LET ME HEAR

9    FROM SAMSUNG.  I AM GOING TO IMPOSE A NUMBERS

10   LIMIT, SO IF YOU WANT TO BE HEARD, NOW WOULD BE THE

11   TIME.

12            MR. VERHOEVEN:  WELL, YOUR HONOR, AS I

13   SAID, OUR CONCERN IS THIS, THAT WE'RE REACTING TO

14   THEIR CASE-IN-CHIEF, AND SO --

15            THE COURT:  BUT 192?  COME ON.  COME ON.

16            MR. VERHOEVEN:  WELL, AS MS. MAROULIS --

17            THE COURT:  THAT'S NOT A GOOD FAITH

18   EFFORT IN MY MIND.  192 WITNESSES FOR A 25 HOUR

19   TRIAL?

20            MR. VERHOEVEN:  I HAVE A SUGGESTION, YOUR

21   HONOR --

22            THE COURT:  YEAH.

23            MR. VERHOEVEN:  -- WHICH IS THAT THE

24   PARTIES TRY AND MEET AND CONFER --

25            THE COURT:  NO.  WE'RE, LIKE, TEN DAYS

1    OUT.  WE NEED TO WRAP THIS UP.

2              MR. VERHOEVEN:  AND THE SECOND PART OF MY

3    SUGGESTION, YOUR HONOR, IS WE HAVE A LIST NOW, AND

4    IF WE REDUCE OUR LIST, THAT WE HAVE THE ABILITY, IF

5    SOMETHING OCCURS IN THE CASE-IN-CHIEF WHERE WE

6    REALIZE WE NEEDED TO CALL SOMEBODY FROM OUR

7    PREVIOUS LIST, THAT WE'D HAVE THE ABILITY TO

8    APPROACH YOUR HONOR AND MAKE OUR CASE TO SHOW CAUSE

9    WHY WE SHOULD BE ABLE TO CALL THAT WITNESS.

10             THAT MIGHT HELP US WITH SOME OF THE

11   PREJUDICE, BECAUSE WE ARE SORT OF IN A MODE WHERE

12   WE DON'T KNOW EXACTLY WHAT THEY'RE GOING TO PICK

13   AND CHOOSE.

14             WE'VE HAD DISPUTES, AND I'M NOT GOING TO

15   REHASH IT WITH YOUR HONOR, ABOUT THE SCOPE OF THE

16   CASE AND ALL THAT.

17             BUT THERE'S A LOT OF DIFFERENT -- THERE'S

18   THE DESIGN PATENT CASE, THERE'S THE TRADE -- THE

19   TRADE DRESS CASE, DILUTION CASE, ANTITRUST, FRAND,

20   AND THOSE ARE ALL APPLE'S CAUSES OF ACTION AND WE

21   DON'T KNOW WHICH ONES THEY'RE GOING TO TRY TO FIT

22   WITHIN THE 25 HOURS.

23             THE COURT:  BUT THEY'VE IDENTIFIED 33 ON

24   THEIR WILL CALL LIST.

25             MR. VERHOEVEN:  I'M SORRY?

1          THE COURT:  THEY'VE IDENTIFIED 33

2     WITNESSES ON THEIR WILL CALL LIST.  THEY'VE

3     IDENTIFIED 17 WITNESSES ON THEIR MAY CALL LIST.

4          MR. MCELHINNY:  AND THAT INCLUDED OUR

5     ANTICIPATION OF WHO WE WOULD HAVE TO CALL IN

6     REBUTTAL, YOUR HONOR.  WE TRIED TO DO THIS

7     REALISTICALLY.

8          THE COURT:  YEAH.  SO I'M NOT PERSUADED.

9     I MEAN, THEIR LIST, IT COULD BE LEANER, BUT THIS IS

10    STILL PRETTY GOOD.  THEY HAVE 33 ON THEIR WILL CALL

11    LIST, OKAY?  SO I'M -- YOU KNOW, THIS IS KIND OF

12    NOT BEING -- I'M NOT PERSUADED.

13         MR. VERHOEVEN:  CAN I CONFER WITH MY

14    CO-COUNSEL HERE ON THE NUMBER FOR A MINUTE?

15         THE COURT:  PLEASE.

16         MR. MCELHINNY:  JUST TO BE CLEAR, I HAVE

17    NO OBJECTION TO YOUR HONOR LEAVING A SAFETY VALVE

18    THAT WE CAN COME, FOR GOOD CAUSE, AND TRY TO

19    CONVINCE YOU TO LET SOMEONE COME IN IF THAT WOULD

20    BE YOUR RULING.

21         (PAUSE IN PROCEEDINGS.)

22         MR. VERHOEVEN:  SO MY SUGGESTION, YOUR

23    HONOR, IS THAT WE GO TO THEIR NUMBER, WHICH IS 50,

24    AND --

25         THE COURT:  I THINK THEIR NUMBER WAS 45,

```
1    BUT --

2              MR. VERHOEVEN:  33 AND 17, I THINK, YOUR

3    HONOR --

4              THE COURT:  HE JUST PROPOSED 45, BUT

5    THAT'S FINE.  THAT'S FINE.

6              MR. VERHOEVEN:  AND THEN I JUST WANT TO

7    POINT OUT, YOUR HONOR, ON THE DEPOSITION

8    DESIGNATIONS, THE CONCERN THAT MR. MCELHINNY RAISED

9    WOULD DISAPPEAR IF WE COULD JUST REACH AGREEMENT

10   THAT WE WILL -- WE CAN CALL THESE PEOPLE VIA

11   TRANSCRIPTS, OR THROUGH A DEPOSITION, AND THEY

12   WOULDN'T HAVE TO WORRY ABOUT SUBPOENAS AND 24-HOUR

13   CALL NOTICE AND WHATNOT.

14             SO IT SEEMS SORT OF SILLY THAT WE CAN'T

15   REACH AGREEMENT ON THAT.

16             THE COURT:  WELL, I THINK IF IT'S AN

17   EMPLOYEE OF EITHER COMPANY, THEY SHOULD COME LIVE.

18   IF IT'S AN EMPLOYEE OF EITHER COMPANY, THEY SHOULD

19   TESTIFY LIVE UNLESS THERE'S SOME HARDSHIP,

20   ILLNESS --

21             MR. MCELHINNY:  JUST TO BE CLEAR, YOUR

22   HONOR, WE DON'T HAVE THE POWER TO COMPEL THEIR

23   EMPLOYEES TO COME LIVE.

24             THE COURT:  NO, BUT THAT'S -- WHAT I'M

25   SAYING IS -- THAT WOULD BE MY PREFERENCE.
```

```
 1              MR. MCELHINNY:  IT WOULD BE OURS, TOO.

 2              BUT WE -- JUST AS A MATTER OF THE

 3    JURISDICTION OF THE COURT, OUR PEOPLE LIVE WITHIN

 4    YOUR SUBPOENA RANGE, AND THEIR EMPLOYEES, THEY'RE

 5    OFFICERS DO, BUT THEIR EMPLOYEES DO NOT.

 6              MR. VERHOEVEN:  WELL, YOUR HONOR,

 7    ADMISSIONS -- MY UNDERSTANDING, AND THIS IS OFF THE

 8    TOP OF MY HEAD, BUT MY UNDERSTANDING OF THE RULES

 9    ARE THAT SAMSUNG CAN USE AN ADMISSION OF AN APPLE

10    EMPLOYEE.  AN ADMISSION, UNDER THE FEDERAL RULES OF

11    EVIDENCE, IS NOT HEARSAY.

12              AND SO WE HAVE THE RIGHT TO, TO CALL --

13    TO PUT THOSE ADMISSIONS IN VIA DEPOSITION.

14              BUT THE OTHER POINT THAT I WANTED TO

15    MAKE, YOUR HONOR, IS WE'RE TALKING ABOUT LITTLE

16    PIECES OF EVIDENCE THAT WE NEED TO GET IN FOR THE

17    RECORD, AND IF YOU DO IT BY DEPOSITION, GIVEN OUR

18    TIME CONSTRAINTS, YOU CAN GET THAT ALL WRAPPED UP

19    THROUGH NEGOTIATING WITH THE OTHER SIDE, THEY CAN

20    SUBMIT THEIR COUNTERS, AND WE CAN JUST QUICKLY GET

21    IT IN, WHEREAS IF WE HAVE TO CALL SOMEBODY LIVE,

22    THEN IT'S GOING TO TAKE A LOT LONGER.

23              AND SO ONE OF THE REASONS WHY WE'RE

24    TRYING TO CONSIDER SUBMITTING DEPOSITION TESTIMONY

25    FOR SOME OF THESE WITNESSES, YOUR HONOR, IS TO SAVE
```

 1    TIME.

 2              THE COURT:  WELL, 30(B)(6) TESTIMONY CAN

 3    OBVIOUSLY BE DONE BY DEPOSITION, AND IF THE PERSON

 4    IS TESTIFYING AS A MANAGING AGENT FOR ONE OF THE

 5    PARTIES, THAT CAN BE DONE BY DEPOSITION.

 6              BUT THEN I -- YOU KNOW, I DON'T WANT TO

 7    HAVE TO HAVE A WHOLE LOT OF LITIGATION ABOUT

 8    WHETHER, WHEN THIS PARTICULAR INDIVIDUAL WAS

 9    TESTIFYING, WERE THEY ACTING AS A MANAGING AGENT?

10    IS THIS MANAGING AGENT TESTIMONY?

11              THAT'S MY CONCERN IF -- YOU KNOW, IF IT'S

12    30(B)(6) TESTIMONY, IT'S NICE AND CLEAR.  THEY'VE

13    BEEN DESIGNATED AND IT'LL COME IN THROUGH

14    DEPOSITION.

15              BUT I REALLY WOULD HATE TO HAVE A WHOLE

16    LOT OF FIGHTS ON WHETHER A PARTICULAR EXCERPT IS IN

17    SOMEONE'S MANAGING AGENT CAPACITY OR NOT.

18              SO THAT WAS MY HOPE TO KIND OF AVOID, YOU

19    KNOW, EXTRA FIGHTS DURING THE TRIAL.

20              MR. VERHOEVEN:  RIGHT.  AND USUALLY, YOUR

21    HONOR, IN MY EXPERIENCE WE'VE BEEN ABLE TO WORK OUT

22    THE ISSUE BY STIPULATION.

23              THE COURT:  UM-HUM.

24              MR. VERHOEVEN:  AND I HEARD MR. MCELHINNY

25    SAYING THAT HAVING SUBPOENAS OUT ON 24-HOUR NOTICE

```
 1    IS BURDENSOME TO HIS CLIENT.

 2             WE'RE PERFECTLY WILLING TO GET RID OF

 3    THAT BURDEN WITH RESPECT TO THE VAST MAJORITY OF

 4    THESE, AS WELL AS WILLING TO NEGOTIATE WITH THE

 5    OTHER SIDE TO REDUCE THE NUMBERS.

 6             BUT THE -- THE REASON THAT THERE ARE

 7    SUBPOENAS AND THE REASON YOU'RE HEARING COMPLAINTS

 8    IS BECAUSE APPLE WON'T AGREE THAT WE CAN JUST

 9    SUBMIT CERTAIN OF THESE BY DEPOSITION DESIGNATION.

10             IF IT'S AN IMPORTANT WITNESS FROM APPLE,

11    WE'RE GOING TO CALL THEM LIVE.

12             THE COURT:  I GUESS I'M NOT REALLY CLEAR

13    ON THIS DISPUTE.  I DON'T RECALL IT REALLY BEING

14    THOROUGHLY RAISED ANYWHERE.

15             SO WHAT IS THE DISPUTE?  YOU WANT YOUR

16    FOLKS, YOUR EMPLOYEES, TO TESTIFY LIVE AND SAMSUNG

17    WANTS TO USE THEIR DEPOSITION EXCERPTS?  IS THAT

18    THE ISSUE?  WHAT'S THE ISSUE HERE?

19             MR. MCELHINNY:  CAN I CONFESS TO THE

20    COURT THAT I'M ACTUALLY A LITTLE BIT CONFUSED BY

21    THE ISSUE, BECAUSE WE HAVE NOT -- DESPITE MEETING

22    AND CONFERRING, I'VE NEVER GOTTEN -- I'VE NEVER

23    UNDERSTOOD WHAT SAMSUNG'S ISSUE IS.

24             MR. VERHOEVEN JUST TOLD YOU THAT IF HE

25    HAS AN ADMISSION BY DEPOSITION, HE HAS THE RIGHT TO
```

1    PLAY THAT, AND I'M -- THAT'S FINE.

2              WE HAVE NOT HAD A DISCUSSION IN ANY PLACE

3    IN WHICH THEY'VE SAID "WE HAVE TO SUBPOENA THIS

4    PERSON BECAUSE YOU WON'T ALLOW US TO PLAY" -- IF HE

5    NEEDS OUR PERMISSION -- I MEAN, IF HE WANTS TO DO

6    SOMETHING THAT THE FEDERAL RULES DO NOT ALLOW HIM

7    TO DO.  AND HE HAS TO BRING THE WITNESS LIVE, THEN

8    YOU SUBPOENA THAT WITNESS AND THEY COME LIVE.

9              BUT IT CAN'T BE 72 PEOPLE.  IT JUST

10   CANNOT BE 72 PEOPLE.

11             THE COURT:  WELL, IT CAN'T BE, BECAUSE

12   I'M GOING TO REDUCE THAT NUMBER.

13             MR. MCELHINNY:  OKAY.

14             THE COURT:  BUT -- ALL RIGHT.  THIS IS

15   WHAT I WOULD LIKE.  IT SOUNDS LIKE THIS ISSUE MIGHT

16   NOT BE FULLY RIPE, SO I'D LIKE YOU ALL TO MEET AND

17   CONFER.

18             MY ONLY GUIDANCE, IN HOPING TO RESOLVE

19   THIS, IS WHAT I SAID BEFORE.  IF IT'S 30(B)(6),

20   IT'S COMING IN BY DEPOSITION.

21             IF IT'S MANAGING AGENT, IT CAN COME IN BY

22   DEPOSITION.

23             I'M HOPING YOU MIGHT REACH AGREEMENT ON

24   THAT AND THAT DOESN'T HAVE TO BE LITIGATED.

25             MY PREFERENCE, THOUGH, IS THAT FOLKS COME

1    LIVE.

2              BUT DO YOU WANT TO FILE A STATUS REPORT

3    ON MONDAY AS TO WHETHER YOU WERE ABLE TO RESOLVE

4    THIS AND WHAT THE ISSUES ARE?

5              MR. VERHOEVEN:  THAT'S FINE, YOUR HONOR.

6              MR. MCELHINNY:  YES, YOUR HONOR.

7              THE COURT:  OKAY.  SO THAT'S 7-23-12.

8              NOW, WITH THE DEPO DESIGNATIONS, YOU

9    KNOW, APPLE HAS 90 DEPONENTS.  THAT'S TOO MANY.

10             SAMSUNG HAS 118.  THAT'S TOO MANY.

11             LET ME HEAR FROM SAMSUNG, APPLE'S

12   PROPOSAL WAS 25 HOURS OF DEPOSITION TESTIMONY TO BE

13   DESIGNATED OF NO MORE THAN 30 WITNESSES.

14             WHY DON'T YOU COUNTER IF YOU DON'T LIKE

15   THOSE NUMBERS?

16             MS. MAROULIS:  YOUR HONOR, WE NEED TO

17   HAVE MORE WITNESSES BECAUSE, AS I MENTIONED BEFORE,

18   THERE'S NUMEROUS INVENTORS ON EACH PATENT.

19             THE COURT:  HOW MANY MORE?

20             MS. MAROULIS:  AT LEAST 45.

21             THE COURT:  OKAY.  SO YOU'RE EACH GOING

22   TO DESIGNATE NO MORE THAN 25 HOURS OF TESTIMONY OF

23   NO MORE THAN 45 WITNESSES.  OKAY.

24             NOW, WHEN ARE THESE NEW WITNESS LISTS AND

25   NEW DEPO DESIGNATIONS GOING TO BE EXCHANGED?

```
 1            MS. MAROULIS:  YOUR HONOR, WE PROBABLY

 2    NEED UNTIL EARLY TO MID NEXT WEEK SO WE CAN MEET

 3    AND CONFER AND REDUCE THE NUMBERS ON BOTH SIDES.

 4            THE COURT:  WELL, MY CONCERN IS WE'RE

 5    SORT OF RUNNING OUT OF TIME.

 6            MS. MAROULIS:  MONDAY?

 7            THE COURT:  YEAH.

 8            MS. MAROULIS:  IS MONDAY ACCEPTABLE?

 9            THE COURT:  YEAH.  NOW, MONDAY, WILL THAT

10    BE SOON ENOUGH FOR -- WE'RE MEETING ON TUESDAY

11    AFTERNOON.  I'M GOING TO NEED SOME TIME TO PREPARE

12    FOR WHATEVER DISPUTES NEED TO BE DISCUSSED ON

13    TUESDAY AFTERNOON.

14            MS. MAROULIS:  HOW ABOUT MONDAY BY NOON,

15    YOUR HONOR?

16            THE COURT:  CAN WE SAY FOR ALL OF THE

17    DEADLINES THAT ARE JULY 23RD, AND WE'VE DONE A LOT,

18    CAN WE HAVE THEM ALL BE BY NOON SO I HAVE SOME TIME

19    TO PREPARE IN ADVANCE?

20            MS. MAROULIS:  YES, YOUR HONOR.

21            THE COURT:  OKAY.  SO -- ALL RIGHT.  NOW,

22    THERE WERE SOME COMPLAINTS, I THINK IN THE JOINT

23    PRETRIAL STATEMENT, ABOUT, YOU KNOW, SOME WITNESS

24    BEING DEPOSED AFTER FACT DISCOVERY AND HOW THEY

25    SHOULDN'T BE ON THE LIST AND WHATNOT.
```

```
 1            TO THE EXTENT THAT ANY DEPOSITION OR

 2     DISCOVERY WAS ALLOWED BY JUDGE GREWAL OR THE

 3     PARTIES STIPULATED TO ALLOWING THAT DISCOVERY TO

 4     HAPPEN AFTER THE FACT DISCOVERY CUT OFF, THAT'S

 5     FINE.

 6            BUT IF IT WASN'T DONE EITHER BY

 7     AUTHORIZATION BY JUDGE GREWAL OR BY STIPULATION,

 8     IT'S GOING TO BE EXCLUDED AS UNTIMELY.  OKAY?

 9            OKAY.  NOW, MY CALENDAR FOR AUGUST 2ND,

10     WHICH IS THURSDAY OF THE FIRST WEEK, HAS OPENED UP.

11     FORTUNATELY, SOMEONE ELSE IS GOING TO HANDLE MY LAW

12     AND MOTION THAT DAY, SO IF WE WANTED TO HAVE AN

13     ADDITIONAL DAY OF TRIAL THAT FIRST WEEK, I COULD DO

14     IT.

15            NOW, UNFORTUNATELY, OUR JURY POOL

16     RECEIVED THE DATES THAT WE HAD PREVIOUSLY DISCUSSED

17     AND OBVIOUSLY HAVE NOT RECEIVED THIS DATE OF THE

18     2ND.

19            WOULD YOU ALL -- IF OUR JURY CAN DO THE

20     2ND, WOULD YOU LIKE TO HAVE AN ADDITIONAL DAY THAT

21     FIRST WEEK?  OR SHOULD WE JUST KEEP THE SCHEDULE?

22            AND IT MAY DEPEND ON THEIR -- ON THE

23     JURY'S SCHEDULE ANYWAY.

24            MR. VERHOEVEN:  CAN I ASK A CLARIFICATION

25     QUESTION, YOUR HONOR?
```

```
1              THE COURT:  YES.
2              MR. VERHOEVEN:  SO THAT'S NOT GOING TO
3     CHANGE THE 25 HOUR TIME LIMIT?
4              THE COURT:  NO.
5              MR. VERHOEVEN:  OKAY.
6              THE COURT:  GOOD TRY THOUGH.
7              MR. MCELHINNY:  FROM OUR PERSPECTIVE,
8     CERTAINTY IS BETTER.  SO WE WOULD BE GLAD TO HAVE
9     THE DAY, BUT THE UNCERTAINTY WITH WITNESS SCHEDULES
10    IS WHAT WE'RE --
11             MR. VERHOEVEN:  SAME THING HERE, YOUR
12    HONOR.
13             THE COURT:  OKAY.
14             MR. VERHOEVEN:  SO PERHAPS WE SHOULD JUST
15    LEAVE IT THE WAY IT IS.
16             THE COURT:  THAT'S FINE.
17             MR. VERHOEVEN:  IF IT'S NOT GOING TO
18    AFFECT THE TOTAL DEADLINE, IT MAY ADVERSELY IMPACT
19    THE PLANNING THAT WE'VE DONE SO FAR.
20             THE COURT:  THAT'S FINE.  THAT'S FINE.
21             OKAY.  ALL RIGHT.  LET'S TALK ABOUT THE
22    EXHIBITS.
23             I DIDN'T REALIZE JOINT EXHIBITS WOULD
24    BECOME A POINT OF CONTENTION.
25             WHAT I'D LIKE TO DO IS -- I MEAN, NOW
```

```
 1    THAT WE'RE GETTING CLOSER AND YOU'RE, YOU KNOW,

 2    MORE FOCUSSED ON WHAT YOU'RE GOING TO PRESENT, HOW

 3    MANY EXHIBITS DOES EACH SIDE REALLY NEED?  AND I'M

 4    NOT GOING TO 498, SO THAT'S NOT HAPPENING.

 5              MR. JACOBS:  SO I'M NOT SURE EXACTLY WHAT

 6    YOU'RE -- CAN I ANSWER A SLIGHTLY DIFFERENT

 7    QUESTION, WHICH IS HOW DO WE ADDRESS THE JOINT

 8    EXHIBIT LIST?  BECAUSE I THINK WE'RE PRETTY CLOSE,

 9    ACTUALLY.

10              THE COURT:  OH, ARE YOU?  OKAY.  ARE

11    THERE NEW DEVELOPMENTS ON THAT?

12              MR. JACOBS:  WELL, I THINK -- WHAT IS ON

13    SAMSUNG'S JOINT EXHIBIT LIST IS 28 EXHIBITS

14    CONSISTING OF PATENTS AND FILE HISTORIES; AND THEN

15    WE HAVE OUR PROPOSED JOINT EXHIBIT LIST WHICH

16    EMBRACED THAT CATEGORY, BUT REQUIRED THAT THE JOINT

17    EXHIBIT LIST NUMBER GO UP TO, I BELIEVE, 76.

18              I DON'T THINK THAT FULLY ADDRESSES

19    EVERYTHING THEY WANTED ON THE JOINT EXHIBIT LIST,

20    SO THEY MAY TELL YOU THEY NEED SOME MORE EXHIBITS,

21    BUT IT WOULD GET US A JOINT EXHIBIT LIST WITH BOTH

22    SIDES COMFORTABLE WITH THE CATEGORIES AND

23    CONSISTENT WITH THE DISCUSSION WE HAD WITH YOUR

24    HONOR ABOUT WHAT CATEGORIES OF EXHIBITS WOULD BE ON

25    THE LIST.
```

```
 1              AND ALL THAT HAS TO HAPPEN FOR THAT TO
 2     HAPPEN IS FOR YOU TO AGREE THAT 60 CAN BE 76 AND WE
 3     WILL HAVE MADE SOME PROGRESS THERE.
 4              THE COURT:  DO YOU AGREE WITH THAT,
 5     MR. JOHNSON?  MS. MAROULIS?
 6              MS. MAROULIS:  YOUR HONOR, IF I COULD
 7     ADDRESS THAT?  ONE THING WE HEARD YOUR HONOR SAY AT
 8     THE LAST HEARING WAS THAT WE CAN PUT PRIOR ART ON
 9     THE JOINT LIST AND THAT'S ONE CATEGORY WE'RE
10     DISPUTING BECAUSE APPLE IS NOT WILLING TO PUT OUR
11     PHYSICAL DEVICE PRIOR ART ON THE JOINT LIST.
12              SO IF WE CAN HAVE THAT, IT WILL
13     COMPLETELY ELIMINATE THE DISPUTE.
14              MR. JOHNSON:  ONE -- JUST A FOLLOW-UP.
15     ONE OF THE ISSUES HAS BEEN, WHEN I STOOD UP HERE
16     AND TALKED ABOUT THE JOINT EXHIBIT LIST, I SAID WE
17     WANTED TO PUT PRIOR ART ON IT.
18              APPLE HAS ONLY ALLOWED TWO PIECES OF
19     PRIOR ART ON THE JOINT EXHIBIT LIST AND THEY SAY
20     THEY'RE NOT WILLING TO PUT OTHER PIECES OF PRIOR
21     ART ON BECAUSE THEY WANT TO CONTEST WHETHER IT'S
22     ACTUALLY PRIOR ART OR NOT.
23              AND MY RESPONSE WAS THE FACT THAT IT'S
24     GOING ON THE JOINT EXHIBIT LIST DOESN'T MEAN
25     WHETHER IT'S ADMISSIBLE AT THAT POINT, OR THAT THEY
```

```
 1    CAN'T ARGUE LATER THAT IT'S ACTUALLY PRIOR ART, FOR
 2    EXAMPLE.
 3              ALL WE'RE DOING IT MARKING IT FOR
 4    PURPOSES OF A JOINT EXHIBIT LIST.
 5              SO AT THIS POINT WHAT WE HAD TO DO WAS
 6    MOVE ALL OF OUR PRIOR ART INTO OUR LIST OF 125
 7    EXHIBITS, WHICH WAS INCREDIBLY PREJUDICIAL BECAUSE
 8    WE'VE ONLY GOT -- AS I EXPLAINED LAST TIME, WE
 9    WANTED TO BE ABLE TO -- WHAT WE WERE EXCHANGING WAS
10    THE ABILITY FOR THEM TO PUT ON THE ACCUSED PRODUCTS
11    ON THEIR SIDE AND FOR US TO PUT ON PRIOR ART.
12              WE'VE ONLY BEEN ALLOWED TO PUT TWO PIECES
13    OF PRIOR ART ON TO THE JOINT EXHIBIT LIST.
14              THE COURT:  SO WILL THE MOTIONS IN LIMINE
15    AND THE, YOU KNOW, MOTIONS FOR RECONSIDERATION,
16    WILL THAT TAKE CARE OF THE DISPUTE AS TO WHAT IS
17    PRIOR ART OR NOT?
18              MR. JOHNSON:  NO.
19              THE COURT:  OR THAT'S EVEN SEPARATE?
20              MR. JOHNSON:  THAT'S A SEPARATE ISSUE
21    ALTOGETHER.
22              THE COURT:  OH.
23              MR. JACOBS:  AND I THINK IT DEPENDS ON
24    THE COURT'S RULING.  BUT THERE IS A CERTAIN OPTIC,
25    IF YOU WILL, TO JOINT, AND IT IS CORRECT WHERE WE
```

1     THOUGHT AN EXHIBIT MIGHT NOT COME INTO EVIDENCE, WE

2     DIDN'T THINK IT SHOULD HAVE A JOINT EXHIBIT LIST

3     NUMBER.

4              AND BESIDES, WE WERE UP AGAINST -- WE

5     WERE EVEN EXCEEDING, WITH OUR PROPOSAL, THE CAP OF

6     60.  SO THAT'S WHERE WE ENDED UP.

7              BUT, AGAIN, FOR THE JOINT LIST, I THINK

8     IF WE GET TO 76 AND THESE CATEGORIES, WE'LL BE DONE

9     WITH THE JOINT LIST, AND THEN YOU CAN ASK THE

10    QUESTION THAT I THINK YOU STARTED WITH, WHICH IS

11    HOW MANY EXHIBITS DO WE NEED?

12             THE COURT:  I JUST THINK IT WOULD BE

13    SIMPLER, RATHER THAN BOTH SIDES DESIGNATING THE

14    SAME DOCUMENT AND HAVING TWO SEPARATE NUMBERS --

15             MR. JACOBS:  EXACTLY.

16             MR. JOHNSON:  AGREED.

17             THE COURT:  IT'S GOING TO BE REALLY HARD

18    TO MANAGE AS IT IS.

19             MR. JOHNSON:  AGREED.  THAT'S WHY -- I

20    MEAN, ALL WE'RE TALKING ABOUT IS BEING ABLE TO PUT

21    SOME OF THOSE, WHAT'S NOW ON OUR 125 LIST, TO MOVE

22    THOSE TO THE JOINT LIST BECAUSE WE SHOULD BE ABLE

23    TO REFER TO THEM.

24             WE'RE GOING TO BE REFERRING TO THEM

25    DURING THE COURSE OF THE TRIAL.  THEY'RE GOING TO

1    BE REFERRING TO THEM.

2         WE MIGHT HAVE A DIFFERENCE OF OPINION ON

3    WHETHER THEY'RE ACTUALLY PRIOR ART OR NOT, BUT IN

4    TERMS OF MARKING THEM, DURING THE TRIAL BOTH SIDES

5    WOULD BENEFIT FROM BEING ABLE TO REFER TO THE SAME

6    EXHIBIT NUMBER.

7         THE COURT:  WELL, MY ONLY CONCERN IS FOR

8    THE JOINT EXHIBIT LIST, THE JOINTNESS IS THAT

9    THERE'S BASICALLY AN AGREEMENT BY THE PARTIES THAT

10   IT SHOULD BE ON THE EXHIBIT LIST AS -- THERE SHOULD

11   BE SOME AGREEMENT ABOUT --

12        MR. JOHNSON:  THEN WE WOULD ASK -- THEN

13   WE WOULD ASK THAT OUR NUMBERS, THAT WE BE ALLOWED

14   TO INCREASE OUR NUMBERS ON THE EXHIBIT LIST.

15        THE COURT:  BY HOW MUCH?  BY HOW MUCH?

16        MR. JOHNSON:  AND -- 100.  AND THE REASON

17   FOR THAT, YOUR HONOR, JUST IF I COULD EXPLAIN IT,

18   THE ISSUE THAT WE WERE NOT ANTICIPATING WHEN WE

19   STOOD UP HERE AT THE LAST CMC AND WE TALKED ABOUT

20   EXHIBITS AND THE 125 LIMIT, GIVEN THE SCOPE OF THE

21   CASE, WAS THAT APPLE WOULD USE THAT TO THEN SUBMIT

22   COMPILATIONS OF HUNDREDS OF EXHIBITS AND COMBINE

23   THOSE INTO ONE EXHIBIT.

24        SO EFFECTIVELY WHAT THEY'VE DONE IS

25   THEY'VE TAKEN ONE EXHIBIT NUMBER, FOR EXAMPLE,

```
 1    THEIR EXHIBIT 1 IS A 99-PAGE EXHIBIT THAT CONSISTS
 2    OF HUNDREDS OF DEPOSITION EXHIBITS THAT WERE
 3    THEN -- PIECES OF THIS EXHIBIT WERE THEN PUT ON --
 4    YOU KNOW, WERE THEN COMBINED WITH OTHER PIECES.
 5              AND WHAT WE'RE NOW FACING IS AN
 6    INCREDIBLY LARGE EXHIBIT LIST ON THEIR SIDE, AND WE
 7    THINK WE STUCK TO THE SPIRIT OF YOUR HONOR'S
 8    GUIDANCE AND KEPT IT 125 ON OUR SIDE, YET ON THE
 9    APPLE SIDE, WE'VE GOT AN EXHIBIT THAT HAS -- ONE
10    EXHIBIT THAT HAS 68 DIFFERENT VIDEO FILES.
11              THE COURT:  I SAW THEIR EXHIBIT LIST AND
12    I AGREE WITH YOU.  I SAW THEIR LIST AND I AGREE
13    WITH YOU.
14              MR. JOHNSON:  WHEN WE ADD ALL THOSE UP,
15    WE GET TO 498.  WE'RE NOT ASKING FOR 498.  WE'RE
16    ASKING FOR 100.
17              THE COURT:  NO.  YOU'RE ASKING FOR 225.
18              MR. JOHNSON:  225 TOTAL.  IT'S AN EXTRA
19    100.
20              AND GOING BACK TO MR. VERHOEVEN'S POINT,
21    THE HOURS HERE ARE GOING TO KEEP EVERYBODY IN CHECK
22    ON WHAT WE PUT IN, BUT AT LEAST BEING ABLE TO REFER
23    TO THE EXTRA 100 WE THINK WOULD HELP.
24              THE COURT:  AND SOME YOU MAY ULTIMATELY
25    END UP NOT EVEN MARKING DEPENDING ON HOW THINGS
```

1    TURN OUT.

2            MR. JOHNSON:  THAT'S CORRECT.

3            THE COURT:  WELL -- SO WHAT AM I DOING,

4    THEN?  I'M LETTING BOTH SIDES HAVE 225 AND

5    INCREASING THE JOINT EXHIBIT LIST TO 76?

6            MR. JOHNSON:  WE THINK THEY'RE ALREADY

7    BEYOND 225 GIVEN THE WAY THEY'VE APPROACHED THEIR

8    EXHIBITS.

9            THE COURT:  WELL, THEY'RE GOING TO HAVE

10   TO BREAK IT UP, BECAUSE I'M NOT GOING TO APPROVE

11   THEIR LIST AS I SAW IT.

12           YOU CAN TELL BECAUSE ONE EXHIBIT HAS FOUR

13   OR FIVE EXHIBIT NUMBERS IN THE LEFT HAND COLUMN, SO

14   THAT'S NOT FOLLOWING THE SPIRIT OF MY LIMIT.

15           MR. JOHNSON:  SO 225 PER SIDE.

16           MR. JACOBS:  I THINK THERE'S SOME

17   CONFUSION, SO BEFORE -- I'D ASK THAT YOU WITHHOLD

18   JUDGMENT FOR A MINUTE.

19           THE COURT GAVE US 125 EXHIBITS AND GAVE

20   US 25 HOURS AND PUT TO US THE CHALLENGE OF TRYING A

21   FAIRLY COMPLICATED CASE WITH THE BEST TECHNIQUES WE

22   CAN MARSHAL FOR MAKING IT -- FOR GETTING THE

23   EVIDENCE IN AND FOR MAKING IT UNDERSTANDABLE TO THE

24   JURY.

25           RULE 1006 ALLOWS LITIGANTS, WHERE THERE

1    ARE NUMEROUS UNDERLYING DOCUMENTS, TO CREATE

2    SUMMARIES FOR PRESENTATION TO THE JURY AND FOR

3    ADMISSION INTO EVIDENCE.

4         IT IS USED -- IF YOU LOOK AT THE CASES

5    FOR RULE 1006, IT'S USED FOR ALL KINDS OF SUMMARIES

6    RANGING FROM, TO BE SURE, KIND OF SUMMARIES OF

7    FINANCIAL INFORMATION TO A PROSECUTOR HAVING AN

8    EXPERT DESCRIBE, BY WAY OF A RULE 1006 EXHIBIT

9    WHICH GOES INTO EVIDENCE, THE COMPLICATED STRUCTURE

10   OF A GANG.

11        WE HAVE -- IN OUR EXHIBIT LIST, WE HAVE

12   USED RULE 1006 TO CREATE SUMMARIES OF VOLUMINOUS

13   UNDERLYING EXHIBITS.

14        THE WAY THE RULE WORKS IS YOU SEND THE

15   SUMMARY TO THE OTHER SIDE, ALONG WITH THE

16   UNDERLYING DOCUMENTS, BECAUSE THE CROSS-EXAMINATION

17   ABOUT RULE 1006 IS, IS THIS A FAIR SUMMARY OF THE

18   UNDERLYING MATERIALS?

19        SO WHAT WE DID IS WE CREATED OUR RULE

20   1006 SUMMARIES OF, FOR EXAMPLE, CLIPS OF NEWSCASTS

21   THAT SHOW THE IPHONE HAVING BEEN RELEASED.

22        WHY DO WE NEED A LOT OF CLIPS OF THOSE

23   NEWSCASTS?

24        WELL, BECAUSE WE HAVE TO PROVE FAME AND

25   FAME REQUIRES LOTS OF EVIDENCE OF, WOW, IT WAS IN A

1    LOT OF NEWSCASTS.

2              SO WE CREATED A SUMMARY AND WE SUBMITTED

3    THAT AS A SUMMARY WITH -- AS A RULE 1006 EXHIBIT.

4    THAT'S ONE EXAMPLE.

5              ANOTHER EXAMPLE WOULD BE A SUMMARY OF

6    COMMENTARY ABOUT -- IN THE PRESS.

7              SO THERE ARE A LOT OF UNDERLYING

8    DOCUMENTS THAT ARE IN THAT STACK --

9              THE COURT:  OKAY.  I'M SORRY.

10             MR. JACOBS:  YOU SEE WHERE I'M GOING?

11             THE COURT:  I HEAR YOU.  I STILL THINK,

12   THOUGH, THE UNDERLYING DOCUMENTS FOR WHICH A

13   SUMMARY IS CREATED ALL NEED TO BE MARKED

14   INDIVIDUALLY.

15             IF I GAVE EACH SIDE 225, WOULD YOU --

16             MR. JACOBS:  WE WOULD NOT BE SUBMITTING

17   INTO EVIDENCE THE UNDERLYING DOCUMENTS.  THAT'S

18   WHERE I'M QUARRELLING WITH THE COURT'S APPROACH ON

19   THIS RIGHT NOW.  WE WOULD BE SUBMITTING INTO

20   EVIDENCE THE SUMMARY.

21             WE WOULD HAVE SENT TO THE OTHER SIDE THE

22   UNDERLYING DOCUMENTS SO THAT THEY CAN -- THAT'S THE

23   WAY RULE 1006 WORKS.

24             THE COURT:  BUT ARE YOU GOING TO HAVE THE

25   WITNESS SAY, "HERE'S EXHIBIT 1 THROUGH 50.  IS THIS

```
 1     WHAT YOU RELIED UPON TO CREATE YOUR SUMMARY?
 2            "YES, IT IS."
 3            AND THEN NOT MOVE TO ADMIT EXHIBITS 1
 4     THROUGH 50, BUT AT LEAST MARK IT AS AN EXHIBIT THAT
 5     THEY RELIED UPON AND USED TO CREATE THIS SUMMARY?
 6            MR. MCELHINNY:  NO.  THE ANSWER IS NO.  I
 7     MEAN, FRANKLY, I'M A LITTLE BIT -- I'M ALWAYS A
 8     LITTLE BIT SURPRISED -- BUT I ACTUALLY THOUGHT WE
 9     WERE DOING EXACTLY WHAT YOUR HONOR WANTED, WHICH IS
10     TRYING TO TAKE WHAT IS A LONG, COMPLEX CASE AND PUT
11     IT IN IN A WAY THAT A JURY CAN SEE, AND 1006 IS THE
12     WAY YOU DO THAT.
13            SO THE SUMMARY GOES IN.  ALL THE
14     UNDERLYING DOCUMENTS HAVE TO BE PRESENTED TO THE
15     OTHER SIDE BECAUSE THEY HAVE A CHANCE TO CHALLENGE
16     THE SUMMARY, IF IT'S FAIR.
17            BUT TO TAKE MR. JACOBS' EXAMPLE, THE
18     PUBLICATIONS THAT HAVE COMMENTED ON THE FANTASTIC
19     NATURE OF THE DESIGN AND THE UNIQUE DESIGN OF THE
20     APPLE -- THERE ARE LITERALLY HUNDREDS OF DOCUMENTS,
21     THOUSANDS OF DOCUMENTS THAT DO THAT WHICH, IF WE
22     WERE TRYING TO PROVE FAME AND IF WE HAD AN
23     UNLIMITED WORLD, WE WOULD HAVE SOMEBODY PUT IN
24     BINDERS OF DOCUMENTS.
25            BUT YOUR HONOR, WE THINK CORRECTLY, SAID
```

1      THERE'S A BETTER WAY TO DO THAT.

2              SO THE SUMMARY DOES THAT, AND THE WITNESS

3      SAYS, "HERE'S A SUMMARY.  I LOOKED AT THOUSANDS OF

4      DOCUMENTS."

5              BUT THIS IS THE EXHIBIT THAT THE JURY

6      GETS AND THEY GET IT AS A SUMMARY WITH AN

7      EXPLANATION OF IT.

8              AND, FRANKLY, WE THOUGHT WE WERE RIGHT ON

9      WHAT YOUR HONOR WAS TRYING TO DO, WHICH IS TO USE

10     ADVANCED, IMPROVED TRIAL TECHNIQUES IN ORDER TO

11     MAKE A COMPLICATED CASE TRIABLE IN A SHORT PERIOD.

12              MR. JOHNSON:  YOUR HONOR, IF I MAY

13     APPROACH?

14              LET ME JUST HAND YOU WHAT THEY'VE MARKED

15     AS THEIR EXHIBIT NUMBER 26, BECAUSE I THINK THIS

16     DEMONSTRATES WHY WHAT MR. MCELHINNY JUST SAID IS

17     GOING TO BE A PROBLEM.

18              THIS IS APPLE'S EXHIBIT NUMBER 26

19     (INDICATING).  IT REFERS TO DOCUMENTS PRODUCED BY

20     APPLE AND SAMSUNG.

21              I DON'T KNOW HOW APPLE'S GOING TO HAVE

22     ONE WITNESS THAT CAN BRING IN DOCUMENTS FROM BOTH

23     APPLE AND SAMSUNG.  THE DOCUMENTS ARE VERY

24     DIFFERENT.

25              THIS IS NOT A RULE 1006 SUMMARY WHEN YOU

1    THINK OF IT IN THE TRADITIONAL SENSE OF TAKING

2    UNDERLYING INVOICES, ADDING THEM UP, AND THEN

3    PRESENTING A SUMMARY FOR DAMAGES PURPOSES TO THE

4    JURY.

5            YOU'LL SEE ON HERE PRESS RELEASES,

6    QUARTERLY STATEMENTS, YOU'LL SEE INTERNAL

7    DOCUMENTS, ALL KINDS OF THINGS.

8            AND YET, WHAT THEY SAY THIS EXHIBIT IS,

9    IS A SUMMARY OF SELECTED DOCUMENTS REFLECTING

10   COMMENTS ON DEMAND FOR DESIGN PATENTS AND TRADE

11   DRESS.

12           THIS IS A DOCUMENT THAT WAS CREATED BY

13   APPLE'S COUNSEL AND IS REALLY ARGUMENT MORE THAN

14   ANYTHING.  IT'S NOT -- IT'S NOT A SUMMARY OF ANY

15   PARTICULAR EVIDENCE.

16           AND WHAT THEY DID WAS IGNORE THE SPIRIT

17   OF WHAT I THOUGHT WAS TRYING TO -- THE COURT TRYING

18   TO COME UP WITH 125 EXHIBITS ON BOTH SIDES.

19           EVEN AT 225, YOUR HONOR, WE BELIEVE 225

20   IS, IS A NUMBER THAT IS -- IT'S GOING TO BE ALMOST

21   IMPOSSIBLE TO -- LOOKING AT HOW BROAD THE CASE IS,

22   STILL, ON THE APPLE SIDE AND TO PRESERVE OUR

23   RIGHTS, EVEN A NUMBER OF 225 EXHIBITS, I BELIEVE,

24   IS TOO SMALL.

25           YET, LOOKING AT WHAT THEY'VE DONE TO

```
 1    SUMMARIZE THEIR EXHIBITS, THEY'VE TRIED TO DO AN
 2    END RUN AROUND THE IDEA OF THE NUMBER OF EXHIBITS
 3    IN THIS CASE COMPLETELY AND IT'S INCREDIBLY
 4    PREJUDICIAL TO US.
 5              MR. MCELHINNY:  IF I MAY, YOUR HONOR?  I
 6    THINK MR. JOHNSON HAS PICKED A BAD EXAMPLE.
 7              THIS IS A, A -- THIS IS AN EXHIBIT TO OUR
 8    DAMAGES EXPERT'S REPORT.  HE WILL BE TESTIFYING
 9    ABOUT THE QUESTION OF WHETHER OR NOT THERE IS
10    DEMAND AND HIS OPINION ABOUT WHETHER OR NOT THERE
11    WAS DEMAND FOR THESE PRODUCTS.
12              AND THE QUESTION THAT WAS ASKED IS, WHAT
13    IS THE BASIS UPON WHICH YOU HAVE COME TO THE
14    CONCLUSION THAT THERE IS DEMAND?
15              AND HE HAS PREPARED A REPORT, AN EXHIBIT
16    OF ALL OF THE DOCUMENTS THAT HE STUDIED, WHICH HE
17    CAN TALK ABOUT IF HE'S ASKED ABOUT THEM, THAT ARE
18    UNDERLYING HIS OPINION ON WHETHER OR NOT -- THIS
19    ISN'T EVEN -- THIS WOULD BE ROUTINE IN ALMOST ANY
20    KIND OF A DAMAGES EXPERT OPINION.  THIS IS NOT A
21    PARTICULARLY COMPLEX ONE.
22              I -- THE -- I MEAN, LET ME BE A LITTLE
23    BIT CLEAR HERE.  WHAT I THINK IS HAPPENING IS, YOU
24    KNOW, WE'RE AT THIS POINT NOW WHERE, YOU KNOW, IT
25    IS IN SAMSUNG'S INTEREST TO MAKE THIS TRIAL
```

```
 1    IMPOSSIBLE TO GO FORWARD AND SO EVERYTHING IS GOING

 2    TO BE A PROBLEM AND EVERYTHING IS GOING TO BE AN

 3    OBJECTION.

 4              IF THEY HAVE LEGITIMATE OBJECTIONS TO

 5    SPECIFIC EXAMPLES OF OUR EXHIBITS, THEN WE CAN DO

 6    THAT.

 7              I MEAN, I THINK YOUR HONOR WOULD BE

 8    RULING ON WHETHER OR NOT PARTICULAR INDIVIDUALS --

 9    BUT THE USE OF 1006, FRANKLY, IS EXACTLY WHAT, YOU

10    KNOW, THEY SHOULD HAVE BEEN DOING, TOO.  THAT'S THE

11    WAY -- AND THE GOVERNMENT IS THE ONE THAT HAS BEEN

12    TEACHING PEOPLE HOW TO USE THESE -- BUT IT'S THE

13    WAY THAT VERY COMPLEX FACT PATTERNS ARE PRESENTED

14    TO JURIES IN A WAY THAT ALLOWS YOU TO HAVE A TRIAL

15    IN LESS THAN THREE MONTHS.

16              MR. JOHNSON:  THIS EXHIBIT NUMBER 26,

17    WHEN YOU LOOK AT THE UNDERLYING DOCUMENTS, THERE

18    ARE SIX BINDERS FULL.  THIS IS ONE OF SIX

19    (INDICATING).  AND THIS IS ONLY ONE EXAMPLE.

20              WE IDENTIFIED IN OUR PRETRIAL CONFERENCE,

21    IN THE FINAL PRETRIAL CONFERENCE STATEMENT, WE

22    EXPLAINED THERE'S OTHER EXAMPLES OF WHERE THEY'VE

23    USED THIS ATTEMPT TO IMPROPERLY SUMMARIZE EXHIBITS

24    THAT --

25              THE COURT:  BUT IS THAT AN EXHIBIT TO A
```

```
1    DAMAGES EXPERT'S REPORT, THE SUMMARY EXHIBIT 26?

2              MR. MCELHINNY:  WHICH HE PREPARED, NOT

3    COUNSEL.

4              THE COURT:  ANYWAY, OKAY.

5              MR. JOHNSON:  YES, IT IS, YOUR HONOR.

6              THE COURT:  OKAY.  ALL RIGHT.

7              MR. MCELHINNY:  BUT TO BE CLEAR, IT

8    SOUNDS AS THOUGH COUNSEL HAD NEVER HEARD OF RULE

9    1006.

10             THIS IS -- WHEN YOU'RE TRYING TO TAKE SIX

11   BINDERS OF INFORMATION AND NOT HAVE TO GO THROUGH

12   ALL OF IT AND PRESENT IT FAIRLY IN A SUMMARY -- AND

13   IF THEY DON'T THINK IT'S FAIR, THEY CAN OBJECT TO

14   THAT.  THIS IS WHY THE RULE WAS CREATED.  THIS IS

15   WHY IT'S -- THIS IS HOW YOU'RE SUPPOSED TO DO IT.

16             THE COURT:  ALL RIGHT.  WELL, LET'S

17   RESOLVE THE EXHIBIT NUMBER ISSUE.

18             MR. MCELHINNY:  AND --

19             THE COURT:  THE HOURS LIMIT IS GOING TO

20   FORCE A SELECTION.

21             MR. MCELHINNY:  I'M SORRY.  JUST TO

22   ADDRESS THAT?

23             THE COURT:  YEAH.

24             MR. MCELHINNY:  I OPENED UP THIS JOINT

25   EXHIBIT ISSUE AND IT WAS VERY PARTICULAR BECAUSE OF
```

```
1    THE FACT THAT THE NUMBER OF ACCUSED DEVICES, BOTH

2    PARTIES' ACCUSED DEVICES SHOULD -- BECAUSE THE

3    NUMBER OF DEVICES SUBTRACT SUCH A LARGE PERCENTAGE

4    OF THE 125 LIST.

5              WHAT'S HAPPENING NOW, AND THIS IS, THIS

6    IS -- IF YOUR HONOR IS OPEN --

7              THE COURT:  HOW MUCH OF WHAT'S ON THE

8    JOINT EXHIBIT LIST IS WHAT APPLE WANTS?  I WOULD

9    SAY IT'S PROBABLY THE MAJORITY IF YOU HAVE 26 TO 31

10   ACCUSED PRODUCTS OUT OF 76.

11             MR. MCELHINNY:  IT IS, YOUR HONOR, AND

12   76 -- WE HAVE 31 ACCUSED PRODUCTS.  THAT WAS -- MY

13   ORIGINAL PROPOSAL WAS --

14             THE COURT:  I DON'T THINK AT TRIAL WE'RE

15   GOING TO DO 31.

16             MR. MCELHINNY:  THEN IT WILL COME DOWN.

17             BUT THE ORIGINAL PROPOSAL WAS THAT THE --

18   BECAUSE OF THE NUMBER OF ACCUSED PRODUCTS, WHICH I

19   CAN ADDRESS ON WHY WE HAVE TO DO A LARGE NUMBER OF

20   ACCUSED PRODUCTS, BUT THE NUMBER OF ACCUSED

21   PRODUCTS WOULD MAKE UP A QUARTER OF OUR EXHIBIT

22   LIST.

23             THE COURT:  ALL RIGHT.  SO IT'S GOING TO

24   BE -- I'M EATING MY OWN WORDS HERE.  I'D LIKE TO

25   JUST MOVE ON IF WE CAN.
```

1          THE JOINT EXHIBIT LIST, BOTH SIDES HAVE

2    TO AGREE AS TO ADMISSIBILITY.  THAT'S WHAT'S GOING

3    TO MAKE IT JOINT.

4          BUT I WILL INCREASE THE NUMBER FOR YOUR

5    SEPARATE EXHIBITS.  CAN YOU DEAL WITH 200,

6    MR. JOHNSON?

7          AND I'LL INCREASE THE JOINT EXHIBIT LIST.

8    WHAT'S THE NUMBER YOU WANT ON THE JOINT LIST?  I

9    MEAN, I THINK THERE'S AN INCENTIVE TO HAVE A JOINT

10   LIST JUST SO WE DON'T HAVE MULTIPLE NUMBERS --

11          MR. JOHNSON:  THE ISSUE IS THEY'RE NOT

12   GOING TO AGREE TO WHAT WE WANT TO ADD TO THE JOINT

13   EXHIBIT LIST, SO INCREASING THE JOINT EXHIBIT LIST

14   I'M NOT SURE BUYS US ANYTHING.

15          SO IF WE DO 100 ON THE JOINT LIST --

16          THE COURT:  100 ON THE JOINT LIST AND 200

17   ON THE SEPARATE LIST?

18          MR. JOHNSON:  YES.

19          THE COURT:  WOULD THAT BE ACCEPTABLE?

20          MR. JOHNSON:  WE WILL TRY TO WORK -- MAKE

21   THAT WORK, YES.

22          THE COURT:  OKAY.  ALL RIGHT.  SO IT'S

23   200 FOR EACH SEPARATE LIST, AND 100 FOR THE JOINT

24   LIST.

25          AND THEN GIVE ME THE DATE BY WHICH -- CAN

```
1    YOU DO THAT -- IT'S GOING TO MAKE IT VERY DIFFICULT

2    FOR ME TO TRY TO GET ALL THIS DONE.

3             WHAT DO YOU NEED?  NOON ON MONDAY, OR CAN

4    YOU DO THEM SOONER?  I GUESS THAT'S PROBABLY

5    DIFFICULT.

6             MR. JOHNSON:  NOON ON MONDAY, PLEASE,

7    YOUR HONOR.

8             THE COURT:  OKAY.

9             MR. JOHNSON:  AND I WOULD ALSO JUST ASK

10   FOR SOME GUIDANCE.  WITH RESPECT TO THESE

11   SUMMARIES, IT'S NOT JUST EXHIBIT 26.  AS I SAID,

12   THEY'VE GOT 62 VIDEO FILES IDENTIFIED AS ONE

13   EXHIBIT.  THEY'VE GOT HUNDREDS OF OTHER EXHIBITS

14   COMPILED AND MADE INTO ANOTHER SINGLE EXHIBIT WHICH

15   WE EXPLAINED IN OUR SECTION OF THE JOINT PRETRIAL

16   STATEMENT.

17            EXHIBIT NUMBER 6 HAS 18 DIFFERENT PRESS

18   REPORTS.

19            17 HAS 28 DIFFERENT NEWS ARTICLES.

20            THE COURT:  WELL, ON THE INDIVIDUAL

21   EXHIBITS, I'LL JUST HAVE TO RULE ON THE OBJECTIONS

22   AT THE TIME.

23            BUT JUST GENERALLY, SOMETHING LIKE

24   PLAINTIFF'S EXHIBIT 26, IF THAT WAS A COMPILATION

25   THAT WAS AN ATTACHMENT TO A DAMAGES EXPERT REPORT,
```

1    THAT'S FINE.

2              BUT, YOU KNOW, OTHERWISE I UNDERSTAND

3    WHERE YOU'RE COMING FROM.  IF THERE IS A LOT OF

4    AGGREGATION OF INDIVIDUAL EXHIBITS THAT ARE ALL

5    JUST GETTING LUMPED TOGETHER TO CIRCUMVENT THE

6    LIMITS, THEN THERE MAY BE AN ISSUE.  OKAY?

7              MR. JOHNSON:  OKAY.

8              THE COURT:  ALL RIGHT.  NOW, THE

9    PROCEDURE AND TIMING FOR -- I'M GOING TO ADOPT

10   APPLE'S PROPOSAL THAT YOU HAVE TO GIVE TWO DAYS

11   NOTICE BEFORE THE WITNESS IS EXPECTED TO TESTIFY,

12   BOTH THE WITNESS AND THE EXHIBITS TO BE USED TO THE

13   OTHER SIDE.

14             AND THEN BY 2:00 P.M. THE NEXT DAY, THE

15   OPPOSING PARTY SHALL IDENTIFY ANY EXHIBITS TO BE

16   USED ON CROSS.

17             NOW, I'M GOING TO REQUIRE -- I WANT

18   OBJECTIONS AT LEAST 24 HOURS -- MAYBE WE SHOULD

19   SAY -- I MEAN, I'D LIKE TO GIVE YOU A RULING ON ANY

20   OBJECTIONS TO A WITNESS OR TO AN EXHIBIT THE

21   MORNING OF -- YOU KNOW, AT THE 8:30 PRE-CONFERENCE

22   THE DAY THAT WITNESS IS GOING TO TESTIFY.

23             SO HOW SOON CAN YOU ALL GIVE ME YOUR

24   OBJECTIONS?  I MEAN, I WOULD LIKE SOME TIME -- I

25   MEAN, SOME OF THEM MAY NOT BE TIME CONSUMING, BUT I

1    CAN IMAGINE OTHERS MAY REQUIRE SOME RESEARCH.

2                SO CAN YOU DO IT 9:00 A.M. THE DAY BEFORE

3    THE WITNESS IS CALLED SO THAT I CAN RULE ON THEM AT

4    8:30 ON THE DAY THE WITNESS IS CALLED?

5                MR. JOHNSON:  THAT WOULD NOT APPLY TO

6    CROSS EXHIBITS, OBVIOUSLY.

7                THE COURT:  NO, BUT AT LEAST FOR

8    DIRECT -- BOTH DIRECT -- THE NAME OF THE WITNESS,

9    EITHER ANY DEPO DESIGNATIONS, AND THE EXHIBITS TO

10   BE USED, IF YOU CAN GIVE ME ANY OBJECTIONS TO THOSE

11   BY 9:00 A.M. THE DAY BEFORE -- ACTUALLY, 8:30 WOULD

12   BE BETTER.  IF YOU CAN GIVE IT TO ME BY 8:30 THE

13   DAY BEFORE, I THINK THAT WOULD BE FINE.

14               MR. MCELHINNY:  I'M SORRY, YOUR HONOR.  I

15   THINK WE'RE ONLY GETTING THEM AT 7:00 OR 8:00

16   O'CLOCK AT NIGHT.  I MEAN, THAT'S THE --

17               THE COURT:  WELL, THEN, WHAT'S YOUR

18   PROPOSAL?

19               MR. MCELHINNY:  AT NOON WOULD BE MY

20   PROPOSAL.

21               THE COURT:  OKAY.  SO BY NOON THE DAY

22   BEFORE --

23               MR. MCELHINNY:  YES, YOUR HONOR.

24               THE COURT:  -- A WITNESS IS TO TESTIFY,

25   THEN YOU'LL GIVE ME ANY OBJECTIONS TO THE WITNESS,

```
1    THE EXHIBITS, AND THE DEPO DESIGNATION?

2              MR. MCELHINNY:  YES, YOUR HONOR.  AND I

3    ASSUME WHEN YOU SAY THE EXHIBITS, YOU INCLUDE

4    DEMONSTRATIVES THAT ARE GOING TO BE USED WITH THAT

5    WITNESS.

6              THE COURT:  YES.

7              OKAY.  SO THEN I WILL GIVE YOU A RULING

8    WHEN WE HAVE OUR PRE-CONFERENCE AT 8:30 EACH

9    MORNING.  I'LL GIVE YOU A RULING THE SAME DAY AS

10   THE WITNESS TESTIFIES.

11             MR. PRICE:  YOUR HONOR, MAY I ASK, SO THE

12   INITIAL NOTICE OF A DIRECT WITNESS WILL BE 7:00

13   P.M.?

14             MR. MCELHINNY:  THAT WAS OUR PROPOSAL.

15             THE COURT:  DO YOU WANT AN EARLIER TIME?

16             (PAUSE IN PROCEEDINGS.)

17             MR. MCELHINNY:  WE WOULD LOVE TO DO AN

18   EARLIER TIME.  IT MAKES MORE SENSE.

19             (PAUSE IN PROCEEDINGS.)

20             MR. PRICE:  YOUR HONOR, THAT'S FINE.  MY

21   ONLY REQUEST WOULD BE -- AND I KNOW THAT I'M

22   PROBABLY NOT GOING TO WIN THIS REQUEST -- IS THAT

23   FOR CROSS-EXAMINATION AND THE EXHIBITS, AS YOU

24   KNOW, THAT'S KIND OF LIKE MORE FREE FLOWING JAZZ

25   THAN JUST GOING STRAIGHT THROUGH, AND NOT JUST FOR
```

1    IMPEACHMENT, BUT SOMETIMES AFTER HEARING THE

2    WITNESS, YOU REALIZE THAT WITNESS CAN HELP TELL

3    YOUR STORY WITHOUT IMPEACHING THEM BY USING

4    EXHIBITS.

5            THE COURT:  UM-HUM.

6            MR. PRICE:  SO MY REQUEST FOR EXHIBITS

7    FOR CROSS WOULD BE WHEN THE WITNESS TAKES THE

8    STAND, YOU HAND OVER THE EXHIBITS.

9            I'M JUST AFRAID THAT -- YOU KNOW, I KNOW

10   SOME COURTS MAKE EXCEPTIONS FOR IMPEACHMENT

11   EXHIBITS, THAT THEY DON'T HAVE TO BE REVEALED, AND

12   I HOPE THIS COURT WOULD MAKE THAT EXCEPTION.

13           BUT ALSO, SOMETIMES YOU JUST DON'T KNOW

14   HOW THAT WITNESS IS GOING TO BE ABLE TO HELP YOUR

15   CASE WITHOUT IMPEACHMENT UNTIL YOU HEAR THEIR

16   TESTIMONY.

17           MR. MCELHINNY:  I THINK THE 2:00 O'CLOCK

18   RULE IS THE RIGHT ONE, YOUR HONOR.  IT'S

19   JUDGE ALSUP'S RULE.  IT'S THE ONE YOU JUST TALKED

20   ABOUT.

21           WE'RE VERY -- NOTICE AND SURPRISE IS NOT

22   GOING TO MAKE THIS CASE GO -- LACK OF NOTICE AND

23   SURPRISE IS NOT GOING TO MAKE THIS CASE GO SMOOTHLY

24   IN THE LIMITED TIME, SO WE THINK 2:00 P.M. THE

25   NIGHT BEFORE WOULD BE RIGHT FOR CROSS.

```
 1              THE COURT:  THAT'S FINE.

 2              MR. PRICE:  YOUR HONOR, IS THERE AT LEAST

 3    AN EXCEPTION FOR IMPEACHMENT EXHIBITS?

 4              MR. MCELHINNY:  CROSS IS IMPEACHMENT.

 5              MR. PRICE:  NO, THAT'S WRONG.  CROSS IS

 6    ALSO HAVING A WITNESS TELL YOUR STORY, AND I THINK

 7    COUNSEL KNOWS THAT.  HE'S USED THAT TECHNIQUE QUITE

 8    A BIT.  IT'S CALLED PIGGY BACKING.

 9              SO FOR ACTUAL IMPEACHMENT, THAT IS, WHERE

10    YOU'RE GOING TO TRY TO ESTABLISH THAT THE PERSON,

11    AS THEY TESTIFIED ON DIRECT, HAS BEEN UNTRUTHFUL IN

12    SOME WAY, IT SEEMS THAT THAT SHOULD NOT HAVE TO BE

13    DISCLOSED BEFORE THAT WITNESS TESTIFIES.

14              THE COURT:  I'M JUST GOING TO KEEP IT

15    UNIFORM OF 2:00 P.M. THE DAY BEFORE.

16              OKAY.

17              MR. VERHOEVEN:  YOUR HONOR, I'M -- I'M

18    VERY SORRY, BUT ONE POINT OF CLARIFICATION.

19              THE COURT:  YES?

20              MR. VERHOEVEN:  UNDERSTANDING YOUR

21    RULING, IF WE ARE SURPRISED BY SOMETHING AND WE

22    HAVE GOOD CAUSE AND WE WANT TO ADD AN EXHIBIT OR

23    SOMETHING AND WE CAN MAKE THAT CASE TO YOU, I WOULD

24    REQUEST AT LEAST THE PERMISSION TO MAKE THAT CASE.

25              BECAUSE ON CROSS -- BECAUSE SOMETIMES ON
```

```
 1    DIRECT YOU HAVE THE EXHIBITS IN ADVANCE, BUT YOU

 2    DON'T KNOW -- SO, FOR EXAMPLE, IF APPLE CALLS A

 3    WITNESS, THEY GAVE US THE EXHIBITS IN ADVANCE, WE

 4    DO THE CROSS, BUT WE HAVEN'T HEARD THE TESTIMONY

 5    YET, AND IF WE CAN MAKE A SHOWING THAT WE WERE

 6    SURPRISED OR SOMETHING CAME UP THAT WE DIDN'T

 7    ANTICIPATE AND WE DO HAVE A CROSS EXHIBIT WE WANT

 8    TO USE THAT WASN'T ON THE 2:00 P.M. LIST AND WE CAN

 9    SHOW GOOD CAUSE FOR THAT, THAT WE'D HAVE THAT

10    ABILITY TO USE THAT MECHANISM.

11             THE COURT:  DO YOU HAVE ANY OBJECTION TO

12    SOME SAFELY VALVE?

13             MR. MCELHINNY:  I DON'T, YOUR HONOR.  I

14    ASSUME THAT'S ALWAYS --

15             THE COURT:  THAT'S FINE.

16             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

17             THE COURT:  OKAY.  THERE WERE SOME

18    ADDITIONAL EVIDENTIARY OBJECTIONS THAT I GUESS WERE

19    IN THE PRETRIAL STATEMENT.

20             ALL RIGHT.  EVIDENCE THAT WAGNER'S

21    OPINIONS WERE EXCLUDED IN THE MOTOROLA CASE SHOULD

22    BE EXCLUDED, THAT'S GRANTED.

23             ANYTHING THAT WAS UNTIMELY PRODUCED AND

24    WASN'T AUTHORIZED TO BE PRODUCED AFTER THE CUT OFF,

25    EITHER BY AUTHORIZATION BY JUDGE GREWAL OR BY
```

```
 1        STIPULATION OF THE PARTIES, THAT IS EXCLUDED.

 2                PRODUCTS NOT SOLD IN THE U.S., EVIDENCE

 3        RELATED TO THEM, I DON'T SEE HOW THAT'S RELEVANT,

 4        SO THAT WILL BE EXCLUDED.

 5                MR. JACOBS:  MAY I BRIEFLY, YOUR HONOR,

 6        COMMENT ON THAT?

 7                THE COURT:  YEAH.

 8                MR. JACOBS:  IT'S PART OF THE COPYING

 9        STORY THAT THERE IS KIND OF A START-OFF PRODUCT AT

10        SAMSUNG, AND THEN IT IS -- THAT BECOMES THE BASIS

11        FOR FURTHER PRODUCTS.

12                SO THAT'S ONE REASON THESE PRODUCTS ARE

13        RELEVANT.

14                THE SECOND IS, AND WE CAN PROVE THIS AT

15        TRIAL, WE ACTUALLY BOUGHT THEM IN THE U.S.  THEY

16        SAY THEY'RE NOT SOLD IN THE U.S., BUT WE BOUGHT

17        THEM IN THE U.S.

18                THE COURT:  THE GALAXY SI 9000 AND THE

19        GALAXY ACE?

20                MR. JACOBS:  THAT'S CORRECT.

21                THE COURT:  ALL RIGHT.  WELL, THEN,

22        THAT'S GOING TO BE DENIED.

23                MR. JACOBS:  CAN I GO BACK ON 12 FOR A

24        SECOND?

25                THE COURT:  WHAT, YOUR OFFER TO LICENSE
```

```
 1        ESSENTIAL PATENTS, THAT ONE?

 2                  MR. JACOBS:  YES.

 3                  DO YOU WANT TO SPEAK ON THAT?

 4                  MR. SELWYN:  SURE.

 5                  YOUR HONOR, THE ISSUE WITH THAT EXHIBIT

 6        IS IT DIDN'T EXIST AS OF THE TIME OF THE DISCOVERY

 7        CUT OFF.

 8                  IT'S A LETTER THAT WAS AUTHORED

 9        APRIL 30TH, SO IT WASN'T UNTIMELY PRODUCED.  IT

10        DIDN'T, IN FACT, EXIST.

11                  IT WAS PRODUCED IMMEDIATELY AFTER THAT

12        LETTER WAS SENT.

13                  THE COURT:  WHEN WAS THIS PRODUCED?

14                  MR. SELWYN:  THE BEGINNING OF MAY.  SO

15        THE LETTER IS DATED APRIL 30TH AND IT WAS PRODUCED

16        SHORTLY THEREAFTER.

17                  MS. MAROULIS:  YOUR HONOR, THIS LETTER

18        WAS AUTHORED BY APPLE AND IT WAS WITHIN ITS

19        DISCRETION WHEN TO SEND IT.

20                  IT WAS SENT WELL AFTER THE PREVIOUS

21        LETTER BEFORE, SO IT COULD HAVE BEEN SENT BEFORE

22        THE DISCOVERY CUT OFF.

23                  SO WE DON'T BELIEVE IT'S APPROPRIATE TO

24        INCLUDE IT.

25                  MR. SELWYN:  YOUR HONOR, THERE'S A
```

1    WHOLE --

2              THE COURT:  WHO IS THE LETTER TO?  IS IT

3    TO SAMSUNG?

4              MR. SELWYN:  IT'S A LETTER FROM APPLE TO

5    SAMSUNG.  THERE'S A WHOLE COURSE OF LETTERS, AND

6    ONE OF THE ISSUES THAT BOTH PARTIES INTEND TO

7    PRESENT IN THIS CASE IS EVIDENCE ABOUT THE

8    LICENSING NEGOTIATIONS BETWEEN THE PARTIES.

9              THIS IS PART OF THAT STORY.  IT JUST

10   HAPPENED TO HAVE BEEN SENT AFTER THE CLOSE OF

11   DISCOVERY.

12             THE COURT:  ALL RIGHT.  I THINK I --

13             MS. MAROULIS:  YOUR HONOR, WE DIDN'T HAVE

14   A CHANCE TO EXPLORE IT IN DISCOVERY OR QUESTION A

15   WITNESS IN DEPOSITION ABOUT IT.  IT'S A COMPLETELY

16   NEW PIECE OF EVIDENCE THAT THEY DIDN'T PRODUCE.

17             SO TO THE EXTENT THAT YOUR HONOR WANTS TO

18   ALLOW IT IN, WE'D LIKE SOME DEPOSITION TIME TO

19   EXPLORE THE EXHIBIT.

20             THE COURT:  WHAT'S YOUR POSITION ON THAT?

21             MR. SELWYN:  THAT'S FINE, SO LONG AS IT'S

22   A TWO-WAY STREET.

23             THERE'S NOTHING -- IF THEY WANT TO HAVE

24   SOME DEPOSITION TIME LIMITED TO THAT PARTICULAR

25   DOCUMENT, I THINK THAT'S FINE.

1          HOWEVER, THERE MAY BE SIMILAR EXHIBITS OF

2     THEIRS THAT ARE AFTER THE DATE THAT, IF THEY WANT

3     TO INTRODUCE, THEN IT SHOULD BE A TWO-WAY STREET.

4          BUT IF THEY WANT A LIMITED AMOUNT OF

5     DEPOSITION TIME FOCUSSED ON THAT PARTICULAR

6     DOCUMENT, WE DON'T HAVE AN OBJECTION.

7          THE COURT:  ALL RIGHT.  WHY DON'T YOU

8     MEET AND CONFER AND MAKE A PROPOSAL ON THIS?  AND I

9     WOULD SAY NO MORE THAN TWO HOURS OF DEPOSITION.

10          MS. MAROULIS:  OKAY, YOUR HONOR.  THANK

11     YOU.

12          THE COURT:  OKAY.  WHEN CAN YOU DO

13     YOUR -- WELL, I MEAN, NO NEWS IS GOOD NEWS.  IF YOU

14     RESOLVE IT, THEN DON'T COME BACK TO ME.  IF YOU

15     DON'T RESOLVE IT, THEN WHEN CAN YOU FILE SOMETHING?

16     BY FRIDAY?

17          MR. SELWYN:  FRIDAY IS FINE.  I WOULD

18     THINK IT COULD BE A LOT SHORTER, CANDIDLY, THAN TWO

19     HOURS.  IT'S A THREE-PAGE LETTER, AND I THINK THE

20     PORTION THAT THEY PROBABLY WANT TO QUESTION ABOUT

21     IS HALF OF A PAGE.

22          MS. MAROULIS:  YOUR HONOR, WE MIGHT BE

23     ABLE TO HAVE IT DONE A LOT SOONER, BUT WE'D LIKE

24     THE TWO HOURS THAT YOUR HONOR GAVE US.

25          THE COURT:  THAT'S FINE.

1              OKAY.  THE IRREPARABLE HARM BEFORE THE

2      JURY.

3              MS. MAROULIS:  YOUR HONOR, YOU ALREADY

4      MADE A RULING AT THE DAUBERT MOTION THAT MR. MUSIKA

5      CANNOT REFER TO IRREPARABLE HARM.

6              WE SIMPLY WANT TO ENFORCE THAT AND

7      ENFORCE IT ACROSS THE BOARD, NOT JUST TO

8      MR. MUSIKA, BUT NOT TO ALLOW ANY OTHER WITNESSES TO

9      MAKE STATEMENTS ABOUT THAT.

10             MR. MCELHINNY:  YOU HAVE RULED AS TO WHAT

11     MR. MUSIKA CAN TESTIFY TO.

12             THIS IS TOO BROAD, YOUR HONOR.  I MEAN,

13     WE'RE GOING TO -- IF WE ASK SOMEBODY, "DOES APPLE,

14     YOU KNOW, SELL TO ITUNES" -- DO PEOPLE WHO BUY FROM

15     THESE THINGS -- IF WE TALK ABOUT STICKINESS, IF WE

16     TALK ABOUT HOW ARE SALES AND WHAT DEMAND IS AND HOW

17     THE DAMAGES ARE CALCULATED, YOU'RE GOING TO HAVE

18     SOMEBODY COME UP AND SAY "WELL, THAT'S IRREPARABLE

19     INJURY," AND IT MAY BE.

20             BUT THIS IS JUST UNPOLICEABLE -- WE'RE

21     NOT GOING TO HAVE -- I MEAN, THIS SHOULD BE DONE ON

22     A QUESTION-BY-QUESTION BASIS.

23             IF THERE'S SOMETHING YOU THINK IS

24     IRRELEVANT, YOUR HONOR WILL SUSTAIN AN OBJECTION TO

25     IT.

1    MS. MAROULIS:  YOUR HONOR, THERE'S A

2    WHOLE SECTION OF MR. MUSIKA'S REPORT THAT DEALS

3    WITH IRREPARABLE HARM.

4        WE WOULD LIKE THE CONTOURS OF THIS MOTION

5    TO BE EXTENDED NOT JUST TO HIM, BUT TO OTHERS TO BE

6    EXPLORED SIMILARLY.

7        THE COURT:  WHAT'S YOUR POSITION ON THAT?

8        MR. MCELHINNY:  WE DON'T HAVE ANYBODY

9    ELSE WHO'S GOING TO GIVE AN OPINION ON IRREPARABLE

10   INJURY, WHICH IS WHAT YOU STRUCK FROM MR. MUSIKA.

11       WE'RE GOING TO TALK ABOUT THE

12   MARKETPLACE.  WE'RE GOING TO TALK ABOUT THE FACT

13   THAT WE'RE BEING INJURED.

14       BUT HOW YOU WOULD PARSE THAT OUT BETWEEN

15   IRREPARABLE INJURY AND --

16       THE COURT:  AND YOU'RE SAYING IT'S

17   RELEVANT FOR, WHAT, DAMAGES?

18       MR. MCELHINNY:  IT'S RELEVANT FOR

19   DAMAGES.  IT'S RELEVANT FOR FAME.  IT'S RELEVANT

20   FOR HOW MUCH ADVERTISING IS DONE.  ALL OF THESE

21   THINGS --

22       THE COURT:  OKAY.  I'M GOING TO DECIDE

23   THIS ON A QUESTION-BY-QUESTION BASIS.

24       YOU BOTH HAVE RAISED BIFURCATION.  I'M

25   NOT GOING TO APPROVE BIFURCATION IN EITHER WAY THAT

```
1     YOU ALL HAVE SUGGESTED.

2              I HAVEN'T THOUGHT THIS THROUGH.  MY

3     PREFERENCE WOULD BE TO DO EVERYTHING ALL AT ONCE

4     AND ONLY HAVE ONE DELIBERATION VERSUS MULTIPLE

5     DELIBERATIONS WHICH MEANS WE CAN'T CONTROL THE

6     TIME.

7              WE COULD DO LIABILITY SEPARATE FROM

8     DAMAGES.  WE COULD DO PHASE ONE BE ONE PATENT, ONE

9     PRODUCT ON EACH SIDE; PHASE TWO TO BE EVERYTHING

10    ELSE; AND THEN PHASE THREE BE DAMAGES.

11             I MEAN -- DO YOU WANT TO BE HEARD?  I'M

12    NOT GOING TO DIVIDE IT UP THE WAY THAT YOU ALL HAVE

13    PROPOSED.

14             OTHERWISE EVERYTHING IS ALL IN AND WE DO

15    IT ALL AT ONCE.

16             MR. VERHOEVEN:  I THINK THAT'S THE WAY WE

17    NEED TO DO IT THEN IS THE WAY YOU JUST SAID, THE

18    LATTER.

19             THE COURT:  OKAY.  WHAT DO YOU ALL THINK?

20             MR. MCELHINNY:  I'M NOT SURE WHAT, WHAT

21    MR. VERHOEVEN --

22             THE COURT:  ONE IS SEPARATING LIABILITY

23    VERSUS DAMAGES; ANOTHER ONE MIGHT BE A THREE-PHASER

24    WHERE YOU EACH TAKE YOUR VERY BEST SHOT, YOUR VERY

25    BEST PATENT, THE BEST CASE THAT YOU HAVE AGAINST
```

1    THE OTHER SIDE'S PRODUCTS AND JUST DO THAT AS PHASE

2    ONE.

3              MR. MCELHINNY:  RIGHT.

4              THE COURT:  AND THEN PHASE TWO WOULD BE

5    EVERYTHING ELSE AND PHASE THREE BE DAMAGES.

6              MR. MCELHINNY:  THE REASON WE SUGGESTED

7    THE SEPARATE VERDICT, OR QUESTION FOR THE JURY,

8    SETTING THEM IN A SEPARATE TIME, IS TO DIVIDE THE

9    JURY INSTRUCTIONS INTO MANAGEABLE PIECES.

10             BUT IF THAT'S NOT GOING TO HAPPEN UNDER

11   THE DIFFERENT THEORIES, THEN I THINK TRYING IT ALL

12   TOGETHER IS THE BEST WAY TO DO IT.

13             THE COURT:  OKAY.  THAT'S FINE.

14             ALL RIGHT.  THE FJC VIDEO, WE ARE GOING

15   TO SHOW IT.  I THINK IT'S HELPFUL.

16             SO THEN WHAT I WOULD ASK THE PARTIES TO

17   DO IS WHY DON'T YOU JOINTLY CRAFT SOME LANGUAGE

18   THAT JUST SAYS SOMETHING ALONG THE LINES OF, YOU

19   KNOW, "DESIGN PATENTS ARE ENTITLED TO THE SAME

20   PROTECTIONS AS UTILITY PATENTS" OR WHATEVER YOU

21   WANT TO SAY.

22             SO WHEN CAN YOU DO THAT?  GIVE ME A DATE

23   BY WHICH YOU'RE GOING TO DO THAT.

24             MR. VERHOEVEN:  MONDAY AT NOON.

25             THE COURT:  OKAY.  NOW, I AM A LITTLE BIT

```
 1   CONCERNED -- AND I APOLOGIZE BECAUSE I'VE BEEN
 2   GOING BACK AND FORTH ABOUT THE NUMBER OF JURORS.
 3   MY CONCERN IS THAT IF THIS IS GOING TO GO AT LEAST
 4   FOUR WEEKS THAT WE HAVE THE FLEXIBILITY, IF WE HAD
 5   TO LOSE A JUROR A WEEK, WHICH MEANS MAYBE WE SHOULD
 6   GO FROM NINE TO TEN, WHICH GIVES US A FOUR PERSON
 7   CUSHION INSTEAD OF A THREE PERSON CUSHION.  IS
 8   THERE ANY OBJECTION TO DOING THAT?
 9              I WOULD KEEP YOU AT FOUR PEREMPTORIES
10   EACH.
11              I ASSUME THERE'S NO OBJECTION.  IT'S JUST
12   IN CASE SOMEBODY GETS SICK OR STARTS READING ABOUT
13   THE CASE ON THE INTERNET AND WE HAVE TO START
14   EXCUSING PEOPLE.
15              MR. VERHOEVEN:  NO OBJECTION FROM OUR
16   SIDE.
17              MR. MCELHINNY:  NO OBJECTION, YOUR HONOR.
18              THE COURT:  OKAY.  THAT'S WHAT WE'RE
19   GOING TO DO THEN.
20              NOW, I'VE ALSO THOUGHT ABOUT THIS FURTHER
21   AND I WOULD RATHER NOT DO A QUESTIONNAIRE AND JUST
22   DO THE VOIR DIRE STARTING AT 9:00 CLOCK MONDAY
23   MORNING ON THE 30TH.
24              WHAT I WOULD LIKE FROM YOU IS I NEED A --
25   IF YOU COULD E-MAIL IT, AND YOU CAN E-MAIL IT TO
```

```
 1    OUR CRD ACCOUNT, I NEED A NAME -- THE NAMES OF ALL
 2    THE LAW FIRMS, ALL THE LAWYERS, ALL THE WITNESSES,
 3    BECAUSE THAT SIMPLY CAN'T BE DONE ORALLY.  IT'S TOO
 4    LONG AND PEOPLE NEED TO SEE THE NAMES IN WRITING.
 5            SO WHEN -- HOW -- OTHER THAN KOREAN, ARE
 6    THERE ANY OTHER LANGUAGES THAT WILL NEED
 7    TRANSLATION?
 8            MR. ZELLER:  THERE'S AT LEAST ONE
 9    WITNESS, AN APPLE WITNESS WHO IS -- WHO SPEAKS
10    JAPANESE.
11            THE COURT:  OKAY.  ALL RIGHT.  SO -- I
12    MEAN, THIS ONE YOU CAN GIVE ME LATER, BUT CAN YOU
13    GIVE ME THAT JOINT LIST -- WHEN DO YOU WANT TO DO
14    THAT BY?  THAT ONE WE'LL JUST HAND OUT TO EVERYONE
15    A HARD COPY AND THEY CAN LOOK AT ALL THE NAMES
16    THEMSELVES TO MAKE SURE THEY DON'T HAVE ANY
17    CONFLICTS.  SO YOU WANT TO DO THAT WHEN?
18            MR. MCELHINNY:  WELL, THE WITNESS LIST, I
19    ASSUME, IS GOING TO BE THE 50-PERSON, THE
20    COMBINATION OF THE WILL CALL AND MAY CALL AND
21    DEPOSITION?
22            THE COURT:  YEAH.  YOU KNOW, THIS IS
23    BECOMING UNWIELDY.  COULD WE -- COULD WE LOWER THAT
24    50 NUMBER TO 45?
25            MR. MCELHINNY:  YES, YOUR HONOR.
```

```
 1                 THE COURT:  LET ME HEAR FROM

 2      MR. VERHOEVEN.

 3                 MR. VERHOEVEN:  WE ALREADY DISCUSSED

 4      THAT, YOUR HONOR.

 5                 THE COURT:  THAT'S FINE.  THAT'S FINE.

 6                 MR. VERHOEVEN:  YOUR HONOR, I THINK WE

 7      COULD EASILY GIVE YOU THE LIST WHENEVER YOU NEED

 8      IT.  SO --

 9                 THE COURT:  YEAH.  JUST MY CONCERN IS

10      THAT THEY'RE GOING TO GET A LIST OF 100 WITNESSES

11      AND 90 DEPONENTS.

12                 MR. VERHOEVEN:  UM-HUM.

13                 THE COURT:  THEY'RE GOING TO GET A LIST

14      OF, LIKE, 200 PEOPLE.  I THINK PEOPLE ARE GOING TO

15      BE VERY FREAKED OUT AT THIS POINT TO GET A LIST, A

16      WITNESS LIST OF ALMOST 200 PEOPLE.

17                 MR. VERHOEVEN:  WELL, PERHAPS WE CAN --

18                 THE COURT:  WHO'S GOING TO WANT TO SERVE

19      ON THIS JURY?

20                 MR. VERHOEVEN:  PERHAPS WE COULD JUST

21      LIST IT AS PEOPLE WHO -- JUST ASK THEM TO REVIEW

22      THESE PEOPLE, NOT SAY WHO THEY ARE, AND JUST SAY,

23      YOU KNOW, "DO YOU KNOW ANY OF THESE PEOPLE?"

24                 THE COURT:  WELL, I THINK IT'S -- IT'S

25      STILL PRETTY INTIMIDATING, BECAUSE THINK ABOUT -- I
```

```
 1      DON'T KNOW HOW MANY LAWYERS THAT YOU ALL HAVE, BUT
 2      THE LAWYERS ALONE ARE PROBABLY CLOSE TO, WHAT, 80?
 3      I MEAN, THE ECF HAS ALL KINDS OF LAW FIRMS ON THERE
 4      AS COUNSEL.
 5              MR. VERHOEVEN:  YES.
 6              THE COURT:  SO THEY'RE GOING TO HAVE TO
 7      LOOK AT A LIST OF, LIKE, 400 PEOPLE.  I JUST CAN'T
 8      HAVE THIS.
 9              MR. VERHOEVEN:  WELL, OBVIOUSLY THE ISSUE
10      TO BE GRAPPLED WITH IS TO FIND OUT IF ANY OF THESE
11      WITNESSES -- OR EXCUSE ME -- IF ANY OF THESE
12      POTENTIAL JURORS HAVE FAMILY MEMBERS THAT ARE
13      LAWYERS AND HAVE CONNECTIONS WITH THE FIRMS AND
14      WITNESSES.
15              SO IT'S HARD FOR ME TO ENVISION HOW TO
16      SHORTEN THAT, ESPECIALLY WITH THE LAWYER LIST,
17      BECAUSE YOU'RE RIGHT, YOUR HONOR, THERE'S A LOT OF
18      LAWYERS THAT HAVE CONNECTIONS TO THIS CASE.
19              BUT YOU'VE GOT TO BALANCE THAT AGAINST
20      MAKING SURE THAT THERE'S NO PROBLEMS WITH THE
21      JURORS AND THEIR RELATIONSHIPS WITH VARIOUS
22      DIFFERENT PEOPLE.
23              SO I THINK THE ADDITION OF THE TRIAL
24      WITNESSES TO THAT LIST IS ACTUALLY GOING TO BE
25      SHORT COMPARED TO THE NUMBER OF LAWYERS IN THE
```

```
 1    CASE, I'M SORRY TO SAY.

 2              WE PROBABLY SHOULD BE LISTING LAWYERS

 3    FROM THE OTHER LITIGATIONS AS WELL THAT ARE

 4    REPRESENTED, I WOULD THINK.  SO, FOR EXAMPLE, THE

 5    ITC CASE.

 6              THERE'S A LARGE OVERLAP IN THE LAWYERS,

 7    YOUR HONOR, BUT WE'LL PROBABLY HAVE TO LIST

 8    EVERYONE WHO'S INVOLVED.

 9              THE COURT:  WHAT DO YOU THINK ABOUT THAT?

10              MR. MCELHINNY:  I THINK THERE ARE COURTS

11    THAT REQUIRE PARTIES TO IDENTIFY WHO THEY ARE GOING

12    TO CALL IN A SET LIST IN ADVANCE OF THE TRIAL.  THE

13    ITC REQUIRES THAT.  IT'S NOT UNCOMMON IN OTHER

14    DISTRICT COURTS.

15              AND I THINK IF YOUR HONOR WOULD ENTERTAIN

16    THAT, THEN WE WOULD HAVE A VERY REALISTIC LIST OF

17    WHO'S COMING AS OPPOSED TO A LIST THAT NO JUROR IS

18    GOING TO -- I'VE LOOKED THROUGH NAMES OF 200 TRYING

19    TO FIGURE OUT WHETHER I KNOW PEOPLE.  EVERY TIME

20    THE STATE BAR DISCIPLINE LIST COMES OUT, I ALWAYS

21    LOOK THROUGH THEM TO SEE IF I RECOGNIZE NAMES.

22              YOU DON'T RECOGNIZE THEM.  YOU CAN'T DO

23    THAT FOR 200 PEOPLE.

24              THE COURT:  WELL, I MEAN, 200 IS JUST THE

25    WITNESSES AND THE DEPONENTS.  I'M THINKING --
```

```
 1              MR. VERHOEVEN:  ALL I WAS GOING TO SAY,
 2    YOUR HONOR, IS CONCERN ABOUT THE JURORS, POTENTIAL
 3    JURORS BEING CONCERNED ABOUT THE NUMBERS, I MEAN,
 4    YOU COULD --
 5              THE COURT:  I'M GOING TO TELL THEM I
 6    ASKED THE LAWYERS TO HAVE A SMALLER LIST OF
 7    WITNESSES AND THAT THEY INSISTED THAT THEY NEEDED
 8    TO LIST 200.  I'M GOING TO SAY THAT.
 9              MR. VERHOEVEN:  WHAT I WAS GOING TO SAY,
10    YOUR HONOR --
11              THE COURT:  BECAUSE THAT'S THE TRUTH AND
12    THAT'S PUBLIC INFORMATION.  I'M GOING TO SAY I
13    ASKED FOR A LOT LESS, THESE ARE THE WITNESSES THAT
14    THE LAWYERS INSISTED THAT THEY MAY NEED TO CALL,
15    THESE ARE THE LAWYERS WORKING ON THIS CASE, THESE
16    ARE THE LAW FIRMS WORKING ON THIS CASE.
17              I MEAN, I'M GOING TO SET IT OUT.
18              MR. MCELHINNY:  IT'S NOT EXACTLY ACCURATE
19    THAT BOTH SIDES SAID THEY NEEDED TO DO IT THAT WAY
20    WITH THE WITNESSES, YOUR HONOR.
21              MR. VERHOEVEN:  I WAS GOING TO SAY, ONE
22    THING, IF I CAN GET IT OUT, YOUR HONOR, WHICH IS
23    THEY CAN BE TOLD, BECAUSE YOU'VE IMPOSED THEM ON
24    US, THE TIME LIMITS FOR THIS TRIAL, SO THAT
25    HOPEFULLY WOULD AMELIORATE SOME OF THE CONCERN WITH
```

```
 1    THE LONG LIST.  IF THEY'RE TOLD "THIS TRIAL WILL BE
 2    X NUMBER OF DAYS, X NUMBER" -- I THINK THEY'LL
 3    FOCUS ON THAT MORE THAN THE LIST.
 4           THE COURT:  WELL, WE'LL KEEP IT TO THE
 5    WITNESSES IN THIS CASE, THE DEPONENTS IN THIS CASE,
 6    THE LAWYERS AND THE LAW FIRMS IN THIS CASE.
 7           BUT I CAN JUST ASK THE CATCH ALL QUESTION
 8    OF "DO YOU KNOW ANYONE ELSE WHO MAY BE INVOLVED IN
 9    ANY OF THE OTHER LITIGATIONS INVOLVING EITHER OF
10    THESE PARTIES OR THIS TECHNOLOGY?"
11           MR. VERHOEVEN:  THAT SOUNDS LIKE A GREAT
12    IDEA, YOUR HONOR.
13           THE COURT:  OKAY.  BECAUSE I -- PEOPLE
14    WILL BE HERE CRYING IF WE HAVE, LIKE, 800 NAMES
15    THEY HAVE TO LOOK AT.
16           OKAY.  WHAT -- IN TERMS OF THE JURY
17    INSTRUCTIONS, IS THERE ANYTHING THAT YOU FEEL YOU
18    NEED A RULING ON TO PRIOR TO TRIAL?
19           MR. PRICE:  BEFORE WE LEAVE VOIR DIRE,
20    COULD I JUST ASK WHAT YOU ENVISION?  WILL WE BE
21    ABLE TO CONDUCT VOIR DIRE?
22           THE COURT:  YES.  AND DID I PREVIOUSLY
23    SET A TIME LIMIT ON THAT?  NO?
24           MR. LEE:  I THINK YOUR HONOR SAID THERE
25    WOULD BE 15 MINUTES FOR ATTORNEY VOIR DIRE.
```

```
 1            THE COURT:  15 MINUTES PER SIDE?

 2            MR. LEE:  YES.

 3            THE COURT:  AND I'M GOING TO ASK ALL OF

 4   THE QUESTIONS THAT YOU HAVE PUT IN YOUR PROPOSED

 5   VOIR DIRE.

 6            MR. PRICE:  I'D REQUEST 30 MINUTES, AND

 7   THAT'S ONLY AN ADDITIONAL HALF HOUR, BUT -- BECAUSE

 8   OF THE NATURE OF THE CASE, THE FACT THAT WE'RE NOT

 9   GETTING THE QUESTIONNAIRES AND, YOU KNOW, THIS IS

10   AN AREA WHERE PEOPLE DO HAVE A LOT OF PRE-JUDGMENTS

11   COMING IN, ANDROID VERSUS APPLE, SAMSUNG VERSUS

12   APPLE, AND I THINK WE REALLY NEED TO WEED THOSE

13   OUT.  SO I WOULD ASK FOR HALF AN HOUR.

14            MR. MCELHINNY:  WE WOULD JOIN IN THAT.

15            THE COURT:  WELL, I'M GOING TO ASK ALL

16   THE QUESTIONS IN YOUR JURY QUESTIONNAIRE AND ALL

17   THE QUESTIONS THAT YOU HAVE PROPOSED IN THE VOIR

18   DIRE, AS WELL AS THE ONES THAT I STANDARD ASK.  SO

19   I THINK I'M HOPEFULLY GOING TO VET AND TEASE THAT

20   OUT OF OUR PANEL.  BUT --

21            MR. MCELHINNY:  I WOULD JOIN IN HIS

22   REQUEST, YOUR HONOR.  IT'S THE FOLLOW-UP, ACTUALLY,

23   THAT I HAD IN MIND.

24            YOUR HONOR WILL ASK OUR QUESTIONS.  WE

25   MAY UNDERSTAND FROM THE ANSWERS THAT ARE GIVEN A
```

```
 1    NEED TO DO ADDITIONAL FOLLOW-UP.

 2             THE COURT:  WELL, I'LL DO FOLLOW-UP, TOO,

 3    AND I TRY TO DO AS MUCH REHABILITATION MYSELF.

 4             BUT WHAT ABOUT 20 MINUTES EACH?

 5             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

 6             MR. PRICE:  THANK YOU.

 7             THE COURT:  OKAY.  AND TO THE EXTENT, IN

 8    YOUR VOIR DIRE, YOU CAN NOT START PREVIEWING YOUR

 9    CASE AND SAYING "HOW WOULD YOU FEEL ABOUT," IT

10    WOULD BE VERY MUCH APPRECIATED.  OKAY?

11             ALL RIGHT.  SO LET'S GO, I GUESS, TO THE

12    MOTIONS IN LIMINE AND THE CLAIM CONSTRUCTION.

13             HAVE WE DEALT WITH EVERYTHING ELSE?

14             MR. MCELHINNY:  WE HAD -- WE HAD A COUPLE

15    OF OTHER SMALLER THINGS, YOUR HONOR.

16             THE COURT:  OKAY.  SO I THINK WE'VE DEALT

17    WITH, ON YOUR AGENDA, NUMBER 3 AND NUMBER 4 AND

18    NUMBER 5.  RIGHT?

19             MR. MCELHINNY:  WE HAVE, YOUR HONOR.

20             THE COURT:  OKAY.  WHAT WAS THE OPENING

21    STATEMENTS?  WHAT WAS YOUR --

22             MR. MCELHINNY:  FOR OPENING STATEMENTS,

23    YOU HAVEN'T GIVEN US A TIME.

24             THE COURT:  I WAS THINKING AN HOUR OR AN

25    HOUR AND A HALF.  HOW MUCH DO YOU NEED?  AN HOUR?
```

```
 1              MR. PRICE:  I VOTE FOR AN HOUR AND A
 2    HALF.  IT'S A FAIRLY COMPLEX CASE.
 3              MR. MCELHINNY:  AN HOUR AND A HALF WOULD
 4    BE GOOD, YOUR HONOR.  WE INTEND TO SPLIT OUR
 5    OPENING, BUT NOT TAKE ADDITIONAL TIME.
 6              THE COURT:  WHAT DOES THAT MEAN?
 7              MR. MCELHINNY:  WELL, I WOULD ADDRESS
 8    THE -- OUR PLAINTIFF'S CASE, AND MR. LEE WOULD
 9    ADDRESS THE DEFENDANT'S AND THE ANTITRUST.
10              THE COURT:  THAT'S FINE.  YOU DO WHATEVER
11    YOU'RE GOING TO DO DURING YOUR HOUR AND A HALF.
12              OKAY.  SO ONE HOUR AND A HALF EACH.
13              NOW, I'M PROBABLY ALSO GOING TO IMPOSE A
14    TIME LIMIT ON CLOSING.  WHAT -- WHAT -- AN HOUR AND
15    A HALF AGAIN, OR DO YOU NEED A LITTLE MORE?
16              MR. MCELHINNY:  I THINK WE WOULD NEED
17    MORE, YOUR HONOR.  I THINK WE WOULD ASK FOR TWO
18    HOURS FOR CLOSING.
19              THE COURT:  WHAT ABOUT TWO HOURS?
20              MR. VERHOEVEN:  CAN I CONFER WITH --
21              THE COURT:  PLEASE, GO AHEAD.
22              (DISCUSSION OFF THE RECORD BETWEEN
23    DEFENSE COUNSEL.)
24              MR. VERHOEVEN:  IT MAY MAKE SENSE TO
25    ADDRESS THIS AS WE GET CLOSER TO THE END, YOUR
```

```
1     HONOR, SO WE SEE HOW COMPLICATED THINGS ARE, BUT WE
2     WOULD REQUEST TO PUSH THAT TO TWO AND A HALF.
3               BUT IT MAY BE THAT AS WE GET CLOSER, WE
4     REALIZE, NO, WE CAN DO IT IN TWO, BUT --
5               THE COURT:  WELL, WHY DON'T WE DO THIS:
6     I'M FINE WITH WAITING AND SEEING WHAT HAPPENS, BUT
7     LET'S SAY FOR NOW IT'S GOING TO BE A TWO HOUR EACH
8     CLOSING.
9               BUT THEN, YOU KNOW, DEPENDING ON HOW THE
10    CASE COMES IN, WE CAN RE-EVALUATE LATER.
11              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
12              THE COURT:  OKAY.  WHAT'S THIS ISSUE
13    ABOUT FOREIGN LANGUAGE TRANSLATION AND
14    INTERPRETATION?
15              MR. JACOBS:  I THINK WE, SUBJECT TO
16    CONFIRMING THE INTERPRETER'S AVAILABILITY, HAVE NOW
17    REACHED AGREEMENT JUST BEFORE COURT ON A PROPOSED
18    INTERPRETER.
19              THE COURT:  OH, GOOD.
20              MR. JACOBS:  AND THEN IT MAY BE THAT WE
21    WILL EACH HAVE OUR OWN CHECK INTERPRETERS.
22              THE COURT:  OKAY.
23              MR. JACOBS:  AND WE -- WE'RE GOING TO
24    HAVE AN ISSUE -- ANOTHER CLOG IN THE ARTERIES HERE
25    IS TRANSLATIONS OF DOCUMENTS.
```

```
 1              SO WE SERVED TRANSLATIONS OF OUR
 2     DOCUMENTS.  CONSISTENT WITH THE SCHEDULE THAT WAS
 3     AGREED UPON BY THE PARTIES, OBJECTIONS WERE DUE
 4     TODAY --
 5              THE COURT:  UM-HUM.
 6              MR. JACOBS:  -- FROM SAMSUNG.
 7              INSTEAD OF GETTING -- OR YESTERDAY.
 8              INSTEAD OF GETTING OBJECTIONS, WE GOT
 9     ENTIRELY NEW TRANSLATIONS WITH A STATEMENT THAT,
10     "TO THE EXTENT OUR TRANSLATION DIFFERS FROM APPLE'S
11     TRANSLATION, THAT CONSTITUTES AN OBJECTION."
12              SO NOW WE'RE -- AND THERE ARE A LOT OF --
13     THIS IS ENTIRELY UNNECESSARY.  I THINK WE MIGHT
14     MOVE TO STRIKE THEIR OBJECTIONS, BUT PERHAPS WITH
15     GUIDANCE FROM THE COURT ON HOW -- ON A MORE
16     EFFICIENT PROCESS SO WE CAN AVOID NEEDLESS
17     FRICTION, AND SPECIFICALLY THE GUIDANCE I WOULD
18     REQUEST IS THAT SAMSUNG DO AN INTERLINEATION OF OUR
19     PROPOSED TRANSLATIONS WHERE THEY SPECIFICALLY
20     OBJECT, IN OUR PROPOSED TRANSLATIONS, TO A
21     TRANSLATED WORD OR PHRASE, AND WE WOULD, OF COURSE,
22     DO THE SAME WITH SAMSUNG EXHIBITS AND THEIR
23     TRANSLATIONS.
24              THE COURT:  THAT'S FINE.
25              MS. MAROULIS:  YOUR HONOR, THIS WASN'T
```

```
 1    BROUGHT TO OUR ATTENTION THAT WE WOULD BE

 2    DISCUSSING IT HERE, BUT ONE OF THE REASONS WE HAD

 3    TO SUBMIT TRANSLATIONS SO QUICKLY WAS THAT WE HAD

 4    TO TRANSLATE BINDERS AFTER BINDERS OF THE

 5    COMPILATION DOCUMENTS.

 6              SO WE CAN GO BACK AND REVISIT THAT TO THE

 7    EXTENT THAT WE CAN TO PUT SOME OF THOSE BACK PER

 8    YOUR HONOR'S PRIOR RULING.

 9              THE COURT:  OKAY.  WHAT I WOULD LIKE IS

10    FOR YOU ALL TO MEET AND CONFER AND SEE IF YOU ALL

11    CAN RESOLVE SOME OF THESE COMPETING TRANSLATIONS,

12    AND THEN I'LL JUST -- I GUESS I'LL HAVE TO DEAL

13    WITH IT WHEN THE EXHIBIT OBJECTION COMES UP.  OKAY?

14              BUT PLEASE TRY TO RESOLVE THAT AS MUCH AS

15    POSSIBLE, AND I AM GOING TO REQUIRE THAT THERE BE

16    SOME KIND OF RED LINE TO SHOW EXACTLY WHAT WORD OR

17    PHRASE IS BEING OBJECTED TO.

18              MR. JACOBS:  YOUR HONOR, WE SHOULD GET

19    THOSE -- I THINK, IF WE'RE GOING TO MOVE THIS

20    ALONG, WE SHOULD GET THOSE BY TUESDAY FROM SAMSUNG.

21              THE COURT:  IS THAT DOABLE?

22              MS. MAROULIS:  YOUR HONOR, MAY WE HAVE

23    UNTIL AT LEAST THURSDAY OF NEXT WEEK, BECAUSE AS I

24    SAID, THERE'S A LARGE VOLUME OF SUPPORTING

25    DOCUMENTS IN APPLE'S COMPILATIONS.
```

```
 1              MR. JACOBS:  THAT'S JUST NOT TRUE.

 2              THE COURT:  WHAT PERCENTAGE OF THE

 3     EXHIBITS ARE ACTUALLY IN A LANGUAGE OTHER THAN

 4     ENGLISH?  IS IT HALF?  IS IT --

 5              MR. JACOBS:  I DON'T THINK IT'S HALF.  I

 6     DON'T THINK IT'S THAT MANY.

 7              THE COURT:  OKAY.

 8              MR. JACOBS:  BUT I'M GETTING USED TO

 9     SEEING THEM ALL IN ENGLISH, SO I'M NOT SURE I'M

10     ACCURATE ABOUT THAT.

11              THE COURT:  SURE, OKAY.

12              WHAT ABOUT -- CAN YOU DO THIS BY

13     WEDNESDAY AT 10:00 A.M.?

14              MS. MAROULIS:  WE'LL DO THAT, YOUR HONOR.

15              THE COURT:  JUST BECAUSE WE'RE RUNNING

16     OUT OF TIME.  THAT'S MY ONLY CONCERN.

17              OKAY.  TRANSITIONAL STATEMENTS AND

18     ARGUMENTS, MY CONCERN WITH THAT IS THE JURY IS

19     SUPPOSED TO KEEP AN OPEN MIND UNTIL THE VERY END OF

20     THE CASE AFTER THEY'VE GOTTEN THE JURY

21     INSTRUCTIONS, AFTER THEY'VE HEARD CLOSING

22     ARGUMENTS, AND IF YOU START HAVING ARGUMENT IN THE

23     MIDDLE, I THINK YOU'RE SORT OF INCONSISTENT WITH

24     THE JURY INSTRUCTIONS, SO I'M NOT GOING TO ALLOW

25     THAT.
```

```
 1              POST-VERDICT PROCEEDINGS, WHAT'S THAT?
 2              MR. MCELHINNY:   THAT WAS WHETHER OR NOT
 3   YOUR HONOR WANTED TO SCHEDULE NOW -- IF WE GET A
 4   VERDICT, OBVIOUSLY -- THIS IS A DISCUSSION YOU AND
 5   I STARTED HAVING LAST WEEK ABOUT THE PROCESS.
 6              IF WE GET A VERDICT IN OUR FAVOR,
 7   OBVIOUSLY WE'RE GOING TO SEEK INJUNCTIVE RELIEF,
 8   AND WE HAD ENVISIONED NOT REOPENING ANOTHER
 9   YEAR-LONG LITIGATION OVER THE INJUNCTION SEPARATE
10   FROM THIS TRIAL.
11              WE HAD ENVISIONED A RESULT WHERE A
12   VERDICT WOULD COME BACK AND, IF IT WAS IN OUR
13   FAVOR, YOUR HONOR WOULD ISSUE INJUNCTIONS AND WE
14   ONLY HAD A SHORT -- THAT CAME UP IN THE IRREPARABLE
15   HARM DISCUSSION THAT YOU AND I HAD LAST TIME WE
16   WERE HERE.
17              AND IF YOUR HONOR IS NOT ENVISIONING
18   THAT, THEN I JUST WANTED TO START -- TO AT LEAST
19   PUT IT ON YOUR PLANNING SCHEDULE, HOW YOU DO WANT
20   TO HANDLE AN INJUNCTION.
21              WHEN WE WERE AT THE FEDERAL CIRCUIT, THEY
22   SUGGESTED, I GUESS, THE POSSIBILITY OF IF A VERDICT
23   CAME BACK, THAT YOU COULD ENTER A PRELIMINARY
24   INJUNCTION AT THAT POINT WHILE YOU DID A LONGER
25   INJUNCTION PROCESS.
```

```
 1              BUT WE, FRANKLY, HAD HOPED FOR AN

 2    INJUNCTION, YOU KNOW, AS PART OF THE VERDICT IN

 3    SORT OF THE TRADITIONAL, EQUITABLE FORM.

 4              MR. VERHOEVEN:  YOUR HONOR, MY

 5    SUGGESTION -- THIS IS MR. VERHOEVEN -- IS THAT THE

 6    PARTIES MEET AND CONFER ON THIS.  IT WAS NOT RAISED

 7    WITH US BEFORE TODAY.

 8              AND WE'RE ALSO GOING TO SEEK INJUNCTIVE

 9    RELIEF ON OUR CLAIMS.

10              SO IT'S POSSIBLE WE MIGHT BE ABLE TO

11    REACH SOME SORT OF AGREEMENT ON A PROCEDURE.

12              BUT I HAVEN'T -- THIS HASN'T BEEN RAISED

13    WITH US, AT LEAST NOT WITH ME.

14              THE COURT:  OKAY.  WHY DON'T -- I MEAN,

15    I'VE READ THIS AND I WAS THINKING MORE JMOL.

16              BUT, I MEAN, IT MIGHT BE GOOD ALSO IF YOU

17    ALL START MEETING AND CONFERRING ABOUT WHAT'S GOING

18    TO HAPPEN WITH THAT IF THERE IS A VERDICT, WHAT

19    KIND OF POST-TRIAL BRIEFING ARE WE GOING TO HAVE

20    AND WHAT'S THE SCHEDULE GOING TO BE.

21              MR. VERHOEVEN:  I'D BE HAPPY TO MEET AND

22    CONFER WITH THEM, AND IN MY EXPERIENCE, USUALLY

23    THESE SORTS OF THINGS ARE DEALT WITH A LITTLE BIT

24    LATER IN THE PROCESS.

25              THE COURT:  SURE.  I DON'T THINK IT'S
```

```
1    REALLY URGENT RIGHT NOW.

2              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

3              THE COURT:  BUT --

4              MR. MCELHINNY:  THE ONE THAT YOU SKIPPED

5    OVER ON MY LIST WAS --

6              THE COURT:  NUMBER 6.  I'M GOING TO DO 6.

7              MR. MCELHINNY:  OKAY.

8              THE COURT:  ALL RIGHT.  SO WHY DON'T YOU

9    MEET AND CONFER ON NUMBER 10?  DO YOU WANT TO JUST

10   SORT OF -- I AGREE WITH MR. VERHOEVEN, I DON'T

11   THINK THIS REALLY NEEDS TO BE RESOLVED NOW.

12             BUT IT MIGHT NOT HURT TO START THINKING

13   ABOUT IT FOR RESOURCE PLANNING PURPOSES.

14             DO YOU WANT TO JUST, YOU KNOW, FILE SORT

15   OF PRELIMINARY THOUGHTS AND PROPOSALS,

16   UNDERSTANDING THAT IT'S NOT GOING TO BE

17   DEFINITIVELY DECIDED UNTIL -- IT MAY BE MOOTED

18   ANYWAY, WE DON'T KNOW, DEPENDING ON WHAT THE JURY

19   DOES.  SO WHEN DO YOU WANT TO FILE THAT?

20             MR. MCELHINNY:  TWO WEEKS, YOUR HONOR?

21             THE COURT:  IS THAT ACCEPTABLE?

22             MR. VERHOEVEN:  YES, YOUR HONOR.

23             THE COURT:  MR. VERHOEVEN?

24             MR. VERHOEVEN:  YES, YOUR HONOR.

25             THE COURT:  SO TWO WEEKS, AND YOU'RE
```

```
1    GOING TO MEET AND CONFER AND FILE A PRELIMINARY

2    STATEMENT.  TWO WEEKS WOULD BE, WHAT, AUGUST 1ST?

3              MR. MCELHINNY:  IT IS, YOUR HONOR.

4              THE COURT:  OKAY.  ALL RIGHT, YEAH, LET'S

5    DO NUMBER 6 AND THEN WE HAVE TO GO BACK TO 1 AND 2.

6              WHAT WAS YOUR QUESTION ON NUMBER 6, THAT

7    NOT ANY PART OF THIS TRIAL ITSELF IS GOING TO BE

8    SEALED?  EVERYTHING IS GOING TO BE IN OPEN COURT.

9              MR. MCELHINNY:  I -- TO BE CLEAR WHAT THE

10   ISSUE IS --

11             THE COURT:  YEAH.

12             MR. MCELHINNY:  -- WE'VE STARTED,

13   OBVIOUSLY, PLANNING FOR THE TRIAL AND LOOKING AT

14   THE OPENING, AND IT STRUCK ME -- MAYBE -- WOULD IT

15   BE HELPFUL, YOUR HONOR, IF I GAVE YOU AN EXAMPLE OF

16   WHAT I'M TALKING ABOUT, A SPECIFIC EXHIBIT THAT'S

17   MARKED HERE?  CAN I APPROACH YOU AND JUST SHOW YOU

18   WHAT I'M TALKING ABOUT?

19             THE COURT:  OKAY.  CAN YOU SHOW IT TO

20   MR. VERHOEVEN FIRST, PLEASE?

21             MR. MCELHINNY:  YES, YOUR HONOR

22   (HANDING).

23             WHAT -- SO THE ISSUE IS -- I DON'T WANT

24   TO GET IN TROUBLE HERE.  THIS IS A -- THIS IS A

25   SAMSUNG EXHIBIT AND TRANSLATION --
```

```
 1              THE COURT:  UM-HUM.

 2              MR. MCELHINNY:  -- THAT WE'RE GOING TO

 3    WANT TO USE IN THE OPENING.  IT IS, AS YOUR HONOR

 4    WILL SEE, A COPYING DOCUMENT THAT GOES PAGE BY PAGE

 5    ADOPTING IPHONE APPLICATIONS INTO WHAT WAS THE

 6    GALAXY PHONE.

 7              THE COURT:  THIS IS NOT GOING TO BE

 8    CONFIDENTIAL.  THIS IS GOING TO BE PUBLIC.

 9              MR. MCELHINNY:  WELL, THAT'S -- IT'S THE

10    PROCESS THAT I WANT TO MAKE SURE.

11              AT THE MOMENT, IF I -- IF I GO INTO ONE

12    OF THESE DOCUMENTS, I'M, UNDER THE -- UNTIL YOUR

13    HONOR HAS RULED IT'S GOING TO BE PUBLIC, I THINK

14    I'M SORT OF BOUND BY THE PROTECTIVE ORDER.

15              THE COURT:  WELL, I MEAN, I THINK I'VE

16    ALREADY RULED THAT THE BASE LINE IS EVERYTHING IS

17    PUBLIC, SO OTHER THAN THIRD PARTY SOURCE CODE, I'M

18    REALLY NOT GOING TO SEAL ANYTHING OR REDACT

19    ANYTHING ELSE.  SO --

20              MR. MCELHINNY:  WHAT I WAS GOING TO

21    SUGGEST, SO THAT WE KNOW WHAT THE GROUND RULES

22    ARE --

23              THE COURT:  YEAH.

24              MR. MCELHINNY:  -- WAS THAT IN WHAT IS

25    THE EXHIBIT LIST, IF EITHER PARTY THINKS THEY CAN
```

```
 1    MEET YOUR HONOR'S STANDARD FOR THAT, THAT THEY

 2    ACTUALLY DO THAT, YOU KNOW, BEFORE FRIDAY OR

 3    SOMETHING SO THAT WE DON'T HAVE TO DO IT -- SO WE

 4    DON'T HAVE TO DO IT IN THE MIDDLE OF TRIAL WITH

 5    SOMEBODY COMING IN AND SAYING -- WE KNOW WHAT THE

 6    EXHIBIT LIST IS, OR AT LEAST WE WILL KNOW BY NEXT

 7    MONDAY WHAT THE EXHIBIT LIST IS.

 8            THE COURT:  SO ALL OF THE MARKETING

 9    STUFF, PUBLIC DOCUMENT.  OKAY?  ALL OF THE DESIGN

10    DEVELOPMENTS, PUBLIC DOCUMENT.

11            SO, I MEAN, I DON'T REALLY SEE WHAT THE

12    ISSUE IS.

13            MR. MCELHINNY:  THERE MAY NOT BE ONE.

14            THE COURT:  IT'S ALL GOING TO BE PUBLIC.

15            MR. MCELHINNY:  THERE MAY NOT BE ONE, BUT

16    ALL WE WANTED TO DISCUSS WITH YOU TODAY WAS A

17    PROCESS SO THAT IN CASE, IN CASE SAMSUNG WANTS TO

18    DISAGREE WITH THAT, THAT THEY ACTUALLY -- THAT WE

19    KNOW WHAT IT IS THEY'RE ASKING FOR AND HOW YOUR

20    HONOR IS GOING TO RULE ON THAT.

21            THE COURT:  I'M NOT GOING TO DO THAT ON

22    FRIDAY.  YOU'RE GOING TO HAVE 500 EXHIBITS BASED ON

23    THE CHANGES WE JUST MADE TO THE EXHIBIT LIST.  YOU

24    WANT ME TO GO THROUGH YOUR 500 EXHIBITS AND FIGURE

25    OUT WHAT'S UNDER SEAL WHEN I DON'T EVEN THINK
```

```
 1    ULTIMATELY YOU ALL ARE REALLY GOING TO RELY ON MORE
 2    THAN 40 OR 50 DOCUMENTS?  SO YOU'RE GOING TO MAKE
 3    ME GO THROUGH AN EXTRA 450 JUST FOR FUN?
 4              MR. MCELHINNY:  I ACTUALLY DIDN'T THINK
 5    YOU WERE GOING TO GET MANY MOTIONS.
 6              THE COURT:  YEAH.
 7              MR. MCELHINNY:  I MEAN, I DON'T THINK
 8    THERE ARE ANY DOCUMENTS, IF ANY, THAT MEET YOUR
 9    HONOR'S STANDARD.
10              BUT IF THERE ARE, I DIDN'T THINK YOU
11    WOULD GET 5 -- I DON'T THINK YOU WOULD GET A
12    MOTION, AND UNDER THE ORDERS, THAT WOULD BE
13    AUTOMATICALLY DENIED.
14              I JUST WONDERED IF THERE WAS SOME WAY WE
15    COULD ACTUALLY FIGURE OUT WHETHER ANYTHING IS GOING
16    TO BE SEALED SO THAT I DON'T VIOLATE THE PROTECTIVE
17    ORDER BY TALKING ABOUT THEM.
18              THE COURT:  WELL, I'VE TOLD YOU, OTHER
19    THAN SOME THIRD PARTY SOURCE CODE, I DON'T REALLY
20    PLAN ON SEALING ANYTHING.
21              MR. MCELHINNY:  OKAY.
22              THE COURT:  SO --
23              MR. MCELHINNY:  THANK YOU, YOUR HONOR.
24              THE COURT:  IT'S ALL GOING TO BE OUT IN
25    THE OPEN.
```

```
 1              OKAY.  I'M GOING TO RETURN THIS TO YOU.
 2     THANK YOU (HANDING).
 3              MR. MCELHINNY:  THANK YOU, YOUR HONOR.
 4              THE COURT:  OKAY.  LET'S GO TO -- LET'S
 5     GO TO THE CLAIM CONSTRUCTION.  THIS IS GOING TO BE
 6     RELATIVELY QUICK.
 7              DO THE PARTIES BELIEVE THAT THE
 8     CONSTRUCTION OF "ELECTRONIC DOCUMENT" SHOULD BE THE
 9     SAME IN BOTH PATENTS?
10              MR. JACOBS:  WE DO, YOUR HONOR.
11              THE COURT:  WHAT ABOUT --
12              MR. JACOBS:  JUST TO SAY IT MORE CLEARLY,
13     THE "ELECTRONIC DOCUMENT" PART OF "STRUCTURED
14     ELECTRONIC DOCUMENT," WE WOULD BE COMFORTABLE IF IT
15     WAS THE SAME AS "ELECTRONIC DOCUMENT" IN
16     "ELECTRONIC DOCUMENT."
17              THE COURT:  OKAY.  WHAT ABOUT FOR YOU?
18              MR. JOHNSON:  THAT'S CORRECT, YOUR HONOR.
19              THE COURT:  OKAY.  YOU KNOW, I -- -- WHAT
20     DO YOU BELIEVE IS THE PLAIN AND ORDINARY MEANING OF
21     "ELECTRONIC DOCUMENT"?
22              AND I WANT TO ASK THAT OF BOTH OF YOU AND
23     I WANT YOU TO COMMIT RIGHT NOW TO WHAT YOU THINK
24     THE PLAIN AND ORDINARY MEANING OF "ELECTRONIC
25     DOCUMENT" IS.
```

1            MR. JACOBS:  SO I THINK THE COURT'S

2    QUESTION IS ASKING FOR A CONSTRUCTION OF A TERM

3    THAT WE THINK SHOULD BE GIVEN ITS PLAIN AND

4    ORDINARY MEANING, ESSENTIALLY, AND AS FAR AS WE'VE

5    GOTTEN, YOUR HONOR, IS "A DOCUMENT STORED IN

6    ELECTRONIC FORM WITH" -- THAT'S THE CONSTRUCTION WE

7    HAVE PROPOSED.

8            AND THE -- AND THE REASON FOR THAT, AS WE

9    HAVE DRILLED DOWN DEEPER AND DEEPER TO TRY AND SEE

10   IF WE CAN CRYSTALIZE THIS EVEN FURTHER, IT -- WE

11   END UP COMING BACK TO WHAT OUR EXPERT TESTIFIED IN

12   DEPOSITION, WHICH IS THAT IT'S VERY CONTEXT

13   SPECIFIC.

14            SO JUST IN OUR WORLD THAT WE'RE FAMILIAR

15   WITH, WE KNOW WHAT AN ELECTRONIC DOCUMENT IS FROM

16   MICROSOFT WORD.  IT'S A .DOC DOCUMENT.  WE KNOW

17   WHAT AN ELECTRONIC DOCUMENT IS MICROSOFT EXCEL.  WE

18   KNOW WHAT AN HTML DOCUMENT IS.

19            THOSE ARE THINGS THAT WE'RE ALL FAMILIAR

20   WITH NOW FROM HAVING BEEN COMPUTER USERS.

21            WHETHER THAT IS -- BUT TO THEN SAY

22   ANYTHING MORE THAN "AN ELECTRONIC DOCUMENT IS A

23   DOCUMENT STORED IN ELECTRONIC FORM, SUCH AS," AND

24   THEN VAULTING OFF OF THE EXAMPLES IN THE

25   SPECIFICATION, WE THINK IT WOULD BE INAPPROPRIATE

1    TO GO FURTHER THAN THAT.

2           THE COURT:  LET ME HEAR FROM SAMSUNG.

3    WHAT'S THE PLAIN AND ORDINARY MEANING OF

4    "ELECTRONIC DOCUMENT"?

5           MR. JOHNSON:  THE PLAIN AND ORDINARY

6    MEANING IS "CONTENT HAVING A DEFINED SET OF

7    BOUNDARIES THAT CAN BE VISUALLY REPRESENTED ON THE

8    SCREEN."

9           MR. JACOBS IS RIGHT, I MEAN, IN THE SENSE

10   THAT DR. -- THEIR EXPERT, DR. BALAKRISHNAN,

11   TESTIFIED IN HIS DEPOSITION WHEN I ASKED HIM THE

12   QUESTION, "WHAT DOES ELECTRONIC DOCUMENT MEAN," HE

13   SAYS, "IN THE CONTEXT OF THE PATENT AND THE CLAIM,"

14   SO THIS IS THE CONTEXT HE WAS TALKING ABOUT, THE

15   PATENT AND THE CLAIMS -- "MY DEFINITION, QUOTE, OF

16   AN ELECTRONIC DOCUMENT WOULD BE SOMETHING VISUALLY

17   REPRESENTABLE ON THE SCREEN THAT HAS A DEFINED SET

18   OF BOUNDARIES," AND THAT'S EXACTLY WHAT OUR

19   CONSTRUCTION IS.

20           THE ISSUE THAT HAS BECOME APPARENT

21   THROUGH THE MEET AND CONFER PROCESS IS APPLE IS

22   INTERPRETING WHATEVER THEIR PLAIN AND ORDINARY

23   MEANING IS AS -- THEY'RE BRINGING IN A REQUIREMENT

24   THAT THE ELECTRONIC DOCUMENT BE STORED AS A SINGLE

25   FILE, AND THAT'S TO BASICALLY GET AROUND THE

1    TABLECLOTH PIECE OF PRIOR ART.

2              AND THE ISSUE THAT WE RUN INTO THERE IS

3    THEY'VE TAKEN THE COMPLETELY OPPOSITE POSITION IN

4    THE ITC.

5              AS WE POINTED OUT IN OUR BRIEF, WHEN THEY

6    ALLEGED INFRINGEMENT OF THE HTC PRODUCT -- AND I

7    HAVE SOME SLIDES IF YOU WANT ME TO SHOW YOU, YOUR

8    HONOR -- BUT IN OUR BRIEF WE REFER TO THE FACT THAT

9    IN THE ITC COMPLAINT, THEY PUT UP A PICTURE OF AN

10   HTC PHONE WITH AN ELECTRONIC DOCUMENT, WHAT THEY

11   CALL AN ELECTRONIC DOCUMENT, AND IT'S GOT 13

12   PHOTOGRAPHS IN IT.

13             WE SAY THAT'S AN ELECTRONIC DOCUMENT.

14   THEY SAY THAT'S AN ELECTRONIC DOCUMENT IN THE ITC.

15             YET HERE, TO GET AROUND THE TABLECLOTH

16   PIECE OF PRIOR ART, THEY SAY THAT'S NOT AN

17   ELECTRONIC DOCUMENT BECAUSE IT'S NOT STORED IN A

18   SINGLE FILE.

19             AND SO THE REAL ISSUE HAS NOW, I THINK,

20   BEEN CRYSTALLIZED SINCE WE WERE EVEN HERE A COUPLE

21   WEEKS AGO, AND IT EVOLVES AROUND WHETHER A DOCUMENT

22   HAS TO BE STORED IN A SINGLE FILE OR NOT.

23             AND WE SAY THAT IT DOESN'T HAVE TO BE.

24   ALL IT HAS TO -- THE PLAIN AND ORDINARY MEANING, TO

25   A PERSON OF ORDINARY SKILL, IS THAT IT'S CONTENT

1    THAT'S DEFINED WITH A SET OF BOUNDARIES THAT CAN BE

2    VISUALLY REPRESENTED ON THE SCREEN.

3              THAT'S THE SHORT AND SWEET OF IT.

4              THE COURT:  DO YOU BOTH ALSO CONTEND THAT

5    YOUR PROPOSED CONSTRUCTION FOR "STRUCTURED

6    ELECTRONIC DOCUMENT" IS THE PLAIN AND ORDINARY

7    MEANING OF THAT TERM?

8              MR. JACOBS:  I'LL ANSWER YOUR QUESTION

9    AND THEN I WANT TO RESPOND TO WHAT MR. JOHNSON

10   SAID.

11             I DON'T THINK WE HAVE -- I THINK -- LET

12   ME ANSWER IT THIS WAY:  WE HAVE DEFINED "STRUCTURED

13   ELECTRONIC DOCUMENT" WITH REFERENCE TO THE

14   SPECIFICATION.

15             WE HAVE NOT -- NEITHER SIDE HAS CONTENDED

16   THAT THE SPECIFICATION CREATES A SPECIAL DEFINITION

17   OF "STRUCTURED ELECTRONIC DOCUMENT."

18             BUT WITH THE LANGUAGE THAT WE HAVE

19   SELECTED, BOXES OF CONTENT, FOR EXAMPLE, I SUSPECT

20   IF YOU WENT TO A DICTIONARY AND IT HAPPENED TO HAVE

21   A DEFINITION OF "STRUCTURED ELECTRONIC DOCUMENT,"

22   IT WOULDN'T USE THAT EXACT FORMULATION.

23             SO IN THAT SENSE, I THINK WE HAVE

24   PROPERLY HEWN TO THE SPECIFICATION AND IT MIGHT, IN

25   FACT, VARY FROM A PLAIN AND ORDINARY MEANING

1    DEFINITION.

2              THERE ISN'T -- NEITHER SIDE HAS ADDUCED

3    TO THE COURT EXTRINSIC EVIDENCE OF WHAT "STRUCTURED

4    ELECTRONIC DOCUMENT" MEANS.

5              IT SEEMS IT PROBABLY IS SOMETHING THAT

6    WAS CREATED IN THE CONTEXT OF THIS INVENTION AND IN

7    THIS, IN THE CONTEXT OF THIS PATENT.

8              SO THE ANSWER TO YOUR QUESTION MAY BE

9    THERE ISN'T A LOT OF EVIDENCE OR A LOT OF MEANING

10   AROUND WHAT "STRUCTURED ELECTRONIC DOCUMENT" IS IN

11   THE PLAIN AND ORDINARY MEANING SENSE OF THAT.

12             MR. JOHNSON:  WE BELIEVE "STRUCTURED

13   ELECTRONIC DOCUMENT," TO A PERSON OF ORDINARY SKILL

14   IN THE ART, MEANS "AN ELECTRONIC DOCUMENT THAT

15   INCLUDES AT LEAST ONE VISUAL STRUCTURED ELEMENT,"

16   AND THAT REALLY MEANS, IS IT VISUALLY DISTINCT?

17   AND THAT'S WHAT THEIR INVENTOR, MR. FORESTALL,

18   SAID.

19             AND WHEN YOU LOOK AT APPLE'S

20   CONSTRUCTION, IT BRINGS IN ALL THESE ADDITIONAL

21   LIMITATIONS THAT SIMPLY DON'T EXIST IN THE CLAIMS,

22   THE SPECIFICATION, OR IN THE PROSECUTION HISTORY.

23             I MEAN, THEIR CONSTRUCTION IS THAT AN

24   ELECTRONIC DOCUMENT IS FORMATTED TO DIFFERENTIATE.

25   THERE'S NOTHING IN THE CLAIMS ABOUT FORMATTING,

1       STORING, DIFFERENTIATING PARTICULAR BLOCKS OR BOXES

2       OF CONTENT IN THE DOCUMENT.

3               THERE'S NOTHING ABOUT BOXES OF CONTENT IN

4       THE DOCUMENT FROM ONE ANOTHER.

5               AND THEN IT'S GOT A CLARIFICATION, WHICH

6       I THINK ACTUALLY IS AMBIGUOUS RATHER THAN A

7       CLARIFICATION.  IT SETS FORTH EXAMPLES.

8       "STRUCTURED ELECTRONIC DOCUMENT COULD BE, FOR

9       EXAMPLE, AN," AND THEN PROVIDES WHAT WE THINK IS A

10      NON-EXHAUSTIVE LIST OF WHAT IT COULD BE.

11              AND SO WE -- THEIR CONSTRUCTION, I THINK,

12      ADDS AMBIGUITY.

13              OUR CONSTRUCTION IS HOW A PERSON OF

14      ORDINARY SKILL IN THE ART WOULD UNDERSTAND IT.

15      IT'S "AN ELECTRONIC DOCUMENT THAT HAS ONE VISUAL

16      STRUCTURED ELEMENT," AND THAT REALLY MEANS THAT

17      IT'S VISUALLY DISTINCT.

18              MR. JACOBS:  I NEED TO GO BACK.  I THINK

19      THAT SOME PLACES THERE'S A LITTLE MORE AGREEMENT

20      THAN THE COURT MAY BE PERCEIVING.

21              WE ARE NOT CONTENDING, ON ELECTRONIC

22      DOCUMENT, THAT IT MUST BE STORED IN A SINGLE FILE.

23              OUR DEFINITION DOESN'T SAY THAT.  THE

24      INTRINSIC EVIDENCE DOESN'T SAY THAT.

25              THE COURT'S PRIOR RULING IS PROBABLY

1    INCONSISTENT WITH THAT BECAUSE THE COURT TALKED

2    ABOUT -- NOTED THE POSSIBLY OF EMBEDDED DOCUMENTS

3    WITHIN DOCUMENTS.

4              SO WE ARE NOT ARGUING THAT AN ELECTRONIC

5    DOCUMENT MUST BE STORED IN A SINGLE FILE.

6              THAT DOES NOT MEAN THAT DIVERSE DOCUMENTS

7    THAT HAPPEN TO BE DEPICTED AT THE SAME TIME ON THE

8    SCREEN ARE NECESSARILY A SINGLE ELECTRONIC

9    DOCUMENT.  YOU'RE GOING TO HAVE TO LOOK AT WHETHER

10   IT'S A SINGLE ELECTRONIC DOCUMENT OR, AS OUR

11   ILLUSTRATIONS IN OUR BRIEF SUGGEST, MULTIPLE

12   ELECTRONIC DOCUMENTS.

13             ALL WE WERE ARGUING ABOUT THE PRIOR ART

14   THAT SAMSUNG IS ALLEGING IS THAT, IN FACT, IF YOU

15   LOOK AT IT, IT'S MULTIPLE ELECTRONIC DOCUMENTS AND

16   THEN, AS YOU FOLLOW THE LANGUAGE OF THE CLAIM

17   THROUGH, IT'S NOT INVALIDATING.

18             SO, AGAIN, OUR DEFINITION DOES NOT

19   REQUIRE THAT THE ELECTRONIC DOCUMENT BE STORED IN A

20   SINGLE FILE.

21             ON "STRUCTURED ELECTRONIC DOCUMENT," OUR

22   DEFINITION IS CLOSELY DRAWN FROM THE SPECIFICATION,

23   AND WHILE IT IS TRUE THAT "FORMATTED TO

24   DIFFERENTIATE" ISN'T LANGUAGE IN THE SPECIFICATION,

25   THE -- WHAT IT INTRODUCED, BLOCKS OR BOXES OF

1    CONTENT, THAT'S EXACTLY WHAT'S IN THE

2    SPECIFICATION.

3                   MR. JOHNSON:  JUST TO GO BACK TO THE

4    POINT MR. JACOBS JUST RAISED, ON PAGE 5 OF THEIR

5    OPENING BRIEF, APPLE ACTUALLY DISTINGUISHES THE

6    PRIOR ART ON THE BASIS THAT IT DOESN'T STORE IN A

7    SINGLE FILE, AN ELECTRONIC DOCUMENT IN A SINGLE

8    FILE.

9                   AND WHEN YOU LOOK AT THE WEB PAGE THAT

10   THEY REFER TO IN THEIR, IN THEIR BRIEF, THE

11   NEW YORK TIMES WEB PAGE, THEY SAY THAT'S AN

12   ELECTRONIC DOCUMENT.

13                  ACTUALLY, IT PROVES OUR POINT THAT AN

14   ELECTRONIC DOCUMENT, EVEN THE WEB PAGE THAT THEY

15   IDENTIFY, HAS ELECTRONIC DOCUMENTS EMBEDDED WITHIN

16   THE ELECTRONIC DOCUMENT.

17                  SO IF YOU THINK OF A WEB PAGE AND YOU

18   THINK OF ADS OR PHOTOGRAPHS OR NEWS ARTICLES, EACH

19   ONE OF THOSE, EACH ONE OF THOSE BLOCKS IS AN

20   ELECTRONIC DOCUMENT AS LONG AS IT'S GOT -- GOING

21   BACK TO THE CLAIM CONSTRUCTION THAT APPLE'S EXPERT

22   IDENTIFIED -- AS LONG AS IT'S GOT A DEFINED SET OF

23   BOUNDARIES THAT CAN BE VISUALLY REPRESENTED ON A

24   SCREEN, AND THAT'S THE PLAIN AND ORDINARY MEANING

25   THAT A PERSON OF ORDINARY SKILL IN THE ART WOULD

```
1    UNDERSTAND READING IT, THE PATENT, THE

2    SPECIFICATION, AND THE PROSECUTION HISTORY.

3              THE COURT:  ALL RIGHT.  LET'S CONCLUDE

4    THAT AT THE CLAIM CONSTRUCTION.

5              ON THE MOTIONS IN LIMINE, I WANTED TO

6    GIVE YOU SOME RULINGS TODAY, BUT I JUST HAVE A VERY

7    FEW NUMBER OF QUESTIONS, THE FIRST ONE BEING FOR

8    SAMSUNG'S MOTION IN LIMINE NUMBER 1, WHY THE

9    EVIDENCE THAT APPLE'S BRAND IS RELEVANT, AND DOES

10   THIS BRAND CONCEPT INCLUDE THE LOGO AND THE NAME?

11             AND IF IT DOES, THAT'S IRRELEVANT.

12             SO WHO WANTS TO RESPOND TO THAT?

13             MR. MCELHINNY:  I WILL, YOUR HONOR.

14             OBVIOUSLY THEIR MOTION IN LIMINE IS MUCH

15   BROADER THAN THAT.

16             THE COURT:  I UNDERSTAND.  BUT --

17             MR. MCELHINNY:  BUT -- THE QUESTION IS

18   GOING TO BE FOR DILUTION, WE HAVE TO PROVE THAT OUR

19   TRADE DRESS IS DISTINCT.

20             AND THE WORD "BRAND" COMES INTO THAT

21   ANALYSIS IN TERMS OF IS -- ARE THE ELEMENTS OF

22   THESE TRADE DRESS IDENTIFIED WITH APPLE?  WHEN

23   PEOPLE SEE THE FORM OF THE IPHONE, WHEN THEY SEE

24   THE FORM OF THE ICONS, DO THEY THINK THAT IS AN

25   APPLE PRODUCT?
```

100

```
 1            SO THE DISTINCTIVENESS OF WHAT WE ARE

 2    CLAIMING AS THE ELEMENTS OF OUR TRADE DRESS TIES TO

 3    WHETHER IT IS IDENTIFIED WITH APPLE AND WHETHER OR

 4    NOT IT'S DISTINCT.

 5            AND THE WORD "BRAND" IS SOMETHING THAT

 6    PEOPLE JUST USE IN THAT CONNECTION.

 7            WE ARE NOT CLAIMING OUR LOGO AS PART OF

 8    THE ELEMENTS OF OUR TRADE DRESS.

 9            THE COURT:  BUT THERE ISN'T ANY CASE LAW

10    SUPPORTING HOW THE PUBLIC'S PERCEPTION OF APPLE AS

11    A NAME OF A COMPANY AND AS A BRAND IS RELEVANT TO

12    THE TRADE DRESS.

13            MR. MCELHINNY:  IT -- I DON'T -- I WANT

14    TO MAKE SURE I'M ANSWERING YOU.  I DIDN'T SEE THAT

15    IN THEIR MOTION SPECIFICALLY, SO I'M A LITTLE BIT

16    WORRIED ABOUT WHAT I'M ARGUING.  WE ARE NOT

17    ARGUING -- I MEAN, WE ARE ARGUING THE FAME OF OUR

18    TRADE DRESS.  THAT'S WHAT WE'RE ARGUING.

19            AND THE WORD "BRAND" THAT PEOPLE IDENTIFY

20    WITH APPLE IS WHAT WE'RE PROVING.

21            WE'RE NOT PROVING THAT THE NAME "APPLE"

22    IS FAMOUS.  THEY'RE NOT USING THE NAME "APPLE."

23    THEY'RE USING OUR TRADE DRESS.

24            THE COURT:  BUT ISN'T THE BRAND THE NAME

25    AND THE LOGO?
```

```
1              MR. MCELHINNY:  NO.  I MEAN, THAT -- I

2      THINK YOU AND I HAVE HAD THIS DISCUSSION ABOUT

3      THREE OR FOUR TIMES.  "BRAND" IS USED BY VARIOUS

4      WITNESSES AND IT'S USED IN VARIOUS CONNECTIONS.

5              BUT I'M USING IT IN ITS CONNECTION WITH

6      THE FACT THAT WHEN SOMEONE SEES THIS, WHEN YOU

7      DRIVE DOWN 101 AND YOU SEE THE PRODUCT ON THE

8      BILLBOARD, EVEN THOUGH IT DOESN'T USE THE COMPANY

9      NAME, YOU RECOGNIZE THAT AS AN APPLE PRODUCT.  YOU

10     RECOGNIZE THAT AS APPLE.  YOU RECOGNIZE IT AS

11     DISTINCT, FAMOUS TRADE DRESS, AND IT IS PART OF --

12     IT IS OUR BRAND.

13             THE COURT:  LET ME ASK, WITH REGARD TO

14     SAMSUNG'S MOTION IN LIMINE NUMBER 3, THAT'S --

15             MR. ZELLER:  YOUR HONOR, MAY I JUST

16     BRIEFLY COMMENT ON WHAT WAS STATED HERE?

17             THE COURT:  PLEASE, GO AHEAD.

18             MR. ZELLER:  I THINK THAT, IN FACT, THE

19     ARGUMENT YOU'RE HEARING IS EXACTLY OUR CONCERN.

20     THIS IS EXTREMELY CONFUSING AND COMPLETELY

21     IRRELEVANT.

22             THEY'RE GOING TO TRY AND TELL THE JURY

23     THAT THIS ABSTRACT THING CALLED THE APPLE BRAND,

24     WHICH HE CAN'T DEFINE, IS REALLY THE SAME THING AS

25     THEIR TRADE DRESS, AND THE FACT THAT THEY'VE HEARD
```

1    OF APPLE AND APPLE ITSELF IS WELL-KNOWN SOMEHOW

2    EQUATES TO FAME FOR TRADE DRESS.

3              THIS IS A PRODUCT CONFIGURATION CASE.

4    THEY ARE NOT ASSERTING THAT WE HAVE INFRINGED OR

5    DILUTED THE APPLE BRAND AS ANYONE WOULD NORMALLY

6    UNDERSTAND THOSE TERMS.

7              TO ALLOW THEM TO COME IN AND HAVE EXPERTS

8    TALK ABOUT THE VALUE OF THE BRAND, THE FAME OF THE

9    BRAND AND EVERYTHING ELSE IS REALLY A RED HERRING

10   AND IT WOULD BE EXTREMELY CONFUSING TO THE JURY.

11   YOU COULDN'T GET A STRAIGHT ANSWER FROM APPLE.

12             AND THIS HAS BEEN RAISED A NUMBER OF

13   TIMES BECAUSE THEY CONTINUE TO DO IT.  THEY

14   CONTINUE TO MAKE THIS FALSE EQUATION BETWEEN WHAT

15   IS ACTUALLY PROTECTABLE UNDER THE LAW AS PRODUCT

16   CONFIGURATION TRADE DRESS VERSUS THIS OTHER

17   ABSTRACT THING THAT THEY'RE TRYING TO CONVINCE THE

18   JURY SHOULD AWARD THEM A CONSIDERABLE AMOUNT OF

19   MONEY FOR.

20             SO I THINK THIS REALLY ILLUSTRATES THE

21   PROBLEM MORE THAN RESOLVES IT.

22             MR. MCELHINNY:  I THINK WHAT IT

23   ILLUSTRATES IS THAT THIS IS NOT AN IN LIMINE

24   MOTION, YOUR HONOR.  HE'S ARGUING A SUMMARY

25   JUDGMENT OR HE'S ARGUING WHAT THE JURY INSTRUCTIONS

```
1    SHOULD BE.

2              BUT WE ARE, AT THE MOMENT, GOING TO TRIAL

3    ON A CLAIM OF TRADE DRESS WHICH WE HAVE

4    SPECIFICALLY SET OUT WHAT THE ASPECTS OF THOSE ARE,

5    THAT THEY ARE IDENTIFIED WITH OUR COMPANY AND THAT

6    THEY HAVE BEEN DILUTED BY SAMSUNG, WHO COPIES THEM.

7              MR. ZELLER:  YOUR HONOR, IT -- THIS IS

8    EXACTLY OUR CONCERN IS THAT THEY ARE ASSERTING

9    VARIOUS LEVELS OF SO-CALLED I.P., INCLUDING THE

10   APPLE ECOSYSTEM, A WHOLE VARIETY OF THINGS TO WHICH

11   THEY HAVE NO RIGHTS, TO WHICH THEY HAVE NOT PROVED

12   THEY HAVE RIGHTS, AND IT'S GOING TO BE CONFUSING TO

13   THE JURY AND IT HAS NEVER BEEN ACTUALLY ASSERTED IN

14   THIS CASE.

15             THE COURT:  ALL RIGHT.  LET ME ASK, WITH

16   REGARD TO SAMSUNG'S MOTION IN LIMINE NUMBER 3,

17   THAT'S EXCLUDING ACCUSED DEVICES, CONTENTIONS,

18   THEORIES, WITNESSES NOT TIMELY DISCLOSED, AND

19   APPLE'S INFRINGEMENT CONTENTIONS OR INTERROGATORY

20   RESPONSES, WHY WASN'T THIS RAISED BEFORE

21   JUDGE GREWAL?  OR WAS IT RAISED BEFORE

22   JUDGE GREWAL?  WHY IS THIS COMING TO ME NOW?

23             MR. ZELLER:  THIS IS A PRECLUSION MOTION,

24   YOUR HONOR.

25             THE COURT:  UM-HUM.
```

1           MR. ZELLER:  THIS IS BROADER THAN ANY --

2     THOSE WERE MOTIONS TO STRIKE.

3           THIS HAS TO DO WITH THE FACT THAT APPLE

4     WANTS TO INTRODUCE A WHOLE VARIETY OF DEVICES, FOR

5     EXAMPLE, THAT WERE NOT EVER PROPERLY ACCUSED AND

6     CERTAINLY WERE NOT TIMELY ACCUSED.

7           WE HAVE LAID THIS OUT IN OUR PAPERS, BUT

8     THERE ARE SEVERAL DEVICES -- TO THE COURT'S POINT

9     ALREADY THAT THERE ARE TOO MANY DEVICES THAT ARE

10    ACCUSED AND IN THE CASE, THIS IS AN EASY WAY OF

11    REDUCING THIS NUMBER.

12          THERE'S A WHOLE ARRAY OF THEM THAT WERE

13    ASSERTED FOR THE FIRST TIME LITERALLY ON THE LAST

14    DAY OF DISCOVERY AND WHICH WE HAD NO OPPORTUNITY TO

15    TAKE DISCOVERY ON FROM ANY OF THEIR WITNESSES AND

16    THEY WERE NOT TIMELY DISCLOSED.

17          SO THIS IS INDEPENDENT.  THIS IS NOT

18    SOMETHING ABOUT STRIKING.  THIS IS PRECLUSION.

19          MR. JACOBS:  YOUR HONOR'S QUESTION IS

20    EXACTLY RIGHT.  THESE ARE EXACTLY THE KINDS OF

21    MOTIONS THE COURT DIRECTED TO JUDGE GREWAL AND

22    EXACTLY THE KINDS OF MOTIONS JUDGE GREWAL

23    ADJUDICATED AND, IN SOME CASES, ADJUDICATED THE

24    VERY ISSUE SAMSUNG IS RAISING NOW, AND THIS IS LIKE

25    A MOTION FOR RECONSIDERATION WITHOUT BEING STATED

```
1    AS SUCH.

2            AND SO YOU'RE EXACTLY RIGHT.  THESE ARE

3    BASED ON INFRINGEMENT CONTENTIONS, INTERROGATORY

4    RESPONSES.  THAT'S EXACTLY THE KIND OF MOTION THAT

5    BOTH SIDES BROUGHT BEFORE JUDGE GREWAL AND HE

6    DISHED IT OUT WITH BOTH SIDES.

7            THE COURT:  LET ME ASK, WITH REGARD TO

8    SAMSUNG'S MOTION IN LIMINE NUMBER 5, WHY CAN'T, FOR

9    WILLFULNESS, THE STATE OF MIND AT ISSUE BE THE ONE

10   AT THE TIME OF THE LAWSUIT FILING AND THEN WE JUST

11   ASSUME THAT THAT'S CONTINUING DURING THE DURATION

12   OF THE CASE?

13           WHY DO WE HAVE TO HAVE -- I MEAN,

14   SAMSUNG'S NOT RELYING ON ADVICE OF COUNSEL AS A

15   DEFENSE TO WILLFULNESS, SO WHY DO WE NEED ALL THESE

16   OTHER POST-COMPLAINT FILING MARKERS FOR STATE OF

17   MIND?

18           MR. JACOBS:  YOU KNOW, THEY MADE

19   AFFIRMATIVE DECISIONS, YOUR HONOR, EACH STEP OF THE

20   WAY.

21           THIS IS PART OF THE KIND OF WHACK-A-MOLE

22   PROBLEM WE FACED IN THIS LAWSUIT.  THEY GET A

23   RULING FROM THE COURT THAT A PATENT IS LIKELY VALID

24   AND INFRINGED, BUT THERE'S NO IRREPARABLE HARM,

25   LET'S SAY, AND SO THEY GO MERRILY ALONG AND
```

1    CONTINUE -- AND MAKE AN AFFIRMATIVE DECISION TO

2    EFFECTIVELY IGNORE THE LEGAL SIGNIFICANCE OF THAT.

3              THEIR STATE OF MIND IS TO PROCEED IN THE

4    FACE OF RULINGS OF AUTHORITATIVE DECISION MAKERS

5    THAT THEIR PRODUCTS ARE INFRINGING APPLE PATENTS,

6    AND WE THINK THE JURY IS ENTITLED TO HEAR THAT,

7    PARTICULARLY WHEN THEY'RE CONTESTING WHAT THEIR

8    STATE OF MIND WAS AND WHETHER THEY WERE AWARE --

9    WHETHER THEY INTENTIONALLY WERE INFRINGING.

10             WE'LL PUT ON QUITE A CASE BEFORE THE

11   COMPLAINT WAS FILED, TO BE SURE.

12             BUT A LOT OF THE ACTIVITY HERE, A LOT OF

13   THE PRODUCTS HAVE BEEN RELEASED AFTER THE COMPLAINT

14   WAS FILED.  A LOT OF THE ENERGY THAT SAMSUNG HAS

15   PUT INTO TRYING TO FLOOD THE MARKET WITH THESE

16   PRODUCTS IS AFTER THE COMPLAINT WAS FILED.

17             SO TO CREATE THAT BARRIER WOULD BE TO

18   HIDE FROM THE JURY SOME OF THE MOST PROBATIVE

19   EVIDENCE OF SAMSUNG'S BEHAVIOR.

20             THE COURT:  WHAT IS THE EXACT LANGUAGE

21   THAT YOU'RE PROPOSING?  BECAUSE THAT COULD OPEN UP

22   A WHOLE PANDORA'S BOX OF ALL THIS SATELLITE

23   LITIGATION OF WHAT WAS BEFORE THE PERSON AT THAT

24   TIME AND NOW THE ISSUES ARE DIFFERENT, ET CETERA.

25             MR. JACOBS:  YES.  SO IT'S IN OUR

```
 1    PROPOSED JURY INSTRUCTIONS.  WE HAVE THE PROPOSED

 2    LANGUAGE SET FORTH THERE.  I IMAGINE THERE WILL BE

 3    ARGUMENT TO THE COURT ABOUT HOW TO HANDLE THIS.

 4          BUT IT'S NOT UNUSUAL -- I'M NOW

 5    TESTIFYING -- IT'S NOT UNUSUAL FOR THIS TO COME UP

 6    AND FOR A COURT TO HAVE TO ARTICULATE WHAT HAS

 7    HAPPENED ALONG THE WAY BECAUSE OF -- BECAUSE ONE

 8    PARTY OR THE OTHER HAS PLACED STATE OF MIND AT

 9    ISSUE, AND THE STATE OF MIND HAS EVOLVED OVER THE

10    COURSE OF THE LITIGATION.

11          MR. JOHNSON:  YOUR HONOR, IF I MAY?

12          THE COURT:  YES.

13          MR. JOHNSON:  I JUST WANT TO START BY

14    POINTING OUT, OBVIOUSLY UNDER 403, THE PREJUDICIAL

15    EFFECTS OF THIS ARE INCREDIBLY, INCREDIBLY LARGE.

16          AND THE PROBATIVE VALUE OF THIS,

17    ESPECIALLY IN LIGHT OF THE BARD CASE, WHICH YOUR

18    HONOR, I BELIEVE, THE FEDERAL CIRCUIT IN JUNE OF

19    THIS YEAR SAID "THE OBJECTIVE PRONG OF WILLFULNESS

20    IS NOW INDISPUTABLY TO BE DECIDED BY THE COURT."

21          AND SO THE PREJUDICIAL EFFECTS OF

22    ALLOWING APPLE AT THIS POINT TO BRING INTO THIS

23    TRIAL FINDINGS THAT WERE MADE PRELIMINARILY ON A

24    PRELIMINARY -- IN CONNECTION WITH A PRELIMINARY

25    INJUNCTION MOTION THAT, FRANKLY, IS NOW UP ON
```

1    APPEAL, AND THEY ALSO WANT TO BRING IN THE FEDERAL

2    CIRCUIT OPINION AS WELL AS -- AND IF YOU LOOK AT

3    THEIR INSTRUCTION NUMBER 59, THEY GO THROUGH A LOT

4    OF DETAIL IN TERMS OF WHAT THEY'RE TRYING TO

5    ARTICULATE --

6              THE COURT:  I'M SORRY TO INTERRUPT YOU.

7    DO YOU CONCEDE IT'S RELEVANT TO WILLFULNESS, BUT

8    YOU JUST THINK UNDER 403 THE PREJUDICIAL EFFECT

9    OUTWEIGHS THE PROBATIVE VALUE?  CAN --

10             MR. JOHNSON:  I DO NOT THINK IT'S

11   RELEVANT.

12             THE COURT:  WHY?  WHY WOULDN'T TWO

13   COURTS, A TRIAL COURT AND A DISTRICT COURT SAYING

14   "WE FIND LIKELY INFRINGEMENT ON VALID PATENTS," WHY

15   WOULD THAT NOT --

16             MR. JOHNSON:  BECAUSE IT'S DONE IN

17   CONNECTION WITH THE PRELIMINARY INJUNCTION ON THE

18   BASIS OF NOT THE FULL RECORD.

19             WE'RE GOING TO HAVE A FULL RECORD WHEN WE

20   GO THROUGH THIS JURY TRIAL, AND FOR THOSE VERY

21   REASONS, PARTICULARLY THE PRELIMINARY --

22             THE COURT:  SO YOU'RE SAYING THERE SHOULD

23   NEVER BE A FINDING OF WILLFULNESS UNLESS THERE IS A

24   JURY VERDICT?  THAT'S WHAT TRIGGERS THE

25   WILLFULNESS?

```
1              MR. JOHNSON:  NO.  I'M SAYING THAT,

2    OBVIOUSLY WHEN YOU LOOK AT THE -- WHEN YOU LOOK AT

3    THE WILLFULNESS, IT'S THE TOTALITY OF THE

4    CIRCUMSTANCES, AND LETTING THEM BRING IN THE

5    PRELIMINARY INJUNCTION ORDER AND THE FEDERAL

6    CIRCUIT OPINION IS INCREDIBLY PREJUDICIAL.

7              AND IT ALSO, BECAUSE IT WAS DONE ON A

8    RECORD WHICH, BY ITS VERY NATURE, CAN BE REVISITED

9    AND IS PRELIMINARY, IT IS NOT A FINAL RECORD.

10             FOR THOSE REASONS, SIMILAR COURTS -- AND

11   THESE ARE CASES THAT I'D LIKE TO HAND UP, YOUR

12   HONOR.  THE KEMIN FOODS VERSUS PIGMENTOS CASE, THE

13   NOVARTIS PHARMACEUTICAL VERSUS TEVA CASE, THE PARK

14   WEST RADIOLOGY VERSUS CARECORE NATIONAL CASE, THE

15   SANOPI VERSUS GLENMARK CASE, IN EACH OF THOSE CASES

16   A MOTION IN LIMINE WAS GRANTED DISALLOWING THE

17   REFERENCE TO A PRELIMINARY INJUNCTION ORDER,

18   WHETHER IT WAS IN THE CONTEXT OF A DENIAL BECAUSE

19   OF -- IN SOME INSTANCES, PEOPLE WANT TO BRING IT

20   IN, A DEFENDANT MAY WANT TO BRING IT IN TO SAY THAT

21   PROVES THERE'S NO WILLFULNESS.  AND SO THESE COURTS

22   HAVE LOOKED AT THE EXACT SAME SITUATION.

23             AND SO ON THE ONE HAND, THAT'S WHY I SAY

24   THERE'S NO WILLFULNESS, THAT IT DOESN'T ESTABLISH

25   WILLFULNESS.
```

```
1              AND ON THE OTHER HAND, THE PREJUDICIAL

2    EFFECT OF THIS IS SO GREAT.

3              AND AT THE SAME TIME, YOUR HONOR, IF

4    YOU'RE INCLINED TO ALLOW IT, TWO POINTS.  ONE IS

5    THEN WE SHOULD BE ABLE TO BRING IN ALL OF THE

6    FINDINGS AROUND THE WORLD THAT HAVE INDICATED THAT

7    THESE PATENTS THAT ARE AT ISSUE HERE HAVE BEEN

8    FOUND TO BE, IN OTHER JURISDICTIONS, NOT INFRINGED

9    OR INVALID.  THAT GOES TO STATE OF MIND.

10             AND, IN FACT, WE TALKED ABOUT

11   WILLFULNESS, OR WE TALKED ABOUT BIFURCATION BEFORE.

12   IT'S SO INCREDIBLY PREJUDICIAL, SO THEN THE

13   WILLFULNESS PART OF THIS CASE SHOULD BE BIFURCATED.

14             THE OBJECTIVE PRONG OF THE WILLFULNESS

15   TEST, IN LIGHT OF THE BARD CASE, IS SOMETHING THAT

16   THE COURT DECIDES, NOT THE JURY.

17             MR. VERHOEVEN:  CAN I --

18             MR. JACOBS:  CAN I --

19             MR. VERHOEVEN:  I'M SORRY.  CAN I ADD ONE

20   THING TO AUGMENT WHAT MR. JOHNSON SAID?

21             THE PREJUDICE HERE IS THAT THE JURY, IF

22   THEY'RE INFORMED THAT THIS COURT HAS MADE SOME SORT

23   OF DETERMINATION PRELIMINARILY ON THE MERITS, WILL

24   BE INFLUENCED BY THAT WHEN IT'S THE JURY'S -- THE

25   CONFUSION -- THE OVERLAP BETWEEN WILLFULNESS AND
```

1    THE LIABILITY ON THE MERITS IS WHERE THE PREJUDICE

2    IS.

3             SO IN THE QUANTUM CASE, THE FEDERAL

4    CIRCUIT -- THIS IS A UTILITY PATENT CASE -- FOUND,

5    CALLED IT THE QUANTUM -- IT'S REFERRED TO NOW AS

6    THE QUANTUM DILEMMA, AND THIS IS A SLIGHTLY

7    DIFFERENT CONTEXT, YOUR HONOR, BUT IT'S WHERE IF

8    YOU HAVE -- IF YOU WANT TO RELY ON ADVICE OF

9    COUNSEL, THE COURT HAS SAID, IN CERTAIN

10   CIRCUMSTANCES, THERE'S TOO MUCH PREJUDICE THAT THE

11   JURORS WILL CONFUSE -- THE REASON YOU'RE

12   INTRODUCING IT IS TO REBUT WILLFULNESS.

13            THE PREJUDICE IS THAT THE JURORS ARE

14   TASKED WITH MAKING A DECISION ON THE MERITS, WHICH

15   IS A DIFFERENT ISSUE FROM WILLFULNESS, AND THE --

16   AND SO THE COURTS WILL BIFURCATE THAT OUT IN THAT

17   SITUATION TO JUST AVOID THE PREJUDICE.

18            WELL, HERE IT'S AN EASIER DECISION

19   BECAUSE THERE'S JUST -- UNDER 403, THERE'S NO

20   QUESTION THAT THE PREJUDICE, THE RISK THAT THE

21   JURORS WILL BE INFLUENCED ON THE MERITS BY THIS,

22   WHICH HAS NOTHING TO DO WITH WILLFULNESS -- IT HAS

23   TO DO WITH THE MERITS FIRST AND FOREMOST -- AND WE

24   WANT THE JURORS TO MAKE AN ACCURATE, OBJECTIVE

25   DECISION ON THEIR OWN WITHOUT SAYING, "WELL, HERE'S

```
 1    WHAT THE JUDGE THINKS, SO THAT MUST BE RIGHT ON THE

 2    MERITS."  THAT'S THE PREJUDICE.

 3              THAT SHOULDN'T BE IN THERE.  JUST LIKE

 4    YOUR HONOR KNOWS IN ANY CASE, YOU DON'T TELL THE

 5    JURORS WHAT YOU THINK AS THE COURT.  THAT'S FOR THE

 6    JURORS TO DECIDE.  THAT'S WHY YOU HAVE JURY TRIALS.

 7              AND SO HERE THERE'S A HUGE RISK THAT

 8    THAT'LL HAPPEN, ALMOST A CERTAINTY, AND THAT'S

 9    INCREDIBLY PREJUDICIAL TO OUR CLIENT.

10              AND IF YOU BALANCE THAT AGAINST THE

11    ARGUMENTS THEY'RE MAKING, IT'S, UNDER 403, NOT EVEN

12    A CLOSE QUESTION.

13              MR. JACOBS:  THE OBJECTIVE PRONG IS

14    THERE'S SECURITY FROM AN ERRONEOUS WILLFULNESS

15    FINDING.

16              THE COURT MAKES THAT DECISION, PRESUMABLY

17    ON SOME KIND OF MOTION FROM SAMSUNG.  IT'S ONLY

18    AFTER WE GET -- ONLY IF THEY LOSE THAT, THE COURT

19    DECIDES THAT, OBJECTIVELY, THE MERITS ALLOW US TO

20    GET TO THE JURY ON WILLFULNESS.

21              BUT THE JURY MAKES A WILLFULNESS

22    DETERMINATION.

23              I THINK THE RIGHT ANSWER IS TO LOOK AT

24    THE EXACT LANGUAGE OF THE INSTRUCTION AND SEE IF,

25    AT THE END OF THE DAY, YOU'RE COMFORTABLE WITH WHAT
```

```
 1    YOU WOULD BE TELLING THE JURY ABOUT THESE PRIOR
 2    DECISIONS AND WHAT WEIGHT THEY SHOULD BE GIVEN AND
 3    IN WHAT CONTEXT THEY SHOULD GIVE THOSE DECISIONS
 4    THAT WEIGHT.
 5              IT'S A LITTLE -- IT IS -- YOUR EARLIER
 6    QUESTION IS RIGHT.  WHAT ARE WE EXACTLY PROPOSING?
 7              AND I -- SOMEWHERE IN THESE BINDERS WE
 8    HAVE THE LANGUAGE, BUT I THINK THAT'S THE RIGHT WAY
 9    TO DECIDE IT AND NOT TO CATEGORICALLY RULE IT OUT.
10              THE COURT:  OKAY.  LET ME ASK, WITH
11    REGARD TO ALL OF THIS, YOU KNOW, AGREEMENT WITH THE
12    IRS TAX ISSUE, IF YOU'RE GOING TO GET RECOVERY FROM
13    THE KOREAN ENTITY, THEN WHY DOES IT MATTER THAT YOU
14    DIDN'T GET MORE OF THAT MONEY OUT OF THE U.S.
15    ENTITIES?  IT'S EVENTUALLY GOING TO GET RECOVERED.
16              AND THIS IS ALL ASSUMING YOU WERE TO
17    PREVAIL AND THEY FIND INDUCEMENT.
18              MR. JACOBS:  EXACTLY.
19              THE COURT:  SO WHY DOES IT MATTER?
20              MR. JACOBS:  ONLY IN THE SCENARIO IN
21    WHICH WHAT YOU JUST HYPOTHESIZED DOES NOT COME
22    TRUE; THAT IS, IF THE KOREAN PARENT IS SOMEHOW NOT
23    HELD LIABLE, THEN OUR ABILITY TO RECOVER PROFITS
24    FROM, ALL THE PROFITS FROM THE SUBSIDARY IS THE
25    KEY TO OUR RECOVERY, AND THIS ARTIFICIAL TAX
```

1    ARRANGEMENT IS THE -- IS ARTIFICIAL AND DOESN'T

2    MEET THE STANDARDS FOR PROVING DEDUCTIBLE EXPENSES

3    IN THE WORLD OF THE INFRINGER'S PROFITS.

4              MS. MAROULIS:  YOUR HONOR, MAY I ADDRESS

5    THIS?

6              THE COURT:  PLEASE, GO AHEAD.

7              MS. MAROULIS:  EACH ENTITY ACCUSED HERE

8    OF INFRINGEMENT HAS ITS OWN PROFITS.  THEY CANNOT

9    RECOVER PROFITS IN EXCESS OF WHAT THOSE PROFITS

10   ARE.

11             THESE ARE THE ACTUAL PROFITS AND THEY

12   CANNOT ATTACK THEM IF THAT'S WHAT THESE ENTITIES

13   ACTUALLY RECOVER.

14             THE ARRANGEMENT AT ISSUE WAS APPROVED BY

15   THE UNITED STATES GOVERNMENT.  I CANNOT GO INTO

16   DETAIL ABOUT IT, BUT IT'S SOMETHING THAT WAS VETTED

17   BY THE UNITED STATES AND KOREA.

18             AND WE HAVE CONCERNS BOTH REGARDING APPLE

19   BLOCKING ITS PHONE, DISCUSSING THE PROFITS IN THIS

20   FASHION.

21             BUT ALSO MR. MUSIKA'S REPORT MAKES A

22   NUMBER OF ALLEGATIONS THAT THIS IS FOR PURPOSE OF

23   TAX EVASION, AND THAT HAS TO DO WITH OUR MOTION IN

24   LIMINE ON OUR END, AND WE CERTAINLY CANNOT HAVE

25   MR. MUSIKA, OR ANY OTHER APPLE WITNESS, OPINE THAT

```
 1        THIS TREATY THAT WAS APPROVED AND VETTED BY THE

 2   UNITED STATES GOVERNMENT SOMEHOW RESULTS IN TAX

 3   EVASION OR TAX AVOIDANCE.

 4             SO RESPECTFULLY, WE REQUEST THAT WE BE

 5   ALLOWED TO PRESENT PROFITS OF EACH DEFENDANT ENTITY

 6   SEPARATELY AND AS THOSE PROFITS ARE ACTUALLY POSTED

 7   UNDER THE TAX TREATY.

 8             MR. JACOBS:  SO THERE'S A FUNDAMENTAL

 9   CONFUSION IN SAMSUNG'S ANALYSIS OF THIS ISSUE.  THE

10   ISSUE IS NOT RECOVERING THEIR ACCOUNTING PROFITS.

11   WE PROVE THE REVENUES AND THEN THEY HAVE TO PROVE

12   THE APPROPRIATE DEDUCTIBLE EXPENSES, AND A TAX

13   TREATY THAT SETS A CERTAIN AMOUNT AS THE LEVEL OF

14   PROFIT THAT IS GOING TO BE ASSIGNED TO THAT ENTITY

15   IS NOT THE ANSWER TO THAT QUESTION, WHAT ARE THE

16   APPROPRIATE DEDUCTIBLE EXPENSES?

17             IT IS TANGENTIAL TO THAT EXERCISE, WHICH

18   IS MANDATED BY THE LAW THAT APPLIES TO THE RECOVERY

19   OF AN INFRINGER'S PROFITS.

20             ON THE EVASION ISSUE, I THINK -- YOUR

21   HONOR WILL RULE ON KIND OF ANCILLARY ISSUES,

22   WHETHER EACH SIDE CAN HURL ACCUSATIONS AT THE OTHER

23   ABOUT ISSUES THAT ARE OUTSIDE THE STRICT CONFINES

24   OF THIS LAWSUIT, AND I THINK YOU'LL PROBABLY COVER

25   THAT LATER.
```

```
1            THE COURT:  OKAY.

2            MS. MAROULIS:  AND, YOUR HONOR, THE TWO

3    EXPERTS ARE APPROACHING THE PROFITABILITY ANALYSIS

4    DIFFERENTLY AND THEY SHOULD BE ALLOWED TO TESTIFY

5    AS TO THEIR ALLEGATIONS.

6            SO APPLE'S MOTION SEEKS TO PREVENT OUR

7    DAMAGES EXPERT FROM --

8            THE COURT:  THERE'S GOING TO BE SYMMETRY

9    ON EVERYTHING.

10           SO LET ME JUST GO THROUGH THIS.

11   OBVIOUSLY I'D LIKE TO DO ORDERS THAT GO THROUGH ALL

12   OF THE ARGUMENTS THAT YOU'VE RAISED, BUT NOW THAT

13   WE'RE GETTING SO CLOSE TO TRIAL, I'M NOT ABLE TO DO

14   THAT.  EVERY ARGUMENT THAT YOU'VE RAISED HAS BEEN

15   THOROUGHLY CONSIDERED.

16           BUT I THINK FROM NOW ON, OTHER THAN FOR A

17   CLAIM CONSTRUCTION, IN WHICH CASE YOU WILL GET A

18   FULL ORDER, FOR THESE MOTIONS IN LIMINE, I'M

19   PLANNING TO DO JUST A CASE MANAGEMENT ORDER THAT

20   SAYS GRANTED OR DENIED.

21           SO I'M GOING TO TRY TO JUST QUICKLY TELL

22   YOU WHAT MY REASONS ARE, BUT YOU WILL NOT BE

23   GETTING AN ORDER WITH THEM, AND UNDERSTAND THAT

24   THIS IS JUST -- I'M TRYING TO DO IT VERY QUICKLY IN

25   THE INTERESTS OF TIME.
```

1              OKAY.  THERE ARE A LOT OF MOTIONS WITHIN

2      MOTIONS, SO CLEARLY THE LIMITS THAT I IMPOSED WERE

3      CIRCUMVENTED.  BUT BE THAT AS IT MAY.

4              AND WITH MANY OF THESE THINGS, I'M GIVING

5      BROAD RULINGS, BUT MANY OF THESE MAY HAVE TO BE

6      EXHIBIT-BY-EXHIBIT DECISIONS BECAUSE THE LANGUAGE

7      IN THE MOTIONS IS VERY BROAD, THE LANGUAGE IN THE

8      OPPOSITIONS IS VERY BROAD, AND IT'S -- ANYWAY.

9              SO WITH REGARD TO MEDIA COVERAGE AND

10     EXPERT TESTIMONY ABOUT APPLE'S PRODUCTS, I DO THINK

11     IT GOES TO SECONDARY CONSIDERATIONS.  IT IS

12     RELEVANT TO WHETHER THE DESIGN IS FAMOUS.  IT'S

13     REQUIRED FOR THE TRADE DRESS DILUTION CLAIM.

14             SO APPLE'S MADE THE REQUIRED NEXUS

15     BETWEEN THE I.P. RIGHTS AND SECONDARY

16     CONSIDERATION, SO THAT MOTION TO EXCLUDE, THAT'S

17     DENIED.

18             WITH REGARD TO THE EVIDENCE RELATED TO

19     APPLE BRAND, THAT MOTION IS GRANTED.  THE LOGO AND

20     THE NAME ARE NOT PART OF THE TRADE DRESS AND I

21     DON'T BELIEVE ARE RELEVANT TO THE TRADE DRESS

22     CLAIM.

23             WITH REGARD TO THE EVIDENCE OF COPYING, I

24     THINK THAT IS RELEVANT, A RELEVANT SECONDARY

25     CONSIDERATION, AND TO THE EXTENT THAT SAMSUNG

1    DOCUMENTS ARE RELEVANT TO COPYING, THAT MOTION IS

2    DENIED.

3           WITH REGARD TO EVIDENCE OF STEVE JOBS,

4    THIS IS NOT GOING TO BE A POPULARITY CONTEST AND,

5    YOU KNOW, BOTH SIDES WANT SOME STEVE JOBS

6    INFORMATION IN AND SOME OUT.  IT'S GOING TO BE OUT

7    UNLESS YOU TELL ME IT'S SPECIFICALLY RELEVANT TO

8    SOMETHING THAT I HAVEN'T HEARD.

9           SO THE MOTION, SAMSUNG'S MOTION IN LIMINE

10   NUMBER 1 ON WHY STEVE JOBS THOUGHT DESIGN WAS

11   IMPORTANT, THE MOTION TO EXCLUDE IS GRANTED.

12          AND ON ALL OF THESE I'VE DONE A 403

13   ANALYSIS.

14          NOW, EVIDENCE OF OTHER WRONGDOING BY

15   SAMSUNG, CLEARLY THE DEPOSITION TRANSCRIPT THAT

16   SAMSUNG SUBMITTED, THE OFFICER DENIES ANY IMPROPER

17   TRANSFER OF APPLE CONFIDENTIAL INFORMATION FROM ONE

18   SAMSUNG BUSINESS UNIT TO THE NEXT, SO I DON'T THINK

19   THAT SHOWS ANYTHING.

20          AND THE DEPO TRANSCRIPT THAT APPLE CITED

21   TO REALLY DOESN'T SHOW THAT, EITHER, SO THAT MOTION

22   IS GRANTED TO EXCLUDE THAT.

23          NOW, WITH REGARD TO MOTION IN LIMINE

24   NUMBER 2, THE MOTION -- THIS IS ALL SAMSUNG SO

25   FAR -- TO EXCLUDE OUT-OF-COURT THIRD PARTY

```
 1    STATEMENTS ABOUT PURPORTED SIMILARITIES OR

 2    PURPORTED CONFUSION, I THINK THAT THE TV AD SURVEY

 3    IS RELEVANT TO ESTABLISH WILLFULNESS AND KNOWLEDGE.

 4          IT IS RELEVANT TO APPLE'S THEORY THAT

 5    SAMSUNG WAS ON NOTICE THAT ITS TABLETS DID APPEAR

 6    SIMILAR AND WERE CONFUSING TO CONSUMERS AND THAT

 7    SAMSUNG ALLEGEDLY CONTINUED TO MAKE THESE DESIGNS

 8    THAT WERE SIMILAR TO THE IPAD.

 9          NOW, I WILL -- SO I'M GOING TO DENY THIS

10    MOTION IN LIMINE, BUT I WILL SAY THAT THE TV AD

11    SURVEY IS ADMISSIBLE ONLY TO SHOW INTENT AND

12    WILLFULNESS.

13          BECAUSE THE TAB 7.0 IS NO LONGER IN THE

14    CASE, I'M NOT GOING TO ALLOW IT TO BE USED FOR

15    CONSUMER CONFUSION SINCE IT'S NOT RELEVANT TO THAT

16    PARTICULAR PRODUCT.

17          NOW, LET'S GO TO MOTION IN LIMINE NUMBER

18    3.  I THINK THAT THESE MOTIONS SHOULD HAVE BEEN

19    BROUGHT BEFORE JUDGE GREWAL.  THEY WERE NOT.

20          BUT IN ADDITION, I FIND THAT THESE WERE

21    PROPERLY AND TIMELY RAISED AND SO THAT MOTION IN

22    LIMINE IS DENIED.

23          NOW, WAIT ONE SECOND.

24          (PAUSE IN PROCEEDINGS.)

25          THE COURT:  WELL, I THINK I'M GOING TO
```

```
 1      GRANT IT AS FAR AS -- I'M GOING TO GRANT IT WITH

 2      RESPECT TO THE EPIC 4G TOUCH, SKYROCKET GRAVITY

 3      SMART, GALAXY S SHOWCASE 1500, AND DENY IT WITH

 4      RESPECT TO THE GALAXY TAB 10.1 LTE.

 5             AND I WILL DO AN ORDER THAT'S MORE

 6      SPECIFIC AS TO THAT, BUT THAT MOTION IS GENERALLY

 7      DENIED WITH THE EXCEPTION OF THOSE FEW PRODUCTS.

 8             WITH REGARD TO MOTION IN LIMINE NUMBER

 9      4 --

10             MR. ZELLER:  YOUR HONOR, MAY I ASK FOR A

11      CLARIFICATION JUST BRIEFLY?

12             THE COURT:  YES.

13             MR. ZELLER:  ONE THING THAT WE DID RAISE

14      IN THIS HAD TO DO WITH THE FACT THAT APPLE HAD

15      RAISED THE THEORY OF INDUCED INFRINGEMENT FOR THE

16      FIRST TIME, AND I, OF COURSE, UNDERSTAND THE

17      COURT'S RULING AS TO BRINGING THE MOTION IN FRONT

18      OF JUDGE GREWAL.

19             THIS, HOWEVER, IS SOMETHING THAT WAS

20      RAISED FOR THE FIRST TIME IN THE JURY INSTRUCTIONS,

21      SO I WOULD ASK, JUST BY WAY OF CLARIFICATION, ONE

22      OF TWO THINGS:  EITHER TO DEAL WITH THIS INDUCEMENT

23      THEORY SEPARATELY, BECAUSE THAT IS NOT SOMETHING

24      THAT COULD HAVE EVEN HAD THE PROSPECT OF RAISING IT

25      IN FRONT OF JUDGE GREWAL; OR, ALTERNATIVELY, WE
```

1    DEAL WITH IT AS PART OF JURY INSTRUCTIONS NEXT

2    WEEK.

3            BUT I DID WANT TO JUST POINT OUT TO THE

4    COURT THAT THERE WAS AT LEAST THAT NEW THEORY THAT

5    WAS IN THERE IN ADDITION TO THE PRODUCTS.

6            THE COURT:  WELL, IN THE PRAYER FOR

7    RELIEF, APPLE DID REQUEST AN ORDER ENJOINING

8    SAMSUNG FROM DIRECTLY OR INDIRECTLY INFRINGING OR

9    DILUTING.  THE INFRINGEMENT CONTENTIONS DID HAVE

10   THE HEADING INDIRECT INFRINGEMENT, AND IT DID SAY

11   THAT SAMSUNG INDUCES THE INFRINGEMENT OF OTHERS.

12           MR. ZELLER:  THAT WAS THE --

13           THE COURT:  THE SEPTEMBER 12TH RESPONSE

14   BY APPLE TO INTERROGATORY NUMBER 7 DID DISCLOSE ITS

15   CONTENTIONS THAT THE KOREAN PARENT COMPANY KNEW OF

16   THE PATENTS AT ISSUE AND THE ALLEGED INFRINGEMENT

17   FROM A MEETING IN KOREA IN AUGUST OF 2010.

18           NOW, THESE ARE NOT ABSOLUTELY THE MOST

19   COMPELLING DISCLOSURES OF THIS THEORY, BUT I THINK

20   THERE'S ENOUGH THERE THAT YOU WERE SUFFICIENTLY ON

21   NOTICE THAT THERE WOULD BE AN INDIRECT INFRINGEMENT

22   INDUCEMENT THEORY.

23           MR. ZELLER:  THEY TOOK THAT SOMEWHAT OUT

24   OF CONTEXT, YOUR HONOR.  THEY WERE NOT TALKING

25   ABOUT FOR A DESIGN PATENT, IN THE FIRST PLACE.

```
1              IN FACT, THE DESIGN PATENT INFRINGEMENT

2       RELIEF THAT THEY ASKED FOR IN THEIR COMPLAINT SAYS

3       NOTHING ABOUT DIRECTLY OR INDIRECTLY.

4              THE COURT:  SO YOUR ONLY -- THEN YOUR

5       CONTENTION IS ONLY AS TO THE DESIGN PATENTS?

6              MR. ZELLER:  CORRECT.

7              THE COURT:  AND YOU ARE NOT DISPUTING

8       THAT THEY HAVE TIMELY ALLEGED INDUCEMENT AS TO

9       EVERYTHING ELSE?

10             MR. ZELLER:  WELL, I WOULD STILL DISPUTE

11      THAT.

12             BUT AT LEAST FOR PRESENT PURPOSES, YOUR

13      HONOR, WHAT IS CLEAR IS THAT THE ONLY THINGS THAT

14      THEY ARE POINTING TO HAVE TO DO WITH TRADE DRESS,

15      AND THEY ARE NOT IN THE CONTEXT OF THE DESIGN

16      PATENTS.

17             AND IN PARTICULAR THE RELIEF THAT I

18      MENTIONED IN THEIR RELIEF THAT THEY ASKED FOR

19      SPECIFICALLY IN THE CONTEXT OF THE DESIGN PATENT

20      DOES NOT ASK FOR --

21             THE COURT:  LET ME TAKE A LOOK AT THAT

22      AGAIN.

23             MR. ZELLER:  SURE.

24             THE COURT:  I'LL TAKE A LOOK AT THAT

25      AGAIN.
```

```
 1          MR. JACOBS:  AND I WOULD JUST POINT OUT,

 2   YOUR HONOR, THAT RECALL THAT THE LOCAL RULES DON'T

 3   GOVERN DESIGN PATENTS, SO WE'RE LOOKING AT

 4   INTERROGATORY RESPONSES AND THE COMPLAINT AND OTHER

 5   WAYS THAT WE PUT THEM ON NOTICE THAT THEY WERE

 6   INDUCING THE SUBSIDIARIES, AND IT WAS IN THE

 7   COMPLAINT, AND EVERYBODY KNOWS WHAT IT MEANS FOR A

 8   PARENT TO INDUCE SUBSIDIARIES.

 9          SO I DO THINK WE ADEQUATELY DISCLOSED

10   THIS THEORY AND THERE'S ABSOLUTELY NO SURPRISE TO

11   THEM ABOUT WHAT IS GOING ON ABOUT INDUCEMENT.

12          MR. ZELLER:  THE PRAYER FOR RELIEF SAID A

13   JUDGMENT THAT SAMSUNG HAS INFRINGED ONE OR MORE

14   CLAIMS OF EACH OF APPLE'S ASSERTED PATENTS.

15          THE COURT:  LET ME ASK A QUESTION.

16   APPLE'S INTERROGATORY RESPONSE THAT WAS 58 PAGES

17   LONG ON THE PATENT INFRINGEMENT THEORY, DID THAT

18   NOT INCLUDE INDUCEMENT, OR IT DID?

19          YOU KNOW WHAT?  LET ME JUST TAKE THIS

20   UNDER SUBMISSION.  I'LL TAKE A LOOK AT THIS

21   PARTICULAR ISSUE MORE CLOSELY.

22          I HAVEN'T GIVEN MS. SHORTRIDGE A BREAK.

23          (PAUSE IN PROCEEDINGS.)

24          THE COURT:  ALL RIGHT.  THE MOTION TO

25   EXCLUDE REFERENCE TO FINDINGS OR RULINGS IN OTHER
```

```
1    CASES NOT INVOLVING THE PATENTS AND ISSUES IS

2    GRANTED.  IT'S UNOPPOSED ANYWAY.

3              WITH REGARD TO THE RULINGS IN THIS CASE,

4    JUDGE GREWAL WILL HAVE TO DEAL WITH ADVERSE

5    INFERENCE WITH REGARD TO ANY CLAIM THAT SAMSUNG

6    ENGAGED IN SPOLIATION OF EVIDENCE.

7              BUT ON THE PRELIMINARY INJUNCTION, I'M

8    INCLINED TO DENY SAMSUNG'S MOTION, BUT I REALLY

9    NEED TO LOOK AT THE ACTUAL LANGUAGE.  I APOLOGIZE.

10   I'VE NOT LOOKED AT THE ACTUAL LANGUAGE IN THE JURY

11   INSTRUCTION.

12             DID YOU PUT YOUR SPECIFIC -- OTHER THAN

13   SAYING YOU DON'T THINK THERE SHOULD BE ANY

14   REFERENCE TO THE PRELIMINARY INJUNCTION IN YOUR

15   THREE INSTRUCTIONS, DID YOU PUT ANY OTHER LANGUAGE

16   RESTRICTION?  IN THE EVENT THAT I DO ALLOW IT, I

17   WANT YOU TO BE HEARD ON THE EXACT LANGUAGE AS IT

18   GOES IN.

19             MR. JOHNSON:  WE HAVE NOT, YOUR HONOR.

20   WE HAVE NOT ADDRESSED THAT.

21             IF I MAY, YOUR HONOR, I REFERENCED THE

22   CASES THAT -- I'D LIKE TO AT LEAST HAND THEM UP,

23   YOUR HONOR, WITH RESPECT TO THIS PARTICULAR ISSUE.

24             THE COURT:  THAT'S FINE.  I KNOW THIS IS

25   A -- IT'S A DIFFICULT ISSUE AND IT -- IT BOILS DOWN
```

1    TO A 403 ANALYSIS.

2             I THINK IT'S A LITTLE BIT EASIER HERE

3    BECAUSE YOU'RE NOT RELYING ON AN ADVICE OF COUNSEL

4    DEFENSE.  IF YOU WERE, I THINK IT WOULD BE MESSIER

5    BECAUSE THEN YOU REALLY START GETTING INTO -- YOU

6    START HAVING TO HAVE DISCOVERY ON TRIAL COUNSEL'S

7    ADVICE AS TO WHAT SHOULD BE DONE DURING THE COURSE

8    OF THIS LITIGATION.

9             BUT I WILL TAKE A CLOSER LOOK AT THE

10   ACTUAL LANGUAGE AND ISSUE A RULING ON THAT.

11            ON THE DISCOVERY MISCONDUCT, AT THIS

12   POINT I'M INCLINED TO GRANT SAMSUNG'S MOTION WITH

13   RESPECT TO THE SOURCE CODE SANCTION ISSUE, BUT DENY

14   IT WITH RESPECT TO THE FAILURE TO PRODUCE THE

15   SURVEY DATA AND THE DISCOVERY ISSUES RELATED TO THE

16   FINANCIAL DATA BECAUSE I THINK THAT IS RELEVANT TO

17   ANY WEIGHT THAT SHOULD BE GIVEN TO SAMSUNG'S

18   FINANCIAL DATA AND THEIR -- YOU KNOW, AS FAR AS

19   APPLE'S DAMAGES CLAIMS, I THINK IT'S RELEVANT IF

20   SAMSUNG IS NOT GIVING OUT A STRAIGHT NUMBER.

21            MR. JOHNSON:  WELL, THEN, YOUR HONOR,

22   WE'D ASK FOR THE OPPORTUNITY TO RESPOND TO THEIR

23   JURY INSTRUCTION, AND ALSO POINT OUT THAT APPLE WAS

24   SANCTIONED IN THIS CASE AS WELL, AND WE HAVE A

25   CLAIM FOR WILLFUL INFRINGEMENT BY APPLE, AND WE

```
 1    HAVE A CLAIM FOR INDUCEMENT OF INFRINGEMENT OF

 2    SAMSUNG PRODUCTS.

 3              AND SO WE'D ASK TO BE GIVEN THE

 4    OPPORTUNITY TO BASICALLY PUT IN OUR OWN JURY

 5    INSTRUCTION THAT RELATES TO THIS, BECAUSE RIGHT NOW

 6    THEIR JURY INSTRUCTION ON NUMBER 59 IS INCREDIBLY

 7    BROAD.

 8              THE COURT:  DID YOU NOT SUBMIT A JURY

 9    INSTRUCTION ON WILLFULNESS?

10              MR. JOHNSON:  WE DID, BUT WE DID NOT --

11    BECAUSE WE DIDN'T BELIEVE ANY OF THIS WAS RELEVANT

12    TO THE ISSUE OF WILLFULNESS, FOR EXAMPLE, THE FACT

13    THAT EITHER PARTY HAS BEEN SANCTIONED, WE DID NOT

14    PUT IN A LIMITING INSTRUCTION POINTING OUT THE FACT

15    THAT APPLE HAS BEEN SANCTIONED IN THIS CASE.

16              MR. MCELHINNY:  THIS IS A PATTERN OF

17    REARGUMENT, YOUR HONOR, WHICH IS EVERYBODY WAS

18    SUPPOSED TO PUT IN THEIR JURY INSTRUCTIONS, THEY

19    WERE SUPPOSED TO ADDRESS IT, THEY TOOK THEIR SHOT

20    AT THIS MOTION, THEY JUST LOST THE MOTION, AND NOW

21    THEY WANT TO START ALL OVER AGAIN.

22              THE COURT:  YEAH, AND I'M NOT GOING TO

23    ENTERTAIN THAT.

24              ANYWAY, I WOULD BE OPEN TO A LIMITING

25    INSTRUCTION IF YOU WANT TO SUBMIT ONE WITH REGARD
```

1    TO THE SURVEY DATA AND THE FINANCIAL DATA.

2            DO YOU WANT TO SUBMIT -- WHY DON'T YOU,

3    BOTH PARTIES, MEET AND CONFER AND SEE IF YOU CAN

4    SUBMIT A JOINT ONE, OR TO THE EXTENT WHATEVER

5    LANGUAGE CAN BE AGREED UPON, AND THEN WHATEVER

6    LANGUAGE YOU WANT SEPARATE, A LIMITING INSTRUCTION.

7    OKAY?  7-23 AT NOON FOR THAT.

8            MOTION IN LIMINE NUMBER 6, I THINK THAT

9    THIS REALLY GOES MORE TO WEIGHT, NOT ADMISSIBILITY.

10   I'M DENYING THE MOTION.

11           NOW, I'M HOPING THAT IF YOU REDUCE THE

12   NUMBER OF ACCUSED PRODUCTS, THIS WILL BE LESS OF AN

13   ISSUE.  BUT THE METHODOLOGY THAT APPLE USED IN

14   ANALYZING INFRINGEMENT, IT'S LEGAL, SO I'M GOING TO

15   ALLOW IT.

16           OKAY.  WITH REGARD TO MOTION IN LIMINE

17   NUMBER 7, EXCLUDING THE RESIZED OR ALTERED PHOTOS

18   OF SIDE-BY-SIDE PRODUCT COMPARISONS, I'M GOING TO

19   RESERVE -- I'M GOING TO DENY THAT.  I THINK THIS

20   ONE IS REALLY BETTER TO BE DONE ON AN

21   EXHIBIT-BY-EXHIBIT BASIS, SO I'M DENYING IT, BUT

22   IT'S WITHOUT PREJUDICE.  OKAY?

23           NOW, I'M HOPING THAT IF YOU'RE ACTUALLY

24   GOING TO INTRODUCE ACTUAL PRODUCTS THAT THIS

25   SHOULDN'T REALLY BE AN ISSUE, RIGHT?  JUST DO THE

```
 1    ACTUAL -- THE REAL DEAL.

 2             OKAY.  MOTION IN LIMINE NUMBER 8, ALL

 3    RIGHT, I'M GOING TO DENY THIS ONE.  THERE IS SOME

 4    EVIDENCE OF, ACCORDING TO APPLE, THAT BEGINNING IN

 5    AUGUST OF 2010 THAT THEY INFORMED SAMSUNG THAT

 6    APPLE BELIEVED THAT SAMSUNG WAS VIOLATING APPLE'S

 7    PATENT AND DESIGN PATENTS, AND IT IS RELEVANT AT

 8    LEAST TO THE TRADE DRESS DAMAGES BECAUSE THEY CAN

 9    RECOVER DAMAGES FOR VIOLATION OF UNREGISTERED TRADE

10    DRESS PRIOR TO GIVING SAMSUNG NOTICE.

11             AND SINCE THERE IS SOME EVIDENCE OF

12    PRE-SUIT ACTUAL NOTICE IN AUGUST OF 2010, I'M GOING

13    TO DENY THIS AT THIS TIME.

14             YOU KNOW, OBVIOUSLY IT'S NOT CLEAR, BASED

15    ON WHAT'S BEEN SUBMITTED FOR THE MOTIONS, WHETHER

16    ACTUAL -- ACTUALLY SUFFICIENT NOTICE WAS GIVEN BY

17    APPLE TO ESTABLISH PRE-SUIT NOTICE FOR ALL OF THE

18    ASSERTED PATENTS, BUT AT THIS POINT I'M NOT GOING

19    TO CATEGORICALLY EXCLUDE THAT EVIDENCE.

20             OKAY.  NUMBER 9, SAMSUNG'S MOTION ON THE

21    TAXES AND THE OVERALL REVENUE AND PROFITS AND HOW

22    THAT'S CALCULATED, I'M GOING TO DENY THIS MOTION.

23             HOWEVER, I DON'T THINK -- I WOULD

24    EXCLUDE, UNDER 403 GROUNDS, ANY SPECULATION ABOUT

25    TAX AVOIDANCE.
```

1           DO YOU HAVE ANY ISSUE WITH THAT?

2           MR. JACOBS:  NO, YOUR HONOR.

3           THE COURT:  OKAY.  SO TAX AVOIDANCE IS

4    EXCLUDED.

5           BUT I THINK THIS IS RELEVANT AND UNDER

6    403 IT COMES IN.

7           ALL RIGHT.  MOTION IN LIMINE NUMBER 10,

8    IT'S NOT OPPOSED AND THAT'S GRANTED.

9           OKAY.  LET'S GO TO APPLE'S MOTION IN

10   LIMINE NUMBER 1.  THAT'S THE 035.

11          I'M DENYING APPLE'S MOTION IN LIMINE

12   NUMBER 1.  APPLE'S CONCEDED PREVIOUSLY THAT THE 035

13   MODEL IS AN EMBODIMENT OF THE '889 PATENT AND, ON

14   THAT BASIS, I'M GOING TO DENY IT.

15          LET'S GO TO MOTION IN LIMINE NUMBER 2,

16   EXCLUDING NON-PRIOR ART OF APPLE AND SAMSUNG DESIGN

17   PATENTS.

18          I DON'T BELIEVE THAT SUBSEQUENTLY ISSUED

19   PATENTS ARE RELEVANT TO DETERMINING THE SCOPE OF AN

20   EARLIER PATENT AND USING NON-PRIOR ART TO DETERMINE

21   THE SCOPE OF THE PATENT AT ISSUE IS NOT PART OF THE

22   TEST SET OUT IN EGYPTIAN GODDESS, SO I'M GOING TO

23   DENY ITS COMING IN.

24          MR. JACOBS:  FOR THE SAKE OF CLARITY,

25   YOUR HONOR --

```
 1              THE COURT:  WAIT.  I'M SORRY.
 2              MR. JACOBS:  I THINK THAT MEANS YOU'RE
 3    GOING TO GRANT THE MOTION --
 4              THE COURT:  I'M SORRY, YOU'RE RIGHT.  I
 5    AM GOING TO GRANT IT.  I'M GOING TO GRANT THIS
 6    MOTION NUMBER 2.
 7              ALL RIGHT.  LET'S GO TO MOTION IN LIMINE
 8    NUMBER 3.  THIS IS EXCLUDING EVIDENCE OR ARGUMENT
 9    RELATING TO CLAIMED PRIOR ART DEVICES THAT DO NOT
10    QUALIFY AS PRIOR ART.
11              AND IN THIS ONE, I'M GRANTING IT IN PART
12    AND DENYING IT IN PART.  THE FOLLOWING DO NOT
13    QUALIFY AS PRIOR ART:  AND THAT'S THE KR30-0452985;
14    THE SHARP SOFT BANK, KU 990 UT AND LG KS 20 ICONS;
15    THE INTERNAL SAMSUNG DOCUMENTS ON THE LG CHOCOLATE
16    AND THE S300.
17              THE MOTION IS DENIED IN ALL OTHER
18    RESPECTS.
19              THAT MEANS I'M DENYING IT AS TO THE LG
20    PRADA, BOTH AS A PRIOR ART REFERENCE AND AS TO THE
21    EVIDENCE BEING OFFERED FOR SOME OTHER PURPOSE.
22              LET'S GO TO MOTION IN LIMINE NUMBER 4.
23              MR. JACOBS:  YOUR HONOR, JUST THAT LAST
24    TAG LINE, IS THAT THE SCOPE OF THE GRANT, THAT --
25    OR THE -- OR IS THAT INTENDED TO APPLY TO THE LG
```

1    PRADA, WHAT YOU JUST SAID AT THE END?

2              THE COURT:  I'M GRANTING THE MOTION AS TO

3    ALL THE OTHER PRODUCTS THAT I MENTIONED, THE SHARP

4    SOFT BANK, THE KS 20, THE LG CHOCOLATE, THE S300;

5    BUT I'M DENYING IT AS THE PRADA, BECAUSE I DO THINK

6    THAT IS ACTUALLY PRIOR ART.

7              MR. JACOBS:  AND THE LAST SENTENCE YOU

8    SAID WAS -- HAD TO DO WITH FOR PRIOR ART AND ALL

9    OTHER PURPOSES, DID THAT APPLY TO THE GRANT OR TO

10   THE DENIAL?

11             THE COURT:  TO THE DENIAL.

12             MR. JACOBS:  OKAY.

13             MR. ZELLER:  JUST TO BE CLEAR, BECAUSE OF

14   COURSE WE HAVE THE TRADE DRESS ALLEGATIONS AND ALL

15   THIS, REGARDLESS OF WHETHER IT QUALIFIES AS PRIOR

16   ART OR NOT --

17             THE COURT:  I'M GOING TO HAVE TO CLARIFY

18   THAT IN MY ORDER.  I'M SORRY.

19             MR. JACOBS:  THANK YOU, YOUR HONOR.

20             THE COURT:  LET'S GO TO MOTION IN LIMINE

21   NUMBER 4.  THAT'S EXCLUDING THE USE OF PARTIAL OR

22   MISLEADING VIEWS OF DESIGNS OR DEPOSITION

23   TESTIMONY.

24             THIS MOTION WAS JUST TOO VAGUE.  IT

25   WASN'T CLEAR WHAT WAS MISLEADING.  IT'S NOT CLEAR

```
1    FROM THAT ONE EXAMPLE OF THAT DEPOSITION, SO I'M

2    JUST GOING TO DENY THIS.  OKAY?

3             I MEAN, TO THE EXTENT THAT ANY PARTIAL

4    VIEWS OF DESIGNS MAY BE MISLEADING OR UNDULY

5    PREJUDICIAL, THEY CAN BE MADE ON A CASE-BY-CASE

6    BASIS AT TRIAL, BUT I'M NOT JUST GOING TO BLANKET

7    EXCLUDE IT.

8             OKAY.  WITH REGARD TO NUMBER 5, SAMSUNG

9    CONCEDES THEY'RE NOT RELYING ON AN ADVICE OF

10   COUNSEL DEFENSE, SO I THINK THIS IS UNOPPOSED AND

11   IT'S GRANTED.

12            MR. JOHNSON:  THE ONLY THING WE ARE

13   RELYING ON, JUST SO THE RECORD IS CLEAR, THERE ARE

14   PRE-SUIT NEGOTIATIONS IN WHICH SAMSUNG EXPLAINED TO

15   APPLE WHY IT WASN'T INFRINGING THE PATENTS.  THAT

16   WAS COMMUNICATED TO APPLE.

17            THAT'S NOT ANYTHING THAT REFLECTS --

18   THAT'S NOT ANYTHING THAT'S PRIVILEGED, BUT IT WAS,

19   OBVIOUSLY, SAMSUNG'S STATE OF MIND THAT WAS

20   COMMUNICATED TO APPLE.

21            THE COURT:  WHAT'S YOUR POSITION ON THAT?

22            MR. MCELHINNY:  THAT WAS NOT -- THAT'S

23   NOT WITHIN THE SCOPE -- IT DEPENDS WHAT THEY TRY TO

24   PUT IN, BUT IT TURNS OUT THAT'S NOT WITHIN THE

25   SCOPE OF OUR MOTION.
```

1    OUR MOTION IS LIMITED TO DEFENDING

2  THEMSELVES BASED ON THE FACT THAT THEY WERE

3  FOLLOWING SOME LAWYER'S ADVICE.

4    THE COURT:  WELL, I'M ASSUMING HE'S

5  SAYING THAT LAWYERS TOLD APPLE "WE DON'T THINK WE

6  NEED TO TAKE A LICENSE BECAUSE WE THINK THE PATENTS

7  ARE INVALID OR NOT INFRINGED."

8    MR. MCELHINNY:  I'M NOT SURE -- WELL, TWO

9  THINGS:  ONE, I'M NOT SURE HE'S SAYING THAT, I'M

10  NOT SURE THAT'S TRUE; BUT, TWO, THAT WOULD BE

11  DIFFERENT FROM WHETHER OR NOT -- FROM SAMSUNG'S

12  STATE OF MIND AS TO WHETHER THEY WERE FOLLOWING

13  LEGAL ADVICE.

14    MR. VERHOEVEN:  THIS IS SIMPLE.  WE'RE

15  NOT RELYING ON ADVICE OF COUNSEL AS A DEFENSE.

16    MR. JOHNSON IS MERELY TALKING ABOUT THERE

17  ARE COMMUNICATIONS THAT ARE PRE-SUIT THAT WE

18  DON'T -- I THINK WE'RE ALL IN AGREEMENT THEY DON'T

19  COME UNDER YOUR MOTION.

20    WE DON'T INTEND TO TELL THE JURY "WE

21  RELIED ON THIS LAWYER, HE TOLD US -- HE OR SHE TOLD

22  US X," AND I THINK THAT'S WHAT WE DON'T --

23    MR. MCELHINNY:  THAT'S WHAT OUR MOTION

24  WAS TO.

25    MR. VERHOEVEN:  YEAH, THERE'S NO DISPUTE.

```
 1              THE COURT:  THERE'S NO DISPUTE, SO THAT
 2      ONE IS GRANTED.
 3              MOTION IN LIMINE NUMBER 6, IT'S KIND OF
 4      THE FLIP SIDE OF SAMSUNG'S, THAT'S GRANTED, AND
 5      THAT'S JUST EXCLUDING HOW OTHER COURTS AND
 6      TRIBUNALS HAVE RULED AND CONSTRUED THE PATENTS.
 7              NOW, WITH REGARD TO STEVE JOBS, IT'S THE
 8      SAME THING.  I DON'T SEE HOW THIS IS RELEVANT.
 9      UNDER A 403 ANALYSIS, I DON'T THINK IT COMES IN.  I
10      REALLY DON'T THINK THIS IS A TRIAL ABOUT STEVE JOBS
11      EITHER WAY.  ALL RIGHT?  SO THAT MOTION IS GRANTED.
12              WITH REGARD TO -- NOW, APPLE'S CORPORATE
13      BEHAVIOR OR FINANCIAL CIRCUMSTANCES, I THINK JUST
14      AS SAMSUNG'S FINANCES COME IN, SO DO APPLE'S, AND I
15      THINK BECAUSE THE CAPACITY OF APPLE TO MEET THE
16      DEMAND IS RELEVANT, WHAT THE EMPLOYEES ARE WORKING,
17      HOW MANY HOURS THEY'RE WORKING, I THINK THAT'S
18      RELEVANT.  IT COMES IN.
19              NOW, THERE IS ONE ASPECT OF THIS WHICH
20      MAY BE LIKE THE TAX EVASION ALLEGATION.  I MEAN, IF
21      THERE IS ANY ALLEGATION OF MISTREATMENT, IF APPLE'S
22      GOTTEN BAD PRESS ON THAT, I DON'T THINK THAT THAT'S
23      RELEVANT.
24              I'M NOT SURE IF THAT WAS -- SOME OF THESE
25      MOTIONS ARE VERY VAGUE, SO IT'S REALLY DIFFICULT TO
```

```
1         FIND OUT EXACTLY WHAT'S BEING ARGUED HERE.

2                  BUT IF IT IS RELATED TO THE HOURS THAT

3         EMPLOYEES ARE WORKING AND, THUS, WHETHER THEY CAN

4         SUPPLY THE DEMAND, MEET THE DEMAND I SHOULD SAY,

5         THAT'S RELEVANT AND IT'S COMING IN.

6                  BUT IF IT'S JUST, YOU KNOW, LIKE -- IF

7         IT'S MUD SMEARING LIKE TAX EVASION, IT'S NOT COMING

8         IN, SO IF IT'S SOME HUMAN RIGHTS CLAIM ABOUT HOW

9         APPLE TREATS ITS MANUFACTURING WORKERS.  OKAY?

10                 SO THAT MOTION IS DENIED TO THE EXTENT

11        THAT APPLE OPENS THE DOOR IN ITS THEORY OF DAMAGES.

12                 NOW, NUMBER 9 IS EXCLUDING SAMSUNG FROM

13        OFFERING PROFITS CALCULATIONS BASED ON A TAX

14        AGREEMENT WITH THE IRS.  THAT'S THE SAME THING AS

15        SAMSUNG'S MOTION IN LIMINE NUMBER 9.  THAT MOTION

16        IS DENIED.

17                 WITH REGARD TO NUMBER 10, APPLE'S

18        ACQUISITION OF FINGERWORKS, THE MOTION IS UNOPPOSED

19        AND IT'S GRANTED.

20                 OKAY.  ALL RIGHT.  ANYTHING ELSE WE HAVE

21        TO DO TODAY?

22                 MR. MCELHINNY:  WELL, NOW I NEED ONE

23        CLARIFICATION.

24                 THE COURT:  OKAY.

25                 MR. MCELHINNY:  I UNDERSTAND THAT -- IT'S
```

```
1    ON THE STEVE JOBS ISSUE.

2              THE COURT:  YES.

3              MR. MCELHINNY:  I UNDERSTAND THAT YOUR

4    HONOR HAS GRANTED SPECIFIC MOTIONS TALKING ABOUT --

5    YOU DON'T WANT TO GLORIFY MR. JOBS AND YOU DON'T

6    WANT TO TALK ABOUT HOW DESIGN WAS IMPORTANT TO HIM.

7              THE COURT:  YES.

8              MR. MCELHINNY:  I DO NOT UNDERSTAND YOUR

9    HONOR TO HAVE SAID HIS NAME CAN'T BE MENTIONED IN

10   THE COURTROOM.  HE IS AN INVENTOR ON THESE PATENTS.

11   HE -- THERE WERE PRESS CONFERENCES HELD IN WHICH

12   THAT -- WE WANT TO PUT THAT -- THAT WAS THE

13   ANNOUNCEMENT.  THAT WAS THE FAME.  HIS NAME IS

14   MENTIONED IN THE NEWSPAPER ARTICLES.

15             THE COURT:  THAT'S FINE.  I'M NOT DOING A

16   COMPLETE PROHIBITION OF STEVE JOBS, BUT IT NEEDS TO

17   BE REALLY RELEVANT TO THE CASE.

18             MR. MCELHINNY:  I TAKE THAT.

19             THE COURT:  THIS IS NOT GOING TO BE A

20   CHARISMA CONTEST.  IT'S NOT GOING TO BE DO YOU LOVE

21   HIM OR HATE HIM.  IT'S ONLY IF IT'S EXACTLY

22   RELEVANT TO SOME ISSUE IN THIS CASE.

23             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

24             MR. VERHOEVEN:  MY CONCERN, YOUR HONOR,

25   JUST REALLY BRIEFLY, IS I DON'T WANT TO SEE, IN
```

```
 1    OPENING STATEMENT, WHERE THE JURORS ARE SHOWN 15

 2    IMAGES OF JOBS INTRODUCING IT AND THERE'S A MENTION

 3    OF HIS NAME.

 4              THEY'RE GOING TO ACCOMPLISH EXACTLY

 5    WHAT -- THIS POPULARITY CONTEST ISSUE THROUGH THAT.

 6              SO AS LONG AS IT'S CONFINED TO EXACTLY

 7    WHAT YOU SAID, A SPECIFIC DOCUMENT THAT IS NEEDED

 8    TO SAY SOMETHING, OKAY.

 9              BUT OUR CONCERN IS WE'RE GOING TO SEE HIM

10    PLASTERED ALL OVER THE SLIDES IN THE OPENING

11    STATEMENT AND THE CLOSING STATEMENT AND THEY MAY

12    ATTEMPT TO INFLUENCE THE JURORS.

13              MR. MCELHINNY:  HE'S GOT A HEAD START

14    BECAUSE HE'S SEEN THE OPENING STATEMENT IN THE ITC

15    ALREADY.

16              BUT THERE IS NO QUESTION -- I'LL JUST BE

17    HONEST.  THE ANNOUNCEMENT OF THE -- OUR CASE IS

18    THAT THE ANNOUNCEMENT, ON JANUARY 9TH, 2007, THE

19    ANNOUNCEMENT OF THE IPHONE, THAT ANNOUNCEMENT WENT

20    AROUND THE WORLD.

21              AND SO IN THE OPENING, WE DO POINT OUT

22    WHAT PHONES LOOKED LIKE BEFORE THAT ANNOUNCEMENT.

23    WE DO POINT OUT THAT.

24              AND WE POINT OUT, AS PART OF THE

25    ANNOUNCEMENT, AND IT'S A PICTURE OF MR. JOBS WITH A
```

1    LARGE SCREEN TALKING THAT THESE THINGS WERE COVERED

2    BY 200 PATENTS.

3              THAT'S COMPLETELY RELEVANT TO THE NOTICE

4    THAT THE WORLD WAS PUT ON ABOUT HOW APPLE WENT

5    AHEAD AND, AND PROTECTED WHAT IT WAS ANNOUNCING AS

6    A NOVEL THING.

7              IT'S TWO SLIDES.  IT'S ONE FOR THE PHONE

8    AND IT'S ONE FOR THE IPAD BECAUSE HE DID IT AGAIN A

9    YEAR LATER.

10             BUT THOSE ARE HISTORICAL EVENTS.  I DON'T

11   COMMENT ON MR. JOBS' CHARACTER.  I DON'T -- I DON'T

12   PLAN TO TALK ABOUT MR. JOBS.  BUT THESE ARE

13   HISTORICAL EVENTS.

14             THE COURT:  SO TWO SLIDES IN YOUR WHOLE

15   OPENING?

16             MR. MCELHINNY:  THAT HAVE MR. JOBS'

17   PICTURE, YES.

18             MR. VERHOEVEN:  I OBJECT, YOUR HONOR.

19   THAT'S NOT -- WHETHER MR. JOBS MADE A PRESENTATION

20   IS NOT RELEVANT TO THEIR CASE, AND THE ONLY

21   RELEVANCE IT COULD POSSIBLY HAVE, YOUR HONOR, IS TO

22   TRY TO INFLUENCE THE JURY IN A WAY THAT'S

23   PREJUDICIAL TO SAMSUNG.

24             AND I'LL TELL YOU, AT THE ITC CASE, THEY

25   SPENT A WHOLE BUNCH OF TIME ON THIS TRYING TO

1    INFLUENCE THE ALJ, IN FACT, SHOWED A PTO, A PATENT

2    AND TRADEMARK OFFICE SMITHSONIAN EXHIBIT WITH JOBS

3    PLASTERED ALL OVER IT.

4            AND THIS IS THE KIND OF THING THAT'S

5    NOT -- THIS SHOULDN'T BE A POPULARITY CONTEST, AND

6    WE SHOULD TAKE THE, THE -- WE SHOULD -- THE WHOLE

7    REASON WE MADE THIS MOTION IS SO THIS CASE IS NOT

8    ABOUT STEVE JOBS AND IT'S ABOUT WHAT THEIR CLAIMS

9    ARE, WHICH IS THEIR INTELLECTUAL PROPERTY.

10           SO THERE'S ABSOLUTELY NO REASON, FOR THEM

11   TO MAKE THEIR CLAIMS, THAT THEY NEED TO SHOW A

12   GLOSSY IMAGE OF STEVE JOBS GOING LIKE THIS WITH THE

13   IPHONE IN THEIR OPENING STATEMENT (INDICATING).

14   THAT'S THE --

15           THE COURT:  SO TWO SLIDES OUT OF THE

16   WHOLE HOUR AND A HALF OPENING?

17           MR. MCELHINNY:  MY OPENING AT THE ITC WAS

18   37 MINUTES.  IT JUST SEEMED LONGER TO

19   MR. VERHOEVEN.

20           BUT SERIOUSLY, THIS IS THE PROBLEM WITH

21   THESE MOTIONS IN LIMINE, BECAUSE THEY SOLD IT TO

22   YOUR HONOR AS SOMETHING WHEN THEY ACTUALLY WANT

23   SOMETHING ELSE.

24           THE FACT THAT THE SMITHSONIAN, THE FACT

25   THAT THE PATENT AND TRADEMARK OFFICE HAVE PUT ON

1    PRESENTATIONS ABOUT THE IMPORTANCE OF THESE DESIGNS

2    AND THE IMPORTANCE OF THESE PATENTS IS A CLASSIC

3    SECONDARY CONSIDERATION ABOUT RECOGNITION OF

4    NOVELTY.

5              THE COURT:  OKAY.  WELL, WHY DON'T WE DO

6    THIS:  I THINK THAT MAKING THESE INDIVIDUAL EXHIBIT

7    RULINGS IN A VACUUM, WITHOUT ACTUALLY SEEING THEM,

8    IS NOT CORRECT.

9              SO IF YOU HAVE ANY SPECIFIC OBJECTION TO

10   ANY DEMONSTRATIVES THAT APPLE IS GOING TO USE IN

11   ITS OPENING, YOU LET ME KNOW.

12             MR. VERHOEVEN:  YES, YOUR HONOR.

13             THE COURT:  AND THEN I CAN REALLY SEE THE

14   FULL PANOPLY OF WHAT'S GOING TO BE PRESENTED.

15             IT'S REALLY HARD FOR ME, IN THE ABSTRACT

16   RIGHT NOW, WITHOUT KNOWING WHAT ELSE YOU'RE GOING

17   TO PRESENT, WITHOUT KNOWING -- I HAVEN'T SEEN

18   THESE, UNLIKE YOU.  I JUST -- IT'S DIFFICULT.

19             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

20             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

21             THE COURT:  OKAY.  ALL RIGHT.  WHAT ELSE?

22             MS. MAROULIS:  YOUR HONOR, ONE MORE

23   RELATED ISSUE.

24             IN THE COURSE OF PREPARING THE

25   STIPULATION OF THE DISMISSAL AS TO THE CASE

1    NARROWING, WE LEARNED THAT APPLE INTENDS TO

2    MAINTAIN ITS FRAND AND ANTITRUST CLAIM ON ALL THE

3    STANDARD ESSENTIAL PATENTS THAT SAMSUNG DROPPED,

4    AND WE UNDERSTOOD THE COURT'S ORDER NARROWING TO

5    HAVE THE CASE SMALLER AND LESSER, AND THAT'S WHY

6    SAMSUNG WENT AHEAD AND DISMISSED WITHOUT PREJUDICE

7    CERTAIN PATENTS.

8            WE DID NOT UNDERSTAND, UNTIL JUST A FEW

9    DAYS AGO, FROM APPLE THAT THEY WILL MAINTAIN THEIR

10   FRAND AND THEIR ANTITRUST COUNTERCLAIMS AS TO THOSE

11   PATENTS, AND WE RESPECTFULLY REQUEST, YOUR HONOR,

12   THAT THEY BE ASKED TO DROP THOSE, BECAUSE THAT

13   DOESN'T NARROW THE CASE IN ANY WAY.

14           THEY PUT THEIR EXPERTS ON THE WITNESS

15   LIST, THEY PUT THE EXHIBITS IN CONNECTION WITH

16   THOSE DISMISSED PATENTS ON THE EXHIBIT LIST.

17           WE'RE GOING TO HAVE TO DISCUSS THE

18   TECHNOLOGY AND ALL THE CIRCUMSTANCES OF THOSE

19   PATENTS.

20           AND SO THE OBJECTIVE THAT YOUR HONOR HAD

21   IN NARROWING THE CASE WAS NOT ACHIEVED.

22           THE COURT:  I DON'T SEE ANY REASON WHY

23   YOU SHOULD DO THAT.

24           MR. LEE:  YOUR HONOR, LET ME SAY TWO

25   THINGS.

```
 1              THE FIRST IS IN TERMS OF NARROWING OF THE
 2     CASE, THEY NARROWED THE CASE BY DROPPING ONE PATENT
 3     THAT WE'D BEEN GRANTED SUMMARY JUDGMENT ON.
 4              THE SECOND THING I WOULD SAY IS THAT
 5     THE -- AND I HAVE A PROPOSAL FOR YOUR HONOR TO
 6     ADDRESS YOUR HONOR'S REQUEST OF BOTH OF US THAT WE
 7     NARROW THE CASE.
 8              THE ANTITRUST CLAIM IS A SINGLE CLAIM OF
 9     A MONOPOLISTIC SCHEME.  THERE WERE SEVEN STANDARD
10     ESSENTIAL PATENTS ASSERTED AGAINST US, ALL OF WHICH
11     HAD THE SAME PATTERN AND PRACTICE OF NONDISCLOSURE,
12     INCORPORATION INTO THE STANDARD THAT SAMSUNG IS
13     URGING, AND THEN A LATE DISCLOSURE.
14              THE PATTERN AND PRACTICE IS RELEVANT TO
15     THE ANTITRUST CLAIM -- IS RELEVANT UNDER THE
16     ANTITRUST LAW.
17              NOW, THERE'S TWO THINGS WE COULD DO, AND
18     YOUR HONOR, IF YOUR HONOR CONSIDERS EXACTLY WHAT
19     SAMSUNG IS SAYING IS, "FOR THE WORST PATENTS, THE
20     ONES WE'VE DROPPED, YOU CAN'T PURSUE IT.  YOU CAN'T
21     DEMONSTRATE THE PATTERN AND PRACTICE."
22              SO -- WE UNDERSTAND WE ONLY HAVE 25
23     HOURS.  HERE IS WHAT WE INTEND TO PURSUE:  THE
24     PATTERN AND PRACTICE OF THESE SEVEN PATENTS OF
25     FILING A SECRET PATENT APPLICATION, NONDISCLOSURE,
```

1    AND THEN INCORPORATION OF THE STANDARD AND THEN,

2    YEARS LATER, A DISCLOSURE IS RELEVANT.

3            WE DON'T HAVE TO PROVE ALTERNATIVE

4    TECHNOLOGIES FOR THE DROPPED PATENTS.

5            BUT WE WILL PROVE THAT PATTERN FOR THOSE

6    FOUR.

7            WE WILL PROVE THE ALTERNATIVE

8    TECHNOLOGIES FOR THE THREE PATENTS THAT REMAIN IN

9    THE CASE.

10            THAT WILL ELIMINATE WHAT MS. MAROULIS HAS

11    TALKED ABOUT, THESE ADDITIONAL WITNESSES.

12            THE ONLY THING THAT WILL COME IN IS THE

13    FACT THAT THERE WERE SEVEN PATENTS ASSERTED, THAT

14    THE PATTERN AND PRACTICE OF NONDISCLOSURE WAS THE

15    SAME, AND THEN FOR THE SUBSTANTIVE ANTITRUST CLAIM,

16    WE WILL DEMONSTRATE THE ALTERNATIVE TECHNOLOGIES

17    ONLY FOR THE THREE THAT ARE LEFT IN.

18            THAT WILL BE -- THE ADDITIONAL TIME TO

19    PROVE THE PATTERN AND PRACTICE IS ABOUT A HALF

20    HOUR.  IT WILL COME OUT OF OUR 25 HOURS.

21            BUT THE ANTITRUST CASE IS CLEAR, YOUR

22    HONOR.  IT'S A SINGLE MONOPOLISTIC SCHEME.  IT'S

23    NOT SEVEN DIFFERENT MONOPOLISTIC SCHEME.

24            THE COURT:  THE PROBLEM I HAVE IS APPLE'S

25    CASE IS STILL TOO BIG.  THEY'RE TRYING TO GO AFTER

```
 1    31 ACCUSED PRODUCTS.  THAT'S RIDICULOUS.  OKAY?

 2    YOU'VE GOT UTILITY PATENTS, DESIGN PATENTS, YOU'VE

 3    GOT TRADE DRESS CLAIMS, REGISTERED AND

 4    UNREGISTERED, YOU'VE GOT THE DESIGN ON THE IPAD AND

 5    YOU'VE GOT FOUR DIFFERENT ANTITRUST CLAIMS.

 6              I MEAN, I -- YOU KNOW, I COULD EASILY SAY

 7    THIS CASE IS NOT TRIAL READILY AND JUST VACATE THIS

 8    JULY 30TH DATE BECAUSE THIS IS NOT -- THAT'S

 9    RIDICULOUS.  31 ACCUSED PRODUCTS?

10              THE REASON WHY THE VERDICT FORM IS SO BIG

11    IS YOU'RE BEING TOO GREEDY.  YOU WANT EVERYTHING.

12              SO IF YOU'RE NOW MAKING CLAIMS ON PATENTS

13    THAT HAVE BEEN DISMISSED FROM THE CASE, THEN I'M

14    JUST GOING TO SAY THIS IS NOT TRIAL READY AND I'M

15    GOING TO GO ON VACATION IN THE BEGINNING OF AUGUST

16    BECAUSE THIS IS RIDICULOUS.  YOU'VE GOT TOO MUCH IN

17    THIS CASE RIGHT NOW.

18              IF YOU REALLY WANT TO TRY THIS THING,

19    YOU'VE GOT TO NARROW IT MORE.  WE ARE NOT GOING TO

20    GO TO TRIAL ON 26 PRODUCTS.

21              MR. LEE:  AND MR. MCELHINNY ADDRESSED THE

22    26 PRODUCTS.

23              YOUR HONOR, WE HEAR YOU.  WE WANT THE

24    TRIAL DATE.  IF WE COULD ONLY PURSUE THE ANTITRUST

25    CLAIM AS TO THE THREE PATENTS THAT ARE LEFT IN AND
```

1    THE CONTRACT CLAIM, THAT'S WHAT WE'LL DO.  WE WANT

2    THE TRIAL DATE.

3             THE COURT:  SO WHAT DOES THAT MEAN,

4    YOU'RE DROPPING THE UCL CLAIM AND --

5             MR. LEE:  NO, YOUR HONOR.

6             THE COURT:  WHAT DOES THAT MEAN?

7             MR. LEE:  I THINK WE'RE COLLAPSING TWO

8    DIFFERENT THINGS.

9             FOR THE UNFAIR COMPETITION LAW CLAIM, THE

10   ANTITRUST CLAIM, THERE ARE SEVEN PREDICATE PATENTS.

11            THEY'VE DROOPED FOUR OF THE SEVEN AND

12   THERE'S THREE LEFT, SO THAT THE THREE PATENTS THAT

13   WILL GET LITIGATED IN ANY EVENT, BECAUSE THEY'RE

14   PURSUING THEIR SUBSTANTIVE CLAIMS, WILL BE THE

15   BASIS OF THE ANTITRUST CLAIM, THE UCL CLAIM, AND

16   THE BREACH OF CONTRACT CLAIM.

17            BUT IT WILL NARROW IT BY ELIMINATING THE

18   FOUR, WHICH IS WHAT SAMSUNG IS TALKING ABOUT.

19            MR. VERHOEVEN:  THAT ADDRESSES OUR

20   OBJECTION, YOUR HONOR.

21            THE COURT:  OKAY.

22            MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

23            THE COURT:  ALL RIGHT.  ANYTHING ELSE?

24   NO?

25            OKAY.  THANK YOU ALL.  SEE YOU ON

1   TUESDAY.  I THINK WE'RE SET AT 1:30.  CORRECT?

2              THE CLERK:  YES.

3              THE COURT:  OKAY.  THANK YOU.

4          MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

5          MR. MCELHINNY:  THANK YOU, YOUR HONOR.

6          (WHEREUPON, THE PROCEEDINGS IN THIS

7   MATTER WERE CONCLUDED.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    CERTIFICATE OF REPORTER

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21                   /S/
                     _____
22                   LEE-ANNE SHORTRIDGE, CSR, CRR
                     CERTIFICATE NUMBER 9595
23

24

25                   DATED:  JULY 20, 2012