HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
Kevin P.B. Johnson (Cal. Bar No. 177129)
Victoria F. Maroulis (Cal. Bar No. 202603)
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Michael T. Zeller (Cal. Bar No. 196417)
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.   11-cv-01846-LHK (PSG)<br><br>**JOINT STATEMENT REGARDING USE OF REPRESENTATIVE PRODUCTS AT TRIAL** |

1    In accordance with the Court's July 19, 2012 Minute Order and Case Management Order,
2    the parties met and conferred regarding the use of representative products at trial. The parties did
3    not reach an agreement on this issue.

4    **Apple's statement**[1]: For Apple's utility patents, Apple proposed that 7 devices be deemed
5    representative of the 27 accused products.[2] The guiding principle was simple – where the exact
6    same infringement and non-infringement arguments had been applied against two products, those
7    products were grouped together for purposes of trial. To further facilitate this narrowing process,
8    Apple even offered to drop its allegations against the accused ThinkFree Office application.

9    Samsung rejected this proposal on the grounds that certain devices purportedly exhibit
10   different behavior than other devices. The only two products specifically named in Samsung's
11   correspondence, however, were the Fascinate and the Galaxy S 4G. The only difference that
12   Samsung ever identified between versions of the Fascinate running different versions of the
13   Android platform related to the now irrelevant ThinkFree Office application. As for the Galaxy S
14   4G, the first difference was again with ThinkFree Office, while the second related to the "blue
15   glow" feature, which was definitively excluded from trial by Judge Grewal's June 19, 2012
16   Clarification Order (Dkt. No. 1106). Accordingly, Samsung has failed to provide Apple with a
17   single substantive reason relating to evidence that will be presented at trial for rejecting this
18   proposal.

19   In discussing the representative products issue and the verdict form, Samsung has also
20   alluded to the theoretical possibility that accused products running different versions of the
21   Android source code might not behave identically. With the exception of the "blue glow"
22   modification excluded by Judge Grewal's Order, Samsung has not identified any concrete

---

[1] Apple was not afforded an opportunity to respond fully to the points raised by Samsung in its separate statement prior to the filing of this joint statement. Apple notes, however, that there appear to be numerous inaccuracies in Samsung's assertions, including its table suggesting that the Gem is not an accused product for the '381 patent (it is accused of infringing in the Contacts list application).

[2] A copy of Apple's draft stipulation as provided to Samsung is attached hereto as Exhibit 6 to the Declaration of Ketan Patel in Support of Joint Statement Regarding Use of Representative Products at Trial.

examples of a difference that in any way relates to infringement of the patents-in-suit; no such opinion appears in Samsung's expert reports. Moreover, when Samsung was ordered to produce source code for all of the Accused Products, Samsung produced only a single version or sub-version of code for each product. Given Judge Grewal's Order precluding any evidence of "design arounds" and Samsung's choice to produce only one representative version of source code for each product, Samsung will be precluded from arguing that other non-produced versions of the code would perform differently. Apple also notes that Samsung neglects ignored Apple's earlier proposal on stipulating to the use of representative source code.

For Apple's design patents, Apple proposed that the parties reuse the exact same groupings of products used by Samsung's design expert Robert Anders. Instead of analyzing every product separately, Mr. Anders relied on representative products, describing the represented devices as "a/k/a" – also known as. For example, he described the "Samsung Galaxy Fascinate" as "a/k/a Showcase i500, Showcase Galaxy S, and Mesmerize." Samsung rejected this proposal on the generic ground that "all of the accused products are different in appearance and each one must be analyzed independently under design patent and trade dress law." Samsung has provided no explanation for rejecting Apple's proposal or its own expert's methodology.

In view of this record, Apple believes the Court is empowered to direct Samsung to agree to trial of the case on the basis of representative products, as Samsung cannot show good cause why that would be a denial of due process. *See In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1310-13 (Fed. Cir. 2011) (no denial of due process where district court had plaintiff proceed on representative claims because plaintiff failed to identify any substantial differences between the permitted representative claims and unasserted claims).

The Court said at the July 18 pre-trial conference, "We are not going to go trial on 26 products." Tr. at 144:19-20. To address that concern—regardless of whether Samsung agrees to or the Court orders trial on the basis of representative products—Apple is prepared to dismiss without prejudice its claims against three accused products: the Acclaim, Nexus S, and Sidekick. In addition, Apple will not point to the ThinkFree Office application in asserting infringement of the '381 patent.

1   **Samsung's statement**[3]: During the pre-trial hearing on July 18, 2012 and in its
2   subsequent order on July 19, the Court requested that the parties try to reach an agreement with
3   respect to a stipulation on representative products to reduce the number of accused products for
4   trial. On July 21, Apple sent Samsung a proposal that grouped certain accused products together
5   without substantially reducing the number of accused products. Samsung carefully reviewed
6   Apple's proposal, but found that the products in Apple's groupings have significant differences
7   with respect to Apple's infringement claims. Samsung notified Apple of the flaws in its product
8   groupings on July 22.

9   Apple's approach to representative products is unworkable in light of the large number of
10  accused products and the existence of differences between the accused products and even the
11  same products running different versions of software. Apple's proposed groupings represent an
12  improper attempt by Apple to escape its required burden of proof on infringement because they
13  do not account for material differences between accused products. Instead, any approach to
14  categorize representative products into groups must properly account for the differences in
15  functionalities of the accused products. *See, e.g., L&W Inc. v. Shertech, Inc.,* 471 F.3d 1311 (Fed.
16  Cir. 2006) ("The plaintiff, not the accused infringer, has the burden of showing infringement as to
17  all accused products. The accused infringer is not obliged to point out "relevant distinctions"
18  among products. While the patentee's evidence was sufficiently specific to justify judgment of
19  infringement as to one of the sixteen accused products, there was insufficient evidence to justify
20  an expert's assertion that the one product was 'typical.' A patentee "cannot simply assume that
21  all of the [accused infringer's] products are like the one [that the expert] tested, and thereby shift
22  to [the accused infringer] the burden to show that this is not the case."); *Rambus Inc. v. Hynix*
23  *Semiconductor Inc.,* 642 F. Supp. 2d 970, 989-90 (N.D. Cal. 2008) (absent stipulation from
24  defendant that certain products are representative, plaintiff had burden of proving that each
25  accused product infringes every element of asserted claims); *Commissariat a l'Energie Atomique*

---

[3] Samsung did not receive Apple's statement until 11:58 am PDT on July 23, 2012. In light of that delayed receipt, the parties mutually agreed to submit this joint statement after 12 pm PDT.

1  *v. Samsung Elecs. Co.,* 524 F. Supp. 2d 534, 541 (D. Del. 2007) ("Although a party may not be
2  required to reverse engineer every module, the party must specify which modules are
3  representative of a particular series or group, why they are representative and how their particular
4  properties or components directly infringe each and every element of a claim."); *see also*
5  *Egyptian Goddess, Inc. v. Swisa Inc.,* 543 F.3d 665, 676 (Fed. Cir. 2008); *AMF Inc. v. Sleekcraft*
6  *Boats*, 599 F.2d 341, 348-349 (9th. Cir. 1979).

**Utility Patents**

Apple is asserting infringement of 3 utility patents – the '381, '915 and '163 patents – against approximately 25 Samsung products. Apple has injected further complexity into its case for the '381 patent by alleging infringement of three different applications that run on the accused products – Web Browser, Gallery and Contacts. The following chart illustrates the complexity of Apple's infringement allegations and the number of potential infringing combinations the jury will be asked to address.[4]

| Samsung Product | '381 Patent (Claim 19) Web Browser Application | '381 Patent (Claim 19) Gallery Application | '381 Patent (Claim 19) Contacts Application | '915 Patent (Claim 8) Web Browser Application | '163 Patent (Claim 50) Web Browser Application |
|---|---|---|---|---|---|
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Exhibit 4G | | | | | |
| Fascinate | | | | | |
| Galaxy Ace | | | | | |
| Galaxy Prevail | | | | | |
| Galaxy S (i9000) | | | | | |
| Galaxy S II | | | | | |

---

[4] This morning (July 23), Apple indicated for the first time that it may be dropping its infringement allegations against the Acclaim, Nexus S and Sidekick. As the chart demonstrates, this will do little to reduce the complexity of Apple's utility patent infringement claims.

| | | | | | |
|---|---|---|---|---|---|
| Galaxy S 4G | | | | | |
| Gem[5] | NA | NA | NA | | |
| Gravity | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Intercept | | | | | |
| Mesmerize | | | | | |
| Nexus S 4G | | | | | |
| Replenish | | | | | |
| Transform | NA | NA | NA | | |
| Vibrant | | | | | |
| Galaxy Tab | | | NA | | |
| Galaxy Tab 10.1 | | | NA | | |

Making matters worse, the '381, '915 and '163 patents all relate to user interface functionalities that are significantly impacted by the version of *software* running on each accused device. In many instances, the different versions of software behave differently with respect to the allegedly infringing features. Although Samsung did not attempt to illustrate this further complication in the chart above, accounting for the different software versions will increase the number of infringement analyses required by the jury. In its representative products proposal, Apple completely ignores this issue and instead groups together various hardware products without any reference to software versions. But because the accused functionality depends on the actual software that runs on the accused products, Apple's approach is inaccurate and deficient.

For example, Apple has proposed that for the '381 patent, "the Galaxy Tab 10.1 is representative of the Galaxy Tab 7.0". These two products do not behave the same way with

---

[5] Contrary to Apple's claim in footnote 1, the Gem is not an accused product under the '381 patent. It was not identified as a product accused of infringing the '381 patent in Apple's infringement contentions, and Apple never moved for leave to amend its infringement contentions under the Patent Local Rules. Consequently, the Court should preclude Apple from introducing the Gem as an accused '381 product at trial. See Patent L.R. 3-1.

respect to the accused applications, as Dr. Jeffrey Johnson illustrated in his report. For the Galaxy Tab 7.0, Dr. Johnson observed that the Browser did not exhibit the behavior accused of infringement of the '381 patent. Instead, the user was not able to scroll or pan the webpage beyond the edge, *i.e.,* "hard stop." Ex. 1 (Expert Rep. of J. Johnson) at 24-25, 27-28. Since displaying an area beyond the edge is one of the limitations for the '381 patent, this is a key distinction highly relevant for infringement. Apple's expert Dr. Balakrishnan admitted this functionality was different from the '381 patent. Ex. 2 (Depo. Tr. of R. Balakrishnan, 4/20/2012) at 77:13-78:19.

Many more examples of different non-infringing behaviors observed in the accused devices are set forth in Dr. Johnson's report. *See, e.g.*, Ex. 1 (Expert Rep. of J. Johnson) at ¶ 74 at 27. Apple's expert recognized the possibility of variations in functionality present in different versions of software and, when asked at his deposition, specifically limited his infringement opinions not only to the specific version of software, but to the specific code running on the device he inspected. *See , e.g.,* Ex. 3 (Depo Tr. of R. Balakrishnan, 7/12/2012 at 24:25-25:8; 26:8-23; 27:15-28:13). Thus, even Apple's own expert is unwilling to make generalizations about the behavior of the accused products and versions of software running on those products.

With respect to the '163 patent, there are material differences in the way that the Web Browser applications of different hardware and software combinations react to a "first gesture" and a "second gesture" at a location on an allegedly infringing web page. An examination of Apple's own infringement charts reveals that some accused devices may center in only one dimension in response to these gestures, while other devices do not center in either dimension. Apple's proposed groupings do not account for these material differences. For example, Apple proposes grouping the Samsung Galaxy S II and the Samsung Vibrant into representative category 4(a). But, the video exhibits offered by Apple's own expert, Dr. Singh reveal that the

behavior of these two products differs greatly in response to the first gesture. See Ex. 4 (Expert Rep. of K. Singh) at Ex. 11 (video exhibit alleging infringement against a Galaxy S II variant) & Ex. 13 (video exhibit alleging infringement against a Vibrant device). Because the ability of these devices to "substantially" center in response to these gestures is at issue, Samsung simply cannot agree to any proposal that removes Apple's burden to satisfy the explicit claim language with respect to each hardware/software combination.[6]

For the '915 patent, Apple proposes that the "Galaxy S II (AT&T) is representative of the Acclaim, Captivate, Continuum, Droid Charge, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy S (i9000), Galaxy S II (i9100), Galaxy S II (T-Mobile), Galaxy S 4G, Gem, Indulge, Infuse 4G, Intercept, Mesmerize, Sidekick, Transform, and Vibrant;" and that the "Nexus S 4G is representative of the Epic 4G, Galaxy Prevail, Nexus S, and Replenish." However, without specifying the version of Android installed on a particular accused device, Samsung cannot stipulate that the devices Apple proposes, the Galaxy S II (AT&T) and the Nexus S 4G, are in fact representative of the other devices listed in Apple's proposal.

While Samsung is in favor of efforts to streamline the trial, Apple cannot attempt to avoid its required burden of proof on infringement by lumping together products that contain different behaviors, including those that admittedly do not infringe. Samsung has already suggested to Apple that an approach that more accurately reflects the actual behavior of devices is to include both the accused device and a description of the software running on the accused device. While Apple may complain this approach requires more effort and does not make the case simple to try, Apple was the party that chose patents that depend on the software as well as the hardware, and

---

[6] One of the named inventors on the '163 Patent specifically testified that with respect to Apple's own implementation of the patented software, the software was "refine[d] . . . over a period of time . . . ." Ex. 5 (Williamson Depo. Trans. at 159:20-25). It is unreasonable for Apple to contend that different versions of Android software practice the '163 patent in the same way when its own inventors admit that its own software has been modified over time.

1  chose to assert its patents on 25-30 devices.  In order to simplify the case, rather than attempting

2  to group together products with admittedly different behaviors, Apple needs to reduce the number

3  of accused products.

4  ***Design Patent and Trade Dress Claims***

1    Similarly, Apple's proposal to try its trade dress and design patent infringement claims
2 using representative products is misguided and would deprive Samsung of its right to defend
3 itself against Apple's claims based on key differences between the accused and purportedly
4 representative products, including differences in materials, finishes, colors, user interface
5 appearance, time periods in which they were sold, price, and the channels of trade in which the
6 products were sold and marketed.  Trade dress is evaluated as a whole and in the context in which
7 it is used, sold and marketed.  Differences among accused products related to color, finishes,
8 material, user interface and the like impact a consumer's perception of the trade dress when
9 viewed in context, and bear directly on the jury's assessment of whether confusion is likely.
10 Moreover, because not all of the accused products are available through the same retail channels,
11 whether this factor in the *Sleekcraft* analysis favors Apple or Samsung may differ among the
12 accused devices in the eyes of the jury.  *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349
13 (9th. Cir. 1979).  In addition, variations in the degree of competition within and between the
14 various carrier channels makes the dilution analysis different for each of the accused products,
15 *see, e.g*., 15 U.S.C. § 1125(c)(B) (naming "the extent to which the owner of the famous mark is
16 engaging in substantially exclusive use of the mark" as a factor in dilution analysis), and
17 differences in the time periods in which the products were sold are relevant to the critical issue of
18 fame, on which Apple bears the burden.  These differences are therefore critical to Apple's trade
19 dress claims because they bear directly on the likelihood of confusion and dilution issues.  Those
20 differences cannot be glossed over with the jury merely because Apple would prefer a process
21 that is easier for Apple and far less fair to Samsung than actually narrowing the number of
22 accused devices and actually carrying its burden of proof at trial.
23    The same is true of Apple's design patent infringement claims.  Apple's position ignores
24 the differences among the graphic user interfaces of the products accused of infringing the D'305
25 patent.  And even with respect to the D'677 and D'087 patents, the Federal Circuit has made clear
26 that "when the claimed design is close to the prior art designs, small differences between the
27 accused design and the claimed design are likely to be important to the eye of the hypothetical
28 ordinary observer."  *Egyptian Goddess, Inc. v. Swisa Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008).

1   That is particularly so in connection with Apple's industrial design patents, which do not claim
2   the entire device, such that differences in the ornamentation visible on the front of the products
3   may well be "important" to the eye of the hypothetical ordinary observer. *See id*. Just as
4   Samsung has the right to argue that the differences between each of its accused products and the
5   asserted design patents – large or small – prevent a finding of infringement, that right may not be
6   abrogated simply because Apple has refused to reduce the number of accused products to a
7   number that may reasonably be tried within the confines of the upcoming trial.

8        Apple argues that it should be permitted to try its design patent and trade dress claims
9   using representative products because Samsung's expert Robert Anders analyzed the Galaxy S4G
10  together with the Vibrant, and the Fascinate together with the Mesmerize and Showcase. That
11  argument is unavailing for several reasons. First, Mr. Anders did not address the D'305 graphic
12  user interface patent at all, so it obviously cannot provide any support for Apple's groundless
13  efforts to lump the interfaces together. Indeed, Apple's submission here fails to provide any basis
14  at all for doing so. Second, Mr. Anders was not advocating grouping products, but rather
15  submitted a report in rebuttal to the opinion by Apple's expert Peter Bressler, who analyzed the
16  Samsung Fascinate together with the Samsung Mesmerize and Showcase phones. Third, Apple is
17  not even using the same products as purported "representatives" that Mr. Anders analyzed.
18  Finally, Mr. Anders explicitly did not offer an opinion with respect to all of the *Sleekcraft* factors
19  relevant to trade dress infringement, and his analysis of products was focused on similarity or
20  dissimilarity of appearance. His analysis therefore provides no support for Apple's demand that
21  products be lumped together for all purposes, despite the differences in sales and marketing
22  channels, price, degree of competition and other relevant factors between devices. As set forth
23  above, those crucial facts and circumstances differ between devices, and Apple cannot be
24  permitted to prevent Samsung from defending itself against Apple's claims based on the full
25  range of factors provided for under governing law.

26
27
28

Dated: July 23, 2012

| MORRISON & FOERSTER LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| By: /s/ Michael A. Jacobs | By: /s/ Victoria Maroulis |
| HAROLD J. MCELHINNY<br>MICHAEL A. JACOBS<br>JENNIFER LEE TAYLOR<br>ALISON M. TUCHER<br>RICHARD S.J. HUNG<br>JASON R. BARTLETT | CHARLES K. VERHOEVEN<br>KEVIN P.B. JOHNSON<br>VICTORIA F. MAROULIS<br>EDWARD DEFRANCO<br>MICHAEL T. ZELLER |
| Attorneys for APPLE INC. | Attorneys for SAMSUNG ELECTRONICS CO. LTD, SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC. |

**ATTESTATION OF E-FILED SIGNATURE**

I, Victoria F. Maroulis, am the EF user whose ID and password are being used to file this Joint Statement. In compliance with General Order 45(X)(B), I hereby attest that Michael A. Jacobs has concurred in this filing.

DATE: July 23, 2012                    /s/  Victoria Maroulis
                                        Victoria Maroulis