# EXHIBIT 11
# FILED UNDER SEAL

Confidential Attorneys' Eyes Only Outside Counsel

Page 1

1            UNITED STATES DISTRICT COURT
2           NORTHERN DISTRICT OF CALIFORNIA
3                 SAN JOSE DIVISION
4
5  APPLE INC., a California corporation,
6
              Plaintiff,
7
   vs.                            CASE NO. 11-CV-01846-LHK
8
   SAMSUNG ELECTRONICS CO., LTD.,
9  A Korean business entity;
   SAMSUNG ELECTRONICS AMERICA,
10 INC., a New York corporation;
   SAMSUNG TELECOMMUNICATIONS
11 AMERICA, LLC, a Delaware
   limited liability company,
12
              Defendants.
13 _____/
14
15           C O N F I D E N T I A L
16       A T T O R N E Y S'   E Y E S   O N L Y
17          O U T S I D E   C O U N S E L
18
19   VIDEOTAPED DEPOSITION OF RAVIN BALAKRISHNAN, Ph.D.
20             SAN FRANCISCO, CALIFORNIA
21              TUESDAY, AUGUST 16, 2011
22
23 BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR
24 CSR LICENSE NO. 9830
25 JOB NO. 41176

Confidential Attorneys' Eyes Only Outside Counsel

Page 5

1       MR. LIEN:  Henry Lien, representing Samsung.
2       MR. BRIGGS:  Todd Briggs, representing
3   Samsung.
4       MR. AHN:  Matthew Ahn, of Morrison &
5   Foerster, on behalf of Apple.
6       THE VIDEOGRAPHER:  Will the court reporter
7   please swear in the witness.
8
9           RAVIN BALAKRISHNAN, Ph.D.,
10         having been sworn as a witness,
11         by the Certified Shorthand Reporter,
12             testified as follows:
13
14
15      THE VIDEOGRAPHER:  You may proceed.
16
17         EXAMINATION BY MR. JOHNSON
18      MR. JOHNSON:  Good morning, Mr. Balakrishnan.
19  Q   Have -- you've been deposed before?
20  A   Yes, I have.
21  Q   Okay.  About how many times?
22  A   About a half a dozen times, roughly.
23  Q   I'll try to ask coherent questions, and if
24  you -- hopefully you'll provide some answers, and
25  if -- to the extent that you don't understand any of

Confidential Attorneys' Eyes Only Outside Counsel

Page 40

1  of the document, and it's showing a third portion of
2  the electronic document, which, you know, ends at the
3  bottom, with Joe -- again, I can't read the last name
4  of that contact because my finger is obscuring it,
5  but, clearly, this third portion is different and
6  smaller than the first portion.  It has less
7  information.  It's smaller than the first portion I
8  showed earlier.
9         And, then, now, the last element of the claim
10 says, "In response to detecting that the object is no
11 longer on or near the touchscreen display, translating
12 the electronic document in a second direction until
13 the area beyond the edge of the electronic document is
14 no longer displayed to display a fourth portion of the
15 electronic document, wherein the fourth portion is
16 different from the first portion."
17        So -- oops, I accidentally just did that, but
18 I'll -- I'll do this again.  So I'm in the third
19 portion here.  I'm gonna release my finger, which
20 means the system detects that my object or the finger
21 is no longer on the touchscreen display, and it has
22 translated the -- the electronic document in a second
23 direction, in a different direction from the direction
24 it was going earlier, so that the area beyond the edge
25 of the electronic document is no longer displayed.

Confidential Attorneys' Eyes Only Outside Counsel

Page 41

1  So if you saw in the third -- in the segment
2  before this, there was a black area or gray area
3  beyond the word -- the header "create document," now
4  that's no longer there.  It's -- it's gone back up.
5  And the fourth portion now that -- what you
6  see here is clearly different from the -- the very
7  first portion that we started with, which had, if I
8  recall correctly, a -- the bottom contact was
9  something N, a name with N, something or the other on
10 it.
11 I think that should cover Claim 1.
12 Q   Okay.  And it's also your opinion that
13 Exhibit 20 in the contacts application infringes
14 Claims 19 and 20, as well?
15 MR. MONACH:  Same -- same objection
16 previously stated about asking him to form opinions on
17 the fly at the deposition, but you can answer.
18 THE WITNESS:  So, again, to the extent that
19 I've only had a very short time to look at this, so
20 this is my, kind of, off-the-cuff answer, is this
21 contacts application clearly is running on a computer
22 in the smartphone, and although I haven't had a chance
23 to look at the instructions of the code, per se, it
24 must be running some set of instructions in order for
25 this application, the contacts application, to perform

Confidential Attorneys' Eyes Only Outside Counsel

Page 42

1  the functions that I just showed, and as such, it
2  would infringe Claim 19.
3           And, similarly, for Claim 20, I, again,
4  haven't opened this up to look at the memory in there,
5  given the short time that I have here.  But, once
6  again, the -- the program that's running for this
7  contacts application has instructions, and like any
8  other computer program, it would have to be stored in
9  some kind of storage medium or memory that can then be
10 executed to perform these actions.  So I would say,
11 yes, it -- it does infringe Claim 20, as well.
12          MR. JOHNSON:  Q.  Based on your review of
13 Exhibit 20, do the contact features -- strike that.
14          Based on your review of Exhibit 20, does the
15 gallery and contact features operate the same way as
16 the Galaxy S 4G that you looked at for purposes of
17 infringement of the '381 patent?
18          MR. MONACH:  Object to the form of the
19 question.
20          THE WITNESS:  So I would have to say that in
21 order to answer that completely accurately, I'd have
22 to put both of the devices side by side and look very
23 carefully at whether they're exactly the same.
24          Just off the cuff here, going by what I've
25 just played with for the last, I don't know, five,

Confidential Attorneys' Eyes Only Outside Counsel

Page 43

1  ten minutes, and my memory of -- of what I looked at a
2  couple of weeks ago on the Galaxy S 4G device that
3  I -- I use, I would say the -- the essence or the --
4  maybe not the word "essence" -- the -- the basics of
5  the operation, with regards to the infringing of the
6  claims, it would be the same.  But whether the
7  specifics of the look and feel is exactly the same,
8  I'd have to spend quite a bit more time making sure
9  that that's true.
10          MR. JOHNSON:  Q.  And all -- what I'm really
11 trying to ask you is just whether the -- for only
12 purposes of alleged infringement of the '381 patent,
13 is whether these features operate basically the same
14 way.  I'm not interested in -- in subtle nuances or
15 specific differences between the contacts and gallery
16 applications between the two.  I'm just trying to
17 understand whether, for purposes of infringement, the
18 features operate the same way between Exhibit 20 and
19 the Galaxy S 4G, and I'm gonna -- I'm gonna hand you
20 what's been previously marked as Exhibit 21, a
21 Galaxy S 4G, and you can -- if you could take a look
22 at that and just tell me -- it was marked at another
23 deposition.
24          Just -- so that -- in your right hand,
25 Exhibit 21 is a Galaxy S 4G, and so if you could just

Confidential Attorneys' Eyes Only Outside Counsel

Page 120

1  specifically to determine if those three limitations
2  in the claims were met?
3          MR. MONACH:  Objection; asked and answered.
4          You can do it again.
5          THE WITNESS:  If you mean the Android
6  publicly available source code, I did not look at it
7  and match up -- I did not do the matching --
8          MR. JOHNSON:  Okay.
9          THE WITNESS:  -- of the -- of the code to the
10 claims.  I did not do that.
11         MR. JOHNSON:  All right.
12    Q    Let -- let's go back to the limitation that
13 says "displaying an area beyond the edge of a
14 document."
15         You obviously didn't look at any code to
16 determine whether or how the displaying of -- of any
17 of the documents occurs; right?
18         MR. MONACH:  Objection; vague.
19         THE WITNESS:  I did not -- I'm sorry.  You're
20 done?
21         MR. MONACH:  Yes.
22         THE WITNESS:  I -- I did not look at code
23 that -- specifically looking for how a particular
24 document or area beyond the document might have been
25 displayed.

Confidential Attorneys' Eyes Only Outside Counsel

Page 121

1    MR. JOHNSON:  Q.  And there -- there --
2  you're not aware of any instructions in any code,
3  whether it's Samsung code or Android code, to draw an
4  area beyond the edge of the document, as required in
5  Claim 1 of the '381 patent; right?
6    MR. MONACH:  Objection; vague.
7    THE WITNESS:  I have not seen the code,
8  per se, but there would have to be that code, because
9  the functionality, as I'm working -- as I've
10 demonstrated on all these devices, clearly displays an
11 area beyond the edge of the document, so that
12 functionality is there.  It's not magic.  There would
13 have to be some code somewhere on the device that's
14 making that happen.
15    MR. JOHNSON:  Q.  Well, actually, do you have
16 any experience with AMO LED displays?  You do; right?
17 AMO LED?
18   A   I'm sorry.  What do you mean by A --
19   Q   AMO LED.
20       Do you have experience with AMO LED displays?
21   A   In terms of using them?
22   Q   Using them, analyzing them, working with
23 them.
24   A   I haven't analyzed the hardware in any
25 fashion at all.

Confidential Attorneys' Eyes Only Outside Counsel

Page 122

1  Q   But I thought you said -- well, strike.
2      Do you know whether any of the Samsung
3  accused devices use AMO LED displays?
4  A   I do not know what particular hardware
5  display they're using.
6  Q   That's not of any importance to your
7  analysis?
8      MR. MONACH:  Object to the form of the
9  question.
10     THE WITNESS:  I don't believe for these
11 particular claims the type of display, or beyond the
12 fact that it's a touchscreen display, the type of
13 whether it's an LCD, LED, whatever underlying
14 technology, the claim simply says a touchscreen
15 display, that is able to detect movement.
16     MR. JOHNSON:  Q.  What is --
17 A   So, for those claims, I did not see the need
18 to consider what particular type of hardware
19 technology, beyond the fact that it's a touchscreen
20 display.
21 Q   What is an AMO LED display?
22     MR. MONACH:  Objection; lack of foundation.
23     THE WITNESS:  I -- I haven't thought about
24 that in conjunction with this case, and I haven't --
25 you know, haven't formed an opinion on that, so I'm