# EXHIBIT 14
# FILED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1           UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3   ─────────────────────────────

4    APPLE INC., a California        )
     corporation,                    )
5                                     )
             Plaintiff,              )
6                                     )
       vs.                           ) Case No.
7                                     ) 11-CV-01846-LHK
     SAMSUNG ELECTRONICS CO.,        )
8    LTD., a Korean business         )
     entity; SAMSUNG ELECTRONICS     )
9    AMERICA, INC., a New York       )
     corporation; SAMSUNG            )
10   TELECOMMUNICATIONS AMERICA,     )
     LLC, a Delaware limited         )
11   liability company,              )
                                      )
12           Defendants.             )
    ─────────────────────────────

13

      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15    VIDEOTAPED DEPOSITION OF KARAN SINGH, PH.D.

16           Redwood Shores, California

17            Thursday, April 26, 2012

18                  Volume I

19

20

21   Reported by:
     Danielle de Gracia
22   CSR No. 13650
23   Job No. 143641

24

25   PAGES 1 - 285

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 8

1    1  Foerster, also for Apple.

2    2         THE VIDEOGRAPHER:  The court reporter today

3    3  is Danielle de Gracia of Veritext.  Would the

4    4  reporter please swear in the witness?

5    5                                            11:04:52

6    6              KARAN SINGH PH.D.,

7       having been administered an oath, was examined and

8    8  testified as follows:

9    9

10   10        THE VIDEOGRAPHER:  Please begin.        11:05:02

11   11

12   12                EXAMINATION

13   13  BY MR. BRIGGS:

14   14     Q   Good morning.

15   15     A   Good morning.                           11:05:04

16   16     Q   Please state your name for the record.

17   17     A   Karan Singh.  My passport has my first name

18   18  as Karansher.

19   19     Q   What is your business address?

20   20     A   My university address?                  11:05:16

21   21     Q   Yes.

22   22     A   40 St. George Street, Toronto, Ontario,

23   23  University of Toronto.

24   24     Q   Do you live in Toronto?

25   25     A   Yes.                                    11:05:29

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 161

1    Double-Tap as a supplementary zooming method,'" you

2    know, as part of some -- you know, as part of the

3    larger context of that document, to me, you know, is

4    an indication of -- of attempting to emulate specific

5    features that -- that appear in the claims of the        04:17:52

6    '163 patent.

7        Q   Okay.  Does the '163 patent -- do the clai-

8    -- strike that.  Do the claims in the '163 patent

9    cover just a double tap to zoom?

10           MR. MONACH:  Objection.  Asked and answered.   04:18:08

11           THE WITNESS:  Maybe not.

12   BY MR. BRIGGS:

13       Q   And why not?  You need the second tap,

14   right?

15       A   Uh-huh.                                          04:18:20

16       Q   Okay.  So which one of these documents

17   describe --

18       A   I believe -- sorry.  Please finish your

19   question.

20       Q   Which one of these documents describe a          04:18:30

21   double tap to zoom and then a subsequent tap?

22           MR. MONACH:  Objection.  Under the best

23   evidence rule, the documents themselves are the best

24   evidence of what they say.  But you can give your

25   recollection, if you have one.                           04:18:44

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 162

1          THE WITNESS:  I believe it was the document

2     that gave me reason to believe that this was the

3     case.

4     BY MR. BRIGGS:

5          Q   Okay.  But as you sit here today, you can't   04:18:52

6     remember a specific document that showed a double tap

7     to zoom followed by -- or described that followed by

8     another tap?

9          A   No.  As I sit here today, I believe there

10    was a design document that indicated that --           04:19:07

11    indicated that the -- that two taps, you know,

12    that -- that multiple gestures, a first gesture and

13    then a second gesture was desirable and perhaps

14    should be emulated.

15         Q   Are you aware of any design-arounds to the    04:19:32

16    '163 patent?

17         MR. MONACH:  Objection.  Vague.

18         THE WITNESS:  I mean, I don't know

19    conclusively but I believe there may have been

20    some -- some suggestions proffered in -- in the -- in  04:19:55

21    one of the reports of Mr. Gray.

22    BY MR. BRIGGS:

23         Q   Could you implement a design-around to the

24    '163 patent?

25         MR. MONACH:  Objection.  Vague.                    04:20:10

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 163

1          THE WITNESS:  I think the '163 is a

2     wonderful design.  I would have to question the

3     motivation to even -- even want to design around it.

4     BY MR. BRIGGS:

5          Q   What about the second gesture, could --          04:20:18

6     could you instead of performing the second tap, make

7     that second tap do something different like, for

8     example, zoom -- zoom the device out after you zoom

9     in?

10         A   Well, that's sort of a hypothetical          04:20:41

11    scenario.  But I would -- I would question, firstly,

12    as I said, I would question the motivation -- the

13    desire to do it.  I mean, the design of having a

14    second gesture, I think shows wonderful insight in

15    the -- in the browsing experience that the likelihood  04:21:14

16    that when you are in a zoomed in view to read a

17    particular portion of a document, that you are likely

18    to want to continue to perhaps read other neighboring

19    or -- or other content rather than wanting to go back

20    out of context, and then potentially come back.          04:21:42

21         So to me, that's -- that's -- that's

22    quite poor -- quite a poor alternative.  Plus I would

23    have to look at that alternative precisely and

24    analyze it to -- to -- to make sure that it didn't

25    actually -- that it in fact was a design-around.          04:22:04

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 164

```
 1   Because the '163, you know, has a fairly large number
 2   of claims.  So when, you know, for it to be a
 3   design-around, I believe it needs to -- it needs to
 4   not infringe any of those claims.
 5       Q   Well, let's just focus on Claim 2 because      04:22:23
 6   that has the two gestures we were talking about.
 7       A   Okay.
 8       Q   I think we have established that to infringe
 9   Claim 2, when you tap on the second box, that second
10   box then has to be substantially centered; is that     04:22:43
11   right?
12       A   Yes.
13       Q   Okay.  So if you had a design-around where
14   you tapped on the second box and the device did
15   something other than substantially centering what was  04:22:57
16   in the second box --
17       A   Sorry --
18       Q   -- that wouldn't infringe the claims,
19   correct?
20       A   I just wanted to -- I'm sorry I -- I cut you   04:23:04
21   short firstly, but I just wanted to qualify you --
22   you sort of talked about the second box and tapping
23   on the second box, and I just wanted to make sure or
24   add that, you know, that sort of -- there is an
25   assumption that -- that a first box has been tapped     04:23:24
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 165

1    on and so on prior to -- prior to this step.

2        Q    That's what I meant.

3        A    Yeah.  I just wanted to clarify that.  So I

4    apologize.  I cut you off.  Maybe you can just repeat

5    the question.                                        04:23:42

6        Q    So my question is, is if you tap on a first

7    box and zoom in on it and substantially center it and

8    you see a second box on the screen and then you were

9    to tap on it and it did something other than

10   substantially centering that second box, would that   04:24:00

11   infringe Claim 2 of the '163 patent?

12           MR. MONACH:  Objection.  Incomplete

13   hypothetical.

14           THE WITNESS:  You'd probably need to tell me

15   what it would do instead.                             04:24:17

16   BY MR. BRIGGS:

17       Q    What if I tapped on the second box and the

18   entire image on the screen went back to the state it

19   was in before the first tap, would that infringe?

20       A    It probably would not infringe Claim 2, but   04:24:29

21   it may infringe other claims of -- of the '163.

22       Q    Are you sure about that?

23       A    Sure that it would -- that it might --

24       Q    Don't all the independent claims require the

25   same procedure of a first tap and a second tap?       04:24:51

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 166

1      A   I'd have to check -- check that for sure.

2      Q   Okay.  But you are not for sure?

3      A   Well, I mean, there are a large number of

4   claims.  I need to -- I need to really look at them,

5   yeah, to be conclusive.                          04:25:05

6      Q   Okay.  Let's just assume for the sake of

7   moving things along --

8      A   Okay.

9      Q   -- that we are talking about Claim 2.

10     A   Fine.                                       04:25:13

11     Q   So in that case, the scenario that I just

12   gave you, if the second gesture made the screen go

13   back to the state it was in before you had the first

14   tap, would that infringe the claims?

15         MR. MONACH:  Objection.  Incomplete         04:25:34

16   hypothetical.

17         THE WITNESS:  Let me just take a look at

18   Claim 2 again.

19   BY MR. BRIGGS:

20     Q   Well, the last limitation in Claim 2 states,  04:25:52

21   "In response to detecting the second gesture, the

22   structured electronic document is translated so that

23   the second box is substantially centered on the touch

24   screen display."

25         So in my hypothetical, when you tapped on it  04:26:04

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 167

1    the second time, you went back to the original state.

2    Would that be non-infringing?

3           MR. MONACH:  Objection.  Incomplete

4    hypothetical.

5           THE WITNESS:  In that hypothetical scenario,  04:26:19

6    if the second box happened to have been substantially

7    centered in the first -- in the -- in the zoomed out

8    state, then it would still be infringing.  Were that

9    --

10   BY MR. BRIGGS:                                    04:26:36

11      Q   By coincidence.

12      A   Right.  Were that not the case, then yes, it

13   would not be infringing.

14      Q   What if I tapped on the second box and

15   nothing happened.  Would that be non-infringing?   04:26:46

16      A   If you tapped on the second -- you know, I'm

17   just having a problem finding the claim.  I would

18   really like to have the claims under -- the claim

19   language under my eyes.

20      Q   Call them 25 and 26.                       04:27:05

21      A   Yeah, no, no.  I was just fumbling with the

22   pages.  Yes.  So to answer that question, again,

23   assuming that you have done all, you know, you

24   practiced the claims up until the element that --

25   where -- where the second box is -- is gestured on,  04:27:44

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 168

```
 1    if that second -- yeah.
 2            And it did not substantially translate -- it
 3    did not translate to substantially re- -- to center
 4    the second box, then that would be non-infringing on
 5    Claim 2.  Not necessarily all the claims.          04:28:09
 6        Q   I think if you go back and look at the
 7    claims, you'll see that that's in all of them, but I
 8    understand your position.
 9        A   Okay.  Fine.
10        Q   This last limitation of Claim 2 which       04:28:22
11    involves the second tap, do you know how that claim
12    limitation came into existence?
13        A   I'm not sure I understand your question.
14        Q   Okay.  I think you testified earlier that
15    that step was intuitive or wonderfully intuitive, the 04:28:47
16    second tap.  And my question is, is do you know -- do
17    you know how that limitation in the claims actually
18    found its way into the claims?
19        A   Well, I do recall maybe some inventor
20    testimony talking about perhaps the -- the conception 04:29:18
21    of this -- that described it.
22        Q   Do you understand that that limitation was
23    added during prosecution of the patent?
24        A   Perhaps I need to double -- crosscheck that
25    with this prosecution history.                     04:29:36
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 169

1      Q    Okay.  Do you know if the examiner added

2   that limitation to the claims?

3      A    I need to double check that.

4      Q    And do you know if the examiner added that

5   limitation to get arou- -- to make the claim        04:29:50

6   allowable over prior art?

7      A    I again need to double check with the

8   prosecution history.

9           MR. MONACH:  Are we at convenient short

10   stopping point?                                      04:30:04

11           MR. BRIGGS:  Yes.

12           MR. MONACH:  Because we have been going for

13   a while.

14           THE VIDEOGRAPHER:  Going off the record.

15   The time is 4:30.                                    04:30:08

16           (Recess.)

17           THE VIDEOGRAPHER:  We are back on the

18   record.  The time the 4:39.

19   BY MR. BRIGGS:

20      Q    Dr. Singh, let's turn to your invalidity in   04:39:40

21   the section on the '163 patent.

22      A    Yes.

23      Q    Which starts at page 7.

24      A    Yes.

25      Q    And the first piece of prior art I wanted to   04:39:57