HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S RENEWED MOTION TO SEAL** |

1    Pursuant to the Court's July 17, 2012 Order (Dkt. No. 1256), Apple submits this renewed

2    motion for an order to seal portions of particular documents.

3    Mindful of the Court's direction to carefully scrutinize any documents it seeks to seal,

4    Apple is withdrawing all claims of confidentiality on approximately 200 exhibits and thirty briefs

5    and declarations, including nearly all full expert reports implicated by the July 17 Order.  Apple is

6    only seeking to keep sealed thirty documents (two of which have been filed several times in

7    whole or in part, as detailed below) containing the following critically sensitive categories of

8    information:

9    • highly sensitive and non-public financial and manufacturing information (cost data,

10    product line details, profit margins, and capacity data)

11    • third-party confidential research from Apple's business partners that would

12    severely impact the market for the third-party's research reports

13    • specific licenses, past settlements, and acquisitions, and terms thereof

14    • a detailed, 200-page electrical schematic with extensive details on touchscreen

15    modules and other components of Apple's products

16    • certain documents produced by third parties and designated by them as

17    confidential, or information derived from those documents, in Apple's submissions.

18    Each of these categories is precisely the type of information that courts find can meet the Ninth

19    Circuit's "compelling" reasons standard.  *See, e.g.*, *TriQuint Semiconductor v. Avago Techs., Ltd.*,

20    Case No. CV 09-1531-PHX-JAT, 2011 U.S. Dist. LEXIS 143942, at *10-12 (D. Az. Dec. 13,

21    2011) (sensitive financial information sealable); *Network Appliance, Inc. v. Sun Microsystems*

22    *Inc.,* No. C-07-06053 EDL, 2010 U.S. Dist. LEXIS 21721, at *7 (N.D. Cal. Mar. 10, 2010)

23    (material that would subject third parties to competitive harm sealable); *Powertech Tec., Inc., v.*

24    *Tessera, Inc.*, No. C 11-6121 CW, 2012 U.S. Dist. LEXIS 75831, at *5 (N.D. Cal. May 31, 2012)

25    (details of license agreement sealable); *AMC Tech., L.L.C. v. Cisco Sys.*, Case No. 5:11-cv-

26    03403-PSG, 2012 U.S. Dist. LEXIS 9934, at *4-6 (N.D. Cal. Jan. 27, 2012) (detailed product

27    specification sealable); *In re Adobe Systems, Inc. Sec. Litigation*, 141 F.R.D. 155, 161-62 (N.D.

28    Cal. 1992) (under-seal filings preserve third parties' "legitimate expectation that confidential

1  business information, proprietary technology and trade secrets will not be publicly disseminated")

2  (citing *Johnson Controls, Inc. v. Phoenix Control Systems*, 886 F.2d 1173, 1176 (9th Cir. 1989)

3  and *Henry Hope X-Ray Products Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1343 (9th Cir.

4  1982)).

5          Moreover, Apple proposes to leave unsealed the material that the public has the greatest

6  interest in seeing—namely, proposing that most briefs, expert reports, and declarations enter the

7  public record fully or largely unredacted.  Apple does not seek to conceal the parties' arguments,

8  which will aid the public in understanding the judicial process.  Rather, Apple seeks to seal

9  material that is highly specific, going well beyond what would aid the public in understanding the

10 parties' positions and the judicial process.  This ensures the public has access to the material it

11 has the greatest interest in viewing.  *See, e.g. Richardson v. Mylan Inc.*, Case No. 09-CV-1041-

12 JM (WVG), 2011 U.S. Dist. LEXIS 23969, at *7-8 (S.D. Cal. Mar. 9, 2011) (information "of

13 comparatively little value to the general public in terms of enhancing its understanding of the

14 judicial process" sealable) (internal quotation omitted); *Network Appliance,* 2010 U.S. Dist.

15 LEXIS 21721, at *13-14 (material that would "do little to aid the public's understanding of the

16 judicial process, but have the potential to cause significant harm" to one of the parties sealable).

17 The public will be able adequately to understand the rulings of the Court and the positions of the

18 parties from the material available publicly under Apple's proposal.  The additional highly

19 sensitive details discussed in more detail below do not further that interest, but on the contrary

20 have the potential to cause significant harm to Apple, and in some cases third parties.

21         **A.      Financial and Manufacturing Information**

22         Apple seeks to seal only its most highly sensitive and non-public financial and

23 manufacturing information—cost data, product line details, profit margins, and capacity data.

24 Apple does *not* seek to seal overall product revenue, total products sold, price information,

25 sources of revenue, or revenue deferral information.  This type of information—and even more

26 financial information than Apple seeks to seal—is recognized by courts as highly sensitive.  For

27 example, the court in *TriQuint Semiconductor*, 2011 U.S. Dist. LEXIS 143942, at *10-12, found

28

1    that documents showing the volume of the party's sales, market analysis, capital expenditures,

2    cost, and manufacturing capacity met the "compelling reasons" standard for sealing.

3         Public disclosure of Apple's cost, product line-specific financial information, profit

4    margins, and capacity data would severely harm Apple competitively.  (*See* Declaration of Erica

5    Tierney in Support of Renewed Motion to Seal ¶ 3) ("Tierney Declaration").  This information

6    provides significantly more detail than companies in this industry disclose in practice.  (*Id.*)

7    Disclosure would allow competitors to tailor their expenditures, budgets, and production

8    strategies specifically to counter Apple.  (*Id.*)  With respect to capacity information, competitors

9    would learn when Apple is typically stretched thinly and when Apple typically has excess

10   capacity, and could alter their production timing accordingly.  (*Id.*)  The capacity information at

11   issue is extensive and comprehensive, covering periods as recent as the first quarter of 2012.  (*Id.*)

12   With respect to cost information, Apple's competitors and suppliers could use this information to

13   alter their pricing on products competitive to Apple or components Apple uses in its products.

14   (*Id.*)  Disclosure of product line-specific information would inform Apple's competitors precisely

15   as to which of Apple's products are selling the most strongly and they could alter their

16   development priorities, product offerings, and marketing strategies to counter Apple.  (*Id.*)  None

17   of this information is publicly disclosed by Apple or its competitors in the industry, for the above

18   reasons.  (*Id.*)  Third party suppliers may also consider information relating to the price Apple

19   pays for its components to be confidential trade secret information that would cause them harm if

20   released to the public.  (*Id.*)

21        As in *Network Appliance*, the extensive financial data that Apple seeks to seal would "do

22   little to aid the public's understanding of the judicial process, but have the potential to cause

23   significant harm to [Apple's] competitive and financial position within its industry."  *Network*

24   *Appliance*, 2010 U.S. Dist. LEXIS 21721, at \*13-14.  Apple's detailed cost, product line

25   information, profit margins, and capacity data is not germane to the issues in litigation, and they

26   provide a level of detail far beyond what is necessary to understand Apple's position and the

27   damages and other remedies Apple seeks.  The arguments and conclusions expressed in the

28   motions do not turn on the detailed cost, profit, capacity and product line information contained in

APPLE'S RENEWED MOTION TO SEAL
CASE NO. 11-cv-01846-LHK
sf-3174176

3

1   the supporting exhibits.  The detail is therefore superfluous to the public's understanding of the

2   motions.  The information that is confidential trade secrets of third parties is highly sensitive and

3   there are compelling reasons to seal it as well.  *See G&C Auto Body, Inc. v. Geico General Ins.*

4   *Co.*, 552 F. Supp. 2d 1015, 2008 WL 687372, at *2 (N.D. Cal., 2008) (finding compelling reasons

5   for sealing small amount of confidential third party information attached as exhibit to summary

6   judgment motion).  Accordingly, Apple's need to seal this information outweighs any public

7   interest in full disclosure.

8               **B.      Third-Party Confidential Research**

9          Apple seeks to seal only recent, extensive data from reports Apple has purchased from

10  third-party market research companies under contractual terms that restrict disclosure.  Apple has

11  sought and received permission to allow public disclosure of passing references to data from such

12  reports, and has even acquired permission from one company whose reports figure heavily into

13  the party's filings and expert reports to unseal material that focuses on Apple and Samsung

14  market share.  (Declaration of Nathan B. Sabri in Support of Renewed Motion to Seal ¶ 2) ("Sabri

15  Declaration").  Apple is contractually obligated, however, to defend the interests of third parties

16  who sell Apple their proprietary consumer and market studies.  (*Id.* ¶ 3.)  Disclosure of the

17  entirety of recent market research reports would severely harm such third parties competitively

18  and damage Apple's relationship with them.  *See Network Appliance*, 2010 U.S. Dist. LEXIS

19  21721, at *7 (finding "compelling reasons" for sealing material in light of "competitive harm to

20  third parties if the confidential information were disclosed.")  The market research companies

21  with which Apple does business operate by selling their reports, which typically cost thousands of

22  dollars each. (Sabri Decl. ¶ 3.)  Such companies cannot sell research that is made available for

23  free on the Court's website in connection with this litigation.

24         Public disclosure of a substantial portion or the entirety one of these reports would

25  completely supplant the market for that report.  If Apple is forced to disclose this information,

26  which Apple acquired under an agreement to keep the information private and confidential, the

27  affected third party companies could be reluctant to do business with Apple again in the future,

28

1   potentially permanently harming Apple's relationships and preventing Apple from obtaining this

2   critical market research data.  (*Id.* ¶ 4.)

3       Because Apple is not seeking blanket protection for all third-party data, the confidentiality

4   interests in the material it *does* seek to seal outweigh any public interest in full disclosure.

5   Citations and references to data in briefs and reports and sets of data focusing on Apple and

6   Samsung *will* be available to the public.  That is the material that will most aid the public in its

7   understanding of the judicial process and the parties' positions, as it is the most germane to the

8   parties' arguments.  The reports that Apple seeks to seal provide significantly more detailed

9   information than is necessary to understand the parties' respective positions of the motions at

10  issue.  The public interest in full disclosure of this material is therefore low, while the interests of

11  third parties in protecting the market for their proprietary reports and Apple in preserving its

12  relationships with third parties who produced data in reliance on the Protective Order are high.

13          **C.     Specific Terms of Licenses, Settlements, and Acquisitions**

14      Apple does not seek to seal all discussions pertaining to the patents-in-suit, the existence

15  of licenses relating to the products at issue, or even discussions between Apple and Samsung.  It

16  seeks to seal only specific licenses, settlements, and acquisitions involving third parties.  Such

17  material is consistently held by courts to meet the "compelling reasons" standard of the Ninth

18  Circuit.  *See, e.g.*, *Electronic Arts, Inc. v. United States District Court for the Northern District of*

19  *California*, 298 Fed. Appx. 568, 569 (9th Cir. 2008) (pricing terms, royalty rates, guaranteed

20  minimum payment terms of licensing agreement constituted trade secret); *Powertech Tec., Inc., v.*

21  *Tessera, Inc.*, No. C 11-6121 CW, 2012 U.S. Dist. LEXIS 75831, at *5 (N.D. Cal. May 31, 2012)

22  (compelling reasons to seal license agreement).

23      Public disclosure of licenses, settlements, and acquisitions would negatively affect

24  Apple's position in future licenses, settlements, and acquisitions.  (Tierney Decl. ¶ 4.)

25  Competitors and potential counterparties to licensing, settlement, and acquisition agreements

26  would gain an unfair insight into Apple's and third parties' business strategies and cost/benefit

27  analyses.  (*Id.*)  Using their knowledge of the precise substantive and financial terms of

28

1  previously nonpublic agreements, they would be able to calibrate their negotiation strategies with

2  Apple (or the other parties to those agreements) using that unfair advantage.  (*Id.*)

3        There is very little public interest in knowing the specific licenses and agreements that

4  Apple has entered into, the existence of which is proprietary not only to Apple but to the

5  counterparties as well.  There is even less public interest in the financial details of the

6  FingerWorks acquisition, which this Court has held is irrelevant.  (Dkt. No. 1267 at 3.)

7        **D.**    **Detailed Schematics**

8        The detailed schematic at issue is trade secret information.  Where a product specification

9  provides comprehensive detail beyond what is publicly available, a Court may seal it.  *See AMC*

10  *Tech., L.L.C. v. Cisco Sys.*, Case No. 5:11-cv-03403-PSG, 2012 U.S. Dist. LEXIS 9934, at *4-6

11  (N.D. Cal. Jan. 27, 2012) (finding sealing of product specification met "compelling reasons"

12  standard and that "the comprehensiveness and level of detail provided in [document showing

13  product specifications] are not [publicly available] and constitute trade secrets of the company.")

14        Here, the schematic at issue is a more than 200 page detailed sheet that shows the

15  electrical configuration of Apple's proprietary touchscreen modules and other components of

16  Apple's products.  (Tierney Decl. ¶ 5.)  Disclosure of the structure and function of Apple's

17  products to such a level of specificity would give competitors highly sensitive information that

18  would enable them to copy numerous aspects of Apple's products.  (*Id.*)

19        Moreover, following Apple's dismissal without prejudice of the '607 patent, no hardware

20  patents remain at issue in the case.  The schematic therefore has no relevance to the claims

21  remaining in the case, as it does not bear on industrial design, Graphical User Interfaces, or

22  software.  There is therefore no countervailing need for the public to see this document in its

23  unredacted form, and it will not benefit the public's understanding of this case.

24        **E.**    **Additional Confidential Third Party Documents**

25        In the course of discovery, various third parties have produced documents, including

26  source code and non-public product information, designated as confidential.  (Declaration of

27  Mark D. Selwyn in Support of Renewed Motion to Seal ¶ 2) ("Selwyn Declaration").  At various

28  times, the parties have filed motions containing or referencing, either in the body of the motion or

as exhibits, certain of these documents.  (*Id.*)  Apple seeks to seal these documents and discussions of these documents, including source code and non-public product information, that have been included as part of Apple's submissions, at least for sufficient time to allow these third parties to file a motion to seal if they desire to do so.  (*Id.* ¶¶ 2-3.)  Specifically, Apple is seeking to seal one document that was produced non-publicly in Korea and was marked "Intel Confidential" by Intel.  (*Id.* ¶5.)  Apple is also seeking to seal discussions of Intel's products and source code that Intel has designated confidential and discussions of Qualcomm's products that Qualcomm has designated as confidential in two of Apple's motions and three exhibits to one of those motions.  (*Id.* ¶¶ 5-9.)

The information Apple seeks to seal is confidential information that third parties marked confidential with the "legitimate expectation that confidential business information, proprietary technology and trade secrets will not be publicly disseminated."  *See In re Adobe Systems, Inc.*, 141 F.R.D. at 161-62 (citing *Johnson Controls, Inc. v. Phoenix Control Systems*, 886 F.2d 1173, 1176 (9th Cir. 1989) and *Henry Hope X-Ray Products Inc. v. Marron Carrel*, Inc. 674 F.2d 1336, 1343 (9th Cir. 1982)); *see also Guitron v. Wells Fargo Bank, N.A.*, No. C 10-3461 CW, 2012 U.S. Dist. LEXIS 5791 (N.D. Cal. Jan. 18, 2012) (finding compelling reasons to seal "sensitive and private information of third parties").  Because disclosure of "confidential and proprietary technical information that was obtained from third-parties and which was designated by the third parties as 'Attorneys Eyes Only,' . . . could cause harm to the third parties," there are compelling reasons to seal this confidential information.  *Network Appliance*, 2010 U.S. Dist. LEXIS 21721, at *7.

Moreover, there is no need for the public to see this level of detail to understand any aspect of the case, the parties' respective positions, or the Court's orders.

Consistent with the above, Apple moves to seal only the following documents:

1.     **Portions of Expert Report of Terry L. Musika and exhibits thereto.**  The report with exhibits was filed as Exhibit A to the Declaration of Terry Musika in Support of Apple's Opposition to Samsung's Daubert Motion.  The report without exhibits was filed as Exhibit 3 to the Declaration of Joby Martin in Support of Samsung's Daubert Motion.  Excerpts

1    of the report were filed as Exhibit Q to the Declaration of Mia Mazza in Support of Apple's

2    Opposition to Samsung's Daubert Motion.  (*Id.* ¶ 7.)

3              2.      **Portions of Supplemental Expert Report of Terry L. Musika and exhibits**

4    **thereto.**  The report with exhibits was filed as Exhibit B to the Declaration of Terry Musika in

5    Support of Apple's Opposition to Samsung's Daubert Motion.  Certain exhibits were also filed as

6    Exhibits 1 and 10 to the Declaration of Joby Martin in Support of Samsung's Daubert Motion;

7    Exhibits C and E to the Declaration of Terry Musika in Support of Apple's Opposition to

8    Samsung's Motion for Summary Judgment; and Exhibits K, Y, and Z to the Declaration of Terry

9    Musika in Support of Apple's Opposition to Samsung's Daubert Motion.  (*Id.* ¶ 8.)

10            3.      **Portions of Samsung's Reply in Support of Motion to Strike** (Dkt. No. 1060)

11   and the Declaration of Michael Wagner in Support thereof.  (*Id.* ¶ 9.)

12            4.      **Portions of Corrected Expert Report of Michael J. Wagner (Vol. 1)**.  The

13   report was filed as Exhibit B to the Declaration of Michael Wagner in Support of Samsung's

14   Reply in Support of Motion to Strike.  (*Id.* ¶ 10.)

15            5.      **Portions of Apple's Opposition to Samsung's Daubert Motion** and the

16   Declaration of Terry Musika in Support thereof.  (*Id.* ¶ 11.)

17            6.      **Portions of Exhibit AA to the Declaration of Terry Musika in Support of**

18   **Apple's Opposition to Samsung's Daubert Motion**.  (*Id.* ¶ 12.)

19            7.      **Exhibits 20 and 21 to the Declaration of Christopher Price in Support of**

20   **Samsung's Reply in Support of Samsung's Motion to Strike.**  (*Id.* ¶ 13.)

21            8.      **Exhibit G to the Declaration of Michael Maharbiz in Support of Apple's**

22   **Opposition to Samsung's Motion for Summary Judgment**.  (*Id.* ¶ 14.)

23            9.      **Portions of Exhibit P1 to the Declaration of David Hecht in Support of**

24   **Samsung's Opposition to Apple's Motion for Partial Summary Judgment**.  (*Id.* ¶ 15.)

25            10.     **Portions of Exhibit 32 to the Martin Declaration in Support of Samsung's**

26   **Daubert Motion**.  (*Id.* ¶ 16.)

27            11.     **Portions of Exhibit 67 to the Declaration of Brett Arnold in Support of**

28   **Samsung's Motion for Summary Judgment**.  (*Id.* ¶ 17.)

1    12.    **Portions of Exhibit A to the Declaration of Janusz A. Ordover in Support of**

2  **Apple's Opposition to Samsung's Motion for Summary Judgment**.  (*Id.* ¶ 18.)

3    13.    **Portions of Exhibit C to the Declaration of Michael Wagner in Support of**

4  **Samsung's Reply in Support of Motion to Strike**.  (*Id.* ¶ 19.)

5    14.    **Exhibits 1-6 and 13 to the Declaration of Christopher Price in Support of**

6  **Samsung's Reply in Support of Samsung's Motion to Strike**.  (*Id.* ¶ 20.)

7    15.    **Exhibit M to the Declaration of David Hecht in Support of Samsung's**

8  **Opposition to Apple's Motion for Partial Summary Judgment**.  (Selwyn Declaration  ¶ 4.)

9    16.    **Portions of Apple's Motion for Summary Judgment.**  (*Id.* ¶ 5.)

10    17.    **Portions of Exhibit 4, 5, and 7 to the Selwyn Declaration in Support of**

11  **Apple's Motion for Summary Judgment**.  (*Id.* ¶¶ 6-8.)

12    18.    **Portions of Apple's Reply in Support of its Motion for Summary Judgment**.

13  (*Id.* ¶ 9.)

14    The relief requested in this renewed motion is narrowly tailored to protect only

15  information that is exceptionally sensitive and meets the "compelling reasons" standard.  As

16  public redacted versions were previously filed, Apple is filing new proposed redacted versions in

17  highlighted form.  Apple understands that Samsung will also file its proposed redacted versions in

18  highlighted form.  Once the Court rules on the parties' respective renewed motions to seal, the

19  parties will meet and confer to file versions redacted of both parties' requested information to the

20  extent granted by the Court.

21

22  Dated: July 24, 2012                    MORRISON & FOERSTER LLP

23

24                                          By:    */s/ Michael A. Jacobs*

25                                                 MICHAEL A. JACOBS

26                                          Attorneys for Plaintiff
                                            APPLE INC.

27

28