**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No.: C 11-1846 LHK (PSG) |
| Plaintiff, | **ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD, a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **(Re: Docket No. 895)** |
| Defendants. | |

In this patent infringement suit, Plaintiff Apple Inc. ("Apple") seeks an adverse inference jury instruction against Defendants Samsung Electronics Co., LTD. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Telecommunications America, LLC ("STA") (collectively "Samsung").[1] Samsung opposes.[2] At issue is whether Samsung took adequate steps to avoid spoliation after it should have reasonably anticipated this lawsuit and elected not to disable the "auto-delete" function of its homegrown "mySingle" email system.[3]

---

[1] *See generally* Docket No. 895 (Apple's Mot. for Adverse Inference Jury Instruction).

[2] *See generally* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction).

[3] Only SEC's document preservation policies are at issue here because Samsung affiliates SEA and STA use Microsoft Outlook. *See* Docket No. 895 (Apple's Mot. for Adverse Inference Jury Instruction) at 2 (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction, Ex. 10).

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

Because the answer to this question is no, the court GRANTS-IN-PART Apple's motion for an adverse inference jury instruction.[4]

# I.    INTRODUCTION

Samsung's auto-delete email function is no stranger to the federal courts. Over seven years ago, in *Mosaid v. Samsung*, the District of New Jersey addressed the "rolling basis" by which Samsung email was deleted or otherwise rendered inaccessible.[5] *Mosaid* also addressed Samsung's decision not to flip an "off-switch" even after litigation began.[6] After concluding that Samsung's practices resulted in the destruction of relevant emails, and that "common sense dictates that [Samsung] was more likely to have been threatened by that evidence,"[7] *Mosaid* affirmed the imposition of both an adverse inference and monetary sanctions.[8]

Rather than building itself an off-switch—and using it—in future litigation such as this one, Samsung appears to have adopted the alternative approach of "mend it don't end it." As explained below, however, Samsung's mend, especially during the critical seven months after a reasonable party in the same circumstances would have reasonably foreseen this suit, fell short of what it needed to do.

# II.    LEGAL STANDARDS

### A.    *The Court's Inherent Authority to Impose Spoliation Sanctions*

Courts are vested with inherent powers arising out of "'the control necessar[y] . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"[9] This

---

[4] In light of the compelling public interest in these issues, the court finds insufficient cause to seal any portions of this opinion or the documents it addresses.

[5] 348 F. Supp. 2d 332, 333, 339 (D.N.J. 2004) (sanctioning Samsung with an adverse inference jury instruction for spoliation and finding that "[p]arties who fail to comply with that obligation [to preserve potentially relevant digital information] do so at the risk of spoliation sanctions").

[6] *See id.* at 333.

[7] *Id.* at 338.

[8] *Id.* at 340.

[9] *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). *Accord Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1326 (Fed. Cir. 2011) (applying Third Circuit law); *Leon v. IDX Sys. Corp.*,

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

United States District Court
For the Northern District of California

1    inherent power has been recognized in American jurisprudence for almost two centuries as

2    essential to the orderly administration of the judicial process.[10] More recently, the Ninth Circuit has

3    explicitly recognized trial courts' "inherent discretionary power to make appropriate evidentiary

4    rulings in response to the destruction or spoliation of relevant evidence,"[11] and that sanctions for

5    spoliation of evidence may be imposed under the court's inherent powers to manage its own

6    affairs.[12] The court's inherent powers includes the ability to levy appropriate sanctions against a

7    party who prejudices its opponent through the spoliation of evidence that the spoliating party had

8    reason to know was relevant to litigation.[13]

9    ### B. The Various Forms Spoliation Sanctions May Take

10          A trial court's discretion regarding the form of a spoliation sanction is broad, and can range

11   from minor sanctions, such as the awarding of attorneys' fees,[14] to more serious sanctions, such as

12   dismissal of claims[15]or instructing the jury that it may draw an adverse inference.[16] The court's

---

464 F.3d 951, 958 (9th Cir. 2006) (citing *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337-38 (9th Cir. 1985)); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)); *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005); *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 191 (S.D.N.Y. 2007).

[10] *See United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33-34, 3 L. Ed. 259 (1812) (finding that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution . . . because they are necessary to the exercise of all others" and they enable courts to "preserve [their] own existence and promote the end and object of [their] creation").

[11] *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

[12] *See Leon*, 464 F.3d at 958 (9th Cir. 2006). Courts also have authority to sanction a party "who fails to obey an order to provide or permit discovery" pursuant to Federal Rule of Civil Procedure 37(b)(2)(A). *Id.* (internal quotation marks omitted). Here, Fed. R. Civ. P. 37(b)(2) is inapplicable because Samsung has not violated a court order. *Accord Shepherd v. Am. Broad. Co., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995) ("When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap.").

[13] *See Glover*, 6 F.3d at 1329.

[14] *See Leon*, 464 F.3d at 961.

[15] *See id.* at 958.

[16] *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386-87 (9th Cir. 2010); *see also Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 284 (E.D. Va. 2001) (noting that the spirit of the spoliation inference is captured in "the maxim *omnia presumunter contra spoliatorem*, which means, 'all things are presumed against a despoiler or wrongdoer.'") (quoting Black's Law Dictionary 1086

3

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   discretion is not, however, without its limits. Courts must weigh several factors when deciding

2   which type of sanction to impose on a spoliator. Any remedy applied to a spoliator "should be

3   designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous

4   judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the

5   same position he would have been absent the wrongful destruction of evidence by the opposing

6   party.'"[17] Sanctions under these "inherent powers must be exercised with restraint" and should be

7   appropriate to the conduct that triggered the sanction.[18]

8   **C.  A Litigant's Duty to Preserve Relevant Evidence**

9          The common law imposes the obligation to preserve evidence from the moment that

10  litigation is reasonably anticipated.[19] For example, in *Sampson v. City of Cambridge, Md.*,[20] the

---

(6th ed. 1997)). The roots of the spoliation inference can be traced to the case of *Armory v. Delamirie*, 1 stra. 505, 93 Eng. Rep. 664 (K.B. 1722), where a "chimney sweep who sued [a] jeweler for return of the jewel he had found and left with the jeweler[] was allowed to infer from the fact that the jeweler did not return the jewel that the stone was 'of the finest water.'" *Nation-Wide Check Corp., Inc. v. Forest Hills Dist., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982) (Breyer, J.). Because "the judge instructed the jury to 'presume the strongest against him, and make the value of the *best* jewels the measure of their damages,'" the *Nation-Wide* court took the *Armory* decision as "a clear sign that the inference was designed to serve prophylactic and punitive purposes and not simply to reflect relevance." *Id.*

[17] *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 521, 534 (D. Md. 2010) (explaining that most jurisdictions have identified these factors for "sanction-worthy spoliation"). *Accord Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1008 (D. Ariz. 2011). *See also Trigon Ins. Co.*, 204 F.R.D. at 287 (finding that "[o]nce spoliation has been established, the sanction chosen must achieve deterrence, burden the guilty party with the risk of an incorrect determination and attempt to place the prejudiced party in the evidentiary position it would have been in but for the spoliation.").

[18] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). A choice of sanction is reviewed for an abuse of discretion. *See Micron*, 645 F.3d at 1326.

[19] *See Silvestri*, 271 F.3d at 591 ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (same); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) (Scheindlin, J.) (same) (overruled on other grounds); *Leon*, 464 F.3d at 959 (finding that duty to preserve exists when party had "some notice that the documents were potentially relevant to the litigation before they were destroyed" and "because the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist, a party "can hardly assert any presumption of irrelevance as to the destroyed documents") (internal citations omitted) (citing *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982)); Paul W. Grimm et al., *Proportionality in the Post-Hoc Analysis of Pre-Litigation Preservation Decisions*, 37 U. BALT. L. REV. 381, 390 n.38 ("All circuits recognize the duty to preserve information relevant to anticipated or existing

4

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

defendant's duty arose no later than the date when plaintiff's counsel, prior to filing the complaint, asked the defendant by letter to preserve relevant evidence.[21] However, a future litigant is not required to make such a request, "and a failure to do so does not vitiate the independent obligation of an adverse party to preserve such information" if the adverse party knows or should know of impending litigation.[22]

### D. The Scope of a Litigant's Preservation Duties

The duty to preserve evidence also "includes an obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation."[23] It is well-established that the duty pertains only to relevant documents.[24] Relevant documents include:

> [A]ny documents or tangible things (as defined by Rule 34(a)) made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." The duty also includes documents prepared for those individuals, to the extent those documents can be readily identified (e.g., from the "to" field in e-mails). The duty also extends to information that is relevant to the claims or defenses of any party, or which is "relevant to the subject

---

litigation.") (internal citations omitted). "[T]his duty arises at the point in time when litigation is reasonably anticipated whether the organization is the initiator or the target of litigation." THE SEDONA CONF. WORKING GROUP ON ELECTRONIC DOCUMENT RETENTION & PRODUCTION, THE SEDONA CONF. COMMENT ON LEGAL HOLDS: THE TRIGGER AND THE PROCESS 1 (public cmt. Aug. 2007), *available at* https://thesedonaconference.org/download-pub/77 ("LEGAL HOLDS") (last visited July 24, 2012).

[20] 251 F.R.D. 172 (D. Md. 2008).

[21] *Id.* at 181.

[22] *Thompson*, 219 F.R.D. at 100. District courts throughout the Ninth Circuit have repeatedly held that where a party should reasonably know that evidence is potentially relevant to anticipated litigation, that party is under the obligation to preserve that evidence. *See, e.g., United States ex rel. Berglund v. Boeing Co.*, 835 F. Supp. 2d 1020, 1049 (D. Or. 2011); *Surowiec*, 790 F. Supp. 2d at 1005; *Morford v. Wal-Mart Stores, Inc.*, Case No. 2:09-CV-02251 RLH (PAL), 2011 WL 635220, at *3 (D. Nev. Feb. 11, 2011); *Carl Zeiss Vision Intern. GmbH v. Signet Armorlite, Inc.*, Case No. 07-CV-0894 DMS (POR), 2010 WL 743792, at *14 (S.D. Cal. Mar. 1, 2010); *Rev 973 LLC v. Mouren–Laurens*, Case No. CV 98-10690 AHM (Ex), 2009 WL 273205, at *1 (C.D. Cal. Feb. 2, 2009); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067-68 (N.D. Cal. 2006); *Performance Chevrolet, Inc. v. Market Scan Info. Sys.*, Case No. CV-04-0244 BLW, 2006 WL 1042359, at *1 (D. Idaho Apr. 18, 2006). *Cf. Micron*, 645 F.3d at 1320; *Silvestri*, 271 F.3d at 590; *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).

[23] LEGAL HOLDS, at 3.

[24] *See Pension Comm.*, 685 F. Supp. 2d at 466.

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

United States District Court
For the Northern District of California

1

matter involved in the action." Thus, the duty to preserve extends to those employees likely to have relevant information-the "key players" in the case.[25]

2

At the same time, it generally is recognized that when a company or organization has a document

3

retention policy, it "is obligated to suspend" that policy and "implement a 'litigation hold' to

4

ensure the preservation of relevant documents" after the preservation duty has been triggered.[26]

5

### E. The Court's Test for Spoliation Sanctions

6

There is not complete agreement about whether spoliation sanctions are appropriate in any

7

given instance, and, more specifically, whether an adverse inference instruction is warranted. The

8

majority of courts use some variation of the three-part test set forth by Judge Scheindlin in

9

*Zubalake IV* for determining whether to grant an adverse inference spoliation instruction.[27] That

10

test is as follows: "[a] party seeking an adverse inference instruction (or other sanctions) based on

11

the spoliation of evidence must establish the following three elements: (1) that the party having

12

control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the

13

records were destroyed with a 'culpable state of mind;'[28] and (3) that the evidence was 'relevant'

14

15

16

17

18

19

[25] *Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (hereinafter "*Zubalake IV*") (footnotes omitted); *see also Broccoli* v. *Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510 (D. Md. 2005) ("The duty to preserve encompasses any documents or tangible items authored or made by individuals likely to have discoverable information that the disclosing party may use to support its claim or defenses."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996) (finding that before imposing sanctions, a court must be satisfied that the missing evidence would have had some relevance to the proceedings); *Davis v. Grant Park Nursing Home, L.P.*, Case No. 1:08-CV-01764 (PLF/JMF), 2010 WL 4642531, at *1 (D.D.C. Nov. 9, 2010) ("Assessing whether sanctions are warranted for loss of otherwise discoverable information is a function of whether a party has been prejudiced by that loss.").

20

21

22

[26] *Goodman*, 632 F. Supp. 2d at 511 (quoting *Zubalake IV*, 220 F.R.D. at 218)); *see also Pension Comm.*, 685 F. Supp. 2d at 466 (same); *School-Link Tech., Inc. v. Applied Res., Inc.*, Case No. 05-2088-JWL, 2007 WL 677647, at *3 (D. Kan. Feb. 28, 2007) (same). A litigation hold might be unnecessary under certain circumstances, and reasonableness is still a consideration. *See Haynes v. Dart*, Case No. 08 C 4834, 2010 WL 140387, at *4-5 (N.D. Ill. Jan. 11, 2010) (finding that a broad litigation hold in each case, when there were 800 pending lawsuits, would cause undue burden).

23

24

25

[27] *See Gates*, 167 F.R.D. at 102 (finding that while "the criteria for sanctions cannot be reduced to a formula or standardized test," two factors in particular have taken on significant importance in cases analyzing the necessity of spoliation sanctions: "the culpability of the offender, or the alleged mental state which gave rise to the destruction of evidence, and . . . the degree of prejudice or harm which resulted from the actions of the offender").

26

27

28

[28] Apple makes much of the so-called "Korean Fair Trade Commission ('FTC') Investigation," in which Samsung was fined 400 million won, the largest fine the Korean FTC has ever levied, for spoliation and obstructing an official investigation. *See* Docket No. 895 (Apple's Mot. for Adverse Inference Jury Instruction) at 11-15 (citing Decl. of Esther Kim in Supp. of Apple's Mot. for

6

**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

to the party's claim or defense such that a reasonable trier of fact could find that it would support

that claim or defense."[29] After considering these factors, a court must then consider all available

sanctions and determine the appropriate one.[30]

### III.    DISCUSSION

**A.   Samsung's Preservation Efforts**

    1.   *Samsung's "mySingle" Email System*

Samsung's default email system is titled "mySingle."[31] mySingle was "set up" in 2000.[32]

The system is proprietary and was created by a Samsung subsidiary named Samsung Data Systems

("SDS").[33] mySingle went operational in 2001,[34] and is web-based.[35] mySingle stores received and

sent employee emails on company-wide servers,[36] as opposed to dividing the servers by business

---

[29] *Zubulake IV*, 220 F.R.D. at 220; *see also Goodman*, 632 F. Supp. 2d at 509 (quoting *Thompson*, 219 F.R.D. at 101); *Victor Stanley*, 269 F.R.D. at 520-21. *Accord In re Napster*, 462 F. Supp. 2d at 1078.

[30] *See, e.g.*, *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis."); *Wm. T. Thompson Co. v. GNC*, 593 F. Supp. 1443, 1456 (C.D. Cal. 1984) ("Imposition of severe sanctions is required in this case by the severity of the abuses that took place.").

[31] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 10 (3/8/12 Kyu Hyuk Lee 30(b)(6) Dep. Tr., 9:17-20).

[32] *See id.* at Ex. 10, 11:9-12.

[33] *See id.* at Ex. 10, 9:23-10:4.

[34] *See* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 3 ("SEC has used the mySingle system since 2001.").

[35] *See id.*

[36] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 10, 13:9-12; *see also id.* at 27:17-28:3 ("Q. How does the mySingle system store the e-mail for the two-week period that exists before the deletion? . . . A. It's my understanding that they are stored in the mySingle server."); Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 2 (declaring that mySingle "retains email in a user's inbox and 'sent' folders, for 14 days").

Adverse Inference Jury Instruction, Ex. 1). The court is not persuaded of the weight properly afforded to such evidence, and declines the invitation to include it in its analysis.

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

unit,[37] and Samsung employees access their mySingle email accounts through a web-based

interface.[38] mySingle contains a "general guideline [that] calls for all e-mails to be automatically

deleted after the passage of two weeks."[39] This functionality operates and stores email company-

wide in Korea, has no exceptions,[40] and has been in place since mySingle went operational.[41]

Samsung uses mySingle in this way because: (1) "it avoids the danger that confidential business

information will be misappropriated in the event the computer itself is lost or stolen";[42] (2) it is

cheaper than using a 30-day retention period;[43] (3) it "reduces the amount of information that could

---

[37] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 10, 13:6-12 ("Q. And is there a server within the Mobile Communications Division where it would be stored? . . . A. Well, it's not a server that is operated by the Mobile Communications Division. It is a group-wide, that is, Samsung group-wide system. So it is within mySingle.").

[38] *See* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 3 ("SEC uses an email system known as mySingle to maintain the email accounts of SEC employees, and provide SEC employees with an interface to access their SEC email accounts.").

[39] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 10, 14:1-3; *see also* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 3 ("Email in a user's inbox and 'sent' folders are retained by the mySingle email system for 14 days.").

[40] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 10, 27:6-15 ("Q. When Samsung found out that Apple was going to bring litigation against it, why didn't Samsung stop the automatic deletion feature of its e-mail system? . . . A. mySingle is a system that is used by the entire group at Samsung and there is no separate guidelines that provides any changes to the policy particular [*sic*]."); *see also id.* at 16:4-9 ("Q. And is there any way to automatically have all of the e-mail that comes into a person who works at the Mobile Communications Division go directly onto a hard drive to be saved? A. Well, mySingle does not have that sort of a feature. You'd have to do it separately.").

[41] *See id.* at 14:7-13 ("Q. Has the policy of deleting e-mails after two weeks at mySingle, has that gone on the last five years? . . . A. Well, as for the policies associated with mySingle, ever since the system was first set up they have not changed to date."); *see also* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 3 ("SEC has had the 14-day email retention policy in place since 2001.").

[42] Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 6; *see also* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 4.

[43] *See* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 10. Samsung claims that extending the retention policy for its employees would cost an additional $35,983,193 per year. Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 6. Even if this claim were beyond mere challenge, Samsung did not estimate the cost of temporarily moving key custodians' email

8

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

United States District Court
For the Northern District of California

1    inadvertently be disclosed through misdirected email, or stolen through unauthorized access or

2    hacking into an employee's email account on the system;"[44] and (4) the policy best complies with

3    Korean privacy law.[45]

4            Employees using mySingle can save any emails they deem relevant.[46] The mySingle

5    interface has a "Save All" button that employees can "click" to save all email in their inbox and

6    sent folders to their computer's hard drive.[47] If an employee clicks this button every two weeks, all

7    of that employee's emails will be saved.[48] Employees also have the option of selecting individual

8    accounts to unique servers that do not biweekly destroy emails, or the cost of temporarily moving
     key custodians from mySingle to Microsoft Outlook. *See* Docket No. 987 (Samsung's Opp'n to
9    Apple's Mot. for Adverse Inference Jury Instruction) at 6.

     [44] Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 6.
     *See also* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot.
     for Adverse Inference Jury Instruction) ¶ 11.

     [45] *See* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for
     Adverse Inference Jury Instruction) ¶ 9.

     [46] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury
     Instruction) at Ex. 10, 14:3-6 ("However, for those individuals to whom document retention notice
     is served, they are requested to separately save on their respective hard drives the relevant
     emails.").

     [47] Samsung's 30(b)(6) witness testified that employees must save each email to their hard drives
     individually. Samsung now claims for the first time in conjunction with this motion that this
     testimony was incorrect. *Compare* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse
     Inference Jury Instruction) at 6; Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's
     Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 5 ("The mySingle interface allows
     for SEC employees to save all email in their inbox, as well as in their 'sent' folders, to the local
     hard drive on his or her desktop or laptop computer, by clicking a "Save All" button. An SEC
     employee who uses this 'Save All' button every two weeks could save all of his or her email to his
     or her local hard drive."), *with* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for
     Adverse Inference Jury Instruction) at Ex. 10, 16:4-15, 21:6-13 ("Q. And is there a way to
     automatically have all of the e-mail that comes into a person who works at the Mobile
     Communications Division go directly onto a hard drive to be saved? A. **Well, mySingle does not
     have that sort of feature. You'd have to do it separately.** Q. So under mySingle system you would
     have to move each e-mail over from mySingle system into the hard drive in order to preserve it; is
     that right? . . .  A. Yes, that is right as far as mySingle system is concerned. . . . Q. So you
     [Samsung's 30(b)(6) witness's personal practice] don't click as a group, you click each one and
     move it separately into the directory, true? A. I suppose everybody does things a little differently
     from one another, but in my case what I do is click everything all together and then de-click as to
     spam mails, personal types of e-mails and then move the rest.") (emphasis added).

     [48] Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 6.
     *See also* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury
     Instruction) at Ex. 10, 15:20-16:2 ("Q. If I were to -- if I worked at the Mobile Communications
     Division and I want to save my e-mail, would I have to move it over to the hard drive within two

28

9

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE
JURY INSTRUCTION**

United States District Court
For the Northern District of California

emails or groups of emails, rather than all emails, and saving just these specific emails to their hard drives.[49] Samsung gives its employees the option of using Microsoft Outlook.[50] Microsoft Outlook, unlike mySingle, allows employees to automatically view and archive emails they receive on their local hard drives.[51] mySingle's 14-day destruction policy does not apply to locally saved emails on Microsoft Outlook.[52]  Samsung employees do not require permission to use Outlook for storing email, but they do need its permission to use Outlook for sending email.[53]

---

weeks in order to preserve it? . . . A. Yes, you would copy it to your hard disk drive before its deletion.").

[49] *See* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 6; *see also* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 10, 15:4-18 ("Q. Let's assume a person wants to retain their e-mail and doesn't want it to be lost after two weeks, and they work at the Mobile Communications Division. What do they have to do to retain their e-mail? A. Well, it's actually the same case for both the Mobile Communications Division as well as other units in that for those who desire to save any of their own emails they can separately park those in their hard drives. Q. How do they do that? A. Well, whatever e-mail they desire to move, they can move that over to a directory in their hard drive.").

[50] *See* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 6-7; Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 7.

[51] *See id.*

[52] *See* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 8.

[53] *See* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 7 n.8; *see also* Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 5. Samsung's 30(b)(6) deponent previously stated, however, that employees need their supervisor's permission to use Microsoft Outlook. *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 9, 164:19-165:7. ("Q. In order for an employee to store e-mail to avoid having the email automatically deleted after two weeks, the employee has to obtain permission from the head of his or her department to use the Outlook system; is that correct? . . . A. In order to install an Outlook linked to mySingle, you have to get permission, but even though you don't use the Outlook system, you can separately store that kind of information on your personal hardware drive.") Samsung now claims that SEC requires employees only to "obtain special permission to use Outlook to *send* email, but there is no such requirement for employees to use Outlook to view and archive email." Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 7 n.8 (citing Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction ¶ 7).

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

United States District Court
For the Northern District of California

It is within each Samsung employee's discretion whether to save relevant documents.[54]

Samsung has never attempted to verify whether Samsung employees are complying with the

instructions they were told to follow.[55] mySingle does have a feature, however, that reminds

employees when the time for biweekly deletion of their emails is near.[56] "The 'Help' page in

mySingle explains in both English and Korean how to use the 'Save All' function,"[57] as well as

"how to save individual emails or groups of emails."[58]

---

[54] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 10, 18:11-24 ("Q. So Samsung relied on each individual person to move each of their e-mails that were be related to the litigation from mySingle system onto the hard drives of their individual computers; is that true? . . . A. Again, with respect to document retention requests, the overall need for such and the importance, indeed, as well as the methodology for such are explained to our people on numerous occasions by way of the notice as well as explanations and then put into practice. And it is my understanding that those persons who have been so notified have faithfully abided by said duty.").

[55] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 10, 19:1-15, 32:9-33:25 ("Q. So after the preservation notice is given out, Samsung does not check to make sure that the employees who receive the document retention notice are actually moving e-mails within the two-week period before their automatic deletion, true? . . . A. First of all, such document preservation requests will be given to thousands of employees; however, there is no way to check on to see one by one whether document deletion is actually happening. However, since there would be sufficient explanation given for the importance and methodology that the recipient of the notice should go by, I believe that these documents are preserved accordingly. . . . Q. So, Mr. Lee, Samsung does not check to make sure the employees are following directions in the document retention notice, right? . . . A. Since on numerous occasions that IP legal team attorneys and outside attorneys provide numerous explanations about the notice and also regarding the notice's importance, necessity and methodology of preservation, on that basis I understand that the persons who are required to preserve those documents would precisely save those documents. Q. So you trust those people to follow the document retention notice and you don't follow up and check with them to make sure they do so? . . . A. Since there would have been sufficient notification as to the importance and methodologies concerning preservation of documents, one would have a conviction that such relevant document be well-preserved accordingly. ***However, there is no way to check on to see if such documents are discarded.*** Q. Well, you would agree with me that one way to make sure that such emails are not deleted would be to back up the e-mail system on a regular basis so that it does not get deleted after two weeks, right?") (emphasis added).

[56] *See id.* at 26:3-11 ("Q. How do they know about it [the deletion]? . . . A. There's a certain indication with respect to each and every piece of mail that it's so many days before deletion. Q. And is that true for every employee at Samsung? A. Yes, the system makes that indication.").

[57] Docket No. 987 (Decl. of Han-Yeol Ryu in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) ¶ 5.

[58] *Id.* ¶ 6.

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

2.   *Samsung's Issuance of Litigation Hold Notices*

On August 4, 2010, Apple presented Samsung with information regarding Samsung's infringement of certain Apple patents.[59] Soon after, in an email dated August 23, 2010, Samsung emailed litigation hold notices to certain Samsung employees.[60] The notice reads, in relevant part: "***[T]here is a reasonable likelihood of future patent litigation between Samsung and Apple unless a business resolution can be reached***."[61] The email then goes on:

> The key issue that courts consider in determining whether or not a duty to preserve exists centers on whether the party had notice of the relevance of the evidence in question to anticipated litigation. The notice can arise from many different things, including prior lawsuits, prelitigation communications, or any preparatory steps and efforts undertaken for the anticipated litigation.[62]

The notice requests that employees "preserve any and all such documents that may be relevant to the issues in a potential litigation between Samsung and Apple until it is fully resolved."[63] The notice lists ten discreet categories of documents that Samsung employees receiving the email

---

[59] *See* Docket No. 895 (Apple's Mot. for Adverse Inference Jury Instruction) at 2. According to Apple, it began negotiations with Samsung regarding Samsung's "copying of Apple's design . . . in July 2010, when Samsung launched its Galaxy line of smartphones bearing a striking resemblance to Apple's own iPhone products. That month, Apple's CEO Steve Jobs and Apple's Chief Operating Officer Tim Cook met with Samsung CEO J.Y. Lee. Both Mr. Jobs and Mr. Cook advised Mr. Lee that Samsung needed to cease copying Apple's iPhone designs and infringing Apple's patents immediately. On August 4, 2010, Apple's General Counsel Bruce Sewell and I met with Dr. Seungho Ahn, Samsung Electronics' Vice President and Head of its Intellectual Property Center, in Cupertino. During our meeting, I gave a presentation illustrating Samsung's infringement of Apple's patents. I also emphasized that Samsung had other design options that would take its products farther away from Apple's products and avoid direct conflict.") Docket No. 128 (Decl. of Richard J. Lutton, Jr. in Supp. of Apple's Mot. for a Prelim. Inj.) ¶¶ 2-4.

[60] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 9. Samsung also sent the same notice again on September 3, 2010. In total, 27 Samsung custodians received either the August 23 or September 3, 2010 litigation hold notice. *See id.* In contrast, the litigation hold notices sent on April 21, 2011, and those sent after, were addressed to 2,841 custodians. *See id.*

[61] *Id.* (emphasis added). The qualifier, "unless a business resolution can be reached," is of course true of virtually all litigation amongst commercial competitors, and for that reason is not at all determinative.

[62] *Id.*

[63] *Id.*

---

12

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

United States District Court
For the Northern District of California

1   "should nevertheless retain and preserve."[64] No significant further action was taken over the next

2   seven months.

3          On April 15, 2011, Apple filed this lawsuit. On April 21, 2011, Samsung again sent

4   litigation hold notices, this time to 2,300 Samsung employees, detailing the scope of the documents

5   subject to preservation.[65] Over the next few weeks, Samsung sent additional amended litigation

6   hold notices to over 2,700 Samsung employees.[66] Samsung continued to update both the population

7   of employees receiving notices, as well as the content of the notices, as the litigation between

8   Apple and Samsung took shape.[67] The litigation hold notices included the following language: "if

9
10   [64] Samsung's August 23, 2010 litigation hold notice contains 10 discreet categories of documents
     to be preserved, while Samsung's April 21, 2011 litigation hold notice contains 15 discreet
11   categories of documents. While the April 21, 2011 notice is certainly more comprehensive, there is
     substantial overlap between the two notices. *See* Docket No. 895 (Decl. of Esther Kim in Supp. of
12   Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 9A and 9C. This weighs heavily
     against Samsung's argument that it could not have known in late-August 2010 what might be
13   relevant to litigation with Apple. *See* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for
     Adverse Inference Jury Instruction) at 15 n.16 ("Apple seeks to penalize Samsung for its voluntary
14   decision to send out a limited litigation hold notice to certain employees when it began general
     licensing discussions with Apple in 2010, turning Samsung's positive efforts – not followed by
15   Apple itself – against it. The law makes clear that the duty to preserve at issue here was not
     triggered until Apple filed its precise claims."). Samsung cites to a single decision for this
16   proposition, namely, *FTC v. Lights of America, Inc., et al.*, Case No. SACV 10-1333 JVS (MLGx),
     2012 WL 695008 (C.D. Cal. Jan. 20, 2012) (hereinafter "*LOA*"), but *LOA* is distinguishable. *LOA*
17   dealt with the unique situation in which a government agency is required to issue a litigation hold.
     *LOA* held that the FTC was not obligated *per se* to issue a litigation hold "at the commencement of
18   the full-phase investigation or upon the issuance of the CID because litigation was not 'reasonably
     foreseeable' at those points." *Id.* at *3. *LOA* also noted that FTC investigations are designed for
     gathering information, and many investigations end without litigation. *See id.*

19   [65] *See* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction)
20   at 7-8 (citing Decl. of Thomas R. Watson in Supp. of Opp'n to Apple's Mot. for Adverse Inference
     Jury Instruction, Ex. 1).

21   [66] *See id.* at 8 (citing Decl. of Thomas R. Watson in Supp. of Opp'n to Apple's Mot. for Adverse
22   Inference Jury Instruction, Ex. 1).

23   [67] *See* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Instruction) at 7-
     9; *see also* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference
24   Jury Instruction) at Ex. 10, 31:8-32:8 ("Q. What has Samsung done to make sure that the thousands
     of employees who received the document retention notice are actually moving their e-mails on
25   their personal computers from the mySingle system onto a separate directory within the two-week
     period that that [*sic*] must occur to prevent the deletion of their e-mails? . . . A. At the time the
26   document preservation notice is given by the IP legal team or outside counsel, upon receipt of such
     notice by the officers and employees of Samsung, they are fully apprised of the importance. The
27   necessity and methodology that they should go by in preserving such documents pursuant to the
     notice. And since IP legal team members sufficiently provide explanations as to development
28   departmental leaders, the recipients conduct good-faith compliance of such notice and therefore it

13

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE
JURY INSTRUCTION**

**United States District Court**
For the Northern District of California

1    you have any doubt as to whether you should preserve particular documents, you are instructed to

2    retain them. Please distribute this message to anyone who may have such relevant documents."[68]

3    The notice goes on to admonish employees, in bolded capital letters, not to destroy any responsive

4    documents, but to instead preserve them.[69] Between May 2 and May 4, 2011, Samsung's outside

5    counsel sent several members of its firm to Korea to assist Samsung's in-house counsel with

6    educating Samsung employees on their duty to preserve relevant documents and Samsung's

7    collection efforts.[70]

8         3.   *Samsung's Efforts to Follow-up with its Relevant Employees*

9         After sending litigation hold notes to its employees, Samsung explained to its relevant

10   department heads the specifics of Samsung's litigation hold efforts.[71] Samsung's in-house IP legal

11   team, as well as Samsung's outside counsel, all were involved in these efforts.[72] Samsung's in-

12   house document preservation team provided relevant Samsung employees with numerous

13   explanations on numerous occasions about the litigation hold notice, its importance, and the

14   necessity and methodology of document preservation.[73] More specifically, at the end of April

15   2011, Samsung's IP Legal Team Director held four follow-up meetings with over 300 Samsung

16   employees.[74] The purpose of these meetings was to educate key employees about the United

---

17   will be difficult to check on to see whether there would be a non-preservation of such notice after
18   the request is given out.").

19   [68] Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 8
20   (citing Decl. of Thomas R. Watson in Supp. of Opp'n to Apple's Mot. for Adverse Inference Jury
     Instruction, Ex. 33 at Ex. A).

21   [69] *Id.*

22   [70] *See id.* at 9 n.10 (citing Decl. of H. Kang in Supp. of Opp'n to Apple's Mot. for Adverse
23   Inference Jury Instruction ¶ 12; Decl. of Sara Jenkins in Supp. of Opp'n to Apple's Mot. for
     Adverse Inference Jury Instruction ¶ 10).

24   [71] *See id.* (citing Decl. of Thomas R. Watson in Supp. of Opp'n to Apple's Mot. for Adverse
25   Inference Jury Instruction, Ex. 5 (3/8/12 Kyu Hyuk Lee 30(b)(6) Dep. Tr., 19:6-13)).

26   [72] *See id.*

27   [73] *See id.*

28   [74] *See id.*

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE
JURY INSTRUCTION**

United States District Court
For the Northern District of California

States' litigation discovery system, and the requirements of Samsung's computer system for document preservation.[75] Samsung also imparted to its employees the importance of actively saving emails and other electronic documents, and exactly how to do so.[76] Samsung employees were also told to contact the IP Legal Team if they had additional questions.[77] All Samsung employees attending these meetings were instructed to pass what they had learned on to their "junior managers."[78]

### B. Application of the Court's Spoliation Test

#### 1. Samsung's Duty to Preserve Relevant Evidence

Apple argues that Samsung's discovery obligation arose in August 2010 based on the August 4, 2010 presentation Apple gave to Samsung regarding Apple's contention that certain Samsung products infringe certain Apple patents.[79] Apple goes on to argue that Samsung must have known in August 2010 that it had no plans to alter its products, and thus a reasonable party in Samsung's place would have known that litigation with Apple was imminent, if not inevitable.[80]

Samsung responds that its preservation obligations arose on April 15, 2011, when Apple filed its complaint in this matter. According to Samsung, mySingle and its 14-day destruction policy were adopted for legitimate business purposes, Samsung could not have known in August 2010 which claims Apple might assert against it, and a negotiated settlement with Apple was still possible in August 2010 because licensing discussions with Apple were ongoing.

---

[75] See id.

[76] See id. at 8-9.

[77] See id. at 9.

[78] See id.

[79] See Docket No. 1047 (Apple's Reply in Supp. of Mot. for Adverse Inference Jury Instruction) at 2-3.

[80] Apple notes that Samsung made it clear to Apple in Spring 2011 that Samsung would not seek a negotiated end to their disagreements. According to Apple, Samsung announced the release of "a new round of infringing products" in Spring 2011. See Docket No. 1047 (Apple's Reply in Supp. of Mot. for Adverse Inference Jury Instruction) at 2-3.

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

The court agrees with Apple. The phrase "reasonably foreseeable" as it relates to a party's preservation duties sets an objective standard.[81] On August 4, 2010, Apple presented Samsung with more than just a vague hint that it believed Samsung had violated its intellectual property. Apple delivered, in person, a comprehensive summary of its specific patent infringement claims against specific Samsung products. Whatever hopes Samsung might have subjectively held for a license or other non-suit resolution, this would certainly put a reasonably prudent actor on notice that litigation was at least foreseeable, if not "on the horizon."[82] If there were any doubts about this, Samsung itself resolved them. Shortly after Apple's presentation Samsung sent litigation hold notices to a small number of Samsung employees that read, in relevant part: "*there is a reasonable likelihood of future patent litigation between Samsung and Apple unless a business resolution can be reached*."[83] And yet other than exhorting these employees to circumvent the otherwise certain destruction of relevant materials, for seven months Samsung did no follow-up training at all. And at no time, even up to the present day, did Samsung engage in any audit of these employees to gauge what effect, if any, its exhortations were having.

Samsung cannot on the one hand tout its prudence and responsibility in regards to its post-complaint preservation efforts, and simultaneously argue that it was ignorant of the possibility of litigation pre-complaint. This is not a matter of "punishing" a party for taking prudent steps to avoid controversy. It is a matter of holding a party to what could not be a plainer admission. In

---

[81] *See Micron*, 645 F.3d at 1320 ("'[S]poliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.' This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation. When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.") (internal citations omitted).

[82] Samsung's argument that Apple failed to issue litigation hold notices in August 2010 is irrelevant to the court's determination here. Samsung has always been free to argue, at the appropriate time, that Apple too is guilty of spoliation. In any event, that motion is not currently before the court.

[83] Docket No. 1047 (Apple's Reply in Supp. of Mot. for Adverse Inference Jury Instruction) at 2; *see also* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 9.

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

**United States District Court**
For the Northern District of California

1   sum, the court finds that Samsung's duty to preserve evidence arose on August 23, 2010, the date

2   Samsung issued litigation hold notices to its employees following Apple's infringement

3   presentation to Samsung.[84]

4         *2.   Samsung's Requisite Mental State*

5         Even as litigation with Apple was "reasonably foreseeable," Samsung kept its auto-delete

6   policy in place at all times. Apple argues that Samsung's actions evidence the necessary "culpable

7   state of mind."[85] According to Apple, Samsung's later efforts to educate its employees, and its

8   issuance of litigation hold notices, do not negate this.[86] It is Samsung's continued use of its

9   biweekly email destruction policy, Apple argues, without any methodology for verifying whether

10  Samsung employees at all complied with the instructions they were given, that is dispositive to the

11

12  [84] Samsung euphemistically refers to Apple's infringement presentation as a "licensing discussion."
13  *See* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at
    15 n.16.

14  [85] *See Leon*, 464 F.3d at 959 (internal citations omitted) ("A party's destruction of evidence
15  qualifies as willful spoliation if the party has some notice that the documents were *potentially*
    relevant to the litigation before they were destroyed."); *see also Unigard*, 982 F.2d 363, 368 n.2
16  (9th Cir. 1992) ("This court has, since *Roadway,* confirmed the power of the district court to
    sanction under its inherent powers not only for bad faith, but also for willfulness or fault by the
17  offending party.") (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988)); *Glover*,
    6 F.3d at 1329 ("As *Unigard* correctly notes, however, a finding of 'bad faith' is not a prerequisite
18  to this corrective procedure. Surely a finding of bad faith will suffice, but so will simple notice of
    'potential relevance to the litigation.'") (internal citations omitted) (citing *Akiona v. United States*,
19  F.2d 158, 160-61 (9th Cir. 1991)).

20  [86] *See* Docket No. 895 (Apple's Mot. for Adverse Inference Jury Instruction) at 3-4. Apple makes
    the additional argument that Samsung's August 23, 2010 litigation hold notice was deficient
21  because it failed to instruct employees regarding how precisely to preserve emails, and failed to
    even mention mySingle's automatic deletion feature. *See id.* at 4 (citing Decl. of Esther Kim in
22  Supp. of Apple's Mot. for Adverse Inference Jury Instruction, Ex. 9 at A, C, E, G (English
    versions), I-J). The court agrees. Samsung's August 23, 2010 notice fails to specifically instruct its
23  recipients how to preserve relevant evidence, instead stating only, "[t]to the extend the need to
    retrieve copies of potentially relevant documents arises, representatives of Samsung's IP Legal
24  Team will be contacting you. In the meantime, if you have any questions, please call the Personnel
    of the IP Legal Team." *Id.* Considering that Samsung claims its biweekly email destruction policy
25  has no exceptions and cannot be shut down absent prohibitive cost, the court wonders how a
    custodian can "immediately suspend[]" a "scheduled disposal." In any event, the court would have
26  reached the same decision regardless of whether Samsung's August 23, 2010 notice included
    detailed preservation instructions because the notice was sent to only a comparatively small
27  number of Samsung employees, and Samsung never followed-up to check if its employees were at
    all in compliance with these instructions.

28

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE
JURY INSTRUCTION**

instant question.[87] In other words, it is Samsung's failure to monitor its employees' efforts

downstream, as opposed to its immediate efforts to educate its employees after Apple filed this

lawsuit, which violates Samsung's duty to preserve relevant documents.

Samsung responds that Apple has not met its burden of showing that the spoliation was

"intentional" or "willful," and that Apple's complaint that Samsung might have "done more" to

preserve relevant evidence is "insufficient as a matter of law to establish 'bad faith'" in the Ninth

Circuit.[88]

The court agrees with Apple. Samsung may be right that the record does not establish any

bad faith on its part. But bad faith is not the required mental state for the relief Apple seeks. All

that the court must find is that Samsung acted with a "conscious disregard" of its obligations.[89] In

light of its biweekly automatic destruction policy, Samsung had a duty to verify whether its

employees were actually complying with the detailed instructions Samsung claims it

communicated to them.[90] As far as the court can see, Samsung did nothing in this regard.[91]

---

[87] *See id.* at 4.

[88] Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 19-22 (citing *Glover*, 6 F.3d at 1329 (9th Cir. 1993) ("A party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant."); *Akiona*, 938 F.2d at 161 (reversing adverse inference ruling where plaintiffs failed to show "any bad faith in the destruction of the records, nor even that the government was on notice that the records had potential relevance to the litigation" and noting no intent to cover up information)).

[89] *See Hamilton v. Signature Flight Support Corp.*, Case  No. 05–0490, 2005 WL 3481423, at *7 (N.D. Cal. Dec. 20, 2005) (finding that whether a party has "consciously disregarded" its preservation duties to be determinative); *see also Io Group, Inc. v. GLBT, Ltd.*, Case No. C-10-1282 MMC (DMR), 2011 WL 4974337, *5 (N.D. Cal. Oct. 19, 2011) ("The court concludes Defendants 'consciously disregarded' their obligation to preserve relevant evidence.") (citing *Hamilton*, 2005 WL 3481423, at *7). The court notes that in resolving a similar motion Apple brought against Samsung before the ITC, the Commission applied the stricter "bad faith" standard. But as the Ninth Circuit has confirmed, while bad faith may be sufficient for sanctions, it is not necessary. *See Unigard*, 982 F.2d at 368 n.2.

[90] *See* Docket No. 895 (Apple's Mot. for Adverse Inference Jury Instruction) at 4. Samsung's 30(b)(6) witness was asked during his deposition "what [relevant Samsung employees] have done to abide by their duty." In response, Samsung's 30(b)(6) witness stated, "Well, the question is a little vague for my purposes, but, again, with respect to document retention requests, we impress upon our people as to how important that is and how it ought to be carried out. And, indeed, our counsel within the IP legal team as well as outside counsel all get involved in this, and notices are sent out, people are brought up to speed as to those aspects and the respective department heads are

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

1    Samsung failed to send litigation hold notices in August 2010, beyond a select handful of

2    employees, when its duty to preserve relevant evidence arose. Samsung provided no follow-up, and

3    instead waited to send such notices and to follow-up with individual employees for seven more

4    months, after Apple filed its complaint. And again, at all times, Samsung never checked whether

5    even a single Samsung custodian was at all in compliance with the given directives, while at all

6    times the 14-day destruction policy was in place. This is more than sufficient to show willfulness.

7        *3.  The Relevance of the Destroyed Evidence to Apple*

8        Apple points to the productions of several key Samsung employees that: (1) used the

9    mySingle email system; (2) during the relevant time period; (3) failed to themselves produce much

10   if any relevant emails; and (4) only after other custodian recipients produced one or more of these

11   emails did Apple discover that Samsung may have destroyed relevant evidence. Apple points out

12   that Samsung has produced no email or only a handful of emails from the custodial files of at least

13   14 key fact witnesses.[92] The productions of the following custodians are particularly noteworthy:

14   •  Won Pyo Hong, the head of Samsung's Product Strategy Team, which includes the Design
15      Group responsible for designing Samsung's "Galaxy" smart phones and tablet computers.[93] Dr.
        Hong received the August 23, 2010 litigation hold notice.[94] Dr. Hong did not produce any
16      emails and only 18 documents.[95] Dr. Hong failed to preserve his April 17, 2011 email
        regarding comparisons of Apple products that the court cited in granting Apple's motion to

17

18   _____

     all sufficiently notified as to this. So it is my understanding that the results thereof are in fact
19   preserved intact." Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse
     Inference Jury Instruction) at Ex. 10, 19:1-15.

20   [91] *See, e.g.*, Decl. of Sara Jenkins in Supp. of Opp'n to Apple's Mot. for Adverse Inference Jury
21   Instruction, ¶¶ 5-14 (detailing Samsung's post-complaint efforts to educate its employees regarding
     their preservation obligations).

22   [92] *See* Docket No. 895 (Apple's Mot. for Adverse Inference Jury Instruction) at 4 (citing Decl. of
23   Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶ 4).

24   [93] *See id.* (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury
     Instruction ¶ 5).

25   [94] *See id.* (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury
26   Instruction, Ex. 9 at S).

27   [95] *See id.* (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury
     Instruction ¶ 5).

28

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE
JURY INSTRUCTION**

United States District Court
For the Northern District of California

compel his deposition.[96] Dr. Hong also failed to preserve an email he received that described how Samsung needed to respond to the iPad2 with a slimmer Galaxy Tab.[97]

- Minhyouk Lee, the head Samsung designer responsible for the industrial design of Samsung's accused Galaxy S products, did not produce any emails;[98]

- Joon-Il Choi, a senior manager in Samsung's R&D Management Group, did not produce any emails.[99] Mr. Choi, however, presided over and wrote notes for a meeting that Gee-Sung Choi, Samsung's former President and CEO of its digital media division and current Vice Chairman of Corporate Strategy,[100] attended on March 5, 2011, to discuss alterations to the Galaxy Tab 10.1 to make it more competitive with the newly released thinner iPad 2.[101]

- Don-Joo Lee, the head of sales and marketing for Samsung's mobile business unit, and who is in charge of promoting and selling Samsung mobile products globally, including the Galaxy S products.[102] Mr. Lee produced 16 emails, and failed to preserve emails regarding Samsung's response to the iPad 2, including emails discussing Samsung's need to fight the iPad 2 with a slimmer Galaxy Tab, and the response to Verizon's iPhone and the impact it would have on Samsung.[103]

- Nara Cho, a senior manager in Samsung's wireless business division, handled product planning for Samsung's tablet devices since early 2010.[104] Samsung produced only two emails from Mr.

---

[96] *See id.* (citing Docket No. 850 (Order Granting-In-Part Mot. to Compel) at 9-10).

[97] *See* Docket No. 895 (Apple's Mot. for Adverse Inference Jury Instruction) at 4-6 (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶ 6 and Ex. 2).

[98] *See id.* at 5 (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶ 7). Other custodians produced 155 emails from Mr. Lee. *See* Decl. of Alex Binder in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction ¶ 19.

[99] *See id.* (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶ 8). Other custodians produced 112 emails from Mr. Choi. *See* Decl. of Alex Binder in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction ¶ 19.

[100] *See* SAMSUNG ELEC., Board of Directors, http://www.samsung.com/us/aboutsamsung /ir/corporategovernance/boardofdirectors/IRGeeSungChoi.html (last visited July 24, 2012).

[101] *See* Docket No. 895 (Apple's Mot. for Adverse Inference Jury Instruction) at 5 (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶ 9 and Ex. 3).

[102] *See id.* (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶ 22, Ex. 25 at 23:15-23, Ex. 18 at 33:12-13).

[103] *See id.* (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶¶ 10-12 and Exs. 2, 4, 5). Other custodians produced 420 emails from Mr. Lee. *See* Decl. of Alex Binder in Supp. of Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction ¶ 19.

[104] *See id.* at 6 (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶ 20 and Ex. 31 at 6:20-10:9, 23:14-21).

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

Cho, none of which discuss the Galaxy Tab 10.1, an accused product that was launched after Apple filed this lawsuit.[105]

In contrast, similarly-situated Samsung employees that use Microsoft Outlook, rather than mySingle, produced many times more. For example, Wookyun Kho produced 7,594 emails, and Junho Park produced 6,005 emails.[106]

While the nature of the auto-delete function is such that the court will never know how much relevant material was lost, the court cannot ignore the statistical contrast depicted above.[107] Samsung acknowledges that "the majority of the accused products at issue here released prior to April 15, 2011,"[108] meaning the most relevant emails were subject to Samsung's biweekly destruction policy before Samsung undertook the bulk of its preservation efforts. Samsung had ample notice that the evidence was potentially relevant to litigation. Samsung to this day has not suspended its email system's biweekly automatic destruction policy,[109] even as to key custodians, nor has it presented any evidence that Samsung employees have at all complied with the

---

[105] *See id.* (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶ 20).

[106] *See id.* (citing Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction ¶ 22, Ex. 25 at 23:15-23, Ex. 18 at 33:12-13).

[107] *See Leon*, 464 F.3d at 959 (finding that duty to preserve exists when party had "some notice that the documents were potentially relevant to the litigation before they were destroyed" and "because the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist, a party "can hardly assert any presumption of irrelevance as to the destroyed documents") (internal citations omitted).

[108] *See* Docket No. 987 (Samsung's Opp'n to Apple's Mot. for Adverse Inference Jury Instruction) at 15.

[109] *See* Docket No. 895 (Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction) at Ex. 10, 29:8-24 ("Q. But despite this knowledge of its obligations in the United States, Samsung has continued with its policy of deleting e-mails two weeks after their creation using mySingle system, right? . . . A. *Although there has not been any changes to the policy concerning mySingle system*, in the event necessary there needs any document to be preserved, relevant document preservation requests will be given to personnel who's charged with such request. And the explanation was given by outside and inhouse counsel about the importance and methodology to be used in terms of preservation of those documents. And pursuant to such a request in compliance with the request and the sufficient report was made for the purpose of preservation.") (emphasis added).

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

United States District Court
For the Northern District of California

instructions they were given. The court must conclude that Samsung "consciously disregarded" its obligation to preserve relevant evidence.[110]

### C. *The Form of the Sanction*

Individually, and certainly collectively, these facts support imposition of some form of sanction. Samsung's failure to issue sufficiently distributed litigation hold notices on August 23, 2010, and Samsung's failure to monitor its custodial employees' preservation efforts in the face of its biweekly destruction policy once litigation holds issued, warrants sanctions. The court is mindful, however, that any sanction must be the least drastic available to adequately mitigate the prejudice Apple suffered.[111]

When applying the spoliation inference, courts are faced with a dilemma. By the very nature of the spoliation, there is no way to know what the spoliated evidence would have revealed, and so courts have to instruct the jury that they are allowed to infer a certain fact or set of facts from the absence of specific evidence. With this in mind, courts have formulated adverse inference instructions that range in their level of severity.

*Pension Committee* addressed just this issue.[112] *Pension Committee* begins, "[l]ike many other sanctions, an adverse inference instruction can take many forms, again ranging in degrees of harshness."[113] The degree of harshness should be dictated by the "nature of the spoliating party's conduct—the more egregious the conduct, the more harsh the sanction."[114] "In its most harsh form,

---

[110] *See Hamilton*, 2005 WL 3481423, at *7 (listing cases issuing sanctions for failure to preserve evidence appropriate "only when a party has consciously disregarded its obligation to do so"); *see also Mosaid v. Samsung*, 348 F. Supp. 2d 332, 338 (D.N.J. 2004) (ordering an adverse inference jury instruction be given against Samsung for spoliation of relevant evidence, and finding that "Samsung willfully blinded itself, taking the position that Mosaid's document requests did not seek e-mails and therefore Samsung has no obligation to prevent their continued destruction while this litigation continued").

[111] *See Chambers*, 501 U.S. at 44-45 (holding that the court's choice of sanction should be appropriate to the conduct that triggered the sanction).

[112] 685 F. Supp. 2d at 470.

[113] *Id.*

[114] *Id.*

22

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION**

United States District Court
For the Northern District of California

1    when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain

2    facts are deemed admitted and must be accepted as true. At the next level, when a spoliating party

3    has acted willfully or recklessly, a court may impose a mandatory presumption."[115] At the other

4    end of the spectrum, "the least harsh instruction permits (but does not require) a jury to presume

5    that the lost evidence is both relevant and favorable to the innocent party. If it makes this

6    presumption, the spoliating party's rebuttal evidence must then be considered by the jury, which

7    must then decide whether to draw an adverse inference against the spoliating party."[116]

8         Apple has suffered prejudice as a result of Samsung's spoliation of evidence. Apple has

9    highlighted several key Samsung custodians, noted above, that both used mySingle and produced

10   little or even no relevant documents. In contrast, Samsung custodians using Microsoft Outlook

11   produced literally thousands of documents. Finally, the mySingle custodians Apple points to are

12   senior Samsung employees whose internal communications would have been especially probative

13   to the claims at issue in this litigation.

14        On this record, the court concludes that Samsung's preservation efforts failed because: (1)

15   Samsung did not to suspend mySingle's automatic biweekly destruction policy; (2) Samsung failed

16   to issue sufficiently distributed litigation hold notices after Samsung itself admitted that litigation

17   was "reasonably foreseeable," and to follow up with the affected employees for seven months as it

18   later showed it knew how to do; and (3) at all times Samsung failed to monitor its employees'

19   preservation efforts to ensure its employees were at all compliant. In effect, Samsung kept the

20   shredder on long after it should have known about this litigation, and simply trusted its custodial

21   employees to save relevant evidence from it. The stark difference in production from mySingle and

22   Microsoft Outlook custodians makes clear that this plan fell woefully short of the mark.

23        The court finally turns to the appropriate language for an adverse inference instruction in

24   this instance. In the absence of any finding of bad faith, and the court's finding that Samsung acted

---

[115] *Id.*

[116] *Id.*

23

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE
JURY INSTRUCTION**

United States District Court
For the Northern District of California

1  with conscious disregard of its obligations, or willfully, the court orders the jury be instructed as

2  follows:

> Samsung has failed to prevent the destruction of relevant evidence for Apple's use in this litigation. This is known as the "spoliation of evidence."

> I instruct you, as a matter of law, that Samsung failed to preserve evidence after its duty to preserve arose. This failure resulted from its failure to perform its discovery obligations.

> You also may presume that Apple has met its burden of proving the following two elements by a preponderance of the evidence: *first*, that *relevant* evidence was destroyed after the duty to preserve arose. Evidence is relevant if it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence; and *second*, the lost evidence was favorable to Apple.

> Whether this finding is important to you in reaching a verdict in this case is for you to decide. You may choose to find it determinative, somewhat determinative, or not at all determinative in reaching your verdict.[117]

## IV.     CONCLUSION

The discovery process in our federal courts is anything but perfect. The burden to the parties and to the courts in cases such as this can be extraordinary. This court has previously imposed custodian limits, sampling requirements, and other measures to put at least some boundary around what has to date largely been an unbounded problem.[118] But it is no answer to that burden simply to leave in place an adjudicated spoliation tool and for seven months and take almost no steps to avoid spoliation beyond telling employees not to allow what will otherwise certainly happen. Nor can a party avoid any assessment whatsoever of the effect of the instruction it eventually puts into place. A modest, optional adverse jury instruction is the least restrictive means

---

[117] *See Johnson v. Wells Fargo Home Mortgage, Inc.*, 635 F.3d 401, 422 (9th Cir. 2011) ("We cannot conclude that the District Court abused its discretion or otherwise erred in ordering this [adverse inference jury instruction] sanction. Indeed, the District Court's sanction, which permits the jury to decide if any documents were destroyed when Johnson's hard drives were reformatted, strikes us as precisely the kind of flexible and resourceful sanction order that district judges should be encouraged to craft. We therefore affirm the sanction order.").

[118] *See, e.g.*, *DCG Sys., Inc. v. Checkpoint Tech., LLC*, Case No. C-11-03792 PSG, 2011 WL 5244356, at *1 (N.D. Cal. Nov. 2, 2011) (setting forth restrictions on the amount of electronic document production, and noting that "[t]hese restrictions are designed to address the imbalance of benefit and burden resulting from email production in most cases"); *Perez v. State Farm Mut. Automobile Ins. Co.*, Case No. C-06-01962 JW (PSG), 2011 WL 2433393, at *1 (N.D. Cal. June 16, 2011) (identifying sampling as a less burdensome alternative to full-fledged document production).

24

to remedy the prejudice from these past practices and deter such practices in the future. The court

GRANTS-IN-PART Apple's motion for an adverse inference jury instruction.

**IT IS SO ORDERED.**

Dated: July 24, 2012

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: 11-1846 LHK (PSG)
**ORDER GRANTING-IN-PART APPLE'S MOTION FOR AN ADVERSE INFERENCE
JURY INSTRUCTION**