1  STEVEN D. HEMMINGER (SBN 110665)
   steve.hemminger@alston.com
2  **ALSTON & BIRD LLP**
   275 Middlefield Road, Suite 150
3  Menlo Park, CA 94025-4008
   Telephone:   650-838-2000
4  Facsimile:   650-838-2001

5  Attorneys for Non-Party
   NOKIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation, | Case No.: 11-CV-01846-LHK |
| Plaintiff, | **MOTION TO SEAL** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

**NON-PARTY NOKIA CORPORATION'S
ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

Pursuant to Civil L.R. 7-11 and 79-5(c), and the Court's Order of July 23, 2012 (Docket No. 1288), non-party Nokia Corporation ("Nokia") respectfully submits this administrative motion for an order to seal portions of two trial exhibits – namely Trial Exhibits 77 and 630 – that contain highly confidential and extremely sensitive business information of Nokia's relating to the financial terms of its license agreements.

**Request for Relief**

Nokia understands that this Court denied various administrative motions to seal on July 20, 2012 (Docket No. 1269), largely based upon the parties' over-designation of materials as confidential. On July 23, 2012, the Court issued another Order allowing third parties to file administrative motions to seal their confidential information (Docket No. 1288).

Nokia was first informed of the Court's July 20 Order, and Samsung's desire to offer evidence revealing Nokia confidential information, on July 22, 2012 by counsel for Samsung. Specifically, Samsung has indicated that it intends to submit Trial Exhibits 77 and 630, each of which contains a summary chart identifying various license agreements and certain of their key terms. Samsung has not identified any other Trial Exhibits that would contain any Nokia confidential information, and Apple has not indicated that it intends to offer any Nokia confidential information in any Trial Exhibits to date.

Trial Exhibits 77 and 630 appear to be composite exhibits listing various license agreements (although Nokia does not have access to the entirety of either exhibit).[1] Cumulatively, they contain four rows identifying the financial terms of three licenses: (1) a 2009 Nokia / Samsung license, (2) a 2010 Nokia / Samsung license, and (3) a 2011 Nokia / Apple license. While the existence of these licenses is not confidential – and Nokia does not seek to redact facts that evidence their existence – the financial and related license terms of these licenses are highly confidential and extremely sensitive information to Nokia.

Each of the three licenses in question contains a confidentiality obligation, wherein each party's ability to disclose the terms of each license is restricted. To Nokia's knowledge, the confidential details of each license have been treated by all involved parties as highly sensitive competitive business information and as a trade secret, and the details have never been made public. Nokia maintains an active licensing program, and disclosing the details of its existing licenses would cause Nokia substantial harm because such information would likely be used against Nokia in present and future negotiations.

---

[1] It is Nokia's understanding that the actual licenses in question have not been identified as Trial Exhibits, and therefore will not be made public. Should Nokia's understanding be incorrect, Nokia reserves the right to file a further motion directed to the licenses themselves.

NON-PARTY NOKIA'S MOTION TO FILE UNDER SEAL     2     Case No.: 11-CV-01846-LHK

As a result, Nokia seeks only to redact the most sensitive information from these four rows of these two trial exhibits. Nokia does not seek to have the entire exhibits filed under seal. Nokia attaches hereto as Ex. A, a redacted version of the portion of Trial Exhibits 77 and 630 provided to it by counsel for Samsung, for which Nokia has no objection to being used in open court. Nokia requests, however, that any unredacted copies of Exhibits 77 and 630 be kept under seal.

**Background Facts**

Nokia understands that during discovery in this litigation, both Apple and Samsung requested production of each other's respective license agreements. As a result, counsel for each of Apple and Samsung contacted Nokia seeking Nokia's consent to produce the respective licenses. Each of Apple and Samsung promised that the production would be limited to the other party's outside counsel of record, and would be protected in accordance with the Interim Protective Order.

In response to Samsung's request, Nokia stated the following:

> In your letters, you indicate that Samsung Electronics Co., Ltd. ("Samsung") in connection with the above-referenced proceedings (the "Apple/Samsung NDCA/ITC Litigations"), has been requested to produce to Apple Inc. ("Apple") the License Agreement between Nokia Corporation and Samsung dated June 18, 2010 as well as the Nokia/SEC License Agreement dated October 1, 2009 ("Nokia/Samsung Licenses"). You also indicated that Samsung would designate the Nokia/Samsung Licenses as "Confidential Business Information" under the Protective Order in the 794 ITC proceeding and as "Highly Confidential – Outside Counsel's Eyes Only" under the Interim Protective Order in the NDCA action, under which access to these materials would be restricted to Apple's outside counsel. Subject to the below, Nokia provides its consent to disclose the Nokia/Samsung Licenses as described above.
>
> **Please be advised that Samsung is not authorized to disclose the Nokia/Samsung Licenses to anyone other than Apple's outside counsel of record for purposes of the Apple/Samsung NDCA/ITC Litigations only.** […]
>
> During the course of any hearing, trial, etc., in the 794 ITC Investigation, use of the Nokia/Samsung Licenses should only be allowed during a Confidential Session, whereby the public and any in-house counsel for Apple would be excused from the courtroom. Should the Nokia/Samsung Licenses need to be used in connection with a hearing or at trial, the courtroom should be cleared, or other confidentiality procedures will be implemented in accordance with the Interim Protective Order, to ensure that the disclosure of the Nokia/Samsung Licenses is only made to those individuals authorized by the Interim Protective Order, which does not authorize disclosure to Apple in-house counsel. **To be clear, Nokia does not consent to the Nokia/Samsung Licenses becoming public through their use in connection with [any] hearing, trial, etc.** […]

   Finally, Samsung is responsible for ensuring that the Nokia/Samsung Licenses are not disclosed or used in any way in the Apple/Samsung NDCA/ITC Litigations that would expand access or use of the Nokia/Samsung Licenses beyond permitted access or use for "Confidential Business Information" or "Highly Confidential – Outside Counsel's Eyes Only" information disclosed in the course of discovery.

(Letter from Stevens to Abramowitz attached as Ex. B (emphases added)).

Similarly, in response to Apple's request, Nokia stated the follow:

   In that letter, you indicate that Apple, Inc. ("Apple") in connection with the above-referenced proceeding (the "Samsung Litigation"), would be required to produce to Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") the Settlement Agreement and Patent License Agreement (including its appendices) between Nokia Corporation and Apple dated June 12, 2011 (collectively, the "June 12 Agreements"). You also indicated that Apple would designate the June 12 Agreements as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the interim protective order governing the Samsung Litigation and that the June 12 Agreements would not be disclosed to third parties or to in-house counsel for Samsung.

   **Please be advised that Apple is not authorized to disclose the June 12 Agreements to anyone other than Samsung's outside counsel of record for purposes of the Samsung Litigation only.** […]

   **Moreover, in accordance with Paragraph 5.2(b) of the interim protective order, any testimony given relating to the June 12 Agreements shall be designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."**

   **To the extent that the protective order in the Samsung Litigation does not govern the use of the June 12 Agreements at trial or at any hearing in the Samsung Litigation, Apple and Samsung do not have Nokia's consent to disclose or use the June 12 Agreements at any such trial or hearing. In any event, Nokia does not consent to the June 12 Agreements becoming public through their use in connection with [any] hearing, trial, etc.** […]

   Finally, Apple is responsible for ensuring that the June 12 Agreements are not disclosed or used in any way in the Samsung Litigation that would expand access or use of the June 12 Agreements beyond permitted access or use for "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" confidentially disclosed in the course of discovery.

(Letter from Stevens to Ahn attached as Ex. C (emphases added)).

Nokia has consistently expressed the highly sensitive nature of these materials, and has consistently withheld consent for either Apple or Samsung to disclose the licenses themselves at a trial or a hearing.

NON-PARTY NOKIA'S MOTION TO FILE UNDER SEAL     4     Case No.: 11-CV-01846-LHK

**There are Compelling Reasons to Grant the Narrow Relief Sought**

The limited information that Nokia seeks to have sealed is exceptionally sensitive information. Mindful of the Court's admonition regarding sealing only the most sensitive information, Nokia seeks to seal only the most critically sensitive information that relates to the financial terms of the three license agreements of those that appear on Samsung's Trial Exhibits. These types of financial terms are precisely the type of information that courts have found to meet the "compelling" reasons standard. *See, e.g., Mosaid Techs. Inc. v. LSI Corp.*, --- F. Supp. 2d ----, 2012 WL 2951389 (D. Del. July 20, 2012) (sealing terms of licenses and stating, "The Court agrees that this is the type of information which, while largely incidental to the substantive issues in this case, could cause real and serious harm to the parties' future negotiations if disclosed to competitors. It is also the sort of material that courts have frequently redacted."); *TriQuint Semiconductor v. Avago Techs., Ltd.*, Case No. CV 09-1531-PHX-JAT, 2011 U.S. Dist. LEXIS 143942, at *10-12 (D. Az. Dec. 13, 2011) (sensitive financial information sealable); *Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 U.S. Dist. LEXIS 21721, at *7 (N.D. Cal. Mar. 10, 2010) (material that would subject third parties to competitive harm sealable); *Powertech Tec., Inc., v. Tessera, Inc.*, No. C 11-6121 CW, 2012 U.S. Dist. LEXIS 75831, at *5 (N.D. Cal. May 31, 2012) (details of license agreement sealable); *Nursing Home Pension Fund v. Oracle Corp.*, 2007 WL 3232267 (N.D. Cal. 2007) (sealing financial terms of contract); *In re Adobe Systems, Inc. Sec. Litigation*, 141 F.R.D. 155, 161-62 (N.D. Cal. 1992) (under-seal filings preserve third parties' "legitimate expectation that confidential business information, proprietary technology and trade secrets will not be publicly disseminated") (citing *Johnson Controls, Inc. v. Phoenix Control Systems*, 886 F.2d 1173, 1176 (9th Cir. 1989) and *Henry Hope X-Ray Products Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1343 (9th Cir. 1982)). Similarly, courts have often been more likely to seal information that would cause competitive harm to non-parties. *See, e.g., In re Adobe Systems, Inc.*, 141 F.R.D. at 161-62; *see also Guitron v. Wells Fargo Bank, N.A.*, No. C 10-3461 CW, 2012 U.S. Dist. LEXIS 5791 (N.D. Cal. Jan. 18, 2012) (finding compelling reasons to seal "sensitive and private information of third parties"); *Network Appliance*, 2010 U.S. Dist. LEXIS at *5.

1   Non-party Nokia seeks to redact the financial terms of the licenses, the temporal length of
2   the licenses which indicates the overall value of the license, and the specific recitation of the
3   standards covered by each license.  Such specific terms of licenses have consistently met the
4   "compelling reasons" standard.  *See, e.g., Electronic Arts, Inc. v. U.S. District Court for the*
5   *Northern District of California*, 298 Fed. Appx. 568, 569 (9th Cir. 2008) (pricing terms and
6   royalty rates of license agreements constituted trade secrets); *Powertech Techs., Inc. v. Tessera,*
7   *Inc.*, 2012 U.S. Dist. LEXIS 75831, at *5 (N.D. Cal. May 31, 2012) (compelling reasons to seal
8   license agreement).

9   Nokia owns one of the largest and most important patent portfolios in the
10  telecommunications world (Melin Decl., attached hereto as Ex. D, at ¶6).  As of December 2011,
11  Nokia had research and development present in 16 countries with nearly 35,000 people to support
12  these activities (*id*.).  With tens of billions of dollars spent over the years on research and
13  development, Nokia maintains over 10,000 patent families in its portfolio, including hundreds of
14  families of standards-essential patents (*id*.).

15  Nokia is almost always in negotiations with several companies at a time regarding licenses
16  to its standard-essential patents (*id.* at ¶7).  Nokia's ability to negotiate licenses on competitive
17  terms would be severely hampered were the confidential terms of its license agreements, including
18  the financial terms negotiated with competitors and the scope of the licenses covering patents that
19  are both standards-essential as well as others that are not standards-essential, to become public
20  (*id.*).

21  Given the extreme importance and sensitivity of this information, Nokia would be severely
22  harmed, should the information contained in these trial exhibits become public and available to
23  Nokia's competitors (*id*. at ¶8). Providing this sensitive information to Nokia's competitors would
24  force Nokia into an uneven bargaining relationship with licensees or potential licensees, who
25  would have access to Nokia's license information and insight into Nokia's negotiation strategies,
26  while at the same time Nokia would not have access into their corresponding information.  This
27  would leave Nokia at a strategic and business disadvantage, and allow Nokia's competitors to use
28  this information to gain an unfair advantage.  This threat is neither abstract nor theoretical.  As

mentioned above, Nokia is currently engaged in licensing negotiations with several other companies. The harm to Nokia would have immediate impact.

Moreover, courts have recognized that the public's interest in access to materials is lessened when those materials do not relate to the core issues in dispute. The information in question here has no bearing on the substance of either party's infringement claims. No aspect of the Nokia Licenses in question sheds any light upon whether either party has infringed the other's utility or design patents, nor does it relate in any way to whether Samsung copied Apple's trade dress. Making the license terms public will not advance any person's – news agencies or otherwise – understanding or knowledge regarding any of the contested substantive infringement issues in this litigation. As recognized by this Court before, the information Nokia seeks to have sealed would "do little to aid the public's understanding of the judicial process, but have the potential to cause significant harm to [non-party Nokia's] competitive and financial position within its industry." *Network Appliance*, 2010 U.S. Dist. LEXIS at *5.

## CONCLUSION

The relief requested in this motion is narrowly tailored to protect only non-party Nokia's extremely sensitive, competitive business information. Granting this motion will not impede the public's ability to understand the substantive questions involved in this litigation. As a result, Nokia respectfully requests that the motion be granted, and that the Court accept under seal unredacted Trial Exhibits 77 and 630, and only allow the redacted versions of the same to be used in a manner that would render them to become public information.

DATED: July 25, 2012                    Respectfully submitted,

By: */s/ Steven D. Hemminger*
Steven D. Hemminger
ALSTON & BIRD, LLP
275 Middlefield Road, Suite 150
Menlo Park, CA  94025-4008

*Attorneys for Non-Party Nokia Corporation*