HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

Case No. 11-cv-01846-LHK (PSG)

**APPLE'S OPENING DESIGN PATENT CLAIM CONSTRUCTION BRIEF**

**SUBMITTED UNDER SEAL**

**TABLE OF CONTENTS**

**Page**

I. THE BEST DESCRIPTIONS OF THE CLAIMED DESIGN PATENTS ARE THE FIGURES ILLUSTRATING THOSE DESIGNS .......... 1

II. THE COURT SHOULD PROVIDE THE JURY LIMITED TECHNICAL GUIDANCE IN INITIAL INSTRUCTIONS .......... 2

III. THE COURT SHOULD DETERMINE WHETHER THERE ARE ANY PURELY FUNCTIONAL ELEMENTS, AND INSTRUCT THE JURY ACCORDINGLY, ONLY ON A FULL RECORD AT THE CONCLUSION OF THE EVIDENCE .......... 3

IV. TRIAL EVIDENCE WILL SHOW THAT NO ELEMENT OF APPLE'S DESIGNS IS PURELY FUNCTIONAL .......... 5

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ADC Telecomms., Inc. v. Panduit Corp.*,
200 F. Supp. 2d 1022 (D. Minn. 2002) ... 4

*Best Lock Corp. v. Ilco Unican Corp.*,
94 F.3d 1563 (Fed. Cir. 1996) ... 5

*Crocs, Inc. v. ITC*,
598 F.3d 1294 (Fed. Cir. 2010) ... 1

*DePaoli v. Daisy Mfg. Co., Inc.*,
No. 07-cv-11778,
2009 U.S. Dist. LEXIS 62057 (D. Mass. July 14, 2009) ... 4

*Dexas Int'l, Ltd. v. Tung Yung Int'l, Inc.*,
No. 6:07-cv-334,
2008 U.S. Dist. LEXIS 48324 (E.D. Tex. June 24, 2008) ... 4

*Dobson v. Dornan*,
118 U.S. 10 (1886) ... 1

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ... *passim*

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed Cir. 1993) ... 5, 6

*PHG Techs., LLC v. St. John Cos.*,
469 F.3d 1361 (Fed. Cir. 2006) ... 4

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2010) ... 1, 4

*Sofpool, LLC v. Intex Rec. Corp.*,
No. 2:07-cv-097,
2007 U.S. Dist. LEXIS 93057 (E.D. Tex. Dec. 19, 2007) ... 4

*Unique Indus. v. 965207 Alta. Ltd.*,
722 F. Supp. 2d 1 (D.D.C. 2009) ... 3

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure
§ 1503.02 ... 2, 3

Apple asserts in this case the D'677 and D'087 iPhone body-style design patents, the D'305 and D'334 iPhone graphical user interface design patents, and the D'889 iPad body-style design patent. As the Federal Circuit has instructed, none should be given a detailed verbal claim construction. Rather, the figures themselves are the best descriptions of the patents' scopes. Accordingly, the Court's initial instructions to the jury on the claimed designs should be limited to points of technical guidance about design patent interpretation. *If* the Court determines that it is appropriate to instruct the jury that features of the claimed designs are purely functional rather than ornamental, and should not be considered in the infringement analysis, any such instruction should be made on a full record at the conclusion of evidence. The trial evidence, however, will show that no element of Apple's asserted patents is purely functional and thus outside the scope of infringement analysis.

## I. THE BEST DESCRIPTIONS OF THE CLAIMED DESIGN PATENTS ARE THE FIGURES ILLUSTRATING THOSE DESIGNS

The Court should not attempt to attach detailed verbal descriptions to Apple's design patents. The Federal Circuit has made this clear. "[A] design is better represented by an illustration 'than it could be by any description.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess*, 543 F.3d at 679. "[M]isplaced reliance on a detailed verbal description of the claimed design risks undue emphasis on particular features of the design rather than examination of the design as a whole." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302 (Fed. Cir. 2010); *accord Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) ("design patents are typically claimed according to their drawings, and claim construction must be adapted to a pictorial setting").

The Court's prior rulings are consistent with this approach. (*See* Dkt. No. 452 at 11 ("this Court is generally persuaded that the infringement analysis must be made based upon the overall

visual impression of the claimed designs and will avoid a detailed written claim construction to the extent practicable").)

## II. THE COURT SHOULD PROVIDE THE JURY LIMITED TECHNICAL GUIDANCE IN INITIAL INSTRUCTIONS

The Court should, however, provide instructions to the jury on how to read design patents. The Federal Circuit has endorsed this approach as well. A court "can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim." *Egyptian Goddess*, 543 F.3d at 680. "Those include such matters as describing the role of particular conventions in design patent drafting" and "assessing and describing the effect of any representations that may have been made in the course of the prosecution history." *Id*.

Here, the Court should provide the jury the following initial instructions.

**Broken lines in D'305, D'334, D'087, and D'677 patents.** For these four patents, the Court should instruct the jury that "broken lines in the patent figures form no part of the claimed design." *See* MPEP § 1503.02 (broken lines used to indicate "[s]tructure that is not part of the claimed design . . . [including] any portion of an article in which the design is embodied or applied to that is not considered part of the claimed design."). (*See also* Mazza Decl. Ex. 1 at 1 ("The broken line showing of a display screen in both views form no part of the claimed design."); Ex. 2 at 1 ("The broken line showing of the display screen or portion thereof in all views is not part of the claimed design."); Ex. 3 at 3 ("None of the broken lines form a part of the claimed design.").)

Although the D'677 patent does not include a specific statement regarding its broken lines, the Court has previously noted that "there is no reasonable alternative interpretation of the broken lines in this patent" aside from showing unclaimed matter, and that Samsung agrees with this interpretation. (Dkt. No. 452 at 17 (distinguishing cases where broken lines have been found to indicate something other than an unclaimed aspect); Mazza Decl. Ex. 4.) In fact, a broken line disclaimer statement was included in the application as filed. ( Mazza Decl. Ex. 6 at APLNDC00030455.) It was not intentionally omitted from the patent as issued by the PTO. (*Id*. at APLNDC00030641 (statement remains after final amendment).)

**Oblique lines in D'677 patent.** The Court should instruct the jury that "the oblique lines appearing in the D'677 patent indicate a transparent, translucent, or highly polished or reflective surface." *See* MPEP § 1530.02 ("Oblique line shading [is] used to show transparent, translucent and highly polished or reflective surfaces, such as a mirror.").

**D'889 patent.** The Court should instruct the jury that "the front surface of the device marked with oblique lines is a transparent surface; the dotted-line rectangle in the front surface marks an area visible beneath the transparent surface and is claimed subject matter; and the human figure shown in broken lines in Figure 9 forms no part of the claimed design." (*See* Mazza Decl. Ex. 5.) As the Court previously noted, a reasonable interpretation of the inset lines on the front surface is to indicate the "inset screen below the glass-like surface." (Dkt. No. 452 at 40 n.24.)

The D'889 prosecution history shows that the dotted lines appearing on the front surface of the D'889 design were never disclaimed. (Mazza Decl. Ex. 7 at APLNDC00032359 (no disclaimer in initially-filed specification of area shown in dotted lines).) Rather, the broken line statement, which pertains only to Figure 9, was added specifically to disclaim the human figure depicted in Figure 9. (*Id*. at APLNDC00032436, 32442-32446.) In context, the dotted-line rectangle appearing under the transparent front surface is claimed, as the Court previously found. *See Unique Indus. v. 965207 Alta. Ltd.*, 722 F. Supp. 2d 1, 10 n.2 (D.D.C. 2009) (broken lines may be considered part of the claimed design, "if it is not clear that the inventor intended to exclude those portions from the claim").

## III. THE COURT SHOULD DETERMINE WHETHER THERE ARE ANY PURELY FUNCTIONAL ELEMENTS, AND INSTRUCT THE JURY ACCORDINGLY, ONLY ON A FULL RECORD AT THE CONCLUSION OF THE EVIDENCE

The Court will also ultimately need to determine whether any features of the claimed designs are "purely functional," "driven purely by utility," or "dictated by their functional purpose." *Egyptian Goddess*, 543 F.3d at 680 (trial court's guidance to jury includes "distinguishing between those features of the claimed design that are ornamental and those that are purely functional").

This fact-intensive determination will be best be made at the conclusion of evidence. *See Richardson*, 597 F.3d 1288 (affirming district court's claim construction on functional elements rendered at conclusion of bench trial); *cf. PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365, 1367 (Fed. Cir. 2006) ("Whether a patented design is functional or ornamental is a question of fact;" "district court's determination as to whether a design is primarily ornamental is reviewed for clear error"). As many district courts have recognized, it is preferable to have a full factual record before making an "element-by-element" functionality determination, especially when the elements are in dispute. *See Dexas Int'l, Ltd. v. Tung Yung Int'l, Inc.*, No. 6:07-cv-334, 2008 U.S. Dist. LEXIS 48324, at *35-36 (E.D. Tex. June 24, 2008) (deferring consideration of functional elements until trial because of "ongoing dispute over what constitutes functional elements, and the issue being a question of fact"); *Sofpool, LLC v. Intex Rec. Corp.*, No. 2:07-cv-097, 2007 U.S. Dist. LEXIS 93057, at *5 (E.D. Tex. Dec. 19, 2007) ("it is appropriate to defer functionality determinations to trial" because it is an issue of fact); *ADC Telecomms., Inc. v. Panduit Corp.*, 200 F. Supp. 2d 1022, 1033 (D. Minn. 2002) (abstaining from determining functionality in claim construction because "[f]actual issues permeate[d the parties'] contentions").

Moreover, identifying specific design elements in initial claim construction instructions may place improper emphasis on those elements and lead the jury into an erroneous "element-by-element" view of the asserted designs. *See DePaoli v. Daisy Mfg. Co., Inc.*, No. 07-cv-11778, 2009 U.S. Dist. LEXIS 62057, at *14 (D. Mass. July 14, 2009) (a verbal construction that "describes *only* those elements that are implicated by prosecution history and functionality would place undue emphasis on those few elements. This is precisely the danger against which the *Egyptian Goddess* court cautioned.") (emphasis in original); *Dexas*, 2009 U.S. Dist. LEXIS 6642, at *12-13 (same). Deferring findings on functionality until the conclusion of evidence also has the benefit of eliminating the possibility that the Court would, on hearing the full evidence, need to alter its prior findings on what elements are functional. Such a shift in the claim construction—even if legally correct—would be confusing to jurors.

The Court, therefore, should defer its ruling on whether any features of the claimed designs are purely functional until the close of evidence.

## IV. TRIAL EVIDENCE WILL SHOW THAT NO ELEMENT OF APPLE'S DESIGNS IS PURELY FUNCTIONAL

The trial evidence will show that no elements claimed by Apple's patents are "purely functional," "driven purely by utility," or "dictated by their functional purpose." *Egyptian Goddess*, 543 F.3d at 680. Apple's industrial designers have testified that aesthetic considerations—not utilitarian ones—were determinative in creating the patented designs. (Dkt. No. 422; Mazza Decl. Ex. 8 at 38:23-41:8; 44:20-46:14; 63:21-66:4; 227:12-229:12; 240:21-20; Ex. 9 at 292:8-25; 302:24-303:24.) Their Samsung counterparts have agreed that the Apple designs were not the only way to make a functional phone or tablet. (*See, e.g.*, Mazza Decl. Ex. 10 at 30:21-24; 66:21-68:21 (admitting that Samsung designers had freedom to design the Tab 10.1 "in a number of different ways"); Ex. 11 at 31:21-32:7 (admitting other Samsung phones have curved front surfaces, which may provide functional benefits).) Even Samsung's own non-infringement expert based his analysis on a conclusion that all the features of Apple's iPhone and iPad design patents were "ornamental." (Mazza Decl. Ex. 12 at 103:2-16 (Q: "In any of the comparisons that you did, did you eliminate any elements of Apple's claims on the ground that they were functional? A: "No.").)[1]

The evidence at trial will also show that the availability of numerous alternative designs for each visual element is highly probative of non-functionality. "A design is not dictated solely by its function when alternative designs for the article of manufacture are available." *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996); *see L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed Cir. 1993) ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose.")

On the iPhone patents, the Court previously credited alternative designs in finding that only a few characteristics—"a size that can be handheld, a screen that encompasses a large portion of the front face of the smartphone, and a speaker on the upper portion of the front face of

[1] Another of Samsung's design experts testified that "purely functional" design was reserved for "space industry things, medical tools, pieces in the military, engineering gears, those kinds of things." (Mazza Decl. Ex. 13 at 108:4-8.)

the product"—may have been dictated by function. (Dkt. No. 452 at 14, citing Dkt. No. 279 at ¶¶ 87-97 and Dkt. No. 422 at ¶¶ 8-25.) But even these characteristics do not correspond to specific visual elements that actually appear in the Apple patents and therefore do not render any aspect of the specific iPhone design patents functional. In fact, the corresponding aspects of Apple's actual designs are non-functional. As the Court previously observed, there is design freedom for the display screen. (*See* Dkt. No. 452 at 14; *see also id*. at 26 (crediting "the placement and relative size of the screen" in the infringement analysis).) And a variety of screen sizes (relative to the front face), shapes, and placements can be found in the art, even when limited to touchscreen smartphones.[2]









When the fluidity of all aspects (size, shape, and placement) is considered together, the evidence at trial will show that the rectangular element shown in Apple's patents is primarily ornamental—it could have been altered to appear like any one of the visually distinct, but functional, alternative designs.

As for the speaker element, the Court previously credited Apple with identifying alternative designs having "differently shaped speakers." (Dkt. No. 452 at 14.) But even beyond shape, the evidence will show that there is significant design freedom around the location of the speaker in the upper portion, including whether to center the speaker horizontally.[3] (*See also id*. at 26-27 (crediting the "precise placement of the speaker" and "slot-shaped speaker" in the infringement analysis).)

---

[2] From left to right: D'677 patent; Samsung Sunburst; Palm Centro; Nokia X5-01.
[3] Clockwise: Sony Ericsson Xperia Arc S; LG Thrive; Nokia Lumia 800; HTC My Touch.




The evidence will show that when the design freedom available in the size, shape, and specific location of the speaker element is considered, the lozenge-shaped element that appears centered above the display in Apple's designs is primarily ornamental, as it could have been rendered in any one of the visually-distinct ways seen in the art.

Similarly, although the Court previously found that the general proposition of a screen "encompassing a large portion of the front face" could be considered functional for a tablet computer design (Dkt. No. 452 at 39-40; *see also* Dkt. No. 279 at 74-84), there will be no evidence at trial that the specific rectangular design element of the D'889 patent, with its specific placement and border, is dictated by function. In fact, the evidence will be that there is a range of relative screen sizes in the tablet computer art, and no functional requirement that the screen be centered and surrounded by a single border of uniform width, as shown in the D'889 patent. [4] Thus, the claimed rectangular design element of the D'889 patent could have been rendered differently, like any one of the visually distinct alternatives below—*i.e.*, to be somewhat smaller in relative size, to be surrounded by a two-layered border, or placed off-center on the front face—and still function as a display screen on a tablet computer.

[4] Clockwise: Corby Kyros; Iconia A500; Samsung Q1; Sony Reader.











Finally, the trial evidence will also show that no element of Apple's D'305 and D'334 patents, which claim the distinctive "home screen" of the iPhone graphical user interface, is dictated by function.[5] While the depicted graphical user interface is the interface through which users operate the various features of the phone, including making and answering calls, accessing e-mail, taking and sharing photos, none of the specific visual elements in the overall design is dictated by functional considerations.

[5] D'305 patent is depicted on the left; Fig. 2 of the D'334 patent is depicted on the right.

The non-functional nature of this design will be confirmed at trial by, *inter alia*, Apple and Samsung witnesses, Apple's iconography and graphical user interface expert witness (Susan Kare), and the multitude of aesthetic design choices seen in either the prior art or contemporaneous designs, as illustrated below.[6]







[6] From left to right: Sony Xperia Arc S; HTC HD2 T8585; Iida KDDI Infobar A01; Handspring Visor.

**CONCLUSION**

The Court should not make detailed verbal claim constructions and should instruct the jury initially only regarding the limited points of technical guidance identified above. The Court should make functionality determinations at the conclusion of evidence based on a full record and instruct the jury accordingly at that time.

Dated: June 12, 2012

MORRISON & FOERSTER LLP

By: */s/ Michael A. Jacobs*
Michael A. Jacobs
Attorneys for Plaintiff
APPLE INC.