QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S NOTICE OF MOTIONS AND MOTIONS IN LIMINE**<br><br>**Date: July 18, 2012**<br>**Time: 2:00 pm**<br>**Place: Courtroom 8, 4th Floor**<br>**Judge: Hon. Lucy H. Koh** |

**FILED UNDER SEAL**

51855/4844787.1

## NOTICE OF MOTIONS AND MOTIONS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, July 18, 2012, at 2:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") will, and hereby does move the Court for an order to:

1.    Exclude Evidence And Arguments Not Tied To The Specific Intellectual Property Rights Claimed By Apple Inc. ("Apple") In This Action;

2.    Exclude Out-Of-Court Third Party Statements About Purported Similarities Or Purported Confusion;

3.    Exclude Accused Devices, Contentions, Theories, And Witnesses Not Timely Disclosed By Apple In Infringement Contentions Or Interrogatory Responses;

4.    Exclude References To Findings Or Rulings In Other Proceedings Not Involving The Patents At Issue In This Action;

5.    Exclude Disputes And Rulings In This Action, Including Discovery Disputes And The Preliminary Injunction Ruling;

6.    Exclude Generalizations Regarding The Operation Of Accused Samsung Products;

7.    Exclude Resized Or Altered Photos Of Samsung's Products In Side-By-Side Product Comparisons;

8.    Exclude Opinions Of Terry Musika On Pre-Filing Damages, Unless And Until Apple Makes A *Prima Facie* Showing Of Entitlement To Such Damages;

9.    Exclude Samsung's Overall Revenues, Profits, Wealth And Value, And Evidence Or Argument That Samsung Has Paid Lower Taxes Than It Should Have; and

10.   Exclude Evidence And Argument That Apple Is Presently Licensed To The Declared Essential Patents-In-Suit.   This motion is unopposed.

1  These motions are based on this Notice of Motions, the supporting Memorandum of Points

2  and Authorities, the Declaration of John D'Amato in Support of Samsung's Motions *In Limine*

3  dated July 5, 2012, together with all accompanying exhibits, all pleadings on file in this action,

4  and such other evidence or argument as may be presented at or before the time these Motions are

5  deemed submitted by the Court, and such matters of which this Court may take judicial notice.

6  **SAMSUNG'S CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL**
   **PROCEDURE 16(a) AND THE COURT'S JANUARY 3, 2011 STANDING ORDER**

7

8  In accordance with Federal Rule of Civil Procedure 16(a) and the Court's January 3, 2011

9  Standing Order, Samsung hereby certifies that it has in good faith conferred with Apple in an

10 effort to resolve the parties' dispute over the admissibility of evidence that is subject to these

11 motions without the Court's intervention.   Samsung's efforts to resolve these disputes are

12 described in the Declaration of John D'Amato and exhibits attached thereto.

13 **RELIEF REQUESTED**

14 Pursuant to the Federal Rules of Evidence, Samsung seeks an Order excluding: (1)

15 excluding evidence and arguments not tied to the specific intellectual property rights claimed by

16 Apple in this Action; (2) out-of-court third party statements about purported similarities or

17 purported confusion; (3) accused devices, contentions, theories, and witnesses not timely disclosed

18 by Apple in infringement contentions or interrogatory responses; (4) references to findings or

19 rulings in other proceedings not involving the patents at issue in this Action; (5) disputes and

20 rulings in this Action, including discovery disputes and the preliminary injunction ruling; (6)

21 generalizations regarding the operation of accused Samsung products; (7) resized or altered photos

22 of Samsung's products in side-by-side product comparisons; (8) opinions of Terry Musika on pre-

23 filing damages, unless and until Apple makes a *prima facie* showing of entitlement to such

24 damages; (9) Samsung's overall revenues, profits, wealth and value, and evidence or argument that

25 Samsung has paid lower taxes than it should have; and (10) evidence and argument that Apple is

26 presently licensed to the declared essential patents-in-suit.

27

28

DATED: July 5, 2012                    Respectfully submitted,

                                       QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP


                                       By /s/    Victoria F. Maroulis
                                          Charles K. Verhoeven
                                          Kevin P.B. Johnson
                                          Victoria F. Maroulis
                                          Michael T. Zeller
                                          Attorneys for SAMSUNG ELECTRONICS CO.,
                                          LTD., SAMSUNG ELECTRONICS AMERICA,
                                          INC. and SAMSUNG
                                          TELECOMMUNICATIONS AMERICA, LLC

**SAMSUNG'S MOTIONS IN LIMINE**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

A. Motion # 1:   Exclude Evidence Or Argument Not Tied To The Specific IP
Rights Claimed By Apple in This Action .............................................................. 1

B. Motion #2:   Exclude Out-of-Court Third-Party Statements About Purported
Similarities or Purported Confusion...................................................................... 7

C. Motion #3:   Exclude Accused Devices, Contentions, Theories, and
Witnesses Not Timely Disclosed In Infringement Contentions Or
Interrogatory Responses ..................................................................................... 10

D. Motion #4:   Exclude Reference to Findings or Rulings In Other
Proceedings Not Involving The Patents At Issue In This Case............................ 15

E. Motion #5:   Exclude Disputes and Rulings in this Action, Including
Discovery Disputes and the Preliminary Injunction Ruling.................................. 16

F. Motion #6:   Exclude Generalizations Regarding the Operation of Accused
Samsung Products .............................................................................................. 17

G. Motion # 7:   Exclude Resized or Altered Photos of Samsung's Products in
Side-by-Side Product Comparisons ..................................................................... 18

H. Motion # 8:   Exclude Any Evidence of Pre-Filing Notice Other Than
Identified In Apple's Interrogatory Response and Provisionally Exclude Mr.
Musika's Opinions on Pre-Filing Damages Unless and Until Apple Makes a
*Prima Facie* Showing of Entitlement to Such Damages......................................... 19

I. Motion #9:   Exclude Evidence of Samsung's Overall Revenues, Profits,
Wealth and Value and Evidence or Argument that Samsung has paid Lower
Taxes Than It Should Have ................................................................................. 21

J. Unopposed Motion# 10:   Exclude Evidence and Argument that Apple is
Presently Licensed to the Declared Essential Patents-in-Suit................................ 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alkhatib v. Steadman*,
201 WL 5553775 (S.D. Ala. 2011) ...................................................................8

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
6 F.3d 1523 (Fed. Cir. 1993) ...................................................................20

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ...................................................................5

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
24 F.3d 178 (Fed. Cir. 1994) ...................................................................20, 21

*Apple, Inc. v. Motorola, Inc.*,
Case No. 1:11-cv-08540, Order of May 31, 2012 ...................................................5, 16

*Asyst Techs, Inc. v. Emtrak, Inc.*,
544 F.3d 1310 (Fed. Cir. 2008) ...................................................................2

*The Coryn Group II, LLC v. O.C. Seacrets, Inc.*,
2011 WL 862729 (D. Md. March 10, 2011) ...................................................................24

*CVI/Beta Ventures, Inc. v. Tura L.P.*,
112 F.3d 1146 (Fed. Cir. 1997) ...................................................................17

*In re GPac*,
57 F.3d 1573 (Fed. Cir. 1995) ...................................................................3

*General Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983) ...................................................................24

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*,
302 F.3d 1352 (Fed. Cir. 2002) ...................................................................17

*Jones v. C.H. Robinson Worldwide, Inc.*,
558 F. Supp. 2d 630 (W.D. Va. 2008) ...................................................................22

*La Plante v. Am. Honda Motor Co., Inc.*,
27 F.3d 731 (1st Cir. 1994) ...................................................................22

*Mars, Inc. v Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008) ...................................................................24, 25

*Mennick v. Smith*,
459 F. App'x 649 (9th Cir. 2011) ...................................................................26

*Microstrategy Inc. v. Business Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) ...................................................................15

*Nike, Inc. v. Walmart Stores, Inc.,*
    138 F.3d 1437 (Fed. Cir. 1998) ................................................................................20

*Nora Beverages, Inc. v. Perrier Group of America, Inc.,*
    269 F.3d 114 (2d Cir. 2001) ......................................................................................9

*Oracle USA, Inc. v. SAP AG,*
    264 F.R.D. 541 (N.D. Cal. 2009) ............................................................................21

*Poly-America, L.P. v. GSE Lining Technology, Inc.,*
    383 F.3d 1303 (Fed. Cir. 2004) ...............................................................................24

*QVC, Inc. v. MJC America,*
    2012 WL 33026 (E.D. Pa. 2012) ...............................................................................8

*Richardson v. Stanley Works,*
    597 F.3d 1298 (Fed. Cir. 2010) .................................................................................4

*SPX Corp. v. Bartec USA, LLC,*
    2008 U.S. Dist. LEXIS 29235 (E.D. Mich. Apr. 10, 2008) ....................................16

*Shimozono v. May Department Stores Co.,*
    2002 WL 34373490 (C. D. Cal. 2002) .......................................................................7

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
    739 F.2d 1415 (9th Cir. 1984) .................................................................................17

*T. Harris Young & Assoc., Inc. v. Marquette Electronics, Inc.,*
    931 F.2d 816 (11th Cir. 1991) ...................................................................................8

*Tokai Corp. v. Easton Enters.,*
    632 F.3d 1358 (Fed. Cir. 2011) .................................................................................3

*Transclean Corp. v. Bridgewood Servs., Inc.,*
    77 F. Supp. 2d 1045 (D. Minn. 1999), aff'd, 290 F.3d 1364 (Fed. Cir. 2002) .........15

*United States of America v. Pazsint,*
    703 F.2d 420 (9th Cir. 1983) ................................................................................7, 8

*United States v. Alexander,*
    106 F.3d 874 (9th Cir. 1997) ...................................................................................26

*Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.,*
    22 F.3d 1527 (10th Cir. 1994) ...................................................................................9

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.,*
    259 F.3d 1101 (9th Cir. 2001) .................................................................................21

## Statutes

15 U.S.C. § 1117(a) ........................................................................................................24

15 U.S.C. 1117(a)(3) ......................................................................................................24

**SAMSUNG'S MOTIONS IN LIMINE**

35 U.S.C. § 112(6) ...........................................................................................................................11

35 U.S.C. § 289 .................................................................................................................................24

35 U.S.C. § 287 .................................................................................................................................20

Fed. R. Civ. P. 26 .......................................................................................................................15, 16

Fed. R. Evid. 403.........................................................................................................................16, 17

Fed. R. Evid. 801-803 ........................................................................................................................2

Fed. R. Evid. 803(6) ..........................................................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to the Court's May 2, 2012 Minute Order and Case Management Order, Samsung moves *in limine* to exclude the categories of evidence and argument described below.

**A.   Motion # 1:   Exclude Evidence Or Argument Not Tied To The Specific IP Rights Claimed By Apple in This Action**

As the Court is aware, Apple's claims are premised on specific alleged utility and design patent and trade dress rights.   Apple's trade dress claims identify particular claimed features of its iPhone and iPad devices that collectively comprise the claimed trade dress.   (Dkt. No. 75 (Apple's Am. Compl.) ¶¶ 57-68.)   For example, Apple alleges its "iPhone Trade Dress" to include specific features such as: a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic bezel around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen; and, when the device is on, both a matrix of colorful square icons with evenly rounded corners within the display screen and a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.   (*Id*. ¶ 57.)   Notably, the claimed trade dress does not include such prominent features as the home button on the front of the device, or the Apple logo on the back. Nor, of course, does it include any of the features that determine how the device performs, as opposed to how it looks, including the phone, web browsing, camera functions, or video face time calls.   Apple's design patents are similarly limited in scope, claiming for example only the front surface and/or the bezel of an electronic device, not the overall exterior.   They do not claim curved sides or rear surface, or even Apple's "home screen" button, which it represented to the PTO is a "distinctive" and "prominent" feature of every version of the iPhone since Apple announced the original iPhone in 2007.   (Dkt. No. 1068-13.)

Notwithstanding the limited scope of the purported rights at issue, Apple intends to turn this trial into a popularity contest in its home town, by inundating the jury with hearsay evidence from various media sources, presented by its "expert" witnesses, touting the greatness of all things

**SAMSUNG'S MOTIONS IN LIMINE**

1   Apple.   This strategy was previewed in Apple's complaint, where, in a section called "Apple's

2   Innovations," Apple describes how the iPhone supposedly "revolutionized the telecommunications

3   industry" and references media coverage of the device.   (Dkt. No. 75 ¶¶ 13-25.)   More recently,

4   in opposition to Samsung's summary judgment motion, Apple presented through its "expert" Peter

5   Bressler selected snippets from various publications touting the iPhone.   For example, Mr.

6   Bressler quoted an RBC Capital Markets analyst report commenting that "Apple's iPhone in June

7   2007 disruptively raised the standard for a new kind of Smartphone design and user experience,

8   breaking sales launch records, sparking competitive responses, and *defying accepted conventions*."

9   (Dkt. No. 1022-02 (Bressler Decl.) ¶ 81 (emphasis in original).)   Apple's marketing "expert"

10  Russell Winer similarly relies on general media coverage of Apple's products.   (Dkt. No. 1023-

11  02a (Rebuttal Report of Russell Winer) ¶¶ 57-70.)

12       This strategy includes Apple's experts testifying to Apple's "brand identity" and "brand

13  equity" even though it has no claim in this case for infringement or dilution of Apple's "brand."

14  (*See e.g., id.* ¶¶ 38-46 (brand identity) and ¶¶ 73-81 (brand equity); Dkt. No. 927-29 (Expert

15  Report of Sanjay Sood) ¶¶ 31, 57-62 (brand equity and value of the Apple brand not tied to the

16  specific rights claimed by Apple in this action).)   Apple's experts even opine on the purported

17  importance of design to Apple and/or Steve Jobs, without any connection to the specific

18  intellectual property rights claimed by Apple in this action.   (*See e.g.*, Dkt. No. 927-29 ¶¶ 39-43.)

19       All of this evidence is hearsay.   It consists of out-of-court statements being offered by

20  Apple to prove the truth of the statements made therein.   Because there is no relevant exception to

21  the hearsay rule covering these articles, they are inadmissible.   *See generally* Fed. R. Evid. 801-

22  803.   They are also legally irrelevant.   Apple has argued that this evidence is relevant to establish

23  secondary considerations of non-obviousness.   But in order for secondary consideration evidence

24  to be relevant, it must be tied to the patented features of the device.   *Asyst Techs, Inc. v. Emtrak,*

25  *Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008) (citation omitted) (noting that no evidence showed that

26  the commercial success of the "overall system" was attributable to the patented invention).   The

27  evidence Apple seeks to introduce is directed generally to the success of Apple's iPhone and/or

28  iPad products, rather than the specific claimed features of the design patents-in-suit.   And even

**SAMSUNG'S MOTIONS IN LIMINE**

the articles that do identify specific features – such as the "shiny" bezel – those particular features are not part of the asserted design patents or claimed trade dress.   Moreover, while Apple cites to articles, studies, and surveys purporting to show that the appearance of the iPhone is something people find attractive or even important, Apple presents no evidence suggesting that purchasers buy iPhones *because of* the patented features or its claimed trade dress as opposed to buying it for other reasons – such as the ability to browse the internet, watch videos, play games, read and compose emails, download applications or numerous other functions.   (*See* Dkt. No 1068-09 (A. Hedge 4/30/12 Dep. at 194:17-20 ("if a smartphone was extremely attractive but didn't work as a smartphone, then you might buy it as a piece of sculpture, but you wouldn't buy it as a smartphone").).)[1]   As such, there is no nexus between the evidence and the asserted claims of the patents, and the evidence cannot therefore support a finding of commercial success.   *Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011) ("[A] nexus must exist between the commercial success and the claimed invention").   *See also In re GPac*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) (patentee's burden to establish a nexus between any secondary considerations, such as commercial success, and the limitations recited in the asserted claims).   *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, -- F.3d ---, 2012 WL 2367947, at *5 (Fed. Cir. 2012) ("for commercial success to be probative evidence of nonobviousness, a nexus must be shown between the claimed invention and the evidence of commercial success").

        In addition to seeking to introduce "puffery" concerning the success of the iPhones or iPads that is unrelated to the particular design patents or trade dress at issue, Apple also seeks to introduce at trial evidence Apple and its "experts" claim shows that Samsung copied Apple's designs.   (*See, e.g.* Dkt. No. 1022-02 ¶¶ 88-104.)   But the articles Apple claims show "copying" are both hearsay and untethered to the particular features claimed in the design patents and trade

---

[1]   Apple's consumer survey data does not accurately attribute any percentage of sales to the iPhone's industrial design, and Apple's own expert Winer testified that he did not know what percentage of people purchased certain Apple products because of how they look as opposed to other iPhone features or functions.   (*See, e.g.*, Dkt. No. 1068-10 (R. Winer 4/27/12 Dep. at 271:10-16).)

**SAMSUNG'S MOTIONS IN LIMINE**

1  dress at issue.   The internal Samsung documents that Apple relies on also fail to provide the

2  required nexus between the claimed rights and the alleged copying.   For example, Mr. Bressler

3  refers to an internal Samsung design strategy document noting that Samsung's own designers

4  prefer a "simple" and "minimal" design philosophy.   (*Id.* ¶ 96.)   None of Apple's IP at issue in

5  this case claims exclusive rights to a "simple" or "minimal" design philosophy.   The kind of

6  internal competitive analyses Apple and its experts rely upon constitute a normal part of the

7  cellular and consumer electronics industries; they are prepared by every company, including

8  Apple.   *Wm. Wrigley Jr. Co.*, -- F.3d at --, 2012 WL 2367947, at *6 ("[i]n some cases, evidence

9  that a competitor has copied a product *embodying a patented invention* can be an indication of

10  nonobviousness. . . . [However,] just as with the commercial success analysis, a nexus between the

11  copying and the novel aspects of the claimed invention must exist for evidence of copying to be

12  given significant weight in an obviousness analysis.") (emphasis added) (citations omitted).

13        Similarly, Apple points to documents such as an internet article entitled: "Samsung Vibrant

14  Rips Off iPhone 3G Design" (D'Amato Decl. Ex. A) and an internet article in PC World saying

15  "[t]he design is actually very iPhone 3GS-like with an all black, shiny plastic body and minimal

16  buttons on the phone's face" (*Id.* Ex. B) and an email from a third party saying (as translated by

17  Apple): "[n]ot just the shape, but even the packaging looks like it copied the iPhone too much, and

18  innovation is needed" -- as purported evidence of "copying."   (*Id.* Ex. C.)   The third party

19  statements are inadmissible as hearsay, and all of these materials are inadmissible because there is

20  no demonstrated connection to the specific IP rights in this case.   Nor do they filter out any

21  similarities resulting from functionality considerations, as is required for a proper assessment of

22  similarity for design patent purposes.   *Richardson v. Stanley Works*, 597 F.3d 1298, 1293 (Fed.

23  Cir. 2010) ("[w]here a design contains both functional and non-functional elements, the scope of

24  the claim must be construed in order to identify the non-functional aspects of the design as shown

25  in the patent."*)* (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir.

26  1997)).

27        Without reference to an alleged invention of any of the patents-in-suit, such evidence

28  cannot constitute either acceptance of the desirability of the invention by Samsung or evidence of

**SAMSUNG'S MOTIONS IN LIMINE**

1   Samsung's copying of that invention.   As a result, these documents have no relevance to the

2   issues to be presented at trial.   *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d

3   1343, 1366 (Fed. Cir. 2001) ("[E]vidence of copying [the patentee's product] is legally irrelevant

4   unless the [product] is shown to be an embodiment of the claims").

5          For similar reasons, the Court should preclude Apple from presenting evidence regarding

6   former Apple CEO Steve Jobs, unless that evidence is specifically related to one of the claimed

7   patents at issue.   Mr. Jobs is a popular figure to some and has become even more so since his

8   recent death.   Yet while he was a named inventor on some of the patents-in-suit, he was not

9   deposed before his death, and his relevance to the particular issues raised by Apple's claims is

10  minimal, at best.   Apple should not be permitted to curry favor with the jury unrelated to the

11  substance of its claims by presenting evidence relating to its former CEO.

12         Apple's attempt to turn an IP trial into a popularity contest was recently rejected in another

13  case.   Sitting by designation, Seventh Circuit Judge Richard Posner excluded this very sort of

14  evidence, including purported secondary considerations evidence of commercial success and

15  copying:

16         Apple will not be permitted to present media articles or equivalent publicity praising
           features of the iPhone or iPad (or the Apple company, Steve Jobs, or Apple products in

17         general) unless they mention (or can be shown to be referring to) claim elements that
           Apple alleges Motorola infringes or that Motorola argues were anticipated or obvious and

18         that that are actually in dispute.   If the articles or other publicity do not praise an element
           in suit, they are irrelevant to any legal issue in the case, and can only confuse the jury. . . .

19
           More broadly, I forbid Apple to insinuate to the jury that this case is a popularity contest
20         and that jurors should be predisposed to render a verdict for Apple if they like Apple
           products or the Apple company or admire Steve Jobs, or if they dislike Motorola or
21         Google. The overall quality of the products involved in the litigation is irrelevant to the
           legal issues.   (D'Amato Decl. Ex. D (*Apple, Inc. v. Motorola, Inc.*, Case No.
22         1:11-cv-08540, Order of May 25, 2012 (N.D. Ill.)) at 3.)[2]

23         _____

24         [2]   Judge Posner reaffirmed his rationale in a more recent decision denying Apple injunctive
25   relief:
           "[T]he quality of the iPhone (and of related Apple products, primarily the iPad) and
26   consumers' regard for it have, so far as the record shows, nothing to do with the handful of patent
     claims that I had ruled presented triable issues of infringement.   Apple's 'feel good' theory does
27   not indicate that infringement of *these* claims (if they were infringed) reduced Apple's sales or
     market share, or impaired consumer goodwill toward Apple products.   Typical is the statement in
28         (footnote continued)

1    The potential prejudice to Samsung from Apple's proffered "feel good" evidence is even

2    greater here, where the case is being tried before a jury in Apple's home town.   Accordingly, the

3    Court should bar Apple from presenting any evidence of supposed third-party praise, copying, or

4    regarding Steve Jobs, that does not expressly relate to the claimed features of the design or utility

5    patents or trade dress at issue.   To the extent Apple believes any of the evidence it seeks to

6    introduce satisfies this requirement, the Court should require it to submit the evidence in advance,

7    so Samsung and the Court can address it before it is shown to the jury.

8    Conversely, Apple should not be allowed to make allegations of wrongdoing by Samsung

9    that are not tied to the claims asserted by Apple in this case.   During the deposition of former

10   Samsung Vice Chairman and CEO Gee-Sung Choi, Apple counsel asked whether Samsung had

11   improperly shared with its Mobile Communications division information regarding the volume of

12   Apple's purchases of Samsung microchips from Samsung's Semiconductor business unit known

13   as System LSI.   Over relevance objections by Samsung counsel, Mr. Choi denied the accusation,

14   and affirmed that "[a]s a matter of principle, the company does not disclose [this] kind of

15   information."   (D'Amato Decl. Ex. E (G.S. Choi 4/17/2012 Dep.) at 17:23-20:8.)

16   Unsubstantiated allegations regarding improper sharing of Apple confidential information are

17   entirely irrelevant to the issues to be tried, and can only serve to prejudice Samsung.   The Court

18   should bar Apple from asking witnesses questions regarding any such allegations, or including any

19   such references in its argument to the jury.

20

21

22

23   _____

24   Apple's brief of June 18 that 'an Apple survey identified watching streaming videos from

25   YouTube among the top ten planned activities for consumers using iPads in the United States.'
     The '263 patent in issue in this litigation is not a claim to a monopoly of streaming video!   Apple

26   is complaining that Motorola's phones *as a whole* ripped off the iPhone *as a whole*.   But
     Motorola's desire to sell products that compete with the iPhone is a separate harm – and a

27   perfectly legal one – from any harm caused by patent infringement."   (D'Amato Decl. Ex. F
     (*Apple, Inc. v. Motorola, Inc.*, Case No. 1:11-cv-08540, Order of June 22, 2012) at 30-31.)

28

**B.     Motion #2:   Exclude Out-of-Court Third-Party Statements About Purported Similarities or Purported Confusion**

Apple has questioned witnesses at deposition regarding documents it claims show actual confusion between Samsung's accused products and Apple's claimed designs or trade dress. Each of the documents contains multiple levels of hearsay, and none of them are relevant to show actual confusion, as they do not address Apple's specific claimed designs or trade dress.   Because they do not address the claims at issue in this case, the prejudicial effect of these documents far outweighs their probative value.

One set of documents relate to an internal Samsung report of a mid-2011 task force visit by Samsung personnel to a number of Best Buy stores in three regions of the United States, seeking information regarding the reasons for returns of Samsung's tablet device.   (D'Amato Decl. Ex. G.)   The report was based upon conversations with Best Buy employees, one of whom is reported to have said that an unidentified number of customers returned their Samsung tablet device because they thought they had purchased an Apple iPad2.   (*See id.* Ex. H (S. Lee 2/24/12 Dep. at 20-21, 27.))   This evidence is quadruple hearsay being introduced for the truth of purported statements by unidentified customers trying to justify a refund that they had mistakenly believed a Samsung tablet was an Apple iPad2.   The customer statements are hearsay level 1.   The statement is then reported by a Best Buy representative to a Samsung representative, representing hearsay level 2.   The report of that Best Buy conversation was then made to the Samsung employee who prepared the report, hearsay level 3.   The resulting report is hearsay level 4.

Courts have recognized that this sort of internal survey-based evidence is inadmissible hearsay and does not qualify for admission under the business records exception, Fed. R. Evid. 803(6).   That rule only applies "where the person furnishing the information is 'acting routinely, under a duty of accuracy, with the employer reliance on the result, or in short 'in the regular course of business.'"   *Shimozono v. May Department Stores Co.*, 2002 WL 34373490, at *14 (C. D. Cal. 2002) (quoting *United States of America v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983)). "If the records contain information obtained from a customer, thus constituting hearsay within hearsay, the records will come within the business records exception only 'if it is shown that the

1    business's standard practice was to verify the information provided.'"   *Id*.   "The problem is that

2    the customer is under no duty to report accurately."   *Id*. (excluding customer survey response

3    cards).   *See also QVC, Inc. v. MJC America*, 2012 WL 33026, at *2 (E.D. Pa. 2012) (business

4    records exception cannot be used to admit customer complaints or customer complaint logs for

5    their truth); *Alkhatib v. Steadman*, 201 WL 5553775, at * 8 (S.D. Ala. 2011) (business records

6    exception inapplicable to anonymous university faculty survey results).   In *T. Harris Young &*

7    *Assoc., Inc. v. Marquette Electronics, Inc.*, 931 F.2d 816 (11th Cir. 1991), the court considered the

8    admissibility of a telephone survey, where interviewers allegedly wrote down what hospital

9    employees reported that they had been told by employees of the defendant.   In rejecting

10   application of the business records exception, the Eleventh Circuit noted that "[f]or this exception

11   to be available, all persons involved in the process must be acting in the regular course of business

12   – otherwise, an essential link in the trustworthiness chain is missing."   *Id*. at 828.

13          Here, Apple seeks to introduce the task force report for the truth of the matter asserted –

14   namely, that customers supposedly were confused into believing that a Samsung tablet was

15   actually an iPad2.   But neither the customers whose statements were taken by Best Buy

16   employees, nor the Best Buy employees themselves, were acting in the regular course of

17   *Samsung's* business.   Nor is there any evidence that it was Samsung or Best Buy's regular

18   practice to prepare this very kind of customer report.   Indeed, it is at least as likely that the

19   customer intended to purchase the Samsung product (whose packaging prominently features the

20   Samsung logo and labeling), decided they did not want it, and feigned confusion as an excuse to

21   justify their request for an iPad2 instead.   Given that none of the supposedly confused customers

22   —nor the Best Buy employee—is available for cross-examination, the Court should exclude this

23   evidence as inadmissible hearsay.

24          Hearsay aside, the evidence should be excluded under Fed. R. Evid. 401 and 403.   There

25   is no evidence that any confusion reported in the document was predicated on the particular

26   features Apple is claiming as part of its patented designs or trade dress, as opposed to unclaimed

27   features.   Absent such a showing, a general report of confusion is not relevant and would be

28   highly misleading and prejudicial to Samsung.   Nor is there any evidence tending to show that the

1    customers in question are typical consumers of Samsung's tablets or that, even if accurate, the

2    experience of a few customers can be extrapolated into reliable evidence of confusion.   *See, e.g.,*

3    *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, (2d Cir. 2001) ("we do not

4    believe that the district court erred in finding that two anecdotes of confusion over the entire

5    course of competition constituted de minimis evidence insufficient to raise triable issues.");

6    *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.,* 22 F.3d 1527, 1535 (10th Cir. 1994) ("De

7    minimis evidence of actual confusion does not establish the existence of a genuine issue of

8    material fact regarding the likelihood of confusion[.]").

9         Another document Apple has relied upon is a tracking survey report provided to Samsung

10    by a third-party vendor.   (D'Amato Decl. Ex. I; *see also* Ex. J (Benner 2/22/12 Dep. at 127-29).)

11    Respondents of the tracking survey were shown still photos of a Samsung television ad for the

12    original Galaxy Tab, and asked whether they recalled seeing the ad within the last 5 to 7 days.

13    If they said yes, they were then asked what product was featured in the ad.   The document in

14    question reports that in the relevant period, 46% of the respondents mis-identified the ad as

15    promoting an Apple tablet.   (*Id*. Ex. I at SAMNDCA00352140; Ex. J at 142:22-143:4.

16         This document should also be excluded.   First, Apple is no longer claiming that version of

17    the Tab infringes the iPad trade dress.   (Dkt. No. 1178 (Joint Case Narrowing Statement) ¶ A.)

18    Accordingly, it is no longer relevant and should be excluded under Rule 401 and 403.   Second, it

19    contains multiple layers of hearsay and does not fall within the business records exception or any

20    other hearsay exception.   The document is produced by a third party vendor, and purports to

21    reflect customer responses to survey questions.   Third, the survey was done at a time when

22    Samsung's first Tab had only just been introduced, whereas Apple's iPad had been on the market

23    for more than six months, saturating the media as *the* tablet computer.   (D'Amato Decl. Ex. J at

24    145:14-18; 146:19-24.)   According to Timothy Benner, the Samsung employee listed as the

25    "owner" of the document, "[t]he issue wasn't that it was confusing, the issue was that the iPad had

26    been very firmly established in the marketplace, and so when people saw an ad on TV that had a

27    large tablet-like display, the immediate reaction is it must be an iPad."   (*Id*. at 147:25-148:5.)

28

**SAMSUNG'S MOTIONS IN LIMINE**

1    Moreover, the photos that were shown to the respondents in the survey were not restricted

2    to the particular features that Apple is claiming comprise its patented design features or iPad trade

3    dress.   In fact, respondents were not shown a photo of the Samsung tablet device at all; rather

4    they were looking at a photo which showed six different scenes from the advertisement for that

5    product.   Not all of those photos had product in the images.   (*Id*. at 144:8-17.)   It would be

6    highly misleading and prejudicial for Apple to present this evidence to the jury, claiming it shows

7    that customers were confused about the Galaxy 10.1 based on supposed similarities between the

8    original Galaxy Tab (a 7" device with a different industrial design) and the claimed features of

9    Apple's iPad trade dress.[3]

10   **C.     Motion #3:   Exclude Accused Devices, Contentions, Theories, and Witnesses
            Not Timely Disclosed In Infringement Contentions Or Interrogatory**
11          **Responses**

12   On multiple occasions during the course of this litigation, the rules of this Court and the

13   Federal Rules of Civil Procedure have required Apple to provide adequate and timely notice to

14   Samsung regarding what products Apple alleges infringe its trade dress, trademark and design and

15   utility patents.   On August 26, 2011, Apple served its Infringement Contentions per Local Patent

16   Rule 3-1, which required that Apple identify for the asserted utility patents "[s]eparately for each

17   asserted claim, each accused apparatus, product, device, process, method, act, or other

18   instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. . .

19   as specific as possible" and a chart "identifying specifically where each limitation of each asserted

20   claim is found within each Accused Instrumentality, including for each limitation that such party

21   contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s)

22   in the Accused Instrumentality that performs the claimed function."   L.P.R. 3-1(b)-(c).   In its

23   Infringement Contentions, Apple identified 26 specific accused devices.   (Dkt. No. 801-5.)

24   _____

25   [3]     Apple's use of such evidence has not been limited to these two documents.   (*See, e.g.*
     D'Amato Decl. Ex. K (alleged comments from developers); Ex. L (alleged comments from
26   Google meeting); Ex. M at SAMNDCA10167857 (alleged comment from Google); Ex. N at
     SAMNDCA10969930-932 (alleged comment from professor); Ex. Y at SAMNDCA00250866
27   (alleged consumer comment).)   Any such types of evidence should be excluded.

28

1    Apple also served an Addendum to its Disclosure of Asserted Claims and Infringement

2    Contentions, identifying one additional specific device – the Galaxy S II.   (Dkt. No. 801-6.)

3    Apple did not identify the Epic 4G Touch, Skyrocket, Galaxy Tab 10.1 LTE, Gravity Smart, or

4    Galaxy S Showcase (i500) in its infringement contentions, nor did it provide any detailed charts

5    required under L.P.R. 3-1(b)-(c) for the Galaxy S II product.

6         Samsung's Interrogatory No. 5 also required Apple to identify, by September 12, 2011,

7    "every product manufactured, used, sold, offered for sale, or imported into the United States since

8    2005 that [Apple] believe[d] uses or may use any protected design, trademark, trade dress, or

9    invention of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS, and APPLE

10   TRADEMARKS and the date(s) on which you believe that use occurred."   Apple served its

11   response on September 12, 2011.   (D'Amato Decl. Ex. P (Apple's Objections and Responses to

12   Samsung Electronics Co. Ltd.'s First Set of Interrogatories).)   Apple did not identify the Galaxy S

13   II, the Epic 4G Touch, the Skyrocket, Gravity Smart or the Galaxy Tab 10.1 LTE in its response.

14   (*See id.*)

15        Since then—for nearly *6 months*—Apple did not amend either its Infringement

16   Contentions or its response to Interrogatory No. 5.   Not until March 2012, on the very last day of

17   discovery, and after the scheduled discovery cut-off,, did Apple serve an amended response to

18   Interrogatory No. 5 that purported to expand the scope of Apple's infringement allegations and

19   accuse *new products* of infringing Apple's utility patents, design patents, trademarks and trade

20   dress.    (D'Amato Decl. Ex. Q (Apple's Second Amended Objections and Response to Samsung

21   Electronics Co. Ltd.'s Interrogatory No. 5).)

22        The Court should reject Apple's last minute effort to expand the scope of the accused

23   Samsung products.   Indeed, in February 2012, Apple vigorously opposed Samsung's request to

24   amend its infringement contentions to add Apple's iPhone 4S, arguing that adding a new device

25   with only a month remaining in discovery would leave the parties "little time to conduct

26   discovery" and risk "delaying the existing expedited trial schedule."   (Dkt. No. 713 at 1.)   But

27   Apple went even further, arguing that the parties' dispute over the scope of any discovery relating

28   to the additional products both parties wanted to add "confirm[ed] that no additional products –

1   *whether Apple's or Samsung's* – should be added to this case at this time."   (*Id.* at 7 (emphasis

2   added).)   Based on Apple's representations, the Court denied Samsung's request to add the

3   iPhone 4S.   (Dkt. No. 836 at 12.)

4           Having succeeded in defeating Samsung's request to add one product to this case by

5   amending its complaint, and having argued that neither party should be permitted to add new

6   products after February 3, 2012, when it filed its opposition to Samsung's motion to amend its

7   infringement contentions, Apple should be barred from asserting at trial any utility patent claims

8   with respect to Samsung products that were not identified in its Infringement Contentions served

9   on August 26, 2011.   Apple clearly knew that at least the Skyrocket, Epic 4G Touch, Gravity

10  Smart, and Galaxy 10.1 LTE were *not* covered by its infringement contentions: Apple asked

11  Samsung to stipulate that these new products should be added to the case in March 2012 (Dkt. No.

12  801-8), and after Apple failed to get a stipulation, Apple unilaterally added the new products to its

13  interrogatory response.   Such amendment would not have been necessary if Apple had complied

14  with its obligations under the local patent rules to identify the products in its Infringement

15  Contentions.

16          Apple also should be barred from asserting at trial any design patent or trade dress claims

17  with respect to any products not identified in Apple's original response to Samsung's contention

18  Interrogatory No. 5, served on September 12, 2011.   Apple waited until March 2012 to identify

19  the following products as accused products for Apple's design patent, trade dress, and trademark

20  claims: Galaxy S2 i9100, Galaxy S2 Epic 4G Touch, Galaxy S2 (T-Mobile), Galaxy S2 (AT&T),

21  and Galaxy S2 Skyrocket.   Apple also waited until March 2012 to accuse the Captivate, Galaxy

22  Ace, Droid Charge, Continuum, Epic 4G, and Galaxy Tab 7.0 Plus of trade dress claims.   Apple

23  further delayed until March 2012 to identify the Acclaim, Indulge, Intercept, Galaxy S i9000, and

24  Galaxy Tab 7.0 Plus as accused products for its trademark claims.

25          Apple thus should be barred from asserting at trial infringement or trade dress claims

26  against the following products identified for the first time in Apple's recently served supplemental

27  interrogatory response: Galaxy S2 Epic 4G Touch; Galaxy S2 i9100; and Galaxy S2 Skyrocket

28  ('002, '891, '163 '915, and '828 patents); Galaxy S2 Epic 4G Touch ('381 patent); Galaxy S2

1  Epic 4G Touch; Galaxy S2 i9100; and Galaxy S2 Skyrocket; Galaxy S2 (T-Mobile); Galaxy S2

2  (AT&T) (D'087, D'677 and D'270 patents); Galaxy S2 i9100, Galaxy S2 Epic 4G Touch, Galaxy

3  S2 (AT&T), Galaxy S2 (T-Mobile), Galaxy S2 Skyrocket (all iPhone Trade Dress claims); and

4  Galaxy Tab 7.0 Plus (all iPad Trade Dress claims).   Apple should also be precluded from

5  broadening its claims against existing accused products based on the late notice provided in its

6  March 2012 interrogatory responses.

7         Apple should similarly be prevented from offering argument or testimony on theories and

8  contentions it withheld during discovery despite interrogatory requests from Samsung.   In

9  particular, Apple should be limited in its infringement arguments for its design patents to the level

10  of detail it included in its interrogatory responses.   Samsung's Interrogatory No. 72 sought the

11  following: "Separately for each SAMSUNG product that YOU contend infringes any APPLE

12  DESIGN PATENT, state fully and in detail on a patent-by-patent basis all facts supporting YOUR

13  contention of infringement."   (D'Amato Decl. Ex. R (Samsung's Fourth Set of Interrogatories to

14  Apple) at 23.)   Apple's response was beyond perfunctory.   Here are the responses it provided by

15  patent:

16         • D'305: "Each accused Samsung product incorporates an array of icons that is

17            substantially the same in overall visual appearance as the design claimed in the

18            D'305 Patent."   (*Id.* Ex. S (Apple's Objections and Responses to Samsung's

19            Fourth Set of Interrogatories) at 144.)

20         • D'087: "Each accused Samsung product incorporates a front face and bezel that is

21            substantially the same in overall visual appearance as the design claimed in the

22            D'087 Patent." (*Id.* at 99.)

23         • D'677: "Each accused Samsung product incorporates a front face that is

24            substantially the same in overall visual appearance as the design claimed in the

25            D'677 Patent." (*Id.* at 111.)

26         • D'889: "Each accused Samsung product incorporates a body and front face that is

27            substantially the same in overall visual appearance as the design claimed in the

28            D'889 Patent." (*Id.* at 97.)

1    Apple then included side-by-side images of the patents and Samsung products.   (*Id*. at 97-

2    122, 144-51.)

3    Apple should also be prevented from arguing or submitting evidence that it factored out

4    any functional elements from its patented designs before performing the infringement analysis to

5    determine whether any purported similarities between the accused products and the Apple patents

6    were due only to the remaining ornamental features.   The reason for this is that Apple continues

7    to maintain that no aspect of its designs are functional, despite this Court's ruling and their

8    experts' admissions to the contrary.   (*See* Dkt. No. 449 (Order on Preliminary Injunction Motion)

9    at 15, 39-40; Dkt. No. 1136 (Apple's Response to Samsung's Opening Design Patent Claim

10   Construction Brief) at 9-13; Dkt. No. 1090 (Samsung's Opening Design Patent Claim

11   Construction Brief (Filed Under Seal on June 12, 2012) at 5, 12.)   Apple's discovery responses

12   confirm that it believes there are no functional elements in its designs.   (*Id*. Ex. S at 61-65.)   So,

13   as in its infringement interrogatory responses above, Apple refused to factor out any features as

14   functional in its infringement contentions.   (*Id*. at 72 ("No aspect of the designs in the asserted

15   design patents is dictated by function.   Thus, no aspect of the designs should be factored out for

16   purposes of determining whether Samsung's devices infringe the D'889, D'087, D'677, D'270,

17   D'790, D'334, and D'305 Patents.")   Apple should be precluded from offering new and

18   previously undisclosed evidence or argument purporting to show that any similarity between the

19   Apple patent and the Samsung product is due to the remaining ornamental features.

20   Finally, Apple should also be precluded from introducing any evidence at trial solely

21   directed to supporting an indirect theory of infringement of its design patents.   Apple failed to

22   articulate any such theory in its Complaint, Amended Complaint, Interrogatory Responses, or

23   Expert Reports.   In its Interrogatory No. 7, Samsung asked Apple to "Separately for each of the

24   APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS and APPLE TRADEMARKS state all

25   facts supporting any contention by APPLE that Samsung has willfully infringed, diluted, or falsely

26   designated the origin of its products for each patent, trade dress, and trademark, including when

27   and how APPLE asserts Samsung had actual notice of the APPLE PATENTS-IN-SUIT, APPLE

28   TRADE DRESS, and APPLE TRADEMARKS."   (*See* D'Amato Decl. Ex. O (Samsung's First

**SAMSUNG'S MOTIONS IN LIMINE**

1    Set of Interrogatories to Apple, Inc.) at 13-14.)   In response, Apple merely stated in pertinent part:

2    "Samsung manufactured, distributed, imported into the United States, used in the United States,

3    offered for sale in the United States, and sold in the United States products that infringed the

4    Apple patents, trade dress, and trademarks at issue in this lawsuit despite an objectively high

5    likelihood that its actions constituted infringement of valid patents."   (*Id.* Ex. T (Apple's

6    Corrected Amended Objections and Responses to Samsung Electronics Co. Ltd.'s Interrogatory

7    Nos. 4, 6, 7, 16, 17, 18) at 7.)   All of the identified conduct are acts of direct infringement.   (*See*

8    *id.* at 7-9.)   Similarly, in its Interrogatory No. 72, Samsung requested that Apple "state fully and

9    in detail on a patent-by-patent basis all facts supporting YOUR contention of infringement."   (*Id.*

10   Ex. R at 23.)   Nowhere in its response did Apple articulate any theory or acts of indirect

11   infringement of any design patent.   (*Id.* Ex. S at 94-96.)   Indeed, Apple recently confirmed that it

12   was proceeding only on a direct infringement theory when it stated "Samsung's sales of the

13   accused products are the infringing act."   (Dkt. No. 759-02 at 14.)

14         Because Apple failed to plead indirect infringement, disclose an indirect infringement

15   theory in discovery, or include an indirect infringement theory in its expert reports, Apple should

16   be precluded at trial from arguing such a theory or presenting evidence solely directed to it.   *See,*

17   *e.g., Fed. R. Civ. P. 26(e)(1)*;   *Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1356-

18   57 (Fed. Cir. 2005);   *Transclean Corp. v. Bridgewood Servs.*, *Inc.*, 77 F. Supp. 2d 1045, 1061-62

19   (D. Minn. 1999), aff'd, 290 F.3d 1364 (Fed. Cir. 2002) (party violated Rule 26(e) by failing to

20   "completely disclose its position" on patent invalidity in response to contention interrogatories).

21   A party must exercise "due diligence" in supplementing its disclosures, *SPX Corp. v. Bartec USA,*

22   *LLC*, 2008 U.S. Dist. LEXIS 29235, at *22 (E.D. Mich. Apr. 10, 2008), and supplementation

23   should occur "during the discovery period."   Fed. R. Civ. P. 26 Advisory Committee's Note to

24   1993 Amendments.

25         **D.      Motion #4:   Exclude Reference to Findings or Rulings In Other Proceedings**
              **Not Involving The Patents At Issue In This Case**
26

27         Both Apple and Samsung are currently or have been involved in other proceedings, some

28   of which involved the same or related IP rights.   These include litigation in foreign jurisdictions,

1   as well as investigations before the ITC.   Apple should be precluded from referencing any

2   findings or rulings from those proceedings, as they would not be relevant to the issues in this case.

3   Furthermore, any introduction of, or reference to, findings or orders of those proceedings could

4   only serve to mislead and/or confuse the jury, warranting exclusion under Fed. R. Evid. 403.[4]

5   Judge Posner granted a similar motion that both *Apple* and Motorola filed in the Motorola

6   proceeding.   (D'Amato Decl. Ex. U (*Apple, Inc. v. Motorola, Inc.*, Case No. 1:11-cv-08540,

7   Order of May 31, 2012) at 10.)

8       **E.      Motion #5:   Exclude Disputes and Rulings in this Action, Including Discovery
                  Disputes and the Preliminary Injunction Ruling**

9

10          Both sides in this action have presented a number of discovery disputes for resolution by

11  the Court.   Both sides have prevailed on some but not others.   In none of these disputes has the

12  Court imposed any remedy of which the jury should be made aware: there have been no deemed

13  findings of fact, and no adverse inference instructions**.**   Accordingly, the mere fact that discovery

14  disputes arose and the results of those disputes, whether they be motions to compel, motions for

15  sanctions, orders on motions to compel or orders on motions for sanctions, which happen in every

16  major litigation, is of no relevance to any issue to be decided by the jury and will likely distract

17  the jury from the dispositive issues of the case.   Apple should be precluded from making any

18  reference to any such disputes, motions or orders.

19          Similarly, the Court's rulings on Apple's preliminary injunction motion should not be

20  referenced to the jury.   A preliminary injunction proceeding is by nature interim.   A court need

21  only find a likelihood of success on the merits, not make a final adjudication.   *See, e.g., Sierra*

22  *On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984).   Moreover, a court

23  can change its mind on the merits of the case as later developments clarify the relevant facts and

24  law.   *See, Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir.

---

26      [4]   This motion does not seek to exclude evidence or attorney argument from other
27  proceedings to the extent it is relevant to the issues here, including from the related '796
    Investigation Apple brought in the ITC.   Further, the motion does not seek to exclude evidence or
28  attorney argument on issues for the Court's (not the jury's) determination.

1   2002).   Any reference to the Court's ruling on the preliminary injunction motion might have an

2   undue impact on the jury.   It should be excluded under Fed. R. Evid. 403.

3       **F.      Motion #6:   Exclude Generalizations Regarding the Operation of Accused**

4       **Samsung Products**

5       To prove that each of the accused Samsung products infringes Apple's design and utility

6   patents, Apple must demonstrate that each accused model contains all of the limitations in the

7   allegedly infringed patent claim.   *CVI/Beta Ventures, Inc. v. Tura L.P.*, 112 F.3d 1146, 1161 (Fed.

8   Cir. 1997) ("In order for there to be infringement, each and every limitation set forth in a patent

9   claim must be found in the accused product, either literally or under the doctrine of equivalents").

10  Apple has accused over two dozen Samsung models of infringement; accordingly, Apple must

11  present evidence that each and every one of those models practice all of the limitations of the

12  asserted claims.

13      Apple's experts, however, have not satisfied that burden in their reports.   Instead, Apple

14  repeatedly provides analysis only for a limited sample of what it deems "representative" products.

15  For example, while Apple's expert Dr. Ravin Balakrishnan starts his report with a detailed list of

16  the products that Apple has accused of infringement of the '381 patent by virtue of their

17  incorporation of the Gallery, Contacts, Browser and ThinkFree Office applications (D'Amato

18  Decl. Ex. V (Expert Report of Ravin Balakrishnan, Ph.D. Regarding Infringement of U.S. Patent

19  No. 7,469,381) ¶ 37), Balakrishnan's subsequent analysis fails to analyze each of these products

20  and each of the applications against the asserted claims.   Instead, for each claim, Balakrishnan

21  only analyzes *one* application for *one* product.   (*See, e.g., id.* Ex. 3 (providing infringement chart

22  for Claim 1 only for the Gallery application of the Exhibit 4G and infringement chart for Claim 6

23  only for the Browser application of the Galaxy Tab 10.1).)   He then generally notes that the

24  "ordinary and intended use" of the remaining accused products and remaining accused

25  applications also infringe each claim.   (*See, e.g., id.* ¶¶ 63, 66, 68, 73, 75, 77, 79, 84, 87, 92, 96,

26  99, 101.)

27      Apple's other experts apply similar shortcuts to their infringement analyses.   Dr. Karan

28  Singh, for example, admits that for the '163 patent, he only reviewed source code on *four* (out of

1   over 30) accused products, and that based on his review of that small sample of products, "for

2   each major Android release, *all of the Accused Products* based on that release implement the

3   accused functionalities of the '163 patent in substantially the same way as the representative

4   device for that release whose source code I have analyzed."   (D'Amato Decl. Ex. W (Expert

5   Report of Karan Singh) ¶ 39 (emphasis added).)   Dr. Singh's discussion of the '915 patent suffers

6   from the same generalizations.   (*Id.* ¶¶ 316-18 (concluding that all accused products behave in the

7   same way after only analyzing the Galaxy Tab 10.1 and Galaxy S II).)

8          Apple's experts—by relying on their own interpretation of what products are

9   "representative" of all of the accused products—have performed and presented only an incomplete

10  analysis of the accused product models.   The parties have not reached an agreement regarding

11  representative products, and indeed such an agreement would be virtually impossible since there

12  are numerous variations in the operation of the accused features or applications on each of the

13  accused models, each of which is capable of running one of the many different versions of

14  Android.   Thus Apple certainly has no basis to say that all or even some of the accused products

15  operate in the same way as the sample products Apple did analyze.   The Court therefore should

16  bar Apple from making broad sweeping generalizations that all or any of the accused products

17  operate in the same way for purposes of the infringement analysis.

18       **G.    Motion # 7:   Exclude Resized or Altered Photos of Samsung's Products in**
            **Side-by-Side Product Comparisons**
19

20         Apple has repeatedly presented the Court with manipulated images of the accused

21  Samsung products that are intended to make the Samsung phones or tablets look like they are

22  identical in height or width to the iPhone or iPad.   (*See, e.g.,* Dkt. No. 1 ¶ 61 (side-by-side

23  comparison of Apple iPhone 3GS and Galaxy S i9000); Dkt. No. 75 ¶¶ 94-95 (same); Dkt. No. 86

24  (Apple's Motion for Preliminary Injunction) at 2 (side-by-side comparisons of iPhone 3GS versus

25  Galaxy S 4G and iPhone 4 versus Infuse 4G), 3 (side-by-side comparison of iPad 2 and Galaxy

26  Tab 10.1), 9-12 (comparison of Apple iPhone 4 with Galaxy S 4G and Infuse 4G); Dkt. No. 90

27  (Declaration of Cooper C. Woodring in Support of Apple's Motion for Preliminary Injunction) Ex.

28  9 (side-by-side comparisons of iPhone 3GS and Galaxy S 4G), Ex. 12 (side-by-side comparisons

1   of iPhone 4 and Infuse 4G), Ex. 15 (side-by-side comparisons of iPhone 1 and Galaxy S 4G), Ex.

2   18 (side-by-side comparisons of iPhone 1 and Infuse 4G).)   Apple's expert Cooper Woodring

3   admitted that he "scaled the drawings and photographs such that the phones and tablet computers

4   correspond with one another."   (Dkt. No. 90 ¶ 12.)

5          Most, if not all, of the accused Samsung products have different dimensions than Apple's

6   phone and tablet products, and users can perceive those differences by looking at the products

7   themselves.   In the mobile and tablet computer industries, where a tenth of an inch makes a

8   difference for user experience, Apple cannot alter images of the Samsung products to eliminate

9   these dimensional differences and then argue copying on that basis.

10         To ensure that the jury is not improperly swayed and that Samsung is not prejudiced by

11  such altered or resized pictures that give the inaccurate sense of similarity, the Court should bar

12  Apple from presenting any altered or resized or manipulated pictures of the accused Samsung

13  products, especially in side-by-side comparisons with Apple products.

14         **H.   Motion # 8:   Exclude Any Evidence of Pre-Filing Notice Other Than
           Identified In Apple's Interrogatory Response and Provisionally Exclude Mr.
15         Musika's Opinions on Pre-Filing Damages Unless and Until Apple Makes a
           _Prima Facie_ Showing of Entitlement to Such Damages**
16

17         Apple admits it has not marked its products.   (Dkt. No. 991-04c at 2:18-20.)   Therefore,

18  Apple cannot recover damages before the date that it put Samsung on actual notice of its patents.

19  35 U.S.C. § 287; _Am. Med. Sys., Inc. v. Med. Eng'g Corp._, 6 F.3d 1523, 1537 (Fed. Cir. 1993);

20  _Nike, Inc. v. Walmart Stores, Inc._, 138 F.3d 1437, 1446 (Fed. Cir. 1998) (marking applies to

21  design patents).   Notice requires not only identifying the patent allegedly infringed, but also the

22  affirmative communication of a specific charge of infringement by a specific accused product.

23  _See Amsted Indus. Inc. v. Buckeye Steel Castings Co._, 24 F.3d 178, 187 (Fed. Cir. 1994) ("Actual

24  notice requires the affirmative communication of a specific charge of infringement by a specific

25  accused product or device.").

26         The earliest date that Samsung even arguably received notice of alleged infringement of

27  the '381 patent was August 2010.   Samsung did not receive notice of alleged infringement of the

28  '915 and D'677 patents until April 15, 2011, with the filing of Apple's Complaint.   Samsung did

1   not receive notice of the '163, D'305, D'889, or D'087 patents until Apple filed its First Amended

2   Complaint on June 16, 2011.   (Dkt. No. 927-11.)

3        In its Interrogatory No. 7, Samsung asked Apple to state "when and how APPLE asserts

4   Samsung had actual notice of the APPLE PATENTS-IN-SUIT . . ."   (D'Amato Decl. Ex. T

5   (Apple's Corrected Amended Objections and Responses to Samsung Electronics Co. Ltd.'s

6   Interrogatory Nos. 4, 6, 7, 16, 17, 18) at 6.)   In response, Apple did not mention its '915, '163 or

7   D'087 patents at all.   (*Id.* at 6-8.)   Apple failed to provide any information as to how and when

8   Samsung had actual notice of these patents.   With respect to its D'889 and D'305 patents, Apple

9   merely stated that "Samsung was aware" of these patents "at least as early" as April 14, 2008, and

10  November 27, 2009, respectively.   (*Id.* at 8.)   But, as noted above, mere awareness of a patent

11  without more – assuming Samsung was even aware at those times – is insufficient to constitute

12  actual notice for the purpose of triggering damages.   *See Amsted,* 24 F.3d at 187.   And, Apple

13  never sought to supplement its response.   Accordingly, Apple's response to Samsung's

14  Interrogatory No. 7 fails to allege legally sufficient actual pre-suit notice for anything other than

15  the '381 patent.

16       In ruling on Samsung's *Daubert* motions, the Court declined to exclude Mr. Musika's

17  opinions on pre-notice damages on the basis that "Samsung's objection turns on a factual dispute

18  as to when Samsung received actual notice."   (Dkt. No. 1157 at 13:17.)   But Apple should be

19  held to the information it chose to disclose during discovery.   And the information contained in

20  Apple's interrogatory response raises no factual dispute as to Samsung's notice of any asserted

21  patent – Apple said nothing at all about the '915, '163 and D'087 patents, and its response

22  regarding the D'889 and D'305 patents does not meet the *Amsted* standards.   Accordingly, at very

23  least, Mr. Musika should be precluded from offering any opinions regarding pre-filing damages

24  for these specific patents.

25       Indeed, having successfully argued for this standard to apply to Samsung in the context of

26  its motion to strike, Apple has no credible argument to the contrary.   (*See* Dkt. No. 939, at 3

27  ("Rule 26(e)(1) of the Federal Rules of Civil Procedure requires parties to seasonably supplement

28  their interrogatory responses if the prior responses are incomplete or incorrect.   . . . Rule 37(c)(1)

1   'mandates that a party's failure to comply with . . . the supplemental disclosure obligations under

2   [Rule] 26(e) results in that party being precluded from use' of the withheld information.   *Oracle*

3   *USA, Inc. v. SAP AG*, 264 F.R.D. 541, 544 (N.D. Cal. 2009); *see also Yeti by Molly Ltd. v.*

4   *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (preclusion of evidence under Rule

5   37(c)(1) is 'automatic' and 'self-executing' unless an exception applies)".)

6          Even were the Court inclined to permit Apple to offer evidence at trial not previously

7   disclosed in discovery, Apple should not be allowed to have Mr. Musika testify to pre-notice

8   damages unless and until Apple first places admissible evidence before the jury that creates a

9   genuine dispute of fact concerning when Samsung received actual notice.   (*Id.*)   Almost half of

10   Mr. Musika's extraordinary damages figure pertains to the period before Samsung contends it

11   received notice of Apple's asserted intellectual property.   (Dkt. No. 991-19c (Supp'l Expert

12   Report of Terry Musika) Exs. 17.2-S, 17.3-S, 17.4-S, 18.2-S, 18.3-S, 18.4-S.)   It would be highly

13   prejudicial to allow Mr. Musika to put this large figure before the jury without Apple first making

14   at least a *Prima Facie* showing that Samsung is liable for pre-notice damages (which, frankly,

15   Apple's interrogatory response shows it cannot do).

16          Accordingly, Samsung requests that the Court either:   (a) hold Apple to its interrogatory

17   response and preclude Mr. Musika from testifying as to pre-filing damages with respect to the

18   '915, '163, D'087, D'889 and D'305 patents; or at very least (b) provisionally exclude Mr.

19   Musika's opinions on pre-notice damages unless and until Apple first makes a *prima facie*

20   showing that it is entitled to pre-notice damages; or alternatively, grant Samsung a hearing outside

21   the presence of the jury before Mr. Musika takes the stand in order for the Court to determine

22   whether there is indeed a material factual dispute sufficient to provide a basis for Mr. Musika's

23   pre-notice testimony.

24          **I.      Motion #9:   Exclude Evidence of Samsung's Overall Revenues, Profits,**
            **Wealth and Value and Evidence or Argument that Samsung has paid Lower**
25          **Taxes Than It Should Have**

26          Apple has suggested that it intends to present at trial evidence of Samsung's overall

27   revenues, profits, wealth and value – as opposed to revenues, profits, wealth or value attributable

28   to the intellectual property at issue in this case.   These figures are irrelevant to the parties' claims

1   and are likely to confuse and distract the jury from the issues in dispute.   The only purpose for

2   Apple putting such figures before the jury would be to suggest that Samsung has the means to pay

3   a very large damages award and the jury should thus give Apple one.   But such evidence and

4   argument would be irrelevant to any damages determination, highly prejudicial, and should be

5   excluded under Rule 403.   *See, e.g., La Plante v. Am. Honda Motor Co., Inc.*, 27 F.3d 731, 740

6   (1st Cir. 1994) ("Although the evidence of Honda's profits from ATV sales was of some probative

7   value, we believe the danger that this evidence would unfairly prejudice the jury was

8   overwhelming."); *Jones v. C.H. Robinson Worldwide, Inc.,* 558 F. Supp. 2d 630, 651 (W.D. Va.

9   2008).

10          Likewise, Apple has indicated that it intends to suggest to the jury that SEA and STA have

11   improperly avoided paying their fair share of taxes in the United States.   For example, in his

12   Opening Report, Apple's damages expert, Mr. Musika, refers to "a transfer pricing agreement *to*

13   *avoid U.S. taxation*." (Dkt. No. 991-19b (Expert Report of Terry Musika) ¶ 148 (emphasis

14   added).)   Mr. Musika also frames one calculation by saying "that Samsung enjoys an advantage

15   over Apple by paying *virtually no income taxes in the U.S.* on infringing sales and a very low 16.5

16   percent rate outside the U.S."   (*Id.* ¶ 230 (emphasis added).)   He attributes an "additional value

17   [to] the fact that Samsung pays an effective tax rate of less than 1% in the U.S. on its sale of

18   accused products."   (*Id.* ¶ 252.)   And he even suggests that an accounting would have to be done

19   to quantify "the full extent of tax benefits enjoyed *by avoiding U.S. taxes*."   (Dkt. No. 996-15d

20   (Rebuttal Expert Report of Terry Musika) ¶ 64.)   In short, Mr. Musika goes out of his way to

21   insinuate that Samsung has not paid its fair share of taxes in this country.

22          As an initial matter, Apple well knows that SEA's and STA's U.S. tax arrangements have

23   been carefully considered, vetted, and blessed by the U.S. Government in the form of an Advance

24   Pricing Agreement ("APA") with the U.S. Internal Revenue Service ("IRS").   (*See* Dkt. No. 991-

25   19b ¶ 253.)   Mr. Musika's suggestion that Samsung sought to "avoid U.S. taxation" is thus not

26   only highly prejudicial and inflammatory, but dead wrong.   (*Id.* ¶ 148.)

27          It also is irrelevant.   Apple will likely argue that it should be entitled to show that SEA's

28   and STA's profits would have been higher but for the APA, and that Apple's damages should be

**SAMSUNG'S MOTIONS IN LIMINE**

1    based on those notional higher amounts.   (*See, e.g.,* Dkt. No. 822-02 at 7:11-12 ("STA earns a

2    minimal artificial profit, designed purely as a tax construct to limit what is paid to the IRS, and the

3    remaining profits are recognized abroad."); 12:28-13:1 ("As we have seen, anything less allows

4    Samsung to move profits around artificially and escape a full reckoning for its infringement of

5    Apple's intellectual property.")   Putting aside for the moment the merits of that argument (or lack

6    thereof), it does not justify the baseless and highly prejudicial allegation of tax avoidance.   To

7    make the argument that STA's and SEA's profits were lower than they otherwise would have been

8    because of the APA does not require Apple to level the scurrilous accusation that Samsung paid

9    less taxes than it should have.   Indeed, the opposite is true.   Because, as noted above, SEA's and

10   STA's tax arrangements have been reviewed and endorsed by the IRS, any accusation of tax

11   avoidance is nonsensical.

12       In any event, Apple's proposed argument is unsupported by any relevant law.   If Apple

13   prevails on its claims, and satisfies the relevant legal standards, it may be entitled to STA's and/or

14   SEA's actual profits from sales of the accused Samsung products.   *See* 15 U.S.C. § 1117(a) (the

15   plaintiff shall be entitled to recover, upon the finding of an infringement and "subject to the

16   principles of equity": [¶] (1) *defendant's profits*") (emphasis added); 35 U.S.C. § 289 (An accused

17   design patent infringer "shall be liable to the owner to the extent of *his total profit*").   Apple has

18   not – and cannot – cite any relevant law for the proposition that an infringer should be required to

19   disgorge *more* than its actual profits merely because its profits could have been higher, whether

20   because its profits were set by an agreement with the federal government or otherwise.

21       Indeed, to allow Apple to argue at trial that the jury should order the disgorgement of *more*

22   than STA's and/or SEA's actual profits would be an error of law.   15 U.S.C. 1117(a)(3) provides

23   that, "If the *court* shall find that the amount of the recovery based on profits is either inadequate or

24   excessive the *court* may in its discretion enter judgment for such sum as the *court* shall find to be

25   just, according to the circumstances of the case."   (Emphasis added.)   Section 1117(a)(3) thus

26   entrusts the Court – not the jury – with the discretion of increasing the plaintiff's recovery if the

27   disgorgement of defendant's actual profits is inadequate.   It does not permit the jury to increase

28   plaintiff's recovery by simply deeming the defendant to have made more profit than it actually did.

1   *See The Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 2011 WL 862729, at *9 n.29 (D. Md. March

2   10, 2011) (the "language of the Lanham Act is clear-a successful plaintiff in a trademark

3   infringement may recover the 'defendant's profits,' and to prove the defendant's profits, the

4   plaintiff must show the 'defendant's sales.')   15 U.S.C. § 1117(a).   ***The Act does not allow for***

5   ***recovery of profits not attributable to the defendant***."   (Emphasis in original).

6        The Federal Circuit has repeatedly held that a corporation must accept both the benefits

7   and the consequences of its structure, one significant consequence being preclusion from claiming

8   an affiliate's lost profits in utility patent infringement cases.   In *Poly-America, L.P. v. GSE Lining*

9   *Technology, Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (*citing General Motors Corp. v. Devex*

10  *Corp.*, 461 U.S. 648, 654 (1983)), the Federal Circuit held that the patentee was not entitled to

11  claim the alleged lost profits of its sister corporation, despite the fact that both the patentee and the

12  sister corporation were wholly owned by the same corporate parent.   Similarly, in *Mars, Inc. v*

13  *Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008), the Federal Circuit rejected the parent

14  patentee's assertion that its subsidiary's lost profits are, by virtue of the corporate relationship,

15  inherently its lost profits.

16       So too here.   STA and SEA are corporate entities distinct from SEC.   STA and SEA each

17  made certain profits from the sale of certain accused products in accordance with an agreement

18  blessed by the federal government.   SEC also made certain profits from selling those products to

19  STA and SEA, which then sold them in the United States.   That STA and SEA *could* have made

20  more profits, and SEC *could* have made less profits, if the transfer pricing arrangement blessed by

21  the federal government had been different, is irrelevant.   Absent an *alter ego* or veil piercing

22  theory that Apple has never pled or articulated (undoubtedly, because it knows it could not sustain

23  any such theory), it should not be permitted to argue to the jury that STA's and SEA's profits

24  should be artificially inflated by attributing to them the profits of a separate corporate entity, SEC.

25       For these reasons, the Court should preclude Apple from:   (a) referencing Samsung's

26  overall revenues, profits, wealth or value in front of the jury; (b) suggesting to the jury that

27  Samsung has avoided U.S. taxation or paid less U.S. taxes or foreign taxes than it should have; or

28

1    (c) suggesting or arguing to the jury that it should deem STA's and SEA's profits to be higher than

2    they actually were.

3           **J.      Unopposed Motion# 10:   Exclude Evidence and Argument that Apple is
            Presently Licensed to the Declared Essential Patents-in-Suit**

4

5           The Court previously rejected as a matter of law Apple's counterclaim defense that it has

6    an existing license to Samsung's asserted declared essential patents.  (Dkt. No. 920 at 19-21.)   In

7    doing so, the Court ruled explicitly:   "Apple's theory that it has an existing license of Samsung's

8    Declared-Essential Patents is implausible, and Apple may not proceed under this theory."  (*Id.* at

9    21.)   Recently, at the hearing on the parties' motions for summary judgment, Apple represented to

10   the Court that Apple was going to assert the dismissed claim, stating that, "We have a

11   license."  (Dkt. Nos. 1164-65 (6/21/12 Hr'g Tr. at 25:17-23.)   Because Apple's automatic

12   licensing defense has been dismissed, it is now the law of the case, and any and all evidence or

13   argument that Apple is presently licensed to the declared essential patents-in-suit should be

14   excluded.  *Mennick v. Smith*, 459 F. App'x 649, 651 (9th Cir. 2011) (holding that "a court is

15   generally precluded from reconsidering an issue that has already been decided by the same court,

16   or a higher court in the identical case." (quoting *United States v. Alexander*, 106 F.3d 874, 876

17   (9th Cir. 1997)).

18          On the afternoon of this filing, Apple indicated it would not oppose this motion.

19   (D'Amato Decl. Ex. X (7/5/2012 E-Mail from A. Tucker) at 1.)

20

21   DATED: July 5, 2012                    QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
22

23                                     By */s/ Victoria F. Maroulis*
                                            Victoria F. Maroulis
24                                          Attorneys for SAMSUNG ELECTRONICS
                                            CO., LTD., SAMSUNG ELECTRONICS
25                                          AMERICA, INC., and SAMSUNG
                                            TELECOMMUNICATIONS AMERICA, LLC
26

27

28