# EXHIBIT 5

# FILED UNDER SEAL

BEFORE THE

UNITED STATES INTERNATIONAL TRADE COMMISSION

_____

In the Matter of:           )   Investigation No.

CERTAIN ELECTRONIC DIGITAL  )   337-TA-796

MEDIA DEVICES AND           )

COMPONENTS THEREOF          )

_____

Main Hearing Room

United States

International Trade Commission

500 E Street, Southwest

Washington, D.C.

Friday, June 1, 2012

Volume 2

The parties met, pursuant to the notice of the

Judge, at 8:44 a.m.

BEFORE:  THE HONORABLE THOMAS B. PENDER

1  APPEARANCES:

2

3      For Complainant Apple, Inc.:

4          HAROLD J. McELHINNY, ESQ.

5          MICHAEL A. JACOBS, ESQ.

6          RACHEL KREVANS, ESQ.

7          Morrison & Foerster LLP

8          425 Market Street

9          San Francisco, CA 94105

10

11         ALEXANDER J. HADJIS, ESQ.

12         KRISTIN L. YOHANNAN, ESQ.

13         Morrison & Foerster LLP

14         2000 Pennsylvania Avenue, N.W.

15         Washington, D.C. 20006

16

17         CHARLES S. BARQUIST, ESQ.

18         Morrison & Foerster LLP.

19         555 West Fifth Street

20         Los Angeles, CA 90013

21

22

23

24

25

```
 1   APPEARANCES (Continued):

 2

 3       For Respondents Samsung Electronics Co.,

 4       Ltd., Samsung Electronics America, Inc., and

 5       Samsung Telecommunications America, LLC:

 6             CHARLES K. VERHOEVEN, ESQ.

 7             Quinn Emanuel Urquhart & Sullivan LLP

 8             50 California Street, 22nd Floor

 9             San Francisco, CA 94111

10

11             KEVIN P.B. JOHNSON, ESQ.

12             Quinn Emanuel Urquhart & Sullivan LLP

13             555 Twin Dolphin Drive, 5th Floor

14             Redwood Shores, CA 94065

15

16             RYAN S. GOLDSTEIN, ESQ.

17             MICHAEL T. ZELLER, ESQ.

18             Quinn Emanuel Urquhart & Sullivan LLP

19             865 South Figueroa St., 10th Floor.

20             Los Angeles, CA 90017

21

22             ERIC HUANG, ESQ.

23             Quinn Emanuel Urquhart & Sullivan LLP

24             51 Madison Avenue, 22nd Floor

25             New York, New York 10010
```

```
 1   APPEARANCES (Continued):
 2
 3      For Respondents Samsung Electronics Co.,
 4      Ltd., Samsung Electronics America, Inc., and
 5      Samsung Telecommunications America, LLC:
 6              S. ALEX LASHER, ESQ.
 7              PAUL BRINKMAN, ESQ.
 8              Quinn Emanuel Urquhart & Sullivan LLP
 9              1101 Pennsylvania Avenue
10              Washington, D.C. 20004
11
12              MARC K. WEINSTEIN, ESQ.
13              Quinn Emanuel Urquhart & Sullivan LLP
14              NBF Higiya Building, 25F, 1-1-7
15              Uchisaiwai-cho, Chiyoda-ku,
16              Tokyo, 100-0011, Japan
17
18      For ITC Staff:
19              REGINALD LUCAS, ESQ.
20                  Investigative Attorney
21              DAVID LLOYD, ESQ.
22                  Supervisory Attorney
23              U.S. International Trade Commission
24              500 E Street, S.W.
25              Washington, D.C. 20436
```

```
 1   APPEARANCES (Continued):

 2

 3        Attorney-Advisor:

 4             GREGORY MOLDAFSKY, ESQ.

 5             Attorney-Advisor

 6             Office of Administrative Law Judges

 7             U.S. International Trade Commission

 8             500 E Street, S.W.

 9             Washington, D.C. 20436

10

11

12        *** Index appears at end of transcript ***

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   overall impression.

2          And then tried to apply that to all of
3   the phones that we examined and, in fact,
4   narrowed that field down significantly.  And
5   then compared that to select items of prior art
6   that I selected from many of the pieces of
7   prior art that Samsung had provided in their
8   materials.

9          And then we did a -- then I did a -- a
10  prior art to the patent, to the phone
11  comparison.  And my understanding of the law is
12  that you're comparing each of them to the prior
13  art.  And if the infringing phone is closer to
14  the patent than it is to the prior art, then
15  that's a reasonable understanding of it being
16  satisfactory in that regard.

17     Q.   Now, you mentioned in that answer your
18  functionality analysis, and of course, you were
19  asked some questions about that during
20  cross-examination?

21     A.   Yes.

22     Q.   Would you tell us what exactly you
23  believe is and is not functional about having a
24  display on a smartphone?

25     A.   I believe having a display in a

1  smartphone is absolutely functional from a
2  performance and engineering standpoint.  I
3  believe that the size of that display and the
4  location of that display and in some cases the
5  shape of that display is definitely not
6  functional.
7      Q.   Why not?
8      A.   It's an appearance element as it
9  relates on a patent, and it certainly is not a
10 requirement that it cover the entire face.
11     Q.   And why do you mention covering the
12 entire face, why is that important in this
13 case?
14     A.   Because in my personal opinion as an
15 expert, the major overall impression created by
16 the '757 patent and the '678 patents are that
17 of a -- an electronic device with a flat face
18 that covers the entire surface of the phone.
19 And based on the '678, one that is transparent,
20 in which you can see an area that if it were a
21 phone would be a display.  And that
22 transparency covers the phone from edge to
23 edge, and I think that's really a dominant
24 visual element.
25     Q.   Is there anything functional about

1  having a clear transparent face on any part of
2  the front face of a phone other than over the
3  display?
4      A.   Not that I'm aware of.
5      Q.   Now you were also asked about the
6  functionality of the location of the receiver
7  or the speaker slot or speaker hole on a phone,
8  do you recall that?
9      A.   Yes.
10     Q.   And what, in your opinion, is
11 functional or nonfunctional about the location
12 or shape of the speaker slot or hole?
13     A.   Well, based on my comparison to other
14 phones, it became pretty clear that the
15 location of that speaker slot and the size and
16 the shape of that speaker slot really was not
17 determined by function.  It could be many
18 different places on the face, and I seem to
19 recall having seen at some point a phone where
20 the speaker was actually on the top edge.  I
21 can't produce one as proof, but I do recall
22 that.
23     Q.   So as long as it's somewhere near the
24 ear, it would be good enough?
25     A.   Yes.

```
 1   question and ask another question, okay.  So
 2   you don't -- you didn't mean to ask that
 3   question, because you asked about phone, you
 4   didn't ask design.  Okay.  Your witness was
 5   quicker than either one of us.
 6            MR. BARQUIST:  Yes, Your Honor.
 7   BY MR. BARQUIST:
 8       Q.   Mr. Bressler, could you please explain
 9   to the Court the basis for your opinion, if
10   this is your opinion, for why an ordinary
11   observer could mistake the Samsung phone
12   RPX-149 for the Apple design?
13            MR. VERHOEVEN:  Same objections.
14            JUDGE PENDER:  Overruled.  And when
15   you say design, do you mean the '757, do you
16   mean the two patents together, sir?
17            MR. BARQUIST:  Thank you, Your Honor.
18   BY MR. BARQUIST:
19       Q.   Take it one at a time, so we're really
20   clear, Mr. Bressler.  Could you explain to the
21   Court your opinion for how it is an ordinary
22   observer could mistake the Samsung phone
23   RPX-149 for the design of the D '757 patent?
24       A.   Yes.  The D '757 patent describes a
25   rectangular solid that has radiused corners and
```

1   soft edges and a totally flat front surface.
2   The Samsung phones in question have -- are
3   rectangular in nature, have radiused corners,
4   have soft -- for the most part, soft sides, and
5   have a continuous flat front surface.
6        Q.   And same question with regard to the
7   '678 patent, can you explain how it is in your
8   opinion an ordinary observer could mistake the
9   Samsung phone RPX-149 for the design claimed in
10  the '678 patent?
11            JUDGE PENDER:  Actually, you asked a
12  different question.  The first way you asked it
13  was great.  You said if he could mistake.  In
14  other words, that was slightly leading, what
15  you just asked.
16            MR. BARQUIST:  Thank you, Your Honor.
17            JUDGE PENDER:  You're welcome.
18  BY MR. BARQUIST:
19       Q.   Mr. Bressler, could you please explain
20  what your opinion is with regard to whether or
21  not an ordinary observer could mistake the
22  Samsung phone RPX-149 for the design claimed in
23  the '678 patent?
24       A.   Absolutely.  I believe that the
25  '678 patent is the core of the overall

1  impression created by these phones, which is a
2  continuous surface that is transparent over its
3  entire surface until it gets to a bezel, and
4  that it has lateral borders on either side that
5  are narrower and borders at the top and bottom
6  that are wider, and they all have
7  lozenge-shaped speaker slots.
8           So, to me, there's not very much that
9  isn't very, very subtle differentiating them,
10 except maybe the couple of little icons across
11 the bottom.
12    Q.    What role, if any, do the four icons
13 across the bottom play in your analysis?
14    A.    I acknowledged them and thought about
15 them and determined that I didn't feel they
16 played an important role in the overall
17 impression of the design.
18    Q.    What role, if any, does the logo or
19 name of Samsung on the front of the phone play
20 in your analysis?
21    A.    None.
22           JUDGE PENDER:  You rung that bell,
23 Mr. Barquist, and he said none.  That was the
24 response, his response, sir.
25           MR. BARQUIST:  Yes, Your Honor.

1           JUDGE PENDER:  All right.  Thank you.
2   BY MR. BARQUIST:
3       Q.    You were also asked some questions
4   during cross-examination about the iPhone 3G
5   and its design, do you recall that?
6       A.    Yes.
7       Q.    And I think, in that respect, the
8   discussion was on the curvature of the back of
9   the 3G and how that compared to the
10  '757 patent, do you recall that?
11      A.    I do.
12      Q.    And can you explain what role the
13  curvature on the back of the iPhone 3G plays in
14  your analysis about whether or not the 3G
15  practices the '757 patent?
16      A.    I believe that the overall impression
17  that an ordinary observer would have of
18  that -- of that patent, because the sides are,
19  in fact, spine curves and not exact radii, the
20  overall impression is simply that it's soft.
21  And given that overall impression, I believe
22  that the 3G and 3GS, provide that same overall
23  impression.
24      Q.    Going back one-half step, can you tell
25  us why you didn't consider the Samsung logo

```
 1                CERTIFICATE OF REPORTER

 2    TITLE:  Certain Electronic Digital Media Devices

 3    INVESTIGATION NO:  337-TA-796

 4    HEARING DATE:  June 1, 2012

 5    LOCATION:  Washington, D.C.

 6    NATURE OF HEARING:  Hearing

 7          I hereby certify that the foregoing/attached
      transcript is a true, correct and complete record of
 8    the above-referenced proceedings of the U.S.
      International Trade Commission.
 9    Date:  June 1, 2012

10    SIGNED:CYNTHIA OTT_____

11          Signature of the Contractor of the
            Authorized Contractor's Representative
12          1220 L Street, N.W, Suite 600
            Washington, D.C. 20005
13
            I hereby certify that I am not the Court
14    Reporter and that I have proofread the
      above-referenced transcript of the proceedings of the
15    U.S. International Trade Commission, against the
      aforementioned Court Reporter's notes and recordings,
16    for accuracy in transcription in the spelling,
      hyphenation, punctuation and speaker identification
17    and did not make any changes of a substantive nature.
      The foregoing/attached transcript is a true, correct
18    and complete transcription of the proceedings.

19    SIGNED:  H. NGUYEN  _____
                 Signature of Proofreader
20
          I hereby certify that I reported the
21    above-referenced proceedings of the U.S. International
      Trade Commission and caused to be prepared from my
22    tapes and notes of the proceedings a true, correct and
      complete verbatim recording of the proceedings.
23
      SIGNED:CYNTHIA OTT _____
24       Signature of the Court Reporter

25
```