# EXHIBIT 15
# FILED UNDER SEAL

BEFORE THE

UNITED STATES INTERNATIONAL TRADE COMMISSION

_____

In the Matter of:             )    Investigation No.

CERTAIN ELECTRONIC DIGITAL    )    337-TA-796

MEDIA DEVICES AND             )

COMPONENTS THEREOF            )

_____

Main Hearing Room

United States

International Trade Commission

500 E Street, Southwest

Washington, D.C.

Friday, June 1, 2012

Volume 2

The parties met, pursuant to the notice of the

Judge, at 8:44 a.m.

BEFORE:  THE HONORABLE THOMAS B. PENDER

```
                                                         Page 696
 1   APPEARANCES:

 2

 3        For Complainant Apple, Inc.:

 4             HAROLD J. McELHINNY, ESQ.

 5             MICHAEL A. JACOBS, ESQ.

 6             RACHEL KREVANS, ESQ.

 7             Morrison & Foerster LLP

 8             425 Market Street

 9             San Francisco, CA 94105

10

11             ALEXANDER J. HADJIS, ESQ.

12             KRISTIN L. YOHANNAN, ESQ.

13             Morrison & Foerster LLP

14             2000 Pennsylvania Avenue, N.W.

15             Washington, D.C. 20006

16

17             CHARLES S. BARQUIST, ESQ.

18             Morrison & Foerster LLP.

19             555 West Fifth Street

20             Los Angeles, CA 90013

21

22

23

24

25
```

```
 1    APPEARANCES (Continued):

 2

 3        For Respondents Samsung Electronics Co.,

 4        Ltd., Samsung Electronics America, Inc., and

 5        Samsung Telecommunications America, LLC:

 6              CHARLES K. VERHOEVEN, ESQ.

 7              Quinn Emanuel Urquhart & Sullivan LLP

 8              50 California Street, 22nd Floor

 9              San Francisco, CA 94111

10

11              KEVIN P.B. JOHNSON, ESQ.

12              Quinn Emanuel Urquhart & Sullivan LLP

13              555 Twin Dolphin Drive, 5th Floor

14              Redwood Shores, CA 94065

15

16              RYAN S. GOLDSTEIN, ESQ.

17              MICHAEL T. ZELLER, ESQ.

18              Quinn Emanuel Urquhart & Sullivan LLP

19              865 South Figueroa St., 10th Floor.

20              Los Angeles, CA 90017

21

22              ERIC HUANG, ESQ.

23              Quinn Emanuel Urquhart & Sullivan LLP

24              51 Madison Avenue, 22nd Floor

25              New York, New York 10010
```

```
 1   APPEARANCES (Continued):

 2

 3       For Respondents Samsung Electronics Co.,

 4       Ltd., Samsung Electronics America, Inc., and

 5       Samsung Telecommunications America, LLC:

 6              S. ALEX LASHER, ESQ.

 7              PAUL BRINKMAN, ESQ.

 8              Quinn Emanuel Urquhart & Sullivan LLP

 9              1101 Pennsylvania Avenue

10              Washington, D.C. 20004

11

12              MARC K. WEINSTEIN, ESQ.

13              Quinn Emanuel Urquhart & Sullivan LLP

14              NBF Higiya Building, 25F, 1-1-7

15              Uchisaiwai-cho, Chiyoda-ku,

16              Tokyo, 100-0011, Japan

17

18       For ITC Staff:

19              REGINALD LUCAS, ESQ.

20                  Investigative Attorney

21              DAVID LLOYD, ESQ.

22                  Supervisory Attorney

23              U.S. International Trade Commission

24              500 E Street, S.W.

25              Washington, D.C. 20436
```

```
 1   APPEARANCES (Continued):

 2

 3         Attorney-Advisor:

 4               GREGORY MOLDAFSKY, ESQ.

 5               Attorney-Advisor

 6               Office of Administrative Law Judges

 7               U.S. International Trade Commission

 8               500 E Street, S.W.

 9               Washington, D.C. 20436

10

11

12         *** Index appears at end of transcript ***

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  description, yes.  Closer to the end meaning
2  the outsides.
3          JUDGE PENDER:  Correct.
4          THE WITNESS:  Yes.
5  BY MR. VERHOEVEN:
6     Q.   And when you look at D '015, the front
7  surface, do you see oblique line shading?
8     A.   I do.
9     Q.   And that's to indicate that the front
10 surface is transparent or translucent or highly
11 polished or reflective or something like that?
12    A.   I --
13         MR. BARQUIST:  Objection, compound,
14 Your Honor.
15         JUDGE PENDER:  You know, there's no
16 real objection to compound if you're arguing
17 it's an improper question.  We'll see if the
18 witness can answer it or not, you know.
19         THE WITNESS:  I believe it fits the
20 description of what those diagonal lines are
21 supposed to represent.
22 BY MR. VERHOEVEN:
23    Q.   Thank you, sir.
24    A.   Three of those.
25    Q.   Thank you, sir.  And the D '757 patent

 1   actually does not claim a transparent,
 2   translucent or highly polished reflective
 3   surface on the front?
 4       A.   Of the '757?
 5       Q.   Yes.
 6       A.   It does not, correct.  It does
 7   describe a flat surface.
 8       Q.   Can we go to RDX-49C-12, please.
 9            In conducting your analysis of the
10   scope of the '757, you didn't happen to review
11   the Manual of Patent Examining Procedure Rule
12   1503.02, did you?
13       A.   No, but I remember seeing the lines
14   you've highlighted.
15       Q.   Oh, so you do remember seeing these
16   lines?  And I'll read those highlighted lines
17   into the record, Your Honor.  "Oblique line
18   shading must be used to show transparent,
19   translucent and highly polished or reflective
20   surfaces such as a mirror."
21            So you were aware of that?
22       A.   Yes.
23       Q.   Now, can we go back to the slide that
24   was just on, Ryan?  So here in '757, it's not
25   claiming that, so that -- it can't be included

1    in '757, right?
2            MR. BARQUIST:  Objection, Your Honor.
3    I mean, I don't know what that question means.
4    Can't be included.  But I think it's a
5    misstatement of the law if it's an attempt to
6    state the law.
7            MR. VERHOEVEN:  I'll withdraw the
8    question.
9    BY MR. VERHOEVEN:
10   Q.   In any event, there is no oblique line
11   shading in '757, right?
12   A.   That's correct.
13   Q.   But there is on '015, right?
14   A.   There appears to be, yes.  As I said,
15   I haven't studied the patent in depth in all
16   the views.
17   Q.   And if we move on, and you compare
18   both on the left-hand side, both the initial
19   iPhone and D '757, you see a continuous rounded
20   surface or curved surface that goes from the
21   flat front surface to the flat back, do you see
22   that?
23   A.   On which one, sir?
24   Q.   '757?
25   A.   Yes.

1  some of them required more complicated or less
2  complicated processes.  But I didn't analyze
3  them specifically or create documentation that
4  would show substantial analyzation of the
5  engineering.
6      Q.    For these phones that you put in your
7  report as alternative designs, you did not do
8  anything specific on each of those phones to
9  determine a comparable manufacturing cost
10 between the different phones, did you, sir?
11     A.    No, I did not.
12     Q.    And you didn't acquire any data on
13 whether the performance of any of your
14 purported alternatives was degraded by the
15 alternative designs, did you?
16     A.    I think that depends on what you mean
17 by performance.  If you mean operability, I did
18 check that, and reviewed the phones.  If you
19 mean performance in terms of speed or other
20 technical terms, no, I did not analyze that.
21     Q.    And you don't have any information for
22 these alternative phones as to whether any
23 product feature affected the quality of the
24 article, correct?
25     A.    I have no specific data in that

1    regard, no.

2        Q.    And you also don't have any data on

3    whether your alternative design phones make the

4    device more complicated for the user to use,

5    correct?

6        A.    I did review them briefly to get a

7    sense of what the level of operability was, and

8    found them generally comparable, though I

9    didn't get into the detail.

10       Q.    And you have no data and didn't review

11   any data on whether your alternative designs

12   make the device more complicated, other than

13   looking at them and thinking about it, right?

14       A.    That's correct.  I was dealing with

15   the design.  With the aesthetic design.

16       Q.    Now, in terms of the functionality

17   issue, using the standard that you used in your

18   report, isn't it true that it's your opinion to

19   His Honor that having a transparent cover over

20   the display on a smartphone is not functional?

21       A.    No, that is not my opinion.  That

22   was -- when it was presented earlier yesterday,

23   it was taken out of context.  What -- I believe

24   it is, of course, critically important to have

25   a clear display directly over the -- a clear

Page 783

1  portion directly over the display.  The size of
2  the display and the location of the display and
3  having it clear all the way out to the edges is
4  certainly not a functional requirement.
5      Q.    I'd like to play from your deposition
6  dated April 24th, 2012, an excerpt from page
7  209, lines 9 through 21.
8            (VIDEOTAPE PLAYED AS FOLLOWS:)
9            "QUESTION:  Using your definition of
10 functional in your analysis, is the use of a
11 cover that is transparent over a display
12 functional?
13           "ANSWER:  I believe it is not
14 exclusively functional.
15           "QUESTION:  And therefore, by your
16 definition, it is not functional, correct?
17           "ANSWER:  Correct."
18           "Objection.
19           "ANSWER:  It is not functional as
20 we've defined it relative to a design patent.
21           (END OF VIDEOTAPED PORTION PLAYED.)
22 BY MR. VERHOEVEN:
23     Q.    And you also, using your definition,
24 do not believe that a relatively large display
25 screen is a functional part of a smartphone

1  design, correct?

2      A.   I believe we were talking in the

3  context of the patents that I was analyzing.

4  And there was nothing in the patents that said

5  they were smartphones.  So in that context, I

6  think I spoke correctly.

7      Q.   Let's play from your April 24th

8  deposition, page 212, lines 7 through 10.

9           (VIDEOTAPE PLAYED AS FOLLOWS:)

10          "QUESTION:  In your view, is having a

11  relatively large screen for a smartphone

12  functional, as you've used that term?

13          "ANSWER:  As it's defined in my

14  report, no."

15          (END OF VIDEOTAPED PORTION PLAYED.)

16  BY MR. VERHOEVEN:

17      Q.   Using your definition of functional,

18  it's your opinion to His Honor that the

19  incorporation of a display element into a

20  smartphone is nonfunctional, correct?

21      A.   If you are asking me about a

22  smartphone specifically, having a display is

23  functional.  If we're talking about analysis of

24  the '678 patent, which is what I believe we

25  were discussing, there is nothing there that

1  indicates it's specifically a display, there's

2  nothing claimed that it's specifically a

3  display.

4      Q.    So it's your position and opinion that

5  a display element and the use of a display

6  element where related to the '678 patent is a

7  nonfunctional component and consideration,

8  right?

9           JUDGE PENDER:  You know, I'm going

10 to -- I anticipate the objection there, and I'm

11 not going to allow the question.  First of all,

12 I'm going to say it's asked and answered, and I

13 thought it was answered in quite good

14 precision, Mr. Verhoeven.  I don't think you

15 need to go any further.

16          MR. VERHOEVEN:  Okay.

17 BY MR. VERHOEVEN:

18     Q.    It's your opinion to His Honor that

19 locating a receiver or opening in the upper

20 portion of the front face of a smartphone is

21 not a functional consideration, correct?

22     A.    As I was defining the use of

23 functionality, analyzing those patents

24 in -- that's correct.  In the general context

25 of, is it a good place for a speaker?  It

1    absolutely is functional.
2        Q.    But in your opinion, as you used the
3    term functional?
4        A.    Correct.
5        Q.    It's your opinion to His Honor that
6    locating a speaker in the upper portion of the
7    front face is not a functional consideration,
8    correct?
9        A.    I do not believe its aesthetic
10   location is a functional consideration.
11           MR. VERHOEVEN:  Your Honor, if I could
12   have one minute to review my notes.
13           JUDGE PENDER:  Please, sir.
14   BY MR. VERHOEVEN:
15       Q.    In your view, the location of the
16   speaker or the receiver aperture in the upper
17   portion of the front face of a smartphone is
18   not functional, as you have used that term in
19   your expert report?
20       A.    As I have understood the use of that
21   term in analyzing a design patent, I did not
22   believe that its aesthetic location is
23   functional.
24           MR. LUCAS:  Your Honor, is it okay if
25   we go back on the confidential record -- I'm

1  sorry, the public record?

2        MR. VERHOEVEN: Actually, I was just

3  going to say -- thank you, I was just going to

4  say at this time, I pass the witness, Your

5  Honor.

6        JUDGE PENDER: Well, anyway, it's a

7  beautiful time to take a break. We're about 10

8  minutes over, and I've noticed that clock up

9  there is a few minutes fast. So when that

10 clock says 20 of 11, we will return. Thank

11 you.

12       (Whereupon, a short recess was taken.)

13       MR. BARQUIST: Your Honor, you may

14 want to inquire, but Mr. Lucas has told me he

15 doesn't have questions for the witness, so if I

16 may begin redirect.

17       JUDGE PENDER: I'm sorry, I'm not

18 hearing.

19       MR. BARQUIST: You may -- if you want,

20 I can inquire of Mr. Lucas, but he's told me

21 that he does not have cross-examination, so I

22 was prepared to start.

23       JUDGE PENDER: I'll take you at your

24 word, sir.

25 //

1   or Wednesday morning and be unhappy about that,
2   okay?
3           MR. JOHNSON:  Understood.
4           JUDGE PENDER:  Thank you.
5           MR. McELHINNY:  Thank you, Your Honor.
6           (Whereupon, at 4:50 p.m., the hearing
7   recessed, to reconvene at 8:45 a.m. on Monday,
8   June 4, 2012.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25