# EXHIBIT 17
# FILED UNDER SEAL

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN JOSE DIVISION

 4   APPLE INC., a California
     corporation,
 5

 6             Plaintiff,

 7   vs.                        Case No. 11-CV-01846-LHK

 8   SAMSUNG ELECTRONICS CO., LTD.,
     a Korean business entity;
 9   SAMSUNG ELECTRONICS AMERICA,
     INC., a New York corporation;
10   SAMSUNG TELECOMMUNICATIONS
     AMERICA, LLC, a Delaware
11   limited liability company,

12             Defendants.
     ----------------------------------/
13

14

15

16

17        CONFIDENTIAL ATTORNEYS' EYES ONLY

18

19     VIDEOTAPED DEPOSITION OF DANIELE De IULIIS
              Redwood Shores, California
20             Friday, October 21, 2011

21

22   Reported by:
     LORRIE L. MARCHANT, CSR No. 10523, RPR, CRR, CCRR,CLR
23   JOB NO. 43000

24

25
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

1    Friday, October 21, 2011

2         10:13 a.m.

3

4  Videotaped Deposition of DANIELE De

5  IULIIS, held at the offices of Quinn

6  Emanuel Urqhart & Sullivan, LLP, 555

7  Twin Dolphin Drive, Suite 560, Redwood

8  Shores, California, before Lorrie L.

9  Marchant, a Certified Shorthand

10 Reporter, Registered Professional

11 Reporter, Certified Realtime Reporter,

12 California Certified Realtime Reporter

13 and Certified LiveNote Reporter.

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

```
 1              A P P E A R A N C E S:

 2   FOR THE PLAINTIFF APPLE INC.:

 3        MORRISON & FOERSTER
          BY:  ANDREW E. MONACH, ESQ.
 4        425 Market Street
          San Francisco, California 94105
 5        Phone:  (415) 268-7588
          Fax:  (415) 268-7522
 6        e-mail:  amonach@mofo.com

 7   FOR THE DEFENDANTS SAMSUNG:

 8        QUINN EMANUEL URQUHART & SULLIVAN
          BY:  MARGRET CARUSO, ESQ.
 9             SCOTT HALL, ESQ.
          555 Twin Dolphin Drive
10        Redwood Shores, California 94065
          Phone:  (650) 801-5000
11        Fax:  (650) 801-5100
          e-mail:  margretcaruso@quinnemanuel.com
12                 scotthall@quinnemanuel.com

13   ALSO PRESENT:

14        Lisa Olle, Apple Senior Corporate Counsel, Litigation

15        Jason Kocol, Videographer

16                     ---oOo---

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 4

```
 1              THE VIDEOGRAPHER:  This is the start of
 2    tape labeled No. 1 of the videotaped deposition of
 3    Daniele de Iuliis in the matter Apple, Incorporated
 4    versus Samsung Electronics Company, Limited, in the
 5    United States District Court, Northern District of
 6    California, San Jose Division.  Case No.
 7    11-CV-01846-LHK.
 8              This deposition is being held at 555 Twin
 9    Dolphin Drive, Redwood Shores, California, on
10    October 21st, 2011, at approximately 10:13 a.m.  My
11    name is Jason Kocol.  I'm the legal video specialist
12    from TSG Reporting, Incorporated, headquartered at
13    747 Third Avenue, New York, New York.
14              The court reporter is Lorrie Marchant in
15    association with TSG Reporting.
16              Will counsel please introduce yourselves
17    for the record.
18              MS. CARUSO:  Margret Caruso from Quinn,
19    Emanuel, Urquhart, Sullivan for defendant Samsung.
20              MR. MONACH:  Andrew Monach, Morrison &
21    Foerster, representing Apple and the witness.
22              THE VIDEOGRAPHER:  Will the court reporter
23    please swear in the witness.
24              THE REPORTER:  Do you solemnly swear or
25    affirm under the penalties of perjury that the
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 5

1  testimony you are about to offer will be the truth,
2  the whole truth and nothing but the truth?
3         THE WITNESS: I do.
4            EXAMINATION BY MS. CARUSO
5         BY MS. CARUSO:
6     Q.   Good morning.
7     A.   Good morning.
8     Q.   Have you ever been deposed before?
9     A.   I have not.
10    Q.   Okay.  If at any point during the
11 deposition you would like some more water or would
12 like to take a break, just let me know.  We can
13 accommodate that.
14    A.   Okay.
15    Q.   I just ask that you finish answering
16 whatever question I asked at the time.
17    A.   Thank you.
18    Q.   Let's just step back a little bit.  There's
19 going to be a lot of memory lane for you.  If you
20 could tell me a little bit about your education
21 since graduating from high school.
22    A.   I graduated from Central School of Art and
23 Design in London in 1983 with a BA in industrial
24 design engineering.  I've been a professional since
25 then.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 184

1  THE WITNESS: This, I believe, is the power
2  button.
3  BY MS. CARUSO:
4  Q. Is the power button on the iPod touch a
5  continuous form at its top?
6  MR. MONACH: Objection. Vague.
7  THE WITNESS: Help me understand that
8  question.
9  BY MS. CARUSO:
10  Q. So in Figure 7, the figure that is shown in
11  C --
12  A. Yes.
13  Q. -- has a broken lozenge shape. Do you see
14  that?
15  MR. MONACH: Object to the form of the
16  question.
17  THE WITNESS: I see a lozenge, and it's
18  badly photocopied and -- or what appears to be a
19  lozenge, and that is broken in a couple of places.
20  BY MS. CARUSO:
21  Q. Do you have any understanding of why it's
22  broken in a couple of places?
23  A. I don't understand why it would be broken
24  in a couple of places.
25  Q. You're not aware of any feature of the iPod

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 185

1 touch that would require depicting this button in
2 this fashion?
3     MR. MONACH: Objection to the extent it
4 lacks foundation. Calls for speculation or calls
5 for a legal conclusion.
6     THE WITNESS: These drawings are drawings
7 made by a patent attorney. I don't know the reasons
8 why they would be drawn in this manner.
9     BY MS. CARUSO:
10   Q. I'm going to hand you something that I
11 think that you've seen before. If you could hold it
12 up for the camera so there's an image of it
13 recorded.
14     Do you have an understanding of what this
15 is?
16   A. This is what I believe to be an early
17 prototype of a tablet we were developing.
18   Q. When you say "we," do you mean the
19 industrial design group of Apple?
20   A. I mean Apple.
21   Q. When was Apple working on developing this
22 tablet?
23   A. To the best of my knowledge -- it was
24 definitely before the iPhone development, and to the
25 best of my knowledge, around 2003.

1    Q.    Did you work on the design of this tablet?

2    A.    I worked alongside my colleagues in the industrial design department as a collective and as a team on this.

5    Q.    Approximately how many months did you spend working on this design?

7    A.    We spent -- I really don't recall. It's going back a long time.

9    Q.    More than three months?

10    A.    Yes. I'm guessing. My best guess would be yes, more than three months.

12    Q.    Did you create any sketches relating to the development of this tablet design?

14    A.    I may have.

15    Q.    Is it common that you work on a design for more than three months and don't create a single sketch related to it?

18        MR. MONACH: Objection. Vague.

19        THE WITNESS: I believe I mentioned to you earlier that we tend to go into three dimensions very, very quickly. That's generally how we work.

22        BY MS. CARUSO:

23    Q.    Is it common that you work on a design for more than three months and don't create a single sketch related to it?

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            MR. MONACH:  Objection.  Vague.
 2            THE WITNESS:  It's possible.
 3            BY MS. CARUSO:
 4       Q.   Is it your understanding that you didn't
 5   create any sketches relating to tablet design?
 6       A.   I don't remember.
 7       Q.   Have you gone back to look through your
 8   sketchbooks from the 2003 time period to see if
 9   there were any sketches relating to the tablet
10   design?
11       A.   I don't remember the dates that were asked
12   for us to look at.  So I don't remember the dates.
13       Q.   You referred to this -- did you call it an
14   early prototype of the tablet design?
15       A.   I don't remember if I called it an early
16   prototype or a prototype.
17       Q.   Do you agree that it's an early prototype?
18       A.   I agree that it's a prototype.  I guess a
19   prototype by definition is -- anyway.  I'm sorry.
20       Q.   You've been handed what has been marked as
21   Exhibit 8, Lutton Exhibit 8.  Do you have that in
22   front of you?
23       A.   Yes.
24       Q.   Do you -- and that is US Design Patent
25   504889 --
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 188

1    A.    Yes.
2    Q.    -- correct?
3          You're named as an inventor of this design;
4    is that correct?
5    A.    Yes.
6    Q.    Did you participate in the team that
7    created this design?
8    A.    I did.
9    Q.    Does this D889 reflect the design of the
10   prototype that's in front of you?
11         MR. MONACH:  Objection.  Lack of
12   foundation.  Vague.  Objection, calls for a legal
13   conclusion.
14         THE WITNESS:  I believe so.
15         BY MS. CARUSO:
16   Q.    Do you see Figure 6 of the D889 patent?
17   A.    I do.
18   Q.    There's a circular element on that.  Do you
19   see it?
20   A.    I do.
21   Q.    Do you also see that on the prototype that
22   you're holding?
23   A.    I do.
24   Q.    In Figure 1 of the D889 patent, there's
25   a -- a line that's thicker than the other lines.  Do

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 189

1   you see that?
2          MR. MONACH:  Objection.  Vague.  Objection
3   to the extent it may not accurately reflect the
4   drawing.
5          THE WITNESS:  I see a bad photocopy.
6          BY MS. CARUSO:
7       Q.   Starting at the left, do you see three
8   parallel lines on the left-hand side of the top
9   drawing?
10      A.   I do.
11      Q.   Do you see the middle line of those three?
12      A.   I do.
13      Q.   Does it appear to you to be thicker than
14  the other two?
15      A.   Yes.
16      Q.   Do you have an understanding of why it's
17  thicker?
18         MR. MONACH:  Objection.  Lack of
19  foundation.  Objection to the extent it calls for a
20  legal conclusion.
21         THE WITNESS:  I don't.
22         BY MS. CARUSO:
23      Q.   Do you have any understanding of what that
24  middle line represents?
25         MR. MONACH:  Same objection.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 191

```
 1            MR. MONACH:  Objection.  Vague.
 2            THE WITNESS:  I don't understand if I
 3   understand your definition.
 4            BY MS. CARUSO:
 5       Q.   Did the gap -- why was there a gap?  I'll
 6   ask that question.
 7       A.   I really don't remember.
 8       Q.   If you'd look at this --
 9       A.   Thank you.
10       Q.   -- and if you could just hold that up again
11   for the camera.
12            THE VIDEOGRAPHER:  I didn't get a shot of
13   the front.  You have to hold it longer for me.
14            Thank you.  Great.
15            BY MS. CARUSO:
16       Q.   Does that prototype also have a gap?
17       A.   It does.
18       Q.   And is there anything sort of in the
19   interior of that gap that you can see?
20            MR. MONACH:  Objection.  Vague.
21            THE WITNESS:  I see a detail within what
22   you're calling the gap.
23            BY MS. CARUSO:
24       Q.   Is that detail found in the first prototype
25   you were looking at, as well?
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 192

1    A.    They appear to be similar.
2    Q.    Do you recall any discussions about that
3  detail?
4    A.    Having seen it now for the first time in
5  many years, I remember working as a team on this
6  detail.
7    Q.    Do you remember any discussion about the
8  detail?
9    A.    I don't.
10   Q.    Do you remember any reason why it added
11 esthetically to the product?
12         MR. MONACH:  Objection.  Vague.
13         THE WITNESS:  Probably had a very good
14 reason at the time.
15         BY MS. CARUSO:
16   Q.    But you can't recall right now what that
17 was?
18   A.    I can't recall.
19   Q.    And I asked you about any esthetic reason
20 for putting it there.  Do you remember any other
21 reason for having that detail?
22   A.    I don't recall.
23   Q.    Is it your understanding that Figure 1
24 reflects that detail?
25         MR. MONACH:  Object to the form of the

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 193

1  question to the extent it calls for a legal
2  conclusion.
3          But you can review that figure and give
4  your understanding.
5          THE WITNESS:  I believe that line reflects
6  the gap that's shown here.
7          BY MS. CARUSO:
8      Q.  I take it that as with the other design
9  patents we discussed, you can't call out any
10 particular contribution made by any member of the
11 design team with respect to the design of the D889
12 patent; is that correct?
13     A.  That's correct.
14     Q.  Would you describe the surface of this
15 prototype as contiguous from end to end?
16         MR. MONACH:  Object to the form of the
17 question as vague.
18         THE WITNESS:  I would describe the piece of
19 glass here as being contiguous.
20         BY MS. CARUSO:
21     Q.  Would you describe the glass surface as
22 extending to the outside of the product?
23         MR. MONACH:  Objection.  Vague.
24         THE WITNESS:  I don't know if I'd say -- if
25 I would categorize it that way.

Page 194

1        BY MS. CARUSO:
2    Q.   Why not?
3    A.   Well, you said to the outside of the
4 product.
5    Q.   M-hm.
6    A.   And the glass stops.  It doesn't go to the
7 outside of the product.
8    Q.   Would you describe the surface of the
9 iPhone as extending to the outside of the product?
10        MR. MONACH:  Objection.  Vague.
11        BY MS. CARUSO:
12   Q.   I'll reask the question.
13        Would you describe the glass surface of the
14 iPhone as extending to the outside of the product?
15   A.   I would describe the glass surface
16 extending to the bezel.
17        MS. CARUSO:  We need to take a short break
18 to change the tape.
19        THE VIDEOGRAPHER:  This marks the end of
20 Tape No. 3 in today's deposition of Daniele de
21 Iuliis.  The time is 5:29 p.m.  We are off the
22 record.
23        (Recess taken, from 5:29 to 5:38.)
24        THE VIDEOGRAPHER:  This marks the beginning
25 of Tape No. 4 in today's deposition of Daniele de

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 196

1      MS. CARUSO:  No further questions.
2      MR. MONACH:  I have no questions.  Thank
3  you, sir.
4      MS. CARUSO:  Thank you.
5      THE VIDEOGRAPHER:  This marks the end of
6  Tape No. 4 of 4 and concludes today's deposition of
7  Daniele de Iuliis.  The time is 5:41 p.m.  We are
8  off the record.
9      (Time Noted:  5:41 p.m.)
10                 ---oOo---
11
12
13                    _____
14                    DANIELE De IULIIS
15  Subscribed and sworn to
    before me this 14 day
16  of November 2011.
17  _____
18
19
20
21
22
23
24
25