# EXHIBIT 20
# FILED UNDER SEAL

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 1

1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4    APPLE INC., a California        )
     corporation,                    )
5                                     )
                          Plaintiff, )
6                                     )
             vs.                      )   No: 11-CV-01846-LHK
7                                     )
     SAMSUNG ELECTRONICS CO., LTD,    )
8    a Korean business entity;        )
     SAMSUNG ELECTRONICS AMERICA,     )
9    INC., a New York corporation;    )
     SAMSUNG TELECOMMUNICATIONS       )
10   AMERICA, LLC, a Delaware         )
     limited liability company        )
11                                    )
                          Defendants. )
12   _____)

13

14      **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

15

16              DEPOSITION OF QUIN HOELLWARTH

17               Redwood Shores, California

18               Tuesday, October 25, 2011

19

20

21

22

23   Reported By:

24   LINDA VACCAREZZA, RPR, CLR, CRP, CSR. NO. 10201

25   JOB NO. 42859

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 2

1

2

3

4                    Tuesday, October 25, 2011

5                    9:32 a.m.

6

7

8        Videotaped deposition of QUIN

9    HOELLWARTH, held at Quinn Emanuel

10   Urquhart & Sullivan, LLP, 555 Twin

11   Dolphin Drive, Redwood Shores,

12   California, pursuant to

13   Subpoena before Linda Vaccarezza, a

14   Certified Shorthand Reporter of the

15   State of California.

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

                                                      Page 3

 1           A P P E A R A N C E S:

 2                  QUINN EMANUEL URQUHART & SULLIVAN

 3                  Attorneys for Defendants

 4                       865 South Figueroa Street

 5                       Los Angeles, California 90017

 6                  BY:  MICHAEL T. ZELLER, ESQ.

 7                       ANNA NEILL, ESQ

 8                       michaelzeller@quinnemanuel.com

 9                       annaneill@quinnemanuel.com

10

11                  MORRISON & FOERSTER

12                  Attorneys for Plaintiff

13                       755 Page Mill Road

14                       Palo Alto, California 94304

15                  BY:  ERIK J. OLSON, ESQ.

16                       ejolson@mofo.com

17

18

19

20    also present:  Wendy Anna Herby,
                     Apple in-house Counsel
21

22

23

24

25    Videographer:  Jason Kocol

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 4

1          THE VIDEOGRAPHER:  This is the

2     start of tape labeled Number 1 of the

3     videotaped deposition of Quin Hoellwarth

4     in the matter Apple Incorporated versus

5     Samsung Electronics Company, Limited, in

6     the United States District Court,

7     Northern District of California, San Jose

8     division.  Case number 11-CV-01846-LHK.

9     This deposition is being held at 555 Twin

10    Dolphin Drive, Redwood Shores,

11    California, on October 25th, 2011.  It is

12    approximately 9:32 a.m.

13          My name is Jason Kocol and I'm

14    a legal video specialist from TSG

15    Reporting, Incorporated, headquartered at

16    747 Third Avenue, New York, New York.

17    The court reporter is Linda Vaccarezza in

18    association with TSG Reporting.

19          Will counsel please introduce

20    yourselves for the record.

21      MR. ZELLER:  Mike Zeller for

22    Samsung.

23      MS. NEILL:  Anna Neill for Samsung.

24      MR. OLSON:  Erik Olson of Morrison

25    & Foerster on behalf of Apple and the

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 5

1          witness.

2                  THE VIDEOGRAPHER:  Will the court

3          reporter please swear in the witness.

4                          QUIN HOELLWARTH,

5                              having been duly

6          sworn, by the Certified Shorthand

7          Reporter, was examined and testified as

8          follows:

9                          EXAMINATION

10   BY MR. ZELLER:

11          Q.    Good morning.

12          A.    Good morning.

13          Q.    Please tell us and spell your full

14   name for the record.

15          A.    Quin Hoellwarth.  Q-U-I-N, C as a

16   middle initial, Hoellwarth, H-O-E-L-L-W-A-R-T-H.

17          Q.    Have you ever been known as or

18   gone by any other name?

19          A.    I have not.

20          Q.    And are you currently employed?

21          A.    I am.

22          Q.    By whom?

23          A.    Apple.

24          Q.    How long have you worked for

25   Apple?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 101

 1   whether a design is new and original as compared

 2   to the prior art prior to the time that a design

 3   application is made?

 4              MR. OLSON:  Objection.  Asked and

 5         answered, but you can answer this "yes,"

 6         "no," "I don't know," I don't remember,"

 7         or to the extent that the only

 8         information is privileged, you should so

 9         state.

10              THE WITNESS:  I don't know.

11         Q.   Has it ever had such guidelines,

12   to your knowledge?

13         A.   I don't know.

14         Q.   Show you what's previously marked

15   as Exhibit 8, which is a copy of United States

16   design patent 504889.  Please let me know when

17   you've had a chance to review the 889 design

18   patent.

19              MR. OLSON:  Do you have a darker

20         copy?

21              MR. ZELLER:  We can get one.  Why

22         don't we go off the record for a moment.

23              THE VIDEOGRAPHER:  The time is

24         12:11 p.m. and we are off the record.

25              (Recess taken from 12:11 p.m. to

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 102

1          12:13 p.m.)

2                THE VIDEOGRAPHER:  The time is

3          12:13 p.m.  We are on the record.

4     BY MR. ZELLER:

5          Q.    You've an opportunity to review

6     the 889 design patent?

7          A.    I have.

8          Q.    Do you recognize this as an issued

9     patent that you worked on the application for?

10         A.    Yes.

11         Q.    And you did this back when you

12    were with Beyer Weaver & Thomas?

13         A.    Yes.

14         Q.    Was your involvement complete

15    prior to the time that you went and began working

16    as an Apple employee or did your work on this

17    design patent application continue on?

18                MR. OLSON:  Did he work on, you

19           mean the prosecution?

20                MR. ZELLER:  Yes.

21                THE WITNESS:  I started at Apple

22           in 2007.  This issued in 2005.

23         Q.    So the answer is that it was

24    completed before you left?

25         A.    Yes.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 103

1          Q.     Before you left Beyer Weaver &

2    Thomas?

3          A.     Yes.

4          Q.     And generally speaking, what did

5    you do in connection with the application that

6    resulted in the 889 design patent?

7          A.     What do you mean, generally do?

8    Can you be more specific?

9          Q.     Well, please tell me what the

10   nature of your tasks and responsibilities were in

11   connection with the 889 design patent in the

12   prosecution?

13         A.     I prepared the patent application

14   and filed it.  Is that what you mean?

15         Q.     When you say that you prepared the

16   application, were you responsible for the

17   generation of the figures that are shown here in

18   the 889 design patent?

19         A.     Yes.

20         Q.     I take it you didn't draw them

21   yourself?

22         A.     Are you asking me if I did or --

23         Q.     Right.

24         A.     I did.

25         Q.     You drew these?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 104

1          A.    I did.

2          Q.    Did you draw all nine of the

3   figures?

4          A.    I believe so.

5          Q.    Generally speaking, in connection

6   with those design patent applications that you

7   worked on when you were with Beyer Weaver &

8   Thomas, did you actually draw the figures?

9          A.    I did.

10         Q.    Since you've been working as an

11  employee for Apple, with respect to those design

12  patent applications that you've worked on, do you

13  typically actually draw the figures?

14         A.    No.

15         Q.    So that practice changed at some

16  point?

17         A.    Yes, when I started at Apple.

18         Q.    Since the time period you began

19  working for Apple, who has prepared the figures

20  for the design patent applications?  And I'm

21  talking about actually physically drew them.

22         A.    In some circumstances, the outside

23  counsel.  Actually, an outside counsel prepares

24  the final drawings.  It's probably a better

25  answer.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 105

1          Q.     My question is, is more pedestrian

2     and mundane.  I'm trying to find out in those

3     instances where you were involved with design

4     patent applications after starting with Apple,

5     who was the person who actually physically does

6     the drawing?

7          A.     Well, in what time frame, because

8     it's an organic process.

9          Q.     Well, I've been focusing on the

10    time period since you began working for Apple.

11    But if the person who actually does the drawings

12    changed over time, please tell me that.

13         A.     Well, let's just say it varies or

14    it depends.

15         Q.     In general, are the figures of the

16    Apple design patent applications prepared by

17    Apple employees?

18         A.     The drawings for the patent

19    applications?

20         Q.     Right.

21         A.     No.

22         Q.     Typically, in those instances

23    where you've been involved with the applications,

24    are they done by outside vendors?

25         A.     Since being at Apple?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 116

1    as compared to the prior art?

2              MR. OLSON:  I'll instruct him not

3              to answer on the basis of privilege and

4              attorney work product.

5              (Testimony marked as requested.)

6        Q.    Did Apple or its counsel do

7    anything to determine that the design that's

8    shown here in the 889 design patent was new and

9    original as compared to the prior art?

10             MR. OLSON:  So if I may make a

11             suggestion as to how you may reframe that

12             in which I would allow the question.

13             MR. ZELLER:  Okay.

14             MR. OLSON:  Is he obviously was

15             personally involved in the participation

16             of the filing of this application in

17             2004.  So I would permit you to ask the

18             question whether he recalls doing

19             anything at that time.

20             MR. ZELLER:  Yeah.  That was the

21             context in which I was asking is back in

22             the prosecution of this application.  So

23             let me be more definitive, then, on the

24             time period of what I'm talking about.

25        Q.    Prior to the time that this design

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 117

1    patent issued on May 10, 2005, did Apple or its

2    counsel do anything to determine that the design

3    shown in the 889 design patent was new and

4    original as compared to the prior art?

5                    MR. OLSON:  Objection.  Vague on

6            "Apple or its counsel."  Obviously, I'll

7            allow him to answer as to what he did.

8                    THE WITNESS:  I don't recall.

9            Q.    Do you have any knowledge or

10   information in that regard?

11           A.    Not that I can remember.

12           Q.    You'll see that there are a number

13   of named inventors listed in the first column on

14   the first page of the 889 design patent.  Do you

15   see that?

16           A.    Yes.

17           Q.    Was anything done prior to the

18   time that this patent issued to determine that

19   these individuals were, in fact, the appropriate

20   inventors?

21           A.    I don't recall.

22           Q.    Do you have any knowledge or

23   information in that regard?

24           A.    Not that I can remember.

25           Q.    Now, you mentioned that you

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 118

1    prepared the figures that are shown in the 889

2    design patent?

3              A.    Yeah.

4              Q.    Did you base those drawings on

5    some information that you received from Apple?

6              A.    Yes.

7              Q.    And one of the sources of

8    information that you used to prepare the figures

9    were photographs?

10             A.    Yes.

11             Q.    I'm going to show you what was

12   previously marked as Exhibit 841, which is a

13   multi-page document bearing Bates numbers APLPROS

14   00000 18778 through 18798.  And please let me

15   know when you've had an opportunity to review

16   Exhibit 841.

17             A.    (Document review.)

18             Q.    Do you recognize what's been

19   marked as Exhibit 841?

20             A.    I do.

21             Q.    What are these?

22             A.    These are copies of a product,

23   copies of a picture of some product.

24             Q.    And what is the product that is

25   represented in these copies, these materials?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 119

1         A.    It's an electronic device of some

2    sort.

3         Q.    Is this electronic device that's

4    shown here in Exhibit 841 the same electronic

5    device that was used as the basis for the

6    drawings in the 889 design patent?

7         A.    Just to clarify where these -- I

8    know that you presented this as evidence, but

9    where are they from?

10        Q.    Well, I'm going to get to that in

11   a minute.  But I'm just trying to first figure

12   out something is, do these photographs and other

13   images in Exhibit 841 have some relationship to

14   the drawing and drawings that are depicted here

15   in the 889 design patent

16             MR. OLSON:  And Mr. Zeller, I

17   think what we're saying is if he knew the source

18   of them, it would help him to answer that

19   question.  I may be --

20             THE WITNESS:  Yeah, I mean, as far

21             as I don't know -- I mean, until I know

22             where this is from, I don't -- I can't

23             answer your question, right.  I mean...

24        Q.    Well, I mean, I'm just an outside

25   lawyer; I don't know facts.  I'm trying to find

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

1    out the facts from you.  What I can say is is

2    that, that these -- and I'm talking about exactly

3    in this form is how it was produced by an Apple

4    prosecuting firm, the Stern firm, as I understand

5    it.  That's my best understanding.

6              A.    This is from the file wrapper.

7              Q.    I believe that there are photos

8    that are in the file wrapper that I'm going to

9    ask you about next that I believe correspond to

10   these.  But again, I'm just an outside lawyer.

11   I'm trying to see how these things are related.

12   And that's my -- that's the point of my

13   questioning.  So it's a little hard for me to

14   make representations to you about any of this

15   because that's part of what I'm trying to find

16   out.

17              MR. OLSON:  Did we provide source

18         information for these?

19              MR. ZELLER:  I don't think so.  My

20         last understanding -- we have asked for

21         the native files of these, these images.

22              MR. OLSON:  And I'm happy to

23         address that as well, but go ahead.

24              MR. ZELLER:  And any original

25         photographs so that we would have clear

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 121

1           images of it and the like.  But, you

2           know, the information we have is pretty

3           limited.  It was, as I understand it,

4           produced by Stern, which I believe took

5           over the prosecution, but -- and that's

6           probably why it's in possession of them.

7           But it doesn't -- we don't know what the

8           ultimate source of this was.

9                    It was presumably transferred

10          from Beyer Weaver & Thomas at some point

11          would be my assumption, but again, that's

12          part of what I'm trying to find out.  So

13          maybe if we step back for a minute and

14          try some kind of foundational things and

15          see if this helps --

16          A.    Okay.

17          Q.    -- jog your memory on any of

18   this.  And let's first focus on the '889 design

19   patent for a moment.

20          A.    Yes.

21          Q.    At some point, did you actually

22   have a three-dimensional model that you were

23   shown or had access to that helped you form the

24   basis of the drawings that you made on the '889

25   design patent?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 122

1          A.     Yes.

2          Q.     And if you could direct your

3    attention to the page of Exhibit 841 that bears

4    Bates number APLPROS 0000018789.

5          A.     18789?

6          Q.     Yes.  And you'll see this is a

7    photograph of an individual.  Is this you?

8          A.     Yes.

9          Q.     And this photograph shows you

10   holding a three-dimensional tablet mock-up?

11         A.     Yes.

12         Q.     And does this depict the three-

13   dimensional mock-up that you had available to you

14   as a resource to create the '889 design patent

15   figures?

16         A.     Yes.

17         Q.     And in the course of that, was

18   there one model that you had to do that?

19              MR. OLSON:  As opposed to?

20              MR. ZELLER:  As opposed to more

21        than one.

22              THE WITNESS:  I don't recall.

23         Q.     Directing your attention to the

24   last page of Exhibit 841.

25         A.     (Witness complies.)

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 123

1          Q.    You'll see that this is a

2    cornucopia of you?

3          A.    Yes.

4          Q.    Do you know who created these?

5          A.    I mean, I don't know but I think

6    it was me.

7          Q.    And then directing your attention

8    to the other photographs that are part of Exhibit

9    841 which show various perspectives of the mock-

10   up, did you take these photos?

11         A.    It's likely.

12         Q.    Do you recall where you did this?

13   In other words, were you at the Beyer law firm's

14   offices?  Did you go to Apple to do this?  Do you

15   remember?

16         A.    Yes, I remember.

17         Q.    And where was it?

18         A.    Apple.

19         Q.    And I take it that's the occasion

20   in which you were provided the mock-up that's

21   depicted in these photographs and other images

22   that we have marked as Exhibit 841?

23         A.    I believe so.

24         Q.    Do you know where the photographs

25   are?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 236

1   the inventors?

2                   MR. OLSON:  You can testify as to

3               any steps you may have taken, meetings

4               you may have had, et cetera, without

5               disclosing the content of such

6               communication, to the extent that you

7               have a recollection.

8                   THE WITNESS:  I can't speak to

9               Apple.  For myself, I don't recall.

10      Q.      Was anything done to determine

11  whether any of the named inventors on the '889

12  design patent application, in fact, made a

13  contribution to the claimed invention?

14                  MR. OLSON:  You can identify any

15  steps you took or meetings you had or things that

16  you did with respect to that question.

17                  THE WITNESS:  Just generally?

18                  MR. OLSON:  Without -- I think the

19              question is specific to the '889 patent.

20              But you can give steps you took or

21              actions you took or things you can

22              remember yourself doing without

23              disclosing the content of any

24              communication that you may have received

25              from someone.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

1              THE WITNESS:  I don't recall.

2         Q.    Generally speaking, you're aware

3    that a design patent can only have a single

4    claim, right?

5         A.    Yes.

6         Q.    And what's your understanding of

7    what defines a claim in a design patent, just

8    generally speaking?

9              MR. OLSON:  I'll let that answer.

10             THE WITNESS:  The drawings.

11        Q.    You're generally aware that you

12   can't get more than one design patent for what is

13   substantially or essentially the same design,

14   right?

15             MR. OLSON:  Objection.  Vague.

16             THE WITNESS:  Generally, yes.

17        Q.    And generally speaking, you

18   understand that when Apple seeks and obtains a

19   design patent, that Apple is necessarily

20   representing or stating to the patent office that

21   the overall appearance of the patent design is

22   not substantially the same as another patented

23   design, right?

24             MR. OLSON:  Wait a second.  Calls

25        for a legal opinion and instruct him not

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 238

1          to answer on the ground of attorney-

2          client privilege and work product.

3            (Testimony marked as requested.)

4              THE WITNESS:  Can we take a

5          break?  Is it possible?

6              MR. ZELLER:  Okay.

7              THE VIDEOGRAPHER:  The time is

8          5:06 p.m.  We are off the record.

9        (Recess taken from 5:06 p.m. to 5:19 p.m.)

10              THE VIDEOGRAPHER:  The time is

11          5:19 p.m.  We are on the record.

12    BY MR. ZELLER:

13          Q.   Does Apple --

14              MR. OLSON:  Do you mind, while we

15          are doing stuff, can we just clean up the

16          figures?

17              MR. ZELLER:  Sure.

18          Q.   Does Apple have any processes or

19    procedures in place to ensure that it is not

20    double patenting?

21          A.   At this time?  Is that what your

22    question, is at this time?

23          Q.   Yes.  I'm talking about currently.

24          A.   I don't know.

25          Q.   Has it ever?

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 350

1           THE VIDEOGRAPHER:  This marks the

2     end of the addendum to Tape Number 5 of

3     today's deposition of Quin Hoellwarth,

4     and concludes today's deposition.

5               The time is 8:47 p.m.  We are

6     off the record.

7

8         (Time noted: 8:47 p.m.)

9

10

11

12

13                    _____

14                     QUIN HOELLWARTH

15

16

17    Subscribed and sworn to before me

18    This        day of               , 2011.

19

20    _____

21

22

23

24

25