# EXHIBIT 64
# FILED UNDER SEAL

Confidential Attorneys' Eyes Only

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4    APPLE INC., a California
      corporation,
 5
 6           Plaintiff,
 7    vs.                    Case No. 11-CV-01846-LHK
 8    SAMSUNG ELECTRONICS CO., LTD.,
      a Korean business entity;
 9    SAMSUNG ELECTRONICS AMERICA,
      INC., a New York corporation;
10    SAMSUNG TELECOMMUNICATIONS
      AMERICA, LLC, a Delaware
11    limited liability company,
12           Defendants.
      ---------------------------------/
13
14
15
16                   CONFIDENTIAL
17              ATTORNEYS' EYES ONLY
18                 OUTSIDE COUNSEL
19      VIDEOTAPED DEPOSITION OF IMRAN CHAUDHRI
               Redwood Shores, California
20            Friday, October 14, 2011
21
22
23    Reported by:
      LORRIE L. MARCHANT, CSR No. 10523, RPR, CRR, CCRR, CLR
24
      JOB NO. 42879
25
```

Confidential Attorneys' Eyes Only

1          October 14, 2011

2            9:35 a.m.

3

4   Videotaped Deposition of IMRAN

5   CHAUDHRI, held at the offices of Quinn

6   Emanuel Urquhart & Sullivan, LLP, 555

7   Twin Dolphin Drive, 5th Floor, Redwood

8   Shores, California, before Lorrie L.

9   Marchant, a Certified Shorthand

10  Reporter, Registered Professional

11  Reporter, Certified Realtime Reporter,

12  California Certified Realtime Reporter

13  and Certified LiveNote Reporter.

14

15

16

17

18

19

20

21

22

23

24

25

Confidential Attorneys' Eyes Only

1              A P P E A R A N C E S:

2

3     FOR THE PLAINTIFF APPLE INC.:

4          MORRISON & FOERSTER
           BY:  MATTHEW KREEGER, ESQ.

5          425 Market Street
           San Francisco, California 94105

6

7

8     FOR THE DEFENDANTS SAMSUNG:

9          QUINN EMANUEL URQUHART & SULLIVAN
           BY:  ALAN WHITEHURST, ESQ.

10         1101 Pennsylvania Avenue NW
           Washington, D.C. 20004

11

12    and

13         BY:  ALEX BAXTER, ESQ
                MARGRET CARUSO, ESQ.

14              BRETT ARNOLD, ESQ.
           555 Twin Dolphin Drive

15         Redwood Shores, California 94065

16

17    and

18

           BY:  MICHAEL ZELLER, ESQ.

19         865 South Figueroa Street
           Los Angeles, California 90017

20

21

22    ALSO PRESENT:

23         Cyndi Wheeler, Apple IP Litigation Counsel

24         Alan Dias, Videographer

25                   ---oOo---

Confidential Attorneys' Eyes Only

Page 4

1          (Marked for identification purposes,

2          Exhibit 570 through 572.)

3          THE VIDEOGRAPHER:  We are on the video

4    record at 9:34 a.m.  In the matter of Apple Inc.,

5    versus Samsung, in the United States District Court,

6    Northern District of California.  Case No.

7    11-CV-01846-LHK.

8          We are located today at 555 Twin Dolphin

9    Drive, in the City of Redwood Shores, California.

10   Today is October 14, 2011, and the time is 9:35 a.m.

11         My name is Alan Dias from TSG Reporting.

12         Counsel, would you please identify yourself

13   for the record.

14         MR. WHITEHURST:  Good morning.  My name

15   Alan Whitehurst.  And with me today is my colleague,

16   Alex Baxter.  We are with the law firm Quinn

17   Emanuel, and we represent Samsung.

18         MR. KREEGER:  Matthew Kreeger, Morrison &

19   Foerster, representing Apple.  With me is

20   Cyndi Wheeler from Apple.

21         THE VIDEOGRAPHER:  Will the court reporter

22   please swear in the witness.

23         THE REPORTER:  Do you solemnly swear or

24   affirm under the penalties of perjury that the

25   testimony you are about to offer will be the truth,

Confidential Attorneys' Eyes Only

Page 5

1    the whole truth and nothing but the truth?

2            THE WITNESS:  I do.

3            THE VIDEOGRAPHER:  You may proceed.

4              EXAMINATION BY MR. WHITEHURST

5            BY MR. WHITEHURST:

6       Q.   Good morning, Mr. Chaudhri.

7       A.   Good morning.

8       Q.   My name is Alan Whitehurst, and I will be

9    taking your deposition today.

10           Could you please state your full name and

11   address for the record.

12      A.   My name is Imran Chaudhri.  My address is

13   57 Beaumont, San Francisco, California 94118.

14      Q.   And before the deposition, I marked as

15   Exhibit 570 a copy of your Deposition Notice.

16           Have you testified in a deposition before?

17      A.   I have.

18      Q.   How many times?

19      A.   Once.

20      Q.   And what case was that for?

21      A.   It was a -- a case involving Motorola.

22      Q.   Was that for a litigation between Motorola

23   and Apple?

24      A.   I believe so.

25      Q.   And when was that deposition?

Confidential Attorneys' Eyes Only

Page 132

1   this very broadly, then, I take it you don't have

2   any knowledge or information about the specific

3   mockup that's in front of you right now?

4       A.   That's correct.

5            MR. ZELLER:  So I think that --

6            MR. KREEGER:  Can we take a quick break,

7   please?

8            MR. ZELLER:  Sure.

9            THE VIDEOGRAPHER:  This is the end of Disk

10  No. 3, Volume I.  We are off the record at 2:45 p.m.

11           (Recess taken, from 2:45 to 2:56.)

12           THE VIDEOGRAPHER:  This is the beginning of

13  Disk No. 4, Volume I.  We are back on the record at

14  2:56 p.m.  You may proceed.

15           BY MR. ZELLER: Let's please mark as

16  Exhibit 576 a multipage document, which is a copy of

17  the United States Design Patent 627,790.

18           (Marked for identification purposes,

19           Exhibit 576.)

20           BY MR. ZELLER:

21      Q.   Please let me know when you've had a chance

22  to review Exhibit 576.

23      A.   Okay.

24      Q.   Do you recognize this as the '790 design

25  patent that you're named as the inventor on?

Confidential Attorneys' Eyes Only

Page 133

1      A.    I do.

2      Q.    And I take it you've seen this before

3   today?

4      A.    I have.

5      Q.    Can you please tell me, upon reviewing

6   the -- the figure which is on the last page of

7   Exhibit 790 [sic], what is it that you invented

8   that's reflected here?

9           MR. KREEGER:   Objection.

10          You can answer.

11          THE WITNESS:   It looks like it's the home

12   screen for the iPhone.

13          BY MR. ZELLER:

14      Q.    And in terms of what's depicted here of the

15   home screen of the iPhone that's shown in this

16   figure, what is it that you -- you came up with

17   yourself?

18      A.    I came up with the shape of the icons and

19   the way they're laid out.   And the two sections.

20      Q.    And when you say "the two sections," the

21   fact that there's two rows on top and then this

22   missing or blank area and then a bottom row?

23      A.    Yeah.   The -- mainly that the bottom row is

24   different from the rest of the icons.

25      Q.    And what do you mean by that?   How are they

Confidential Attorneys' Eyes Only

Page 134

1   different from the rest of the icons?

2       A.   They -- they give the customer a quicker

3   access to them.

4       Q.   Oh, I see.

5            The bottom row, because it remains static,

6   as opposed to moving when -- when pages are scrolled

7   through on the device, gives the user quicker access

8   to those -- those bottom -- that bottom row of

9   icons?

10      A.   For example, yeah.

11      Q.   What else does it do?  What other ways does

12  it give -- does this layout give the customer

13  quicker access?

14      A.   It also gives them a closer proximity to

15  where their finger was previously.

16      Q.   And perhaps if you could explain that for

17  me.  I'm not -- I'm not entirely following that

18  part.

19      A.   So the customer would press the home

20  button, which would bring them to this home screen.

21  And generally their -- their finger would be towards

22  the bottom of the screen anyway.  And it means that

23  their -- that their finger wouldn't have to travel

24  as far.

25      Q.   And by that, it means that having that --

Confidential Attorneys' Eyes Only

1   that bottom row placed where it is, in the manner

2   you have it placed, is -- is that it's easier and

3   faster for the -- the customer or the user to use?

4        A.    That's correct.

5        Q.    So are there other -- other ways in which

6   the layout that's depicted here on this figure of

7   the '790 design patent is -- is easier for users to

8   use?

9        A.    In that it's a regular layout.

10       Q.    What do you mean by "a regular layout"?

11       A.    That there is a -- an evenness to the

12   amount of -- to the rhythm of the spacing, that

13   there's rows and columns that are orderly -- laid

14   out in an orderly fashion.

15       Q.    And how is it that that makes the layout

16   easier to use for the customer?

17       A.    Well, it makes it predictable.

18       Q.    Maybe I should try it this way:  You

19   mentioned that having it -- the -- the layout of the

20   icons as depicted here in the figure of the '790

21   design patent means that it's an orderly layout.

22            What do you mean by "orderly"?

23       A.    By "orderly" I mean that they're very clean

24   in terms of how they are placed.  They're regular.

25       Q.    And in your view does that make it easier

Confidential Attorneys' Eyes Only

Page 136

1    for users to actually use the device?

2         A.    I believe so.

3         Q.    And -- and how is that?

4         A.    It reduces clutter.

5         Q.    And that's one way in which it makes it --

6    the layout, and ultimately the device, then, easier

7    and faster to use?

8         A.    Yes.

9         Q.    And is that what you were attempting to

10   accomplish by -- by this layout that's depicted here

11   in the figure of the '790 design patent?

12        A.    That was one of the things.

13        Q.    Ultimately making it faster and easier for

14   consumers to use?

15        A.    And simpler.

16        Q.    And how does that -- maybe I should ask

17   this:  Sometimes I hear designers use the term "the

18   human factor" as part of the design process.

19             Is that a term that you typically use or --

20   or one that you are familiar with?

21        A.    No.

22        Q.    Is there something similar that you would

23   call it?

24             (Unidentified man enters room.)

25

1        BY MR. ZELLER:

2    Q.   Or those kind of considerations?

3    A.   Intuitive.

4    Q.   So another one of the reasons why you --

5    you did the layout as you did, that's shown here in

6    the figure to the '790 design patent, was -- was to

7    make it intuitive for the user?

8    A.   That was another reason.

9    Q.   And is that the same thing in your view

10   as -- as simplicity, or is that something different?

11   A.   I think there's a relationship to that.

12   Q.   So you -- you would, at least as a

13   designer, consider them to be somewhat different,

14   but related?

15   A.   Simplicity and intuitive?

16   Q.   M-hm.

17   A.   Yeah.

18   Q.   And maybe if you could just tell me a

19   little bit about how you view them as being

20   different and how you view them as overlapping.

21   Just by your terminology.  I'm just trying to make

22   sure I'm understanding.

23   A.   Sure.  Okay.

24       By "simplicity" I mean that it's really

25   easy to find things.  By "intuitive" I mean the fact

Confidential Attorneys' Eyes Only

1  that it's easy to find things the more natural it

2  feels.

3       Q.   So what -- what other -- what other goals

4  were you trying to reach, then, with respect to the

5  layout of the icons that's shown here in the figure

6  of the '790 design patent other than the -- the

7  simplicity, the orderly layout, the intuitive manner

8  and the like that you've already discussed?

9       A.   I wanted to make it easier for people to

10 know where to go for something.

11      Q.   And that's -- is that the same as -- as

12 trying to make it easy to -- to find functions on

13 the phone?

14      A.   Kind of.

15      Q.   And -- and how is it different, then?

16      A.   It's different in that if you wanted to go

17 to a particular aspect of the phone, you would see a

18 flat layout.  And ideally every one of those objects

19 would be unique to that -- that aspect that you were

20 looking for.

21      Q.   Then other than what you've -- you've

22 described in your answers earlier, is there anything

23 else that you were trying to accomplish by -- by way

24 of the layout that's depicted here, the icons in the

25 '790 design patent, or have you given me your

1    complete testimony on that?

2       A.   I'm sure there's other details, but those
3    are the high-level ideas.

4       Q.   And so what you've described, in your view,
5    is a -- describes the main purposes you intended to
6    achieve through the -- the layout that's depicted
7    here in Exhibit 790?  In other words, these are the
8    primary goals you were looking to achieve?

9       A.   That's right.

10      Q.   In terms of -- you'll notice that the
11   figure here has this blank area.  And just so the
12   record is clear on this, the top there are three
13   rows and then a blank area and then a bottom row of
14   another four icons.

15           Do you see that?

16      A.   I do.

17      Q.   In your view, was there -- was there
18   something different about having that blank area as
19   compared to what other people had done as of the
20   time that you -- you created this?

21           (Unidentified man leaves room.)

22           THE WITNESS:  Well, I'm not sure about what
23   other people had done.  But as far as the blank
24   area, there's really no difference between it and
25   the three by four above it.

Confidential Attorneys' Eyes Only

Page 151

1     Q.   You'll see on the -- the front page that

2  there is a law firm mentioned.  It's in the second

3  column, about halfway down.  And it says Sterne,

4  Kessler, Goldstein & Fox.

5     A.   I see that.

6     Q.   Did you have any communications with them

7  with respect to the '790 design patent?

8     A.   I did not.

9     Q.   Do you recall ever having any

10 communications with that law firm?

11    A.   I don't.

12    Q.   Do you have any knowledge or information as

13 to how it was determined that you would be the sole

14 named inventor on this design patent?

15    A.   I don't.

16    Q.   Do you know where the figure came from?

17    A.   I don't, actually.

18    Q.   Did you yourself draw it?

19    A.   I did not.

20    Q.   If you wanted to find out from someone

21 there in the company who -- who actually did the

22 drawing or at least the first draft of this drawing

23 of the figure, is there someone at the company you

24 can think of you'd go ask?

25    A.   I would probably start with Quinn.

Confidential Attorneys' Eyes Only

Page 152

1    Q.    He's the in-house person you mentioned

2    before?

3    A.    M-hm.

4    Q.    So just focusing, then, on the fact that

5    the icons are laid out here in kind of -- in rows

6    and columns, were there other alternatives that you

7    considered other than having the layout done as rows

8    and columns?

9    A.    I don't remember.

10    Q.    Have you ever seen alternatives that you

11    thought were as effective in terms of the icon

12    layout, where it was in some layout or organization

13    other than generally as rows and columns?

14         MR. KREEGER:  Objection.  Vague.

15         You can answer.

16         THE WITNESS:  I don't believe so.

17         BY MR. ZELLER:

18    Q.    Would you consider the -- the layout of

19    icons in rows and columns to be the common default

20    organization for icons?

21    A.    On a phone?

22    Q.    Well, on -- on electronic devices

23    generally.

24    A.    No.

25    Q.    What would you consider to be the most

Confidential Attorneys' Eyes Only

Page 153

1   common layout?

2       A.   A list.

3       Q.   I'm sorry?

4       A.   A list.

5       Q.   A list?

6       A.   (No audible response.)

7       Q.   And what do you mean by "a list"?

8       A.   A list of icons and their names next to

9   them and dates and -- kind of like what you would

10  find in a file browser.  That I think is the most

11  common.

12      Q.   Maybe I need to put more context on this.

13           You're talking about machines generally,

14  including, like, desktops and the like?

15      A.   Right.

16      Q.   I'm -- I'm asking something a little bit

17  more specific.

18      A.   Okay.

19      Q.   I take it you've seen other smartphones

20  that are out there in the market?

21      A.   I have.

22      Q.   And in terms of just, again, very

23  generally -- and I'm not even talking about the

24  exact arrangement here of the '790 design patent,

25  I'm just talking generally in terms of having rows

1   this and -- and just tell me, generally speaking,

2   first whether you recognize this document or recall,

3   I should say, ever seeing this before?

4           MR. KREEGER:  And I will just caution the

5   witness not to, in answering that question, reveal

6   any attorney-client communication, including any

7   documents that were shown to you in preparation for

8   your deposition.

9           THE WITNESS:  So I don't recall seeing this

10  document.

11          BY MR. ZELLER:

12      Q.   I'd like to direct your attention to Figure

13  4.  And that says at the top, Sheet 3 of 19.

14          Do you have that?

15      A.   This one (indicating)?

16      Q.   Yes.  That's it.

17          And -- and directing your attention to the

18  top left-hand portion of this page, underneath the

19  heading of "Figure 4," you'll see that there's a

20  reference here to reduced icon.

21          Do you see that?

22      A.   Yes.

23      Q.   And you'll see that there are squares laid

24  out, and generally we can call it a pattern of rows

25  and columns.

Confidential Attorneys' Eyes Only

Page 156

1        Do you see that?

2    A.    I do.

3    Q.    And by the way, is there -- is there some

4  name you would typically give to this kind of

5  arrangement in rows and columns?  Would you call it

6  a grid or a matrix?

7    A.    A grid.

8    Q.    And you would consider the -- the layout

9  that's shown here in the '790 design patent figure

10  also to be a grid layout?

11    A.    Yes.

12    Q.    So then going back for a moment to the Wada

13  patent, and specifically Figure 4, you'll see, as we

14  were talking about, that this is -- this is laid out

15  in columns and rows for the icons?

16    A.    I see that.

17    Q.    And -- and you'll see, by the way, that on

18  the first page, that this was filed -- this patent

19  application was filed on January 4, 2005.

20    A.    Okay.

21    Q.    Do you have any reason to -- to doubt that

22  the layout that's depicted here in Figure 4, this --

23  this grid layout, was, in fact, conceived of or put

24  into fixed form by the inventor here by January 4,

25  2005?

Confidential Attorneys' Eyes Only

Page 157

1    A.   I wouldn't know.

2    Q.   I take it you don't know the -- the name

3 of -- excuse me, you don't know the inventor who is

4 named here?

5    A.   I do not.

6    Q.   Do you have any reason to doubt that this

7 inventor, Wada, had come up with a grid layout of

8 icons, namely, having columns and rows as the

9 organization, by January 4 of 2005?

10   A.   I wouldn't know.

11   Q.   Seeing this, you'll -- you'll agree with me

12 that -- that by that time, if -- if this patent is

13 accurate, that there was -- there was someone else

14 who had already come up with a -- a grid pattern for

15 icons, namely, columns and rows, as we were

16 discussing; right?

17   A.   If you're just looking at the grids and --

18 yes.

19   Q.   And then just focusing on that -- that grid

20 layout that's depicted here in Figure 4 of the Wada

21 patent, do you consider it to be substantially the

22 same just in terms of the layout as what is shown

23 here in the '790 design patent?

24        MR. KREEGER:  Objection.

25        You can answer.

Confidential Attorneys' Eyes Only

Page 158

1          THE WITNESS:  I see differences.

2          BY MR. ZELLER:

3      Q.   And with respect to the differences, do you

4  think it makes it a completely new and different

5  design that's shown here in Exhibit 790?

6      A.   In some ways, yes.

7      Q.   And -- and what are those differences?

8      A.   Well, for one, the objects are rounded --

9  rounded recs.

10          (Reporter clarification.)

11          THE WITNESS:  Recs.

12          BY MR. ZELLER:

13      Q.   By that you mean rectangles?

14      A.   Right.

15      Q.   Okay.  Just so we have a clear record.

16      A.   Sorry.  That the radius is rounded.

17      Q.   Anything else that you think -- in terms of

18  just comparing what's shown here in that portion of

19  Figure 4 that we're talking about, the Wada patent,

20  and the figure in the '790 design patent, do you

21  think gives it a -- a different overall impression

22  other than what you mentioned?

23      A.   Yeah.  I don't see how the Wada patent

24  accommodates the text as well as this one does, so I

25  see that as a difference.

Confidential Attorneys' Eyes Only

1      Q.    Any others?

2      A.    I think the spacing of the grid is -- is

3  different.

4      Q.    Any others?

5      A.    Those are the things that pop out to me as

6  being different.

7      Q.    Just focusing on that blank space that

8  we've talked about with respect to the '790 design

9  patent, do you think that the design that's shown

10 here on the '790 design patent, by virtue of having

11 that blank space, makes it substantially different

12 from the layout that's shown in Figure 4 of Wada

13 that we're talking about, or do you consider that to

14 be a minor or trivial difference?

15     A.    It's not a significant difference.  I think

16 the significant differences are -- are what I

17 mentioned.

18     Q.    One of the differences that you mentioned

19 was that the icon layout that is depicted here in

20 the '790 design patent that you're the named

21 inventor on has -- it better accommodates text, I

22 think is -- is how you put it.

23     A.    M-hm.

24     Q.    Please tell me what you mean by that.

25     A.    If you look at the grid here between the

Confidential Attorneys' Eyes Only

1    rows there's a -- an appreciable amount of room to

2    accommodate a label that would indicate what the

3    icon is.  And that's what I mean by that.

4        Q.   So the words that actually go with the icon

5    to, say, for example, settings or phone or --

6        A.   That's right.

7        Q.   Let me show you what was previously marked

8    as Exhibit 421, which is United States Design Patent

9    617,334.

10       A.   Thank you.

11       Q.   And if you'd please take a look at this

12   document and let me know when you've had a chance to

13   review it.

14       A.   Okay.

15       Q.   Do you recognize what we marked as

16   Exhibit 421?

17       A.   I do.

18       Q.   And this is a -- another design patent that

19   you're -- well, I'm sorry.  Let me rephrase this.

20            This is the '334 design patent that you are

21   a named inventor on?

22       A.   Right.

23       Q.   And I -- I take it you've seen this

24   document before today?

25       A.   I have.

Confidential Attorneys' Eyes Only

Page 253

1   today's deposition.  We are off the record at

2   6:53 p.m.  The master disk will be held by TSG

3   Reporting.

4         (Time noted:  6:53 p.m.)

5             ---oOo---

6

7

8               IMRAN CHAUDHRI

9

10    Subscribed and sworn to

      before me this 21 day

11    of DEC 2011.

12

13

14

15

16

17

18

19

20

21

22

23

24

25