# EXHIBIT 65
# FILED UNDER SEAL

Highly Confidential Attorneys' Eyes Only

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN JOSE DIVISION
 4   APPLE INC., a California         )
     corporation,                     )
 5                                    )
                    Plaintiff,        )
 6                                    )
          vs.                         )  No: 11-CV-01846-LHK
 7                                    )
     SAMSUNG ELECTRONICS CO., LTD,    )
 8   a Korean business entity;        )
     SAMSUNG ELECTRONICS AMERICA,     )
 9   INC., a New York corporation;    )
     SAMSUNG TELECOMMUNICATIONS       )
10   AMERICA, LLC, a Delaware         )
     limited liability company        )
11                                    )
                    Defendants.       )
12   _____)
13
14    **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**
15
16            DEPOSITION OF FREDDY ANZURES
17              Redwood Shores, California
18              Tuesday, October 18, 2011
19
20
21
22
23   Reported By:
24   LINDA VACCAREZZA, RPR, CLR, CRP, CSR. NO. 10201
25   JOB NO. 42857
```

Highly Confidential Attorneys' Eyes Only

Page 2

```
 1
 2
 3
 4                  October 18, 2011
 5                    10:11 a.m.
 6
 7
 8        Videotaped deposition of FREDDY
 9   ANZURES, held at Quinn Emanuel Urquhart
10   & Sullivan, LLP, 555 Twin Dolphin
11   Drive, Suite 500, Redwood Shores,
12   California, pursuant to Subpoena before
13   Linda Vaccarezza, a Certified Shorthand
14   Reporter of the State of California.
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential Attorneys' Eyes Only

Page 3

1  A P P E A R A N C E S:
2        QUINN EMANUEL URQUHART & SULLIVAN
3        Attorneys for Defendants
4             865 South Figueroa Street
5             Los Angeles, California 90017
6        BY:  MICHAEL T. ZELLER, ESQ.
7             BRETT ARNOLD, ESQ.
8
9
10
11       MORRISON & FOERSTER
12       Attorneys for Plaintiff
13            425 Market Street
14            San Francisco, California 94105
15       BY:  ANDREW E. MONACH, ESQ.
16
17
18
19
20
21
22
23  Videographer:  Jason Kocol
24
25

Highly Confidential Attorneys' Eyes Only

Page 4

1    THE VIDEOGRAPHER:  This is the
2    start of tape labeled Number 1 of the
3    videotaped deposition of Freddy Anzures
4    in the matter of Apple, Incorporated
5    versus Samsung Electronics Company,
6    Limited, in the United States District
7    Court, Northern District of California,
8    San Jose Division.  Case number 11-CV-
9    01846-LHK.
10          This deposition is being held
11   at 555 Twin Dolphin Drive, Redwood
12   Shores, California on October 18th, 2011
13   at approximately 10:11 a.m.
14          My name is Jason Kocol.  I'm
15   the legal video specialist from TSG
16   Reporting Incorporated, headquartered at
17   747 Third Avenue, New York, New York.
18          The court reporter is Linda
19   Vaccarezza in association with TSG
20   Reporting.
21          Will counsel please introduce
22   yourselves for the record.
23       MR. ZELLER:  Mike Zeller for
24   Samsung.
25       MR. MONACH:  Andrew Monach for

Highly Confidential Attorneys' Eyes Only

Page 5

1          Apple and the witness.
2                  THE VIDEOGRAPHER:  Will the court
3          reporter please swear in the witness.
4
5    F R E D D Y  A N Z U R E S,
6          called as a witness, having been duly
7          sworn by the Certified Shorthand
8          Reporter, was examined and testified as
9          follows:
10   EXAMINATION BY:
11   MR. ZELLER:
12          Q.    Good morning.
13          A.    Good morning.
14          Q.    If you could please tell us your
15   full name for the record.
16          A.    Freddy Anzures.
17          Q.    Have you ever gone by any other
18   name?
19          A.    No.
20          Q.    Where do you currently reside?
21          A.    San Francisco.
22          Q.    And how long have you lived there?
23          A.    Since 1999.
24          Q.    Are you currently employed?
25          A.    Yes.

1        And with that understanding, to
2   create things for the products to kind of marry
3   that familiarity in what they see in the real
4   world into something that's on the product.
5        Q.    And your reference to the "real
6   world," what you're referring to is is that
7   you're -- in designing icons, one of your goals,
8   your intention in that regard is to use a
9   familiar or obvious kind of real-world object
10  that you can then represent in the icon, that
11  people will instantly recognize what function is
12  going to be launched by pressing on that icon?
13            MR. MONACH:  Object to the form of
14       the question.
15            THE WITNESS:  Repeat your question
16       again.
17       Q.    Sure.  Maybe I can break it down a
18  little bit, too.
19            In part of your answer -- I'll
20  just try it this way.
21            In part of your answer you
22  referred to the "real world."  What do you mean
23  by the "real world"?  How does that relate to the
24  icon design?
25       A.    Physical world.

Highly Confidential Attorneys' Eyes Only

Page 65

1  Q. Is what you mean that as part of
2  the icon design -- and we are talking about icons
3  that are used for these mobile devices -- that
4  one source of the graphics or the pictures that
5  are used, are the real world or physical analogs?
6  A. Yes.
7  Q. So in other words, as depicted in
8  Figure 1, there's a telephone receiver that's
9  used as the picture or the graphic for the
10 telephone icon, right?
11 A. Yes.
12 Q. And is that an example of what
13 you're referring to?
14 A. This is an example of, you know,
15 understanding a symbol in the physical world, and
16 this being a representation of it on the phone,
17 yes.
18 Q. And then let's use the phone icon
19 as an example. What is it that the design of the
20 phone icon was intended to communicate to the
21 user?
22 A. The phone functionality of the
23 device.
24 Q. And when you say "the phone
25 functionality," do you mean that it was -- that

Highly Confidential Attorneys' Eyes Only

Page 66

1  the icon communicates to the user that the result
2  of pressing on the phone icon, that's
3  communicated by that picture or image, is -- that
4  the phone function will activate?
5          A.   Yes.
6          Q.   And did you believe, when you were
7  designing the phone icon, that using a picture or
8  graphic of a telephone receiver communicated that
9  information to the user in an effective way?
10              MR. MONACH:  Object to the form of
11         the question.
12              THE WITNESS:  You mean this is a
13         telephone receiver -- we could have used
14         a number of different types of telephone
15         receivers for this application, but we
16         chose this one.
17         Q.   What I'm asking is:  Why did you
18  use a telephone receiver to communicate that
19  information?
20         A.   Because as designers, this is the
21  symbol that -- when we most think of phones, this
22  is the most simple visual to communicate that
23  functionality.
24         Q.   Is it true that in designing the
25  other icons, that are shown here in the '305

Highly Confidential Attorneys' Eyes Only

Page 67

1  design patent, that you were attempting to
2  communicate to the users the particular
3  functionality that would be activated by pressing
4  on that icon?
5        A.    Yes.
6        Q.    And that's why you chose the
7  particular graphics or pictures that you chose
8  for those icons?
9        A.    Yes.
10       Q.    And I take it that you chose the
11 particular pictures or images that end up being
12 used for the icons, that are shown here on the
13 '305 design patent, because you thought that they
14 were effective in communicating that information
15 to users, right?
16              MR. MONACH:  Objection.  Compound,
17         incomplete hypothetical.
18              THE WITNESS:  Certainly in our
19         opinion, yes, we think this is the most
20         effective visual to communicate the
21         functions on the phone.
22       Q.    Directing your attention to Figure
23 1 and Figure 2.  Well, actually, let me narrow it
24 down already.
25              Directing your attention to Figure

Highly Confidential Attorneys' Eyes Only

Page 68

1  1 of the '305 design patent, you'll see in the
2  upper left-hand corner there are the words
3  "AT&T"?
4         A.    Yes.
5         Q.    Is that part of the claim design
6  here?
7               MR. MONACH:  Objection.  Calls for
8         a legal conclusion, lacks foundation.
9         Q.    By your understanding?
10        A.    I'm not a patent -- not familiar
11 with patents, so I can't say.
12        Q.    I understand that.  I'm asking for
13 your understanding, though, as an inventor on
14 this patent.
15              So let me try it this way.
16              By your understanding, does the
17 '305 design patent claim as part of the design
18 the words "AT&T," as they appear here on Figure
19 1?
20              MR. MONACH:  Objection.  Calls for
21        a legal conclusion.  Objection.  Lack of
22        foundation in light of the prior
23        testimony.
24              THE WITNESS:  I don't know.
25        Q.    Did Apple get AT&T's permission to

1             MR. MONACH:  Objection.  Vague,
2      assumes facts not in evidence.
3             THE WITNESS:  Some keypads sure.
4      Not all keypads.
5        Q.   Many keypads that you've seen over
6    the years, right?
7        A.   Many keypads.
8        Q.   And so my question is:  Do you,
9    from your own experience, find something familiar
10   or efficient to have the layout be done in this
11   grid-and-column form?
12            MR. MONACH:  Objection.  Vague.
13            THE WITNESS:  Grid-and-column form
14       is one way to present things from a
15       visual design point of view.
16       Q.   You said "digital design"?
17       A.   Visual.
18       Q.   And do you have an understanding
19   as to what the reasons are for that?
20            MR. MONACH:  Objection.  Asked and
21       answered, vague.
22       Q.   I'm moving beyond now just
23   keypads.  I'm now asking in response to your last
24   question about grid-and-column patterns.
25            MR. MONACH:  Now I'll object.

Page 136

1       It's even more abstract and vague.
2             THE WITNESS:  From my designer's
3       perspective, a grid-and-column pattern is
4       one of a number of ways to present
5       information.
6       Q.    Well, are there advantages to it
7  from a visual design perspective?
8             MR. MONACH:  Objection.  Vague as
9       to the application and other
10      circumstances.
11            THE WITNESS:  Based on my
12      knowledge, the advantages are to -- it's
13      an organizing principle.
14      Q.    Would you agree that having a
15 grid-and-column pattern, in addition to having
16 the advantage of being -- of creating
17 organization, also has advantages to users
18 because it's a familiar pattern to them?
19            MR. MONACH:  Objection.  Vague,
20      incomplete hypothetical.
21            THE WITNESS:  I can't say what's a
22      familiar pattern to users; all I know is
23      the design team made its best effort to
24      use paradigms like that, people are
25      familiar with.

Highly Confidential Attorneys' Eyes Only

Page 137

1             We can't -- there's no real --
2        we can't really understand what people
3        find -- people's own opinions of what
4        they see.
5        Q.   I'm not asking about individual
6   people's opinions, but as a designer, which
7   you're attempting to accomplish through the
8   designs that you work on for mobile devices there
9   at Apple, is that you are endeavoring to
10  communicate in the most efficient and
11  commonsensical and conventional way to the most
12  users possible, right?
13            MR. MONACH:  Object to the form of
14       the question.  It's vague and ambiguous.
15       Q.   Doesn't mean every single person
16  understands it, but you're trying to get
17  the largest group of people to understand
18  it, right?
19            MR. MONACH:  Same objection.
20            THE WITNESS:  We just design the
21       stuff, we don't -- we make our best guess
22       as to what that is.  We don't know what
23       that is.
24       Q.   Well, whether you know what it is
25  or not, it's your intention that by using the

Highly Confidential Attorneys' Eyes Only

Page 207

1  have. Thanks.
2          THE VIDEOGRAPHER: This marks the
3  end of Tape Number 4 of 4 and concludes
4  today's deposition of Freddy Anzures.
5  The time is 5:14 p.m. We are off the
6  record.
7          (Time noted: 5:14 p.m.)
8
9
10 _____
11          FREDDY ANZURES
12
13
14 Subscribed and sworn to before me
15 This  *17*  day of  *November* , 2011.
16 _____