# Exhibit D
# (Submitted Under Seal)

# In The Matter Of:

*APPLE INC.*

*v.*

*SAMSUNG ELECTRONICS CO.,*

_____

*TODD PENDLETON - Vol. 1*

*March 21, 2012*

_____

***HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY***

**MERRILL CORPORATION**
LegaLink, Inc.
179 Lincoln Street
Suite 401
Boston, MA 02110
Phone: 617.542.0039
Fax: 617.542.2119

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY
TODD PENDLETON - 3/21/2012

```
        IN THE UNITED STATES DISTRICT COURT

          NORTHERN DISTRICT OF CALIFORNIA

                 SAN JOSE DIVISION

                     --oOo--

APPLE INC. a California      )
corporation,                 )
                             )
           Plaintiff,        )
                             )
      vs.                    ) 11-cv-01846-LHK
                             )
SAMSUNG ELECTRONICS CO.,     )
LTD., a Korean corporation;  )
SAMSUNG ELECTRONICS AMERICA, )
INC., a New York corporation;)
and SAMSUNG TELECOMMUNICATIONS)
AMERICA, LLC, a Delaware     )
limited liability company,   )
                             )
           Defendants.       )
_____)


      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

                  DEPOSITION OF

                  TODD PENDLETON

          _____

                 MARCH 21, 2012

                    VOLUME I

                 (Pages 1 - 217)


REPORTED BY:  SARAH LUCIA BRANN, CSR 3887
```

Merrill Corporation - Boston

617-542-0039                      www.merrillcorp.com/law

b00a524a-8f31-45b4-84ce-4c5e17018117

Page 7

1          MS. CARUSO:  Margret Caruso, Quinn,
2    Emanuel, Urquhart & Sullivan, representing Samsung.
3    And with me is Cindi Moreland of STA.
4          THE VIDEOGRAPHER:  Your court reporter
5    today is Sarah Brann of Merrill.  Would the reporter
6    please swear in the witness?
7                    TODD PENDLETON
8    _____
9    called as a witness, who, having been first duly
10   sworn, was examined and testified as follows:
11         THE VIDEOGRAPHER:  Please begin.
12            EXAMINATION BY MR. PLUNKETT
13         MR. PLUNKETT:  Q.  Good morning. Could
14   you state and spell your name for the record?
15      A.   It's Todd Pendleton, T-o-d-d, last name
16   Pendleton, P-e-n-d-l-e-t-o-n.
17      Q.   What's your home address?
18      A.   6546 Sondra Drive, Dallas, Texas 75214.
19      Q.   Is this your first deposition?
20      A.   Yes, it is.
21      Q.   So let's go over some basics of the
22   deposition.  Do you understand that you are under
23   oath today?
24      A.   I do.
25      Q.   Do you understand that that's the same

Page 8

1  oath as if you were testifying in a court?
2      A.   Yes.
3      Q.   If you don't understand my questions, you
4  can ask me to rephrase.  Okay?
5      A.   Okay.
6      Q.   Do you understand that if you answer my
7  question it will indicate that you understood the
8  question?
9      A.   Yes.
10     Q.   You will have an opportunity to review
11 your transcript to make any corrections, but I want
12 to make sure you understand that if you correct your
13 transcript we will have the opportunity to comment
14 about your corrections in court.  Do you understand
15 that?
16     A.   Yes.
17     Q.   Is there anything preventing you from
18 giving complete and accurate testimony today?
19     A.   No.
20     Q.   What's your current position with Samsung?
21     A.   Chief marketing officer of wireless
22 terminals.
23     Q.   And who is your employer?
24     A.   Samsung.
25     Q.   Do you work for Samsung Telecommunications

Page 64

1  just go out on a limb here.  I am just going to do
2  Pendleton 1.  Okay?  Because I am not going to --
3  whatever.  If I get in trouble, I get in trouble.
4  Okay.  Let's mark this as, please, Pendleton Exhibit
5  Number 1.
6           I can't slide, because we have got a chasm
7  here.
8           (Deposition Exhibit 1
9            was marked for identification.)
10          MR. HEYISON:  Q.  Okay, Mr. Pendleton.  So
11 this is Apple's ninth Rule 30(b)(6) deposition
12 notice.
13     A.   Okay.
14     Q.   I'd like to direct your attention to page
15 eight.
16     A.   Okay.
17     Q.   Do you understand that you have been
18 designated to testify concerning topic number four,
19 for each of the covered products, Samsung's
20 marketing plans, and strategies, and marketing, and
21 sales messaging during the period from 2006 through
22 the present?
23     A.   Yes.
24     Q.   Do you also understand you have been
25 designated to testify concerning topic number five,

1   which is, "For each of the Covered Products,
2   Samsung's marketing plans, strategies, marketing,
3   sales messaging and advertising for use against each
4   Competitive Product and Apple Accused Product during
5   the period 2006 through the present"?
6       A.   Yes.
7       Q.   Okay.  And then let's turn to topic number
8   38, which you will find on page 14.
9            Do you understand that you have been
10  designated to testify concerning Samsung's
11  promotional or marketing programs and materials for
12  any of the covered products, including but not
13  limited to programs and materials that describe the
14  advantages or benefits of such products over other
15  products in any studies, reports, and analyses
16  concerning such programs and materials --
17           Let me finish, and then you can object.
18           MS. CARUSO:  Sure.
19           MR. HEYISON:  Q.  -- during the period
20  2006 through the present?
21           MS. CARUSO:  And my objection is based on
22  the fact that Mr. Pendleton is not designated to
23  talk about studies and reports about studies
24  concerning an analysis concerning the programs and
25  materials during the period 2006 through the

1   present.
2           MR. HEYISON:  Q.  Okay.  So,
3   Mr. Pendleton, do you understand what your
4   attorney's, I will call it a de-designation, is?
5       A.  Yes.
6       Q.  Okay.  So for the first part of that,
7   which is Samsung's promotional or marketing programs
8   and materials for any of the covered products,
9   including but not limited to programs and materials
10  that describe the advantages or benefits of such
11  products over other products, you understand you are
12  designated to testify about that topic?
13      A.  Correct.
14      Q.  Okay.  Good.
15          So, now, in each one of those topics we
16  have just talked about there is a term called
17  covered products.
18      A.  Mm-hmm.
19      Q.  Okay?  Did you notice that before today?
20      A.  Yes.
21      Q.  Okay.  So if you look on page six of that
22  notice, topic number six, there's a definition of
23  covered products.  So please turn to that for me.
24      A.  Okay.
25      Q.  And it's defined as "any product sold or

Page 115

1   increase its market -- smartphone market share?
2           MS. CARUSO: Objection. Beyond the scope.
3           THE WITNESS: Overall market share again
4   remained flat. In some carriers we did better than
5   others that carried the product.
6           MR. HEYISON: Q. And with respect to
7   those carriers, did Apple's sales decrease?
8       A.  No.
9           MS. CARUSO: Objection.
10          MR. HEYISON: Q. Did anybody's sales
11  decrease?
12          MS. CARUSO: Objection. Vague. Beyond
13  the scope.
14          THE WITNESS: Obviously RIM is not doing
15  as well as it used to. HTC and Motorola also
16  haven't done as well in that time frame, in the
17  fourth quarter, as they have in the past.
18          MR. HEYISON: Q. In the smartphone market
19  are there sub segments of that market, like premium,
20  regular?
21      A.  There are price point differentials, yes.
22      Q.  Okay. Can you tell me what those are in
23  the smartphone market?
24          MS. CARUSO: Objection. Beyond the scope.
25          THE WITNESS: The, again, majority of

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY
TODD PENDLETON - 3/21/2012

Page 116

1   the -- call them super phone, whatever you want to
2   call them -- could be $199 and above.  You could
3   have 199 down to 99 as your mid tier, and $99 and
4   below as more of your entry level, if you want to
5   call it that.
6           MR. HEYISON:  Q.  And does Samsung have
7   product offerings in each of those three categories?
8       A.   Yes.
9       Q.   And does Apple -- where does Apple have
10  product offerings with respect to those?
11          MS. CARUSO:  Objection.  Beyond the scope.
12          THE WITNESS:  Similar.
13          MR. HEYISON:  Q.  Pardon?
14      A.   It would be similar.
15      Q.   So, do Samsung and Apple compete in all
16  three categories?
17          MS. CARUSO:  Objection.  Beyond the scope.
18  Vague.
19          THE WITNESS:  Yes.
20          MR. HEYISON:  Q.  And the Galaxy S is $199
21  and above?
22          MS. CARUSO:  Objection.  Beyond the scope.
23          THE WITNESS:  Yes.
24          MR. HEYISON:  Q.  And the Apple iPhone 4S
25  is in that category, too?

1    A.    Yes.
2    Q.    Are you aware of any period of time in
3 which Samsung's market share of the smartphone
4 market has gone up and Apple's has gone down?
5         MS. CARUSO:  Objection.  Beyond the scope.
6         THE WITNESS:  No.
7         MR. HEYISON:  Q.  Do you know what Prime
8 Competitrack is?
9    A.    No.
10        MS. CARUSO:  Objection.  Beyond the scope.
11        MR. HEYISON:  Q.  Does Samsung use Twitter
12 in any way to promote its smartphone or tablet
13 products?
14   A.    We have a Samsung mobile Twitter handle
15 for our smartphones, yes.
16   Q.    Okay.  Can you describe to me what that
17 is?  I don't even know what you mean by handle.
18   A.    So we have a Twitter account.
19        MS. CARUSO:  This might call for a
20 narrative.
21        THE WITNESS:  Yes.  So we have a Twitter
22 account, a Samsung mobile Twitter account, and it's
23 daily communications.  If people have questions or
24 want to connect with us, they can send us a note,
25 and there is a person that can answer questions

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY
TODD PENDLETON - 3/21/2012

Page 217

2    I declare under penalty of perjury the
3  foregoing is true and correct.  Subscribed at
4  _____, California, this ____ day
5  of _____, 2012.
6                                    _____
7                                              Todd Pendleton

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY
TODD PENDLETON - 3/21/2012

Page 218

1        CERTIFICATE OF REPORTER
2            I, SARAH LUCIA BRANN, a Certified
3    Shorthand Reporter, hereby certify that the witness
4    in the foregoing deposition was by me duly sworn to
5    tell the truth, the whole truth, and nothing but the
6    truth in the within-entitled cause;
7            That said deposition was taken in
8    shorthand by me, a disinterested person, at the time
9    and place therein stated, and that the testimony of
10   the said witness was thereafter reduced to
11   typewriting, by computer, under my direction and
12   supervision;
13           That before completion of the deposition,
14   review of the transcript [ ] was [X] was not
15   requested.  If requested, any changes made by the
16   deponent (and provided to the reporter) during the
17   period allowed are appended hereto.
18           I further certify that I am not of counsel
19   or attorney for either or any of the parties to the
20   said deposition, nor in any way interested in the
21   event of this cause, and that I am not related to
22   any of the parties thereto.
23           DATED:  March 27, 2012
24   _____
25           SARAH LUCIA BRANN, CSR No. 3887