# Exhibit B
# (Filed Under Seal)

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3
 4   APPLE, INC.,                    )
                                     )
 5              Plaintiff            )
                                     )No. 11-CV-01846-LHK
 6          vs.                      )
                                     )
 7   SAMSUNG ELECTRONICS, LTD.       )
     et al.,                         )
 8                                   )
                Defendants           )
 9   --------------------------------)
10
11                       ***
12              ATTORNEYS' EYES ONLY
13        PURSUANT TO THE PROTECTIVE ORDER
14                       ***
15
16    VIDEOTAPED DEPOSITION OF JANUSZ A. ORDOVER
17               New York, New York
18             Friday, April 27, 2012
19
20
21
22
23   Reported by:
24   THOMAS A. FERNICOLA, RPR
25   JOB NO. 49019
```

1   are other aspects to it.  And the fact that
2   they can go in and ask for an injunction and
3   there is perhaps a probability they will obtain
4   it, is something that is of a competitive
5   concern, at least to me.
6           Certainly not necessarily to Dr.
7   Teece.  He doesn't think that there is anything
8   wrong with asking for an injunction unless
9   there are some competitive concerns that doing
10  so triggers.
11      Q.   Could you please turn to paragraph 24
12  of your report at page 12.
13      A.   Okay.
14      Q.   I'm sorry, it's actually the first
15  bullet point on page 13.
16      A.   "Samsung Conduct"?
17      Q.   Correct.
18      A.   Let me read that.
19           (Document Review.)
20           Yes.
21      Q.   In your opinion, is the harm to
22  downstream competition that Samsung might cause
23  contingent upon it prevailing on its claims?
24      A.   It says if Samsung were to prevail,
25  that would harm downstream competition.

Page 250

1    Q.   So in the absence of Samsung
2  prevailing on its claims, there would not be
3  harm to downstream competition?
4    A.   Yes.  It's like, you know, attempted
5  murder doesn't -- it's still bad news, but it's
6  not the same thing as killing somebody.
7    Q.   Well, sorry.  I appreciate the
8  editorializing, but just answer the questions
9  clearly.
10         If Samsung doesn't prevail in its
11  claims, then there is no harm to downstream
12  competition; correct?
13    A.   That is true within that limited
14  issue that I'm addressing here.  And, in
15  particular, if Samsung does not prevail, it
16  will be competing against Apple.  Apple will be
17  competing against Samsung.  Consumers will be
18  benefiting.
19         And sooner or later across all these
20  many jurisdictions, a resolution of the dispute
21  the dispute is going to come to some
22  resolution -- the dispute is going to come to
23  some resolution regarding the FRAND rate and
24  all the other aspects of this litigation, yes.
25    Q.   If Samsung does prevail, is it the

1   case that it's the court's action in enjoining
2   Apple that causes the antitrust entry?
3       A.   It would be hard to blame the court
4   for causing an antitrust injury.  The court
5   makes a ruling in response to Samsung's request
6   or demand for injunctive relief.
7            I am opposed to the whole concept of
8   Samsung asking for injunctive relief, given its
9   repeated FRAND commitments on these seven
10  patents, the blanket commitment and then the
11  individual FRAND commitments relating to each
12  one of those seven patents made late but,
13  nevertheless, they were made.
14      Q.   Are you aware of any actual -- strike
15  that.
16           Is it your opinion that Apple has
17  sustained any actual injury to date -- strike
18  that again.
19           Is it your opinion that Apple has
20  sustained antitrust injury to date?
21           MS. MILLER:  Objection.
22      A.   I think that "antitrust injury" is a
23  term of art.  It certainly sustained certain
24  harm due to the needs to defend itself across a
25  broad range of jurisdictions, that is no doubt

1    significant cost.
2             So that's a harm to Apple. It has
3    yet to harm competition because Apple, at this
4    point, can pay the bills. It does not have to
5    necessarily cut back on its R&D. So we are
6    lucky that that's the -- that they are the
7    target as opposed to some other company which
8    may have a lesser ability to survive the
9    multi-jurisdictional litigation that Samsung
10   has rolled out in this particular situation.
11            So someone else may actually have --
12   be forced to exit, and such exit may, in fact,
13   harm competition and, therefore, be an
14   antitrust injury.
15       Q.   But -- so the only injury you're
16   aware of Apple sustaining to this point is
17   incurring litigation costs; correct?
18       A.   No. I believe that they are also
19   incurring additional costs, such as the time of
20   the management that's being diverted perhaps
21   from other matters that they should be paying
22   attention to. It's a competitive environment.
23   It's a highly -- it's a quickly moving
24   marketplace and, clearly, there's been a lot of
25   time and energy spent at Apple trying to

Attorneys' Eyes Only - Pursuant to Protective Order

Page 271

1          I just have a couple of questions for
2     Dr. Ordover.
3          (A Discussion was Held off the
4     Record.)
5
6  EXAMINATION BY MS. MILLER:
7     Q.   Dr. Ordover, I'd like you to assume
8  for purposes of this question that Apple is
9  correct in its claim that Samsung
10 misrepresented its willingness to offer FRAND
11 licenses.  Okay?
12    A.   Okay.
13    Q.   Assuming this to be true, did this
14 conduct have any anti-competitive effect in any
15 of the upstream technology markets that you
16 define in your report?
17         MR. WALL:  Objection to the form.
18    A.   To the extent that that conduct
19 caused ETSI working groups to standardize on
20 Samsung technologies as opposed to on some
21 other alternative technologies, that would, in
22 my view, constitute harm in the upstream
23 technology market.
24         There was an exclusion flowing from
25 the alleged misconduct, assuming that Apple is

1    correct.

2            MS. MILLER:  I have no further

3    questions.

4

5  FURTHER EXAMINATION BY MR. WALL:

6  BY MR. WALL:

7        Q.    To follow up on that question, are

8    you aware of whether any of Samsung's conduct

9    actually caused ETSI working groups to

10   standardize Samsung's technology as opposed to

11   another technology?

12           MS. MILLER:  Objection.

13       A.    Well, it's my understanding from

14   reading the technical expert's reports that

15   there were alternatives available at the time

16   the standard was being formulated; and,

17   therefore, insofar as Samsung engaged in

18   conduct that -- no.

19           Had, as per Apple, Samsung engaged in

20   the clear, clear disclosure of the fact that

21   it's not going to -- to support its -- or not

22   stick to its FRAND obligations and, in fact,

23   act contrary to the FRAND objectives that it

24   plausibly follows, that these other

25   technologies at least would have been

1    considered and possibly chosen.
2        Q.   Do you have any empirical evidence to
3    suggest that in the event that Samsung's FRAND
4    declarations -- strike that.
5            MR. WALL:  I have no further
6        questions.
7            MS. MILLER:  I have one more.
8
9    FURTHER EXAMINATION BY MS. MILLER:
10       Q.   Dr. Ordover, do you know of any rules
11   within the ETSI IPR policy that would govern an
12   instance where a party did not provide a FRAND
13   license or where a party said clearly that it
14   was not going to give a FRAND license?
15       A.   Well, to the best of my recollection,
16   the ETSI rules would prohibit that firm's
17   technology to be included in the standard.
18   And, therefore, some other technologies would
19   have to be included or that particular feature
20   would have been dropped.
21           MS. MILLER:  I have no further
22       questions.
23           MR. WALL:  No further questions.
24           THE VIDEOGRAPHER:  That concludes the
25       video record for today.  The time is now